



FILED

2006 JUL 18 AM 10: 16

ENTERED
JUL 18 2006
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
DEPUTY

Priority ✓
Send ✓
Enter ✓
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

Plaintiff,

v.

MATTEL, INC.,

Defendant,

and related actions.

CASE NO. CV 04-09049 SGL (RNBx)

(Consolidated with cases CV 04-09059 and CV 05-02727)

ORDER GRANTING MOTIONS TO DISMISS

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

**I. Introduction**

This consolidated action involves the individual cases of Bryant v. Mattel, Inc., CV 04-09049; Mattel, Inc. v. Bryant, CV 04-09059; and MGA Entertainment, Inc. v. Mattel, Inc., CV 05-02727. This Order rules on Motions to Dismiss previously docketed in cases 04-09049 and 04-9059.

The factual background underlying this consolidated action is complex. The Court sets forth the factual background only to the extent that it is necessary to discuss its ruling on two pending motions to dismiss. A hearing regarding these motions was held on June 26, 2006. For the reasons and in the manner set forth below, the Court grants both motions.

DOCKETED ON CM
JUL 18 2006
046
63

## II. Motion to Dismiss (04-09049)

### A. Factual Background

Carter Bryant is a designer to whom creation of MGA's "Bratz" line of dolls has been attributed. Compl. ¶ 6. Mattel has sued him under a variety of state-law theories relating to certain agreements Bryant signed while an employee with Mattel. See generally Compl. filed in 04-09059. Although Mattel has not sued him for copyright infringement of any Mattel product, Bryant nevertheless claims that he is reasonably apprehensive regarding being sued for copyright infringement. Specifically, Bryant makes the following allegations in his complaint seeking declaratory relief:

First, Bryant claims that an article published in the Wall Street Journal in July, 2003, attributed to Mattel sources a belief that "the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998." Compl. Ex. A; Compl. ¶ 54. The scrapped Mattel project is alleged to be the project referred to by Mattel as "Toon Teens." Compl. ¶ 56.

Second, Bryant alleges that he suggested, as a way to resolve a discovery dispute, that Mattel stipulate that it would not sue based on "Toon Teens." Compl. ¶ 55. Mattel refused to do so. Id. However, since that initial refusal, Mattel has represented to the Court that it "will not maintain that Bratz infringes the copyright in Toon Teens." June 26, 2006, Tr. at 64 (statement of Mattel counsel John B. Quinn). Mattel has reiterated this position in a post-hearing brief, filed on July 5, 2006.

Third, Mattel cooperated with a Hong Kong toy company that MGA sued for copyright infringement. Compl. ¶ 56. MGA's claims involved the Bratz dolls. Id. Mattel's cooperation consisted of providing the Hong Kong toy company with documents and photographs of the Toon Teens products, ostensibly to help prove that Bratz was not an original design and that Bryant had copied and infringed Toon Teens. Compl. ¶ 57.

Finally, Bryant notes that Mattel did not seek copyright registration until November, 2003, which is the same time Mattel claims it first learned of Bryant's

contract with MGA. Compl. ¶¶ 59-60. Bryant alleges that registration of a copyright is a necessary step to be taken prior to filing a copyright infringement action. Compl. ¶ 60.

**B. Standing to Seek Declaratory Relief**

The purpose of the Declaratory Judgment Act is "to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure — or never." Societe de Conditionnement v. Hunter Engineering Co., 655 F.2d 938, 943 (9th Cir.1981). However, a party seeking declaratory relief must still satisfy the "case or controversy" requirement found in 28 U.S.C. § 2201(a). Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542,1555 (9th Cir. 1990). This requirement must be satisfied at the time the suit is filed and must continue throughout the term of the suit. Id. at 1556 (citing International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir.1980)).

