THOMAS J. NOLAN (Bar No. 66992)
HARRIET S. POSNER (Bar. No. 116097)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
E-mail: tnolan@skadden.com
         hposner@skadden.com

RAOUL D. KENNEDY (Bar No. 40892)
TIMOTHY A. MILLER (Bar No. 154744)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
Email: rkennedy@skadden.com
       tmiller@skadden.com

AMY S. PARK (Bar No. 208204)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: apark@skadden.com

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN,
MGA ENTERTAINMENT (HK) LIMITED, AND
MGAE de MEXICO S.R.L. de C.V.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | **MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LIMITED AND MGAE DE MEXICO S.R.L. DE C.V.'S OPPOSITION TO MATTEL'S MOTION TO STRIKE AFFIRMATIVE DEFENSES** |
| MATTEL, INC., a Delaware corporation | |
| Defendant. | |
| | Honorable Stephen G. Larson |

MGA PARTIES' OPP'N TO MATTEL'S MOT. TO STRIKE AFFIRMATIVE DEFENSES

BY FAX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Consolidated with MATTEL, INC. v.
BRYANT and MGA
ENTERTAINMENT, INC. v.
MATTEL, INC.

)
)
)
)
)
)
)
)

Date:  November 19, 2007
Time:  10:00 a.m.
Place:  Courtroom 1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

PROCEDURAL BACKGROUND .............................................................. 3

ARGUMENT ............................................................................................. 7

I.     MATTEL CANNOT PROVE THAT ANY OF MGA'S
AFFIRMATIVE DEFENSES ARE INSUFFICIENT, IMMATERIAL
OR IMPROPERLY PLEADED. ....................................................... 7

     A.    Motions to Strike Are A Disfavored, Drastic Remedy That Is
Rarely Granted................................................................................ 7

     B.    Mattel Cannot Establish That Its Inequitable Conduct Is Legally
Insufficient To Support MGA's "Unclean Hands" Defense................ 9

         1.    Mattel's Attack On MGA's "Unclean Hands" Defense
Raises Disputed Factual Questions That May Not Be
Resolved At This Stage. .............................................................. 9

         2.    The Pleadings Demonstrate Sufficient Connection Between
Mattel's Misconduct And Its Counterclaims Against MGA.... 11

         3.    Mattel Mischaracterizes Judge Infante's Orders. ..................... 14

         4.    The Balance of Mattel's Legal Arguments Should Be
Rejected. ..................................................................................... 15

II.     MGA HAS PROVIDED FAIR NOTICE OF ALL AFFIRMATIVE
DEFENSES CONSISTENT WITH THE FEDERAL RULES. ................... 19

III.    MATTEL'S ATTACK ON MGA'S WAIVER, ESTOPPEL AND
ACQUIESCENCE DEFENSES REQUIRE THE COURT TO
RESOLVE FACTUAL DISPUTES BASED ON AN UNDEVELOPED
RECORD. ....................................................................................... 22

IV.    MATTEL'S ALTERATIVE MOTION FOR PARTIAL SUMMARY
JUDGMENT IS PREMATURE AND FAILS TO DEMONSTRATE
AN ABSENCE OF TRIABLE ISSUES OF FACT................................... 23

CONCLUSION ....................................................................................... 25

**TABLE OF AUTHORITIES**

Page

**Cases**

Adler v. The Fed. Republic of Nigeria, 219 F.3d 869 (9th Cir. 2000) ........................ 9

Bieter Co. v. Blomquist, 848 F. Supp. 1446 (D. Minn. 1994).................................. 19

Board of Trustees of the San Diego Electrical Pension Trust v. Bigley Electric, Inc.,
   No. 07-CV-634-IEG (LSP), 2007 WL 2070355 (S.D. Cal. July 12, 2007) .... 19, 21

California Department of Toxic Substances Control v. Alco Pacific, Inc.,
   217 F. Supp. 2d 1028 (C.D. Cal. 2002)........................................................ 7, 14, 16

California Satellite Sys., Inc. v. Nichols, 170 Cal. App. 3d 56 (1985)........................ 9

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ............................................................................................ 25

Contest Association, Inc. v. Staley, 434 F. Supp. 2d 650 (N.D. Iowa 2006) ............ 18

Dangerfield Island Protective Society v. Babbitt, 40 F.3d 442 (D.C. Cir. 1994)...... 20

De Garmo v. Goldman, 19 Cal. 2d 755 (1942)......................................................... 15

DeRosa v. Transamerica Title Ins. Co., 213 Cal. App. 3d 1390 (Cal. Ct. App. 1989)
   ........................................................................................................................... 15

Federal Trade Commision v. Medicor, No. CV011896CBMEX, 2001 WL 765628
   (C.D. Cal. June 26, 2001)................................................................................ 8, 16

Fibreboard Paper Prods. Corp. v. E. Bay Union of Machinists, 227 Cal. App. 2d 675
   (1964) .................................................................................................................. 11

Fuhrman v. California Satellite Systems, 179 Cal. App. 3d 408 (1986) ................... 16

Gallagher v. England, No. CIVR 050750 AWI SMS, 2005 WL 3299509 (E.D. Cal.
   Dec. 5, 2005) ........................................................................................................ 7

Geraghty and Miller, Inc. v. Conoco, Inc., 234 F.3d 917 (5th Cir. 2000) ................ 20

In re National Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig., 636 F.
   Supp 1138 (C.D. Cal. 1986).................................................................................

Insurance Co. of North America v. Liberty Mutual Insurance Co.,
   128 Cal. App. 3d 297 (Cal. Ct. App. 1982) ..................................................... 1, 9

Kendall-Jackson Winery, Ltd. v. Superior Court,
    76 Cal. App. 4th 970 (Cal. Ct. App. 1999) .................................. 2, 9, 10, 11, 12, 15

Kimes v. Stone,
    84 F.3d 1121 (9th Cir. 1996)...................................................................... 16

Lazar v. Trans Union LLC, 195 F.R.D. 665 (C.D. al. 2000)................................. 7

Lirtzman v. Spiegel, Inc., 493 F. Supp. 1029 (N.D. Ill. 1980) ................................. 8

Magnesystems, Inc. v. Nikken, Inc.,
    933 F. Supp. 944 (C.D. Cal. 1996)........................................................... 10, 13

Martinez v. California,
    444 U.S. 277 100 S. Ct. 553 (1980) ............................................................ 16

McCormick v. Cohn, 1992 WL 687291 (S.D. Cal. July 31, 1992), affirmed 17 F.3d
    395 (9th Cir. 1994) .............................................................................. 2, 18

Mesnick v. Caton, 183 Cal. App. 3d 1248 (1986) ........................................... 17

Morongo Band of Mission Indians v. Rose,
    893 F.2d 1074 (9th Cir. 1990)................................................................... 21

In re National Mortgage Equity Corp. Mortgage Pool Certificates, 636 F. Supp. 1138
    (C.D. Cal. 1986) .................................................................................. 18

Nissan Fire & Marine Insurance Co. v. Fritz Cos.,
    210 F.3d 1099 (9th Cir. 2000).................................................................. 3, 25

Ocean Atlantic Woodland Corp. v. DRH CambrId.ge Homes, Inc.,
    No. 02 C 2523, 2003 WL 1720073 (N.D. Ill. Mar. 31, 2003) ................................ 8

Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, 133 Cal. App.
    4th 658 (2005) .................................................................................... 11

Piscioneri v. City of Ontario, 95 Cal. App. 4th 1037 (2002)................................. 1, 10

Precision Instrument Mfg. Co. v. Automative Maint. Mach. Co.,
    324 U.S. 806 (1945) ............................................................................. 9, 15

Sagana v. Tenorio,
    384 F.3d 731 (9th Cir. 2004)................................................................... 20

San Bernardino Public Employees Association v. Stout, 946 F. Supp. 790 (C.D. Cal.
    1996).............................................................................................. 8

Sec. & Exch. Comm'n v. Toomey, 866 F. Supp. 719 (S.D.N.Y. 1992) ..................... 7

Secs. & Exch. Comm'n v. McCaskey,
   56 F. Supp. 2d 323 (S.D.N.Y. 1999) ................................................................... 1, 10

SecuriMetrics, Inc. v. Hartford Casualty Insurance Co.,No. C 05-00917 CW, 2005
   WL 2463749 at *4 (N.D. Cal. Oct. 4, 2005) ................................................ 2, 20, 23

Securities & Exchange Communication v. Sands,
   902 F. Supp. 1149 1165 (C.D. Cal. 1995) ........................................................ passim

Unilogic, Inc. v. Burroughs Corp., 10 Cal. App. 4th 612 (Cal. Ct. App. 1992) .......... 9

Williams v. Ashland Eng. Co., Inc., 45 F.3d 588, 593 (1st Cir. 1995) ..................... 20

Wong v. United States, 373 F.3d 952 (9th Cir. 2004) ................................................ 19

Woodfield v. Bowman, 193 F.3d 354 (5th Cir. 1999) ............................................ 2, 20

Wyshak v. City National Bank,
   607 F.2d 824 (1979) .......................................................................................... 19, 21

**Statutes**

Fed. R. Civ. Proc. 12(f) ............................................................................................... 7

Fed. R. Civ. Proc. 15(a) ............................................................................................. 21

Fed. R. Civ. Proc. 26(a)(1) ........................................................................................ 24

Fed. R. Civ. Proc. 8(b) ............................................................................................... 19

Fed. R. Civ. Proc. 8(c) ............................................................................................... 17

**Other Authorities**

30 California Jurisprudence 3d Equity § 27 (2007) .................................................. 15

5 Wright & Miller, supra § 1274, at 616-17 (2004) ................................................. 19

5 Wright & Miller, supra §1273, at 614-15 (2004) .................................................. 17

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and
   Procedure § 1380 (3d ed. 2004) ............................................................................ 7, 8

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and
   Procedure § 1381 (3d ed. 2004) ................................................................................ 8

1  <u>California Practice Guide: Federal Civil Procedure Before Trial</u> § 9:376 (2007)... 7, 8

2  Federal Civil Procedure Before Trial, at ¶ 9:403 ........................................................ 8

3  Federal Civil Procedure Before Trial, at ¶ 9:412 ...................................................... 21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1       MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE De

2  Mexico S.R.L. de C.V. (collectively "MGA") submit this opposition to Mattel, Inc.'s

3  ("Mattel's") Motion to Strike MGA's affirmative defenses.

4                      **PRELIMINARY STATEMENT**

5       Courts generally view motions to strike as drastic remedies often pursued for

6  harassment or dilatory purposes. See 5C Charles Alan Wright & Arthur R. Miller,

7  Federal Practice and Procedure § 1380, at 394 (3d ed. 2004). Mattel's motion is no

8  exception to that rule. It should be rejected for several reasons:

9       First, Mattels attempt to strike MGAs unclean hands defense fails because "the

10  application of the doctrine of unclean hands is primarily a question of fact," Insur.

11  Co. of No. Am. v. Liberty Mut. Insur. Co., 128 Cal. App. 3d 297, 306 (1982), and, as

12  such, is unfit for resolution on a motion to strike. See Sec. & Exch. Comm'n v.

13  Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995). Given the fact-dependent inquiry

14  that is required in resolving an unclean hands defense, MGA is entitled to a full

15  opportunity to develop the facts underlying its defense. See Piscioneri v. City of

16  Ontario, 95 Cal. App. 4th 1037, 1049-50 (2002); Secs. & Exch. Comm'n v.

17  McCaskey, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999).

18       Second, Mattel's argument that the allegations that support MGA's unclean

19  hands defense are insufficiently linked to Mattel's claims is simply blind to the

20  pleadings. Most obviously, many of the parties' respective allegations relate to the

21  ownership, commercialization and marketing of the same intellectual property – the

22  BRATZ doll collection. As background to this specific dispute, the balance of

23  MGA's unclean hands defense allegations and Mattel's counterclaims arise from a

24  wide-ranging commercial battle between the competitors in which each side claims

25  the other is engaging in unlawful business practices. For example, Mattel alleges

26  that "[f]or years MGA Entertainment, Inc. has engaged in a pattern of stealing and

27  using Mattel, Inc.'s property and trade secrets." (Mattel's 2d Am. Answer at 29.)

28

1  Similarly, MGA alleges that its unclean hands "affirmed defense is based, in part, on

2  Mattel's efforts to undermine MGA's business and to 'kill' BRATZ at any cost."

3  (MGA's Am. Answer at 20.)  Indeed, each side accuses the other of remarkably

4  similar misconduct, including interfering in dealings with customers, meddling in

5  relations with employees, disparaging the others' products, stealing trade secrets, and

6  falsely inflating performance figures.

7      Third, Mattel improperly attempts to impose undue restrictions on MGA's

8  unclean hands defense.  Contrary to Mattel's assertion, MGA need not show that any

9  of Mattel's inequitable conduct is tortious or otherwise actionable to support an

10  unclean hands defense.  See Kendall-Jackson Winery, Ltd. v. Superior Court, 76 Cal.

11  App. 4th 970, 974 (1999).  Nor is MGA barred, as a matter of law, from raising

12  unclean hands as a defense to Mattel's RICO or copyright claims  Unclean hands

13  constitutes a viable defense against copyright claims.  See McCormick v. Cohn, 1992

14  WL 687291, at *3 (S.D. Cal. July 31, 1992), aff'd 17 F.3d 395 (9th Cir. 1994).  In

15  addition, none of the cases cited by Mattel supports Mattel's proposition that

16  "[u]nclean hands is not a recognized defense to a RICO claim." (Mot. at 13.)

17      Fourth, Mattel's argument that certain of MGA's defenses do not provide "fair

18  notice" ignores the liberal pleading standard applied to affirmative defenses and is

19  undermined by Mattel's assertion of many of the identical affirmative defenses.

20  MGA is only required to provide Mattel fair notice of its defenses, not plead

21  allegations supporting every element of its affirmative defenses.  See SecuriMetrics,

22  Inc. v. Hartford Cas. Ins. Co., No. C 05-00917 CW, 2005 WL 2463749, at *4 (N.D.

23  Cal. Oct. 4, 2005).  Indeed, in some instances, courts have found that merely

24  pleading the name of the defense affords sufficient fair notice.  See Woodfield v.

25  Bowman, 193 F.3d 354, 362 (5th Cir. 1999).  Here, Mattel has been adequately

26  apprised as to what defenses MGA intends to pursue, including its defenses of

27  waiver, estoppel and acquiescence.  Moreover, Mattel's attacks on MGA's

28

1 affirmative defenses are disingenuous because Mattel pleaded many of the same
2 affirmative defenses using <u>precisely the same</u> language as MGA did or, in some
3 instances, using far less descriptive language.

4      Apparently seeking at all costs to avoid litigating the merits of MGA's
5 affirmative defenses, Mattel moves, in the alternative, for partial summary judgment
6 on MGA's defenses on the ground that MGA's Rule 26(a)(1) disclosures do not
7 specifically identify a witness or document for every particular allegation set forth in
8 MGA's answer.  But, contrary to Mattel's assertion, MGA's Rule 26(a)(1) disclosures
9 do, in fact, identify many witnesses and documents that support its affirmative
10 defenses, including its unclean hands defense.  That Mattel may desire greater
11 specificity in MGA's Rule 26 disclosures is neither required by the Federal Rules nor
12 a sufficient basis for partial summary judgment.

13      Mattel's argument that MGA lacks sufficient evidence to support its defenses
14 is further inapt in light of the stage of discovery in this case.  (Mot. at 25.)  As the
15 Ninth Circuit made clear in <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d
16 1099, 1102 (9th Cir. 2000), motions grounded on the theory of "insufficient"
17 evidence should be denied when brought before discovery has concluded.

### PROCEDURAL BACKGROUND

19      For nearly 40 years, Mattel, Inc. ("Mattel") and its "Barbie" line of dolls
20 dominated the fashion doll market.  (MGA Compl. ¶ 10.)  But in the late 1990s,
21 Mattel's long dominance began to wane, as consumer tastes modernized and Mattel
22 placed its faith in antiquated products.  (MGA Compl. ¶ 20.)  A few years later, in
23 June 2001, MGA Entertainment, Inc. ("MGA") unveiled its BRATZ line of fashion
24 dolls, which included innovative, "hip" product design, packaging and marketing.
25 (MGA Compl. ¶¶ 23-28.)  Rather than "respond … with a new creative product of its
26 own," Mattel retaliated by "wag[ing] war against MGA using a wide-array of
27 tortuous, unfair and anti-competitive practices including systematic, serial

28

1  copycatting and intellectual property infringement…[.]" (MGA Compl. ¶ 32; MGA

2  Am. Answer at 21.)  Mattel also wielded its extraordinary market power to threaten

3  MGA's suppliers, distributors, retailers, licensees, and employees. (Id. ¶¶ 74-79.)

4        The parties' pleadings reflect this escalating corporate battle between the rival

5  doll makers.  Mattel initiated this matter when, on April 27, 2004, it sued Carter

6  Bryant, alleging that Mattel was the true owner of the BRATZ line of fashion dolls.

7  On December 3, 2004, MGA intervened in Mattel's lawsuit against Mr. Bryant to

8  protect MGA's rights to the BRATZ properties. (See MGA's Answer in Intervention

9  to Pl.'s Unverified Compl.)  Five months later, on April 13, 2005, MGA sued Mattel

10  regarding a broad range of illegal business practices, including false designation,

11  dilution, unjust enrichment, "habitual and unfair tactics of competition-by-

12  intimidation," and "serial copycatting of MGA's products." (Proctor Decl. Ex. 10

13  (MGA Compl. ¶ 7).)

14        On July 12, 2007, Mattel filed its Second Amended Answer and

15  Counterclaims, asserting counterclaims for copyright infringement, violation of

16  RICO, conspiracy to violate RICO, misappropriation of trade secrets, intentional

17  interference with contract, aiding and abetting breach of fiduciary duty, aiding and

18  abetting breach of duty of loyalty, conversion and unfair competition. (Proctor Decl.

19  Ex. 13 (Mattel's 2d Am. Answer).)  Mattel also alleged, for the first time, that MGA's

20  CEO made misrepresentations to nonparty retailers about Mattel's products. (See,

21  e.g., Mattel's 2d Am. Answer at 80.)[1]

22        Finally, on August 13, 2007, MGA answered Mattel's counterclaims, which

23  MGA amended on September 19, 2007. (Proctor Decl. Ex. 14 (MGA's Answer).)

24  _____

25        [1] As the Court observed, "[w]hereas before [Mattel's] complaint simply sought
to litigate alleged contractual and fiduciary breaches by Bryant while in the employ

26  of Mattel …, the amended complaint adds five more defendants and nine new legal
claims, alleging a wide range of commercial disputes between the rival doll makers

27  that spans three countries." (Proctor Decl. Ex. 12 (Jan. 11, 2007 Order at 4)
(emphasis added).)

28

MGA's amended answer pleaded 22 affirmative defenses, including an "unclean hands" defense.  (MGA's Am. Answer at 20-21.)  To support its "unclean hands" defense, MGA asserted allegations detailing the unfair and unethical business practices that Mattel was engaged in relating to its battle against MGA. (Id.)

As the chart below illustrates, MGA's allegations are directed at the same set of transactions and matters that are the subject of Mattel's counterclaims.

| Subject Matter | Mattel's Counterclaims | MGA's "Unclean Hands" Allegations |
|---|---|---|
| BRATZ | • MGA infringed Mattel's rights to the BRATZ dolls. (2d Am. Answer & Counterclaims ¶¶ 21 – 36.) | • Mattel infringed and diluted MGA's trade dress, and copied designs, packaging and advertising related to BRATZ. (Am. Answer at 21.)<br><br>• Mattel improperly delayed in asserting infringement.  (Id.) |
| Customers, Suppliers, Retailers & Other Business Partners | • MGA tried to gain an unfair competitive advantage for MGA products vis-a-vis Mattel products by misrepresenting sales and market share figures in press releases and making false representations to retailers about BARBIE products. (2d Am. Answer & Counterclaims ¶ 79-81.) | • Mattel tried to gain an unfair competitive advantage for Mattel products vis-a-vis MGA products by, inter alia, misrepresenting sales figures to retailers and customers, created negative publicity or press about MGA, and interfering with MGA's acquisition of Zapf Creation AG.  (Am. Answer at 20-21.) |

| Subject Matter | Mattel's Counterclaims | MGA's "Unclean Hands" Allegations |
|---|---|---|
| Employees | • MGA persuaded Mattel employees to leave Mattel to join MGA (2d Am. Answer & Counterclaims ¶ 77). | • Mattel prevented prospective MGA employees from accepting offers with MGA. (Am. Answer at 21.)<br>• Mattel covertly investigated MGA, its officers, employees and family members. (Am. Answer at 20.)<br>• Mattel contacted employees under false pretenses to interrogate them (Id.) |
| Information | • MGA persuaded Mattel employees to breach confidentiality agreements and misappropriate trade secrets for MGA's benefit. (2d Am. Answer & Counterclaims ¶¶ 55-69, 70-76, 77.) | • Mattel used coercive tactics on its employees to improperly limit their disclosure of information (Id.)<br>• Mattel induced non-parties to breach confidentiality agreements with MGA and divulge non-public information. (Id.)<br>• Mattel spied and wrongfully acquired MGA's trade secrets, sales and costs data. (Id.) |

Taken together, the parties' allegations reflect a tightly drawn battle over the creation of the BRATZ dolls by Mr. Bryant and MGA and a more generalized but plainly interconnected battle between Mattel and Barbie, on the one hand, and MGA and BRATZ on the other.

## ARGUMENT

I. **MATTEL CANNOT PROVE THAT ANY OF MGA'S AFFIRMATIVE DEFENSES ARE INSUFFICIENT, IMMATERIAL OR IMPROPERLY PLEADED.**

    A. **Motions to Strike Are A Disfavored, Drastic Remedy That Is Rarely Granted.**

Motions to strike are generally regarded with disfavor. <u>Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.</u>, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citing <u>Lazar v. Trans Union LLC</u>, 195 F.R.D. 665, 669 (C.D. Cal. 2000). Indeed, courts view such motions as drastic remedies often pursued for harassment or dilatory purposes. <u>See</u> Federal Practice and Procedure § 1380, at 394..

Reflecting this disfavor, most motions to strike are denied. <u>California Practice Guide: Federal Civil Procedure Before Trial</u> § 9:376 (2007); <u>accord</u> Federal Practice and Procedure, <u>supra</u> § 1380, at 394. As one court explained, "[a] motion to strike defenses will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." <u>Sec. & Exch. Comm'n v. Toomey</u>, 866 F. Supp. 719, 722 (S.D.N.Y. 1992) (internal quotes omitted); <u>accord</u> <u>Gallagher v. England</u>, No. CIVR 050750 AWI SMS, 2005 WL 3299509, at *2 (E.D. Cal. Dec. 5, 2005) ("A defendant should be given the opportunity to prove his allegations if there is any possibility that the defense might succeed after full hearing on the merits.")

In evaluating a motion to strike, courts must view affirmative defenses in a light most favorable to the defendant and resolve any doubts about the sufficiency of a defense in the defendant's favor. <u>Alco Pac., Inc.</u>, 217 F. Supp. at 1033. Thus, to succeed on a motion to strike an affirmative defense, the moving party must first convince the court "that under no set of circumstances could the defense succeed." <u>Alco Pac., Inc.</u>, 217 F. Supp. 2d at 1032-1033 (citing <u>Sands</u>, 902 F. Supp. at 1165);

1  accord Fed. Civ. Proc Before Trial, supra § 9:381 (same); see also Fed. Trade

2  Comm'n v. Medicor, No. CV011896CBMEX, 2001 WL 765628, at *1 (C.D. Cal.

3  June 26, 2001) ("A motion to strike will not be granted if the insufficiency of the

4  defense is not clearly apparent, or if it raises factual issues that should be determined

5  by a hearing on the merits.")

6       Similarly, a motion to strike immaterial matter from a pleading "should not be

7  granted unless it is clear that the matter to be stricken can have no possible bearing

8  on the subject matter of the litigation." San Bernardino Pub. Employees Ass'n v.

9  Stout, 946 F. Supp. 790, 803 (C.D. Cal. 1996) (emphasis added); see also 5C Wright

10 & Miller, supra § 1380, at 397 ("[I]t must be shown that the allegations being

11 challenged are so unrelated to the plaintiff's claims as to be unworthy of any

12 consideration as a defense and that their presence in the pleading will be prejudicial

13 to the moving party.")

14      Significantly for the present motion, courts may not resolve questions of fact

15 or law on a motion to strike. See Sands, 902 F. Supp. at 1165; see also, 5C Wright &

16 Miller, supra, § 1381, at 426  Accordingly, the "grounds for the motion must appear

17 on the face of the pleading under attack or from matter which the court may

18 judicially notice." Sands, 902 F. Supp. at 1165 (citing Fed. Civ. Proc. Before Trial §

19 9:403 (1995)).  Courts will therefore deny motions to strike that involve unresolved

20 issues of law or fact. See, e.g., Medicor, 2001 WL 765628 at *3 (denying motion to

21 strike unclean hands defense because defendant may be able to prove facts

22 supporting its allegations); see also Lirtzman v. Spiegel, Inc., 493 F. Supp. 1029,

23 1031-32 (N.D. Ill. 1980) (denying motion to strike defense because it required

24 resolution of a factual dispute); Ocean Atl. Woodland Corp. v. DRH Cambridge

25 Homes, Inc., No. 02 C 2523, 2003 WL 1720073, at *8 (N.D. Ill. Mar. 31, 2003)

26 (same).

27

28

B.   **Mattel Cannot Establish That Its Inequitable Conduct Is Legally Insufficient To Support MGA's "Unclean Hands" Defense.**

1.   **Mattel's Attack On MGA's "Unclean Hands" Defense Raises Disputed Factual Questions That May Not Be Resolved At This Stage.**

The doctrine of unclean hands bars recovery by a plaintiff "'tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" Adler v. The Fed. Republic of Nigeria, 219 F.3d 869, 877 (9th Cir. 2000), quoting Precision Instr. Mfg. Co. v. Automative Maint. Mach. Co., 324 U.S. 806, 814 (1945). The doctrine applies "'if the inequitable conduct occurred in a transaction directly related to the matter before the court and affects the equitable relationship between the litigants.'" Unilogic, Inc. v. Burroughs Corp., 10 Cal. App. 4th 612, 621 (1992), quoting Cal. Satellite Sys., Inc. v. Nichols, 170 Cal. App. 3d 56, 70 (1985). See also Kendall-Jackson, 76 Cal. App. 4th at 974 (1999) (holding that unclean hands conduct must "connect[] to the subject matter of the litigation" and "affect[] the equitable relations between the litigants").

It is well settled that "the application of the doctrine of unclean hands is primarily a question of fact." Insur. Co. of N. Am., 128 Cal. App. 3d at 306 (1982); Piscioneri, 95 Cal. App. 4th at 1053 (2002) (holding that unclean hands is "heavily fact dependent"); Kendall-Jackson, 76 Cal. App. 4th at 978 ("Whether the doctrine of unclean hands applies is a question of fact."). As such, application of the unclean hands defense is unfit for resolution on a motion to strike. See Sands, 902 F. Supp. at 1165 ("To strike an affirmative defense, the moving party must convince the court that there are no questions of fact …[.]").

It is not surprising, then, that Mattel has not cited a single case in which an unclean hands defense raised against a private plaintiff was stricken pursuant to

1  motion.  Indeed, the two cases cited by Mattel do not involve motions to strike at all.

2  See Kendall-Jackson, 76 Cal. App. 4th at 989 (reversing trial court's grant of

3  summary adjudication); Magnesystems, Inc. v. Nikken, Inc., 933 F. Supp. 944, 954

4  (C.D. Cal. 1996) (denying motion for leave to file amended answer). [2]

5          Here, the connection between MGA's unclean hands allegations and Mattel's

6  claims is plain on the face of the pleadings.  What appears from the pleadings is a

7  tightly drawn battle over the creation of the BRATZ dolls by Mr. Bryant and MGA

8  and a more generalized but plainly interconnected battle between Mattel and Barbie,

9  on the one hand, and MGA and BRATZ on the other.  In any event, the completion

10  of discovery is required to determine precisely how intertwined the parties'

11  respective conduct has been.

12          Given the fact-dependent inquiry that is required in resolving an unclean

13  hands defense, MGA is entitled to a full opportunity to develop the facts underlying

14  its defense.  See Piscioneri, 95 Cal. App. 4th at 1049-50 (affirming trial court's

15  decision not to hear merits of unclean hands defense until after it had been "factually

16  developed"); Secs. & Exch. Comm'n v. McCaskey, 56 F. Supp. 2d 323, 326

17  (S.D.N.Y. 1999) ("[I]n evaluating such [motions to strike], the Court construes the

18  pleadings liberally to give the defendant full opportunity to support its claims at trial,

19  after full discovery has been made.").  For this reason, Mattel's motion to strike

20  MGA's unclean hands defense should be denied. [3]

21  _____

22          [2] Successful motions to strike "unclean hands" defenses arise most often in the
   context of litigation involving governmental entities, where different standards apply.

23  See, e.g., Sands, 902 F. Supp. at 1166 (noting that some courts will not apply the
   unclean hands doctrine "against a governmental agency acting in the public interest"

24  while others require the government's conduct to be "so outrageous as to cause
   constitutional injury.")

25          [3] Given the advanced state of the case at which Mattel filed its motion to strike,

26  it will not come as a surprise to the Court to learn that much of the discovery
   necessary to support MGA's unclean hands allegations has in fact been taken.

27  Nevertheless, as made clear in Sands, "grounds for the motion must appear on the
   face of the pleading under attack or from matter which the court may judicially

28                                                                                          (cont'd)

## 2. The Pleadings Demonstrate Sufficient Connection Between Mattel's Misconduct And Its Counterclaims Against MGA.

If the Court is inclined to evaluate the connection between the parties' conduct from the face of the pleadings, the pleadings plainly establish that MGA's unclean hands allegations are sufficiently related to the matters raised by Mattel's claims to support MGA's defense. To support an unclean hands defense, the asserted misconduct need not "directly relate to the plaintiffs' causes of action," but only to the "subject matter involved." Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, 133 Cal. App. 4th 658, 680-81 (2005) (citing Fibreboard Paper Prods. Corp. v. E. Bay Union of Machinists, 227 Cal. App. 2d 675, 728 (1964).

Mattel does not dispute that unclean hands allegations only need to relate to the subject matter of the asserted claims to be sufficient: "The doctrine of unclean hands 'demands that a plaintiff act fairly *in the matter for which he seeks a remedy*.'" (Mot. at 6, quoting Kendall-Jackson, 76 Cal. App. 4th at 978 (emphasis added by Mattel).) Indeed, the court in Kendall-Jackson declined to apply a narrower standard of relatedness when it reversed a grant of partial summary judgment for the plaintiff on the defendant's unclean hands defense. 76 Cal. App. 4th at 989.

There, rival winery Gallo had sued Kendall-Jackson for malicious prosecution. Id. at 975. Kendall-Jackson raised an unclean hands defense based on, *inter alia*, Gallo's undue influence over retailer merchandising activity and other unfair business practices. Id. Despite Gallo's urging to adopt a "narrow rule" in evaluating the connection between the parties' respective allegations, the Court of Appeal held that "any evidence of a plaintiff's unclean hands in relation to the transaction before the court or which affects the equitable relations between the litigants in the matter

_____
(cont'd from previous page)
notice." Sands, 902 F. Supp. at 1165. Accordingly, the record supporting MGA's unclean hands defenses has not and cannot be placed before the Court in the context of this motion.

1  before the court should be available to enable the court to effect a fair result in the

2  litigation." Id. at 985 (emphasis added).  The liberal construction of the rule, viz,

3  "any evidence in relation to the transaction," owes to its purpose: namely, "to protect

4  the court from having its powers used to bring about an inequitable result in the

5  litigation before it." Id.  Applying this broad rule, the court found that Gallo had

6  failed to "establish that its unclean hands conduct is not directly related to the

7  transaction concerning which the complaint is made or does not affect the equitable

8  relations between the parties as a matter of law." Id. at 988-89.

9          Here, the misconduct that supports MGA's unclean hands defense relates

10  directly to the subject matters of Mattel's counterclaims against MGA.  Most

11  obviously, much of the parties' disputes relate to the same piece of intellectual

12  property – the BRATZ line of dolls.  For example, Mattel asserts that MGA

13  "misrepresented BRATZ's sales, BRATZ's market share, BRATZ's position vis-a-vis

14  Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market share

15  of Mattel's BARBIE products." (Mattel's 2d Am. Answer ¶ 81.)  MGA counters in

16  its unclean hands defense that it is Mattel that is making false statements about its

17  Barbie products vis-a-vis MGA's BRATZ products.  (MGA's Am. Answer at 20

18  (basing MGA's unclean hands defense on, inter alia, "Mattel's efforts to create

19  negative publicity or press about MGA [and] MGA products," "Mattel's efforts to

20  include negative references to MGA or BRATZ on Mattel's 'We Believe in Girls'

21  website," and "Mattel's falsely inflating its Barbie sales figures in an effort to

22  mislead the public and retailers").)  Similarly, MGA alleges that its unclean hands

23  "affirmative defense is based, in part, on Mattel's efforts to undermine MGA's

24  business and to 'kill' BRATZ at any cost." (MGA's Am Answer at 20.)

25          The background to this dispute over BRATZ is allegations from both sides

26  that the other is engaging in a wide range of unlawful and unfair business practices.

27  For example, Mattel alleges that "[f]or years MGA Entertainment, Inc. has engaged

28

1 in a pattern of stealing and using Mattel, Inc.'s property and trade secrets." (Mattel's
2 2d Am Answer at 29.)  MGA makes similar allegations.  Indeed, each side accuses
3 the other of remarkably similar misconduct, including interfering in dealings with
4 customers, meddling in relations with employees and employment agreements,
5 disparaging the others' products, stealing trade secrets, and falsely inflating
6 performance figures.  (Compare MGA's AM. Answer at 21 (charging Mattel with
7 interfering in MGA's dealings with retailers, fueling negative press about MGA, and
8 falsely inflating sales figures to mislead customers) with (Mattel's 2d Am. Answer ¶¶
9 78-81) (alleging that MGA interfered in dealings with Mattel's customers, created
10 false impressions of Mattel in the media, and issued press releases that inflated MGA
11 sales, market share and position vis-à-vis Mattel).)

12      Mattel attempts to distance MGA's allegations from Mattel's counterclaims by
13 analogizing this case to the circumstances in Magnesystems.  But Magnesystems is
14 inapposite.  In that case, the district court denied the defendant's motion for leave to
15 file an amended answer to the plaintiff's patent infringement complaint in order to
16 add an unclean hands defense based on the plaintiff's own infringement of two of the
17 defendant's patents.  933 F. Supp. at 953.  Because the unclean hands defense had
18 nothing to do with the patent-in-suit, the court found that the defense was not related
19 to the matters at issue in the case.  Id.  In contrast, MGA's unclean hands relates
20 specifically to the various matters raised in Mattel's counterclaims (e.g., the
21 enforceability of Mattel's purported rights to BRATZ, representations to retailers,
22 customers and others regarding Mattel's Barbie products vis-a-vis MGA's BRATZ
23 products, and the rights and obligations of Mattel's former employees).

24      The relationship between Mattel's misconduct and the matters raised in its
25 counterclaims is an issue of fact unfit for resolution at the pleading stage.
26 Nonetheless, even a cursory examination of the pleadings shows a sufficient
27 connection between the two to survive a motion to strike.  This is especially true
28

1  when the pleadings are viewed in the requisite "light most favorable" to MGA. <u>See</u>

2  <u>Alco Pac.</u>, 217 F. Supp. 2d at 1033.

3       **3.   <u>Mattel Mischaracterizes Judge Infante's Orders.</u>**

4

5      Mattel claims that the discovery master, Judge Infante, determined that MGA's

6  "unclean hands" allegations "have nothing to do with Mattel's counterclaims." (Mot.

7  at 8.) This argument is false. As Mattel knows, the two discovery rulings it cites

8  were issued well before Mattel asserted its counterclaims.[4]  Moreover, as this Court

9  observed, Mattel's later-filed counterclaims broadened the scope of the litigation,

10 "add[ing] five more defendants, and nine new legal claims, alleging a wide range of

11 commercial disputes between the rival doll makers that spans three countries." (Jan.

12 11, 2007 Order at 4.) By contrast, Judge Infante considered the relevance of certain

13 discovery to MGA's complaint <u>alone</u>. (<u>See</u> Proctor Exs. 15 & 16 (Judge Infante's

14 4/19/07 and 5/22/07 discovery orders).) Judge Infante did not consider Mattel's

15 wide-ranging counterclaims or MGA's affirmative defenses because neither existed

16 at the time.

17     Judge Infante has never ruled on the issue before this Court:  namely, whether

18 the inequitable conduct alleged by MGA in its answer sufficiently relates to the

19      [4] Discovery in this case has resulted in a variety of discovery disputes,
20 including two disputes relevant here. <u>First</u>, on March 30, 2007, Mattel moved for a
   protective order to limit discovery related to a particular line of products, called
21 "Polly Pocket." (<u>See</u> Proctor Ex. 15 (Order Granting in Part and Den. in Part
   Mattel's Mot. for Protective Order Regarding "Polly Pocket" Docs., Apr. 19, 2007, at
22 1).) On April 19, 2007, Judge Infante granted the motion in part, finding that certain
   document requests were not relevant to MGA's complaint. (<u>Id.</u> at 5-7.) <u>Second</u>, on
23 April 13, 2007, MGA moved to compel production of certain documents pertaining
   to MGA's Lanham Act and unfair competition claims. (Proctor Ex. 16 (Order
24 Granting in Part and Den. in Part MGA's Mot. to Compel Docs. Responsive to First
   Set of Reqs. for Prod. of Docs. Dated Nov. 22, 2006, May 22, 2007, at 1).) On May
25 22, 2007, Judge Infante granted the motion in part, compelling Mattel to produce
   documents related to "Mattel's communications with any buyers, merchandisers,
26 general merchandisers or retailers about MGA providing below-market pricing or
   discontinuing a product line." (<u>Id.</u> at 16.) Significantly, Judge Infante issued the
27 above orders <u>before</u> Mattel asserted its counterclaims, and <u>before</u> MGA pleaded its
   affirmative defenses.

28

1  subject matter of Mattel's counterclaims.  Because Judge Infante's rulings do not bear

2  on the sufficiency of MGA's defenses, they are irrelevant to the present motion.

3              **4.      The Balance of Mattel's Legal Arguments Should Be**

4                      **Rejected.**

5          Finally, Mattel throws up a "virtual grab bag" of legal arguments in the hope

6  that one will stick to the wall and result in a premature dismissal of MGA's defenses.

7  As shown below, each of these arguments should be rejected.

8          First, contrary to Mattel's assertion (Mot. at 10-11), Mattel's inequitable

9  conduct need not be actionable to support an unclean hands defense.  See Kendall-

10  Jackson, 76 Cal. App. 4th at 978 ("[T]he misconduct need not be a crime or an

11  actionable tort. Any conduct that violates conscience, or good faith, or other

12  equitable standards of conduct is sufficient cause to invoke the [unclean hands]

13  doctrine.") (citing DeRosa v. Transamerica Title Ins. Co., 213 Cal. App. 3d 1390,

14  1395-1396 (Cal. 1989); cf. Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,

15  324 U.S. 806, 815, 65 S. Ct. 993,997-98 (1945) ("[O]ne's misconduct need not

16  necessarily have been of such a nature as to be punishable as a crime or as to justify

17  legal proceedings of any character.  Any willful act concerning the cause of action

18  which rightfully can be said to transgress equitable standards of conduct is sufficient

19  cause for the invocation of the maxim[.]"); See also 30 California Jurisprudence 3d

20  Equity § 27 (2007) ("A plaintiff's improper conduct need not be of a criminal

21  character, or even of a nature sufficient to constitute the basis of a cause of action

22  against him.")  Indeed, "as the very foundation of an equity forum is good

23  conscience, any really unconscientious conduct connected with the controversy to

24  which he is a party is sufficient justification for the court to close its doors to him."

25  De Garmo v. Goldman, 19 Cal. 2d 755, 765 (1942).  Thus, whether certain of

26  Mattel's misconduct constitutes an actionable tort is irrelevant for purposes of

27  evaluating the sufficiency of MGA's "unclean hands" defense.

28

1    Second, Mattel's arguments regarding purportedly "protected" conduct require

2 resolution of mixed questions of law and fact.  As such, the questions are improperly

3 resolved at this stage.  See Sands, 902 F. Supp. at 1165; Alco Pac., Inc., 217 F. Supp.

4 at 1032 (citing Sands); Medicor, 2001 WL 765628 at *1 ("A motion to strike will not

5 be granted if the insufficiency of the defense is not clearly apparent, or if it raises

6 factual issues that should be determined by a hearing on the merits.").  For example,

7 Mattel suggests that its disparaging remarks were true and therefore protected by the

8 First Amendment. (Mot. at 10-11.)  But the factual accuracy of Mattel's statements

9 has been and continues to be disputed by the parties. ((See, e.g., MGA Compl. ¶ 79)

10 (alleging knowingly false statements made by Mattel concerning MGA's business).)

11    Likewise, Mattel's argument (Mot. at 11-12) that the California litigation

12 privilege shields its alleged misconduct requires resolution of factual issues.  Indeed,

13 Mattel here rehashes an old argument, already rejected by the Court, that the

14 litigation privilege immunizes its questionable tactics as a matter of law. (Order and

15 Op. Granting in Part and Den. in Part Def.'s Mot. to Dismiss and Strike Portions of

16 the Compl., Aug. 26, 2005, at 23.)   In ruling on Mattel's earlier motion to strike, the

17 Court held that "neither the litigation privilege nor the Noerr-Pennington doctrine

18 provide a basis for striking" allegations of "bad-faith conduct" because whether

19 Mattel acted in good faith is a factual question. ((Id. at 23-24) (citing Fuhrman v.

20 Cal. Satellite Sys., 179 Cal. App. 3d 408, 420-21 (1986).)  The same reasoning

21 applies with equal force here:  whether Mattel's litigation "assistance" to MGA's

22 adversaries was undertaken in good faith is a factual question and therefore

23 inappropriate for resolution on a motion to strike. [5]

24

25    [5] Moreover, state litigation privileges cannot immunize violations of federal
26 law, such as those MGA has alleged against Mattel.  See Martinez v. California, 444
   U.S. 277, 284, 100 S. Ct. 553 (1980) ("It is clear that the California immunity statute
27 does not control this claim even though the federal cause of action is being asserted
   in the state courts."); see also, Kimes v. Stone, 84 F.3d 1121, 1127 (9th Cir. 1996)
28                                                                              (cont'd)

1    Third, Mattel's claim that certain of MGA's unclean hands allegations should

2   be stricken because it involves misconduct toward nonparties mischaracterizes both

3   MGA's allegations and the law. (See Mot. at 12-13.) As MGA has alleged, Mattel's

4   conduct involved third parties but was aimed at undermining Mattel's business.

5   ((See, e.g., MGA Compl. ¶ 9) (alleging that "Mattel has intimidated, coerced and

6   threatened retailers, licensees, suppliers and others in the industry … in order to

7   inhibit and stifle MGA's ability to compete with Mattel and to prevent MGA from

8   obtaining licensees, contracts and supplies for its products").)[6] Unlike this case, the

9   case cited by Mattel involved an unclean hands allegation that had nothing to do with

10  the adverse party. In Mesnick v. Caton, the plaintiff landowner sued his neighbor for

11  trespass after the neighbor installed a fence that extended onto the plaintiff's property.

12  183 Cal. App. 3d 1248, 1253 (1986). The defendant then attempted to raise an

13  "unclean hands" defense based on the plaintiff's encroachment upon another

14  neighbor's property, which had no connection to the defendant's land. Id. at 1262.

15      Fourth, Mattel's argument that its misconduct cannot, as a matter of law, bar

16  recovery on its RICO or copyright claims rests on similarly shaky legal ground. (See

17  Mot. at 13-15.) As an initial matter, MGA's "unclean hands" defense cannot be

18  stricken simply because it may not constitute a complete defense to all of MGA's

19  claims. See 5 Wright & Miller, supra §1273, at 614-15 (2004) ("the obligation to

20  plead affirmative defenses is not limited to complete defenses" and "partial defenses

21  should be pleaded affirmatively") (citing Fed. R. Civ. Proc. 8(c)).

22      Moreover, contrary to Mattel's suggestion (Mot. at 14), "unclean hands"

23  constitutes a viable defense against copyright claims. See McCormick v. Cohn,

24

25  (cont'd from previous page)
    (holding that the California litigation privilege did not bar plaintiff's federal claim,
    due to Supremacy Clause).

26      [6] Mattel accused MGA of remarkably similar conduct involving third parties,

27  but affecting Mattel's operations. (Compare MGA Compl. ¶ 9 with Mattel 2d Am.
    Answer at ¶¶ 78-81, 163-66.)

28

1 | No. CV 90-0323H 1992 WL 687291, at *3 (S.D. Cal. July 31, 1992), aff'd, 17 F.3d
2 | 395 (9th Cir. 1994) ("The equitable defense of unclean hands applies in copyright
3 | cases to prevent a plaintiff from gaining equitable relief, such as a permanent
4 | injunction ... [and] from recovering the legal remedy of damages for a copyright
5 | claim..."); Contest Ass'n, Inc. v. Staley, 434 F. Supp. 2d 650, 666 (N.D. Iowa 2006)
6 | (concluding that "'unclean hands' is also a viable defense to a copyright infringement
7 | action...[.]"). The defense also is not limited to the "rare" situations identified by
8 | Mattel, but applies whenever "the plaintiff's wrongful acts directly relate to the
9 | merits of the controversy." McCormick, 1992 WL 687291 at *4 (finding that
10 | unclean hands defense barred recovery on copyright claims because plaintiffs had
11 | misstated their ownership of the copyright and had violated a court order requiring
12 | the production of documents which would have had an impact on the defense of the
13 | copyright claims). Here, MGA's unclean hands defense includes allegations that
14 | directly relate to the merits of Mattel's copyright infringement claim. (MGA's Am.
15 | Answer at 21 (alleging that Mattel engaged in "the willful non-retention and
16 | destruction of documents" and "waited years to bring suit").)

17 |      With respect to its civil RICO claims, Mattel has not cited a single case
18 | holding that "[u]nclean hands is not a recognized defense to a RICO claim." (Mot.
19 | at 13.) Although Mattel suggests that there is authority to support its argument, the
20 | two cases offered by Mattel are plainly inapposite. In National Mortgage Equity, the
21 | district court did not consider a motion to strike an "unclean hands" defense but
22 | rather whether a plaintiff could assign RICO claims against a fellow wrongdoer
23 | under the in pari delicto doctrine. In re Nat'l Mortgage Equity Corp. Mortgage Pool
24 | Certificates, Sec. Litig. 636 F. Supp 1138, 1156 (C.D. Cal. 1986). Similarly, in
25 | Bieter Company, a Minnesota federal court addressed the defendant's in pari delicto
26 | defense on plaintiff's motion for summary judgment. Only after evaluating the
27 | factual record did the Court conclude that the plaintiff was not "at least substantially
28 |

1 equal[ly] respons[ible] for the violations it [sought] to redress." <u>Bieter Co. v.</u>

2 <u>Blomquist</u>, 848 F. Supp. 1446, 1449-50 (D. Minn. 1994).  Contrary to Mattel's

3 contention, the court declined to endorse the far broader proposition that unclean

4 hands cannot bar RICO claims as a matter of law.

5 **II.    MGA HAS PROVIDED FAIR NOTICE OF ALL AFFIRMATIVE**

6 **DEFENSES CONSISTENT WITH THE FEDERAL RULES.**

7         Mattel contends that certain of MGA's defenses do not provide fair notice

8 either because they fail to include facts supporting all elements of the defense (Mot.

9 at 16, 19) or because the defenses are "conclusory" (Mot. at 19-22).  Both arguments

10 are incorrect as a matter of law, and the latter argument is disingenuous.

11         The Federal Rules require only that a party "state in short and plain terms the

12 party's defenses to each claim asserted."  Fed. R. Civ. Proc. 8(b).  <u>See</u> <u>also</u> 5 Wright

13 & Miller, <u>supra</u> § 1274, at 616-17 (2004) ("As numerous federal courts have held, an

14 affirmative defense may be pleaded in <u>general terms</u> and will be held to be sufficient,

15 and therefore invulnerable to a motion to strike, as long as it gives plaintiff <u>fair</u>

16 <u>notice of the nature of the defense</u>.") (emphasis added).

17         The Ninth Circuit has made clear that "[t]he key to determining the sufficiency

18 of pleading an affirmative defense is whether it gives plaintiff <u>fair notice</u> of the

19 defense."  <u>Wyshak v. City Nat'l. Bank</u>, 607 F.2d 824, 827 (9th Cir. 1979) (holding

20 that plaintiff had fair notice of defendant's statute of limitations defense because

21 defendant's answer pleaded the name of the defense and defendant's motion for leave

22 identified the specific statute on which defendant was relying) (emphasis added).

23 The Ninth Circuit has further held that "fair notice" <u>does not</u> require that a party

24 "plead all the elements of a prima facie case."  <u>Wong v. United States</u>, 373 F.3d 952,

25 969 (9th Cir. 2004).  Rather, the plaintiff need only have "'fair warning that a

26 particular line of defense will be pursued.'"  <u>Bd. of Trs. of the San Diego Elec.</u>

27 <u>Pension Trust v. Bigley Elec., Inc.</u>, No. 07-CV-634-IEG (LSP), 2007 WL 2070355,

28

1  at *2 (S.D. Cal. July 12, 2007), quoting <u>Williams v. Ashland Eng. Co., Inc.</u>, 45 F.3d

2  588, 593 (1st Cir. 1995).

3       In <u>SecuriMetrics, Inc. v. Hartford Cas. Ins. Co.</u>, No. C05-00917 CW, 2005

4  WL 2463749 (N.D. Cal. Oct. 4, 2005), the district court specifically rejected the

5  argument that "an affirmative defense must plead allegations supporting all material

6  elements of the asserted defense." <u>Id.</u> at *5.  As the court recognized, "that is <u>not</u> the

7  standard that this Court must follow." <u>Id.</u> (emphasis added). Applying the "fair

8  notice" standard, the court therefore rejected plaintiff's argument that it should strike

9  certain defenses that failed to plead all elements constituting the defense.  <u>Id.</u>

10      Indeed, in some instances, courts have found that merely pleading *the name of*

11 *the defense* affords sufficient fair notice.  <u>See</u> <u>Woodfield v. Bowman</u>, 193 F.3d 354,

12 362 (5th Cir. 1999) ("We acknowledge that in some cases, merely pleading the name

13 of the affirmative defense … may be sufficient."); see also <u>Geraghty and Miller, Inc.</u>

14 <u>v. Conoco, Inc.</u>, 234 F.3d 917, 925 (5th Cir. 2000) ("a mere assertion of the defense

15 satisfies the pleading requirements of Rule 8 of the Federal Rules of Civil

16 Procedure"); <u>Dangerfield Island Protective Soc'y v. Babbitt</u>, 40 F.3d 442, 444-45

17 (D.C. Cir. 1994) (same); <u>SecuriMetrics</u>, 2005 WL 2463749, at *6  (declining to

18 strike "boilerplate" contributory negligence and intervening causes defenses because

19 plaintiff did not establish that a third party's acts or omissions "could not possibly

20 have contributed" to plaintiff's losses); <u>cf.</u> <u>Sagana v. Tenorio,</u> 384 F.3d 731, 737 (9th

21 Cir. 2004) ("A party need not plead specific legal theories in the complaint, so long

22 as the other side receives notice as to what is at issue in the case.").

23      Here, MGA has pleaded sufficient information to give Mattel fair notice as to

24 the defenses it intends to pursue, and in some instances has provided multiple pages

25 of factual detail. (<u>See</u>, <u>e.g.</u>, MGA's Am. Answer at 20-21.) [7]  Indeed, Mattel's

26 ──────────────

27      [7] MGA believes it has provided Mattel with fair notice of its affirmative
   defenses. If the Court nonetheless concludes that MGA did not afford Mattel with

28                                                                        *(cont'd)*

1  complaints about MGA's affirmative defenses are not directed at any purported

2  failure to notify Mattel of the defenses, but are focused on Mattel's desire to obtain

3  information about the facts underlying those defenses. For example, Mattel argues

4  that MGA's Eleventh Affirmative Defense of "failure to mitigate" is inadequate

5  because it does not identify the mitigating measures that Mattel failed to take. (Mot.

6  at 21.) Courts, however, have held that such factual details are not required to

7  adequately plead a "failure to mitigate" defense. See Bigley, 2007 WL 2070355 at

8  *3 ("A handful of courts have been confronted with the issue of whether a

9  defendant's mere allegation that 'plaintiff failed to mitigate damages' is sufficient

10  under the pleading requirements of Rule 8. These courts have typically held that a

11  generalized statement … meets defendant's pleading burden with respect to the

12  affirmative defense of damage mitigation.") (citing cases).

13       Mattel's argument that MGA's affirmative defenses are conclusory and

14  therefore deprive Mattel of fair notice is also disingenuous: MGA's affirmative

15  defenses often employed precisely the same language that Mattel used in its own

16  answer, and, in other instances, far exceeded the level of detail Mattel offered MGA

17  on the very same defenses. As the chart below shows, there are striking similarities

18  between the parties' respective allegations of the same affirmative defenses:

19

20

21

22

23  (cont'd from previous page)

24  fair notice, MGA respectfully requests leave to amend its answer. Such requests are freely granted. See Fed. R. Civ. Proc. 15(a) ("[L]eave shall be freely given when

25  justice so requires."); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (the policy of favoring amendments to pleadings is to be

26  "applied with extreme liberality"); Wyshak v. City National Bank, 607 F.2d 824, 826-27 (1979).(" In the absence of prejudice to the opposing party, leave to amend

27  should be freely given."); Fed. Civ. Proc. Before Trial, supra, at ¶ 9:412 ("Leave to amend is [freely] granted" if a portion of an affirmative defense is stricken.)

28

MGA PARTIES' OPP'N TO MATTEL'S MOT. TO STRIKE AFFIRMATIVE DEFENSES

| Defense | MGA's Am. Answer | Mattel's 2d Am. Answer |
|---|---|---|
| Acts or Omissions of Others | "Mattel's damages, if any, were not caused by the MGA Defendants and are not attributable to any acts of omissions of MGA Defendants." (At 23.) | "Plaintiff's damages, if any, were not caused by Mattel and are not attributable to the acts or omissions of Mattel." (At 28.) |
| Failure to Mitigate | "MGA Defendants deny that Mattel suffered any damages, but even if it did, Mattel failed to take reasonable steps to mitigate those purported damages." (At 24.) | "Plaintiff failed to mitigate its damages, if any." (At. 28.) |
| Good Faith | "Mattel's counterclaims are barred in whole or in part because the MGA Defendants acted in good faith." (At. 25.) | "Plaintiff's requested relief, including plaintiff's requests for punitive and/or enhanced damages, are barred in whole or in part because all of Mattel's actions were in good faith." (At. 28.) |
| Lack of Standing | "Mattel's counterclaims are barred in whole or in part by its lack of standing." (At 25.) | "Plaintiff's claims are barred in whole or in part by its lack of standing." (At. 27.) |

Having employed nearly identical language in pleading the same affirmative defenses that are the subject of its motion to strike, Mattel cannot credibly argue that MGA failed to provide fair notice of its defenses.

### III. MATTEL'S ATTACK ON MGA'S WAIVER, ESTOPPEL AND ACQUIESCENCE DEFENSES REQUIRE THE COURT TO RESOLVE FACTUAL DISPUTES BASED ON AN UNDEVELOPED RECORD.

Mattel argues that MGA "cannot show" certain elements constituting waiver, estoppel and acquiescence, and advances arguments regarding the probative value of disputed facts. (Mot. at 15-19.)  As an initial matter, when MGA intervened in this action, MGA asserted these same defenses in its Answer in Intervention.  (See MGA's Answer in Intervention to Pl.'s Unverified Compl. at 8.)  Although MGA included no specific factual allegations in pleading these defenses in its Answer in

1  Intervention, Mattel did not file any motion to strike or otherwise complain that

2  MGA had deprived Mattel of fair notice.  It is unclear how Mattel now has suddenly

3  become unable to discern the same defenses in MGA's answer to Mattel's

4  counterclaim, particularly since MGA's answer to Mattel's counterclaim includes

5  specific allegations to support its waiver, estoppel and acquiescence defenses.

6     MGA has properly pleaded these defenses because, as discussed above, MGA

7  need only provide Mattel fair notice of its defenses, not plead allegations supporting

8  every element of its affirmative defenses.  See SecuriMetrics, Inc. v. Hartford Cas.

9  Ins. Co., No. C 05-00917 CW, 2005 WL 2463749, at *4 (N.D. Cal. Oct. 4, 2005)

10  MGA has complied with its obligations by not only identifying the defenses by name,

11  but also detailing some of the factual averments supporting them.  (MGA's Am.

12  Answer at 23-24.)  Notably, although Mattel also asserted the same three defenses in

13  its answer to MGA's claims, Mattel simply identified the defenses by name without

14  providing a single factual allegation to support them.  (Mattel's 2d Am. Answer at 27,

15  Eighth Affirmative Defense ("Plaintiff's claims are barred in whole or in part by the

16  doctrines of waiver, estoppel and acquiescence").)

17  **IV.  MATTEL'S ALTERATIVE MOTION FOR PARTIAL SUMMARY**

18  **JUDGMENT IS PREMATURE AND FAILS TO DEMONSTRATE AN**

19  **ABSENCE OF TRIABLE ISSUES OF FACT.**

20     Desperate to avoid litigating the merits of MGA's affirmative defenses, Mattel

21  alternatively moves for partial summary judgment on MGA's defenses solely on the

22  ground that MGA's Rule 26(a)(1) disclosures do not specifically identify a witness or

23  document for every particular allegation set forth in MGA's answer.  Given the many

24  important issues that must be addressed by the parties and the Court in the coming

25  months, litigating such a clearly unfounded and ill-conceived motion is truly a waste

26  of the parties' and the Court's valuable time and resources.

27

28

1    First, contrary to Mattel's assertion, MGA's Rule 26(a)(1) disclosures do, in

2  fact, identify many witnesses and documents that support its affirmative defenses,

3  including its unclean hands defense. (MGA's Supp. Discls. at 1-19.)  MGA's

4  disclosures identify numerous persons who may know of facts "in support of MGA's

5  defenses to Mattel's counterclaims" including Mattel's RICO and trade secret

6  counterclaims.  (Id. at 1-16.)  MGA's disclosures also list persons who "may possess

7  information relevant to Mattel's unfair competition and unclean hands." (See, e.g., Id.

8  at 2, 4 & 13 (emphasis added).)  In addition, MGA's disclosures identify persons

9  with knowledge about many of the specific allegations set forth in MGA's answer.

10  MGA's disclosures also identify documents relevant to its affirmative defenses,

11  including "[d]ocuments showing the hiring and employment practices and policies of

12  Mattel, including but not limited to contracts employees are asked to sign," and

13  "[d]ocuments reflecting or evidencing Mattel's interference with MGA's advertising

14  efforts; Mattel's threats to and intimidation of retailers, suppliers, licensees,

15  distributors, manufacturers, and former employees and freelancers; [and] Mattel's

16  improper influence of standard-setting and industry organization…" (Id. at 18.)

17    That Mattel may desire greater specificity in MGA's Rule 26 disclosures is

18  neither required by the Federal Rules nor a sufficient basis for partial summary

19  judgment.  Under Rule 26, a party's initial disclosure obligations are limited to

20  information "reasonably available to it at the time of disclosure." Fed. R. Civ. Proc.

21  26(a)(1), last sent.  The rule does not demand an overly exhaustive investigation, but

22  one that is reasonable under the circumstances. Id., 1993 Adv. Comm. Notes.

23  Further, contrary to Mattel's contention, MGA need only identify the "subject

24  matter" of the information known by particular witnesses, not each affirmative

25  defense or each specific allegation to which the subject matter may pertain. Fed. R.

26  Civ. Proc. 26(a)(1)(A).  Thus, any inference regarding extant evidence based on

27

28

1   MGA's disclosures is improper in view of both what Rule 26 requires be disclosed

2   and the substantial disclosures that MGA has actually made in this case.[8]

3          Mattel's argument that MGA lacks sufficient evidence to support its defenses

4   is further inapt given the stage of discovery in this case.  (Mot. at 25.)  As the Ninth

5   Circuit made clear in Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099,

6   1102 (9th Cir. 2000), motions grounded on the theory of "insufficient" evidence

7   should be denied when brought before discovery has concluded.  Indeed, "before a

8   moving party will be permitted to carry its initial burden of production, the

9   nonmoving party must first be given sufficient opportunity for discovery."  Id. at

10  1105-06 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)) (emphasis

11  added).  Given that discovery is still months from closing and MGA has not yet

12  concluded discovery regarding its recently-filed affirmative defenses, there is simply

13  no reason for the Court to take up this issue now.

14                              **CONCLUSION**

15         For the foregoing reasons, Mattel's Motion to Strike Affirmative Defenses or,

16  in the alternative, For Partial Summary Judgment, should be DENIED.

17

18  DATED:  November 5, 2007

                              SKADDEN, ARPS, SLATE, MEAGHER &
19                            FLOM, LLP

20                            By:  _Thomas J. Nolan_/RHW

21                                 Thomas J. Nolan

22          [8] Mattel's purported "Statement of Uncontroverted Facts" identifies
23  approximately 30 allegations from MGA's Answer and asserts with respect to each
    that MGA has failed to identify witnesses or documents.  First, as shown above,
24  Mattel's assertion that MGA failed to identify witnesses or documents to support its
    allegations is false.  To that extent, each of MGA's purported "uncontroverted facts"
25  is controverted.  Second, Mattel's "uncontroverted facts" are not statements of fact at
    all, but rather improper arguments in which Mattel seeks to inaccurately characterize
26  MGA's initial disclosures.  Third, Mattel's entire presentation of "uncontroverted
    facts" is premised upon the ungrounded assertion that a "insufficiency of evidence"
27  argument can be based upon a party's Rule 26 disclosures.  See Nissan Fire, 210 F.3d
    at 1102.

28

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On **November 5, 2007**, I served the foregoing documents described as:

**MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LIMITED AND MGAE DE MEXICO S.R.L. DE C.V.'S OPPOSITION TO MATTEL'S MOTION TO STRIKE AFFIRMATIVE DEFENSES**

on the interested parties in this action addressed as follows:

## SEE ATTACHED SERVICE LIST

☒     **(BY MAIL)** I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices.

☒     **(VIA FACSIMILE)** By transmitting the document listed above to the fax numbers on the attached service list.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on November 5, 2007 at Los Angeles, California.

Becky Isomoto
PRINT NAME                                    SIGNATURE

*Carter Bryant vs. Mattel, Inc.*
CV 04-9049 SGL (RNBx)
Consolidated with CV 04-09059 and CV 05-02727

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
(213) 443-3100 (Fax)

*Attorneys for Mattel, Inc.*

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415)391-5400
(415) 397-7188 (Fax)

*Attorneys for Carter Bryant*