without limitation of all revenues and profits attributable to Counter-defendants' infringement of Mattel's copyrights under 17 U.S.C. § 504;

   8. For an accounting of all profits, monies and/or royalties from the exercise of ownership, use, distribution, sales and licensing of Bratz;

   9. For the imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and all profits, monies, royalties and any other benefits derived or obtained from Counter-defendant's exercise of ownership, use, sale, distribution and licensing of Bratz;

   10. That Mattel recover its actual damages and lost profits;

   11. That Counter-defendants be ordered to pay exemplary damages in a sum sufficient to punish and to make an example of them, and deter them and others from similar wrongdoing;

   12. That Counter-defendants be ordered to pay treble its general and special damages, plus interest, costs and attorney's fees incurred by reason of Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

   13. That Counter-defendants be ordered to pay double damages due to their willful and malicious misappropriation of Mattel's trade secrets with deliberate intent to injure Mattel's business and improve its own;

   14. That Counter-defendants pay to Mattel the full cost of this action and Mattel's attorneys' and investigators' fees; and

-77-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 11 PAGE 174

15. That Mattel have such other and further relief as the Court may deem just and proper.

DATED: July 12, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _John Quinn (BAP)_
John B. Quinn
Attorneys for Defendant and Counter-claimant Mattel, Inc.

-78-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 11   PAGE 175

**DEMAND FOR JURY TRIAL**

Mattel, Inc. respectfully requests a jury trial on all issues triable thereby.

DATED: July 12, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _John Quinn /BO_
John B. Quinn
Attorneys for Defendant and Counter-claimant Mattel, Inc.

-79-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

**Exhibit A**

EXHIBIT 11 PAGE 177

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in the Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any Invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

_Carter Bryant_ (signature)
Employee Signature

_CARTER H. BRYANT_
Employee Name (print)

_01/04/99_
Date

MATTEL, INC.
By: _Teresa Newcomb_ (signature)
Signature

_TERESA NEWCOMB_
Name of Witness (print)

EXHIBIT 4 PAGE 80

M 0001622

EXHIBIT 11 PAGE 178

**Exhibit B**

EXHIBIT __11__ PAGE __179__

## CONFLICT OF INTEREST QUESTIONNAIRE

Name (Last, first, M.I.): **BRYANT, CARTER H.**
Job Title: **PROJECT DESIGNER**
Department: _____

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

- ◯ YES  ● NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?
- ◯ YES  ● NO   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?
- ◯ YES  ● NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?
- ● YES  ◯ NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?
- ● YES  ◯ NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?
- ◯ YES  ● NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?
- ◯ YES  ● NO   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?
- ◯ YES  ● NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?
- ◯ YES  ● NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

4, 5; freelance design & artwork in 1998, from appx. 5/98 - 11/98 for the Ashton-Drake galleries.

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

Signature: _[signed] Carter Bryant_    Date: 01/04/98

EXHIBIT **B** PAGE **21**    M 0001621

EXHIBIT **11** PAGE **180**

# EXHIBIT 12

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ✓     Send ✓
Entered ✓     Closed
JS-5/JS-6      JS-2/JS-3
Scan Only____  Docketed on CM ✓
____ THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)
    8/29/07
EASTERN DIVISION
BY___ DEPUTY

# PRIORITY SEND
### & ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
### CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL (RNBx)                    Date: August 27, 2007

Title:   CARTER BRYANT -v- MATTEL, INC.
         AND CONSOLIDATED ACTIONS
================================================================================

PRESENT: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Gina L. Guzman                           Theresa Lanza
Courtroom Deputy Clerk                   Court Reporter

ATTORNEYS PRESENT FOR CARTER             ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker, Esq.                      John B. Quinn, Esq.
(morning session only)                   Michael T. Zeller, Esq.
                                         Jon D. Corey, Esq.

ATTORNEYS PRESENT FOR MGA:

Patricia Glaser, Esq.
Diana M. Torres, Esq.

PROCEEDINGS:    **ORDER DENYING MOTION FOR TERMINATING SANCTIONS;
                ORDER DENYING REQUEST FOR INTERLOCUTORY
                APPEAL; ORDER REQUIRING FILING OF AFFIDAVITS RE
                EVIDENCE PRESERVATION**

   This matter is before the Court on MGA's and Carter Bryant's Motion for Terminating Sanctions, filed on July 24, 2007 (docket #889). This matter was heard on August 27, 2007, at which time it was taken under submission. The Court has considered the moving, opposition, and reply briefs, as well as the many declarations and other evidence presented by the parties. The

MINUTES FORM 90                                    Initials of Deputy Clerk __ glg
CIVIL -- GEN                                       Time: 02/52
                                 1                 Docket No. 895

EXHIBIT _12_ PAGE _181_

Court has also considered the arguments presented at the August 27 hearing and the sworn testimony given by Michael C. Moore, in-house counsel for Mattel. Although at the hearing the Court indicated it would defer ruling on the present motion pending further filings by all parties regarding their efforts to preserve evidence, upon further reflection the Court sees no reason to delay ruling on the current motion.[1] As set forth below, the Court **DENIES** the motion.

Based on their inherent power to sanction for "abusive litigation practices," district courts may impose sanctions against a party who destroys evidence, including the ultimate sanction of dismissal. Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006). Dismissal is a harsh sanction, which may nonetheless be imposed upon those parties who have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995). However, before imposing the ultimate sanction of dismissal, district courts should consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. Nevertheless, district courts need not make explicit findings regarding each of these factors and, in any event, "a finding of willfulness, fault, or bad faith is required for dismissal to be proper." Leon, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks and citation omitted).

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" Id. at 959 (quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (finding no willful spoliation where documents were destroyed in the routine course of business)). Neither Leon nor Kitsap elaborate on when a party has the "notice" necessary to trigger the duty to preserve evidence. However, in In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1068 (N.D. Cal. 2006), the district court presented a persuasive discussion of the standard, first rejecting an argument that the duty to preserve evidence arises only when litigation is "imminent," and then setting forth a lesser standard. Specifically, the Napster court noted that the duty arose "when a party should have known that the evidence may be relevant to future litigation," and that any such "future litigation" must be "probable," and not merely "possibl[e]." (internal quotation marks and citation omitted).

Keeping in mind these standards, the Court turns to the categories of evidence MGA and Bryant allege that Mattel has despoiled. As articulated by the Court at the hearing on this matter, those categories are (1) Mattel employees' emails, (2) documents maintained on the Zeus document storage system, (3) the delay in producing certain Rule 30(b)(6) witnesses, (4) Carter

---

[1] By the same token, upon further reflection, the Court sees no reason to delay ruling on MGA's request for interlocutory appeal of the present order. See 28 U.S.C. § 1292(b) (stating that certifications for interlocutory appeal should be set forth in the order to be appealed). The Court's ruling on that matter appears infra.

MINUTES FORM 90  
CIVIL – GEN

Initials of Deputy Clerk __pla_____  
Time: 02/52

2

Docket No. 895

EXHIBIT 12   PAGE 182

Bryant's missing phone records, and (5) Carter Bryant's missing time records.

In considering the arguments of the parties regarding when Mattel's duty to begin to preserve evidence arose, the Court determines that November 24, 2003, marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable. On this date, in-house counsel for Mattel received in discovery in an unrelated action a copy of a contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel. This contract appeared to Mattel to violate certain employment agreements executed by Bryant and Mattel, thus giving rise to one of the current consolidated actions. Although prior to this date an internal investigation may have raised a suspicion on Mattel's part that litigation might arise, there was no evidence presented to the Court that Mattel should have known it had a viable claim against Bryant before November 2003. Cf. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court . . . a pleading . . . , an attorney
. . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

The Court heard testimony from Michael C. Moore, in-house counsel for Mattel, regarding the efforts to preserve email communications and other evidence. Counsel for MGA and Bryant cross-examined Mr. Moore at the hearing on this matter. The Court credits his testimony. The efforts Mr. Moore described regarding the preservation of emails is reasonable, and certainly does not amount to spoliation. Moore described communications with specific individuals identified by Mattel as those most likely to have information relevant to the litigation and efforts made to preserve any evidence those individuals had in their custody or control. Emails not otherwise archived from the relevant time period -- mostly September and October, 2000 -- had already been deleted from Mattel's email servers in accordance with its email retention policies. Mattel cannot be faulted for deleting these emails in the regular course of business before it had notice of its claims against Bryant.

In April, 2005, the current litigation took a dramatic turn, when MGA filed suit against Mattel. At that time, all Mattel employees were instructed to maintain any evidence potentially relevant to the litigation. When that suit was filed, Mattel took action to preserve all of its emails, capturing emails that date back to December, 2004. They retain these backup tapes to this day. MGA and Bryant make much of Mattel's failure to suspend its 90-day auto-delete policy regarding emails, but fail to address two key points: First, Mattel altered only the storage mechanism for its emails, it did not actually delete any emails; and second, Mattel, a number of years ago, informed MGA that it was not planning on suspending its 90-day auto-delete policy, and MGA did not at that time object.

As for the Zeus tapes, there is simply no evidence of spoliation. First and foremost, as the system has been described to the Court, the system is a cumulative file system that continues to accumulate. The system is still in operation, does not have an auto-delete function, and

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk __gls__
Time: 02/52

3

Docket No. 895

EXHIBIT __12__ PAGE __183__

information dating back to all relevant time period in this case may be accessed from it. Additionally, Mattel's in-house counsel testified as to the existence of several backup tapes that it can make available to MGA and Bryant. Finally, outside of pure speculation, there is no evidence that anyone has deleted anything from the Zeus system. Although production issues may still remain with respect to these data, preservation of this data, in the Court's view, is simply not an issue based on the record before the Court.

The delay in producing certain Rule 30(b)(6) witnesses is not a proper basis for terminating sanctions in this case. No motions to compel were brought to compel these witnesses's depositions at earlier times, and MGA and Bryant's accusations that the delay in producing them for deposition is part of a cover-up of the destruction of evidence is mere unfounded speculation. Moreover, the Court is mindful that MGA has been found by the discovery master to be guilty of the very same unexcused delay of which it accuses Mattel. See August 14, 2007, J. Infante Order, at 8 and 9 (attached to the Supplemental Proctor Decl. as Ex. 1).

Although Mattel is at a loss to explain the missing phone records from the critical month of October, 2000, there is no evidence that the records were destroyed. Moreover, other evidence presented by Mattel, especially phone records produced by Bryant that show he was in contact with MGA during that time period, suggest that the missing records would not assist Bryant.

The "missing" time records were either never created or were deleted. There is no evidence that the latter occurred. In fact, the only evidence on this point, from Mattel's Rule 30(b)(6) witness, is that although deletion of time records is possible, he was unaware of any instances of that occurring. Artavia Depo. 116, 170-71.

In sum, MGA and Bryant have failed to present any evidence regarding the "willfulness, fault, or bad faith" required to justify the imposition of terminating sanctions. Leon, 464 F.3d at 958. Many of MGA and Bryant's allegations, especially those raised in connection with Mattel's failure to suspend its auto-delete policy (portrayed as a wholesale failure to preserve emails less than 90-days old) and the availability of data from the Zeus system, are nothing more than rhetoric laced with hyperbole. Other allegations, such as Mattel's motive for delaying certain Rule 30(b)(6) depositions, and the destruction of Bryant's October, 2000, phone records and time records, are nothing more than sheer speculation, unsupported by evidence. Although counsel impressed upon the Court MGA's conviction of the righteousness of its cause, such overzealous conviction as witnessed by the Court at the hearing is no substitute for proof.

Accordingly, the Court **DENIES** MGA's and Bryant's Motion for Terminating Sanctions.

At the hearing, counsel for MGA and Bryant requested the Court certify the present order for interlocutory appeal. That request is **DENIED**. Permissive Interlocutory appeals are governed by 28 U.S.C. § 1292(b):

When a district judge, in making in a civil action an order not otherwise

MINUTES FORM 90
CIVIL – GEN

Initials of Deputy Clerk __gjg__
Time: 02/52

4

Docket No. 895

EXHIBIT 12 PAGE 184

appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Id. Here, there is no "controlling question of law" in controversy. The law is quite settled. Accordingly, certification for interlocutory appeal of the present order is unwarranted.

As stated at the hearing, the Court **ORDERS** all parties to set forth, in affidavit form, their preservation efforts and policies with respect to the present litigation on or before September 10, 2007.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL – GEN

5

Initials of Deputy Clerk __gjg__
Time: 02/52
Docket No. 895

EXHIBIT 12 PAGE 185