1  • a document containing the product launch dates and related advertising
2      for all Mattel new products between Fall 2005 and Spring 2006.

3      75.   After Mattel discovered that Brisbois had copied these sensitive
4  documents to a thumb drive, Mattel notified Canadian law enforcement authorities.
5  Canadian law enforcement authorities recovered from Brisbois a thumb drive with
6  the volume label "BACKPACK" containing the documents that Brisbois had
7  copied from Mattel's computer system.  Mattel later learned that while she was
8  working as a Vice President of Sales at MGA, Brisbois accessed and modified
9  documents on that thumb drive.

10      76.   After joining MGA, Brisbois repeatedly traveled to MGA's
11  offices in Van Nuys, California and met with Larian and Brawer.  In February,
12  2006, knowing that Mattel trade secrets had been seized from MGA's Mexico City
13  offices and that at least three MGA employees were under criminal investigation,
14  MGA nonetheless issued a press release trumpeting its 2005 performance, with
15  Larian himself concluding, "Our international teams in Mexico and Canada have
16  done a fantastic job."

17  **VII. MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL TO**
18      **JOIN MGA TO MISAPPROPRIATE MATTEL TRADE SECRETS**
19      **FOR THE BENEFIT OF MGA**

20      77.   In the past few years, MGA has hired directly from Mattel's
21  United States operations at least 25 employees, from Senior Vice-President level to
22  lower level employees.  On information and belief, many of these employees were
23  specifically targeted and recruited by MGA, including by Larian and Brawer, based
24  on the Mattel confidential and proprietary information they could access.  Many of
25  these employees had access to information that Mattel considers to be highly
26  proprietary and confidential.  Mattel believes that some of those former Mattel
27  employees may be observing their obligations not to misappropriate, disclose or
28  use Mattel's confidential and proprietary information.  Mattel is informed and

EXHIBIT __11__ PAGE _142_

1   believes, however, that certain additional employees accessed, copied and took

2   from Mattel confidential and proprietary information, including Mattel's strategic

3   plans; business operations, methods and systems; marketing and advertising

4   strategies and plans; future product lines; product profit margins; and customer

5   requirements. The misappropriated confidential and proprietary information

6   included information that these Mattel employees were not authorized to access.

7   On information and belief, the misappropriated confidential and proprietary

8   information taken from Mattel is being disclosed to and used by MGA for the

9   benefit of MGA and to the detriment of Mattel.

10  **VIII. LARIAN MAKES MISREPRESENTATIONS TO RETAILERS**

11        **ABOUT MATTEL'S PRODUCTS**

12        78.   Counter-defendants have engaged in other illegal practices in

13  their efforts to compete unfairly with Mattel. Larian has a practice of sending e-

14  mail messages to a "Bratz News" distribution list that Larian created or that was

15  created for him. Mattel is informed and believes that the recipients of e-mail

16  messages sent to the "Bratz News" distribution list include members of the media

17  as well as representatives of many of Mattel's most significant customers.

18        79.   On May 12, 2006, Larian sent an e-mail message to the "Bratz

19  News" distribution list that included a reference to Mattel's updated MY SCENE

20  MY BLING BLING product with real gems. Mattel had not publicly announced

21  this product at the time that Larian sent his May 12, 2006 e-mail. In fact, Mattel

22  had guarded the identification of this particular product.

23        80.   Shortly thereafter, Larian engaged in a campaign of calling

24  Mattel's most significant customers, including but not limited to Target and TRU,

25  regarding the MY SCENE MY BLING BLING product with real gems. In an

26  effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING

27  BLING product with real gems, Larian knowingly made false factual statements

28  about that product to each retailer. As of the writing of this Second Amended

21543632

-52-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _11_ PAGE _144_

1  Answer and Counterclaims, Mattel is aware that Larian represented to each retailer

2  that each was the only retailer to purchase the product and that Mattel would not be

3  supporting the product with television advertising.  At the time that Larian made

4  these statements, he knew them to be false.  As a result of Larian's

5  misrepresentations, at least one retailer cancelled its order for 75,000 units of the

6  MY SCENE MY BLING BLING product with real gems.  Only after Mattel

7  learned of Larian's misrepresentations and was able to correct them was Mattel able

8  to assure the retailer that Larian's representations were false and to persuade the

9  retailer to reinstate the order.

10       81.   Such conduct is not an isolated incident.  MGA and Larian, in an

11  effort to gain an unfair competitive advantage, repeatedly issued false and

12  misleading press releases.  In these press releases, MGA and Larian have

13  misrepresented Bratz's sales, Bratz's market share, Bratz's position vis-à-vis

14  Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market

15  share of Mattel's BARBIE products.

16                          **CLAIMS FOR RELIEF**

17                          <u>**First Counterclaim**</u>

18                          **Copyright Infringement**

19             **(Against MGA, MGA Entertainment (HK) Limited,**

20                  **Larian, Bryant and Does 4 through 10)**

21       82.   Mattel repeats and realleges each and every allegation set forth in

22  paragraphs 1 through 81, above, as though fully set forth at length.

23       83.   Mattel is the owner of copyrights in works that are fixed in

24  tangible media of expression and that are the subject of valid, and subsisting,

25  copyright registrations owned by Mattel.  These include, without limitation, the

26  works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-

27  378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-

28

-53-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT __4__ PAGE _145_**

378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273.

84.   Counter-defendants have reproduced, created derivative works from and otherwise infringed upon the exclusive rights of Mattel in its protected works without Mattel's authorization.  Counter-defendants' acts violate Mattel's exclusive rights under the Copyright Act, including without limitation Mattel's exclusive rights to reproduce its copyrighted works and to create derivative works from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

85.   Counter-defendants' infringement (and substantial contributions to the infringement) of Mattel's copyrighted works is and has been knowingly made without Mattel's consent and for commercial purposes and the direct financial benefit of Counter-defendants.  Counter-defendants, moreover, have deliberately failed to exercise their right and ability to supervise the infringing activities of others within their control to refrain from infringing Mattel's copyrighted works and have failed to do so in order to deliberately further their significant financial interest in the infringement of Mattel's copyrighted works.  Accordingly, Counter-defendants have engaged in direct, contributory and vicarious infringement of Mattel's copyrighted works.

86.   By virtue of defendants' infringing acts, Mattel is entitled to recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of suit and attorneys' fees, and all other relief permitted under the Copyright Act.

87.   Counter-defendants' actions described above have caused and will continue to cause irreparable damage to Mattel, for which Mattel has no remedy at law.  Unless Counter-defendants are restrained by this Court from continuing their infringement of Mattel's copyrights, these injuries will continue to occur in the future.  Mattel is accordingly entitled to injunctive relief restraining Counter-defendants from further infringement.

2154363.2

-54-

**Second Counterclaim**

**Violation of the Racketeer Influenced and Corrupt Organizations Act**

**18 U.S.C. §§ 1962(c) and 1964(c)**

**(Against All Counter-defendants)**

88.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 87, above, as though fully set forth at length.

89.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas and Brisbois were employed by and associated-in-fact with an enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "MGA Criminal Enterprise"). The MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois). In addition, beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, were employed by and associated-in-fact with a second enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "Bratz Criminal Enterprise").

90.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and each of them, for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information, by

EXHIBIT __11__ PAGE __147__

1   means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully

2   and knowingly conduct and participate, directly and indirectly, in the conduct of

3   the MGA Criminal Enterprise's affairs and, in the case of MGA, MGA

4   Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe Counter-

5   defendants, the Bratz Criminal Enterprise's affairs, through a pattern of

6   racketeering activity. Their actions include multiple, related acts in violation of:

7   18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512

8   (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and

9   foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. §

10  506(a)(1)(A) (criminal copyright infringement).

11          91.    MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

12  Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

13  Brisbois, and the Other Former Employees, and each of them, shared the common

14  purpose of enabling MGA to obtain confidential, proprietary and otherwise

15  valuable Mattel property through improper means in order to assist MGA in

16  illegally competing with Mattel domestically and throughout the world.

17          92.    The MGA Criminal Enterprise and Bratz Criminal Enterprise as

18  described herein are and have been at all relevant times continuing enterprises

19  because, among other reasons, each is designed to and did unlawfully acquire the

20  confidential business information and property of Mattel and incorporated this

21  information and property into MGA's ongoing business, marketing strategies and

22  business methods, practices and processes. The conduct of each enterprise

23  continues through the date of this Second Amended Answer and Counterclaims and

24  is ongoing by virtue of MGA's continuing use of Mattel's information and property,

25  all to the detriment of Mattel.

26          93.    The pattern of racketeering activity, as defined by 18 U.S.C.

27  §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

28  of continuing criminal activity. This activity consists of multiple acts of

21543632

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT ___*11*___   PAGE _*148*_

1   racketeering by each member of the MGA Criminal Enterprise and Bratz Criminal

2   Enterprise, is interrelated, not isolated and is perpetrated for the same or similar

3   purposes by the same persons.  This activity extends over a substantial period of

4   time, up to and beyond the date of this Second Amended Answer and

5   Counterclaims.  These activities occurred after the effective date of 18 U.S.C.

6   §§ 1961 *et seq.*, and the last such act occurred within 10 years after the commission

7   of a prior act of racketeering activity.  These racketeering activities included

8   repeated acts of:

9         (a)   Mail Fraud:  Counter-defendants MGA, MGA Entertainment

10              (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and

11              Does 4 through 10, aided and abetted by each other and some or

12              all of the remaining members of the MGA Criminal Enterprise,

13              having devised a scheme or artifice to defraud Mattel of its

14              confidential trade secret information and property by conversion,

15              false representations, concealment and breaches of fiduciary duty,

16              did for the purpose of furthering and executing such a scheme or

17              artifice to defraud, deposited or caused to be deposited matters or

18              things to be sent or delivered by the Postal Service, or any private

19              or commercial interstate carrier, or took or received matters or

20              things therefrom, or knowingly caused matters or things to be

21              delivered by mail or such carrier according to the direction

22              thereon, or at the place at which it is directed to be delivered by

23              the person to whom it is addressed, in violation of 18 U.S.C.

24              § 1341 and 18 U.S.C. § 2, as alleged with greater particularity in

25              the foregoing paragraphs and as evidenced by, among other

26              things, the true and correct copies of communications and other

27              evidence included in Exhibit C;

28

2154363.2

-57-

EXHIBIT __ll__  PAGE _148A_

(b)  <u>Wire Fraud</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, having devised a scheme or artifice to defraud Mattel of its confidential and trade secret information and property by conversion, false representations, concealment and breaches of fiduciary duty, did for the purpose of furthering and executing such a scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other things, the true and correct copies of communications and other evidence included in Exhibit C;

(c)  <u>Tampering With a Witness, Victim or Informant</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by:

i.  altering Bryant's contract with MGA relating to Bratz to conceal evidence that Bryant faxed the contract from the BARBIE COLLECTIBLES department of Mattel, using a fax

-58-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

EXHIBIT __11__ PAGE /49

1  machine owned by Mattel and while Bryant was employed by
2  Mattel;
3       ii.    altering numerous original Bratz drawings created
4  by Bryant by adding false and misleading date notations of
5  "8/1998" and "© 8/1998" to the drawings even though the
6  drawings were not created in August 1998; and
7       iii.    destroying electronic and other evidence, including
8  by destroying evidence previously contained on Carter Bryant's
9  and Isaac Larian's computer hard drives.
10      Such actions are in violation of 18 U.S.C. § 1512 and 18
11  U.S.C. § 2, as alleged with greater particularity in the foregoing
12  paragraphs;
13    (d)  Interstate and Foreign Travel in Aid of Racketeering Enterprises:
14         Counter-defendants MGA, MGA Entertainment (HK) Limited,
15         MGA de Mexico, Larian, Bryant, Machado and Does 4 through
16         10, aided and abetted by each other and some or all of the
17         remaining members of the MGA Criminal Enterprise, traveled in
18         interstate and foreign commerce, or used the mail or any facility
19         in interstate or foreign commerce, with the intent to promote,
20         manage, establish, carry on and facilitate the promotion,
21         management, establishment and carrying on of unlawful activity,
22         *i.e.* bribery, in violation of the laws of the State of California,
23         *Cal. Penal Code* § 641.3, all in violation of 18 U.S.C. § 1952 and
24         18 U.S.C. § 2, as alleged with greater particularity in the
25         foregoing paragraphs;
26    (e)  Criminal Copyright Infringement: Counter-defendants MGA,
27         MGA Entertainment (HK) Limited, MGA de Mexico, Larian,
28         Bryant, Machado and Does 4 through 10, aided and abetted by

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __11__   PAGE __150__

each other and some or all of the remaining members of the MGA Criminal Enterprise, willfully infringed Mattel's copyrights, including with respect to documents containing Mattel trade secret and confidential information, for purposes of commercial advantage and private financial gain, all in violation of 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater particularity in the foregoing paragraphs.

94.   The persons alleged herein to have violated 18 U.S.C. § 1962(c) are separate from, though employed by or associated with, MGA, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group.

95.   MGA had a role in the racketeering activity that was distinct from the undertaking of those acting on its behalf.  MGA also attempted to benefit, and did benefit, from the activity of its employees and agents alleged herein, and thus was not a passive victim of racketeering activity, but an active perpetrator.

96.   Mattel has been injured in its business or property as a direct and proximate result of the Counter-defendants' and the other enterprise members' violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts constituting the pattern of racketeering activity.

97.   As a result of the violations of 18 U.S.C. § 1962(c), by MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, Brawer, Trueba, Vargas, Brisbois and the Other Former Employees, Mattel has suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special compensatory damages, plus interest, costs and attorneys, fees, incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

2154363.2

EXHIBIT __11__   PAGE __151__

### Third Counterclaim

**Conspiracy To Violate the Racketeer**

**Influenced And Corrupt Organizations Act**

**(18 U.S.C. §§ 1962(d) and 1964(c))**

**(Against All Counter-defendants)**

98. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 97, above, as though fully set forth at length.

99. Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

100. These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce. Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity. In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

101. The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), including acts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18

21543632

EXHIBIT __14__ PAGE __152__

1  U.S.C. § 2; acts of tampering with witnesses, victims or informants in violation of

2  18 U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of

3  racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; and

4  acts of criminal copyright infringement in violation of 18 U.S.C. § 2319(a) and 17

5  U.S.C. § 506(a)(1)(A).

6      102.  Counter-defendants and the other members of the MGA Criminal

7  Enterprise schemed to defraud Mattel and steal its property and trade secret

8  information by means of false representation, breaches of fiduciary duty,

9  conversation and concealment, as more fully set forth in the foregoing paragraphs.

10      103.  In furtherance of this unlawful conspiracy, and to effect its

11  objectives, Counter-defendants and various co-conspirators committed numerous

12  overt acts, including but not limited to those set forth in the foregoing paragraphs.

13      104.  Mattel has been injured in its business or property as a direct and

14  proximate result of the Counter-defendants' and the other enterprise members'

15  violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts

16  constituting the pattern of racketeering activity.

17      105.  As a result of the conspiracies between and among all Counter-

18  defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has

19  suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18

20  U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

21  compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

22  of Counter-defendants' violations of 18 U.S.C. § 1962(d).

23            **Fourth Counterclaim**

24            **Misappropriation of Trade Secrets**

25      **(Against Counter-defendants MGA, MGA de Mexico,**

26            **Larian, Machado and Does 4 through 10)**

27      106.  Mattel repeats and realleges each and every allegation set forth in

28  paragraphs 1 through 105, above, as though fully set forth at length.

-62-

2154363.2

EXHIBIT __11__ PAGE __153__

107.  As used herein, "Trade Secret Material" shall mean the documents, materials and information stolen by Machado, Trueba, Vargas, Brisbois, the Other Former Employees, and other persons acting for, on behalf of or at the direction of MGA and/or Larian.  Prior to their theft by Counter-defendants, the Trade Secret Materials gave Mattel a significant competitive advantage over its existing and would-be competitors, including MGA.  This advantage, as to MGA, has now been compromised as a result of Counter-defendants' unlawful activities.

108.  Mattel made reasonable efforts under the circumstances to maintain the confidentiality of the Trade Secret Materials, including by having employees and consultants who may have access the Trade Secret Materials sign confidentiality agreements that oblige them not to disclose the Trade Secret Materials or characteristics of the Trade Secret Materials; by limiting the circulation of said materials within Mattel; by protecting and limiting access to computers with log-in identifications and passwords; by limiting each employee's access to electronic files to those that the particular employee needs to access; by educating employees on the nature of Mattel's information that is confidential and proprietary; and by reminding employees on a regular and periodic basis of their obligation to protect and maintain Mattel's confidential and proprietary information.

109.  Mattel's Trade Secret Materials derive independent economic value from not being generally known to the public or to other persons who can obtain economic benefit from their disclosure.

110.  Counter-defendants have illegally obtained the trade secret materials, as set forth above, and through other means of which Mattel is presently unaware.

111.  Counter-defendants have used and disclosed Mattel's Trade Secret Materials without Mattel's consent and without regard to Mattel's rights, and

EXHIBIT __11__ PAGE _154_

1 without compensation, permission, or licenses for the benefit of themselves and
2 others.

3        112.  Counter-defendants' conduct was, is, and remains willful and
4 wanton, and was taken with blatant disregard for Mattel's valid and enforceable
5 rights.

6        113.  Counter-defendants' wrongful conduct has caused and, unless
7 enjoined by this Court, will continue in the future to cause irreparable injury to
8 Mattel.  Mattel has no adequate remedy at law for such wrongs and injuries.  Mattel
9 is therefore entitled to a permanent injunction restraining and enjoining Counter-
10 defendants, and each of them, as well as their agents, servants, and employees, and
11 all persons acting thereunder, in concert with, or on their behalf, from further using
12 in any manner Mattel's trade secrets.

13        114.  In addition, as a proximate result of Counter-defendants'
14 misconduct, Mattel has suffered actual damages, and Counter-defendants have been
15 unjustly enriched.

16        115.  The aforementioned acts of the Counter-defendants were willful
17 and malicious, including in that Counter-defendants misappropriated Mattel's trade
18 secrets with the deliberate intent to injure Mattel's business and improve their own.
19 Mattel is therefore entitled to enhanced damages.  Mattel is also entitled to
20 reasonable attorney's fees.

21                    **Fifth Counterclaim**

22                    **Breach of Contract**

23                    **(Against Bryant)**

24        116.  Mattel repeats and realleges each and every allegation set forth in
25 paragraphs 1 through 115, above, as though fully set forth at length.

26        117.  Pursuant to his Employment Agreement, Bryant agreed that he
27 would not, without Mattel's express written consent, engage in any employment or
28 business other than for Mattel or assist in any manner any business competitive

2154363.2

EXHIBIT __11__ PAGE _155_

1   with the business or future business plans of Mattel during his employment with
2   Mattel. Pursuant to his Mattel Employment Agreement, Bryant further assigned to
3   Mattel all right, title and interest in "inventions," including without limitation
4   "designs" and other works that he conceived, created or reduced to practice during
5   his employment by Mattel. In addition, pursuant to the Conflict Questionnaire,
6   Bryant certified that, other than as disclosed, he had not worked for any competitor
7   of Mattel and had not engaged in any business venture or transaction involving a
8   Mattel competitor that could be construed as a conflict of interest. Bryant further
9   promised that he would notify his supervisor immediately of any change in his
10  situation that would cause him to change any of the foregoing certifications or
11  representations.

12          118. The Employment Agreement and the Conflict Questionnaire are
13  valid, enforceable contracts, and Mattel has performed each and every term and
14  condition of the Employment Agreement and Conflict Questionnaire required to be
15  performed by Mattel.

16          119. Bryant materially breached the foregoing contracts with Mattel,
17  in that, among other things, he secretly aided, assisted and worked for a Mattel
18  competitor during his employment with Mattel without the express written consent
19  of Mattel.

20          120. As a consequence of Bryant's breach, Mattel has suffered and
21  will, in the future, continue to suffer damages in an amount to be proven at trial.
22  Such damages include, without limitation, the amounts paid by the competitor to
23  Bryant during his Mattel employment; the amounts paid by MGA to Bryant during
24  his Mattel employment; the amount that Mattel paid Bryant during the time he
25  wrongfully worked with MGA; the value of information and intellectual property
26  owned by Mattel which Bryant provided to MGA; the value of the benefits that
27  MGA obtained from Bryant during the time he was employed by Mattel; and the
28

-65-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __LL__ PAGE _156_

1  value of the benefits that MGA obtained from Bryant as a result of the work he

2  performed for or with MGA during his Mattel employment.

3        121.  Bryant's conduct has caused, and unless enjoined will continue to

4  cause, irreparable injury to Mattel that cannot be adequately compensated by

5  money damages and for which Mattel has no adequate remedy at law.  Bryant

6  specifically acknowledged in his Employment Agreement that his breach of the

7  Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be

8  entitled to injunctive relief to enforce this Agreement, in addition to damages and

9  other available remedies."  Accordingly, Mattel is entitled to orders mandating

10  Bryant's specific performance of his contracts with Mattel and restraining Bryant

11  from further breach.

12  <u>**Sixth Counterclaim**</u>

13  **Intentional Interference with Contract**

14  **(Against MGA, Larian and Does 4 through 10)**

15        122.  Mattel repeats and realleges each and every allegation set forth in

16  paragraphs 1 through 121, above, as though fully set forth at length.

17        123.  Valid agreements existed between Mattel and Bryant, Brawer,

18  Machado, Trueba, Vargas, Brisbois and the Other Former Employees (collectively,

19  the "Mattel Employees")

20        124.  At all times herein mentioned, MGA, Larian and Does 4 through

21  10 knew that the Mattel Employees had a duty under their agreements not to work

22  for or assist any competitor of Mattel, such as MGA.  In addition, at all times

23  mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had

24  assigned to Mattel, and was obligated to disclose to Mattel all inventions, including

25  designs and other works, created, conceived or reduced to practice during their

26  employment with Mattel.

27

28

21543632

125.  Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, induced and encouraged the Mattel Employees to breach their contracts with Mattel.

126.  As a direct and proximate result of Counter-defendants' efforts and inducements, the Mattel Employees did breach their contracts with Mattel.

127.  As a result of said breaches, Mattel has suffered damages and will imminently suffer further damages, including the loss of its competitive position and lost profits, in an amount to be proven at trial.

128.  Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

## Seventh Counterclaim

### Breach of Fiduciary Duty

### (Against Bryant and Machado)

129.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 128, above, as though fully set forth at length.

130.  Bryant and Machado held positions of trust and confidence with Mattel.  In their positions, Bryant and Machado had access to and were entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of their job assignments and duties.  In their positions, Bryant and Machado also represented Mattel in its dealings with third parties and, in actions in the course and scope of their employment with Mattel, were agents of Mattel.  They confirmed their relationship of trust with Mattel in respective employee agreements.  Bryant and Machado thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests

2154363.2

-67-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __11__ PAGE _158_

1 | or that would deprive Mattel of any opportunities, profit or advantage which Bryant

2 | or Machado might bring to Mattel.

3 |      131. Bryant breached his fiduciary duty to Mattel in that, while

4 | employed by Mattel, he secretly aided and assisted a competitor of Mattel,

5 | including without limitation by entering into an agreement with a Mattel

6 | competitor. As alleged above, Bryant also breached the aforementioned duty by

7 | using Mattel property and resources for the benefit of, and to aid and assist, himself

8 | personally and MGA.

9 |      132. Machado breached his fiduciary duty to Mattel, in that while

10 | employed by Mattel, he secretly aided and assisted a competitor of Mattel by,

11 | among other things, misappropriating Mattel trade secret and proprietary

12 | information and providing said information to officers of MGA. Machado also

13 | breached the aforementioned duty by using Mattel property and resources for the

14 | benefit of, and to aid and assist, himself personally and MGA.

15 |      133. As a direct and proximate result of Counter-defendants' wrongful

16 | conduct, Mattel has incurred damages in an amount to be determined at trial.

17 |      134. Counter-defendants acted with malice, fraud and oppression, and

18 | in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an

19 | award of exemplary damages against Counter-defendants in an amount to be

20 | determined at trial.

21 |      135. Furthermore, Counter-defendants' conduct has caused, and unless

22 | enjoined will continue to cause, irreparable injury to Mattel that cannot be

23 | adequately compensated by money damages and for which Mattel has no adequate

24 | remedy at law. Accordingly, Mattel is entitled to an order restraining further

25 | breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants

26 | from continuing to benefit from such breach.

27 |

28 |

EXHIBIT __11__ PAGE _159_

**Eighth Counterclaim**

**Aiding and Abetting Breach of Fiduciary Duty**

**(Against MGA, Larian and Does 4 through 10)**

136. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 135, above, as though fully set forth at length.

137. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant held a position of trust and confidence at Mattel. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to secretly developing and designing Bratz while employed by Mattel and by secretly assisting Larian and MGA .

138. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) held positions of trust and confidence at Mattel. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to taking confidential trade secret information from Mattel's premises and providing that information to a competitor.

139. Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, encouraged, aided and abetted and gave substantial assistance to the Mattel Employees to breach their fiduciary duties to Mattel, knowing that their conduct would constitute breaches of their fiduciary duties to Mattel.

140. As a direct and proximate result of Counter-defendants' efforts, the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has incurred damages in an amount to be proven at trial. Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

2154363.2

EXHIBIT ___11___ PAGE _160_

1      141. In taking the aforesaid actions, MGA, Larian and Does 4 through

2  10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

3  rights. Accordingly, Mattel is entitled to recover exemplary damages from

4  Counter-defendants in an amount to be determined at trial.

5                          **Ninth Counterclaim**

6                       **Breach of Duty of Loyalty**

7                     **(Against Bryant and Machado)**

8      142. Mattel repeats and realleges each and every allegation set forth in

9  paragraphs 1 through 141, above, as though fully set forth at length.

10     143. As employees of Mattel, Bryant and Machado owed a duty of

11  undivided loyalty to Mattel. Pursuant to this duty, Bryant and Machado could not

12  compete with Mattel or assist a competitor of Mattel during their employment with

13  Mattel. Pursuant to this duty, Bryant and Machado were required to always give

14  preference to Mattel's business over their own, similar interests during the course of

15  their employment with Mattel.

16     144. Bryant and Machado breached their duty of loyalty to Mattel in

17  that, while employed by Mattel, they secretly aided, assisted and worked for a

18  competitor of Mattel, including without limitation by entering into agreements with

19  a Mattel competitor. As alleged above, they also breached the aforementioned duty

20  by using Mattel property and resources for the benefit of, and to aid and assist,

21  themselves personally and the competitor of Mattel.

22     145. As a direct and proximate result of Counter-defendants' wrongful

23  conduct, Mattel has incurred damages in an amount to be determined at trial.

24     146. Counter-defendants acted with malice, fraud and oppression, and

25  in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an

26  award of punitive damages against Counter-defendants in an amount to be

27  determined at trial.

28

11154363.2

-70-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __\_L_\_ PAGE _\_161\_

147. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining further breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-defendants from continuing to benefit from such breach.

148. In breaching their duty of loyalty to Mattel, Bryant and Machado acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

## Tenth Counterclaim

### Aiding and Abetting Breach of Duty of Loyalty

### (Against MGA, Larian and Does 4 through 10)

149. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 148, above, as though fully set forth at length.

150. MGA, Larian and Does 4 through 10 knew that Bryant, as an employee of Mattel, owed a duty of loyalty to his employer. MGA, Larian and Does 4 through 10 knew that this duty included an obligation on the part of Bryant not to compete with Mattel or assist a competitor of Mattel during the term of his employment with Mattel. MGA, Larian and Does 4 through 10 also knew that Bryant was required to give preference to Mattel's business over his own, similar interests or those of Mattel's competitors. or those of Mattel's competitors during the course of his employment with Mattel.

151. MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) were employed by Mattel, and, as employees of Mattel, that they owed duties of loyalty to Mattel. MGA, Larian and Does 4 through 10 knew that these duties included an obligation on the part of the Mattel

-71-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __11__ PAGE __167__

1  Employees (excluding Bryant) not to compete with Mattel or assist a competitor of
2  Mattel during their Mattel employment.
3      152.  Despite such knowledge, Counter-defendants MGA, Larian and
4  Does 4 through 10 intentionally and without justification solicited, encouraged,
5  aided and abetted and gave substantial assistance to the Mattel Employees to
6  breach their duties of loyalty to Mattel, knowing that their conduct would constitute
7  breaches of their duties of loyalty to Mattel.
8      153.  As a further consequence of Counter-defendants' efforts, Mattel
9  has suffered injury and is entitled to compensatory damages in an amount to be
10 proven at trial.
11      154.  In taking the aforesaid actions, MGA, Larian and Does 4 through
12 10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's
13 rights.  Accordingly, Mattel is entitled to recover exemplary damages from
14 Counter-defendants in an amount to be determined at trial.

15                    **Eleventh Counterclaim**
16                         **Conversion**
17              **(Against All Counter-defendants)**

18      155.  Mattel repeats and realleges each and every allegation set forth in
19 paragraphs 1 through 154, above, as though fully set forth at length.
20      156.  Counter-defendants wrongfully converted Mattel property and
21 resources by appropriating and using them for their own benefit and gain and for
22 the benefit and gain of others, without the permission of Mattel.
23      157.  Mattel was entitled to, among other things, the exclusive right
24 and enjoyment in property and tangible materials owned by Mattel, including
25 without limitation such proper and materials that were created by Bryant while he
26 was a Mattel product designer.  Such property was taken by Bryant from Mattel to
27 further his own interests and, in at least some instances, provided by Bryant to
28 Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

2154363.2

-72-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __11__ PAGE _163_

158.  In addition, Counter-defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices.  Counter-defendants did so without Mattel's permission and continue to possess them.

159.  As a direct and proximate result of Counter-defendants' wrongful conversion of Mattel property, including those relating to Bratz and Mattel's Trade Secret Materials, Mattel has incurred damages.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

160.   As a result of Counter-defendants' acts of conversion, Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss suffered, which is not measured by the value of the property misappropriated, but includes the lost profits that Mattel suffered as a result of the conversion or, alternatively, the profits generated by the Counter-defendants that would not have been generated but for the conversion.  Only such a measure of damages would fully and fairly compensate Mattel for the injury it suffered due to Counter-defendants' acts of conversion.

161.  Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

162.  Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-defendants from further conversion of Mattel property and resources and/or restraining Counter-defendants from continuing to benefit from such conversion.

EXHIBIT __11__ PAGE _164_

## Twelfth Counterclaim

### Unfair Competition

### (Common Law and *Cal. Bus. & Prof. Code* § 17200)

### (Against All Counter-defendants)

163. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 162, above, as though fully set forth at length.

164. Section 17200 of the California Business and Professions Code prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

165. By engaging in the foregoing conduct, Counter-defendants have, individually and in combination, engaged in unlawful, unfair and/or fraudulent acts of unfair competition in violation of both the common law of the state of California and *Cal. Bus. & Prof. Code* § 17200 *et seq.* Such conduct included, without limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code* § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a). Such conduct also included, without limitation, MGA's and Larian's disparagement of Mattel's products and misrepresentations as alleged above.

166. As a result of the aforementioned conduct, Mattel has suffered damages and will imminently suffer further damages, including but not limited to lost profits in an amount to be proven at trial. No adequate remedy at law exists for the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel is entitled to an injunction enjoining Counter-defendants' continued wrongful acts. Mattel is also entitled to recover compensatory and exemplary damages pursuant to the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

2154363.2

EXHIBIT __11__ PAGE __165__

## Thirteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

167.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168.  As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169.  Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170.  Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

### Prayer for Relief

WHEREFORE, Mattel respectfully requests judgment:

1.  For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

-75-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

EXHIBIT __11__ PAGE __166__

1  created or reduced to practice by Bryant during the term of his Mattel employment
2  and/or by any others then-employed by Mattel, as well as in all derivatives
3  prepared therefrom, and that Mattel is the true owner of the foregoing;
4          2.    For a declaration that any agreement between Bryant, on the one
5  hand, and MGA or any person or entity, on the other hand, in which Bryant
6  purported to assign any right, title or interests in any work that he conceived,
7  created or reduced to practice while a Mattel employee, including but not limited to
8  the Bratz designs, is void and of no effect;
9          3.    For an Order enjoining and restraining Counter-defendants, their
10 agents, servants and employees, and all persons in active concert or participation
11 with them, from further wrongful conduct, including without limitation from
12 imitating, copying, distributing, importing, displaying, preparing derivatives from
13 and otherwise infringing Mattel's copyright-protected works;
14         4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other
15 applicable law, impounding all of Counter-defendants' products and materials that
16 infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles
17 by which copies of the works embodied in Mattel's copyrights may be reproduced
18 or otherwise infringed;
19         5.    For an Order mandating that Counter-defendants return to Mattel
20 all tangible items, documents, designs, diagrams, sketches or any other
21 memorialization of inventions created or reduced to practice during Bryant's
22 employment with Mattel as well as all Mattel property converted by Counter-
23 defendants;
24         6.    For an Order mandating specific performance by Bryant to
25 comply with and satisfy Bryant's contractual obligations to Mattel;
26         7.    That Mattel be awarded, and Counter-defendants be ordered to
27 disgorge, all payments, revenues, profits, monies and royalties and any other
28 benefits derived or obtained as a result of the conduct alleged herein, including

21543632

-76-

EXHIBIT ___11___ PAGE 167

1  without limitation of all revenues and profits attributable to Counter-defendants'

2  infringement of Mattel's copyrights under 17 U.S.C. § 504;

3          8.    For an accounting of all profits, monies and/or royalties from the

4  exercise of ownership, use, distribution, sales and licensing of Bratz;

5          9.    For the imposition of a constructive trust over Bratz, including

6  without limitation registrations and applications for registrations relating thereto

7  made or filed by Counter-defendants and third parties, and all profits, monies,

8  royalties and any other benefits derived or obtained from Counter-defendant's

9  exercise of ownership, use, sale, distribution and licensing of Bratz;

10         10.   That Mattel recover its actual damages and lost profits;

11         11.   That Counter-defendants be ordered to pay exemplary damages

12  in a sum sufficient to punish and to make an example of them, and deter them and

13  others from similar wrongdoing;

14         12.   That Counter-defendants be ordered to pay treble its general and

15  special damages, plus interest, costs and attorney's fees incurred by reason of

16  Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

17         13.   That Counter-defendants be ordered to pay double damages due

18  to their willful and malicious misappropriation of Mattel's trade secrets with

19  deliberate intent to injure Mattel's business and improve its own;

20         14.   That Counter-defendants pay to Mattel the full cost of this action

21  and Mattel's attorneys' and investigators' fees; and

22

23

24

25

26

27

28

2154363.2

EXHIBIT __11__ PAGE _168_

1        15.   That Mattel have such other and further relief as the Court may

2  deem just and proper.

3

4  DATED:  July 12, 2007            QUINN EMANUEL URQUHART OLIVER &
                               HEDGES, LLP

5

6                            By _____

7                               John B. Quinn
                               Attorneys for Defendant and Counter-

8                               claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-78-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT  1   PAGE  109

1

## DEMAND FOR JURY TRIAL

2

3       Mattel, Inc. respectfully requests a jury trial on all issues triable

4    thereby.

5

6    DATED:  July 12, 2007          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
7

8                                    By    John Quinn /BB
9                                       John B. Quinn
                                        Attorneys for Defendant and Counter-
10                                      claimant Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2154363.2

-79-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT** __II__ **PAGE** _170_

**Exhibit A**

EXHIBIT __11__ PAGE _171_

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights it legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employees' employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature _____   MATTEL, INC.
By _____
Signature

Employee Name (print)   CARTER H. BRYANT   _____
Name of Witness (print)   TERESA NEWCOMB

Date   01/04/99

EXHIBIT A   PAGE 80

M 0001622

EXHIBIT 11   PAGE 172

**Exhibit B**

EXHIBIT ___11___ PAGE _173_

## CONFLICT OF INTEREST QUESTIONNAIRE

*BRYANT, CARTER H.*           *PROJECT DESIGNER*
Name (Last, first, M.I.)            Job Title                    Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

○ YES ● NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

○ YES ● NO   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

○ YES ● NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES ○ NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES ○ NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

○ YES ● NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

○ YES ● NO   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

○ YES ● NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

○ YES ● NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

*4, 5, freelance design & artwork in 1998,*
*from appx. 5/98 - 11/98 for the Ashton Drake*
*galleries.*

I certify that I have read Mattel's policies concerning Conflict of interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of interest.

*Carter H. Bryant* (signature)        *01/04/98*
Signature                               Date

EXHIBIT _B_ PAGE _81_        M 0001621

**EXHIBIT** _11_ **PAGE** _174_

# EXHIBIT 12

Received:   5/24/07  3:21PM·                ; RIGHTFAX -> QUINN FMANUEL;  Page 2
RightFAX            5.  1/2007 3:09   PAGE 002/002   Fax Server

SEND

FILED
CLERK, U.S. DISTRICT COURT

MAY 1 1 ~~~

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION     BY DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**Mattel Inc**

**COUNTER-CLAIMANT(S)**

v.

**Carlos Gustavo Machado Gomez**
**COUNTER- DEFENDANT(S)**

CASE NUMBER:

**CV04-09049 SGL(RNBx)**

**DEFAULT BY CLERK**
F.R.Civ.P. 55(a)

It appearing from the records in the above-entitled action that summons has been served upon the counter-defendant(s) named below, and it further appearing from the affidavit of counsel for counter-claimant(s), and other evidence as required by F.R.Civ.P. 55(a), that each of the below counter-defendants have failed to plead or otherwise defend in said action as directed in said Summons and as provided in the Federal Rules of Civil Procedure:

Now, therefore, on request of counsel, the DEFAULT of each of the following named counter- defendant(s) is hereby entered

**Carlos Gustavo Machado Gomez**

DOCKETED ON CM
MAY 2 3 2007
BY _____  04?

Clerk, U. S. District Court

**Dated:** May 1 1, 2007

**By** _____ *A. Morris*

Deputy Clerk

CV-37 (10/01)        DEFAULT BY CLERK F.R.Civ.55(a)        CS/11|c7    EXHIBIT ___ PAGE 179

EXHIBIT 13

COPY

RECEIVED

CALENDARED

AUG 0 2 2007

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8  LAW OFFICE OF JAMES W. SPERTUS
      James W. Spertus (Bar No. 159825)
9      (Jim@SpertusLaw.com)
   12100 Wilshire Boulevard, Suite 620
10 Los Angeles, CA 90025
   Telephone: (310)826-4700
11 Facsimile: (310)826-4711

12 Attorneys for Carlos Gustavo Machado Gomez

FILED
CLERK, U.S. DISTRICT COURT

JUL 3 0 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

LODGED

2007 JUL 26  PM 3: 25
U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | Hon. Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | **STIPULATION TO SET ASIDE DEFAULT ENTERED AGAINST CARLOS GUSTAVO MACHADO GOMEZ AND TIME TO ANSWER OR MOVE; AND** |
| Defendant. | |
| | **[PROPOSED] ORDER THEREON** |
| CONSOLIDATED ACTIONS | Discovery Cut-Off: March 3, 2008<br>Pre-Trial Conference: June 2, 2008<br>Trial Date: July 1, 2008 |

**EXHIBIT  13  PAGE 176**

J7209/2150636.1

Case No. CV 04-09049 SGL (RNBx)
STIPULATION TO SET ASIDE DEFAULT ENTERED AGAINST MACHADO AND ORDER

1   WHEREAS, Mattel, Inc. ("Mattel") served the Summons and Amended

2   Answer and Counterclaims in Case No. 05-2727 on counter-defendant Carlos

3   Gustavo Machado Gomez ("Machado") by substitute service at his dwelling

4   house/usual place of abode on March 26, 2007, among other times;

5   WHEREAS, copies of the Summons and Counterclaims were mailed to

6   Machado on March 26, 2007, among other times;

7   WHEREAS, Machado did not file a responsive pleading to the

8   Counterclaims within the time required by the Federal Rules of Civil Procedure or at

9   all;

10   WHEREAS, the clerk entered a default against Machado on May 11,

11   2007;

12   WHEREAS, pursuant to the Court's Order of June 26, 2007 regarding

13   defendants' motions to dismiss Mattel's Amended Answer and Counterclaims,

14   Mattel has filed and served defendants (including Machado) with Mattel's Second

15   Amended Answer and Counterclaims in Case No. 05-2727; and

16   WHEREAS, Machado represents that his failure to respond to the

17   Summons and Counterclaims were the result of excusable neglect, and the parties

18   wish to avoid unnecessary delay and motion practice related to the default.

19   NOW, THEREFORE, Mattel and Machado, by and through their

20   respective counsel of record, hereby stipulate and agree as follows:

21   1.   Machado was properly served with the Summons and

22   Counterclaims and shall not contest such service or personal jurisdiction in this

23   action.

24   2.   The default against Machado is hereby set aside.

25

26

27

28

EXHIBIT _13_ PAGE _177_

07209/2150636.1

Case No. CV 04-09049 SGL (RNBx)
STIPULATION TO SET ASIDE DEFAULT ENTERED AGAINST MACHADO AND ORDER

3.      Machado will answer or otherwise respond to Mattel's Second Amended Counterclaims on or before August 13, 2007.

**SO STIPULATED.**

DATED: July 20, 2007

LAW OFFICES OF JAMES W. SPERTUS

By: _____
James W. Spertus
Attorneys for Carlos Gustavo
Machado Gomez

DATED: July 25, 2007

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

By: _____
Michael T. Zeller
Attorneys for Mattel, Inc.

**IT IS SO ORDERED.**

/S/

DATED:  7-26-07

By: _____
STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE
Hon. Stephen G. Larson

EXHIBIT __13__ PAGE __178__

07209/2150636.1

Case No. CV 04-09049 SGL (RNBx)
STIPULATION TO SET ASIDE DEFAULT ENTERED AGAINST MACHADO AND ORDER

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On July 26, 2007, I served true copies of the following document(s) described as **STIPULATION TO SET ASIDE DEFAULT ENTERED AGAINST CARLOS GUSTAVO MACHADO GOMEZ AND TIME TO ANSWER OR MOVE; AND [PROPOSED] ORDER THEREON** on the parties in this action as follows:

Diana M. Torres, Esq.
**O'MELVENY & MYERS, LLP**
400 S. Hope Street
Los Angeles, CA 90071

John W. Keker, Esq.
Michael H. Page, Esq.
Christa M. Anderson, Esq.
**KEKER & VAN NEST, LLP**
710 Sansome Street
San Francisco, CA 94111

James W. Spertus, Esq.
**LAW OFFICES OF JAMES W. SPERTUS**
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

**BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 26, 2007, at Los Angeles, California.

Laura Kinsey

Laura Kinsey

07209/2177212.1

EXHIBIT _13_ PAGE _179_

# EXHIBIT 14

**COPY**

FILED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 090378)
      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Duane R. Lyons (Bar No. 125091)
5     (duanelyons@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Plaintiff and Counter-
    Defendant Mattel, Inc.

2006 NOV 20  AM 10: 09

UNITED STATES DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13   CARTER BRYANT, an individual,        | CASE NO. CV 04-9049 SGL (RNBx)

14              Plaintiff,                 | Consolidated With Case No. 04-9059
                                           | and Case No. 05-2727
15        vs.
                                           | Hon. Stephen G. Larson
16   MATTEL, INC., a Delaware
     corporation,                          | MATTEL, INC.'S NOTICE OF
17                                         | MOTION AND MOTION  FOR
              Defendant.                   | LEAVE TO FILE AMENDED
18                                         | COMPLAINT; AND

19                                         | MEMORANDUM OF POINTS AND
                                           | AUTHORITIES IN SUPPORT
20                                         | THEREOF

21                                         | [Proposed Amended Complaint lodged
                                           | concurrently herewith]
22
                                           | [Declaration of Jon D. Corey filed
23                                         | concurrently herewith]

24                                         | Hearing Date:  January 8, 2007
                                           | Time:  10:00 a.m.
25                                         | Place:  Courtroom 1

26                                         | Discovery Cut-off:  None Set
                                           | Pre-trial Conference:  None Set
27                                         | Trial Date:  None Set

28

07934/2000569.7

11-20

MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

**EXHIBIT _14_ PAGE _180_**

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on January 8, 2006 at 10:00 a.m., or as

3  soon thereafter as the matter may be heard in the courtroom of the Honorable

4  Stephen G. Larson located at 3470 Twelfth Street, Riverside, California, 92501,

5  Mattel, Inc. ("Mattel") will, and hereby does, move this Court pursuant to Rule 15 of

6  the Federal Rules of Civil Procedure for an order granting Mattel leave to file an

7  Amended Complaint lodged concurrently herewith, including to substitute

8  Defendant MGA Entertainment, Inc. for Defendant Doe 1, defendant MGA

9  Entertainment (HK) Limited for Defendant Doe 2, and defendant Isaac Larian for

10  Defendant Doe 3.

11        This motion is made on the grounds that discovery in this case has

12  revealed facts showing that Mattel has a right to additional and further relief against

13  the named and additional defendants; defendants also have engaged in further

14  conduct since Mattel's original Complaint was filed for which Mattel seeks relief;

15  defendants will not be unduly prejudiced by amendment; Mattel has not unduly

16  delayed seeking its requested relief; and Mattel's proposed amendment is made in

17  good faith.

18        This Motion is based on this Notice of Motion and Motion, the

19  accompanying Memorandum of Points and Authorities, the concurrently-filed

20  Declaration of Jon D. Corey, the concurrently-lodged proposed Amended

21  Complaint, the pleadings and other papers on file in this action, any matters of

22  which this Court may take judicial notice, and such further evidence and argument

23  as may be presented at or before the hearing on this matter.

24

25

26

27

28

07934/2000569.7

EXHIBIT __14__ PAGE __181__

1

**Local Rule 7-3 Certification**

2        This motion is made following the conference of counsel in compliance

3   with <u>Local Rule</u> 7-3, which took place on October 31, 2006 and thereafter.

4

5   DATED:  November 19, 2006         QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
6

7                                    By _____

8                                       John B. Quinn
                                        Attorneys for Plaintiff and Counter-
9                                       Defendant Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

ARGUMENT ............................................................................................................ 10

I.    JUSTICE AND THE INTERESTS OF JUDICIAL ECONOMY
      REQUIRE THAT MATTEL BE PERMITTED TO MAKE ITS NON-
      PREJUDICIAL, TIMELY AND GOOD FAITH AMENDMENTS TO
      THE COMPLAINT. .......................................................................................... 10

      A.    Amending Pleadings Is Strongly Favored ........................................... 10

      B.    Amendment Will Not Unfairly Prejudice Defendants .......................... 11

      C.    All Other *Foman* Factors Either Support Granting Leave To
            Amend Or Are Neutral. ........................................................................ 12

            1.    Mattel Has Timely Sought To Amend Its Complaint ............... 12

            2.    Mattel Seeks To Amend The Complaint In Good Faith ............ 16

            3.    Mattel's Amendment Is Meritorious, Not Futile ...................... 16

CONCLUSION ........................................................................................................ 17

## TABLE OF AUTHORITIES

**Page**

### Cases

Beery v. Hitachi Home Elecs. (Am.), Inc.,
  157 F.R.D. 481 (C.D. Cal. 1994) ..................................................................... 9

DCD Programs, Ltd. v. Leighton,
  833 F.2d 183 (9th Cir. 1987) ................................................................ 9, 10, 14

Eminence Capital, LLC v. Aspeon, Inc.,
  316 F.3d 1048 (9th Cir. 2003) .................................................................. 9, 10

Foman v. Davis,
  371 U.S. 178 (1962) ........................................................................ 10, 11, 15

Gabrielson v. Montgomery Ward & Co.,
  785 F.2d 762 (9th Cir. 1986) ......................................................................... 9

Keller v. U.S.,
  667 F. Supp. 1351 (S.D. Cal. 1987) .............................................................. 12

Lindley v. General Electric Company,
  780 F.2d 797 (9th Cir. 1986) ........................................................................ 12

Miller v. Rykoff-Sexton, Inc.,
  845 F.2d 209 (9th Cir. 1988) ........................................................................ 15

Rumberg v. Weber Aircraft Corp.,
  424 F. Supp. 294 (C.D. Cal. 1976) ............................................................... 12

SAES Getters, S.p.A. v. Aeronex, Inc.,
  219 F. Supp. 2d 1081 (S.D. Cal 2002) ................................................... 10, 15

Sorosky v. Burroughs Corp.,
  826 F.2d 794 (9th Cir. 1987) ........................................................................ 15

United States v. Webb,
  655 F.2d 977 (9th Cir. 1981) ......................................................................... 9

### Statutes

Cal. Bus. & Prof. Code § 17200 ...................................................................... 14

Cal. Civ. Proc. Code § 583.210 ...................................................................... 12

18 U.S.C. § 1962(c) ........................................................................................ 14

18 U.S.C. § 1964(c) ........................................................................................ 14

Federal Rule of Civil Procedure 15(a) .............................................................. 9

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff and Counter-Defendant Mattel, Inc. ("Mattel") respectfully submits this motion for leave to amend its Complaint. This motion relates to the Mattel v. Bryant action, Case No. 04-9059 SGL (RNBx).

## Preliminary Statement

Through discovery and investigation, Mattel has uncovered facts that give rise to additional claims, including claims against defendant-in-intervention MGA Entertainment, Inc. ("MGA") and related parties. Mattel now seeks to add these claims in the proposed First Amended Complaint lodged with this motion (a copy of which is also attached hereto for the Court's convenience). These claims are based upon both newly discovered, past conduct as well as further actionable conduct that has occurred since Mattel filed its original Complaint.

The addition of these claims will not cause defendants undue prejudice. Some claims are based on the same general facts as Mattel's original claims -- including, most notably, those pertaining to the ownership of Bratz -- and defendants have been defending and will continue to defend against them regardless of Mattel's amendments. Others are based on conduct since Mattel's original Complaint was filed. The interests of judicial economy strongly favor the resolution of Mattel's claims in a single action, rather than forcing Mattel to bring a separate action against MGA and related defendants, particularly since MGA itself put such matters at issue in the action that it filed against Mattel and that since has been consolidated with the action instituted by Mattel's original Complaint.

Rule 15(a) of the Federal Rules of Civil Procedure mandates that leave to amend "shall be freely given when justice so requires," and it is well-settled that amendments to pleadings should be liberally granted. The parties are still in the early stages of discovery, no trial date has been set and no scheduling order has been

EXHIBIT _14_ PAGE _185_

1  entered.  Under these circumstances, the Court should permit Mattel to file its First

2  Amended Complaint.

3

4  **Statement of Facts**

5  ***The Consolidated Cases.***  Mattel filed its original Complaint on April

6  27, 2004, alleging that a former employee, Carter Bryant ("Bryant"), breached his

7  duties to Mattel by working with and assisting a Mattel competitor, MGA, while

8  employed by Mattel.[1]  Bryant counterclaimed, seeking to invalidate all of Mattel's

9  employment agreements with its employees as "unconscionable."[2]  Bryant also filed

10  a separate declaratory relief action against Mattel.[3]  Later, in April 2005, MGA filed

11  a broad unfair competition complaint against Mattel, targeting a number of alleged

12  Mattel business practices worldwide.[4]  This Court has consolidated all three cases.[5]

13  In the <u>Mattel v. Bryant</u> case, Mattel's original Complaint alleges that

14  Carter Bryant, a former Mattel designer, worked with and assisted MGA, a Mattel

15  competitor, during the term of his Mattel employment.  One project that Bryant

16  worked on while employed by Mattel was the "Bratz" project, a line of fashion

17  dolls, that MGA purportedly acquired from Bryant and took to market.  MGA

18  intervened as a defendant in the <u>Mattel v. Bryant</u> case on December 7, 2004,

19

20

21

_____

22  [1]  Mattel's Complaint in Case No. 04-9059 SGL (RNBx) dated April 27, 2004,

23  Declaration of Jon D. Corey ("Corey Dec."), dated November 19, 2006, Exh. 1.
    [2]  Bryant's Cross-Complaint dated August 24, 2004, Corey Dec. Exh. 2.

24  [3]  Complaint in Case No. CV 04-9049 dated November 2, 2004, Corey Dec.
    Exh. 3.

25  [4]  MGA's Complaint in Case No. CV 05-2727 dated April 13, 2005, Corey Dec.,

26  Exh. 4.
    [5]  Order Consolidating Case Nos. CV 04-9049, CV-9059 and CV 05-2727, dated

27  June 19, 2006, Corey Dec., Exh. 5.

28

07934/2000569.7

-2-

MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

EXHIBIT __14__ PAGE __186__

1  claiming that the action put its rights in Bratz at issue.[6]  Both this Court and the

2  Ninth Circuit have recognized that the rights to the Bratz dolls are already at issue in

3  the Mattel v. Bryant case.[7]

4          Bryant filed counterclaims in the Mattel v. Bryant case, alleging that

5  his employment agreements with Mattel were invalid.[8]  Bryant also filed the Bryant

6  v. Mattel case, which sought a declaratory judgment that Bryant's "ideas, concepts,

7  drawings and designs for, and contributions to, 'Bratz' were and are independent and

8  original works, and were and are not copied from, derivative of or infringing any

9  Mattel work, including, without limitation, Mattel's copyrighted 'Toon Teens.'"[9]

10  The Court dismissed Bryant's counterclaims in the Mattel v. Bryant case on July 18,

11  2006.[10]  The Court dismissed Bryant's declaratory relief complaint at the same

12  time.[11]  Although given leave by the Court to do so, Bryant did not attempt to amend

13  either the declaratory relief complaint or his counterclaims.

14          MGA is the plaintiff in the MGA v. Mattel case, filed on April 13,

15  2005—after Mattel filed its initial complaint against Bryant and just before this

16  Court entered an order stay proceedings while the Ninth Circuit considered subject

17  matter jurisdiction issues on an interlocutory appeal.  The Court vacated that stay

18  order earlier this year, on May 16, 2006.  MGA alleges in its Complaint against

19  _____

20  [6]  Stipulation Permitting MGA to Intervene as a Party to This Action, entered by

21  the Court on December 7, 2004, Corey Dec., Exh. 6.

    [7]  Order Denying Plaintiff Mattel, Inc's Motion to Remand and Certifying

22  Question for Interlocutory Review dated March 4, 2005, at 19 (stating that "the

23  rights to the Bratz were and are in controversy" in this case), Corey Dec., Exh. 7;

    Mattel, Inc. v. Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006) (recognizing that the

24  "rights to Bratz dolls" are at issue in this case), Corey Dec., Exh. 8.

    [8]  Corey Dec, Exh. 2 at 1-2.

25  [9]  Corey Dec., Exh. 3, at 14.

26  [10]  Order Granting Mattel's Motion to Dismiss Bryant's Action for Declaratory

    Relief and Counterclaims, dated July 18, 2006, Corey Dec., Exh. 9.

27  [11]  Id.

28

-3-
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

EXHIBIT __14__  PAGE _187_

1  Mattel that Mattel engaged in "serial copycatting" of the "Bratz" dolls – which
2  MGA claims it owns – as well as alleged themes and other attributes of the dolls and
3  other MGA products.[12]  MGA's unfair competition case is broad, encompassing
4  claims relating to dozens of products as well as claims that Mattel's conduct with
5  buyers, licensees, industry associations, vendors, and other third parties had a range
6  of purportedly negative effects on MGA.  The consolidation of Mattel's Complaint
7  in the Mattel v. Bryant case with MGA's wide-ranging Complaint about Mattel's
8  alleged worldwide business practices significantly broadened the scope of litigation.

9        ***Proceedings to Date.***  On May 20, 2005, shortly after MGA filed its
10  lawsuit against Mattel, the Court stayed discovery in all three consolidated cases
11  while the Ninth Circuit considered an interlocutory appeal raising subject matter
12  jurisdiction issues.[13]  Judge Manella had, on her own accord, certified the Court's
13  jurisdictional ruling under 28 U.S.C. § 1292(b), which the Ninth Circuit accepted.[14]
14  Discovery resumed after May 2006, when the Ninth Circuit affirmed that the Court
15  has subject matter jurisdiction because the rights to Bratz are at issue (and hence the
16  amount in controversy requirement was satisfied) and ruled that the post-removal
17  intervention of MGA, as a non-diverse defendant, did not destroy diversity
18  jurisdiction.[15]

19
20

21  [12]  Corey Dec., Exh. 4 at 2.
22  [13]  Order Staying Discovery in Mattel, Inc. v. Bryant, Bryant v. Mattel, Inc., and
23  MGA Entertainment, Inc. v. Mattel, Inc., dated May 20, 2005, Corey Dec., Exh. 10.
       [14]  Corey Dec. Exh. 7 at 28-29.
24  [15]  Mattel initially filed this case in state court.  After Bryant removed (for the
25  second time), Mattel moved to remand the case, arguing (among other things) that
       the fact that MGA had intervened as a defendant destroyed any diversity jurisdiction
26  because MGA and Mattel are not diverse.  The District Court and Ninth Circuit
27  concluded that the post-removal intervention of a non-diverse defendant does not
       destroy diversity jurisdiction.  Corey Dec., Exhs. 7 & 8.
28

-4-

1       Because of the discovery stay, the consolidated cases have only now

2   begun to move forward in any significant way.  No trial date has been set in any of

3   the consolidated actions.  No discovery cutoff has been set in any of the cases.  No

4   scheduling conference with the Court has been held and no scheduling order has yet

5   been set by this Court for any of the consolidated cases.

6       ***New Information Mattel Has Discovered Since Filing Its Complaint***

7   ***Regarding Bryant's Work For MGA.***  Discovery Mattel has obtained to date,

8   including in recent months, has confirmed not only that Bryant created Bratz

9   designs, and aided MGA, during his Mattel employment and that he did so using

10  Mattel resources.  It also has shown that the nature and extent of that work was

11  beyond what was known to Mattel at the time it filed suit and that MGA was

12  complicit in Bryant's conduct.

13      Bryant worked as a Mattel product designer from September 1995 to

14  April 1998, and then again from January 1999 to October 2000.  When he started his

15  second term of employment with Mattel, Bryant executed an Employee Confidential

16  Information and Inventions Agreement ("Inventions Agreement").[16]  In the

17  Inventions Agreement, Bryant agreed that he would not, without Mattel's express

18  written consent, "engage in any employment or business other than for [Mattel], or

19  invest in or assist (in any manner) any business competitive with the business or

20  future business plans of [Mattel]" during his Mattel employment.[17]  Also in the

21  Inventions Agreement, Bryant assigned to Mattel all rights in "inventions,"

22  including "designs," that he created during his Mattel employment to the fullest

23  extent of the law.[18]

24

25

26  [16]  Inventions Agreement, Proposed Amended Complaint, Exhibit A.

27  [17]  Id. ¶ 3.

28  [18]  Id. at ¶ 2.

-5-

MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

EXHIBIT __14__  PAGE __189__

Bryant testified at deposition that he performed development-related work for Bratz while employed by Mattel and used Mattel employees and materials to prepare a three-dimensional doll prototype for use in a sales pitch to MGA — a pitch that he made while employed by Mattel.[19]  Bryant admitted he worked on his Bratz drawings while employed by Mattel and showed them to MGA in August and September 2000, also while employed by Mattel.[20]  Bryant further testified that he worked on an ostensibly separate doll called "Angel" for MGA while employed by Mattel.[21]  Bryant selected Mattel vendors and engaged them to start their work on Bratz before he left Mattel, thus using Mattel resources.[22]  A fax produced by Bryant bearing an April 2000 fax header date -- six months before he left Mattel -- showed that he was working on Bratz during a time period when he denied that he had been performing any such work.[23]

While Bryant sought in his deposition testimony to minimize his Bratz-related activities while he was employed by Mattel, other depositions have since then revealed that Bryant created key Bratz designs while working for Mattel and that MGA began developing Bratz with Bryant even earlier than Bryant admitted at deposition.

For example, at deposition two months ago, Steve Linker, a third-party vendor, testified that MGA asked him in or about September 2000 to put together a proposal for Bratz packaging.[24]  Linker's testimony and the documents he produced — including emails and other documents that have never been produced by MGA or

---

[19]  See Deposition of Carter Bryant ("Bryant Deposition"), at 88:7-89:6, 163:8-167:24, Corey Dec., Exh. 11.
[20]  Bryant Deposition at 8:15-11:11, Corey Dec., Exh. 11.
[21]  Id. at 178:3-18, 195:21-196:20.
[22]  Id. at 132:19-136:14.
[23]  April 10, 2000 Fax produced by Bryant, Corey Dec., Exh. 12.

-6-

EXHIBIT  14  PAGE  190

1 Bryant — established that the Bratz project was much further along before Bryant
2 left Mattel than MGA and Bryant have claimed.  In particular, Bryant had testified
3 at his deposition that he created a key design drawing for the three-dimensional
4 Bratz dolls in November 2000, only after he had left Mattel.[25]  Linker's testimony
5 and the documents he produced approximately two months ago, however, prove that
6 MGA gave that design drawing (as well as other Bratz development documents) to
7 Linker at a meeting *before* Bryant left Mattel.[26]  This is a highly significant fact,
8 since Bryant had testified that this particular design drawing was the basis for
9 sculptures of the Bratz dolls.[27]  This new information thus demonstrated not only the
10 falsity of material elements of Bryant's and MGA's story about the timing of the
11 creation of Bratz, but indeed that Bryant created Bratz dolls designs while he was
12 working for Mattel.  As another example, Anna Rhee, a third-party vendor who
13 painted the original Bratz doll's faces, testified that she began painting the faces of
14 Bratz dolls as early as June 2000.[28]

15       ***New Information Mattel Has Discovered Since Filing Its Complaint***
16 ***Regarding Other Unlawful Acts By MGA.***  Mattel has also uncovered a host of
17 other unfair and unlawful business practices by MGA since filing its initial
18 complaint against Bryant, many instances of which have occurred since Mattel first
19 sued Bryant.  MGA has engaged in an ongoing pattern of illegal conduct, consisting
20 of aiding and encouraging Mattel employees to steal Mattel's confidential

21

22     [24]   Deposition of Steven Linker ("Linker Deposition") at 50:7-51:6, Corey Dec.,
23 Exh. 13.
    [25]   Bryant Deposition at 350:16-350:25, 351:15-353:13, Corey Dec., Exh. 11;
24 Bratz design drawing by Carter Bryant, Corey Dec., Exh. 14.
    [26]   Linker Deposition at 77:6-78:23, Corey Dec., Exh. 13; Bratz design drawing
25 by Carter Bryant produced by Steve Linker, Corey Dec., Exh. 15.
26     [27]   Bryant Deposition at 527:17-528:20, Corey Dec., Exh. 11.
    [28]   Deposition of Anna Rhee ("Rhee Deposition") at 197:6-197:25, 199:8-
27 199:16, Corey Dec., Exh. 16.

28

-7-
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

EXHIBIT __14__ PAGE __191__

1  information and trade secrets and deliver that information to MGA, which uses that

2  information to further MGA's business interests and to harm Mattel.

3       These acts, set forth in detail in the proposed First Amended

4  Complaint, include the following:  In or about 2004, MGA decided to expand into

5  Mexico.  To do so, operating from its headquarters in Southern California, MGA

6  hired away three key Mattel employees in Mexico, who, on their way out, stole a

7  vast array of Mattel trade secrets.  This information involved virtually every

8  category of Mattel's sensitive and trade secret business plans and information for the

9  Mexican market, and a significant quantity of sensitive and trade secret information

10  relating to Mattel's business in the United States and worldwide.[29]  Armed with

11  Mattel's confidential business plans and methods, MGA has claimed that it

12  increased its market share in Mexico by 90 percent in a single year.[30]  MGA's

13  conduct in Mexico is the subject of a pending Mexican criminal case brought by the

14  Mexican federal authorities.[31]

15       Ron Brawer was a Senior Vice President at Mattel.[32]  On September

16  17, 2004, he resigned from Mattel to become the Executive Vice President of Sales

17  and Marketing at MGA.[33]   Brawer did so despite his express representations to

18  Mattel that he had not been interviewing with MGA, and despite the fact that

19  Brawer went out of his way just before leaving Mattel to obtain confidential Mattel

20  information.[34]  Brawer also represented during his Mattel exit interview that he had

21  returned all proprietary information to Mattel.[35]  Mattel has learned in recent months

22

---

23  [29]  See Amended Complaint at ¶ 38-52.

24  [30]  See id. at ¶ 50.

25  [31]  See id. at ¶ 53.
    [32]  See id. at ¶¶ 55-69.

26  [33]  See id. at ¶ 63.

27  [34]  See id. at ¶¶ 58, 62, 68.
    [35]  See id. at ¶ 68.

28

1  that Brawer's representation was false.[36]  For example, based on its investigation,

2  Mattel believes that Brawer did not return to Mattel information contained in his

3  contacts file, which included contact information for Mattel customers, most notably

4  Toys 'R Us.[37]  In addition, relying on his knowledge of Mattel's operations and the

5  roles of certain Mattel employees, Brawer has targeted certain Mattel employees

6  who have broad access to Mattel proprietary information in an effort to induce and

7  encourage them to join MGA and to steal or otherwise wrongfully misappropriate

8  Mattel confidential information and trade secrets.[38]

9          In 2005, MGA needed help in Canada, so it hired Janine Brisbois

10  ("Brisbois") from Mattel.[39]  Brisbois was responsible for Mattel's account with Toys

11  'R Us and Wal-Mart.[40]  MGA gave her responsibility for those same accounts, and

12  she took from Mattel documents containing proprietary advertising, project, sales,

13  customer and strategy information for both Canada and the United States.[41]  Brisbois

14  accessed and modified a number of such documents while employed by MGA.[42]

15          Mattel did not learn about this conduct, or the scope of the wrongdoing

16  by Bryant, MGA and related entities and individuals, until after Mattel filed its

17  original Complaint against Bryant.  Indeed, much of the unlawful activity had not

18  yet occurred when Mattel filed its complaint in April 2004.

19

20

21

22

23  _____

   [36] See id. at ¶¶ 68-69.
24  [37] See id.
   [38] See id.
25  [39] See id. at ¶¶ 70-76
26  [40] See id. at ¶ 72.
   [41] See id. at ¶¶ 73-74.
27  [42] See id. at ¶ 75.

28

-9-
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

EXHIBIT __14__ PAGE __197__

**Argument**

I. **JUSTICE AND THE INTERESTS OF JUDICIAL ECONOMY REQUIRE THAT MATTEL BE PERMITTED TO MAKE ITS NON-PREJUDICIAL, TIMELY AND GOOD FAITH AMENDMENTS TO THE COMPLAINT.**

A. **Amending Pleadings Is Strongly Favored**

Federal Rule of Civil Procedure 15(a) mandates that leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P.15(a), as "[f]ederal policy strongly favors determination of cases on their merits." Beery v. Hitachi Home Elecs. (Am.), Inc., 157 F.R.D. 481, 482 (C.D. Cal. 1994). The Ninth Circuit has repeatedly noted the Supreme Court's instruction to lower courts to "heed carefully the command of Rule 15(a), by freely granting leave to amend where justice so requires." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (quoting Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 765 (9th Cir. 1986)). This policy of favoring amendments to pleadings is applied with "extreme liberality." Id. (quoting United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981)); see also Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (same). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." DCD Programs, 833 F.2d at 186 (reversing denial of leave to file a fourth amended complaint adding another defendant where the suit was still in its early stages and plaintiffs offered a satisfactory explanation for their delay of fourteen months).

"Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." Id.; see also Foman v. Davis, 371 U.S. 178, 183 (1962); Eminence Capital, 316 F.3d at 1051-52. The four factors are not, however, of equal importance. DCD Programs, 833 F.2d at 186-87. The absence of unfair prejudice is a strong factor supporting amendment. Eminence Capital, 316

1  F.3d at 1052.  Delay, even where it exists, "is insufficient to justify denial of leave
2  to amend."  DCD Programs, 833 F.2d at 186.

3          Here, no unfair prejudice can be shown, and the remaining factors
4  either support amendment or are neutral.

5      **B.    Amendment Will Not Unfairly Prejudice Defendants**

6          Prejudice is the "touchstone" of the amendment analysis.  Eminence
7  Capital, 316 F.3d at 1052.  Absent a showing of prejudice, there is a presumption in
8  favor of granting leave to amend.  See id.  "The party opposing the amendment
9  bears the burden of showing prejudice."  Id.; SAES Getters, S.p.A. v. Aeronex, Inc.,
10 219 F. Supp. 2d 1081, 1086 (S.D. Cal 2002); see also DCD Programs, 833 F.2d at
11 188 (finding no prejudice when case was still at "discovery stage with no trial date
12 pending nor had pretrial conference been scheduled").

13         Defendants cannot credibly claim prejudice arising from Mattel's
14 amendment, much less "undue" prejudice.  The defendants (and presumably MGA's
15 affiliates) named in the proposed First Amended Complaint have been on notice of
16 this lawsuit since it was filed.  In fact, on December 7, 2004, MGA intervened and
17 has since been actively involved in this case.  Additionally, on April 13, 2005, MGA
18 filed its related unfair competition case, which was consolidated with Mattel's
19 action.  MGA's intervention and unfair competition action have transformed the
20 original dispute between Mattel and Bryant that centered on the creation of Bratz
21 into broad litigation over a variety of ostensible business practices -- practices that
22 now inevitably involve MGA's theft of confidential and proprietary information
23 from Mattel.  One of Mattel's defenses to MGA's sweeping unfair competition
24 allegations is that MGA was copying Mattel, not the other way around.  And the
25 reason that MGA was in a position to copy Mattel was its pattern of
26 misappropriating Mattel's trade secrets — namely its anticipated future products —
27 before Mattel brought those products to market.  So, a significant portion of the
28 allegations in the First Amended Complaint will be litigated in this dispute whether

-11-

MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

EXHIBIT  14  PAGE  195

1   the Court grants Mattel leave to file the First Amended Complaint or not. As such,

2   while the present amendments add new named players and affirmative claims, the

3   factual matters raised by the First Amended Complaint do not significantly expand

4   the scope of the case that MGA already has staked out, and therefore does not

5   prejudice either Bryant or MGA.

6           Of principal importance, the parties are still engaged in early stages of

7   discovery, no scheduling conference has been held, no scheduling order has been

8   entered and no trial date has been set. Defendants cannot show that Mattel's

9   amendments would expand or delay discovery or trial in a way that would unduly

10  prejudice them.

11          **C.      All Other *Foman* Factors Either Support Granting Leave To**

12          **Amend Or Are Neutral.**

13          Defendants' inability to show prejudice weighs substantially in favor of

14  granting leave to amend. Moreover, the amendments are timely, made in good faith

15  and meritorious.

16          **1.      Mattel Has Timely Sought To Amend Its Complaint.**

17          A plaintiff has three years to timely amend a complaint to substitute in

18  a named defendant for a Doe.[43] See Keller v. U.S., 667 F. Supp. 1351, 1356 n.8

19  (S.D. Cal. 1987); Cal. Civ. Proc. Code § 583.210. Mattel's First Amended

20  Complaint is timely in its substitution of Doe defendants as it is well within the

21  three years allotted.

22

23  _____

    [43]   Under the Federal Rules, the California relation back standard applies
24  because California law provides a more forgiving relation back standard. See
    Rumberg v. Weber Aircraft Corp., 424 F. Supp 294 (C.D. Cal. 1976) (finding that
25  Rule 15(c) did not apply because California law extended the applicable one-year
    statute of limitations three years past the commencement of the cause of action as to
26  "Doe" defendants); see also Lindley v. General Electric Company, 780 F. 2d 797,
    800-01 (9th Cir. 1986) (adopting Rumberg as the law of the Circuit).
27

28

EXHIBIT  14  PAGE  196

1    The facts that underlie the amendments now sought by Mattel were

2  revealed only after discovery was underway in this litigation, and many were

3  revealed only in the past few months.  Because of the disputes over whether federal

4  court had jurisdiction, the year-long discovery stay, the reassignment to this Court

5  and the subsequent consolidation of the related actions, this action has only now

6  begun to make any material progress.  Most of the documents produced by MGA to

7  date, including the documents suggesting its complicity with Bryant, were produced

8  just days before the stay was ordered.[44]  Mattel did not have an opportunity to

9  depose anyone at MGA on those documents until after the stay was lifted this

10  summer — and even after the stay was lifted, it took yet another Court order

11  compelling his appearance and the imposition of sanctions on MGA before Isaac

12  Larian, MGA's CEO, appeared for deposition on July 18, 2006.[45]  Then, as noted

13  above, Mattel obtained in September of this year from a third party significant

14  information about the timing of the creation and development of Bratz -- including

15  emails and documents that MGA and Bryant have never produced.

16    Having taken further discovery since the stay was lifted, Mattel now

17  has sufficient information to support claims against additional defendants arising out

18  of Mattel's original dispute against Bryant over Bratz.  Specifically, Mattel moves to

19  substitute MGA, Isaac Larian, and MGA Entertainment (HK) Limited as "Doe"

20  defendants in connection with that dispute.  Mattel seeks this relief because newly

21  discovered facts show that these defendants were complicit with Bryant in his

22  breaches of duty to Mattel and related unlawful conduct.  As set forth in Mattel's

23  First Amended Complaint, MGA was complicit in Bryant's work on Bratz, knowing

24

25    [44]  Letter from Paula Ambrosini to Michael T. Zeller and Jon D. Corey, dated

26  May 16, 2005, Corey Dec., Exh. 17.

27    [45]  Order Granting Mattel's Motion to Enforce the Court's Order of March 23,
   2005 and for Sanctions, dated June 16, 2006, Corey Dec., Exh. 19.

28

EXHIBIT __14__ PAGE __197__

1 | that Bryant was still employed by Mattel and in breach of his contractual, statutory
2 | and common law duties to Mattel.

3 | Mattel also seeks to add new causes of action against MGA, Larian,
4 | Bryant, MGA Entertainment (HK) Limited, MGA de Mexico and Gustavo Machado
5 | arising out of defendants' pattern of unfair competition and related illegal conduct.
6 | This pattern of illegal conduct — most of which occurred after Mattel had filed its
7 | original Complaint — consists of aiding and abetting Mattel employees in stealing
8 | Mattel's confidential information and delivering it to MGA to further MGA's
9 | business interests. Among other things, Mattel has discovered since the filing of its
10 | original Complaint that: (1) MGA stole Mattel's trade secrets by enticing three
11 | employees of Mattel's Mexican subsidiary, including defendant Machado, to steal
12 | sensitive business planning materials, and then hired them to join MGA; (2) MGA
13 | stole Mattel trade secrets by enticing an employee of Mattel's Canadian subsidiary
14 | to steal proprietary advertising, project, sales, customer and strategy information for
15 | Canada, the United States and the rest of the world, and then hired her to join MGA;
16 | and (3) in May 2006, Isaac Larian made misrepresentations to retailers, including
17 | Target and TRU, about Mattel's products, particularly the MY SCENE MY BLING
18 | BLING product with real gems, which caused at least one retailer to cancel its order
19 | for 75,000 units of the product.

20 | After the discovery of these facts, Mattel can now allege, and is
21 | alleging, claims for misappropriation of trade secrets against MGA, MGA de
22 | Mexico, Larian and Machado; claims for breach of fiduciary duty and breach of
23 | duty of loyalty against Machado; claims for intentional interference with contract,
24 | aiding and abetting breach of fiduciary duty, and aiding and abetting breach of duty
25 | of loyalty against MGA and Larian; and a claim for copyright infringement against
26 | MGA, MGA Entertainment (HK) Limited, Larian and Bryant. Mattel is also
27 | moving to add claims for violation of the Racketeer Influenced and Corrupt
28 | Organizations Act (18 U.S.C. §§ 1962(c) and 1964(c)), conspiracy to violate the

1   Racketeer Influenced and Corrupt Organizations Act (18 U.S.C §§ 1962(d) and
2   1964(c)), conversion, unfair competition (common law and Cal. Bus. & Prof. Code
3   § 17200) and declaratory relief against MGA, MGA Entertainment (HK) Limited,
4   MGA de Mexico, Larian, Bryant and Machado.

5          Some of these amendments — most notably, the allegations pertaining
6   to the ownership of Bratz and Bryant's and MGA's related misconduct — are
7   squarely related to existing allegations already pleaded in the original Complaint.
8   Both this Court and the Ninth Circuit have recognized that the rights to the Bratz
9   dolls are already at stake in this case.[46]  Mattel has only recently learned, through the
10  course of discovery, the true scope of what occurred and the nature and extent of
11  MGA's involvement, which justifies the amendments sought here.

12         The other amendments are based on unfair and unlawful business
13  practices by MGA and related entities and individuals consisting of aiding and
14  encouraging Mattel employees to steal Mattel's confidential information and trade
15  secrets and take them to MGA.  Mattel had no basis to allege those claims anytime
16  before, because much of the unlawful activity did not occur until after Mattel filed
17  its original Complaint.

18         Defendants cannot legitimately complain that Mattel unfairly delayed
19  in seeking amendment because Mattel only recently discovered information upon
20  which to base its claims.  The fact that Mattel has not previously amended its
21  complaint also weighs in favor of leave.  DCD Programs, 833 F.2d at 186 n.3.

22         In any case, even where (unlike here) undue delay exists, "delay, by itself, is
23  insufficient to justify denial of leave to amend."  Id. at 186.

24
25
26
27  ───────────────────
    [46]  Corey Dec., Exh. 7 at 19 & Exh. 8 at 1012.
28

-15-
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

EXHIBIT __14__ PAGE __199__

**2.      Mattel Seeks To Amend The Complaint In Good Faith.**

The "bad faith" that courts consider in determining whether to grant leave to amend is "understood to mean such tactics as, for example, seeking to add a defendant merely to destroy diversity jurisdiction." SAES Getters, 219 F. Supp. 2d at 1086 (citing Sorosky v. Burroughs Corp., 826 F.2d 794, 805 (9th Cir. 1987)). Here, there is no question that Mattel's motion is not brought in bad faith.  Because it is alleging federal claims in the proposed First Amended Complaint, including claims of copyright infringement, the proposed First Amended Complaint will not alter the Court's jurisdiction.  Mattel also promptly brought this motion after investigation and discovery revealed that the proposed new claims and defendants could be added to the present action.  If Mattel is not permitted to amend the complaint to add the new claims, to substitute MGA, MGA Entertainment (HK) Limited and Larian as "Doe" defendants, and to name Mattel de Mexico and Machado as new defendants, it will be forced to commence a new proceeding.  That would entail needless duplication of effort and would be wasteful of Court resources.

**3.      Mattel's Amendment Is Meritorious, Not Futile.**

The standard for denying a motion for leave to amend based upon futility is exceedingly high.  Under the law of this Circuit, "a proposed amendment is futile only if *no* set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) (reversing denial of leave to amend answer).  As the Supreme Court stated in Foman, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." 371 U.S. at 181.

Defendants cannot demonstrate that Mattel's proposed amendment is deficient as a matter of law.   To the contrary, Mattel has promptly and thoroughly

EXHIBIT __14__  PAGE __200__

1  investigated its well-pleaded allegations, and will prove them at trial.  There is no

2  basis to deny leave to amend the Complaint at this time.

3

4                              **Conclusion**

5          For the reasons set forth above, Mattel respectfully requests that the

6  Court grant it leave to file its First Amended Complaint.

7

8  DATED:  November 19, 2006          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
9

10                                  By _John B. Quinn|sac_

11                                     John B. Quinn
                                       Attorneys for Plaintiff and Counter-
12                                     Defendant Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

EXHIBIT  14   PAGE  201

**Exhibit A**

EXHIBIT __14__ PAGE __202__

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 | John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
3 | Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
4 | Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
5 | Duane R. Lyons (Bar No. 125091)
(duanelyons@quinnemanuel.com)
6 | 865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
7 | Telephone: (213) 443-3000
Facsimile: (213) 443-3100

8 | Attorneys for Plaintiff Mattel, Inc.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | MATTEL, INC., a Delaware corporation,

12 |                          Plaintiff,

13 |             v.

14 |

15 | MGA ENTERTAINMENT, INC., a California corporation; ISAAC LARIAN, an individual; CARTER
16 | BRYANT, an individual; MGA ENTERTAINMENT (HK) LIMITED,
17 | a Hong Kong Special Administrative Region business entity; MGAE DE
18 | MÉXICO, S.R.L. DE C.V., a Mexico business entity; CARLOS
19 | GUSTAVO MACHADO GOMEZ, an individual; and DOES 4 through 10,
20 |
21 |                          Defendants.
22 | AND CONSOLIDATED CASES

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated With Case No. 04-9059 and Case No. 05-2727

MATTEL, INC.'S FIRST AMENDED COMPLAINT FOR:

1. COPYRIGHT INFRINGEMENT;
2. VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;
3. CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;
4. MISAPPROPRIATION OF TRADE SECRETS;
5. BREACH OF CONTRACT;
6. INTENTIONAL INTERFERENCE WITH CONTRACT;
7. BREACH OF FIDUCIARY DUTY;
8. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;
9. BREACH OF DUTY OF LOYALTY;
10. AIDING AND ABETTING BREACH OF DUTY OF LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION; AND
13. DECLARATORY RELIEF.

DEMAND FOR JURY TRIAL

23 |
24 |
25 |
26 |
27 |
28 |

07934/2001691.1

FIRST AMENDED COMPLAINT

EXHIBIT __14__ PAGE __203__

**Preliminary Statement**

1.     For years defendant MGA Entertainment, Inc. has engaged in a pattern of stealing and using Mattel, Inc.'s property and trade secrets.  MGA's use of the stolen property and trade secrets caused and continues to cause significant harm to Mattel.  MGA first stole "Bratz," a fashion doll, from Mattel, and then continued stealing Mattel's confidential and proprietary information to fuel MGA's growth.

2.     Defendant Carter Bryant conceived, created and developed Bratz designs while he was employed by Mattel as a doll designer.  He concealed his Bratz work from Mattel and wrongfully sold Bratz to MGA while time that he was a Mattel employee.  As MGA knows, Mattel owns the Bratz designs that Bryant made.  As the rightful owner of those Bratz designs, Mattel has registered copyrights for them and seeks damages arising from MGA's repeated infringement of those copyrights.

3.     Emboldened by the success of its illegal conduct, MGA has repeated—and even expanded—its pattern of theft on numerous occasions.  For example, in or about 2004, MGA decided to expand into Mexico.  To do so, and operating from its Southern California offices, MGA hired away three key Mattel employees in Mexico, who, on their way out, stole virtually every category of Mattel's sensitive and trade secret business plans and information for the Mexican market, as well as a significant quantity of sensitive and trade secret information for Mattel's U.S. and worldwide businesses, and took them to MGA.  Armed with Mattel's confidential business plans and methods, MGA claimed to have increased its market share in Mexico alone by 90% in a single year.

4.     In 2005, MGA needed help in Canada.  So MGA, again operating from its Southern California headquarters, hired Janine Brisbois from Mattel.  At that time, Ms. Brisbois was responsible for Mattel's account with Toys 'R Us ("TRU") and Wal-Mart.  MGA gave her responsibility for those same

07934/2001691.1

1   accounts, and she took from Mattel documents containing proprietary advertising,

2   project, sales, customer and strategy information for not only Canada, but for the

3   United States.  Eliminating any doubt that MGA then proceeded to use those stolen

4   materials, Brisbois subsequently accessed and modified certain of those Mattel

5   documents while employed by MGA.

6         5.    These are not the only instances of such misconduct, which

7   MGA orchestrated and carried out from its headquarters in this District.

8   Defendants have engaged in an ongoing, widespread pattern of illegal acts,

9   consisting of inducing Mattel employees to steal Mattel's confidential information

10  or other property and take it with them to MGA to further MGA's business interests

11  and to harm Mattel.

**Jurisdiction**

13        6.    This Court has federal question jurisdiction over this action

14  pursuant to 28 U.S.C. §§ 1331, 17 U.S.C. §§ 101 *et seq.*, and 18 U.S.C. § 1964(c).

15  This Court has supplemental jurisdiction over Mattel's state law claims pursuant to

16  28 U.S.C. § 1367.

**Venue**

18        7.    Venue is proper in this District pursuant to 28 U.S.C.

19  §§ 1391(b)-(d), 1391(f) and 1400(a) and 18 U.S.C. § 1965.

**Parties**

21        8.    Mattel is a corporation organized and existing under the laws of

22  the State of Delaware, with its principal place of business in El Segundo,

23  California.

24        9.    Defendant MGA Entertainment, Inc. ("MGA") is a corporation

25  organized and existing under the laws of the State of California, with its principal

26  place of business in Van Nuys, California.  Mattel is informed and believes, and on

27  that basis alleges, that ABC International Traders, Inc. is a predecessor corporation

28  to MGA and that until September 16, 2002, MGA was incorporated and known as

1 | ABC International Traders, Inc.  Upon the filing of the Complaint, Mattel, being

2 | ignorant of the nature, extent and scope of MGA Entertainment, Inc.'s involvement

3 | and complicity in the conduct alleged therein and having designated MGA

4 | Entertainment, Inc. in the Complaint as Doe 1 and having discovered its

5 | involvement and complicity, Mattel hereby amends this Complaint by substituting

6 | MGA Entertainment, Inc. for the fictitious Doe name Doe 1.

7 | 10.    Defendant Carter Bryant ("Bryant") is an individual who

8 | formerly was employed by Mattel and has worked for and continues to work as a

9 | contactor for MGA.  Mr. Bryant currently resides in the State of Missouri.

10 | 11.    Defendant MGA Entertainment (HK) Limited is a business entity

11 | organized and existing under the laws of the Hong Kong Special Administrative

12 | Region, with its principal place of business in Hong Kong.  Upon the filing of the

13 | Complaint, Mattel, being ignorant of the nature, extent and scope of involvement

14 | and complicity of MGA Entertainment (HK) Limited in the conduct alleged therein

15 | and having designated MGA Entertainment (HK) Limited in the Complaint as Doe

16 | 2 and having discovered its involvement and complicity, Mattel hereby amends this

17 | Complaint by substituting MGA Entertainment (HK) Limited for the fictitious Doe

18 | name Doe 2.

19 | 12.    Defendant MGAE de Mexico, S.R.L. de C.V. ("MGA de

20 | Mexico") is a business entity organized and existing under the laws of Mexico,

21 | with its principal place of business in Mexico City, Mexico.

22 | 13.    Mattel is informed and believes, and on that basis alleges, that

23 | defendant Larian is the President and CEO of MGA and an individual residing in

24 | the County of Los Angeles.   Upon the filing of the Complaint, Mattel, being

25 | ignorant of the nature, extent and scope of involvement and complicity of Larian in

26 | the conduct alleged therein and having designated Larian in the Complaint as Doe 3

27 | and having discovered his involvement and complicity, Mattel hereby amends this

28 | Complaint by substituting Larian for the fictitious Doe name Doe 3.

-3-

FIRST AMENDED COMPLAINT

EXHIBIT 14   PAGE 206

14. Defendant Carlos Gustavo Machado Gomez is an individual who is employed by defendant MGA and who, on information and belief, currently resides in the County of Los Angeles.

15. The true names and capacities of defendants sued herein as DOES 4 through 10, inclusive, are unknown to Mattel, which therefore sues said defendants by such fictitious names. Mattel will amend this First Amended Complaint to allege their true names and capacities when the same are ascertained.

### Factual Background

### I.   MATTEL

16. Mattel manufactures and markets toys, games, dolls and other consumer products. Harold Mattson and Eliot and Ruth Handler founded Mattel in 1945. The name of the company was created by incorporating the names of two of its founders, "MATT-son" and "EL-liot." Originating from the Handlers' garage in Southern California, the company greatly expanded its operations following World War II. During the next several decades, Mattel became famous for producing high-quality products at reasonable prices.

17. Critical to Mattel's success is its ability to design and develop new products. Mattel invests millions of dollars in product design and development and introduces hundreds of new products each year. Mattel maintains a 180,000 square-foot design center in El Segundo, California, that houses hundreds of designers, sculptors, painters and other artists, who work exclusively to create the products on which Mattel's business depends.

18. Mattel also has invested substantial amounts over many years to develop its business methods and practices, including, without limitation, its marketing and advertising research, plans, methods and processes; its business research and forecasts; its costs, budgets, pricing, credit terms, deal terms and finances; its manufacturing, distribution, and sales methods and processes; and its

EXHIBIT __14__ PAGE __207__

1  inventory methods and processes.  These represent a material part of the intellectual
2  infrastructure of Mattel and are highly valuable.

3  **II.    MGA ENTERTAINMENT**

4          19.    Defendant MGA is also a toy manufacturer.  MGA began as a
5  consumer electronics business, but expanded into the toy business with licenses to
6  sell handheld electronic games.  By approximately late 1999 or early 2000, MGA
7  developed a strategy to expand its business and compete directly with Mattel by
8  launching a fashion doll line, so it stole a fashion doll that was owned by Mattel –
9  "Bratz."

10         20.    MGA intentionally stole not just specific Mattel property, such
11  as Bratz designs, prototypes and related materials, but also a vast array of trade
12  secrets and other confidential information that comprise Mattel's intellectual
13  infrastructure.  MGA's rapid growth was not organic, but rather was based upon its
14  theft of Bratz.  As a result, MGA lacked an appropriate intellectual infrastructure
15  for a company of its size and it became increasingly difficult to manage.  To deal
16  with these problems, as detailed below, time and time again MGA simply stole
17  Mattel's proprietary business methods, practices and information.  This not only
18  allowed MGA to avoid expending time, money and effort necessary to build a
19  legitimate business, but also allowed MGA to unfairly compete against Mattel by
20  taking Mattel's playbook.

21  **III.  MGA STEALS A NEW LINE OF FASHION DOLLS FROM MATTEL**

22         21.    Defendant Carter Bryant is a former Mattel employee.  Bryant
23  joined Mattel in September 1995, where he worked in Mattel's Design Center as a
24  BARBIE product designer.  In or about April 1998, Bryant resigned his position
25  with Mattel and moved to Missouri to live with his parents.  Late in 1998, Bryant
26  applied to Mattel to be rehired.  On January 4, 1999, he began working at Mattel in
27  Mattel's Design Center, again as a product designer, for Mattel's BARBIE
28  collectibles line.

07934/2001691.1

-5-

22.   Upon his return to Mattel in January 1999, Bryant executed an Employee Confidential Information and Inventions Agreement (the "Employment Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

23.   Pursuant to his Employment Agreement and as a condition of and in consideration for his employment, Bryant agreed, among other things, that he held a position of trust with Mattel, that the designs and inventions he created during his Mattel employment (with certain exceptions not relevant here) were owned by Mattel, and that he would be loyal to the company by agreeing not to assist or work for any competitor of Mattel while he was employed by Mattel.

24.   On January 4, 1999, Bryant also executed Mattel's Conflict of Interest Questionnaire (the "Conflict Questionnaire").  Among other things, Bryant certified in the Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor of Mattel in the prior twelve months and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest.  Bryant understood what the Conflict Questionnaire required because, among other things, he disclosed on it the freelance work he had performed while in Missouri for Ashton-Drake, which is unrelated to the conduct alleged herein.  A true and correct copy of the Conflict Questionnaire executed by Bryant is attached hereto as Exhibit B.

25.   Pursuant to the Conflict Questionnaire, Bryant also agreed that he would immediately notify his supervisor of any change in his situation that would cause him to change any of the foregoing certifications.  Despite this obligation, at no time did Bryant disclose to Mattel that he was engaging in any business venture or transaction with MGA or any other Mattel competitor.

26.   More specifically, while Bryant was employed by Mattel, Bryant and other defendants misappropriated and misused Mattel property and Mattel resources for the benefit of Bryant and MGA.  Such acts included, but are not limited to, the following:

1          a.      using his exposure to Mattel development programs to

2   create the concept, design and name of Bratz;

3          b.      using Mattel resources, and while employed by Mattel,

4   Bryant worked by himself and with other Mattel employees and contractors to

5   design and develop Bratz, including without limitation by creating drawings and

6   three-dimensional models of Bratz dolls, and fashion designs for the dolls'

7   associated clothing and accessories; and

8          c.      using Mattel resources, and while employed by Mattel,

9   Bryant took steps to assist MGA to produce Bratz dolls.

10         27.     During the time that he was employed by Mattel and thereafter,

11  Bryant concealed these actions from Mattel, including by failing to notify his

12  supervisor of the conflict of interest he created when he began working on MGA's

13  behalf and when he began receiving payments from MGA.  Bryant additionally

14  enlisted other Mattel employees to perform work on Bratz during the time he was

15  employed by Mattel and, by all indications, in at least some cases led them to

16  believe that they were performing work on a project for Mattel.

17         28.     Bryant also made affirmative misrepresentations to Mattel

18  management and employees immediately before his departure from Mattel on

19  October 20, 2000.  For example, during Bryant's exit interview in October 2000, he

20  told the Mattel Human Resources representative who conducted the interview that

21  he was leaving Mattel to engage in non-competitive work.  During his last few

22  weeks at Mattel, Bryant told his co-workers and supervisors that he was going to

23  leave Mattel for "non-competitive" pursuits.  Bryant's representations to his

24  supervisors and his co-workers were false.  Bryant knew at the time that those

25  representations were false and made those false statements to conceal from Mattel

26  the fact that he was already working with MGA and that he had contracted with

27  MGA to assign Bratz works to MGA and to provide design and development

28  services to MGA, a Mattel competitor.

-7-

FIRST AMENDED COMPLAINT

EXHIBIT __14__  PAGE __210__

29.    As a result of the efforts of Bryant and other Mattel employees working on Bratz (which were done without Mattel's knowledge), the Bratz dolls had been designed and were far along in development during the time that Bryant was employed by Mattel and prior to the time that Bryant left Mattel on October 20, 2000.  Not only did Bryant create and develop designs for the dolls as well as other aspects of the products such as their fashion accessories during the time he was employed by Mattel, but MGA showed finished Bratz prototypes and/or product to both focus groups and retailers in November 2000, less than three weeks after Bryant left Mattel.  Bryant, Larian and others at MGA arranged these meetings and focus groups while Bryant was still employed by Mattel.

30.    Bryant and MGA employees also repeatedly and continuously communicated with employees of MGA Entertainment (HK) Limited on subjects such as design and manufacturing of Bratz.  On information and belief, at all material times, MGA Entertainment (HK) Limited has maintained regular and continuous contacts with persons in the County of Los Angeles; it regularly has shipped products that it manufactures, or that are manufactured for it, to the County of Los Angeles; and such products have been distributed to retailers and sold to consumers in the County of Los Angeles.

31.    Bratz also were shown to retailers at the Hong Kong Toy Fair in January 2001.  By early 2001, only a few months after Bryant resigned from Mattel, MGA began having the Bratz fashion doll line and accessories manufactured and then, shortly thereafter, began selling them at retail.

32.    Since 2001, MGA has distributed and sold Bratz and Bratz-related products throughout the world.  Mattel is informed and believes that MGA also licenses Bratz to third parties.  Mattel is also informed and believes that MGA derives annual revenue from its sales and licenses of Bratz in excess of $500 million.  Mattel is further informed and believes that MGA and Bryant claim current ownership of Bratz, and all copyrights and copyright registrations attendant

-8-

FIRST AMENDED COMPLAINT

EXHIBIT __14__ PAGE __211__

1  thereto.  MGA continues to market, sell and license Bratz and has expressed an

2  intention to continue to do so.

3       33.   Mattel is informed and believes that MGA and Larian

4  encouraged, aided and financed Bryant to develop Bratz, knowing full well that

5  Bryant was still employed by Mattel at the time and that by performing such work,

6  including design-related work, for his own benefit and/or the benefit of MGA,

7  Bryant would be, and was, in breach of his contractual, statutory and common law

8  duties to Mattel.  Mattel is also informed and believes that MGA proceeded to aid

9  and encourage Bryant to develop Bratz with the goal of obtaining a valuable

10  fashion doll line that would be commercially successful in the competitive, multi-

11  billion dollar market for fashion dolls.

12       34.   Pursuant to Bryant's contract with Mattel, among other things,

13  Mattel is the true owner of Bratz designs and works, including those specifically

14  that were conceived, created or reduced to practice during Bryant's Mattel

15  employment as well as all designs and works that are or have been derived

16  therefrom.  Defendants' continued use, sale, distribution and licensing of Bratz thus

17  infringes upon Mattel's rights, injures Mattel and unlawfully enriches the

18  defendants.

19       35.   Bryant and MGA deliberately and intentionally concealed facts

20  sufficient for Mattel to suspect or to know that it was the true owner of Bratz.

21  Their acts of concealment include, but are not limited to, concealing the fact that

22  Bryant conceived, created, designed and developed Bratz while employed by

23  Mattel, including by tampering with and defacing documents which showed that, in

24  fact, Bryant was a Mattel employee while he was working for and with MGA;

25  concealing the fact that Bryant worked with and assisted MGA during the time

26  Bryant was employed by Mattel and was compensated for that assistance;

27  concealing that Bryant was providing consulting services to MGA; concealing

28  Bryant's role in Bratz by falsely claiming that Larian and others were the creators

FIRST AMENDED COMPLAINT

EXHIBIT __14__ PAGE __212__

of Bratz; and concealing the fact that Mattel was the true owner of Bratz by, among other things, filing fraudulent registrations and/or amendments to registrations with the United States Copyright Office claiming MGA as the author of Bratz as a work for hire and altering relevant dates on such documents to further obscure the true facts of when the works were created.

36.   Because of Bryant's and MGA's acts of concealment and Bryant's misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had worked with MGA, or assisted MGA, while he still employed by Mattel until approximately November 24, 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's agreement with MGA which showed that the date of Bryant's agreement with MGA predated Bryant's departure from Mattel.  It was then, as a result, that Mattel learned for the first time that Bryant had secretly aided, assisted and worked for and with MGA while employed at Mattel and in violation of his Mattel Employment Agreement.  Specifically, Bryant's agreement with MGA obligated Bryant to provide product design services to MGA on a "top priority" basis.  Bryant's agreement with MGA also provided that Bryant would receive royalties and other consideration for sales of products on which Bryant provided aid or assistance; that all works and services furnished by Bryant under the agreement, including those he purportedly provided while still a Mattel employee, purportedly would be considered "works for hire" of MGA; and that all intellectual property rights to preexisting works by Bryant, including Bratz designs, purportedly were assigned to MGA.

## IV.  MGA STEALS MATTEL TRADE SECRETS IN MEXICO

37.   On information and belief, in or about late 2003 or early 2004, MGA decided to open business operations in Mexico.  Faced with the difficult task of developing an overall strategy for expanding into a market in which it had only a nominal presence and no operations, MGA elected to steal Mattel's plans, strategy and business information for the Mexican market and materials related to Mattel's

EXHIBIT __14__ PAGE __213__