1   believes, however, that certain additional employees accessed, copied and took

2   from Mattel confidential and proprietary information, including Mattel's strategic

3   plans; business operations, methods and systems; marketing and advertising

4   strategies and plans; future product lines; product profit margins; and customer

5   requirements. The misappropriated confidential and proprietary information

6   included information that these Mattel employees were not authorized to access.

7   On information and belief, the misappropriated confidential and proprietary

8   information taken from Mattel is being disclosed to and used by MGA for the

9   benefit of MGA and to the detriment of Mattel.

10  **VIII.  LARIAN MAKES MISREPRESENTATIONS TO RETAILERS**

11  **ABOUT MATTEL'S PRODUCTS**

12          78.   Counter-defendants have engaged in other illegal practices in

13  their efforts to compete unfairly with Mattel.  Larian has a practice of sending e-

14  mail messages to a "Bratz News" distribution list that Larian created or that was

15  created for him.  Mattel is informed and believes that the recipients of e-mail

16  messages sent to the "Bratz News" distribution list include members of the media

17  as well as representatives of many of Mattel's most significant customers.

18          79.   On May 12, 2006, Larian sent an e-mail message to the "Bratz

19  News" distribution list that included a reference to Mattel's updated MY SCENE

20  MY BLING BLING product with real gems.  Mattel had not publicly announced

21  this product at the time that Larian sent his May 12, 2006 e-mail.  In fact, Mattel

22  had guarded the identification of this particular product.

23          80.   Shortly thereafter, Larian engaged in a campaign of calling

24  Mattel's most significant customers, including but not limited to Target and TRU,

25  regarding the MY SCENE MY BLING BLING product with real gems.  In an

26  effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING

27  BLING product with real gems, Larian knowingly made false factual statements

28  about that product to each retailer.  As of the writing of this First Amended

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_ PAGE _317_

1   Complaint, Mattel is aware that Larian represented to each retailer that each was

2   the only retailer to purchase the product and that Mattel would not be supporting

3   the product with television advertising.  At the time that Larian made these

4   statements, he knew them to be false.  As a result of Larian's misrepresentations, at

5   least one retailer cancelled its order for 75,000 units of the MY SCENE MY

6   BLING BLING product with real gems.  Only after Mattel learned of Larian's

7   misrepresentations and was able to correct them was Mattel able to assure the

8   retailer that Larian's representations were false and to persuade the retailer to

9   reinstate the order.

10          81.    Such conduct is not an isolated incident.  MGA and Larian, in an

11  effort to gain an unfair competitive advantage, repeatedly issued false and

12  misleading press releases.  In these press releases, MGA and Larian have

13  misrepresented Bratz's sales, Bratz's market share, Bratz's position vis-à-vis

14  Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market

15  share of Mattel's BARBIE products.

**CLAIMS FOR RELIEF**

**<u>First Counterclaim</u>**

**Copyright Infringement**

**(Against MGA, MGA Entertainment (HK) Limited,**

**Larian, Bryant and Does 4 through 10)**

21          82.    Mattel repeats and realleges each and every allegation set forth in

22  paragraphs 1 through 81, above, as though fully set forth at length.

23          83.    Mattel is the owner of copyrights in works that are fixed in

24  tangible media of expression and that are the subject of valid, and subsisting,

25  copyright registrations owned by Mattel.  These include, without limitation, the

26  works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-

27  378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-

28

-51-

378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273.

84.   Counter-defendants have reproduced, created derivative works from and otherwise infringed upon the exclusive rights of Mattel in its protected works without Mattel's authorization.  Counter-defendants' acts violate Mattel's exclusive rights under the Copyright Act, including without limitation Mattel's exclusive rights to reproduce its copyrighted works and to create derivative works from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

85.   Counter-defendants' infringement (and substantial contributions to the infringement) of Mattel's copyrighted works is and has been knowingly made without Mattel's consent and for commercial purposes and the direct financial benefit of Counter-defendants.  Counter-defendants, moreover, have deliberately failed to exercise their right and ability to supervise the infringing activities of others within their control to refrain from infringing Mattel's copyrighted works and have failed to do so in order to deliberately further their significant financial interest in the infringement of Mattel's copyrighted works.  Accordingly, Counter-defendants have engaged in direct, contributory and vicarious infringement of Mattel's copyrighted works.

86.   By virtue of defendants' infringing acts, Mattel is entitled to recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of suit and attorneys' fees, and all other relief permitted under the Copyright Act.

87.   Counter-defendants' actions described above have caused and will continue to cause irreparable damage to Mattel, for which Mattel has no remedy at law.  Unless Counter-defendants are restrained by this Court from continuing their infringement of Mattel's copyrights, these injuries will continue to occur in the future.  Mattel is accordingly entitled to injunctive relief restraining Counter-defendants from further infringement.

07209/2035941.2

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __15__ PAGE __315__

## Second Counterclaim

### Violation of the Racketeer Influenced and Corrupt Organizations Act

### 18 U.S.C. §§ 1962(c) and 1964(c)

### (Against All Counter-defendants)

88.    Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 87, above, as though fully set forth at length.

89.    Beginning at various times from approximately 1999 through the filing of this First Amended Complaint, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas and Brisbois were employed by and associated-in-fact with an enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "MGA Criminal Enterprise").  The MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois).

90.    MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and each of them, for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information, by means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully and knowingly conduct and participate, directly and indirectly, in the conduct of the MGA Criminal Enterprise's affairs through a pattern of racketeering activity. Their actions include multiple, related acts in violation of:  18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512 (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and foreign travel to aid·

-53-

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __15__ PAGE _316_

1  racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A) (criminal

2  copyright infringement).

3          91.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

4  Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

5  Brisbois, and the Other Former Employees, and each of them, shared the common

6  purpose of enabling MGA to obtain confidential, proprietary and otherwise

7  valuable Mattel property through improper means in order to assist MGA in

8  illegally competing with Mattel domestically and throughout the world.

9          92.   The MGA Criminal Enterprise as described herein is at all

10  relevant times a continuing enterprise because, among obvious reasons, it is

11  designed and did unlawfully acquire the confidential business information and

12  property of Mattel and incorporated this information and property into MGA's

13  ongoing business, marketing strategies and business methods, practices and

14  processes.  The conduct of the enterprise continues through the date of this First

15  Amended Complaint and is ongoing by virtue of MGA's continuing use of Mattel's

16  information and property, all to the detriment of Mattel.

17          93.   The pattern of racketeering activity, as defined by 18 U.S.C.

18  §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

19  of continuing criminal activity.  This activity consists of multiple acts of

20  racketeering by each member of the MGA Criminal Enterprise, is interrelated, not

21  isolated and is perpetrated for the same or similar purposes by the same persons.

22  This activity extends over a substantial period of time, up to and beyond the date of

23  this First Amended Complaint.  These activities occurred after the effective date of

24  18 U.S.C. §§ 1961 *et seq.*, and the last such act occurred within 10 years after the

25  commission of a prior act of racketeering activity.  These racketeering activities

26  included repeated acts of:

27          (a)   Mail Fraud:  Counter-defendants MGA, MGA Entertainment

28                (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and

-54-

1   Does 4 through 10, aided and abetted by each other and some or

2   all of the remaining members of the MGA Criminal Enterprise,

3   having devised a scheme or artifice to defraud Mattel of its

4   confidential trade secret information and property by conversion,

5   false representations, concealment and breaches of fiduciary duty,

6   did for the purpose of furthering and executing such a scheme or

7   artifice to defraud, deposited or caused to be deposited matters or

8   things to be sent or delivered by the Postal Service, or any private

9   or commercial interstate carrier, or took or received matters or

10   things therefrom, or knowingly caused matters or things to be

11   delivered by mail or such carrier according to the direction

12   thereon, or at the place at which it is directed to be delivered by

13   the person to whom it is addressed, in violation of 18 U.S.C.

14   § 1341 and 18 U.S.C. § 2, as alleged with greater particularity in

15   the foregoing paragraphs and as set forth in Exhibit C;

16   (b)   Wire Fraud:  Counter-defendants MGA, MGA Entertainment

17   (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and

18   Does 4 through 10, aided and abetted by each other and some or

19   all of the remaining members of the MGA Criminal Enterprise,

20   having devised a scheme or artifice to defraud Mattel of its

21   confidential and trade secret information and property by

22   conversion, false representations, concealment and breaches of

23   fiduciary duty, did for the purpose of furthering and executing

24   such a scheme or artifice to defraud, transmit and cause to be

25   transmitted by means of wire communications in interstate or

26   foreign commerce, writing, signs, signals, pictures or sound, in

27   violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with

28

-55-

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __15__ PAGE __3/8__

greater particularity in the foregoing paragraphs and as set forth in Exhibit C;

(c)  Tampering With a Witness, Victim or Informant:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, did corruptly alter, destroy, mutilate, or conceal a record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding.  Such actions are in violation of 18 U.S.C. § 1512 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

(d)  Interstate and Foreign Travel in Aid of Racketeering Enterprises: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, traveled in interstate and foreign commerce, or used the mail or any facility in interstate or foreign commerce, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of unlawful activity, i.e. bribery, in violation of the laws of the State of California, Cal. Penal Code § 641.3, all in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

(e)  Criminal Copyright Infringement: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by

07209/2035941.2

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 15    PAGE 319

1    each other and some or all of the remaining members of the MGA

2    Criminal Enterprise, willfully infringed Mattel's copyrights,

3    including with respect to documents containing Mattel trade

4    secret and confidential information, for purposes of commercial

5    advantage and private financial gain, all in violation of 18 U.S.C.

6    § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater

7    particularity in the foregoing paragraphs.

8    94.    The persons alleged herein to have violated 18 U.S.C. § 1962(c)

9    are separate from, though employed by or associated with, MGA, the MGA Group,

10   the Bryant Group, the Mexican Group and the Canadian Group.

11   95.    MGA had a role in the racketeering activity that was distinct

12   from the undertaking of those acting on its behalf.  MGA also attempted to benefit,

13   and did benefit, from the activity of its employees and agents alleged herein, and

14   thus was not a passive victim of racketeering activity, but an active perpetrator.

15   96.    Mattel has been injured in its business or property as a direct

16   and proximate result of the Counter-defendants' and the other enterprise members'

17   violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts

18   constituting the pattern of racketeering activity.

19   97.    As a result of the violations of 18 U.S.C. § 1962(c), by the MGA

20   Group, the Bryant Group, the Mexican Group and the Canadian Group, Mattel has

21   suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18

22   U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

23   compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

24   of Counter-defendants' violations of 18 U.S.C. § 1962(c).

25

26

27

28

### Third Counterclaim

### Conspiracy To Violate the Racketeer

### Influenced And Corrupt Organizations Act

### (18 U.S.C. §§ 1962(d) and 1964(c))

### (Against All Counter-defendants)

98.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 97, above, as though fully set forth at length.

99.   Beginning at various times from approximately 1999 through the filing of this First Amended Complaint, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4·through 10, and Brawer, Trueba, Vargas, Brisbois and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

100.  These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity.

101.  The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), including acts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2; acts of tampering with witnesses, victims or informants in violation of 18 U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; and acts of criminal copyright infringement in violation of 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A).

-58-

EXHIBIT __15__ PAGE __521__

102.   Counter-defendants and the other members of the MGA Criminal Enterprise schemed to defraud Mattel and steal its property and trade secret information by means of false representation, breaches of fiduciary duty, conversation and concealment, as more fully set forth in the foregoing paragraphs.

103.   In furtherance of this unlawful conspiracy, and to effect its objectives, Counter-defendants and various co-conspirators committed numerous overt acts, including but not limited to those set forth in the foregoing paragraphs.

104.   Mattel has been injured in its business or property as a direct and proximate result of the Counter-defendants' and the other enterprise members' violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts constituting the pattern of racketeering activity.

105.   As a result of the conspiracies between and among all Counter-defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special compensatory damages, plus interest, costs and attorneys, fees, incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(d).

### Fourth Counterclaim
### Misappropriation of Trade Secrets
### (Against Counter-defendants MGA, MGA de Mexico,
### Larian, Machado and Does 4 through 10)

106.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 105, above, as though fully set forth at length.

107.   As used herein, "Trade Secret Material" shall mean the documents, materials and information stolen by Machado, Trueba, Vargas, Brisbois, the Other Former Employees, and other persons acting for, on behalf of or at the direction of MGA and/or Larian.  Prior to their theft by Counter-defendants, the Trade Secret Materials gave Mattel a significant competitive advantage over its

1  existing and would-be competitors, including MGA. This advantage, as to MGA,

2  has now been compromised as a result of Counter-defendants' unlawful activities.

3          108. Mattel made reasonable efforts under the circumstances to

4  maintain the confidentiality of the Trade Secret Materials, including by having

5  employees and consultants who may have access the Trade Secret Materials sign

6  confidentiality agreements that oblige them not to disclose the Trade Secret

7  Materials or characteristics of the Trade Secret Materials; by limiting the

8  circulation of said materials within Mattel; by protecting and limiting access to

9  computers with log-in identifications and passwords; by limiting each employee's

10 access to electronic files to those that the particular employee needs to access; by

11 educating employees on the nature of Mattel's information that is confidential and

12 proprietary; and by reminding employees on a regular and periodic basis of their

13 obligation to protect and maintain Mattel's confidential and proprietary

14 information.

15         109. Mattel's Trade Secret Materials derive independent economic

16 value from not being generally known to the public or to other persons who can

17 obtain economic benefit from their disclosure.

18         110. Counter-defendants have illegally obtained the trade secret

19 materials, as set forth above, and through other means of which Mattel is presently

20 unaware.

21         111. Counter-defendants have used and disclosed Mattel's Trade

22 Secret Materials without Mattel's consent and without regard to Mattel's rights, and

23 without compensation, permission, or licenses for the benefit of themselves and

24 others.

25         112. Counter-defendants' conduct was, is, and remains willful and

26 wanton, and was taken with blatant disregard for Mattel's valid and enforceable

27 rights.

28

-60-

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __15__ PAGE __323__

113.  Counter-defendants' wrongful conduct has caused and, unless enjoined by this Court, will continue in the future to cause irreparable injury to Mattel.  Mattel has no adequate remedy at law for such wrongs and injuries.  Mattel is therefore entitled to a permanent injunction restraining and enjoining Counter-defendants, and each of them, as well as their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from further using in any manner Mattel's trade secrets.

114.  In addition, as a proximate result of Counter-defendants' misconduct, Mattel has suffered actual damages, and Counter-defendants have been unjustly enriched.

115.  The aforementioned acts of the Counter-defendants were willful and malicious, including in that Counter-defendants misappropriated Mattel's trade secrets with the deliberate intent to injure Mattel's business and improve their own. Mattel is therefore entitled to enhanced damages.  Mattel is also entitled to reasonable attorney's fees.

### Fifth Counterclaim

### Breach of Contract

### (Against Bryant)

116.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 115, above, as though fully set forth at length.

117.  Pursuant to his Employment Agreement, Bryant agreed that he would not, without Mattel's express written consent, engage in any employment or business other than for Mattel or assist in any manner any business competitive with the business or future business plans of Mattel during his employment with Mattel.  Pursuant to his Mattel Employment Agreement, Bryant further assigned to Mattel all right, title and interest in "inventions," including without limitation "designs" and other works that he conceived, created or reduced to practice during his employment by Mattel.  In addition, pursuant to the Conflict Questionnaire,

-61-

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_ PAGE _324_

1   Bryant certified that, other than as disclosed, he had not worked for any competitor
2   of Mattel and had not engaged in any business venture or transaction involving a
3   Mattel competitor that could be construed as a conflict of interest. Bryant further
4   promised that he would notify his supervisor immediately of any change in his
5   situation that would cause him to change any of the foregoing certifications or
6   representations.

7          118. The Employment Agreement and the Conflict Questionnaire are
8   valid, enforceable contracts, and Mattel has performed each and every term and
9   condition of the Employment Agreement and Conflict Questionnaire required to be
10  performed by Mattel.

11         119. Bryant materially breached the foregoing contracts with Mattel,
12  in that, among other things, he secretly aided, assisted and worked for a Mattel
13  competitor during his employment with Mattel without the express written consent
14  of Mattel.

15         120. As a consequence of Bryant's breach, Mattel has suffered and
16  will, in the future, continue to suffer damages in an amount to be proven at trial.
17  Such damages include, without limitation, the amounts paid by the competitor to
18  Bryant during his Mattel employment; the amounts paid by MGA to Bryant during
19  his Mattel employment; the amount that Mattel paid Bryant during the time he
20  wrongfully worked with MGA; the value of information and intellectual property
21  owned by Mattel which Bryant provided to MGA; the value of the benefits that
22  MGA obtained from Bryant during the time he was employed by Mattel; and the
23  value of the benefits that MGA obtained from Bryant as a result of the work he
24  performed for or with MGA during his Mattel employment.

25         121. Bryant's conduct has caused, and unless enjoined will continue to
26  cause, irreparable injury to Mattel that cannot be adequately compensated by
27  money damages and for which Mattel has no adequate remedy at law. Bryant
28  specifically acknowledged in his Employment Agreement that his breach of the

AMENDED ANSWER AND COUNTERCLAIMS

07209/2035941.2

EXHIBIT __15__   PAGE __335__

1  Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be

2  entitled to injunctive relief to enforce this Agreement, in addition to damages and

3  other available remedies." Accordingly, Mattel is entitled to orders mandating

4  Bryant's specific performance of his contracts with Mattel and restraining Bryant

5  from further breach.

### Sixth Counterclaim

### Intentional Interference with Contract

### (Against MGA, Larian and Does 4 through 10)

9      122. Mattel repeats and realleges each and every allegation set forth in

10  paragraphs 1 through 121, above, as though fully set forth at length.

11      123. Valid agreements existed between Mattel and Bryant, Brawer,

12  Machado, Trueba, Vargas, Brisbois and the Other Former Employees (collectively,

13  the "Mattel Employees")

14      124. At all times herein mentioned, MGA, Larian and Does 4 through

15  10 knew that the Mattel Employees had a duty under their agreements not to work

16  for or assist any competitor of Mattel, such as MGA. In addition, at all times

17  mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had

18  assigned to Mattel, and was obligated to disclose to Mattel all inventions, including

19  designs and other works, created, conceived or reduced to practice during their

20  employment with Mattel.

21      125. Despite such knowledge, Counter-defendants MGA, Larian and

22  Does 4 through 10 intentionally and without justification solicited, induced and

23  encouraged the Mattel Employees to breach their contracts with Mattel.

24      126. As a direct and proximate result of Counter-defendants' efforts

25  and inducements, the Mattel Employees did breach their contracts with Mattel.

26      127. As a result of said breaches, Mattel has suffered damages and

27  will imminently suffer further damages, including the loss of its competitive

28  position and lost profits, in an amount to be proven at trial.

07209/2035941.2

-63-

128. Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

## Seventh Counterclaim
### Breach of Fiduciary Duty
### (Against Bryant and Machado)

129. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 128, above, as though fully set forth at length.

130. Bryant and Machado held positions of trust and confidence with Mattel. In their positions, Bryant and Machado had access to and were entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of their job assignments and duties. In their positions, Bryant and Machado also represented Mattel in its dealings with third parties and, in actions in the course and scope of their employment with Mattel, were agents of Mattel. They confirmed their relationship of trust with Mattel in respective employee agreements. Bryant and Machado thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests or that would deprive Mattel of any opportunities, profit or advantage which Bryant or Machado might bring to Mattel.

131. Bryant breached his fiduciary duty to Mattel in that, while employed by Mattel, he secretly aided and assisted a competitor of Mattel, including without limitation by entering into an agreement with a Mattel competitor. As alleged above, Bryant also breached the aforementioned duty by using Mattel property and resources for the benefit of, and to aid and assist, himself personally and MGA.

132. Machado breached his fiduciary duty to Mattel, in that while employed by Mattel, he secretly aided and assisted a competitor of Mattel by, among other things, misappropriating Mattel trade secret and proprietary information and providing said information to officers of MGA. Machado also breached the aforementioned duty by using Mattel property and resources for the benefit of, and to aid and assist, himself personally and MGA.

133. As a direct and proximate result of Counter-defendants' wrongful conduct, Mattel has incurred damages in an amount to be determined at trial.

134. Counter-defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of exemplary damages against Counter-defendants in an amount to be determined at trial.

135. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining further breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants from continuing to benefit from such breach.

### Eighth Counterclaim

### Aiding and Abetting Breach of Fiduciary Duty

### (Against MGA, Larian and Does 4 through 10)

136. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 135, above, as though fully set forth at length.

137. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant held a position of trust and confidence at Mattel. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's

1   best interests, including but not limited to secretly developing and designing Bratz

2   while employed by Mattel and by secretly assisting Larian and MGA .

3         138.  At all times herein mentioned, MGA, Larian and Does 4 through

4   10 knew that the Mattel Employees (excluding Bryant) held positions of trust and

5   confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4

6   through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary

7   duty to Mattel not to take any action that would be contrary to Mattel's best

8   interests, including but not limited to taking confidential trade secret information

9   from Mattel's premises and providing that information to a competitor.

10        139.  Despite such knowledge, Counter-defendants MGA, Larian and

11  Does 4 through 10 intentionally and without justification solicited, encouraged,

12  aided and abetted and gave substantial assistance to the Mattel Employees to breach

13  their fiduciary duties to Mattel, knowing that their conduct would constitute

14  breaches of their fiduciary duties to Mattel.

15        140.  As a direct and proximate result of Counter-defendants' efforts,

16  the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has

17  incurred damages in an amount to be proven at trial.  Mattel, therefore, is entitled to

18  recover compensatory damages in an amount to be determined at trial.

19        141.  In taking the aforesaid actions, MGA, Larian and Does 4 through

20  10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

21  rights.  Accordingly, Mattel is entitled to recover exemplary damages from

22  Counter-defendants in an amount to be determined at trial.

23                       **Ninth Counterclaim**

24                   **Breach of Duty of Loyalty**

25                 **(Against Bryant and Machado)**

26        142.  Mattel repeats and realleges each and every allegation set forth in

27  paragraphs 1 through 141, above, as though fully set forth at length.

28

1      143. As employees of Mattel, Bryant and Machado owed a duty of

2  undivided loyalty to Mattel. Pursuant to this duty, Bryant and Machado could not

3  compete with Mattel or assist a competitor of Mattel during their employment with

4  Mattel. Pursuant to this duty, Bryant and Machado were required to always give

5  preference to Mattel's business over their own, similar interests during the course of

6  their employment with Mattel.

7      144. Bryant and Machado breached their duty of loyalty to Mattel in

8  that, while employed by Mattel, they secretly aided, assisted and worked for a

9  competitor of Mattel, including without limitation by entering into agreements with

10  a Mattel competitor. As alleged above, they also breached the aforementioned duty

11  by using Mattel property and resources for the benefit of, and to aid and assist,

12  themselves personally and the competitor of Mattel.

13      145. As a direct and proximate result of Counter-defendants' wrongful

14  conduct, Mattel has incurred damages in an amount to be determined at trial.

15      146. Counter-defendants acted with malice, fraud and oppression, and

16  in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an

17  award of punitive damages against Counter-defendants in an amount to be

18  determined at trial.

19      147. Furthermore, Counter-defendants' conduct has caused, and unless

20  enjoined will continue to cause, irreparable injury to Mattel that cannot be

21  adequately compensated by money damages and for which Mattel has no adequate

22  remedy at law. Accordingly, Mattel is entitled to an order restraining further

23  breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-

24  defendants from continuing to benefit from such breach.

25      148. In breaching their duty of loyalty to Mattel, Bryant and Machado

26  acted with malice, fraud and oppression, and in conscious disregard of Mattel's

27  rights. Accordingly, Mattel is entitled to recover exemplary damages from

28  Counter-defendants in an amount to be determined at trial.

-67-

EXHIBIT _15_  PAGE _330_

### Tenth Counterclaim

#### Aiding and Abetting Breach of Duty of Loyalty

#### (Against MGA, Larian and Does 4 through 10)

149. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 148, above, as though fully set forth at length.

150. MGA, Larian and Does 4 through 10 knew that Bryant, as an employee of Mattel, owed a duty of loyalty to his employer. MGA, Larian and Does 4 through 10 knew that this duty included an obligation on the part of Bryant not to compete with Mattel or assist a competitor of Mattel during the term of his employment with Mattel. MGA, Larian and Does 4 through 10 also knew that Bryant was required to give preference to Mattel's business over his own, similar interests or those of Mattel's competitors. or those of Mattel's competitors during the course of his employment with Mattel.

151. MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) were employed by Mattel, and, as employees of Mattel, that they owed duties of loyalty to Mattel. MGA, Larian and Does 4 through 10 knew that these duties included an obligation on the part of the Mattel Employees (excluding Bryant) not to compete with Mattel or assist a competitor of Mattel during their Mattel employment.

152. Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, encouraged, aided and abetted and gave substantial assistance to the Mattel Employees to breach their duties of loyalty to Mattel, knowing that their conduct would constitute breaches of their duties of loyalty to Mattel.

153. As a further consequence of Counter-defendants' efforts, Mattel has suffered injury and is entitled to compensatory damages in an amount to be proven at trial.

EXHIBIT __15__ PAGE __331__

154.  In taking the aforesaid actions, MGA, Larian and Does 4 through 10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

## Eleventh Counterclaim

### Conversion

### (Against All Counter-defendants)

155.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 154, above, as though fully set forth at length.

156.  Counter-defendants wrongfully converted Mattel property and resources by appropriating and using them for their own benefit and gain and for the benefit and gain of others, without the permission of Mattel.

157.  Mattel was entitled to, among other things, the exclusive right and enjoyment in property and tangible materials owned by Mattel, including without limitation such proper and materials that were created by Bryant while he was a Mattel product designer.  Such property was taken by Bryant from Mattel to further his own interests and, in at least some instances, provided by Bryant to Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

158.  In addition, Counter-defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices.  Counter-defendants did so without Mattel's permission and continue to possess them.

159.  As a direct and proximate result of Counter-defendants' wrongful conversion of Mattel property, including those relating to Bratz and Mattel's Trade Secret Materials, Mattel has incurred damages.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

160.  As a result of Counter-defendants' acts of conversion, Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss

AMENDED ANSWER AND COUNTERCLAIMS

07209/2035941.2

EXHIBIT _15__ PAGE _332_

1  suffered, which is not measured by the value of the property misappropriated, but

2  includes the lost profits that Mattel suffered as a result of the conversion or,

3  alternatively, the profits generated by the Counter-defendants that would not have

4  been generated but for the conversion.  Only such a measure of damages would

5  fully and fairly compensate Mattel for the injury it suffered due to Counter-

6  defendants' acts of conversion.

7        161.  Counter-defendants performed the aforementioned conduct with

8  malice, fraud and oppression, and in conscious disregard of Mattel's rights.

9  Accordingly, Mattel is entitled to recover exemplary damages from Counter-

10  defendants in an amount to be determined at trial.

11        162.  Furthermore, Counter-defendants' conduct has caused, and unless

12  enjoined will continue to cause, irreparable injury to Mattel that cannot be

13  adequately compensated by money damages and for which Mattel has no adequate

14  remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-

15  defendants from further conversion of Mattel property and resources and/or

16  restraining Counter-defendants from continuing to benefit from such conversion.

**Twelfth Counterclaim**

**Unfair Competition**

**(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

**(Against All Counter-defendants)**

21        163.  Mattel repeats and realleges each and every allegation set forth in

22  paragraphs 1 through 162, above, as though fully set forth at length.

23        164.  Section 17200 of the California Business and Professions Code

24  prohibits unfair competition, including "any unlawful, unfair or fraudulent business

25  act or practice . . . ."

26        165.  By engaging in the foregoing conduct, Counter-defendants have,

27  individually and in combination, engaged in unlawful, unfair and/or fraudulent acts

28  of unfair competition in violation of both the common law of the state of California

07209/2035941.2

-70-

1  and *Cal. Bus. & Prof. Code* § 17200 *et seq.*  Such conduct included, without

2  limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code*

3  § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a).

4  Such conduct also included, without limitation, MGA's and Larian's disparagement

5  of Mattel's products and misrepresentations as alleged above.

6        166.  As a result of the aforementioned conduct, Mattel has suffered

7  damages and will imminently suffer further damages, including but not limited to

8  lost profits in an amount to be proven at trial.  No adequate remedy at law exists for

9  the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel

10  is entitled to an injunction enjoining Counter-defendants' continued wrongful acts.

11  Mattel is also entitled to recover compensatory and exemplary damages pursuant to

12  the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

### Thirteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

16        167.  Mattel repeats and realleges each and every allegation set forth in

17  paragraphs 1 through 166, above, as though fully set forth at length.

18        168.  As shown in the foregoing paragraphs above, an actual

19  controversy exists between Mattel and Counter-defendants regarding Counter-

20  defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

21        169.  Accordingly, Mattel seeks a declaration of the Court that

22  Counter-defendants have no valid or protectable ownership rights or interests in

23  Bratz, and that Mattel is the true owner of the same, and further seeks an

24  accounting and imposition of a constructive trust over Bratz, including without

25  limitation registrations and applications for registrations relating thereto made or

26  filed by Counter-defendants and third parties, and over all revenues and other

27  monies or benefits derived or obtained from MGA's and Bryant's purported

28  ownership, use, sale, distribution and licensing of Bratz.

07209/2035941.2

-71-

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_  PAGE 334

170.  Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

**Prayer for Relief**

WHEREFORE, Mattel respectfully requests judgment:

1.    For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived, created or reduced to practice by Bryant during the term of his Mattel employment and/or by any others then-employed by Mattel, as well as in all derivatives prepared therefrom, and that Mattel is the true owner of the foregoing;

2.    For a declaration that any agreement between Bryant, on the one hand, and MGA or any person or entity, on the other hand, in which Bryant purported to assign any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect;

3.    For an Order enjoining and restraining Counter-defendants, their agents, servants and employees, and all persons in active concert or participation with them, from further wrongful conduct, including without limitation from imitating, copying, distributing, importing, displaying, preparing derivatives from and otherwise infringing Mattel's copyright-protected works;

4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other applicable law, impounding all of Counter-defendants' products and materials that infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles

-72-

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_ PAGE _335_

1  by which copies of the works embodied in Mattel's copyrights may be reproduced

2  or otherwise infringed;

3       5.   For an Order mandating that Counter-defendants return to Mattel

4  all tangible items, documents, designs, diagrams, sketches or any other

5  memorialization of inventions created or reduced to practice during Bryant's

6  employment with Mattel as well as all Mattel property converted by Counter-

7  defendants;

8       6.   For an Order mandating specific performance by Bryant to

9  comply with and satisfy Bryant's contractual obligations to Mattel;

10       7.   That Mattel be awarded, and Counter-defendants be ordered to

11  disgorge, all payments, revenues, profits, monies and royalties and any other

12  benefits derived or obtained as a result of the conduct alleged herein, including

13  without limitation of all revenues and profits attributable to Counter-defendants'

14  infringement of Mattel's copyrights under 17 U.S.C. § 504;

15       8.   For an accounting of all profits, monies and/or royalties from the

16  exercise of ownership, use, distribution, sales and licensing of Bratz;

17       9.   For the imposition of a constructive trust over Bratz, including

18  without limitation registrations and applications for registrations relating thereto

19  made or filed by Counter-defendants and third parties, and all profits, monies,

20  royalties and any other benefits derived or obtained from Counter-defendant's

21  exercise of ownership, use, sale, distribution and licensing of Bratz;

22       10.   That Mattel recover its actual damages and lost profits;

23       11.   That Counter-defendants be ordered to pay exemplary damages

24  in a sum sufficient to punish and to make an example of them, and deter them and

25  others from similar wrongdoing;

26       12.   That Counter-defendants be ordered to pay treble its general and

27  special damages, plus interest, costs and attorney's fees incurred by reason of

28  Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

07209/2035941.2

-73-

13. That Counter-defendants be ordered to pay double damages due to their willful and malicious misappropriation of Mattel's trade secrets with deliberate intent to injure Mattel's business and improve its own;

14. That Counter-defendants pay to Mattel the full cost of this action and Mattel's attorneys' and investigators' fees; and

15. That Mattel have such other and further relief as the Court may deem just and proper.

DATED: January 12, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _John Quinn (BM_____

John B. Quinn
Attorneys for Defendant and Counter-claimant Mattel, Inc.

-74-

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_ PAGE _337_

1

## DEMAND FOR JURY TRIAL

2

3        Mattel, Inc. respectfully requests a jury trial on all issues triable

4   thereby.

5

6   DATED:  January 12, 2007            QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
7

8                                       By  _John Quin / BA_____
                                            John B. Quinn
9                                           Attorneys for Defendant and Counter-
                                            claimant Mattel, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2035941.2

-75-

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __15__ PAGE __338__

Exhibit A

EXHIBIT _15_ PAGE _339_

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates, I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of this Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company: its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly with others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my right, title and interest in any patent, copyright, patent application or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time to do any proper way to obtain for it and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. This section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (1) relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist in any manner any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unreasonable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continued employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not adequately or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature _[signature]_        WITNESS: Signature _[signature: Teresa Newcomb]_

Employee Name (print) CARTER H. BRYANT        Name of Witness (print) TRESA Newcomb

Date 01/04/99

M 0001622

EXHIBIT A PAGE 76

EXHIBIT 75 PAGE 340

Exhibit B

EXHIBIT _15_ PAGE _341_

# CONFLICT OF INTEREST QUESTIONNAIRE

**BRYANT, CARTER H.    PROJECT DESIGNER**

Name (Last, First, M.I.)                                    Job Title                          Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

- O YES  ● NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

- O YES  ● NO   2. Have you owned, directly or indirectly, any interest in a Mattel competitor?

- O YES  ● NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

- ● YES  O NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

- ● YES  O NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

- O YES  ● NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

- O YES  ● NO   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

- O YES  ● NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

- O YES  ● NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

*If your answer to any of the above questions is "yes," please explain in the space below:*

4, 5,  Freelance design & artwork in 1998.
from appx. 5/98 - 11/98  for the Ashton Drake
galleries.

I certify that I have read Mattel's policies concerning Conflicts of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any change in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

Signature  _Carter H. Bryant_                                    Date  01/04/98

M 0001621

EXHIBIT  B  PAGE  77

EXHIBIT  15  PAGE  342

Exhibit C

EXHIBIT 15 PAGE 343

1
2                              **EXHIBIT C**
3    **CURRENTLY KNOWN PREDICATE ACTS BY DEFENDANTS RE MAIL
                 AND WIRE COMMUNICATIONS**
4

| Date | Type of Communication | Bates Reference (if applicable) |
|------|----------------------|-------------------------------|
| 4/15/2001 | Email from Isaac Larian (MGA) Aldo Horvat (GIG ITALY) | MGA000746 |
| 3/28/2001 | Email from Stephen Lee (MGA Hong Kong) to Earlylight (vendor) | MGA000747 |
| 4/15/2001 | Email from Isaac Larian Stephen Lee and Stanley Li | MGA000748-750 |
| 4/11/2001 | Email from Isaac Larian to Stephen Lee | MGA000766-767 |
| 4/10/2001 | Email from Isaac Larian to Pedro Feist (Concentra) | MGA001027-29 |
| 4/5/2001 | Email from Dave Malacrida (MGA) to Gary Cogland | MGA001030-32 |
| 4/3/2001 | Email from Isaac Larian to John Young | MGA001040-44 |
| 1/9/2000 | Email from Martin Hitch (MGA Hong Kong) to Pedro Feist | MGA001061-64 |
| 4/2/2001 | Email from Isaac Larian to Ron Stover | MGA001099-1100 |
| On or about 4/3/2001 | Fed Ex shipment from Isaac Larian to Ron Stover | MGA001099-1100 |
| 4/2/2001 | Email from Isaac Larian to Craig Cunningham (Eckerd Drugs) | MGA001105 |
| 3/28/2001 | Email from Isaac Larian to Stephen Lee | MGA001113-14 |
| On or about 3/28/2001 | Letter from Isaac Larian sent to Ron Stover | MGA001116-17 |
| 4/18/2001 | Email from Victoria O'Connor (MGA) to Avi Kreisel (Kreisel Dist.) | MGA001208-09 |
| 4/17/2001 | Email from Isaac Larian to Stephen Lee and Stanley Li | MGA001213-14 |
| On or about 4/18/2001 | Shipment from Stephen Lee to Isaac Larian | MGA001219-20 |
| 4/4/2001 | Email from Isaac Larian to John Young | MGA001278-82 |
| 3/10/2001 | Email from Isaac Larian to John Young | MGA001289-90 |
| 6/12/2003 | Facsimile transmission from MGA Entertainment to Jessie Ramirez | MGA001310 |
| 10/4/2000 | Email from David Rosenbaum (attorney for MGA) to Anne Wang (attorney for Carter Bryant) | MGA001320-29 |

EXHIBIT  C  PAGE 78

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT  15  PAGE  344

| | | | |
|---|---|---|---|
| 1 | 10/26/2000 | Email from Mercedeh Ward (MGA) to Samuel Wong, Cecilia Kwok and Franki Tsang (MGA Hong Kong) | MGA000012-13 |
| 2 3 | 10/25/2000 | Email from Mercedeh Ward Samuel Wong, Cecilia Kwok and Franki Tsang | MGA000015-17 |
| 4 | 10/30/2000 | Email from Mercedeh Ward to Cecilia Kwok and Paula Treantafelles | MGA000019-21 |
| 5 6 | 11/3/2000 | Email from Mercedeh Ward to Victor Lee and Paula Treantafelles | MGA000043-45 |
| 6 | 11/4/2000 | Email from Isaac Larian to Carter Bryant and Paula Treantafelles | MGA000046-47 |
| 7 | 11/11/2000 | Email from Judy Rich to Cecilia Kwok and Mercedeh Ward | MGA000049 |
| 8 9 | 11/15/2000 | Emails between Paula Treantafelles and Samuel Wong and Franki Tsang | MGA000071-74 |
| 10 | 12/8/2000 | Email from Mercedeh Ward to Cecilia Kwok and Samuel Wong | MGA000077-81 |
| 11 | On or about 12/23/2000 | Package sent from MGA Hong Kong to MGA Los Angeles per instructions from MGA Los Angeles | MGA000089-90 |
| 12 13 | 12/15/2000 | Email from Paula Treantafelles to Samuel Wong and Mercedeh Ward | MGA000091-92 |
| 14 | 12/16/2000 | Email from Mercedeh Ward to Samuel Wong | MGA000097-104 |
| 15 | 12/16/2000 | Email from Isaac Larian to Franki Tsang | MGA000109-112 |
| 16 | On or about 12/16/2000 | Package of fabric swatches sent from MGA Los Angeles to MGA Hong Kong | MGA000113-122 |
| 17 18 | On or about 12/20/2000 | Package of samples sent from MGA Los Angeles to MGA Hong Kong | MGA000124-125 |
| 19 | 12/20/2000 | Email from Mercedeh Ward to Cecilia Kwok | MGA000124-125 |
| 20 | 12/12/2000 | Fed Ex shipment from MGA Los Angeles to Cecilia Kwok | MGA000131-132 |
| 21 | 12/19/2000 | Email from Mercedeh Ward to Cecilia Kwok and Wendy Reed | MGA000131-132 |
| 22 | 12/20/2000 | Email from Paula Treantafelles to Jimmy Cheng, Samuel Wong, Cecilia Kwok | MGA000140-141 |
| 23 | 12/10/2000 | Email from Mercedeh Ward to Sarah Halpern | MGA000147-149 |
| 24 | 12/22/2000 | Email from Mercedeh Ward to Samuel Wong and Judy Rich | MGA000190 |
| 25 | 12/22/2000 | Email from Paula Treantafelles to Samuel Wong, Judy Rich and Mercedeh Ward | MGA000197-199 |
| 26 | 12/29/2000 | Email from Mercedeh Ward to Samuel Wong and Cecilia Kwok | MGA000211 |
| 27 | 12/16/2000 | Email from Isaac Larian to Franki Tsang | MGA000212-217 |
| 28 | | | |

EXHIBIT __C__ PAGE __79__

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __15__ PAGE __345__

07209/2035941 2

| | | | |
|---|---|---|---|
| 1 | 12/27/2000 | Email from Paula Treantafelles to Franki Tsang et al. | MGA000212-217 |
| 2 | 12/26/2000 | Email from Paula Treantafelles to Carter Bryant | MGA000219 |
| 3 | 12/27/2000 | Email from Mercedeh Ward to Samuel Wong | MGA000234-236 |
| 4 | 12/27/2000 | Email from Mercedeh Ward to Cecilia Kwok | MGA000249-250 |
| 5 | 12/27/2000 | Email from Paula Treantafelles to Cecilia Kwok and Mercedeh Ward | MGA000253 |
| 6 | 12/27/2000 | Email from Paula Treantafelles to Samuel Wong | MGA000254, 256 |
| 7 | 12/29/2000 | Email from Mercedeh Ward to Samuel Wong | MGA000322 |
| 8 | 12/29/2000 | Email from Paula Treantafelles to Carter Bryant and Mercedeh Ward | MGA000333 |
| 9 | | | |
| 10 | 1/16/2001 | Email from Paula Treantafelles to Samuel Wong et al. | MGA000366-368 |
| 11 | 1/17/2001 | Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000369-370 |
| 12 | 1/18/2001 | Email from Paula Treantafelles to Cecilia Kwok, Judy Rich and Carter Bryant | MGA000371-378 |
| 13 | 1/18/2001 | Email from Paula Treantafelles to Carter Bryant, Cecilia Kwok and Samuel Wong | MGA000379-381 |
| 14 | | | |
| 15 | 2/27/2001 | Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000406-414 |
| 16 | 9/27/2000 | Email from Paula Treantafelles to Franki Tsang and Judy Rich | MGA000422 |
| 17 | 10/5/2000 | Email from Isaac Larian to Carter Bryant | MGA000423 |
| 18 | 10/18/2000 | Email from Mercedeh Ward to Franki Tsang and Victor Lee | MGA000425-426 |
| 19 | 12/27/2000 | Email from Mercedeh Ward to Cecilia Kwok and Paula Treantafelles | MGA000482 |
| 20 | 12/22/2000 | Email from Isaac Larian to Franki Tsang, Mercedeh Ward and Paula Treantafelles | MGA000524-528 |
| 21 | | | |
| 22 | 12/20/2000 | Email from Mercedeh Ward to Samuel Wong and Cecilia Kwok | MGA000530-531 |
| 23 | 10/26/2000 | Email from Paula Treantafelles to Cecilia Kwok, Isaac Larian, and Carter Bryant | MGA000539-541 |
| 24 | 11/2/2000 | Email from Paula Treantafelles to Cecilia Kwok | MGA000539-541 |
| 25 | 11/2/2000 | Email from Paula Treantafelles to Cecilia Kwok and Isaac Larian | MGA000539-541 |
| 26 | 2/27/2001 | Email from Paula Treantafelles to Cecilia Kwok, Samuel Wong, and Judy Rich | MGA000545 |
| 27 | | | |
| 28 | 2/27/2001 | Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000546-547 |

EXHIBIT C PAGE 80

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 15 PAGE 344

| | | |
|---|---|---|
| 2/26/2001 | Email from Paula Treantafelles to Samuel Wong, Cecilia Kwok, and Carter Bryant | MGA000548 |
| 2/26/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000549 |
| 2/26/2001 | Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000550 |
| 2/24/2001 | Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000551 |
| 2/23/2001 | Email from Paula Treantafelles to Cecilia Kwok and Samuel Wong | MGA000554 |
| 2/21/2001 | Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000556-557 |
| 2/23/2001 | Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000558 |
| 2/23/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000560 |
| 2/21/2001 | Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000561 |
| On or about 2/20/2001 | Fed Ex shipment from Carter Bryant to Cecilia Kwok | MGA000566 |
| 2/20/2001 | Email from Paula Treantafelles to Cecilia Kwok | MGA000566 |
| 2/19/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000568 |
| 2/19/2001 | Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000569-570 |
| 2/17/2001 | Email from Paula Treantafelles to Cecilia Kwok and Carter Bryant | MGA000571-572 |
| 2/16/2001 | Emails from Paula Treantafelles to Cecilia Kwok | MGA000573, 574, 576, 582, 589-90 |
| 2/16/2001 | Emails from Paula Treantafelles to Carter Bryant | MGA000575, 579, 588 |
| 2/12/2001 | Email from Lon Ross (MGA) to Carter Bryant et al. | MGA000583-587 |
| 2/5/2001 | Email from Paula Treantafelles to Carter Bryant, Cecilia Kwok et al. | MGA000599 |
| 2/5/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000600 |
| 2/5/2001 | Email from Paula Treantafelles to Carter Bryant and Cecilia Kwok | MGA000602 |
| 2/3/2001 | Email from Paula Treantafelles to Cecilia Kwok and Judy Rich | MGA000603-05 |
| 2/2/2001 | Email from Paula Treantafelles to Carter Bryant and Cecilia Kwok | MGA000606 |

EXHIBIT ___C___ PAGE _81_

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _15_ PAGE _347_

07209/2035941.2

| | | |
|---|---|---|
| 1/31/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000608 |
| 1/30/2001 | Email from Paula Treantafelles to Carter Bryant and Judy Rich | MGA000609 |
| On or about 1/30/2001 | Shipment from MGA Los Angeles to Carter Bryant | MGA000609 |
| 1/26/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000610 |
| 1/24/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000611 |
| 1/22/2001 | Email from Paula Treantafelles to Carter Bryant and Samuel Wong | MGA000612 |
| 1/22/2001 | Email from Paula Treantafelles to Carter Bryant and Cecilia Kwok | MGA000613 |
| 3/28/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000617 |
| 3/11/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000618 |
| 3/11/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000620 |
| 3/6/2001 | Email from Paula Treantafelles to Carter Bryant and Cecilia Kwok | MGA000621-622 |
| 3/6/2001 | Email from Paula Treantafelles to Cecilia Kwok and Samuel Wong | MGA000625-626 |
| 3/5/2001 | Email from Paula Treantafelles to Carter Bryant and Cecilia Kwok | MGA000625-626 |
| 3/3/2001 | Email from Paula Treantafelles to Cecilia Kwok | MGA000634 |
| On or about 3/2/2001 | Fed Ex shipment from MGA Los Angeles to MGA Hong Kong | MGA000634 |
| 4/10/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000635 |
| 4/7/2001 | Email from Paula Treantafelles to Cecilia Kwok | MGA000635 |
| 4/30/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000654 |
| 5/14/2001 | Email from Paula Treantafelles to Carter Bryant and Cecilia Kwok | MGA000655 |
| 5/11/2001 | Email from Paula Treantafelles to Carter Bryant | MGA000656-664 |
| 5/9/2001 | Email from Paula Treantafelles to Cecilia Kwok and Samuel Wong | MGA000666 |
| 10/20/2000 | Email from Kerri Legg (MGA) to Steve Linker and Liz Hogan | MGA0008032 |
| | Letter from Mattel de Mexico employee to Thomas Park and Isaac Larian (MGA) | |
| 3/30/2004 | Letter to Carlos Gustavo Machado Gomez from Isaac Larian | |
| 3/30/2004 | Letter to Mariana Trueba Almada from Isaac Larian | |

EXHIBIT __C__ PAGE __82__

-82-

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __15__ PAGE __348__

| | | |
|---|---|---|
| 1 | 3/30/2004 | Letter to Pablo Vargas San Jose from Isaac Larian |
| 2 | | Email from Pablo Vargas San Jose to Mattel de Mexico |
| 3 | | |
| 4 | 4/15/2004 | Email from Karla Papayanopulos Carvajal to Mariana Trueba Almada |
| 5 | 1/25/2004 | Email from Mariana Trueba Almada to Carlos Gustavo Machado Gomez |
| 6 | | |
| 7 | 4/15/2004 | Email from Therese Wilbur to Carlos Gustavo Machado Gomez |
| 8 | 4/15/2004 | Email from Mariana Trueba Almada to Carlos Gustavo Machado Gomez attaching confidential documents |
| 9 | | |
| 10 | 3/15/2004 | Email from Susana Kuemmerle to "plot04@aol.com" |
| 11 | | |
| 12 | 3/16/2004 | Email from Susana Kuemmerle to "plot04@aol.com" |
| 13 | 3/22/2004 | Email from "plot04@aol.com" to Isaac Larian copying Susana Kuemmerle and Thomas Park |
| 14 | | |
| 15 | 3/22/2004 | Email from Isaac Larian to "plot04@aol.com" copying Susana Kuemmerle and Thomas Park |
| 16 | 3/23/2004 | Email from Marlene Parker (MGA) to Isaac Larian and "plot04@aol.com" |
| 17 | | |
| 18 | 3/30/2004 | Email from Thomas Park to "plot04@aol.com" copying Isaac Larian |
| 19 | 4/2/2004 | Email from Maria de Carmen Mendez to Isaac Larian, Thomas Park, and Susana Kuemmerle |
| 20 | | |
| 21 | 4/4/2004 | Email from Maria de Carmen Mendez to Susana Kuemmerle |
| 22 | 4/7/2004 | Email from Maria de Carmen Mendez to Thomas Park |
| 23 | | |
| 24 | 4/12/2004 | Email from Thomas Park to "plot04@aol.com" |
| 25 | 4/14/2004 | Email from "plot04@aol.com" to Isaac Larian and Thomas Park |
| 26 | 4/14/2004 | Email from Isaac Larian to "plot04@aol.com", Thomas Park and Daphne Gronich |
| 27 | | |
| 28 | | |

07209/2035941.2

EXHIBIT C PAGE 83

AMENDED ANSWER AND COUNTERCLAIMS
EXHIBIT 15 PAGE 349

| 1 | 4/14/2004 | Email from "plot04@aol.com" to Thomas Park copying Isaac Larian and Susana Kuemmerle |
| 2 | | |
| | 4/14/2004 | Email from Susana Kuemmerle to Isaac Larian and Thomas Park copying "plot04@aol.com" |
| 3 | | |
| 4 | 4/15/2004 | Email from Jean Paul Farah to "plot04@aol.com" copying Daphne Gronich |
| 5 | | |
| | 4/15/2004 | Email from "plot04@aol.com" to Thomas Park copying Jean Paul Farah and Isaac Larian |
| 6 | | |
| 7 | 4/12/2004 | Email from Susana Kuemmerle to "plot04@aol.com" |
| 8 | | |
| | 4/15/2004 | Email from "plot04@aol.com" to Jean Paul Farah copying Daphne Gronich and Isaac Larian |
| 9 | | |
| 10 | 4/15/2004 | Email from Mariana Trueba Almada to Andrea Ramirez |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT __C__ PAGE __84__

AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __15__ PAGE __350__

07209/2035941.2

1

### PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is Now Legal Service,
3      1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4      On January 12, 2007, I served true copies of the following document(s) described as
**MATTEL, INC.'S AMENDED ANSWER IN CASE NO. 05-2727, AND COUNTERCLAIMS**
5      on the parties in this action as follows:

6      Diana M. Torres, Esq.                     Keith Jacoby, Esq.
       **O'MELVENY & MYERS, LLP**                **LITTLER MENDELSON**
7      400 S. Hope Street                        2049 Century Park East, 5th Floor
       Los Angeles, CA 90071                     Los Angeles, CA 90067

8
**BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s)
9      being served.

10     I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.

11
       Executed on January 12, 2007, at Los Angeles, California.

12

13

14     NOW LEGAL -- Dave Quintana

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2035966.1

EXHIBIT 15   PAGE 351

# EXHIBIT 16

## O

## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
CENTURY CITY
HONG KONG
LONDON
NEWPORT BEACH

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407
www.omm.com

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

August 29, 2007

OUR FILE NUMBER
527436-04

### VIA FACSIMILE AND ELECTRONIC MAIL

WRITER'S DIRECT DIAL
(213) 430-7631

WRITER'S E-MAIL ADDRESS
jglad@omm.com

Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street - 10th Floor
Los Angeles, California 90017

Re:    *Mattel, Inc. v Carter Bryant and Consolidated Cases*

Dear Dylan:

This letter is to memorialize discussions during our meet and confer of August 28, 2007, regarding Mattel's contemplated motion to strike MGA Entertainment, Inc.'s affirmative defenses to Mattel's Second Amended Answer and Counterclaims, and MGA's contemplated motion to dismiss Mattel's affirmative defenses to MGA's affirmative Complaint. Marc Feinstein and I met in person with Juan Pablo Alban and you in your office.

You acknowledged that Mattel, like MGA, had pled certain defenses as affirmative defenses even though the defense as a technical legal matter might be a defense to an underlying element of the plaintiff's claim rather than an affirmative defense. For example, Mattel acknowledged that its Second Affirmative Defense that MGA has no valid, enforceable or protectible rights or interests in its trade dress was not legally supportable at this time, and might be defenses to an underlying claim rather than an affirmative defense. Similarly, Mattel stated that its Fifth Affirmative Defense that MGA's claims are barred "by virtue of Mattel's prior-creation of the elements and other matters asserted in the Complaint" may not necessarily be an affirmative defense but rather a defense to a particular claim, and that Mattel was asserting the defense so as to preserve its rights to assert the defense. Mattel further conceded that its Fifth Affirmative Defense may not be sufficient on its face, but claimed that there may be elaboration elsewhere in Mattel's Answer so as to make the defense sufficient. You said that where MGA had pled as an affirmative defense a defense that was either an affirmative defense or a defense to an underlying element of Mattel's claims, Mattel did not object to the affirmative defense as legally insufficient.

However, you asserted that even if a matter pled as an affirmative defense is already encompassed by issues raised in the action (such as innocent intent), the affirmative defense should be stricken if the matter is technically neither an affirmative defense or a defense to an

EXHIBIT __16__ PAGE __352__

O'MELVENY & MYERS LLP
Dylan Proctor, Esq., August 29, 2007 - Page 2

underlying element of Mattel's claims. You did not point to any prejudice to Mattel resulting from the pleading of such a matter. Although we did not discuss this in the meeting, we believe that the proper time to address such a matter is at the time of entry of the pre-trial conference order, which as you should know sets forth the issues to be tried and replaces the pleadings. It would be an undue imposition on the Court, as well as MGA, for Mattel to move to strike an affirmative defense, the pleading of which does not expand the scope of the case and causes no prejudice to Mattel. *See Smith v. Wal-Mart Stores*, 2006 WL 2711468, *4 (N.D. Cal. Sept. 20, 2006) ("motions to strike are rarely granted in the absence of a showing of prejudice to the moving party.").

You took the position that pleading the legal ground for an affirmative defense is not sufficient to provide fair notice and that unless a factual basis is stated for a defense, the defense should be stricken. We disagreed with that position, which we believe is extreme, and noted that under the notice pleading standard it was generally sufficient to state the legal basis for the defense. You agreed that the purpose of this meet and confer was not for the parties to provide discovery regarding the factual basis for their affirmative defenses, but to discuss whether those defenses as pled were valid. We repeatedly asked you to provide the factual basis for Mattel's affirmative defenses, but you refused with the exception that in a few instances you referred us to other documents. Indeed, you stated that you would not provide the factual basis for Mattel's Second, Fifth, Sixth, Seventh, Eighth, and 11th Affirmative Defenses because MGA is not entitled to "free discovery."

You repeated your position that the time for MGA to challenge Mattel's affirmative defenses was governed exclusively by the 20-day requirement in Rule 12(f) and that MGA was now absolutely barred from seeking to challenge Mattel's affirmative defenses. However, we directed you to a party's right under Rule 12(h) to bring a motion for judgment on the pleadings at any time to challenge an invalid defense. We also cited several case authorities that support that position. I trust that it is now clear to you that for the same good reason that a party can move for judgment on the pleadings at any time with respect to a complaint that fails to state a claim, a party can move for judgment on the pleadings at any time with respect to an invalid affirmative defense.

## I.   Mattel's Contemplated Motion to Strike MGA's Affirmative Defenses to Mattel's Second Amended Answer and Counterclaims

During the meet and confer, you claimed that certain of MGA's affirmative defenses were either insufficient as a matter of law, or that MGA had not provided fair notice of the basis for certain of its affirmative defenses. In particular, you claimed that MGA's 16th Affirmative Defense of Innocent Intent was legally insufficient because intent is not an element of a claim for copyright infringement. As we explained during the meet and confer, however, the issue of intent is raised as an affirmative defense to preserve the defense. Whether innocent intent should technically be raised as an affirmative defense, it is relevant to Mattel's claims for intentional wrongdoing, including Mattel's claims for intentional interference, criminal copyright infringement under RICO, as well as Mattel's claims for punitive damages, among other claims.

EXHIBIT _16_   PAGE _353_

O'MELVENY & MYERS LLP
Dylan Proctor, Esq., August 29, 2007 - Page 3

Similarly, you took the position that MGA's Sixth Affirmative Defense of Good Faith was legally insufficient and failed to provide Mattel with notice of the basis for the defense. Specifically, you claimed that Good Faith was not an affirmative defense to any of the claims asserted in MGA's counterclaims. However, as we mentioned, the defense of Good Faith is potentially relevant to many of Mattel's counterclaims and MGA is entitled to assert the defense in order to preserve its rights. For example, this defense includes 17 U.S.C. § 205(d), which allows a good faith acquirer of a copyright to assert its interests in a copyright over another. Additionally, the Good Faith defense encompasses MGA's defense that it was a *bona fide* purchaser for value of the drawings in which Mattel claims ownership in this litigation. Notably, when the issue of MGA's defense of Good Faith was again raised toward the end of the meet and confer, you stated that Mattel was not taking a position at this time as to whether MGA's affirmative defense of Good Faith was a valid affirmative defense to any of Mattel's counterclaims.

You also claimed that MGA's Ninth Affirmative Defense of *Res Judicata* was legally insufficient because Mattel's litigation with Ron Brawer was dismissed without prejudice and in your view no other basis for a defense of *res judicata* exists. You further argued that it is not permissible to assert an affirmative defense if at the time the defense is asserted there are no specific facts identified or known to support assertion of the affirmative defense. However, the authority provided by you during the meet and confer contradicts that argument. In *Smith*, 2006 WL 2711468, * 12, the court denied the plaintiff's motion to strike the defendant's affirmative defense that the claims were barred by the statute of limitations, even though the defendant could not state any facts that supported the defense of statute of limitations at the time. In so holding, the court accepted the defendant's argument that "[o]nly through discovery can Defendant determine if a plaintiff's claims are time barred." *Id.* Thus, Mattel's argument is unpersuasive.

You next claimed that MGA's Second Affirmative Defense of Lack of Standing was legally insufficient because MGA had already moved to dismiss Mattel's Counterclaims for lack of standing. As explained during the meet and confer, however, MGA's defense preserves its right to raise the defense of lack of standing in the future, particularly in light of ongoing discovery. Moreover, MGA's pleading is sufficient to place Mattel on notice of its affirmative defense.

You further claimed that MGA's 10th, 11th, 13th, 17th, 18th and 19th Affirmative Defenses for Estoppel, Acquiescence, Invalid Copyright, Waiver, Abandonment and *De Minimus* Use, respectively, are legally insufficient or fail to provide Mattel notice of the bases for MGA's defenses. As explained by us during the meet and confer, however, each of MGA's affirmative defenses is necessary to preserve MGA's right to assert the affirmative defense and, in any event, is relevant to Mattel's counterclaims in this litigation. We pointed out that the *de minimus* defense may be asserted to defeat a claim that MGA's Bratz dolls were copies of works claimed by Mattel.

You also claimed that MGA's 20th Affirmative Defense for Joint Authorship was legally insufficient. However, the issue of whether MGA contributed to the authorship of the Bratz

EXHIBIT *16* PAGE 354

O'MELVENY & MYERS LLP

Dylan Proctor, Esq., August 29, 2007 – Page 4

works is relevant to Mattel's claim for copyright infringement, regardless of whether it constitutes an affirmative defense or merely a defense to one of the elements of Mattel's claims. MGA has preserved its right to assert Joint Authorship as an affirmative defense in this litigation and Mattel is on notice of the defense.

Finally, you claimed that MGA's Third and Fourth Affirmative Defenses of Unclean Hands and Laches fail to provide sufficient notice of the bases for the defenses. You conceded, however, that MGA had provided additional facts supporting its affirmative defense of Unclean Hands, and that Mattel did have sufficient notice of the basis for MGA's affirmative defense of Laches as to some of Mattel's counterclaims. Additionally, as explained during the meet and confer, there have been many discussions as to MGA's affirmative defense of laches as well as pleadings filed related to the same. Thus, we believe that Mattel is on fair notice as to the basis for MGA's defense of laches and unclean hands.

As mentioned, you stated that Mattel did not object to MGA pleading what Mattel acknowledged are legally cognizable affirmative defenses, as well as defenses that go towards a particular element of Mattel's claims, so as to allow MGA to preserve its rights to assert the defenses in the future.

## II.   MGA's Contemplated Motion to Dismiss Mattel's Affirmative Defenses to MGA's Affirmative Complaint

Following the parties' discussion of MGA's affirmative defenses to Mattel's counterclaims, the parties discussed MGA's contemplated motion to dismiss Mattel's affirmative defenses to MGA's claims. You had refused to discuss Mattel's affirmative defenses in tandem with our discussion of the same affirmative defenses asserted by MGA. Before you would answer any questions on Mattel's affirmative defenses, you repeated your position that MGA had no right to challenge such defenses after the 20-day period specified by Rule 12(f) lapsed. As explained during the meet and confer, however, a party can move for judgment on the pleadings at any time with respect to an invalid affirmative defense. *See Raleigh v. Mid American National Bank & Trust Co.,* 131 B.R. 979, 981-82 (N.D. Ill. 1991) ("While Rule 12(f) provides that a motion to strike must be made within twenty days, it gives unrestricted authority to the district court to strike insufficient defenses. A court has authority to consider a plaintiff's motion even though it was not made within the time limits established by Rule 12(f)."); *Go-Tane Service Stations, Inc. v. Ashland Oil, Inc.,* 508 F. Supp. 200, 202 n.2 (N.D. Ill. 1981) (explaining that the district court has authority to consider plaintiff's motion to strike the defendant's affirmative defense even though it was not made within the time limits established under Rule 12(f)); *Lunsford v. United States,* 570 F.2d 221, 227 n.11 (8th Cir. 1977) (same); *United States v. 416.81 Acres of Land,* 514 F.2d 627, 630 n.3 (7th Cir. 1975) (same); *Graham v. Brown,* 1994 WL 456631 (M.D. Fla. Aug. 18, 1994) (considering a motion to strike a affirmative defenses even though the motion was filed more than twenty days after the Answer and affirmative defenses were filed).

After we presented you with the authorities allowing motions for judgment on the pleadings as to invalid affirmative defenses, we questioned you as to the legal and factual bases

EXHIBIT __16__ PAGE __355__

O'MELVENY & MYERS LLP
Dylan Proctor, Esq., August 29, 2007 - Page 5

for Mattel's own affirmative defenses, many of which are substantively identical to those asserted by MGA. You claimed that all of Mattel's affirmative defenses were legally sufficient, and that Mattel had articulated some of the bases for its affirmative defenses in its Answer and unidentified other filings. In particular, you claimed that Mattel's Second, Fourth, Sixth, Seventh, Eighth, 10th, 11th, 12th, and 13th Affirmative Defenses were sufficiently stated and refused to provide additional factual bases for the defenses, stating that MGA was not entitled to "free discovery." As mentioned above, you also claimed that Mattel's Fifth Affirmative Defense was either an affirmative defense or was relevant to one of MGA's claims, and thus Mattel was pleading it so as to preserve its right to assert the defense. You further acknowledged that on its face this defense did not provide fair notice of the basis for the defense, but stated that elaboration on this defense is likely provided in Mattel's Answer.

You also claimed that Mattel's Ninth Affirmative Defense that MGA's claims are barred by Mattel's rights of free speech, petitioning and association is legally sufficient and provides notice as to the basis for the defense. You also claimed that this affirmative defense "probably" goes towards portions of each of the claims asserted by MGA and that Mattel was reserving the right to have the defense apply to all of the claims asserted by MGA. You further claimed that you had pleaded this defense as an affirmative defense in the event it is an affirmative defense to any of MGA's claims.

Finally, the parties agreed that they would review the authorities provided during the meet and confer and get back to each other on Thursday regarding whether any compromise is possible. As we mentioned during the meet and confer, however, we believe that the motion contemplated by Mattel to strike various of MGA's affirmative defenses is without basis and would serve no useful purpose. As such, any such motion would subject Mattel to sanctions. I look forward to hearing from you on Thursday.

Very truly yours,

Jennifer Glad
for O'MELVENY & MYERS LLP

EXHIBIT __16__ PAGE __356__

EXHIBIT 17



RECEIVED

FEB 2 3 2007

CALENDARED

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA. - Eastern Division
CIVIL MINUTES - GENERAL

Case No.   CV 04-09059 SGL(RNBx)                    Date:   February 12, 2007
Title:     MATTEL, INC. -v- CARTER BRYANT, DOES 1-10, INCLUSIVE
           **Consolidated Action**
           CV 05-02727 SGL(RNBx)    MGA ENTERTAINMENT v. MATTEL, INC.,
===================================================================================
PRESIDING:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                               Theresa Lanza
Courtroom Deputy Clerk                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn and Michael Zeller for     Diana M. Torres for MGA
Mattel                                   Keith A. Jacoby for Carter Bryant

PROCEEDINGS:    SCHEDULING CONFERENCE PURSUANT TO FRCP 16(b)

     The Court convened a scheduling conference pursuant to FRCP 16(b).  Court and counsel
discussed case management and thereafter the court set the following schedule:  See attachment
"Schedule of Trial and Pretrial Dates."

     Counsel stipulated pursuant to Local Rule 16-14, to settlement procedure #3, to a retired judicial
officer or other private or non-profit dispute resolution body for mediation type settlement proceedings.
The Court approves the request and refers this case to an outside Mediator to act as the Settlement
Officer.  Counsel are directed to contact such outside Mediator to schedule a settlement conference as
soon as the parties believe such a conference would be fruitful.  The cut-off to complete the mandatory
settlement procedures under Local Rule 16-14, is December 3, 2007, in Case No. CV 04-09059-SGL
(RNBx) Mattel, Inc. v. Carter Bryant, and the cut-off to complete the mandatory settlement procedures
under Local rule 16-14, is April 21, 2008, in Case No. CV 05-02727 SGL (RNBx) MGA Entertainment v.
Mattel, Inc.

     The Court further ordered that in both Case No. CV 04-09049-SGL (RNBx), Mattel, Inc. v. Carter
Bryant, and Case No. CV 05-02727 SGL (RNBx), MGA Entertainment v. Mattel, Inc.:

     1.     Non-Expert Depositions are limited to a total of 24 for each side for both cases.
     2.     Expert Depositions are limited to a total of 20 for each side for both cases.
     3.     Interrogatories are limited to 50 for each side for both cases.

     IT IS SO ORDERED.

MINUTES FORM 90                                                      Initials of Deputy Clerk: jh
CIVIL – GEN              Page 1        FEB 2 2 2007                  00/30

(48) 2-22

EXHIBIT _17_ PAGE _357_

  

## SCHEDULE OF TRIAL AND PRETRIAL DATES

**CASE NAME:**   MGA ENTERTAINMENT, INC. V. MATTEL, INC., et al.,

**CASE NO:**   CV 05-2727-SGL (RNBx)

| Matter | Time | Court Order |
|---|---|---|
| Jury Trial Date | 9:30 am | 07/01/08 |
| Estimated Length of Trial | | |
| [Hearing on Motions in Limine;<br>Hearing on Disputed Jury Instructions | 10:00 am | 06/23/08 |
| Final Pretrial Conference, LR 16-7<br>Motions in Limine to be filed | 11:00 am | 06/02/08 |
| Lodge Pretrial Conference Order, LR 16-6 to 16-6.2;<br>File Contentions of Fact and Law, LR16-2.8;<br>Exhibit & Witness Lists, LR 16-4 to 16-5;<br>File Status Report regarding Settlement;<br>File Rule 26(e)(1) Supplementation<br>File Agreed Upon Set of Jury Instructions and Verdict Forms LR 49-1 to 49-2, 51-1 to 51-5.1;<br>File Joint Statement regarding Disputed Instructions, Verdicts, etc. | | 05/19/08 |
| Last date to conduct Settlement Conference | | 04/21/08 |
| Last date for hearing motions, LR 7.2, et seq. | 10:00 am | 04/07/08 |
| Discovery cut-off | | 03/03/08 |
| Last date to Amend Pleadings or Add Parties | | Closed |

### ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

LR 16-14.4 Settlement Selection:      ☐ 1. CT/USMJ            ☑ 3. Outside ADR
to be discussed

☐ 2. Attorney Settlement Panel      ☐

DOE Dismissal:            Complaint Filed: 04/13/05      SET DATE
            Dismissal Date:            to be discussed

S:\SGL\CIVIL ORDERS\MGA 05-2727 MO 2-12-07.wpd

EXHIBIT __17__ PAGE 358

# EXHIBIT 18

COPY

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 90378)
   Michael T. Zeller (Bar No. 196417)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 27 2004

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
   SUE GABB

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

MATTEL, INC., a Delaware corporation,

                    Plaintiff,

          v.

CARTER BRYANT, an individual; and
DOES 1 through 10, inclusive,

                    Defendants.

CASE NO.        BC314398

COMPLAINT FOR:

(1)  BREACH OF CONTRACT;
(2)  BREACH OF FIDUCIARY DUTY;
(3)  BREACH OF DUTY OF LOYALTY;
(4)  UNJUST ENRICHMENT; AND
(5)  CONVERSION

07209/579342.1

COMPLAINT

EXHIBIT  18   PAGE  359

Plaintiff Mattel, Inc. ("Mattel") brings this action against defendants Carter Bryant ("Bryant") and Does 1 through 10 (all defendants being collectively referred to as "defendants") and alleges as follows:

<u>Parties</u>

1.      Mattel is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in El Segundo, California.

2.      Mattel is informed and believes, and on that basis alleges, that defendant Bryant is an individual currently residing in Springfield, Missouri.

3.      The true names and capacities of defendants sued herein as Does 1 through 10, inclusive, are unknown to Mattel, which therefore sues said defendants by such fictitious names.  Mattel will amend this Complaint to allege their true names and capacities when the same are ascertained.

4.      Mattel is informed and believes, and on that basis alleges, that at all times relevant herein, defendants, and each of them, were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were the agents of each other, and in doing the things alleged herein, each defendant was acting within the course and scope of his, her or its agency and was subject to and under the supervision of, and was acting with the knowledge of, his, her or its co-defendants.

<u>Jurisdiction and Venue</u>

5.      During the time of the acts complained of herein, Bryant was employed by Mattel in, and was a resident of, Los Angeles County.  Bryant's contracts with Mattel that are at issue in this action were executed, performed and breached by Bryant in Los Angeles County.   In addition, defendants committed the tortious conduct alleged herein while physically located in Los Angeles County, and Mattel felt the effects of Bryant's breach and

07209/579342.1

-2-

COMPLAINT

EXHIBIT __18__ PAGE _360_

1  defendants' other wrongful acts in Los Angeles County.  Accordingly, this Court has

2  personal jurisdiction over defendants.

3        6.    Venue is proper pursuant to Code of Civil Procedure §§ 393 and 395(a),

4  as the causes of action arose in Los Angeles County, the contractual obligations at issue were

5  incurred, were to be performed and were breached by Bryant in Los Angeles County, and

6  Bryant does not currently reside in California.

7

8                        Factual Background

9

10        7.    Mattel is a long standing and successful independent manufacturer and

11  marketer of toys, dolls, games and stuffed toys and animals.  Mattel was founded in 1945 by

12  Elliot and Ruth Handler and Harold "Matt" Mattson.  The name of the company was created

13  by incorporating the names of two of its founders, "MATT-son" and "EL-liot."  Originating

14  from the Handlers' garage in Southern California, the company greatly expanded its

15  operations following World War II and soon began to thrive as its reputation for producing

16  high-quality toys spread.  During the next several decades, Mattel became world famous for

17  producing high-quality products at reasonable prices.  Today, some of Mattel's most famous

18  brands include BARBIE, HOT WHEELS, MATCHBOX and FISHER-PRICE.

19        8.    Critical to Mattel's success, and to the livelihood of its employees, is

20  Mattel's ability to design and develop new products.  Mattel invests many millions of dollars

21  in product design and development annually, and it introduces hundreds of new products

22  each year.  In El Segundo, California alone, Mattel maintains a 180,000 square-foot design

23  center that houses more than 850 designers, sculptors, painters and other artists, whom

24  Mattel pays to work exclusively and full-time to create the products that Mattel sells and on

25  which Mattel's business depends.

26        9.    Defendant Bryant was employed by Mattel from September 1995

27  through April 1998, and then again from January 1999 through October 2000, as a product

28  designer at Mattel's design center in El Segundo, California.

COMPLAINT

EXHIBIT _18_ PAGE _361_

10.    On January 4, 1999, upon starting his second term of employment by Mattel, and as a condition of and in consideration for his employment, Bryant executed an Employee Confidential Information and Inventions Agreement (the "Employee Agreement"). Among other things, Bryant agreed that he would not, without Mattel's express written consent, "engage in any employment or business other than for [Mattel], or invest in or assist (in any manner) any business competitive with the business or future business plans of [Mattel]." Bryant further acknowledged that he held a position of trust with Mattel. In addition, Bryant assigned to Mattel all rights, title and interest in "inventions," including without limitation "designs," that he conceived or reduced to practice during his employment by Mattel. A true and correct copy of Bryant's Employee Agreement with Mattel is attached as Exhibit A.

11.    Also on January 4, 1999, Bryant executed Mattel's Conflict of Interest Questionnaire (the "Conflict Questionnaire"). Among other things, Bryant certified in the Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor of Mattel in the prior twelve months and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest. Bryant specifically agreed that he would immediately notify his supervisor of any change in his situation that would cause him to change any of the foregoing certifications. The only conflict disclosure that Bryant made on the Conflict Questionnaire (or at any time subsequently) concerned freelance work that is unrelated to the conduct alleged herein. A true and correct copy of the Conflict Questionnaire executed by Bryant is attached as Exhibit B.

12.    In late November 2003, Mattel learned that Bryant had secretly aided, assisted and worked for a Mattel competitor, including without limitation by entering into an agreement with the competitor, during the time Bryant was employed by Mattel pursuant to the above-referenced agreements and was being paid by Mattel as a product designer. Bryant's agreement with the competitor obligated Bryant to provide product design services to the competitor on a "top priority" basis. Bryant's agreement also provided, among other

COMPLAINT

EXHIBIT __18__ PAGE __362__

1    things, that Bryant would receive royalties and other consideration for sales of products on

2    which Bryant provided aid or assistance; that all work and services furnished by Bryant to

3    the competitor under the agreement purportedly would be considered "works for hire"; and

4    that all intellectual property rights to preexisting work by Bryant purportedly would be

5    assigned to the competitor.  In addition, while Bryant was employed by Mattel, Bryant and

6    the other defendants converted, misappropriated and misused Mattel property and resources

7    for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor.

8          13.      During the time that he was employed by Mattel and thereafter, Bryant

9    concealed these actions from Mattel, including without limitation by failing to notify his

10    supervisor of his conflict of interest regarding the competitor and by making affirmative

11    misrepresentations to Mattel management upon his departure from Mattel.  Because of

12    Bryant's acts of concealment and his misrepresentations to Mattel, Mattel had no reason to

13    suspect that Bryant had worked for the competitor while still employed by Mattel until late

14    November 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's

15    agreement with the competitor and saw that the date of the agreement predated Bryant's

16    departure from Mattel.

17          14.      As a consequence, Bryant breached his contracts with Mattel and

18    violated his duty of loyalty and his fiduciary duties to Mattel; the other defendants have

19    unlawfully aided and abetted his violation of such duties; and each of the defendants has

20    been unjustly enriched and engaged in acts of conversion.

21

22                        <u>FIRST CLAIM FOR RELIEF</u>

23                         (Breach of Contract)

24

25          15.      Mattel repeats and realleges each and every allegation set forth in

26    paragraphs 1 through 14, above, as though fully set forth at length.

27          16.      Pursuant to his Mattel Employment Agreement, and for good and

28    valuable consideration, Bryant agreed that he would not, without Mattel's express written

07209/579342.1

COMPLAINT

EXHIBIT _18_ PAGE _363_

1  consent, engage in any employment or business other than for Mattel or assist in any manner

2  any business competitive with the business or future business plans of Mattel during his

3  employment with Mattel. Pursuant to his Mattel Employment Agreement, Bryant further

4  assigned to Mattel all right, title and interest in "inventions," including without limitation

5  "designs," that he conceived or reduced to practice during his employment by Mattel. In

6  addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as

7  disclosed, he had not worked for any competitor of Mattel and had not engaged in any

8  business venture or transaction involving a Mattel competitor that could be construed as a

9  conflict of interest. Bryant further promised that he would notify his superior immediately

10  of any change in his situation that would cause him to change any of the foregoing

11  certifications or representations.

12  17.  The Employment Agreement and the Conflict Questionnaire are valid,

13  enforceable contracts, and Mattel has performed each and every term and condition of the

14  Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

15  18.  Bryant materially breached the foregoing contracts with Mattel, in that,

16  among other things, he secretly aided, assisted and worked for a Mattel competitor during

17  his employment with Mattel, without the express written consent of Mattel.

18  19.  As a consequence of Bryant's breach, Mattel has suffered and will in

19  the future continue to suffer damages in an amount to be proven at trial. Such damages

20  include, without limitation, the amounts paid by the competitor to Bryant during his Mattel

21  employment; the amounts paid by the competitor to Bryant as a result of the work he

22  performed for the competitor during his Mattel employment; the amount that Mattel paid

23  Bryant during the time he wrongfully worked for the competitor; the value of information

24  and intellectual property owned by Mattel which Bryant provided to the competitor; the

25  value of the benefits the competitor obtained from Bryant during the time he was employed

26  by Mattel; and the value of the benefits the competitor obtained from Bryant as a result of

27  the work he performed for the competitor during his Mattel employment.

28

07209/579342.1

-6-

COMPLAINT

EXHIBIT _18_   PAGE _364_

20.    Furthermore, Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and, that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies."  Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

## SECOND CLAIM FOR RELIEF

(Breach of Fiduciary Duty)

21.    Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 20, above, as though fully set forth at length.

22.    Bryant held a position of trust and confidence with Mattel.  In his position, Bryant had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of his job assignments and duties.  In his position, Bryant also represented Mattel in its dealings with third parties and, in his actions in the course and scope of his employment with Mattel, was an agent of Mattel.  Bryant confirmed his relationship of trust with Mattel in the Employee Agreement.  Bryant thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests or that would deprive Mattel of any opportunities, profit or advantage which Bryant might bring to Mattel.

23.    Bryant breached his fiduciary duty to Mattel in that, while employed by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into an agreement with a Mattel competitor.  As alleged

07209/579342.1

-7-

COMPLAINT

EXHIBIT __18__  PAGE __365__

1    above, Bryant also breached the aforementioned duty by using Mattel property and resources

2    for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3         24.    The other defendants, acting with full knowledge of Bryant's obligations

4    to Mattel, aided and abetted Bryant in such conduct.

5         25.    As a direct and proximate result of defendants' wrongful conduct,

6    Mattel has incurred damages in an amount to be determined at trial.

7         26.    Defendants acted with malice, fraud and oppression, and in conscious

8    disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9    against defendants in an amount to be determined at trial.

10        27.    Furthermore, defendants' conduct has caused, and unless enjoined will

11   continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12   money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13   is entitled to an order restraining further breach of Bryant's fiduciary duty to Mattel and/or

14   restraining defendants from continuing to benefit from such breach.

15

16                          **THIRD CLAIM FOR RELIEF**

17                          (Breach of Duty of Loyalty)

18

19        28.    Mattel repeats and realleges each and every allegation set forth in

20   paragraphs 1 through 27, above, as though fully set forth at length.

21        29.    As an employee of Mattel, Bryant owed a duty of undivided loyalty to

22   Mattel, his employer. Pursuant to this duty, Bryant could not compete with Mattel or assist

23   a competitor of Mattel during his employment with Mattel. Pursuant to this duty, Bryant

24   was required to always give preference to Mattel's business over his own, similar interests

25   during the course of his employment with Mattel.

26        30.    Bryant breached his duty of loyalty to Mattel in that, while employed

27   by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including

28   without limitation by entering into an agreement with a Mattel competitor. As alleged

EXHIBIT 18    COMPLAINT PAGE 366

above, Bryant also breached the aforementioned duty by using Mattel property and resources for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

31.    The other defendants, acting with full knowledge of Bryant's obligations to Mattel, aided and abetted Bryant in such wrongful conduct.

32.    As a direct and proximate result of defendants' wrongful conduct, Mattel has incurred damages in an amount to be determined at trial.

33.    Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

34.    Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining further breach of Bryant's duty of loyalty to Mattel and/or restraining defendants from continuing to benefit from such breach.

<u>FOURTH CLAIM FOR RELIEF</u>

(Unjust Enrichment)

35.    Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 34, above, as though fully set forth at length.

36.    Defendants, by the aforementioned conduct, unfairly used and diverted Mattel property, resources and opportunities for the benefit of, and to aid and assist, themselves, all without authorization by or payment to Mattel for the same. Defendants have been unjustly enriched as a result.

37.    Mattel is entitled to an award of all such amounts by which defendants have been unjustly enriched in an amount to be determined at trial.

COMPLAINT

EXHIBIT __18__    PAGE __367__

1    38.    Defendants acted with malice, fraud and oppression, and in conscious

2  disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages

3  against defendants in an amount to be determined at trial.

4    39.    Furthermore, defendants' conduct has caused, and unless enjoined will

5  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

6  money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel

7  is entitled to an order restraining defendants from any further unjust enrichment.

8

9    ### FIFTH CLAIM FOR RELIEF

10    (Conversion)

11

12    40.    Mattel repeats and realleges each and every allegation set forth in

13  paragraphs 1 through 39, above, as though fully set forth at length.

14    41.    Mattel was entitled to, inter alia, Bryant's exclusive services and the

15  exclusive ownership of his inventions as a Mattel product designer.  However, Bryant

16  provided such services, and purported to grant rights to such inventions, to a competitor

17  during the time of his exclusive Mattel employment.  All such services and the inventions

18  and work product resulting from such services, including without limitation ideas, concepts,

19  rights, designs, proprietary information, and other intellectual property and intangible

20  property created by Bryant during the term of the aforesaid agreements, were the property

21  of Mattel.  Such services and property were provided by Bryant to others, including

22  defendants, and used by them.

23    42.    Defendants wrongfully converted Mattel property and resources by

24  asserting ownership thereto and by appropriating and using Mattel's property and resources

25  for their own benefit and gain and for the benefit and gain of others, without the permission

26  of Mattel.

27

28

COMPLAINT

EXHIBIT 18  PAGE 368

43.     As a direct and proximate result of defendants' wrongful conversion of Mattel's property and resources, Mattel has incurred damages.  Mattel is entitled to recover compensatory damages against defendants in an amount to be determined at trial.

44.     Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

45.     Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining defendants from further conversion of Mattel property and resources and/or restraining defendants from continuing to benefit from such conversion.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Mattel hereby respectfully requests that this Court:

A.     Award Mattel its damages;

B.     Order defendants to disgorge to Mattel all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by defendants as a result of the conduct described herein;

C.     Order specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

D.     Enter an injunction restraining defendants, and all those acting in concert or participation with them, from engaging in further wrongful conduct and/or from continuing to benefit from their wrongful conduct;

E.     Order defendants to pay Mattel the full cost of this action and Mattel's reasonable attorneys' fees;

F.     Award Mattel punitive damages in an amount sufficient to punish defendants and deter such misconduct in the future; and

07209/579342.1

-11-

1            G.     Award such other and further relief as this Court deems just and proper.

2

3    DATED:  April 27, 2004        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

4

5            By _____

6            Michael T. Zeller
             Attorneys for Plaintiff
7            Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-12-

COMPLAINT

EXHIBIT __18__  PAGE __370__

**Exhibit A**

EXHIBIT __18__ PAGE _371_

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as is practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my rights, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (1) relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist in any manner any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successor and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature: _Carter H. Bryant_

Employee Name (print): CARTER H. BRYANT

Date: 01/04/99

MATTEL, INC.
By: _Teresa Newcomb_

Name of Witness (print): TERESA NEWCOMB

EXHIBIT **A** PAGE 13

EXHIBIT __18__   PAGE __372__

**Exhibit B**

EXHIBIT __18__ PAGE __373__

## CONFLICT OF INTEREST QUESTIONNAIRE

BRYANT, CARTER H.     PROJECT DESIGNER
Name (Last, first, M.I.)                    Job Title                    Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

- ( ) YES   (●) NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?
- ( ) YES   (●) NO   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?
- ( ) YES   (●) NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?
- (●) YES   ( ) NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?
- (●) YES   ( ) NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?
- ( ) YES   (●) NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?
- ( ) YES   (●) NO   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?
- ( ) YES   (●) NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?
- ( ) YES   (●) NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

4, 5, freelance design & artwork in 1998,
from appr. 5/98 - 11/98 for the Ashton Drake
galleries.

I certify that I have read Mattel policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or had been engaged in any capacity which creates a Conflict of Interest.

Signature                                    01/04/98
                                             Date

EXHIBIT **B** PAGE **14**

EXHIBIT __18__ PAGE 374