1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12   CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)
                                            Consolidated with
     Plaintiff,                             Case No. CV 04-09059
13                                          Case No. CV 05-02727

14      vs.                                 **DISCOVERY MATTER**

15   MATTEL, INC., a Delaware               **[To Be Heard By Discovery Master
     corporation,                           Hon. Edward Infante (Ret.) Pursuant To
16                                          The Court's Order Of December 6, 2006]**
          Defendant.
17   _____       MATTEL, INC.'S NOTICE OF MOTION
                                            AND MOTION TO COMPEL:
18   AND CONSOLIDATED ACTIONS
                                            (1) DEPOSITION OF CARLOS
19                                          GUSTAVO MACHADO GOMEZ;

20                                          (2) CONSENT TO PRODUCTION OF
                                            ELECTRONIC MAIL MESSAGES; AND

21                                          MEMORANDUM OF POINTS AND
                                            AUTHORITIES
22
                                            [Declaration of Jon D. Corey filed
23                                          concurrently]

24
                                            Hearing Date:    TBA
25                                          Time:            TBA
                                            Place:           Telephonic Hearing
26
                                            Discovery Cut-off:     January 28, 2007
27                                          Pre-trial Conference:  May 5, 2008
                                            Trial Date:            May 27, 2008
28

07209/2296350.1

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |     PLEASE TAKE NOTICE that, at a time and place of hearing to be set by
3 | Discovery Master Hon. Edward Infante (Ret.), Mattel, Inc. will, and hereby does,
4 | move the Discovery Master, pursuant to <u>Federal Rules of Civil Procedure</u> 30 and 37,
5 | for an order (a) compelling the deposition of defendant Carlos Gustavo Machado
6 | Gomez in Los Angeles, California or Mexico City, Mexico, on or before December
7 | 30, 2007; and (b) compelling Machado to provide his consent to the disclosure of
8 | relevant electronic mail messages from his internet service providers.

9 |     This Motion is made on the ground that, despite repeated requests by Mattel
10 | and a prior agreement that Machado's deposition would take place on October 26,
11 | 2007, counsel for Machado now refuses to produce Machado, a party-defendant in
12 | this case, for deposition or even to offer dates for his deposition. This Motion is
13 | made on the further ground that Machado has used electronic mail services from
14 | third-party internet service providers for communications in connection with his
15 | trade secret theft and disloyalty, but has refused to produce electronic mail messages
16 | or to consent to their production from third-parties.

17 |     This Motion is based on this Notice of Motion and Motion, the accompanying
18 | Memorandum of Points and Authorities, the Declaration of Jon D. Corey, the
19 | records and files of this Court, and all other matters of which the Discovery Master
20 | may take judicial notice.

21
22
23
24
25
26
27
28

ii

1  **Statement of Local Rule 37-1 Compliance**

2  The parties met and conferred regarding this motion on October 18, 2007 and

3  times thereafter.

4

5  DATED:  November 15, 2007        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7                                        By _____

8                                        Jon D. Corey
                                         Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT ...................................................................................................... 8

I.    THE COURT SHOULD COMPEL MACHADO'S DEPOSITION ................. 8

    **A.**    Machado Cannot Avoid Deposition Because He Is In Mexico .............. 8

    **B.**    Machado Cannot Avoid Deposition Because He May Invoke the Fifth Amendment to Certain Questions .................................................... 9

II.   THE COURT SHOULD COMPEL MACHADO TO DISCLOSE RELEVANT EMAILS .................................................................................. 11

CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

**Page**

## Cases

Bear Stearns & Co. v. Wyler,
    182 F. Supp. 2d 679 (N.D. Ill. 2002) .................................................. 10

Camelot Group, Ltd. V. W. A. Krueger Co.,
    486 F. Supp. 1221 (D.C.N.Y. 1980) .................................................. 11

Federal Savings and Loan Ins. Corp. v. Molinaro,
    889 F.2d 899 (9th Cir. 1989) ............................................................. 11

International Business Machines Corp. v. Brown,
    857 F. Supp. 1384 (C.D. Cal. 1994) ................................................. 11

O'Grady v. Superior Court,
    139 Cal. App. 4th 1423 (2006) .......................................................... 11

United States v. Balsys,
    524 U.S. 666 (1998) ............................................................................ 10

United States v. Hansen,
    233 F.R.D. 665 (S.D. Cal. 2005) ......................................................... 9

United States v. Pierce,
    561 F.2d 735 (9th Cir. 1977) ............................................................... 9

## Statutes

Fed. R. Civ. P. 26(d) ................................................................................ 8

Fed. R. Civ. P. 30(a) ................................................................................ 8

## Miscellaneous

2A Wright & Miller, Federal Practice and Procedure: Criminal § 407 at 51 (3d ed. 2000) ...................................................................................... 10

8 Wright & Miller, Federal Practice and Procedure § 2018 (2d ed. 1994) ................. 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Carlos Gustavo Machado Gomez ("Machado") is a current MGA executive and is named as a party-defendant in this case for his trade secret theft and other misconduct. When Machado was at Mattel Mexico, MGA recruited him and two co-workers to leave Mattel. On their way out of Mattel (and evidently even before then), Machado and the others downloaded and took thousands of pages containing Mattel trade secrets. Mattel informed Mexico law enforcement, who executed a search warrant on MGA's offices in Mexico City, where they discovered trade secrets stolen from Mattel.

Mattel first sought Machado's deposition on July 23, 2007. All parties agreed with Machado's prior counsel, James Spertus, that Machado's deposition would occur on October 26, 2007. The case was then stayed at MGA's request based on its substitution of counsel, so the deposition was postponed. Now, Machado's new counsel flatly refuses either to produce Machado or provide dates for his deposition. As one of his most recent excuses for his stonewalling, Machado claims that because he is being criminally prosecuted in Mexico for trade secret theft, he is immunized on a wholesale basis from appearing for deposition and from producing any other discovery. That is not even arguably the law and constitutes no legitimate basis for Machado's obstructionism.

Further thwarting basic discovery, Machado refuses to consent to the release of emails from accounts used to facilitate the trade secret thefts and other unlawful acts. Discovery of the emails is plainly proper, including because they are reasonably calculated to lead to the discovery of admissible evidence concerning his and MGA's trade secret thefts and to the predicate acts underlying Mattel's RICO claims. His justification for refusing is that the emails from the accounts had supposedly been produced. In fact, Machado has not produced them.

1    Mattel respectfully requests an order compelling Machado to sit for deposition,
2  in Los Angeles or Mexico, no later than December 30, 2007.  It also respectfully
3  requests that Machado be compelled to provide his consent to provide his consent to the
4  disclosure of emails from his internet service providers

5                                    **Statement of Facts**

6    <u>Machado Stole Mattel Trade Secrets</u>.  In April 2004, Machado and two other
7  executives left Mattel Mexico to work for MGA.  Isaac Larian, MGA's CEO, Thomas
8  Park, MGA's then COO, and Susanna Kuemmerle, head of MGA's Mexican operations,
9  were each heavily involved in "recruiting" Machado and his co-workers to MGA.
10 Machado admits, that in the months prior to their resignations, he and his two
11 colleagues "discussed with MGA personnel, including Larian, employment at MGAE
12 de Mexico" and used an AOL e-mail account with the address <plot04@aol.com> in
13 order to do so.[1]  Larian too admits these communications took place.[2]

14   While MGA was recruiting them, Machado and the other then-Mattel employees
15 prepared an "analysis" to justify their worth to MGA.[3]  As a result of this analysis and
16 other information, MGA offered to pay each of them, to do the same jobs for a smaller
17 company, far more than they were earning at Mattel -- with potentially hefty bonuses
18 based on MGA's revenue growth -- and, apparently, to offered to give them all cars.[4]

19

20   [1]  Second Amended Answer and Counterclaims, ¶¶ 37-44, Corey Dec., Exh. 1.;
21 Machado's Amended Answer and Affirmative Defenses, ¶ 43, dated Sep. 24, 2007,
    Corey Dec., Exh. 2.

22   [2]  Isaac Larian's Answer and Affirmative Defenses, dated August 13, 2007, ¶¶
23 42-43, Corey Dec., Exh. 3.

24   [3]  Email from <plot04@aol.com> email address to Isaac Larian, dated March 22,
    2004, Corey Dec., Exh. 4.
25
    [4]  <u>Id.</u>; Email from Tom Park, MGA's Chief Operating Officer, to the
26 <plot04@aol.com> email address and copying Isaac Larian, dated March 30, 2004,
27 Corey Dec., Exh. 5; Email from Isaac Larian to the <plot04@aol.com> email
    address dated March 23, 2004, 2007, Corey Dec., Exh. 6.
28

07209/2296350.1
                                            -2-

1    Before they left Mattel, Machado and the others stole virtually every type of
2    document that a competitor would need to enter into the market in Mexico and to
3    compete with Mattel worldwide.  These included global internal future line lists that
4    detailed anticipated future products, production and shipping costs for Mattel products;
5    daily sales data for Mattel products; customer data; sales estimates and projections;
6    marketing projections; documents analyzing changes in sales performance from 2003 to
7    2004; budgets for advertising and promotional expenses; strategic research reflecting
8    consumer responses to products in development; media plans; consumer comments
9    regarding existing Mattel products customer discounts and terms of sale; customer
10   inventory level data; assessments of promotional campaign success; market size
11   historical data and projections; marketing plans and strategies; merchandising plans;
12   retail pricing and marketing strategies; and other similar materials.[5]

13   Machado and his co-conspirators ultimately resigned from Mattel on the same
14   day, April 19, 2004, but refused to say where they were going.[6]  And, Machado's Mattel
15   computer mysteriously would not function.  With its suspicions raised, Mattel began to
16   investigate.  It discovered that Machado and the others had downloaded and taken
17   thousands of pages containing Mattel trade secrets when they left.[7]  When Mattel
18   discovered this, it informed law enforcement officials in Mexico, who subsequently
19   obtained and executed a search warrant on MGA's Mexico City offices.[8]  They
20   discovered in those offices not only the information Mattel thought had been stolen, but

---

[5]    Second Amended Answer and Counterclaims, ¶ 48, Corey Dec. Exh. 1.

[6]    Second Amended Answer and Counterclaims, ¶¶ 44-46, Corey Dec., Exh. 1.; Machado's Amended Answer and Affirmative Defenses, ¶¶ 44-46, dated Sep. 24, 2007, Corey Dec., Exh. 2; Isaac Larian's Answer and Affirmative Defenses, dated August 13, 2007, ¶ 41, Corey Dec., Exh. 3.

[7]    Second Amended Answer and Counterclaims, ¶ 53, Corey Dec., Exh. 1.

[8]    Id.

1    thousands of other pages that Mattel did not know they had taken.[9]  Even after this,

2    MGA promoted Machado and transferred him to Los Angeles.[10]  Machado and his co-

3    workers have been indicted in Mexico for criminal trade secret theft.

4          Mattel and Machado Agree That His Deposition Would Occur on October 26.

5    Mattel began seeking deposition dates from Machado on June 4, 2007.  On September

6    3, 2007, James Spertus, counsel for Machado, confirmed that October 26, 2007 was an

7    "acceptable date" for Machado's deposition.[11]  The next day Mattel served a deposition

8    notice that confirmed the parties' agreement.[12]  Counsel for MGA and Bryant also

9    agreed to the October 26, 2007 deposition.[13]

10         Machado's New Counsel Refuses To Produce Machado for Deposition.  On

11   October 2, 2007, Mr. Spertus withdrew as counsel for Machado.[14]  On October 4, 2007,

12   Machado's new counsel, Alexander Cote, contacted Mattel to discuss, among other

13   things, Machado's pending deposition.[15]  He confirmed that Machado would be made

14

15

16   [9]  Id.

17   [10]  Id. ¶ 54.

18   [11]  See Letter from Spertus to Corey, dated September 3, 2007, Corey Dec., Exh. 11.

19   [12]  See Corey Dec., ¶ 14; see also Notice of Deposition of Carlos Gustavo
20   Machado, dated September 4, 2007, Corey Dec., Exh. 12; Email from Corey to
21   Michael Page, Amman Khan and Diana Torres attaching document that listed
     Machado under a heading of "Witnesses Whose Dates Have Been Agreed Upon
22   And Set After Meet and Confers Requested By Mattel," and stating that Machado's
23   deposition was set for October 26, 2007, Corey Dec., Exh. 13.

24   [13]  See Letter from Corey to Khan, dated September 25, 2007, Corey Dec., Exh. 14.

25   [14]  See Order On Request for Approval of Substitution of Attorney, dated
26   October 2, 2007, Corey Dec., Exh. 15.

27   [15]  See e-mail message from Alexander Cote to Corey, dated October 5, 2007,
     Corey Dec., Exh. 16.

28

1  available for deposition, but said that he would need to "update [Mattel] on Machado's
2  availability for his deposition as [counsel] get[s] more information."[16]

3  Mattel then met with Machado's counsel to discuss, among other things,
4  Machado's deposition.[17] Mr. Cote told Mattel that the deposition could not take place
5  on October 26, 2007 because of restrictions on Machado's mobility to and from Mexico
6  resulting from the criminal indictment in Mexico, but he assured Mattel that alternate
7  deposition dates would be forthcoming.[18] Mr. Cote also began asserting that because of
8  the criminal charges pending against him in Mexico, Machado would be invoking the
9  Fifth Amendment for *some* questions at his deposition.[19] He asked Mattel to consider a
10  stipulation that Machado will assert his Fifth Amendment Privilege to avoid the need
11  for a deposition entirely.[20] Mattel declined because Machado would not and could not
12  agree that he will invoke for all questions and again asked for deposition dates.[21]

13  Mr. Cote did not respond. Mattel sent another letter  requesting "dates in
14  November [] when Machado will be available for deposition."[22] By telephone, Mr.
15  Cote told Mattel that Machado was restricted from leaving Mexico due to criminal
16  proceedings against him there as a result of the his theft of Mattel's trade secrets and
17  did not provide any replacement dates for Machado's cancelled deposition.[23] Mattel
18  reiterated its offer to take Machado's deposition in Mexico and requested dates  when

19
20  [16]  See id.

21  [17]  See Letter from B. Dylan Proctor to Cote, dated October 18, 2007, Corey
     Dec., Exh. 19.

22  [18]  See id.

23  [19]  See id.

24  [20]  See id.

25  [21]  See id.

26  [22]  See Letter from Stephen Hauss to Cote, dated October 24, 2007, Corey Dec.,
     Exh. 20.

27  [23]  See Letter from Hauss to Cote, dated October 25, 2007, Corey Dec., Exh. 21.

28

1    he would be available in Mexico.[24]  Mr. Cote did not respond, so Mattel sent another
2    letter that reiterated the need to schedule Machado's deposition.[25]

3        Mr. Cote responded in a November 1, 2007 letter. He stated that Machado "may
4    be available for deposition at the end of November in the United States,"[26] but
5    suggested that a deposition "[would] not be fruitful" because Machado would assert his
6    Fifth Amendment right to most of Mattel's questions.[27]  Mattel explained in response
7    that any Fifth Amendment right could not allow him to avoid his deposition entirely.
8    Mattel offered to take Machado's deposition in Mexico to accommodate his travel
9    restrictions due to his prosecution in Mexico.[28] Mattel again requested deposition dates
10    in the location of counsel's choice in Los Angeles or in Mexico.[29]

11        Mr. Cote responded on November 5, 2007. He provided no dates for Machado's
12    deposition.  Instead, he reiterated that this deposition "[would] not be productive"
13    because it is "no secret that [Mattel] plans to ask Machado questions concerning
14    [Mattel's] allegations" to which Machado will invoke the Fifth Amendment.[30] Despite
15    Mattel's earlier offer to hold the deposition in a location of counsel's choice, and
16    rejecting Mattel's efforts to resolve any issue over the location of Machado's deposition,
17    counsel claimed that Mattel had provided no "justification" for "forcing counsel to

---

[24]    See id.

[25]    See Letter from Zeller to Nolan, dated October 29, 2007, Corey Dec., Exh. 23.

[26]    See Letter from Cote to Zeller, Corey, Proctor and Hauss, dated November 1, 2007, Corey Dec., Exh. 24.

[27]    See id.

[28]    See Letter from Zeller to Cote, dated November 3, 2007, Corey Dec., Exh. 25.

[29]    See id.

[30]    See Letter from Cote to Zeller, dated November 5, 2007, Corey Dec., Exh. 26.

incur the expense of traveling to Mexico" for this deposition.  Mr. Cote then invited
Mattel to move to compel.[31]

Machado Has Failed to Produce Emails to Which Mattel Is Entitled.  Mattel
served Machado with Requests for Production on September 11, 2007 requesting,
among other things, relevant emails sent to and from him, including from the
<plot04@aol.com> account.[32]  Machado has produced no such e-mails to Mattel with
these documents.  Mattel also served a subpoena on Yahoo! on October 29, 2007
requesting the production of emails from Machado's <gus_cmt@yahoo.com> account.[33]
On that same day, Mattel sent a letter to Machado informing him that a subpoena had
been served on Yahoo! requesting documents identical to those requested in Mattel's
Requests for Production served on Machado on September 11, 2007 and requesting his
consent to the release of his emails from Yahoo! under the Stored Electronic
Communications Act.[34]  The letter attached a form for Machado to sign indicating his
consent.[35]  On November 1, 2007, Mr. Cote responded.  He wrote that "Mr. Machado
has already produced documents from his Yahoo! e-mail account."[36]  In reality,
Mr. Machado has produced only 124 pages of documents, none of which are emails

---

[31]   Id. at 2.

[32]   Mattel's First Set of Requests for Documents and Things to Machado, dated
September 11, 2007, Corey Dec., Exh. 30.

[33]   Notice of Subpoena Issued to Yahoo!, dated October 29, 2007, Corey Dec.,
Exh. 31.

[34]   Letter from Corey to Machado, care of Cote, dated October 29, 2007, at 1-2,
Corey Dec., Exh. 32.

[35]   Id.

[36]   Letter from Cote to Zeller, et al., dated November, 2007, at 2, Corey Dec.,
Exh. 25.

MATTEL, INC.'S MOTION TO COMPEL RE MACHADO

1 | from the Yahoo! or any other account.[37] Nonetheless, Mr. Machado refused to consent
2 | to the release of e-mail messages from that, or any other, email account.[38]

3 | ### Argument

4 | **I.     THE COURT SHOULD COMPEL MACHADO'S DEPOSITION**

5 |     Machado stole Mattel trade secrets. In fact, he was the ring-leader of the theft in
6 | Mexico. He is a party-defendant. Mattel has the absolute right to depose him. <u>Fed. R.</u>
7 | <u>Civ. P.</u> 30(a) ("A party may take the deposition of any person, *including a party*, by
8 | deposition upon oral examination without leave of court . . . .") (emphasis added).

9 |     **A.     Machado Cannot Avoid Deposition Because He Is In Mexico**

10 |     After previously agreeing to attend a deposition, Machado now flatly refuses to
11 | sit for deposition. Machado claimed that the criminal prosecution against him in
12 | Mexico prevents him from leaving Mexico. This makes no sense given that days
13 | before to refusing to provide Machado for deposition, his counsel said he could be
14 | available in Los Angeles in late November.[39] And, in any event, to accommodate the
15 | witness and to avoid any such issue, Mattel offered to depose him in Mexico on a date
16 | of his choosing (so long as the date is soon). Machado has rejected that offer without
17 | any plausible basis. Machado also has suggested that because his deposition relates to
18 | Phase 2, Mattel should spend its time elsewhere. Machado may not, however, dictate
19 | the manner in which Mattel conducts discovery. <u>See Fed. R. Civ. P.</u> 26(d) ("[M]ethods
20 | of discovery may be used in any sequence."); <u>see also</u> October 31 Stay Order, Corey
21 | Dec., Exh. 19, at 2 ("[T]he Court denies MGA's request to delay or otherwise bifurcate
22 | discovery regarding Phase 2 issues."). Machado has not made and cannot make the
23 |

24 | ────────────────
   [37]  Machado's Initial Disclosures Pursuant to <u>Rule</u> 26(a)(1), dated September 24,
25 | 2007, Corey Dec. Exh. 29.

26 |    [38]  Letter from Cote to Zeller, et al., dated November 1, 2007, at 2, Corey Dec.,
Exh. 24, at 2.
27 |    [39]  <u>See id</u>.
28 |

1  showing required to prevent Machado's deposition from going forward, as it must,
2  under <u>Rule</u> 30.

3      **B.**    <u>**Machado Cannot Avoid Deposition Because He May Invoke the**</u>
4              <u>**Fifth Amendment to Certain Questions**</u>

5      As his other excuse, Machado claims he is immune from deposition because he is
6  under criminal indictment in Mexico and will invoke his Fifth Amendment right to
7  avoid answering some questions.[40]  His position is unavailing.

8      It is well settled that a Fifth Amendment claim can only "be raised in response to
9  *specific questions* propounded by the investigating party." <u>United States v. Pierce</u>, 561
10  F. 2d 735, 741 (9th Cir. 1977) (emphasis added).  Machado thus may not rely on a
11  blanket assertion of the Fifth Amendment to avoid being deposed entirely.  <u>United</u>
12  <u>States v. Hansen</u>, 233 F.R.D. 665, 668 (S.D. Cal. 2005) (holding that deponent could
13  not refuse to attend deposition under a blanket claim of privilege against self
14  incrimination) (citing cases).  "The proper procedure is for the deponent to attend the
15  deposition, to be sworn under oath, and to answer those questions he or she can answer
16  without running a risk of incrimination.  In this way a record can be made and the court
17  can determine whether particular questions asked did entitle the deponent to claim the
18  privilege." 8 Wright & Miller, <u>Federal Practice and Procedure</u> § 2018 (2d ed. 1994) at
19  273-74.

20      In fact, Judge Larson affirmed the Discovery Master's May 16, 2007 Order that
21  had rejected similar efforts by MGA to assert a blanket privilege claim to evade
22  deposition.  MGA asked the Court to sustain its blanket work-product objection to
23  providing any testimony in response to a <u>Rule</u> 30(b)(6) deposition topic regarding ink,
24  paper and chemical analysis conducted by an alleged MGA expert, Erich Speckin.  The
25
26

27  [40]  <u>See</u> Letter from Cote to Corey, dated November 5, 2007, Corey Dec., Exh.
28  26.

1   Discovery Master rejected that argument,[41] and MGA appealed.  Judge Larson affirmed
2   the Discovery Master's ruling and explained: "To the extent that such a deposition has
3   the potential to encroach upon information protected by the work-product privilege,
4   then that objection must be made on a question-by-question basis. *MGA may not make*
5   *a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this*
6   *topic based on that blanket objection.*"[42]  That reasoning applies here with equal force.

7        Indeed, at a minimum, Mattel is entitled to depose Machado to determine
8   whether the he can even invoke the Fifth Amendment at all.  For example, Mattel
9   believes that Mr. Machado is a Mexican national, not a U.S. citizen.  Mattel is entitled
10  to inquire to determine Machado's residency status.  While he formerly resided in the
11  United States, at least according to his counsel, he now resides in Mexico.  This is
12  significant.  In a civil case, a non-resident alien cannot invoke the Fifth Amendment
13  even if he or she learns the testimony may be incriminating.  See, e.g., Bear Stearns &
14  Co. v. Wyler, 182 F. Supp. 2d 679, 683 (N.D. Ill. 2002) ("We fail to find it self-evident
15  that the Fifth Amendment's privilege against self-incrimination is available to non-
16  resident aliens.  Wyler's failure to demonstrate the privilege's availability would be
17  reason enough to grant plaintiff's motion to compel, were there not a further deficiency
18  in Wyler's position.").  Further, the current criminal prosecution against Machado is in
19  Mexico by Mexican prosecutors.  The Fifth Amendment does not provide a privilege
20  against self-incrimination for foreign prosecutions.  United States v. Balsys, 524 U.S.
21  666, 669 (1998); 2A Wright & Miller, Federal Practice and Procedure: Criminal § 407
22  at 51 (3d ed. 2000) (Fifth Amendment "does not protect a witness from giving evidence
23  that could be used against the witness in a prosecution in a foreign country").  Mattel is
24
25
_____
26  [41]   May 16, 2007 Order Granting Mattel, Inc.'s Motion to Compel MGA to
    Produce Witnesses for Deposition Pursuant to Rule 30(B)(6), Corey Dec., Exh. 27.
27  [42]   July 5, 2007 Minute Order at 4, Corey Dec., Exh. 28.
28

1 | entitled to inquire about the basis for Machado's fear, if any, of prosecution in the
2 | United States before he may properly invoke the Fifth Amendment.

3 |     Finally, Machado has already admitted certain incriminating conduct in his
4 | Amended Answer and has invoked twelve separate defenses to his theft, which are
5 | discussed in his initial disclosures.[43]   The admitted conduct and defenses are not
6 | privileged and Mattel can inquire about them.  Indeed, the articulation of the defenses
7 | should constitute a waiver of any Fifth Amendment rights Machado may possess.
8 | Federal Savings and Loan Ins. Corp. v. Molinaro, 889 F. 2d 899, 903 (9th Cir. 1989)
9 | (holding that where defendant already has given partial deposition testimony on the
10 | substantive issues of the case, the Fifth Amendment privilege is "negligible");
11 | International Business Machines Corp. v. Brown, 857 F. Supp. 1384, 1389-90 (C.D.
12 | Cal. 1994) (holding that because defendants had already testified at deposition, there
13 | was no remaining Fifth Amendment privilege to assert); Camelot Group, Ltd. V. W. A.
14 | Krueger Co., 486 F. Supp. 1221, 1230 (C.D.N.Y. 1980) ("A witness or defendant in a
15 | civil case who has already testified to matters which tend to incriminate him has waived
16 | the privilege insofar as further questions seek the details of the matters to which he did
17 | testify.").  It would be patently unfair, and contrary to law, to allow Machado to
18 | purportedly defend himself with impunity, but to refuse to provide the most basic of
19 | discovery regarding the conduct he purports to defend.

20 | **II.**   **THE COURT SHOULD COMPEL MACHADO TO DISCLOSE**
21 |      **RELEVANT EMAILS**

22 |     As a party to this action, Machado is obligated to direct his agents to produce
23 | documents within their possession.  Machado should be compelled to consent to the
24 | disclosure of e-mail communications by Yahoo!  If Machado continues to fail to give

26 | [43]   Amended Answer and Affirmative Defenses at 6:13-7:26, 18:21-22:19,
27 | Corey Dec., Exh. 2; Machado's Initial Disclosures Pursuant to Rule 26(a)(1), dated
September 24, 2007, Corey Dec. Exh. 29.

1  his consent to the release of these documents, he should be sanctioned. See O'Grady v.

2  Superior Court, 139 Cal. App. 4th 1423, 1446 (2006) (stating that where a party to an

3  email communication being sought is also a party to the litigation it is within the court's

4  power to require the party's consent to disclosure of the communication on pain of

5  discovery sanctions).  Machado's only excuse here -- that he himself has supposedly

6  already produced the emails--is demonstrably false.  In reality, Mr. Machado has

7  produced only 124 pages of documents, none of which are emails from the Yahoo!, or

8  any other, account.[44]

9      Mattel respectfully requests that the Discovery Master order Machado to provide

10  written consent to the production of relevant e-mails from any e-mail account (and to

11  identify each e-mail account) he has used in the past five years.

## Conclusion

13      For the foregoing reasons, the Discovery Master should grant Mattel's motion.

15  DATED:  November 15, 2007          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP

17                                     By_____
                                       Jon D. Corey
18                                     Attorney for Mattel, Inc.

---

[44]    Machado's Initial Disclosures Pursuant to Rule 26(a)(1), dated September 24, 2007, Corey Dec. Exh. 29.

07209/2296350.1

MATTEL, INC.'S MOTION TO COMPEL RE MACHADO