Larry McFarland (Bar No. 129668)
Christian Dowell (Bar No. 241973)
KEATS, McFARLAND & WILSON LLP
9720 Wilshire Blvd.
Penthouse Suite
Beverly Hills, CA 90212
Telephone: (310) 248-3830
Facsimile: (310) 860-0363
Email: lmcfarland@kmwlaw.com
       cdowell@kmwlaw.com

Attorneys for
Ana Elise Cloonan, Margaret Hatch-Leahy, and
Veronica Marlow

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation;<br><br>Defendant.<br><br>AND RELATED ACTIONS. | Case No.: CV 04 – 09049 SGL (RNBx)<br>Consolidated with Case Nos.<br>CV 04-9059 and CV 05-2727<br><br>Hon. Stephen G. Larson<br><br>ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OF ANA ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER<br><br>Hearing Date: November 20, 2007<br>Time: 10:00 a.m.<br>Place: Courtroom 1 |

## I. INTRODUCTION

In its Standing Order, the Court reminds counsel "that ex parte applications are solely for extraordinary relief." Court's Standing Order at 5. Had Mattel heeded this admonition, it would not have burdened the Court with an *ex parte* application and 44 accompanying exhibits to resolve a simple dispute over when to schedule the depositions of **non**-parties Margaret Hatch-Leahy, Elise Cloonan and Veronica Marlow (collectively, the "Non-Party Witnesses").[1]

Contrary to Mattel's gross mischaracterizations, the Non-Party Witnesses and their counsel have fully cooperated with Mattel in its document discovery of them and in scheduling depositions. Indeed, for the past few months, the Non-Party Witnesses have repeatedly agreed to be deposed even though Mattel waited until yesterday to serve deposition subpoenas on them for the first time. At issue here are the following deposition dates which the Non-Party Witnesses have proposed to Mattel and which represent the earliest dates on which they and their counsel are reasonably available: December 12, 2007 for Ms. Hatch-Leahy; December 14, 2007 for Ms. Cloonan; and January 9, 2008 for Ms. Marlow.

Mattel offers no compelling reason why the depositions cannot proceed on these dates. As to Ms. Hatch-Leahy and Ms. Cloonan, the proposed dates are within a week of the December 7, 2007 date by which Mattel wants to complete their depositions. For Ms. Marlow, the proposed date is well before Phase I fact discovery cutoff and is the first available date on which she can be deposed without suffering any undue burden, harassment or expense.

---

[1] Curiously, although Mattel believes that the Court should resolve this non-party discovery dispute, Mattel has asserted that disputes regarding the Non-Party Witnesses' production of documents should be handled by the Discovery Master. The Non-Party Witnesses disagree with Mattel in both respects and believe that all such non-party discovery disputes should be decided by Magistrate Judge Block. Nevertheless, because Mattel's *ex parte* application is unfounded, the Court should simply deny the application rather than refer it to Magistrate Judge Block.

Moreover, the only two arguments that Mattel offers in support of its *ex parte* application are either irrelevant or unsubstantiated. That the Non-Party Witnesses possess discoverable information may entitle Mattel to depose them, but it has no bearing on when those depositions should be scheduled. In addition, Mattel fails to explain what "follow-up discovery" it could legitimately need as a result of the Non-Party Witnesses' depositions that has not already been covered by the mountains of discovery that Mattel has sought and obtained in this case over the past three years.

Mattel's *ex parte* application is entirely without merit and a waste of the Court's valuable time and resources. Accordingly, the Non-Party Witnesses respectfully request that the Court deny Mattel's *ex parte* application.

## II. SUMMARY OF FACTS

Mattel's description of "facts" relating to the scheduling of the Non-Party Witnesses' depositions is incorrect and misleading. In particular, Mattel fails to include numerous interactions which plainly show that the Non-Party Witnesses and their counsel were working in good faith to schedule depositions and that much of the delay was caused by Mattel's efforts to expand the scope of document production by the Non-Party Witnesses in advance of their depositions. A more complete and accurate summary of the relevant facts is set forth below.

In March and May 2005, Mattel served the Non-Party Witnesses with subpoenas in the 04-9059 case requesting that they produce a broad range of documents and things. (Declaration of Larry W. McFarland ("McFarland Decl."), Exs. 1-3.) Shortly thereafter, the action was stayed pending Mattel's appeal to the Ninth Circuit. In June 2007, after the stay was lifted and the cases were consolidated, Mattel's counsel contacted the Non-Party Witnesses' counsel, Larry McFarland, to discuss production of documents in response to the previously issued subpoenas. (Proctor Decl., Ex. 3.)

At the same time though, Mattel sought to broaden substantially the scope of its document discovery with respect to the Non-Party Witnesses. For example, Mattel

attempted to subpoena virtually all bank records relating to the Non-Party Witnesses since 1999. (McFarland Decl., Ex. 4.) The Non-Party Witnesses objected to the subpoenas as overly broad and agreed to produce a narrower set of records limited to matters relevant to the litigation. (McFarland Decl., Ex. 5.)

In June 2007, Mattel's counsel also began demanding that the Non-Party Witnesses provide Mattel copies of their entire computer hard drives without regard to what, if any, actually relevant or responsive documents were stored on them. (McFarland Decl., Ex. 6.) It was not until September 2007—after about three months of negotiations—that Mattel's counsel finally agreed to a more reasonable approach for identifying and producing responsive, non-privileged documents from the Non-Party Witnesses' hard drives. (Proctor Decl., Ex. 16.)

In July 2007, Mattel also sought to expand the scope of document production by asserting that it was "entitled to any documents Ms. Marlow, Ms. Leahy ... or Ms. Cloonan have relating to Bratz or Bratz derivative works *through the present time* ... [and] documents relating to Angel, Angel Baby, Prayer Angel or *any other product on which any of [the Non-Party Witnesses] worked with Carter Bryant*." (McFarland Decl., Ex. 8 (emphasis added).) Rather than engage in protracted discussions about the relevance of such additional documents, the Non-Party Witnesses agreed to re-review their documents for these other materials in an effort to move the document production toward completion. (Proctor Decl., Ex. 8, 16)

It was against this backdrop of broadening document discovery that Mattel first broached the issue of the Non-Party Witnesses' depositions. Mattel contends that after first agreeing to check on witness availability in June 2007, the Non-Party Witnesses' counsel, Mr. McFarland, did not respond for three months. (*Ex Parte* App. at 3.) To the contrary, in July 2007, Mr. McFarland conferred with Mattel's counsel about scheduling depositions after completing the document productions in light of the new document production issues being raised by Mattel. (McFarland Decl., Ex. 7.) In particular, Mr. McFarland explained that "it makes sense that we

have the document production finalized before you take their depositions. Because these individuals are third party witnesses, it is particularly important that they not be burdened with more than one day of deposition which might occur if they were to be deposed before you and I have resolved the document production issues." (*Id.*)

Consistent with that approach, once Mr. McFarland and Mattel's counsel had resolved most of the document production issues in September 2007, they began discussing scheduling of the Non-Party Witnesses' depositions. (Proctor Decl., Exs. 9, 11, 12 & 14.) By late September, depositions of all of the Non-Party Witnesses had been set and were scheduled to take place in late October 2007 and the first half of November 2007. (Proctor Decl., Ex. 14.)

However, rather than follow the normal practice of issuing deposition subpoenas for these agreed-upon dates, Mattel's counsel requested that the Non-Party Witnesses execute a stipulation and order for the deposition dates. (Proctor Decl., Ex. 15.) The reason for Mattel's tactic was apparent in the recitals of Mattel's proposed stipulation and order, which stated that Mattel had been "actively seeking" deposition dates since June 2007 but that the Non-Party Witnesses had made no effort to cooperate until September 2007. (*Id.*) Understandably, the Non-Party Witnesses did not agree to sign the document.

On October 15, 2007, the Court entered a "soft stay" in the case until October 31, 2007. "Specifically all proceedings *and discovery* are STAYED during that time." (Docket Item 1089 (emphasis added).) On October 31, 2007, the Court issued another stay until November 15, 2007. The Court's order expressly stated that "[n]o depositions shall be conducted during this time." (Docket Item 1104.)

As a result of these stays, the Non-Party Witnesses' depositions were taken off calendar. Although Mattel contends that Mr. McFarland "cancel[ed]" the depositions, the record is clear that the depositions were postponed by operation of the Court's stay orders, not through any unilateral action taken by Mr. McFarland. Moreover, Mattel's suggestion that the Non-Party Witnesses and their counsel were in cahoots with MGA

1 | to obtain a stay only to delay the Non-Party Witnesses' depositions is nothing more
2 | than pure conjecture and has no basis in fact.

3 |       Following entry of the second stay, Mattel's counsel requested that the
4 | depositions of Ms. Leahy and Ms. Marlow be scheduled in late November and that the
5 | deposition of Ms. Cloonan be scheduled by early December. (Proctor Decl., Ex. 25.)
6 | Mr. McFarland responded with dates reasonably close to those requested by Mattel's
7 | counsel: December 12, 2007 for Ms. Leahy; December 14, 2007 for Ms. Cloonan; and
8 | January 9, 2008 for Ms. Marlow. (Proctor Decl., Ex. 28.)

9 |       These proposed dates represent the earliest dates on which the Non-Party
10 | Witnesses and their counsel are reasonably available for deposition in view of prior
11 | commitments, travel schedules, and the holiday season. For example, starting in late
12 | November, Ms. Marlow will be out of the country for a long planned three-week trip
13 | to Brazil. (McFarland Decl., ¶ 11.) In addition, Ms. Cloonan, who recently gave
14 | birth, has limited availability because she is the primary caregiver of her baby and has
15 | very limited help. (*Id.*) Mr. McFarland also has other client and personal
16 | commitments in late November and December, including a week-long trip in late
17 | December. (*Id.*)

18 |       Mattel's counsel objected to the proposed dates on the sole ground that Mattel
19 | would be prejudiced in its ability to take "follow-up discovery" before the Phase I fact
20 | discovery cutoff, which is currently set for January 28, 2008. (Proctor Decl., Ex. 29.)
21 | Mattel, however, has already obtained ample discovery in this case. Since 2004, when
22 | this litigation commenced, Mattel has served more than 30 subpoenas for non-party
23 | discovery, all of its allotted 50 interrogatories, thousands of requests for admissions
24 | and over 800 document requests. (McFarland Decl., ¶ 13.) In addition, excluding the
25 | three Non-Party Witnesses, Mattel has used 20 of the 24 depositions that it is allowed
26 | to take in this case. (*Id.*)

27 |       In a November 13, 2007 letter, Mattel's counsel requested that Mr. McFarland
28 | contact him by the end of the following day to discuss about alternative arrangements

- 5 -

OPPOSITION TO
EX PARTE APPLICATION

for the depositions. (Proctor Decl., Ex. 29.) However, unwilling to wait that long, Mattel's counsel called Mr. McFarland at 2:15 p.m. on November 14 to give notice that Mattel would be filing an *ex parte* application. (McFarland Decl., ¶ 12.) Contrary to Mattel's assertion, its counsel made no attempt to actually "discuss[] the matter" during the call. (*Id.*) On November 15, the same day it filed its *ex parte* application, Mattel served for first time deposition subpoenas on the Non-Party Witnesses. (Proctor Decl., Exs. 39-41.)

### III.  MATTEL'S *EX PARTE* APPLICATION SHOULD BE DENIED BECAUSE MATTEL HAS NOT MADE THE REQUISITE SHOWING.

#### A.  *Ex Parte* Relief Is Justified Only Where the Applicant Will Suffer Irreparable Prejudice Absent Emergency Relief and the Applicant Did Not Contribute to Creating the Problem.

"Ex parte motions are rarely justified." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). Indeed, as the Court's Standing Order makes clear, "ex parte applications are solely for extraordinary relief." Court's Standing Order at 5, citing *Mission Power*, 883 F. Supp. 488. Because of the urgency that attends *ex parte* applications, courts hold such requests and those who file them to greater scrutiny than in the case of regularly filed motions. *See Mission Power*, 883 F. Supp. at 492 ("Lawyers must understand that filing an ex parte motion … is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire.").

*Ex parte* relief is only warranted where the movant establishes that (1) the movant will suffer irreparable prejudice absent the requested relief, and (2) "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* "To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer. … For example, merely showing that trial is fast approaching and that the opposing party still has not answered crucial

interrogatories is insufficient to justify ex parte relief. The moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period." *Id.* at 493.

As is shown below, Mattel has not established either of the elements necessary to justify granting its requested *ex parte* relief.

### B. Mattel Will Not Be Prejudiced if the Non-Party Witnesses' Depositions Occur on the Dates that They Have Proposed.

Mattel offers only two arguments in support of its *ex parte* application. First, Mattel argues that the Non-Party Witnesses possess discoverable information. *Ex Parte* App. at 7-8. Second, Mattel argues that absent its requested relief, Mattel will be prejudiced because it will not have sufficient time to take "follow-up discovery" after the depositions. *Id.* at 8-11. Both arguments fail to support its *ex parte* application.

Mattel's first argument is irrelevant to the resolution of Mattel's *ex parte* application and appears to have been included solely to give Mattel an opportunity to argue its version of the case to the Court. That the Non-Party Witnesses have discoverable information does not dictate or even influence when the depositions of those witnesses should be scheduled. It is merely a basis for Mattel to assert that the depositions should occur sometime during fact discovery, which the Non-Party Witnesses do not deny and have worked diligently to accomplish.

Mattel's second argument regarding prejudice is also unfounded because Mattel relies on a false sense of urgency and does not substantiate its purported need for "follow-up discovery." Although Mattel contends that it will be harmed if Ms. Hatch-Leahy and Ms. Cloonan's depositions proceed on their proposed dates of December 12 and December 14, respectively, those dates are within one week of the December 7 date requested in Mattel's *ex parte* application. Mattel cannot reasonably assert that it will be prejudiced, let alone irreparably prejudiced, by having to wait an extra week to depose Ms. Hatch-Leahy and Ms. Cloonan.

     Mattel also fails to explain how it will be prejudiced with regard to "follow-up discovery" if the Non-Party Witnesses are deposed on the dates they have proposed. Mattel does not explain what possible "follow-up discovery" would be necessitated as a result of the Non-Party Witnesses' depositions. Indeed, by Mattel's account, all of the pertinent information that Mattel seeks resides with the Non-Party Witnesses and presumably will be obtained at their depositions. Phase I fact discovery also does not close until January 28, 2008, giving Mattel three weeks from the proposed date of Ms. Marlow's deposition and six weeks from the proposed dates of Ms. Hatch-Leahy and Ms. Cloonan's depositions to wrap up any remaining discovery issues.

     Moreover, it is hard to believe that Mattel could have any legitimate "follow-up discovery" arising from depositions that have not already been addressed in the mountains of discovery that Mattel has sought and obtained in this case. Mattel has spent the past three years taking discovery regarding Phase I issues. In that time, Mattel has served literally thousands of requests for admissions, more than 800 document requests, all of its allotted interrogatories, and more than 30 subpoenas for non-party discovery. (McFarland Decl., ¶ 13.) Excluding the depositions of the Non-Party Witnesses, Mattel also has used 20 of its allotted 24 depositions and will have only one more deposition available once it deposes the Non-Party Witnesses. (*Id.*) In view of such exhaustive discovery efforts, Mattel's argument that the Non-Party Witnesses' depositions will reveal information previously unknown or unavailable to Mattel that will require two months of additional discovery simply is not credible.

     Glaringly absent from Mattel's *ex parte* application is any discussion of the burden and expense to the Non-Party Witnesses if Mattel's requested relief is granted. Federal Rule of Civil Procedure 45 requires Mattel and its counsel to "take reasonable steps to avoid imposing undue burden or expense" on the Non-Party Witnesses. Fed.R.Civ.P. 45(c)(1). "Underlying the protections of Rule 45 is the recognition that '"the word non-party" serves as a constant reminder of the reasons for the limitations that characterize third-party' discovery." *Gonzales v. Google, Inc.*, 234 F.R.D. 674,

680 (N.D. Cal. 2006), quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980). Courts are "particularly concerned anytime enforcement of a subpoena imposes an economic burden on a non-party." *Gonzales*, 234 F.R.D. at 683.

Mattel attempts to avoid having to address these protections afforded non-parties by asserting that the Non-Party Witnesses and their counsel are closely aligned with MGA and Carter Bryant. It is undisputed, however, that none of the Non-Party Witnesses is a party to this action or is employed by or is an agent of MGA or Carter Bryant. In short, the Non-Party Witnesses are exactly that—*non*-party witnesses—and they should be treated accordingly.

Forcing the Non-Party Witnesses to sit for deposition on dates earlier than the dates they have proposed would impose an undue burden and expense. The dates proposed by the Non-Party Witnesses are the earliest dates on which they and their counsel are reasonably available in view of their schedules and prior obligations. (McFarland Decl., ¶ 11.) Ms. Marlow, for example, will be on a long planned three-week trip to Brazil starting in late November, and then will be hosting many of her family members during the December and early January holidays. (*Id.*) It would be unduly burdensome, expensive and harassing to require Ms. Marlow to sacrifice these travel and family commitments merely because Mattel wants, but in no way needs, to take her deposition before January 9, 2008. Similarly, it would be an undue burden to force Ms. Cloonan, who is the primary caregiver of her new baby and has very limited help (*id.*), to make undesirable childcare arrangements just so that Mattel can depose during the week prior to the date she proposed for her deposition.

Because Mattel has not shown any need for its requested relief or irreparable harm if such relief is not granted, Mattel's *ex parte* application must be denied.

### C. Mattel's Own Actions Contributed to this Dispute.

Mattel's attempts to seek overly broad discovery from the Non-Party Witnesses contributed to the delay in scheduling their depositions and serve as a separate and independent basis for rejecting Mattel's *ex parte* application. *See Mission Power*, 883

OPPOSITION TO
EX PARTE APPLICATION

F. Supp. at 493 ("The moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period."). Although Mattel blames the Non-Party Witnesses and their counsel for delaying the scheduling of their depositions, the record shows otherwise.

As discussed above, the Non-Party Witnesses and their counsel have acted diligently and in good faith not only to schedule the depositions, but to provide Mattel in advance of those depositions all of the non-privileged documents responsive to Mattel's document subpoenas. (*See* § II above.) To the extent there was any unreasonable delay in scheduling the depositions, Mattel has only itself to blame since it delayed the completion of that production by spending months trying to expand the scope of documents to be produced by the Non-Party Witnesses. (*See id.*)

Because Mattel is not without fault in delaying the scheduling of the Non-Party Witnesses' depositions, Mattel's *ex parte* application must fail.

## IV. CONCLUSION

For the foregoing reasons, the Non-Party Witnesses respectfully request that the Court deny Mattel's *ex parte* application.

Dated: November 16, 2007

KEATS MCFARLAND & WILSON LLP

Larry W. McFarland, Esq.
Attorneys for Non-Parties Ana Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow

# DECLARATION OF SERVICE

*CARTER BRYANT v. MATTEL, INC.*
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos. CV 04-9059 and CV 05-2727

I, the undersigned say, I am and was at all times herein mentioned a resident of the County of Los Angeles, over the age of eighteen (18) years and not a party to the within action or proceeding. My business address is 9720 Wilshire Boulevard, Penthouse Suite, Beverly Hills, California 90212 and I am employed in the offices of Keats, McFarland & Wilson LLP by a member of the Bar of this Court at whose direction the service mentioned herein below was made.

On November 16, 2007, I served the following document(s):

1. ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OF ANA ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER
2. DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OF ANA ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

upon counsel and interested parties named below or on an attached service list, by placing a true and correct copy thereof in an envelope addressed as follows:

**See Attached Service List**

[XX] **BY MAIL:** I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Beverly Hills, California. I am readily familiar with the practice of Keats McFarland & Wilson LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after deposit for mailing in affidavit.

[ ] **BY FACSIMILE:** The above referenced document(s) was transmitted by facsimile transmission and the transmission was reported as completed and without error. Pursuant to C.R.C. 2009(i), I either caused, or had someone cause, the transmitting machine to properly transmit the attached documents to the facsimile numbers shown on the service list.

[ ] **BY OVERNIGHT DELIVERY:** I am readily familiar with the practice of Keats McFarland & Wilson LLP for collection and processing of documents for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express, UPS, DHL or the like, or by Express Mail via the United States Postal Service.

[ ] **BY EMAIL OR ELECTRONIC TRANSMISSION:** I caused the document(s) to be sent to the persons at the e-mail addresses as listed above and/or on the attached Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 16, 2007, at Beverly Hills, California.

Janice L. Trayes

Keats McFarland & Wilson
720 Wilshire Blvd.
Penthouse
Beverly Hills, CA
90212

# SERVICE LIST

**CARTER BRYANT v. MATTEL, INC.**
*Case No.: CV 04 – 09049 SGL (RNBx)*
*Consolidated with Case Nos. CV 04-9059 and CV 05-2727*

| Counsel | Tele/Fax/E-Mail | Party |
|---|---|---|
| **QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP**<br>865 South Figueroa Street, 10th Fl.<br>Los Angeles, CA 90017<br><br>Dylan Proctor, Esq. | Tel: 213.443.3000<br>Fax: 213.443.3100<br><br>Email: dylanproctor@quinnemanuel.com | MATTEL, INC. |
| **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP & AFFILIATES**<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90017<br><br>Thomas J. Nolan, Esq. | Tel: 213.687.5250<br>Fax: 213.621.5250<br>Email: tnolan@skadden.com | MGA |
| **KEKER & VAN NEST, LLP**<br>710 Sansome Street<br>San Francisco, CA 94111<br><br>Michael H. Page, Esq. | Tel: 415.391.5400<br>Fax: 415.397.7188<br>Email: mpage@kvn.com | CARTER BRYANT |