QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br><u>Hon. Stephen G. Larson</u><br><br>REPLY IN SUPPORT OF MATTEL, INC.'S *EX PARTE* APPLICATION TO (1) COMPEL DEPOSITIONS OF ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER<br><br>[Local Rule 7-19]<br><br>Hearing Date: November 20, 2007<br>Time: 10:00 a.m.<br>Place: Courtroom 1<br><br>Discovery Cut-Off: January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

07209/2298470.2

REPLY ISO MATTEL'S *EX PARTE* APPLICATION TO COMPEL DEPOSITIONS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

I.   MATTEL IS ENTITLED TO *EX PARTE* RELIEF .......................................... 2

    A.   Mattel Will Suffer Irreparable Prejudice Absent Relief ......................... 2

    B.   Mattel Has Taken Reasonable Steps to Avoid Imposing Undue Burden or Expense on the Witnesses. ...................................................... 8

    C.   Mattel Is Not At Fault ............................................................................ 10

CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Dart Indus. Co. v. Westwood Chem. Co.,
 649 F.2d 646 (9th Cir. 1980) .................................................................................. 10

Gonzales v. Google, Inc.,
 234 F.R.D. 674 (N.D. Cal. 2006) ............................................................................ 10

In re Yassai,
 225 C.R. 478 (Bkrtcy. C.D. Cal. 1998) ..................................................................... 8

**Statutes**

Fed. R. Civ. P. Rule 30(b)(6) .............................................................................. 5, 7, 8

Fed. R. Civ. P. Rule 45 ......................................................................................... 8, 10

**Preliminary Statement**

The oppositions filed by defendants and the witnesses confirm why Mattel is entitled to *ex parte* relief. The witnesses, who are represented by MGA's counsel, cancelled their previously scheduled October and November depositions because of the two stays that MGA obtained as a result of conflicts with its own counsel. But for the stays, Mattel already would have deposed these witnesses and commenced with necessary follow-up discovery. As matters currently stand, however, Mattel is at risk of losing its right to obtain follow up discovery once the witnesses finally appear because of the stays that defendants and the witnesses now try to exploit. And that is so even assuming they will appear at all, which is uncertain in light of the witnesses' refusal to obligate themselves to sit for deposition even on the dates they now offer. These witnesses should be ordered to sit for deposition. Moreover, Mattel needs relief to avoid being prejudiced by the stays, through an order either requiring them to attend deposition promptly or modifying the Scheduling Order to preserve Mattel's ability to take follow up discovery.[1]

The witnesses assert that Mattel has not shown prejudice because it has not provided specific examples of the follow up discovery it will require once these depositions take place. Yet, as Bryant himself acknowledges, depositions inevitably lead to additional lines of discovery, especially depositions of witnesses with unique, central knowledge such as Marlow, Cloonan and Hatch-Leahy. Mattel scarcely can identify with precision what new lines of inquiry will be opened by these witnesses' testimony until they are deposed. That is the point: Mattel needs to

---

[1] Notably, the witnesses provide no explanation for their refusal to stipulate that they will appear on the belated dates they have offered, presumably because there is only one reason for it: to reserve their ability to pull the plug at the last minute, thus further prejudicing Mattel. Defendants have repeatedly promised that their witnesses would appear on scheduled dates, only to unilaterally cancel their depositions at the last minute.

1  take the depositions to identify this discovery.  That is precisely why the depositions
2  need to take place soon, or, in the alternative, why Mattel should be granted leave to
3  take follow up discovery after the phase one cutoff.  Notably, no one genuinely
4  suggests that Mattel will have adequate time before the cutoff to take follow up
5  discovery if these depositions are delayed until the offered dates.

6  Bryant contends that Mattel must apply to reopen discovery (which he
7  will then oppose) when and if any additional discovery after the cutoff becomes
8  necessary.  In so arguing, Bryant confirms that defendants seek to take advantage of
9  the stays to unfairly saddle Mattel and the Court with yet more motion practice over
10 obvious discovery rights, and highlights the prejudice that Mattel will suffer absent
11 relief.  But for the stays, Mattel would have already taken the depositions of these
12 witnesses -- the last of them was scheduled to take place on November 14, 2007 --
13 and begun follow-up discovery.  Mattel should not be required to bring more
14 motions and meet higher standards for re-opening discovery months from now
15 merely to obtain discovery that it has been, and indisputably still is, entitled to under
16 normal discovery standards.  Unless relief is granted, the effect of the stays will be
17 to prejudice Mattel by burdening it with the heightened showing that Bryant
18 demands -- a showing Mattel unquestionably would *not* have to make had the stays
19 never been obtained by MGA.

20 Mattel respectfully requests that its application be granted.

21 **I.    MATTEL IS ENTITLED TO *EX PARTE* RELIEF**

22 As the witnesses acknowledge, Mattel is entitled to *ex parte* relief if it
23 shows prejudice and lack of fault.  Mattel has shown both.

24 **A.    Mattel Will Suffer Irreparable Prejudice Absent Relief**

25 Without relief, Mattel is at risk of losing its rights to take appropriate
26 follow up discovery after the depositions of Ms. Marlow, Ms. Cloonan and
27
28

1  Ms. Hatch-Leahy.  Especially with witnesses as important as these, that is
2  irreparable prejudice.[2]

3  No one disputes that these witnesses all have unique knowledge and
4  information bearing on central issues.  That is indisputable.  Ms. Hatch-Leahy, a
5  former Mattel employee, worked on the Bratz doll sculpt when Carter Bryant was
6  still employed by Mattel, billing her services to MGA.[3]  Ms. Cloonan, also a former
7  Mattel employee, assisted Bryant in his Bratz pitch to MGA while both Bryant and
8  Ms. Cloonan were employed by Mattel.[4]  Ms. Marlow introduced Bryant to MGA,
9  was present at his first Bratz pitch to MGA and has since been paid millions of
10 dollars by both Bryant and MGA in connection with Bratz.[5]

11  The witnesses attempt to fault Mattel for failing to give examples of
12 anticipated follow-up discovery.  They cite no law so requiring, and the reason they
13 are unable to support such a Catch-22 proposition is obvious.  Mattel cannot know
14 with particularity what new lines of inquiry will be opened by these witnesses'
15 testimony *until they are deposed*.  Given the centrality and uniqueness of the
16 witnesses' roles, it is reasonable to expect that their testimony will lead to additional
17 lines of discovery, including the identification of new witnesses.  Indeed, as Bryant
18 concedes, "any deposition" in this case "will inevitably suggest additional

---

[2]  Mattel also obviously could not pursue this matter via a regularly noticed motion.  Mattel seeks an Order requiring the witnesses to appear for deposition on or before December 7, 2007.  If this motion were noticed according to regular procedures, the motion would be moot by the time it were heard.

[3]  Deposition of Carter Bryant dated November 4, 2004 ("Bryant Depo.") at 70:24-71:12, Proctor Dec., Exh. 34; see also Deposition of Paula Garcia dated May 24, 2007 ("Garcia Depo.") at 255:1-17, 629:5-18, Proctor Dec., Exh. 32.

[4]  Bryant Depo. at 289:22-292:25, Proctor Dec., Exh. 34.

[5]  Garcia Depo. at 186:19-187:16, 242:19-243:17, 264:21-266:20, 270:22-271:1, Proctor Dec., Exh. 32; see also Deposition of Richard Irmen dated September 28, 2007 at 270:20-271:7, Proctor Dec., Exh. 36.

discovery."[6] Even assuming the witnesses actually appear and provide complete testimony on the currently-offered dates, that will leave less than three weeks, in Ms. Marlow's case, and about a month and a half in the cases of Ms. Cloonan and Ms. Hatch-Leahy, between the depositions and the phase one fact discovery cutoff. Had the depositions proceeded when scheduled previously -- i.e., but for the stays -- they would all have taken place two or more months prior to the cutoff. That is why, if the witnesses are not ordered to appear in the time frame requested, the Court should extend Mattel's time to take follow up discovery to two months after the last of the depositions, to avoid undue prejudice from the stay.

Notably, no one genuinely suggests Mattel will have time to take follow up discovery if the depositions do not take place until the offered dates. To the contrary, defendants tout that Mattel will *not* be able to do so. Thus, Bryant argues that Mattel should have to make a separate showing to re-open discovery after the cut-off to obtain any additional discovery raised by the witnesses' testimony.[7] The effect of this would be, unquestionably, to prejudice Mattel, despite MGA's assurances to the Court during the October 15, 2007 Status Conference that the stay would cause no prejudice.[8]

Moreover, the witnesses' refusal to stipulate to the belated deposition dates they have offered further enhances the risk of undue prejudice to Mattel.[9]

---

[6] Carter Bryant's Joinder in Nonparty Opposition to Mattel, Inc.'s *Ex Parte Application* to (1) Compel Depositions of Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow or (2) in the Alternative, Modify the Scheduling Order, dated November 16, 2007 ("Bryant's Opp."), at 1.

[7] Bryant's Opp. at 2.

[8] Transcript of the October 15, 2007 Status Conference at 12:3-5, Proctor Dec., Exh. 2.

[9] Supp. Proctor Dec., at ¶ 4; see also Letter from Dylan Proctor to Larry McFarland, dated November 15, 2007, Proctor Dec., Exh. 1; Letter from McFarland to Proctor, dated November 14, 2007, Proctor Dec., Exh. 30.

Mattel has no assurance that the witnesses will actually appear on the offered dates, or at all absent an order. Given the prior delays of the witnesses and the further delays they now seek, and given defendants' prior conduct in this case, there is a not insignificant prospect that MGA or the witnesses will unilaterally cancel the depositions shortly before the dates arrive, requiring last-minute motion practice just before the cutoff. Defendants and the witnesses ignore this issue nearly altogether. Thus, they do not (and cannot) deny that Bryant, Larian and Garcia all unilaterally cancelled their scheduled deposition dates after considerable delays and ultimately refused to appear absent Court Orders. MGA has followed the same pattern of last-minute cancellations with several of its other designated Rule 30(b)(6) witnesses as well.[10] Tellingly, the witnesses have provided no explanation for their refusal to stipulate to the deposition dates they themselves proposed.[11]

---

[10] For example, after the Court issued its May 16, 2007 Order compelling MGA to produce its Rule 30(b)(6) witnesses, MGA initially designated and offered dates for some of its witnesses. However, after Mattel accepted those proposed dates, MGA then cancelled the depositions of Bryan Armstrong, Becky Harris, and Shelly Shibata less than a week before the depositions were scheduled to take place without providing any alternative dates. See Declaration of Michael T. Zeller in Support of Mattel's Motion to Enforce the Court's Order of May 16, 2007, to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6), and for Sanctions, dated June 29, 2007, at ¶¶ 2-3 & Exh. 1. MGA did the same as to Schuyler Bacon, its designee on Topics 4, 5, 10, and 14 in Mattel's Third Notice, canceling the scheduled deposition on these topics shortly before the date. See Letter from Jon Corey to Amman Kahn, dated September 14, 2007 at 2, attached as Exhibit 2 to the Supplemental Declaration of B. Dylan Proctor in Support of Mattel, Inc.'s *Ex Parte* Application, dated November 19, 2007 ("Supp. Proctor Dec."); see also Email from Amman Khan to Jon Corey, dated September 25, 2007, Supp. Proctor Dec., Exh. 3. Mattel still has not obtained testimony on these topics.

[11] Although the witnesses' counsel asserts that he objected to certain recitals in a draft stipulation from October 1, 2007, he does not deny that he refused outright to stipulate to these dates, including the day before Mattel filed its *ex parte*. Supp. Proctor Dec., at ¶ 4; see also Letter from Dylan Proctor to Larry McFarland, dated
(footnote continued)

Likewise, Mattel has no assurance that the witnesses will provide complete testimony when they do eventually appear. Even after defendants have eventually complied with Orders to produce their witnesses, defendants have then proceeded to pull their witnesses out of depositions with questions pending, instruct them not to answer based on non-privilege grounds and otherwise obstruct the deposition process, requiring Mattel to seek judicial relief in order to complete the depositions. For example, at the deposition of Carter Bryant defense counsel improperly coached Bryant, pulled him from the room with pending questions and gave 47 improper instructions not to answer.[12] At Ms. Garcia's deposition, MGA interrupted the deposition by walking out of the deposition with the witness mid-question and improperly instructed her not to answer questions about non-privileged matters, again forcing Mattel to seek judicial intervention to get proper responses to those questions.[13] Certainly if the conduct at the witnesses' depositions even

---

November 13, 2007, Proctor Dec., Exh. 29. This was not about recitals, it was about not wanting to bind the witnesses to appear.

[12] See Discovery Master's March 7, 2007 Order Granting in Part and Denying in Part Mattel's Motion to Overrule Instructions Not to Answer During the Deposition of Carter Bryant at ¶1 and Attachment A, attached as Exhibit 15 to the Declaration of B. Dylan Proctor in Support of Motion of Mattel for Additional Time and/or to Reopen the Deposition of Carter Bryant for All Purposes and to Overrule Additional Instructions Not to Answer at the Deposition, dated August 1, 2007.

[13] See Declaration of Michael Zeller in Support of Mattel, Inc.'s Motion to Enforce the Court's Order, to Compel, and for Sanctions, dated June 14, 2007, at ¶17. As another example, during the deposition of Kerri Brode, one of MGA's Rule 30(b)(6) designees, MGA's counsel improperly instructed Ms. Brode on a blanket basis not to answer any questions about documents other than those specifically listed by Bates number in the text of the Topics because they were supposedly irrelevant, forcing Mattel to adjourn the deposition to obtain a ruling from the Court. See Deposition of Kerri Brode dated January 19, 2007, at 58:2-12, 61:14-62:8, attached as Exhibit 7 to the Declaration of Michael Zeller in Support of Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6), and for Sanctions, dated April 25, 2007. The deposition on these
     (footnote continued)

approaches defendants' prior misconduct, Mattel will need more than a few weeks prior to the discovery cut-off in order to seek relief, complete their depositions, and then conduct follow-up discovery.

Finally, defendants suggest that Mattel will not be prejudiced even if it cannot take follow up discovery because Mattel has already taken all the discovery it is entitled to, asserting that Mattel has served 30 subpoenas, 800 requests for production and 3,000 requests for admissions, and taken 20 depositions. The argument is neither relevant nor correct. First, defendants' statistics include all Mattel discovery on all subjects, including on defendants' dozens of asserted affirmative defenses, MGA's own claims and MGA's thefts of Mattel trade secrets. At issue with Marlow, Hatch-Leahy and Cloonan, in contrast, is Mattel's right to take discovery of key players involved in the origins of Bratz and Bryant's work with MGA while employed by Mattel. Tellingly, defendants nowhere argue, let alone show, that Mattel has already received all of the discovery that it is entitled to on those central matters, from these witnesses or any other source. Defendants' assertions in gross about the amount of discovery Mattel has taken to date have no bearing on whether Mattel has a right to take discovery on issues raised by these witnesses' testimony at deposition.

Second, defendants not only misstate some Mattel discovery numbers,[14] but exaggerate as separate discovery identical requests propounded by Mattel on different parties. For example, Mattel has served a large number of requests for admissions, but that is only because there are multiple parties on the other side and Mattel has, at times, sought to obtain identical admissions from each

---

topics did not resume for another two and a half months. See Mattel, Inc.'s Motion to Enforce the Court's Order, to Compel, and for Sanctions, dated June 15, 2007 at 15-16.

[14] For example, Mattel has taken at most 18 depositions, not 20.

to avoid arguments by defendants that they are not bound by each other's answers. The number of non-identical requests for admissions is far lower. In any case, it is to be expected that the parties will vigorously pursue discovery in a case such as this. Indeed, defendants have served at least 60 subpoenas for non-party discovery (twice the alleged Mattel number) and 1055 requests for production of documents, including a set served just a few days ago (much more than the alleged Mattel number), and taken at least 17 depositions of persons in their individual capacities or as Rule 30(b)(6) designees.[15] Defendants also have propounded more than 140 Rule 30(b)(6) topics on Mattel, which is far more than what Mattel has propounded on MGA.[16] But none of this truly bears on this motion. Mattel has a right to follow up discovery, and is at risk of losing it. Defendants' arguments about other discovery in the case are irrelevant.

### B. Mattel Has Taken Reasonable Steps to Avoid Imposing Undue Burden or Expense on the Witnesses.

The witnesses accuse Mattel of failing to take reasonable steps to avoid imposing undue burden or expense on them. This position is untenable.

First, the witnesses have not met their "burden of establishing that compliance with [their] subpoenas would be 'unreasonable and oppressive.'" In re Yassai, 225 C.R. 478, 483-484 (Bkrtcy. C.D. Cal. 1998) ("A party moving to quash on the grounds of undue burden pursuant to [Rule 45] bears the burden of proof . . . the burden is a heavy one") (citations omitted). Though the witnesses make general allegations that they will be unduly burdened or incur undue expenses if they are ordered to testify before December 7, 2007, as the subpoenas require, they do not offer any reasonable explanation or description of such burden and expense. Ms. Leahy does not even attempt to explain why she cannot appear before December 7.

---

[15] Supp. Proctor Dec., at ¶ 9.
[16] Supp Proctor Dec. at ¶ 9.

Likewise, Ms. Cloonan fails to give any reason why she cannot make childcare arrangements for any day before December 7, but can do so on December 14.

For her part, Ms. Marlow fails to give any reason why she cannot appear for deposition during the two weeks between November 15 (the expiration of the stay) and late November -- the time, according to counsel, when she will leave for her trip to Brazil. But even beyond this, any inconvenience to Ms. Marlow in having to make new arrangements -- which is surely minor in comparison to the millions of dollars she has earned from Bratz and her central role in Bryant's work with MGA while he was employed by Mattel -- is solely of MGA's and Ms. Marlow's making. If she could not conveniently make herself available for months after the October 15, 2007 conference when MGA first asked for the stay, MGA was obligated to mention this salient fact to Mattel and the Court, particularly given MGA's proclamations that Mattel would suffer no prejudice from the stay. And, of course, Ms. Marlow's counsel could have mentioned it at any time in response to Mattel's multiple requests for deposition dates before the opposition to this motion, which is the first time he ever made such a claim, especially since he knew in advance that MGA would be seeking to extend the stay at the October 31, 2007 hearing.[17] Had either MGA or the witnesses' counsel come clean, an exception to the stay to take Ms. Marlow's deposition could have been intelligently discussed with the Court. Having instead chosen to remain mute until now, MGA and the witness cannot use a belated excuse of scheduling inconvenience to justify the severe prejudice that Mattel will suffer from being denied the opportunity to timely depose her.

Finally, even if the witnesses had established burden (and they have not), even the authority on which they rely makes clear that a third party is not

---

[17] See Letter from Larry McFarland to Michael Zeller, dated October 26, 2007, Proctor Dec., Exh. 23.

excused from complying with a subpoena simply because it will face substantial burden or expense. Gonzales v. Google, Inc., 234 F.R.D. 674, 680 (N.D. Cal. 2006). Instead, under Rule 45, "a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." Id. Here, the witnesses do not dispute that they possess crucial information regarding the conception, creation, and development of Bratz -- core issues in this litigation. Instead, they strangely assert that Mattel's reference to the importance of their testimony is irrelevant, even though the relevance of the discovery sought is a key factor to consider when, as here, a party attempts to avoid compliance with a subpoena. Id.[18]

### C. Mattel Is Not At Fault

The current exigency has been created solely by the conduct of the witnesses and MGA. At the outset, the witnesses and defendants misconstrue the source of Mattel's prejudice. It is from the stays that MGA obtained on October 16 and 31, 2007. Those stays caused the witnesses to cancel their depositions, which would have been taken by now but for the stays. The witnesses now refuse to appear for another month and, in the case of Ms. Marlow, two months, impinging on Mattel's ability to take follow up discovery before the phase one cutoff. Mattel has in no way contributed to that situation. The history prior to MGA's request for a stay, on which the witnesses focus, is largely beside the point here.

---

[18] The witnesses also cite Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646 (9th Cir. 1980). That case is inapplicable here. In Dart, the court did not quash the third party subpoena because of undue burden. Instead, it quashed the subpoena because the plaintiff seeking discovery had signed a release agreement with the third party, including a release of any right to engage in discovery against the third party. Dart, 649 F.2d at 648.

In any case, the witnesses do not deny that Mattel has been seeking available dates for their depositions since June 2007, nearly six months ago.[19] Instead of offering dates, the witnesses offered excuses. As shown by the correspondence and Mattel's *ex parte*, the witnesses' counsel delayed providing Mattel with <u>any</u> specific dates for over three months.[20] As has been Mattel's practice, Mattel extended the witnesses the courtesy of attempting to solicit available dates instead of simply serving them with subpoenas.[21] Although defendants and the witnesses now fault Mattel for extending that courtesy, they do not disclose that the parties entered into an agreement this fall that deposition dates would generally be agreed to in advance, rather than simply noticed.[22] In all events, in mid-June, in response to Mattel's requests, counsel promised to provide specific dates for the depositions of the witnesses.[23] On June 28, 2007, counsel wrote to Mattel stating that he would ask his clients about "possible dates," evidencing that as of that time, he had not inquired with his clients to offer dates.[24] Mattel followed up over the following weeks and, in September, counsel then stated again that he would

---

[19] Letter from Susan Wines to Larry McFarland, dated June 1, 2007, Proctor Dec., Exh. 3; <u>see also</u> Letter from Susan Wines to Larry McFarland, dated June 7, 2007, Proctor Dec., Exh. 4.

[20] <u>See</u> Letter from Larry McFarland to Susan Wines, dated September 21, 2007, Proctor Dec., Exh. 12.

[21] Supp. Proctor Dec., at ¶ 5.

[22] <u>Id.</u>

[23] Letter from Susan Wines to Larry McFarland, dated June 25, 2007, Proctor Dec., Exh. 5.

[24] Letter from Larry McFarland to Susan Wines, dated June 28, 2007, Proctor Dec., Exh. 6.

1 contact his clients about possible dates, indicating that he still was yet to inquire as
2 to his clients' availability.[25]

3 Counsel attempts to justify these delays with a lengthy discussion of
4 side issues such as document production and forensic computer review.[26]  Under
5 counsel's reasoning, as long as Ms. Marlow, Ms. Cloonan and Ms. Hatch-Leahy
6 refused to produce documents, counsel had an excuse to delay their depositions.
7 That gave counsel every reason not to produce the documents -- which is what he
8 did.  Indeed, it took months to obtain compliance with Mattel's subpoenas duces
9 tecum, and even now the witnesses remain out of compliance.[27]  None of Mattel's
10 subpoenas justified the witnesses' delay in providing Mattel with deposition dates.
11 For example, the witnesses' counsel informed Mattel on June 4, 2007 that he
12 thought Mattel's subpoenas regarding the witnesses' bank records were overbroad.
13 The parties promptly resolved the issue on June 13, 2007.[28]  The week it took to
14 resolve that issue does not account for the witnesses' months of delays.[29]

---

[25] Letter from Susan Wines to Larry McFarland, dated September 4, 2007, Proctor Dec., Exh. 7; Letter from Larry McFarland to Susan Wines, dated September 7, 2007, Proctor Dec., Exh. 8.
[26] See Opposition at 2-3.
[27] Among other things, the witnesses have redacted the documents significantly, including extensive redactions to Ms. Hatch-Leahy's planner/calendar entries from June - October 2000, a key time period.
[28] Letter from Larry McFarland to Susan Wines, dated June 4, 2007, McFarland Dec., Exh. 4; see also Letter from Susan Wines to Larry McFarland, dated June 13, 2007, McFarland Dec., Exh. 5.
[29] Likewise, counsel used his clients' refusal to produce their hard drives for inspection as another excuse for delay.  For example, on September 7, 2007, counsel represented that the forensic review of the witnesses' hard drives could not take place until Mattel provided a list of search terms that the expert would use.  Letter from Larry McFarland to Susan Wines, dated September 7, 2007, Proctor Dec., Exh. 8. Mattel provided counsel with that list on September 13, 2007.  Letter from Susan Wines to Larry McFarland, dated September 13, 2007, Supp. Proctor Dec., Exh. 4. Nonetheless, in a September 21, 2007 letter, counsel again claimed that the
(footnote continued)

The delays that have caused the current exigency were caused by the stays that MGA demanded, beginning on October 15, 2007, and the witnesses' and defendants' subsequent attempts to exploit those stays to the prejudice of Mattel. Mattel should not pay the price for their tactics. Mattel has bent over backward trying to accommodate the witnesses for nearly six months now. It is now at risk of serious prejudice. The Court should compel the witnesses to appear for deposition on or before December 7, 2007 or, in the alternative, modify the Scheduling Order to extend Mattel's time to take discovery based on the testimony of these witnesses to two months after their depositions are completed.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant its *ex parte* application.

DATED:  November 19, 2007              QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ B. Dylan Proctor
B. Dylan Proctor
Attorneys for Plaintiff
Mattel, Inc.

---

inspections of Ms. Cloonan's and Ms. Halpern's computers could not take place until Mattel provided him with a list of search terms. Letter from Larry McFarland to Susan Wines, dated September 21, 2007, Proctor Dec., Exh. 12.