# EXHIBIT 1

COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    Michael T. Zeller (Bar No. 196417)
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017
   Telephone:   (213) 443-3000
4  Facsimile:   (213) 443-3100

5  Attorneys for Plaintiff
   Mattel, Inc.

6

7

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 2 7 2004

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
        SUE GABB

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF LOS ANGELES

10

11  MATTEL, INC., a Delaware corporation,     )   CASE NO.  BC314398
                                              )
12                                            )
            Plaintiff,                        )   COMPLAINT FOR:
13                                            )
                                              )   (1)  BREACH OF CONTRACT;
14            v.                              )   (2)  BREACH OF FIDUCIARY
                                              )        DUTY;
15                                            )   (3)  BREACH OF DUTY OF
   CARTER BRYANT, an individual; and          )        LOYALTY;
16  DOES 1 through 10, inclusive,             )   (4)  UNJUST ENRICHMENT; AND
                                              )   (5)  CONVERSION
17                                            )
            Defendants.                       )
18                                            )
                                              )
19

20

21

22

23

24

25

26

27

28

07209/579342.1

COMPLAINT

EXHIBIT 1 PAGE 9

1    Plaintiff Mattel, Inc. ("Mattel") brings this action against defendants Carter

2    Bryant ("Bryant") and Does 1 through 10 (all defendants being collectively referred to as

3    "defendants") and alleges as follows:

4

5                                    <u>Parties</u>

6

7           1.    Mattel is a corporation organized and existing under the laws of the

8    State of Delaware and has its principal place of business in El Segundo, California.

9           2.    Mattel is informed and believes, and on that basis alleges, that defendant

10   Bryant is an individual currently residing in Springfield, Missouri.

11          3.    The true names and capacities of defendants sued herein as Does 1

12   through 10, inclusive, are unknown to Mattel, which therefore sues said defendants by such

13   fictitious names. Mattel will amend this Complaint to allege their true names and capacities

14   when the same are ascertained.

15          4.    Mattel is informed and believes, and on that basis alleges, that at all

16   times relevant herein, defendants, and each of them, were acting in concert and active

17   participation with each other in committing the wrongful acts alleged herein, and were the

18   agents of each other, and in doing the things alleged herein, each defendant was acting

19   within the course and scope of his, her or its agency and was subject to and under the

20   supervision of, and was acting with the knowledge of, his, her or its co-defendants.

21

22                              <u>Jurisdiction and Venue</u>

23

24          5.    During the time of the acts complained of herein, Bryant was employed

25   by Mattel in, and was a resident of, Los Angeles County. Bryant's contracts with Mattel that

26   are at issue in this action were executed, performed and breached by Bryant in Los Angeles

27   County. In addition, defendants committed the tortious conduct alleged herein while

28   physically located in Los Angeles County, and Mattel felt the effects of Bryant's breach and

07209/579342.1

-2-

COMPLAINT

EXHIBIT 1 PAGE 10

1   defendants' other wrongful acts in Los Angeles County.   Accordingly, this Court has

2   personal jurisdiction over defendants.

3         6.   Venue is proper pursuant to Code of Civil Procedure §§ 393 and 395(a),

4   as the causes of action arose in Los Angeles County, the contractual obligations at issue were

5   incurred, were to be performed and were breached by Bryant in Los Angeles County, and

6   Bryant does not currently reside in California.

7

8                       Factual Background

9

10         7.   Mattel is a long standing and successful independent manufacturer and

11   marketer of toys, dolls, games and stuffed toys and animals.  Mattel was founded in 1945 by

12   Elliot and Ruth Handler and Harold "Matt" Mattson.  The name of the company was created

13   by incorporating the names of two of its founders, "MATT-son" and "EL-liot."  Originating

14   from the Handlers' garage in Southern California, the company greatly expanded its

15   operations following World War II and soon began to thrive as its reputation for producing

16   high-quality toys spread.  During the next several decades, Mattel became world famous for

17   producing high-quality products at reasonable prices.  Today, some of Mattel's most famous

18   brands include BARBIE, HOT WHEELS, MATCHBOX and FISHER-PRICE.

19         8.   Critical to Mattel's success, and to the livelihood of its employees, is

20   Mattel's ability to design and develop new products.  Mattel invests many millions of dollars

21   in product design and development annually, and it introduces hundreds of new products

22   each year.  In El Segundo, California alone, Mattel maintains a 180,000 square-foot design

23   center that houses more than 850 designers, sculptors, painters and other artists, whom

24   Mattel pays to work exclusively and full-time to create the products that Mattel sells and on

25   which Mattel's business depends.

26         9.   Defendant Bryant was employed by Mattel from September 1995

27   through April 1998, and then again from January 1999 through October 2000, as a product

28   designer at Mattel's design center in El Segundo, California.

07209/579342.1

-3-

COMPLAINT

EXHIBIT 1 PAGE 11

1      10.   On January 4, 1999, upon starting his second term of employment by
2   Mattel, and as a condition of and in consideration for his employment, Bryant executed an
3   Employee Confidential Information and Inventions Agreement (the "Employee
4   Agreement"). Among other things, Bryant agreed that he would not, without Mattel's
5   express written consent, "engage in any employment or business other than for [Mattel], or
6   invest in or assist (in any manner) any business competitive with the business or future
7   business plans of [Mattel]." Bryant further acknowledged that he held a position of trust
8   with Mattel. In addition, Bryant assigned to Mattel all rights, title and interest in
9   "inventions," including without limitation "designs," that he conceived or reduced to practice
10   during his employment by Mattel. A true and correct copy of Bryant's Employee Agreement
11   with Mattel is attached as Exhibit A.

12      11.   Also on January 4, 1999, Bryant executed Mattel's Conflict of Interest
13   Questionnaire (the "Conflict Questionnaire"). Among other things, Bryant certified in the
14   Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor
15   of Mattel in the prior twelve months and had not engaged in any business venture or
16   transaction involving a Mattel competitor that could be construed as a conflict of interest.
17   Bryant specifically agreed that he would immediately notify his supervisor of any change
18   in his situation that would cause him to change any of the foregoing certifications. The only
19   conflict disclosure that Bryant made on the Conflict Questionnaire (or at any time
20   subsequently) concerned freelance work that is unrelated to the conduct alleged herein. A
21   true and correct copy of the Conflict Questionnaire executed by Bryant is attached as
22   Exhibit B.

23      12.   In late November 2003, Mattel learned that Bryant had secretly aided,
24   assisted and worked for a Mattel competitor, including without limitation by entering into
25   an agreement with the competitor, during the time Bryant was employed by Mattel pursuant
26   to the above-referenced agreements and was being paid by Mattel as a product designer.
27   Bryant's agreement with the competitor obligated Bryant to provide product design services
28   to the competitor on a "top priority" basis. Bryant's agreement also provided, among other

1  things, that Bryant would receive royalties and other consideration for sales of products on
2  which Bryant provided aid or assistance; that all work and services furnished by Bryant to
3  the competitor under the agreement purportedly would be considered "works for hire"; and
4  that all intellectual property rights to preexisting work by Bryant purportedly would be
5  assigned to the competitor.  In addition, while Bryant was employed by Mattel, Bryant and
6  the other defendants converted, misappropriated and misused Mattel property and resources
7  for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor.

8          13.     During the time that he was employed by Mattel and thereafter, Bryant
9  concealed these actions from Mattel, including without limitation by failing to notify his
10 supervisor of his conflict of interest regarding the competitor and by making affirmative
11 misrepresentations to Mattel management upon his departure from Mattel.  Because of
12 Bryant's acts of concealment and his misrepresentations to Mattel, Mattel had no reason to
13 suspect that Bryant had worked for the competitor while still employed by Mattel until late
14 November 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's
15 agreement with the competitor and saw that the date of the agreement predated Bryant's
16 departure from Mattel.

17         14.     As a consequence, Bryant breached his contracts with Mattel and
18 violated his duty of loyalty and his fiduciary duties to Mattel; the other defendants have
19 unlawfully aided and abetted his violation of such duties; and each of the defendants has
20 been unjustly enriched and engaged in acts of conversion.

21
22                          FIRST CLAIM FOR RELIEF
23                              (Breach of Contract)
24
25         15.     Mattel repeats and realleges each and every allegation set forth in
26 paragraphs 1 through 14, above, as though fully set forth at length.
27         16.     Pursuant to his Mattel Employment Agreement, and for good and
28 valuable consideration, Bryant agreed that he would not, without Mattel's express written

07209/579342.1

-5-

1  consent, engage in any employment or business other than for Mattel or assist in any manner

2  any business competitive with the business or future business plans of Mattel during his

3  employment with Mattel.  Pursuant to his Mattel Employment Agreement, Bryant further

4  assigned to Mattel all right, title and interest in "inventions," including without limitation

5  "designs," that he conceived or reduced to practice during his employment by Mattel.  In

6  addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as

7  disclosed, he had not worked for any competitor of Mattel and had not engaged in any

8  business venture or transaction involving a Mattel competitor that could be construed as a

9  conflict of interest.  Bryant further promised that he would notify his superior immediately

10  of any change in his situation that would cause him to change any of the foregoing

11  certifications or representations.

12       17.    The Employment Agreement and the Conflict Questionnaire are valid,

13  enforceable contracts, and Mattel has performed each and every term and condition of the

14  Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

15       18.    Bryant materially breached the foregoing contracts with Mattel, in that,

16  among other things, he secretly aided, assisted and worked for a Mattel competitor during

17  his employment with Mattel, without the express written consent of Mattel.

18       19.    As a consequence of Bryant's breach, Mattel has suffered and will in

19  the future continue to suffer damages in an amount to be proven at trial.  Such damages

20  include, without limitation, the amounts paid by the competitor to Bryant during his Mattel

21  employment; the amounts paid by the competitor to Bryant as a result of the work he

22  performed for the competitor during his Mattel employment; the amount that Mattel paid

23  Bryant during the time he wrongfully worked for the competitor; the value of information

24  and intellectual property owned by Mattel which Bryant provided to the competitor; the

25  value of the benefits the competitor obtained from Bryant during the time he was employed

26  by Mattel; and the value of the benefits the competitor obtained from Bryant as a result of

27  the work he performed for the competitor during his Mattel employment.

28

07209/579342.1

-6-

COMPLAINT

**EXHIBIT 1 PAGE 14**

20.     Furthermore, Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies." Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

### SECOND CLAIM FOR RELIEF

(Breach of Fiduciary Duty)

21.     Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 20, above, as though fully set forth at length.

22.     Bryant held a position of trust and confidence with Mattel. In his position, Bryant had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of his job assignments and duties. In his position, Bryant also represented Mattel in its dealings with third parties and, in his actions in the course and scope of his employment with Mattel, was an agent of Mattel. Bryant confirmed his relationship of trust with Mattel in the Employee Agreement. Bryant thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests or that would deprive Mattel of any opportunities, profit or advantage which Bryant might bring to Mattel.

23.     Bryant breached his fiduciary duty to Mattel in that, while employed by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into an agreement with a Mattel competitor. As alleged

1   above, Bryant also breached the aforementioned duty by using Mattel property and resources

2   for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3          24.     The other defendants, acting with full knowledge of Bryant's obligations

4   to Mattel,  aided and abetted Bryant in such conduct.

5          25.     As a direct and proximate result of defendants' wrongful conduct,

6   Mattel has incurred damages in an amount to be determined at trial.

7          26.     Defendants acted with malice, fraud and oppression, and in conscious

8   disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9   against defendants in an amount to be determined at trial.

10          27.     Furthermore, defendants' conduct has caused, and unless enjoined will

11   continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12   money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel

13   is entitled to an order restraining further breach of Bryant's fiduciary duty to Mattel and/or

14   restraining defendants from continuing to benefit from such breach.

15

16                          THIRD CLAIM FOR RELIEF

17                          (Breach of Duty of Loyalty)

18

19          28.     Mattel repeats and realleges each and every allegation set forth in

20   paragraphs 1 through 27, above, as though fully set forth at length.

21          29.     As an employee of Mattel, Bryant owed a duty of undivided loyalty to

22   Mattel, his employer. Pursuant to this duty, Bryant could not compete with Mattel or assist

23   a competitor of Mattel during his employment with Mattel.  Pursuant to this duty, Bryant

24   was required to always give preference to Mattel's business over his own, similar interests

25   during the course of his employment with Mattel.

26          30.     Bryant breached his duty of loyalty to Mattel in that, while employed

27   by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including

28   without limitation by entering into an agreement with a Mattel competitor.  As alleged

-8-

COMPLAINT

**EXHIBIT 1 PAGE 16**

1   above, Bryant also breached the aforementioned duty by using Mattel property and resources

2   for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3       31.    The other defendants, acting with full knowledge of Bryant's obligations

4   to Mattel, aided and abetted Bryant in such wrongful conduct.

5       32.    As a direct and proximate result of defendants' wrongful conduct,

6   Mattel has incurred damages in an amount to be determined at trial.

7       33.    Defendants acted with malice, fraud and oppression, and in conscious

8   disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9   against defendants in an amount to be determined at trial.

10       34.    Furthermore, defendants' conduct has caused, and unless enjoined will

11   continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12   money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13   is entitled to an order restraining further breach of Bryant's duty of loyalty to Mattel and/or

14   restraining defendants from continuing to benefit from such breach.

15

16   <u>FOURTH CLAIM FOR RELIEF</u>

17   (Unjust Enrichment)

18

19       35.    Mattel repeats and realleges each and every allegation set forth in

20   paragraphs 1 through 34, above, as though fully set forth at length.

21       36.    Defendants, by the aforementioned conduct, unfairly used and diverted

22   Mattel property, resources and opportunities for the benefit of, and to aid and assist,

23   themselves, all without authorization by or payment to Mattel for the same. Defendants have

24   been unjustly enriched as a result.

25       37.    Mattel is entitled to an award of all such amounts by which defendants

26   have been unjustly enriched in an amount to be determined at trial.

27

28

-9-

COMPLAINT

EXHIBIT 1 PAGE 17

1   38. Defendants acted with malice, fraud and oppression, and in conscious

2 disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages

3 against defendants in an amount to be determined at trial.

4   39. Furthermore, defendants' conduct has caused, and unless enjoined will

5 continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

6 money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel

7 is entitled to an order restraining defendants from any further unjust enrichment.

8

9         FIFTH CLAIM FOR RELIEF

10          (Conversion)

11

12   40. Mattel repeats and realleges each and every allegation set forth in

13 paragraphs 1 through 39, above, as though fully set forth at length.

14   41. Mattel was entitled to, inter alia, Bryant's exclusive services and the

15 exclusive ownership of his inventions as a Mattel product designer.  However, Bryant

16 provided such services, and purported to grant rights to such inventions, to a competitor

17 during the time of his exclusive Mattel employment.  All such services and the inventions

18 and work product resulting from such services, including without limitation ideas, concepts,

19 rights, designs, proprietary information, and other intellectual property and intangible

20 property created by Bryant during the term of the aforesaid agreements, were the property

21 of Mattel.  Such services and property were provided by Bryant to others, including

22 defendants, and used by them.

23   42. Defendants wrongfully converted Mattel property and resources by

24 asserting ownership thereto and by appropriating and using Mattel's property and resources

25 for their own benefit and gain and for the benefit and gain of others, without the permission

26 of Mattel.

27

28

-10-

COMPLAINT

EXHIBIT 1 PAGE 18

43.     As a direct and proximate result of defendants' wrongful conversion of Mattel's property and resources, Mattel has incurred damages.  Mattel is entitled to recover compensatory damages against defendants in an amount to be determined at trial.

44.     Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

45.     Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining defendants from further conversion of Mattel property and resources and/or restraining defendants from continuing to benefit from such conversion.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Mattel hereby respectfully requests that this Court:

A.     Award Mattel its damages;

B.     Order defendants to disgorge to Mattel all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by defendants as a result of the conduct described herein;

C.     Order specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

D.     Enter an injunction restraining defendants, and all those acting in concert or participation with them, from engaging in further wrongful conduct and/or from continuing to benefit from their wrongful conduct;

E.     Order defendants to pay Mattel the full cost of this action and Mattel's reasonable attorneys' fees;

F.     Award Mattel punitive damages in an amount sufficient to punish defendants and deter such misconduct in the future; and

07209/579342.1

-11-

EXHIBIT 1 PAGE 19

1         G.     Award such other and further relief as this Court deems just and proper.

2

3  DATED:  April 27, 2004         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

4

5

6                    By _____

                          Michael T. Zeller

7                          Attorneys for Plaintiff

                          Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint-ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my rights, title and interest in such Inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause; and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement constitute a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature _____

Employee Name (print)   CARTER H. BRYANT

Date   01/04/99

MATTEL, INC.

By _____
Signature

Name of Witness (print)   TERESA NEWCOMB

# EXHIBIT A PAGE 13

EXHIBIT 1 PAGE 21

# CONFLICT OF INTEREST QUESTIONNAIRE

BRYANT, CARTER H.        PROJECT DESIGNER
Name (Last, First, M.I.)                    Job Title                    Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term 'you' should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest means** direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

- ○ YES ● NO  1. Have you owned, directly or indirectly, any interest in a Mattel supplier?
- ○ YES ● NO  2. Have you owned, directly or indirectly, and interest in a Mattel competitor?
- ○ YES ● NO  3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?
- ● YES ○ NO  4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?
- ● YES ○ NO  5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?
- ○ YES ● NO  6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?
- ○ YES ● NO  7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?
- ○ YES ● NO  8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?
- ○ YES ● NO  9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

4, 5, freelance design & artwork in 1998,
from appx. 5/98 - 11/98 for the Ashton Drake
galleries.

I certify that I have read Mattel policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

_Carter Bryant_                    01/04/98
Signature                              Date

# EXHIBIT B PAGE 14

EXHIBIT 1 PAGE 22

# EXHIBIT 2

RECEIVED
DEC 0 7 2004

1  M. RANDALL OPPENHEIMER (S.B. #77649)
2  DIANA M. TORRES (S.B. #162284)
   O'MELVENY & MYERS LLP
3  400 South Hope Street
   Los Angeles, California 90071-2899
4  Telephone:  (213) 430-6000
   Facsimile:   (213) 430-6407

5
6  Attorneys for Applicant-Intervenor
   MGA ENTERTAINMENT, INC.

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  MATTEL, INC., a Delaware Corporation, | Case No. CV 04-9059 NM (RNBx) |
| 12                     Plaintiff, | **STIPULATION PERMITTING MGA TO INTERVENE AS A PARTY TO THIS ACTION** |
| 13       v. | |
| 14  CARTER BRYANT, an individual; and DOES 1 through 10, inclusive, | Hon. Nora Manella |
| 15 | |
| 16                     Defendant. | |

17

18

19

20

21

22

23

24

25

26

27

28

                              STIPULATION PERMITTING MGA TO
                              INTERVENE AS A PARTY

EXHIBIT 2 PAGE 23

1    WHEREAS, on April 27, 2004, Plaintiff Mattel, Inc. ("Mattel") filed suit

2    against Carter Bryant ("Bryant") and ten unnamed "Does" alleging breach of

3    contract, breach of the duty of loyalty, breach of fiduciary duty, conversion and

4    unjust enrichment.

5    WHEREAS, MGA, believes, at this time, that it has a significantly

6    protectable interest relating to the subject matter of the action, that the disposition

7    of the action may impair or impede MGA's ability to protect its interest absent

8    intervention, and that MGA's interest is not adequately represented by the existing

9    parties.

10    WHEREAS, Mattel is agreeable to the filing of the Answer in Intervention as

11    a procedural matter pursuant to this Stipulation, without waiver of, or prejudice to,

12    its rights, defenses or positions in this or any other action or to the Answer in

13    Intervention, including without limitation to Mattel's jurisdictional objections;

14    WHEREAS, Bryant is agreeable to the filing of the Answer in Intervention as

15    a procedural matter pursuant to this Stipulation, without waiver of, or prejudice to,

16    his rights, defenses or positions in this or any other action;

17    NOW THEREFORE, MGA, Mattel and Bryant hereby stipulate, subject to

18    this Court's approval, as follows:

19    1.    MGA may intervene as a party to this action; and

20    //

21    //

22    //

23    //

24    //

25    //

26    //

27    //

28    //

- 1 -

EXHIBIT 2 PAGE 24

1      2.    MGA shall be permitted to file its Answer in Intervention, lodged

2  concurrently with this Stipulation.

3

4        Dated:     December 3, 2004    O'MELVENY & MYERS LLP

5

6                                   By: _____

7                                     Diana M. Torres
Attorneys for Applicant-Intervenor
MGA ENTERTAINMENT, INC.

8

9        Dated:     December___, 2004    QUINN EMANUEL URQUHART

10                                         OLIVER & HEDGES LLP

11

12                                     By: _____

13                                     Michael T. Zeller
Attorneys for Plaintiff
MATTEL, INC.

14

15        Dated:     December___, 2004    LITTLER MENDELSON, P.C.

16

17                                     By: _____

18                                       Keith A. Jacoby
Attorneys for Defendant
CARTER BRYANT

19  IT IS SO ORDERED.

20

21        Dated:     December___, 2004

22                                     _____

23                                     Hon. Nora M. Manella
United States District Judge

24

25

26

27

28

EXHIBIT 2 PAGE 25

1       2.      MGA shall be permitted to file its Answer in Intervention, lodged

2    concurrently with this Stipulation.

3

4        Dated:        December___, 2004     O'MELVENY & MYERS LLP

5

6                                            By:_____
                                                  Diana M. Torres
7                                            Attorneys for Applicant-Intervenor
                                             MGA ENTERTAINMENT, INC.
8

9        Dated:        December___, 2004     QUINN EMANUEL URQUHART
                                             OLIVER & HEDGES LLP
10

11

12                                           By:_____
                                                  Michael T. Zeller
13                                           Attorneys for Plaintiff
                                             MATTEL, INC.
14

15       Dated:        December___, 2004     LITTLER MENDELSON, P.C.

16

17                                           By:_____
                                                  Keith A. Jacoby
18                                           Attorneys for Defendant
                                             CARTER BRYANT
19
     IT IS SO ORDERED.
20

21       Dated:        December___, 2004

22
                                             _____
23                                                Hon. Nora M. Manella
                                                  United States District Judge
24

25

26

27

28

- 2 -

EXHIBIT 2 PAGE 26

1     2.     MGA shall be permitted to file its Answer in Intervention, lodged

2  concurrently with this Stipulation.

3

4     Dated:     December____, 2004   O'MELVENY & MYERS LLP

5

6                       By:_____

7                           Diana M. Torres
                          Attorneys for Applicant-Intervenor
8                          MGA ENTERTAINMENT, INC.

9     Dated:     December____, 2004   QUINN EMANUEL URQUHART
                           OLIVER & HEDGES LLP
10

11

12                       By:_____

13                           Michael T. Zeller
                          Attorneys for Plaintiff
14                          MATTEL, INC.

15     Dated:     December 3, 2004   LITTLER MENDELSON, P.C.

16

17                       By:_____

18                           Keith A. Jacoby
                        Attorneys for Defendant
19                          CARTER BRYANT

  IT IS SO ORDERED.

20

21

22     Dated:     December____, 2004

23                       _____
                         Hon. Nora M. Manella
24                        United States District Judge

25

26

27

28

EXHIBIT 2 PAGE 27

1  M. RANDALL OPPENHEIMER (S.B. #77649)
   DIANA M. TORRES (S.B. #162284)
2  O'MELVENY & MYERS LLP
   400 South Hope Street
3  Los Angeles, California 90071-2899
   Telephone:  (213) 430-6000
4  Facsimile:  (213) 430-6407

5  Attorneys for Applicant-Intervenor
   MGA ENTERTAINMENT, INC.
6

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware          Case No. CV 04-9059 NM (RNBx)
    Corporation,
12                                     **MGA ENTERTAINMENT, INC.'S**
                   Plaintiff,          **ANSWER IN INTERVENTION TO**
13                                     **PLAINTIFF'S UNVERIFIED**
         v.                            **COMPLAINT**
14
    CARTER BRYANT, an individual;     Hon. Nora Manella
15  and DOES 1 through 10, inclusive,

16                 Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

LA2:730044

*3*                                    ANSWER IN INTERVENTION TO
                                       PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT 2 PAGE 28

1    As it has now become abundantly clear that its rights are directly at stake in
2    this action, MGA Entertainment, Inc. ("MGA") intervenes in this case as a
3    defendant.  Plaintiff Mattel, Inc. ("Mattel") filed suit against Carter Bryant
4    ("Bryant"), a design consultant for MGA, asserting, among other claims, that he
5    "wrongfully converted Mattel property" for his own benefit and "the benefit and
6    gain of others" and seeking both monetary and injunctive relief.  It is now evident
7    that Mattel's claims are based on Mattel's misguided theory that Bryant allegedly
8    converted intellectual property from Mattel and used it as the underlying work for
9    his own and MGA's benefit.  MGA reaches this conclusion in light of at least the
10   following:

11       (a)    Mattel's recent registration for an unreleased project created in
12              approximately 1999 that it now calls "Toon Teens," from which Mattel
13              has asserted in the press Bryant "borrowed liberally" for his work on
14              "Bratz," and which is also the subject of the declaratory relief action
15              that Bryant has filed;

16       (b)    the questioning of Bryant at his recent deposition focusing on the
17              creation and development of "Bratz;"

18       (c)    Mattel's recent efforts to subpoena third parties who worked on
19              MGA's "Bratz" products and have no information concerning Bryant's
20              employment relationship with Mattel; and

21       (d)    Mattel's recent attempts to assist those who have infringed MGA's
22              rights in other countries to prove (falsely) that MGA does not own the
23              copyrights to its "Bratz" products.

24   Indeed, Mattel's purported conversion claim is nothing more than a copyright claim
25   in disguise.  It is preempted by federal copyright law, accordingly, and must be
26   recast as a copyright claim under federal law.  This copyright action necessarily
27   implicates MGA's rights, as MGA owns all intellectual property rights in "Bratz."
28   While MGA denies that Mattel is entitled to rights in any of MGA's intellectual

LA2:730044                          - 1 - 4          ANSWER IN INTERVENTION TO
                                                     PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT 2 PAGE 29

1   property, including, without limitation, MGA's copyrights in the "Bratz" line of

2   products, MGA must now intervene in this action to defend its intellectual property

3   rights. Therefore Defendant in Intervention MGA, as answer to the Complaint

4   herein, admits, denies, and alleges as follows:

5       1.      Upon information and belief, MGA admits that Mattel is a corporation

6   organized and existing under the laws of the State of Delaware and has a place of

7   business in El Segundo, California. Except as so admitted, MGA is without

8   sufficient information to admit the allegations of ¶ 1, and on that basis denies the

9   same.

10      2.      MGA admits that defendant Bryant is an individual currently residing

11   in Springfield, Missouri.

12      3.      MGA is without sufficient information concerning either Mattel's

13   knowledge or the identities of the Doe Defendants, if any, to enable it to admit the

14   allegations of ¶ 3, and on that basis denies the same.

15      4.      MGA denies the allegations of ¶ 4.

16      5.      MGA denies the allegations of ¶ 5.

17      6.      MGA admits that Bryant does not currently reside in California and

18   that Los Angeles County is a proper venue for this action. Except as so admitted,

19   MGA denies the allegations of ¶ 6.

20      7.      MGA is without information to admit the specific allegations of ¶ 7

21   and on that basis denies the same, but admits that reports from Mattel and other

22   public sources make assertions similar to those alleged in ¶ 7.

23      8.      MGA is without information to admit the specific allegations of ¶ 8

24   pertaining to Mattel's operations, and on that basis denies the same, but admits that

25   Mattel has a large facility in El Segundo, California, in which Mattel employs a

26   number of people.

27      9.      MGA is without information to admit the specific allegations of ¶ 9

28   pertaining to Mattel's operations, and on that basis denies the same, but admits that

LA2:730044                         - 2 -   5          ANSWER IN INTERVENTION TO
                                                      PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT 2 PAGE 30

1  Bryant was employed by Mattel during two time periods.

2       10.   MGA is informed and on that basis admits that Bryant signed

3  documents during his employment at Mattel.  MGA alleges that Exhibit A speaks

4  for itself as to its contents.  MGA lacks information sufficient to enable it to

5  identify or authenticate Exhibit A and on that basis denies each and every allegation

6  in ¶ 10 purporting to describe the content of Exhibit A.  MGA further alleges that

7  the allegations in ¶ 10 purporting to describe the legal effect of Exhibit A consist of

8  legal argument and conclusions to which no response is required.

9       11.   MGA is informed and on that basis admits that Bryant signed

10  documents during his employment at Mattel.  MGA alleges that Exhibit B speaks

11  for itself as to its contents.  MGA lacks information sufficient to enable it to

12  identify or authenticate Exhibit B and on that basis denies each and every allegation

13  in ¶ 11 purporting to describe the content of Exhibit A.  MGA further alleges that

14  the allegations in ¶ 11 purporting to describe the legal effect of Exhibit B consist of

15  legal argument and conclusions to which no response is required.

16       12.   MGA admits that Bryant signed a contract with MGA on or about

17  October 4, 2000 that provided that Bryant would receive royalties in connection

18  with certain work to be performed by him thereafter under that agreement, and that

19  MGA would own all intellectual property rights in property for which Bryant

20  provided services, as well as in the work assigned thereunder by Bryant to MGA.

21  Except as so admitted, MGA denies the allegations of ¶ 12.

22       13.   MGA is without information sufficient to admit the allegations in ¶ 13

23  and on that basis denies the same.

24       14.   MGA denies the allegations of ¶ 14.

25       15.   In answer to ¶ 15, MGA repeats its answers to the allegations in

26  paragraphs 1 through 14, above.

27       16.   MGA is informed and on that basis admits that Bryant signed

28  documents during his employment at Mattel.  MGA alleges that any purported

EXHIBIT 2 PAGE 31

1    "Mattel Employment Agreement" and "Conflict Questionnaire" speak for

2    themselves as to their contents. MGA lacks information sufficient to enable it to

3    identify or authenticate the purported "Mattel Employment Agreement" and

4    "Conflict Questionnaire" and on that basis denies each and every allegation in ¶ 16

5    purporting to describe the contents of such documents. MGA further alleges that

6    the allegations in ¶ 16 purporting to describe the legal effect of any purported

7    "Mattel Employment Agreement" or "Conflict Questionnaire" consist of legal

8    argument and conclusions to which no response is required.

9        17.    MGA alleges that any purported "Mattel Employment Agreement" and

10   "Conflict Questionnaire" speak for themselves as to their contents. MGA lacks

11   information sufficient to enable it to identify or authenticate the purported "Mattel

12   Employment Agreement" and "Conflict Questionnaire" and on that basis denies

13   each and every allegation in ¶ 16 purporting to describe the contents of such

14   documents. MGA further alleges that the allegations in ¶ 16 purporting to describe

15   the legal effect of any purported "Mattel Employment Agreement" or "Conflict

16   Questionnaire" consist of legal argument and conclusions to which no response is

17   required. MGA is without sufficient information concerning Mattel's performance,

18   if any, and on that basis denies all allegations regarding the same.

19        18.    MGA denies the allegations of ¶ 18.

20        19.    MGA denies the allegations of ¶ 19 and affirmatively asserts that the

21   relief sought by Mattel in this paragraph indicates that Mattel's first cause of action

22   implicates federal copyright laws. To the extent that Mattel herein purports to set

23   forth the allegations in support of its first cause of action to substantiate a federal

24   copyright claim, these allegations are also expressly denied.

25        20.    MGA denies the allegations of ¶ 20 except that MGA alleges that any

26   purported "Employment Agreement" speaks for itself as to its contents. MGA

27   lacks information sufficient to enable it to identify or authenticate the purported

28   "Employment Agreement" and on that basis denies each and every allegation in ¶

EXHIBIT 2 PAGE 32

1   20 purporting to describe the contents of such document.  MGA further alleges that

2   the allegations in ¶ 20 purporting to describe the legal effect of any purported

3   "Employment Agreement" consist of legal argument and conclusions to which no

4   response is required.

5          21.    In answer to ¶ 21, MGA repeats its answers to the allegations in

6   paragraphs 1 through 20, above.

7          22.    MGA is without information sufficient to admit the allegations of ¶ 22,

8   and on that basis denies same except that MGA alleges that any purported

9   "Employee Agreement" speaks for itself as to its contents.  MGA lacks information

10  sufficient to enable it to identify or authenticate the purported "Employee

11  Agreement" and on that basis denies each and every allegation in ¶ 22 purporting to

12  describe the contents of such document.  MGA further alleges that the allegations in

13  ¶ 22 purporting to describe the legal effect of any purported "Employee

14  Agreement" consist of legal argument and conclusions to which no response is

15  required.

16         23.    MGA denies the allegations of ¶ 23 and affirmatively asserts that the

17  relief sought by Mattel in this paragraph indicates that Mattel's first cause of action

18  implicates federal copyright laws.  To the extent that Mattel herein purports to set

19  forth the allegations in support of its first cause of action to substantiate a federal

20  copyright claim, these allegations are also expressly denied.

21         24.    MGA denies the allegations of ¶ 24.

22         25.    MGA denies the allegations of ¶ 25.

23         26.    MGA denies the allegations of ¶ 26.

24         27.    MGA denies the allegations of ¶ 27.

25         28.    In answer to ¶ 28, MGA repeats its answers to the allegations in

26  paragraphs 1 through 27, above.

27         29.    MGA denies the allegations of ¶ 29.

28         30.    MGA denies the allegations of ¶ 30 and affirmatively asserts that the

LA2:730044                          - 5 -                  ANSWER IN INTERVENTION TO
                                                         PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT 2 PAGE 33

1   relief sought by Mattel in this paragraph indicates that Mattel's first cause of action
2   implicates federal copyright laws.  To the extent that Mattel herein purports to set
3   forth the allegations in support of its first cause of action to substantiate a federal
4   copyright claim, these allegations are also expressly denied.
5       31.    MGA denies the allegations of ¶ 31.
6       32.    MGA denies the allegations of ¶ 32.
7       33.    MGA denies the allegations of ¶ 33.
8       34.    MGA denies the allegations of ¶ 34.
9       35.    In answer to ¶ 35, MGA repeats its answers to the allegations in
10  paragraphs 1 through 34, above.
11      36.    MGA denies the allegations of ¶ 36 and affirmatively asserts that the
12  allegations in this paragraph indicate that Mattel's fourth cause of action implicates
13  federal copyright laws.  To the extent that Mattel herein purports to set forth the
14  allegations in support of its fourth cause of action to substantiate a federal copyright
15  claim, these allegations are also expressly denied..
16      37.    MGA denies the allegations of ¶ 37.
17      38.    MGA denies the allegations of ¶ 38.
18      39.    MGA denies the allegations of ¶ 39.
19      40.    In answer to ¶ 40, MGA repeats its answers to the allegations in
20  paragraphs 1 through 39, above.
21      41.    MGA denies the allegations of ¶ 41 and affirmatively asserts that the
22  allegations in this paragraph assert legal or equitable rights that are equivalent to
23  exclusive rights within the general scope of copyright protection and are, therefore,
24  expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be
25  recast as a federal question under copyright law.  To the extent that Mattel herein
26  purports to set forth the allegations in support of its fifth cause of action to support
27  a federal copyright claim, these allegations are also expressly denied.
28      42.    MGA denies the allegations of ¶ 42 and affirmatively asserts that the

EXHIBIT 2 PAGE 34

1   allegations in this paragraph assert legal or equitable rights that are equivalent to

2   exclusive rights within the general scope of copyright protection, which are

3   expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be

4   recast as a federal question under copyright law.  To the extent that Mattel herein

5   purports to set forth the allegations in support of its fifth cause of action to

6   substantiate a federal copyright claim, these allegations are also expressly denied.

7       43.    MGA denies the allegations of ¶ 43 and affirmatively asserts that the

8   allegations in this paragraph assert legal or equitable rights that are equivalent to

9   exclusive rights within the general scope of copyright protection, which are

10   expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be

11   recast as a federal question under copyright law.  To the extent that Mattel herein

12   purports to set forth the allegations in support of its fifth cause of action to

13   substantiate a federal copyright claim, these allegations are also expressly denied.

14       44.    MGA denies the allegations of ¶ 44.

15       45.    MGA denies the allegations of ¶ 45.

16

17                      **AFFIRMATIVE DEFENSES**

18   MGA asserts the following affirmative defenses:

19                   **FIRST AFFIRMATIVE DEFENSE**

20       1.    Plaintiff's Complaint and each purported claim for relief therein is

21   preempted by the Federal Copyright Act.

22                 **SECOND AFFIRMATIVE DEFENSE**

23       2.    Plaintiff's Complaint and each purported claim for relief therein fail to

24   state facts sufficient to constitute a claim for relief.

25                  **THIRD AFFIRMATIVE DEFENSE**

26       3.    Plaintiff's Complaint and each purported claim for relief therein are

27   barred by the equitable doctrine of unclean hands.

28

LA2:730044                              - 7 -   *10*          ANSWER IN INTERVENTION TO
                                                     PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT 2 PAGE 35

### FOURTH AFFIRMATIVE DEFENSE

4.     Plaintiff's Complaint and each purported claim for relief therein are barred by the equitable doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE

5.     Plaintiff's Complaint and each purported claim for relief therein are barred by the equitable doctrine of estoppel.

### SIXTH AFFIRMATIVE DEFENSE

6.     Plaintiff's Complaint and each purported claim for relief therein are barred by the equitable doctrine of laches.

### SEVENTH AFFIRMATIVE DEFENSE

7.     Plaintiff's Complaint and each purported claim for relief therein are barred by the equitable doctrine of consent.

### EIGHTH AFFIRMATIVE DEFENSE

8.     Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred by the applicable statutes of limitations, including California Code of Civil Procedure sections 337, 339, 343 and 338(c).

### NINTH AFFIRMATIVE DEFENSE

9.     Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred because no Defendant owed a legal duty to Plaintiff or, if any legal duty arose, it was not breached by any Defendant.

### TENTH AFFIRMATIVE DEFENSE

10.     Without admitting, and specifically denying, that any Defendant owed any duty to Plaintiff, any duty or obligation, contractual or otherwise, which Plaintiff claims was owed by any Defendant has been fully performed, satisfied and/or discharged.

### ELEVENTH AFFIRMATIVE DEFENSE

11.     Plaintiff's Complaint and each purported claim for relief therein are barred because each Defendant has complied fully with his and/or its obligations, if

LA2:730044                    - 8 -   // 

ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT 2 PAGE 36

1  any, under all applicable laws.

## TWELFTH AFFIRMATIVE DEFENSE

3  12.   Plaintiff's Complaint and each purported claim for relief therein are
4  barred because Plaintiff has failed to exercise reasonable diligence in properly
5  mitigating its damages, if any in fact were suffered.

## THIRTEENTH AFFIRMATIVE DEFENSE

7  13.   Plaintiff's Complaint and each purported claim for relief therein are
8  barred because the alleged losses or harms sustained by Plaintiff, if any, resulted
9  from causes other than any act or omission by any Defendant.

## FOURTEENTH AFFIRMATIVE DEFENSE

11  14.   Plaintiff's Complaint and each purported claim for relief therein, or
12  some of them, are barred because to the extent Plaintiff has suffered any harm, and
13  Defendant in Intervention denies that Plaintiff has suffered any harm, it is due to
14  Plaintiff's own acts and omissions.

## FIFTEENTH AFFIRMATIVE DEFENSE

16  15.   Plaintiff's Complaint and each purported claim for relief therein, or
17  some of them, are barred because any alleged contract between Plaintiff and
18  Defendant Bryant fails for lack of consideration, is vague and uncertain, and
19  therefore is void, voidable and/or unenforceable.

## SIXTEENTH AFFIRMATIVE DEFENSE

21  16.   Plaintiff's Complaint and each purported claim for relief therein, or
22  some of them, are barred because any breaches of an alleged contract or duty,
23  which Defendant in Intervention denies, are excused by Plaintiff's acts or
24  omissions.

## SEVENTEENTH AFFIRMATIVE DEFENSE

26  17.   To the extent Plaintiff's Complaint and any purported claim for relief
27  therein, or some of them, seek the remedy of injunctive relief, that remedy is barred
28  because Plaintiff's remedies at law are adequate and any alleged harms, and

LA2:730044

-9- /2

ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT 2 PAGE 37

1   Defendant in Intervention denies that there are harms, are not irreparable.

2           **EIGHTEENTH AFFIRMATIVE DEFENSE**

3       18.    Plaintiff's Complaint and each purported claim for relief therein

4   cannot be maintained because any duties or obligations, contractual or otherwise,

5   which Plaintiff claims are owed by Defendant Bryant, are contrary to applicable

6   law.

7           **NINETEENTH AFFIRMATIVE DEFENSE**

8       19.    Plaintiff is barred from recovering punitive and/or exemplary damages

9   from Defendant or Defendant in Intervention ("Defendants") because an award of

10   such damages would violate the United States and/or California Constitutions, and

11   applicable case law.

12           **TWENTIETH AFFIRMATIVE DEFENSE**

13       20.    Defendant in Intervention does not presently know all facts concerning

14   the conduct of Plaintiff sufficient to state all affirmative defenses at this time.

15   Defendant in Intervention will seek leave of Court to amend this Answer in

16   Intervention should it later discover facts demonstrating the existence of additional

17   affirmative defenses.

18

19       **WHEREFORE,** Defendant in Intervention prays for judgment as follows:

20       1.    Plaintiff's Complaint shall be dismissed in its entirety with prejudice;

21       2.    Plaintiff shall take nothing by its action against Defendant;

22       3.    Defendant in Intervention shall be awarded its costs of suit and

23   attorneys' fees incurred in this matter (to the extent permitted by applicable law);

24   and

25       4.    Defendant in Intervention shall be awarded such other further relief as

26   may be deemed just and proper.

27

28

LA2:730044                   - 10 - *13*        ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

**EXHIBIT 2 PAGE 38**

Dated:        December___, 2004

O'MELVENY & MYERS LLP

By:_____
         Diana M. Torres
Attorneys for Defendant-in-Intervention
MGA ENTERTAINMENT, INC.

LA2:730044

LA2:730044

- 11 -   14

ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT 2 PAGE 39

## PROOF OF SERVICE

1           I, Deresa Gade, declare:

2           I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On December, 3, 2004, I served the within documents:

**MGA ENTERTAINMENT INC.'S STIPULATION TO INTERVENE AS A PARTY ANSWER IN INTERVENTION, AND CERTIFICATE OF INTERESTED PARTIES**

[X]    by transmitting via facsimile machine the document(s) listed above to the fax number(s) set forth below on this date. The outgoing facsimile machine telephone number in this office is (213) 430-6407.

[X]    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Douglas A. Wickham
Keith Jacoby
Littler Mendelson
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Tel: (310) 553-0308
Fax: (310) 553-5583

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel: (213) 443-3000
Fax: (213) 443-3100

       I declare under penalty of perjury under the laws of the United States that the above is true and correct.

       Executed on December 3, 2004, at Los Angeles, California.

_____
Deresa Gade

EXHIBIT 2 PAGE 40