# EXHIBIT 4

CALENDARED RECEIVED

JUN 23 2006

**PRIORITY SEND & ENTER JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No. CV 05-02727 SGL(RNBx) Date: June 19, 2006

Title: MGA ENTERTAINMENT, INC. -v- MATTEL, INC.

PRESENT: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes
Courtroom Deputy

None Present
Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:

None present

ATTORNEYS PRESENT FOR DEFENDANTS:

None present

PROCEEDINGS: MINUTE ORDER (IN CHAMBERS) RE CONSOLIDATION

On May 16, 2006, this Court issued orders to show cause why the following three cases should not be consolidated: Bryant v. Mattel, Inc., CV 04-09049; Mattel, Inc. v. Bryant, CV 04-09059; MGA Entertainment, Inc. v. Mattel, Inc., CV 05-02727. All parties have responded, and the Court has reviewed those responses. Because the Court has determined that these actions involve a number of common issues of law and fact, the Court orders that these three cases be consolidated for all purposes.

Mattel's request that the Court stay MGA Entertainment, Inc. v. Mattel, Inc., CV 05-02727, pending the outcome of the other two cases. The Court denies this request.

For ease of record keeping, the Court **ORDERS** that all further documents and proceedings occur under Bryant v. Mattel, 04-09049 SGL, and that Case Number CV 04-09059 and 05-02727 be **CLOSED** by the Clerk. Counsel are directed to file all further documents under Case Number CV 04-09049. The first paragraph of any document filed with the Court shall inform the Court to which case(s) the document relates.

IT IS SO ORDERED.

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ✓ Send ✓
Entered ___ Closed ___
JS-5/JS-6 ✓ JS-2/JS-3 ___
Scan Only ___ Docketed on CM ✓
THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP 77(d)
JUN 20 2006
EASTERN DIVISION

Initials of Deputy Clerk jh

MINUTES FORM 90
CIVIL -- GEN

#47

# EXHIBIT 5




THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

Plaintiff,

v.

MATTEL, INC.,

Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

142

1-12

resources in creating and/or developing the BRATZ dolls or whether he continued to develop his BRATZ design while still working in Mattel's employ. In either event, the rights to the BRATZ dolls could become the property of Mattel, either through infringement or through operation of the agreements noted above. The case was later removed to this Court and was assigned the case number CV-04-9059. MGA Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v. Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual property, i.e., the Bratz creations, were decided in the absence of MGA").

In the interim, Bryant filed a declaratory judgment action in this Court, seeking for the Court to declare that his BRATZ doll creations did not infringe Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at 3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel products,' . . . the substance of his allegations all address the product 'Toon Teens'"). The declaratory judgment action was assigned the case number CV-04-9049.

MGA then filed an action against Mattel in this Court broadening the scope of the controversy beyond that concerned with the ownership rights to the BRATZ doll line. MGA's complaint asserted various Lanham Act claims and their California state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of competition-by-intimidation and serial copycatting of MGA's products." (Compl. ¶ 7). In essence, although the prior actions were concerned with ownership in the rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there had been unlawful efforts to block the marketing of those rights in the BRATZ dolls. MGA's complaint did make mention of other products that were affected by Mattel's alleged predatory business practices, but by far the largest portion of its complaint concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

line of BRATZ dolls.[1]

By Order dated June 19, 2006, the Court consolidated all three cases "for all purposes" as they "involve[d] a number of common issues of law and fact." As the Court later noted in its August 10, 2006, Order: "At its heart, this case asks the question: Who owns the rights to the Bratz dolls?" Resolution of this question lies at the heart of or, at the very least, affects many of the other claims set forth in each of the three respective cases. For instance, even though the allegations in 05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot many of those allegations. It is hard to imagine how it is unlawful for a company to thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel owned the rights to the BRATZ dolls, many of the allegations in the 05-2727 complaint would become moot. That said, such consolidation did not do away with the distinctions that do exist between the three cases. As the Court highlighted in its consolidation order, when either party files a pleading in the case, "the first paragraph of [that] document . . . shall inform the Court to which case(s) the document relates."

On July 18, 2006, the Court dismissed Bryant's declaratory judgment action, 04-9049, finding there existed no reasonable apprehension of an imminent copyright infringement claim being filed against him by Mattel based on Mattel's Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The Court's Order was predicated entirely upon counsel for Mattel's representation during oral argument that it "will not maintain that Bratz infringes the copyright in Toon Teens." Owing to this representation, the Court, in dismissing the declaratory judgment action, made clear that any future "claim by Mattel of copyright

---

[1] That the marketing of the BRATZ dolls lies at the heart of the issues between the rival doll makers in the 05-2727 case is best illustrated by the Court's discussion of those allegations in its August 26, 2005, Order, Granting in Part and Denying Part Mattel's Motion to Strike portions of MGA's complaint.

infringement based on the Toon Teens product is barred by counsel's representation." July 18, 2006, Order at 4.

Presently before the Court is Mattel's request for leave to file an amended complaint in the 04-9059 action. The complaint broadens considerably the nature of the action from its genesis in state court. Whereas before the complaint simply sought to litigate alleged contractual and fiduciary breaches by Bryant while in the employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay claim to the BRATZ doll line), the amended complaint adds five more defendants and nine new legal claims, alleging a wide range of commercial disputes between the rival doll makers that spans three countries. For instance, the amended complaint now contains RICO claims, a misappropriation of trade secrets claim, and various aiding and abetting claims all stemming from allegations that MGA cherry-picked certain high-ranking Mattel executives in foreign markets (many also named as defendants in the amended complaint) or designers (namely, Bryant), and then enticed or encouraged those same individuals to steal various trade and proprietary secrets (be it sales plans, sales projections, customer profiles, or intellectual property) from Mattel and hand them over to MGA before going to work at MGA.

Moreover, the amended complaint expands upon the existing breaches of contract and fiduciary duty claims in the original complaint by expanding the universe of former employees (namely, the cherry-picked executives) to whom those claims now apply.

Finally, Mattel now makes plain what was always lurking in its original complaint — a copyright claim, but one directed not only to Bryant but also to MGA, MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian. Moreover, Mattel characterizes its copyright claim somewhat differently from that at issue in Bryant's declaratory relief action: "The Amended Complaint does not include a claim for infringement of copyrights in Toon Teens, but rather

infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end, Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various BRATZ doll design drawings penned by Bryant.

A. ANALYSIS

Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." With no consent to Mattel's proposed filing proffered by MGA and Bryant, determining whether to grant Mattel leave to file an amended complaint is gauged by looking to the familiar formulation of factors set forth by the Supreme Court in Forman v. Davis:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

371 U.S. 178, 182 (1962).

MGA and Bryant offer the following reasons for denying Mattel leave to amend: (1) Mattel has long known of the factual predicates underlying its copyright and intentional interference claims but delayed in asserting them; (2) the proposed amendment to add the copyright claim and the intentional interference claims (against the new defendants) are futile because they are barred by the applicable statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel because of its prior public disavowal of an intent to assert such a claim; and (4) MGA and Bryant would incur undue prejudice were the copyright claim added to the

suit because of alleged spoilation of evidence issues involving Mattel's ZEUS computer system used by doll designers at Mattel and its e-mail system. None of these arguments are persuasive.

1. Awareness of Factual Predicate for Copyright and Intentional Interference Claims

MGA argues that Mattel has long known about the factual predicate for its recently added copyright claim, observing that, "[o]ver four years ago, in August 2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant created the project that became the 'Bratz' dolls — and worked with MGA to 'steal' that project — while still employed at Mattel." (MGA Opp. at 9). Similarly, MGA argues that Mattel has long known of the factual predicate for its intentional interference claim with respect to Bryant's contract given that, "[b]y Mattel's own admission, it learned in November 2003 — more than three years ago — that Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at Mattel." (MGA Opp. at 11-12).

At the outset it must be observed that "[m]ere delay in proffering an amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by, 485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988). Seizing upon this point of law, Mattel argues that "only in . . . cases" when "granting leave would require discovery to be reopened after summary judgment motions have been filed" has the Ninth Circuit found the denial of leave "justified" based on the passage of time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases from the Ninth Circuit finding that, if a "party seeking amendment knows or should know of the facts underlying the amendment when the original complaint is filed, the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)). And, recently, the Ninth Circuit upheld the denial of leave to amend based on the passage of time

even though the requested leave to amend was tendered before the time, as set forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired. See AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946 (9th Cir. 2006). The Ninth Circuit observed that, even when a request for leave to amend is timely under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless still deny the request based on any of the Forman factors. Id. at 951-52. The Ninth Circuit then noted that the issue of untimeliness (regardless of whether the amendment is tendered "within the period of time allotted by the district court in a Rule 16 scheduling order") in seeking to amend can constitute a justification for denying leave to amend if "the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." Id. at 953. Toward that end, the Ninth Circuit observed that "an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable." Id. In this regard, the Ninth Circuit in Dialysist was unpersuaded by the fact that, even though the moving party had known of the facts prompting the amendment for a long period of time, there still remained eight more months of discovery for the parties to marshal facts against the allegations raised by the amended pleading: "Even though eight months of discovery remained, requiring the parties to scramble and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was tainted, would have unfairly imposed potentially high, additional litigation costs on Dialysist West that could have easily been avoided had AmerisourceBergen pursued its 'tainted product' theory in its original complaint or reply." Id. Thus, absent "a satisfactory explanation" for the delay in amending the complaint, the Court is well within its rights to deny leave to amend. Id.

Mattel proffers the following reasons for taking the time that it did before presenting its amended complaint: (1) Acting out of an abundance of caution to its obligations under Rule 11 to present "factual contentions [that] have evidentiary support," Mattel waited until its claims were better supported by evidence

uncovered in discovery; and (2) the delay in the proceedings caused by "the year-long stay and the parties' prior jurisdictional disputes" have left the case still in its "nascent stage." (Reply to MGA Opp. at 2, 4).

The first reason is not well-founded. Rule 11 specifically allows parties to aver factual allegations that "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery" so long as the party makes clear in its pleading that its factual contentions on those points are with the caveat that they are based on a good faith belief that further discovery would unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule 11 did not stand in the way of Mattel averring the factual contentions it now claims it "merely suspected" as being the case based on the limited information before it. Mattel could have gone ahead and made such suspected factual allegations so long as it caveated those claims with the declaration that it reasonably believed that those allegations would be borne out by further discovery. Perhaps the time by which Mattel could have reasonably believed such allegations would be borne out by further discovery occurred after the dates noted by MGA, but it is hard to fathom that such materialization took three or four years to occur.

The second reason would have some merit to it but for the fact that the information that alerted (or should have alerted) Mattel to the existence of its now asserted copyright and intentional interference claims was brought to Mattel's attention well before the case was stayed on May 20, 2005. The stay, therefore, did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the stay does not explain why Mattel waited nearly six months after the stay was lifted on May 16, 2006, to present those claims now.

All of that being said, the one thing that gives the Court pause in denying leave based on the tardiness in Mattel's presentation is the lack of any evidence that MGA or Bryant have been prejudiced by the delay. Delay unconnected to some showing of prejudice, be it prejudice to the parties or disruption in judicial

management of the case, does not suffice to deny granting leave to amend. The Ninth Circuit has noted that, "where a defendant is on notice of the facts contained in an amendment to a complaint, there is no serious prejudice to defendant in allowing the amendment" even if it is made tardily. Sierra Club, 813 F.2d at 1493. Indeed, the denial of leave was proper in the Dialysist case not simply because of the length of the delay, but because the delay itself was "detrimental" in that it would entail the opposing party to have "unfairly" incurred "potentially high, additional litigation costs" that could have been avoided if the moving party had made clear its intentions earlier. 465 F.3d at 953.

Here, as well demonstrated in Mattel's papers, it is readily apparent from the pleadings filed by MGA and Bryant in this case that both have been aware for some time of the factual predicates now underlying Mattel's copyright claim and intentional interference claim. (See MGA Opp. at 5 ("As Bryant and MGA suspected at the time of filing — and Mattel now concedes by conduct — those deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all along")(emphasis added)). The parties have engaged in meaningful discovery regarding many of the facts touched upon by these new claims, be it tracking down experts in various forensic fields or taking depositions of various of the key players to those claims. In point of fact, in their papers filed with this Court before this present motion, both Bryant and MGA have made it abundantly clear that they have long suspected that a copyright infringement claim was in the offing as evidenced by Bryant's filing of the declaratory judgment action and MGA's intervention in the 05-9059 matter to protect its rights to the BRATZ dolls. Similarly, MGA and Bryant have been on notice to the facts comprising the interference claim concerning Bryant's contract as evidenced by the identity of the individuals who have been deposed by Mattel, as well as the nature of the questions posed and the testimony proffered at those depositions. MGA's argument that, with the amendments, it faces the prospect of defending "against stale claims" owing to faded memories and

loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13), is diminished by the fact that (no doubt owing to the sophistication of all counsel involved) discovery on these very issues have been proceeding apace by both sides long before Mattel filed its proposed amendments. This is simply not a case where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by allowing the proposed amendments; much of those costs have already been borne by the parties for some time.

2. Spoilation of Evidence

MGA next argues that Mattel's delay in bringing the amended complaint has caused it prejudice as, in the interim, critical pieces of evidence have been or are suspected of having become lost. For instance, MGA asserts that Mattel's Rule 30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that, "although Mattel identified and segregated its most relevant backup tapes available for Zeus, Mattel allowed its tape backup system to expire the database for those backup tapes, thereby eliminating all information about what was actually stored on those backup tapes." (MGA Opp. at 9-10). Information on the Zeus computer system is critical because of Mattel's assertion that part of its copyright claim rests on Bryant's exposure to Mattel development programs. (First Am. Compl. ¶ 26(a)). As explained by MGA: "[C]oncept data and drawings created by [Mattel] design center personnel are stored on Zeus. Thus, the electronic documents stored on Zeus – which should include the metadata showing who created, edited and accessed Mattel's concept drawings and designs – during the time Bryant worked in the design center at Mattel is vitally important to defending against Mattel's claims." (MGA Opp. at 14). MGA's argument is neither an accurate characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure claim.

Ms. Marine did not testify that the information on the backup tapes (some fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

that could restore the information still found on those tapes:

Q. So if you wanted to restore that 2002 backup tape[s] then, how would you go about doing that?

. . . .

A. You need the hardware so if we don't have the hardware — if [the technology used by the tape is] DLT we don't have the hardware and you've got to buy it and – well, first you have to find a place to put it with adequate power which we don't have in the design center. You need to have a tape library. You need to have the tape drives that carried those tapes. You need a server that has the capability to – that's big enough to handle all of the hardware. You need the software – the license for the backup software[, Net Backup]. You need the disk space to restore it to and then you have to start reading in all those tapes.

Q. You said that you don't have that in the design center. Do you have that hardware anywhere else in the company?

A. DLT? No, no.

Q. At what point did you get rid of the hardware?

A. Once the last backups — DLT backups expired so it would have been a couple years ago probably.

(Decl. Diana Torres, Ex. K at 118-119).

The above testimony clearly denotes the difficulty in restoring what was on Mattel's Zeus computer system during the relevant time frame, but it certainly does not demonstrate that the information on those backup tapes has been "eliminated" or forever lost. Undoubtedly it will be a costly endeavor to recover that information (not to mention to later search and sort through it); but to argue, as MGA does, that the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the information on the Zeus backup tapes has been present for some time (maybe since 2004 or perhaps even earlier). This is important because it undermines MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

it to suffer prejudice it otherwise would not have faced if the amendments were brought sooner. Such prejudice has been present for years, and Mattel's failure to bring its amended complaint sooner would not have changed this situation.

Similarly, MGA's point that access to what was on the Zeus computer system is vital in demonstrating that Bryant was not exposed to or otherwise did not hack the system to steal other designers work is diminshed to some extent by the fact that Bryant himself testified that he did not use the Zeus computer system and was "pretty much computer illiterate" while employed at Mattel. Admittedly, the ability to point to information on the Zeus system backup tapes to prove that Bryant did not access other designers drawings or to prove the date those drawings were created by those other designers would be useful evidence to negate Mattel's factual claims. Nonetheless, such evidence still would not discount other avenues outside of the Zeus computer system by which Mattel could seek to prove that Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant saw drawings of the same posted on other designers' cubicles.

MGA next surmises that Mattel's e-mail records have disappeared, not because it has any proof on that point, but simply because Mattel has postponed the deposition of the individual most knowledgeable of Mattel's e-mail records until after the hearing on Mattel's motion for leave to amend. (MGA Opp. at 10). Speculation of spoilation does not suffice. That MGA's argumentation on this point is nothing more than speculation is best exhibited by the evidence it has proffered in support of its argument: "[I]f the sole retained backup for Zeus is no longer available, it is not hard to imagine that Mattel's electronic mail archives are similarly out of reach." (MGA Opp. at 15 (emphasis added)). MGA then makes much of a deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his inbox would be automatically deleted if they had remained there for more than a certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this acknowledgment that Mattel has an "automatic email deletion system" that has

compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14). Noticeably absent from MGA's argument is any evidence that the e-mails so deleted from a Mattel employee's inbox are forever lost or, as is far more likely, whether such information remains or is otherwise archived on some backup file on Mattel's computer system. Absent concrete proof that spoilation has occurred, nothing in MGA's argument forms a basis for denying Mattel its requested leave to amend.

3. Statute of Limitations

MGA next argues that Mattel's copyright and intentional interference claims are futile as both are barred by the applicable statute of limitations. This argument was pressed emphatically at oral argument. With respect to the copyright claim, MGA argues that the applicable statute of limitations is three years, with the limitations period accruing from when a party has knowledge of a violation or when a reasonably diligent person would have been put on inquiry of the infringement. (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir. 1994)). MGA argues that Mattel was put on notice about its copyright claim in August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA, the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's current copyright claim stale.

The problem with MGA's analysis is it fails to take into account the relations-back principles found in Rule 15(c), which provides that "[a]n amendment of a pleading relates back to the date of the original pleading when "the claim . . . in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading," or if such relation back is otherwise permissible by the state "law that provides the statute of limitations applicable to the action." By MGA's own admission Mattel's copyright claim arises out of the same conduct or transaction contained in the original complaint filed in April, 2004, well within the

applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations [contained in the original complaint] underlie the copyright infringement and intentional interference contract claims Mattel now seeks to allege against MGA, Mr. Larian and Bryant")).

MGA's statute of limitations argument with respect to the intentional interference claims fares no better. According to MGA, the applicable statute of limitations is two years for an intentional interference with contract claim and Mattel was aware of the facts alerting it to this claim (insofar as Bryant's contract is concerned) on November 24, 2003, when it learned "that Bryant worked with MGA to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence, prior to the expiration of his contractual relationship with Mattel."[3] (MGA Opp. at 18 (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)). Such a time line would, according to MGA, mean that the applicable limitations period expired on Mattel's interference with Bryant's contract claim on November 24, 2005, well before Mattel sought leave to file its amended complaint. (Id). The problem again with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional interference claim would relate back to when it filed its original complaint in April,

---

[2] The same would appear to be true — that the amendments would be timely — if the amendments related back to Mattel's answer (filed on May 13, 2005) to MGA's complaint in the 05-2727 case.

[3] With respect to Mattel's interference with contract claim as to one of its former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim on September 17, 2004, when Brawer informed Mattel that he leaving to go to work for MGA. (MGA Opp. at 19-20). The problem with this argument is that nothing from that simple event — Brawer's declaration of his intent to leave — in any way would apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct (the stealing of proprietary information) causing Brawer to breach his contract with Mattel that he would not do anything to help a competitor while working for them. MGA's contention that Mattel must have known of those misdeeds in mid-September is nothing more than speculation. Futility cannot be founded on what might or might not be the case; either a claim is futile to bring or it is not.

2004, well before the limitations period expired.[4]

Accordingly, MGA's futility argument is not well-founded.

4. Prior Disavowals of Asserting a Copyright Claim

Finally, MGA takes umbrage with the cageyness to which Mattel has taken in this case as to whether or not it is asserting a copyright infringement claim against it. To MGA, such ducking and weaving on Mattel's part renders its effort to now bring such a copyright claim as one done in bad faith. No doubt the Court itself has been subjected to Mattel's overly vague statements on this point, but in the end nothing in those statements has ever foreclosed the possibility that such a claim may be in the offing. Indeed, during the oral argument on Mattel's motion to dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as to whether it would assert such a copyright claim against Bryant as it is currently seeking to do. The most that Mattel's counsel would proffer was that Mattel would not assert a copyright claim against Bryant based on Mattel's copyright rights in TOON TEENS. At that point, the Court directed the parties to engage in a meet and confer based on counsel for Mattel's representation and to provide a report to the Court based on those discussions. The report submitted to the Court made clear that, although Mattel was willing to accede that it would not bring a copyright claim based on TOON TEENS, it refused to accede to Bryant's broader request that "Bryant 'never copied anything' and that no Mattel product has any 'relevance' to any claim that Mattel has or ever will assert against Bryant." This by itself should have dispelled any illusion either Bryant or MGA was operating under that Mattel's prior statements had foreclosed any potential copyright claim against them.[5]

---

[4] Again the relations-back principle would also seem to render its claim timely if it were filed as an amended answer (the original having been filed in May, 2005) in the 05-2727 case.

[5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac Larian, for the "Doe" defendants listed in its original complaint is improper because Mattel knew of their identity when it filed the original complaint. The argument is

That said, Mattel's allegation in the amended complaint as to how it is seeking to lay claim to the copyright in BRATZ is disconcerting. Paragraph 26, subsection a, in the amended complaint alleges that Bryant "misappropriated and misused Mattel property" by "using his exposure to Mattel development programs to create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)). Such "exposure" could include Bryant misappropriating the Mattel design concept in TOON TEENS in drawing his inspiration for the BRATZ doll. Were Mattel's copyright claim so predicated it would be barred by this Court's July, 2006, Order, dismissing Bryant's declaratory judgment action. Mattel was pressed on this point during oral argument and conceded that such "exposure" to Mattel "development programs" did not include TOON TEENS. With this representation, nothing in Mattel's proposed copyright claim is barred under the rubric of bad faith.

5. Judicial Economy Considerations

In his opposition, Bryant adds an additional reason for denying leave beyond those contained in MGA's papers — the amendment would muddy the waters in the 04-9059 by adding "tangential" issues that would only serve to delay resolution of the key issue lying at the heart of the complaint: Who owns the rights to the BRATZ line of dolls. (Bryant Opp. at 2 ). Bryant notes that the case has proceeded apace in moving toward resolving that issue, and the amendment would "transform

---

misplaced. As made clear by Mattel, California law allows a plaintiff to substitute in a defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or ignorant of the basis for liability at the time the complaint was filed. See Miller v. Thomas, 121 Cal.App.3d 440 (1981). MGA does not dispute this legal contention but at oral argument disputed that Mattel did not know the basis for liability against itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in the original complaint and those now proffered against the two in the amended complaint. Specifically, MGA notes that the original complaint spoke of Bryant working for one of Mattel's competitiors and of that employee's theft of Mattel's intellectual property before leaving to work for that competitior. At most, all this shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr. Larian encouraged Bryant's alleged unlawful behavior recited in the original complaint.

what Mattel has always claimed was a straightforward employment action against an individual defendant into a global commercial dispute against Mattel's primary competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to amend because claims are 'tangential'" and then reiterates its point that some showing of prejudice, namely, seeking leave after expiration of discovery, is necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

As noted previously, the Ninth Circuit recently upheld a denial for leave to amend because the amendment would have "drastically changed" the litigation, even though the leave request was tendered before the time, as set forth in a Rule 16(b) pre-trial scheduling order, for filing a motion to amend had expired and well before the discovery cut-off. See AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited approvingly to the following statement from a well-respected treatise: "If an amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudical." Id. at 953 n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)). Thus, Dialysist recognized that the introduction of "different legal theories" and/or proof of materially different facts well into the litigation can itself be a basis for finding prejudice regardless of whether the period for discovery has expired (or is even close to expiring) or the parties have already filed summary judgment motions. Id. at 953-54.

Although the parties can safely be said to be at this point well into the

[6] Bryant also brings intricate legal arguments about the sufficiency of the allegations Mattel has averred in building its RICO claims against him. Such considerations are best left to be resolved on a properly filed motion to dismiss.

litigation in this consolidated action (as evidenced by the protracted discovery disputes contained in the docket sheet that the parties have had before the magistrate judge and now the special master, and the litigation of motions to dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel has made painfully clear in its papers, no scheduling order has been entered in this case.[7] This takes away somewhat from the prejudice Dialysist found to exist when a "drastic change [in a party's] litigation theory" takes place mid-stream in the litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial motions and other matters (e.g., discovery cutoff), the parties have been given free reign in how to conduct the litigation in this case.

That the delay in bringing the proposed amendments and the relative length of time into the litigation when those amendments were brought may not neatly fold into Dialysist's reasoning does not mean that leave must nonetheless be granted. The 04-9059 action, as it is presently constituted, is not a complex one. It asks a rather narrow and straightforward question — Did anything from Bryant's employment at Mattel during the 1999-2000 period give Mattel ownership rights to the BRATZ doll line? The proposed amendments would radically alter the litigation in that case to include far ranging disputes involving multiple parties and concerning events not connected with the BRATZ ownership issue. That the original action was a relatively simple and straight-forward matter raises another point beyond the change in the action's litigation posture — whether entangling the rival doll makers' other commercial disputes into this particular case would serve to muddy the waters and make the matter that much more difficult to manage from the Court's perspective.

---

[7] Mattel's repeated refrain that the matter is in its nascent stage as evidenced by the fact that the parties only just recently exchanged in initial disclosures is misleading. The exchange of initial disclosures referred to by Mattel is in the 05-2727 case. With respect to the 04-9059 case it appears that such initial disclosures were completed long ago as evidenced by the fact that discovery disputes appeared in that case as far back as January, 2005.

As has long been recognized, equally important in determining whether to grant such leave is what impact such amendments would have on the court's ability to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial economy and its ability to manage the case. . . . The court should also temper the policy favoring freely granting leave to amend with consideration of the ability of the district court to manage the case adequately if amendment is allowed"). As Judge Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule, the court should consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation. Finally, the court should consider whether the amendment adds substance to the original allegations, and whether it is germane to the original case of action." Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir. 1987)("General considerations of judicial economy also justify allowing the amendments. The violations included in the proposed amendment relate to the same subject matter as the original complaint. Allowing the amendment will further the federal policy of 'wrapping in one bundle all matters concerning the same subject matter.'").

Mattel's amendments do not add substance to the claims contained in its original complaint. Rather, they would expand the universe of claims and defendants stretching well-beyond the questions raised in the original complaint over whether Bryant's conduct while in the employ of Mattel subjected his later attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions Agreement or otherwise rendered his creation subject to an infringement action. Nowhere does Mattel seek to reconcile the breadth of its present amendments with the narrowness of the allegations contained in its original complaint. In fact, the precise opposite is true. Mattel acknowledges that its proposed amendments bear

more congruity to the allegations leveled against it in MGA's Lanham Act case than to those in the action to which it seeks to add them:

> [M]any of the matters raised by Mattel's proposed Amended Complaint are and will remain at issue because of MGA's Complaint, whether or not leave to amend is granted. MGA's claims allege that a broad array of purported Mattel conduct across the globe, starting at least as early as 1999, has violated the Lanham Act and unfair competition law. This includes Mattel's alleged infringement of Bratz and other MGA products. As a result, issues in the proposed Amended Complaint are already part and parcel of Mattel's defenses to MGA's unfair competition claims, including because they show that MGA and Bryant, and not Mattel, are ones who stole the products and other properties involved.

(Reply to Bryant Opp. at 7 (emphasis added)). Mattel apparently finds this discongruity unimportant because "all of these matters have been consolidated with the Bryant case." (Id. at 7). As noted earlier, the fact that the cases have been consolidated does not mean that the parties can ignore the distinctions that still exist between them. If, as Mattel acknowledges, the present amendments are nothing more than re-formulated defenses and counterclaims it presently has to MGA's complaint against it in the 05-2727 case, then such amendments should be brought in the form of an amended answer and counterclaim in that case.

Consideration of the distinctions between the two cases is wise as it serves as a useful tool in providing the Court a better means to manage the cases now that they have been consolidated. The proverbial dog (ownership in BRATZ) should be wagging the proverbial tail (the remaining commercial disputes), not the other way around. Admittedly, the dog's tail has grown in size both by MGA's filing of its complaint in the 05-2727 action and Mattel's response thereto through its proposed amendments. Nonetheless, it is readily apparent to the Court that the crown jewel in this action still remains the ownership rights to the BRATZ dolls. The parties have engaged in extensive and undoubtedly expensive discovery on this very issue (from hiring world-renowned experts to test the age of Bryant's design

drawings to technically complex discovery of what is on each other's computers).

Indeed the separateness of the two matters is reflected in how the cases are currently structured, namely, the narrowness of the issue involved in 04-9059 and the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court believes a two-track scheduling order wherein the 04-9059 matter's discovery cut off and trial date are set well-ahead of those in 05-2727 makes the most sense. As noted earlier, many of the legal claims being pressed in 05-2727 will be affected by the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's "development programs" or by way of the Inventions Agreement because he continued to work on his designs while at Mattel), then large portions of MGA's Lanham Act infringement claims may become moot. By the same token, if Mattel does not own rights to BRATZ, then some of the defenses and counterclaims set forth as independent claims in the present amended complaint may become moot, including Mattel's copyright infringement claim as well as portions of its remaining RICO, misappropriation, and aiding and abetting claims. If, however, the Court were to allow the amended complaint to be filed in the 04-9059 action, such case management would be difficult, if not impossible as many of the issues being litigated in the 05-2727 case would have been poured into the 04-9059 case by the amendment. Due to this substantial overlap in claims and facts, a two-track scheduling order utilizing the case number distinctions would be impossible to craft. When pressed by the Court at oral argument as to which of its proposed claims it believed would not undermine the BRATZ ownership posture of the 04-9059 case, Mattel cited to its copyright and RICO claims. However, upon further questioning by the Court, counsel for Mattel acknowledged that much of those claims were, like the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

In light of the burden allowing Mattel's amendment to proceed would have on this Court's ability to efficiently manage these consolidated matters denial of

Mattel's request to amend its complaint in the 04-9059 matter is justified. See Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial system can justify a denial of a motion to amend 'even if the amendment would cause no hardship at all to the opposing party'"). Buttressing the Court's decision is the fact that, even with such a denial, Mattel may file (and the Court provides leave to Mattel to so file) an amended answer and counterclaim in the 05-2727 case raising all the new claims and defendants presently sought to be achieved through amendment of its complaint in the 04-9059 action. None of the substantive concerns raised by MGA and Bryant to the present amended complaint, e.g., statutes of limitations, would appear to be affected if the new claims and defendants were brought as defenses and counterclaims in the 05-2727 case as opposed to the 04-9059 one.

Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the 05-2727 case.

Finally, the lack of a scheduling order in this case is problematic; one should have been entered long ago. See Fed. R. Civ. P. 16(b)(noting that a scheduling "order shall issue as soon as practicable but in any event within 90 days after the appearance of a defendant and within 120 days after the complaint has been served on a defendant"). In light of the fact that entry of a scheduling order is woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b) scheduling conference be held in this consolidated matter on February 12, 2007, at 1:30 p.m. in Courtroom One. The parties are directed to file a Joint Rule 26(f) report with the Court by February 5, 2007.

IT IS SO ORDERED.

DATE: 1-11-07

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

# EXHIBIT 6




CALENDARED

SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA - Eastern Division
CIVIL MINUTES - GENERAL

Case No. CV 04-09059 SGL(RNBx) Date: February 12, 2007
Title: MATTEL, INC. -v- CARTER BRYANT, DOES 1-10, INCLUSIVE
**Consolidated Action**
CV 05-02727 SGL(RNBx) MGA ENTERTAINMENT v. MATTEL, INC.,

PRESIDING: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes
Courtroom Deputy Clerk

Theresa Lanza
Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:

John B. Quinn and Michael Zeller for Mattel

ATTORNEYS PRESENT FOR DEFENDANTS:

Diana M. Torres for MGA
Keith A. Jacoby for Carter Bryant

PROCEEDINGS: SCHEDULING CONFERENCE PURSUANT TO FRCP 16(b)

The Court convened a scheduling conference pursuant to FRCP 16(b). Court and counsel discussed case management and thereafter the court set the following schedule: See attachment "Schedule of Trial and Pretrial Dates."

Counsel stipulated pursuant to Local Rule 16-14, to settlement procedure #3, to a retired judicial officer or other private or non-profit dispute resolution body for mediation type settlement proceedings. The Court approves the request and refers this case to an outside Mediator to act as the Settlement Officer. Counsel are directed to contact such outside Mediator to schedule a settlement conference as soon as the parties believe such a conference would be fruitful. The cut-off to complete the mandatory settlement procedures under Local Rule 16-14, is December 3, 2007, in Case No. CV 04-09059-SGL (RNBx) Mattel, Inc. v. Carter Bryant, and the cut-off to complete the mandatory settlement procedures under Local rule 16-14, is April 21, 2008, in Case No. CV 05-02727 SGL (RNBx) MGA Entertainment v. Mattel, Inc.

The Court further ordered that in both Case No. CV 04-09049-SGL (RNBx), Mattel, Inc. v. Carter Bryant, and Case No. CV 05-02727 SGL (RNBx), MGA Entertainment v. Mattel, Inc.:

1. Non-Expert Depositions are limited to a total of 24 for each side for both cases.
2. Expert Depositions are limited to a total of 20 for each side for both cases.
3. Interrogatories are limited to 50 for each side for both cases.

IT IS SO ORDERED.

DOCKETED
FEB 22 2007

MINUTES FORM 90
CIVIL -- GEN

Page 1

Initials of Deputy Clerk: jh
00/30

(48) 2-22





## SCHEDULE OF TRIAL AND PRETRIAL DATES

CASE NAME: MGA ENTERTAINMENT, INC. V. MATTEL, INC., et al.,

CASE NO: CV 05-2727-SGL (RNBx)

| Matter | Time | Court Order |
|---|---|---|
| Jury Trial Date | 9:30 am | 07/01/08 |
| Estimated Length of Trial | | |
| [Hearing on Motions in Limine;<br>Hearing on Disputed Jury Instructions | 10:00 am | 06/23/08 |
| Final Pretrial Conference, LR 16-7<br>Motions in Limine to be filed | 11:00 am | 06/02/08 |
| Lodge Pretrial Conference Order, LR 16-6 to 16-6.2;<br>File Contentions of Fact and Law, LR16-2.8;<br>Exhibit & Witness Lists, LR 16-4 to 16-5;<br>File Status Report regarding Settlement;<br>File Rule 26(e)(1) Supplementation<br>File Agreed Upon Set of Jury Instructions and Verdict Forms LR 49-1 to 49-2, 51-1 to 51-5.1;<br>File Joint Statement regarding Disputed Instructions, Verdicts, etc. | | 05/19/08 |
| Last date to conduct Settlement Conference | | 04/21/08 |
| Last date for hearing motions, LR 7.2, et seq. | 10:00 am | 04/07/08 |
| Discovery cut-off | | 03/03/08 |
| Last date to Amend Pleadings or Add Parties | | Closed |

**ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE**

LR 16-14.4 Settlement Selection: to be discussed

☐ 1. CT/USMJ

☐ 2. Attorney Settlement Panel

☑ 3. Outside ADR

☐

DOE Dismissal:

Complaint Filed: 04/13/05

Dismissal Date:

SET DATE to be discussed

S:\SGL\CIVIL ORDERS\MGA 05-2727 MO 2-12-07.wpd

# EXHIBIT 7

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

| | | |
|---|---|---|
| CARTER BRYANT, PLAINTIFF, VS. MATTEL, INC., DEFENDANTS. | ) | NO. ED CV 04-09049 (LEAD LOW NUMBER) STATUS/SCHEDULING CONFERENCE |
| AND RELATED ACTIONS, | ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

MONDAY, FEBRUARY 12, 2007

1:49 P.M.

**CERTIFIED COPY**

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA 92501
(951) 274-0844
CSR11457@SBCGLOBAL.NET

MR. QUINN, I WILL ENTERTAIN A MOTION FROM THE PLAINTIFFS IN -9059 FROM MATTEL THAT SOME OF THOSE LIMITED CLAIMS, AS YOU JUST IDENTIFIED, ARE MORE APPROPRIATELY CONSIDERED IN THAT FIRST CASE. AND THEN OF COURSE THE DEFENSE MAY OPPOSE THAT. 02:17

I CAN SEE HOW ONE OR MORE OF THOSE CLAIMS MIGHT BE, BUT THEY MIGHT NOT BE AS WELL. I'M NOT GOING TO DECIDE THAT TODAY. I'LL GIVE YOU LEAVE TO BRING THAT MOTION ON THAT NARROW ISSUE IF THERE SHOULD BE CERTAIN CLAIMS THAT WE SHOULD DO IN THIS FIRST PHASE AS OPPOSED TO THE SECOND PHASE. BUT ABSENT AN 02:17 ORDER FROM THE COURT, THE ONLY CLAIMS THAT WE ARE GOING TO SET IN THE FIRST TRIAL ARE THOSE SET FORTH IN 04-9059, AND THE ONLY CLAIMS IN THE SECOND ARE GOING TO BE THE CLAIMS AND COUNTERCLAIMS IN 05-2727. I WILL GIVE YOU THAT OPPORTUNITY.

I'M GOING TO SET A JURY TRIAL DATE FOR FEBRUARY 12, 02:17 2008, ONE YEAR FROM TODAY, AT 9:30 A.M. IN 04-9049. A HEARING ON ANY MOTIONS IN LIMINE WILL BE SCHEDULED FOR FEBRUARY 4, 2008, 10:00 A.M., AND A FINAL PRE-TRIAL CONFERENCE WILL BE CONDUCTED JANUARY 14, 2008, AT 11:00 A.M.

LAST DATE TO CONDUCT A SETTLEMENT CONFERENCE IN THAT 02:18 CASE WILL BE DECEMBER 3, 2007; THE LAST DATE FOR HEARING ANY DISPOSITIVE MOTIONS WILL BE NOVEMBER 19, 2007 AT 10:00 A.M.; THE COMPLETE DISCOVERY CUTOFF ON THE FIRST CASE WILL BE OCTOBER 22ND, 2007.

I'LL SPEAK IN A FEW MOMENTS ABOUT LIMITS IN TERMS OF 02:18

WITNESSES AND INTERROGATORIES AND THE LIKE.

AS FAR AS 05-2727, THE JURY TRIAL DATE WILL BE JULY 1, 2008; THE HEARING ON ANY MOTIONS IN LIMINE WILL BE JUNE 23, 2008, 10:00 A.M.; THE FINAL PRE-TRIAL CONFERENCE WILL BE JUNE 2, 2008, 11:00 A.M.; THE LAST DATE TO CONDUCT A SETTLEMENT CONFERENCE IN THAT CASE WILL BE APRIL 21, 2008; THE LAST DATE FOR HEARING DISPOSITIVE MOTIONS IN THAT CASE WILL BE APRIL 7, 2008, 10:00 A.M.; DISCOVERY CUTOFF WILL BE MARCH 3, 2008.

ANY FURTHER AMENDMENTS OR THE ADDITION OF PARTIES IN EITHER OF THESE CASES IS GOING TO REQUIRE LEAVE OF COURT.

THESE ARE THE LIMITS I'M GOING TO PUT ON EXPERT DEPOSITIONS AND INTERROGATORIES. NOW, THESE LIMITS ARE -- I DON'T WANT TO SAY THEY ARE SOFT LIMITS, BUT THEY ARE LIMITS WHICH THE COURT WOULD CERTAINLY UNDERSTAND OR WOULD INVITE COUNSEL TO SUBMIT A MOTION TO EXPAND, IF THERE'S REASON TO. BUT I JUST WANT TO HAVE SOME PARAMETERS PLACED ON THIS AT THE OUTSET.

AS FAR AS NONEXPERT DEPOSITIONS, I'M GOING TO LIMIT EACH SIDE TO 24; SO THAT WILL BE A TOTAL OF 48 BETWEEN THE TWO SIDES, WHICH WOULD HOPEFULLY CAPTURE MOST OF THE INDIVIDUALS WHO HAVE SOME INFORMATION TO PROVIDE IN THIS CASE. I'M GOING TO LIMIT THE NUMBER OF EXPERT WITNESSES TO 20 ON EACH SIDE, AND THEN THE TOTAL NUMBER OF INTERROGATORIES TO A TOTAL NUMBER OF 50 TO EACH SIDE.

AGAIN, IF YOU GET TO THE POINT WHERE YOU NEED 21 EXPERT WITNESSES FOR SOME REASON, OR YOU NEED 25 FACT WITNESSES, YOU CAN MAKE APPLICATION TO THIS COURT AND THE COURT WILL CONSIDER THAT AFTER YOU, OF COURSE, HAVE MET AND CONFERRED AND TRIED TO WORK THAT OUT ON YOUR OWN. BUT WE HAVE TO HAVE SOME PARAMETERS ON THIS. 02:20

ARE THERE ANY QUESTIONS?

THE COURT WILL BE ISSUING ITS SCHEMATIC WHICH WILL HAVE ALL THESE DATES AND THE COURT'S SCHEDULING ORDERS AND CALCULATIONS, BUT ARE THERE ANY GENERAL QUESTIONS ABOUT WHAT THE COURT IS TRYING TO ACCOMPLISH HERE? 02:21

MS. TORRES: YOUR HONOR, YOU JUST SAID 50 INTERROGATORIES EACH SIDE. THE FEDERAL RULES ORDINARILY PROVIDE FOR INTERROGATORIES TO PARTIES, AND THERE ARE A NUMBER OF PARTIES THAT THEY ARE TRYING TO SERVE, WHO THEY MAY HAVE ALREADY SERVED, I DON'T KNOW. 02:21

ARE THOSE PARTIES INCLUDED IN THAT 50 LIMIT?

THE COURT: THERE'S ONE PARTY, ESSENTIALLY, ON THE OTHER SIDE, AND YOU HAVE TWO PARTIES.

MS. TORRES: WELL, THEY HAVE ALSO NAMED -- ACTUALLY WE HAVE THREE PARTIES NOW; THEY SUED OUR CEO ISAAC LARIAN AND THEY HAVE NAMED ANOTHER EMPLOYEE AND TWO INDIRECT SUBSIDIARIES. 02:21

THE COURT: WELL, MR. JACOBY, YOU'RE HERE ON BEHALF OF MR. BRYANT. WOULD YOU REALLY NEED ANOTHER 50 INTERROGATORIES BEYOND WHAT MGA WOULD BE SUBMITTING ON THESE 02:22

CLAIMS CONCERNING BRATZ OWNERSHIP?

MR. JACOBY: PROBABLY NOT. BUT, I MEAN, I THINK IT IS A CONCERN THAT THERE ARE POTENTIALLY FOUR PARTIES WHO AREN'T EVEN HERE TODAY.

THE COURT: LET'S TRY TO WORK WITHIN THE CONFINES OF THE 50 INTERROGATORIES, AND IF YOU NEED MORE, AGAIN, THE COURT IS GOING TO BE FORTHCOMING, IF THERE'S A NEED FOR IT. AND IT'S THE TYPE OF ORDER THAT IF YOU CAN STIPULATE AMONGST YOURSELVES, YOU'RE NOT GOING TO NEED AN ORDER FROM THE COURT. 02:22

BUT IF YOU'RE NOT AGREEING AMONGST YOURSELVES, THEN YOU'RE GOING TO HAVE TO COME BACK TO THE COURT BEFORE YOU BUST THOSE LIMITS. UNLIKE EVERY OTHER ORDER THE COURT ISSUES, WHERE ONCE THE COURT ISSUES AN ORDER AND YOU NEED AN ORDER FROM THE COURT TO ALTER THAT, THIS IS ONE THAT I WILL GIVE YOU AUTHORITY AMONGST YOURSELVES TO STIPULATE TO A GREATER NUMBER. BUT LETS BE REASONABLE. I CAN'T IMAGINE YOU CAN'T WORK THIS OUT. I JUST DON'T WANT TO HAVE OPEN-ENDED NUMBERS OF INTERROGATORIES AND EXPERTS. 02:22 02:22

MS. TORRES: WE DON'T EITHER, AND I DON'T THINK WE'LL NEED 50 PER PARTY. 02:23

MR. QUINN: IN THE UNLIKELY EVENT THERE WERE A DISAGREEMENT ON THAT, DOES THAT COME TO YOU?

THE COURT: YES, THAT COMES TO ME.

MR. QUINN: THANK YOU, YOUR HONOR.

THE COURT: BUT GIVEN THE SIGNIFICANCE OF THIS CASE 02:23

AND THE RESOURCES THAT QUINN EMANUEL AND O'MELVENY & MYERS AND LITTLER ARE ALL DEVOTING TO THIS, THESE DATES ARE PRETTY FIRM; SO PLAN ACCORDINGLY.

MR. JACOBY: THANK YOU, YOUR HONOR.

MR. QUINN: THANK YOU, YOUR HONOR.

02:23

THE COURT: ALL RIGHT. GOOD LUCK.

CERTIFICATE

I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

Theresa A. Lanza 2-22-07

THERESA A. LANZA, CSR, RPR DATE
FEDERAL OFFICIAL COURT REPORTER

# EXHIBIT 8



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
Michael T. Zeller (Bar No. 196417)
Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Cross-Defendant
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware Corporation,<br>Plaintiff,<br>v.<br>CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,<br>Defendants. | CASE NO. CV 04-9059 NM (RNBx)<br><br>MATTEL, INC.'S FIRST SET OF INTERROGATORIES TO BRYANT |
| CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,<br>Counterclaimant,<br>v.<br>MATTEL, INC., a Delaware Corporation,<br>Counter-Defendant. | |

Pursuant to Fed. R. Civ. P. 33, defendant and counter-claimant Carter Bryant is requested to respond to the following interrogatories, in writing and under oath, within thirty days hereof. Bryant shall be obligated to supplement his responses to these interrogatories at such times and to the extent required by the Federal Rules of Civil Procedure.

## Definitions

1. "YOU" or "YOUR" means defendant and counter-claimant Carter Bryant and any of his current or former agents, representatives, attorneys, employees, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

2. "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control. Without limiting the foregoing, "MGA" includes the entity known as ABC International Traders and/or ABC International Traders, Inc.

3. "AFFILIATES" means any and all corporations, proprietorships, d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or indirectly, in whole or in part, own or control, are under common ownership or control with, or are owned or controlled by a PERSON, party or entity, including without limitation each parent, subsidiary and joint venture of such PERSON, party or entity.

4. "PAYMENT" means the transfer of, in any manner, money or any other item of value.

5. "IDENTIFY" means, in connection with a PAYMENT, to state the dollar amount received, the date on which YOU received it and the name of the

PERSON who made the payment and to describe, by Bates number, all DOCUMENTS that REFER OR RELATE to such PAYMENT. In the event that a DOCUMENT does not have a Bates number, "IDENTIFY" means, with respect to that DOCUMENT, a complete description of it such that it may be the subject of a request for the production of documents. In the event that a PAYMENT was made as anything other than as a sum of money, "IDENTIFY" means to state, with respect to that PAYMENT, the nature of the item received and its value in dollar terms.

6. "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

7. "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

8. "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

9. "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

10. The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

<u>Instructions</u>

A. When an interrogatory requests disclosure of a COMMUNICATION or other information as to which YOU claim any privilege or protection as a ground for nondisclosure, identify each PERSON who participated in or had knowledge of the COMMUNICATION or other information and provide the following:

(i) the privilege or protection that YOU claim precludes disclosure;

(ii) the subject matter of the COMMUNICATION or information (without revealing the content as to which the privilege is claimed); and

(iii) any additional facts or grounds on which YOU base YOUR claim of privilege or protection.

B. When an interrogatory requests that YOU provide information, YOU are required to supply all information known by or available to YOU or YOUR employees, officers, directors, agents, representatives, attorneys and experts.

Interrogatories

INTERROGATORY NO. 1:

Please IDENTIFY, fully and separately, each and every PAYMENT that YOU received during the periods of time that YOU were employed by Mattel, Inc. from any PERSON other than Mattel, Inc., including without limitation from MGA, for work or services relating to dolls or toys which YOU performed for or provided to such PERSON.

INTERROGATORY NO. 2:

Please IDENTIFY, fully and separately, each and every PAYMENT that YOU received at any time from any PERSON other than Mattel, Inc., including without limitation from MGA, as a result of work or services relating to dolls or toys which YOU performed for or provided to such PERSON during the periods of time that YOU were employed by Mattel, Inc.



Dated: December 27, 2004

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature]
Michael T. Zeller
Attorneys for Plaintiff and Counter-Defendant Mattel, Inc.

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA )**
**COUNTY OF LOS ANGELES )**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 27, 2004, I served the foregoing document described as **MATTEL, INC.'S FIRST SET OF INTERROGATORIES TO BRYANT** on all interested parties in this action.

**Douglas A. Wickham, Esq.**
**Keith A. Jacoby, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
TEL: 310-553-0308
**FAX: 310-553-5583**

[ ] By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ] **BY MAIL**

[ ] I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ] As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by Federal Express.

[X ] **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ] **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on December 27, 2004, at Los Angeles, California.

[ ] (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Maria Albert
Print Name

Signature

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA )**
**COUNTY OF LOS ANGELES )**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 27, 2004, I served the foregoing document described as **MATTEL, INC.'S FIRST SET OF INTERROGATORIES TO BRYANT** on all interested parties in this action.

Diana M. Torres
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, California 90071-2899
TEL: 213-430-6000
FAX: 213-430-6407

[ ] By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ] **BY MAIL**

[ ] I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ] As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by Federal Express.

[X] **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ] **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on December 27, 2004, at Los Angeles, California.

[ ] (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Maria Albert
Print Name

Signature

# EXHIBIT 9



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
Michael T. Zeller (Bar No. 196417)
Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Cross-Defendant
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. CV 04-9059 NM (RNBx)<br><br>MATTEL, INC.'S FIRST SET OF INTERROGATORIES TO MGA ENTERTAINMENT, INC. |
| CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,<br><br>Counterclaimant,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Counter-Defendant. | |

Pursuant to Fed. R. Civ. P. 33, MGA Entertainment, Inc. is requested to respond to the following interrogatories, in writing and under oath, within thirty days hereof. MGA Entertainment, Inc. shall be obligated to supplement its responses to these interrogatories at such times and to the extent required by the Federal Rules of Civil Procedure.

## Definitions

1. "MGA" or "YOU" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control. Without limiting the foregoing, "MGA" and "YOU" include the entity known as ABC International Traders and/or ABC International Traders, Inc.

2. "AFFILIATES" means any and all corporations, proprietorships, d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or indirectly, in whole or in part, own or control, are under common ownership or control with, or are owned or controlled by a PERSON, party or entity, including without limitation each parent, subsidiary and joint venture of such PERSON, party or entity.

3. "BRYANT" means defendant and cross-claimant Carter Bryant and any of his current or former agents, representatives, attorneys, employees, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

4. "PAYMENT" means the transfer of, in any manner, money or any other item of value.

5. "REVENUES" means gross receipts.

6. "PROFITS" means gross receipts less cost of goods sold and other direct costs but not including overhead.

7. "IDENTIFY" means, in connection with a PAYMENT, to state the dollar amount paid and the date on which YOU made the PAYMENT and to describe, by Bates number, all DOCUMENTS that REFER OR RELATE to such PAYMENT. In the event that a DOCUMENT does not have a Bates number, "IDENTIFY" means, with respect to that DOCUMENT, a complete description of it such that it may be the subject of a request for the production of documents. In the event that a PAYMENT was made as anything other than as a sum of money, "IDENTIFY" means to state, with respect to that PAYMENT, the nature of the item transferred and its value in dollar terms.

8. "IDENTIFY" means, in connection with REVENUES, to state the dollar amounts received and the date(s) on which YOU received such dollar amounts and to describe, by Bates number, all DOCUMENTS that REFER OR RELATE to such REVENUES. In the event that a DOCUMENT does not have a Bates number, "IDENTIFY" means, with respect to that DOCUMENT, a complete description of it such that it may be the subject of a request for the production of documents. In the event that any REVENUES include anything that was received other than as a sum of money, "IDENTIFY" means to state, with respect to such REVENUES, the nature of the item or other consideration received and its value in dollar terms.

9. "IDENTIFY" means, in connection with PROFITS, to state the dollar amount of all such PROFITS and to describe, by Bates number, all DOCUMENTS that REFER OR RELATE to such PROFITS. In the event that a DOCUMENT does not have a Bates number, "IDENTIFY" means, with respect to that DOCUMENT, a complete description of it such that it may be the subject of a request for the production of documents.

10. "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing,

describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

11. "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

12. "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

13. "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees,

officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

14. The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

## Instructions

A. When an interrogatory requests disclosure of a COMMUNICATION or other information as to which YOU claim any privilege or protection as a ground for nondisclosure, identify each PERSON who participated in or had knowledge of the COMMUNICATION or other information and provide the following:

(i) the privilege or protection that YOU claim precludes disclosure;

(ii) the subject matter of the COMMUNICATION or information (without revealing the content as to which the privilege is claimed); and

(iii) any additional facts or grounds on which YOU base YOUR claim of privilege or protection.

B. When an interrogatory requests that YOU provide information, YOU are required to supply all information known by or available to YOU or YOUR employees, officers, directors, agents, representatives, attorneys and experts.

Interrogatories

INTERROGATORY NO. 1:

Please IDENTIFY, fully and separately, each and every PAYMENT that YOU made to BRYANT during the periods of time that BRYANT was employed by Mattel, Inc.

INTERROGATORY NO. 2:

Please IDENTIFY, fully and separately, each and every PAYMENT that YOU made to BRYANT at any time as a result of work or services which BRYANT performed for or provided to YOU during the periods of time that BRYANT was employed by Mattel, Inc.

INTERROGATORY NO. 3:

Please IDENTIFY, fully and completely, all REVENUES that YOU have received at any time from any source as a result of work or services which BRYANT performed for or provided to YOU during the periods of time that BRYANT was employed by Mattel, Inc.

INTERROGATORY NO. 4

Please IDENTIFY, fully and completely, all PROFITS that YOU have earned at any time from any source as a result of work or services which BRYANT performed for or provided to YOU during the periods of time that BRYANT was employed by Mattel, Inc.



Dated: December 27, 2004

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature]
Michael T. Zeller
Attorneys for Plaintiff and Counter-Defendant Mattel, Inc.

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA )**
**COUNTY OF LOS ANGELES )**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 28, 2004, I served the foregoing document described as **MATTEL INC.'S FIRST SET OF INTERROGATORIES TO MGA ENTERTAINMENT** on all interested parties in this action.

**Diana M. Torres**
**O'Melveny & Myers LLP**
**400 South Hope Street**
**Los Angeles, California 90071-2899**
**TEL: 213-430-6000**
**FAX: 213-430-6407**

[ ] By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ] **BY MAIL**

[ ] I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ] As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by Federal Express.

[ ] **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[X] **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on December 28, 2004, at Los Angeles, California.

[ ] (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Maria Albert
Print Name

Signature

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA )**
**COUNTY OF LOS ANGELES )**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.

On December 28, 2004, I served the foregoing document(s) described as **MATTEL, INC.'S FIRST SET OF INTERROGATORIES TO MGA ENTERTAINMENT** on all interested parties in this action.

**Robert F. Millman, Esq.**
**Doughlas A. Wickham, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107

[X] By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ] **BY MAIL**

[ ] I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ] As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by Federal Express.

[X ] **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth below on this date.

[ ] **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on December 28, 2004, at Los Angeles, California.

[ ] (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Maria Albert
Print Name

Signature