# EXHIBIT 34

**RECEIVED**

SEP 1 0 2007

1   DALE M. CENDALI (admitted *pro hac vice*)
    dcendali@omm.com
2   DIANA M. TORRES (S.B. #162284)
    dtorres@omm.com
3   JAMES P. JENAL (S.B. # 180190)
    jjenal@omm.com
4   O'MELVENY & MYERS LLP
    400 South Hope Street
5   Los Angeles, CA  90071-2899
    Telephone:   (213) 430-6000
6   Facsimile:   (213) 430-6407

7   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
8   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
9   Los Angeles, CA 90067
    Telephone:   (310) 553-3000
10  Facsimile:   (310) 557-9815

11  Attorneys for MGA Entertainment, Inc.

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15  CARTER BRYANT, an individual,          Case No.  CV 04-09049 SGL (RNBx)
                                           (consolidated with CV 04-9059 & 05-
16                  Plaintiff,             2727)

17        v.

18  MATTEL, INC., a Delaware               **DECLARATION OF DAPHNE**
    Corporation,                           **GRONICH IN RESPONSE TO**
19                                         **COURT'S REQUEST FOR**
                    Defendant.             **INFORMATION REGARDING**
20                                         **DOCUMENT PRESERVATION**

21
                                           Discovery Cut-off:   March 3, 2008
22                                         Pre-trial Conference:   June 2, 2008
                                           Trial Date:  July 1, 2008
23
                                           Judge:  Hon. Stephen G. Larson
24

25

26

27

28

LA2:841480.1                                              GRONICH DECL
                                               CV 04-09049 SGL (RNBX)

**EXHIBIT 34 PAGE 542**

I, Daphne Gronich, declare and state as follows:

1. I am General Counsel for MGA Entertainment, Inc. ("MGA") and a resident of the state of California. All of the facts set forth herein are known to me personally, except for those stated on information and belief and if called as a witness, I could and would testify competently thereto.

**Document Preservation Communications**

2. I have been MGA's General Counsel since December, 2003, and have had oversight responsibility for MGA's legal response to this litigation since its inception. Shortly after Mattel sued Carter Bryant in April 2004, even though MGA had not been named as a defendant in that suit, I communicated to MGA employees that Mattel had filed suit against Carter Bryant alleging that he had breached his employment agreement with Mattel. I advised MGA's employees that MGA might at some point become involved in the litigation, and that it would be prudent for MGA to preserve all documents that might be potentially relevant to the claims at issue in the litigation. In addition to these initial communications, both I and my colleague, Rich Daniels, one of MGA's other in-house attorneys, repeated that advisement at numerous one-on-one and group meetings (including those held in Isaac Larian's office at MGA's former location on Schoenborn Avenue in North Hills) involving senior executives, creative staff members, sales and administration staff and others including IT personnel. These communications took place throughout the late-Spring and Summer of 2004.

3. In addition to those communications, the legal department began locating and collecting documents and materials that might be relevant to the lawsuit against Mr. Bryant. In that regard we were aided by the company's previous efforts to collect certain documents and materials related to the origin and initial development of "Bratz," due to MGA's involvement in prior, unrelated litigation (that did not challenge MGA's ownership of "Bratz"). As a result, we

LA2:841480.1

- 1 -

GRONICH DECL
CV 04-09049 SGL (RNBX)

**EXHIBIT 34 PAGE 543**

1  were able to preserve potentially relevant documents and materials from MGA's

2  employees in California and its related company in Hong Kong, including Isaac

3  Larian, Paula Treantafelles (now Garcia), Dave Malacrida, Victoria O'Connor,

4  Becky Harris, Charles O'Connor, Aileen Storer, Mercedeh Ward, Marcy George,

5  Shirin Salemnia, Edmond Lee, Dennis Soai, Stephen Lee, Samuel Wong, Cecilia

6  Kwok and Franki Tsang.

7          4.      In addition to the communications described above, in the weeks

8  following the filing of Mattel's lawsuit against Carter Bryant, both I and Rich

9  Daniels and/or our outside counsel, spoke with and/or confirmed that MGA had the

10  documents of key potential witnesses, including Isaac Larian, Paula Garcia,

11  Victoria O'Connor, Charles O'Connor, Aileen Storer, Mercedeh Ward, Marcy

12  George, Dennis Soai, Shirin Salemnia, and Dave Malacrida.   During those

13  conversations, we again personally directed MGA's potential witnesses to preserve

14  their potentially relevant documents.

15          5.      As a result of those discussions, MGA's potential witnesses

16  were given express direction by myself, Mr. Daniels, or MGA's outside counsel to

17  preserve their relevant paper documents and to assist, as necessary, MGA's IT

18  department in preserving their emails and electronic documents.  We also directed

19  the IT department to segregate and preserve emails from MGA employees who had

20  since left the company, which former employees included some who had also been

21  previously employed by Mattel prior to working for MGA.

22          6.      In the years since the litigation began, I have sent out reminder

23  emails to MGA's employees reminding them of their continuing obligation to

24  preserve documents potentially relevant to this litigation, including reminder emails

25  that I sent to all MGA employees on April 14, 2005, December 5, 2006, and July 5,

26  2007.  In addition, other members of the legal department routinely advise the staff

27  members with whom they work to retain relevant documents.  For example, Sam

28  Khare, an MGA in-house lawyer who works closely with the product design teams,

EXHIBIT 34 PAGE 544

1    routinely reminds people in the design groups to retain documents.

2         7.    After we became aware of Mattel's claims against MGA, on

3    December 5, 2006 I sent an email to all MGA employees reminding them of their

4    ongoing obligations regarding Mattel's suit against Carter Bryant and informing

5    them of the nature of the new claims against MGA, including the allegation of trade

6    secret theft. I reminded MGA's employees of MGA's policy that its employees

7    must not bring with them to MGA the property or confidential or proprietary

8    information of their former employers, and instructed them to preserve all

9    documents and materials relevant to these new claims as well.

10        8.    In addition to that communication, we also began collecting and

11   segregating the documents of all former Mattel employees, including those who

12   were no longer employed by MGA.

13        9.    While MGA is ready and willing to produce its communications

14   for the Court's review, I have been informed by MGA's outside counsel that Mattel

15   has taken the position that "it cannot agree" that MGA's production of those

16   communications would not constitute a waiver of the attorney-client privilege.

17   Attached hereto as **Exhibit 1** is a true and correct copy of a letter from Mattel's

18   counsel, Jon Corey, to MGA's outside counsel, Bill Charron, asserting that

19   position. If the Court wishes to see such communications and agrees with MGA

20   that such production would not constitute a waiver of the attorney-client privilege,

21   MGA will produce its communications within 24 hours of receiving the Court's

22   guidance.

23

24   **Paper Document Preservation**

25        10.   MGA does not now, and never has had a policy to routinely

26   destroy paper documents. In particular, since this litigation began, MGA has

27   expressly retained paper files in the Creative Departments, character art files,

28   vendor files, executive files and others.

EXHIBIT 34 PAGE 545

**Email Preservation**

11.     Since before 2004, MGA has used Microsoft's Exchange email system and the Outlook email client to provide email support to the company. MGA does not have, and never has had, a policy to auto-delete emails; to the contrary, employees are advised to retain work-related emails.  I am informed by our IT staff that employees may, and often do, create email storage files (known as "pst" files) to which they can move emails from their mailbox on the Exchange server.  MGA's practice is to preserve those pst files, and it has done so.

12.     MGA's process for preserving those emails has become more automated over time as our IT department has grown in its sophistication to meet the needs of the company, particularly as MGA itself has grown and expanded.  I am informed that in January of 2000, MGA only had around eighty employees, whereas by January of 2004 that number had grown to 196 and by January of 2007 it was approximately 900 domestically and 670 internationally, including subsidiaries.

13.     In 2004, when an employee would leave the company, the IT department copied the pst files from the employee's computer and burned them onto CDs that were then retained by the IT department.  I am informed that in September 2005, the system was improved so that instead of having to copy those pst files onto CDs, the IT department was then able to preserve those pst files on a network server.

14.     Emails in the departing employee's mailbox on our Exchange server are retained on the Exchange server.  The IT department's network administrators change the access permissions on that employee's mailbox so that only the administrators can access it.  In that way, those emails are retained and can be accessed when necessary with proper authorization.

15.     In the past year, an even more automated process was put in place to preserve and manage email.  In January 2007, the IT department began

LA2:841480.1                              - 4 -                    GRONICH DECL
                                                                  CV 04-09049 SGL (RNBX)

EXHIBIT 34 PAGE 546

1 using a system known as "Archive One" which I am informed automatically

2 archives emails older than 90 days once a user's mailbox exceeds a set size

3 threshold. In this way, access to older emails is retained, but the size of the user's

4 mailbox files on our Exchange server is controlled.

5   16. MGA's Exchange email server is also backed up on a nightly

6 basis as a means of disaster recovery. Historically those backup tapes had been

7 rotated on a 90-day cycle. However, because we have no policy of auto-deleting

8 emails and because we preserve the mailboxes (and pst files) of former employees,

9 unless an employee violates MGA's policies, and the legal department's express

10 and repeated directives to preserve email, no email would be lost by recycling those

11 backup tapes.

12

13 **Other Electronic Document Preservation**

14   17. Employees are encouraged to store other electronic documents

15 (such as Word documents or Excel spreadsheets) on a shared network file server.

16 Some employees may also save electronic documents in the "My Documents"

17 folder on their computer. As was the case for emails saved to local pst files, going

18 back to 2004, if an employee left the company the contents of the My Documents

19 folder was also copied onto CDs and preserved. Again, when the system evolved in

20 September of 2005, the My Documents folder was preserved onto a network server.

21 Since March of this year, the entire hard drive itself is preserved by the IT

22 department.

23   18. In addition to those preservation methods when an employee

24 would leave the company, files saved to the shared network file server would be

25 retained indefinitely and protected by nightly backups. I am informed that since

26 this litigation began in April 2004, MGA has not suffered any server failures that

27 resulted in the loss of data.

28   19. In April of this year, another automated capability was brought

LA2:841480.1      - 5 -     GRONICH DECL
                  CV 04-09049 SGL (RNBX)

**EXHIBIT 34 PAGE 547**

online.  MGA has now installed an automated process that daily copies the contents of the My Documents folder and any pst files that are saved in the user's "Exchange" folder to a network file server.

20.    Within days of learning of Mattel's intent to bring claims against MGA, MGA made, and retains to this day, a complete backup of all of its servers.

**Preservation of Data from Isaac Larian's Computer**

21.    I am informed by our IT department that there are always two laptop computers assigned to Mr. Larian – the computer that he is actively using, and a second, "mirrored" spare computer.  Whenever Mr. Larian docks his computer into the MGA network, any changes that have been made to the files on his computer are automatically "mirrored" or copied to the spare.  In that way, any potential data loss is minimized.

22.    I am also informed by our IT department that when Mr. Larian needs to replace his laptop, the IT department starts with the mirrored spare.  If the hard drive on Mr. Larian's old laptop is still operable, they make sure that the files on the mirrored spare contain the most up-to-date information that can be read from the old hard drive.  When all of that data has been copied onto the spare, it is provided to Mr. Larian and a new laptop becomes the mirrored spare.

23.    Personal computers at MGA frequently contain a great deal of MGA's confidential and trade secret information – and this is especially true for Mr. Larian's laptop.  I am informed by our IT department that prior to instituting the present policy of retaining computer hard drives, whenever a computer that Mr. Larian had been using was to be retired from his use – whether due to damage or simply the need to provide newer technology – the hard drive was backed up to one of the IT department's archive servers so as to preserve the data that was on the hard drive in a secure location.  Once the data had been safely preserved, the IT

EXHIBIT 34 PAGE 548

1  department then reformatted the hard drive in such a way that the confidential and

2  trade secret data was no longer present on the hard drive. Thus, although the hard

3  drive had been "wiped" before being put back into service or disposed of, none of

4  the data had been lost to MGA as it remained preserved on one of the IT

5  department's archive servers. Today, we would simply retain the hard drive from

6  Mr. Larian.

7

8  **Other Corporate Data Preservation**

9       24.    In 2004, MGA used an enterprise accounting package known as

10  Great Plains. In January 2006, MGA converted to a newer system known as

11  Axapta and after that time, all new business transactions were processed on the

12  Axapta system. However, MGA has retained the Great Plains system and I am

13  informed that no data was lost in the conversion. Accordingly, MGA is able to

14  retrieve transaction data as needed going back to at least 1998.

15

16       I declare under penalty of perjury under the laws of the United States

17  that the foregoing is true and correct.

18       Executed this 10th day of September, 2007, at Van Nuys, California.

19

20                                          Daphne Gronich

21

22

23

24

25

26

27

28

LA2:841480.1                          - 7 -                    GRONICH DECL.
                                                              CV 04-09049 SGL (RNBX)

**EXHIBIT 34 PAGE 549**

**Exhibit 1**

EXHIBIT 34 PAGE 550

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

September 7, 2007

VIA FACSIMILE AND U.S. MAIL

William Charron, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

Re:     Mattel, Inc. v. Bryant

Dear Bill:

I write to follow up on the conversation that we had earlier today.

First, you reviewed the questions which MGA instructed Ms. Tonnu not to answer regarding Mr. Speckin's testing and handling of documents, and agreed that MGA would not instruct Ms. Tonnu not to answer such questions when she returns for deposition.

Second, you did not agree to produce to Mattel the documents that refreshed Mr. Lockhart's memory for his deposition, but inquired as to whether Mattel would agree that the content of the preservation affidavits requested by the Court would not constitute a waiver of any privilege. Mattel cannot agree to that.  You indicated, however, that MGA may nevertheless include those documents with its affidavit.  If MGA elects not to do so, or otherwise fails to produce the documents, then Mattel will ask Judge Infante to rule on MGA's assertion of privilege.

Finally, you agreed to provide, on September 17, 2007, initial disclosures for MGAE de Mexico, MGA Hong Kong and Isaac Larian.  You also agreed to provide supplemental initial disclosures for MGA on that date.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

8

EXHIBIT 34 PAGE 551

William Charron, Esq.
September 7, 2007

If the foregoing is inconsistent with your recollection of our conversation, please let me know at your earliest convenience.

Best regards,

Jon D. Corey

JDC:jcl
07209/2214875.1

9

EXHIBIT 34 PAGE 552

## PROOF OF SERVICE

I, Karen A. Nakatsu, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On September 10, 2007, I served the within document(s):

**DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR INFORMATION REGARDING DOCUMENT PRESERVATION**

☒ by causing to be personally served the document(s) listed above to the person(s) listed below.

John B. Quinn, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street,
10th Floor
Los Angeles, CA 90017

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

| | |
|---|---|
| Patricia Glaser, Esq. | Michael H. Page, Esq. |
| Christensen, Glaser, Fink, Jacobs, | Keker & Van Nest LLP |
| Weil & Shapiro, LLP | 710 Sansome Street |
| 10250 Constellation Blvd., | San Francisco, CA 94111 |
| 19th Floor | |
| Los Angeles, CA 90067 | |

James W. Spertus, Esq.
Law Offices of James W. Spertus
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on September 10, 2007, at Los Angeles, California.

*Karen A. Nakatsu*
Karen A. Nakatsu

LA2:817525.2

**EXHIBIT 34 PAGE 553**

# EXHIBIT 35

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9                    UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12

13  CARTER BRYANT, an individual,       CASE NO. CV 04-9049 SGL (RNBx)

            Plaintiff,

14
                                        NOTICE OF DEPOSITION OF
15       vs.                            LITTLER MENDELSON PURSUANT
                                        TO FEDERAL RULE OF CIVIL
16                                      PROCEDURE 30(b)(6)

17  MATTEL, INC., a Delaware
    corporation,                        Date:    September 19, 2007
                                        Time:    9:30 a.m.
18          Defendant.                  Place.:  Quinn Emanuel Urquhart Oliver
                                                 & Hedges, LLP
19                                               865 South Figueroa Street, 10th
                                                 Floor
20  AND CONSOLIDATED ACTIONS                     Los Angeles, CA 90017

21                                      Discovery Cut-off: January 14, 2008
                                        Pre-trial Conference: April 7, 2008
22                                      Trial Date: April 29, 2008

23

24

25

26

27

28
                              9/06

07209/2195411.1
                                   -1-
                                     NOTICE OF DEPOSITION OF LITTLER MENDELSON

EXHIBIT 35 PAGE 554

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on September 19, 2007 beginning at

3  9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of

4  Littler Mendelson, P.C. ("Littler") at the offices of Quinn Emanuel Urquhart Oliver

5  & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.

6  Pursuant to Fed. R. Civ. P. 30(b)(6), Littler shall designate one or more officers,

7  directors, managing agents or other persons who consent to testify on its behalf

8  concerning each of the topics set forth in Attachment A to the subpoena attached as

9  Exhibit 1 hereto.

10          PLEASE TAKE FURTHER NOTICE that the deposition will take

11  place before a duly authorized notary public or other officer authorized to administer

12  oaths at depositions, and will continue from day to day, Sundays, Saturdays and

13  legal holidays excepted, until completed.

14          PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P.

15  30(b)(2), the deposition will be videotaped.

16

17  DATED:  September 6, 2007          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
18

19                              By    _Susan Wines_____
                                      Susan L. Wines
20                                    Attorneys for Mattel, Inc.

21

22

23

24

25

26

27

28

-2-

NOTICE OF DEPOSITION OF LITTLER MENDELSON

EXHIBIT 35 PAGE 555

**EXHIBIT 1**

EXHIBIT 35 PAGE 556

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

## UNITED STATES DISTRICT COURT

__CENTRAL__   DISTRICT OF __CALIFORNIA__

MATTEL, INC., a Delaware Corporation

### SUBPOENA IN A CIVIL CASE

V.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

Case Number:[1]  CV 04-9049 SGL  (RNBx)
Consolidated with cases CV 04-9059 and
CV 05-2727

TO:  Littler Mendelson, P.C.
     2049 Century Park East, 5th Floor
     Los Angeles, CA 90067-3107

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  See attachment "A"

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 | September 19, 2007 9:30 a.m. |

☐  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Susan Wines_  Attorney for Plaintiff, Mattel, Inc. | September 5, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Susan L. Wines, Esq.,  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017  (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

**EXHIBIT 35 PAGE 557**

AO88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**EXHIBIT 35 PAGE 558**

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On September 6, 2007, I served true copies of the following documents described as: **NOTICE OF DEPOSITION OF LITTLER MENDELSON PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on the parties in this action as follows:

| | |
|---|---|
| Diana M. Torres, Esq.<br>Jim Jenal, Esq.<br>O'Melveny & Myers<br>400 So. Hope Street<br>Los Angeles, CA 90071 | John W. Keker, Esq.<br>Michael H. Page, Esq.<br>Christina M. Anderson, Esq.<br>Keker & Van Nest, LLP<br>710 Sansome Street<br>San Francisco, CA 94111 |
| James W. Spertus, Esq.<br>LAW OFFICES OF JAMES W. SPERTUS<br>12100 Wilshire Blvd., Suite 620<br>Los Angeles, CA 90025 | Patricia Glaser, Esq.<br>Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP<br>10250 Constellation Blvd., 19th Floor<br>Los Angeles, CA 90067 |

[√]    **BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

Executed on September 6, 2007, at Los Angeles, California.

*Linda Cano*
Linda Cano

07209/2206937.1

-2-

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

**EXHIBIT 35 PAGE 559**

# EXHIBIT 36

## CONFORMED COPY



1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7              UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                    EASTERN DIVISION

10

11  CARTER BRYANT, an individual,        CASE NO. C 04-09049 SGL (RNBx)
                                         JAMS Reference No. 1100049530
12            Plaintiff,

13       v.                              Consolidated with
                                         Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation, Case No. CV 05-2727

15            Defendant.                 **ORDER GRANTING IN PART AND
                                         DENYING IN PART MATTEL'S
16                                       MOTION TO COMPEL MGA TO
                                         PRODUCE WITNESSES PURSUANT
17                                       TO THIRD NOTICE OF DEPOSITION
                                         UNDER RULE 30(b)(6); DENYING
18                                       REQUEST FOR SANCTIONS**

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23                   **I. INTRODUCTION**

24       On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to

25  Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for

26  Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA")

27  to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice. On

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                          1

FILED

2007 SEP 26  PM 2: 28

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

EXHIBIT 36 PAGE 560

1   July 31, 2007, MGA submitted an opposition brief. On August 6, 2007, Mattel submitted a reply

2   brief. The matter was heard on September 24, 2007. Having considered the motion papers and

3   the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for

4   sanctions is denied.

5                                    II. BACKGROUND

6        Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005,

7   which specified eight topics for deposition. Mattel served a Second Notice of Deposition of

8   MGA in February of 2007, which specified forty-six topics for deposition. On June 5, 2007,

9   Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of

10  the present motion to compel. The Third Notice specifies sixteen topics for deposition. On June

11  29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and

12  conferred. The parties were not able to resolve their disputes regarding four subject matters: hard

13  drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-

14  8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian

15  and Morad Zarabi (Topic 11-13). The topics at issue are set forth below.

16                              Hard Drives and Other Storage Devices

17       1.      The IDENTITY, current or last known location, and disposition of

18          each STORAGE DEVICE that each of the following PERSONS has used to

19          create, generate, prepare, draft, send and/or receive any DOCUMENT or

20          DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or

21          ANGEL at any time since January 1, 1999, including without limitation the date

22          of acquisition and the date of disposition of each STORAGE DEVICE: Isaac

23          Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica

24          Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich,

25          Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles

26          O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen,

27          Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

28

EXHIBIT 36 PAGE 561

2.      The IDENTITY, current or last known location, and disposition of each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this Notice, including without limitation the date of creation and the date of disposition of each such backup or copy.

3.      YOUR search for and production of DOCUMENTS and DIGITAL INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

Prior Inconsistent Statements to the Press

6.      YOUR statements to Christopher Palmeri in connection with the Business Week article entitled "To Really Be A Player, Mattel Needs Hotter Toys," published on or about July 28, 2003, including without limitation in connection with the statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers."

7.      YOUR statements to Denise I. O'Neal in connection with the Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll World," published on or about March 5, 2004, including without limitation in connection with the statements that MGA's "creative team decided the name should be catchy and not have more than six letters.  Keeping with today's trend of making names more 'cool' by changing the spelling, MGA executives decided to replace the 's' with a 'z'"

8.      YOUR statements to Jeff Weiss in connection with the San Fernando Valley Business Journal article entitled "Immigrant's Creative Company Shakes Up Toy Industry," published on or about March 29, 2004, including without limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

"Test Projects" for MGA

9.      The IDENTITY of each PERSON who YOU had perform, or who

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

**EXHIBIT 36 PAGE 562**

1   YOU requested, asked or solicited to perform, any "test project" in advance of or

2   in consideration of employment by YOU since January 1, 1995, including without

3   limitation the IDENTITY of each such PERSON who was a MATTEL employee

4   at the time.

5   <u>Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi</u>

6       11.    Payments of money or any other item of value that YOU have

7   made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac

8   Larian since January 1, 1999, including without limitation (a) the amounts of such

9   payment and the equivalent dollar value of each of item of value, (b) the dates of

10   such payment, (c) the IDENTITY of each recipient of such payment, (d) the

11   IDENTITY of each bank or financial institution account to which such payment

12   was made and (e) the reasons for each such payment.

13       12.    Payments of money or any other item of value that YOU have

14   made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

15   Larian since January 1, 1999, including without limitation (a) the amounts of each

16   such payment and the equivalent dollar value of each of item of value, (b) the

17   timing of each such payment, (c) the IDENTITY of each recipient of each such

18   payment, (d) the IDENTITY of each bank or financial institution account to

19   which such payment was made and (e) the reasons for each such payment.

20       13.    Payments of money or any other item of value that YOU have

21   made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad

22   Zarabi since January 1, 1999, including without limitation (a) the amounts of each

23   such payment and the equivalent dollar value of each item of value, (b) the timing

24   of each such payment, (c) the IDENTITY of each recipient of each such payment,

25   (d) the IDENTITY of each bank or financial institution account to which such

26   payment was made and (e) the reasons for each such payment.

27   Zeller Decl., Ex. 23.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

**EXHIBIT 36 PAGE 563**

1  Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,

2  9 and 11-13, and overruling all of MGA's objections and limitations.  Mattel contends that the

3  testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as

4  cumulative or duplicative of any other deposition testimony already given in the case.

5  MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave

6  of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.

7  MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for

8  examining MGA any further.  MGA further contends that Mattel has not established the requisite

9  good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify

10  its objections to the Third Notice.  Lastly, MGA contends that Mattel has had many opportunities

11  to obtain, and in many cases has already obtained, the information it now moves to compel.

12  III. STANDARDS

13  Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

14  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

15  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

16  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

17  Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of

18  use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably

19  cumulative or duplicative, or is obtainable from some other source that is more convenient, less

20  burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

21  discovery in the action to obtain the information sought; or (iii) the burden or expense of the

22  proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

23  amount in controversy, the parties' resources, the importance of the issues at stake in the

24  litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

25  26(b)(2)(C).

26  Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including

27  a party, by deposition upon oral examination without leave of court, except as provided in Rule

28

EXHIBIT 36 PAGE 564

1    30(a)(2), Fed.R.Civ.P. In particular, Rule 30(a)(2) specifies that a party must obtain leave of

2    court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2),

3    Fed.R.Civ.P., if "the person to be examined already has been deposed in the case." Fed.R.Civ.P.

4    30(a)(2)(B).

5    IV. DISCUSSION

6         As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies

7    to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P. There is caselaw to support each

8    party's position. See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st

9    Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re

10   Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second

11   Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza

12   Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without

13   leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D.

14   N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions). For

15   purposes of the present motion, however, it is unnecessary to resolve this conflict in the law

16   because the debate is purely academic and inconsequential. As Mattel has requested, Mattel's

17   motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with

18   additional topics. In evaluating the appropriateness of the topics, it is Mattel's burden to

19   demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis

20   Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2),

21   Fed.R.Civ.P.

22   Hard Drives and Other Storage Devices (Topics 1-3)

23        Topic 1 seeks information regarding the location and disposition of computer hard drives

24   or other storage devices used by specified MGA employees or contractors that contain or

25   contained documents related to the Bratz or Angel projects. Topic 2 seeks the identification and

26   last known location of any backup, copy or image of the hard drives or storage devices identified

27   in Topic 1. Topic 3 seeks information regarding MGA's search for and production of documents

28

**EXHIBIT 36 PAGE 565**

1    and digital information from the hard drives and storage devices referenced in Topic 1.

2        MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,

3    irrelevant, and not reasonably calculated to lead to admissible evidence.  MGA also objected to

4    Topics 1-3 to the extent that the information sought is obtainable through other more convenient,

5    less burdensome and less expensive means.  Lastly, MGA objected to Topics 1-3 as unreasonably

6    cumulative and duplicative of information already provided by Ken Lockhart, Vice President and

7    Chief Information Officer for MGA.

8        Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule

9    26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not

10   privileged, that is relevant to the claim or defense of any party, including "the existence,

11   description, nature, custody, condition, and location of any books, documents or other things."  A

12   portion of the discovery sought, however, is unreasonably cumulative and duplicative of

13   information already provided by Mr. Lockhart.  MGA designated Mr. Lockhart as a 30(b)(6)

14   witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital

15   information systems and application software, employees' electronic messaging systems, and

16   MGA's policies regarding the use of transportable media.  Mr. Lockhart testified about the

17   location and disposition of MGA employees' hard drives and storage devices in general.

18       Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the

19   testimony previously given by Mr. Lockhart in that Mattel now seeks information about the

20   locations and dispositions of hard drives used by 24 named individuals.  Mattel contends that the

21   testimony it seeks will enable it to assess MGA's production, including whether any documents

22   requested or compelled by the Court were destroyed, not collected or otherwise made unavailable

23   to Mattel.  Mattel's Reply at p.7.

24       Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be

25   legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the

26   circumstances of this case.  Mattel has accused MGA of obstructing discovery, and in particular

27   withholding Bryant's computer.  There is no evidence, however, to suggest that MGA has refused

28

Bryant v. Mattel, Inc.,                                                                              7
CV-04-09049 SGL (RNBx)

EXHIBIT 36 PAGE 566

1  or failed to search for and produce responsive documents located on the hard drives of the other

2  individuals named in Topic 1.  It is burdensome and expensive to prepare a witness to testify

3  about the locations and dispositions of hard drives used for 24 different individuals. The likely

4  benefit of undergoing such a burden and expense is doubtful.  Furthermore, there are other less

5  burdensome and less expensive means of assessing whether MGA has complied with its

6  discovery obligations, including for example, document requests and interrogatories.  Therefore,

7  Mattel's motion is denied as to Topics 1-3.

8  <u>Prior Inconsistent Statements to the Press (Topics 6-8)</u>

9  Topics 6-8 seek testimony regarding three public statements made by Isaac Larian

10  regarding who conceived of Bratz.  MGA objected to Topics 6-8 as irrelevant and not reasonably

11  calculated to lead to admissible evidence.  MGA also objected to Topics 6-8 to the extent that the

12  information sought is obtainable through other more convenient, less burdensome and less

13  expensive means.  Further, MGA objected to Topics 6-8 as unreasonably cumulative and

14  duplicative of information already provided by MGA and/or Carter Bryant.  MGA also objected

15  to a deposition on these Topics "to the extent that the statements referenced above were not made

16  by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6)

17  designation." Zeller Decl., Ex. 24.

18  Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition

19  because each of the statements identified therein was made by MGA's Chief Executive Officer,

20  Isaac Larian.  Mattel acknowledges that it already deposed Isaac Larian regarding one of the

21  articles identified in Topics 6-8, but contends that it is not attempting to re-depose him.  Rather,

22  Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will

23  not be "sandbagged" at trial.  Mattel's Reply at p.6.

24  MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac

25  Larian is the person who should be, and already has been, deposed about the statements identified

26  in Topics 6-8.  MGA also contends that Mattel opted to limit its examination of Isaac Larian to

27  one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

28

**EXHIBIT 36 PAGE 567**

1  MGA now. MGA also contends that Mattel could avail itself of other discovery methods, such as

2  interrogatories or requests for admission, to obtain further information about the publications

3  identified in Topics 6-8.

4      Topics 6-8 seek information relevant to the central issue in the case: who conceived of

5  Bratz. Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will

6  bind the corporation. The testimony Mattel now seeks is not unreasonably cumulative or

7  duplicative of testimony it has already sought from Isaac Larian because Mattel previously

8  questioned Isaac Larian about only one of the articles identified in Topics 6-8. Further, the likely

9  benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics

10  6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel

11  seeks. Mattel's motion is granted as to Topics 6-8.

12                            "Test Projects" for MGA (Topic 9)

13      In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA

14  requested, asked or solicited to perform, any "test project" in advance of or in consideration of

15  employment by MGA since January 1, 1995. MGA objected to Topic 9 as irrelevant, not

16  reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly

17  burdensome, and unreasonably cumulative and duplicative. MGA also objected to Topic 9 as

18  vague and ambiguous, particularly with respect to the term "test project." MGA also objected to

19  Topic 9 to the extent that the information sought is obtainable through other, more convenient,

20  less burdensome and less expensive means. MGA also objected to Topic 9 as seeking

21  confidential, proprietary, and commercially sensitive information with no relevance to the

22  litigation.

23      When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind

24  of a project for" MGA. Zeller Decl., Ex. 29 at 9:19-20. He also referred to this "tryout" project

25  as a "test assignment." Id. at 515-516. In light of Bryant's testimony, Mattel's stated purpose of

26  Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's

27  working for MGA while employed by Mattel was no different than a supposedly standard

28

**EXHIBIT 36 PAGE 568**

1  industry practice of having candidates for creative positions make artwork as part of the job

2  interview." Mattel's Motion at p.22.

3     MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in

4  its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains

5  objectionable as overbroad, reasoning that it would require MGA to provide information "with

6  regard to how it proceeded with hiring virtually every single employee hired since 1995."

7  MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require

8  MGA to have a designee review and potentially memorize information about every single person

9  who has applied for a job at MGA since 1995, particularly when Bryant only began working for

10  MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6)

11  deposition to obtain the information called for in Topic 9.

12     Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their

13  claim that Bryant's work for MGA while employed by Mattel was no different than a standard

14  industry practice of having candidates for creative positions make artwork as part of the job

15  interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In

16  particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin

17  working at MGA until the year 2000. Topic 9 is also objectionable because the information

18  sought is more appropriately obtained through a contention interrogatory, which would be

19  significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's

20  motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is

21  granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998

22  through 2004.

23     Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)

24     In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac

25  Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to

26  these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible

27  evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    10

**EXHIBIT 36 PAGE 569**

1   also objected to Topics 11-13 to the extent that the information sought is obtainable through

2   other, more convenient, less burdensome and less expensive means. MGA also objected to

3   Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no

4   relevance to the litigation.

5       Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad

6   Larian that involved the timing of the creation of Bratz. More specifically, Farhad Larian claimed

7   that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and

8   alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.

9   Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and

10  therefore seeks information that may establish their bias. Mattel also emphasizes that Isaac

11  Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's

12  claim for punitive damages, and may be used as impeachment evidence. Lastly, although Mattel

13  acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel

14  contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15      MGA contends that Topics 11-13 are not relevant to this lawsuit. In particular, MGA

16  objects to Topics 12 and 13 as seeking "private financial records of persons who are neither

17  parties nor witnesses in this action, and whose only connection is knowing people involved in the

18  lawsuit." MGA's Opposition at p. 13. With regard to payments to Isaac Larian, MGA contends

19  that Mattel already had the opportunity to ask him about payments during his deposition. MGA

20  also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at

21  this time. Even if Mattel is entitled to conduct such discovery, MGA contends that payments

22  made to him would not establish his net worth because they represent only one of many sources

23  of income and do not account for his other assets and liabilities.

24      MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and

25  defenses in the case. Payments to Isaac Larian and Farhad Larian may also show possible bias

26  and be used for impeachment purposes. Moreover, MGA's payments to Isaac Larian may be

27  relevant to Mattel's claim for punitive damages. Payments to Isaac Larian are a component of his

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                11

**EXHIBIT 36 PAGE 570**

1    net worth, even if they represent one source of income. The burden of producing such information

2    does not outweigh its relevance, taking into consideration the circumstances of this case.

3    Furthermore, there is no stay on discovery pertaining to punitive damages.  Accordingly, Mattel's

4    motion is granted as to Topics 11 and 12.

5        In contrast, MGA's payments to Morad Zarabi are irrelevant.  His only connection to this

6    litigation appears to be with the arbitration proceedings.  Any potential relevance of MGA's

7    payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial

8    affairs.  Mattel's motion is denied as to Topic 13.

9                                V. CONCLUSION

10       For the reasons set forth above, it is hereby ordered as follows:

11       1.    Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

12       2.    Mattel's motion to compel is denied as to Topics 1-3, 9 and 13.  In lieu of taking a

13   deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory

14   regarding Topic 9 that is limited to the years 1998 through 2004.

15       3.  Mattel's request for sanctions is denied.

16   Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

17   Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20   Dated: September 25, 2007

21                                      HON. EDWARD A. INFANTE (Ret.)
                                         Discovery Master
22

23

24

25

26

27

28

EXHIBIT 36 PAGE 571

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 26, 2007, I served the attached ORDER GRANTING IN PART AND DENYI8NG IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 26, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 36 PAGE 572

# EXHIBIT 37

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
  Shane H. McKenzie (Bar No. 228978)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Tel.: (213) 443-3000
Fax:  (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>CARTER BRYANT, an individual, and DOES 1 through 10, inclusive,<br><br>                    Defendants.<br>_____<br><br>CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,<br><br>                    Cross-Complainant,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Cross-Defendant. | Case No. CV 04-09059 NM (RNBx)<br><br>NOTICE OF DEPOSITION OF MGA ENTERTAINMENT INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)<br><br>Date:          March 1, 2005<br>Time:          9:30 a.m.<br>Location:    865 S. Figueroa Street<br>                   10th Floor<br>                   Los Angeles, CA 90017 |

07209/637198.1

NOTICE OF DEPOSITION OF MGA

EXHIBIT 37 PAGE 573

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2             PLEASE TAKE NOTICE that on March 1, 2005, beginning at 9:30

3   a.m., plaintiff and counter-defendant Mattel, Inc. ("Mattel") will take the

4   deposition upon oral examination of defendant MGA Entertainment Inc. the

5   offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street,

6   10th Floor, Los Angeles, CA 90017.  Pursuant to Fed. R. Civ. P. 30(b)(6), MGA

7   Entertainment Inc. shall designate one or more officers, directors, managing agents

8   or other persons who consent to testify on its behalf concerning each of the topics

9   set forth in Exhibit A hereto.

10            PLEASE TAKE FURTHER NOTICE that the deposition will take

11  place before a duly authorized notary public or other officer authorized to

12  administer oaths at depositions, and will continue from day to day, Sundays,

13  Saturdays and legal holidays excepted, until completed.

14            PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

15  P. 30(b)(2), the deposition will be videotaped.

16

17  DATED: February 16, 2005        QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
18

19

20                                  By _____
                                       Michael T. Zeller
21                                     Attorneys for Plaintiff and Counter-Defendant
                                       Mattel, Inc.
22

23

24

25

26

27

28

07209/637198.1

-2-

NOTICE OF DEPOSITION OF MGA

**EXHIBIT 37 PAGE 574**

**EXHIBIT A**

**Definitions**

1.      "YOU" or "YOUR" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.      The "MGA PROJECTS" refers to those projects, sometimes called "Angel Faces" and/or "Prayer Angels," that are the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734.

3.      The "SUBJECT DOCUMENTS" means each of the following: MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-26, MGA000724-28 and MGA000734.

4.      "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

5.      "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes,

**EXHIBIT 37 PAGE 575**

1   discs, printouts and records of all types, studies, instruction manuals, policy manuals
2   and statements, books, pamphlets, invoices, canceled checks and every other device
3   or medium by which or through which information of any type is transmitted,
4   recorded or preserved.   Without any limitation on the foregoing, the term
5   "DOCUMENT" shall include all copies that differ in any respect from the original or
6   other versions of the DOCUMENT, including, but not limited to, all drafts and all
7   copies of such drafts or originals containing initials, comments, notations, insertions,
8   corrections, marginal notes, amendments or any other variation of any kind.

9         6.   "PERSON" or "PERSONS" means all natural persons,
10  partnerships, corporations, joint ventures and any kind of business, legal or public
11  entity or organization, as well as its, his or her agents, representatives, employees,
12  officers and directors and any one else acting on its, his or her behalf, pursuant to its,
13  his or her authority or subject to its, his or her control.

14        7.   The singular form of a noun or pronoun includes within its
15  meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of
16  the masculine form of a pronoun also includes within its meaning the feminine form
17  of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also
18  within its meaning all other tenses of the verb so used, whenever such construction
19  results in a broader request for information; and "and" includes "or" and *vice versa*,
20  whenever such construction results in a broader disclosure of documents or
21  information.

22
23                        **Topics for Testimony**
24
25        1.   The identity of each PERSON involved in the MGA PROJECTS,
26  and the nature and time period(s) of each such PERSON's involvement therein.
27        2.   The conception, design and development of the MGA PROJECTS,
28  including without limitation the chronology thereof.

EXHIBIT 37 PAGE 576

1          3.      The identity of, and the design, development and first sale of, any

2    products resulting from the MGA PROJECTS.

3          4.      The source, meaning and authenticity of the SUBJECT

4    DOCUMENTS, including of YOUR handwritten notations thereon.

5          5.      The identity of any computer or computer system by or from

6    which the SUBJECT DOCUMENTS were created or generated or in which they have

7    been maintained, and the identity of the computer programming or software used in

8    connection therewith.

9          6.      The identity of DOCUMENTS and tangible items that REFER OR

10    RELATE TO the MGA PROJECTS.

11          7.      The identity, source and current location of each head that was

12    provided by, for or on behalf of YOU to Anna Rhee for painting prior to October 21,

13    2000.

14          8.      The identity of each PERSON involved in the conception, design,

15    development, production, sculpting, rotocasting, molding, modeling or prototyping

16    of each head that was provided by, for or on behalf of YOU to Anna Rhee for

17    painting prior to October 21, 2000.

18

19

20

21

22

23

24

25

26

27

28

07209/637198.1

NOTICE OF DEPOSITION OF MGA

EXHIBIT 37 PAGE 577

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On February 16, 2005, I served the foregoing document described as **NOTICE OF DEPOSITION OF MGA ENTERTAINMENT INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on all interested parties in this action.

**Diana M. Torres**
**O'Melveny & Myers LLP**
400 South Hope Street
Los Angeles, California 90071-2899
TEL: 213-430-6000
**FAX: 213-430-6403**

[ ]    By placing [ ] the original [ X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]    **BY MAIL**

[ ]    I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by <u>Federal Express</u>.

[X]    **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ X ]    **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on February 16, 2005, at Los Angeles, California.

[ ]    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]    (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

<u>Maria Albert</u>
Print Name

Signature

**EXHIBIT 37 PAGE 578**

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

　　　　I am employed in the county of Los Angeles  State of California.  I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

　　　　On February 16, 2005, I served the foregoing document described as **NOTICE OF DEPOSITION OF MGA ENTERTAINMENT INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on  all interested parties in this action.

**Robert F. Millman, Esq.**
**Douglas A. Wickham, Esq.**
**Keith A. Jacoby, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
Phone: 310-553-0308
**Fax: 310-553-5583**

[ ]　　　By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]　　　**BY MAIL**

[ ]　　　I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[ ]　　　As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]　　　**BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by Federal Express.

[X]　　　**BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ]　　　**BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on February 16, 2005, at Los Angeles, California.

[ ]　　　(State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]　　　(Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Maria Albert
Print Name

Signature

**EXHIBIT 37 PAGE 579**