# EXHIBIT 40

RECEIVED

SEP 0 5 2007

1  DALE M. CENDALI (admitted *pro hac vice*)
   DAVID I. HURWITZ (S.B. #174632)
2  O'MELVENY & MYERS LLP
   400 South Hope Street
3  Los Angeles, CA 90071-2899
   Telephone:  (213) 430-6000
4  Facsimile:  (213) 430-6407
   Email:     dhurwitz@omm.com
5
6  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK,
   JACOBS, WEIL & SHAPIRO, LLP
7  10250 Constellation Boulevard, 19th Floor
   Los Angeles, CA  90067
8  Telephone:  (310) 553-3000
   Facsimile:  (310) 557-9815
9
   Attorneys for MGA Entertainment, Inc.
10

11          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
12                 **EASTERN DIVISION**

13

14

15  CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

16          Plaintiff,                   **MGA ENTERTAINMENT, INC.'S**
                                         **NOTICE OF DEPOSITION OF**
17      v.                               **MATTEL, INC. PURSUANT TO**
                                         **FED. R. CIV. P. 30(b)(6)**
    MATTEL, INC., a Delaware
18  Corporation,

19          Defendant.

20  CONSOLIDATED WITH                    Judge:  Hon. Stephen G. Larson

21  MATTEL, INC. v. BRYANT and           Date:              September 19, 2007
                                         Discovery Cut-Off:  March 3, 2008
22  MGA ENTERTAINMENT, INC. v.           Pretrial Conference: June 2, 2008
    MATTEL, INC.                         Trial Date:         July 1, 2008
23

24

25

26

27

28

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       PLEASE TAKE NOTICE that pursuant to the provisions of Federal Rule of

3   Civil Procedure 30(b)(6), MGA Entertainment, Inc. ("MGA") will take the

4   deposition upon oral examination of Mattel, Inc. ("Mattel") regarding the matters

5   described below beginning on September 19, 2007, at 9:30 a.m., and continuing

6   from day to day thereafter, excluding weekends and holidays, or as otherwise

7   agreed by counsel, until completed.

8       The deposition will be held at the offices of O'Melveny & Myers LLP, 400

9   South Hope Street, Los Angeles, California 90071, telephone: (213) 430-6000.  The

10  deposition will be taken before a notary public or other officer authorized to

11  administer oaths and will be recorded by stenographic, sound and visual means.

12  The stenographic recordation method may provide for the instant visual display of

13  the testimony at deposition.  MATTEL shall designate one or more officers,

14  directors, managing agents or other PERSONS who consent to testify on

15  MATTEL's behalf, who shall testify as to matters known or reasonably available to

16  MATTEL relating to the topics listed in Attachment A.

17

18  Dated:  September 5, 2007

19                                          O'MELVENY & MYERS LLP

20

21                                          By

22                                          David Hurwitz
                                            Attorneys for Plaintiff MGA
23                                          Entertainment, Inc.

24

25

26

27

28

# ATTACHMENT A

**EXHIBIT 40 PAGE 607**

# ATTACHMENT A

## DEFINITIONS

1.      "ACCELERACERS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "AcceleRacerS," "Acceleracers," or "Accelleracers."

2.      "ACTION" shall mean this action consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.,* first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entm't, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

3.      "ADVERTISEMENT" means a commercial message or advertisement in any medium, including without limitation, television, radio, movies, magazines, newspapers, the Internet, signage, and billboards.

4.      "ALIEN RACERS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "Alien Racers."

5.      "BARBIE" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "Barbie."

6.      "BRATZ" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known

A-1

1    as, or sold and marketed under the name, "Bratz."

2        7.    "BRAWER" means Ron Brawer.

3        8.    "BRISBOIS" means Janine Brisbois.

4        9.    "BRYANT" means Carter Bryant.

5        10.    "CARU" shall mean and refer to the Children's Advertising Review

6    Unit of the Council of Better Business Bureaus, Inc. and any of its past or present

7    principals, directors, officers, agents, employees, representatives, consultants,

8    attorneys, entities and persons acting in joint-venture or partnership relationships

9    and all others acting on its behalf, pursuant to its authority or subject to its control.

10        11.    "COMMUNICATIONS" means any disclosure, transfer or exchange

11    of information between two or more PERSONS, whether orally or in writing,

12    including without limitation any conversation or discussion by means of meeting,

13    letter, telephone, note, memorandum, telex, telecopier, electronic mail, or any other

14    electronic or other medium.

15        12.    "COUNTERCLAIM[S]" means Mattel's Second Amended Answer in

16    Case No. 05-02727 and Counterclaims for: 1. Copyright Infringement; 2. Violation

17    of the Racketeer Influenced and Corrupt Organizations Act; 3. Conspiracy to

18    Violate the Racketeer Influenced and Corrupt Organizations Act; 4.

19    Misappropriation of Trade Secrets; 5. Breach of Contract; 6. Intentional

20    Interference with Contract; 7. Breach of Fiduciary Duty; 8. Aiding and Abetting

21    Breach of Fiduciary Duty; 9. Breach of Duty of Loyalty; 10. Aiding and Abetting

22    Breach of Duty of Loyalty; 11. Conversion; 12. Unfair Competition; and 13.

23    Declaratory Relief filed July 12, 2007.

24        13.    "COUNTER-DEFENDANTS" means MGA, LARIAN, BRYANT,

25    MGA HK, MGA MEXICO, MACHADO, and Does 4 through 10.

26        14.    "DIVA STARZ" means and refers to each image, character, logo, doll,

27    styling head, plush toy, toy, accessory, product, packaging or other thing or matter

28    that is or has ever been manufactured, marketed or sold by MATTEL, or others

EXHIBIT 40 PAGE 609

1   under license by MATTEL, as part of a line of goods or merchandise commonly

2   known as, or sold and marketed under the name, "Diva Starz."

3       15.   "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

4   Civil Procedure 24, and shall be construed in the broadest sense to mean any and all

5   writings, tangible things and property, of any kind, that are now or that have been in

6   YOUR actual or constructive possession, custody or control, including, but not

7   limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

8   punched, copied, recorded, transcribed, graphic or photographic matter of any kind

9   or nature, in, through, or from which information may be embodied, translated,

10  conveyed or stored, whether an original, a draft or copy, however produced or

11  reproduced, whether sent or received or neither, including, but not limited to, notes,

12  memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports,

13  inter- and intra-office COMMUNICATIONS, work papers, work sheets, work

14  records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

15  estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders,

16  telephone records, telegrams, telexes, literature, invoices, contracts, purchase

17  orders, estimates, recordings, transcriptions of recordings, records, books,

18  pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio

19  and digital recordings, television commercials, story boards, website or other spot

20  advertisements, movies, movie trailers, prototypes, samples, products, diaries,

21  calendars, charts, drawings, sketches, messages, photographs and data contained in

22  or accessible through any electronic data processing system, including, but not

23  limited to, computer databases, data sheets, data processing cards, computer files

24  and tapes, computer disks, CD-ROMs, computer meta-data, microfilm, microfiche,

25  electronic mail, website and web pages and transcriptions thereof and all other

26  memorializations of any conversations, meetings and conference, by telephone or

27  otherwise.  The term DOCUMENT also means every copy of a DOCUMENT,

28  where such copy is not an identical duplicate of the original, whether because of

A-3

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40 PAGE 610

1   deletions, underlinings, showing of blind copies, initialing, signatures, receipt

2   stamps, comments, notations, differences in stationery or any other difference or

3   modification of any kind.

4       16.   "ELECTRONIC RECORDS" means electronic documents, data or

5   electronically stored information — including writings, drawings, graphs, charts,

6   photographs, sound recordings, images, and other data or data compilations stored

7   in any medium from which information can be obtained, including but not limited

8   to emails (Outlook, Exchange, etc.), word processing files (Word, WordPerfect,

9   etc.), spreadsheets (Excel, etc.), databases (Access, SQL, etc.), presentations

10   (PowerPoint, etc.), picture files (gif, tif, jpg, etc.), graphic files (DWG, PCX, EPS,

11   high or multi-dimension, etc.), audio files (wav, snd, rmp, etc.), video files (mpg,

12   mov, etc.), or any other compilation of data used by YOU.

13       17.   "FLAVAS" means and refers to each image, character, logo, doll,

14   styling head, plush toy, toy, accessory, product, packaging or other thing or matter

15   that is or has ever been manufactured, marketed or sold by MATTEL, or others

16   under license by MATTEL, as part of a line of goods or merchandise commonly

17   known as, or sold and marketed under the name, "Flavas."

18       18.   "4-EVER BEST FRIENDS" means and refers to each image,

19   character, logo, doll, styling head, plush toy, toy, accessory, product, packaging or

20   other thing or matter that is or has ever been manufactured, marketed or sold by

21   MGA, or others under license by MGA, as part of a line of goods or merchandise

22   commonly known as, or sold and marketed under the name, "4-Ever Best Friends."

23       19.   "INITIAL DISCLOSURE WITNESS(ES)" means and refers to each

24   person listed in YOUR Consolidated Initial Disclosures, served on January 5, 2007.

25       20.   "LARIAN" means MGA's Chief Executive Officer, Isaac Larian.

26       21.   "LITTLE MOMMY" means and refers to each image, character, logo,

27   doll, styling head, plush toy, toy, accessory, product, packaging or other thing or

28   matter that is or has ever been manufactured, marketed or sold by MATTEL, or

A-4

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40 PAGE 611

1   others under license by MATTEL, as part of a line of goods or merchandise

2   commonly known as, or sold and marketed under the name, "Little Mommy."

3       22.   "MACHADO" means Carlos Gustavo Machado Gomez.

4       23.   "MATTEL," "YOU" and "YOUR" shall mean and refer to defendant

5   Mattel, Inc. and any of its past or present officers, directors, agents, employees,

6   representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates,

7   predecessors-in-interest and successors-in-interest, entities and persons acting in

8   joint venture or partnership relationships with MATTEL and any others acting on

9   MATTEL's behalf, pursuant to its authority or subject to its control.

10      24.   "MGA" shall mean and refer to plaintiff MGA Entertainment, Inc. and

11  any of its past or present officers, directors, agents, employees, representatives,

12  consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

13  interest (including ABC International Traders, Inc. and Micro Games of America,

14  Inc.) and successors-in-interest, entities and persons acting in joint venture or

15  partnership relationships with MGA and any others acting on MGA's behalf,

16  pursuant to its authority or subject to its control.

17      25.   MGA HK shall mean counter-defendant MGA Entertainment (HK)

18  Ltd. and any of its past or present officers, managers, agents, employees,

19  representatives, consultants, attorneys, divisions, affiliates, predecessors-in-interest

20  and successors-in-interest, entities and persons acting in joint venture or partnership

21  relationships with MGA HK and any others acting on MGA HK's behalf, pursuant

22  to its authority or subject to its control.

23      26.   MGA MEXICO shall mean counter-defendant MGAE de Mexico,

24  S.R.L. de C.V. and any of its past or present officers, managers, agents, employees,

25  representatives, consultants, attorneys, divisions, affiliates, predecessors-in-interest

26  and successors-in-interest, entities and persons acting in joint venture or partnership

27  relationships with MGA MEXICO and any others acting on MGA MEXICO's

28  behalf, pursuant to its authority or subject to its control.

A-5

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40 PAGE 612

1     27.    "MOMMY'S LITTLE…" means and refers to each image, character,

2  logo, doll, styling head, plush toy, toy, accessory, product, packaging or other thing

3  or matter that is or has ever been manufactured, marketed or sold by MGA, or

4  others under license by MGA, as part of a line of goods or merchandise commonly

5  known as, or sold and marketed under the names beginning with, "Mommy's

6  Little…," including but not limited to the phrase "Mommy's Little Patient."

7     28.    "MY SCENE" means and refers to each image, character, logo, doll,

8  styling head, plush toy, toy, accessory, product, theme, packaging or other thing or

9  matter that is or has ever been manufactured, marketed or sold by MATTEL, or

10  others under license by MATTEL, as part of a line of goods or merchandise

11  commonly known as, or sold and marketed under the name, "My Scene."

12     29.    "MY SCENE THEMES" means and refers to the following themes for

13  MY SCENE products: "Chillin Out!," "Night on the Town," "Jammin' in Jamaica,"

14  and "My Bling Bling."

15     30.    "NPD" shall mean and refer to The NPD Group, Inc. and NPD

16  Funworld, and any of their past or present principals, directors, officers, agents,

17  employees, representatives, consultants, attorneys, entities and persons acting in

18  joint-venture or partnership relationships and all others acting on their behalf,

19  pursuant to its authority or subject to its control.

20     31.    "PERSON" or "PERSONS" means all natural persons, partnerships,

21  corporations, joint ventures and any kind of business, legal or public entity or

22  organization, as well as its, his or her agents, representatives, employees, officers

23  and directors and any one else acting on its, his or her behalf, pursuant to its, his or

24  her authority or subject to its, his or her control.

25     32.    "POLLY POCKET" means and refers to each image, character, logo,

26  doll, styling head, plush toy, toy, accessory, product, theme, packaging or other

27  thing or matter that is or has ever been manufactured, marketed or sold by

28  MATTEL, or others under license by MATTEL, as part of a line of goods or

1    merchandise commonly known as, or sold and marketed under the name, "Polly

2    Pocket."

3         33.    The terms "RELATE TO" and "REFER TO" should each be construed

4    in the broadest possible sense to mean concerning, consisting of, referring to,

5    describing, discussing, constituting, evidencing, containing, reflecting, mentioning,

6    pertaining to, citing, summarizing, analyzing or bearing any logical or factual

7    connection with the matter discussed.

8         34.    "RELEVANT TIME PERIOD" means the period from January 1,

9    1998 through the present.

10        35.    "TIA" shall mean and refer to the Toy Industry Association, Inc., and

11   any of its past or present principals, directors, officers, agents, employees,

12   representatives, consultants, attorneys, entities and persons acting in joint-venture

13   or partnership relationships and all others acting on its behalf, pursuant to its

14   authority or subject to its control.

15        36.    "TREANTAFELLES" means Paula (Treantafelles) Garcia, currently

16   MGA's Vice President of Product Design and Development.

17        37.    "TRUEBA" means Mariana Trueba Alamada.

18        38.    "VARGAS" means Pablo Vargas San Jose.

19        39.    "WEE 3 FRIENDS" means and refers to each image, character, logo,

20   doll, styling head, plush toy, toy, accessory, product, packaging or other thing or

21   matter that is or has ever been manufactured, marketed or sold by MATTEL, or

22   others under license by MATTEL, as part of a line of goods or merchandise

23   commonly known as, or sold and marketed under the name, "Wee 3 Friends."

24        40.    "WSJ REPORTERS" means and refers to any current or former

25   reporters for the *Wall Street Journal* (including, but not limited to, Maureen

26   Tkacik) and any of their agents, assistants, investigators, employees, or

27   representatives.

28        41.    "WSJ STATEMENTS" means and refers to any and all of the

A-7

EXHIBIT 40 PAGE 614

1    following statements that appeared in the *Wall Street Journal* article, dated July 18,

2    2003, entitled "Dolled Up: To Lure Older Girls, Mattel Brings in Hip-Hop Crowd":

3    ....Inside Mattel, some are convinced the Bratz borrow liberally from a
     Mattel project that was scrapped at the testing stage in 1998....

4    Mr. Bryant didn't work on the line that Mattel scrapped, according to

5    former and current Mattel designers. But most Barbie designers had
     seen the prototypes, his former colleagues say. ...

6    The Mattel doll line that was scrapped wasn't exactly like the Bratz,

7    says a longtime Mattel designer who worked on the project. But the

8    Bratz's oversized heads -- with their pursed lips and cartoonish eyes --
     are "virtually identical" to the heads of the dolls her team created, says

9    the designer, who left Mattel in 2001.

10   Lily Martinez, a designer who still works at Mattel, came up with the

11   idea for the big doll heads for Mattel, colleagues say. ... She even
     posted her sketch on her cubicle, colleagues say. "Anyone who passed

12   by her cubicle would see the picture up on the wall," says another

13   designer who also left Mattel in 2001. "The big heads, the big eyes,

14   the big feet -- they were all the same" as the Bratz.

15   The Mattel dolls were scrapped in testing, current and former
     designers say, because Mattel had strict quotas that allowed only one

16   "flanker brand" -- that is, a brand that would compete with Barbie for

17   shelf space -- on the market at a time. At the time, Mattel chose a
     product called "What's Her Face" -- a doll with a blank face on which

18   kids could draw expressions. ...

19                        **EXAMINATION TOPICS**

20      1.    MGA's and MGA MEXICO's alleged theft and use of, or direction of

21   others to steal and use on MGA's or MGA MEXICO's behalf, MATTEL's trade

22   secrets in Mexico as alleged in paragraphs 37-54 of YOUR COUNTERCLAIMS,

23   including but not limited to (a) any trade secrets or confidential or proprietary

24   information of MATTEL stolen or used by MGA or MGA MEXICO; (b) MGA and

25   LARIAN's alleged enticement and direction of MACHADO, VARGAS or

26   TRUEBA to steal MATTEL's trade secrets; (c) the specific DOCUMENTS and

27   data allegedly copied, taken, accessed or modified by MACHADO, VARGAS, or

28   TRUEBA; (d) YOUR policies and procedures for protecting the confidentiality of

                                    A-8          MGA'S 30(b)(6) DEPOSITION NOTICE
                                                 CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 40 PAGE 615**

1    the DOCUMENTS and data YOU contend were improperly taken by MACHADO,

2    TRUEBA or VARGAS; (e) the factual basis of YOUR information and belief that

3    MACHADO, TRUEBA or VARGAS delivered an internal line list to LARIAN or

4    another MGA officer as alleged in paragraph 49 of YOUR COUNTERCLAIMS;

5    (f) YOUR knowledge of any use of the allegedly misappropriated information by

6    MGA for unfair advantage in the United States and Mexico as alleged in paragraph

7    50 of YOUR COUNTERCLAIMS; (g) alleged efforts by MACHADO, TRUEBA

8    and VARGAS to conceal their alleged theft as alleged in paragraph 51 of YOUR

9    COUNTERCLAIMS; (h) YOUR investigation of facts and circumstances

10   concerning the departure of MACHADO, VARGAS or TRUEBA from MATTEL

11   and the alleged theft and use, including any proof of actual use by them or MGA

12   MEXICO, of MATTEL trade secrets in Mexico; (i) when YOU first learned the

13   facts and circumstances alleged in paragraphs 37-54 of YOUR

14   COUNTERCLAIMS; (j) YOUR and YOUR agents' and attorneys' roles in,

15   participation in or knowledge of any and all investigations by Mexican government

16   authorities as alleged in paragraph 53 of YOUR COUNTERCLAIMS; and (n)

17   YOUR knowledge of COMMUNICATIONS between MGA, LARIAN, or other

18   MGA or MGA MEXICO employees or agents on the one hand and MACHADO,

19   VARGAS or TRUEBA on the other hand, including but not limited to the

20   recruitment and hiring MACHADO, VARGAS or TRUEBA and the use of "Plot

21   04" email account.

22        2.    MGA's alleged hiring of BRAWER to facilitate its theft and use,

23   including any proof of actual use, of MATTEL's business methods and practices as

24   alleged in paragraphs 55-69 of YOUR COUNTERCLAIMS, including but not

25   limited to (a) the specific confidential and proprietary information YOU contend

26   that BRAWER took from MATTEL as alleged in 68-69 of YOUR

27   COUNTERCLAIMS; (b) BRAWER's Employee Invention and Trade Secret

28   Agreement with Tyco; (c) BRAWER's access to confidential information about

A-9                    MGA'S 30(b)(6) DEPOSITION NOTICE
                       CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40 PAGE 616

1    Mattel and its business; (d) YOUR COMMUNICATIONS with BRAWER

2    concerning MATTEL's Code of Conduct and protecting MATTEL's confidential

3    and proprietary business information; (e) the contents of the cardboard box

4    allegedly carried by BRAWER out of MATTEL's offices on September 15, 2004

5    as alleged in paragraph 62 of YOUR COUNTERCLAIMS; (f) the taking by

6    BRAWER of the 2004 sales plan for one of MATTEL's significant customers as

7    alleged in paragraph 62 of YOUR COUNTERCLAIMS; (g) YOUR

8    COMMUNICATIONS with BRAWER during his exit interview; (h) when YOU

9    first learned the facts and circumstances alleged in paragraphs 55-69 of YOUR

10   COUNTERCLAIMS; (i) YOUR investigation of facts and circumstances

11   concerning BRAWER's departure from MATTEL and BRAWER's alleged theft

12   and use of MATTEL's highly valuable business methods and practices; and (j)

13   BRAWER's alleged targeting of and COMMUNICATIONS with MATTEL

14   employees in an effort to induce them to join MGA and misappropriate confidential

15   MATTEL information as alleged in paragraph 69 of YOUR COUNTERCLAIMS,

16   including the IDENTITIES of the MATTEL employees contacted by BRAWER

17   and YOUR knowledge of the substance of those COMMUNICATIONS.

18        3.     MGA's alleged theft and actual use of, or direction of others to steal

19   and use on MGA's behalf, MATTEL's trade secrets in Canada as alleged in

20   paragraphs 70-76 of YOUR COUNTERCLAIMS, including (a) the specific

21   DOCUMENTS and data allegedly copied, taken, accessed or modified by

22   BRISBOIS; (b) when YOU first learned the facts and circumstances alleged in

23   paragraphs 70-76 of YOUR COUNTERCLAIMS; and (c) YOUR investigation of

24   facts and circumstances concerning BRISBOIS's departure from MATTEL and

25   alleged theft and use of, including any proof of actual use by MGA of, MATTEL

26   trade secrets in Canada, including MATTEL's participation in any investigation by

27   Canadian government authorities.

28

A-10

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40 PAGE 617

4.      Any other instances where YOU contend that MGA misappropriated or attempted to misappropriate MATTEL trade secrets for the benefit of MGA, or persuaded MATTEL employees to join MGA to misappropriate MATTEL trade secrets as alleged in paragraph 77 of YOUR COUNTERCLAIMS, including (a) the IDENTITY of all former MATTEL employees who allegedly copied, took, accessed, modified or actually used MATTEL confidential information; (b) confidential information or trade secrets allegedly copied and taken from MATTEL; (c) MATTEL confidential information or trade secrets allegedly disclosed to and used by MGA; (d) when each theft occurred; (e) when MATTEL first learned of each theft or attempted theft; and (f) what MATTEL did in response to each theft or attempted theft.

5.      The IDENTITY, origin, source, meaning and authenticity of all materials YOU contend were MATTEL trade secrets improperly taken by employees of MGA, including M0019162-M0032318, M0059836-M0059836, M0074952-M0074961, and M0075253-M0076446 and YOUR policies and procedures for protecting the confidentiality of the DOCUMENTS YOU contend were MATTEL trade secrets improperly taken by employees of MGA.

6.      LARIAN's alleged misrepresentations to retailers about MATTEL's and MGA's products, as alleged in paragraphs 78-81 of YOUR COUNTERCLAIMS, including (a) the customers and retailers to whom YOU allege LARIAN made false representations; (b) the retailer who cancelled and subsequently reinstated its order for 75,000 units of MY SCENE BLING BLING product; (c) the alleged false and misleading press releases; and (d) YOUR COMMUNICATIONS with any retailers concerning the alleged statements by LARIAN.

7.      YOUR knowledge of all acts YOU contend are the predicate acts constituting a pattern of racketeering activity in violation of RICO as alleged in

A-11

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 40 PAGE 618**

1   paragraph 93 of YOUR COUNTERCLAIMS and Exhibit C to YOUR

2   COUNTERCLAIMS.

3       8.      Any injury or damages suffered by MATTEL resulting from the acts

4   alleged in MATTEL's COUNTERCLAIMS.

5       9.      MGA's alleged theft of "BRATZ" from YOU, including but not

6   limited to (a) MGA's showing of BRATZ prototypes or products to focus groups

7   and retailers in November 2000 as alleged in paragraph 29 of YOUR

8   COUNTERCLAIMS; (b) MGA's and LARIAN's alleged encouragement, aiding,

9   and financing of BRYANT to develop BRATZ while he was a MATTEL employee

10  as alleged in paragraph 33 of YOUR COUNTERCLAIMS; and (c) BRYANT's and

11  MGA's alleged concealment of facts that prevented MATTEL from discovering

12  that MATTEL allegedly was the true owner of BRATZ as alleged in paragraph 35

13  of YOUR COUNTERCLAIMS.

14      10.     COMMUNICATIONS between YOU (including YOUR agents and

15  attorneys) and law enforcement authorities in Mexico, Canada or the United States,

16  including but not limited to the United States Attorney's Office, the Department of

17  Justice and any national, federal, regional, state, provincial, or local authorities,

18  concerning any of the allegations in YOUR COUNTERCLAIMS or any other

19  alleged taking of confidential MATTEL information by MGA or persons currently

20  or formerly employed by MGA, including MACHADO, VARGAS, TRUEBA,

21  BRISBOIS, and Jorge Castilla, and DOCUMENTS YOU or YOUR agents or

22  attorneys provided to such law enforcement authorities.

23      11.     MATTEL's knowledge or information about the involvement of

24  BRYANT or any person then employed by MATTEL (directly or via a temporary

25  employment agency), in the origin, creation, design or and development of BRATZ,

26  including, but not limited to (a) when MATTEL first learned about BRYANT's

27  involvement with the origin and development of BRATZ; and (b) who at MATTEL

28  knew about the involvement of BRYANT or any person then employed by

A-12                     MGA'S 30(b)(6) DEPOSITION NOTICE
                         CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40 PAGE 619

1  MATTEL with the origin, creation, design or development of BRATZ, and when

2  and how each individual came to possess such knowledge or information.

3      12.   The use of any MATTEL materials, property or resources by

4  BRYANT or any person then employed by MATTEL (directly or via a temporary

5  employment agency) in connection with creation, design, or development of the

6  original or first wave of BRATZ fashion dolls and accessories introduced in the

7  U.S. in the summer of 2001, including, without limitation (a) PERSONS allegedly

8  involved in putting together the three dimensional dummy used by BRYANT in

9  meeting with MGA; and (b) the specific MATTEL materials, property or resources

10  allegedly used in putting together the three dimensional dummy used by BRYANT

11  in meeting with MGA.

12      13.   MATTEL's knowledge about BRYANT's performance of services for

13  MGA, including, without limitation (a) when and how MATTEL first learned about

14  BRYANT's performance of any services for MGA; (b) when and how MATTEL

15  first learned about the first instance of BRYANT's performance of services for

16  MGA; and (c) who at MATTEL knew about BRYANT's performance of any

17  services for MGA.

18      14.   MATTEL's knowledge about BRYANT's contacts with MGA,

19  including, without limitation (a) when and how MATTEL first learned of any

20  contacts BRYANT had with MGA; (b) when and how MATTEL first learned of the

21  first contact BRYANT had with MGA; and (c) who at MATTEL knew about

22  BRYANT's contacts with MGA.

23      15.   MATTEL's knowledge of BRYANT's contract with MGA, including

24  without limitation (a) when, how and who at MATTEL first became aware of its

25  existence; (b) when MATTEL first became aware of its terms; and (c) when

26  MATTEL or its agents first obtained a copy of the contract.

27      16.   The WSJ STATEMENTS, including, but not limited to (a) YOUR

28  knowledge of who made the WSJ STATEMENTS, or provided any of the

A-13                   MGA'S 30(b)(6) DEPOSITION NOTICE
                       CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 40 PAGE 620**

1  information contained in the WSJ STATEMENTS, to any WSJ REPORTERS;

2  (b) the identity of all fashion doll or doll designers who left MATTEL in 2001;

3  (c) any efforts by YOU to facilitate the publication of the WSJ STATEMENTS,

4  including, but not limited to, assisting a WSJ REPORTER to obtain the WSJ

5  STATEMENTS or the information contained in the WSJ STATEMENTS, to

6  identify people for WSJ REPORTERS to contact and interview, and to verify the

7  WSJ STATEMENTS or the information contained in the WSJ STATEMENTS;

8  (d) when YOU first learned or became aware of the WSJ STATEMENTS;

9  (e) YOUR response or reaction to the WSJ STATEMENTS after YOU first learned

10 or became aware of them; (f) any actions taken by YOU (including, but not limited

11 to, any investigation or interviews) in response to the WSJ STATEMENTS; and

12 (g) COMMUNICATIONS among MATTEL employees regarding the WSJ

13 STATEMENTS.

14      17.    MATTEL's internal and external investigations of the facts related to

15 this ACTION, including, but not limited to (a) investigations of or concerning

16 BRYANT, Richard Irmen, BRYANT's family, LARIAN, LARIAN's family,

17 MGA, MGA's current and former officers and employees, BRAWER, Farhad

18 (Fred) Larian, Shirin Larian Makabi; Shirin Salemnia, Holly Stinnett, Tina Patel,

19 Mercedeh Ward, Anna Rhee, Veronica Marlowe, Margaret Leahy, Thomas Park,

20 and Jahangir Makabi; (b) surveillance of BRYANT, Richard Irmen, BRYANT's

21 family, LARIAN, LARIAN's family, MGA, MGA's current and former officers

22 and employees, BRAWER, Farhad (Fred) Larian, Shirin Larian Makabi; Shirin

23 Salemnia, Holly Stinnett, Tina Patel, Mercedeh Ward, Anna Rhee, Veronica

24 Marlowe, Margaret Leahy, Thomas Park, and Jahangir Makabi, including the dates

25 and times of surveillance, and the identities of the persons who conducted such

26 surveillance; (c) written or recorded statements; (d) the origin, source, meaning and

27 authenticity of DOCUMENTS produced in this ACTION from YOUR Global

28 Security department files.

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40 PAGE 621

18.    YOUR policies and practices concerning interviews and investigations of employees who leave MATTEL to work for competitors, including but not limited to MGA, and YOUR knowledge of the reason(s) why each of your employees, including but not limited to the following former employees or contractors ceased working for MATTEL or a MATTEL subsidiary to work for MGA or an MGA subsidiary as employees or contractors, including what YOU learned through exit interviews: BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Eve Bennett; Kami Gilmour; Sarah Halpern; Margaret Leahy; Veronica Marlowe; Maureen Mullen; Amy Myer; Anna Rhee; TREANTAFELLES; Odette Vandenburg; Mercedeh Ward; Daniel Cooney; Janet Han; Steve Chang; Lui Domingo; Pui Pootipong; Ellen Komatsu; Shirin Salemnia; Joe Feldman; Ricardo Abundis; Ian Bate; Nanette Black; John E. Bloodworth III; Kevin Bloomfield; Jorge Castilla; Suzy Chang; Steve Cheng; Gerry Cody Jr.; Nick Contreras; Maria De La Cruz; Karen Dixon; Greg Paul Dominguez; Craig Forrest; Mia Garcia; Eduardo Gonzalez; Tracy Hall; Melody Hansen; Todd Hansen; Jill Hatch; Michael Hinh; Janet Hsu; Alice Kao; Ken Kaufman; Pamela Keller; Alejandro Gabriel Keossian; Joyce Kim (Lee); Young Ran Kim; Kristen Kirst; Jill Larson; Adrian (Chi Shing) Law; Bo Lumabao; Dorothy Marks; Raymond John Martin; Aye Aye Min; Yumi Nakamura; Marvin Natareno; Christine Nigoghossian; Amelia Ivy Arafiles Palijo; Danny Pestonji; Denise Phelan; Michael Pickard; Ronald Rae; Leland Ratleff; Desiree Elisabeth Ronquillo; Micaela Ruiz; Natasha Sasic-Koetsier; Maria Elena Salazar; Harvey Scott; Steffen J. Smith; Jier Su; Dennis Soai; Marla Thompson; Chau Ngoc Tran; Esteban Umana; Gail Upshaw; Chang-Chin Wang; Lance Ward; Dawn Whittaker; Jenny Wong; Troy Augborne; Carter Bryant; Reyna Zetino; Daryoush Aryapour; Janet Blaser; Mari Joanne Bower Violette; Lilia Brown; Gabriella Burlando; Fabienne Chonavel; Christine Dailey; Steve Feicht; Christopher Hardouin; Martin Hitch; Jeff Ho; James Huntley; Randi Kagan; Andreas Koch; Lyn Carol Mayer; Susan McBride; Frank Mils; Xuanlan Nguyen;

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40 PAGE 622

1   Gary Thomas O'Brien; Jose Otero; Dan Owen; Nicolletta Parasole; Ana Mancia

2   Parkinson; Roger Rambeau; Wendy Reed; Scot Anthony Reyes; Lon Ross; Dena

3   Schwartz; Brandi Shaver; Holly Stinnett; Lisa Tawil; Gord Terry; Joseph Whitaker;

4   Patrick Williams; Tong Wong; Cherrise Wright; Dave Zbojniewicz; Lourdes

5   Aguilar; Juan Carlos Virrueta Camacho; Alejandro Gurza Romay; Lidia Ivete

6   Montero Leyva; Laura Ochoa; Andrea Ramirez.

7       19.   BRYANT's relationship or contacts with TREANTAFELLES during

8   the time they were both employed at MATTEL, including, but not limited to: (a)

9   YOUR knowledge of whether BRYANT's workspace was next to or near

10   TREANTAFELLES' workspace, and, if so, exactly when and for how long; (b)

11   YOUR knowledge of whether BRYANT and TREANTAFELLES worked together

12   on any projects for MATTEL and, if so, during what time period(s) and specific

13   projects; (c) YOUR knowledge of whether BRYANT and TREANTAFELLES

14   were social acquaintances and, if so, during what time period(s); and (d) any

15   evidence that supports YOUR contention that BRYANT and TREANTAFELLES

16   knew each other during the time they were both employed at MATTEL (including,

17   but not limited to, that they had workspaces near or next to each other, worked on

18   projects together, and/or were social acquaintances), including, but not limited to,

19   any documentary evidence and potential witnesses.

20       20.   The floor plan and seating chart for MATTEL's offices in El Segundo,

21   California in 1999 and 2000, specifically the Design Center and the work spaces of

22   BRYANT, including the origin, source, authenticity, meaning and use of

23   DOCUMENTS produced by MATTEL as M13361-M13368, including M13365A,

24   and the physical proximity of the work spaces of BRYANT and other MATTEL

25   current or former employees, contract workers or PERSONS working for or at

26   MATTEL, including without limitation TREANTAFELLES, Rene Pasko, Lily

27   Martinez, Kislap Ongchangko, Joni Pratt, Barbara Miller, Maureen Mullen and any

28   other PERSON MATTEL claims had confidential information accessed by Bryant

A-16

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40 PAGE 623

1  or MGA (including any current or former employees who were employees, contract

2  workers or vendors of MATTEL at the relevant time).

3      21.   YOUR COMMUNICATIONS and COMMUNICATIONS made on

4  YOUR behalf with Anna Rhee that refer or relate to BRATZ, MGA, BRYANT or

5  Elise Cloonan, including the COMMUNICATIONS with Anna Rhee's counsel and

6  YOUR contacts with Anna Rhee, including but not limited to when she began

7  working for or with MATTEL, what projects she worked on for MATTEL and the

8  dates of such work, and payments made by MATTEL to her.

9      22.   YOUR COMMUNICATIONS and COMMUNICATIONS made on

10  YOUR behalf with Steve Linker that refer or relate to BRATZ, MGA, BRYANT,

11  this ACTION or the asserted or potential allegations or defenses therein, any

12  witnesses in this ACTION, and DOCUMENTS that refer or pertain to any of the

13  above subjects, and YOUR contacts with Steve Linker, including but not limited to

14  when he began working for or with MATTEL, the projects on which he worked for

15  MATTEL and the dates of such work, and payments made by MATTEL to him,

16  and DOCUMENTS that refer or pertain to any of the above subjects.

17      23.   YOUR COMMUNICATIONS and COMMUNICATIONS made on

18  YOUR behalf with Matt Bousquette, Elise Cloonan, David Dees, Sara Halpern,

19  Margaret Hatch aka Margaret Leahy, Rachel Harris, Liz Hogan, Andreas Koch,

20  Steve Linker, Kris Lynch, Veronica Marlowe, Len Mazzocco, Maureen Mullen

21  Chianese, Billy Ragsdale, Wendy Ragsdale, Brian Schmidt, Cassidy Park, Pam

22  Peretz, Jesse Ramirez and Ivy Ross, or any current or former MGA employee or

23  person you know or believe to be a current or former MGA freelancer, where the

24  COMMUNICATIONS refer or relate to BRATZ, MGA, BRYANT, this ACTION

25  or the asserted or potential allegations or defenses therein, any witnesses in this

26  ACTION, and DOCUMENTS that refer or pertain to any of the above subjects.

27

28

A-17

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 40 PAGE 624**

1     24.   The process(es) by which MATTEL evaluates and approves ideas for

2 new fashion dolls, including, but not limited to, any changes to such process(es)

3 after BRATZ dolls were released in 2001.

4     25.   MATTEL'S hiring and recruiting practices, including its practices of

5 recruiting and hiring PERSONS who have been employed by MATTEL

6 competitors, including, but not limited to, MGA, Hasbro, Leap Frog, Jakks Pacific,

7 Maui Toys, Malibu Toys, Galoob Toys, the number of such people MATTEL has

8 hired since 1998, and YOUR efforts to ensure that new employees did not bring

9 confidential information from their former employers.

10    26.   For each and every agreement requested by MATTEL concerning

11 confidentiality, ownership of intellectual property, and/or any post-employment

12 restrictions or obligations to MATTEL, the number, percentage, and identity of

13 MATTEL employees who have refused to sign such agreement(s) since 1998.

14    27.   The circumstances under which BRYANT testified in September 2003

15 in the lawsuit brought by Gunther Wahl against MATTEL, including when and

16 what any individual, including MATTEL'S in-house and outside counsel with

17 direct or supervisory responsibility for this litigation, knew of BRYANT'S

18 anticipated appearance and testimony and the role that appearance and testimony

19 played in the timing of MATTEL'S lawsuit against BRYANT.

20    28.   The identity of, and the sales, revenues, and profits of, any MATTEL

21 product(s) MATTEL contends have been impacted by BRATZ, including, but not

22 limited to, BARBIE, DIVA STARZ, FLAVAS and MY SCENE, and any

23 accessories, and licensed products, from 1990 to the present.

24    29.   The impact BRATZ has had, if any, on the sales and sales revenues of

25 any Mattel product(s), including but not limited to BARBIE, DIVA STARZ,

26 FLAVAS, any accessories and licensed products, and any product not listed herein

27 that Mattel claims have been impacted by BRATZ.

28

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 40 PAGE 625**

1    30.    The net worth or value of MATTEL'S "BARBIE" brand, including,

2    but not limited to, its "My Scene" "Barbie" line of products, from 1990 to the

3    present.

4    31.    The INITIAL DISCLOSURE WITNESSES, including, but not limited

5    to: (a) the specific knowledge or information relevant to YOUR allegations and

6    defenses that YOU believe each INITIAL DISCLOSURE WITNESS possesses; (b)

7    YOUR COMMUNICATIONS with each INITIAL DISCLOSURE WITNESS

8    about the subject matters YOU identified in YOUR Consolidated Initial

9    Disclosures; (c) YOUR COMMUNICATIONS with any PERSON concerning each

10   INITIAL DISCLOSURE WITNESS' knowledge of the subject matters YOU

11   identified in YOUR Consolidated Initial Disclosures; and (d) any DOCUMENTS

12   pertaining to information known by each INITIAL DISCLOSURE WITNESS

13   about the subject matters YOU identified in YOUR Consolidated Initial

14   Disclosures.

15   32.    YOUR awareness of and response to "BRATZ," including, but not

16   limited to: (a) YOUR reaction to "BRATZ" fashion dolls when they were first

17   released in 2001; (b) when and why YOU first began to consider "BRATZ" a

18   competitive threat to YOUR business; (c) YOUR strategies and efforts to compete

19   with "BRATZ" since its release in 2001, including, but not limited to, (i) the

20   creation, development, and release of "FLAVAS"; (ii) the redesign of "DIVA

21   STARZ"; (iii) the creation, development, and release of "MY SCENE"; (iv) the

22   origin, source, meaning and authenticity of the "Bratz Brief" produced in this

23   ACTION at M 0079765-71; (v) the origin, source, meaning and authenticity of the

24   Wal-Mart Hotline Report produced at M0080622-23; and (vi) the origin, source,

25   meaning and authenticity of the "WWBD: What Would Brawer Do?" document

26   produced at M0047508; (vii) the origin, source, meaning and authenticity of notes

27   produced at PMH 2273, 2379-83, 1303-07, 2122-27, 2242-59, 2147-49 and any

28   meeting(s) at which these notes were taken; and (viii) the origin, source, meaning

A-19                    MGA'S 30(b)(6) DEPOSITION NOTICE
                        CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40 PAGE 626

1   and authenticity of Board of Directors Update, dated September 2005, produced at

2   M0093291-93314; and (d) the extent to which "BRATZ" products are present at

3   YOUR offices, including, but not limited to, (i) the current and former MATTEL

4   employees who have or have had "BRATZ" products in their offices or

5   workspaces; and (ii) whether or not YOU have a room or area in YOUR offices

6   dedicated to "BRATZ" products.

7       33.   "MY SCENE," including, but not limited to: (a) the origins or sources

8   of inspiration of the "MY SCENE" female fashion dolls and packaging, including,

9   without limitation, (i) the purpose for which "MY SCENE" fashion dolls and

10   packaging were created; and (ii) the extent to which "BRATZ" fashion dolls and

11   packaging were an inspiration or factor in the development of "MY SCENE"

12   fashion dolls and packaging; (b) any changes to the appearance of the "MY

13   SCENE" female fashion dolls and packaging (including, but not limited to, any

14   changes to the head sculpts, facial features, or face painting) since their initial

15   release; (c) "MyScene Platypus" and the origin, source, meaning and authenticity of

16   the document produced at M0086367-M0086428; (d) the origins or sources of

17   inspiration for the MY SCENE THEMES and the extent to which any "BRATZ"

18   themes were an inspiration or factor in their development; (e) the origins or sources

19   of inspiration for the "MY SCENE" styling heads and the extent to which any

20   "BRATZ" "Funky Fashion Makeover Heads" were an inspiration or factor in their

21   development; (f) the origins or sources of inspiration for the "MY SCENE" plush

22   pets and packaging and the extent to which any "BRATZ PETZ" and packaging

23   was an inspiration or factor in their development; (g) marketing strategies and

24   consumer demographics for "MY SCENE"; and (h) the selection, approval process,

25   design and development of "MY SCENE" products and themes (including timing

26   and release dates).

27       34.   "WEE 3 FRIENDS," including, but not limited to (a) the origins or

28   sources of inspiration of "WEE 3 FRIENDS" and the extent to which "4-EVER

A-20                    MGA'S 30(b)(6) DEPOSITION NOTICE
                        CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40 PAGE 627

1  BEST FRIENDS" was an inspiration or factor in the development; and

2  (b) marketing strategies and consumer demographics for "WEE 3 FRIENDS"; and

3  (c) the selection, approval process, design and development of "WEE 3 FRIENDS"

4  (including timing and release dates).

5      35.   "LITTLE MOMMY," including but not limited to (a) the origins or

6  sources of inspiration of "LITTLE MOMMY" and the extent to which

7  "MOMMY'S LITTLE…" was an inspiration or factor in the development of

8  "LITTLE MOMMY"; (b) marketing strategies and consumer demographics for

9  "LITTLE MOMMY"; and (c) the selection, approval process, design and

10  development of "LITTLE MOMMY" (including timing and release dates).

11      36.   "ACCELERACERS," including, but not limited to (a) the origins or

12  sources of inspiration of "ACCELERACERS" and whether "ALIEN RACERS"

13  was a source of inspiration for or factor in the development of ACCELERACERS;

14  (b) YOUR decision re-brand one of YOUR "Hot Wheels" toy lines

15  "ACCELERACERS"; (c) marketing strategies and consumer demographics for

16  "ACCELERACERS"; and (d) the selection, approval process, design and

17  development of "ACCELERACERS" (including timing and release dates).

18      37.   "DIVA STARZ," including, but not limited to (a) the origins or

19  sources of inspiration of YOUR tag line "Do you have a passion for fashion?" and

20  the extent to which MGA's tag line "The Girls with a Passion for Fashion" was an

21  inspiration or factor; (b) the origins or sources of inspiration of the redesign of

22  "DIVA STARZ" fashion dolls including, without limitation, (i) the purpose for

23  which the redesigned "DIVA STARZ" products were created; and (ii) the extent to

24  which "BRATZ" was an inspiration or factor in the development of the redesigned

25  "DIVA STARZ"; (c) marketing strategies and consumer demographics for "DIVA

26  STARZ"; and (d) the selection, approval process, design and development of

27  "DIVA STARZ" (including timing and release dates).

28      38.   "FLAVAS," including, but not limited to (a) the origins or sources of

A-21

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 40 PAGE 628**

1  inspiration of "FLAVAS" and the extent to which "BRATZ" was an inspiration or

2  factor in the development of "FLAVAS"; (b) marketing strategies and consumer

3  demographics for "FLAVAS"; and (c) the selection, approval process, design and

4  development of "FLAVAS" (including timing and release dates).

5      39.   To the extent not covered by any of the topics above, the identity of

6  any product, project or concept that YOU contend MGA copied or infringed or

7  about which YOU contend that MGA misappropriated MATTEL's trade secrets or

8  other confidential information, and, for each such product, project or concept, (a)

9  all facts concerning its origin, creation, design and development; and (b) any facts

10  underlying YOUR claim or contention that MGA copied or infringed such product,

11  project or concept; and (c) MGA's use of MATTEL'S intellectual property,

12  confidential information or trade secret information in connection therewith.

13      40.   MATTEL's advertising, promotion, and licensing of MY SCENE,

14  BARBIE and DIVA STARZ, including but not limited to any direction or

15  information provided by or from any MATTEL employee to any MATTEL

16  advertising firm, public relations or publicity firm, or licensee concerning any

17  MGA products or advertising.

18      41.   The names, locations, job descriptions and length of employment of

19  current and former MATTEL employees and independent contractors responsible

20  for, who contributed to or who were involved in any aspect of the creation,

21  marketing, sales, design, and development of "MY SCENE," "WEE 3 FRIENDS,"

22  "LITTLE MOMMY," "ACCELERACERS," "DIVA STARZ," and "FLAVAS."

23      42.   Legal actions and claims regarding "MY SCENE" and/or "DIVA

24  STARZ," including, without limitation, any lawsuits, claims, or cease and desist

25  letters that (a) YOU have asserted against any PERSON regarding such PERSON's

26  alleged infringement of "MY SCENE" or "DIVA STARZ" or (b) any PERSON has

27  asserted against YOU that "MY SCENE" or "DIVA STARZ" infringes such

28  PERSON's intellectual property rights.

A-22

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 40 PAGE 629**

43.    YOUR claimed intellectual property rights in "MY SCENE" and "DIVA STARZ," including, without limitation, (a) any applications for registration and registration for copyright, patent, trademark, or any other right sought or obtained by YOU, and any COMMUNICATIONS pertaining thereto; and (b) any trademark searches performed in connection with the selection of the "MY SCENE" or "DIVA STARZ" names.

44.    Any evidence of confusion among consumers, retailers, licensees, suppliers, wholesalers, members of the press, or any other PERSONS between any MATTEL product or packaging on the one hand, and any MGA product or packaging, including, but not limited, to "MY SCENE" and "BRATZ" on the other, and the origin, source, meaning and authenticity the document produced at M0079817-39.

45.    Any statements or comments by any PERSON that a MATTEL product, packaging or ADVERTISEMENT is a copy or "knock off" of an MGA product, packaging or ADVERTISEMENT, including, but not limited, to such comments reflected in YOUR Wal-Mart Fall 2004 Toy Fair Recap (M0080055-65).

46.    Efforts by MATTEL to copy and imitate MGA's ADVERTISEMENTS, including, without limitation, the extent to which ADVERTISEMENTS for "BRATZ" or "ALIEN RACERS" were an inspiration or factor in the development of ADVERTISEMENTS for "MY SCENE" or "ACCELERACERS."

47.    Other than those previously filed and served in this ACTION or in which MGA's counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER or RELATE TO DIVA STARZ, MY SCENE, FLAVAS, and BARBIE that REFER OR RELATE TO the RELEVANT TIME PERIOD (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

A-23

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40 PAGE 630

48.   All COMMUNICATIONS between MATTEL on the one hand and present or former employees or contractors of MGA on the other.

49.   The applications for registration and the registrations for copyright, patent, trademark or any other right that REFER OR RELATE TO DIVA STARZ, MY SCENE, FLAVAS, BARBIE, ACCELERACERS, LITTLE MOMMY, WEE 3 FRIENDS and POLLY POCKET, or their designs RELATING thereto, sought, made or obtained by, for or on behalf of YOU, including without limitation COMMUNICATIONS pertaining thereto.

50.   MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere with or inhibit MGA's business with distributors and retailers (including, but not limited to, Wal-Mart, Target, Toys 'R Us, Zellers, Bandai, Jumbo, and Woolworth U.K.), including, but not limited to (a) pressuring or influencing distributors or retailers not buy, sell or distribute "BRATZ" or other MGA products, to reduce shelf and display space for "BRATZ" or other MGA products, or to place "BRATZ" or other MGA products in unfavorable locations at retail outlets; and (b) COMMUNICATIONS with retailers or distributors RELATING TO whether MGA is providing below-market pricing or discontinuing a product line.

51.   MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere, modify, tamper with or alter MGA's retail product displays, including, but not limited to, COMMUNICATIONS between YOU (including, but not limited to, Erika Ashbrook and Connie Hibbert) and any current or former employee or representative of Wal-Mart (including, but not limited to, Heather Hocut and Barb Lubestine) regarding interfering, modifying, tampering with or altering MGA's retail product displays at Wal-Mart.

52.   MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere with or inhibit MGA's business with a licensee or licensing agent (including, but not limited to, Smith & Brooks, Zeon, Gemma International,

A-24

1  MV Sports, Hart Concepts, Random House, Egmont, Euromic, Character Licensing

2  and Marketing, JNH Israel, SuperRTL, Candide, and Rose Art Industries) and/or to

3  decline to renew a licensing agreement based in whole or in part on that licensee's

4  or licensing agent's relationship (or proposed relationship) with MGA.

5      53.   MATTEL's efforts, or knowledge of any efforts by any PERSON,

6  worldwide to interfere with or inhibit MGA's business with suppliers, factories, or

7  manufacturing facilities, including, but not limited to, Asahi Kasei Life & Living

8  Corporation, L.A.M.P. S.p.A. (a.k.a. Filo), Jetta Company Ltd., Early Light

9  Industrial Co. Ltd., Kaneka Corp., and Universal Commerce Corporation Limited.

10     54.   MATTEL's efforts, or knowledge of any efforts by any PERSON,

11 worldwide to interfere with or inhibit MGA's business, including, without

12 limitation (a) any threats or attempts to reduce advertising spending if a publication

13 reported on MGA, "BRATZ" or other MGA products; (b) any threats, directions or

14 instructions to market research firms (including, but not limited to,

15 ConsumerQuest) not to work with MGA; (c) any efforts to prevent or influence

16 former MATTEL employees or independent contractors (including, but not limited

17 to, Charlotte Broussard, Margo Eldridge, and Andrew Gallerani) from or against

18 working for, with, or on behalf of MGA; (d) COMMUNICATIONS with

19 Nickelodeon regarding MGA's proposed sponsorship of the "Kids' Choice

20 Awards" and MGA's ability to advertise on Nickelodeon; (e) YOUR efforts to

21 pressure or influence 4Kids Entertainment to cancel or discontinue "Bratz"

22 programming; (f) YOUR efforts to interfere with MGA's investment in or

23 acquisition of Zapf Creation AG; and (g) YOUR plans, attempts, efforts or intent to

24 interfere with business dealings or contractual relations between MGA and Smoby

25 Group, including, but not limited to, YOUR plans to acquire the "Majorette" brand.

26     55.   YOUR COMMUNICATIONS with any PERSON, including, but not

27 limited to, any supplier, factory manufacturer, distributor, retailer, licensee,

28 licensing agent, market research firm, and independent contractor, REFERRING

A-25

1    OR RELATING TO such PERSON'S business with MGA, including, but not

2    limited to, any efforts by MATTEL to persuade that PERSON (a) to cease doing

3    business with MGA; (b) to limit or reduce its business with MGA; or (c) increase

4    such PERSON'S business with MATTEL at the expense of that PERSON'S

5    business with MGA.

6       56.    YOUR knowledge of MGA's non-public information (regardless of

7    the source) and YOUR efforts worldwide to monitor, "spy on" or gain knowledge

8    of MGA's activities, unreleased products, and product creation, design and

9    development, including, but not limited to (a) contacts with MGA's current or

10    former employees about MGA or its business; (b) use or attempt to use confidential

11    informants, spies, or moles within MGA; (c) knowledge of any MGA product

12    before its release to the public; (d) the origin, source, meaning and authenticity of

13    the document produced at M0065557-58; (e) instances of obtaining access to MGA

14    showrooms, including obtaining access on false pretenses; (f) access to MGA's

15    products or showroom at any Toy Fair; (g) access to retailer's Plan-o-Grams or

16    merchandising display plans or display areas; and (h) access to MGA's confidential

17    product and pricing information through "competitive management agreements" or

18    "category management agreements" with retailers.

19       57.    MATTEL's efforts, or knowledge of any efforts by any PERSON,

20    worldwide to unfairly compete with MGA by eroding or damaging its goodwill,

21    including, but not limited to (a) efforts to generate negative publicity or consumer

22    comments about MGA, LARIAN, "BRATZ" or other MGA products;

23    (b) COMMUNICATIONS with any PERSON concerning whether "BRATZ" are

24    too sexy or otherwise inappropriate for girls; (c) any publicly-released studies or

25    market research about "BRATZ" or MGA products commissioned by or funded by

26    MATTEL; and (d) efforts to provide negative information about MGA to financial

27    or investment analysts (including, but not limited, to J.P. Morgan) regarding MGA

28    or MGA products.

A-26

1    58.    YOUR COMMUNICATIONS with former MATTEL employees who

2    now work (or subsequently worked) for MGA, including but not limited to letters

3    sent to former MATTEL employees warning them not to disclose information

4    about MATTEL.

5    59.    YOUR hiring of, or consideration of hiring, former MGA employees,

6    including, without limitation, any procedures YOU have adopted to ensure that

7    MGA's confidential proprietary information is protected.

8    60.    The magnitude and scope of layoffs of MATTEL employees during

9    the RELEVANT PERIOD.

10    61.    NPD, including, but not limited to, (a) YOUR payments to NPD,

11    (b) COMMUNICATIONS with NPD regarding MGA's alleged misuse of NPD

12    data; (c) YOUR involvement with and knowledge of NPD's decision to terminate

13    MGA's subscription; (d) YOUR use and misuse of NPD data since 2001; and (e)

14    YOUR efforts to pressure, convince, or request that NPD change product

15    classifications categories involving "BRATZ" or other MGA products and whether

16    such efforts were successful.

17    62.    CARU, including, but not limited to (a) COMMUNICATIONS with

18    CARU regarding MGA's ADVERTISEMENTS, amendments to MGA

19    ADVERTISEMENTS, or MGA's website, including, but not limited to, restrictions

20    placed or suggested to be placed on the foregoing; (b) any formal or informal

21    complaints to CARU regarding MGA's ADVERTISEMENTS or MGA's website;

22    and (c) subsidies given to CARU by MATTEL.

23    63.    TIA, including, but not limited to (a) MATTEL's role in planning, its

24    participation in, or involvement with TIA's Toy-of-the-Year Awards since 2001;

25    and (b) the change in the voting procedures of "Toy of the Year" award from a

26    "people's choice" award to an award based on votes from retailers, the media, and

27    based on NPD data.

28

A-27

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 40 PAGE 634**

1      64.    The facts supporting each of the Affirmative Defenses in YOUR

2   Second Amended Answer in Case No. 05-2727, dated July 12, 2007.

3      65.    The facts REFERRING OR RELATING to MGA's Third Affirmative

4   Defense of Unclean Hands in MGA's Answer and Affirmative Defenses dated

5   August 13, 2007, including, but not limited to (a) MATTEL'S efforts to undermine

6   MGA's business and to "kill" Bratz at any cost, including but not limited to

7   Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products,

8   packaging, themes, and advertising (including for Mattel products MY SCENE,

9   DIVA STARZ, WEE 3 FRIENDS, ACCELERACERS, and POLLY POCKET) and

10  engage in other acts of unfair competition against MGA as alleged in MGA's

11  complaint against MATTEL; (b) MATTEL'S efforts to create negative publicity or

12  press about MGA, MGA products, BRYANT, LARIAN, or MGA employees; (c)

13  MATTEL'S efforts to fund or commission market research or studies that portray

14  BRATZ or MGA products negatively; (d) MATTEL'S efforts to interfere with

15  MGA's acquisition of or investment in Zapf Creation AG; (e) MATTEL'S efforts

16  to include negative references to MGA or BRATZ on MATTEL's "We Believe in

17  Girls" website; (f) MATTEL'S efforts or intent to interfere with business dealings

18  or contractual relations between MGA and Smoby Group; (g) influencing

19  Nickelodeon to reject MGA advertisements or to limit time slots for

20  advertisements; (h) assisting parties in lawsuits against MGA; (i) monitoring,

21  "spying on" or gaining knowledge of MGA's trade secrets, non-public information,

22  non-public activities, unreleased products, and/or product development; (j) gaining

23  access, or attempts to gain access, to MGA showrooms, Plan-o-Grams,

24  merchandising displays, Toy Fair displays on false pretenses; (k) wrongfully

25  obtaining MGA's costs and sales information through Mattel-employed category

26  managers at retailers; (l) inducing non-party customers to breach confidentiality

27  agreements with MGA and divulge non-public information about MGA's

28  unreleased products; (m) covertly investigating MGA, its officers and employees,

1    and their family members; (n) contacting persons under false pretense in order to

2    interrogate them about BRATZ and this litigation; (o) coercing MATTEL

3    employees to accept restrictive covenants (right before massive layoffs) and non-

4    compete clauses and other efforts to prevent prospective MGA employees from

5    accepting offers of employment; (p) MATTEL'S delay in suing BRYANT because,

6    *inter alia*, MATTEL wanted BRYANT to testify in an unrelated MATTEL case;

7    (q) falsely inflating its BARBIE sales figures in an effort to mislead the public and

8    retailers; and (r) taking all measures to conceal its bad acts, including the willful

9    non-retention and destruction of documents.

10        66.    The name, address and telephone number of each PERSON or entity

11    with whom MATTEL has communicated regarding this ACTION or the facts and

12    circumstances giving rise to this ACTION; the facts and circumstances surrounding

13    each such COMMUNICATION, including, without limitation, the date, nature and

14    substance of each such COMMUNICATION; and the name, address and telephone

15    number of each PERSON or entity that may have discoverable knowledge,

16    information or DOCUMENTS.

17        67.    All efforts made by MATTEL, directly or indirectly, to contact or

18    communicate with BRYANT since the commencement of the ACTION regarding

19    any subject, whether or not related to or involving the ACTION, and MATTEL's

20    knowledge of any efforts by third-parties or its counsel to contact or communicate

21    with BRYANT since the commencement of the ACTION.

22        68.    The existence, nature and extent of any third-party funding or

23    reimbursement of fees and costs incurred by MATTEL in prosecuting or defending

24    this ACTION, the sharing with any third-party in the financial outcome of this

25    litigation, and the nature and extent of any insurance, indemnification, or similar

26    agreement or arrangement to fund, pay for or reimburse MATTEL for any potential

27    liability it may incur in connection with this ACTION, and the fee arrangement

28    between MATTEL and Quinn Emanuel Urquhart Oliver & Hedges LLP.

A-29

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 40 PAGE 636**

69.    The relationship between Farhad (Fred) Larian and MATTEL, including, but not limited to (a) COMMUNICATIONS between Farhad (Fred) Larian and MATTEL's counsel; (b) the identity of any DOCUMENTS that Farhad (Fred) Larian has provided to or made available for inspection by MATTEL (including MATTEL's counsel); (c) the identity of any DOCUMENTS that MATTEL (including its counsel) has provided to or made available for inspection by Farhad (Fred) Larian; and (d) MATTEL's efforts to hire Farhad (Fred) Larian as a consultant or expert.

70.    MATTEL's COMMUNICATIONS internally or to third-parties, or assistance to third parties, concerning claims or potential claims against MGA, or relating to MGA products, either directly or indirectly, including COMMUNICATIONS with Art Attacks Ink, LLC; Hasbro; Toys & Trends (Hong Kong) Limited; Cityworld Limited; Jurg Willi Kesselring; UbiSoft Entertainment, S.A.; and Dyscom Corp. dba FilmBratz Productions and Hans Dys.

71.    YOUR policies, practices and procedures, written or otherwise, regarding management, preservation and/or destruction of ELECTRONIC RECORDS during the RELEVANT TIME PERIOD.

72.    The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS relevant to the design, development, sales and marketing of YOUR accused products, as identified in the COMPLAINT.

73.    The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS created or stored by BRYANT; TREANTAFELLES; BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Richard de Anda and any person working with him in Mattel's Global Security department involved in any way in investigating BRYANT, Cassidy Park, Ann Driskill, MGA, LARIAN or any current or former MGA employee; Tim Kilpin; Matthew Bousquette; Robert Eckert; Chuck Scothon; Kislip Ongchanko; Jill Nordquist; Rob Hudnut; Ivy Ross; Alan Kaye; Rene Pasko; Adrienne Fontanella; Tina Patel; Julia Jensen; Julia

A-30

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 40 PAGE 637**

1  Marine; Fred Kawashima; Evelyn Viohl; Anna Rhee; and any other person who
2  currently works or previously worked for MATTEL who MATTEL knows or has
3  reason to believe has knowledge or information concerning the claims or defenses
4  in this litigation or the facts underlying them.

5       74.    YOUR policies, practices and procedures, written or otherwise,
6  regarding employee use of company computers and ELECTRONIC RECORDS
7  during the RELEVANT TIME PERIOD, including but not limited to (a) Desktop
8  computers; (b) Laptop computers; (c) Home-based computers used for company
9  business or communication purposes; (d) Removable media (e.g., USB drives); and
10  (e) PDAs (Personal Digital Assistants).

11       75.    Computers currently in use and computers no longer in use by YOU
12  during the RELEVANT TIME PERIOD, including (a) Number, types and
13  locations; (b) Operating systems with versions and dates of use; and (c) Application
14  software with versions and dates of use.

15       76.    YOUR policies, practices and procedures, written or otherwise,
16  regarding the processing of YOUR computers after an employee leaves YOUR
17  employ.

18       77.    YOUR network architecture during the RELEVANT TIME PERIOD,
19  including (a) Network topology; (b) File-naming conventions; (c) Access
20  authorization; and (d) Remote access.

21       78.    Document management systems used by YOU during the
22  RELEVANT TIME PERIOD.

23       79.    Email systems used by YOU during the RELEVANT TIME PERIOD.

24       80.    Instant messaging systems used by YOU during the RELEVANT
25  TIME PERIOD.

26       81.    YOUR intranets deployed during the RELEVANT TIME PERIOD.

27       82.    YOUR archival systems and procedures, including to/from disk, tape,
28  or other media during the RELEVANT TIME PERIOD.

1    83.    YOUR backup procedures, inventories and schedules, including tape

2    reuse cycles for ELECTRONIC RECORDS during the RELEVANT TIME

3    PERIOD.

4    84.    YOUR efforts to identify and preserve potentially physical and

5    ELECTRONIC RECORDS potentially relevant to the claims and defenses in this

6    ACTION, the dates and circumstances of each and every such efforts, the

7    circumstances surrounding such efforts, and whether such efforts were in

8    anticipation of litigation involving YOU, BRYANT, and/or MGA.

9    85.    YOUR policies, practices and procedures, written or otherwise,

10   regarding monitoring or reviewing of employee-created ELECTRONIC RECORDS

11   by any technical means or by or at the direction of any department at MATTEL,

12   including but not limited to Information Technology, Human Resources and/or

13   "Global Security" or "Worldwide Security" during the RELEVANT TIME

14   PERIOD.

15   86.    YOUR COMMUNICATIONS with American Greetings regarding

16   BRATZ and competing with BRATZ, including by using research and dolls such as

17   Holly Hobby.

18   1697009

19

20

21

22

23

24

25

26

27

28

A-32

EXHIBIT 40 PAGE 639

# EXHIBIT 41

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643

July 7, 2006

<u>VIA FACSIMILE AND U.S. MAIL</u>

Diana Torres, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, California 90071

Re:     <u>Mattel v. Bryant</u>

Dear Diana:

Enclosed please find a notice of deposition for Isaac Larian.

The noticed date is for July 18, 2006, which is the one that MGA offered and Mattel agreed to in order to accommodate Mr. Larian's schedule. As you and I previously discussed, and as you had stated as an incentive for Mattel's agreement to that accommodation, this deposition of Mr. Larian will relate to *Mattel v. Bryant* issues only and Mr. Larian will be made available on a separate, later day for deposition on issues in the *MGA v. Mattel* suit.

Also, in resolving the scheduling of Mr. Larian's deposition as well as the Union Bank subpoena, Dale Cendali and Paula Ambrosini agreed that we would receive two categories of financial information in advance of Mr. Larian's deposition. One category was MGA's audited financial statements. I had understood from Paula at the meet and confer session on June 20 that she would endeavor to produce copies of those by the end of that week. We have not received those audited financial statements as of yet, however, and so I would appreciate your letting us know when we can expect them. (The other category consists of the agreed-upon Union Bank documents, which are now being sent to MGA's counsel directly for review. From what Pam Lloyd at Union Bank last told me, MGA's counsel should be receiving at least two boxes of documents from Union Bank this week.)

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-620-4500 FAX 650-620-4555
PALM SPRINGS | 45-025 Manitou Drive, Suite 8, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

EXHIBIT 41 PAGE 640

I look forward to hearing from you.


Very truly yours,

Michael T. Zeller

07934/1906820.3

07934/1906820.3                    2

EXHIBIT 41 PAGE 641

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3       (michaelzeller@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
4   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
5   Facsimile:  (213) 443-3100

6   Attorneys for Plaintiff and Counter-Defendant
    Mattel, Inc.

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11  | CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
12  |                               | NOTICE OF DEPOSITION OF ISAAC LARIAN |
    |              Plaintiff,       |
13  |                               |
    |         v.                    | Discovery Cutoff Date:  Not Set |
14  |                               | Trial Date:  Not Set |
    | MATTEL, INC., a Delaware      |
15  | Corporation,                  |
16  |              Defendant.       |

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF DEPOSITION

EXHIBIT 41 PAGE 642

1    This document relates to *Mattel v. Carter Bryant, et al.*, formerly Case

2    No. CV 04-09059 SGL (RNBx).

3          TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4          PLEASE TAKE NOTICE that plaintiff and counter-defendant Mattel,

5    Inc. will take the deposition of Isaac Larian on July 18, 2006 beginning at 9:00 a.m.,

6    at the offices of Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South

7    Figueroa Street, 10th Floor, Los Angeles, California, 90017.

8          PLEASE TAKE FURTHER NOTICE that the deposition will take

9    place upon oral examination before a duly authorized notary public or other officer

10    authorized to administer oaths at depositions, and will continue from day to day,

11    Sundays, Saturdays and legal holidays excepted, until completed.

12          PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P.

13    30(b)(2), the deposition will be videotaped.

14

15    DATED:  July 7, 2006        QUINN EMANUEL URQUHART OLIVER &

16                        HEDGES, LLP

17

18                  By___*Mimm T. Z*___

                        Michael T. Zeller

19                      Attorneys for Plaintiff and Counter-

                        defendant Mattel, Inc.

20

21

22

23

24

25

26

27

28

7209/1914956.1

-2-

**EXHIBIT 41 PAGE 643**

1

**PROOF OF SERVICE**

2    I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa
3    Street, 10th Floor, Los Angeles, California 90017-2543.

4    On July 7, 2006, I served true copies of the following document(s) described as **NOTICE OF DEPOSITION OF ISAAC LARIAN** on the parties in this action as follows:
5
**SEE ATTACHED LIST**
6

**BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
7    deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.
8

**BY FACSIMILE:**  On July 7, 2006, I caused said document(s) to be transmitted by facsimile
9    pursuant to Federal Rule of Civil Procedures 5 (b)(2)(d).  The telephone number of the sending facsimile machine was (213) 443-3100.  The name(s) and facsimile machine telephone number(s)
10   of the person(s) served are set forth in the service list.  The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming
11   that the transmission was complete and without error.

12   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.
13
     Executed on July 7, 2006, at Los Angeles, California.
14

15

16   _____
     Mia Albert
17

18

19

20

21

22

23

24

25

26

27

28

07209/1886691.1

**EXHIBIT 41 PAGE 644**

1                                     **SERVICE LIST**

2

3   Keith A. Jacoby, Esq.

      Littler Mendelson

4   2049 Century Park East, 5th Floor

      Los Angeles, CA  90067-3107

5   Telephone: (310) 553-0308

      Facsimile: (310) 553-5583

6

      Diana M. Torres, Esq.

7   O'Melveney & Meyers

      400 So. Hope Street

8   Los Angeles, CA  90071

      Telephone: (213) 430-6000

9   **Facsimile: (213) 430-6407**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                             **EXHIBIT 41 PAGE 645**

# EXHIBIT 42

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
   (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
   (joncorey@quinnemnauel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

[Additional counsel listed on following page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND |
| Defendant. | [PROPOSED] ORDER |
| | Discovery Cutoff Date: Not Set<br>Trial Date: Not Set |

**EXHIBIT 42 PAGE 646**

1   LITTLER MENDELSON
        Robert F. Millman (Bar No. 062152)
2       Douglas A. Wickham (Bar No. 127268)
        Keith A. Jacoby (Bar No. 150233)
3   2049 Century Park East, 5th Floor
    Los Angeles, California 90067-3107
4   Telephone:  (310) 553-0308
    Facsimile:  (310) 553-5583
5
    Attorneys for Carter Bryant
6
    O'MELVENY & MYERS LLP
7       Diana M. Torres (Bar No. 162284)
    400 S. Hope Street
8   Los Angeles, California 90017
    Telephone:  (213) 430-6000
9   Facsimile:  (213) 430-6407

10  O'MELVENY & MYERS LLP
        Dale Cendali
11  Times Square Tower
    7 Times Square
12  New York, NY 10036

13  CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
        Patricia Glaser (Bar No. 55668)
14  10250 Constellation Boulevard - 19th Floor
    Los Angeles, CA 90067
15  Telephone:  (310) 553-3000
    Facsimile:  (310) 556-2920
16
    Attorneys for MGA Entertainment, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

- 2 -

**EXHIBIT 42 PAGE 647**

1      WHEREAS, the parties are in agreement that a discovery master should be
2  appointed in this matter to resolve any discovery disputes and to minimize the
3  burden on the Court; and

4      WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante
5  (Ret.), and he has agreed to serve as a discovery master in this matter;

6      NOW, THEREFORE, to facilitate the fair and efficient completion of pre-
7  trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,
8  Inc., by and through their respective counsel of record, hereby stipulate and agree as
9  follows:

10      1.      The Discovery Master shall be appointed to assure and provide cost-
11  effective discovery and to minimize the burden of discovery disputes upon the
12  Court.  Any and all discovery motions and other discovery disputes in the above
13  captioned action shall be decided by a master ("Discovery Master") pursuant to
14  Federal Rule of Civil Procedure 53.  Any motions currently pending before
15  Magistrate Judge Block shall be transferred to the Discovery Master.  The moving
16  party shall provide to the Discovery Master all papers associated with each pending
17  motion.

18      2.      The Discovery Master shall be Hon. Edward A. Infante (Ret.).  His
19  business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA
20  94111.

21      3.      Judge Infante shall serve as the Discovery Master until all issues herein
22  have been finally disposed of or determined, or until he shall withdraw in
23  accordance with applicable law.  If at any time he becomes unable to serve as the
24  Discovery Master, the parties shall confer to present an alternative agreed-upon
25  designee to the Court.  In the event that the parties cannot agree to an alternate
26  designee, then the Court shall appoint a Discovery Master.

27      4.      The Discovery Master shall have the authority to set the date, time, and
28  place for all hearings determined by the Discovery Master to be necessary; to

1   preside over hearings (whether telephonic or in-person); to take evidence in
2   connection with discovery disputes; to issue orders resolving discovery motions
3   submitted to the Discovery Master; to conduct telephonic conferences to resolve
4   discovery disputes arising during depositions; to issue orders awarding non-
5   contempt sanctions, including, without limitation, the award of attorney's fees, as
6   provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and
7   recommendations, as appropriate.
8          5.     All discovery disputes shall be resolved by motion (except those arising
9   during a deposition which the Discovery Master determines can be resolved by
10  telephonic conference during the deposition).  The moving party shall first identify
11  each dispute, state the relief sought, and identify the authority supporting the
12  requested relief in a meet and confer letter that shall be served on all parties by
13  facsimile or electronic mail.  The parties shall have five court days from the date of
14  service of that letter to conduct an in-person conference to attempt to resolve the
15  dispute.  If the dispute has not been resolved within five court days after such
16  service, the moving party may seek relief from the Discovery Master by formal
17  motion or letter brief, at the moving party's option.  The opposing party shall have
18  five court days from the date of service of the motion or letter brief to submit a
19  formal opposition or response.  Any reply brief or letter brief shall be served within
20  three court days from the date of service of a formal opposition or response.  The
21  hearing on the motion shall take place within five court days of the service of any
22  reply brief or letter unless (a) the parties agree to another hearing date or agree that
23  no hearing is necessary; (b) the Discovery Master determines that no hearing is
24  necessary; or (c) the Discovery Master is not available, in which case the hearing
25  shall take place on the Discovery Master's first available date.  The foregoing shall
26  not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from
27  seeking the Discovery Master's immediate resolution of a dispute or resolution of a
28  dispute upon shortened time upon a showing of good cause why a party would be

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

EXHIBIT 42 PAGE 649

1   prejudiced absent prompt resolution.  Service of any document by fax or electronic

2   mail prior to 6:00 p.m. shall constitute service on that day.

3         6.     The Discovery Master's orders resolving discovery disputes, reports, or

4   recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a

5   Magistrate Judge of the United States District Court.  The Discovery Master shall

6   file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve

7   the parties within five court days of his/her decision on a matter.

8         7.     A court reporter shall transcribe any hearing or other proceeding before

9   the Discovery Master.

10        8.     The cost of any proceeding before the Discovery Master, including the

11  fees of the Discovery Master, the fees of court reporters who transcribe hearings or

12  other proceedings before the Discovery Master, and the fees of any other person

13  necessary to the efficient administration of the proceeding before the Discovery

14  Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,

15  Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,

16  the Discovery Master Orders otherwise.  By agreeing to share costs among the

17  parties, no party waives its right to seek recovery or reimbursement for such costs

18  from any other party.

19        9.     The Discovery Master shall be compensated according to his regular

20  hourly rate of $750.

21        10.    Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery

22  Master shall proceed with all reasonable diligence.

23        11.    Based on an affidavit filed by Hon. Edward A. Infante pursuant to

24  28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not

25  aware that he has a relationship to the parties, to counsel, to the action, or to the

26  Court that would require disqualification of a judge under 28 U.S.C. § 455, and

27  based thereon the parties expressly waive any ground for disqualification disclosed

28  therein of Hon. Edward A. Infante to serve as master in these proceedings.

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

- 5 -

EXHIBIT 42 PAGE 650

1      12.    The Discovery Master shall not have ex parte communications with ~~the~~
2  ~~Court,~~ a party or counsel.

3      13.    The Discovery Master shall preserve and maintain all documents and
4  materials submitted by the parties as well as all orders, reports, and
5  recommendations issued by the Discovery Master.  These documents, materials,
6  orders, reports and recommendations shall be the record of the Discovery Master's
7  activities, and shall be maintained in chronological order until the Discovery Master
8  is informed by the parties that all issues herein have been finally disposed of and
9  determined.

10      14.    The Discovery Master is hereby authorized to receive and consider
11  information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-
12  ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective
13  Order.  The Discovery Master agrees to be bound by the January 4, 2005 Order.

14      15.    All third parties subject to discovery requests or deposition in this
15  litigation shall be bound by the terms of this Stipulation and Order.

16

17  Dated: November 22, 2006                    O'MELVENY & MYERS LLP

18

19                                              By:

20                                              Diana Torres
                                                Attorneys for MGA Entertainment, Inc.
21

22  Dated: November 29, 2006                    LITTLER MENDELSON

23

24                                              By:

25                                              Douglas A. Wickham
                                                Attorneys for Carter Bryant
26

27

28

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

- 6 -

EXHIBIT 42 PAGE 651

1   Dated: ~~November~~ December 4, 2006        QUINN EMANUEL URQUHART
2                                                OLIVER & HEDGES, LLP

3                                            By: _Jon D Corey_____
4                                                Jon D. Corey
                                                 Attorneys for Mattel, Inc.
5

6                              **ORDER**

7        The foregoing Stipulation for Appointment of a Discovery Master is SO
8   ORDERED *as modified.*

9

10  Dated: __12-6-06._____        _S G Larson_____
11                                     Hon. Stephen G. Larson
                                       United States District Court Judge
12

13

14               **CONSENT OF DISCOVERY MASTER**

15       If appointed by the Court, I, the undersigned, consent to serve as Discovery
16  Master in the above referenced proceeding consistent with this Order.
17

18  Dated: __12-5-06_____         _Edward A Infante_____
19                                     Hon. Edward A. Infante (Ret.)
20

21

22

23

24

25

26

27

28

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

**EXHIBIT 42 PAGE 652**

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA )**
**COUNTY OF LOS ANGELES )**

I am employed in the county of Los Angeles  State of California.  I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 5, 2006, I served the foregoing document described as **STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER** on all interested parties in this action.

**Keith A. Jacoby, Esq.**
**Douglas Wickham, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
Phone: 310-553-0308
**Fax: 310-553-5583**

**Diana M. Torres, Esq.**
**O'Melveney & Meyers**
400 S. Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
**Fax: 213-430-6407**

[ ]   By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

**[X]   BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on December 5, 2006, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

  Cheri Hatch
Print Name

Signature

**EXHIBIT 42 PAGE 653**