# EXHIBIT A

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Mattel, Inc.

9                   UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12

| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>NOTICE OF DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |
| --- | --- |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE that on _____, 200_ beginning at

3  9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of

4  defendant MGAE de Mexico, S.R.L. de C.V. at the offices of Quinn Emanuel

5  Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles,

6  CA 90017.  Pursuant to Fed. R. Civ. P. 30(b)(6), MGAE de Mexico, S.R.L. de C.V.

7  shall designate one or more officers, directors, managing agents or other persons

8  who consent to testify on its behalf concerning each of the topics set forth in

9  Exhibit A hereto.

10          PLEASE TAKE FURTHER NOTICE that the deposition will take

11  place before a duly authorized notary public or other officer authorized to administer

12  oaths at depositions, and will continue from day to day, Sundays, Saturdays and

13  legal holidays excepted, until completed.

14          PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

15  P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use

16  Livenote or other technology for real-time transcription of the testimony.

17

18  DATED:  December__, 2007          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
19

20                                     By_____
                                          Jon Corey
21                                        Attorneys for Mattel, Inc.

22

23

24

25

26

27

28

07975/2280277.2

# **EXHIBIT A**

1.      "YOU," "YOUR" or "MGA" means MGAE de Mexico, S.R.L. de C.V., any of its current or former employees (including but not limited to MACHADO, TRUEBA and VARGAS) , officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.      "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

3.      "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.  Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

07975/2280277.2

-2-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1         4.    "DESIGN" or "DESIGNS" means any and all representations,

2 whether two-dimensional or three-dimensional, and whether in tangible, digital,

3 electronic or other form, including but not limited to all works, designs, artwork,

4 sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

5 diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

6 practice, developments, inventions and/or improvements, as well as all other items,

7 things and DOCUMENTS in which any of the foregoing are or have been

8 expressed, embodied, contained, fixed or reflected in any manner, whether in whole

9 or in part.

10         5.    "BRATZ DOLL" means any doll that is or has ever been

11 distributed, marketed, sold or offered for sale under the name "Bratz" or as part of

12 the "Bratz" line.

13         6.    "BRATZ PRODUCT" means any product, whether two-

14 dimensional or three-dimensional, and whether in tangible, digital, electronic or

15 other form: (i) that is or has ever been distributed, marketed or sold under the name

16 "Bratz" or as part of the "Bratz" line; (ii) depicts, incorporates, embodies, consists of

17 or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever been

18 distributed, marketed or sold in any packaging that includes the name "Bratz" or

19 depicts, incorporates, embodies, consists of or REFERS OR RELATES TO

20 BRATZ.

21         7.    "BRATZ LICENSE" means any license that REFERS OR

22 RELATES TO any BRATZ PRODUCT.

23         8.    "SYSTEM" or "SYSTEMS" means any computer or network of

24 computers or other network devices that allow a two or more computers to share

25 information and equipment, including but not limited to local area networks, wide area

26 networks, storage area networks, client-server networks or peer-to-peer networks. The

27 use of the term "SYSTEM" or "SYSTEMS" also includes the brand, model number,

28

07975/2280277.2

-3-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

technical specifications, and capacities of the computers who are part of each such SYSTEM.

9.      "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically or optically.

10.      "ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated therewith.

11.      "IDENTITY" means the following:

(a)      with reference to an individual or individuals, means to state, fully and separately as to each, such individual's full name, any known business title, current or last known business affiliation, current or last known residential address, current or last known business address, current or last known relationship to MGA, and current or last known telephone number.

(b)      with reference to an entity or entities, means to state, fully and separately as to each, such entity's full name, state (or country) of incorporation or organization, present or last known address, and present or last known telephone number.

(c)      with reference to any other DOCUMENT or DOCUMENTS, means to describe each DOCUMENT by Bates number.  In the event that a DOCUMENT does not have a Bates number, IDENTITY means, with respect to each such DOCUMENT, to provide a complete description of it such that it may be the subject of a request for the production of documents, including by stating the date, IDENTITY of the author, addressee(s), signatories, parties, or other PERSONS identified therein, its present location or custodian and a description of its contents.

12.      "RELATING TO" or "REFERS OR RELATES TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to,

07975/2280277.2

-4-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  concerning, supporting, contradicting, negating, revoking or otherwise relating to in
2  any manner.

3      13.   "COMMUNICATION," in the plural as well as the singular,
4  means any transmittal and/or receipt of information, whether such was oral or
5  written, and whether such was by chance, prearranged, formal or informal, and
6  specifically includes, but is not limited to, conversations in person, telephone
7  conversations, electronic mail (including instant messages and text messages),
8  voicemail, letters, memoranda, statements, media releases, magazine and newspaper
9  articles, and video and audio transmissions.

10     14.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS"
11  as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and
12  <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not limited to, all
13  writings and records of every type and description including, but not limited to,
14  contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic
15  mail ("e-mail"), records of telephone conversations, handwritten and typewritten
16  notes of any kind, statements, reports, minutes, recordings, transcripts and
17  summaries of meetings, voice recordings, pictures, photographs, drawings,
18  computer cards, tapes, discs, printouts and records of all types, studies, instruction
19  manuals, policy manuals and statements, books, pamphlets, invoices, canceled
20  checks and every other device or medium by which or through which information of
21  any type is transmitted, recorded or preserved.  Without any limitation on the
22  foregoing, the term "DOCUMENT" shall include all copies that differ in any respect
23  from the original or other versions of the DOCUMENT, including, but not limited
24  to, all drafts and all copies of such drafts or originals containing initials, comments,
25  notations, insertions, corrections, marginal notes, amendments or any other variation
26  of any kind.

27     15.   "PERSON" or "PERSONS" means all natural persons,
28  partnerships, corporations, joint ventures and any kind of business, legal or public

07975/2280277.2

-5-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1   entity or organization, as well as its, his or her agents, representatives, employees,

2   officers and directors and any one else acting on its, his or her behalf, pursuant to

3   its, his or her authority or subject to its, his or her control.

4       16.   "LARIAN" means Isaac Larian, and all of his past or present

5   employees, officers, agents, representatives, attorneys, consultants, independent

6   contractors, any predecessors or successors in interest, and any other PERSON

7   acting on his behalf, pursuant to his authority or subject to his control.

8       17.   "MACHADO" means Carlos Gustavo Machado Gomez, and all

9   of his current or former employees, agents, representatives, attorneys, accountants,

10  vendors, consultants, independent contractors, predecessors-in-interest and

11  successors-in-interest, and any other PERSON acting on his behalf, pursuant to his

12  authority or subject to his control.

13      18.   "TRUEBA" means Mariana Trueba Almada, and all of her

14  current or former employees, agents, representatives, attorneys, accountants,

15  vendors, consultants, independent contractors, predecessors-in-interest and

16  successors-in-interest, and any other PERSON acting on her behalf, pursuant to her

17  authority or subject to her control.

18      19.   "VARGAS" means Pablo Vargas San Jose, and all of his current

19  or former employees, agents, representatives, attorneys, accountants, vendors,

20  consultants, independent contractors, predecessors-in-interest and successors-in-

21  interest, and any other PERSON acting on his behalf, pursuant to his authority or

22  subject to his control.

23      20.   "FORMER MATTEL EMPLOYEES" means any former

24  MATTEL employee who left MATTEL to join YOU, including but not limited to

25  MACHADO, TRUEBA and VARGAS.

26      21.   The singular form of a noun or pronoun includes within its

27  meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of

28  the masculine form of a pronoun also includes within its meaning the feminine form

07975/2280277.2

-6-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  of the pronoun so used, and *vice versa*; the use of any tense of any verb includes

2  also within its meaning all other tenses of the verb so used, whenever such

3  construction results in a broader request for information; and "and" includes "or"

4  and *vice versa*, whenever such construction results in a broader disclosure of

5  documents or information.

## Topics of Examination

7          1.      YOUR knowledge of any MATTEL product prior to the time

8  that such product had been announced or disclosed by MATTEL to retailers or the

9  public.

10         2.      YOUR receipt, reproduction, copying, storage, transmission,

11 transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or

12 information, including but not limited to any compilation of information, that was

13 prepared, made, created, generated, assembled or compiled by or for MATTEL and

14 that was not publicly available at the time of YOUR receipt of such DOCUMENT,

15 data and/or information.

16         3.      YOUR receipt, reproduction, copying, storage, transmission,

17 transfer, retention, destruction, deletion or use of any MATTEL line list or other

18 DOCUMENT prepared by MATTEL identifying MATTEL products in the planning,

19 design or development phase.

20         4.      The hiring, engagement or retention by YOU of any current or

21 former MATTEL employee or contractor, including but not limited to the terms of

22 all employment agreements and agreements RELATING TO confidentiality or the

23 invention, authorship, or ownership of any concept or product.

24         5.      The seizure of DOCUMENTS by Mexican authorities from

25 YOUR office in Mexico City, Mexico, including but not limited to the IDENTITY

26 of such DOCUMENTS and YOUR PRESERVATION of any MATTEL authored

27 DOCUMENT after the execution of the search warrant by Mexican authorities.

28

07975/2280277.2

-7-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1      6.     COMMUNICATIONS RELATING TO the search of YOUR

2  office in Mexico City, Mexico that was conducted by Mexican authorities.

3      7.     The IDENTITY of all DOCUMENTS received by YOU, directly

4  or indirectly, from any FORMER MATTEL EMPLOYEE authored by or for the

5  benefit of MATTEL, or RELATING TO MATTEL or any MATTEL product, plan,

6  client, customer, current or former MATTEL employee, sales, advertising,

7  marketing, analysis, tool or procedure.

8      8.     COMMUNICATIONS with any PERSON RELATING TO

9  YOUR receipt, reproduction, copying, storage, transmission, transfer, retention,

10  destruction, deletion or use of any DOCUMENTS, data and/or information,

11  including but not limited to any compilation of information, that was prepared,

12  made, created, generated, assembled or compiled by or for MATTEL and that YOU

13  received, directly or indirectly, from any FORMER MATTEL EMPLOYEE.

14      9.     COMMUNICATIONS between YOU and any of the FORMER

15  MATTEL EMPLOYEES prior to April 20, 2004, including without limitation any

16  and all DOCUMENTS any of the FORMER MATTEL EMPLOYEES transmitted

17  to or shared with YOU prior to April 20, 2004.

18      10.    COMMUNICATIONS between YOU and any of the FORMER

19  MATTEL EMPLOYEES RELATING TO MATTEL or any MATTEL product,

20  potential product, business plan, line list, DOCUMENT or pricing.

21      11.    COMMUNICATIONS between any of the FORMER MATTEL

22  EMPLOYEES and LARIAN, Thomas Park and/or Susanna Kuemmerle prior to

23  April 20, 2004.

24      12.    Travel to Los Angeles, California by any of the FORMER

25  MATTEL EMPLOYEES between January 1, 2004 and April 20, 2004.

26      13.    The content, meaning and authenticity of e-mail messages,

27  including attachments and metadata, sent from or received by YOU to or from the e-

28  mail address <plot04@aol.com>.

07975/2280277.2

-8-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

14. The content, meaning and authenticity of e-mail messages, including attachments and metadata, sent from or received at the e-mail address <argentrade@aol.com> to or from the e-mail address <plot04@aol.com>.

15. The content, meaning and authenticity of e-mail messages, including attachments and metadata, sent from or received at the e-mail address <argentrade@aol.com> to or from any of the FORMER MATTEL EMPLOYEES.

16. COMMUNICATIONS RELATING TO YOUR market planning and product development RELATING TO the toy market in Mexico prepared, created, sent or transmitted, whether in whole or in part, by MACHADO, TRUEBA and/or VARGAS at any time prior to April 30, 2005.

17. COMMUNICATIONS between YOU and any PERSON RELATING TO the departure or resignation from MATTEL of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

18. The job responsibilities of each FORMER MATTEL EMPLOYEE in the first six months after each joined MGA.

19. The content, meaning and authenticity of each personnel file maintained or created by YOU RELATING TO any FORMER MATTEL EMPLOYEE.

20. Any and all agreements between YOU and any of the FORMER MATTEL EMPLOYEES, including all drafts of such agreements and COMMUNICATIONS related thereto.

21. Compensation, money or any other item of value paid by YOU to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, or paid to any PERSON for the benefit of or RELATING TO any FORMER MATTEL EMPLOYEE.

22. Any promotions, raises, bonuses, monetary incentives, payments, awards, transfers, warnings, admonishment, discipline, reprimands, demotions or

07975/2280277.2

-9-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  terminations of or received by any of the FORMER MATTEL EMPLOYEES while
2  employed by YOU.

3          23.     Any agreements, contracts, offers, promises, proposals or requests
4  RELATING TO the indemnification of or by any of the FORMER MATTEL
5  EMPLOYEES or the payment of legal fees by or for any of the FORMER MATTEL
6  EMPLOYEES.

7          24.     COMMUNICATIONS between YOU and any PERSON
8  RELATING TO the obligations to MATTEL, including the duty of confidentiality,
9  of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

10         25.     COMMUNICATIONS between YOU and any current or
11  FORMER MATTEL EMPLOYEE or MATTEL contractor RELATING TO the
12  ownership of, or any right, title or interest in, any idea, concept, design, or product.

13         26.     COMMUNICATIONS between YOU and any PERSON
14  RELATING TO the retention, destruction, transfer, or use of any information or
15  DOCUMENTS known to or possessed by any current or former MATTEL
16  employee or contractor.

17         27.     The IDENTITY of DOCUMENTS that YOU have reason to
18  believe were created by or originated from MATTEL, other than MATTEL products
19  that YOU purchased at retail at any time since January 1, 2004.

20         28.     The development of MGA's 2005 product line, including the
21  IDENTITY of each person who participated in the decision making leading up to
22  such product line.

23         29.     The development of MGA's 2006 product line, including the
24  IDENTITY of each person who participated in the decision making leading up to
25  such product line.

26         30.     Any warning, admonition, discipline or other adverse
27  employment action by YOU RELATING TO any of YOUR current or former

28

07975/2280277.2

-10-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1   employees for using a competitor's confidential or proprietary information, trade
2   secrets or intellectual property.

3        31.    YOUR policies or procedures regarding the use or prohibition of
4   use of an competitor's confidential or proprietary information, trade secrets or
5   intellectual property.

6        32.    YOUR efforts to maintain the secrecy of YOUR claimed trade
7   secrets and the date YOU started such efforts.

8        33.    Any failures to comply with YOUR efforts to maintain the
9   secrecy of YOUR trade secrets, and any violations of YOUR policies or procedures
10  with respect to the maintenance of the secrecy of YOUR trade secrets.

11       34.    The IDENTITY of each individual who has failed to comply with or
12  violated YOUR policies and procedures to maintain the secrecy of YOUR trade secrets.

13       35.    Any alleged failures of MATTEL to maintain the secrecy of its trade
14  secrets.

15       36.    COMMUNICATIONS between YOU and any individual while
16  the individual was employed by MATTEL.

17       37.    The factual bases for YOUR affirmative defenses.

18       38.    The product name, product number and SKU of each BRATZ
19  PRODUCT, including without limitation each BRATZ DOLL, sold by YOU or
20  YOUR licensees, and the number of units of each sold by YOU or YOUR licensees.

21       39.    YOUR cost of goods sold, unit cost and other costs for each
22  BRATZ PRODUCT, including without limitation BRATZ DOLLS, sold by YOU or
23  YOUR licensees.

24       40.    YOUR revenues and profits, including gross, net and incremental
25  profits, from the sale of each BRATZ PRODUCT sold by YOU or YOUR licensees.

26       41.    The number of units of each BRATZ PRODUCT sold by YOU
27  or YOUR licensees, the identity of each customer to whom YOU or YOUR

28

1   licensees have ever sold any BRATZ PRODUCT, and the revenues and profits that

2   YOU have earned therefrom by customer.

3          42.     Customer returns to YOU of BRATZ PRODUCTS, including

4   without limitation BRATZ DOLLS, sold or distributed by YOU or YOUR licensees.

5          43.     Customer rebates or credits given by YOU or YOUR licensees to

6   customers in connection with BRATZ PRODUCTS, including without limitation

7   BRATZ DOLLS.

8          44.     YOUR cost allocation procedures.

9          45.     YOUR sales, profit and cash flow projections or forecasts for

10  BRATZ PRODUCTS, including without limitation BRATZ DOLLS.

11         46.     The BRATZ DOLLS' share of the fashion doll market in Mexico

12  including, without limitation, the extent to which BRATZ has been or is gaining or

13  losing market share in the Mexico fashion doll market.

14         47.     YOUR net worth on a yearly basis from January 1, 2004 to the

15  present.

16         48.     YOUR monthly, quarterly and annual financial reports, including

17  financial statements (both audited and unaudited) from January 1, 2004 through the

18  present, inclusive.

19         49.     YOUR tax returns from January 1, 2004 to the present, including

20  all schedules and work papers RELATING TO their preparation and filing.

21         50.     YOUR corporate structure since January 1, 2004, including without

22  limitation YOUR relationship with MGA Entertainment, Inc., to MGA Entertainment

23  Mexico, Inc. and the IDENTITY of YOUR officers, directors, shareholders and

24  employees.

25         51.     The retention or destruction policies, procedures and practices for

26  YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO

27  BRATZ since January 1, 2004, including without limitation the retention or destruction

28

07975/2280277.2

-12-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1 of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced,
2 modified or upgraded and (b) when PERSONS leave YOUR employ.

3   52. The preservation, collection, destruction, removal, transfer, loss or
4 impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection
5 with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

6   53. The preservation, collection, destruction, removal, transfer, loss or
7 impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1,
8 2004 that REFER OR RELATE TO MATTEL (including without limitation to any
9 MATTEL product, plan or information) that YOU received in any manner from any
10 PERSON who was at the time an employee of MATTEL or who had previously been
11 an employee of MATTEL.

12   54. YOUR DIGITAL INFORMATION data backup policies, practices
13 and procedures from January 1, 2004 to the present, including without limitation the
14 location and specifications of any media used to preserve YOUR DIGITAL
15 INFORMATION and the software, if any, used to preserve YOUR DIGITAL
16 INFORMATION.

17   55. The DIGITAL INFORMATION SYSTEMS and the application
18 software that YOU have used since January 1, 2004 that REFER OR RELATE TO
19 design, development, planning, inventory, manufacturing, sales, shipping and
20 accounting, including without limitation the common or shared storage for such
21 DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL
22 INFORMATION SYSTEMS, and any changes, modifications or upgrades to such
23 DIGITAL INFORMATION SYSTEMS or application software.

24   56. The IDENTITY of PERSONS, including without limitation
25 vendors, who since January 1, 2004 have been responsible for or supported YOUR
26 DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of
27 such PERSON who serviced or provided hardware for YOUR DIGITAL
28 INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL

1    INFORMATION, including but not limited to internet service providers, and provided

2    analytical, training or implementation services with respect to YOUR DIGITAL

3    INFORMATION SYSTEMS.

4        57.   The electronic messaging SYSTEMS used by YOUR employees

5    within the scope of their employment between January 1, 2004 and the present,

6    including but not limited to electronic mail, instant messenger, telephone or voice-mail,

7    and the routing of such electronic messages to, from or within MGA.

8        58.   YOUR policies, practices and procedures regarding the use of

9    transportable media that contain or are capable of containing DIGITAL

10   INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB

11   drives, portable hard drives, digital cameras and personal digital assistants.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/2280277.2

-14-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

# EXHIBIT B

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | 

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

CARTER BRYANT, an individual,

   Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

   Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

FOURTH NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)

Discovery Cut-off: January 14, 2008
Pre-trial Conference: April 7, 2008
Trial Date: April 29, 2008

07209/2254636.1

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |        PLEASE TAKE NOTICE that on _____, beginning at 9:30 a.m.

3 | Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant

4 | MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges

5 | LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R.

6 | Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers,

7 | directors, managing agents or other persons who consent to testify on its behalf

8 | concerning each of the topics set forth in Exhibit A hereto.

9 |        PLEASE TAKE FURTHER NOTICE that the deposition will take place

10 | before a duly authorized notary public or other officer authorized to administer oaths at

11 | depositions, and will continue from day to day, Sundays, Saturdays and legal holidays

12 | excepted, until completed.

13 |        PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

14 | P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use

15 | Livenote or other technology for real-time transcription of the testimony.

16 |

17 | DATED: _____    QUINN EMANUEL URQUHART OLIVER &
                                              HEDGES, LLP

18 |

19 |                                           By_____

20 |                                               Jon Corey
                                              Attorneys for Mattel, Inc.

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

-1-

**EXHIBIT A**

1. "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2. "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3. "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

4. "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence

1  that is the subject of, or otherwise relevant or responsive to, the Topics of Examination
2  herein.

3         5.    "DESIGN" or "DESIGNS" means any and all representations,
4  whether two-dimensional or three-dimensional, and whether in tangible, digital,
5  electronic or other form, including but not limited to all works, designs, artwork,
6  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
7  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
8  practice, developments, inventions and/or improvements, as well as all other items,
9  things and DOCUMENTS in which any of the foregoing are or have been expressed,
10 embodied, contained, fixed or reflected in any manner, whether in whole or in part.

11        6.    "THE BRATZ PITCH MATERIALS" means each and every
12 BRATZ WORK which was displayed, shown, provided, or offered to YOU on or
13 before the date on which YOU executed the BRYANT/MGA AGREEMENT.

14        7.    "BRYANT/MGA AGREEMENT" means the written agreement
15 between CARTER BRYANT and MGA dated as of September 18, 2000, produced as
16 BRYANT 00794-00799, and any other version or versions thereof.

17        8.    "CREATE OR IMPROVE" or "CREATED OR IMPROVED," in
18 the context of a BRATZ WORK or BRATZ WORKS, means to create, improve,
19 develop, modify, alter, conceive, reduce to practice, or otherwise work on the BRATZ
20 WORK or BRATZ WORKS.

21        9.    "IDENTIFY" or "IDENTITY" means the following:

22        (a)    With reference to an individual, means such individual's
23 name, current or last known business title, current or last known business affiliation,
24 current or last known relationship to YOU, current or last known residential and
25 business address, and current or last known telephone number.

26        (b)    With reference to an entity or governmental organization,
27 means such entity's or organization's name, present or last-known address, and present
28

FOURTH NOTICE OF DEPOSITION OF MGA

07209/2254636.1

1  or last-known telephone number and the IDENTITY of each individual who has served

2  or participated as a contact for or on behalf of such entity or organization.

3          (c)    With reference to an account with a bank or financial

4  institution, means the name and address of the bank or financial institution, the account

5  number(s) for or otherwise associated with such account and the name of each holder,

6  including without limitation each beneficial holder, of each such account.

7          (d)    With reference to a STORAGE DEVICE, means the

8  manufacturer name, brand, model name and number, serial number and all other

9  manufacturer identifiers, and the technical specifications and capacities of such

10  STORAGE DEVICE.

11         10.    "DIGITAL INFORMATION" means any information created or

12  stored digitally, including but not limited to electronically, magnetically or optically.

13         11.    "STORAGE DEVICE" means any computer hard drive, memory,

14  USB device, tape, storage array or any other device or medium that allows a user,

15  whether permanently, temporarily or otherwise, to create, generate, transmit, copy,

16  retain, store or maintain DIGITAL INFORMATION.

17         12.    "GLASER LETTER" means the letter sent from Patricia L. Glaser

18  to John B. Quinn, dated July 5, 2007.

19         13.    "REFER OR RELATE TO" means constituting, embodying,

20  containing, referring to, commenting on, evidencing, regarding, discussing, describing,

21  mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting,

22  negating, revoking or otherwise relating to in any manner.

23         14.    "COMMUNICATION," in the plural as well as the singular, means

24  any transmittal and/or receipt of information, whether such was oral or written, and

25  whether such was by chance, prearranged, formal or informal, and specifically includes,

26  but is not limited to, conversations in person, telephone conversations, electronic mail

27  (including instant messages and text messages), voicemail, letters, memoranda,

28

1  statements, media releases, magazine and newspaper articles, and video and audio
2  transmissions.

3      15.   "EMBODIMENT" means any representation of the identified
4  product or its retail packaging, whether two-dimensional or three-dimensional, and
5  whether in tangible, digital, electronic or other form, including but not limited to all
6  works, designs, artwork, sketches, drawings, illustrations, representations, depictions,
7  blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,
8  reductions to practice, developments, inventions and/or improvements, as well as all
9  other items, things and DOCUMENTS in which any of the foregoing are or have been
10  expressed, embodied, contained, fixed or reflected in any manner, whether in whole or
11  in part.

12      16.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as
13  those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and
14  <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not limited to, all writings
15  and records of every type and description including, but not limited to, contracts,
16  agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"),
17  records of telephone conversations, handwritten and typewritten notes of any kind,
18  statements, reports, minutes, recordings, transcripts and summaries of meetings, voice
19  recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and
20  records of all types, studies, instruction manuals, policy manuals and statements, books,
21  pamphlets, invoices, canceled checks and every other device or medium by which or
22  through which information of any type is transmitted, recorded or preserved. Without
23  any limitation on the foregoing, the term "DOCUMENT" shall include all copies that
24  differ in any respect from the original or other versions of the DOCUMENT, including,
25  but not limited to, all drafts and all copies of such drafts or originals containing initials,
26  comments, notations, insertions, corrections, marginal notes, amendments or any other
27  variation of any kind.

28

07209/2254636.1

-5-

17.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

18.    "CONTESTED MGA PRODUCTS" means the CONTESTED BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS PRODUCTS, and any other doll, product, toy, packaging, advertisement or other matter that, in whole or in part, provides a basis for any claim or defense by YOU against MATTEL.

19.    "CONTESTED BRATZ DOLLS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL:  (i) any EMBODIMENT or project ever known by the name "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "Bratz" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz" or any derivative thereof.

07209/2254636.1

-6-

1        20.   "CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD"

2  means any of the following that provides a basis for any claim by YOU against

3  MATTEL: (i) any EMBODIMENT or project ever known by the name "Bratz Funky

4  Fashion Makeover Head" or any derivative thereof (whether in whole or in part and

5  regardless of what such EMBODIMENT or project is or has been also, previously or

6  subsequently called) and any styling head or any portion thereof that is now or has ever

7  been known as, or sold, offered for sale, licensed, offered for license or marketed under,

8  the name or term "Bratz" or any derivative thereof (whether in whole or in part and

9  regardless of what such styling head is or has been also, previously or subsequently

10  called), and all prototypes, models, samples and versions of such EMBODIMENT,

11  styling head or any portion thereof; (ii) any accessory that YOU distribute under the

12  name "Bratz Funky Fashion Makeover Head" or any derivative thereof; and/or (iii) any

13  and all other goods, product packaging, advertisements, promotional materials or other

14  thing or item or material manufactured, produced, printed, ordered, marketed,

15  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

16  offered for license, sold or offered for sale by YOU or on YOUR behalf under the name

17  "Bratz Funky Fashion Makeover Head" or any derivative thereof.

18        21.   "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means any

19  of the following that provides a basis for any claim by YOU against MATTEL: (i) any

20  EMBODIMENT or project ever known by the name "4-ever Best Friends" or any

21  derivative thereof (whether in whole or in part and regardless of what such

22  EMBODIMENT or project is or has been also, previously or subsequently called) and

23  any doll or any portion thereof that is now or has ever been known as, or sold, offered

24  for sale, licensed, offered for license or marketed under, the name or term "4-ever Best

25  Friends" or any derivative thereof (whether in whole or in part and regardless of what

26  such doll is or has been also, previously or subsequently called), and all prototypes,

27  models, samples and versions of such EMBODIMENT, doll or any portion thereof;

28  (ii) any playset and accessory that YOU distribute under the name "4-ever Best

FOURTH NOTICE OF DEPOSITION OF MGA

1  Friends" or any derivative thereof; and/or (iii) any and all other goods, product

2  packaging, advertisements, promotional materials or other thing or item or material

3  manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

4  distributed, shipped, imported, exported, licensed, offered for license, sold or offered

5  for sale by YOU or on YOUR behalf under the name "4-ever Best Friends" or any

6  derivative thereof.

7          22.     "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS" means

8  any of the following that provides a basis for any claim by YOU against MATTEL:

9  (i) any EMBODIMENT or project ever known by the name "Mommy's Little Patient"

10  or similar name or any derivative thereof (whether in whole or in part and regardless of

11  what such EMBODIMENT or project is or has been also, previously or subsequently

12  called) and any doll or any portion thereof that is now or has ever been known as, or

13  sold, offered for sale, licensed, offered for license or marketed under, the name or term

14  "Mommy's Little Patient" or similar name or any derivative thereof (whether in whole

15  or in part and regardless of what such doll is or has been also, previously or

16  subsequently called), and all prototypes, models, samples and versions of such

17  EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU

18  distribute under the name "Mommy's Little Patient" or similar name or any derivative

19  thereof; and/or (iii) any and all other goods, product packaging, advertisements,

20  promotional materials or other thing or item or material manufactured, produced,

21  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

22  imported, exported, licensed, offered for license, sold or offered for sale by YOU or on

23  YOUR behalf under the name "Mommy's Little Patient" or similar name or any

24  derivative thereof.

25          23.     "CONTESTED ALIENRACERS PRODUCTS" means any of the

26  following that provides a basis for any claim by YOU against MATTEL:  (i) any

27  EMBODIMENT or project ever known by the name "Alienracers" or any derivative

28  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

-8-

07209/2254636.1

1  project is or has been also, previously or subsequently called) and any toy vehicle,

2  character, or any portion thereof that is now or has ever been known as, or sold, offered

3  for sale, licensed, offered for license or marketed under, the name or term "Alienracers"

4  or any derivative thereof (whether in whole or in part and regardless of what such toy is

5  or has been also, previously or subsequently called), and all prototypes, models,

6  samples and versions of such EMBODIMENT, toy vehicle, character, or any portion

7  thereof; (ii) any playset and accessory that YOU distribute under the name

8  "Alienracers" or any derivative thereof; and/or (iii) any and all other goods, product

9  packaging, advertisements, promotional materials or other thing or item or material

10 manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

11 distributed, shipped, imported, exported, licensed, offered for license, sold or offered

12 for sale by YOU or on YOUR behalf under the name "Alienracers" or any derivative

13 thereof.

14         24.    "CONTESTED MATTEL PRODUCTS" means the CONTESTED

15 MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED MATTEL MY

16 SCENE PETS PRODUCTS, the CONTESTED MATTEL MY SCENE STYLING

17 HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the CONTESTED

18 MATTEL LITTLE MOMMY DOLL PRODUCTS, and the CONTESTED MATTEL

19 ACCELERACERS PRODUCTS, and any other MATTEL doll, product, toy,

20 packaging, advertisement or other matter that, in whole or in part, provides a basis for

21 any claim or defense by YOU against MATTEL.

22         25.    "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"

23 means any of the following that provides a basis for any claim by YOU against

24 MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene" or

25 any derivative thereof (whether in whole or in part and regardless of what such

26 EMBODIMENT or project is or has been also, previously or subsequently called) and

27 any doll or any portion thereof that is now or has ever been known as, or sold, offered

28 for sale, licensed, offered for license or marketed under, the name or term "My Scene"

1  or any derivative thereof (whether in whole or in part and regardless of what such doll

2  is or has been also, previously or subsequently called), and all prototypes, models,

3  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

4  playset and accessory that MATTEL distributes under the name "My Scene" or any

5  derivative thereof; and/or (iii) any and all other goods, product packaging,

6  advertisements, promotional materials or other thing or item or material manufactured,

7  produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

8  shipped, imported, exported, licensed, offered for license, sold or offered for sale by

9  MATTEL under the name "My Scene" or any derivative thereof.

10        26.   "CONTESTED MATTEL MY SCENE PETS PRODUCTS" means

11 any of the following that provides a basis for any claim by YOU against MATTEL:

12 (i) any EMBODIMENT or project ever known by the name "My Scene Pets" or any

13 derivative thereof (whether in whole or in part and regardless of what such

14 EMBODIMENT or project is or has been also, previously or subsequently called) and

15 any toy pet or any portion thereof that is now or has ever been known as, or sold,

16 offered for sale, licensed, offered for license or marketed under, the name or term "My

17 Scene" or any derivative thereof (whether in whole or in part and regardless of what

18 such toy pet is or has been also, previously or subsequently called), and all prototypes,

19 models, samples and versions of such EMBODIMENT, toy pet or any portion thereof;

20 (ii) any playset and accessory that MATTEL distributes under the name "My Scene

21 Pets" or any derivative thereof; and/or (iii) any and all other goods, product packaging,

22 advertisements, promotional materials or other thing or item or material manufactured,

23 produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

24 shipped, imported, exported, licensed, offered for license, sold or offered for

25        27.   "CONTESTED MATTEL MY SCENE STYLING HEAD" means

26 any of the following that provides a basis for any claim by YOU against MATTEL:

27 (i) any EMBODIMENT or project ever known by the name "My Scene Styling Head"

28 or any derivative thereof (whether in whole or in part and regardless of what such

07209/2254636.1

FOURTH NOTICE OF DEPOSITION OF MGA

1    EMBODIMENT or project is or has been also, previously or subsequently called) and

2    any styling head or any portion thereof that is now or has ever been known as, or sold,

3    offered for sale, licensed, offered for license or marketed under, the name or term "My

4    Scene" or any derivative thereof (whether in whole or in part and regardless of what

5    such styling head is or has been also, previously or subsequently called), and all

6    prototypes, models, samples and versions of such EMBODIMENT, styling head or any

7    portion thereof; (ii) any accessory that MATTEL distributes under the name "My Scene

8    Styling Head" or any derivative thereof; and/or (iii) any and all other goods, product

9    packaging, advertisements, promotional materials or other thing or item or material

10   manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

11   distributed, shipped, imported, exported, licensed, offered for license, sold or offered

12   for sale by MATTEL under the name "My Scene Styling Head" or any derivative

13   thereof.

14        28.    "CONTESTED MATTEL WEE-3 PRODUCTS" means any of the

15   following that provides a basis for any claim by YOU against MATTEL:  (i) any

16   EMBODIMENT or project ever known by the name "Wee-3" or any derivative thereof

17   (whether in whole or in part and regardless of what such EMBODIMENT or project is

18   or has been also, previously or subsequently called) and any doll or any portion thereof

19   that is now or has ever been known as, or sold, offered for sale, licensed, offered for

20   license or marketed under, the name or term "Wee-3" or any derivative thereof

21   (whether in whole or in part and regardless of what such doll is or has been also,

22   previously or subsequently called), and all prototypes, models, samples and versions of

23   such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that

24   MATTEL distributes under the name "Wee-3" or any derivative thereof; and/or (iii) any

25   and all other goods, product packaging, advertisements, promotional materials or other

26   thing or item or material manufactured, produced, printed, ordered, marketed,

27   advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

28

1 offered for license, sold or offered for sale by MATTEL under the name "Wee-3" or
2 any derivative thereof.

3        29.    "CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS"
4 means any of the following that provides a basis for any claim by YOU against
5 MATTEL:   (i) any EMBODIMENT or project ever known by the name "Little
6 Mommy" or any derivative thereof (whether in whole or in part and regardless of what
7 such EMBODIMENT or project is or has been also, previously or subsequently called)
8 and any doll or any portion thereof that is now or has ever been known as, or sold,
9 offered for sale, licensed, offered for license or marketed under, the name or term
10 "Little Mommy" or any derivative thereof (whether in whole or in part and regardless
11 of what such doll is or has been also, previously or subsequently called), and all
12 prototypes, models, samples and versions of such EMBODIMENT, doll or any portion
13 thereof; (ii) any playset and accessory that MATTEL distributes under the name "Little
14 Mommy" or any derivative thereof; and/or (iii) any and all other goods, product
15 packaging, advertisements, promotional materials or other thing or item or material
16 manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,
17 distributed, shipped, imported, exported, licensed, offered for license, sold or offered
18 for sale by MATTEL under the name "Little Mommy" or any derivative thereof.

19        30.    "CONTESTED MATTEL ACCELERACERS PRODUCTS" means
20 any of the following that provides a basis for any claim by YOU against MATTEL:
21 (i) any EMBODIMENT or project ever known by the name "AcceleRacers" or any
22 derivative thereof (whether in whole or in part and regardless of what such
23 EMBODIMENT or project is or has been also, previously or subsequently called) and
24 any toy vehicle, character, or any portion thereof that is now or has ever been known as,
25 or sold, offered for sale, licensed, offered for license or marketed under, the name or
26 term "AcceleRacers" or any derivative thereof (whether in whole or in part and
27 regardless of what such toy is or has been also, previously or subsequently called), and
28 all prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

character, or any portion thereof; (ii) any playset and accessory that MATTEL distributes under the name "AcceleRacers" or any derivative thereof ; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by MATTEL under the name "AcceleRacers" or any derivative thereof.

31.    "FORMER MATTEL EMPLOYEES" means any former Mattel employee who left MATTEL to join YOU, including but not limited to Janine Brisbois, Ron Brawer, Jorge Castilla, Nic Contreras, Dan Cooney, Carlos Gustavo Machado, Mariana Trueba Almada, Pablo Vargas San Jose and Shirin Salemnia.

32.    "COMPLAINT" means the Complaint for False Designation of Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 et seq. and California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or about April 13, 2005.

33.    The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

## Topics of Examination

1.    The invention, creation, origin, conception, authorship, design and development of the CONTESTED MGA PRODUCTS, including without limitation the

1   circumstances under which and the date(s) on which each occurred and the IDENTITY
2   and role(s) of each PERSON involved.

3          2.      Any revisions, modifications or changes made to any of the
4   CONTESTED MGA PRODUCTS, including without limitation any proposed
5   alternatives, modifications or changes (whether or not implemented) to such
6   CONTESTED MGA PRODUCTS, the date(s) on which such revisions, modifications
7   or changes were made or proposed and the reasons for their implementation or non-
8   implementation.

9          3.      The development of YOUR 2005 product line, including the
10  IDENTITY of each PERSON who participated in the decision making leading up to
11  YOUR 2005 product line and any changes or modifications thereto, and the invention,
12  creation, origin, conception, authorship, design, development, manufacture, distribution
13  and sale of products therein.

14         4.      The development of YOUR 2006 product line, including the
15  IDENTITY of each PERSON who participated in the decision making leading up to
16  YOUR 2005 product line and any changes or modifications thereto, and the invention,
17  creation, origin, conception, authorship, design, development, manufacture, distribution
18  and sale of products therein.

19         5.      The content, meaning, authenticity and source of
20  COMMUNICATIONS, advertisements, and/or promotional statements that provide a
21  basis for any claim by YOU against MATTEL.

22         6.      COMMUNICATIONS between YOU and any PERSON, including
23  without limitation any retailer or distributor, that REFER OR RELATE TO the
24  CONTESTED MATTEL PRODUCTS.

25         7.      The first date of manufacture, shipment and availability for
26  distribution and retail sale of each of the CONTESTED MGA PRODUCTS.

27
28

-14-

8.    The first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form, and the IDENTITY of each PERSON involved therein.

9.    The sculptures, including all preliminary sculptures and all versions of such sculptures, made, produced or prepared in connection with the CONTESTED BRATZ DOLLS PRODUCTS.

10.    The tooling and manufacture of any of the CONTESTED MGA PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase orders and payment relating thereto and including but not limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging therefor.

11.    The marketing, advertising, promotion and licensing of the CONTESTED MGA PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including the identity of the channels in which such have been or are disseminated or distributed.

12.    The ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

13.    Any copyright, patent, design right or any other registration or application for registration of the CONTESTED MGA PRODUCTS, including but not limited to all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits, correspondence, notes and other DOCUMENTS relating thereto.

14.    The display, exhibition, publication, circulation, or other dissemination of the CONTESTED MGA PRODUCTS to distributors, retailers, licensees, the media, or the public, including but not limited to toy and trade shows and conventions and the date(s) on which such occurred.

1        15.    YOUR expenditures in advertising or promoting the CONTESTED

2    MGA PRODUCTS, including by year and by medium.

3        16.    Any contracts or licenses entered into, negotiated, proposed, or

4    requested RELATING TO any of the CONTESTED MGA PRODUCTS.

5        17.    The target market or potential target market, and the demographics

6    of any actual, potential or prospective consumers, customers, purchasers or licensees of

7    the CONTESTED MGA PRODUCTS.

8        18.    The number of units of the CONTESTED MGA PRODUCTS

9    manufactured, produced, ordered, stored in inventory, imported, exported, shipped,

10   sold, or offered for sale by any PERSON, including but not limited to YOU.

11       19.    YOUR revenues, costs and profits for each of the CONTESTED

12   MGA PRODUCTS, including but not limited to YOUR per-unit cost, and YOUR gross,

13   incremental and net profits for each of the CONTESTED MGA PRODUCTS.

14       20.    Any complaints or dissatisfaction concerning the CONTESTED

15   MGA PRODUCTS, including but not limited to the returns of, or the number of or rate

16   of defects for, such products.

17       21.    Any potential or actual confusion, any potential or actual mistake or

18   any potential or actual deception of any PERSON as to the origin, affiliation,

19   sponsorship or association of the CONTESTED MGA PRODUCTS or CONTESTED

20   MATTEL PRODUCTS that YOU are aware of, including but not limited to all studies,

21   surveys, interviews, reports and COMMUNICATIONS regarding any such confusion,

22   mistake or deception.

23       22.    Any potential or actual confusion, any potential or actual mistake or

24   any potential or actual deception of any PERSON as to the origin, affiliation,

25   sponsorship or association of the CONTESTED MATTEL PRODUCTS that you are

26   aware of, including but not limited to all studies, surveys, interviews, reports and

27   COMMUNICATIONS regarding any such confusion, mistake or deception.

28

23. Any consumer studies, reports, surveys, interviews or reports regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS, included but not limited to YOUR knowledge of the reasons why consumers purchase any of the CONTESTED MGA PRODUCTS or any of the CONTESTED MATTEL PRODUCTS.

24. Marketing studies, marketing plans, sales plans, sales forecasts, strategies and analyses that REFER OR RELATE TO THE CONTESTED MATTEL PRODUCTS.

25. MATTEL's alleged copying, infringement or dilution of the CONTESTED MGA PRODUCTS or any claimed EMBODIMENT thereof.

26. To the extent not disclosed in response to any other Topic, all other facts RELATING TO any claim made by YOU against MATTEL or the CONTESTED MATTEL PRODUCTS, and the IDENTITY of all PERSONS with knowledge thereof.

27. COMMUNICATIONS between YOU and MATTEL RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

28. Any damage, loss, injury or unjust enrichment that YOU claim has been sustained by reason of any act or omission by MATTEL, including but not limited to any alleged lost profits, lost sales, lost royalty, lost opportunity, lost license, revenue, price erosion, or consequential or incidental damage, including but not limited to the causation for any such alleged unjust enrichment, damage, loss, or injury and the amounts of all such damage, loss, injury or unjust enrichment.

29. When, and under what circumstances, YOU became aware that Mattel had created, designed, developed, sold, offered for sale or licensed the CONTESTED MATTEL PRODUCTS.

30. The copying, reproduction or use of any MATTEL work, product, or EMBODIMENT by YOU or on YOUR behalf since January 1, 1999.

FOURTH NOTICE OF DEPOSITION OF MGA

31. Any similarity or dissimilarity between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

32. The hiring, engagement, or retention by YOU of any current or former MATTEL employee or contractor since January 1, 1999, including but not limited to the terms of all employment agreements and agreements RELATING TO confidentiality or the invention, authorship, or ownership of any concept or product.

33. YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that was not publicly available at the time of YOUR receipt of such DOCUMENT, data and/or information.

34. YOUR knowledge of any MATTEL product prior to the time that such product had been announced or disclosed by MATTEL to retailers or the public, including but not limited to the CONTESTED MATTEL PRODUCTS.

35. YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any MATTEL line list or other DOCUMENT prepared by MATTEL identifying MATTEL products in the planning, design or development phase.

36. The search and seizure of DOCUMENTS by Mexican authorities from MGA's office in Mexico City, Mexico, and all COMMUNICATIONS that REFER OR RELATE thereto.

37. All payments of money or any item of value made by YOU, directly or indirectly, or offered, proposed, promised, requested or solicited by or from YOU, directly or indirectly, in connection criminal proceedings or potential or prospective criminal proceedings against YOU or any of YOUR employees, including without limitation Gustavo Machado, and including without limitation YOUR payment or reimbursement of legal fees for or on behalf of any PERSON.

38. COMMUNICATIONS between YOU and any PERSON RELATING TO the resignation or departure of any FORMER MATTEL EMPLOYEES from Mattel.

39. The compensation, money or any other item of value paid to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, by YOU.

40. The identity of DOCUMENTS RELATING TO any MATTEL product or plan that any FORMER MATTEL EMPLOYEE provide or disclosed to or shared with YOU, directly or indirectly.

41. COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from any FORMER MATTEL EMPLOYEE.

42. The content, authenticity, accuracy and meaning of each personnel file maintained or created by YOU RELATING TO any FORMER MATTEL EMPLOYEE.

43. COMMUNICATIONS between YOU and Pablo Vargas San Jose prior to April 20, 2004.

44. COMMUNICATIONS between YOU and Janine Brisbois prior to September 27, 2005.

45. COMMUNICATIONS between YOU and Ron Brawer prior to October 2, 2004.

46. COMMUNICATIONS between YOU and Carlos Gustavo Machado Gomez ("Machado") prior to April 20, 2004.

47. COMMUNICATIONS between YOU and Mariana Trueba Almada ("Trueba") prior to April 20, 2004.

48.     The existence or extent of competition or substitution between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

49.     The factual basis for YOUR claim that any of the CONTESTED MGA PRODUCTS have acquired secondary meaning or are famous.

50.     The factual basis for YOUR claim that any of MATTEL's actions have caused actual dilution.

51.     Mattel's alleged intimidation, coercion or threats to retailers, licensees, suppliers and others in the industry."

52.     The factual basis for YOUR claim that Mattel "serially imitated and copy-catted [*sic*] the look of MGA products, trade dress, trademarks, themes, ideas, advertising and packaging."

53.     The basis for YOUR claim that the Bratz dolls launched in 2001 were "unique and distinctive."

54.     The identification of YOUR alleged trade dress in connection with the CONTESTED MGA PRODUCTS, including without limitation with respect to "themes," and the factual bases for YOUR claim that YOU have any legally protected interest in such trade dress.

55.     The factual basis for YOUR allegation that advertising executives have expressed concern about "Bratz" and Mattel's "My Scene," what concerns they expressed and the IDENTITY of each such executive.

56.     The factual basis for YOUR allegation that the press confused YOUR products with MATTEL products and "has taken notice" of alleged confusion between "Bratz" and "My Scene."

57.     All COMMUNICATIONS relating to customers who have allegedly contacted YOU to purchase Mattel's "My Scene" dolls or any of the CONTESTED MATTEL PRODUCTS.

1    58.    The factual basis for YOUR claim that MATTEL has infringed,
2 diluted or otherwise violated any trade dress that YOU contend YOU own in the
3 CONTESTED MGA PRODUCTS.

4    59.    The factual basis for YOUR claim that MATTEL has engaged in
5 "strong-arm tactics, and other illegitimate, unfair and anti-competitive means."

6    60.    COMMUNICATIONS between YOU and any PERSON
7 RELATING TO the departure from MATTEL of any current or FORMER MATTEL
8 EMPLOYEE or MATTEL contractor.

9    61.    COMMUNICATIONS between YOU and any PERSON
10 RELATING TO the obligations to MATTEL, including the duty of confidentiality, of
11 any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

12    62.    COMMUNICATIONS between YOU and any current or FORMER
13 MATTEL EMPLOYEE or MATTEL or contractor RELATING TO the ownership of
14 any idea, concept, design, or product.

15    63.    COMMUNICATIONS between YOU and any PERSON
16 RELATING TO the retention, destruction, transfer, or use of any information or
17 DOCUMENTS known to or possessed by any current or former MATTEL employee or
18 contractor.

19    64.    Mattel's alleged "warnings," "threats" or "intimidation" that are the
20 subject of YOUR claims, including but not limited to all COMMUNICATIONS with
21 any present or former licensees of MATTEL and any present or former distributors and
22 retailers of MGA and MATTEL products.

23    65.    MATTEL's alleged responsibility for "shortage of doll hair in
24 October 2002."

25    66.    MATTEL's alleged "manipulation of the retail market," including by
26 its alleged tampering with MGA's retail displays.

27    67.    MATTEL's alleged false statements about YOU or YOUR business
28 practices.

1    68. MATTEL's alleged violation of any rules or restrictions relating to

2 data provided to subscribers by NPD or any other wrongful conduct relating to NPD.

3    69. COMMUNICATIONS between YOU and NPD, other than periodic

4 reports transmitted by NPD or information made available to YOU by NPD, between

5 January 1, 2000 and the present.

6    70. YOUR contracts and agreements with NPD since January 1, 1999,

7 including without limitation any allegation by NPD that YOU were or have been in

8 breach or violation thereof.

9    71. The status of YOUR NPD subscription between January 1, 1999 and

10 the present.

11    72. MATTEL's alleged inducement of CARU to place onerous

12 restrictions on MGA advertisements, and require MGA to amend aspects of

13 commercials that have gone unchallenged in other parties' commercials.

14    73. COMMUNICATIONS between YOU and CARU between

15 January 1, 2000 and the present RELATING TO MATTEL, ANY CONTESTED MGA

16 PRODUCTS, ANY CONTESTED MATTEL PRODUCTS or any other subject or

17 matter that YOU are relying upon in this ACTION.

18    74. MATTEL's allegedly improper influence with or within TIA,

19 including but not limited to the procedures for and manner in which the Toy of the Year

20 was selected for 2003.

21    75. YOUR COMMUNICATIONS with TIA RELATING TO Toy of the

22 Year since January 1, 2000 or any other subject or matter on which YOU base any

23 claim.

24    76. MATTEL's purported power, influence and intimidation to threaten

25 retailers, suppliers, licensees, distributors, manufacturers and industry bodies so as to

26 limit or prevent MGA from doing business.

27    77. MATTEL's alleged intimidation of or threats against MGA's current

28 and potential employees.

1    78.   YOUR monthly, quarterly and annual financial reports, including
2  financial statements (both audited and unaudited) for the years 1998 through the
3  present, inclusive.

4    79.   The identity of DOCUMENTS that YOU have reason to believe
5  were created by or originated from MATTEL (excluding MATTEL products that YOU
6  purchased at retail) at any time since January 1, 1998.

7    80.   The destruction of any DOCUMENT RELATING TO the
8  CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

9    81.   COMMUNICATIONS with, or inquiry or investigation by, any
10  government entity, industry organization, safety compliance, or consumer organization
11  RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL
12  PRODUCTS.

13    82.   YOUR understanding or belief of whether the BRYANT/MGA
14  AGREEMENT was lawful when YOU entered into it, and DOCUMENTS and
15  COMMUNICATIONS related thereto.

16    83.   The public perception of the CONTESTED MGA PRODUCTS,
17  including without limitation with respect to the appropriateness or suitability of Bratz
18  for children.

19    84.   The factual basis for YOUR alleged belief that YOU had the right to
20  market products developed as a result of the BRYANT/MGA AGREEMENT and to the
21  lawful right to fully exploit the drawings drawn and presented by BRYANT prior to the
22  execution of the BRYANT/MGA AGREEMENT, and the DOCUMENTS and
23  COMMUNICATIONS YOU so relied upon when YOU entered into the agreement.

24    85.   The factual basis for YOUR contention that YOU believed at the
25  time YOU entered into the BRYANT/MGA AGREEMENT that it would be lawful for
26  YOU to acquire THE BRATZ PITCH MATERIALS from BRYANT, and the
27  DOCUMENTS and COMMUNICATIONS YOU so relied upon at the time YOU
28  entered into the BRYANT/MGA AGREEMENT.

1       86.    YOUR belief or non-belief that BRYANT created or improved any

2  of THE BRATZ PITCH MATERIALS while employed by MATTEL, and the

3  DOCUMENTS and COMMUNICATIONS YOU so relied upon.

4       87.    Any investigation or inquiry YOU conducted to confirm the timing

5  of BRYANT'S work prior to executing the BRYANT/MGA AGREEMENT, including

6  but not limited to DOCUMENTS and COMMUNICATIONS RELATING thereto.

7       88.    The factual bases for YOUR affirmative defenses.

8       89.    The IDENTITY of all DOCUMENTS that were in the possession of

9  Farhad Larian that YOU claim were reviewed by Quinn Emanuel Urquhart Oliver &

10  Hedges LLP at any time prior to January 1, 2007.

11       90.    The factual bases for YOUR allegations in the GLASER LETTER,

12  including YOUR allegation that DOCUMENTS in the possession of Farhad Larian and

13  reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP were purportedly

14  privileged and confidential.

15       91.    Any services Farhad Larian has provided to YOU since January 1,

16  2005, including any litigation consulting services.

17       92.    The IDENTITY of DOCUMENTS that Farhad Larian was provided

18  with or had access to, including YOUR allegedly privileged and confidential

19  DOCUMENTS, since January 1, 2001.

20       93.    The terms of any contracts or agreements, including any

21  confidentiality agreements, between YOU and Farhad Larian.

22       94.    The identity of each doll, accessory, product, work or item

23  produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or

24  on YOUR behalf that was BASED ON any BRATZ DESIGN or any design derivative

25  of any BRATZ DESIGN.

26       95.    Except for deposition testimony provided in this ACTION, the

27  testimony, transcripts, declarations, affidavits and other sworn written statements of any

28  other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO

1  BRATZ and that REFER OR RELATE TO the time period prior to June 30, 2001
2  (regardless of when such testimony or sworn statement was taken, given, signed, made
3  or filed).

4    96. The authenticity, content, timing, meaning, and truth and accuracy
5  of YOUR COMMUNICATIONS with any PERSON, including without limitation any
6  retailer and the media, that REFER OR RELATE TO the National Labor Committee
7  dated December 21, 2006 entitled "Made in China: The Sweatshop Behind the Bratz"
8  or the Hau Tai K4 factory.

9    97. The identity of each doll, product, packaging or other matter that
10  YOU have accused of infringing, diluting or otherwise violating YOUR purported
11  rights in any of the CONTESTED MGA PRODUCTS, the IDENTITY of each
12  manufacturer of each doll, product, packaging or other matter and the specific aspects
13  of each such doll, product, packaging or other matter that YOU have claimed was
14  confusingly or substantially similar to any of the CONTESTED MGA PRODUCTS.

15    98. The identity, and outcome and resolution, of each lawsuit that YOU
16  have brought or cease and desist letter YOU have sent each doll, product, packaging or
17  other matter that YOU have accused of infringing, diluting or otherwise violating
18  YOUR purported rights in any of the CONTESTED MGA PRODUCTS.

19    99. The job responsibilities of each FORMER MATTEL EMPLOYEE
20  in the first six months after each joined MGA.

21    100. YOUR scheduling, planning, inventory, shipping, distribution or
22  forecasting software since January 1, 2005, including but not limited to any and all
23  changes, improvements, acquisitions, upgrades and purchases.

24    101. DOCUMENTS created by each of the FORMER MATTEL
25  EMPLOYEES in the first six months after each joined MGA

26    102. The make-up, source, calculation and purpose of the amounts
27  presented in MGA documents Bates-numbered MGA 0101018-21 (Exhibit 661) and
28  MGA 08185789 (Exhibit 662).

# EXHIBIT C

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   | John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
   | Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
   | Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
   | Timothy L. Alger (Bar No. 160303)
5 | (timalger@quinnemanuel.com)
   | 865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
   | Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Mattel, Inc.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| vs. | MATTEL, INC.'S SUPPLEMENTAL INTERROGATORIES |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

PROPOUNDING PARTY:      Mattel, Inc.

RESPONDING PARTIES:     MGA Entertainment, Inc., Isaac Larian, Carter Bryant, MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and Carlos Gustavo Machado Gomez

SET NO.:                SUPPLEMENTAL

1     Pursuant to <u>Federal Rule of Civil Procedure</u> 33, plaintiff Mattel, Inc.
2  ("Mattel") hereby requests that MGA Entertainment, Inc., Isaac Larian, Carter
3  Bryant, MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and
4  Carlos Gustavo Machado Gomez (collectively, "the Responding Parties")
5  individually answer the following Interrogatories separately and fully, in writing and
6  under oath, within 30 days after service hereof.  The Responding Parties shall be
7  obligated to supplement their responses to the Interrogatories at such times and to
8  the extent required by the <u>Federal Rules of Civil Procedure</u>.
9
10                                    **Definitions**
11     1.     "YOU" and "YOUR" mean each of the Responding Parties.
12     2.     "MGA" means MGA Entertainment, Inc., any of its current or
13  former employees, officers, directors, agents, representatives, attorneys, experts,
14  divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any
15  other PERSON acting on its behalf, pursuant to its authority or subject to its control.
16  Without limiting the foregoing, "MGA" includes the entities known as ABC
17  International Traders or ABC International Traders, Inc.  For purposes of the these
18  Interrogatories, "MGA" does not include BRYANT.
19     3.     "MATTEL" means Mattel, Inc., its current employees, officers,
20  directors, agents, representatives, attorneys, parents, subsidiaries, divisions,
21  AFFILIATES, predecessors-in-interest and successors-in-interest, and any other
22  PERSON acting on its behalf, pursuant to its authority or subject to its control.
23     4.     "AFFILIATES" means any and all corporations, proprietorships,
24  d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or
25  indirectly, in whole or in part, own or control, are under common ownership or control
26  with, or are owned or controlled by a PERSON, party or entity, including without
27  limitation each parent, subsidiary and joint venture of such PERSON, party or entity.
28

1           5.      "PERSON" or "PERSONS" means all natural persons, partnerships,

2    corporations, joint ventures and any kind of business, legal or public entity or

3    organization, as well as its, his or her agents, representatives, employees, officers and

4    directors and any one else acting on its, his or her behalf, pursuant to its, his or her

5    authority or subject to its, his or her control.

6           6.      "DESIGN" or "DESIGNS" means any and all representations,

7    whether two-dimensional or three-dimensional, and whether in tangible, digital,

8    electronic or other form, including but not limited to all works, designs, artwork,

9    sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

10   diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

11   practice, developments, inventions and/or improvements, as well as all other items,

12   things and DOCUMENTS in which any of the foregoing are or have been expressed,

13   embodied, contained, fixed or reflected in any manner, whether in whole or in part.

14          7.      "BRATZ" means any project, product, doll or DESIGN ever known

15   by that name (whether in whole or in part and regardless of what such project, product

16   or doll is or has been also, previously or subsequently called) and any product, doll or

17   DESIGN or any portion thereof that is now or has ever been known as, or sold or

18   marketed under, the name or term "Bratz" (whether in whole or in part and regardless

19   of what such product, doll or DESIGN or portion thereof is or has been also, previously

20   or subsequently called) or that is now or has ever been sold or marketed as part of the

21   "Bratz" line, and each version or iteration of such product, doll or DESIGN or any

22   portion thereof. As used herein, "product, doll or DESIGN or any portion thereof" also

23   includes without limitation any names, fashions, accessories, artwork, packaging or any

24   other works, materials, matters or items included or associated therewith.  Without

25   limiting the generality of the foregoing, the term "BRATZ" does not and shall not

26   require that there be a doll existing at the time of the event, incident or occurrence that

27   is the subject of, or otherwise relevant or responsive to, the Interrogatories.

28

07209/2239571.2

1          8.     "SOLD," "SELL" or "SALE" means to distribute, market, license,

2    sell, offer to sell, or convey or transfer in any way for compensation.

3          9.     "DOCUMENT" or "DOCUMENTS" means all "writings" and

4    "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil

5    Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited

6    to, all writings and records of every type and description including, but not limited to,

7    contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail

8    ("e-mail"), records of telephone conversations, handwritten and typewritten notes of

9    any kind, statements, reports, minutes, recordings, transcripts and summaries of

10   meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes,

11   discs, printouts and records of all types, studies, instruction manuals, policy manuals

12   and statements, books, pamphlets, invoices, canceled checks and every other device or

13   medium by which or through which information of any type is transmitted, recorded or

14   preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall

15   include all copies that differ in any respect from the original or other versions of the

16   DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or

17   originals containing initials, comments, notations, insertions, corrections, marginal

18   notes, amendments or any other variation of any kind.

19         10.    "COMMUNICATION" or "COMMUNICATIONS" means and

20   includes any disclosure, transfer or exchange of information between two or more

21   PERSONS, whether orally or in writing, including without limitation, any conversation

22   or discussion by means of meeting, letter, telephone, note, memorandum, telegraph,

23   telex, telecopier, electronic mail, or any other electronic or other medium, including

24   without limitation in written, audio or video form.

25         11.    "MACHADO" means Carlos Gustavo Machado Gomez, and all of

26   his current or former employees, agents, representatives, attorneys, accountants,

27   vendors, consultants, independent contractors, predecessors-in-interest and successors-

28

1  in-interest, and any other PERSON acting on his behalf, pursuant to his authority or
2  subject to his control.

3       12.   "TRUEBA" means Mariana Trueba Almada, and all of her current
4  or former employees, agents, representatives, attorneys, accountants, vendors,
5  consultants, independent contractors, predecessors-in-interest and successors-in-
6  interest, and any other PERSON acting on her behalf, pursuant to her authority or
7  subject to her control.

8       13.   "VARGAS" means Pablo Vargas San Jose, and all of his current or
9  former employees, agents, representatives, attorneys, accountants, vendors, consultants,
10 independent contractors, predecessors-in-interest and successors-in-interest, and any
11 other PERSON acting on his behalf, pursuant to his authority or subject to his control.

12      14.   "BRAWER" means Ron Brawer, and all of his current or former
13 employees, agents, representatives, attorneys, accountants, vendors, consultants,
14 independent contractors, predecessors-in-interest and successors-in-interest, and any
15 other PERSON acting on his behalf, pursuant to his authority or subject to his control.

16      15.   "CASTILLA" means Jorge Castilla, and all of his current or former
17 employees, agents, representatives, attorneys, accountants, vendors, consultants,
18 independent contractors, predecessors-in-interest and successors-in-interest, and any
19 other PERSON acting on his behalf, pursuant to his authority or subject to his control.

20      16.   "COONEY" means Dan Cooney, and all of his current or former
21 employees, agents, representatives, attorneys, accountants, vendors, consultants,
22 independent contractors, predecessors-in-interest and successors-in-interest, and any
23 other PERSON acting on his behalf, pursuant to his authority or subject to his control.

24      17.   "BRISBOIS" means Janine Brisbois, and all of her current or former
25 employees, agents, representatives, attorneys, accountants, vendors, consultants,
26 independent contractors, predecessors-in-interest and successors-in-interest, and any
27 other PERSON acting on her behalf, pursuant to her authority or subject to her control.

28

1      18.    "RAE" means Ron Rae, and all of his current or former employees,

2  agents, representatives, attorneys, accountants, vendors, consultants, independent

3  contractors, predecessors-in-interest and successors-in-interest, and any other PERSON

4  acting on her behalf, pursuant to her authority or subject to his control.

5      19.    "CONTRERAS" means Nick Contreras, and all of his current or

6  former employees, agents, representatives, attorneys, accountants, vendors, consultants,

7  independent contractors, predecessors-in-interest and successors-in-interest, and any

8  other PERSON acting on her behalf, pursuant to her authority or subject to his control.

9      20.    "ABUNDIS" means Ricardo Abundis, and all of his current or

10  former employees, agents, representatives, attorneys, accountants, vendors, consultants,

11  independent contractors, predecessors-in-interest and successors-in-interest, and any

12  other PERSON acting on her behalf, pursuant to her authority or subject to his control.

13      21.    The "FORMER MATTEL EMPLOYEES" means MACHADO,

14  TRUEBA, VARGAS, BRAWER, CASTILLA, COONEY, BRISBOIS, CONTRERAS,

15  RAE, ABUNDIS, and any other former Mattel employee or contractor who

16  misappropriated Mattel trade secrets or violated his or her obligations to maintain the

17  confidentiality of Mattel's trade secrets.

18      22.    "REFER OR RELATE TO" a given subject matter means relate to,

19  refer to, constitute, contain, embody, depict, incorporate, reflect, evidence, identify,

20  state, deal with, comment on, respond to, describe, analyze, support, refute, contradict,

21  or in any way pertain to that subject matter, either directly or indirectly.

22      23.    "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-

23  9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated

24  therewith.

25      24.    "SLEEKCRAFT FACTORS" means those factors enumerated in

26  AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979), and includes specifically:

27  (1) strength of the mark; (2) similarity of the marks; (3) relatedness of the goods; (4)

28  marketing channels; (5) type of goods and purchaser's likely degree of care; (6)

1  evidence of actual confusion; (7) likelihood of expansion of the product lines; and (8)

2  defendant's intent in selecting the mark.

3       25.   "MATTEL DOCUMENTS" means any and all DOCUMENTS

4  stolen, obtained or taken from MATTEL by any PERSON, including but not limited to

5  the DOCUMENTS identified as Bates Numbers M 0019162-M 0019365, M 0019375-

6  M 0019491, M 0019492-M 0019586, M 0030576, M 0019587-M 0022008, M

7  0022009-M 0026076, M 0026077-M 0029024, M 0029025-M 0029042, M 0029043-M

8  0029044, M 0029045-M 0029050, M 0029051-M 0029053, M 0031471-M 0031473, M

9  0029054-M 0029255, M 0031474-M 0031485, M 0029226-M 0030163, M 0030164-M

10  0030173, M 0030174-M 0030183, M0030261-M 0030268, M 0030269-M 0030278, M

11  0030440-M 0030441, M 0030505-M 0030575, M 0030577-M 0030608, M 0019366-M

12  0019374, M 0030184-M 0030240, M 0030254-M 0030260, M 0030279-M 0030439, M

13  0030442-M 0030470, M 0030471-M 0030501, M 0030609, M 0030610-M 0030625, M

14  0030626-M 0030674, M 0030241-M 0030253, M 0030502-M 0030504, M 0030675-M

15  0030754, M 0030755-M 0030756, M 0030770-M 0030782, M 0030757-M 0030769, M

16  0030783-M 0030788, M 0030789-M 0030799, M 0030800-M 0030834, M 0030835, M

17  0030836-M 0030838, M 0030839-M 0030841, M 0030842-M 0030845, M 0030846-M

18  0030850, M 0030851- M 0030959, M 0030960-M 0030972, M 0030973-M 0031141,

19  M 0031142-M 0031153, M 0031154-M 0031162, M 0031163-M 0031172, M 0031173,

20  M 0031174-M 0031206, M 0031207-M 0031223, M 0031224-M 0031229, M

21  0031230-M 0031247, M 0031248-M 0031258, M 0031259-M 0031262, M 0031263-M

22  0031264, M 0031265, M 0031266, M 0031267, M 0031268, M 0031269, M 0031270-

23  M 0031278, M 0031279-M 0031280, M 0031281-M 0031282, M 0031283-M 0031291,

24  M 0031292-M 0031470, M 0032318, M 0031486-M 0031503, M 0031504-M 0031612,

25  M 0031613-M 0031860, M 0031863-M 0031864, M 0031865-M 0031919, M

26  0031861-M 0031862, M 0031925-M 0032000, M 0031920-M 0031924, M 0032001-M

27  0032009, M 0032010-M 0032057, M 0032058, M 0032059-M 0032070, M 0032071-M

28  0032288, M 0032289, M 0032290-M 0032317, M 0059836-M 0059837, M 0075253-M

-7-

1  0075260, M 0075261-M 0075277, M 0075278-M 0075289, M 0075290-M 0075307, M
2  0075308-M 0075309, M 0075310-M 0075315, M 0075316-M 0075317, M 0075318-M
3  0075322, M 0075323-M 0075324, M 0075325, M 0075326-M 0075328, M 0075329-M
4  0075333, M 0075334-M 0075375, M 0075376-M 0075378, M 0075379-M 0075380, M
5  0075381-M 0075384, M 0075385, M 0075386-M 0075388, M 0075389, M 0075390,
6  M 0075391, M 0075392-M 0075398, M 0075399-M 0075400, M 0075401-M 0075407,
7  M 0075408, M 0075409-M 0075416, M 0075417-M 0075420, M 0075421, M
8  0075422-M 0075469, M 0075470-M 0075490, M 0075491-M 0075494, M 0075495-M
9  0075515, M 0075516-M 0075531, M 0075532-M 0075552, M 0075553-M 0075572, M
10 0075573, M 0075574-M 0075594, M 0075595-M 0075616, M 0075617, M 0075618-M
11 0075619, M 0075620-M 0075635, M 0075636-M 0075654, M 0075655-M 0075661, M
12 0075662-M 0075699, M 0075700-M 0075709, M 0075710-M 0075713, M 0075714-M
13 0075775, M 0075776-M 0075780, M 0075781-M 0075798, M 0075799-M 0075842, M
14 0075843-M 0075906, M 0075907-M 0075949, M 0075950-M 0076018, M 0076019, M
15 0076020-M 0076132, M 0076133-M 0076143, M 0076144-M 0076145, M 0076146-M
16 0076148, M 0076149-M 0076155, M 0076156-M 0076169, M 0076170-M 0076171, M
17 0076172-M 0076196, M 0076197-M 0076215, M 0076216-M 0076250, M 0076251-M
18 0076264, M 0076265-M 0076279, M 0076280, M 0076281-M 0076311, M 0076312-M
19 0076362, M 0076363-M 0076370, M 0076371, M 0076372-M 0076425, M 0076426-M
20 0076427, M 0076428-M 0076431, M 0076432- M 0076442, M 0076443-M 0076446,
21 M 0100646-M 0100653, M 0098687-M 0098688, M 0098689-M 0098697, M
22 0098698-M 0098723, M 0098724-M 0098771, M 0098772-M 0098832, M 0098833-M
23 0098846, M 0098847-M 0098865, M 0098866-M 0098879, M 0098880-M 0098883, M
24 0098884-M 0098933, M 0098934-M 0098936, M 0098937-M 0098971, M 0098972-M
25 0099436, M 0099437-M 0099439, M 0099440-M 0099448, M 0099449-M 0099461, M
26 0099462-M 0099471, M 0099472-M 0099476, M 0099477-M 0099493, M 0099494-M
27 0099529, M 0099530-M 0099594, M 0099595-M 0099597, M 0099598-M 0099601, M
28 0099602-M 0099618, M 0099619-M 0099628, M 0099629-M 0099656, M 0099657-M

-8-

1  0099665, M 0099666-M 0099725, M 0099726-M 0100622, M 0100623-M 0100645, M

2  0100646-M 0100653, M 0100654-M 0100695, M 0100696-M 0100698, M 0100699-M

3  0100700, M 0100701-M 0100735, M 0100736-M 0100741, M 0100742-M 0100774, M

4  0100775-M 0100778, M 0100779-M 0100780, M 0100781, M 0100782, M 0100783-M

5  0100789, M 0100790-M 0100795, M 0100796-M 0100858, M 0100859-M 0100868, M

6  0100869-M 0100878, M 0100879-M 0100891, M 0100892-M 0100905, M 0100906-M

7  0100918, M 0100919-M 0100932, M 0100933-M 0100941, M 0100942-M 0100952, M

8  0100953, M 0100954-M 0100955, M 0100956-M 0100983, M 0100984-M 0101013, M

9  0101014-M 0101064, M 0101065 and M 0101069-M 0101128.

10    26.    "DIGITAL INFORMATION" means any information created or

11  stored digitally, including but not limited to electronically, magnetically or optically.

12    27.    "STORAGE DEVICE" means any computer hard drive, memory,

13  USB device, tape, storage array or any other device or medium that allows a user,

14  whether permanently, temporarily or otherwise, to create, generate, transmit, copy,

15  retain, store or maintain DIGITAL INFORMATION.

16    28.    "SOURCE OF INFORMATION" means any medium containing

17  DOCUMENTS or other information, whether in paper, electronic or other form,

18  including but not limited to any STORAGE DEVICE, file, file cabinet or other any

19  other source of information or DOCUMENTS.

20    29.    "COLLECT," "COLLECTED" or "COLLECTION," with reference

21  to DOCUMENTS, means to collect, review, produce, request, seek, look for, search for,

22  analyze or in any other way collect or review or attempt to collect or review such

23  DOCUMENTS in connection with YOUR search for, review of and/or production of

24  DOCUMENTS in this ACTION.

25    30.    "IDENTIFY" or "IDENTITY" means the following:

26    (a)    with reference to an individual or individuals, means to state,

27  fully and separately as to each, such individual's full name, any known business title,

28  current or last known business affiliation, current or last known residential address,

1 current or last known business address, current or last known relationship to MGA, and
2 current or last known telephone number.

3         (b)    with reference to an entity or entities, means to state, fully and
4 separately as to each, such entity's full name, state (or country) of incorporation or
5 organization, present or last known address, and present or last known telephone
6 number.

7         (c)    with reference to a SOURCE OF INFORMATION, means
8 to describe and state, fully and separately as to each, the SOURCE OF
9 INFORMATION so as to distinctly identify each such SOURCE OF INFORMATION
10 and differentiate each such SOURCE OF INFORMATION from all other SOURCES
11 OF INFORMATION, including without limitation by stating its nature (e.g., USB
12 drive, computer hard drive, file cabinet, etc.), and any unique identifier information
13 (such as hard drive serial number); the physical location(s), including full address
14 information and full identifying computer network drive information if applicable, of
15 each such SOURCE OF INFORMATION (as of the time of YOUR COLLECTION of
16 DOCUMENTS from the SOURCE OF INFORMATION, regardless of whether such
17 DOCUMENTS were thereafter moved elsewhere for the purpose of YOUR review); the
18 IDENTITY of each natural person or individual who is, was or has been associated
19 with each such SOURCE OF INFORMATION; the date(s) on which YOU
20 COLLECTED DOCUMENTS from each such SOURCE OF INFORMATION in
21 connection with this ACTION; and the IDENTITY of any DOCUMENTS, by Bates
22 number, that YOU have produced from each such SOURCE OF INFORMATION to
23 Mattel in this ACTION.

24         (d)    with reference to any other DOCUMENT or DOCUMENTS,
25 means to describe each DOCUMENT by Bates number.  In the event that a
26 DOCUMENT does not have a Bates number, IDENTIFY means, with respect to each
27 such DOCUMENT, to provide a complete description of it such that it may be the
28 subject of a request for the production of documents, including by stating the date,

1  identity of the author, addressee(s), signatories, parties, or other PERSONS identified

2  therein, its present location or custodian and a description of its contents.

3  (e)   with reference to the payment of money or other item of

4  value, or any promise, agreement, proposal or offer to pay money or any item of value,

5  means to state the amount of the payment or the value of the item, the IDENTITY of

6  the payor, the IDENTITY of the payee, the IDENTITY of the PERSON on whose

7  behalf it is being made, the IDENTITY of the PERSON on whose behalf it is being

8  received, the date(s) on which such payment or item of value was paid, promised,

9  agreed to be paid, proposed or offered, the nature of the method of payment (e.g., cash,

10  check) and any identifying information accompanying such payment (e.g., check

11  number), and the IDENTITY of each bank or financial institution involved therein.

12  31.   "Any" as used in these interrogatories includes the word "all," and

13  the word "all" as used in these interrogatories includes the word "any."

14  32.   The singular form of a noun or pronoun includes within its meaning

15  the plural form of the noun or pronoun so used, and vice versa; the use of the masculine

16  form of a pronoun also includes within its meaning the feminine form of the pronoun so

17  used, and vice versa; the use of any tense of any verb includes also within its meaning

18  all other tenses of the verb so used, whenever such construction results in a broader

19  request for information; and "and" includes "or" and vice versa, whenever such

20  construction results in a broader disclosure of documents or information.

21

22  **Instructions**

23  A.   When   an   interrogatory   requests   disclosure   of   a

24  COMMUNICATION or other information as to which YOU claim any privilege or

25  protection as a ground for nondisclosure, identify each PERSON who participated in or

26  had knowledge of the COMMUNICATION or other information and provide the

27  following:

28  (i)   the privilege or protection that YOU claim precludes disclosure;

1          (ii)    the subject matter of the COMMUNICATION or information

2                (without revealing the content as to which the privilege is claimed);

3                and

4          (iii)    any additional facts or grounds on which YOU base YOUR claim

5                of privilege or protection.

6          B.     When an interrogatory requests that YOU provide information,

7  YOU are required to supply all information known by or available to YOU or YOUR

8  employees, officers, directors, agents, representatives, attorneys and experts. If YOU

9  cannot completely answer the interrogatory after making diligent efforts to do so,

10  please so state. Then describe in detail all efforts made to answer the interrogatory;

11  identify every PERSON involved in such efforts; and state the additional information

12  YOU need, if any, to respond completely to the interrogatory.

13

14  **<u>Interrogatories</u>**

15

16  <u>INTERROGATORY NO. 51</u>:

17          For each concept, design, product, product packaging or other matter that

18  YOU contend MATTEL has copied, infringed or diluted, including but not limited to

19  those identified in MGA's Responses to Mattel, Inc.'s First Set of Interrogatories Re

20  Claims of Unfair Competition, Response to Interrogatory No. 2 (and any Supplemental

21  Responses to such Interrogatory), describe, fully and separately, each and every

22  concept, design, product, product packaging or other matter of or by MATTEL that

23  YOU contend is a copy of, infringes or dilutes YOUR alleged concept(s), design(s),

24  product(s), product packaging or other matter. Your answer should describe the Mattel

25  concept, design, product, product packaging or other matter with specificity and in

26  detail (including without limitation by product name, product number, SKU, or bar

27  code number), and specify those elements or attributes of YOUR claimed concept,

28

1 | design, product, product packaging or other matter that YOU contend were copied,
2 | infringed or diluted by MATTEL.

3

4 | INTERROGATORY NO. 52:

5 | For each trade dress that YOU contend MATTEL copied, infringed or
6 | diluted, separately IDENTIFY each product sold by YOU or YOUR licensees that
7 | incorporates such trade dress and, for each such product, separately state (a) the number
8 | of units, by year, of each such product sold by YOU or YOUR licensees; (b) revenue
9 | received by YOU from such SALES of each such product; (c) all costs YOU have
10 | incurred in connection with each product, including but not limited to YOUR cost of
11 | good sold, and (d) YOUR gross and net profits from each such product.

12

13 | INTERROGATORY NO. 53:

14 | For each MATTEL concept, design, product, product packaging or other
15 | matter that YOU contend is likely to cause confusion, to cause mistake, or to deceive as
16 | to affiliation, connection, or association, or as to origin, sponsorship, or approval,
17 | separately state all facts that support YOUR contention of such, including but not
18 | limited to all facts that support YOUR contention, if YOU so contend, that any of the
19 | SLEEKCRAFT FACTORS weighs against MATTEL, and IDENTIFY all PERSONS
20 | with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
21 | such facts.

22

23 | INTERROGATORY NO. 54:

24 | For each concept, design, product, product packaging or other matter that
25 | YOU contend MATTEL copied, infringed or diluted, state all facts that support
26 | contention, if YOU so contend, that such copying or infringement was intentional or
27 | willful, and IDENTIFY all PERSONS with knowledge of such facts and all
28 | DOCUMENTS that REFER OR RELATE TO such facts.

INTERROGATORY NO. 55:

State all facts which support the allegation in Paragraph 120 of YOUR COMPLAINT that MATTEL has "caused and continues to cause blurring and dilution of the distinctive look of MGA's products and trade dress," and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

INTERROGATORY NO. 56:

IDENTIFY all MATTEL DOCUMENTS that MGA has obtained, received, reviewed, copied, reproduced, transmitted, requested or used at any time since January 1, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such MATTEL DOCUMENTS.

INTERROGATORY NO. 57:

IDENTIFY all DOCUMENTS that REFER OR RELATE TO any MATTEL product or plan that any of the FORMER MATTEL EMPLOYEES provided, transmitted or disclosed to, shared with or used on behalf of MGA at any time since January 1, 1999, and IDENTIFY all PERSONS with knowledge of such facts.

INTERROGATORY NO. 58:

State all facts which support YOUR contention, if YOU so contend, that YOU and/or MGA did not obtain any MATTEL DOCUMENTS through improper means, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

1  INTERROGATORY NO. 59:

2          State all facts which support YOUR contention, if YOU so contend, that

3  any information in the MATTEL DOCUMENTS does not and/or did not derive

4  independent economic value from not being generally known to the public or other

5  PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY

6  all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR

7  RELATE TO such facts.

8

9  INTERROGATORY NO. 60:

10          State all facts which support YOUR contention, if YOU so contend, that

11  any information in the MATTEL DOCUMENTS was known to the public or to

12  PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY

13  all PERSONS with knowledge of the foregoing and all DOCUMENTS that REFER OR

14  RELATE TO the foregoing.

15

16  INTERROGATORY NO. 61:

17          State all facts which support YOUR contention, if YOU so contend, that

18  YOU and/or MGA independently developed, or did not otherwise use or disclose, any

19  information in the MATTEL DOCUMENTS, and IDENTIFY all PERSONS with

20  knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such

21  facts.

22

23  INTERROGATORY NO. 62:

24          State all facts which support YOUR contention that YOUR use or

25  disclosure of information in the MATTEL DOCUMENTS neither benefited YOU nor

26  MGA nor harmed MATTEL, and IDENTIFY all PERSONS with knowledge of such

27  facts and all DOCUMENTS that REFER OR RELATE TO such facts.

28

1  INTERROGATORY NO. 63:

2          State all facts which support YOUR contention, if YOU so contend, that

3  YOU and/or MGA had, has or have any right to copy, possess, use or disclose any

4  MATTEL DOCUMENT, and IDENTIFY all PERSONS with knowledge of such facts

5  and all DOCUMENTS that REFER OR RELATE TO such facts.

6

7  INTERROGATORY NO. 64:

8          To the extent YOU have not previously disclosed such information in a

9  prior interrogatory response YOU provided to Mattel, state all facts which support

10  YOUR claims against Mattel in THIS ACTION, and IDENTIFY all PERSONS with

11  knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such

12  facts.

13

14  INTERROGATORY NO. 65:

15          Describe in detail each and every action YOU have taken, or directed be

16  taken, to locate, maintain or preserve evidence which is, might be or could be relevant

17  or potentially relevant to THIS ACTION.

18

19  INTERROGATORY NO. 66:

20          IDENTIFY each and every SOURCE OF INFORMATION from which

21  YOU have COLLECTED DOCUMENTS for responsiveness and potential production

22  in THIS ACTION.

23

24  INTERROGATORY NO. 67:

25          IDENTIFY fully and separately each and every payment of money or

26  other item of value that YOU have made or given, or any promise, agreement, proposal

27  or offer by YOU to pay money or give any item of value, to or on behalf of any

28  PERSON identified in any of the parties' initial disclosures in this ACTION at any time

1  when such PERSON was not an employee of MGA, including without limitation with

2  respect to legal fees incurred by or on behalf of such PERSON.

3

4  <u>INTERROGATORY NO. 68</u>:

5  　　　　To the extent not disclosed in response to prior Interrogatories, IDENTIFY

6  fully and separately each and every payment of money or other item of value that MGA

7  has made, or any promise, agreement, proposal or offer by MGA to pay money or give

8  any item of value, to or on behalf of any of the FORMER MATTEL EMPLOYEES,

9  including without limitation with respect to legal fees incurred by or on behalf of any of

10  the FORMER MATTEL EMPLOYEES.

11

12  <u>INTERROGATORY NO. 69</u>:

13  　　　To the extent not disclosed in response to prior Interrogatories, IDENTIFY fully

14  and separately each and every payment of money or other item of value that YOU have

15  made, or any promise, agreement, proposal or offer by YOU to pay money or give any

16  item of value, since January 1, 1998 to or on behalf of any PERSON who has been

17  employed by MATTEL (excluding ordinary salary and benefits paid to such PERSON

18  while an MGA employee), including without limitation with respect to legal fees

19  incurred by or on behalf of such PERSON and bonuses paid to such PERSON.

20

21

22  DATED: _____　　　QUINN EMANUEL URQUHART OLIVER &
　　　　　　　　　　　　　　　　　　　HEDGES, LLP

23

24  　　　　　　　　　　　　　　　　By_____

25  　　　　　　　　　　　　　　　　　B. Dylan Proctor
　　　　　　　　　　　　　　　　　　Attorneys for Mattel, Inc.

26

27

28