# EXHIBIT B

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>FOURTH NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)<br><br>Discovery Cut-off: January 14, 2008<br>Pre-trial Conference: April 7, 2008<br>Trial Date: April 29, 2008 |

07209/2254636.1

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |      PLEASE TAKE NOTICE that on _____, beginning at 9:30 a.m.

3 | Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant

4 | MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges

5 | LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R.

6 | Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers,

7 | directors, managing agents or other persons who consent to testify on its behalf

8 | concerning each of the topics set forth in Exhibit A hereto.

9 |      PLEASE TAKE FURTHER NOTICE that the deposition will take place

10 | before a duly authorized notary public or other officer authorized to administer oaths at

11 | depositions, and will continue from day to day, Sundays, Saturdays and legal holidays

12 | excepted, until completed.

13 |      PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

14 | P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use

15 | Livenote or other technology for real-time transcription of the testimony.

16 |

17 | DATED: _____     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

18 |

19 |      By_____

20 |        Jon Corey
       Attorneys for Mattel, Inc.

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

FOURTH NOTICE OF DEPOSITION OF MGA

## EXHIBIT A

1.    "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.    "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.    "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

4.    "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.  Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence

FOURTH NOTICE OF DEPOSITION OF MGA

1 | that is the subject of, or otherwise relevant or responsive to, the Topics of Examination

2 | herein.

3 |      5.    "DESIGN" or "DESIGNS" means any and all representations,

4 | whether two-dimensional or three-dimensional, and whether in tangible, digital,

5 | electronic or other form, including but not limited to all works, designs, artwork,

6 | sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

7 | diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

8 | practice, developments, inventions and/or improvements, as well as all other items,

9 | things and DOCUMENTS in which any of the foregoing are or have been expressed,

10 | embodied, contained, fixed or reflected in any manner, whether in whole or in part.

11 |      6.    "THE BRATZ PITCH MATERIALS" means each and every

12 | BRATZ WORK which was displayed, shown, provided, or offered to YOU on or

13 | before the date on which YOU executed the BRYANT/MGA AGREEMENT.

14 |      7.    "BRYANT/MGA AGREEMENT" means the written agreement

15 | between CARTER BRYANT and MGA dated as of September 18, 2000, produced as

16 | BRYANT 00794-00799, and any other version or versions thereof.

17 |      8.    "CREATE OR IMPROVE" or "CREATED OR IMPROVED," in

18 | the context of a BRATZ WORK or BRATZ WORKS, means to create, improve,

19 | develop, modify, alter, conceive, reduce to practice, or otherwise work on the BRATZ

20 | WORK or BRATZ WORKS.

21 |      9.    "IDENTIFY" or "IDENTITY" means the following:

22 |      (a)    With reference to an individual, means such individual's

23 | name, current or last known business title, current or last known business affiliation,

24 | current or last known relationship to YOU, current or last known residential and

25 | business address, and current or last known telephone number.

26 |      (b)    With reference to an entity or governmental organization,

27 | means such entity's or organization's name, present or last-known address, and present

28 |

1   or last-known telephone number and the IDENTITY of each individual who has served
2   or participated as a contact for or on behalf of such entity or organization.

3          (c)    With reference to an account with a bank or financial
4   institution, means the name and address of the bank or financial institution, the account
5   number(s) for or otherwise associated with such account and the name of each holder,
6   including without limitation each beneficial holder, of each such account.

7          (d)    With reference to a STORAGE DEVICE, means the
8   manufacturer name, brand, model name and number, serial number and all other
9   manufacturer identifiers, and the technical specifications and capacities of such
10  STORAGE DEVICE.

11         10.    "DIGITAL INFORMATION" means any information created or
12  stored digitally, including but not limited to electronically, magnetically or optically.

13         11.    "STORAGE DEVICE" means any computer hard drive, memory,
14  USB device, tape, storage array or any other device or medium that allows a user,
15  whether permanently, temporarily or otherwise, to create, generate, transmit, copy,
16  retain, store or maintain DIGITAL INFORMATION.

17         12.    "GLASER LETTER" means the letter sent from Patricia L. Glaser
18  to John B. Quinn, dated July 5, 2007.

19         13.    "RELATING TO" or "REFER OR RELATE TO" means
20  constituting, embodying, containing, referring to, commenting on, evidencing,
21  regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to,
22  concerning, supporting, contradicting, negating, revoking or otherwise relating to in
23  any manner.

24         14.    "COMMUNICATION," in the plural as well as the singular, means
25  any transmittal and/or receipt of information, whether such was oral or written, and
26  whether such was by chance, prearranged, formal or informal, and specifically includes,
27  but is not limited to, conversations in person, telephone conversations, electronic mail
28  (including instant messages and text messages), voicemail, letters, memoranda,

07209/2254636.1

-4-

1  statements, media releases, magazine and newspaper articles, and video and audio

2  transmissions.

3       15.   "EMBODIMENT" means any representation of the identified

4  product or its retail packaging, whether two-dimensional or three-dimensional, and

5  whether in tangible, digital, electronic or other form, including but not limited to all

6  works, designs, artwork, sketches, drawings, illustrations, representations, depictions,

7  blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

8  reductions to practice, developments, inventions and/or improvements, as well as all

9  other items, things and DOCUMENTS in which any of the foregoing are or have been

10  expressed, embodied, contained, fixed or reflected in any manner, whether in whole or

11  in part.

12       16.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as

13  those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and

14  <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not limited to, all writings

15  and records of every type and description including, but not limited to, contracts,

16  agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"),

17  records of telephone conversations, handwritten and typewritten notes of any kind,

18  statements, reports, minutes, recordings, transcripts and summaries of meetings, voice

19  recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and

20  records of all types, studies, instruction manuals, policy manuals and statements, books,

21  pamphlets, invoices, canceled checks and every other device or medium by which or

22  through which information of any type is transmitted, recorded or preserved.  Without

23  any limitation on the foregoing, the term "DOCUMENT" shall include all copies that

24  differ in any respect from the original or other versions of the DOCUMENT, including,

25  but not limited to, all drafts and all copies of such drafts or originals containing initials,

26  comments, notations, insertions, corrections, marginal notes, amendments or any other

27  variation of any kind.

28

17.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

18.    "CONTESTED MGA PRODUCTS" means the CONTESTED BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS PRODUCTS, and any other doll, product, toy, packaging, advertisement or other matter that, in whole or in part, provides a basis for any claim or defense by YOU against MATTEL.

19.    "CONTESTED BRATZ DOLLS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL:  (i) any EMBODIMENT or project ever known by the name "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "Bratz" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz" or any derivative thereof.

1     20.    "CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD"

2  means any of the following that provides a basis for any claim by YOU against

3  MATTEL: (i) any EMBODIMENT or project ever known by the name "Bratz Funky

4  Fashion Makeover Head" or any derivative thereof (whether in whole or in part and

5  regardless of what such EMBODIMENT or project is or has been also, previously or

6  subsequently called) and any styling head or any portion thereof that is now or has ever

7  been known as, or sold, offered for sale, licensed, offered for license or marketed under,

8  the name or term "Bratz" or any derivative thereof (whether in whole or in part and

9  regardless of what such styling head is or has been also, previously or subsequently

10  called), and all prototypes, models, samples and versions of such EMBODIMENT,

11  styling head or any portion thereof; (ii) any accessory that YOU distribute under the

12  name "Bratz Funky Fashion Makeover Head" or any derivative thereof; and/or (iii) any

13  and all other goods, product packaging, advertisements, promotional materials or other

14  thing or item or material manufactured, produced, printed, ordered, marketed,

15  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

16  offered for license, sold or offered for sale by YOU or on YOUR behalf under the name

17  "Bratz Funky Fashion Makeover Head" or any derivative thereof.

18     21.    "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means any

19  of the following that provides a basis for any claim by YOU against MATTEL: (i) any

20  EMBODIMENT or project ever known by the name "4-ever Best Friends" or any

21  derivative thereof (whether in whole or in part and regardless of what such

22  EMBODIMENT or project is or has been also, previously or subsequently called) and

23  any doll or any portion thereof that is now or has ever been known as, or sold, offered

24  for sale, licensed, offered for license or marketed under, the name or term "4-ever Best

25  Friends" or any derivative thereof (whether in whole or in part and regardless of what

26  such doll is or has been also, previously or subsequently called), and all prototypes,

27  models, samples and versions of such EMBODIMENT, doll or any portion thereof;

28  (ii) any playset and accessory that YOU distribute under the name "4-ever Best

1  Friends" or any derivative thereof; and/or (iii) any and all other goods, product

2  packaging, advertisements, promotional materials or other thing or item or material

3  manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

4  distributed, shipped, imported, exported, licensed, offered for license, sold or offered

5  for sale by YOU or on YOUR behalf under the name "4-ever Best Friends" or any

6  derivative thereof.

7       22.   "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS" means

8  any of the following that provides a basis for any claim by YOU against MATTEL:

9  (i) any EMBODIMENT or project ever known by the name "Mommy's Little Patient"

10  or similar name or any derivative thereof (whether in whole or in part and regardless of

11  what such EMBODIMENT or project is or has been also, previously or subsequently

12  called) and any doll or any portion thereof that is now or has ever been known as, or

13  sold, offered for sale, licensed, offered for license or marketed under, the name or term

14  "Mommy's Little Patient" or similar name or any derivative thereof (whether in whole

15  or in part and regardless of what such doll is or has been also, previously or

16  subsequently called), and all prototypes, models, samples and versions of such

17  EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU

18  distribute under the name "Mommy's Little Patient" or similar name or any derivative

19  thereof; and/or (iii) any and all other goods, product packaging, advertisements,

20  promotional materials or other thing or item or material manufactured, produced,

21  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

22  imported, exported, licensed, offered for license, sold or offered for sale by YOU or on

23  YOUR behalf under the name "Mommy's Little Patient" or similar name or any

24  derivative thereof.

25       23.   "CONTESTED ALIENRACERS PRODUCTS" means any of the

26  following that provides a basis for any claim by YOU against MATTEL:   (i) any

27  EMBODIMENT or project ever known by the name "Alienracers" or any derivative

28  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

FOURTH NOTICE OF DEPOSITION OF MGA

07209/2254636.1

1   project is or has been also, previously or subsequently called) and any toy vehicle,

2   character, or any portion thereof that is now or has ever been known as, or sold, offered

3   for sale, licensed, offered for license or marketed under, the name or term "Alienracers"

4   or any derivative thereof (whether in whole or in part and regardless of what such toy is

5   or has been also, previously or subsequently called), and all prototypes, models,

6   samples and versions of such EMBODIMENT, toy vehicle, character, or any portion

7   thereof; (ii) any playset and accessory that YOU distribute under the name

8   "Alienracers" or any derivative thereof; and/or (iii) any and all other goods, product

9   packaging, advertisements, promotional materials or other thing or item or material

10  manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

11  distributed, shipped, imported, exported, licensed, offered for license, sold or offered

12  for sale by YOU or on YOUR behalf under the name "Alienracers" or any derivative

13  thereof.

14          24.     "CONTESTED MATTEL PRODUCTS" means the CONTESTED

15  MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED MATTEL MY

16  SCENE PETS PRODUCTS, the CONTESTED MATTEL MY SCENE STYLING

17  HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the CONTESTED

18  MATTEL LITTLE MOMMY DOLL PRODUCTS, and the CONTESTED MATTEL

19  ACCELERACERS PRODUCTS, and any other MATTEL doll, product, toy,

20  packaging, advertisement or other matter that, in whole or in part, provides a basis for

21  any claim or defense by YOU against MATTEL.

22          25.     "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"

23  means any of the following that provides a basis for any claim by YOU against

24  MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene" or

25  any derivative thereof (whether in whole or in part and regardless of what such

26  EMBODIMENT or project is or has been also, previously or subsequently called) and

27  any doll or any portion thereof that is now or has ever been known as, or sold, offered

28  for sale, licensed, offered for license or marketed under, the name or term "My Scene"

1   or any derivative thereof (whether in whole or in part and regardless of what such doll

2   is or has been also, previously or subsequently called), and all prototypes, models,

3   samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

4   playset and accessory that MATTEL distributes under the name "My Scene" or any

5   derivative thereof; and/or (iii) any and all other goods, product packaging,

6   advertisements, promotional materials or other thing or item or material manufactured,

7   produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

8   shipped, imported, exported, licensed, offered for license, sold or offered for sale by

9   MATTEL under the name "My Scene" or any derivative thereof.

10          26.   "CONTESTED MATTEL MY SCENE PETS PRODUCTS" means

11   any of the following that provides a basis for any claim by YOU against MATTEL:

12   (i) any EMBODIMENT or project ever known by the name "My Scene Pets" or any

13   derivative thereof (whether in whole or in part and regardless of what such

14   EMBODIMENT or project is or has been also, previously or subsequently called) and

15   any toy pet or any portion thereof that is now or has ever been known as, or sold,

16   offered for sale, licensed, offered for license or marketed under, the name or term "My

17   Scene" or any derivative thereof (whether in whole or in part and regardless of what

18   such toy pet is or has been also, previously or subsequently called), and all prototypes,

19   models, samples and versions of such EMBODIMENT, toy pet or any portion thereof;

20   (ii) any playset and accessory that MATTEL distributes under the name "My Scene

21   Pets" or any derivative thereof; and/or (iii) any and all other goods, product packaging,

22   advertisements, promotional materials or other thing or item or material manufactured,

23   produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

24   shipped, imported, exported, licensed, offered for license, sold or offered for

25          27.   "CONTESTED MATTEL MY SCENE STYLING HEAD" means

26   any of the following that provides a basis for any claim by YOU against MATTEL:

27   (i) any EMBODIMENT or project ever known by the name "My Scene Styling Head"

28   or any derivative thereof (whether in whole or in part and regardless of what such

1    EMBODIMENT or project is or has been also, previously or subsequently called) and

2    any styling head or any portion thereof that is now or has ever been known as, or sold,

3    offered for sale, licensed, offered for license or marketed under, the name or term "My

4    Scene" or any derivative thereof (whether in whole or in part and regardless of what

5    such styling head is or has been also, previously or subsequently called), and all

6    prototypes, models, samples and versions of such EMBODIMENT, styling head or any

7    portion thereof; (ii) any accessory that MATTEL distributes under the name "My Scene

8    Styling Head" or any derivative thereof; and/or (iii) any and all other goods, product

9    packaging, advertisements, promotional materials or other thing or item or material

10   manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

11   distributed, shipped, imported, exported, licensed, offered for license, sold or offered

12   for sale by MATTEL under the name "My Scene Styling Head" or any derivative

13   thereof.

14        28.    "CONTESTED MATTEL WEE-3 PRODUCTS" means any of the

15   following that provides a basis for any claim by YOU against MATTEL:  (i) any

16   EMBODIMENT or project ever known by the name "Wee-3" or any derivative thereof

17   (whether in whole or in part and regardless of what such EMBODIMENT or project is

18   or has been also, previously or subsequently called) and any doll or any portion thereof

19   that is now or has ever been known as, or sold, offered for sale, licensed, offered for

20   license or marketed under, the name or term "Wee-3" or any derivative thereof

21   (whether in whole or in part and regardless of what such doll is or has been also,

22   previously or subsequently called), and all prototypes, models, samples and versions of

23   such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that

24   MATTEL distributes under the name "Wee-3" or any derivative thereof; and/or (iii) any

25   and all other goods, product packaging, advertisements, promotional materials or other

26   thing or item or material manufactured, produced, printed, ordered, marketed,

27   advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

28

1  offered for license, sold or offered for sale by MATTEL under the name "Wee-3" or
2  any derivative thereof.

3       29.  "CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS"
4  means any of the following that provides a basis for any claim by YOU against
5  MATTEL:  (i) any EMBODIMENT or project ever known by the name "Little
6  Mommy" or any derivative thereof (whether in whole or in part and regardless of what
7  such EMBODIMENT or project is or has been also, previously or subsequently called)
8  and any doll or any portion thereof that is now or has ever been known as, or sold,
9  offered for sale, licensed, offered for license or marketed under, the name or term
10  "Little Mommy" or any derivative thereof (whether in whole or in part and regardless
11  of what such doll is or has been also, previously or subsequently called), and all
12  prototypes, models, samples and versions of such EMBODIMENT, doll or any portion
13  thereof; (ii) any playset and accessory that MATTEL distributes under the name "Little
14  Mommy" or any derivative thereof; and/or (iii) any and all other goods, product
15  packaging, advertisements, promotional materials or other thing or item or material
16  manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,
17  distributed, shipped, imported, exported, licensed, offered for license, sold or offered
18  for sale by MATTEL under the name "Little Mommy" or any derivative thereof.

19       30.  "CONTESTED MATTEL ACCELERACERS PRODUCTS" means
20  any of the following that provides a basis for any claim by YOU against MATTEL:
21  (i) any EMBODIMENT or project ever known by the name "AcceleRacers" or any
22  derivative thereof (whether in whole or in part and regardless of what such
23  EMBODIMENT or project is or has been also, previously or subsequently called) and
24  any toy vehicle, character, or any portion thereof that is now or has ever been known as,
25  or sold, offered for sale, licensed, offered for license or marketed under, the name or
26  term "AcceleRacers" or any derivative thereof (whether in whole or in part and
27  regardless of what such toy is or has been also, previously or subsequently called), and
28  all prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

FOURTH NOTICE OF DEPOSITION OF MGA

07209/2254636.1

1   character, or any portion thereof; (ii) any playset and accessory that MATTEL
2   distributes under the name "AcceleRacers" or any derivative thereof; and/or (iii) any
3   and all other goods, product packaging, advertisements, promotional materials or other
4   thing or item or material manufactured, produced, printed, ordered, marketed,
5   advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,
6   offered for license, sold or offered for sale by MATTEL under the name
7   "AcceleRacers" or any derivative thereof.

8        31.   "FORMER MATTEL EMPLOYEES" means any former Mattel
9   employee who left MATTEL to join YOU, including but not limited to Janine Brisbois,
10  Ron Brawer, Jorge Castilla, Nic Contreras, Dan Cooney, Carlos Gustavo Machado,
11  Mariana Trueba Almada, Pablo Vargas San Jose and Shirin Salemnia.

12       32.   "COMPLAINT" means the Complaint for False Designation of
13  Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair
14  Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 et seq. and
15  California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code
16  § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or
17  about April 13, 2005.

18       33.   The singular form of a noun or pronoun includes within its meaning
19  the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine
20  form of a pronoun also includes within its meaning the feminine form of the pronoun so
21  used, and *vice versa*; the use of any tense of any verb includes also within its meaning
22  all other tenses of the verb so used, whenever such construction results in a broader
23  request for information; and "and" includes "or" and *vice versa*, whenever such
24  construction results in a broader disclosure of documents or information.

25

26                          **Topics of Examination**

27       1.   The invention, creation, origin, conception, authorship, design and
28  development of the CONTESTED MGA PRODUCTS, including without limitation the

1  circumstances under which and the date(s) on which each occurred and the IDENTITY

2  and role(s) of each PERSON involved.

3       2.    Any revisions, modifications or changes made to any of the

4  CONTESTED MGA PRODUCTS, including without limitation any proposed

5  alternatives, modifications or changes (whether or not implemented) to such

6  CONTESTED MGA PRODUCTS, the date(s) on which such revisions, modifications

7  or changes were made or proposed and the reasons for their implementation or non-

8  implementation.

9       3.    The development of YOUR 2005 product line, including the

10  IDENTITY of each PERSON who participated in the decision making leading up to

11  YOUR 2005 product line and any changes or modifications thereto, and the invention,

12  creation, origin, conception, authorship, design, development, manufacture, distribution

13  and sale of products therein.

14       4.    The development of YOUR 2006 product line, including the

15  IDENTITY of each PERSON who participated in the decision making leading up to

16  YOUR 2005 product line and any changes or modifications thereto, and the invention,

17  creation, origin, conception, authorship, design, development, manufacture, distribution

18  and sale of products therein.

19       5.    The content, meaning, authenticity and source of

20  COMMUNICATIONS, advertisements, and/or promotional statements that provide a

21  basis for any claim by YOU against MATTEL.

22       6.    COMMUNICATIONS between YOU and any PERSON, including

23  without limitation any retailer or distributor, that REFER OR RELATE TO the

24  CONTESTED MATTEL PRODUCTS.

25       7.    The first date of manufacture, shipment and availability for

26  distribution and retail sale of each of the CONTESTED MGA PRODUCTS.

27

28

8.      The first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form, and the IDENTITY of each PERSON involved therein.

9.      The sculptures, including all preliminary sculptures and all versions of such sculptures, made, produced or prepared in connection with the CONTESTED BRATZ DOLLS PRODUCTS.

10.     The tooling and manufacture of any of the CONTESTED MGA PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase orders and payment relating thereto and including but not limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging therefor.

11.     The marketing, advertising, promotion and licensing of the CONTESTED MGA PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including the identity of the channels in which such have been or are disseminated or distributed.

12.     The ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

13.     Any copyright, patent, design right or any other registration or application for registration of the CONTESTED MGA PRODUCTS, including but not limited to all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits, correspondence, notes and other DOCUMENTS relating thereto.

14.     The display, exhibition, publication, circulation, or other dissemination of the CONTESTED MGA PRODUCTS to distributors, retailers, licensees, the media, or the public, including but not limited to toy and trade shows and conventions and the date(s) on which such occurred.

15.   YOUR expenditures in advertising or promoting the CONTESTED MGA PRODUCTS, including by year and by medium.

16.   Any contracts or licenses entered into, negotiated, proposed, or requested RELATING TO any of the CONTESTED MGA PRODUCTS.

17.   The target market or potential target market, and the demographics of any actual, potential or prospective consumers, customers, purchasers or licensees of the CONTESTED MGA PRODUCTS.

18.   The number of units of the CONTESTED MGA PRODUCTS manufactured, produced, ordered, stored in inventory, imported, exported, shipped, sold, or offered for sale by any PERSON, including but not limited to YOU.

19.   YOUR revenues, costs and profits for each of the CONTESTED MGA PRODUCTS, including but not limited to YOUR per-unit cost, and YOUR gross, incremental and net profits for each of the CONTESTED MGA PRODUCTS.

20.   Any complaints or dissatisfaction concerning the CONTESTED MGA PRODUCTS, including but not limited to the returns of, or the number of or rate of defects for, such products.

21.   Any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS or CONTESTED MATTEL PRODUCTS that YOU are aware of, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

22.   Any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MATTEL PRODUCTS that you are aware of, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

1      23.    Any consumer studies, reports, surveys, interviews or reports
2  regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL
3  PRODUCTS, included but not limited to YOUR knowledge of the reasons why
4  consumers purchase any of the CONTESTED MGA PRODUCTS or any of the
5  CONTESTED MATTEL PRODUCTS.

6      24.    Marketing studies, marketing plans, sales plans, sales forecasts,
7  strategies and analyses that REFER OR RELATE TO THE CONTESTED MATTEL
8  PRODUCTS.

9      25.    MATTEL's alleged copying, infringement or dilution of the
10  CONTESTED MGA PRODUCTS or any claimed EMBODIMENT thereof.

11      26.    To the extent not disclosed in response to any other Topic, all other
12  facts RELATING TO any claim made by YOU against MATTEL or the CONTESTED
13  MATTEL PRODUCTS, and the IDENTITY of all PERSONS with knowledge thereof.

14      27.    COMMUNICATIONS between YOU and MATTEL RELATING
15  TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL
16  PRODUCTS.

17      28.    Any damage, loss, injury or unjust enrichment that YOU claim has
18  been sustained by reason of any act or omission by MATTEL, including but not limited
19  to any alleged lost profits, lost sales, lost royalty, lost opportunity, lost license, revenue,
20  price erosion, or consequential or incidental damage, including but not limited to the
21  causation for any such alleged unjust enrichment, damage, loss, or injury and the
22  amounts of all such damage, loss, injury or unjust enrichment.

23      29.    When, and under what circumstances, YOU became aware that
24  Mattel had created, designed, developed, sold, offered for sale or licensed the
25  CONTESTED MATTEL PRODUCTS.

26      30.    The copying, reproduction or use of any MATTEL work, product,
27  or EMBODIMENT by YOU or on YOUR behalf since January 1, 1999.

28

1      31.   Any similarity or dissimilarity between any of the CONTESTED
2  MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

3      32.   The hiring, engagement, or retention by YOU of any current or
4  former MATTEL employee or contractor since January 1, 1999, including but not
5  limited to the terms of all employment agreements and agreements RELATING TO
6  confidentiality or the invention, authorship, or ownership of any concept or product.

7      33.   YOUR receipt, reproduction, copying, storage, transmission,
8  transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or
9  information, including but not limited to any compilation of information, that was
10  prepared, made, created, generated, assembled or compiled by or for MATTEL and that
11  was not publicly available at the time of YOUR receipt of such DOCUMENT, data
12  and/or information.

13      34.   YOUR knowledge of any MATTEL product prior to the time that
14  such product had been announced or disclosed by MATTEL to retailers or the public,
15  including but not limited to the CONTESTED MATTEL PRODUCTS.

16      35.   YOUR receipt, reproduction, copying, storage, transmission,
17  transfer, retention, destruction, deletion or use of any MATTEL line list or other
18  DOCUMENT prepared by MATTEL identifying MATTEL products in the planning,
19  design or development phase.

20      36.   The search and seizure of DOCUMENTS by Mexican authorities
21  from MGA's office in Mexico City, Mexico, and all COMMUNICATIONS that
22  REFER OR RELATE thereto.

23      37.   All payments of money or any item of value made by YOU, directly
24  or indirectly, or offered, proposed, promised, requested or solicited by or from YOU,
25  directly or indirectly, in connection criminal proceedings or potential or prospective
26  criminal proceedings against YOU or any of YOUR employees, including without
27  limitation Gustavo Machado, and including without limitation YOUR payment or
28  reimbursement of legal fees for or on behalf of any PERSON.

38.   COMMUNICATIONS between YOU and any PERSON RELATING TO the resignation or departure of any FORMER MATTEL EMPLOYEES from Mattel.

39.   The compensation, money or any other item of value paid to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, by YOU.

40.   The identity of DOCUMENTS RELATING TO any MATTEL product or plan that any FORMER MATTEL EMPLOYEE provide or disclosed to or shared with YOU, directly or indirectly.

41.   COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from any FORMER MATTEL EMPLOYEE.

42.   The content, authenticity, accuracy and meaning of each personnel file maintained or created by YOU RELATING TO any FORMER MATTEL EMPLOYEE.

43.   COMMUNICATIONS between YOU and Pablo Vargas San Jose prior to April 20, 2004.

44.   COMMUNICATIONS between YOU and Janine Brisbois prior to September 27, 2005.

45.   COMMUNICATIONS between YOU and Ron Brawer prior to October 2, 2004.

46.   COMMUNICATIONS between YOU and Carlos Gustavo Machado Gomez ("Machado") prior to April 20, 2004.

47.   COMMUNICATIONS between YOU and Mariana Trueba Almada ("Trueba") prior to April 20, 2004.

48.    The existence or extent of competition or substitution between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

49.    The factual basis for YOUR claim that any of the CONTESTED MGA PRODUCTS have acquired secondary meaning or are famous.

50.    The factual basis for YOUR claim that any of MATTEL's actions have caused actual dilution.

51.    Mattel's alleged intimidation, coercion or threats to retailers, licensees, suppliers and others in the industry."

52.    The factual basis for YOUR claim that Mattel "serially imitated and copy-catted [*sic*] the look of MGA products, trade dress, trademarks, themes, ideas, advertising and packaging."

53.    The basis for YOUR claim that the Bratz dolls launched in 2001 were "unique and distinctive."

54.    The identification of YOUR alleged trade dress in connection with the CONTESTED MGA PRODUCTS, including without limitation with respect to "themes," and the factual bases for YOUR claim that YOU have any legally protected interest in such trade dress.

55.    The factual basis for YOUR allegation that advertising executives have expressed concern about "Bratz" and Mattel's "My Scene," what concerns they expressed and the IDENTITY of each such executive.

56.    The factual basis for YOUR allegation that the press confused YOUR products with MATTEL products and "has taken notice" of alleged confusion between "Bratz" and "My Scene."

57.    All COMMUNICATIONS relating to customers who have allegedly contacted YOU to purchase Mattel's "My Scene" dolls or any of the CONTESTED MATTEL PRODUCTS.

1        58.    The factual basis for YOUR claim that MATTEL has infringed,

2 diluted or otherwise violated any trade dress that YOU contend YOU own in the

3 CONTESTED MGA PRODUCTS.

4        59.    The factual basis for YOUR claim that MATTEL has engaged in

5 "strong-arm tactics, and other illegitimate, unfair and anti-competitive means."

6        60.    COMMUNICATIONS between YOU and any PERSON

7 RELATING TO the departure from MATTEL of any current or FORMER MATTEL

8 EMPLOYEE or MATTEL contractor.

9        61.    COMMUNICATIONS between YOU and any PERSON

10 RELATING TO the obligations to MATTEL, including the duty of confidentiality, of

11 any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

12        62.    COMMUNICATIONS between YOU and any current or FORMER

13 MATTEL EMPLOYEE or MATTEL or contractor RELATING TO the ownership of

14 any idea, concept, design, or product.

15        63.    COMMUNICATIONS between YOU and any PERSON

16 RELATING TO the retention, destruction, transfer, or use of any information or

17 DOCUMENTS known to or possessed by any current or former MATTEL employee or

18 contractor.

19        64.    Mattel's alleged "warnings," "threats" or "intimidation" that are the

20 subject of YOUR claims, including but not limited to all COMMUNICATIONS with

21 any present or former licensees of MATTEL and any present or former distributors and

22 retailers of MGA and MATTEL products.

23        65.    MATTEL's alleged responsibility for "shortage of doll hair in

24 October 2002."

25        66.    MATTEL's alleged "manipulation of the retail market," including by

26 its alleged tampering with MGA's retail displays.

27        67.    MATTEL's alleged false statements about YOU or YOUR business

28 practices.

1        68.    MATTEL's alleged violation of any rules or restrictions relating to

2  data provided to subscribers by NPD or any other wrongful conduct relating to NPD.

3        69.    COMMUNICATIONS between YOU and NPD, other than periodic

4  reports transmitted by NPD or information made available to YOU by NPD, between

5  January 1, 2000 and the present.

6        70.    YOUR contracts and agreements with NPD since January 1, 1999,

7  including without limitation any allegation by NPD that YOU were or have been in

8  breach or violation thereof.

9        71.    The status of YOUR NPD subscription between January 1, 1999 and

10  the present.

11        72.    MATTEL's alleged inducement of CARU to place onerous

12  restrictions on MGA advertisements, and require MGA to amend aspects of

13  commercials that have gone unchallenged in other parties' commercials.

14        73.    COMMUNICATIONS between YOU and CARU between

15  January 1, 2000 and the present RELATING TO MATTEL, ANY CONTESTED MGA

16  PRODUCTS, ANY CONTESTED MATTEL PRODUCTS or any other subject or

17  matter that YOU are relying upon in this ACTION.

18        74.    MATTEL's allegedly improper influence with or within TIA,

19  including but not limited to the procedures for and manner in which the Toy of the Year

20  was selected for 2003.

21        75.    YOUR COMMUNICATIONS with TIA RELATING TO Toy of the

22  Year since January 1, 2000 or any other subject or matter on which YOU base any

23  claim.

24        76.    MATTEL's purported power, influence and intimidation to threaten

25  retailers, suppliers, licensees, distributors, manufacturers and industry bodies so as to

26  limit or prevent MGA from doing business.

27        77.    MATTEL's alleged intimidation of or threats against MGA's current

28  and potential employees.

78.   YOUR monthly, quarterly and annual financial reports, including financial statements (both audited and unaudited) for the years 1998 through the present, inclusive.

79.   The identity of DOCUMENTS that YOU have reason to believe were created by or originated from MATTEL (excluding MATTEL products that YOU purchased at retail) at any time since January 1, 1998.

80.   The destruction of any DOCUMENT RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

81.   COMMUNICATIONS with, or inquiry or investigation by, any government entity, industry organization, safety compliance, or consumer organization RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

82.   YOUR understanding or belief of whether the BRYANT/MGA AGREEMENT was lawful when YOU entered into it, and DOCUMENTS and COMMUNICATIONS related thereto.

83.   The public perception of the CONTESTED MGA PRODUCTS, including without limitation with respect to the appropriateness or suitability of Bratz for children.

84.   The factual basis for YOUR alleged belief that YOU had the right to market products developed as a result of the BRYANT/MGA AGREEMENT and to the lawful right to fully exploit the drawings drawn and presented by BRYANT prior to the execution of the BRYANT/MGA AGREEMENT, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon when YOU entered into the agreement.

85.   The factual basis for YOUR contention that YOU believed at the time YOU entered into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to acquire THE BRATZ PITCH MATERIALS from BRYANT, and the DOCUMENTS and COMMUNICATIONS YOU so relied upon at the time YOU entered into the BRYANT/MGA AGREEMENT.

FOURTH NOTICE OF DEPOSITION OF MGA

1         86.    YOUR belief or non-belief that BRYANT created or improved any
2    of THE BRATZ PITCH MATERIALS while employed by MATTEL, and the
3    DOCUMENTS and COMMUNICATIONS YOU so relied upon.

4         87.    Any investigation or inquiry YOU conducted to confirm the timing
5    of BRYANT'S work prior to executing the BRYANT/MGA AGREEMENT, including
6    but not limited to DOCUMENTS and COMMUNICATIONS RELATING thereto.

7         88.    The factual bases for YOUR affirmative defenses.

8         89.    The IDENTITY of all DOCUMENTS that were in the possession of
9    Farhad Larian that YOU claim were reviewed by Quinn Emanuel Urquhart Oliver &
10   Hedges LLP at any time prior to January 1, 2007.

11        90.    The factual bases for YOUR allegations in the GLASER LETTER,
12   including YOUR allegation that DOCUMENTS in the possession of Farhad Larian and
13   reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP were purportedly
14   privileged and confidential.

15        91.    Any services Farhad Larian has provided to YOU since January 1,
16   2005, including any litigation consulting services.

17        92.    The IDENTITY of DOCUMENTS that Farhad Larian was provided
18   with or had access to, including YOUR allegedly privileged and confidential
19   DOCUMENTS, since January 1, 2001.

20        93.    The terms of any contracts or agreements, including any
21   confidentiality agreements, between YOU and Farhad Larian.

22        94.    The identity of each doll, accessory, product, work or item
23   produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or
24   on YOUR behalf that was BASED ON any BRATZ DESIGN or any design derivative
25   of any BRATZ DESIGN.

26        95.    Except for deposition testimony provided in this ACTION, the
27   testimony, transcripts, declarations, affidavits and other sworn written statements of any
28   other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO

1 | BRATZ and that REFER OR RELATE TO the time period prior to June 30, 2001
2 | (regardless of when such testimony or sworn statement was taken, given, signed, made
3 | or filed).

4 | 96.     The authenticity, content, timing, meaning, and truth and accuracy
5 | of YOUR COMMUNICATIONS with any PERSON, including without limitation any
6 | retailer and the media, that REFER OR RELATE TO the National Labor Committee
7 | dated December 21, 2006 entitled "Made in China: The Sweatshop Behind the Bratz"
8 | or the Hau Tai K4 factory.

9 | 97.     The identity of each doll, product, packaging or other matter that
10 | YOU have accused of infringing, diluting or otherwise violating YOUR purported
11 | rights in any of the CONTESTED MGA PRODUCTS, the IDENTITY of each
12 | manufacturer of each doll, product, packaging or other matter and the specific aspects
13 | of each such doll, product, packaging or other matter that YOU have claimed was
14 | confusingly or substantially similar to any of the CONTESTED MGA PRODUCTS.

15 | 98.     The identity, and outcome and resolution, of each lawsuit that YOU
16 | have brought or cease and desist letter YOU have sent each doll, product, packaging or
17 | other matter that YOU have accused of infringing, diluting or otherwise violating
18 | YOUR purported rights in any of the CONTESTED MGA PRODUCTS.

19 | 99.     The job responsibilities of each FORMER MATTEL EMPLOYEE
20 | in the first six months after each joined MGA.

21 | 100.   YOUR scheduling, planning, inventory, shipping, distribution or
22 | forecasting software since January 1, 2005, including but not limited to any and all
23 | changes, improvements, acquisitions, upgrades and purchases.

24 | 101.   DOCUMENTS created by each of the FORMER MATTEL
25 | EMPLOYEES in the first six months after each joined MGA

26 | 102.   The make-up, source, calculation and purpose of the amounts
27 | presented in MGA documents Bates-numbered MGA 0101018-21 (Exhibit 661) and
28 | MGA 08185789 (Exhibit 662).