71

1    WELL, YOU KNOW WHAT, YOUR HONOR -- THE SURREPLY THAT

2  CAME IN ON FRIDAY?

3    THE COURT:  YES.

4    MS. GLASER:  YOUR HONOR, I CAN HONESTLY SAY I DID NOT

5  READ THAT CAREFULLY.  IF THE 35 WITNESSES ARE IDENTIFIED IN

6  THAT, I STAND CORRECTED.

7    THE COURT:  AND THEY MAY NOT BE.

8    MS. GLASER:  THEN, YOUR HONOR, THEY INDICATED -- THEY

9  DETERMINED WHO THE 35 WERE.

10    DO YOU KNOW, FOR EXAMPLE --

11    THE COURT:  YOU CERTAINLY DIDN'T EXPECT THEM, IN

12  NOVEMBER OF 2003, TO GIVE YOU A CALL.

13    MS. GLASER:  YOUR HONOR, LISTEN TO THIS:

14  MR. BRYANT'S SUPERVISOR, ANN DRISKILL, WAS NEVER CALLED UPON TO

15  DO THAT.  SHE TESTIFIED UNDER PENALTY OF PERJURY.  HER

16  TESTIMONY IS BEFORE THE COURT.  WHO DID THEY INTERVIEW?  HER

17  SUPERVISOR SAYS THAT SHE HAS NEVER BEEN INTERVIEWED AND WAS NOT

18  TOLD TO PRESERVE ANYTHING UNTIL APRIL OF 2005.

19    THE COURT:  I'M SORRY.  HER LAST NAME AGAIN?

20    MS. GLASER:  DRISKILL, D-R-I-S-K-I-L-L.

21    THE COURT:  VERY WELL.

22    MS. GLASER:  SO WHEN I'M TOLD THIS BY A LAWYER,

23  EXCUSE ME, I'M HAVING A LITTLE PROBLEM WITH THIS.  THIS IS WHY

24  WE MADE THE SPOLIATION MOTION.  WE'RE NOT GETTING THE

25  INFORMATION THAT WE'RE ENTITLED TO.  OUR DISCOVERY HAS BEEN, IN

02:11
02:11
02:11
02:11
02:11
02:12

JULY 24, 2006          ED CV 04-09049

EXHIBIT _6_ PAGE _97_

72

1   OUR JUDGMENT, INEXORABLY DAMAGED BECAUSE OF THE DESTRUCTION OF

2   DOCUMENTS.

3           AND, YOUR HONOR, YOU SAID SOMETHING EARLIER TODAY

4   ABOUT YOU SORT OF ACCEPTING THIS NOTION OF THE 2003 DATE.

5   THAT'S THE DATE MATTEL IS ALLEGING THEY GOT A CONTRACT, IN          02:12

6   OCTOBER OR NOVEMBER OF 2003.  WE DON'T CONCEDE THAT.

7           **THE COURT:**  I KNOW YOU'RE NOT CONCEDING.  I'M SAYING,

8   JUST IN WORKING IT UP MYSELF, I WAS TRYING TO COME UP WITH A

9   DATE THAT I BELIEVE THAT MATTEL CAN'T ARGUE.

10          THEY WERE ARGUING 2005 IN SOME OF THEIR PAPERS, AND I        02:12

11  DON'T ACCEPT THAT.  IT'S AT LEAST NOVEMBER OF 2003.  AND THAT'S

12  WHY I WANT TO KNOW WHAT WAS HAPPENING.

13          YOU TRY TO PUSH THAT BACK TO 2002.  I THINK THAT MAY

14  BE PUSHING IT BACK A LITTLE TOO FAR, BUT I HAVEN'T MADE A FINAL

15  DECISION ON THAT.  BUT RIGHT NOW -- MY TENTATIVE WAS NOVEMBER      02:12

16  OF 2003.  IT'S KIND OF A DATE THAT ANY REASONABLE PERSON --

17          **MR. QUINN:**  LET ME QUICKLY CORRECT THAT.

18          THAT 2005 DATE, THAT'S THE DATE WE LEARNED OF OUR

19  CLAIMS AGAINST MGA.  IT'S A DIFFERENT DATE THAN THE

20  CARTER BRYANT.                                                      02:13

21          **THE COURT:**  I UNDERSTAND.

22          MY SENSE IS THAT MATTEL SHOULD HAVE BEEN THINKING

23  ABOUT ITS CLAIMS OR AWARE OF ITS CLAIMS, KNOWING THAT IT'S

24  LIKELY THAT THEY WOULD BE BRINGING THESE CLAIMS, PERHAPS AS

25  EARLY AS NOVEMBER OF 2003.  IT'S NOT A DEFINITIVE FINDING ON MY    02:13

EXHIBIT _6_ PAGE _98_

1   PART.  THAT'S JUST A TENTATIVE MOTION.

2          MS. GLASER:  YOUR HONOR, YOU WERE ASKED --

3          THE COURT:  I WASN'T SUGGESTING THAT YOU --

4          MS. GLASER:  I UNDERSTAND.

5          YOU WERE TOLD ABOUT MR. ARNOLDO ARTAVIA, WHOSE

6   DEPOSITION WAS TAKEN ON SEPTEMBER 21, 2007.

7          THE COURT:  RIGHT.

8          MS. GLASER:  HE SAYS THAT THERE ARE NO CARTER BRYANT

9   TIME ENTRIES PRODUCED AFTER SEPTEMBER 8, 2000.  HE ALSO

10  TESTIFIED, AT PAGE 116 OF HIS DEPO THAT YOU HAVE, YOUR HONOR,

11  THEY COULD HAVE BEEN DELETED WITHOUT A TRACE.

12         HE DOESN'T KNOW.  HE WASN'T THERE.  HE DIDN'T DELETE

13  THEM HIMSELF.  AND I'M NOT SUGGESTING OTHERWISE.

14         ALL I'M SAYING TO YOU, YOUR HONOR, IS THAT YOU'RE NOT

15  BEING TOLD THE WHOLE PICTURE.

16         BUT THE MOST IMPORTANT THING IS, ON THIS E-MAIL

17  THING -- WHEN I SAY THE MOST IMPORTANT, I MUST TELL YOU, THEY

18  GET TO DECIDE WHO THE 35 ARE, WHOEVER THEY MAY BE; THEY GET TO

19  DECIDE -- I THINK THE 35 GET TO DECIDE WHAT THEY DELETE AND

20  WHAT THEY DON'T.

21         THE COURT:  WAS THERE ANYBODY ELSE BESIDES THIS

22  MS. DRISKILL THAT KIND OF STANDS OUT TO YOU AS SOMEONE WHO

23  SHOULD HAVE BEEN PART OF THESE PEOPLE THAT WERE NOTIFIED THAT

24  WERE NOT --

25         MS. GLASER:  WE HAVEN'T EVEN DEPOSED ENOUGH OF THEM

02:13

02:13

02:13

02:14

02:14

74

1   YET TO KNOW.

2               THE COURT:  FAIR ENOUGH.

3               MS. GLASER:  I CAN'T MISREPRESENT THAT, YOUR HONOR.

4          OF THE MATTEL PEOPLE DEPOSED SO FAR, NOT ONE OF THEM

5   HAS IDENTIFIED THEMSELVES -- AND I CAN GIVE YOU A LIST -- AS          02:14

6   SOMEBODY WHO'S BEEN INTERVIEWED AND ASKED THE VERY QUESTIONS

7   THAT WERE ARTICULATED TO YOU BY MATTEL.

8               THE COURT:  OKAY.  VERY GOOD.

9          DO YOU HAVE ANY REASON NOT TO ACCEPT MR. QUINN'S

10  REPRESENTATION THAT AT LEAST FROM DECEMBER OF 2004, THERE'S          02:15

11  BEEN A BACKUP FOR ALL OF THE E-MAILS?

12         THIS WAS THE DECISION THAT WAS MADE IN APRIL OF 2005,

13  WHICH CAPTURES BACK TO DECEMBER OF 2004.  FROM THAT POINT

14  FORWARD, WE HAVE ALL OF THE E-MAILS?

15              MS. GLASER:  ABSOLUTELY.                                 02:15

16         YOU MEAN FOR THE 35 PEOPLE, OR FOR EVERYBODY?

17              THE COURT:  WELL, FOR THE 35.

18              MR. QUINN:  FOR EVERYBODY.

19              THE COURT:  FOR EVERYBODY.  THAT WAS HIS

20  REPRESENTATION.                                                      02:15

21              MR. QUINN:  THE WHOLE COMPANY.

22              THE COURT:  EVERYBODY.

23              MS. GLASER:  I HAVE NO REASON TO BELIEVE FROM

24  APRIL 2005.  WE HAVE THEM, BECAUSE I ACCEPT THAT.  I HAVE NO

25  CONTRARY EVIDENCE THAT THE BACKUP STARTED THEN.  BUT I GUESS        02:15

EXHIBIT __6__ PAGE __100__

1  I'M OLD-FASHIONED ENOUGH TO THINK YOU SHOULD HAVE STARTED THE

2  BACKUP AT LEAST WHEN YOU -- I MEAN, THE RULE IS YOU DO IT A

3  YEAR AFTER YOU FILE A LAWSUIT.  IT'S NOT EVEN WHEN YOU FILE A

4  LAWSUIT.  IT'S WHEN YOU WERE SUPPOSED TO BELIEVE THAT YOU HAD A

5  REASONABLE LIKELIHOOD OF LITIGATION.                                02:15

6          THAT DIDN'T HAPPEN HERE, YOUR HONOR.

7          THE COURT:  I UNDERSTAND, COUNSEL.  I UNDERSTAND YOUR

8  ARGUMENT.

9          MS. GLASER:  YOUR HONOR, THE OTHER THING I ASKED YOU

10 TO DO -- AND I PROBABLY AM TOTALLY LEANING TOO HEAVILY ON YOUR      02:16

11 LAW CLERKS ON THIS.  THERE WERE A NUMBER OF DEPOSITIONS THAT

12 WERE -- EVIDENCE WAS PROVIDED TO YOUR HONOR.  AND I APOLOGIZE

13 TO THE LAW CLERKS IN ADVANCE, BUT THE TESTIMONY IS WHAT IT IS.

14         THE COURT:  COUNSEL, KEEP THE LAW CLERKS OUT OF THE

15 DISCUSSION.                                                        02:16

16         MS. GLASER:  THERE IS LOTS OF DEPO TESTIMONY AND LOTS

17 OF CITATIONS TO THE DEPO TESTIMONY.  I WILL ALLOW THAT TO SPEAK

18 FOR ITSELF.  THE REFERENCES THAT WE MAKE TO WHAT'S THERE AND

19 WHAT'S NOT, I BELIEVE, COULD NOT BE CLEARER, AND I WOULD ASK

20 THE COURT, IF THE COURT HAS THE TIME, TO PLEASE LOOK AT THOSE      02:16

21 DEPOS, BECAUSE MR. PALMER TESTIFIES ABOUT NO PHONE RECORD

22 RETENTION, NO OCTOBER REPORT, AND HE COULDN'T EXPLAIN WHY THERE

23 ISN'T THIS OCTOBER PHONE RECORD.  THIS IS THEIR WITNESSES, NOT

24 OURS.

25         THE COURT:  I UNDERSTAND.  NO ONE COULD EXPLAIN WHY        02:17

JULY 24, 2006                    ED CV 04-09049

EXHIBIT __6__ PAGE __101__

1   YOU DON'T HAVE OCTOBER --

2       MS. GLASER:  THEY HAVE NO BACKUP TAPES THROUGH 2003.

3   THE BACKUP TAPES WERE DELIVERED TO THE LEGAL DEPARTMENT, AND

4   THEY WERE DELIVERED FOR THE PERIOD OF MAY 2000 THROUGH NOVEMBER

5   2000.  AND THERE IS THIS OCTOBER GAP THAT THEY DELIVERED THE      02:17

6   RECORDS TO THE LEGAL DEPARTMENT.  THAT'S WHAT MR. PALMER

7   TESTIFIED TO.  THERE WAS NO CALL PRIOR TO SEPTEMBER 11, 2000,

8   FROM CARTER BRYANT TO MGA.

9       NOW, I'M NOT SUGGESTING IT'S A DISPOSITIVE ISSUE OF

10  WHETHER OR NOT HE'S MAKING CALLS TO MGA OR RECEIVING CALLS FROM  02:17

11  MGA.  I'M NOT SUGGESTING THAT'S DISPOSITIVE.  BUT LET'S ASSUME

12  FOR A MOMENT THERE WERE NO CALLS.

13      THE COURT:  COUNSEL, YOU'D PROBABLY BE ABLE TO DO A

14  BETTER JOB AT TRIAL WITH THE ABSENCE OF THIS RECORD AND MAKING

15  IT LOOK LIKE THERE WAS SOMETHING AMISS HERE THAN YOU'RE EVER     02:17

16  GOING TO GET FROM THE VALUE OF THE EVIDENCE OF ACTUALLY HAVING

17  IT.

18      MS. GLASER:  YOUR HONOR, YOU'RE ABSOLUTELY CORRECT.

19  BUT THE MAIN THRUST OF THIS MOTION ARE THE E-MAILS, THE LACK OF

20  BACKUP, THE ZEUS, AND THE LACK OF BACKUP.  IT IS NOT THE PHONE   02:18

21  RECORDS, WHICH WE INTEND TO MAKE WHATEVER WE CAN OF THEM.

22      THE COURT:  BACK IN THE DAY OF A PROSECUTOR, I WOULD

23  HAVE LOVED TO HAVE THAT SITUATION, WHERE THAT ONE MONTH WAS

24  MISSING.  IMAGINATION IS A LOT BETTER.

25      MS. GLASER:  FINALLY, YOUR HONOR, WHAT WE'RE ASKING           02:18

1   FOR HERE IS, WE BELIEVE THAT THE MOTION TO AMEND WAS GRANTED

2   UNDER FALSE PRETENSES.  WE THINK THAT MOTION SHOULD HAVE BEEN

3   DENIED.  WE BELIEVE YOU SHOULD TERMINATE THAT PART OF THE CASE,

4   AT A MINIMUM.  AND THAT'S WHAT WE'RE ASKING FOR TODAY, YOUR

5   HONOR.                                                          02:18

6           I WOULD LIKE THE OPPORTUNITY TODAY, OR WHENEVER THE

7   COURT WISHES.  I HAVE AN EXAMINATION READY FOR THIS GENTLEMAN,

8   AND I KNOW THAT YOUR HONOR IS BUSY.

9           THE COURT:  THANK YOU, COUNSEL.

10          MR. QUINN, I'D LIKE YOU TO ADDRESS JUST THAT ONE        02:18

11  ISSUE, THAT ALLEGATION THAT MS. DRISKILL, CARTER BRYANT'S

12  DIRECT SUPERVISOR, AND ANY OF THE OTHER INDIVIDUALS WHO HAVE

13  BEEN DEPOSED, SEEM TO SUGGEST THAT THERE WAS NO SUCH DIRECTION,

14  AS YOU JUST REPRESENTED.

15          MR. QUINN:  PART OF THE PROBLEM NOW IS, WE'RE WAY       02:19

16  OUTSIDE ANY RECORD THE COURT HAS BEFORE IT ON THE SUBJECT OF

17  DRISKILL.

18          THE COURT:  TRUE.

19          MR. QUINN:  I AM INFORMED THAT MY PARTNER,

20  MR. ZELLER, INTERVIEWED MS. DRISKILL AND THAT MR. MOORE DID AS  02:19

21  WELL.  COUNSEL SAYS THAT IN HER DEPOSITION, SHE TESTIFIED SHE

22  WAS NEVER INTERVIEWED, NEVER ASKED THESE QUESTIONS.

23          SINCE THIS IS NOT AN ISSUE THAT ANY OF US FOCUSED ON,

24  WE'RE NOT PREPARED TO SAY WHETHER THAT'S TRUE OR NOT AS TO

25  WHETHER SHE TESTIFIED TO THAT.                                 02:19

JULY 24, 2006                    ED CV 04-09049

EXHIBIT ___6___ PAGE _103_

1      THE COURT:  WAS SHE ONE OF THE 35 PEOPLE?

2      MR. ZELLER:  SHE WAS, YOUR HONOR.

3      THE COURT:  IS THERE A LIST OF THESE 35 INDIVIDUALS?

4      MR. ZELLER:  WE CAN CREATE A LIST OF THE 35 PEOPLE.

5   AND THEN ALSO, JUST SO IT'S CLEAR --                       02:19

6      THE COURT:  I DON'T WANT YOU TO CREATE A LIST.  I WAS

7   WONDERING IF A LIST EXISTS.

8      MR. ZELLER:  WHETHER IT'S A LIST, I DON'T KNOW.  WE

9   CERTAINLY HAVE INFORMATION ABOUT THE IMAGES THAT WERE TAKEN,

10  PEOPLE THAT WERE SPOKEN TO, INTERVIEW NOTES, ALL THAT SORT OF  02:20

11  STUFF, IN WHICH WE CAN SAY, 'HERE ARE THE PEOPLE.'

12     THE COURT:  HOW DID YOU COME UP WITH THIS POSITION

13  THAT THERE WERE 35 PEOPLE THAT WERE IDENTIFIED?  HOW DO YOU

14  KNOW THAT, AS WE'RE STANDING HERE TODAY?

15     MR. ZELLER:  WELL, WE DID THAT BECAUSE DURING THE      02:20

16  TIME WE WERE PREPARING THE OPPOSITION, THAT'S WHAT WE HAVE

17  RECORDS OF.

18     THE COURT:  SO YOU HAVE RECORDS OF THE 35 PEOPLE

19  BEING CONTACTED?

20     MR. ZELLER:  IN VARIOUS FORMS, YES.                    02:20

21     THE COURT:  IN VARIOUS FORMS.

22     I THINK IT WOULD BE HELPFUL TO THE COURT TO KNOW,

23  BECAUSE THIS E-MAIL ISSUE IS REALLY THE ONE THAT LAYS --

24     I DO WANT TO HEAR FROM MR. MOORE IN A FEW MOMENTS

25  ABOUT THIS ZEUS BACKUP SYSTEM, BUT ASSUMING, AS MR. QUINN    02:20

JULY 24, 2006          ED CV 04-09049

EXHIBIT   6   PAGE 104

1   REPRESENTED, THAT WE HAVE THE ZEUS BACKUP GOING ALL THE WAY

2   BACK TO APRIL OF 1998, THE ISSUE THAT'S LEFT IS THESE E-MAILS.

3        MR. QUINN:  RIGHT.

4        THE COURT:  IT SOUNDS LIKE FROM DECEMBER OF 2004,

5   APRIL OF 2005, BACKING UP TO DECEMBER 2004, YOU HAVE THE BACKUP

6   FOR THE E-MAILS.  I GUESS WHAT I REALLY WANT TO KNOW IS WHAT

7   HAPPENED BETWEEN NOVEMBER OF 2003 AND APRIL OF 2005?  IF WHAT

8   YOU'RE TELLING ME -- AND I'M NOT SAYING THAT IT'S NOT TRUE, BUT

9   I KNOW YOU'RE GETTING THAT INFORMATION FROM SOMEBODY ELSE.

10       I GUESS I NEED TO HAVE THAT FLUSHED OUT A LITTLE BIT

11  MORE.  PERHAPS MR. MOORE COULD DO THAT; PERHAPS SOMEBODY ELSE

12  COULD DO THAT.

13       MR. QUINN:  I THINK MR. MOORE CAN ADDRESS THAT.

14       I WILL ALSO SAY, YOUR HONOR, REMEMBER I TOLD YOU THAT

15  WE IMAGED SOME EMPLOYEES' COMPUTERS?

16       THE COURT:  YES.

17       MR. QUINN:  MS. DRISKILL IS ONE OF THEM.

18       THE COURT:  SO YOU WOULD HAVE EVERYTHING THAT'S ON

19  HERS.

20       MR. QUINN:  WE PRESERVED THAT.

21       THE COURT:  RIGHT.

22       MR. QUINN:  SO THAT'S ONE OF THOSE THAT WE HAVE.

23       THIS ISSUE ON ZEUS, WHAT MS. MARINE WAS DESIGNATED TO

24  TESTIFY ON, YOUR HONOR, WHETHER WE GAVE THEM A 30(B)(6) WITNESS

25  ON THE SUBJECT OF ZEUS WHO WAS NOT PREPARED, THE TESTIMONY IS

1  THAT SHE WAS NOT -- IN THIS TESTIMONY THAT THEY'RE CITING, SHE

2  WAS NOT TESTIFYING AS A ZEUS EXPERT.

3          MR. JENAL ASKED, PAGE 161:

4          QUESTION:  "AND YOU UNDERSTAND THAT YOU'RE HERE TODAY

5  TO TESTIFY ABOUT THE ZEUS DATA SYSTEM, FOR LACK OF A BETTER WAY

6  OF PHRASING IT, AS IT WAS USED IN THE DESIGN CENTER AND

7  ELSEWHERE AT MATTEL FROM BASICALLY 1998 THROUGH THE PRESENT; IS

8  THAT CORRECT?"

9          MR. COREY CORRECTS THAT:  "ACTUALLY, THE TOPIC THAT

10 SHE'S BEEN DESIGNATED IS NARROWER THAN THAT; IT'S THE DOCUMENT

11 MANAGEMENT SYSTEM USED BY DESIGNERS AT THE DESIGN CENTER."

12         SHE HAD EARLIER BEEN DESIGNATED AS THE EXPERT ON

13 ZEUS.  THEY SENT THE ASSOCIATE, WHO DIDN'T ASK 'WHAT ZEUS TAPES

14 DO YOU HAVE?'  SHE WAS LATER DESIGNATED -- YEAH, SHE TESTIFIED

15 THREE TIMES ON DIFFERENT TOPICS.  SHE WAS LATER DESIGNATED ON A

16 DIFFERENT SUBJECT.  ZEUS IS NOT A DOCUMENT MANAGEMENT SYSTEM.

17         BY THEN, WHEN SHE'S ASKED, "DO YOU HAVE ANYTHING THAT

18 GOES BACK TO THAT TIME PERIOD?"  SHE SAYS, IN THE PASSAGE I

19 READ, "I JUST DON'T KNOW."

20         SO I'M CONCERNED ABOUT ANY IMPRESSION THAT'S LEFT

21 THAT WE HAD NOT PROPERLY PRODUCED A PROPERLY EDUCATED 30(B)(6)

22 WITNESS ON THAT SUBJECT.

23         THE COURT:  THE POINT THAT I WAS TRYING TO MAKE

24 THERE, MR. QUINN, IS NOT THAT YOU DID THAT.  I WAS SAYING THAT

25 IF THAT WAS THE IMPRESSION THAT WAS BEING GIVEN TO THE OPPOSING

81

1   COUNSEL, THAT THEY SHOULD HAVE SAID 'THIS WITNESS, BY THOSE

2   KINDS OF RESPONSES, IS UNABLE TO ANSWER THE QUESTIONS THAT WE

3   THOUGHT THE 30(B) WITNESS WAS GOING TO GIVE.'

4         MR. QUINN:  YEAH.  BUT IN THE PASSAGE I JUST READ,

5   JENAL ASKS, YOU'RE HERE TO TESTIFY ABOUT ZEUS?  COREY SAYS, NO,   02:23

6   SOMETHING ELSE.

7         THE COURT:  I DON'T DISAGREE.

8         MR. QUINN:  BUT THE REAL IRONY HERE, AND THE THING

9   THAT'S COMPLETELY INEXPLICABLE, IS THAT WE'VE SAID THAT IF YOU

10  WANT TO SEE THE TAPES, THEY'RE AVAILABLE.                         02:23

11        MS. GLASER:  YOUR HONOR, THE LAST WORD, AND THEN I

12  WILL -- WHEN THE COMPANY SAYS, 'I DON'T KNOW; THEREFORE, THE

13  30(B)(6) DESIGNEE SAYS I DON'T KNOW, THE COMPANY IS SAYING, 'I

14  DON'T KNOW.'  LET ME TELL YOU WHAT -- AND I'M READING FROM THE

15  TRANSCRIPT OF PROCEEDINGS IN FRONT OF INFANTE.                    02:24

16        THIS IS MR. COREY -- EXCUSE ME, MR. JENAL SAYS, "AND

17  WHO'S THE DESIGNEE ON THE DOCUMENT MANAGEMENT SYSTEM?"

18  MR. COREY:  "THAT'S JULIA MARINE."

19        WHAT I CAN TELL YOU IS, WE'VE TAKEN HER DEPOSITION

20  BEFORE.  THERE WAS NO FORMAL DOCUMENT MANAGEMENT SYSTEM.  WHAT    02:24

21  THE DESIGNERS USED WAS SIMPLY THE FILE SYSTEM, THE FILE

22  MANAGEMENT SYSTEM ON THE ZEUS STORAGE SERVER, THE ZEUS DATA

23  SERVER.  SO SHE'LL BE APPEARING TO TESTIFY ABOUT THAT.

24        THE COURT:  AND THAT WAS IN ...

25        MS. GLASER:  THAT IS IN THE TRANSCRIPT OF PROCEEDINGS       02:24

EXHIBIT   6   PAGE 107

1  IN FRONT OF JUDGE INFANTE, SPECIFICALLY ON APRIL 4, 2007.

2       THE COURT:  MR. QUINN, LET ME ASK YOU, WHO IS THE

3  PERSON MOST KNOWLEDGEABLE ABOUT ZEUS?

4       MR. COREY:  LET ME CLARIFY THIS.

5       IN THE RELEVANT TIME PERIOD, WHICH IS 1998 THROUGH         02:24

6  2003, THERE WERE TWO GENTLEMEN WHOSE NAMES I CAN'T RECALL WHO

7  WERE RESPONSIBLE FOR ZEUS.  THEY LEFT THE COMPANY.  MS. MARINE

8  HAD SOME RESPONSIBILITY FOR ZEUS PRIOR TO -- I THINK IT WAS

9  1996 OR 1997.  SHE HAD RESPONSIBILITY FOR ZEUS IN -- I BELIEVE

10 STARTING IN 2003 OR 2004.                                      02:25

11      MATTEL'S KNOWLEDGE ON THIS SUBJECT OF ZEUS, WHAT

12 HAPPENED BETWEEN 1998 AND 2003, IS LIMITED.

13      THE COURT:  SO WHAT YOU'RE SAYING BASICALLY IS THAT

14 THIS IS THE PERSON MOST KNOWLEDGEABLE, NOT NECESSARILY THAT SHE

15 ACTUALLY IS KNOWLEDGEABLE.                                     02:25

16      MR. COREY:  THAT'S EXACTLY RIGHT.  WE DID OUR BEST.

17 WE TRIED TO TRACK THESE GUYS DOWN.  WE HAD SOME BRIEF

18 CONVERSATIONS WITH THEM.  THE KNOWLEDGE THAT SHE'S GIVING IS

19 THE KNOWLEDGE THAT MATTEL HAS.  MATTEL CAN'T BE HELD TO A

20 HIGHER STANDARD THAN THAT.  AND WHAT SHE TESTIFIED TO WITH      02:25

21 RESPECT TO THE DOCUMENT MANAGEMENT SYSTEM IS, THERE IS NONE.

22      THE COURT:  I'M GOING TO HEAR VERY BRIEFLY FROM

23 MR. MOORE, AND THEN WE'RE GOING TO TRY TO WRAP THIS UP.

24      MR. MOORE, IF YOU WOULD PLEASE COME TO THE WITNESS

25 STAND.                                                         02:25

1        **MS. GLASER:**  IS YOUR HONOR GOING TO ASK QUESTIONS, OR

2  MAY I?

3        **THE COURT:**  I'M GOING TO ASK SOME QUESTIONS.  I HAVE

4  A FEW QUESTIONS MYSELF; THAT'S WHY I CALLED THE WITNESS.

5        **MR. QUINN:**  DO YOU WANT HIM AT THE PODIUM?

6        **THE COURT:**  THE WITNESS STAND, IF YOU WOULD.

7        **THE CLERK:**  DO YOU SOLEMNLY STATE THAT THE TESTIMONY

8  YOU MAY GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL

9  BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, SO

10  HELP YOU GOD?

11        **THE WITNESS:**  I DO.

12        **THE CLERK:**  PLEASE STATE YOUR FULL NAME AND SPELL

13  YOUR LAST NAME FOR THE RECORD.

14        **THE WITNESS:**  MICHAEL CHRISTOPHER MOORE, M-O-O-R-E.

15                **DIRECT EXAMINATION**

16  **BY THE COURT:**

17  Q   MR. MOORE, YOU'VE PREVIOUSLY INDICATED IN YOUR

18  DECLARATIONS YOUR POSITION WITH MATTEL.

19        THE COURT BASICALLY WANTS TO GET A CLARIFICATION OF

20  WHAT EXACTLY HAPPENED IN NOVEMBER OF 2003, IN TERMS OF WHAT YOU

21  DID TO PRESERVE THE DOCUMENTS.

22  A   MY EFFORT TO PRESERVE IN NOVEMBER 2003 REALLY BEGINS WITH

23  AN EXAMINATION OF WHAT WAS OUT THERE HISTORICALLY.  THE EVENT

24  OCCURRED IN 2000, SO I'M LOOKING FOR ANY EVIDENCE, ANY DOCUMENT

25  THAT WOULD HELP US UNDERSTAND THOSE EVENTS.  SO I HAD ALREADY

1  GONE OUT DURING THE INVESTIGATION -- PREVIOUSLY TO NOVEMBER OF

2  2003, I HAD GONE OUT DURING THE INVESTIGATION TO LOCATE PEOPLE

3  WHO MAY HAVE KNOWN CARTER BRYANT; TO UNDERSTAND WHETHER

4  CARTER BRYANT HAD A COMPUTER; TO TRY TO UNDERSTAND WHETHER

5  CARTER BRYANT USED THE ZEUS SYSTEM; AND SO MY EFFORTS INCLUDE      02:27

6  THAT TIME PERIOD.  AS I COLLECTED DOCUMENTS, I PRESERVED THEM

7  DURING NOVEMBER OF 2003 AND BEYOND.

8          AND AS WE IDENTIFIED PEOPLE WHO EITHER KNEW

9  CARTER BRYANT OR WHO WE THOUGHT HAD DOCUMENTS OR E-MAILS

10 RELEVANT TO THE CASE, WE CONTINUED TO PRESERVE THOSE PEOPLE'S     02:28

11 DOCUMENTS.

12         FOR EXAMPLE, IF WE LOCATED SOMEBODY WHO HAD A

13 COMPUTER HARD DRIVE THAT WE THOUGHT HAD E-MAILS ON IT, WE WOULD

14 PRESERVE IT.

15 Q    WHAT INSTRUCTIONS DID YOU GIVE TO THOSE INDIVIDUALS THAT     02:28

16 YOU SO IDENTIFIED?

17 A    I WOULD ASK THEM WHETHER THEY HAD ANYTHING RELATED TO

18 CARTER BRYANT OR BRATZ.  I WOULD SAY, "PLEASE COLLECT IT AND

19 GIVE IT TO ME; AND IF YOU FIND ANYTHING IN ADDITION TO THAT,

20 PLEASE GIVE IT TO ME."                                            02:28

21 Q    WHAT ABOUT GOING FORWARD?

22 A    WELL, GOING FORWARD, THE INSTRUCTION IS, "IF YOU FIND

23 ANYTHING, GIVE IT TO ME AND MAINTAIN IT."

24 Q    WITH RESPECT TO THIS DEPOSITION THAT YOU WERE -- WERE YOU

25 PRESENT AT THIS MARINE DEPOSITION THAT'S BEEN REFERRED TO?        02:28

1   A    I BELIEVE I WAS PRESENT AT THE ONE IN JUNE OF 2000.

2   Q    THERE WAS AN INDICATION THAT SHE WAS NOT AWARE OF THE ZEUS

3   BACKUP?  DO YOU RECALL THAT?

4   A    YES.

5   Q    WHAT STEPS, IF ANY, DID YOU DO TO CLARIFY THAT WITH HER        02:29

6   AFTERWARDS?

7   A    WELL --

8   Q    THE TESTIMONY TODAY IS OR THE REPRESENTATION FROM

9   MR. QUINN IS THAT BACKUPS EXISTED.

10           DEFENSE COUNSEL TAKES ISSUE WITH THE FACT THAT YOU          02:29

11   SAT BY SILENTLY AND ALLOWED THIS TESTIMONY TO PROCEED.

12   A    YES.  I HAD A CONVERSATION WITH COUNSEL ABOUT WHAT TO DO

13   NEXT, BUT I DON'T WANT TO NECESSARILY GET INTO WHAT THAT WAS.

14   Q    I UNDERSTAND.

15   A    BUT I HAD AN UNDERSTANDING, AFTER THOSE CONVERSATIONS,         02:29

16   THAT MGA HAD KNOWLEDGE OF THESE TAPES' EXISTENCE, AND THAT THEY

17   HAD BEEN OFFERED, AND THAT, YOU KNOW, MY DUTY WASN'T TO CORRECT

18   HER MEMORY AT THAT TIME.

19   Q    AND HOW IS IT THAT YOU HAD INFORMATION THAT MGA WAS AWARE

20   THAT THESE TAPES EXISTED, NOTWITHSTANDING HER DEPOSITION            02:30

21   TESTIMONY THAT YOU WITNESSED?

22   A    HOW DID I KNOW THAT MGA --

23   Q    PERHAPS I MISUNDERSTOOD YOU.

24           I THOUGHT YOU JUST INDICATED THAT YOU UNDERSTOOD THAT

25   MGA WAS AWARE THAT THESE BACKUP TAPES EXISTED.                      02:30

86

1   A    I UNDERSTOOD THAT MATTEL'S OUTSIDE COUNSEL HAD OFFERED

2   THESE TAPES TO MGA.

3   Q    DID YOU HAVE PERSONAL KNOWLEDGE OF THE TAPES' EXISTENCE?

4   A    YES.

5            THE COURT:  COUNSEL, YOU HAD SOME QUESTIONS.

6            MS. GLASER:  YES, YOUR HONOR.

7                      DIRECT EXAMINATION

8   BY MS. GLASER:

9   Q    MR. MOORE, WERE YOU RESPONSIBLE FOR DETERMINING WHO THESE

10  35 OR 30 OR 25 OR 40 WITNESSES ARE?

11  A    YES, I WAS.

12  Q    AND YOU ALONE?

13  A    WELL, WHEN WE IDENTIFIED SOMEBODY WHO WAS POSSIBLY

14  RELEVANT, THEN I WOULD BE THE ONE TO TAKE ACTION.  I HAD

15  PARALEGALS OR OTHER PEOPLE AS WELL, BUT IT WAS MAINLY ME, YES.

16  Q    IS THERE ANY WRITTEN INSTRUCTION THAT YOU PROVIDED TO

17  ANYONE WITH RESPECT TO WHAT THEY SHOULD PRESERVE, WHETHER IT'S

18  35 OR 30 OR 25, WHOEVER THESE PEOPLE ARE?  WERE THERE WRITTEN

19  INSTRUCTIONS OF WHAT THEY SHOULD PRESERVE?

20           FREQUENTLY -- AND I'M GOING TO USE AN EXAMPLE --

21  INSIDE COUNSEL, WHEN LITIGATION IS ABOUT TO ENSUE OR WHEN THEY

22  THINK THERE'S A CONCERN ABOUT LITIGATION PERHAPS DOWN THE ROAD,

23  THEY SEND AN E-MAIL OUT TO EVERYBODY, 'WHATEVER YOU DO, PLEASE

24  PRESERVE YOUR DOCUMENTS.'

25           IS THAT AN E-MAIL THAT EXISTS TODAY?  YES OR NO?

02:30

02:30

02:31

02:31

02:31

87

1   A     THERE WASN'T A MEMO THAT WENT OUT.

2   Q     EVER; CORRECT?

3   A     WELL, NO.  ONE WENT OUT LATER IN CONNECTION WITH SORT OF A

4   LARGER CASE.

5   Q     NOT THIS CASE?                                                    02:31

6          MR. QUINN:  AMBIGUOUS AS TO WHAT "THIS CASE" IS.

7          THE COURT:  WHAT DO YOU MEAN EXACTLY, COUNSEL?

8          MS. GLASER:  WELL, HE SAID, "A LARGER CASE."

9          MY FAULT.

10  BY MS. GLASER:                                                          02:32

11  Q     WHEN DID AN E-MAIL GO OUT DIRECTING THE COMPANY'S

12  EMPLOYEES TO PRESERVE DOCUMENTS?

13  A     IN ABOUT APRIL OF 2005.

14  Q     AND THAT'S THE FIRST TIME AN E-MAIL WENT OUT?

15  A     THAT'S THE FIRST TIME AN E-MAIL WENT OUT TO COMPANY-WIDE.         02:32

16  Q     IN FACT, THAT'S THE FIRST TIME A DIRECTIVE WENT OUT, A

17  WRITTEN DIRECTIVE, WENT OUT AT ALL; ISN'T THAT TRUE?

18  A     I'M NOT SURE THAT'S TRUE.

19         MR. QUINN:  I DIDN'T HEAR THE ANSWER, YOUR HONOR.

20         MS. GLASER:  "I'M NOT SURE THAT'S TRUE," I BELIEVE,             02:32

21  IS WHAT HE SAID.

22         THE COURT:  ACTUALLY, THERE'S NO ANSWER ON THE -- THE

23  COURT REPORTER DIDN'T HEAR AN ANSWER EITHER.  LET'S NOT SPEAK

24  OVER EACH OTHER.

25         MS. GLASER:  SORRY.                                             02:32

JULY 24, 2006                ED CV 04-09049

EXHIBIT ___6___ PAGE __113__

88

1    **BY MS. GLASER:**

2    Q    IS IT TRUE THAT THE FIRST TIME A DIRECTIVE WENT OUT TO

3    MATTEL EMPLOYEES IN WRITING, TO PRESERVE RECORDS, WAS IN APRIL

4    OF 2005?

5    A    IN APRIL OF 2005, A DOCUMENT RETENTION MEMO WENT OUT, AND          02:33

6    THAT WAS THE FIRST TIME IT WENT OUT COMPANY-WIDE.

7    Q    DID AN E-MAIL GO OUT LESS THAN COMPANY-WIDE AT ANY OTHER

8    TIME BEFORE APRIL OF 2005 IN CONNECTION WITH CARTER BRYANT,

9    MGA, POSSIBLE LITIGATION, PROBABLE LITIGATION,

10   HOWEVER-YOU-WANT-TO-COUCH-IT LITIGATION, WITH MGA AND              02:33

11   CARTER BRYANT IN WRITING?

12   A    THERE WASN'T A MEMO THAT WENT TO MORE THAN ONE PERSON,

13   THAT I CAN REMEMBER, BUT THERE MAY HAVE BEEN AN E-MAIL TO MORE

14   THAN ONE PERSON TALKING ABOUT THE CASE AND ASKING FOR

15   DOCUMENTS.                                                        02:33

16   Q    I DIDN'T ASK THAT.

17        I WANT TO KNOW IF THERE WAS A WRITTEN DIRECTIVE THAT

18   WENT OUT TO ANY EMPLOYEE PRIOR TO APRIL OF 2005, ASKING THEM OR

19   TELLING THEM TO PRESERVE THEIR E-MAILS?

20   A    I CAN'T REMEMBER THAT ONE WENT OUT LIKE THAT.  HOWEVER, IT    02:34

21   COULD HAVE BEEN LESS FORMAL THAN THAT IN TERMS OF, YOU KNOW,

22   WITHIN AN E-MAIL, FOLLOWING UP A PHONE CALL.  I DON'T WANT TO

23   EXCLUDE THAT THERE MIGHT HAVE BEEN SOME E-MAILS OF THAT NATURE.

24   Q    IS IT FAIR TO SAY THAT WE DON'T KNOW, AS WE SIT HERE

25   TODAY, EXACTLY WHAT WAS TOLD TO WHOMEVER IT WAS TOLD, WHICHEVER    02:34

EXHIBIT  6  PAGE 114

1    EMPLOYEES IT WAS TOLD TO, WHAT THEY SHOULD BE PRESERVING?

2    THERE'S NO WRITTEN RECORD OF A DIRECTION AS TO WHAT THEY SHOULD

3    BE PRESERVING?

4            THE COURT:   THOSE ARE TWO SEPARATE QUESTIONS.

5    BY MS. GLASER:

6    Q    IS THERE A WRITTEN RECORD OF WHAT THEY SHOULD BE

7    PRESERVING?

8    A    WELL, THERE'S THE MEMO THAT WENT OUT IN APRIL OF 2005.

9    Q    OTHER THAN THAT, IS THERE A WRITTEN RECORD DESCRIBING WHAT

10   THEY SHOULD BE PRESERVING?

11           IN OTHER WORDS, IT'S LESS THAN THE UNIVERSE, CORRECT,

12   WHATEVER WENT OUT IN APRIL OF 2005?  WHATEVER YOU ASKED PEOPLE

13   TO PRESERVE, IT WAS LESS THAN THE WHOLE UNIVERSE OF THEIR

14   E-MAILS; CORRECT?

15           MR. QUINN:   I CAN'T FOLLOW THE QUESTION.

16           MS. GLASER:   I'LL WITHDRAW IT.   I'M SURE IT'S MY

17   FAULT.

18   BY MS. GLASER:

19   Q    WHEN YOU SENT OUT A DIRECTIVE, OR WHOMEVER SENT OUT THE

20   DIRECTIVE IN APRIL OF 2005, WERE PEOPLE ASKED TO PRESERVE

21   EVERYTHING OR LESS THAN EVERYTHING?

22   A    PEOPLE WERE ASKED TO PRESERVE DOCUMENTS RELATING TO

23   CERTAIN ISSUES.  AND I'M NOT SURE I CAN GET INTO WHAT THAT

24   DOCUMENT SAID WITHOUT CROSSING SOME PRIVILEGE LINE, BUT --

25           MS. GLASER:   YOUR HONOR, I THINK I'M ENTITLED TO

02:34

02:34

02:35

02:35

02:35

JULY 24, 2006          ED CV 04-09049

EXHIBIT _6_ PAGE _115_

1    KNOW, AND I THINK THE COURT, MORE IMPORTANTLY, I GUESS, IS

2    ENTITLED TO KNOW IF THE REQUEST FOR PRESERVATION WAS A LIMITED

3    REQUEST INAPPROPRIATELY LIMITED OR IF IT WAS A BROAD REQUEST.

4    BECAUSE I WILL REPRESENT TO THE COURT, MGA'S COUNSEL SENT OUT

5    SOMETHING SAYING, 'PRESERVE EVERYTHING.'

6            THE COURT:   YES, COUNSEL.

7            MR. QUINN, I DO THINK THAT THE SCOPE OF THE RETENTION

8    POLICY IS SOMETHING WHICH IS NOT PROTECTED BY PRIVILEGE AT THIS

9    POINT.

10           MR. QUINN:   YOUR HONOR, MGA HAS TAKEN THE POSITION --

11   THE SHOE'S ON THE OTHER FOOT -- THAT WE'RE NOT PERMITTED TO

12   KNOW THAT.   THEY CLAIM THAT THAT'S PRIVILEGED INFORMATION AS TO

13   WHAT PEOPLE WERE TOLD TO RETAIN.

14           THE COURT:   IS THAT MGA'S POSITION?

15           MS. GLASER:   I DO NOT BELIEVE SO, YOUR HONOR.   I'M

16   NOT AWARE THAT WAS EVER DONE, BUT I DON'T WANT TO MISREPRESENT

17   -- I'M NOT AWARE OF THAT, BUT I'M CERTAINLY PREPARED TO LET THE

18   COURT KNOW AND COUNSEL KNOW WHAT PEOPLE HAVE BEEN ASKED TO

19   PRESERVE.

20           THE COURT:   PUTTING ASIDE THAT RECIPROCITY, WHICH I

21   THINK YOU WOULD CERTAINLY BE ENTITLED TO, GIVEN HOW THIS HAS

22   UNFURLED, THERE'S CERTAINLY NO PRIVILEGE ISSUE WITH RESPECT TO

23   THE SCOPE OF THE RETENTION POLICY, GIVEN WHAT THIS WITNESS AND

24   MANY OTHER WITNESSES FOR MATTEL HAVE ALREADY DISCLOSED.

25           MR. QUINN:   I WOULD AGREE, YOUR HONOR, IN TERMS OF

1   SOME GENERAL SUBJECT MATTERS.

2           THE COURT:   RIGHT.   THAT'S ALL WE'RE LOOKING FOR

3   RIGHT NOW.

4           MR. QUINN:   AND WHAT WE'RE TOUCHING ON HERE -- I MADE

5   REFERENCE TO A SECURITY TOOL THAT WAS PUT IN PLACE BACK IN LATE   02:37

6   2003.

7           THE COURT:   THAT'S CORRECT.

8           MR. QUINN:   MATTEL DOES REGARD THAT AS -- THAT'S

9   SOMETHING THAT WAS PUT IN PLACE TO PROTECT MATTEL FROM -- AMONG

10  OTHER THINGS, IT WAS PUT IN PLACE TO PROTECT MATTEL FROM   02:37

11  INDUSTRIAL ESPIONAGE --

12          THE COURT:   YES.

13          MR. QUINN:   -- WHICH MATTEL HAD BEEN ON THE RECEIVING

14  END OF.

15          THE COURT:   ALLEGEDLY.   02:37

16          MR. QUINN:   I'M A LITTLE CONCERNED ABOUT DISCUSSING

17  THAT IN OPEN COURT, ESPECIALLY WITH MGA'S IN-HOUSE COUNSEL.

18          THE COURT:   WE'RE NOT ASKING FOR THOSE KINDS OF

19  SPECIFICS.

20          MR. QUINN:   SO AS LONG AS THE WITNESS UNDERSTANDS,   02:37

21  BECAUSE I THOUGHT HE MAY BE CONFUSED ABOUT WHETHER HE'S BEING

22  ASKED TO GET INTO THAT.

23          THE COURT:   AS I UNDERSTAND THE QUESTION RIGHT NOW,

24  WE'RE SIMPLY ASKING HIM TO DESCRIBE IN GENERAL TERMS THE NATURE

25  OF THIS APRIL 2005 MEMO.   02:37

92

1          MS. GLASER:  MAY WE HAVE HIM PRODUCE IT -- NOT TODAY,

2    OBVIOUSLY, BUT -- I'D LIKE TO SEE IT.

3    BY MS. GLASER:

4    Q    BUT GO AHEAD, IF YOU COULD DESCRIBE IT.

5    A    WELL, IT ASKS PEOPLE IN MATTEL TO PRESERVE, COLLECT AND

6    PRESERVE, OR PRESERVE DOCUMENTS, RELATED TO CARTER BRYANT,

7    ANYTHING RELATED TO BRATZ, ANYTHING RELATED TO SOME OF THE

8    ALLEGATIONS THAT WERE IN MGA'S COMPLAINT FILED THAT MONTH, SUCH

9    AS DOCUMENTS RELATED TO MY SCENE, DOCUMENTS RELATED TO

10   EXCELLARATES -- THESE ARE BRANDS THAT I'M DESCRIBING OF

11   MATTEL -- AND LITTLE MOMMY.

12   Q    DIVA STARS?

13   A    I DON'T HAVE THE DOCUMENT IN FRONT OF ME, BUT I BELIEVE IT

14   WOULD HAVE RELATED TO DIVA STARS.

15   Q    DID YOU ATTEND MS. MARINE'S DEPOSITION IN JULY OF 2007?

16   A    I DID.

17   Q    IN FACT, YOU PREPARED HER FOR HER DEPOSITION, YOU AND

18   OUTSIDE COUNSEL, CORRECT, JUST THE TWO OF YOU?

19   A    I BELIEVE I WAS PRESENT FOR PART OF THAT PREPARATION, YES.

20   Q    AND ISN'T IT ALSO TRUE THAT YOU ACTUALLY RECEIVED LIVENOTE

21   AT THE DEPOSITION?  IN OTHER WORDS, YOU SEE THE QUESTION BEING

22   ASKED AND THE ANSWER BEING GIVEN, YOU ACTUALLY SEE IT ON A

23   COMPUTER IN FRONT OF YOU AS IT'S OCCURRING; RIGHT?

24   A    AT SOME DEPOSITIONS, I DO, AND AT THAT ONE, I BELIEVE I

25   DID.

02:38

02:38

02:38

02:39

02:39

JULY 24, 2006                    ED CV 04-09049

EXHIBIT ___6___ PAGE _118_

93

1  Q    AND WHEN MS. MARINE TESTIFIED THAT TO HER KNOWLEDGE, AS

2  THE 30(B)(6) WITNESS FOR THE COMPANY, THEREFORE THE COMPANY'S

3  KNOWLEDGE, THERE WAS NOT THESE BACKUP TAPES -- ONCE SHE

4  TESTIFIED THAT THERE WERE NOT ZEUS BACKUP TAPES, AT LEAST TO

5  THE BEST OF HER KNOWLEDGE -- THE COURT CAN READ THE DEPOSITION

6  HIMSELF -- WHEN SHE TESTIFIED TO THAT EFFECT, DID YOU CORRECT

7  THE RECORD THEN OR AT ANY TIME UNTIL YOU GAVE YOUR DECLARATION

8  IN OPPOSITION TO THE SPOLIATION MOTION THAT WE'RE HERE TODAY

9  ABOUT?

10           **MR. QUINN:**  I OBJECT TO THE PREAMBLE, WHICH WAS

11 SOMETHING TO THE EFFECT THAT THE WITNESS WAS TESTIFYING AS THE

12 PERSON MOST KNOWLEDGEABLE ON THE ZEUS SYSTEM, WHICH, AS THE

13 COURT KNOWS, IS NOT THE CASE.

14           WE'RE PREPARED TO STIPULATE THAT HE HAS NEVER CHANGED

15 THAT WITNESS'S TESTIMONY.

16           **THE COURT:**  VERY WELL.

17           I'M GOING TO SUSTAIN THE OBJECTION BECAUSE I THINK IT

18 DOES -- AND ALSO, THE WAY YOU PHRASED THAT QUESTION DOES NOT

19 ACTUALLY SIT WITH THE COURT'S UNDERSTANDING IN THE CONTEXT OF

20 HER ANSWERS.

21           AS I INDICATED PREVIOUSLY, MY READING OF THOSE

22 ANSWERS IS MORE THAT SHE WAS NOT AWARE OR THAT SHE DID NOT

23 KNOW.  NOT THAT THIS WAS A CATEGORICAL, UNEQUIVOCAL 'NO, WE DO

24 NOT HAVE THOSE BACKUP TAPES.'

25           **MS. GLASER:**  YOUR HONOR -- AND I WON'T BEAT THIS

JULY 24, 2006              ED CV 04-09049
                           EXHIBIT ___6___ PAGE _119_

94

1   HORSE ANYMORE --

2          **THE COURT:**  THIS HEARING AND THIS MOTION IS NOT ABOUT

3   WHETHER OR NOT THERE WAS A PROBLEM WITH THE 30(B) WITNESS OR

4   WHETHER THERE WAS MISCOMMUNICATION OR A GARBLED RECORD IN TERMS

5   OF WHAT THIS WITNESS WAS QUALIFIED TO TESTIFY ABOUT OR NOT.         02:41

6   THAT'S NOT THE ISSUE BEFORE THE COURT.

7          WHAT JUSTIFIES A TERMINATING SANCTION, WHICH IS AN

8   EXTRAORDINARILY DRASTIC MEASURE FOR THIS COURT TO TAKE, IS IF

9   MATTEL LIED TO MGA OR MATTEL KNOWINGLY AND INTENTIONALLY

10  DESTROYED DOCUMENTS OR FAILED TO KEEP DOCUMENTS THEY KNEW THEY     02:41

11  SHOULD HAVE KEPT.  LET'S NOT LOSE SIGHT OF WHAT THIS IS ABOUT.

12         **MS. GLASER:**  I AGREE WITH THAT, YOUR HONOR.

13         **THE COURT:**  IF THIS WITNESS MISTAKENLY SAID THAT SHE

14  WAS NOT AWARE OF THOSE AND THERE WERE, IN FACT, DOCUMENTS --

15         I AM INTERESTED TO HEAR WHAT MR. MOORE DID OR WHY HE        02:41

16  DIDN'T DO IT, IF YOU WANT TO ASK HIM ABOUT THAT.  BUT LET'S NOT

17  TRY TO CHARACTERIZE THE WITNESS'S TESTIMONY.

18         **MS. GLASER:**  FAIR ENOUGH.

19         **THE COURT:**  I'VE HEARD IT SEVERAL TIMES NOW, I HAVE A

20  COPY OF IT, AND I AM CERTAINLY MINDFUL OF IT.                      02:41

21         LET'S HEAR WHAT MR. MOORE DID OR DID NOT DO.

22         **MS. GLASER:**  THEN, YOUR HONOR, LET ME TRY IT

23  DIFFERENTLY, THEN, WITHOUT CHARACTERIZING IT.

24  BY **MS. GLASER:**

25  Q    YOU KNEW MS. MARINE TESTIFIED THAT SHE WASN'T AWARE OF        02:42

JULY 24, 2006                    ED CV 04-09049

EXHIBIT __6__ PAGE _120_

1    BACKUP FOR ZEUS AT CERTAIN KEY PERIODS OF TIME; TRUE?

2    A    THAT'S TRUE.

3    Q    AND YOU DIDN'T CORRECT THE RECORD THEN DURING THE

4    DEPOSITION; TRUE?

5    A    THAT'S TRUE.                                              02:42

6    Q    AND UNTIL YOU FILED A DECLARATION IN OPPOSITION TO THIS

7    MOTION FOR SPOLIATION AND DISMISSAL OF THE CASE, YOU NEVER LET

8    MGA KNOW THAT WHAT SHE HAD SAID IN HER DEPOSITION, WHATEVER IT

9    WAS, WASN'T TRUE; TRUE?

10   A    I DIDN'T THINK THAT WHAT SHE SAID AT THE DEPOSITION WASN'T   02:42

11   TRUE; I JUST THOUGHT THAT SHE WASN'T AWARE OF THE TAPES'

12   EXISTENCE.

13   Q    IS IT FAIR TO SAY THAT MGA, WALKING AWAY FROM THAT

14   DEPOSITION, WOULD BELIEVE THAT ZEUS BACKUP TAPES DID NOT EXIST

15   FOR A CONSIDERABLE PERIOD OF TIME?                              02:43

16   A    I WOULD THINK THAT MGA WOULD FOLLOW UP ON THAT.

17   Q    AND WHEN THE COMPANY -- ASSUME FOR A MOMENT THAT SHE

18   WAS -- BY THE WAY, YOU WEREN'T DESIGNATED AS THE PERSON MOST

19   KNOWLEDGEABLE, THE 30(B)(6) WITNESS, IN CONNECTION WITH THE

20   EXISTENCE OF THE BACKUP TAPES FOR ZEUS, WERE YOU?               02:43

21   A    I WAS NOT DESIGNATED.

22   Q    ISN'T IT TRUE, SIR, AS YOU SIT HERE TODAY, YOU HAVE MORE

23   INFORMATION, AND YOU KNEW YOU HAD MORE INFORMATION, WHEN YOU

24   WERE PREPARING HER AND WHEN HER DEPOSITION WAS TAKEN, THAN

25   MS. MARINE; TRUE?                                               02:43

JULY 24, 2006          ED CV 04-09049

EXHIBIT ___6___ PAGE _121_

96

1      **MR. QUINN:**  NON PRIVILEGED INFORMATION, YOUR HONOR,

2  JUST FOR CLARIFICATION.

3      **THE COURT:**  YES, NON PRIVILEGED INFORMATION.

4      IT'S A TOUGH QUESTION TO ASK, COUNSEL.  I UNDERSTAND

5  WHAT YOU'RE TRYING TO GET AT.                                02:43

6      **MS. GLASER:**  EXCUSE ME, YOUR HONOR.  THIS IS THE

7  GENTLEMAN WHO SAID HE GOT THE TAPES FROM SOMEPLACE IN ARIZONA.

8      **THE COURT:**  YOU SEE, THIS GOES BACK TO THE ISSUE OF

9  WHETHER OR NOT THIS WAS NOT THE RIGHT 30(B) WITNESS, AND I TEND

10  TO THINK THAT THIS IS PERHAPS A DISCOVERY DISPUTE WHICH SHOULD   02:44

11  HAVE BEEN PROPERLY FULLY LITIGATED, BUT THIS IS NOT THE

12  GRAVAMEN OF YOUR ALLEGATION AT THIS POINT.

13      **MS. GLASER:**  THE ONLY PROBLEM, YOUR HONOR, IS --

14      **THE COURT:**  IT'S FORGING INTO SOMETHING ELSE, AND

15  THAT SOMETHING ELSE IS NOT REALLY WHAT I WANT TO ENTERTAIN AT    02:44

16  THIS MOMENT.

17      **MS. GLASER:**  I UNDERSTAND THAT.  AND MY ONLY POINT

18  IS, YOUR HONOR, WE WERE MISLED.  I THINK THE RECORD IS CLEAR

19  THAT WE WERE MISLED.  AND I DON'T THINK WE HAVE AN OBLIGATION,

20  AFTER SOMEBODY IS DESIGNATED AS A 30(B)(6) WITNESS, TO SAY,      02:44

21  'OH, SHE'S NOT SURE.'  WHICH ISN'T WHAT SHE SAID.  SHE SAID

22  THAT SHE DOESN'T THINK 'WE GO BACK THAT FAR.'

23      SO THEY HAVE OFFERED HER.  I DIDN'T OFFER HER; I

24  DIDN'T DESIGNATE HER.  THEY DESIGNATED HER.  AND THIS GENTLEMAN

25  HAS MORE INFORMATION ON THE DATE SHE'S TESTIFYING THAN SHE       02:44

EXHIBIT ___6___ PAGE _122_

97

1   DOES.  THAT'S A HEAD FAKE.  THAT IS HIDING EVIDENCE.  THAT IS

2   NOT FAIR.

3          THE COURT:  YOU WERE CERTAINLY ENTITLED, AT THE TIME

4   THAT IT WAS ASKED, TO A YES OR NO ANSWER TO WHETHER OR NOT

5   THESE BACKUP TAPES EXISTED, AND IT APPEARS THAT YOU DID NOT GET   02:45

6   THAT FROM MS. MARINE.

7          MS. GLASER:  I'LL MOVE ON, YOUR HONOR.

8          THE COURT:  OKAY.  THANK YOU.

9   BY MS. GLASER:

10  Q   BY THE WAY, HAVE ANY OF THE DOCUMENTS ON THE BACKUP TAPES   02:45

11  FOR THE ZEUS SERVER BEEN RETRIEVED FROM THE BACKUP TAPES AND

12  PROVIDED TO MGA OR ITS COUNSEL OR TO CARTER BRYANT OR HIS

13  COUNSEL?

14         THE COURT:  YOU'RE ASKING IF DOCUMENTS, PARTICULAR

15  DOCUMENTS, WHETHER DOCUMENTS CAME FROM THE BACKUP TAPES?   02:45

16         MS. GLASER:  YES, SIR.

17         THE WITNESS:  IF ANY DOCUMENTS FROM THE ZEUS BACKUP

18  TAPES WERE RETRIEVED FOR MGA'S COUNSEL?

19         I UNDERSTAND THAT THAT'S WHAT HAPPENED.

20  BY MS. GLASER:   02:45

21  Q   WHEN DID THAT HAPPEN?

22  A   I'M NOT SURE WHEN IT HAPPENED.  THERE'S ONGOING

23  PRODUCTION.  BUT I DID ASK COUNSEL IF THIS HAD HAPPENED.  I DID

24  INQUIRE AS TO WHETHER DOCUMENTS WERE PRODUCED FROM THOSE ZEUS

25  TAPES, AND I UNDERSTAND THAT THEY WERE.   02:46

JULY 24, 2006          ED CV 04-09049
EXHIBIT __6__ PAGE 123

1    Q    AND ARE YOU THE PERSON MOST KNOWLEDGEABLE WHO WOULD KNOW

2    IF THERE ACTUALLY -- OR IS IT OUTSIDE COUNSEL -- WHO WOULD KNOW

3    IF DOCUMENTS HAD BEEN RETRIEVED FROM THE ZEUS BACKUP TAPES AND

4    PRODUCED TO MGA AND MR. BRYANT IN THIS LAWSUIT?

5    A    WELL, I'M NOT SURE I CAN ANSWER THAT.                              02:46

6         I THINK THE ANSWER IS, WHEN I GOT THE ZEUS TAPES, WE

7    TURNED THEM OVER TO AN OUTSIDE FIRM, AND WE DEALT WITH THEM IN

8    TERMS OF -- WE STARTED SEARCHING THEM.  AND IF THERE WERE

9    RELEVANT DOCUMENTS ON THOSE TAPES, THEY WOULD BE PRODUCED, I

10   WOULD ASSUME.                                                          02:47

11   Q    IS IT FAIR TO SAY THAT YOU'RE NOT THE PERSON MOST

12   KNOWLEDGEABLE ABOUT WHAT, IF ANYTHING, HAS BEEN PROVIDED TO

13   COUNSEL OR ITS CLIENTS, MGA OR CARTER BRYANT, FROM THOSE BACKUP

14   TAPES OF ZEUS?

15        MR. QUINN:  I OBJECT.  WE'RE GETTING INTO A DISCOVERY             02:47

16   ISSUE HERE.

17        THE COURT:  I DON'T SEE THE RELEVANCE.

18        MS. GLASER:  I'LL MOVE ON.

19   BY MS. GLASER:

20   Q    MS. MARINE ALSO TESTIFIED THAT SHE DETERMINES WHEN TO            02:47

21   CREATE BACKUP TAPES AND THAT NO ONE FROM LEGAL HAS EVER

22   DIRECTED HER TO CREATE BACKUP TAPES; TRUE OR FALSE?

23        MR. QUINN:  I OBJECT, YOUR HONOR.  WE'VE GOT SOME

24   TESTIMONY THAT WE CAN ALL LOOK AT.

25        MS. GLASER:  I'LL ASK IT DIFFERENTLY TO AVOID THAT.              02:47

99

1          **THE COURT:**  THANK YOU.

2   BY **MS. GLASER:**

3   Q     IS IT TRUE THAT MS. MARINE DETERMINES WHEN TO CREATE

4   BACKUP TAPES AND THAT NO ONE FROM LEGAL HAS EVER DIRECTED HER

5   TO CREATE BACKUP TAPES?  TRUE OR FALSE?                          02:47

6   A     MY UNDERSTANDING IS THAT MS. MARINE CREATES BACKUP TAPES

7   AND SHE'S PROVIDED SOME BACKUP TAPES TO US, TO ME, TO THE LAW

8   DEPARTMENT.

9   Q     MY QUESTION IS, IS IT TRUE THAT LEGAL HAS NEVER DIRECTED

10  HER TO PROVIDE OR MAKE BACKUP TAPES; SHE DETERMINES, NOT YOU,   02:48

11  LEGAL, BUT SHE DETERMINES WHEN AND IF TO CREATE BACKUP TAPES

12  FOR ZEUS?  IS THAT TRUE OR FALSE, SIR?

13  A     I WANT TO ANSWER THE QUESTION.  IT SOUNDS A LITTLE

14  COMPOUND.

15         I SEEM TO REMEMBER ASKING HER AT ONE POINT TO MAKE A    02:48

16  ZEUS BACKUP TAPE, BUT SHE ALSO MAKES BACKUP TAPES IN HER

17  CAPACITY AS MANAGER OF THE ZEUS SYSTEM.

18         **THE COURT:**  MR. MOORE, LET ME ASK YOU THIS:

19         MR. QUINN INDICATED TO ME THAT FROM 2002 TO THE

20  PRESENT, ALL OF THE ZEUS BACKUP TAPES HAVE BEEN SAVED.         02:48

21         DO YOU RECALL THAT REPRESENTATION?

22         **THE WITNESS:**  I REMEMBER THAT THE REPRESENTATION WAS

23  THAT WE HAVE A 2002 BACKUP TAPE FROM ZEUS.

24         **THE COURT:**  AND EVERYTHING SINCE THEN.

25         MR. QUINN, AM I MISQUOTING YOU?  THAT WAS WHAT I        02:49

JULY 24, 2006                    ED CV 04 **EXHIBIT** ___6___ PAGE __125__

1   WROTE DOWN IN MY NOTES.

2           MR. QUINN:   IT WAS ACTUALLY MR. COREY.

3           THE COURT:   I'M SORRY.

4           WAS THAT YOUR REPRESENTATION?

5           MR. COREY:   ALL OF THE BACKUP TAPES FOR ZEUS HAVE NOT   02:49

6   BEEN PRESERVED SINCE THEN.   WE HAVE COMPLETE SETS OF BACKUP

7   TAPES DONE AT INTERMITTENT PERIODS, DONE FOR PURPOSES OF THE

8   LITIGATION.

9           THE COURT:   YOU GAVE ME DATES OF APRIL, MAY, AUGUST,

10  DECEMBER OF 1998; AND WE WENT THROUGH ALL OF THESE SPORADIC   02:49

11  PERIODS UP THROUGH JULY OF 2001; AND THEN WE SAID WE HAD IT FOR

12  ALL OF 2002.   AND I THOUGHT I ASKED THIS QUESTION SEVERAL

13  TIMES; THAT SINCE 2002, WE HAVE ALL OF THE ZEUS BACKUP TAPES.

14          AM I MISTAKEN?

15          MR. COREY:   I WANT TO MAKE CLEAR THAT WE'RE TALKING   02:49

16  ABOUT THE ZEUS BACKUP TAPES AND NOT THE E-MAIL BACKUP TAPES.

17          THE COURT:   I'M NOT SAYING ANYTHING ABOUT E-MAIL.

18  I'M TALKING ABOUT ZEUS.

19          MR. COREY:   THERE IS NO AUTO-DELETE FUNCTION.

20  THERE'S NOT A RISK OF THINGS BEING LOST AUTOMATICALLY.   SO THE   02:49

21  ELECTION WAS MADE THAT AT INTERMITTENT TIME PERIODS, WE WOULD

22  CREATE A FULL BACKUP OF ZEUS.   AND THERE'S ONE FOR 2002, AND

23  THERE'S ONE FOR 2004.

24          THE COURT:   WHAT ABOUT 2003?

25          MR. COREY:   I CAN'T RECALL IF THERE'S ONE FOR 2003 OR   02:50

1  NOT, BUT THINGS DON'T DISAPPEAR FROM ZEUS.  THIS IS WHAT

2  MS. MARINE TESTIFIED TO.  ZEUS JUST KEEPS GETTING BIGGER AND

3  BIGGER AND BIGGER.  PEOPLE DON'T DELETE.

4          THE COURT:  WHAT ABOUT 2005?

5          MR. COREY:  I DON'T KNOW IF WE HAVE ONE FOR 2005 OR          02:5(

6  NOT.  I BELIEVE WE DO.  I DON'T KNOW.

7          MR. QUINN:  THE SYSTEM EXISTS.  IT DOESN'T HAVE AN

8  AUTO DELETE --

9          THE COURT:  THEN WHY CAN'T I GET A STRAIGHT ANSWER

10  THAT SAYS THAT THEY'RE THERE?          02:5(

11          MR. COREY:  BECAUSE THE SYSTEM CONTINUES TO EXIST.

12          THE INFORMATION IS THERE.

13          THE COURT:  FOR 2002, FOR 2003, FOR 2004, FOR 2005,

14  FOR 2006, AND THROUGH NOW OF 2007?

15          MR. COREY:  WHAT MS. MARINE TESTIFIED TO WAS THAT --          02:5(

16          THE COURT:  I'M ASKING YOU, COUNSEL, IS IT THERE OR

17  IS IT NOT THERE?  BECAUSE I HAVE MY NOTES HERE VERY CLEARLY

18  THAT WAS THE IMPRESSION THAT I WAS GIVEN.  AND I THOUGHT WE HAD

19  KIND OF MOVED BEYOND THIS WHOLE ZEUS ISSUE BECAUSE THEY WERE

20  THERE AND THEY'RE AVAILABLE AND MGA CAN COME AND LOOK AT THEM          02:51

21  OR ACCESS DOCUMENTS FROM THEM.

22          IS THAT TRUE OR NOT TRUE?

23          MR. COREY:  WE HAVE THE BACKUP TAPES FOR ZEUS THAT I

24  IDENTIFIED FOR YOU PRIOR TO 2002, FROM 2001 AND PRIOR.

25          I WANT TO MAKE SURE THAT I'M SAYING EXACTLY WHAT WE          02:51

1   HAVE.

2          WE HAVE A COMPLETE BACKUP OF ZEUS FOR 2002.  WE HAVE

3   A COMPLETE BACKUP OF ZEUS FOR 2004.  ALL OF THAT INFORMATION ON

4   THOSE BACKUP TAPES LIKELY CONTINUES TO EXIST ON ZEUS AS IT

5   EXISTS TODAY.                                                      02:51

6          PEOPLE HAVE BEEN INSTRUCTED NOT TO DELETE THINGS

7   RELEVANT TO THIS CASE; SO THERE SHOULDN'T BE A RISK OF LOSING

8   INFORMATION ON ZEUS.

9          **THE COURT:**  HAVE YOU MADE BACKUPS FOR 2003?

10         **MR. COREY:**  I DON'T KNOW.                               02:51

11         **MS. GLASER:**  I HAVE NOTHING FURTHER.

12         **THE COURT:**  THANK YOU, COUNSEL.

13         I'M STARTING TO UNDERSTAND MGA'S FRUSTRATION,

14   COUNSEL.

15         **MR. QUINN:**  WE'D LIKE TO ADDRESS THAT.                  02:52

16         **THE COURT:**  PLEASE.

17         **MR. QUINN:**  WE'D LIKE TO UNDERSTAND THE SOURCE OF THE

18   FRUSTRATION, YOUR HONOR.

19         THIS IS A SYSTEM THAT JUST -- THE ZEUS SYSTEM, IT'S A

20   DATA STORAGE SYSTEM.                                              02:52

21         **THE COURT:**  I UNDERSTAND THAT.

22         **MR. QUINN:**  IT JUST GROWS AND GROWS AND GROWS.

23         **THE COURT:**  I UNDERSTAND THAT AS WELL.

24         **MR. QUINN:**  PEOPLE HAVE BEEN TOLD 'DON'T DELETE

25   ANYTHING OFF OF THIS SYSTEM THAT'S RELATED TO THIS CASE.'  AS A   02:52

JULY 24, 2006          ED CV 04-09049

EXHIBIT ___6___ PAGE 128

1    FALLBACK, JUST TO BE EXTRA CAREFUL, AT A COUPLE OF PERIODS, A

2    COMPLETE BACKUP, A SNAPSHOT, EVERYTHING THAT'S THERE, HAS BEEN

3    MADE; THAT'S A DUPLICATE.

4            THE COURT:   OKAY.

5            AS FAR AS THE 'DON'T DELETE ANYTHING RELATED TO THIS   02:52

6    CASE,' WHEN DID THAT DIRECTIVE GO OUT?

7            MR. COREY:   APRIL OF 2005, WITH RESPECT TO THE

8    EXPANDED CASE THAT WE'RE DEALING WITH NOW.

9            PRIOR TO APRIL OF 2005, THE ADMISSIONS THAT WE HAVE

10   FROM BRYANT ARE THAT HE NEVER USED ZEUS, BUT WE'VE PRESERVED   02:53

11   THAT INFORMATION.

12           THE COURT:   IT'S NOT ABOUT JUST BRYANT.

13           CAN YOU MAKE A BACKUP OF 2003 AND 2005 AND 2006 AND

14   2007?

15           MR. COREY:   THE INFORMATION THAT WAS THERE IN 2003   02:53

16   WOULD BE ON THE 2004 BACKUP TAPE.

17           THE COURT:   SO THE INFORMATION THAT WAS THERE --

18   OKAY.

19           MR. QUINN:   WE CAN DO A BACKUP TODAY, YOUR HONOR, AND

20   IT WILL CAPTURE EVERYTHING THAT WAS EVER ON ZEUS.   02:53

21           MR. COREY:   IT WILL CAPTURE THE INFORMATION THAT'S ON

22   THE 1998 BACKUP TAPES.

23           MS. GLASER:   YOUR HONOR, RESPECTFULLY -- AND I AM NOT

24   A COMPUTER MAVEN -- IF IT'S A FILE SYSTEM, WHICH IS WHAT

25   THEY'RE REPRESENTING, IF SOMEONE CHOOSES TO DELETE FILES FOR   02:53

104

1   2003 -- I'LL USE THAT AS AN EXAMPLE -- THEY'RE GONE.  YOU COULD

2   BACKUP TO YOUR HEART'S DELIGHT, AND IT'S GONE; IT'S NOT THERE.

3          I'M NOT SUGGESTING THE LAWYERS ARE MISREPRESENTING;

4   I'M SUGGESTING MR. JENAL, WHO KNOWS A LOT MORE ABOUT COMPUTERS

5   THAN I DO, IS TELLING ME -- AND I HAVE NO REASON TO DOUBT HIM          02:54

6   AT ALL -- IF YOU TRIED TO BACKUP -- AND I'M USING IT AS AN

7   EXAMPLE -- 2003 OR 2002, TODAY, AND YOU HAD NOT DONE IT

8   PREVIOUSLY, EASILY, DOCUMENTS COULD BE DELETED.

9          THE COURT:  I UNDERSTAND THAT, COUNSEL, BUT I DON'T

10  HAVE ANY EVIDENCE BEFORE ME THAT SUGGESTS THAT ANYTHING WAS           02:54

11  DELETED IN 2003.

12          MS. GLASER:  YOU ARE RIGHT.  YOU DO NOT HAVE A

13  DECLARATION THAT TELLS YOU THERE WASN'T ANYTHING DELETED,

14  BECAUSE THAT ISSUE HAS NOT BEEN ADDRESSED PROPERLY, IN OUR

15  VIEW, BY MATTEL.                                                      02:54

16          WE DON'T KNOW WHAT'S THERE AND WHAT'S NOT THERE; AND

17  WE'RE NOT GETTING STRAIGHT ANSWERS, YOUR HONOR.

18          MR. QUINN:  THE REALITY --

19          THE COURT:  MR. MOORE, YOU MAY STEP DOWN.

20          MR. QUINN:  HOW DID WE GET HERE?  BECAUSE THEY SAID           02:54

21  WE DON'T HAVE ANY ZEUS TAPES, PERIOD.  THAT'S WHAT THIS MOTION

22  WAS BASED ON.

23          THE COURT:  I UNDERSTAND, COUNSEL.  MY FRUSTRATION

24  IS --

25          MR. QUINN:  AND NOW WE'VE WANDERED --

JULY 24, 2006                    ED CV 04-09049

EXHIBIT ___6___ PAGE 130

105

1        **THE COURT:**  I UNDERSTAND.  AND I WAS TRYING TO PIN

2    THINGS DOWN.  THAT'S WHAT WE WERE DOING IN THIS HEARING.  AND I

3    STILL FEEL THAT THE RUG HAS BEEN PULLED A LITTLE BIT FROM

4    UNDERNEATH ME.

5        **MR. QUINN:**  I REALLY APOLOGIZE FOR THAT, YOUR HONOR.    02:55

6        PART OF THE PROBLEM IS, THE LAWYERS ARE TALKING ABOUT

7    TECHNICAL THINGS, BUT THE FACT OF THE MATTER IS, THIS THING

8    STILL EXISTS.

9        IS IT CONCEIVABLE THAT SOMEBODY COULD HAVE GONE IN --

10   I MEAN, IF THERE IS NO BACKUP IN 2003, IS IT CONCEIVABLE THAT    02:55

11   SOMEBODY, CONTRARY TO SOME INSTRUCTIONS, COULD HAVE GONE IN AND

12   DELETED SOMETHING AND THEN IT WOULDN'T APPEAR IN THE 2004

13   BACKUP?

14       I ASSUME THE ANSWER TO THAT IS YES.  IF YOU HAD A

15   DISHONEST OR A DISOBEDIENT EMPLOYEE, THAT COULD HAPPEN.    02:55

16       **THE COURT:**  OKAY.  ALL RIGHT.  I'M GOING TO GO

17   THROUGH THIS AGAIN.

18       COUNSEL, WHY DON'T YOU COME TO THE FRONT, BECAUSE YOU

19   SEEM TO BE THE ONE WHO'S MOST KNOWLEDGEABLE ABOUT THESE

20   BACKUPS.    02:55

21       **MR. COREY:**  YOUR HONOR, I DON'T KNOW WHETHER THAT'S A

22   GOOD THING OR A BAD THING.

23       **THE COURT:**  YOU SEEM TO BE THE PERSON MOST

24   KNOWLEDGEABLE BEFORE ME.

25       FROM 1998, I HAVE APRIL, MAY, AUGUST, DECEMBER; IS    02:55

1  THAT CORRECT?

2          MR. COREY:   IT'S THE INFORMATION IN OUR PAPERS, YOUR

3  HONOR.   WE HAVE BACKUP TAPES FOR APRIL, MAY, AUGUST, SEPTEMBER,

4  AND DECEMBER OF 1998.

5          THE COURT:   ALL RIGHT.                                       02:56

6          IN ADDITION TO WHICH, SINCE THE ZEUS PROGRAM IS STILL

7  IN EXISTENCE, IF SOMETHING WAS SAVED IN OCTOBER OR NOVEMBER OF

8  1998 AND NOBODY HAS DELETED IT, IT SHOULD STILL BE THERE;

9  CORRECT?

10         MR. COREY:   THAT'S CORRECT, YOUR HONOR.                      02:56

11         THE COURT:   IN 1999, WHAT DO YOU HAVE BACKUP TAPES

12  FOR?

13         MR. COREY:   JANUARY AND FEBRUARY.

14         THE COURT:   THEN FOR 2000, WE HAVE FEBRUARY, MARCH,

15  THROUGH AUGUST, AND THEN DECEMBER; IS THAT CORRECT?                  02:56

16         MR. COREY:   FEBRUARY, MARCH, APRIL, MAY, JUNE, JULY,

17  AUGUST, AND DECEMBER.

18         THE COURT:   ALL RIGHT.

19         AND THEN FOR 2001, WE HAVE BACKUP TAPES FOR JANUARY

20  THROUGH JULY?                                                        02:57

21         MR. COREY:   CORRECT -- FROM JANUARY AND JULY.

22         THE COURT:   JANUARY AND JULY.   OKAY.

23         SO FAR, THAT IS TOTALLY CONSISTENT WITH MY NOTES.

24         THEN WE HAVE A BACKUP TAPE FOR ALL OF 2002; CORRECT?

25         MR. COREY:   THAT'S CORRECT, YOUR HONOR.                      02:57

JULY 24, 2006                    ED CV 04-09049

EXHIBIT ___6___ PAGE 132

1    THE COURT:  ALL RIGHT.

2         AND THEN I HAVE HERE 2002 THROUGH THE PRESENT, WE

3    HAVE BACKUP TAPES.  BUT YOU'RE TELLING ME THAT THAT'S NOT

4    CORRECT?

5         MR. COREY:  IF THAT'S WHAT THE COURT HAS IN ITS          02:57

6    NOTES, THEN I MISSPOKE.

7         THE COURT:  IT'S 2002 AND 2004 THAT WE HAVE BACKUP

8    TAPES FOR; CORRECT?

9         MR. COREY:  THAT'S CORRECT.

10        THE COURT:  NO OTHER YEARS?                               02:57

11        MR. COREY:  I BELIEVE THAT WE HAVE NOT DONE A

12   SEPARATE PRESERVATION FOR LITIGATION PURPOSES FOR ZEUS.  THERE

13   MAY BE OTHER BACKUP TAPES AFTER 2004 THAT MAY BE OUT THERE.

14        THE COURT:  SO FOR 2003, 2005, 2006, AND 2007, THERE

15   ARE NO BACKUP TAPES.  BUT, AGAIN, UNLESS SOMEBODY HAS DELETED  02:57

16   SOMETHING, YOU SHOULD HAVE, FROM JANUARY OF 1998 THROUGH THE

17   PRESENT, ACCESS TO WHATEVER IS ON ZEUS; CORRECT?

18        MR. COREY:  THAT'S CORRECT.

19        AND TO GIVE THE COURT A FRAME OF REFERENCE, IN, I

20   BELIEVE 1996, 1997, ZEUS WAS A STORAGE SYSTEM OF 100 GIGABYTES; 02:58

21   NOW IT'S AT 50 TERABYTES.  IT'S NOT A TRIVIAL STORAGE.

22        THE COURT:  THAT'S A LOT OF BYTES.

23        BASED ON WHAT MR. MOORE HAS JUST TESTIFIED TO, YOU

24   HAVE SENT OUT THIS ZEUS STORAGE TO AN OUTSIDE ENTITY AND THEY

25   ARE PRODUCING DOCUMENTS THAT ARE RESPONSIVE FROM THE ZEUS      02:58

1   STORAGE FACILITY FOR THIS CASE; IS THAT CORRECT?

2           MR. COREY:  THAT'S MY UNDERSTANDING, YOUR HONOR.

3           I KNOW THAT THEY HAVE BEEN RESTORED.  THEY DON'T HAVE

4   RESPONSIBILITY FOR PRODUCTION.

5           THE COURT:  WELL, THEN, MAYBE SOMEBODY WHO IS

6   RESPONSIBLE FOR PRODUCTION CAN HELP ME OUT HERE.

7           HAVE ALL OF THE DISCOVERY REQUESTS THAT HAVE COME

8   FROM MGA AND CARTER BRYANT GONE TO THIS OUTSIDE SOURCE AND HAVE

9   BEEN PART OF THE PRODUCTION?  CAN ANYBODY ANSWER THAT?

10          MR. ZELLER?

11          MR. ZELLER:  I CAN PROBABLY BEST ADDRESS THAT.

12          THE SHORT ANSWER IS, NO, THAT'S NOT THE WAY IT

13  HAPPENS.

14          WE HAVE THE OUTSIDE VENDOR DO PARTICULAR KINDS OF

15  SEARCHES.  THERE ARE TREMENDOUS CHALLENGES, BY THE WAY, IN HOW

16  THE ZEUS SYSTEM IS SEARCHED, BECAUSE IT IS LARGELY GRAPHICAL

17  FILES.  SO IT'S NOT LIKE YOU CAN JUST GO IN AND SAY, 'EVERY

18  TIME THERE'S SOMETHING ABOUT BRATZ, GIVE IT TO ME.'  SO WE HAVE

19  TO COME UP WITH VARIOUS CRITERIA FOR THE VENDOR TO FOLLOW IN

20  EXTRACTING FILES FOR US TO REVIEW, WHICH IS WHAT THEY DO FROM

21  THOSE TAPES.  WE REVIEW THE DOCUMENTS THAT ARE PRODUCED TO US

22  BY THE VENDOR.  THIS STILL IS ONGOING.  WE HAVE BEEN DOING THIS

23  FOR SOME PERIOD OF TIME.  AND, YES, DOCUMENTS FROM THOSE

24  IMAGES, THOSE FILES, HAVE BEEN PRODUCED IN THIS CASE.

25          THE COURT:  I UNDERSTAND THAT.

1    BUT I JUST DON'T WANT THIS TO BE A SENSE OF

2 SPORADICALLY, DOCUMENTS HAVING BEEN PRODUCED.  I NEED TO HAVE

3 SOME ASSURANCE THAT THERE IS A COMPREHENSIVE -- TO THE EXTENT

4 THAT THERE ARE RESPONSIVE DOCUMENTS ON ZEUS, MGA IS ENTITLED TO

5 THEM.

6    MR. ZELLER:  ABSOLUTELY, YOUR HONOR.  WE'VE MADE THAT

7 VERY CLEAR.  AND IT SO HAPPENS, ON A DOCUMENT MOTION THAT MGA

8 BROUGHT ON REPLY FOR THE FIRST TIME, THEY STARTED COMPLAINING

9 ABOUT ZEUS; AND THAT'S NOW IN FRONT OF JUDGE INFANTE.  WE'VE

10 MADE THE VERY POINTS, SOME OF THOSE THAT ARE RAISED HERE, WHICH

11 IS, YOU KNOW, 'HERE IS WHAT WE'RE DOING WITH ZEUS.'  SO THERE

12 IS TRANSPARENCY IN THAT WAY IN THE SEARCHES THAT WE'RE DOING

13 AND THE CHALLENGES THAT WE HAVE WITH RESPECT TO LOCATING THE

14 RIGHT DOCUMENTS OFF OF ZEUS, BECAUSE IT IS A CONSIDERABLY --

15 IT'S A MASSIVE SYSTEM.  THERE'S NO OTHER WAY OF PUTTING IT.

16 THERE ARE A LOT OF FILES.

17    WE'VE OFFERED THOSE TAPES SO IF THEY WANT TO SEARCH,

18 THEY'RE FREE TO DO IT.

19    THE COURT:  VERY WELL.

20    AND THEN WITH RESPECT TO THE E-MAILS, JUST TO MAKE

21 SURE MY NOTES ARE CLEAR HERE, OR MY UNDERSTANDING IS CLEAR, AS

22 OF APRIL OF 2005, ALL E-MAILS WERE BACKED UP?

23    MR. QUINN:  YES, YOUR HONOR.

24    THE COURT:  AND THAT STARTED, OR HAD THE EFFECT OF

25 BEGINNING, GOING BACK TO DECEMBER OF 2004, BECAUSE THOSE YET

03:00
03:00
03:00
03:00
03:01

110

1  HADN'T BEEN DELETED.

2        **MR. QUINN:**  YES, YOUR HONOR.

3        **THE COURT:**  AND THAT CONTINUES THROUGH THIS DAY?

4        **MR. QUINN:**  YES.

5        **THE COURT:**  COUNSEL, I'M GOING TO GIVE YOU THE LAST    03:01

6  WORD, BECAUSE IF I ACCEPT THESE REPRESENTATIONS, IT'S GOING TO

7  BE VERY DIFFICULT FOR THIS COURT TO COUNTENANCE THE SANCTION

8  THAT YOU'RE SEEKING, BECAUSE THEN IT BECOMES, TO MY WAY OF

9  THINKING, A PRODUCTION ISSUE AND NOT A PRESERVATION ISSUE.

10        WHAT I AM BEING TOLD -- AND I DON'T HAVE ANY EVIDENCE    03:01

11  THAT WOULD SUGGEST THAT THIS REPRESENTATION IS NOT ACCURATE --

12  IS THAT THE ZEUS SYSTEM IS ALIVE AND WELL; THAT THERE IS AN

13  OUTSIDE VENDOR WHO IS ABLE TO SEARCH AND OBTAIN DOCUMENTS FROM

14  IT, BASED ON CRITERIA.

15        NOW, IT MAY VERY WELL BE THAT THE WRONG CRITERIA ARE    03:02

16  BEING PUT IN; THE CRITERIA IS NOT FULLY RESPONSIVE TO ALL THE

17  REQUESTS THAT MGA IS MAKING; BUT THAT'S A PRODUCTION ISSUE TO

18  BE LITIGATED BEFORE JUDGE INFANTE; THAT IS NOT A PRESERVATION

19  ISSUE.

20        IF I ACCEPT THAT, AND I HAVE NO REASON NOT TO ACCEPT    03:02

21  THAT, THAT KIND OF ADDRESSES THE ZEUS CONCERN.

22        AS FAR AS THE E-MAIL ISSUE, IF I ACCEPT THE

23  REPRESENTATION THAT FROM DECEMBER OF 2004 TO THE PRESENT, WE

24  HAVE BACKED UP ALL E-MAIL AND THAT CONCERTED EFFORTS WERE MADE

25  PRIOR TO DECEMBER OF 2004 TO OBTAIN ANY RESPONSIVE E-MAILS --    03:02

111

1    MAYBE SOME HAVE SLIPPED THROUGH THE CRACKS, PERHAPS; BUT,

2    AGAIN, I DON'T HAVE THE QUANTUM OF EVIDENCE BEFORE ME TO

3    SUGGEST THAT E-MAILS WERE DELETED OR ANYTHING APPROACHING THE

4    LEVEL THAT WOULD BE REQUIRED FOR TERMINATING SANCTIONS.

5           AS FAR AS THE REMAINING CONTENTIONS, I HAVE SERIOUS         03:02

6    CONCERNS OR QUALMS ABOUT THE 30(B) WITNESS THAT WAS PUT FORWARD

7    IN TERMS OF YOUR RESPONSE.  IT'S NOT CLEAR TO ME THAT YOU EVER

8    GOT A 30(B) WITNESS ON THE ZEUS SYSTEM.  I UNDERSTAND THE

9    CLARIFICATIONS THAT WERE MADE BY MATTEL DURING THE DEPOSITION,

10   WHICH SUGGESTED THAT THIS WITNESS WASN'T HERE TO TESTIFY ON      03:03

11   ZEUS.  I ASSUME YOU MADE A REQUEST FOR THAT.  I DON'T KNOW WHY

12   YOU DIDN'T GET IT.  BUT, AGAIN, THAT'S NOT A PRESERVATION

13   ISSUE; THAT'S A PRODUCTION ISSUE, WHICH IS APPROPRIATELY TAKEN

14   UP BY A DISCOVERY MOTION.

15          AND THE LAST TWO ISSUES, THE PHONE RECORDS AND THE         03:03

16   TIME RECORDS, AGAIN, THERE IS NOT ANY EVIDENCE FOR ME TO FIND

17   THAT THERE WAS A WILLFUL DESTRUCTION OF EVIDENCE HERE.

18       MS. GLASER:  I'M NOT ASKING ON THE PHONE RECORDS,

19   JUST TO BE CLEAR, THE TELEPHONE RECORDS AND THE TIME RECORDS.

20   IF WE EVER GET TO TRIAL ON THIS, WE WILL DO WHAT WE --           03:03

21       THE COURT:  AND YOU WILL BE ENTITLED TO.

22       MS. GLASER:  BUT, YOUR HONOR, I WANT TO POINT OUT A

23   COUPLE OF THINGS.

24       THE COURT:  DO YOU UNDERSTAND MY THINKING, ANYWAY, IN

25   TERMS OF ZEUS?                                                   03:03

EXHIBIT __6__ PAGE _137_

1    **MS. GLASER:** I DO.  BUT I MUST TELL YOU, THE LEVEL OF

2    FRUSTRATION THAT WE ARE SUFFERING RIGHT NOW, BECAUSE

3    REPRESENTATIONS ARE MADE TO YOUR HONOR -- HOW WOULD WE KNOW?

4    HOW IN THE WORLD CAN WE -- WE HAVEN'T GOTTEN ANY DOCUMENTS FROM

5    ZEUS, I CAN TELL YOU THAT.  THEY HAVE NOT BEEN PROVIDED TO US.        03:04

6    IN FACT, WE WERE TOLD -- YOU KNOW WHAT?  ONCE WE WERE TOLD

7    THERE WERE ZEUS TAPES, THEN WE WERE TOLD THERE ARE NOT ZEUS

8    TAPES.  WE HAVEN'T GOTTEN ANY PRODUCTION.  AND IT'S A

9    MISREPRESENTATION TO THIS COURT.

10          CAN I PROVE IT TO YOU?  I WOULD BE ABLE TO PROVE IT        03:04

11   TO YOU.  I WILL EVENTUALLY BE ABLE TO PROVE IT TO YOU.  RIGHT

12   NOW I'M LISTENING FOR THE FIRST TIME THAT WE HAVE BEEN GIVEN

13   ZEUS DOCUMENTS FROM THE ZEUS TAPES.  I'M SAYING TO YOU, WE

14   DON'T BELIEVE WE HAVE; NOT ONE, NOT A LITTLE BIT, NOTHING.

15   THAT'S NUMBER ONE.                                                03:04

16          NUMBER TWO, YOUR HONOR, IT IS NOT OKAY IN OUR SYSTEM

17   TO START PRESERVING E-MAILS AFTER YOU FILE A LAWSUIT.

18          I CAN'T PREDICT WHEN THEY'RE GOING TO FILE A LAWSUIT.

19   WE BELIEVE THEY DELIBERATELY DELAYED.  WE'RE NOT ASKING YOU TO

20   ACCEPT THAT TODAY.  BUT THEY SURE WAITED A LONG TIME.  AND THEY    03:05

21   DON'T HAVE ANY E-MAILS THAT THEY CAN PROVIDE TO YOUR HONOR.

22   THEY DO AN INVESTIGATION OF MR. BRAUR.  YOU CAN SEE IN OUR

23   TIMELINE.  I DON'T HAVE ANY E-MAILS FROM THAT PERIOD.  THEY DO

24   AN INVESTIGATION OF MEXICO.  THEY ARE URGING THE MEXICAN

25   GOVERNMENT TO GO AFTER FORMER EMPLOYEES OF THEIRS THAT NOW WORK    03:05

113

1   AT MGA.   THEY ARE DOING THAT.   I DON'T HAVE ANY E-MAILS.

2          **THE COURT:**   I DO HAVE THE TESTIMONY FROM MR. MOORE

3   THAT AS OF NOVEMBER OF 2003, THERE WAS AN EFFORT MADE; PERHAPS,

4   NOT AS GREAT AN EFFORT AS YOU WOULD LIKE TO HAVE SEEN, BUT

5   THERE WAS AN EFFORT MADE TO IDENTIFY WITNESSES.   35 OF THEM IS          03:05

6   THE NUMBER THEY HAVE OFFERED.   AND IT'S --

7          **MS. GLASER:**   THEY HAVEN'T OFFERED IT UNDER PENALTY OF

8   PERJURY, AND I'M NOT DOUBTING FOR A MOMENT --

9          **THE COURT:**   AND I'M NOT EITHER.

10         **MS. GLASER:**   I'M NOT ATTACKING THE INTEGRITY OF          03:05

11  MR. QUINN.   BUT I DO BELIEVE THAT WE'RE ENTITLED, AND I THINK

12  THE COURT IS ENTITLED, TO A VERY CLEAR DECLARATION UNDER

13  PENALTY OF PERJURY AS TO WHAT THEY'VE DONE WITH RESPECT TO

14  PRESERVING E-MAIL TESTIMONY.

15         AND, YOUR HONOR, IF I MIGHT, WE WOULD VERY MUCH          03:06

16  LIKE -- IF YOUR HONOR IS EVEN THINKING ABOUT NOT TERMINATING,

17  WHICH OBVIOUSLY YOU ARE, I WOULD VERY MUCH LIKE TO PROVIDE THE

18  COURT, AND COUNSEL, OF COURSE, AN OPPORTUNITY TO COMMENT ON A

19  JURY INSTRUCTION THAT WOULD GO TO THIS ISSUE, BECAUSE WE

20  THINK -- IT'S NOT JUST GAME PLAYING; WE THINK THAT THERE IS          03:06

21  UNRECOVERABLE EVIDENCE THAT WE WILL NEVER BE ABLE TO USE IN

22  THIS CASE THAT HAS CAUSED GREAT AND ONGOING DAMAGE TO MGA, AND

23  I'D LIKE TO AT LEAST HAVE THE OPPORTUNITY TO PROVIDE COUNSEL

24  AND YOUR HONOR WITH A LIMITING INSTRUCTION, BECAUSE THIS IS, IN

25  OUR VIEW, NOT ACCEPTABLE CONDUCT.          03:06

114

1    **THE COURT:**  YOU WILL HAVE THAT OPPORTUNITY, BUT NOW

2    IS NOT THE TIME TO BE DEALING WITH JURY INSTRUCTIONS.   THERE

3    ARE ALSO ALLEGATIONS THAT HAVE SURFACED THAT GO BOTH WAYS ON

4    THIS, AND I'M NOT GOING TO RESOLVE THOSE ISSUES UNTIL WE GET TO

5    THE PRETRIAL CONFERENCE.                                          03:06

6    WHAT I'M PRESENTED WITH RIGHT NOW IS THIS MOTION FOR

7    TERMINATING SANCTIONS, TO CALL THIS CASE TO AN END RIGHT NOW.

8    AND BASED ON THE RECORD BEFORE ME, FROM A RETENTION

9    PERSPECTIVE, I DO HAVE SERIOUS CONCERNS -- THE CONCERNS THAT

10   YOU'RE ARTICULATING NOW RELATE TOWARDS PRODUCTION.   YOU'RE      03:07

11   SAYING THAT WE DON'T HAVE ANY OF THESE DOCUMENTS; THAT WE

12   HAVEN'T RECEIVED ANYTHING.   WELL, THAT DOESN'T MEAN THAT THEY

13   HAVEN'T RETAINED WHAT THEY HAVE.

14   NOW, TWO, THREE MONTHS FROM NOW -- I'M NOT INVITING

15   THIS -- BUT TWO, THREE MONTHS FROM NOW IF IT TURNS OUT THAT      03:07

16   THEY HAVEN'T TURNED OVER ANYTHING FROM ZEUS, THAT THEY'RE NOT

17   ABLE TO GO BACK AND -- I'VE TRIED TO TAKE AS CAREFUL NOTES AS I

18   CAN -- IF THESE DON'T EXIST ANYMORE --

19   **MS. GLASER:**  WHAT DO WE DO ABOUT THE E-MAILS, YOUR

20   HONOR?   YOU CAN'T RECREATE THOSE IN TWO OR THREE MONTHS.        03:07

21   **THE COURT:**  YOU CAN'T RECREATE THOSE E-MAILS, BUT I

22   GUESS AT THE END OF THE DAY, I FIND THE NOVEMBER OF 2003 DATE

23   AS A REASONABLE DATE FOR THEM TO TAKE STEPS TO PRESERVE.   AND I

24   HAVE MR. MOORE'S TESTIMONY THAT THAT'S EXACTLY WHAT HE DID.

25   WOULD IT HAVE BEEN BETTER IF HE WOULD HAVE PREPARED            03:07

115

1   AN E-MAIL FOR GENERAL CIRCULATION TO ALL THE EMPLOYEES?  WOULD

2   IT HAVE BEEN BETTER IF HE WOULD HAVE DONE SOMETHING ELSE?

3        YES, PERHAPS.  BUT I HAVE NO REASON NOT TO BELIEVE

4   HIS TESTIMONY THAT THEY DID MAKE A GOOD FAITH EFFORT TO

5   IDENTIFY THOSE EMPLOYEES AND --                              03:08

6        **MS. GLASER:**  THEN, YOUR HONOR, WHY DON'T WE HAVE ANY

7   BRAUR INVESTIGATION E-MAILS?  WHY DON'T WE HAVE ANY MEXICO

8   E-MAILS?  WE DON'T HAVE ANY OF THESE DOCUMENTS.  THIS IS NOT --

9   WE'RE NOT MAKING THIS UP.  WE DON'T HAVE THESE E-MAILS, AND WE

10  WILL NEVER HAVE THESE E-MAILS.                               03:08

11       **THE COURT:**  I DON'T KNOW WHY YOU DON'T HAVE THAT.  I

12  CAN'T OFFER THAT EXPLANATION.  I DON'T KNOW IF THOSE E-MAILS

13  EXISTED TO BEGIN WITH.

14       **MS. GLASER:**  YOUR HONOR, I GUESS WE CAN HAVE A

15  REPRESENTATION UNDER PENALTY OF PERJURY, JUST LIKE, AS I THINK   03:08

16  YOUR HONOR -- I WOULD ASK YOU, AT LEAST AT THE VERY MINIMUM, WE

17  OUGHT TO GET SOMETHING UNDER PENALTY OF PERJURY ABOUT WHAT

18  THEY'VE DONE TO PRESERVE EVIDENCE PRIOR TO THEM HAVING A BACKUP

19  SYSTEM FOR THEIR E-MAILS IN APRIL OF 2005.

20       YOUR HONOR, I THINK WE'RE AT LEAST ENTITLED TO THAT,       03:08

21  AND I THINK YOUR HONOR IS ENTITLED TO THAT.  THERE HAS TO BE

22  SOME SANCTITY IN THE SYSTEM.

23       **THE COURT:**  MR. QUINN, I TEND TO AGREE; ALTHOUGH I

24  THINK IT'S GOING TO BE A MUTUAL REQUIREMENT.

25       **MR. QUINN:**  THE MEXICAN -- THE E-MAILS RELATING TO      03:09

JULY 24, 2006            ED CV 04-09049

**EXHIBIT** _6_ **PAGE** 141

116

1  MGA'S MEXICAN EMPLOYEES -- AND BY THE WAY, THOSE WOULD BE THE

2  EMPLOYEES THAT THE MEXICAN COURT, JUST WITHIN THE LAST FEW

3  DAYS, HAS ORDERED TO BE ARRESTED.

4          MS. GLASER:  THIS IS MISREPRESENTATION.

5          THE COURT:  MR. QUINN, THAT WAS NOT NECESSARY.          03:09

6  PLEASE.  WE DON'T NEED THAT.

7          MR. QUINN:  ALL RIGHT.

8          EXHIBIT C TO THE COMPLAINT, THE ATTACHED E-MAILS

9  RELATING TO THOSE MGA MEXICAN EMPLOYEES' ACTIVITIES -- I DON'T

10 KNOW -- IT'S VERY HARD FOR US TO SIT HERE AND LISTEN -- WE      03:09

11 FILED A SUPPLEMENTAL DECLARATION.  ORDER AFTER ORDER AFTER

12 ORDER HAS BEEN ENTERED AGAINST MGA, COMPELLING DISCOVERY.

13 JUDGE INFANTE FOUND THAT THEY DELIBERATELY, WILLFULLY,

14 FLAGRANTLY VIOLATED HIS ORDER IN REFUSING TO PRODUCE A WITNESS

15 TO TESTIFY ON DOCUMENT PRESERVATION, AND WE HAVE TO SIT HERE    03:09

16 AND LISTEN TO THIS.  THIS IS NOW, AT THIS POINT, A WITCH-HUNT.

17 THEY MADE A MOTION FOR TERMINATING SANCTIONS.  THEY HAVE

18 ABSOLUTELY NO BASIS FOR THAT.

19          YOUR HONOR, IN MY VIEW, THIS MOTION SHOULD NEVER HAVE

20 BEEN BROUGHT.  THE COURT SAID, "WHY IS THIS BEFORE ME?"  WE     03:10

21 TOLD THEM, "YOU WANT THE TAPES, YOU CAN HAVE THE TAPES."  WE

22 TOLD THEM.

23          THE COURT:  AND YOU ARE PREPARED TO PROVIDE TO

24 COUNSEL THE CRITERIA THAT YOU'RE USING TO DETERMINE WHICH

25 REQUESTS GO TO THIS OUTSIDE VENDOR WHO'S ABLE TO --            03:10

JULY 24, 2006                    ED CV 04-09049

EXHIBIT ____6____ PAGE _142_

117

1      **MR. QUINN:** BY THE WAY, THEY WON'T GIVE US ANY OF

2  THAT INFORMATION.

3      **MR. ZELLER:** I MEAN, WE'RE CERTAINLY HAPPY TO TALK

4  WITH THEM ABOUT THAT, YOUR HONOR.  I THINK IT DOES HAVE TO BE A

5  TWO-WAY STREET IN TERMS OF WHAT THE PARTIES HAVE, IN DEPOSITION      03:10

6  SO FAR -- AND IT HAS BEEN ON BOTH SIDES -- HAVE SAID THAT THE

7  PARTICULAR SEARCH CRITERIA, THE THINGS THAT PEOPLE ARE TOLD,

8  THOSE ARE ATTORNEY-CLIENT COMMUNICATIONS AND, THEREFORE,

9  PRIVILEGED, OR IN SOME INSTANCES, WORK PRODUCT.  SO THOSE

10 ISSUES NEED TO BE DISCUSSED BY THE PARTIES AND POTENTIALLY           03:11

11 RESOLVED.

12      BUT, YOU KNOW, I DON'T THINK IT'S FAIR THAT WE WOULD

13 HAVE TO SAY, 'HERE, WE'RE GOING TO GIVE THEM ALL OF THE

14 CRITERIA,' WITHOUT GETTING THAT IN RETURN.

15      **THE COURT:** I AGREE.  IT'S GOING TO BE MUTUAL.           03:11

16      **MR. QUINN:** ESPECIALLY SINCE WE'VE OFFERED, YOUR

17 HONOR, TO GIVE THEM THE TAPES.  THEY CAN RUN ANY CRITERIA THEY

18 WANT.

19      **MS. GLASER:** TWO THINGS:  IT IS ENORMOUSLY EXPENSIVE

20 TO GO THROUGH THE ZEUS TAPES, AND THAT'S AN EXPENSE THAT            03:11

21 CLEARLY MATTEL SHOULD HAVE TO BEAR.

22      BUT THE OTHER THING:  WE HAVEN'T SENT A DIRECTIVE

23 AROUND SAYING, 'PRESERVE THIS BUT NOT THIS.'  WE'VE ASKED

24 EVERYBODY TO PRESERVE EVERYTHING.  WE'RE NOT HIDING THAT.

25 THERE'S NO CRITERIA THAT'S OUT THERE.  WE'VE ASKED THEM TO          03:11

1    PRESERVE EVERYTHING.

2         THE COURT:  WHEN THE COURT SPEAKS ABOUT CRITERIA,

3    THERE IS A LOT ON THOSE ZEUS TAPES.  MATTEL DOES A LOT MORE

4    THAN JUST MATTERS RELATED TO BRATZ, OR WHATEVER.  THEY'VE GOT

5    BARBIE; THEY'VE GOT ALL KINDS OF DIFFERENT THINGS GOING THAT          03:11

6    ARE PRESUMABLY ON THESE ZEUS TAPES; SO THE CRITERIA THAT I'M

7    TALKING ABOUT IS WHAT CRITERIA ARE USED TO --

8         MS. GLASER:  THAT'S IN CONNECTION WITH ZEUS.

9         THE COURT:  RIGHT.

10        MS. GLASER:  WITH RESPECT TO E-MAILS --                          03:12

11        THE COURT:  LET'S NOT MIX THESE THINGS.

12        MS. GLASER:  -- WE'VE ASKED PEOPLE TO PRESERVE

13   EVERYTHING.  THEY HAVE NOT ASKED THEM TO PRESERVE EVERYTHING.

14   THEY HAVE CRITERIA THAT WE ARE JUST LEARNING ABOUT TODAY.

15        THE COURT:  AND I DON'T DISAGREE WITH THE PRACTICE OF            03:12

16   NOT PRESERVING EVERY E-MAIL.  I DON'T THINK MATTEL HAS TO

17   PRESERVE EVERY E-MAIL THAT'S GENERATED BY MATTEL.

18        MS. GLASER:  BUT, YOUR HONOR, THEY SHOULD HAVE TO,

19   AND WE ASKED THEM -- YOU KNOW WHAT?  DON'T PRESERVE EVERY

20   E-MAIL.  HOW ABOUT GIVING US THE LIST OF KEY PERSONNEL THAT ARE      03:12

21   WITNESSES THAT YOU'VE IDENTIFIED IN THIS CASE AS WITNESSES AND

22   PRESERVE THEIR E-MAIL FROM THE BEGINNING OF TIME?

23        THEY HAVEN'T EVEN DONE THAT.

24        AND WHEN WE PUSHED THEM ON THAT -- BECAUSE THE

25   INITIAL RESPONSE WAS, 'IT'S TOO EXPENSIVE, AND WE'LL CRASH THE       03:12

1   SYSTEM IF WE TRY TO PICK OUT CERTAIN PEOPLE.'

2          AND THEN WE LEARN FROM THEIR 30(B)(6) WITNESS, 'YES,

3   YOU CAN DO THAT, AND IT WON'T HARM THE SYSTEM.  IT'S TIME

4   CONSUMING, BUT IT WON'T HARM THE SYSTEM.'

5          WE'RE NOT BEING TOLD THE SAME THING BY THEIR

6   PURPORTED REPRESENTED, PUSH-FORWARD, 30(B)(6) WITNESSES AND THE

7   LAWYERS.

8          THAT'S GOT TO STOP.

9          **THE COURT:**  WHAT I WANT FROM BOTH PARTIES IS TWO

10  SINGULAR DECLARATIONS, UNDER PENALTY OF PERJURY, SETTING FORTH

11  EXACTLY THE PRESERVATION POLICIES.  I WANT IT FROM MGA.  I WANT

12  IT FROM MATTEL.  AND I DON'T WANT TO JUST HEAR ABOUT 35

13  WITNESSES.  I WANT TO KNOW WHO THOSE 35 PEOPLE ARE.  I DON'T

14  WANT TO HEAR JUST ABOUT 'WE WERE ASKED TO SAVE EVERYTHING,'

15  BECAUSE OBVIOUSLY, MGA IS NOT SAVING EVERY E-MAIL IN THEIR

16  ENTIRE COMPANY.  YOU'VE GOT CRITERIA AS WELL.

17         **MS. GLASER:**  (INAUDIBLE.)

18         **THE COURT:**  YOU'RE SAVING EVERY E-MAIL?

19         FAIR ENOUGH.  IF THAT'S WHAT YOU'RE DOING, THAT'S

20  WHAT YOU'RE DOING.

21         **MR. QUINN:**  SO ARE WE, YOUR HONOR.  ALL THE BACKUP

22  TAPES --

23         **THE COURT:**  NOW EVERYTHING IS BEING BACKED UP?

24         **MR. QUINN:**  EVERY SINGLE ONE.

25         SO IF WE'RE GOING TO IDENTIFY THE PEOPLE WE SPOKE TO,

03:12

03:13

03:13

03:13

03:13

EXHIBIT ___6___ PAGE _145_

1   I ASSUME MGA IS ALSO GOING TO IDENTIFY THE PEOPLE THEY SPOKE

2   TO.

3           THE COURT:   I'M ONLY ASKING FOR YOU TO IDENTIFY TO

4   THE EXTENT THAT YOU LIMITED THE RETENTION TO THOSE INDIVIDUALS.

5   IF THEY'RE DOING IT FOR EVERY EMPLOYEE, THEN THEY DON'T HAVE TO      03:14

6   DO THAT.   IF YOU'RE DOING IT FOR EVERY EMPLOYEE AT MATTEL, THEN

7   YOU DON'T HAVE TO DO IT.

8           IF YOU ARE LIMITING OR SETTING CRITERIA, THEN I WANT

9   TO KNOW WHO THOSE ARE, JUST FOR FUTURE REFERENCE.   I WANT THIS

10  FOR NO OTHER REASON THAN FOR ANY FUTURE DISPUTES THAT COME UP      03:14

11  SO THAT I'VE GOT A CLEAR, SINGULAR DOCUMENT THAT I CAN USE AS

12  REFERENCE TO LOCK BOTH SIDES IN.

13          MS. GLASER:   THANK YOU, YOUR HONOR.

14          THE COURT:   DO YOU UNDERSTAND WHAT I'M ASKING FOR,

15  MR. QUINN?                                                         03:14

16          MR. QUINN:   WHAT I'M HEARING, YOUR HONOR, IS -- THE

17  COURT'S REALLY GOING BACK -- IN TERMS OF IDENTIFYING PEOPLE WHO

18  WERE SPOKEN TO AND GIVEN THIS DIRECTION, THE COURT IS REALLY

19  GOING BACK TO THE NOVEMBER 2003 TIME FRAME AND WANTS TO KNOW,

20  WHO ARE THOSE INDIVIDUALS.                                         03:14

21          THE COURT:   BASICALLY, IT SOUNDS LIKE, FROM MATTEL'S

22  PERSPECTIVE, THERE WERE TWO CRITICAL PERIODS:   NOVEMBER OF

23  2003, WHEN 35 OR SO INDIVIDUALS WERE IDENTIFIED AND WERE GIVEN

24  CERTAIN INSTRUCTIONS -- I WANT TO KNOW WHO THOSE 35 INDIVIDUALS

25  WERE, APPROXIMATELY, AND WHAT THOSE INSTRUCTIONS WERE; AND THEN    03:14

1  IN APRIL OF 2005. THAT'S APPARENTLY WHEN YOU HAD THE MORE

2  GENERAL DIRECTIVE THAT WENT OUT. I WANT TO KNOW THE PARAMETERS

3  AND SCOPE OF THAT DIRECTIVE.

4          MR. QUINN:  RIGHT.

5          THE COURT:  SIMILARLY, FROM MGA, I WANT TO KNOW WHAT          03:1

6  MGA HAS DONE.

7          MS. GLASER:  AND, YOUR HONOR, COULD WE INCLUDE IN THE

8  CRITERIA WHEN THEY WERE TOLD WHAT TO PRESERVE AND WHAT THEY

9  WERE TOLD TO PRESERVE?

10         THE COURT:  I'M USING NOVEMBER OF 2003 -- I SUSPECT          03:1

11 THE DECLARATION WILL GIVE ME A MORE SPECIFIC TIME FRAME.

12         MR. QUINN:  AND I ASSUME THAT WOULD BE RECIPROCAL AS

13 WELL.

14         MS. GLASER:  I UNDERSTAND.

15         THE COURT:  OKAY.  VERY WELL.

16         MS. GLASER:  WHEN WOULD YOU LIKE THOSE?

17         THE COURT:  LET'S SAY A WEEK.

18         IS THAT POSSIBLE?

19         MS. GLASER:  HOW ABOUT TWO WEEKS, YOUR HONOR?

20         THE COURT:  TWO WEEKS?          03:1

21         MR. QUINN:  TWO WEEKS IS FINE.

22         THE COURT:  TWO WEEKS FROM TODAY.  TODAY IS THE 27TH.

23 LET'S HAVE THIS IN BY THE 10TH OF SEPTEMBER.

24         MS. GLASER:  YOUR HONOR, CAN WE ASK ONE MORE

25 QUESTION?          03:1

122

| 1 | **THE COURT:** YES. |

1      **THE COURT:** YES.

2      **MS. GLASER:** IS IT POSSIBLE, YOUR HONOR -- AND I SAY

3  THIS AS RESPECTFULLY AS I CAN -- TO THE EXTENT YOU DENY THIS

4  MOTION, WOULD YOU BE WILLING TO CERTIFY FOR APPEAL?  THAT'S HOW

5  STRONGLY WE FEEL ABOUT IT.  AND I UNDERSTAND WHATEVER YOU MAY          03:16

6  DECIDE -- AT LEAST I BELIEVE YOU'RE TAKING IT UNDER SUBMISSION.

7      BUT WOULD YOU BE WILLING TO CERTIFY FOR APPEAL?

8      **THE COURT:** WELL, COUNSEL, I DON'T THINK I'M WILLING

9  TO TAKE THIS UNDER SUBMISSION.  I REALLY, AT THE END OF THIS

10  HEARING, I DON'T -- I DON'T HAVE A BASIS BEFORE ME, ASSUMING          03:16

11  THAT THESE REPRESENTATIONS ARE WHAT THEY ARE AT THIS POINT, TO

12  TERMINATE THIS CASE.

13      **MS. GLASER:** THEN MAY I ASK, YOUR HONOR,

14  RESPECTFULLY, IF YOU WOULD MIND -- WOULD YOU PLEASE CERTIFY

15  THAT FOR APPEAL SO THAT WE COULD TAKE AN IMMEDIATE APPEAL FROM          03:16

16  IT?

17      **THE COURT:** WE'RE NOT GOING TO DELAY THIS CASE LIKE

18  THAT, COUNSEL.

19      **MS. GLASER:** I'M NOT ASKING YOU TO DELAY IT.  I'M NOT

20  ASKING FOR A STAY.  I DIDN'T ASK THAT.  I WOULD LIKE TO BE ABLE          03:16

21  TO APPEAL THIS PARTICULAR ORDER.  I WOULDN'T ASK FOR A STAY.

22      **MR. QUINN:** THERE'S A PROCEDURE TO BRING A MOTION.

23      **THE COURT:** GO AHEAD.  YOU MAY MAKE YOUR APPLICATION,

24  COUNSEL.  I'M NOT GOING TO TAKE THAT ORALLY.

25      THE COURT HAS --          03:16

EXHIBIT __6__ PAGE 148

123

1      **MS. GLASER:** I WANT TO BE CLEAR WITH YOUR HONOR.

2  WE'RE NOT INTERESTED IN DELAY AT ALL, BUT WE DO THINK THIS IS A

3  BIGGER ISSUE THAN, RESPECTFULLY, THE COURT DOES; AND I

4  APPRECIATE THAT.

5      **THE COURT:** AND IT'S NOT THAT I DON'T TAKE THIS ISSUE          03:17

6  SERIOUSLY, COUNSEL.  IT'S JUST THAT AT THE END OF THE DAY, I

7  JUST DON'T THINK THERE'S THE EVIDENCE BEFORE ME TO MAKE THE

8  FINDING THAT YOU WANT.

9      YOU'RE ASKING ME TO TERMINATE A CASE, A SUBSTANTIAL

10  CASE, BASED ON FAILURE TO PRESERVE.  THAT'S WHAT YOU TOLD ME,    03:17

11  DURING THE COURSE OF THIS HEARING, WAS THE ISSUE.

12      **MS. GLASER:** YES, YOUR HONOR.

13      JUST SO I'M CLEAR, COULD YOUR HONOR AT LEAST WAIT TO

14  RULE UNTIL YOU GET THESE SUPPLEMENTAL DECLARATIONS?

15      **THE COURT:** FAIR ENOUGH.                                    03:17

16      **MR. QUINN:** IN VIEW OF THE PROSPECT THAT COUNSEL

17  INDICATES THEY MAY WANT TO TAKE THIS TO ANOTHER LEVEL, I'D ASK

18  THAT THE COURT RULE ON THE EVIDENTIARY OBJECTIONS THAT WE MADE

19  JUST FOR THE RECORD.

20      **MS. GLASER:** IN THAT REGARD, THERE WERE -- I GUESS          03:17

21  YOU'D CALL THEM DECLARATIONS, BUT, THE SURREBUTTAL.  I'M

22  ASSUMING EITHER YOU'LL GIVE US AN OPPORTUNITY TO RESPOND TO

23  THOSE OR YOU WILL DISCOUNT THEM AND NOT CONSIDER THEM FOR

24  PURPOSES OF YOUR DECISION.

25      **THE COURT:** LET ME TALK ABOUT SOMETHING ELSE FOR A          03:18

JULY 24, 2006          ED CV 04-09049 EXHIBIT ___6___ PAGE 149

124

1  MOMENT.

2       THERE HAS BEEN A VOLUMINOUS AMOUNT OF DOCUMENTS FILED

3  UNDER SEAL, A HUGE AMOUNT OF DOCUMENTS FILED UNDER SEAL.  AND

4  THE COURT HAS READILY ACCEPTED THE REPRESENTATIONS OF COUNSEL

5  THAT THE DOCUMENTS INCLUDE INFORMATION THAT'S GOVERNED BY THE

6  PROTECTIVE ORDER.

7       THERE WILL COME A DAY, PRIOR TO TRIAL, IN WHICH THE

8  COURT PLANS TO REVISIT THOSE ORDERS AND WILL IMPOSE UPON

9  COUNSEL AN OBLIGATION TO GO THROUGH THOSE DOCUMENTS AND

10  DETERMINE WHAT TRULY NEEDS TO REMAIN UNDER SEAL DURING THE

11  COURSE OF THE TRIAL AND WHAT DOESN'T.

12       I ONLY MENTION THAT NOW, MANY MONTHS BEFORE THE

13  TRIAL, SO YOU CAN START THINKING ABOUT HOW YOU WANT TO APPROACH

14  THAT ISSUE.

15       BUT RIGHT NOW, WE HAVE HAD LITERALLY FEET AND FEET

16  AND FEET OF PAPER PLACED UNDER SEAL; AND AT THE END OF THE DAY,

17  WE'RE NOT GOING TO HAVE A DOCKET DOWNSTAIRS THAT IS ALL SEALED

18  UP IN THAT MATTER.  THERE'S A VERY HEAVY PRESUMPTION TOWARDS AN

19  OPEN AND PUBLIC TRIAL, AND ONLY THOSE PARTICULAR PORTIONS OF

20  DOCUMENTS THAT ARE CONFIDENTIAL OR THAT ARE TRADE SECRETS ARE

21  GOING TO REMAIN UNDER SEAL AS WE PROCEED THROUGH THIS.  SO BE

22  THINKING ABOUT THAT NOW.

23       I WILL CONTINUE TO GIVE COUNSEL A GREAT DEGREE OF

24  LATITUDE AS WE GO THROUGH THIS DISCOVERY PROCESS, BUT AT THE

25  END OF THE DAY, I SUSPECT THERE'S GOING TO BE VERY LITTLE WHICH

JULY 24, 2006                    ED CV 04-0904 EXHIBIT ___6___ PAGE _150_

1   IS ACTUALLY GOING TO BE UNDER SEAL.

2        I'LL ISSUE A MINUTE ORDER DIRECTING FURTHER

3   PROCEEDINGS IN THIS MATTER, BUT BE WORKING ON THIS DECLARATION.

4        **MS. GLASER:**  THANK YOU, YOUR HONOR.

5        **MR. QUINN:**  THANK YOU, YOUR HONOR.                    03:19

6        **THE COURT:**  GOOD DAY, COUNSEL.

7

8

9

10

11                        CERTIFICATE

12

13   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
14   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
15   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

16

17   _____        9-5-07
                                            _____
18   THERESA A. LANZA, CSR, RPR                 DATE
     FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25

**EXHIBIT 7**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

November 26, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Raoul Kennedy, Esq.
Skadden Arps Slate Meagher & Flom, LLP
Four Embarcadero Center Suite 3800
San Francisco, California 94111

Re:   <u>Mattel v. Bryant</u>

Dear Raoul:

I write regarding the parties' November 21, 2007 meeting of counsel, at which we discussed pending discovery disputes, and to memorialize certain agreements reached at that time.

**Motions Currently Set for Hearing on December 14, 2007**

Below is Mattel's understanding of the status of the discovery motions noticed for hearing before Judge Infante on December 14, 2007.

The parties have not been able to come to an agreement regarding the issues raised by Mattel's Motion for Reconsideration of the September 12, 2007 Order Granting In Part and Denying In Part MGA's Motion to Compel Production of Documents.  Accordingly, this motion must go forward.  MGA asked how Mattel could comply with request number 3 without searching personnel files, which request number 2 also requires according to MGA.  Request number 3 does not require to search all personnel files; information related to enforcement is available in locations other than the personnel files.

Regarding MGA, MGA Hong Kong and Isaac Larian's Motion for Protective Order Limiting Requests for Admissions (regarding Mattel's sixth set to MGA, first set to MGA Hong Kong, and

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT __7__ PAGE __152__

first set to Isaac Larian), you represented that MGA, MGA Hong Kong and Isaac Larian are withdrawing previous counsel's position and that MGA, MGA Hong Kong and Isaac Larian will provide responses to Mattel's Requests for Admissions on or before December 14, 2007.

Regarding MGA and Carter Bryant's Joint Motion to Compel Regarding Mattel's Bandying of 30(b)(6) Witnesses, MGA represented that it is agreeable to narrowing the deposition topics that are at issue in this motion. Because counsel for Bryant did not participate in the meeting of counsel, please confirm that Bryant is also amendable to this narrowing. With regard to Topic Nos. 2-7, MGA suggested narrowing the topics to seek information to the extent that Mattel is using that information as a basis for its claims or defenses in this matter. As we discussed during the meet and confer, the proposed limitation seems reasonable. We look forward to discussing the scope of each of the topics with you and counsel for Bryant at our meeting of counsel on Wednesday.

Regarding Mattel's Motion to Compel Production of Documents Withheld as Privileged, MGA represented that it has produced the documents at issue in the motion. MGA further represented that it redacted two of those documents for privilege and listed them on a privilege log. Mattel will review the produced documents and the privilege log, and inform MGA if anything is missing or improperly redacted.

Regarding Mattel's Motion to Enforce the Court's Order of May 15, 2007, To Compel MGA to Produce Compelled Documents (including fee and/or indemnity agreements between MGA and Bryant), Order That Any Privilege Objections Have Been Waived, and Impose Sanctions, MGA represented that it will produce by Monday, November 26, 2007 (and in no event later than December 29, 2007) all fee and/or indemnity agreements, including any negotiations concerning the agreements, between MGA and Bryant, as well as a privilege log. MGA also represented that in the event that Mattel does not have a chance to review these documents by December 14, 2007, MGA will agree to continue the hearing date on this motion, if necessary, to the discovery hearing on January 4, 2007. As noted at the parties November 16, 2007 meet and confer, MGA's failure to produce a log months ago constitutes a waiver of any claims of privilege. Once Mattel has had an opportunity to review the documents and the privilege log, Mattel will inform MGA whether it will keep this aspect of Mattel's Motion to Enforce the Court's Order of May 15, 2007 before the Discovery Master.

Regarding Mattel's Motion to Compel the Deposition of Ron Brawer, Mattel has addressed this motion under separate cover.

Regarding Mattel's Motion to Compel Production of Witnesses by MGA Re: Topic Nos. 15 and 16 of Third 30(b)(6) Notice, MGA represented that it will produce a witness on Topic Nos. 15 and 16. However, MGA did not provide dates of availability as it promised to do so during the parties' November 16, 2007 meet and confer. This motion will remain on calendar until MGA provides a date for a designee to address these topics.

Counsel for Mattel, Scott Kidman, and counsel for MGA will confer separately sometime this week regarding Mattel's Motion to Compel Isaac Larian to Produce Documents in Response to Mattel's First Set of Requests for Production.

EXHIBIT __7__ PAGE __153__

**Depositions as to Which MGA Has Been Ordered to Produce Witnesses**

MGA represented that it is in the process of collecting financial data from which it will be able to compute revenues, costs and profits on a SKU basis and that this data will provide a starting point for both Mattel's and MGA's respective experts.  MGA represented that it will try to produce those documents on December 18, 2007 and then offered to produce Lisa Tonnu on either January 9, 10 or 11, 2008 to address Topic Nos. 21, 23, 25, 31 and 40 in Mattel's Second Notice and Topic Nos. 11, 12, 15 and 16 in Mattel's Third Notice.

MGA agreed to produce Samir Khare on Topic No. 33 of Mattel's Second Notice of Deposition of MGA, for additional time to "clean-up" and to finish his deposition.  MGA also represented that it is designating Mr. Khare on Topic No. 24.  MGA also represented that it will designate Mr. Khare on Topic Nos. 4-7 and 10 of Mattel's Third Notice.  However, MGA did not offer any dates when Mr. Khare would be available.  Please provide dates for Mr. Khare on Wednesday.

MGA represented that it will designate Isaac Larian's testimony  on Topic No. 8 of Mattel's Third Notice of Deposition of MGA, and will identify those designations, by page and line number, in writing.

MGA represented that it will not designate any witnesses on Topic Nos. 14, 16, 18 and 20 of Mattel's Second Notice, until the conclusion of the testimony of third parties' Veronica Marlow, Elise Cloonan, and Margaret Hatch Leahy, and potentially not at all because their testimony may render moot any testimony from MGA on these topics.  Mattel disagreed.  These are topics on which MGA has been ordered to produce a witness.  Mattel is entitled to a competent witnesses whose testimony will bind MGA with respect to these topics.  Further, MGA's possesses information responsive to these topics and the testimony of MGA's designee on these topics should not change whether MGA testifies before or after these third parties.  Mattel expects prompt dates for MGA designees to testify on these topics, as Judge Infante ordered.

MGA did not agree to provide a witness to testify regarding Topic No. 39 (as to non-electronic documents) of Mattel's Second Notice.  With respect to the deficiencies in the testimony of MGA designees Lockhart and Harris, Mattel identified the deficiencies in Lockart's testimony— namely the lack of information regarding practices and procedures before Lockhart joined MGA, and the lack of knowledge of collection of electronic evidence responsive to Mattel's document requests.  The deficiencies in Harris' testimony are outlined in a September 16, 2007 letter and again in the October 29, 2007 letter to Mr. Nolan.

In regards to Topic No. 41 in Mattel's Second Notice, MGA represented that it will not produce a witness to testify regarding Mr. Speckin or the tests that he conducted because they are work product.  Judge Infante will need to resolve that issue.

**Bryant's Notice of Deposition to Mattel**

Regarding Bryant's Notice of Deposition to Mattel, MGA agreed to limit the scope of Topic No. 10 to My Scene dolls that MGA has identified by name in its complaint and discovery responses

3

EXHIBIT __7__ PAGE _154_

consistent with Judge Infante's prior rulings. Subject to that limitation, Mattel will identify a witness on Topic No. 10 by this week.

As discussed, Mattel is not willing to produce a witness to testify regarding Topic No. 14 as it stands. The information sought by this Topic is irrelevant because Mattel does not anticipate seeking lost profits based on harm caused by Carter Bryant's conduct. Based on that representation, Mattel invited MGA to provide examples of how information in the possession of Mattel could be relevant in that circumstances. Mattel looks forward to MGA's response.

MGA also agreed to limit the scope of Topic Nos. 15 and 16 to Carter Bryant's wrongful conduct to the extent Mattel asserts it as a basis for any of its claims or defenses in this matter. Mattel proposed the same limitations with respect to Topic Nos. 17, 18, 19 and 20. As noted at the meet and confer, Judge Larson has made a determination as to what the relevant date is as to when Mattel first became aware of Bryant's wrongful conduct. I will discuss this proposed limitation with my client and get back to MGA by Wednesday.

Mattel will confirm whether it has designated a witness on Topic No. 21, 22 and 23 by Wednesday.

As it stands, Mattel will not produce a witness on Topic Nos. 25 and 52. Mattel's actions with respect to third parties is irrelevant to the interpretation or enforcement of Bryant's contracts with Mattel, which are the only contracts that are at issue in this case. An alleged waiver of the contractual rights of third parties is not relevant to whether Mattel waived its rights against a party.

Further, as discussed, to the extent Topic No. 26 is a proper request, its subject matter is privileged.

As for Topic Nos. 54, 55 and 56, Mattel has designated Sandy Yonemoto. Arnold Artavia was designated on Topic Nos. 53 and 54.

I will reiterate to MGA, under separate cover, the specific topics on which Ivy Ross has been designated.

## MGA's Production of Requested and Promised Financial Documents

Mattel will address this topic under separate cover. But, the date proposed for production is simply too late in light of approaching expert discovery deadlines, particularly in light of prior counsel's commitment to produce responsive documents by September 2007. MGA's delay in its production of financial documents is impairing Mattel's ability to prepare expert reports.

## Miscellaneous

MGA represented that it will get back to Mattel on Michael Zeller's proposal regarding the Zeus backup dates. Mattel agreed to inquire whether it has any indexes of the Zeus backup tapes. Please be advised that MGA should be dealing with Timothy Alger and Christopher Tayback on with respect to Zeus.

4

EXHIBIT __7__ PAGE __155__

Mattel provided MGA an extension until Monday, November 26, 2007 for it to serve its objections to the subpoenas served on Wachovia, Ernst & Young and Deloitte & Touche. MGA represented that it has not been able to contact these third parties to discuss a proposed return date. The parties will discuss these subpoenas further on Wednesday.

MGA represented that its privilege log covers the October 17 and 19 productions, but that it is still working with the vendor to ascertain which other productions, if any, to which the privilege log applied. MGA also stated that there are 800 additional records that still need to be logged.

MGA agreed that it will try to provide document preservation declarations on behalf of the MGA defendants and Isaac Larian on or before November 30, 2007, and in no event later than December 7, 2007.

MGA was not able to provide a range of dates when it wished to depose either Ms. Fontanella or Mr. Bousquette.

MGA represented that it is continuing to search for copies of certain e-mails in their native format, including all metadata and the full e-mail header information.

MGA represented that it is still trying to ascertain whether has produced all documents responsive to the Discovery Master's Order.

MGA represented that MGA is continuing to collect tangible items located in Hong Kong and that you will let us know by Wednesday when and how best to make them available for inspection. MGA will follow up by Wednesday regarding the status of tangible items MGA has been ordered to make available for inspection.

If you have any questions regarding the foregoing, please do not hesitate to call. We look forward to further meet and confer on some of these topics, as noted above, on Wednesday, November 28, 2007 at 2:00 p.m.

Best regards,

Jon Corey

Jon Corey


cc:    Amy Park, Esq.
       Tim Miller, Esq.
       Marcus Mumford, Esq.
       Christa Anderson, Esq.
       John Trinidad, Esq.


**EXHIBIT 7 PAGE 156**