# EXHIBIT 7

## Scott Kidman

**From:** Scott Kidman
**Sent:** Wednesday, September 26, 2007 7:47 PM
**To:** Charron, William
**Cc:** Scott Kidman
**Subject:** Mattel v. MGA

Bill,

During our meet and confer discussions regarding regarding MGA's responses to Mattel's Second Set of Requests for Production of Documents and Things, you stated that MGA would produce by September 17, 2007 a report that would contain information responsive to a number of the requests. We do not appear to have received this report. If MGA has produced it, please provide me with the Bates numbers. If MGA has not produced it, this shall serve as Mattel's request for a meet and confer regarding the failure to do so.

I look forward to your response.


Scott B. Kidman
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3162
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  scottkidman@quinnemanuel.com
Web:  www.quinnemanuel.com


EXHIBIT  7  PAGE 137

# EXHIBIT 8

**Scott Kidman**

| | |
|---|---|
| **From:** | Charron, William [WCharron@OMM.com] |
| **Sent:** | Thursday, October 11, 2007 5:22 PM |
| **To:** | Scott Kidman |
| **Cc:** | Charron, William |
| **Subject:** | Inquiry re Financial Report |

Scott,

I just tried to reach you in your office.  I am available all day tomorrow to discuss your inquiry about MGA's financial report, and will be here intermittently this evening, if you want to try and reach me know.

Best regards,

Bill

BILL CHARRON
O'MELVENY & MYERS LLP
1999 AVENUE OF THE STARS, 7TH FLOOR
CENTURY CITY, CA 90067-6035
DIRECT DIAL (310) 246-8462
FAX (310) 246-6779
WCHARRON@OMM.COM

This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

EXHIBIT _8_ PAGE _138_

11/25/2007

# EXHIBIT 9



**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

October 29, 2007

**BY HAND**

Thomas J. Nolan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Re:     Mattel, Inc. adv. MGA Entertainment, et al.

Dear Tom:

I am writing in connection with various discovery matters.

Further to our earlier communications, we set forth in this letter a more comprehensive list of outstanding discovery which the Court has ordered MGA to produce and/or which MGA previously agreed it currently owes Mattel. We are enclosing relevant background materials as they relate to these issues in an effort to facilitate their resolution. It is our hope here that the parties can avoid or at least minimize motion practice on these matters to the extent it is possible to do so. We also set forth in this letter a list of prior meet and confer requests that Mattel made but that MGA did not respond to as required by the Discovery Master Stipulation. We hope to address these matters as soon as possible. Last, we include herein additional matters relating to a key Rule 30(b)(6) Topic that require MGA's attention.

EXHIBIT __9__ PAGE _139_

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

## I.    Outstanding Discovery Obligations

### A.    Depositions

To date, MGA has not provided dates for a number of depositions, including depositions Judge Infante has ordered. In his May 16, 2007 Order, Judge Infante overruled all MGA objections to the Topics in Mattel's Second Rule 30(b)(6) Notice and ordered MGA to produce witnesses on all Topics (other than Topic Nos. 25 and 26) on or before June 30, 2007. Judge Larson subsequently rejected, in their entirety, MGA's challenges to that Order. Separately, Judge Infante ordered MGA to produce witnesses on Topics 25 and 26 no later than September 27, 2007. MGA, however, has not produced witnesses on many of these topics.

Topic Nos. 16, 18, 20 and 32 in Mattel's Second Rule 30(b)(6) Notice to MGA. MGA has failed to provide any dates when MGA witnesses will be available to address these topics. MGA originally purported to designate prior written testimony to address these topics, but its designations were woefully inadequate. After Mattel requested a meet and confer, MGA agreed, on August 15, 2007, to provide designees and dates for these topics. Thereafter, on or about October 3, 2007, MGA stated that its designee on these topics would be Samir Khare. MGA stated that Mr. Khare was available for deposition in December. Mattel informed MGA that such a delay in Mr. Khare's depositions was unacceptable, because the deadline for MGA to provide a witness in compliance with the Discovery Master's Order -- June 30, 2007 -- had long since passed. MGA stated that it would check again to determine whether Mr. Khare would be produced on an earlier date. No earlier dates were ever provided, however. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit A to this letter.

Topic Nos. 21, 24, 25, 26, 31, 39 (as to non-electronic documents), 40 and 41 in Mattel's Second Rule 30(b)(6) Notice to MGA. Pursuant to Judge Infante's May 16, 2007 Order, which was upheld by Judge Larson, MGA was required to produce designees on the topics in Mattel's Second Rule 30(b)(6) Notice no later than June 30, 2007 (except as to Topics 25 and 26). Separately, MGA was required to produce witnesses on Topics 25 and 26 no later than September 27, 2007.

On July 19, 2007, MGA produced Lisa Tonnu on Topic Nos. 24, 31, 37, 39 (as to non-electronic documents), 40 and 41, but Ms. Tonnu was not sufficiently prepared regarding those topics, save Topic No. 37. After a meet and confer in advance of Mattel motion, MGA agreed to provide Ms. Tonnu to testify again with respect to those topics and additionally with respect to Topic Nos. 21, 25 and 26. MGA produced Ms. Tonnu for a second time on September 24-25, 2007. Ms. Tonnu, however, was no more prepared for any of those topics than she was the first time. Since then, Mattel has met and conferred with MGA in regards to MGA's failure to provide a competent witness to testify regarding these topics as ordered by Judge Infante and in regards to Mattel's anticipated motion for sanctions as a consequence of MGA's deliberate violations of the Discovery Master's Order. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit B to this letter.

EXHIBIT __9__ PAGE __140__

Topic Nos. 38, 39 (as to electronic documents) and 42 in Mattel's Second Rule 30(b)(6) Notice to MGA. Pursuant to Judge Infante's May 16, 2007 Order, MGA was required to produce designees on Topics Nos. 38, 39 and 42. On June 14 and 15, 2007, MGA produced Kenneth Lockhart on Topics 38, 39 (as to electronic documents) and Topic No. 42. Mr. Lockhart was not sufficiently prepared to testify on these topics. Accordingly, Mattel sent MGA a meet and confer request on September 18, 2007 regarding the deficiencies of the testimony provided by Mr. Lockhart. MGA informed Mattel that it would confirm -- by October 4, 2007 -- whether MGA will be producing Mr. Lockhart for deposition on Topic 39 (with respect to electronic documents) in response to Mattel's meet and confer letter. MGA did not address the other topics Mr. Lockhart was designated to testify about, yet failed to provide competent testimony on. MGA has not confirmed whether it will produce Mr. Lockhart on Topic 39 (with respect to electronic documents), let alone the other topics. MGA needs to provide dates for the deposition of a properly educated witness on Topic Nos. 38, 39 and 42 if it wishes to avoid a Mattel motion. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit C to this letter.

Topics Nos. Nos. 11, 13, 14, 23, 27 and 28 of Mattel's Second Rule 30(b)(6) Notice. On September 16, 2007, Mattel sent MGA a meet and confer letter regarding the failure to adequately educate Rebecca Harris, its designee on Topic Nos. 11, 13, 14, 23, 27 and 28, and the inadequate time to complete her deposition on all of the many Topics she was designated on. On October 3, 2007, MGA indicated that Ms. Harris is currently on medical leave and that MGA needs to check on her condition before advising us of her availability. To date, Mattel has not received any response regarding Ms. Harris's availability. If she is not available in the coming weeks, Mattel must produce a different designee. Otherwise, Mattel anticipates that it will bring a motion on this subject.

Topics 6-8, 11 and 12 of Mattel's Third Rule 30(b)(6) Notice. Judge Infante ordered MGA to provide dates and designees on these topics on September 25, 2007. On October 2, 2007 Mattel wrote to MGA requesting MGA to promptly identify its designees and provide dates for those designees. MGA conceded on October 3, 2007 that it needed to comply with Judge Infante's Order and identify appropriate designees for Topics 6-8, 11 and 12. On October 3, 2007, Mattel sent a further letter requesting to meet and confer regarding this topic. Despite Mattel's letters to MGA, MGA has not provided dates or designees. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit D to this letter.

Individual witnesses for whom MGA has never provided dates. Mattel has requested dates for the depositions of Shirin Salemnia, Daphne Gronich and Joe Tiongco. MGA committed to provide dates for these deponents on September 21 and 25, 2007, among other dates, but has not done so to date. MGA also committed more than a year ago, in July 2006, and then again on October 3, 2007, to produce Isaac Larian for the continuation of his deposition regarding the MGA v. Mattel case, but has not offered any dates as of yet. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit E to this letter.

EXHIBIT 9 PAGE 141

<u>Previously scheduled individual deponents</u>. MGA needs to provide new dates for the deposition of David Malacrida, who had been scheduled to give further deposition testimony on October 18, 2007 but who was not produced as a result of the "soft stay."[1]

We expect MGA to provide reasonable dates for these depositions. As you can see, MGA's obligations as to these depositions are long overdue. Accordingly, if we cannot firmly resolve these open items in the short term, we intend to seek the assistance of the Court.

### B.   <u>Documents And Tangible Things</u>

<u>Financial Information responsive to Mattel's Second Set of Requests for Production to MGA.</u>
On June 6, 2007, Mattel served its Second Set of Requests for Documents and Things to MGA Entertainment, Inc. seeking various categories of financial information relevant to damages. After a lengthy meet and confer process, MGA ultimately agreed to produce all responsive, non-privileged documents (with only certain minor modifications as reflected in MGA's supplemental responses dated September 17, 2007) by either September 17, 2007 as to most all categories or September 28, 2007 as to a few remaining categories. More specifically, among other things, MGA agreed to produce by September 17, 2007 a report that would provide information responsive to a number of the requests, including sales, revenue, cost and profit information for Bratz products by SKU. On September 26, 2007, we sent an e-mail to Bill Charron advising him that we had not appeared to have received the report and requesting, if MGA had produced the report, that it provide us with the Bates numbers or, if MGA had not produced the report, a meet and confer regarding its failure to have done so. Well after the expiration of the required five-day period within which to meet and confer (and shortly before the change in counsel), Mr. Charron finally advised us that the report had not been produced and that he could not tell us when it would be produced. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit F to this letter.

More than one month after the agreed upon deadline for producing the report, we still have no record of having received it. If MGA has produced this report, please so confirm and provide us with the Bates numbers. If MGA still has not produced the report, then please let us know when we can expect to receive it. From our perspective, and as I had mentioned during our conference call on October 14, 2007, MGA's production of financial documents needs to be a priority so that there is no further delay in our ability to prepare expert reports.

<u>Inspection of Bratz Products.</u> To resolve a then-pending Mattel motion to compel, MGA and Bryant agreed on the record before Judge Block on June 20, 2006 that they would make tangible

---

[1]   Further, because they too were continued as a result of the "soft stay," we need to discuss the rescheduling of the depositions of Carlos Gustavo Machado, who was previously scheduled to be deposed on October 26, 2007; Sarah Halpern, who was previously scheduled for October 29, 2007; and Margaret Hatch Leahy, who was previously scheduled for October 30, 2007. We have been actively seeking the depositions of these witnesses since at least early June. All three of these witnesses have separate counsel as you know.

4            ....IBIT _9_ PAGE _142_

items available for inspection within fifteen days of a Mattel request. Furthermore, as a result of
MGA's refusals to produce tangible items relating to Bratz sought by Mattel, Mattel brought a
motion to compel, which Judge Infante granted. There are numerous categories of tangible items
that MGA has been ordered to produce including, without limitation, (1) all doll heads, sculpts,
prototypes, models, samples and tangible items that were created, prepared or made prior to
January 1, 2001 that refer or relate to Bratz or Angel, (2) all doll heads, sculpts, prototypes,
models, samples and tangible items painted by Anna Rhee prior to January 1, 2001, (3) doll
heads, sculpts, prototypes, models, samples and tangible items that refer or relate to dolls, doll
accessories or toys that Bryant produced, created, authored, conceived or reduced to practice
prior to January 1, 2001, (4) doll heads, sculpts, prototypes, models, samples and tangible items
that support, refute or otherwise refer or relate to any facts underlying MGA's affirmative
defenses, (5) all head sculpts including all preliminary head sculpts and all versions of such
sculpts made, produced or prepared in connection with the CONTESTED MGA PRODUCTS,
and (6) a sample of the CONTESTED MGA PRODUCTS together with each such product's
packaging and all instructions, promotional literature, coupons, bounce-back cards and other
materials inserted in or associates with such packaging. In addition, to the extent not produced in
response to any other request, MGA has been ordered to produce all tangible items that in
intends to rely upon in this action.

Mattel has made repeated efforts to obtain access to inspect and photograph MGA's tangible
items. For example, on September 13, 2007, Mattel wrote to MGA requesting a date to inspect
and photograph all Bratz products responsive to Request No. 1 in Mattel's Second Set of
Requests for Production of Documents, and products, packaging and other physical items
responsive to any of Mattel's other discovery requests including, without limitation, all products
and packaging identified by MGA in its Supplemental Response to Interrogatory No. 2 of
Mattel's First Set of Interrogatories Re Unfair Competition, dated June 20, 2007. MGA did not
respond to Mattel's request. Thereafter, on September 27, 2007, Mattel sent MGA a meet and
confer request regarding this matter. On October 5, 2007, MGA stated that it would

> "make available samples of Bratz products (pursuant to Request No. 1 of Mattel's
> Second Set of Requests for Production of Documents) and any additional items on
> which MGA intends to rely for its claims or defenses, including any doll heads,
> sculpts, prototypes, samples and tangible items that relate to any facts underlying
> MGA's affirmative defenses in this action (RFP 100 of Mattel's First Set of RFPs)
> and any tangible items on which MGA intends to rely for its affirmative claims
> (RFP No. 1 of Mattel's First Set of RFP's re Claims of Unfair Competition), on a
> rolling basis."

On October 8-11, 2007, MGA made available certain products for inspection at O'Melveny and
Myers offices in Los Angeles. However, this inspection was not complete. MGA agreed to
provide Mattel with a schedule by which it would make available for inspection all other Bratz
products and other tangible items. Even though MGA's deadline to make products and tangible
things available for inspection and photographing has long passed, Mattel still has not received a
schedule for MGA's completion of this. Some of the pertinent background documents and
communications regarding this matter are attached as Exhibit G to this letter.

.JT  9  PAGE 143

Mattel also has requested -- and believes that it is entitled to -- access to the three dimensional Bratz head that is depicted in the photograph marked as Exhibit 1118. We raised with MGA's counsel prior to the substitution our request that we be given access to the head to make a three-dimensional digital scan of it for purposes of this litigation. We have not, however, received any commitment by MGA to allow Mattel such access.

MGA additionally needs to complete its production (for inspection) of the contested MGA products and other products and tangible items responsive to Request Numbers 1, 2 and 16 of Mattel's First Set of Requests for Production to MGA re Claims of Unfair Competition, and Request Numbers 96-99 of Mattel's First Set of Requests for Production to MGA by October 31, 2007. Please let us know whether MGA will comply with these obligations.

<u>MGA's 2005 Privilege Log.</u> MGA agreed to produce documents on MGA's privilege log from 2005 in redacted form and to provide a supplemental log of documents by October 5, 2007. After two extensions, most recently to October 15, 2007, Mattel has not yet received these documents. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit H to this letter.

<u>Mattel's First Set of Requests for Production to MGA Re Claims of Unfair Competition.</u> Pursuant to the stipulation entered into by the parties on September 24, 2007, MGA agreed to produce documents in response to Request Nos. 1, 3-10, 12, 13, 16-20, 26, 27, 29, 30, 32-40, 43, 45, 48-52, 60, 65-119, 137-140, 157-161, 164 and 166 to Mattel's First Set of Requests for Production to MGA Re Claims of Unfair Competition by October 17, 2007. MGA agreed to produce these documents on a rolling basis once a week and to provide Mattel a date by which the entire unfair competition production will be completed. Mattel has not yet received this date. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit I to this letter.

<u>Metadata.</u> On August 21, 2007, Mattel requested that copies of certain e-mails in their native format, including all metadata and the full e-mail header information. On August, 22, 2007, MGA responded that they are "researching the documents" and would get back to us. After several meet and confers, MGA agreed to produce all of e-mails listed in Mattel's prior letter request in their native format, with full email header information, to the extent MGA has such emails in its possession, custody or control by October 1, 2007. However, MGA did not produce all the metadata Mattel requested by October 1, 2007. On October 3, 2007, MGA produced a chart purporting to contain the metadata MGA was able to retrieve pursuant to Mattel's request. Not only was the chart no substitute for the information Mattel sought, but it was incomplete on its face. Thereafter, on October 8, 2007, MGA again agreed to provide the emails requested by Mattel in their native format (i.e., electronic). MGA also agreed to investigate the length of time required to do this and to let Mattel know. To date, Mattel has not received this information or the requested metadata. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit J to this letter.

Art Attacks v. MGA Trial Exhibits. The formerly sealed exhibits in the Art Attacks v. MGA case are also now long overdue. These documents were compelled by the Court in its Order of May 15, 2007 and were ordered produced no later than July 31, 2007. After MGA missed that deadline, MGA agreed at a September 7, 2007 meet and confer to produce those exhibits on or before September 12, 2007. Thereafter, MGA claimed in a letter that it had actually done so. An investigation of MGA's production revealed, however, that MGA did not do so. Mattel requested by letter dated October 12, 2007 that MGA produce the balance of the agreed upon exhibits no later than October 19, 2007. To date, MGA has not produced those exhibits or responded to this request. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit K to this letter.

Miscellaneous. Additionally, MGA promised to provide Mattel the following documents and document-related information which are now overdue: (1) the Bates numbers of the documents provided to Speckin; (2) legible copies of MGA's 2001 financial statements; (3) an electronic copy of Exhibit 660; (4) remaining Union Bank documents; and (5) Dave Malacrida's original day planner, his e-mails and any other documents relating to him responsive to Mattel's document requests prior to his deposition. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit L to this letter.

As you can see, MGA's obligations as to these documents are long overdue. Accordingly, if we cannot firmly resolve these open items in the short term, we intend to seek the assistance of the Court.

### C.    Supplemental Responses

A number of supplemental responses to discovery requests promised by MGA, MGA Hong Kong and Larian are long overdue as well. First, Mr. Larian, after numerous extensions granted by Mattel, agreed to provide a further supplemental response to Request Nos. 32, 33, 54-61, and 66-69 in Mattel's First Set of Requests for Admissions to Isaac Larian by October 12, 2007. He has not done so.

Second, also after multiple extensions agreed to by Mattel, MGA Hong Kong agreed to provide supplemental responses to Mattel's First Set of Requests for Production of Documents and Things that track the supplemental responses provided by MGA to Mattel's Second Set of Requests for Production of Documents and Things on October 15, 2007. Those responses have not been received by Mattel.

Third, after multiple extensions granted by Mattel, MGA agreed at a meet and confer on October 5, 2007 (confirmed in a Mattel letter of that same date and in an October 11, 2007 e-mail from Mr. Charron) to provide by October 15, 2007 each of the following: (1) supplemental responses to Request Nos. 35, 36, 69-74, and 92-97 in Mattel's Fifth Set of Requests for Admissions to MGA; (2) supplemental responses to Request Nos. 1-28 in Mattel's Fourth Set of Requests for Admissions to MGA; (3) supplemental responses to Request Nos. 141-163, 165-170 and 173-180 in Mattel's Third Set of Requests for Admissions to MGA; and (4) a supplemental response to Interrogatory No. 11 in Mattel's Second Set of Interrogatories that will identify the carriers for

each responsive telephone number. None of these supplemental responses have been received despite the multiple extension granted by Mattel. Some of the pertinent background documents and communications regarding these matters are attached as Exhibit M to this letter.

Finally, the Court's Order Denying Motion for Terminating Sanctions, dated August 27, 2007, required all parties to submit a declaration setting forth their preservation efforts and policies with respect to the present litigation. Mattel submitted such declaration on September 10, 2007. To date, MGA Hong Kong, MGA de Mexico and Isaac Larian promised that they would provide preservation declarations, but have not done so. Some of the pertinent background documents and communications regarding these matters are attached as Exhibit N to this letter.

MGA's obligations as to these matters, too, are long overdue. Accordingly, if we cannot firmly resolve these open items in the short term, we intend to seek the assistance of the Court.

## II.    Meet and Confer Requests For Which MGA's Time To Respond Has Lapsed

The following are significant meet and confer requests for which MGA's time to respond pursuant to Section 5 of the Discovery Master Stipulation has lapsed:

As discussed above, on October 5, 2007, Mattel sent a MGA a meet and confer letter regarding MGA's repeated failure to provide a knowledgeable deponent on Topic Nos. 21, 24, 26, 31, 39 40 and 41 of Mattel's Second Rule 30(b)(6) Notice. Mattel also sought to meet and confer regarding Mattel's anticipated motions for MGA to be precluded from denying access to the Diva Starz project; to enforce prior court orders relating to Topic No. 26; and for sanctions (because of the deficiencies and violations during Lisa Tonnu deposition). MGA did not timely respond to Mattel's request to meet and confer on this topic, except to say that we should contact MGA's new counsel.

On September 20, 2007, Mattel sent MGA a meet and confer request regarding protocols for Zeus searches, pursuant to Judge Infante's September 12, 2007 Order directing the parties to "further meet and confer to establish parameters for conducting a reasonable search of the Zeus system and backup tapes." On September 26, 2007, MGA's counsel Marc Feinstein stated that he would send a letter regarding Zeus. To date, this letter has not been received by Mattel.

Some of the pertinent background documents and communications regarding these matters are attached as Exhibit O to this letter.

## III.    Outstanding Issues re Topic 33

In addition, as of the time of the substitution of counsel, Mattel had been in the process of putting together meet and confer letters on other significant issues. I will address one set of issues here, which should be considered a request to MGA pursuant to section 5 of the Discovery Master Stipulation to meet and confer in advance of Mattel motions to compel should the parties be unable to resolve these matters.

MGA failed to designate a qualified individual to testify regarding Topic No. 33 of Mattel's Second Notice of Deposition of MGA, in violation of Judge Infante's Order compelling testimony on this Topic, and gave improper instructions not to answer during the deposition of its designee Samir Khare. In addition, MGA acknowledged at Mr. Khare's deposition that it would be necessary to provide him for additional testimony because it was not yet completed. (See Deposition Transcript of Samir Khare, dated August 20, 2007, at 427:11-13).

MGA initially had designated Bryan Armstrong to testify on Topic No. 33. To provide additional testimony on the substance of MGA's registrations and applications, MGA designated Mr. Khare to testify on the Topic as well. Nonetheless, Mr. Khare still did not know the basis of facts asserted by MGA in these applications. For instance, Mr. Khare did not know on what basis MGA and Isaac Larian relied in representing to the U.S. Patent Office that Mr. Larian was the inventor of packaging for which MGA submitted a patent. See Khare Depo. Tr. at 117:22-127:23. Similarly, Mr. Khare did not know on what basis MGA and Mr. Larian relied in representing that Mr. Larian was the inventor of changeable footgear for which MGA submitted a patent application. See Khare Depo. Tr. at 127:24-133:25.

In addition, MGA's counsel improperly instructed Mr. Khare not to answer questions regarding underlying facts, not attorney-client communications, to which Mattel is entitled. See, e.g., Khare Depo. Tr. at 72:18-23. Mr. Khare withheld information regarding the identity of the person or persons who created Bratz character art cited in an MGA copyright registration based on counsel's instruction. Id. at 75:4-76:11. Mr. Khare also withheld factual information regarding Aileen Storer's work on Bratz on the basis of alleged privilege. Id. at 423:25-425:18.

Please let us know when Mr. Khare is available to continue his deposition, whether MGA will agree to withdraw the improper instructions given during his deposition and whether MGA will either properly educate Mr. Khare on the substance of its applications and registrations or provide someone else who is properly educated. Unless MGA agrees to withdraw the improper instructions and produce Mr. Khare for additional questioning, Mattel anticipates filing a motion to enforce Judge Infante's Order, to compel and for sanctions.

MGA likewise gave improper instructions not to answer during the deposition of its other designee on Topic 33, Bryan Armstrong, and improperly asserted privilege to claw-back documents bearing Bates numbers MGA 0825680-0825682 and MGA 0802758-0802767.

First, MGA's counsel instructed Mr. Armstrong not to answer questions that clearly do not invade the attorney-client privilege. See Deposition Transcript of Bryan Armstrong, Vol. 2, dated August 1, 2007, at 347:24-348:7, 349:6-14, 349:18-351:6, 440:11-441:11, 442:3-10 and 442:18-443:8. The majority of these questions were high level questions about whether or not Mr. Armstrong or MGA's intellectual property counsel collected factual information for the purpose of communicating such information to the U.S. Copyright Office or U.S. Patent and Trademark Office. Questions about facts learned by counsel for the purpose of communicating them to the Copyright Office or USPTO are not privileged. In addition, MGA's counsel improperly instructed Mr. Armstrong not to answer questions regarding trademark searches for the name "Jade." Any such trademark search is not privileged and could show when MGA first considered using the name "Jade" for a Bratz character. Indeed, in other meet and confers, MGA

9

EXHIBIT 9 PAGE 147

conceded that such searches themselves are not privileged, let alone the timing of when they are performed.

Second, MGA improperly asserted privilege on the basis of attorney work product over a fax cover sheet and faxed drawings from Bobby Newquist to Alan Rose. To the extent MGA contends that a document prepared by its attorney is privileged, MGA must show that the document was prepared by an attorney for the purpose of advising MGA *and* that the document reveals MGA's confidential communications. Privilege reaches "those papers prepared by an attorney or at an attorney's request for the purpose of advising a client, provided the papers are based on and would tend to reveal the client's confidential communications," but "does not extend . . . beyond the substance of the client's confidential communications to the attorney." Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977). Here the document in question, consisting of drawings and a fax cover sheet, was prepared by a third party vendor for the purpose of submitting the drawings to the U.S. Patent and Trademark Office. Thus, this document is not privileged.

MGA also asserted attorney-client privilege over a fax from Bryan Armstrong to Alan Rose and the attached signed trademark application to the USPTO. The fax from Mr. Armstrong is not a communication to counsel for the purpose of obtaining legal advice, but rather, simply a cover letter directing MGA's attorney to file the signed application with the USPTO. The signed trademark application is a communication to the USPTO and, therefore, obviously not privileged

Unless MGA agrees to withdraw the improper instructions, re-produce the documents in question and produce a designee to testify about them, Mattel anticipates filing a motion to compel and for sanctions.

Finally, please be advised that we recently received the transcript of deposition of MGA Hong Kong's Rule 30(b)(6) designee. He was unprepared to address many Topics on which he was designated, and MGA Hong Kong's counsel gave numerous improper instructions not to answer and otherwise engaged in improper speaking objections and obstructed the deposition. Nor was Mattel afforded an adequate amount of time to fairly examine him, particularly given that a translator was necessary and given the number of Topics the witness was designated on. We will send you a separate meet and confer letter addressing these issues in more detail. However, since I also know that you wished to hear from us on matters that we considered to be priorities in discovery and because the completion of this deposition is among them, I thought we would alter you to this issue now.

I look forward to discussing these matters with you.

Very truly yours,

Michael T. Zeller

Michael T. Zeller

cc:     John Keker, Esq./Michael Page, Esq. (by mail)
        Mark Overland, Esq./Alexander Cote, Esq.

10          EXHIBIT __9__ PAGE 148

# EXHIBIT 10

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date:  July 2, 2007

Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
=======================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

    Jim Holmes                             Theresa Lanza
    Courtroom Deputy Clerk                 Court Reporter

ATTORNEYS PRESENT FOR CARTER         ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                         John B. Quinn
                                      Brett Dylan Proctor
                                      Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali
Patricia Glaser

ENTERED
CLERK, U.S. DISTRICT COURT

JUL - 5 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY



DOCKETED ON CM

JUL - 5 2007

BY                164

PROCEEDINGS:   MINUTE ORDER

    As set forth more fully herein, the Court hereby makes the following ruling regarding matters
heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's
       May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                        Initials of Deputy Clerk _Jh_
CIVIL – GEN                         1                   Time: 01/15

EXHIBIT _10_ PAGE _148_

regarding date of production of documents (docket #545); and

(4)     The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket
        #508).

(5)     The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.


(1)     Motion re Trial Structure (docket #462)

        Previous orders of the Court specified that the claims and counterclaims brought in this
action will be tried in two phases.  The parties have agreed, in large part, to a refinement of the
Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1.  Where
the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases,
with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all
Phase 1 damages being tried after all the other issues.  Phase 1(a) would be limited to issues
surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership
of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred
Bratz products that are potentially derivative of the original drawings.  This approach has the
appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings.  A
finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the
need for Phase 1(b).

        Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS'
PROPOSAL**, as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007.
Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)     MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)     MGA's Ex Parte Application regarding date of production of documents (docket #545).

        The Discovery Master's May 15, 2007, Order compels production of documents regarding
ink, paper, and chemical analysis and documents relating to unreleased MGA products.  The order
required that documents be produced no later than the end of May.

        The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary
to law" standard set forth in Fed. R. Civ. P. 72(a).

        The Discovery Master's order compels the production of only non-privileged documents.
Therefore, MGA's arguments that the Discovery Master's order requires production of documents
in violation of the attorney-client privilege are misplaced.  If the only responsive documents are
privileged, then MGA need not produce them, but must produce a privilege log.

        MGA acknowledges that it has raised an argument before the Court that was not raised

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

later than two weeks after that date. Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above. The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above. The application is **DENIED** in all other respects.

(4)     MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

>   A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added). "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted). Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

>   [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)    Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.