THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
E-mail: tnolan@skadden.com

RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
Email: rkennedy@skadden.com

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE De Mexico, S.R.L. DE C.V., and Isaac Larian

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

CARTER BRYANT, an individual

Plaintiff,

v.

MATTEL, INC., a Delaware corporation

Defendant.

Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC.

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with Case No. 04-9059 and Case No. 05-2727

**DISCOVERY MATTER**

**[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]**

**MGA'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF METADATA**

**[Declarations Of Amy S. Park and Amir Suman Filed Under Separate Cover]**

Hearing Date: TBD
Time: TBD
Place: TBD

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........................................................................1

II. FACTUAL BACKGROUND ..............................................................1

A. MGA Engages In Good Faith Meet And Confer Discussions Regarding The Production Of Emails In Their Native Format. ...........1

B. MGA Produces Exemplar Metadata Information, As Agreed.............2

C. The Court Temporarily Stays All Discovery Obligations. ...................3

D. Mattel Precipitously Files This Motion. ..........................................3

III. ARGUMENT.................................................................................4

A. Mattel Has Not Made The Required Particularized Showing That It Needs The Requested Metadata. ...................................................4

B. If MGA Is Ordered To Produce The Metadata, Mattel Should Pay The Costs Of Production. ...............................................................6

C. MGA Should Not Be Sanctioned. ...................................................8

IV. CONCLUSION .............................................................................9

# TABLE OF AUTHORITIES

Page

## CASES

Anti-Monopoly, Inc. v. Hasbro, Inc., No. 94 Civ. 2120 (LMM) (AJP), 1996 WL 22976 (S.D.N.Y. Jan 23, 1996) .....6

Fryer v. Brown, Case No. C04-5481 FDB, 2005 U.S. Dist. LEXIS 20830 (W.D. Wash. July 15, 2005) .....9

Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Civil Action No. 05-138-WOB, 2006 U.S. Dist. LEXIS 92028 (E.D. Ky. Dec. 18, 2006) .....4, 5, 6

Michigan First Credit Union v.Cumis Ins. Soc., Inc., Civil Action No. 05-74423, 2007 U.S. Dist. LEXIS 84842 (E.D. Mich. Nov. 16, 2007) .....5

Murphy Oil USA, Inc. v. Fluor Daniel, Inc., No. Civ. A, 99-3564, 2002 WL 246439 (E.D. La. 2002) .....7

OpenTV v. Liberate Techs., 291 F.R.D. 474 (N.D. Cal. 2003) .....7

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978) .....8

Playboy Enters., Inc. v. Welles, 60 F. Supp. 2d 1050 (S.D. Cal. 1999) .....6

Rivera v. NIBCO, Inc., 364 F.3d 1057 (9th Cir. 2004) .....5

Rowe Entm't, Inc. v. William Morris Agency, Inc., 205 F.R.D. 421 (S.D.N.Y. 2002) .....6, 7

Simon Prop. Group v. mySimon, Inc., 194 F.R.D. 639 (S.D. Ind. 2000) .....6

Williams v. Sprint/United Management Co., 230 F.R.D. 640 (D. Ka. 2005) .....5, 6

Wyeth v. Impax Labs., Inc., Civil Action No. 06-222-JJF, 2006 U.S. Dist. LEXIS 79761 (D. Del. Oct. 26, 2006) .....4, 5, 6

Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003) .....6

## STATUTES

Fed. R. Civ. P. 37(a)(4)(A) .....9

## I. INTRODUCTION

Mattel, Inc.'s ("Mattel") motion to compel production of email files in their native electronic format should be denied.

On the same day that Mattel filed this motion, the parties conducted a meet-and-confer regarding Mattel's request for 163 email files in their native format. In that meeting, MGA told Mattel that MGA had located and would be willing produce some of the native files and that MGA would be willing to produce the remaining native files to the extent they are in MGA's possession, custody or control and could be located and collected without undue burden. MGA explained, however, that it was encountering difficulties in researching the remaining files. MGA stated, therefore, that it needed additional time to ascertain what would be required to obtain the data, and promised to get back to Mattel in short order.

Within hours of the meet-and-confer, without awaiting MGA's promised follow-up, Mattel precipitously filed its motion to compel, and by so doing, rejected MGA's efforts and offer to cooperate. In the rush to file its motion, Mattel has failed to make the threshold showing of "particularized need" that is required to justify the intrusive discovery it seeks. Mattel's failure is fatal to its motion, and the motion should therefore be denied.

## II. FACTUAL BACKGROUND

### A. MGA Engages In Good Faith Meet And Confer Discussions Regarding The Production Of Emails In Their Native Format.

On August 21, 2007, Mattel requested that MGA produce copies of 168 emails "in their native format, including all metadata and the full e-mail header information," and requested an immediate "meet and confer" on the issue. Declaration of B. Dylan Proctor ("Proctor Decl.") Ex. 1. While many of the emails for which Mattel seeks native information were produced by MGA, several others

were produced by Mattel. Id.[1] Mattel did not suggest, let alone articulate, a theory of relevancy or any specific need with respect to any of the metadata it sought. Id.

The next day the parties conferred by email. Mattel clarified that it had requested five emails that it did not want. Id. MGA agreed to research the remaining 163 emails and get back to Mattel. Id.

On August 29, 2007, the parties met and conferred again. MGA informed Mattel that obtaining metadata information for the 163 emails may be unduly burdensome. Id. Ex. 4. MGA also stated that some of the information was not likely in MGA's possession, custody or control. Id. The parties discussed the possibility of MGA making an initial production of exemplar native file information so that Mattel could determine what specific metadata fields it wanted. Id. Ex. 4. At that time, Mattel stated that it needed to determine whether its vendor could access the files in the format in which MGA's vendors kept them. Id. Accordingly, the parties agreed to convene a further meet-and-confer at a later date to continue discussion of the matter. Id.

### B. MGA Produces Exemplar Metadata Information, As Agreed.

On September 14, 2007, the parties convened another meet-and-confer during which Mattel agreed to review exemplars of MGA's native file information so that it could advise MGA "with more specificity than it already has as to specifically what metadata information it requires for such emails." Id. Ex. 6.

On October 3, 2007, MGA provided Mattel with a chart containing native file information for a number of emails. Id. Ex. 7. The next day, after an initial review of the information, Mattel stated that it would review the chart further and "make further inquiries on [][its] end" to "see if it contains the information we require." Id. Ex. 8. Mattel purported to reserve the right to demand production of the email files

---

[1] Mattel admits that it already has the native files for the emails it produced and claims to have provided those files to MGA. Proctor Decl. ¶ 7; Declaration of Amy S. Park ("Park Decl.") Ex. C.

in their native electronic format – to the extent they were accessible – "if Mattel so requires." Id. Thereafter, on October 8, 2007, Mattel asked MGA to advise Mattel how long it would take to produce the native format emails "to the extent MGA possesses the files or they are within MGA's custody or control." Id. Ex. 9.[2]

### C. The Court Temporarily Stays All Discovery Obligations.

On October 12, 2007, MGA's prior counsel withdrew from the case, and MGA's new counsel substituted in. Id. Ex. 10. On October 14, 2007, Mattel sent MGA's new counsel an email enumerating a list of nearly 30 items that MGA had purportedly "agreed it currently owes Mattel." Id. Ex. 11. Buried in this list was a reference to "Requested Metadata for certain emails (overdue)." Id. MGA's counsel agreed to look into the various matters. Id. Ex. 12.

The next day, the Court imposed a stay on responding to discovery from October 15 to October 31, 2007. On October 31, the Court imposed a further stay on *all* discovery from November 1, 2007 through November 14, 2007.

### D. Mattel Precipitously Files This Motion.

On November 16, 2007, the day after the stay was lifted, the parties conducted an in-person meet-and-confer to discuss various pending discovery motions and other open discovery issues, including Mattel's request for the 163 native email files. Park Decl. ¶ 2. During the conference, MGA advised Mattel that MGA could locate some of the native email files in short order. MGA explained, however, that due to the manner in which the remaining emails were originally harvested and produced, MGA was investigating whether it could obtain the remaining native files and, if so, what burden that might entail. Id. ¶ 3. MGA agreed to continue its investigation

---

[2] Mattel asserts that MGA promised, but failed to produce the native files by October 1. Motion at 3. But that assertion is belied by the fact that Mattel agreed first to review exemplar information, which MGA provided, and as of October 4, Mattel was continuing its review. Proctor Decl. Exs. 7 & 8.

and give Mattel a further report on the issue at a continued meet-and-confer that the parties scheduled for November 21, 2007. Id.

On November 21, the parties resumed their meet-and-confer discussions by phone. Id. ¶ 4. At or about the time the parties were commencing their call, Mattel sent MGA a letter purporting to (i) memorialize the parties' meet and confer discussions from November 16 and (ii) identify follow-up work to be performed by MGA regarding open discovery items. Id. Ex. A. Significantly, however, the letter failed to mention the production of native email files or MGA's efforts regarding them. Id.

During the November 21 call, MGA stated that it was willing to produce the approximately 20 native email files that it had collected to date. Park Decl. ¶ 5. MGA also stated that: (i) it was willing in principle to produce the remaining native files to the extent that they are in MGA's possession, custody or control and could be located and collected, and (ii) MGA was continuing to investigate whether and to what extent that would be possible and what burden that would entail. Id. Ex. B. MGA promised to circle back with Mattel in short order. Id. Later that day, ignoring MGA's representations from the call that morning and without awaiting MGA's promised follow-up, Mattel precipitously filed its motion to compel. By its actions, Mattel has rejected MGA's offer to produce the 20 native files and has demonstrated its unwillingness to amicably resolve this matter.

## III. ARGUMENT

### A. Mattel Has Not Made The Required Particularized Showing That It Needs The Requested Metadata.

Mattel's motion is premised on the assumption that metadata is automatically discoverable. Not so. "'Emerging standards of electronic discovery appear to articulate a general presumption *against* the production of metadata[.]'" Wyeth v. Impax Labs., Inc., Civil Action No. 06-222-JJF, 2006 U.S. Dist. LEXIS 79761, *4 (D. Del. Oct. 26, 2006) (citations omitted; emphasis added); see Kentucky Speedway,

LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc., Civil Action No. 05-138-WOB, 2006 U.S. Dist. LEXIS 92028, *22-24 (E.D. Ky. Dec. 18, 2006) (noting the strong presumption against metadata production and holding that "[i]n most cases and for most documents, metadata does not provide relevant information"). "Most metadata is of limited evidentiary value, and reviewing it can waste litigation resources." Wyeth, 2006 U.S. Dist. LEXIS, at *4 (citation omitted). As a result, a party requesting metadata must demonstrate a "particularized need." Id. at *5; Kentucky Speedway, 2006 U.S. Dist. LEXIS 92028, at *22-23 ("Plaintiff has not made any showing of a particularized need for the metadata"); Michigan First Credit Union v. Cumis Ins. Soc., Inc., Civil Action No. 05-74423, 2007 U.S. Dist. LEXIS 84842, *8 (E.D. Mich. Nov. 16, 2007) (refusing to compel production of metadata since it would be "overly burdensome with no corresponding evidentiary value").

Mattel has not even come close to demonstrating a particularized need for the requested metadata. Mattel baldly asserts that the metadata could have relevance to Mattel's RICO cause of action because it may show that certain emails were "communicated over state or international borders." Motion at 5-6. This is woefully inadequate. Wyeth, 2006 U.S. Dist. LEXIS 79761, at **5-6. Mattel does not attach to its motion even one of the emails in question. Nor has it otherwise demonstrated with particularity how or why the metadata is necessary for any, much less all, of the 163 emails at issue. Moreover, Mattel has failed to make any showing that the information it seeks is not available through other means. Kentucky Speedway, 2006 U.S. Dist. LEXIS 92028, at *24. As a result, there is no basis to compel this discovery. Mattel's demand for native email files is nothing more than an impermissible "fishing expedition." Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004).

Mattel's reliance on Williams v. Sprint/United Management Co., 230 F.R.D. 640 (D. Ka. 2005) is misplaced. Motion at 6. In Williams, unlike here, the question was whether it was proper for the defendant to destroy Excel spreadsheet metadata

*prior* to the production of images of those spreadsheets, when the defendant knew such information was specifically relevant to the unique employment discrimination issues therein. Id. at 645, 654. Further, the metadata information at issue in Williams was very basic – "file names, dates of the file, authors of the file, recipients . . . ." Id. at 644. The emails at issue here already convey all of this information and Mattel does not dispute that. Moreover, other courts have specifically disapproved of Williams. In Kentucky Speedway the court held that "[i[n the rapidly evolving world of electronic discovery, the holding of the Williams case is not persuasive." 2006 U.S. Dist. LEXIS 92028, at *22. See also Wyeth, 2006 U.S. Dist. LEXIS 79761, at **4-6. The remaining cases cited by Mattel (Motion at 6-7) are inapposite since none specifically addresses the discovery of metadata. See Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (SDNY 2003); Playboy Enters., Inc. v. Welles, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999); Simon Prop. Group v. mySimon, Inc., 194 F.R.D. 639, 640 (S.D. Ind. 2000).

**B. If MGA Is Ordered To Produce The Metadata, Mattel Should Pay The Costs Of Production.**

If MGA is ordered to produce the native email files notwithstanding Mattel's failure to meet its burden of showing a particularized need, Mattel – not MGA – should bear the costs of production. A court may protect the responding party from "undue burden or expense" by shifting some or all of the costs of production to the requesting party. Rowe Entm't, Inc. v. William Morris Agency, Inc., 205 F.R.D. 421, 428-29 (S.D.N.Y. 2002); see Anti-Monopoly, Inc. v. Hasbro, Inc., No. 94 Civ. 2120 (LMM) (AJP), 1996 WL 22976, at *2 (S.D.N.Y. Jan. 23, 1996) (requiring the plaintiff to pay all costs incurred by defendants in extracting requested electronic files from their computer systems). Courts have considered several factors in determining whether the costs of discovery should be shifted, including: the relative benefit to the parties of obtaining the information; the availability of such information from other sources; the likelihood of discovering critical information;

the purposes for which the responding party maintains the requested data; the relative ability of each party to control costs and its incentive to do so; the total cost associated with production; and the resources available to each party. See Rowe, 205 F.R.D. at 429; OpenTV v. Liberate Techs., 219 F.R.D. 474, 479 (N.D. Cal. 2003) (shifting costs to party requesting discovery); Murphy Oil USA, Inc. v. Fluor Daniel, Inc., No. Civ. A, 99-3564, 2002 WL 246439, at **3-6 (E.D. La. 2002) (same).

These factors weigh in favor of cost-shifting here:

*Relative Benefit to the Parties*: Where the responding party will derive little, if any, benefit from the requested production, cost shifting is appropriate. See Rowe, 205 F.R.D. at 431. Here, there is no evidence that MGA will obtain any benefit from producing the native email files.

*Availability of Such Information from Other Sources*: Mattel asserts that it is seeking the native email files to show the geographic locations from which the subject emails were sent or received. Motion at 5-6. That information is obtainable from sources other than the native files, including through the depositions of the parties to the email communications.

*Likelihood of Discovering Critical Information*: Mattel has not made a particularized showing that the native formats of all 163 emails are "critical" to this case. Indeed, the value of those native files appears marginal at best given that the very same metadata information that Mattel hopes to obtain could be sought in the first instance from other sources, including depositions.

*Purposes for which the Responding Party Maintains the Requested Data*: Mattel has not demonstrated that MGA collects or uses metadata in the ordinary course of its business or that MGA would produce this information in the absence of a litigation demand or court order. This factor therefore also weighs in favor of cost-shifting. Rowe, 205 F.R.D. at 431.

*Relative Ability of Each Party to Control Costs*: To obtain native email files, MGA would rely on its electronic discovery vendor and/or harvest vendor.

These vendors have their own pricing that is not subject to MGA's direct control. Moreover, MGA has learned that those vendors cannot provide the native files for a significant number of the requested emails. Park Decl. ¶ 9. As a result, MGA would have to devote significant time and resources in an effort to produce those files, if it could be done at all.[3] Declaration of Amir Suman (Suman Decl. ¶¶ 3-4.)

*Total cost Associated with Production:* Based on the number of native files requested, the costs of production could easily exceed $10,000, which is a substantial amount. Park Decl. ¶¶ 7-8; Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 361-62 (1978) ("[T]he test in this respect normally should be whether the cost is substantial; not whether it is 'modest' in relation to ability to pay. In the context of a lawsuit in which the defendants [with assets over $500 million] deny all liability, the imposition on them of a threshold expense of $16,000 . . . can hardly be viewed as an insubstantial burden.").

*Resources Available to Each Party*: Upon information and belief, Mattel has ample resources to pay the costs associated with the production of the emails in their native format.

If MGA is forced to incur the burden and expense of responding to Mattel's requests for the production of native email files, Mattel, not MGA, should bear the costs.

**C. MGA Should Not Be Sanctioned.**

The party who prevails on a motion to compel is entitled to its reasonable expenses, including attorney's fees, unless the court finds that the losing party's position is "substantially justified, or [] other circumstances make an award of

---

3 Mattel's assertion that producing the native email files will not impose an undue burden because MGA has preserved its emails (Opp'n at 8) is misguided. The fact that material has been preserved does not mean that the material can be located and produced without undue burden. Suman Decl. ¶¶ 3-5.

expenses unjust." Fed. R. Civ. P. 37(a)(4)(A). See also Fryer v. Brown, Case No. C04-5481 FDB, 2005 U.S. Dist. LEXIS 20830, **21-22 (W.D. Wash. July 15, 2005).

MGA met and conferred in good faith regarding the production of the requested native email files, offered to produce that portion of the files it had collected, and promised to investigate the possibility of producing the rest and get back to Mattel in short order. Rather than making "a good faith effort to obtain the disclosure or discovery without court action" (Fed. R. Civ. P. 37(a)(4)(A)), Mattel rushed to file this motion without awaiting MGA's production – and largely ignoring – MGA's representations. Thus, it is Mattel – not MGA – that should be sanctioned. Mattel should be ordered to pay $2,500 as partial reimbursement for the fees that MGA has incurred in defending this unnecessary motion.

## IV. CONCLUSION

For the foregoing reasons, Mattel's motion to compel should be denied in its entirety, and Mattel should be ordered to pay sanctions.

DATED: November 30, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

____________________________

Thomas J. Nolan
Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.