# EXHIBIT 1

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

## I.  INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1]  Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT  1
PAGE  4

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly

lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made

commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of

Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed

suit against its former employee Bryant in state court asserting claims for breach of contract,

breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel

employed Bryant as a product designer from September 1995 through April 1998, and from

January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee

Confidential Information and Inventions Agreement which required him not to engage in any

employment or business other than for Mattel, or invest or assist in any manner any business

competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel

all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his

employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that

he had not worked for any of Mattel's competitors in the prior twelve months and had not

engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of

any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for

a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT   1
PAGE   5

provide product design services on a "top priority" basis.[2]  The agreement further provided that

Bryant would receive royalties and other consideration for sales of products on which he provided

aid or assistance; that all work and services furnished by Bryant to MGA under the agreement

would be considered "works for hire"; and that all intellectual property rights to preexisting work

by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted,

misappropriated and misused Mattel property and resources while he was employed at Mattel.  In

the complaint, Mattel claims ownership of all inventions and works created by Bryant during his

Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of

duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting

subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28

U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of

Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated

September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to

provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate

Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz

dolls.  In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-

complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information

and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition,

rescission, declaratory relief, and fraud.

//

---

[2]  Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 1
PAGE 6

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT __1__
PAGE __7__

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT ___1___
PAGE ___8___

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal

to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at

the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to

compel. The parties informed the court that they would submit a stipulation and order. See

Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel

Production of Documents, counsel will be submitting a stipulation and order which will be

dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to

memorialize the parties' meet and confer session, but were unable to reach final agreement

because Bryant insisted upon including the following sentence in the stipulation: "The stipulation

resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's

Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and

motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23.

From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel

waive its right to all further discovery in connection with its requests. Mattel proposed the

following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in
> this Stipulation shall preclude or limit Mattel from seeking further discovery on
> any matter, including as to matter on which the parties could not reach complete
> agreement, or preclude or limit any right of Bryant to object or resist to such
> discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was

unacceptable to Bryant. At the direction of the Discovery Master, the parties met and

conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT __1__
PAGE __9__

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

J.   Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT   1
PAGE   10

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents:  documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]  There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT   1
PAGE   11

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT __1__
PAGE __12__

1  requests and that the stipulation controlled to the extent they were inconsistent. Bryant's

2  Opposition at 5:22-6:21.

3       Bryant emphasizes that the parties have engaged in an extensive meet and confer process

4  and asks the Discovery Master to order the disposition of this motion in a manner consistent with

5  the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will

6  have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks

7  the Discovery Master to order Mattel not to revisit any of the requests that were the subject of

8  Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

9  

10      Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In

11  particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to

12  Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone

13  records and financial information because these records are protected by privacy rights. Lastly,

14  Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit

15  was filed.

16  

17                              III. DISCUSSION

18      A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

19      The parties' extensive submissions make it clear that the parties did not resolve the issues

20  raised in the instant motion. The parties met and conferred extensively and in good faith,

21  reaching compromises on virtually all categories of documents in dispute. Despite their efforts,

22  however, the parties were ultimately unable to execute a binding stipulation because they were

23  unable to agree on any provision to govern Mattel's future right to pursue additional discovery

24  from Bryant. It is clear that the parties deemed it necessary to include such a provision in the

25  draft stipulation in order to protect their respective positions. Because the parties did not execute

26  a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT  1
PAGE  13

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT __1__
PAGE __14__

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

<u>Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55:  Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA</u>

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT  1
PAGE  15

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's
Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT  1
PAGE  16

when the payments were actually made. Such payments might also lead to evidence to support

Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright

infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the

Bratz drawings and works by copying and preparing derivative works from those works. Under

the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual

damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore,

include all Bratz doll products that MGA released to the market. For this reason, and for reasons

already discussed in the previous subsection, Bryant's limited production of documents relating to

only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret

misappropriation. Payments could show when and what trade secret information Bryant and

other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also

relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual

causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality

concerns raised by Bryant. Among other things, the protective order provides protection for

confidential trade secret information. It has two tiers of protection, allowing a party to designate

documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective

order also requires the parties to use information produced in discovery only for purposes of this

litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged

documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

EXHIBIT  1
PAGE  17

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

### Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

EXHIBIT  1
PAGE  18

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration. Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16



EXHIBIT  1
PAGE  19

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2. Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5. Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.


IT IS SO ORDERED.


Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT 1
PAGE 20

# EXHIBIT 2

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California  94111
Telephone:      (415) 774-2611
Facsimile:      (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No.1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA; DENYING REQUEST FOR MONETARY SANCTIONS** |

I. INTRODUCTION

On June 26, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production of Documents by MGA Entertainment, Inc. ("MGA") and for Award of Monetary Sanctions.  Mattel seeks an order compelling MGA "to produce documents responsive to Mattel's First Set of Requests for Documents and Things Re Unfair Competition Claims, including, without limitation, Request Nos. 1, 3-10, 12-13, 16-18, 19-20, 26-27, 29-30, 32-40, 42-43, 45, 48-52, 54-56, 58-60,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT  2
PAGE  21

1   65-119, 137-140, 157-161, 164 and 166," and for sanctions in the amount of $4,500, which

2   represents a portion of the costs incurred by Mattel in bringing this motion.  Mattel's Motion at

3   p.1.  On July 3, 2007, MGA submitted its opposition brief, and on July 9, 2007, Mattel submitted

4   a reply brief.  The matter was heard via telephonic conference on August 13, 2007.  Having

5   considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel

6   is granted in part and denied in part, and the request for sanctions is denied.

7                                   II. BACKGROUND

8          This consolidated action includes MGA's claims for unfair competition against Mattel.

9   Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

10  products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

11  packaging and Bratz television commercials.  MGA also alleges that Mattel engaged in improper

12  conduct in dealing with retailers, licensees, employees and industry organizations.

13         After MGA filed its claims against Mattel, Mattel sought and was granted leave to file

14  several counterclaims against MGA, including claims for copyright infringement, violation of

15  RICO, conspiracy to violate RICO, misappropriation of trade secrets and unfair competition.

16  Among other things, Mattel alleges that MGA has induced Mattel employees to steal Mattel's

17  trade secrets, confidential information and other property and take it with them to their new

18  employment with MGA.  Mattel also alleges that Bryant conceived, created and developed Bratz

19  designs while he was employed by Mattel as a designer, that he concealed his Bratz work from

20  Mattel, and that he sold Bratz to MGA while he was a Mattel employee.  Mattel alleges that it is

21  the rightful owner of the Bratz designs and that MGA is engaging in copyright infringement of

22  the Bratz designs.

23         On December 18, 2006, Mattel propounded its First Set of Requests for Production of

24  Documents and Things re Claims for Unfair Competition to MGA (the "Requests for

25  Production").  The Requests for Production consist of 166 requests seeking information that

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                  2

EXHIBIT   2
PAGE   22

1   Mattel contends is relevant primarily to MGA's claims for unfair competition and Mattel's

2   defenses thereto.

3          In the meantime, MGA served its initial disclosures related to its unfair competition

4   claims. Mattel immediately filed a motion to compel MGA to provide complete initial

5   disclosures in compliance with Rule 26, Fed.R.Civ.P. Although the initial disclosures were

6   wholly inadequate, the Discovery Master denied the motion to compel, reasoning that it would be

7   more efficient and orderly for the parties to proceed with Mattel's pending Requests for

8   Production.

9          MGA served its responses to Mattel's Requests for Production on January 17, 2007.

10  MGA objected and refused to produce documents responsive to approximately two-thirds of

11  Mattel's requests. As to the remaining requests, MGA agreed to produce "relevant and non-

12  objectionable documents," subject to its General and Specific Objections.

13         Thereafter the parties met and conferred in person and exchanged a few letters. On

14  February 9, 2007, counsel for MGA advised Mattel by letter that MGA, subject to its General and

15  Specific objections, agreed to produce all "relevant and non-objectionable documents" responsive

16  to Request Nos. 1-4, 11, 13-15, 18, 21-26, 28-29, 31-36, 44-51, 53, 61-64, 118, 120-137, 141-156,

17  162-163, 165 and 166. Kidman Decl., Ex. 14. As to Request Nos. 9, 10 and 12, MGA also

18  agreed to produce "documents sufficient to show the timing of, and relevant facts regarding"

19  certain specified products. Id. Counsel for MGA sent another letter on February 16, 2007,

20  advising Mattel that MGA would produce documents responsive to Request Nos. 29 and 30.

21  Bradley Decl., Ex. 1. On May 21, 2007, MGA advised Mattel by letter that it agreed, in essence,

22  to withdraw its restriction to "relevant and non-objectionable documents" in its responses to the

23  Requests For Production. Bradley Decl., Ex. 3. On May 31, 2007, MGA served supplemental

24  responses to Mattel's Requests for Production, which no longer included the phrase "relevant and

25  non-objectionable." Kidman Decl., Exs. 11 and 16.

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT __7__
PAGE __23__

1         In its opening brief, Mattel contends that MGA has improperly refused to produce

2   documents relating to:  the creation, origin, timing and ownership of the contested MGA products

3   and packaging, including the contested Bratz products and packaging (Request Nos. 5, 6-8, 16,

4   17, 19, 20, 38, 39, 48); MGA's alleged theft of Mattel's trade secrets and confidential information

5   by, among other things, targeting and recruiting current and former Mattel employees (Request

6   Nos. 42, 59, 60, 65-117, 138-140, 160, 161 and 164); damages (Request Nos. 27, 30 and 157-

7   159); facts MGA contends support its unfair competition claims (Request Nos. 45, 119 and 166).

8   Mattel contends that MGA has no legitimate basis for refusing to produce these categories of

9   documents because they are directly relevant to the claims and defenses in the case.  Mattel also

10  contends that MGA has improperly restricted the scope of its document production in response to

11  Request Nos. 1, 3, 4, 13, 18, 29, 49, 52 and 137.

12        MGA contends that Mattel's motion should be denied in its entirety for three reasons.

13  First, Mattel is seeking documents MGA already agreed to produce as a result of the meet and

14  confer process.  Second, Mattel is seeking documents that may be precluded by other motions

15  pending before the district court.  Third, Mattel is seeking documents that constitute an

16  unreasonable and overbroad fishing expedition.

17        As to the first point, MGA contends that it has already agreed to produce documents

18  responsive to Request Nos. 9, 10, 12, 26, 29, 30, 32-36, 45, 48-51, 118, 137, and 166.  Moreover,

19  MGA represents that it has produced more than 110,000 pages of documents, including

20  documents relating to the origin, infringement, design and tooling of Bratz and has also provided

21  Mattel with access to Bratz molds and sculpts.  MGA also represents that it is continuing to

22  search for and produce documents responsive to Mattel's requests on a rolling basis.

23        MGA also asserts that it "has revisited certain of Mattel's requests, and so as to avoid

24  further burdening the Court, MGA agrees to produce non-privileged documents in its possession,

25  custody or control, subject to its previously stated General and Specific Objections, that are

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT  2
PAGE  24

1   responsive to the following sixteen requests:  5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and

2   157-159." MGA's Opposition at p. 3.

3        MGA also represents that it is prepared to produce documents responsive to Mattel's

4   Request Nos. 65-117 and 119 (which seek documents concerning MGA-Mexico and its

5   employees, and other topics relevant to Mattel's counterclaims) now that Judge Larson issued an

6   order denying MGA's motion to dismiss Mattel's trade secret claims.[1]  MGA's Opposition at pp.

7   2 and 6.

8        As to the second point, MGA contends that Mattel's motion to compel is premature with

9   respect to Request Nos. 1, 3, 4, 13 and 18.  MGA explains that these requests seek, among other

10   things, information pertaining to undisclosed and/or unreleased MGA products.  The Discovery

11   Master issued an order compelling MGA to produce such documents in response to other Mattel

12   discovery requests.  MGA appealed the Discovery Master's ruling, which was heard by Judge

13   Larson on July 2, 2007.  MGA contends that it should not be required to produce documents

14   responsive to Request Nos. 1, 3, 4, 13 and 18 until Judge Larson issues a ruling.

15        For the remaining requests, however, MGA stands by its objections.  More specifically,

16   MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160, 161 and 164 are grossly overbroad

17   and unduly burdensome.

18        In its reply brief, Mattel contends that MGA's belated offers to produce responsive

19   documents do not obviate the need for an order compelling production for several reasons.  First,

20   Mattel contends that in many instances, MGA's purported agreements to produce responsive

21   documents are subject to major qualifications.  For example, in response to Request Nos. 9, 10

22   and 12, MGA's meet and confer letter indicates that MGA has limited its production of

23   documents to only "documents sufficient to show the timing of, and relevant facts regarding"

24   certain products.  Kidman Decl., Ex. 14.  Second, Mattel points out that, in some instances, the

25

26 ────────────────────────

        [1]  Judge Larson issued the order on June 27, 2007, a day after Mattel submitted its opening brief.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT  2
PAGE  25

1    representations in MGA's meet and confer letters conflict with MGA's subsequent May 31, 2007

2    supplemental responses.  For example, even though MGA stated earlier in its two meet and confer

3    letters that it would produce documents responsive to Request Nos. 9, 10, 12, 26, 30, 32-36, 45,

4    48, 50, 51, 118 and 166, MGA's May 31, 2007 supplemental responses indicate that MGA

5    objects and refuses to produce documents responsive to these requests.  Third, Mattel contends

6    that MGA has acknowledged its responsibility to produce documents responsive to Request Nos.

7    65-117 and 119 in view of Judge Larson's June 27, 2007 order denying MGA's motion to dismiss

8    Mattel's counterclaims, and yet, MGA has failed to do so.  Fourth, Mattel points out that MGA's

9    opposition brief is internally inconsistent with respect to Request Nos. 55 and 56, stating both that

10   MGA agrees to produce documents responsive to the requests, and that MGA objects to the

11   requests as overbroad and burdensome.  See MGA's Opposition at pp. 3 and 8.

12          Mattel also contends that Request Nos. 1, 3, 4, 13 and 18 are no longer premature because

13   on July 5, 2007, two days after MGA submitted its opposition brief, Judge Larson issued an order

14   upholding the Discovery Master's ruling with respect to undisclosed and/or unreleased MGA

15   products.  Accordingly, Mattel requests an order compelling production of documents all

16   documents responsive to Request Nos. 1, 3, 4, 13 and 18 without any limitations, and overruling

17   any objections thereto.

18          With respect to the remaining requests to which MGA continues to object, Mattel reasserts

19   that the requests seek documents relevant to Mattel's trade secret counterclaims.  Mattel also

20   contends that MGA has failed to establish that complying with the requests would impose an

21   undue burden.

22                                         III. DISCUSSION

23          Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

24   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

25   party."  Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

26   permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                              6

**EXHIBIT  2**
**PAGE  26**

1  2004) ("District courts need not condone the use of discovery to engage in 'fishing

2  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

3  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

4  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

5  the phrase "subject matter involved in the pending action," were intended to prevent discovery

6  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

7  litigate the issues presented by the pleadings but to develop new claims or defenses.).

8       Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

9  extent of use of the discovery methods if the court determines that "(i) the discovery sought is

10  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

11  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

12  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

13  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

14  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

15  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

16  26(b)(2).

17  **Request Nos. 1, 3, 4, 13 and 18**

18       Request No. 1 seeks "[a] sample of each of the CONTESTED MGA PRODUCTS,

19  together with each such product's packaging, instructions, promotional materials and other

20  associated packaging materials." Request No. 3 seeks "[a] complete copy of each advertisement

21  or promotional statement prepared, produced, printed, broadcast, made available to anyone in any

22  manner via the Internet, or otherwise used or disseminated in any way in connection with the

23  CONTESTED MGA PRODUCTS." Request No. 4 seeks "[a] complete copy of each

24  COMMUNICATION, advertisement, promotional statement that provides a basis for any claim

25  by [MGA] against MATTEL." Request No. 13 seeks "[a]ll DOCUMENTS RELATING TO any

26  revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed

27

28

**EXHIBIT 2**
**PAGE 27**

1   alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA

2   PRODUCTS." Request No. 18 seeks "[a]ll DOCUMENTS RELATING TO the marketing,

3   advertising, promotion, licensing, offering for sale or sale of the CONTESTED MGA

4   PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans,

5   sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs,

6   advertisements, brochures, displays and Internet publications."

7         During the meet and confer process, MGA agreed to produce documents responsive to

8   Request Nos. 1, 3, 4, 13 and 18. Kidman Decl., Ex. 14. In its subsequent supplemental

9   responses, however, MGA responded that it would produce responsive documents "visible to the

10  consuming public at the point of purchase," "made available to the public," or "presented to the

11  consuming public." MGA's Supp. Response, Kidman Decl., Ex. 8 and 16.

12        Mattel contends that the requested documents and items are relevant to MGA's claim of

13  "serial copying," whether or not they are seen by the consuming public. Mattel also contends that

14  the documents it seeks are relevant to any claim by MGA of "post sale confusion." Furthermore,

15  Mattel argues that MGA's restrictions on discovery are unreasonable in light of MGA's own

16  claimed trade dress, which MGA alleges extends to the entirety of MGA's marketing techniques

17  and product appearance. Mattel also contends that Request No. 13 seeks documents that are

18  directly relevant to MGA's claim that Mattel systematically modified its products to increase their

19  similarity to MGA's products over time.

20        In its opposition brief, MGA does not attempt to refute any of Mattel's relevancy

21  arguments above, relying instead on its argument that these requests are premature until Judge

22  Larson issues a ruling. Judge Larson, however, issued an order on July 5, 2007. Accordingly, the

23  requests are no longer premature. The subject requests are relevant and not unduly burdensome.

24  MGA is ordered to produce all non-privileged documents that are responsive to Request Nos. 1,

25  3, 4, 13 and 18.

26  //

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                                              8

EXHIBIT ___2___
PAGE ___28___

1   <u>Request Nos. 5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159</u>

2         In its opposition brief, MGA agrees to produce documents responsive to Request Nos. "5-

3   8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159." MGA's Opposition at p. 3.  Later in its

4   opposition brief, however, MGA contends that Request Nos. 55 and 56 are overbroad and

5   burdensome.  <u>See</u> MGA's Opposition at pp. 3 and 8.  Request No. 55 seeks production of "[a]ll

6   periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical,

7   that mention the CONTESTED MGA PRODUCTS that have been published since January 1,

8   1999." Request No. 56 seeks "[a]ll television or radio broadcasts or cablecasts that mention the

9   CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999." MGA

10  contends that these requests encompass, among other things, every single advertisement MGA

11  ever ran in connection with BRATZ or any of the other products at issue.

12        Mattel contends that Request Nos. 55 and 56 are designed to obtain documents that may

13  contain admissions relevant to various issues in the case, including admissions regarding the

14  origin and timing of the products at issue; the performance of the contested products or MGA as a

15  whole, which may undercut MGA's claims for damages; and statements that might reveal that

16  MGA had access to confidential Mattel information.

17        Although Request Nos. 55 and 56 encompass potentially relevant documents, they are

18  overbroad.  They require MGA to produce every single advertisement MGA ever ran in

19  connection with all of the products at issue.  The requests are not limited in any respect to the

20  subjects of interest to Mattel, i.e., the origin and timing of the products at issue.  Furthermore,

21  Mattel has utilized other document requests and depositions to obtain the type of evidence it now

22  seeks.

23        Accordingly, Mattel's motion is granted as to Request Nos. 5-8, 16-17, 19-20, 27, 37-40,

24  43, 52, and 157-159 to ensure a deadline for production, and denied as to Request Nos. 55 and 56

25  pursuant to Rule 26(b)(2), Fed.R.Civ.P.

26  //

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

9

EXHIBIT 2
PAGE 29

**Request Nos. 9, 10, 12**

Request Nos. 9, 10 and 12 call for "[a]ll DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale and ownership of products and packaging" "that YOU contend provide a basis for any claim against MATTEL, whether or not such claim is in the COMPLAINT" (No. 9); "that YOU contend MATTEL copied or infringed" (No. 10); and related "COMMUNICATIONS" (No. 12).  During the meet and confer process, MGA agreed to produce "documents sufficient to show the timing of, and relevant facts" regarding the following products on the following topics:

- "First generation 'Bratz'" line, including packaging – invention, creation, origin, conception, authorship, design, development, sale and ownership;
- "Bratz" "Wintertime Wonderland" line, including packaging – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Sportz" Cloe, including packaging – invention, creation, origin, conception, authorship and first sale;
- "Bratz" "Sun-Kissed Summer" line, including packaging and playset – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Formal Funk" line –invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Runway Disco," including packaging – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Funky Fashion Makeover Head," including packaging – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Petz," including packaging – invention, creation, origin, conception, authorship, and first sale;

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 2
PAGE 30

1    • "4-Ever Best Friends," including packaging -- invention, creation, origin, conception,

2    authorship, and first sale;

3    • "Mommy's Little Patient" -- invention, creation, origin, conception, authorship, and first

4    sale;

5    • "AlienRacers," including logo -- invention, creation, origin, conception, authorship, and

6    first sale; and

7    • "Bratz" "Diamondz" line -- invention, creation, origin, conception, authorship, and first

8    sale.

9    Kidman Decl., Ex. 14.  In response to Request No. 9, MGA also agreed to produce documents

10   containing development, production and sales information for the product(s) affected by the hair

11   shortage allegedly caused by Mattel and "sufficient to show the timing of and relevant facts

12   regarding the shortage and its effect on MGA." Id.  Thereafter, MGA asserted objections to these

13   requests in its May 31, 2007 supplemental responses.  In opposition to Mattel's motion, however,

14   MGA restated that it would produce documents responsive to these requests consistent with its

15   prior meet and confer letter.  MGA's Opposition at p. 5.

16         Mattel contends that MGA's agreement to produce documents is insufficient because

17   MGA has limited its production to documents "sufficient to show."  MGA's opposition brief fails

18   to address Mattel's argument.  Instead, MGA merely asserts that it agreed to produce documents

19   responsive to Request Nos. 9, 10 and 12 during the meet and confer process, and therefore

20   Mattel's motion should be denied as moot.

21         Request Nos. 9, 10 and 12 clearly seek relevant information, and MGA has failed to

22   justify why its production should be limited to documents "sufficient to show."  Therefore,

23   Mattel's motion is granted as to Request Nos. 9, 10 and 12.

24   **Request Nos. 26, 29, 30, 32,-36, 45, 48-51, 118, 137 and 166**

25         In its two meet and confer letters MGA agreed to produce, subject to its General and

26   Specific Objections, documents responsive to Request Nos. 26, 29, 30, 32-36, 45, 48-51, 118, 137

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                            11

EXHIBIT 2
PAGE 31

1   and 166. Kidman Decl., Ex. 14. Mattel points out, however, that MGA's May 31, 2007

2   supplemental responses are inconsistent insofar as the responses indicate that MGA continues to

3   object to some of the requests or otherwise agrees to produce only a limited portion of documents

4   responsive to other requests. Mattel's Reply Brief at p. 7. Nevertheless, in its opposition brief,

5   MGA reaffirms its earlier agreement to produce all responsive documents, and states that it

6   considers Mattel's motion to be moot. See MGA's Opposition at pp. 5-6. Mattel's motion is

7   granted as to this category of requests.

8   **Request Nos. 65-117 and 119**

9        In its opposition brief, MGA agrees to produce documents responsive to Mattel's Request

10   Nos. 65-117 and 119 now that Judge Larson issued an order denying MGA's motion to dismiss

11   Mattel's trade secret claims. MGA's Opposition at pp. 2 and 6. Mattel's motion is granted as to

12   these requests.

13   **Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164**

14        MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164 are overbroad

15   and unduly burdensome. Mattel insists that they are not. More specifically, Mattel contends that

16   the requests seek documents regarding MGA's alleged theft of Mattel's trade secrets, and in

17   particular, the theft of trade secrets through targeting and hiring current and former Mattel

18   employees.

19        Request No. 42 seeks "[a]ll COMMUNICATIONS between [MGA] and any individual

20   while the individual was employed by MATTEL." Although the request may encompass relevant

21   documents, it is overbroad insofar as it requires production of all communications, regardless of

22   subject matter. Furthermore, the request is objectionable to the extent it seeks documents that are

23   equally available to Mattel. Therefore, Mattel's motion is denied as to Request No. 42 pursuant

24   to Rule 26(b)(2), Fed.R.Civ.P.

25        Request No. 54 seeks "[a]ll DOCUMENTS RELATING TO any COMMUNICATION by

26   [MGA] with any news organization regarding the CONTESTED MGA PRODUCTS or the

27

28

EXHIBIT  2
PAGE  32

1   CONTESTED MATTEL PRODUCTS." Once again, the request encompasses potentially

2   relevant documents, however it is overbroad, seeking all documents relating to any

3   communications by MGA with any news organization.  Furthermore, the request seeks documents

4   that are of relatively minimal relevance to the claims and defenses in the case.  Therefore,

5   Mattel's motion is denied as to Request No. 54 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

6        Request Nos. 58 seeks "[a]ll DOCUMENTS RELATING TO publicity by [MGA] or

7   about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to

8   advertising, media releases, and public relations material."  This request is also overbroad in that

9   it seeks all documents relating to publicity by MGA about its products at issue in the litigation.

10  Mattel's motion is therefore denied as to Request No. 58 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

11       Request No. 59, asks for "[a]ll DOCUMENTS RELATING TO any effort by [MGA] to

12  recruit employees or contractors since January 1, 1999, including but not limited to advertising,

13  media releases, brochures, articles, catalogs, handbooks, and public relations material."  The

14  request is overbroad insofar as it requires production of all documents relating to MGA's

15  recruiting, including for instance, recruiting from competitors other than Mattel.  Mattel's motion

16  is therefore denied as to Request No. 59 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

17       Request No. 60 seeks "[a]ll DOCUMENTS RELATING TO the hiring, engagement, or

18  retention by [MGA] of any former or current MATTEL employee or contractor since January 1,

19  1999, including but not limited to all employment agreements and agreements RELATING TO

20  confidentiality or the invention, authorship, or ownership of any concept or product."  Request

21  No. 138 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON RELATING TO

22  the departure from MATTEL of any current or former MATTEL employee or contractor."

23  Request No. 139 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON

24  RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current

25  or former MATTEL employee or contractor.  Request No. 140 seeks "[a]ll

26  COMMUNICATIONS between [MGA] and any current or former MATTEL employee or

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT 2
PAGE 33

1    contractor RELATING TO the ownership of any idea, concept, design, or product. Unlike the

2    previous requests, Request Nos. 60, 138, 139 and 140 are reasonably tailored to seek documents

3    central to Mattel's allegation that MGA stole its trade secrets through targeting and hiring current

4    and former Mattel employees. MGA has not carried its burden of establishing that it would be

5    unduly burdensome to comply with these requests. Accordingly, Mattel's motion is granted as to

6    Request Nos. 60, 138, 139 and 140.

7        Request No. 160 seeks "[a]ll DOCUMENTS received from MATTEL (whether directly

8    or indirectly) by [MGA] at any time since January 1, 1999." Request No. 161 seeks "[a]ll

9    DOCUMENTS that [MGA has] reason to believe were created by or originated from MATTEL,

10   other than MATTEL products that [MGA] purchased at retail." Request No. 164 seeks "[a]ll

11   DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by,

12   any government entity RELATING TO the CONTESTED MGA PRODUCTS or the

13   CONTESTED MATTEL PRODUCTS." These three requests are also reasonably tailored to seek

14   documents that could support Mattel's allegations of trade secret theft. MGA has failed to

15   establish that it would be unduly burdensome to comply with these requests. Mattel's motion is

16   granted as to Request Nos. 160, 161 and 164.

17                              IV. CONCLUSION

18       For the reasons set forth above, Mattel's motion is granted as to Request Nos. 1, 3-10, 12,

19   13, 16-20, 26, 27, 29, 30, 32-40, 43, 45, 48-52, 60, 65-117, 118, 119, 137-140, 157-161, 164 and

20   166, and denied as to Request Nos. 42, 54-56, 58, 59. MGA shall produce, without limitation, all

21   non-privileged responsive documents in accordance with this Order no later than August 30,

22   2007. Mattel's request for sanctions is denied.

23       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

24   Master, Mattel shall file this Order with the Clerk of Court forthwith.

25   Dated: August 13, 2007

                                        HON. EDWARD A. INFANTE (Ret.)
26                                              Discovery Master

27

28
     Bryant v. Mattel, Inc.,                                              14
     CV-04-09049 SGL (RNBx)

                              EXHIBIT 2
                              PAGE 34

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 13,
2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART
MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA;
DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail
addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on August 13, 2007, at San Francisco, California.

_____
Sandra Chan

EXHIBIT  2
PAGE  35

# EXHIBIT 3

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6                    UNITED STATES DISTRICT COURT

7                   CENTRAL DISTRICT OF CALIFORNIA

8                          EASTERN DIVISION

9

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No.1100049530
12              Plaintiff,

13       v.                                Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                 **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION FOR PROTECTIVE ORDER
                                           REGARDING "POLLY POCKET"
17  CONSOLIDATED WITH                      DOCUMENTS**
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21                        I.  INTRODUCTION

22       On March 30, 2007, Mattel, Inc. ("Mattel") submitted its Motion For Protective Order

23  Regarding "Polly Pocket" Documents.  Pursuant to Rule 26(c), Fed.R.Civ.P., Mattel seeks a

24  protective order to limit the scope of MGA Entertainment, Inc.'s ("MGA") and Carter Bryant's

25  ("Bryant") subpoenas for production of documents relating to Polly Pocket to only those

26  documents that relate to a single Polly Pocket commercial identified by MGA in an interrogatory

27

28
    Bryant v. Mattel, Inc.,                                                  1
    CV-04-09049 SGL (RNBx)

EXHIBIT  3
PAGE  36

1   response.  On April 6, 2007, MGA submitted its opposition brief, and on April 11, 2007, Mattel

2   submitted a reply brief.  The matter was heard via telephonic conference on April 19, 2007.

3   Having considered the motion papers and comments of counsel at the hearing, Mattel's motion

4   for a protective order is granted in part and denied in part.[1]

## II. BACKGROUND

6       This consolidated action includes MGA's claims for unfair competition against Mattel.

7   Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

8   products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

9   packaging and Bratz television commercials.

10      On March 7, 2007 and March 12, 2007, MGA and Bryant issued subpoenas to three of

11  Mattel's advertising agencies:  Young & Rubicam Brands, Peterson Milla Hooks, Inc., and

12  Ogilvy & Mather Worldwide.  The subpoenas seek, among other things, documents relating to

13  Mattel's products, including the Polly Pocket line of products.  See Request Nos. 3, 4, 7, 12, 13,

14  and 14.  The subpoenas define Polly Pocket as "each image, character, logo, doll, toy, accessory,

15  product, packaging or other thing or matter that is or has ever been manufactured, marketed or

16  sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise

17  commonly known as, or sold and marketed under the POLLY POCKET trademark or trade

18  dress."  The requests at issue are set forth below:

19      Request No. 3:  All DOCUMENTS REFERRING OR RELATING TO any focus

20      group for "MY SCENE," "POLLY POCKET," or "ACCELERACERS" products

21      and which also REFER OR RELATE TO "BRATZ," "ALIEN RACERS," or

22      MGA.

23      Request No. 4:  All DOCUMENTS REFERRING OR RELATING TO any

24      participant comments from any focus group for "MY SCENE," "POLLY

---

26      [1] Pursuant to the Order for Appointment Of A Discovery Master, dated December 6, 2006, the undersigned is authorized to resolve disputes regarding third party subpoenas.  See Order at 3-4, 6.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 3
PAGE 37

POCKET," or "ACCELERACERS" products and which also REFER OR

RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

Request No. 7: All DOCUMENTS REFERRING OR RELATING TO any

MARKET RESEARCH REFERRING OR RELATING TO "MY SCENE,"

"POLLY POCKET," or "ACCELERACERS" or MATTEL, and which also

REFER OR RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

Request No. 12: All DOCUMENTS REFERRING OR RELATING TO proposed

or actual advertisements for "MY SCENE," "POLLY POCKET," OR

"ACCELERACERS" products and which also REFER OR RELATE TO

"BRATZ," "ALIEN RACERS," or MGA.

Request No. 13: All DOCUMENTS REFERRING OR RELATING TO

directives, suggestions, or instructions from MATTEL to create advertisements

for "MY SCENE," "POLLY POCKET," OR "ACCELERACERS" products using

elements that are similar to or the same as elements used in advertisements for

"BRATZ," "ALIEN RACERS," or MGA products.

Request No. 14: Copies of all advertisements for "BRATZ," "ALIEN RACERS,"

or MGA products that YOU consulted or reviewed to create advertisements for

"MY SCENE," "POLLY POCKET," or "ACCELERACERS" products.

(collectively referred to hereinafter as the "Polly Pocket Requests"). See Decl. of B. Dylan

Proctor in Support of Mattel's Motion for Protective Order, Exs. 1-3.

    Mattel served objections to the subpoenas and requested a meet and confer with MGA and

Bryant regarding the scope of the Polly Pocket Requests. The parties met and conferred on

March 27, 2007. MGA asserted that the Polly Pocket Requests sought information relevant to

MGA's claims that Mattel has serially copied and imitated MGA's commercials. MGA pointed

out that it is currently aware of at least one Polly Pocket commercial that copied elements from a

MGA Bratz commercial. More specifically, in response to a contention interrogatory, MGA

identified twenty-two separate instances of alleged serial copycatting and imitating, one of which

was that "Mattel filmed a 'Polly Pocket' commercial in the same mall and featuring the same

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 3
PAGE 38

1   escalator as appeared in a previous 'Bratz' commercial." <u>See</u> MGA's Second Supplemental

2   Responses to Mattel's First Set of Interrogatories re Claims of Unfair Competition, Response to

3   Interrogatory No. 6.  MGA asserted that it was entitled to discovery to determine whether

4   Mattel's advertising agencies have documents evidencing plans, strategies or intentions to

5   copycat or imitate MGA commercials for this or any other Polly Pocket commercials in the past

6   or future.  Further, MGA asserted that the Polly Pocket Requests sought only those documents

7   that specifically related to MGA and its products.  In contrast, Mattel asserted that the Polly

8   Pocket Requests were overbroad, seeking information far beyond the Polly Pocket commercial

9   identified in MGA's interrogatory response.  The parties later exchanged meet and confer letters,

10   but were unable to resolve their dispute.

11       In this motion, Mattel contends that it is entitled to a protective order because the Polly

12   Pocket Requests are overbroad, seeking documents that have no connection or relevance to the

13   claims or defenses in the case, other than the single television commercial identified in MGA's

14   interrogatory response.  Mattel also contends that MGA and Bryant should not be permitted to

15   engage in a fishing expedition for potential claims involving Polly Pocket products.  Furthermore,

16   Mattel contends that its Polly Pocket line of dolls is in direct competition with MGA's doll

17   products, and that MGA and Bryant are not entitled to issue sweeping subpoenas for the improper

18   purpose of discovering Mattel's confidential focus group and market research documents relating

19   to competing products and other matters that are not even alleged to be at issue.  Accordingly,

20   Mattel seeks an order limiting the scope of the Polly Pocket Requests to only those Polly Pocket

21   documents that relate to the television commercial MGA claims that Mattel copied.

22       MGA and Bryant contend that Mattel has not demonstrated the requisite "good cause" for

23   a protective order.  They contend that there has been no showing that a protective order is

24   necessary to avoid annoyance, embarrassment, oppression or undue burden or expense.  Further,

25   they contend that the Stipulated Protective Order is sufficient to address Mattel's confidentiality

26   concerns.  MGA and Bryant also contend that the Polly Pocket Requests are narrowly tailored to

27   seek documents relevant to the claims that Mattel has serially imitated and copycatted MGA's

    advertising for Bratz and other products.  Further, they contend that the Polly Pocket Requests

28

EXHIBIT 3
PAGE 39

1  target documents that specifically relate to MGA or its products.  Lastly, MGA and Bryant object

2  to limiting discovery to the one Polly Pocket commercial referenced in MGA's interrogatory

3  response.  They contend that such a limitation would prevent them from obtaining documents

4  "that reveal Mattel's plans to copy or imitate MGA commercials for other 'Polly Pocket'

5  commercials and related efforts by Mattel's ad agencies to effectuate or evaluate these plans,

6  simply because the plans are non-public and about which MGA and Bryant could not possibly

7  have any actual knowledge."  Opposition at p.7.

### III. DISCUSSION

8         Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

9  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

10 party." Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

11 permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

12 2004) ("District courts need not condone the use of discovery to engage in 'fishing

13 expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

14 (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

15 (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

16 the phrase "subject matter involved in the pending action," were intended to target discovery that

17 swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

18 litigate the issues presented by the pleadings but to develop new claims or defenses.).

19 Furthermore, Rule 26(c), Fed.R.Civ.P.,  provides, in pertinent part, that upon motion and for good

20 cause shown, "the court in which the action is pending may make any order which justice requires

21 to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

22 expense, including that certain matters not be inquired into, that the scope of the disclosure or

23 discovery be limited to certain matters, or that a trade secret or other confidential research,

24 development or commercial information not be revealed or be revealed only in a designated way."

25 Fed.R.Civ.P. 26(c).

26        Polly Pocket is not mentioned in either MGA's or Bryant's complaint or any of the other

27 pleadings filed in this consolidated action.  Rather, MGA's complaint alleges that Mattel's

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

**EXHIBIT 3**
**PAGE 40**

1  advertising and marketing schemes for two of its products – "My Scene" and "AcceleRacers" –

2  have "serially imitated" MGA's advertising.  MGA's complaint does not even reference the Polly

3  Pocket line of dolls or other Polly Pocket products.

4       The only proffered justification for the Polly Pocket Requests is an interrogatory response

5  in which MGA claims that one of Mattel's Polly Pocket commercials was allegedly filmed in the

6  same mall using the same escalator as an MGA Bratz commercial. [2]  The bulk of the Polly Pocket

7  Requests (Nos. 3, 4, 7, 12, 14), however, are far broader than the commercial identified by MGA.

8  The definition for Polly Pocket includes not just commercials, but  "each image, character, logo,

9  doll, toy, accessory, product, and packaging that is or has ever been manufactured, marketed or

10 sold by Mattel as part of a line of goods or merchandise known as, or sold and marketed under the

11 Polly Pocket trademark or trade dress.  Furthermore, MGA and Bryant seek all Polly Pocket focus

12 group documents, including participant comments which relate to Bratz, MGA or Alien Racers.

13 They seek all "market research" referring or relating to Polly Pocket and which also relate to

14 Bratz, MGA, or Alien Racers, where "market research" is defined as "any type of research, study,

15 survey or analysis of consumers or potential consumers of a product or potential product

16 including, without limitation, focus groups, consumer surveys, market analyses, behavioral

17 analyses and consumer research."  They also seek all documents relating to proposed or actual

18 advertisements for Polly Pocket dolls which also relate to Bratz, MGA or Alien Racers.  MGA

19 and Bryant also seek copies of all advertisements for Bratz, Alien Racers, or MGA products that

20 were consulted or reviewed to create any and all advertisements for Polly Pocket products.  These

21 requests are clearly overbroad, extending far beyond the single Polly Pocket commercial that

22 MGA has contended is actionable.  The Federal Rules of Civil Procedure do not permit MGA and

23

24

25  [2]  Like MGA's complaint, MGA's response to Mattel's contention interrogatory regarding the alleged serial imitating and copycatting focus primarily on Mattel's "My Scene" and "Acceleracers" products.

26      See MGA's Second Supplemental Responses to Mattel's First Set of Interrogatories re Claims of Unfair Competition

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

    6

EXHIBIT 3
PAGE 41

1   Bryant to use broad discovery requests, untethered to a claim or defense, to fish for new claims.

2   Rivera v. NIBCO, Inc., supra.  Because Request Nos. 3, 4, 7, 12, and 14 extend far beyond the

3   permissible scope of discovery under Rule 26, Fed.R.Civ.P., there is good cause to issue the

4   requested protective order limiting their scope to the Polly Pocket commercial identified in

5   MGA's interrogatory response.

6          In contrast, however, Request No. 13 is reasonably tailored to documents relevant to

7   MGA's unfair competition claim.  Evidence of directives, suggestions, or instructions from Mattel

8   to its advertising agencies to create advertisements for Polly Pocket using elements that are

9   similar to or the same as elements used in advertisements for "BRATZ," "ALIEN RACERS," or

10  MGA products could establish that Mattel intentionally used the same mall and escalator to

11  produce the Polly Pocket commercial identified in MGA's interrogatory response.  Therefore,

12  Mattel's motion is denied with respect to Request No. 13.

### IV. CONCLUSION

13         For the reasons set forth above, Mattel's motion for a protective order is granted in part

14  and denied in part.  Request Numbers 3, 4, 7, 12, and 14 of MGA's and Bryant's subpoenas to

15  Young & Rubicam Brands, Peterson Milla Hooks, Inc., and Ogilvy & Mather Worldwide relating

16  to Polly Pocket are hereby limited in scope to Polly Pocket documents relating to the single Polly

17  Pocket television commercial identified in MGA's interrogatory response.  Mattel's motion is

18  denied as to Request No. 13.

19         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

20  Master, Mattel shall file this Order with the Clerk of Court forthwith.

21

22  Dated: April 19, 2007

23                                              HON. EDWARD A. INFANTE (Ret.)

24                                              Discovery Master

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                           7

EXHIBIT 3
PAGE 42

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 19, 2007,

I served the attached ORDER GRANTING IN PART AND DENYING IN PART

MATTEL'S MOTION FOR PROTECTIVE ORDER REGARDING "POLLY POCKET"

DOCUMENTS" in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 19, 2007, at San Francisco, California.

Sandra Chan

**EXHIBIT _3_**
**PAGE _43_**

# EXHIBIT 4

1 | Hon. Edward A. Infante (Ret.)
  | JAMS
2 | Two Embarcadero Center
  | Suite 1500
3 | San Francisco, California  94111
  | Telephone:     (415) 774-2611
4 | Facsimile:       (415) 982-5287

5

6

UNITED STATES DISTRICT COURT

7

CENTRAL DISTRICT OF CALIFORNIA

8

EASTERN DIVISION

9

10

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530 |
| Plaintiff, | |
| v. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| MATTEL, INC., a Delaware corporation, | **ORDER GRANTING MATTEL'S**<br>**MOTION TO COMPEL PRODUCTION** |
| Defendant. | **OF DOCUMENTS AND**<br>**INTERROGATORY RESPONSES BY**<br>**MGA** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |

## I. INTRODUCTION

On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA"). On February 20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a reply brief. The matter was heard on March 5, 2007. Thereafter the motion was taken under submission pending the parties' submission of a proposed protective order, which was received

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT  4
PAGE  44

1    on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2    Mattel's motion to compel is granted.

3                                    II.  BACKGROUND

4         A.  Requests for Documents

5         In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6    became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7    categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8    court granted because of the short amount of time provided for compliance with the subpoena.

9    The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10   some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11   generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12        In 2005, the parties stipulated to supplementing their document productions on May 16,

13   2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14        In September of 2006, MGA made a supplemental production of documents.  On February

15   5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16   with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17   documents to replace earlier produced documents with legibility problems.

18        Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19   preliminary matter, Mattel contends that MGA's production is deficient because it contains

20   redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21   respect to essentially five categories of documents.  First, Mattel contends that MGA is

22   withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23   believes that MGA's production is incomplete based upon its review of documents that have been

24   produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25   of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26   previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                                            2

EXHIBIT  4
PAGE  45

1    contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2    responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3    show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs

4    purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's

5    Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of

6    what is or is not being withheld. Mattel also contends that MGA's objections based upon its

7    confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8    protective order in place. In addition, Mattel contends that MGA's objection to producing

9    documents relating to activities or conduct in foreign countries is wholly improper because those

10   documents may contain information relevant to Mattel's claims.

11          Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12   such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work

13   ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14   discovery purposes. Mattel contends that the works created by Bryant during his Mattel

15   employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16   a Bratz doll released at a particular time.[1]

17          Mattel next contends that MGA is improperly withholding documents about designs

18   Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19   be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to

20   explore whether such works and the profits from Bratz dolls other than the "first generation"

21   Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22   and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23   improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24   information as well as MGA's unfair competition claims.

25   _____

26          [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
     to compel Bryant to produce documents.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                                    3

EXHIBIT 4
PAGE 46

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10   damages; and (3) payments may show when and what trade secret information Bryant and other

11   defendants allegedly misappropriated from Mattel.

12   Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13   contends that all agreements between Bryant and MGA are relevant, not just the original

14   September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15   documents relating to MGA and Bryant's alleged joint defense agreement because such

16   information would be relevant to demonstrate bias and lack of credibility.

17   Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18   statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19   information may reveal relevant information about the date of creation of Bryant's Bratz

20   drawings.

21   In response, MGA denies withholding responsive documents and asserts that it has

22   produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23   that it has produced all responsive and relevant documents that it was able to locate in response to

24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26   motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4


EXHIBIT ___
PAGE ___

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market.  In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10        MGA next contends that Mattel's motion should be denied for the following additional

11   reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products.  MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides.  In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21        Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT  4
PAGE  48

1  in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2  Opposition at 24:9-12.[2]

3          Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4  and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5  refused to produce similar types of documents.  More significantly, MGA contends that Mattel's

6  requests for non-public witness statements are "a blatant attempt to avoid the discovery

7  limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8  imposed by this Court."  MGA's Opposition at 25:6-7.  MGA explains its position as follows.

9  MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA

14  was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale."  MGA's Opposition at 25:5-24.

18          Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25  _____

26      [2]  Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                                         6

EXHIBIT 4
PAGE 49

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2    files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3    MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4    in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5    MGA objects to producing documents relating to any testing performed to determine the date that

6    Bratz documents were created. MGA contends that such discovery is premature and should not

7    proceed until experts are designated.

8        B. Interrogatories

9        On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10   however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11   On May 30, 2006, MGA responded to the interrogatories.

12       Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13   Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14   because they lack substantive information and consist almost entirely of objections. MGA

15   responds that the motion is moot because it is prepared to provide supplemental responses to its

16   interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17   motion to compel responses to interrogatories.

18                                   III. DISCUSSION

19       A. Rule 26 of the Federal Rules of Civil Procedure

20       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22   party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28   Bryant v. Mattel, Inc.,                                                          7
     CV-04-09049 SGL (RNBx)

EXHIBIT ___4___
PAGE ___50___

1  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5  26(b)(2).

6       B. Document Requests

7            1. Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8               34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9       The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and  69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16       As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

22                     Design Documents for Unreleased Products

23       MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28
   Bryant v. Mattel, Inc.,                                                                              8
   CV-04-09049 SGL (RNBx)

EXHIBIT 4
PAGE 51

1   to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2   has been approved and entered as an order of the court.  MGA is ordered to produce design

3   documents for unreleased products that are responsive to Mattel's document requests in

4   accordance with the terms of the stipulation and order.

5                              Documents from MGA Hong Kong

6          Documents relating to activities or conduct in foreign countries are relevant and

7   discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8   Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9   provides reciprocal discovery from its subsidiaries.

10         Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13         Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15              2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16                 61, 63, 66, 67, 70, 88, 90, 91

17         Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21         As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  See Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25         //

26         //

27

28

Bryant v. Mattel, Inc.,                                                                9
CV-04-09049 SGL (RNBx)

                              EXHIBIT  4
                              PAGE  52

1      3. MGA's Payments to Bryant (Nos.43, 45)

2          MGA represents that it has already agreed to produce documents related to Bratz, without

3   limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless,

4   Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's

5   motion is granted with respect to request nos. 43 and 45.

6      4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

7          MGA represents that it has already agreed to produce non-privileged documents

8   responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9   relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or

10  indemnity agreements between MGA and Bryant .

11         Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12  Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any

13  responsive documents withheld on the basis of a privilege must be properly identified in a

14  privilege log.

15     5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,

16         41,

17         In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18  and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel

19  anticipates that these documents could provide evidence relating to the conception date for Bratz.

20         Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21  date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against

22  alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the

23  arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24  Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25  _____

26      [3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and
infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority
27  that prohibits Mattel's conduct.

28
    Bryant v. Mattel, Inc.,                                                                    10
    CV-04-09049 SGL (RNBx)

EXHIBIT   4
PAGE  53

1  that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2  documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3  protective order that prohibits the use of any documents or testimony for any purpose other than

4  the arbitration.  MGA, however, has not provided any evidence of the protective order.

5  Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6         6. Documents Regarding Date-Testing (Request No. 92)

7         Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8  from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9  testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12        The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15        C. Interrogatories

16        Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25  _____

26      [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28

EXHIBIT  4
PAGE 54

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2 when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses

3 will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5 conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6 tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7 before December 31, 2001, including a description of each person's role and the start and end

8 dates of each person's involvement. In response, MGA asserted numerous objections, but did

9 provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue. MGA's

11 objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.

12 Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13 for confidential, proprietary or commercially sensitive information, or seeks information

14 protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as

15 it fails to provide the description of each person's role and the start and end dates of each person's

16 involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17 5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19 embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for

20 the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22 December 31, 2001. In response, MGA asserted numerous objections and did not provide any

23 substantive information.

24    MGA's objections are without merit. The interrogatory clearly seeks information relevant

25 to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,

26 compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                          12

EXHIBIT 4
PAGE 55

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege. Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4        Interrogatory No.8 asks MGA to identify each and every embodiment of Angel. MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7        Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz. In response, MGA asserted numerous objections and did not provide any

10   substantive information.

11       The interrogatory seeks information relevant to establishing when Bryant first conceived

12   Bratz. Furthermore, MGA's boiler-plate objections are unsubstantiated. Accordingly, MGA is

13   ordered to provide a complete response to Interrogatory No. 9.

14       Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15   was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16   which each such instance occurred, the location of each show or exhibit, and the identity of

17   persons with knowledge of the shows or exhibits. In response, MGA asserted numerous

18   objections and provided the following information: Hong Kong Toy Fair in Hong Kong in or

19   about January 2001 and New York Toy Fair, New York, in or about February 2001.

20       Once again, MGA's boiler-plate objections are unsubstantiated. The information is

21   potentially relevant to establish when Bryant conceived Bratz. Further, the response is

22   incomplete insofar as it fails to identify any persons with knowledge. Therefore, MGA is ordered

23   to provide a complete response to Interrogatory No. 10.

24       Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25   including without limitation each office, home and cell phone number, in the name of, for the

26   benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT 4
PAGE 56


1    January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2    limitation any long-distance carrier) for each such number. In response, MGA asserted numerous

3    boiler-plate objections.

4        Once again, MGA has failed to substantiate any of its objections with supporting

5    declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to

6    provide a full response to Interrogatory No. 11.

7                                   IV. CONCLUSION

8        For the reasons set forth above, Mattel's motion to compel production of documents is

9    granted. MGA shall produce all non-privileged documents that are responsive to the requests

10   identified in this Order. Further, MGA shall produce all documents in un-redacted form, except

11   for redactions that are justified by the attorney-client privilege or work product doctrine. Mattel's

12   motion to compel interrogatory answers is also granted. MGA shall produce documents and

13   provide responses to interrogatories consistent with this Order, and produce a privilege log in

14   compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007. Mattel's request for

15   sanctions is denied.

16       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17   Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21   Dated: May 15, 2007

22                                    HON. EDWARD A. INFANTE (Ret.)
                                      Discovery Master
23

24

25

26

27

28
     Bryant v. Mattel, Inc.,                                              14
     CV-04-09049 SGL (RNBx)

EXHIBIT   4
PAGE   57

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in

the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT 4
PAGE 58

# EXHIBIT 5

1 | DIANA M. TORRES (S.B. #162284)
PAULA E. AMBROSINI (S.B. #193126)
2 | CARLOS M. LAZATIN (S.B. #229650)
O'MELVENY & MYERS, LLP
3 | 400 South Hope Street
Los Angeles, California 90071-2899
4 | Telephone: (213) 430-6000
Facsimile: (213) 430-6407
5 | email: dtorres@omm.com

6 | DALE M. CENDALI (of counsel, not admitted in
California)
7 | O'MELVENY & MYERS, LLP
7 Times Square
8 | New York, New York 10036
Telephone: (212) 326-2000
9 | Facsimile: (212) 326-2061

10 | Attorneys for Third Party,
MGA Entertainment, Inc.
11

12 | **ARBITRATION BEFORE**

13 | **ADR SERVICES, INC.**

14

15 | FARHAD LARIAN,                    **ADRS Case No.: 05-2096-ABH**

16 |          Plaintiff,               **[PROPOSED] PROTECTIVE ORDER**

17 |     v.                            ~~CJDA~~

18 | ISAAC LARIAN,

19 |          Defendant.

20

21

22

23

24

25

26

27

28

LA2:782144.1

**EXHIBIT  5**
**PAGE 59**

1. **PURPOSES AND LIMITATIONS**

This arbitration will involve the disclosure of documents and information that should be used only for the purpose of prosecuting, defending, or attempting to settle this arbitration and for no other purpose, including any other dispute involving any Party hereto or any non-party hereto.  Accordingly, the following Protective Order is hereby imposed upon the parties to this arbitration, Isaac Larian and Farhad Larian, and their employees, consultants, retained experts, counsel and support staff (the "Parties").

2. **SCOPE**

Protection is conferred by this Protective Order on all documents produced by third party MGA Entertainment, Inc. ("MGA") and MGA documents produced by any Party or third party  all information copied or extracted therefrom, all copies, excerpts, summaries, or compilations thereof, and all testimony presented to the arbitrator, and transcripts of such testimony from any current or former MGA employee or contractor pertaining to MGA's business.  ("Protected Material").

3. **DURATION**

The obligations imposed by this Protective Order shall remain in effect during and after this arbitration and until the parties, Isaac Larian **and** Farhad Larian, and MGA agree otherwise, in writing, or an arbitrator or court order otherwise directs.

4. **ACCESS TO AND USE OF PROTECTED MATERIAL**

4.1   **Basic Principles:**  The Parties may use Protected Material in connection with this case only for prosecuting, defending or attempting to settle this arbitration and may not use such material for any other purposes, including in connection with any other matters, including between the same parties.  Protected Material may be disclosed only to the categories of persons and under the conditions described in this Protective Order. When the arbitration has been terminated, the Parties must comply with the provision of section 5 below (FINAL DISPOSITION).  Protected Material must be stored and maintained by the Parties at a location and in a secure manner that ensure that access is

LA2:782144.1

- 2 -

EXHIBIT __5__
PAGE __60__

1  limited to the persons authorized and for the purposes permitted under this Protective

2  Order.

3      **4.2    Disclosure of Protected Material:**  Unless otherwise ordered by a court or

4  jointly permitted in writing by Isaac Larian *and* MGA, Protected Material may be

5  disclosed only to:

6          (a)      counsel of record in this arbitration and employees of said counsel to

7  whom it is reasonably necessary to disclose the information for this arbitration, and who

8  have specifically agreed to be bound by the terms of this Protective Order by executing

9  the undertaking attached hereto as Exhibit A;

10          (b)      experts to whom disclosure is reasonably necessary for this

11  arbitration, and who have specifically agreed to be bound by the terms of this Protective

12  Order by executing the undertaking attached hereto as Exhibit A;

13          (c)      the arbitrator and his personnel;

14          (d)      court reporters, their staffs, and professional vendors to whom

15  disclosure is reasonably necessary for this arbitration, and who have specifically agreed to

16  be bound by the terms of this Protective Order by executing the undertaking attached

17  hereto as Exhibit A;

18          (e)      witnesses in the arbitration to whom disclosure is reasonably

19  necessary, and who have specifically agreed to be bound by the terms of this Protective

20  Order by executing the undertaking attached hereto as Exhibit A; and

21          (f)      the author of the document or the original source of the information.

22      **4.3    Identifying Legend:**  Protected Material shall be appropriately identified

23  and marked with the legend "Confidential" or "Confidential -- Attorneys Only."

24  Transcripts shall further include a statement substantially in the following form:

25          This transcript contains material subject to Protective Order.  The transcript may not

26          be used for any purpose other than this arbitration and its contents may not be

27          disclosed to anyone other than those persons permitted to access Protected Material

28          under the terms of the Protective Order.

LA2:782144.1                                -3-

EXHIBIT 5
PAGE 61

1        **4.4**    **Challenge to Designation <u>of Protected Material</u>:** To the extent any Party

2    wishes to challenge the designation of Protected Material, that Party shall first make a

3    good faith attempt to confer with the other Party and MGA to determine whether they are

4    amenable to a change in the designation of Protected Material.  In the event the Parties

5    and MGA are unable to reach agreement, either Party may bring a challenge to the

6    designation before the arbitrator, who shall rule on the designation consistent with the

7    terms and principles of this Protective Order.

8        **4.5**    **<u>Other Restrictions on Access to and Use of Protected Material</u>:** No

9    party or person shall be permitted to share or disseminate the documents produced by

10   MGA or the transcripts of these proceedings to others (including any preliminary,

11   "rough," livenote version thereof) remove them from the arbitration, make copies of them,

12   or inform third parties of their existence or content or otherwise disclose the same to

13   anyone, unless compelled by law.

14       In short, this is a private proceeding; whatever may be disclosed about MGA's

15   business, in privacy and confidence during the course of the arbitration, should remain

16   private and confidential both during – and after – the arbitration.

17   **5.**    **FINAL DISPOSITION**

18       Unless otherwise ordered or jointly agreed in writing by Isaac Larian,

19   Farhad Larian and, MGA (to the extent the Protected Material pertains to MGA or MGA's

20   products or property), within 10 days after the final termination of this arbitration and any

21   appeal (or, if no notice of appeal is filed, the deadline for filing a notice of appeal), all

22   Protected Material must be returned to its original source or destroyed, including all

23   copies, abstracts, compilations, summaries or any other form of reproducing or capturing

24   any of the Protected Material.  Whether the Protected Material is returned or destroyed,

25   each Party must submit a written certification to the other Party, *and* the person or entity

26   from whom the Protected Material was secured or subpoenaed, by the 10 day deadline

27   that identifies (by category, where appropriate) all of the Protected Material that was

28   returned or destroyed and that affirms that the Party has not retained any copies, abstracts,

LA2:782144.1                                     - 4 -

EXHIBIT  5
PAGE  62

1   compilations, summaries or other forms or reproducing or capturing any of the Protected

2   Material.  Notwithstanding this provision, counsel of record for each Party is entitled to

3   retain an archival copy of all pleadings, motion papers, legal memoranda, correspondence

4   or attorney work product.  Any such archival copies that contain or constitute Protected

5   Material, however, shall otherwise remain subject to this Protective Order.

6   **6.     PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED**
        **IN OTHER LITIGATION**

7

8           If a Party is served with a subpoena or an order issued in other litigation that

9   would compel disclosure of any Protected Material, the Party receiving the subpoena must

10  notify the other Party *and* the person or entity from whom the Protected Material was

11  secured or subpoenaed, in writing, immediately and in no event more than two business

12  days after receiving the subpoena or order.  Such notification must include a copy of the

13  subpoena or court order.

14          The Party receiving the subpoena also must immediately inform, in writing, the

15  party who caused the subpoena or order to issue in the other litigation that some or all of

16  the material covered by the subpoena or order is the subject of this Protective Order.  In

17  addition, the Party receiving the subpoena must deliver a copy of this Protective Order

18  promptly to the Party in the other action that caused the subpoena or order to issue.

19          The purpose of imposing these duties is to alert the interested parties to the

20  existence of this Protective Order and afford the Parties in this case *and* the person or

21  entity from whom the Protected Material was secured or subpoenaed, an opportunity to try

22  to protect whatever confidentiality interest such Party may have in the court from which

23  the subpoena or order issued.

24

25  SO ORDERED:

26  DATED: 11/16/05                    _____

27                                         ARBITRATOR

28

LA2:782144.1                         - 5 -

EXHIBIT  5
PAGE  63

1    UNDERTAKING RE
     PROTECTIVE ORDER
2

3                    UNDERTAKING OF _____
4

5

6    I, _____, declare:
7

8         My address is _____.
9    My present occupation is _____.
10

11        1.    I have received a copy of the Protective Order operative in this action,
12   ADRS Case No. 05-2096-ABH.  I have carefully read and understand the provisions of
13   the Protective Order.
14        2.    I will comply with all of the provision of the Protective Order.  I will hold in
15   confidence, and will not disclose to anyone other than those persons specifically
16   authorized by the Protective Order, and will not copy or use except for the proceedings
17   concerning the matters in issue between the parties, any and all Protected Material that I
18   receive.
19        Executed this ____ day of _____, at _____.  I declare under
20   penalty of perjury under the laws of California that the foregoing is true and correct.
21

22              _____
23

24

25

26

27

28

LA2:782144.1                              - 6 -

**EXHIBIT 5**
**PAGE 104**