# EXHIBIT 6

ORIGINAL

1   KAYE SCHOLER LLP
    Larry R. Feldman, Bar Number 45126
2   Robert M. Turner, Bar Number 44075
    J. Andrew Sjoblom, Bar Number 199369
3   1999 Avenue of the Stars, Suite 1700
    Los Angeles, California 90067-6048
4   Telephone: (310) 788-1000
    Fax: (310) 788-1200
5
    Attorneys for Defendant
6   ISAAC LARIAN

7

8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10

11  FARHAD LARIAN,                    )   CASE NO. BC 301371
                                      )
12              Plaintiff,            )   [Assigned to the Honorable Rodney E.
                                      )   Nelson]
13       v.                           )
                                      )   STIPULATION AND [PROPOSED]
14  ISAAC LARIAN and DOES 1 through 50, )  PROTECTIVE ORDER
    inclusive,                        )
15                                    )
                                      )
16              Defendants.           )        46
                                      )

17

18       THIS STIPULATION is made with reference to the following facts:

19       A.     Documents have been produced by non-parties Morad Zarabi and National

20  Business Appraisers, LLC and have been marked as "BD" and/or "MZ." Some of these

21  documents contain confidential financial, commercial, personal or proprietary information.

22  These documents are identified on Exhibit "A". The documents and the information they

23  contain are hereinafter collectively referred to as "Confidential Material."

24       B.     The parties want to protect the unauthorized use or disclosure of the

25  Confidential Material. Plaintiff's agreement to this protective order is done as an

26  accommodation to defendant and is not intended as an agreement that any information

27  contained in Exhibit A meets the standard under California law for such protection.

28       NOW, THEREFORE, THE PARTIES HEREBY STIPULATE AND AGREE AS

LARF08(1).wpd              STIPULATION AND [PROPOSED] PROTECTIVE ORDER

EXHIBIT 6
PAGE 65

FOLLOWS:

1.     This stipulation and protective order only applies to documents marked "ED" and/or "MZ" and shall not apply to or limit a party's use of documents or information (a) obtained by the party independently of the subpoenas heretofore by plaintiff Farhad Larian in this action, or (b) belonging to that party or containing its financial, commercial, personal or proprietary information.

2.     Persons obtaining access to "Confidential Material" specified in Exhibit A under or as a result of this Protective Order shall use the information only for preparation and trial of this lawsuit (including appeals and retrials, and/or any arbitration proceedings), and shall not use such information for any other purpose, including business, governmental, commercial, administrative, or judicial proceedings. To that end, the parties agree that the Confidential Material specified in Exhibit A shall not be disclosed to other persons except pursuant to the terms of this Protective Order and the rules of law incorporated herein.

3.     Any party to this action may, at any time, request the modification or termination of this Protective Order. Such a request may be granted by the Court only after due notice and hearing and upon a showing of good cause.

4.     Confidential Material specified in Exhibit "A" may only be disclosed to the parties hereto and to their counsel who have been advised of and agreed to be bound by this Protective Order; to the partners, associates, secretaries, paralegal assistants, and employees of said counsel who have been advised of and agreed to be bound by this Protective Order; and to court officials involved in this lawsuit (including court reporters, videographers operating recording equipment at depositions), and any special master, arbitrator or ADR personnel who the parties have agreed to and/or before whom the parties have been ordered to appear. Confidential Material may also be disclosed to:

            a. Any person designated by the Court in the interest of justice, upon such terms the Court may deem proper; and

            b. Persons noticed for depositions; persons preparing as trial witnesses;

1

EXHIBIT   6
PAGE   66

1    outside consultants; co-counsel or experts retained for the purpose of assisting counsel

2    in the lawsuit; third parties engaged solely in one or more aspects of organizing, filing,

3    coding, converting, storing, or retrieving data or designing programs for handling of

4    data connected with the lawsuit, provided however, that in all such cases the

5    individual to whom disclosure is to be made under subparagraph (b) has been advised

6    of this Protective Order and has agreed to comply with it.

7        5.    Nothing contained in this Protective Order is intended to prevent or govern the

8    use of Confidential Material at trial. In the event that the parties are unable to agree to the

9    procedures for the use of Confidential Material at trial, any party may take such action with

10   the Court as it deems necessary and appropriate to resolve the dispute.

11       6.    If a party intends to file or lodge with the Court Confidential Material, to the

12   extent applicable, the parties shall comply with the procedures set forth in California Rules of

13   Court 243.1-243.2 for records sealed or proposed to be sealed with the Court, and the

14   Confidential Material shall be placed in a sealed envelope or other container marked on the

15   outside with the title of this action, identification of each document within and a statement

16   substantially as follows:

17           Confidential Information – Subject to Protective Order. This
             envelope contains material filed [lodged] under seal for the
18           purpose of this litigation only. It shall not be opened by a person
             other than the Court except by Court Order or by written
19           stipulation of all parties filed with the Clerk of this Court, and is
             otherwise subject to the provisions of the Protective Order
20           entered in this action on [date].

21   If Confidential Material is to be part of the record on appeal or used in an original proceeding

22   under California Rule of Court Rule 56, the parties shall comply with California Rules of

23   Court 12.5 and 56(e).

24       7.    In the event that any question is asked at a deposition which, in the opinion of

25   counsel for any party, calls for the disclosure of Confidential Information specified in Exhibit

26   "A", the witness shall nevertheless answer such question fully and completely, provided that

27   those in attendance are persons qualified to receive the information pursuant to the terms of

28   this Order. Counsel for the party claiming confidentiality shall designate those portions of

KAYE SCHOLER llp

2

LA.KOS (Jlxxpd)     STIPULATION AND [PROPOSED] PROTECTIVE ORDER

EXHIBIT 6
PAGE 67

1  the deposition for which a claim of confidentiality is made at the deposition by making a

2  statement for inclusion in the deposition transcript, including specifying on the record the

3  beginning and ending portions of the deposition for which confidentiality is claimed, with

4  such portions thereafter being marked on the record by the Court Reporter and/or

5  videographer as contemplated below, and afterwards by notifying opposing counsel, in

6  writing, within 30 days after receiving the deposition transcript of the page and line of each

7  portion of the transcript deemed "Confidential."

8          In the event a party decides to designate testimony as "Confidential" not so designated

9  during the taking of the deposition itself, a party may give notice of additional testimony to

10  be designated as "Confidential" within the 30-day period after receipt of the deposition

11  transcript.  The notice must include specific page and line designations.  Absent a designation

12  as "Confidential" during the taking of the deposition or within the 30-day period specified

13  herein, testimony is not subject to this agreement.  Until a specific designation as

14  "Confidential" is made by a party, testimony and evidence is not covered by this agreement.

15          As soon as reasonably possible, all such designated portions of the transcript shall be

16  marked with the legend "Confidential."  If any portion of a deposition is designated as

17  "Confidential," then until expiration of the 30-day period or until such time as notification is

18  received, counsel and the reporter will treat the entire transcript as if it had been designated

19  as containing Confidential Information.  If no party timely designates information as

20  confidential in a deposition, then none of the transcript or its exhibits with the exception of

21  those exhibits identified on Exhibit "A" of the Protective Order, will be treated as

22  confidential; if a timely designation is made, the confidential portions and the exhibits shall

23  be treated as confidential in the manner described in other parts of this Protective Order.

24  DATED: August 21, 2004                    KAYE SCHOLER, LLP

25

26                                 By _____

27                                       Larry R. Feldman
                                    Attorneys for Defendant ISAAC LARIAN

28

*KAYE SCHOLER llp*

3

EXHIBIT 6
PAGE 68



1  DATED: August ___, 2004
       September 20

HOWARTH & SMITH

By: _____
       Brian D. Bubb
       Attorneys for Plaintiff, FARHAD LARIAN

IT IS SO ORDERED.

DATED: August 23 2004

_____
Judge of the Superior Court
       RODNEY E. NELSON

4
LARPOZ(1).wpd

STIPULATION AND [PROPOSED] PROTECTIVE ORDER

P.006   2132601197                     FIRST LEGAL          09:47   SEP-20-2006

EXHIBIT 6
PAGE 69

## EXHIBIT "A"

1. The Appraisal Report (ED2-163).

2. October 16, 2000 Letter from Ellis Stern to National Business Appraisers and enclosures (ED164-178).

3. Income Tax Returns of MGA for 1994 through 1999 (ED179-465).

4. Audited Financial Statements of MGA for 1993 through 1998 (ED467-524).

5. Trial Balances and similar MGA accounting data (ED525-642).

6. Confidential reconciliations (MZ942-1948).

KAYE SCHOLER llp

LARFOE(1).wpd

5

STIPULATION AND [PROPOSED] PROTECTIVE ORDER

EXHIBIT 6
PAGE 70

00/00/2006        08:41        FIRST LEGAL SUPPORT    FAX (213) 250-1107

KAYE SCHOLER LLP
POS by Mail/Federal Court 9/10

## PROOF OF SERVICE

STATE OF CALIFORNIA      )
                         )   ss
COUNTY OF LOS ANGELES    )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is KAYE SCHOLER LLP, 1999 Avenue of the Stars, Suite 1700, Los Angeles, California 90067-6048P.

On September 21, 2004, I served the foregoing document described as: **STIPULATION AND [PROPOSED] PROTECTIVE ORDER** by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Don Howarth, Esq.
Suzelle M. Smith, Esq.
Brian D. Bubb, Esq.
Robert D. Brain, Esq.
HOWARTH & SMITH
800 Wilshire Boulevard, Suite 750
Los Angeles, California 900017

[  ] **BY FACSIMILE** The above-referenced documents (without exhibits and attachments thereto) were transmitted via facsimile transmission to the addressee(s) as indicated above on the date thereof. The transmission was reported as completed and without error. Executed on September 21, 2004, at Los Angeles, California.

[XXX] **BY U.S. MAIL** (I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.) Executed on September 21, 2004, at Los Angeles, California.

[  ] **BY FEDERAL EXPRESS** I am readily familiar with KAYE SCHOLER LLP's business practices of collecting and processing items for pick-up and next business day delivery by Federal Express. Under said practices, items to be delivered the next business day are either picked up by Federal Express or deposited in a box or other facility regularly maintained by Federal Express in the ordinary course of business on that same day with the cost thereof billed to KAYE SCHOLER LLP's account. I placed such sealed envelope for delivery by Federal Express to the offices of the addressee(s) as above on the date hereof following ordinary business practices. Executed on September 21, 2004, at Los Angeles, California.

1

EXHIBIT ____
PAGE ____

1   [XXX]   **STATE** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

2   [  ]   **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

3

4

5

6

7   _____
    John Broderick

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 7

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2   (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5   (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12  | CARTER BRYANT, an individual,     | CASE NO. CV 04-9049 SGL (RNBx) |
13  |                     Plaintiff,     | Consolidated with              |
14  |         v.                         | Case No. CV 04-09059           |
                                           Case No. CV 05-02727
15  | MATTEL, INC., a Delaware          | MATTEL, INC.'S FIRST SET OF     |
    | corporation,                       | REQUESTS FOR DOCUMENTS AND       |
16  |                                    | THINGS RE CLAIMS OF UNFAIR       |
    |                     Defendant.     | COMPETITION TO MGA               |
17  |                                    | ENTERTAINMENT, INC.              |
18  | AND CONSOLIDATED CASES.           |

19
20
21          Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Mattel,

22  Inc. hereby requests that MGA Entertainment, Inc. ("MGA") respond to these

23  document requests ("Requests") and make available for inspection and copying

24  originals of the following documents within 30 days of service at the offices of

25  Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th

26  floor, Los Angeles, CA 90017.  MGA shall be obligated to supplement responses to

27  these requests at such times and to the extent required by Rule 26(e) of the Federal

28  Rules of Civil Procedure.

07975/1928319.2

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 73

I.   **DEFINITIONS**

For purposes of these Requests, the following definitions apply:

A.   The terms "YOU," "YOUR" and "MGA" mean MGA Entertainment, Inc. and any individual or entity acting directly or indirectly by, through, under or on behalf of MGA Entertainment, Inc., including but not limited to current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of MGA Entertainment, Inc. and any corporation, partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and any other PERSON acting on its behalf.

B.   The term "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

C.   "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 1001 of the Federal Rules of Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all writings, including but not limited to handwriting, typewriting, printing, image, photograph, photocopy, digital file of any kind, transmittal by (or as an attachment to) electronic mail (including instant messages and text messages) or facsimile, video and audio recordings, and every other means of recording upon any tangible thing, any form of communication or representation, and any record thereby created, regardless of the manner in which the record has been stored, and all non-identical copies of such DOCUMENTS, in the possession, custody, or control of YOU, YOUR counsel, or any other PERSON acting on YOUR behalf.

D.   The term "COMMUNICATION," in the plural as well as the singular, means any transmittal and/or receipt of information, whether such was oral or written, and whether such was by chance, prearranged, formal or informal, and

-2-

EXHIBIT 7
PAGE 74

1 specifically includes, but is not limited to, conversations in person, telephone
2 conversations, electronic mail (including instant messages and text messages),
3 voicemail, letters, memoranda, statements, media releases, magazine and newspaper
4 articles, and video and audio transmissions.

5       E.    "EMBODIMENT" means any representation of the identified
6 product or its retail packaging, whether two-dimensional or three-dimensional, and
7 whether in tangible, digital, electronic or other form, including but not limited to all
8 works, designs, artwork, sketches, drawings, illustrations, representations,
9 depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models,
10 samples, reductions to practice, developments, inventions and/or improvements, as
11 well as all other items, things and DOCUMENTS in which any of the foregoing are
12 or have been expressed, embodied, contained, fixed or reflected in any manner,
13 whether in whole or in part.

14       F.    "CONTESTED MGA PRODUCTS" means the CONTESTED
15 BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the
16 CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the
17 CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED
18 MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS
19 PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has
20 ever been known as, or sold, offered for sale, licensed, offered for license or
21 marketed under the name or terms "Bratz," "4-ever Best Friends," "Mommy's
22 Little," "Alienracers," or any derivative thereof, that provides a basis for any claim
23 by YOU against MATTEL, including but not limited to "Bratz Dolls," "Bratz
24 Dogz," "Winter Wonderland," "Bratz Sportz," "Formal Funk," "Sun-Kissed
25 Summer," "Funky Fashion Makeover Head," "Runway Disco," "4-ever Best
26 Friends," "Mommy's Little Patient," and "Alienracers."

27       G.    "CONTESTED BRATZ DOLLS PRODUCTS" means any of
28 the following that provides a basis for any claim by YOU against MATTEL: (i) any

-3-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 75

1    EMBODIMENT or project ever known by the name "Bratz" or any derivative

2    thereof (whether in whole or in part and regardless of what such EMBODIMENT or

3    project is or has been also, previously or subsequently called) and any doll or any

4    portion thereof that is now or has ever been known as, or sold, offered for sale,

5    licensed, offered for license or marketed under, the name or term "Bratz" or any

6    derivative thereof (whether in whole or in part and regardless of what such doll is or

7    has been also, previously or subsequently called), and all prototypes, models,

8    samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

9    playset and accessory that YOU distribute under the name "Bratz" or any derivative

10   thereof; and/or (iii) any and all other goods, product packaging, advertisements,

11   promotional materials or other thing or item or material manufactured, produced,

12   printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

13   imported, exported, licensed, offered for license, sold or offered for sale by YOU or

14   on YOUR behalf under the name "Bratz" or any derivative thereof.

15             H.     "CONTESTED BRATZ PETZ PRODUCTS" means any of the

16   following that provides a basis for any claim by YOU against MATTEL: (i) any

17   EMBODIMENT or project ever known by the name "Bratz Petz" or any derivative

18   thereof (whether in whole or in part and regardless of what such EMBODIMENT or

19   project is or has been also, previously or subsequently called) and any toy pet or any

20   portion thereof that is now or has ever been known as, or sold, offered for sale,

21   licensed, offered for license or marketed under, the name or term "Bratz" or any

22   derivative thereof (whether in whole or in part and regardless of what such toy pet is

23   or has been also, previously or subsequently called), and all prototypes, models,

24   samples and versions of such EMBODIMENT, toy pet or any portion thereof; (ii)

25   any playset and accessory that YOU distribute under the name "Bratz Petz" or any

26   derivative thereof; and/or (iii) any and all other goods, product packaging,

27   advertisements, promotional materials or other thing or item or material

28   manufactured, produced, printed, ordered, marketed, advertised, promoted,

1   displayed, distributed, shipped, imported, exported, licensed, offered for license,

2   sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Petz" or

3   any derivative thereof.

4           I.     "CONTESTED BRATZ FUNKY FASHION MAKEOVER

5   HEAD" means any of the following that provides a basis for any claim by YOU

6   against MATTEL:  (i) any EMBODIMENT or project ever known by the name

7   "Bratz Funky Fashion Makeover Head" or any derivative thereof (whether in whole

8   or in part and regardless of what such EMBODIMENT or project is or has been

9   also, previously or subsequently called) and any styling head or any portion thereof

10  that is now or has ever been known as, or sold, offered for sale, licensed, offered for

11  license or marketed under, the name or term "Bratz" or any derivative thereof

12  (whether in whole or in part and regardless of what such styling head is or has been

13  also, previously or subsequently called), and all prototypes, models, samples and

14  versions of such EMBODIMENT, styling head or any portion thereof; (ii) any

15  accessory that YOU distribute under the name "Bratz Funky Fashion Makeover

16  Head" or any derivative thereof; and/or (iii) any and all other goods, product

17  packaging, advertisements, promotional materials or other thing or item or material

18  manufactured, produced, printed, ordered, marketed, advertised, promoted,

19  displayed, distributed, shipped, imported, exported, licensed, offered for license,

20  sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Funky

21  Fashion Makeover Head" or any derivative thereof.

22          J.     "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means

23  any of the following that provides a basis for any claim by YOU against MATTEL:

24  (i) any EMBODIMENT or project ever known by the name "4-ever Best Friends" or

25  any derivative thereof (whether in whole or in part and regardless of what such

26  EMBODIMENT or project is or has been also, previously or subsequently called)

27  and any doll or any portion thereof that is now or has ever been known as, or sold,

28  offered for sale, licensed, offered for license or marketed under, the name or term

07975/1928319.2

-5-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 77

1  "4-ever Best Friends" or any derivative thereof (whether in whole or in part and
2  regardless of what such doll is or has been also, previously or subsequently called),
3  and all prototypes, models, samples and versions of such EMBODIMENT, doll or
4  any portion thereof; (ii) any playset and accessory that YOU distribute under the
5  name "4-ever Best Friends" or any derivative thereof; and/or (iii) any and all other
6  goods, product packaging, advertisements, promotional materials or other thing or
7  item or material manufactured, produced, printed, ordered, marketed, advertised,
8  promoted, displayed, distributed, shipped, imported, exported, licensed, offered for
9  license, sold or offered for sale by YOU or on YOUR behalf under the name "4-ever
10  Best Friends" or any derivative thereof.

11          K.   "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS"
12  means any of the following that provides a basis for any claim by YOU against
13  MATTEL: (i) any EMBODIMENT or project ever known by the name "Mommy's
14  Little Patient" or similar name or any derivative thereof (whether in whole or in part
15  and regardless of what such EMBODIMENT or project is or has been also,
16  previously or subsequently called) and any doll or any portion thereof that is now or
17  has ever been known as, or sold, offered for sale, licensed, offered for license or
18  marketed under, the name or term "Mommy's Little Patient" or similar name or any
19  derivative thereof (whether in whole or in part and regardless of what such doll is or
20  has been also, previously or subsequently called), and all prototypes, models,
21  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any
22  playset and accessory that YOU distribute under the name "Mommy's Little Patient"
23  or similar name or any derivative thereof; and/or (iii) any and all other goods,
24  product packaging, advertisements, promotional materials or other thing or item or
25  material manufactured, produced, printed, ordered, marketed, advertised, promoted,
26  displayed, distributed, shipped, imported, exported, licensed, offered for license,
27  sold or offered for sale by YOU or on YOUR behalf under the name "Mommy's
28  Little Patient" or similar name or any derivative thereof.

-6-

EXHIBIT 7
PAGE 78

1          L.    "CONTESTED ALIENRACERS PRODUCTS" means any of

2  the following that provides a basis for any claim by YOU against MATTEL: (i) any

3  EMBODIMENT or project ever known by the name "Alienracers" or any derivative

4  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

5  project is or has been also, previously or subsequently called) and any toy vehicle,

6  character, or any portion thereof that is now or has ever been known as, or sold,

7  offered for sale, licensed, offered for license or marketed under, the name or term

8  "Alienracers" or any derivative thereof (whether in whole or in part and regardless

9  of what such toy is or has been also, previously or subsequently called), and all

10  prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

11  character, or any portion thereof; (ii) any playset and accessory that YOU distribute

12  under the name "Alienracers" or any derivative thereof; and/or (iii) any and all other

13  goods, product packaging, advertisements, promotional materials or other thing or

14  item or material manufactured, produced, printed, ordered, marketed, advertised,

15  promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

16  license, sold or offered for sale by YOU or on YOUR behalf under the name

17  "Alienracers" or any derivative thereof.

18          M.    "CONTESTED MATTEL PRODUCTS" means the

19  CONTESTED MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED

20  MATTEL MY SCENE PETS PRODUCTS, the CONTESTED MATTEL MY

21  SCENE STYLING HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the

22  CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS, and the

23  CONTESTED MATTEL ACCELERACERS PRODUCTS, and any doll, toy,

24  portion thereof, or version thereof that is now or has ever been known as, or sold,

25  offered for sale, licensed, offered for license or marketed under the name or terms

26  "My Scene," "Wee-3," "Little Mommy," "AcceleRacerS," or any derivative thereof,

27  that provides a basis for any claim by YOU against MATTEL, including but not

28  limited to "My Scene Dolls," "My Scene Pets," "My Scene Chillin' Out," "My Scene

EXHIBIT 7
PAGE 79

1  Miami Getaway," "My Scene Night on the Town," "My Scene Jammin' in Jamaica,"

2  "My Scene Guava Gulch Tiki Lounge," "My Scene Sound Lounge," "My Scene

3  Stylin' Head," "Mattel Wee-3," "Mattel Little Mommy Potty Training Baby Doll,"

4  and "Mattel Acceleracers."

5        N.    "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"

6  means any of the following that provides a basis for any claim by YOU against

7  MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene"

8  or any derivative thereof (whether in whole or in part and regardless of what such

9  EMBODIMENT or project is or has been also, previously or subsequently called)

10  and any doll or any portion thereof that is now or has ever been known as, or sold,

11  offered for sale, licensed, offered for license or marketed under, the name or term

12  "My Scene" or any derivative thereof (whether in whole or in part and regardless of

13  what such doll is or has been also, previously or subsequently called), and all

14  prototypes, models, samples and versions of such EMBODIMENT, doll or any

15  portion thereof; (ii) any playset and accessory that MATTEL distributes under the

16  name "My Scene" or any derivative thereof; and/or (iii) any and all other goods,

17  product packaging, advertisements, promotional materials or other thing or item or

18  material manufactured, produced, printed, ordered, marketed, advertised, promoted,

19  displayed, distributed, shipped, imported, exported, licensed, offered for license,

20  sold or offered for sale by MATTEL under the name "My Scene" or any derivative

21  thereof.

22        O.    "CONTESTED MATTEL MY SCENE PETS PRODUCTS"

23  means any of the following that provides a basis for any claim by YOU against

24  MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene

25  Pets" or any derivative thereof (whether in whole or in part and regardless of what

26  such EMBODIMENT or project is or has been also, previously or subsequently

27  called) and any toy pet or any portion thereof that is now or has ever been known as,

28  or sold, offered for sale, licensed, offered for license or marketed under, the name or

-8-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 80

1  term "My Scene" or any derivative thereof (whether in whole or in part and
2  regardless of what such toy pet is or has been also, previously or subsequently
3  called), and all prototypes, models, samples and versions of such EMBODIMENT,
4  toy pet or any portion thereof; (ii) any playset and accessory that MATTEL
5  distributes under the name "My Scene Pets" or any derivative thereof; and/or (iii)
6  any and all other goods, product packaging, advertisements, promotional materials
7  or other thing or item or material manufactured, produced, printed, ordered,
8  marketed, advertised, promoted, displayed, distributed, shipped, imported, exported,
9  licensed, offered for license, sold or offered for sale by MATTEL under the name
10  "My Scene Pets" or any derivative thereof.
11          P.      "CONTESTED MATTEL MY SCENE STYLING HEAD"
12  means any of the following that provides a basis for any claim by YOU against
13  MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene
14  Styling Head" or any derivative thereof (whether in whole or in part and regardless
15  of what such EMBODIMENT or project is or has been also, previously or
16  subsequently called) and any styling head or any portion thereof that is now or has
17  ever been known as, or sold, offered for sale, licensed, offered for license or
18  marketed under, the name or term "My Scene" or any derivative thereof (whether in
19  whole or in part and regardless of what such styling head is or has been also,
20  previously or subsequently called), and all prototypes, models, samples and versions
21  of such EMBODIMENT, styling head or any portion thereof; (ii) any accessory that
22  MATTEL distributes under the name "My Scene Styling Head" or any derivative
23  thereof; and/or (iii) any and all other goods, product packaging, advertisements,
24  promotional materials or other thing or item or material manufactured, produced,
25  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,
26  imported, exported, licensed, offered for license, sold or offered for sale by
27  MATTEL under the name "My Scene Styling Head" or any derivative thereof.
28

-9-

EXHIBIT  7
PAGE  81

1      Q.   "CONTESTED MATTEL WEE-3 PRODUCTS" means any of

2 the following that provides a basis for any claim by YOU against MATTEL: (i) any

3 EMBODIMENT or project ever known by the name "Wee-3" or any derivative

4 thereof (whether in whole or in part and regardless of what such EMBODIMENT or

5 project is or has been also, previously or subsequently called) and any doll or any

6 portion thereof that is now or has ever been known as, or sold, offered for sale,

7 licensed, offered for license or marketed under, the name or term "Wee-3" or any

8 derivative thereof (whether in whole or in part and regardless of what such doll is or

9 has been also, previously or subsequently called), and all prototypes, models,

10 samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

11 playset and accessory that MATTEL distributes under the name "Wee-3" or any

12 derivative thereof; and/or (iii) any and all other goods, product packaging,

13 advertisements, promotional materials or other thing or item or material

14 manufactured, produced, printed, ordered, marketed, advertised, promoted,

15 displayed, distributed, shipped, imported, exported, licensed, offered for license,

16 sold or offered for sale by MATTEL under the name "Wee-3" or any derivative

17 thereof.

18      R.   "CONTESTED MATTEL LITTLE MOMMY DOLL

19 PRODUCTS" means any of the following that provides a basis for any claim by

20 YOU against MATTEL: (i) any EMBODIMENT or project ever known by the

21 name "Little Mommy" or any derivative thereof (whether in whole or in part and

22 regardless of what such EMBODIMENT or project is or has been also, previously or

23 subsequently called) and any doll or any portion thereof that is now or has ever been

24 known as, or sold, offered for sale, licensed, offered for license or marketed under,

25 the name or term "Little Mommy" or any derivative thereof (whether in whole or in

26 part and regardless of what such doll is or has been also, previously or subsequently

27 called), and all prototypes, models, samples and versions of such EMBODIMENT,

28 doll or any portion thereof; (ii) any playset and accessory that MATTEL distributes

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

07975/1928319.2

EXHIBIT 7
PAGE 82

1  under the name "Little Mommy" or any derivative thereof; and/or (iii) any and all

2  other goods, product packaging, advertisements, promotional materials or other

3  thing or item or material manufactured, produced, printed, ordered, marketed,

4  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

5  offered for license, sold or offered for sale by MATTEL under the name "Little

6  Mommy" or any derivative thereof.

7       S.    "CONTESTED MATTEL ACCELERACERS PRODUCTS"

8  means any of the following that provides a basis for any claim by YOU against

9  MATTEL: (i) any EMBODIMENT or project ever known by the name

10  "AcceleRacers" or any derivative thereof (whether in whole or in part and regardless

11  of what such EMBODIMENT or project is or has been also, previously or

12  subsequently called) and any toy vehicle, character, or any portion thereof that is

13  now or has ever been known as, or sold, offered for sale, licensed, offered for

14  license or marketed under, the name or term "AcceleRacers" or any derivative

15  thereof (whether in whole or in part and regardless of what such toy is or has been

16  also, previously or subsequently called), and all prototypes, models, samples and

17  versions of such EMBODIMENT, toy vehicle, character, or any portion thereof; (ii)

18  any playset and accessory that MATTEL distributes under the name "AcceleRacers"

19  or any derivative thereof ; and/or (iii) any and all other goods, product packaging,

20  advertisements, promotional materials or other thing or item or material

21  manufactured, produced, printed, ordered, marketed, advertised, promoted,

22  displayed, distributed, shipped, imported, exported, licensed, offered for license,

23  sold or offered for sale by MATTEL under the name "AcceleRacers" or any

24  derivative thereof.

25       T.    The term "PERSON," in the plural as well as the singular, means

26  any natural person, association, partnership, corporation, joint venture, government

27  entity, organization, trust, institution, proprietorship, or any other entity recognized

28  as having an existence under the laws in United States or any other nation.

07975/4928319.2

-11-

EXHIBIT 7
PAGE 23

1    U.    The term "RELATING TO" means any and all of the following

2  terms and their synonyms:  refer to, discuss, constitute, evidence, pertain to,

3  mention, support, contradict, negate, bear on, touch on, contain, embody, reflect,

4  identify, state, deal with, concern, comment on, respond to, relevant to, or describe.

5    V.    "COMPLAINT"  means the Complaint for False Designation of

6  Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair

7  Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 *et seq.* and

8  California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code

9  § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or

10  about April 13, 2005.

11

12  **II.    INSTRUCTIONS**

13    A.    YOU are to produce all requested DOCUMENTS in YOUR

14  possession, custody or control.

15    B.    If YOU contend that YOU are not required to produce certain

16  DOCUMENTS called for by these Requests on the grounds of a privilege or

17  protection that YOU are not prepared to waive, identify each such DOCUMENT

18  and provide the following information:

19    1.    the date and type of the DOCUMENT, the author(s) and

20    all recipients;

21    2.    the privilege or protection that YOU claim permits YOU

22    to withhold the DOCUMENT;

23    3.    the title and subject matter of the DOCUMENT;

24    4.    any additional facts on which YOU base YOUR claim of

25    privilege or protection; and

26    5.    the identity of the current custodian of the original of the

27    DOCUMENT.

28

C.     DOCUMENTS shall be produced in their original file folders, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT and the PERSON for whom or department, division or office for which the DOCUMENT or the file folder is maintained shall be identified.

D.     The DOCUMENTS should be produced in their complete and unaltered form. Attachments to DOCUMENTS should not be removed. The DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for any reason, including alleged nonrelevance. If emails are produced that had attachments, the attachments shall be attached when produced.

E.     DOCUMENTS in electronic form shall be produced in that form.

F.     In the event that any DOCUMENT called for by these requests has been destroyed or discarded, that DOCUMENT is to be identified by stating:

1.     the date and type of the DOCUMENT, the author(s) and all recipients;

2.     the DOCUMENT's date, subject matter, number of pages, and attachments or appendices;

3.     the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard;

4.     the PERSONS who were authorized to carry out such destruction or discard;

5.     the PERSONS who have knowledge of the content, origins, distribution and destruction of the DOCUMENT; and

6.     whether any copies of the document exist and, if so, the name of the custodian of each copy.

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

07975/1928319.2

EXHIBIT 7
PAGE 85

## III.   **REQUESTS FOR DOCUMENTS AND THINGS**

REQUEST FOR PRODUCTION NO. 1:

A sample of each of the CONTESTED MGA PRODUCTS, together with each such product's packaging and all instructions, promotional literature, coupons, bounce-back cards and any other materials inserted in or associated with such packaging.

REQUEST FOR PRODUCTION NO. 2:

A sample of each display, including but not limited to each point-of-purchase or in-store display, prepared, produced, printed, manufactured or used in connection with the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 3:

A complete copy of each advertisement or promotional statement prepared, produced, printed, broadcast, made available to anyone in any manner via the Internet, or otherwise used or disseminated in any way in connection with the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 4:

A complete copy of each COMMUNICATION, advertisement, promotional statement that provides a basis for any claim by YOU against MATTEL.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS.

07975/1928319.2

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 36

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, and ownership of any product packaging that provides a basis for any claim by YOU against MATTEL.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, and ownership of all product packaging that provides a basis for any claim by YOU against MATTEL.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of products and packaging that YOU contend provide a basis for any claim against MATTEL, whether or not such claim is made in the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of all products and packaging that YOU contend MATTEL copied or infringed.

07975/1928319.2

-15-

EXHIBIT 7
PAGE 37

REQUEST FOR PRODUCTION NO. 11:

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of the CONTESTED MATTEL PRODUCTS and their associated packaging.

REQUEST FOR PRODUCTION NO. 12:

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of all products and packaging that YOU contend MATTEL copied or infringed.

REQUEST FOR PRODUCTION NO. 13:

All DOCUMENTS RELATING TO any revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 14:

All DOCUMENTS RELATING TO the first date of availability for retail sale of each of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 15:

All DOCUMENTS RELATING TO the first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form.

EXHIBIT 7
PAGE 88

1  REQUEST FOR PRODUCTION NO. 16:

2        All head sculptures, including all preliminary head sculptures and all

3  versions of such sculptures, made, produced or prepared in connection with the

4  CONTESTED BRATZ DOLLS PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 17:

7        All DOCUMENTS RELATING TO the tooling for any of the

8  CONTESTED BRATZ DOLLS PRODUCTS, including but not limited to all

9  invoices, contracts, sales orders, purchase orders and payment relating thereto and

10  including but not limited to all DOCUMENTS relating to the engineering,

11  preparation, fabrication and creation of the molds and face paint masks used in

12  connection therewith and to the film and/or digital files used in connection with the

13  packaging therefor.

14

15  REQUEST FOR PRODUCTION NO. 18:

16        All DOCUMENTS RELATING TO the marketing, advertising,

17  promotion, licensing, offering for sale or sale of the CONTESTED MGA

18  PRODUCTS, including but not limited to all marketing studies, marketing plans,

19  sales plans, sales forecasts, strategies, surveys and analyses and including but not

20  limited to all catalogs, advertisements, brochures, displays and Internet publications.

21

22  REQUEST FOR PRODUCTION NO. 19:

23        All DOCUMENTS RELATING TO the ownership of any right, title or

24  interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

25

26  REQUEST FOR PRODUCTION NO. 20:

27        All DOCUMENTS RELATING TO any copyright, patent, design right

28  or any other registration or application for registration of the CONTESTED MGA

07975/1928319.2

-17-

EXHIBIT 7
PAGE 89

1 | PRODUCTS, including but not limited to the complete file history relating thereto,

2 | all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits,

3 | correspondence, notes and other DOCUMENTS relating thereto.

4 |

5 | REQUEST FOR PRODUCTION NO. 21:

6 | Documents sufficient to identify each of the CONTESTED MGA

7 | PRODUCTS by internal job or product number, SKU, and bar code number.

8 |

9 | REQUEST FOR PRODUCTION NO. 22:

10 | Documents sufficient to identify the individuals who worked on or

11 | were involved in any manner with the invention, creation, origin, conception,

12 | authorship, or design of the CONTESTED MGA PRODUCTS.

13 |

14 | REQUEST FOR PRODUCTION NO. 23:

15 | All DOCUMENTS RELATING TO the display, exhibition,

16 | distribution, publication, circulation, or other dissemination of the CONTESTED

17 | MGA PRODUCTS to distributors, the media, or the public, including but not

18 | limited to toy and trade shows and conventions.

19 |

20 | REQUEST FOR PRODUCTION NO. 24:

21 | All DOCUMENTS RELATING TO any contracts or licenses entered

22 | into, negotiated, proposed, or requested RELATING TO any of the CONTESTED

23 | MGA PRODUCTS.

24 |

25 | REQUEST FOR PRODUCTION NO. 25:

26 | All DOCUMENTS RELATING TO any actual, proposed, offered, or

27 | requested licensing, sale, or purchase of the CONTESTED MGA PRODUCTS,

28 |

-18-

EXHIBIT 7
PAGE 90

1 including but not limited to all contracts and proposed or offered contracts relating

2 thereto.

3

4 REQUEST FOR PRODUCTION NO. 26:

5       All DOCUMENTS RELATING TO the target market or potential

6 target market, and the demographics of any actual, potential or prospective

7 consumers, customers, purchasers or licensees of the CONTESTED MGA

8 PRODUCTS.

9

10 REQUEST FOR PRODUCTION NO. 27:

11       All DOCUMENTS RELATING TO the number of units of the

12 CONTESTED MGA PRODUCTS manufactured, produced, ordered, stored in

13 inventory, imported, exported, shipped, sold, or offered for sale by any PERSON,

14 including but not limited to YOU.

15

16 REQUEST FOR PRODUCTION NO. 28:

17       All DOCUMENTS RELATING TO revenues received by YOU in

18 connection with each of the CONTESTED MGA PRODUCTS.

19

20 REQUEST FOR PRODUCTION NO. 29:

21       All DOCUMENTS RELATING TO YOUR costs, including but not

22 limited to YOUR per-unit cost, for each of the CONTESTED MGA PRODUCTS.

23

24 REQUEST FOR PRODUCTION NO. 30:

25       All DOCUMENTS RELATING TO YOUR profits, including but not

26 limited to gross, incremental and net profits, for each of the CONTESTED MGA

27 PRODUCTS.

28

EXHIBIT  7
PAGE  91

1   REQUEST FOR PRODUCTION NO. 31:

2        All DOCUMENTS RELATING TO any complaints or dissatisfaction

3   concerning the CONTESTED MGA PRODUCTS, including but not limited to

4   DOCUMENTS recording the returns of, or the number of or rate of defects for, such

5   products.

6

7   REQUEST FOR PRODUCTION NO. 32:

8        All DOCUMENTS RELATING TO the belief of any PERSON

9   (whether or not such belief is accurate) as to the origin, affiliation, sponsorship or

10  association of the CONTESTED MGA PRODUCTS, including but not limited to all

11  studies, surveys, interviews, reports, and COMMUNICATIONS regarding any such

12  belief.

13

14  REQUEST FOR PRODUCTION NO. 33:

15       All DOCUMENTS RELATING TO the belief of any PERSON

16  (whether or not such belief is accurate) as to the origin, affiliation, sponsorship or

17  association of the CONTESTED MATTEL PRODUCTS, including but not limited

18  to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any

19  such belief.

20

21  REQUEST FOR PRODUCTION NO. 34:

22       All DOCUMENTS RELATING TO any potential or actual confusion,

23  any potential or actual mistake or any potential or actual deception of any PERSON

24  as to the origin, affiliation, sponsorship or association of the CONTESTED MGA

25  PRODUCTS, including but not limited to all studies, surveys, interviews, reports

26  and COMMUNICATIONS regarding any such confusion, mistake or deception.

27

28

07975/1928319.2

-20-

EXHIBIT 7
PAGE 92

1  REQUEST FOR PRODUCTION NO. 35:

2        All DOCUMENTS RELATING TO any potential or actual confusion,

3  any potential or actual mistake or any potential or actual deception of any PERSON

4  as to the origin, affiliation, sponsorship or association of the CONTESTED

5  MATTEL PRODUCTS, including but not limited to all studies, surveys, interviews,

6  reports and COMMUNICATIONS regarding any such confusion, mistake or

7  deception.

8

9  REQUEST FOR PRODUCTION NO. 36:

10        All DOCUMENTS RELATING TO any consumer studies, reports,

11  surveys, interviews or reports regarding the CONTESTED MGA PRODUCTS or

12  the CONTESTED MATTEL PRODUCTS.

13

14  REQUEST FOR PRODUCTION NO. 37:

15        All DOCUMENTS RELATING TO the marketing, advertising,

16  promotion, licensing, offering for sale or sale of the CONTESTED MATTEL

17  PRODUCTS, including but not limited to all marketing studies, marketing plans,

18  sales plans, sales forecasts, strategies, surveys and analyses and including but not

19  limited to all catalogs, advertisements, brochures, displays and Internet publications.

20

21  REQUEST FOR PRODUCTION NO. 38:

22        All DOCUMENTS RELATING TO the ownership of any right, title or

23  interest, whether in whole or in part, in or to the CONTESTED MATTEL

24  PRODUCTS.

25

26

27

28

EXHIBIT 7
PAGE 93

1  REQUEST FOR PRODUCTION NO. 39:

2       All DOCUMENTS RELATING TO the invention, creation, origin,

3  conception, authorship, design, and ownership of the CONTESTED MATTEL

4  PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 40:

7       All DOCUMENTS RELATING TO the display, exhibition,

8  distribution, publication, circulation, or other dissemination of the CONTESTED

9  MATTEL PRODUCTS to distributors, the media, or the public, including but not

10  limited to toy and trade shows and conventions.

11

12  REQUEST FOR PRODUCTION NO. 41:

13       All COMMUNICATIONS between YOU and any stock analyst,

14  investment analyst, investment bank, institutional lender, or venture capital fund

15  since January 1, 1999.

16

17  REQUEST FOR PRODUCTION NO. 42:

18       All COMMUNICATIONS between YOU and any individual while the

19  individual was employed by MATTEL.

20

21  REQUEST FOR PRODUCTION NO. 43:

22       All COMMUNICATIONS between YOU and MATTEL RELATING

23  TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL

24  PRODUCTS.

25

26

27

28

07975/1928319.2

-22-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 94

1  REQUEST FOR PRODUCTION NO. 44:

2          All COMMUNICATIONS between YOU and any PERSON

3  RELATING TO the claims made in YOUR COMPLAINT or the facts that YOU

4  contend support such claims.

5

6  REQUEST FOR PRODUCTION NO. 45:

7          All DOCUMENTS RELATING TO YOUR knowledge of MATTEL's

8  alleged infringement of YOUR claimed EMBODIMENTS.

9

10 REQUEST FOR PRODUCTION NO. 46:

11         All DOCUMENTS RELATING TO any unjust enrichment, damage,

12 loss, or injury that YOU claim has been sustained by reason of any act or omission

13 by MATTEL, including but not limited to all DOCUMENTS RELATING TO any

14 alleged lost profits, lost sales, lost opportunity, lost license, price erosion,

15 consequential or incidental damage, information or intellectual property provided to

16 any competitor, or benefit obtained by any competitor, including but not limited to

17 all DOCUMENTS RELATING TO the causation for any such alleged unjust

18 enrichment, damage, loss, or injury.

19

20 REQUEST FOR PRODUCTION NO. 47:

21         All DOCUMENTS supporting YOUR contention that MATTEL

22 created, designed, derived, or developed products, packaging, and advertising using

23 concepts, products, or intellectual property owned by YOU.

24

25 REQUEST FOR PRODUCTION NO. 48:

26         All DOCUMENTS RELATING TO the copying, reproduction or use

27 of any MATTEL work, product, or EMBODIMENT by YOU or on YOUR behalf.

28

EXHIBIT 7
PAGE 95

1  REQUEST FOR PRODUCTION NO. 49:

2          All DOCUMENTS RELATING TO any similarity or dissimilarity

3  between, on the one hand, any of the CONTESTED MGA PRODUCTS and any

4  other work or product developed, manufactured, or distributed by any other person

5  or entity, including but not limited to MATTEL.

6

7  REQUEST FOR PRODUCTION NO. 50:

8          All DOCUMENTS RELATING TO the reasons why consumers

9  purchase any of the CONTESTED MGA PRODUCTS, including but not limited to

10 all consumer surveys, studies and comments pertaining thereto.

11

12 REQUEST FOR PRODUCTION NO. 51:

13         All DOCUMENTS RELATING TO the channels of trade or potential

14 or prospective channels of trade for the CONTESTED MGA PRODUCTS.

15

16 REQUEST FOR PRODUCTION NO. 52:

17         All DOCUMENTS RELATING TO any similarity or dissimilarity

18 between any of the CONTESTED MGA PRODUCTS and any EMBODIMENTS

19 authored, created, distributed, made, sold or offered for sale by any PERSON other

20 than YOU.

21

22 REQUEST FOR PRODUCTION NO. 53:

23         All DOCUMENTS RELATING TO any similarity or dissimilarity

24 between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED

25 MATTEL PRODUCTS.

26

27

28

-24-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7

PAGE 96

REQUEST FOR PRODUCTION NO. 54:

All DOCUMENTS RELATING TO any COMMUNICATION by YOU with any news organization regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 55:

All periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical, that mention the CONTESTED MGA PRODUCTS that have been published since January 1, 1999.

REQUEST FOR PRODUCTION NO. 56:

All television or radio broadcasts or cablecasts that mention the CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999.

REQUEST FOR PRODUCTION NO. 57:

All Internet postings or COMMUNICATIONS that mention the CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999.

REQUEST FOR PRODUCTION NO. 58:

All DOCUMENTS RELATING TO publicity by YOU or about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to advertising, media releases, and public relations material.

REQUEST FOR PRODUCTION NO. 59:

All DOCUMENTS RELATING TO any effort by YOU to recruit employees or contractors since January 1, 1999, including but not limited to

1   advertising, media releases, brochures, articles, catalogs, handbooks, and public

2   relations material.

3

4   REQUEST FOR PRODUCTION NO. 60:

5           All DOCUMENTS RELATING TO the hiring, engagement, or

6   retention by YOU of any current or former MATTEL employee or contractor since

7   January 1, 1999, including but not limited to all employment agreements and

8   agreements RELATING TO confidentiality or the invention, authorship, or

9   ownership of any concept or product.

10

11  REQUEST FOR PRODUCTION NO. 61:

12          All DOCUMENTS RELATING TO any of the CONTESTED

13  MATTEL PRODUCTS that were obtained by YOU before the date that such

14  product was first offered for sale to the general public.

15

16  REQUEST FOR PRODUCTION NO. 62:

17          All DOCUMENTS, since January 1, 1999, RELATING TO YOUR

18  receipt, reproduction, copying, storage, transmission, transfer, retention, destruction,

19  deletion or use of any DOCUMENTS, data and/or information, including but not

20  limited to any compilation of information, that was prepared, made, created,

21  generated, assembled or compiled by or for MATTEL and that was not publicly

22  available at the time of YOUR receipt of such DOCUMENT, data and/or

23  information.

24

25  REQUEST FOR PRODUCTION NO. 63:

26          All DOCUMENTS, since January 1, 1999, RELATING TO YOUR

27  knowledge of any MATTEL product prior to the time that such product had been

28

1  announced or disclosed by MATTEL to retailers or the public, including but not

2  limited to the CONTESTED MATTEL PRODUCTS.

3

4  REQUEST FOR PRODUCTION NO. 64:

5     All DOCUMENTS, since January 1, 1999, RELATING TO YOUR

6  receipt, reproduction, copying, storage, transmission, transfer, retention, destruction,

7  deletion or use of any MATTEL line list or other DOCUMENT prepared by

8  MATTEL identifying MATTEL products in the planning, design or development

9  phase.

10

11  REQUEST FOR PRODUCTION NO. 65:

12     Copies of all DOCUMENTS that were seized by Mexican authorities

13  from MGA's office in Mexico City, Mexico.

14

15  REQUEST FOR PRODUCTION NO. 66:

16     All DOCUMENTS RELATING TO the DOCUMENTS, data and/or

17  information that were seized by Mexican authorities from MGA's office in Mexico

18  City, Mexico.

19

20  REQUEST FOR PRODUCTION NO. 67:

21     All DOCUMENTS, including all COMMUNICATIONS, RELATING

22  to the search of MGA's office in Mexico City, Mexico that was conducted by

23  Mexican authorities.

24

25  REQUEST FOR PRODUCTION NO. 68:

26     All DOCUMENTS RELATING TO the email account

27  <plot04@aol.com>, including but not limited to all emails and attachments sent

28

07975/1928319.2

-27-

EXHIBIT 7
PAGE 99

1  from, sent to, received by, transmitted by way of or through and/or stored in such

2  account in any manner.

3

4  REQUEST FOR PRODUCTION NO. 69:

5      All DOCUMENTS RELATING TO when the email account

6  <plot04@aol.com> was first registered, set up or established.

7

8  REQUEST FOR PRODUCTION NO. 70:

9      All DOCUMENTS identifying each PERSON who registered, set up,

10  established or used the email account <plot04@aol.com>.

11

12  REQUEST FOR PRODUCTION NO. 71:

13      All COMMUNICATIONS between YOU and Carlos Gustavo

14  Machado Gomez ("Machado") prior to April 20, 2004.

15

16  REQUEST FOR PRODUCTION NO. 72:

17      All DOCUMENTS RELATING TO COMMUNICATIONS between

18  YOU and Machado prior to April 20, 2004, including but not limited to all calendar

19  entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21  REQUEST FOR PRODUCTION NO. 73:

22      All DOCUMENTS, including but not limited to all

23  COMMUNICATIONS with any PERSON, RELATING TO Machado prior to April

24  20, 2004.

25

26

27

28

-28-

EXHIBIT 7

PAGE 100

1  REQUEST FOR PRODUCTION NO. 74:

2       All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS with any PERSON, RELATING TO Machado's resignation

4  from Mattel.

5

6  REQUEST FOR PRODUCTION NO. 75:

7       All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9  or any other item of value paid to Machado, whether directly or indirectly, by YOU.

10

11  REQUEST FOR PRODUCTION NO. 76:

12       All DOCUMENTS received by YOU, directly or indirectly, from

13  Machado RELATING TO any MATTEL product or plan.

14

15  REQUEST FOR PRODUCTION NO. 77:

16       All DOCUMENTS, including but not limited to all

17  COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18  reproduction, copying, storage, transmission, transfer, retention, destruction,

19  deletion or use of any DOCUMENTS, data and/or information, including but not

20  limited to any compilation of information, that was prepared, made, created,

21  generated, assembled or compiled by or for MATTEL and that YOU received,

22  directly or indirectly, from Machado.

23

24  REQUEST FOR PRODUCTION NO. 78:

25       A copy of each personnel file maintained or created by YOU

26  RELATING TO Machado.

27

28

07975/1928319.2

-29-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 101

1    REQUEST FOR PRODUCTION NO. 79:

2         All DOCUMENTS, including but not limited to all

3    COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

4    in part, by Machado RELATING TO any of the CONTESTED MGA PRODUCTS.

5

6    REQUEST FOR PRODUCTION NO. 80:

7         All DOCUMENTS, including but not limited to all

8    COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

9    in part, by Machado RELATING TO any of the CONTESTED MATTEL

10   PRODUCTS.

11

12   REQUEST FOR PRODUCTION NO. 81:

13        All COMMUNICATIONS between YOU and Mariana Trueba Almada

14   ("Trueba") prior to April 20, 2004.

15

16   REQUEST FOR PRODUCTION NO. 82:

17        All DOCUMENTS RELATING TO COMMUNICATIONS between

18   YOU and Trueba prior to April 20, 2004, including but not limited to all calendar

19   entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21   REQUEST FOR PRODUCTION NO. 83:

22        All DOCUMENTS, including but not limited to all

23   COMMUNICATIONS with any PERSON, RELATING TO Trueba prior to April

24   20, 2004.

25

26

27

28

EXHIBIT 7
PAGE 102

**REQUEST FOR PRODUCTION NO. 84:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Trueba's resignation from Mattel.

**REQUEST FOR PRODUCTION NO. 85:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Trueba, whether directly or indirectly, by YOU.

**REQUEST FOR PRODUCTION NO. 86:**

All DOCUMENTS received by YOU, directly or indirectly, from Trueba RELATING TO any MATTEL product or plan.

**REQUEST FOR PRODUCTION NO. 87:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Trueba.

**REQUEST FOR PRODUCTION NO. 88:**

A copy of each personnel file maintained or created by YOU RELATING TO Trueba.

07975/1928319.2

-31-

**EXHIBIT 7**
**PAGE 103**

1  REQUEST FOR PRODUCTION NO. 89:

2      All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

4  in part, by Trueba RELATING TO any of the CONTESTED MGA PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 90:

7      All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

9  in part, by Trueba RELATING TO any of the CONTESTED MATTEL

10  PRODUCTS.

11

12  REQUEST FOR PRODUCTION NO. 91:

13      All COMMUNICATIONS between YOU and Pablo Vargas San Jose

14  ("Vargas") prior to April 20, 2004.

15

16  REQUEST FOR PRODUCTION NO. 92:

17      All DOCUMENTS RELATING TO COMMUNICATIONS between

18  YOU and Vargas prior to April 20, 2004, including but not limited to all calendar

19  entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21  REQUEST FOR PRODUCTION NO. 93:

22      All DOCUMENTS, including but not limited to all

23  COMMUNICATIONS with any PERSON, RELATING TO Vargas prior to April

24  20, 2004.

25

26

27

28

-32-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 104

REQUEST FOR PRODUCTION NO. 94:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Vargas' resignation from Mattel.

REQUEST FOR PRODUCTION NO. 95:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Vargas, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 96:

All DOCUMENTS received by YOU, directly or indirectly, from Vargas RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 97:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Vargas.

REQUEST FOR PRODUCTION NO. 98:

A copy of each personnel file maintained or created by YOU RELATING TO Vargas.

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

07975/1928319.2

EXHIBIT 7
PAGE 105

1   REQUEST FOR PRODUCTION NO. 99:

2           All DOCUMENTS, including but not limited to all

3   COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

4   in part, by Vargas RELATING TO any of the CONTESTED MGA PRODUCTS.

5

6   REQUEST FOR PRODUCTION NO. 100:

7           All DOCUMENTS, including but not limited to all

8   COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

9   in part, by Vargas RELATING TO any of the CONTESTED MATTEL

10  PRODUCTS.

11

12  REQUEST FOR PRODUCTION NO. 101:

13          All COMMUNICATIONS between YOU and Janine Brisbois

14  ("Brisbois") prior to September 27, 2005.

15

16  REQUEST FOR PRODUCTION NO. 102:

17          All DOCUMENTS RELATING TO COMMUNICATIONS between

18  YOU and Brisbois prior to September 27, 2005, including but not limited to all

19  calendar entries, phone logs, phone records and notes reflecting such

20  COMMUNICATIONS.

21

22  REQUEST FOR PRODUCTION NO. 103:

23          All DOCUMENTS, including but not limited to all

24  COMMUNICATIONS with any PERSON, RELATING TO Brisbois prior to

25  September 27, 2005.

26

27

28

07975/1928319.2

-34-

EXHIBIT 7
PAGE 106

1  REQUEST FOR PRODUCTION NO. 104:

2       All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation

4  from Mattel.

5

6  REQUEST FOR PRODUCTION NO. 105:

7       All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9  or any other item of value paid to Brisbois, whether directly or indirectly, by YOU.

10

11  REQUEST FOR PRODUCTION NO. 106:

12       All DOCUMENTS received by YOU, directly or indirectly, from

13  Brisbois RELATING TO any MATTEL product or plan.

14

15  REQUEST FOR PRODUCTION NO. 107:

16       All DOCUMENTS, including but not limited to all

17  COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18  reproduction, copying, storage, transmission, transfer, retention, destruction,

19  deletion or use of any DOCUMENTS, data and/or information, including but not

20  limited to any compilation of information, that was prepared, made, created,

21  generated, assembled or compiled by or for MATTEL and that YOU received,

22  directly or indirectly, from Brisbois.

23

24  REQUEST FOR PRODUCTION NO. 108:

25       A copy of each personnel file maintained or created by YOU

26  RELATING TO Brisbois.

27

28

1  REQUEST FOR PRODUCTION NO. 109:

2        All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

4  in part, by Brisbois RELATING TO any of the CONTESTED MGA PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 110:

7        All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

9  in part, by Brisbois RELATING TO any of the CONTESTED MATTEL

10  PRODUCTS.

11

12  REQUEST FOR PRODUCTION NO. 111:

13        All COMMUNICATIONS between YOU and Ron Brawer ("Brawer")

14  prior to October 2, 2004.

15

16  REQUEST FOR PRODUCTION NO. 112:

17        All DOCUMENTS RELATING TO COMMUNICATIONS between

18  YOU and Brawer prior to October 2, 2004, including but not limited to all calendar

19  entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21  REQUEST FOR PRODUCTION NO. 113:

22        All DOCUMENTS, including but not limited to all

23  COMMUNICATIONS with any PERSON, RELATING TO Brawer prior to

24  October 2, 2004.

25

26

27

28

1 REQUEST FOR PRODUCTION NO. 114:

2         All DOCUMENTS, including but not limited to all

3 COMMUNICATIONS with any PERSON, RELATING TO Brawer's resignation

4 from Mattel.

5

6 REQUEST FOR PRODUCTION NO. 115:

7         All DOCUMENTS, including but not limited to all

8 COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9 or any other item of value paid to Brawer, whether directly or indirectly, by YOU.

10

11 REQUEST FOR PRODUCTION NO. 116:

12         All DOCUMENTS received by YOU, directly or indirectly, from

13 Brawer RELATING TO any MATTEL product or plan.

14

15 REQUEST FOR PRODUCTION NO. 117:

16         All DOCUMENTS, including but not limited to all

17 COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18 reproduction, copying, storage, transmission, transfer, retention, destruction,

19 deletion or use of any DOCUMENTS, data and/or information, including but not

20 limited to any compilation of information, that was prepared, made, created,

21 generated, assembled or compiled by or for MATTEL and that YOU received,

22 directly or indirectly, from Brawer.

23

24 REQUEST FOR PRODUCTION NO. 118:

25         All DOCUMENTS RELATING TO the existence or extent of

26 competition or substitution between any of the CONTESTED MGA PRODUCTS

27 and any of the CONTESTED MATTEL PRODUCTS.

28

EXHIBIT 7
PAGE 109

1  REQUEST FOR PRODUCTION NO. 119:

2        All DOCUMENTS RELATING TO the facts that YOU contend

3  support the claims for relief in YOUR COMPLAINT.

4

5  REQUEST FOR PRODUCTION NO. 120:

6        All DOCUMENTS RELATING TO any claim by YOU that any of the

7  CONTESTED MGA PRODUCTS have acquired secondary meaning or are famous.

8

9  REQUEST FOR PRODUCTION NO. 121:

10        All DOCUMENTS RELATING TO any claim by YOU that

11  MATTEL's actions have caused actual dilution.

12

13  REQUEST FOR PRODUCTION NO. 122:

14        All DOCUMENTS RELATING TO the allegation in Paragraph 9 of

15  YOUR COMPLAINT that "Mattel has intimidated, coerced and threatened retailers,

16  licensees, suppliers and others in the industry."

17

18  REQUEST FOR PRODUCTION NO. 123:

19        All DOCUMENTS RELATING TO the allegation in Paragraph 9 of

20  YOUR COMPLAINT that "Mattel has . . . serially imitated and copy-catted [sic] the

21  look of MGA products, trade dress, trademarks, themes, ideas, advertising and

22  packaging."

23

24  REQUEST FOR PRODUCTION NO. 124:

25        All DOCUMENTS RELATING TO the allegation in Paragraphs 34

26  and 36 of YOUR COMPLAINT that the Bratz dolls launched in 2001 were "unique

27  and distinctive."

28

EXHIBIT 7
PAGE 110

1  **REQUEST FOR PRODUCTION NO. 125:**

2        All DOCUMENTS RELATING TO any allegation by YOU that YOU

3  have any legally protected interest in any of the following "themes" or any other

4  Bratz "theme" that you contend was copied by MATTEL:  "Winter Wonderland,"

5  "Bratz Sportz," "Formal Funk," "Sun-Kissed Summer."

6

7  **REQUEST FOR PRODUCTION NO. 126:**

8        All DOCUMENTS RELATING TO any allegation by YOU that YOU

9  have any legally protected interest in any "color scheme" that you contend was

10  copied by MATTEL.

11

12  **REQUEST FOR PRODUCTION NO. 127:**

13        All DOCUMENTS RELATING TO the allegation in Paragraph 56 of

14  YOUR COMPLAINT that the press has confused YOUR products with those of

15  MATTEL, or vice versa.

16

17  **REQUEST FOR PRODUCTION NO. 128:**

18        All DOCUMENTS RELATING TO any allegation by YOU that

19  anyone has confused any commercial for YOUR Funky Fashion Makeover Head

20  with any commercial for MATTEL's My Scene Styling Head.

21

22  **REQUEST FOR PRODUCTION NO. 129:**

23        All DOCUMENTS RELATING TO any allegation by YOU that

24  MATTEL has used any "tag line" allegedly belonging to YOU, including but not

25  limited to "Passion for Fashion" or any derivative thereof.

26

27

28

07975/1928319.2

-39-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 111

1  REQUEST FOR PRODUCTION NO. 130:

2         All DOCUMENTS RELATING TO the allegation in Paragraph 61 of

3  YOUR COMPLAINT that retailers have been confused by Bratz Petz and

4  MATTEL's My Scene Pets, including but not limited to YOUR allegation that "even

5  sophisticated retailers . . . have mistakenly merchandised 'My Scene' dogs in the

6  middle of the 'BRATZ' section of a retail display, next to and as if they were part of

7  MGA's 'BRATZ Petz' line."

8

9  REQUEST FOR PRODUCTION NO. 131:

10         All DOCUMENTS RELATING TO the allegation in Paragraph 62 of

11  YOUR COMPLAINT that advertising executives have "expressed concern" about

12  "Bratz" and Mattel's "My Scene," including but not limited to the alleged remarks

13  set forth in Paragraph 62.

14

15  REQUEST FOR PRODUCTION NO. 132:

16         All DOCUMENTS RELATING TO the allegations in Paragraph 63 of

17  YOUR COMPLAINT that the press "has taken notice" of alleged confusion

18  between "Bratz" and Mattel's "My Scene," including but not limited to the alleged

19  remarks set forth in Paragraph 63.

20

21  REQUEST FOR PRODUCTION NO. 133:

22         All DOCUMENTS RELATING TO the allegation in Paragraph 64 of

23  YOUR COMPLAINT that customers have contacted YOU to purchase Mattel's "My

24  Scene" dolls.

25

26

27

28

-40-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 112

1  REQUEST FOR PRODUCTION NO. 134:

2      All DOCUMENTS RELATING TO any allegation by YOU that YOU

3  have a legally protected interest in what YOU describe in Paragraph 71 of YOUR

4  COMPLAINT as "MGA's 'other-worldly' theme."

5

6  REQUEST FOR PRODUCTION NO. 135:

7      All DOCUMENTS RELATING TO the allegation in Paragraph 71 of

8  YOUR COMPLAINT that MATTEL's commercials and product "mimic[] MGA's

9  alien theme and commercials in which MGA's 'AlienRacers' are engaged in a 'race

10 to save the universe.'"

11

12 REQUEST FOR PRODUCTION NO. 136:

13      All DOCUMENTS RELATING TO the allegation in Paragraph 74 of

14 YOUR COMPLAINT that MATTEL has engaged in "strong-arm tactics, and other

15 illegitimate, unfair and anti-competitive means."

16

17 REQUEST FOR PRODUCTION NO. 137:

18      All DOCUMENTS RELATING TO the allegations in Paragraph 75 of

19 YOUR COMPLAINT regarding MATTEL's dealings and COMMUNICATIONS

20 with former employees, including but not limited to all COMMUNICATIONS

21 between YOU and any present or former employees or contractors of MATTEL.

22

23 REQUEST FOR PRODUCTION NO. 138:

24      All COMMUNICATIONS between YOU and any PERSON

25 RELATING TO the departure from MATTEL of any current or former MATTEL

26 employee or contractor.

27

28

1  REQUEST FOR PRODUCTION NO. 139:

2            All COMMUNICATIONS between YOU and any PERSON

3  RELATING TO the obligations to MATTEL, including the duty of confidentiality,

4  of any current or former MATTEL employee or contractor.

5

6  REQUEST FOR PRODUCTION NO. 140:

7            All COMMUNICATIONS between YOU and any current or former

8  MATTEL employee or contractor RELATING TO the ownership of any idea,

9  concept, design, or product.

10

11  REQUEST FOR PRODUCTION NO. 141:

12            All COMMUNICATIONS between YOU and any PERSON

13  RELATING TO the retention, destruction, transfer, or use of any information or

14  DOCUMENTS known to or possessed by any current or former MATTEL

15  employee or contractor.

16

17  REQUEST FOR PRODUCTION NO. 142:

18            All DOCUMENTS RELATING TO the "warnings" or "threats" alleged

19  in Paragraph 76 of YOUR COMPLAINT, including but not limited to all

20  COMMUNICATIONS with any present or former licensees of MATTEL.

21

22  REQUEST FOR PRODUCTION NO. 143:

23            All DOCUMENTS RELATING TO the "intimidation" alleged in

24  Paragraph 77 of YOUR COMPLAINT, including but not limited to all

25  COMMUNICATIONS with any present or former distributors and retailers of MGA

26  and MATTEL products.

27

28

07975/1928319.2

-42-

EXHIBIT 7
PAGE 114

1   REQUEST FOR PRODUCTION NO. 144:

2          All COMMUNICATIONS between YOU and any retailer, wholesaler

3   or distributor RELATING TO the CONTESTED MATTEL PRODUCTS.

4

5   REQUEST FOR PRODUCTION NO. 145:

6          All DOCUMENTS RELATING TO the allegation in Paragraph 78 of

7   YOUR COMPLAINT that MATTEL was responsible for what YOU refer to as a

8   "shortage of doll hair in October 2002."

9

10  REQUEST FOR PRODUCTION NO. 146:

11         All DOCUMENTS RELATING TO the allegation in Paragraph 79 of

12  YOUR COMPLAINT that MATTEL has "manipulated the retail market," including

13  but not limited to all COMMUNICATIONS with any persons RELATING TO

14  YOUR allegation that "Mattel merchandisers have been caught tampering with

15  MGA's retail displays."

16

17  REQUEST FOR PRODUCTION NO. 147:

18         All DOCUMENTS RELATING TO any allegation by YOU that

19  MATTEL has made false statements about YOU or YOUR business practices,

20  including but not limited to the allegations in Paragraph 79 of YOUR

21  COMPLAINT.

22

23  REQUEST FOR PRODUCTION NO. 148:

24         All DOCUMENTS RELATING TO any allegation by YOU that

25  MATTEL has violated any rules or restrictions relating to data provided to

26  subscribers by NPD or engaged in any other wrongful conduct relating to NPD.

27

28

07975/1928319.2

-43-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 115

1   REQUEST FOR PRODUCTION NO. 149:

2          All DOCUMENTS RELATING TO any COMMUNICATIONS

3   between YOU and NPD, other than periodic reports, between January 1, 2000 and

4   the present.

5

6   REQUEST FOR PRODUCTION NO. 150:

7          DOCUMENTS sufficient to show the status of YOUR NPD

8   subscription between January 1, 2000 and the present.

9

10   REQUEST FOR PRODUCTION NO. 151:

11          All DOCUMENTS RELATING TO the allegation in Paragraph 89 of

12   YOUR COMPLAINT that MATTEL "used its influence . . . to induce CARU to

13   place onerous restrictions on MGA advertisements, and require MGA to amend

14   aspects of commercials that have gone unchallenged in other parties' commercials."

15

16   REQUEST FOR PRODUCTION NO. 152:

17          All DOCUMENTS RELATING TO any COMMUNICATIONS

18   between YOU and CARU between January 1, 2000 and the present.

19

20   REQUEST FOR PRODUCTION NO. 153:

21          All DOCUMENTS RELATING TO any allegation by YOU that

22   MATTEL has exercised improper influence with or within TIA, including but not

23   limited to the procedures for and manner in which the Toy of the Year was selected

24   for 2003.

25

26   REQUEST FOR PRODUCTION NO. 154:

27          All DOCUMENTS RELATING TO any COMMUNICATIONS with

28   TIA RELATING TO Toy of the Year since January 1, 2000.

-44-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 116

1  REQUEST FOR PRODUCTION NO. 155:

2          All DOCUMENTS RELATING TO the allegation in Paragraph 113 of

3  YOUR COMPLAINT that MATTEL has "willfully and maliciously used its power,

4  influence and intimidation to threaten certain retailers, suppliers, licensees,

5  distributors and manufacturers so as to limit, if not prevent, MGA from doing

6  business with these retailers, suppliers, licensees, distributors and manufacturers,

7  using its power and influence to intimidate and manipulate industry bodies."

8

9  REQUEST FOR PRODUCTION NO. 156:

10          All DOCUMENTS RELATING TO the allegation in Paragraph 113 of

11  YOUR COMPLAINT that MATTEL has "used its power and influence to attempt

12  to, if not actually, intimidate and threaten MGA's current and potential employees so

13  as to cause MGA competitive injury."

14

15  REQUEST FOR PRODUCTION NO. 157:

16          YOUR quarterly and annual profit and loss statements (both audited

17  and unaudited) for the years 2000 through the present, inclusive.

18

19  REQUEST FOR PRODUCTION NO. 158:

20          YOUR quarterly and annual financial statements (both audited and

21  unaudited) for the years 2000 through the present, inclusive.

22

23  REQUEST FOR PRODUCTION NO. 159:

24          YOUR annual reports for each of the years 2000 through the present,

25  inclusive.

26

27

28

EXHIBIT 7
PAGE 117

1  REQUEST FOR PRODUCTION NO. 160:

2          All DOCUMENTS received from MATTEL (whether directly or

3  indirectly) by YOU at any time since January 1, 1999.

4

5  REQUEST FOR PRODUCTION NO. 161:

6          All DOCUMENTS that YOU have reason to believe were created by or

7  originated from MATTEL, other than MATTEL products that YOU purchased at

8  retail.

9

10  REQUEST FOR PRODUCTION NO. 162:

11         All DOCUMENTS RELATING TO the destruction or retention of any

12  DOCUMENT RELATING TO the CONTESTED MGA PRODUCTS or the

13  CONTESTED MATTEL PRODUCTS.

14

15  REQUEST FOR PRODUCTION NO. 163:

16         All internal MGA COMMUNICATIONS and schedules RELATING

17  TO document retention or destruction between January 1, 1999 and the present.

18

19  REQUEST FOR PRODUCTION NO. 164:

20         All DOCUMENTS RELATING TO any COMMUNICATIONS with,

21  or inquiry or investigation by, any government entity RELATING TO the

22  CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

23

24  REQUEST FOR PRODUCTION NO. 165:

25         All DOCUMENTS RELATING TO any COMMUNICATIONS with,

26  or inquiry or investigation by, any toy industry organization, safety compliance, or

27  consumer organization RELATING TO the CONTESTED MGA PRODUCTS or

28  the CONTESTED MATTEL PRODUCTS.

1 | REQUEST FOR PRODUCTION NO. 166:

2 |      To the extent not produced in response to any other Request for

3 | Production, all DOCUMENTS and tangible things upon which YOU intend to rely

4 | upon in this action.

5 |

6 | DATED:  December 18, 2006        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

7 |

8 |

9 | By _____

10 |      Timothy L. Alger
   |      Attorneys for Mattel, Inc.

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

07975/1928319.2

-47-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT 7
PAGE 119

1
**PROOF OF SERVICE**

2
    I am employed in the County of Los Angeles, State of California.  I am over

3
the age of eighteen years and not a party to the within action; my business address is

4
NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles,

5
California 90026.

6
    On December 18, 2006, I true copies of the following document(s) described

7
as:

8
**MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS**

9
**AND THINGS RE CLAIMS OF UNFAIR COMPETITION**

10
**TO MGA ENTERTAINMENT, INC.**

11
on the parties in this action as follows:

12

| Diana M. Torres, Esq. | Keith A. Jacoby, Esq. |
|---|---|
| O'Melveny & Myers | Littler Mendelson |
| 400 So. Hope Street | 2049 Century Park East, 5th Floor |
| Los Angeles, CA  90071 | Los Angeles, CA  90067-3107 |
| Telephone: (213) 430-6000 | Telephone: (310) 553-0308 |
| Facsimile: (213) 430-6407 | Facsimile: (310) 553-5583 |

13
14
15

16
    [√]   [PERSONAL] by personally delivering the document listed above to

17
the person(s) at the address(es) set forth above.

18
19
    I declare that I am employed in the office of a member of the bar of this court

20
at whose direction the service was made

21
22
    Executed on December 18, 2006 at Los Angeles, California.

23
24
25
David Quintana

26
27
28

07209/2020338.1

Case No. SACV 05-00953 JVS (ANx)
PROOF OF SERVICE

**EXHIBIT 7**
**PAGE 120**