1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                 EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12         Plaintiff, | Consolidated with<br>Case No. CV 04-09059 |
| 13       vs. | Case No. CV 05-02727 |
| 14  MATTEL, INC., a Delaware<br>corporation, | **DISCOVERY MATTER** |
| 15         Defendant. | **[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]** |
| 16 | |
| 17  AND CONSOLIDATED ACTIONS | [PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION |
| 18 | (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO |
| 19 | COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND |
| 20 | (3) FOR SANCTIONS; AND |
| 21 | MEMORANDUM OF POINTS AND AUTHORITIES |
| 22 | |
| 23 | [Separate Statements No. 1 and No. 2, Notice of Lodging, Declaration of Jon Corey, Declaration of Diane Hutnyan, and |
| 24 | [Proposed] Order filed concurrently] |
| 25 | Hearing Date:    January 4, 2008 |
| 26 | Time:            9:00 a.m.<br>Place:           TBD |
| 27 | Discovery Cut-off:       January 28, 2008 |
| 28 | Pre-trial Conference:    May 5, 2008<br>Trial Date:              May 27, 2008 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on January 4, 2008 at 9:00 a.m., at a location to be determined by Discovery Master Hon. Edward Infante (Ret.), or at such other time as may be directed by Judge Infante, Mattel, Inc. will, and hereby does, move the Court, pursuant to Federal Rules of Civil Procedure 30(b)(6), 34 and 37, for:

(1)    an order enforcing the Discovery Master's May 16, 2007 and August 14, 2007 Orders and compelling MGA Entertainment, Inc. ("MGA") to comply therewith by designating and producing fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21, 22, 23, 24, 25, 27, 28, 31, 34, 39, 40 and 41 in Mattel's Second Notice of Deposition of MGA Entertainment Inc. (the "Second Notice") on dates of Mattel's selection;

(2)    an order overruling each of the improper instructions not to answer questions interposed at the deposition of MGA designee Spencer Woodman and compelling Spencer Woodman or such other person selected by MGA as its designee to provide complete testimony on Topic 34 as twice previously ordered by the Discovery Master;

(3)    an order compelling MGA to produce documents that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition as documents which he reviewed and relied upon to refresh his recollection in preparation for his deposition;

(4)    an order overruling each of the improper instructions not to answer questions interposed at the deposition of MGA designee Lisa Tonnu;

(5)    an order reopening the deposition of MGA designee Lisa Tonnu based on a complete reversal of testimony made through purported written "changes" to her deposition transcript;

(6)    for an order compelling Rebecca Harris to sit for the completion of her deposition and/or compelling such other person selected by MGA as its designee to complete the testimony on Topics for which Harris was previously designated;

1       (7)   an order imposing sanctions for MGA's willful violations of the Discovery

2   Master' Orders of May 16, 2007 and August 14, 2007, for MGA's improper instructions

3   not to answer deposition questions and for MGA's improper coaching, harassing and

4   obstructionist conduct at the September 24-25, 2007 deposition of Lisa Tonnu and at

5   the October 9, 2007 deposition of Spencer Woodman in an amount of $10,000, which is

6   less than the amount of attorneys' fees, costs and expenses incurred by Mattel in

7   bringing this Motion and in deposing MGA's unprepared designees on Topic Nos. 11,

8   13, 14, 19, 21, 22, 23, 24, 25, 27, 28, 31, 34, 39, 40, and 41; and

9       (8)   for a report and recommendation to Judge Stephen G. Larson that

10   recommends the imposition of preclusion sanctions, that certain facts related to the

11   topics compelled be deemed admitted, and/or that MGA be found in contempt for

12   MGA's willful and repeated violations of the Discovery Master's Orders.

13       This Motion is made on the grounds, among others, that MGA failed to produce

14   witnesses with knowledge as ordered to testify on Topic Nos. 11, 13, 14, 19, 21, 22, 23,

15   24, 25, 27, 28, 31, 34, 39, 40 and 41 of the Second Notice.  Each of these previously

16   compelled Topics relates to information central to this litigation and reasonably

17   available to MGA, including Bratz revenues, Bratz creation and evidence collection.

18   MGA's willful failures and refusals to comply with the Discovery Master's Orders

19   justify sanctions and a recommendation of preclusive sanctions and of contempt.

20       This Motion is further made on the grounds that MGA waived any claim of

21   privilege regarding documents used to prepare its MGA's Rule 30(b)(6) designee,

22   Kenneth Lockhart, because Mr. Lockhart testified that he reviewed the subject

23   documents to refresh his recollection prior to his deposition, and testified that the

24   documents, in fact, refreshed his recollection.

25       This Motion is further made on the grounds that counsel for MGA defending the

26   depositions of MGA designee Spencer Woodman and MGA designee Lisa Tonnu

27   instructed them not to answer questions on alleged privilege and other grounds, when

28

1 | the privilege did not apply and the other instructions were legally impermissible and

2 | designed simply to interfere with Mattel's ability to obtain relevant information.

3 | This Motion is further made on the grounds that MGA's counsel purported to

4 | make written changes to the deposition transcripts of MGA designee Lisa Tonnu that

5 | directly contradicted her sworn testimony at the deposition, including repeatedly

6 | changing answers of "No" to "Yes." In many instances, because the "No" response

7 | given by the witness at deposition had terminated lines of inquiry, the complete reversal

8 | of the answers has denied Mattel the right and opportunity for follow-up questions, and

9 | a full and fair examination.

10 | This Motion is based on this Notice of Motion and Motion, the accompanying

11 | Memorandum of Points and Authorities, the Declaration of Jon Corey, the Declaration

12 | of Diane Hutnyan, Separate Statement Nos. 1 and 2, filed concurrently herewith, the

13 | Notice of Lodging lodged concurrently herewith, the records and files of this Court, and

14 | all other matters of which the Court may take judicial notice.

15 | **Statement of Local Rule 37-1 Compliance**

16 | The parties met and conferred regarding issues raised by this Motion on July 23,

17 | 2007 and times thereafter, including on November 16, 21, and 30 and December 4,

18 | 2007 after the substitution of MGA's new counsel.

19 |

20 | DATED:  December 5, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

21 |

22 |                                          By /s/ Jon D. Corey

23 |                                          Jon D. Corey
       Attorneys for Mattel, Inc.

24 |

25 |

26 |

27 |

28 |

-3-

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS .................................................................... 4

I.   THE DISCOVERY MASTER ORDERS MGA TO PRODUCE RULE 30(B)(6) WITNESSES, AND THE DISTRICT COURT REJECTS MGA'S CHALLENGE TO THE ORDER ........................................... 4

II.  MGA PRODUCES DESIGNEES WITHOUT ADEQUATE KNOWLEDGE ON MULTIPLE COMPELLED TOPICS .............................. 8

    A.   MGA Produces Lockhart As Its Designee On Electronic Evidence Preservation and Collection And Other Topics, But He Lacks Knowledge ........................................................... 9

    B.   MGA's Designee Tonnu Lacked Information On Designated Topics ................................................................. 12

    C.   MGA Produces Harris As A Designee, But She Lacks Knowledge ............................................................. 18

    D.   MGA Produces Woodman As Its Designee On Sworn Statements, But He Lacks Knowledge ................................... 21

III. MATTEL MAKES ADDITIONAL EFFORTS TO RESOLVE MGA'S NON-COMPLIANCE WITH THE COURT'S ORDERS, BUT TO NO AVAIL ......................................................................... 33

ARGUMENT .............................................................................. 38

I.   MGA HAS NO JUSTIFICATION FOR ITS NON-COMPLIANCE WITH THE MAY 16, 2007 ORDER ................................................. 38

    A.   The Discovery Master Should Sanction MGA For Its Failure To Comply With the May 16, 2007 Order ............................... 38

    B.   The Topics, By Definition, Are Within the Knowledge of MGA ........ 39

        1.   The Information Sought In the Topics On Which Lockhart Was Designated Is Reasonably Available to MGA ................. 39

        2.   The Information Sought in the Topics on which Tonnu was Designated is Reasonably Available to MGA .................... 41

        3.   The Information Sought In The Topics On Which Ms. Harris Was Designated Is Reasonably Available to MGA ......................................................... 42

        4.   The Information Sought With Respect to Topic 34 Is Reasonably Available to MGA ................................... 44

-i-

II. THE COURT SHOULD COMPEL MGA TO PRODUCE DOCUMENTS REVIEWED BY MR. LOCKHART TO REFRESH HIS RECOLLECTION PRIOR TO HIS DEPOSITION ................................. 45

III. MGA'S INSTRUCTIONS NOT TO ANSWER QUESTIONS REGARDING MGA'S POTENTIAL SPOLIATION OF KEY ORIGINAL BRATZ DOCUMENTS WERE IMPROPER ............................ 46

IV. THE COURT SHOULD OVERRULE MGA'S OTHER IMPROPER INSTRUCTIONS NOT TO ANSWER QUESTIONS AT THE TONNU DEPOSITION AND IMPOSE SANCTIONS FOR COUNSEL FOR MGA'S INTERFERENCE WITH QUESTIONING ......... 50

V. MS. TONNU'S DEPOSITION SHOULD BE REOPENED AS A RESULT OF MATERIAL REVISIONS TO HER DEPOSITION TRANSCRIPTS ............................................................................. 60

VI. MGA'S REFUSAL TO PROVIDE MATTEL WITH ADEQUATE TIME TO DEPOSE ITS RULE 30(B)(6) WITNESS REBECCA HARRIS IS UNREASONABLE ...................................................... 64

VII. MGA'S CONTINUED DELIBERATE REFUSAL TO ALLOW MATTEL FROM GETTING TESTIMONY ON TOPIC 34, AFTER TWO PREVIOUS COURT ORDERS, CANNOT BE TOLERATED ......... 65

VIII. MGA'S FAILURE TO COMPLY WITH THE DISCOVERY MASTER'S ORDER PREJUDICES MATTEL .............................................. 68

IX. MGA SHOULD BE SANCTIONED FOR ITS SEVERE DISCOVERY ABUSE ............................................................................................ 68

X. THE DISCOVERY MASTER SHOULD RECOMMEND THAT PRECLUSION SANCTIONS BE IMPOSED AGAINST MGA .................. 71

XI. THE DISCOVERY MASTER SHOULD RECOMMEND THAT MGA BE FOUND IN CONTEMPT OF THE MAY 16 ORDER AND THE AUGUST ORDER ......................................................................... 75

CONCLUSION ........................................................................................ 76

1

# <u>TABLE OF AUTHORITIES</u>

2
<u>Page</u>

3

## <u>Cases</u>

4
5
*American Directory Serv. Agency, Inc. v. Beam,*
   131 F.R.D. 15 (D.D.C. 1990) ........................................................ 70

6
*Baker Oil Tools, Inc. v. Geo Vann, Inc.,*
   828 F.2d 1558 (Fed. Cir. 1987) .................................................... 65

7
8
*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.,*
   175 F.R.D. 34 (S.D.N.Y. 1997) .................................................... 48

9
*Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.,*
   228 F.3d 275 (3d Cir. 2000) ..........................................38, 40, 44

10
11
*Boyd v. Univ. of Md. Med. Sys.,*
   173 F.R.D. 143 (D. Md. 1997) ...................................................... 51

12
*CFTC v. Noble Metals, Int'l, Inc.,*
   67 F.3d 766 (9th Cir. 1995) .......................................................... 71

13
14
*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991) ......................................................................... 68

15
*Chilcutt v. U.S.,*
   4 F.3d 1313 (5th Cir. 1993) .......................................................... 71

16
17
*Condit v. Dunne,*
   225 F.R.D. 100 (S.D.N.Y. 2004) .................................................. 64

18
*Control Components, Inc. v. Valtek, Inc.,*
   609 F.2d 763 (5th Cir. 1980) ........................................................ 66

19
20
*Delcastor, Inc. v. Vail Assocs., Inc.,*
   108 F.R.D. 405 (D. Colo. 1985) .................................................... 49

21
*Ehrlich v. Howe,*
   848 F. Supp. 482 (S.D.N.Y. 1994) .............................................. 46

22
23
*Fink v. Gomez,*
   239 F.3d 989 (9th Cir. 2001) ........................................................ 68

24
*In re Heritage Bond Litigation,*
   223 F.R.D. 527 (C.D. Cal. 2004) ................................................. 69

25
26
*Martin v. Inclusion, Inc.,*
   2007 WL 778183 (D. Idaho Mar. 13, 2007) ............................. 72

27
*Pearl Brewing Co. v. Jos. Schlitz Brewing Co.,*
   415 F. Supp. 1122 (S.D. Tex. 1976)......................................47, 49

28

-iii-

*Penk v. Oregon State Bd. of Higher Education,*
  816 F.2d 458 (9th Cir. 1987) ................................................................ 71

*People ex rel. Wheeler v. Southern Pacific Transp. Co.,*
  1993 WL. 816066 (E.D. Cal. Sept. 2, 1993) ...................................... 49

*Resolution Trust Corp. v. Southern Union Co.,*
  985 F.2d 196 (5th Cir. 1993) ..................................................... 38, 40, 44

*Roadway Express, Inc. v. Piper,*
  447 U.S. 752 (1980) ............................................................................ 68

*U.S. v. 22.80 Acres of Land,*
  107 F.R.D. 20 (N.D. Cal. 1985) ......................................................... 46

*U.S. v. Sumitomo Marine & Fire Ins. Co., Ltd.,*
  617 F.2d 1365 (9th Cir. 1980) ............................................................ 38

## **Statutes**

35 U.S.C. § 115 .............................................................................. 26, 65

37 C.F.R. § 151(b) ............................................................................... 65

37 C.F.R. 2.20 ...................................................................................... 66

37 C.F.R. 2.33 ................................................................................. 66, 67

Fed. R. Civ. P. 26(b)(4)(B) ........................................................... 47, 48

Fed. R. Civ. P. 30 .......................................................................... 50, 65

Fed. R. Civ. P. 30(b)(6) ................................................................. *passim*

Fed. R. Civ. P. 30(d) ........................................................................... 64

Fed.R.Civ. P. 30(d)(1) ................................................................... 51, 65

Fed. R. Civ. P. 30(d)(2) ...................................................................... 63

Fed. R. Civ. P. 30(d)(4) ...................................................................... 51

Fed. R. Civ. P. 30(e) ..................................................................... 59, 60

Fed. R. Civ. P. 35(b) ........................................................................... 47

Fed. R. Civ. P. 37(b) .................................................................. 38, 47, 48

Fed. R. Civ. P. 37(2)(B) .................................................................. 71, 75

Fed. R. Civ. P. 37(b)(2)(A) ................................................................. 71

Fed. R. Civ. P. 37(d) ........................................................................... 38

1

## **Other Authorities**

2

FED. PRAC. GUIDE: CIV. PROC. BEFORE TRIAL, § 11:925-927
    (*Rutter's Group 2007*)................................................................47, 48, 51

FED. PRAC. GUIDE: CIV. PROC. BEFORE TRIAL, § 11:1593.1
    (*Rutter's Group 2007*)........................................................................63

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL, INC.'S MOTION RE 30(B)(6) ORDERS

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The Discovery Master already found that MGA was in "willful" and "flagrant" violation of his Order compelling <u>Rule</u> 30(b)(6) depositions and imposed sanctions. Apparently unfazed, MGA persists in flouting the Discovery Master's Orders and has failed and refused to produce designees with knowledge of numerous compelled <u>Rule</u> 30(b)(6) Topics from a Notice that Mattel served more than ten months ago. Over six months ago, on May 16, 2007, the Discovery Master had ordered that MGA produce designees on all Topics in Mattel's Second Notice. For many Topics, MGA failed to comply with the May 16 Order and indeed failed to identify designees, which led to the Discovery Master's sanctions Order in August 2007. For other Topics, MGA put warm bodies in a chair; Mattel asked them questions. For <u>19</u> of the compelled Topics, however, MGA's designees knew nothing or were flatly instructed not to answer questions on the Topics. These were not on collateral matters, but on Topics that go to the heart of this case, such as Bratz revenues, MGA's collection and preservation of evidence and the origins of Bratz and Bratz development.

For example, the Discovery Master ordered MGA to provide a witness to testify on Bratz revenues and profits – issues that are crucial to Mattel's damages claim, among others. Compelled Topic No. 25 clearly reads: "YOUR revenues and profits from BRATZ, including without limitation, YOUR gross and net profits, and YOUR costs associated therewith." MGA's designee on the Topic testified that she knew neither the revenues nor the profits from Bratz:



-1-

1   Indeed, ████████████████████████████████████████████

2   ████████████████████ and could not even identify anyone within MGA who had this

3   information.

4        This same witness was designated to testify about Bryant's fee and indemnity

5   agreements with MGA.  Not only did the Discovery Master order MGA to produce

6   a witness on this subject, but as the Discovery Master knows Mattel had to move

7   multiple times just to obtain any of these documents from MGA and Bryant in the

8   first place.  The designee nevertheless knew nothing about the negotiation of the key

9   agreement (or even the names of the persons involved in it) or the meaning of its

10  key terms.

11       As another example, the Discovery Master ordered MGA to produce a designee

12  to testify about MGA's preservation and collection of evidence in this case.  MGA's

13  designee on its preservation and collection of electronic evidence such as emails,

14  however, ████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████████████████ :

17              ████████████████████████████████████████

18              ████████████████████████████████████████

19              ████████████████████████████████████████

20              ████████████████████████████████████████████

21              ██████████████████████

22              ████

23              ████████████████████████████████████

24              ████████████████████████████████████

25              ████████

26              ████████

27              . . .

28



Perhaps the most egregious example is the MGA witness designated to testify on the subject of MGA's sworn statements. The Discovery Master had to compel MGA twice – including in the August Sanctions Order – to produce its witness on this Topic, and Judge Larson subsequently rejected in their entirety MGA's challenges to the Discovery Master's Order. Compelled Topic No. 34 reads: "Other than those previously filed and served in this ACTION or in which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of when such testimony or sworn statement was taken, given, signed, made or filed)."

Despite three Orders clearly requiring compliance on this Topic, when the deposition finally occurred MGA's designee was instructed not to answer questions on sworn statements made by MGA and MGA personnel relating to Bratz and relating to

1   the time period prior to June 30, 2001 in 34 separate exhibits, including 4 patent

2   applications and related documents; 20 copyright registrations and corrections; 8

3   applications for trademark registrations; and a Statement of Claim, affidavit and exhibit

4   MGA filed in the Hong Kong High Court.  MGA purported to do so on the alleged –

5   and wholly false – bases that they were not "sworn" statements and/or did not contain a

6   date prior to June 30, 2001.  MGA's designee was also instructed not to answer any

7   questions regarding sworn testimony by MGA and its personnel as to the development

8   of Bratz in the pre-June 2001 time period in the recent *Art Attacks v. MGA* case.  As for

9   the statements in the few exhibits as to which the designee was not instructed, he either

10   knew nothing about the statements beyond reading them, and/or said he could only

11   testify as to "MGA's position" on the statements with no regard to the actual facts.

12        MGA has no justification for its defiance of the Discovery Master's Orders.

13   MGA cannot credibly argue that it knows nothing of Bratz revenues, the development

14   of Bratz or the collection of evidence in response to Mattel's document requests.  MGA

15   nevertheless failed to produce witnesses with knowledge of this crucial information as

16   required by the <u>Rules</u> and the Discovery Master.  MGA's knowing—and repeated—

17   failure to comply with the Court's Orders justifies not only sanctions, but a report and

18   recommendation of preclusive sanctions and contempt.

19                     **Statement of Facts**

20   **I.**     **THE DISCOVERY MASTER ORDERS MGA TO PRODUCE RULE**

21        **30(B)(6) WITNESSES, AND THE DISTRICT COURT REJECTS**

22        **MGA'S CHALLENGE TO THE ORDER**

23        <u>The Discovery Master Orders MGA To Produce Rule 30(b)(6) Designees in</u>

24   <u>Response to Topic Nos. 11, 13, 14, 19, 21, 22, 23, 24, 25, 27, 28, 31, 34, 39, 40 and 41</u>.

25   On May 16, 2007, the Discovery Master granted Mattel's Motion to Compel MGA to

26

27

28

Produce 30(b)(6) Witnesses.[1]  Among other things, the Discovery Master compelled MGA to "make its designees for all Topics in the Second Notice, except Topic Nos. 25 and 26, available for deposition on or before June 30, 2007."[2]  The Discovery Master also overruled all of MGA's objections to the Topics in the Second Notice:  "All of MGA's objections and/or limitations regarding the Topics in Mattel's Rule 30(b)(6) deposition notices are overruled."[3]  As the Discovery Master explained at the hearing:

> I believe that Mattel is entitled to an order compelling the full compliance with Rule 30(b)(6) of the Federal Rules of Civil Procedure; namely, designate the witnesses on each topics to be presented, produce them, and allow them to be questioned.  With respect to the topics, I find all of the topics relevant.  I overrule the objections, the limitations, and the conditions asserted by MGA as to each topic.[4]

The compelled Topics seek information that goes to the heart of the case, including:

- The development of Bratz before it was made available for purchase.

- When and to whom MGA first offered Bratz for sale.

- Who first manufactured, shipped and distributed Bratz.

- Bratz revenues and profits.

- MGA's access to Mattel's earlier DIVA STARZ project had elements which subsequently appeared in Bratz.

---

[1]   May 16, 2007 Order Granting Mattel Inc.'s Motion to Compel MGA To Produce Witnesses For Deposition Pursuant To Rule 30(b)(6) ("May 16 Order"), ¶ 3, attached to the Declaration of Jon Corey, dated December 5, 2007 ("Corey Dec."), Exh. 11.
[2]   Id. at ¶ 3.  The Discovery Master granted Mattel's motion to compel as to Topic Nos. 25 and 26 as well, but ruled that "[t]he parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice.  Such depositions may take place after June 30, 2007."  Id., ¶ 4.
[3]   May 16 Order, ¶ 5, attached to Corey Dec., Exh. 11; see also May 15 Transcript, 21:16-25, attached to the Corey Dec., Exh. 10.
[4]   Transcript of May 15, 2007 Motion to Compel Hearing, 21:16-25 ("May 15 Transcript"), attached to the Corey Dec., Exh. 10.

-5-

- The identity of persons who worked on Bratz and payments made to them.

- Fee and indemnification agreements.

- MGA's testing and handling of original Bratz drawings.

- MGA's sworn statements pertaining to Bratz's creation and development.

- MGA's evidence preservation and collection.

The specific compelled Topics relevant to the Motion are set forth below in full for the Discovery Master's convenience:

**Topic No. 11:** The exhibition, or proposed, offered, contemplated or requested exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise discussed with or communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that REFER OR RELATE thereto.

**Topic No. 13:** COMMUNICATIONS prior to June 30, 2001 between YOU and any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or any BRATZ DESIGN.

**Topic No. 14:** When and where BRATZ was first manufactured, shipped, distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

**Topic No. 19:** Each agreement or contract between YOU and any PERSON other than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of when such agreement or contract was negotiated or executed), including without limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that REFER OR RELATE thereto, and any actual or proposed amendments thereto.

**Topic No. 21:** YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ project information and DESIGNS prior to June 30, 2001.

**Topic No. 22:** The payment of money or anything of value by or for YOU or on YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work, services or activities performed by BRYANT prior to January 1, 2001 (regardless of when such payment was

-6-

actually made), (b) for DESIGNS CREATED by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in connection with BRATZ or any BRATZ DESIGN at any time, including without limitation the timing, manner and amount(s) thereof and the reasons therefor.

**Topic No. 23:** The payment of royalties to, for or on behalf of BRYANT made by or for YOU or on YOUR behalf, including the timing, manner and amounts of such payments and the reasons therefor.

**Topic No. 24:** Any indemnification and fee arrangement that YOU and/or BRYANT has sought, proposed, requested or obtained in connection with this ACTION.

**Topic No. 25:** YOUR revenues and profits from BRATZ, including without limitation, YOUR gross and net profits, and YOUR costs associated therewith.

**Topic No. 27:** The payment of money or anything of value that YOU have made or offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and reasons therefor.

**Topic No. 28:** COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

**Topic No. 31:** The IDENTITY of each PERSON who, at any time since January 1, 1998, has performed any work or services for, by or on behalf of YOU while such PERSON was employed by MATTEL, the nature and timing of each such PERSON's work or services and the amount(s) paid by YOU to each such PERSON.

**Topic No. 34:** Other than those previously filed and served in this ACTION or in which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

**Topic No. 39:** The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

-7-

**Topic No. 40:** The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan or information) that YOU received in any manner from any PERSON who was at the time an employee of MATTEL or who had previously been an employee of MATTEL.

**Topic No. 41:** The testing of or sampling from DOCUMENTS that REFER OR RELATE TO BRATZ or BRYANT, including without limitation such testing or sampling in connection with any ink, paper or chemical analysis performed or attempted to be performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results and reports relating thereto.[5]

Judge Larson Rejects MGA's Challenge to the Discovery Master's May 16, 2007 Order. On May 31, 2007, MGA filed a motion seeking reversal of the Discovery Master's May 16, 2007 Order with respect to the Topics relating to MGA's net worth (Topic No. 26), MGA's prior sworn statements with respect to Bratz and other relevant subjects (Topic No. 34), and the ink, paper and chemical analysis conducted by MGA's consultant (Topic No. 41). In his July 2, 2007 Order, Judge Larson rejected MGA's challenge in its entirety, required compliance with the Order compelling designees to testify on those Topics, and specifically noted that the person designated by MGA "shall testify as to matters known or reasonably available to the organization."[6]

## II.   MGA PRODUCES DESIGNEES WITHOUT ADEQUATE KNOWLEDGE ON MULTIPLE COMPELLED TOPICS

MGA designated Lisa Tonnu as its Rule 30(b)(6) designee for Topic Nos. 24, 31, 37, 39 (in part), 40 and 41 of Mattel's Second Notice of Deposition.[7] MGA designated Kenneth Lockhart as its Rule 30(b)(6) designee for Topic Nos. 38, 39 and 42 of the Second Notice. MGA designated Rebecca Harris as its Rule 30(b)(6) designee for

---

[5] See Second Notice, attached to the Corey Dec., Exh. 8.
[6] July 2, 2007 Minute Order at 4, attached to the Corey Dec., Exh. 15 (emphasis added).

-8-

1 Topic Nos. 13 (except with respect to manufacturers), 14, 22 and 23 on April 13, 2007.[8]

2 MGA later informed Mattel that it would also designate Ms. Harris for Topic Nos. 19,

3 21, 27 and 28.[9]  Then, on May 15, 2007, MGA indicated that Ms. Harris would testify

4 on Topic 11, to the extent that Topic was not covered by prior deposition testimony.[10]

5 Subsequently, after the Discovery Master's August 2007 Sanctions Order against MGA

6 discussed below, MGA designated Spencer Woodman as its Rule 30(b)(6) designee for

7 Topic No. 34.[11]

8      **A.    MGA Produces Lockhart As Its Designee On Electronic Evidence**

9            **Preservation and Collection And Other Topics, But He Lacks**

10           **Knowledge**

11          Mattel deposed Mr. Lockhart on June 14-15, 2007.  He was designated to testify

12 regarding MGA's computer systems, evidence location and preservation, and collection

13 of evidence responsive to Mattel's requests.  Mr. Lockhart was reasonably prepared to

14 address MGA's preservation and data backup practices after January 2007.[12]  Because

15 he joined MGA approximately two years ago and spent the first year devoted to a

16 specific project, he gained company-wide exposure only in mid-2006.[13]  As to any time

17 period before 2005, his knowledge was limited or non-existent.

18 ──────────────

19     [7]   Letter from Michael Zeller to Jim Jenal, dated July 11, 2007, attached to the
Corey Dec., Exh. 21.

20     [8]   Letter from Diana Torres to Michael Zeller, dated April 13, 2007, attached to
the Corey Dec., Exh. 28.

21     [9]   Letter from Diana Torres to Michael Zeller, dated April 16, 2007, Corey Dec.,

22 Exh. 29.  At her deposition, counsel for MGA represented that Harris was not
designated on Topic No. 21.  Harris Tr., 89:20-90:6, attached to the Corey Dec.,

23 Exh. 7.

24     [10]   Letter from Kerry Lyon Grossman to Michael Zeller, dated May 15, 2007,
attached to the Corey Dec., Exh. 30.

25     [11]   Letter from James P. Jenal to B. Dylan Proctor, dated August 22, 2007,

26 attached to the Declaration of Diane C. Hutnyan, dated December 5, 2007
("Hutnyan Dec."), Exh. 2.

27     [12]   See, e.g., Lockhart Tr., 85:5 - 87:3, attached to the Corey Dec., Exh. 6.

28     [13]   Lockhart Tr., 9:14-16; 11:25 - 12:9, attached to the Corey Dec., Exh. 6.



1  Most significantly,

14  See Lockhart Tr. 233:5 - 234:6; 250:2-6; 251:4-7; and 288:16-24, attached to the Corey Dec., Exh. 6.

15  Lockhart Tr., 108:12-17, attached to the Corey Dec., Exh. 6.

16  Lockhart Tr., 109:13-16, attached to the Corey Dec., Exh. 6.

1    . . .



21       Nor were these the only deficiencies in Mr. Lockhart's testimony.

22    Accompanying Separate Statement No. 1 sets forth additional instances in which his

23    testimony and other MGA designees' testimony provided on each compelled Topic was

24    inadequate.

25

26    [17] Lockhart Tr., 150:21-24, attached to the Corey Dec., Exh. 6.

27    [18] Lockhart Tr., 270:5-8, attached to the Corey Dec., Exh. 6.
       [19] Lockhart Tr., 271:2-7, attached to the Corey Dec., Exh. 6.

28    [20] Lockhart Tr., 288:9-24, attached to the Corey Decl., Exh. 6.

1    **B.    MGA's Designee Tonnu Lacked Information On Designated Topics**

2    At Her Initial Deposition Session, Tonnu Admits To Lack Of Knowledge On Her

3    Designated Topics.    On July 19, 2007, Mattel deposed Lisa Tonnu.    She similarly

4    lacked sufficient knowledge.    For example, MGA designated her to testify on Topic

5    No. 24, which relates to the fee and indemnification agreements that MGA repeatedly

6    sought to withhold from Mattel, even in the face of the Discovery Master's Orders that

7    MGA produce them.[21]    When Mattel inquired about MGA's agreement to pay Bryant's

8    attorney's fees, she knew nothing about the agreement, including the meaning of key

9    terms or any facts surrounding its negotiation:

10/11    Q    The next phrase [in the agreement] is: "while at this time MGA is aware of no facts that would call your truthfulness into question." What does that refer to?

12    Mr. Jenal:  Objection.  Lacks foundation.  Calls for speculation.  Calls for a legal conclusion.

13    The Witness:  I do not know.

14    By Mr. Corey:

15    Q    Who negotiated this document?

16    A    I do not know.

17/18    Q    Do you know who at MGA provided input into this document or made the decisions that are reflected in this paragraph, this last paragraph on page 2?

19    A    No, I do not know.

20/21    Q    And you don't know what the reference is here with respect to Mr. Bryant's truthfulness or "lack of truthfulness" refers to?

22    Mr. Jenal:  Lacks foundation.  Calls for speculation.

23    The Witness:  No, I do not know.

24    By Mr. Corey:

25/26    Q    If you wanted to find out the answer to that question, who would you ask?

27

28    _____

[21]    May 15, 2007 Order at 10:11-14, attached to the Corey Dec., Exh. 14.

-12-

1   A   I don't even know.[22]

2   Tonnu was similarly ill-prepared for each of the other Topics for which she was

3   designated,[23] save Topic No. 37 relating to MGA's corporate structure.

4   <u>The Discovery Master Finds MGA In Willful Violation of The May 16, 2007</u>

5   <u>Order, And MGA Produces Ms. Tonnu For Further Testimony.</u>  On July 23, 2007,

6   Mattel sent MGA a meet and confer letter outlining MGA's failure to comply with the

7   May 16 Order and identifying the deficiencies in Ms. Tonnu's testimony by topic.[24]

8   Mattel informed MGA it would seek an order compelling production of a competent

9   witness and for sanctions.[25]   MGA responded by defending its "education" of

10  Ms. Tonnu on self-selected portions of the Topics and reiterated its objection to Topic

11  No. 41, regarding ink, paper and chemistry testing of original Bratz documents,[26] even

12  though MGA's objection had been rejected by the Discovery Master and then by Judge

13  Larson.  MGA did not offer to reproduce Ms. Tonnu.  The parties met and conferred on

14  August 1, 2007.[27]  Mattel again pointed out that Ms. Tonnu had no knowledge of the

15  topics and again explained that MGA failed to comply with the Order as a result.[28]

16      In the meantime, Mattel also moved for an order compelling MGA to produce

17  witnesses for deposition pursuant to <u>Rule</u> 30(b)(6) and for sanctions because of MGA's

18  ───────────────

19  [22]   Tonnu Tr., 132:18 - 133:1, attached to the Corey Dec., Exh. 1.  On MGA's

20  second attempt to comply with the Discovery Master's May 16 Order, Ms. Tonnu admitted that she made no attempt to determine what "truthfulness" referred to.

21  9/24/07 Tonnu Tr. at 481:25 - 484:6, attached to the Corey Dec., Exh. 2.
    [23]   <u>See</u> Separate Statement No. 1 at 2-39.

22  [24]   Letter from Jon Corey to Jim Jenal, dated July 23, 2007 ("July 23rd Letter"),

23  attached to the Corey Dec., Exh. 38.  Between the time of Mattel's letter and the telephonic meet and confer session, the parties reached an agreement concerning

24  Topics 39 and 40 discussed in the July 23rd Letter.
    [25]   Letter from Jon Corey to Jim Jenal dated July 23, 2007, attached to the Corey

25  Dec., Exh. 38.

26  [26]   Letter from Jim Jenal to Jon Corey, dated July 27, 2007, attached to the Corey Dec., Exh. 39.

27  [27]   Corey Dec., ¶ 47.

28  [28]   Corey Dec., ¶ 47.

1   complete failure to produce witnesses on certain Topics that the Discovery Master had
2   ordered. The Discovery Master found MGA to be in "clear and flagrant" violation of
3   the May 16 Order with respect to its willful failure to provide witnesses to testify on
4   Topic Nos. 34, 40 and 41 and ordered MGA to produce witnesses on these Topics by
5   September 30, 2007.[29] In addition, in the same Order, the Discovery Master compelled
6   MGA to produce by September 30, 2007 its witnesses in response to Topic Nos. 21, 25
7   and 26—MGA's access to Mattel's DIVA STARZ project, Bratz revenues and profits
8   and MGA's net worth.[30]

9        MGA eventually agreed to produce Ms. Tonnu to provide additional testimony
10  on her previously designated Topics as to which she had insufficient information as
11  well as on Topics that were the subject of the August 14 Order.[31] MGA accordingly
12  stated that it would produce Ms. Tonnu for further deposition to testify on Topics 21,
13  24, 25, 26, 31, 39, 40 and 41.[32]

14       MGA Again Fails to Produce a Knowledgeable 30(b)(6) Witness and Improperly
15  Instructs Tonnu Not To Answer Questions, in Violation of the May 16 Order and the
16  August 14 Order. On September 24 and 25, 2007, Mattel resumed the deposition of
17  Ms. Tonnu as MGA's designee for Topic Nos. 21, 24, 25, 26, 31, 39, 40 and 41. Even
18  after having agreed to bring her back and despite the clear requirements of the
19  Discovery Master's May 16 and August 14 Orders, Ms. Tonnu still lacked sufficient
20  knowledge to answer previously asked questions or address her designated Topics.

21       For example, with respect to the fee and indemnification agreements, Tonnu
22  testified:

23

24  [29]  Order Granting in Part Mattel's Motion to Enforce the Court's Order of
25  May 16, 2007, to Compel MGA to Produce Witnesses For Deposition Pursuant to
    Rule 30(b)(6), and Granting Request for Sanctions, dated August 14, 2007 ("August
26  Order"), attached to the Corey Dec., Exh. 12, at 8:20-21, 9:15-22.
27  [30]  August Order, p. 7:4-6, 9:24-10:2, attached to the Corey Dec., Exh. 12.
    [31]  Corey Dec., ¶ 47.
28  [32]  Corey Dec., ¶ 47.

1       Q.  Do you know how much MGA Entertainment has paid Mr. Bryant pursuant to the agreement in Exhibit 519?

2

3       Ms. Morgenthaler-Lever:  Objection. Outside the scope and asked and answered.

4       The Deponent:  No.

5       By Mr. Corey:

6       Q.  Did you ever make any effort to find out?

7       Ms. Morgenthaler-Lever:  Asked and answered --

8       The Deponent:  No.

9       Ms. Morgenthaler-Lever:  -- Outside the scope.

10       By Mr. Corey:

11       Q.  Do you know -- Do you know whether MGA has paid Littler Mendelson's fees in full pursuant to Exhibit 519?

12

13       Ms. Morgenthaler-Lever:  Objection.  Outside the scope. Asked and answered.

14       The Deponent:  No.

15       By Mr. Corey:

16       Q.  Did you make any effort to find out?

17       Ms. Morgenthaler-Lever:  Same objections.

18       The Deponent:  No.[33]

19       Ms. Tonnu was no more prepared to testify on Topic Nos. 24, 31, 39 (in part), 40

20   and 41 than she was the first time and was equally unprepared for the topics on which

21   she was newly designated -- Topic Nos. 21 and 25.[34]  For example, when asked about

22   Bratz-related revenues, ███████████████████████████████████████:

23

24   _____

    [33]  9/24/07 Tonnu Tr., 480:16-481:14, attached to the Corey Dec., Exh. 2; see

25   also id. at 481:25 - 499:8, attached to the Corey Dec., Exh. 2.

26       [34]  Topic No. 26 seeks MGA's net worth.  Ms. Tonnu's testimony in this regard is also deficient, ████████████████████████████

27   ████████.  9/24/07 Tonnu Tr., 333:3-7, attached to the Corey Dec., Exh. 2. Mattel will take that at face value for present purposes, but reserves the right to

28   revisit the completeness of the testimony ███████████████████████ (footnote continued)



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  35  9/24/2007 Tonnu Tr., 403:17 - 404:22, attached to the Corey Dec., Exh. 2.

27  36  9/24/2007 Tonnu Tr., 406:5-13, attached to the Corey Dec., Exh. 2.

    37  9/24/2007 Tonnu Tr., 407:20 - 408:3, attached to the Corey Dec., Exh. 2.

28  38  9/24/2007 Tonnu Tr., 457:9-11, attached to the Corey Dec., Exh. 2.

-17-

1   Ms. Tonnu again lacked even basic information sought by the Topics, and MGA

2   willfully flouted the Discovery Master's Orders as a result.[40]

3       Compounding these violations, MGA's counsel also instructed Tonnu not to

4   answer questions.[41]   For example, MGA instructed on questions regarding DIVA

5   STARZ, which Tonnu followed.[42]   For the convenience of the Discovery Master,

6   Mattel has collected the questions and the improper instructions in Separate Statement

7   No. 2, which is filed concurrently with this Motion.

8       **C.   MGA Produces Harris As A Designee, But She Lacks Knowledge**

9       MGA Delays in Producing Harris for Deposition.   Ms. Harris's deposition was

10  initially scheduled for June 12, 2007.[43]   A week before the scheduled date, MGA

11  unilaterally cancelled it -- along with the depositions of a number of other Rule

12  30(b)(6) witnesses.[44]   In a letter dated June 7, 2007, Mattel requested alternate dates for

13  the cancelled depositions.[45]   MGA did not respond.

14      On June 15, 2007, Mattel requested a meet and confer session regarding MGA's

15  failure to comply with the Discovery Master's May 16 Order, including its failure to

16  provide deposition dates for Ms. Harris and other Rule 30(b)(6) designees.[46]   The

17  parties met and conferred on June 22, 2007 and, at that time, MGA belatedly provided

18

19

20  [39]   9/24/2007 Tonnu Tr., 457:25 - 458:2, attached to the Corey Dec., Exh. 2; see
    also 417:13 - 419:23, attached to the Corey Dec., Exh. 2.

21  [40]   See Argument, Section I, infra.

22  [41]   See Argument, Section I, infra and Separate Statement Number 2, filed
    concurrently herewith.

23  [42]   See, e.g. 9/25/07 Tonnu Tr., 535:10 - 541:6, 542:2-22, and 556:15 - 558:19,

24  attached to the Corey Dec., Exh. 2; see also Separate Statement Number 2.

25  [43]   Letter from Michael Zeller to Diana Torres, dated June 7, 2007, attached to
    the Corey Dec., Exh. 31.

26  [44]   Id.

    [45]   Id.

27  [46]   Letter from Michael Zeller to Diana Torres, dated June 15, 2007, attached to

28  the Corey Dec., Exh. 32.

-18-

1   dates for Ms. Harris's deposition.[47]  All of MGA's proffered dates were past the Court-

2   ordered June 30, 2007 deadline by which MGA was ordered to produce its witnesses.

3   Nonetheless, in an effort to avoid motion practice, Mattel confirmed Ms. Harris's

4   deposition for July 10 and 11, 2007.[48]  As Mattel explained to MGA, Mattel would

5   need two days of deposition testimony to cover the nine Topics for which Harris had

6   been designated.[49]  In an e-mail dated June 27, 2007, however, counsel for MGA

7   informed Mattel that, despite the number and importance of the Topics on which

8   Ms. Harris had been designated, MGA would make Ms. Harris available for only seven

9   hours on July 10, and would not produce her at all on July 11.[50]  On July 5, 2007, MGA

10  again unilaterally cancelled Ms. Harris's scheduled deposition.[51]

11          MGA Designee Harris Lacks Knowledge.  MGA finally produced Ms. Harris for

12  deposition on July 20, 2007.  As a result of MGA's refusal to provide Mattel with a

13  reasonable amount of time for the deposition, Mattel was not able to fully question

14  Ms. Harris on all of the many Topics on which she was designated.[52]

15          Ms. Harris also lacked knowledge of the compelled Topics on which she was

16  designated.[53]   For example, MGA designated her to testify on Topic No. 14—

17  concerning when Bratz was first manufactured, shipped, distributed or sold—a subject

18  that goes to the heart of the case and that the Discovery Master has compelled MGA to

19  produce a witness on.  The following was typical of the questions and answers on the

20  Topic at her deposition:

21

---

22  [47]  Letter from B. Dylan Proctor to Jim Jenal, dated June 23, 2007, attached to
23  the Corey Dec., Exh. 33.
      [48]  Id.
24    [49]  Id.
      [50]  Letter from B. Dylan Proctor to Jim Jenal, dated June 28, 2007, attached to
25  the Corey Dec., Exh. 34.
26    [51]  Letter from Michael Zeller to Jim Jenal, dated July 6, 2007, attached to the
      Corey Dec., Exh. 35.
27    [52]  See Argument, Section VI, infra.
28    [53]  See Argument, Section I, infra.

MATTEL, INC.'S MOTION RE 30(B)(6) ORDERS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20 Further, Ms. Harris

21

22

23

24

25

26

27

28     [54]   Harris Tr., 116:15 - 117:16, attached to the Corey Dec., Exh. 7.

**D.     MGA Produces Woodman As Its Designee On Sworn Statements, But He Lacks Knowledge**

Mr. Woodman Was Uniquely Unqualified To Testify As To Sworn Statements Relating To Bratz Relating To The Time Period Before June 30, 2001.  On October 9, 2007, MGA produced Spencer Woodman to testify on behalf of the corporation with respect to twice-compelled Topic 34.  It is clear that Mr. Woodman was not competent to testify on the Topic.  He had been employed by the company for less than a year.[56] His responsibilities were solely the administration of licensing contracts and royalties.[57]  To prepare for the deposition, Mr. Woodman reviewed only some sworn statements made by others previously, read Carter Bryant's deposition transcripts under the supervision of counsel, and spoke "for a few minutes" with one other person.[58]  He did not review any sworn statements in MGA's many submissions to the Copyright Office or to the Patent and Trademark Office.[59]

MGA's Counsel Instructed Mr. Woodman Not To Answer Any Questions Relating to MGA's Sworn Statements To The Patent and Trademark Office or The Copyright Office.  At the deposition, Mr. Woodman was instructed not to answer

---

[55]   Harris Tr., 117:18 - 118:11, attached to the Corey Dec., Exh. 7.
[56]   Transcript of Spencer Woodman deposition, October 9, 2007 ("Woodman Tr."), 10:10-15, attached to the Hutnyan Dec., Exh. 1.
[57]   Woodman Tr., 10:16-11:7, attached to the Hutnyan Dec., Exh. 1.
[58]   Woodman Tr., 19:9-22:20; 23:25-24:16, attached to the Hutnyan Dec., Exh. 1.

MATTEL, INC.'S MOTION RE 30(B)(6) ORDERS

dozens of questions relating to sworn statements to the PTO and to the Copyright Office on the purported basis that they were not sworn statements.[60]   Counsel's instructions were belligerent and lengthy and designed to be as disruptive as possible. Consider this example, which came after five earlier instructions on the exact same basis:

> Mr. Klevens:  I instruct the witness not to answer your question because you've left out the critical predicate of item 34, which is not just that it be some document that relates to the period prior to June 30, 2001, but that it be a sworn statement, transcript, declaration, affidavit pertaining to Bratz prior to June 30th, 2001.  Unless you can explain to me that this is such a sworn statement I'm going to instruct the witness not to answer questions about Exhibit 507.

> Ms. Hutnyan:  I'll ask counsel once again to kindly refrain from lengthy speeches that are irrelevant and designed to coach his witness.  My question did not pertain to the sworn statement aspect, nor did it need to.  My question was much simpler and it pertained to whether the document related to a date prior to or including June 30, 2001.

---

[59]   Woodman Tr., 35:5-13; 45:21-25, attached to the Hutnyan Dec., Exh. 1.

[60]   Woodman Tr., 46:8 - 47:25 (exh. 500, patent application); 48:15-25 (exh. 501, document from PTO referring to sworn statement in patent application); 49:18-23 (all patent applications and trademark and copyright registrations); 66:14-23 and 66:24 - 67:9 (exh. 501); 71:12 - 72:21, 73:8-16, and 76:7-17 (exh. 548, amendment submitted to PTO by putative inventor Larian); 78:19-79:2 (exh. 505, copyright registration); 86:17-87:4 (exh. 506, copyright registration); 88:9-89:7 (exh. 507, copyright registration); 92:12-24 (exh. 508, copyright registration); 94:12-15 and 94:25 - 95:4 (exh. 509, copyright registration); 95:6-17 (exh. 510, copyright registration); 95:25 - 96:9 (exh. 511, copyright registration); 96:16 - 97:7 (exh. 512, copyright registration); 97:20 - 98:11 (exh. 513, copyright registration); 98:24 - 99:7 (exh. 514, copyright registration); 99:9-24 and 100:20-101:15 (exh. 553, trademark registration); 102:2 - 103:1 (exh. 554, trademark registration); 103:16 - 104:1 and 104:10-11 (exh. 557, copyright registration); 104:17 - 105:7 (exh. 558, copyright registration); 106:4-14 (exhs. 559-566, copyright registrations); 122:12-21, 123:16-20 and 124:10-17 (exh. 585-589 and 591, trademark registrations), attached to the Hutnyan Dec., Exh. 1.

1    Mr. Klevens:  Yeah, he's instructed -- he's instructed not to
2    answer unless you can explain to me that this document is
     a sworn statement.

3    Ms. Hutnyan:  Counsel, just so I make sure I understand
4    your position fully, it is -- it is your position that
     submissions made by MGA or its counsel to the Patent
5    and Trademark Office or to the Copyright Office are not
     sworn statements.

6    Mr. Klevens:  My position is you haven't shown him a
7    sworn statement yet, except for the document entitled
     'Declaration of Carter Bryant,' about which I allowed him
8    to testify.  The rest of these documents are not sworn
     statements within 34.  To the contrary, they are documents
9    expressly within Item 33, and they are not within 34, and
     they are not sworn statements.  That's my position.  That's
10   why I've instructed him not to answer.

11   Ms. Hutnyan:  Okay.  And so every --

12   Mr. Klevens:  So show him a sworn statement and he'll
     talk to you about it, if it's in the proper period and refers to
13   Bratz, but so far you haven't been doing that.  And I would
     like the record to reflect that we started at 9:30; it's now
14   11:10, and counsel has yet to show the witness a single
     document within the deposition of item 34, save possibly
15   Exhibit 502, althought 502 did not pertain to the
     appropriate time period, so even that was not within the
16   definition of item 34.  So counsel is wasting a lot of our
     time, but . . . [after further colloquy] move along.  I've
17   never seen a lawyer waste as much time in a deposition as
     you have.[61]

18       Mattel's counsel tried to persuade MGA's counsel that statements to the Patent

19   and Trademark Office, and to the Copyright Office, to obtain intellectual property

20   rights are in fact sworn statement but MGA's counsel instructed anyway.[62]  MGA's

21   counsel further intentionally obstructed the deposition by repeatedly objecting to and

22   _____

23   [61]   Woodman Tr., 88:12-91:7, attached to the Hutnyan Dec., Exh. 1.
     [62]   Woodman Tr., 47:15-19 (Mr. Klevens:  "And how did this get to be a sworn
24   statement, this document that you've handed him, Exhibit 500?"  Ms. Hutnyan:  "A
     patent application is sworn."); 77:15 - 79:2 (Mattel counsel pointed out evidence
25   that copyright registration exhibit was a sworn statement but MGA's counsel
     instructed anyway); 92:12 - 93:1 (explaining to MGA's counsel that copyright
26   registrations are sworn statements); 100:2-12 (Mattel's counsel attempting to lay
     foundation for fact that applications for trademark registrations are supposed to be
27   truthful), attached to the Hutnyan Dec., Exh. 1.

28

-23-

1   instructing on sworn statements in or relating to submissions to the Copyright Office or

2   to the Patent Trademark Office on the additional purported basis that the statement in

3   question fell within Topic 33.[63]  For example, Mr. Klevens stated that "Mr. Woodman

4   is instructed not to answer questions regarding Exhibit 501 on the same basis: *that it is*

5   *covered within item 33 and* not covered within item 34."[64]  Despite such instructions,

6   however, counsel clarified this objection later in the deposition and stated that if a

7   statement was within Topic 34, Mr. Woodman would be allowed to testify about it even

8   if it also fell within Topic 33:

9         Mr. Klevens:  The witness is instructed not to answer
          regarding Exhibit 557 because it's not a document within
10        the definition of item 34.

11         Ms. Hutnyan:  And also because it -- it falls within topic
          33, you said --
12
        Mr. Klevens:  Well, it does that as well.
13
        Ms. Hutnyan:  -- is this one of those?  Oh.
14
        Mr. Klevens:  But if it fell within 34 he would be
15        authorized to testify about it.  It does not; it falls within 33
          and not within 34.[65]
16
17       Consistent with this, Mr. Klevens did not instruct on questions with regard to

18   exhibits 580, 581, 582, 583, 584 and 590, which are applications for trademark

19   registration (so supposedly "within Topic 33," according to MGA) because they

20   prominently featured a declaration on their face (apparently placing them "within Topic

21

22

23

---

24   [63]  Woodman Tr., 46:8-22 and 47:22 - 48:2 (exh. 500); 48:17-20 (exh. 501);
25   49:18-23 (all patent applications and registrations); 89:17-22 (exh. 506); 96:16-25
    (exh. 512); 97:24 - 98:2 (exh. 513); 98:25 - 99:3 (exh. 514); 99:17-22 (exh. 553);
26   104:19-23 (exh. 558); 106:6-12 (exhs. 559-566); and 122:17-21 (exhs. 585-589),
    attached to the Hutnyan Dec., Exh. 1.
27   [64]  Woodman Tr., 48:17-20, attached to the Hutnyan Dec., Exh. 1.
28   [65]  Woodman Tr., 103:24 - 104:9, attached to the Hutnyan Dec., Exh. 1.

34" as well).[66] But this made no difference, since Mr. Woodman candidly admitted that he had no information whatsoever about the sworn statements in them anyway:

> Q.  If I asked you all the same questions that I asked you with regard to 580, would all of your answers be the same?
>
> A.  Yes.
>
> Q.  And that is because you have no information about the sworn statement in document Exhibit 581?
>
> A.  That is correct.
>
> Q.  Okay.  Let's look at 582.  This is Exhibit 582.
>
> A.  And if I were to ask you all the same questions that I asked you with regard to Exhibit 580, would you give me the same answers?
>
> Q.  And that is because you have no information pertinent to Exhibit 582?
>
> A.  Correct.
>
> Q.  This exhibit 582 -- and let's do 584, too.  Okay, you have 583 and 584 in front of you?
>
> A.  Yes, I do.
>
> Q.  Okay.  And if I were to ask you all the same questions that I asked you with respect to Exhibit 580, would you give me the same answers with respect to 583 and 584?
>
> A.  Yes, I would.
>
> Q.  And that's because you have no information about 583 and 584?
>
> A.  That is correct.[67]

Mr. Woodman Was Also Instructed Not To Answer If A Sworn Statement Relating to Bratz Did Not Have A Date Before June 30, 2001 On It, Even If It Clearly

---

[66]  Woodman Tr., 106:18 - 110:8; 117:5 - 118:12 (not instructing as to exh. 580, although witness admitted he had "no information beyond what's on the document" and "was [not] prepared to speak on this document beyond what's on the sheet here"), attached to the Hutnyan Dec., Exh. 1.

[67]  Woodman Tr., 121:7 - 122:9, attached to the attached to the Hutnyan Dec., Exh. 1.

-25-

1  <u>Related To The Relevant Period</u>.  Despite three prior Court Orders, MGA's counsel

2  sought to unilaterally limit Topic 34 in whatever way they could, so they also took an

3  unreasonably narrow view of the phrase "refer or relate to the time period prior to June

4  30, 2001" in Topic 34 such that it only allowed for discussion of a document if it

5  specifically referred on its face to a date prior to June 30, 2001.[68]  The following

6  illustrates how completely all of counsel's various instructions -- which were not even

7  arguably based on a legitimate privilege claim -- improperly blocked Mattel's

8  examination.  Mattel's counsel presented Mr. Woodman with Exhibit 500, which was a

9  patent application for a "Doll With Aesthetic Changeable Footgear" by MGA's CEO,

10  Isaac Larian, as named inventor.[69]  Mattel's counsel sought testimony about this

11  application, since its representations that Mr. Larian was the first and original inventor

12  of this Bratz feature, although made pursuant to the "oath of applicant" of 35 U.S.C.

13  section 115, are inconsistent with Carter's Bryant's testimony in this case that he had

14  invented the feature.[70]  MGA's counsel instructed Woodman not to answer on the

15  improper, and wholly erroneous, basis that the statements in the application were not

16  sworn.[71]

17       Next, Mattel presented Exhibit 501, an office action from the patent examiner not

18  only relating to, but in fact challenging, the statements Mr. Larian made in Exhibit 500

19  by pointing out that the invention in his sworn application was preceded by "the

20

21

22

---

[68]  Woodman Tr., 53:2-4; 60:16 - 61:11; 221:16-19; 222:2 - 225:10 (MGA's
counsel refusing to allow testimony on a sentence-by-sentence basis); 298:24 -
299:16 (parsing out available testimony in pieces) attached to the Hutnyan Dec.,
Exh. 1.

[69]  <u>See</u>, Deposition Exh. 500, attached to the Hutnyan Dec., Exh. 1.

[70]  Woodman Tr., 46:8-9, attached to the Hutnyan Dec., Exh. 1.

[71]  Woodman Tr., 46:14-24, attached to the Hutnyan Dec., Exh. 1.

1    BRATZtm dolls reference" launched in "June of 2001."[72]  MGA's counsel instructed on

2    the basis that the Office Action was not a sworn statement.[73]

3        The next exhibit presented, Exhibit 502, is a sworn declaration from Carter

4    Bryant purporting to declare under oath that the release of the "BRATZtm dolls

5    reference" the patent examiner believed took place in June 2001 "did not occur until the

6    fall of the year 2002."[74]  Although the witness was allowed to testify that this was a

7    "sworn statement," Mr. Klevens instructed him not to answer other questions on the

8    basis that the document did not relate to the time period before June 30, 2001[75] (and it

9    turned out that Mr. Woodman did not know anything about the document anyway).[76]

10   Mr. Klevens and Mr. Woodman were unconcerned about the fact that the whole point

11   of Mr. Bryant's sworn statement was to rebut the PTO's understanding that the dolls

12   existed in June 2001.[77]

13       Finally, Mattel's counsel presented Exhibit 548, which is Isaac Larian's

14   amendment containing further sworn statements in support of his inventorship and

15   relying on the Carter Bryant deposition of Exhibit 502 to do it.  Mr. Klevens instructed

16   Mr. Woodman not to answer.[78]  As a result of all these improper instructions, MGA

17   was able to avoid giving any meaningful testimony as to the discrepancy between Mr.

18   Larian's sworn statements to the Patent Office and the other evidence in this case.

19       <u>MGA Refused To Allow Testimony As To Sworn Statements At The Art Attacks</u>

20   <u>Trial</u>.  Pertinent sworn statements were made by Mr. Larian and other relevant

21   witnesses as to the creation and development of Bratz at the *Art Attacks* trial, which

22   took place earlier this year in the Southern District of California.  MGA instructed Mr.

23   _____

[72]   Woodman Tr., 48:15-16, attached to the Hutnyan Dec., Exh. 1; see also Exh.

24   501, at MGA 0825441-42, attached to Hutnyan Dec., Exh. 8.

25   [73]   Woodman Tr., 48:17-25; 50:12-15, attached to the Hutnyan Dec., Exh. 1.
     [74]   Exh. 502, at MGA 0825458, attached to the Hutnyan Dec., Exh. 9.

26   [75]   Woodman Tr., 53:2-16, attached to the Hutnyan Dec., Exh. 1.

27   [76]   Woodman Tr., 63:12-14, 68:7-12, attached to the Hutnyan Dec., Exh. 1.
     [77]   Woodman Tr., 59:24 - 68:21, attached to the Hutnyan Dec., Exh. 1.

28

-27-

1   Woodman not to answer any questions with regard to any sworn statements on the basis

2   that lawyers for Mattel had observed parts of the trial.[79]

3       Mr. Woodman Knew Almost Nothing About The Other Sworn Statements He

4   Was Allowed To Testify On.  As for those materials Woodman was willing to testify

5   on and had even reviewed in preparation for his deposition, he had no information

6   beyond what was on the face of the documents.[80]  He could not answer basic questions

7   about the circumstances of these sworn statements, such as how they were prepared,[81]

8   whether there was an investigation associated with them,[82] what the context of the

9   statements were, or why the statement was made,[83] who read or reviewed or approved

10  of the statements,[84] or who authorized them.[85]  This was true across the board:

11      Q.  When you prepared for your deposition today, you didn't check into -- you looked at sworn statements;

12      correct?

13      The Deponent:  That is correct.

14      Q.  Okay.  And with respect to any of those sworn statements, did you check into who had provided

15      authorization to submit that sworn statement?

16      The Deponent:  Did I check into?

17      Q.  Uh-huh.

18      A.  No, I did not.

19      Q.  Do you otherwise know?

20

21  [78]  Woodman Tr., 72:4-73:6, attached to the Hutnyan Dec., Exh. 1.
[79]  Woodman Tr., 41:15-19, attached to the Hutnyan Dec., Exh. 1.

22  [80]  See, e.g., Woodman Tr., 135:25 - 136:11; 137:3-12; 212:22 - 213:5, attached

23  to the Hutnyan Dec., Exh. 1.
[81]  See, e.g., Woodman Tr., 139:4-16; 142:14-143:2, attached to the Hutnyan

24  Dec., Exh. 1.

25  [82]  See, e.g., Woodman Tr., 143:10-13, attached to the Hutnyan Dec., Exh. 1.
[83]  See, e.g., Woodman Tr., 139:1-3; 143:4-8, attached to the Hutnyan Dec., Exh.

26  1.

27  [84]  See, e.g., Woodman Tr., 139:17 - 140:4, attached to the Hutnyan Dec., Exh.
1.

28  [85]  See, e.g., Woodman Tr., 141:20-25, attached to the Hutnyan Dec., Exh. 1.

1      A.  I'm sorry?

2      Q.  Do you otherwise know?  I mean, did you already
       know and that's why you didn't check it out?

3      The Deponent:  No, I did not know.[86]

4

5      .   .   .

6      Q.   Were there any sworn statements that you looked at
       during your preparation for this deposition where you had
       information about who had reviewed or approved that
7      sworn statement before it was signed?

8      Mr. Klevens:  Objection; compound, vague and ambiguous.

9      The Deponent:  No, I did not have information.

10     By Ms. Hutnyan:

11     Q.   On that?

12     A.   On that.

13     Q.   Okay.  For all of the sworn statements that you looked
       at in preparation for your deposition, did you have any
14     information about who originally drafted the sworn
       statement?

15
       Mr. Klevens:  Objection; compound, vague and ambiguous.
16
       The Deponent:  Can you repeat the question?
17
       By Ms. Hutnyan:
18
       Q.   Sure.  With all of the prior sworn statements that you -
19     - I'm sorry.

20     With regard to all of the sworn statements that you
       reviewed in connection with preparing for your deposition,
21     do you have any facts with relation to any of those
       statements as to who reviewed or approved that sworn
22     statement before it was signed?

23     Mr. Klevens:  Objection; vague, ambiguous and
       compound.
24
       The Deponent:  When you say I have 'facts,' what do you
25     mean by 'facts'?

26     By Ms. Hutnyan:

27

28     [86]  Woodman Tr., 214:11 - 215:1, attached to the Hutnyan Dec., Exh. 1.

-29-

1    Q.  Do you have any information?

2    A.  Just in my head or documentation or --

3    Q.  Either way, however you keep information.

4    Mr. Klevens:  Same objections.

5    A.  No.

6    By Ms. Hutnyan:

7    Q.  Okay.  So you -- so you don't know anything about --
     anything about the preparation of any sworn statement in
8    this case that you've seen; correct?

9    A.  About the --

10   Mr. Klevens:  Same objections.

11   The Deponent:  -- Preparation of the document?  No.

12   Q.  Or the statements therein?

13   Mr. Klevens:  Objection; compound.

14   The Deponent:  Correct.[87]

15       Mr. Woodman Lacked Facts To Testify On, But Admittedly Only Offered

16   "MGA's Position" As Purported  "Testimony."  As for those MGA sworn statements

17   Mr. Woodman did answer questions on, the extent of Mr. Woodman's purported

18   "testimony" about a sworn statement was mainly limited to only whether or not it was

19   consistent with the deposition testimony of Carter Bryant in this case.  Mr. Woodman

20   explained:  if he found a sworn statement was consistent with Mr. Bryant's testimony,

21   he would testify that it was "true," and if he believe it to be inconsistent, he would

22   testify that it was "wrong" or "inaccurate."  Mr. Woodman admitted that he took Mr.

23   Bryant's testimony at face value every time because that was "MGA's position."

24   Q.  Is the latter part, the part that says that Bryant did
     make original design drawings of the Bratz dolls, is that --
25   is that part correct?

26   A.  That is correct.

27

28   _____
     [87]   Woodman Tr., 215:12 - 217:10, attached to the Hutnyan Dec., Exh. 1.

-30-

1    Q.   Okay.  So that part that you feel is incorrect, what is your belief that that is incorrect based on?

2

3    A.   From the documentation that I have reviewed.

     Q.   And what was that?

4

     A.   That was Carter Bryant's deposition.

5

     Q.   Okay.  So this statement by Mr. Lee under Oath to the Hong Kong Court is incorrect?

6

7    A.   As it pertains --

8    Mr. Klevens:  Asked and answered.

9    The Deponent:  Yes.  As it pertains to that portion of the sentence, correct.

10

     By Ms. Hutnyan:

11

     Q.   And so you take Mr. Bryant's deposition at face value in order to determine that that is incorrect?

12

13   A.   That is correct.

14   Q.   Do you believe that everything in Mr. Bryant's deposition transcript is true?

15

     A.   Yes.

16

     * * *

17

     Q.   What's your basis for believing that all that deposition testimony is true and accurate?

18

19   A.   Well, because that's the information I was given as the position of M.G.A.

20

     Q.   Okay. . . . Did you receive any preparation materials that were inconsistent in any way with Mr. Bryant's testimony?

21

22   A.   Yes.

23   Q.   What was that?

24

     A.   Well, that's -- there's a lot of information, and if -- if you want to ask me specific questions, I can certainly tell you whether there's an inconsistency.  But -- I mean, there are some in here (indicating), and we've talked about one already.  "Here" being Steven Lee's Affirmation.

25

26

27

     Q.   So where there was an inconsistency with what you read in Mr. Bryant's testimony, you always took his word for it?

28

-31-

MATTEL, INC.'S MOTION RE 30(B)(6) ORDERS

1    Mr. Klevens:  Objection; argumentative.

2    The Deponent:  Yes.

3    By Ms. Hutnyan:

4    Why?

5    A.  I --

6    Mr. Klevens:  Objection; asked and answered.

7    The Deponent:  Because that's the position I took.

8    By Ms. Hutnyan:

9    Q.  Okay.  And that's M.G.A.'s position?

10   A.  And that's M.G.A.'s position.[88]

11   Mr. Woodman then claimed that he did not know whether Carter Bryant's

12   deposition testimony was right or wrong, and did not conduct any independent

13   investigation of the facts because he was just testifying as to his employer's position:

14   Q.  So you don't have any personal knowledge of any of
     the facts that Mr. Bryant swore to in his deposition;

15   correct?

16   A.  That is correct.

17   Q.  How do you know that Mr. Lee isn't right and that Mr.
     Bryant made a mistake?

18

19   A.  I don't know that.

20   Q.  But it was clear what M.G.A.'s position was?

21   A.  Correct.

22   Q.  And that's what you're testifying to?

23   A.  That is correct.[89]

24       .   .   .

25   Q.  Did you do any independent investigation to find out
     whether Carter was right?

26   ────────────────

27   [88]  Woodman Tr., 146:11 - 148:2; 148:6 - 149:6, attached to the Hutnyan Dec.,
     Exh. 1.

28   [89]  Woodman Tr., 150:10-21, attached to the Hutnyan Dec., Exh. 1.

1    A.  No, I did not.

2    Q.  Because that wouldn't be M.G.A.'s position?

3    Mr. Klevens:  Objection; asked and answered --

4    By Ms. Hutnyan:

5    Q.  Correct?

6    Mr. Klevens:  -- argumentative.

7    By Ms. Hutnyan:

8    Q.  Correct?

9    A.  I'm sorry, what was the question?

10   Q.  You didn't seek out any independent information
     because you were accepting Mr. Bryant's deposition as
11   being M.G.A.'s position; correct?

12   A.  Yes, that is correct.[90]

13        Thus, although MGA had been compelled to produce a witness to fully address

14   these Topics, without limitations, it did not do so.

15   **III.   MATTEL MAKES ADDITIONAL EFFORTS TO RESOLVE MGA'S**

16   **NON-COMPLIANCE WITH THE COURT'S ORDERS, BUT TO NO**

17   **AVAIL**

18        On September 16, 2007, Mattel requested a conference of counsel regarding

19   Harris's insufficient testimony on Topics 11, 13, 14, 23, 27 and 28, and Mattel's need

20   for additional time to fairly examine her as to all of her designated Topics.[91]   On

21   September 18, 2007, Mattel sent a meet and confer letter inviting MGA to discuss the

22   deficiencies in Lockhart's testimony.[92]   The parties subsequently met and conferred on

23

24

---

25   [90]   Woodman Tr., 185:11 - 186:1, attached to the Hutnyan Dec., Exh. 1.
26   [91]   Letter from Michael Zeller to Diana Torres, dated September 16, 2007,
     attached to the Corey Dec., Exh. 47.
27   [92]   Letter from Jon Corey to Jim Jenal dated September 18, 2007, attached to the
28   Corey Dec., Exh. 46.

-33-

September 21, 2007 to discuss an omnibus deposition schedule in this case.[93]  At that meeting, MGA agreed to provide dates for Ms. Harris's continued deposition.[94]  On October 3, 2007, however, counsel for MGA informed Mattel that Ms. Harris was on medical leave and indicated that MGA would need to check on her condition before it could advise Mattel as to her availability.[95]  In a letter dated October 8, 2007, Mattel reminded MGA of its obligation, pursuant to the Discovery Master's May 16, 2007 Order, to produce a Rule 30(b)(6) witness for Topics 11, 13, 14, 19, 21, 22, 23, 27 and 28, and of its prior promise to provide dates for Ms. Harris's continued deposition.[96]  Mattel further noted that if Ms. Harris was unavailable to testify on these Topics, MGA was required to produce another witness.[97]

Immediately after Ms. Tonnu testified on September 24, 2007, Mattel sent MGA's counsel an e-mail message, asking MGA to ensure Ms. Tonnu could competently testify before continuing her deposition on September 25, 2007.[98]  MGA did not respond, and her testimony on the following day remained deficient.[99]  At the end of that day, counsel for Mattel and MGA continued with the in-person meet and confer session concerning Ms. Tonnu's deficient testimony.[100]  Mattel stated that MGA still had failed to comply with the Court's Orders requiring it to produce competent

---

[93]   Letter from Scott Gizer to Jon Corey, dated September 25, 2007, attached to the Corey Dec., Exh. 48.

[94]   Id.

[95]   Letter from Jon Corey to Amman Khan, dated October 4, 2007, attached to the Corey Dec., Exh. 49.  Letter from Scott Gizer to Jon Corey, dated October 5, 2007, attached to the Corey Dec., Exh. 50.

[96]   Letter from Jon Corey to Scott Gizer, dated October 8, 2007, attached to Corey Dec., Exh. 51.

[97]   Id.

[98]   E-mail message from Jon Corey to Alisa Morgenthaler-Lever, dated September 24, 2007, attached to the Corey Dec., Exh. 41.

[99]   See Separate Statement Number 1, filed concurrently herewith.

[100]   See Letter from Jon Corey to Alisa Morgenthaler-Lever, dated October 5, 2007, attached to the Corey Dec., Exh. 42.

-34-

1  witness to address the Topics.[101]  MGA responded by stating that it would get back to

2  Mattel concerning the matter, but it did not do so.[102]

3       After receiving no response, Mattel again wrote MGA, restating its concerns and

4  inviting MGA to again meet and confer in an attempt to finally resolve these issues.[103]

5  MGA responded by saying only, in essence, that MGA had obtained new counsel that

6  would be responding.[104]   Following the replacement of MGA's counsel, Mattel

7  provided MGA's new counsel with a list of MGA's outstanding discovery obligations,

8  which included the continuation of Ms. Harris's deposition[105] and the other issues

9  addressed in this Motion.  By letter dated October 29, 2007, Mattel again reminded

10  MGA of its obligation to respond as to Ms. Harris's availability or to otherwise produce

11  a competent <u>Rule</u> 30(b)(6) witness on the Topics for which she was designated.[106]

12       After the month-long stay that MGA obtained as a result of its substitution of

13  counsel, Mattel met and conferred with MGA's new counsel regarding the Second

14  Notice and the subject matter of this Motion on November 16, 2007.[107]  Although

15  Mattel had repeatedly identified the deficiencies in the testimony and the specific topics

16  (and the deficiencies are apparent from the face of the respective transcripts), counsel

17  for MGA professed ignorance of the alleged deficiencies in the testimony, so Mattel

18

19  [101]   <u>Id.</u>

20  [102]   Corey Dec., ¶¶ 54-55.

21  [103]   <u>See</u> Letter from Jon Corey to Alisa Morgenthaler-Lever, dated October 5, 2007, attached to the Corey Dec., Exh. 42.

22  [104]   Corey Dec., ¶ 56.

23  [105]   E-mail from Jon Corey to Thomas Nolan, dated October 14, 2007, attached to the Corey Dec., Exh. 52.

24  [106]   Letter from Michael Zeller to Thomas Nolan, dated October 29, 2007, attached to the Corey Dec., Exh. 53.

25  [107]   Letter from Jon Corey to Raoul Kennedy, dated November 21, 2007,

26  attached to the Corey Dec., Exh. 54.  On October 11, 2007, the law firm Skadden, Arps, Slate, Meagher & Flom LLP replaced O'Melveny & Meyers LLP as counsel

27  for MGA.  On October 15, 2007, Judge Larson granted MGA's request for a two-

28  week stay.  The stay was continued to November 14, 2007.  <u>See</u> Corey Dec., ¶ 69.

1  sent a letter identifying additional examples of specific testimony Mattel contended was
2  deficient.[108]

3      On November 21, 2007, counsel further met and conferred.  MGA offered to
4  produce Ms. Tonnu again, but only on Topic Nos. 21 (DIVA STARZ access), 23
5  (Bryant royalties, on which another witness was previously designated),[109] 25 (Bratz
6  revenue and profits), 31 (payments to and services provided to MGA by Mattel
7  employees) and 40 (Mattel-authored documents in MGA's possession).  For those few
8  topics that MGA agreed to produce a witness to testify, it said that Tonnu would be
9  available, at the earliest, during the second week of January, less than three weeks
10 before the January 28, 2008 phase 1 discovery cut-off.[110]  This also was despite the fact
11 that the Discovery Master had ordered MGA to provide a witness no later than June 30,
12 2007 for all Topics save three, and no later than September 30, 2007 for Topic Nos. 21,
13 25 and 26.[111]  Further, MGA did not agree to produce a witness to address Topic
14 Nos. 39 and 41, on which Tonnu was designated.  Further still, MGA has given no
15 assurance that Tonnu or any other designee would be produced even on the dates
16 offered.  To the contrary, as late as November 26, 2007, MGA represented that it would
17 not provide any Rule 30(b)(6) witness, even on ordered Topics, until "all open issues

18
19

20  [108]  November 19, 2007 letter from J. Corey to T. Miller, Corey Dec., Exh. 45.
21  The only subsequent response was a letter from MGA's former counsel, informing
     Mattel of revisions to Ms. Tonnu's September 24 and 25, 2007 deposition testimony.
22  See Letter from Alisa Morgenthaler-Lever to Jon D. Corey, dated November 12,
     2007 ("Revisions Letter"), attached to the Corey Dec., Exh. 44. As discussed in
23  Argument, Section V, infra, this letter did not provide the requisite statement of
24  reasons for the changes and it was not signed by Ms. Tonnu.
     [109]  Tonnu was not previously designated on this topic of royalties to Bryant,
25  Harris was.
     [110]  Letter from Jon Corey to Raoul Kennedy dated November 26, 2007, attached
26  to the Corey Dec., Exh. 37.
27  [111]  See May 16, 2007 Order and August 14, 2007 Order, attached to the Corey
28  Dec., Exhs. 11 and 12, respectively.

1  with respect to <u>Rule</u> 30(b)(6) testimony is resolved" to MGA's satisfaction[112] and thus

2  purported to improperly impose conditions on its already long-overdue obligation to

3  comply with those Orders.  In addition, MGA did not agree to produce a witness to

4  address the topics on which either Harris or Lockhart were designated, but professed

5  ignorance of Mattel's complaints about their testimony, even though they were

6  identified, inter alia, in letters of September 16, 2007, September 18, 2007, and

7  October 29, 2007 (which attached the September 16 and September 18 letters).

8      On November 21, 2007, Mattel sent MGA's counsel a letter specifically

9  identifying the many deficiencies with MGA's designee on Topic 34, Mr. Woodman.[113]

10  Mattel accepted the first day MGA counsel made available to meet and confer on the

11  topic, which was nine days later.[114]   During the meet-and-confer, MGA's counsel

12  professed ignorance of the history related to the Courts' compelling of testimony as to

13  Topic 34 and proceeded to argue about various objections -- even though all of MGA's

14  objections as to Topic 34 were overruled by the Discovery Master back in May and

15  then were rejected by Judge Larson as well.  Mattel agreed to give MGA's counsel

16  additional time to report back as to whether MGA would bring itself into compliance

17  with the requirements of Topic 34.[115]

18      On Saturday, December 1, Mattel sent a confirming letter to MGA's counsel

19  setting forth its specific expectations as to what would be required to avoid a third

20  round of motion practice on the same Topic and invited MGA's counsel to agree to it.[116]

21  But on December 4, MGA's counsel sent back a letter that showed no progress had

22

23  [112]   Letter from M. Mumford to J. Corey dated November 26, 2007, at 4, Corey Dec., Exh. 60 (discussing Tonnu deposition).

24  [113]   Letter from Diane C. Hutnyan to Tom Nolan, dated November 21, 2007, Hutnyan Dec., Exh. 3.

25  [114]   Email exchange between Timothy Miller and Diane Hutnyan, dated

26  November 26, 2007, Hutnyan Dec., Exh. 4.

27  [115]   Hutnyan Dec. ¶ 6.

    [116]   Letter from Diane C. Hutnyan to Timothy Miller, dated December 1, 2007, Hutnyan Dec., Exh. 5.

28

1  been made.  Among other things, the letter (1) suggested that MGA was in compliance
2  with the Discovery Master's prior orders simply for putting Mr. Woodman's body in a
3  chair; (2) refused to provide testimony on all the subjects which were blocked by
4  improper instructions not to answer at the Woodman deposition; (3) defended a very
5  narrow view of the topic by omitting "of any other type" from its wording; (4)
6  reiterated MGA's view that any statements it makes to the Patent and Trademark Office
7  and to the Copyright Office in order to pursue intellectual property interests in the form
8  of patents, copyrights and trademarks, do not contain "sworn statements," even though
9  federal statute provides such statements indeed are statements under oath; (5) argued
10 that Mr. Woodman was in fact well prepared for his deposition; and (6) raised a new
11 and frivolous argument that all the circumstances of the sworn statements (had Mr.
12 Woodman known of them) would have been privileged , although counsel defending
13 the deposition never objected to those questions on the basis of privilege.[117]
14
15                          **Argument**
16 I.   **MGA HAS NO JUSTIFICATION FOR ITS NON-COMPLIANCE**
17      **WITH THE MAY 16, 2007 ORDER**
18      A.   **The Discovery Master Should Sanction MGA For Its Failure To**
19           **Comply With the May 16, 2007 Order**
20      Federal Rule of Civil Procedure 37(b) permits the Court to impose sanctions for
21 failure "to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b); see
22 U.S. v. Sumitomo Marine & Fire Ins. Co., Ltd., 617 F.2d 1365,1369-71 (9th Cir. 1980)
23 (upholding monetary and preclusion sanctions for failure to comply with court-ordered
24 discovery).  The willful failure to produce a witness with knowledge to testify
25 regarding compelled Rule 30(b)(6) topics justifies the imposition of sanctions.  For
26 example, in Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 300,
27 ─────────────────────
28 [117]   Letter from Timothy Miller to Diane C. Hutnyan, dated December 4, 2007,
   (footnote continued)

                          -38-

1   304 (3d Cir. 2000), the Court of Appeals upheld an order imposing sanctions under

2   Rule 37 based on counsel's failure to produce a Rule 30(b)(6) designee who lacked

3   information in the possession of the corporation and noted that "[p]roducing an

4   unprepared witness is tantamount to a failure to appear that is sanctionable under Rule

5   37(d)." See also Resolution Trust Corp. v. Southern Union Co., 985 F.2d 196, 197 (5th

6   Cir. 1993) (affirming sanctions order and stating that if the corporate designee "is not

7   knowledgeable about relevant facts . . . then the appearance is, for all practical

8   purposes, no appearance at all.").

9        MGA had an obligation to produce witnesses with adequate knowledge to testify

10  regarding the compelled Topics, which necessarily included information "known or

11  reasonably available to the organization". Fed. R. Civ. P. 30(b)(6); see also July 2,

12  2007 Minute Order at 4, attached to the Corey Dec., Exh. 15.  Here, the Discovery

13  Master ordered MGA to produce designees to testify on the full scope of the Topics. "I

14  find all of the topics relevant.  I overrule the objections, the limitations, and the

15  conditions asserted by MGA as to each topic."[118]  The District Court then upheld the

16  Order in all respects, and the Discovery Master again ordered compliance with his May

17  Order on August 16, 2007.  Nevertheless, and despite now having had months to

18  comply, MGA has flouted the Discovery Master's Orders.

19        **B.      The Topics, By Definition, Are Within the Knowledge of MGA**

20              **1.      The Information Sought In the Topics On Which Lockhart**

21                    **Was Designated Is Reasonably Available to MGA**

22        MGA has no excuse for its non-compliance.  Information related to evidence

23  preservation and collection is unquestionably known or reasonably available to MGA.

24  ████████████████████████████████.  As noted above, ████████████████

25  _____

26  at 2-3, Hutnyan Dec., Exh. 6.

27  [118]   Transcript of May 15, 2007 Motion to Compel Hearing, 21:22-25, attached
    to the Corey Dec., Exh. 10; see also May 16, 2007 Order, ¶ 5, attached to the Corey

28  Dec., Exh. 11.

1 ██████████████████████████████████████████████████

2 ████████████████████████████.[119]  When asked whether MGA

3 had preserved and collected evidence from other electronic sources--such as Outlook

4 ".pst" files, snap servers, data file servers or any local hard drive--████████████

5 ██████████████████████████████████████████████████

6 ████████████████████████████████████████[120]  For example,

7 Lockhart testified:



13 MGA's failure to produce a witness with knowledge unquestionably within the scope of

14 the compelled Topics is a willful violation of Court Orders and justifies the imposition

15 of sanctions.  See Black Horse, 228 F.3d at 304; Resolution Trust, 985 F.2d at 197.

16 MGA's non-compliance here as to the Topics regarding evidence preservation and

17 collection is particularly egregious, given that MGA unsuccessfully sought terminating

18 sanctions for Mattel's alleged failure to preserve evidence *and* has deposed Mattel

19

20

---

[119]  See Lockhart Tr., 233:5 - 234:6; 250:2-6; 251:4-7; 288:16-24, attached to the Corey Dec., Exh. 6.

[120]  Lockhart Tr., 108:12-19; id. at 150:21 - 151:5 (testifying that he did not know whether the snap servers had been searched, but suggesting that Mr. Tiongco did); id. at 233:12-19 (testifying that keyword searches were performed by his staff, but Lockhart did not know details); id. at 263:25 - 265:7 (testifying that the only e-mail search that Lockhart is aware of was conducted by Joe Tiongco or his subordinates); id. at 266:22 - 267:5; id. at 258:17 - 259:9 (testifying that Mr. Tiongco knows, but he does not, the location of any hard drive or image of any hard drive preserved for litigation purposes and that prior to 2006, Tiongco dealt with counsel in this action primarily), attached to the Corey Dec., Exh. 6.

[121]  Lockhart Tr., 150:21 - 151:2, attached to the Corey Dec., Exh. 6.

MATTEL, INC.'S MOTION RE 30(B)(6) ORDERS

1  computer and IT personnel for seven days.[122]  It nevertheless has blocked Mattel's

2  efforts to inquire into even the basics of MGA's preservation, collection or destruction

3  of relevant evidence, and has done so in defiance of the Discovery Master's Orders.

4      **2.     The Information Sought in the Topics on which Tonnu was**

5           **Designated is Reasonably Available to MGA**

6      It is also beyond dispute that MGA has knowledge of the Topics for which it

7  designated Ms. Tonnu, but that she had no meaningful information about.  For example,

8  with respect to Topic No. 24 'fee and indemnification agreements,' Mattel asked about

9  MGA's agreement to indemnify Bryant and payments associated with it.  MGA knows

10  why it did what it did and what it paid Bryant's counsel, yet Tonnu lacked that

11  information and made no effort to find out the answers to those questions.[123]

12  Ms. Tonnu also testified that Char Brooks, and MGA's accounts payable department,

13  has knowledge of MGA's payment of such fees.[124]   In fact, Tonnu spoke with

14  Ms. Brooks to prepare for other topics, but did not ask about MGA payments to

15  Bryant's lawyers or lawyers representing other witnesses.[125]  Accordingly, there can be

16  no dispute that MGA possessed knowledge of the Topics for which it designated

17  Ms. Tonnu yet it failed to provide.

18      As another example, with respect to Topic 25, ███████████████████

19  ████████████████████████████████████████████████████████████

20  ███████████[126]  And, MGA designated Tonnu to testify on Topic No. 21, concerning

21

22  [122]   See Order Denying Motion for Terminating Sanctions, Order Denying

23  Request for Interlocutory Appeal; Order Requiring Filing of Affidavits re Evidence
   Preservation, dated August 27, 2007, attached to the Corey Dec., Exh. 17; see also

24  Corey Dec., ¶ 60.

25  [123]   9/24/07 Tonnu Tr., 481:25 - 484:6, Corey Dec., Exh. 2.
   [124]   See, e.g. Tonnu Tr., 117: 2 - 119:6; 124:6 - 125:17; and 195:4-10, attached to

26  the Corey Dec., Exh. 1.

27  [125]   See Tonnu Tr. 147:5-19, attached to the Corey Dec., Exh. 1.
   [126]   See, e.g. 9/24/07 Tonnu Tr., 290:20 - 293:1, attached to the Core Dec.,

28  Exh. 2.

-41-

1  MGA's knowledge of non-public information of DIVA STARZ. Ms. Tonnu testified
2  that she spoke with Ms. Garcia to prepare for this Topic, and that Garcia told her that
3  she did not work on DIVA STARZ and had no access to and did not possess non-public
4  information regarding DIVA STARZ.[127] Less than two weeks later, however, Garcia
5  herself testified (although not as a designee on Topic No. 21) ████████████████
6  ████████████████████████████████████████████████████████
7  ████████████████  [128]

8              **3.    The Information Sought In The Topics On Which Ms. Harris**
9                  **Was Designated Is Reasonably Available to MGA**

10         Ms. Harris's testimony reveals that MGA possessed knowledge of Topics on
11  which she was designated on but that she did not have. Indeed, each of the Topics on
12  which Ms. Harris was designated related exclusively to Bratz development,
13  manufacturing, shipping, sales or marketing.

14         For example, ████████████████████████████████████
15  ████████████████████████████████—the subject of Topic
16  No. 11—████████████████████████████████████████
17  ████████████████████████████████.[129] In connection with

18  ───────────────
19  [127]   9/24/07 Tonnu Tr., 268:22 - 269:2; 276:17 - 282:24; and 287:16 - 289:5,
        attached to the Corey Dec., Exh. 2.
20  [128]   See 10/10/2007 Deposition of Paula Garcia ("Garcia Tr."), at 1100:13-19
21  (████████████████████████████████████████████████
22  ████████████████████████████████████████████████);
    Garcia Tr. 1113:11-16 (███████████████████████████████████);
23  Garcia Tr. 1139:23-1140:24 (████████████████████████████
24  ████████████████████████████████"); 1147:6-1149:23
25  (████████████████████████████████████████████████
26  ████████); Garcia Tr. 1150:9-1151:15 (██████████████████
    ████████████████████████████████████████
27  ████), attached to the Corey Dec., Exh. 20.
    [129]   Harris Tr., 288:24 - 289:2; 289:8 - 291:5; 303:8 - 306:9, attached to the
28  Corey Dec., Exh. 7.

───────────────

Topic 14, Ms. Harris was unable to identify the identity or role of any person who was involved in the first manufacture of the Bratz dolls, or the date when manufacturing began for the first Bratz dolls.[130] Her testimony, however, 

Further, with respect to Topic 13, concerning MGA's communications with retailers or distributors prior to June 30, 2001, Ms. Harris testified that

Additionally,

Yet, Ms. Harris was unable to provide it.

[130]   Harris Tr., 116:15 - 117:16; 115:5-15, attached to the Corey Dec., Exh. 7.
[131]   Harris Tr., 87:7 - 88:7, attached to the Corey Dec., Exh. 7.
[132]   Harris Tr., 178:1 - 178:7, attached to the Corey Dec., Exh. 7.
[133]   Harris Tr., 199:7 - 199:23, attached to the Corey Dec., Exh. 7.
[134]   Harris Tr., 187:6 - 192:11; 200:10 - 203:9, attached to the Corey Dec., Exh. 7.

-43-

1    Underscoring its lack of excuse for its failures to disclose crucial information,

2  MGA has represented to the Court that it preserves everything.[135]   Without any

3  justification for MGA's failure to comply with the Court's Orders, the Discovery Master

4  should impose monetary sanctions upon MGA in the amount of $10,000, or in the

5  amount of time necessary to again depose these designees.  MGA further should be

6  compelled to produce fully prepared witnesses on the Topics.

7    **4.    <u>The Information Sought With Respect to Topic 34 Is</u>**

8    **<u>Reasonably Available to MGA</u>**

9    MGA had (and continues to have) an obligation, under the <u>Rules</u> and this Court's

10  prior Orders, to produce a witness with adequate knowledge regarding its various sworn

11  statements under Topic 34.  <u>Fed. R. Civ. P.</u> 30(b)(6); <u>see also</u> July 2007 Minute Order

12  at 4, attached to the Corey Dec., Exh. 15.  Yet, MGA produced a witness, Mr.

13  Woodman, who was incapable testifying as to the most basic facts -- including the

14  proverbial who, what, and where -- regarding MGA's sworn statements.  Thus, MGA's

15  designee as the person most knowledgeable as to MGA's sworn statements would

16  ultimately testify that it was "correct" to say that he did not know "anything about the

17  preparation of any sworn statement in this case."[136]  This is unacceptable.  It is also a

18  clear violation of the Court's Order and justifies the imposition of sanctions.  <u>See</u> <u>Black</u>

19  <u>Horse</u>, 228 F.3d at 304; <u>Resolution Trust</u>, 985 F.2d at 197.

20    There is no credible argument that the information sought by Topic 34 is not

21  readily  available to MGA.  Topic 34 seeks information regarding sworn statements

22  *made by MGA* that relate to the creation and development of Bratz.  These are sworn

23

---

24  [135]   <u>See, e.g.</u> 9/25/07 Tonnu Tr., 697:23 - 698:11 (discussing MGA's policy that

25  "the employees are to preserve all documents that have an impact to the litigation"),
   attached to the Corey Dec., Exh. 2; Transcript of Hearing on Motion for

26  Terminating Sanctions, August 27, 2007, 119:9-20, attached to the Corey Dec.,
   Exh. 57.

27  [136]   Woodman Tr., 216:25 - 217:10, attached to the Hutnyan Dec., Exh. 1.

28

1  statements *which MGA chose to submit* to other courts and various agencies.

2  Presumably, MGA would have done some kind of an investigation to make sure the

3  statements were factually supportable.   In either case, MGA must have knowledge

4  about these facts which is readily ascertainable.   Certainly, MGA drafted the

5  statements, or hired someone else to draft them, and people within or outside MGA

6  may have reviewed, edited, or approved them.   Again, this information is

7  unquestionably known or reasonably available to MGA.   As such, MGA should not

8  permitted to avoid the clear holding of this Court's Orders, or its obligations under the

9  Rules, by providing a designee who exhibited was wholly lacking in knowledge

10  regarding the designated Topic and indeed here is no different than simply refusing to

11  provide any testimony at all.

12  **II.    THE COURT SHOULD COMPEL MGA TO PRODUCE**

13  **DOCUMENTS REVIEWED BY MR. LOCKHART TO REFRESH HIS**

14  **RECOLLECTION PRIOR TO HIS DEPOSITION**

15  During his deposition, ████████████████████████

16  ████████████████████████████████████████[137] Mattel

17  subsequently requested that MGA produce these documents.[138]   Without legitimate

18  justification, MGA has refused to do so.[139]

19  MGA does not dispute that the requested documents are relevant.   Indeed, to the

20  extent that these documents provide a basis for Mr. Lockhart's knowledge regarding the

21  evidence preservation—a topic on which MGA was compelled to provide a witness—

22

23

24

25  [137]   Lockhart Tr., 121:3 - 122:2, attached to the Corey Dec., Exh. 6.

26  [138]   See Letter from Jon Corey to William Charron, dated August 14, 2007, attached to the Corey Dec., Exh. 23.

27  [139]   See Letter from Jon Corey to William Charron, dated September 7, 2007, attached to the Corey Dec., Exh. 24.

28

1   the documents are clearly relevant.  Further, they are responsive to Mattel's document

2   requests.[140]

3         MGA's refusal to produce these documents on privilege grounds is baseless.

4   After Mattel asked MGA to produce these documents, MGA belatedly produced a

5   privilege log that purports to identify them.[141]  The case law is clear, however, that the

6   attorney-client privilege claimed by MGA has been waived as to those documents.  See

7   Ehrlich v. Howe, 848 F. Supp. 482, 493 (S.D.N.Y. 1994) ("when [c]onfronted with the

8   conflict between the command of Rule 612 to disclose materials used to refresh

9   recollection and the protection afforded by the attorney-client privilege . . . the weight

10  of authority holds that the privilege . . . is waived") (internal quotations omitted);

11  U.S. v. 22.80 Acres of Land, 107 F.R.D. 20, 25-26 (N.D. Cal. 1985) (work product

12  privilege waived where deponents used documents to refresh recollection).  MGA

13  should, therefore, be ordered to produce the communications that Mr. Lockhart

14  identified during his deposition.

15  **III.   MGA'S INSTRUCTIONS NOT TO ANSWER QUESTIONS**

16         **REGARDING MGA'S POTENTIAL SPOLIATION OF KEY**

17         **ORIGINAL BRATZ DOCUMENTS WERE IMPROPER**

18         In addition to the May 16 Order requiring MGA to produce its witnesses for the

19  Topics and overruling all objections thereto, Mattel is entitled to information

20  concerning the handling, shipment and testing of original Bratz documents.

21         MGA at first refused to produce any witness in response to Topic No. 41,

22  asserting that the results of testing by Erich Speckin, its alleged expert, are protected by

23

24

25  [140]   E.g., Mattel's Second Set of Requests to MGA Entertainment, Inc. for

26  Documents and Things re Claims of Unfair Competition, Request No. 177, attached
    to the Corey Dec., Exh. 36 (requesting documents related to policies, procedures and

27  guidelines re preservation of electronic data).

28  [141]   Corey Dec., ¶ 61.

1  attorney work product and privilege until it designates him to testify.[142] The Discovery

2  Master and then the District Court overruled MGA's objections.[143] Still, MGA refused

3  to comply, and the Discovery Master in his August Order sanctioned MGA for its

4  willful failure to provide a witness to testify on this Topic.  When MGA's witness

5  eventually did appear, MGA instructed her not to answer.  Specific questions that

6  MGA's designee was instructed not to answer in connection with Topic No. 41, and that

7  should be overruled, appear in Statement No. 2.

8      Many of the instructions are not even arguably defensible on privilege or work

9  product grounds but relate to facts and events.  To the extent MGA claims the

10  information is protected as work product, that contention is without merit.  MGA

11  retained Mr. Speckin, but has not stated whether Mr. Speckin will testify.[144]  Assuming

12  Mr. Speckin is, at the least, a consulting expert, the Federal Rules of Civil Procedure

13  permit discovery of facts known or opinions held by Mr. Speckin under the present

14  circumstances:

15      A party may, through interrogatories or by deposition,
        discover facts known or opinions held by an expert who
16      has been retained or specially employed by another party
        in anticipation of litigation or preparation for trial and who
17      is not expected to be called as a witness at trial, only as
        provided in Rule 35(b) or upon a showing of exceptional
18      circumstances under which it is impracticable for the party
        seeking discovery to obtain facts or opinions on the same
19      subject by other means.

20

21

22

23  [142]   MGA Entertainment Inc.'s Opposition to Mattel, Inc.'s Motion to Compel
    MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6) and for
24  Sanctions, dated April 26, 2007 ("MGA Opposition"), at 9-10, attached to the Corey
    Dec., Exh. 18.
25  [143]   May 16 Order, ¶ 5, attached to the Corey Dec., Exh. 11; Judge Larson's
26  Minute Order dated July 2, 2007, attached to the Corey Dec., Exh. 15.
    [144]   Declaration of Erich J. Speckin, dated July 21, 2006, ¶ 1, attached to the
27  Corey Dec., Exh. 19. ███████████████████████████
28  ███████

-47-

1 | Federal Rule of Civil Procedure 26(b)(4)(B).[145] Rule 26(b)(4)(B) "abolishes the notion

2 | that a nontestifying expert's information is 'privileged' or protectable as 'work product.'

3 | Instead, discovery from nontestifying experts is based on the doctrine of unfairness."[146]

4 | The premise underlying the unfairness doctrine is that a party should not be permitted

5 | to build its case on the preparation and expense of its adversary.  See Pearl Brewing

6 | Co. v. Jos. Schlitz Brewing Co., 415 F. Supp. 1122, 1138 (S.D. Tex. 1976) (doctrine is

7 | intended to protect against the danger that "such discovery would afford the opportunity

8 | to take unwarranted advantage of an adversary's trial preparation").  Rule 26(b)(4)(B),

9 | however, "is not an 'impenetrable fortress' against discovery and parties seeking

10 | discovery can make a showing of exceptional circumstances where there is no

11 | practicable alternative by which they can obtain the information."  Bank Brussels

12 | Lambert v. Chase Manhattan Bank, N.A., 175 F.R.D. 34, 44 (S.D.N.Y. 1997).  "In

13 | assessing 'unfairness,' courts balance the intrusion on the resisting party's work product

14 | and the coerced appropriation of the nontestifying expert's knowledge against the need

15 | for information that cannot be obtained in any other way, in order to make an accurate

16 | determination of the facts."  Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide: Civ.

17 | Proc. Before Trial, § 11:927 (Rutter's Group 2007) (emphasis in original) (citations

18 | omitted); see also Federal Rule of Civil Procedure 26(b)(4)(B).

19 |      Mattel is entitled to information concerning the handling, shipping and testing of

20 | original Bratz documents, including while in Mr. Speckin's possession.  Mattel seeks

21 | information concerning which documents Mr. Speckin tested, how these documents

22 | were handled, and which tests were performed on the documents, how they were

23 | shipped and how they were stored.  These factual matters are not privileged or shielded

24 | by work product.  But even if work product applied here, Mattel is not attempting to

25 |

26 | [145]  See also Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide: Civ. Proc. Before Trial, § 11:925-927 (Rutter's Group 2007).

27 | [146]  See also Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide: Civ. Proc.

28 | Before Trial, § 11:927 (Rutter's Group 2007).

-48-

avoid the expense of retaining its own consultants (and, in fact, the Discovery Master is aware Mattel has engaged its own consultants). The manner in which Mr. Speckin transported, analyzed, tested or otherwise used the documents is plainly relevant. Indeed, as Judge Larson held over a year ago, the facts concerning MGA's handling of key evidence in this matter, including through the destructive testing defendants performed on them after this suit was filed, without prior notice to either the Court or Mattel, are crucial: "That there are serious questions concerning the handling of these critical documents certainly causes the Court much concern about whether the truth seeking functions of the adversarial system have been fundamentally compromised in this case" and potentially dispositive.[147] As the Court also noted, the documents at issue "are not peripheral to the case[,]" but rather "fundamental, perhaps dispositive," to this case.[148]

It is not only impracticable, but impossible, for Mattel to obtain these facts elsewhere. Facts concerning the handling of original Bratz documents during Mr. Speckin's testing are known uniquely to him and defendants because he is an agent of MGA, MGA has an obligation to prepare a witness to provide that factual information to Mattel pursuant to the Discovery Master's May 16 and August 14 Orders. Not only has MGA refused to provide this information to Mattel, it will not permit Mattel to depose MGA on this issue, even though repeatedly ordered. MGA's refusal to provide information concerning the factual circumstances of Mr. Speckin's handling of original Bratz documents is, therefore, inherently unfair.

Mattel is not attempting to gain an unfair advantage by "appropriating" Mr. Speckin's "knowledge." On balance, any intrusion on MGA's alleged "work product," to the extent any such product exists (and MGA has not identified anything in particular), is outweighed by Mattel's need for this information that cannot be obtained

---

[147]   Court's Order Denying Appointment of Expert Witness ("Expert Order") dated August 11, 2006, 11:10-11:13, attached to the Corey Dec., Exh. 13.

[148]   Expert Order at 10:25-11:1, 11:9-11:10, attached to the Corey Dec., Exh. 13.

1  in any other way.  Exceptional circumstances exist which require MGA to provide

2  information concerning Mr. Speckin's facts or opinions.[149]  MGA should be compelled

3  to testify concerning the aforementioned facts known to MGA and its agents, including

4  Mr. Speckin, and MGA's spurious instructions not to answer should be overruled.

5  **IV.    THE COURT SHOULD OVERRULE MGA'S OTHER IMPROPER**

6  **INSTRUCTIONS NOT TO ANSWER QUESTIONS AT THE TONNU**

7  **DEPOSITION AND IMPOSE SANCTIONS FOR COUNSEL FOR**

8  **MGA'S INTERFERENCE WITH QUESTIONING**

9       The Discovery Master has suggested that a party may not instruct a witness not

10  to answer, on alleged privilege grounds, a question at deposition that calls for facts,

11  even if the witness learned those facts through counsel.  Indeed, that was the rule first

12  advocated by Bryant and MGA, which the Discovery Master agreed with.[150]   On

13  August 14, 2007, the Discovery Master also issued an Order Granting Mattel's Motion

14  for an Extension of Time to Depose Paula Garcia in Her Individual Capacity and as a

15

16  ——————————

17  [149]   See People ex rel. Wheeler v. Southern Pacific Transp. Co., 1993 WL
816066, *16 (E.D. Cal. Sept. 2, 1993) (affirming magistrate judge's holding that

18  exceptional circumstances existed where it was "impracticable for defendants to

19  obtain significantly equivalent information by other means, in part because of the
extraordinary costs involved and in part because of changing [testing conditions]

20  and logistical considerations"); Delcastor, Inc. v. Vail Assocs., Inc., 108 F.R.D. 405,

21  408-09 (D. Colo. 1985) (exceptional circumstances established where defendant's
expert was the only expert to examine the slide area before the relevant terrain had

22  substantially changed); Pearl Brewing, 415 F. Supp. at 1138 (permitting discovery

23  because defendant was not trying to avoid burden of using its own experts, but
rather needed to know computer codes used by plaintiff's consultants so that it could

24  analyze the conclusions of plaintiff's testifying experts).

25  [150]   See Order Granting Mattel's Motion for an Extension of Time to Depose
Paula Garcia in Her Individual Capacity and as a 30(b)(6) Designee at 14:2-12,

26  16:1-3, attached to the Corey Dec., Exh. 16; and Order Granting in Part Bryant's

27  Motion to Overrule Instructions Not to Answer During the Deposition of Alan Kaye
to Answer Those Questions, and For Sanctions dated May 4, 2007, attached to the

28  Corey Dec., Exh. 62.

30(b)(6) Designee that overruled MGA's privilege objections on grounds that they called only for facts.

Counsel for MGA interfered with the examination of Ms. Tonnu by, among other things, making speeches, objecting to every single question in an effort to "run-out" the time that Tonnu would be available, and, most inappropriately, by instructing Tonnu not to answer dozens of questions. MGA's counsel objected largely on grounds that the question was "improper" or "outside the scope" of the deposition. At one point counsel instructed Ms. Tonnu not to answer on the grounds that the question was "compound."[151] <u>Rule</u> 30 prohibits such instructions. It provides, in part:

> Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer <u>only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)</u>.[152]

Thus, it is improper to instruct a witness not to answer a question based on form and "scope" objections.

To the extent that MGA's counsel's instructions purported to be on privilege grounds, she failed to identify the testimony to which MGA believed the privilege applied. "[I]t is generally improper for counsel at a deposition to instruct a deponent (counsel's own client or anyone else) not to answer a question, and doing so may warrant sanctions."[153] Schwarzer, Tashima & Wagstaffe, <u>Fed. Prac. Guide: Civ. Proc. Before Trial</u>, § 11:1570 (Rutter's Group 2007) (citing <u>Boyd v. Univ. of Md. Med. Sys.</u>,

---

[151] 9/25/07 Tonnu Tr., 535:10 - 538:17, attached to the Corey Dec., Exh. 2.
[152] <u>Fed.R.Civ.Proc.</u> 30(d)(1) (emphasis added). <u>Rule</u> 30(d)(4) describes when "upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party," the deposition may be suspended. Ms. Tonnu's deposition was not being conducted in such a manner, and MGA did not, nor could it, assert that such conduct was the basis for its instructions.
[153] Here, sanctions are warranted for counsel's conduct. <u>See</u> Argument Section VII, <u>infra</u>.

173 F.R.D. 143, 147 (D. Md. 1997) (an instruction not to answer is "presumptively improper")).  Objections as to form, or whether a question is compound may be raised, but are not the proper basis for an instruction not to answer.  MGA's instructions not to answer were unreasonable and improper.

MGA also improperly obstructed the Tonnu deposition.  In a May 4, 2007 Order, the Discovery Master sanctioned Mattel for conduct in defending a deposition that the Discovery Master found to have violated Rule 30(d)(1), which requires objections to be "stated concisely and in a non-argumentative and non-suggestive manner" and to instruct "only when necessary to preserve a privilege."[154]  The conduct by MGA's counsel at the Tonnu Deposition far surpassed anything that this case has seen.  MGA's obstructionist conduct is apparent in reading the September 24, 2007 transcript lodged herewith, particularly pages 269-276, 279-282, 294-295, 298-300, 302-309, 311-315, 350-357, 435-436 and 457-498.   On September 25, 2007, MGA's counsel began interfering four pages into the deposition, and imposed 4, 5 or more objections to the majority of the questions.  Her conduct was particularly egregious through the first half of September 25, 2007.

In some circumstances, MGA's counsel made no effort to hide that she was coaching the witness, and in one case admitted coaching by saying, on the record, that a comment to the witness was to "to make sure [the witness] remembered" how to respond to a question.[155]  Presumably she engaged in these prohibited tactics because she recognized that Ms. Tonnu was again unprepared on compelled Topics, in blatant violation of the Discovery Master's order now a second time.  Additional examples appear in Separate Statement No. 2.  Some of the more egregious examples are set forth below:

---

[154]   Order Granting in Part Bryant's Motion to Overrule Instructions Not to Answer During the Deposition of Alan Kaye to Answer Those Questions, and For Sanctions dated May 4, 2007, attached to the Corey Dec., Exh. 62.
[155]   9/24/07 Tonnu Tr., 425:5-19, attached to the Corey Dec., Exh. 2.

-52-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



MS. MORGENTHALER-LEVER: Objection. Misstates the witness's testimony. Calls for speculation and lacks foundation. Also outside the scope of this deposition.

THE DEPONENT: I --

MS. MORGENTHALER-LEVER: If you know. Don't guess.

1    THE DEPONENT: I'm not exactly sure the actual number of shares acquired.[156]

2

3    Q.   As you sit here today, Ms. Tonnu, you're not aware of any effort that MGA has made to determine whether any former MGA independent contractor, freelancer, or temp was paid or their own Mattel employee -- or Mattel independent contractor, freelancers, or temp or employee?

4

5    MS. MORGENTHALER-LEVER:  Same instruction.

6

7    MR. COREY:  What's the basis for the instruction, counsel?

8    MS. MORGENTHALER-LEVER:  Because you're saying -- first of all, this list --

9    MR. COREY:  Is it privilege?

10

11   MS. MORGENTHALER-LEVER:  -- wasn't prepared today.  This list -- it's objectionable as to form.  You're assuming facts --

12   MR. COREY:  It's a yes-or-no question.

13

14   MS. MORGENTHALER-LEVER:  No.  You're assuming facts not in evidence because you're saying that -- first of all, "former."  Former as opposed to what?  Non- -- other than these three people --

15

16   MR. COREY:  As opposed to current.

17   MS. MORGENTHALER-LEVER:  You have to say "other than these three people listed" because some of these people may not even be employed by Mattel that are listed as current.  You didn't set that foundation, so there's no foundation for your question.  There are all sorts of people on this list that probably aren't even at Mattel and -- even though they're under "active employees."  so that preamble to your question is completely false.  Why don't

18

19

20

21   MR. COREY:  Have you finished shouting?

22   MS. MORGENTHALER-LEVER:  -- at this list before you -- there are people on this list that aren't even at MGA anymore.  You realize that?

23

24   THE DEPONENT:  Yes.

25   MS. MORGENTHALER-LEVER:  Okay.

26   MR. COREY:  What are you doing, counsel? Should we put you under oath?

27

28   [156]  9/24/07 Tonnu Tr., 312:25-314:16, attached to the Corey Dec., Exh. 2.

-54-

1    MS. MORGENTHALER-LEVER:  Do you understand that you're confusing the witness with your questions?

2    MR. COREY:  The witness is not confused.

3    MS. MORGENTHALER-LEVER:  Yes, she is.

4    She's confused because you --

5    MR. COREY:  Your declaration that the witness is confused makes the witness confused? Let's ask the witness.

6

7    Q.  Ms. Tonnu, did you understand my question?

8    A.  No.  At this point, no.

9    Q.  With the histrionics of counsel, you now don't understand the question?

10

11   A.  Well, the terminology of "current" versus "non-current" I guess has to be clarified.

12

13   Q.  What do you understand the difference between "current" and "non-current" -- "current" and "former" to mean?

14

15   A.  Well, there are some people who are listed on this list, but as of today, it's not considered to be employees who are active at MGA anymore, but they're on the active list.

16

17   Q.  Okay.  I'm not asking you about -- I'm only asking you about the three people down here at the very bottom.  Do you see that?

18

19   A.  Yes.

20   Q.  Okay.  Now, do you want me to ask my question again?

21   A.  Sure.

22   Q.  As you sit here today, are you aware of any efforts that MGA has made to determine whether any former MGA independent contractors, freelancers, or temps were paid by MGA while they were Mattel employees?

23

24

25   MS. MORGENTHALER-LEVER:  Objection.  Calls for speculation.  Lack of foundation.  Vague and ambiguous as to time.  Also vague and ambiguous as to the term -- what is an independent contractor, freelancer, and temp. Objection as to form.  And assumes facts not in evidence. And may call for attorney-client communications.  You can answer.  You can try to answer something.

26

27

28

-55-

1
2
3

MR. COREY:  Enough, counsel.  You've made every single objection that you're capable of.  If you're going to make speaking objections or going to advise the witness as to how to answer the questions, we'll just call Judge Infante.  That's fine.

4
5

MS. MORGENTHALER-LEVER:  Well, maybe we won't have the witness answer this very improper question.

6

Q.  You can go ahead and answer the question.

7

MS. MORGENTHALER-LEVER:  You can -- whatever you want to do.

8

THE DEPONENT:  I'm not sure.

9

BY MR. COREY:

10

Q.  You don't know one way or the other?

11

A.  No.

12

Q.  Are you -- so you're not aware of any such efforts?

13
14

MS. MORGENTHALER-LEVER:  Objection.  Misstates the witness's testimony.

15

THE DEPONENT:  I'm not sure.

16

BY MR. COREY:

17

Q.  You're not sure or you're not aware?

18

A.  I'm not aware.157

19

. . .

20

Did MGA have access to Mattel internal information regarding DIVA STARZ prior to February 1st, 2000?

21
22
23

MS. MORGENTHALER-LEVER:  Objection. Outside the scope.  Vague and ambiguous.  Calls for speculation. Lack of foundation.  Assumes facts in evidence, that they did have any information. You're asking a -- and calls for a legal conclusion.

24

THE DEPONENT:  Not that I'm aware of.

25

BY MR. COREY:

26
27

Q.  As you sit here today, you don't know one way or the other?

28

157  9/25/07 Tonnu Tr., 520:15-524:22, attached to the Corey Dec., Exh. 2.

-56-

1    MS. MORGENTHALER-LEVER:  Objection.

2    Misstates the witness's testimony.  She said not that she's aware of.  That's a --

3

4    MR. COREY:  Counsel, you've made your objection.  I'm tired --

5    MS. MORGENTHALER-LEVER:  That is completely improper, argumentative, and badgering.

6    MR. COREY:  No --

7

8    MS. MORGENTHALER-LEVER:  You are -- it was asked and answered.

9    MR. COREY:  Your speaking objection --

10   MS. MORGENTHALER-LEVER:  No.

11   MR. COREY:  Your speaking --

12   MS. MORGENTHALER-LEVER:  Asked and answered. I'm not going to let you do this.  This is completely improper.

13

14   BY MR. COREY:

15   MS. MORGENTHALER-LEVER:  And this is your last repeating of this.  You've asked these same questions yesterday.

16

17   MR. COREY:  That is absolutely not true, counsel, and you know that.  I asked her what she did to prepare for her deposition --

18

19   MS. MORGENTHALER-LEVER:  No, you didn't.

20   MR. COREY:  -- Yesterday.

21   MS. MORGENTHALER-LEVER:  you went through the entire DIVA STARZ and this yesterday.

22

23   BY MR. COREY:

     Q.  Go ahead and answer the question.

24

     A.  Not that I'm aware of.

25

     Q.  So you don't know one way or the other?

26

27   MS. MORGENTHALER-LEVER:  No -- objection.  You know -- instruction not to answer.  This is the second time you've said this.

28

     BY MR. COREY:

-57-

1    Q.  Do you know whether MGA has had access to internal information about Mattel's DIVA STARZ project prior to

2    September 1st, 2000?

3    MS. MORGENTHALER-LEVER:  Objection.  Asked and answered.

4    THE DEPONENT:  Not that I'm aware of.

5    BY MR. COREY:

6    Q.  So MGA is denying that it had access to any of the --

7    any Mattel internal DIVA STARZ information prior to September 1st, 2000?

8    MS. MORGENTHALER-LEVER:  Objection. Outside the

9    scope of the deposition.  Assumes facts not in evidence. Argumentative.  Objection as to form.

10   BY MR. COREY:

11   Q.  Go ahead and answer the question.

12   A.  Not that I'm aware of.

13   Q.  The question was:  MGA is denying that it had access

14   to internal information about Mattel's DIVA STARZ project prior to September 1st, 2000?

15   MS. MORGENTHALER-LEVER:  It calls for a legal

16   conclusion and also calls for attorney-client privileged information.  Outside -- and you're asking a legal

17   conclusion of a lay witness.

18   MR. COREY:  Are you instructing the witness?

19   MS. MORGENTHALER-LEVER:  You know, instruct

20   not to answer.  That's an improper question.

21   MR. COREY:  It's squarely within the topic --

22   MS. MORGENTHALER-LEVER:  No, it isn't. The way

     you asked the question, it's like "did you beat your wife?"
     assuming MGA took this.  There's a preamble to your

23   question in which you are assuming facts not in evidence.

24   MR. COREY:  Can we ask the witness to step out of the

     room, please?  If we're going to have a conversation, we're

25   going to have an argument, let's have the witness step out of the room.

26

27   MS. MORGENTHALER-LEVER:  No, I'm not --

28   MR. COREY:  Then stop coaching her.  Are we going to

     have a colloquy about this, or are you going to allow the witness to answer the question?

-58-

1  MS. MORGENTHALER-LEVER:  You know what? You can -- I'm not going to let you continue to badger this
2  witness and trick her with improper questions.

3  MR. COREY:  It's a yes-or-no question.

4  MS. MORGENTHALER-LEVER:  No, it isn't --

5  MR. COREY:  She's either --

6  MS. MORGENTHALER-LEVER:  -- because you

7  Had two layers of fact in the question.  I don't think you realized that.  There's -- it has a preamble.

8
   MR. COREY:  Then you can make your objection, and if
9  it becomes an issue at trial --

10  MS. MORGENTHALER-LEVER:  No, those --

11  MR. COREY:  -- you raise it at trial.

12  MS. MORGENTHALER-LEVER:  we can't allow --

13  When objections assume -- when questions assume --

14  MR. COREY:  Let's call Judge --

15  MS. MORGENTHALER-LEVER:  -- facts not in evidence --

16
   MR. COREY:  Should we call Judge Infante? And let's
17  have him look at the transcript and see the objections that you're making.

18
   MS. MORGENTHALER-LEVER:  Ask the question one
19  more time so you can hear it.

20  BY MR. COREY:

21  Q.  Is MGA denying that it had access to Mattel internal DIVA STARZ information prior to September 1st, 2000?
22
   MS. MORGENTHALER-LEVER:  Objection.
23  Compound.

24  THE DEPONENT:  Yes.[158]

25  Mattel requests that the Discovery Master not only reopen the deposition of

26  Ms. Tonnu in light of this misconduct, but impose sanctions upon MGA.

27

28  [158]  9/25/07 Tonnu Tr., 529:16-534:16, attached to the Corey Dec., Exh. 2.

-59-

**V.     MS. TONNU'S DEPOSITION SHOULD BE REOPENED AS A RESULT OF MATERIAL REVISIONS TO HER DEPOSITION TRANSCRIPTS**

A month and a half after her deposition, Mattel was notified of purported changes to the deposition transcripts of Lisa Tonnu from September 24 and 25, 2007.[159] Ms. Tonnu changed several answers of "No" to "Yes."[160]  In many instances, because Ms. Tonnu had answered "no," Mattel's counsel had stopped a line of questioning at the deposition and moved on to another topic or line of questioning.  For example:

| Deposition Testimony | Revision to Deposition Transcript |
| --- | --- |
| Q.   Now let's talk about the Filenet facility. Do you know whether any documents have been collected from the Filenet facility? | |
| A.   Yes. | |
| Ms. Morgenthaler-Lever:  From who?  By who? | |
| Mr. Corey:  By MGA. | |
| The Deponent:  Yes. | |
| By Mr. Corey: | |
| Q.   And have documents been collected from the Filenet facility? | |
| A.   No. | Yes. |
| Ms. Morgenthaler-Lever:  At any -- in connection - | |
| Mr. Corey:  In connection with -- | |
| Ms. Morgenthaler-Lever:  -- with this litigation or Mattel responses or -- | |

---

[159]   See Revisions Letter, attached to the Corey Dec., Exh. 44.  Although the Revisions Letter asserts that Ms. Tonnu made these changes, it is unclear whether that is true because Ms. Tonnu never signed the revisions or provided a statement of reasons for the changes, as required pursuant to Rule 30(e).

[160]   Id.

| Deposition Testimony | Revision to Deposition Transcript |
|---|---|
| Mr. Corey:  Yeah, in connection with the litigation. | |
| The Deponent:  No. | Yes. |
| By Mr. Corey: | |
| Q.  Do you know if -- did Mr. Daniels tell you that he was going to do that? | |
| A.  No.[161] | Yes.[162] |

  Here, Ms. Tonnu's answer of "no" at the deposition concerning whether she knew if documents were collected precluded a line of questions into what documents were collected, how they were collected and by whom.  These questions fall squarely within Topic Nos. 39 and 40—and are therefore topics for which MGA should have been prepared to provide a correct response and provide Mattel with essential information but did not.

| Deposition Testimony | Revision to Deposition Testimony |
|---|---|
| Q.  Do you know whether the documents at the Filenet facility contain any documents responsive to Mattel's requests? | |
| Ms. Morgenthaler Lever:  Objection. Asked and answered. | |
| The Deponent:  No.[163] | Yes.[164] |
| * * * | |
| Q.  Did Mr. Daniels tell you about the Filenet Facility? | |
| A.  Yes. | |
| Q.  And the documents stored there? | |

---

[161] 9/25/07 Tonnu Tr., 618:3 - 619:1, attached to the Corey Dec., Exh. 2.
[162] See Revisions Letter, attached to the Corey Dec., Exh. 44.
[163] 9/25/07 Tonnu Tr., 619:7-12, attached to the Corey Dec., Exh. 2.
[164] Revisions Letter, attached to the Corey Dec., Exh. 44.

| Deposition Testimony | Revision to Deposition Testimony |
|---|---|
| A.   Yes. | |
| Q.   What else did he tell you about those? | |
| Ms. Morgenthaler-Lever:  Objection. Assumes facts not in evidence. | |
| The Deponent:  That was about it. | |
| By Mr. Corey: | |
| Q.   Did you ask him why those had not been collected or searched? | |
| A.   Yes. | "He did." |
| Q.   What did he say? | |
| A.   I believe that he stated that since it's being preserved by a third party, he didn't need to collect it or -- and move it to a different site to make sure it's being preserved. | "Documents responsive to the requests were searched and collected." |
| Q.   Do you know if someone is looking through the documents at the Filenet facility to determine whether they contain documents responsive to Mattel's requests? | |
| Ms. Morgenthaler-Lever:  Someone either at Filenet or anyone -- MGA or Filenet or... | |
| Mr. Corey:  The question's not person-specific.  The question is document-specific, whether they're being reviewed or not. | |
| The Deponent:  No. | "Yes." |
| By Mr. Corey: | |
| Q.   You don't know one way or the other whether those are being reviewed to see if they contain documents responsive to Mattel's requests? | |
| A.   I don't believe they are being reviewed. | "I believe they were reviewed."[165] |
| (Sotto voce discussion between | |

[165]   See Revisions Letter, attached to the Corey Dec., Exh. 44.

-62-

| Deposition Testimony | Revision to Deposition Testimony |
|---|---|
| Ms. Morgenthaler-Lever and the deponent.) | |
| . . . | |
| Q.  I understand that MGA has subsidiaries.  Outside the United States it may have some locations.  My question is: Does MGA Entertainment, Inc., have its own facilities outside the United States? Do you understand the question? | |
| A.  Offices?  Warehouse? | |
| Q.  Yeah. | |
| A.  No.[166] | "Yes."[167] |

Here, Ms. Tonnu's answers in the negative at the deposition concerning whether documents were collected again precluded a line of questioning into, for example, who collected documents, which documents were collected and how.

As a result of the revised testimony, Mattel requests an Order reopening Ms. Tonnu's deposition.  Mattel is entitled to explore the reasons for Ms. Tonnu's "revised" testimony and to complete the lines of questioning previously precluded by Ms. Tonnu's answers.[168]  Alternatively, MGA should be precluded as discussed further below from offering any information on these matters that was not disclosed at Ms. Tonnu's deposition.

---

[166]  9/25/07 Tonnu Tr., 620:14 - 622:16, attached to the Corey Dec., Exh. 2.  The following answer of "No" concerning MGA's facilities was also changed to "Yes:" "Q.  Okay.  Does MGA own manufacturing facilities outside the united states? A. No.," 9/24/2007 Tonnu Tr., 376:3-5, attached to the Corey Dec., Exh.2, <u>see</u> Revisions Letter (changing answer of "No" to "Yes.").
[167]  <u>See</u> Revisions Letter, attached to the Corey Dec., Exh. 44.
[168]  <u>See</u> Rutter, § 11:1593.1

## VI. MGA'S REFUSAL TO PROVIDE MATTEL WITH ADEQUATE TIME TO DEPOSE ITS RULE 30(B)(6) WITNESS REBECCA HARRIS IS UNREASONABLE

To date, MGA has allowed Mattel to depose Ms. Harris in her capacity as MGA's Rule 30(b)(6) designee on nine separate Topics for only a single day.[169] This was inadequate time for Mattel to cover the numerous Topics on which MGA designated Ms. Harris, particularly given that these Topics relate to key issues in this case.

Even if—contrary to what the Discovery Master has already ruled—the seven-hour rule applied to MGA's Rule 30(b)(6) deposition, the Court should grant Mattel leave for additional time to depose MGA's designee on Topics 11, 13, 14, 19, 22, 23, 27 and 28. See Fed. R. Civ. P. 30(d)(2) (the Court "must allow additional time . . . if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination"). Here, Mattel needs additional deposition time in order to conduct a fair examination of MGA's designee for several reasons: MGA designated Ms. Harris on nine Topics, yet it did not provide Mattel sufficient time to examine her on all such topics; Ms. Harris lacked knowledge on certain of the Topics for which she was designated, as discussed above, thereby preventing her deposition from proceeding efficiently; and the Topics for which Ms. Harris is the designee go to the heart of this lawsuit. As previously indicated, Topics 11, 13, 14, 19, 21, 22, 23, 27 and 28 pertain to key issues in this case, including the origin, design and development of Bratz prior to June 30, 2001; relevant contracts concerning Bryant and Bratz; payments made to Bryant and other financial information relating to Bratz; and third parties who may have knowledge of the creation, design and development of Bratz.

Parties are usually expected to work together to determine a fair time limit for depositions: "It is expected that in most instances the parties and the witness will make

---

[169] Corey Dec., ¶¶ 62-68.

1  reasonable accommodations to avoid the need for resort to the court . . . Preoccupation
2  with timing is to be avoided." Condit v. Dunne, 225 F.R.D. 100, 112 (S.D.N.Y. 2004)
3  (quoting the 2000 Advisory Committee notes to Fed. R. Civ. P. 30(d)).  Unfortunately,
4  as described above, despite its own prior agreement to provide more time with this
5  designee, MGA now is unwilling to make reasonable accommodations for the
6  completion of Ms. Harris's deposition or otherwise afford Mattel a reasonable amount
7  of time to finish on the Topics.  Accordingly, in the event that the Court finds that the
8  seven-hour rule applies, the Court should grant Mattel leave for additional time for the
9  deposition.

10 **VII.  MGA'S CONTINUED DELIBERATE REFUSAL TO ALLOW**
11 **MATTEL FROM GETTING TESTIMONY ON TOPIC 34, AFTER**
12 **TWO PREVIOUS COURT ORDERS, CANNOT BE TOLERATED**

13      MGA's instructions not to answer at the Woodman deposition were highly
14 improper, and in light of the Court's May 16 and August Orders, contumacious.  As
15 explained above, Rule 30 does not allow instructions not to answer whenever a party
16 wants to avoid giving testimony.  It is only allowed when necessary to preserve a
17 privilege, to enforce a limitation directed by the Court, or when a deposition must be
18 suspended to seek a protective order due to the questioner's bad faith, or annoying,
19 harassing or embarrassing questions.  Fed.R.Civ.Proc. 30(d)(1) (emphasis added).

20      None of the instructions at Mr. Woodman's deposition related to any of these
21 reasons.  Thus, even if Topic 34 were as limited as MGA claims, MGA had no
22 legitimate basis for an instruction not to answer.  MGA could object as to scope but it
23 had to allow the questioning to continue.  Its failure to do so, especially after been
24 ordered three times to present a witness on Topic 34, and having previously been
25 sanctioned for not doing so, shows how important this Topic 34 testimony is, and how
26 egregious MGA's obstructionism is.

27      Besides, the supposed grounds for these instructions were frivolous.  Statements
28 made by applicants to the Patent Office, and in particular, patent applications, are made

1   under oath.  Federal statute expressly so provides.  <u>See</u> 35 U.S.C. § 115 ("The applicant

2   shall make oath that he believes himself to be the original and first inventor of the

3   process, machine, manufacture, or composition of matter, or improvement thereof, for

4   which he solicits a patent; and shall state of what country he is a citizen. "); 37 C.F.R. §

5   151(b) ("A complete application . . . comprises an oath or declaration").  For this very

6   reason, statements to the Patent Office are commonly viewed as sworn statements of

7   fact relevant to later proceedings.  <u>See</u> <u>Baker Oil Tools, Inc. v. Geo Vann, Inc.</u>, 828

8   F.2d 1558, 1562 (Fed. Cir. 1987) ("This is more than a pleading, but not an

9   adjudication.  It is a sworn statement of fact.  Baker Oil's assertion before the PTO . . .

10  could be considered as a factor in determining whether the pre-critical date uses were . .

11  . experimental"); <u>Control Components, Inc. v. Valtek, Inc.</u>, 609 F.2d 763, 769 (5th Cir.

12  1980) (considering use of "statements made under oath to the patent office" for

13  impeachment purposes).

14         Here, the statements made by Mr. Larian in his patent application, Exh. 500, and

15  in his other statements to the PTO (such as in Exh. 548) in support of the alleged Bratz

16  invention's patentability, cannot appropriately be excluded from a category as broad as:

17  "transcripts, declarations, affidavits and other sworn written statements of any other

18  type."  Nor can the statements from the Patent Office relating directly to the sworn

19  statements he made in his application, or to the sworn statement of Carter Bryant in

20  support of his application, be off limits, as the topic is the sworn statements and these

21  materials directly relate to those sworn statements.

22         Applications for trademark registration are also considered sworn.  37 C.F.R.

23  2.33 states that "(a) The application must include a statement that is signed and verified

24  (sworn to) or supported by a declaration under § 2.20 by a person properly authorized

25  to sign on behalf of the applicant. . . ."  The rule specifies the breadth of this sworn

26  verification to virtually all aspects of the application, either:

27              That the applicant has adopted and is using the mark
               shown in the accompanying drawing; that the applicant
28              believes it is the owner of the mark; that the mark is in use
               in commerce; that to the best of the declarant's knowledge

-66-

1        and belief, no other person has the right to use the mark in
2        commerce, either in the identical form or in such near
          resemblance as to be likely, when applied to the goods or
3        services of the other person, to cause confusion or mistake,
          or to deceive; that the specimen shows the mark as used on
4        or in connection with the goods or services; and that the
          facts set forth in the application are true.

5  or

6        That the applicant has a bona fide intention to use the
          mark shown in the accompanying drawing in commerce
7        on or in connection with the specified goods or services;
          that the applicant believes it is entitled to use the mark in
8        commerce; that to the best of the declarant's knowledge
          and belief, no other person has the right to use the mark in
9        commerce, either in the identical form or in such near
          resemblance as to be likely, when applied to the goods or
10       services of the other person, to cause confusion or mistake,
          or to deceive; and that the facts set forth in the application
11       are true.

12  37 C.F.R. § 2.33.  MGA had no reasonable basis for flouting the Court's Orders on

13  the supposed grounds that the statements in MGA's trademark applications were not

14  sworn, or that MGA's trademark registrations were not based on the sworn

15  statements in those applications.  And even if it did have such a reasonable basis,

16  there certainly was no basis flatly instructing not to answer.  Mattel was entitled to

17  that testimony.

18        The same is true for the statements MGA made in the certificates of copyright

19  registration as to which Mr. Woodman was not allowed to testify.  Registrations for

20  works of the visual arts, which these were, must include a certification.  And every one

21  of the 20 copyright registrations MGA improperly instructed on included the

22  certification by one of these four persons that the statements made by them in the

23  application are "correct to the best of my knowledge."  Again, MGA had no reasonable

24  basis to object, much less to instruct.

25        The other purported reason for MGA's instructions not to answer, the date

26  restriction in the Topic, not only does not support an instruction, but was misapplied.

27  The Topic clearly seeks testimony about sworn statements referring *or relating* to the

28  time period prior to June 30, 2001, not just on documents that actually featured a date

1  within that time period.  MGA's self-serving spin on the Topic has no basis in its
2  language.  To the contrary, the compelled Topic expressly states that it is <u>irrelevant</u>
3  "when such testimony or sworn statement was taken, given, signed, made or filed."

4  **VIII.  <u>MGA'S FAILURE TO COMPLY WITH THE DISCOVERY</u>**
5          **<u>MASTER'S ORDER PREJUDICES MATTEL</u>**

6          The discovery cut off for Phase 1 is January 28, 2008.  Expert reports for Phase 1
7  are due two weeks later, on February 11, 2008.  The majority of the Topics that the
8  Discovery Master compelled months ago relates to Phase 1, including issues that go to
9  the heart of Phase 1, namely the timing of the creation and commercialization of Bratz.
10  Now, less than two months before the discovery cut off with no prospect of any effort
11  by MGA to comply with the Orders before the second week of January, MGA's tactic
12  has worked.  It has effectively deprived Mattel of necessary information and, even if
13  that information is forthcoming, it will be too late for Mattel to obtain any follow-up
14  discovery.

15          Further, the financial information in Topic No. 25, is necessary for Mattel to
16  prepare its expert damages report.  MGA's counsel has acknowledged that the financial
17  information yet to be produced is the "starting point" for Mattel's expert damages
18  analysis.  If MGA's counsel did not have this information about Bratz revenues, costs
19  and profits, this is nothing short of an admission that MGA not only made no effort to
20  prepare its witness, but that it was incapable of doing so.   MGA's failure to produce a
21  witness to testify about Bratz creation and commercialization and Bratz financial
22  information has already prejudiced Mattel's ability to complete its analysis and its
23  expert report within the existing deadlines.  MGA should not be rewarded for its delay
24  tactics and violation of the Court's Orders.

25  **IX.   <u>MGA SHOULD BE SANCTIONED FOR ITS SEVERE DISCOVERY</u>**
26          **<u>ABUSE</u>**

27          MGA should be sanctioned.  In addition to the powers under <u>Rule</u> 37 discussed
28  elsewhere, the federal courts have inherent power to levy sanctions in response to

-68-

1 | abusive litigation practices.  See Roadway Express, Inc. v. Piper, 447 U.S. 752, 765
2 | (1980).  The Supreme Court in Chambers v.  NASCO, Inc., 501 U.S. 32, 46 (1991),
3 | held the inherent power is "both broader and narrower than other means of imposing
4 | sanctions."  The power must be exercised with discretion, and "[a] primary aspect of
5 | that discretion is the ability to fashion an appropriate sanction for conduct which abuses
6 | the judicial process."  Id. at 44-45 (citing Roadway, 447 U.S. at 765).  Sanctions under
7 | the federal courts' inherent power are available if the court specifically finds bad faith
8 | or conduct tantamount to bad faith.  Fink v. Gomez, 239 F.3d 989, 993-94 (9th Cir.
9 | 2001).

10 |     Mattel also respectfully submits that this request for sanctions should be
11 | considered in the context of the prior motion practice and prior Court Orders
12 | concerning the First Notice and Second Notice, which have now spanned more than
13 | two years.  "The Court may, in deciding whether to grant a motion for sanctions,
14 | 'properly consider all of a party's discovery misconduct . . ., including conduct which
15 | has been the subject of earlier sanctions.'"  In re Heritage Bond Litigation, 223 F.R.D.
16 | 527, 530 (C.D. Cal. 2004) (citations omitted).  Here, Orders from both the Discovery
17 | Master and Judge Larson rejecting MGA's meritless objections to Mattel's
18 | 30(b)(6) Notices, and the Discovery Master's Order finding MGA to be in "willful" and
19 | "flagrant" violation of a prior Order, are apparently insufficient deterrence to MGA's
20 | stonewalling on discovery.

21 |     The record on this motion is replete with examples of further discovery abuses,
22 | but one will suffice here.  MGA moved for terminating sanctions against Mattel for
23 | supposedly failing to preserve and produce documents, and deposed Mattel witnesses
24 | for days on this issue.  In contrast, even after the Discovery Master and the Court
25 | ordered MGA to produce witnesses and ordered MGA to produce responsive
26 | documents, MGA still disclosed next to nothing about MGA's collection of documents.
27 | Of all of the potential sources of electronic evidence Lockhart identified, he was unable
28 | to identify a single search done to collect responsive electronic information other than a

single search of a single hard drive in 2005.[170]  Similarly, pursuant to the Court's Orders requiring 30(b)(6) testimony, Tonnu was designated to testify about its evidence collection as it related to physical documents.  She identified physical documents that MGA stored in a variety of off-site locations, and testified that they had only recently been secured and that they had not been searched for responsive documents more than six weeks after the August 14, 2007 Order compelling MGA's production originally by August 30, 2007.[171]  FileKeepers, the MGA vendor in possession of those files, recently produced an index of those documents that alone shows that they should have been searched to comply with the Discovery Master's discovery Orders.  For example, they contain boxes regarding MGA Hong Kong from 2000, which was involved in the manufacturing and development of Bratz.  Now, less than two months before the close of discovery for Phase 1, Mattel has yet to have an MGA representative testify about such matters.  MGA should be punished for its misconduct.

This is but one example.  Sanctions are called for here.  MGA has already been ordered to make its Rule 30(b)(6) witnesses available, all of its objections, conditions and limitations to the Second Notice were overruled, and it has previously been found in violation of the May 16 Order and sanctioned.  Notwithstanding the Orders, MGA failed to produce witnesses with knowledge on 19 of the compelled Topics and repeatedly instructed at least Tonnu not to answer questions on the Topics without even colorable justification. See American Directory Serv. Agency, Inc. v. Beam, 131 F.R.D. 15, 18-19 (D.D.C. 1990) (holding counsel's instructions to deponent not to answer based on improper grounds and in violation of a court order overruling such objections "[w]ithout a doubt . . . 'unreasonably and vexatiously' multiplied the proceedings in this

---

[170]  See Lockhart Tr., 233:5 - 234:6; 250:2-6; 251:4-7; and 288:16-24, attached to the Corey Dec., Exh. 6.

[171]  9/25/07 Tonnu Tr., 609:6 - 613:10, 615:22 - 616:5, 618:3-14, 619:4-13, 646:17-25, 688:15 - 688:22, attached to the Corey Dec., Exh. 2; Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by MGA dated August 14, 2007 at 14, attached to the Corey Dec., Exh. 12.

1  case" and awarding sanctions against counsel). There is no substantial justification for

2  MGA's actions.

3      Additionally, sanctions are just under the circumstances. MGA's deficient

4  responses, or lack of response, are part of a pattern of unreasonable and vexatious

5  conduct spanning most of this year designed to frustrate Mattel's efforts to obtain even

6  basic discovery to which it is entitled. MGA and its counsel should be sanctioned for

7  the fees Mattel has been forced to incur in connection with this motion. Mattel

8  therefore requests that MGA and its counsel be ordered to pay $10,000 as partial

9  reimbursement for those fees and costs.[172]

10 **X.    THE DISCOVERY MASTER SHOULD RECOMMEND THAT**

11 **PRECLUSION SANCTIONS BE IMPOSED AGAINST MGA**

12     For failure to obey a discovery order, <u>Rule</u> 37(b)(2)(A) permits issuance of an

13 order that "designated facts shall be taken to be established for purposes of the action."

14 <u>Fed. R. Civ. P.</u> 37(b)(2)(A). Such sanctions are warranted here. In <u>CFTC v. Noble</u>

15 <u>Metals, Int'l, Inc.</u>, 67 F.3d 766, 770-71 (9th Cir. 1995), defendants failed to comply

16 with an order compelling them to produce <u>Rule</u> 30(b)(6) witnesses. The Ninth Circuit

17 affirmed an order that relied upon <u>Rule</u> 37(b)(2)(A) and, as a sanction for non-

18 compliance, deemed plaintiff's allegations as established.

19     Allowing MGA to flout the Discovery Master's Orders rewards MGA's non-

20 compliance by preventing Mattel from obtaining crucial evidence, such as information

21 about early Bratz development. Mattel, unlike the plaintiff in <u>Noble Metals</u> does not

22 seek that all facts in its pleading to be established, but specific facts related to topics on

23 which MGA was compelled to produce a competent witness, but did not do so. <u>Fed. R.</u>

24 <u>Civ. P.</u> 37(b)(2)(A) ("An order that the matters <u>regarding which the order was made</u> or

25 any other designated facts shall be taken to be established. . . . ") (emphasis added).

26

27

---

28  [172]  Corey Dec., ¶ 70.

Similarly, Rule 37(b)(2)(B) provides that if a party fails to comply with a court order, a court may issue an order barring the disobedient party from supporting or opposing designated claims or defenses. The preclusion sanction is designed to keep a party from profiting from its defiance of court orders. Exclusion may be ordered whenever a party violates a court order; willfulness is not required. Penk v. Oregon State Bd. of Higher Education, 816 F.2d 458, 466 (9th Cir. 1987); see also Chilcutt v. U.S., 4 F.3d 1313, 1320-22 (5th Cir. 1993) (affirming order deeming that the liability facts of the plaintiffs' case were established because defendant violated discovery orders). "[T]he Court must guard against the mechanical application of simple monetary sanctions for repeated violations. While the exclusionary remedy may be far down the list of options for a first offense, it rises to the very top for a repeat offender." Martin v. Inclusion, Inc., 2007 WL 778183, *3 (D. Idaho Mar. 13, 2007). This is the second time -- and for some issues the third time -- that Mattel is before the Discovery Master on the same issue arising from MGA's conduct. In addition, not only did MGA fail to comply with the Court's deadlines, it has had months since then to cure its non-compliance and nevertheless failed and refused to do so. For a repeat offender such as MGA, the exclusionary remedy is fitting.

Accordingly, Mattel respectfully requests preclusive and evidentiary sanctions for MGA's unjustifiable failure to comply with the Discovery Master's Orders in the form of a report and recommendation that:

    (a)    deem the following facts to be admitted:

           (i)    prior to October 1, 2000, MGA exhibited, marketed, offered for sale and pitched Bratz and Bratz designs to third parties, including retailers, wholesalers and distributors;

           (ii)    prior to October 1, 2000, MGA communicated with manufacturers, retailers, wholesalers and distributors regarding the manufacture, sale and distribution of Bratz

-72-

1  and Bratz designs, including with manufacturers, retailers,

2  wholesalers and distributors who MGA has failed and

3  refused to identify in violation of Court Orders;

4  (iii)  beginning no later than early November 2000, MGA

5  showed and presented Bratz and Bratz designs to focus

6  groups;

7  (iv)  prior to the conception, design, reduction to practice and

8  development of Bratz, former Mattel employees and

9  contractors who  worked with or for MGA on the Bratz

10  project had access to Mattel's confidential and non-public

11  DIVA STARZ information , including but not limited to

12  Exhibits 307-317 and 665-668, while those former Mattel

13  employees and contractors worked at or for Mattel;

14  (v)  prior to and during the time of the conception, design,

15  reduction to practice and development of Bratz, MGA

16  made payments of money and promises of payments of

17  money to Mattel employees who MGA has failed and

18  refused to identify at times when MGA knew they were

19  employed by Mattel;

20  (vi)  MGA has made payments to and on behalf of Elise

21  Cloonan and other witnesses in this case that MGA has

22  failed and refused to disclose, despite Court Orders;

23  (vii)  MGA has had communications with Elise Cloonan and

24  other witnesses in this case that MGA has failed and

25  refused to disclose, despite Court Orders;

26  (viii)  MGA knowingly and deliberately destroyed and failed to

27  preserve evidence relating to the origins, design and

28  development of Bratz, including evidence relating to

-73-

Mattel's allegations that Bryant had created, conceived of and reduced to practice Bratz and Bratz designs during the time that Bryant was employed by Mattel;

(ix)   MGA knowingly and deliberately destroyed and failed to preserve evidence relating to Mattel and to Mattel's allegations that MGA stole Mattel's trade secrets;

(x)   MGA, its officers and its agents, knowingly, deliberately and repeatedly submitted false statements to government and judicial agencies, including about the origins and timing of Bratz; and

(xi)   any other fact that the Discovery Master may deem appropriate;

(b)   precludes MGA, directly or indirectly, from:

(i)   presenting evidence, argument or opinion related to ink, paper, chemical or other forensic or scientific analysis or testing of any Bratz or Bratz-related documents, including original Bratz design documents;

(ii)   refuting or contesting any evidence or opinion that Mattel may present relating to ink, paper or chemical testing of any Bratz or Bratz-related original documents

(iii)   refuting or contesting any evidence, argument or opinion that Mattel may present relating to ink, paper, chemical or other forensic or scientific analysis or testing of any Bratz or Bratz-related documents, including Bratz original design documents;

(iv)   from arguing or presenting evidence or opinion contrary to or inconsistent with evidence or opinion that Mattel presents regarding Bratz revenues, profits or costs;

-74-

1     (v) from arguing or presenting evidence or opinion of any

2       costs incurred in connection with Bratz or the revenues

3       derived from Bratz;

4     (vi) from arguing or presenting evidence or opinion regarding

5       fee and indemnification agreements that MGA and/or

6       Bryant has sought, proposed, requested or obtained in

7       connection with this litigation;

8     (vii) from arguing or presenting evidence or opinion that MGA

9       collected evidence, in response to Mattel's requests for

10      documents or tangible things, other than the evidence

11      identified by MGA designees Lisa Tonnu and Ken

12      Lockhart at their oral depositions;

13     (viii) contradicting, offering any explanation, argument or

14      evidence or advancing any position, directly or indirectly,

15      in connection with its prior sworn testimony or statements

16      or denying that such testimony and statements were made

17      by and under the authority of MGA; and

18     (ix) any other preclusion sanction that the Discovery Master

19      may deem appropriate.[173]

20 **XI.**  **THE DISCOVERY MASTER SHOULD RECOMMEND THAT MGA**

21    **BE FOUND IN CONTEMPT OF THE MAY 16 ORDER AND THE**

22    **AUGUST ORDER**

23    In addition to monetary and exclusionary sanctions, Rule 37(b)(2)(D) provides

24 that: "In lieu of any of the foregoing orders or in addition thereto, an order treating as a

25 

  [173] The Discovery Master has the authority to recommend preclusion sanctions.

26 The Discovery Master Stipulation, which Judge Larson "so ordered" empowered the

27 Discovery Master to "issue orders awarding non-contempt sanctions, including,

28 (footnote continued)

1  contempt of court the failure to obey any orders except an order to submit to a physical
2  or mental examination." MGA failed, repeatedly, to comply with the May 16 Order, as
3  well as the August Order, and willfully violated them. Accordingly, Mattel respectfully
4  requests that the Discovery Master make a recommendation for an order treating
5  MGA's failure to obey the May 16 Order and the August 14 Order as a contempt of
6  court.

### Conclusion

8      For the reasons set forth above, and in the accompanying Separate Statements,
9  Mattel respectfully requests that its Motion be granted in its entirety.

11 DATED:  December 5, 2007        QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP

13                                 By  /s/ Jon D. Corey
14                                     Jon D. Corey
                                       Attorneys for Mattel, Inc.

---

27
28  without limitation, the award of attorney's fees, as provided by Rules 37 and 45."
    Discovery Master Stipulation, ¶ 4, Corey Dec., Exh. 22.

MATTEL, INC.'S MOTION RE 30(B)(6) ORDERS