QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>[To be heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to the Court's Order of December 6, 2006]<br><br>AMENDED REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF METADATA<br><br>Date: TBA<br>Time: TBA<br>Place: Telephonic Hearing<br><br>Discovery Cut-Off: January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ............................................................................................................... 2

I.   MGA SHOULD BE COMPELLED TO PRODUCE THE METADATA REQUESTED BY MATTEL FORTHWITH ........................... 2

II.  MGA HAS NOT DEMONSTRATED ANY "UNDUE" BURDEN ................ 6

III. EVEN IF THE PRODUCTION WERE UNDULY BURDENSOME, THE METADATA SHOULD STILL BE COMPELLED BECAUSE MATTEL HAS SHOWN GOOD CAUSE FOR PRODUCTION .................. 8

IV.  MGA SHOULD BEAR THE COST OF THIS PRODUCTION .................... 10

CONCLUSION .......................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

Bills v. Kennecott Corp.,
   108 F.R.D. 459 (D. Utah 1985) ............................................................... 2, 10

In re Brand Name Prescription Drugs Antitrust Litig.,
   1995 U.S. Dist. LEXIS 8281 (N.D. Ill. 1995) ................................................ 8

Crown Life Ins. Co. v. Craig,
   995 F.2d 1376 (7th Cir. 1993) ........................................................................ 2

Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.,
   2006 LEXIS 92028 (2006) ......................................................................... 3, 5

Michigan First Credit Union v. Cumis Ins. Soc., Inc.,
   2007 LEXIS 84842, 8 (2007) ........................................................................ 3

OpenTV v. Liberate Technologies,
   219 F.R.D. 474 (N.D. Cal. 2003) ................................................................ 10

Williams v. Sprint/United Management,
   230 F.R.D. 640 (D. Kan. 2005) ..................................................................... 3

Wyeth v. Impax Labs., Inc.,
   2006 LEXIS 79761, 4 (2006) ..................................................................... 3, 5

Zubulake v. UBS Warburg LLC,
   217 F.R.D. 309 (S.D.N.Y. 2003) ................................................................... 3

**Statutes**

Fed. R. Civ. P. 26(b)(2)(B) ............................................................... 6, 8, 9, 10

Fed. R. Civ. P. 26(b)(2)(C) ....................................................................... 8, 10

**Miscellaneous**

7 Moore's Federal Practice, § 37A.35[1][c] ................................................ 6, 8

7 Moore's Federal Practice, § 37A.11[2] .................................................... 2, 8

**Preliminary Statement**

Prior to doing so in its Opposition, MGA never once disputed that the metadata Mattel seeks is both relevant and discoverable. To the contrary, since Mattel first requested this information more than three months ago MGA has repeatedly assured Mattel that it *would* produce this information. MGA also requested reciprocity when, following Mattel's request to MGA, MGA requested metadata from Mattel -- a request Mattel promptly complied with. Indeed, even in its Opposition, MGA inconsistently asserts that Mattel's Motion is unnecessary in light of MGA's most recent promise to produce on November 21, 2007.

Nevertheless, in direct contradiction to its prior representations, MGA now asserts that Mattel is not entitled to the requested information because it has provided "no basis" for why it seeks the requested discovery. That simply ignores Mattel's showing. Mattel demonstrated the relevance of this information to MGA in the days that followed its initial request -- an explanation that led to MGA's agreement to produce this information -- as well as in its motion. In short, Mattel is entitled to this information because, in and of itself, it could establish that an element of a Mattel claim is satisfied.

Aside from opposing Mattel's motion outright, MGA also asserts for the first time that if production is warranted, the related costs should be borne by Mattel because such a production would be unduly burdensome. That assertion, which is not supported by adequate evidence, contradicts MGA's repeated representations to the Court and Mattel that it has retained the electronic version of "every" e-mail relevant to this case and ignores that Mattel has identified each of the e-mails for which it seeks metadata by Bates number, thereby easing any potential burden on MGA. Assuming MGA's representations are true, locating and producing the requested metadata should present no undue burden. While production costs may be shifted in an appropriate situation, where the burden of production is truly significant, this is not such a situation. Moreover, MGA's request is unreasonable in

light of the fact that, when MGA requested metadata from Mattel, Mattel bore the costs of production without objection or complaint. MGA tellingly never raised the cost issue until now. This is merely an attempt to make its continuing stonewalling somehow look warranted.

## Argument

### I. MGA SHOULD BE COMPELLED TO PRODUCE THE METADATA REQUESTED BY MATTEL FORTHWITH

Metadata, like all other discoverable information, must be produced if it is relevant to a party's claims or defenses. Bills v. Kennecott Corp., 108 F.R.D. 459, 461 (D. Utah 1985) ("It is now axiomatic that electronically stored information is discoverable under Rule 34 of the Federal Rules of Civil Procedure if it otherwise meets the relevancy standard prescribed by the rules."); 7 Moore's Federal Practice, § 37A.11[2] ("The language of [Rule 34] and the case law are unequivocal that electronically stored information is, if otherwise discoverable, subject to production."); Crown Life Ins. Co. v. Craig, 995 F.2d 1376, 1383 (7th Cir. 1993) (amendments to Rule 34 clearly apply to raw computer data). Therefore, contrary to MGA's assertions, Mattel need only demonstrate that the requested metadata is likely to lead to the discovery of admissible evidence in order to be entitled to this information.

MGA attempts to mislead the Court by asserting that metadata is entitled to greater protection than other forms of electronic information and that Mattel must make some "particularized showing" in order to obtain it.[1] MGA's authorities do not support that position. Rather, they merely stand for the proposition that metadata need not *automatically* be produced in response to a request for the production of documents unless the requesting party has articulated

---

[1] Opposition at 5.

1  that the metadata has relevance independent of the document to which it relates.
2  See Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc., 2006
3  LEXIS 92028 (2006) (denying request for metadata where "parties clearly had no
4  agreement that the electronic files would be produced in any particular format" and
5  the requesting party "[did] not identify any specific document or documents for
6  which such information would be relevant and is not obtainable through other
7  means"); Wyeth v. Impax Labs., Inc., 2006 LEXIS 79761, *4 (2006) (denying
8  request for metadata where "neither party has argued that the need for accessing
9  metadata was foreseeable or generally necessary" and "never agreed that the
10 electronic documents would be produced in any particular format"); Michigan First
11 Credit Union v. Cumis Ins. Soc., Inc., 2007 LEXIS 84842, *8 (2007) (refusing to
12 compel production of metadata because it had "no corresponding evidentiary
13 value").

14         This does not alter the fact that, where it is relevant, as here, metadata
15 is discoverable like other relevant information. See, e.g., Zubulake v. UBS Warburg
16 LLC, 217 F.R.D. 309, 324 (S.D.N.Y. 2003) (for electronic versions of relevant e-
17 mails, the "usual rules of discovery apply"). Indeed, some courts hold that metadata
18 should be produced even without a specific request therefor. See Williams v.
19 Sprint/United Management, 230 F.R.D. 640, 651 (D. Kan. 2005) ("Of course, if the
20 producing party knows or should reasonably know that particular metadata is
21 relevant to the dispute, it should be produced') (citations omitted).

22         Mattel has repeatedly explained why the metadata it seeks will provide
23 relevant information that the paper copies of these e-mails do not. When Mattel first
24 requested this metadata in August 2007, counsel for Mattel explained to MGA that
25 the requested metadata may provide information relevant to its RICO claims -- and
26 indeed may establish an element -- by demonstrating where the e-mails in question

traveled.² Mattel explained that this information was not available from the hard copies of the e-mails that had been produced.³ MGA accepted that explanation, agreed to produce the information, and did not question the relevance of this information again until it did so in its Opposition.⁴ Thus, MGA agreed on September 14, 2007 to produce all of the e-mails requested by Mattel in their electronic native format, *with full e-mail header information*, on or before October 1, 2007.⁵ MGA failed to live up to that promise, and instead produced a chart that did not contain the metadata information Mattel was promised.⁶ When Mattel explained that this chart was inadequate and did not include the promised information, MGA reassured Mattel that it would provide an electronic version of each of the requested e-mails that MGA possessed, and represented that it would investigate how long this would take.⁷ Although the electronic versions never came, forcing this motion, the fact that MGA has agreed on numerous occasions to produce this information shows that it is discoverable.

Notwithstanding its repeated assurances, MGA now asserts that Mattel is not entitled to the requested metadata, has provided "no basis" to demand this information and "has not even come close to demonstrating a particularized need for the requested metadata"⁸ -- all while paradoxically suggesting that Mattel's motion is somehow unnecessary.⁹ MGA's last-minute change of heart is unfounded. The

---

² Proctor Dec., ¶ 2.
³ Supp. Proctor Dec., ¶ 2-3.
⁴ Id.
⁵ Letter from Proctor to Charron, dated September 14, 2007, Proctor Dec., Exh. 6.
⁶ See Letter from Nguyen to Proctor, dated October 3, 2007, Proctor Dec., Exh. 7; Supp. Proctor Dec., ¶ 4.
⁷ E-mail from Proctor to Charron, dated October 8, 2007, Proctor Dec, Exh. 9.
⁸ Opposition at 5.
⁹ Opposition at 4.

requested metadata is relevant to Mattel's allegation that certain defendants and their associates sent various e-mails in furtherance of their criminal conspiracy across state or international borders -- e-mails which constitute predicate acts of wire fraud supporting Mattel's RICO claims. In fact, in the Court's Order denying defendants' motion to dismiss, Judge Larson stated that Mattel "will be called on to support [its] allegations with evidence" at an appropriate time:

> Counter-defendants also argue that, because the emails alleged to constitute wire fraud were sent among individuals physically located in the same state, Mattel will not be able to establish the interstate nature of the communications. See 18 U.S.C. s. 1343 (setting forth the requirement that communications be transmitted "in interstate or foreign commerce"). Mattel has alleged that the communications were transmitted in interstate or foreign commerce. This suffices at the pleadings stage; however eventually Mattel will be called upon to support these allegations with evidence.[10]

Mattel is entitled to discovery to obtain that evidence, particularly given that defendants themselves have sought to contest this element of Mattel's RICO claim as reflected in their unsuccessful motion to dismiss.

Finally, MGA's assertions that Mattel is not entitled to the requested discovery ignore that MGA and Mattel -- unlike the parties in the Wyeth and Kentucky Speedway cases on which MGA relies -- have *agreed* that metadata may be relevant, and entered into an agreement under which the parties could request metadata when they require it.[11] Pursuant to that agreement, MGA requested the metadata for twenty documents from Mattel "[i]n accordance with the agreement

---

[10] Order Re Motions Heard on June 11, 2007, Supp. Proctor Dec., at 17, Exh. 2.
[11] Letter from Alger to Jenal, dated March 29, 2007, Supp. Proctor Dec., Exh. 1.

between MGA" in September, following Mattel's request to MGA.[12] Unlike MGA, Mattel produced the requested metadata without objection, and in a timely fashion.[13] MGA's current assertions that metadata is generally not discoverable (or at least not discoverable from MGA) are disingenuous at best.

## II. MGA HAS NOT DEMONSTRATED ANY "UNDUE" BURDEN

Under the Rules, "a responding party should produce electronically stored information that is relevant, not privileged, and reasonably accessible, subject to the (b)(2)(C) limitations that apply to all discovery." Fed. R. Civ. P. 26(b)(2)(B), 2006 Advisory Committee Notes. Therefore, in order to limit the production of this relevant, discoverable information, *MGA* "must show that the information is *not reasonably accessible* because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B) (discussing when electronic discovery may be limited) (emphasis added); 7 Moore's Federal Practice, § 37A.35[1][c] ("[T]he party resisting discovery. . . has the initial burden to show that the discovery of the requested electronically stored information is not reasonably accessible because of costs and burdens").

MGA has not even begun to meet its burden. According to MGA, it has already collected at least twenty of the native files Mattel seeks[14] -- which nevertheless still have not been produced. MGA also concedes that its outside vendors can provide the native files for some undisclosed additional number of emails, stating only that the vendors cannot do so for "more than half" of them.[15] As to the balance (which the vendors ostensibly cannot access), MGA does not even

---

[12] Letter from Nguyen to Proctor, dated September 10, 2007, Proctor Dec., Exh. 5.
[13] Proctor Dec., ¶ 7.
[14] Declaration of Amy S. Park, dated November 30, 2007, at ¶ 4.
[15] Declaration of Amy S. Park, dated November 30, 2007, at ¶ 8.

1  suggest they are not accessible. To the contrary, it states merely that the process of
2  searching for them on MGA's file server "can be a very slow process."[16]

3        That is insufficient. MGA clearly has access to the information Mattel
4  has requested, which Mattel identified by Bates number to make identification of the
5  information in question a simple matter.[17] In fact, MGA has represented on
6  numerous occasions that it has preserved the electronic versions of *all* e-mails that
7  are relevant to this litigation.[18] For example, MGA's counsel told Judge Larson that
8  MGA has preserved "every e-mail in their entire company."[19] Likewise, MGA's
9  counsel affirmed that information on retired MGA computers "is preserved on
10 MGA's archived system" and that, prior to January 2007, "MGA would regularly
11 export emails into .pst files and archive those files."[20] This information is
12 reasonably accessible to MGA. The fact that MGA has itself *already produced* the
13 vast majority of the emails in question -- albeit in non-native format without the
14 needed metadata -- also shows that it has ready access to this information.[21] There
15 is simply nothing "undue" about any burden involved in searching MGA's server (or

---

[16] Declaration of Amir Suman dated November 30, 2007, ¶ 4.
[17] Notwithstanding Mattel's prior identification of the emails and the fact that they are attached to Mattel's pleading, MGA complains that Mattel did not attach the e-mails at issue to its motion. Opposition at 5. Accordingly, Mattel has attached the e-mails to the declaration filed herewith. Supp. Proctor Dec., Exh. 5.
[18] Declaration of James P. Jenal, Supp. Proctor Dec., Exh. 8; Declaration of Daphne Gronich, Proctor Dec. Exh. 15; Hearing Re Motion for Terminating Sanction, Supp. Proctor Dec., at 25:4-17, Exh. 4.
[19] Hearing Re Motion for Terminating Sanction, Supp. Proctor Dec., at 25:4-17, Exh. 4; Declaration of Jon Corey, dated December 5, 2007, at ¶ 2.
[20] Supplemental Declaration of James P. Jenal in Support of MGA Entertainment, Inc.'s Emergency Ex Parte Application for Review of Special Master Infante's Order Denying MGA's Motion for Stay or Extension, dated June 26, 2007, Supplemental Proctor Dec., Exh. 3.
[21] Supp. Proctor Dec., Exh. 5.

individual computers) for the emails of the individuals who sent or received the emails in question.

In fact, MGA's own opposition shows this. To support its burden assertions, MGA offers an unsupported "estimate" that this production may cost more than $10,000.[22] Even assuming that is accurate, that estimate clearly fails to demonstrate undue burden in this case. To show undue burden, MGA must show that the costs and burdens associated with the production are undue because they are "*disproportionate to the issues at stake in the litigation.*" 7 Moore's Federal Practice, § 37A.35[1][c] ("Depending on the case, *enormous* expense in producing requested matter, alone, may be insufficient reason to excuse production.") (emphasis added); In re Brand Name Prescription Drugs Antitrust Litig., 1995 U.S. Dist. LEXIS 8281, at *2-3 (N.D. Ill. 1995) (requiring retrieval of data from email stored on backup tapes at cost of $50,000 to $70,000). In this case, nearly all discovery would be considered "unduly burdensome" and all information would be "not reasonably accessible" if an unsubstantiated estimate of $10,000 were sufficient to show undue burden. The Court should compel production.

### III. EVEN IF THE PRODUCTION WERE UNDULY BURDENSOME, THE METADATA SHOULD STILL BE COMPELLED BECAUSE MATTEL HAS SHOWN GOOD CAUSE FOR PRODUCTION

Even if MGA had proven an "undue" burden, which it has not, "the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." Fed. R. Civ. P. 26(b)(2)(B). Good cause is shown when the burdens and costs of producing are "justified in the circumstances of the case." Fed. R. Civ. P. 26(b)(2)(B), 2006 Advisory Committee Notes. In making this determination, the Court may consider:

---

[22] Opposition at 8.

"(1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources." Fed. R. Civ. P. 26(b)(2)(B) Advisory Committee Notes. Good cause for the production of the requested metadata clearly exists here.

First, as MGA knows and itself put at issue, the metadata requested by Mattel may itself prove an element of a Mattel claim. Thus, one cannot understate the critical importance of this discovery. Moreover, Mattel has no reasonable alternative sources for this information. MGA suggests -- in the only alternative it offers -- that Mattel might simply take depositions of the co-conspirators who sent and received these e-mails.[23] That is disingenuous and unrealistic. Even apart from the fact that defendants are simultaneously opposing Mattel's efforts to take those depositions before Judge Larson and the Discovery Master, a defendant's testimony is not a reliable or exclusive source for information that may lead directly to his or her liability or criminality. Nor can these witnesses be expected to know the location of the servers through which the emails passed.

Mattel's discovery request is also highly specific. As MGA knows, Mattel has identified by Bates number each of the e-mails for which it seeks metadata.[24] Each of these e-mails has been produced in hard copy form and was included in the pleadings as Exhibit C to Mattel's Second Amended Answer and

---

[23] Opposition at 7.
[24] Motion at 2; Letter from Proctor to Jenal, dated August 21, 2007, at 1-2, Proctor Dec., Exh. 1.

Counterclaims.[25] The specificity of Mattel's requests substantially limits any burden on MGA. Conveniently, MGA omits this in its analysis.[26]

Finally, the stakes of this case and MGA's resources show that production should be ordered. According to MGA, it seeks "billions" from Mattel on its claims, and Bratz products have yielded billions of dollars in revenues.[27] MGA has thrown an army of lawyers at Mattel. According to MGA itself, just one of its outside law firms, O'Melveny & Myers, had 45 attorneys and 65 paralegals working on this matter, and that did not include its other outside counsel on this case.[28] Similarly, MGA's current counsel has attorneys from at least four different offices working on MGA's behalf.[29] Even if MGA had established some cost associated with this production, it does not outweigh Mattel's need for the information.

### IV. MGA SHOULD BEAR THE COST OF THIS PRODUCTION

Cost-shifting, like any other limitation on the discovery of electronic information, may only be imposed upon a showing by MGA that the information is not readily accessible and presents an "undue burden." See Fed. R. Civ. P. 26(b)(2)(B)-(C); see also OpenTV v. Liberate Technologies, 219 F.R.D. 474, 477 (N.D. Cal. 2003) ("Because inaccessible data is sought, cost-shifting is *potentially appropriate* in this case.") (emphasis added); Bills v. Kennecott Corp., 108 F.R.D.

---

[25] Motion at 2.
[26] Opposition at 6-8.
[27] ABC Nightline transcript dated December 23, 2006, Supp. Proctor Dec., Exh. 7; Article from Pittsburgh Tribune Review, dated August 6, 2007, Supp. Proctor Dec., Exh. 8; Article from Newsday, dated August 6, 2007, Supp. Proctor Dec., Exh. 9.
[28] MGA Parties' Opposition to Ex Parte Application of O'Melveny & Myers LLP For an Order Shortening Time for Hearing on its Motion to Withdraw and Requiring in Camera Inspection of Supporting Documents, dated October 9, 2007, Supp. Proctor Dec., Exh. 6.

459, 462 (D. Utah 1985) (a court may shift costs "where the demand imposes an undue burden"). As explained above, MGA has not shown that the requested information is "inaccessible" or that gathering it would impose an undue burden. While cost-shifting may be appropriate in some circumstances in this case, it is not here.

Moreover, and further belying MGA's belated claim that this issue justifies its delay and stonewalling, MGA had agreed to produce the information previously without this condition and, as noted, received it from Mattel without reimbursing Mattel. If cost-shifting is appropriate here, MGA should be ordered to pay Mattel its full cost in producing the same information as well.

### Conclusion

For the foregoing reasons, the Discovery Master should grant Mattel's Motion in its entirety.

DATED: December 5, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ B. Dylan Proctor /MH
B. Dylan Proctor
Attorneys for Mattel, Inc.

---

[29] Supp. Proctor Dec., ¶ 10.