QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>       Plaintiff,<br><br>   vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>       Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>**DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br><br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL FARHAD LARIAN TO PRODUCE DOCUMENTS; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Declaration of Jon D. Corey filed concurrently herewith]<br><br>Hearing Date:   January 4, 2007<br>Time:          9:30 a.m.<br>Place:          TBA<br><br>**Phase 1**<br>Discovery Cut-Off:   January 28, 2008<br>Pre-Trial Conference:  May 5, 2008<br>Trial Date:         May 27, 2008 |

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 | PLEASE TAKE NOTICE that at a telephonic conference before

3 | Discovery Master Hon. Edward Infante (Ret.) that will occur on January 4, 2008 at

4 | 9:30 a.m. at a place to be determined by Judge Infante, plaintiff Mattel, Inc.

5 | ("Mattel") will, and hereby does, move the Court for an order compelling Farhad

6 | Larian to produce documents responsive to Mattel's Subpoena dated August 31,

7 | 2007, including Request Nos. 1-4, 8, 9, 16-19, 23-25, 38, 39 and 41.

8 | This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 37

9 | and 45 on the grounds that Mattel's Requests seek relevant information and there is

10 | good cause of its production and that the Discovery Master has already ruled that

11 | much of the information that Mattel seeks is relevant and discoverable. The

12 | Discovery Master has jurisdiction to hear this motion pursuant to sections 5 and 15

13 | of the Stipulation and Order for Appointment of a Discovery Master.

14 | This Motion is based on this Notice of Motion and Motion, the

15 | accompanying Memorandum of Points and Authorities, the Declaration of Juan

16 | Pablo Albán filed concurrently herewith, the records and files of this Court, and all

17 | other matters of which the Court may take judicial notice.

18 | **<u>Certificate Of Compliance With Local Rule 37-1</u>**

19 | The parties and Farhad Larian met and conferred regarding Mattel's

20 | document requests and Mr. Larian's objections thereto on November 20 and 27,

21 | 2007, but were unable to reach agreement on the sixteen Requests set forth above.

22 |

23 | DATED: December 6, 2007       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

24 |

25 |

26 | By _Jon D. Corey / jpa_

27 |       Jon D. Corey
      Attorneys for Mattel, Inc.

28 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 3

    A.    The Larian v. Larian Proceedings. ......................................................... 3

    B.    The Same Facts About The Origins Of Bratz At Issue In The *Larian v. Larian* Proceedings Are At Issue Here. ................................... 6

    C.    Mattel Subpoenaed Farhad Larian to Produce Documents Related to the Larian v. Larian Disputes, Among Other Things. ........... 7

    D.    Farhad Larian Asserted Virtually Identical Objections to Every Request And Refused to Produce For Sixteen Of Mattel's Requests. .............................................................................................. 8

    E.    Mattel's Other Discovery Efforts. .......................................................... 9

    F.    Farhad Larian Already Possessed Or Obtained Substantial Information Regarding The Origins Of Bratz Through Discovery. ............................................................................................. 10

ARGUMENT...................................................................................................... 13

I.    FARHAD LARIAN HAS AN OBLIGATION TO PRODUCE DOCUMENTS RESPONSIVE TO THE REQUESTS AT ISSUE................ 13

    A.    The Documents Mattel Seeks Are Relevant And There Is Good Cause For Their Production. .................................................................. 14

        1.    The *Larian v. Larian* Disputes Are Relevant. ............................. 14

        2.    Documents About Farhad Larian's Relationship With MGA Are Relevant As To His Credibility.................................. 15

        3.    Documents Relating To This Action Are Relevant.................... 16

        4.    Information About The Location Of Responsive Documents Is Relevant................................................................ 17

    B.    Mattel's Requests Are Not Unreasonable, Oppressive, Annoying or Embarrassing. .............................................................................. 17

    C.    The Protective Orders Farhad Larian Alludes To Are Inapplicable....................................................................................... 19

        1.    Farhad Larian Possessed Most Of The Documents At Issue Before Either Protective Order Went Into Effect.............. 19

1          2.    The Protective Order Here Addresses Any Confidentiality
                 Concerns Expressed In The Prior Protective Orders.................. 21

2    II.   FARHAD LARIAN'S PRIVILEGE OBJECTIONS HAVE NO
3          MERIT.......................................................................................................... 23

4          A.    Farhad Larian Has Not Produced A Privilege Log Sufficient To
                 Justify His Claims of Privilege. ............................................................ 23
5
           B.    Farhad Larian's Privilege Log Does Reveal That Some Withheld
6                Documents Are Likely Not Privileged. ................................................ 25

7          C.    There Is No "Settlement Communications" Privilege........................... 25

8    CONCLUSION........................................................................................................... 26

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona,
881 F.2d 1486 (9th Cir. 1989)............................................................................ 23

In re Bergeson,
112 F.R.D. 692 (D. Mont. 1986)........................................................................ 18

Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.,
175 F.R.D. 646 (C.D. Cal. 1997) ...................................................................... 15

Caliper Technologies Corp. v. Molecular Devices Corp.,
213 F.R.D. 555 (N.D. Cal. 2003) ...................................................................... 23

Covey Oil Co. v. Continental Oil Co.,
340 F.2d 993 (10th Cir. 1965)........................................................................... 18

Flatow v. The Islamic Republic of Iran,
202 F.R.D. 35 (D.D.C. 2001) ............................................................................ 17

Gail v. New England Gas Co., Inc.,
243 F.R.D. 28 (D. R.I. 2007).............................................................................. 23

Goodman v. U.S.,
369 F.2d 166 (9th Cir. 1966) ............................................................................. 17

Graber Mfg. Co. v. Dixon,
223 F. Supp. 1020 (D.D.C. 1963) ..................................................................... 22

Heat and Control, Inc. v. Hester Industries, Inc.,
785 F.2d 1017 (Fed. Cir. 1986)......................................................................... 22

Hunter v. International Systems & Controls Corp.,
51 F.R.D. 251 (W.D. Mo. 1970) ....................................................................... 22

In re Imperial Corp. Of America,
174 F.R.D. 475 (S.D. Cal. 1997)................................................................... 23, 24

Larian v. Larian,
123 Cal. App. 4th 751 (2004)........................................................................ 1, *passim*

Martinez v. City of Fresno,
2006 WL. 3762050 (E.D. Cal. 2006) ................................................................ 23

Matsushita Electric Industrial Co., Ltd. v. Mediatek, Inc.,
2007 WL. 963975 (N.D. Cal. 2007).................................................................. 25

McCarty v. Bankers Ins. Co., Inc.,
195 F.R.D. 39 (N.D. Fla. 1998).................................................................... 2, 20

Menzies v. FTC,
242 F.2d 81 (4th Cir.), cert. denied, 353 U.S. 957 (1957) ................................. 22

Northrop Corp. v. McDonnell Douglas Corp.,
751 F.2d 395 (D.C. Cir. 1984) ................................................................ 17

Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,
6 F. Supp. 2d 859 (E.D. Mo. 1998)........................................................ 18

S.E.C. v. Thrasher,
1996 WL. 125661 (S.D.N.Y. 1996) .................................................. 23, 24

State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.,
2007 WL. 2993840 (E.D.N.Y. 2007)...................................................... 18

U.S. v. American Optical Co.,
39 F.R.D. 580 (N.D. Cal. 1966) ....................................................... 13, 18

U.S. v. Zolin,
491 U.S. 554 (1989) .............................................................................. 23

United States v. Abel,
469 U.S. 45 (1984) ................................................................................ 15

**Statutes**

California Civil Code § 1542.............................................................. 3, 4

Federal Rule of Civil Procedure 45 ............................................. 2, 13, 23

Federal Rule of Evidence 408 ........................................................ 25, 26

Federal Rule of Evidence 501 .............................................................. 23

Federal Practice & Procedure: Federal Rules of Evidence § 6095 ............ 15

07209/2311821.3

**Preliminary Statement**

Farhad Larian was a co-founder of MGA and is a former MGA executive and shareholder. In December 2000, Farhad Larian sold his forty-five percent interest in defendant MGA Entertainment, Inc. to his brother, defendant Isaac Larian. Farhad Larian alleged that, in the Summer of 2002, he discovered that Isaac Larian had fraudulently induced him into selling the stock. Specifically, Farhad Larian alleged that in late 1999 or early 2000, Isaac Larian chose "Bratz" as a fashion doll to compete with Mattel's BARBIE line, developed and planned the release of Bratz throughout 2000, and concealed Bratz from Farhad Larian in order to pay Farhad Larian an artificially low price for his stock. Unable to resolve his complaints privately through their uncle (Morad Zarabi), Farhad Larian sued Isaac Larian and, eventually, Mr. Zarabi as well.

There is no question that facts and evidence from Farhad Larian's disputes with Isaac Larian are relevant to this suit. Farhad Larian's allegations about Bratz's design and development in late 1999 and throughout 2000 -- during which times Carter Bryant was employed by Mattel -- overlap with central issues in this action. Indeed, in a prior Order, the Discovery Master so found that information from the Larian v. Larian disputes was relevant and discoverable. For example, Farhad Larian represented in the proceedings against Isaac Larian that he had evidence showing, among other things:

(a) by late 1999, Isaac Larian had decided that MGA's challenge to BARBIE should be a fashion-type doll, and Isaac Larian conducted a fashion contest in which he selected "Carter Bryant's doll line;"

(b) in February 2000, Isaac Larian tried to keep Farhad Larian from attending the New York Toy Fair, where information about new, upcoming products was reviewed;

(c) in the Spring of 2000, Isaac Larian took steps to personally profit from Bratz, including by giving himself (among many other financial rewards) (i) a

07209/2311821.3

-1-

1    bonus of $1.5 million for 2000 if EBITA for the year reached $8 million; and

2    (ii) a separate bonus of 4% royalty on any new toy idea developed in MGA's

3    2001 line, which was an "absolute first" for the company; and

4    (d)    in or about July or August 2000, Isaac Larian called internal meetings

5    with top management at MGA to discuss Bratz and his plans for Bratz.

6 All of this, as the Discovery Master knows, is during the time of Bryant's

7 employment by Mattel and is well before Bryant and MGA claim to have even been

8 introduced to one another.

9    Mattel has searched public filings in the Larian v. Larian proceedings

10 for relevant documents.  Mattel has also sought documents from MGA, Isaac Larian

11 and other third parties involved in the Larian v. Larian proceedings.  A few third

12 parties have complied with their obligations under Federal Rule of Civil Procedure

13 45 and produced relevant documents.  Farhad Larian has not and refuses to produce

14 key documents in response to Mattel's Requests.  Nor have those documents been

15 produced by MGA, despite a prior Court Order compelling its compliance, or by

16 Isaac Larian.  Indeed, flouting the Discovery Master's Order of May 15, 2007,

17 MGA has produced just *four* documents related to the Larian v. Larian proceedings.

18 For his part, Isaac Larian has not produced a single responsive document on that --

19 or any other -- subject in this litigation.

20    Furthermore, the facts and evidence relating to Farhad Larian's disputes

21 are centrally relevant to damages issues in this case.  For example, Mr. Zarabi

22 retained an appraiser who, when valuing MGA as of December 31, 1999, projected

23 an annual growth rate of five percent (5%) for 2000-2004.  When the appraiser later

24 valued MGA as of December 31, 2000, he suddenly projected a growth rate of

25 twenty-five percent (25%) for 2001.  In contemporaneous statements, the appraiser

26 acknowledged that he could project such a large growth rate only if a "hot product"

27 was in the works.  Not only does such information bear on the timing of Bratz's

28 creation and when Bryant introduced Bratz to MGA, but the appraisals made

1  relating to the value of MGA is directly relevant to issues such as MGA's revenues

2  from Bratz and MGA's net worth, which the District Court and the Discovery

3  Master both have held is relevant to punitive damages.  Mattel was able to obtain at

4  least some of these appraisals in discovery from public filings or third parties so far,

5  but the appraisals are "bare bones," consisting mostly of numbers and broad

6  explanations.  Mattel has been unable to obtain, and knows Farhad Larian possesses,

7  the "raw information" on which the appraisals were based, among other things.  Yet,

8  he has failed and refused to produce them.

9          The Discovery Master should grant Mattel's motion and compel Farhad

10  Larian to produce his responsive documents without further delay.

11                          **Factual Background**

12          **A.    The _Larian v. Larian_ Proceedings.**

13          Since the inception of MGA in 1979 until December 2000, Isaac

14  Larian, a defendant herein and MGA's CEO, and his brother Farhad Larian shared

15  ownership and management of MGA.[1]  By approximately 2000, the brothers

16  apparently had irreconcilable differences in how to run MGA.[2]  In March 2000,

17  Isaac Larian proposed that Farhad Larian sell his interest in MGA to Isaac Larian for

18  $9 million.[3]

19          On September 28, 2000, ten days after the alleged effective date of

20  Carter Bryant's contract purporting to assign rights to Bratz to MGA, Isaac Larian

21  convinced Farhad Larian that they should have their uncle Morad Zarabi listen to

---

[1]   _Larian v. Larian_ Complaint at ¶¶ 6-12, attached as Exh. 1 to the Declaration of Juan Pablo Albán filed concurrently ("Albán Dec.").  MGA was formerly known as ABC International Traders, Inc.  The brothers each had a forty-five percent interest in the company in early 2000.  Id. at ¶¶ 8, 9.

[2]   Id. at ¶¶ 10-12.

[3]   Id., Exh. 2 at ¶ 1 (Ltr. from I. Larian to F. Larian dated March 30, 2000).  The draft agreement included a waiver California Civil Code § 1542, which would have excluded claims that Farhad Larian did not know or suspect to exist at the time from any general release Farhad Larian agreed to.  Id. at ¶ 5.

-3-

1     their differences, decide a fair value for MGA, and decide which brother should sell

2     his ownership interest to the other.[4]  Isaac Larian did not tell Farhad Larian about

3     the contract with Bryant.[5]  By December 4, 2000, Mr. Zarabi had concluded that

4     Farhad Larian should sell his ownership interest to Isaac Larian, and the brothers

5     entered into an Agreement for Sale of Stock by which Farhad Larian sold his

6     interest to Isaac Larian for $8.775 million.[6]  Ernest Dutcher, the appraiser

7     Mr. Zarabi retained to value MGA, valued MGA based on "the period ending

8     December 31, 1999."[7]

9           In the Summer of 2002, Farhad Larian complained to Mr. Zarabi that

10    Isaac Larian had fraudulently concealed Bratz during their negotiations in 2000 that

11    led to Farhad Larian's sale of stock.[8]  In or around February 2003, Mr. Zarabi

12    responded to Farhad Larian's complaint about Bratz and oversaw another appraisal

13    of MGA "based upon information [he] gathered in 2002."[9]  Mr. Dutcher produced

14    an appraisal on February 13, 2003 that *valued MGA as of December 31, 2000* and

15    projected a 2001 revenue growth rate of twenty-five percent (25%).[10]  By

16    Mr. Dutcher's own account, he could have projected such a large growth rate only if

17    "hot products that came along" justified it.[11]

18

19

---

20    [4]  Id., Exhs. 3 (Agr. to Arbitrate and Selection of Arbitrator), 4 at ¶ 4 (Dec. of
Farhad Larian dated November 7, 2003).

21    [5]  Id., Exh. 4 at ¶ 5 (F. Larian 2003 Dec.).

22    [6]  Id., Exhs. 5 at ¶ 5 (Morad Zarabi Dec. dated September 14, 2004); 6 (Agr. for
Sale of Stock dated December 4 2000).  Like the original agreement Isaac Larian

23    proposed in March 2000, this agreement includes a "mutual release" that waives the

24    protections of California Civil Code § 1542.

25    [7]  Id. Exh. 7 at ¶¶ 5-6 (Ernest Dutcher Dec. dated January 9, 2007).

    [8]  Id., Exh. 5 at ¶ 6 (Sep. 2004 Zarabi Dec.).

26    [9]  Id. at ¶¶ 7-8.

    [10]  Id., Exh. 7 at ¶¶ 8-9 and Exh. C, p.20 therein (Jan. 2005 Dutcher Dec.).

27    [11]  Id., Exh. 8 at 18:14-19:12 (Tr. of Audiotaped Meeting w/E. Dutcher dated

28    September 10, 2003).

1     Other information confirms that MGA had unique expansionary plans
2  in 2000 compared to the prior four years.  For example, MGA's current liabilities
3  jumped from $6.6 million in 1999 to $24.2 million 2000, including $11.3 million of
4  long-term debt obligations, compared to similar debt of about $112,000 during the
5  prior four years combined;[12] "intangible assets" jumped from $15 million in 1999 to
6  $36.9 million in 2000;[13] inventory jumped from $5.8 million in 1999 to
7  $14.3 million in 2000;[14] and expenses on "Molds" jumped from $0 from 1996-1998
8  to $508,000 in 1999 and $750,000 in 2000.[15]  That MGA obtained an important loan
9  in 2000, seemingly at least in part related to development of Bratz, is confirmed by
10  Farhad Larian's subpoena on Wachovia Corporation seeking documents related to
11  the loan; Wachovia confirmed it had three boxes of responsive loan documents.[16]

12     Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued
13  Isaac Larian alleging, among other things, that (a) in late 1999 or early 2000, Isaac
14  Larian and MGA "became aware" of a new product line called "Bratz," (b) starting
15  in early 2000 and throughout 2000, Isaac Larian and MGA devised plans to develop
16  and distribute Bratz, and (c) Isaac Larian concealed the plans for Bratz from Farhad
17  Larian and Mr. Zarabi in order to keep the valuation of MGA artificially low.[17]  As
18  the Discovery Master is aware, these are time periods during which Bryant was an
19  Mattel employee and are well before MGA and Bryant claim they were even
20  introduced to one another in September 2000.  On February 28, 2005, Farhad Larian
21  also brought suit against Mr. Zarabi alleging the same facts regarding the origins of

22
23
24

25  [12]  Id., Exh. 7, at Exh. C, p.15 therein (Jan. 2005 Dutcher Dec.).
    [13]  Compare id., Exh. B, p.18 to id., Exh. C, p.18.
26  [14]  Id., Exh. C, p.14.
    [15]  Id., Exh. C, p.16.
27  [16]  Id., Exh. 9 (Ltrs. from Wachovia to F. Larian Counsel dated Nov. 15, 2005).
28  [17]  Id., Exh. 1 at ¶¶ 13-23 (Larian v. Larian Complaint).

07209/2311821.3

-5-

1  Bratz, but this time alleging that Mr. Zarabi conspired with Isaac Larian to conceal
2  those facts.[18]

3        In response to Farhad Larian's suit, Isaac Larian moved to compel
4  arbitration of Farhad Larian's claims and won at the appellate level.[19]  On or around
5  February 8, 2005, Mr. Zarabi declined to arbitrate the dispute.[20]  The parties could
6  not agree to an arbitrator, and the court appointed one.[21]  The arbitration finally
7  started on November 16, 2005.[22]  Two days into it, Farhad Larian abruptly
8  dismissed his claims.[23]  Farhad Larian claimed he did so in hopes of reconciling
9  with his brother.[24]  Isaac Larian went after Farhad Larian to recover attorneys' fees
10  and won an award in excess of $1 million against his brother.[25]

11      **B.**    **The Same Facts About The Origins Of Bratz At Issue In The**
12          ***Larian v. Larian* Proceedings Are At Issue Here.**

13        As the Discovery Master is aware, Farhad Larian's allegations about
14  the timing of the origins and early development of Bratz and MGA's concealment
15  thereofth parallel, and provide support for, the crux of Mattel's claims against Carter
16  Bryant, MGA and Isaac Larian regarding Bratz.[26]  The Discovery Master already
17  has ruled that documents regarding the Larian v. Larian lawsuits and arbitration
18  proceedings are relevant and discoverable, noting that those proceedings too related
19  to the conception of Bratz.[27]  The Discovery Master also ruled that the protective
20

21    [18]  Id., Exh. 16 at ¶¶ 14-18 (Larian v. Zarabi Complaint dated Feb. 28, 2005).
    [19]  Id., Exh. 10 (Larian v. Larian, 123 Cal. App. 4th 751, 756-758 (2004)).
22    [20]  Id., Exh. 11 (Ltr. from M. Zarabi to I. Larian, F. Larian, dated Feb., 2005).
23    [21]  Id., Exh. 12 (Larian v. Larian Court Order dated May 4, 2005).
    [22]  Id., Exh. 13 (Final Arbitration Award dated Nov. 28, 2005).
24    [23]  Id.
25    [24]  Id., Exh. 14 at ¶¶ 6-7 (F. Larian Dec. dated Jan. 20, 2006).
    [25]  Id., Exh. 15 (Final Arbitration Amendment dated Feb. 3, 2006).
26    [26]  Id., Exh. 18 at ¶¶ 26, 27, 29, 33, 35, 36 (Mattel's Second Amended Answer
27  and Counterclaims dated Jul. 12, 2007).
28    [27]  Id., Exh. 19 at 10-11 (Disc. Master Order dated May 15, 2007).

1   order in this action adequately addresses privacy concerns the parties may have from

2   production of documents related to the <u>Larian v. Larian</u> proceedings.[28]

3   **C.     Mattel Subpoenaed Farhad Larian to Produce Documents Related**

4   **to the Larian v. Larian Disputes, Among Other Things.**

5                   Mattel subpoenaed Farhad Larian to appear for deposition and to

6   produce documents on August 31, 2007.[29]  The majority of Mattel's requests seek

7   documents related to the <u>Larian v. Larian</u> disputes, including documents related to

8   allegations in those disputes that are also at issue in this action.[30]  A second category

9   of requests seeks documents related to non-Bratz allegations by Mattel and MGA,

10  primarily related to allegations of MGA's and Larian's trade secret thefts from

11  Mattel.[31]  A third category relates to Farhad Larian's relationship to MGA, including

12  his positions there, ownership interests, and payments from MGA or Isaac Larian to

13  Farhad Larian.[32]  A fourth category relates to Farhad Larian's knowledge and

14  possession of documents specifically from this action, including his communications

15  with Mattel.[33]  Finally, a fifth category seeks information about the location of

16  responsive documents.[34]

17

18

19

20

21

---

22  [28]   <u>Id</u>. at 11, n.4.

23  [29]   <u>Id</u>., Exh. 20 (Mattel's Subpoena to Farhad Larian)

    [30]   <u>Id</u>., Request Nos. 1-12, 15-22.  After the conference of counsel, the requests

24  still at issue in this motion for this category are Nos. 1-4, 8, 9 and 16-19.  Each

25  request still at issue, Farhad Larian's objections and Mattel's position with respect
    to the objections are set forth in the Separate Statement filed concurrently.

26  [31]   <u>Id</u>., Request Nos. 13, 14, 29, 31-37.  None of these are still at issue.

    [32]   <u>Id</u>., Request Nos. 23, 24, 30, 41.  Request Nos. 23, 24 and 41 are still at issue.

27  [33]   <u>Id</u>., Request Nos. 25-28.  Request No. 25 is still at issue.

28  [34]   <u>Id</u>., Request Nos. 38-40.  Request Nos. 38 and 40 are still at issue.

**D.    Farhad Larian Asserted Virtually Identical Objections to Every Request And Refused to Produce For Sixteen Of Mattel's Requests.**

Farhad Larian served responses and objections on September 21, 2007.[35] Christensen Glaser, who served the objections and continues to represent Farhad Larian, at the time also represented MGA and Isaac Larian in this action.[36] This same firm, on behalf of MGA, has claimed that purported communications between Mattel's counsel and Farhad Larian, when he was in litigation with Isaac Larian, should disqualify Mattel's counsel from further representing Mattel in this action.[37]  Mattel's subpoena to Farhad Larian thus sought categories of information related to this topic as well.[38]

In response to the subpoena, Farhad Larian initially agreed to produce documents responsive to eleven of Mattel's forty-one document requests, and produced approximately one redwell of documents on November 19, 2007.[39]  Even as to these, Farhad Larian asserted the same boilerplate objections he asserted for every other request.[40]  Farhad Larian later agreed to produce documents responsive to three other requests without qualification other than attorney-client or work product privileges.[41]  Farhad Larian also later claimed not to have any documents responsive to eleven additional requests.[42]

---

[35]  Id., Exh. 21. (F. Larian's Resp. and Objs. to Subpoena).
[36]  Id.
[37]  Id., Exh. 43.
[38]  Id., Exh. 23 at 2.
[39]  Id. ¶ 23, Exh. 21. Farhad Larian agreed to produce for Request Nos. 5-7, 10-14, and 26-28.
[40]  Id.
[41]  Request Nos. 20, 22 and 30. Id. at ¶ 24. Mattel has not yet received an additional production Farhad Larian has said is forthcoming by December 6, 2007. Id.
[42]  Request Nos. 15, 21, 29, 31, 32, 33, 34, 35, 36, 37 and 40. Farhad Larian agreed to supplement his responses to clarify this. Id.

1    Though Farhad Larian's counsel knows of the Discovery Master's

2  May 15, 2007 Order requiring production of <u>Larian v. Larian</u> documents, Farhad

3  Larian refuses to produce any documents for ten of Mattel's twenty requests related

4  to the <u>Larian v. Larian</u> disputes.[43]  Among the requests he refuses to produce

5  documents in response to are requests that are almost identical to the request for

6  which the Discovery Master found were proper in the May Order.[44]

7    Mattel disagreed with Farhad Larian's objections and had to ask four

8  separate times to meet and confer before Farhad Larian's lawyers finally agreed to

9  comply with their obligations and schedule one.[45]  In that process, Mattel offered to

10  pay for Farhad Larian's copying costs.[46]

11    **E.    <u>Mattel's Other Discovery Efforts.</u>**

12    Mattel has attempted since March 14, 2005 to obtain documents related

13  to the <u>Larian v. Larian</u> proceedings directly from MGA.[47]  The efforts have been

14  futile, and, as far as Mattel can ascertain, even the Discovery Master's Order of

15  May 15, 2007 resulted in MGA producing just *four* documents related to the

16  <u>Larian v. Larian</u> proceedings.[48]  Mattel also requested that Isaac Larian produce

17  documents related to the proceedings.[49]  To date, Isaac Larian has not produced a

18  single responsive document on that or any other subject.[50]

19

20

---

21  [43]  Request Nos. 1-4, 8, 9, and 16-19.  <u>Id.</u>

22  [44]  <u>Compare</u> <u>id.</u>, Exh. 20, Request Nos. 1, 4, 16 (Mattel's Subpoena to F. Larian)

23  <u>with</u> <u>id.</u>, Exh. 22, Request No. 41 (Mattel's First Set of Requests for Production of Documents to MGA dated March 14, 2005)

24  [45]  <u>See</u> <u>id.</u>, Exhs. 23-31 (Correspondence between Albán and Lever dated

25  between Oct. 3, 2007 and Nov. 13, 2007).

    [46]  <u>Id.</u>, Exh. 28 (Ltr from Albán to Lever dated November 2, 2007).

26  [47]  <u>Id.</u>, Exh. 22, Request No. 41 (Mattel's First Set of RFPs to MGA).

    [48]  <u>Id.</u> ¶ 35.

27  [49]  <u>Id.</u>, Exh. 32, Request No. 123 (First Set of RFPs to I. Larian).

28  [50]  <u>Id.</u> ¶ 35.

1   Mattel also searched public filings in <u>Larian v. Larian</u> and <u>Larian v.</u>
2   <u>Zarabi et al.</u> civil lawsuits.[51]  Mattel found Mr. Dutcher's declaration that included
3   the appraisals described above, but Mattel did not locate any of the raw data on
4   which Mr. Dutcher relied to do the appraisals, including MGA's 2000 and 2001
5   financial statements and projections.[52]  Mattel also served subpoenas on third parties
6   involved in the <u>Larian v. Larian</u> proceedings.  In addition to Farhad Larian, Mattel
7   served subpoenas on Mr. Zarabi and on the attorneys Mattel identified as involved
8   in those proceedings.[53]  Some third parties Mattel subpoenaed have produced
9   responsive documents.  These parties, however, claimed that they did not have in
10  their possession the majority of responsive documents Mattel has learned Farhad
11  Larian should have in his possession, as described in more detail below.[54]

12         **F.    Farhad Larian Possessed Or Obtained Substantial Information**
13              **Regarding The Origins Of Bratz Through Discovery.**

14         From searches of public filings and third party productions, Mattel
15  knows Farhad Larian possesses numerous documents highly relevant to this action.
16  He either always had them or obtained them through discovery in the <u>Larian v.</u>
17  <u>Larian</u> proceedings.[55]  For example:

18  •     On September 19, 2003, Farhad Larian served document requests on
19  Mr. Zarabi, including documents related to the "arbitrations" and appraisals
20  Mr. Zarabi conducted, MGA financial information from 1996 through the date of
21  the requests, and documents related to Bratz and Carter Bryant.[56]

22

23

---

24   [51]  <u>Id.</u> ¶ 37.
     [52]  <u>Id.</u>
25   [53]  <u>Id.</u> ¶ 38.  Mr. Zarabi gave all documents he had to Isaac Larian.  <u>Id.</u>
     [54]  <u>Id.</u>
26   [55]  At the very least, Farhad Larian should explain the circumstances of
27  destruction of any of the documents he possessed relevant to his lawsuits, or why he
     otherwise no longer possesses documents he clearly had at one time.
28   [56]  <u>Id.</u>, Exh. 33 (Farhad Larian's RFPs To Mr. Zarabi).

1  •      Mr. Zarabi agreed to produce documents in response to these requests, limited
2  only by "2003 communications and documentation."  Mr. Zarabi would not produce
3  those because they related to Mr. Zarabi's "ongoing arbitration proceedings."[57]

4  •      Farhad Larian's attorneys confirmed that Farhad Larian received Mr. Zarabi's
5  production, which included everything requested except for a few missing pages and
6  the 2003 documents.[58]  Mr. Zarabi produced with no protective order in effect.[59]

7  •      Mr. Zarabi's attorneys confirmed in detail what they produced to both Farhad
8  Larian and Isaac Larian.  This list includes numerous items Mattel has been unable
9  to obtain through public filings or other parties, such as:

10         (a)     Letters from Morad's attorneys to National Business Appraisers;

11         (b)     Resignation of Fred Larian as Officer and Director of MGA;

12         (c)     Packet entitled "MGA Entertainment Confidential."

13         (d)     MGA Entertainment Financial Statement for Years 2001 and 2000;

14         (e)     ABC International Bad Debts from 1997-2000;

15         (f)     Certificate of Amendment of Articles of Incorporation of ABC;

16         (g)     Fax to Daie Jaan/Fred Larian -- list of shareholders; and

17         (h)     Handwritten purchase offer between Fred and Isaac Larian - 10/2000.[60]

18  •      Mr. Zarabi produced to Farhad Larian at least 2,336 pages of documents
19  without any protective order being in effect at the time of the production.[61]

20  •      Mr. Zarabi's attorneys confirm that they did eventually produce at least some
21  2003 communications and documents to Farhad Larian.[62]

22  •      Farhad Larian also obtained appraisal-related documents from Mr. Dutcher.[63]

23

24  _____

25  [57]  Id., Exh. 34 (Ltr. from Stern to Howarth dated June 24, 2004).
    [58]  Id., Exh. 35 (Ltr. from Howarth to Stern dated June 8 2004).
    [59]  Id., Exh. 36 (Ltr. from Kaye Scholer to Howarth dated July 7, 2004).
26  [60]  Id., Exh. 37 (Ltr. from Stern to Howarth dated May 21, 2004).
    [61]  Id., Exh. 38 (Ltr. from Howarth to Stern dated June 29, 2004).
27  [62]  Id., Exh. 41 (Ltr. from Goldberg to Albán dated Oct. 16, 2007)
28  [63]  Id., Exh. 53 ¶ 32 (Feb. 7, 2004 F. Larian Dec.).

                                                MOTION TO COMPEL LARIAN DOCUMENTS

1        As evidence reflects, Farhad Larian also claimed to possess "facts"

2   showing, among other things:

3        (a)    by late 1999, Isaac Larian had decided that MGA's challenge to Barbie

4               should be a fashion-type doll, and Isaac Larian conducted a fashion contest in

5               which he selected "Carter Bryant's doll line;"

6        (b)    in February 2000, Isaac Larian tried to keep Farhad Larian from

7               attending the New York Toy Fair, where information about new, upcoming

8               products was reviewed;

9        (c)    in the Spring of 2000, Isaac Larian took steps to personally profit from

10              Bratz, including going to the Board of Directors on April 11, 2000 to seek

11              (i) an increase in annual salary from $221,000 to $500,000; (ii) a bonus of

12              $750,000 for 1999; (iii) a bonus of $1.5 million for 2000 if EBITA for the

13              year reached $8 million; (iv) a separate bonus of 4% royalty on any new toy

14              idea Isaac Larian personally developed in MGA's 2001 line, which was an

15              "absolute first" for the company;

16       (d)    in or about July or August 2000, Isaac Larian called internal meetings

17              with top management at MGA to discuss Bratz and his plans for seizing the

18              opportunity presented;

19       (e)    roughly contemporaneously with these internal meetings, Isaac Larian

20              began negotiating with Bryant, which led to an agreement making MGA a

21              licensor of a product for the first time in its history (Isaac Larian later would

22              claim that Bratz was the company's "first intellectual property"), and making

23              Bratz MGA's most expensive purchase to date;

24       (f)    Isaac Larian began to develop Bratz in the Fall of 2000, including

25              ordering prototypes, marketing plans and filing additional trademarks; and

26

27

28

1    (g)    Isaac Larian engaged in regular financial modeling of for MGA and

2           that in those forecasts, revenue streams were projected for each item MGA

3           sold or was planning to sell.[64]

4           In his production, Farhad Larian does not appear to have included any,

5    or at least the vast majority, of the documents referenced above.  For example, he

6    did not produce a single document with the Bates Stamps "MZ" or "ED,"[65] though

7    he received thousands of such pages related to Mr. Dutcher's appraisals.  After

8    Farhad Larian substituted Howarth & Smith with new counsel, Farhad Larian took

9    all documents discovered in the litigation with him, and Howarth claims that it did

10   not retain copies.  Thus, even though Howarth produced documents responsive to

11   Mattel's subpoena, Mattel was unable to get the documents Farhad Larian received

12   in the course of his lawsuit against Isaac Larian.[66]  Farhad Larian should also have

13   transcripts and/or video recordings of the arbitration proceedings that occurred in

14   November 2005, and all evidence submitted in the arbitration proceedings.

<u>**Argument**</u>

15

16   **I.    FARHAD LARIAN HAS AN OBLIGATION TO PRODUCE**

17   **DOCUMENTS RESPONSIVE TO THE REQUESTS AT ISSUE.**

18           <u>Federal Rule of Civil Procedure</u> 45 obligates third parties to produce

19   documents responsive to a subpoena that a party serves on them.  <u>Fed. R. Civ. P.</u>

20   45(b), (d).  If the documents are relevant and there is good cause for their

21   production, the subpoena is enforced unless the documents are privileged or the

22   subpoena is unreasonable, oppressive, annoying, or embarrassing.  <u>U.S. v. American</u>

23   <u>Optical Co.</u>, 39 F.R.D. 580, 583 (N.D. Cal. 1966); <u>accord</u> <u>Heat and Control, Inc. v.</u>

24   <u>Hester Industries, Inc.</u>, 785 F.2d 1017, 1024 (Fed. Cir. 1986) ("the factors required

25   to be balanced by the trial court in determining the propriety of a subpoena are the

26

27   [64] <u>Id.</u>, Ex. 39 (Ltr. from Howarth to Kaye Scholer dated April 6, 2004).
     [65] <u>Id.</u> ¶ 23.
28   [66] <u>Id.</u> ¶ 38.

-13-

1  relevance of the discovery sought, the requesting party's need, and the potential

2  hardship to the party subject to the subpoena.").

3  **A.  The Documents Mattel Seeks Are Relevant And There Is Good**

4  **Cause For Their Production.**

5  **1.  The *Larian v. Larian* Disputes Are Relevant.**

6  As the Discovery Master already ruled, the Larian v. Larian

7  proceedings are relevant to this action.[67]  The conception and early development of

8  Bratz, and Isaac Larian's efforts to conceal as much, were at the heart of those

9  proceedings and of the present action.  The limited discovery Mattel has obtained

10  confirms the importance of those proceedings to this case and that Farhad Larian

11  likely possesses highly relevant documents.

12  For example, Farhad Larian obtained during discovery all documents in

13  Mr. Zarabi's possession responsive to his production requests, including those

14  related to the origins of Bratz and MGA's 2000 and 2001 financial statements.[68]

15  The limited information Mattel has about the appraisals conducted during Larian v.

16  Larian indicate that, in 2000, a "hot product" in development justified a five-fold

17  increase in the projected rate of growth for 2001 and that MGA took on a large,

18  relatively short-term loan about one hundred times greater than the prior four years

19  combined.[69]  There can be little doubt that this information is directly pertinent to

20  early Bratz and the timing of MGA's involvement with Bryant and with Bratz.

21  Farhad Larian and his counsel are well aware of the similarities

22  between the factual allegations in this action and Larian v. Larian.  But Farhad

23  Larian refuses to produce any documents for ten of Mattel's requests related to those

24

25

---

26  [67]  Id., Exh. 19 at 10-11.

27  [68]  Id., Exhs. 33, 37.

[69]  Id., Exhs. 7, Exh. C, p.20 therein; 8 at 18:14-19:12 (Tr. of Proceedings

28  Among Mr. Zarabi, Mr. Dutcher and an unidentified third man).

proceedings and/or to facts at issue both in those proceedings and in this litigation.[70] For example, he has declined to produce documents related to communications about Bratz between him and key witnesses with knowledge about the conception and early development of Bratz.[71] He also refused to produce any documents responsive to requests worded almost identically to Mattel's request to MGA which the Discovery Master already found were proper.[72] The Discovery Master should compel Farhad Larian to produce the documents responsive to these requests.

## 2. Documents About Farhad Larian's Relationship With MGA Are Relevant As To His Credibility.

Given Farhad Larian's long-standing role as shareholder of MGA and his subsequent Bratz-related disputes with Isaac Larian, he is also a crucial witness in this action. Farhad Larian refuses to produce any documents responsive to questions going to payments from Isaac Larian or MGA to him, including payments related to Bratz, and therefore his credibility and possible bias.[73] Evidence suggests Isaac Larian may have paid Farhad Larian – before and/or after Mattel filed this lawsuit – to settle Farhad Larian's claims regarding concealment of Bratz in 2000: Mr. Zarabi recommended as much to Isaac Larian in February 2003,[74] and in November 2005, Isaac Larian offered to pay Farhad Larian the difference for his interest in MGA based on a valuation through the year 2000.[75]

Information is relevant and discoverable if it relates to "the credibility of any witness." Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc., 175 F.R.D. 646, 650 (C.D. Cal. 1997). Evidence of bias is also relevant and discoverable. United States v. Abel, 469 U.S. 45, 50-51 (1984); see also Wright &

---

[70] Sep. Stmt., Request Nos. 1-4, 8, 9, and 16-19.
[71] Id., Request No. 8.
[72] Albán Dec., Exhs. 19 at 10-11; 22 at Request No. 41.
[73] Sep. Stmt., Request Nos. 23 and 24.
[74] Id., Exh. 53 ¶ 25 (F. Larian 2004 Dec.).
[75] Id., Exh. 14 at ¶ 7 (F. Larian Jan. 20, 2006 Dec.).

-15-

1 | Miller, Federal Practice & Procedure: Federal Rules of Evidence § 6095 (bias is a
2 | "particularly favored basis for attacking credibility," and "circumstantial evidence of
3 | bias" may include evidence of the "payment of bribes or fees").  The Discovery
4 | Master has already ruled that payments from MGA to Farhad Larian are relevant to
5 | this action and discoverable.[76]  Similarly, the Discovery Master has found to be
6 | discoverable documents related to MGA's transfers of money or other things of
7 | value to other witnesses in this action such as Carter Bryant because they go to his
8 | credibility or bias.[77]  If Farhad Larian has privacy concerns with respect to such
9 | documents, the Protective Order in this action expressly allows him to designate
10 | documents as "Confidential" or "Confidential – Attorney's Eyes Only."[78]  The
11 | Discovery Master has ruled more than once that the Protective Order adequately
12 | addresses privacy concerns, including with respect payments of money from MGA
13 | to witnesses.[79]

### 3.    Documents Relating To This Action Are Relevant.

Farhad Larian also refuses to produce documents related to this
action.[80]  The request is on its face relevant.  First, a witness's knowledge about
matters in this case is relevant.  Second, MGA and Isaac Larian put these requests at
issue by threatening to disqualify Quinn Emanuel from representing Mattel in this
action based on purported communications that Quinn Emanuel had with Farhad
Larian when he was adverse to Isaac Larian.[81]  These documents, along with the
documents Farhad Larian's counsel showed Quinn Emanuel at the time, are relevant
to not only this litigation, but to countering that baseless disqualification claim.

---

[76]  Id., Exh. 45 at 10-12 (Sep. 25, 2007 Order).
[77]  Id., Exh. 19 at 10.
[78]  Id., Exh. 42 at ¶ 3 (Jan. 4, 2005 Stip. and Protective Order).
[79]  Id., Exhs. 19 at 11, n.4 (May 15, 2007 Order); 44 at 13-15 (Jan. 25, 2007 Order).
[80]  Sep. Stmt., Request No. 25.
[81]  Albán Dec., Exh. 43 (Ltr. from Glaser to Quinn dated July 5, 2007).

07209/2311821.3

MOTION TO COMPEL LARIAN DOCUMENTS

### 4. <u>Information About The Location Of Responsive Documents Is Relevant.</u>

Finally, Mattel has a right to know the whereabouts of responsive documents, including if Farhad Larian destroyed them or for another reason no longer has them.  In this respect, Mattel seeks information about any instructions to destroy documents, including documents that at one point, if not now, were indisputably in existence and in Farhad Larian's possession.[82]  Mattel also seeks an image of Farhad Larian's computer hard drives for a crucial time period -- January 1, 1999 to December 31, 2002.[83]  The Discovery Master has previously ordered production of Bryant's hard drive images given the relevant information likely contained therein.[84]  Mattel also seeks identifying information about Farhad Larian's bank accounts, email accounts and telephone logs.[85]  Given Farhad's Larian highly selective production of documents to date, Mattel has a right to explore the locations of responsive documents.  Again, Farhad Larian can protect any alleged privacy interests in such information through the Protective Order.[86]  Indeed, further refuting any legitimate privacy or confidentiality concern, as described below, numerous documents sought by Mattel here were exchanged in the prior proceedings without any restriction of confidentiality whatsoever.

### B. <u>Mattel's Requests Are Not Unreasonable, Oppressive, Annoying or Embarrassing.</u>

"The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed."  <u>Goodman v. U.S.</u>, 369 F.2d 166, 169 (9th Cir. 1966); <u>Flatow v. The Islamic Republic of Iran</u>, 202 F.R.D. 35, 36 (D.D.C. 2001); <u>Northrop Corp. v. McDonnell Douglas Corp.</u>, 751 F.2d 395, 403

---

[82] Sep. Stmt., Request No. 39.
[83] <u>Id.</u>, Request No. 38.
[84] Albán Dec., Exh. 44 at 17, ¶ 4 (Jan. 25, 2007 Order).
[85] Sep. Stmt., Request No. 41.

MOTION TO COMPEL LARIAN DOCUMENTS

1  (D.C. Cir. 1984).  Here, Farhad Larian does no more than assert repetitive burden

2  objections irrespective of the substance of the document request.  For example,

3  Farhad Larian asserts "no time limit" objections to requests that expressly restrict

4  the time frame of the request.[87]  Mattel's requests specifically asking about the

5  Larian v. Larian proceedings are per se limited as to subject and time.  Moreover,

6  the critical time period relevant to Farhad Larian's allegations in the Larian v.

7  Larian proceedings – late 1999 and 2000 – is equally crucial in this action.

8          Mattel also offered to pay for Farhad Larian's copying costs,[88] further

9  belying any claim of burden.  Even if Mattel had not made such offer, a claim that

10  compliance with the request "would necessitate the examination of large quantities

11  of documents, requiring a great deal of time and expense . . . is not alone a sufficient

12  reason for refusing discovery which is otherwise appropriate..." American Optical

13  Co., 39 F.R.D. at 586-587 (documents sought covered a twelve year period).

14          Farhad Larian also purports to object to the subpoena as burdensome

15  because other parties possess the documents.[89]  However, "a person may not avoid a

16  subpoena by saying that the evidence sought from him is obtainable from another."

17  State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840, at *1

18  (E.D.N.Y. 2007) (quoting Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 998

19  (10th Cir. 1965)); see also In re Bergeson, 112 F.R.D. 692, 695 (D. Mont. 1986)

20  (conclusory assertions that documents sought are available from others more

21  economically "does not constitute a showing of unreasonableness or

22  oppressiveness.").  Furthermore, Farhad Larian's claim is neither substantiated nor

23  true.  Far from providing the information sought, MGA and Isaac Larian too are

24  obstructing discovery related to Larian v. Larian.  See Plant Genetic Systems,

25  N.V. v. Northrup King Co., Inc., 6 F. Supp. 2d 859, 861-862 (E.D. Mo. 1998) (third

---

26  [86]  Albán Dec., Exhs. 19 at 11, n.4; 44 at 13-15 (Jan. 25, 2007 Order)

27  [87]  E.g., Sep. Stmt., Request No. 3.

28  [88]  Albán Dec., Exh. 28.

1  party subpoena proper where information sought pertained to central issue in
2  underlying claim, it was not burdensome in light of plaintiff's diligent efforts to
3  obtain information from defendant, and nonparty signed protective order prohibiting
4  information from being seen by plaintiffs' counsel or nonparty's competitors).
5  MGA's and Isaac Larian's extraordinary efforts to thwart discovery related to the
6  Larian v. Larian proceedings leaves no doubt that Mattel is entitled to discovery
7  from the full array of those involved in those proceedings.  The discovery from
8  Farhad Larian and others is necessary to ensure that Mattel gets a complete
9  production of responsive documents.

10      **C.    The Protective Orders Farhad Larian Alludes To Are Inapplicable.**

11          In resisting production here, Farhad Larian cites two protective orders
12  as a purported basis for withholding documents for almost every one of Mattel's
13  requests.[90]  He apparently refers to a September 23, 2004 order in the 2003 lawsuit
14  against Isaac Larian, and a November 16, 2005 order in the 2005 court-ordered
15  arbitration.[91]  Both proceedings ended by November 2005.  In light of Farhad
16  Larian's ability to use the Protective Order in this action, there is no valid reason to
17  withhold documents in reliance on the prior protective orders.  In fact, Farhad
18  Larian agreed to modify the prior orders to allow production in this action.[92]  In any
19  event, the prior orders are inapplicable because Farhad Larian possessed the vast
20  majority of documents at issue before he agreed to enter into the protective orders.

21      **1.    Farhad Larian Possessed Most Of The Documents At Issue**
22          **Before Either Protective Order Went Into Effect.**

23          Mr. Zarabi produced documents to Farhad Larian on May 27, 2004,
24  and again on June 24, 2004, with no protective order in effect at the time of the

25  _____
    [89]  Id., Exh. 21 at ¶ 8(d).
26  [90]  Sep. Stmt., Request Nos. 1-8, 11, 12, 14-27, 29, 30, 32.
    [91]  Albán Dec., Exhs. 46 (Sep. 23, 2004), 47 (Nov. 16, 2005).
27
28

1 | production.[93]  Mr. Zarabi made no effort to produce the documents contingent upon
2 | a confidentiality agreement.  To the contrary, Mr. Zarabi produced thousands of
3 | pages of documents recognizing he waived privileges in doing so.[94]

4 | Isaac Larian also made no effort to preserve the confidentiality of the
5 | documents subject to the 2004 protective order until years after he gave them to
6 | Mr. Zarabi.  The year 2000 "arbitration agreements" between Isaac Larian and
7 | Farhad Larian make no effort to make relevant documents or proceedings
8 | confidential.[95]  Anything that Isaac Larian and/or MGA gave Mr. Zarabi between
9 | 2000 and 2002 was not subject to confidentiality.  It was not until July 7, 2004 –
10 | more than one month after Mr. Zarabi first produced documents to Farhad Larian
11 | and after Mattel filed this lawsuit – that Isaac Larian scrambled to claim that the
12 | documents were confidential.[96]  Even then, Farhad Larian did not agree with Isaac
13 | Larian that the documents already in his possession were confidential.[97]  When he
14 | did eventually sign a protective order on September 21, 2004, Farhad Larian made
15 | clear that his signature "is not intended as an agreement that any information
16 | contained in Exhibit A meets the standard under California law for such
17 | protection."[98]

18 | Because Farhad Larian already possessed responsive documents prior
19 | to the effectiveness of any protective order, and even then he did not agree to their
20 | confidentiality, Farhad Larian cannot now rely on a September 23, 2003 protective

---

[92]  Id. ¶¶ 53, 54, Exh. 72.  MGA and Isaac Larian have also to agreed "in principle," subject to as of yet unidentified logistical issues.  Id.

[93]  Id., Exh. 36; supra, Background § F.

[94]  Id., Exh. 48 (Ltr. from Stern to Howarth dated July 14, 2004).

[95]  Id., Exhs. 3, 6 at ¶¶ 8-9.

[96]  Id., Exh. 36.

[97]  Id.

[98]  Id., Exh. 46 at Exh. A.  Of course, anything Mr. Zarabi produced to Farhad Larian that is not listed in this Exhibit A is also not subject to that protective order. (footnote continued)

1 | order to justify withholding the documents.  See <u>McCarty v. Bankers Ins. Co., Inc.</u>,

2 | 195 F.R.D. 39, 44 (N.D. Fla. 1998) (party possessing documents prior to entering

3 | into a protective order cannot rely on the protective order to keep them confidential).

4 | Of course, this principle also applies to any documents Farhad Larian originally

5 | gave to Mr. Zarabi for the so-called arbitration proceedings between 2000 and 2003.

6 |       For the foregoing reasons, the Discovery Master should rule that the

7 | protective orders that Farhad Larian references are inapplicable as to (a) documents

8 | Farhad Larian himself possessed originally and gave to Mr. Zarabi between 2000

9 | and 2003, (b) documents Farhad Larian already possessed without a confidentiality

10 | obligation prior to entering into any protective order, and (c) documents that are not

11 | listed as protected in the September 23, 2003 Protective Order.[99]

12 |       **2.**    **<u>The Protective Order Here Addresses Any Confidentiality</u>**

13 |       **<u>Concerns Expressed In The Prior Protective Orders.</u>**

14 |       To the extent Farhad Larian has legitimate confidentiality or privacy

15 | concerns, the Protective Order in this action allows third parties to use it and

16 | adequately protects Farhad Larian's concerns.  Indeed, the <u>Larian v. Larian</u> 2003

17 | protective order states as its purpose the protection of documents that "contain

18 |

19 |

20 | For example, documents bates stamped MZ1-942 are not covered by the protective order, but Farhad Larian has not produced them. <u>Id.</u> ¶ 23.

21 | [99]  The only documents to which this does not potentially apply are those that

22 | came into Farhad Larian's possession for the first time during the arbitration

23 | proceedings in November 15-16, 2005 and which are supposedly covered by the November 2005 protective order.  The quantity of such documents at issue here

24 | should be minimal, if any, because the arbitrator denied Farhad Larian the right seek

25 | any discovery. <u>Id.</u>, Exh. 49 at 2 (Ltr. from Arbitrator to Parties dated Nov. 1, 2005). Of course, any evidence Farhad Larian submitted during the proceedings themselves

26 | would be something he already possessed and controlled prior to the November 16,

27 | 2005 protective order, so he cannot withhold those documents.  Furthermore, as addressed in the next section, the confidentiality of any other documents can be

28 | preserved through the Protective Order in this action.

MOTION TO COMPEL LARIAN DOCUMENTS

confidential financial, commercial, personal or proprietary information."[100] Similarly, the arbitration protective order seeks to protect confidential documents "related to MGA's business."[101] MGA actually proposed the protective order that the arbitrator eventually signed, and MGA represented that its sole reason for doing so was to protect MGA's confidential, commercially sensitive information.[102]

As discussed above, the Discovery Master has already ruled that the Protective Order in this action adequately protects MGA's proprietary, trade secret and commercially sensitive information. The Discovery Master should order Farhad Larian to produce all responsive documents, including from the 2005 arbitration, with the option of designating documents under the Protective Order. Indeed, where provisions of a protective order prevent dissemination of confidential information to competitors, and where the information sought is relevant to the issues, courts routinely dismiss objections to subpoenas duces tecum where confidentiality is otherwise protected. See, e.g., Heat and Control, Inc., 785 F.2d at 1025 ("the selective disclosure of protectable trade secrets is not per se 'unreasonable and oppressive' when appropriate protective measures are imposed."); Menzies v. FTC, 242 F.2d 81, 84 (4th Cir.), cert. denied, 353 U.S. 957 (1957); Graber Mfg. Co. v. Dixon, 223 F. Supp. 1020 (D.D.C. 1963); Hunter v. International Systems & Controls Corp., 51 F.R.D. 251, 255 (W.D. Mo. 1970).

Even if the Discovery Master finds that the prior protective orders prevent Farhad Larian from producing certain documents to Mattel, Farhad Larian recently agreed to modify the prior protective orders, as did Isaac Larian and MGA.[103] This obviates any objection based on the protective orders as well.

---

[100] Id., Exh. 46 at p.1, ¶ A.
[101] Id., Exh. 47 at ¶¶ 2, 4.5.
[102] Id., Exh. 50 at 4-9 (MGA's Mot. for Protective Order dated Nov. 14, 2005).
[103] Id., Exhs. 73, 74. The September 23, 2003 protective order allows Isaac Larian and Farhad Larian to request the court therein to modify that order. Id., (footnote continued)

## II.   FARHAD LARIAN'S PRIVILEGE OBJECTIONS HAVE NO MERIT.

Farhad Larian asserts attorney-client, work product, "arbitral immunity" and "settlement negotiations" privileges. During a conference of counsel, Farhad Larian's counsel represented that he was not withholding any documents based on "arbitral immunity,"[104] so Mattel does not address the meritless assertion of that privilege here. Because this case is in federal court based on questions of federal law, federal common law of privilege applies. Fed. R. Evid. 501; U.S. v. Zolin, 491 U.S. 554, 562 (1989); Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1492 (9th Cir. 1989).

### A.   Farhad Larian Has Not Produced A Privilege Log Sufficient To Justify His Claims of Privilege.

Farhad Larian produced a privilege log[105] that does not comport with the requirements of Federal Rule of Civil Procedure 45(d)(2): "When information subject to a subpoena is withheld on a claim that it is privileged . . ., the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." The "universally accepted" means of claiming that requested documents are privileged is the production of a document-by-document privilege log. Gail v. New England Gas Co., Inc., 243 F.R.D. 28, 33 (D. R.I. 2007) (discussing requirement in the context of Rule 45); Martinez v. City of Fresno, 2006 WL 3762050, at *6 (E.D. Cal. 2006) (over-generalized descriptions that fail to adequately identify specific documents are insufficient in a privilege log).

While some federal cases have allowed something less than a document-by-document privilege log where such a log truly would be "unduly

---

Exh. 46 at ¶ 3. The November 16, 2005 protective order allows Isaac Larian, Farhad Larian and MGA to agree in writing to modify that order. Id., Exh. 47 at ¶ 3.

[104] Id. ¶ 24.

[105] Id., Exh. 52.

1  burdensome and inappropriate," even those cases required, at a minimum, a date

2  range of withheld documents, an aggregate number of withheld documents, and an

3  attorney affidavit confirming that only attorney client communications and attorney

4  work product were withheld. See, e.g., In re Imperial Corp. Of America, 174 F.R.D.

5  475, 479 (S.D. Cal. 1997). At least two similar cases have also required an

6  identification of each person who authored or received the documents. Caliper

7  Technologies Corp. v. Molecular Devices Corp., 213 F.R.D. 555, 563 (N.D. Cal.

8  2003); S.E.C. v. Thrasher, 1996 WL 125661, at *2 (S.D.N.Y. 1996).

9  　　　　　Here, Farhad Larian represented that he may have only about one

10  banker's box of privileged documents.[106] That volume is insufficient to meet the

11  "unduly burdensome" standard to exculpate a document-by-document privilege log.

12  See, e.g., In Re Imperial, 174 F.R.D. at 478 (hundreds of thousands, if not millions,

13  of documents potentially privileged); S.E.C. v. Thrasher, 1996 WL at *1 (request

14  asked for primarily work-product documents, which were "extremely voluminous").

15  Furthermore, Farhad Larian's privilege log provides date ranges for some but not all

16  categories of withheld documents, does not provide complete lists of authors and

17  recipients (and in some cases does not provide *any*), and includes no attorney

18  affidavit.[107] So, even if (contrary to fact) it would be unduly burdensome for Farhad

19  Larian to log on a document-by-document basis, he has failed to comply with any of

20  the safeguards recognized in the case law.

21  　　　　　Farhad Larian bears the burden of proving that each withheld document

22  is privileged, and waives privilege if he fails to give Mattel sufficient information to

23  challenge his claims. In Re Imperial, 174 F.R.D. at 477. He has not done so. The

24  Discovery Master should compel him to produce all withheld documents or at least

25  fully and completely identify each document on a proper privilege log.

26

27  　[106]  Id. ¶ 24.

28  　[107]  Id.

-24-

**B.     Farhad Larian's Privilege Log Does Reveal That Some Withheld Documents Are Likely Not Privileged.**

The descriptions that Farhad Larian's log does provide indicate that he is withholding non-privileged documents. These include each of the following:[108]

1.     "Various e-mails between MGA and its counsel, or e-mails between MGA e-mails at the instruction of counsel regarding trademark and copyright registrations for Bratz." (Third Category). That Farhad Larian possesses such e-mails from 2001 – a time when he had already sold his ownership interest in MGA to Isaac Larian – strongly indicates in and of itself that the e-mails are not and could not be privileged. The category also suggests Farhad Larian is withholding documents for which an attorney is neither an author nor a recipient.

2.     "Draft declaration of Victoria O' Connor" with an unknown author (Eleventh Category). There is no indication how this document is privileged.

3.     "Chart summarizing Morad's alleged corruption, conflicts of interest, biases, concealments and misconduct, and applicable evidence" (twelfth row). Again, there is no indication of why the chart is privileged, particularly given that the author is "unknown."

4.     Thirteenth, Fourteenth and Fifteenth Categories. For the reasons set forth above, Farhad Larian also cannot withhold documents based on prior protective orders where he already possessed the documents before entering into the protective order. Even if he could, he provides no indication that the prior protective orders encompass these documents, for example by providing bates numbers designated in the Larian v. Larian civil lawsuit.

**C.     There Is No "Settlement Communications" Privilege.**

Finally, Farhad Larian purports to rely on a non-existent "settlement communications" privilege to withhold documents from Mattel.[109] There is no

---

[108]   See id., Exh. 52.

MOTION TO COMPEL LARIAN DOCUMENTS

1 "settlement communications privilege" under federal law. E.g., Matsushita Electric

2 Industrial Co., Ltd. v. Mediatek, Inc., 2007 WL 963975, at *2-3 (N.D. Cal. 2007).

3 While Federal Rule of Evidence 408 places some restrictions on the **admissibility** of

4 settlement communications at trial, on its face it is not a discovery rule. Id. at *3.

5 Furthermore, such communications may bear directly on matters such as payments

6 or other remuneration made to Farhad Larian by Isaac Larian -- a matter that the

7 Discovery Master has already held are relevant to matters of bias. For this reason,

8 Rule 408 does not even apply here to limit admissibility, let alone discoverability.

9 As Rule 408 states on its face: "This rule does not require exclusion if the evidence

10 is offered for purposes not prohibited by subdivision (a). **Examples of permissible**

11 **purposes include proving a witness's bias or prejudice**; negating a contention of

12 undue delay; and proving an effort to obstruct a criminal investigation or

13 prosecution." (Emphasis added.) Farhad Larian cannot withhold from Mattel any

14 documents on the grounds that they are alleged settlement communications.

### Conclusion

16 　　　　For the foregoing reasons, Mattel respectfully requests that the

17 Discovery Master compel Farhad Larian to produce documents responsive to every

18 request in Mattel's subpoena; overrule each of Mr. Larian's objections; and order

19 Mr. Larian to produce documents withheld on privilege grounds or, in the

20 alternative, serve a document-by-document privilege log.

22 DATED:  December 6, 2007　　　　QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

24 　　　　　　　　　　　　　　　By _____

25 　　　　　　　　　　　　　　　　Jóhn D. Corey
　　　　　　　　　　　　　　　　Attorney for Mattel, Inc.

---

[109] Sep. Stmt. Request Nos. 1, 2, 3, 4, 16, 23 and 24.