1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx)

13 |          Plaintiff,           | Consolidated with Case Nos. CV 04-09059 and CV 05-02727

14 |     vs.                       | **DISCOVERY MATTER**

15 | MATTEL, INC., a Delaware       | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**
   | corporation,

16 |                               | MATTEL, INC.'S NOTICE OF MOTION
   |          Defendant.           | AND MOTION TO COMPEL STERN &
17 |                               | GOLDBERG TO PRODUCE
   |                               | DOCUMENTS; AND
18 | AND CONSOLIDATED ACTIONS       |

19 |                               | MEMORANDUM OF POINTS AND AUTHORITIES

20 |                               | [Declaration of Juan Pablo Albán filed
21 |                               | concurrently herewith]

22 |                               | Hearing Date:    January 4, 2008
   |                               | Time:            9:30 a.m.
23 |                               | Place:           TBA

24 |                               | **Phase 1**
   |                               | Discovery Cut-Off:    January 28, 2008
25 |                               | Pre-Trial Conference: May 5, 2008
   |                               | Trial Date:           May 27, 2008
26

27

28

MATTEL, INC.'S MOTION TO COMPEL STERN & GOLDBERG

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |        PLEASE TAKE NOTICE that at a hearing before Discovery Master

3 | Hon. Edward Infante (Ret.) that will occur on January 4, 2008 at 9:30 a.m. at a place

4 | to be determined by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will, and hereby

5 | does, move the Court for an order compelling Stern & Goldberg to produce

6 | documents responsive to Mattel's Subpoena dated August 31, 2007, including

7 | Request Nos. 1-24, 27, 29, 33 and 34.

8 |        This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 37

9 | and 45 on the grounds that Mattel's Requests seek relevant information and there is

10 | good cause of its production and that the Discovery Master has already ruled that the

11 | information sought by Mattel here is relevant and discoverable.  The Discovery

12 | Master has jurisdiction to hear this motion pursuant to sections 5 and 15 of the

13 | Stipulation and Order for Appointment of a Discovery Master.

14 |        This Motion is based on this Notice of Motion and Motion, the

15 | accompanying Memorandum of Points and Authorities, the Declaration of Juan

16 | Pablo Albán filed concurrently, the records and files of this Court, and all other

17 | matters of which the Court may take judicial notice.

18 | **<u>Certificate Of Compliance With Local Rule 37-1</u>**

19 |        Mattel, Inc. and Stern & Goldberg met and conferred regarding Mattel's

20 | document requests and Stern's objections thereto on October 11, 2007, and were

21 | unable to reach agreement on the any of the Requests set forth above.

22 |

23 | DATED:  December 6, 2007      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

24 |

25 |               By _/s/ Jon Corey/jpa_

26 |                  Jon D. Corey

27 |                  Attorneys for Mattel, Inc.

28 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................. 3

    A.    Morad Zarbi's Role In The *Larian v. Larian* Proceedings. .................... 3

    B.    Stern Asserted Virtually Identical Objections to Every One of
           Mattel's Requests And Refused to Produce A Single Document. ......... 4

    C.    Mattel's Other Discovery Efforts. ............................................................ 6

    D.    Stern Admittedly Possesses Responsive Documents. ............................. 7

ARGUMENT ....................................................................................................... 9

I.    STERN HAS AN OBLIGATION TO PRODUCE ALL DOCUMENTS
      RESPONSIVE TO MATTEL'S SUBPOENA. ............................................ 9

    A.    The Documents Mattel Seeks Are Relevant And There Is Good
           Cause For Their Production. ...................................................................... 9

           1.    The *Larian v. Larian* Disputes Are Relevant. .............................. 9

           2.    Mattel's and MGA's Allegations Are Relevant. ........................... 10

           3.    Documents About Farhad Larian's Relationship With
               MGA Are Relevant As To His Credibility. .................................. 11

           4.    Farhad Larian's Communications With Mattel Are
               Relevant. ....................................................................................... 12

           5.    The Location Of Responsive Documents Is Relevant. ............... 12

    B.    Mattel's Requests Are Not Unreasonable, Oppressive, Annoying
           or Embarrassing. ...................................................................................... 13

II.    STERN'S PRIVILEGE OBJECTIONS HAVE NO MERIT .......................... 15

    A.    Mr. Zarabi and Stern Have No "Arbitral Immunity or Privilege." ....... 16

           1.    Any "Arbitral Privilege" Morad Zarabi May Have Had At
               One Time Has No Application Here. ........................................... 16

           2.    Even If An Arbitral Privilege Applied Here, Mr. Zarabi
               Waived It At Least As Early As May 2004. ................................ 20

    B.    The Discovery Master Should Compel Stern To Produce A
            Privilege Log For Attorney Client and Work Product Claims ............. 22

1

CONCLUSION...................................................................................................... 23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL STERN & GOLDBERG TO PRODUCE DOCUMENTS

# TABLE OF AUTHORITIES

**Page**

## Cases

*Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona,*
  881 F.2d 1486 (9th Cir. 1989) ........................................................... 15

*Matter of Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.),*
  579 F.2d 691 (2nd Cir. 1978) ....................................................... 16, 17

*In re Bergeson,*
  112 F.R.D. 692 (D. Mont. 1986) ...................................................... 14

*Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.,*
  175 F.R.D. 646 (C.D. Cal. 1997) ...................................................... 11

*Cf. Rojas v. Superior Court,*
  33 Cal. 4th 407 (2004) ...................................................................... 19

*Corsini v. Prudential Securities, Inc.,*
  1995 WL. 663174 (S.D. Cal. 1995) ................................................ 18

*Covey Oil Co. v. Continental Oil Co.,*
  340 F.2d 993 (10th Cir. 1965) .......................................................... 14

*Empresa Constructora Contex Limitada v. Iseki, Inc.,*
  106 F. Supp. 2d 1020 (S.D. Cal. 2000) .......................................... 18

*Flatow v. The Islamic Republic of Iran,*
  202 F.R.D. 35 (D.D.C. 2001) ............................................................ 13

*Frere v. Orthofix, Inc.,*
  2000 WL. 1789641 (S.D.N.Y. 2000) ............................................ 17

*Gail v. New England Gas Co., Inc.,*
  243 FORD. 28, 33 (D. R.I. 2007) ..................................................... 23

*Garrett v. City and County of San Francisco,*
  818 F.2d 1515 (9th Cir. 1987) .......................................................... 16

*Goodman v. U.S.,*
  369 F.2d 166 (9th Cir. 1966) ............................................................ 13

*Hartford Fire Ins. Co. v. Garvey,*
  109 F.R.D. 323 (N.D. Cal. 1985) .................................................... 20

*Heat and Control, Inc. v. Hester Industries, Inc.,*
  785 F.2d 1017 (Fed. Cir. 1986) ......................................................... 9

*Hunt v. Mobil Oil Corp.,*
  654 F. Supp. 1487 (S.D.N.Y. 1987) ................................................ 19

07209/2304244.6

*In re Imperial Corp. Of America,*
174 FORD. 475, 477 (S.D. Cal. 1997).................................................................. 23

*Larian v. Larian,*
123 Cal. App. 4th 751 (2004).......................................................................... passim

*Lyeth v. Chrysler Corp.,*
929 F.2d 891 (2nd Cir. 1991) (emphases added) ................................................. 17

*Marshall v. U.S. Postal Service,*
88 F.R.D. 348 (D.D.C. 1980) .............................................................................. 20

*Martinez v. City of Fresno,*
2006 WL. 3762050 (END. Cal. 2006) ................................................................. 23

*Memorial Hosp. for McHenry County v. Shadur,*
664 F.2d 1058 (7th Cir. 1981)............................................................................. 16

*National Hockey League Players' Ass'n v. Bettman,*
1994 WL. 38130 (S.D.N.Y. 1994) ................................................................. 17, 19

*Northrop Corp. v. McDonnell Douglas Corp.,*
751 F.2d 395 (D.C. Cir. 1984) ............................................................................ 13

*O.R. Securities, Inc. v. Professional Planning Associates, Inc.,*
857 F.2d 742 (11th Cir. 1988)........................................................................ 18, 19

*Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,*
6 F. Supp. 2d 859 (E.D. Mo. 1998)................................................................. 14, 15

*Portland General Elec. Co. v. U.S. Bank Trust Nat. Ass'n,*
38 F. Supp. 2d 1202 (D. Or. 1999)...................................................................... 18

*State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.,*
2007 WL. 2993840 (E.D.N.Y. 2007).................................................................. 14

*Thomas Kinkade Co. v. Hazlewood,*
2007 WL. 217384 (N.D. Cal. 2007)..................................................................... 18

*U.S. v. American Optical Co.,*
39 F.R.D. 580 (N.D. Cal. 1966) ........................................................................ 9, 14

*U.S. v. Zolin,*
491 U.S. 554 (1989) ............................................................................................ 15

*United States v. Abel,*
469 U.S. 45 (1984) .............................................................................................. 11

*University of Pennsylvania v. E.E.O.C.,*
110 S. Ct. 577, 493 U.S. 182, 107 L. Ed. 2d 57 (1990) ...................................... 16

*Woods v. Saturn Distribution Corp.,*
78 F.3d 424 (9th Cir. 1996)............................................................................ 17, 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Statutes**

Cal Code Civ. P. § 1985.6 ........................................................................................ 15

Fed. R. Civ. P. 45............................................................................ 1, 6, 9, 21, 22, 23

Fed. R. Civ. P. 45(b) ................................................................................................. 9

Rule 45(d)(2) ................................................................................................... 22, 23

Fed. R. Evid. § 501 .................................................................................................. 15

## **Miscellaneous**

California Evidence Code section 703.5 ................................................................ 5, 17

Local Rule 37-1 .......................................................................................................... 5

**Preliminary Statement**

Mattel seeks discoverable, highly relevant information from Stern & Goldberg ("Stern") that it refuses to produce. Farhad Larian was a co-founder of MGA and is a former MGA executive and shareholder. In December 2000, Farhad Larian sold his forty-five percent interest in defendant MGA Entertainment, Inc. to his brother, defendant Isaac Larian. Their uncle Morad Zarabi determined the purchase price of Farhad Larian's interest. Stern & Goldberg ("Stern") represented Mr. Zarabi and drafted the relevant sale documents. Farhad Larian alleged that, in the Summer of 2002, he discovered that Isaac Larian had fraudulently induced him into selling the stock. Specifically, Farhad Larian alleged that in late 1999 or early 2000, Isaac Larian chose "Bratz" as a fashion doll that could compete with Barbie, Larian developed and planned the release of Bratz throughout 2000, and Larian concealed Bratz from Farhad Larian in order pay Farhad Larian an artificially low price for his stock. Unable to resolve his complaints through Mr. Zarabi, Farhad Larian sued Isaac Larian and, eventually, Mr. Zarabi as well. Stern continued to represent Mr. Zarabi at least into the Summer of 2004.

Facts and evidence from Farhad Larian's disputes with Isaac Larian are unquestionably relevant to this suit. Farhad Larian's allegations about Bratz's design and development in late 1999 and throughout 2000—during which times Carter Bryant was employed by Mattel—overlap with central issues in this action. Indeed, in a prior Order, the Discovery Master so found that information from the Larian v. Larian disputes was relevant and discoverable.

Mattel has searched public filings in the Larian v. Larian proceedings for relevant documents. Mattel has also sought documents from MGA, Isaac Larian and other third parties involved in the Larian v. Larian proceedings. A few third parties have complied with their obligations under Federal Rule of Civil Procedure 45 and produced relevant documents. Stern has not and refuses to produce key documents in response to Mattel's Requests. Nor have been produced by MGA

1   despite a prior Court Order compelling MGA to do so, or by Isaac Larian.  Indeed,

2   flouting the Discovery Master's Order of May 15, 2007, MGA has produced just

3   *four* documents related to the <u>Larian v. Larian</u> proceedings.  For his part, Isaac

4   Larian has not produced a single responsive document on that—or any other—

5   subject in this litigation.

6           Furthermore, the facts and evidence relating to Farhad Larian's disputes

7   are centrally relevant to damages issues in this case.  For example, Mattel has been

8   unable to obtain—and knows Stern posseses—"raw data" on which Ernest Dutcher,

9   Mr. Zarabi's appraiser, based an appraisal of MGA "through December 2000."  That

10   appraisal accounted for unidentified "hot products" that justified a twenty-five

11   percent (25%) revenue growth projection for 2001.  The "raw data" Stern possesses

12   likely includes financial models with 2000 forecasts of revenue streams for each

13   item MGA sold or was planning to sell—models Farhad Larian represented Isaac

14   Larian created "regularly."  Stern may be the only third party with some of these key

15   documents because Mr. Zarabi resisted producing documents to Farhad Larian for

16   the appraisal that accounted for the year 2000.  Not only does such information bear

17   on the timing of Bratz's creation and development and when Bryant introduced

18   Bratz to MGA, but the appraisals relating to the value of MGA are directly relevant

19   to issues such as MGA's revenues from Bratz and MGA's net worth, which the

20   District Court and the Discovery Master both have held is relevant to punitive

21   damages.  Stern also likely possesses, but refuses to produce, Mr. Zarabi's

22   observations in responding to Farhad Larian's allegations about the concealment and

23   development of Bratz in 2000.  Stern  bases this withholding on an "arbitral

24   privilege" that does not apply to this case.  Even if it did apply, Mr. Zarabi long-ago

25   waived it by producing thousands of pages of purportedly privileged documents to

26   Isaac and Farhad Larian—the very people who the privilege is intended to block

27   from receiving Mr. Zarabi's documents.

28

1  The Discovery Master should grant Mattel's motion and compel Stern

2  its responsive documents without further delay.

3  **Background**

4  Mattel has set forth the Background of the <u>Larian v. Larian</u> proceedings

5  and the Discovery Master's prior rulings on the relevance of these proceedings in its

6  motion to compel Farhad Larian to produce documents, dated December 6, 2007.

7  To avoid unnecessary redundancy, Mattel respectfully directs the Discovery

8  Master's attention to that motion for additional background, which Mattel hereby

9  incorporates by reference.  Background relating to Stern more specifically is set

10  forth below.

11  **A.    Morad Zarbi's Role In The _Larian v. Larian_ Proceedings.**

12  Mr. Zarabi responded to Farhad Larian's Summer of 2002 allegations

13  regarding the timing of the conception and development of Bratz.  However, once

14  the California Court of Appeals compelled arbitration of the allegations, Mr. Zarabi

15  declined to arbitrate the dispute after Farhad Larian's attorneys requested that Mr.

16  Zarabi disqualify himself.[1]  Mr. Zarabi did not reach any conclusions before

17  removing himself, despite Isaac Larian's attempt to have Mr. Zarabi sign an

18  arbitration award in his favor, which Isaac Larian's attorneys prepared.[2]  To the

19  contrary, Mr. Zarabi may have suggested to Isaac Larian that he compensate Farhad

20  Larian to settle the allegations regarding Bratz.[3]  On February 28, 2005, Farhad

21  Larian also brought suit against Mr. Zarabi alleging the same facts regarding the

22  origins and concealment of Bratz, adding Mr. Zarabi as a conspirator.[4]

23

24  [1] <u>Id.</u>, Exhs. 11 (Ltr. from Zarabi to I. Larian, F. Larian, dated Feb. 8, 2005); 54

25  (Ltr. from Kremer to Zarabi dated Nov. 10, 2004).

26  [2] Exhs. 67 (Ltr. from Klevens to Stern dated Sept. 25, 2003); 68 (Ltr. from Stern to Klevens dated Sept. 25, 2003)

27  [3] <u>Id.</u>, Exh. 53 at ¶ 25 (Feb. 7, 2004 F. Larian Dec.).

[4] <u>Id.</u>, Exh. 16 (<u>Larian v. Zarabi</u> et al. Complaint).

28

1    Before withdrawing himself as an arbitrator, Mr. Zarabi produced

2  thousands of pages of documents to Isaac and Farhad Larian, including "raw data"

3  (e.g., MGA financial statements for 2000 and 2001) that Mr. Dutcher used to value

4  MGA and Mr. Zarabi's "confidential reconciliations."[5]  Mr. Zarabi continued to

5  withhold some—but not all—documents from his "2003 proceedings."[6]  The 2003

6  proceedings refer to Mr. Zarabi's response to Farhad Larian's Bratz allegations,

7  including supervising the appraisal of MGA valuing the company "as of December

8  31, 2000."[7]

9    **B.    Stern Asserted Virtually Identical Objections to Every One of**

10    **Mattel's Requests And Refused to Produce A Single Document.**

11    Mattel subpoenaed Stern to produce documents on September 6, 2007.[8]

12  The majority of Mattel's requests seek documents related to the Larian v. Larian

13  disputes and/or issues in common between this action and those disputes.[9]  Other

14  requests seek documents related to non-Bratz trade secret allegations by Mattel and

15  MGA,[10] Farhad Larian's relationship to MGA,[11] documents related to Farhad

16  Larian's involvement in this action,[12] and information about the location of

17  responsive documents.[13]

18

19    [5]  See, e.g. Exhs. 34, 37, 48, 69 (Ltrs. indicating production).

20    [6]  Id., Exh. 34 (Ltr. from Stern to Howarth dated June 24, 2004).

21    [7]  Id., Exh. 5 ¶¶ 6-8 (Sept. 14, 2004 Zarabi Dec.).
     [8]  Id., Exh. 55 (Subpoena to Stern).

22    [9]  Id., Request Nos. 1-12, 15-22.

23    [10]  Id., Request Nos. 13, 14, 29-32. Stern represents that it does not have
     documents responsive to Request Nos. 30, 31 and 32. Id., Exh. 56.

24    [11]  Id., Exh. 55 at Request Nos. 23, 24

25    [12]  Id., Request Nos. 25-28. Stern represents that it does not have documents
     responsive to Request Nos. 26 and 28. Id., Exh. 56.

26    [13]  Id., Exh. 55 at Request Nos. 33-35. Stern represents that it does not have

27  documents responsive to Request No. 34 "based on [its] understanding" of the
     request, nor to Request No. 35. Id., Exh. 56.

28

1    Stern served objections on September 17, 2007 and did not agree to

2    produce a single document.[14]   Mattel sent Stern at least three requests to meet and

3    confer, as well as the Discovery Master Stipulation and the Discovery Master's May

4    15, 2007 Order requiring production of Larian v. Larian documents from MGA.[15]

5    Stern refused to meet and confer until Mattel sent a letter with a request-by-request

6    analysis well beyond what the Discovery Master Stipulation and Local Rule 37-1

7    require.[16]   Mattel did send such letter in an effort to compromise.[17]

8    The parties conducted a conference of counsel on October 11, 2007.[18]

9    Stern admitted that it had responsive documents in its possession, but did not agree

10   to produce them, relying primarily on (i) the attorney client and work product

11   privileges, (ii) a so-called "arbitral privilege," and (iii) the presupposition that Mattel

12   could obtain everything it sought from MGA, Isaac Larian or Farhad Larian.[19]   Stern

13   cited to California Evidence Code section 703.5 as a basis for its arbitral privilege

14   claims.[20]   Mattel provided authority to Stern indicating that no "arbitral privilege"

15   applied to this case, but Stern still refused to produce anything.[21]

16   Stern also asked MGA, Isaac Larian and Farhad Larian to produce the

17   documents Mattel sought so that Stern would not have to.[22]   To Mattel's knowledge,

18   Isaac Larian, MGA and Farhad Larian did not respond to Stern's letter.[23]   Stern still

19

20

21   [14]   Id., Exh. 56 (Stern's Objs. to Subpoena dated Sep. 17, 2007).
     [15]   Id., Exhs. 57, 59, 61 (Ltrs. from Albán to Goldberg).
22   [16]   Id., Exhs. 58, 60 (Ltrs. from Goldberg to Stern).
     [17]   Id., Exh. 61 (Ltr. from Albán to Goldberg dated Oct. 10, 2007).
23   [18]   Id. ¶ 71, Exh. 64 (Ltr. from Albán to Goldberg dated Oct. 25, 2007).
     [19]   Id.
24   [20]   Id.
     [21]   Id., Exhs. 64 (Ltr. from Albán to Goldberg dated Oct. 25, 2007), 65 (Ltr.
25
26   from Goldberg to Albán dated Oct. 31, 2007).
     [22]   Id., Exh. 62 (Ltr. from Goldberg to Lever dated Oct. 12, 2007).
27   [23]   Id. ¶ 69.

28

1 insisted that it had no production obligations,[24] even though Mattel offered to pay
2 for all of Stern's copying costs if it agreed to any production.[25]

3     **C.**    **Mattel's Other Discovery Efforts.**

4              Mattel has attempted since March 14, 2005 to obtain documents related
5 to the <u>Larian v. Larian</u> proceedings directly from MGA.[26]  The efforts have been
6 futile, and as far as Mattel can ascertain, even the Discovery Master's Order of May
7 15, 2007 resulted in MGA producing just four documents related to the
8 proceedings.[27]  Mattel also requested that Isaac Larian produce <u>Larian v. Larian</u>
9 documents.[28]  To date, Isaac Larian has not produced a single responsive document
10 on that or any other subject.[29]  Mattel also searched public filings in <u>Larian v. Larian</u>
11 and <u>Larian v. Zarabi et al.</u> civil lawsuits.[30]  Finally, Mattel served subpoenas on third
12 parties involved in the <u>Larian v. Larian</u> proceedings pursuant to <u>Federal Rule of</u>
13 <u>Civil Procedure</u> 45.  In addition to Stern, Mattel served subpoenas on Farhad Larian,
14 Mr. Zarabi and on the other attorneys Mattel identified as involved in those
15 proceedings.[31]  Some third parties Mattel subpoenaed have produced responsive
16 documents.[32]  These parties, however, claimed that they did not have in their
17 possession the majority of responsive documents Mattel has learned Stern has in its
18 possession, as described in more detail below.

19
20
21
22    [24]   <u>Id.</u>, Exh. 65 (Ltr. from Goldberg to Lever dated Oct. 31, 2007).
23    [25]   <u>Id.</u>, Exhs. 59 (Ltr. from Albán to Goldberg dated Oct. 3, 2007).
       [26]   <u>Id.</u>, Exh. 22, Request No. 41 (Mattel's First Set of RFPs to MGA).
24    [27]   <u>Id.</u> ¶ 35.
25    [28]   <u>Id.</u>, Exh. 32, Request Nos. 123-125 (RFPs to I. Larian dated June 13, 2007).
       [29]   <u>Id.</u> ¶ 36.
26    [30]   <u>Id.</u> ¶ 38.
27    [31]   <u>Id.</u> ¶ 39.
       [32]   <u>Id.</u>
28

1    **D.    Stern Admittedly Possesses Responsive Documents.**

2    From Mattel's searches of public filings, third party productions, and

3    Stern's own admissions, Mattel knows that Stern possesses documents highly

4    relevant to this action.  For example:

5    •    From a Protective Order to which Mr. Zarabi is not a party, among other

6    things, Mattel knows that Mr. Zarabi and Mr. Dutcher produced at least 2,590 pages

7    of documents in May and June 2004 in response to Farhad Larian's allegations

8    regarding the conception and concealment of Bratz.[33]

9    •    Mr. Zarabi limited his production only in refusing to produce "2003

10   communications and documentation."  Mr. Zarabi would not produce those in 2004

11   because the documents related to Mr. Zarabi's "ongoing arbitration proceedings."[34]

12   This is a reference to the appraisal efforts in 2003 that valued MGA as of December

13   31, 2000, which was part of Mr. Zarabi's response to Farhad Larian's allegations

14   regarding the conception and concealment of Bratz.[35]

15   •    Stern confirmed in detail what it produced to both Farhad and Isaac Larian.

16   This list includes numerous items Mattel has been unable to obtain through public

17   filings or other parties, including:

18       (a)    Letters from Morad's attorneys to National Business Appraisers;

19       (b)    Four files of Morad's "confidential reconciliations;"

20       (c)    Resignation of Fred Larian as Officer and Director of MGA;

21       (d)    Packet entitled "MGA Entertainment Confidential."

22       (e)    MGA Entertainment Financial Statement for Years 2001 and 2000;

23       (f)    ABC International Bad Debts from 1997-2000;

24       (g)    Certificate of Amendment of Articles of Incorporation of ABC;

25

26   [33]   Id., Exh. 46 (Prot. Ord. in Larian v. Larian dated Sep. 23, 2004).

27   [34]   Id., Exh. 34 (Ltr. from Stern to Howarth dated June 24, 2004).
     [35]   Id., Exh. 5 ¶¶ 6-8 (Sept. 14, 2004 Zarabi Dec.)

28

1        (h)    Fax to Daie Jaan/Fred Larian -- list of shareholders; and

2        (i)    Handwritten purchase offer between Fred and Isaac Larian - 10/2000.[36]

3    •    During the meet and confer process between Mattel and Stern, Stern admitted

4    that it still had in its possession documents that MGA, Isaac Larian and Farhad

5    Larian provided to Mr. Zarabi for purposes of the appraisals conducted, as well as

6    Mr. Zarabi's and Mr. Dutcher's documents related to the appraisals.[37]

7    •    Stern also admits to having unique possession of the transcript of a January

8    23, 2003 meeting—a meeting that occurred six months after Farhad Larian first

9    complained to Mr. Zarabi about Isaac Larian's concealment of Bratz in 2000 and

10   twenty days before Mr. Dutcher released and appraisal that valued MGA "as of

11   December 2000" for the first time.[38]  It appears that Isaac and Farhad Larian, Mr.

12   Zarabi and an accountant participated in another recorded meeting three days later to

13   address Farhad Larian's allegations against Isaac Larian.[39]

14   •    Mr. Dutcher sent Stern all of his files related to his appraisals, including the

15   2003 one that followed Farhad Larian's 's allegations about Bratz.[40]

16   •    A privilege log that Stern produced to Mattel makes clear that none of the

17   items listed, including the tape recording of the January 23, 2003 meeting, are

18   attorney-client communications or attorney work product.  Stern admittedly relies

19   on the "arbitral privilege" to withhold them.[41]

20

21

---

22   [36]  Id., Exh. 37 (Ltr. from Stern to Howarth dated May 21, 2004).

23   [37]  Id. ¶ 70, Exhs. 63-65.  (Ltrs. between Albán and Goldberg).
     [38]  Id., Exh. 65 at 2 (Ltr. from Goldberg to Albán dated Oct. 31, 2007).

24   [39]  Id., Exh. 53 at ¶ 24 (Feb. 5, 2004 F. Larian Dec.).

25   [40]  Id., Exh. 7 at ¶¶ 14, 16.
     [41]  Id., Exh. 63 (Ltr. from Goldberg to Albán dated Oct. 16, 2007).  Stern later

26   attempted to assert that a transcript of the meeting is attorney work product.  Id.,

27   Exh. 65 at 2 (Ltr. from Goldberg to Albán dated Oct. 16, 2007).  Stern does not
     contend the tape recording, which it claims to no longer have, is work product.  Id.

28

**Argument**

I.   **STERN HAS AN OBLIGATION TO PRODUCE ALL DOCUMENTS RESPONSIVE TO MATTEL'S SUBPOENA.**

Federal Rule of Civil Procedure 45 obligates third parties to produce documents responsive to a subpoena that a party serves on them.  Fed. R. Civ. P. 45(b), (d).  If the documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing.  U.S. v. American Optical Co., 39 F.R.D. 580, 583 (N.D. Cal. 1966); accord Heat and Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) ("the factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.").

A.   **The Documents Mattel Seeks Are Relevant And There Is Good Cause For Their Production.**

1.   **The *Larian v. Larian* Disputes Are Relevant.**

As the Discovery Master already ruled, the Larian v. Larian proceedings related to the conception of Bratz and are thus relevant to this action.[42] The discovery Mattel has obtained from other sources confirms the importance of those proceedings to this case and that Stern possesses highly relevant documents. For example, Mr. Zarabi, through Stern, produced documents responsive to Farhad Larian's requests related to the origins of Bratz, MGA's 2000 and 2001 financial statements and Mr. Zarabi's "reconciliations" related to Mr. Dutcher' s appraisals of MGA.[43]  The limited information Mattel has about the appraisals indicate that, in

---

[42]  Id., Exh. 19 at 10-11 (Ord. dated May 15, 2007).
[43]  Id., Exhs. 33 (F. Larian Subpoena on M. Zarabi dated Sep. 19, 2003), 37 (Ltr, from Stern to Howarth dated May 21, 2004).

2000, a "hot product" in development justified a five-fold increase in the projected
rate of revenue growth for 2001, and that MGA's financial statements indicate
expansionary plans in 2000 unprecedented in the prior four years, including taking
on a relatively short-term loan about one hundred times greater than the prior four
years combined.[44]  Mattel also knows that Mr. Dutcher conducted the 2003 appraisal
as part of Mr. Zarabi's response to Farhad Larian's allegations about development of
Bratz in 2000.[45]  Stern may be the only party in possession of the documents that
explain the appraiser's exponential growth projection based on a "hot product,"
because Stern refused to produce to at least Farhad Larian the "2003
communications and documentation."[46]  Stern also appears to be in possession of
documents Mr. Zarabi gathered from MGA and Isaac Larian in response to Farhad
Larian's allegations about Bratz.[47]  Such documentation appears to include, for
example, financial models that Isaac Larian performed forecasting revenue streams
for each item MGA sold or was planning to sell.[48]  There can be little doubt that this
information is directly pertinent to early Bratz and the timing of MGA's
involvement with Bryant and with Bratz.

### 2.   Mattel's and MGA's Allegations Are Relevant.

Stern also did not offer to produce any documents responsive to
requests that address non-Bratz contentions in this action.[49]  For example, Mattel
asked Stern to produce documents relating to payments or offers of payment by

[44]   Id., Exhs. 7 at Exh. C, ¶¶ 14-18 (Jan. 9, 2005 Dutcher Dec.); 8 at 18:14-19:12
(Tr. of Audiotaped Mtg. w/ E. Dutcher dated Sep. 10, 2003).
[45]   Id., Exh. 5 at ¶ 7 (Sept. 14, 2004 Zarabi Dec.).
[46]   Id., Exh. 34 at 3.  Stern admits to producing some 2003 documents to Farhad
and Isaac Larian.  Id., Exh. 63 (Ltr. from Goldberg to Albán dated Oct. 16. 2007).
[47]   Id., Exh. 5 at ¶ 7 (Sept. 14, 2004 Zarabi Dec.).
[48]   Id., Exh. 39 (Ltr. from Howarth to Kaye Scholer dated Apr. 6, 2004).
[49]   Id., Exhs. 55, 56 (Mattel's RFPs and Stern's Objs.).  Request Nos. 13, 14 and
29 are at issue.

1 | MGA, Isaac Larian or Farhad Larian to any person who was at the time employed
2 | by Mattel, and contracts of employment for such persons.[50]  Mattel alleges that
3 | MGA stole trade secrets from Mattel in part by paying Mattel employees to go work
4 | for MGA and bring in Mattel trade secrets in the process.[51]  The Request could not
5 | be more relevant.  MGA also has contended that Bryant's work for MGA in 2000
6 | while he was employed by Mattel related to "Prayer Angel," thus putting that
7 | product at issue.[52]

### 3. Documents About Farhad Larian's Relationship With MGA Are Relevant As To His Credibility.

10 | Given Farhad Larian's long role as shareholder of MGA and his
11 | subsequent Bratz-related disputes with Isaac Larian, he is also a crucial witness in
12 | this action.  Stern refuses to produce any documents responsive to questions going
13 | to MGA's or Isaac Larian's payments to Farhad Larian, including related to Bratz.[53]

14 | Information is relevant and discoverable if it relates to "the credibility
15 | of any witness."  Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.,
16 | 175 F.R.D. 646, 650 (C.D. Cal. 1997).  Evidence of bias is also relevant and
17 | discoverable.  United States v. Abel, 469 U.S. 45, 50-51 (1984); see also Wright &
18 | Miller, Federal Practice & Procedure: Federal Rules of Evidence § 6095 (bias is a
19 | "particularly favored basis for attacking credibility," and "circumstantial evidence of
20 | bias" may include evidence of the "payment of bribes or fees").  The Discovery
21 | Master has already ruled that payments from MGA to Farhad Larian are relevant to
22 | this action and discoverable.[54]  Similarly, the Discovery Master has ordered MGA to

---

[50]  Id. at Request No. 29.
[51]  Id., Exh. 18 at ¶¶ 37-77 (Mattel's Second Am. Answer).
[52]  Id., Exhs. 66 at 243:18-246:14 (Depo. Tr. of Paula Garcia, Vol. 1, May 24, 2004); 55 and 56 at Request Nos. 13, 14 (Mattel's RFPs to Stern's Objs.).
[53]  Id., Exhs. 55, 56 at Request Nos. 23, 24 (Mattel's RFPs and Stern's Objs.).
[54]  Id., Exh. 45 at 10-12 (Sep. 25, 2007 Ord.).

-11-

1  produce documents related to MGA's transfers of money or other things of value to

2  other witnesses in this action such as Carter Bryant because they go to his credibility

3  or bias.[55]  If Stern has any purported privacy concerns with respect to such

4  documents—even assuming it has standing to assert them—the Protective Order in

5  this action expressly allows him to designate documents as "Confidential" or

6  "Confidential – Attorney's Eyes Only."[56]  The Discovery Master has ruled more than

7  once that the Protective Order adequately addresses privacy concerns, including

8  with respect payments of money from MGA to witnesses.[57]

9         **4.**     **Farhad Larian's Communications With Mattel Are Relevant.**

10        Stern also refused to produce any documents relating Farhad Larian's

11  communications with Mattel and documents exchanged between him and Mattel.[58]

12  The request is relevant.  First, a witness's knowledge about matters in the case are

13  relevant.  Second, MGA and Isaac Larian themselves put these requests at issue by

14  threatening to disqualify Quinn Emanuel from representing Mattel in this action

15  based on purported communications Quinn Emanuel had with Farhad Larian when

16  he was involved in proceedings against Isaac Larian.[59]  These documents, along

17  with the documents Farhad Larian's counsel showed Quinn Emanuel at the time, are

18  directly relevant to not only this litigation, but to countering that baseless

19  disqualification claim.

20         **5.**     **The Location Of Responsive Documents Is Relevant.**

21        Finally, Mattel has a right to know the whereabouts of responsive

22  documents, including if Stern destroyed them or for another reason no longer has

23  them.  In this respect, Mattel seeks information about retention of documents that at

24

25  [55]  <u>Id.</u>, Exh. 19 at 10  (May 15, 2007 Ord.).

   [56]  <u>Id.</u>, Exh. 42 at ¶ 3 (Jan. 4, 2005 Stip. and Protective Ord.).

26  [57]  <u>Id.</u>, Exhs. 19 at 11, n.4 (May 15, 2007 Ord.); 44 at 13-15 (Jan. 25, 2007 Ord.).

   [58]  <u>Id.</u>, Exhs. 55, 56 (Mattel's RFPs and Stern's Objs.).  No. 27 is at issue.

27  [59]  <u>Id.</u>, Exh. 43 (Ltr. from Glaser to Quinn dated July 5, 2007)

28

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL STERN & GOLDBERG TO PRODUCE DOCUMENTS

1  least at one point, if not now, were indisputably in existence and in Stern's

2  possession.[60]  Notably, Stern at one point advised Mr. Dutcher to destroy drafts of

3  his appraisals even after Farhad Larian had subpoenaed Mr. Dutcher for the

4  documents.[61]  Mattel also seeks an image of Farhad Larian's computer hard drives

5  for a crucial time period—January 1, 1999 to December 31, 2002.[62]  The Discovery

6  Master has previously ordered production of Bryant's hard drive images given the

7  likely relevant information contained therein.[63]

8        **B.**    **<u>Mattel's Requests Are Not Unreasonable, Oppressive, Annoying or</u>**

9            **<u>Embarrassing.</u>**

10        "The burden of showing that a subpoena is unreasonable and

11  oppressive is upon the party to whom it is directed." <u>Goodman v. U.S.</u>, 369 F.2d

12  166, 169 (9th Cir. 1966); <u>Flatow v. The Islamic Republic of Iran</u>, 202 F.R.D. 35, 36

13  (D.D.C. 2001); <u>Northrop Corp. v. McDonnell Douglas Corp.</u>, 751 F.2d 395, 403

14  (D.C. Cir. 1984).  Here, Stern does no more than assert repetitive, boiler plate

15  burden objections, irrespective of the substance of the document request.

16        Mattel also offered to pay for Stern's copying costs,[64] further belying

17  any claim of burden.  That Stern presumably already has separate case files – as law

18  firms tend to have – containing all or the vast majority of responsive documents,

19  further illustrates the lack of merit of Stern's burden objections.  Even if Mattel had

20  not offered to pay for copying costs, and even if Stern did not already have

21  separated case files, a claim that compliance with Mattel's request "would

22  necessitate the examination of large quantities of documents, requiring a great deal

23  of time and expense . . . is not alone a sufficient reason for refusing discovery which

24

25     [60]  <u>Id.</u>, Exhs. 55, 56 (Mattel's RFPs and Stern's Objs.). No. 34 is at issue.
   [61]  <u>Id.</u>, Exh. 7 at ¶¶ 15-16 (Jan. 9, 2005 Dutcher Dec.).

26     [62]  <u>Id.</u>, Exhs. 55, 56 at Request No. 33 (Mattel's RFPs and Stern's Objs.).
   [63]  <u>Id.</u>, Exh. 44 (Jan. 25, 2007 Ord.).

27     [64]  <u>Id.</u>, Exh. 61 (Ltr. from Albán to Goldberg dated Oct. 10, 2007).

28

1   is otherwise appropriate . . . ." <u>American Optical Co.</u>, 39 F.R.D. at 586-587

2   (documents sought covered a twelve year period).

3         Stern's burden objections stem primarily from its insistence that Mattel

4   has to obtain the documents from Isaac Larian or MGA.[65]  Stern's position not only

5   wholly ignores Mattel's unsuccessful efforts to date to obtain documents from Isaac

6   Larian and MGA,[66] but is also contrary to federal law.  "[A] person may not avoid a

7   subpoena by saying that the evidence sought from him is obtainable from another."

8   <u>State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.</u>,  2007 WL 2993840, at *1

9   (E.D.N.Y. 2007) (quoting <u>Covey Oil Co. v. Continental Oil Co.</u>, 340 F.2d 993, 998

10  (10th Cir. 1965)); <u>see also</u> <u>In re Bergeson</u>, 112 F.R.D. 692, 695 (D. Mont. 1986)

11  (conclusory assertions that documents sought are available from others more

12  economically "does not constitute a showing of unreasonableness or

13  oppressiveness."); <u>Plant Genetic Systems, N.V. v. Northrup King Co., Inc.</u>, 6 F.

14  Supp. 2d 859, 861-862 (E.D. Mo. 1998) (third party subpoena proper where

15  information sought pertained to a central issue in the underlying claim, it was not

16  burdensome in light of plaintiff's diligent efforts to obtain the information from

17  defendant, and the nonparty had signed protective order prohibiting disclosed

18  information from being seen by plaintiffs counsel or nonparty's competitors).

19  Stern's position also ignores its own admission that it uniquely possesses documents,

20  including at a minimum a transcript of a January 23, 2003 meeting Mr. Zarabi

21  participated in while responding to Farhad Larian's 2002 allegations about Bratz.[67]

22  MGA's and Isaac Larian's extraordinary efforts to thwart discovery related to the

23  <u>Larian v. Larian</u> proceedings leaves no doubt that Mattel is entitled to discovery

24

25

---

26    [65]  <u>Id.</u>, Exh. 65 (Ltr. from Goldberg to Albán dated Oct. 31, 2007).

27    [66]  <u>Id.</u> ¶¶ 35, 36, Exhs. 22 (RFPs to MGA), 32 (RFPs to I. Larian).

  [67]  <u>Id.</u>, Exh. 61 (Ltr. from Albán to Goldberg dated Oct. 10, 2007).

28

1   from the full array of those involved in those proceedings.  The discovery is

2   necessary to ensure that Mattel gets a complete production of responsive documents.

3   　　　　Plant Genetic Systems is also instructive with respect to Stern's

4   objections based on MGA's, Isaac Larian's or Farhad Larian's confidential or private

5   information.[68]   As was the case in Plant Genetic Systems, and consistent with the

6   Discovery Master's prior rulings in this case, Stern can use the Protective Order in

7   this action to protect information it properly designates as "Confidential" or

8   "Confidential – Attorneys Eyes Only."

9   　　　　Finally, Stern objects to two Requests about witnesses with knowledge

10   about the conception and development of Bratz on the grounds that the requests

11   "may" call for employment records, for which California Code of Civil Procedure §

12   1985.6 purportedly requires prior notice here.[69]  This is a federal question case, and

13   Stern has made no showing as to why a California procedural statute applies here.

14   Even if it did, Stern makes no showing that documents in its possession are

15   "employments records," and indeed only speculates that they "may."  Notably, the

16   Requests ask for documents "related to Bratz," not to anyone's employment.[70]  Also,

17   the California statute defines "employment records" as documents "maintained by

18   the current or former employer."  Cal Code Civ. P. § 1985.6.  Stern is not the current

19   or former employer of these witnesses.

20   II.   **STERN'S PRIVILEGE OBJECTIONS HAVE NO MERIT**

21   　　　　Stern asserts attorney-client, work product and "arbitral" privileges.[71]

22   Because this case is in federal court based on questions of federal law, federal

23   common law of privilege applies.  Fed. R. Evid. 501, U.S. v. Zolin, 491 U.S. 554,

24   562 (1989); Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d

25   

26   [68]  Id., Exh. 56 at Req. Nos. 9-14, 17, 18, 19, 21, 22, 23, 24, 29 (Stern's Objs.).

27   [69]  Id. at Request Nos. 8, 15.

[70]  Id., Exh. 55 (Mattel's Subpoena), Request Nos. 8, 15.

28

1486, 1492 (9th Cir. 1989); Garrett v. City and County of San Francisco, 818 F.2d 1515, 1519 n. 6 (9th Cir. 1987).

### A.    Mr. Zarabi and Stern Have No "Arbitral Immunity or Privilege."

Stern admits that its claim of "arbitral privilege" stems only from any privilege claim its client, Mr. Zarabi, may have.[72]  Mr. Zarabi has no such privilege here.  First, federal common law of "arbitral privilege" applies only to proceedings where a party to an arbitration—Isaac Larian or Farhad Larian—challenge the arbitrator's decisions in some way.  Matter of Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.), 579 F.2d 691, 702 (2nd Cir. 1978).  Mattel only seeks documents related to the so-called arbitration proceedings and does not challenge Mr. Zarabi's decisions.  Second, Mr. Zarabi did not even arbitrate Farhad Larian's allegations about the development of Bratz in 2000.[73]  Third, Mr. Zarabi long-ago waived any claim of arbitral privilege he may have had at one time, even assuming such a privilege still applied in this case.[74]

### 1.    Any "Arbitral Privilege" Morad Zarabi May Have Had At One Time Has No Application Here.

"Inasmuch as testimonial exclusionary rules and privileges contravene the fundamental principle that the public has a right to every man's evidence, any such privilege must be strictly construed."  University of Pennsylvania v. E.E.O.C., 110 S.Ct. 577, 582, 493 U.S. 182, 189 107 L.Ed.2d 57 (1990) (citations omitted); see also Memorial Hosp. for McHenry County v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981) ("because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed.").  Accordingly, only a narrowly-tailored

---

[71]  Id., Exh. 65 (Ltr. from Goldberg to Albán dated Oct. 31, 2007).
[72]  Id. at 3-4.
[73]  Id., Exh. 11 (Ltr. from Zarabi to F. and I. Larian dated Feb. 8, 2005).

-16-

1  "arbitral privilege" has developed in federal common law.[75]  The privilege applies

2  only to proceedings in which a party to an arbitration later challenges the arbitrator's

3  decisions in federal court.  <u>Andros</u>, 579 F.2d at 702.  In <u>Andros</u>, the Second Circuit

4  started its analysis of arbitral privilege with the premise that "the discovery

5  procedures of the Federal Rules of Civil Procedure are generally applicable to Title

6  9 proceedings."  <u>Id.</u>[76]  The Court then held that, "in the ***special context*** of what are

7  in effect ***post hoc efforts to induce arbitrators to undermine the finality of their***

8  ***own awards***, . . . any questioning of arbitrators should be handled pursuant to

9  judicial supervision . . . ." <u>Id.</u> (emphases added).[77]

10       Ninth Circuit courts have adopted the "arbitral privilege" as delineated

11  in <u>Andros</u>, and nothing broader.  <u>See, e.g.</u>, <u>Woods v. Saturn Distribution Corp.</u>, 78

12

---

13  [74]  <u>Id.</u>, Exhs. 37, 48, 63 (Ltrs. indicating production of privileged docs.)

      [75]  Because federal common law of privilege applies here, Stern's apparent

14  reliance on <u>California Evidence Code</u> § 703.5 (<u>id.</u> ¶ 70) is misguided.  No provision

15  in either the <u>Federal Arbitration Act</u>, the <u>Federal Rules of Evidence</u> or federal case

    law is comparable to § 703.5.

16  [76]  Title 9 is a reference to the Federal Arbitration Act.

    [77]  <u>See also</u> <u>Lyeth v. Chrysler Corp.</u>, 929 F.2d 891, 900 (2nd Cir. 1991) ("***To the***

17  ***extent*** that Chrysler's request to depose the individual arbitrator ***was aimed at***

18  ***contesting Lyeth's Lemon Law award***, the district court properly denied discovery

    ...") (citing <u>Andros</u>) (emphases added); <u>Frere v. Orthofix, Inc.</u>, 2000 WL 1789641,

19  at *5 (S.D.N.Y. 2000) ("As is evident both from <u>Andros</u> and from subsequent court

20  decisions . . . [the arbitral privilege] applies only to discovery inquiries directed at

    the arbitrator and ***only when the goal is to impugn the validity of the arbitrator's***

21  ***decision***.") (emphasis added); <u>National Hockey League Players' Ass'n v. Bettman</u>,

22  1994 WL 38130, at *2, *6-7 (S.D.N.Y. 1994) ("As for the so-called arbitral

    immunity . . . the federal courts have developed two related rules governing the

23  status of arbitrators ***in the context of litigation challenging the results of an***

24  ***arbitration*** . . . First, arbitrators are immune from personal-damage liability for their

    decisions . . . Second . . . ***in actions addressing the results of an arbitration***

25  ***whether it be a proceeding to enforce or to set aside an arbitrator's award***-the

26  court is to exercise close supervision over the extent and nature of discovery,

    although the discovery rules are, at least in principle, applicable to such a

27  proceeding.") (emphases added).

28

1  F. 3d 424, 430 (9th Cir. 1996) ("The Federal Rules of Civil Procedure do not apply

2  to 'post hoc' questioning of arbitrators in Title 9 proceedings and 'any questioning of

3  arbitrators should be handled pursuant to judicial supervision . . . .'") (quoting

4  Andros).  In Woods, the party seeking discovery was expressly challenging a prior

5  arbitration decision.  Id.  Accord Thomas Kinkade Co. v. Hazlewood, 2007 WL

6  217384, *2-4 (N.D. Cal. 2007) (allowing only limited discovery in the context of a

7  challenge to the arbitration); Empresa Constructora Contex Limitada v. Iseki, Inc.,

8  106 F.Supp. 2d 1020, 1024-1025 (S.D. Cal. 2000); Corsini v. Prudential Securities,

9  Inc., 1995 WL 663174, at *2 (S.D. Cal. 1995); Portland General Elec. Co. v. U.S.

10  Bank Trust Nat. Ass'n, 38 F.Supp. 2d 1202, 1208-1210 (D. Or. 1999) (reversed on

11  other grounds).  In each of these district court cases, an arbitrator's right to withhold

12  discovery was limited to the context of subsequent proceedings challenging the

13  arbitral award in some way.  Here, Mattel in no way challenges any decisions Mr.

14  Zarabi made, even if he had actually rendered a decision in 2003.[78]

15        The reason why federal courts adopted an "arbitral privilege" in the

16  first place further clarifies the lack of merit of Stern's claim of arbitral privilege.

17  Courts have justified deviating from the liberal discovery standards of the Federal

18  Rules of Civil Procedure in proceedings challenging arbitrators' decisions in order to

19  protect the efficiencies of arbitration.  See, e.g., O.R. Securities, Inc. v. Professional

20

21  [78]  After Farhad Larian asked Mr. Zarabi to disqualify himself as an arbitrator, Mr. Zarabi voluntarily withdrew himself.  Albán Dec., Exhs. 11 (Ltr. from Zarabi to

22  F. and I. Larian dated Feb. 8, 2005), 60 (Ltr. from Goldberg to Albán dated Oct. 8,

23  2007).  He rendered no decision despite Isaac Larian's attempt to demand for one. Id., Exhs. 67 (Ltr. Klevens to Stern dated Sep. 25, 2003), 68 (Ltr. from Stern to

24  Klevens, Howarth dated Oct. 1, 2003).  Thus, his 2003 deliberations on Farhad

25  Larian's allegations were not even ultimately those of an arbitrator.  By Stern's own admission, the only reason it initially withheld "2003 communications and

26  documentation" from Farhad and Isaac Larian was that Mr. Zarabi "may be called

27  upon to arbitrate the matter."  Id., Exh. 68 at 2.  He was never so called, so Stern's prior basis is now irrelevant, even assuming it in theory applied in this case.

28

1 | Planning Associates, Inc., 857 F.2d 742, 747-748 (11th Cir. 1988) (justifying denial

2 | of discovery in matter challenging arbitration award in order to protect the

3 | "summary" and "expeditious" nature of arbitrations); Hunt v. Mobil Oil Corp. 654

4 | F.Supp. 1487, 1495-1496 (S.D.N.Y. 1987) ("discovery process would negate the

5 | concept of arbitration as a relatively quick means of dispute resolution and would

6 | only protract and delay the termination of the arbitration proceeding."); National

7 | Hockey League Players Assoc'n, 1994 WL 38130 at *2 (citing Hunt).  Here, any

8 | decisions Mr. Zarabi may have made as an "arbitrator" were long-ago finalized, and

9 | Mattel in no way seeks to re-open or otherwise delay any such arbitration process.

10 | Stern goes as far to claim that the arbitral privilege applies to

11 | documents that MGA, Farhad or Isaac Larian "supplied" to Mr. Zarabi for use in his

12 | deliberations, not just to anything Mr. Zarabi created.[79]  Even under California's

13 | broader protections of an arbitrator's deliberations, such protection does not apply to

14 | "raw data" on which an arbitrator relies to make his decisions.  Cf. Rojas v. Superior

15 | Court, 33 Cal. 4th 407, 417 (2004) ("raw data" given to a mediator not privileged).

16 | A rule to the contrary would mean that a party could cloak a document that was

17 | never privileged with an "arbitral privilege" merely by handing it to an arbitrator.

18 | There is also no contractual based "arbitral privilege" here.  The

19 | "arbitration agreements" between Isaac Larian and Farhad Larian, in which they

20 | agreed to have Mr. Zarabi attempt to resolve their disputes, notably contain no

21 | provision for confidentiality.[80]

22 |

23 |

24 |

25 |

26 | [79]  Id., Exh. 56 at Request Nos. 16-20, 22-24, 29 (Stern Objs.).

27 | [80]  Id., Exhs. 3 (Agr. to Arb. dated Sep. 28, 2000); 6 at ¶¶ 8-10 (Agr. for Sale of Stock dated Dec. 4, 2000).

28 |

1    **2.    Even If An Arbitral Privilege Applied Here, Mr. Zarabi**

2    **Waived It At Least As Early As May 2004.**

3            The case law above makes clear that the "arbitral privilege" under

4    federal common law protects the confidentiality of an arbitrator's deliberations *from*

5    *the parties to the arbitration*. If the arbitrator shares documents related to his

6    deliberations with the parties, he waives the privilege. See, e.g., Hartford Fire Ins.

7    Co. v. Garvey, 109 F.R.D. 323, 327 (N.D. Cal. 1985) (voluntary disclosure

8    inconsistent with confidential nature of attorney client relationship waives attorney

9    client privilege); Marshall v. U.S. Postal Service, 88 F.R.D. 348, 350 (D.D.C. 1980)

10   ("Once a party begins to disclose any confidential communication . . ., the privilege

11   is lost for all communications relating to the same matter.") (quoting SEC v. Dresser

12   Industries, Inc., 453 F.Supp. 573, 576 (D.D.C. 1978).  The rationale for why

13   selective disclosure constitutes a broader waiver is that a party cannot selectively

14   choose which privileged responsive documents to produce and which ones to

15   withhold:  Id. at 350 (citing Burlington Industries v. Exxon Corp., 65 F.R.D. 26, 26

16   (D. Md. 1974).

17           There can be no dispute Mr. Zarabi long-ago waived any claim of

18   arbitral privilege under these standards.  Mr. Zarabi produced documents responsive

19   to Farhad Larian's document production requests, limited only by 2003

20   communications and documentation.[81]  Mr. Zarabi confirmed precisely what

21   documents he would produce on May 21, 2004; the list includes documents related

22   to Mr. Zarabi's and his appraiser's deliberations, such as Mr. Zarabi's "Confidential

23

24

25

26     [81]   Id., Exh. 35 (Ltr. from Howarth to Stern dated June 8, 2004).

27

28

1  Reconciliations."[82]  By Stern's own admission, Mr. Zarabi's document production
2  also included selective disclosure of 2003 communications and documents.[83]

3       Nevertheless, Stern now attempts to improperly resuscitate the
4  privilege.  Even if the Discovery Master found that an arbitral privilege plausibly
5  exists here, which it does not, the Discovery Master should not allow Stern to
6  selectively decide what documents to withhold from Mattel and which ones to allow
7  Mattel to see (as long as Mattel can get them from someone else).  Stern also is
8  withholding documents it uniquely possesses.[84]

9       Stern's efforts to thwart its <u>Rule</u> 45 obligations are particularly
10 troubling in light of its apparent attempt to coordinate any agreement to produce
11 with Isaac Larian and MGA (who have only obstructed production of <u>Larian v.</u>
12 <u>Larian</u> documents).[85]  Stern also improperly attempted to thwart Farhad Larian's
13 discovery in the <u>Larian v. Larian</u> proceedings, including by misrepresenting to
14 Farhad Larian about what they possessed and by improperly instructing Mr. Dutcher
15 to destroy documents responsive to a subpoena Farhad Larian served on him.[86]  Of
16 course, Mr. Zarabi's family ties to Isaac Larian are also a concern.

17      The Discovery Master should compel production of all responsive
18 documents from Stern, including all "2003 proceeding" documents.

---

22 [82]  <u>Id.</u>, Exh. 37 (Ltr. from Stern to Howarth dated May 21, 2004); see also <u>id.</u>,
23 Exh. 48 (Ltr. from Stern to Howarth dated July 14, 2004).
   [83]  <u>Id.</u>, Exhs. 63 (Ltr. from Goldberg to Albán dated Oct. 16, 2007), 69 (Ltr.
24 from Kremer to Stern dated Dec. 8, 2004).
   [84]  <u>Id.</u>, Exhs. 34 (Ltr. from Stern to Howarth dated June 24, 2004), 65 at 2 (Ltr.
25 from Goldberg to Albán dated Oct. 31, 2007).
   [85]  <u>Id.</u>, Exh. 65 at 4 (suggesting any further conference include MGA and Isaac
26 Larian's attorneys).
   [86]  <u>Id.</u>, Exhs. 7 at ¶¶ 14-16 (Jan. 9, 2005 Dutcher Dec.).

**B.     The Discovery Master Should Compel Stern To Produce A Privilege Log For Attorney Client and Work Product Claims**

Mattel does not have an issue at this juncture with Stern withholding documents that are legitimately attorney-client communications or attorney work product.  However, Stern produced a privilege log only with documents that it admits it is withholding only because of a so-called "arbitral privilege."[87]  For claims of attorney-client or work product privileges, Stern has only identified withheld documents with two conclusory statements:

(1) "Communications between our office and Morad Zarabi with respect to his role as arbitrator in the arbitration between Isaac Larian and Farhad Larian; and (2) Internal file memorandum which Stern & Goldberg *may have* prepared in connection with its involvement in the representation of Morad Zarabi, such as, a memo to the file based on a conversation, such as I had with counsel from Quinn Emanuel."[88]

Such broad statements do not give Mattel sufficient information to evaluate Stern's claims of privilege, as Rule 45(d)(2) requires.  For example, Stern provides no information that none of the documents under category (1) included other recipients—such as Isaac Larian or Farhad Larian—that would constitute waiver of privilege.  A separate letter from Stern also points to an improperly withheld transcript of a critical meeting involving Farhad Larian's 2002 allegations, based on purported "work product."[89]  A word-for-word transcript of a meeting that is not itself work product (Stern does not contend the meeting itself, or a tape recording of the meeting, are work product) does not magically become work product because an attorney requested the transcript.  But that is apparently Stern's

---

[87]  Id., Exh. 65 at 3, ¶ 3.
[88]  Id., Exh. 62 (Ltr. from Goldberg to Lever dated Oct. 12, 2007).
[89]  Id., Exh. 65 at 2 (Ltr. from Goldberg to Albán dated Oct. 31, 2007).

1   latest basis for withholding the transcript.[90]  Further, this transcript relates to Mr.

2   Zarabi's 2003 work, any protection for which Mr. Zarabi waived by selectively

3   disclosing some related information to Isaac and Farhad Larian.[91]  That Stern now

4   claims this transcript as work product exemplifies the deficiency of its one-sentence

5   description of withheld "work product"—the list in no way would have alerted

6   Mattel or the Court to the fact that Stern was withholding this transcript.  Mattel

7   only knows from a separate letter.  There is no telling what else Stern improperly

8   claims as "attorney-client privilege" or "work product," in violation of Mattel's

9   rights under Rule 45(d)(2).

10           The Discovery Master should compel Stern to produce a document-by-

11   document privilege log.  Gail v. New England Gas Co., Inc., 243 F.R.D. 28, 33 (D.

12   R.I. 2007) ("universally accepted" means of claiming that requested documents are

13   privileged is the production of a privilege log; discussing requirement for Rule 45

14   and requiring a document-by-document log); Martinez v. City of Fresno, 2006 WL

15   3762050, at *6 (E.D. Cal. 2006) (over-generalized descriptions that fail to

16   adequately identify specific documents are insufficient in a privilege log).  Mattel's

17   attempt to enforce its Rule 45 right to challenge Stern's claims of privilege is not

18   "harassment," as Stern attempts to portray it.[92]  To the contrary, Stern has waived its

19   claims of privilege by its failure and refusal to provide Mattel an adequate privilege

20   log.  In re Imperial Corp. Of America, 174 F.R.D. 475, 477 (S.D. Cal. 1997).

21                           **Conclusion**

22           For the foregoing reasons, Mattel respectfully requests that the

23   Discovery Master grant Mattel's motion and compel Stern to produce documents

24

---

[90]   Id.

[91]   The meeting may have in fact been in the presence of Isaac and Farhad
Larian, in which case there is no privilege.  Id., Exh. 53 ¶ 24 (Farhad Larian
describes a January 26, 2003 tape-recorded meeting).

[92]   Id., Exh. 65 at 3, ¶ 2 (Ltr. from Goldberg to Albán dated Oct. 31, 2007).

1 responsive to every request in Mattel's subpoena; overrule Stern's objections other

2 than assertions of attorney-client and work product privileges; and order Stern to

3 produce a privilege log for each privileged document withheld.

4

5 DATED:  December 6, 2007          QUINN EMANUEL URQUHART OLIVER &
                                              HEDGES, LLP
6

7                                        By   *Jon Corey / jpc*

8                                           Jon D. Corey
                                            Attorney for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-24-