# EXHIBIT 1

ORIGINAL

HOWARTH & SMITH
DON HOWARTH (State Bar No. 53783)
SUZELLE M. SMITH (State Bar No. 113992)
BRIAN D. BUBB (State Bar No. 137408)
ROBERT D. BRAIN (State Bar No. 98815)
800 Wilshire Blvd., Suite 750
Los Angeles, California 90017

(213) 955-9400

Attorneys for Plaintiff
FARHAD LARIAN

**FILED**
LOS ANGELES SUPERIOR COURT

AUG 2 5 2003

JOHN A. CLARKE, CLERK
C. L. Coleman
BY C. L. COLEMAN, DEPUTY

Case assigned to
Judge Rodney Nelson.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

BC301371

| FARHAD LARIAN, | CASE NO. |
|---|---|
| Plaintiff, | VERIFIED COMPLAINT FOR: |
| vs. | 1) FRAUD & DECEIT IN THE INDUCEMENT OF ARBITRATION AGREEMENT; |
| ISAAC LARIAN and DOES 1 through 50, inclusive, | 2) BREACH OF FIDUCIARY DUTIES; |
| Defendants. | 3) FRAUD & DECEIT IN THE CONDUCT OF ARBITRATION PROCESS; |
| | 4) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; |
| | 5) VIOLATION OF CALIFORNIA CORPORATIONS CODE §§ 25401 AND 25501; |
| | 6) VIOLATION OF CALIFORNIA CORPORATIONS CODE §§ 25402 AND 25502; |
| | 7) FRAUD & DECEIT RE DECEMBER 2000 AGREEMENT; |

CIT/CASE: BC301371 LER/DEP#:
RECEIPT #: CCH243110037
DATE PAID: 08/25/03  12:00:44 PM
PAYMENT: $269.50
RECEIVED:
CHECK:
CASH:
CHANGE:
CARD:
269.50
0310

D3P391001.618

EXHIBIT / PAGE 7

VERIFIED COMPLAINT

|  |  |
|---|---|
| | 8) NEGLIGENT MISREPRESENTATION; |
| | 9) UNFAIR COMPETITION, IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200; and |
| | 10) RESCISSION BASED ON MISTAKE |

DEMAND FOR JURY TRIAL

Plaintiff, FARHAD LARIAN ("Plaintiff" or "Fred") alleges as follows:

## COMMON ALLEGATIONS

**Parties and Venue**

1. Plaintiff Farhad Larian, also known as "Fred" Larian, is now, and at all times herein mentioned was, a resident of the State of California. He is currently residing in Los Angeles County, California.

2. Defendant Isaac Larian ("Isaac") is now, and at all time herein mentioned was, a resident of Los Angeles County, California.

3. Plaintiff is unaware of the true names and capacities of Defendant DOES 1 through 50, inclusive, and therefore sues such Defendants by fictitious names. Plaintiff will amend this complaint to show the true names and capacities of, and to make specific allegations against, these Defendants if and when additional information against them is ascertained. Plaintiff is informed and believes and thereon alleges that each of the Defendants, including each fictitiously named Defendant, is liable in some manner for the events referred to in this complaint.

4. At all times mentioned herein, each Defendant was the agent of each of the other Defendants, and was acting within the course and scope of said agency in performing the acts described herein.

5. Venue is proper in Los Angeles County under California Code of Civil Procedure § 395 because Defendant Isaac Larian resides in Los Angeles County.

2

EXHIBIT __1__ PAGE __8__

VERIFIED COMPLAINT

## General Background

6. In or about 1979, two brothers, Plaintiff Fred Larian and Defendant Isaac Larian formed an equal partnership to import and distribute name brand consumer products, splitting the profits and losses 50/50.

7. In or about 1982 the partnership was incorporated as ABC International Traders, Inc. ("ABC"), a closely-held, not publicly traded company, with each brother owning an equal 50 percent of the corporation. Upon incorporation, the brothers continued as before to divide the work and to split equally the profits in running the business. In or about 2002, the name of ABC was changed to MGA Entertainment, Inc. ("MGA).

8. In or about 1985 or 1986, Fred's and Isaac's shares were diluted when ABC sold stock to their brother-in-law, Jahangir "Eli" Makabi. Such sale left Fred and Isaac each with an equal 45 percent share of the ownership of ABC. After the sale of the stock to Mr. Makabi, the brothers continued as partners and joint venturers in operating the Company, both continued to divide the work at ABC, and each sharing equally 45 percent of its profits.

9. In or about 1994, Fred and Isaac also became equal 45 percent shareholders (with 10 percent going to Mr. Makabi) in MGA Hong Kong, Limited (together with MGA and ABC, "the Company"), and operated part of their business through such entity. At all times referenced herein, Isaac has served as the President of the Company. More recently, Isaac also acquired the additional title of CEO.

10. Starting as far back as 1993, disputes arose between the brothers over the operation of the Company. In part, this was because, as Isaac put it, they were "equal partners in the Company" yet had different ideas on how best to make the Company prosper. Over the years, Fred and Isaac discussed various ways to resolve these disputes.

/ / /

/ / /

/ / /

3

1    11.    One method the brothers' discussed was having one brother buy out the

2    other's equity interest.  Over the years, various such purchases were discussed and on one

3    occasion an outside appraisal of the Company, performed at the specific request of Isaac,

4    valued the Company at $35 million to $40 million.

5    12.    By 1999, Isaac, as President, had assumed control of sales, product

6    development and financial matters.  At Isaac's direction, Fred assumed responsibility for

7    major projects such as customs regulations, facilities management and warehouse

8    distribution control, and was not as involved in the day-to-day sales or financial control

9    of the Company.  For his role, Isaac took a significantly greater salary.

10

11   **Defendant's Concealment of the Bratz Doll Line**

12   13.    Plaintiff is informed and believes that beginning in or about late 1999 and

13   early 2000, Isaac became aware of a potential new product line that had tremendous

14   potential for the Company.  The new product line involved the "Bratz" dolls and related

15   products.  Bratz dolls are "hipper" and more "edgy" than Barbie and Barbie-type dolls,

16   and are aimed at the post-adolescent, pre-teen and early teen market, i.e., a market where

17   the allure of playing with Barbie-type dolls wanes.

18   14.    Plaintiff is informed and believes that during this same time period, Isaac

19   devised a plan to keep this business opportunity secret from Fred and to gain control of

20   the Company by buying Fred's shares at a value which did not include this new business

21   opportunity.  Isaac concealed from Plaintiff, his brother and partner and stockholder,

22   knowledge he had, as well as his intentions and actions undertaken, regarding the Bratz

23   product line.

24   15.    In or about early 2000, Isaac called a meeting to discuss the new Bratz

25   product line with selected individuals in the Company.  Plaintiff is informed and believes

26   that those present at the meeting spoke enthusiastically of the tremendous opportunity the

27   Bratz line presented for the Company as, *inter alia*, it captured a vacant market niche.

28   / / /

4

VERIFIED COMPLAINT

**EXHIBIT** __1__ **PAGE** _10_

1   Fred was not present for this meeting. Upon information and belief, Isaac took steps to

2   conceal the results of the meeting from Fred.

3        16.   Also in or about February 2000, Isaac tried to dissuade Fred from attending

4   the New York Toy Fair, even though Fred had routinely and regularly attended such toy

5   fairs in the past. The New York Toy Fair is an important venue for discussing and

6   researching the market potential of new product lines. Isaac was furious when he

7   discovered that Plaintiff was traveling to New York for the fair. Plaintiff was expelled by

8   Isaac from meetings he tried to attend and was excluded from any discussions Isaac may

9   have had relating to the Bratz line of products at the fair.

10        17.   In early March 2000, while continuing to conceal from Fred the Company's

11   plans for the Bratz line, Isaac offered to purchase all of Plaintiff's 45 percent interest in

12   the Company for $9 million. The offer was based on a total value of the Company of $20

13   million. Upon information and belief, Isaac knew at the time he made the offer of the

14   Company's plans already in place, and actions already undertaken, regarding the Bratz

15   line, and that such plans made the Company worth well in excess of $20 million.

16        18.   As set forth herein, the two brothers divided responsibilities with Isaac,

17   assuming control of sales, product development and financial matters, and Fred assuming

18   responsibility for major projects. Financial information was handled by Isaac and the

19   Controller, Dennis Medici. Throughout 2000 Isaac repeatedly and routinely shared with

20   Fred any financial information that showed the Company was performing poorly, while

21   withholding any positive financial information about the Company, including the plans

22   for the Bratz line. Indeed, in May 2000 Isaac told the Company's the Controller, Dennis

23   Medici, that he was to no longer give Fred any information regarding the financial

24   operation of the Company. During this period, Isaac gave Fred only bleak financial news

25   about the Company and continued to conceal the Company's plans and actions

26   undertaken regarding Bratz.

27        19.   On or about September 18, 2000, Isaac caused the Company to enter into a

28   worldwide licensing agreement for the Bratz dolls and related items. The existence of

5

EXHIBIT ___/___ PAGE _//_

1  this license was concealed from Fred. Upon information and belief, these important and

2  valuable rights are already generating revenues of in excess of $500 million a year and

3  are expected to exceed $3 billion in the next few years.

4

5  **Fraud Regarding the Arbitration Agreement**

6      20.    In or about September 2000, Isaac resumed his efforts to buy Fred's interest

7  in the Company. Isaac kept the Bratz opportunity and other information about the true

8  financial condition of the Company hidden from Fred in an effort to secure Fred's

9  agreement to a proposed arbitration process with their Uncle Morad Zarabi. Isaac agreed,

10  and induced Fred to agree, to the arbitration process without disclosing that during the

11  arbitration he would conceal the Company's plans and actions undertaken regarding the

12  Bratz line, and other financial information about the Company so that such information

13  would not be included in Mr. Zarabi's valuation of the Company. In or about September

14  2000, Isaac and Fred executed the "Agreement to Arbitrate and Selection of Arbitrator"

15  ("Arbitration Agreement") attached hereto as Exhibit A.

16      21.    At all times before and up through his execution of the Arbitration

17  Agreement and for some considerable time thereafter, Fred was unaware of the true facts

18  regarding the new business opportunities and Bratz line of products, was unaware of the

19  true financial condition of the Company, and was unaware of the intention of Isaac to

20  conceal such material facts from the arbitrator and from him during the arbitration

21  process. Had Fred been aware of the new business opportunities, the Bratz line of

22  products, the true financial condition of the Company, and/or the plans of Isaac to

23  conceal such material information from him and from the arbitrator, he would not have

24  agreed to enter into the arbitration process for the sale of his interest in the Company;

25  would not have agreed to the Arbitration Agreement; would not have agreed to have Mr.

26  Zarabi serve as arbitrator; and, would have placed greater restrictions and obligations on

27  the powers of any arbitrator, including without limitation a written requirement that the

28  Company be valued by an independent appraiser outside the family and that such

6

1  appraisal be distributed to the parties for comment before any decision in the arbitration
2  was reached.

3          22.     In or about, December 2000, as a result of the Arbitration Agreement, Fred
4  and Isaac entered into a settlement and resolution of their differences with Fred agreeing
5  to sell his shares to Isaac. Fred and Isaac executed a written "Agreement for Sale of
6  Stock," dated as of December 4, 2000, ("December 2000 Agreement") attached hereto as
7  Exhibit B. One of the factors in causing Fred to enter into the Agreement for Sale of
8  Stock was the fact that he had been fraudulently induced into entering into the Arbitration
9  Agreement.

10         23.     At the time Isaac agreed to have Mr. Zarabi arbitrate the value of the
11  Company and other issues, and at all relevant times thereafter, Isaac knew that he would
12  continue to conceal the existence of his and the Company's plans for the Bratz line from
13  Mr. Zarabi and Fred during the arbitration, and other financial information about the
14  Company, the result of which, Isaac knew and intended, would be a fraudulently
15  diminished value of Fred's shares from what they would be worth if all pertinent
16  financial information about the Company and its plans for the Bratz product line were
17  disclosed. Isaac entered into the arbitration with the intent to induce Fred to rely on his
18  presenting Mr. Zarabi with all material information about the Company and its finances
19  so as to allow Mr. Zarabi to determine a fair value for the Company. Fred did, in fact,
20  actually and reasonably rely on Isaac disclosing such material information in agreeing to
21  have Mr. Zarabi decide the value of the shares and other matters, and in executing the
22  "Arbitration Agreement".

23

24  **Fraud in the Conduct of the Ongoing Arbitration**

25         24.     Mr. Zarabi held various hearings and received financial and other
26  information about the Company in his role as arbitrator beginning in the Fall of 2000.
27  Isaac did not disclose to Fred the license the Company had obtained in September 2000
28  for the Bratz line, the plans the Company had to develop and distribute, or any other

7

1  actions the Company had already undertaken regarding, the Bratz product line and other

2  business opportunities, the true financial condition of the Company, or the other matters

3  alleged heretofore. Upon information and belief, during this period, Isaac did not

4  disclose to Mr. Zarabi the license the Company had obtained in September 2000 for the

5  Bratz line, the plans the Company had to develop and distribute, or any other actions the

6  Company had already undertaken regarding, the Bratz product line and other business

7  opportunities, the true financial condition of the Company, or the other matters alleged

8  heretofore.

9      25.  At the time Isaac agreed to have Mr. Zarabi arbitrate the value of the

10  Company and other issues, and at all relevant times thereafter, Isaac knew that he would

11  continue to conceal the existence of his and the Company's plans for the Bratz line from

12  Mr. Zarabi and Fred during the arbitration, and other financial information about the

13  Company, the result of which, Isaac knew and intended, would be a fraudulently

14  diminished value of Fred's shares from what they would be worth if all pertinent

15  financial information about the Company and its plans for the Bratz product line were

16  disclosed.  Isaac entered into the arbitration with the intent to induce Fred to rely on his

17  presenting Mr. Zarabi with all material information about the Company and its finances

18  so as to allow Mr. Zarabi to determine a fair value for the Company.  Fred did, in fact,

19  actually and reasonably rely on Isaac disclosing such material information in agreeing to

20  have Mr. Zarabi decide the value of the shares and other matters, and in agreeing to the

21  arbitration process.

22      26.  In or about, December 2000, as a result of the arbitration process,

23  Fred and Isaac entered into a settlement and resolution of their differences with Fred

24  agreeing to sell his shares to Isaac. Fred and Isaac executed a written Agreement for

25  Sale of Stock dated as of December 4, 2000 ("December 2000 Agreement") attached

26  hereto as Exhibit B. One of the factors in causing Fred to enter into the Agreement for

27  Sale of Stock was the fraud and facts set forth heretofore.

28  ///

8

1 **Fraud In the Agreement for Sale of Stock**

2    27.   At all relevant times herein and during the negotiation of the December

3 2000 Agreement, Isaac continued his fraudulent concealment and nondisclosure as set

4 forth herein of the Company's plans, assets and steps undertaken, regarding the Bratz

5 product line as well as other financial information regarding the Company. But for the

6 fraud, and had Plaintiff known of the true facts regarding the Company's plans, assets

7 and steps undertaken regarding the Bratz product line, the true financial information

8 about the Company and the other matters alleged heretofore, he would not have agreed to

9 sell his shares to Isaac under the terms of the December 2000 Agreement.

10

11 **Discovery of Fraud**

12    28.   In or about late spring and summer 2002, Plaintiff first became aware of

13 the true scope of the Company's extraordinary plans, efforts and history regarding the

14 Bratz product line and other financial information about the Company that had been

15 concealed from him by Isaac, as the license had been concealed from him. In or about

16 the spring and summer 2002, Isaac asked Fred to audit payments that were due to the

17 Company. In that audit, Fred discovered information, for the first time, that the Company

18 had been receiving or was expecting significant revenues based on the Bratz product line.

19    29.   Fred then asked Mr. Zarabi whether Isaac had disclosed that information to

20 Mr. Zarabi and/or any appraiser involved with the arbitration. Plaintiff was told by Mr.

21 Zarabi that Isaac had not provided him with such information. Plaintiff made a demand

22 that Mr. Zarabi rectify the situation, but to date nothing has been done. Thereafter,

23 Plaintiff made a demand that Isaac pay the fair market value of Plaintiff's share of the

24 company, but Isaac has failed and refused to do so.

25 ///

26 ///

27 ///

28 ///

9

VERIFIED COMPLAINT

EXHIBIT ___/___ PAGE ___/5___

## FIRST CAUSE OF ACTION

### (Fraud & Deceit in the Inducement of Arbitration Agreement)

30.   Plaintiff hereby reasserts and realleges Paragraphs 1 through 29 inclusive, as though set forth in full herein.

31.   In entering into the Arbitration Agreement, agreeing to participate in the arbitration process contemplated thereby, and offering to purchase Plaintiff's shares in the Company, Defendant knowingly made false representations of material fact to Plaintiff and/or concealed and/or failed to disclose material facts known to Defendant which he was under a duty to disclose to Plaintiff. Such facts specifically include, without limitation, his intentions regarding the information he was planning to conceal from the arbitrator, otherwise fail to disclose during the course of the arbitration process, and/or had already concealed from Plaintiff, concerning the true and accurate financial condition of the Company, its financial prospects, its business opportunities, and/or the Company's plans and actions already undertaken concerning the Bratz product line.

32.   Plaintiff actually, reasonably, and justifiably relied upon the false statements, concealments, and omissions of Defendant described above in agreeing to execute the Arbitration Agreement, participate in the arbitration process contemplated thereby, and sell his shares in the Company. Had Plaintiff known of the true facts, specifically including the true facts concerning Defendant's intentions regarding, without limitation, the information he was planning to conceal from arbitrator, otherwise fail to disclose during the arbitration process and/or already had concealed from Plaintiff concerning the true and accurate financial condition of the Company, its financial prospects, its business opportunities, and/or the Company's plans and actions already undertaken concerning the Bratz product line, Plaintiff would not have entered into the Arbitration Agreement, would not have agreed to participate in the arbitration process contemplated thereby, and would not have agreed to sell his shares of the Company.

33.   Defendant made the false representations, concealments and omissions alleged above with the intent to defraud Plaintiff and/or in reckless disregard of the truth

10

1  for purposes of inducing Plaintiff to execute the Arbitration Agreement, agree to

2  participate in the arbitration process contemplated thereby, and sell his shares in the

3  Company at a below fair market price.

4       34.     At all material times, Plaintiff was unaware of the falsity of the

5  representations and disclosures of Defendant as alleged above and believed them to be

6  true.  At all material times, Plaintiff was unaware of the material omissions, concealments

7  and misstatements of material facts by Defendant, and could not, in the exercise of

8  reasonable care, made himself aware of the falsity of such misrepresentations and

9  nondisclosures, or the existence of such omissions or concealments.

10      35.     As a direct and proximate result of the fraudulent conduct alleged above,

11 Plaintiff has been damaged, without limitation, in that he was fraudulently induced to

12 enter the Arbitration Agreement, participate in the arbitration process contemplated

13 thereby, sell his shares of the Company to Defendant at a below fair market price of less

14 than $9 million, and enter into the December 2000 sale agreement.  Plaintiff is entitled to

15 rescission of the September agreement to arbitrate, rescission of the December 2000 stock

16 sale agreement and restitution of his shares in the Company.  In the alternative, Plaintiff

17 is entitled to damages, the amount of such damage is not presently ascertainable, but will

18 be proven at trial.

19      36.     The conduct of Defendant as alleged above, was fraudulent, malicious,

20 oppressive, and despicable; has subjected Plaintiff to unjust hardship in conscious

21 disregard of his rights; and was done to vex, annoy, and harass Plaintiff so as to justify an

22 award of punitive damages against Defendant.

23

24              **SECOND CAUSE OF ACTION**

25              **(Breach of Fiduciary Duties)**

26      37.     Plaintiff hereby reasserts and realleges Paragraphs 1 through 36 inclusive,

27 as though set forth in full herein.

28 ///

11

38.     As alleged herein, as an officer, manager and major shareholder of the Company in which Plaintiff was a shareholder, and as Plaintiff's partner and joint venturer in the management and operation of the Company, and otherwise due to their family relationship, Defendant owed Plaintiff fiduciary duties of loyalty, honesty, care and fair dealing in all matters concerning the Company.

39.     At all times alleged herein, Plaintiff actually and reasonably reposed the highest trust and confidence in Defendant's loyalty, honesty, care, and fair dealing in all matters concerning the Company.

40.     Defendant repeatedly breached and violated such fiduciary duties owed Plaintiff by, among other things, failing to inform Plaintiff, without limitation, of the true and accurate financial condition of the Company, its financial prospects, its business opportunities, the Company's plans and actions already undertaken concerning the Bratz product line, and/or his intentions regarding the information he was planning to conceal from the arbitrator and others in the course of the arbitration process stemming from the Arbitration Agreement.

41.     Said breaches of fiduciary duties by Defendant have caused Plaintiff damage, including but not limited to damages resulting from the sale of his shares of the Company to Defendant at a below fair market price, in an amount not presently ascertainable, but which will be proven at the time of trial.

42.     The conduct of Defendant, as alleged above, was fraudulent, malicious, oppressive, and despicable; has subjected Plaintiff to unjust hardship in conscious disregard of his rights; and was done to vex, annoy, and harass Plaintiff so as to justify an award of punitive damages against Defendant.

## THIRD CAUSE OF ACTION

### (Fraud & Deceit in the Conduct of the Arbitration Process)

43.     Plaintiff hereby reasserts and realleges paragraphs 1 through 42, inclusive, as though set forth in full herein.

12

44.   In participating in the arbitration process contemplated by the Arbitration Agreement, Defendant knowingly made false representations of material fact and/or concealed and/or failed to disclose material facts known to Defendant which he was under a duty to disclose to the arbitrator and otherwise during the arbitration. Such facts specifically included, without limitation, information as to the true and accurate financial condition of the Company, its financial prospects, its business opportunities, and/or the Company's plans and actions already undertaken concerning the Bratz product lines.

45.   Plaintiff actually, reasonably, and justifiably relied upon the false statements, concealments, and omissions of Defendant described above in participating in the arbitration process contemplated by the Arbitration Agreement. Had Plaintiff known of the true facts, specifically including, without limitation, the scope of the information Defendant concealed from the arbitrator and otherwise not disclosed in the course of the arbitration process regarding the true and accurate financial condition of the Company, its financial prospects, its business opportunities, and/or the Company's plans and actions already undertaken concerning the Bratz product line, Plaintiff would not have participated in the arbitration process or agreed to sell his shares of the Company.

46.   Defendant made the false representations, concealments and omissions alleged above with the intent to defraud Plaintiff and/or in reckless disregard of the truth for purposes of inducing Plaintiff to participate in the arbitration process contemplated by the Arbitration Agreement and to sell his shares of the Company to Defendant at a below market price.

47.   At all material times, Plaintiff was unaware of the falsity of the representations and disclosures of Defendant as alleged above and believed them to be true. At all material times, Plaintiff was also unaware of the material omissions, concealments and misstatements of material facts by Defendant, and could not, in the exercise of reasonable care, made himself aware of the falsity of such misrepresentations and nondisclosures, or the existence of such omissions or concealments.

/ / /

13

48.     As a direct and proximate result of the fraudulent conduct alleged above, Plaintiff has been damaged in that he was fraudulently induced to participate in the arbitration contemplated by the Arbitration Agreement and sell his shares of the Company to Defendant at a below fair market price.  Plaintiff is entitled to rescission of the December 2000 stock sale agreement and restitution of his shares in the Company.  In the alternative, Plaintiff is entitled to damages, the amount of such damage is not presently ascertainable, but will be proven at trial.

49.     The conduct of Defendant, as alleged above was fraudulent, malicious, oppressive, and despicable; has subjected Plaintiff to unjust hardship in conscious disregard of his rights; and was done to vex, annoy, and harass Plaintiff so as to justify an award of punitive damages against Defendant.

## FOURTH CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing in the Arbitration Agreement)**

50.     Plaintiff hereby reasserts and realleges paragraphs 1 through 49, inclusive, as though set forth in full herein.

51.     The Arbitration Agreement contract executed by Plaintiff and Defendant contained an implied covenant of good faith and fair dealing which imposed the following, among others duties on Defendant: (a) a duty to act with honesty in fact in his performance under the agreement; (b) a duty of fair, open and honest disclosure to Plaintiff; (c) a duty to refrain from realizing secret gains at the expense of Plaintiff by connivance, deceit, suppression of facts, or other improper means; and (d) a duty to refrain from taking any action which would unfairly injure the rights of the Plaintiff or interfere in his ability to recognize his reasonable expectations under, and benefits of, the Agreement.

52.     By engaging in the conduct described above, specifically including, without limitation, concealing from the arbitrator and otherwise failing to disclose material facts

14

1   in the course of the arbitration process information regarding the true and accurate

2   financial condition of the Company, its financial prospects, its business opportunities,

3   and/or the Company's plans and actions already undertaken concerning the Bratz product

4   line, Defendant has breached his duties of good faith and fair dealing set forth above.

5      53.   At all times herein relevant, Plaintiff has performed and discharged all

6   covenants, conditions, and duties required of him under the Arbitration Agreement,

7   including all duties imposed by the covenant of good faith and fair dealing, except those

8   obligations, if any, which have been prevented by Defendant, those obligations Defendant

9   has waived by his words and/or conduct, or those obligations which Defendant is

10   estopped from asserting that Plaintiff has not performed as a result of Defendant's

11   conduct alleged herein.

12      54.   As a direct and proximate result of Defendant's actions and breaches as

13   alleged herein, Plaintiff has suffered, and continues to suffer damages in an amount as yet

14   unascertained but which will be established at trial.

15      55.   The conduct of Defendant, as alleged above, was fraudulent, malicious,

16   oppressive, and despicable; has subjected Plaintiff to unjust hardship in conscious

17   disregard of his rights; and was done to vex, annoy, and harass Plaintiff so as to justify an

18   award of punitive damages against Defendant.

19

20                          **FIFTH CAUSE OF ACTION**

21              **(Violation of California Corporations Code §§ 25401 and 25501)**

22      56.   Plaintiff hereby reasserts and realleges paragraphs 1 through 55, inclusive,

23   as though set forth in full herein.

24      57.   In committing the acts, omissions, and concealments alleged herein,

25   Defendant has violated California Corporations Code Section 25401 by, among other

26   things, offering to purchase a security in this State: (a) by means of written and/or oral

27   communications containing untrue statements of material facts, specifically including

28   untrue facts regarding the true and accurate financial condition of the Company, its

                                        15

1   financial prospects, its business opportunities, and/or the Company's plans and actions

2   already undertaken concerning the Bratz product line; and/or (b) omitting to state material

3   facts necessary in order to make statements made, in light of the circumstances when they

4   were first made, not misleading, specifically regarding the true and accurate financial

5   condition of the Company, its financial prospects, its business opportunities, and/or the

6   Company's plans and actions already undertaken concerning the Bratz product line.

7       58.   As a direct and proximate result of the acts and conduct of Defendant,

8   Plaintiff is entitled to rescission of the sale and restitution of his shares of the Company

9   or damages under California Corporations Code § 25501, in an amount as yet

10  unascertained but which will be established at trial, plus such other relief as pled herein.

11

12                          **SIXTH CAUSE OF ACTION**

13              **(Violation of California Corporations Code §§ 25402 and 25502)**

14      59.   Plaintiff hereby reasserts and realleges paragraphs 1 through 58 inclusive,

15  as though set forth in full herein.

16      60.   At all times alleged herein, Defendant was an officer of the Company, a

17  director of the Company, a controlling person of the Company, and/or a person whose

18  relationship with the Company provided him access, directly and indirectly, to material

19  information about the Company, within the meaning of California Corporations Code §

20  25402.

21      61.   At all times alleged, Defendant had access to, and had information about,

22  the Company not generally available to the public or to Plaintiff, which would

23  significantly affect the value, and fair market price of the shares, of the Company,

24  specifically including, without limitation, information regarding the true and accurate

25  financial condition of the Company, its financial prospects, its business opportunities,

26  and/or the Company's plans and actions already undertaken concerning the Bratz product

27  line.

28  ///

                                    16

1    62.    At all times herein alleged, Defendant knew such information regarding,

2  without limitation, the true and accurate financial condition of the Company, its financial

3  prospects, its business opportunities, and/or the Company's plans and actions already

4  undertaken concerning the Bratz product line, was not generally available to the public or

5  to Plaintiff, and was not intended to be available to the public or to Plaintiff.

6    63.    In committing the acts, omissions, and concealments alleged herein,

7  Defendant has violated California Corporations Code, Section 25402 by, among other

8  things, purchasing and offering to purchase from Plaintiff his shares of the Company at a

9  time when he knew of material, non-public, undisclosed information about the Company

10  gained from his status as an officer, director, controlling person, and individual with

11  access to such information regarding, without limitation, the true and accurate financial

12  condition of the Company, its financial prospects, its business opportunities, and/or the

13  Company's plans and actions already undertaken concerning the Bratz product line.

14    64.    As a direct and proximate result of the acts and conduct of Defendant,

15  Plaintiff is entitled to rescission of the sale and restitution of his shares of the Company

16  or damages pursuant to California Corporations Code § 25502 in an amount as yet

17  unascertained but which will be established at trial, plus such other relief as pled herein.

18

19                              **SEVENTH CAUSE OF ACTION**

20                    **(Fraud & Deceit Regarding the December 2000 Agreement)**

21    65.    Plaintiff hereby reasserts and realleges paragraphs 1 through 64 inclusive,

22  as though set forth in full herein.

23    66.    Prior to Plaintiff's entering into the December 2000 Agreement to sell

24  Plaintiff's stock in the Company to Defendant, Defendant knowingly made false

25  representations of material fact and/or concealed and/or failed to disclose material facts

26  known to Defendant which he was under a duty to disclose to Plaintiff.  Such facts

27  specifically included, without limitation, the true and accurate financial condition of the

28  ///

                                        17

1 │ Company, its financial prospects, its business opportunities, and/or the Company's plans
2 │ and actions already undertaken concerning the Bratz product line.

3 │     67.    Plaintiff actually, reasonably, and justifiably relied upon the false
4 │ statements, concealments, and omissions of Defendant described above in executing the
5 │ December 2000 Agreement and agreeing to sell his shares to Defendant. Had Plaintiff
6 │ known of the true facts, specifically including, without limitation, the facts concerning
7 │ true and accurate financial condition of the Company, its financial prospects, its business
8 │ opportunities, and/or the Company's plans and actions already undertaken concerning the
9 │ Bratz product line, Plaintiff would not have entered into the December 2000 Agreement,
10 │ or otherwise agreed to sell his shares in the Company at that time.

11 │     68.    Defendant made the false representations, concealments and omissions
12 │ alleged above with the intent to defraud Plaintiff and/or in reckless disregard of the truth
13 │ for purposes of inducing Plaintiff to execute the December 2000 Agreement and to sell
14 │ his shares in the Company to the Defendant at a below fair market price.

15 │     69.    At all material times, Plaintiff was unaware of the falsity of the
16 │ representations and disclosures of Defendant as alleged above and believed them to be
17 │ true. At all material times, Plaintiff was also unaware of the material omissions,
18 │ concealments and misstatements of material facts by Defendant, and could not, in the
19 │ exercise of reasonable care, made himself aware of the falsity of such misrepresentations
20 │ and nondisclosures, or the existence of such omissions or concealments.

21 │     70.    As a direct and proximate result of the fraudulent conduct alleged above,
22 │ Plaintiff has been damaged in that he was fraudulently induced to enter the December
23 │ 2000 Agreement calling for the sale of his shares of the Company at a below fair market
24 │ price. The amount of such damage is not presently ascertainable, but will be proven at
25 │ trial.
26 │ / / /
27 │ / / /
28 │ / / /

18

EXHIBIT ___/___ PAGE _24_

VERIFIED COMPLAINT

1    71.    The conduct of Defendant, as alleged above, was fraudulent, malicious,

2 oppressive, and despicable; has subjected Plaintiff to unjust hardship in conscious

3 disregard of his rights; and was done to vex, annoy, and harass Plaintiff so as to justify an

4 award of punitive damages against Defendant.

5

6                           **EIGHTH CAUSE OF ACTION**

7                           **(Negligent Misrepresentation)**

8    72.    Plaintiff hereby reasserts and realleges paragraphs 1 through 70 inclusive,

9 as though set forth in full herein.

10    73.    Prior to Plaintiff's entering into the December 2000 Agreement to sell

11 Plaintiff's stock in the Company, Defendant owed Plaintiff a duty of reasonable care

12 regarding, without limitation, the accuracy and honesty of the statements made regarding

13 the true and accurate financial condition of the Company, its financial prospects, its

14 business opportunities, and/or the Company's plans and actions already undertaken

15 concerning the Bratz product line.

16    74.    Defendant breached his duty to Plaintiff by making misrepresentations of

17 material facts, and by omitting and failing to disclose material facts, which he knew, or in

18 the exercise of reasonable care, should have known were inaccurate and which he was

19 under a duty to disclose to Plaintiff, specifically including, without limitation,

20 information concerning the true and accurate financial condition of the Company, its

21 financial prospects, its business opportunities, and/or the Company's plans and actions

22 already undertaken concerning the Bratz product line.

23    75.    Defendant made such misrepresentations and omissions concerning,

24 without limitation, the true and accurate financial condition of the Company, its financial

25 prospects, its business opportunities, and/or the Company's plans and actions already

26 undertaken concerning the Bratz product line with the intent to induce Plaintiff into

27 executing the December 2000 Agreement and selling his shares to Defendant at below

28 fair market value price.

03:P39T001.618                                        VERIFIED COMPLAINT

EXHIBIT _/_ PAGE _25_

1    76.    Plaintiff actually, reasonably, and justifiably relied upon the false

2  statements and omissions of Defendant described above in deciding to execute the

3  December 2000 Agreement and sell his shares in the Company to Defendant. Had

4  Plaintiff known of the true facts, specifically including, without limitation, the true and

5  accurate financial condition of the Company, its financial prospects, its business

6  opportunities, and/or the Company's plans and actions already undertaken concerning the

7  Bratz product line, Plaintiff would not have entered into the December 2000 Agreement,

8  or otherwise agreed to sell his shares in the Company at that time.

9    77.    As a direct and proximate result of the negligent conduct alleged above,

10  Plaintiff has been damaged in that he was improperly induced to enter the December

11  2000 Agreement and sold his shares of the Company at a below fair market price. The

12  amount of such damage is not presently ascertainable, but will be proven at trial.

13

14                  **NINTH CAUSE OF ACTION**

15            **(Unfair Competition in Violation of California
Business & Professions Code §§ 17200 et seq.)**

16

17    78.    Plaintiff hereby reasserts and realleges paragraphs 1 through 77 inclusive,

18  as though set forth in full herein.

19    79.    California Business and Professions Code §§ 17200 et seq. proscribes, in

20  part, "any unlawful, unfair, or fraudulent business practice."

21    80.    By virtue of the conduct alleged above, Defendant has committed unlawful,

22  unfair, and/or fraudulent business practices with regard to his dealings with Plaintiff.

23    81.    As a direct and proximate result of Defendant's violations Business and

24  Professions Code §17200 et seq. alleged above, Plaintiff has been harmed and is entitled

25  to restitution of the amounts to which he has been unjustly harmed, and Defendant

26  unjustly enriched, and other relief as pled herein.

27  ///

28  ///

03:P391001.618                  EXHIBIT __/__ PAGE _26_           VERIFIED COMPLAINT

1

**TENTH CAUSE OF ACTION**

2

**(Rescission Based on Mistake)**

3      82.    Plaintiff hereby reasserts and realleges paragraphs 1 through 81, inclusive,

4 as though set forth in full herein.

5      83.    In entering into both the Arbitration Agreement and the December 2000

6 Agreement, Plaintiff was mistaken in his belief that Defendant planned to inform the

7 arbitrator, and otherwise to disclose during the course of the arbitration proceeding,

8 and/or had already had disclosed to Plaintiff, without limitation true and accurate

9 information concerning the financial condition of the Company, its financial prospects, its

10 business opportunities, and/or the Company's plans and actions already undertaken

11 concerning the Bratz product line.

12      84.    The disclosure of true and accurate information to Plaintiff and to the

13 arbitrator concerning, without limitation, the financial condition of the Company, its

14 financial prospects, its business opportunities, and/or the Company's plans and actions

15 already undertaken concerning the Bratz product line was a basic assumption on which

16 the Arbitration Agreement and/or the December 2000 Agreement rested.

17      85.    Defendant's failure to accurately disclose true and accurate information to

18 Plaintiff and to the arbitrator regarding, without limitation, the financial condition of the

19 Company, its financial prospects, its business opportunities, and/or the Company's plans

20 and actions already undertaken concerning the Bratz product line had a such material

21 effect on the Arbitration Agreement and/or the December 2000 Agreement that

22 enforcement of either agreement against Plaintiff would be unfair and unconscionable.

23      86.    Defendant both knew about, and was the cause of, Plaintiff's mistake in

24 believing Defendant would accurately disclose to Plaintiff and to the arbitrator, without

25 limitation, true and accurate information regarding the financial condition of the

26 Company, its financial prospects, its business opportunities, and/or the Company's plans

27 and actions already undertaken concerning the Bratz product line at the time Plaintiff

28 executed those agreements.

21

87.    Plaintiff did not bear the risk of Defendant's entering into the Arbitration Agreement and/or the December 2000 Agreement without disclosing to Plaintiff and to the arbitrator, without limitation, true and accurate information regarding the financial condition of the Company, its financial prospects, its business opportunities, and/or the Company's plans and actions already undertaken concerning the Bratz product line.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

### ON THE FIRST AND SECOND CAUSES OF ACTION

1.    For rescission of the Arbitration Agreement;

2.    For rescission of Plaintiff's sale of his shares in the Company;

3.    For restitution of Plaintiff's shares in the Company;

4.    In the alternative of rescission of the sale of shares and restitution, for damages according to proof;

5.    For punitive damages in an amount necessary to punish the Defendant, to the extent permitted by law.

6.    For attorneys fees and cost of suit.

7.    For interest at the maximum rate allowed by law.

8.    For such other and further relief the Court may deem just, equitable, and/or proper.

### ON THE THIRD AND SEVENTH CAUSES OF ACTION

1.    For rescission of Plaintiff's sale of his shares in the Company;

2.    For restitution of Plaintiff's shares in the Company;

3.    In the alternative of rescission of the sale of shares and restitution, for damages according to proof;

4.    For punitive damages in an amount necessary to punish the Defendant, to the extent permitted by law.

22

03:P391001.618                                                                    VERIFIED COMPLAINT

EXHIBIT _/_ PAGE _28_

1      5.    For attorneys fees and cost of suit.

2      6.    For interest at the maximum rate allowed by law.

3      7.    For such other and further relief the Court may deem just, equitable, and/or

4  proper.

5

6                    **ON THE FOURTH AND EIGHTH CAUSES OF ACTION**

7      1.    For damages according to proof;

8      2.    For attorneys fees and cost of suit.

9      3.    For interest at the maximum rate allowed by law.

10     4.    For such other and further relief the Court may deem just, equitable, and/or

11  proper.

12

13                    **ON THE FIFTH AND SIXTH CAUSES OF ACTION**

14     1.    For rescission of Plaintiff's sale of his shares in the Company;

15     2.    For restitution of Plaintiff's shares in the Company;

16     3.    In the alternative of rescission of the sale of shares and restitution, for

17  damages according to proof;

18     4.    For attorneys fees and cost of suit.

19     5.    For interest at the maximum rate allowed by law.

20     6.    For such other and further relief the Court may deem just, equitable, and/or

21  proper.

22

23                        **ON THE NINTH CAUSE OF ACTION**

24     1.    For restitution in an amount necessary to restore to Plaintiff the amount by

25  which Defendant has been unjustly enriched by means of the unlawful, unfair, and

26  fraudulent acts alleged above.

27     2.    For attorneys fees and cost of suit.

28     3.    For interest at the maximum rate allowed by law.

                                            23

1     4.    For such other and further relief the Court may deem just, equitable, and/or

2   proper.

3

4                    **ON THE TENTH CAUSE OF ACTION**

5     1.    For rescission of Plaintiff's sale of his shares in the Company;

6     2.    For restitution of Plaintiff's shares in the Company;

7     3.    For attorneys fees and cost of suit.

8     4.    For interest at the maximum rate allowed by law.

9     5.    For such other and further relief the Court may deem just, equitable, and/or

10   proper.

11

12                    **DEMAND FOR JURY TRIAL**

13        Plaintiff hereby demands a trial by jury herein on all causes of action so triable.

14

15   DATED: August _25_, 2003                    HOWARTH & SMITH
                                                 DON HOWARTH
16                                               SUZELLE M. SMITH
                                                 BRIAN D. BUBB
17                                               ROBERT D. BRAIN

18

19                                               By: _Don Howarth_
                                                      Don Howarth
20
                                                 Attorneys for Plaintiff
21                                               Farhad Larian

22

23

24

25

26

27

28

                                24

1

<u>**VERIFICATION**</u>

2      I, Farhad Larian, declare:

3      I am a party to this action, and I certify and declare that I have read the foregoing

4    **VERIFIED COMPLAINT** and know its contents thereof.  The same is true of my own

5    knowledge, except as to those matters which are therein alleged on information and

6    belief, and as to those matters, I believe them to be true.

7      I declare under penalty of perjury under the laws of the State of California that this

8    Verification was executed on August **22**, 2003, at Los Angeles, California and that the

9    foregoing is true and correct.

10

11                             _Farhad Larian_ (signature)

12                                    Farhad Larian

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

03:P590001.618                                                **VERIFICATION**

EXHIBIT _1_ PAGE _31_

## AGREEMENT TO ARBITRATE AND SELECTION OF ARBITRATOR

This Agreement is made between Isaac Larian ("Isaac"), Farhad Larian ("Farhad") and
Morad Zarabi ("Morad") pursuant to the following recitals, terms and conditions.

A.  Isaac and Farhad each own a 45% shareholder interest in ABC Int'l Traders Inc., a
California corporation ("Corporation").

B.  Disputes have arisen between Isaac and Farhad concerning the continuing
operation of the Corporation and other matters such as partnerships. Isaac and
Farhad have been unable to resolve their disputes and desire to conclude their
disputes in an economical and timely manner, outside of the formal judicial process.

C.  Both Isaac and Farhad have great confidence in the business and personal judgment
of Morad and desire to utilize the services of Morad as a binding arbitrator of the
disputes between Isaac and Farhad.

D.  As an accommodation to Isaac and Farhad, Morad agrees to undertake the position
as arbitrator.

Now Therefore, the parties agree as follows:

1.  Isaac and Farhad irrevocably appoint Morad to arbitrate their disputes with
respect to the Corporation, its operation and their shareholder interests in
the Corporation, and other disputes.

2.  Upon execution of this Agreement, Isaac and Farhad shall deliver their
irrevocable shareholder proxy and share certificates to Morad so that
Morad may vote their shares of Corporation as Morad so determines,
including the voting for positions on the Board of Directors.

3.  Upon execution of this Agreement, Isaac and Farhad shall each deliver to
Morad their personal check in the amount of $500,000.00 payable to the
other, to be utilized as a down payment of the purchase price as determined
in Section 5 of this Agreement for the Sale of either Isaac's or Farhad's
shares of the Corporation to the other.

4.  Isaac and Farhad shall present their arguments and concerns to Morad in a
manner as determined by Morad. Evidence may be admitted or excluded in
the sole discretion of Morad. Morad shall then render his decisions with
respect to the disputes and said decisions shall be binding and conclusive
upon Isaac and Farhad.

5.  In rendering his decisions, Morad has the right and power to determine,
among other issues, whether either Isaac or Farhad will have to sell his
shares of Corporation to the other and the purchase price and terms of
payment for said shares; setting the salaries of Isaac and Farhad; and the
continuation of employment by the Corporation of either Isaac or Farhad.



000150

Exhibit 3
Page 1 of 2

EXHIBIT 2 PAGE 32

# EXHIBIT 2

6.  Isaac and Farhad agree to be bound by the terms of Morad's decisions and to implement the terms of Morad's decisions in the time parameters as established by Morad.

7.  Isaac and Farhad acknowledge that Morad has agreed to perform such services as arbitrator as an accommodation to Isaac and Farhad. Isaac and Farhad agree to hold Morad harmless and to indemnify Morad from any cost, liability, suit, claim, damage or judgment, including court costs and reasonable attorneys' fees arising out of or relating to this Agreement and the decisions made by Morad pursuant to the terms of this Agreement.

8.  Isaac and Farhad agree to pay equally the costs and expenses of Morad incurred by him, including his attorneys' fees, in drafting and implementing the terms of this Agreement and performing his responsibilities herein.

9.  Isaac and Farhad agree and intend hereby that Morad's decisions will constitute a full and final resolution of all disputes, past or present, between Isaac and Farhad concerning the Corporation, its operation their shareholder interests in Corporation, and other disputes.

10. Any judgment or award rendered by Morad may be entered in any Court having jurisdiction over the disputes between Isaac and Farhad.

11. To the extent not otherwise provided by this Agreement or determined by Morad, the rules governing the arbitration and enforcement of the arbitration award shall be governed by the California Arbitration Act, California Code of Civil Procedure, Section 1280 et seq.

Dated: SEP. 28, _____, 2000

ISAAC LARIAN                FARHAD LARIAN                MORAD ZARABI



000151

Exhibit 3
Page 2 of 2

EXHIBIT 2 PAGE 33

# EXHIBIT 3

## DECLARATION OF FARHAD "FRED" LARIAN

I, FARHAD LARIAN declare as follows:

1.      I am over the age of 18 and have personal knowledge of the facts herein and could and would competently testify thereto.

2.      By 1999, I had been business partners with my brother, Defendant Isaac Larian ("Isaac"), for over 20 years. Our company ABC International Traders, Inc. (subsequently renamed by Isaac MGA Entertainment, Inc.) designs, licenses, imports and distributes toys worldwide.

3.      Some time before September 2000, Isaac came upon a very lucrative business opportunity for the company – becoming the exclusive distributor of a new line of dolls called "Bratz." Isaac secretly negotiated for and on September 18, 2000, secretly finalized and obtained a worldwide license agreement making Isaac and the company the exclusive worldwide distributor of Bratz dolls and related products. (Attached hereto as Exhibit A is a true and correct copy of the Carter Bryant License Agreement. The signed version is in the possession of Isaac Larian.)

4.      Just ten days later, on September 28, 2000, Isaac fraudulently induced me into signing the Arbitration Agreement that is the subject of the First Cause of Action, without disclosing the Bratz opportunity and license. Based on newspaper articles, the Bratz product line has already generated several hundred million dollars in revenues for the company and is expected soon to earn more than $1 billion annually for the company.

5.      At the time Isaac sought my consent to the arbitration agreement, Isaac had managed to conceal from me his obtaining the Bratz license and other material information about the Company, and also hid from me his intention to continue to conceal such information during the arbitration.

6.      Isaac's goal was to use the arbitration process to award him my equity interest in the Company at a severely undervalued price. Believing that Isaac had already disclosed to me, and would continue to disclose during the arbitration, all material financial information about the Company, and that there was nothing unknown to me that would affect the price of my stock, I

///

AA 154

1

EXHIBIT 3 PAGE 34

signed a written "Agreement to Arbitrate" dated September 28, 2000, ("Arbitration Agreement"), which, *inter alia*, appointed our Uncle, Mr. Morad Zarabi, as the arbitrator.

7.     During the course of the few meetings that were held pursuant to the Arbitration Agreement, Isaac continued to keep from me, and kept from Mr. Zarabi, the information he knew about the execution of the Bratz license agreement, and other vital material and financial information affecting the Company. This claim is set out in my Fourth Cause of Action for Fraud and Deceit in the Conduct of the Arbitration process.

8.     During the course of the arbitration hearings, which were halted without an award being issued, Isaac and I negotiated a resolution of our differences, which resulted in my selling my shares to Isaac under a written "Agreement for Sale of Stock" dated December 4, 2000, ("Stock Sales Agreement").

9.     I uncovered the truth about Isaac's fraud in the middle of 2002, and thereafter brought this suit.

10.     On August 25, 2003, I filed a Verified Complaint alleging ten common law and statutory causes of action. The 10 causes of action alleged in the Verified Complaint are: (1) Fraud and Deceit in the Inducement of the Arbitration Agreement; (2) Beach of Fiduciary Duties; (3) Fraud and Deceit in the Conduct of the Arbitration process; (4) Breach of the Implied Covenant of Good Faith and Fair Dealing; (5) Violation of Corporations Code §§ 25401, 25501; (6) Violation of Corporations Code §§ 25402, 25502; (7) Fraud and Deceit in the Inducement of the December 2000 Agreement; (8) Negligent Misrepresentation; (9) Violation of Business and Professions Code § 17200 et seq.; and (10) Rescission based on Mistake. I hereby reaffirm and incorporate by reference as though set out in full herein each and every statement therein.

11.     The principal allegation of the pending suit, set forth in the First Cause of Action, is that I was fraudulently induced by Isaac into executing the Arbitration Agreement. That is, Isaac tricked me into agreeing to arbitration, knowing that he had already concealed, and would continue to conceal during the arbitration process, the company's license for the Bratz product line and other material financial information about the company, thereby misrepresenting to me the value of Arbitration Agreement among other things. Had I known of this concealed     AA 155

2

information, I would not have agreed to the arbitration or to any of the negotiations flowing from it and instead would have kept my shares in the company. (See Verified Complaint ¶ 32)

12. As plainly stated in my Verified Complaint under the heading "Fraud Regarding the Arbitration Agreement"

> "21. At all times before and up through the execution of the Arbitration Agreement and for some considerable time thereafter, Fred was unaware of the true facts regarding the new business opportunities and Bratz line of products, was unaware of the true financial condition of the Company, and was unaware of the intention of Isaac to conceal such material information from him and from the arbitrator and him during the arbitration process. **Had Fred been aware of the new business opportunities, the Bratz line of products**, the true financial condition of the Company, and/or the plans of Isaac to conceal such material information from him and from the arbitrator, **he would not have agreed to enter into the arbitration process for the sale of his interest in the Company; would not have agreed to the Arbitration Agreement; would not have agreed to have Mr. Zarabi serve as arbitrator . . . ."** Verified Complaint ¶ 21 (emphasis added in bold.)

13. In my Second Cause of Action, I allege breach of fiduciary duty against Isaac, alleging that Isaac breached duties of "honesty, loyalty, care and fair dealing" in keeping material financial information from me, his co-fiduciary, during the course of our partnership in running the business. (Verified Complaint ¶¶ 37-42)

14. As separate claims, I have also alleged Fraud & Deceit in the Conduct of the Arbitration Process, alleging that Isaac deliberately chose not to provide material financial information during the course of the aborted arbitration hearings (Verified Complaint ¶¶ 43-49); and have alleged Fraud & Deceit in the Inducement of the Stock Sales Agreement, pleading that Isaac withheld information about the Bratz product line and other financial issues when we negotiated the Stock Sales Agreement. (Verified Complaint ¶¶ 65-71).

15. Isaac moves to compel arbitration, arguing the claims alleged in the verified complaint are covered by the written arbitration agreement between us and have been submitted to the arbitrator for decision. Notice of Motion to Compel p.2 lns.8-11. My claim is not covered by and I have not submitted the issue of Isaac's fraudulent inducement into execution of the Arbitration Agreement for resolution in an arbitral forum.

/ / /

/ / /

AA 156

3

01-P42.7001.618

EXHIBIT 3 PAGE 36

16.     Isaac misrepresents my claim when he states: "Here, plaintiff's allegations do not that plaintiff's consent to have his disputes decided by arbitration was induced by fraud." exactly what I allege in my First Cause of Action, entitled "Fraud & Deceit in the ment of Arbitration Agreement" (Verified Complaint p. 10). The allegations of the Complaint make it plain that my principal contention in the First Cause of Action is that fraudulently obtained my consent to the Arbitration Agreement by concealing and holding of material financial information about the company. (Verified Complaint ¶¶ 19-20)

17.     There was never any award by any arbitrator. Isaac suggests that I "submitted fraud claims to the arbitrator for decision on January 26, 2003" and that this court should end it to arbitration. I never asked for any arbitrator to decide my claim that *I was fraudulently induced into entering into the Arbitration Agreement and therefore the Arbitration ment should be set aside*. Nowhere do I allege in my Verified Complaint that I submitted issue of whether I was fraudulently induced into the Arbitration Agreement to an arbitrator. the demurrer, Isaac suggests that because I asked Morad to "rectify the situation" that the plaint supports Isaac's assertion that the fraud-in-the-inducement of the Arbitration ment has been submitted to arbitration. (Verified Complaint ¶. 29) I have not.

18.     In the motion to compel arbitration, Isaac states there was a "one-day hearing" and mitted a list of issues to the arbitrator. In fact, the so-called one-day hearing, was about an or two discussion. I never asked Uncle Morad to decide the issue of whether I had been fraudulently induced by Isaac into entering the Arbitration Agreement and whether it should be aside.

19.     Isaac suggests that the following written statement forms the basis to find that all claims were submitted to the arbitrator:

> "The December 2000 appraisal of MGA, which the arbitrator relied upon to
> establish the value of MGA, was substantially understated as a result of Isaac
> Larian's concealment of the Bratz doll license agreement. That license agreement
> was material to the value of MGA but was not considered in setting MGA's value
> because of the concealment from the arbitrator." Motion To Compel Ex. C.     AA 157

EXHIBIT  3  PAGE  37

20.     The request submitted to Mr. Zarabi dealt only with Isaac's failure to come forward with information *as part of the arbitration process*, and *not* whether there was fraudulent inducement in September 2000 of my consent to the Arbitration Agreement.   When I found out that Isaac had failed to disclose material information to the arbitrator, the first thing I did was to find out if such information had been disclosed and then told the arbitrator.   Absolutely nothing in that  statement suggests that I had asked the arbitrator to *set aside the Arbitration Agreement altogether because it had been induced by fraud.*  And certainly, it does not say that all fraud claims are to be submitted to arbitration.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this *1* day of November, 2003 at Los Angeles, California.


FARHAD LARIAN


AA 158

OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

EXHIBIT __3__ PAGE _38_

# EXHIBIT 4

## DECLARATION OF MORAD ZARABI

I, Morad Zarabi, hereby declare:

1.     I am the uncle of Plaintiff Farhad Larian and Defendant Isaac Larian. I served as their arbitrator from 2000 to the present. The facts set forth in this Declaration are of my own personal knowledge, and if called as a witness, I could and would testify competently thereto.

2.     This Declaration is filed in opposition to Plaintiff Farhad Larian's Motion to Compel Production of Documents of Ernest Dutcher.

3.     In September, 2000, I was selected as the arbitrator to arbitrate a dispute which had arisen between Farhad and Isaac concerning their joint ownership in ABC International Traders, Inc. ("ABC" herein). I was expressly authorized to determine whether either Farhad or Isaac was to sell his shares to the other and the purchase price and terms of payment for the shares.

4.     Beginning in Fall of 2000, I gathered financial and other information and held hearings in my role as arbitrator. I engaged the services of National Business Appraisers, LLC ("National Business" herein) for the purpose of providing me with a valuation of ABC.

5.     In December, 2000, I rendered my decision which was embodied in a written Agreement for Sale of Stock dated December 4, 2000. As reflected in the Sale Agreement, Farhad was to be seller and Isaac was to be buyer, the price was to be $8,775,000.00, payable $500,000.00 at the closing, with a promissory note in the amount of $8,275,000.00.

6.     In Summer of 2002, Farhad alleged that Isaac concealed from Farhad and myself certain facts pertaining to a product line of ABC called the "Bratz doll," which allegedly was of great value and would have justified a substantially higher price for Farhad's shares.

7.     Thereafter, I began gathering financial and other information from Farhad and Isaac. In early 2003, I again engaged the services of National Business for the purpose of providing me, for my consideration and review in connection with my duties as arbitrator, with a valuation of ABC based upon information that I gathered in 2002.

8.     On or about February 7, 2003, I met with Farhad and Isaac to discuss the issues. I heard arguments from both sides and took the matter under submission. Prior to me rendering my decision, Farhad filed this instant action with the Court. I remain willing and able to

C:\Data\Febna Larian\International Trader - Litigation\Opposition.wpd                    9

EXHIBIT  4  PAGE 39

HS 01285

Sep-15-2004  12:35pm   F   WARTH
ivar ayers & Goldberg                                8197583049

T-371   P.013/013   F-923

T-249   P.003/003   F-898

1   continue with my duties as arbitrator should the Court ultimately decide that the dispute be

2   arbitrated.

3       I declare under penalty of perjury, pursuant to the State of California, that the foregoing

4   is true and correct, and that this Declaration was executed on this _14_ day of September, 2004,

5   at Encino, California.

6

7

8                     MORAD ZARABI

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C:\Documents Litigation\International Trader - Litigation\Opposition.wpd       10

09/14/2000 15 44 FAX

@003/003

EXHIBIT __4__ PAGE __40__

HS 01286