# EXHIBIT 5

AGREEMENT FOR SALE OF STOCK

This Agreement, made this 4TH day of December, 2000, by and between Farhad Larian ("SELLER"), and Isaac Larian ("BUYER").

Whereas, the SELLER is the owner of 10,000,000 shares of common stock of ABC International Traders Inc., a California corporation and 450 shares of MGA Entertainment Hong Kong Limited, a Hong Kong Corporation (collectively "CORPORATION"), with offices at 16730 Schoenborn Street, North Hills, California 91343-6122, and desires to sell to the BUYER, and the BUYER desires to purchase from the SELLER, these 10,000,000 and 450 shares of common stock of CORPORATION.

Now, therefore, in consideration of the promises and of the mutual covenants and agreements herein contained, the parties hereto hereby agree as follows:

1. At Closing, as defined hereinafter, SELLER shall sell, transfer and convey to BUYER and BUYER shall purchase from SELLER, SELLER'S 10,000,000 and 450 shares of common stock of CORPORATION.

2. The purchase price for said shares shall be the sum of Eight Million Seven Hundred Seventy Five Thousand Dollars ($8,775,000.00), payable as follows:

a. The sum of $500,000.00 at Closing, as defined hereinafter; plus

b. The sum of $8,275,000.00 evidenced by BUYER'S promissory note made payable to SELLER, in the form as attached hereto as Exhibit "A" and incorporated herein by reference. Said promissory note shall provide for a principal payment in the amount of $2,000,000.00, with interest at nine and one-half percent on or before April 15, 2001 and the remainder of the principal balance amortized in equal monthly payments of principal and interest over 120 months at an annual interest rate of nine and one-half percent commencing June

1

Exhibit 5
Page 1 of 25

EXHIBIT 5 PAGE 41

1, 2001. The promissory note shall also provide that, in the event of default, BUYER agrees that SELLER'S personal residence located at 237 North Carolwood Drive, Los Angeles, CA shall be exempt from lien or attachment.

3.  BUYER agrees to secure his promissory note obligation to SELLER as follows:

BUYER shall execute a Pledge Agreement in favor of SELLER in the form as attached hereto as Exhibit "B" and incorporated herein by reference.  Said Pledge Agreement shall be for the purposes of securing BUYER'S total shareholder interest in CORPORATION in favor of SELLER until such time as BUYER'S obligations pursuant to his promissory note in favor of SELLER has been paid in full.  Said Pledge Agreement shall have restrictions imposed upon BUYER with respect to the amount of compensation paid to BUYER from CORPORATION during the period of time that BUYER'S promissory note in favor of SELLER remains outstanding.

4.  In addition to the purchase price as above stated, BUYER shall cause ABC International Traders Inc. to enter into a Consultation Agreement with BUYER in the form as attached hereto as Exhibit "C" and incorporated herein by reference.

5.  SELLER warrants and represents to the BUYER the following:

a.  That CORPORATION is a corporation duly organized, validly existing, and in good standing under the laws of California or Hong Kong, respectively, has all necessary corporate powers to own its properties and carry on its business as now owned and operated by it.

b.  That SELLER is the owner of and has the good and marketable title to the 10,000,000 shares and 450 shares, respectively, of stock agreed to be sold herein, representing 45% of the issued and outstanding shares of CORPORATION, and each of them, free of all encumbrances, liens and security interests.

2

000154

Exhibit 5
Page 2 of 25

EXHIBIT __5__ PAGE __42__

c. That the authorized capital stock of CORPORATION consists of 100,000,000 shares and 1,000 shares respectively of common stock no or nominal par value, of which 22,200,000 shares of ABC International Traders Inc. are presently issued and outstanding and 1,000 shares of MGA Entertainment Hong Kong Limited are presently issued and outstanding.

d. That any right of first refusal, stock option or any other agreement wherein SELLER has the right to purchase shares of CORPORATION is hereby terminated.

6. BUYER acknowledges that he is a current shareholder of CORPORATION, has been the President and a Director of CORPORATION; and an employee of CORPORATION for at least 18 years for ABC International Traders Inc. and at least 7 years for MGA Entertainment Hong Kong Limited, since the inception of CORPORATION. BUYER is thoroughly familiar with the operations of CORPORATION and purchases the shares of CORPORATION from SELLER with full knowledge of the business, prospects, liabilities, obligations, nature and salability of inventory, collectability of accounts receivable, condition of furniture, fixtures and equipment, and financial condition of CORPORATION. SELLER makes no warranty, either express or implied as to the business of CORPORATION, its prospects, liabilities, obligations, nature and salability of inventory, collectability of accounts receivable, condition of furniture, fixtures and equipment, or financial condition.

7. The consummation of the transaction contemplated by this Agreement ("Closing") shall take place at the offices of the CORPORATION on the 2nd day of January 2001, at 10:00 a.m., or such other time and place as the parties may agree. The sale shall be effective as of the close of business on December 31, 2000, the end of the calendar and fiscal year of CORPORATION. At the Closing the

3

Exhibit 5
Page 3 of 25

000155

EXHIBIT 5 PAGE 43

following documents and instruments shall be exchanged between the parties:

    a.  SELLER shall deliver to BUYER:

    (i).  CORPORATION'S share certificate number 3 issued in favor of SELLER representing 10,000,000 shares of ABC International Traders Inc.; and share certificated number 2 issued in favor of SELLER representing 450 shares of MGA Entertainment Hong Kong Limited, duly endorsed by SELLER in favor of BUYER.

    (ii).  The resignation of SELLER as a Director and employee of CORPORATION.

    (iii).  Any and all records of CORPORATION in the possession of SELLER.

    (iv).  A Pledge Agreement executed by SELLER as the secured party in the form as attached hereto as Exhibit "B".

    (v).  A Consultation Agreement executed by SELLER in the form as attached hereto as Exhibit "C".

    (vi).  A Mutual Release executed by SELLER in the form as attached hereto as Exhibit "D".

    b.  BUYER shall deliver to SELLER:

    (i).  Cash in the sum of $500,000.00 in the form of a cashier's check, certified check or wired funds.

    (ii).  BUYER'S Promissory Note in the amount of $8,275,000.00 made payable to SELLER in the form as attached hereto as Exhibit "A".

    (iii).  A Pledge Agreement executed by BUYER as the securing party in the form as attached hereto as Exhibit "B".

    (iv).  A Consultation Agreement executed by ABC International Traders Inc. in the form as attached hereto as Exhibit "C".

    (vi).  A Mutual Release executed by BUYER in the form as attached

4

Exhibit 5
Page 4 of 25

EXHIBIT _5_ PAGE _44_

hereto as Exhibit "D".

8. The parties acknowledge that differences have arisen between them concerning the continued management and operation of CORPORATION, to the extent that the continued successful operation of CORPORATION is threatened unless one of the parties purchases the other party's shareholder interest. The parties have each sought the assistance of Morad Zarabi ("Morad") as an "arbitrator" to determine the seller and buyer between the parties, the purchase price and the terms of the purchase. The parties previously executed an Agreement To Arbitrate And Selection of Arbitrator setting forth their agreement in this regard. Morad has determined the purchase price and terms of payment from consultations with each of the parties and by undertaking his own outside independent research as to the value of CORPORATION. Morad shall not charge a fee for his services rendered herein. The costs and expenses of Morad, including appraisal costs and attorneys' fees incurred by Morad in drafting this Agreement, the various Exhibits attached hereto and the Agreement To Arbitrate And Selection of Arbitrator shall be paid by the CORPORATION at time of closing. The parties acknowledge that Morad agreed to undertake his duties as arbitrator as an accommodation to the parties. Each of the parties agrees to indemnify Morad, his associates, employees, consultants, lawyers, family members and all other persons employed or consulted by Morad in connection with the consummation of this Agreement or the Agreements or other documents attached as Exhibits hereto, and hold him and them harmless from any suit, claim, liability, loss, expense or damage, including court costs and reasonable attorneys' fees, as a result Morad's actions as arbitrator or any other actions concerning the drafting or implementation of this Agreement or the Agreements or other documents attached as Exhibits hereto.

5

Exhibit 5
Page 5 of 25

EXHIBIT 5 PAGE 45

9. Except as otherwise provided in this Agreement, any controversy between the parties arising out of this Agreement or the Agreements contained in the Exhibits attached hereto shall be submitted to Morad who shall serve as sole arbitrator with respect to said disputes. The decision of Morad shall be final and binding upon both parties. In the event Morad is unavailable to so act, then Kambiz Zarabi shall serve as arbitrator. Any arbitrator may appoint another person or entity to arbitrate, either currently or prospectively, in the event that both named arbitrators herein are unable to so act.

10. The parties acknowledge that this Agreement, the Agreements attached hereto as Exhibits, and the Agreement To Arbitrate And Selection Of Arbitrator were drafted at the request of and on behalf of Morad by his attorneys, Stern & Goldberg. The parties each acknowledge that Stern & Goldberg does not represent either party to this Agreement. The parties have each been advised to seek legal counsel of their choice to represent their respective interests prior to entering into this Agreement and the Agreements attached hereto as Exhibits. Each party shall have three business days from the date of signing this Agreement to consult with legal counsel of his choice concerning the terms and conditions of this Agreement. Either party may terminate this Agreement without any further liability thereon, except to the extent such liability arises under the Agreement To Arbitrate And Selection of Arbitrator previously signed by the parties, in the event he notifies Morad and the other party in writing of his intent to do so within three business days from the signing of this Agreement. In the event no such written notification has been given, it shall be assumed that each party has chosen either to have this Agreement reviewed by legal counsel of his choice and no objections to the form and content of this Agreement has been made; or said party has decided, in its unilateral discretion despite repeated warnings by

6

Exhibit 5
Page 6 of 25

EXHIBIT 5 PAGE 46

Morad and his attorney to seek such independent legal review, not to seek such legal advice. The parties have initialed this section hereinafter indicating their knowledge of the provisions of this Section.

11. The parties agree that, to the extent required, the transfer of shares as contemplated by this Agreement will have been qualified with the California Commissioner of Corporations in accordance with the California Corporate Securities Law and the Commissioner's Rules and Regulations; and the appropriate Hong Kong governmental authorities, respectively. The parties agree to utilize their best efforts and timely file any applications, consents or notices to secure the Commissioner's and/or Hong Kong authorities consent to the transfer of shares as contemplated herein.

12. Each party represents and warrants that it has dealt with no broker or finder in connection with any transaction contemplated by this Agreement, and as far as it knows, no broker or other person is entitled to any commission or finder's fee in connection with any of these transactions. Each party will indemnify and hold one another harmless against any loss, liability, damage, cost, claim, or expense incurred by reason of any brokerage commission or finder's fee alleged to be payable because of any act, omission, or statement of the indemnifying party.

13. The parties intend that this Agreement and the parties timely compliance with the terms hereof shall resolve and settle all of the claims of either party against the other, including any claim one party may have against the other or CORPORATION for any prior monetary discrepancy whatsoever. The parties shall execute a Mutual Release in the form as attached hereto as Exhibit

7

Exhibit 5
Page 7 of 25

EXHIBIT 5 PAGE 47

"D".

14. BUYER agrees that, during the time that any portion of the promissory note from BUYER payable to SELLER as provided herein remains outstanding, BUYER shall cause CORPORATION to name Morad as a member of the Board of Directors of CORPORATION.

15. This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained herein and supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by the parties. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

16. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17. This Agreement shall be binding on and shall inure to the benefit of the parties to it, and their respective heirs, legal representatives, successors and assigns; provided, however, no assignment by BUYER shall relieve BUYER of any of his obligations or duties under this Agreement.

18. If any action or other proceeding is commenced to enforce the terms of this Agreement, the prevailing party, in addition to all other relief as appropriate under California law, shall be entitled to the recovery of court costs and reasonable attorneys fees.

19. This Agreement shall be construed in accordance with and be governed

8

Exhibit 5
Page 8 of 25

EXHIBIT 5   PAGE 48

by the laws of the State of California.

IN WITNESS WHEREOF, the parties to this Agreement have duly executed it effective the day and year first above written.

BUYER:                           SELLER:


ISAAC LARIAN                     FARHAD LARIAN

9

Exhibit 5
Page 9 of 25

000161

EXHIBIT  5  PAGE  49

SPOUSAL CONSENT

The undersigned is the spouse of Farhad Larian. To the extent that the undersigned now has a community property interest in the shares of ABC International Traders Inc. registered in the name of her husband, the undersigned hereby acknowledges that she has read this Agreement For Sale Of Stock, understands its contents and agrees that her community property interest in the shares of said corporation registered in the name of her husband shall be bound by and subject to the terms of this Agreement.

Dated: _____, 2000         _____

10

Exhibit 5
Page 10 of 25

000162

EXHIBIT 5   PAGE 30

PROMISSORY NOTE

$8,275,000.00    Los Angeles, California,   January.__ 2001

In installments as herein stated, for value received, the undersigned promises to pay to Farhad Larian, or order, at Los Angeles, California, the sum of Eight Million Two Hundred Seventy Five Thousand Dollars, with interest from date of making on unpaid principal, at the rate of nine and one-half percent per annum, payable in installments of principal and interest (amortized on $6,275,000.00 portion of note) of $83,798.90 or more on the first day of each successive month, commencing June 1, 2001. Principal and accrued interest on the above portion of the note shall be all due and payable on June 1, 2004.   The undersigned shall have a ten (10) day grace period from and after the due date of any payment prior to being in default of his obligation herein.  In addition thereto, the undersigned shall make a principal payment of $2,000,000.00, with interest thereon, on or before April 15, 2001.

Should default be made in payment of any installment of principal or interest when due the whole sum of principal and interest shall become immediately due at the option of the holder of this note. Principal and interest payable in lawful money of the United States. If action be instituted on this note the undersigned promises to pay such sum as the Court may fix as attorney's fees.

This Promissory Note is secured by a Pledge Agreement of even date executed by the undersigned and beneficiary herein.

In the event of default, the principal residence of the undersigned, located at 237 North Carolwood Drive, Los Angeles, California 90077 shall not be subject to lien, attachment or seizure.

ISAAC LARIAN

Exhibit 5
Page 11 of 25

000163

EXHIBIT 5  PAGE 51

PLEDGE AGREEMENT

THIS PLEDGE AGREEMENT made this 9TH day of DEC. , 2001, by and
between Isaac Larian hereinafter referred to as "Pledgor"; and Farhad Larian
hereinafter referred to as "Pledgee"; and Morad Zarabi hereinafter referred to
as "Trustee".

W I T N E S S E T H

Pledgor, as security for the performance of his obligations under and
pursuant to a promissory note payable to Pledgee of even date herewith in the
principal amount of $8,275,000.00, as well as the performance of all other
obligations contemplated hereby and pursuant to the terms of the Agreement For
Sale Of Stock dated December __, 2000 between Pledgor and Pledgee, pledges,
assigns and delivers to Trustee for the benefit of Pledgee the hereinafter
described shares of stock of ABC International Traders Inc., a California
corporation, and MGA Entertainment Hong Kong Limited, a Hong Kong corporation,
hereinafter collectively referred to as "Company", subject to the terms and
conditions hereinafter set forth.

NOW, THEREFORE, it is mutually agreed by the parties as follows:

1)    PLEDGE

(a)   Pledgor hereby delivers to Trustee certificates of stock in
ABC International Traders Inc. numbered 1 and 3 representing a total of
20,000,000 shares of common stock of ABC International Traders Inc.; and
certificates of stock in MGA Entertainment Hong Kong Limited numbered 1 and 2
representing a total of 900 shares of common stock of MGA Entertainment Hong

1

000164

Exhibit 5
Page 12 of 25

EXHIBIT 5 PAGE 52

Kong Limited issued in the name of Pledgor, together with an assignment

separate from certificate executed by Pledgor in favor of Pledgee assigning

said shares of common stock in Company to Pledgee, said stock certificates and

assignment to be held by Trustee as security for the payment of Pledgor's

promissory note and other obligations referred to above.

(b)  Pledgor warrants and represents that he owns said stock free

and clear of any liens or encumbrances except this Pledge Agreement; and

agrees not to encumber, transfer or otherwise hypothecate said stock during

the term of the Pledge Agreement.

(c)  In the event that during the term of this Pledge Agreement

any stock dividend, reclassification, readjustment, or other change is

declared or made in the capital stock of the Company which affects the pledged

shares, or any subscription, warrant, or other option is exercised with

reference to the pledged stock, all the new, substituted or additional shares,

or other securities issued pursuant to any such change or option shall be

delivered to Trustee by Pledgor and shall be held by Trustee under the terms

of this Pledge Agreement in the same manner as the stock originally pledged

hereunder.  Trustee shall have no duty or obligation to compel Pledgor to

deliver such new, substituted or additional shares, or other securities so

issued to Trustee.

2)  <u>VOTING RIGHTS, DIVIDENDS AND OTHER RESTRICTIONS ON DISTRIBUTIONS</u>:

(a)  Pledgor shall have the right to vote the stock pledged as

herein and to receive all cash dividends, as limited hereinafter, if any,

declared on said stock, so long as the Pledgor is not in default in the

performance of any of the terms of this Pledge Agreement, the Agreement For

Sale Of Stock or in the payment of the promissory note secured hereby during

2

000165

Exhibit 5
Page 13 of 25

EXHIBIT 5 PAGE 53

the term of this Pledge Agreement.  In the event Pledgee notifies the Trustee
that Pledgor is in default hereunder, Pledgee shall be entitled to vote the
shares for which payment is in default.  For voting purposes, Trustee shall be
entitled to rely upon the written representations of Pledgee concerning a
default relative to shares held by Trustee, and Trustee shall have no
obligation to make any such determination unless Pledgee sends to Trustee a
letter by certified mail specifying a default as set forth in Paragraph 4
below.

        (b)  During the term of this Pledge Agreement, Pledgor and his
immediate family members shall be limited in the aggregate annual amount of
distributions from ABC International Traders Inc., whether as salary,
dividends, perquisites or any other form to an amount no greater than the sum
of the annual principal and interest payments payable to Pledgee under the
promissory note plus the sum of $500,000.00 plus the amount of any federal and
state taxes payable by Pledgor on said amounts.  Notwithstanding the above,
this distribution limitation shall not apply with respect to any distributions
to family members of Pledgor who are presently employed at Company.

    3)    RETURN OF COLLATERAL:  At such time as Pledgor has presented to
Trustee evidence satisfactory to Trustee of full payment of Pledgor's
promissory note to Pledgee, and the complete performance of any other
obligation imposed on Pledgor pursuant to the terms of the Agreement For Sale
Of Stock above mentioned, Trustee shall deliver to Pledgor all of the stock
held hereunder together with the assignment executed by Pledgor.

    4)    DEFAULT:  An event of default by Pledgor as used in this Pledge
Agreement shall be any and all of the following, provided, however, that the
default shall not be deemed to occur until the Pledgee shall have notified the

3

Exhibit 5
Page 14 of 25



EXHIBIT 5 PAGE 54

Pledgor in writing specifying the nature of the default, and until the time, for curing the same, if any, following Pledgor's receipt of notice from Pledgee, has expired:

(a)   The failure of Pledgor to pay the indebtedness evidenced by the promissory note in favor of Pledgee in accordance with the terms thereof, should Pledgor fail to make such payment within thirty (30) days from the due date of any payment thereunder.

(b)   The failure of Pledgor to observe, keep or perform within ninety (90) days any covenant, agreement or condition required in this instrument or the Agreement For Sale Of Stock or the Promissory Note in favor of Pledgee herewith to be observed, kept or performed for the benefit of Pledgee.

(c)   If Pledgor is adjudicated a bankrupt, or requests, either by way of petition or answer, that Pledgor be adjudicated a bankrupt, or if any involuntary petition in bankruptcy be filed against Pledgor and the same shall not have been determined in favor of Pledgor or dismissed within ninety (90) days from the date thereof.

5)   RIGHTS ON DEFAULT:

(a)   Upon the happening of any of the events specified in Paragraph 4, Pledgee may, at Pledgee's election and upon proper notice and after the appropriate curative periods set forth in Paragraph 4, declare any and all obligations of the Pledgor in default secured hereby immediately all due and payable, and Pledgee is given the full power and authority to take possession of all stock pledged hereunder by the Pledgor in default from Trustee, and, at Pledgee's option, to sell and deliver the whole or any part of the herein described stock held by Trustee, or any substitutions or

4

Exhibit 5
Page 15 of 25

EXHIBIT __5__ PAGE __55__

additions thereto, at one or more private or public sales, with notice, as Pledgee shall determine.

(b)   Upon any such sale, Pledgee may become the purchaser of the whole, or any part, of such stock, discharged from any right of redemption, and after deducting all costs and expenses of collection, sale and delivery, including reasonable attorney's fees, may apply the residue of the proceeds of such collection, sale or sales, to the payment of the obligations secured hereby. Any overage of the residue of the proceeds of such sales shall be forthwith returned to Pledgor.

(c)   In the event of any public sale of the stock hereunder, if any law or regulation of the Securities and Exchange Commission or the California Commissioner of Corporations, or any other Federal or state body having jurisdiction, shall require that the Company whose stock is pledged hereunder or Pledgee or Pledgor should take any action prior to the sale of said stock, each of the parties hereto shall use his or its respective best efforts to comply with all of the said requirements.  Pledgee agrees to indemnify and hold Pledgor and Company harmless against any liabilities incurred by either of them by virtue of Pledgee's sale of the stock in violation of any such law or regulation.

6)   LIENS:   Pledgor agrees to pay prior to delinquency all taxes, charges, liens and assessments against the stock pledged hereunder.

7)   CAPTIONS:   The paragraph captions are inserted in this Pledge Agreement merely for convenience and are not to be construed as a part of this Pledge Agreement, or in any way limiting or affecting the language of any paragraph in this Pledge Agreement.

8)   PLEDGE CONSENT:   Where the consent of the Pledgee is required in

5

000168

Exhibit 5
Page 16 of 25


EXHIBIT 5 PAGE 56

this Agreement, in connection with actions proposed to be taken by Pledgor. such consent shall not be withheld or delayed unreasonably. Consent shall be deemed to have been given to any specific action by Pledgor if Pledgee has not responded to written request for such consent within fifteen (15) days after receipt of notice in accordance with paragraph 12 of this Agreement.

9)   GENDER:  In this Agreement, whenever the context so requires, the masculine gender herein written shall include the feminine or the neuter and the singular number shall include the plural.

10)   TRUSTEE:

(a)   Trustee, by its signature hereto, consents to act as Trustee hereunder upon the express understanding that it shall be solely responsible for the physical holding of the shares described herein, and shall deliver said shares of stock to Pledgee in the event of default as hereinabove provided, together with the attached assignment; or to Pledgor upon full satisfaction of the promissory note and obligations pursuant to the Agreement For Sale Of Stock, both above described.

(b)   It is expressly understood that the duties and obligations of the Trustee are to be strictly limited to the foregoing, and the parties acknowledge that they do hereby hold Trustee free and harmless from any and all liability, costs, and expenses, including attorney's fees, by reason hereof, and that said parties shall and do hereby indemnify Trustee therefrom. Pledgor does hereby acknowledge that the stock being deposited with Trustee hereunder is deposited upon the joint risk of Pledgor and Pledgee. Any fees of Trustee for acting as Trustee shall be paid by Pledgor.

(c)   Trustee shall have the power to appoint, currently or prospectively, a successor Trustee to so serve under the terms of this Pledge

6

000169

Exhibit 5
Page 17 of 25

EXHIBIT 5 PAGE 57

Agreement in the event Trustee is unable or unavailable to so act.

11)    SUCCESSORS AND ASSIGNS:  This Pledge Agreement shall be binding upon the parties hereto, and upon their respective heirs, personal representatives, successors and assigns.

12)    NOTICES:  Any and all notices to be served on or given to either Pledgor or Pledgee hereto, shall be in writing and shall be deemed duly served and given when personally delivered to either of the parties or in lieu of such personal service, when deposited in the United States mail, first-class, postage prepaid, addressed to Pledgor at 237 North Carolwood Drive, Los Angeles, California 90077, or to Pledgee at 2142 Century Park Lane, #6108, Los Angeles, CA 90067.  Any and all notices to be served on or given to Trustee shall be in writing and shall be deemed duly served and given upon receipt by Trustee.

13)    GOVERNING LAW:  This Agreement shall be governed and interpreted in accordance with the laws of the State of California.


IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.


PLEDGEE:                                    PLEDGOR:


_____                     _____
FARHAD LARIAN                               ISAAC LARIAN


                    TRUSTEE:

                    _____
                    MORAD ZARABI

                              7

0001'70

Exhibit 5
Page 18 of 25


EXHIBIT 5 PAGE 58

## CONSULTING AGREEMENT

This Consulting Agreement is entered into this $\underline{1}$ day of $\overline{JAN}$ _____,

2001, by and between ABC International Traders Inc., a California corporation

("Company") and Farhad Larian ("Consultant").

WHEREAS, CONSULTANT was a former shareholder, Director and employee of

COMPANY.

WHEREAS, COMPANY desires to have CONSULTANT perform certain services on

behalf of COMPANY as an Independent Contractor.

NOW, THEREFORE, for valuable consideration, it is hereby agreed by the

parties hereto as follows:

1. **TERM**

The term of this Agreement shall be for a period of five years,

commencing January 1, 2001 and terminating December 31, 2005, unless earlier

terminated as provided hereinafter.

2. **SERVICES**

(a)   CONSULTANT agrees to provide and make himself available

to perform general administrative services, at the request of COMPANY, and/or

otherwise make himself available to COMPANY for consultation by telephone, for

a total period of time not more than ten hours per month, during the normal

1

000171

Exhibit 5
Page 19 of 25

EXHIBIT  5  PAGE 59

business hours of COMPANY.

(b)   COMPANY hereby acknowledges that during the term of this Agreement, CONSULTANT may engage in any other business or professional activity provided that such activity does not directly compete with the business of COMPANY within Los Angeles County, California, and the performance of such activity does not interfere with his present work as a consultant for COMPANY.

(c)   CONSULTANT hereby acknowledges that he is being employed as an Independent Contractor to render the services described herein and that CONSULTANT shall be solely responsible for any Federal and State Income Tax withholding or Estimated Tax Payments that CONSULTANT may be required to file and/or pay.

3.     COMPENSATION

For all services rendered by CONSULTANT under this Agreement, COMPANY shall pay to CONSULTANT the sum of $7,500.00 per month payable on the first day of each month of the term hereof.

4.   TERMINATION

This Agreement may be terminated by either party for cause or for breach by the other party of any provision contained in this Agreement. COMPANY may not terminate CONSULTANT for a breach of this Agreement until COMPANY has furnished CONSULTANT with written notice of the breach contended by COMPANY and CONSULTANT fails to cure said breach within ten (10) days of receipt of said notice.

After five years from the date hereof but not before, this Agreement may be terminated by COMPANY upon payment in full of the promissory note given by Isaac Larian to CONSULTANT as part of the purchase of CONSULTANT'S shares of COMPANY.

2

000172

Exhibit 5
Page 20 of 25

EXHIBIT  5  PAGE 60

This Agreement may be terminated by CONSULTANT, at any time, without cause, upon giving COMPANY thirty (30) days prior written notice.

5.      TRADE SECRETS

CONSULTANT acknowledges and represents that the sources of COMPANY's services, techniques, methods, products, manufacturing techniques, manufacturing requirements, pricing, customer lists and vendor lists are a trade secret and the property of COMPANY.   It is agreed that all such data is confidential and that it shall not be disclosed, directly or indirectly, or used by CONSULTANT in any way, except on behalf of COMPANY, either during the term of this Agreement or at any time thereafter.

6.      NOTICES

Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered mail to the principal office of COMPANY or personal residence of CONSULTANT.

7.      COUNTERPARTS

The within Agreement may be executed in duplicate counterparts and each such signed duplicate counterpart shall be deemed to be an original.

8.      TITLES AND CONSTRUCTION

The titles of the paragraphs in this Agreement are set forth for convenience only.  This Agreement shall not be construed or interpreted for or against either of the parties hereto by reason of its draftsmanship by either party.

9.      ASSIGNMENT

The rights, benefits, duties and obligations of COMPANY and CONSULTANT under this Agreement may not be assigned without the express written permission of the other.

3

000173

Exhibit 5
Page 21 of 25

EXHIBIT  5   PAGE  6

10.  **ARBITRATION**

Any controversy between the parties arising out of this Agreement shall be submitted to Morad Zarabi who shall serve as sole arbitrator with respect to said disputes.  If Morad Zarabi is unable to so act, Kambiz Zarabi is appointed arbitrator.  Either arbitrator can select another person or entity to serve as arbitrator, either currently or prospectively, if neither of the above two named arbitrators are available to so serve.  The decision of the arbitrator shall be final and binding upon both parties.

11.  **ATTORNEYS' FEES**

If any action or any other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which they may be entitled.

12.  **ENTIRE AGREEMENT**

(a)  This Agreement constitutes the entire Agreement between the parties and contains all of the agreement between the parties with respect to the subject matter hereof; this Agreement supersedes any and all other agreements, either oral or in writing, between parties hereto with respect to the subject matter hereof.

(b)  No change or modification of this Agreement shall be valid unless the same be in writing and signed by the person or party to be charged.

13.  **GOVERNING LAW**

This Agreement shall be subject to and governed by the laws of the State of California.

4

000174

Exhibit 5
Page 22 of 25

EXHIBIT 5  PAGE 62

DATED: JUN 1 _____, 2001

COMPANY:                          CONSULTANT:

ABC INTERNATIONAL TRADERS INC.

Farhad Lera

FARHAD LARIAN

By: _____
    Isaac Larian, President

5

000175

Exhibit 5
Page 23 of 25

EXHIBIT 5 PAGE 63

<u>MUTUAL RELEASE</u>

For valuable consideration, receipt of which is hereby acknowledged:

1.   Isaac Larian, an individual, and ABC International Traders Inc., a California corporation, and each of them, on behalf of themselves, their associates, owners, stockholders, predecessors, successors, heirs, assigns, directors, officers, partners, employees, representatives, and all other persons acting by, through, under, or in concert with them, or any of them, do hereby acquit, release and forever discharge Farhad Larian, an individual, and his spouse, associates, successors, heirs, assigns, agents, representatives, and all other persons acting by, through, under, or in concert with him or any of them, of and from any and all cause or causes of action, suits, claims, demands, obligations, liabilities, damages, liens, contracts, agreements, promises, losses, costs, or expenses of any nature whatsoever, known or unknown, fixed or in equity, from the beginning of time to the date hereof with the exception of those obligations imposed under the terms of the Agreement For Sale Of Stock between Isaac Larian and Farhad Larian for the sale by Farhad Larian of his shareholder interest in ABC International Traders Inc. to Isaac Larian and the agreements attached as Exhibits to the Agreement For Sale Of Stock.

2.   Farhad Larian, an individual, on behalf of himself, his spouse, associates, successors, heirs, assigns, agents, representatives, and all other persons acting by, through, under, or in concert with him or any of them, do hereby acquit, release and forever discharge Isaac Larian, an individual, and ABC International Traders Inc., a California corporation, and each of them, their respective associates, owners, stockholders, predecessors, successors, heirs, assigns, directors, officers, partners, employees, representatives, and all other persons acting by, through, under, or in concert with them, or any of them, of and from any and all cause or causes of action, suits, claims, demands, obligations, liabilities, damages, liens, contracts, agreements, promises, losses, costs, or expenses of any nature whatsoever, known or unknown, fixed or in equity, from the beginning of time to the date hereof with the exception of those obligations imposed under the terms of the Agreement For Sale Of Stock between Isaac Larian and Farhad Larian for the dale by Farhad Larian of his shareholder interest in ABC International Traders Inc. to Isaac Larian and the agreements attached as Exhibits to the Agreement For Sale Of Stock.

3. The foregoing release is and shall be a release of all claims, whether known or unknown, and each of the undersigned parties waives all rights reserved to him, it or them, by Section 1542 of the Civil Code of the State of California, which provided, as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the Release which if known by him must have materially affected his settlement with the debtor."

4. This Release shall be binding on, and shall inure to the benefit of, the parties to it and their respective heirs, legal representatives, successors and assigns.

**000176**

Exhibit "D"

Exhibit 5
Page 24 of 25

EXHIBIT __5__ PAGE __64__

5.   Each of the undersigned individuals represents that he signs this Release with the express authority of the party on whose behalf he signs.

IN WITNESS WHEREOF, the parties hereto have executed this Release on the 4th day of DECEMBER , 2006.

_____
ISAAC LARIAN

_____
FARHAD LARIAN

ABC INTERNATIONAL TRADERS INC.

By: _____
Isaac Larian, President

000177

Exhibit 5
Page 25 of 25

EXHIBIT 5 PAGE 05