# EXHIBIT 11

Morad Zarabi
20120 Plummer Street
Chatsworth, CA 91311

February 8, 2005

Facsimile Letter

Dear Gentlemen:

Please be advised that I am unavailable to act as an arbitrator regarding any disputes between Farhad Larian and Isaac Larian concerning the controversies that are the subject of my selection as arbitrator. For your reference, Kambiz Zarabi is also unavailable.

Accordingly, pursuant to paragraph 9 of the Sale Agreement, I am appointing Judicial Arbitration and Mediation Services, Inc. ("JAMS") as my successor arbitrator. The parties are instructed to select and hire one of the panel members with business dispute experience. If you are unable to agree upon an arbitrator within twenty (20) days after delivery of this letter, then JAMS is authorized to select the arbitrator for you in its discretion. Upon your advising me of the identity of the new arbitrator, I will forward all my files, including the original stock certificate evidencing the sale, to the new arbitrator. JAMS can be contacted at 213-620-1133.

Should you have any questions, please feel free to contact me in writing only.

Thank you and good luck,

Morad Zarabi

Cc:
By email:    Mr. Fred Larian
By email    Mr. Isaac Larian
          Mr. Ellis Stern
          Mr. Robert Turner Esq. — Attorney for Isaac Larian
          Mr. Mark D. Kremer — Attorney for Fred Larian

Exhibit 42
Page 1 of 1

EXHIBIT _11_ PAGE _252_

# EXHIBIT 12

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 05/04/05 | | | DEPT. 46 |
|---|---|---|---|
| HONORABLE RODNEY E. NELSON | JUDGE | E. LOPEZ | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| C. VAUGHN/CTRM ASST | Deputy Sheriff | NONE | Reporter |

8:30 am BC301371

FARHAD LARIAN
VS
ISAAC LARIAN ET AL

Plaintiff Counsel
Defendant Counsel

NO APPEARANCES

---

NATURE OF PROCEEDINGS:

COURT ORDER

The Court is in receipt of Defendant's notice that the parties are unable to agree to an arbitrator.

The Court hereby selects Retired Judge Alan B. Haber as Arbitrator.

Counsel are to contact the Arbitrator and ensure that proceedings are realized.

Clerk to give notice.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served Notice of Entry of the above minute order of 05/04/2005 upon each party or counsel named below by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original entered herein in a separate sealed envelope for each, addressed as shown below with the postage thereon fully prepaid.

Date: May 4, 2005>

Page   1 of  2    DEPT. 46

MINUTES ENTERED
05/04/05
COUNTY CLERK

EXHIBIT 12 PAGE 253

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 05/04/05 | | DEPT. 46 |
| HONORABLE RODNEY E. NELSON JUDGE | E. LOPEZ | DEPUTY CLERK |
| HONORABLE JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| C. VAUGHN/CTRM ASST Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 8:30 am BC301371 | Plaintiff Counsel | |
| FARHAD LARIAN VS ISAAC LARIAN ET AL | Defendant Counsel | NO APPEARANCES |

**NATURE OF PROCEEDINGS:**

John A. Clarke, Executive Officer/Clerk

By: _____/S/_____
        E. Lopez, Deputy Clerk

CONKLE & OLSTEN
ERIC ENGEL
3130 WILSHIRE BLVD., STE. 500
SANTA MONICA, CA 90403

KAY SCHOLER
LARRY FELDMAN
1999 AVENUE OF THE STARS, STE. 1700
LOS ANGELES, CA 90067

Page   2 of 2   DEPT. 46

| |
|---|
| MINUTES ENTERED 05/04/05 COUNTY CLERK |

EXHIBIT _12_ PAGE _254_

# EXHIBIT 13

NOV 28 2005 12:36PM   HP LASERJET 3200                                                   P.2

1  Honorable Alan B. Haber
   ADR SERVICES, INC
2  1900 Avenue of the Stars, Suite 250
   Los Angeles, California 90067-4303
3  (310) 201-0010 PH
   (310) 201-0016 FAX
4
5
6                    IN THE MATTER OF THE ARBITRATION BETWEEN
7
8
9
   FARHAD LARIAN                              )
10                                            )
                     Claimant                 )     ADR Case No. 05-2096-ABH
11                                            )
                                              )
12 vs.                                        )     LASC Case No. BC 301371
   ISAAC LARIAN                               )
13                                            )     FINAL ARBITRATION AWARD
14                   Respondent               )
                                              )     DISMISSAL OF ALL CLAIMS WITH
15                                            )           PREJUDICE
                                              )
16
17
18
19
20
21
22
23
24
25 CHRONOLOGY OF EVENTS:
26     This Binding Arbitration between the above-named claimant and respondent commenced
27 on November 16, 2005, at the ADR offices, Suite 250, 1900 Avenue of the Stars, Los Angeles,
28 90067.   This Arbitration was scheduled for hearings on November 16, 17, 18, 21, 22, 23 and
29 December 5, 2005.   Claimant Farhad was represented by Mr. Robert G. Wilson of the law firm

                                          1

CC 00546

EXHIBIT  13  PAGE 255

1  of Cotkin, Collins and Ginsburg and Mr. Richard Kellner of the law firm of Kabateck, Brown
2  and Kellner.   Respondent Isaac Larian was represented by Mr. Larry Feldman and Mr. Robert
3  Turner, both of the Kaye Scholer LLP law firm. Also in attendance was Ms. Daphne Gronich,
4  counsel for third-party intervenor, MGA Entertainment, Inc.
5      On November 17, 2005, the second day of the Arbitration proceedings, towards the end
6  of the full-day session, following the testimony of a witness called by claimant, claimant's
7  counsel called claimant Farhad Larian to testify as a witness.  Upon taking his place at the
8  witness chair, claimant Farhad Larian requested that he be permitted to address me, and the
9  assemblage of counsel, and announced that he wishes to "go off the record". I then requested that
10 claimant Larian consult privately with both of his counsel.  Claimant Farhad Larian declined my
11 request that he consult with his attorneys.  Both of his attorneys appeared ready to leave the
12 hearing room and consult with claimant Farhad Larian.    However, claimant Farhad Larian
13 continued to insist that he be permitted to address me and the assemblage of attorneys. I again
14 suggested that claimant Farhad Larian meet with his attorneys.  For a second time he insisted
15 that he be allowed to address me and the assemblage, and refused my second suggestion that it
16 would be advisable for him to speak to his attorneys.   I informed him that any remarks or
17 statements that he made would have to be "on the record"(at all times during the Arbitration
18 proceeding, a Certified Court Reporter was recording the proceedings).  Claimant Farhad Larian
19 then addressed the assemblage and explained that certain evidence presented thus far in the
20 proceedings caused him to conclude that his claims against respondent Isaac Larian were
21 unfounded and that it was his request that the proceedings be brought to a conclusion.
22 Thereupon, one of claimant's attorneys, Mr. Robert G. Wilson announced that he was resigning
23 as claimant's counsel.  In essence, and unquestionably, claimant Farhad Larian conceded that
24 his claims against Isaac Larian for breach of fiduciary duty, fraud, and unilateral mistake and
25 requests for monetary damages and recission should be "dropped", and the arbitration should be
26 terminated.  I suggested that a recess would be appropriate.  Claimant and his counsel, Mr.
27 Richard Kellner then retired to a different room: I then left the hearing room and briefly spoke
28 with Mr. Kellner and claimant Farhad Larian and with Mr. Kellner's permission explained that if
29 his true intentions were to terminate the proceedings, that he and Mr. Kellner would have to

2

CC 00547

EXHIBIT 13 PAGE 256

1   return to the hearing room and agree "on the record" to dismiss all of the Arbitration claims.

2   and acknowledge that a dismissal with prejudice would mean that he would not be able to renew

3   or refile his claims in the future.  Claimant Farhad then acknowledge on the record that he

4   understood the consequences of a dismissal of his Arbitration claims, and that he wished for a

5   dismissal with prejudice of the claims.

6

7   THE ARBITRATION AWARD:

8        Based on my satisfaction that claimant Farhad Larian knowingly and voluntarily wished

9   for all of his Arbitration claims in this proceeding against respondent Isaac Larian be dismissed

10   with prejudice, and his acknowledgment that there was no merit to any of his claims in this

11   proceeding, I am ordering that all of the claims made by claimant Farhad Larian in this

12   proceeding be forthwith dismissed with prejudice, and issue an award in favor of respondent

13   Isaac Larian.

14

15   DATED: November 18, 2005          _____

16                                     Hon. Alan B. Haber(ret.), Arbitrator

17

18

19

20

21

22

23

24

25

26

27

28

29

                                    3

EXHIBIT 13 PAGE 257

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is ADR Services, Inc., 1900 Avenue of the Stars, Suite 250 Los Angeles, California 90067.

On November 28, 2005, I served the foregoing document described as the **FINAL ARBITRATION AWARD** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Richard Kellner, Esq.
Michael R. Brown, Esq.
KABATECK BROWN & KELLNER LLP
350 South Grand Avenue, 39th Floor
Los Angeles, California 90071

Robert G. Wilson, Esq.                      Larry R. Feldman, Esq.
COTKIN COLLINS & GINSBURG                   KAYE SCHOLER
300 South Grand Avenue, 24th Floor          1999 Avenue of the Stars, Suite 1600
Los Angeles, California 90071               Los Angeles, California 90067

____X____   **BY U.S. MAIL,** I caused such envelope with postage thereon to be placed in the United States mail at Los Angeles, California.

____X____   **BY FACSIMILE,** I caused such to be faxed to the attorneys on November 28, 2005.

_____   **BY PERSONAL SERVICE** I caused such envelope to be delivered by hand to:

____X____   **STATE** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____   **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 28, 2005 at Los Angeles, California.

_____
Terry Shea

H:\l wurk\PROOF OF SERVICE.doc

CC 00549



EXHIBIT 13 PAGE 258

# EXHIBIT 14

1-20-06

1   KABATECK BROWN KELLNER LLP
    Richard L. Kellner, SBN 171416
2   Alfredo Torrijos, SBN 222458
    350 South Grand Avenue, 39th Floor
3   Los Angeles, California 90071
    Telephone: (213) 217-5000
4   Facsimile: (213) 217-5010

5   COTKIN, COLLINS & GINSBURG
    A PROFESSIONAL CORPORATION
6   Robert G. Wilson, SBN 58653
    300 South Grand Avenue, 24th Floor
7   Los Angeles, California 90071
    Telephone: (213) 688-9350
8   Facsimile: (213) 688-9351

9   Attorneys for Claimant
    Farhad Larian
10

11              ARBITRATION BEFORE ADR SERVICES, INC.
12

13  FARHAD LARIAN,                         ADRS CASE. NO. 05-2096-ABH

14        Claimant,                        THE HONORABLE ALAN HABER

15        v.
                                           DECLARATION OF CLAIMANT
16  ISAAC LARIAN,                          FARHAD LARIAN IN SUPPORT OF HIS
                                           OPPOSITION TO RESPONDENT ISAAC
17        Respondent.                      LARIAN'S MOTION FOR ATTORNEYS'
                                           FEES
18
                                           [Filed concurrently with Claimant Farhad
19                                         Larian's Opposition to Respondent Isaac
                                           Larian's Motion for Attorneys' Fees; and
20                                         Declaration of Richard L. Kellner in Support
                                           of Claimant Farhad Larian's Opposition to
21                                         Respondent Isaac Larian's Motion for
                                           Attorneys' Fees]
22

23

24

25

26  ///

27  ///

28  ///

        DECLARATION OF CLAIMANT FARHAD LARIAN IN SUPPORT OF HIS OPPOSITION TO
            RESPONDENT ISAAC LARIAN'S MOTION FOR ATTORNEYS' FEES

CC 00694

EXHIBIT 14 PAGE 859

## DECLARATION OF FARHAD LARIAN

I, FARHAD LARIAN, do hereby declare as follows:

1.   I am the Claimant in this action. I have personal knowledge of the facts contained herein and if called to testify to the matters set forth herein, I could competently testify thereto.

2.   This case has not been easy for me. I am an extremely emotional person and I have struggled greatly with the impact that this case has had on my family. Despite our differences, Isaac and I are still brothers. We spent many years working hard trying to make MGA Entertainment, Inc. what it is today.   Some of those years were good, some were bad, but we were working together and we were family.

3.   I do not (and never have) begrudge the fact that my brother has become very wealthy by virtue of his full ownership of MGA Entertainment, Inc. He deserves it. My brother is an extremely talented business person; I have never doubted or denied that.

4.   I brought this action because I had real and genuine doubts as to whether I received a fair price for the December 2000 sale of my stock in ABC International Traders, Inc. and MGA Entertainment Hong Kong Limited (later collectively known as, "MGA Entertainment, Inc."). I genuinely believed that my brother Isaac had a responsibility for making up the difference in price between what my stock was actually worth (based on a valuation of December 2000) and what I was paid for that stock. This differential would only represent a fraction of the gains that Isaac has subsequently earned due to his purchase of my stock.

5.   A few weeks before the arbitration, I was at Santa Monica beach with my family. On that day, my wife Lisa and I lost our four year old daughter. Fortunately, after one terrible hour, we found our daughter at the police station. The whole ordeal was agonizing, but it reminded me that there are more important things in life than this case -- that there are things that I would rather do than spend my time trying to prove that my brother had engaged in wrongful conduct against me.

6.   During the arbitration, sitting in the same room as my brother and his wife was difficult, much more difficult than I could have ever imagined. As each hour of the arbitration progressed, I could not help but feel -- physically feel -- the hatred that Isaac had for me. Right

— 2 —

CC 00695

EXHIBIT _14_ PAGE _260_

then, I made a decision to abandon my claims in the arbitration and issue a public apology, hoping (perhaps in vain) that one day my brother and I could reconcile.

7.     My brother was so moved by my public recant that he subsequently offered to pay me the difference between the appraised value of my stock in 2000 and the amount that I was paid for the stock. Attached hereto as Exhibit "A" is a true and correct copy of a print-out of the email that I received from my brother on November 29, 2005 and my responding email of December 1, 2005.

8.     I am not a wealthy man. I simply could not have made the generous gesture of publicly abandoning my claims, if had known that Isaac's lawyers would come after me for their attorneys' fees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of January 2006 at Los Angeles, California.

FARHAD LARIAN

— 3 —

DECLARATION OF CLAIMANT FARHAD LARIAN IN SUPPORT OF HIS OPPOSITION TO RESPONDENT ISAAC LARIAN'S MOTION FOR ATTORNEYS' FEES

CC 00696

EXHIBIT 14  PAGE 261

**EXHIBIT A**

EXHIBIT _14_ PAGE _262_

CC 00697

**From:** Fred Larian [mailto:fredlarian@sbcglobal.net]
**Sent:** Thursday, December 01, 2005 4:11 PM
**To:** 'Isaac Larian (President / CEO)'
**Subject:** RE: I am traveling

I did not call Shamsi. She called me and said she had suggested the new appraisal to you (and
later to me). I told her Isaac and I are supposed to talk directly. When are you back in town?

**From:** Isaac Larian (President / CEO) [mailto:LarianI1@mgae.com]
**Sent:** Tuesday, November 29, 2005 6:37 PM
**To:** fredlarian@sbcglobal.net
**Subject:** I am traveling

Fred,

I am traveling.

I got a call from Shamsi saying that you want a new appraisal,
as of year end 2000?

I thought we decided to talk directly?

I don't mind doing this if you want this and indeed have been
asking for it.  But , on one condition: A written contract that if
the appraisal was less than what you got paid, you will pay the
difference.

I am not going through this again.

I want me and my family to go on with our lives.

Let me know.

Isaac Larian
CEO

MGA Entertainment, Inc.
16380 Roscoe Blvd. Suite 200
Van Nuys, California 91406
Tel: 818-894-3150

CC 00698

EXHIBIT 14 PAGE 263

email: lariani1@mgae.com
fax: 818-894-1267

WWW. BRATZ.COM
www.mgae.com
www.alienracers.com

CC 00699

EXHIBIT _14_ PAGE _264_

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 350 South Grand Avenue, 39th Floor, Los Angeles, CA 90071.

On **January 20, 2006**, I caused the foregoing document described as **CLAIMANT FARHAD LARIAN'S OPPOSITION TO RESPONDENT ISAAC LARIAN'S MOTION FOR ATTORNEYS' FEES** on the interested parties in this action as follows:

Larry R. Feldman, Esq.
Kaye Scholer LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
FAX NO: 310-788-1200

Robert Wilson, Esq.
Cotkin Collins & Ginsburg
300 South Grand Avenue, 24th Floor
Los Angeles, CA 90071

[X]    **VIA OVERNIGHT EXPRESS** – I am readily familiar with the firm's practice of collection and processing for overnight delivery. Under that practice it would be deposited in a box or other facility regularly maintained by Overnight Express, or delivered to an authorized courier or driver authorized by Overnight Express to receive documents, in an envelope or package designated by Overnight Express with delivery fees paid or provided for, addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service; otherwise at that party's place of residence.

[]    **VIA U.S. MAIL** - I deposited such envelope(s) with the United States Postal Service, enclosed in a sealed envelope, for collection and mailing with the United States Postal Service where it would be deposited for first class delivery, postage fully prepared, in the United States Postal Service that same day in the ordinary course of business. I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service.

Executed on **January 20, 2006**, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

IRMA DELEON

CC 00700

EXHIBIT _14_ PAGE _265_

Kabateck Brown Kellner LLP
350 South Grand Avenue, 39th Floor
Los Angeles, California 90071
FAX (213) 217-5010

# EXHIBIT 15

1
2  Honorable Alan B. Haber(Ret.)
   ADR SERVICES, INC.
3  1900 Avenue of the Stars, Suite 250
   Los Angeles, California 90067-4303
4  (310) 201-0010 PH
   (310) 201-0016 FAX
5

6

7

8                    IN THE MATTER OF THE ARBITRATION BETWEEN

9
   FARHAD LARIAN,                        )      LASC CASE No. BC301371
10                                       )
11             Claimant,                 )      ADR CASE No. 05-2096-ABH
                                         )
12       Vs.                             )
                                         )    FINAL ARBITRATION AMENDMENT
13 ISAAC LARIAN,                         )    FOR RESPONDENT'S MOTION FOR
                                         )    PREVAILING PARTY ATTORNEY'S
14             Respondent,               )    FEES
                                         )
15                                       )
16

17

18       On November 28, 2005, my Arbitration Award was filed and served on counsel for the

19 claimant and respondent. The Award entered a dismissal with prejudice of all claims in this

20 arbitration proceeding.    This dismissal was requested by claimant on the second day of the

21 Arbitration proceedings.    Respondent filed a Motion for Attorneys Fees, requesting fees and

22 costs incurred by respondent during the course of this litigation.    I have considered the

23 respondent's moving papers, and declaration, and have considered the respondent's opposition

24 papers and the two declarations attached to the opposition papers.    The parties agreed to a

25 telephonic conference call for oral argument in connection with this motion.    On February 1, this

26 matter was argued by the parties by way of a telephonic conference call.    Present during the call

27 for Claimant was Mr. Richard Kellner of the law firm of Kabateck Brown Kellner LLP, and

28 present during the conference call for Respondent was Mr. Larry Feldman of the law firm of

29 Kaye Scholer LLP.

                                             1

CC 00518

EXHIBIT 15 PAGE 266

FINDINGS RE: THE JURISDICTION ISSUE

Claimant's counsel alleged (1) that as the Arbitrator I had no jurisdiction to issue an Arbitration Award and therefore there was no prevailing party; (2) that I should use my discretion and not award attorney's fees to the respondent Isaac Larian, and (3) attorneys fees and costs should not be awarded because the respondent's application for fees and costs is not adequate.  I find that the claimant's claim of lack of jurisdiction is not well-taken. Judge Nelson appointed me as the arbitrator in this matter on May 4, 2005, following his having made a finding that the parties were unable to agree on an arbitrator.  Judge Nelson's ruling followed a remittitur from the Second District Court of Appeal, ordering that a prior ruling denying the respondent's request to arbitrate this matter be vacated, and that an arbitration go forward pursuant to Section 1281.6 of the California Code of Civil Procedure. The chronology of events leading up to my appointment as arbitrator establishes the hypocrisy of the claimant's claim that that my selection as arbitrator was improper.

On March 2, 2005(following the Court of Appeal's mandate to grant an order compelling arbitration) Judge Nelson ordered each party to submit a list of at least five(5) nominees to serve as the arbitrator.  Judge Nelson informed counsel that he would then select five(5) names for the two submitted lists, indicating that in the event the parties could not agree from his list, that he would select the arbitrator, in accordance with Section 1281.6 of the Code of Civil Procedure. Respondent provided five(5) names; my name was not on the list.  Claimant provided five names and my name was on the list.(Interestingly, claimant in their submission of five names, objected to Judge Nelson's procedure, and asserted that a principal term of the arbitration agreement provided that the arbitrator serve without charging a fee).  Finding a retired Judge to serve as a neutral arbitrator without monetary compensation in a case where a claimant(as in this case) is seeking six million dollars in monetary damages($600,000,000.) is probably more difficult than trying to locate Judge Crater.

On March 24, 2005, Judge Nelson selected retired Judge Robert Altman to serve as the arbitrator in this matter.  On April 4, 2005, Judge Nelson, having learned that Judge Altman withdrew as arbitrator, informed counsel that he would be sending a new list of five(5) arbitrator nominees. My name was on that list of five(5).  On April 15, claimant's counsel wrote to Judge

2

CC 00519

EXHIBIT _15_ PAGE _267_

1  Nelson listing claimant's nominees; once again my name was on claimant's list, and made

2  reference to the names of four of respondent's nominees. My name was not on the respondent's

3  list. Once again, the parties could not agree on Judge Nelson's list of five. On May 4, 2005,

4  Judge Nelson appointed me as the arbitrator pursuant to Section 1281.6 of the Code of Civil

5  Procedure.

6      The legal principles of estoppel and waiver have application to the claimant's claim of my

7  lacking jurisdiction to serve as the arbitrator. At no time from the receipt of Judge Nelson's

8  minute order transmitted to me on May 4, 2005 and through and including my involvement in

9  pre-Arbitration proceedings, and the Arbitration, had claimant ever asserted to me that I lacked

10  jurisdiction to serve as the arbitrator in this matter.   The first time that I learned of the lack of

11  jurisdiction claim was upon receiving claimant's counsel's opposition brief to the respondent's

12  Motion for attorneys fees and costs. I find that Judge Nelson's appointment of me as arbitrator is

13  the law of the case.

14

15  FINDINGS RE: ATTORNEYS FEES AND COSTS REQUESTS

16      As previously discussed, I find that the respondent is the prevailing party in this litigation.

17  The Stock Purchase Agreement provided that the prevailing party can recover attorneys fees and

18  costs.   I have considered and read respondent's moving papers and have reviewed all 97 exhibits

19  attached to respondent's declaration. This case involved a claim for $600,000,000. in monetary

20  damages and was intensely litigated over an approximately two-year period. The nature of this

21  case demanded skilled and experienced attorneys.  Claimant retained serially, three different law

22  firms  to represent him over the period of this case, as did respondent in hiring two attorneys who

23  have more than 60 combined years of heavy litigation experience and are highly skilled in their

24  profession.  Considering the nature of this case, I am satisfied that the records of hours kept by

25  claimant's counsel, and their hourly rates for counsel and paralegals was justified; that the hours

26  for which the claimant was billed were spent.  A review of the 97 exhibits provided by

27  respondent demonstrates the nature of the litigation pre-Arbitration; the extensive motions that

28  were litigated, the appellate matters and the time spent for preparation of the arbitration

29  proceedings.  I find that the fees charged by counsel for the respondents was reasonable.

3

CC 00520

EXHIBIT 15 PAGE 268

THE ATTORNEYS FEES AWARD:

The attorneys fees award is the sum of $1,180,481.05: Judgment for respondent Isaac
Larian in the sum of $1,180,481.05 against respondent Farhad Larian.

DATED: February 3, 2006

Arbitrator, Judge Alan B. Haber(ret.)

CC 00521

EXHIBIT  15  PAGE 269

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is ADR Services, Inc., 1900 Avenue of the Stars, Suite 250 Los Angeles, California 90067.

On February 3, 2006, I served the foregoing document described as the **FINAL ARBITRATION AMENDMENT FOR RESPONDENT'S MOTION FOR PREVAILING PARTY ATTORNEY'S FEES** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Richard Kellner, Esq.
Michael R. Brown, Esq.
KABATECK BROWN & KELLNER
350 South Grand Avenue, 39th Floor
Los Angeles, California 90071

Robert G. Wilson, Esq.
COTKIN COLLINS & GINSBURG
300 South Grand Avenue, 24th Floor
Los Angeles, California 90071

Larry R. Feldman, Esq.
Robert Turner, Esq.
KAYE SCHOLER
1999 Avenue of the Stars, Suite 1600
Los Angeles, California 90067

_X_     **BY U.S. MAIL**, I caused such envelope with postage thereon to be placed in the United States mail at Los Angeles, California.

_X_     **BY FACSIMILE**, I caused such to be faxed to the attorneys on February 3, 2006.

_____     **BY PERSONAL SERVICE** I caused such envelope to be delivered by hand to:

_X_     **STATE** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____     **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 3, 2006 at Los Angeles, California.

Terry Shea

CC 00522



EXHIBIT _15_ PAGE _270_

# EXHIBIT 16



1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     Michael T. Zeller (Bar No. 196417)
      Shane H. McKenzie (Bar No. 228978)
3   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
4   Telephone: (213) 443-3000
    Facsimile: (213) 443-3100
5
    Attorneys for Plaintiff and Counter-Defendant
6   Mattel, Inc.

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11

12  MATTEL, INC., a Delaware corporation,  )  Case No. CV 04-09059 NM (RNBx)

13              Plaintiff,                  )
                                            )  MATTEL, INC.'S FIRST SET OF
14      v.                                  )  REQUESTS FOR PRODUCTION
                                            )  OF DOCUMENTS AND
15  CARTER BRYANT, an individual           )  TANGIBLE THINGS TO MGA
                                            )  ENTERTAINMENT INC.
16              Defendant.                  )
                                            )
17  _____       )
                                            )
18  CARTER BRYANT, on behalf of himself,   )
    all present and former employees of     )
19  Mattel, Inc., and the general public,  )
                                            )
20              Counterclaimant,            )
                                            )
21      v.                                  )
                                            )
22  MATTEL, INC., a Delaware corporation,  )
                                            )
23              Counter-defendant.          )
                                            )
24

25

26

27

28

07209/642197.1

EXHIBIT 16 PAGE 271

1    Pursuant to <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u>, Plaintiff

2  and Counter-Defendant Mattel, Inc. hereby requests that MGA Entertainment Inc.

3  make available for inspection and copying the following documents and things

4  within thirty days of the service of these Requests, at the offices of Quinn Emanuel

5  Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th Floor, Los

6  Angeles, California 90036.

7    These Requests shall be deemed to be continuing, and MGA

8  Entertainment Inc. shall be obligated to supplement its responses to these requests

9  at such times and to the extent required by <u>Rule</u> 26(e) of the <u>Federal Rules of Civil</u>

10  <u>Procedure</u>.

11

12                              <u>DEFINITIONS</u>

13

14    For purposes of this Request for Production of Documents:

15    A.    "YOU" or "YOUR" means MGA Entertainment Inc. and any of

16  its current or former employees, officers, directors, agents, representatives,

17  attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and

18  successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

19  authority or subject to its control.

20    B.    "MATTEL" means Mattel, Inc. and any of its current or former

21  employees, officers, directors, agents, representatives, attorneys, subsidiaries,

22  divisions, affiliates, predecessors-in-interest and successors-in-interest, and any

23  other PERSON acting on its behalf, pursuant to its authority or subject to its

24  control.

25    C.    "DOCUMENT" or "DOCUMENTS" means all "writings" and

26  "recordings" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil</u>

27  <u>Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not

28  limited to, all writings and records of every type and description including, but not

EXHIBIT _16_ PAGE _27_

1  limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,
2  electronic mail ("e-mail"), records of telephone conversations, handwritten and
3  typewritten notes of any kind, statements, reports, minutes, recordings, transcripts
4  and summaries of meetings, voice recordings, pictures, photographs, drawings,
5  computer cards, tapes, discs, printouts and records of all types, studies, instruction
6  manuals, policy manuals and statements, books, pamphlets, invoices, canceled
7  checks and every other device or medium by which or through which information
8  of any type is transmitted, recorded or preserved. Without any limitation on the
9  foregoing, the term "DOCUMENT" shall include all copies that differ in any
10  respect from the original or other versions of the DOCUMENT, including, but not
11  limited to, all drafts and all copies of such drafts or originals containing initials,
12  comments, notations, insertions, corrections, marginal notes, amendments or any
13  other variation of any kind.

14        D.    "REFER OR RELATE TO" means constituting, embodying,
15  containing, referring to, commenting on, evidencing, regarding, discussing,
16  describing, mentioning, reflecting, expressing, pertaining to, concerning,
17  supporting, contradicting, negating, revoking or otherwise relating to in any
18  manner.

19        E.    "PERSON" or "PERSONS" means all natural persons,
20  partnerships, corporations, joint ventures and any kind of business, legal or public
21  entity or organization, as well as its, its or her agents, representatives, employees,
22  officers and directors and any one else acting on its, its or her behalf, pursuant to
23  its, its or her authority or subject to its, its or her control.

24        F.    "BRYANT" means Carter Bryant, any of his current or former
25  agents, representatives, attorneys, employees, partners, joint venturers,
26  predecessors-in-interest and successors-in-interest, and any other PERSON acting
27  on his behalf, pursuant to his authority or subject to his control.

28

1         G.    "BRATZ" means any project ever known by that name

2 (whether in whole or in part and regardless of what such project is or has been

3 also, previously or subsequently called) and any doll or any portion thereof that is

4 now or has ever been known as, or sold or marketed under, the name or term

5 "Bratz" (whether in whole or in part and regardless of what such doll is or has

6 been also, previously or subsequently called) or that is now or has ever been sold

7 or marketed as part of the "Bratz" line, and all prototypes, models, samples and

8 versions of such doll or any portion thereof.

9         H.    "ANGEL" means any project that is the subject of

10 MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20,

11 MGA000724-28 and MGA000734, and any doll (sometimes purportedly called

12 "Angel," "Angel Faces" and/or "Prayer Angels") or any portion thereof that is the

13 subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20,

14 MGA000724-28 and MGA000734, including all prototypes, models, samples and

15 versions of such doll(s) or any portion thereof. Without limiting the generality of

16 the foregoing, "ANGEL" means any project or any doll or any portion thereof that

17 is the subject of MGA000706-08, MGA000710-12, MGA000714-16,

18 MGA000718-20, MGA000724-28 and MGA000734, regardless of what any such

19 project or doll has in fact been called, and regardless of what any such project or

20 doll is or has been also, previously or subsequently called.

21         I.    "DESIGNS" means any and all works, designs, artwork,

22 sketches, drawings, illustrations, representations, depictions, blueprints,

23 schematics, diagrams, descriptions, sculptures, prototypes, models, samples,

24 reductions to practice, developments, know-how, ideas, concepts, inventions

25 and/or improvements, as well as all other items, things and DOCUMENTS in

26 which any of the foregoing are or have been expressed, embodied, contained,

27 fixed or reflected in any manner, whether in whole or in part.

28

-4-

FIRST REQUEST FOR PRODUCTION TO MGA

EXHIBIT 16 PAGE 274

1          J.    "COMMUNICATION" or "COMMUNICATIONS" means and

2  includes any disclosure, transfer or exchange of information between two or more

3  PERSONS, whether orally or in writing, including, without limitation, any

4  conversation or discussion by means of meeting, letter, telephone, note,

5  memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic

6  or other medium, including without limitation in written, audio or video form.

7          K.    The singular form of a noun or pronoun includes within its

8  meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of

9  the masculine form of a pronoun also includes within its meaning the feminine

10  form of the pronoun so used, and *vice versa*; the use of any tense of any verb

11  includes also within its meaning all other tenses of the verb so used, whenever

12  such construction results in a broader request for information; and "and" includes

13  "or" and *vice versa*, whenever such construction results in a broader disclosure of

14  documents or information.

15

16                                   INSTRUCTIONS

17

18          A.    Unless otherwise specified, these requests call for

19  DOCUMENTS prepared on or after January 1, 1995 through the present.

20  Documents shall be produced in their original file folders, or in lieu thereof, any

21  writing on the file folder from which each such document is taken shall be copied

22  and appended to such document and the person for whom or department, division,

23  or office for which the document or the file folder is maintained shall be

24  identified.

25          B.    YOU are to produce all DOCUMENTS requested hereby that

26  are in YOUR possession, custody and control.

27          C.    In the event that any document called for by these requests is to

28  be withheld on the basis of a claim of privilege or immunity from discovery, that

EXHIBIT _16_ PAGE _275_

1  document is to be identified by stating (i) any addressor and addressee; (ii) any

2  indicated or blind copy; (iii) the document's date, subject matter, number of pages,

3  and attachments or appendices; (iv) all persons to whom the document was

4  distributed, shown, or explained; (v) its present custodian; and (vi) the nature of

5  the privilege or immunity asserted.

6         D.   In the event that any document called for by these requests has

7  been destroyed or discarded, that document is to be identified by stating: (i) any

8  addressor and addressee; (ii) any indicated or blind copies; (iii) the document's

9  date, subject matter, number of pages, and attachments or appendices; (iv) all

10  persons to whom the document was distributed, shown, or explained; (v) the date

11  of destruction or discard, manner of destruction or discard, and reason for

12  destruction or discard; (vi) the persons who were authorized to carry out such

13  destruction or discard; and (vii) whether any copies of the document presently

14  exist and, if so, the name of the custodian of each copy.

15

16                    REQUESTS FOR PRODUCTION

17

18  REQUEST FOR PRODUCTION NO. 1:

19         All DOCUMENTS that REFER OR RELATE TO any agreement or

20  contract between YOU and BRYANT, including without limitation all drafts

21  thereof and all actual or proposed amendments, modifications and revisions

22  thereto.

23

24  REQUEST FOR PRODUCTION NO. 2:

25         All DOCUMENTS that REFER OR RELATE TO the performance of

26  any agreement or contract between YOU and BRYANT.

27

28

EXHIBIT _16_ PAGE _276_

1  REQUEST FOR PRODUCTION NO. 3:

2          ALL DOCUMENTS that REFER OR RELATE TO the agreement

3  dated as of September 18, 2000 between YOU and BRYANT, including without

4  limitation all drafts thereof and any actual or proposed modifications, amendments

5  or revisions thereto.

6

7  REQUEST FOR PRODUCTION NO. 4:

8          ALL DOCUMENTS that REFER OR RELATE TO the Modification

9  and Clarification of the Agreement dated as of September 18, 2000 between YOU

10 and BRYANT, including without limitation all drafts thereof and any actual or

11 proposed modifications, amendments or revisions thereto.

12

13 REQUEST FOR PRODUCTION NO. 5:

14         ALL DOCUMENTS that REFER OR RELATE TO the agreement

15 dated April 2001 between YOU and BRYANT, including without limitation all

16 drafts thereof and any actual or proposed modifications, amendments or revisions

17 thereto.

18

19 REQUEST FOR PRODUCTION NO. 6:

20         All DOCUMENTS prepared, created, received or transmitted

21 (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE

22 TO BRYANT.

23

24 REQUEST FOR PRODUCTION NO. 7:

25         All DOCUMENTS that REFER OR RELATE TO any work,

26 activities or services, including without limitation any freelance work or

27 consulting services, that BRYANT performed for or with YOU or on YOUR

28

-7-

EXHIBIT _/6_ PAGE _277_

1    behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

2    prepared, created, received or transmitted, whether in whole or in part).

3

4    REQUEST FOR PRODUCTION NO. 8:

5            All DOCUMENTS that REFER OR RELATE TO any work,

6    activities or services, including without limitation any freelance work or

7    consulting services, that Anna Rhee performed for or with YOU or on YOUR

8    behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

9    prepared, created, received or transmitted, whether in whole or in part).

10

11    REQUEST FOR PRODUCTION NO. 9:

12            All DOCUMENTS that REFER OR RELATE TO any work,

13    activities or services, including without limitation any freelance work or

14    consulting services, that Veronica Marlow performed for or with YOU or on

15    YOUR behalf prior to January 1, 2001 (regardless of when any such DOCUMENT

16    was prepared, created, received or transmitted, whether in whole or in part).

17

18    REQUEST FOR PRODUCTION NO. 10:

19            All DOCUMENTS that REFER OR RELATE TO any work,

20    activities or services, including without limitation any freelance work or

21    consulting services, that Sarah Halpern performed for or with YOU or on YOUR

22    behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

23    prepared, created, received or transmitted, whether in whole or in part).

24

25    REQUEST FOR PRODUCTION NO. 11:

26            All DOCUMENTS that REFER OR RELATE TO any work,

27    activities or services, including without limitation any freelance work or

28    consulting services, that Jesse Ramirez performed for or with YOU or on YOUR

-8-

EXHIBIT _16_ PAGE _228_

1 behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

2 prepared, created, received or transmitted, whether in whole or in part).

3

4 REQUEST FOR PRODUCTION NO. 12:

5       All DOCUMENTS that REFER OR RELATE TO any work,

6 activities or services, including without limitation any freelance work or

7 consulting services, that Margaret Hatch (also known as Margaret Leahy and/or

8 Margaret Hatch-Leahy) performed for or with YOU or on YOUR behalf prior to

9 January 1, 2001 (regardless of when any such DOCUMENT was prepared,

10 created, received or transmitted, whether in whole or in part).

11

12 REQUEST FOR PRODUCTION NO. 13:

13       All DOCUMENTS that REFER OR RELATE TO any work,

14 activities or services, including without limitation any freelance work or

15 consulting services, that Elise Cloonan performed for or with YOU or on YOUR

16 behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

17 prepared, created, received or transmitted, whether in whole or in part).

18

19 REQUEST FOR PRODUCTION NO. 14:

20       All agreements and contracts between YOU and Anna Rhee,

21 including without limitation all drafts thereof and amendments, modifications and

22 revisions thereto.

23

24 REQUEST FOR PRODUCTION NO. 15:

25       All DOCUMENTS that REFER OR RELATE TO any agreement or

26 contract between YOU and Anna Rhee, including without limitation all

27 COMMUNICATIONS that REFER OR RELATE thereto.

28

-9-

FIRST REQUEST FOR PRODUCTION TO MGA

EXHIBIT _16_ PAGE 279

REQUEST FOR PRODUCTION NO. 16:

All agreements and contracts between YOU and Veronica Marlow, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

REQUEST FOR PRODUCTION NO. 17:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Veronica Marlow, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

REQUEST FOR PRODUCTION NO. 18:

All agreements and contracts between YOU and Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), including without limitation all drafts thereof and amendments, modifications and revisions thereto.

REQUEST FOR PRODUCTION NO. 19:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

REQUEST FOR PRODUCTION NO. 20:

All agreements and contracts between YOU and Sarah Halpern, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

-10-

EXHIBIT _16_ PAGE _280_

REQUEST FOR PRODUCTION NO. 21:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Sarah Halpern, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

REQUEST FOR PRODUCTION NO. 22:

All agreements and contracts between YOU and Jesse Ramirez, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

REQUEST FOR PRODUCTION NO. 23:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Jesse Ramirez, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

REQUEST FOR PRODUCTION NO. 24:

All agreements and contracts between YOU and Elise Cloonan, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

REQUEST FOR PRODUCTION NO. 25:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Elise Cloonan, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

EXHIBIT _16_ PAGE _281_

1  REQUEST FOR PRODUCTION NO. 26:

2         All DOCUMENTS that REFER OR RELATE TO DESIGNS that

3  BRYANT produced, prepared, created, authored, conceived of or reduced to

4  practice, whether alone or jointly with others, prior to January 1, 2001.

5

6  REQUEST FOR PRODUCTION NO. 27:

7         All DOCUMENTS that REFER OR RELATE TO DESIGNS

8  produced, prepared, created, authored, conceived of or reduced to practice prior to

9  January 1, 2001 by BRYANT, whether alone or jointly with others, in which YOU

10 have purported at any time to purchase, acquire or own any right, title or interest

11 (whether in whole or in part).

12

13 REQUEST FOR PRODUCTION NO. 28:

14        All DOCUMENTS that REFER OR RELATE TO DESIGNS

15 produced, prepared, created, authored, conceived of or reduced to practice prior to

16 January 1, 2001 by Margaret Hatch (also known as Margaret Leahy and/or

17 Margaret Hatch-Leahy), whether alone or jointly with others, in which YOU have

18 purported at any time to purchase, acquire or own any right, title or interest

19 (whether in whole or in part).

20

21 REQUEST FOR PRODUCTION NO. 29:

22        All DOCUMENTS, including without limitation all

23 COMMUNICATIONS between YOU and any PERSON, that REFER OR

24 RELATE TO any agreement or contract between BRYANT and Mattel, Inc.

25

26 REQUEST FOR PRODUCTION NO. 30:

27        All DOCUMENTS, including without limitation all

28 COMMUNICATIONS between YOU and any PERSON, that REFER OR

-12-

FIRST REQUEST FOR PRODUCTION TO MGA

EXHIBIT _16_ PAGE _282_

1  RELATE TO any agreement or contract between Margaret Hatch (also known as
2  Margaret Leahy and/or Margaret Hatch-Leahy) and Mattel, Inc.
3
4  REQUEST FOR PRODUCTION NO. 31:
5       All COMMUNICATIONS between YOU and BRYANT that REFER
6  OR RELATE TO Mattel, Inc. or any officer, director, employee or representative
7  of Mattel, Inc.
8
9  REQUEST FOR PRODUCTION NO. 32:
10      All DOCUMENTS prepared, written, transmitted or received
11 (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE
12 TO BRATZ.
13
14 REQUEST FOR PRODUCTION NO. 33:
15      All DOCUMENTS that REFER OR RELATE TO BRATZ that
16 REFER OR RELATE TO any time prior to January 1, 2001 (regardless of when
17 such document was prepared, written, transmitted or received, whether in whole or
18 in part).
19
20 REQUEST FOR PRODUCTION NO. 34:
21      All DOCUMENTS prepared, written, transmitted or received
22 (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE
23 TO ANGEL.
24
25 REQUEST FOR PRODUCTION NO. 35:
26      All DOCUMENTS that REFER OR RELATE TO ANGEL that
27 REFER OR RELATE TO any time prior to January 1, 2001 (regardless of when
28

-13-

EXHIBIT _16_ PAGE _283_

1  such document was prepared, written, transmitted or received, whether in whole or

2  in part).

3

4  REQUEST FOR PRODUCTION NO. 36:

5          All DOCUMENTS that REFER OR RELATE TO the origin(s),

6  conception or creation of BRATZ, including without limitation all DOCUMENTS

7  that REFER OR RELATE TO the timing of, and the method and manner in which,

8  BRATZ first came to YOUR attention.

9

10  REQUEST FOR PRODUCTION NO. 37:

11          All declarations, affidavits and other sworn written statements of any

12  other type or form by YOU that REFER OR RELATE TO BRATZ (other than

13  those previously filed and served in this action).

14

15  REQUEST FOR PRODUCTION NO. 38:

16          All transcripts and video and/or audio recordings of statements made

17  by YOU under oath, including without limitation all deposition transcripts, trial

18  transcripts and arbitration transcripts, that REFER OR RELATE TO BRATZ

19  (other than those taken in this action when Mattel, Inc.'s counsel was in

20  attendance).

21

22  REQUEST FOR PRODUCTION NO. 39:

23          All declarations, affidavits and other sworn written statements of any

24  other type or form by any PERSON that REFER OR RELATE TO ANGEL (other

25  than those previously filed and served in this action).

26

27

28

REQUEST FOR PRODUCTION NO. 40:

All transcripts and video and/or audio recordings of statements made by any PERSON under oath, including without limitation all deposition transcripts, trial transcripts and arbitration transcripts, that REFER OR RELATE TO ANGEL (other than those taken in this action when Mattel, Inc.'s counsel was in attendance).

REQUEST FOR PRODUCTION NO. 41:

All DOCUMENTS that REFER OR RELATE TO BRATZ and/or ANGEL filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad Larian against Isaac Larian, including without limitation all declarations, affidavits and sworn testimony given by any PERSON in such suit or arbitration proceedings.

REQUEST FOR PRODUCTION NO. 42:

All DOCUMENTS that REFER OR RELATE TO any payment made to or on behalf of BRYANT prior to October 21, 2000 or for work or services performed by BRYANT prior to October 21, 2000 regardless of when such payment was actually made.

REQUEST FOR PRODUCTION NO. 43:

All DOCUMENTS that REFER OR RELATE TO any payment made to or on behalf of BRYANT for DESIGNS that BRYANT assigned or transferred to YOU prior to October 21, 2000, regardless of when such payment was actually made.

REQUEST FOR PRODUCTION NO. 44:

All DOCUMENTS that REFER OR RELATE TO invoices submitted by BRYANT to YOU prior to January 31, 2001.

REQUEST FOR PRODUCTION NO. 45:

All of YOUR royalty statements to or for BRYANT.

REQUEST FOR PRODUCTION NO. 46:

All DOCUMENTS that REFER OR RELATE TO BRYANT'S participation in the conception, creation, design, development, sculpting, tooling, production or manufacture of BRATZ.

REQUEST FOR PRODUCTION NO. 47:

All DOCUMENTS that REFER OR RELATE TO BRYANT'S participation in the conception, creation, design, development, sculpting, tooling, production or manufacture of ANGEL.

REQUEST FOR PRODUCTION NO. 48:

All non-privileged COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE TO this action.

REQUEST FOR PRODUCTION NO. 49:

All DOCUMENTS that REFER OR RELATE TO any indemnification that BRYANT has sought, proposed, requested or obtained in connection with this action.

-16-

EXHIBIT _16_ PAGE 286

1  REQUEST FOR PRODUCTION NO. 50:

2          All DOCUMENTS that REFER OR RELATE TO any

3  indemnification that YOU have sought, proposed, requested or obtained in

4  connection with this action.

5

6  REQUEST FOR PRODUCTION NO. 51:

7          All DOCUMENTS that REFER OR RELATE TO each and every

8  sculpt of BRATZ (including without limitation any model, prototype or sample

9  thereof) prior to June 1, 2001.

10

11  REQUEST FOR PRODUCTION NO. 52:

12          All DOCUMENTS that REFER OR RELATE TO each and every

13  sculpt of ANGEL (including without limitation any model, prototype or sample

14  thereof).

15

16  REQUEST FOR PRODUCTION NO. 53:

17          All DOCUMENTS that REFER OR RELATE TO the procurement,

18  fabrication, preparation and production of each and every mold for BRATZ

19  (including without limitation for any model, prototype or sample thereof) prior

20  June 1, 2001, including without limitation all orders, purchase orders and invoices

21  relating thereto.

22

23  REQUEST FOR PRODUCTION NO. 54:

24          DOCUMENTS sufficient to show when any mold for ANGEL

25  (including without limitation for any model, prototype or sample thereof) was first

26  ordered, procured, fabricated, prepared and produced.

27

28

-17-

EXHIBIT _16_ PAGE _287_

1  REQUEST FOR PRODUCTION NO. 55:

2         All DOCUMENTS that REFER OR RELATE TO the exhibition, or

3  proposed, offered or requested exhibition, of BRATZ (including without limitation

4  any model, prototype or sample thereof) to any third party prior to June 1, 2001.

5

6  REQUEST FOR PRODUCTION NO. 56:

7         DOCUMENTS sufficient to show when ANGEL (including without

8  limitation any model, prototype or sample thereof) was first exhibited to any third

9  party.

10

11  REQUEST FOR PRODUCTION NO. 57:

12         DOCUMENTS sufficient to show when and where BRATZ

13  (including without limitation any model, prototype or sample thereof) was first

14  marketed to any wholesaler, distributor and/or retailer.

15

16  REQUEST FOR PRODUCTION NO. 58:

17         DOCUMENTS sufficient to show when and where ANGEL

18  (including without limitation any model, prototype or sample thereof) was first

19  marketed to any wholesaler, distributor and/or retailer.

20

21  REQUEST FOR PRODUCTION NO. 59:

22         DOCUMENTS sufficient to show when and where BRATZ

23  (including without limitation any model, prototype or sample thereof) was first

24  offered for sale to any wholesaler, distributor and/or retailer.

25

26

27

28

-18-

EXHIBIT _16_ PAGE _288_

1  REQUEST FOR PRODUCTION NO. 60:

2      DOCUMENTS sufficient to show when and where ANGEL

3  (including without limitation any model, prototype or sample thereof) was first

4  offered for sale by YOU to any wholesaler, distributor and/or retailer.

5

6  REQUEST FOR PRODUCTION NO. 61:

7      DOCUMENTS sufficient to show when and where BRATZ was first

8  shipped, distributed and sold.

9

10  REQUEST FOR PRODUCTION NO. 62:

11      DOCUMENTS sufficient to show when and where ANGEL was first

12  shipped, distributed and sold.

13

14  REQUEST FOR PRODUCTION NO. 63:

15      All DOCUMENTS that REFER OR RELATE TO the licensing,

16  including without limitation the proposed or requested licensing, of BRATZ prior

17  to December 31, 2001.

18

19  REQUEST FOR PRODUCTION NO. 64:

20      All COMMUNICATIONS between YOU and any manufacturer, or

21  any contemplated, proposed or potential manufacturer, that REFER OR RELATE

22  TO BRATZ prior to June 1, 2001.

23

24  REQUEST FOR PRODUCTION NO. 65:

25      DOCUMENTS sufficient to identify when YOU first contacted any

26  manufacturer, or any contemplated, proposed or potential manufacturer, for the

27  manufacture of ANGEL.

28

FIRST REQUEST FOR PRODUCTION TO MGA

EXHIBIT __16__ PAGE __289__

REQUEST FOR PRODUCTION NO. 66:

All COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE TO the distribution or proposed or potential distribution of BRATZ prior to June 1, 2001.

REQUEST FOR PRODUCTION NO. 67:

All COMMUNICATIONS between YOU and Universal Commerce Corp., Ltd. prior to June 1, 2001.

REQUEST FOR PRODUCTION NO. 68:

All DOCUMENTS that REFER OR RELATE TO Mattel, Inc., or that were prepared, authored or created by Mattel, Inc. or any officer, director, employee or representative of Mattel, Inc., that BRYANT has ever provided to, shown, described to, communicated to or disclosed in any manner to YOU.

REQUEST FOR PRODUCTION NO. 69:

All COMMUNICATIONS between YOU and BRYANT prior to January 1, 2001, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 70:

All COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO BRYANT, Mattel, Inc., BRATZ and/or Anna Rhee, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS.

EXHIBIT _16_ PAGE _290_

REQUEST FOR PRODUCTION NO. 71:

All COMMUNICATIONS between YOU and Elise Cloonan prior to June 11, 2002, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 72:

All COMMUNICATIONS between YOU and Veronica Marlow prior to January 1, 2001, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 73:

All COMMUNICATIONS between YOU and Mercedeh Ward prior to November 6, 2000, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 74:

All COMMUNICATIONS between YOU and Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy) prior to January 1, 2001, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 75:

All COMMUNICATIONS between YOU and Anna Rhee prior to January 1, 2001, including without limitation all diaries, notes, calendars, logs,

FIRST REQUEST FOR PRODUCTION TO MGA

EXHIBIT _16_ PAGE _291_

1  phone records and letters, that reflect, record or memorialize or otherwise REFER

2  OR RELATE TO any such COMMUNICATIONS.

3

4  REQUEST FOR PRODUCTION NO. 76:

5          All COMMUNICATIONS between Veronica Marlow and Anna Rhee

6  prior to January 1, 2001, including without limitation all diaries, notes, calendars,

7  logs, phone records and letters, that reflect, record or memorialize or otherwise

8  REFER OR RELATE TO any such COMMUNICATIONS.

9

10  REQUEST FOR PRODUCTION NO. 77:

11          All COMMUNICATIONS between YOU and Sarah Halpern prior to

12  January 1, 2001, including without limitation all diaries, notes, calendars, logs,

13  phone records and letters, that reflect, record or memorialize or otherwise REFER

14  OR RELATE TO any such COMMUNICATIONS.

15

16  REQUEST FOR PRODUCTION NO. 78:

17          All COMMUNICATIONS between YOU and Jesse Ramirez prior to

18  January 1, 2001, including without limitation all diaries, notes, calendars, logs,

19  phone records and letters, that reflect, record or memorialize or otherwise REFER

20  OR RELATE TO any such COMMUNICATIONS.

21

22  REQUEST FOR PRODUCTION NO. 79:

23          Any personnel or vendor file that YOU have created or maintained

24  concerning BRYANT.

25

26  REQUEST FOR PRODUCTION NO. 80:

27          Any personnel file that YOU have created or maintained concerning

28  Paula Treantafellas.

EXHIBIT _16_ PAGE _292_

REQUEST FOR PRODUCTION NO. 81:

Any personnel file that YOU have created or maintained concerning Mercedeh Ward.

REQUEST FOR PRODUCTION NO. 82:

Any personnel or vendor file that YOU have created or maintained concerning Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy).

REQUEST FOR PRODUCTION NO. 83:

Any personnel or vendor file that YOU have created or maintained concerning Veronica Marlow.

REQUEST FOR PRODUCTION NO. 84:

Any personnel or vendor file that YOU have created or maintained concerning Anna Rhee.

REQUEST FOR PRODUCTION NO. 85:

Any personnel or vendor file that YOU have created or maintained concerning Jessie Ramirez.

REQUEST FOR PRODUCTION NO. 86:

Any personnel file that YOU have created or maintained concerning Shirin Salemnia.

REQUEST FOR PRODUCTION NO. 87:

Any personnel file that YOU have created or maintained concerning Victoria O'Connor.

EXHIBIT /6 PAGE 293

1 | REQUEST FOR PRODUCTION NO. 88:

2 | Any personnel file that YOU have created or maintained concerning
3 | Farhad Larian.

4 |

5 | REQUEST FOR PRODUCTION NO. 89:

6 | All telephone records for MGA Entertainment Inc. for the time period
7 | from January 1, 1998 through January 1, 2001.

8 |

9 | REQUEST FOR PRODUCTION NO. 90:

10 | All DOCUMENTS that REFER OR RELATE TO any copyright,
11 | patent or any other application or registration for BRATZ DESIGNS, including
12 | without limitation all COMMUNICATIONS pertaining thereto.

13 |

14 | REQUEST FOR PRODUCTION NO. 91:

15 | All DOCUMENTS that REFER OR RELATE TO any copyright,
16 | patent or any other application or registration for ANGEL DESIGNS, including
17 | without limitation all COMMUNICATIONS pertaining thereto.

18 |

19 | REQUEST FOR PRODUCTION NO. 92:

20 | All DOCUMENTS that REFER OR RELATE TO any testing of or
21 | sampling from any DOCUMENTS that REFER OR RELATE TO BRATZ or
22 | BRYANT, including without limitation any such testing or sampling in connection
23 | with any ink, paper or chemical analysis to date any such DOCUMENTS and
24 | including without limitation all results and reports relating thereto.

25 |

26 |

27 |

28 |

EXHIBIT 16 PAGE 294

1  REQUEST FOR PRODUCTION NO. 93:

2          An electronic copy of each DOCUMENT that YOU have produced in

3  this action, or that is responsive to these Requests, that is or was created, prepared,

4  generated, maintained or transmitted in digital form.

5

6  REQUEST FOR PRODUCTION NO. 94:

7          The metadata for each DOCUMENT that YOU have produced in this

8  action, or that is responsive to these Requests, that is or was created, prepared,

9  generated, maintained or transmitted in digital form.

10

11  REQUEST FOR PRODUCTION NO. 95:

12          All DOCUMENTS that support, refute or otherwise REFER OR

13  RELATE TO any facts underlying YOUR Affirmative Defenses in this action.

14

15  REQUEST FOR PRODUCTION NO. 96:

16          All doll heads, sculpts, prototypes, models, samples and tangible

17  items that were created, prepared or made, whether in whole or in part, prior to

18  January 1, 2001 that REFER OR RELATE TO BRATZ.

19

20  REQUEST FOR PRODUCTION NO. 97:

21          All doll heads, sculpts, prototypes, models, samples and tangible

22  items that were created, prepared or made, whether in whole or in part, prior to

23  January 1, 2001 that REFER OR RELATE TO ANGEL.

24

25  REQUEST FOR PRODUCTION NO. 98:

26          All doll heads, sculpts, prototypes, models, samples and tangible

27  items that Anna Rhee painted, whether in whole or in part, for or with YOU or on

28  YOUR behalf or for or on behalf of BRYANT prior to January 1, 2001.

EXHIBIT _10_ PAGE _295_

1  REQUEST FOR PRODUCTION NO. 99:

2      All doll heads, sculpts, prototypes, models, samples and tangible

3  items that REFER OR RELATE TO DESIGNS for dolls, doll accessories or toys

4  that BRYANT produced, created, authored, conceived of or reduced to practice,

5  whether alone or jointly with others, prior to January 1, 2001.

6

7  REQUEST FOR PRODUCTION NO. 100:

8      All doll heads, sculpts, prototypes, models, samples and tangible

9  items that support, refute or otherwise REFER OR RELATE TO any facts

10  underlying YOUR Affirmative Defenses in this action.

11

12  DATED:  March 14, 2005          QUINN EMANUEL URQUHART

13                                  OLIVER & HEDGES, LLP

14                                  By _Shane McKenzie_

15                                  Shane Heather McKenzie
                                    Attorneys for Plaintiff/Counter-defendant
16                                  Mattel, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

07209/642197.1

-26-

**PROOF OF SERVICE**
1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA**          )
                                 ) SS
**COUNTY OF LOS ANGELES**        )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On March 14, 2005, I served the foregoing document described as **Mattel, Inc.'s First Set of Requests For Production of Documents And Tangible Things to MGA Entertainment Inc.** on all interested parties in this action.

**Robert F. Millman, Esq.**
**Douglas A. Wickham, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
**FAX: 310-553-5583**

[  ]   By placing [ ] the original [ ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ X ]   **BY MAIL:**   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on March 14, 2005, at Los Angeles, California.

[  ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ X ]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Rebecca A. Ramos
Print Name                                    Signature

EXHIBIT _16_ PAGE _297_

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA )
                           ) SS

COUNTY OF LOS ANGELES )

     I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

     On March 14, 2005, I served the foregoing document described as **Mattel, Inc.'s First Set of Requests For Production of Documents And Tangible Things to MGA Entertainment Inc.** on all interested parties in this action.

**Paula E. Ambrosini, Esq.**
**O'Melveny & Meyers**
400 So. Hope Street
Los Angeles, CA 90071
(213) 430-6407

[ ]   By placing [ ] the original [ ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[X]   **BY PERSONAL SERVICE** I caused to be delivered such envelope by hand to the addressee.

Executed on March 14, 2005, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Rebecca A. Ramos
Print Name                   Signature

EXHIBIT 16 PAGE 298