# EXHIBIT 21

CONFORMED COPY                    FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

2007 JAN 26  PM 12: 25

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

1-26

EXHIBIT 21 PAGE 335

EXHIBIT 21 PAGE 336

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed suit against its former employee Bryant in state court asserting claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement which required him not to engage in any employment or business other than for Mattel, or invest or assist in any manner any business competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

EXHIBIT __21__ PAGE __337__

provide product design services on a "top priority" basis.[2] The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA. Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel. In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction). Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA. The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls. In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls. In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement. Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA. Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 21 PAGE 338

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT 21 PAGE 339

### G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

### H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

### I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

EXHIBIT 21 PAGE 340

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT 21 PAGE 341

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

### J.  Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 21 PAGE 342

1   his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of

2   responsive documents without any of the limitations described above.

3       Third, Mattel contends that the documents Bryant has produced are inadequate for a

4   number of reasons: the financial documents are so heavily redacted they are useless; faxed

5   documents are missing fax header information, including the sending and receiving parties[4]; e-

6   mails and other electronic documents that are known to exist have not been produced; Bryant

7   refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used

8   during the relevant period; and Bryant's privilege log is facially incomplete and lists only four

9   documents.

10

11

12      K. Bryant's Opposition to Mattel's Motion to Compel

13      Bryant opposes Mattel's motion to compel. He views the motion as nothing more than

14  Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer

15  process which began back in 2004. Bryant emphasizes that the document requests at issue were

16  first propounded at a time when Mattel was attempting to remand the case, making the claim that

17  it did not know whether $75,000 was in controversy and insisting that it was asserting solely state

18  law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that

19  discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See

20  Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later

21  years could have no conceivable relevance to the case because if those activities and earnings

22  were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of

23  2004, he produced the following categories of documents:  documents evidencing the artwork

24  used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the

25  summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

26

27

28

29

---

[4]  There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center.  MGA denies the accusation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                    8

EXHIBIT 21 PAGE 343

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation
Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and
hundreds of three dimensional doll parts and toy accessories that came into his possession over
the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at
the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to
Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led
to agreement on the following points: (a) Bryant would produce all agreements for work he
performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First
Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client
privilege with respect to communications with the attorney who assisted him in negotiating his
contract with MGA, so long as that waiver would be limited and in no way waive the privilege
with respect to litigation counsel; (c) Bryant would produce any documents relating to any
payments he received from MGA while employed at Mattel, irrespective of the date of creation;
(d) Bryant agreed to make a diligent search for all computers referenced in his deposition and
search them for responsive documents; (e) Bryant agreed to produce all documents and tangible
things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to
conduct a search and produce any patent, trademark or copyright applications, registrations and
other non-privileged documents in his possession in connection with his work with MGA prior to
June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel
could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed
to sign a verification that none of the information redacted from his phone records related to Bratz
or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log;
and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT 21 PAGE 344

1  requests and that the stipulation controlled to the extent they were inconsistent. Bryant's
2  Opposition at 5:22-6:21.

3  Bryant emphasizes that the parties have engaged in an extensive meet and confer process
4  and asks the Discovery Master to order the disposition of this motion in a manner consistent with
5
6  the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will
7  have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks
8  the Discovery Master to order Mattel not to revisit any of the requests that were the subject of
9  Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

10  Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In
11
12  particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to
13  Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone
14  records and financial information because these records are protected by privacy rights. Lastly,
15  Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit
16
17  was filed.

18  ### III. DISCUSSION

19  A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

20  The parties' extensive submissions make it clear that the parties did not resolve the issues
21  raised in the instant motion. The parties met and conferred extensively and in good faith,
22  reaching compromises on virtually all categories of documents in dispute. Despite their efforts,
23
24  however, the parties were ultimately unable to execute a binding stipulation because they were
25  unable to agree on any provision to govern Mattel's future right to pursue additional discovery
26  from Bryant. It is clear that the parties deemed it necessary to include such a provision in the
27  draft stipulation in order to protect their respective positions. Because the parties did not execute
28  a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.
29

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    10

EXHIBIT 21 PAGE 345

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT 21 PAGE 346

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

<u>Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA</u>

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT 21 PAGE 347

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

       Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's Payments from MGA

       Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

       The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT _21_ PAGE _348_

when the payments were actually made.  Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement.  Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works.  Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages.  17 U.S.C. §504(b).  The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market.  For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation.  Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel.  Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant.  Among other things, the protective order provides protection for confidential trade secret information.  It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only."  The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.  Bryant,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT 21 PAGE 329

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

EXHIBIT 21 PAGE 350

privileged documents responsive to Request Nos. 20, 23, 27, and 28.  However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA.  Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51:  Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9:  Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration.  Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper.  Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

### IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

EXHIBIT 21 PAGE 351

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2.  Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3.  Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4.  Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5.  Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6.  Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7.  Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

EXHIBIT 21 PAGE 352

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjakian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Well & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT _21_ PAGE _353_

# EXHIBIT 22

## CONFORMED COPY

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7              UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9              EASTERN DIVISION

10

11 CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                          JAMS Reference No. 1100049530
12        Plaintiff,

13   v.                                   Consolidated with
                                          Case No. CV 04-09059
14 MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15        Defendant.                      **ORDER GRANTING IN PART AND
                                          DENYING IN PART MATTEL'S
16                                        MOTION TO COMPEL MGA TO
                                          PRODUCE WITNESSES PURSUANT
17                                        TO THIRD NOTICE OF DEPOSITION
                                          UNDER RULE 30(b)(6); DENYING
18                                        REQUEST FOR SANCTIONS**

19 CONSOLIDATED WITH
   MATTEL, INC. v. BRYANT and
20 MGA ENTERTAINMENT, INC. v. MATTEL,
   INC.
21

22

23              I. INTRODUCTION

24        On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to

25 Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for

26 Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA")

27 to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice. On

28 Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                    1

FILED
2007 SEP 26  PM 2:28
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

EXHIBIT 22 PAGE 351

1  July 31, 2007, MGA submitted an opposition brief. On August 6, 2007, Mattel submitted a reply
2  brief. The matter was heard on September 24, 2007. Having considered the motion papers and
3  the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for
4  sanctions is denied.

5  II. BACKGROUND

6      Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005,
7  which specified eight topics for deposition. Mattel served a Second Notice of Deposition of
8  MGA in February of 2007, which specified forty-six topics for deposition. On June 5, 2007,
9  Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of
10 the present motion to compel. The Third Notice specifies sixteen topics for deposition. On June
11 29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and
12 conferred. The parties were not able to resolve their disputes regarding four subject matters: hard
13 drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-
14 8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian
15 and Morad Zarabi (Topic 11-13). The topics at issue are set forth below.

16 Hard Drives and Other Storage Devices

17     1.    The IDENTITY, current or last known location, and disposition of
18 each STORAGE DEVICE that each of the following PERSONS has used to
19 create, generate, prepare, draft, send and/or receive any DOCUMENT or
20 DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or
21 ANGEL at any time since January 1, 1999, including without limitation the date
22 of acquisition and the date of disposition of each STORAGE DEVICE: Isaac
23 Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica
24 Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich,
25 Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles
26 O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen,
27 Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

28
    2

EXHIBIT 22 PAGE 355

1       2.  The IDENTITY, current or last known location, and disposition of

2    each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of

3    this Notice, including without limitation the date of creation and the date of

4    disposition of each such backup or copy.

5       3.  YOUR search for and production of DOCUMENTS and DIGITAL

6    INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this

7    Notice.

8            <u>Prior Inconsistent Statements to the Press</u>

9       6.  YOUR statements to Christopher Palmeri in connection with the

10   Business Week article entitled "To Really Be A Player, Mattel Needs Hotter

11   Toys," published on or about July 28, 2003, including without limitation in

12   connection with the statement that Isaac Larian "got the idea for Bratz after seeing

13   his own kids run around in navel-bearing tops and hip-huggers."

14      7.  YOUR statements to Denise I. O'Neal in connection with the

15   Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll

16   World," published on or about March 5, 2004, including without limitation in

17   connection with the statements that MGA's "creative team decided the name

18   should be catchy and not have more than six letters. Keeping with today's trend

19   of making names more 'cool' by changing the spelling, MGA executives decided

20   to replace the 's' with a 'z'"

21      8.  YOUR statements to Jeff Weiss in connection with the San

22   Fernando Valley Business Journal article entitled "Immigrant's Creative

23   Company Shakes Up Toy Industry," published on or about March 29, 2004,

24   including without limitation in connection with the statement that "[i]t was

25   Jason's idea for Bratz."

26             "Test Projects" for MGA

27      9.  The IDENTITY of each PERSON who YOU had perform, or who

28   

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 22 PAGE 356

1   YOU requested, asked or solicited to perform, any "test project" in advance of or

2   in consideration of employment by YOU since January 1, 1995, including without

3   limitation the IDENTITY of each such PERSON who was a MATTEL employee

4   at the time.

5   Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi

6   11.   Payments of money or any other item of value that YOU have

7   made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac

8   Larian since January 1, 1999, including without limitation (a) the amounts of such

9   payment and the equivalent dollar value of each of item of value, (b) the dates of

10   such payment, (c) the IDENTITY of each recipient of such payment, (d) the

11   IDENTITY of each bank or financial institution account to which such payment

12   was made and (e) the reasons for each such payment.

13   12.   Payments of money or any other item of value that YOU have

14   made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

15   Larian since January 1, 1999, including without limitation (a) the amounts of each

16   such payment and the equivalent dollar value of each of item of value, (b) the

17   timing of each such payment, (c) the IDENTITY of each recipient of each such

18   payment, (d) the IDENTITY of each bank or financial institution account to

19   which such payment was made and (e) the reasons for each such payment.

20   13.   Payments of money or any other item of value that YOU have

21   made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad

22   Zarabi since January 1, 1999, including without limitation (a) the amounts of each

23   such payment and the equivalent dollar value of each item of value, (b) the timing

24   of each such payment, (c) the IDENTITY of each recipient of each such payment,

25   (d) the IDENTITY of each bank or financial institution account to which such

26   payment was made and (e) the reasons for each such payment.

27   Zeller Decl., Ex. 23.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 22 PAGE 357

1    Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,

2    9 and 11-13, and overruling all of MGA's objections and limitations. Mattel contends that the

3    testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as

4    cumulative or duplicative of any other deposition testimony already given in the case.

5    MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave

6    of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.

7    MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for

8    examining MGA any further. MGA further contends that Mattel has not established the requisite

9    good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify

10   its objections to the Third Notice. Lastly, MGA contends that Mattel has had many opportunities

11   to obtain, and in many cases has already obtained, the information it now moves to compel.

12                                    III. STANDARDS

13   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

14   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

15   party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

16   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

17   Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of

18   use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably

19   cumulative or duplicative, or is obtainable from some other source that is more convenient, less

20   burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

21   discovery in the action to obtain the information sought; or (iii) the burden or expense of the

22   proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

23   amount in controversy, the parties' resources, the importance of the issues at stake in the

24   litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

25   26(b)(2)(C).

26   Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including

27   a party, by deposition upon oral examination without leave of court, except as provided in Rule

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 22 PAGE 358

1  30(a)(2), Fed.R.Civ.P.  In particular, Rule 30(a)(2) specifies that a party must obtain leave of

2  court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2),

3  Fed.R.Civ.P., if "the person to be examined already has been deposed in the case."  Fed.R.Civ.P.

4  30(a)(2)(B).

5  IV. DISCUSSION

6      As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies

7  to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P.  There is caselaw to support each

8  party's position.  See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st

9  Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re

10  Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second

11  Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza

12  Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without

13  leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D.

14  N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions).  For

15  purposes of the present motion, however, it is unnecessary to resolve this conflict in the law

16  because the debate is purely academic and inconsequential.  As Mattel has requested, Mattel's

17  motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with

18  additional topics.  In evaluating the appropriateness of the topics, it is Mattel's burden to

19  demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis

20  Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2),

21  Fed.R.Civ.P.

22  Hard Drives and Other Storage Devices (Topics 1-3)

23      Topic 1 seeks information regarding the location and disposition of computer hard drives

24  or other storage devices used by specified MGA employees or contractors that contain or

25  contained documents related to the Bratz or Angel projects. Topic 2 seeks the identification and

26  last known location of any backup, copy or image of the hard drives or storage devices identified

27  in Topic 1. Topic 3 seeks information regarding MGA's search for and production of documents

28  

6

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 22 PAGE 359

1    and digital information from the hard drives and storage devices referenced in Topic 1.

2         MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,

3    irrelevant, and not reasonably calculated to lead to admissible evidence.  MGA also objected to

4    Topics 1-3 to the extent that the information sought is obtainable through other more convenient,

5    less burdensome and less expensive means.  Lastly, MGA objected to Topics 1-3 as unreasonably

6    cumulative and duplicative of information already provided by Ken Lockhart, Vice President and

7    Chief Information Officer for MGA.

8         Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule

9    26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not

10   privileged, that is relevant to the claim or defense of any party, including "the existence,

11   description, nature, custody, condition, and location of any books, documents or other things."  A

12   portion of the discovery sought, however, is unreasonably cumulative and duplicative of

13   information already provided by Mr. Lockhart.  MGA designated Mr. Lockhart as a 30(b)(6)

14   witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital

15   information systems and application software, employees' electronic messaging systems, and

16   MGA's policies regarding the use of transportable media.  Mr. Lockhart testified about the

17   location and disposition of MGA employees' hard drives and storage devices in general.

18        Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the

19   testimony previously given by Mr. Lockhart in that Mattel now seeks information about the

20   locations and dispositions of hard drives used by 24 named individuals.  Mattel contends that the

21   testimony it seeks will enable it to assess MGA's production, including whether any documents

22   requested or compelled by the Court were destroyed, not collected or otherwise made unavailable

23   to Mattel.  Mattel's Reply at p.7.

24        Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be

25   legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the

26   circumstances of this case.  Mattel has accused MGA of obstructing discovery, and in particular

27   withholding Bryant's computer.  There is no evidence, however, to suggest that MGA has refused

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 22 PAGE 360

1   or failed to search for and produce responsive documents located on the hard drives of the other

2   individuals named in Topic 1. It is burdensome and expensive to prepare a witness to testify

3   about the locations and dispositions of hard drives used for 24 different individuals. The likely

4   benefit of undergoing such a burden and expense is doubtful. Furthermore, there are other less

5   burdensome and less expensive means of assessing whether MGA has complied with its

6   discovery obligations, including for example, document requests and interrogatories. Therefore,

7   Mattel's motion is denied as to Topics 1-3.

8                          Prior Inconsistent Statements to the Press (Topics 6-8)

9          Topics 6-8 seek testimony regarding three public statements made by Isaac Larian

10  regarding who conceived of Bratz. MGA objected to Topics 6-8 as irrelevant and not reasonably

11  calculated to lead to admissible evidence. MGA also objected to Topics 6-8 to the extent that the

12  information sought is obtainable through other more convenient, less burdensome and less

13  expensive means. Further, MGA objected to Topics 6-8 as unreasonably cumulative and

14  duplicative of information already provided by MGA and/or Carter Bryant. MGA also objected

15  to a deposition on these Topics "to the extent that the statements referenced above were not made

16  by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6)

17  designation." Zeller Decl., Ex. 24.

18         Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition

19  because each of the statements identified therein was made by MGA's Chief Executive Officer,

20  Isaac Larian. Mattel acknowledges that it already deposed Isaac Larian regarding one of the

21  articles identified in Topics 6-8, but contends that it is not attempting to re-depose him. Rather,

22  Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will

23  not be "sandbagged" at trial. Mattel's Reply at p.6.

24         MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac

25  Larian is the person who should be, and already has been, deposed about the statements identified

26  in Topics 6-8. MGA also contends that Mattel opted to limit its examination of Isaac Larian to

27  one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

28

EXHIBIT 22 PAGE 361

1   MGA now. MGA also contends that Mattel could avail itself of other discovery methods, such as

2   interrogatories or requests for admission, to obtain further information about the publications

3   identified in Topics 6-8.

4        Topics 6-8 seek information relevant to the central issue in the case: who conceived of

5   Bratz. Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will

6   bind the corporation. The testimony Mattel now seeks is not unreasonably cumulative or

7   duplicative of testimony it has already sought from Isaac Larian because Mattel previously

8   questioned Isaac Larian about only one of the articles identified in Topics 6-8. Further, the likely

9   benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics

10   6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel

11   seeks. Mattel's motion is granted as to Topics 6-8.

12   "Test Projects" for MGA (Topic 9)

13        In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA

14   requested, asked or solicited to perform, any "test project" in advance of or in consideration of

15   employment by MGA since January 1, 1995. MGA objected to Topic 9 as irrelevant, not

16   reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly

17   burdensome, and unreasonably cumulative and duplicative. MGA also objected to Topic 9 as

18   vague and ambiguous, particularly with respect to the term "test project." MGA also objected to

19   Topic 9 to the extent that the information sought is obtainable through other, more convenient,

20   less burdensome and less expensive means. MGA also objected to Topic 9 as seeking

21   confidential, proprietary, and commercially sensitive information with no relevance to the

22   litigation.

23        When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind

24   of a project for" MGA. Zeller Decl., Ex. 29 at 9:19-20. He also referred to this "tryout" project

25   as a "test assignment." Id. at 515-516. In light of Bryant's testimony, Mattel's stated purpose of

26   Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's

27   working for MGA while employed by Mattel was no different than a supposedly standard

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT 22 PAGE 362

1  industry practice of having candidates for creative positions make artwork as part of the job

2  interview." Mattel's Motion at p.22.

3       MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in

4  its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains

5  objectionable as overbroad, reasoning that it would require MGA to provide information "with

6  regard to how it proceeded with hiring virtually every single employee hired since 1995."

7  MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require

8  MGA to have a designee review and potentially memorize information about every single person

9  who has applied for a job at MGA since 1995, particularly when Bryant only began working for

10  MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6)

11  deposition to obtain the information called for in Topic 9.

12       Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their

13  claim that Bryant's work for MGA while employed by Mattel was no different than a standard

14  industry practice of having candidates for creative positions make artwork as part of the job

15  interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In

16  particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin

17  working at MGA until the year 2000. Topic 9 is also objectionable because the information

18  sought is more appropriately obtained through a contention interrogatory, which would be

19  significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's

20  motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is

21  granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998

22  through 2004.

23       Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)

24       In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac

25  Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to

26  these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible

27  evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 22 PAGE 363

1   also objected to Topics 11-13 to the extent that the information sought is obtainable through

2   other, more convenient, less burdensome and less expensive means.  MGA also objected to

3   Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no

4   relevance to the litigation.

5          Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad

6   Larian that involved the timing of the creation of Bratz.  More specifically, Farhad Larian claimed

7   that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and

8   alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.

9   Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and

10  therefore seeks information that may establish their bias.  Mattel also emphasizes that Isaac

11  Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's

12  claim for punitive damages, and may be used as impeachment evidence.  Lastly, although Mattel

13  acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel

14  contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15         MGA contends that Topics 11-13 are not relevant to this lawsuit.  In particular, MGA

16  objects to Topics 12 and 13 as seeking "private financial records of persons who are neither

17  parties nor witnesses in this action, and whose only connection is knowing people involved in the

18  lawsuit."  MGA's Opposition at p. 13.  With regard to payments to Isaac Larian, MGA contends

19  that Mattel already had the opportunity to ask him about payments during his deposition.  MGA

20  also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at

21  this time.  Even if Mattel is entitled to conduct such discovery, MGA contends that payments

22  made to him would not establish his net worth because they represent only one of many sources

23  of income and do not account for his other assets and liabilities.

24         MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and

25  defenses in the case.  Payments to Isaac Larian and Farhad Larian may also show possible bias

26  and be used for impeachment purposes.  Moreover, MGA's payments to Isaac Larian may be

27  relevant to Mattel's claim for punitive damages.  Payments to Isaac Larian are a component of his

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT 22 PAGE 364

1   net worth, even if they represent one source of income. The burden of producing such information

2   does not outweigh its relevance, taking into consideration the circumstances of this case.

3   Furthermore, there is no stay on discovery pertaining to punitive damages.  Accordingly, Mattel's

4   motion is granted as to Topics 11 and 12.

5          In contrast, MGA's payments to Morad Zarabi are irrelevant.  His only connection to this

6   litigation appears to be with the arbitration proceedings.  Any potential relevance of MGA's

7   payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial

8   affairs.  Mattel's motion is denied as to Topic 13.

9                              V. CONCLUSION

10         For the reasons set forth above, it is hereby ordered as follows:

11         1.     Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

12         2.     Mattel's motion to compel is denied as to Topics 1-3, 9 and 13.  In lieu of taking a

13  deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory

14  regarding Topic 9 that is limited to the years 1998 through 2004.

15         3.  Mattel's request for sanctions is denied.

16  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

17  Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20  Dated: September _25_, 2007

21                                                     HON. EDWARD A. INFANTE (Ret.)
                                                       Discovery Master
22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              12

EXHIBIT 22 PAGE 315

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 26, 2007, I served the attached ORDER GRANTING IN PART AND DENYI8NG IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart; Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 26, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 22 PAGE 366

# EXHIBIT 23

License Europe - The man with a passion for ‎ dolls



☒ Close Window

🖨 Print

# The man with a passion for fashion dolls

Oct 1, 2003
By: Sam Phillips
License! Europe



## When did you launch your first doll?

Our first doll was produced in 1997, called Singing Bouncy Baby. I saw it from a toy inventor and didn't like it. But I presented it to a buyer at Target Stores. He said 'Your company's called Micro Games. What are you doing with dolls?!' I said if that's the only issue I'll change the name. So we became MGA Entertainment and in 1997 that doll won toy of the year award and we sold over a million pieces – unusual for a large doll.

## How did the idea for Bratz come about?

A Wal-Mart buyer told me if I could bring in a product that could compete with Barbie, he'd take it. So I spent 18 months researching it. Finally a designer came up with the Bratz look. We tested it and found it worked. Now we have 18ft of shelf space at Wal-Mart. The funny thing is that the buyer turned out to be

EXHIBIT 23 PAGE 367

License Europe – The man with a passion for 　 dolls

one of the last buyers to take Bratz.

## How did you know there was a gap in the market?

I have three children and they have 22 cousins so I've always been in touch with children and what they are looking for. We all know kids are getting older younger and at MGA we observed children at the stage they were no longer interested in Barbie dolls. They were looking for fashion and for products that inspire them and reflect how they are. I saw that girls didn't want Barbie after the age of seven.

## Why were you so sure it would work?

To be frank it was a gut feeling. Instinct, validated by research with children. I remember seeing their eyes light up when they handled the dolls.

Isaac Larian, president and CEO of MGA Entertainment, is originally from Iran. He left to travel to the USA aged 17 with a few dollars in his pocket. They ran out after a month and he worked in restaurants to pay his way through a civil engineering degree at college and then business school. A year after graduating, he founded the company that would become MGA Entertainment and the power behind the fashion doll phenomenon Bratz. He is reputed to be earning tens of thousands of dollars a minute and his company is turning over in excess of $2bn. He is described as a quintessential entrepreneur, a bold thinker and a workaholic.

The clothes are very fashionable – it's the look of urban America. The other thing is that most fashion dolls are 11 inches high. This equates to a woman over six feet tall, which just isn't likely. We made Bratz 10 inches on purpose so their proportions are more realistic. We also gave them diverse ethnicity and colouring.

## Why is 'detail' always mentioned in relation to Bratz?

It's amazing how kids, especially girls, pay attention to detail in fashion, clothing, make up and so on. The first Chloe doll had embroidery on her pants. For the UK, Bandai wanted to offer the doll at a slightly lower price and removed the embroidery. We received emails pointing out the differences.



MGA Entertainment

## Did you know Bratz would be a worldwide hit?

I knew it would be a hit in the UK where there is common language with the US. But I didn't believe it would be so big elsewhere. It's now the top fashion doll in Brazil, Hong Kong and Spain.

## How important are non US markets for you?

At the moment we do 20% of our turnover outside the US but want to grow that to 40-50%.

## Why did you license Bratz yourselves?

After being a licensee for so long, we felt we should have our own brands. We did try a couple of things that weren't successful. Now we're launching three new properties that are complementary to Bratz: Sugar Planet, Lil Bratz for younger kids and Happy Kids mini dolls.

## How has Bratz affected your company?

EXHIBIT 23 PAGE 308

License Europe - The man with a passion for      n dolls



MGA was growing by 40-60% each year before Bratz because we'd always believed in product innovation and launching new stuff. Now we're growing at 200-300%. Bratz non-licensed products (dolls and playsets) will turnover over $1bn (wholesale) this year. This probably means the brand is currently worth $2-3bn worldwide.

### What percentage of MGA's business is from Bratz?

65 - 70%.

### Is it a worry having all your eggs in one basket?

The other 30% amounts to hundreds of millions of dollars of business so I don't feel we have all our eggs in one basket. We plan to keep the brand growing for years to come and to develop new brands to complement it.

### What was your vision for the how Bratz would develop?



When we went to the New York Licensing Show in 2001 people looked at us as if we were mad. But from the start we didn't want the story to be just about the dolls. We wanted Bratz to be a lifestyle brand and the licensing came quickly, two or three months after the dolls.

You are very tough on approvals.

You've heard about that?!

### Yes. Why are you so tough?

It's very important. You can't cheat children. Consumers have come to expect quality in products. It would be easy to give out too many licences, but that isn't good for long term health. We are also tough on the type of partners we take on but it works. We now have over 200 licensees, a Bratz TV series in development and the number one selling girls' shoes in the US.

### What's your view of licensing in general?

I think it's a good thing as long as licensees don't abuse their situation by not investing time in product development.

### Bratz is a very expensive licence, isn't it?

EXHIBIT 23 PAGE 309

Yes it is. We've spent time and resources on creating and designing product, an annual spend of $40m on TV advertising and so on so it's worth it.



## How will Bratz impact the toy industry?

It has already shaken up the toy industry. Barbie reigned for 43 years. But now, in Spain for example, Bratz has a bigger market share than Barbie. In the USA we hope to gain 40-50% of the market share. And in the UK in May, NPD reported a 28.4% market share of the fashion doll market.

Bratz Boyz and Lil Bratz

## Did you go out to steal market share from Barbie?

We never thought we'd knock Barbie off the top spot and you will always need Barbie for young girls. Bratz dolls tend to do more business from fewer stock control units but Barbie is still incredibly strong. The important thing about Bratz is that it has grown the fashion doll category in most territories as well as gaining a big portion of market share.

## What excites you about licensing?

The success of retro properties like the Care Bears has surprised me. And it's good to see Spider Man doing well and the return of the Turtles. But there is not much out there now. The industry needs a major hit. I don't see much newness, which creates a space for companies that are innovative to launch new concepts into.

## Do you see a lack of newness in products, too?

You can't generalise here. There are some very good licensees with highly innovative product development ideas. But being a licensee I also know how easy it is to be lazy – a product works for one licence so you try it on another. Consumers are greedy for innovation.



The view from Scandinavia

## How do you keep up that innovation?

We talk to girls aged seven to fourteen most days, in groups of 10-20. We ask them and show them ideas and listen to their feedback. If it doesn't work, you have to let it drop. We also have great designers, many from the fashion industry.

## So could Bratz look completely different in a few years?

Yes. Every year we want new details to freshen the look. For example, to start with Yasmin had brown eyes. Now she has green or blue. It keeps it interesting. We'll change according to what children are wanting. Otherwise the competition will take over.

## What do you think about all the copycat dolls on the market?

EXHIBIT 23 PAGE 370

License Europe – The man with a passion for        dolls

I guess it's the way of the industry. It's to be expected from small companies. It's a nice compliment to us but it's a sad day for the industry when people imitate rather than innovate. But overall, kids are smart. They want the real thing. I remember the early days in consumer electronics. Sony Walkman came out and attracted lots of copycats but Sony was and still is the leader.



### How will Bratz shape the future of MGA?

MGA is a private company and I'll try and keep it like that for as long as possible. Then we have the advantage of doing what we want without pressure from analysts and so on. We see ourselves as a consumer entertainment products company. We exist in lots of categories and don't want to limit ourselves to just being a toy company.

### Do you think there are dangers for a company having such a big hit?

Not always. In the case of Pokemon, for example, the property relied on a TV show and video game. When you have a lifestyle brand it's different.

### How can you be sure Bratz won't be just a fad?

By making sure we don't over-supply, watching the quality and approvals with our fashion police, being careful with licensing and with advertising and marketing support. That's how I think we'll keep the brand going.

### Do you know how much MGA is worth now?

I don't think about it. I guess it's at least a billion dollars. The most important thing is that I'm having the greatest time of my life.

### Why are you having such a good time?

I love the challenge, seeing the faces of children when they have Bratz, being interviewed by the Wall Street Journal and License! Europe! I like looking at the charts and seeing that, against all conventional wisdom, we're doing very well. I'm very competitive by nature and all this keeps me going.

### What are your personal ambitions for Bratz?

In five years time I'd like to see it as an established lifestyle brand. Just as Mattel has done with Barbie for 43 years. My vision is to keep it going by keeping it fresh and new for consumers.

### Your vision has a strong impact on the business. Can you continue to exert your individual influence on a global brand?



EXHIBIT 23 PAGE 371

License Europe - The man with a passion for ... n dolls

My vision is very important to Bratz and the company. I'm very hands on. Other companies have red tape which is meaningless. For example, I see approvals. My personal opinion is that you have to stay involved, which is very demanding.

**Are there any secrets to marketing to the tween age group?**

I'm 49 years old. I can't make decisions for 11 or 12 year olds. The best thing is to listen to them. If it works let it stay. If it doesn't, let it go.

FL 0699

EXHIBIT 23 PAGE 372