# EXHIBIT 24

DIANA M. TORRES (S.B. #162284)
JAMES P. JENAL (S.B. #180190)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: dtorres@omm.com

DALE M. CENDALI (admitted pro hac vice)
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: dcendali@omm.com

PATRICIA GLASER (S.B. # 55668)
CHRISTENSEN, GLASER, FINK,
JACOBS, WEIL & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920
Email: pglaser@chrisglase.com

Attorneys for Plaintiff
MGA Entertainment, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MGA ENTERTAINMENT, INC., | Case No. CV 04-09049 SGL (RNBx) |
| Plaintiff, | **MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS** |
| v. | |
| MATTEL, INC., a Delaware Corporation, and DOES 1-10, Defendants. | |

1 PROPOUNDING PARTY: MGA ENTERTAINMENT, INC.

2 RESPONDING PARTY: MATTEL, INC.

3 SET NO. ONE

4 NOS. 1-115

5

6 **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

7

8 Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff MGA

9 Entertainment, Inc. ("MGA") requests that defendant Mattel, Inc. ("Mattel")

10 produce all documents and tangible things described, in accordance with the

11 Definitions and Instructions set forth below, on December 22, 2006, at the offices

12 of O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California

90071.

13

14 **DEFINITIONS**

As used in these Requests:

15 1. "BRATZ" means and refers to each image, character, logo, doll, toy,

16 accessory, product, packaging or other thing or matter that is or has ever been

17 manufactured, marketed or sold by MGA, or others under license, as part of a line

18 of goods or merchandise commonly known as, or sold and marketed under the

19 "Bratz" trademark or trade dress including but not limited to the "BRATZ

20 CONCEPT," "FIRST BRATZ DOLLS," "BRATZ DOLLS," "BRATZ PACK,"

21 "LIL' BRATZ," "BRATZ PETZ," "BRATZ BABYZ," and "BRATZ BOYZ."

22 2. "BRATZ CONCEPT" means and refers to each "BRATZ"-related

23 image, drawing, picture, sculpt, mold, prototype and any other form of artwork

24 predating the FIRST BRATZ DOLLS, examples of which have been the subject of

25 Mr. Bryant's testimony and produced by Mr. Bryant in *Mattel v. Bryant*, now part

26 of consolidated Case No. CV 04-09049 SGL (RNBx), bearing Bates serial numbers

27

28

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 374

1    Bryant 00175-177; 00179-00182; 00189-00190; 00192-00196; 00198-00216;

2    00218; 00341; 00972; 01014; and 01116-01118.

3       3.    "FIRST BRATZ DOLLS" means and refers to each image, character,

4    logo, doll, toy, accessory, product, packaging or other thing or matter that is or has

5    ever been manufactured, marketed or sold by MGA, or others under license, as part

6    of a line of goods or merchandise commonly known as, or sold and marketed under

7    the "Bratz" trademark or trade dress and consisting of the following: "Bratz Cloe,"

8    SKU 248521; "Bratz Cloe," SKU 248538; "Bratz Jade," SKU 248545; "Bratz

9    Sasha," SKU 248552; "Bratz Yasmin," SKU 248569; "Bratz Pajama Power

10    Fashion," SKU 248576; "Bratz Study Hall Fashion," SKU 248583; and "Bratz

11    Dynamite Dance Fashion," SKU 248682.

12       4.    "BRATZ DOLLS" means and refers to each image, character, logo,

13    doll, toy, accessory, product, packaging or other thing or matter that is or has ever

14    been manufactured, marketed or sold by MGA, or others under license, as part of a

15    line of goods or merchandise commonly known as, or sold and marketed under the

16    "Bratz" trademark or trade dress excluding the "FIRST BRATZ DOLLS," "LIL'

17    BRATZ," "BRATZ PETZ," and "BRATZ BABYZ" and including, without

18    limitation, the styling head commonly known as or sold and marketed as the "Bratz

19    Funky Fashion Make Over" styling head, and specifically including, without

20    limitation, the images, characters, dolls, playsets and other products and toys called

21    or referred to as, or named or marketed in association with the names "Cloe,"

22    "Jade," "Sasha," "Yasmin," "Meygan," "Dana," "Fianna," "Nevra," "Cameron,"

23    "Dylan," "Eitan," "Koby," "Cade," "Ailani," "Nazalia," "Talia," "Zada,"

24    "Mikko," "Colin," "Deavon," "Lakin," "Flaunt It," "Beach Party," "Micro

25    Bratz," "Xpress It," "Bratz Boyz," "Funk 'n' Glow," "Funky Fashion Makeover,"

26    "Holiday Bratz – Sweetheart," "Holiday Bratz – Spring Fling," "Holiday Bratz –

27    Independence Dance," "Slumber Party," "Strut It," "Spring Break," "Formal

28    Funk," "Bratz Boyz Formal Funk," "Wintertime Wonderland," "Style It!," "Funk

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 375

1 Out!," "Sun-Kissed Summer," "Girls Nite Out!," "Wild Life Safari," "Forever
2 Diamondz," "Rock Angelz," "Genie Magic," "Ice Champions," "Bratz Rodeo,"
3 "Bratz Play Sportz," "Bratz Boyz Play Sportz," "Bratz Baby Sitter," "Bratz
4 Princess," "Bratz Boyz Prince," "Bratz Boyz Twiinz," "Bratz Class," "Bratz
5 Costume Party," "Bratz Fit It!," "Bratz Holiday Trinity," "Bratz Passion 4
6 Fashion" and any other released, or yet to be released, BRATZ named character or
7 product theme.

8     5.   "BRATZ PACK" means and refers to any collection, compilation or
9 grouping of two or more images, characters or dolls that are or have ever been
10 manufactured, marketed or sold by MGA, or others under license, as part of a line
11 of goods or merchandise commonly known as, or sold and marketed under the
12 "Bratz" trademark or trade dress including, without limitation, the collection,
13 compilation or grouping of four female images, characters or dolls individually
14 named, called or referred to as "Bratz Cloe," "Bratz Jade," "Bratz Sasha," and
15 "Bratz Yasmin" and any other similar collection, compilation or grouping of two or
16 more images, characters or dolls, male or female, and specifically including,
17 without limitation, the images, characters and dolls called or referred to as, or
18 named or marketed in association with the names "Cloe," "Jade," "Sasha,"
19 "Yasmin," "Meygan," "Dana," "Fianna," "Nevra," "Cameron," "Dylan," "Eitan,"
20 "Koby," "Cade," "Ailani," "Nazalia," "Talia," "Zada," "Mikko," "Colin,"
21 "Deavon," "Lakin," "Alek," "Zack," "Sharidan," "Bebe," "Roxxi," "Vinessa,"
22 "Maribel," "Lilee," "Katia," "Phoebe," "Leah," "Kiani," "Lilani," "Lana,"
23 "Alicia," "Krysta," "Lela," "Rina," "Sorya," "and any other released, or yet to be
24 released, "BRATZ" character.

25     6.   "LIL' BRATZ" means and refers to each image, character, logo, doll,
26 toy, accessory, product, packaging or other thing or matter that is or has ever been
27 manufactured, marketed or sold by MGA, or others under license, as part of a line
28 of goods or merchandise commonly known as, or sold and marketed under the

1   "Bratz" trademark or trade dress and commonly labeled, called, referred to, named
2   or identified as "LIL' BRATZ," and specifically including, without limitation, the
3   images, characters, dolls, playsets and other products and toys called or referred to
4   as, or named or marketed in association with the names "Cloe," "Yasmin,"
5   "Sasha," "Jade," "Ailani," "Nazalia," "Talia," "Zada," "Lil' Boyz," "Cameron,"
6   "Dylan," "Eitan," "Koby," "Mikko," "Colin," "Deavon," "Lakin," "Lil' Bratz
7   Slumber Party," "Lil' Bratz Tote," "Lil' Bratz Spring Break," "Lil Bratz
8   Dancefloor Funk," "Lil' Boyz Dancefloor Funk," and any other released, or yet to
9   be released, LIL' BRATZ character or product theme.

10      7.      "BRATZ PETZ" means and refers to each image, character, logo, doll,
11   toy, accessory, product, packaging or other thing or matter that is or has ever been
12   manufactured, marketed or sold by MGA, or others under license, as part of a line
13   of goods or merchandise commonly known as, or sold and marketed under the
14   "Bratz" trademark or trade dress and commonly labeled, called, referred to, named
15   or identified as "BRATZ PETZ," and specifically including, without limitation, the
16   images, characters and toys called or referred to as, or named or marketed in
17   association with the names, "Bratz Petz Catz," "Brigitte," "Jolie," "Kendall,"
18   "Daphne," "Bratz Petz Tokyo Catz," "Kyoto," "Cho," "Nami," "Yukiko," "Bratz
19   Petz Foxz," "Carly," "Reilly," "Shayna," "Bree," "Bratz Petz Dogz," "Shae,"
20   "Kali," "Pilar," "Abby," and any other released, or yet to be released, BRATZ
21   PETZ character or product theme.

22      8.      "BRATZ BABYZ" means and refers to each image, character, logo,
23   doll, toy, accessory, product, packaging or other thing or matter that is or has ever
24   been manufactured, marketed or sold by MGA, or others under license, as part of a
25   line of goods or merchandise commonly known as, or sold and marketed under the
26   "Bratz" trademark or trade dress and commonly labeled, called, referred to, named
27   or identified as "BRATZ BABYZ," and specifically including, without limitation,
28   the images, characters and dolls called or referred to as, or named or marketed in

-4-

EXHIBIT 24 PAGE 377

1   association with the names, "Cloe," "Sasha," "Jade," "Yasmin," and any other

2   released, or yet to be released, BRATZ BABYZ character or product theme.

3        9.    "BRATZ BOYZ" means and refers to each male image, character,

4   logo, doll, toy, accessory, product, packaging or other thing or matter that is or has

5   ever been manufactured, marketed or sold by MGA, or others under license, as part

6   of a line of goods or merchandise commonly known as, or sold and marketed under

7   the "Bratz" trademark or trade dress and commonly labeled, called, referred to,

8   named or identified as "BRATZ BOYZ," and specifically including, without

9   limitation, the images characters, dolls, playsets and other products and toys called

10   or referred to as, or named or marketed in association with the names "Cameron,"

11   "Dylan," "Eitan," "Koby," "Cade," "Mikko," "Colin," "Deavon," "Lakin,"

12   "Alek," "Zack," "Bratz Boyz Formal Funk," "Boyz Funk Out!," "Boyz Sun-

13   Kissed Summer," "Bratz Boyz Twiinz," "Bratz Boyz Prince," "Bratz Boyz Sportz

14   and any other released, or yet to be released BRATZ BOYZ character or product

15   theme.

16        10.    "BRYANT" means Carter Bryant.

17        11.    "COMMUNICATION[S]" means any transmission of information

18   from one person or entity to another, including, without limitation, by personal

19   meeting, conversation, letter, telephone, facsimile or electronic mail. Each request

20   that encompasses information relating in any way to communications to, from or

21   within a business or corporate entity is hereby designated to mean, and should be

22   construed to include, all communications by and between representatives,

23   employees, agents or servants of the business or corporate entity.

24        12.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

25   Civil Procedure 34, and shall be construed in the broadest sense to mean any and

26   all writings, tangible things and property, of any kind, that are now or that have

27   been in YOUR actual or constructive possession, custody or control, including, but

28   not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT __24__ PAGE __378__

1  punched, copied, recorded, transcribed, graphic or photographic matter of any kind
2  or nature, in, through, or from which information may be embodied, translated,
3  conveyed or stored, whether an original, a draft or copy, however produced or
4  reproduced, whether sent or received or neither, including, but not limited to,
5  notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals,
6  reports, inter- and intra-office COMMUNICATIONS, work papers, work sheets,
7  work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost
8  sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase
9  orders, telephone records, telegrams, telexes, literature, invoices, contracts,
10  purchase orders, estimates, recordings, transcriptions of recordings, records,
11  books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs,
12  video, audio and digital recordings, television commercials, story boards, website
13  or other spot advertisements, movies, movie trailers, prototypes, products, diaries,
14  calendars, charts, drawings, sketches, messages, photographs and data contained in
15  or accessible through any electronic data processing system, including, but not
16  limited to, computer databases, data sheets, data processing cards, computer files
17  and tapes, computer disks, CD-ROMs, computer meta-data, microfilm,
18  microfiche, electronic mail, website and web pages and transcriptions thereof and
19  all other memorializations of any conversations, meetings and conference, by
20  telephone or otherwise. The term DOCUMENT also means every copy of a
21  DOCUMENT, where such copy is not an identical duplicate of the original,
22  whether because of deletions, underlinings, showing of blind copies, initialing,
23  signatures, receipt stamps, comments, notations, differences in stationery or any
24  other difference or modification of any kind.

25      13.    "MARKET RESEARCH" means any type of research, study, survey
26  or analysis of consumers or potential consumers of a product or potential product
27  including, without limitation, focus groups, consumer surveys, market analyses,
28  behavioral analyses and consumer research.

- 6 -

1    14.   "MATTEL," "YOU" or "YOUR" means MATTEL, Inc. and any of its

2    past or present officers, directors, agents, employees, representatives, consultants,

3    attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and

4    successors-in-interest, entities and persons acting in joint venture or partnership

5    relationships with YOU and any others acting on YOUR behalf, pursuant to

6    YOUR authority or subject to YOUR control.

7    15.   "MGA" means MGA Entertainment, Inc. and any of its past or present

8    officers, directors, agents, employees, representatives, consultants, attorneys,

9    parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-

10   in-interest, entities and persons acting in joint venture or partnership relationships

11   with MGA and any others acting on MGA's behalf, pursuant to its authority or

12   subject to its control.

13   16.   "LARIAN" means MGA's Chief Executive Officer Isaac Larian.

14   17.   "MGA PRODUCTS" means any and all products offered for sale by

15   MGA Entertainment, Inc. including, without limitation, "Bratz," "4-Ever Best

16   Friends," "Alien Racers," and "Miuchiz."

17   18.   "MY SCENE" means and refers to each image, character, logo, doll,

18   toy, accessory, product, packaging or other thing or matter that is or has ever been

19   manufactured, marketed or sold by Mattel, or others under license by Mattel, as part

20   of a line of goods or merchandise commonly known as, or sold and marketed under

21   the name, "My Scene."

22   19.   "COMPLAINT" means the complaint filed April 13, 2005 in *MGA*

23   *Entertainment, Inc. v. Mattel, Inc.,* CV 05-02727.

24   20.   "ANSWER" means the answer filed May 13, 2005 in *MGA*

25   *Entertainment, Inc. v. Mattel, Inc.,* CV 05-02727.

26   21.   "PERSON" or "PERSONS" means all natural persons, partnerships,

27   corporations, joint ventures and any kind of business, legal or public entity or

28   organization, as well as its, his or her agents, representatives, employees, officers

- 7 -

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 380

1   and directors and any one else acting on its, his or her behalf, pursuant to its, his or

2   her authority or subject to its, his or her control.

3       22.    "REFERRING OR RELATING TO" should be construed in the

4   broadest possible sense to mean concerning, consisting of, referring to, relating to,

5   describing, discussing, constituting, evidencing, containing, reflecting, mentioning,

6   pertaining to, citing, summarizing, analyzing or bearing any logical or factual

7   connection with the matter requested or described.

8       23.    The singular form includes the plural, and vice versa.

9       24.    The terms "any" and "all" are interchangeable.

10      25.    The terms "and" and "or" shall be construed disjunctively and

11  conjunctively, and each shall include the other whenever such dual construction

12  will serve to bring within the scope of any interrogatory, information that would

13  otherwise not be within its scope.

14                          **INSTRUCTIONS**

15      1.     YOU are instructed to produce all non-privileged DOCUMENTS in

16  YOUR possession, custody or control.  A document is in YOUR "possession,

17  custody, or control" if it is in YOUR physical possession, or if, as a practical

18  matter, YOU have the right, upon request, to obtain possession of the DOCUMENT

19  or a copy thereof from another person or entity who has physical possession of the

20  DOCUMENT.

21      2.     If any DOCUMENT or category of DOCUMENTS is not produced in

22  full, please state with particularity the reason or reasons it is not being produced in

23  full, and describe, to the best of YOUR knowledge, information and belief, and

24  with as much particularity as possible, the DOCUMENT or portions of the

25  DOCUMENT that are not being produced.

26      3.     Each DOCUMENT is to be produced as it is kept in the usual course

27  of business, including all file folders, binders, notebooks, and other devices by

28  which such DOCUMENTS may be organized or separated.

- 8 -        MGA'S FIRST SET OF REQUESTS FOR THE
             PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 381

1       4.   If YOU withhold any DOCUMENT, or portion of a DOCUMENT, on

2   grounds that it is protected from discovery by the attorney-client privilege, work

3   product doctrine, or other privilege, please set forth for each DOCUMENT or

4   portion of a DOCUMENT withheld:

5           (a)   The place, approximate date, and manner of recording, creating

6                 or otherwise preparing the DOCUMENT;

7           (b)   The names and organization position, if any, of each author,

8                 sender, and recipient of the DOCUMENT;

9           (c)   A general description of the subject matter of the DOCUMENT;

10          (d)   The basis of any claim of privilege; and

11          (e)   If work-product is asserted, the proceeding for which the

12                DOCUMENT was created.

13      5.   For any DOCUMENT or category of DOCUMENTS that was, but no

14  longer is, in YOUR possession, custody or control, please describe each such

15  DOCUMENT as completely as possible and provide the following information:

16          (a)   The reason the DOCUMENT is no longer in YOUR possession,

17                custody or control;

18          (b)   The person or entity, if any, who has possession, custody or

19                control or, if unknown, so state;

20          (c)   If the DOCUMENT was destroyed or otherwise disposed of,

21                state (i) the manner of disposal (*i.e.* destruction, loss, discarding

22                or other means of disposal); (ii) the date of disposal; (iii) the

23                reason for disposal; (iv) the person authorizing disposal; (v) the

24                person disposing of the DOCUMENT; and (vi) the name and

25                address of the most recent custodian of the DOCUMENT.

26      6. .   These Requests impose a continuing obligation subsequent to your

27  initial production to the full extent provided for in Rule 26(e) of the Federal Rules

28  of Civil Procedure.

- 9 -

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _24_ PAGE _382_

1  **REQUESTS FOR PRODUCTION**

2  **REQUEST NO. 1:**

3  All DOCUMENTS REFERRING OR RELATING TO the origins or sources

4  of inspiration of "MY SCENE" including, without limitation, the purpose for which

5  "MY SCENE" products were created.

6  **REQUEST NO. 2:**

7  All DOCUMENTS REFERRING OR RELATING TO the initial design and

8  development of "MY SCENE" dolls as identified in paragraph 34 of the

9  COMPLAINT, including but not limited to design drawings, sculpts, internal

10  memos, MARKET RESEARCH, and approval memos.

11  **REQUEST NO. 3:**

12  All DOCUMENTS REFERRING OR RELATING TO the initial design and

13  development of the doll YOU refer to as "a Mattel doll character called BARBIE"

14  as asserted in paragraph 25 of YOUR ANSWER responding to paragraph 34 of the

15  COMPLAINT, including but not limited to design drawings, sculpts, internal

16  memos, MARKET RESEARCH, and approval memos.

17  **REQUEST NO. 4:**

18  All DOCUMENTS REFERRING OR RELATING TO consideration being

19  given to changing the appearance, including but not limited to DOCUMENTS

20  REFERRING OR RELATING TO sculpts, face paint, and eye design, of the "MY

21  SCENE" dolls, as identified in paragraph 34 of the COMPLAINT, to the

22  appearance as identified in paragraphs 37-40 of the COMPLAINT.

23  **REQUEST NO. 5:**

24  Photographs or pictures sufficient to illustrate every variation or version of

25  "MY SCENE" dolls ever released as a commercial product, including without

26  limitation, face paint, face paint plans or designs, eye designs, drafts, ideas or

27  concepts.

28

- 10 -

**REQUEST NO. 6:**

Photographs or pictures sufficient to illustrate every variation or version of "MY SCENE" dolls considered by YOU but never released as a commercial product, including without limitation, face paint, face paint plans or designs, eye designs, drafts, ideas or concepts.

**REQUEST NO. 7:**

All DOCUMENTS REFERRING OR RELATING TO changes to "MY SCENE" from the appearance as identified in paragraph 34 of the COMPLAINT to the appearance as identified in paragraphs 37-40 of the COMPLAINT including, without limitation, the sculpt, face paint plans or designs, eye designs, ideas, and drafts.

**REQUEST NO. 8:**

All DOCUMENTS which support YOUR assertions in paragraphs 27 and 30 of YOUR ANSWER regarding dolls identified in paragraphs 37 and 40 of the COMPLAINT.

**REQUEST NO. 9:**

All DOCUMENTS which support YOUR assertions in paragraphs 28 and 29 of YOUR ANSWER regarding eye designs identified in paragraphs 38 and 39 of the COMPLAINT.

**REQUEST NO. 10:**

All DOCUMENTS REFERRING OR RELATING TO the design, development, themes, conception or creation of the packaging or artwork of "MY SCENE" including without limitation, the motivation, purpose, or inspiration for the packaging or artwork.

**REQUEST NO. 11:**

All DOCUMENTS REFERRING OR RELATING TO the development of the product design trade dress or packaging trade dress of "MY SCENE," including but not limited to the total image, design and appearance of the "MY SCENE"

- 11 -

1  product, as well as features of the "MY SCENE" product such as size, shape, color,

2  color combinations, texture or graphics, or anything else MATTEL considers to be

3  its proprietary trade dress of "MY SCENE," and any changes thereto.

4  **REQUEST NO. 12:**

5      DOCUMENTS sufficient to show any position MATTEL has taken with

6  respect to its claimed trade dress in connection with any "MY SCENE" product,

7  including but not limited to internal COMMUNICATIONS, COMMUNICATIONS

8  with third parties, trademark applications and related DOCUMENTS, filings in

9  judicial proceedings or regulatory filings.

10  **REQUEST NO. 13:**

11      All DOCUMENTS REFERRING OR RELATING TO any MARKET

12  RESEARCH, projections or plans pertaining to the release of "MY SCENE" to the

13  market.

14  **REQUEST NO. 14:**

15      All DOCUMENTS REFERRING OR RELATING TO the creation or

16  development of the "Chillin' Out!," "Night on the Town," "Jammin' in Jamaica,"

17  "Guava Gulch Tiki Lounge," "Sound Lounge," and "My Bling Bling" (including

18  without limitation "My Bling Bling with Real Gem" and "My Bling Bling with

19  Real Diamond") themes including but not limited to DOCUMENTS showing when

20  and how they were first conceived and any awareness by MATTEL of similar or

21  proposed MGA themes.

22  **REQUEST NO. 15:**

23      All DOCUMENTS REFERRING OR RELATING TO the timing or plans

24  for release of the "MY SCENE" themes "Chillin' Out!," "Night on the Town,"

25  "Jammin' in Jamaica," "Guava Gulch Tiki Lounge," "Sound Lounge," and "My

26  Bling Bling" (including without limitation "My Bling Bling with Real Gem" and

27  "My Bling Bling with Real Diamond").

28

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 385

**REQUEST NO. 16:**

All DOCUMENTS REFERRING OR RELATING TO the "BRATZ" themes including but not limited to "Forever Diamondz," "Rock Angelz," "Bratz Rodeo," "Wild Life Safari," "Bratz Passion 4 Fashion," "Formal Funk," "Funky Fashion Makeover," "Wintertime Wonderland," and "Sun Kissed Summer" before they were advertised or otherwise made publicly available.

**REQUEST NO. 17:**

All DOCUMENTS REFERRING OR RELATING TO "BRATZ," or showing any awareness by MATTEL of "BRATZ," prior to the January 2001 Hong Kong toy fair.

**REQUEST NO. 18:**

All DOCUMENTS REFERRING OR RELATING TO any "BRATZ" product or theme as an inspiration or factor in the development of any "MY SCENE" product.

**REQUEST NO. 19:**

All DOCUMENTS REFERRING OR RELATING TO the packaging of "BRATZ, including but not limited to "Forever Diamondz," "Rock Angelz," "Bratz Rode," "Wild Life Safari," "Bratz Passion 4 Fashion," "Formal Funk," "Funky Fashion Makeover," "Wintertime Wonderland," and "Sun Kissed Summer."

**REQUEST NO. 20:**

All DOCUMENTS REFERRING OR RELATING TO any similarity or dissimilarity between "BRATZ" and "MY SCENE" packaging, including without limitation, advertising (including commercials), color schemes, product display, shape, and the transparent style of packaging.

**REQUEST NO. 21:**

All DOCUMENTS REFERRING OR RELATING TO any similarity or dissimilarity between "BRATZ" and "MY SCENE," including without limitation, themes, accessories, clothing, and shoes.

- 13 -

EXHIBIT _24_ PAGE _386_

1  **REQUEST NO. 22:**

2      All DOCUMENTS REFERRING OR RELATING TO any similarity or

3  dissimilarity between "BRATZ" and "MY SCENE" dolls, including without

4  limitation, feet, hair, removable heads, face paint, eye design, head size, body

5  proportions, and any other physical attributes.

6  **REQUEST NO. 23:**

7      All DOCUMENTS REFERRING OR RELATING TO whether the

8  appearance of "MY SCENE" copies, replicates, or in any way imitates the

9  appearance of "BRATZ."

10  **REQUEST NO. 24:**

11      All DOCUMENTS REFERRING OR RELATING TO whether the

12  appearance of "BRATZ" copies, replicates, or in any way imitates the appearance

13  of "MY SCENE."

14  **REQUEST NO. 25:**

15      All DOCUMENTS REFERRING OR RELATING TO whether "MY

16  SCENE" infringes or potentially infringes the copyrights, trademarks, or trade dress

17  of "BRATZ."

18  **REQUEST NO. 26:**

19      All DOCUMENTS REFERRING OR RELATING TO whether "BRATZ"

20  infringes or potentially infringes the copyrights, trademarks, or trade dress of "MY

21  SCENE."

22  **REQUEST NO. 27:**

23      All DOCUMENTS REFERRING OR RELATING TO actual or potential

24  consumer confusion between any "MY SCENE" product and any "BRATZ"

25  product.

26  **REQUEST NO. 28:**

27      All MATTEL product catalogs, sell sheets and product information sheets

28  that include "MY SCENE" products, from 2001 to the present.

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _24_ PAGE _387_

**REQUEST NO. 29:**

DOCUMENTS sufficient to show all iterations of the www.myscene.com, www.myscene.everythinggirl.com, or http://myscene.everythinggirl.com websites.

**REQUEST NO. 30:**

All DOCUMENTS REFERRING OR RELATING TO any exhibition, or proposed, offered or requested exhibition, of "BRATZ" prior to its release to the public.

**REQUEST NO. 31:**

All DOCUMENTS REFERRING OR RELATING TO whether MATTEL had access to any exhibits, displays or show rooms containing any of MGA's "BRATZ" lines prior to its release to the public.

**REQUEST NO. 32:**

All COMMUNICATIONS between YOU and YOUR sales personnel REFERRING OR RELATING TO any alteration, manipulation or change of displays or retail spacing of MGA's PRODUCTS.

**REQUEST NO. 33:**

All COMMUNICATIONS between YOU and any merchandiser REFERRING OR RELATING TO any alteration, manipulation or change of displays or retail spacing of MGA's PRODUCTS.

**REQUEST NO. 34:**

All COMMUNICATIONS between YOU and NPD Group, Inc., including NPD Funworld, ("NPD Funworld") REFERRING OR RELATING TO MGA's subscription to NPD Funworld data, including but not limited to the termination thereof.

**REQUEST NO. 35:**

All COMMUNICATIONS between YOU and NPD Funworld REFERRING OR RELATING TO any alleged misuse of NPD Funworld data by MGA.

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 388

**REQUEST NO. 36:**

All COMMUNICATIONS between YOU and NPD Funworld REFERRING OR RELATING TO MGA, LARIAN, "BRATZ," or MGA PRODUCTS, including but not limited to COMMUNICATIONS as alleged in paragraphs 85 and 86 of the COMPLAINT.

**REQUEST NO. 37:**

All COMMUNICATIONS between YOU and the Children's Advertising Review Unit REFERRING OR RELATING TO MGA's advertisements, commercials, amendments to MGA commercials, or MGA's website, including but not limited to restrictions placed or suggested to be placed on any of the foregoing.

**REQUEST NO. 38:**

All COMMUNICATIONS between YOU and the Children's Advertising Review Unit REFERRING OR RELATING TO MGA, LARIAN, "BRATZ," or MGA PRODUCTS, including but not limited to COMMUNICATIONS as alleged in paragraphs 89, 90, and 91 of the COMPLAINT.

**REQUEST NO. 39:**

All DOCUMENTS supporting YOUR assertion of "MGA's violations of the Children's Advertising Review Unit standards" as set forth in paragraph 80 of YOUR ANSWER.

**REQUEST NO. 40:**

All COMMUNICATIONS between YOU and the Toy Industry Association REFERRING OR RELATING TO the voting procedure or rules pertaining to the People's Choice Toy of the Year Award from 2001 to the present.

**REQUEST NO. 41:**

All COMMUNICATIONS between Neil Friedman and anyone REFERRING OR RELATING TO the voting procedure or rules pertaining to the People's Choice Toy of the Year Award from 2001 to the present as alleged in paragraph 94 of the COMPLAINT.

MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _24_ PAGE _389_

**REQUEST NO. 42:**

All COMMUNICATIONS between YOU and the Toy Industry Association REFERRING OR RELATING TO MGA's sponsorship of the "Kids' Choice Awards" as alleged in paragraph 97 of the COMPLAINT.

**REQUEST NO. 43:**

All DOCUMENTS REFERRING OR RELATING TO any attempt by MATTEL to price "MY SCENE" below "BRATZ" generally or to price any "MY SCENE" product below the price of any corresponding "BRATZ" product.

**REQUEST NO. 44:**

All DOCUMENTS REFERRING OR RELATING TO any attempt by MATTEL to limit the availability or supply of doll hair to MGA or any competitors, at any time since June 2001 as alleged in paragraph 78 of the COMPLAINT.

**REQUEST NO. 45:**

All DOCUMENTS REFERRING OR RELATING TO MATTEL's purchase of doll hair, at any time since June 2001.

**REQUEST NO. 46:**

All meeting minutes of YOUR Board of Directors meetings REFERRING OR RELATING TO MGA, LARIAN, BRYANT, or "BRATZ."

**REQUEST NO. 47:**

All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between MATTEL and any buyers, merchandisers, general merchandise managers or retailers world wide REFERRING OR RELATING TO whether MGA was giving another United States retailer below-market pricing, or whether MGA was discontinuing one of its lines as alleged in paragraph 79 of the COMPLAINT world wide.

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _24_ PAGE _390_

**REQUEST NO. 48:**

All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between MATTEL and any buyers, merchandisers, general merchandise managers or retailers world wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of "BRATZ" or any MGA PRODUCT world wide.

**REQUEST NO. 49:**

All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between MATTEL and any suppliers (including but not limited to MATTEL suppliers) world wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of "BRATZ" or any MGA PRODUCT world wide.

**REQUEST NO. 50:**

All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between MATTEL and any licensees or potential licensees world wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of "BRATZ" or any MGA PRODUCT world wide.

**REQUEST NO. 51:**

All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between MATTEL and any public relations firms world wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of "BRATZ" or any MGA PRODUCT world wide.

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 391

1  **REQUEST NO. 52:**

2      All DOCUMENTS REFERRING OR RELATING TO any

3  COMMUNICATIONS between MATTEL and any member of the press world

4  wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding

5  the origins, design, development, product launch, sales, promotions, advertising,

6  quality, or price of "BRATZ" or any MGA PRODUCT world wide.

7  **REQUEST NO. 53:**

8      All DOCUMENTS REFERRING OR RELATING TO any

9  COMMUNICATIONS between MATTEL and any current MGA employees world

10  wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding

11  the origins, design, development, product launch, sales, promotions, advertising,

12  quality, or price of "BRATZ" or any MGA PRODUCT world wide.

13  **REQUEST NO. 54:**

14      All DOCUMENTS REFERRING OR RELATING TO any

15  COMMUNICATIONS between MATTEL and any former MGA employees world

16  wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding

17  the origins, design, development, product launch, sales, promotions, advertising,

18  quality, or price of "BRATZ" or any MGA PRODUCT world wide.

19  **REQUEST NO. 55:**

20      All DOCUMENTS REFERRING OR RELATING TO any

21  COMMUNICATIONS between MATTEL and any former MATTEL employees

22  world wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA,

23  regarding the origins, design, development, product launch, sales, promotions,

24  advertising, quality, or price of "BRATZ" or any MGA PRODUCT world wide.

25  **REQUEST NO. 56:**

26      All DOCUMENTS REFERRING OR RELATING TO any business dealings

27  between any licensee, supplier, manufacturer, retailer, distributor or merchandiser

28  world wide and MGA.

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 392

**REQUEST NO. 57:**

All DOCUMENTS REFERRING OR RELATING TO MATTEL's business dealings with any licensee, supplier, manufacturer, retailer, distributor or merchandiser world wide to the extent that the DOCUMENT refers, explicitly or implicitly, to the business dealings between that licensee, supplier, manufacturer, retailer, distributor or merchandiser and MGA.

**REQUEST NO. 58:**

All DOCUMENTS REFERRING OR RELATING TO MATTEL's business dealings with any licensee, supplier, manufacturer, retailer, distributor or merchandiser world wide to the extent that the DOCUMENT refers, explicitly or implicitly, to the business dealings of that licensee, supplier, manufacturer, retailer, distributor or merchandiser that involve, in any way, "BRATZ" or any MGA PRODUCT world wide.

**REQUEST NO. 59:**

All DOCUMENTS REFERRING OR RELATING TO any interference with or inhibition of the licensing or potential licensing of MGA's products (including but not limited to "BRATZ") world wide or REFERRING OR RELATING TO any limitations or restrictions on any licensee's ability to purchase, promote, advertise, develop, design or sell "BRATZ" or other MGA products world wide.

**REQUEST NO. 60:**

All DOCUMENTS REFERRING OR RELATING TO any third party's licensing or potential licensing of MGA PRODUCTS world wide, or REFERRING OR RELATING TO any licensee's ability to purchase, promote, advertise, develop, design or sell MGA PRODUCTS world wide.

**REQUEST NO. 61:**

All COMMUNICATIONS between YOU and any retailer, sales person or merchandiser world wide REFERRING OR RELATING TO the allocation of shelf space, altering of retail displays, or placement of "BRATZ" in retail stores,

- 20 -

1  including but not limited to COMMUNICATIONS concerning the placement of
2  "BRATZ" relative to "MY SCENE" products world wide.

3  **REQUEST NO. 62:**

4      All DOCUMENTS, including but not limited to COMMUNICATIONS,
5  REFERRING OR RELATING TO any interference with or inhibition of the sales
6  or potential sales of MGA's products (including but not limited to "BRATZ") or
7  REFERRING OR RELATING TO any limitations or restrictions on any retailer's
8  ability to purchase, promote, advertise, develop, design or sell "BRATZ" or other
9  MGA products world wide.

10  **REQUEST NO. 63:**

11      All DOCUMENTS, including but not limited to COMMUNICATIONS,
12  REFERRING OR RELATING TO any contracts, licenses or agreements between
13  MATTEL and any third party world wide that place any limitations, prohibitions or
14  restriction on that third party's ability to license, manufacture, promote, distribute
15  or sell any MGA products or to supply materials or services to MGA world wide.

16  **REQUEST NO. 64:**

17      All DOCUMENTS, including but not limited to COMMUNICATIONS,
18  REFERRING OR RELATING TO any third party's agreement or decision not to
19  license, manufacture, promote, distribute or sell any MGA products, or supply
20  materials or services to MGA world wide.

21  **REQUEST NO. 65:**

22      All DOCUMENTS, including but not limited to COMMUNICATIONS,
23  REFERRING OR RELATING TO any third party's agreement or decision to limit,
24  restrict, curtail or reduce its license, manufacture, promotion, distribution or sales of
25  any MGA products, or its supply of materials or services to MGA world wide.

26  **REQUEST NO. 66:**

27      All DOCUMENTS, including but not limited to COMMUNICATIONS,
28  REFERRING OR RELATING TO any interference with or inhibition of the supply

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 394

1  of goods or services, or the potential supply of goods or services, to MGA or

2  REFERRING OR RELATING TO any limitations or restrictions on any supplier's

3  ability to do business with MGA world wide.

4  **REQUEST NO. 67:**

5      All DOCUMENTS, including but not limited to COMMUNICATIONS,

6  REFERRING OR RELATING TO any interference with or inhibition of the

7  distribution or potential distribution of MGA's products (including but not limited

8  to "BRATZ") or REFERRING OR RELATING TO any limitations or restrictions

9  on any distributor's ability to purchase, promote, advertise, develop, design, or sell

10  "BRATZ" or other MGA products world wide.

11  **REQUEST NO. 68:**

12      All commercials referenced in paragraph 47 of YOUR ANSWER.

13  **REQUEST NO. 69:**

14      All television commercials for "MY SCENE" and DOCUMENTS sufficient

15  to identify all personnel involved in the creation of those commercials.

16  **REQUEST NO. 70:**

17      All studies, analyses, presentations or investigations, including internal

18  studies, analyses, presentations or investigations, REFERRING OR RELATING

19  TO actual or potential market competition between "MY SCENE" and "BRATZ."

20  **REQUEST NO. 71:**

21      All internal studies, analyses, presentations or investigations REFERRING

22  OR RELATING TO the overall market shares and market position of "MY

23  SCENE" and "Barbie", from 2001 to the present.

24  **REQUEST NO. 72:**

25      All studies, analyses, presentations or investigations of the target audience,

26  age groups, market share, or projections for "MY SCENE."

27

28

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 395

1  **REQUEST NO. 73:**

2  　　All studies, analyses, presentations or investigations of the target audience,

3  age groups, market share, or projections for "BRATZ."

4  **REQUEST NO. 74:**

5  　　DOCUMENTS sufficient to determine total sales, revenue, royalties, costs of

6  goods sold and any other costs attributable to net profits REFERRING OR

7  RELATING TO "MY SCENE."

8  **REQUEST NO. 75:**

9  　　All DOCUMENTS REFERRING OR RELATING TO whether MATTEL is

10  funding, contributing to, or reimbursing the fees, costs or expenses incurred in

11  connection with any lawsuit involving MGA, to which MATTEL is not a party.

12  **REQUEST NO. 76:**

13  　　All DOCUMENTS REFERRING OR RELATING TO the quality or

14  reputation of "MY SCENE" including, without limitation, accolades or awards for

15  "MY SCENE."

16  **REQUEST NO. 77:**

17  　　All DOCUMENTS REFERRING OR RELATING TO any evaluation,

18  criticism or comparison of "MY SCENE," including in relation to "BRATZ" by

19  any third party.

20  **REQUEST NO. 78:**

21  　　All DOCUMENTS REFERRING OR RELATING TO any evaluation,

22  criticism or comparison of "BRATZ," including in relation to "MY SCENE."

23  **REQUEST NO. 79:**

24  　　All DOCUMENTS evidencing confusion between "BRATZ" and "MY

25  SCENE," including without limitation DOCUMENTS in which photographs of one

26  party's products have been used to depict another party's products or reference to

27  one party's products have been made in lieu of the other party's products.

28

- 23 -　　MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 396

**REQUEST NO. 80:**

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all MATTEL personnel with responsibility, at any time since January 2001, for marketing or MARKET RESEARCH, REFERRING OR RELATING TO "MY SCENE."

**REQUEST NO. 81:**

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all MATTEL personnel with responsibility for "MY SCENE" sales, promotions, marketing, packaging, advertising (including but not limited to television commercials), development or design, including without limitation internal departments, teams or organizations with responsibility for any specific retailer, licensee or others in the industry.

**REQUEST NO. 82:**

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all MATTEL personnel comprising the primary team that worked on the design and development of the original "MY SCENE" products as identified in paragraph 34 of the COMPLAINT.

**REQUEST NO. 83:**

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all MATTEL personnel comprising the primary team that worked on the design and development of the more recent "MY SCENE" products as identified in paragraphs 37 and 38 of the COMPLAINT.

**REQUEST NO. 84:**

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all current MATTEL personnel comprising the primary team currently working on the design and development of "MY SCENE" products.

MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _24_ PAGE _347_

**REQUEST NO. 85:**

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all former MATTEL personnel who were ever a member of the primary team that worked on the design and development of "MY SCENE" products.

**REQUEST NO. 86:**

DOCUMENTS sufficient to describe fully MATTEL's document retention policies (including its policies with respect to the retention or destruction of physical documents, physical objects, samples or specimens, electronic mail and other electronic documents) in effect at any time since January 2001.

**REQUEST NO. 87:**

DOCUMENTS sufficient to describe fully MATTEL's actions to preserve DOCUMENTS in response to the COMPLAINT and the document retention letter from Diana M. Torres, Esq. to Robert Normile, Esq. dated April 16, 2005.

**REQUEST NO. 88:**

DOCUMENTS sufficient to identify all DOCUMENTS REFERRING OR RELATING TO "MY SCENE," "BRATZ," MGA or LARIAN that have been destroyed or discarded since April 16, 2005.

**REQUEST NO. 89:**

All DOCUMENTS REFERRING OR RELATING TO COMMUNICATIONS with or among third parties concerning this litigation, the allegations in the COMPLAINT, Mattel's responses to or views on the allegations in the COMPLAINT or any alleged improper conduct by MATTEL.

**REQUEST NO. 90:**

All DOCUMENTS REFERRING OR RELATING TO the commercial success or recognition of "MY SCENE" including, without limitation, MARKET RESEARCH.

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 398

1 **REQUEST NO. 91:**

2     All DOCUMENTS REFERRING OR RELATING TO the commercial

3 success or recognition of MGA's "BRATZ" including, without limitation,

4 MARKET RESEARCH.

5 **REQUEST NO. 92:**

6     All "New Toy Status Reports" for "MY SCENE."

7 **REQUEST NO. 93:**

8     DOCUMENTS sufficient to indicate when a project number was first

9 assigned to "MY SCENE."

10 **REQUEST NO. 94:**

11     All DOCUMENTS REFERRING OR RELATING TO any

12 COMMUNICATION between MATTEL and any participant in any MARKET

13 RESEARCH REFERRING OR RELATING TO "MY SCENE," MGA or

14 "BRATZ."

15 **REQUEST NO. 95:**

16     All DOCUMENTS REFERRING OR RELATING TO

17 COMMUNICATIONS that pertain in any way, explicitly or implicitly, to

18 "BRATZ" between LARIAN, BRYANT, Paula Garcia (a.k.a. Paula Treantafelles),

19 Mercedeh Ward, Victoria O'Connor, or anyone with an email address in the form

20 of _____@mgae.com, on the one hand, and any of the following, on the other

21 hand:

22     a)    Ivy Ross

23     b)    Lily Martinez

24     c)    Cassidy Park

25     d)    Margaret Leahy (a.k.a. Margaret Hatch or Margaret Hatch Leahy)

26     e)    Elise Cloonan

27     f)    Anna Rhee

28

- 26 -
MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 394

g)     any PERSON formerly or currently employed by MATTEL in marketing, sales, design, or development

h)     any PERSON who provided services to MATTEL on a contract or temporary basis in marketing, sales, design, or development

i)     any shareholders, directors or officers of MATTEL.

**REQUEST NO. 96:**

All DOCUMENTS REFERRING OR RELATING TO this lawsuit including, without limitation, COMMUNICATIONS REFERRING OR RELATING TO this lawsuit from any MATTEL executive, anyone that worked on "MY SCENE," or anyone at MATTEL with responsibility for communications with NPD Funworld, Children's Advertising Review Unit, or the Toy Industry Association.

**REQUEST NO. 97:**

All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATION between MATTEL and any person consulted regarding any fact or issue relating to this lawsuit, including, without limitation, any experts, investigators, or witnesses, excluding privileged COMMUNICATIONS with or on behalf of counsel for MATTEL.

**REQUEST NO. 98:**

All COMMUNICATIONS, and all DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS, between YOU on the one hand and any employee, officer, director, agent, representative, or counsel for any competitor of MGA REFERRING OR RELATING TO MGA, "BRATZ," or this lawsuit, or other litigation involving the parties hereto or their employees.

**REQUEST NO. 99:**

All COMMUNICATIONS, and all DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS, between YOU on the one hand and any employee, officer, director, agent, representative, or counsel for any licensee or

MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 400

1  distributor of MGA REFERRING OR RELATING TO MGA, "BRATZ," or this

2  lawsuit, or other litigation involving the parties hereto or their employees.

3  **REQUEST NO. 100:**

4      All COMMUNICATIONS, and all DOCUMENTS REFERRING OR

5  RELATING TO any COMMUNICATIONS, between YOU on the one hand and

6  any employee, officer, director, agent, representative, or counsel for any competitor

7  of MGA REFERRING OR RELATING TO claims by MGA against MATTEL, or

8  claims by MATTEL against MGA or its employees.

9  **REQUEST NO. 101:**

10      All COMMUNICATIONS, and all DOCUMENTS REFERRING OR

11  RELATING TO any COMMUNICATIONS, between YOU on the one hand and

12  any employee, officer, director, agent, representative, or counsel for any licensee or

13  distributor of MGA REFERRING OR RELATING TO claims by MGA against

14  MATTEL, or claims by MATTEL against MGA or its employees.

15  **REQUEST NO. 102:**

16      All COMMUNICATIONS, and all DOCUMENTS REFERRING OR

17  RELATING TO any COMMUNICATIONS, between YOU on the one hand and

18  any employee, officer, director, agent, representative, or counsel for Nickelodeon

19  REFERRING OR RELATING TO MGA, "BRATZ," or LARIAN.

20  **REQUEST NO. 103:**

21      All COMMUNICATIONS, and all DOCUMENTS REFERRING OR

22  RELATING TO any COMMUNICATIONS, between YOU on the one hand and

23  any employee, officer, director, agent, representative, or counsel for Cartoon

24  Network REFERRING OR RELATING TO MGA, "BRATZ," or LARIAN.

25  **REQUEST NO. 104:**

26      All COMMUNICATIONS, and all DOCUMENTS REFERRING OR

27  RELATING TO any COMMUNICATIONS, between YOU on the one hand and

28  any employee, officer, director, agent, representative, or counsel for 4Kids

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _24_ PAGE _401_

1  Entertainment, Inc. REFERRING OR RELATING TO MGA, "BRATZ," or

2  LARIAN.

3  **REQUEST NO. 105:**

4       All DOCUMENTS received in response to any requests made by YOU at

5  any time relating to this litigation, other than those produced by BRYANT OR

6  MGA.

7  **REQUEST NO. 106:**

8       All DOCUMENTS tending to support or refute MATTEL's claims, if any,

9  that "BRATZ" copies, replicates, or in any way imitates the appearance of "MY

10  SCENE" or any other MATTEL product.

11  **REQUEST NO. 107:**

12       All COMMUNICATIONS between YOU and any retailer REFERRING OR

13  RELATING TO whether "BRATZ" copies, replicates, or in any way imitates the

14  appearance of "MY SCENE" or any other MATTEL product.

15  **REQUEST NO. 108:**

16       All COMMUNICATIONS between YOU and any retailer REFERRING OR

17  RELATING TO whether "MY SCENE" copies, replicates, or in any way imitates

18  the appearance of "BRATZ."

19  **REQUEST NO. 109:**

20       All COMMUNICATIONS between YOU and any customer REFERRING

21  OR RELATING TO whether "MY SCENE" copies, replicates, or in any way

22  imitates the appearance of "BRATZ."

23  **REQUEST NO. 110:**

24       All COMMUNICATIONS between YOU and any member of the press

25  REFERRING OR RELATING TO whether "MY SCENE" copies, replicates, or in

26  any way imitates the appearance of "BRATZ."

27

28

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 21 PAGE 402

**REQUEST NO. 111:**

All COMMUNICATIONS between YOU and any supplier REFERRING OR RELATING TO whether "MY SCENE" copies, replicates, or in any way imitates the appearance of "BRATZ."

**REQUEST NO. 112:**

All COMMUNICATIONS between YOU and any other third party REFERRING OR RELATING TO whether "MY SCENE" copies, replicates, or in any way imitates the appearance of "BRATZ".

**REQUEST NO. 113:**

Documents sufficient to identify those persons, by name and title, for the time period from October 1998 through the end of December 2000, associated with the originating telephone numbers contained in the documents produced by YOU in *Mattel v. Bryant,* now part of consolidated Case No. CV 04-09049 SGL (RNBx), with Bates numbers M0001825-M0012534.

**REQUEST NO. 114:**

All DOCUMENTS tending to support or refute any of the denials, allegations or statements in YOUR ANSWER, not produced in response to another Request.

**REQUEST NO. 115:**

All DOCUMENTS tending to support or refute YOUR affirmative defenses to the COMPLAINT, not produced in response to another Request.


Dated: November 22, 2006          O'MELVENY & MYERS LLP


_____
James P. Jenal
Attorneys for MGA Entertainment, Inc.

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _24_ PAGE _403_

**PROOF OF SERVICE**

I, Karen A. Nakatsu, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On November 22, 2006, I served the within document(s):

**MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS**

☒  by causing to be personally served the document(s) listed above to the person(s) listed below.

John Quinn, Esq.
Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East,
Fifth Floor
Los Angeles, CA 90067

Patricia Glaser, Esq.
Christensen, Glaser, Fink, Jacobs,
Weil & Shapiro, LLP
10250 Constellation Blvd.,
19th Floor
Los Angeles, CA 90067

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on November 22, 2006, at Los Angeles, California.

*Karen A. Nakatsu*
Karen A. Nakatsu

LA2:817525.1

EXHIBIT 24 PAGE 404

# EXHIBIT 25

**CONFORMED COPY**

FILED

2007 APR 19  PM 11: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY_____

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No.1100049530
12             Plaintiff,

13       v.                                Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15             Defendant.                  **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION FOR PROTECTIVE ORDER
                                           REGARDING "POLLY POCKET"
17  CONSOLIDATED WITH                      DOCUMENTS**
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21                          I. INTRODUCTION

22       On March 30, 2007, Mattel, Inc. ("Mattel") submitted its Motion For Protective Order

23  Regarding "Polly Pocket" Documents. Pursuant to Rule 26(c), Fed.R.Civ.P., Mattel seeks a

24  protective order to limit the scope of MGA Entertainment, Inc.'s ("MGA") and Carter Bryant's

25  ("Bryant") subpoenas for production of documents relating to Polly Pocket to only those

26  documents that relate to a single Polly Pocket commercial identified by MGA in an interrogatory

27

28

    Bryant v. Mattel, Inc.,                                              1
    CV-04-09049 SGL (RNBx)

EXHIBIT 25 PAGE 405

04/19/07

1  response. On April 6, 2007, MGA submitted its opposition brief, and on April 11, 2007, Mattel

2  submitted a reply brief. The matter was heard via telephonic conference on April 19, 2007.

3  Having considered the motion papers and comments of counsel at the hearing, Mattel's motion

4  for a protective order is granted in part and denied in part.[1]

## II. BACKGROUND

This consolidated action includes MGA's claims for unfair competition against Mattel.

Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

packaging and Bratz television commercials.

On March 7, 2007 and March 12, 2007, MGA and Bryant issued subpoenas to three of

Mattel's advertising agencies: Young & Rubicam Brands, Peterson Milla Hooks, Inc., and

Ogilvy & Mather Worldwide. The subpoenas seek, among other things, documents relating to

Mattel's products, including the Polly Pocket line of products. See Request Nos. 3, 4, 7, 12, 13,

and 14. The subpoenas define Polly Pocket as "each image, character, logo, doll, toy, accessory,

product, packaging or other thing or matter that is or has ever been manufactured, marketed or

sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise

commonly known as, or sold and marketed under the POLLY POCKET trademark or trade

dress." The requests at issue are set forth below:

Request No. 3: All DOCUMENTS REFERRING OR RELATING TO any focus

group for "MY SCENE," "POLLY POCKET," or "ACCELERACERS" products

and which also REFER OR RELATE TO "BRATZ," "ALIEN RACERS," or

MGA.

Request No. 4: All DOCUMENTS REFERRING OR RELATING TO any

participant comments from any focus group for "MY SCENE," "POLLY

---

[1] Pursuant to the Order for Appointment Of A Discovery Master, dated December 6, 2006, the undersigned is authorized to resolve disputes regarding third party subpoenas. See Order at 3-4, 6.

1   POCKET," or "ACCELERACERS" products and which also REFER OR

2   RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

3   Request No. 7: All DOCUMENTS REFERRING OR RELATING TO any

4   MARKET RESEARCH REFERRING OR RELATING TO "MY SCENE,"

5   "POLLY POCKET," or "ACCELERACERS" or MATTEL, and which also

6   REFER OR RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

7   Request No. 12: All DOCUMENTS REFERRING OR RELATING TO proposed

8   or actual advertisements for "MY SCENE," "POLLY POCKET," OR

9   "ACCELERACERS" products and which also REFER OR RELATE TO

10   "BRATZ," "ALIEN RACERS," or MGA.

11   Request No. 13: All DOCUMENTS REFERRING OR RELATING TO

12   directives, suggestions, or instructions from MATTEL to create advertisements

13   for "MY SCENE," "POLLY POCKET," OR "ACCELERACERS" products using

14   elements that are similar to or the same as elements used in advertisements for

15   "BRATZ," "ALIEN RACERS," or MGA products.

    Request No. 14: Copies of all advertisements for "BRATZ," "ALIEN RACERS,"

    or MGA products that YOU consulted or reviewed to create advertisements for

    "MY SCENE," "POLLY POCKET," or "ACCELERACERS" products.

18   (collectively referred to hereinafter as the "Polly Pocket Requests"). See Decl. of B. Dylan

19   Proctor in Support of Mattel's Motion for Protective Order, Exs. 1-3.

20        Mattel served objections to the subpoenas and requested a meet and confer with MGA and

21   Bryant regarding the scope of the Polly Pocket Requests. The parties met and conferred on

22   March 27, 2007. MGA asserted that the Polly Pocket Requests sought information relevant to

23   MGA's claims that Mattel has serially copied and imitated MGA's commercials. MGA pointed

24   out that it is currently aware of at least one Polly Pocket commercial that copied elements from a

25   MGA Bratz commercial. More specifically, in response to a contention interrogatory, MGA

26   identified twenty-two separate instances of alleged serial copycatting and imitating, one of which

27   was that "Mattel filmed a 'Polly Pocket' commercial in the same mall and featuring the same

28

EXHIBIT 25 PAGE 407

1    escalator as appeared in a previous 'Bratz' commercial." See MGA's Second Supplemental

2    Responses to Mattel's First Set of Interrogatories re Claims of Unfair Competition, Response to

3    Interrogatory No. 6.  MGA asserted that it was entitled to discovery to determine whether

4    Mattel's advertising agencies have documents evidencing plans, strategies or intentions to

5    copycat or imitate MGA commercials for this or any other Polly Pocket commercials in the past

6    or future.  Further, MGA asserted that the Polly Pocket Requests sought only those documents

7    that specifically related to MGA and its products.  In contrast, Mattel asserted that the Polly

8    Pocket Requests were overbroad, seeking information far beyond the Polly Pocket commercial

9    identified in MGA's interrogatory response.  The parties later exchanged meet and confer letters,

10   but were unable to resolve their dispute.

11           In this motion, Mattel contends that it is entitled to a protective order because the Polly

12   Pocket Requests are overbroad, seeking documents that have no connection or relevance to the

13   claims or defenses in the case, other than the single television commercial identified in MGA's

14   interrogatory response.  Mattel also contends that MGA and Bryant should not be permitted to

15   engage in a fishing expedition for potential claims involving Polly Pocket products.  Furthermore,

16   Mattel contends that its Polly Pocket line of dolls is in direct competition with MGA's doll

17   products, and that MGA and Bryant are not entitled to issue sweeping subpoenas for the improper

18   purpose of discovering Mattel's confidential focus group and market research documents relating

19   to competing products and other matters that are not even alleged to be at issue.  Accordingly,

20   Mattel seeks an order limiting the scope of the Polly Pocket Requests to only those Polly Pocket

21   documents that relate to the television commercial MGA claims that Mattel copied.

22           MGA and Bryant contend that Mattel has not demonstrated the requisite "good cause" for

23   a protective order.  They contend that there has been no showing that a protective order is

24   necessary to avoid annoyance, embarrassment, oppression or undue burden or expense.  Further,

25   they contend that the Stipulated Protective Order is sufficient to address Mattel's confidentiality

26   concerns.  MGA and Bryant also contend that the Polly Pocket Requests are narrowly tailored to

27   seek documents relevant to the claims that Mattel has serially imitated and copycatted MGA's

28   advertising for Bratz and other products.  Further, they contend that the Polly Pocket Requests

1   target documents that specifically relate to MGA or its products.  Lastly, MGA and Bryant object

2   to limiting discovery to the one Polly Pocket commercial referenced in MGA's interrogatory

3   response.  They contend that such a limitation would prevent them from obtaining documents

4   "that reveal Mattel's plans to copy or imitate MGA commercials for other 'Polly Pocket'

5   commercials and related efforts by Mattel's ad agencies to effectuate or evaluate these plans,

6   simply because the plans are non-public and about which MGA and Bryant could not possibly

7   have any actual knowledge."  Opposition at p.7.

### III. DISCUSSION

8           Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

9   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

10  party." Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

11  permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

12  2004) ("District courts need not condone the use of discovery to engage in 'fishing

13  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

14  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

15  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

16  the phrase "subject matter involved in the pending action," were intended to target discovery that

17  swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

18  litigate the issues presented by the pleadings but to develop new claims or defenses.).

19  Furthermore, Rule 26(c), Fed.R.Civ.P., provides, in pertinent part, that upon motion and for good

20  cause shown, "the court in which the action is pending may make any order which justice requires

21  to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

22  expense, including that certain matters not be inquired into, that the scope of the disclosure or

23  discovery be limited to certain matters, or that a trade secret or other confidential research,

24  development or commercial information not be revealed or be revealed only in a designated way."

25  Fed.R.Civ.P. 26(c).

26          Polly Pocket is not mentioned in either MGA's or Bryant's complaint or any of the other

27  pleadings filed in this consolidated action.  Rather, MGA's complaint alleges that Mattel's

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 25 PAGE 409

1   advertising and marketing schemes for two of its products – "My Scene" and "AcceleRacers"–

2   have "serially imitated" MGA's advertising. MGA's complaint does not even reference the Polly

3   Pocket line of dolls or other Polly Pocket products.

4          The only proffered justification for the Polly Pocket Requests is an interrogatory response

5   in which MGA claims that one of Mattel's Polly Pocket commercials was allegedly filmed in the

6   same mall using the same escalator as an MGA Bratz commercial.[2]  The bulk of the Polly Pocket

7   Requests (Nos. 3, 4, 7, 12, 14), however, are far broader than the commercial identified by MGA.

8   The definition for Polly Pocket includes not just commercials, but "each image, character, logo,

9   doll, toy, accessory, product, and packaging that is or has ever been manufactured, marketed or

10  sold by Mattel as part of a line of goods or merchandise known as, or sold and marketed under the

11  Polly Pocket trademark or trade dress.  Furthermore, MGA and Bryant seek all Polly Pocket focus

12  group documents, including participant comments which relate to Bratz, MGA or Alien Racers.

13  They seek all "market research" referring or relating to Polly Pocket and which also relate to

14  Bratz, MGA, or Alien Racers, where "market research" is defined as "any type of research, study,

15  survey or analysis of consumers or potential consumers of a product or potential product

16  including, without limitation, focus groups, consumer surveys, market analyses, behavioral

17  analyses and consumer research." They also seek all documents relating to proposed or actual

18  advertisements for Polly Pocket dolls which also relate to Bratz, MGA or Alien Racers. MGA

19  and Bryant also seek copies of all advertisements for Bratz, Alien Racers, or MGA products that

20  were consulted or reviewed to create any and all advertisements for Polly Pocket products. These

21  requests are clearly overbroad, extending far beyond the single Polly Pocket commercial that

22  MGA has contended is actionable. The Federal Rules of Civil Procedure do not permit MGA and

23

24

25      [2]  Like MGA's complaint, MGA's response to Mattel's contention interrogatory regarding the alleged serial imitating and copycatting focus primarily on Mattel's "My Scene" and "Acceleracers" products.

26          See MGA's Second Supplemental Responses to Mattel's First Set of Interrogatories re Claims of Unfair Competition

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 25 PAGE 410

6

1   Bryant to use broad discovery requests, untethered to a claim or defense, to fish for new claims.

2   Rivera v. NIBCO, Inc., supra. Because Request Nos. 3, 4, 7, 12, and 14 extend far beyond the

3   permissible scope of discovery under Rule 26, Fed.R.Civ.P., there is good cause to issue the

4   requested protective order limiting their scope to the Polly Pocket commercial identified in

5   MGA's interrogatory response.

6        In contrast, however, Request No. 13 is reasonably tailored to documents relevant to

7   MGA's unfair competition claim. Evidence of directives, suggestions, or instructions from Mattel

8   to its advertising agencies to create advertisements for Polly Pocket using elements that are

9   similar to or the same as elements used in advertisements for "BRATZ," "ALIEN RACERS," or

10  MGA products could establish that Mattel intentionally used the same mall and escalator to

11  produce the Polly Pocket commercial identified in MGA's interrogatory response. Therefore,

12  Mattel's motion is denied with respect to Request No. 13.

13                                    IV. CONCLUSION

14       For the reasons set forth above, Mattel's motion for a protective order is granted in part

15  and denied in part. Request Numbers 3, 4, 7, 12, and 14 of MGA's and Bryant's subpoenas to

16  Young & Rubicam Brands, Peterson Milla Hooks, Inc., and Ogilvy & Mather Worldwide relating

17  to Polly Pocket are hereby limited in scope to Polly Pocket documents relating to the single Polly

18  Pocket television commercial identified in MGA's interrogatory response. Mattel's motion is

19  denied as to Request No. 13.

20       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

21  Master, Mattel shall file this Order with the Clerk of Court forthwith.

22  Dated: April 19, 2007

23                                    HON. EDWARD A. INFANTE (Ret.)

24                                    Discovery Master

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                          7

EXHIBIT 25 PAGE 41

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 19, 2007,

I served the attached ORDER GRANTING IN PART AND DENYING IN PART

MATTEL'S MOTION FOR PROTECTIVE ORDER REGARDING "POLLY POCKET"

DOCUMENTS" in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler.Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 19, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 25 PAGE 4/2