# EXHIBIT 31

1    DALE M. CENDALI (admitted *pro hac vice*)
     DIANA M. TORRES (S.B. #162284)
2    JAMES P. JENAL (S.B. # 180190)
     O'MELVENY & MYERS LLP
3    400 South Hope Street
     Los Angeles, CA 90071-2899
4    Telephone: (213) 430-6000
     Facsimile: (213) 430-6407
5    Email:      jjenal@omm.com

6    PATRICIA GLASER (S.B. #55668)
     CHRISTENSEN, GLASER, FINK,
7    JACOBS, WEIL & SHAPIRO, LLP
     10250 Constellation Boulevard, 19th Floor
8    Los Angeles, CA 90067
     Telephone: (310) 553-3000
9    Facsimile: (310) 557-9815

**RECEIVED**

FEB 2 1 2007

10    Attorneys for MGA Entertainment, Inc.

11

12

13           **UNITED STATES DISTRICT COURT**
          **CENTRAL DISTRICT OF CALIFORNIA**
14           **EASTERN DIVISION**

15

16    CARTER BRYANT, an individual,      Case No. CV 04-09049 SGL (RNBx)
            Plaintiff,      (consolidated with CV 04-9059 & 05-2727)

17        v.      **DISCOVERY MATTER**

18    MATTEL, INC., a Delaware
     Corporation,      **MGA ENTERTAINMENT, INC.'S**
          **OPPOSITION TO MATTEL, INC.'S**
19           Defendant.      **MOTION TO COMPEL PRODUCTION**
          **OF DOCUMENTS AND**
20                 **INTERROGATORY ANSWERS**

21    CONSOLIDATED WITH      Hearing date:      March 5, 2007
     MATTEL, INC. v. BRYANT and      Hearing time:      8:00 a.m.
22    MGA ENTERTAINMENT, INC. v.
     MATTEL, INC.
23

24

25

26

27

28

EXHIBIT 31 PAGE 441

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................2

II.   FACTS AND PROCEDURAL BACKGROUND .........................................3

III.  ARGUMENT..................................................................... 10

   A.   Mattel's Motion Is Unnecessary And Should Be Denied With Respect To The Majority Of Documents Specifically Identified Therein.......................................................................... 10

   B.   Mattel's Motion With Respect To The Remaining Requests Should Be Denied Because They Seek Documents Not Relevant To This Litigation, Documents Covered By A Protective Order, Or Documents Of The Type Mattel Itself Has Refused To Produce .................................................................. 16

   C.   Mattel Is Not Entitled To Information Concerning Bryant's Attorneys' Fees................................................................. 24

   D.   Mattel Is Not Entitled To Irrelevant, One-Sided Discovery .............. 24

   E.   Mattel Is Not Entitled To Expert Discovery At This Time................ 27

   F.   Mattel's Assertions That MGA Has Withheld Documents Until Mattel Receives Them From Other Sources And/Or Because Of "Evidence" Concerning The Timing Of The Creation And Development of "Bratz" Are Without Merit....................................... 28

   G.   Mattel's Motion To Compel Further Interrogatory Responses Should Be Denied As Moot................................................. 31

   H.   If Sanctions Are Warranted, They Are Warranted Against Mattel.......................................................................... 32

IV.  CONCLUSION............................................................ 32

EXHIBIT 31 PAGE 442

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1

# TABLE OF AUTHORITIES

2

Page

3

## CASES

4
Advanced Modular Sputtering, Inc. v. Superior Court,
    132 Cal. App. 4th 826 (2d Dist. 2005)............................................................. 20

5
Am. Heavy Moving & Rigging Co. v. Robb Techs., L.L.C.,
    No. 2:04-CV-00933-JCM (GWF), 2006 U.S. Dist. LEXIS 51276,
6
    (D. Nev. July 24, 2006)......................................................................................... 22

7
Brown Bag Software v. Symantec Corp.,
    960 F.2d 1465 (9th Cir.) ...................................................................................... 22

8
Computer Economics, Inc. v. Gartner Group Inc., 50 F. Supp. 2d 980
9
    (S.D. Cal. 1999) ..................................................................................................... 19

Intersong-USA, Inc. v. CBS, Inc., 1 Fed. R. Serv. 3d 609 (S.D.N.Y.
10
    1985) ......................................................................................................................... 20

11
Vermont Microsystems, Inc. v. Autodesk, Inc., 88 F.3d 142 (2d Cir.
    1996) ......................................................................................................................... 19

12

## STATUTES

13
Cal. Civ. Code, § 3426.1(d) ..................................................................................... 22

14
Fed. R. Civ. Proc. 26 ........................................................................................... 21, 22

Fed. R. Civ. Proc. 33(b) ........................................................................................... 31
15
Fed. R. Civ. Proc. 6(a)............................................................................................... 31

16

17

18

19

20

21

22

23

24

25

26

27

28

1   This memorandum of points and authorities is filed in support of MGA

2   Entertainment, Inc.'s ("MGA") Opposition to Mattel, Inc.'s ("Mattel") motion to

3   compel production of documents and interrogatory answers in the case originally

4   captioned *Mattel, Inc. v. Bryant,* Case No. CV 04-9059 SGL (RNBx).

5   ## I.   **INTRODUCTION**

6   Mattel's motion to compel is a disingenuous attempt to convince this Court

7   that MGA is withholding relevant documents and refusing to produce documents

8   until Mattel discovers the existence of such documents from other sources. In

9   actuality, and contrary to Mattel's assertion, MGA long ago produced volumes of

10  documents responsive to Mattel's requests and, indeed, produced far more

11  documents of substance than has Mattel.[1]  In response to a letter from Mattel on

12  January 7, 2007, in which Mattel complained about documents produced in August

13  2004, May 2005, and September 2006, MGA agreed to address the vast majority of

14  the issues Mattel raises in this motion. Before the date for MGA's response,

15  however, Mattel filed the instant motion to compel. MGA continued its production

16  regardless and, as of the date of this opposition, will have produced virtually all, if

17  not all, of the documents at issue.

18  The real issues raised by Mattel's motion, however, are those about which

19  Mattel makes only passing reference: (1) whether Mattel is entitled to unfettered

20  access to all of MGA's financial records, regardless of whether they pertain to any

21

22  [1] Although Mattel claims to have produced some 60,000 pages of documents, it neglects
    to mention that 32,000 pages of those documents were produced on January 5, 2007, and
23  further neglects to mention that almost all of those documents are copies of Mattel product
    catalogues, incomprehensible and, by Mattel's own admission, incomplete phone records,
24  and single page photographs of apparently every Barbie doll Mattel has ever produced,
    including "Shrek Barbie," "Queen of England Barbie," "Classical Goddess Barbie," and
25  catalogs of Barbie's from the 1960's. Additionally, a large number of the documents in
    Mattel's January 2007 production are duplicative of documents within the very same
26  production, and several images from the "My Scene," "DIVA STARZ," and "Little
    Mommy" lines are recurrent with unsubstantial alteration. (*See* Declaration of Antonio
27  De Anda ¶ 2). Mattel has produced virtually no electronic mail or documents concerning
    the origin and development of "My Scene," "DIVA STARZ," or "Flavas," the product
28  lines at issue in MGA's claims. (*Id.* ¶ 3.)

1  product at issue in this lawsuit; (2) whether Mattel is entitled to unfettered access to

2  MGA's design plans for yet-unreleased "Bratz" products; and (3) whether Mattel is

3  entitled to compel the types of documents from MGA that Mattel itself has refused

4  to produce, such as witness statements made in other legal proceedings and

5  documents in the possession of indirect subsidiaries. MGA respectfully submits

6  that the answer to each of those questions is no.

7  ## II.    FACTS AND PROCEDURAL BACKGROUND

8          Over the past six weeks, Mattel has papered this Court with thousands of

9  pages of one-sided, incomplete and inaccurate stories about the conduct of MGA

10  and Carter Bryant, whether germane to the issue at hand or not. MGA and Bryant

11  have tried not to burden the Special Master with the parties' differences on the

12  merits or their differences on discovery disputes prior to the Special Master's

13  appointment. Indeed, MGA recognizes that the case has changed substantially over

14  the past few months. But, to convey fully the baselessness of Mattel's latest motion

15  *and Mattel's true objective*, MGA must recount Mattel's prior conduct and the

16  agreements that the parties reached before this calendar year, all of which Mattel

17  now neglects to mention. As set forth more fully below, Mattel's motion is far

18  more about obtaining access to MGA's financial information unrelated to the

19  products at issue, plans for future product development, and other one-sided

20  discovery, than it is about obtaining better copies of supposedly "illegible"

21  documents and the laundry list of other issues Mattel raises in its motion.

22          In April 2004, three and a half years after Bryant left Mattel's employ, Mattel

23  filed a vaguely worded, five count complaint against him, and him alone. Two

24  months later, even though the name "MGA" appeared nowhere in its complaint,

25  Mattel served MGA, its most threatening competitor, with an eight page subpoena

26  for 21 categories of documents to be produced, ostensibly, in ten days, without even

27

28

EXHIBIT __31__ PAGE __44__

1  discussing a protective order.[2]  Notably, at that time, Mattel was finally waking up

2  to the fact that "Barbie," the doll that had acted as Mattel's tentpole for decades,

3  was no longer relevant to little girls[3] -- a fact that MGA had realized years before.

4       In response to Mattel's subpoena, MGA filed a motion to quash, which was

5  subsequently granted.  Magistrate Block found that Mattel's subpoena failed to

6  provide sufficient time for compliance and ordered Mattel to meet and confer with

7  MGA.[4]  The parties later met and conferred on the scope of production and agreed

8  that documents relating only to the original, or "first generation" "Bratz" dolls need

9  be produced.[5]  The parties then engaged in a mutual exchange of documents on

10  August 12, 2004.[6]  In the meantime, Bryant, a Missouri resident, removed the case

11  to federal court and Mattel (who routinely had five intellectual property lawyers

12  attend discovery hearings in state court) moved to remand, claiming that the case

13  was a simple employment case, not a copyright case, and that the federal court's

14  $75,000 jurisdictional minimum had not been met.[7]  Mattel's tactic succeeded, and

15  the case was remanded to state court on August 20, 2004.

16       Mattel's August 12, 2004, production was substantially lacking, however.

17  Although Bryant had asked for documents concerning his employment at Mattel,

18  including Mattel's records of his attendance, his email, his telephone calls, etc.,

19  Mattel refused to produce them.[8]  Bryant was subsequently forced to obtain a

20  protective order prohibiting Mattel from deposing him until after it had produced

21  the requested documents.[9]

22       That protective order, issued by the Hon. Gregory Alarcon in Los Angeles

23  _____

[2] *See* Declaration of Diana M. Torres ("Torres Decl.") filed concurrently, ¶ 2 & Exh. A.

24  [3] *See* Declaration of Keith A. Jacoby ("Jacoby Decl.") in support of Bryant's Opposition
to Mattel's Motion for Remand, dated December 22, 2004, ¶ 17 & Exh. 12.

25  [4] Torres Decl., ¶ 2 & Exh. B (Magistrate Block's Order, dated June 28, 2004).

[5] Jacoby Decl. ¶ 12.

26  [6] Torres Decl. ¶ 3.

[7] Torres Decl. ¶ 4.

27  [8] *Id.*

28  [9] *Id.*

1   Superior Court, precipitated a watershed moment in Bryant's discovery from

2   Mattel.  In October 2004, Mattel produced over 400 previously undisclosed

3   documents.  First, on October 8, Mattel produced the "Toon Teens" drawings[10] and

4   photographs previously produced in August.  Three days later, Mattel produced an

5   exchange of correspondence and a cooperation agreement between Mattel and

6   Cityworld, the defendants in a lawsuit in Hong Kong filed by MGA, with whom

7   Mattel entered into an information sharing agreement and to whom Mattel provided

8   "Toon Teens" documents so that Cityworld could claim to the Hong Kong court

9   that "Bratz" originated with Mattel, not Bryant, and that therefore MGA does not

10  own and cannot enforce the rights to "Bratz."[11]  Two more days later, Mattel

---

[10] An article published July 16, 2003, in *The Wall Street Journal* ("WSJ") quoted an unnamed source inside Mattel for the assertion that Bryant copied "Bratz" from a project done by Mattel employee Lily Martinez:

> Inside Mattel, some are convinced the "Bratz" borrow liberally from a Mattel project that was scrapped at the testing stage in 1998.

Mattel had previously produced the drawings to Bryant's counsel in response to a specific verbal request for drawings and photographs of the project referenced in the WSJ article, but stated that the drawings and the project generally were *not* responsive to Bryant's document requests and, in fact, were unrelated to the case. (Jacoby Decl. ¶¶ 4-5 & Exh. 2.)  When forced to produce documents requested by Bryant pursuant to Judge Alarcon's order, however, Mattel produced the "Toon Teens" documents *without* the disingenuous assertion that the photographs and documents were not responsive to Bryant's requests and unrelated to the case. (Jacoby Decl. ¶¶ 7-8.)  Mattel's counsel then questioned Bryant extensively at deposition about "Toon Teens" and their supposed "substantial similarity" to "Bratz." (Jacoby Decl. ¶ 3, & Exh. 1.)  On October 26, 2004, during a Local Rule 37-2 conference arising from the fact that Mattel refused to produce a witness in response to Bryant's deposition notice, Bryant offered to withdraw its request for a witness on "Toon Teens"-related subjects if Mattel would stipulate that it was not contending that Bryant copied "Bratz" from "Toon Teens" and did not claim that the revenue stream from the sale of other Mattel doll products were wrongfully encroached upon by "Bratz," because "Bratz" was allegedly derivative of "Toon Teens."  ***Mattel refused.***  (Jacoby Decl. ¶ 11.) In recent months, however, Mattel agreed not to pursue any claim that "Bratz" is similar to "Toon Teens," no doubt realizing that the child-like caricatures of "Toon Teens" bear so little resemblance to "Bratz" that it is inconceivable that its claim would prevail; and, of course, Mattel needed to take that position to defeat Bryant's declaratory relief claim of ownership and non-infringement. (Torres Decl. ¶ 10 & Exh. G (Order Granting Motions to Dismiss, dated July 18, 2006).)
[11] Pursuant to the cooperation agreement, which Mattel drafted, Mattel agreed to "provide to Cityworld copies of (i) Mattel's design drawings known as "Toon Teens" and (ii) photographs of "Toon Teens" prototypes.  In return, Cityworld agreed to provide Mattel with documents, including "copies of all "Bratz" design drawings," "the contracts relating to 'Bratz,'" and the affirmation to which such documents were attached. (Jacoby Decl. ¶

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   produced the letter dated August 2002 addressed to Mattel CEO Robert Eckert, in
2   which the anonymous author alleges that Bryant stole the "Bratz" idea from Mattel.
3   Handwritten notes on that letter indicate (and subsequent deposition testimony
4   confirmed) that, at Mr. Eckert's suggestion, Mattel's Vice President of World Wide
5   Security investigated the allegations.[12] (MGA and Bryant recently had to compel
6   Mattel to produce documents related to that investigation, which they have not yet
7   received.)

8       Until the case was remanded to state court in late August 2004 by the
9   Honorable Nora M. Manella, Mattel agreed to limit its discovery requests to only
10  "first generation" "Bratz" dolls in order to maintain the fiction that there was
11  perhaps less than $75,000 in controversy, and that it was not claiming copyright
12  infringement.[13]  On October 28 and 30, 2004, however, believing that the case was
13  safely ensconced in state court, Mattel informed Bryant it would no longer honor
14  that limitation but, instead, was proceeding with discovery concerning *all* "Bratz"
15  products, including those being developed today.[14]  Mattel's purported rationale --
16  "damages."[15]  Mattel's overt efforts to seek far more than $75,000 from Bryant
17  landed it back in federal court, and this time Judge Manella denied remand.[16]

18      Mattel nonetheless continued to make every effort to avoid facing the
19  standards applicable under federal copyright law and, after failing to obtain remand
20  from Judge Manella, appealed her decision.[17]  Mattel also moved to dismiss
21  Bryant's complaint for declaratory judgment, which sought a ruling that he owned

---

22  9 & Exh. 7.)
23  [12] Jacoby Decl. ¶ 10 & Exh. 8.
    [13] Jacoby Decl. ¶ 12.
24  [14] Jacoby Decl. ¶ 13 & Exh. 9.
25  [15] Torres Decl. ¶ 5 & Exh. C (Bryant Dep. taken on November 8, 2004, at 702:15-703:9).
    [16] Torres Decl. ¶ 6, Exh. D (Order Denying Plaintiff Mattel, Inc.'s Motion to Remand and
26  Certifying Question for Interlocutory Review, dated March 4, 2005).
    [17] At this point, Mattel finally conceded that $75,000 was in controversy but argued that
27  MGA's intervention defeated diversity jurisdiction. (Torres Decl. ¶ 7, Exh. E (Mattel's
    Opening Brief at 8)).  That argument failed. (Torres Decl. ¶ 6, Exh. F (Order Affirming
28  District Court's denial of motion to remand)).

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 31 PAGE 448

1    the rights to "Bratz" at the time he conveyed them to MGA and that nothing he did

2    infringed any copyright owned by Mattel.

3        In the meantime, in 2005, after lengthy conferences of counsel, the parties

4    stipulated to supplementing their document productions on May 16, 2005. Faced

5    with the fact that Bryant's work for MGA long after his departure from Mattel bore

6    no relevance to the "state law" claims it had asserted in April 2004, Mattel retreated

7    from its October 2004 position that all things "Bratz" were relevant to its claims,

8    and, at least with respect to MGA, agreed to continue limiting its discovery requests

9    to "first generation" "Bratz." Mattel's lead counsel confirmed that agreement even

10   after remand but, to resolve any issue as to what constituted "first generation"

11   "Bratz," the parties agreed to a date cut-off of June 2001, the month when MGA's

12   first "Bratz" dolls were made available for sale.[18]

13       In September 2006, following the parties' lengthy conferences of counsel in

14   July and August 2006, MGA made a supplemental production of documents.

15   Mattel, after subpoenaing long-time Mattel vendor Steve Linker who worked on

16   Mattel's 2000 "DIVA STARZ" line, produced for the first time boxes of old DIVA

17   STARZ drawings, signaling its apparent intention to convert its former "Toon

18   Teens" theory into one involving "DIVA STARZ."[19]

19       On November 20, 2006, Mattel filed a motion for leave to amend its

20   complaint to allege the long-denied copyright ownership and infringement claim,

21   along with vague claims for civil RICO violations and trade secret

22   misappropriation. On January 12, 2007, the Honorable Stephen G. Larson allowed

23   Mattel to assert its claims in these consolidated actions, not as additional claims in

24   its original complaint but as counterclaims to MGA's Lanham Act and unfair

25   competition claims filed in April 2005. MGA and Bryant filed motions to dismiss

26   Mattel's RICO and trade secrets claims on several grounds, including that Mattel

27   _____

28   [18] Torres Decl. ¶ 12.
     [19] Torres Decl. ¶ 20.

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 31 PAGE 449

1   failed to identify their alleged predicate acts or Mattel's alleged trade secrets.[20]

2       Mattel now moves to compel MGA to produce all manner of documents,

3   claiming that:

4       1. MGA's prior productions are deficient because they contain redactions

5   and cut-off text, and because Mattel has obtained documents from third parties that

6   MGA has not produced;

7       2. MGA is somehow at fault because Union Bank did not produce sufficient

8   documents in response to Mattel's subpoena;

9       3. MGA's document production is deficient because it has not produced all

10   documents from MGA HK Ltd, Inc., an indirect foreign subsidiary;

11       4. MGA's document production is deficient because it has not produced

12   statements concerning "Bratz" made by witnesses in the course of other

13   proceedings covered by protective orders in those proceedings;

14       5. MGA's document production is deficient because MGA supposedly has

15   not produced all documents concerning contracts with Bryant; and

16       6. MGA's document production is deficient because MGA has not produced

17   documents concerning subsequent generations of "Bratz."

18       In its motion, Mattel makes no mention of the facts that:

19       1. The redactions at issue, on documents produced months or years ago,

20   concern MGA products -- such as "Hoppity Bouncy Baby," "Insectobots," "Scooter

21   Samantha," and others -- that have no bearing whatsoever on Mattel's claims, or

22   that MGA agreed to produce, and has produced, documents without redactions save

23   for pricing and financial information concerning unrelated products;

24       2. The cut-off text about which Mattel complains, again on documents

25   produced to Mattel months or years ago is, with perhaps a handful of exceptions,

26   _____

27   [20] Torres Decl. ¶ 24, Exhs. M & N (Memorandum of Points and Authorities in Support of MGA and Isaac Larian's Joint Motion to Dismiss Mattel's Amended Answer and Counterclaims; Memorandum of Points and Authorities In Support of Carter Bryant's

28   Motion to Dismiss Counterclaims II, III, V, VII, IX, and XI).

1  completely inconsequential, or that MGA agreed to produce, and has produced,

2  new copies of those documents;

3       3.  Mattel has never sought to compel further production from Union Bank;

4       4.  None of Mattel's document requests contain a request for documents from

5  MGA HK Ltd., and Mattel never even mentioned its interest in those documents

6  until August 2006, but declined to agree that Mattel would produce documents

7  from its own subsidiaries, on the sole basis that Mattel has more subsidiaries than

8  does MGA;

9       5.  Statements concerning "Bratz" made by witnesses in the course of other

10 proceedings are covered by protective orders in those proceedings, and Mattel has

11 refused to agree to produce statements in its own possession, custody or control

12 concerning the origin of the Mattel products at issue, including both "My Scene"

13 and "DIVA STARZ;"[21]

14      6.  MGA has already produced all non-privileged contracts entered or

15 contemplated with Bryant prior to his last day at Mattel or that concern "Bratz,"

16 including non-privileged documents concerning any supposed "fee agreement" in

17 this litigation.  Mattel appears to be seeking privileged documents and drafts,

18 however, and/or alleged contracts between MGA and Bryant entered into long after

19 he left Mattel that have nothing to do with "Bratz;" and

20      7.  MGA has already agreed to produce documents concerning subsequent

21 generations of "Bratz," which were not at issue until January 12, 2007, but has

22 taken the position that the documents Mattel really wants -- unreleased product

23 design drawings -- have no bearing on this case or, at the very least, should not be

24 produced until *after* the release of those products.

25

---

26 [21] Mattel mentions its refusal to agree to produce witness statements concerning "Flavas,"
   but makes no mention of its refusal to agree to produce witness statements concerning
27 "My Scene," the product at the heart of MGA's Lanham Act and unfair competition
   claims, or "DIVA STARZ," a product now directly at issue in Mattel's newly-minted
28 theory of ownership and infringement. (Mot. at 15).

1   In short, Mattel's omnibus motion to compel is not an attempt to compel the
2   documents specifically identified in the motion but rather an attempt to gloss over
3   the real issues and thereby obtain a broad order that encompasses far-reaching
4   documents and sets precedent on a wide variety of issues without requiring Mattel
5   to address their relevance.

6   **III.   ARGUMENT**

7       **A.   Mattel's Motion Is Unnecessary And Should Be Denied With**
8           **Respect To The Majority Of Documents Specifically Identified**
9           **Therein**

10           **1.   MGA Has Either Already Cured Any Alleged Deficiencies**
11                   **In Its Production Or Is In The Process Of Addressing Any**
                **Remaining Deficiencies**

12   As a preliminary matter, the majority of Mattel's motion to compel is
13   unnecessary and should be denied on that basis alone.  On January 26, 2007, the
14   parties met and conferred regarding a host of purported deficiencies in MGA's
15   2004, 2005 and 2006 document productions.  During the conference of counsel,
16   MGA agreed to review its production and to reproduce unredacted, or modified
17   redacted copies of documents, where appropriate, and to produce copies of any
18   missing attachments to documents where the attachments were relevant to a claim
19   or defense in the litigation.[22]  In addition, MGA agreed to review the copies of
20   documents in its possession on which Mattel claimed the text had been cut-off or
21   was "illegible," and to reproduce those documents if MGA's copies contained
22   information missing from Mattel's documents.[23]  Finally, MGA agreed to review
23   the Court's Order Granting Mattel's Motion to Compel Production of Documents
24   as to Carter Bryant, to determine what impact the Court's Order had on MGA's
25   document production.[24]  *Before the deadline for MGA's production*, however,

---

27   [22] Torres Decl. ¶ 18.
28   [23] *Id.*
    [24] *Id.*

EXHIBIT _31_ PAGE _452_

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1  Mattel filed the instant motion to compel seeking, among other things, the very
2  same documents that MGA agreed to produce.

3       MGA has already cured many of the alleged "deficiencies" in its production
4  and will have resolved any remaining alleged "deficiencies" before this matter is
5  heard.  Following the parties' conference of counsel, MGA began the process of
6  reviewing its production and unredacting documents, as agreed.[25]  *Notably, many of*
7  *Mattel's complaints have no merit, as their complaints stem from a fundamental*
8  *misunderstanding of the documents produced*.  Thereafter, on February 5, 2007,
9  MGA reproduced unredacted documents, or documents with substantially fewer
10  redactions for its production through May 2005.[26]  MGA also produced missing
11  attachments to documents where the attachment was relevant to the "Bratz" or
12  "Prayer Angel" product lines, the only products at issue during the time frame of
13  the documents in the production.[27]  MGA has continued to review the remainder of
14  its production to date to determine whether additional documents need to be
15  reproduced, and has been producing on a rolling basis any such documents that are
16  identified.[28]  As of the date of this opposition brief, the only documents of this type
17  that MGA has not reproduced are payment-type documents where part of a word or
18  number was cut off by the copier.[29]  As MGA's counsel has explained to Mattel, the
19  copies of those documents in counsel's possession (which were produced last
20  September, but about which Mattel made no complaint until January), are

21

---

22  [25] Declaration of Stacie McLean ("McLean Decl.") ¶ 2.

23  [26] *Id.*  The only redactions to the reproduced documents were either based on privacy
   concerns for third parties, such as social security numbers, or else include information for
24  products that are not relevant to this litigation.  *Id.* ¶ 2.

   [27] McLean Decl. ¶ 3.

25  [28] McLean Decl. ¶ 2.

   [29] Moreover, the majority of the text that was cut-off or "illegible" on the documents
26  produced to Mattel was either so minor (such as the top portion of a word or number) that
   it did not affect Mattel's ability to read, understand or use the document, or else was
27  present and fully legible elsewhere on the document (such as an invoice number that
   appeared in two places on the document, one of which was "cut-off" and one of which
28  was not). (McLean Decl., ¶ 4).

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 31 PAGE 453

1   substantially the same as those that had been produced to Mattel.[30]  Accordingly,

2   MGA requested the original files so that any documents that were "illegible" or had

3   text cut-off could be reproduced, as needed.[31]  Those documents were in an off-site

4   storage facility and were not retrieved until the business day before this opposition

5   was due; as MGA had already agreed, if they contain the allegedly "illegible" or

6   cut-off text, MGA will produce them, and expects to do so in the next two days.[32]

7        Mattel, however, wants more – although it dare not admit this openly, Mattel

8   apparently wants all MGA financial data, regardless of the product.  For example,

9   Mattel attached to its motion to compel a 100-page spreadsheet containing financial

10  data ostensibly to show that MGA has redacted far too much and should be required

11  to produce such documents in unredacted form.[33]  Notably, however, the

12  information redacted from the spreadsheet *relates to products not at issue in this*

13  *litigation*, including Power Rangers, Hello Kitty, Scooter Samantha and Hoppity

14  Bouncy Baby.  It is thus clear that Mattel's goal is to have MGA produce all

15  financial data, regardless of whether the product is at issue in this litigation.  *There*

16  *is absolutely no basis on which Mattel is entitled to such commercially sensitive*

17  *information about its most significant competitor.*[34]

18              2.      **MGA Has Already Produced Documents In Response To**
19                      **Mattel's Requests Or Is In The Process Of Producing**
                        **Relevant Documents In Its Possession**
20

21                      a.      **MGA Has Already Produced Documents In Response**
                                **To Most Of Mattel's Requests**
22

23       Mattel's motion also seeks to have MGA produce documents that were

24  [30] Torres Decl. ¶ 18.

25  [31] McLean Decl. ¶ 4.
    [32] McLean Decl. ¶ 4.

26  [33] Declaration of Michael T. Zeller in support of Mattel's Motion to Compel, ¶ 4, Exh. 2.
    [34] As set forth more fully in section III.B.1.b *infra*, the Protective Order in this case is
27  inadequate to protect MGA from disclosure, as Mattel has frequently paraphrased or
    included summaries of information designated confidential or "attorneys eyes only" in
28  public filings.

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1  produced long ago. Mattel is well aware of this fact and, effectively, seeks

2  documents that either *do not exist* or are simply not in MGA's possession.

3      First, MGA has produced all responsive and relevant documents that it was

4  able to locate after a diligent search in response to Request Nos.: 6, 7, 9,[35] 26, 27,

5  32, 33, 34,[36] 35,[37] 36, 55, 69 and 70.[38] MGA has also previously produced

6  documents in response to many of Mattel's remaining requests. Given MGA's

7  agreement to produce documents related to "Bratz" other than "First Generation"

8

9  [35] Mattel's Second Set of Requests For Production, Request No. 9 seeks "All
   DOCUMENTS that REFER OR RELATE To any work, activities or services, including
10 without limitation any freelance work or consulting services, that Veronica Marlow
   performed for or with YOU or on YOUR behalf prior to January 1, 2001 (regardless of
11 when any such document was prepared, created, received or transmitted, whether in whole
   or in part)." MGA has produced all relevant and responsive documents in response to this
12 request that it was able to locate with regard to Ms. Marlow's work on "Bratz" and
   "Prayer Angels." Ms. Marlow has worked on many projects for MGA other than those at
13 issue in this litigation. Thus, documents related to Ms. Marlow's work on projects not at
   issue in this litigation and which are not relevant to any party's claims or defenses, have
14 not been produced.
   [36] Mattel's Second Set of Requests For Production, Request No. 34 seeks "All
15 DOCUMENTS prepared, written, transmitted or received (whether in whole or in part)
   prior to January 1, 2001 that REFER OR RELATE TO ANGEL." The parties previously
16 agreed that MGA would produce documents responsive to this request that reflect major
   milestones in the development of "Prayer Angels." (Torres Decl. ¶ 13.) Accordingly,
17 MGA has already produced all relevant and responsive documents that it could locate,
   consistent with the parties' agreement.
18 [37] Mattel's Second Set of Requests For Production, Request No. 35 seeks "All
   DOCUMENTS that REFER OR RELATE TO ANGEL that REFER OR RELATE TO
19 any time prior to January 1, 2001 (regardless of when such document was prepared,
   written, transmitted or received, whether in whole or in part." The parties previously
20 agreed that MGA would produce documents responsive to this request that reflect major
   milestones in the development of "Prayer Angels." (Torres Decl. ¶ 13.) Accordingly,
21 MGA has already produced all relevant and responsive documents that it could locate,
   consistent with the parties' agreement.
22 [38] Mattel's Second Set of Requests For Production, Request No. 70 seeks "All
   COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO
23 BRYANT, Mattel, Inc., BRATZ and/or Anna Rhee, including without limitation all
   diaries, notes, calendars, logs, phone records and letters, that reflect, record, or
24 memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS."
   MGA has produced all relevant and responsive documents that it could locate in response
25 to this request with regard to communications between MGA and Elise Cloonan that refer
   or relate to Bryant, Mattel, or Bratz. MGA has also produced all relevant and responsive
26 documents that it could locate in response to this request that refer or relate to Ms. Rhee
   that relate to the present litigation, or that relate to First Generation Bratz. Other
27 communications relating to Ms. Rhee, who has worked on various other projects for
   MGA, are not relevant to the claims or defenses of the parties in the litigation and should
28 not be required to be produced.

1  "Bratz," as well as to produce certain documents -- that were not relevant to a claim

2  or defense prior to January 12, 2007, however, MGA is diligently working to

3  produce documents in response to many additional requests.[39]

4       Finally, consistent with the parties' agreement, MGA has produced all

5  documents relevant to "Bratz" or "Prayer Angels" that it received from Union Bank

6  in response to Mattel's subpoena.[40]  Pursuant to that agreement, MGA agreed to

7  review and produce documents provided to it by Union Bank for the years 1999 -

8  2001 concerning payments that it could identify as being for "Bratz" or an entirely

9  separate project, "Prayer Angels," discussed *infra.*  Indeed, Mattel itself

10  acknowledges that MGA's production of cancelled checks and wire transfers

11  related to payments made with regard to "Bratz" or "Prayer Angels."[41]  Mattel,

12  however, complains that other types of documents are missing.  Union Bank

13  provided no other documents that indicated they were related in any way to "Bratz"

14  or "Prayer Angels."[42]  Accordingly, Mattel's motion on this issue should be denied.

15         **b.**    **MGA Has Agreed To Produce Documents Pertaining**

16              **To Subsequent Generations Of Released Bratz Dolls**

             **Based On The Changed Nature Of The Case But**

17               **Should Not Be Compelled To Do So Because They**

18               **Became Relevant Only In Mid January**

19       Mattel next attempts to argue that MGA's objection to producing documents

20  relating to "Bratz," other than "First Generation" "Bratz," was improper and that

21  the Court should compel MGA to produce such documents.  As Mattel is well

22  aware, however, subsequent generations of "Bratz" dolls became relevant to

23  Mattel's claims only on January 12, 2007, when Judge Larson granted Mattel leave

24

25

---

26  [39] Those requests are Request Nos.: 1, 2, 8, 10, 11, 43, 45, 46, 49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.

27  [40] Torres Decl., ¶ 21.

    [41] Mot. at 10.

28  [42] Torres Decl., ¶ 21.

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 3/ PAGE 450

1  to amend its answer and assert counterclaims in the *MGA v. Mattel* litigation.[43]

2  That same date, Mattel asserted claims seeking a declaration of ownership of the

3  "Bratz" copyrights and demanding relief for MGA's "infringement" of Mattel's

4  purported rights in "Bratz," among various other claims.[44]  Prior thereto, Mattel had

5  repeatedly asserted that it was not claiming copyright infringement.  Accordingly,

6  MGA's prior objection to producing documents were appropriate as documents

7  related to subsequent "Bratz" products[45] were not relevant to any claims or defenses

8  of the parties.[46]  In fact, as recently as August 2006 (the last conference of counsel

9  concerning this issue), Mattel had agreed that MGA needed to produce documents

10  pertaining only to the "first generation Bratz" dolls.[47]  Given the changed nature of

11  the case, however, MGA already informed Mattel that it would produce documents

12  pertaining to subsequent generations of "Bratz" dolls that have been released on the

13  market.[48]  Accordingly, Mattel's request for an order compelling MGA to produce

14  such documents should be denied.

15              c.      **MGA Has Agreed To Produce Royalty Statements To**
16                      **Bryant Based On This Court's January 25th Order**

17      During the meet and confer, counsel for MGA also agreed to review the

18  Court's Order Granting Mattel's Motion To Compel with regard to Bryant to

19  determine if the Court's Order had any impact on MGA's obligation to produce

20

21  [43] Notably, Mattel has not produced any documents of the same type they are seeking
22  from MGA -- those related to the creation or development of "DIVA STARZ" or "My
   Scene."  Such documents are clearly relevant and Mattel's failure to produce such
23  documents will be the subject of a forthcoming motion to compel.
   [44] Many of the new counterclaims asserted by Mattel are the subject of pending motions to
24  dismiss filed by MGA and Bryant.
   [45] MGA has never refused to produce documents pertaining to the specific products at
25  issue in its own claims against Mattel but those documents were not the subject of
   Mattel's document requests because discovery on those claims did not begin until last
26  month.
   [46] *See* FED. R. CIV. PROC. 26(b).
27  [47] Torres Decl. ¶ 12.
   [48] Torres Decl. ¶ 23.
28

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 31 PAGE 457

1   documents to Mattel.[49]  After having reviewed this Court's recent Order, and so as

2   to avoid further burdening the Court, MGA agrees to produce any remaining

3   royalty statements for payments made to Bryant within 30 days.  Mattel never

4   raised this issue again before filing its motion.

5        In short, the majority of Mattel's motion seeks documents that MGA has

6   either already reproduced, or else has agreed to reproduce within a reasonable

7   amount of time.  MGA should not be ordered to do that which it has already done,

8   or which it has already agreed to do and on which it is diligently working.

9   Accordingly, Mattel's motion should be denied.

10   **B.**      **Mattel's Motion With Respect To The Remaining Requests Should
             Be Denied Because They Seek Documents Not Relevant To This
11           Litigation, Documents Covered By A Protective Order, Or
             Documents Of The Type Mattel Itself Has Refused To Produce**
12

13           **1.      Mattel Is Not Entitled To MGA's Product Design
                   Documents For Unreleased Products, Which Are Highly
14                 Valuable Trade Secrets That Have No Bearing On This Case**

15
                 **a.      MGA's Product Design Documents For Unreleased
16                       Products Are Highly Valuable Trade Secrets That
                         Have No Bearing On This Case**
17

18       In connection with this Court's January 25, 2007 Order granting Mattel's

19   motion to compel further production of documents from Bryant, Mattel has taken

20   the position that the parties must produce drawings and designs for MGA products

21   currently under development and not yet released to the public.  MGA's "Bratz"

22   products, first released in the summer of 2001, are now sold worldwide and

23   compete directly with certain products marketed by Mattel.[50]  As discussed *infra*,

24   MGA's product design documents for its unreleased toy concepts, *i.e.*, those that

25

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [49] Torres Decl. ¶ 18.

27   [50] *See* Declaration of Paula D. Garcia in Support of Carter Bryant and MGA's Request for
     Clarification, Reconsideration and/or Further Protection, dated February 9, 2007 ("Garcia
28   Decl."), ¶ 3.

1   have not been made public, are among its most highly valuable trade secrets.[51]  The

2   drawings and designs for those concepts represent works in progress and ideas for

3   advancing and developing product lines.[52]

4           The creative development process is one that is fluid, not static.[53]  To develop

5   a product, MGA and Bryant may create and develop scores of drawings that they

6   modify and improve throughout the development cycle.[54]  At MGA, the

7   development process is constant and extremely rapid.[55]  In fact, MGA, which is not

8   burdened by extensive corporate bureaucracy, is known in the toy industry for its

9   development speed and market responsiveness.[56]  Often in this fast-paced

10  development process, MGA goes back to, or builds on, prior drawings.[57]

11          MGA protects its product designs and drawings through a number of ways.

12  For example, employees are required to sign confidentiality agreements, computers

13  are password protected, and MGA's product design buildings have security guards

14  who prohibit entry to unauthorized personnel and who check even authorized

15  personnel on their way out.[58]  Even vendors, manufacturers, suppliers and other

16  third parties who may see a product design late in the development process are

17  required to sign strict confidentiality agreements.[59]

18          MGA's drawings for some of its yet-unreleased "Bratz" products are even

19  more closely protected.  When MGA begins to develop a new "Bratz" line, only a

20  very limited number of people know about it.[60]  In fact, with respect to some new

21  "Bratz" products, there are *only two* people – Carter Bryant and Paula Garcia – who

22  _____
    [51] Garcia Decl., ¶ 4.
23  [52] *Id.*
    [53] *Id.* at 7.
24  [54] *Id.*
    [55] *Id.*
25  [56] *Id.*
    [57] *Id.*
26  [58] *Id.* at 5.
27  [59] *Id.*
28  [60] *Id.* at 6.

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   know what the concept is and who see the early product drawings.[61]  Even after

2   Garcia approves, and Bryant and Garcia have finalized, the concept, only a small

3   number of people on the "Bratz" development team have exposure to the drawings

4   before they are nearly ready for release.[62]

5        Even if some of the "Bratz" drawings that Bryant created for MGA after June

6   30, 2001, may be relevant to claims at issue in this action,[63] drawings for unreleased

7   products are not.[64]  Such documents are clearly not relevant to any of Mattel's

8   claims in its original complaint, which alleged only that Bryant breached his

9   confidentiality obligations *while employed by Mattel*.[65]  Indeed, Mattel has

10  repeatedly confirmed that it stated only alleged claims for employment-based duties

11  in the *Mattel v. Bryant* action.[66]  Designs and drawings for products currently under

12  development, over six years later, therefore have no relevance to Mattel's original

13  contract and fiduciary claims.  Mattel's new copyright counterclaims are also based

14  on its allegation that Bryant created the original "Bratz" drawings *while employed*

15  *at Mattel*.[67]  Mattel did not argue in its motion papers or at oral argument that

16  drawings and designs for products *currently* under development – over six years

17  after the termination of Bryant's employment at Mattel – are relevant to its

18  copyright infringement or ownership claims.  Indeed, at oral argument on Mattel's

19  motion for leave to amend its complaint, Mattel's lead counsel, John Quinn, stated

20  that Mattel's copyright theories rest on its contention that Bryant created the

21

22  ───────────────
    [61] *Id.*

23  [62] *Id.*

    [63] While MGA has agreed to produce such documents, it does not concede that the
24  majority have any relevance to the claims or defenses in this litigation.

    [64] As an initial matter, Mattel cannot possibly have suffered any cognizable injury relating
25  to MGA products that have not yet been released, and indeed has never before taken the
    position that such products are relevant.
26  [65] Complaint dated April 27, 2004, ¶ 12.

27  [66] *See* Torres Decl., ¶ 6, Exh. D (Order Denying Plaintiff Mattel, Inc.'s Motion to Remand
    and Certifying Question for Interlocutory Review, dated March 4, 2005).

28  [67] Complaint dated January 12, 2007, ¶ 26.

- 18 -

1  original "Bratz" drawings while employed at Mattel.[68] Another Mattel attorney,

2  Michael Zeller, confirmed this during a conference of counsel on an unrelated issue

3  on February 12, 2007.[69]

4      Nor are such documents relevant to Mattel's other counterclaims. Mattel's

5  trade secret claim is based on allegations of theft of *business information*, not of

6  designs and drawings.[70] Consequently, designs and drawings are not relevant to

7  any of Mattel's counterclaims founded on its allegations of trade secret theft.

8  Moreover, even if designs and drawings were relevant to Mattel's trade secret

9  claims, Mattel has failed to provide a designation of its alleged trade secrets "with

10  reasonable particularity," as called for by the California Code of Civil Procedure

11  section 2019.210 (formerly 2019(d)), which provides that "before commencing

12  discovery relating to the trade secret, the party alleging the misappropriation shall

13  identify the trade secret with reasonable particularity." Further, discovery on all of

14  Mattel's other claims, which are factually dependent on its allegations of trade

15  secret misappropriation, must similarly be stayed pending a more particularized

16  identification of the trade secrets allegedly misappropriated.[71]

17      These documents should also be excluded from production because of the

18  broad scope of Mattel's requests. In *Intersong-USA, Inc. v. CBS, Inc.*, a case of

19  alleged copyright infringement by Julio Iglesias and others, the plaintiff had

20

21  [68] Torres Decl., ¶ 22.
   [69] *Id.*

22  [70] *See* Declaration of Michael T. Zeller ("Zeller Decl.") filed in Support of Mattel's
   Motion to Compel, ¶ 10, Exh. 8 (Mattel's Amended Answer and Counterclaims, filed

23  January 12, 2007, ¶¶ 37, 48, 68, and 74).
   [71] *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826 (2d Dist.

24  2005) (where all of the plaintiff's 10 claims were "factually dependent" on its trade secret
   claim, discovery on any of the claims could commence only after the allegedly

25  misappropriated trade secrets had been identified with reasonable particularity); *Computer
   Economics, Inc. v. Gartner Group Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999).

26  (establishing the applicability of California's statutory provision to federal cases,
   including cases where pendent jurisdiction applies to state law claims, under the Erie

27  doctrine); *see also Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142 (2d Cir.
   1996)(applying California trade secret law and specifically this provision without dispute

28  or need for discussion).

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1 requested information on *all* musical compositions that the defendants had

2 authored.[72]  Recognizing the overbreadth of this request, the Court held that the

3 defendants should produce information for musical compositions "actually

4 published" over a ten-year period.[73]  Similarly, Mattel's requests for all documents

5 pertaining to "Bratz" or to Bryant's work for MGA after June, 2001, are overbroad

6 and should be limited to drawings or work for "Bratz" products that have been

7 released to the public.

### b. Drawings For Unreleased MGA Products In Development Are Extremely Valuable And The Protective Order Is Inadequate

11 In the event the Special Master determines that drawings for unreleased

12 MGA products are somehow relevant and properly within the scope of the Court's

13 Order, MGA requests further protection pursuant to Federal Rule of Civil

14 Procedure 26(c).  Rule 26(c) provides for the issuance of "any order which justice

15 requires,"[74] and suggests various additional methods of protection that are not

16 available to MGA under the Protective Order currently in place.  Such an order

17 could provide for discovery "only on specified terms and conditions, including a

18 designation of the time or place."[75]  Specifically, the rule provides for an order "that

19 a trade secret or other confidential research, development, or commercial

20 information not be revealed or revealed only in a designated way."[76]

21 In determining whether such an order should be granted, the Ninth Circuit

---

[72] 1 Fed. R. Serv. 3d 609 (S.D.N.Y. 1985).

[73] *Id.*

[74] Rule 26(c) provides for the issuance of a protective order upon motion by a party that has conferred in good faith in an effort to resolve the dispute without court action, and for good cause shown.  MGA attempted to resolve this issue with Mattel in connection with drawings of unreleased products in Bryant's possession and may have reached agreement with respect to those limited drawings, but Mattel specifically stated that it would not extend the terms of any agreement reached with Bryant to documents pertaining to unreleased MGA products in *MGA's* possession.  (Torres Decl. ¶ 23).

[75] FED. R. CIV. P. 26(c)(2).

[76] FED. R. CIV. P. 26(c)(7).

MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   requires that a court balance the risk to the disclosing party of inadvertent

2   disclosure of trade secrets to competitors against the risk to the moving party that

3   protection of the trade secret would impair the prosecution of its claims.[77]  The fact

4   that MGA and Mattel are direct competitors weighs significantly in favor of

5   protection of confidential information.[78]

6        Drawings for unreleased products fit squarely within the scope of trade secret

7   information covered by Rule 26(c) and "should not be revealed" at all or, at the

8   least, "should not be revealed" prior to public release of the products.[79]  A trade

9   secret is defined under California law as information that "(1) derives independent

10  economic value, actual or potential, from not being generally known to the public

11  or to other persons who can obtain economic value from its disclosure or use; and

12  (2) is the subject of efforts that are reasonable under the circumstances to maintain

13  its secrecy."[80]

14       Both prongs of this test are met in this case.  First, a toy manufacturer's

15  unreleased toy concepts, *i.e.*, those that have not been made public, are among its

16  most highly valuable trade secrets.[81]  Although such drawings and designs are

17  valuable even *after* the product's public release, their value is enormous prior to

18  their public release because they represent works in progress and new ideas for

19  advancing and developing product lines; it is the new ideas and designs that are

20  most likely to generate new sales.[82]  Second, because of their tremendous value,

21

22  [77] *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.) (upholding
    protective order granting access to source codes and other trade secret materials only to an
23  independent consultant), *cert. denied sub nom.*, *BB Asset Mgmt., Inc. v. Symantec Corp.*,
    506 U.S. 869 (1992).

24  [78] Garcia Decl. ¶ 3; *see Am. Heavy Moving & Rigging Co. v. Robb Techs., L.L.C.*, No.
    2:04-CV-00933-JCM (GWF), 2006 U.S. Dist. LEXIS 51276, *10 (D. Nev. July 24, 2006)
25  ("The courts generally hold that there is a greater likelihood of harm where disclosure of
    trade secrets is sought in litigation between competitors") (citation omitted).

26  [79] FED. R. CIV. P. 26(c)(7).

27  [80] CAL. CIV. CODE, § 3426.1(d).

    [81] Garcia Decl., ¶ 4.
28  [82] *Id.*

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 31 PAGE 463

1    MGA protects its product drawings in a number of ways:  restricting access to a

2    very small number of people, requiring strict confidentiality agreements, using

3    password-protected computers, and employing security guards at their facilities

4    who prohibit entry to unauthorized personnel and who check even authorized

5    personnel on their way out.[83]

6           MGA takes even greater efforts to protect some of its yet-unreleased "Bratz"

7    products.  In fact, with respect to some new "Bratz" products, there are *only two*

8    people – Carter Bryant and Paula Garcia – who know what the concept is and who

9    see the early product drawings.[84]  Even after Garcia approves and Bryant and

10   Garcia have finalized the concept, only a small number of people on the "Bratz"

11   development team have exposure to the drawings.[85]

12          There is good cause for heightened protection of drawings for unreleased

13   products.  As set forth above, any relevance of such drawings to the issues in *Mattel*

14   *v. Bryant,* which, according to Mattel, has only ever stated alleged claims for

15   employment-based duties, is marginal at best.  In contrast, the potential damage to

16   MGA of any disclosure of the drawings, or even the concepts represented by the

17   drawings, is substantial.  This potential disclosure is real:  both sides have a

18   substantial number of personnel working on this case.  Indeed, Mattel's recent

19   filings with the special master reveal the names of 13 lawyers at Quinn Emanuel

20   working on behalf of Mattel in this matter.  Without question, there are numerous

21   other staff members and outside vendors -- such as copy services, couriers, court

22   reporters, experts and their respective staffs -- who also handle documents in this

23   case on a regular basis.  The current Protective Order allows disclosure to each of

24   these groups of people even for documents restricted as "Attorneys Eyes Only."

25   The fact that such a large number of people can have access to documents accorded

26

27   [83] *Id.* at 5-6.
     [84] *Id.* at 6.
28   [85] *Id.*

1    even the highest level of confidentiality under the Protective Order, by necessity,

2    magnifies the potential for disclosure, which, even if inadvertent, could be

3    tremendously valuable to a competitor and hence tremendously harmful to MGA.

4        Moreover, it has been Mattel's practice to summarize or paraphrase the

5    contents of confidential documents or testimony in briefs and other papers filed

6    with the Court.[86]  If Mattel's attorneys were allowed to review drawings of

7    unreleased MGA products in development and then summarize them -- even

8    conceptually -- in open court or in documents not filed under seal, that information

9    would be publicly available -- and hence available to Mattel itself and other MGA

10   competitors.  This possibility alone warrants protecting the drawings of MGA's

11   products in development until after the products themselves have been released.

         c.     **In The Alternative, Drawings For Unreleased MGA**
                 **Products Should Not Be Required Prior To Their**
                 **Public Release**

15   Finally, even if the Special Master determines that such documents *are*

16   relevant to any of Mattel's counterclaims and should be produced in discovery, they

17   should not be produced now.  Judge Larson recently issued a scheduling order

18   setting trial on Mattel's original claims, in *Mattel v. Bryant,* in February 2008, with

19   discovery continuing thereafter until March 2008, with trial in July 2008, on

20   MGA's Lanham Act and unfair competition claims against Mattel and Mattel's

21   counterclaims against MGA and Bryant.  Thus, even if it is determined that

22   drawings and designs relating to unreleased products may conceivably be relevant

---

23   [86] In fact, as recently as February 5, in its lengthy filing entitled "Mattel's Portions of Rule
24   26(f) Report," Mattel included confidential information regarding early "Bratz"
     development in its descriptions of documents designated "attorneys' eyes only" and of
     deposition testimony also designated "attorneys' eyes only." (*See* Torres Decl.¶ 26.)  For
25   instance, Mattel described information found on a confidential invoice provided to MGA
     by one of its vendors, Veronica Marlow. (*Id.*)  Mattel also used information found in an
26   email designated "attorney's eyes only" to describe the work performed by Stephen Lee
     and Cecelia Kwok, employees of MGA Hong Kong, on "Bratz." (*Id.*)  Mattel also used
27   the AEO testimony of MGA's CEO, Isaac Larian, purportedly to describe the duties of
     Paula Garcia, MGA's Vice President of Product Design and Development and a product
28   manager on the "Bratz" line. (*Id*).

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   to Mattel's counterclaims, the immediate production of such documents should not

2   be required at this time.

3   **C.**    **Mattel Is Not Entitled To Information Concerning Bryant's**

4              **Attorneys' Fees**

5        Mattel also seeks documents related to any indemnification agreements

6   between MGA and Bryant.[87]  First, MGA has already produced the only non-

7   privileged documents responsive to this request.[88]  Moreover, the existence of any

8   fee or indemnity agreement is not relevant to any claim or defense in this litigation

9   and has no bearing on any potential "bias" because there is no dispute that Bryant's

10   interests in this case are aligned with those of MGA, and that Bryant is "biased" in

11   that sense. *In fact, MGA and Bryant previously offered to stipulate to that, and*

12   *again offer to so stipulate now.*  Mattel, however, has refused any such stipulation.[89]

13   Accordingly, MGA should not be required to produce documents related to any fee

14   or indemnity agreement, even if any non-privileged documents existed.

15   **D.**    **Mattel Is Not Entitled To Irrelevant, One-Sided Discovery**

16         **1.**    **Mattel Is Not Entitled To Review All Non-Public Witness**

17               **Statements And Litigation Documents Concerning "Bratz"**

18        Mattel also should not be allowed to conduct a far-flung fishing expedition

19   through a broad array of non-public documents from other legal proceedings.  First,

20   Mattel's request for documents related to prior sworn testimony should be denied

21   because Mattel has refused to produce similar types of documents.[90]  In particular,

22   MGA previously indicated that it would agree to produce such documents, subject

23   to any protective orders, if Mattel agreed to produce similar documents for "DIVA

24

25   [87] *See* Mattel's Second Set of Requests For Production, Request Nos. 49 and 50.

26   [88] Torres Decl., ¶ 14.

    [89] *Id.*

27   [90] Mattel's Second Set of Requests For Production, Request Nos. 37-40 seek affidavits,
declarations, transcripts and other public and non-public pleadings from other suits and

28   legal proceedings that refer or relate to "Bratz" or "Prayer Angels."

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT __31__ PAGE __466__

1    STARZ," "My Scene" and other products at issue in this litigation.[91] Mattel

2    refused. Discovery is not a one way street and Mattel has not demonstrated the

3    inability to obtain the underlying documents and testimony directly. If such

4    documents are to be produced by one side, they should be produced by both.

5        More importantly, however, Mattel's request is a blatant attempt to avoid the

6    discovery limitations imposed by both the Federal Rules of Civil Procedure and

7    those additional limitations imposed by this Court. As Mattel is well aware, MGA

8    is involved in litigation against a number of counterfeiters and blatant infringers in

9    Asia. Until 2003, those cases involved only one issue: whether the defendants in

10   those cases had the right to produce counterfeit "Bratz" dolls. In 2003, however,

11   Mattel began feeding documents to those defendants concerning the abandoned

12   Mattel project, "Toon Teens," referenced above, contending that those documents

13   proved that Bryant created "Bratz" while working at Mattel.[92] Thereafter, the

14   defendants in those cases (and in other cases where the defendants were represented

15   by lawyers who also represented Mattel) took the position that MGA did not own,

16   and therefore could not enforce, the rights to "Bratz." To defend itself against those

17   spurious claims concerning "Toon Teens" – which Mattel has since renounced in

18   open court before Judge Larson,[93] MGA has been forced to litigate the issue of

19   ownership, as well as issues related to the specific defendants in those cases, in

20   other tribunals not subject to the strict requirements of the Federal Rules of Civil

21   Procedure.[94] In effect, by prompting foreign counterfeiters to espouse a theory that

22   Mattel now admits has no merit, Mattel has created a situation in which MGA has

23   been forced to give testimony and provide evidence related to issues in this case

24   that Mattel now seeks to obtain wholesale. Such underhanded tactics should not be

25

26   [91] Torres Decl., ¶ 15.
    [92] Jacoby Decl. ¶ 9.

27   [93] Torres Decl. ¶ 10 & Exh. G (Order Granting Motions to Dismiss, dated July 18, 2006, at 4).

28   [94] Torres Decl. ¶ 4.

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 31 PAGE 467

1  condoned.

2  ### 2. Mattel Is Not Entitled To Discovery Concerning A Family Dispute Involving MGA's Chief Executive Officer And His Brother

3

4

5  In a similar vein, Mattel seeks documents related to an arbitration proceeding

6  between Isaac Larian and his brother Farhad Larian relating to the former's

7  purchase of the latter's interest in MGA as well as any personnel file MGA

8  maintains regarding Mr. Farhad Larian.[95]  Mattel's request should be rejected.  That

9  arbitration, to which MGA itself was not a party, pertained to a family dispute

10  (which Mr. Farhad Larian voluntarily dismissed) and was governed by a protective

11  order that prohibits the use of any documents or testimony for any purpose other

12  than that arbitration.[96]  Similarly, personnel files contain confidential information

13  protected from disclosure, even in discovery, by California law.  Mattel has made

14  no showing that either testimony from that arbitration or Mr. Farhad Larian's

15  personnel file are in any way relevant to a claim or defense in the present litigation.

16  Particularly given the privacy concerns involved in both family disputes and

17  personnel files, MGA should not be required to produce documents in response to

18  these requests.

19  ### 3. Mattel Is Not Entitled To Compel From MGA The Documents Of Its Indirect Subsidiary MGA HK, Ltd.

20

21  Mattel also seeks documents from MGA that belong to, and are in the

22  possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.

23  Although this litigation has been going on for nearly three years, Mattel has never

24  sought to obtain documents directly from that subsidiary and, notably, does not

25  claim to have done so in its motion here.  Moreover, Mattel did not even raise this

26  _____

[95] *See* Mattel's Second Set of Requests For Production, Request Nos. 41 (seeking
27  documents related to the arbitration proceedings) and 88 (seeking Farhard Larian's
personnel file).
28  [96] Torres Decl., ¶ 17.

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 31 PAGE 468

1   issue until a conference of counsel more than two years after Mattel filed its

2   complaint. At that time, MGA's counsel offered to explore a reciprocal

3   arrangement with respect to such documents. Mattel's response: that a reciprocal

4   arrangement would be too burdensome for it because Mattel supposedly has more

5   subsidiaries than does MGA.[97] Mattel – the self-proclaimed world's largest toy

6   maker – should not be allowed to engage in such one-sided and inherently unfair

7   discovery tactics on the basis of supposed "burden."

### E.   Mattel Is Not Entitled To Expert Discovery At This Time

9       Finally, Mattel seeks documents related to any testing that MGA or Bryant

10   may have performed on documents that refer or relate to "Bratz."[98] Such a request

11   is premature. The time for designating experts has not yet arrived, and MGA has

12   made no determination as to whom it will be designating as its testifying experts in

13   this litigation. MGA will be prepared to produce expert reports, as well as any

14   other expert materials required by the Federal Rules of Civil Procedure, at the

15   appropriate time.

16       Mattel's argument that MGA has already designated at least one expert and

17   should be compelled now to produce expert documents is improper. In June 2006,

18   Mattel made the belated request that the Court appoint one document expert to test

19   all documents in this case, to be used jointly by the parties. In support of that

20   argument, Mattel implied in its motion papers that MGA and/or Bryant had

21   destroyed evidence by making holes in "Bratz" drawings.[99] Mattel's insinuation in

22   its papers was so strong that Judge Larson issued an order to show cause as to why

23   the Court should not appoint an expert. At argument, however, Mattel's counsel

24   was forced to concede that *no evidence had been* compromised.[100] In fact, as Judge

25
26   [97] Torres Decl., ¶ 16.
27   [98] *See* Mattel's Second Set of Requests For Production, Request No. 92.
28   [99] Torres Decl. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert
     Witnesses, dated August 10, 2006).
     [100] Torres Decl. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   Larson later found, MGA and Bryant did the appropriate thing – very shortly after

2   Mattel filed its complaint, MGA and Bryant date-tested certain original "Bratz"

3   drawings while Mattel waited until the documents were too old to be dated and

4   therefore too old to confirm the merits of MGA and Bryant's defenses.[101]  To

5   convince Judge Larson of the complete inaccuracy of Mattel's accusations,

6   however, MGA and Bryant were forced to explain in general terms the testing they

7   had performed.[102]  They did not, at that time or at any time since, designate a

8   testifying expert in this area or disclose the results of their expert's work.  Mattel

9   should not be allowed to benefit from its false and unsubstantiated accusations that

10  required MGA and Bryant even to acknowledge the fact that they had performed

11  expert analysis.  Accordingly, Mattel's request should be denied.

12
13      **F.    Mattel's Assertions That MGA Has Withheld Documents Until
                Mattel Receives Them From Other Sources And/Or Because Of
14              "Evidence" Concerning The Timing Of The Creation And
                Development of "Bratz" Are Without Merit**
15

16          Throughout its motion, Mattel argues that additional documents must exist

    because, supposedly, (1) MGA has failed to produce documents until after Mattel

17  receives them from third parties and (2) Mattel has "learned" that extensive work

18  not reflected in the documents produced was performed on "Bratz" before Bryant

19  left Mattel.  Mattel's assertions are without merit, as are its theories concerning the

20  timing of "Bratz" to which these arguments relate.

21          First, Mattel argues that MGA failed to produce documents allegedly related

22  to work performed by Anna Rhee on "Bratz."  MGA initially produced documents

23  related to Ms. Rhee's work on "Bratz" in August 2004.[103]  On January 7, 2005,

24

25  Witnesses, dated August 10, 2006, at 13 (quoting transcript of hearing on July 24, 2006).
    [101] Torres Decl. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert
26  Witnesses, dated August 10, 2006, at 14).
    [102] Torres Decl. ¶ 11, Ex. H (Response of Bryant and MGA to the Order to Show Cause
27  Regarding the Appointment of Expert Witness(es), dated July 21, 2006, at 5).
    [103] Torres Decl., ¶ 8.
28

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   through the attorney for which Mattel paid, Ms. Rhee produced separate invoices of

2   her work at MGA, including work she performed in June 2000 expressly for a

3   different project released in 2000 called "Prayer Angels" or "Angels" for short.

4   MGA thereafter supplemented its production to show that the work performed by

5   Ms. Rhee in June 2000 was in fact for MGA's "Prayer Angels" project, and was not

6   related to "Bratz." [104] Since that time, MGA has produced numerous documents

7   showing that "Prayer Angels" preceded "Bratz" by a few months and that Ms.

8   Rhee's June 2000 work was for that project. [105]

9       Mattel, however, persists in its wishful belief that work began on "Bratz"

10   earlier than claimed. Indeed, Mattel previously argued to the District Court that

11   MGA had altered the documents regarding Ms. Rhee's work in June 2000 to reflect

12   work on "Prayer Angels" when she was (allegedly) actually working on "Bratz"[106]

13   Mattel claims that its argument is supported by Ms. Rhee's deposition testimony, in

14   which she stated that the work she performed in June 2000 was for "Bratz" and that

15   references to "Angel" or "Prayer Angel" on her invoices was a cover for work she

16   performed on "Bratz."[107] After reviewing the briefing on this issue, the District

17   Court rejected Mattel's argument, finding it "hard to accept."[108] In particular, the

18   District Court noted that none of the invoices submitted by Ms. Rhee reflected any

19   work performed on "Bratz" until December 2000.[109] Additionally, the District

20   Court stated that for Mattel's argument to be valid, MGA would have had to alter

21   the documents it produced, *as well as those produced by Ms. Rhee herself.*[110] In

22   ---

   [104] *Id.*

23   [105] *Id.*

24   [106] *See* Torres Dec. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006, at 8).

25   [107] *Id.*; Zeller Decl., ¶ 13; Mot. at 7.

26   [108] *See* Torres Dec. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006, at 8).

27   [109] *See* Torres Dec. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006, at 8-9).

28   [110] *See* Torres Dec. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006, at 8-9).

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   conclusion, the District Court stated that "[a]n alternative and just as plausible
2   explanation is that Rhee is simply mistaken as to when she began performing work
3   on the Bratz project." [111] Mattel should not now be allowed to persuade the Special
4   Master that MGA is withholding documents about "Bratz" because of Ms. Rhee's
5   mistaken testimony.[112]

6        Mattel next attempts to rely on documents and testimony from long-time
7   Mattel freelancer Steve Linker. First, as Mattel is well aware, Mr. Linker did not
8   actually work on the original "Bratz" packaging and therefore was not identified as
9   a vendor about whom responsive documents would exist.[113] Second, many of the
10  documents produced by Mr. Linker were the same drawings MGA produced to
11  Mattel in August 2004.[114] Other documents were in the possession of Mr. Linker,
12  not MGA, thus MGA could not have produced them.[115]

13       Finally, Mattel's argument that Mr. Linker's testimony shows that "Bratz"
14  was developed earlier than MGA and Bryant claim also fails. Indeed, Mr. Linker's
15  testimony is consistent with both the testimony previously offered by Bryant, and
16  the actual timing of the creation of "Bratz." In September, 2006, Mr. Linker, who
17  was represented by the same Mattel-paid lawyer who represented Ms. Rhee,
18  testified that he had met with Bryant briefly in October 2000 and was given a
19  drawing that he understood to have been created for the "Bratz" doll's sculpt.[116]
20  Two years earlier, Bryant similarly testified that he first met with MGA in August
21  2000, first signed an agreement with MGA regarding "Bratz" on October 4, 2000,

22  ───────────
23  [111] See Torres Dec. ¶ 11, Exh. I (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006, at 9).
     [112] Notably, Ms. Rhee's deposition has not been concluded.
24  [113] Torres Decl., ¶ 20, Exh. K (Linker Dep. at 188:14-191:9, 193:18-194:14).
     [114] Id.
25  [115] Id. Those documents with Mr. Linker's notes or handwriting on them, however, were
26  only in the possession of Mr. Linker, and thus could not have been produced by MGA.
     [116] Torres Decl., ¶ 20, Ex. K (Linker Dep. at 77-78). Despite this testimony, even a
27  layman's comparison of the drawing provided by Mr. Linker, which had been produced to
     Mattel in this litigation years before, and the actual dolls shows that the drawing is *not* a
28  drawing of the sculpt.

- 30 -

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 3) PAGE 472

1   and that he met with Mr. Linker about possibly working on "Bratz" prior to leaving

2   Mattel, in early October 2000.[117] Accordingly, Mr. Linker's testimony is not

3   inconsistent with testimony that has been of record in this case for over two years.

4       In short, Mattel's assertions that MGA has failed to produce documents until

5   Mattel receives them from third parties and that MGA must be withholding

6   documents because MGA has not produced documents in support of Mattel's

7   misguided theory that "Bratz" was created earlier than it actually was are wholly

8   unsupported and without merit.

9   ## G.    Mattel's Motion To Compel Further Interrogatory Responses
10            Should Be Denied As Moot

11      Mattel's arguments concerning MGA's responses to Mattel's Second Set Of

12  Interrogatories is equally bereft.  First, Mattel argues that MGA should be

13  compelled to answer those interrogatories because it failed to timely serve its

14  response.  Contrary to Mattel's assertion, however, MGA's response, which was

15  served on May 30, 2006, was timely.  On April 28, 2005, Mattel served its Second

16  Set of Interrogatories on MGA.  MGA's responses were originally due May 31,

17  2005.[118]  On May 20, 2005, however, Judge Manella issued an order staying the

18  proceedings.  At the time the stay was entered, eleven days remained for MGA to

19  respond to Mattel's interrogatories.  Thereafter, on May 17, 2006, Judge Larson

20  issued an order lifting the stay.  Although MGA's response would have been due

21  eleven days later, that date fell on Memorial Day weekend.  Thus, MGA's response

22  was due May 30, 2006.[119]  Consistent with this, MGA served its response to

23

---

[117] Torres Decl. ¶ 5, Exh. C (Bryant Dep. taken on November 4, 2004, at 10, 22, 221:20-
222:14; Bryant Dep. taken on November 5, 2004, at 282, 380-81).

[118] Pursuant to Federal Rule of Civil Procedure 33(b), MGA's response to Mattel's
Second Set of Interrogatories would have been due 30 days later, on May 28, 2005.
However, May 28, 2005, was a Saturday, and the following Monday, May 30, 2005, was a
legal holiday.  Thus, MGA's response to Mattel's interrogatories would not have been due
until May 31, 2005.  *See* FED. R. CIV. PROC. 6(a).

[119] *See* FED. R. CIV. PROC. 6(a).  Mattel attempts to argue that MGA's response was due
May 24, 2006, only seven days after the stay was lifted.  However, the stay was not
designed to reduce the amount of time that the parties had to respond to discovery

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1 | Mattel's interrogatories on May 30, 2006.[120]

2 |      Mattel next argues that MGA's responses to its interrogatories were deficient

3 | and implies that it was prejudiced by alleged deficiencies.  In an attempt to avoid

4 | further burdening the Court with this issue, MGA is serving supplemental

5 | interrogatory responses to cure any alleged deficiencies in its responses.  Notably,

6 | however, Mattel has not been prejudiced by any alleged deficiency in MGA's

7 | interrogatory responses -- MGA's responses are substantively identical to those

8 | provided by Bryant, which Mattel has possessed since June 2006.  Accordingly,

9 | Mattel's motion to compel responses to its interrogatories should be denied.

10 | //

11 | //

12 | //

13 | //

14 | //

15 | //

16 | //

17 | //

18 | //

19 | //

20 | //

21 | //

22 | //

23 | //

24 | //

25 | //

26 | requests.

27 | [120] As Mattel is well aware, MGA's response to Mattel's Second Set of Interrogatories
was post-marked May 30, 2006, and, contrary to Mattel's assertion, MGA did provide a
28 | certificate of service indicating service on May 30, 2006.  *See* Torres Decl. ¶ 25.

- 32 -

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 31 PAGE 474

**H.     If Sanctions Are Warranted, They Are Warranted Against Mattel**

Finally, Mattel argues that it is entitled to sanctions. As set forth at length above, and contrary to Mattel's assertions, MGA has already produced or is diligently working to produce documents in response to Mattel's requests. In contrast, Mattel filed this motion without specifically informing the Special Master of the documents it truly seeks to compel. For that, Mattel should be sanctioned.

**IV.     CONCLUSION**

For the reasons set forth above, the Court should deny Mattel's motion to compel and for sanctions.

Dated: February 20, 2007              O'MELVENY & MYERS LLP

By:   Diana M. Torres
Attorneys for MGA Entertainment, Inc.

LA2:824135.1

EXHIBIT 31  PAGE 475

# EXHIBIT 32

RECEIVED

MAY 3 0 2007

1  DALE M. CENDALI (admitted *pro hac vice*)
   MICHAEL KEATS (admitted *pro hac vice*)
2  DIANA M. TORRES (S.B. #162284)
   JAMES P. JENAL (S.B. # 180190)
3  O'MELVENY & MYERS LLP
   400 South Hope Street
4  Los Angeles, CA  90071-2899
   Telephone:  (213) 430-6000
5  Facsimile:  (213) 430-6407
   Email:     jjenal@omm.com
6
7  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK, JACOBS,
8  WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
9  Los Angeles, CA  90067
   Telephone:  (310) 553-3000
10 Facsimile:  (310) 557-9815

11 Attorneys for MGA Entertainment, Inc.

12              UNITED STATES DISTRICT COURT
13              CENTRAL DISTRICT OF CALIFORNIA
14                   EASTERN DIVISION
15

16 | CARTER BRYANT, an individual, | Case No.  CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727) |
17 | Plaintiff, | |
   | v. | **MGA ENTERTAINMENT INC.'S** |
18 | MATTEL, INC., a Delaware | **NOTICE OF MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S MAY 15, 2007 ORDER** |
19 | Corporation, | **GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF** |
20 | Defendant. | **DOCUMENTS AND** |
21 | | **INTERROGATORY RESPONSES BY MGA** |
22 | | **[Federal Rule of Civil Procedure 72(a); Local Rule 72-2.1]** |
23 | | |
24 | CONSOLIDATED WITH | Hearing Date:   TBA |
   | MATTEL, INC. v. BRYANT and | Time:           TBA |
25 | MGA ENTERTAINMENT, INC. v. | Location:       Courtroom 1 |
   | MATTEL, INC. | |
26
27
28

EXHIBIT 32 PAGE 476

1  TO THE CLERK OF COURT AND ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that MGA Entertainment, Inc. ("MGA") by and

3  through its undersigned counsel of record, will and hereby does move for an Order

4  from this Court vacating portions of the Discovery Master's May 15, 2007 Order

5  Granting Mattel's Motion to Compel Production of Documents and Interrogatory

6  Responses by MGA.

7

8      This Motion is based upon this Notice, the accompanying Memorandum of

9  Points and Authorities, and the Declaration of Kendall J. Burr, filed and served

10  concurrently, the pleadings and record herein, and such other argument or evidence

11  as may properly come to the attention of the Court.

12      Dated: May 30, 2007                O'MELVENY & MYERS LLP

13

14                                         Michael Keats

15                                         By:  Michael Keats
                                           Attorneys for MGA Entertainment, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 33

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**