1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  |   John B. Quinn (Bar No. 090378)
2 |   (johnquinn@quinnemanuel.com)
  |   Michael T. Zeller (Bar No. 196417)
3 |   (michaelzeller@quinnemanuel.com)
  |   Jon D. Corey (Bar No. 185066)
4 |   (joncorey@quinnemanuel.com)
  | 865 South Figueroa Street, 10th Floor
5 | Los Angeles, California  90017-2543
  | Telephone:  (213) 443-3000
6 | Facsimile:   (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 |

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]**<br><br>[PUBLIC REDACTED] MATTEL, INC.'S SEPARATE STATEMENT IN SUPPORT OF ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS<br><br>**SEPARATE STATEMENT NO. 1**<br><br>Hearing Date:    January 4, 2008<br>Time:             9:00 a.m.<br>Place:            TBD<br><br>Discovery Cut-off:      January 28, 2008<br>Pre-trial Conference:   May 5, 2008<br>Trial Date:             May 27, 2008 |

07209/2315848.1

SEPARATE STATEMENT NO. 1

1    For the convenience of the Discovery Master, Mattel, Inc. provides this
2    Separate Statement setting forth the deficiencies in the testimony of MGA
3    Entertainment, Inc.'s witnesses designated to testify regarding Topic Nos. 11, 13, 14,
4    19, 21, 22, 23, 24, 25, 27, 28, 31, 34, 39, 40 and 41, which the Discovery Master
5    ordered MGA to provide on May 16, 2007, and then on August 14, 2007 ordered
6    MGA to provide witnesses on Topic Nos. 21, 25, 26, 34, 40 and 41 no later than
7    September 30, 2007.

8    **Deficient Testimony of Lisa Tonnu and Kenneth Lockhart**

9    **I.    MGA FAILED TO COMPLY WITH THE COURT'S ORDERS TO**
10   **PRODUCE A KNOWLEDGEABLE WITNESS IN RESPONSE TO**
11   **TOPIC NO. 21**

12   **A.    MGA Was Ordered to Produce Its Designee For Topic No. 21**

13   MGA was twice ordered to produce a witness in response to Topic No. 21.[1]
14   Topic No. 21 seeks the following information:

15   > YOUR knowledge of, and access to, non-public MATTEL
16   > DIVA STARZ project information and DESIGNS prior to
     > June 30, 2001.[2]

17   **B.    MGA Failed to Comply With the May 16 and August Order With**
18   **Respect to Topic No. 21**

19   Although MGA designated Ms. Tonnu as its <u>Rule</u> 30(b)(6) witness for Topic
20   No. 21, Ms. Tonnu lacked knowledge.  The following exchange is illustrative:

21   > Q.   Let's talk about Topic No. 21, Which is the Diva Starz
     > topic.  Do you know what Diva Starz is?
22
     > A.   No
23
     > Q.   Have you ever seen a Diva Starz product?
24
     > A.   No.[3]
25

---

26   [1]   May 16 Order, ¶¶ 3, 5; and August Order, 9:25 - 10:2, attached to the Corey
27   Dec. as Exhs. 11 and 12, respectively.
     [2]   Second Notice, attached to the Corey Dec., Exh. 8.
28

1    Ms. Tonnu testified that in preparing for her deposition, she spoke with five
2  MGA employees, including Paula Garcia, concerning their access to and knowledge
3  of non-public DIVA STARZ information prior to September 30, 2001.[4]  According
4  to Ms. Tonnu, these MGA employees professed to have no knowledge of non-public
5  DIVA STARZ information.[5]  Subsequently, ███████████████████████████
6  ████████████████████████████████████████████████████████████
7  ████████████  See 10/10/2007 Deposition of Paula Garcia ("Garcia Tr."), at
8  1100:13-19 (████████████████████████████████████████████████
9  ███; Garcia Tr. 1113:11-16 (█████████████████████████████████
10  ████████████████); Garcia Tr. 1139:23 to 1140:24 (██████████████
11  █████████████████████████████████████████████████
12  ████████████████████████████████████████████████████
13  █); 1147:6 to 1149:23 (██████████████████████████████████
14  █████████████████████████████████████████
15  ████████████████████████████████████████████
16  ███); Garcia Tr. 1150:9 to 1151:15 (█████████████████████████
17  ██████████████████████████████████████), attached to the Corey
18  Dec., Exh. 20.

19
20
21
22

23  ─────────────────
    [3]  9/24/2007 Tonnu Tr., 528:10-15, attached the Corey Dec., Exh. 2.
24  [4]  9/24/2007 Tonnu Tr., 276:4-18 (Ms. Garcia); 284:25 - 285:10 (Dennis Soai);
25  285:21 - 286:6 (Ms. Komatsu); 286:8-13 (Mr. Domingo); 286:14-19 (Mr. Martin)
    attached to the Corey Dec., Exh. 2.
26  [5]  She did say that MGA employee Dennis Soai "may have" worked on the
    brainstorming sessions regarding Mattel DIVA STARZ accessories.  9/24/2007
27  Tonnu Tr. at 284:25 - 285:19, attached to the Corey Dec., Exh. 2.
28

SEPARATE STATEMENT NO. 1

**II.   MGA FAILED TO COMPLY WITH THE COURT'S ORDER TO PRODUCE A KNOWLEDGEABLE WITNESS IN RESPONSE TO TOPIC NO. 24**

    **A.   MGA Was Ordered to Produce a Witness to Testify On Topic No. 24**

In the May 16 Order, MGA was ordered to produce its witness to testify concerning Topic No. 24.  Topic No. 24 seeks the following information:

> Any indemnification and fee arrangement that YOU and/or BRYANT has sought, proposed, requested or obtained in connection with this ACTION.[6]

    **B.   MGA failed to comply with the May 16 Order with respect to Topic No. 24**

During Ms. Tonnu's deposition on July 19, 2007, she admitted that she had no personal knowledge of Topic No. 24:

> Q      And 24 is the indemnification and fee arrangement that you and/or Bryant has sought, proposed, requested or obtained in connection with the action.  Have you been involved in the negotiations of any indemnification or fee agreement to which MGA or Bryant is a party?
>
> A      No.[7]

Ms. Tonnu also had no other information on key aspects of Topic No. 24.  For example, Ms. Tonnu did not know why MGA agreed to pay his attorneys' fees or who made that decision.[8]  MGA apparently conditioned its payment of Bryant's fees on its belief in his "truthfulness," but the agreement does not say what that refers to, nor did Ms. Tonnu know:

> Q      Is it MGA Entertainment's practice to pay legal fees incurred by either its employees or its contractors that

---

[6]  See Second Notice, attached to the Corey Dec., Exh. 8.

[7]  Tonnu Tr., 43:10-17.  Ms. Tonnu further stated that everything she knew about Topics 24, 31, 39, 40 and 41, she learned from other people.  Tonnu Tr., 41:20 - 43:21, attached to the Corey Dec., Exh. 1.

[8]  Tonnu Tr., 130:3-25, 133:9-25, attached to the Corey Dec., Exh. 1.

SEPARATE STATEMENT NO. 1

1  relate to services that they provided to MGA Entertainment?

2
3  Mr. Jenal: Objection. Lacks foundation. calls for speculation. Outside the scope.

4  The Witness: I do not know.

5  By Mr. Corey:

6  Q      The next phrase is: "while at this time MGA is aware of no facts that would call your truthfulness into
7  question." What does that refer to?

8  Mr. Jenal: Objection. Lacks foundation. Calls for speculation. Calls for a legal conclusion.
9
   The Witness: I do not know.
10
   By Mr. Corey:
11
   Q      Who negotiated this document?
12
   A      I do not know
13
   Q      Do you know who at MGA provided input into this
14  document or made the decisions that are reflected in this paragraph, this last paragraph on page 2?
15
   A      No, I do not know.
16
   Q      And you don't know what the reference is here with
17  respect to Mr. Bryant's truthfulness or "lack of truthfulness" refers to?
18
   Mr. Jenal: Lacks foundation. Calls for speculation.
19
   The Witness: No, I do not know.
20
   By Mr. Corey:
21
   Q      If you wanted to find out the answer to that
22  question, who would you ask?

23  A      I don't even know.[9]

24        The only thing that Ms. Tonnu knew about an agreement between MGA and

25  Janine Brisbois, a former Mattel employee who stole Mattel trade secrets at issue in

26

27  _____
   [9]   Tonnu Tr., 131:18 - 133:1, attached to the Corey Dec., Exh. 1.
28

SEPARATE STATEMENT NO. 1

1  this case and who went to MGA, was that MGA agreed to pay her fees.  She did not

2  know any other terms or whether the agreement was verbal or written.

3       Q      And why did you speak to Ms. Brisbois?

4       A      On this topic?

5       Q      On this topic.

6       A      She advised me that she remembered that MGA
               agreed to pay her attorney fees.

7       Q      What else did she say about this?

8       A      That was about it.

9       Q      Is there a written document agreement between Ms.
10             Brisbois and MGA or Ms. Brisbois and her attorney or
               Ms. Brisbois's attorney and MGA?

11      A      No.  She was not able to provide me any support.

12      Q      Do you know if there is -- if such an agreement
13             exists?

14      A      No, I do not know there's an agreement that exists.
               She actually was not -- she's on maternity leave, so she did
15             not have access to her computer.[10]

16      Nor did Ms. Tonnu know what the terms of any such agreement were or

17  whether any fees had been sought or paid under that agreement or whether any fees

18  had been incurred, even though she identified who in MGA would know the answer

19  to that question.[11]  Nor did she make any effort to speak with anyone at MGA,

20  including Isaac Larian, who negotiated the agreement or to determine whether MGA

21  had a copy of any such agreement.[12]  Tonnu did not know whether Bryant, Brisbois

22  and Gustavo Machado (another former Mattel employee who stole Mattel trade

23  secrets at issue for MGA) were the only witnesses or parties for whom MGA was

24  paying fees and had made no effort to find out, because those three were the only

25  _____

26  [10]  Tonnu Tr., 114:18 - 115:9, 117:22 - 119:7, attached to the Corey Dec., Exh.
     1.

27  [11]  Id. at 115:21 - 116:7, attached to the Corey Dec., Exh. 1.

28

1  ones identified for her by counsel.[13]  Tonnu did not know how much had been paid
2  to Bryant, Brisbois or Machado, but said that such information was readily available
3  from MGA's accounting department, specifically Ms. Brooks.[14]  And, the only
4  indemnification agreement that she was aware of was between Bryant and MGA,
5  and she knew nothing about that.[15]  She had made no effort to identify other
6  potential sources of indemnification, including insurance policies.[16]  MGA's failure
7  to produce a knowledgeable witness violated the May 16 Order.

8      **C.**    **Even After MGA Had Agreed to Bring Itself into Compliance With**
9             **the May 16 Order, It Failed to Do So**

10      After Ms. Tonnu's first deposition, the parties met and conferred at Mattel's
11  request.[17]  MGA eventually agreed to provide Ms. Tonnu to complete her testimony
12  with respect to Topic No. 24, among others.  Despite MGA's agreement to bring
13  itself into compliance with the Court's Order, Ms. Tonnu still lacked the requisite
14  knowledge at her resumed deposition on September 24 and 25, 2007 and remained
15  unprepared in response to Topic No. 24:

16        Q.  Do you know why -- given Mr. Bryant's agreement to
17        indemnify MGA in paragraph 5(e) of Exhibit 520, Why MGA agreed in Exhibit --

18        Ms. Morgenthaler Lever:  519.

19        By Mr. Corey:

20        Q.  -- In exhibit 519 to pay Mr. Bryant's attorneys' fees?

21        A.  No.

22        Ms. Morgenthaler Lever:  Objection.  Outside the scope.

23      [12]  Id. at 116:8 - 117:22, attached to the Corey Dec., Exh. 1.
24      [13]  Id. at 120:18 - 121:21, attached to the Corey Dec., Exh. 1.
25      [14]  Id. at 117:22 - 119:11, 124:23 - 125:17, attached to the Corey Dec., Exh. 1.
    [15]  Id. at 122:5-22, attached to the Corey Dec., Exh. 1.
26      [16]  Id. at 122:23 - 124:5, 143:2-11, attached to the Corey Dec., Exh. 1.
27      [17]  See Motion to Enforce Court's Discovery Orders and to Compel, filed concurrently herewith, Section II.B.
28

07209/2315848.1

SEPARATE STATEMENT NO. 1

1    By Mr. Corey:

2    Q.  Do you know how much MGA Entertainment has paid Mr. Bryant pursuant to the agreement in Exhibit 519?

3
4    Ms. Morgenthaler Lever:  Objection.  Outside the scope and asked and answered.

5    The Deponent:  No.

6    By Mr. Corey:

7    Q.  Did you ever make any effort to find out?

8    Ms. Morgenthaler Lever:  Asked and answered --

9    The Deponent:  No.

10   Ms. Morgenthaler Lever:  -- Outside the scope.

11   By Mr. Corey:

12   Q.  Do you know -- Do you know whether MGA has paid Littler Mendelson's fees in full pursuant to Exhibit 519?

13
14   Ms. Morgenthaler Lever:  Objection.  Outside the scope. Asked and answered.

15   The Deponent:  No.

16   By Mr. Corey:

17   Q.  Did you make any effort to find out?

18   Ms. Morgenthaler Lever:  Same objections.

19   The Deponent:  No.[18]

20       Ms. Tonnu was again unable to respond to relevant questions concerning

21   MGA's indemnification agreements, now including the fee agreement with Keker

22   and Van Nest, Bryant's new counsel.[19]  As a result, MGA failed to comply with the

23   May 16 Order with respect to Topic No. 24.

24

25   [18]  9/24/07 Tonnu Tr., 480:5 - 481:14, attached to the Corey Dec., Exh. 2; see

26   also id. at 481:25 - 499:8, attached to the Corey Dec., Exh. 2.

27   [19]  9/24/2007 Tonnu Tr., 488:14 - 493:6, attached to the Corey Dec., Exh. 2; See id. at 493:8 - 499:8, attached to the Corey Dec., Exh. 2 (testifying that she did not

28   (footnote continued)

**III.** **MGA FAILED TO COMPLY WITH THE COURT'S ORDER TO PRODUCE A KNOWLEDGEABLE WITNESS IN RESPONSE TO TOPIC NO. 25**

    **A.** **MGA was Ordered to Produce Its Designee for Topic No. 25**

MGA was ordered to designate and produce a witness to testify in response to Topic No. 25.[20] Topic No. 25 seeks the following information:

> YOUR revenues and profits from BRATZ, including without limitation, YOUR gross and net profits, and YOUR costs associates therewith.[21]

The Discovery Master overruled MGA's objections and/or limitations to Topic No. 25 in the May 16 Order.[22]

    **B.** **MGA Failed to Comply With the August Order For Topic No. 25**

MGA failed to produce a witness with knowledge of Topic No. 25.  It instead produced Ms. Tonnu, who lacked the most basic information called for by the Topic:



know how much Machado or Brisbois had been paid or whether MGA sought insurance coverage).

[20] August Order, 9:25 - 10:1, attached to the Corey Dec., Exh. 12.
[21] See Second Notice, attached to the Corey Dec., Exh. 8.
[22] May 16 Order, ¶ 5, attached to the Corey Dec., Exh. 11.



23   9/24/2007 Tonnu Tr., 403:17 - 404:22, attached to the Corey Dec., Exh. 2.
24   9/24/2007 Tonnu Tr., 406:5-13, attached to the Corey Dec., Exh. 2.



Ms Tonnu, again, lacked knowledge of relevant information

Further, in preparation for Topic No. 25, Ms. Tonnu relied upon a single document that had been prepared for separate litigation that she was instructed not to identify on privilege grounds.[28] That document, Exhibit 660, did not reflect Bratz revenue, costs or profits from Bratz licensing or distribution activities, nor was Ms. Tonnu able to provide any information regarding those separate revenue sources

[25]  9/24/2007 Tonnu Tr., 407:20 - 408:3, attached to the Corey Dec., Exh. 2.
[26]  9/24/2007 Tonnu Tr., 457:9-11, attached to the Corey Dec., Exh. 2.
[27]  9/24/2007 Tonnu Tr., 457:25 - 458:2, attached to the Corey Dec., Exh. 2; see also 417:13 - 419:23, attached to the Corey Dec., Exh. 2.
[28]  9/25/07 Tonnu Tr., 624:15 - 632:3, attached to the Corey Dec., Exh. 2. Pursuant to the Tonnu Revisions, to the extent that the word "target" is used, MGA revised that to be "Targit."  See Revision Letter, attached to the Corey Dec., Exh. 44.

1 | other than that they exist.[29]  Even the information on Exhibit 660 does not reflect

2 | MGA's actual revenues or costs and contains no information from which net

3 | profit—one of the subjects of the topic—could be calculated.  In short, Exhibit 660

4 | provides no actual information from which one could calculate actual Bratz

5 | revenues, costs or profits.  Nor was Ms. Tonnu able to testify about any such

6 | amounts.[30]

## IV.  MGA FAILED TO COMPLY WITH THE COURT'S ORDER AND PRODUCE A WITNESS IN RESPONSE TO TOPIC NO. 31

### A.  MGA Was Ordered to Produce a Witness to Testify in Response to Topic No. 31

MGA was ordered to produce a witness in response to Topic No. 31.[31]  Topic No. 31 seeks the following information:

> The IDENTITY of each PERSON who, at any time since January 1, 1998, has performed any work or services for, by or on behalf of YOU while such PERSON was employed by MATTEL, the nature and timing of each such PERSON's work or services and the amount(s) paid by YOU to each such PERSON.[32]

### B.  MGA Failed to Comply With the May 16 Order For Topic No. 31

Ms. Tonnu lacked personal knowledge of Topic No. 31.  As Ms. Tonnu testified:

> Q    Thirty-one is the identity of people who provided services to MGA while a Mattel employee and the amounts paid.  Do you have personal knowledge of that?

---

[29]  See Exhibit 660, attached to the Sept. 24 Transcript, attached to the Corey Dec., Exh. 5

[30]  9/24/07 Tonnu Tr., 457:9 - 460:12, attached to the Corey Dec., Exh. 2.  Further, MGA's counsel instructed Ms. Tonnu not to identify any parties to the pending litigation for which Exhibit 660 was prepared.  9/25/07 Tonnu Tr., 624:15 - 632:3, attached to the Corey Dec., Exh. 2.  MGA's counsel identified no basis for that instruction, despite Mattel's repeated requests for the same.

[31]  May 16 Order, ¶ 3, attached to the Corey Dec., Exh. 11.

[32]  See Second Notice, attached to the Corey Dec., Exh. 8.

-11-

1      A   No.[33]

2   MGA also failed to properly educate Ms. Tonnu on Topic No. 31. The information

3   provided to Ms. Tonnu was incomplete and, consequently, so was her knowledge:

4         Q   Let's move on to Topic No. 31, which is: "The

5   identity of each person who at any time since January 1st, 1998, has performed any work or services for, by or on

6   behalf of you while such person was employed with by Mattel, the nature and timing of each such person's work

7   or services and the amount paid by you to each such person." And other than speaking with Ms. Brooks, what

8   did you do to prepare to be -- to prepare to testify on this topic?

9         A   Nothing else.

10        Q   It's just your conversation with Ms. Brooks?

11        A   Yes.

12        Q   And she had run some kind of report, but you don't know what the criteria were; correct?

13

14   Mr. Jenal: Objection. Misstates prior testimony. Asked and answered.

15   The Witness: What I stated before was that she had a list of vendors and the dates in which they were either

16   employed or freelancing with Mattel, and she cross-referenced that in her research.

17

18   By Mr. Corey:

19        Q   Then I need to ask my question a little bit more precisely. You didn't prepare that list of criteria, did you?

20        A   No.

21   Mr. Jenal: Objection. Vague.

22   By Mr. Corey:

23        Q   Do you -- do you know who prepared it?

24        A   No.

25        Q   Did you see the criteria?

26        A   No.

27

28

---

[33] Tonnu Tr., 43:5-9, attached to the Corey Dec., Exh. 1.

SEPARATE STATEMENT NO. 1

1      Q    Can you tell me who the vendors or freelance people on the list were?

2

3      A    No.

4      Q    Do you know whether the list included all former Mattel employees who were working at MGA?

5      A    I do not know.[34]

6  MGA failed to comply with the May 16 Order with respect to Topic No. 31.

7  ### C.   As a Result of Mattel's Meet and Confer Efforts, MGA Re-

8  ### produced Ms. Tonnu to Complete Her Testimony on Topic No. 31

9  ### But She Again Lacked Sufficient Knowledge

10  Mattel met and conferred with MGA concerning Ms. Tonnu's deficient

11  responses and lack of knowledge. Mattel stated that Topic No. 31 seeks information

12  concerning former Mattel employees who have provided services to MGA. Mattel

13  stated that Ms. Tonnu did nothing to be prepared to testify on this topic, but speak

14  with Ms. Brooks, an accounts payable clerk, who apparently ran a report that

15  identified Mr. Bryant as the only person that MGA paid while he was a Mattel

16  employee.[35] Ms. Tonnu's testimony was deficient in that she was unable to identify

17  any criteria for the report, including names of individuals or the applicable date

18  ranges used to determine whether they were accurate or what they reflected.

19  Further, the scope of the Topic is not limited to payment for services provided by

20  Mattel employees, but includes work performed for MGA while employed by

21  Mattel and the nature of such work or services. Ms. Tonnu made no effort to

22  ascertain that information. Mattel again reminded MGA that MGA failed to comply

23  with the May 16 Order.[36]

24

25  [34]  Tonnu Tr., 147:5 - 148:20; see also 154:22 - 160:12, attached to the Corey Dec., Exh. 1.

26  [35]  Tonnu Tr., 147:5 - 148:8, attached to the Corey Dec., Exh. 1.

27  [36]  Letter from Jon Corey to Jim Jenal, dated July 23, 2007, attached to the Corey Dec., Exh. 38.

28

1   MGA's counsel professed a belief that MGA tracks all the vendors it uses

2   through its computer system.  Mattel explained that, assuming MGA's assertion is

3   true, Ms. Tonnu needed to testify to the same.  MGA also stated that MGA had no

4   obligation to speak with former Mattel employees who are, or were, MGA

5   employees, to ask whether they provided any services to MGA.  Mattel reiterated

6   that running a report from the accounting department does not fulfill MGA's

7   obligation to determine the identity of each former Mattel employee who provided

8   any type of services to MGA.  Mattel also stated that MGA needs to ask all former

9   Mattel employees who were, or are, MGA employees whether they provided work

10  or services, in any manner, or whether they knew if any other Mattel employees

11  provided work or services, to MGA.  MGA refused to do so.[37]  MGA later agreed to

12  re-produce Ms. Tonnu as its witness for Topic No. 31.

13      Despite MGA's agreement to re-produce Ms. Tonnu to complete her

14  testimony for Topic No. 31, MGA and Ms. Tonnu did little investigation or

15  preparation for this topic.  For example, Ms. Tonnu testified as follows:

16      Q.  Let's talk about -- we'll get there in a minute.  Let's
        talk about Topic 31 for a minute, if you want to look at
17      that . . . In addition to talking to Char Brooks and looking
        at the list, did you do anything -- anything else to prepare
18      to address Topic Number 31 today?

19      A.  No.[38]

20      * * *

21      Q.  Okay.  Now, I want to set aside the payment for a
        minute.  Okay?  As MGA's designee, as you sit here today,
22      do you know whether any person has at any time since
        1998 performed work or services for MGA while that
23      person was a Mattel employee?

24      A.  No.

25

26

27  [37]  Corey Dec., ¶ 41.
28  [38]  9/24/2007 Tonnu Tr., 297:15 - 298:5, attached to the Corey Dec., Exh. 2.

-14-

1  Q.  Okay.  And you don't know whether Mr. Bryant
2  provided work or services to MGA while he was a Mattel employee?

3  A.  No.

4  Q.  Okay.  Did you speak with any of the former Mattel
5  employees who were working at MGA and ask them whether they had provided work or services for MGA
6  while they were Mattel employees?

   A.  No.
7
   Q.  Do you know if counsel has done that?
8
   A.  No.
9
   * * *
10
   By Mr. Corey:
11
12  Q.  As you sit here today, you don't know one way or the other whether a Mattel employee has provided services to
13  MGA while they were a Mattel employee for which they were paid after they left Mattel's employ, do you?

14  Ms. Morgenthaler Lever:  Objection.  Vague and
15  ambiguous.  Mischaracterizes the witness's testimony.
   And also argumentative.

16  The Deponent:  Can you repeat the question?

17  By Mr. Corey:

18  Q.  Sure.  You don't know whether MGA paid a Mattel
19  employee for services the Mattel employee rendered after payment was -- after they left Mattel's employ, do you?

20  Ms. Morgenthaler Lever:  Vague and ambiguous.  The
21  question doesn't make sense.  Calls for speculation.  And objection as to form.

22  The Deponent:  No.

23  By Mr. Corey:

24  Q.  The only thing you know is whether Mattel -- excuse
25  me -- whether MGA paid -- made a payment to a Mattel employee before that person joined MGA correct?

26  Ms. Morgenthaler Lever:  Objection. Mischaracterizes the
27  witness's testimony.  Vague and ambiguous.  And asked and answered.  And her testimony speaks for itself.

28

07209/2315848.1

-15-

SEPARATE STATEMENT NO. 1

1   The Deponent:  No.  What I stated was that I'm aware whether or not payments were made to these employees,
2   ex-Mattel employees, while they were employees of Mattel.

3   By Mr. Corey:

4   Q.  Right.  And so if they were paid for services given to
5   MGA after they left Mattel, you don't know that?

6   Ms. Morgenthaler Lever:  Objection.  Vague and ambiguous.  Calls for speculation.

7   The Deponent:  No.[39]

8   * * *

9   Q.  As you sit here today, are you aware of any efforts
10  that MGA has made to determine whether any former MGA independent contractors, freelancers, or temps were
11  paid by MGA while they were Mattel employees?

12  Ms. Morgenthaler Lever:  Objection.  Calls for
     speculation.  Lack of foundation.  Vague and ambiguous
13  as to time.  Also vague and ambiguous as to the term --
     what is an independent contractor, freelancer, and temp.
14  Objection as to form.  And assumes facts not in evidence.
     And may call for attorney-client communications.  You
15  can answer.  You can try to answer something.

16  Mr. Corey:  Enough, counsel.  You've made every single
     objection that you're capable of.  If you're going to make
17  speaking objections or going to advise the witness as to
     how to answer the questions, we'll just call Judge Infante.
18  That's fine.

19  Ms. Morgenthaler Lever:  Well, maybe we won't have the
     witness answer this very improper question.
20
    By Mr. Corey:
21
    Q.  You can go ahead and answer the question.
22
    Ms. Morgenthaler Lever:  You can -- whatever you want
23  to do.

24  The Deponent:  I'm not sure.

25  By Mr. Corey:

26  Q.  You don't know one way or the other?

27  _____
    [39]  9/24/2007 Tonnu Tr., 300:25 - 303:21, attached to the Corey Dec., Exh. 2.
28

SEPARATE STATEMENT NO. 1

1    A.   No.

2    Q.   Are you -- so you're not aware of any such efforts?

3    Ms. Morgenthaler Lever:  Objection.  Misstates the witness's testimony.

4    The Deponent:  I'm not sure.

5    By Mr. Corey:

6    Q.   You're not sure or you're not aware?

7    A.   I'm not aware.[40]

8    Moreover, even the information concerning Mattel employees that MGA

9    provided Ms. Tonnu, and upon which she relied, was incomplete.[41]  Ms. Tonnu

10   relied on Exhibit 664, a document purporting to show former Mattel employees who

11   worked, or work, in some capacity for MGA,[42] as the main source of her knowledge.

12   The list is incomplete.  For example, the following current or former MGA

13   employees or contractors were formerly Mattel employees:

14

15       Eve Karen Laskaris Bennett
         Sarah Halpern

16       Janet Han
         Ron Longsdorf

17       Maria Veronica de Souza Brandao Marlow
         Tina Patel

18       Wendy Jane Wilson Ragsdale

19       Jesse Ramirez

20       Jimmy Cheng
         Alex Fan

21       Judy Rich

22       Mike Yung

23   These employees were not on MGA's list.[43]

24   _____

25   [40]  9/25/07 Tonnu Tr., 523:9 - 524:22, attached to the Corey Dec., Exh. 2.
     [41]  9/24/07 Tonnu Tr., 297:15 - 298:5, attached to the Corey Dec., Exh. 2.
26   [42]  See Deposition Exhibit 664, MGA 0868630-31 ("Exhibit 664"), attached to
27   the Corey Dec., Exh. 4.
     [43]  See Exhibit 664, attached to the Corey Dec., Exh. 4.
28

07209/2315848.1

-17-

**V.    MGA FAILED TO COMPLY WITH THE COURT'S ORDER TO PRODUCE A KNOWLEDGEABLE WITNESS IN RESPONSE TO TOPIC NO. 39**

**A.     MGA was Ordered to Produce Its Designee For Topic No. 39**

MGA was ordered to produce a witness in response to Topic No. 39.[44] No. Topic No. 39 seeks the following information:

> **Topic No. 39:** The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

MGA designated Mr. Lockhart to testify on electronic evidence, and designated Ms. Tonnu to testify on documentary evidence. In either case, MGA failed to produce a competent witness to testify on this Topic.

**B.     MGA Failed to Comply with the May 16 Order with Respect to Topic No. 39**

**1.     Mr. Lockhart was unable to provide substantive testimony concerning Topic No. 39**

Mr. Lockhart was unable to provide testimony about the subject matter encompassed by Topic No. 39, including with respect to the preservation, collection, destruction, removal, transfer, loss or impairment of documents that Mattel requested:

---

[44] May 16 Order, ¶ 3, attached to the Corey Dec., Exh. 11.
[45] Lockhart Tr., 108:12-17, attached to the Corey Dec., Exh. 6.

07209/2315848.1

SEPARATE STATEMENT NO. 1



[46] Lockhart Tr., 109:13-16, attached to the Corey Dec., Exh. 6.
[47] Lockhart Tr., 125:3-8, attached to the Corey Dec., Exh. 6.
[48] Lockhart Tr., 150:21 - 151:2, attached to the Corey Dec., Exh. 6.  Mr. Lockhart testified that he was aware of only one instance where MGA conducted a search of electronic information—a 2005 search of Isaac Larian's computer.  See Lockhart Tr., 233:5 - 234:6; 250:2-6; 251:4-7; 288:16-24, attached to the Corey Dec., Exh. 6.
[49] Lockhart Tr., 233:12-14, attached to the Corey Dec., Exh. 6.

SEPARATE STATEMENT NO. 1



Lockhart had no idea about the existence of Mattel-authored documents, which Mattel has requested, on MGA's computer systems, or whether they had been there once, but deleted, removed or otherwise rendered inaccessible.

50 Lockhart Tr., 249:8-11, attached to the Corey Dec., Exh. 6.
51 Lockhart Tr., 250:2-6, attached to the Corey Dec., Exh. 6.
52 Lockhart Tr., 258:17-20, attached to the Corey Dec., Exh. 6.
53 Lockhart Tr., 270:5-8, attached to the Corey Dec., Exh. 6.
54 Lockhart Tr., 271:2-7, attached to the Corey Dec., Exh. 6.

1

2

3

4

5

6

7

8
### 2.   Ms. Tonnu was unable to provide substantive testimony concerning Topic No. 39 as well

9

10
Ms. Tonnu lacked personal knowledge concerning Topic No. 39:

Q    And then [Topic] 39 is the preservation, collection, destruction, removal, transfer, loss or impairment of documents or digital information requested by Mattel. Have you been involved -- you personally been involved in preserving or collecting documents from Mattel?

11

12

13

14
A    No.

15
Q    Excuse me.  Documents that Mattel requested?

16
A    No.[56]

17
MGA made no discernible effort to educate Ms. Tonnu concerning Topic No. 39:

18
Q    Does MGA have a document retention policy?

19
A    I -- I do not know.

20
Q    Is there someone -- is there a single person who's responsible for storing and archiving MGA's files?

21
A    I do not know.[57]

22
Further, when Mattel inquired about MGA's preservation and collection of

23
documents, MGA instructed Ms. Tonnu not to answer any questions, even though

24
the Topic had been compelled.[58]  MGA's instructions violated the May 16 Order.

25
[55]   Lockhart Tr., 288:9-24, attached to the Corey Dec., Exh. 6; see Lockhart Tr.,

26
286:20-288:24, 292:25-293:8, Corey Dec., Exh. 6.

27
[56]   Tonnu Tr., 42:15-23, attached to the Corey Dec., Exh. 1.

28

1

2

**C. Despite Mattel's Meet and Confer Efforts, MGA Failed to Bring Itself Into Compliance with the May 16 Order**

3     On September 18, 2007 Mattel wrote to MGA requesting a meet and confer to
4 discuss MGA's failure to comply with the Discovery Master's May 16, 2007 Order
5 and produce a Rule 30(b)(6) witness on Topic No. 39, among others, regarding
6 electronic evidence.[59] MGA did not meet and confer within the 5 days required by
7 the Stipulation Appointing the Discovery Master.[60]

8     Further, with respect to Tonnu's testimony on physical documents, as a result
9 of Mattel's meet and confer efforts, MGA agreed to re-produce Tonnu to complete
10 her testimony with respect to non-electronic documents. Tonnu's subsequent
11 testimony was equally as deficient as her prior testimony.

12     For example, in preparation for Topic No. 40, Ms. Tonnu testified that she
13 relied on a declaration prepared by Daphne Gronich (Exhibit 669),[61] as well as Ms.
14 Tonnu's conversation with Rich Daniels, MGA's counsel.[62] Ms. Tonnu, however,
15 never spoke with Ms. Gronich, at any time, about her declaration, let alone Ms.
16 Gronich's basis of knowledge.[63] As a result, Ms. Tonnu was unable to provide any
17 information beyond the literal words of Ms. Gronich's declaration or elaborate on
18 the same. For example:

19

20

> Q. Because apparently Ms. Gronich says that an effort
> was undertaken to collect documents from Group B, and
> I'm trying to find out what you know about that effort.

21     [57] Tonnu Tr., 221:11-16, attached to the Corey Dec., Exh. 1.
22     [58] Tonnu Tr., 37:7-38:16, 210:21-214:6, 215:15-216:10, 217:16 - 221:9,
23 attached to the Corey Dec., Exh. 1.
    [59] See Letter from Jon Corey to James Jenal dated September 18, 2007, attached
24 to the Corey Dec., Exh. 46.
    [60] See Corey Dec., ¶ 53; see also Stipulation for Appointment of a Discovery
25 Master and Order, dated December 6, 2006, attached to the Corey Dec., Exh. 22.
26     [61] See Exhibit 669, attached to the Corey Dec., Exh. 3.
    [62] 9/25/07 Tonnu Tr., 598:2-14, attached to the Corey Dec., Exh. 2.
27     [63] 9/25/07 Tonnu Tr., 693:22 - 694:10, attached to the Corey Dec., Exh. 2.
28

1    A.  My knowledge is based upon this declaration.

2    Q.  So you can't identify how far that effort went on, who
     the employees -- or who those individuals were, or
3    whether any documents were collected from them?

4    Ms. Morgenthaler Lever:  Objection.  Vague and
     ambiguous.  Calls for speculation.  Lack of foundation.
5
     The Deponent:  My information is based on this
6    declaration.

7    By Mr. Corey:

8    Q.  And then there's a discussion below about -- in
     paragraph 10 about "expressly retained paper files in the
9    creative departments, character art files, vendor files,
     executive files and others."  Do you know whether any of
10   those documents have been searched for documents
     responsive to Mattel's requests?
11
     Ms. Morgenthaler Lever:  Objection.  Calls for work
12   product information.  Lack of foundation. Calls for
     speculation.
13
     The Deponent:  No.
14
     By Mr. Corey:
15
     Q.  And do you know what she's referring to by "others"?
16
     A.  No.[64]
17

18   . . .

19   Q.  Do you know if someone is looking through the
     documents at the Filenet facility to determine whether they
20   contain documents responsive to Mattel's Requests?

21   Ms. Morgenthaler Lever:  Someone either at Filenet or
     anyone -- MGA or Filenet or...

22   Mr. Corey:  The question's not person-specific.  The
     question is document-specific, whether they're being
23   reviewed or not.

24   The Deponent:  No.

25   By Mr. Corey:

26

27   ─────────────
     [64]  9/25/07 Tonnu Tr., 708:15 - 710:2, attached to the Corey Dec., Exh. 2.
28

1   Q.  You don't know one way or the other whether those
    are being reviewed to see if they contain documents
2   responsive to Mattel's Requests?

3   A.  I don't believe they are being reviewed. (sotto voce
    discussion between Ms. Morgenthaler Lever and the
4   deponent.)[65]

5   . . .

6   Q.  Do you know whether all of the Bratz design
    documents from 2000 and 2001 have been preserved?
7
    Ms. Morgenthaler Lever:  Same objections.
8
    The Deponent:  Once again, the declaration states that we
9   are -- MGA doesn't -- is not in the practice or have a
    policy about destroying documentation, and the employees
10  have been informed that all documentation related to the
    matter has to be preserved.
11
    By Mr. Corey:
12
    Q.  So as far as you're aware, they've all been preserved?
13
    A.  Yes.
14
    Q.  And do you know whether all those documents have
15  been produced to Mattel?

16  Ms. Morgenthaler Lever:  Objection. Outside the scope.
    Calls for speculation. Lack of foundation.  Calls for
17  attorney work product and attorney-client
    communications.
18
    The Deponent:  No.
19
    By Mr. Corey:
20
    Q.  Do you know where the Bratz Design documents from
21  2000 and 2001 are located?

22

23  ────────────────────
    [65]  9/25/07 Tonnu Tr., 621:7-24, attached to the Corey Dec., Exh. 2.  On
24  November 12, 2007, MGA's counsel provided Mattel with "revisions" to Ms.
25  Tonnu's testimony (the "Tonnu Revisions").  See Revisions Letter, attached to the
    Corey Dec., Exh. 44.  Pursuant to the Tonnu Revisions, the Deponent's answer of
26  "No" in this excerpt, page 621, line 16 was changed to "Yes."  Further, also pursuant
    to the Tonnu Revisions, the Deponent's answer "I don't believe they are being
27  reviewed," page 621, line 21, was changed to "I believe they were reviewed."
28

-24-

1    Ms. Morgenthaler Lever:  Outside the scope of the deposition.  Calls for speculation.  Lack of foundation.

2    The Deponent:  No.

3    By Mr. Corey:

4    Q.  Who would you ask if you wanted to find out the answer to that question?

5

6    Ms. Morgenthaler Lever:  Same objections.

7    The Deponent:  I don't know.[66]

8    . . .

9    Q.  Do you know whether MGA has undertaken any efforts to collect documents from independent contractors or freelance -- freelancers related to this action?

10

11   Ms. Morgenthaler Lever:  Objection.  Vague and ambiguous.  Calls for speculation.  Lack of foundation.

12   The Deponent:  No.[67]

13

14   MGA has three off-site facilities where documents are stored.  Tonnu did not

15   know what documents were stored at each facility and confirmed that they had not

     been searched for documents responsive to Mattel's requests.

16   Q.  What kind of documents are stored at the storage facility?

17

18   Ms. Morgenthaler Lever:  In --

19   Mr. Corey:  In Van Nuys.

20   Ms. Morgenthaler Lever:  In total or --

21   Mr. Corey:  Just what type.

22   Ms. Morgenthaler Lever:  Vague and ambiguous.  Calls for speculation.  Also vague and ambiguous as to time and as to the term "documents."  You can answer.

23

24   The Deponent:  I'm not sure.

25   By Mr. Corey:

26   _____

27   [66]  9/25/07 Tonnu Tr., 656:9 - 657:16, attached to the Corey Dec., Exh. 2.
     [67]  9/25/07 Tonnu Tr., 688:15 - 688:22, attached to the Corey Dec., Exh. 2.

28

SEPARATE STATEMENT NO. 1

1    Q.    Do you know what type of documents are stored at the Rialto facility?

2

3    Ms. Morgenthaler Lever:  Objection.  Calls for speculation.  Lack of foundation.  Vague and ambiguous.

4    The deponent:  I'm not sure.

5    By Mr. Corey:

6    Q.    Do you know what quantity of documents were quarantined at the Rialto facility?

7

8    Ms. Morgenthaler Lever:  By Rich Daniels, correct?  Vague and ambiguous.  You can answer.

9    The Deponent:  No.

10   By Mr. Corey:

11   Q.    Do you know if anyone else quarantined documents at the Rialto facility besides Mr. Daniels?

12

13   Ms. Morgenthaler Lever:  Objection.  Vague and ambiguous as to time.  Calls for speculation --

14   Mr. Corey:  At any time.

15   Ms. Morgenthaler Lever:  -- Lack of foundation.

16   The Deponent:  No.

17   By Mr. Corey:

18   Q.    Do you know what the subject matter was of the documents quarantined at the Rialto facility?

19

20   Ms. Morgenthaler Lever:  Vague and ambiguous as to time.

21   The Deponent:  No.

22   By Mr. Corey:

23   . . .

24   Q.    Do you know whether anyone has been through those -- strike that.  When did Mr. Daniels quarantine these boxes?

25

26   A.    He indicated the majority of his effort was done sometime May/June/July, I believe.

27

28   Q.    Of this year?

SEPARATE STATEMENT NO. 1

1    A.    Correct.

2    *Q.    Do you know whether the documents at the Rialto*
3    *facility have been reviewed to determine whether they*
     *contain documents responsive to Mattel's document*
4    *requests?*

5    *Ms. Morgenthaler Lever: Objection. Vague and*
     *ambiguous. Calls for attorney work product.*

6    *The Deponent: Yes.*

7    *By Mr. Corey:*

8    *Q.    Have they?*

9    *A.    No.*

10   . . .

11   Q.    And he took all of the paper documents from the
     Van Nuys storage facility to his office?

12   A.    I believe so.

13   *Q.    Do you know whether those documents have been*
14   *reviewed to determine whether they contain documents*
     *responsive to Mattel's requests?*

15   *A.    Yes.*

16   *Q.    Have they?*

17   *A.    No.*[68]

18

19   Q.    Now let's talk about the Filenet facility. Do you
20   know whether any documents have been collected from
     the Filenet facility?

21   A.    Yes.

22   Ms. Morgenthaler Lever: From who? By who?

23   Mr. Corey: By MGA.

24   The Deponent: Yes.

25   By Mr. Corey:

26   _____
     [68]  Tonnu Tr., 609:6 - 613:10, 615:22 - 616:5, attached to the Corey Dec., Exh. 2
27   (emphasis added).

28

1    Q.    And have documents been collected from the Filenet facility?

2

3    A.    No.

4    . . .

5    Do you know what type or subject matter of documents are stored at the Filenet facility?

6    A.    No.

7    Q.    Do you know whether the documents at the Filenet facility contain any documents responsive to Mattel's requests?

8

9    Ms. Morgenthaler Lever:  Objection.  Asked and answered.

10

11   The Deponent:  No.[69]

    Finally, Ms. Tonnu was not aware of any efforts to collect responsive

12

13   documents from MGA's offices themselves.

14   Q.    Do you know whether any of the documents in -- any of the paper documents located at the MGA campus have been searched to determine whether there are documents in there responsive to Mattel's requests?

15

16   Ms. Morgenthaler Lever:  Objection.  Outside the scope. May call for attorney-client communications.  Vague and ambiguous.

17

18   The Deponent:  No.[70]

19   Mattel was entitled to a witness competent to discuss what was done to search

20   for documents as the Discovery Master ordered.  MGA's failure to produce a

21   properly prepared witness in response to Topic No. 39, and its continual instructions

22   not to answer, constitute a failure to comply with the May 16 Order.[71]

23

24

25   [69] Tonnu Tr., 618:3-14, 619:4-12, attached to the Corey Dec., Exh. 2.

26   [70] Tonnu Tr., 646:17-25, attached to the Corey Dec., Exh. 2.

27   [71] November 26. 2007 letter from Jon Corey to Raoul Kennedy, attached to the Corey Dec., Exh. 37.

28

07209/2315848.1

-28-

**VI.   MGA FAILED TO COMPLY WITH THE COURT'S ORDER AND PRODUCE A WITNESS IN RESPONSE TO TOPIC 40**

**A.   MGA Was Ordered to Produce a Witness to Testify in Response to Topic 40 and Was Sanctioned for Its Failure to Do So**

Pursuant to the May 16 Order, MGA was ordered to produce a witness to testify in response to Topic No. 40.[72]  Topic No. 40 seeks the following information

> The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan or information) that YOU received in any manner from any PERSON who was at the time an employee of MATTEL or who had previously been an employee of MATTEL.[73]

MGA refused to designate a witness for Topic 40 as required by the May 16 Order and Mattel was forced to move to enforce it.  Pursuant to the August Order, MGA was sanctioned for its "willful and inexcusable" noncompliance with the May 16 Order.[74]

**B.   MGA Failed to Comply With the May 16 Order**

MGA designated Ms. Tonnu to testify concerning Topic No. 40.  Ms. Tonnu's knowledge concerning Topic No. 40 came solely from third parties:

> Q    Look at Topic Number 40.
>
> A    Right.
>
> Q    Have you been involved in preserving, collecting, destroying, removing, transferring, losing or impairing documents that relate to Mattel?
>
> A    No.[75]
>
> * * *

---

[72]   May 16 Order, ¶ 3, attached to the Corey Dec., Exh. 11.
[73]   See Second Notice, attached to the Corey Dec., Exh. 8.
[74]   August Order, 8:1-21, 10:3-6, attached to the Corey Dec., Exh. 12.
[75]   Tonnu Tr., 42:9-14, attached to the Corey Dec., Exh. 1.

1          Q      All right.  Let's turn to Topic Number 40. . . .[76]

2   Ms. Tonnu made no discernible effort to educate herself either.  She was unable to

3   answer relevant, important questions concerning Topic 40.  For example:

4          Q      Do you know whether MGA has or has had in its
               possession any Mattel strategic plans?
5
          A      No.
6
          Q      Do you know whether MGA has or had in its
7              possession any sales or profit information of Mattel?

8          A      No.

9          Q      Do you know whether MGA has or had in its
               possession any documents related to Mattel's advertising
10             strategy?

11         A      No.

12         Q      Do you know whether MGA has or had in its
               possession documents relating to the results of Mattel's
13             advertising?

14         A      No.

15         Q      Do you know whether MGA has or had in its
               possession documents related to Mattel's pre-release line
16             lists?

17         A      No.

18         Q      Do you know whether MGA has or had in its
               possession documents related to Mattel's strategy with
19             respect to specific customers?

20         A      No.[77]

21   MGA willfully failed to comply with the May 16 Order.

22

23

24

25

26
_____
27   [76]  Tonnu Tr., 190:7, attached to the Corey Dec., Exh. 1.
     [77]  Tonnu Tr., 203:7 - 204:3, attached to the Corey Dec., Exh. 1.
28

                                                            SEPARATE STATEMENT NO. 1

1
2
3

**C.   Despite Mattel's Meet and Confer Efforts, and MGA's Agreement to Re-Produce Ms. Tonnu As Its Witness for Topic No. 40, MGA Again Failed to Comply With the May 16 Order**

4   After the parties met and conferred concerning MGA's deficient responses
5   and its witness' lack of knowledge, MGA agreed to reproduce Ms. Tonnu as its
6   designee for Topic No. 40.  However, MGA again failed to properly prepare Ms.
7   Tonnu, and persisted with its objections, despite the fact that its objections were
8   overruled and that MGA was sanctioned for its failure to produce a witness.

9   The Topic plainly asks about documents provided to MGA or in MGA's
10   possession, custody or control, received from former Mattel employees, but MGA
11   spoke with only two former employees about such documents. [78]  Indeed, MGA
12   itself identified, for Topic No. 31, a list of tens of former Mattel employees working
13   at MGA.  MGA made no effort to determine what Mattel documents, if any, these
14   individuals possess, as the Discovery Master ordered.[79]  Further, other than the three
15   Mattel documents that Tonnu testified MGA employees used and accessed, she was
16   unable to identify what Mattel documents MGA had.  Ms. Tonnu's information
17   concerning Topic No. 40 was incomplete on its face and therefore so was her
18   testimony.  MGA, again failed to produce a witness properly prepared to respond to
19   Topic No. 40.  MGA, as a result, thrice failed to comply with the May 16 Order.

20
21
22
23
24
25
26

[78]   Tonnu Tr., 675:11 - 676:16, attached to the Corey Dec., Exh. 2.
[79]   Exhibit 664, attached to the Corey Dec., Exh. 4.

27
28

07209/2315848.1

-31-

## VII.   MGA FAILED TO COMPLY WITH THE COURT'S ORDER AND PRODUCE A WITNESS IN RESPONSE TO TOPIC 41

### A.   MGA Was Ordered to Produce a Witness to Testify in Response to Topic 41 and Was Sanctioned for Failing to Do the Same

MGA was ordered to produce a witness to testify in response to Topic 41.[80] Topic 41 seeks the following information:

> The testing of or sampling from DOCUMENTS that REFER OR RELATE TO BRATZ or BRYANT, including without limitation such testing or sampling in connection with any ink, paper or chemical analysis performed or attempted to be performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results and reports relating thereto.[81]

Further, pursuant to the August Order, MGA was sanctioned for its "clear and flagrant violation" of the May 16 Order for failing to designate and produce such a witness.[82]

### B.   MGA Failed to Comply With the May 16 Order

Ms. Tonnu lacked knowledge of Topic 41.  For example:



<hr />

[80]   May 16 Order, ¶ 3, attached to the Corey Dec., Exh. 11.
[81]   See Second Notice, attached to the Corey Dec., Exh. 8.
[82]   August Order, 9:15-22, attached to the Corey Dec., Exh. 12.

07209/2315848.1

SEPARATE STATEMENT NO. 1



MGA also defied the May 16 Order in other ways, including by instructions not to answer:



84 Tonnu Tr., 167:10 - 168:15, attached to the Corey Dec., Exh. 1.

SEPARATE STATEMENT NO. 1

1  ████████████

2  ██████████████████████████████████

3  ███████████

4      In addition to having no meaningful knowledge of any ink, paper or chemistry

5  testing performed,[86] Ms. Tonnu was uniquely unqualified to answer any questions

6  regarding ink, paper or chemistry testing of Bratz documents.  She made no effort to

7  educate herself about the testing, procedures, handling or storage of the documents

8  that MGA tested.  She did not speak with Mr. Speckin or anyone involved in the

9  testing.[87]  She had only read Mr. Speckin's declaration, and could not even say

10  whether the representations in that declaration were accurate or not.[88]  She was

11  unable to identify what tests were performed on each document, how those tests

12  were done, why they were done, who was involved in the tests, or how the

13  documents were stored or shipped to ensure that information discoverable by

14  subsequent examiners would not be contaminated or destroyed.[89]  That is not

15  compliance with the May 16 Order.

16

17

18

19

20

21

22  [85]  Tonnu Tr., 179:5 - 180:14, attached to the Corey Dec., Exh. 1.

23  [86]  Tonnu Tr., 41:20 - 42:1, attached to the Corey Dec., Exh. 1.

[87]  Tonnu Tr., 166:20-24, attached to the Corey Dec., Exh. 1.  During the two

24  months between her first and second deposition, Ms. Tonnu did not speak to

25  Mr. Speckin.  9/24/07 Tonnu Tr., 254:10-23, attached to the Corey Dec., Exh. 2.

[88]  Tonnu Tr., 161:17 - 162:8, attached to the Corey Dec., Exh. 1; 9/25/07 Tonnu

26  Tr., 570:24 - 597:2, attached to the Corey Dec., Exh. 2.

[89]  Tonnu Tr., 170:7 - 190:6, attached to the Corey Dec., Exh. 1; 9/25/07 Tonnu

27  Tr., 570:24 - 597:2, attached to the Corey Dec., Exh. 2.

28

SEPARATE STATEMENT NO. 1

1

**C.** **Despite Mattel's Meet and Confer Efforts and the Discovery**

2      **Master's Sanctioning of MGA for Violating the May 16 Order with**

3      **Respect to Topic 41, MGA Again Failed to Comply With the May**

4      **16 Order**

5      The parties met and conferred concerning MGA's deficient testimony, and

6 MGA agreed to re-produce Ms. Tonnu to complete her testimony on Topic 41. She

7 still lacked knowledge concerning the testing, procedures, handling or storage of the

8 documents that MGA tested, however. For example, Ms. Tonnu testified as follows:



27

28

90   9/25/07 Tonnu Tr., 570:19 - 571:3, attached to the Corey Dec., Exh. 2.



1   ████████████████████████████████████

2   ████████████████████

3       Again, Ms. Tonnu's lack of knowledge is not compliance with the Court's

4   Order.

5                     **Deficient Testimony of Rebecca Harris**

6   **VIII.** **MGA FAILED TO COMPLY WITH THE COURT'S ORDER TO**

7        **PRODUCE A KNOWLEDGEABLE WITNESS IN RESPONSE TO**

8        **TOPIC NO. 11**

9        **A.**    **MGA Was Ordered to Produce Its Designee For Topic No. 11**

10      The Discovery Master ordered MGA to produce a witness to testify

11  concerning Topic No. 11.[92] Topic No. 11 seeks the following information:

12          The exhibition, or proposed, offered, contemplated or
    requested exhibition, of BRATZ or any BRATZ DESIGN

13          to any third party prior to June 30, 2001, including without
    limitation each instance in which BRATZ or any BRATZ

14          DESIGN was marketed, offered for sale, pitched, shown
    or disclosed to, or otherwise discussed with or

15          communicated to, any retailer, wholesaler or distributor
    and the DOCUMENTS that REFER OR RELATE

16          thereto.[93]

17  The timing of the creation, development and marketing of Bratz is central to this

18  case. One significant development indicator is when, and in what form, MGA first

19  showed Bratz to retailers, wholesalers, distributors or other third parties.

20

21

22

23

24

[91]  9/25/07 Tonnu Tr., 594:7 - 596:10, attached to the Corey Dec., Exh. 2.

25

[92]  Additionally, the Discovery Master overruled all of MGA's objections and

26  limitations concerning the topics set forth in the Second Notice. See May 16 Order,

27  ¶ 5, attached to the Corey Dec., Exh. 11.

[93]  See Second Notice, attached to the Corey Dec., Exh. 8.

28

SEPARATE STATEMENT NO. 1

1

**B.**   **MGA Failed to Comply with the May 16 Order with Respect to**

2

   **Topic No. 11**

3

Rebecca Harris, MGA's designee for Topic No. 11, lacked knowledge

4

concerning this Topic.  Ms. Harris



SEPARATE STATEMENT NO. 1



[94] Transcript of the Deposition of Becky Harris, July 20, 2007 ("Harris Tr."), 280:8 - 281:21, attached to the Corey Dec., Exh. 7.

[95] Harris Tr., 284:6-15, attached to the Corey Dec., Exh. 7.

[96] Harris Tr., 288:6-23, attached to the Corey Dec., Exh. 7.

1  Ms. Harris ████████████████████████████████████████████

2  ███████████████████████████████████████████████████████████████

3  ██████████████████████████████[97]  Ms. Harris's lack of knowledge

4  concerning Topic No. 11, along with MGA's failure to properly prepare her to

5  testify on the same, violates the May 16 Order.

6  **IX.    MGA FAILED TO COMPLY WITH THE COURT'S ORDER TO**

7  **PRODUCE A KNOWLEDGEABLE WITNESS IN RESPONSE TO**

8  **TOPIC NO. 13**

9  **A.    MGA Was Ordered to Produce Its Designee For Topic No. 13**

10  MGA was ordered to designate and produce a witness to testify on Topic

11  No. 13.  Topic No. 13 seeks the following information:

12      COMMUNICATIONS prior to June 30, 2001 between
        YOU and any manufacturer, distributor, wholesaler,
13      retailer, or any contemplated, proposed or potential
        manufacturer, distributor, wholesaler or retailer, that
14      REFER OR RELATE TO BRATZ or any BRATZ
        DESIGN.[98]

15  MGA failed to produce a witness properly prepared to address Topic No. 13.

16  **B.    MGA Failed to Comply with the May 16 Order with Respect to**

17  **Topic No. 13**

18  Ms. Harris's testimony in response to Topic No. 13 was wholly inadequate.

19  Beyond information contained in MGA's produced documents, Ms. Harris had no

20  knowledge concerning early MGA communications with manufacturers, retailers,

21  distributors or other third parties.[99]  For example, █████████████████

22  ██████████████████████████████████████████████████████████

23  ██████████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████████

25  ████████████████████████████████████████████

26  [97]  Harris Tr., 293:10 - 297:18, attached to the Corey Dec. Exh. 7.
27  [98]  See Second Notice, attached to the Corey Dec., Exh. 8.
       [99]  Harris Tr., 177:5-25, 179:1-5, 194:4 - 195:11, 203:10-21, Corey Dec., Exh. 7.
28

SEPARATE STATEMENT NO. 1



100  Yet,

100   Harris Tr., 174:19 - 176:3, 189:13 - 192:12, 200:10 - 203:9, attached to the Corey Dec., Exh. 7.

07209/2315848.1

SEPARATE STATEMENT NO. 1



21  MGA's failure to produce a witness competent to testify on Topic No. 13 is a direct

22  violation of the May 16 Order.

---

[101]   Harris Tr., 194:4 - 195:11, attached to the Corey Dec., Exh. 7.

[102]   Harris Tr., 204:10 - 205:12, attached to the Corey Dec., Exh. 7.

**X.   MGA FAILED TO COMPLY WITH THE COURT'S ORDER TO PRODUCE A KNOWLEDGEABLE WITNESS IN RESPONSE TO TOPIC NO. 14**

    **A.   MGA Was Ordered to Produce Its Designee For Topic No. 14**

MGA was ordered to designate and produce a witness to testify in response to Topic No. 14. Topic No. 14 seeks the following information:

> When and where BRATZ was first manufactured, shipped, distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.[103]

As discussed herein, MGA failed to produce a witness properly prepared to testify on Topic No. 14.

    **B.   MGA Failed to Comply with the May 16 Order with Respect to Topic No. 14**

Although MGA designated Ms. Harris as its <u>Rule</u> 30(b)(6) witness for Topic No. 14,



---

[103]  <u>See</u> Second Notice, attached to the Corey Dec., Exh. 8.

Further, MGA failed to prepare Ms. Harris so that she could competently testify concerning the identity or role of any person who was involved in the first manufacture of Bratz:

---

[104] Harris Tr., 116:15 - 117:16, attached to the Corey Dec., Exh. 7.  (emphasis added)

SEPARATE STATEMENT NO. 1

Ms. Harris similarly had no information or knowledge regarding the date when manufacturing began for the first Bratz dolls:



MGA's failure to produce a witness with knowledge regarding Topic No. 14 violated the May 16 Order.

## XI.   MGA FAILED TO COMPLY WITH THE COURT'S ORDER TO PRODUCE A KNOWLEDGEABLE WITNESS IN RESPONSE TO TOPIC NO. 27

### A.   MGA Was Ordered to Produce Its Designee For Topic No. 27

The Discovery Master's May 16 Order required MGA to produce its witness to testify concerning Topic No. 27.  Topic No. 27 seeks the following information:

> The payment of money or anything of value that YOU have made or offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and reasons therefor.[107]

As discussed herein, MGA failed to produce a witness with personal knowledge of, or a witness properly prepared to respond to, Topic No. 27.

### B.   MGA Failed to Comply with the May 16 Order with Respect to Topic No. 27

Ms. Harris lacked personal knowledge regarding the subject of Topic No. 27:

---

[105]   Harris Tr., 117:18 - 118:11, attached to the Corey Dec., Exh. 7.  (emphasis added)
[106]   See Harris Tr., 115:5-12, attached to the Corey Dec., Exh. 7.
[107]   See Second Notice, attached to the Corey Dec., Exh. 8.

SEPARATE STATEMENT NO. 1

1

2

3

Further, Ms. Harris's efforts to educate herself concerning Topic No. 27 were

superficial at best:

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

[108]   Harris Tr., 82:12-15, attached to the Corey Dec., Exh. 7.

28

SEPARATE STATEMENT NO. 1



1

2

3

4

5

6

7

8          Due to this lack of preparation, Ms. Harris was not able to adequately respond

9    to this Topic.  For example:

10

11

12

13

14

15

16

17

18

19   Such deficient testimony is not compliance with the May 16 Order.

20

21

22

23

24

25

26   [109]  Harris Tr., 69:12 - 70:18, attached to the Corey Dec., Exh. 7.

27   [110]  Harris Tr., 70:20 - 71:16, 81:17 - 82:11, attached to the Corey Dec., Exh. 7.
     [111]  Harris Tr., 81:4-16, attached to the Corey Dec., Exh. 7.

28

1  **XII.  MGA FAILED TO COMPLY WITH THE COURT'S ORDER TO**

2  **PRODUCE A KNOWLEDGEABLE WITNESS IN RESPONSE TO**

3  **TOPIC NO. 28**

4      **A.  MGA Was Ordered to Produce Its Designee For Topic No. 28**

5      In the May 16 Order, MGA was ordered to produce its witness to testify

6  concerning Topic No. 28.  Topic No. 28 seeks the following information:

7          COMMUNICATIONS between YOU and Elise Cloonan
   that REFER OR RELATE TO BRYANT, MATTEL,

8          BRATZ and/or Anna Rhee, including the DOCUMENTS
   that REFER OR RELATE TO such

9          COMMUNICATIONS.[112]

10  MGA failed to produce a witness with personal knowledge of, or a witness properly

11  prepared to respond to, Topic No. 28.

12      **B.  MGA Failed to Comply with the May 16 Order with Respect to**

13          **Topic No. 28**

14      Ms. Harris had no personal knowledge concerning Topic No. 28.  Nor did she

15  make an effort to educate herself about this topic.[113]  Indeed, ▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮

22

23

24

25

26     [112]  See Second Notice, attached to the Corey Dec., Exh. 8.

27     [113]  Harris Tr., 97:4-16, attached to the Corey Dec., Exh. 7.
      [114]  Harris Tr., 97:17-20, attached to the Corey Dec., Exh. 7.

28

SEPARATE STATEMENT NO. 1

1   MGA's failure to produce a knowledgeable witness in response to Topic No. 28 is a

2   violation of the Court's May 16 Order.

3                    **Deficient Testimony of Spencer Woodman**

4   **XIII. MGA FAILED TO COMPLY WITH THE COURT'S ORDER TO**

5          **PRODUCE A KNOWLEDGEABLE WITNESS IN RESPONSE TO**

6          **TOPIC NO. 34**

7          **A.     MGA Was Ordered to Produce Its Designee for Topic No. 34**

8          In the May 16 Order, MGA was ordered to produce a witness to testify in

9   response to Topic No. 34.[115]  Topic No. 34 seeks the following information:

10              Other than those previously filed and served in this
                ACTION or in which Mattel, Inc.'s counsel in this
11              ACTION was in attendance, the testimony, transcripts,
                declarations, affidavits and other sworn statements of any
12              other type by or from YOU or made on YOUR behalf that
                REFER OR RELATE TO BRATZ THAT REFER OR
13              RELATE TO the time period prior to June 30, 2001
                (regardless of when such testimony or sworn statement
14              was taken, given, signed, made or filed).[116]

15         MGA failed to produce a witness on Topic No. 34, and was again ordered to

16  do so in the August Order.[117]  Further, MGA was sanctioned for its "clear and

17  flagrant violation" of the May 16 Order for failing to designate and produce such a

18  witness.[118]

19         **B.     MGA Failed to Comply With the May 16 Order and August Order**

20               **With Respect to Topic No. 34**

21         MGA failed to produce a witness with knowledge of Topic No. 34.  Instead, it

22  produced Mr. Woodman who had not been adequately prepared and lacked the most

23  basic knowledge on the Topic.  Mr. Woodman had only been employed at MGA for

24  less than one year and his responsibilities had been limited to the administration of

25  _____

26  [115]  May 16 Order, ¶ 3, attached to the Corey Dec., Exh. 11.
    [116]  See Second Notice, attached to the Corey Dec., Exh. 8.
27  [117]  August Order, 8:22-9:22, attached to the Corey Dec., Exh. 12.

28

1  licensing contracts and royalties.[119] His responsibilities in that position did not

2  relate to any of the issues encompassed by Topic No. 34:

> Q. In your job as Director of Royalties, do you have occasion to deal with sworn statements of the company?
>
> A. No.
>
> * * *
>
> Q. Okay. Have you ever been asked to review a sworn statement of an MGA employee before it was submitted — wherever it was going, the Patent Office or a court or — whatever, before it left the company?
>
> A. No.[120]

10  Yet, to prepare to give testimony as the person most knowledgeable regarding

11  this Topic, Mr. Woodman did no more than review a selection of sworn statements

12  previously made by others, review transcripts of Carter Bryant's deposition

13  testimony, and speak "for a few minutes" with one other person besides counsel.[121]

14  Significantly, Mr. Woodman did not review any of the sworn statements in

15  MGA's many submissions to the Copyright Office or Patent and Trademark

16  Office.[122] And, although Mr. Woodman first indicated that he had reviewed, in

17  preparation for his deposition on this Topic, sworn testimony from the "Art Attacks"

18  trial, his counsel Mr. Klevens, proffered testimony that purported to "correct" the

19  witnesses' testimony to say that he did not review such testimony.[123]

20  Further, in regard to both subjects, Mr. Woodman's counsel improperly

21  instructed the witness not to answer. In so doing, Mr. Woodman's counsel took an

22  untenable position that Topic No. 34 did not include sworn statements made in

---

[118]  August Order, 9:15-22, attached to the Corey Dec., Exh. 12.

[119]  Transcript of Deposition of Spencer Woodman, October 9, 2007 ("Woodman Tr."), 10:10-11:7, attached to the Hutnyan Dec., Exh. 1.

[120]  Woodman Tr., 18:2-23, attached to the Hutnyan Dec., Exh. 1.

[121]  Woodman Tr., 19:9-22:20, 24:13-16, attached to the Hutnyan Dec., Exh. 1.

[122]  Woodman Tr., 35:5-13, 45:21-25, attached to the Hutnyan Dec., Exh. 1.

-51-

SEPARATE STATEMENT NO. 1

1  connection with the "Art Attacks" matter,[124] and that sworn statements made in
2  various submissions to the Copyright Office or Patent and Trademark Office were
3  outside the ambit of Topic 34 because they were either not actually sworn
4  statements,[125] they were sworn statements but should be excluded from Topic 34
5  because they related to Topic 33,[126] or they did not sufficiently relate to conduct
6  prior to June 30, 2001.[127]  Ultimately, Mr. Woodman's counsel instructed him not to
7  answer 50 questions which were clearly within the proper scope of Topic 34,
8  thereby depriving Mattel of any meaningful examination on this Topic.[128]

9        Moreover, for the limited materials that Mr. Woodman had reviewed and was
10  willing to testify on, he offered little information beyond what was apparent on the
11  face of the documents.  He could not answer basic questions about the
12  circumstances of the sworn statements, including how they were prepared,[129]
13  whether there was any investigation associated with them,[130] what the context of the
14  statements were or why the statements were made,[131] who read or reviewed or
15  approved the statements,[132] or who authorized them.[133]  A few examples are
16  instructive of the Mr. Woodman's complete lack of knowledge on this Topic:

17

18  [123]  Woodman Tr., 39:18-41:3, attached to the Hutnyan Dec., Exh. 1.
19  [124]  Woodman Tr., 40:21-41:19, attached to the Hutnyan Dec., Exh. 1.
    [125]  Woodman Tr., 46:14-24, attached to the Hutnyan Dec., Exh. 1.
20  [126]  Woodman Tr., 46:14-50:19, 89:6-22, 96:11-25, 97:20-106:15, 122:12-
21  123:12, attached to the Hutnyan Dec., Exh. 1.
    [127]  Woodman Tr., 60:10-61:11, attached to the Hutnyan Dec., Exh. 1.
22  [128]  The specific questions on which Mr. Woodman was improperly instructed
23  not to answer are set out at pages 5-6 of deposition transcript, attached to the
    Hutnyan Dec., Exh. 1.
24  [129]  Woodman Tr., 139:4-16, 142:14-143:2, attached to the Hutnyan Dec., Exh.
25  1.
    [130]  Woodman Tr., 143:10-13, attached to the Hutnyan Dec., Exh. 1.
26  [131]  Woodman Tr., 139:1-3, 143:4-8, attached to the Hutnyan Dec., Exh. 1.
    [132]  Woodman Tr., 139:17-140:4, attached to the Hutnyan Dec., Exh. 1.
27  [133]  Woodman Tr., 141:20-25, attached to the Hutnyan Dec., Exh. 1.
28

SEPARATE STATEMENT NO. 1

1    Q.   When you prepared for your deposition today, you
2    didn't check into -- you looked at sworn statements;
correct?

3    The Deponent:  That is correct.

4    Q.   Okay.  And with respect to any of those sworn
5    statements, did you check into who had provided
authorization to submit that sworn statement?

6    The Deponent:  Did I check into?

7    Q.   Uh-huh.

8    A.   No, I did not.

9    Q.   Do you otherwise know?

10    A.   I'm sorry?

11    Q.  Do you otherwise know?  I mean, did you already
know and that's why you didn't check it out?

12    The Deponent:  No, I did not know.[134]

13    * * *

14
15    Q.   Were there any sworn statements that you looked at
during your preparation for this deposition where you had
16    information about who had reviewed or approved that
sworn statement before it was signed?

17    Mr. Klevens:  Objection; compound, vague and ambiguous.

18    The Deponent:  No, I did not have information.

19    By Ms. Hutnyan:

20    Q.   On that?

21    A.   On that.

22    Q.   Okay.  For all of the sworn statements that you looked
at in preparation for your deposition, did you have any
23    information about who originally drafted the sworn
statement?

24
25    Mr. Klevens:  Objection; compound, vague and ambiguous.

    The Deponent:  Can you repeat the question?
26

27   [134]   Woodman Tr., 214:11 - 215:1, attached to the Hutnyan Dec., Exh. 1.
28

1      By Ms. Hutnyan:

2      Q.  Sure.  With all of the prior sworn statements that you -
       - I'm sorry.

3
       With regard to all of the sworn statements that you
4      reviewed in connection with preparing for your deposition,
       do you have any facts with relation to any of those
5      statements as to who reviewed or approved that sworn
       statement before it was signed?

6
       Mr. Klevens:  Objection; vague, ambiguous and
7      compound.

8      The Deponent:  When you say I have 'facts,' what do you
       mean by 'facts'?

9
       By Ms. Hutnyan:

10
       Q.  Do you have any information?

11
       A.  Just in my head or documentation or --

12
       Q.  Either way, however you keep information.

13
       Mr. Klevens:  Same objections.

14
       A.  No.

15
       By Ms. Hutnyan:

16
       Q.  Okay.  So you -- so you don't know anything about --
17     anything about the preparation of any sworn statement in
       this case that you've seen; correct?

18
       A.  About the --

19
       Mr. Klevens:  Same objections.

20
       The Deponent:  -- Preparation of the document?  No.

21
       Q.  Or the statements therein?

22
       Mr. Klevens:  Objection; compound.

23
       The Deponent:  Correct.[135]

24
       Ultimately, Mr. Woodman's purported "testimony" regarding MGA's sworn
25
       statements amounted to little more than whether or not it was consistent with the
26

27     _____
       [135]   Woodman Tr., 215:12 - 217:10, attached to the Hutnyan Dec., Exh. 1.
28

1 | deposition testimony of Carter Bryant.[136] Mr. Woodman's lack of knowledge
2 | concerning Topic No. 34, along with MGA's failure to properly prepare her to
3 | testify on the same, coupled with counsel's improper instructions not to answer
4 | numerous questions, violates the May 16 Order and August Order.

5

6 | DATED:  December 5, 2007          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
7

8                                     By
9                                        Jon D. Corey
                                         Attorneys for Mattel, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 | [136] Woodman Tr., 146:11-148:2, 148:6-149:6, 150:10-21, 185:11-186:1, attached to the Hutnyan Dec., Exh. 1.

28

-55-