QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| Defendant. | MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL KAYE SCHOLER TO PRODUCE DOCUMENTS; AND |
| AND CONSOLIDATED ACTIONS | MEMORANDUM OF POINTS AND AUTHORITIES |
| | [Declaration of Juan Pablo Albán filed concurrently herewith] |

Hearing Date: January 10, 2008
Time: 9:00 a.m.
Place: Telephonic

**Phase 1**
Discovery Cut-Off: January 28, 2008
Pre-Trial Conference: May 5, 2008
Trial Date: May 27, 2008

## PUBLIC REDACTED

07209/2319991.3

1 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2     PLEASE TAKE NOTICE that at a telephonic hearing before Discovery

3 Master Hon. Edward Infante (Ret.) that will occur on January 10, 2008 at 9:00 a.m.,

4 or on such other date and such other time set by Judge Infante, plaintiff Mattel, Inc.

5 ("Mattel") will, and hereby does, move the Court for an order compelling Kaye

6 Scholer to produce documents responsive to Mattel's Subpoena dated September 6,

7 2007, Request Nos. 1-35.

8     This Motion is made pursuant to Federal Rules of Civil Procedure 37

9 and 45 on the grounds that Mattel's Requests seek relevant information and there is

10 good cause of its production and that the Discovery Master has already ruled that the

11 information sought by Mattel here is relevant and discoverable.  The Discovery

12 Master has jurisdiction to hear this motion pursuant to sections 5 and 15 of the

13 Stipulation and Order for Appointment of a Discovery Master.

14     This Motion is based on this Notice of Motion and Motion, the

15 accompanying Memorandum of Points and Authorities, the Declaration of Juan

16 Pablo Albán filed concurrently, the records and files of this Court, and all other

17 matters of which the Court may take judicial notice.

18                    **Certificate Of Compliance With Local Rule 37-1**

19     Mattel, Inc. and Kaye Scholer met and conferred regarding Mattel's

20 document requests and Kaye Scholer's objections thereto on October 11 and 29,

21 2007, among other times, but have been unable to reach agreement on Kaye

22 Scholer's production obligations.

23

24 DATED:  December 10, 2007        QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
25

26                         By _____
27                            Jon D. Corey
                              Attorneys for Mattel, Inc.
28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................... 2

    A.   Kaye Scholer Asserted Virtually Identical Objections to Every One of Mattel's Requests And Refuses to Produce A Single Document. ................................................................................... 3

    B.   Kaye Scholer Possesses Responsive Documents. ................................ 4

ARGUMENT ......................................................................................................... 6

I.   KAYE SCHOLER HAS AN OBLIGATION TO PRODUCE ALL DOCUMENTS RESPONSIVE TO MATTEL'S SUBPOENA. ....................... 6

    A.   The Documents Mattel Seeks Are Relevant And There Is Good Cause For Their Production. .................................................................. 7

        1.   The *Larian v. Larian* Disputes Are Relevant. ............................. 7

        2.   Mattel's and MGA's Allegations Are Relevant. .......................... 8

        3.   Documents About Farhad Larian's Relationship With MGA Are Relevant As To His Credibility. .................................... 9

        4.   Farhad Larian's Communications With Mattel Are Relevant. ..................................................................................... 10

        5.   The Location Of Responsive Documents Is Relevant. .............. 10

    B.   Mattel's Requests Are Not Unreasonable, Oppressive, Annoying or Embarrassing. ................................................................................ 11

II.   KAYE SCHOLER'S RELIANCE ON PRIOR PROTECTIVE ORDERS TO WITHHOLD *ALL* RESPONSIVE DOCUMENTS IS MERITLESS. ................................................................................................... 15

    A.   Kaye Scholer Cannot Withhold Documents Originally In Control Of Isaac Larian. ................................................................................. 15

    B.   The November 2005 Protective Order Also Does Not Apply To The Vast Majority Of The Documents Kaye Scholer Possesses. ........ 16

III.   KAYE SCHOLER'S PRIVILEGE CLAIMS ARE DEFICIENT AND CONSTITUTE WAIVER OF ITS PRIVILEGE CLAIMS. ........................... 18

CONCLUSION. ................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

## Cases

In re Bergeson,
112 F.R.D. 692 (D. Mont. 1986) .......................................................................... 13

Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.,
408 F.3d 1142 (9th Cir. 2005)............................................................................... 19

Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.,
175 F.R.D. 646 (C.D. Cal. 1997) ........................................................................... 9

Covey Oil Co. v. Continental Oil Co.,
340 F.2d 993 (10th Cir. 1965).............................................................................. 13

Flatow v. The Islamic Republic of Iran,
202 F.R.D. 35 (D.D.C. 2001) ............................................................................... 11

Gail v. New England Gas Co., Inc.,
243 F.R.D. 28 (D. R.I. 2007)................................................................................ 19

Goodman v. U.S.,
369 F.2d 166 (9th Cir. 1966) ............................................................................... 11

Heat and Control, Inc. v. Hester Industries, Inc.,
785 F.2d 1017 (Fed. Cir. 1986)............................................................................... 7

In re Imperial Corp. Of America,
174 F.R.D. 475 (S.D. Cal. 1997).......................................................................... 19

Martinez v. City of Fresno,
2006 WL. 3762050 (E.D. Cal. 2006) .................................................................... 19

McCarty v. Bankers Ins. Co., Inc.,
195 F.R.D. 39 (N.D. Fla. 1998)............................................................................. 15

Northrop Corp. v. McDonnell Douglas Corp.,
751 F.2d 395 (D.C. Cir. 1984) ............................................................................. 11

Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,
6 F. Supp. 2d 859 (E.D. Mo. 1998)................................................................. 13, 14

State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.,
2007 WL. 2993840 (E.D.N.Y. 2007).................................................................... 13

U.S. v. American Optical Co.,
39 F.R.D. 580 (N.D. Cal. 1966) ....................................................................... 7, 11

United States v. Abel,
469 U.S. 45 (1984) ................................................................................................. 9

MATTEL, INC.'S MOTION TO COMPEL KAYE SCHOLER

## Statutes

Fed. R. Civ. P. 45.................................................................................. 1, 6, 12, 13, 19

Fed. R. Civ. P. 45(b)................................................................................... 6

Fed. R. Civ. P. 45(d)(2) ............................................................................ 18

Federal Practice & Procedure: Federal Rules of Evidence § 6095 ............................. 9

## **Preliminary Statement**

Mattel seeks discoverable, highly relevant information from Kaye Scholer LLP that it refuses to produce. Farhad Larian was a co-founder of MGA and is a former MGA executive and shareholder. In December 2000, Farhad Larian sold his forty-five percent interest in defendant MGA Entertainment, Inc. to his brother, defendant Isaac Larian. Farhad and Isaac's uncle, Morad Zarabi, determined the purchase price of Farhad Larian's interest.

According to Farhad Larian, he discovered in the Summer of 2002 that Isaac Larian had fraudulently induced him into selling his stock in MGA. Specifically, Farhad Larian alleged that in late 1999 or early 2000, Isaac Larian chose "Bratz" as a fashion doll that could compete with BARBIE, Isaac Larian developed and planned the release of Bratz throughout 2000, and Isaac Larian concealed Bratz from Farhad Larian to pay Farhad Larian an artificially low price for his stock. Unable to resolve his complaints through Mr. Zarabi, Farhad Larian sued Isaac Larian and, eventually, Mr. Zarabi as well. Kaye Scholer represented Isaac Larian during these disputes.

Facts and evidence from Farhad Larian's disputes with Isaac Larian are unquestionably relevant to this suit, as the Discovery Master has already held. Farhad Larian's allegations about Bratz's design and development in late 1999 and throughout 2000—during which times Carter Bryant was employed by Mattel— overlap with central issues in this action. In a May 15, 2007 Order, the Discovery Master found that information from the Larian v. Larian disputes was relevant and discoverable.

Mattel searched public filings in the Larian v. Larian proceedings for relevant documents. Mattel has also sought documents from MGA, Isaac Larian and other third parties involved in the Larian v. Larian proceedings. A few third parties have complied with their obligations under Federal Rule of Civil Procedure 45 and produced relevant documents. Kaye Scholer has not and refuses to produce

-1-

1  key documents in response to Mattel's Requests.  Nor have they been produced by
2  MGA despite a prior Court Order compelling MGA to do so, or by Isaac Larian.
3  Indeed, flouting the Discovery Master's Order of May 15, 2007, MGA has produced
4  just *four* documents related to the Larian v. Larian proceedings.  For his part, Isaac
5  Larian has not produced a single document on that—or any other—subject in this
6  litigation.

7          The facts and evidence relating to Farhad Larian's disputes are centrally
8  relevant not only to liability in this case, but also to damages.  For example, Mattel
9  has been unable to obtain "raw data" on which Ernest Dutcher, Mr. Zarabi's
10 appraiser, based an appraisal of MGA "through December 2000."  MGA, which
11 Isaac Larian controls as CEO and only major shareholder, produced much or all of
12 this raw data to Mr. Zarabi and/or Mr. Dutcher for the appraisal.   That appraisal
13 accounted for unidentified "hot products" that justified a twenty-five percent (25%)
14 revenue growth projection for 2001.  The "raw data" Kaye Scholer appears to
15 possess likely includes financial models with 2000 forecasts of revenue streams for
16 each item MGA sold or was planning to sell—models Isaac Larian created
17 "regularly."  Such information bears on the timing of Bratz's creation and
18 development and when Bryant introduced Bratz to MGA as well as MGA's
19 revenues from Bratz and MGA's net worth, which the District Court and the
20 Discovery Master both have held is relevant to punitive damages.

21          The Discovery Master should grant Mattel's motion and compel Kaye
22 Scholer to produce its responsive documents without further delay.

23                              **Background**

24          Mattel has set forth the background of the Larian v. Larian proceedings
25 and the Discovery Master's prior rulings on the relevance of these proceedings in its
26 motion to compel Farhad Larian to produce documents, dated December 6, 2007.
27 To avoid unnecessary repetition, Mattel respectfully directs the Discovery Master's
28 attention to that motion for additional background, which Mattel hereby

                                        -2-

incorporates by reference.  Background relating to Kaye Scholer more specifically is set forth below.

### A.   Kaye Scholer Asserted Virtually Identical Objections to Every One of Mattel's Requests And Refuses to Produce A Single Document.

Mattel subpoenaed Kaye Scholer to produce documents on September 6, 2007.[1]  The majority of Mattel's requests seek documents related to the Larian v. Larian disputes and/or issues in common between this action and those disputes.[2] Other requests seek documents related to non-Bratz trade secret allegations by Mattel and MGA,[3] Farhad Larian's relationship with MGA (including payments to him by MGA or Isaac Larian related to Bratz),[4] documents related to this action, including  Farhad Larian's involvement in this action,[5] and information about the location of responsive documents.[6]

Kaye Scholer served objections on September 18, 2007 and refused to produce a single document.[7]  Mattel sent Kaye Scholer a request to meet and confer, and the parties did so on October 11 and 29, 2007.[8]  Kaye Scholer admitted to having in excess of fifty boxes of documents potentially responsive to Mattel's requests,[9] and admitted that each document therein "arguably 'relates to  Bratz.'"[10] Kaye Scholer initially agreed to produce documents responsive to twenty-six of Mattel's thirty-five requests, but then recanted and agreed to review only pleading,

---

[1]   Albán Dec., Exh. 1 (Subpoena to Kaye Scholer).
[2]   Id., Request Nos. 1-12, 15-21.
[3]   Id., Request Nos. 13, 14, 29-32.
[4]   Id., Request Nos. 22-24.
[5]   Id., Request Nos. 25-28.
[6]   Id., Request Nos. 33-35.
[7]   Id., Exh. 2 (Kaye Scholer's Objs. to Subpoena).
[8]   Id., Exhs. 3 - 7 (Ltrs. between Albán and Delgadillo re. conference).
[9]   Id., Exh. 6 at 1 (Nov. 16, 2007 Ltr. from Albán to Delgadillo).
[10]  Id., Exh. 7 at 3 (Nov. 21, 2007 Ltr. from Delgadillo to Albán).

1   discovery and arbitration exhibit files for responsive documents.[11]   Kaye Scholer's
2   claimed rationale for this limited review was to avoid undue burden, because "most"
3   of the documents in other files (e.g., correspondence files) would fall under an
4   attorney-client privilege or work product privilege.[12]   Kaye Scholer, however,
5   refuses to produce to Mattel *any* privilege log.[13]   Kaye Scholer also refused Mattel's
6   offer to have a Quinn Emanuel paralegal inspect its case files to relieve burden on
7   Kaye Scholer, with an express agreement that it would not constitute waiver of any
8   privilege.[14]

9          Despite Kaye Scholer's initial agreement to produce at least some
10  documents, it later retracted its promise and now refuses to produce a single
11  document.[15]   Its primary contention for not producing documents at this time is that
12  *every single document* falls under the protection of two prior protective orders, with
13  a November 16, 2005 order that an arbitrator signed being of "particular concern."[16]
14  Kaye Scholer also justifies its limited inspection of its own documents under the
15  (mistaken) assumption that most or all of the documents Mattel seeks are "readily
16  obtainable" from a party to this action, are publicly available, or have already been
17  produced to Mattel.[17]

18      **B.     Kaye Scholer Possesses Responsive Documents.**

19          From Mattel's searches of public filings, third party productions and
20  Kaye Scholer's own admission about the volume of responsive documents it has in
21

22  [11]   Request Nos. 5, 7, 8, 9, 11, 12, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27,
23  28, 29, 30, 31, 32, 33, 35 and 35, See id., Exhs. 6 at 1 (Nov. 16, 2007 Ltr. from
     Albán to Delgadillo); 7 at 2-3 (Nov. 21, 2007 Ltr. from Delgadillo to Albán).
24  [12]   Id., Exh. 7 at 1 (Nov. 21, 2007 Ltr. from Delgadillo to Albán).
     [13]   Id. at 3 n.3.
25  [14]   Id., Exh. 6 at 1 (Nov. 16, 2007 Ltr. from Albán to Delgadillo).
26  [15]   Id. at 2.
     [16]   Id.
27  [17]   Id.
28

1   its possession, Mattel has reason to believe Kaye Scholer, as Isaac Larian's

2   attorneys during the <u>Larian v. Larian</u> proceedings, possesses documents highly

3   relevant to this action.  For example:

4   •    From one of the Protective Orders to which Kaye Scholer cites, among other

5   things, Mattel knows that Mr. Zarabi and Mr. Dutcher produced to Isaac and Farhad

6   Larian at least 2,590 pages of documents in May and June 2004 in response to

7   Farhad Larian's allegations regarding the conception and concealment of Bratz.[18]

8   •    Mr. Zarabi's counsel (Stern & Goldberg) confirmed in detail what it produced

9   to the Larians.  This list includes numerous items Mattel has been unable to obtain

10  through public filings or other parties, including:

11          (a)    Letters from Morad's attorneys to National Business Appraisers;

12          (b)    Four files of Morad's "confidential reconciliations;"

13          (c)    Resignation of Fred Larian as Officer and Director of MGA;

14          (d)    Packet entitled "MGA Entertainment Confidential."

15          (e)    MGA Entertainment Financial Statement for Years 2001 and 2000;

16          (f)    ABC International Bad Debts from 1997-2000;

17          (g)    Certificate of Amendment of Articles of Incorporation of ABC;

18          (h)    Fax to Daie Jaan/Fred Larian -- list of shareholders; and

19          (i)    Handwritten purchase offer between Fred and Isaac Larian - 10/2000.[19]

20  •    Isaac Larian, presumably through his attorneys during the proceedings,

21  produced documents to Mr. Zarabi for purposes of the appraisals Mr. Zarabi

22  orchestrated,  including valuations of MGA through December 31, 2000.[20]  Mr.

23

24

25

26   [18]  <u>Id.</u>, Exh. 10 (Prot. Ord. in <u>Larian v. Larian</u> dated Sep. 23, 2004).

27   [19]  <u>Id.</u>, Exh. 11 (Ltr. from Stern to Howarth dated May 21, 2004).
     [20]  <u>Id.</u>, Exhs. 12-14.  (Ltrs. between Albán and Goldberg).

28

1  Zarabi in fact gathered the necessary data to have MGA appraised primarily from
2  Isaac Larian, MGA's CEO and owner.[21]

3  •      Isaac Larian, presumably through his attorneys, received documents related to
4  Mr. Zarabi's investigations conducted between 2002 and 2003 and Mr. Dutcher's
5  appraisal of MGA in February 2003, including a letter from Isaac Larian to Mr.
6  Zarabi dated August 29, 2003.[22]  These documents are critical because they relate to
7  the appraisal of MGA that for the first time in the <u>Larian v. Larian</u> proceedings
8  valued MGA "as of December 31, 2000," and in which Mr. Dutcher projected a
9  25% revenue growth rate for 2001 because of "hot products" in development at
10 MGA.[23]

11 •      Relevant documents Isaac Larian, and thus his counsel, Kaye Scholer,
12 possesses, whether or not he provided them to Mr. Zarabi, include documents
13 relating to his meeting with MGA's Board of Directors on April 11, 2000, where he
14 asked for a separate bonus of 4% royalty on any new toy idea he personally
15 developed in MGA's 2001 line; and financial models of MGA, including from 2000,
16 which included revenue stream projections for each item MGA sold or was planning
17 to sell, and which Isaac Larian generated  "regularly."[24]

18                              <u>**Argument**</u>

19 **I.     <u>KAYE SCHOLER HAS AN OBLIGATION TO PRODUCE ALL</u>**
20        **<u>DOCUMENTS RESPONSIVE TO MATTEL'S SUBPOENA.</u>**

21            <u>Federal Rule of Civil Procedure</u> 45 obligates third parties to produce
22 documents responsive to a subpoena that a party serves on them.  <u>Fed. R. Civ. P.</u>
23 45(b), (d).  If the documents are relevant and there is good cause for their
24 production, the subpoena is enforced unless the documents are privileged or the

25 ───────────────
26 [21]  <u>Id.</u>, Exh. 15 at ¶¶ 4, 7.
   [22]  <u>Id.</u>, Exh. 12 at 1 (Oct. 16, 2007 Ltr. from Stern to Albán).
27 [23]  <u>See</u> Mattel's Mot. to Compel Farhad Larian to Produce Documents.
28 [24]  <u>Id.</u>, Ex. 16 (Ltr. from Howarth to Kaye Scholer dated April 6, 2004).

1   subpoena is unreasonable, oppressive, annoying, or embarrassing.  U.S. v. American
2   Optical Co., 39 F.R.D. 580, 583 (N.D. Cal. 1966); accord Heat and Control, Inc. v.
3   Hester Industries, Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) ("the factors required
4   to be balanced by the trial court in determining the propriety of a subpoena are the
5   relevance of the discovery sought, the requesting party's need, and the potential
6   hardship to the party subject to the subpoena.").

**A.    The Documents Mattel Seeks Are Relevant And There Is Good Cause For Their Production.**

**1.    The _Larian v. Larian_ Disputes Are Relevant.**

10          As the Discovery Master already ruled, the Larian v. Larian
11   proceedings related to the conception of Bratz and are thus relevant to this action.[25]
12   Declarations from Mr. Zarabi and Farhad Larian confirm that the conception and
13   early development of Bratz, and Isaac Larian's concealment thereof, were _key issues_
14   throughout the Larian v. Larian proceedings.[26]

15          The discovery Mattel has obtained from other sources only confirms
16   the direct relevance of those proceedings to this case.  For example, Mr. Zarabi
17   produced to the Larians documents responsive to Farhad Larian's requests related to
18   the origins of Bratz, MGA's 2000 and 2001 financial statements and Mr. Zarabi's
19   "reconciliations" related to Mr. Dutcher' s appraisals of MGA.[27]  The limited
20   information Mattel has about the appraisals indicate that, in 2000, a "hot product" in
21   development justified a more than five-fold increase in the projected rate of revenue
22   growth for 2001, and that MGA's financial statements indicate expansionary plans
23   in 2000 unprecedented in the prior four years, including taking on a current liability

24   _____

25   [25]  Id., Exh. 17 at 10-11 (Ord. dated May 15, 2007).
     [26]  Id., Exhs. 15 at ¶ 6 (Sep. 14, 2004 M. Zarabi Dec.); 18 at ¶¶ 4-7, 11 (Nov. 7,
26   2003 F. Larian Dec.).
     [27]  Id., Exhs. 19 (F. Larian Subpoena on M. Zarabi dated Sep. 19, 2003); 11 (Ltr.
27   from Stern to Howarth dated May 21, 2004).

28

-7-

1  of long-term debt about one hundred times greater than comparable debt in the prior
2  four years combined.[28]  Mattel also knows that Mr. Dutcher for the first time
3  conducted an appraisal of MGA "through December 31, 2000" as part of
4  Mr. Zarabi's response to Farhad Larian's allegations about development of Bratz in
5  2000.[29]  There can be little doubt that these proceedings are directly pertinent to
6  early Bratz and the timing of MGA's involvement with Bryant and with Bratz.  It is
7  no wonder that Kaye Scholer has acknowledged that the documents it has in its files
8  arguable relate to Bratz.

9  **2.   Mattel's and MGA's Allegations Are Relevant.**

10  Kaye Scholer also refused to produce any documents responsive to
11  requests that address non-Bratz contentions in this action.[30]  For example, Mattel
12  asked Kaye Scholer to produce documents relating to payments or offers of payment
13  by MGA, Isaac Larian or Farhad Larian to any person who was at the time
14  employed by Mattel, and contracts of employment for such persons.[31]  Mattel also
15  seeks documents related to MGA's or the Larians' knowledge and use of Mattel
16  proprietary, non-public information.[32]  Mattel alleges that MGA stole trade secrets
17  from Mattel in part by paying Mattel employees to go work for MGA and bring in
18  Mattel trade secrets in the process.[33]  These Requests could not be more relevant;
19  indeed, they are expressly alleged in Mattel's claims in this case.  MGA also has

---

23  [28]  Id., Exhs. 20 at Exh. C, ¶¶ 14-18 (Jan. 9, 2005 Dutcher Dec.); 21 at 18:14-
24  19:12 (Tr. of Audiotaped Mtg. w/ E. Dutcher dated Sep. 10, 2003).
25  [29]  Id., Exh. 15 at ¶ 7 (Sept. 14, 2004 Zarabi Dec.).
      [30]  Id., Exh. 1 at Request Nos. 13, 14, 29-32 (Subpoena to Kaye Scholer).
26  [31]  Id. at Request No. 29.
27  [32]  Id. at Request Nos. 30-32.
      [33]  Id., Exh. 22 at ¶¶ 37-77 (Mattel's Second Am. Answer).

1  contended that Bryant's work for MGA in 2000 while he was employed by Mattel
2  related to "Prayer Angel," thus putting that product at issue.[34]

### 3.  Documents About Farhad Larian's Relationship With MGA Are Relevant As To His Credibility.

5  Given Farhad Larian's long role as shareholder of MGA and his
6  subsequent Bratz-related disputes with Isaac Larian, he is also a crucial witness in
7  this action. Kaye Scholer refuses to produce any documents responsive to questions
8  going to MGA's or Isaac Larian's payments to Farhad Larian, including related to
9  Bratz, and payments to Isaac Larian related to Bratz.[35]

10  Information is relevant and discoverable if it relates to "the credibility
11  of any witness." Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.,
12  175 F.R.D. 646, 650 (C.D. Cal. 1997). Evidence of bias is also relevant and
13  discoverable. United States v. Abel, 469 U.S. 45, 50-51 (1984); see also Wright &
14  Miller, Federal Practice & Procedure: Federal Rules of Evidence § 6095 (bias is a
15  "particularly favored basis for attacking credibility," and "circumstantial evidence of
16  bias" may include evidence of the "payment of bribes or fees"). The Discovery
17  Master has already ruled that payments from MGA to Farhad Larian are relevant to
18  this action and discoverable.[36] Similarly, the Discovery Master has ordered MGA to
19  produce documents related to MGA's transfers of money or other things of value to
20  other witnesses in this action such as Carter Bryant because they go to his credibility
21  or bias.[37] If Kaye Scholer has any purported privacy concerns with respect to such
22  documents—even assuming it has standing to assert them—the Protective Order in
23  this action expressly allows it to designate documents as "Confidential" or

---

[34] Id., Exhs. 23 at 243:18-246:14 (Depo. Tr. of Paula Garcia, Vol. 1, May 24, 2004); 1 at Request Nos. 13, 14 (Subpoena to Kaye Scholer).
[35] Id., Exh. 2 at Request Nos. 22-24 (Kaye Scholer's Objs.).
[36] Id., Exh. 24 at 10-12 (Sep. 25, 2007 Order).
[37] Id., Exh. 17 at 10  (May 15, 2007 Order).

1   "Confidential – Attorney's Eyes Only."[38]  The Discovery Master has ruled more than

2   once that the Protective Order adequately addresses proprietary and privacy

3   concerns, including with respect payments of money from MGA to witnesses.[39]

4       **4.**    <u>**Farhad Larian's Communications With Mattel Are Relevant.**</u>

5       Kaye Scholer also refused to produce any documents relating Farhad

6   Larian's knowledge about this case, including communications with Mattel and

7   documents he exchanged with Mattel.[40]  The requests are relevant.  First, a witness's

8   knowledge about matters in the case are relevant.  Second, MGA and Isaac Larian

9   put these requests at issue by threatening to disqualify Quinn Emanuel from

10  representing Mattel in this action based on purported communications Quinn

11  Emanuel had with Farhad Larian when he was involved in proceedings against Isaac

12  Larian.[41]  These documents, along with the documents Farhad Larian's counsel

13  showed Quinn Emanuel at the time, are directly relevant to not only this litigation,

14  but to countering that baseless disqualification claim.

15      Kaye Scholer even refuses to identify, let alone produce, documents it

16  has that relate specifically to this action.[42]  The Request on its face seeks relevant

17  documents.

18      **5.**    <u>**The Location Of Responsive Documents Is Relevant.**</u>

19      Finally, Mattel has a right to know the whereabouts of responsive

20  documents, including if Kaye Scholer destroyed them or for any other reason no

21  longer has them.  In this respect, Kaye Scholer refuses to produce information about

22  retention of documents that at least at one point, if not now, were indisputably in

23

24  [38]  <u>Id.</u>, Exh. 25 at ¶ 3 (Jan. 4, 2005 Stip. and Protective Order).

25  [39]  <u>Id.</u>, Exhs. 17 at 11, n.4 (May 15, 2007 Order); 26 at 13-15 (Jan. 25, 2007 Order).

26  [40]  <u>Id.</u>, Exh. 2 at Request Nos. 26-28 (Kaye Scholer's Objs.).

27  [41]  <u>Id.</u>, Exh. 27 (Ltr. from Glaser to Quinn dated July 5, 2007)

28  [42]  <u>Id.</u>, Exh. 2 at Request No. 25 (Kaye Scholer's Objs.).

1  existence and in Kaye Scholer's possession.[43] Mattel also seeks an image of Farhad

2  Larian's computer hard drives for a crucial time period—January 1, 1999 to

3  December 31, 2002.[44] The Discovery Master has previously ordered production of

4  Bryant's hard drive images given the likely relevant information contained therein.[45]

## B. Mattel's Requests Are Not Unreasonable, Oppressive, Annoying or Embarrassing.

7  "The burden of showing that a subpoena is unreasonable and

8  oppressive is upon the party to whom it is directed." Goodman v. U.S., 369 F.2d

9  166, 169 (9th Cir. 1966); Flatow v. The Islamic Republic of Iran, 202 F.R.D. 35, 36

10 (D.D.C. 2001); Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403

11 (D.C. Cir. 1984). Here, Kaye Scholer does no more than assert repetitive,

12 boilerplate burden objections, irrespective of the substance of the document request.

13 Kaye Scholer admittedly already has separate case files – as law firms

14 tend to have – containing all or the vast majority of responsive documents. This

15 alone undermines Kaye Scholer's burden objections. Even if Mattel was unwilling

16 to pay for Kaye Scholer's copying costs (which it is), and even if Kaye Scholer did

17 not already have separated case files, a claim that compliance with Mattel's request

18 "would necessitate the examination of large quantities of documents, requiring a

19 great deal of time and expense . . . is not alone a sufficient reason for refusing

20 discovery which is otherwise appropriate . . . ." American Optical Co., 39 F.R.D.

21 580, 586-587 (N.D. Cal. 1966) (documents sought covered a twelve year period).

22 Even absent the American Optical standard, Mattel also offered to have

23 its own paralegal inspect documents from Kaye Scholer's boxes, with an express

24 agreement of not waiving any privileges. Kaye Scholer's summary dismissal of the

---

[43] Id., Exh. 2 at Request Nos. 34-35 (Kaye Scholer's Objs.).

[44] Id. at Request No. 33.

[45] Id., Exh. 26 at 17 (Jan. 25, 2007 Ord.).

1    offer shows Kaye Scholer's burden objections are not in good faith. Kaye Scholer

2    conclusorily suggests this offer "does nothing to alleviate [its] burden."[46] But it

3    would alleviate a significant portion of Kaye Scholer's attorney and/or paralegal

4    costs, without Kaye Scholer waiving an iota of privilege.

5              Kaye Scholer's burden objections also rely on its conclusory insistence

6    that Mattel can obtain the documents from Isaac Larian or MGA.[47] That claim is

7    factually erroneous. Mattel has attempted since March 14, 2005 to obtain

8    documents related to the Larian v. Larian proceedings directly from MGA.[48] The

9    efforts have been futile, and as far as Mattel can ascertain, even the Discovery

10   Master's Order of May 15, 2007 resulted in MGA producing just four documents

11   related to the proceedings.[49] Mattel also requested that Isaac Larian produce Larian

12   v. Larian documents.[50] To date, Isaac Larian has not produced a single responsive

13   document on that or any other subject.[51] Mattel also searched public filings in

14   Larian v. Larian and Larian v. Zarabi et al. civil lawsuits.[52] Finally, Mattel served

15   subpoenas on third parties involved in the Larian v. Larian proceedings pursuant to

16   Federal Rule of Civil Procedure 45. In addition to Kaye Scholer, Mattel served

17   subpoenas on Farhad Larian, Morad Zarabi and on the other attorneys Mattel

18   identified as involved in those proceedings.[53] These parties, however, either

19   claimed that they did not have in their possession, or refused to produce (in the case

20   of Farhad Larian), the majority of responsive documents Kaye Scholer apparently

21   has in its possession.

22

23   [46] Id., Exh. 7 at 4 (Nov. 21, 2007 Ltr. from Delgadillo to Albán).
     [47] Id. at 2.

24   [48] Id., Exh. 8, Request No. 41 (Mattel's First Set of RFPs to MGA).

25   [49] Id. ¶ 10.
     [50] Id., Exh. 9, Request Nos. 123-125 (RFPs to I. Larian dated June 13, 2007).

26   [51] Id. ¶ 11.

27   [52] Id. ¶ 12.
     [53] Id. ¶ 13.

28

1    Kaye Scholer's position further ignores its own admission that it is
2  storing portions of Isaac Larian's files for the <u>Larian v. Larian</u> proceedings.  MGA's
3  and Isaac Larian's extraordinary efforts to thwart discovery related to the <u>Larian v.</u>
4  <u>Larian</u> proceedings leaves no doubt that Mattel is entitled to discovery from the full
5  array of those involved in those proceedings.  Indeed, given that those documents in
6  storage are plainly within MGA's possession, custody or control, MGA was
7  obligated under the Discovery Master's prior order to obtain and provide them.  It
8  nevertheless has not done so.  Discovery from Kaye Scholer is necessary to ensure
9  that Mattel gets a complete production of responsive documents.

10    Kaye Scholer's position not only wholly ignores Mattel's unsuccessful
11  efforts to date to obtain documents from Isaac Larian and MGA,[54] but is also
12  contrary to federal law.  "[A] person may not avoid a subpoena by saying that the
13  evidence sought from him is obtainable from another."  <u>State Farm Mut. Auto. Ins.</u>
14  <u>Co. v. Accurate Medical, P.C.,</u>  2007 WL 2993840, at *1 (E.D.N.Y. 2007) (quoting
15  <u>Covey Oil Co. v. Continental Oil Co.,</u> 340 F.2d 993, 998 (10th Cir. 1965)); <u>see also</u>
16  <u>In re Bergeson,</u> 112 F.R.D. 692, 695 (D. Mont. 1986) (conclusory assertions that
17  documents sought are available from others more economically "does not constitute
18  a showing of unreasonableness or oppressiveness."); <u>Plant Genetic Systems, N.V. v.</u>
19  <u>Northrup King Co., Inc.,</u> 6 F. Supp. 2d 859, 861-862 (E.D. Mo. 1998) (third party
20  subpoena proper where information sought pertained to a central issue in the
21  underlying claim, it was not burdensome in light of plaintiff's diligent efforts to
22  obtain the information from defendant, and the nonparty had signed protective order
23  prohibiting disclosed information from being seen by plaintiffs counsel or
24  nonparty's competitors).

25    <u>Plant Genetic Systems</u> is also instructive with respect to Kaye Scholer's
26  objections based on confidential or private information of some unidentified third
27
28

-13-

1 part or parties.[55]   As was the case in <u>Plant Genetic Systems</u>, and consistent with the
2 Discovery Master's prior rulings in this case, Kaye Scholer can use the Protective
3 Order in this action to protect information it properly designates as "Confidential" or
4 "Confidential – Attorneys Eyes Only."

5      Kaye Scholer's attempted compromise at reducing its purported
6 burden, a compromise which led it not even to review its correspondence files, falls
7 far short of its discovery obligations.  For example, Kaye Scholer's "compromise"
8 would lead it to not even review, much less produce, non-privileged letters such as
9 an August 29, 2003 letter from Isaac Larian to Mr. Zarabi (dated in the middle of
10 Mr. Zarabi's response to Farhad Larian's allegations about Bratz),[56] or a letter from
11 Farhad Larian's attorney to Kaye Scholer detailing the evidence Farhad Larian had
12 regarding Isaac Larian's concealment of Bratz.[57]  There is no telling what critical,
13 non-privileged correspondence Kaye Scholer is withholding under the conclusory
14 pretense of undue burden.  Indeed, Kaye Scholer's burden fails at the outset.  Kaye
15 Scholer was (or is) counsel for Isaac Larian, MGA's CEO and a party to this suit.
16 Kaye Scholer represented Isaac Larian when he was accused of concealing the
17 acquisition of and development of Bratz, the product at issue here.  As majority
18 shareholder of MGA, MGA has disbursed   REDACTED           to Isaac
19 Larian since 2001, due almost exclusively to profits on Bratz.[58]  Surely having Isaac
20 Larian's counsel search for responsive documents and justify an claims of privilege
21 is not burdensome in that context.

22
23  [54]  <u>Id.</u> ¶¶ 10-11, Exhs. 8 (RFPs to MGA), 9 (RFPs to I. Larian).
     [55]  <u>Id.</u>, Exh. 2 at 1 (Kaye Scholer's Objs.).
24  [56]  See <u>supra</u>, Background § C.
     [57]  Albán Dec., Exh. 16 (Apr. 6, 2004 Ltr. from Howarth to Kaye Scholer).
25  [58]  <u>Id.</u>, Exh. 32
26
27          **REDACTED**
28

**II.    KAYE SCHOLER'S RELIANCE ON PRIOR PROTECTIVE ORDERS TO WITHHOLD _ALL_ RESPONSIVE DOCUMENTS IS MERITLESS.**

Recanting on its agreement to produce at least some documents, Kaye Scholer cites two protective orders as a pretext to withhold everything.[59]   Kaye Scholer refers to a September 23, 2004 order in the 2003 lawsuit against Isaac Larian, and a November 16, 2005 order in the 2005 court-ordered arbitration.[60] Preliminarily, it is beyond comprehension how Kaye Scholer purports to claim that _every_ responsive document, including for example its own document preservation or Farhad Larian's communications with Mattel related to _this_ litigation, fall under the prior protective orders.  Kaye Scholer casts a wide net without bothering to figure out what documents the prior protective orders actually may apply to, if any.

Second, both prior proceedings ended by November 2005.  In light of Kaye Scholer's ability to use the Protective Order in this action, there is no valid reason to withhold documents in reliance on the prior protective orders.  In fact, Farhad and Isaac Larian and MGA have agreed in principle to modify the prior orders to allow production in this action, so this is now a non-issue.[61]

**A.    Kaye Scholer Cannot Withhold Documents Originally In Control Of Isaac Larian.**

Even if the parties to the protective orders had not agreed, the vast majority if not all of the documents in Kaye Scholer's possession are not subject to the protective orders because Isaac Larian was the original party in the proceedings who possessed or controlled the documents.  See McCarty v. Bankers Ins. Co., Inc., 195 F.R.D. 39, 44 (N.D. Fla. 1998) (party possessing documents prior to entering

---

[59]  Id., Exh. 7 at 2 (Nov. 21, 2007 Ltr. from Delgadillo to Albán).
[60]  Id., Exhs. 10 (Sep. 23, 2004); 28 (Nov. 16, 2005).
[61]  Id., Exhs. 29 (Ltr. from Lever to Albán dated Dec. 6, 2007); 30 (Dec. 4-5, 2007 emails between Jon Corey and Raoul Kennedy).

1  into a protective order cannot rely on the protective order to keep them confidential).

2  It cannot be plausibly argued that the purpose of a protective order is something

3  other than to prevent **parties receiving the documents** from disclosing them without

4  confidentiality protection.  Indeed, the September 21, 2004 court-approved

5  protective order Larian now clings to recognizes this basic principle: it does not

6  apply to documents (a) obtained by the party independently of the subpoenas that

7  **Farhad Larian** issues in the action, or (b) belonging to that party or containing its

8  financial, commercial, personal or proprietary information.[62]  Isaac Larian obviously

9  did not need a subpoena from Farhad Larian to obtain financial and other documents

10  from the company he controls and owns, as part of either his defense or his

11  discovery obligations in the <u>Larian v. Larian</u> proceedings.  The protective order

12  likewise only applies to a limited set of documents. (<u>Id.</u>, Exh. A).  Yet Isaac Larian,

13  or Kaye Scholer as his attorneys, have not produced a single responsive document

14  that (i) was originally in Isaac Larian's control, such as "raw data" (financial and

15  otherwise) he gave to Mr. Zarabi and/or Mr. Dutcher between 2000 and 2004, (ii)

16  Isaac Larian withheld from the appraiser, which the appraiser declared he should

17  have had to properly evaluate Bratz (documents obviously not subject to any

18  protective order if Isaac Larian never produced them);[63] and (iii) do not fall under

19  the September 2004 protective order's limited scope.

20  **B.**      <u>**The November 2005 Protective Order Also Does Not Apply To The**</u>

21           <u>**Vast Majority Of The Documents Kaye Scholer Possesses.**</u>

22           Perhaps recognizing the obvious limitations in the September 2004

23  protective order, Kaye Scholer invokes the November 16, 2005 arbitration

24

---

25  [62]   <u>Id.</u>, Exh. 10 at ¶ 1.  The protective order Isaac Larian signed contradicts Kaye
   Scholer's conclusion that there is no support for the contention that Isaac Larian

26  cannot withhold documents he originally possessed. <u>Id.</u>, Exh. 7 at 3 n.3 (Nov. 21,
   2007 Ltr. from Delgadillo to Albán).

27  [63]   <u>Id.</u> ¶ 10, 11; Exh. 20 at ¶¶ 8, 11 (Jan. 9, 2005 Dutcher Dec.).

28

1   protective order to withhold all documents.[64]   Again, that order would not apply to
2   the documents Isaac Larian himself used as evidence in the arbitration, nor to
3   documents already in his possession or control, including the thousands of pages
4   which he gave to Mr. Zarabi long before entering into the 2005 order.   Under Kaye
5   Scholer's logic, for example, Isaac Larian could have created a financial model in
6   2000 that accounted for Bratz sales projections, before any dispute about Bratz
7   existed.   Five years later, he could convince an arbitrator that he is concerned about
8   his brother releasing that model to a competitor.   In reliance on that seemingly
9   legitimate concern, the arbitrator would sign a protective order to prevent Farhad
10  Larian from causing competitive harm to Isaac Larian's company.   Then, Isaac
11  Larian could use that protective order to *himself* never again have to produce that
12  model, no matter how relevant, in separate litigation that has its own protective
13  order Isaac Larian can use.   That is exactly the logic Kaye Scholer employs here to
14  withhold documents.   MGA, in fact, represented to the actual court-appointed
15  arbitrator in 2005 that it sought the protective order solely to prevent *Farhad Larian*
16  from disclosing confidential and proprietary information of MGA to third parties.[65]
17  MGA also represented in that petition to the arbitrator that Farhad Larian's
18  discovery at issue would "disclose exactly how MGA took 'Bratz' from idea, to
19  concept, to design, to production, how long it took, what steps MGA followed . . .
20  ."[66]   Such information could not be more relevant to the dispute here.   Certainly,
21  Isaac Larian's company would not have concealed from the arbitrator that its true
22  purpose in getting him to sign a protective order was not only to limit Farhad
23  Larian's actions, but ultimately to also protect its own CEO (or his attorneys) from
24  ever having to disclose key documents in *this* litigation, which was already active
25  when the arbitrator signed the order.   The Discovery Master has ruled on more than

26
27   [64]   Id., Exh. 7 at 2 (Nov. 21, 2007 Ltr. from Delgadillo to Albán).
     [65]   Id., Exh. 31 at 4-9 (MGA's Mot. for Protective Order dated Nov. 14, 2005).
28

1  one occasion that the Protective Order in this action adequately protects MGA's

2  proprietary information as well as witnesses' personal information.[67]

3       As just one example of Kaye Scholer's unprecedented use of the prior

4  protective orders, Kaye Scholer cannot claim that it has not produced the Dutcher

5  Declaration referenced above because of these protective orders. Mattel obtained

6  this document from a public filing in the proceedings–it was appropriately not filed

7  under seal with reference to a protective order that does not cover it.[68] Kaye Scholer

8  has no justification for withholding production of this critically relevant document.

9  **III.   KAYE SCHOLER'S PRIVILEGE CLAIMS ARE DEFICIENT AND**

10  **CONSTITUTE WAIVER OF ITS PRIVILEGE CLAIMS.**

11       Mattel would not have an issue at this point with Kaye Scholer

12  withholding documents that are legitimately attorney-client communications or

13  attorney work product. By Kaye Scholer's own admission, however, it has not even

14  bothered to review important case files for privilege, much less to produce a

15  privilege log. This is a direct violation of Rule 45(d)(2), which required Kaye

16  Scholer to provide Mattel with a sufficient basis to evaluate its claims of privilege

17  for the documents it withholds. As of now, under Kaye Scholer's wide net of

18  privilege, for example, it is withholding non-privileged correspondence from Farhad

19  Larian's counsel to Kaye Scholer directly responsive to Mattel's requests. This

20  includes a letter detailing Farhad Larian's evidence regarding MGA's involvement

21  with Bratz in late 1999 and 2000. This is but one example. Mattel simply has no

22  idea what Kaye Scholer is withholding because Kaye Scholer refuses to produce *any*

23  privilege log.

24

25  ────────────────

    [66] Id. at 5-6.

26  [67] Id., Exhs. 17 at 11, n.4 (May 15, 2007 Order); 26 at 14:20-27 (Jan. 25, 2007

27  Order).

    [68] Id. ¶ 12.

28

1    This flagrant violation of <u>Rule</u> 45 means that Kaye Scholer waived all

2  claims of privilege.  <u>Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for</u>

3  <u>Dist. of Mont.</u>, 408 F.3d 1142, 1148-1150 (9th Cir. 2005) (affirming district's

4  court's holding that party waived privilege objections by failing to provide privilege

5  log within thirty days of serving its responses);  <u>In re Imperial Corp. Of America</u>,

6  174 F.R.D. 475, 477 (S.D. Cal. 1997) (waiver rule for failure to provide privilege

7  log applies to subpoenas to third parties, such as law firms that represent party).  At

8  a minimum, the Discovery Master should compel Kaye Scholer to produce a

9  document-by-document privilege log.  <u>Gail v. New England Gas Co., Inc.</u>, 243

10  F.R.D. 28, 33 (D. R.I. 2007) ("universally accepted" means of claiming that

11  requested documents are privileged is the production of a privilege log; discussing

12  requirement for <u>Rule</u> 45 and requiring a document-by-document log); <u>Martinez v.</u>

13  <u>City of Fresno</u>, 2006 WL 3762050, at *6 (E.D. Cal. 2006) (over-generalized

14  descriptions that fail to adequately identify specific documents are insufficient in a

15  privilege log).

### Conclusion

17    For the foregoing reasons, Mattel respectfully requests that the

18  Discovery Master grant Mattel's motion and compel Kaye Scholer to produce

19  documents responsive to every request in Mattel's subpoena; overrule Kaye

20  Scholer's objections, including privilege, or if not including privilege, at a minimum

21  to provide Mattel with a document by document privilege log.

22

23  DATED:  December 10, 2007          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP

24

25                                   By_____

26                                        Jon D. Corey
                                          Attorney for Mattel, Inc.

27

28