QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]<br><br>[PUBLIC REDACTED]<br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF IMPROPERLY WITHHELD MGA DOCUMENT SHOWING MGA'S AND BRYANT'S MISREPRESENTATIONS TO THE PATENT OFFICE IN CONNECTION WITH BRATZ AND TO COMPEL 30(B)(6) TESTIMONY<br><br>Hearing Date: January 4, 2008<br>Time: 9:00 a.m.<br>Place: Telephonic<br><br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

07209/2307657.4

MOTION TO COMPEL

1 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that at a hearing or telephonic conference 3 before Discovery Master Hon. Edward Infante (Ret.) on January 4, 2008 at 9:00 4 a.m. or on such other date and at such other time as set by Judge Infante, Mattel, Inc. 5 ("Mattel") will, and hereby does, move the Court to compel MGA Entertainment, 6 Inc. ("MGA") to (1) re-produce the document previously produced by MGA bearing 7 Bates Nos. MGA 0825680-0825682, which was improperly recalled by MGA as 8 allegedly privileged and inadvertently produced; and (2) to produce a Rule 30(b)(6) 9 deponent to testify with respect to the document, since MGA refused to allow 10 deposition questioning on the document at the compelled Rule 30(b)(6) deposition 11 concerning the Topic of MGA's patent applications, among other things..

12       This Motion is made pursuant to Federal Rules of Civil Procedure 26(b) 13 on the grounds that MGA is withholding a discoverable, non-privileged document 14 that tends to show that MGA and Bryant made knowing misrepresentations to the 15 United States Patent Office in connection with Bratz.

16       This Motion is based on this Notice of Motion and Motion, the 17 accompanying Memorandum of Points and Authorities, the Declaration of Michael 18 T. Zeller, the records and files of this Court, and all other matters of which the Court 19 may take judicial notice.

### Statement of Rule 37-1 Compliance

21 The parties met and conferred regarding the subject matter of this motion on 22 December 4 and 5, 2007.

24 DATED: December 11, 2007     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By *Michael Zeller /TJ*
Michael T. Zeller
Attorneys for Plaintiff
Mattel, Inc.

07209/2307657.3

2

MOTION TO COMPEL

# TABLE OF CONTENTS

| | Page |
|---|---:|
| MEMORANDUM OF POINTS AND AUTHORITIES | 1 |
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 2 |
| ARGUMENT | 6 |
| I. THE WITHHELD DOCUMENT DEMONSTRATES DEFENDANTS KNOWINGLY ATTEMPTED TO MISLEAD THE PATENT OFFICE, AND SHOWS THEIR LACK OF CREDIBILITY | 6 |
| II. THE WITHHELD DOCUMENT IS NOT PRIVILEGED | 8 |
|     A. The Fax Cover Sheet Is Neither Privileged Nor Work Product | 8 |
|     B. The Drawings Attached to The Fax Are Not Privileged | 9 |
|     C. The Drawings Attached to the Fax Are Not Work Product | 11 |
| III. MGA'S INSTRUCTIONS NOT TO ANSWER SHOULD BE OVERRULED AND MGA SHOULD BE COMPELLED TO PRODUCE ITS 30(B)(6) DESIGNEE TO TESTIFY ABOUT THE DRAWINGS | 12 |
| CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page**

### Cases

Amsted Indust., Inc. v. National Castings, Inc.,
  1990 WL. 103286 (N.D. Ill. July 13, 1990) ................................................. 9

Brimley v. Hardee's Food Systems, Inc.,
  1995 WL. 51177 (S.D.N.Y. 1995) ............................................................. 10

Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.,
  175 F.R.D. 646 (C.D. Cal. 1997) ................................................................ 7

City of Philadelphia, Pa. v. Westinghouse Elec. Corp.,
  205 F. Supp. 830-31 (D.C. Pa. 1962) ......................................................... 9

Conner Peripherals, Inc. v. Western Digital Corp.,
  1993 WL. 726815 (N.D. Cal. 1993) .......................................................... 11

Feshbach v. S.E.C.,
  5 F. Supp. 2d 774 (N.D. Cal. 1997) .......................................................... 10

Garcia v. City of El Centro,
  214 F.R.D. 587 (S.D. Cal. 2003) ................................................................ 7

In re Grand Jury Investigation,
  974 F.2d 1068 (9th Cir. 1992) .................................................................... 7

Hercules Inc. v. Exxon Corp.,
  434 F. Supp. 136 (D.C. Del. 1997) ........................................................... 11

Hickman v. Taylor,
  329 U.S. 495 (1947) ................................................................................. 10

McCaugherty v. Siffermann,
  132 F.R.D. 234 (N.D. Cal. 1990) ................................................................ 7

McCook Metals L.L.C. v. Alcoa Inc.,
  192 F.R.D. 242 (N.D. Ill. 2000) ............................................................ 8, 10

National Union Fire Ins. v. Murray Sheet Metal,
  967 F.2d 980 (4th Cir. 1992) .................................................................... 11

U.S. v. Martin,
  278 F.3d 988 (9th Cir. 2002) ...................................................................... 8

United States v. Lawless,
  709 F.2d 485 (7th Cir. 1983) ...................................................................... 9

United States v. Munoz,
  233 F.3d 1117 (9th Cir. 2000) .................................................................... 7

| | |
|---|---|
| United States v. Muscony, 927 F.2d 742 (3rd Cir. 1991) | 10 |
| United States v. Torf, 357 F.3d 900 (9th Cir. 2004) | 11 |
| Upjohn Co. v. U.S., 449 U.S. 383, 101 S. Ct. 677 (1981) | 9 |
| Weil Ceramics & Glass, Inc. v. Work, 110 F.R.D. 500 (E.D.N.Y. 1986) | 10 |

**Statutes**

| | |
|---|---|
| 25 U.S.C. § 102(b) | 5, 6 |
| Fed. R. Civ. P. 26(b)(3) | 8, 10, 11 |
| Fed. R. Civ. P. 30(b)(6) | 1, 2, 5, 12 |

**Other Authorities**

| | |
|---|---|
| HAWES AND DWIGHT, 2 Trademark Registration Practice 2007 at § 18:5 | 10 |
| WRIGHT, MILLER, AND MARCUS, 8 Federal Practice and Procedure Civil 2d § 2024 | 8 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA has clawed back yet another key document it previously produced based on an improper claim of attorney-client privilege. This time, the document at issue is a fax from a third-party vendor, Bobby Newquist, to MGA's patent prosecution attorney at the time, Alan Rose. The fax consists of a standard fax cover sheet with attached technical drawings of ███████████████. The attached drawings are ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

As the Discovery Master knows, the Patent Office will not issue patents where an application is submitted more than a year after the invention was first sold to the public. Based on that on-sale bar rule, the Patent Office ultimately rejected MGA's 2003 application based on its finding that MGA had been selling Bratz dolls since 2001 with the same changeable footgear configuration that it sought to patent.

As explained more fully below, the withheld drawings evidence that MGA knowingly decided -- from the outset of the application process -- to attempt to mislead the Patent Office into believing that the changeable footgear it sought to patent was not the same as the configuration on the Bratz dolls it had been selling for over a year before the application. Thus, it directly bears on MGA's credibility, and impeaches MGA's sworn statements. It also shows Bryant's lack of credibility and his complicity in MGA's attempts to mislead the Patent Office, as he submitted a declaration in support of MGA's application, falsely swearing that the Bratz dolls with the configuration set forth in the application were not sold until 2002.

Originally, during the deposition of Bryan Armstrong, MGA's Rule 30(b)(6) designee, MGA claimed this document was privileged in its entirety and demanded its return. However, the cover sheet does not contain any confidential information, nor was it transmitted for the purpose of seeking legal advice. Recognizing that, MGA subsequently conceded during the meet and confer process that it had to re-produce the cover sheet to Mattel.

However, MGA continues to refuse to re-produce the attached drawings, claiming both attorney-client privilege and work product. The drawings are not privileged. They contain no communications whatsoever, nor do they contain or reflect any legal advice. Technical information such as this is not privileged. Moreover, these drawings were clearly prepared for the purpose of submitting them to the Patent Office and thus there was no reasonable expectation that these drawings would remain confidential.

MGA's assertion of privilege over this document is improper and merely an attempt to conceal facts showing its deliberate attempts to mislead the Patent Office about Bratz. Accordingly, the Court should order MGA to re-produce the fax cover sheet and attached drawings. It also should order MGA to produce an educated witness who can testify about the document since MGA's claw-back of the document at deposition also precluded Mattel from asking questions about it at the MGA Rule 30(b)(6) deposition that the Discovery Master previously compelled.

### Statement of Facts

<u>MGA Retracts Previously Produced Documents at Deposition</u>. On July 18 and August 1, 2007, Mattel deposed Bryan Armstrong, MGA's Rule 30(b)(6) designee on Topic 33 relating to trademark and patent applications (among other subjects).[1]  MGA had been compelled by the Discovery Master's Order of May 16,

---

[1] Deposition of Bryant Armstrong, dated July 18, 2007 ("Armstrong Depo.") at 35:20-36:19, attached as Exhibit 1 to the Declaration of Michael T. Zeller dated December 10, 2007 ("Zeller Dec.").

1  2007 to provide a witness on this topic.[2] At Mr. Armstrong's deposition, Mattel
2  attempted to question Mr. Armstrong regarding a document MGA had produced
3  bearing Bates numbers MGA 0825680-0825682.[3] MGA, however, recalled the
4  document on the spot under the Protective Order, claiming it was privileged and
5  inadvertently produced.[4]

6         On August 17, 2007, MGA sent a letter to Mattel, again asserting that
7  the document is protected by the attorney-client privilege and was inadvertently
8  produced.[5] MGA did not assert the work product privilege in its letter as it now
9  purports to do.[6] Pursuant to the Protective Order, Mattel destroyed its copies of the
10 document and so confirmed by letter dated August 22, 2007.[7]

11        <u>The Document at Issue.</u>  The document at issue consists of a fax cover
12 sheet with attached drawings sent by Bobby Newquist, of the Newquist/Hill Patent
13 and Trademark Illustrations Company, a third-party vendor, to Alan Rose, MGA's
14 patent prosecution counsel at the time.[8] The attached drawings depict ▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮.[9]

16        MGA submitted a patent application for a "Doll With Aesthetic
17 Changeable Footgear" to the Patent Office on February 24, 2003, listing Isaac

---

[2] Order Granting Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses for Deposition Pursuant to <u>Rule</u> 30(b)(6), dated May 16, 2007.
[3] Armstrong Depo. at 316:8-321:8, Zeller Dec., Exh. 1.
[4] Id.
[5] Letter from Chris D. Nguyen to Timothy L. Alger, dated August 17, 2007, Zeller Dec., Exh. 2.
[6] Id.
[7] Letter from Heidi Frahm to Chris Nguyen, dated August 23, 2007, Zeller Dec., Exh. 3. The Protective Order makes clear that a party's return of documents that are the subject of an inadvertent production claim does not constitute an admission that such documents are in fact privileged. Stipulated Protective Order, dated January 4, 2005 at ¶ 13.
[8] Zeller Dec. at ¶ 2; <u>see also</u> Armstrong Depo. at 317:9-319:13, Zeller Dec., Exh. 1.
[9] Zeller Dec. at ¶ 2.

1  Larian as the sole inventor.[10] ▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮.
3  ▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮▮▮▮▮▮▮.[11]  According to MGA's designee Mr.
5  Armstrong, however, the changeable footgear that was the subject of MGA's patent
6  application ▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮.[12]  Thus, MGA appears to have ▮▮▮
8  ▮▮▮▮▮ it actually submitted to the Patent Office in an improper, and
9  knowing, attempt from the start to mislead the Patent Office into believing that the
10 application did not pertain to Bratz so as to avoid the on-sale bar rule.
11             The Patent Office nevertheless caught on, and on May 12, 2003, it
12 issued a Non-Final Office Action, rejecting the claims MGA's application based in
13 part on its finding that the changeable footgear MGA sought to patent had been sold
14 in commerce on Bratz dolls for more than a year prior to the filing of the patent
15 application.[13]
16             In its response to the Non-Final Office Action, MGA enlisted Carter
17 Bryant to assist in its further efforts to mislead the Patent Office.  In August 2003,
18 Bryant submitted a declaration to the Patent Office, swearing that the release of the
19 Bratz dolls with the changeable footgear set forth in the patent application "did not
20 occur until the fall of the year 2002."[14]  MGA's <u>Rule</u> 30(b)(6) designee
21 acknowledged at deposition that ▮▮▮▮▮▮▮▮▮▮

---

[10] Armstrong Depo. at 222:7-223:20; 227:16-23, Zeller Dec., Exh. 1; <u>see also</u> United States Patent Application for Doll with Aesthetic Changeable Footgear, Zeller Dec., Exh. 4.
[11] Zeller Dec. at ¶ 6; <u>see also</u> Armstrong Depo. at 233:10-234:10, Zeller Dec., Exh. 1.
[12] Armstrong Depo. at 228:24-229:8; 245:16-246:14, Zeller Dec., Exh. 1.
[13] <u>See</u> Non-Final Office Action, Zeller Dec., Exh. 5.
[14] Declaration of Carter Bryant, Zeller Dec., Exh. 7; <u>see also</u> Armstrong Depo. at 246:16-247:4.

1  ████████████████████████████████████████████████████████

2  ████████████████.[15] In his Declaration to the Patent Office, Bryant also went

3  along with MGA's representation to the Patent Office that Larian was the sole

4  inventor of the changeable footgear, even though it directly contradicts Bryant's

5  testimony in this case that Bryant in fact invented the concept of changeable

6  footgear for the Bratz dolls,[16] and indeed did so supposedly well before he claims to

7  have ever met Larian.

8         The Patent Office saw through Bryant's declaration as well and again

9  rejected the claims in MGA's application. This time the Patent Office issued a Final

10 Office Action dated October 28, 2003, rejecting the application under the on-sale

11 bar rule based on its finding that the changeable footgear had been sold in commerce

12 on Bratz dolls since 2001 and thus for more than a year prior to MGA's filing of the

13 patent application.[17]

14        The Parties' Meet and Confer. On October 29, 2007 Mattel informed

15 MGA that, contrary to its assertion, the fax cover sheet and drawings are not

16 privileged and should be re-produced, along with a designee to testify about them.[18]

17 After the stay sought by MGA due to its change in counsel expired, the parties met

18 and conferred on December 4 and 5, 2007. MGA agreed, after considering Mattel's

19 authorities, to re-produce the fax cover sheet, but refused to produce the drawings.[19]

---

[15] Armstrong Depo. at 228:24-229:8; 245:16-246:14, Zeller Dec., Exh. 1.
[16] Deposition of Carter Bryant, dated November 4-8, 2005 ("Bryant Depo"), Zeller Dec., Exh. 11 at 341:18-344:7.
[17] See Final Office Action, Zeller Dec., Exh. 6.
[18] Letter from Michael Zeller to Thomas Nolan, dated October 29, 2007 at 10, Zeller Dec. Exh. 8.
[19] Letter from Amy Park to Dylan Proctor, dated December 5, 2007, Zeller Dec., Exh. 9; Letter from Amy Park to Dylan Proctor, dated December 6, 2007, Zeller Dec., Exh. 10.

<u>Argument</u>

I. **<u>THE WITHHELD DOCUMENT DEMONSTRATES DEFENDANTS KNOWINGLY ATTEMPTED TO MISLEAD THE PATENT OFFICE FROM THE OUTSET, AND SHOWS THEIR LACK OF CREDIBILITY</u>**

MGA submitted its patent for a doll with changeable footgear on February 24, 2003, claiming Isaac Larian as the sole inventor.[20] According to Mr. Armstrong, MGA's <u>Rule</u> 30(b)(6) designee on the topic, the changeable footgear that was the subject of MGA's patent application is identical to the changeable footgear that MGA had been selling on Bratz dolls since 2001.[21] Thus, under 25 U.S.C. § 102(b), by the time MGA submitted its patent application in 2003, the changeable footgear was no longer patentable. <u>See</u> 25 U.S.C. § 102(b) (patent will not issue if "the invention was . . . in public use or on sale in this country, more than one year prior to the date of application for patent in the United States").

MGA attempted to conceal this fact from the Patent Office in a manner that is directly relevant here. It jettisoned its ████████████████████████████████████████████████████████████████, so as to obscure the fact that the changeable footgear was identical to the footgear already sold with the first wave of Bratz dolls.[22] Then, after the Patent Office issued a non-final rejection based in part on its finding that the changeable footgear claimed in the patent application had been sold in commerce on Bratz dolls for more than a year prior to the filing of the

---

[20] Armstrong Depo. at 222:7-20; 227:16-23, Zeller Dec., Exh. 1; <u>see also</u> United States Patent Application for Doll with Aesthetic Changeable Footgear, Zeller Dec., Exh. 4.
[21] Armstrong Depo. at 228:24-229:8; 245:16-246:14, Zeller Dec., Exh. 1.
[22] <u>See</u> United States Patent Application for Doll with Aesthetic Changeable Footgear, Zeller Dec., Exh. 4.

application,[23] MGA enlisted Carter Bryant to submit a declaration to the Patent Office, which falsely swore that the release of the Bratz dolls with the changeable footgear claimed in the patent application "did not occur until the fall of the year 2002."[24] The fax and drawings at issue here, ███████████,[25] tends not only to establish further the falsity of MGA's and Bryant's sworn claims to the Patent Office, but shows that MGA had deliberately sought to conceal that fact from the Patent Office from the outset and even before the application's filing. Bryant also appears to have been complicit in MGA's false representation that Isaac Larian was the sole inventor of the changeable footgear, even though Bryant specifically testified at deposition that Bryant invented the concept of changeable footgear for the Bratz dolls in 1998,[26] well before he purportedly ever met Larian.

      The withheld drawings thus evidence Bryant's lack of credibility - including as to their origins and development - and are thus clearly discoverable. See Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc., 175 F.R.D. 646, 650 (C.D. Cal. 1997) (information is discoverable if it relates to "the credibility of any witness"). That MGA ███████████████████ even before it submitted its application to the Patent Office and even before it enlisted Bryant to submit a false declaration to the Patent Office also tends to prove that MGA, from the start, deliberately sought to conceal the fact that the footgear it claimed in the patent application was identical to the Bratz dolls MGA had been selling since 2001. The drawings MGA clawed back also clearly show MGA's lack of credibility as well.

---

[23] See Non-Final Office Action, Zeller Dec., Exh. 5.
[24] Declaration of Carter Bryant, dated February 24, 2007, Zeller Dec., Exh. 7; see also Armstrong Depo. at 246:16-247:4.
[25] Zeller Dec., ¶ 6.
[26] Deposition of Carter Bryant, dated November 4-8, 2005 ("Bryant Depo"), Zeller Dec., Exh. 11 at 341:18-344:7.

## II. THE WITHHELD DOCUMENT IS NOT PRIVILEGED

As the party asserting attorney-client privilege, MGA bears the burden of establishing that the privilege applies. See United States v. Munoz, 233 F. 3d 1117, 1128 (9th Cir. 2000) (burden is on the party asserting the privilege to establish all of its elements); In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir. 1992); see also Garcia v. City of El Centro, 214 F.R.D. 587, 591 (S.D. Cal. 2003) ("[t]he party asserting the work product privilege bears the burden of proving that the material withheld meets the standards established for material to be classified as work product"); McCaugherty v. Siffermann, 132 F.R.D. 234, 246 (N.D. Cal. 1990) ("the law clearly places on the party who seeks to avoid disclosure through the work product doctrine the burden of making a showing sufficient to support findings on all the elements that must be established for protection to apply"). The elements of the attorney-client privilege are: (1) when legal advice is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived. U.S. v. Martin, 278 F. 3d 988, 999 (9th Cir. 2002). To qualify as work product, the materials must be: (1) "documents and tangible things;" (2) "prepared in anticipation of litigation or for trial;" and (3) "by or for another party or by or for that other party's representative." Wright, Miller, and Marcus, 8 Federal Practice and Procedure Civil 2d § 2024 (citing Fed. R. Civ. P. 26(b)(3)). MGA cannot show either.

### A. The Fax Cover Sheet Is Neither Privileged Nor Work Product

The first page of the document is merely a standard fax cover sheet sent by Mr. Newquist, a third-party vendor, to Mr. Rose, MGA's patent attorney.[27] As

---

[27] Zeller Dec. at ¶ 2.

-8-

1 | MGA has conceded, it is not privileged and is discoverable.[28] Mattel has not yet
2 | received it however, so MGA should be compelled to produce it.

### B. The Drawings Attached to The Fax Are Not Privileged

The drawings are also not privileged for two reasons. First, the drawings are ▮▮▮▮▮ and contain no substantive written communications.[29] Indeed, the drawings "themselves contain no request for legal advice, nor is any given, and thus fall outside the ambit of the privilege." <u>McCook Metals L.L.C. v. Alcoa Inc.</u>, 192 F.R.D. 242, 255 (N.D. Ill. 2000) (holding technical drawings and sketches, tables and test results sent by inventors to patent attorneys are not privileged, regardless of whether they are attachments to letters in response to a request for information or freestanding, because they do not contain a request for legal advice); <u>Amsted Indust., Inc. v. National Castings, Inc.</u>, 1990 WL 103286, at *4 (N.D. Ill. July 13, 1990) (holding transmittal of technical drawing from client to attorney does not imply a request for legal advice, and thus drawing is not privileged).

MGA's argument that these drawings are privileged also proves too much. According to MGA, it need not produce ▮▮▮ drawings merely because they were sent by a vendor to an attorney. Even if the contents of the communications between the attorney and vendor were privileged, the drawings that were transmitted are not. Just as one cannot shield a <u>fact</u> merely by communicating it to counsel, one cannot shield a drawing or object simply by sending it to a lawyer. See <u>Upjohn Co. v. U.S.</u>, 449 U.S. 383, 395-96, 101 S. Ct. 677 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."); see also <u>City of Philadelphia, Pa. v. Westinghouse Elec. Corp.</u>, 205 F. Supp. 830-31 (D.C. Pa. 1962) ("[T]he

---

[28] Letter from Amy Park to Dylan Proctor, dated December 5, 2007, Zeller Dec., Exh. 10.
[29] Zeller Dec., ¶ 2.

1  protection of the privilege extends only to *communications* and not to facts.  A fact
2  is one thing and a communication concerning that fact is an entirely different thing.
3  The client cannot be compelled to answer the question, 'What did you say or write
4  to the attorney?' but may not refuse to disclose any relevant fact within his
5  knowledge merely because he incorporated a statement of such fact into his
6  communication to his attorney.").

7         Independently, the drawings are not privileged because they clearly
8  were prepared for the purpose of submitting them to the Patent Office.  There could
9  not have been any reasonable expectation that these drawings would remain
10 confidential, and thus the privilege does not apply.  See, e.g., United States v.
11 Lawless, 709 F.2d. 485, 487 (7th Cir. 1983) ("[I]f the client transmitted the
12 information so that it might be used on the tax return, such a transmission destroys
13 any expectation of confidentiality."); United States v. Muscony, 927 F.2d 742, 752
14 (3rd Cir. 1991) ("If the client intended the matter to be made public, the requisite
15 confidentiality is lacking.  For example, information communicated by a client
16 which he knew would be disclosed in legal documents, such as complaints, or in
17 settlement negotiations is outside the privilege."); Brimley v. Hardee's Food
18 Systems, Inc., 1995 WL 51177 (S.D.N.Y. 1995) ("[I]f a client employed an attorney
19 both to advise the client and to communicate the client's position to another party,
20 the privilege does not extend to the portion of the client's communication with the
21 lawyer that constitutes the substance of what the client intends the lawyer to
22 communicate to the third party"); Weil Ceramics & Glass, Inc. v. Work, 110 F.R.D.
23 500, 503 (E.D.N.Y. 1986) ("The party claiming the privilege must clearly show that
24 a document renders legal advice and does not, for example, merely contain facts
25 later disclosed in a patent or trademark application."); McCook Metals, 192 F.R.D.
26 at 252 (finding that in the patent context, attorney-client privilege allows protection
27 only for attorney-client communications that are clearly seeking or giving legal
28 advice, but need not allow the privilege for other types of attorney-client

communications, "such as transmittal of business or technical information, or information that is intended to be disclosed to a third party in unedited form"); Hawes and Dwight, 2 Trademark Registration Practice 2007 at § 18:5 ("Information of a factual nature intended by the client to be transmitted to the PTO is not privileged.").

### C. The Drawings Attached to the Fax Are Not Work Product

The work product privilege only protects from disclosure "'the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation' as well as documents 'prepared in anticipation of litigation.'" Feshbach v. S.E.C., 5 F. Supp. 2d 774, 781-782 (N.D. Cal. 1997); see also Hickman v. Taylor, 329 U.S. 495 (1947); Fed. R. Civ. P. 26(b)(3). MGA cannot rely on the work product privilege here because the drawings do not contain any legal advice, impressions, or theories, nor were they prepared in anticipation of litigation.

The drawings at issue were not prepared in anticipation of litigation. This is evidenced by the fact that Mr. Newquist sent the drawings to MGA's patent prosecution attorney, as opposed to MGA's litigation counsel. Clearly, the drawings were prepared for the purpose of filing a patent application with the Patent Office and not for any litigation purposes. Thus, they are not protected. See Hercules Inc. v. Exxon Corp., 434 F. Supp. 136, 152 (D.C. Del. 1997) (work product immunity does not apply to documents prepared during nonadversarial ex parte patent applications if the primary concern is with claims raised in patent prosecution); National Union Fire Ins. v. Murray Sheet Metal, 967 F.2d 980, 984 (4th Cir. 1992) ("materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3)"); see also United States v. Torf, 357 F.3d 900, 908 (9th Cir. 2004) ("anticipation of litigation" has

been defined in the Ninth Circuit as preparation of a document "because of the prospect of litigation").

In the patent application context, some courts have held that the work product privilege applies in limited circumstances, such as when the "documents [are] prepared in anticipation of proceedings before the Board of Patent Interferences." Conner Peripherals, Inc. v. Western Digital Corp., 1993 WL 726815 at * 4 (N.D. Cal. 1993) (citing Hercules, 434 F. Supp. at 151). In the context of nonadversarial ex parte patent applications, "the work product immunity applies if the primary concern of the attorney is with future litigation rather than the ongoing patent application prosecution." Id. Neither of these limited exceptions applies here. There is no evidence that the drawings were prepared in anticipation of proceedings before the Board of Patent Interferences. Moreover, there is no evidence that the primary concern in creating the drawing was for future litigation. The work product doctrine does not apply.

### III. MGA'S INSTRUCTIONS NOT TO ANSWER SHOULD BE OVERRULED, AND MGA SHOULD BE COMPELLED TO PRODUCE ITS 30(B)(6) DESIGNEE TO TESTIFY ABOUT THE DRAWINGS

Mr. Armstrong was MGA's Rule 30(b)(6) designee on trademark and patent applications - a Topic that the Discovery Master previously compelled MGA to provide testimony on. At Mr. Armstrong's deposition, Mattel attempted to question him about the document now at issue, namely the fax cover sheet and the drawings.[30] MGA, however, improperly asserted privilege and withdrew the documents on the spot, preventing Mattel from questioning Mr. Armstrong about the drawings.[31] The drawings are not privileged for the reasons discussed above.

---

[30] Armstrong Depo. at 316:8-321:13, Zeller Dec., Exh. 1.
[31] Id. at 317:9-319:19.

-12-

1 | Therefore, MGA should be ordered to re-produce the document in its entirety and
2 | provide a 30(b)(6) witness who can testify about its contents.

### Conclusion

For the foregoing reasons, the Court should compel MGA to produce the document bearing Bates Nos. MGA 0825680-0825682 and a qualified designee to testify about it.

DATED: December 11, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By */s/ Michael Zeller / TJ*
Michael Zeller
Attorneys for Plaintiff
Mattel, Inc.