EXHIBIT 1

# CONFIDENTIAL - FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 2

Received:    8/17/07   3:41PM;    310 246 6779 -> QUINN EMANUEL;   Page 2
AUG-17-2007   17:41        C  LVENY & MYERS CC11                310 246 6779    P.02/02

**O**

## O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 1999 Avenue of the Stars | NEW YORK |
| BRUSSELS | Los Angeles, California 90067-6035 | SAN FRANCISCO |
| HONG KONG | TELEPHONE (310) 553-6700 | SHANGHAI |
| LONDON | FACSIMILE (310) 246-6779 | SILICON VALLEY |
| LOS ANGELES | www.omm.com | TOKYO |
| NEWPORT BEACH | | WASHINGTON, D.C. |

OUR FILE NUMBER
0527436-004

WRITER'S DIRECT DIAL
(213) 430-6389

August 17, 2007

WRITER'S E-MAIL ADDRESS
cnguyen@omm.com

<u>VIA FACSIMILE</u>

Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:     *Bryant v. Mattel, Inc and Consolidated Actions.*
          *Case No. CV 04-09049 SGL (RNBx)*

Dear Mr. Alger:

As identified during the deposition of Bryan Armstrong on August 1, 2007, MGA inadvertently produced to Mattel documents bearing Bates Nos. MGA 0825680-2 and MGA 0825683. These documents are protected by attorney-client privilege.

Pursuant to Section 13 of the Stipulated Protective Order in this litigation, please return to MGA the original disc on which these documents were produced and all copies of these documents in your possession. Also, please destroy any electronic copies of these documents.

Once you have taken the described actions, please send written confirmation that you have done so. Alternatively, please represent to us that all copies, including electronic and paper copies, of these documents have been destroyed.

Thank you for your anticipated compliance.

Sincerely,

Chris D. Nguyen
for O'MELVENY & MYERS LLP

cc:     Michael Page, Esq. (letter only via facsimile)
          James Spertus, Esq. (letter only via facsimile)

LA2:839731.1

EXHIBIT __2__  PAGE __51__

Received:   8/17/07   5:40PM;
AUG-17-2007   17:40      (   .VENY & MYERS CC11            310 246 6779 -> QUINN EMANUEL;   Page 1
                                                                        310 246 6779    P.01/02

# O'MELVENY & MYERS LLP

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407

## FAX TRANSMITTAL

**DATE & TIME:**
Friday, August 17, 2007

**TOTAL NUMBER OF PAGES:**

| TO: | FAX NUMBER: | TELEPHONE NUMBER: |
|---|---|---|
| Timothy L. Alger, Esq. -<br>QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP | (213) 443-3100 | (213) 443-3000 |
| Michael H. Page, Esq. -<br>KEKER & VAN NEST LLP | (415) 397-7188 | (415) 391-5400 |
| James W. Spertus, Esq.<br>LAW OFFICES OF JAMES W. SPERTUS | (310) 826-4711 | (310) 826-4700 |

| FROM: | RETURN FAX NUMBER: | TELEPHONE NUMBER: |
|---|---|---|
| Chris D. Nguyen | (213) 430-6407 | (213) 430-6389 |

## MESSAGE

**IF YOU DID NOT RECEIVE ALL PAGES, PLEASE CALL OUR FAX DEPARTMENT AT (213) 430-6357.**

| | | | |
|---|---|---|---|
| FILE NO.: | 527,436-004 | RETURN ORIGINAL TO: | C. Kelley Canning |
| USER NO.: | 15823 | EXTENSION: | 6564 |
| RESPONSIBLE ATT'Y NAME: | Chris D. Nguyen | LOCATION: | 11S6 |
| SPECIAL INSTRUCTIONS: | | | |

This document is intended for the exclusive use of the addressee. It may contain privileged, confidential, or non-disclosable information. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy, or distribute it. If you have received this document by mistake, please call us promptly and securely dispose of it. Thank you.

LA2:838806

EXHIBIT **2** PAGE **52**

# EXHIBIT 3

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3917

WRITER'S INTERNET ADDRESS
heidifrahm@quinnemanuel.com

August 23, 2007

**VIA FACSIMILE AND U.S. MAIL**

Chris D. Nguyen, Esq.
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, California  90071

Re:     Mattel, Inc. v. MGA Entertainment, Inc.

Dear Mr. Nguyen:

       I write in response to your letter of August 7, 2007.  In that letter, you requested that Mattel return documents that you claim are protected by the attorney-client privilege, but MGA inadvertently produced.  Those documents bear Bates Numbers MGA 0800973 - 0800974 and MGA 0829296 - 0829305.

       Pursuant to Section 13 of the Stipulated Protective Order, I certify that we have destroyed any and all paper and electronic copies of these documents that were provided to us.

Very truly yours,

Heidi Frahm

Cc: Timothy L. Alger, Esq.
    Diana M. Torres, Esq.
    Patricia L. Glaser, Esq.
    Michael Page, Esq.

EXHIBIT ___2___ PAGE __53__

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5050 FAX 650-801-5100

07975/2201761.1

# EXHIBIT 4

Matter No. 15904-142

UNITED STATES PATENT APPLICATION

For

## DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR

Inventor:   Isaac Larian

OPPENHEIMER

OPPENHEIMER WOLFF & DONNELLY LLP
2029 Century Park East, Suite 3800
Los Angeles, California 90067
(310) 788-5000
Fax (310) 788-5100

Attorney Matter No. 15904-142



LA: 333498 v01 02/13/2003.

EXHIBIT __4__ PAGE 54

MGA 0825485

# DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR

## FIELD OF THE INVENTION

[0001]  This invention relates to dolls or toy figures with changeable footgear.

## BACKGROUND OF THE INVENTION

[0002]  It has previously been proposed to make dolls with shoes, boots or footgear
which may be changed, and patents which relate to such arrangements include the
following:

[0003]
| L. Schmetzer | U.S. Pat. No. 187,322 | Granted February 13, 1877 |
| G. Doebrich | U.S. Pat. No. 831,330 | Granted September 18, 1906 |
| F. Steiff | U.S. Pat. No. 898,018 | Granted September 8, 1908 |
| P.H. Young | U.S. Pat. No. 2,175,789 | Granted October 10, 1939 |
| G.H. Calverley | U.S. Pat. No. 2,662,335 | Granted December 15, 1953 |
| S.F. Speers et al. | U.S. Pat. No. 3,475,042 | Granted October 28, 1969 |
| H.J. Solson et al. | U.S. Pat. No. 3,624,960 | Granted December 7, 1971 |
| Goldfarb et al. | U.S. Pat. No. 3,782,027 | Granted January 1, 1974 |
| Port | U.S. Pat. No. 4,030,240 | Granted June 21, 1977 |
| Lambert | U.S. Pat. No. 4,137,115 | Granted January 30, 1979 |
| Rahmstorf | U.S. Pat. No. 4,185,412 | Granted January 29, 1980 |
| Keiji | U.S. Pat. No. 4,643,691 | Granted February 17, 1987 |
| Schiavo et al. | U.S. Pat. No. 4,729,751 | Granted March 8, 1988 |
| Fogarty et al. | U.S. Pat. No. 1,186,673 | Granted February 16, 1993 |
| Larson | U.S. Pat. No. 5,588,895 | Granted December 31, 1996 |
| Kulchyski | U.S. Pat. No. 5,803,787 | Granted September 8, 1998 |
| Toft | U.S. Pat. No. 6,179,685 | Granted January 30, 2001 |
| Asmussen et al. | U.S. Pat. No. 6,203,396 | Granted March 20, 2001 |

[0004]  In reviewing these patents, the appearance of the resultant dolls or figures is
relatively "clunky" and not aesthetically pleasing.

## SUMMARY OF THE INVENTION

[0005]  In accordance with the present invention a more aesthetically pleasing and
elegant doll with changeable footgear, includes open work shoes with exposed portions
of the feet matching the color and texture of the exposed legs; and straps of the shoes
extend around the lower legs at the separation point where the removable foot/shoe
assemblies mate with the lower leg.  With this configuration, the straps of the shoes
conceal the joint between the leg and the foot/shoe assembly, resulting in a more
realistic and elegant doll construction.

-1-

EXHIBIT  4   PAGE  55

MGA 0825486

Matter No. 15904-142

[0006]   Additional features which may be included would involve the use of colored shoes and shoe straps which contrast sharply with the exposed skin areas of the foot; and snap-in mechanical arrangements for assembling the shoe/foot assemblies to the legs of the doll.

[0007]   Other objects, features and advantages will become apparent from a consideration of the following detailed description, and from the accompanying drawings.

**BRIEF DESCRIPTION OF THE DRAWINGS**

[0008]   Fig. 1 shows a doll provided with changeable shoes or footgear, illustrating the principles of the invention;

[0009]   Fig. 2 is an enlarged cross-sectional view taken along the plane indicated at 2-2 of Fig. 1; and

[0010]   Figs. 3 – 5 illustrate alternative shoes or foot/shoe assemblies shown mounted on one leg of the doll of Fig. 1.

**DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS**

[0011]   While the specification describes particular embodiments of the present invention, those of ordinary skill can devise variations of the present invention without departing from the inventive concepts.

[0012]   Referring more particularly to the drawings, Fig. 1 shows a doll 12 formed of known materials employed for dolls, such as resilient plastic material.  The doll 12 has lower legs 14, 16 and foot and shoe assemblies 18, 20 for mounting on the lower legs 14, 16, respectively.

[0013]   Fig. 2 is an enlarged cross-sectional view taken in the plane indicated at 2 – 2 in Fig. 1.

[0014]   In order to removably secure the shoe and foot assemblies 18, 20 to the legs 14, 16, the leg 14 has an enlarged protuberance 22 which snaps into a recess 24 in the assembly 18; and similarly, as shown in Fig. 2, the leg 16 has an enlarged protuberance 26 which locks into a recess 28 in the shoe and foot assembly 20.

2

EXHIBIT __4__ PAGE __56__

MGA 0825487

Matter No. 15904-142

[0015]   It is desirable that the separation points 30 and 32 be concealed or made less
noticeable, to provide a more realistic appearance. This is accomplished by providing
the shoes with the appearance of a strap 34 on assembly 18, and strap 36 on assembly
20. With the upper edge of the simulated strap enlargements 34, 36 coincident with the
separation points 30, 32, the separation points are not conspicuous.

[0016]   This effect is enhanced by the exposed skin areas 42 on assembly 18 and 44
on assembly 20. Further, the color and texture of the lower legs 14, 16 are substantially
the same as the color and texture of the exposed feet areas 42 and 44.

[0017]   Figs. 3, 4 and 5 illustrate typical alternative shoe styles which may be employed
with the doll 12 of Fig. 1. Thus, a shoe/foot assembly may be selected of a color to
match the color of a dress to be worn by the doll, or may be selected for special
activities such as beach wear or formal occasions.

[0018]   In Fig. 3 the leg 52, separation point 54, and upper strap 56 on the foot/shoe
assembly 58, are shown. In addition, the skin area 60 of the foot/shoe assembly 58 is
substantially the same as that of the leg 52.

[0019]   Fig. 4 shows another alternative shoe/foot configuration 64 mounted on the leg
66 at separation point 68. As in the arrangements of Figs. 1 – 3, the simulated strap 70
conceals the separation point 68, and the skin area 72 of the foot matches that of the
lower leg 66.

[0020]   Fig. 5 is a similar showing of a shoe/foot assembly 76 mounted on the lower leg
78 of the doll at separation point 80. The simulated strap 82 serves to camouflage the
separation point. In Fig. 5 the shoe is shown darkened to emphasize that different
colored shoes may be employed, and that it is desirable that the shoe color contrast
sharply with the skin color for more effective concealment or camouflaging of the
separation point. For specific examples, the shoe colors may be blue, green, red, black
or some combination thereof.

[0021]   Return to Fig. 2 of the drawings, it may be noted that the protuberance 26 has
a larger cross-sectional configuration than the mouth 27 of the opening 28. Accordingly,
with both the doll legs 16, 18 and the foot/shoe assemblies 18 and 20 being of resilient

3

EXHIBIT   4   PAGE   51

MGA 0825488

material, the protuberance 26 may be snapped through the mouth 27 of the opening 28, and thereafter the shoe/foot assemblies are firmly held onto the legs 14, 16 of the doll.

[0022]   In the foregoing detailed description, specific embodiments of the invention have been described.  However, it is to be understood that various changes and modifications may be made without departing from the spirit and scope of the invention. Thus, by way of example and not of limitation instead of having the protuberance 26 on the leg 16 and the recess 28 on the shoe/foot assemblies, this configuration may be reversed, with the protuberance on the shoe/foot assembly, and the recess on the doll legs.  Further, instead of a single protuberance and mating recess, other snap-together arrangements may be employed, using more than one protuberance/recess, or a snap-in ring and mating ring shaped recess could be used.  It is also noted that, instead of using resilient plastic for the doll, stiffer plastic could be employed, and the foot/shoe assemblies may be attached using a simple concealed mechanical latch.  Accordingly, the invention is not limited to the exact embodiments described hereinabove and shown in the drawings.

4

EXHIBIT __4__ PAGE _58_

MGA 0825489

Matter No. 15904-142

WE CLAIM:

1.   A doll with changeable footgear comprising:

a torso having a body and legs, said legs having a predetermined skin color and texture;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot, the foot having substantially the same predetermined skin color and texture;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

each said assembly and lower legs having a snap-together joint with a protuberance on one part and a mating recess on the other part; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

2.   A doll as defined in claim 1 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

3.   A doll with changeable footgear as defined in claim 1 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

4.   A doll as defined in claim 1 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

5.   A doll with changeable footgear comprising:

a torso having a body and legs, said legs having a predetermined color;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot, the foot having substantially the same predetermined color;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

5

EXHIBIT  4    PAGE  59

MGA 0825490

Matter No. 15904-142

each said assembly and lower legs having a joint for releasably securing the foot/shoe assemblies to the legs; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

6.   A doll as defined in claim 5 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

7.   A doll with changeable footgear as defined in claim 5 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

8.   A doll as defined in claim 5 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

9.   A doll with changeable footgear comprising:

a torso having a body and legs, said legs having a predetermined color;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot, the foot having substantially the same predetermined color;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

each said assembly and lower legs having a snap-together joint; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

10.  A doll as defined in claim 9 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

11.  A doll with changeable footgear as defined in claim 9 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

12.  A doll as defined in claim 9 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

8.

EXHIBIT  4   PAGE  60

MGA 0825491

Matter No. 15904-142

13. A doll with changeable footgear comprising:

a torso having a body and legs;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

each said assembly and lower legs having a joint for releasably securing the foot/shoe assemblies to the legs; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

14. A doll as defined in claim 13 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

15. A doll with changeable footgear as defined in claim 13 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

16. A doll as defined in claim 13 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

17. A doll as defined in claim 13 wherein said exposed parts of the feet have substantially the same color as said legs.

z

EXHIBIT __4__ PAGE __61__

MGA 0825492

Matter No. 15904-142

## Doll With Aesthetic Changeable Footgear

ABSTRACT OF THE DISCLOSURE

A doll with changeable footgear includes a torso with legs, and a pair of foot/shoe assemblies mounted on the legs at separation points; and each foot shoe assembly has exposed skin of a color and texture substantially matching the skin of the legs, and the simulated shoes include simulated straps extending around the foot/shoe assembly immediately adjacent the separation point on each leg. Each foot/shoe assembly may be mounted on one of the doll legs, employing a protuberance on one part and a recess on the other part, with a snap-in locking fit between the two parts. The simulated shoes may be of a sharply contrasting color relative to the skin color.

8.

EXHIBIT __4__ PAGE __62__

MGA 0825493

1/2



FIG. 1

FIG. 2

EXHIBIT __4__ PAGE __63__          MGA 0625494



2/2

FIG. 3

FIG. 4

FIG. 5

EXHIBIT 4 PAGE 64

MGA 0825495

EXHIBIT 5

15 904-142 1/163
AK/513

### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/373,602 | 02/24/2003 | Isaac Larian | 15904-142 | 4385 |

7590   05/12/2003

Alan C. Rose
OPPENHEIMER WOLFF & DONNELLY LLP
Suite 3800
2029 Century Park East
Los Angeles, CA 90067

| EXAMINER |
|---|
| ABDELWAHED, ALI F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3712 | |

DATE MAILED: 05/12/2003

Please find below and/or attached an Office communication concerning this application or proceeding.

Due Aug 12, 2003

Attorney _____
Docketed 5/2 - 10 -
By: _____

(703)
305 3579
FAX

**RECEIVED**

MAY 2 7 2003

**OWD**

RECEIVED

OPPENHEIMER WOLFF
& DONNELLY

PTO-90C (Rev. 07-01)

△ π EXHIBIT 546
Deponent Armstrong
Date 8/1/62 Rptr. A.C.
WWW.DEPOBOOK.COM

EXHIBIT 5 PAGE 65

MGA 0825466

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 10/373,602 | LARIAN, ISAAC |
| | Examiner | Art Unit |
| | Ali Abdelwahed | 3712 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on _____ .

2a)☐ This action is **FINAL**.  2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-17</u> is/are pending in the application.

4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-17</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☒ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>24 February 2003</u> is/are: a)☐ accepted or b)☒ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11)☐ The proposed drawing correction filed on _____ is: a)☐ approved b)☐ disapproved by the Examiner.

If approved, corrected drawings are required in reply to this Office action.

12)☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All  b)☐ Some *  c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____ .

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

14)☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

a)☐ The translation of the foreign language provisional application has been received.

15)☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)      4)☐ Interview Summary (PTO-413) Paper No(s) _____ .
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)   5)☐ Notice of Informal Patent Application (PTO-152)
3)☐ Information Disclosure Statement(s) (PTO-1449) Paper No(s) _____ .   6)☐ Other: _____ .

U.S. Patent and Trademark Office
PTO-326 (Rev. 04-01)          Office Action Summary          Part of Paper No. 2

546-2

EXHIBIT __5__ PAGE __66__

MGA 0825467

Application/Control Number: 10/373,602                                              Page 2
Art Unit: 3712

### DETAILED ACTION

#### *Information Disclosure Statement*

The listing of references in the specification is not a proper information disclosure statement. 37 CFR 1.98(b) requires a list of all patents, publications, or other information submitted for consideration by the Office, and MPEP § 609 A(1) states, "the list may not be incorporated into the specification but must be submitted in a separate paper." Therefore, unless the references have been cited by the examiner on form PTO-892, they have not been considered.

#### *Drawings*

The drawings are objected to as failing to comply with 37 CFR 1.84(p)(4) because reference characters "54, 56" in figure 3 and "68, 70" in figure 4 have both been used to designate the "strap". A proposed drawing correction or corrected drawings are required in reply to the Office action to avoid abandonment of the application. The objection to the drawings will not be held in abeyance.

#### *Specification*

The disclosure is objected to because of the following informalities:
In the Abstract, line 2, delete "foot shoe" and insert --foot/shoe--.
Page 3, line 3 of [0018], delete "feet" and insert --skin--.
Page 3, line 2 of [0021], delete "opening" and insert --recess--.
Page 3, line 3 of [0021], delete "16, 18" and insert --14, 16--.

EXHIBIT __5__ PAGE __67__

546-3
MGA 0825468

Application/Control Number: 10/373,602                                    Page 3
Art Unit: 3712

       Page 4, line 4 of [0021], delete "opening" and insert --recess--.

       Appropriate correction is required.


### Claim Objections

       Claims 1, 2, 5, 6, 9, 10, 13, and 14 are objected to because of the following informalities:

       It is suggested that in:

       Claims 1, 5, 9, and 13, lines 7, 6, 6, and 5, respectively, delete "removable" and insert --removably--.

       Claims 2, 6, 10, and 14, line 2, delete "assembly is" and insert --assemblies are--.

       Appropriate correction is required.


### Claim Rejections - 35 USC § 112

       The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

       Claims 1-17 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.


       Claims 1, 5, 9, and 13 recite the limitations "the foot", "the same", "the lower leg or ankle", "lower legs", and "the other part" in lines 4-10, respectively. There is insufficient antecedent basis for these limitations in the claims.


EXHIBIT  5  PAGE  68

546-4
MGA 0825469

Application/Control Number: 10/373,602                                      Page 4
Art Unit: 3712

Claims 2, 6, 10, and 14 recite the limitations "the shoe portion", "the exposed skin

areas", and "the foot" in lines 1 and 2.  There is insufficient antecedent basis for these

limitations in the claims.


Claim 17 recites the limitations "said exposed parts", "the feet", and "the same" in

lines 1 and 2.  There is insufficient antecedent basis for these limitations in the claim.


Claim(s) 3, 4, 7, 8, 11, 12, 15, and 16 depend from rejected claim(s) 1, 5, 9, and

13, respectively, and include all of the limitations of claim(s) 1, 5, 9, and 13 thereby

rendering these dependent claim(s) indefinite.

### Claim Rejections - 35 USC § 102

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless —

(b) the invention was patented or described in a printed publication in this or a foreign country or in public
use or on sale in this country, more than one year prior to the date of application for patent in the United
States.

Claims 1-17 are rejected under 35 U.S.C. 102(b) as being clearly anticipated by

the BRATZ™ dolls reference; also see PTO-892 [U].

The BRATZ™ dolls reference clearly discloses all of the structural limitations

recited in claims 1-17.

### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

EXHIBIT  5  PAGE  69

546-5

MGA 0825470

Application/Control Number: 10/373,602                                         Page 5
Art Unit: 3712

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

Claims 1-17 are rejected under 35 U.S.C. 103(a) as being unpatentable over

U.S. Patent No. 4,952,189 to Barlow in view of U.S. Patent No. 4,185,412 to Rahmstorf.

Barlow discloses the claimed invention except for the assemblies and lower legs

having a snap-together joint. However, Rahmstorf teaches a doll comprising the

aforementioned limitations (see fig. 3). Therefore, it would have been obvious to one

having ordinary skill in the art at the time the invention was made to modify the doll of

Barlow, in view of Rahmstorf, such that it would provide the doll of Barlow with the

aforementioned limitations for the purpose of providing an easier/simplified means for

attachment of the assemblies to the legs.


### Conclusion

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to Ali Abdelwahed whose telephone number is (703) 305-
3311. The examiner can normally be reached Monday through Friday from 9:00 A.M. to
5:00 P.M.
   If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Derris Banks can be reached on (703) 308-1745.
   Any inquiry of a general nature or relating to the status of this application or
proceeding should be directed to the receptionist whose telephone number is (703) 308-
1148.


AA
05/02/2003

DERRIS H. BANKS
SUPERVISORY PATENT EXAMINER


EXHIBIT __5__ PAGE __70__

546-6

MGA 0825471

EXHIBIT 6



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address COMMISSIONER FOR PATENTS.
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/373,602 | 02/24/2003 | Isaac Larian | 15904-142 | 4355 |

7590       10/28/2003

Alan C. Rose
OPPENHEIMER WOLFF & DONNELLY LLP
Suite 700
233 Wilshire Blvd
Santa Monica, CA  90401

| EXAMINER |
|---|
| ABDELWARED, ALI F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3712 | |

DATE MAILED: 10/28/2003

Please find below and/or attached an Office communication concerning this application or proceeding.

EXHIBIT 6  PAGE 71

EXHIBIT 501
Deponent ARMSTRONG
Date 7/18/06 Rptr ACC
WWW.DEPOBOOK.COM

MGA 0825438

PTO-90C (Rev. 10/03)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/373,602 | LARIAN, ISAAC |
| | Examiner | Art Unit |
| | Ali Abdelwahed | 3712 |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on 14 August 2003 .

2a)☒ This action is FINAL.        2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) 1-17 is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) 1-17 is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11)☒ The proposed drawing correction filed on 14 August 2003 is: a)☒ approved b)☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12)☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

    1.☐ Certified copies of the priority documents have been received.

    2.☐ Certified copies of the priority documents have been received in Application No. _____ .

    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

14)☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

    a) ☐ The translation of the foreign language provisional application has been received.

15)☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s) 4 .

4)☐ Interview Summary (PTO-413) Paper No(s). _____ .
5)☐ Notice of Informal Patent Application (PTO-152)
6)☐ Other: _____ .

EXHIBIT 6  PAGE 72

MGA 0825439

Application/Control Number: 10/373,602                                    Page 2
Art Unit: 3712

## DETAILED ACTION

### Claim Objections

Claims 2, 6, 10, 14, and 17 are objected to because of the following informalities:

It is suggested that in:

Claims 2 and 6, line 1, delete "assembles' and insert --assemblies--.

Claim 6, line 3, delete "assembly is" and insert --assemblies are--.

Claims 10, 14, and 17, line 2, delete "assembles' and insert --assemblies--.

Appropriate correction is required.

### Claim Rejections - 35 USC § 112

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 1-17 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Claims 1, 5, 9, and 13 recite the limitation "said leg" in line 3. There is insufficient antecedent basis for this limitation in the claim.

Claim 17 recites the limitations "said exposed parts", "the feet", and "the same color" in lines 1 and 2. There is insufficient antecedent basis for these limitations in the claim.

EXHIBIT _6_ PAGE _73_

MGA 0825440

Application/Control Number: 10/373,602                                    Page 3
Art Unit: 3712

Claim(s) 2-4, 6-8, 10-12, and 14-17 depend from rejected claim(s) 1, 5, 9, and

13, respectively, and include all of the limitations of claim(s) 1, 5, 9, and 13 thereby

rendering these dependent claim(s) indefinite.


### Claim Rejections - 35 USC § 102

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public
> use or on sale in this country, more than one year prior to the date of application for patent in the United
> States.

Claims 1-17 are rejected under 35 U.S.C. 102(b) as being clearly anticipated by

the BRATZ™ dolls reference; also see PTO-892 [U].

The BRATZ™ dolls reference clearly discloses all of the structural limitations

recited in claims 1-17.


### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

Claims 1-17 are rejected under 35 U.S.C. 103(a) as being unpatentable over

U.S. Patent No. 4,952,189 to Barlow in view of U.S. Patent No. 4,185,412 to Rahmstorf.


EXHIBIT 6 PAGE 74

MGA 0825441

Application/Control Number: 10/373,602                                          Page 4
Art Unit: 3712

    Barlow discloses the claimed invention except for the assemblies and lower legs having a snap-together joint. However, Rahmstorf teaches a doll comprising the aforementioned limitations (see fig. 3). Therefore, it would have been obvious to one having ordinary skill in the art at the time the invention was made to modify the doll of Barlow, in view of Rahmstorf, such that it would provide the doll of Barlow with the aforementioned limitations for the purpose of providing an easier/simplified means for attachment of the assemblies to the legs.

### Response to Arguments

    Applicant's arguments filed on August 14, 2003 have been fully considered but they are not persuasive.

    In response to Applicant's argument concerning the BRATZ™ dolls reference having a later date than what is recited on page 1 of the reference packet. Examiner would like to focus Applicant's attention to page 10 of the reference packet, under the heading "Spotlight Reviews" are some reviews sent in by customers who bought the toy dolls mentioned on page 1 of the packet and specifically referenced the toy dolls by their names which match the names of the dolls on page 1 of the packet. As shown, these reviews were sent in on December of 2001, inherently the dolls must have been on the market before this date, which also aids in justifying the launch date of the dolls in June of 2001 by MGA Entertainment as mentioned on page 1 of the reference

EXHIBIT _6_ PAGE _75_

MGA 0825442

Application/Control Number: 10/373,602                                     Page 5
Art Unit: 3712

packet. Both of the dates mentioned above are sufficient to reject the claims under 35
USC 102(b), therefore examiner reasserts the rejection.


In response to Applicant's argument concerting the 35 USC 103(a) rejection
based upon Barlow in view of Rahmstorf. Examiner would like to point out that the
Barlow reference does in fact disclose open work, strap type shoes, the shoe/feet
assemblies being removable at the upper strap line of the shoes, and the foot skin
coloring matching the lower leg coloring below and above the separation point. The
straps can best be seen in figures 1, 2, and 7, figure 7 best illustrates the shoe/feet
assemblies being removable at the upper strap line of the shoes, and the foot skin
coloring matching the lower leg coloring below and above the separation point is
inherently implied by figures 1, 2, 7, and the respective portions of the specification.
Examiner therefore reasserts the rejection.


### Conclusion

THIS ACTION IS MADE FINAL. Applicant is reminded of the extension of time
policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE
MONTHS from the mailing date of this action. In the event a first reply is filed within
TWO MONTHS of the mailing date of this final action and the advisory action is not
mailed until after the end of the THREE-MONTH shortened statutory period, then the
shortened statutory period will expire on the date the advisory action is mailed, and any

EXHIBIT 6 PAGE 76

MGA 0825443

Application/Control Number: 10/373,602                                    Page 6
Art Unit: 3712

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action. In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to Ali Abdelwahed whose telephone number is (703) 305-
3311. The examiner can normally be reached Monday through Friday from 9:00 A.M. to
5:00 P.M.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Derris Banks can be reached on (703) 308-1745.

Any inquiry of a general nature or relating to the status of this application or
proceeding should be directed to the receptionist whose telephone number is (703) 308-
1148.


AA
10/24/2003                                        DERRIS H. BANKS
                                           SUPERV PATENT EXAMINER
                                              CENTER 3700

EXHIBIT __6__ PAGE __77__                         MGA 0825444

PTO/SB/08A (10-01)
Approved for use through 10/31/2002. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE

Substitute for form 1449A/PTO

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**

(use as many sheets as necessary)

| | | Complete if Known |
|---|---|---|
| | Application Number | 10/373,502 |
| | Filing Date | February 24, 2003 |
| | First Named Inventor | Isaac Larian |
| | Art Unit | 3712 |
| | Examiner Name | Abdelwahed, Ali F. |
| Sheet | 1 | of | 1 | Attorney Docket Number | 15904-142 |

RECEIVED
AUG 19 2003
TECHNOLOGY CENTER R3700

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No. ¹ | Document Number — Number -Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document |
|---|---|---|---|---|
| /AB/ | | US-187,322 | 02/13/77 | Schmelzer |
| | | US-831,330 | 09/18/06 | Doebrich |
| | | US-898,018 | 09/08/08 | Steiff |
| | | US-2,175,789 | 10/10/39 | Young |
| | | US-3,475,042 | 10/28/69 | Spears et al. |
| | | US-3,624,960 | 12/07/71 | Folson et al. |
| | | US-3,782,027 | 01/01/74 | Goldfarb et al. |
| | | US-4,030,240 | 06/21/77 | Pori |
| | | US-4,137,115 | 01/30/79 | Lambert |
| | | US-4,643,691 | 02/17/87 | Keiji |
| | | US-4,729,751 | 03/08/88 | Schiavo et al. |
| | | US-5,186,673 | 02/16/93 | Fogarty et al. |
| | | US-5,803,787 | 09/08/98 | Kulchyski |
| | | US-6,179,685 | 01/30/01 | Toft |
| ✓ | | US-6,203,396 | 03/20/01 | Asmussen et al. |
| | | | | |
| | | | | |
| | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No. ¹ | Foreign Patent Document Country Code³ -Number⁴ -Kind Code⁵ (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | ⁶ |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | Date Considered |
|---|---|
| | 10/23/2003 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
¹Applicant's unique citation designation number (optional). ²See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.

OPPENHEIMER: 1476879 v01 08/12/2003

EXHIBIT 6 PAGE 78

MGA 0825445

EXHIBIT 7

Aug 11 03 05:08p     Carter                    4177257836              p.1



EXHIBIT 502
Deponent AMSTRONG
Date 7/18/07 Rptr ACC
www.deposboook.com

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Isaac Larian | Examiner: | Ali Abdelwahed |
| Serial No. | 10/373,602 | Group Art Unit: | 3712 |
| Filed: | February 24, 2003 | Docket No. | 15904-142 |
| Title: | DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR | | |

CERTIFICATE UNDER 37 CFR 1.8
I hereby certify that this correspondence and identified enclosure are being deposited with the United States Postal Service, as first class mail, postage prepaid, under 37 C.F.R. 1.8 on the date indicated, and is addressed to the Mail Stop Non-Fee Amendment, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on August 12, 2003.

Justina S. Townsend

Mail Stop NON-FEE AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### DECLARATION OF CARTER BRYANT

I, CARTER BRYANT, hereby declare as follows:

1.     I am the president of Carter Bryant Enterprises, 634 West Mt. Vernon, Suite 264, Nixa, MO, 65714; and I have been in the freelance design field for about eight (8) years.

2.     I am familiar with the Bratz doll projects of MGA Entertainment and I have worked with Isaac Larian president of MGA Entertainment on the Bratz doll project.

3.     I am familiar with the doll designs as shown in the attached drawings from the above-identified patent application. These dolls have strap type shoes, and the dolls have a snap on feature at about the ankle of the dolls so that different footgear may be mounted on the doll. Regarding the strap type shoes, as disclosed in the patent application, the coloring of the skin tone on the exposed areas of the feet are matched to the coloring of the lower legs of the dolls.

MGA 0825457

Serial No. 09/647,752

4.      I was actively involved with the release of the Bratz dolls of the configuration as set forth in paragraph 3 above, and this release did not occur until the fall of the year 2002.

I hereby declare that all statements made herein of my own knowledge are true, and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent application issuing thereon.

                              Respectfully submitted,

                              Carter Bryant

Attached:
    2 Sheets Drawings

- 2 -

EXHIBIT  7  PAGE  80

MGA 0825458



1/2

FIG. 1

FIG. 2

EXHIBIT ___7___ PAGE _81_

MGA 0825459

2/2



FIG. 3

FIG. 4

FIG. 5

EXHIBIT 7 PAGE 82   MGA 0825460

EXHIBIT 8

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

October 29, 2007

**BY HAND**

Thomas J. Nolan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Re:    Mattel, Inc. adv. MGA Entertainment, et al.

Dear Tom:

I am writing in connection with various discovery matters.

Further to our earlier communications, we set forth in this letter a more comprehensive list of outstanding discovery which the Court has ordered MGA to produce and/or which MGA previously agreed it currently owes Mattel. We are enclosing relevant background materials as they relate to these issues in an effort to facilitate their resolution. It is our hope here that the parties can avoid or at least minimize motion practice on these matters to the extent it is possible to do so. We also set forth in this letter a list of prior meet and confer requests that Mattel made but that MGA did not respond to as required by the Discovery Master Stipulation. We hope to address these matters as soon as possible. Last, we include herein additional matters relating to a key Rule 30(b)(6) Topic that require MGA's attention.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-7000 FAX 650-801-5100

EXHIBIT __8__ PAGE __83__

## I.   <u>Outstanding Discovery Obligations</u>

### A.   <u>Depositions</u>

To date, MGA has not provided dates for a number of depositions, including depositions Judge Infante has ordered. In his May 16, 2007 Order, Judge Infante overruled all MGA objections to the Topics in Mattel's Second <u>Rule</u> 30(b)(6) Notice and ordered MGA to produce witnesses on all Topics (other than Topic Nos. 25 and 26) on or before June 30, 2007. Judge Larson subsequently rejected, in their entirety, MGA's challenges to that Order. Separately, Judge Infante ordered MGA to produce witnesses on Topics 25 and 26 no later than September 27, 2007. MGA, however, has not produced witnesses on many of these topics.

<u>Topic Nos. 16, 18, 20 and 32 in Mattel's Second Rule 30(b)(6) Notice to MGA.</u> MGA has failed to provide any dates when MGA witnesses will be available to address these topics. MGA originally purported to designate prior written testimony to address these topics, but its designations were woefully inadequate. After Mattel requested a meet and confer, MGA agreed, on August 15, 2007, to provide designees and dates for these topics. Thereafter, on or about October 3, 2007, MGA stated that its designee on these topics would be Samir Khare. MGA stated that Mr. Khare was available for deposition in December. Mattel informed MGA that such a delay in Mr. Khare's depositions was unacceptable, because the deadline for MGA to provide a witness in compliance with the Discovery Master's Order -- June 30, 2007 -- had long since passed. MGA stated that it would check again to determine whether Mr. Khare would be produced on an earlier date. No earlier dates were ever provided, however. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit A to this letter.

<u>Topic Nos. 21, 24, 25, 26, 31, 39 (as to non-electronic documents), 40 and 41 in Mattel's Second Rule 30(b)(6) Notice to MGA.</u> Pursuant to Judge Infante's May 16, 2007 Order, which was upheld by Judge Larson, MGA was required to produce designees on the topics in Mattel's Second <u>Rule</u> 30(b)(6) Notice no later than June 30, 2007 (except as to Topics 25 and 26). Separately, MGA was required to produce witnesses on Topics 25 and 26 no later than September 27, 2007.

On July 19, 2007, MGA produced Lisa Tonnu on Topic Nos. 24, 31, 37, 39 (as to non-electronic documents), 40 and 41, but Ms. Tonnu was not sufficiently prepared regarding those topics, save Topic No. 37. After a meet and confer in advance of Mattel motion, MGA agreed to provide Ms. Tonnu to testify again with respect to those topics and additionally with respect to Topic Nos. 21, 25 and 26. MGA produced Ms. Tonnu for a second time on September 24-25, 2007. Ms. Tonnu, however, was no more prepared for any of those topics than she was the first time. Since then, Mattel has met and conferred with MGA in regards to MGA's failure to provide a competent witness to testify regarding these topics as ordered by Judge Infante and in regards to Mattel's anticipated motion for sanctions as a consequence of MGA's deliberate violations of the Discovery Master's Order. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit B to this letter.

2

EXHIBIT __8__ PAGE __84__

Topic Nos. 38, 39 (as to electronic documents) and 42 in Mattel's Second Rule 30(b)(6) Notice to MGA. Pursuant to Judge Infante's May 16, 2007 Order, MGA was required to produce designees on Topics Nos. 38, 39 and 42. On June 14 and 15, 2007, MGA produced Kenneth Lockhart on Topics 38, 39 (as to electronic documents) and Topic No. 42. Mr. Lockhart was not sufficiently prepared to testify on these topics. Accordingly, Mattel sent MGA a meet and confer request on September 18, 2007 regarding the deficiencies of the testimony provided by Mr. Lockhart. MGA informed Mattel that it would confirm -- by October 4, 2007 -- whether MGA will be producing Mr. Lockhart for deposition on Topic 39 (with respect to electronic documents) in response to Mattel's meet and confer letter. MGA did not address the other topics Mr. Lockhart was designated to testify about, yet failed to provide competent testimony on. MGA has not confirmed whether it will produce Mr. Lockhart on Topic 39 (with respect to electronic documents), let alone the other topics. MGA needs to provide dates for the deposition of a properly educated witness on Topic Nos. 38, 39 and 42 if it wishes to avoid a Mattel motion. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit C to this letter.

Topics Nos. Nos. 11, 13, 14, 23, 27 and 28 of Mattel's Second Rule 30(b)(6) Notice. On September 16, 2007, Mattel sent MGA a meet and confer letter regarding the failure to adequately educate Rebecca Harris, its designee on Topic Nos. 11, 13, 14, 23, 27 and 28, and the inadequate time to complete her deposition on all of the many Topics she was designated on. On October 3, 2007, MGA indicated that Ms. Harris is currently on medical leave and that MGA needs to check on her condition before advising us of her availability. To date, Mattel has not received any response regarding Ms. Harris's availability. If she is not available in the coming weeks, MGA must produce a different designee. Otherwise, Mattel anticipates that it will bring a motion on this subject.

Topics 6-8, 11 and 12 of Mattel's Third Rule 30(b)(6) Notice. Judge Infante ordered MGA to provide dates and designees on these topics on September 25, 2007. On October 2, 2007 Mattel wrote to MGA requesting MGA to promptly identify its designees and provide dates for those designees. MGA conceded on October 3, 2007 that it needed to comply with Judge Infante's Order and identify appropriate designees for Topics 6-8, 11 and 12. On October 8, 2007 Mattel sent a further letter requesting to meet and confer regarding this topic. Despite Mattel's letters to MGA, MGA has not provided dates or designees. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit D to this letter.

Individual witnesses for whom MGA has never provided dates. Mattel has requested dates for the depositions of Shirin Salemnia, Daphne Gronich and Joe Tiongco. MGA committed to provide dates for these deponents on September 21 and 25, 2007, among other dates, but has not done so to date. MGA also committed more than a year ago, in July 2006, and then again on October 3, 2007, to produce Isaac Larian for the continuation of his deposition regarding the MGA v. Mattel case, but has not offered any dates as of yet. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit E to this letter.

3

EXHIBIT _8_ PAGE _85_

Previously scheduled individual deponents. MGA needs to provide new dates for the deposition of David Malacrida, who had been scheduled to give further deposition testimony on October 18, 2007 but who was not produced as a result of the "soft stay."[1]

We expect MGA to provide reasonable dates for these depositions. As you can see, MGA's obligations as to these depositions are long overdue. Accordingly, if we cannot firmly resolve these open items in the short term, we intend to seek the assistance of the Court.

### B. Documents And Tangible Things

Financial Information responsive to Mattel's Second Set of Requests for Production to MGA. On June 6, 2007, Mattel served its Second Set of Requests for Documents and Things to MGA Entertainment, Inc. seeking various categories of financial information relevant to damages. After a lengthy meet and confer process, MGA ultimately agreed to produce all responsive, non-privileged documents (with only certain minor modifications as reflected in MGA's supplemental responses dated September 17, 2007) by either September 17, 2007 as to most all categories or September 28, 2007 as to a few remaining categories. More specifically, among other things, MGA agreed to produce by September 17, 2007 a report that would provide information responsive to a number of the requests, including sales, revenue, cost and profit information for Bratz products by SKU. On September 26, 2007, we sent an e-mail to Bill Charron advising him that we had not appeared to have received the report and requesting, if MGA had produced the report, that it provide us with the Bates numbers or, if MGA had not produced the report, a meet and confer regarding its failure to have done so. Well after the expiration of the required five-day period within which to meet and confer (and shortly before the change in counsel), Mr. Charron finally advised us that the report had not been produced and that he could not tell us when it would be produced. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit F to this letter.

More than one month after the agreed upon deadline for producing the report, we still have no record of having received it. If MGA has produced this report, please so confirm and provide us with the Bates numbers. If MGA still has not produced the report, then please let us know when we can expect to receive it. From our perspective, and as I had mentioned during our conference call on October 14, 2007, MGA's production of financial documents needs to be a priority so that there is no further delay in our ability to prepare expert reports.

Inspection of Bratz Products. To resolve a then-pending Mattel motion to compel, MGA and Bryant agreed on the record before Judge Block on June 20, 2006 that they would make tangible

---

[1] Further, because they too were continued as a result of the "soft stay," we need to discuss the rescheduling of the depositions of Carlos Gustavo Machado, who was previously scheduled to be deposed on October 26, 2007; Sarah Halpern, who was previously scheduled for October 29, 2007; and Margaret Hatch Leahy, who was previously scheduled for October 30, 2007. We have been actively seeking the depositions of these witnesses since at least early June. All three of these witnesses have separate counsel as you know.

4

EXHIBIT __8__ PAGE __86__

items available for inspection within fifteen days of a Mattel request. Furthermore, as a result of MGA's refusals to produce tangible items relating to Bratz sought by Mattel, Mattel brought a motion to compel, which Judge Infante granted. There are numerous categories of tangible items that MGA has been ordered to produce including, without limitation, (1) all doll heads, sculpts, prototypes, models, samples and tangible items that were created, prepared or made prior to January 1, 2001 that refer or relate to Bratz or Angel, (2) all doll heads, sculpts, prototypes, models, samples and tangible items painted by Anna Rhee prior to January 1, 2001, (3) doll heads, sculpts, prototypes, models, samples and tangible items that refer or relate to dolls, doll accessories or toys that Bryant produced, created, authored, conceived or reduced to practice prior to January 1, 2001, (4) doll heads, sculpts, prototypes, models, samples and tangible items that support, refute or otherwise refer or relate to any facts underlying MGA's affirmative defenses, (5) all head sculpts including all preliminary head sculpts and all versions of such sculpts made, produced or prepared in connection with the CONTESTED MGA PRODUCTS, and (6) a sample of the CONTESTED MGA PRODUCTS together with each such product's packaging and all instructions, promotional literature, coupons, bounce-back cards and other materials inserted in or associates with such packaging. In addition, to the extent not produced in response to any other request, MGA has been ordered to produce all tangible items that in intends to rely upon in this action.

Mattel has made repeated efforts to obtain access to inspect and photograph MGA's tangible items. For example, on September 13, 2007, Mattel wrote to MGA requesting a date to inspect and photograph all Bratz products responsive to Request No. 1 in Mattel's Second Set of Requests for Production of Documents, and products, packaging and other physical items responsive to any of Mattel's other discovery requests including, without limitation, all products and packaging identified by MGA in its Supplemental Response to Interrogatory No. 2 of Mattel's First Set of Interrogatories Re Unfair Competition, dated June 20, 2007. MGA did not respond to Mattel's request. Thereafter, on September 27, 2007, Mattel sent MGA a meet and confer request regarding this matter. On October 5, 2007, MGA stated that it would

> "make available samples of Bratz products (pursuant to Request No. 1 of Mattel's Second Set of Requests for Production of Documents) and any additional items on which MGA intends to rely for its claims or defenses, including any doll heads, sculpts, prototypes, samples and tangible items that relate to any facts underlying MGA's affirmative defenses in this action (RFP 100 of Mattel's First Set of RFPs) and any tangible items on which MGA intends to rely for its affirmative claims (RFP No. 1 of Mattel's First Set of RFP's re Claims of Unfair Competition), on a rolling basis."

On October 8-11, 2007, MGA made available certain products for inspection at O'Melveny and Myers offices in Los Angeles. However, this inspection was not complete. MGA agreed to provide Mattel with a schedule by which it would make available for inspection all other Bratz products and other tangible items. Even though MGA's deadline to make products and tangible things available for inspection and photographing has long passed, Mattel still has not received a schedule for MGA's completion of this. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit G to this letter.

EXHIBIT **8** PAGE **87**

Mattel also has requested — and believes that it is entitled to — access to the three dimensional Bratz head that is depicted in the photograph marked as Exhibit 1118. We raised with MGA's counsel prior to the substitution our request that we be given access to the head to make a three-dimensional digital scan of it for purposes of this litigation. We have not, however, received any commitment by MGA to allow Mattel such access.

MGA additionally needs to complete its production (for inspection) of the contested MGA products and other products and tangible items responsive to Request Numbers 1, 2 and 16 of Mattel's First Set of Requests for Production to MGA re Claims of Unfair Competition, and Request Numbers 96-99 of Mattel's First Set of Requests for Production to MGA by October 31, 2007. Please let us know whether MGA will comply with these obligations.

MGA's 2005 Privilege Log.  MGA agreed to produce documents on MGA's privilege log from 2005 in redacted form and to provide a supplemental log of documents by October 5, 2007. After two extensions, most recently to October 15, 2007, Mattel has not yet received these documents. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit H to this letter.

Mattel's First Set of Requests for Production to MGA Re Claims of Unfair Competition. Pursuant to the stipulation entered into by the parties on September 24, 2007, MGA agreed to produce documents in response to Request Nos. 1, 3-10, 12, 13, 16-20, 26, 27, 29, 30, 32-40, 43, 45, 48-52, 60, 65-119, 137-140, 157-161, 164 and 166 to Mattel's First Set of Requests for Production to MGA Re Claims of Unfair Competition by October 17, 2007. MGA agreed to produce these documents on a rolling basis once a week and to provide Mattel a date by which the entire unfair competition production will be completed. Mattel has not yet received this date. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit I to this letter.

Metadata.  On August 21, 2007, Mattel requested that copies of certain e-mails in their native format, including all metadata and the full e-mail header information.  On August, 22, 2007, MGA responded that they are "researching the documents" and would get back to us.  After several meet and confers, MGA agreed to produce all of e-mails listed in Mattel's prior letter request in their native format, with full email header information, to the extent MGA has such emails in its possession, custody or control by October 1, 2007.  However, MGA did not produce all the metadata Mattel requested by October 1, 2007.  On October 3, 2007, MGA produced a chart purporting to contain the metadata MGA was able to retrieve pursuant to Mattel's request. Not only was the chart no substitute for the information Mattel sought, but it was incomplete on its face.  Thereafter, on October 8, 2007, MGA again agreed to provide the emails requested by Mattel in their native format (i.e., electronic). MGA also agreed to investigate the length of time required to do this and to let Mattel know.  To date, Mattel has not received this information or the requested metadata.  Some of the pertinent background documents and communications regarding this matter are attached as Exhibit J to this letter.

6

EXHIBIT 2 PAGE 88

Art Attacks v. MGA Trial Exhibits. The formerly sealed exhibits in the Art Attacks v. MGA case are also now long overdue. These documents were compelled by the Court in its Order of May 15, 2007 and were ordered produced no later than July 31, 2007. After MGA missed that deadline, MGA agreed at a September 7, 2007 meet and confer to produce those exhibits on or before September 12, 2007. Thereafter, MGA claimed in a letter that it had actually done so. An investigation of MGA's production revealed, however, that MGA did not do so. Mattel requested by letter dated October 12, 2007 that MGA produce the balance of the agreed upon exhibits no later than October 19, 2007. To date, MGA has not produced those exhibits or responded to this request. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit K to this letter.

Miscellaneous. Additionally, MGA promised to provide Mattel the following documents and document-related information which are now overdue: (1) the Bates numbers of the documents provided to Speckin; (2) legible copies of MGA's 2001 financial statements; (3) an electronic copy of Exhibit 660; (4) remaining Union Bank documents; and (5) Dave Malacrida's original day planner, his e-mails and any other documents relating to him responsive to Mattel's document requests prior to his deposition. Some of the pertinent background documents and communications regarding this matter are attached as Exhibit L to this letter.

As you can see, MGA's obligations as to these documents are long overdue. Accordingly, if we cannot firmly resolve these open items in the short term, we intend to seek the assistance of the Court.

### C.   Supplemental Responses

A number of supplemental responses to discovery requests promised by MGA, MGA Hong Kong and Larian are long overdue as well. First, Mr. Larian, after numerous extensions granted by Mattel, agreed to provide a further supplemental response to Request Nos. 32, 33, 54-61, and 66-69 in Mattel's First Set of Requests for Admissions to Isaac Larian by October 12, 2007. He has not done so.

Second, also after multiple extensions agreed to by Mattel, MGA Hong Kong agreed to provide supplemental responses to Mattel's First Set of Requests for Production of Documents and Things that track the supplemental responses provided by MGA to Mattel's Second Set of Requests for Production of Documents and Things on October 15, 2007. Those responses have not been received by Mattel.

Third, after multiple extensions granted by Mattel, MGA agreed at a meet and confer on October 5, 2007 (confirmed in a Mattel letter of that same date and in an October 11, 2007 e-mail from Mr. Charron) to provide by October 15, 2007 each of the following: (1) supplemental responses to Request Nos. 35, 36, 69-74, and 92-97 in Mattel's Fifth Set of Requests for Admissions to MGA; (2) supplemental responses to Request Nos. 1-28 in Mattel's Fourth Set of Requests for Admissions to MGA; (3) supplemental responses to Request Nos. 141-163, 165-170 and 173-180 in Mattel's Third Set of Requests for Admissions to MGA; and (4) a supplemental response to Interrogatory No. 11 in Mattel's Second Set of Interrogatories that will identify the carriers for

7

EXHIBIT __8__ PAGE __89__

each responsive telephone number. None of these supplemental responses have been received despite the multiple extension granted by Mattel. Some of the pertinent background documents and communications regarding these matters are attached as Exhibit M to this letter.

Finally, the Court's Order Denying Motion for Terminating Sanctions, dated August 27, 2007, required all parties to submit a declaration setting forth their preservation efforts and policies with respect to the present litigation. Mattel submitted such declaration on September 10, 2007. To date, MGA Hong Kong, MGA de Mexico and Isaac Larian promised that they would provide preservation declarations, but have not done so. Some of the pertinent background documents and communications regarding these matters are attached as Exhibit N to this letter.

MGA's obligations as to these matters, too, are long overdue. Accordingly, if we cannot firmly resolve these open items in the short term, we intend to seek the assistance of the Court.

## II.   Meet and Confer Requests For Which MGA's Time To Respond Has Lapsed

The following are significant meet and confer requests for which MGA's time to respond pursuant to Section 5 of the Discovery Master Stipulation has lapsed:

As discussed above, on October 5, 2007, Mattel sent a MGA a meet and confer letter regarding MGA's repeated failure to provide a knowledgeable deponent on Topic Nos. 21, 24, 26, 31, 39 40 and 41 of Mattel's Second Rule 30(b)(6) Notice. Mattel also sought to meet and confer regarding Mattel's anticipated motions for MGA to be precluded from denying access to the Diva Starz project; to enforce prior court orders relating to Topic No. 26; and for sanctions (because of the deficiencies and violations during Lisa Tonnu deposition). MGA did not timely respond to Mattel's request to meet and confer on this topic, except to say that we should contact MGA's new counsel.

On September 20, 2007, Mattel sent MGA a meet and confer request regarding protocols for Zeus searches, pursuant to Judge Infante's September 12, 2007 Order directing the parties to "further meet and confer to establish parameters for conducting a reasonable search of the Zeus system and backup tapes." On September 26, 2007, MGA's counsel Marc Feinstein stated that he would send a letter regarding Zeus. To date, this letter has not been received by Mattel.

Some of the pertinent background documents and communications regarding these matters are attached as Exhibit O to this letter.

## III.   Outstanding Issues re Topic 33

In addition, as of the time of the substitution of counsel, Mattel had been in the process of putting together meet and confer letters on other significant issues. I will address one set of issues here, which should be considered a request to MGA pursuant to section 5 of the Discovery Master Stipulation to meet and confer in advance of Mattel motions to compel should the parties be unable to resolve these matters.

8

EXHIBIT  8  PAGE  90

MGA failed to designate a qualified individual to testify regarding Topic No. 33 of Mattel's Second Notice of Deposition of MGA, in violation of Judge Infante's Order compelling testimony on this Topic, and gave improper instructions not to answer during the deposition of its designee Samir Khare. In addition, MGA acknowledged at Mr. Khare's deposition that it would be necessary to provide him for additional testimony because it was not yet completed. (See Deposition Transcript of Samir Khare, dated August 20, 2007, at 427:11-13).

MGA initially had designated Bryan Armstrong to testify on Topic No. 33. To provide additional testimony on the substance of MGA's registrations and applications, MGA designated Mr. Khare to testify on the Topic as well. Nonetheless, Mr. Khare still did not know the basis of facts asserted by MGA in these applications. For instance, Mr. Khare did not know on what basis MGA and Isaac Larian relied in representing to the U.S. Patent Office that Mr. Larian was the inventor of packaging for which MGA submitted a patent. See Khare Depo. Tr. at 117:22-127:23. Similarly, Mr. Khare did not know on what basis MGA and Mr. Larian relied in representing that Mr. Larian was the inventor of changeable footgear for which MGA submitted a patent application. See Khare Depo. Tr. at 127:24-133:25.

In addition, MGA's counsel improperly instructed Mr. Khare not to answer questions regarding underlying facts, not attorney-client communications, to which Mattel is entitled. See, e.g., Khare Depo. Tr. at 72:18-23. Mr. Khare withheld information regarding the identity of the person or persons who created Bratz character art cited in an MGA copyright registration based on counsel's instruction. Id. at 75:4-76:11. Mr. Khare also withheld factual information regarding Aileen Storer's work on Bratz on the basis of alleged privilege. Id. at 423:25-425:18.

Please let us know when Mr. Khare is available to continue his deposition, whether MGA will agree to withdraw the improper instructions given during his deposition and whether MGA will either properly educate Mr. Khare on the substance of its applications and registrations or provide someone else who is properly educated. Unless MGA agrees to withdraw the improper instructions and produce Mr. Khare for additional questioning, Mattel anticipates filing a motion to enforce Judge Infante's Order, to compel and for sanctions.

MGA likewise gave improper instructions not to answer during the deposition of its other designee on Topic 33, Bryan Armstrong, and improperly asserted privilege to claw-back documents bearing Bates numbers MGA 0825680-0825682 and MGA 0802758-0802767.

First, MGA's counsel instructed Mr. Armstrong not to answer questions that clearly do not invade the attorney-client privilege. See Deposition Transcript of Bryan Armstrong, Vol. 2, dated August 1, 2007, at 347:24-348:7, 349:6-14, 349:18-351:6, 440:11-441:11, 442:3-10 and 442:18-443:8. The majority of these questions were high level questions about whether or not Mr. Armstrong or MGA's intellectual property counsel collected factual information for the purpose of communicating such information to the U.S. Copyright Office or U.S. Patent and Trademark Office. Questions about facts learned by counsel for the purpose of communicating them to the Copyright Office or USPTO are not privileged. In addition, MGA's counsel improperly instructed Mr. Armstrong not to answer questions regarding trademark searches for the name "Jade." Any such trademark search is not privileged and could show when MGA first considered using the name "Jade" for a Bratz character. Indeed, in other meet and confers, MGA

9

EXHIBIT __8__ PAGE __91__

conceded that such searches themselves are not privileged, let alone the timing of when they are performed.

Second, MGA improperly asserted privilege on the basis of attorney work product over a fax cover sheet and faxed drawings from Bobby Newquist to Alan Rose. To the extent MGA contends that a document prepared by its attorney is privileged, MGA must show that the document was prepared by an attorney for the purpose of advising MGA *and* that the document reveals MGA's confidential communications. Privilege reaches "those papers prepared by an attorney or at an attorney's request for the purpose of advising a client, provided the papers are based on and would tend to reveal the client's confidential communications," but "does not extend . . . beyond the substance of the client's confidential communications to the attorney." Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977). Here the document in question, consisting of drawings and a fax cover sheet, was prepared by a third party vendor for the purpose of submitting the drawings to the U.S. Patent and Trademark Office. Thus, this document is not privileged.

MGA also asserted attorney-client privilege over a fax from Bryan Armstrong to Alan Rose and the attached signed trademark application to the USPTO. The fax from Mr. Armstrong is not a communication to counsel for the purpose of obtaining legal advice, but rather, simply a cover letter directing MGA's attorney to file the signed application with the USPTO. The signed trademark application is a communication to the USPTO and, therefore, obviously not privileged

Unless MGA agrees to withdraw the improper instructions, re-produce the documents in question and produce a designee to testify about them, Mattel anticipates filing a motion to compel and for sanctions.

Finally, please be advised that we recently received the transcript of deposition of MGA Hong Kong's Rule 30(b)(6) designee. He was unprepared to address many Topics on which he was designated, and MGA Hong Kong's counsel gave numerous improper instructions not to answer and otherwise engaged in improper speaking objections and obstructed the deposition. Nor was Mattel afforded an adequate amount of time to fairly examine him, particularly given that a translator was necessary and given the number of Topics the witness was designated on. We will send you a separate meet and confer letter addressing these issues in more detail. However, since I also know that you wished to hear from us on matters that we considered to be priorities in discovery and because the completion of this deposition is among them, I thought we would alter you to this issue now.

I look forward to discussing these matters with you.

Very truly yours,

Michael T. Zeller

Michael T. Zeller

cc:   John Keker, Esq./Michael Page, Esq. (by mail)
      Mark Overland, Esq./Alexander Cote, Esq.

10

EXHIBIT 8 PAGE 92

EXHIBIT 9

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 UNIVERSITY AVENUE
PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650.470.45 | |
DIRECT FAX
888.329.5534
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

December 5, 2007

**By Email and U.S. Mail**

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:   *Carter Bryant v. Mattel, Inc.* Case No. CV 04-9049 SGL (RNBx)
(consolidated with Cases Nos. CV 04-09059 and CV 05-02727)

Dear Dylan:

I write to summarize our meet-and-confer telephone conference of yesterday morning with respect to Mattel's assertion in Mike Zeller's October 29, 2007, letter to Tom Nolan that "MGA improperly asserted privilege on the basis of attorney work product over a fax cover sheet and faxed drawings" (the "Documents") sent from Bobby Newquist, a patent illustrator, to Alan Rose, Esq., a former outside counsel for MGA. As you know, MGA previously inadvertently produced those documents then requested that they be returned pursuant to the protective order in this case.

We explained that Mr. Zeller's letter appears to suggest that MGA has asserted only work product protection as to the Documents. We informed you, however, that MGA has asserted, and continues to assert, both attorney-client privilege and work product protection over the Documents (and, in fact, did so on the record in Volume II of Bryan Armstrong's deposition). You responded that Mattel's position is that the Documents are not entitled to either such protection. In support of this position, you referred us to Mattel's arguments in its pending motion regarding "first use documents." You also stated your belief that drawings cannot be privileged.

We disagreed and explained that the Documents are protected from disclosure under the attorney-client privilege and work product doctrine. First, we explained that the Documents were part of and reflect a series of confidential communications between MGA, its counsel, and its patent illustrator, as part of the dialectical process by which MGA drafted and shaped its patent for Doll With Changeable Footwear and in which MGA sought the legal advice and services of Mr. Rose. As a result, the Documents are

EXHIBIT __9__ PAGE __93__

B. Dylan Proctor, Esq.
December 5, 2007
Page 2

presumptively protected by the attorney-client privilege. We further explained that to overcome that presumption, Mattel would have to make a very compelling showing that despite the presumption of confidentiality, it was intended that the Documents would be disclosed without editing to the United States Patent and Trademark Office. We explained that Mattel could not make that showing because there are significant substantive differences between the illustrations in the Documents (which are early drafts of the drawings that were used to illustrate the claims in MGA's Doll With Changeable Footwear patent application) and those included in the final application submitted to the USPTO.

We also explained that the Documents are protected from disclosure by the work product doctrine because they were prepared as part of the patent application process. We stated that courts have recognized the adversarial dimension of the patent application process, whereby an application is subject to a potentially multi-staged process of submissions, rejections with commentary, and re-submissions, until an application succeeds. This process often results in – and did result in here – the creation of protected work product.

We explained to you that our positions are supported by the following authorities, among others: *Conner Peripherals, Inc. v. W. Digital Corp.*, 1993 U.S. Dist. LEXIS 20149 (N.D. Cal. 1993); *Samuels v. Mitchell*, 155 F.R.D. 195 (N.D. Cal. 1994); and *Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372 (N.D. Cal. 1992). You then identified some of the authorities on which you rely.

We agreed to review and consider each other's authorities and to talk again once we had done so. We also agreed that notwithstanding any further meet-and-confer discussions regarding this matter, you would let me know of your intent to file a motion to compel before doing so. We look forward to continued discussion on this matter.

Sincerely,

Amy S. Park

cc:    Nelson Richards, Esq.

EXHIBIT **9** PAGE 94

EXHIBIT 10

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
### 525 UNIVERSITY AVENUE
### PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

December 5, 2007

**By Email and U.S. Mail**

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017

RE:     *Carter Bryant v. Mattel, Inc.* Case No. CV 04-9049 SGL (RNBx)
(consolidated with Cases Nos. CV 04-09059 and CV 05-02727)

Dear Dylan:

I write to summarize our follow up meet-and-confer discussion this afternoon regarding the Documents referenced in my letter of this morning.

You stated that you had reviewed the authorities we identified yesterday, concluded that they are not controlling and that you therefore had not changed your view that the Documents are not privileged or protected work product.

We stated that we had considered your authorities and concluded that we would be willing to produce the fax cover sheet, but that we remain of the view that the remainder of the Documents are protected from disclosure for the reasons discussed yesterday.

We agreed that, given our differing views, this is a matter that we would be unable to resolve ourselves. You stated, therefore, that you would be filing a motion to compel production of the Documents, which you would likely do before December 14, and that you would note in your papers MGA's willingness to produce the fax cover sheet.

Sincerely,

Andy S. Park

cc:     Nelson Richards, Esq.

EXHIBIT 10 PAGE 95

EXHIBIT 11

# CONFIDENTIAL - FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER