KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727<br><br>**DISCOVERY MATTER**<br><br>[To Be Heard by Discovery Master Hon. Edward Infante (Ret.)]<br><br>**CARTER BRYANT'S NOTICE OF MOTION AND MOTION TO QUASH MATTEL'S DEPOSITION SUBPOENA TO LITTLER MENDELSON, P.C.; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       T.B.D.<br>Time:       T.B.D.<br>Judge:     Hon. Stephen G. Larson<br>Date Comp. Filed:  April 13, 2005<br>Discovery Cut-Off:  Jan. 28, 2008<br>Trial Date:  May 27, 2008 |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that, at a telephonic conference before Discovery

3  Master Hon. Edward Infante (Ret.) that will occur on January 4, 2008, or at a time

4  to be determined by Judge Infante, Carter Bryant will, and hereby does, move the

5  Court to quash the deposition subpoena issued by Mattel, Inc. ("Mattel") to Littler

6  Mendelson, P.C., Bryant's prior counsel in this litigation, and for a protective order

7  to protect Bryant's counsel from further discovery attempts and harassment.

8      Mattel seeks to depose Bryant's litigation counsel regarding its conduct of

9  this very litigation.  Because that deposition seeks information available elsewhere,

10  will inevitably intrude on privileged matters, and will unreasonably interfere with

11  Bryant's defense in this litigation, it should not go forward.

12      The parties met and conferred regarding this Motion on September 10, 2007,

13  and thereafter, as required by Local Rule 37-1.

14      This Motion is based on this Notice of Motion and Motion, the

15  accompanying Memorandum of Points and Authorities, the Declaration of Michael

16  H. Page filed concurrently herewith, the record and files of this Court, and all other

17  matters of which the Court may take judicial notice.

18  Dated:  December 13, 2007           KEKER & VAN NEST, LLP

19

20

21             By: _____
                MICHAEL H. PAGE

22                  Attorneys for Plaintiff
                CARTER BRYANT

23

24

25

26

27

28

## I.    INTRODUCTION

Carter Bryant moves the Court to quash Mattel's subpoena requiring Littler Mendelson, P.C. ("Littler"), Bryant's prior counsel in this litigation, to appear for a deposition under Fed. R. Civ. P. 30(b)(6).  Depositions of opposing litigation counsel are improper except in very limited circumstances.  Because Mattel cannot show that those circumstances exist here, it must not be permitted to depose Bryant's counsel.  The deposition Mattel seeks would intrude upon privileged matters, unnecessarily disrupt the adversary litigation process, and unreasonably burden and harass Bryant and his counsel.  The information Mattel seeks is not crucial to its case, and any information that is legitimately discoverable and not privileged is (or could be) available to Mattel from other, less intrusive sources.  Accordingly, Bryant requests that the Court quash Mattel's subpoena to Littler and issue a protective order to protect Bryant's counsel from further discovery attempts and harassment.

## II.    BACKGROUND

Littler represented Bryant in this litigation until May 2007.  In that role, Littler of course investigated and learned the facts of this case as it deemed strategically necessary and appropriate under the applicable rules.  The discoverable results of Littler's investigations—including complete, bit-by-bit forensic images of Bryant's relevant computers and documents contained thereon, and various witnesses' testimony about their history—are already available to Mattel through other sources.  Mattel has already probed that wholly irrelevant history *ad nauseum*, and no doubt will seek to probe it further during its additional nine hours to depose Mr. Bryant (or up to 21 hours, if Mattel succeeds in its attempt to side-step the Court's previous ruling on that issue).  By deposing Littler, Mattel seeks to probe not discoverable matters relevant to the underlying litigation, but Littler's management of discovery in this case.

Although Mattel has attempted to manufacture an air of mystery surrounding

1  Bryant's computers, the important facts are clear and not subject to dispute: Bryant

2  had and used various computers, Littler secured complete, bit-for-bit forensic

3  images of those computers at the outset of this litigation, and Mattel already has

4  received all information from the computers and directly inspected the computers

5  most relevant to its underlying claims.  Specifically, in October 2000, Bryant

6  purchased and began to use an HP Pavilion desktop computer.  In late 2001 or

7  early 2002, he bought a new laptop computer (a Compaq Presario), which replaced

8  the HP Pavilion.  In late 2003, well before Mattel began this litigation, Bryant gave

9  his old computer (the HP Pavilion) to his niece, Brooke Gilbert.  In July 2004,

10 shortly after this litigation began, Littler obtained that computer from its new

11 owner, Ms. Gilbert, took a complete image of its hard drive, and returned the

12 computer to Ms. Gilbert.  Littler produced to Mattel all responsive documents and

13 information contained on that computer, and even provided to Mattel the complete

14 image of its hard drive.  At Mattel's renewed insistence, in 2007, Littler later

15 retrieved the computer once more from Ms. Gilbert and provided the computer

16 itself to Mattel for inspection.  Bryant has also produced for Mattel's inspection his

17 Compaq Presario, and a full forensic image taken of that computer's hard drive in

18 July 2004, in addition to producing all responsive documents from that computer.

19 Page Decl. ¶ 3; *id.* Ex. 1.  Mattel has also deposed Mr. Bryant, Ms. Gilbert and

20 Richard Irmen about Mr. Bryant's computers.  *See id.* Exs. 2-4; *id.* ¶ 5. Mattel has

21 at least another nine hours in which it may depose Mr. Bryant further on this topic.

22 Bryant's counsel has also explained the history of Mr. Bryant's computers to

23 Mattel's counsel.  *E.g., id.* Ex. 5.

24       Bryant has also produced to Mattel documents related to his fee

25 arrangements in this litigation, as well as all of his original drawings.  *Id.* Exs. 6-

26 10.  Bryant's original drawings have also been made available to Mattel's experts

27 for testing.  *Id.* Ex. 11-12.  Mattel may also depose Mr. Bryant about his fee

28 arrangements or drawings, to the extent permissible, during his continued

1   deposition.  Mattel will also receive discoverable expert information from Bryant

2   and MGA in due course, under the Court's schedule for expert discovery.

3       Not content with ordinary means of discovery, however, Mattel has turned

4   its sights directly upon Bryant's former counsel.[1]  On August 3, 2007, Mattel

5   issued a document subpoena to Littler seeking, among other things, documents and

6   communications related to Mr. Bryant's computers.  *Id.* Ex. 13.  Littler timely

7   objected to that subpoena.  On September 5, 2007, Mattel issued a subpoena

8   seeking to depose Littler on similar topics, noticing the deposition for September

9   19, 2007.  *Id.* Ex. 14.  The deposition subpoena seeks broad categories of

10  testimony relating to Mr. Bryant's computers and any related storage devices,

11  Littler's communication's with Brooke Gilbert, various declarations filed by Littler

12  in this litigation about Mr. Bryant's computers, Mr. Bryant's fee arrangements in

13  this litigation, and the handling and expert examination of certain original

14  documents.  *Id.*

15      Bryant promptly informed Mattel that the deposition subpoena to Littler was

16  improper, and that Bryant would move to quash it, and the parties and met and

17  conferred about this issue on September 10, 2007.  *Id.* Ex. 15.  Although the parties

18  were unable to resolve the dispute, they agreed that Littler's deposition would not

19  go forward as noticed, and agreed to meet and confer further about a briefing

20  schedule for Bryant's motion to quash the subpoena, to be coordinated with any

21  motion by Mattel to compel any production of documents by Littler in response to

22  Mattel's related document subpoena.  *Id.*

23      The parties met and conferred regarding Mattel's document subpoena on

24  September 17, 2007.  Because of the overlap in topics between Mattel's two

25  subpoenas to Littler, that conference also necessarily addressed Mattel's proposed

---

[1] If the Court does not cut off Mattel's assault upon opposing counsel, it will likely expand: Mattel's recent interrogatory responses name MGA's former litigation counsel, O'Melveny & Myers, among persons with knowledge supporting Mattel's claims.

402452.01

1 deposition topics.  During the conference, Bryant informed Mattel that Bryant had

2 no objection to Littler producing any responsive, non-privileged documents in

3 response to the subpoena.  Littler informed Mattel that Littler had no such

4 documents.  Bryant agreed to review Bryant's files received from Littler for any

5 responsive, non-privileged documents and to supplement Carter Bryant's

6 production with any such documents.  *Id.* ¶ 4; *id.* Ex. 16.

7       Mattel never raised or pursued this issue further after that discussion on

8 September 17, 2007, until November 30, 2007, when, without any preliminary

9 inquiry, Mattel's counsel sent a letter once again threatening a motion to compel

10 Littler to produce documents in response to the document subpoena.  *Id.* Ex. 17.

11 Bryant's counsel reminded Mattel of its agreement to resolve any disputes about

12 the Littler subpoenas under a coordinated and mutually agreed-upon briefing

13 schedule.  When the parties remained unable to resolve their disputes about the

14 document subpoena, the parties agreed on a briefing schedule for motions on both

15 Littler subpoenas, and this motion followed.

## III.   ARGUMENT

17       Mattel's deposition subpoena to Littler seeks non-crucial information

18 available from other sources, encroaches upon privileged and work-product

19 information, and will interfere with the normal adversary litigation process.

20 Littler's deposition would serve no end but harassment.  Accordingly, Bryant

21 requests that the Court quash the subpoena and enter a protective order barring

22 further discovery attempts and harassment directed at Bryant's counsel.  Fed. R.

23 Civ. P. 26; Fed. R. Civ. P. 45; *Nocal, Inc. v. Sabercat Ventures, Inc.*, No. C 04-

24 0240 PJH(JL), 2004 WL 3174427 (N.D. Cal. Nov. 15, 2004) (quashing subpoena

25 and granting protective order).

26 **A.      Deposing Littler is improper under the well-established *Shelton* rule.**

27       Mattel's deposition subpoena to Littler is improper under the prevailing rule

28 sharply limiting depositions of opposing litigation counsel, set forth in *Shelton v.*

CARTER BRYANT'S NOTICE OF MOTION AND MOTION TO QUASH MATTEL'S DEPOSITION
SUBPOENA TO LITTLER MENDELSON, P.C.; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV 04-09049 SGL (RNBx)

1   *American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987).  As the *Shelton* court

2   explained, "[t]he harassing practice of deposing opposing counsel (unless that

3   counsel's testimony is crucial and unique) appears to be an adversary trial tactic

4   that does nothing for the administration of justice but rather prolongs and increases

5   the costs of litigation, demeans the profession, and constitutes an abuse of the

6   discovery process."  *Id* at 1330.  Ninth Circuit district courts have "uniformly

7   followed" *Shelton*, the leading case on this issue.  *Lloyd Lifestyle Ltd. v. Soaring*

8   *Helmet Corp.*, No. C06-0349C, 2006 WL 753243 at *2 (W.D. Wash. Mar. 23,

9   2006).

10          Under *Shelton*, deposing an opponent's current or former litigation counsel

11   is proper only in extremely limited circumstances, although not absolutely

12   prohibited.  *See Mass. Mutual Life Ins. Co. v. Cerf*, 177 F.R.D. 472 (N.D.  Cal.

13   1998) (Infante, J.) (granting protective order preventing deposition of Cerf's

14   former counsel in the litigation at issue, applying *Shelton*); *FMC Techs., Inc. v.*

15   *Edwards*, 2007 WL 836709 (W.D. Wash. March 15, 2007) (granting motion to

16   quash deposition subpoena to opponent's former counsel in a related case).

17   Because depositions of opposing counsel are disfavored, the party seeking such a

18   deposition must show that (1) no other means exists to obtain the information, (2)

19   the information sought is relevant and non-privileged, and (3) the information is

20   crucial to the preparation of the case.  *Shelton*, 805 F.2d at 1327.  If the party

21   seeking to depose opposing litigation counsel cannot prove all three of these

22   elements, courts will quash the subpoena or enter a protective order prohibiting the

23   deposition.  *See, e.g., Dibel v. Jenny Craig, Inc.*, No. 06cv2533 BEN(AJB), 2007

24   WL 2220987 (S.D. Cal. Aug. 1, 2007) (quashing subpoena seeking deposition of

25   defendant's attorney); *Lloyd Lifestyle Ltd.*, 2006 WL 753243 at *3 (same); *Nocal,*

26   *Inc.*, 2004 WL 3174427 at *4 (quashing subpoena and granting protective order);

27   *Mass. Mutual Life Ins. Co.*, 177 F.R.D. at 481-82 (granting protective order).

28

402452.01

1.   **Mattel has other sources for all properly discoverable information.**

Because Mattel has other sources for all of the information legitimately discoverable on the topics at issue, deposing Littler would be improper.  First, Mattel has ample sources of information about the history of Bryant's computers, the subject of topics 1-5 of the Littler deposition subpoena.  In addition to inspecting the computers themselves and images thereof, Mattel already has deposed Mr. Bryant, Ms. Gilbert and Richard Irmen at length about the history of Mr. Bryant's computers, including the dates on which Ms. Gilbert first received the HP Pavilion computer and the dates on which Mr. Bryant's attorneys at Littler had access to it.  Mattel will be able to question Mr. Bryant further about his computer history during his continued deposition, which will extend another nine hours (or up to another 21 hours, if Mattel should successfully escape the Court's previous nine-hour limit).  *See* Page Decl. ¶¶ 3, 5; *id.* Exs. 1-4.  Likewise, for topic 6, Mattel has received documents related to Bryant's fee arrangements in this litigation, under the Court's previous rulings. *See id.* Ex. 6.  Finally, as to topics 7-8, Mattel has both inspected Bryant's original drawings itself, and arranged for testing by its own experts.  *Id.* Exs. 7-12.  Mattel will also receive expert discovery regarding Bryant and MGA's inspection and testing of those documents in due course, under the schedule set for such discovery, and has no right to receive early expert discovery.  Mattel has thus had ample opportunity to obtain legitimate discovery on these topics from more direct, less intrusive sources than Littler, and will have more such opportunities in the future.  If Mattel is unsatisfied with Bryant's performance of his discovery obligations in this case (including his obligation to comply with the Court's previous discovery orders), the proper remedy is to challenge that performance directly by seeking the Court's intervention, not by seeking to depose Bryant's counsel.

More fundamentally, Littler is not a witness to any underlying events in this

1    case. Like other attorneys whose depositions the courts have barred, Littler has no
2    knowledge related to Mattel's underlying claims (which center on Bryant's history
3    with Mattel and MGA), but only knowledge of how Littler has managed Bryant's
4    affairs in this litigation. That knowledge is protected work product, and is not
5    essential to Mattel or properly discoverable. *See Shelton*, 805 F.2d at 1328
6    (discussing protected work-product involved in exercise of attorney judgment in
7    preparing client's case, including handling documents). Thus, for example, in
8    *Cerf*, the court declined to permit former opposing counsel's deposition, although
9    the party seeking the deposition claimed that counsel had been involved in
10   "structuring" his client's medical care during a time at issue in the litigation. 177
11   F.R.D. at 481. The court found it important that counsel had "no firsthand
12   knowledge of facts relevant to [the two key incidents underlying the litigation]."
13   *Id.* at 481-82. Littler has even less firsthand knowledge of any underlying facts,
14   since it served as Bryant's counsel only during this litigation and not during any of
15   the underlying events. Although Littler could confirm the evidence already
16   available to Mattel about its role in, for example, retrieving Mr. Bryant's HP
17   Pavilion from Ms. Gilbert, Littler's deposition may not be required "simply
18   because it would be helpful." *FMC Tech.*, 2007 WL 836709 * 4 (quashing
19   subpoena where other witnesses were available to testify about letters written by
20   counsel).

21          Litigation counsel will always have access to numerous "facts" about the
22   handling of the litigation, necessarily intertwined with counsel's protected work
23   product. Allowing parties to depose opposing counsel about any such "facts"
24   would eviscerate the *Shelton* rule. *See Shelton*, 805 F.2d at 1327 (finding improper
25   deposition of opposing counsel regarding whether party possessed particular types
26   of documents). Opposing counsel depositions can be proper, and the *Shelton* rule
27   satisfied, only where the attorneys in question have actual involvement in events
28   underlying the litigation, which Littler does not—and even then, the *Shelton* test

1 │ applies. *Am. Casualty Co. v. Krieger*, 160 F.R.D. 582, 588 (S.D. Cal. 1995)

2 │ (*Shelton* applies "even where it is clear that the attorney *is* a witness to relevant,

3 │ nonprivileged events and/or conversations."). *Cf. In re Interactive Network, Inc.*,

4 │ 243 B.R. 766, 767-68 (Bankr. N.D. Cal. 2000) (allowing the deposition of an

5 │ attorney who was a witness to basic underlying transactions in the litigation, was

6 │ not (nor had been) litigation counsel, and whose client indicated he might be a

7 │ witness at trial). Littler is not such a witness.

8 │     **2.**      **Mattel seeks to invade privileged and work-product information.**

9 │     Deposing Littler will inevitably intrude upon privileged information and

10 │ Littler's protected work product. As explained above, any properly discoverable

11 │ information Mattel seeks from Littler is available from other sources. The only

12 │ remaining purpose for deposing Littler (aside from harassment and delay) is to

13 │ invade privileged information and work product. *Shelton* made plain that forcing

14 │ attorneys to testify about their awareness and handling of client documents or other

15 │ evidence improperly invades privileged and work product information. *Shelton*,

16 │ 805 F.2d at 1328. Rejecting claims similar to Mattel's here, *Shelton* found that an

17 │ attorney's mere knowledge of the existence of certain client documents was

18 │ protected work product, because she had developed that knowledge only by

19 │ exercising her professional judgment in preparing her client's case. *Id.* Likewise,

20 │ Littler's handling of all of the subpoenaed topics, including its communications

21 │ about those topics, reflects Littler's professional judgment about the important

22 │ issues, documents, and events in this litigation. The "practice of forcing trial

23 │ counsel to testify as a witness . . . has been long discouraged" precisely because of

24 │ its potential to invade such privileged and protected areas, allowing parties to

25 │ bypass the ordinary tools of discovery to pry directly into their opponents' plans.

26 │ *Id.* at 1327. As the court explained in *Shelton*, "[t]aking the deposition of opposing

27 │ counsel not only disrupts the adversarial system and lowers the standards of the

28 │ profession, but it also adds to the already burdensome time and costs of litigation."

1  *Id.* Forcing Littler to testify about the subpoenaed topics here would be improper

2  for all these reasons.

3       **3.    Mattel seeks no crucial information from Littler.**

4       Mattel also cannot prove the third required element of the *Shelton* test,

5  because none of the information Mattel seeks from Littler is crucial to its

6  preparation of this case. *See Shelton*, 805 F.2d at 1327.  First, any information that

7  is either available to Mattel elsewhere, or not within the scope of permissible

8  discovery, cannot be considered "crucial" for Mattel to obtain from Littler.  As

9  explained above, Mattel has alternate sources for all of the information it has any

10  right to discover, so prohibiting Littler's deposition as to that information cannot

11  affect Mattel's ability to prepare for trial.  Likewise, Mattel is not entitled to

12  privileged or work product information, no matter how helpful it claims that

13  information might be to its case, so the privileged and work product information

14  Mattel seeks to intrude upon here cannot be considered "crucial" and used to

15  justify Littler's deposition.

16       Moreover, the whereabouts and Littler's handling of Mr. Bryant's

17  computers, and all of the other information Mattel seeks from Littler, are not

18  "crucial" to Mattel's case.  Even if Mattel could obtain some non-privileged

19  information useful to its case by deposing Littler on these topics (which it cannot),

20  that information would be tangential at best—not crucial—to the actual issues

21  presented in this litigation.  *Cf. Am. Casualty*, 160 F.R.D. at 589-91 (allowing

22  deposition of counsel under *Shelton*, subject to partial protective order limiting

23  scope and duration, where counsel was "instrumental" in default judgment and

24  assignment of rights, the validity of which was central to the opposing party's

25  defense).  Mattel has images of Bryant's computers, as they were in July 2004, at

26  the outset of this litigation.

27       Nothing concerning Littler's subsequent handling of those computers could

28  possibly have the slightest relevance to this case.  If Littler had tossed both

9

CARTER BRYANT'S NOTICE OF MOTION AND MOTION TO QUASH MATTEL'S DEPOSITION
SUBPOENA TO LITTLER MENDELSON, P.C.; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. CV 04-09049 SGL (RNBx)

402452.01

1 │ computers off a bridge the day after they were imaged in the summer of 2004, not
2 │ a bit of relevant evidence would have been lost. That, after all, is the whole point
3 │ of taking a forensic image: it preserves intact every bit of evidence one could
4 │ extract from the original computer, frozen in time. Mattel does not need to depose
5 │ Littler to know what relevant documents were on the computers when Littler
6 │ imaged them, and the facts of Littler's activities since July 2004 have no relevance
7 │ to Mattel's claims against Bryant. Similarly, Mattel has Bryant's fee agreements
8 │ with MGA, and does not need anything further from Littler to support any attempt
9 │ it may make to impeach Mr. Bryant's credibility at trial. The fact that MGA is
10 │ paying Bryant's fees is established and undisputed, and nothing further about that
11 │ arrangement is relevant. And finally, Mattel has inspected and tested Bryant's
12 │ original drawings, and does not need any testimony from Littler about those
13 │ drawings' history to support whatever theory about the drawings it intends to
14 │ present at trial. Nothing Mattel could hope to obtain by deposing Littler is crucial
15 │ to Mattel's case.

## IV.   CONCLUSION

Because Mattel cannot satisfy the *Shelton* test, for all the reasons above, Bryant respectfully requests that the Court QUASH Mattel's deposition subpoena to Littler in its entirety, and ORDER Mattel to refrain from further harassing discovery attempts directed at Bryant's litigation counsel.

Respectfully submitted,

Dated: December 13, 2007        KEKER & VAN NEST, LLP


By: _____
        MICHAEL H. PAGE
        Attorneys for Plaintiff
        CARTER BRYANT

402452.01

1

## PROOF OF SERVICE

2

3

4

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

5

On December 13, 2007, I served the following document(s):

6

7

**CARTER BRYANT'S NOTICE OF MOTION AND MOTION TO QUASH MATTEL'S DEPOSITION SUBPOENA TO LITTLER MENDELSON, P.C.; MEMORANDUM OF POINTS AND AUTHORITIES**

8

9

10

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery;

11

12

13

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

14

15

16

17

18

19

Hon. Edward A. Infante
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Tel:    415/774-2649
Fax:    415/982-5287
Email: schan@jamsadr.com

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:    213/443-3000
Fax:    213/443-3100
Email: johnquinn@quinnemanuel.com
Email: michaelzeller@quinnemanuel.com

20

21

22

23

24

Thomas J. Nolan
Skadden Arps Slate Meagher & Flom
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel:    213/687-5000
Fax:    213/687-5600
Email: tnolan@skadden.com

25

Executed on December 13, 2007, at San Francisco, California.

26

27

28

1    I declare under penalty of perjury under the laws of the State of California that the above
2  is true and correct.

3

4                                          _Julie A. Selby_
5                              Julie A. Selby

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)