KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                              Plaintiff,<br><br>     v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>                              Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard by Discovery Master Hon. Edward Infante (Ret.)]**<br><br>**DECLARATION OF MICHAEL H. PAGE IN SUPPORT OF CARTER BRYANT'S MOTION TO QUASH MATTEL'S DEPOSITION SUBPOENA TO LITTLER MENDELSON, P.C.**<br><br>Date:       T.B.D.<br>Time:       T.B.D.<br>Judge:     Hon. Stephen G. Larson<br>Date Comp. Filed:  April 13, 2005<br>Discovery Cut-Off:  Jan. 28, 2008<br>Trial Date: May 27, 2008 |

DECLARATION OF MICHAEL H. PAGE ISO CARTER BRYANT'S MOTION TO QUASH MATTEL'S DEPOSITION SUBPOENA TO LITTLER MENDELSON, P.C. CASE NO. CV 04-09049 SGL (RNBx)

402453.01

I, Michael H. Page, declare and say that:

1.     I am an attorney licensed to practice law in the State of California and am a partner at Keker & Van Nest, LLP, counsel for Carter Bryant in the above-captioned action.

2.     I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, could do so competently under oath.

3.     On August 29, 2007, under my supervision, Michael Zeller of Quinn Emanuel reviewed and inspected Carter Bryant's Compaq Presario.  Shortly afterwards, under an agreement I reached with Mr. Zeller, computer technicians working for Mr. Zeller took an image of that computer's hard drive and also copied the image Mr. Bryant's former counsel, Littler Mendelson ("Littler") had taken of the computer in 2004.

4.     On September 17, 2007, I participated in a meet and confer call about Mattel's subpoenas to Littler, with Susan Wines, Diana Torres, and Keith Jacoby.  During that conference, I informed Ms. Wines that Bryant had no objection to Littler producing any responsive, non-privileged documents in its possession in response to Mattel's subpoena.  Mr. Jacoby, for Littler, informed Ms. Wines that Littler had no such documents.  I agreed that my firm would review Bryant's files received from Littler for any responsive, non-privileged documents and would supplement Carter Bryant's production with any such documents.

5.     During Mattel's three-day deposition of Carter Bryant in November 2004, Mr. Bryant testified about his history of computer use and ownership.

6.     Attached as Exhibit 1 hereto is a true and correct copy of an email from me to Michael Zeller, dated August 29, 2007 and incorporating earlier email correspondence between us.

7.     Attached as Exhibit 2 hereto is a true and correct copy of excerpts from the July 24, 2007 deposition of Brook Gilbert.

8.     Attached as Exhibit 3 hereto is a true and correct copy of excerpts

DECLARATION OF MICHAEL H. PAGE ISO CARTER BRYANT'S MOTION TO QUASH MATTEL'S DEPOSITION SUBPOENA TO LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

402453.01

1    from the September 28, 2007 deposition of Richard Irmen.

2        9.    Attached as Exhibit 4 hereto is a true and correct copy of the Court's
3    September 28, 2007 Order Granting In Part Mattel's Motion for Additional Time
4    to Depose Carter Bryant for All Purposes.

5        10.    Attached as Exhibit 5 hereto is a true and correct copy of the April 24,
6    2007 Declaration of Keith A. Jacoby submitted to the Court in opposition to
7    Mattel's efforts to compel production of Mr. Bryant's computer hard drives.
8    Attached as Exhibit A to that declaration is a letter from Mr. Jacoby to Michael
9    Zeller dated April 23, 2007.

10        11.    Attached as Exhibit 6 hereto is a true and correct copy of a letter from
11    me to B. Dylan Proctor, dated June 28, 2007, without enclosures.

12        12.    Attached as Exhibit 7 hereto is a true and correct copy of an email
13    from John Trinidad to Diane Hutnyan, dated May 22, 2007.

14        13.    Attached as Exhibit 8 hereto is a true and correct copy of an email
15    from Diane Hutnyan to John Trinidad, dated May 25, 2007.

16        14.    Attached as Exhibit 9 hereto is a true and correct copy of an email
17    from Brent Smyth to John Trinidad, dated May 30, 2007.

18        15.    Attached as Exhibit 10 hereto is a true and correct copy of an email
19    from Brent Smyth to John Trinidad, dated June 18, 2007.

20        16.    Attached as Exhibit 11 hereto is a true and correct copy of an email
21    from Diane Hutnyan to John Trinidad, dated September 12, 2007.

22        17.    Attached as Exhibit 12 hereto is a true and correct copy of an email
23    from Diane Hutnyan to John Trinidad, dated October 17, 2007.

24        18.    Attached as Exhibit 13 hereto is a true and correct copy of the
25    document subpoena Mattel issued to Littler on August 3, 2007.

26        19.    Attached as Exhibit 14 hereto is a true and correct copy of Mattel's
27    September 6, 2007 notice of deposition attaching a deposition subpoena issued to
28    Littler on September 5, 2007.

402453.01

1    20.   Attached as Exhibit 15 hereto is a true and correct copy of an email
2  from Christa M. Anderson to Susan Wines dated September 11, 2007.

3    21.   Attached as Exhibit 16 hereto is a true and correct copy of a letter
4  from Christa M. Anderson to James Webster dated December 3, 2007.

5    22.   Attached as Exhibit 17 hereto is a true and correct copy of a letter to
6  me from James Webster dated November 30, 2007.

7    I declare the foregoing to be true and correct under penalty of perjury under
8  the laws of the State of California and executed this 12th day of December, 2007,
9  in San Francisco, California.

10

11

12

13    MICHAEL H. PAGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

DECLARATION OF MICHAEL H. PAGE ISO CARTER BRYANT'S MOTION TO QUASH MATTEL'S
DEPOSITION SUBPOENA TO LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

402453.01

# EXHIBIT 1

**Audrey Walton-Hadlock**

| | |
|---|---|
| **From:** | Michael Page |
| **Sent:** | Wednesday, August 29, 2007 9:28 AM |
| **To:** | 'Michael T Zeller' |
| **Cc:** | Susan Wines |
| **Subject:** | RE: Bryant Hard Drives |

Sounds good.  If you're here early, I'll buy lunch.

---

**From:** Michael T Zeller [mailto:michaelzeller@quinnemanuel.com]
**Sent:** Wednesday, August 29, 2007 9:23 AM
**To:** Michael Page
**Cc:** Susan Wines
**Subject:** RE: Bryant Hard Drives

I will look at the ones you have tomorrow, which should include at least the laptop, and we can separately address the other ones.

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  michaelzeller@quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Michael Page [mailto:MPage@KVN.com]
**Sent:** Wednesday, August 29, 2007 9:25 AM
**To:** Michael T Zeller
**Cc:** Susan Wines
**Subject:** RE: Bryant Hard Drives

Mike:

The motion to compel imaging of Mr. Bryant's drives was very specifically addressed only at the three computers I listed, and we are not prepared to turn over wholesale the contents of more recently used computers.  Obviously, computers used during the pendency of this lawsuit potentially contain privileged material, as well as material entirely irrelevant to this lawsuit. Conversely, as they postdate the relevant time period, they are much less likely to contain relevant information.  To the extent they do, that matrerial has been reviewed and produced.

More immediately, there is no way we would be able to review multiple hard drives for privilege in time to provide them to you tomorrow.

12/12/2007

MHP

**From:** Michael T Zeller [mailto:michaelzeller@quinnemanuel.com]
**Sent:** Tuesday, August 28, 2007 6:28 PM
**To:** Michael Page
**Cc:** Susan Wines
**Subject:** RE: Bryant Hard Drives

Mike, yes, we're still on for Thurs. at 1. However, there are additional hard drives that are covered by the Order. The Order essentially required Bryant to produce all of his hard drives.

I believe that there are at least four images and at least one drive that we have not received. One drive and one image is from an older laptop. At least three images are from computers that Bryant has been using more recently (and hence was the basis for Littler saying that they had unreleased designs on them that didn't need to be produced before the end of June). Here's a list of what I understand Littler had:

(1) 20GB Quantum Fireball LCT 15 hard drive, plus image made in July 2004 -- Mattel HAS copies/images of these.

(2) 20GB Travelstar hard drive from Compaq Presario laptop, plus image of drive made in July 2004 -- Mattel has NOT been given access to or copies of these.

(3) Littler also stated earlier this year that there were additional "hard drive(s)" that had been "recently copied in Missouri." There are at least three images of these drives as well. Mattel has NOT been given access to or copies of these drives or images.

However, this is just what Littler had informed me of. If there are additional drives or images of Carter Bryant's computers, these are also required to be produced. Please let me know if you have any questions or concerns.


Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: michaelzeller@quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.


**From:** Michael Page [mailto:MPage@KVN.com]
**Sent:** Tuesday, August 28, 2007 10:05 AM
**To:** Michael T Zeller
**Cc:** Susan Wines
**Subject:** RE: Bryant Hard Drives

Thanks.

12/12/2007

My understanding is that the inspection order covers three computers:  the desktop that was given to Brooke Gilbert (which you have already inspected), the laptop (which we have here, as well as an EnCase image of it), and a computer that Carter's parents owned, which we do not have.

Are we still on for 1 Thursday?

---

**From:** Michael T Zeller [mailto:michaelzeller@quinnemanuel.com]
**Sent:** Tuesday, August 28, 2007 9:45 AM
**To:** Michael Page
**Cc:** Susan Wines
**Subject:** Bryant Hard Drives

Mike, here is the relevant prior correspondence regarding Carter Bryant's hard drives.  Please let me know if you have any questions.  Thanks.

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  michaelzeller@quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# EXHIBIT 2

1

1    UNITED STATES DISTRICT COURT
2    CENTRAL DISTRICT OF CALIFORNIA
     EASTERN DIVISION

3    CARTER BRYANT, an
     individual,
4
5              Plaintiff,
                                CASE NUMBER:
6    vs.                        CV 04-9049 SGL (RNBx)

7    MATTEL, INC., a Delaware   Consolidated with
     corporation,              Case No. CV 04-09059
8                              Case No. CV 05-02727
              Defendant.
9    _____
     AND CONSOLIDATED CASES          **ORIGINAL**
10
11
12        **VIDEOTAPED DEPOSITION OF MS. BROOKE GILBERT**,

13   produced, sworn, and examined on Tuesday,

14   July 24, 2007, at 9:30 a.m. of that day,

15   at Renaissance Inn, 1303 East Kingsley Street,

16   in the City of Springfield, County of Greene,

17   and State of Missouri, before me,

18   **Debbi J. Sonntag**, RPR, CCR, in the

19   above-captioned cause; taken on behalf of the

20   Defendants.

21
22
23
                  **FOR THE RECORD, LLC**
24         **2042-B South Brentwood, Suite 115**
              **Springfield, Missouri 65804**
25                  **(417) 881-1186**

23

1    A.    Yes.

2    Q.    What was the first one?

3    A.    The first one was actually my mom's computer,

4          and I used that when I first moved to Missouri

5          with her.  She left a month later and took it.

6    Q.    Your father's in the military?

7    A.    My stepfather was, yes.

8    Q.    And your mom was living in Missouri at the time

9          you moved here?

10   A.    No.  We moved here together.

11   Q.    Where did your mom go a month after moving to

12         Missouri?

13   A.    She went back to Idaho.

14               MR. PAGE:  Got to wait till she finishes

15         the question.

16   A.    I know.  I knew you were going to say that.

17   Q.    (By Ms. Wines) And the other computer was one

18         that you had received from Carter Bryant?

19   A.    Yes.

20   Q.    When did you receive that computer from

21         Carter Bryant?

22   A.    In November of '03.

23   Q.    Either with your mom's computer which you only

24         used for a month or with the computer that you

25         had use of from Carter Bryant, did you ever have

1   remnants of files on a computer hard drive?

2 A. No.

3     MR. PAGE:  Object as asked and answered.

4   Wait.  I think it's the same question you just

5   asked one question earlier, but if it isn't, I

6   missed the difference.

7 Q. (By Ms. Wines) Have you ever heard of a program

8   called Evidence Eliminator?

9 A. Only from Mike yesterday.

10     MR. PAGE:  Instruct you not to include

11   -- to exclude from your answers the content of

12   any communications we had.

13 A. Oh.

14 Q. (By Ms. Wines) So before -- excluding any

15   conversations with Mr. Page, do you have any

16   knowledge of a program called

17   Evidence Eliminator?

18 A. No.

19 Q. Do you have any knowledge of what that program

20   is used for?

21 A. No.

22 Q. You don't know what it does?

23 A. No.  Only what you would gather from the name of

24   the program.

25 Q. And what would you gather from the name of the

1          program?

2    A.    That it's to get rid of stuff on the computer.

3    Q.    And you've certainly never downloaded it?

4    A.    No.

5    Q.    And never purchased it?

6    A.    No.

7    Q.    I want to talk to you just focusing in a little

8          more particularly on the computer -- what I've

9          been calling the Carter Bryant computer.

10   A.    Okay.

11   Q.    You said you received that in November 2003?

12   A.    Yes.

13   Q.    How did that come about?

14   A.    I was telling Carter that I needed a computer

15         for school and that I had planned on using the

16         one that my mom had brought that I had used

17         before, and she took that when she moved back to

18         Idaho, and he said, "I have an old one you can

19         use."  And I told him, "What a great uncle you

20         are."

21   Q.    Did he drop it off?  Did you pick it up?

22   A.    I picked it up.

23   Q.    At that time was Mr. Bryant living in

24         Springfield?

25   A.    I think he was living in Nixa.

1    Q.   I'm sorry?

2    A.   I think he was living in Nixa.

3    Q.   Where is that?

4    A.   It's about ten miles away from Springfield.

5    Q.   How did you get possession of the computer?

6    A.   It was at his property in Springfield.

7    Q.   Did you drive over and pick it up?

8    A.   Uh-huh.  Yes, I did.

9    Q.   And did you set up the computer once you picked

10        it up?

11    A.   Yes.

12    Q.   About how soon after you took possession of the

13        computer from Carter Bryant did you set up the

14        computer for purposes of using it?

15    A.   The next day.

16    Q.   Did you start using the computer the next day?

17    A.   Yes.

18    Q.   What did you use it for at that time?

19    A.   I set up E-mail on it, and I used it to type up

20        papers for my classes.

21    Q.   Did you use the Carter Bryant computer at any

22        point in time for purposes of doing any shopping

23        on-line?

24    A.   I'm sure I did.  It was Ebay, if you were going

25        to ask that too.

1    Q.    Greatest site.  Once you took possession of the

2          Carter Bryant computer, did anyone else besides

3          yourself have access to that computer at any

4          point in time?

5                    MR. PAGE:  Other than she's already

6          testified to?

7    Q.    (By Ms. Wines) Well, on a regular basis, did

8          anyone else use the computer once you took it

9          from Carter Bryant?

10   A.    Only my daughter.

11   Q.    I'm sorry.  And what's your daughter's name?

12   A.    Vanessa.

13   Q.    Vanessa.  This is your oldest?

14   A.    Yes.

15   Q.    And in November 2003 when you took possession of

16         this computer, how old was Vanessa?

17   A.    Six.

18                   MR. PAGE:  About Tigger old.

19                   MS. WINES:  What's that mean?

20                   MR. PAGE:  One of the programs on there

21         is a Tigger game.

22                   MS. WINES:  Six, I don't know.  My

23         husband might play that too.

24   Q.    (By Ms. Wines) If you know, what did your

25         daughter Vanessa use the Carter Bryant computer

38

```
 1        for?
 2   A.   To play her games.
 3   Q.   Like Tigger?
 4   A.   Like Tigger.  Reader Rabbit I'm sure.
 5   Q.   Once you obtained possession of the
 6        Carter Bryant computer in November 2003, did
 7        Mr. Bryant at any point after that have access
 8        to the computer?
 9   A.   No.
10   Q.   Did he, to your knowledge, at any point after
11        November 2003 use the computer?
12   A.   No.
13   Q.   Do you know Richard Irmen?
14   A.   Yes.
15   Q.   Who's Richard Irmen?
16   A.   He's Carter's partner.
17   Q.   Did Mr. Irmen, to your knowledge, after
18        November 2003 when you took possession of the
19        computer have access to the computer?
20   A.   Yes.
21   Q.   Can you please describe what sort of access
22        Mr. Irmen had to the computer?
23   A.   He asked me to bring the computer over to them
24        at their Virginia property so it could have an
25        image taken of it.
```

1          MR. PAGE:  For the record, Virginia's a

2     street, not a state.

3          MS. WINES:  Thank you

4          MR. PAGE:  It's also a state, but she's

5     talking about the street.

6  Q.  (By Ms. Wines) Is this street in Missouri?

7  A.  It's in Springfield.  We name the houses by the

8     street.  It makes it easier when you have

9     multiple.

10         MR. PAGE:  A problem I've never had to

11    grapple with.

12  A.  Yeah, I don't either.

13  Q.  (By Ms. Wines) I don't think I ever will.  How

14    did he -- how did this come about?  Did he call

15    you on the phone and what did he say to you

16    about this?

17  A.  He called me and said, "Could you please bring

18    the computer over?"

19  Q.  When was that?

20  A.  I can't recall the exact date right now, but it

21    was whenever the image was taken for the lawsuit

22    purposes.

23  Q.  Do you remember the year?

24  A.  I think it was '04.

25  Q.  '04?

40

A.   Uh-huh.

          MR. PAGE:  If you want, I could make a
representation on when it was.

          MS. WINES:  If you would, please.

          MR. PAGE:  It was in July '04.

Q.   (By Ms. Wines) Everything happens around your
birthday.

A.   I know.

Q.   So what happened after he called -- Mr. Irmen
called you and asked you to bring the computer
over to the Virginia Street property?

A.   I took it over, and he called me three days
later and said, "You can come get it."

Q.   Did you have any knowledge of how the image was
being made?

A.   No.

Q.   Or that was simply what Mr. Irmen had told you
he needed the computer back for?

A.   He just said he needed it to get an image of
what was on the hard drive.

Q.   Did he tell you that it was for purposes of this
lawsuit?

A.   I don't think so.

Q.   Have you drawn that conclusion?

A.   Yes.

1   Q.   How is that?

2   A.   I'm here.

3   Q.   I take it you didn't have any involvement then

4        or you didn't witness the actual --

5   A.   No.

6   Q.   -- what was done with the hard drive?

7   A.   No.

8   Q.   Did Mr. Irmen indicate to you that he had done

9        anything else with the computer aside from make

10       an image of it?

11  A.   No.

12  Q.   Did Mr. Bryant ever speak to you about making an

13       image of this computer?

14  A.   No.

15  Q.   Did you communicate with anyone you understood

16       to be an attorney involved with the case

17       regarding imaging the Carter Bryant computer?

18       I'm talking in this time in July of 2004.

19  A.   No.

20  Q.   So three days later after you -- three days

21       after you dropped the computer off, Mr. Irmen

22       called you?

23  A.   Yes.

24  Q.   And what happened then?

25  A.   He said that I could come pick up the computer.

42

1    Q.    Did you do that?

2    A.    Yes.

3    Q.    What did you do with the computer once you

4          picked it up?

5    A.    I hooked it right back up.

6    Q.    And shortly thereafter was it that you purchased

7          the new computer?

8    A.    Yes.

9    Q.    So you took down the Carter Bryant computer, and

10         that's when it went into your storage closet?

11   A.    Yes.

12   Q.    When you were using the Carter Bryant computer,

13         can you tell me how did the computer function?

14               MS. GLAD:  Objection, vague and

15         ambiguous.

16               MR. PAGE:  Yeah.  Well, there's a chip

17         and it --

18   A.    Are you talking about reliability of the

19         computer?

20   Q.    (By Ms. Wines) I am.

21   A.    Okay.  It was fine.

22   Q.    Did you ever have performance problems with the

23         Carter Bryant computer?

24               MS. GLAD:  Objection, vague and

25         ambiguous.

58

REPORTER'S CERTIFICATE

STATE OF MISSOURI    )
                     )ss
COUNTY OF CHRISTIAN)

     I, DEBBI J. SONNTAG, Registered
Professional Reporter and Certified Court
Reporter, do hereby certify that the witness was
duly sworn by me; that the facts stated by me in
the caption hereof are true; that the said
witness did make the above and foregoing answers
in response to questions propounded as shown;
that I did, in stenotype, report said
proceedings; and that the above and foregoing
typewritten pages contain a full, true, and
correct transcription of my shorthand notes
taken on such occasion; that said deposition is
now herewith returned.

     I further certify that I am neither
attorney for, nor counsel for, nor related to,
nor employed by any of the parties to the action
in which this deposition was taken; and,
further, that I am not a relative or employee of
any attorney or counsel employed by the parties
hereto, or financially interested in the action.

_Debbi J. Sonntag_
_____
DEBBI J. SONNTAG, RPR, CCR

**FOR THE RECORD, LLC**
**2042-B South Brentwood, Suite 115**
**Springfield, Missouri 65804**
**(417) 881-1186**

# EXHIBIT 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

        Plaintiff,

vs.              No.   CV04-9049 SGL (RNBx)

MATTEL, INC., a Delaware
corporation,

        Defendants.

**CERTIFIED
COPY**

_____

AND CONSOLIDATED ACTIONS.

_____

VIDEOTAPED DEPOSITION OF RICHARD IRMEN

San Francisco, California

Friday, September 28, 2007

REPORTED BY:
MONICA LEPE-GEORG
CSR No. 11976

Job No. 1-74003

RICHARD IRMEN                                    09/28/07

```
 1    6:02 till 6:13 p.m.)
 2              THE VIDEOGRAPHER   Back on the record.
 3              The time is 6:13.
 4    BY MR. ZELLER:
 5         Q.   Focusing on the time period of October,
 6    2000.  At that time Carter bought a new desktop
 7    computer; is that correct?
 8         A.   Yes.
 9         Q.   Prior to that time, had you or Carter or
10    Elise had in that Gardena house a computer?
11         A.   Yes.
12         Q.   Which among you had computers prior to
13    October of 2000 in that house?
14         A.   Elise had a computer there.
15         Q.   Was it an Apple computer --
16         A.   Yes.
17         Q.   -- or some other kind?
18         A.   It was an Apple.
19         Q.   Do you remember what model?
20         A.   No.
21         Q.   Was it a desktop model or a laptop?
22         A.   Desktop, I believe.
23         Q.   Other than that computer, was there any
24    other computer in the house prior to October of 2000
25    that any of the three of you had?
```

Timestamps:
18:13:57 (line 5)
18:14:07 (line 8)
18:14:08 (line 9)
18:14:18 (line 11)
18:14:19 (line 12)
18:14:26 (line 14)
18:14:29 (line 15)
18:14:31 (line 16)
18:14:33 (line 17)
18:14:35 (line 18)
18:14:37 (line 19)
18:14:38 (line 20)
18:14:38 (line 21)
18:14:44 (line 22)
18:14:45 (line 23)

284

RICHARD IRMEN                                              09/28/07

| | | |
|---|---|---|
| 18:14:54 | 1 | A.   No. |
| 18:14:56 | 2 | Q.   So it's the case that you didn't have a |
| | 3 | computer prior to October of 2000 in that house? |
| 18:15:02 | 4 | A.   No, we did not. |
| 18:15:04 | 5 | Q.   Neither you nor Carter did? |
| 18:15:06 | 6 | A.   No, we didn't. |
| 18:15:09 | 7 | Q.   Did -- did you use Elise's computer prior |
| | 8 | to that time? |
| 18:15:15 | 9 | A.   No, I don't believe I did. |
| 18:15:19 | 10 | Q.   Did you ever see Carter use it? |
| 18:15:21 | 11 | A.   No. |
| 18:15:30 | 12 | Q.   When Elise moved out, did she take the |
| | 13 | computer with her? |
| 18:15:34 | 14 | A.   Yes, she did. |
| 18:15:36 | 15 | Q.   So there was no computer at all in the |
| | 16 | house from the time period when Elise moved out up |
| | 17 | until the time that Carter bought that desktop |
| | 18 | computer in October of 2000? |
| 18:15:47 | 19 | A.   That's correct. |
| 18:15:53 | 20 | Q.   And we were talking about Carter bought a |
| | 21 | desktop computer in October of 2000, but that was in |
| | 22 | the Gardena house? |
| 18:16:02 | 23 | A.   Yes. |
| 18:16:03 | 24 | Q.   Did you use that computer? |
| 18:16:06 | 25 | A.   Yes. |

285

RICHARD IRMEN                                              09/28/07

18:16:07  1      Q.   Did Carter use that computer that you saw?

18:16:10  2      A.   Yes.

18:16:18  3      Q.   At some point on that desktop computer a

4   program called "Evidence Eliminator" was installed;

5   is that correct?

18:16:33  6      A.   I believe so.

18:16:35  7      Q.   Was that something that you did or Carter

8   did?

18:16:37  9      A.   I believe Carter did.

18:16:42  10     Q.   Have you ever had any conversations or

11  discussions with Carter about -- about that program?

18:16:50  12          MS. ANDERSON:   Again, excluding any

13  conversations that you might have had in the

14  presence of counsel, which would be attorney-client

15  privilege, otherwise you may answer.

16          THE WITNESS:   Yes.

17  BY MR. ZELLER:

18:17:01  18     Q.   And what did you and Carter discuss in that

19  regard?

18:17:06  20     A.   I've seen it running.   I'm very computer

21  illiterate.   They don't like me and I know it.   I

22  would say -- you know, in his office it would be

23  running and I'd say turn off your computer and he'd

24  say oh, it's running through.   It keeps the computer

25  clean and it shuts itself off.   I remember asking

286

RICHARD IRMEN                                          09/28/07

1    him about that.

18:17:30  2         Q.  When you say you had seen it running, you

3    saw the Evidence Eliminator program running on the

4    computer?

18:17:37  5         A.  Yeah, the screen thing and whatever, it had

6    lines or --

18:17:43  7         Q.  And did you see this for the first time

8    when you and Carter were in the Gardena house?

18:17:50  9         A.  I believe that was in the Nixa house where

10   I seen it.

18:17:55  11        Q.  And is it fair to say that you hadn't seen

12   it running prior to the time that you were in the

13   Nixa house?

18:18:03  14        A.  I don't recall, but I'm not really sure

15   about that either.

18:18:07  16        Q.  It's fair to say that the first

17   recollection you have of seeing it running was when

18   you were in the Nixa house?

18:18:14  19        A.  Yes.

18:18:14  20        Q.  And tell me if I'm wrong, but it sounded

21   like you had seen this running more than once; is

22   that correct?

18:18:21  23        A.  Probably did.

18:18:23  24        Q.  That's your best recollection?

18:18:25  25        A.  Yes.

287

RICHARD IRMEN                                                    09/28/07

```
18:18:31    1         Q.  Were you involved in any way in the
            2   purchase of the Evidence Eliminator program that was
            3   on the desktop computer?
            4              MS. ANDERSON:  Lacks foundation.
            5              THE WITNESS:  No, I wasn't.
            6   BY MR. ZELLER:
18:18:45    7         Q.  Do you -- do you know how Carter went about
            8   obtaining that program?
            9              MS. ANDERSON:  Calls for speculation.
           10              THE WITNESS:  I do not.
           11   BY MR. ZELLER:
18:18:52   12         Q.  Do you have any knowledge or information as
           13   to why Carter obtained that program?
           14              MS. ANDERSON:  Calls for speculation.
           15              THE WITNESS:  My understanding is -- is
           16   that when you ran that at the end of the day or once
           17   a week or whatever, that it kept your files clean
           18   from viruses and it kept your computer running
           19   tiptop.
           20   BY MR. ZELLER:
18:19:18   21         Q.  And this understanding that you mentioned
           22   was based upon what Carter told you?
18:19:23   23         A.  Yes.
18:19:26   24         Q.  Was that understanding based on anything
           25   other than what Carter told you?
```

288

RICHARD IRMEN                                                    09/28/07

18:19:30  1        A.   No.

18:19:33  2        Q.   Is it fair to say that the only knowledge

       3   that you have about why Evidence Eliminator was

       4   installed and run on the desktop computer was what

       5   Carter told you?

18:19:48  6        A.   Yes.   That's the only information that I

       7   have about the program.

18:19:54  8        Q.   Did you, yourself, ever run it?

18:19:57  9        A.   No.

18:20:08  10       Q.   And do you know where that desktop computer

      11   is today?

      12            MS. ANDERSON:   Calls for speculation.

      13   Lacks foundation.

      14            THE WITNESS:   No, I do not.

      15   BY MR. ZELLER:

18:20:17  16       Q.   When did you last know where the desktop

      17   computer was?

18:20:21  18       A.   I believe it went with our lawyers.   The

      19   lawyers got it somewhere.

18:20:34  20       Q.   When is it that -- what's the time period

      21   in which you last knew where the desktop computer

      22   was?

18:21:00  23       A.   '04 -- it was involved with this case.

18:21:10  24       Q.   As of April of 2004 were you living in the

      25   Nixa house?

                                                                289

**RICHARD IRMEN**                                          09/28/07

18:21:19  1      A.  No.

18:21:19  2      Q.  Where were you living as of April of 2004?

18:21:23  3      A.  The Farm Road 115 home.

18:21:27  4      Q.  As of that time, did you and Carter still

5   have that desktop computer?

6              MS. ANDERSON:  Vague.

7              THE WITNESS:  No, we did not.

8              MR. ZELLER:  Well, I could rephrase it.

18:21:40  9      Q.  As of April of 2004 where, to your

10   knowledge, was that desktop computer?

18:21:48  11     A.  We had given it to Carter's niece, Brooke.

18:21:53  12     Q.  That's Brooke Gilbert?

18:21:55  13     A.  Yes.

18:22:04  14     Q.  And when is it that Carter had given the

15   desktop computer to Brooke Gilbert?

18:22:12  16     A.  I don't recall -- I don't recall exactly.

18:22:16  17     Q.  Do you recall generally?

18:22:20  18     A.  When we lived in Missouri.

18:22:26  19     Q.  Are you able to tell me whether it was a

20   year before April of 2004, two years before then

21   that Carter had given the computer to Brooke

22   Gilbert?

18:22:47  23     A.  I don't know when he gave it to her.

18:22:53  24     Q.  How do you know that Carter gave it to

25   Brooke?

290

18:22:57  1        A.   Well, Brooke was setting up some of our --

2    like the phone bill and stuff on Auto Pay and I know

3    she was using that computer, I don't remember when

4    it was.   It could have been when we lived in the

5    Nixa house or somewhere right in there.   It was

6    Carter's computer and when he upgraded, he gave it

7    to her because she didn't have one.

18:23:29  8        Q.   Well, let me try something more

9    specifically.

10             Did you yourself actually physically take

11   the computer over to Brooke Gilbert's?

18:23:40  12       A.   I don't -- I don't remember doing that.

18:23:49  13       Q.   And I take it at some point after April of

14   2004 you're aware of some effort made to find the

15   desktop computer?

16             MS. ANDERSON:   Caution the witness to the

17   extent the information you know in response to this

18   question is information you know from counsel for

19   yourself and Mr. Bryant, I instruct you not to

20   answer on the attorney-client privileged grounds,

21   otherwise you may answer.

22             THE WITNESS:   Yes.

23   BY MR. ZELLER:

18:24:23  24       Q.   Was this something that Carter raised with

25   you?

RICHARD IRMEN                                    09/28/07

 1          MS. ANDERSON:  Caution the witness again

 2   not to reveal attorney-client privileged

 3   communications.

 4          THE WITNESS:  I don't remember who asked me

 5   about it.  It's probably Carter.

 6   BY MR. ZELLER:

18:24:43   7      Q.  Did you and Carter talk about that desktop

 8   computer in that time frame?

 9          MS. ANDERSON:  Again, caution the witness

10   not to reveal communications, including

11   communications we were discussing advice from your

12   joint counsel.

13          THE WITNESS:  No.

14   BY MR. ZELLER:

18:25:07  15      Q.  Did you have any lawyers representing you

16   back in April of 2004?

18:25:20  17      A.  For?

18:25:21  18      Q.  For any purpose.

19          MS. ANDERSON:  You can provide a yes or no.

20          THE WITNESS:  I don't believe so, no.

21   BY MR. ZELLER:

18:25:32  22      Q.  And at any time during the year 2004, did

23   you have lawyers representing you in connection with

24   this lawsuit?

18:25:44  25      A.  April is when this lawsuit was filed?

RICHARD IRMEN                                        09/28/07

18:30:38  1        Q.   Is MGA paying for the fees for you in
2     connection with the lawsuit?
3               MS. ANDERSON:   Objection to the extent the
4     information you know is responsive to that question
5     you only know from communications from your lawyers,
6     I instruct you not to answer on grounds of
7     attorney-client privilege.
8               THE WITNESS:   I decline to answer.
9     BY MR. ZELLER:
18:31:11  10        Q.   Returning to the desktop computer that
11    Carter had purchased in October of 2000, you'd
12    mentioned that at some point it came to your
13    attention that there were efforts being made to
14    locate that computer; is that correct?
18:31:28  15        A.   Yes, that's correct.
18:31:31  16        Q.   Is there anything that you did, yourself
17    personally, in connection with trying to locate that
18    desktop computer after that time?
18:31:38  19        A.   No, I don't believe so.
18:31:39  20        Q.   Did Carter?
21               MS. ANDERSON:   And you should not reveal
22    attorney-client communications, or communications
23    with Carter in the presence of lawyers, that's
24    attorney-client privilege, otherwise you may answer.
25               THE WITNESS:   I don't know.

297

RICHARD IRMEN                                        09/28/07

1    BY MR. ZELLER:

18:31:54  2       Q.  Do you know what was done in connection

3    with tracking down that computer?

4            MS. ANDERSON:  Objection.  Instruct the

5    witness not to answer to the extent it calls for

6    attorney-client privileged communication, otherwise

7    you may answer.

8            THE WITNESS:  I do not know.

9            MR. ZELLER:  Let me try a couple specific

10   things to see if this is something you were aware

11   of.

18:32:17  12      Q.  Are you aware of whether or not the desktop

13   computer was imaged in the summer of 2004?

14           MS. ANDERSON:  Same objection.  Same

15   instruction.

16           THE WITNESS:  I believe it was, yes.

17   BY MR. ZELLER:

18:32:35  18      Q.  And how did that come to your attention?

19           MS. ANDERSON:  Again, caution the witness

20   not to reveal attorney-client privileged

21   communication.

22           THE WITNESS:  Somebody told me it had been.

23   BY MR. ZELLER:

18:32:53  24      Q.  Were you present when it was done?

18:32:55  25      A.  I'm not sure.

298

**RICHARD IRMEN**                                                      09/28/07

18:32:56  1      Q.  Do you know who was present?

2            MS. ANDERSON:  Calls for speculation.

3            THE WITNESS:  The computer guy doing it.   I

4    don't remember who was there.

5    BY MR. ZELLER:

18:33:10  6      Q.  Was that done over at Brooke Gilbert's

7    house or at your house?

8            MS. ANDERSON:  Lacks foundation.

9            THE WITNESS:  I don't remember.  I know

10   that that computer and others were imaged.  I

11   remember having to meet the representative or

12   whoever came out to do it.  I don't even remember

13   which computer was done where.  I just know it was

14   done.

15   BY MR. ZELLER:

18:33:37  16     Q.  Is it fair to say that the computers that

17   were imaged, that you're aware of, were imaged at

18   your house?

19           MS. ANDERSON:  Lacks foundation.

20   Mischaracterizes his testimony.

21           THE WITNESS:  Possibly.  Excuse me.

22   BY MR. ZELLER:

18:33:52  23     Q.  Let me try something more specific.

24           Did you ever go over to Brooke Gilbert's

25   house in connection with the imaging of the desktop

1    computer?

18:34:02  2        A.  No.  I believe that they were done at our

3    house, but I'm not 100 percent sure on that one.

18:34:08  4        Q.  Is that something that Carter was involved

5    in?

6              MS. ANDERSON:  Vague and lacks foundation.

7              THE WITNESS:  I -- I don't remember if he

8    was even in town at that time.

9    BY MR. ZELLER:

18:34:26 10        Q.  Is there any specific person who you could

11   identify by name who was involved in that?

12             MS. ANDERSON:  Vague.

13             THE WITNESS:  No.

14   BY MR. ZELLER:

18:34:39 15        Q.  After the desktop computer was imaged,

16   where did it go next?

17             MS. ANDERSON:  That question calls for

18   speculation.  Lacks foundation and may call for

19   attorney-client privileged communications as to

20   which I instruct you not to answer.

21             THE WITNESS:  I don't know.

22   BY MR. ZELLER:

18:35:04 23        Q.  Do you have any knowledge as to where the

24   desktop computer has been since the time that it was

25   imaged in the summer of 2004 up until, as you

1    mentioned, the lawyers had gotten it and you last
2    knew where it was?

3              MS. ANDERSON:   Same objection.   Same
4    instruction.

5              THE WITNESS:   I'm not sure where it was at.
6    BY MR. ZELLER:

18:35:34    7        Q.   At any time in 2004 did you and Carter
8    visit Brooke Gilbert's other house?

18:35:45    9        A.   Yeah.   We are family.

18:35:47   10        Q.   And was that an usual occurrence or unusual
11    occurrence during that time period?

18:35:53   12        A.   That we visit Brooke?

18:35:55   13        Q.   Right.

18:35:56   14        A.   No, it's usual.

18:35:59   15        Q.   Can you tell me approximately how often it
16    was in that time period?   Was it once a week?   Once
17    every couple weeks?   Once a month?

18:36:07   18        A.   It's -- nothing -- not a once a week type
19    of deal.   We were at her house for kid's birthday
20    parties and different family events like that.   Stop
21    in, say hi, have a cup of coffee if we were in the
22    neighborhood.   Just sporadic, general stuff.

18:36:28   23        Q.   At any time after that desktop computer was
24    given to Brooke Gilbert, did you use it?

18:36:37   25        A.   No.

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

RICHARD IRMEN                                                09/28/07

18:36:41  1           Q.   Do you know one way or another whether

          2     Carter used it after that time?

          3                MS. ANDERSON:  Calls for speculation.

          4                THE WITNESS:  To my knowledge, Brooke is

          5     the only person who used the computer after it was

          6     given to her.

          7     BY MR. ZELLER:

18:36:55  8           Q.   Is it fair to say that you don't know for

          9     sure, though?

18:36:59 10           A.   I don't know who used it when Brooke owned

         11     it.

18:37:04 12           Q.   All right.  And that's what I'm trying to

         13     find out.

         14                You don't know for a fact who used the

         15     desktop computer after it was in Brooke's house and

         16     after it was given to Brooke; is that true?

18:37:18 17           A.   That is true.

18:37:28 18           Q.   Do you know anything about what happened to

         19     the image that was made of the desktop computer in

         20     the summer of 2004?

         21                MS. ANDERSON:  Calls for speculation.

         22                THE WITNESS:  I have no idea.

         23     BY MR. ZELLER:

18:37:41 24           Q.   Did you ever review it?

18:37:42 25           A.   No, I never did.

302

RICHARD IRMEN                                              09/28/07

18:37:45    1          Q.   Do you know anyone who reviewed it?

            2               MS. ANDERSON:   That question calls for

            3     speculation and it's vague.

            4               THE WITNESS:   No, I do not.

            5     BY MR. ZELLER:

18:37:56    6          Q.   Did you get a copy of it?

18:37:59    7          A.   No.

            8               MS. ANDERSON:   The question --

            9     BY MR. ZELLER:

18:38:01   10          Q.   Did Carter, to your knowledge?

           11               MS. ANDERSON:   Calls for speculation.

           12               THE WITNESS:   No, to my knowledge nobody

           13     had -- did not receive any of that.

           14               A copy of the images is what you're asking,

           15     correct?

           16               MR. ZELLER:   Right.   Exactly.

           17               THE WITNESS:   No, we've never received any

           18     copies of any images taken from our computers.

           19     BY MR. ZELLER:

18:38:22   20          Q.   Do you have any knowledge or information as

           21     to what was done, if anything, to review the image?

           22               MS. ANDERSON:   That question calls for

           23     speculation as well as seeks to invade the

           24     attorney-client privilege.   You should not respond

           25     with respect to information you only know from your

                                                                        303

RICHARD IRMEN                                          09/28/07

1    counsel, that's privileged and I instruct you not to

2    answer, otherwise you may respond.

3              THE WITNESS:  I don't know what was done

4    with that.

5    BY MR. ZELLER:

18:38:51   6       Q.  Are you excluding anything from your answer

7    based on the instruction?

18:38:59   8       A.  No.

18:39:01   9       Q.  Is there anything else where the laptop --

10   or excuse me, where the desktop computer has been at

11   any time since October of 2000 that you haven't told

12   me about already?

13             MS. ANDERSON:  Asked and answered.  And

14   also caution the witness not to reveal

15   attorney-client privileged information.

16             THE WITNESS:  No.

17   BY MR. ZELLER:

18:39:23   18      Q.  Put differently, I have your complete

19   knowledge and testimony about -- about that desktop

20   computer; is that true?

18:39:31   21      A.  Yes.

18:39:32   22      Q.  At least in terms of who used it and where

23   its been?

18:39:37   24      A.  Yes.  To the best of my knowledge.

18:39:44   25      Q.  After the -- well, let me ask it this way,

304

1  at any time after 2004 did you see the desktop

2  computer over there at Brooke's house?

18:40:05  3       A.   I'm sure I did if I was there and I was --

4  if I was in her computer room or her office --

5  actually, it was a rumpus room because the kids were

6  there, too.   I'm sure I've seen it.

18:40:19  7       Q.   When you say you're sure you've seen it,

8  you saw that desktop computer at Brooke's house --

18:40:26  9       A.   Yes.

18:40:27  10       Q.   -- after 2004?

18:40:30  11       A.   Yes.   Yes.

18:40:33  12       Q.   At some time after Carter's purchase of the

13  desktop computer in October of 2000, did he buy a

14  Compaq laptop?

18:40:44  15       A.   Yes.

18:40:45  16       Q.   And do you know when he bought that one?

17            MS. ANDERSON:   Calls for speculation to

18  some extent.

19            THE WITNESS:   I believe it was around

20  February of 2002.

21  BY MR. ZELLER:

18:41:08  22       Q.   Did you ever see Evidence Eliminator

23  running on that laptop?

18:41:14  24       A.   I don't recall.

18:41:15  25       Q.   Did you install Evidence Eliminator on that

RICHARD IRMEN                                    09/28/07

1    laptop?

18:41:19   2        A.   No, I did not.

18:41:20   3        Q.   Have you ever installed Evidence Eliminator

4    on any computer?

18:41:26   5        A.   No, I've never installed anything on any

6    computer.

18:41:35   7        Q.   That saves us a lot of questions.

8             Other than in connection with the desktop

9    computer that you described earlier, have you ever

10   seen Evidence Eliminator running on any of Carter's

11   computers?

18:41:50   12       A.   No.

18:41:54   13       Q.   Is it fair to say that -- well, let me ask

14   you this way, do you know whether or not Evidence

15   Eliminator was installed on the laptop?

18:42:05   16       A.   I don't know.

18:42:06   17       Q.   You're not -- you don't know one way or

18   another?

18:42:11   19       A.   No.

18:42:22   20       Q.   You mentioned that your best recollection

21   is that the laptop was purchased in February of

22   2002?

18:42:30   23       A.   Yes.

18:42:31   24       Q.   As of April of 2004, was that laptop still

25   in your house?

306

**RICHARD IRMEN**                                                      09/28/07

| | |
|---|---|
| 18:42:36 | 1 |

A.   Yes.

Q.   Was that laptop imaged in the summer of
2004?

A.   Yes, I believe it was.

Q.   Was that done at your house, yours and
Carter's house?

A.   Yes, I believe it was.

Q.   And you saw that being done; is that
correct?

A.   Yeah, I believe so.

Q.   Have you ever reviewed that image?

A.   No.   I've never reviewed any images of
anything -- any of our computers that were imaged or
received copies.

Q.   With respect to the laptop image, do you
know if anyone's reviewed it?

MS. ANDERSON:   That calls for speculation.
Lacks foundation.

THE WITNESS:   I do not know who or if
anybody has reviewed it.

BY MR. ZELLER:

Q.   Do you have any knowledge or information as
to -- whether or not any information that was on the
laptop as of April of 2004, or after that time
period, was deleted or altered by the Evidence

307

RICHARD IRMEN                                    09/28/07

```
 1   Eliminator program?
 2              MS. ANDERSON:  Calls for speculation.
 3   Lacks foundation.
 4              THE WITNESS:  I have no idea.
 5   BY MR. ZELLER:
 6       Q.  And is the same true for the desktop
 7   computer?
 8       A.  Yes, that is true also.
 9       Q.  Do you have any knowledge or information on
10   that subject with respect to the desktop computer at
11   any time period?
12       A.  No, I do not.
13       Q.  Have you ever had a discussion or
14   conversation with Carter about the installation of
15   Evidence Eliminator on the laptop?
16       A.  No.
17              MR. ZELLER:  838, is that where I'm at?
18              THE REPORTER:  833.
19              MR. ZELLER:  Let's please mark as
20   Exhibit 833 a compilation exhibit consisting of
21   various Carter Bryant Enterprise financial documents
22   that have been produced under the Bryant Bates
23   stamp.  The first page of which is entitled "Income
24   Statement Year-to-date Ending December 31st, 2002."
25   /////
```

Timestamps:
18:44:04 — line 6
18:44:06 — line 8
18:44:12 — line 9
18:44:17 — line 12
18:44:25 — line 13
18:44:34 — line 16

308

1   connection with the financials for Carter Bryant

2   Enterprises; is that true?

18:49:20   3         A.   That is true.

4              MR. ZELLER:   Why don't we take a few

5   minutes.  I'm going to check my notes, see if we're

6   done, but --

7              MS. ANDERSON:   Good.

8              THE VIDEOGRAPHER:   This marks the end of

9   Videotape No. 4 in the deposition of Richard Irmen.

10             Going off the record.  The time is

11   6:49.

12             THE REPORTER:   Mr. Zeller, is it okay if I

13   send you the rough copy next week?

14             MR. ZELLER:   Yes, sure.  That will be fine.

15             (Whereupon, a short recess was taken from

16   6:49 p.m. till 7:00 p.m.)

17             THE VIDEOGRAPHER:   Back on the record.

18   This marks the beginning of Tape No. 5 in the

19   deposition of Richard Irmen.

20             The time is 7:00.

21   BY MR. ZELLER:

19:00:08   22       Q.   Have you personally ever used Evidence

23   Eliminator to delete or modify any data or any files

24   from any computer?

19:00:18   25         A.   No.

312

1           I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3           That the foregoing proceedings were taken

4   before me at the time and place herein set forth; that

5   any witnesses in the foregoing proceedings, prior to

6   testifying, were duly sworn; that a record of the

7   proceedings was made by me using machine shorthand

8   which was thereafter transcribed under my direction;

9   that the foregoing transcript is a true record of the

10  testimony given.

11          Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [   ] was [ X ] was not requested.

15         I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated:    OCT 1 2 2007.

22

23

24              MONICA LEPE-GEORG

                  CSR No. 11976

25

# EXHIBIT 4

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:      (415) 774-2611
4  Facsimile:      (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11 | CARTER BRYANT, an individual,          | CASE NO. C 04-09049 SGL (RNBx)
   |                                        | JAMS Reference No.1100049530
12 |              Plaintiff,                 |
13 |       v.                               | Consolidated with
   |                                        | Case No. CV 04-09059
14 | MATTEL, INC., a Delaware corporation,  | Case No. CV 05-2727
15 |              Defendant.                 | **ORDER GRANTING IN PART
   |                                        | MATTEL'S MOTION FOR
16 |                                        | ADDITIONAL TIME TO DEPOSE
   |                                        | CARTER BRYANT FOR ALL
17 |                                        | PURPOSES**
18 | CONSOLIDATED WITH
   | MATTEL, INC. v. BRYANT and
19 | MGA ENTERTAINMENT, INC. v. MATTEL,
   | INC.
20

21

22

23                       I. INTRODUCTION

24        On August 1, 2007, Mattel, Inc. ("Mattel") submitted its "Motion for Additional Time

25 and/or to Reopen the Deposition of Carter Bryant for all Purposes and to Overrule Additional

26 Instructions Not to Answer."  Pursuant to Rule 30(d)(3) and Rule 37, Fed.R.Civ.P., Mattel seeks

27 twenty-one additional hours of deposition time with Carter Bryant in order to "resume

28

1    questioning Mr. Bryant on all areas that Mattel's counsel previously attempted to cover in his

2    prior deposition, as well as any other relevant areas in light of the expanded scope of this

3    litigation and discovery developments." Mattel's Proposed Order. Mattel also seeks an order

4    overruling objections asserted in response to 11 deposition questions. On August 15, 2007, Carter

5    Bryant ("Bryant") submitted an opposition brief. On August 22, 2007, Mattel submitted a reply

6    brief. The matter was heard on September 26, 2007. Having considered the motion papers and

7    the comments of counsel, and good cause appearing, Bryant is ordered to appear for an additional

8    nine (9) hours of deposition.

9                                      II. BACKGROUND

10         Mattel filed its suit against Bryant in April of 2004, claiming breach of contract, breach of

11   fiduciary duty, breach of the duty of loyalty, unjust enrichment and conversion. Shortly

12   thereafter, Mattel propounded document requests and noticed Bryant's deposition for June 29,

13   2004. After meeting and conferring and eventually obtaining a court order, Bryant appeared for

14   deposition on November 4, 2004, from 9:10 a.m. to 5:00 p.m., November 5, 2004, from 9:10 a.m.

15   to 4:57 p.m., and November 8, 2004, from 10:27 a.m. to 5:09 p.m., for a total of approximately 17

16   hours, excluding breaks.

17         In April of 2005, MGA filed its lawsuit against Mattel asserting numerous unfair

18   competition claims based upon allegations that Mattel engaged in "serial copycatting" of Bratz

19   dolls, Bratz "pets" and other Bratz products, Bratz television commercials and Bratz packaging.

20   In January of 2007, Mattel filed 13 counterclaims against Bryant, MGA and other defendants,

21   including copyright infringement, RICO violations, misappropriation of trade secrets, breach of

22   contract, intentional interference with contract, breach of fiduciary duty, breach of the duty of

23   loyalty, aiding and abetting, conversion, and unfair competition.

24         In February of 2007, Mattel filed a Motion to Overrule Instructions Not to Answer During

25   the Deposition of Carter Bryant, to Compel Bryant to Answer Those Questions, and for Sanctions

26   ("February 2007 Motion"). In the February 2007 Motion, Mattel argued that counsel for Bryant

27   and MGA obstructed the deposition by, among other things, asserting improper instructions not to

28

1    answer, coaching, making lengthy speaking objections, interrupting Bryant in the middle of his

2    answers, and taking Bryant out of the deposition room with a question pending.  Mattel identified

3    67 instances of allegedly improper conduct.  Mattel substantially prevailed on its February 2007

4    Motion and Bryant was ordered to appear for an additional two hours of deposition to answer the

5    questions he was improperly instructed not to answer and reasonable follow up questions.

6         Mattel seeks an additional twenty-one hours of deposition on the grounds that: (1) new

7    claims, defenses, and parties have been added to the case after Bryant was deposed; (2)

8    defendants have now produced thousands of documents to Mattel since Bryant's deposition was

9    taken, including original Bratz drawings; (3) Bryant's and MGA's counsel prevented a fair

10   examination of Bryant; and (4) in eleven instances, Bryant's counsel assertedly did not have a

11   proper basis for instructing Bryant not to answer on privilege grounds.

12        Bryant opposes the motion on several grounds.  Bryant contends that Mattel made the

13   tactical decision to depose him at the outset of the case when the parties had barely begun

14   document discovery, and must now face the consequences of that decision.  Further, Bryant points

15   out that Mattel rejected his proposal to phase discovery so that document production would be

16   completed before depositions would take place.  Because Mattel elected to proceed with Bryant's

17   deposition at the outset of the case, Bryant contends that neither the new claims, defenses nor the

18   documents produced after his deposition warrant additional deposition time.

19        Moreover, Bryant contends that the documents produced after his deposition do not justify

20   any further deposition time because (a) virtually all of the documents referenced in Mattel's

21   current motion had been produced before it filed its February 2007 Motion, and presumably

22   should have been included in that Motion; and (b) most of the documents referenced in Mattel's

23   motion were not produced by Bryant, but by other parties and non-parties.  Bryant also contends

24   that Mattel's motion is premised upon misleading information about the history and contents of

25   his computer hard-drive.  Lastly, Bryant contends Mattel's motion is an improper attempt to

26   relitigate its prior February 2007 Motion.

27   //

28

### III. STANDARDS

Pursuant to Rule 30(a)(2)(B), Fed.R.Civ.P., leave of court must be obtained before a witness may be deposed a second time in the same case. Leave of court "shall be granted to the extent consistent with the principles stated in Rule 26(b)(2)." Furthermore, Rule 30(d)(2), Fed.R.Civ.P., provides that the court must allow additional time beyond the presumptive seven-hour limitation on a single deposition "consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstances, impedes or delays the examination."

Rule 26(b)(2), Fed.R.Civ.P., provides that the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

A party seeking a court order for additional time must show "good cause" to justify such an order. Boston Scientific Corp. v. Cordis Corp., 2004 WL 1945643 (N.D.Cal. 2004). "Typically, if, after a witness is deposed, new information comes to light relating to the subject of that deposition, new parties are added to the case, new allegations are made in pleadings, or new documents are produced, the witness may be re-deposed with respect to these new developments." Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc., 2007 WL 764302 (S.D. Ohio 2007).

### IV. DISCUSSION

#### A. New Claims and Defenses Justify Additional Time to Depose Bryant

The new claims and defenses that were added to the case after Bryant's deposition justify

1    additional deposition time.  At the time Bryant's deposition was taken in 2004, Mattel had

2    asserted five state law claims against Bryant.  After Bryant's deposition, MGA filed a complaint

3    against Mattel in April of 2005, asserting a variety of federal and state law unfair competition

4    claims.  Without question, Bryant is a critical witness regarding MGA's unfair competition claims

5    and Mattel has not had an opportunity to depose him on such claims.

6          In addition, Mattel filed a counterclaim against Bryant, MGA, and other defendants in

7    2007, asserting thirteen different claims, including violation of RICO, trademark

8    misappropriation, aiding and abetting, and copyright infringement.  Bryant filed an answer

9    asserting over twenty affirmative defenses.  Mattel has not had an opportunity to depose Bryant

10   on any of these claims or defenses.

11          In response, Bryant contends that if the amendment of claims justifies reopening his

12   deposition, it justifies reopening all depositions.  Bryant also contends that additional deposition

13   time is unwarranted because there are several other discovery methods available to Mattel to

14   obtain relevant information about any new claims and defenses.

15          Bryant's arguments overlook one critical detail:  Bryant is the central figure in this

16   litigation and arguably the most important witness for virtually every claim in the case.  No other

17   witness in the case has his depth and breadth of relevant information.  Furthermore,

18   interrogatories and requests for admission are not adequate substitutes for a face-to-face

19   deposition with the opportunity to examine the witness in depth.

20   B.  New Evidence Justifies Additional Time to Depose Bryant

21          After Bryant's deposition, Defendants produced a substantial number of documents.  This

22   production of documents provides further justification for additional time to depose Bryant.  More

23   specifically, MGA produced more than 157,000 pages and Bryant produced more than 20,000

24   pages of documents.  The size of the document production after Bryant's deposition is significant

25   in comparison to the 2,264 pages of documents produced prior to Bryant's deposition.  More than

26   98 percent of Bryant's and MGA's collective document production took place after Bryant's

27   deposition.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

1    In addition to the sheer quantity of documents produced after Bryant's deposition, Mattel

2    also emphasizes that the production included "dozens of key documents." For example, Bryant

3    produced his fee agreement on June 28, 2007. This agreement indicates that MGA has been

4    paying Bryant's legal fees and that MGA reserves the right to terminate the agreement at any time

5    for any reason, and if appropriate, seek reimbursement of any fees expended in Bryant's defense.

6    In Mattel's view, the fee agreement shows that Bryant has a strong bias to testify in favor of

7    MGA. Bryant also recently produced the hard drive of the computer he used during the relevant

8    period which has the "Evidence Eliminator" program installed. Mattel has not previously

9    questioned Bryant about these documents and should have an opportunity to do so. In addition,

10   Bryant has produced the originals of Bratz drawings, including those that bear handwritten dates

11   of September 1999 – a time when Bryant was allegedly employed by Mattel. Mattel has not had

12   an opportunity to question Bryant about those dates.

13       The documents produced by MGA also justify additional time to depose Bryant. For

14   example, MGA produced October 10, 2000 e-mails between Isaac Larian, Paula Garcia (formerly

15   Treantafelles), and Victoria O'Conner reflecting that Bryant performed work for MGA

16   approximately four hours a day starting the first part of September 2000 (while he was allegedly

17   still employed by Mattel). MGA also produced invoices showing that one vendor, Veronica

18   Marlowe, billed MGA for 169 hours of "Bratz dolls, research, development and support services"

19   that were performed from September 29, 2000 to October 20, 2000. MGA also produced a

20   facsimile from Bryant to David Rosenbaum, outside counsel for MGA, dated September 14,

21   2000, wherein Bryant stated he cannot ask Mattel's Human Resources any more questions about

22   his contract with Mattel "without risking suspicion." Proctor Decl., Ex. 2. Further, MGA

23   produced a declaration signed by Bryant that was submitted to the U.S. Patent and Trademark

24   Office, which Mattel contends contains false dates about the timing of Bratz's release and

25   indicates that Isaac Larian is the sole inventor of Bratz features which Bryant had previously

26   claimed he created.

27       Beyond the documents produced by Bryant and MGA, Mattel also identifies key

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

1    documents produced by third parties that provide further justification for additional time to

2    depose Bryant. For example, in February of 2005, Mattel obtained deposition testimony from

3    Anna Rhee which it contends establishes that she was painting three-dimensional Bratz heads by

4    June of 2000. In August of 2006, Union Bank produced documents showing that MGA issued

5    payments to Bryant on September 29, 2000, October 11, 2000, and October 13, 2000. Mattel

6    contends that these payments were issued while Bryant was still employed by Mattel. Further, in

7    September of 2006, Mattel obtained documents and testimony from Steven Linker which Mattel

8    contends establish that Bryant created a key design drawing that was the basis for three-

9    dimensional sculptures of Bratz dolls while Bryant was still employed by Mattel.

10      Mattel had access to many of the new documents prior to filing its February 2007 Motion,

11    and therefore could have included them in the February 2007 Motion. The February motion,

12    however, was focused on specific improper instructions not to answer and sought a specific order

13    requiring answers to specific questions. There is no procedural rule that required Mattel at that

14    time to seek additional deposition time on broader grounds.[1] Nor has Bryant been prejudiced by

15    Mattel's selective motion practice because his additional two-hour deposition has not yet

16    convened.

17    C. Counsel's Conduct During Bryant's Deposition Was the Subject of a Prior Motion

18      Lastly, Mattel contends that Bryant's deposition should be reopened because counsel for

19    Bryant and MGA obstructed his deposition. More specifically, Mattel contends that defense

20    counsel obstructed the deposition by coaching Bryant, interposing lengthy narrative objections

21    and repeatedly taking Bryant out of the room with questions pending. These issues were fully

22    briefed in Mattel's earlier Motion to Overrule Instructions Not to Answer During the Deposition

23    of Carter Bryant, to Compel Bryant to Answer Those Questions, And for Sanctions, dated

24    February 1, 2007. Mattel substantially prevailed in its motion and was granted two additional

25    hours to depose Bryant.

26

27       [1] Furthermore, there were several disputes regarding document production pending at that time that could ultimately affect the scope of a re-deposition.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

1      Nevertheless, Mattel now points to twelve additional instances of allegedly improper

2   instructions not to answer which it contends justify additional time to depose Bryant.  Such

3   piecemeal litigation over instructions not to answer specific questions in a deposition is

4   unwarranted.  Mattel should have included these twelve additional instructions not to answer in its

5   earlier motion.

6   D.  Twenty-One Additional Hours of Deposition Time is Excessive

7      Although the new claims and defenses justify additional deposition time, Mattel's request

8   for twenty-one hours is excessive.  There is a significant overlap between the factual bases for

9   Mattel's claims against Bryant and the newly added claims and Bryant has already been deposed

10   for seventeen hours.  Furthermore, even if the new claims and defenses asserted are treated as an

11   entirely new lawsuit, Rule 30(d)(2), Fed.R.Civ.P., imposes a presumptive one day, seven-hour

12   limitation on depositions.  The new claims and defenses do not justify exceeding the presumptive

13   seven-hour limit by a factor of three.

14      Beyond the new claims and defenses, the substantial document production that took place

15   after Bryant's deposition provides only a marginal degree of additional good cause to depose

16   Bryant further.  This is because Mattel made the tactical decision to depose Bryant very early in

17   the case, when the parties had barely begun document discovery.  Mattel filed its suit against

18   Bryant in April of 2004, and noticed his deposition for June 29, 2004.  Pursuant to court order,

19   Bryant eventually appeared for deposition on November 4, 5, and 8, 2004.  Mattel was well aware

20   of the state of discovery when it proceeded with Bryant's deposition, and the circumstances

21   Mattel now faces are partially due to its tactical choices.

22                              V. CONCLUSION

23      For the reasons set forth above, good cause exists to authorize additional time to depose

24   Carter Bryant pursuant to Rule 30(d)(2) of the Federal Rules of Civil Procedure.

25      Bryant is ordered to appear for deposition for an additional nine (9) hours, including the

26   two hours previously granted pursuant to the Order Granting in Part and Denying in Part Mattel's

27   Motion to Overrule Instructions Not to Answer During the Deposition of Carter Bryant, dated

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

1  March 7, 2007.  Given the factual overlap between the newly added claims and defenses and

2  Mattel's initial complaint, and in the interest of avoiding disputes at the deposition regarding the

3  appropriate subject matter scope of the deposition, Mattel may question Bryant on "any matter,

4  not privileged, that is relevant to the claim or defense of any party." Rule 26, Fed.R.Civ.P.

5  Further, counsel shall comply with Rule 30(d)(1), Fed.R.Civ.P.

6        The parties shall meet and confer to schedule the resumption of Mr. Bryant's deposition to

7  be held at a mutually convenient time and place.

8        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

9  Master, Mattel shall file this Order with the Clerk of Court forthwith.

10

11

12  Dated: September 28, 2007

13                                HON. EDWARD A. INFANTE (Ret.)
                                   Discovery Master

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 28, 2007, I served the attached ORDER GRANTING IN PART MATTEL'S MOTION FOR ADDITIONAL TIME TO DEPOSE CARTER BRYANT FOR ALL PURPOSES in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 28, 2007, at San Francisco, California.

_Sandra Chan_

Sandra Chan

# EXHIBIT 5

1  DOUGLAS A. WICKHAM (S.B. #127268)
   dwickham@littler.com
2  KEITH A. JACOBY (S.B. #150233)
   kjacoby@littler.com
3  LITTLER MENDELSON
   A Professional Corporation
4  2049 Century Park East, 5th Floor
   Los Angeles, CA  90067.3107
5  Telephone:   (310) 553-0308
   Facsimile:   (310) 553-5583
6
   Attorneys for Carter Bryant
7

8              UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
9                   EASTERN DIVISION

10
   CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)
11                                       (consolidated with CV 04-9059 & 05-2727)

12              Plaintiff,               **DISCOVERY MATTER**
        v.
13                                       **[To Be Heard By Discovery Master
                                         Hon. Edward Infante (Ret.) Pursuant
14  MATTEL, INC., a Delaware            To The Court's Order Of December 6,
    Corporation,                         2006]**
15
                Defendant.              **DECLARATION OF KEITH A.
16                                       JACOBY IN OPPOSITION TO
                                         MOTION OF MATTEL, INC. FOR AN
17                                       ORDER TO ENFORCE COURT'S
                                         JANUARY 25, 2007 ORDER
18                                       COMPELLING BRYANT TO
                                         PRODUCE DESKTOP COMPUTER
19                                       HARD DRIVE**

20                                       Date:  To Be Determined
                                         Time:  To Be Determined
21                                       Place:  Telephonic

22                                       Discovery Cut-Off:  October 31, 2007
                                         Trial Date:  February 12, 2008
23

24  CONSOLIDATED WITH                   Judge:  Hon. Stephen G. Larson
    MATTEL, INC. v. BRYANT and
25  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
26

27

28

                                                  DECLARATION OF KEITH A. JACOBY

I, KEITH A. JACOBY, declare as follows:

1.      I am an attorney admitted to practice before all courts in the State of California, including this Court.  I am a shareholder of the law firm of Littler Mendelson, a Professional Corporation, counsel of record for Carter Bryant ("Bryant") in this matter.  I have personal knowledge of the matters set forth herein and, if called as a witness, I could and would testify competently thereto.

2.      This is yet another discovery issue with a long and tortured history.  Only a handful of facts are relevant, however.

3.      On about April 10, 2007, Mattel. Inc. ("Mattel") filed the instant motion, seeking an order compelling Bryant to produce the original desktop computer purchased by Carter Bryant in or about October 2000 (the "Desktop Computer) for forensic imaging.  This computer is the sole subject of Mattel's motion.

4.      As Bryant has long maintained, Bryant gave the Desktop Computer to his niece, Brooke Lind Gilbert, some time ago.  In July 2004, Bryant arranged for a mirror image of the hard drive from the Desktop Computer to be taken.  Bryant has previously offered to produce a copy of this mirror image, but Mattel has insisted on inspecting the original.

5.      In response, Bryant labored to obtain the Desktop Computer from Ms. Gilbert.  My office finally received it from Ms. Gilbert on April 19, 2007.  Moreover, my office notified Mattel's counsel of this development, indicated that Bryant would make the Desktop Computer immediately available to Mattel for inspection by its forensic expert, and asked that Mattel take the instant motion off calendar.

6.      On April 23, 2007, I directed a letter to Mattel's counsel renewing Bryant's demand that the motion be placed off calendar.  Moreover, as a courtesy, I forwarded a copy of the mirror image to Mattel along with my letter.  A true and correct copy of my letter is attached hereto as Exhibit "A".

1.                      DECLARATION OF KEITH A. JACOBY

7.      Mattel, however, has not indicated that it will place the instant motion off calendar.  Nor has Mattel responded in any way to my letter.

8.      Based on the foregoing, the instant motion is moot.  Bryant has complied with the Discovery Master's prior instructions and has made the Desktop Computer available for forensic imaging.  There is no valid reason to maintain the instant motion.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 24th day of April, 2007, at Los Angeles, California.

KEITH A. JACOBY

Firmwide:82375502.1 028307.1010

2.                    DECLARATION OF KEITH A. JACOBY

EXHIBIT A



**LITTLER MENDELSON®**

A PROFESSIONAL CORPORATION

April 23, 2007

Keith A. Jacoby
Direct: 310.772.7284
Direct Fax: 310.553.5583
kjacoby@littler.com

**VIA HAND DELIVERY**

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:   **Bryant v. Mattel**

Dear Mr. Zeller:

As you know, we recently confirmed that the July 2004 "mirror image" of the 20 GB Quantum Fireball LCT 15 hard drive ("July 2004 Mirror Image") retained by this office is indeed the copy of the hard drive from the desktop computer purchased by Carter Bryant in or about October 2000. Enclosed with this letter is a copy of the July 2004 Mirror Image.

As recounted in his deposition, Mr. Bryant gave the October 2000 computer to his niece, Brooke Lind Gilbert. We obtained this computer from Ms. Gilbert on April 19, 2007. In accordance with Discovery Master Infante's ruling, we hereby make this computer and its hard drive immediately available to Mattel's expert for forensic examination in our offices. Please contact and apprise me of the identity of your expert so we can make the appropriate arrangements.

In light of the foregoing, Mattel's motion to compel the production of said hard drive is moot. We expect that you will immediately contact Discovery Master Infante and withdraw the motion.

All of Mr. Bryant's rights and remedies are hereby reserved, including the right to seek further relief concerning the appropriate manner of inspection and disposition of the Compaq Presario laptop computer hard drive, and all other hard drives in Mr. Bryant's possession, custody or control.

Michael T. Zeller
April 23, 2007
Page 2


       If you have any questions concerning the foregoing, please do not hesitate to contact
me.

Sincerely,

Keith A. Jacoby

encl

KAJ:rpe

Firmwide:82358948.1 028307.1010

Michael T. Zeller
April 20, 2007
Page 3


bcc:    Michael Page, Esq.
        Diana Torres, Esq.

# EXHIBIT 6

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

MICHAEL H. PAGE
MPAGE@KVN.COM

June 28, 2007

**VIA PDF AND U.S. MAIL**

B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:     *Bryant v. Mattel*
        United States District Court, Central District of California
        Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)

Dear Dylan:

        Per our previous discussions, enclosed please find a copy of the May 2004 Engagement Agreement, Bates Number BRYANT2 000010-15.  Pursuant to the Protective Order, this document is designated Attorney's Eyes Only.  I apologize for the quality of the copy, but that is the only version we have.

                                        Very truly yours,

                                        Michael H. Page

MHP/nsn
Enclosure
cc:     Diana M. Torres (w/enc.)

# EXHIBIT 7

**John E. Trinidad**

| | |
|---|---|
| **From:** | John E. Trinidad |
| **Sent:** | Tuesday, May 22, 2007 6:25 PM |
| **To:** | 'dianehutnyan@quinnemanuel.com' |
| **Cc:** | Michael Page |
| **Subject:** | FW: Bryant v. Mattel: Prince Notary Journal |
| | |
| **Attachments:** | John E. Trinidad.vcf |

Diane:

This email confirms our conversation earlier this evening regarding inspection of the original documents. Per that conversation, we have agreed to make available to you the original drawings you have requested on Wednesday, May 30. Should that date not be amenable, we have also designated Thursday May 31 and Friday June 1 as alternative dates.

I also informed you that we are willing to make any other originals available to you at that time, with the understanding that you will provide us with sufficient time and information to be able to locate and produce those materials.

Finally, as we agreed, I have contacted Daniel Warren, Ms. Prince's counsel, requesting that he send us her Notary Journal for your inspection on Wednesday, May 30.

Please let me know if you have any additional concerns.

Warm regards,
-John Trinidad

| | |
|---|---|
| **From:** | John E. Trinidad |
| **Sent:** | Tuesday, May 22, 2007 6:18 PM |
| **To:** | daniel.warren@sablaw.com |
| **Cc:** | 'dianehutnyan@quinnemanuel.com'; Michael Page |
| **Subject:** | Bryant v. Mattel: Prince Notary Journal |

Dan:

Per our conversation earlier today, I would appreciate your help in making Jacqueline Prince's Notary Journal available to Quinn Emanuel for inspection. Diane Hutnyan of Quinn Emanuel, who I have copied on this message, will be in our office next Wednesday, May 30. Can you please send the journal, via Federal Express, to my attention at the address below in time for that inspection? Also, would greatly appreciate it if you could send both Diane and me an email with the tracking information of that package.

After Quinn has completed their inspection, we are happy to have the notary book returned to your office.

I appreciate your help in making this document available. Please let me know if you have any questions.

Warm regards,
-John

John E. Trinidad
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94114
(415) 391-5400
jtrinidad@kvn.com

1

This message is intended only for the use of the individual or entity to whom it is addressed. The message is confidential and may contain attorney-client information, attorney work product or other privileged information. If you are not the intended recipient, you are hereby notified that any use or dissemination of this message is strictly prohibited. If you received this message in error, please notify the sender by replying to the message. When complete, please delete the original message. Thank you.



John E. Trinidad.vcf
(4 KB)

# EXHIBIT 8

**John E. Trinidad**

**From:** Diane Hutnyan [dianehutnyan@quinnemanuel.com]
**Sent:** Friday, May 25, 2007 10:50 PM
**To:** John E. Trinidad
**Cc:** Shane McKenzie
**Subject:** Inspection

Hi, John,

Thank you again for arranging the inspection and photographing. I wanted to get you as many bates numbers for the inspection as I could as soon as possible, so this may not be a complete list but hopefully it is the vast majority of what we would want to see on Thursday. I would suggest putting the documents in bates number order if they are not that way already, and then hopefully all these materials will be easy to find.

I do not know the bates numbers of the remaining notarized drawings (they may not have numbers) or for the notary book, stamp, and sketch pad, but we of course plan to inspect those too.

001-150
300-320
350-780
810-870
920-960
1188
1260-1650
1720-1730
1770-1780
1950-2100
2125-2200
2380-2400
2760-2870
2960-3034
3097-3140
3500-3570
3590-3610
3905-3924
4083-4094
4240-4500
4720-4740
4845-4845
14328-14767
14351-14364
19226-19374

Also, we would like to inspect/photograph anything on sketch paper, anything on tracing paper, anything on notebook paper, any books.

Thanks and have a great holiday!

Diane

Diane Cafferata Hutnyan, Esq.
**quinn emanuel urquhart oliver & hedges llp**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

7/10/2007

Direct: (213) 443-3666
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  dianehutnyan@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the
recipient(s) named above.  This message may be an attorney-client communication and/or work product and as
such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible
for delivering it to the intended recipient, you are hereby notified that you have received this document in error
and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have
received this communication in error, please notify us immediately by e-mail, and delete the original message.

7/10/2007

# EXHIBIT 9

**Audrey Walton-Hadlock**

| | |
|---|---|
| **From:** | Brent Smyth [brentsmyth@quinnemanuel.com] |
| **Sent:** | Wednesday, May 30, 2007 8:49 AM |
| **To:** | John E. Trinidad |
| **Cc:** | Diane Hutnyan |
| **Subject:** | Mattel v. Bryant -- Inspection Tomorrow |

John,

I am working on the Mattel v. Bryant matter with Diane Hutnyan. I'll will be coming up on Thursday to inspect materials per your recent correspondence with Diane.

I'd like to start with the inspection at 8:00 a.m. on Thursday and anticipate that my review will take the entire day. Depending on how long it takes to go through the material, I may need time on Friday for the inspection as well.

Also, in addition to the Bates ranges Diane previously provided to you, I would like to inspect Bates numbered document 1237 on Thursday. In what way will the material be provided? For example, will the Bates ranges Diane e-mailed be set aside in order? Is the original material kept with the Bates stamped copies for reference? It would help to know how the material will be produced to prepare so that the inspection can be conducted as quickly as possible.

Thanks,
Brent

Brent Smyth
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3615
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: brentsmyth@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

12/12/2007

# EXHIBIT 10

**Audrey Walton-Hadlock**

| | |
|---|---|
| **From:** | Brent Smyth [brentsmyth@quinnemanuel.com] |
| **Sent:** | Monday, June 18, 2007 9:29 AM |
| **To:** | John E. Trinidad |
| **Cc:** | Diane Hutnyan |
| **Subject:** | RE: Inspection of Documents |

Thanks, John.  See you on Wednesday.


Brent Smyth
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3615
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  brentsmyth@quinnemanuel.com
Web:  www.quinnemanuel.com


---

**From:** John E. Trinidad [mailto:JTrinidad@kvn.com]
**Sent:** Monday, June 18, 2007 9:30 AM
**To:** Brent Smyth
**Cc:** Diane Hutnyan
**Subject:** RE: Inspection of Documents

Brent:

Hope you had a good weekend.  We can start the inspection at 9am, and your videographer and photographer can set-up in the conference room starting at 8:30, when the building opens.  Also, we can provide lunch for you and the videographer / photographer again, as that may help the day run efficiently and ensure that the review in can be completed in a timely manner.  I plan on being present for the inspection.


-John

---

**From:** Brent Smyth [mailto:brentsmyth@quinnemanuel.com]
**Sent:** Friday, June 15, 2007 9:50 AM
**To:** John E. Trinidad
**Cc:** Diane Hutnyan
**Subject:** Inspection of Documents

John,

I will be coming up again for the inspection on the 20th and 21st (if needed).  I'd like to start at 9:00 a.m. on the 20th if that works for you.  Please let me know.

Also, will you be overseeing the inspection this time?  It may speed things up if you are able to conduct any privilege review prior to the inspection, especially if you are not going to be there to do the review yourself.

12/12/2007

Thanks,

Brent Smyth
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3615
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  brentsmyth@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named
above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If
the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are
hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this
message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete
the original message.

# EXHIBIT 11

### Audrey Walton-Hadlock

| | |
|---|---|
| **From:** | Diane Hutnyan [dianehutnyan@quinnemanuel.com] |
| **Sent:** | Wednesday, September 12, 2007 9:54 AM |
| **To:** | John E. Trinidad |
| **Cc:** | Michael Page |
| **Subject:** | Re: Messenger for originals |

My understanding is that they brought a truck also, and you refused to release the documents because it is apparently raining there and so they are now bringing two cars (that are not open) and they are on their way to pick up the boxes. I spoke with Mike and this seems to be an acceptable arrangement. Thank you.


Diane Hutnyan
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 3rd Floor
Los Angeles, CA   90017

Direct:  (213) 443-3666
Main Phone:  (213) 443-3000
Main Fax:  (213) 443-3100

E-mail:  dianehutnyan@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.


----- Original Message -----
From: John E. Trinidad <JTrinidad@kvn.com>
To: Diane Hutnyan
Cc: Michael Page <MPage@KVN.com>
Sent: Wed Sep 12 09:43:14 2007
Subject: Messenger for originals

Diane:

Just wanted to update you on delivery of the boxes. They have been ready to be picked up since 9am, per our earlier correspondence.

There is a messenger here from A and A legal sevices. He says that his contact at Quinn is Andrea Hoeven. He is driving a Golf Hatchback, and was only prepared to pick up one box, which he assumed was a banker's box. As you know from Mattel's previous inspections, we have multiple large boxes.

It is my understanding that having reviewed the size of the boxes, they are now sending for a covered pick-up truck so that they can safely transport the boxes to Alamo, CA.

Best,
-John

# EXHIBIT 12

**Audrey Walton-Hadlock**

| | |
|---|---|
| **From:** | Diane Hutnyan [dianehutnyan@quinnemanuel.com] |
| **Sent:** | Wednesday, October 17, 2007 8:00 PM |
| **To:** | John E. Trinidad |
| **Cc:** | Michael T Zeller |
| **Subject:** | Bryant originals |

John,

Please be so kind as to confirm your receipt of the boxes of Bryant originals that our messenger dropped off today at your office during business hours.  They were signed for by Thai Peang.

Thank you.


Diane Cafferata Hutnyan, Esq.
**quinn emanuel urquhart oliver & hedges llp**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3666
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  dianehutnyan@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# EXHIBIT 13

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

_____CENTRAL____ DISTRICT OF __CALIFORNIA__

MATTEL, INC., a Delaware Corporation

## SUBPOENA IN A CIVIL CASE

V.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

Case Number:[1] CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059 and
CV 05-2727

TO:  Littler Mendelson, P.C.
     2049 Century Park East, 5th Floor
     Los Angeles, CA 90067-3107

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
| --- | --- |
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | August 21, 2007 |
| 865 S. Figueroa St., 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| *Susan Wines* | |
| Attorney for Plaintiff, Mattel, Inc. | August 3, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Susan L. Wines, Esq.,  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017  (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE                                         SIGNATURE OF SERVER

                                             ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested.  If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.  A receiving party may promptly present the information to the court under seal for a determination of the claim.  If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.  The person who produced the information must preserve the information until the claim is resolved.

e) CONTEMPT.  Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.  An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT A

### Documents To Be Produced

1.    DEFINITIONS.

      i.     "YOU" or "YOUR" means Littler Mendelson, A Professional Corporation, and all of YOUR partners, associates, past or present employees, agents, representatives, consultants, independent contractors, any predecessors or successors in interest, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control, including but not limited to Keith Jacoby and Douglas Wickham.

      ii.     "CARTER BRYANT" means Carter Bryant individually.

      iii.     "ERICH SPECKIN" means Erich Speckin and any of his partners, associates, past or present employees, agents, representatives, consultants, independent contractors, any predecessors or successors in interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

      iv.     "BRATZ WORK" means any representation of BRATZ, whether in whole or in part, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, photographs, sculptures, prototypes, models, samples, written descriptions and summaries.

      v.     "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

      vi.     "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically or optically.

      vii.     "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether permanently, temporarily or otherwise, to create, generate, transmit, copy, retain, store or maintain DIGITAL INFORMATION.

viii.   "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

ix.   "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

x.   "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

xi.   "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

xii.   The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or"

and vice versa, whenever such construction results in a broader disclosure of documents or information.

## 2.   INSTRUCTIONS.

   a.   YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

   b.   If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

      (1)   The privilege or protection that you claim precludes disclosure;

      (2)   The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

      (3)   The date, author(s), addressee(s); and

      (4)   Any additional facts on which YOU would base YOUR claim of privilege or protection.

   c.   YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

   d.   YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

   e.   Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

## 3.   DOCUMENTS TO BE PRODUCED.

   (1)   All DOCUMENTS REFERRING OR RELATING TO any computer hard drive that has been used, owned or acquired by or has at any time been in the

possession of CARTER BRYANT, including without limitation all DOCUMENTS REFERRING OR RELATING TO the location, search, review, imaging, shipment, transfer, acquisition, loss, loss of data, destruction, misplacement or storage of or on any such hard drive.

(2) To the extent not produced in response to Request No. 1 above, all DOCUMENTS REFERRING OR RELATING TO any STORAGE DEVICE that has been used, owned or acquired by or has at any time been in the possession of CARTER BRYANT, including without limitation all DOCUMENTS REFERRING OR RELATING TO the location, search, review, imaging, shipment, transfer, acquisition, loss, loss of data, destruction, misplacement or storage of or on any such STORAGE DEVICE.

(3) To the extent not produced in response to Request No. 1, all DOCUMENTS, including COMMUNICATIONS, REFERRING OR RELATING TO the purchase, acquisition, downloading, installation, loading, use or operation of "Evidence Eliminator" on any computer hard drive that has been used, owned or acquired or has at any time been in the possession of CARTER BRYANT.

(4) All DOCUMENTS, including COMMUNICATIONS, REFERRING OR RELATING TO Brooke Gilbert.

(5) All DOCUMENTS, including COMMUNICATIONS, REFERRING OR RELATING to YOUR and/or CARTER BRYANT'S having "examined [CARTER BRYANT'S] hard drive extensively for any responsive documents" and/or having "tirelessly searched for and inspected [CARTER BRYANT'S] computer hard drives for relevant information."

(6) All DOCUMENTS, including COMMUNICATIONS, REFERRING OR RELATING TO any agreement, contract, proposal, offer, request or promise between CARTER BRYANT and any PERSON, including without limitation MGA, REFERRING OR RELATING TO indemnification or the payment of fees by, for or on behalf of CARTER BRYANT in connection with THIS ACTION.

(7) To the extent not produced in response to Request No. 6, all DOCUMENTS, including COMMUNICATIONS, REFERRING OR RELATING TO any agreement, contract, proposal, offer, request or promise between MGA and any PERSON REFERRING OR RELATING TO indemnification or the payment of fees by, for or on behalf of any PERSON in connection with THIS ACTION.

(8)     All DOCUMENTS, including COMMUNICATIONS, REFERRING OR RELATING to the handling, preservation, loss, destruction, destructive testing, possession, shipment or transfer of any original drawings of any BRATZ WORK by CARTER BRYANT that were subject to any type of ink or paper sampling or testing, including for example, the originals of the documents produced as BRYANT 00179-00183, 00186, 00192, 00195, 00201-00202, 00204, 00207-00208, and 00210-00211.

(9)     To the extent not produced in response to Request No. 8, all DOCUMENTS, including COMMUNICATIONS, REFERRING OR RELATING to the handling, preservation, loss, destruction, destructive testing, possession, shipment or transfer of the originals of any DOCUMENTS in this ACTION to, from or by ERICH SPECKIN, including for example, the originals of the documents produced as BRYANT 00179-00183, 00186, 00192, 00195, 00201-00202, 00204, 00207-00208, and 00210-00211.

EXHIBIT 14

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12                         EASTERN DIVISION

13  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

14            Plaintiff,

15       vs.                             NOTICE OF DEPOSITION OF
                                         LITTLER MENDELSON PURSUANT
16                                       TO FEDERAL RULE OF CIVIL
   MATTEL, INC., a Delaware             PROCEDURE 30(b)(6)
17  corporation,
                                         Date:  September 19, 2007
18            Defendant.                 Time:  9:30 a.m.
                                         Place.: Quinn Emanuel Urquhart Oliver
19                                                & Hedges, LLP
   _____              865 South Figueroa Street, 10th
20                                               Floor
   AND CONSOLIDATED ACTIONS                      Los Angeles, CA 90017
21
                                         Discovery Cut-off: January 14, 2008
22                                       Pre-trial Conference: April 7, 2008
                                         Trial Date: April 29, 2008
23

24

25

26

27                                       SERVED ON US BY MAIL
                                              9/6/07
28

209/2195411.1

                                    -1-
                         NOTICE OF DEPOSITION OF LITTLER MENDELSON

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on September 19, 2007 beginning at

3  9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of

4  Littler Mendelson, P.C. ("Littler") at the offices of Quinn Emanuel Urquhart Oliver

5  & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.

6  Pursuant to <u>Fed. R. Civ. P.</u> 30(b)(6), Littler shall designate one or more officers,

7  directors, managing agents or other persons who consent to testify on its behalf

8  concerning each of the topics set forth in Attachment A to the subpoena attached as

9  Exhibit 1 hereto.

10        PLEASE TAKE FURTHER NOTICE that the deposition will take

11  place before a duly authorized notary public or other officer authorized to administer

12  oaths at depositions, and will continue from day to day, Sundays, Saturdays and

13  legal holidays excepted, until completed.

14        PLEASE TAKE FURTHER NOTICE that, pursuant to <u>Fed. R. Civ. P.</u>

15  30(b)(2), the deposition will be videotaped.

16

17  DATED:  September 6, 2007      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

18

19        By _Susan Wines_____

20          Susan L. Wines
        Attorneys for Mattel, Inc.

21

22

23

24

25

26

27

28

**EXHIBIT 1**

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation

## SUBPOENA IN A CIVIL CASE

V.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

Case Number:[1] CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059 and
CV 05-2727

TO: Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  See attachment "A"

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 | September 19, 2007 9:30 a.m. |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Susan Wines* Attorney for Plaintiff, Mattel, Inc. | September 5, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Susan L. Wines, Esq.,   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017   (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|

| | ADDRESS OF SERVER |
|---|---|

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested.  If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling.  Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.  A receiving party may promptly present the information to the court under seal for a determination of the claim.  If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.  The person who produced the information must preserve the information until the claim is resolved.

e) CONTEMPT.  Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.  An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT A

## INSTRUCTIONS

a.      Pursuant to Fed. R. Civ. P. 30(b)(6), Littler Mendelson, P.C. is requested to designate one or more officers, directors, managing agents or other PERSONS who consent to testify on its behalf concerning each of the topics set forth below.

b.      Pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use LiveNote or other technology for real-time transcription of the testimony.

## DEFINITIONS

i.      "YOU" or "YOUR" means Littler Mendelson, A Professional Corporation, and all of YOUR partners, associates, past or present employees, agents, representatives, consultants, independent contractors, any predecessors or successors in interest, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control, including but not limited to Keith Jacoby and Douglas Wickham.

ii.      "CARTER BRYANT" means Carter Bryant individually.

iii.      "ERICH SPECKIN" means Erich Speckin and any of his partners, associates, past or present employees, agents, representatives, consultants, independent contractors, any predecessors or successors in interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

iv.      "BRATZ WORK" means any representation of BRATZ, whether in whole or in part, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, photographs, sculptures, prototypes, models, samples, written descriptions and summaries.

v.      "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-

interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

vi.    "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically or optically.

vii.    "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether permanently, temporarily or otherwise, to create, generate, transmit, copy, retain, store or maintain DIGITAL INFORMATION.

viii.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

ix.    "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

x.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note,

memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic
or other medium, including without limitation in written, audio or video form.

       xi.   "REFERRING OR RELATING TO" means reflecting,
identifying, describing, summarizing, evidencing, referencing, concerning,
discussing or indicating in any way.

       xii.   The singular form of a noun or pronoun includes within its
meaning the plural form of the noun or pronoun so used, and vice versa; the use of
the masculine form of a pronoun also includes within its meaning the feminine
form of the pronoun so used, and vice versa; the use of any tense of any verb
includes also within its meaning all other tenses of the verb so used, whenever such
construction results in a broader request for information; and "and" includes "or"
and vice versa, whenever such construction results in a broader disclosure of
documents or information.

## DESIGNATED TOPICS OF TESTIMONY

       (1)   All facts RELATING TO the location, search, review, imaging,
shipment, transfer, acquisition, loss, loss of data, destruction, misplacement or
storage of or on any computer hard drive or STORAGE DEVICE that has been
used, owned or acquired by or has at any time been in the possession of CARTER
BRYANT.

       (2)   YOUR COMMUNICATIONS with or REFERRING OR RELATING
TO Brooke Gilbert.

       (3)   The Declaration of Keith A. Jacoby dated April 24, 2007 in
Opposition to Motion of Mattel, Inc. for an Order to Enforce Court's January 25,
2007 Order Compelling Bryant to Produce Desktop Computer Hard Drive.

       (4)   The Declaration of Keith A. Jacoby dated January 11, 2007 in Support
of Carter Bryant's Opposition to Mattel Inc.'s Motion to Compel the Production of
Documents including, but not limited to, the sworn statement that "Bryant made
the computer he used from 2000 to 2002 available to his counsel, and counsel have
not found any responsive documents or relevant information in his computer hard
drives, or documents related to his communications with MGA," and that "Bryant's
counsel has examined his hard drive extensively for any responsive documents,

3

and it has not found any."

    (5)    The Declaration of Keith A. Jacoby dated January 4, 2005 in Support of Defendant and Cross-Claimant Carter Bryant's Portion of Joint Stipulation including, but not limited to, the sworn statement that "Bryant made the computer he used from 2000 to 2002 available to his counsel, and counsel have not found any responsive documents or relevant information in his computer hard drives, or documents related to his communications with MGA," and that "Bryant's counsel has examined his hard drive extensively for any responsive documents, and it has not found any."

    (6)    Any agreement, contract, proposal, offer, request or promise between CARTER BRYANT and MGA, or any other PERSON, REFERRING OR RELATING TO indemnification or the payment of YOUR fees in connection with THIS ACTION.

    (7)    The handling, preservation, loss, destruction, destructive testing, possession, shipment or transfer of any original drawings of any BRATZ WORK by CARTER BRYANT that were subject to any type of ink or paper sampling or testing, including for example, the originals of the documents produced as BRYANT 00179-00183, 00186, 00192, 00195, 00201-00202, 00204, 00207-00208, and 00210-00211.

    (8)    The handling, preservation, loss, destruction, destructive testing, possession, shipment or transfer of the originals of any DOCUMENTS in this ACTION to, from or by ERICH SPECKIN, including for example, the originals of the documents produced as BRYANT 00179-00183, 00186, 00192, 00195, 00201-00202, 00204, 00207-00208, and 00210-00211.

## **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On September 6, 2007, I served true copies of the following documents described as:  **NOTICE OF DEPOSITION OF LITTLER MENDELSON PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on the parties in this action as follows:

| | |
|---|---|
| Diana M. Torres, Esq.<br>Jim Jenal, Esq.<br>O'Melveny & Myers<br>400 So. Hope Street<br>Los Angeles, CA  90071 | John W. Keker, Esq.<br>Michael H. Page, Esq.<br>Christina M. Anderson, Esq.<br>Keker & Van Nest, LLP<br>710 Sansome Street<br>San Francisco, CA 94111 |
| James W. Spertus, Esq.<br>LAW OFFICES OF JAMES W.<br>SPERTUS<br>12100 Wilshire Blvd., Suite 620<br>Los Angeles, CA 90025 | Patricia Glaser, Esq.<br>Christensen, Glaser, Fink, Jacobs, Weil<br>& Shapiro, LLP<br>10250 Constellation Blvd., 19th Floor<br>Los Angeles, CA  90067 |

[√]    **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

Executed on September 6, 2007, at Los Angeles, California.

Linda Cano

# EXHIBIT 15

**Audrey Walton-Hadlock**

| | |
|---|---|
| From: | Christa Anderson |
| Sent: | Tuesday, September 11, 2007 3:52 PM |
| To: | 'Susan Wines' |
| Cc: | 'dtorres@omm.com'; 'Jacoby, Keith A.'; Audrey Walton-Hadlock |
| Subject: | Subpoena to Littler for testimony |

Dear Susan,

Thank you for taking the time to meet and confer yesterday regarding Mattel's deposition subpoena to Littler Mendelson, Carter Bryant's prior counsel in this litigation. I write to confirm the substance of our discussions.

I explained that we believe the deposition subpoena is improper (and intend to move to quash it) as it violates the doctrine governing depositions of trial counsel, as laid out *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987), the leading case on this issue. Under *Shelton*, deposing an opponent's litigation counsel is proper only where the party seeking the deposition shows that (1) no other means exists to obtain the information, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. You acknowledged that you are familiar with the *Shelton* rule, and that you do not quarrel with the general idea that one cannot ordinarily depose an opponent's litigation counsel. However, you asserted several arguments why Mattel believes deposing Littler would be proper.

First, you believe *Shelton* does not apply because Littler is no longer Bryant's counsel in this case. I explained that the *Shelton* rule also applies to former counsel in the litigation where a deposition is sought, and that Judge Infante has applied the rule in just such a situation.

Second, for the computer-related topics in Mattel's deposition notice, you stated that Mattel seeks to depose Littler only as a fact witness with access to facts about Bryant's computers, and does not seek to obtain any related communications or attorney ideas. I explained that the mere fact that litigation counsel has access to facts does not allow a party to sidestep the *Shelton* requirements.

Third, for the document-testing and fee-related topics, you said that *Shelton* does not apply because Mattel seeks information and documents on topics regarding which Judge Infante has already ruled that Mattel is entitled to discovery. Without agreeing that any such orders would apply to the topics at issue here, I explained that the existence of a discovery order on a particular topic does not mean that a party is also entitled to depose trial counsel on that topic. A discovery order allows its beneficiary to have whatever discovery the court granted it, but not to bypass the *Shelton* rule and automatically depose opposing counsel. I also explained that Mattel's document-testing topics are improper for the additional reason that they seek to take expert discovery prior to the dates set out in the Court's case management orders.

Because we were unable to resolve the dispute informally, I asked you what briefing schedule you would prefer for our planned motion to quash Mattel's deposition subpoena. You said that you would like to brief the parties' disputes about the deposition subpoena and Mattel's document subpoena to Littler on the same schedule, and that you did not expect the briefing to be completed by the September 19th deposition date set in the deposition subpoena. You agreed that the deposition will not go forward on September 19th as noticed in the subpoena, and that we will meet and confer in the future about the briefing schedule for Bryant's motion to quash the subpoena for testimony. We also agreed that, to the extent that any deposition of Littler is ever taken in this case, it would not take place prior to a ruling by the Court on Bryant's motion to quash. You also requested that I ask Littler and MGA's counsel to contact you about Mattel's related document subpoena to meet and confer about the document subpoena, which I agreed to do. I am doing so by carbon copy of this email. I also wish to participate in any discussions regarding the document subpoena.

I look forward to talking with you again to set the briefing schedule for our motion to quash.

Regards,

Christa

# EXHIBIT 16

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

CHRISTA MARTINE ANDERSON
CANDERSON@KVN.COM

December 3, 2007

**VIA E-MAIL**

James J. Webster
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Re:  *Bryant v. Mattel*
      United States District Court, Central District of California
      Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)

Dear James:

I write in response to your November 30 letter to Michael Page regarding Mattel's document subpoena to Littler Mendelson.

First, your letter suggests that you may not be familiar with the history of the meet-and-confer efforts in which our office engaged with Susan Wines on the subject of the subpoenas to Littler Mendelson. Ms. Wines agreed in September 2007 that, before filing any motion to compel concerning the subpoenas to Littler Mendelson, Mattel would discuss and agree to a mutually convenient briefing schedule such that the schedule would provide for our office to file our related motion to quash simultaneously. See attached September 11, 2007 Email to Susan Wines. Ms. Wines also met and conferred with Mr. Page, Diana Torres and Keith Jacoby about your subpoenas to Littler Mendelson, on September 17, 2007. During that conference, Mr. Page stated that we had no objection to Littler Mendelson producing any responsive, non-privileged documents in response to the subpoena. Keith Jacoby informed Ms. Wines that Littler Mendelson had no such documents, but Mr. Page agreed that we would review our files received from Littler Mendelson for any responsive, non-privileged documents and would supplement Carter Bryant's production with any such documents. Ms. Wines never pursued this issue further after that discussion on September 17, 2007, and no one at your firm has ever proposed a briefing schedule on this topic. If you intend to file any motion to compel regarding Littler Mendelson, please contact me to discuss and agree upon a schedule for doing so, pursuant to our previous arrangement with Ms. Wines.

James J. Webster
December 3, 2007
Page 2


        Second, to the extent that Carter Bryant identifies any additional responsive and non-privileged documents from the files that Littler Mendelson transferred to us, we will provide those to your office next week.

        I look forward to speaking with you regarding the above matters.

                            Very truly yours,

                            Christa M. Anderson

CMA/jas
Encl.

EXHIBIT 17

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   November 30, 2007

**NUMBER OF PAGES, INCLUDING COVER:** 2

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Michael H. Page, Esq. Keker & Van Nest | 415-391-5400 | (415) 397-7188 |

**FROM:**   James J. Webster

**RE:**   Mattel v. Bryant, et al.

**PLEASE SEE ATTACHED CORRESPONDENCE**

07209/2310494.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Jackie J. Tabor | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
| OPERATOR: | | | CONFIRMED? ☐ NO ☐ YES: |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

November 30, 2007

_**Via Facsimile & U. S. Mail**_

Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Mattel vs. Bryant, et al.

Dear Counsel:

I refer to your prior communications with Susan Wines in an attempt to meet and confer on the issue of the subpoena served on Littler Mendelson on August 21, 2007.  I understand that you had undertaken to search for any documents responsive to the subpoena which had not already been produced by Littler Mendelson to date.  We have not received any such additional documents from you for the purposes of the motion to compel we are preparing.  Please let us know at your earliest if you have identified and intend to produce any documents.

Very truly yours,

James J. Webster

JJW:jjt
07209/2281641.1

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

07209/2281641.1

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On December 13, 2007, I served the following document(s):

**DECLARATION OF MICHAEL H. PAGE IN SUPPORT OF CARTER BRYANT'S MOTION TO QUASH MATTEL'S DEPOSITION SUBPOENA TO LITTLER MENDELSON, P.C.**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery;

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

| | |
|---|---|
| Hon. Edward A. Infante<br>JAMS<br>Two Embarcadero Center, Suite 1500<br>San Francisco, CA 94111<br>Tel:   415/774-2649<br>Fax:   415/982-5287<br>Email: schan@jamsadr.com | John B. Quinn<br>Michael T. Zeller<br>Quinn Emanuel Urquhart Oliver & Hedges, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017-2543<br>Tel:   213/443-3000<br>Fax:   213/443-3100<br>Email: johnquinn@quinnemanuel.com<br>Email: michaelzeller@quinnemanuel.com |

Thomas J. Nolan
Skadden Arps Slate Meagher & Flom
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel:   213/687-5000
Fax:   213/687-5600
Email: tnolan@skadden.com

Executed on December 13, 2007, at San Francisco, California.

1       I declare under penalty of perjury under the laws of the State of California that the above
2   is true and correct.

3

4

5   Julie A. Selby

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)