**Exhibit 18**

● ORIGINAL ●

William C. Conkle (SB# 076103)
Mark D. Kremer (SB# 100978)
Eric S. Engel (SB# 105656), members of
CONKLE & OLESTEN
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2403

Telephone: (310) 998-9100

Attorneys for Plaintiff Farhad Larian

**FILED**
LOS ANGELES SUPERIOR COURT

FEB 2 8 2005

JOHN A. CLARKE, EXECUTIVE OFFICER/CLERK

BY _____
J. SUNGA, DEPUTY

Case assigned to
Judge *Paul Gutman*

D-24

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| FARHAD LARIAN,<br><br>        Plaintiff,<br><br>v.<br><br>MORAD ZARABI, ISAAC LARIAN AND KAMBIZ ZARABI AND DOES 1 through 5, INCLUSIVE<br><br>        Defendants. | CASE NO.   BC 329501<br><br>VERIFIED COMPLAINT FOR:<br><br>1)   FRAUD<br><br>2)   NEGLIGENT MISREPRESENTATION<br><br>3)   CONSPIRACY<br><br>4)   DECLARATORY RELIEF<br><br>5)   CONSTRUCTIVE TRUST<br><br>6)   INJUNCTIVE RELIEF |

Plaintiff alleges as follows:

1.     Plaintiff, Farhad Larian also known as Fred Larian ("FRED") is now and at all times relevant to this Complaint was a resident of Los Angeles County California.

2.     Defendant, Morad Zarabi ("MORAD") is now and at all times relevant to this Complaint was a resident of Los Angeles County California.

2221.002\9929

Complaint

EXHIBIT 18 PAGE 353

3. Defendant, Isaac Larian ("ISAAC") is now and at all times relevant to this Complaint was a resident of Los Angeles County California.

4. Defendant Kambiz Robert Zarabi ("KAMBIZ") is now and at all times relevant to this Complaint was a resident of Los Angeles County California.

5. Plaintiff is unaware of the true names and capacities of Does 1 through 5 and therefore sues such defendants by such fictitious names. Plaintiff will amend this Complaint to identify the true names and capacities of these defendants if and when additional information against them is ascertained. Plaintiff is informed and believes that each of the doe defendants is liable in some manner for the acts and omissions and the injuries and damages alleged in this Complaint.

6. At all times relevant to this Complaint, each defendant was the agent or employee of each of the other defendants as the case may have been, and was acting within the course of the scope of such agency or employment in performing the acts alleged in this Complaint.

7. FRED and ISAAC are brothers who for over 20 years engaged in business as partners through equal ownership of several businesses and ventures they co-founded. They shared profits and losses on an equal basis.

8. The businesses they co-founded included the companies known as ABC International Traders, Inc. ("ABC") and MGA Entertainment Hong Kong Ltd. ("MGAEHK"). ABC and MGAEHK collectively are referred to as "MGA". At all times relevant to this Complaint FRED and ISAAC each owned 45% of the outstanding stock, while their brother in law Jangahir Makabi ("MAKABI") owned 10% of MGA. FRED's 45% interest amounted to 10,000,000 shares of common stock in ABC and

-2-

Complaint

EXHIBIT 18 PAGE 354

450 shares of common stock in MGAEHK (collectively "FRED's Stock"). Over time FRED and ISAAC divided responsibilities in MGA's business: ISAAC, as CEO assumed responsibility for finance, sales, marketing and product development while FRED, as Executive Vice President was responsible for operations, including customs, warehousing, distribution and facilities.

9.   MORAD is the uncle of ISAAC and FRED.

10.   In the spring of 2000 ISAAC offered to buy FRED's 45% interest in MGA for $9,000,000 valuing MGA at $20,000,000. FRED responded that he wanted an appraisal of MGA to consider selling his interest. Consequently, ISAAC and FRED continued to negotiate a buy-sell agreement for ISAAC to buy FRED's Stock. ISAAC told FRED that he only wanted to appraise MGA as of December 31, 1999. FRED demanded a current appraisal. To avoid an appraisal ISAAC suggested using a process by which he or FRED would make an offer to buy the other's interest which if not accepted would require the refusing party to purchase the offeror's interest for the same price. FRED rejected the method telling ISAAC that FRED did not want to be a buyer. Ultimately ISAAC refused to go through with a buy-sell agreement that required three appraisals of MGA.

11.   From the inception of their partnership, FRED and ISAAC had agreed that their salaries and other compensation from MGA would always be equal. They had followed this agreement for more than twenty years, taking equal raises and pay-cuts at the same time. In early 2000, however, while he was attempting to buy FRED out of MGA, ISAAC secretly gave himself a $100,000 raise to about $325,000. ISAAC later demanded that the MGA Board of Directors raise his salary to $500,000, ratify $750,000 as a bonus for 1999, authorize a $1,500,000 bonus for 2000, and give him a 4% royalty on items he "personally develops for MGA's 2001 line or products".

2221.002\9929                           -3-

EXHIBIT *18* PAGE 355

1  Subsequently, Isaac's two brothers in-law purporting to act as MGA directors increased
2  ISAAC's salary to always be three times that of FRED's salary and authorized an
3  additional bonus of up to 50% of ISAAC's tripled salary. FRED is informed and
4  believes that ISAAC engineered the compensation increase to put additional pressure
5  on FRED to sell out his interests in MGA. FRED is further informed and believes that
6  in exchange for MAKABI's vote, ISAAC promised MAKABI some portion of FRED's
7  Stock if FRED agreed to sell it to ISAAC.
8
9      12.    In or around the summer of 2000, following ISAAC's refusal to proceed
10  with the buy-sell agreement, MORAD contacted FRED and urged him to let MORAD
11  arbitrate the impasse between ISAAC and FRED over the stock sale. MORAD told
12  FRED that FRED should not wait any longer to resolve his disputes with ISAAC as
13  ISAAC was attempting to "take over the company" by the enormous raise in
14  compensation which MORAD said was "just a part of ISAAC's plans to oust FRED".
15  MORAD suggested that he determine which brother should sell his interest in MGA
16  and at what price. FRED responded that he did not want to be a buyer and required for
17  any arbitration, that the price of his stock be determined by an appraisal of the current
18  value of MGA, as ISAAC had control of the financial and business information. FRED
19  also told MORAD he required a resolution of certain other partnership accounts. In
20  response MORAD promised FRED that the price of FRED's interest in MGA would
21  be determined by a current and accurate appraisal of MGA that MORAD would obtain.
22  MORAD called the appraisal "the central piece of the arbitration". MORAD also
23  promised to resolve the accounting of the other partnership accounts.
24
25      13.    In several communications with FRED, MORAD stressed his unique
26  position to serve as an arbitrator. MORAD held out his familial relationship to the
27  brothers as assuring his impartiality and trustworthiness. MORAD promised to treat
28  each brother "as one of his eyes", an expression meaning that MORAD would allow

2221.002\9929         -4-

Complaint

EXHIBIT /8 PAGE 356

1    no harm to come to either of them.  MORAD claimed that his business experience

2    would assure the accuracy of the appraisal and the accounting  and that he would hire

3    a CPA, Mike Shenassafar, to assist him.  MORAD said that he would serve as an

4    arbitrator free of charge, requiring reimbursement only for expenses, such as fees for

5    the appraisal and the CPA.  MORAD told FRED that he could trust MORAD to resolve

6    the brothers' dispute, ending the unhappiness it was causing their family.

7

8        14.    MORAD presented FRED with an Agreement for Arbitration and

9    Selection of Arbitrator ("Arbitration Agreement"), a copy of which is attached as

10   Exhibit 1 to this Complaint.  FRED is informed and believes that MORAD's attorney

11   Ellis Stern drafted it.  MORAD told FRED that he should not hire an attorney to advise

12   him about the Arbitration Agreement because "attorneys are in it for themselves and

13   would never allow this to end until they got all of the money for themselves".

14   MORAD reiterated to FRED that he could trust MORAD.

15

16       15.    In reliance on the representations of MORAD, on or about September 28,

17   2000 FRED signed the Arbitration Agreement without the advice of counsel and did

18   not hire counsel to represent him in the arbitration.

19

20       16.    Plaintiff is informed and believes that the representations of MORAD

21   were false when made in and around the summer of 2000 prior to FRED's execution

22   of the Arbitration Agreement.   MORAD engaged in misrepresentations and

23   concealments to induce FRED's agreement to allow MORAD to arbitrate the

24   controversy with ISAAC so that MORAD could fix the sale price without an appraisal.

25   MORAD never intended to engage in any neutral arbitration using an accurate and

26   current appraisal of MGA and never intended to use a CPA to assist him with the

27   appraisal. MORAD intended to trick FRED to sell his interest in MGA to ISAAC and

28   settle the other partnership accounts by making FRED believe the price for FRED's

2221.002\9929                           -5-

Complaint

EXHIBIT 18 PAGE 357

1    Stock had been established by an accurate appraisal and accounting, but in fact was

2    pre-determined by MORAD. In furtherance of his plan, MORAD concealed from

3    FRED MORAD's inability to competently read and write English.

4

5          17.    Plaintiff is informed and believes that MORAD made his false

6    representations pursuant to an agreement and plan formed between MORAD and

7    ISAAC to induce FRED to give MORAD authority to determine a value for MGA and

8    trick FRED into selling his interests in MGA at a price pre-determined by ISAAC

9    without an appraisal. Under the plan and agreement with ISAAC, MORAD agreed to

10   induce FRED's consent to the Arbitration Agreement, by promising FRED an accurate

11   and complete appraisal, but would fix the price for which FRED would sell his Stock

12   to ISAAC and settle the partnership accounts, at or below the $9,000,000 ISAAC had

13   previously offered to pay for FRED's Stock, irrespective of the true appraised value

14   of MGA.

15

16         18.    Following execution of the Arbitration Agreement, MORAD took steps

17   in accordance with his intent and the plan to defraud FRED into accepting a price for

18   his interests not determined by an appraisal including the following:

19         18.1   Consistent with ISAAC's earlier proposal to avoid an appraisal,

20   prior to commissioning the appraisal MORAD induced FRED to give him a written

21   offer to purchase ISAAC's 45% interest in MGA based upon a value of $17,500,000.

22   FRED withdrew the offer the same day.

23         18.2   MORAD hired National Business Appraisers ("NBA") to perform

24   an appraisal of ABC, and in order to lower the appraised value of ABC, allowed NBA

25   to restrict the valuation period to the end of December 1999 thereby eliminating year

26   2000 financial and business information from the appraisal, including information

27   relating to the "Bratz" product line.

28

2221.002\9929                          -6-
                                    Complaint

EXHIBIT *8* PAGE 358

1    18.3    MORAD allowed NBA to value only ABC and omit valuation of
2  MGAEHK.

3    18.4    Upon receiving the initial draft of NBA's appraisal of ABC with a
4  value of $26,942,000 as of December 31, 1999, MORAD instructed NBA to reduce the
5  valuation to get close to $20,000,000 which would yield a price of $9,000,000 for
6  FRED's interest.

7    18.5    MORAD subsequently concealed from FRED that the final reduced
8  appraisal of ABC was at $21,600,000 and represented that the appraisal found the value
9  of MGA to be $17,500,000.

10    18.6    On information and belief MORAD never involved the CPA in the
11  appraisal process, never showed the appraisal to the CPA, nor allowed him to review
12  it for accuracy.

13

14    19.    In or around late November or early December 2000, MORAD came to
15  FRED with a proposed price of $8,775,000 for sale of FRED's Stock to ISAAC
16  calculated on 45% of a combined valuation of $19,500,000 for MGA and the other
17  partnership accounts. MORAD represented to FRED that the appraisal placed the value
18  of MGA at $17,500,000.  MORAD said  the  $2,000,000 difference between  the
19  appraisal of $17,500,000 and the $19,500,000 was to satisfy the amount due from
20  ISAAC to FRED for the other partnership accounts. Believing in his uncle's integrity,
21  FRED trusted MORAD's representation of the value found by the appraisal.  In
22  reliance on MORAD's representations, FRED agreed to settle his disputes with ISAAC
23  by selling his interest at the price MORAD represented was determined by the appraisal
24  of MGA and the partnership accounts.

25

26    20.    MORAD's personal attorney Ellis Stern drew up agreements for the sale
27  and settlement of FRED's interest in MGA to ISAAC and the partnership accounts
28  including an Agreement for Sale of Stock, Pledge Agreement, Promissory Note, Mutual

2221.002\9929                          -7-
                                    Complaint

EXHIBIT *18* PAGE 359

1  Release and Consulting Agreement (collectively "December 2000 Agreement"). FRED

2  asked MORAD if FRED should have an attorney to advise him about the transaction.

3  MORAD said no. MORAD said that he would make sure the agreements accurately

4  reflected the transaction and protected both FRED and ISAAC. Based on MORAD's

5  representation, FRED did not have counsel advise him with respect to the transaction

6  and signed the December 2000 Agreement.

7

8       21.    In inducing FRED's agreement to sell FRED's Stock to ISAAC, MORAD

9  continued to conceal his fraud and deceit from FRED. MORAD assured FRED that the

10  sale price based on a combined valuation of $19,500,000 for MGA and the partnership

11  accounts was determined by the appraisal and accounting. MORAD convinced FRED

12  to agree to resolve any disputes with ISAAC over the December 2000 Agreement by

13  arbitrating them before MORAD or if MORAD was unavailable before his son

14  KAMBIZ. MORAD repeated to FRED that he should keep resolution of such matters

15  in the family and FRED could trust both MORAD and KAMBIZ. MORAD also

16  claimed that as a director of MGA and as the arbitrator, he would be in a position to

17  protect FRED's interest. In reliance on MORAD's representations including that the

18  appraised value of MGA had been $17,500,000 upon which the sale price for his

19  interest in MGA was based, FRED agreed to the provisions for resolving any disputes

20  over the December 2000 Agreement by arbitrating before MORAD (and if MORAD

21  was unavailable to serve, MORAD's son KAMBIZ) ("December Arbitration

22  Provisions").

23

24       22.    MORAD's representations to FRED that FRED should trust him to

25  continue to act as an impartial and honest arbitrator of disputes that might arise under

26  the December 2000 Agreement were false and were made to conceal MORAD's fraud

27  and deceit in the appraisal and valuation of MGA and to induce FRED's agreement to

28  the December Arbitration Provisions so to allow MORAD to hide his wrongful acts and

2221.002\9929                          -8-
                                   Complaint

EXHIBIT **18** PAGE 360

1  omissions and/or conspiracy with ISAAC.  MORAD had not honestly and impartially

2  acted as an arbitrator in the past and had no intent to arbitrate or otherwise act

3  impartially and honestly to resolve any disputes that might arise under the December

4  2000 Agreement.  MORAD intended only to use his position as arbitrator to continue

5  to conceal his fraud and deceit and other wrongful acts and omissions toward FRED.

6

7      23.   Under the December 2000 Agreement, MORAD became a director of

8  MGA and took possession of the share certificates for FRED's Stock as Trustee to be

9  held as collateral for ISAAC's payment of the full purchase price to FRED.

10

11      24.   Following the execution of the December 2000 Agreement, MORAD

12  requested FRED to "return the favor" for what MORAD called his "pro-bono

13  arbitration work" in 2000.  MORAD requested $10,000.00 from FRED for MORAD's

14  relative.  MORAD told FRED that ISAAC had already paid an identical amount.

15  FRED paid the money MORAD requested.  In June 2004 FRED's attorneys asked

16  MORAD to disclose and produce evidence of these payments. MORAD, through his

17  attorney Ellis Stern, refused.  In or around June 2004, in relation to FRED's inquiry

18  about these payments, MORAD publicly threatened that he "will destroy FRED and

19  make him equal to dirt".  On information and belief MORAD sought and obtained a

20  larger payment from ISAAC for MORAD's "pro-bono arbitration work" and for that

21  reason refused to disclose such payments.

22

23      25.   In 2001, ISAAC was unable to make the payment under the promissory

24  note given FRED as part of the December 2000 Agreement.  MORAD induced FRED

25  to extend the due date of the note and advanced money on behalf of ISAAC to FRED

26  for payments on the promissory note.

27

28

2221.002\9929             -9-

EXHIBIT 18 PAGE 361

26. In or around the summer of 2002, FRED became aware of facts that suggested the valuation of MGA in 2000 represented by MORAD may have been inaccurate and that the actual valuation of MGA was significantly higher because of a license and plans for a product line called "Bratz" which were undisclosed to FRED. FRED requested a copy of the appraisal of MGA performed in 2000. MORAD refused, maintaining that he was legally not allowed to disclose it.   FRED did not suspect MORAD of any wrong doing at this time, believing instead that ISAAC had withheld the Bratz information from both FRED and MORAD without MORAD's knowledge or consent.

27. Subsequently FRED submitted to MORAD his claim that FRED had been defrauded by ISAAC.

28. A few months after FRED's submission of his claim to MORAD for the fraud in the sale of FRED's Stock, MORAD called a meeting at his offices on January 26, 2003.   He advised FRED that no lawyers would be allowed and that no evidence would be presented as this  was an informal meeting.   MORAD tape recorded the meeting which lasted less than two hours. After ISAAC left the meeting, he called MORAD and MORAD reported to FRED that ISAAC said "figure out a way to pay FRED something and get rid of him".   On or about September 14, 2004 MORAD declared under oath that the meeting occurred on a different day and was an "arbitration hearing" upon which he "took the matter under submission"!

29. After the January meeting in several communications, MORAD and KAMBIZ  advised FRED ways to settle the claim against ISAAC including buying back a portion of FRED's Stock, which MORAD said he had convinced ISAAC to allow.

EXHIBIT *18* PAGE 362

1    30.    In 2003, FRED learned that sometime after the January 26, 2003 meeting

2    MORAD had commissioned another appraisal of MGA ("2003 Appraisal"). MORAD

3    told FRED he had commissioned the 2003 Appraisal but did not show it to him.  In

4    December 2004 FRED learned that the valuation date of the 2003 Appraisal was as of

5    December 31, 2000 (the effective date under the December 2000 Agreement) and that

6    it found the value of ABC to be $33,805,000.  In December 2004 FRED also learned

7    that in or about April 2004, MORAD had commissioned yet another appraisal of MGA

8    based on a valuation date ending December 31, 2001 ("2004 Appraisal").

9

10   31.    Throughout 2003, FRED again asked MORAD and also KAMBIZ to

11   provide FRED a copy of the appraisals. They initially refused to disclose any of the

12   documentation for the appraisals.  FRED filed suit in August 2003 against ISAAC for

13   fraud arising from the non-disclosure of the Bratz line (The "Bratz Action").  In

14   September 2003, MORAD promised to give FRED all documents and records relating

15   to the 2000 and 2003 appraisals in exchange for payment of $15,000.  MORAD's

16   attorney, Ellis Stern corroborated MORAD's promise to give FRED all of the

17   documents and records related to the appraisal.  FRED paid MORAD the $15,000 but

18   then MORAD refused to provide all of the records to FRED.  MORAD said instead he

19   had turned over his records and files to his attorney Stern who refused to produce

20   copies to FRED.

21

22   32.    When FRED continued to press for production of MORAD's entire file

23   concerning the 2000 and 2003 appraisals, ISAAC opposed production and demanded

24   that no records from the appraisal be produced.  Finally after the Court in the Bratz

25   Action ordered discovery, MORAD's attorneys produced certain of the documents

26   related to the 2000 appraisal but refused to produce documents related to the 2003

27   Appraisal.  MORAD's attorney Stern represented to have produced all of the 2000

28   appraisal documentation and provided a privilege log which he later filed in Court.  No

EXHIBIT 18 PAGE 363

1  draft appraisals were produced to FRED by MORAD personally or by his attorneys.

2  The draft of the 2000 appraisal, the 2004 Appraisal, and some correspondence from

3  NBA relating to the 2000 appraisals were neither produced nor listed on the privilege

4  log Stern had submitted to FRED and the Court. FRED pursued discovery of NBA and

5  the appraiser but both ISAAC and MORAD opposed it.  Ultimately it was not until

6  FRED went to NBA directly in December 2004 that he discovered the extent and nature

7  of MORAD's wrongful acts.  The documents and information provided by NBA also

8  revealed that MORAD's attorney, Stern  had submitted a false privilege log to FRED

9  and to the Court.

10

11      33.    In or around April to July 2004 FRED learned of translations that

12  MORAD had ordered including translations related to a January 30, 2003 letter

13  MORAD had received from FRED's attorney, and of MORAD's need to use translators

14  in the contemplated arbitration of FRED's claims against ISAAC.  These facts and

15  documents were suppressed from FRED by MORAD and his attorney.

16

17      34.    In or around January 2004, FRED demanded of MORAD that FRED's

18  Stock held by MORAD as trustee pursuant to the December 2000 Agreement be

19  maintained pending resolution of FRED's claims against ISAAC. Through his attorney

20  Stern, MORAD agreed. In or around December 2004, FRED demanded that MORAD

21  show FRED the stock certificates.  MORAD refused.

22

23      35.    In or around December 2004, FRED obtained documentation and

24  information directly from NBA disclosing that:

25          35.1   NBA had never provided MORAD with an appraisal valuing ABC

26  or MGA at $17,500,000 as MORAD had represented to FRED;

27          35.2   In or around October 2000 NBA transmitted to MORAD an initial

28  draft appraisal valuing ABC at $26,942,000. MORAD then instructed NBA to decrease

2221.002\9929                        -12-
                                   Complaint

EXHIBIT _____ PAGE 364

1 | the value to get close to $20,000,000 and allowed the valuation date to be as of
2 | December 31, 1999;

3 |     35.3   NBA's final reduced appraisal in November 2000 was
4 | $21,600,000.00 for the period ending December 31, 1999 and excluded MGAEHK
5 | from the valuation;

6 |     35.4   Commencing in February 2003, NBA met with MORAD and
7 | KAMBIZ concerning the November 2000 appraisal because of FRED's claim against
8 | ISAAC for fraud;

9 |     35.5   In February 2003, MORAD commissioned the appraisal of MGA
10 | as of December 31, 2000 (2003 Appraisal) without consideration of the Bratz License
11 | and product line. This appraisal found the value to be $33,805,000.00;

12 |     35.6   MORAD subsequently requested NBA to reduce the 2003 Appraisal
13 | by applying a minority shareholder discount.

14 |     35.7   In 2000, NBA had given the draft 2000 appraisal to MORAD and
15 | his attorneys.

16 |     35.8   In 2004, MORAD's attorneys advised NBA to destroy any drafts
17 | of the 2000 appraisal.

18 |     35.9   In 2004 MORAD commissioned the appraisal of ABC as of
19 | December 31, 2001 (2004 Appraisal) to obtain a valuation lower than the 2003
20 | Appraisal.  The 2004 Appraisal, the draft 2000 appraisal, and some correspondence
21 | from NBA relating to the 2000 appraisals had been suppressed from FRED and omitted
22 | from the privilege log Stern submitted to both FRED and the Court.

23 |

24 |     36.   FRED is informed and believes that MORAD's suppression of the
25 | appraisals, his attempts to destroy and prevent discovery of evidence, and his lies to
26 | FRED were calculated to conceal his fraud in the inducement of the Arbitration
27 | Agreement and December Arbitration Provisions, his corruption of the appraisal in
28 |

-13-

Complaint

EXHIBIT *8* PAGE 365

1  2000, and/or in furtherance of the conspiracy with ISAAC to trick FRED into selling

2  Fred's Stock at a price pre-determined by ISAAC and/or MORAD.

3

4  **FIRST CAUSE OF ACTION FOR PROMISSORY FRAUD INDUCING**

5  **CONSENT TO THE ARBITRATION AGREEMENT**

6  **AGAINST MORAD ZARABI**

7     37.    Plaintiff realleges paragraphs 1 through 36 of this Complaint.

8

9     38.    MORAD's representations to Plaintiff concerning MORAD's intention

10  to neutrally, honestly, completely and accurately appraise the current value of MGA,

11  and account for the other partnership matters, to resolve Plaintiff's disputes with

12  ISAAC were false and known by MORAD to be false when he made them.  The

13  misrepresentations and omissions were material and made to induce Plaintiff to consent

14  to the Arbitration Agreement and selection of MORAD as arbitrator.  The true facts

15  were that MORAD never intended to engage in an accurate, complete and current

16  appraisal of MGA or accounting of the other partnership matters, but rather to set a

17  pre-determined price for the sale of FRED's Stock to ISAAC.  In furtherance of this

18  intent, MORAD concealed his disability in reading and writing English.

19

20     39.    Reasonably relying on MORAD's representation of what MORAD

21  intended to do as an arbitrator and that Plaintiff could trust him, Plaintiff was induced

22  to sign the Arbitration Agreement and selection of MORAD as the arbitrator.  Had

23  Plaintiff known MORAD's true intentions, Plaintiff would not have signed the

24  Arbitration Agreement, and would not have agreed to the December Arbitration

25  Provisions.

26

27     40.    As a result of the fraud and deceit alleged herein, Plaintiff is entitled to

28  rescission of the Arbitration Agreement and the December Arbitration Provisions

2221.002\9929                        -14-
                                  Complaint

EXHIBIT *18* PAGE 366

1   proximately caused by it as well as restitution of all sums obtained by MORAD from

2   Plaintiff because of them.

3

4   **SECOND CAUSE OF ACTION FOR NEGLIGENT**

5   **MISREPRESENTATIONS INDUCING CONSENT**

6   **TO THE ARBITRATION AGREEMENT**

7   **AGAINST MORAD ZARABI**

8      41.   Plaintiff realleges paragraphs 1 through 36 of this Complaint.

9

10     42.   MORAD owed a duty of reasonable care in making representations and

11  statements to Plaintiff regarding MORAD's ability and intentions with respect to the

12  appraisal of MGA and the accounting of the other partnership matters.

13

14     43.   MORAD breached his duty to Plaintiff by making misrepresentations of

15  material facts and by omitting and failing to disclose material facts which he knew or

16  in the exercise of reasonable care should have known were untrue or inaccurate and

17  which he was under a duty to disclose to Plaintiff, including without limitation, his

18  inability to competently read and write English, his intent to set a pre-determined price

19  for Fred's Stock and the value of the other partnership accounts.

20

21     44.   MORAD made the misrepresentations and omissions with the intent to

22  induce Plaintiff to agree to the Arbitration Agreement consenting to arbitrate before

23  MORAD as the arbitrator of the disputes between Plaintiff and ISAAC over MGA and

24  the other partnership matters.

25

26     45.   Plaintiff actually, reasonably and justifiably relied upon the false

27  statements and omissions of MORAD and consented to the Arbitration Agreement.

28  Had Plaintiff known the true facts, Plaintiff would not have entered into the Arbitration

2221.002\9929                           -15-
                                      Complaint

**EXHIBIT _18_ PAGE 367**

1 Agreement and selection of MORAD as the arbitrator, and would not have given

2 MORAD authority as arbitrator to determine the price at which Plaintiff would sell his

3 interest in MGA and the other partnership accounts.

4

5      46.    As a result of the misrepresentation alleged herein, FRED is entitled to

6 rescission of the Arbitration Agreement and the December Arbitration Provisions

7 proximately caused by it and restitution of all sums obtained by MORAD from Plaintiff

8 because of them.

9

10            **THIRD CAUSE OF ACTION FOR CONSPIRACY TO COMMIT**

11            **PROMISSORY FRAUD INDUCING CONSENT TO THE**

12                     **ARBITRATION AGREEMENT**

13          **AGAINST MORAD ZARABI AND ISAAC LARIAN**

14      47.    Plaintiff realleges paragraphs 1 through 36 of this Complaint.

15

16      48.    Plaintiff is informed and believes that commencing in or around the

17 summer and fall of 2000, ISAAC and MORAD conspired and agreed together to induce

18 FRED to give MORAD power and authority as an arbitrator to set a price

19 pre-determined by ISAAC and/or MORAD, at which ISAAC would purchase FRED's

20 shares in MGA.

21

22      49.    In furtherance of the conspiracy, MORAD made the misrepresentations

23 and omissions of material facts alleged in this Complaint to induce FRED to consent

24 to arbitration before MORAD and to execute the Arbitration Agreement. MORAD's

25 representations were false and known by MORAD and ISAAC to be false when made.

26

27      50.    In reasonable reliance on the representations of MORAD, Plaintiff

28 executed the Arbitration Agreement.

2221.002\9929                -16-

EXHIBIT 8 PAGE 368

51. Plaintiff is entitled to rescission of the Arbitration Agreement and the December Arbitration Provisions proximately caused by it and restitution of all sums obtained by MORAD from Plaintiff because of them.

## FOURTH CAUSE OF ACTION FOR DECLARATORY RELIEF
## OVER VALIDITY OF THE ARBITRATION AGREEMENT
## AND THE DECEMBER ARBITRATION PROVISIONS
## AGAINST MORAD ZARABI AND ISAAC LARIAN

52. Plaintiff realleges paragraphs 1 though 36 of this Complaint.

53. An actual justiciable controversy exists between Plaintiff on the one hand, and Defendants MORAD and ISAAC on the other hand in that Plaintiff contends that the Arbitration Agreement was void ab initio due to the fraud and deceit of MORAD and/or ISAAC inducing Plaintiff's consent to it; and that the December Arbitration Provisions are likewise void because they were proximately caused by Plaintiff's consent to the Arbitration Agreement. Plaintiff is informed and believes that Defendants MORAD and ISAAC contend that the Arbitration Agreement is valid and enforceable and that there is no basis for invalidating or voiding the Arbitration Agreement or the December Arbitration Provisions.

54. Plaintiff has no accurate remedy at law and the parties require a judicial declaration of their legal rights and obligations with respect to the Arbitration Agreement and the December Arbitration Provisions.

EXHIBIT *18* PAGE 369

### FIFTH CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT
### OF THE DECEMBER ARBITRATION PROVISIONS
### AGAINST MORAD ZARABI

55.    Plaintiff realleges paragraphs 1 through 36 of this Complaint.

56.    MORAD's representations to FRED in or around the end of November or the beginning of December 2000 concerning the accuracy of the appraisal of MGA, the appraised value being $17,500,000, and MORAD's honesty and trustworthiness were false when made and known by MORAD to be false when made. The true facts were that MORAD concealed the appraisal showing the value of MGA to be significantly greater than the representation to Plaintiff, and concealed the fact that he had corrupted and acted to distort the appraisal of MGA by ordering the appraiser to reduce the value to close to $20,000,000. In making the misrepresentations and omissions, MORAD intended to induce Plaintiff to agree to resolve any disputes arising from the December 2000 Agreement by arbitration before MORAD and/or KAMBIZ, so that MORAD could continue to conceal his fraud and deceit and his wrongful acts and omissions.

57.    The misrepresentations and omissions to Plaintiff were material and Plaintiff reasonably relied on them to his detriment and by them was induced to enter into the December Arbitration Provisions.

58.    As the result of MORAD's fraud and deceit, Plaintiff is entitled to rescission of the December Arbitration Provisions and restitution of all sums obtained by MORAD from Plaintiff because of them.

2221.002\9929                           -18-

Complaint

EXHIBIT /8 PAGE 370

## SIXTH CAUSE OF ACTION FOR NEGLIGENT
## MISREPRESENTATION INDUCING CONSENT TO
## THE DECEMBER ARBITRATION PROVISIONS
## AGAINST MORAD ZARABI

59.     Plaintiff realleges paragraphs 1 through 36 of this Complaint.

60.     MORAD owed a duty of reasonable care in making representations and statements to Plaintiff regarding the appraised value of MGA and the accounting of the other partnership matters.

61.     MORAD breached his duty to Plaintiff by making misrepresentations of material facts and by omitting and failing to disclose material facts which he knew or in the exercise of reasonable care should have known were inaccurate and which he was under a duty to disclose to Plaintiff, including without limitation, the true and correct valuation of MGA found by NBA's appraisal.

62.     MORAD made the misrepresentations and omissions with the intent to induce Plaintiff to consent to the December Arbitration Provisions selecting MORAD and his son KAMBIZ as the arbitrators with sole authority to determine disputes between Plaintiff and ISAAC arising from the December 2000 Agreement.

63.     Plaintiff actually, reasonably and justifiably relied upon the false statements and omissions of MORAD.  Had Plaintiff known the true facts, Plaintiff would not have entered into the December Arbitration Provisions which selected MORAD and his son KAMBIZ as the arbitrators.

2221.002\9929                           -19-
                                     Complaint

EXHIBIT _18_ PAGE 371

64.   As a result of MORAD's misrepresentations Plaintiff is entitled to rescission of the December Arbitration Provision and restitution of all sums obtained by MORAD from Plaintiff because of them.

### SEVENTH CAUSE OF ACTION FOR CONSPIRACY TO
### FRAUDULENTLY INDUCE EXECUTION OF THE
### DECEMBER ARBITRATION PROVISIONS
### AGAINST MORAD ZARABI AND ISAAC LARIAN

65.   Plaintiff realleges paragraphs 1 through 36 of this Complaint.

66.   Plaintiff is informed and believes that the misrepresentations and omissions by MORAD in late November to December 2000 were carried out pursuant to a conspiracy and agreement between MORAD and ISAAC to induce FRED to agree to arbitrate all disputes before MORAD and KAMBIZ so they could continue to conceal MORAD's and ISAAC's fraud and conspiracy.

67.   In furtherance of the conspiracy, MORAD committed the acts alleged in this Complaint, including without limitation manipulating and corrupting the appraisal, lying to FRED about the appraised value of MGA and inducing FRED to resolve all disputes arising out of the agreement by arbitration before MORAD or KAMBIZ in order to conceal the conspiracy.

68.   As the result of the misrepresentations by MORAD pursuant to the conspiracy of ISAAC and MORAD which induced FRED's consent to the December Arbitration Provisions, Plaintiff is entitled to rescission of the December Arbitration Provisions and restitution of all sums obtained by MORAD from Plaintiff because of them.

2221.002\9929                           -20-
                                      Complaint

EXHIBIT _18_ PAGE 372

**EIGHTH CAUSE OF ACTION FOR DECLARATORY RELIEF**

**OVER VALIDITY OF THE DECEMBER ARBITRATION PROVISIONS**

**AGAINST ISAAC LARIAN**

69.    Plaintiff realleges paragraphs 1 though 36 of this Complaint.

70.    An actual justiciable controversy exists between Plaintiff on the one hand and ISAAC on the other hand in that Plaintiff contends that the December Arbitration Provisions were void ab initio due to the fraud and deceit of MORAD and/or ISAAC inducing Plaintiff's consent to them while Plaintiff is informed and believes that ISAAC contends that the December Arbitration Provisions are valid and enforceable and that there is no basis for invalidating or voiding them, in whole or part.

71.    Plaintiff has no adequate remedy at law and the parties require a judicial declaration of their legal rights and obligations with respect to the December Arbitration Provisions.

**NINTH CAUSE OF ACTION FOR DECLARATORY JUDGMENT**

**OVER THE DISQUALIFICATION OF MORAD ZARABI**

**AND KAMBIZ ROBERT ZARABI FROM SERVING AS ARBITRATORS**

**AGAINST ISAAC LARIAN, MORAD ZARABI**

**AND KAMBIZ ROBERT ZARABI**

72.    Plaintiff realleges paragraphs 1 through 36 of this Complaint.

73.    An actual justiciable controversy exists between Plaintiff on the one hand and Defendants on the other hand in that Plaintiff contends that as a result of the position, facts and circumstances concerning MORAD and KAMBIZ alleged in this Complaint, they are disqualified under California law from exercising any power or authority as an arbitrator of any disputes between Plaintiff and Defendant ISAAC

2221.002\9929                                    -21-

EXHIBIT _18_ PAGE 373

1    LARIAN; while Plaintiff is informed and believes that Defendants and each of them

2    contend that MORAD and KAMBIZ are not so disqualified.

3

4         74.    Plaintiff has no adequate remedy at law and the parties require a judicial

5    declaration of their legal rights and obligations with respect to the ability of MORAD

6    and KAMBIZ to exercise power and authority as arbitrators under the December 2000

7    Agreement.

8

9    **TENTH CAUSE OF ACTION  FOR DECLARATORY JUDGMENT**

10   **OVER ENFORCEABILITY OF ARBITRATION AGREEMENTS**

11   **AGAINST ISAAC LARIAN**

12        75.    Plaintiff realleges paragraphs 1 through 36 of this Complaint.

13

14        76.    An actual justiciable controversy exists between Plaintiff on the one hand

15   and Defendant ISAAC LARIAN on the other hand in that Plaintiff contends that the

16   Arbitration Agreement and the December Arbitration Provisions are unenforceable in

17   that they are agreements to arbitrate solely before MORAD ZARABI and in the case

18   of the December Arbitration Provisions, KAMBIZ ZARABI if MORAD is unavailable

19   or such arbitrators as either of them might appoint if MORAD and KAMBIZ are both

20   unavailable.  Because MORAD and KAMBIZ are disqualified under California law,

21   neither may serve as arbitrator or appoint arbitrators.  Plaintiff is informed and believes

22   that Defendant ISAAC LARIAN disputes the disqualification of MORAD and

23   KAMBIZ ZARABI and that notwithstanding any disqualification of MORAD and

24   KAMBIZ, contends the arbitration agreements are legally enforceable.

25

26        77.    Plaintiff has no adequate remedy at law and the parties require judicial

27   declaration of their rights and obligations with respect to the Arbitration Agreement

28   and the December Arbitration Provisions and their enforceability.

2221.002\9929                              -22-
                                        Complaint

EXHIBIT _8_ PAGE 374

## ELEVENTH CAUSE OF ACTION FOR RESCISSION

## OF THE DECEMBER 2000 AGREEMENT BASED ON PROMISSORY

## FRAUD INDUCING CONSENT TO ARBITRATION AGREEMENT

## AGAINST MORAD ZARABI AND ISAAC LARIAN

78.   Plaintiff realleges paragraphs 1 through 36 of this Complaint.

79.   The fraud and deceit of MORAD and/or conspiracy of MORAD and ISAAC to deceive and defraud, inducing Plaintiff to consent to the Arbitration Agreement proximately caused Plaintiff's consent to the December 2000 Agreement. As a consequence of Plaintiff's entitlement to rescission of the Arbitration Agreement, Plaintiff is also entitled to rescission of the December 2000 Agreement, including the Pledge Agreement and restitution of his stock in MGA subject to any accounting required by law.

80.   As a proximate result of Defendants wrongful conduct, Plaintiff has been damaged in an amount and of a nature according to proof at trial.

81.   MORAD's wrongful acts were conducted maliciously, oppressively and fraudulently with the intent to injure Plaintiff. Plaintiff is therefore entitled to an award of punitive damages sufficient to punish MORAD and deter such conduct in the future.

## TWELFTH CAUSE OF ACTION FOR RESCISSION

## OF THE DECEMBER 2000 AGREEMENT

## AGAINST MORAD ZARABI AND ISAAC LARIAN

82.   Plaintiff realleges paragraphs 1 through 36 of this Complaint.

83.   MORAD's fraud and deceit and/or the conspiracy of MORAD and ISAAC to defraud and deceive, inducing Plaintiff into believing that MORAD had carried out

2221.002\9929                                   -23-

Complaint

EXHIBIT 18  PAGE 375

1  an accurate, complete, and current appraisal of MGA which purportedly had
2  determined the value of MGA to be $17,500,000 proximately caused Plaintiff to
3  consent to the December 2000 Agreement and consequently Plaintiff is entitled to
4  rescission of it, including the Pledge Agreement and restitution of his stock in MGA
5  subject to any accounting required by law.

6

7      84.   As a proximate result of Defendants wrongful conduct, Plaintiff has been
8  damaged in an amount and of a nature according to proof at trial.

9

10      85.   MORAD's wrongful acts were conducted maliciously, oppressively and
11  fraudulently with the intent to injure Plaintiff. Plaintiff is therefore entitled to an award
12  of punitive damages sufficient to punish MORAD and deter such conduct in the future.

13

14        **THIRTEENTH CAUSE OF ACTION FOR RESCISSION BASED ON**
15        **NEGLIGENT MISREPRESENTATIONS INDUCING**
16        **THE DECEMBER 2000 AGREEMENT**
17        **AGAINST MORAD ZARABI**

18      86.   Plaintiff realleges paragraphs 1 through 36 of this Complaint.

19

20      87.   MORAD owed a duty of reasonable care in making representations and
21  statements to Plaintiff regarding a) his purported intention to impartially arbitrate the
22  sale of Plaintiff's interest in MGA by an accurate, complete, and current appraisal and
23  b) the true and correct appraised value of MGA and the accounting of the other
24  partnership matters.

25

26      88.   MORAD breached his duty to Plaintiff by making misrepresentations of
27  material facts and by omitting and failing to disclose material facts which he knew or
28  in the exercise of reasonable care should have known were inaccurate and which he

2221.002\9929             -24-

Complaint

EXHIBIT **8** PAGE 376

1   was under a duty to disclose to Plaintiff, including without limitation, MORAD's true

2   intentions regarding setting the price for Plaintiff's stock and the true and correct

3   valuation of MGA found by NBA's appraisal.

4

5        89.    MORAD's misrepresentations induced Plaintiff's execution of the

6   December 2000 Agreement and Plaintiff is entitled to rescission of it, including the

7   Pledge Agreement and to restitution of his stock in MGA subject to an accounting

8   required by law.

9

10       90.    As a proximate result of Defendants wrongful conduct, Plaintiff has been

11  damaged in an amount and of a nature according to proof at trial.

12

13              **FOURTEENTH CAUSE OF ACTION FOR DECLARATORY**

14         **RELIEF OVER VALIDITY OF THE DECEMBER 2000 AGREEMENT**

15                          **AGAINST ISAAC LARIAN**

16       91.    Plaintiff realleges paragraphs 1 through 36 of this Complaint.

17

18       92.    An actual justiciable controversy exists between Plaintiff on the one hand

19  and Defendant ISAAC on the other hand  in that Plaintiff contends that the December

20  2000 Agreement was void ab initio due to the fraud and deceit of MORAD and/or

21  ISAAC inducing Plaintiff's consent to it while Plaintiff is informed and believes that

22  ISAAC contends the December 2000 Agreement is valid, enforceable and that there is

23  no basis for invalidating or voiding it.

24

25       93.    Plaintiff has no accurate remedy at law and the parties require a judicial

26  declaration of their legal rights and obligations with respect to the December 2000

27  Agreement.

28

2221.002\9929                       -25-
                                  Complaint

**EXHIBIT 18 PAGE 377**

## FIFTEENTH CAUSE OF ACTION FOR CONSTRUCTIVE TRUST, PRELIMINARY INJUNCTION AND ACCOUNTING AGAINST MORAD ZARABI AND ISAAC LARIAN

94.     Plaintiff realleges paragraphs 1 through 36 of this Complaint.

95.     The share certificates for FRED's Stock were held in trust by MORAD pursuant to a pledge agreement made by ISAAC in connection with the December 2000 Agreement.  Plaintiff has made demand on MORAD to show him the share certificates, but MORAD has failed and refused to do so.  Plaintiff is informed and believes that MORAD has turned over the stock certificates or other instruments affecting the stock certificates to ISAAC.

96.     By virtue of their fraudulent acts, Plaintiff is entitled to rescission of the December 2000 Agreement and to restitution of his stock in MGA subject to an accounting by the Court of any amount of the consideration Plaintiff received for his stock that must be returned to Isaac, which Plaintiff hereby offers to restore. Defendants and each of them hold FRED's Stock as a constructive trustee for Plaintiff's benefit.  Plaintiff is informed and believes that the stock certificates may be voided, lost or destroyed and Plaintiff's stock interest diluted or altered to Plaintiff's detriment unless Defendants and each of them are enjoined and restrained from taking any acts of any nature with respect to Plaintiff's stock certificates and stock interest.

97.     Plaintiff does not know what amounts, if any have accrued or been distributed on account of Plaintiff's MGA stock and an accounting is therefore necessary to determine what amounts, if any are due Plaintiff on account of his MGA stock.

2221.002\9929                          -26-
                                     Complaint

EXHIBIT *16* PAGE 378

WHEREFORE, Plaintiff prays for judgment as follows:

1. That the September 28, 2000 Agreement to Arbitrate and Selection of Arbitrator is declared void ab initio or is rescinded;

2. That the December Arbitration Provisions are declared void ab initio or are rescinded;

3. That MORAD ZARABI is judicially declared as disqualified from serving as an arbitrator of any disputes between Plaintiff and Defendant ISAAC LARIAN;

4. That KAMBIZ ROBERT ZARABI is judicially declared as disqualified from serving as an arbitrator of any disputes between Plaintiff and Defendant ISAAC LARIAN;

5. That Defendants and each of them and their agents and employees hold Plaintiff's MGA Stock as constructive trustees for Plaintiff's benefit;

6. That Defendants and each of them, their agents, employees and all those in active concert and participation with them are preliminarily and permanently enjoining from transferring, disposing of, or altering FRED's Stock certificates or interest in MGA;

7. That the December 2000 Agreement (including all related agreements) is declared void ab initio or is rescinded;

8. That Plaintiff's stock in MGA be restored to him;

9. For an accounting of all monies accruing to or distributed on account of Plaintiff's stock in MGA;

10. For damages as allowed by law and according to proof at trial;

11. For reasonable attorneys fees;

12. For costs as allowed by law;

13. For punitive damages as allowed by law and according to proof at trial; and

2221.002\9929                                   -27-
                                            Complaint

EXHIBIT *18* PAGE 379

1        14.    For such other relief as the Court deems just and proper.

2

3    Dated:  February 24, 2005

                        William C. Conkle
                        Mark D. Kremer
                        Eric S. Engel, members of
                        CONKLE & OLESTEN
                        Professional Law Corporation

                 By:        _____

                        Mark D. Kremer
                        Attorneys for Plaintiff

EXHIBIT 18 PAGE 380

<u>VERIFICATION</u>

I have read the foregoing **Verified Complaint** and know its contents.

☒ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am _____ of _____, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☐ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☒ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on February 25, 2005.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_Farhad Larian_
Print Name of Signator          _Farhad Larian_ (signature)
                                 Signature

Verification to Complaint

EXHIBIT 18 PAGE 381

ORIGINAL

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, state bar number, and address):*
Mark D. Kremer
Conkle & Olesten, Professional Law Corporation
3130 Wilshire Blvd., Suite 500
Santa Monica, CA 90403
TELEPHONE NO  310-998-9100     FAX NO:  310-998-9109
**ATTORNEY FOR** *(Name):* Plaintiff

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS
CITY AND ZIP CODE: Los Angeles, CA 90012-3014
BRANCH NAME Central District

CASE NAME: Farhad Larian v. Morad Zarabi, et al.

FOR COURT USE ONLY

**FILED**
LOS ANGELES SUPERIOR COURT

FEB 2 8 2005

JOHN A. CLARKE, EXECUTIVE OFFICER/CLERK
BY
J. SUNGA, DEPUTY

| CIVIL CASE COVER SHEET | Complex Case Designation | | CASE NUMBER: BC 329501 |
|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | JUDGE. |
| | | | DEPT: |

*All five (5) items below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812 ) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [X] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Business tort/unfair business practice (07) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Civil rights (08) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Fraud (16) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Petition re: arbitration award (11) | |
| **Employment** | [ ] Writ of mandate (02) | |
| [ ] Wrongful termination (36) | [ ] Other judicial review (39) | |
| [ ] Other employment (15) | | |

2. This case  [ ] is   [X] is not   complex under rule 1800 of the California Rules of Court. If case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states or countries, or in a federal court
   f. [ ] Substantial post-judgment judicial supervision

3. Type of remedies sought *(check all that apply):*
   a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [X] punitive

4. Number of causes of action *(specify):* 15

5. This case  [ ] is   [X] is not   a class action suit.

Date: February 24, 2005

Mark D. Kremer
_____
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.)  Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a complex case, this cover sheet shall be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2003]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court  rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19

EXHIBIT 18 PAGE 382

ORIGINAL

| SHORT TITLE: Farhad Larian v. Morad Zarabi, et al. | CASE NUMBER | BC 329501 |
|---|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [x] YES   CLASS ACTION? [ ] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL 7 [ ] HOURS/ [x] DAYS.

**Item II.** Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (See Column C below)

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | [ ] A6070  Asbestos Property Damage | 2. |
| | | [ ] A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ ] A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | [ ] A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | [ ] A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | [ ] A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | [ ] A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | [ ] A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [ ] A6013  Fraud (no contract) | 1., 2., 3. |
| | Intellectual Property (19) | [ ] A6016  Intellectual Property | 2., 3. |

| CIV 109 03-04<br>LASC Approved | **CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION** | LASC, rule 2.0<br>Page 1 of 4<br>LA-4B1 |
|---|---|---|

EXHIBIT *8* PAGE 383

| SHORT TITLE: | Farhad Larian v. Morad Zarabi, et al. | CASE NUMBER |
|---|---|---|

| A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>- See Step 3 Above |
|---|---|---|
| Professional<br>Negligence<br>(25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Wrongful Termination<br>(36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment<br>(15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109  Labor Commissioner Appeals | 10. |
| Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008  Contract/Warranty Breach-Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections<br>(09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| Insurance Coverage<br>(18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract<br>(37) | ☒ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027  Other Contract Dispute (not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Eminent<br>Domain/Inverse<br>Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation   Number of parcels _____ | 2. |
| Wrongful Eviction<br>(33) | ☐ A6023  Wrongful Eviction Case | 2., 6.. |
| Other Real Property<br>(26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | ☐ A6032  Quiet Title | 2. ,6. |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer -<br>Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer -<br>Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer -<br>Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/ Vacate Arbitration | 2., 5. |

Side labels (vertical): Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.) — Employment — Contract — Real Property — Unlawful Detainer — Judicial Review

CIV 109 03-04<br>
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

LASC, rule 2.0<br>
Page 2 of 4

EXHIBIT 18 PAGE 384

| SHORT TITLE: | Farhad Larian v. Morad Zarabi, et al. | CASE NUMBER |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br>(02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review<br>(39) | ☐ A6150  Other Writ / Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br>(20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership/Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

CIV 109 03-04
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

EXHIBIT  PAGE 385

| SHORT TITLE: Farhad Larian v. Morad Zarabi, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE. | ADDRESS. |
|---|---|
| ☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | 20120 Plummer Street |
| CITY: Chatsworth | STATE. CA | ZIP CODE: 91311 | |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the <u>Stanley Mosk</u> <u>courthouse</u> in the <u>Central</u> District of the Los Angeles Superior Court (Code of Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: <u>February 24, 2005</u>

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

## PLEASE HAVE THE FOLLOWING DOCUMENTS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form JC 982.2(b)(1).

4. Complete Addendum to Civil Case Cover Sheet form CIV 109 _____ (eff. Date).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form 982(a)(27), if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

CIV 109 03-04
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 4 of 4

EXHIBIT /8 PAGE 386

Exhibit 19

**quinnemanuel** triallawyers | losangeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S INTERNET ADDRESS
juanpabloalban@quinnemanuel.com

December 5, 2007

**VIA FACSIMILE**
310-556-2920

Alisa Morgenthaler-Lever
Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
10250 Constellation Boulevard, Nineteenth Floor
Los Angeles, California 90067

Re:     Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Ms. Lever:

This letter memorializes the substance of the conference of counsel among our law firms regarding Farhad Larian's responses and objections to Mattel's Rule 45 subpoena. The conference took place on November 20, 2007, and continued on November 27, 2007. Skadden Arps also participated in the conference on behalf of MGA and Isaac Larian.

In addition to the requests for which Mr. Larian initially agreed to produce documents, you further agreed to produce documents responsive to Request Nos. 20, 22 and 30, without qualification other than the attorney-client and attorney work product privileges. You agreed to produce these documents on December 6, 2007.

You also stated that Mr. Larian does not have documents in his possession, custody or control responsive to Request Nos. 15, 21, 29, 31, 32, 33, 34, 35, 36, 37 and 40. You agreed to supplement Mr. Larian's responses to clarify this representation. His responses currently do not say that Mr. Larian does not have responsive documents for these requests. Please let us know when Mr. Larian expects to supplement the responses.

You stated that Farhad Larian was not withholding any documents based on an "arbitral immunity or privilege."

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

EXHIBIT *19* PAGE 387

Alisa Morgenthaler-Lever
December 5, 2007

We agreed to defer discussion on Mr. Larian's objections to Request Nos. 4, 16, 17, 18 and 19. We discussed Request No. 18 at length, however, which covers similar areas as Requests Nos. 17 and 19. We also discussed Request Nos. 1 and 2, which cover similar areas as Request Nos. 4 and 16. In those discussions, you articulated your consistent position that you were only willing to produce documents that reference Bratz. As we discussed on November 20 and again on November 27 in connection with these and other requests, that is not an acceptable limitation, as Farhad Larian possesses documents other than those that say "Bratz" which go to liability, bias, credibility and damages.

For example, for requests seeking information about the Larian v. Larian proceedings and/or factual contentions therein for which you did not agree to produce all (or any) responsive documents (e.g, Request Nos. 1-2, 9, 18), you took the position that the main issue in those proceedings was how much money Farhad Larian got for his sale of stock, and in that light you agreed to produce only documents referring to Bratz. Our position is that Farhad Larian's primary contention as to why his sale of stock was too low–the number one issue in both of his lawsuits and the 2005 arbitration–was that, for purposes of the December 2000 valuation, MGA and Isaac Larian concealed the conception and development of Bratz. As such, documents well beyond just those specifically referring to "Bratz" are discoverable. The concealment allegation in and of itself indicates that many documents relevant to Farhad Larian's lawsuits may not have the word "Bratz" on their face. Both parties generally agreed that financial/appraisal/valuation documents that record or assess Bratz sales are relevant as to the origins of Bratz and as to damages in this action.

As to Request No. 8, you agreed to produce only correspondence. We did not accept that limitation. Unless you changed your mind, there is no outstanding issue.

For requests seeking information about payments from Isaac Larian or his family and/or MGA to Farhad Larian or his family (Request Nos. 3(e), 23, 24), you took the position that Mr. Larian would only produce documents that go to bias, as unilaterally determined by you. We did not accept narrowing the scope in that manner, but offered to exclude low dollar threshhold gifts, which you rejected.

As to Request No. 25, you misunderstood the scope of the request. Mattel clarified that the request was narrow, limited to documents that refer to or that relate to this action (Bryant v. Mattel and the consolidated cases). The request did not seek all documents in Mr. Larian's possession that may be relevant to this action. You said that you may have some privileged documents and also agreed to get back to us on whether or not you would produce anything other than documents related to Bratz. Please let us know if you have changed your position and/or have responsive non-privileged documents.

As to Request No. 39, you did not think you had anything responsive other than pleadings where Farhad Larian accused Isaac Larian of withholding Bratz information from him. We explained that this was not the only purpose of the Request. The Request goes more towards Mr. Larian's

EXHIBIT 19 PAGE 388

Alisa Morgenthaler-Lever
December 5, 2007

preservation and withholding of documents responsive to Mattel's subpoena or other discovery requests in other cases. You agreed to look for additional responsive documents with that clarification.

Generally with respect to Mr. Larian's burden objections, you did not state during the conference how many documents were at issue that Mr. Larian and/or your law firm would have to review to fully respond to the requests. You also did not agree to have a paralegal or associate from Quinn Emanuel inspect the documents and pull non-privileged, relevant documents, at Mattel's cost and with an agreement that Mattel would not argue, from the inspection, that any waiver of any privilege occurred.

In summary, subject to any further agreement by Mr. Larian with respect to the above requests, the parties could not reach agreement on whether or not Mr. Larian is obligated to produce any documents, and/or on the scope of Mr. Larian's production obligations, with respect to Mattel's Request Nos. 1-4, 8, 9, 16-19, 23-25, 38, 39 and 41.

You did not agree to produce a document-by-document privilege log. You stated that the total amount of privileged documents in Mr. Larian's possession–including both the November 19 and December 6 productions–should be approximately one banker's box.

Mattel requested dates for Mr. Larian's deposition, and you agreed to confer with your client and to produce them. Please let us know when Mr. Larian is available.

You let me know by telephone yesterday that Mr. Larian agreed to modify the prior protective orders he raised in his objections. Let us know when we can expect a letter confirming as much and when we can expect Mr. Larian to sign the stipulations we proposed on November 26, 2007.

Let us know if any of the above does not accord with your notes from the conference.

Finally, we believe that this letter addresses the issues for the Requests you mention in your November 30, 2007 letter. Mattel served Mr. Larian the subpoena on August 31, 2007, and the meet and confer process has concluded.

Very truly yours,

Juan Pablo Albán

3

EXHIBIT 9 PAGE 389

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

**DATE:**     December 5, 2007              **NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Alisa Morgenthaler Lever, Esq.* <br> Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | 310-553-3000 | 310-556-2920 |

**FROM:**     Juan Pablo Albán

**RE:**     Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

**MESSAGE:**

Please see attached.

FAXED
DEC 0 5 2007

---

07209/2236866.1

CLIENT #   **7209**    ROUTE/ RETURN TO:   **Lorraine R. - 4th Fl.**    ☐ CONFIRM FAX   X INCLUDE CONF. REPORT

OPERATOR: *Priscilla*    CONFIRMED?   ☐ NO   ☐ YES: _____

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE**

EXHIBIT *19* PAGE 390

```
                    ***********************
                *** TX REPORT ***
                    ***********************


TRANSMISSION OK

TX/RX NO               4424
RECIPIENT ADDRESS      9643#7209#13105562920
DESTINATION ID
ST. TIME               12/05 12:18
TIME USE               01'13
PAGES SENT             4
RESULT                 OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**  December 5, 2007

**NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| **Alisa Morgenthaler Lever, Esq.** Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | 310-553-3000 | 310-556-2920 |

**FROM:**  Juan Pablo Albán

**RE:**  Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

**MESSAGE:**

Please see attached.

EXHIBIT *19* PAGE 391

**Exhibit 20**

10-31-07   09:50   From-Stern & Goldberg   +818-758-3949   T-550   P.002   F-003

# STERN & GOLDBERG

ELLIS STERN*‡
ALAN N. GOLDBERG*
KIEN C. TIET

*CERTIFIED SPECIALIST.
TAXATION LAW
‡CERTIFIED SPECIALIST,
PROBATE, ESTATE PLANNING
AND TRUST LAW
THE STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

ATTORNEYS AT LAW
6345 BALBOA BOULEVARD
SUITE 200
ENCINO, CALIFORNIA 91316
(818) 758-3940
(310) 278-8696

JUSTIN J. LANSBERG
LAWRENCE W. HAIT
OF COUNSEL

FAX (818) 758-3950

E-MAIL: estern@sgattys.com
agoldborg@sgattys.com
ktiet@sgattys.com
jlansberg@sgattys.com

October 31, 2007

**Via Facsimile and U.S. Mail**
**(213) 624-0643**

Juan Pablo Alban, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   Mattel, Inc. - Carter Bryant
      U.S.D.C. Case No. CV04-9049 SGL (RNBx)

Dear Mr. Alban:

This letter is to acknowledge receipt of your letter of October 25, 2007, regarding the Subpoena in a Civil Case ("Subpoena" herein), served by your office upon Stern & Goldberg in the above-entitled action.

Initially, I again note that you continue to send correspondence to our outgoing fax number. As such, I received the fax copy and the mailed version of your letter on Monday, October 29, 2007. Our facsimile number, which is stated on our letterhead, is (818) 758-3950. While, in your letter it referenced it was faxed to that number, however, on the fax cover sheet and the letter itself showed it was faxed to the incorrect number (a copy of the faxed version is enclosed). When that occurs, the faxes are mixed with our outgoing fax confirmation sheets and will not immediately, if at all, be delivered to me. In this case, I received it on October 29, 2007. In the future, I again request that you make sure that the person who is responsible for faxing documents to my office utilizes the correct facsimile number.

Again, I disagree with the entire contents of your letter. I will not again address all of the grounds for objection, as many grounds have previously been set forth in my letters to you of October 2, 2007 and October 8, 2007 and my letter to Michael Zeller of September 17, 2007. I simply reference those letters and the objections set forth therein. Further, please note that the conference call which you request, should also include counsel for MGA, Isaac Larian, and Farhad Larian, since it would relate to your client's attempt to obtain documents to which those parties clearly have a vested interest. I will address the remaining issues set forth in your letter in the order in which they appear.

C:\wpdocs\MATTEL - BRYANT\LETTERS\ALBAN LTR 10.31-0 ·

EXHIBIT 20 PAGE 392

Juan Pablo Alban, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
October 31, 2007
Page 2

### 1.   Documents Are Admittedly in Possession of Parties to the Litigation.

Initially, you acknowledge that Isaac and Farhad Larian may have in their possession, the documents which you seek from Stern & Goldberg. You then state they have not "produced documents in response to Mattel's document requests", but do not state why. Does it involve claims of privilege? In such case your client obviously has a remedy to seek those documents from the parties to the litigation. However, I do not believe the remedy is to harass a non-party. Indeed, your firm continues to refuse to even comply with the express requirements of the Stipulated Order Appointing a Discovery Master ("Discovery Stipulation"herein) which your firm authored. To date you continue to fail to send copies of all meet and confer correspondence to the parties to the action, as required by the Discovery Stipulation.

As I understand your letter, you do not dispute Stern & Goldberg's proper assertion of attorney-client and attorney work-product to the first two (2) categories of documents clearly described in my letter, dated October 12, 2007 to Alisa Morgenthaler Lever. Such description (which I also provided in our telephone conversation) clearly provides you with the information necessary to determine that they are privileged and you appear to acknowledge that fact. As such, no further information or identification appear necessary and will not be provided. As such, there is no necessity to provide a document by document listing. Indeed, any request to do so, would clearly indicate your intent is to harass and annoy.

As to category No. 3, we believe those documents are subject to the Arbitrator's privilege. As you were advised, there were five items listed on the privilege log which I sent to you on October 16, 2007. All of those items, save and except for the tape recording of the January 23, 2003 meeting, are in the possession of Isaac Larian, Farhad Larian and their counsel of record in the underlying matters, including Kaye Scholer. Further, as I advised, we no longer have possession of the tape recording of the January 23, 2003 meeting. Although, I believe we have a transcription of that tape, it would clearly be subject to the attorney work-privilege since it was obtained by our firm in connection with its representation of Mr. Zarabi, and was not disseminated to anyone.

All of the remaining documents which you seek from Stern & Goldberg are in the possession, custody and control of parties to the litigation, namely MGA and Isaac Larian. They are also in the possession of Farhad Larian (I do not know if he is a party to this action). Based upon the description in your letter, you obviously have information that the parties possess those documents, as you identified many of the documents by batestamp numbers. Since those batestamp numbers were not placed upon the documents by our firm, it is apparent you either have the documents or one of the parties to the action has listed them on a privilege log. Please advise me which of those is correct. If not, please advise me how you obtained the information as to the batestamp numbers of those specific documents. Further, has any determination been made as to whether those documents are privileged or required to be produced in discovery by a party to the action.

EXHIBIT _20_ PAGE 393

Juan Pablo Alban, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
October 31, 2007
Page 3

As stated above, you continue to fail to provide the parties to the case with copies of the "meet and confer" correspondence you send to me. Such refusal, raises a concern that your office is trying to utilize the subpoena process to obtain documents outside of the normal scope of discovery. Indeed, your letter now purports to seek tax information which is clearly privileged under both federal and state law.

Your letter again fails to address that the "Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the Courts." [ See the discussion in my letter to you of October 2, 2007.]

## 2. There is No Right to Obtain Discovery From An Arbitrator.

In your letter, you state there is no privilege provision in either the Federal Arbitration Act or under the Federal Rules of Evidence similar to **California Evidence Code § 703.5**. I disagree. The cases you cite clearly hold that the deposition of arbitrators are repeatedly condemned by the Courts, and that documents utilized by the Arbitrator during his deliberative process are not subject to discovery. See <u>Woods v. Saturn Distribution Corp.</u> 78 F.3d 424, 430 (9th Cir. 1996); <u>O.R. Securities, Inc. v. Professional Planning Associates, Inc.</u>, 857 F.2d 742, 748 ( 11th Cir. 1988); and <u>Hoeft v. MVL Group, Inc.</u> 343 F.3d 57, 67 (2d Cir. 2003) (citing numerous cases which hold that it is improper to submit an arbitrator to examination regarding the decision making process).

In <u>National Hockey League Players Ass'n v. Bettman</u>, WL 38130 (S.D.N.Y. 1994), in which you place great reliance, the court stated "under the *Andros* rule, the subpoenas issued to the arbitrators can have no effect unless the Court finds it appropriate". **Id at p.*2.** Further, case law establishes that it is only in situations in which the request of discovery is "plainly relevant to colorable claims of arbitral bias or misconduct" may discovery be properly granted from an arbitrator. **Id at p.*2.**

Indeed, in <u>Bettman</u>, **supra**, the Court refused to allow a party to depose Mr. Bettman, stating: "most or all of the areas of relevant inquiry can be conducted through depositions of other League and team officials". **Id at p.*5.**

Finally, in <u>Bettman</u>, the Court refused to order the production of any documents when their "disclosure plainly would intrude upon the analytical basis for the arbitrator's decision, an area that is generally, and properly, viewed as not subject to inquiry." **Id at p.*7.**

Finally, the "cases are legion in which Courts have refused to permit parties to depose arbitrators or other judicial or quasi-judicial decision makers regarding the thought processes underlying their decisions." <u>Hoeft</u>, **supra**, 343 F.3d at p. 67. Such rule makes perfect sense and is equally applicable to our firm whose involvement was representing the Arbitrator in one of the

EXHIBIT *20* PAGE 394

10-31-07    09:51    From-Stern & Goldberg    +818-758-3948    T-550   P.005/011   F-003

Juan Pablo Alban, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
October 31, 2007
Page 4

underlying Larian v. Larian cases.  You are simply trying to obtain documents which you are not entitled to obtain from the Arbitrator.

For all of the reasons set forth in my letters of September 17, 2007, October 2, 2007 and October 8, 2007, we believe the Subpoena was improperly served. Indeed, its service raises serious questions as to whether it constitutes an abuse of discovery.  See e.g. Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792, 813-814 (9th Cir. 2003).

In any event, I look forward to engaging in a conference call with Mr. Corey, along with counsel for MGA, Isaac Larian and Farhad Larian.  Please note that I am available to participate in such a conference call on Wednesday, November 7, 2007 (in the morning), or Friday, November 9, 2007 (in the morning).  Please advise me of the date and time in which such call will take place, and confirm that all counsel are available to participate.

Your anticipated courtesy and cooperation is appreciated.  If you have any questions, please feel free to contact me.

Sincerely,

STERN & GOLDBERG

ALAN N. GOLDBERG

ANG: cn
Enclosure

cc:    Thomas J. Nolan, Esq., Skadden Arps Slate Meagher & Flom, LLP
       (via facsimile)
       Alisa Morgenthaler Lever, Esq., Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
       (via facsimile)
       Marc Smith, Esq., Krane & Smith (via facsimile)
       Bryant S. Delgadillo, Esq., Kaye Scholer, LLP (via facsimile)
       Morad Zarabi

C:\...\MATTEL - DRY\ANT\LETTERS\ALBAN LTR 10-39-07

EXHIBIT 20 PAGE 395

10-31-07   09:52   From-Stern & Goldberg                    +818-758-3949         T-550  P.006/011  F-003
10-25-2007  11:08am  From-QUINN EMANL                        2134433100           I-162  P.001/006  F-010

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY. 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**   October 25, 2007                    **NUMBER OF PAGES, INCLUDING COVER** 6

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Alan N. Goldberg<br>Stern & Goldberg | | 818-758-3949 |

**FROM:**   Juan Pablo Albán, Esq.

**RE:**   *Mattel v. Bryant*

**MESSAGE:**

**PLEASE SEE ATTACHED.**

---

07209/2236907 1

| CLIENT #   7209 | ROUTE/<br>RETURN TO:  Lorraine R. - 4th FL | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED?   ☐ NO   ☐ YES: |  |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-5000 AS SOON AS POSSIBLE

EXHIBIT *20* PAGE 396

# quinnemanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S INTERNET ADDRESS
juanpabloalban@quinnemanuel.com

October 25, 2007

**VIA FACSIMILE AND U.S. MAIL**
**818-758-3950**

Alan N. Goldberg
Stern & Goldberg
6345 Balboa Boulevard, Suite 200
Encino, California 91316

Re:   Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Mr. Goldberg:

This letter memorializes the telephone conference you, Jon Corey and I had on October 11, 2007 and provides a summary of our research regarding arbitral privilege under federal law. As we initially found and have now confirmed, no arbitral privilege applies to Mr. Zarabi in this case.

You stated that Isaac and Fahrad Larian may have in their possession some documents that you have, and which we seek. You also confirmed that you possess, and that they do not have documents that you withheld from them based on the attorney-client, work product and arbitral privileges. We appreciate your efforts to talk to Isaac's, Fahrad's and MGA's attorneys to persuade them to produce these documents. Your efforts, however, have apparently fallen on deaf ears. They have not responded to your October 12, 2007 letter advising them it would be prudent to produce responsive documents to Mattel. Neither Isaac nor Fahrad have produced documents in response to Mattel's document requests. So, we need to obtain these documents from you, as we have the right to do. See, e.g., U.S. v. American Optical Co., 39 F.R.D. 580, 583 (N.D. Cal. 1966) (if documents subpoenaed under Rule 45 are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing); State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840, at *1 (E.D.N.Y. 2007) ("a person may not

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 1145 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3117

EXHIBIT *20* PAGE 397

Alan N. Goldberg
October 25, 2007

avoid a subpoena by saying that the evidence sought from him is obtainable from another.") (quoting Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 998 (10th Cir. 1965)); see also Fed. R. Civ. P. 26(d) (methods of discovery may be used in any sequence). As we mentioned before, Mattel will cover the copying costs of these documents. Please let me know when Mattel can expect them.

We confirmed that we do not have an issue with your withholding documents based on the legitimate assertions of attorney-client and work product privileges. For now, you produced to us the privilege log that you gave to Isaac and Fahrad identifying the documents you withheld from them, which we appreciate. It appears, however, to include only documents that you withheld from Isaac and Fahrad based on the arbitral privilege, the applicability of which we will address below.

Mattel does not understand any of the documents to be communications between Stern & Goldberg and Mr. Zarabi or Stern & Goldberg's work product, so those privileges would not attach to those documents and they should be produced. Otherwise, Stern & Glodberg has not identified any other responsive documents as to which it asserts any claim of privilege. Please provide us with a privilege log identifying those documents and the privilege claimed.

## The Arbitral Privilege

We agreed to get back to you with more authority as to why California Evidence Code § 703.5 and other bases for an "arbitral privilege" do not apply to our requests. Whether or not your withholding documents from Fahrad and Isaac Larian based on the "arbitral privilege" was appropriate with respect to their state law disputes, that privilege does not apply to the subpoena Mattel served on you.

First, federal common law of privilege applies in federal question cases. Fed. R. Evid. 501; U.S. v. Zolin, 491 U.S. 554, 562 (1989); Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1492 (9th Cir. 1989); Garrett v. City and County of San Francisco, 818 F.2d 1515, 1519 n. 6 (9th Cir. 1987). This is a federal question case, not based on diversity jurisdiction. Mattel's complaint includes claims for federal copyright infringement, violation of RICO and conspiracy to violate RICO. MGA has also asserted claims under the federal trademark statutes. The origins, creation and development of Bratz — the crux of the discovery Mattel seeks from you, including what MGA and Isaac Larian were doing and concealing with respect to Bratz in 1999 and 2000 — are also the crux of Mattel's federal claims. The presence of state law claims does not change that result — federal privilege law applies. Agster v. Maricopa County, 422 F.3d 836, 839-840 (9th Cir. 2005), cert. denied, 126 S.Ct. 473 (2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privilege applies.") (citing Wm. T. Thompson Co. v. General Nutrition Corp., Inc., 671 F.2d 100, 104 (3d Cir. 1982)); Southern California Housing Rights Center v. Krug, 2006 WL 4122148, at *3 (C.D. Cal. 2006); Harbert v. Priebe, 466 F. Supp. 2d 1214, 1215 (N.D. Cal. 2006); Corser v. County of Merced, 2006 WL 2536622, at *3 (E.D. Cal. 2006); see also Fed. R. Evid. 501, Advisory Comm.

2

EXHIBIT 20 PAGE 398

Alan N. Goldberg
October 25, 2007

Note ("It is also intended that the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case.").[1]

Second, any "arbitral privilege" that exists under federal law simply does not apply here. No provision in either the Federal Arbitration Act or the Federal Rules of Evidence is comparable to California Evidence Code § 703.5. The case we cited in our initial meet and confer letter, National Hockey League Players' Ass'n v. Bettman, explains the limits of the "arbitral privilege" under federal law:

> As for the so-called arbitral immunity, the principle that defendants invoke is not, strictly speaking, an evidentiary privilege. Rather, the federal courts have developed two related rules governing the status of arbitrators *in the context of litigation challenging the results of an arbitration* . . .

> First, arbitrators are immune from personal-damage liability for their decisions, because they occupy a position comparable to that of a judicial officer . . .

> Second . . . *in actions addressing the results of an arbitration-whether it be a proceeding to enforce or to set aside an arbitrator's award*-the court is to exercise close supervision over the extent and nature of discovery, although the discovery rules are, at least in principle, applicable to such a proceeding.

1994 WL 38130, at *2, *6-7 (S.D.N.Y. 1994) (emphases added). Because Mattel does not seek discovery to challenge Mr. Zarabi's decisions, the limited federal arbitral privilege does not apply here.

Every other federal case we found is consistent with National Hockey League's explanation of the scope of the federal arbitral privilege. For example, in Matter of Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.), 579 F.2d 691 (2nd Cir. 1978), on which National Hockey League relies, the Second Circuit started with the premise that "the discovery procedures of the Federal Rules of Civil Procedure are generally applicable to Title 9 proceedings." Id. at 702.[2] The court then held that, "in the *special context* of what are in effect *post hoc efforts to induce arbitrators to undermine the finality of their own awards*, we agree with the district court that any questioning of arbitrators should be handled pursuant to judicial supervision and limited to situations where clear evidence of impropriety has been presented." (emphases added). See also Lyeth v. Chrysler Corp., 929 F.2d 891, 900 (2nd Cir. 1991) ("*To the extent* that

---

[1]   We doubt Mr. Zarabi qualifies as an "arbitrator" within the meaning of the California statute anyway, but even if he could make such a threshold showing, the case law above makes clear that the state statute does not apply here.

[2]   Title 9 is a reference to the Federal Arbitration Act.

3

EXHIBIT 20 PAGE 399

10-31-07   09:53   From-Stern & Gr...erg   +818-758-3949   T-550  P.010/011  F-003
10-25-2007   11:09am   From-QUINN EMANU...   2134455100   T-192  P.008/008  F-008

Alan N. Goldberg
October 25, 2007

Chrysler's request to depose the individual arbitrator *was aimed at contesting Lyeth's Lemon Law award,* the district court properly denied discovery because Chrysler did not present clear evidence of any impropriety.") (citing Andros) (emphases added). *Frere v. Orthofix, Inc.,* 2000 WL 1789641, at *5 (S.D.N.Y. 2000) ("As is evident both from Andros and from subsequent court decisions . . . that standard [*i.e.,* the arbitral privilege] applies *only to discovery inquiries directed at the arbitrator* and *only when the goal is to impugn the validity of the arbitrator's decision.*") (emphasis added).

Ninth Circuit law is consistent with, and in fact has relied on, the precedent established in the Second Circuit. *See, e.g.,* Woods v. Saturn Distribution Corp., 78 F. 3d 424, 430 (9th Cir. 1996) ("The Federal Rules of Civil Procedure do not apply to 'post hoc' questioning of arbitrators in Title 9 proceedings and 'any questioning of arbitrators should be handled pursuant to judicial supervision and limited to situations where clear evidence of impropriety has been presented.'") (quoting Andros). In Woods, the party seeking discovery was expressly challenging the prior arbitration decision. Id. Accord Thomas Kinkade Co. v. Hazlewood, 2007 WL 217384, *2-4 (N.D. Cal. 2007) (allowing limited discovery in the context of a challenge to the arbitration); Empresa Constructora Contex Limitada v. Iseki, Inc., 106 F.Supp. 2d 1020, 1024-1025 (S.D. Cal. 2000); Corsini v. Prudential Securities, Inc., 1995 WL 663174, at *2 (S.D. Cal. 1995); Portland General Elec. Co. v. U.S. Bank Trust Nat. Ass'n, 38 F.Supp. 2d 1202, 1208-1210 (D. Or. 1999) (reversed on other grounds). In each of these district court cases, an arbitrator's right to withhold discovery related to his deliberations was limited to the context of subsequent proceedings challenging the arbitral award in some way. Again, that is not the case here. As the Second Circuit found in Andros, the standard discovery obligations and limitations under the Federal Rules of Civil Procedure apply.

We trust that the above-cited authority resolves any concerns you had regarding the "arbitral privilege" and hope we can come to an amicable resolution on this issue.

Documents that we believe are in your possession to which an arbitral privilege does not apply or which are otherwise discoverable from you include, without limitation, (1) each of the five sets of documents listed in the privilege log you sent us, (2) all documents relied upon for the February 13, 2003 appraisal,[3] (3) the transcript of the January 23, 2003 meeting, (4) the Appraisal Report bates stamped ED 2 - 163, (5) an October 16, 2000 letter from Mr. Stern to National Business Appraisers and enclosures bates stamped ED 164 -178, (6) MQA tax and accounting information bates stamped ED 179 - 642, and (6) "Confidential Reconciliations"

---

[3]  Howarth & Smith produced to us all documents in their possession that were not work product or subject to the attorney-client privilege. However, they confirmed that they never received the February 13, 2003 appraisal documents, and that they do not have *any* documents produced during the Larian v. Larian disputes. Though Howarth had them at one time, Farhad took all such documents with him when he substituted Howarth with other counsel.

EXHIBIT 20 PAGE 400

Alan N. Goldberg
October 25, 2007

bates stamped MZ 942 - 1948. To avoid any doubt, your production should also include all information in your possession that MGA, Isaac or Fahrad provided to Mr. Zarabi and/or his appraiser (Ernest Dutcher and/or his company, National Business Appraisers) for purposes of any appraisals done between 2000 and 2004, inclusive.

We agreed to have another conference after you had a chance to talk to MGA's, Isaac's and Fahrad's attorneys. Please let us know if they responded to your October 12, 2007 letter, and if not, whether or not you intend to continue your discussion with Skadden Arps and Christensen Glaser. Otherwise, we should hold our conference as soon as possible. In that case, let us know a convenient time for you this week.

We look forward to hearing from you.

Very truly yours,

Juan Pablo Albán
07209/2252378.3

5

EXHIBIT 20 PAGE 401

# STERN & GOLDBERG

Attorneys at Law
6345 Balboa Boulevard, Suite 200
Encino, California 91316
(818) 758-3940

ELLIS STERN*†
ALAN N. GOLDBERG*
JUSTIN J. LANSBERG
KIEN C. TIET

LAWRENCE W. HAIT
OF COUNSEL

Fax (818) 758-3950

*CERTIFIED SPECIALIST,
TAXATION LAW
†CERTIFIED SPECIALIST,
PROBATE, ESTATE PLANNING
AND TRUST LAW
THE STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

## TELECOPIER/FAX COVER SHEET

Date:   October 31, 2007

To:

| NAME | FAX NO. | PHONE NO. |
|---|---|---|
| Juan Pablo Alban, Esq. | (213) 624-0643 | (213) 687-5252 |
| Marc Smith, Esq./Krane & Smith | (818) 382-4001 | (818) 382-4000 |
| Bryant Delgadillo, Esq./Kaye Scholer, LLP | (310) 788-1200 | (310) 788-1341 |
| Alisa Morgenthaler Lever/Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | (310) 556-2920 | (310) 282-6217 |
| Thomas J. Nolan, Esq./Skadden Arps Slate Meagher & Flom LLP | (213) 621-5250 | (213) 687-5250 |

From:   ALAN N. GOLDBERG, ESQ.

RE:   MATTEL, INC. - CARTER BRYANT

| FILE NO.: 6717-005 | NUMBER OF PAGES, INCLUDING COVER: 11 |
|---|---|

THE PAGES COMPRISING THIS FACSIMILE TRANSMISSION CONTAIN CONFIDENTIAL INFORMATION FROM STERN & GOLDBERG.  THIS INFORMATION IS INTENDED SOLELY FOR USE BY THE INDIVIDUAL OR ENTITY NAMED AS THE RECIPIENT HEREOF.  IF YOU ARE NOT THE INTENDED RECIPIENT, BE AWARE THAT ANY DISCLOSURE, COPYING, DISTRIBUTION, OR USE OF THE CONTENTS OF THIS TRANSMISSION IS PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY SO WE MAY ARRANGE TO RETRIEVE THIS TRANSMISSION AT NO COST TO YOU.

IF FOR ANY REASON THERE IS ANY PROBLEM, PLEASE CONTACT THIS OFFICE AT (818) 758-3940.

ORIGINAL DOCUMENT TO FOLLOW VIA:

Regular Mail ____   Will Not Be Sent ____   Overnight Delivery ____   E-mail ____   Other  XX

MESSAGE:

EXHIBIT *20* PAGE 402

**Exhibit 21**

# KAYE SCHOLER LLP

1999 Avenue of the Stars, Suite 1700
Los Angeles, California  90067-6048
310 788-1000
Fax 310 788-1200
www.kayescholer.com

Bryant S. Delgadillo
310 788-1341
Fax 310 788-1200
bdelgadillo@kayescholer.com

November 21, 2007

**VIA FACSIMILE AND U.S. MAIL**
Juan Pablo Alban
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   **Mattel v. Bryant, et al. Case No.: CV 04-9049-SGL(RNBx)**

Dear  Mr. Alban:

      I am in receipt of your letter of November 16, 2007 (which we received after the close of business on Friday) purportedly memorializing the two conferences of counsel we held concerning the third-party subpoenas served by Mattel, Inc. ("Mattel") upon Kaye Scholer LLP ("Kaye Scholer") in the above captioned case. While we continue to stand by every one of our objections to the subpoena, I write to address several points raised in your letter.

      First, I need to clarify the scope of the search that we agreed to undertake. As I am sure you are aware, when a party seeks documents from a law firm's files, the vast majority of those documents will be protected from disclosure by multiple privileges, including but not limited to, the attorney-client and attorney work product privileges. To require a non-party law firm to create a document privilege log in such a situation would be unreasonable and unduly burdensome. This burden is compounded when the subpoena at issue is overbroad (the subpoena here contains five (5) pages of single-space definitions and instructions, and then propounds thirty-five (35) different requests, many of which contain numerous categories of documents and subparts). In an attempt to reduce this burden, yet comply with your broadly worded requests, we agreed to review the following files for responsive documents:  1) pleading files[1]; 2) discovery files (i.e., documents produced in other litigation); and 3) arbitration exhibit (i.e., documents identified and/or submitted as an exhibit during arbitration). By focusing on these files, we are attempting to minimize the burden, expense and inconvenience imposed by the subpoena since, unlike the vast majority of the documents in our files, most of the documents in the files we agreed to search would not covered by the attorney-client privilege or the attorney

---

[1]  In response to your claim that Mattel did not want copies of every pleading in our files, but rather only copies of certain pleadings which Mattel did not already posses, we agreed to provide *redacted* versions of the indexes of our pleading clips. I did not agree to provide indexes of our discovery clips and do not intend to provide them.
23233857.DOC

EXHIBIT 21  PAGE 403

# KAYE SCHOLER LLP

Juan Pablo Alban
November 21, 2007
Page 2

work product privilege.  We believe this is a more than reasonable offer, particularly since many, if not all of the documents you are seeking are readily obtainable from a party in this action, in publicly available material, or have already been produced to Mattel by parties in this litigation. Nevertheless, we are in the process of reviewing these files (and will need to re-review these files in light of your clarifications of certain requests as discussed below) and will produce any responsive, non-privileged documents contained in those files.

Second, we cannot and will not, however, produce any documents at this time.  As you memorialized in your letter, at least two protective orders prevent us from producing documents in this case.  The protective order entered on November 16, 2005 in the underlying Larian v. Larian arbitration (ADRS Case No.: 05-2096) is of particular concern (hereinafter "11/16 Protective Order").[2]  That protective order covers, among other things, "documents produced by third party MGA Entertainment, Inc. ("MGA") and MGA documents produced by any Party or third party, all information copied or extracted therefrom, all copies, excerpts, summaries, or compilations thereof, and all testimony presented to the arbitrator, and transcripts of such testimony from any current or former MGA employee or contractor pertaining to MGA's business."  See 11/16 Protective Order at ¶2.  The vast majority of the responsive, non-privileged documents we have found so far are either: (1) documents produced by MGA or MGA documents produced by a party or third party during the arbitration, or (2) testimony or documents presented to the arbitrator.  Thus, those documents would be covered by the 11/16 Protective Order.  The restriction on the dissemination of such material is clearly detailed in the 11/16 Protective Order:

> No party or person shall be permitted to share or disseminate the documents produced by MGA or the transcripts of these proceedings to others (including any preliminary, "rough," livenote version thereof) remove them from the arbitration, make copies of them, or inform third parties of their existence or content or otherwise disclose the same to anyone, unless compelled by law.

> In short, this is a private proceeding; whatever may be disclosed about MGA's business, in privacy and confidence during the course of the arbitration, should remain private and confidential both during -- and after -- the arbitration.

---

[2]  There may be another protective order that covers some responsive, non-privileged documents in our files which were produced in another litigation.  We are trying to determine whether such a protective order exists, and if so, whether these documents are covered by that order.

23233857.DOC

NEW YORK   CHICAGO   LOS ANGELES   WASHINGTON, D.C.   WEST PALM BEACH   FRANKFURT   LONDON   SHANGHAI

EXHIBIT 21 PAGE 404

Received:  11/21/07 11:37A          QUINN EMANUEL;   Page 4

NOV-21-07   11:33AM   FROM-KayeScholer                        +          T-774   P.004/005   F-988

# KAYE SCHOLER LLP

Juan Pablo Alban
November 21, 2007
Page 3

*See* 11/16 Protective Order at ¶4.5. Thus, absent consent from the parties or a court order relieving Kaye Scholer from any obligations imposed by the 11/16 Protective Order, we are unable to produce these documents.[3]

With respect to your discussion of certain specific requests, we respond as follows:

- Request Nos. 1, 2 and 3: We did not agree to produce documents responsive to these requests. These requests are grossly overbroad as drafted in that they seek "All DOCUMENTS" relating to any and all lawsuits and/or arbitrations between Isaac Larian and Farhad Larian, including certain specifically identified Superior Court actions. As Mr. Isaac Larian's litigation counsel during some of these actions, every document in our files would arguably be responsive to these requests. Instead, without waiving any objections, we agreed to produce redacted versions of indexes of our pleading clips so you can determine whether you are missing any of the pleadings filed in those cases.

- Request Nos. 6, 10, 13 and 14: You admit that Request No. 6 "may be broad and encompass many documents in your possession" yet you continue to insist that Kaye Scholer, as a non-party, comply with this request as drafted. In addition, you claim that request nos. 10, 13 and 14 seek documents which are at the "heart of the litigation" or were placed "at issue in this litigation" by MGA, yet you have never explained why you are making a non-party respond to these admittedly overbroad requests, instead of getting these critical documents directly from MGA, a party to this action. We have tried to work with you by agreeing to the search procedure outlined in the first paragraph of this letter. These requests, particularly requests nos. 6 and 10, would effectively require us to review every document in our files (as each document in our files arguably "relates to Bratz" in some way) and would render null our proposed procedure for eliminating the burden, expense and inconvenience imposed by the subpoena. In such a situation, we believe that any Court would view these requests are duplicative and overly burdensome since Kaye Scholer is a third party and the requested documents are readily obtainable from a party in this action. *See* F.R.C.P. 26(b)(2)(C)(i) (court may exercise its discretion to limit the use of discovery methods otherwise permitted under the Federal Rules if the Court determines that the discovery is obtainable from some other source that is more convenient, less burdensome or less expensive). Your offer to have a one of your

---

[3]  Your assertion that these protective orders do not apply to documents Mr. Larian had in his possession, custody, or control prior to entering into the protective order is unsupported. In addition, we also reject your request to identify any documents "withheld pursuant to these protective orders on any privilege log" as we are not withholding these documents based upon any privileged. Moreover, as we indicated to you on numerous occasions, we do not believe we are required to create a privilege log in this case. Lastly, a creation of a log that identifies documents that are covered by the 11/16 Protective Order would arguably violate that order as well.
23233857.DOC

NEW YORK   CHICAGO   LOS ANGELES   WASHINGTON, D.C.   WEST PALM BEACH   FRANKFURT   LONDON   SHANGHAI

EXHIBIT 21 PAGE 405

# KAYE SCHOLER LLP

Juan Pablo Alban
November 21, 2007
Page 4

paralegals comb through our litigation files does nothing to alleviate this burden or
inconvenience.

- Request Nos. 4 and 22: As you stated, we will not produce any documents covered
  by the attorney-client privilege, the attorney work product privilege, the federal
  settlement privilege or the joint defense/common interest privilege. To the extent
  there are any responsive documents within the files we agreed to search, and we
  withhold any documents responsive to these requests, we will provide you with a
  privilege log with respect to these requests only.

- Request Nos. 29 and 32: Since we just received your clarifications and/or guidance
  with respect to these requests in your November 16, 2007 letter, we will now have to
  go back and review our files again with these clarifications and/or guidance in mind.
  So even if we could have produced documents on November 19th (which we cannot
  for the reasons stated above), we obviously will need some additional time to re-
  review our files for these documents.

Please feel free to contact me should you have any questions or comments regarding this
letter. In particular, I would like to discuss how we can resolve this issue with respect to the
protective orders.

Sincerely yours,

Bryant S. Delgadillo

BSD:vjh

23233857.DOC

EXHIBIT 21 PAGE 406

Received: 11/21/07 11:37AM    TO QUINN EMANUEL ;  Page 1

NOV-21-07   11:33AM   FROM-KayeScholer·                          +                    T-774   P.001/005   F-988

# KAYE SCHOLER LLP

## FAX COVER SHEET

1999 Avenue of the Stars, Suite 1700
Los Angeles, California  90067-6048
310 788-1000
Fax 310 788-1200

| | | | |
|---|---|---|---|
| Date: | November 21, 2007 | Client No.: | 36037-0007· |
| To: | Juan Pablo Alban | Phone No.: | (213) 443-3000 |
| | | Fax No.: | (213) 443-3100 |
| From: | Bryant Delgadillo | Direct Dial No.: | (310) 788-1341 |
| | bdelgadillo@kayescholer.com | Direct Fax No.: | (310) 788-1205 |
| Re: | Mattel v. Bryant, et al., Case No. CV 04-9049 | | |

Number of Pages: 5   (Including Cover Sheet)

**Message:**

---

**IF ALL PAGES ARE NOT RECEIVED, CALL (310) 788-1230**
(or Call Direct Dial Number Listed Above)

*NOTE: This facsimile transmission contains confidential and/or legally privileged information from the law firm Kaye Scholer LLP intended only for the use of the individual(s) named on the transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this facsimile transmission is strictly prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for the return of the documents to us at no cost to you.*

NEW YORK    CHICAGO    LOS ANGELES    WASHINGTON, D.C.    WEST PALM BEACH    FRANKFURT    LONDON    SHANGHAI

23230076.WPD

**EXHIBIT 21 PAGE 407**

**Exhibit  22**

## Juan Pablo Alban

| | |
|---|---|
| **From:** | Juan Pablo Alban |
| **Sent:** | Thursday, December 06, 2007 5:52 PM |
| **To:** | 'Chan Sandra' |
| **Cc:** | 'jkeker@kvn.com'; 'tnolan@skadden.com'; 'mhp@kvn.com'; Michael T Zeller; Jon Corey; Dylan Proctor; Timothy Alger; Bridget Hauler; Tamar Buchakjian; 'moverland@obsklaw.com'; tmiller@skadden.com; Alisa Morgenthaler Lever; Scott Gizer; agoldberg@sgattys.com |
| **Attachments:** | 2317015_Mot Compel Farhad Larian to Produce Docs.PDF; 2317018_Separate Statement Support Motion Compel.PDF; 2317029_Mot Compel Stern & Goldberg Produce Docs.PDF |

Dear Ms. Chan,

Attached please find the following documents:

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL FARHAD LARIAN TO PRODUCE DOCUMENTS; AND MEMORANDUM OF POINTS AND AUTHORITIES.

SEPARATE STATEMENT IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL FARHAD LARIAN TO PRODUCE DOCUMENTS

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL STERN & GOLDBERG TO PRODUCE DOCUMENTS; AND MEMORANDUM OF POINTS AND AUTHORITIES

I will be sending by separate emails a joint declaration in support of both Motions to Compel, as well as the Proof of Service. Please do not hesitate to contact me if you have any questions.

Juan Pablo Alban
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3624
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: juanpabloalban@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT 22 PAGE 408

**Exhibit 23**

**From:** Juan Pablo Alban
**Sent:** Monday, December 10, 2007 5:36 PM
**To:** 'Chan Sandra'
**Cc:** 'jkeker@kvn.com'; 'tnolan@skadden.com'; 'mhp@kvn.com'; Michael T Zeller; Jon Corey; Dylan Proctor; Timothy Alger; Bridget Hauler; Tamar Buchakjian; 'moverland@obsklaw.com'; 'tmiller@skadden.com'; Bryant Delgadillo
**Subject:** Bryant v. Mattel - Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)

Dear Ms. Chan,

Attached please find the following documents:

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL KAYE SCHOLER  TO PRODUCE DOCUMENTS; AND MEMORANDUM OF POINTS AND AUTHORITIES ; AND

DECLARATION OF JUAN PABLO ALBAN IN SUPPORT OF MOTION TO COMPEL KAYE SCHOLER  TO PRODUCE DOCUMENTS (PART 1 OF 3)

I will be sending by separate email  the remaining parts of the declaration.  Please do not hesitate to contact me if you have any questions.

Juan Pablo Alban
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3624
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  juanpabloalban@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT 23 PAGE 409

12/11/2007

**From:** Juan Pablo Alban
**Sent:** Monday, December 10, 2007 5:36 PM
**To:** 'Chan Sandra'
**Cc:** 'jkeker@kvn.com'; 'tnolan@skadden.com'; 'mhp@kvn.com'; Michael T Zeller; Jon Corey; Dylan Proctor; Timothy Alger; Bridget Hauler; Tamar Buchakjian; 'moverland@obsklaw.com'; 'tmiller@skadden.com'; Bryant Delgadillo
**Subject:** Bryant v. Mattel - Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)

Attached:

DECLARATION OF JUAN PABLO ALBAN IN SUPPORT OF MOTION TO COMPEL KAYE SCHOLER  TO PRODUCE DOCUMENTS (PART 2 OF 3)


Juan Pablo Alban
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3624
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  juanpabloalban@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

12/11/2007

EXHIBIT 23 PAGE 410

**From:** Juan Pablo Alban
**Sent:** Monday, December 10, 2007 5:36 PM
**To:** 'Chan Sandra'
**Cc:** 'jkeker@kvn.com'; 'tnolan@skadden.com'; 'mhp@kvn.com'; Michael T Zeller; Jon Corey; Dylan Proctor; Timothy Alger; Bridget Hauler; Tamar Buchakjian; 'moverland@obsklaw.com'; 'tmiller@skadden.com'; Bryant Delgadillo
**Subject:** Bryant v. Mattel - Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)

Attached:

DECLARATION OF JUAN PABLO ALBAN IN SUPPORT OF MOTION TO COMPEL KAYE SCHOLER  TO PRODUCE DOCUMENTS (PART 3 OF 3)

POS


Juan Pablo Alban
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3624
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  juanpabloalban@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT *23* PAGE 411

**Exhibit 24**

# KAYE SCHOLER LLP

1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067-6048
310 788-1000
Fax 310 788-1200
www.kayescholer.com

Bryant S. Delgadillo
310 788-1341
Fax 310 788-1200
bdelgadillo@kayescholer.com

December 11, 2007

**VIA FACSIMILE AND EMAIL**
Juan Pablo Alban
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    **Mattel v. Bryant, et al. Case No.: CV 04-9049-SGL(RNBx)**

Dear  Mr. Alban:

We are in receipt of Mattel, Inc.'s ("Mattel") Notice of Motion and Motion to Compel Kaye Scholer to Produce Documents ("Motion to Compel") which you served upon Kaye Scholer at the close of business yesterday, December 10, 2007.  The Motion to Compel is procedurally defective in that you have failed to comply with, among other things, C.D. Cal. Local Rules 37-2.1 and 37-2.2.  A court will not consider any discovery motion which fails to comply with these rules. *See* C.D. Cal. Local Rule 37-2.4.[1]  If you insist on proceeding with this defective Motion to Compel, please be advised that Kaye Scholer will seek the appropriate sanctions. *See* C.D. Cal. Local Rule 37-4.

In addition, if you do proceed with this defective Motion to Compel, we intend to file our opposition in accordance with the Federal Rules of Civil Procedure and the C.D. Cal. Local Rules.  Therefore, we will file and serve our opposition on December 27, 2007.

Sincerely yours,

Bryant S. Delgadillo

BSD:vjh

---
[1] These Local Rules clearly apply to motions relating to discovery subpoenas served on non-parties. *See* C.D. Cal. Local Rule 45-1.

23235192.DOC

NEW YORK    CHICAGO    LOS ANGELES    WASHINGTON, D.C.    WEST PALM BEACH    FRANKFURT    LONDON    SHANGHAI

EXHIBIT *24* PAGE 412

**Exhibit 25**

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  | John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
  | Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
  | Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
  | Timothy L. Alger (Bar No. 160303)
5 | (timalger@quinnemanuel.com)
  | 865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
  | Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Mattel, Inc.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| | |
|---|---|
| 12 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13        Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| 14    vs. | |
| 15 MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| 16        Defendant. | MATTEL, INC.'S *EX PARTE* APPLICATION TO (1) COMPEL DEPOSITIONS OF ELISE |
| 17 | CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA |
| 18 AND CONSOLIDATED ACTIONS | MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE |
| 19 | SCHEDULING ORDER; AND |
| 20 | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT |
| 21 | THEREOF |
| 22 | [Declaration of B. Dylan Proctor filed concurrently herewith] |
| 23 | |
| 24 | Hearing Date: November 16, 2007 Time: 10:00 a.m. Place: Courtroom 1 |
| 25 | |
| 26 | Discovery Cut-Off: January 28, 2008 Pre-Trial Conference: May 5, 2008 Trial Date: May 27, 2008 |
| 27 | |
| 28 | |

*11-15*

MATTEL'S *EX PARTE* APPLICATION

EXHIBIT 25 PAGE 413

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that Mattel, Inc. ("Mattel") will, and hereby does,

3   respectfully apply *ex parte*, pursuant to <u>Local Rule</u> 7-19 and <u>Fed. R. Civ. P.</u> 30, for

4   an order (1) compelling Elise Cloonan, Margaret Hatch-Leahy and Veronica

5   Marlow to appear for deposition on or before December 7, 2007, or (2) in the

6   alternative, modifying the Court's Scheduling Order to extend Mattel's time to take

7   follow-up discovery based on the witnesses' testimony until two months after their

8   depositions are completed.

9          This *ex parte* application is made on the grounds that these key witnesses --

10  who are affiliated with MGA and represented by MGA's counsel -- have crucial

11  knowledge about the origins of Bratz and the timing of its creation and

12  development, including during the time periods when defendant Carter Bryant was

13  working for Mattel.   These witnesses cancelled their scheduled depositions as a

14  result of the recent stay obtained by MGA.   Now they are refusing to appear for

15  deposition within a reasonable period of time, despite repeated requests from Mattel.

16  If these witnesses are not compelled to appear for deposition no later than

17  December 7, 2007 and the Court does not modify the Scheduling Order to permit

18  follow-up discovery when these witnesses finally appear, Mattel will be prejudiced

19  by not having sufficient time to complete its discovery prior to the January 28, 2008

20  discovery cut-off date.   Mattel would be irreparably prejudiced if this motion were

21  heard according to regularly noticed motion procedures because it would not be able

22  to complete discovery it is indisputably entitled to prior to the currently scheduled

23  discovery deadlines.

24          This application is based on this Application, the accompanying

25  Memorandum of Points and Authorities, the concurrently filed declaration of B.

26  Dylan Proctor, and all pleadings and papers on file with the Court in this action.

27

28

07209/2296082.1

-1-

1    Pursuant to <u>Local Rule</u> 7-19.1, counsel for Mattel gave notice of this

2    application to counsel for all other parties and the witnesses *via* telephone and letter

3    on November 14-15, 2007.[1]

4    Counsel for Elise Cloonan, Margaret Hatch-Leahy and Veronica Marlow is

5    Larry McFarland of Keats McFarland & Wilson LLP (telephone: 310-248-3830;

6    address: 9720 Wilshire Blvd., Beverly Hills, CA 90212). Mr. McFarland has stated

7    that his clients will oppose this application.[2]

8    Counsel for Carter Bryant is Michael Page of Keker & Van Nest, LLP

9    (telephone: 415-391-5400; address: 710 Sansome Street, San Francisco, CA 94111).

10   Counsel for MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., MGAE de

11   Mexico and Isaac Larian is Thomas J. Nolan of Skadden, Arps, Slate, Meagher &

12   Flom LLP (telephone: 213-687-5000; address: 300 S. Grand Ave., Los Angeles, CA

13   90071). Counsel for Gustavo Machado Gomez is Alexander Cote of Overland

14   Borenstein Scheper & Kim, LLP (telephone: 213-613-4655; address: 300 South

15   Grand Avenue, Suite 2750, Los Angeles, CA 90071). Each of the foregoing was

16   notified of this application. Mr. Nolan has stated that his clients will oppose this

17   application. Mattel does not have knowledge of the positions of Mr. Bryant and Mr.

18   Machado with respect to it.[3]

19

20   DATED: November 15, 2007    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

21

22                                By _Dylan Proctor_ O.S.

23                                B. Dylan Proctor
                                  Attorneys for Plaintiff
24                                Mattel, Inc.

25   _____
     [1]  Declaration of B. Dylan Proctor, filed concurrently herewith ("Proctor Dec."),
26   ¶¶ 2-3.
     [2]  Proctor Dec. ¶ 2.
27   [3]  Proctor Dec. ¶ 3.

28

07209/2296082.1

-2-

MATTEL'S *EX PARTE* APPLICATION

EXHIBIT *25* PAGE 415

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................. 3

ARGUMENT ............................................................................................ 7

I.     THE COURT SHOULD COMPEL THE DEPOSITIONS ...................... 7

    A.     These Are All Crucial Witnesses.................................................... 7

    B.     Mattel Will Be Severely Prejudiced If The Depositions Of These Witnesses Do Not Promptly Go Forward ................................. 8

CONCLUSION........................................................................................ 11

07209/2296082.1

-i-

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

While seeking a stay of this case because of MGA's substitution of counsel, MGA assured the Court that "MGA certainly did not entertain the substitution of counsel for any purpose of delay or to cause prejudice to anybody."[4]  Intended or not, that is becoming its effect.  Mattel respectfully requests the Court's assistance to avoid serious, and irreparable, prejudice from the stay obtained by MGA.

Veronica Marlow, Margaret Hatch-Leahy and Elise Cloonan are each crucial witnesses who are affiliated with Bryant and MGA and are represented by MGA's counsel.  Each of them has unique knowledge about matters that go to the heart of this case, including the origins of Bratz and its timing.  By defendants' account, Veronica Marlow introduced Bryant to MGA.  Mattel has now learned -- from discovery which MGA and Bryant had long withheld until compelled to produce it, despite its obvious relevance -- that defendants have paid Ms. Marlow millions of dollars as a supposed finder's fee for her role in the Bratz project.  Ms. Hatch-Leahy worked on the Bratz doll sculpt, including when Carter Bryant was still employed by Mattel, billing her services to MGA.  Ms. Cloonan, also a former Mattel employee, assisted Bryant in his Bratz pitch to MGA while both Bryant and Ms. Cloonan were employed by Mattel.

Regrettably, these defendant-affiliated witnesses are following defendants' now-familiar playbook to obstruct discovery, including by first delaying their depositions with promises to appear (while claiming unavailability for lengthy periods) and then canceling as the promised dates approach.  Indeed, defendants have followed this pattern with every one of their key witnesses and ultimately

---

[4]  Transcript of the October 15, 2007 Status Conference, at 12:3-5, attached as Exhibit 2 to the concurrently filed Proctor Declaration ("Proctor Dec.").

1  refused to produce them for deposition until ordered to do so, sometimes multiple

2  times.[5]

3       Mattel has been actively seeking to schedule the depositions of Ms. Marlow,

4  Ms. Hatch-Leahy and Ms. Cloonan since early June — for almost six months.  Mattel

5  offered to take the depositions at any time in July, but their counsel — who also has

6  been MGA's counsel for years and is himself a witness in this case — claimed they

7  were unavailable until September.  When the agreed time-range approached,  they

8  failed to appear.  After still more delays, and shortly before MGA applied for a stay,

9  these witnesses proposed, and Mattel confirmed, dates in late October for Ms. Leahy

10  and early November for Ms. Marlow and Ms. Cloonan.  Once MGA obtained a stay,

11  however, the witnesses then cancelled the scheduled depositions.   When Mattel

12  asked for replacement dates, Ms. Leahy and Ms. Cloonan refused to appear until

13  mid-December -- another month from now -- and, despite her central importance,

14  Ms. Marlow refused to appear until mid-January of next year -- another two months

15  from now and only two weeks prior to the discovery cut-off.  Equally troubling,

16  each  of  these  witnesses  has  refused  to  stipulate  or  bind  themselves  in  any

17  meaningful way to actually appear even on those belated dates, despite Mattel's

18  requests.

19       Mattel should not be prejudiced as a result of the actions of MGA and its

20  affiliated witnesses.  Mattel needs to depose these key witnesses with adequate time

21  left before the fact discovery cutoff so that it can take whatever follow-up discovery

22  _____

23  [5]  This has included named defendants Carter Bryant, Isaac Larian and MGA as
    well as Paula Garcia, MGA's Bratz project manager from the start.  Bryant and

24  Larian would not appear until they were *twice* ordered by the Court and, in the case
    of Larian, until sanctions were imposed.  And, confirming that defendants continue

25  to engage in this tactic of refusing to provide even the most obvious discovery

26  unless ordered to do so, another MGA executive who is a named defendant, Gustavo
    Machado, is currently refusing to sit for deposition despite his earlier promises, so

27  Mattel will have to file a motion to obtain his testimony as well.

28

-2-

MATTEL'S *EX PARTE* APPLICATION TO COMPEL DEPOSITIONS

EXHIBIT 25 PAGE 418

1    is needed.   Absent relief from the Court, Mattel will be denied its right to do so.

2    The Court should order these witnesses to appear for deposition no later than

3    December 7, 2007.   In the alternative, Mattel requests that the Court modify the

4    Scheduling Order to extend Mattel's time to take any follow-up discovery based on

5    the testimony of these witnesses to two months after the last of their depositions.

6    **<u>Statement of Facts</u>**

7        <u>The Witnesses Delay for Months.</u>   Mattel first requested a deposition date for

8    Ms. Cloonan on June 1, 2007, seeking to schedule her deposition during the first

9    half of July 2007.[6]   Mattel received no response and again requested dates for her

10   deposition on June 7, 2007.[7]   That same day, Mattel also requested July deposition

11   dates for Ms. Hatch-Leahy and Ms. Marlow.[8]   The parties met and conferred on

12   June 15 and 21, 2007, and the witnesses' counsel represented that Ms. Cloonan was

13   unavailable until early September because of pregnancy and that he would provide

14   specific dates for her and the others.[9]   In a June 28, 2007 letter, counsel again

15   promised to ask his clients regarding possible deposition dates.[10]   Despite follow-up

16   by Mattel seeking to schedule the depositions, including through several messages

17   left with the witnesses' counsel,[11] counsel did not respond.   Mattel then sent a

18   follow-up letter on September 4, 2007, again asking for dates and offering to depose

19   the witnesses on <u>any</u> day in September.[12]

20

21

22

23       [6]   Proctor Dec. Exh. 3.

24       [7]   Proctor Dec. Exh. 4.

25       [8]   Proctor Dec. Exh. 4.
         [9]   Proctor Dec. Exh. 5.

26       [10]   Proctor Dec. Exh. 6.

27       [11]   Proctor Dec. Exh. 7.
         [12]   Proctor Dec. Exh. 7.

28

The witnesses' counsel responded on September 7, again representing that he would contact his clients regarding possible deposition dates.[13]   Mattel also offered to schedule the depositions for any date prior to October 26, 2007.[14]   Counsel agreed to provide Mattel with dates for all three witnesses on September 17,[15] but then failed to do so.[16]   Mattel followed up on September 18 and 19[17] and reiterated that it would be willing to depose each of these witnesses on any date prior to October 26.[18]   The witnesses' counsel then stated on September 20 that he was still trying to get available dates.[19]

Finally, on September 21, the witnesses' counsel offered an October 24, 2007 deposition date for Ms. Marlow and a November 14, 2007 deposition date for Ms. Cloonan — more than two months later than the original early-September deposition date promised.[20]   Counsel also represented that he "was continuing to work with Ms. Leahy with respect to an available deposition date."[21]   Mattel responded on September 21, 2007, accepting Ms. Marlow's deposition date but rejecting Ms. Cloonan's proposed November 14 date as too late.[22]   Mattel also informed counsel that his continued failure to provide Mattel with any dates for Ms. Leahy was unacceptable, and that if he failed to provide deposition dates for

---

[13] Proctor Dec. Exh. 8.
[14] Proctor Dec. Exh. 9.
[15] Proctor Dec. Exh. 9.
[16] Proctor Dec. Exh. 10.
[17] Proctor Dec. Exh. 10.
[18] Proctor Dec. Exh. 10.
[19] Proctor Dec. Exh. 11.
[20] Proctor Dec. Exh. 12.
[21] Proctor Dec. Exh. 12.
[22] Proctor Dec. Exh. 13.

1   Leahy and Cloonan within the previously discussed time-range (*i.e.*, prior to
2   October 26, 2007), Mattel would have no choice but to move to compel.[23]

3        The witnesses' counsel responded on September 28, 2007 — less than two
4   weeks before MGA sought a stay from the Court — and offered October 30 and
5   November 14 deposition dates for Ms. Leahy and Ms. Cloonan, respectively.[24]   He
6   also asked to move Ms. Marlow's deposition date to November 6, 2007.[25]   Though
7   all of the offered dates were months later than those initially sought and promised,
8   Mattel offered to accept these dates on the condition that deponents enter into a
9   confirming stipulation to prevent any last-minute cancellations.[26]   Counsel refused
10  to enter into this stipulation.[27]

11       <u>Counsel Cancels the Depositions Based on the Stay Orders.</u>   Shortly
12  thereafter, MGA revealed to the Court and Mattel that it was substituting counsel
13  and, on October 15, 2007, the Court approved the substitution and entered the first
14  stay until October 31, 2007 at MGA's request.[28]   On October 31, 2007, the Court
15  extended the stay until November 14, 2007.[29]   During the October 15 conference,
16  MGA's counsel assured the Court that "MGA certainly did not entertain the
17  substitution of counsel for any purpose of delay or to cause prejudice to anybody."[30]

18       The day after the October 15 Stay Order, the witnesses' counsel informed
19  Mattel that the deposition of Ms. Leahy, scheduled for October 30, 2007, would not

20

21   [23] Proctor Dec. Exh. 13.
22   [24] Proctor Dec. Exh. 14.
23   [25] <u>Id.</u>
     [26] Proctor Dec. Exh. 15.
24   [27] Proctor Dec. Exh. 16.
25   [28] Proctor Dec. Exh. 17.  Specifically, the Court stayed all proceedings and
     discovery during that time, but allowed the parties to "continue to produce paper
26   discovery" and "to serve discovery requests." <u>Id.</u>
27   [29] Proctor Dec. Exh. 18.
     [30] Proctor Dec. Exh. 2.
28

-5-
MATTEL'S *EX PARTE* APPLICATION TO COMPEL DEPOSITIONS

EXHIBIT *25* PAGE 421

1  go forward based on that Order.[31]  That same day, Mattel asked counsel to provide
2  new deposition dates for Ms. Leahy.[32]  In response, counsel promised to "coordinate
3  with [] Ms. Leahy in order to schedule new deposition dates, and inform [Mattel]
4  thereafter."[33]  After receiving no further response, Mattel followed up and again
5  asked for deposition dates for Ms. Leahy.[34]  Counsel then informed Mattel that, in
6  light of the October 15 Stay Order, "it makes sense to wait to set [Leahy's]
7  deposition date[] until after we know whether the Court continues the stay, and if so,
8  for how long."[35]  The day after the October 31 Stay Order, the witnesses' counsel
9  wrote to say that the depositions of Veronica Marlow and Elise Cloonan, scheduled
10  for November, also would not go forward.[36]

11      Mattel informed counsel that because the discovery cut-off was less than three
12  months away, the rescheduling of these witnesses' depositions needed to be done
13  promptly.[37]  Counsel responded five days later that he would check on his clients'
14  availability.[38]  On November 9, 2007, counsel represented that he would need
15  further time to determine their availability.[39]  Finally, on November 12, 2007,
16  counsel offered December 12, 2007, December 14, 2007 and January 9, 2008 as
17  deposition dates for Ms. Leahy, Ms. Cloonan and Ms. Marlow, respectively.[40]

18      The next day, Mattel responded that these dates — the earliest of which is
19  more than a month away — are unacceptably late and would prejudice Mattel's
20

21  [31]  Proctor Dec. Exh. 19.
22  [32]  Proctor Dec. Exh. 20.
23  [33]  Proctor Dec. Exh. 21.
    [34]  Proctor Dec. Exh. 22.
24  [35]  Proctor Dec. Exh. 23.
25  [36]  Proctor Dec. Exh. 24.
    [37]  Proctor Dec. Exh. 25.
26  [38]  Proctor Dec. Exh. 26.
27  [39]  Proctor Dec. Exh. 27.
    [40]  Proctor Dec. Exh. 28.
28

1  ability to take follow-up discovery, particularly given counsel's refusal to stipulate

2  even to these late dates.[41]  The parties discussed the matter the day after that, on

3  November 14, 2007.  The witnesses' counsel confirmed that he would not offer any

4  earlier deposition dates, although he offered no reason why the witnesses could not

5  appear sooner.[42]  He also reiterated that he would not stipulate that the witnesses

6  would actually appear on even the offered dates.[43]

7  **Argument**

8  **I.   THE COURT SHOULD COMPEL THE DEPOSITIONS**

9  **A.   These Are All Crucial Witnesses**

10  It is beyond dispute that Ms. Cloonan, Ms. Leahy and Ms. Marlow possess

11  discoverable information.  Indeed, each is a key witness and has been identified by

12  MGA as "possess[ing] information relevant to the conception, creation, design and

13  development of 'Bratz.'"[44]

14  More specifically, Ms. Marlow was originally employed at Mattel, where she

15  got to know Bryant, and then began to work for MGA around April 2000.[45]  Paula

16  Garcia, MGA's Bratz project manager, has testified that it was Veronica Marlow

17  who first brought Bryant to MGA's attention and that she was present at Bryant's

18  pitch meeting for Bratz with MGA,[46] which occurred when he was employed by

19  Mattel even by defendants' account.  Testimony and documents have revealed that

---

[41]  Proctor Dec. Exh. 29.
[42]  Proctor Dec. Exhs. 1, 30.
[43]  Id.
[44]  MGA's Rule 26(a) Disclosures ¶¶ 4-6, Proctor Dec. Exh. 31.
[45]  Deposition Transcript of Paula Garcia, dated May 24, 2007 ("Garcia Depo."), at 237:8-13, Proctor Dec. Exh. 32
[46]  Garcia Depo, at 186:19-187:16; 242:19-243:17; 264:21-266:20; 270:22-271:1, Proctor Dec. Exh. 32.

EXHIBIT *25* PAGE 423

1  Bryant and MGA have paid Ms. Marlow millions of dollars as a supposed "finder's

2  fee."[47]

3      Ms. Leahy was a Mattel employee until September 2000.[48]  Bryant solicited

4  Ms. Hatch-Leahy to sculpt the Bratz dolls and introduced her to MGA while he was

5  still employed by Mattel.[49]  Leahy created the first Bratz sculpt and, according to

6  Ms. Garcia, was the sole person to work on the Bratz sculptures in the key time-

7  period of 2000.[50]  She also worked on Bratz samples exhibited at the Hong Kong

8  Toy Fair in January 2001 and the New York Toy Fair in February 2001.[51]

9      Elise Cloonan was Bryant's roommate in 1999-2000 and worked with him at

10  Mattel.[52]  She also worked on the Mattel "Toon Teens" project in 1999 that Bryant

11  borrowed from to create Bratz which, among other evidence, refutes his claim to

12  have created Bratz earlier, in 1998, during a brief hiatus from Mattel.[53]  While both

13  she and Bryant were Mattel employees, Ms. Cloonan also prepared portions of the

14  written Bratz pitch materials that Bryant presented to MGA.[54]

15  **B.**    **Mattel Will Be Severely Prejudiced If The Depositions Of These**

16      **Witnesses Do Not Promptly Go Forward**

17      Mattel is entitled to obtain these crucial witnesses' testimony, which Mattel

18  anticipates will have material bearing on the Phase One trial, with sufficient time to

19  propound and obtain follow-up discovery.  The Phase One discovery cut-off is now

---

[47]    Proctor Dec. Exh. 33, Deposition Tr. of Richard Irmen, dated September 28, 2007 ("Irmen Depo."), at 270:20-271:7; Proctor Dec. Exh. 36.

[48]    Proctor Dec. Exh. 44.

[49]    Proctor Dex. Exh. 34, Deposition Tr. of Carter Bryant, Vol. I, dated ("Bryant Depo."), dated November 4, 2004 at 70:24-71:12.

[50]    Garcia Depo., at 255:1-17, 629:5-18, Proctor Dec. Exh. 32.

[51]    Garcia Depo., at 481:20-482:1; 489:5-11, Proctor Dec. Exh. 32

[52]    Proctor Dec. Exh. 35, Deposition Tr. of Anna Rhee, dated February 3, 2005 ("Rhee Depo."), at 50:10-51:2, 78:24-79:12, 81:16-19; Irmen Depo. at 9:17-12:8.

[53]    Proctor Dec. Exh. 34 , Bryant Depo. at 254:17-257:15.

[54]    Proctor Dec. Exh. 34, Bryant Depo Tr., Vol. II, 289:22-292:25.

MATTEL'S *EX PARTE* APPLICATION TO COMPEL DEPOSITIONS

07209/2296082.1

EXHIBIT 25 PAGE 424

1   less than two-and-a-half months away.  Nevertheless, the witnesses' counsel still

2   refuses to provide Mattel with reasonable deposition dates for them -- a tactic that

3   will prejudice Mattel as a result of the stay obtained by MGA.  Mattel simply cannot

4   afford to wait until the dates offered by counsel for these depositions, particularly

5   the January 2008 date offered for Ms. Marlow.  Their refusals to provide key

6   testimony in this case threaten not only to prejudice Mattel's rights, but to

7   undermine the truth-finding function of this Court.

8       Moreover, neither the Court nor Mattel has any assurance that the witnesses

9   will even appear on the belated dates that have been offered.  To the contrary,

10  despite Mattel's requests, the witnesses' counsel has refused to stipulate that they

11  will appear.  This has the earmarks of MGA's and Bryant's all-too-familiar pattern of

12  obstructionism that has included promises to appear for deposition, only to be

13  followed by delays and last-minute cancellations and then, ultimately, by flat

14  refusals to testify until ordered.  For example:

15      •   After Bryant's counsel convinced Mattel not to file a motion to compel

16          based on their "word as attorneys" that Bryant would appear on a

17          specific date, Bryant's counsel reneged two business days before the

18          scheduled deposition and Bryant refused to appear.[55]  Then, it took two

19          Court Orders to force Bryant to attend deposition.[56]

20      •   Likewise, it took two Court Orders compelling Larian to sit for

21          deposition (the second being necessary because Larian refused to obey

---

[55] See Declaration of Michael T. Zeller in Support of Mattel's Motion to Overrule Instructions Not to Answer During the Deposition of Carter Bryant, dated February 1, 2007, ¶¶ 5-8, Exhs. 5, 6.

[56] See id., ¶¶ 9-13, Exhs. 7-11.

1   the first Order), as well as the imposition of sanctions, before Larian

2   finally appeared.[57]

3   •   After numerous promises to produce Paula Garcia for deposition, MGA

4       unilaterally cancelled her deposition as its scheduled March 2007 date

5       approached.[58]  MGA subsequently offered a new date for her

6       deposition, but cancelled her deposition again just a few days prior to

7       that date and then refused to produce her at all.[59]  It then took two

8       Court Orders to obtain her complete testimony with respect to the

9       Bryant case.[60]  MGA also followed the same pattern of last-minute

10      cancellations with its other designated Rule 30(b)(6) witnesses and

11      ultimately had to be ordered to provide them as well.

12  Nor can defendants blame their prior counsel for all of this, given that they continue

13  to play out this same tactic even now.  Gustavo Machado is an MGA executive and

14  a named defendant in this case.  Despite his initial promises to appear, Mr. Machado

15  now refuses to sit for deposition.[61]  Thus, Mattel will have to file yet another motion

16  to obtain discovery that it is obviously entitled to.

17

18  _____

19  [57]   See Declaration of Michael T. Zeller in Support of Mattel's Reply in Support

20  of *Ex Parte* Application to Reschedule the Hearing Date on Defendants' Motion to

21  Dismiss Mattel's Amended Answer and Counterclaims and Defendants' Objections
    to Discovery Master's March 7, 2007 Order, dated May 9, 2007, ¶¶ 4-8, Exhs. 1-3.

22  [58]   See Declaration of Michael T. Zeller in Support of Mattel's Motion to
    Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6) and

23  for Sanctions, dated April 13, 2007, Exh. 16.

24  [59]   Id. ¶ 36.
    [60]   See Order Granting Mattel's Motion to Compel MGA to Produce Witnesses

25  for Deposition Pursuant to Rule 30(b)(6), dated May 16, 2007, Order Granting
    Mattel's Motion for an Extension of Time to Depose Paula Garcia in Her Individual

26  Capacity and as a 30(b)(6) Designee, dated August 14, 2007, Proctor Dec. Exhs. 42-

27  43.
    [61]   Proctor Dec. Exhs. 37-38.

28

1    Given these delay tactics, an order compelling the witnesses' depositions is

2  required to avoid yet more delay.  Mattel is already being prejudiced by the stay

3  sought and obtained by MGA.  To avoid further prejudice, the Court should order

4  these witnesses to appear for deposition no later than December 7, 2007.  In the

5  alternative, the Court should modify the Scheduling Order so as to extend Mattel's

6  time to take discovery based on the testimony of these witnesses to two months after

7  their depositions are completed.

8                                     **Conclusion**

9    Mattel respectfully requests that the Court grant its *ex parte* application.

10

11  DATED:  November 15, 2007       QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
12

13                                  By  Dylan Proctor  O.S.

14                                      B. Dylan Proctor
                                        Attorneys for Plaintiff
15                                      Mattel, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2296082.1

-11-

EXHIBIT *25* PAGE 427

**Exhibit 26**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                     Date: November 20, 2007
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
===============================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                              Theresa Lanza
            Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER             ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                            John B. Quinn
                                         Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:               ATTORNEY PRESENT FOR CARLOS
                                         GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan                          David C. Scheper
Carl A. Roth

COUNSEL FOR WITNESSES

Larry W. McFarland

PROCEEDINGS:   **ORDER RE EX PARTE APPLICATION; ORDER RE DESIGNATION OF
               LEAD COUNSEL**

       The Court heard argument on Mattel's ex parte application regarding the scheduling of three
witness depositions.  The Court accepts the representations of Mr. McFarland that these
depositions will go forward on December 12 (Margaret Hatch-Leahy), 14 (Ana Elise Cloonan), and
28 (Veronica Marlow), 2007.  Accordingly, the Court finds that the ex parte application is **MOOT**.

       The Court also addressed designation of lead trial counsel.  Lead trial counsel, as

MINUTES FORM 90                                  Initials of Deputy Clerk: jh (TIME:00/45)
CIVIL -- GEN                      1

EXHIBIT *26* PAGE 428

designated below, shall participate in the preparation of the final pretrial order(s) and appear for the pretrial conference(s).  He shall also act as lead counsel during the trial(s) in these consolidated cases.  Whether and to what extent lead trial counsel shall be involved in the mediation of this matter is left to the discretion of the settlement officer.  The Court expects counsel to follow the settlement officer's directives concerning settlement procedures.

The Clerk shall identify lead trial counsel on the docket report as follows:

| | |
|---|---|
| For Mattel: | John B. Quinn |
| For the MGA Entities and Isaac Larian: | Thomas J. Nolan |
| For Carter Bryant: | John W. Keker |
| For Carlos Gustavo Machado Gomez: | David C. Scheper |

IT IS SO ORDERED.

c:     Ambassador Prosper

EXHIBIT 26 PAGE 429

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)    **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order Issued November 20, 2007

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| ✓ | Warden, San Quentin State Prison, CA |

✓ **ADD NEW NOTICE PARTY·**
**(if sending by fax, mailing address must also be provided)**

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*:  P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

*JUDGE / MAGISTRATE JUDGE (list below):*

**Initials of Deputy Clerk** jh

EXHIBIT 26 PAGE 430

**Exhibit 27**

RECEIVED

JAN 0 7 2005

1  DIANA M. TORRES (S.B. #162284)
   PAULA E. AMBROSINI (S.B. # 193126)
2  ALICIA C. MEYER (S.B. #230189)
   O'MELVENY & MYERS, LLP
3  400 South Hope Street
   Los Angeles, California 90071-2899
4  Telephone: (213) 430-6000
   Facsimile: (213) 430-6407
5
   Attorneys for Defendant-in-Intervention,
6  MGA Entertainment, Inc.

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware              Case No.  CV 04-9059 NM (RNBx)
12  Corporation,
                                          **MGA'S RULE 26(a) DISCLOSURES**
13               Plaintiff,

14       v.

15  CARTER BRYANT, an individual,
    and MGA ENTERTAINMENT,
16  INC., a California Corporation

17               Defendant and
                 Defendant-in-
18               Intervention.

19

20  AND RELATED COUNTER-
    CLAIMS
21

22

23

24

25

26

27

28

                              **MGA'S INITIAL DISCLOSURES**
                     **PURSUANT TO RULE 26 (CV 04-9059 NM)**

EXHIBIT 27 PAGE 431

1    Defendant-in-Intervention, MGA Entertainment, Inc. ("MGA"), hereby

2    submits the following initial disclosures to plaintiff, Mattel, Inc. ("Mattel"),

3    pursuant to Rule 26 (a) of the Federal Rules of Civil Procedure.  MGA reserves the

4    right to identify additional documents and witnesses hereafter, and otherwise to

5    provide supplemental disclosures as appropriate or necessary.

6

7    **Witnesses**

8    MGA is presently uncertain of the true nature and scope of Mattel's claims

9    and, thus, is unable to fully identify the witnesses with knowledge relevant to

10   MGA's defenses in this case.  Subject to the foregoing, MGA identifies the

11   following potential witnesses:

12       1.    Carter Bryant.  Carter Bryant may be contacted through his

13   counsel, Douglas Wickham and Keith Jacoby of Littler Mendelson, P.C., 2049

14   Century Park East, 5th Floor, Los Angeles, California  90067, telephone 310-553-

15   0308.  Carter Bryant possesses information relevant to the conception, creation,

16   design and development of "BRATZ;" the nature and scope of his employment at

17   Mattel; the nature and scope of his work for and with MGA; and information

18   relevant to his own defenses in this matter.

19       2.    Janet Bryant.  Ms. Bryant may be contacted through Carter

20   Bryant's counsel, Douglas Wickham and Keith Jacoby of Littler Mendelson, P.C.,

21   2049 Century Park East, 5th Floor, Los Angeles, California  90067, telephone 310-

22   553-0308.  Ms. Bryant possesses information concerning, among other things, Mr.

23   Bryant's general skills and talents as a designer and his conception, creation, design

24   and development of various matters when he was not employed by Mattel.

25       3.    Tom Bryant.  Tom Bryant may be contacted through Carter

26   Bryant's counsel, Douglas Wickham and Keith Jacoby of Littler Mendelson, P.C.,

27   2049 Century Park East, 5th Floor, Los Angeles, California  90067, telephone 310-

28   553-0308.  Tom Bryant possesses information concerning, among other things, Mr.

-1-

**MGA'S INITIAL DISCLOSURES**
**PURSUANT TO RULE 26 (CV 04-9059 NM)**

EXHIBIT _27_ PAGE 432

1   Bryant's general skills and talents as a designer and his conception, creation, design

2   and development of various matters when he was not employed by Mattel.

3          4.      Elise Cloonan.  Ms. Cloonan may be contacted through her

4   counsel, Michael B. Margolis of Margolis & Morin, LLP, 444 South Flower Street,

5   Sixth Floor, Los Angeles, California  90071, telephone 213-683-0300.  Ms.

6   Cloonan possesses information relevant to the conception, creation, design and

7   development of "BRATZ."

8          5.      Margaret Leahy.  Ms. Leahy may be contacted through her

9   counsel, Stephen C. Contopulos, Sidley Austin Brown & Wood LLP, 555 West

10  Fifth Street, Los Angeles, California  90013, telephone 213-896-6000.  Ms. Leahy

11  possesses information relevant to the conception, creation, design and development

12  of "BRATZ."

13         6.      Veronica Marlow.  Ms. Marlow may be contacted through her

14  counsel, Stephen C. Contopulos, Sidley Austin Brown & Wood LLP, 555 West

15  Fifth Street, Los Angeles, California  90013, telephone 213-896-6000.  Ms. Marlow

16  possesses information relevant to the conception, creation, design and development

17  of "BRATZ."

18         7.      Victoria O'Connor.  MGA believes that Mattel has Ms.

19  O'Connor's contact information.  Ms. O'Connor possesses information relevant to

20  the conception, creation, design and development of "BRATZ."

21         8.      Ramona Prince.  Ms. Prince may be contacted through her

22  counsel, Daniel Warren, Sutherland, Asbill & Brennan, LLP, 999 Peachtree Street,

23  N.E., Atlanta, Georgia  30309, telephone 404-853-8028.  Ms. Prince possesses

24  information relevant to Mr. Bryant's conception of "BRATZ."

25         9.      Anna Rhee.  Ms. Rhee may be contacted through her counsel,

26  Laurence Berman, Berman, Mausner & Resser, A Law Corporation, 11601

27  Wilshire Boulevard, Suite 600, Los Angeles, California  90025, telephone 213-473-

28  3333.  Ms. Rhee possesses information relevant to the conception, creation, design

-2-

EXHIBIT 27 PAGE 433

1    and development of "BRATZ."

2           10.    Paula Garcia.  Ms. Garcia may be contacted through MGA's

3    counsel of record.  Ms. Garcia possesses information relevant to the conception,

4    creation, design and development of "BRATZ."

5           11.    Mercedeh Ward.  Ms. Ward may be contacted through her

6    counsel, Derrick Coleman, Coleman Law Group, 501 Colorado Avenue, Suite 204,

7    Santa Monica, California  90401, telephone 310-576-7312.  Ms. Ward possesses

8    information relevant to the conception, creation, design and development of

9    "BRATZ."

10          12.    Various present or former employees and contractors of MGA

11   are potential witnesses.  Such individuals may be contacted through MGA's

12   counsel of record.  MGA is currently unable to identify the specific witnesses and

13   information such witnesses may possess.

14          13.    Various present or former employees and contractors of Mattel

15   are potential witnesses.  The identities, whereabouts and relevant knowledge of

16   such potential witnesses are best known by Mattel.  These witnesses are currently

17   believed to include, without limitation, Cassidy Park, Lilly Martinez, Matthew

18   Bousquette and Ivy Ross.

19

20   **Documents**

21          MGA is presently uncertain of the true nature and scope of Mattel's

22   claims and, thus, is unable to fully identify the documents that may support all of its

23   defenses in this action.  Subject to the foregoing, and subject to, as applicable, the

24   designations of confidentiality which have or may be made pursuant to the terms

25   and provisions of the Stipulated Protective Order governing the disclosure of

26   confidential material in this case, MGA identifies the following documents:

27          1.     The Employee Confidential Information and Inventions

28   Agreement attached to Mattel's complaint.

-3-

MGA'S INITIAL DISCLOSURES
PURSUANT TO RULE 26 (CV 04-9059 NM)

EXHIBIT *27* PAGE 434

2.      The Conflict of Interest Questionnaire attached to Mattel's complaint.

3.      Some or all of the documents previously produced by MGA to Mattel pursuant to subpoena bearing the Bates serial numbers MGA 000001-676.

4.      Some or all of the documents previously produced by Carter Bryant to Mattel bearing the Bates serial numbers BRYANT 00001-01588.

5.      Carter Bryant's personnel, payroll and other files and records, including telephone records of Mattel, which are in Mattel's possession and the nature and relevance of which is best known by Mattel.

6.      Documents relating to the negotiation of MGA's contract with Carter Bryant dated as of September 18, 2000.

7.      Documents relating to the design and development of the first generation of "Bratz."

8.      Documents relating to or consisting of various drawings, sketches and finished product that Carter Bryant conceived of, created, designed or developed, or in whose conception, creation, design and development he assisted, before and after he was employed by Mattel.

**Damages**

The required disclosure regarding damages is presently inapplicable.

-4-

MGA'S INITIAL DISCLOSURES
PURSUANT TO RULE 26 (CV 04-9059 NM)

EXHIBIT 27 PAGE 435

**Insurance**

       The required disclosure regarding insurance is presently inapplicable.


Dated:  January 6, 2005             DIANA M. TORRES
                                 PAULA E. AMBROSINI
                                 ALICIA C. MEYER
                                 O'MELVENY & MYERS, LLP


By: _____
           Paula E. Ambrosini
       Attorneys for Defendant-in-
       Intervention, MGA Entertainment,
       Inc.

-5-

**MGA'S INITIAL DISCLOSURES
PURSUANT TO RULE 26 (CV 04-9059 NM)**

EXHIBIT 27 PAGE 436

## PROOF OF SERVICE

I, Suzanne I. Jimenez, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071.  On January 6, 2005, I served the within documents:

### MGA'S RULE 26(a) DISCLOSURES

[X]  by transmitting via facsimile machine the document(s) listed above to the fax number(s) set forth below on this date. The outgoing facsimile machine telephone number in this office is (213) 430-6407.  The facsimile machines used in this office create a transmission report for each outgoing facsimile transmitted.  A copy of the transmission report(s) for the service of this document, properly issued by the facsimile machine(s) that transmitted this document and showing that such transmission was (transmissions were) completed without error, is attached hereto.

[X]  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles addressed as set forth below.  I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**(By Facsimile and U.S. Mail)**
Douglas A. Wickham
Keith Jacoby
Littler Mendelson
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA  90067-3107
Tel:  (310) 553-0308
Fax: (310) 553-5583

**(By Facsimile and U.S. Mail)**
Michael T. Zeller
Quinn Emanuel Urquhart
  Oliver & Hedges, LLP
865 South Figueroa St., 10th Floor
Los Angeles, CA  90017-2543
Tel:  (213) 443-3000
Fax: (213) 443-3100

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 6, 2005, at Los Angeles, California.

*Suzanne I. Jimenez*
Suzanne I. Jimenez

LA2:746615.1

-6-

PROOF OF SERVICE

EXHIBIT 27 PAGE 437

```
*************** -COMM. JOURNAL- *************** DATE JAN-06-2005 ***** TIME 14:22 *******

        MODE = MEMORY TRANSMISSION              START=JAN-06 14:20    END=JAN-06 14:22

           FILE NO.=532

        STN NO.   COMM.   ABBR NO.    STATION NAME/TEL NO.    PAGES   DURATION

         001      OK      ⌷           94433100                008/008 00:02:13
```

```
*************************************** -      - ***** -         - *********
```

# O'MELVENY & MYERS LLP

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407

## FAX TRANSMITTAL

**DATE:**
January 6, 2005

**TOTAL NUMBER OF PAGES:**
8

**TO:**
Michael T. Zeller, Esq.
*Quinn Emanuel Urquhart Oliver
& Hedges, LLP*

**FAX NUMBER:**
(213) 443-3100

**TELEPHONE NUMBER:**
(213) 443-3000

Douglas A. Wickham, Esq.
Keith Jacoby, Esq.
*Littler Mendelson, A Professional
Corporation*

(310) 552-3229

(310) 552-2766

**FROM:**
Paula E. Ambrosini

**RETURN FAX NUMBER:**
(213) 430-6407

**TELEPHONE NUMBER:**
(213) 430-7466

## MESSAGE

**IF YOU DID NOT RECEIVE ALL PAGES, PLEASE CALL OUR FAX DEPARTMENT AT (213) 430-6407**

| | | | |
|---|---|---|---|
| FILE NO.: | 527,436-004 | RETURN ORIGINAL TO: | Suzanne I. Jimenez |
| USER NO.: | 09901 | EXTENSION: | 7241 |
| RESPONSIBLE ATTY NAME: | Paula E. Ambrosini | LOCATION: | 11x04 |
| SPECIAL INSTRUCTIONS: | | | |

This document is intended for the exclusive use of the addressee. It may contain privileged, confidential, or non-disclosable information. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy, or distribute it. If you have received this document by mistake, please call us promptly and securely dispose of it. Thank you.

**EXHIBIT 27 PAGE 438**

*************** -COMM. J   AL- ******************* DATE JAN-06-2005   *** TIME 14:32 *******

MODE = MEMORY TRANSMISSION            START=JAN-06 14:30      END=JAN-06 14:32

FILE NO.=533

| STN NO. | COMM. | ABBR NO. | STATION NAME/TEL NO. | PAGES | DURATION |
|---------|-------|----------|----------------------|-------|----------|
| 001 | OK | 8 | 913105523229 | 008/008 | 00:02:19 |

***************************** -        - ***** -        - *********

## O'MELVENY & MYERS LLP

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407

### FAX TRANSMITTAL

**DATE:**
January 6, 2005

**TOTAL NUMBER OF PAGES:**
8

| TO: | FAX NUMBER: | TELEPHONE NUMBER: |
|-----|-------------|-------------------|
| Michael T. Zeller, Esq. *Quinn Emanuel Urquhart Oliver & Hedges, LLP* | (213) 443-3100 | (213) 443-3000 |
| Douglas A. Wickham, Esq. Keith Jacoby, Esq. *Littler Mendelson, A Professional Corporation* | (310) 552-3229 | (310) 552-2766 |

| FROM: | RETURN FAX NUMBER: | TELEPHONE NUMBER: |
|-------|--------------------|--------------------|
| Paula E. Ambrosini | (213) 430-6407 | (213) 430-7466 |

### MESSAGE

IF YOU DID NOT RECEIVE ALL PAGES, PLEASE CALL OUR FAX DEPARTMENT AT (213) 430-6407

| FILE NO.: | 527,436-004 | RETURN ORIGINAL TO: | Suzanne I. Jimenez |
|-----------|-------------|---------------------|--------------------|
| USER NO.: | 09901 | EXTENSION: | 7241 |
| RESPONSIBLE ATTY NAME: | Paula E. Ambrosini | LOCATION: | 11s04 |
| SPECIAL INSTRUCTIONS: | | | |

This document is intended for the exclusive use of the addressee. It may contain privileged, confidential, or non-disclosable information. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy, or distribute it. If you have received this document by mistake, please call us promptly and securely dispose of it. Thank you.

EXHIBIT 27 PAGE 439

**Exhibit 28**

**quinnemanuel** triallawyers | losangeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S INTERNET ADDRESS
juanpabloalban@quinnemanuel.com

September 28, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>
**818-758-3949**

Alan N. Goldberg
Stern & Goldberg
6345 Balboa Boulevard, Suite 200
Encino, California 91316

Re:      <u>Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)</u>

Dear Mr. Goldberg:

We are in receipt of a letter and objections that Stern & Goldberg served in response to Mattel, Inc.'s subpoena to Stern & Goldberg in the above-referenced matter.

You object to every request in the subpoena and apparently flatly refuse to produce any documents.  Mattel does not believe that any of the objections have merit.  We request a meet and confer on your objections pursuant to <u>Fed. R. Civ. P.</u> 37 and Section 5 of the Order Appointing a Discovery Master governing discovery disputes in this litigation.  Under the Discovery Master Order, Stern & Goldberg has five days to meet and confer regarding the objections.

**Boilerplate Objections**

The vast majority of Stern & Goldberg's objections are boilerplate.  For the meet and confer, please be prepared to discuss the basis for each of the objections and also to discuss, for each document request, which objections you are relying on, if any, to withhold documents.  For example, it is difficult to fathom how any of Mattel's requests are burdensome and oppressive given that you presumably have case files that are readily searchable.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

EXHIBIT 28 PAGE 440

Alan N. Goldberg
September 28, 2007

There is no basis for any of these objections, and we expect them to be withdrawn or Mattel contemplates moving to overrule them.

## Relevance

Subpoenas under Rule 45 permit discovery from nonparties equivalent to discovery from parties under Rule 34. See Adv. Comm. Note on 1991 Amendment to Fed R. Civ. P. 45. Each of Mattel's document requests is highly relevant to Mattel v. Bryant. The relevance of the arbitration between Isaac and Farhad Larian, which Mr. Zarabi arbitrated, and its related litigation cannot be seriously disputed. As you may know, a central issue in this litigation is the timing of the origins, creation and development of Bratz. The dates of creation and development of Bratz, as well as MGA's and Isaac Larian's efforts to conceal the creation and early development of Bratz, are highly salient to those issues. Of course, those facts were also central to the disputes between Farhad Larian, Isaac Larian and Mr. Zarabi. Furthermore, the facts, evidence and documents underlying the arbitration and litigation are relevant to other issues in this case, such as the net value of Bratz and MGA, payments to Farhad Larian and the credibility of Isaac Larian's testimony in this case. The Discovery Master has in fact already ruled that documents related to the arbitration and the ensuing litigation are relevant and properly discoverable.

MGA itself put these matters directly at issue as well. The document requests in Mattel's subpoenas are also relevant because MGA argues that Quinn Emanuel should be disqualified from representing Mattel in this action because Quinn Emanuel communicated with Farhad Larian. The documents Mattel requests are relevant for Mattel to defend MGA's meritless threats of disqualification.

As this also makes clear, your unsupported suggestion that Mattel's subpoena is merely for harassment is meritless given the direct relevance of the dispute between Farhad and Isaac Larian to this litigation. There is nothing unusual, much less "harassing," about seeking relevant discovery from third parties. In this regard, your groundlessly accuse Mike Zeller of being discourteous for not immediately responding to you, but as you surely learned from Mr. Zeller's assistant, Mr. Zeller has been traveling on business and in depositions out of town. Tellingly, you failed to make any effort to contact any of the other attorneys who work on this matter.

There is no basis for the relevance objections, and we expect them to be withdrawn or Mattel contemplates moving to overrule them.

## Claims of Privilege

2

EXHIBIT 28 PAGE 441

Alan N. Goldberg
September 28, 2007

The claims of attorney-client and work product privileges in the objections have no basis or at least are premature because Mattel is not asking for the production of any documents that are legitimately privileged.  To the contrary, the instructions in the subpoenas set forth a procedure for asserting privilege that comports with the requirement of Rule 45(d)(2): "When information subject to a subpoena is withheld on a claim that it is privileged . . ., the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Id.

The further claim of "arbitral privilege of absolute immunity" is groundless.  If Mattel understands this claim correctly, you are refusing to produce relevant documents because Mr. Zarabi, as an arbitrator for the dispute between the Larian brothers, is immune from civil liability for his decision or from producing information that reflects his deliberations in making the decision.  That privilege, however, applies to actions *that address the results of an arbitration -- i.e.*, that are going to the merits of the controversy adjudicated by the arbitration. See, e.g., National Hockey League Players' Ass'n v. Bettman, 1994 WL 38130, at *7 (S.D.N.Y. 1994), Arco Alaska, Inc. v. Sup. Ct., 168 Cal. App. 3d 139, 149 (1985).  Thus, reliance on that doctrine is wholly misplaced here.

To the extent that you are purporting to rely on some contractual basis of confidentiality, a clause in a private arbitration agreement in no way supersedes your and Mr. Zarabi's discovery obligations under a subpoena.[1]  Furthermore, there is a Protective Order in this action that provides for confidentiality.

Please let me know of your availability to conduct the conference within the time required.  In the event that the parties are not able to amicably resolve these matters, Mattel anticipates filing a motion to compel production.

I look forward to hearing from you.

Very truly yours,

Juan Pablo Albán
07209/2227479.1

_____

[1]  When the Discovery Master ruled that documents related to the arbitration between the Larian brothers were relevant and discoverable, he noted that MGA had failed to provide any confidentiality agreement that would prevent Mattel from seeking such discovery.

3

EXHIBIT 28  PAGE 442

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**     September 28, 2007                      **NUMBER OF PAGES, INCLUDING COVER** 4

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Alan N. Goldberg Stern & Goldberg | | 818-758-3949 |

**FROM:**     Juan Pablo Albán, Esq.

**RE:**     *Mattel v. Bryant*

**MESSAGE:**

**PLEASE SEE ATTACHED.**

FAXED
SEP 2 7 2007

07209/2236907.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Lorraine R. - 4th Fl. | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE**

EXHIBIT *28* PAGE 443

```
                    ***********************
                    ***   TX REPORT   ***
                    ***********************

       TRANSMISSION OK

       TX/RX NO                3713
       RECIPIENT ADDRESS       76681#7209#18187583949
       DESTINATION ID
       ST. TIME                09/28 12:01
       TIME USE                01'21
       PAGES SENT              4
       RESULT                  OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

DATE:     September 28, 2007

NUMBER OF PAGES, INCLUDING COVER 4

NAME/COMPANY                    PHONE NO.        FAX NO.

Alan N. Goldberg                                 818-758-3949
Stern & Goldberg

FROM:     Juan Pablo Albán, Esq.

RE:       *Mattel v. Bryant*

MESSAGE:

PLEASE SEE ATTACHED.

EXHIBIT 28 PAGE 444