1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     johnquinn@quinnemanuel.com
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
4    Jon D. Corey (Bar No. 185066)
     (joncorey@quinnemanuel.com)
5    Timothy L. Alger (Bar No. 160303)
     (timalger@quinnemanuel.com)
6  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
7  Telephone: (213) 443-3000
   Facsimile:  (213) 443-3100
8  Attorneys for Mattel, Inc.
9
10              UNITED STATES DISTRICT COURT
11             CENTRAL DISTRICT OF CALIFORNIA
12                   EASTERN DIVISION

| | |
|---|---|
| 13  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 14          Plaintiff, | Consolidated with |
| 15      vs. | Case No. CV 04-09039<br>Case No. CV 05-02727 |
| 16  MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 17 | **[To Be Heard By Discovery Master** |
| 18          Defendant. | **Hon. Edward Infante (Ret.) Pursuant**<br>**To The Court's Order Of December** |
| 19  AND CONSOLIDATED ACTIONS | **6, 2006]** |
| 20 | **MATTEL, INC.'S NOTICE OF**<br>**MOTION AND MOTION TO** |
| 21 | **COMPEL DEPOSITION OF**<br>**LITTLER MENDELSON, P.C.**<br>**PURSUANT TO SUBPOENA** |
| 22 | **MEMORANDUM OF POINTS AND** |
| 23 | **AUTHORITIES**<br>[Declaration of Michael T. Zeller filed |
| 24 | concurrently] |
| 25 | Hearing Date:      January 4,20008<br>Time:              TBA |
| 26 | Place:             Telephonic<br>**Phase 1** |
| 27 | Discovery Cut-off:    January 28, 2008<br>Pre-trial Conference:  April 21, 2008 |
| 28 | Trial Date:         May 27, 2008 |

07209/2325182.1

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |     PLEASE TAKE NOTICE that at a telephonic conference before

3 | Discovery Master Hon. Edward Infante (Ret.) that will occur on January 4, 2008,

4 | plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court to compel the

5 | deposition of Littler Mendelson, P.C. ("Littler"), pursuant to a subpoena issued on

6 | September 6, 2007.

7 |     This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 36

8 | and 37 on the grounds that pursuant to the subpoena Mattel seeks to depose Littler

9 | on discoverable, non-privileged information, and that Carter Bryant's objections to,

10 | and concurrent motion to quash, the deposition are improper and should be

11 | overruled.

12 |     This Motion is based on this Notice of Motion and Motion, the

13 | accompanying Memorandum of Points and Authorities, the Declaration of James J.

14 | Webster filed concurrently herewith, and all other matters of which the Court may

15 | take judicial notice.

16 | **<u>Statement of Rule 37-1 Compliance</u>**

17 |     The parties met and conferred regarding this motion on September 10,

18 | 2007 and times thereafter.

19 |

20 | DATED:  December 13, 2007      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

21 |

22 |     By

23 |          James J. Webster
         Attorneys for Mattel, Inc.

24 |

25 |

26 |

27 |

28 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Bryant's sworn deposition testimony in 2005 was that he personally used three computers since October 2000, i.e., the time periods directly relevant to this case. The drives would contain critical evidence of Bryant's activities during the ensuing period. For the past more than two years, Mattel has sought discovery on these drives, and the information they (should) contain. In response, Bryant and his now former counsel, Littler Mendelson, P.C. ("Littler"), have made conflicting representations.

Their initial position was that only <u>one</u> of the three drives could be located—the one for his October 2000 Desktop—and that their allegedly "tireless" search for the only drive they purportedly found yielded <u>no</u> relevant documents. In response, on January 4, 2007, Mattel moved to compel production of the drives. On January 25, 2007, the Court ordered Bryant to produce his hard drives. After delays in Bryant's production of compelled drives, Littler announced that that the Desktop drive could no longer be found. At the same time, Littler revealed that contrary to its prior representations to the Court, it <u>did</u> have possession of another drive (from a Bryant laptop)—which had been in Littler's possession <u>since 2004</u>—and which did contain Bratz related documents.

On April 10, 2007, Mattel moved to enforce the Court's Order, and require immediate production of the drives. In response, after yet more delays, Littler reversed course and revealed without explanation that it had regained possession of the Desktop drive. Mattel inspected two drives and found that a program called "Evidence Eliminator" had been installed apparently to destroy data. On September 6, 2007, Mattel served a <u>Rule</u> 30(b)(6) deposition subpoena on Littler seeking information regarding the handling of the drive.

By this motion, Mattel seeks an Order that it can now depose Littler regarding non-privileged, percipient issues, i.e., to determine when it obtained the

1   drives, how they were preserved, when the Desktop went missing, and if it has any
2   knowledge regarding the destruction of evidence, especially given Littler's
3   conflicting representations to the Court on these subjects. This information is critical
4   to Mattel's preparation for trial, including on the issue of spoliation. It is also
5   information uniquely in the possession of Littler.

6        Mattel also seeks testimony regarding destructive testing on key Bratz
7   drawings that was conducted while Littler was counsel, without notice to the Court
8   or Mattel. Judge Larson has already recognized that the handling of these critical
9   documents raises serious questions; only Littler can provide necessary answers on
10  aspects of those documents' handling.

11       Bryant's objections to the deposition are based solely upon an
12  inapplicable Eighth Circuit precedent—<u>Shelton v. Amer. Motors Corp.</u>, 805 F.2d
13  1323 (8th Cir. 1986)—which speaks to the protection of opposing trial counsel's
14  litigation tactics and strategy. But Littler is *former* trial counsel, and Mattel seeks
15  *facts* regarding the handling of evidence wholly unrelated to trial strategy. In any
16  case, even were <u>Shelton</u> applicable, the deposition is proper because of the critical
17  evidence at issue, and the inability of Mattel to gather it from any other source. For
18  all these reasons, the Court should compel Littler to appear for deposition.

19
20                **Factual Background**
21
22        **At Deposition in November  2004, Bryant Identified Three**
23  **Relevant Computers He Used Since October 2000.** At his deposition on
24  November 4, 2004, Bryant testified that he had used three different computers for
25  the period since 1998. Two are relevant here. One was a desktop computer he
26  purchased on October 21, 2000 (the "Desktop")—just one day after he resigned
27
28

-2-

1   from Mattel;[1] Bryant testified that he used this computer from 2000 until

2   approximately November 2003 (i.e., five months before this lawsuit was filed), and

3   then gave it to his niece .[2] The other was the laptop computer Bryant purchased in

4   November 2001 ("the Laptop").[3]

5   **Bryant and Littler Represent That The Desktop Was Examined**

6   **And Contained No Responsive Information.** Bryant and Littler repeatedly

7   represented that they had possession of the Desktop computer; they also represented

8   that they searched it and found no responsive documents. Littler confirmed this in a

9   November 1, 2004 letter to Mattel claiming that the Desktop "has been retrieved and

10  searched for responsive documents, and none have been located."[4] Mattel wrote

11  back asking that the Desktop hard drive be preserved.[5]

12

13

14

---

15  [1]   Circuit City receipt dated October 21, 2000, attached to the Declaration of
Michael T. Zeller, dated December 13, 2007 filed concurrently herewith ("Zeller
16  Dec."), Exh. 2; Deposition of Carter Bryant ("Bryant Deposition") at 246:3-5, Zeller
Dec., Exh. 3.
17  [2]   Bryant Deposition at 245:8-17; 246:3-5; 248:5-9, Zeller Dec., Exh. 3.
18  Bryant's counsel elsewhere stated that Bryant had used the Desktop "from 2000 to
2002" and thus confirmed as well that it pertained to a highly pertinent time period.
19  Joint Stipulation Re: Mattel's Motion to Compel Production of Documents, filed on
20  January 6, 2005 (excerpts) ("Joint Stipulation") at 62:8-10, Zeller Dec., Exh. 5.
[3]   Bryant Deposition at 247:25-248:2, Zeller Dec., Exh. 3.
21  [4]   Letter dated November 1, 2004 from Keith Jacoby, counsel for Bryant, to John
22  Quinn and Michael Zeller, counsel for Mattel, at p. 2, Zeller Dec., Exh. 4
("Regarding [Mattel's] requests to inspect Mr. Bryant's home computer, I have made
23  further inquir[i]es on that subject to Mr. Bryant and my colleagues. Mr. Bryant did
24  not own a home computer during his time at Mattel. He later purchased a computer,
which he used for a time, and then gave away to his niece. That computer has been
25  retrieved and searched for responsive documents, and none have been located. Mr.
26  Bryant declines to produce his hard drive for inspection for the reasons articulated in
his response to Mattel's document request.").
27  [5]   Letter dated November 17, 2004 from Kirk Garey, counsel for Mattel, to Keith
28  A. Jacoby, Zeller Dec., Exh. 1.

-3-

1    In January 2005, Mattel filed a motion to compel seeking the

2 production of Bryant's hard drives, including the Desktop hard drive.[6]  Bryant

3 opposed the motion, representing to the Court that he had "tirelessly searched for

4 and inspected" the Desktop drive "for relevant information" and had made an

5 "extensive and diligent search" for responsive information.[7]  Littler's attorney

6 declarations averred that counsel had examined the Desktop—indeed, "extensively"

7 so—and that they spent "scores of attorney hours" searching for responsive

8 documents, and found no responsive documents.[8]

9    Due to an intervening discovery stay, Mattel's original motion to

10 compel was not ruled upon.  After the stay was lifted and the Discovery Master

11 appointed, Mattel renewed its motion to compel production of Bryant's hard drives

12 in early January 2007, again specifically seeking production of the Desktop hard

13 drive.[9]

14    Bryant represented (again) in his Opposition that he had conducted a

15 "diligent" search for the hard drives and stated that the *only* drive he could locate

16

17

18

---

[6]   Joint Stipulation at 3-4, 58-61, Zeller Dec., Exh. 5.

19
[7]   Joint Stipulation at 62:1-13, Zeller Dec., Exh. 5; [Redacted] Declaration of

20 Keith A. Jacoby in Support of Defendant and Cross-Claimant Carter Bryant's
Portion of Joint Stipulation (excerpted and without exhibits) ("2005 Jacoby Dec.") at

21 ¶¶ 22, 23, attached as Exh. 6 to the Zeller Dec.  Bryant's opposition also made clear

22 that the hard drive purportedly searched was from the Desktop.  Id. at ¶ 23
(referencing the "hard drive from Bryant's home computer, which he gave to his

23 niece in 2002").

[8]   Joint Stipulation at 62:2-13, 18-20, Zeller Dec., Exh. 5; 2005 Jacoby Dec. at

24 ¶¶ 23, 24, Zeller Dec., Exh. 6.

25 [9]   Zeller Dec. ¶ 8; see also Separate Statement of Mattel, Inc. in Support of

26 Motion to Compel Production of Documents by Carter Bryant, filed on January 4,
2007 (excerpts) at 57-61, Zeller Dec., Exh. 7; Declaration of Michael T. Zeller in

27 Support of Mattel, Inc.'s Motion to Compel Production of Documents by Carter

28 Bryant (without exhibits) filed January 4, 2007 at ¶ 27, Zeller Dec., Exh. 8.

1  was from the Desktop.[10]  Littler represented (again) that they had searched the

2  Desktop hard drive, but did not find "any responsive documents or relevant

3  information" on it.[11]

4  **On January 25, 2007, the Court Orders Production of the Hard**

5  **Drive, But Bryant's Counsel Fails to Produce Them.**  The Discovery Master

6  granted Mattel's motion to compel.  Among other things, it was ordered that

7  "[p]ursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his

8  computers for forensic imaging" by no later than February 23, 2007 (the "Discovery

9  Order").[12]

10  Shortly before the February 23, 2007 deadline, Littler asked Mattel for

11  an extension of time to comply with the Discovery Order, claiming additional time

12  was required because (i) the quantity of responsive documents "may be significant"

13  and (ii) because Bryant would be traveling.[13]  Mattel agreed to extend Bryant's time

14  to produce the hard drives.[14]

15  Four days later, in a February 27, 2007 email, Littler asserted a new

16  reason for failing to produce the hard drives, i.e., that the hard drive contained some

17  unspecified "highly private material" and seeking "some sort of agreement" on that

18

19

---

20  [10]  Separate Statement of Defendant Carter Bryant in Opposition to Mattel's

21  Motion to Compel, filed on January 11, 2007 ("Bryant's 2007 Separate Statement") at 39, Zeller Dec., Exh. 9; Declaration of Keith A. Jacoby in Support of Carter

22  Bryant's Opposition to Mattel, Inc.'s Motion to Compel Production of Documents (excerpted and without exhibits) ("2007 Jacoby Dec.") at ¶ 31, Zeller Dec., Exh. 10.

23  [11]  2007 Jacoby Dec., ¶ 31, Zeller Dec., Exh. 10.

  [12]  Order of the Discovery Master Hon. Edward Infante (Ret.) dated January 25,

24  2007 at 17, Zeller Dec., Exh. 11.

25  [13]  Stipulation and Order re: Request to Extend Deadline Within Which Carter

26  Bryant Must Comply with the Discovery master's January 25, 2007 Order Granting Mattel's Motion to Compel Production of Documents dated February 23, 2007,

27  Zeller Dec., Exh. 12.

28  [14]  Id.

1   issue.[15]  Yet again, Mattel's counsel agreed to extend the deadline for production so
2   the parties could further discuss this new privacy issue.  In return, Littler agreed to
3   provide a detailed log of the "highly private" files at issue by no later than the end of
4   the following week (by March 23, 2007).[16]  By March 26, 2007, Littler had still not
5   produced that log.[17]

6   **In April 2007, Littler Reveals It Has Possession of Additional Hard**
7   **Drives But No Longer Has the Desktop Drive.**  In view of Littler's failure to
8   comply with the January 25, 2007 Order, Mattel sought to meet and confer in
9   advance of a motion to enforce the Order.[18]  Littler then made two new claims:

10          First, although Littler had previously represented to the Court that it
11   *only* had the Desktop hard drive,[19] it now stated that forensic images of *two* Bryant
12   hard drives had been made in *July 2004*—after this suit was filed and long before
13   Littler's representations to the Court that *only* the Desktop drive had been located.[20]
14   Littler claimed that one of these forensic images made in July 2004 was the Laptop
15   drive that Littler had represented to the Court had not been located.[21]  It thus also

16   _____

17   [15]  E-mail dated February 27, 2007, from Douglas Wickham to John Quinn and
18   Michael Zeller, Zeller Dec., Exh. 13.
19   [16]  Letter dated March 2, 2007 from Douglas Wickham to Michael Zeller, Zeller
     Dec., Exh. 14; letter dated March 16, 2007 from Douglas Wickham to Michael
20   Zeller, Zeller Dec., Exh. 15;  letter dated March 27, 2007 from Douglas Wickham to
     Michael Zeller, Zeller Dec., Exh. 18.
21   [17]  Letter dated March 26, 2007 from Michael Zeller to Douglas Wickham, Zeller
22   Dec., Exh. 16.
     [18]  Id.
23   [19]  Bryant's 2007 Separate Statement at 39, Zeller Dec., Exh. 9; 2007 Jacoby
24   Dec. at ¶ 31, Zeller Dec., Exh. 10; Letter dated March 26, 2007 from Douglas
     Wickham to Michael Zeller, Zeller Dec. Exh. 17; Letter dated March 27, 2007 from
25   Douglas Wickham to Michael Zeller, Zeller Dec. Exh. 19.
26   [20]  Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Zeller
     Dec., Exh. 21.
27   [21]  Id.  More specifically, Bryant identified the two images that were made in
28   July 2004 as being of (1) a 20 GB Travelstar hard drive from a Compaq Presario
         (footnote continued)

1   came to light that Littler had withheld these additional drives since July 2004.[22]

2   Littler further informed Mattel that the imaged data were from the 2002 and 2003

3   time period, giving the impression that the computers from which the hard drives

4   were imaged were not in use before that time.[23]

5         Second, in response to Mattel's specific requests for an explanation

6   regarding the status of the Desktop hard drive, Littler stated that it no longer knew

7   the whereabouts of the Desktop.[24] Littler stated that it was "not sure" about the

8   accuracy of its prior representations—i.e., that the Desktop drive had been retrieved

9   from Bryant's niece—and that it may have been "wrong."[25]

10   **On April 10, 2007 Mattel Moved to Enforce the Court's January**

11   **25, 2007 Order.** Faced with these starkly conflicting representations, Mattel moved

12   to enforce the Court's January 25, 2007 Order and compel Bryant to produce the

13   compelled computer hard drives.[26] The day before Bryant's Opposition was due,

14   Littler wrote stating that it had discovered an image of the Desktop in its

15

---

16   laptop, and (2) a 20 GB Quantum Fireball LCT 15 hard drive. Id., p. 1. Also during
the meet and confer process, Bryant's counsel represented that Bryant was still in

17   possession of the physical hard drive from the laptop but no longer had the Quantum

18   hard drive. Id., p. 1.

  [22] Letter dated March 27, 2007 from Douglas Wickham to Michael Zeller,

19   Zeller Dec. Exh. 19. Bryant's counsel further disclosed that there were additional

20   "hard drive(s)" that had been "recently copied in Missouri," and that "[a]fter further
examination, it appears that these drives also contain highly private, non-responsive

21   documents." Id. As noted above, in subsequent conversations, Bryant's counsel

22   stated that there were three images of these additional drives, for a total of at least
five hard drive images. Letter dated April 6, 2007 from Michael Zeller to Douglas

23   Wickham, Zeller Dec., Exh. 21.

  [23] Id.

24   [24] Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Zeller

25   Dec., Exh. 21.

  [25] Id.; Zeller Dec. ¶ 25.

26   [26] See Notice of Motion and Motion of Mattel, Inc. for an Order to Enforce

27   Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer

28   Hard Drive, dated April 10, 2007, Zeller Dec., Exh. 23.

1  possession, and would now make it available to Mattel.[27]  Mattel imaged that drive,

2  and took its motion off calendar.[28]  Shortly after, Littler withdrew as counsel and

3  was replaced by Bryant's current counsel, Keker & Van Nest.[29]  Keker subsequently

4  produced the Laptop drive and the image.

5  Upon reviewing the drives, Mattel discovered that a software program

6  titled "Evidence Eliminator" had been installed and run on them.  Evidence

7  Eliminator purports to be a program designed to permanently destroy data to prevent

8  its use in legal proceedings: "Evidence Eliminator ... the data destroyed is 'gone

9  forever' and it is impossible to create mirror images of defendants' hard drives ..."[30]

10  This meant that, although it is undisputed that Bryant used the Desktop from

11  October 21, 2000 to November 2003, data from 2000 – 2001 had been eliminated—

12  perhaps explaining why Littler had represented that (without explanation) only data

13  from 2002 to 2003 was present on the drive.

14  ### Destructive Testing on the Bratz Drawings

15  This was not the first instance in which Mattel was aware of damage

16  done to evidence in this case while in the possession of Littler.  Indeed, Mattel

17  uncovered evidence that Littler engaged in destructive testing of the original Bratz

18  drawings without notice to the Court or Mattel.[31]

19

20

21

22  [27]  Letter dated April 23, 2007, from Keith A. Jacoby to Michael Zeller. Zeller

23  Dec., Exh. 24.
    [28]  Mattel, Inc.'s Notice of Withdrawal Without Prejudice of Motion for an Order

24  to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop
    Computer Hard Drive, Zeller Dec., Exh. 25.

25  [29]  Request for Approval of Substitution of Attorney, dated May 18, 2007, Zeller

26  Dec., Exh. 26.
    [30]  Zeller Dec. ¶ 30, Exh. 27.

27  [31]  Court's Order Denying Appointment of Expert Witnesses ("Expert Witnesses

28  Order"), dated August 11, 2006, at 4:19-7:3, Zeller Dec., Exh. 31.

1    Littler agreed to produce all of Bryant's original Bratz drawings at his
2  deposition in November 2004.[32]  Despite these promises, Bryant brought only a few
3  of his original drawings to the deposition.[33]  Some of these drawings had holes in
4  them, indicating that samples had been extracted for ink and/or paper chemical
5  dating analysis.[34]  Bryant testified that his drawings did not have holes in them when
6  he turned them over to defendants' counsel and that he was unaware of the origin of
7  the holes.[35]  Appearances notwithstanding, defendants' counsel at first denied that
8  anyone engaged in destructive sampling or analysis of Bryant's original drawings.[36]
9  Only after Mattel filed a motion asking the Court to appoint an expert witness did
10  defendants finally reverse course and admit that destructive sampling had been
11  performed on these documents.[37]  In ruling on that motion, the Court recognized that
12  defendants' handling of these "critical documents" raises "serious questions . . .
13  [which cause] the Court much concern about whether the truth seeking functions of
14  the adversarial system have been fundamentally compromised in this case."[38]

### Mattel Serves Subpoenas on Littler Mendelson

16    Faced with Littler's contradictory statements about the hard drives, and
17  apparent spoliation of evidence with regard to the original Bratz drawings, Mattel
18  served a subpoena on Littler for documents,[39] and a second Rule 30(b)(6) subpoena

19
20
      _____

21    [32]  Zeller Dec., Exhs. 32 & 33.
22    [33]  Zeller Dec. ¶ 37.
      [34]  Zeller Dec. ¶ 38; Bryant Deposition at 459:13-460:16, Zeller Dec., Exh. 3.
23    [35]  Bryant Deposition at 460:2-16, Zeller Dec., Exh. 3.
      [36]  Declaration of Keith Jacoby in support of Bryant's portion of Joint Stipulation
24  Re: Mattel, Inc.'s Motion to Compel Inspection of Original Documents and
25  Tangible Things, filed February 18, 2005, ¶ 11, Zeller Dec., Exh. 34.
      [37]  Declaration of Erich J. Speckin, dated July 21, 2006, ¶¶ 8, 13, Zeller Dec.,
26  Exh. 35.
      [38]  Expert Witnesses Order at 11:10-13, Zeller Dec., Exh. 31.
27    [39]  Zeller Dec., Exh. 28.
28

1   to depose Littler.[40]  These subpoenas sought information regarding the hard drive,

2   and preservation and destruction of other evidence in Littler's possession, including

3   destructive testing done on the original Bratz drawings.[41]  Bryant objected, and the

4   parties engaged in a series of meet and confers on the topic.  Bryant took the

5   position that he had no objection to production of documents, but that Littler had no

6   responsive, non-privileged documents in its possession.[42]  Bryant refused to allow

7   the deposition, arguing that it was barred under <u>Shelton v. Amer. Motors Corp.</u>, 805

8   F.2d 1323 (8th Cir. 1986).

9

10                                           **Argument**

11   **I.**     **THE LITTLER DEPOSITION IS PROPER BECAUSE LITTLER HAS**

12        **NON-PRIVILEGED AND RELEVANT PERCIPIENT INFORMATION**

13        **REGARDING BRYANT'S COMPUTER DRIVES**

14           Bryant does not and cannot dispute that the information that would be

15   contained on Bryant's computer hard drives from 2000 onwards is probative of

16   Bryant's conduct during his transition from Mattel to MGA in 2000.  As set forth

17   above, serious concerns have arisen as to whether proper steps were taken to

18   preserve evidence, particularly in relation to the 2000 – 2001 period on the Desktop

19   containing the "Evidence Eliminator" program.  Data is missing and Mattel has no

20   explanation  as to why it is missing.  The handling of the computer hard drives is

21   therefore a proper subject of percipient witness testimony.  This will not require any

22   impermissible intrusion into work product or attorney-client communications.

23           The non privileged information Mattel seeks is as follows:

24

25

26

27   [40]   Zeller Dec., Exh. 29.

      [41]   <u>Id.</u>

28   [42]   Zeller Dec., Exh. 30.

1       •    When and how Littler or its agents collected Bryant's computer

2           hard drives.

3       •    What was done with those drives once they were in Littler's

4           possession, including how those drives were stored, whether

5           evidence was preserved on backup images, and whether and

6           when such drives were reviewed.

7       •    Communications with third parties regarding collection and

8           preservation of evidence that were the subject of representations

9           made by Littler.

10      •    The facts regarding any other destruction of evidence, such as

11          destructive testing conducted on the original Bratz drawings.

12

13      Courts routinely find that such discovery targeted to issues of spoliation

14 and evidence collection and preservation are proper subjects of discovery. See, e.g.,

15 Rambus, Inc. v. Infineon Technologies AG, 222 F.R.D. 280, 299 (E.D. Va. 2004)

16 (granting motion to compel documents regarding spoliation); In re Automotive

17 Refinishing Paint Antitrust Litigation, 2006 WL 1479819, *6 (E.D. Pa.) (permitting

18 discovery regarding existence of evidence; "Defendants just want to know whether

19 Plaintiffs possess any such documents at all. They are merely seeking to uncover

20 the factual basis for Plaintiffs' claims—the central purpose of discovery.").

21      In such cases, courts do not shield a witness with unique percipient

22 evidence simply because that witness is an attorney who has acted as counsel.

23 Riddell Sports Inc. v. Brooks, 158 F.R.D. 555, 559 (S.D.N.Y. 1994) ("[T]the

24 collection of evidence, without any creative or analytic input by an attorney or his

25 agent, does not qualify as work product."); In re Grand Jury Subpoenas dated March

26 9, 2001, 179 F. Supp. 2d 270, 284 (S.D.N.Y. 2001) (same).

27      Mattel expects that Littler will complain that it is being forced to

28 expose its litigation strategy. Although it is true that Littler has made conflicting

1   representations in the past two years regarding whether it had the Desktop, and

2   whether it contained relevant evidence, Littler's litigation strategy is not at issue.

3   Instead, Mattel seeks and is entitled to know how, whether and by whom evidence

4   has been handled or mishandled.  Littler played a key role in the handling of the

5   evidence which Mattel continues to seek.  There can be no dispute that Littler has

6   unique and percipient information regarding the preservation—or, apparently, the

7   destruction—of evidence concerning Bryant's activities at the very time during

8   which he transitioned from Mattel to MGA and that the District Court and the

9   Discovery Master have directly found to be relevant and indeed crucial.

10  **II.    THE SHELTON RULE DOES NOT APPLY IN THIS CASE**

11          **A.    Courts Have Often Rejected The Shelton Test As Inflexible**

12          Tellingly, as to the subpoena document requests on the <u>same</u> topics,

13  Bryant states that he has no objection to production.  Bryant's objects to the Littler

14  deposition based solely on the theory that Littler was at one time Bryant's intended

15  trial counsel.  In doing so, Bryant invokes out-of-circuit authority which is readily

16  distinguishable here.  Bryant relies upon <u>Shelton v. Amer. Motors Corp.</u>, 805 F.2d

17  1323 (8th Cir. 1986) as the sole basis for refusing the deposition.  That case

18  established special rules in the Eighth Circuit designed to limit (but not bar)

19  depositions of opposing counsel.  The <u>Shelton</u> court stated that it wished to prevent

20  the practice of "simply depos[ing] opposing counsel in an attempt to identify the

21  information that opposing counsel has decided is relevant and important to his legal

22  theories and strategy." <u>Id.</u> at 1327.  It further noted a fear that opposing counsel

23  might use the practice to interfere with an attorney's preparation of the case or

24  otherwise harass.  <u>Id.</u>  The <u>Shelton</u> court therefore created a three-prong test before

25  allowing such a deposition:

26                  We do not hold that opposing trial counsel is absolutely

27                  immune from being deposed.  We recognize that

28                  circumstances may arise in which the court should order

1       the taking of opposing counsel's deposition.  But those

2       circumstances should be limited to where the party

3       seeking to take the deposition has shown that (1) no other

4       means exist to obtain the information than to depose

5       opposing counsel; (2) the information sought is relevant

6       and nonprivileged; and (3) the information is crucial to the

7       preparation of the case.

8    Id.

9           As a preliminary matter, Shelton has never been adopted in the Ninth

10   Circuit.  Several courts, including the Second Circuit, have rejected its test as overly

11   harsh, and chosen instead to apply more flexible rules.  See, e.g., In re Subpoena

12   Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003) (rejecting Shelton rule

13   and stating, "the standards set forth in Rule 26 require a flexible approach to lawyer

14   depositions whereby the judicial officer supervising discovery takes into

15   consideration all of the relevant facts and circumstances to determine whether the

16   proposed deposition would entail an inappropriate burden or hardship"); qad.inc v.

17   ALN Associates, Inc., 132 F.R.D. 492, 495 (N.D. Ill. 1990) ("[T]his Court

18   subscribes wholeheartedly to a procedure that rejects any prior restraint in favor of

19   permitting the deposition to go forward, with any individualized objections to be

20   dealt with during its regular course."); Cook, Inc. v. C. R. Bard, Inc., 2003 WL

21   23009047, *1 (S.D. Ind. 2003) ("[T]he Court finds that it was not error for the

22   Magistrate Judge to decline to follow Shelton and permit the deposition of Mr.

23   Godlewski to proceed.").  For the reasons set forth below, Mattel submits that the

24   Shelton rationale does not have application to the deposition at issue here, and

25   should not be embraced by the Court.

26

27

28

**B.    Shelton Does Not Apply to Bar the Deposition of Former Trial Counsel Such as Littler**

By its terms, <u>Shelton</u> is specifically limited to depositions of trial counsel and the harms that might arise therefrom.  The core purpose of the <u>Shelton</u> test is to protect a party from a trial counsel deposition that might disclose strategies and otherwise harass and disrupt trial counsel.  "The <u>Shelton</u> test was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy."  <u>Pamida, Inc. v. E.S. Originals, Inc.</u>, 281 F.3d 726, 730 (8th Cir. 2002).  The Littler deposition poses no such danger here.  Apart from the fact that Mattel will not be questioning Littler on litigation strategy, Littler has withdrawn as Bryant's counsel, and been replaced by Keker & Van Nest.  Littler is no longer opposing counsel.  The <u>Shelton</u> test should not be applied here.  <u>See, e.g.</u>, <u>Calvin Klein Trademark Trust v. Wachner</u>, 124 F. Supp. 2d 207, 211 (S.D.N.Y. 2000) (noting that counsel's role in litigation was "peripheral" and refusing to apply <u>Shelton</u> on that basis).  Indeed, courts considering the issue have routinely permitted prior—as opposed to current—trial counsel to be deposed based on this distinction.  <u>See, e.g.</u>, <u>Pamida, Inc.</u>, 281 F.3d at 730 (refusing to apply <u>Shelton</u> to bar deposition of counsel); <u>Nakash v. U.S. Dept. of Justice</u>, 128 F.R.D. 32, 34 (S.D.N.Y. 1989) ("[T]he major rationales in these cases—discouraging the depositions of opposing attorneys in a particular lawsuit to avoid unnecessary expense and interference with the attorney-client relationship—are not applicable here.").

For the same reasons, Littler is no longer preparing Bryant's case for trial.  Accordingly, the concern that counsel will be distracted or unable to "devote his or her time and efforts to preparing the client's case" if faced with a deposition simply does not apply.  <u>Shelton</u>, 805 F.2d at 1327.  Nor could this have a chilling effect on future communications with Littler (<u>id.</u>) or lead to the disqualification of

1 | counsel who may be called as witnesses.  See Kaiser v. Mutual Life Ins. Co. of New
2 | York, 161 F.R.D. 378, 382 (S.D. Ind. 1994).

3 | **III.  EVEN IF ADOPTED HERE, SHELTON DOES NOT IMMUNIZE**
4 | **COUNSEL FROM BEING DEPOSED**

5 | Even were Shelton to be followed and applied, Mattel should still be
6 | permitted to proceed with the deposition.  Shelton permits such discovery where (1)
7 | the information sought is relevant and non-privileged; (2) the information is crucial
8 | to the preparation of the case; and (3) no other means exists to obtain the
9 | information at issue than to conduct the deposition.

10 | **A.  The Information Mattel Seeks is Relevant and Non-Privileged**

11 | Mattel is seeking relevant and non-privileged information.  The
12 | destruction of evidence, including from Bryant's hard drives, is referenced in
13 | Mattel's answer and counterclaims in this case.[43]  In response, defendants
14 | themselves have placed preservation of evidence and spoliation directly at issue in
15 | this case also.[44]  There can be no dispute that inquiry on such topics seeks relevant

16 |
17 |

18 | _____
19 | [43]   Mattel, Inc.'s Second Amended Answer In Case No. 05-2727, dated July 12, 2007 (without exhibits), at ¶ 93(c), Zeller Dec., Exh. 36 ("Counter-defendants
20 | MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of
21 | the remaining members of the MGA Criminal Enterprise, did corruptly alter,
22 | destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for
23 | use in an official proceeding, including this action, including without limitation by . . . destroying electronic and other evidence, including by **destroying evidence**
24 | **previously contained on Carter Bryant's and Isaac Larian's computer hard**
25 | **drives**.") (emphasis added); see also id. at ¶ 53 (alleging that Machado destroyed his Mattel hard drive to conceal evidence).
26 |
27 | [44]   See Order Denying Motion For Terminating Sanctions; Order Denying Request For Interlocutory Appeal; Order Requiring Filing Of Affidavits Re
28 | Evidence Preservation, dated August 29, 2007, Zeller Dec., Exh. 37.

1    information calculated to lead to the discovery of admissible evidence. <u>See</u> <u>Fed. R.</u>
2    <u>Civ. Proc.</u> 26(b)(1).

3            Mattel therefore satisfies the first prong of the <u>Shelton</u> test.

4    **B.      The Information Mattel Seeks is Crucial**

5            Evidence demonstrating that Bryant worked on Bratz while employed
6    by Mattel—or responding to defendants' arguments that he did not—is pivotal in
7    this action.  The Littler deposition will target the extent to which and manner in
8    which data from Bryant's own computers—including during critical times when
9    Bryant began working with MGA—was preserved.  It also will seek information
10   uniquely in Littler's possession about the handling of Bratz drawings that the
11   District Court has found are key evidence when they were in Littler's possession.

12   **C.      There are No Other Means of Acquiring the Relevant Information**

13           There are no other means of acquiring the information at issue here.
14   Only Littler knows what it has done with respect to the hard drives and the drawings
15   while they were in its possession.  No other witness would have the same
16   information.  For example, by its own account, Littler has communicated with third
17   parties including Bryant's niece, in taking possession of the Desktop drive.  Littler
18   arranged for and oversaw the imaging of the drives.

19           Mattel has exhausted other means of obtaining the evidence from
20   Littler.  Mattel has already attempted to investigate through the use of a document
21   subpoena on Littler, but no responsive documents have been produced.  In any
22   event, by its nature, investigation of spoliation requires the ability to ask follow-up
23   questions to ferret out the truth, something that interrogatories or other written
24   discovery cannot offer.

25           Thus, even if the <u>Shelton</u> test were applied, Mattel has satisfied each
26   prong of that test.

27

28

07209/2325182.1

1

## Conclusion

2      For the foregoing reasons, Mattel respectfully requests that its motion

3   be granted in its entirety.

4

5   DATED:  December 13, 2007          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
6

7                                       By
8                                          James J. Webster
                                           Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2        I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is Now Legal Service,
3    1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4    On December 13, 2007, I served true copies of the following document(s) described as **MATTEL,
INC.'S NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF LITTLER
5    MENDELSON, P.C. PURSUANT TO SUBPOENA; MEMORANDUM OF POINTS AND
AUTHORITIES** on the parties in this action as follows:

6
         John W. Keker
7        Michael H. Page
         Christa M. Anderson
8        **Keker & Van Nest, LLP**
         710 Sansome Street
9        San Francisco, CA 94111
         *Attorneys for CARTER BRYANT*
10

11

12   **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s)
being served.
13
         I declare that I am employed in the office of a member of the bar of this Court at whose
14   direction the service was made.

15       Executed on December 13, 2007, at Los Angeles, California.

16

17       _____

18       NOW LEGAL -- Dave Quintana

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2   I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is 865 South Figueroa
3   Street, 10th Floor, Los Angeles, California 90017-2543.

4   On December 13, 2007, I served true copies of the following document(s) described as **MATTEL,
INC.'S NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITION OF LITTLER
5   MENDELSON, P.C. PURSUANT TO SUBPOENA; MEMORANDUM OF POINTS AND
AUTHORITIES** on the parties in this action as follows:

6

7   Thomas J. Nolan                                      Mark E. Overland, Esq.
    **Skadden, Arps, Slate, Meagher & Flom**             David E. Scheper, Esq.
8   **LLP**                                              Alexander H. Cote, Esq.
    300 South Grand Ave., Ste. 3400                      **Overland Borenstein Scheper & Kim,**
9   Los Angeles, California 90071                         **LLP**
    *Attorneys for MGA ENTERTAINMENT,*                   300 South Grand Avenue
10  *INC.*                                               Suite 2750
                                                         Los Angeles, CA 90071-3144
11                                                       *Attorneys for Carlos Gustavo Machado*

12

13  **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with
14  postage thereon fully prepaid.

15      I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.
16

17      Executed on December 13, 2007, at Los Angeles, California.

18

19  _____
    Yolonda J. Dekle
20

21

22

23

24

25

26

27

28

07209/2081332.1