# EXHIBIT 1

**quinn emanuel** trial lawyers | los angeles

Sss, South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213 443 3000 FAX 213 443 3100

November 17, 2004

**Via Facsimile and U.S. Mail**

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107

Re:    *Mattel, Inc. v. Carter Bryant*

Dear Mr. Jacoby:

I write in response to your letter of November 1, 2004 regarding Carter Bryant's Objections and
Responses to Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible
Things.  Mattel has not accused you or your client of "sanitizing" the Bryant document
production.  My letter of October 28, 2004 stated, "We cited [during our October 25, 2004 meet
and confer] certain examples in which it appeared that the production had been 'sanitized' of such
information."  For example, the MGA production contained documents that suggested that there
had been facsimile communications between Bryant and Kinuyo Shichijyo in the fall of 2000 and
that had not been produced by Bryant (MGA Bates #427-28).  On the eve of the Bryant
deposition, on November 1, 2004 at 3:00 p.m., you made available for the first time, several
previously withheld documents, including two letters, dated September 18, 2000, between Carter
Bryant and Kinuyo Shichjyo regarding Bryant's attempts to find a hair supplier for MGA's "new
doll line" (Bryant Bates #s 1201-02).  This was when Bryant was still employed at Mattel. It
would strain credulity to suggest that these documents were simply overlooked by Mr. Bryant in
responding to Mattel's earlier document requests.  We cited several other examples of what
appeared to be gaps in your client's production to you in our conference call which you indicated
you would look into.  Please advise when we might expect the results of your further inquiry.

Despite the existence of a protective order, your client is refusing to produce the hard drive from
the computer he apparently gave to his niece.  Previously produced documents evidence e-mail
correspondence between Bryant and others.  These and other e-mail messages, not to mention

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212 849 7000 FAX 212 849 7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415 875 6600 FAX 415 875 6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650 801 5000 FAX 650 801 5100

EXHIBIT _29_ PAGE _351_

EXHIBIT __1__ PAGE __7__

other responsive documents, likely exist on that hard drive. We must insist that this hard drive be made available for inspection and copying by Mattel in the next ten days. Moreover, as you are aware, the continued use of the hard drive may result in the destruction of relevant evidence. Until this dispute can be resolved, Mattel expects you, as Bryant's counsel, to secure possession of the hard drive and not to use it until an inspection can be agreed upon or ordered by the Court.

Despite our request for unredacted phone records and the existence of a protective order, on November 1, 2004, Bryant provided us with photocopies of phone records that had a significant number of telephone numbers redacted from them. Because of the existence of the protective order, which covers the phone records, Mattel is entitled to unredacted telephone records. We also note that you committed to review other documents being withheld from production that you thought might not be covered by the protective order and provide us with a list of any such documents. To date, we have not received any list from you and must assume that there are no such documents.

Mattel requested Bryant to produce any documents referring or relating to any agreement or contract between Bryant and any other individual that was proposed, offered, discussed, negotiated or executed while Bryant was employed with Mattel, including all drafts of such agreements or contracts, save for the final agreement which has been produced. It appears from your most recent correspondence regarding this topic that you are now attempting to narrow this request down to one specific document, apparently prepared by Bryant's counsel. To date, your client has produced no correspondence or notes, memoranda, e-mails, or any other documentation pertaining to any communications concerning draft employment agreements. Any such documentation, should it exist, is relevant to this lawsuit. Your attempt to link the production of these requested documents to Mattel's objection to producing draft employment agreements between it and other Mattel employees besides Bryant is misplaced. If your client still refuses to produce all documents responsive to this request, you will leave us no alternative but to move to compel.

With respect to the "First Generation Bratz" objection, we must stand on our earlier stated position and insist that these documents be produced.

By the statements in your November 1 letter, you have now backtracked from the representations you made during our October 25, 2004 conference call regarding those responses to which Bryant objected to without indicating that responsive documents would be produced. You have now limited that representation to Mattel's Request No. 21. We disagree with your characterization that any of the Mattel requests are "unintelligible," "wildly overbroad," or "otherwise objectionable." If you are unable to withdraw these unfounded objections as to all other requests in which no responsive documents were produced, you will leave us no alternative but to move to compel.

We are still awaiting receipt of the verification you agreed your client would provide attesting to the fact that all non-privileged responsive documents have been produced or that a diligent

EXHIBIT 27 PAGE 352

EXHIBIT 1 PAGE 8

search has been made with respect to all other requests and no responsive documents were located. Finally, you have acknowledged that Bryant's responses were incomplete and incorrect. Please provide an amended verified response that corrects these deficiencies by close of business on November 22, 2004.

Mattel is of the opinion that we have resolved all those outstanding issues that can be resolved without judicial assistance. If you disagree, please contact me at your convenience.

Best regards,

Kirkland Garey

07209/619572.1

3

EXHIBIT 29 PAGE 353

EXHIBIT 1 PAGE 9

# EXHIBIT 2

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 3

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 4

Received:   11/ 1/04 11:10|         310 553 5583 -> JetF      '0;  Page 2
NOV-01-2004 11:09 FROM:LITTLER MENDELSON    310 553 5583     .L. 12136240643         P.2/4



LITTLER MENDELSON°
A PROFESSIONAL CORPORATION

Keith A. Jacoby
Direct: 310.772.7284
Direct Fax: 310.553.5583
kjacoby@littler.com

November 1, 2004

**VIA MAIL AND FACSIMILE 213.624.0643**

John B. Quinn, Esq.
Kirkland Garey, Esq.
John Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   **Mattel, Inc. v. Carter Bryant and Related Cross-Claim**, Los Angeles Superior
      Court Case No. BC 314398

Dear Messrs. Quinn and Garey:

This letter is in response to Mr. Garey's letter of October 28, 2004. That letter contained
several misrepresentations and misstatements of the positions I previously articulated on
behalf of Mr. Bryant to Mr. Garey and Mr. Corey, and I will rearticulate those positions here.

Preliminarily, my client and I take exception to your baseless accusation that the Bryant
production has been "sanitized." Nothing of the sort has occurred. I explained to you that Mr.
Bryant is an individual who moved several times between 1998 and 2004. He is not
required to maintain documents in the manner that a corporation such as Mattel is required to
do, and he has not done so. Of course, it is possible that documents were misplaced over the
years, or simply discarded, well before this lawsuit was filed. To be sure, Mr. Bryant never
expected to be sued by Mattel three and one-half years after his employment ended. That
being said, we are all fortunate that Mr. Bryant did maintain quite a number of documents
from the late 1990's and 2000, and all legitimately sought responsive documents in his
possession, custody and control have been produced, or are being produced today. This
production is the product of extensive searches at Mr. Bryant's places of work and home.
That said, I will look into the purported gaps in the production Mr. Garey's letter outlines,
and if further responsive documents are located, they will be produced. As indicated during
my call with Mr. Garey, Mr. Bryant will make a supplemental document production to
Mattel today, and allow Ms. Tania Krebs to view certain three dimensional items responsive
to Mattel's document requests at my office, at 3:00 p.m.

Regarding requests to inspect Mr. Bryant's home computer, I have made further inquires on
that subject to Mr. Bryant and my colleagues. Mr. Bryant did not own a home computer

THE NATIONAL EMPLOYMENT & LABOR . EXHIBIT 28 PAGE 348
... ... ... Fa. 310 553 5583 www.littler.com

EXHIBIT _4_ PAGE _33_

Received:  11/ 1/04 11:.          310 553 5583 -> JetF     ~20;  Page 3
NOV-01-2004 11:09 FROM:LITTLER  ENDELSON    310 553 5583          12136240643          P.3/4

John B. Quinn, Esq.
Kirkland Garey, Esq.
Jon Corey, Esq.
November 1, 2004
Page 2

during his time at Mattel. He later purchased a computer, which he used for a time, and then gave away to his niece. That computer has been retrieved and searched for responsive documents, and none have been located. Mr. Bryant declines to produce his hard drive for inspection for the reasons articulated in his response to Mattel's document request.

Regarding the draft of the Bryant/MGA agreement prepared by Mr. Bryant's counsel, you have misstated my position. That document is not germane to this case in any respect. The proposed edits by Ms. Wang were almost entirely rejected by MGA and never had any legal effect. They have no bearing no Mattel's claims. During our call, I contrasted this position with Mattel's position on Mr. Bryant's requests relating to the Mattel Inventions and Assignments Agreement and Conflict of Interest Questionnaire. Originally, Mr. Bryant sought all drafts of these documents. That request was objected to as overbroad, and despite numerous meet and confers, counsel has not abandoned that position. I agreed to limit his requests to seek only forms of the agreements that were *actually used* by Mattel, from 1995 to the present. This would be highly relevant if, for example, Mattel has modified the agreement in response to a ruling or legal opinion that any part of the agreement was unenforceable. Mattel still refuses to produce these documents. I do not see how Mattel can on one hand refuse to produce documents actually used in the course of its business, and on the other hand insist that draft documents in Bryant's possession which were never used and never had any legal effect must be produced. This is typical of Mattel's strategy of seeking to obtain from Mr. Bryant the widest possible range of discovery, while for its own part agreeing to allow virtually no discovery to go forward.

Regarding the production of "First Generation Bratz" documents, that limitation was expressly agreed upon by Mr. Zeller, with respect to documents produced by both MGA and Mr. Bryant. We agreed that the limitation was without prejudice to seeking further documents at a later time. Mr. Zeller has never revisited this limitation with me, though Mattel appears to be revoking it now. A wholesale production of all post-June 2001 Bratz related documents would be a massive undertaking that is totally unjustified by the claims stated by Mattel to date. We see no basis to produce these documents at this time, and you have articulated none.

With respect to categories of documents Mr. Bryant has simply objected to, I represent that I am unaware of any documents in Mr. Bryant's possession, custody or control relating to Mattel document request no. 21 (other than Bryant himself). All other requests that were simply objected to were either unintelligible as written, or were both wildly overbroad and otherwise objectionable for the reasons stated in the objections. I would note, however, that

EXHIBIT 28  PAGE 347

EXHIBIT 4  PAGE 34

Received:  11/ 1/04 11:1'        310 683 5583 -> JetF'    :0;   Page 4

NOV-01-2004 11:09 FROM:LITTLE̱   ̱NDELSON    310 553 5583         |    .2136240643           P.4/4

John B. Quinn, Esq.
Kirklund Garcy, Esq.
Jon Corby, Esq.
November 1, 2004
Page 3

responsive documents produced in response to other valid requests would, in some cases, be
responsive to those objectionable categories as well.

Sincerely,

Keith A. Jacoby

Los_Angeles:381579.3 028307.1010

EXHIBIT 28 PAGE 350

EXHIBIT 4 PAGE 35

# EXHIBIT 5

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 6

1  ROBERT F. MILLMAN, Bar No. CA 062152
   DOUGLAS A. WICKHAM, Bar No. CA 127268
2  KEITH A. JACOBY, Bar No. 150233
   LITTLER MENDELSON
3  A Professional Corporation
   2049 Century Park East, 5th Floor
4  Los Angeles, CA 90067.3107
   Telephone:   310.553.0308
5  Facsimile:   310.553.5583

6  Attorneys for Defendant and Cross-Claimant
   CARTER BRYANT

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware          Case No. CV 04-9059 NM (RNBx)
    Corporation,
12                                    HON. NORA M. MANELLA
                   Plaintiff,
13                                    **DISCOVERY MATTER**
          v.
14                                    **[REDACTED] DECLARATION OF
    CARTER BRYANT, an individual;     KEITH A. JACOBY IN SUPPORT
15  and DOES 1 through 10, inclusive, OF DEFENDANT AND CROSS-
                                      CLAIMANT CARTER BRYANT'S
16                 Defendant.         PORTION OF JOINT
                                      STIPULATION**
17
                                      [Local Rule 37-3]
18
                                      Hearing Date:        January 25, 2005
19
    CARTER BRYANT, on behalf of
20  himself, all present and former
    employees of Mattel, Inc., and the
21  general public,

22                 Cross-Claimant,

23        v.

24  MATTEL, INC., a Delaware
    Corporation,
25                 Cross-Defendant.

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT 6  PAGE 46

19.     Contrary to Mattel's representations, Bryant does not object to producing "responsive, non-privileged documents generated after the suit was filed." Rather, Bryant asserted an objection – identical to one Mattel asserted – that was designed to reserve Bryant's right not to place on a privilege log the innumerable privileged documents and documents containing attorney work product that have been created since this lawsuit was filed. Bryant is unaware of any unprivileged document which does not contain attorney work product that is responsive to the requests and that was created since the lawsuit was filed. The only document that conceivably falls into these categories of documents that Mattel has conducted discovery on to date is Bryant's retainer letter with Littler Mendelson. At deposition, Mattel's counsel quizzed Bryant about his retainer and whether MGA agreed to pay his legal fees in this matter. Bryant asserted the attorney client privilege and did not respond.

20.     Mattel has not produced its retainer letter in discovery, nor has it logged it on any privilege log.

21.     Bryant has not "refused" to produce communications between himself and MGA. To the contrary, he has produced his agreement, his royalty statements, all manner of artwork that was done for MGA or assigned to MGA.

22.     Moreover, and contrary to Mattel's contentions, Bryant has conducted an extensive and diligent search for responsive and relevant information. Bryant made the hard drive of the computer he used from 2000 to 2002 available to his counsel, and counsel have not found any responsive documents or relevant information in his computer hard drives, or documents related to his communications with MGA.

23.     Mattel's speculation that Bryant's counsel "apparently has made no effort to look for or recover deleted data from that hard drive and made no effort to examine the other computers at all" is a complete falsehood, and contradicts express representations made to Mattel's counsel in the meet and confer that such a search was

6.

EXHIBIT  6  PAGE 47

undertaken and did not reveal any responsive documents. It ignores the fact that that Bryant's counsel has examined his hard drive extensively for any responsive documents, and it has not found any. It also ignores the fact that scores of attorney hours have been spent searching for documents at Bryant's home and in his studio. While Bryant has tirelessly searched for and inspected his computer hard drives for relevant information, there is irrefutable evidence that Mattel has not turned over all of Bryant's electronic data, such as responsive emails or their attachments.

24.    Further, the hard drive from Bryant's home computer, which he gave to his niece in 2002, contains personal information and data that is unquestionably protected by his constitutional right of privacy as well as that of his niece.

25.    Bryant has been even more accomodating in his furnishing of personal telephone records, but to no avail. He has produced pages of telephone records reflecting phone calls between MGA and himself. He also produced redacted phone records from Veronica Marlow, the individual that introduced Bryant to MGA. He produced those records in good faith, even though they are not his own, because they were turned over by Marlow to his attorneys during this litigation.

26.    Those records contain calls to and from family and friends, and calls by his roommates to others, which are obviously unrelated to this action.

27.    In its Motion, Mattel also seeks an order compelling Bryant to produce all "Mattel-related" documents. Bryant worked for Mattel for approximately five years, and in that time, received innumerable documents from Mattel. A vast majority of the Mattel documents responsive to these requests have no bearing on any issue in this case. Documents that Bryant would have received from Mattel during his five years of employment there would likely include insurance, benefits, employee handbooks, administrative memoranda, reports, paychecks, etc.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

EXHIBIT __6__ PAGE __48__

45.     Mattel is suing a Missouri individual, and litigating the case with the vigor of a massive antitrust suit. At each previous court hearing, Mattel has sent no less than *five attorneys – two partners and three associates –* to make and view the appearance.

46.     There have also been four depositions. To attend Bryant's deposition, Mattel sent *four* attorneys – two partners, one associate and one in-house counsel – to Springfield, Missouri. For a third party witness, Mattel had five attorneys – two partners (Mr. Quinn and Mr. Zeller), two in-house lawyers, and one associate.[2] And, to *defend* the deposition of one Mattel witness, Mattel sent *two* Quinn Emanuel lawyers (one partner and one associate) <u>and</u> one in-house counsel.

47.     As Bryant's counsel, I have spent in excess of fifteen hours preparing Bryant's portion of this joint stipulation. My hourly rate is $425 per hour. Pursuant to FRCP 37 (a)(4)(B), Bryant should be awarded that amount in partial compensation for the cost of opposing this motion.

        I declare under penalty of perjury under the laws of State of California and the United States of America that the foregoing is true and correct.

        Executed this 4th day of January, 2005, at Los Angeles, California.



                                        KEITH A. JACOBY

Los_Angeles:389367.3 028307.1010

---

[2] The associate attended only part of that deposition.

12.

EXHIBIT 6   PAGE 49

# EXHIBIT 7

CONFORMED

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Plaintiff and Cross-
   Defendant Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

13            Plaintiff,                 Consolidated with
                                         Case No. CV 04-09059
14      vs.                              Case No. CV 05-02727

15  MATTEL, INC., a Delaware             **DISCOVERY MATTER**
    corporation,
16                                       **[To Be Heard By Discovery Master
             Defendant.                  Hon. Edward Infante (Ret.) Pursuant
17                                       To The Court's Order Of December
                                         6, 2006]**
18

19  AND CONSOLIDATED ACTIONS            SEPARATE STATEMENT OF
                                         PLAINTIFF MATTEL, INC. IN
20                                       SUPPORT OF MOTION TO COMPEL
                                         PRODUCTION OF DOCUMENTS BY
21                                       CARTER BRYANT

22                                       Hearing Date: TBA
                                         Time: TBA
23                                       Place: TBA

24                                       Discovery Cut-off: None Set
                                         Pre-trial Conference: None Set
25                                       Trial Date: None Set

26

27

28

               EXHIBIT __7__ PAGE __50__

07209/1992206.8

1  parties may use this information only for purposes of litigating this case, excluding
2  any business purpose, the court concludes Deloitte's confidentiality concerns have
3  been addressed adequately.").

4          Under federal law, "[t]he party asserting an evidentiary privilege has
5  the burden to demonstrate that the privilege applies to the information in question."
6  Tornay v. United States, 840 F.2d 1424, 1426 (9th Cir. 1988).  Bryant cannot meet
7  that burden here.[77]

8      **C.      The Court Should Order Bryant to Serve A Complete Privilege**
9              **Log**

10          Although he objects to most of Mattel's Requests on privilege grounds,
11  Bryant lists only 4 documents on his privilege log.[78]  That is likely because most
12  documents he has withheld on privilege grounds are not actually privileged–and
13  because the dates of these documents alone may refute Bryant's claims about the
14  timing and scope of his communications with MGA.  Bryant should be ordered to
15  identify on a privilege log all documents that truly are the subject of a good-faith
16  assertion of privilege, with sufficient information to allow Mattel to test the validity
17  of the privilege assertion.  See United States v. Construction Products Research,
18  Inc., 73 F.3d 464, 473 (2d Cir. 1996); O'Connor v. Boeing North American, Inc.,
19  185 F.R.D. 272, 280 (C.D. Cal. 1999).

20      **D.      The Court Should Order Bryant To Turn Over His Hard Drives**
21          A request for "documents" under Rule 34 operates as a request for
22  documents stored in electronic form.  See Playboy Enterprises, Inc. v. Welles, 60 F.

---

23      [77]   While they lack merit, Bryant's extensive redactions belie his "undue burden"
24  objections.  Bryant has never shown that turning over documents responsive to *all* of
25  Mattel's requests would call for a voluminous production.  If anything, it required
    much greater effort on Bryant's part to scrub his documents clean of useful
26  information through redactions than to simply produce them in un-redacted form.
27      [78]   Zeller Dec. Exh. 5.

28

EXHIBIT 7 PAGE 51

SEPARATE STATEMENT IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS

17209/1992206.8

1   Supp. 2d 1050, 1053 (S.D. Cal. 1999); Fed. R. Civ. P. 34, adv. comm. note.[79]

2   Parties may also obtain computer hard drives for testing pursuant to a Rule 34

3   request. See, e.g., Superior Consultant Co. v. Bailey, 2000 WL 1279161, at *13

4   (E.D. Mich. Aug. 22, 2000) (ordering defendants to "create and produce to defense

5   counsel a backup file of defendant Bailey's laptop computer, and a backup file of

6   any personal computer hard-drive to which defendant Bailey has had access at any

7   time"). In fact, recent amendments to Rule 34 and the accompanying Committee

8   Notes make clear that parties may test computer hard drives.[80]  Nonetheless, Bryant

9   has refused to produce or permit Mattel to inspect the hard drives from his

10  computers despite Mattel's offer to bear the costs of the forensic analysis. He should

11  be compelled to do so.

12          There are three different computers that Mattel is aware of that are

13  relevant here. First, Bryant purchased a desktop computer in October 2000 (the

14  "Desktop").[81]  Bryant says he used this computer for a period of time and then gave

15  it to his niece.[82]  Second, Bryant purchased a laptop computer in November 2001.[83]

16  Third, Bryant testified that he used his parent's computer for a time, including

17

18  [79]  Mattel's requests also explicitly defined "documents" to include electronic
    data and documents. Zeller Dec. Exh. 4 at 3:8-23.

19  [80]  Under the new rule, "[a]ny party may serve on any other party a request (1) to
20  produce and permit the party making the request, or someone acting on the
    requestor's behalf, to inspect, copy, test, or sample any designated documents or
21  electronically stored information." According to the Advisory Committee Notes,
    the amendments to Rule 34 do not alter the discoverability of electronic information,
22  but clarify uncertainties in the former Rule by providing for testing of electronic
    information. See 2005 Committee Notes to Fed. R. Civ. P. 34 ("Rule 34(a)(1) is
23  also amended to make clear that parties may request an opportunity to test or sample
    materials sought under the rule in addition to inspecting and copying them. That
24  opportunity may be important for both electronically stored information and hard-
25  copy materials.").
    [81]  Bryant Deposition at 246:3-5, Zeller Dec. Exh. 7.
26  [82]  Bryant Deposition at 246:2-17, Zeller Dec. Exh. 7.

27

28

Y7209/1992206.8

-58-   EXHIBIT  7   PAGE  52

1   during the time that he purportedly created "Bratz."[84] Bryant used these computers

2   to communicate with and perform work for MGA.[85] The hard drives of these

3   computers likely contain responsive documents and relevant information that have

4   not yet been produced.

5        Mattel first learned of the existence of the Desktop during a telephone

6   conversation with Bryant's counsel.[86] In later correspondence, Bryant's counsel

7   indicated that he had looked at the hard drive of the Desktop but located no

8   responsive documents.[87] However, Bryant and his counsel have not made any effort

9   to conduct a forensic analysis of that hard drive or to determine whether any deleted

10   documents could be retrieved and produced.[88] Because Bryant apparently had not

11   created any forensic copy of that (or any other) hard drive, Mattel requested that

12   Bryant's counsel take possession of the hard drives to ensure that any evidence they

13   may contain is not destroyed.[89]

14        Compelling the production of the hard drives to Mattel is appropriate

15   for two principal reasons. First, it is appropriate to ensure that evidence is not lost

16   and to permit Mattel to ascertain whether any relevant materials have been deleted.

17   Mattel should be permitted to make mirror-images of the hard drives of each

18   computer. Even if the evidence on Bryant's computers has been deleted, the hard

19   drives must be produced because deleted records are discoverable. See Simon

20   Property Group L.P. v. mySimon, Inc., 194 F.R.D. 639, 640-41 (S.D. Ind. 2000)

21   (holding that plaintiff case was entitled to attempt to recover deleted computer files

22   from computers used by employees of the defendant to develop evidence supporting

---

[83]   Bryant Deposition at 247:25-248:2, Zeller Dec. Exh. 7.
[84]   Bryant Deposition at 245:25-246:2, Zeller Dec. Exh. 7.
[85]   Zeller Dec. ¶ 27.
[86]   Zeller Dec. Exh. 36.
[87]   Zeller Dec. ¶ 27, Exh. 28.
[88]   Zeller Dec. ¶ 27.

EXHIBIT __7__ PAGE __53__

07209/1992206.8

1    its claims: "computer records, including records that have been 'deleted,' are

2    documents discoverable under Fed. R. Civ. P. 34.").

3            Second, Mattel is entitled to review the hard drives to determine

4    whether the computers contain additional responsive documents. The evidence

5    suggests they do. Bryant's counsel has represented that he looked at one hard drive

6    for responsive documents, but it is not clear that he looked for or recovered deleted

7    data from that hard drive or attempted to examine the other computers at all.[90] What

8    is clear is that there are numerous deficiencies in Bryant's production, including

9    things that likely are on the hard drives.

10           Bryant used e-mail in his exchanges with MGA and others pertaining to

11   Bratz.[91] In a Bratz-related letter, Bryant specifically invited the recipient to contact

12   him by e-mail.[92] However, Bryant has not turned over even hard copies of some

13   responsive e-mails or their attachments. MGA, for example, produced e-mail

14   messages that Bryant exchanged with MGA in 2000.[93] Bryant did not produce these

15   e-mails in any form.[94] Given the dates on the e-mails, it is likely that files

16   containing these and other e-mails are on the hard drive of his Desktop. Bryant's

17   entire production contains only a few pages of computer-generated documents: a

18   ─────────────

19   [89]   Zeller Dec. ¶ 28, Exh. 29.

     [90]   Zeller Dec. ¶¶ 27 & 28, Exhs. 28 & 29. In the Joint Stipulation, Bryant
20   remarked that "Mattel's unsubstantiated comment that Bryant's counsel 'apparently
     has made no effort to look for or recover deleted data from [the Desktop's] hard
21   drive and made no effort to examine the other computers at all' is a complete
     falsehood." Joint Stip. at 65:7-10, Zeller Dec. Exh. 1. Recently, however, Bryant
22   acknowledged that he *has not even located* the two computers at issue other than the
     Desktop. Zeller Dec. ¶ 28. Further, Bryant has never shown that he searched for
23   deleted files. Id.

24   [91]   Zeller Dec. Exhs. 20, 21 & 31.
     [92]   Zeller Dec. Exh. 33 at BRYANT 00376.
25   [93]   Zeller Dec. Exhs. 20 & 21.
     [94]   Zeller Dec. ¶¶ 20 & 21.
26

27

28

172091/1992206.8

EXHIBIT 7   PAGE 54

1   few e-mail messages, four letters, and a résumé.[95]  Mattel is entitled to inspect the

2   hard drives of Bryant's computers to determine whether they contain additional

3   responsive documents.

4          Bryant may argue that his "personal" computers are immune from

5   discovery.  That is incorrect.  Courts permit inspection of home computers.  See,

6   e.g., Simon Property Group L.P., 194 F.R.D. at 640-41 (holding that plaintiff in

7   trademark case was entitled to attempt to recover deleted computer files from

8   computers used by employees of the defendant -- whether such computers were at

9   home or at work -- to develop evidence supporting its claims); Superior Consultant

10  Co., 2000 WL 1279161, at *13 (E.D. Mich. Aug. 22, 2000) (ordering defendants to

11  "create and produce to defense counsel a backup file of defendant Bailey's laptop

12  computer, and a backup file of any personal computer hard-drive to which defendant

13  Bailey has had access at any time").  Such an inspection is particularly appropriate

14  where, as here, the responding party used the computer for business purposes.  Of

15  course, Bryant may produce his hard drives subject to the Protective Order.  Also,

16  Mattel has offered, and remains willing, to pay the costs involved in collecting and

17  copying Bryant's computers.[96]

18      E.    **The Court Should Order Bryant To Complete His Production**

19          Overall, Bryant's documents bear indicia of incompleteness, and some

20  appear to have been affirmatively sanitized to obscure the timing and recipients of

21  relevant communications relating to the Bratz project.  Thus, Bryant's production

22  contains:

23      •    Faxed documents that bear neither a fax header nor include a fax cover
24           sheet and/or do not include all of the faxed pages;[97]

25  _____
    [95] Zeller Dec. Exhs. 31, 32 & 33.
26  [96] Zeller Dec. Exh. 44.
27  [97] Proctor Dec. Exh. 18; Zeller Dec. Exh. 16.

28

07209/1992206.8

# EXHIBIT 8



CONFORMED

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Plaintiff and Cross-
   Defendant Mattel, Inc.

8

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)
13                      Plaintiff,
                                       Consolidated with
14       vs.                           Case No. CV 04-09059
                                       Case No. CV 05-02727
15
    MATTEL, INC., a Delaware           **DISCOVERY MATTER**
16  corporation,
                                       [To Be Heard By Discovery Master
17                      Defendant.     Hon. Edward Infante (Ret.) Pursuant to
                                       the Court's Order of December 6, 2006]
18
                                       [PUBLIC REDACTED]
19  AND CONSOLIDATED ACTIONS           DECLARATION OF MICHAEL T.
                                       ZELLER IN SUPPORT OF MATTEL,
20                                     INC.'S MOTION TO COMPEL
                                       PRODUCTION OF DOCUMENTS BY
21                                     CARTER BRYANT

22                                     Date:  TBA
                                       Time:  TBA
23                                     Place:  TBA

24                                     Discovery Cut-off:  None Set
                                       Pre-trial Conference:  None Set
25                                     Trial Date:  None Set

26

27
              EXHIBIT   8   PAGE  56
28

07209/2027175.1

Court stamp:
FILED
CLERK, U.S. DISTRICT COURT
JAN - 4 2007
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

# DECLARATION OF MICHAEL T. ZELLER

I, Michael T. Zeller, declare as follows:

1.      I am a member of the bars of the States of California, New York and Illinois and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.      Attached as Exhibit 1 is a true and correct copy of excerpts from the Un-redacted Joint Stipulation Re: Mattel's Motion To Compel Production of Documents, filed on January 6, 2005.

3.      Attached as Exhibit 2 is a true and correct copy of excerpts from the Court's Order Denying Mattel's Motion for Appointment of Expert Witnesses, dated August 10, 2006.

4.      Attached as Exhibit 3 is a true and correct copy of Bryant's Objections and Responses to Mattel's First Set of Requests for Production of Documents and Tangible Things dated July 16, 2004.

5.      Attached as Exhibit 4 is a true and correct copy of Mattel's First Set of Requests for Production of Documents and Tangible Things dated June 14, 2004.

6.      Attached as Exhibit 5 is a true and correct copy of an October 20, 2004 letter from Mr. Jacoby, counsel for Bryant, to myself, attaching Bryant's privilege log in this action. This log references only four documents.

7.      Attached as Exhibit 6 is a true and correct copy of Minutes of Proceedings in Judge Block's Courtroom dated June 20, 2006.

8.      Attached as Exhibit 7 is a true and correct copy of excerpts from the deposition of Carter Bryant.

EXHIBIT __8__ PAGE __57__

07209/1990724.4

-2-

1          9.      Attached as Exhibit 8 is a true and correct copy of excerpts from
2   the transcript of the deposition of Anna Rhee ("Rhee Deposition"), which
3   commenced on February 3, 2005.

4          10.     Attached as Exhibit 9 is a true and correct copy of excerpts from
5   the transcript of the deposition of Steven Linker ("Linker Deposition"), which took
6   place on September 13, 2006.

7          11.     Attached as Exhibit 10 is a true and correct copy of Mattel's
8   Conflict of Interest Questionnaire signed by Bryant on January 4, 1999.

9          12.     Attached as Exhibit 11 is a true and correct copy of the
10  Stipulated Protective Order in this case.

11         13.     Attached as Exhibit 12 are true and correct copies of the Court's
12  Civil Minutes of March 23, 2005, ordering Mr. Larian to appear for deposition and
13  the Court's Civil Minutes of June 16, 2006, ordering Mr. Larian to appear for
14  deposition.

15         14.     Attached as Exhibit 13 are true and correct copies of the Court's
16  Orders compelling Bryant's deposition, dated October 5, 2004 and October 19,
17  2004.

18                    **Bryant's Incomplete Production of Documents**

19         15.     Mattel has produced more than 17,000 pages of documents to
20  date and will be producing thousands more pages of documents on or about January
21  4, 2007, which is when Mattel and MGA are currently scheduled to exchange
22  additional documents.  In contrast, Bryant, who has not agreed to supplement his
23  production on January 4, 2007 or at any other time, has produced only about 1,600
24  pages of documents over the course of this litigation.  Bryant first produced
25  documents in this case on August 12, 2004.  Attached as Exhibit 14 is a true and
26  correct copy of the August 12, 2004 letter from Keith Jacoby, Bryant's counsel of
27  record in this case, that accompanied Bryant's first production.

28

EXHIBIT   8   PAGE 58          -3-

1        16.    Bryant's production consists of a variety of materials that are

2   largely undated, and they represent a hodge-podge of correspondence, notes,

3   drawings and photocopies from magazines.  There was no indication in Bryant's

4   production about the documents' source or the manner in which they were kept.

5   Bryant has produced documents that demonstrate that he affirmatively omitted

6   information about their sources and the manner in which they were kept.  See e.g.,

7   Exhs. 15 & 16.  Additionally, the overwhelming majority of the drawings produced

8   by Bryant are undated.  Attached as Exhibit 15 is a true and correct copy of a sample

9   of the documents produced by Bryant on August 12, 2004, Bates Nos. BRYANT

10  00188, 00193, 00189-91, 00196, and 00198-200, as received by Mattel.

11       17.    Attached as Exhibit 16 is a true and correct copy of a faxed

12  document as produced by Bryant, Bates No. BRYANT 1220.  The fax number is

13  obliterated from the header of the document, and no fax cover sheet was produced

14  identifying the sender and recipient of the fax.

15       18.    Attached as Exhibit 17 is a true and correct copy of a fax cover

16  sheet for a fax from Bryant to Cecilia Kwok on October 26, 2000, Bates No.

17  BRYANT 00219, as produced by Bryant.  The cover sheet indicates that, including

18  the cover sheet, the fax transmission was 6 pages long.  The "COMMENTS" section

19  of the cover sheet indicate that a "'BRATZ' BACKPACK/DOLLCASE DESIGN"

20  and fabrication information were attached to the original fax.  The attachment to this

21  fax cover sheet has not been produced by Bryant.

22       19.    Bryant has failed to produce a number of royalty statements,

23  including any documents showing payments for his services on an MGA project

24  known as "Angel," which Bryant acknowledged in deposition he worked on during

25  his Mattel employment.  See Exh. 7 (at 178:3-18, 195:21-25, and 196:1-20).  Of the

26  royalty statements and other financial information that Bryant has produced, many

27  documents have been redacted to the point where they are indecipherable.  Attached

28  as Exhibit 18 are true and correct copies of a representative selection of the royalty

37209/1990724.4

-4-

ZELLER DECLARATION

EXHIBIT __8__ PAGE __59__

1    statements and financial documents produced by Bryant on November 1, 2004,
2    Bates Nos. BRYANT 00728-781. Attached as Exhibit 19 are true and correct
3    copies of check receipts showing payment to Bryant for work on an MGA project
4    called "Sugar Planet," produced by Bryant on November 1, 2004, Bates Nos.
5    BRYANT 01194 & 01196, as received by Mattel.

6           20.    Attached as Exhibit 20 is a true and correct copy of an e-mail
7    exchange between Isaac Larian and Carter Bryant dated October 5, 2000, as
8    produced by defendant MGA on August 12, 2004, Bates No. MGA000423. Bryant
9    has never produced this document, nor has he produced any other written
10   communications regarding marketing and/or advertising ideas that he provided to
11   MGA.

12          21.    Attached as Exhibit 21 is a true and correct copy of an e-mail
13   exchange between Carter Bryant and Paula Treantafelles, dated October 24, 2000, as
14   produced by defendant MGA, Bates No. MGA000427-428. This document reflects
15   that there had been facsimile communications between Bryant and Kinuyo
16   Shichijyo, a Mattel vendor, in the Fall of 2000. Bryant has never produced this
17   document.

18          22.    Attached as Exhibit 22 is a true and correct copy of the
19   "Modification and Clarification of the 2000 Agreement" between Bryant and MGA,
20   bearing various dates in May 2004, which was produced by MGA on August 12,
21   2004, Bates Nos. MGA 000429-434, as received by Mattel. Bryant has never
22   produced a copy of this agreement in any form.

23          23.    Attached as Exhibit 23 is a true and correct copy of an October
24   25, 2000 e-mail message with attached pictures of a doll sculpture from Mercedeh
25   Ward to a variety of recipients, including Bryant, produced by MGA on August 12,
26   2004, as received by Mattel.

27          24.    Attached as Exhibit 24 is a true and correct copy of two pages
28   from the index of a Notary Public, Bates Nos. BRYANT 00928-929, as produced by

07209/1990724.4

-5-

EXHIBIT __8__ PAGE _60_

1   Bryant. The first entry indicates that Bryant had "sketches of doll idea" notarized on

2   August 26, 1999, including "2 males." Attached as Exhibit 25 are true and correct

3   copies of black and white drawings of male figures that were notarized by

4   Jacqueline Ramona Prince on August 26, 1999, Bates Nos. BRYANT 00207 and

5   00210, as produced by Bryant and received by Mattel. Although Bryant was

6   employed by Mattel in August 1999, he has produced virtually no information about

7   these male doll designs or about the male dolls known as "Boyz" that have been sold

8   as part of the Bratz line.

9         25.   On November 1, 2004, Bryant produced some telephone records.

10   Attached as Exhibit 26 are true and correct copies of a representative sample of the

11   telephone records produced by Bryant on November 1, 2004, Bates Nos. BRYANT

12   01260-1285, as received by Mattel. Bryant has produced no telephone bills for a

13   carrier known as "tti National, Inc." for any date prior to October 23, 2000 for one

14   phone number or any date prior to October 26, 2000 for another phone number.

15         26.   Bryant has attempted to justify his refusals to provide answers

16   and his production of heavily redacted documents on the basis of his alleged privacy

17   right. Attached hereto as Exhibit 27 is a true and correct copy of the Dallas County

18   Court at Law's Order Granting Mattel, Inc.'s Motion to Compel Production of

19   Documents, dated December 10, 2004. The Order compelled the production of SBC

20   Communications' telephone records for telephone numbers and accounts for and/or

21   in the name of Carter H. Bryant from January 1, 1998 through January 1, 2001 that

22   had been the subject of a Mattel subpoena. Bryant had objected to the production of

23   such documents on privacy grounds, which objections were overruled by the Texas

24   Court's Order.

25         **Bryant's Computer Hard Drives**

26         27.   Bryant used at least three computers during the relevant time

27   periods that Mattel is aware of to date. Bryant's counsel has represented in a letter, a

28   true and correct copy of which is attached hereto as Exhibit 28, that he (or someone

J7209/1990724.4

-6-

EXHIBIT ___8___ PAGE __(6)__

1   on his behalf) had looked on the hard drive of one of Bryant's computer (which had

2   been given away), but located no responsive documents. However, during meet and

3   confer sessions, Bryant's counsel confirmed that no effort has been made to conduct

4   a forensic analysis of that hard drive or to determine whether any deleted documents

5   could be retrieved. Bryant's counsel, Mr. Jacoby, also has refused to produce the

6   hard drive of that computer, even though Mattel offered to bear the cost of the

7   analysis by a forensics expert.

8         28.   Mattel urged Bryant to secure possession of all relevant

9   computer hard-drives to prevent the possible destruction of evidence. For example,

10  in a letter dated November 17, 2004, a true and correct copy of which is attached as

11  Exhibit 29, Mattel asked Bryant's counsel to secure possession of these drives.

12  Bryant and his counsel have not made any effort to do so as to any of the computers.

13  Further, for the first time during a teleconference on July 26, 2006, counsel for

14  Bryant revealed to me that Bryant purportedly has not located the other two

15  computers he acknowledged using during the relevant time period.

16        29.   Mattel has received documents from Bryant that reveal his use of

17  computers during the relevant period of time. Attached as Exhibit 30 is a true and

18  correct copy of a computer-generated letter dated January 20, 2001 from Bryant to

19  "Cecelia," as produced by Bryant on August 12, 2004, Bates No. BRYANT 00376.

20  The attachments referenced in the letter were not produced.

21        30.   Attached as Exhibit 31 is a true and correct copy of an e-mail

22  message and attached fax between "K. Shichijyo" and Bryant, dated September 18,

23  2000 and bearing Bates Nos. BRYANT 01202-1203, as produced by Bryant to

24  Mattel on November 1, 2004. Attached as Exhibit 32 is a true and correct copy of a

25  computer-generated letter from Bryant to "Kinuyo" dated September 18, 2000, with

26  fax confirmation sheet, Bates No. BRYANT 01200-01, as produced by Bryant. The

27  exchange between Mr. Shichijyo and Bryant refers to other, earlier exchanges

28  between them that have not been produced by Bryant.

EXHIBIT __8__ PAGE _62_

1         31.    Attached as Exhibit 33 are true and correct copies of computer-

2 generated letters, Bryant's computer-generated résumé, and a list of e-mail

3 addresses, all as produced by Bryant and received by Mattel, Bates Nos. BRYANT

4 00346, 00377, 00376, 00870-872. Bryant also testified that he regularly used e-mail

5 as a means of communication about the development of Bratz. <u>See</u> Exh. 7 (at

6 400:11-21).

<b><u>Mattel's Efforts To Meet and Confer</u></b>

8         32.    I met with Mr. Jacoby on August 25, 2004 to attempt to resolve

9 disputes regarding Bryant's responses to Mattel's requests for production and

10 deficient production. Mattel's attempt to obtain further documents informally has

11 been ongoing since then. Bryant made two subsequent productions of documents on

12 October 14, 2004 and November 1, 2004 respectively. However, Bryant refuses to

13 cure most of the deficiencies in his production and responses, and he has never

14 amended his responses.

15         33.    Attached as Exhibit 34 is a true and correct copy of a letter from

16 counsel for Mattel to counsel for Bryant dated October 18, 2004, outlining

17 deficiencies in Bryant's objections and responses, as well as his production. The

18 objections and responses to which Mattel's counsel refers are those served in

19 response to Mattel's Requests for Production served in state court.

20         34.    Attached as Exhibit 35 is a true and correct copy of a letter from

21 counsel for Mattel to counsel for Bryant dated October 22, 2004 letter, identifying

22 the deficiencies in Bryant's privilege log. Bryant refuses to supplement his log.

23         35.    During a telephone conversation on October 25, 2004 between

24 counsel for Mattel and counsel for Bryant, counsel for Bryant acknowledged the

25 existence of documents relating to Bryant's agreements with MGA, including one or

26 more drafts of the agreement attached as Exhibit 3 to the accompanying Proctor

27 Declaration, as well as correspondence or notes. Attached as Exhibit 36 are true and

28 correct copies of letters from counsel for Mattel to counsel for Bryant dated October

EXHIBIT __8__ PAGE __63__

1  27 and 28, 2004, confirming aspects of that conversation, including that Mr. Jacoby

2  had in his possession non-privileged documents that were responsive to Mattel's

3  discovery requests and that Bryant was not relying on his "vagueness" and

4  "ambiguity" objections to the wording of Mattel's requests, and once again detailing

5  the deficiencies in Bryant's objection, responses, and production.

6          36.    Bryant's attorneys have at various times agreed to inquire into the

7  omissions in his production. For example, attached as Exhibit 37 is a true and

8  correct copy of a November 1, 2004 letter from Keith Jacoby to counsel for Mattel,

9  in which Mr. Jacoby agreed to investigate the gaps in Bryant's production.

10  However, Bryant's counsel never responded further to Mattel's requests.

11          37.    Therefore, Mattel filed a motion to compel production of

12  Bryant's documents on January 6, 2005. <u>See</u> Exh. 1. However, in an Order dated

13  January 6, 2006, a true and correct copy of which is attached as Exhibit 38, Judge

14  Block stayed resolution of Mattel's motion to compel pending resolution of the

15  parties' jurisdictional disputes.

16          38.    After the resumption of discovery in 2006, the parties met and

17  conferred in Judge Block's courtroom on June 20, 2006, and achieved apparent

18  agreement with respect to Bryant's deficient production. The parties notified Judge

19  Block that they would submit a stipulation and order memorializing their agreement.

20  <u>See</u> Exh. 6. However, over the course of the four ensuing months, Bryant backed

21  away from the parties' initial agreement.

22          39.    Three days after the conference in Judge Block's chambers, I

23  wrote a letter to Keith Jacoby, attaching a draft Stipulation and Proposed Order

24  embodying the parties' resolution of Mattel's Motion to Compel reached at the meet

25  and confer in Judge Block's courtroom. Attached hereto as Exhibit 39 is a true and

26  correct copy of my letter to Mr. Jacoby, dated June 23, 2006. I received no

27  response. One week later, I wrote a second letter to Mr. Jacoby inquiring when I

28  could expect a response to my June 23, 2006 letter. A true and correct copy of my

-9-

EXHIBIT _8_ PAGE _64_

1   second letter is attached hereto as Exhibit 40, dated June 30, 2006. Attached hereto

2   as Exhibit 41 is a true and correct copy of Mr. Jacoby's e-mailed response to me,

3   dated July 3, 2006, in which Mr. Jacoby promises to look at the draft that day.

4   Nonetheless, as of July 7, 2006, I still had not received a substantive response and

5   wrote Mr. Jacoby again. Attached hereto as Exhibit 42 is a true and correct copy of

6   my letter to Mr. Jacoby, dated July 7, 2006.

7          40.    When I finally received Mr. Jacoby's proposed draft stipulation,

8   it was not consistent with the parties' original agreement from June 20, 2006.

9   Attached hereto as Exhibit 43 is a true and correct copy of my colleague, John

10  Quinn's, e-mail to Mr. Jacoby, dated July 20, 2006, in which Mr. Quinn outlines the

11  problems with Mr. Jacoby's proposed changes. Throughout the remaining four

12  months, the parties attempted to reach agreement, exchanging numerous e-mails as

13  well as discussing the stipulation via teleconference and in person; however, Bryant

14  insisted upon injecting new demands into the stipulation. Most notably, Mr. Jacoby

15  demanded that Mattel waive its right to all further discovery in connection with its

16  Requests in return for Bryant's signature on the stipulation. On October 6, 2006,

17  Mr. Quinn informed Mr. Jacoby that Mattel had no alternative but to proceed with a

18  motion. Attached hereto as Exhibit 44 is a true and correct copy of Mr. Quinn's e-

19  mail Mr. Jacoby, Ms. Dale Cendali and myself, dated October 6, 2006.

20         41.    As of today, Bryant refuses to produce even documents he

21  acknowledges Mattel is entitled to. As set forth in the final version of the parties'

22  draft stipulation, a true and correct copy of which is attached to the email from

23  myself to Mr. Jacoby attached hereto as Exhibit 45, Mr. Jacoby agreed in principle

24  that the following areas are discoverable: (1) all written agreements relating to work

25  Bryant performed for MGA prior to June 30, 2001, and all amendments to such

26  agreements; (2) any relevant documents found as a result of a reasonable search,

27  including forensic analysis, of the hard drive of the computer Bryant says he has

28  located that he used during the relevant time period; (3) all documents, irrespective

EXHIBIT _8_ PAGE _65_

1  of the dates on which the documents were created, and including records of

2  payments and documents relating to the filing of patent, copyright and trademark

3  applications, relating to (a) work on Bratz prior to January 1, 2001, (b) work Bryant

4  performed with, for or on behalf of MGA after January 1, 2001 relating to the

5  release of the first generation of Bratz dolls, and (c) any payments received by

6  Bryant for work he performed with, for or on behalf of MGA while Bryant was

7  employed by Mattel; and (4) all documents and tangible things Bryant obtained

8  from Mattel during the course of his employment at Mattel.  However, Bryant has

9  never produced these documents.

10         42.  As directed by the Discovery Master during the December 19,

11  2006 tele-conference , counsel Mattel met and conferred with Bryant regarding this

12  motion again on December 28, 2006.  The parties could not reach resolution.

13  Bryant remains unwilling to produce any documents, including even those he agrees

14  are discoverable, unless Mattel stipulates that it cannot obtain all other documents at

15  issue in this motion.  Mr. Jacoby stated that Bryant would not produce "one iota"

16  more than what was listed in the last draft stipulation circulated between the parties,

17  and would not produce any documents (including those Bryant otherwise has agreed

18  to produce) unless Mattel agreed to waive its right to pursue all other withheld

19  documents and other issues presented by this motion.

20                    **Bryant's Other Discovery Abuses**

21         43.  On June 17, 2004, Mattel served its first Notice of Deposition for

22  Bryant, a true and correct copy of which is attached as Exhibit 46.

23         44.  On June 18, 2004, immediately after Mattel noticed Bryant's

24  deposition, Bryant filed with this Court an *ex parte* application that sought a

25  complete stay of discovery by Mattel, including Bryant's deposition.  The Court

26  denied the entirety of Bryant's application, including his stay requests.  Attached as

27  Exhibit 47 is a true and correct copy of the Court's Order dated June 22, 2004.

28

-11-

EXHIBIT  8  PAGE  66

1         45.    On July 11, 2004, due to Bryant's failure to meet and confer

2  within the time mandated by the <u>Local Rules</u>, Mattel sent Bryant its portions of a

3  Joint Stipulation on Mattel's motion to compel Bryant's deposition. Attached as

4  Exhibit 48 is a true and correct copy of my letter to Douglas Wickham dated

5  July 11, 2004, attaching Mattel's portions of a Joint Stipulation for Mattel's motion

6  to compel Bryant's deposition.

7         46.    On July 12, 2004, in its continuing efforts to resolve Bryant's

8  failure to appear for deposition, Mattel sent a letter again offering to continue to

9  meet and confer regarding Bryant's refusal to be deposed to avoid burdening the

10  Court. A true and correct copy of this letter is attached as Exhibit 49.

11         47.    Bryant agreed to meet. At the meeting on July 13, 2004,

12  Bryant's counsel, Keith Jacoby and Douglas Wickham, stated that a motion to

13  compel the deposition was "unnecessary" because Bryant's counsel were giving their

14  "word as attorneys" that Bryant would appear for deposition in St. Louis during the

15  week of August 16, 2004. This representation was confirmed in writing by Bryant's

16  counsel the following day. Attached as Exhibit 50 is a true and correct copy of a

17  letter I received from Keith Jacoby dated July 14, 2004. Mr. Jacoby's letter

18  acknowledged the parties' "agreement" that Bryant would appear for deposition on

19  August 17, 2004 and reiterated that "Mr. Wickham and I have given our

20  representations as counsel" that Bryant would appear, absent "an unforeseen

21  medical emergency or other exigent circumstances." Mr. Jacoby further stated: "In

22  my entire career, I have never had a witness I was representing spontaneously refuse

23  to appear, nor has Mr. Wickham. I do not believe this will occur here, and ask that

24  you accept the good faith representation of Mr. Wickham and I, rather than waste

25  the Court's time and resources with a preemptive discovery motion." Bryant's

26  counsel also stated at the July 13 meeting that requiring a signed Stipulation to

27  ensure Bryant's appearance at the agreed-upon time and place was "unnecessary"

28

07209/1990724.4

-12-

EXHIBIT __8__ PAGE _67_

1   and "insulting" because their "word as attorneys" was "good enough" to ensure that

2   Bryant would appear for deposition as agreed.

3          48.    Rather than burden the Court with a motion, Mattel relied on the

4   representations of Bryant's counsel and made arrangements to take Bryant's

5   deposition. Attached as Exhibit 51 is a true and correct copy of my letter to Keith

6   Jacoby dated July 14, 2004, which further confirmed Bryant's counsel's

7   representations as attorneys that Bryant would appear for deposition at the agreed-

8   upon time and place. Mattel's July 14 confirming letter, which Bryant never

9   disputed, stated:

10         While Mattel did not agree with the delay of Mr. Bryant's previously noticed

11         deposition until August for reasons that I have already stated and does not

12         believe that the statements in your letter of earlier today accurately reflect

13         Mattel's position in all respects, we will accept *your representations as an*

14         *attorney that Mr. Bryant will appear for deposition at the agreed-upon*

15         *location and time.* Thus, as I mentioned over the phone today, *based upon*

16         *those representations*, we will not be going forward at this juncture with a

17         motion to compel his deposition, without prejudice of course to our rights to

18         seek Court relief if circumstances change.

19   (Emphasis added.) Mattel's counsel then purchased plane tickets, arranged for

20   video and a court reporter at the deposition, obtained space in St. Louis for the

21   deposition, made hotel arrangements, and rearranged other client matters in order to

22   be free to travel to St. Louis for the deposition.

23         49.    On the afternoon of Friday, August 13, Bryant faxed to plaintiff,

24   without notice and without any discussion with Mattel beforehand, a letter

25   unconditionally canceling Bryant's scheduled deposition. Along with the letter from

26   Mr. Millman, Bryant sent to plaintiff a 58-page Joint Stipulation with regard to

27   Mattel's document discovery that Mr. Millman's August 13 letter cited as a

28   purported justification for refusing to produce Bryant for deposition.

'07209/1990724.4

-13-

ZELLER DECLARATION

EXHIBIT __8__ PAGE __68__

1        50.    On August 26, 2004, Mattel re-noticed Bryant's deposition for

2    Springfield, Missouri, where Bryant resides, for September 9, 2004, a date on which

3    Bryant had said that he was available. Attached as Exhibit 52 is a true and correct

4    copy of Plaintiff's Notice of Videotaped Deposition of Carter Bryant.

5        51.    Bryant yet again refused to appear for deposition. On September

6    1, 2004, in response to Bryant's counsel's oral statements that Bryant was refusing

7    to appear, my colleague, Gloria Donovan, met and conferred with Bryant's counsel

8    in yet another effort to avoid motion practice regarding Bryant's deposition.

9    Attached as Exhibit 53 is Ms. Donovan's letter of September 3, 2004 on the subject

10   of Bryant's deposition. Attached as Exhibit 54 is a true and correct copy of a letter

11   from Bryant's counsel, Dominic Messiha, dated September 7, 2004, in which Mr.

12   Messiha confirmed that "Mr. Bryant will not be appearing for deposition in Missouri

13   on September 9."

14       52.    Mattel then filed a motion with the Los Angeles County Superior

15   Court (where the case was then pending) to compel Bryant's deposition. On

16   September 3, 2004, Bryant also moved in the Superior Court for a protective order,

17   claiming (among other arguments) that he "needed" certain documents to prepare

18   for his deposition. Attached as Exhibit 55 is a true and correct copy of excerpts

19   from Bryant's Motion for a Protective Order and to Establish the Sequence and

20   Timing of Discovery.

21       53.    As shown in Exh. 13, the Superior Court granted Mattel's motion

22   to compel Bryant's deposition on October 5, 2004 and ordered Bryant to appear for

23   deposition twenty days after Mattel furnished a verification as to the "certain

24   documents" that Bryant claimed he needed before his deposition. As the Court's

25   ruling stated: "[I]t appears that Defendant wants Plaintiff to produce certain

26   documents before the deposition, which will assist Defendant in preparation of his

27   deposition . . . . Plaintiff is ordered to produce these documents or state in verified

28   responses that none exists, and after a diligent search and reasonable inquiry, there

-14-

EXHIBIT __8__ PAGE __69__

1  are no such documents in Plaintiff's possession, custody, or control." Twenty days

2  after that was done, the Court ruled, ***Defendant is ordered to be deposed***".

3  (Emphasis added.)

4          54.    Even after Mattel provided the verification (twice), however,

5  Bryant announced on October 14, 2004 that he still refused to be deposed as ordered

6  by the Superior Court. Accordingly, on October 19, 2004, Mattel filed a second

7  motion (by *ex parte*) to compel Bryant's deposition. The Superior Court rejected

8  Bryant's grounds for refusing to abide by the October 5 Order and compelled

9  Bryant, for the second time, to appear for deposition. As shown in Exh. 13, the

10 Superior Court specifically ordered Bryant's deposition to commence on November

11 4, 2004.

12          55.    On the afternoon of November 2, 2004, less than forty-eight

13 hours before that Court-ordered deposition was set to start, Bryant removed this

14 action for the second time. Mattel began Bryant's deposition on November 4, 2004.

15 Bryant obstructed the deposition with numerous instructions not to answer on such

16 matters as the details of the compensation that Bryant received from MGA. On

17 November 8, 2004, although Mattel had not completed Bryant's deposition, Bryant

18 and his counsel refused to allow it to be completed and unilaterally adjourned it.

19          56.    MGA has engaged in similar tactics, refusing to make its CEO,

20 Isaac Larian, available for deposition. As shown in Exh. 12, it took two orders and

21 an award of sanctions before Larian appeared for deposition.

22                      **Attorneys' Fees Incurred By Mattel**

23          57.    Mattel has incurred attorneys' fees and costs in excess of

24 $7,805.00 in bringing this motion. I spent more than 3 hours of time preparing the

25 motion, for a total of more than $1,800 at my billing rate of $600 per hour. B.

26 Dylan Proctor, a Quinn Emanuel partner, was also involved in preparing this

27 motion. Mr. Proctor spent more than 9 hours of his time in preparing this motion,

28

07209/1990724.4

-15-

ZELLER DECLARATION

EXHIBIT   8   PAGE   70

01/03/2007 19:02 FAX 7738668511        AA ADMIRALS CLUB CHICAGO                    ☒002/002

01-03-2007  04:59pm  From-QUINN EMANUEL              2136240643      T-282  P.002/002  F-812

1  for a total of more than $3,105 at his billing rate of $345 per hour.  Bridget Morris, a

2  Quinn Emanuel associate, also was involved in preparing this motion.  Ms.

3  Morris spent more than 10 hours of her time researching and preparing this motion,

4  for a total of more than $2,900 at her billing rate of $290 per hour.

5

6          I declare under penalty of perjury under the laws of the United States of

7  America that the foregoing is true and correct.

8          Executed this 3rd day of January, 2007, at Los Angeles, California.

9

10                              _____

11                              Michael T. Zeller

12

EXHIBIT 8 PAGE 71

# EXHIBIT 9

1   DOUGLAS A. WICKHAM (S.B. #127268)
    dwickham@littler.com
2   KEITH A. JACOBY (S.B. #150233)
    kjacoby@littler.com
3   LITTLER MENDELSON
    A Professional Corporation
4   2049 Century Park East, 5th Floor
    Los Angeles, CA  90067.3107
5   Telephone:  (310) 553-0308
    Facsimile:   (310) 553-5583
6
    Attorneys for Carter Bryant
7

8                 UNITED STATES DISTRICT COURT
9                CENTRAL DISTRICT OF CALIFORNIA
                      EASTERN DIVISION
10

11  CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)
                                         (consolidated with CV 04-9059 & 05-2727)
12                  Plaintiff,
                                         **DISCOVERY MATTER**
13        v.
                                         **[To Be Heard By Discovery Master Hon.**
14  MATTEL, INC., a Delaware             **Edward Infante (Ret.) Pursuant To The**
    Corporation,                         **Court's Order Of December 6, 2006]**
15
                    Defendant.           SEPARATE STATEMENT OF
16                                       DEFENDANT CARTER BRYANT IN
                                         OPPOSITION TO MATTEL'S MOTION
17                                       TO COMPEL

18                                       Hearing Date:  January 23, 2007
                                         Time:  8:15 a.m.
19                                       Place:  Telephonic

20                                       Discovery Cut-off:  None set
                                         Pre-trial Conference:  None Set
21                                       Trial Date:  None Set

22  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
23  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
24

25

26

27

28                                       BRYANT'S SEPARATE STATEMENT IN
                                         OPPOSITION TO MATTEL'S MOTION TO
                                         COMPEL

EXHIBIT _9_  PAGE _72_

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Bryant's Argument

Bryant agreed in the Stipulation to conduct a "reasonably diligent search for and produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with" (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation "Bratz" dolls that took place on or about June 2001; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel. Accordingly, Mattel's motion to compel Bryant to produce documents relating to registration and applications for registration is moot.

## VII.   BRYANT'S PRIOR PRODUCTION WAS PROPER.

Mattel incorrectly claims that Bryant asserted a "blanket objection to producing any document created after this lawsuit was filed in April 2004." Mattel completely misrepresents the issue and Bryant's position. Bryant did not and does not object to producing "responsive, non-privileged documents generated after the suit was filed." Bryant only objects to having to log as privileged any post litigation communications with counsel. Mattel has misconstrued this caveat as a wider refusal to produce documents created after the lawsuit was filed. No such position has been taken.

### A.   None Of The Information Redacted From The Produced Phone Records Relate To MGA.

Bryant agreed in the Stipulation that he will provide a signed verification attesting that none of the information redacted from phone records that were produced to Mattel relate or refer in any way to MGA, "Bratz" or any other project that Bryant worked on with, for or on behalf of MGA prior to June 1, 2001.

### B.   Bryant Should Not Have To Identify On A Privilege Log Every

EXHIBIT 9 PAGE 73

38.

BRYANT'S SEPARATE STATEMENT IN
OPPOSITION TO MATTEL'S MOTION TO
COMPEL

1 **Communication He Has Had With His Counsel.**

2     Mattel mischaracterizes Bryant's good-faith assertion of privilege by

3 professing that Bryant has listed only 4 documents on his privilege log "likely because

4 most documents he has withheld on privilege grounds are not actually privileged–and

5 because the dates of these documents alone may refute Bryant's claims about the

6 timing and scope of his communications with MGA." Mattel's contention holds no

7 water. Since Mattel filed this action in April 2004, Bryant has had numerous

8 communications with his counsel regarding issues arising out of this lawsuit. Bryant

9 objected in order to reserve his right not to place on a privilege log the innumerable

10 privileged documents and documents containing attorney work product that have been

11 created since the inception of this lawsuit. Bryant respectfully requests this Court not

12 to order Bryant to serve a privilege log concerning his confidential communications

13 with his counsel which are undeniably protected by the attorney-client privilege.

14     C.  **Bryant's Hard Drive**

15     Bryant confirmed in the Stipulation that he made a diligent and

16 reasonable effort to locate all three computers referenced at his deposition, and that

17 after that search, he is only able to locate one of the old computers that he used and/or

18 owned. Bryant has also expressly agreed to conduct a reasonable and diligent search

19 for responsive documents, including a forensic search for data fragments, deleted

20 documents and data not readily viewable absent forensic analysis, and will produce

21 responsive documents in accordance with the stipulation. Accordingly, Mattel's

22 motion to compel Bryant's hard drive is no longer an issue.

23

24 **VIII. MATTEL SHOULD BE SANCTIONED**

25     The only party that should be sanctioned is Mattel. For the past two and

26 half years, Mattel has taken contradictory positions regarding the amount of money in

27 controversy in order to manipulate the forum and the scope of discovery, and has now

28 unilaterally reneged on an exhaustively negotiated stipulation because it does not want

BRYANT'S SEPARATE STATEMENT IN OPPOSITION TO MATTEL'S MOTION TO COMPEL

EXHIBIT 9 PAGE 74

1  to formally modify a single request. Mattel's counsel likely knew its requests were

2  facially improper when they engaged in a six month long negotiation to substantially

3  limit the requests, only to unceremoniously renege on the stipulation at the last second

4  and move on every request. Bryant has incurred more than $20,000 in fees

5  negotiating the stipulation that represented a considerable compromise on his part of

6  the issues raised in these requests.

7        Mattel's sweepingly overbroad and duplicative requests cannot stand on

8  their own and its tactics of intimidation should not be awarded. Its motion should be

9  denied and, to the extent sanctions are awarded, they should be awarded against

10  Mattel. Bryant's counsel has incurred in excess of $8,700 in fees in opposing this

11  motion, and pursuant to FRCP 37(a)(4)(B), Bryant should be awarded that amount in

12  partial compensation for the cost of opposing this motion. The stipulation of the

13  parties should be enforced as the recommendation of the Discovery Master, and as

14  such should end any further law and motion on the document requests moved upon in

15  the January 2005 and the current motion.

16

17  January 11, 2007

18                    DOUGLAS A. WICKHAM
                         KEITH A. JACOBY

19                    LITTLER MENDELSON
                  A Professional Corporation

20

21                    Keith A. Jacoby

22                    Attorneys for Defendant

23                    CARTER BRYANT

24

25

26  Firmwide:81898672.3 028307.1010

27

28

         BRYANT'S SEPARATE STATEMENT IN
         OPPOSITION TO MATTEL'S MOTION TO
         COMPEL

EXHIBIT __9__ PAGE __75__