1    Mattel confidential and proprietary information regarding Mattel's future product

2    lines, advertising and promotional campaigns and product profitability.

3            73.    On September 26, 2005, Brisbois resigned from Mattel to take a

4    position as Vice President of Sales at MGA.  Mattel is informed and believes that

5    in that position Brisbois has responsibility for MGA's accounts with both TRU and

6    Wal-Mart.  During Brisbois' exit interview she was specifically asked whether she

7    was "taking anything."  Brisbois responded, "No."  Both during and after her exit

8    interview, Brisbois was advised by Mattel of her obligations to preserve Mattel's

9    confidential and proprietary information.

10           74.    Mattel is informed and believes that Brisbois spoke with Isaac

11   Larian, MGA's CEO, on September 22, 2005 at approximately 8:30 p.m., when he

12   called Ms. Brisbois at her home.  Mattel subsequently learned that on the same day

13   that she spoke with Mr. Larian and four days before she resigned, Brisbois copied

14   approximately 45 Mattel documents on to a USB or "thumb" drive with the volume

15   label "BACKPACK."  On information and belief, Brisbois removed the thumb

16   drive from Mattel Canada's office by concealing it in her backpack or gym bag the

17   last time that she left that office.  These documents contained Mattel trade secret

18   and proprietary information, and included:

19        •   a document containing the price, cost, sales plan and quantity of every

20            Mattel product ordered by every Mattel customer in 2005 and 2006;

21        •   the BARBIE television advertising strategy and information concerning

22            sales increases generated by television advertisements;

23        •   competitive analysis of Mattel vis-à-vis its competitors in Canada;

24        •   an analysis of Mattel's girls business sales beginning in 2003 and

25            forecasts through 2006;

26        •   profit and loss reviews for Mattel's products being sold in Wal-Mart,

27            including margins and profit in not only Canada, but in the United

28            States and Mexico; and

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

EXHIBIT 22 PAGE 263

1      • a document containing the product launch dates and related advertising
2        for all Mattel new products between Fall 2005 and Spring 2006.
3      75.   After Mattel discovered that Brisbois had copied these sensitive
4  documents to a thumb drive, Mattel notified Canadian law enforcement authorities.
5  Canadian law enforcement authorities recovered from Brisbois a thumb drive with
6  the volume label "BACKPACK" containing the documents that Brisbois had
7  copied from Mattel's computer system.  Mattel later learned that while she was
8  working as a Vice President of Sales at MGA, Brisbois accessed and modified
9  documents on that thumb drive.
10      76.   After joining MGA, Brisbois repeatedly traveled to MGA's
11  offices in Van Nuys, California and met with Larian and Brawer.  In February,
12  2006, knowing that Mattel trade secrets had been seized from MGA's Mexico City
13  offices and that at least three MGA employees were under criminal investigation,
14  MGA nonetheless issued a press release trumpeting its 2005 performance, with
15  Larian himself concluding, "Our international teams in Mexico and Canada have
16  done a fantastic job."

17  **VII. MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL TO**
18       **JOIN MGA TO MISAPPROPRIATE MATTEL TRADE SECRETS**
19       **FOR THE BENEFIT OF MGA**

20      77.   In the past few years, MGA has hired directly from Mattel's
21  United States operations at least 25 employees, from Senior Vice-President level to
22  lower level employees.  On information and belief, many of these employees were
23  specifically targeted and recruited by MGA, including by Larian and Brawer, based
24  on the Mattel confidential and proprietary information they could access.  Many of
25  these employees had access to information that Mattel considers to be highly
26  proprietary and confidential.  Mattel believes that some of those former Mattel
27  employees may be observing their obligations not to misappropriate, disclose or
28  use Mattel's confidential and proprietary information.  Mattel is informed and

-51-

**EXHIBIT 22 PAGE 267**

believes, however, that certain additional employees accessed, copied and took from Mattel confidential and proprietary information, including Mattel's strategic plans; business operations, methods and systems; marketing and advertising strategies and plans; future product lines; product profit margins; and customer requirements. The misappropriated confidential and proprietary information included information that these Mattel employees were not authorized to access. On information and belief, the misappropriated confidential and proprietary information taken from Mattel is being disclosed to and used by MGA for the benefit of MGA and to the detriment of Mattel.

## VIII.  LARIAN MAKES MISREPRESENTATIONS TO RETAILERS ABOUT MATTEL'S PRODUCTS

78.   Counter-defendants have engaged in other illegal practices in their efforts to compete unfairly with Mattel. Larian has a practice of sending e-mail messages to a "Bratz News" distribution list that Larian created or that was created for him. Mattel is informed and believes that the recipients of e-mail messages sent to the "Bratz News" distribution list include members of the media as well as representatives of many of Mattel's most significant customers.

79.   On May 12, 2006, Larian sent an e-mail message to the "Bratz News" distribution list that included a reference to Mattel's updated MY SCENE MY BLING BLING product with real gems. Mattel had not publicly announced this product at the time that Larian sent his May 12, 2006 e-mail. In fact, Mattel had guarded the identification of this particular product.

80.   Shortly thereafter, Larian engaged in a campaign of calling Mattel's most significant customers, including but not limited to Target and TRU, regarding the MY SCENE MY BLING BLING product with real gems. In an effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING BLING product with real gems, Larian knowingly made false factual statements about that product to each retailer. As of the writing of this Second Amended

1  Answer and Counterclaims, Mattel is aware that Larian represented to each retailer
2  that each was the only retailer to purchase the product and that Mattel would not be
3  supporting the product with television advertising.  At the time that Larian made
4  these statements, he knew them to be false.  As a result of Larian's
5  misrepresentations, at least one retailer cancelled its order for 75,000 units of the
6  MY SCENE MY BLING BLING product with real gems.  Only after Mattel
7  learned of Larian's misrepresentations and was able to correct them was Mattel able
8  to assure the retailer that Larian's representations were false and to persuade the
9  retailer to reinstate the order.

10        81.    Such conduct is not an isolated incident.  MGA and Larian, in an
11  effort to gain an unfair competitive advantage, repeatedly issued false and
12  misleading press releases.  In these press releases, MGA and Larian have
13  misrepresented Bratz's sales, Bratz's market share, Bratz's position vis-à-vis
14  Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market
15  share of Mattel's BARBIE products.

16                        **CLAIMS FOR RELIEF**

17                        <u>**First Counterclaim**</u>

18                        **Copyright Infringement**

19        **(Against MGA, MGA Entertainment (HK) Limited,**

20              **Larian, Bryant and Does 4 through 10)**

21        82.    Mattel repeats and realleges each and every allegation set forth in
22  paragraphs 1 through 81, above, as though fully set forth at length.
23        83.    Mattel is the owner of copyrights in works that are fixed in
24  tangible media of expression and that are the subject of valid, and subsisting,
25  copyright registrations owned by Mattel.  These include, without limitation, the
26  works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-
27  378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-
28

2154363.2

-53-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT 22 PAGE 275**

1 | 378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-

2 | 378-660, VAu 715-270, VAu 715-271 and VAu 715-273.

3 |       84.   Counter-defendants have reproduced, created derivative works

4 | from and otherwise infringed upon the exclusive rights of Mattel in its protected

5 | works without Mattel's authorization.  Counter-defendants' acts violate Mattel's

6 | exclusive rights under the Copyright Act, including without limitation Mattel's

7 | exclusive rights to reproduce its copyrighted works and to create derivative works

8 | from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

9 |       85.   Counter-defendants' infringement (and substantial contributions

10 | to the infringement) of Mattel's copyrighted works is and has been knowingly made

11 | without Mattel's consent and for commercial purposes and the direct financial

12 | benefit of Counter-defendants.  Counter-defendants, moreover, have deliberately

13 | failed to exercise their right and ability to supervise the infringing activities of

14 | others within their control to refrain from infringing Mattel's copyrighted works

15 | and have failed to do so in order to deliberately further their significant financial

16 | interest in the infringement of Mattel's copyrighted works.  Accordingly, Counter-

17 | defendants have engaged in direct, contributory and vicarious infringement of

18 | Mattel's copyrighted works.

19 |       86.   By virtue of defendants' infringing acts, Mattel is entitled to

20 | recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of

21 | suit and attorneys' fees, and all other relief permitted under the Copyright Act.

22 |       87.   Counter-defendants' actions described above have caused and

23 | will continue to cause irreparable damage to Mattel, for which Mattel has no

24 | remedy at law.  Unless Counter-defendants are restrained by this Court from

25 | continuing their infringement of Mattel's copyrights, these injuries will continue to

26 | occur in the future.  Mattel is accordingly entitled to injunctive relief restraining

27 | Counter-defendants from further infringement.

28 |

2154363.2

EXHIBIT 22 PAGE 279

**<u>Second Counterclaim</u>**

**Violation of the Racketeer Influenced and Corrupt Organizations Act**

**18 U.S.C. §§ 1962(c) and 1964(c)**

**(Against All Counter-defendants)**

88.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 87, above, as though fully set forth at length.

89.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas and Brisbois were employed by and associated-in-fact with an enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "MGA Criminal Enterprise"). The MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois). In addition, beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, were employed by and associated-in-fact with a second enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "Bratz Criminal Enterprise").

90.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and each of them, for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information, by

**EXHIBIT 22 PAGE 283**

1   means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully

2   and knowingly conduct and participate, directly and indirectly, in the conduct of

3   the MGA Criminal Enterprise's affairs and, in the case of MGA, MGA

4   Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe Counter-

5   defendants, the Bratz Criminal Enterprise's affairs, through a pattern of

6   racketeering activity.  Their actions include multiple, related acts in violation of:

7   18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512

8   (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and

9   foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. §

10  506(a)(1)(A) (criminal copyright infringement).

11          91.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

12  Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

13  Brisbois, and the Other Former Employees, and each of them, shared the common

14  purpose of enabling MGA to obtain confidential, proprietary and otherwise

15  valuable Mattel property through improper means in order to assist MGA in

16  illegally competing with Mattel domestically and throughout the world.

17          92.   The MGA Criminal Enterprise and Bratz Criminal Enterprise as

18  described herein are and have been at all relevant times continuing enterprises

19  because, among other reasons, each is designed to and did unlawfully acquire the

20  confidential business information and property of Mattel and incorporated this

21  information and property into MGA's ongoing business, marketing strategies and

22  business methods, practices and processes.  The conduct of each enterprise

23  continues through the date of this Second Amended Answer and Counterclaims and

24  is ongoing by virtue of MGA's continuing use of Mattel's information and property,

25  all to the detriment of Mattel.

26          93.   The pattern of racketeering activity, as defined by 18 U.S.C.

27  §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

28  of continuing criminal activity.  This activity consists of multiple acts of

1  racketeering by each member of the MGA Criminal Enterprise and Bratz Criminal

2  Enterprise, is interrelated, not isolated and is perpetrated for the same or similar

3  purposes by the same persons.  This activity extends over a substantial period of

4  time, up to and beyond the date of this Second Amended Answer and

5  Counterclaims.  These activities occurred after the effective date of 18 U.S.C.

6  §§ 1961 *et seq.,* and the last such act occurred within 10 years after the commission

7  of a prior act of racketeering activity.  These racketeering activities included

8  repeated acts of:

9         (a)   <u>Mail Fraud</u>:  Counter-defendants MGA, MGA Entertainment

10               (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and

11               Does 4 through 10, aided and abetted by each other and some or

12               all of the remaining members of the MGA Criminal Enterprise,

13               having devised a scheme or artifice to defraud Mattel of its

14               confidential trade secret information and property by conversion,

15               false representations, concealment and breaches of fiduciary duty,

16               did for the purpose of furthering and executing such a scheme or

17               artifice to defraud, deposited or caused to be deposited matters or

18               things to be sent or delivered by the Postal Service, or any private

19               or commercial interstate carrier, or took or received matters or

20               things therefrom, or knowingly caused matters or things to be

21               delivered by mail or such carrier according to the direction

22               thereon, or at the place at which it is directed to be delivered by

23               the person to whom it is addressed, in violation of 18 U.S.C.

24               § 1341 and 18 U.S.C. § 2, as alleged with greater particularity in

25               the foregoing paragraphs and as evidenced by, among other

26               things, the true and correct copies of communications and other

27               evidence included in Exhibit C;

28

2154363.2

**EXHIBIT 22 PAGE 291**

(b)  <u>Wire Fraud</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, having devised a scheme or artifice to defraud Mattel of its confidential and trade secret information and property by conversion, false representations, concealment and breaches of fiduciary duty, did for the purpose of furthering and executing such a scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other things, the true and correct copies of communications and other evidence included in Exhibit C;

(c)  <u>Tampering With a Witness, Victim or Informant</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by:

i.  altering Bryant's contract with MGA relating to Bratz to conceal evidence that Bryant faxed the contract from the BARBIE COLLECTIBLES department of Mattel, using a fax

-58-

**EXHIBIT 22 PAGE 295**

1   machine owned by Mattel and while Bryant was employed by

2   Mattel;

3         ii.     altering numerous original Bratz drawings created

4   by Bryant by adding false and misleading date notations of

5   "8/1998" and "© 8/1998" to the drawings even though the

6   drawings were not created in August 1998; and

7         iii.    destroying electronic and other evidence, including

8   by destroying evidence previously contained on Carter Bryant's

9   and Isaac Larian's computer hard drives.

10         Such actions are in violation of 18 U.S.C. § 1512 and 18

11   U.S.C. § 2, as alleged with greater particularity in the foregoing

12   paragraphs;

13       (d)   Interstate and Foreign Travel in Aid of Racketeering Enterprises:

14   Counter-defendants MGA, MGA Entertainment (HK) Limited,

15   MGA de Mexico, Larian, Bryant, Machado and Does 4 through

16   10, aided and abetted by each other and some or all of the

17   remaining members of the MGA Criminal Enterprise, traveled in

18   interstate and foreign commerce, or used the mail or any facility

19   in interstate or foreign commerce, with the intent to promote,

20   manage, establish, carry on and facilitate the promotion,

21   management, establishment and carrying on of unlawful activity,

22   *i.e.* bribery, in violation of the laws of the State of California,

23   *Cal. Penal Code* § 641.3, all in violation of 18 U.S.C. § 1952 and

24   18 U.S.C. § 2, as alleged with greater particularity in the

25   foregoing paragraphs;

26       (e)   Criminal Copyright Infringement: Counter-defendants MGA,

27   MGA Entertainment (HK) Limited, MGA de Mexico, Larian,

28   Bryant, Machado and Does 4 through 10, aided and abetted by

2154363.2

-59-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 22 PAGE 299

each other and some or all of the remaining members of the MGA Criminal Enterprise, willfully infringed Mattel's copyrights, including with respect to documents containing Mattel trade secret and confidential information, for purposes of commercial advantage and private financial gain, all in violation of 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater particularity in the foregoing paragraphs.

94.    The persons alleged herein to have violated 18 U.S.C. § 1962(c) are separate from, though employed by or associated with, MGA, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group.

95.    MGA had a role in the racketeering activity that was distinct from the undertaking of those acting on its behalf.  MGA also attempted to benefit, and did benefit, from the activity of its employees and agents alleged herein, and thus was not a passive victim of racketeering activity, but an active perpetrator.

96.    Mattel has been injured in its business or property as a direct and proximate result of the Counter-defendants' and the other enterprise members' violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts constituting the pattern of racketeering activity.

97.    As a result of the violations of 18 U.S.C. § 1962(c), by MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, Brawer, Trueba, Vargas, Brisbois and the Other Former Employees, Mattel has suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special compensatory damages, plus interest, costs and attorneys, fees, incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

## Third Counterclaim

### Conspiracy To Violate the Racketeer

### Influenced And Corrupt Organizations Act

### (18 U.S.C. §§ 1962(d) and 1964(c))

### (Against All Counter-defendants)

98.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 97, above, as though fully set forth at length.

99.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

100.   These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

101.   The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), including acts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18

1  U.S.C. § 2; acts of tampering with witnesses, victims or informants in violation of

2  18 U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of

3  racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; and

4  acts of criminal copyright infringement in violation of 18 U.S.C. § 2319(a) and 17

5  U.S.C. § 506(a)(1)(A).

6       102.  Counter-defendants and the other members of the MGA Criminal

7  Enterprise schemed to defraud Mattel and steal its property and trade secret

8  information by means of false representation, breaches of fiduciary duty,

9  conversation and concealment, as more fully set forth in the foregoing paragraphs.

10       103.  In furtherance of this unlawful conspiracy, and to effect its

11  objectives, Counter-defendants and various co-conspirators committed numerous

12  overt acts, including but not limited to those set forth in the foregoing paragraphs.

13       104.  Mattel has been injured in its business or property as a direct and

14  proximate result of the Counter-defendants' and the other enterprise members'

15  violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts

16  constituting the pattern of racketeering activity.

17       105.  As a result of the conspiracies between and among all Counter-

18  defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has

19  suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18

20  U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

21  compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

22  of Counter-defendants' violations of 18 U.S.C. § 1962(d).

23                      **Fourth Counterclaim**

24            **Misappropriation of Trade Secrets**

25     **(Against Counter-defendants MGA, MGA de Mexico,**

26       **Larian, Machado and Does 4 through 10)**

27       106.  Mattel repeats and realleges each and every allegation set forth in

28  paragraphs 1 through 105, above, as though fully set forth at length.

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

**EXHIBIT 22 PAGE 232**

107. As used herein, "Trade Secret Material" shall mean the documents, materials and information stolen by Machado, Trueba, Vargas, Brisbois, the Other Former Employees, and other persons acting for, on behalf of or at the direction of MGA and/or Larian. Prior to their theft by Counter-defendants, the Trade Secret Materials gave Mattel a significant competitive advantage over its existing and would-be competitors, including MGA. This advantage, as to MGA, has now been compromised as a result of Counter-defendants' unlawful activities.

108. Mattel made reasonable efforts under the circumstances to maintain the confidentiality of the Trade Secret Materials, including by having employees and consultants who may have access the Trade Secret Materials sign confidentiality agreements that oblige them not to disclose the Trade Secret Materials or characteristics of the Trade Secret Materials; by limiting the circulation of said materials within Mattel; by protecting and limiting access to computers with log-in identifications and passwords; by limiting each employee's access to electronic files to those that the particular employee needs to access; by educating employees on the nature of Mattel's information that is confidential and proprietary; and by reminding employees on a regular and periodic basis of their obligation to protect and maintain Mattel's confidential and proprietary information.

109. Mattel's Trade Secret Materials derive independent economic value from not being generally known to the public or to other persons who can obtain economic benefit from their disclosure.

110. Counter-defendants have illegally obtained the trade secret materials, as set forth above, and through other means of which Mattel is presently unaware.

111. Counter-defendants have used and disclosed Mattel's Trade Secret Materials without Mattel's consent and without regard to Mattel's rights, and

4363.2

EXHIBIT 22 PAGE 236

1 without compensation, permission, or licenses for the benefit of themselves and
2 others.

3      112.  Counter-defendants' conduct was, is, and remains willful and
4 wanton, and was taken with blatant disregard for Mattel's valid and enforceable
5 rights.

6      113.  Counter-defendants' wrongful conduct has caused and, unless
7 enjoined by this Court, will continue in the future to cause irreparable injury to
8 Mattel.  Mattel has no adequate remedy at law for such wrongs and injuries.  Mattel
9 is therefore entitled to a permanent injunction restraining and enjoining Counter-
10 defendants, and each of them, as well as their agents, servants, and employees, and
11 all persons acting thereunder, in concert with, or on their behalf, from further using
12 in any manner Mattel's trade secrets.

13      114.  In addition, as a proximate result of Counter-defendants'
14 misconduct, Mattel has suffered actual damages, and Counter-defendants have been
15 unjustly enriched.

16      115.  The aforementioned acts of the Counter-defendants were willful
17 and malicious, including in that Counter-defendants misappropriated Mattel's trade
18 secrets with the deliberate intent to injure Mattel's business and improve their own.
19 Mattel is therefore entitled to enhanced damages.  Mattel is also entitled to
20 reasonable attorney's fees.

21                        **Fifth Counterclaim**
22                        **Breach of Contract**
23                        **(Against Bryant)**

24      116.  Mattel repeats and realleges each and every allegation set forth in
25 paragraphs 1 through 115, above, as though fully set forth at length.

26      117.  Pursuant to his Employment Agreement, Bryant agreed that he
27 would not, without Mattel's express written consent, engage in any employment or
28 business other than for Mattel or assist in any manner any business competitive

2154363.2

EXHIBIT 22 PAGE 240

1    with the business or future business plans of Mattel during his employment with

2    Mattel.  Pursuant to his Mattel Employment Agreement, Bryant further assigned to

3    Mattel all right, title and interest in "inventions," including without limitation

4    "designs" and other works that he conceived, created or reduced to practice during

5    his employment by Mattel.  In addition, pursuant to the Conflict Questionnaire,

6    Bryant certified that, other than as disclosed, he had not worked for any competitor

7    of Mattel and had not engaged in any business venture or transaction involving a

8    Mattel competitor that could be construed as a conflict of interest.  Bryant further

9    promised that he would notify his supervisor immediately of any change in his

10    situation that would cause him to change any of the foregoing certifications or

11    representations.

12        118.  The Employment Agreement and the Conflict Questionnaire are

13    valid, enforceable contracts, and Mattel has performed each and every term and

14    condition of the Employment Agreement and Conflict Questionnaire required to be

15    performed by Mattel.

16        119.  Bryant materially breached the foregoing contracts with Mattel,

17    in that, among other things, he secretly aided, assisted and worked for a Mattel

18    competitor during his employment with Mattel without the express written consent

19    of Mattel.

20        120.  As a consequence of Bryant's breach, Mattel has suffered and

21    will, in the future, continue to suffer damages in an amount to be proven at trial.

22    Such damages include, without limitation, the amounts paid by the competitor to

23    Bryant during his Mattel employment; the amounts paid by MGA to Bryant during

24    his Mattel employment; the amount that Mattel paid Bryant during the time he

25    wrongfully worked with MGA; the value of information and intellectual property

26    owned by Mattel which Bryant provided to MGA; the value of the benefits that

27    MGA obtained from Bryant during the time he was employed by Mattel; and the

28

2154363.2

-65-

1  value of the benefits that MGA obtained from Bryant as a result of the work he

2  performed for or with MGA during his Mattel employment.

3       121. Bryant's conduct has caused, and unless enjoined will continue to

4  cause, irreparable injury to Mattel that cannot be adequately compensated by

5  money damages and for which Mattel has no adequate remedy at law. Bryant

6  specifically acknowledged in his Employment Agreement that his breach of the

7  Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be

8  entitled to injunctive relief to enforce this Agreement, in addition to damages and

9  other available remedies." Accordingly, Mattel is entitled to orders mandating

10  Bryant's specific performance of his contracts with Mattel and restraining Bryant

11  from further breach.

12  **Sixth Counterclaim**

13  **Intentional Interference with Contract**

14  **(Against MGA, Larian and Does 4 through 10)**

15      122. Mattel repeats and realleges each and every allegation set forth in

16  paragraphs 1 through 121, above, as though fully set forth at length.

17      123. Valid agreements existed between Mattel and Bryant, Brawer,

18  Machado, Trueba, Vargas, Brisbois and the Other Former Employees (collectively,

19  the "Mattel Employees")

20      124. At all times herein mentioned, MGA, Larian and Does 4 through

21  10 knew that the Mattel Employees had a duty under their agreements not to work

22  for or assist any competitor of Mattel, such as MGA. In addition, at all times

23  mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had

24  assigned to Mattel, and was obligated to disclose to Mattel all inventions, including

25  designs and other works, created, conceived or reduced to practice during their

26  employment with Mattel.

27

28

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT 22 PAGE 248**

125.  Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, induced and encouraged the Mattel Employees to breach their contracts with Mattel.

126.  As a direct and proximate result of Counter-defendants' efforts and inducements, the Mattel Employees did breach their contracts with Mattel.

127.  As a result of said breaches, Mattel has suffered damages and will imminently suffer further damages, including the loss of its competitive position and lost profits, in an amount to be proven at trial.

128.  Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Seventh Counterclaim

### Breach of Fiduciary Duty

### (Against Bryant and Machado)

129.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 128, above, as though fully set forth at length.

130.  Bryant and Machado held positions of trust and confidence with Mattel.  In their positions, Bryant and Machado had access to and were entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of their job assignments and duties.  In their positions, Bryant and Machado also represented Mattel in its dealings with third parties and, in actions in the course and scope of their employment with Mattel, were agents of Mattel.  They confirmed their relationship of trust with Mattel in respective employee agreements.  Bryant and Machado thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests

2154363.2

-67-

1  or that would deprive Mattel of any opportunities, profit or advantage which Bryant
2  or Machado might bring to Mattel.

3        131. Bryant breached his fiduciary duty to Mattel in that, while
4  employed by Mattel, he secretly aided and assisted a competitor of Mattel,
5  including without limitation by entering into an agreement with a Mattel
6  competitor. As alleged above, Bryant also breached the aforementioned duty by
7  using Mattel property and resources for the benefit of, and to aid and assist, himself
8  personally and MGA.

9        132. Machado breached his fiduciary duty to Mattel, in that while
10 employed by Mattel, he secretly aided and assisted a competitor of Mattel by,
11 among other things, misappropriating Mattel trade secret and proprietary
12 information and providing said information to officers of MGA. Machado also
13 breached the aforementioned duty by using Mattel property and resources for the
14 benefit of, and to aid and assist, himself personally and MGA.

15        133. As a direct and proximate result of Counter-defendants' wrongful
16 conduct, Mattel has incurred damages in an amount to be determined at trial.

17        134. Counter-defendants acted with malice, fraud and oppression, and
18 in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an
19 award of exemplary damages against Counter-defendants in an amount to be
20 determined at trial.

21        135. Furthermore, Counter-defendants' conduct has caused, and unless
22 enjoined will continue to cause, irreparable injury to Mattel that cannot be
23 adequately compensated by money damages and for which Mattel has no adequate
24 remedy at law. Accordingly, Mattel is entitled to an order restraining further
25 breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants
26 from continuing to benefit from such breach.

27

28

## Eighth Counterclaim

### Aiding and Abetting Breach of Fiduciary Duty

### (Against MGA, Larian and Does 4 through 10)

136.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 135, above, as though fully set forth at length.

137.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant held a position of trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to secretly developing and designing Bratz while employed by Mattel and by secretly assisting Larian and MGA .

138.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) held positions of trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to taking confidential trade secret information from Mattel's premises and providing that information to a competitor.

139.  Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, encouraged, aided and abetted and gave substantial assistance to the Mattel Employees to breach their fiduciary duties to Mattel, knowing that their conduct would constitute breaches of their fiduciary duties to Mattel.

140.  As a direct and proximate result of Counter-defendants' efforts, the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has incurred damages in an amount to be proven at trial.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

2154363.2

EXHIBIT 22 PAGE 260

141. In taking the aforesaid actions, MGA, Larian and Does 4 through 10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Ninth Counterclaim

### Breach of Duty of Loyalty

### (Against Bryant and Machado)

142. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 141, above, as though fully set forth at length.

143. As employees of Mattel, Bryant and Machado owed a duty of undivided loyalty to Mattel. Pursuant to this duty, Bryant and Machado could not compete with Mattel or assist a competitor of Mattel during their employment with Mattel. Pursuant to this duty, Bryant and Machado were required to always give preference to Mattel's business over their own, similar interests during the course of their employment with Mattel.

144. Bryant and Machado breached their duty of loyalty to Mattel in that, while employed by Mattel, they secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into agreements with a Mattel competitor. As alleged above, they also breached the aforementioned duty by using Mattel property and resources for the benefit of, and to aid and assist, themselves personally and the competitor of Mattel.

145. As a direct and proximate result of Counter-defendants' wrongful conduct, Mattel has incurred damages in an amount to be determined at trial.

146. Counter-defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against Counter-defendants in an amount to be determined at trial.

!154363.2

-70-

147. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining further breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-defendants from continuing to benefit from such breach.

148. In breaching their duty of loyalty to Mattel, Bryant and Machado acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Tenth Counterclaim

### Aiding and Abetting Breach of Duty of Loyalty

### (Against MGA, Larian and Does 4 through 10)

149. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 148, above, as though fully set forth at length.

150. MGA, Larian and Does 4 through 10 knew that Bryant, as an employee of Mattel, owed a duty of loyalty to his employer. MGA, Larian and Does 4 through 10 knew that this duty included an obligation on the part of Bryant not to compete with Mattel or assist a competitor of Mattel during the term of his employment with Mattel. MGA, Larian and Does 4 through 10 also knew that Bryant was required to give preference to Mattel's business over his own, similar interests or those of Mattel's competitors. or those of Mattel's competitors during the course of his employment with Mattel.

151. MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) were employed by Mattel, and, as employees of Mattel, that they owed duties of loyalty to Mattel. MGA, Larian and Does 4 through 10 knew that these duties included an obligation on the part of the Mattel

-71-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 22 PAGE 268

1 Employees (excluding Bryant) not to compete with Mattel or assist a competitor of

2 Mattel during their Mattel employment.

3       152. Despite such knowledge, Counter-defendants MGA, Larian and

4 Does 4 through 10 intentionally and without justification solicited, encouraged,

5 aided and abetted and gave substantial assistance to the Mattel Employees to

6 breach their duties of loyalty to Mattel, knowing that their conduct would constitute

7 breaches of their duties of loyalty to Mattel.

8       153. As a further consequence of Counter-defendants' efforts, Mattel

9 has suffered injury and is entitled to compensatory damages in an amount to be

10 proven at trial.

11       154. In taking the aforesaid actions, MGA, Larian and Does 4 through

12 10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

13 rights. Accordingly, Mattel is entitled to recover exemplary damages from

14 Counter-defendants in an amount to be determined at trial.

15 **Eleventh Counterclaim**

16 **Conversion**

17 **(Against All Counter-defendants)**

18       155. Mattel repeats and realleges each and every allegation set forth in

19 paragraphs 1 through 154, above, as though fully set forth at length.

20       156. Counter-defendants wrongfully converted Mattel property and

21 resources by appropriating and using them for their own benefit and gain and for

22 the benefit and gain of others, without the permission of Mattel.

23       157. Mattel was entitled to, among other things, the exclusive right

24 and enjoyment in property and tangible materials owned by Mattel, including

25 without limitation such proper and materials that were created by Bryant while he

26 was a Mattel product designer. Such property was taken by Bryant from Mattel to

27 further his own interests and, in at least some instances, provided by Bryant to

28 Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

158.  In addition, Counter-defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices.  Counter-defendants did so without Mattel's permission and continue to possess them.

159.  As a direct and proximate result of Counter-defendants' wrongful conversion of Mattel property, including those relating to Bratz and Mattel's Trade Secret Materials, Mattel has incurred damages.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

160.   As a result of Counter-defendants' acts of conversion, Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss suffered, which is not measured by the value of the property misappropriated, but includes the lost profits that Mattel suffered as a result of the conversion or, alternatively, the profits generated by the Counter-defendants that would not have been generated but for the conversion.  Only such a measure of damages would fully and fairly compensate Mattel for the injury it suffered due to Counter-defendants' acts of conversion.

161.  Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

162.  Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-defendants from further conversion of Mattel property and resources and/or restraining Counter-defendants from continuing to benefit from such conversion.

**Twelfth Counterclaim**

**Unfair Competition**

**(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

**(Against All Counter-defendants)**

163. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 162, above, as though fully set forth at length.

164. Section 17200 of the California Business and Professions Code prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

165. By engaging in the foregoing conduct, Counter-defendants have, individually and in combination, engaged in unlawful, unfair and/or fraudulent acts of unfair competition in violation of both the common law of the state of California and *Cal. Bus. & Prof. Code* § 17200 *et seq.* Such conduct included, without limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code* § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a). Such conduct also included, without limitation, MGA's and Larian's disparagement of Mattel's products and misrepresentations as alleged above.

166. As a result of the aforementioned conduct, Mattel has suffered damages and will imminently suffer further damages, including but not limited to lost profits in an amount to be proven at trial. No adequate remedy at law exists for the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel is entitled to an injunction enjoining Counter-defendants' continued wrongful acts. Mattel is also entitled to recover compensatory and exemplary damages pursuant to the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

**EXHIBIT 22 PAGE 280**

2154363.2

-74-

## Thirteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

167. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168. As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169. Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170. Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

### Prayer for Relief

WHEREFORE, Mattel respectfully requests judgment:

1. For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

2154363.2

EXHIBIT 22 PAGE 284

1  created or reduced to practice by Bryant during the term of his Mattel employment

2  and/or by any others then-employed by Mattel, as well as in all derivatives

3  prepared therefrom, and that Mattel is the true owner of the foregoing;

4        2.    For a declaration that any agreement between Bryant, on the one

5  hand, and MGA or any person or entity, on the other hand, in which Bryant

6  purported to assign any right, title or interests in any work that he conceived,

7  created or reduced to practice while a Mattel employee, including but not limited to

8  the Bratz designs, is void and of no effect;

9        3.    For an Order enjoining and restraining Counter-defendants, their

10  agents, servants and employees, and all persons in active concert or participation

11  with them, from further wrongful conduct, including without limitation from

12  imitating, copying, distributing, importing, displaying, preparing derivatives from

13  and otherwise infringing Mattel's copyright-protected works;

14        4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other

15  applicable law, impounding all of Counter-defendants' products and materials that

16  infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles

17  by which copies of the works embodied in Mattel's copyrights may be reproduced

18  or otherwise infringed;

19        5.    For an Order mandating that Counter-defendants return to Mattel

20  all tangible items, documents, designs, diagrams, sketches or any other

21  memorialization of inventions created or reduced to practice during Bryant's

22  employment with Mattel as well as all Mattel property converted by Counter-

23  defendants;

24        6.    For an Order mandating specific performance by Bryant to

25  comply with and satisfy Bryant's contractual obligations to Mattel;

26        7.    That Mattel be awarded, and Counter-defendants be ordered to

27  disgorge, all payments, revenues, profits, monies and royalties and any other

28  benefits derived or obtained as a result of the conduct alleged herein, including

2154363.2

-76-

**EXHIBIT 22 PAGE 288**

1    without limitation of all revenues and profits attributable to Counter-defendants'

2    infringement of Mattel's copyrights under 17 U.S.C. § 504;

3          8.    For an accounting of all profits, monies and/or royalties from the

4    exercise of ownership, use, distribution, sales and licensing of Bratz;

5          9.    For the imposition of a constructive trust over Bratz, including

6    without limitation registrations and applications for registrations relating thereto

7    made or filed by Counter-defendants and third parties, and all profits, monies,

8    royalties and any other benefits derived or obtained from Counter-defendant's

9    exercise of ownership, use, sale, distribution and licensing of Bratz;

10         10.    That Mattel recover its actual damages and lost profits;

11         11.    That Counter-defendants be ordered to pay exemplary damages

12    in a sum sufficient to punish and to make an example of them, and deter them and

13    others from similar wrongdoing;

14         12.    That Counter-defendants be ordered to pay treble its general and

15    special damages, plus interest, costs and attorney's fees incurred by reason of

16    Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

17         13.    That Counter-defendants be ordered to pay double damages due

18    to their willful and malicious misappropriation of Mattel's trade secrets with

19    deliberate intent to injure Mattel's business and improve its own;

20         14.    That Counter-defendants pay to Mattel the full cost of this action

21    and Mattel's attorneys' and investigators' fees; and

22

23

24

25

26

27

28

1        15.   That Mattel have such other and further relief as the Court may

2   deem just and proper.

3

4   DATED:  July 12, 2007          QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP

5

6                          By_____

7                             John B. Quinn
                              Attorneys for Defendant and Counter-
8                             claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-78-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT 22 PAGE 296**

# DEMAND FOR JURY TRIAL

Mattel, Inc. respectfully requests a jury trial on all issues triable thereby.

DATED:  July 12, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By
John B. Quinn
Attorneys for Defendant and Counter-claimant Mattel, Inc.

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

**EXHIBIT 22 PAGE 300**

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my right, title and interest in any patent, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature

Employee Name (print)    CARTER H. BRYANT

Date    01/04/99

MATTEL, INC.

By Signature

Name of Witness (print)    TERESA NEWCOMB

EXHIBIT A PAGE 80

M 0001622

**EXHIBIT 22 PAGE 304**

## CONFLICT OF INTEREST QUESTIONNAIRE

*BRYANT, CARTER H.*          *PROJECT DESIGNER*

Name (Last, first, M.I.)                          Job Title                          Department

Instructions: The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

○ YES  ● NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

○ YES  ● NO   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

○ YES  ● NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES  ○ NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES  ○ NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

○ YES  ● NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

○ YES  ● NO   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

○ YES  ● NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

○ YES  ● NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

*4, 5, freelance design & artwork in 1998, from appx. 5/98 - 11/98 for the Ashton Drake galleries.*

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

*[signature]*                          *01/04/98*

Signature                                              Date

EXHIBIT *B*  PAGE *81*        M 0001621

**EXHIBIT 22 PAGE 308**

# EXHIBIT 23

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> MATTEL, INC., a Delaware corporation, <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx) <br><br> SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) <br><br> Discovery Cut-off:  None Set <br> Pre-trial Conference:  None Set <br> Trial Date:  None Set |

2-1

07209/2048031.1

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 23 PAGE 309

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 15, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped.

DATED: February 1, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____
Michael T. Zeller
Attorneys for Mattel, Inc.

-1-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 23 PAGE 310

# EXHIBIT A

1.     "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.     "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.     "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also, previously or subsequently called) and any product or doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product or doll or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each EMBODIMENT of such doll or any portion thereof.  As used herein, "product or doll or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

4.     "DESIGN" or "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the

07209/2048031.

foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.   "EMBODIMENT" means any representation, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

6.   The DRAWINGS means those documents produced as Bates Nos. MGA000053-57,   MGA000392-395,   MGA000435-439,   MGA000455-481 MGA004606,   MGA004608,   MGA004640,   MGA005065,   MGA006423-6426, MGA006432-6436, MGA006438-06440, MGA006442-6467, and SL00016-45.

7.   "BASED ON" means copied or reproduced from, substantially similar to, based on or derived from in any manner, whether in whole or in part.

8.   "CREATED" means produced, prepared, created, authored, conceived of or reduced to practice, whether in whole or in part and whether alone or jointly with others.

9.   "IDENTIFY" or "IDENTITY" means the following:

(a)   With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)   With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present

or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

        (c)    With reference to an EMBODIMENT, means the IDENTITY of the individual author(s) or creator(s) of the EMBODIMENT as well as of each other individual who contributed in any manner to the EMBODIMENT; the form, material and medium of the EMBODIMENT (*e.g.*, preliminary three-dimensional resin sculpture, final three-dimensional wax sculpture, digitized file of final three-dimensional wax sculpture, two-dimensional design drawing on paper); each title or name of the EMBODIMENT; the start and end date(s) of the EMBODIMENT's creation or preparation; and the current location of the EMBODIMENT.

        10.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

        11.    "ACTION" shall mean this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

        12.    "DIGITAL INFORMATION" shall mean any information created or stored digitally, including but not limited to electronically, magnetically or optically.

        13.    "SYSTEM" or "SYSTEMS" shall mean any computer or network of computers or other network devices that allow a two or more computers to share information and equipment, including but not limited to local area networks, wide area networks, storage area networks, client-server networks or peer-to-peer networks. The

use of the term "SYSTEM" or "SYSTEMS" shall also include the brand, model number, technical specifications, and capacities of the computers who are part of each such SYSTEM.

14.    "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

15.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

16.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and

directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

17.     The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

## Topics of Examination

1.     The origin, conception, creation, design, sculpting, development, engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether such was released in any form to the public), including without limitation the timing thereof, the IDENTITY of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved therein, and the nature, extent and time period(s) of each such PERSON's involvement.

2.     The circumstances under which BRATZ or any BRATZ DESIGN first came to YOUR attention, including without limitation the timing, method and manner thereof and the IDENTITY of each PERSON with knowledge thereof.

3.     The identity of each doll, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

4.     To the extent not covered by Topic 3, each EMBODIMENT of any doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

5.     The work, activities and/or services that BRYANT performed for or with YOU or on YOUR behalf prior to June 30, 2001.

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

07209/2048031.

**EXHIBIT 23 PAGE 315**

6.      The origin, conception and creation of DESIGNS that BRYANT CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever claimed to have, any right, title or interest (whether in whole or in part).

7.      The identity of, and the design, development, sculpting, development, engineering, rotocasting, modeling, prototyping and first sale of, any doll, product, work or item that has been produced, developed, manufactured, licensed, sold or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN referenced in Topic 6.

8.      Each EMBODIMENT of BRATZ that was CREATED prior to June 30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was CREATED prior to June 30, 2001.

9.      The DRAWINGS, including without limitation the authorship, creation, dissemination and use thereof and the source, meaning, authenticity and timing of any dates thereon.

10.     The IDENTITY of each vendor or third party who performed or contributed, or who was considered, solicited, requested, proposed or contemplated by YOU or BRYANT to perform or contribute, any activities, work or services in connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR COMMUNICATIONS therewith, and the nature, extent and timing of such activities, work or services.

11.     The exhibition, or proposed, offered, contemplated or requested exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise discussed with or communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that REFER OR RELATE thereto.

12.     The actual, proposed, requested or contemplated manufacture, fabrication or tooling (including the production of molds) of BRATZ, including without

07209/2048031.
-7-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 23 PAGE 316

1    limitation the timing thereof and the IDENTITY of each manufacturer and potential

2    manufacturer used, proposed or considered.

3         13.    COMMUNICATIONS prior to June 30, 2001 between YOU and

4    any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or

5    potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE

6    TO BRATZ or any BRATZ DESIGN.

7         14.    When and where BRATZ was first manufactured, shipped,

8    distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

9         15.    The licensing, including without limitation the proposed or

10   requested licensing, of BRATZ or any BRATZ DESIGN prior to December 31, 2001,

11   including without limitation the timing thereof, the IDENTITY of each such licensee or

12   proposed or requested licensee and the product(s) or proposed product(s) involved.

13        16.    COMMUNICATIONS between YOU and BRYANT prior to

14   January 1, 2001, including without limitation the content, means and timing of such

15   COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and

16   the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

17        17.    COMMUNICATIONS that BRYANT made for YOU or on YOUR

18   behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior

19   to June 30, 2001.

20        18.    YOUR agreements and contracts with BRYANT, including without

21   limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that

22   REFER OR RELATE thereto, and any actual or proposed amendments thereto.

23        19.    Each agreement or contract between YOU and any PERSON other

24   than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that

25   REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of

26   when such agreement or contract was negotiated or executed), including without

27   limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that

28   REFER OR RELATE thereto, and any actual or proposed amendments thereto.

07209/2048031.                                -8-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

**EXHIBIT 23 PAGE 317**

20.    YOUR knowledge, prior to April 29, 2004, of BRYANT's contracts and agreements with, and his obligations to, MATTEL.

21.    YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ project information and DESIGNS prior to June 30, 2001.

22.    The payment of money or anything of value by or for YOU or on YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work, services or activities performed by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made), (b) for DESIGNS CREATED by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in connection with BRATZ or any BRATZ DESIGN at any time, including without limitation the timing, manner and amount(s) thereof and the reasons therefor.

23.    The payment of royalties to, for or on behalf of BRYANT made by or for YOU or on YOUR behalf, including the timing, manner and amounts of such payments and the reasons therefor.

24.    Any indemnification and fee arrangement that YOU and/or BRYANT has sought, proposed, requested or obtained in connection with this ACTION.

25.    YOUR revenues and profits from BRATZ, including without limitation YOUR gross and net profits, and YOUR costs associated therewith.

26.    YOUR net worth.

27.    The payment of money or anything of value that YOU have made or offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and reasons therefor.

28.    COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

29.   COMMUNICATIONS made by, for or on behalf of YOU, whether directly or indirectly, with Anna Rhee, including without limitation since February 2005 (but not including any such COMMUNICATIONS with her legal counsel).

30.   COMMUNICATIONS between YOU and Veronica Marlow, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

31.   The IDENTITY of each PERSON who, at any time since January 1, 1998, has performed any work or services for, by or on behalf of YOU while such PERSON was employed by MATTEL, the nature and timing of each such PERSON's work or services and the amount(s) paid by YOU to each such PERSON.

32.   COMMUNICATIONS between YOU and BRYANT that REFER OR RELATE TO MATTEL or REFER OR RELATE TO any DOCUMENT that was prepared, authored or created by MATTEL that BRYANT has ever provided to, shown, described to, communicated to or disclosed in any manner to YOU.

33.   The applications for registration and the registrations for copyright, patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT, including without limitation COMMUNICATIONS pertaining thereto.

34.   Other than those previously filed and served in this ACTION or in which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

35.   COMMUNICATIONS between YOU and Universal Commerce Corp., Ltd. prior to June 30, 2001.

36.   The source, meaning and authenticity of SL00013-14, including without limitation the timing of its creation and the handwriting thereon.

37.   YOUR corporate structure since January 1, 1999, including without limitation the relationship between MGA Entertainment, Inc. and any of its predecessors, affiliates and subsidiaries.

38.   The retention or destruction policies, procedures and practices for YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO BRATZ since January 1, 1999, including without limitation the retention or destruction of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced, modified or upgraded and (b) when PERSONS leave YOUR employ.

39.   The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

40.   The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan or information) that YOU received in any manner from any PERSON who was at the time an employee of MATTEL or who had previously been an employee of MATTEL.

41.   The testing of or sampling from DOCUMENTS that REFER OR RELATE TO BRATZ or BRYANT, including without limitation such testing or sampling in connection with any ink, paper or chemical analysis performed or attempted to be performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results and reports relating thereto.

42.   YOUR DIGITAL INFORMATION data backup policies, practices and procedures from January 1, 1999 to the present, including without limitation the location and specifications of any media used to preserve YOUR DIGITAL

**EXHIBIT 23 PAGE 320**

1 INFORMATION and the software, if any, used to preserve YOUR DIGITAL
2 INFORMATION.

3      43.   The DIGITAL INFORMATION SYSTEMS and the application
4 software that YOU have used since January 1, 1999 that REFER OR RELATE TO
5 design, development, planning, inventory, manufacturing, sales, shipping and
6 accounting, including without limitation the common or shared storage for such
7 DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL
8 INFORMATION SYSTEMS, and any changes, modifications or upgrades to such
9 DIGITAL INFORMATION SYSTEMS or application software.

10      44.   The IDENTITY of PERSONS, including without limitation
11 vendors, who since January 1, 1999 have been responsible for or supported YOUR
12 DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of
13 such PERSON who serviced or provided hardware for YOUR DIGITAL
14 INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL
15 INFORMATION, including but not limited to internet service providers, and provided
16 analytical, training or implementation services with respect to YOUR DIGITAL
17 INFORMATION SYSTEMS.

18      45.   The electronic messaging SYSTEMS used by YOUR employees
19 within the scope of their employment between January 1, 1999 and the present,
20 including but not limited to electronic mail, instant messenger, telephone or voice-mail,
21 and the routing of such electronic messages to, from or within MGA.

22      46.   YOUR policies, practices and procedures regarding the use of
23 transportable media that contain or are capable of containing DIGITAL
24 INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB
25 drives, portable hard drives, digital cameras and personal digital assistants.

26

27

28

07209/2048031.

-12-

EXHIBIT 23 PAGE 321

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On February 1, 2007, I served true copies of the following document(s) described as **SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on the parties in this action as follows:

**BY MAIL TO:**

Keith A. Jacoby, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Telephone: (310) 553-0308
Facsimile: (310) 553-5583

I enclosed the foregoing as well as a **COURTESY COPY** into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. (Courtesy copy

**BY PERSONAL SERVICE ON:**

Diana M. Torres, Esq.
O'Melveny & Meyers
400 So. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
**Facsimile: (213) 430-6407**

I delivered such envelope(s) **(COURTESY COPY INCLUDED)** by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 1, 2007, at Los Angeles, California.

Mia Albert

Dave Quintana

07209/2049386 1

**EXHIBIT 23 PAGE 322**

# EXHIBIT 24

CONFORMED COPY

FILED

2007 MAY 18 PM 3: 45

BY _____

CALENDARED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

12
   CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
13
            Plaintiff,                   Consolidated with
14                                       Case No. CV 04-09059
        vs.                              Case No. CV 05-02727
15
   MATTEL, INC., a Delaware corporation, **DISCOVERY MATTER**
16
            Defendant.                   Hon. Edward A. Infante (Ret.)
17                                       Discovery Master

18                                       [PROPOSED] ORDER GRANTING
   AND CONSOLIDATED CASES                MATTEL INC.'S MOTION TO
19                                       COMPEL MGA TO PRODUCE
                                         WITNESSES FOR DEPOSITION
20                                       PURSUANT TO RULE 30(B)(6)

21                                       Date: May 15, 2007
                                         Time: 8:15 a.m.
22                                       Place: Telephonic

23                                       Discovery Cut-Off: October 22, 2007
                                         Pre-Trial Conference: January 14, 2008
24                                       Trial Date: February 12, 2008

25

26

27

28

07209/2121176.1

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

c5|18|c7

EXHIBIT 24 PAGE 323

*Ed*

# ~~[PROPOSED]~~ ORDER

Having considered Mattel, Inc.'s Motion To Compel MGA To Produce Witnesses For Deposition Pursuant To Rule 30(b)(6) (the "Motion"), and all other papers and argument submitted in support of or opposition to the Motion, and finding good cause therefor, Mattel's Motion is GRANTED.

IT IS HEREBY ORDERED that:

1. MGA shall make Paula Garcia available for deposition on or before June 15, 2007 as a designee on Topics 1-3 and 6-8 of Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 16, 2005 and in her individual capacity.

2. MGA shall confirm its designees and the dates of the designees' availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 1, 2007 (the "Second Notice") on or before May 22, 2007.

3. MGA shall make its designees for all Topics in the Second Notice, except Topic Nos. 25 and 26, available for deposition on or before June 30, 2007.

4. The parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice. Such depositions may take place after June 30, 2007.

5. All of MGA's objections and/or limitations regarding the Topics in Mattel's Rule 30(b)(6) deposition notices are overruled.

//
//
//
//
//
//

-1-

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

EXHIBIT 24 PAGE 324

1

2       6.      Mattel's request for sanctions is denied.

3

4       **IT IS SO ORDERED.**

5

6   DATED: *May 16,* , 2007

7

8                                        *Edward A. Infante*

9                                        Hon. Edward A. Infante (Ret.)
                                         Discovery Master

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-
ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

**EXHIBIT 24 PAGE 325**

## <u>PROOF OF SERVICE BY E-MAIL</u>

I, Anthony Sales, not a party to the within action, hereby declare that on May 17, 2007, I served the attached ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6) in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 17, 2007, at San Francisco, California

Anthony R. Sales

EXHIBIT 24 PAGE 326

# EXHIBIT 25

DALE M. CENDALI (admitted *pro hac vice*)
MICHAEL KEATS (admitted *pro hac vice*)
DIANA M. TORRES (S.B. #162284)
JAMES P. JENAL (S.B. # 180190)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: jjenal@omm.com

PATRICIA GLASER (S.B. #55668)
CHRISTENSEN, GLASER, FINK, JACOBS,
WEIL & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Facsimile: (310) 557-9815

Attorneys for MGA Entertainment, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Defendant. | Case No. CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727)<br><br>**MGA ENTERTAINMENT INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OBJECTING TO PORTIONS OF THE DISCOVERY MASTER'S MAY 16, 2007 ORDER GRANTING MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(b)(6)**<br><br>**[Federal Rule of Civil Procedure 72(a); Local Rule 72-2.1]** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v.<br>MATTEL, INC. | Hearing Date: TBD<br>Time: TBD<br>Location: Courtroom 1 |

EXHIBIT 25 PAGE 327

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................2

II.   BACKGROUND ................................................................................2

    A.    Mattel's Motion to Compel MGA to Produce Witnesses for
        Deposition Pursuant to Rule 30(b)(6) ....................................................2

        1.    MGA's net worth ..........................................................3

        2.    Prior sworn statements made by MGA representatives..............4

        3.    Ink-testing ..................................................................4

III.  ARGUMENT ....................................................................................4

    A.    The Special Master's Order Directing MGA to Produce A
        Corporate Witness As to MGA's "Net Worth" (Topic 26) is
        Erroneous .......................................................................................5

    B.    The Special Master's Order Directing MGA to Produce A
        Corporate Witness As to Prior Sworn Statements Made on
        MGA's "Behalf" (Topic 34) is Erroneous .............................................6

    C.    The Discovery Master's Order Directing MGA to Produce A
        Corporate Witness As to Ink Testing (Topic 41) is Erroneous..............7

IV.   CONCLUSION ...............................................................................10

-i-

**EXHIBIT 25 PAGE 328**

# TABLE OF AUTHORITIES

**Page**

## CASES

Alpha Display Paging, Inc. v. Motorola Communs & Electronics, Inc., 867 F.2d 1168 (8th Cir. 1989) ................................................................5

Bohannon v. Honda Motor Co. Ltd., 127 F.R.D. 536, 540 (D. Kan. 1989) ...........................................................................................................7

Brunswick v. United States, 849 F.2d 501 (11th Cir. 1988).........................5

Catalina Rental Apts., Inc. v. Pac. Ins. Co., 2007 U.S. Dist. LEXIS 20760 (D. Fla. 2007)............................................................................5

Delta Holdings v. National Distillers & Chem. Corp., 945 F.2d 1226 (2d Cir. 1991)..................................................................................5

Dunn v. HOVIC, 1 F.3d 1371 (3d Cir. 1993) ..........................................5

In re Napster, Inc. v. Copyright Litigation2007 WL 754748 (9th Cir. March 14, 2007)..................................................................................5

In re Pizza Time Theatre Securities Litigation, 113 F.R.D. 94, 96 (N.D. Cal. 1986)......................................................................................9

In re Shell Oil Refinery 132 F.R.D. 437, 440-441 (D. La. 1990)...................6, 8, 9

Moore U.S.A. Inc. v. The Standard Register Co., 206 F.R.D. 72, 75 (W.D.N.Y. 2001)...................................................................................8

Tennenbaum v. Deloitte & Touche, 77 F.3d 337, 340 (9th Cir. 1996) ....................5

TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443 (U.S. 1993) ..............................................................................................5

- i -

EXHIBIT 25 PAGE 329

1

# TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

### STATUTES/RULES

4

28 U.S.C. §636(b)(1)(C) ......................................................................4

5

Fed. R. Civ. P. 26(c) .........................................................................1

6

Fed. Rule Civ. Pro. 26(b)(4)(B) ....................................................... 8, 9

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- ii -

**EXHIBIT 25 PAGE 330**

1    This memorandum of points and authorities is filed in support of MGA

2    Entertainment, Inc.'s ("MGA") Objections to Discovery Master's May 16, 2007

3    Order Granting Mattel's Motion to Compel MGA to Produce Witnesses for

4    Deposition Pursuant to Rule 30(b)(6) (hereinafter the "Order") in the case originally

5    captioned *Mattel, Inc. v. Bryant,* Case No. CV 04-9059 SGL (RNBx).

6    **I.      INTRODUCTION**

7           This is an appeal and request for review of the Special Master's Order

8    compelling the designation of witnesses on MGA's (i) net worth, (ii) prior

9    testimony in other litigation regarding Bratz and other subjects; and (iii) and ink-

10   testing of "Bratz."  The Special Master's Order is clearly erroneous because it

11   essentially requires MGA to retain and designate experts to testify about MGA's

12   "net worth" and "ink-testing" before the November 17, 2007 deadline for

13   designating experts in this case.  Pursuant to the Special Master's Order, MGA also

14   would be required to provide a single corporate witness to comment on numerous

15   prior sworn statements of other company employees -- both present and former --

16   made in various litigation contexts worldwide.  There is no basis for compelling

17   MGA to produce a 30(b)(6) witness to give such testimony.  Rather, Mattel should

18   do what every litigant does with such evidence and place it before the relevant

19   witnesses during discovery and question them about it.  Mattel suggests no reasons

20   for departing from this time-honored tradition of examination.   Accordingly, the

21   Special Master's order compelling MGA to designate 30(b)(6) witnesses to testify

22   on behalf of the corporation as to MGA's net worth, prior sworn statements and

23   ink-testing, should be vacated and reversed.

24   **II.     BACKGROUND**

25        **A.     Mattel's Motion to Compel MGA to Produce Witnesses for**
26                 **Deposition Pursuant to Rule 30(b)(6)**

27           On February 1, 2007, Mattel served its Second Notice of Deposition of MGA

28   Entertainment, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6) (the

-2-

**EXHIBIT 25 PAGE 331**

1    "30(b)(6) Notice").  Mattel's 30(b)(6) notice sought, among other things, the

2    designation of a witness able to testify as to:

3        • Topic No. 26:  MGA's "net worth";

4        • Topic No. 34:  "the testimony, transcripts, declarations, affidavits and

5           other sworn written statements of any other type by or from [MGA] or

6           made on [MGA's] behalf that refer or relate to Bratz that refer or relate

7           to the time priod prior to June 30, 2001"; and

8        • Topic 41:  "the testing of or sampling from documents that refer or

9           relate to Bratz or Bryant, including without limitation such testing or

10          sampling in connection with any ink, paper or chemical analysis

11          performed or attempted to be performed to date, any documents that

12          refer or relate thereto and all results and reports relating thereto."[1]

13   MGA originally objected to providing a witness concerning these topics for

14   the following reasons:

15       **1.    MGA's net worth**

16       As MGA indicated in its brief in opposition to Mattel's motion to compel,

17   MGA is a private company and does not calculate its "net worth" in the ordinary

18   course of business.  As such, there is no MGA employee who calculates net worth.[2]

19   Net worth is more properly the subject of expert testimony.  Moreover, Mattel has

20   previously indicated that it requires the net worth calculation for purposes of its

21   "punitive damages" claim,[3] which will not be litigated until the second phase of this

22   litigation.  As such, Mattel's request, in addition to being an improper attempt to

23   force MGA to retain and produce an expert before the expert deadlines in this case,

24   is also premature.

25   ----

[1] *See* Declaration of Kendall J. Burr In Support of MGA Entertainment, Inc.'s Motion

26   Objecting to Portions of the Discovery Master's May 16, 2007 Order Granting Mattel's
     Motion to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6)

27   ("Burr Decl."), Exh. 5.
     [2] Burr Decl., Exh. 2 at 8:13-8:17.

28   [3] Burr Decl., Exh. 1 at 64:19-64:20.

-3-

EXHIBIT 25 PAGE 332

### 2. Prior sworn statements made by MGA representatives

MGA objected to producing a witness on this topic believing that a single corporate witness could not, nor should they be required to, testify as to prior sworn statements of other individuals.[4]  Rather, Mattel should be required to depose the witnesses who made any such prior sworn statements.

### 3. Ink-testing

MGA objected to producing a corporate witness to give testimony concerning document "testing or sampling" as such testimony may only be obtained from an expert.  At present, MGA has not yet designated a testifying expert on ink-testing.  As such, Mattel must wait until such time as MGA designates a testifying expert in connection with any ink-testing to obtain the discovery it seeks.[5]

Nevertheless, the Special Master ordered MGA to produce witnesses able to testify on these topics without issuing a written opinion in connection therewith.[6]  MGA believes the Special Master's Order compelling designation of corporate witnesses to testify concerning MGA's net worth, prior sworn statements and ink-testing to be clearly erroneous.  Accordingly, the Special Master's Order compelling MGA to produce witnesses in response to Topics 26, 34 and 41 should be vacated and reversed.

## III.   ARGUMENT

This Court's review of the Special Master's May 16, 2007 Order is *de novo*.  *See* 28 U.S.C. §636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations as to which objection is made.  A judge of the court may accept, reject or modify in whole or in part, the findings or recommendations made by the magistrate [judge].  The judge may also receive further evidence or recommit the

---

[4] Burr Decl., Exh. 2 at 11:18-12:17.
[5] *See* Burr Decl., Exh. 2 at 9:2-10:15.
[6] *See* Burr Decl., Exh. 4.

-4-

EXHIBIT 25 PAGE 333

1   matter to the magistrate [judge] with instructions."); *see also In re Napster, Inc. v.*
2   *Copyright Litigation*, --- F.3d ---, 2007 WL 754748, *8 (9th Cir. March 14, 2007)
3   (mixed questions of law and fact are reviewed *de novo*); *Tennenbaum v. Deloitte &*
4   *Touche*, 77 F.3d 337, 340 (9th Cir. 1996). For the reasons discussed below, a
5   (partial) reversal of the Special Master's Order granting Mattel's motion to compel
6   is essential.

7       **A.**   **The Special Master's Order Directing MGA to Produce A**
8              **Corporate Witness As to MGA's "Net Worth" (Topic 26) is**
9              **Erroneous**

10       MGA is a private company and has no reporting requirements which would
11   require it to gather and disclose information on its net worth, and does not compile
12   such information in the ordinary course of business. Because MGA does not
13   calculate its net worth in the ordinary course of business, it does not have an
14   employee who performs that calculation. Although a corporation is required to
15   produce a witness capable of testifying as to facts or an area of inquiry within its
16   knowledge or reasonably available, such obligations do not mean that corporation
17   can never claim a lack of knowledge of a certain fact. *See e.g. Catalina Rental*
18   *Apts., Inc. v. Pac. Ins. Co.*, 2007 U.S. Dist. LEXIS 20760 (D. Fla. 2007).

19       "Net worth" is a complex financial calculation that is commonly the subject
20   of expert testimony. *See generally, TXO Prod. Corp. v. Alliance Resources Corp.*,
21   509 U.S. 443 (U.S. 1993); *Dunn v. HOVIC*, 1 F.3d 1371 (3d Cir. 1993); *Delta*
22   *Holdings v. National Distillers & Chem. Corp.*, 945 F.2d 1226 (2d Cir. 1991);
23   *Alpha Display Paging, Inc. v. Motorola Communs & Electronics, Inc.*, 867 F.2d
24   1168 (8th Cir. 1989); *Brunswick v. United States*, 849 F.2d 501 (11th Cir. 1988).
25   MGA already has indicated that if it does calculate net worth, it will need to retain
26   an expert to do so. However, MGA has not yet designated any such expert and the
27   time for designating experts has not elapsed.

28       "A party is free to make, as well as to revise, strategic decisions regarding

- 5 -

**EXHIBIT 25 PAGE 334**

1    which witnesses will testify at any time up until the court-imposed designation

2    deadline." *In re Shell Oil Refinery* 132 F.R.D. 437, 440-441 (D. La. 1990). If the

3    Special Master's order is allowed to stand, however, MGA will be forced to obtain

4    an expert at this stage of the litigation to calculate MGA's net worth and testify on

5    its behalf at a 30(b)(6) deposition. Such requirement is wholly improper and

6    contrary to the Federal Rules of Civil Procedure.

7          Moreover, Mattel claims that information related to MGA's net worth is

8    relevant to its claim for punitive damages and Mattel's counterclaims to MGA's

9    complaint against Mattel.[7]  However, Mattel has not asserted a claim for punitive

10   damages against MGA for its claims based on Bryant's alleged breach of contract,

11   breach of fiduciary duty and breach of the duty of loyalty. Rather, Mattel's claim

12   for punitive damages is only relevant to the second phase of the litigation between

13   the parties, which is scheduled for trial in July 2008. If MGA determines that it

14   wishes to obtain an expert on net worth in connection with Mattel's claim for

15   punitive damages, it will designate an expert at the necessary time. Mattel will

16   have ample opportunity then to explore such expert's "net worth" calculations. At

17   the present time, however, Mattel's 30(b)(6) notice regarding Topic 26 is

18   premature.

19   **B.    The Special Master's Order Directing MGA to Produce A**
20         **Corporate Witness As to Prior Sworn Statements Made on MGA's**
             **"Behalf" (Topic 34) is Erroneous**
21
22         The Special Master's Order directing MGA to provide a witness capable of

23   testifying concerning Topic 34 requires MGA to prepare and produce a corporate

24   witness to testify about prior declarations and deposition testimony of various

25   individuals, all but two of whom are unidentified.   In essence, MGA would be

26   required to prepare a witness to testify about statements by other witnesses, rather

27   than having Mattel simply depose those witnesses from whom it wants testimony.

28   [7] Burr Decl., Exh. 1 at 64:2-65:6.

-6-

EXHIBIT 25 PAGE 335

1  The Special Master gave no basis for ordering MGA to provide a witness on such

2  an inappropriate topic of testimony.  Indeed, Mattel cited no authority for such a

3  proposition in its brief in support of its motion to compel[8] and MGA has, after a

4  diligent search, found none.

5       The only authority Mattel did cite in its brief,[9] *Bohannon v. Honda Motor Co.*

6  *Ltd.*, 127 F.R.D. 536, 540 (D. Kan. 1989), merely supports the proposition that

7  deposition testimony given and approved by employees of defendant are

8  discoverable statements.  However, Mattel is not only seeking discovery of

9  deposition transcripts, but also to examine MGA's 30(b)(6) witness concerning *any*

10 sworn statements in any type of proceeding made by or on behalf of MGA that refer

11 or relate to "Bratz".[10]  Such testimony is not only inappropriate for a corporate

12 designee, but it is impracticable to require MGA to prepare a witness to testify as to

13 the prior testimony of individuals, including individuals who are no longer

14 employed by MGA.  This is particularly true, since Mattel can easily serve

15 individual notices of deposition on and depose individuals it believes to have

16 relevant information.  MGA would then be in a position to be informed about the

17 topics to be covered in the proposed deposition and would also be able to prepare

18 any such witnesses.  Accordingly, the Special Master's Order compelling MGA to

19 produce a 30(b)(6) witness to testify as to prior sworn testimony and statements

20 should be vacated and reversed.

21     C.     **The Discovery Master's Order Directing MGA to Produce A**

22            **Corporate Witness As to Ink Testing (Topic 41) is Erroneous**

23     The Discovery Master ordered MGA to produce a corporate witness to give

24 deposition testimony concerning "the testing of or sampling from documents that

25 refer or relate to Bratz or Bryant, including without limitation such testing or

26

27 [8] *See* Burr Decl., Exhs. 1 and 3.
   [9] Burr Decl., Exh. 3 at 14:2-14:4.

28 [10] Burr Decl., Exh. 5 at 10:21-10:26.

-7-

**EXHIBIT 25 PAGE 336**

1   sampling in connection with any ink, paper or chemical analysis performed or
2   attempted to be performed to date, any documents that refer or relate thereto and all
3   results and reports relating thereto."[11] This topic clearly seeks discovery of the
4   work product of MGA's consulting expert, as well as any undesignated experts --
5   all in advance of the time required by this Court's Scheduling Order for designating
6   experts. [12]  MGA addressed this point in its brief in opposition to Mattel's motion to
7   compel,[13] but the Special Master ignored it and ordered MGA to produce a witness
8   to testify as to Topic 41 without further opinion.[14]

9        First, the deposition of a consulting expert may not be taken absent a showing
10   of exceptional circumstances. Fed. Rule Civ. Pro. 26(b)(4)(B) (providing, in
11   relevant part, that where a consulting expert has been specially retained by a party
12   in anticipation of litigation, and has developed or acquired facts known and
13   opinions held in anticipation of litigation, those facts and opinions are only
14   discoverable upon a showing of "exceptional circumstances"). Mattel utterly failed
15   in its motion to compel to indicate any circumstances -- extraordinary or otherwise -
16   - under which it should be entitled to depose any consulting or heretofore
17   undesignated expert.[15]  And, the Special Master made no finding that special
18   circumstances were present here to warrant compelling MGA to produce a witness
19   to give testimony on Topic 41.

20        Second, expert discovery is wholly inappropriate here because the parties
21   have not even designated their testifying experts and are not scheduled to do so
22   until November 14, 2007. *See In re Shell Oil Refinery* 132 F.R.D. 437, 440-441;
23   *See also, Moore U.S.A. Inc. v. The Standard Register Co.*, 206 F.R.D. 72, 75

24   _____
[11] *Id.* at 11:20-11:24.
25   [12] The Special Master also ordered on May 15, 2007, among other things, that MGA
26   produce documents concerning "testing or sampling of documents."  MGA's appeal of the
     May 15, 2007 Order was filed on May 30, 2007.
27   [13] Burr Decl., Exh. 2 at 9:2-10:15.
     [14] Burr Decl., Exh. 4.
28   [15] *See* Burr Decl., Exhs. 1 and 3.

- 8 -

**EXHIBIT 25 PAGE 337**

1   (W.D.N.Y. 2001) (granting motion for protective order where party had not yet

2   designated an expert as a "testifying expert").  Thus, to the extent MGA has

3   consulted with *any* undesignated experts in this case in anticipation of litigation or

4   for trial preparation purposes, Mattel is not yet entitled to depose that expert barring

5   exceptional circumstances.  *In re Shell Oil Refinery*, 132 F.R.D. at 440 (defendant

6   had no obligation to decide which experts it would call at trial or disclose

7   information about any experts expected to be called until deadline for designating

8   experts pursuant to case management order).  Rather, Mattel must wait until MGA

9   makes the strategic decision to designate an expert as a testifying expert unless it

10  can show "exceptional circumstances." *Id.*

11          This Court already has advised the parties to obtain their own experts in

12  connection with any ink-testing or dating of documents.[16]  If the Special Master's

13  order is permitted to stand, however, MGA will be the only party in this litigation

14  required to disclose its expert designations far earlier than required by this Court's

15  Scheduling Order and would require the deposition testimony of a consulting expert

16  without the requisite exceptional circumstances required under Rule 26(4)(B)(4).

17  Mattel should not be allowed to gain access to MGA's consulting expert in advance

18  of even hiring one of its own.  Compelling the testimony of MGA's consulting

19  expert at this point clearly violates Rule 26(b)(4)(B), which was designed to prevent

20  litigants from "trying to cut case-preparation corners by leaching basic information

21  or valuable opinions from experts retained by their opponents." *See In re Pizza*

22  *Time Theatre Securities Litigation*, 113 F.R.D. 94, 96 (N.D. Cal. 1986).

23          To the extent that MGA decides to designate a testifying expert on ink-

24  testing, MGA certainly will disclose the identity of expert witnesses to be called at

25  trial by no later than November 14, 2007, and will produce such expert for

26  deposition in accordance with the Federal Rules and this Court's Scheduling Order.

27

28  _____
    [16] See Burr Decl., Exh. 6.

-9-

**EXHIBIT 25 PAGE 338**

1  Until such time as MGA designates its testifying experts, however, it should not be
2  required to produce any such expert for a deposition.

3

4  **IV.    <u>CONCLUSION</u>**

5       For the foregoing reasons, the Court should vacate and reverse the Special

6  Master's Order compelling MGA to designate witnesses on Topics 26, 34 and 41.

7

8       Dated: May 31, 2007                    O'MELVENY & MYERS LLP

9                                              *Michael Keats*

10                                             By:  Michael Keats
                                               Attorneys for MGA Entertainment, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 10 -

**EXHIBIT 25 PAGE 339**

1

## PROOF OF SERVICE

2

        I, Maria Silva, declare:

3

        I am a resident of the State of California and over the age of eighteen years, and

4

not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On May 31, 2007, I served the within documents:

5

        **MGA ENTERTAINMENT INC.'S NOTICE OF MOTION**

        **OBJECTING TO PORTIONS OF THE DISCOVERY**

6

        **MASTER'S MAY 16, 2007 ORDER GRANTING MATTEL'S**

        **MOTION TO COMPEL MGA TO PRODUCE WITNESSES**

7

        **FOR DEPOSITION PURSUANT TO RULE 30(b)(6)**

8

        **MGA ENTERTAINMENT INC.'S MEMORANDUM OF**

        **POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

9

        **OBJECTING TO PORTIONS OF THE DISCOVERY**

        **MASTER'S MAY 16, 2007 ORDER GRANTING MATTEL'S**

10

        **MOTION TO COMPEL MGA TO PRODUCE WITNESSES**

        **FOR DEPOSITION PURSUANT TO RULE 30(b)(6)**

11

12

        **DECLARATION OF KENDALL J. BURR IN SUPPORT OF**

        **MGA ENTERTAINMENT INC.'S MOTION OBJECTING TO**

13

        **PORTIONS OF THE DISCOVERY MASTER'S MAY 16, 2007**

        **ORDER GRANTING MATTEL'S MOTION TO COMPEL**

14

        **MGA TO PRODUCE WITNESSES FOR DEPOSITION**

        **PURSUANT TO RULE 30(b)(6)**

15

        **[PROPOSED] ORDER GRANTING MGA**

16

        **ENTERTAINMENT INC.'S MOTION OBJECTING TO**

        **PORTIONS OF THE DISCOVERY MASTER'S MAY 16,**

17

        **2007 ORDER GRANTING MATTEL'S MOTION TO**

        **COMPEL MGA TO PRODUCE WITNESSES FOR**

18

        **DEPOSITION PURSUANT TO RULE 30(b)(6)**

19

20

☒        by causing to be personally served the document(s) listed above to the person(s) listed below.

21

Timothy L. Alger, Esq.

22

Quinn Emanuel Urquhart Oliver & Hedges, LLP

865 South Figueroa Street, 10th Floor

23

Los Angeles, CA 90017-2543

24

25

26

27

28

**EXHIBIT 25 PAGE 340**

1    ☒    by putting a true and correct copy thereof, together with an unsigned copy of this declaration, in a sealed envelope designated by the carrier, with delivery fees paid or provided for, for delivery the next business day to the person(s) listed below, and placing the envelope for collection today by the overnight courier in accordance with the firm's ordinary business practices. I am readily familiar with this firm's practice for collection and processing of overnight courier correspondence. In the ordinary course of business, such correspondence collected from me would be processed on the same day, with fees thereon fully prepaid, and deposited that day in a box or other facility regularly maintained by Airborne Express, which is an express carrier.

Michael H. Page, Esq.                     Patricia Glaser, Esq.
Keker & Van Nest LLP                   Christensen, Glaser, Fink, Jacobs
710 Sansome Street                          Weil and Shapiro, LLP
San Francisco, CA 94111-1704        10250 Constellation Boulevard
                                                          19th Floor
                                                          Los Angeles, CA 90067

        I declare under penalty of perjury under the laws of the United States that the above is true and correct.

        Executed on May 31, 2007, at Los Angeles, California.

                                                          _____
                                                                        Maria Silva

**EXHIBIT 25 PAGE 341**