# EXHIBIT 26

**PRIORITY SEND**
& ENTERED

*THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                    Date:  July 2, 2007

Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS

===============================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                          Theresa Lanza
           Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                         John B. Quinn
                                      Brett Dylan Proctor
                                      Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali
Patricia Glaser

PROCEEDINGS:   MINUTE ORDER

ENTERED
CLERK, U.S. DISTRICT COURT

JUL - 5 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY



DOCKETED ON CM

JUL - 5 2007

BY _____ 164

    As set forth more fully herein, the Court hereby makes the following ruling regarding matters heard on July 2, 2007:

(1)    The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505);

(3)    The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90
CIVIL – GEN

                          1

Initials of Deputy Clerk _____
Time: 01/15

608

07|c2|c7

**EXHIBIT 26 PAGE 342**

regarding date of production of documents (docket #545); and

(4)   The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)   The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)   Motion re Trial Structure (docket #462)

Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL**, as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)   MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)   MGA's Ex Parte Application regarding date of production of documents (docket #545).

The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

MGA acknowledges that it has raised an argument before the Court that was not raised

MINUTES FORM 90
CIVIL – GEN

2

Initials of Deputy Clerk __jh_____
Time: 01/15

**EXHIBIT 26 PAGE 343**

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B).  MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below.  The Court disagrees.  Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds.  A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production.  MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law.  Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery.  See Brown Bag Software v. Symantec Corp., 960 F.2d 1485, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature.  They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor.  The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings.  That is clear.  However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial.  There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims.  Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim.  Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers.  This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result.  However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here.  Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __jh_____
Time: 01/15

**EXHIBIT 26 PAGE 344**

later than two weeks after that date.  Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above.  The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above.  The application is **DENIED** in all other respects.

(4)    MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added).  "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation."  Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted).  Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

**EXHIBIT 26 PAGE 345**

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)     Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

# EXHIBIT 27

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | THIRD NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |
| Defendant. | Discovery Cut-Off: October 22, 2007<br>Pre-Trial Conference: January 14, 2008<br>Trial Date: February 12, 2008 |
| AND CONSOLIDATED ACTIONS | |

06/05/c7

07209/2048031.1

THIRD NOTICE OF DEPOSITION OF MGA

EXHIBIT 27 PAGE 347

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 26, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.  Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use Livenote or other technology for real-time transcription of the testimony.

DATED:  June 5, 2007                      QUINN EMANUEL URQUHART OLIVER &
                                          HEDGES, LLP


                                          By
                                             Michael T. Zeller
                                             Attorneys for Mattel, Inc.

07209/2048031.

-1-

THIRD NOTICE OF DEPOSITION OF MGA

EXHIBIT 27 PAGE 348

# EXHIBIT A

1.   "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.   "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.   "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

-2-

THIRD NOTICE OF DEPOSITION OF MGA

EXHIBIT 27 PAGE 349

4.     "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.     "ANGEL" refers to those projects, products, dolls or DESIGNS, sometimes called "Angel Faces" and/or "Prayer Angels," that MGA has claimed are the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734. Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "ANGEL" does not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

6.     "IDENTIFY" or "IDENTITY" means the following:

(a)     With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)     With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)     With reference to an account with a bank or financial institution, means the name and address of the bank or financial institution, the account

THIRD NOTICE OF DEPOSITION OF MGA

**EXHIBIT 27 PAGE 350**

number(s) for or otherwise associated with such account and the name of each holder, including without limitation each beneficial holder, of each such account.

(d)   With reference to a STORAGE DEVICE, means the manufacturer name, brand, model name and number, serial number and all other manufacturer identifiers, and the technical specifications and capacities of such STORAGE DEVICE.

7.   "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

8.   "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically or optically.

9.   "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether permanently, temporarily or otherwise, to create, generate, transmit, copy, retain, store or maintain DIGITAL INFORMATION.

10.   "EMPLOYEE AGREEMENT" or "EMPLOYEE AGREEMENTS" means any agreement or contract between YOU and any of YOUR employees that purports to assign to, convey to or vest in YOU in any manner, whether in whole or in part, and whether expressly or by implication or in effect, any right, title or interest in any such employee's inventions, works, work product, ideas, concepts, discoveries, improvements, processes, developments, DESIGNS, know-how, data and/or formulae.

11.   "FAMILY MEMBER" means any PERSON who at any time is, was or has been a parent, spouse, or child of another PERSON.

12.   "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing,

07209/2048031.

-4-

EXHIBIT 27 PAGE 351

mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

13.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

14.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

15.    The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning

-5-

THIRD NOTICE OF DEPOSITION OF MGA

EXHIBIT 27 PAGE 352

all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

### Topics of Examination

1. The IDENTITY, current or last known location, and disposition of each STORAGE DEVICE that each of the following PERSONS has used to create, generate, prepare, draft, send and/or receive any DOCUMENT or DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL at any time since January 1, 1999, including without limitation the date of acquisition and the date of disposition of each such STORAGE DEVICE:

Isaac Larian

Farhad Larian

Paula Garcia

BRYANT

Kami Gillmour

Veronica Marlow

Mercedeh Ward

Margaret Hatch-Leahy

Jennifer Maurus

Judy Rich

Ninette Pembleton

Kerri Brode

Victoria O'Connor

Aileen Storer

Charles O'Connor

Helene Bartels

Colleen O'Higgins

-6-

07209/2048031.

EXHIBIT 27 PAGE 353

1        Vivian Matt

2        Maureen Mullen

3        Rachel Harris

4        Barbara Malcolm

5        David Dees

6        Ben Ton

7        Dave Malacrida

8        2.     The IDENTITY, current or last known location, and disposition of

9 each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this

10 Notice, including without limitation the date of creation and the date of disposition of

11 each such backup or copy.

12        3.     YOUR search for and production of DOCUMENTS and DIGITAL

13 INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

14        4.     Each of YOUR EMPLOYEE AGREEMENTS since January 1,

15 1995, including without limitation the meaning, validity and enforcement of such

16 EMPLOYEE AGREEMENTS.

17        5.     Any requirement or practice by YOU, at any time since January 1,

18 1995, that YOUR employees sign or execute EMPLOYEE AGREEMENTS.

19        6.     YOUR statements to Christopher Palmeri in connection with the

20 *Business Week* article entitled "To Really Be A Player, Mattel Needs Hotter Toys,"

21 published on or about July 28, 2003, including without limitation in connection with the

22 statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around

23 in navel-bearing tops and hip-huggers."

24        7.     YOUR statements to Denise I. O'Neal in connection with the

25 *Chicago Sun-Times* article entitled "Bratz Packers Are What's Cool in Doll World,"

26 published on or about March 5, 2004, including without limitation in connection with

27 the statements that MGA's "creative team decided the name should be catchy and not

28

1   have more than six letters. Keeping with today's trend of making names more 'cool' by

2   changing the spelling, MGA executives decided to replace the 's' with a 'z.'"

3          8.     YOUR statements to Jeff Weiss in connection with the *San*

4   *Fernando Valley Business Journal* article entitled "Immigrant's Creative Company

5   Shakes Up Toy Industry," published on or about March 29, 2004, including without

6   limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

7          9.     The IDENTITY of each PERSON who YOU had perform, or who

8   YOU requested, asked or solicited to perform, any "test project" in advance of or in

9   consideration of employment by YOU since January 1, 1995, including without

10  limitation the IDENTITY of each such PERSON who was a MATTEL employee at the

11  time.

12         10.    YOUR relationship with Stephen Lee since April 1, 2004, including

13  without limitation any agreements or contracts between YOU and Stephen Lee.

14         11.    Payments of money or any other item of value that YOU have made

15  to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac Larian since

16  January 1, 1999, including without limitation (a) the amounts of such payment and the

17  equivalent dollar value of each of item of value, (b) the dates of such payment, (c) the

18  IDENTITY of each recipient of such payment, (d) the IDENTITY of each bank or

19  financial institution account to which such payment was made and (e) the reasons for

20  each such payment.

21         12.    Payments of money or any other item of value that YOU have made

22  to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad Larian since

23  January 1, 1999, including without limitation (a) the amounts of each such payment and

24  the equivalent dollar value of each of item of value, (b) the timing of each such

25  payment, (c) the IDENTITY of each recipient of each such payment, (d) the

26  IDENTITY of each bank or financial institution account to which such payment was

27  made and (e) the reasons for each such payment.

28

EXHIBIT 27 PAGE 355

13.     Payments of money or any other item of value that YOU have made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad Zarabi since January 1, 1999, including without limitation (a) the amounts of each such payment and the equivalent dollar value of each of item of value, (b) the timing of each such payment, (c) the IDENTITY of each recipient of each such payment, (d) the IDENTITY of each bank or financial institution account to which such payment was made and (e) the reasons for each such payment.

14.     The nature, extent and timing of work and services that Veronica Marlow, Amy Myers, Sarah Halpern, Maureen Mullen and David Dees provided to, or were requested, solicited or proposed by, YOU at any time from January 1, 1999 through December 31, 2001, inclusive.

15.     Payments of money or any other item of value that YOU have made to Veronica Marlow, Amy Myers, Sarah Halpern, Maureen Mullen and David Dees since January 1, 1999, including without limitation (a) the amounts of each such payment and the equivalent dollar value of each of item of value, (b) the timing of each such payment, (c) the IDENTITY of each recipient of each such payment, (d) the IDENTITY of each bank or financial institution account to which such payment was made and (e) the reasons for each such payment.

16.     The IDENTITY of each PERSON who is not, as of June 5, 2007, an MGA employee and for whom or on behalf of whom YOU are paying, have paid or have offered, promised or agreed to pay fees or costs in connection with this ACTION, any contracts, agreements or other DOCUMENTS between YOU and such PERSON pertaining thereto, the amounts YOU have so paid or agreed to pay to such PERSON and the dates on which such payments were made.

THIRD NOTICE OF DEPOSITION OF MGA

EXHIBIT 27 PAGE 356

# EXHIBIT 28

## CONFORMED COPY

1 Hon. Edward A. Infante (Ret.)
JAMS
2 Two Embarcadero Center
Suite 1500
3 San Francisco, California 94111
Telephone:    (415) 774-2611
4 Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

                            EASTERN DIVISION
9

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12            Plaintiff,

13       v.                                Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15            Defendant.                    **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION TO COMPEL MGA TO
                                           PRODUCE WITNESSES PURSUANT
17                                         TO THIRD NOTICE OF DEPOSITION
                                           UNDER RULE 30(b)(6); DENYING
18                                         REQUEST FOR SANCTIONS**

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23                        I. INTRODUCTION

24       On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to

25  Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for

26  Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA")

27  to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice.  On

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    1

EXHIBIT 28 PAGE 357

July 31, 2007, MGA submitted an opposition brief.  On August 6, 2007, Mattel submitted a reply brief.  The matter was heard on September 24, 2007.  Having considered the motion papers and the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005, which specified eight topics for deposition.  Mattel served a Second Notice of Deposition of MGA in February of 2007, which specified forty-six topics for deposition.  On June 5, 2007, Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of the present motion to compel.  The Third Notice specifies sixteen topics for deposition.  On June 29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and conferred.  The parties were not able to resolve their disputes regarding four subject matters: hard drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian and Morad Zarabi (Topic 11-13).  The topics at issue are set forth below.

### Hard Drives and Other Storage Devices

1. The IDENTITY, current or last known location, and disposition of each STORAGE DEVICE that each of the following PERSONS has used to create, generate, prepare, draft, send and/or receive any DOCUMENT or DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL at any time since January 1, 1999, including without limitation the date of acquisition and the date of disposition of each STORAGE DEVICE:  Isaac Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich, Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen, Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 28 PAGE 358

2.      The IDENTITY, current or last known location, and disposition of each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this Notice, including without limitation the date of creation and the date of disposition of each such backup or copy.

3.      YOUR search for and production of DOCUMENTS and DIGITAL INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

<u>Prior Inconsistent Statements to the Press</u>

6.      YOUR statements to Christopher Palmeri in connection with the Business Week article entitled "To Really Be A Player, Mattel Needs Hotter Toys," published on or about July 28, 2003, including without limitation in connection with the statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers."

7.      YOUR statements to Denise I. O'Neal in connection with the Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll World," published on or about March 5, 2004, including without limitation in connection with the statements that MGA's "creative team decided the name should be catchy and not have more than six letters. Keeping with today's trend of making names more 'cool' by changing the spelling, MGA executives decided to replace the 's' with a 'z'"

8.      YOUR statements to Jeff Weiss in connection with the San Fernando Valley Business Journal article entitled "Immigrant's Creative Company Shakes Up Toy Industry," published on or about March 29, 2004, including without limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

<u>"Test Projects" for MGA</u>

9.      The IDENTITY of each PERSON who YOU had perform, or who

**EXHIBIT 28 PAGE 359**

1   YOU requested, asked or solicited to perform, any "test project" in advance of or

2   in consideration of employment by YOU since January 1, 1995, including without

3   limitation the IDENTITY of each such PERSON who was a MATTEL employee

4   at the time.

5   <u>Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi</u>

6        11.    Payments of money or any other item of value that YOU have

7   made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac

8   Larian since January 1, 1999, including without limitation (a) the amounts of such

9   payment and the equivalent dollar value of each of item of value, (b) the dates of

10  such payment, (c) the IDENTITY of each recipient of such payment, (d) the

11  IDENTITY of each bank or financial institution account to which such payment

12  was made and (e) the reasons for each such payment.

13       12.    Payments of money or any other item of value that YOU have

14  made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

15  Larian since January 1, 1999, including without limitation (a) the amounts of each

16  such payment and the equivalent dollar value of each of item of value, (b) the

17  timing of each such payment, (c) the IDENTITY of each recipient of each such

18  payment, (d) the IDENTITY of each bank or financial institution account to

19  which such payment was made and (e) the reasons for each such payment.

20       13.    Payments of money or any other item of value that YOU have

21  made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad

22  Zarabi since January 1, 1999, including without limitation (a) the amounts of each

23  such payment and the equivalent dollar value of each item of value, (b) the timing

24  of each such payment, (c) the IDENTITY of each recipient of each such payment,

25  (d) the IDENTITY of each bank or financial institution account to which such

26  payment was made and (e) the reasons for each such payment.

27  Zeller Decl., Ex. 23.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 28 PAGE 360

1    Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,

2    9 and 11-13, and overruling all of MGA's objections and limitations.  Mattel contends that the

3    testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as

4    cumulative or duplicative of any other deposition testimony already given in the case.

5    MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave

6    of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.

7    MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for

8    examining MGA any further.  MGA further contends that Mattel has not established the requisite

9    good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify

10   its objections to the Third Notice.  Lastly, MGA contends that Mattel has had many opportunities

11   to obtain, and in many cases has already obtained, the information it now moves to compel.

12                                   III. STANDARDS

13   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

14   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

15   party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

16   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

17   Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of

18   use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably

19   cumulative or duplicative, or is obtainable from some other source that is more convenient, less

20   burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

21   discovery in the action to obtain the information sought; or (iii) the burden or expense of the

22   proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

23   amount in controversy, the parties' resources, the importance of the issues at stake in the

24   litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

25   26(b)(2)(C).

26   Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including

27   a party, by deposition upon oral examination without leave of court, except as provided in Rule

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 28 PAGE 361

1  30(a)(2), Fed.R.Civ.P.  In particular, Rule 30(a)(2) specifies that a party must obtain leave of

2  court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2),

3  Fed.R.Civ.P., if "the person to be examined already has been deposed in the case."  Fed.R.Civ.P.

4  30(a)(2)(B).

5                                    IV. DISCUSSION

6          As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies

7  to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P.  There is caselaw to support each

8  party's position.  See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st

9  Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re

10  Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second

11  Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza

12  Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without

13  leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D.

14  N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions).  For

15  purposes of the present motion, however, it is unnecessary to resolve this conflict in the law

16  because the debate is purely academic and inconsequential.  As Mattel has requested, Mattel's

17  motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with

18  additional topics.  In evaluating the appropriateness of the topics, it is Mattel's burden to

19  demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis

20  Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2),

21  Fed.R.Civ.P.

22                     Hard Drives and Other Storage Devices (Topics 1-3)

23          Topic 1 seeks information regarding the location and disposition of computer hard drives

24  or other storage devices used by specified MGA employees or contractors that contain or

25  contained documents related to the Bratz or Angel projects.  Topic 2 seeks the identification and

26  last known location of any backup, copy or image of the hard drives or storage devices identified

27  in Topic 1.  Topic 3 seeks information regarding MGA's search for and production of documents

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                    6

EXHIBIT 28 PAGE 362

1  and digital information from the hard drives and storage devices referenced in Topic 1.

2       MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,

3  irrelevant, and not reasonably calculated to lead to admissible evidence.  MGA also objected to

4  Topics 1-3 to the extent that the information sought is obtainable through other more convenient,

5  less burdensome and less expensive means.  Lastly, MGA objected to Topics 1-3 as unreasonably

6  cumulative and duplicative of information already provided by Ken Lockhart, Vice President and

7  Chief Information Officer for MGA.

8       Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule

9  26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not

10  privileged, that is relevant to the claim or defense of any party, including "the existence,

11  description, nature, custody, condition, and location of any books, documents or other things."  A

12  portion of the discovery sought, however, is unreasonably cumulative and duplicative of

13  information already provided by Mr. Lockhart.  MGA designated Mr. Lockhart as a 30(b)(6)

14  witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital

15  information systems and application software, employees' electronic messaging systems, and

16  MGA's policies regarding the use of transportable media.  Mr. Lockhart testified about the

17  location and disposition of MGA employees' hard drives and storage devices in general.

18       Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the

19  testimony previously given by Mr. Lockhart in that Mattel now seeks information about the

20  locations and dispositions of hard drives used by 24 named individuals.  Mattel contends that the

21  testimony it seeks will enable it to assess MGA's production, including whether any documents

22  requested or compelled by the Court were destroyed, not collected or otherwise made unavailable

23  to Mattel.  Mattel's Reply at p.7.

24       Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be

25  legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the

26  circumstances of this case.  Mattel has accused MGA of obstructing discovery, and in particular

27  withholding Bryant's computer.  There is no evidence, however, to suggest that MGA has refused

28

**EXHIBIT 28 PAGE 363**

1   or failed to search for and produce responsive documents located on the hard drives of the other

2   individuals named in Topic 1. It is burdensome and expensive to prepare a witness to testify

3   about the locations and dispositions of hard drives used for 24 different individuals. The likely

4   benefit of undergoing such a burden and expense is doubtful. Furthermore, there are other less

5   burdensome and less expensive means of assessing whether MGA has complied with its

6   discovery obligations, including for example, document requests and interrogatories. Therefore,

7   Mattel's motion is denied as to Topics 1-3.

8                   <u>Prior Inconsistent Statements to the Press (Topics 6-8)</u>

9           Topics 6-8 seek testimony regarding three public statements made by Isaac Larian

10  regarding who conceived of Bratz. MGA objected to Topics 6-8 as irrelevant and not reasonably

11  calculated to lead to admissible evidence. MGA also objected to Topics 6-8 to the extent that the

12  information sought is obtainable through other more convenient, less burdensome and less

13  expensive means. Further, MGA objected to Topics 6-8 as unreasonably cumulative and

14  duplicative of information already provided by MGA and/or Carter Bryant. MGA also objected

15  to a deposition on these Topics "to the extent that the statements referenced above were not made

16  by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6)

17  designation." Zeller Decl., Ex. 24.

18          Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition

19  because each of the statements identified therein was made by MGA's Chief Executive Officer,

20  Isaac Larian. Mattel acknowledges that it already deposed Isaac Larian regarding one of the

21  articles identified in Topics 6-8, but contends that it is not attempting to re-depose him. Rather,

22  Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will

23  not be "sandbagged" at trial. Mattel's Reply at p.6.

24          MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac

25  Larian is the person who should be, and already has been, deposed about the statements identified

26  in Topics 6-8. MGA also contends that Mattel opted to limit its examination of Isaac Larian to

27  one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                        8

**EXHIBIT 28 PAGE 364**

1   MGA now.  MGA also contends that Mattel could avail itself of other discovery methods, such as

2   interrogatories or requests for admission, to obtain further information about the publications

3   identified in Topics 6-8.

4          Topics 6-8 seek information relevant to the central issue in the case:  who conceived of

5   Bratz.  Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will

6   bind the corporation.  The testimony Mattel now seeks is not unreasonably cumulative or

7   duplicative of testimony it has already sought from Isaac Larian because Mattel previously

8   questioned Isaac Larian about only one of the articles identified in Topics 6-8.  Further, the likely

9   benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics

10  6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel

11  seeks.  Mattel's motion is granted as to Topics 6-8.

## "Test Projects" for MGA (Topic 9)

13         In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA

14  requested, asked or solicited to perform, any "test project" in advance of or in consideration of

15  employment by MGA since January 1, 1995.  MGA objected to Topic 9 as irrelevant, not

16  reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly

17  burdensome, and unreasonably cumulative and duplicative.  MGA also objected to Topic 9 as

18  vague and ambiguous, particularly with respect to the term "test project."  MGA also objected to

19  Topic 9 to the extent that the information sought is obtainable through other, more convenient,

20  less burdensome and less expensive means.  MGA also objected to Topic 9 as seeking

21  confidential, proprietary, and commercially sensitive information with no relevance to the

22  litigation.

23         When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind

24  of a project for" MGA.  Zeller Decl., Ex. 29 at 9:19-20.  He also referred to this "tryout" project

25  as a "test assignment."  Id. at 515-516.  In light of Bryant's testimony, Mattel's stated purpose of

26  Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's

27  working for MGA while employed by Mattel was no different than a supposedly standard

28

1  industry practice of having candidates for creative positions make artwork as part of the job

2  interview." Mattel's Motion at p.22.

3      MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in

4  its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains

5  objectionable as overbroad, reasoning that it would require MGA to provide information "with

6  regard to how it proceeded with hiring virtually every single employee hired since 1995."

7  MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require

8  MGA to have a designee review and potentially memorize information about every single person

9  who has applied for a job at MGA since 1995, particularly when Bryant only began working for

10  MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6)

11  deposition to obtain the information called for in Topic 9.

12      Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their

13  claim that Bryant's work for MGA while employed by Mattel was no different than a standard

14  industry practice of having candidates for creative positions make artwork as part of the job

15  interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In

16  particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin

17  working at MGA until the year 2000. Topic 9 is also objectionable because the information

18  sought is more appropriately obtained through a contention interrogatory, which would be

19  significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's

20  motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is

21  granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998

22  through 2004.

23  <u>Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)</u>

24      In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac

25  Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to

26  these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible

27  evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

**EXHIBIT 28 PAGE 366**

1  also objected to Topics 11-13 to the extent that the information sought is obtainable through

2  other, more convenient, less burdensome and less expensive means.  MGA also objected to

3  Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no

4  relevance to the litigation.

5       Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad

6  Larian that involved the timing of the creation of Bratz.  More specifically, Farhad Larian claimed

7  that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and

8  alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.

9  Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and

10  therefore seeks information that may establish their bias.  Mattel also emphasizes that Isaac

11  Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's

12  claim for punitive damages, and may be used as impeachment evidence.  Lastly, although Mattel

13  acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel

14  contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15       MGA contends that Topics 11-13 are not relevant to this lawsuit.  In particular, MGA

16  objects to Topics 12 and 13 as seeking "private financial records of persons who are neither

17  parties nor witnesses in this action, and whose only connection is knowing people involved in the

18  lawsuit."  MGA's Opposition at p. 13.  With regard to payments to Isaac Larian, MGA contends

19  that Mattel already had the opportunity to ask him about payments during his deposition.  MGA

20  also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at

21  this time.  Even if Mattel is entitled to conduct such discovery, MGA contends that payments

22  made to him would not establish his net worth because they represent only one of many sources

23  of income and do not account for his other assets and liabilities.

24       MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and

25  defenses in the case.  Payments to Isaac Larian and Farhad Larian may also show possible bias

26  and be used for impeachment purposes.  Moreover, MGA's payments to Isaac Larian may be

27  relevant to Mattel's claim for punitive damages.  Payments to Isaac Larian are a component of his

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                     11

EXHIBIT 28 PAGE 367

1   net worth, even if they represent one source of income. The burden of producing such information

2   does not outweigh its relevance, taking into consideration the circumstances of this case.

3   Furthermore, there is no stay on discovery pertaining to punitive damages.  Accordingly, Mattel's

4   motion is granted as to Topics 11 and 12.

5         In contrast, MGA's payments to Morad Zarabi are irrelevant.  His only connection to this

6   litigation appears to be with the arbitration proceedings.  Any potential relevance of MGA's

7   payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial

8   affairs.  Mattel's motion is denied as to Topic 13.

9                         V. CONCLUSION

10      For the reasons set forth above, it is hereby ordered as follows:

11      1.    Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

12      2.    Mattel's motion to compel is denied as to Topics 1-3, 9 and 13.  In lieu of taking a

13   deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory

14   regarding Topic 9 that is limited to the years 1998 through 2004.

15      3.  Mattel's request for sanctions is denied.

16   Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

17   Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20   Dated: September _25_, 2007

21                       HON. EDWARD A. INFANTE (Ret.)

22                         Discovery Master

23

24

25

26

27

28

EXHIBIT 28 PAGE 368

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 26, 2007, I served the attached ORDER GRANTING IN PART AND DENYI8NG IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 26, 2007, at San Francisco, California.

Sandra Chan

**EXHIBIT 28 PAGE 369**

# EXHIBIT 29

CONFORMED COPY



FILED

2007 AUG 21 PH 2:00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
EASTERN DIVISION

BY:

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11  CARTER BRYANT, an individual,        CASE NO. C 04-09049 SGL (RNBx)
                                         JAMS Reference No.1100049530
12              Plaintiff,

13        v.                             Consolidated with
                                         Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.               ORDER GRANTING MATTEL'S
                                         MOTION TO COMPEL CARTER
16                                       BRYANT TO ANSWER REQUESTS
                                         FOR ADMISSION OR TO ORDER
17                                       REQUESTS ADMITTED; DENYING
                                         REQUEST FOR MONETARY
18                                       SANCTIONS

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23                         I. INTRODUCTION

24        On June 26, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Carter Bryant

25  To Answer Requests For Admission Or To Order Requests Admitted And For Monetary

26  Sanctions."  More specifically, Mattel seeks an order compelling Carter Bryant ("Bryant") to

27  answer Request Nos. 33, 34, 100, 106, 112, 118, 126, 127, 129, 131, 133, 135, 137, 139, 141 and

28
    Bryant v. Mattel, Inc.,                                              1
    CV-04-09049 SGL (RNBx)

EXHIBIT 29 PAGE 370

1   143 in Mattel's Third Set of Requests for Admission or an order that such Requests are deemed

2   admitted. Mattel also seeks $3,500 in sanctions. On July 3, 2007, Bryant submitted an opposition

3   brief, and on July 9, 2007, Mattel submitted a reply brief. The matter was heard on August 13,

4   2007. Having considered the motion papers and the comments of counsel at the hearing, Mattel's

5   motion to compel Bryant to answer requests for admission is granted and the request for sanctions

6   is denied.

## II. BACKGROUND

7   
8       In February of 2007, Mattel served its Third Set of Requests for Admission to Bryant (the

9   "Requests"). Among other things, the Requests seek information regarding: (a) the timing of

10  meetings between Bryant and MGA regarding Bratz, work performed by Bryant on Bratz, designs

11  created by Bryant for Bratz and payments made to Bryant by MGA for Bratz; (b) the contract

12  between MGA and Bryant whereby Bryant purported to assign all of his rights, title and interest

13  in Bratz to MGA; and (c) whether specific Bratz works subject to copyright registrations are

14  derivative of other specific Bratz works.

15      In March of 2007, Bryant served his responses. In response to some of the requests asking

16  Bryant to admit that certain works were derivative of other Bratz works[1], Bryant asserted

17  numerous objections, including that they "call[ed] for the disclosure of information subject to the

18  attorney-client privilege, the work product doctrine and other applicable privileges" and "call[ed]

19  for a legal conclusion." See Bryant's Responses to Request Nos. 100, 106, 112, 118, 126, 127,

20  129, 131, 133, 135, 137, 139, 141 and 143, Kidman Decl., Ex. 2. Bryant also responded that "the

21  information known or readily obtainable" by Bryant was "insufficient" to enable him to admit or

22  deny the requests.

23      Bryant also objected and refused to answer two requests for admission regarding the

24  validity and enforceability of his contract with MGA on the grounds that the requests called for a

25  "legal conclusion" and "the disclosure of information subject to the attorney-client privilege, the

_____

26  [1]   Hereinafter, these requests are collectively referred to as the "requests for admission regarding derivative works."

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 29 PAGE 371

1  work product doctrine, and other applicable privileges." See Bryant's Responses to Request Nos.
2  33 and 34, Kidman Decl., Ex. 2.

3      After meeting and conferring, Bryant agreed to provide supplemental responses to the
4  requests for admission regarding derivative works.  Bryant, however, persisted in his objection to
5  the two requests regarding his contract with MGA on "legal conclusion" and privilege grounds.

6      Bryant served supplemental and amended responses on May 29, June 11, and June 29,
7  2007.  With respect to the requests for admission regarding derivative works, Bryant's responses
8  consisted of objections on the grounds that the requests called for a legal conclusion and "for the
9  disclosure of information subject to the attorney-client privilege, the work product doctrine, and
10 other applicable privileges." See Bryant's Responses to Request Nos. 100, 106, 112, 118, 126,
   127, 129, 131, 133, 135, 137, 139, 141 and 143, Kidman Decl., Ex. 6.

11     Mattel contends that MGA's objections and refusal to answer have no merit.  More
12 specifically, Mattel contends that Rule 36, Fed.R.Civ.P., provides that requests for admission may
13 relate to the application of law to fact and the ultimate issues in the case.  Mattel contends that
14 only requests to admit pure conclusions of law unrelated to the facts of the case are objectionable,
15 and that none of its requests for admission even remotely ask for pure questions of law.  Further,
16 Mattel contends that Bryant's objection that the requests call for privileged information and work
17 product is without merit.  Mattel argues that a party cannot avoid answering requests for
18 admission that involve the application of law to fact by claiming that it needs to confer with
19 counsel in order to do so.  Mattel contends that to hold otherwise would effectively gut the
20 provision of Rule 36 authorizing such requests.

21     Bryant contends that Mattel's requests for admission improperly call for ultimate legal
22 conclusions, relying primarily upon Playboy Enterprises, Inc. v. Welles, 60 F.Supp.2d 1050, 1057
23 (S.D. Cal. 1999).  Bryant also contends that the requests for admission are improper because they
24 seek information covered by the attorney-client privilege or joint defense privilege or the work
25 product doctrine.  Bryant asserts that any legal opinion he may have of whether a work is
26 derivative of another inevitably will seek the legal opinions of, and communications from, his
27 counsel.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

**EXHIBIT 29 PAGE 372**

### III. DISCUSSION

Rule 36 of the Federal Rules of Civil Procedure governs requests for admission and provides, in pertinent part, that "[a] party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request." Fed.R.Civ.P. 36(a).  Further, "[a] party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why the party cannot admit or deny it."  Id.

The Advisory Committee Notes to the 1970 Amendment to Rule 36 provide the following additional guidance:

> As revised, the subdivision provides that a request may be made to admit any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law to fact.  It thereby eliminates the requirement that the matters be "of fact."  This change resolves conflicts in the court decisions as to whether a request to admit matters of "opinion" and matters involving "mixed law and fact" is proper under the rule. . . .
>
> *   *   *
>
> Not only is it difficult as a practical matter to separate "fact" from "opinion," see 4 *Moore's Federal Practice* ¶36.04 (2d ed. 1966); cf. 2A Barron & Holtzoff, *Federal Practice and Procedure* 317 (Wright ed. 1961), but an admission on a matter of opinion may facilitate proof or narrow the issues or both. An admission of a matter involving the application of law to fact may, in a given case, even more clearly narrow the issues.  For example, an admission that an employee acted in the scope of his employment may remove a major issue from the trial.  In *McSparran v Hanigan*, [225 F. Supp. 628 (E.D. Pa. 1963)], plaintiff admitted that "the premises on which said accident occurred, were occupied or under the control" of one of the defendants, 225 F.Supp. at 636.  This admission, involving law as well as fact, removed one of the issues from the lawsuit and thereby reduced the proof required at trial.  The amended provision does not authorize requests for admissions of law unrelated to the facts of the case.

1970 Advisory Committee Notes to Rule 36, Fed.R.Civ.P.

### Nos. 100, 106, 112, 118, 126-127, 129, 131, 133, 135, 137, 139, 141, 143 re Derivative Works

Mattel's requests for admission regarding derivative works all follow the same format. For example, Request for Admission No. 100 asks Bryant to "[a]dmit that the work registered as

**EXHIBIT 29 PAGE 373**

1   V A 1-090-287 is a derivative of the work registered as V A 1-218-487.  Kidman Decl., Ex. 1, p.

2   21.

3        Rule 36 plainly states that requests for admission may "relate to statements or opinions of

4   fact or the application of law to fact."  Mattel's requests for admission regarding derivative works

5   fall within this permissible category.  Courts have required parties to answer requests for

6   admission similar to Mattel's requests.  For example, in McSparran, supra, the plaintiff admitted

7   that "the premises on which said accident occurred, were occupied or under the control" of one of

8   the defendants.  In Marchand v. Mercy Med. Ctr., 22 F.3d 933, 937 (9th Cir. 1994), the Ninth

9   Circuit found that a request to admit that defendant's care and treatment of plaintiff failed to

10  comply with the "applicable standards of care" was permissible.  In First Options of Chicago, Inc.

11  v. Wallenstein, 1996 WL 729816 (E.D. Pa. 1996), the court ordered defendants to answer

12  requests to admit that they "owed a fiduciary duty" to certain creditors to preserve corporate

13  assets.  Id. at *3.  In Treister v. PNC Bank, 2007 WL 521935 (S.D. Fla. 2007), the court found

14  that a request for defendant to admit that it was not required to provide plaintiffs with copies of

15  cancelled checks drawn on their accounts "clearly calls for an application of law to fact."  Id. at
     *2.

16       The cases relied upon by Bryant do not dictate a contrary result.  Bryant cites to Playboy

17  Enterprises, Inc. v. Welles, 60 F.Supp.2d 1050, 1057 (S.D. Cal. 1999), where the court held that a

18  defendant could properly object and refuse to answer a request to (1) admit that she was a public

19  figure as defined in a Supreme Court case, and (2) admit that a specific contract provision

20  required her to obtain permission from Playboy Enterprises before using the designation

21  "Playmate of the Year."  The holding, however, is debatable.  One of the claims in the suit was

22  for defamation, which has different elements depending upon whether the party asserting

23  defamation is a public or non-public figure.  Furthermore, whether a party is a public figure or

24  non-public figure could be reasonably characterized as a mixed question of fact and law.  The

25  second request for an admission could also be reasonably characterized as a mixed question of

26  fact and law.  "A party's *understanding* of the *meaning* or intent of a document is a statement of

27  fact.  Thus, where the meaning of a document is at issue in the case, an RFA may seek the

28

1   admission or denial of the responding party's understanding of the *meaning or intent* of the

2   contract." See 11 Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ.Pro. Before

3   Trial, 11:2010 (The Rutter Group 2006) (emphasis in the original), citing Booth Oil Site Admin.

4   Group v. Safety-Kleen Corp., 194 F.R.D. 76, 80 (W.D. NY 2000). In any event, the Playboy

5   decision is not binding precedent.

6       Bryant also cites to Google, Inc. v. Am. Blind & Wallpaper Factory, Inc., No. C03-4340,

7   2006 WL 3290402, at *2 (N.D. Cal. 2006). In Google, the court concluded that a request

8   compelling defendant to admit that "under certain described circumstances no 'use' of American

9   Blind's trademarks would occur within the meaning of Lanham Act" was an impermissible

10   request for a conclusion of law, and therefore, defendant need not admit or deny, but could simply

11   respond with objections. It is unclear, however, what the "certain described circumstances" might

12   have been in Google. If the "certain described circumstances" to which the court referred were

13   purely hypothetical, then the Google decision is consistent with the admonition in the 1970

14   Advisory Committee Notes that Rule 36 "does not authorize requests for admission of law

15   unrelated to the facts of the case."

16       Another case relied upon by Bryant, Disability Rights Council of Greater Washington v.

17   Washington Metropolitan Area Transit Authority, 234 F.R.D. 1, 3, (D. D.C. 2006), involved

18   purely legal conclusions, and therefore is distinguishable. The last case relied upon by Bryant,

19   Photon, Inc. v. Harris Intertype, Inc., 28 F.R.D. 327, 328 (D. Mass. 1961), was issued well before

20   the 1970 amendments to Rule 36, and therefore is unreliable.

21       In sum, Mattel's requests for admission regarding derivative works are consistent with the

22   plain language of Rule 36 and several cases holding that requests for admission calling for

23   application of law to facts are permissible. See e.g., Marchand, supra; First Options of Chicago,

24   Inc., supra; and Treister, supra. Therefore, Bryant's "legal conclusion" objection is overruled.

25       Bryant's privilege and work product objections are also without merit. The fact that

26   Bryant may need to consult with counsel to respond to the requests does not make the response

27   privileged. To hold otherwise would effectively gut the provision of Rule 36 authorizing requests

28   that call for the application of law to fact. See also Convergent Business Systems, Inc. v.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

**EXHIBIT 29 PAGE 375**

1  Diamond Reporting, Inc., 1989 WL 92038, at *1 (E.D.N.Y. 1988) ("Seeking the facts and
2  documents which support a particular allegation in a complaint violates neither the attorney-client
3  or work product privileges.").
4      Mattel's motion is granted as to the requests for admission regarding derivative works.
5  Nos. 33 and 34 re Contract Between Bryant and MGA
6      Request No. 33 asks Bryant to "[a]dmit that YOU do not contest that the contract between
7  MGA and YOU attached as Exhibits 30 is valid." Request No. 34 similarly asks Bryant to
8  "[a]dmit that YOU do not contest that the contract between MGA and YOU attached as Exhibit
   30 is enforceable."
9
       These two requests for admission do not call for pure legal conclusions. Rather they are
10 akin to contention interrogatories that are routinely asked and answered. Therefore, Bryant's
11 objections to the requests are overruled and Bryant is ordered to admit or deny Request Nos. 33
12 and 34 consistent with Rule 36(a), Fed.R.Civ.P.
13                              IV. CONCLUSION
14      For the reasons set forth above, Mattel's motion to compel Bryant to answer requests for
15 admission is granted. Bryant shall admit or deny the requests in accordance with Rule 36(a),
16 Fed.R.Civ.P., no later than August 30, 2007. The request for sanctions is denied.
17      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
18 Master, Mattel shall file this Order with the Clerk of Court forthwith.
19
20 Dated: August 20 , 2007
21                              HON. EDWARD A. INFANTE (Ret.)
                               Discovery Master
22
23
24
25
26
27
28
   Bryant v. Mattel, Inc.,                                              7
   CV-04-09049 SGL (RNBx)

**EXHIBIT 29 PAGE 376**

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 20, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL CARTER BRYANT TO ANSWER REQUESTS FOR ADMISSION OR TO ORDER REQUESTS ADMITTED; DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 20, 2007, at San Francisco, California.

Sandra Chan

**EXHIBIT 29 PAGE 377**