# EXHIBIT 6

# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
CENTURY CITY
HONG KONG
LONDON
NEWPORT BEACH

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407
www.omm.com

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

OUR FILE NUMBER
0527436-8

WRITER'S DIRECT DIAL
(213) 430-6584

WRITER'S E-MAIL ADDRESS
jjenal@omm.com

April 30, 2007

**VIA E-MAIL AND U.S. MAIL**

Scott Kidman, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:  *Bryant v. Mattel, Inc and Consolidated Actions.*
     *Case No. CV 04-09049 SGL (RNBx)*

Dear Scott:

Your letter of April 25, 2007 purports to "confirm" what took place during our meet and confer at your offices on April 19, 2007 regarding MGA's responses to the 256 requests for admission contained in Mattel's Third Set of RFAs and MGA's responses to the 42 requests for admission contained in Mattel's Fourth Set of RFAs. Unfortunately, both the tenor and the content of your letter departs sharply from what occurred during our meeting. In particular, the strident and argumentative tone of your letter contrasts poorly with the far more cooperative spirit that was actually present during our meeting. Such a departure suggests that your participation at our meeting and your subsequent letter were more an attempt to "create a record" than a sincere effort to resolve a legitimate dispute.

While that recent history suggests that yet another otherwise avoidable discovery motion from Mattel is inevitable, nevertheless allow me to take you up on your offer to let you know if we have "any different understanding of our discussion."

### The Definition of "BRATZ" and 'BRATZ WORK" and Request Nos. 141-163, 165-170, 173-180 and 183-185

Mattel complains that:

> There is nothing about these terms that requires the contemporaneous existence of a physical doll and they cannot fairly be read to include such a limitation. MGA's undisclosed and unilaterally imposed restrictions on these terms are improper and

EXHIBIT 6 PAGE 344

O'MELVENY & MYERS LLP
Scott Kidman, Esq., April 30, 2007 - Page 2

> its responses to the requests employing these terms are completely inadequate.

The only problem with this complaint is that it ignores the plain language of the definitions that Mattel, not MGA, created. Here are the definitions, which were omitted from your letter:

> **4. "BRATZ" means any doll or any portion thereof** that is now or has ever been known as, or sold or marketed under, the name "Bratz" (regardless of what such doll is or has been also or previously called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and all prototypes, models, samples and versions of such doll or any portion thereof.
>
> **5. "BRATZ WORK means any representation of BRATZ,** whether in whole or in part, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, photographs, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

By its own terms, the definition of "BRATZ" requires the existence of a doll or a portion thereof that has been known as "Bratz". MGA's "limitation" is nothing more than the straight-forward application of Mattel's own definition. During the meet and confer we discussed this and suggested that Mattel was, of course, free to propound additional RFAs (as it will no doubt do) with a revised definition that does not tie itself to an actual doll known as "Bratz". In the meantime, MGA will stand by its plain language interpretation of Mattel's definition.

### Request Nos. 1 - 135 of Mattel's Third Set of RFAs

MGA has deferred responding to these RFAs because we believe our objection based upon CCP section 2019.210 is entirely justified; but, in any event, the issue has been fully briefed before Judge Larson who will, in due course, issue his ruling. If he agrees with MGA, there will be no need for a supplemental response until such time as Mattel comes into compliance. If Judge Larson rules against MGA on the 2019.210 issue, or if he concludes that we are right about its applicability to this case, but determines that Mattel is in compliance, MGA will provide supplemental responses.

EXHIBIT 6 PAGE 35

O'MELVENY & MYERS LLP
Scott Kidman, Esq., April 30, 2007 - Page 3

However, until we see Judge Larson's ruling on the multiple motions to dismiss, we cannot indicate the manner in which MGA will respond.

### Request Nos. 136-139

We appreciate Mattel's willingness to compromise on the substitution of "told" for "represented to" and in reliance on that compromise, MGA will supplement its response to these RFAs on May 4, 2007.

### Request Nos. 183-185

We agree that MGA will supplement these RFAs on May 4, 2007.

### Request Nos. 186 - 190

MGA stands by its objections. In light of the position taken by Mattel in seeking a protective order regarding Polly Pockets discovery, we believe that Judge Infante will be disinclined to compel discovery on matters entirely unrelated to Mattel's claims or defenses in this matter.

In your letter you directed us to paragraphs 78 - 81 and 165 of Mattel's Counterclaims. However, Paragraphs 78-81 of Mattel's Counterclaims relate solely to alleged comments by Isaac Larian regarding Mattel's MyScene Bling Bling dolls with real gems. Paragraph 165 refers to allegations of bribery by MGA of Carter Bryant, allegations of misappropriation of Mattel's trade secrets, and allegations of MGA and Isaac Larian's disparagement of Mattel's products as described in the Counterclaims. Mattel's Counterclaims only describe Isaac Larian's alleged comments related to the MyScene Bling Bling dolls with real gems. There are no descriptions of any comments regarding Mattel's manufacturing practices, let alone factories in China. Consequently, RFAs 186-190 are not relevant to any of Mattel's asserted claims.

Additionally, your assertion that these RFAs are somehow relevant to defending against MGA's damages claim is far too attenuated to justify this discovery, particularly given that MGA's damages based on Mattel's unfair competition predate the report at issue by many years.

### Request Nos. 192, 193, 199, 200, 206, 207, 213, 214, 222-224, 226, 228, 230, 232, 234, 236, 238, 240

Contrary to the suggestion in your letter, these RFAs are not akin to contention interrogatories which ask a party to state the bases for *its own contentions.* Rather, these RFAs ask for strictly legal conclusions, using copyright terms of art *for which MGA would have no basis to answer other than after an analysis by one of its lawyers.* In particular, requests 192, 199, 206, 213, 222, 223, 226, 228, 230, 232, 234, 236, 238, and 240 all ask MGA to admit that a particular work, subject to the identified copyright registration, is a "derivative work" from some other work, identified or not. Requests 193, 200, 207, 214, and 224 ask whether a particular work, subject to the identified copyright registration, is "substantially similar" to some other

EXHIBIT 6 PAGE 346

O'MELVENY & MYERS LLP
Scott Kidman, Esq., April 30, 2007 - Page 4

work. MGA has made no such contentions in this litigation, and your reference to cases discussing "particular allegations in a complaint" or citing Rule 11 are inapposite. MGA will stand by its prior responses.

### Request Nos. 1-28 of Mattel's Fourth Set of RFAs

Your letter fails to reflect MGA's explanation, repeated at our meet and confer, that the exhibits that are subject to these requests do not bear Bates numbers and there is nothing on the documents to identify their provenance. MGA however, did not simply deny on that basis, but made a good faith comparison of the subject exhibits to documents in its files and indicated that the documents appeared to be copies of the originals in MGA's files.

### Request Nos. 32 - 37

Going beyond what we agreed to do at the meet and confer, MGA will provide supplemental responses to these requests on May 4, 2007.

In closing, I appreciated the positive atmosphere that was present at our meet and confer session and I hope that we will be able to continue along those lines going forward without the unnecessary posturing that unfortunately dominated your April 19th letter.

Best regards,

James P. Jenal
for O'MELVENY & MYERS LLP

cc:  Douglas A. Wickham, Esq.
     Michael Page, Esq.

LA2:829673.2

EXHIBIT 6 PAGE 347