To meet this requirement, a party seeking declaratory relief must show that, based on his reasonable perceptions, under all the circumstances of the case, there is a substantial controversy between parties having adverse legal interests that causes in the plaintiff a real and reasonable apprehension that he will be subject to liability, and the controversy is of sufficient immediacy and reality to warrant declaratory relief. Hal Roach, 896 F.2d at 1555. The apprehension must have been caused by the defendant's actions. Id. (citing International Harvester, 623 F.2d at 1211).

Viewing Bryant's allegations in light of this standard, and in light of recent developments, the Court must conclude that Bryant, although having a reasonable apprehension of suit prior to counsel's representations regarding the intent to sue based on Toon Teens, no longer has a reasonable apprehension that he will be subject to liability. Bryant's Complaint, of course, makes reference to "other Mattel products;" however, the substance of his allegations all address the product "Toon Teens." The Wall Street Journal article is alleged to have involved Toon Teens. Mattel's cooperation with the Hong Kong toy company allegedly involved Toon Teens.

The copyright registration referenced in the Complaint relates to Toon Teens. No other allegations are made that might tend to raise a real and reasonable apprehension that Bryant could be subject to liability for copyright infringement based on any other Mattel product. Accordingly, Bryant has not met the standard for asserting a claim for declaratory relief.

C. **Ruling on Motion to Dismiss**

Accordingly, the Court **GRANTS** the Motion to Dismiss and dismisses without prejudice Bryant's claim for declaratory relief. Should Bryant, through discovery or otherwise, acquire a real and reasonable apprehension of being subject to liability on the basis of another identifiable Mattel product, Bryant may file a declaratory relief claim. A claim by Mattel of copyright infringement based on the Toon Teens product is barred by counsel's representation; therefore, Bryant may not seek declaratory relief regarding this issue.

## III. Motion to Dismiss (04-9059)

A. **Factual Background**

The parties make the following factual allegations and assert the following claims and counterclaims.

Bryant was employed by Mattel from September, 1995, to April, 1998, and again beginning in January, 1999, and ending in October, 2000. Compl. ¶ 9. In January, 1999, Bryant signed documents entitled "Employee Confidential Information and Inventions Agreement" ("Employee Agreement") and "Conflict of Interest Questionnaire" ("COI Questionnaire"). The Employee Agreement provides:

> This Agreement is designed to make clear that: (I) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment

with the Company terminates I will not use my prior position with the Company to the detriment of the Company.

1. Provisions Related to Trade Secrets

. . . .

(b) As used in the Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does Business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing, I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

. . . .

2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions [as defined below] conceived or reduced to practice to me (alone or jointly by others) at any time during my employment by the Company, I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. . . .

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this Agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

. . . .

3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

4. Miscellaneous

. . . .

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

. . . .

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

Employment Agreement, attached to the Compl. as Ex. A.[1]

**B. The Parties' Claims**

Mattel brings a number of claims based on these documents, including breach of contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment, and conversion.

Bryant brings a number of counterclaims based on these documents. Specifically, Bryant makes the following challenges to the Employment Agreement:

In his first counterclaim, Bryant claims that the Employment Agreement violates Cal. Bus. & Prof. Code §§ 17200 (unfair competition law) because (a) it is an unfair restraint of trade (restricting job mobility and use of publicly available information) in violation of Cal. Bus. & Prof. Code § 16600; (b) it violates Cal. Labor Code §§ 96(k), 98.6, and 2699; (c) it violates Cal. Labor Code § 2870; and (d) it is procedurally and substantively unconscionable. See Bryant's Counterclaims ¶¶ 33-47.

In his second counterclaim, Bryant claims that the Employment Agreement should be rescinded because it was procured due to mistake, duress, menace and/or

---

[1] Bryant objects to the Court's consideration of the Agreement and the COI Questionnaire. Bryant purports to dispute the authenticity of these documents. However, examining the substance of Bryant's objections, it becomes clear that Bryant objects not to the content of these documents, but to the validity and legal effect of these documents. Accordingly, the Court's consideration of these documents in connection with the present Motion to Dismiss is proper. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) (the Court may consider documents whose authenticity is not questioned and upon which the complaint necessarily relies).

fraud. See Bryant's Counterclaims ¶¶ 48-54.

In his third counterclaim, Bryant alleges that the Employment Agreement was procured by fraud in that Mattel "fail[ed] to disclose to Bryant the true meaning of the terms and the purported legal effect of the [Employment] Agreement." See Bryant's Counterclaims ¶¶ 55-60.

Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that Mattel's conduct in requiring Bryant and other employees to execute the Employment Agreement constitutes unfair competition and unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200 and 16600. Bryant also seeks a declaration that the Employment Agreement is unlawful and unenforceable as to him and as to other current and former employees of Mattel. See Bryant's Counterclaims ¶¶ 61-65.

**C. Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

The present Motion to Dismiss requires the Court to determine whether the counterclaims state any claim upon which relief may be granted. See Fed R. Civ. P. 12(b)(6). The Court will not dismiss the claims for relief unless Bryant cannot prove any set of facts in support of the claims that would entitle him to relief. See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998). In limiting its inquiry to the content of the counterclaims, the Court must take the allegations of material fact as true and construe them in the light most favorable to Bryant. See Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985). Additionally, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 755 (9th Cir. 1994).

**D. § 17200 Claim**

**1. Generally**

"California's unfair competition law (UCL) (17200 et seq.) defines 'unfair competition' to mean and include any unlawful, unfair or fraudulent business act or practice. . . ." Kasky v. Nike, Inc., 27 Cal.4th 939, 949, 119 Cal.Rptr.2d 296 (2002)

(internal quotation marks and citation omitted). Because "section 17200 is written in the disjunctive, it establishes three varieties of unfair competition--acts or practices which are unlawful, unfair, or fraudulent." Cel-Tech Communications v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548 (1999) (emphasis added). "Unlawful" practices are those practices that are prohibited by law, whether "civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." Saunders v. Superior Court, 27 Cal.App.4th 832, 839 (citing People v. McKale, 25 Cal.3d 626, 632 (1979)). The prohibition against "unfair" conduct is not as broad as it would seem. In Cel-Tech, the California Supreme Court announced that the test of "unfairness" for commercial cases: "Unfair" means "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech, 20 Cal.4th at 187.

**2. Standing**

Bryant claims to be bringing the § 17200 "on his own behalf, on behalf of all current and former employees of Mattel employees . . . and on behalf of the general public." See Counterclaims ¶ 10. The parties disagree as to whether he may bring such a claim on behalf of anyone other than himself and argue this point on state-law grounds. However, it is clear under established Ninth Circuit authority that Bryant's purported claims on behalf of others suffer from a federal constitutional deficiency: Bryant must satisfy the case-or-controversy requirement of Article III for any claim that he brings under § 17200. Bryant has not alleged facts that establish that he has standing to bring his claims on behalf of anyone other than himself.[2] See Lee v. American Nat. Ins. Co., 260 F.3d 997, 1001 (9th Cir. 2001) (rejecting, on constitutional grounds, a plaintiff's attempt to assert a § 17200 claim on behalf of others noting that "Article III of the Constitution . . . limits the jurisdiction of the federal

---

[2] As stated below, Bryant has failed to state a claim on his own behalf as well.

courts to 'cases and controversies,' a restriction that has been held to require a plaintiff to show, *inter alia*, that he has actually been injured by the defendant's challenged conduct.") (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180, 120 S.Ct. 693 (2000)).

Absent class-action type allegations (and a successful motion to certify a class pursuant to Fed. R. Civ. P. 23), it appears to the Court that Bryant cannot assert claims challenging the Employee Agreement or the COI Questionnaire on behalf of anyone other than himself. Therefore, the Court considers only whether Bryant has stated a claim pursuant to § 17200 on his own behalf.

**3. Cal. Bus. & Prof. Code § 16600**

Bryant argues that the Agreement is "unlawful" because it violates Cal. Bus. & Prof. Code § 16600, which provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Id. Specifically, Bryant argues (without further elaboration) that "the [Employment] Agreement unlawfully impair[s] Bryant's right to prepare to compete with Mattel." Opp. at 7.

California law permits an employee to seek other employment and even to make some "preparations to compete" before resigning. See Bancroft-Whitney Co. v. Glen, 64 Cal.2d 327, 346 (1966) ("The mere fact that the officer makes preparations to compete before he resigns his office is not sufficient to constitute a breach of duty. It is the nature of his preparations which is significant.") However, "an employee may not transfer his loyalty to a competitor." Stokes v. Dole Nut Co., 41 Cal.App.4th 285, 295 (1995). "During the term of employment, an employer is entitled to its employees' undivided loyalty." Id. (internal citations and quotation marks omitted).

Mattel alleges in the Complaint that Bryant entered into an agreement with MGA to provide MGA design services on a "top priority" basis while he was still employed with by Mattel. Compl. ¶ 13. Bryant also makes similar allegations in the related case, Bryant v. Mattel, Inc., 04-09049: "MGA ultimately offered Bryant a

consulting arrangement. His agreement with MGA was signed on or about October 4, 2000. Bryant resigned from Mattel immediately, giving two weeks notice, but stayed at the company until October 20 to finish up and transition the projects on which he had been working." Compl. ¶ 38.

The parties' arguments assume that the Employment Agreement would prohibit such conduct;[3] therefore, the Court considers whether an agreement prohibiting an employee from entering into a contract with a competitor *during the course of his employment* constitutes an unfair restraint of trade in violation of § 16600. The Court concludes that it does not. Such an agreement is more akin to ensuring the employer has the "employee's undivided loyalty" than it is to an agreement that restricts an employee from "prepar[ing] to compete." For this reason, Plaintiff cannot state a § 17200 claim on this basis.

**4. <u>Cal. Labor Code §§ 96(k), 98.6 and 2699</u>**

Bryant also argues that the Agreement is "unlawful" because it violates a number of provisions of the California Labor Code. Specifically, Bryant alleges that the Agreement is "unlawful" because it violates § 96(k), which provides:

> The Labor Commissioner and his or her deputies and representatives authorized by him or her in writing shall, upon the filing of a claim therefor by an employee, or an employee representative authorized in writing by an employee, with the Labor Commissioner, take assignments of: . . . (k) Claims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises.

Cal. Labor Code § 96(k).

Section 98.6 prohibits discrimination or retaliation against an employee who engages in conduct described in §96(k). Section 2699 authorizes a private right of

---

[3] The Court does not mean to imply that Bryant has conceded this point.

action for certain violations of the Labor Code.

Assuming that § 96(k) would otherwise support a § 17200 claim, Bryant has still failed to allege any "loss of wages" or "demotion, suspension or discharge" based on lawful off-duty conduct. Therefore, Bryant has not alleged facts sufficient to support a violation of § 96(k) that would, in turn, support his § 17200 claim.

Despite Mattel's arguments against § 98.6 and § 2699 as a proper basis for Bryant's § 17200 claim, Bryant did not defend such claims in his opposition; therefore, the Court treats these claims as abandoned.

**5. <u>Cal. Labor Code § 2870</u>**

Bryant also argues that the Agreement is "unlawful" because it violates Cal. Labor Code § 2870. That provision states:

> (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:
>
> (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or
>
> (2) Result from any work performed by the employee for the employer.
>
> (b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

Cal. Labor Code § 2870.

The Employment Agreement assigns the rights to certain inventions by the

employee to the Company. The Agreement limits the scope of this assignment to the extent required by § 2870 by specifically incorporating and quoting § 2870. The Agreement also informs the employee that he bears the burden of proving that the invention falls within the scope of § 2870. This is consistent with California law. See Cal. Labor Code § 2872 ("In any suit or action arising thereunder, the burden of proof shall be on the employee claiming the benefits of its provisions.").

Therefore, Bryant cannot maintain a § 17200 claim based on § 2870.

**6. Unconscionability**

Unconscionability has both procedural and substantive elements. Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 99 (2000). Both must be present for a court to invalidate a contract or one of the contract's provisions. Id. at 114. However, "[t]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

Procedural unconscionability focuses on the elements of oppression and surprise. Discover Bank v. Superior Court, 36 Cal.4th 148, 160 (2005). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice . . . . Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." Crippen v. Central Valley RV Outlet, 124 Cal.App.4th 1159, 1165 (2004).

Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create "overly harsh" or "one-sided results." Armendariz, 24 Cal.4th at 114. To be substantively unconscionable, a contractual provision must shock the conscience. California Grocers Assn. v. Bank of America, 22 Cal.App.4th 205, 214 (1994).

Here, Bryant alleges that the Employee Agreement is a contract of adhesion. Counterclaims ¶ 26. For purposes of the present analysis, the Court assumes that the

Employment Agreement is procedurally unconscionable. See Discover Bank v. Superior Court, 36 Cal.4th 148, 160 (2005) ("The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.") (internal quotation marks and citation omitted). However, upon examination of the terms of the Employment Agreement, the Court is unable to conclude that the element of substantive unconscionability has been met. It is not surprising or overly harsh that Mattel would expect its trade secrets and proprietary information to be kept confidential; the same is true regarding Mattel's expectation that the works of its design staff — created by Mattel's employees, using Mattel's resources, during time for which Mattel paid the employee — be considered its property. Therefore, Bryant cannot state a claim based on unconscionability.

**7. Cal. Labor Code §§ 232 and 232.5**

Although not pleaded in the Counterclaims, Bryant argues that his § 17200 claim is supported by an alleged violation of §§ 232 and 232.5. These provisions prohibit limitations on an employee's ability to disclose the amount of his or her wages or information about his or her working conditions. Bryant's arguments fail to address how the Employment Agreement (which prohibits the disclosure of "trade secrets" and "proprietary information") prevented him from disclosing the amount of his wages or information about his working conditions. Bryant has failed to state a § 17200 claim based on §§ 232 and 232.5.

**8. Unfairness**

As noted above, there is only a limited basis on which a plaintiff may challenge conduct as an "unfair" business practice. See Cel-Tech Communications, 20 Cal.4th at 187 ("unfair" conduct that may be challenged pursuant to § 17200 is conduct that is, or is similar to, conduct that constitutes a violation of antitrust laws). Bryant's allegations do not state a claim for an "unfair" business practice in violation of

§ 17200.

**9. "Fraudulent" Conduct**

Bryant also argues that the same conduct complained of in connection with his fraud claim also supports a § 17200 claim based on the prohibition against "fraudulent" conduct. This claim is not cognizable. Bryant's fraud claim, explored more fully in the following section, is based upon Mattel's alleged failure to explain to him the terms of the Employment Agreement. However, to allege a "fraudulent business practice" under § 17200, a plaintiff must allege that "members of the public are likely to be deceived." Comm. on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal.3d 197, 211 (1983). Bryant has not alleged facts that would tend to establish that the public might be deceived by Mattel's conduct regarding its employment practices.

**E. Fraud Claim**

The parties agree that Bryant's fraud claim is one for fraudulent concealment, and that Bryant must allege all the elements set forth in Marketing West, Inc. v. Sanyo Fisher Corp., 6 Cal.App.4th 603, 612-13 (1992): (1) Mattel must have concealed or suppressed a material fact; (2) Mattel must have been under a duty to disclose the fact to Bryant; (3) Mattel must have intentionally concealed or suppressed the fact with the intent to defraud Bryant; (4) Bryant must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, Bryant must have sustained damage. Bryant alleges that "Mattel required [him] to execute the [Employment] Agreement without disclosing to him its true import and terms." Counterclaims ¶ 56. Bryant's claim is, in essence, that Mattel failed to inform him of the potential legal effect the Agreement might have; in other words, Bryant claims that Mattel failed to fully explain the Agreement to him. This does not support a fraudulent concealment claim.

Bryant argues, based on Marketing West, that because Mattel chose to

respond to his inquiries, Mattel was under a duty to disclose material facts. Under Marketing West, where a party is "under no duty to speak" but nevertheless "undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated." Marketing West, 6 Cal.App.4th at 613 (citing Rogers v. Warden, 20 Cal.2d 286, 289 (1942)) (internal quotation marks omitted). In other words, one who speaks "must make a full and fair disclosure." Id.

Bryant makes no allegations that suggest that anyone at Mattel falls into this category. He alleges that he was "presented with the form Agreement by Mattel," and that "he was told that his execution of the Agreement was a condition of his employment." Counterclaims ¶ 26. He then alleges that "[t]he terms of the Agreement were not explained to him." Id. This is not the situation discussed in Marketing West which, not surprisingly, prohibits a party from disclosing only that part of the truth that favors it. Here, Bryant's allegations complain that Mattel did not disclose anything regarding the Employment Agreement.

**F. Rescission**

Bryant asserts that rescission is proper because (1) the Agreement was obtained through fraud; (2) Mattel required Bryant to execute the document as a condition of employment, which resulted in duress; and (3) Mattel did not explain the terms of the Agreement to Bryant, did not give him sufficient time to review it, and did not permit or encourage him to seek legal counsel regarding the Agreement.

Bryant failed to state a fraud claim; therefore, rescission based on his fraud claim would be improper.

Bryant's allegations do not meet the standard for duress, and Mattel's failure to encourage him to seek legal counsel also does not require rescission of the Employment Agreement. See Robison v. City of Manteca, 78 Cal.App.4th 452, 457 (2000). Additionally, although Bryant argues that he was not "given a meaningful opportunity to review the Agreement at the time he executed it," he does not allege

that he asked for, and was refused, sufficient time to actually read the Agreement with which he was presented.

**G. <u>Declaratory Relief</u>**

Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that Mattel's conduct in requiring Bryant and other employees to execute the Employment Agreement constitutes unfair competition and unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200 and 16600. This claim for declaratory relief fails because the underlying § 17200 fails.

Bryant also seeks a declaration that the Employment Agreement is unlawful and unenforceable as to him and as to other current and former employees of Mattel. <u>See</u> Bryant's Counterclaims ¶¶ 61-65. As discussed previously, Bryant has no standing to assert claims on behalf of anyone other than himself. As discussed throughout this Order, Bryant has not sufficiently alleged that the Employment Agreement is unlawful or unenforceable as to him.

**H. Ruling on Motion to Dismiss (04-09059)**

The Motion to Dismiss is **GRANTED** in its entirety. Bryant requested in his Opposition for an opportunity to amend his counterclaims. Therefore, the Court dismisses Bryant's counterclaims without prejudice. Bryant may file Amended Counterclaims that conform with this Order within ten days of the entry of this Order.

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS** the Motion to Dismiss in 04-09049 and **DISMISSES WITHOUT PREJUDICE** Bryant's action for declaratory relief. The Court also **GRANTS** the Motion to Dismiss in 04-09059, and **DISMISSES WITHOUT PREJUDICE** Bryant's counterclaims. Bryant is granted ten days' leave to amend the counterclaims in conformity with this Order.

Although this Order dismisses the Complaint in 04-09049, any future filings in the consolidated action shall continue to be filed under 04-09049 in conformity with the Court's consolidation order.

IT IS SO ORDERED.

DATE: 7-17-06

S G Larson
STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE