QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.



FILED
CLERK, U.S. DISTRICT COURT

JAN - 4 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation,

                    Plaintiff,

          v.

CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,

                    Defendants.

_____

CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,

                    Counter-Claimant,

          v.

MATTEL, INC., a Delaware Corporation,

                    Counter-Defendant.

CASE NO. CV 04-9059 NM (RNBx)

STIPULATED PROTECTIVE ORDER; AND

[PROPOSED] ORDER

[Discovery Matter]

07272/625581.2

PROTECTIVE ORDER

**EXHIBIT 25 PAGE 443**

## GOOD CAUSE STATEMENT

Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment, Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

In this Action, Mattel has alleged, and defendants dispute, that Bryant worked for and otherwise aided and assisted MGA while defendant was employed by Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

All parties believe that they will or may be required to produce or disclose in this Action, and that nonparties may produce or disclose, information that is trade secret, proprietary, confidential and/or is of a private or personal nature and that, if disclosed in this Action without restriction on its use or further disclosure, may cause disadvantage, harm, damage and loss to the disclosing Party or to the disclosing nonparty.

In addition, the Parties are currently in a competitive relationship in the toy industry, with Mattel and MGA operating as a manufacturers and marketers of dolls, toys and other products and Bryant working at this time as a contractor for a Mattel competitor, MGA, and further anticipate that nonparty competitor information may be produced or disclosed in this Action.

In particular, without prejudice to any Party's right to object to or resist disclosure of such categories of information on relevance or any other grounds, the Parties currently anticipate that categories of such trade secret, proprietary, confidential and/or private documents and other information that may be disclosed in discovery by the Parties and by nonparties will or may include:

(1)    Personnel files and other private or confidential employment, contractor or vendor information;

-2-

PROTECTIVE ORDER

**EXHIBIT 25 PAGE 444**

1        (2)    The specific terms of agreements with, and information received

2 from, third parties that a Party is required to disclose only under conditions of

3 confidentiality;

4        (3)    Personal or private financial information, and confidential

5 financial data that is not known generally to the trade or to competitors, including

6 financial data relating to specific sales, cost and profit information for specific

7 products and product lines; and

8        (4)    Business plans and product information that are not known

9 generally to the trade or to competitors, including non-public information relating to

10 product development and design.

11

12        WHEREFORE, believing that good cause exists, the Parties HEREBY

13 STIPULATE that, subject to the Court's approval, the following procedures shall be

14 followed in this Action to facilitate the orderly and efficient discovery of relevant

15 information while minimizing the potential for unauthorized disclosure or use of

16 confidential or proprietary information:

17

18        <u>SCOPE OF THIS ORDER</u>

19

20        1.    This Protective Order shall apply to trade secret, confidential and

21 proprietary information, documents and things that are produced or disclosed in any

22 form during the course of the Action by any Party or any nonparty:

23        (a)    through discovery;

24        (b)    in any pleading, document or other writing; or

25        (c)    in testimony given at a deposition.

26 (The foregoing information, documents and things shall be referred to hereinafter

27 collectively as "Litigation Materials.")

28

## CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION

2.     Any Party or nonparty producing or disclosing Litigation Materials in this Action may designate such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner set forth in paragraph 3 below.  The designation of Litigation Materials as "CONFIDENTIAL" shall be limited to information which the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature.   The designation of information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure.   Information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

## MANNER OF DESIGNATION OF MATERIALS

3.    A Party or nonparty may designate Litigation Materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the following manner:

(a)    <u>Documents or Things</u>.  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

07272/625581.2

-4-

obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" on the particular document or thing.

(b)     Interrogatory Answers and Responses to Requests for Admissions. In answering any interrogatory or request for admission, or any part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" answers shall be made on separate pages from any other answers or portions thereof that are not designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

(c)     Deposition Testimony.   Any Party or nonparty giving deposition testimony in this Action may obtain "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by designating, during the course of that testimony, for which "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired, the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," or alternatively by designating the entire testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," subject to a good faith obligation to identify any non-confidential portions of the testimony (and/or any lesser "CONFIDENTIAL" portions in the event that the entire testimony is designated "CONFIDENTIAL -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after receipt of the transcript of the testimony.  The reporter shall separately transcribe and bind the testimony so designated as "CONFIDENTIAL" and "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face of the separate bound transcript containing such testimony with the term "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

-5-

PROTECTIVE ORDER

**EXHIBIT 25 PAGE 447**

A Party or nonparty also may make the above-referenced designation of confidentiality in writing and within fourteen (14) calendar days of the receipt by said Party or nonparty of the transcript of said testimony. In that event, said portion of the transcript will be treated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of this Protective Order, except that it will not be separately bound. If, during the course of deposition testimony, any Party or nonparty reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given. Unless previously designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," all transcripts of deposition testimony and any related exhibits, and all information adduced in deposition, shall, in their entirety, be treated as "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of the transcript by counsel for the designating Party or nonparty. The Party or nonparty designating the testimony or information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen (14) calendar day period described above, specifically designate information contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously designated as such, by notifying all Parties in writing of the portions of the transcript or exhibit which contains such information. Each Party shall attach a copy of such written statement to the face page of the transcript or exhibit and to each copy in its or his possession, custody or control. Thereafter, these portions of the transcript or exhibits designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

accordance with the terms of this Protective Order. In addition, the provisions of Paragraph 3(e) for later designating transcripts or exhibits shall apply after the expiration of the fourteen (14) calendar day period described in this Paragraph 3(c).

(d)     Typing or stamping the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a collection of Litigation Materials which are bound together shall have the effect of designating such collection in its entirety as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."  In the case of disks, tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling, stamping or marking the outside of such disk, tape, CD-ROM, DVD or other medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire contents of such disk, tape, CD-ROM, DVD or other medium or device, and all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," as the case may be.

(e)     Except as otherwise provided in Paragraph 3(c) of this Protective Order, the receiving Party shall not reveal any information produced for a period of seven (7) calendar days following receipt. Failure to designate a document, thing or other information as CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this Protective Order shall not preclude any Party or nonparty desiring to so designate the document, thing or information from so designating thereafter; provided that the Party or nonparty proceeds promptly after discovery of any omission of marking, in good faith marks the document, thing or other information and requests, in writing, that each receiving Party so mark and treat the document, thing or other information in accordance with this Protective Order. Thereafter, the document, thing or other information shall

PROTECTIVE ORDER

**EXHIBIT 25 PAGE 449**

be fully subject to this Protective Order.  No Party shall incur liability for any disclosures made prior to notice of such designation, except to the extent that any such disclosures occurred prior to the seven (7) day period described above or prior to such other time periods as are provided by this Protective Order, including without limitation such time periods as are provided in Paragraph 3(c) above.

## RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS

4.     Any Litigation Materials produced or disclosed in this Action, whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such information for purposes of litigation and not for any other purpose, including without limitation for any business or trade purpose.  As used herein, the term "litigation" shall mean preparation for, participation in and prosecution and defense of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in connection with any mediation or other alternative dispute resolution procedure that this or any other court may order or that the Parties may agree to.

5.     Subject to Paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be disclosed to any person other than:

(a)     the attorneys for the Parties and their partners, shareholders, associates, document clerks and paralegals who are necessary to assist such attorneys;

(b)     secretaries, stenographers and other office or clerical personnel employed by said attorneys and who are necessary to assist such attorneys;

07272/625581.2

-8-

**EXHIBIT 25 PAGE 450**

(c)     a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)     such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)     professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)     non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

07272/625581.2

-9-

PROTECTIVE ORDER

**EXHIBIT 25 PAGE 451**

6.      Subject to paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be disclosed to any person other than:

(a)      the attorneys for the Parties (but not including in-house counsel for the Parties or any attorney who is an officer, director, shareholder or employee of any Party or its corporate affiliates) and their partners, shareholders, associates, document clerks and paralegals who are assigned to and necessary to assist such attorneys.  For the purposes of this subparagraph, "affiliate" shall mean any corporate parent or subsidiary of any Party, or any other entity that is under common control with any Party or corporate parent or subsidiary of any Party, or any of their successors or predecessors in interest;

(b)      secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to litigation;

(c)      the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(d)      such other persons as may be consented to by the Party designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(e)      outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(f)      independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for the purposes of litigation; and

-10-

**EXHIBIT 25 PAGE 452**

1               (g)     professional court reporters engaged to transcribe

2   deposition testimony, professional videographers engaged to videotape

3   deposition testimony and translators.

4            7.   None of the following is bound by or obligated under this Order

5   in any respect and specifically are not bound or obligated to treat information

6   designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

7   ONLY" in any particular manner: The Court hearing this Action (including the Court

8   having jurisdiction of any appeal), Court personnel, court reporters working for the

9   Court, translators working for the Court, or any jury impaneled in this Action.

10           8.   Other than those identified in Paragraph 7 above, each person to

11   whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL --

12   ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this

13   Protective Order and agree to be bound by it before disclosure to such persons of any

14   such information.  The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall

15   not have access to either "CONFIDENTIAL" or    "CONFIDENTIAL --

16   ATTORNEYS' EYES ONLY" information, as the case may be, until they have

17   certified that they have read this Protective Order and have manifested their assent

18   to be bound thereby by signing a copy of the Assurance of Compliance attached

19   hereto as Exhibit A.  Once a person has executed such an Assurance of Compliance,

20   it shall not be necessary for that person to sign a separate Assurance of Compliance

21   each time that person is subsequently given access to confidential material.  Any

22   person who signed an Assurance of Compliance in connection with the Stipulation

23   for Protection of Confidential Information and Protective Order filed September 16,

24   2004 in Mattel Inc. v. Bryant, Case No. BC 314398, pending in Los Angeles County

25   Superior Court, need not re-sign the Assurance of Compliance attached hereto but

26   shall, by virtue of his or her prior signature, be deemed to have signed the attached

27   Assurance of Compliance.

28

PROTECTIVE ORDER

**EXHIBIT 25 PAGE 453**

9. The failure of any Party to object to the designation of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." shall not be deemed an admission that such information qualifies for such designation.

10. If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the Local Rules. Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11. Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12. The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.

EXHIBIT 25 PAGE 454

PROTECTIVE ORDER

13.     If a Party or nonparty through inadvertence produces or provides discovery that it, he or she believes is subject to a claim of attorney-client privilege or work product immunity, the producing Party or nonparty may give written notice to the receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the producing Party or nonparty.   The receiving Party shall promptly return to the producing Party or nonparty the inadvertedly disclosed document and all copies of such document.  Return of the document by the receiving Party shall not constitute an admission or concession, or permit any inference, that the returned document is, in fact, properly subject to a claim of attorney-client privilege or work product immunity, nor shall it foreclose any Party from moving the Court for an Order that such document has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

14.     Nothing contained in this Protective Order shall affect the right of any Party or nonparty to make any objection, claim any privilege, or otherwise contest any request for production of documents, interrogatory, request for admission, or question at a deposition or to seek further relief or protective orders from the Court in accordance with the <u>Federal Rules of Civil Procedure</u> and the <u>Local Rules</u>. Nothing in this Protective Order shall constitute an admission or waiver of any claim or defense by any Party.

## <u>FILING AND USE IN COURT OF DESIGNATED MATERIALS</u>

15.     Except when the filing under seal is otherwise authorized by statute or federal rule, the Parties shall seek the Court's prior approval for the filing under seal of pleadings and other documents containing properly designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information in accordance with the procedures set forth in <u>Local Rule</u> 79-5.1, as such

1   Rule may be amended from time to time.  Prior to the time that a Party receiving the

2   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"

3   information from any other Party files with the Court an application and the other

4   materials required by Local Rule 79-5.1, as such Rule may be amended from time to

5   time, to seal the producing Party's confidential information, the receiving Party shall

6   consult with the producing Party's attorney to determine whether the producing Party

7   will re-designate the previously designated confidential information so as to avoid the

8   need for the request to file such information under the seal.  Upon the default of a

9   Party to seek the Court's approval to file a document containing "CONFIDENTIAL"

10  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any

11  Party may subsequently seek the approval of the Court to file that document under

12  seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule

13  may be amended from time to time.

14

15          THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS

16

17          16.    If any Party or nonparty receives a subpoena or document request

18  from a third party which purports to require the production of materials in that Party's

19  possession which have previously been designated as "CONFIDENTIAL" or

20  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,

21  the Party or nonparty receiving such subpoena or document request (a) shall object

22  and refuse to produce documents absent a Court Order or the consent of the Party or

23  nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL

24  -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who

25  designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --

26  ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,

27  and (c) shall not oppose any effort by the Party or nonparty which designated the

28  material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

07272/625581.2

-14-

PROTECTIVE ORDER

**EXHIBIT 25 PAGE 456**

1  ONLY" to quash the subpoena or obtain a protective order limiting discovery of such

2  material.

3

4  <u>DISCOVERY FROM NONPARTIES</u>

5

6         17.    Discovery of nonparties may involve receipt of information,

7  documents, things or testimony which include or contain "CONFIDENTIAL" or

8  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information.  A

9  nonparty producing such material in this case may designate as "CONFIDENTIAL"

10  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it

11  produces in the same manner provided for in this Protective Order with respect to

12  material furnished by or on behalf of the Parties.  Any Party may also designate as

13  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

14  materials or information produced by a nonparty that constitute "CONFIDENTIAL"

15  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating

16  Party under Paragraph 2 of this Protective Order, regardless of whether the producing

17  nonparty has also so designated.  In addition, a nonparty may also designate as

18  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

19  materials or information produced by a Party that constitute "CONFIDENTIAL" or

20  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such

21  nonparty under Paragraph 2 of this Protective Order, regardless of whether the

22  producing Party has also so designated.  In either such an event, the designation

23  providing for the greater level of protection for the material information shall control,

24  subject to Paragraph 10 of this Protective Order.  Nonparty materials designated

25  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a

26  nonparty or Party shall be governed by the terms of this Protective Order.

27

28

-15-

**EXHIBIT 25 PAGE 457**

## CONCLUSION OF LITIGATION

18.     Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession.  In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties.  Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order.  This Protective Order shall continue to be binding after the conclusion of this Action.

## AMENDMENT OF THIS AGREEMENT

19.     The provisions of this Stipulation and Protective Order may be  modified at any time by stipulation of the Parties as approved by Order of the Court.  In addition, a Party may at any time apply to the Court for modification of this

PROTECTIVE ORDER

**EXHIBIT 25 PAGE 458**

1 | Stipulation and Protective Order pursuant to a motion brought in accordance with the

2 | rules of the Court.

3

4 | **IT IS SO STIPULATED.**

5

6 | DATED: December 22, 2004          QUINN EMANUEL URQUHART
                                       OLIVER & HEDGES, LLP
7

8 |                                    By _Jon Corey_____
9 |                                       Jon Corey
                                          Attorneys for Plaintiff
10 |                                      Mattel, Inc.

11

12 | DATED: December __, 2004          LITTLER MENDELSON

13 |                                    By_____
                                          Douglas A. Wickham
14 |                                       Attorneys for Defendant
                                          Carter Bryant
15

16 | DATED: December __, 2004          O'MELVENY & MEYERS, LLP

17 |                                    By_____
18 |                                       Diana M. Torres
                                          Attorneys for Intervenor-Defendant
19 |                                      MGA Entertainment, Inc.

20

21

22 | **IT IS SO ORDERED.**

23 | DATED: __1/4/05_____              ROBERT N. BLOCK
24 |                                    THE HONORABLE ROBERT N. BLOCK
                                        United States Magistrate Judge
25

26

27

28

07272/625581.2                         -17-

PROTECTIVE ORDER

**EXHIBIT 25 PAGE 459**

1   Stipulation and Protective Order pursuant to a motion brought in accordance with the

2   rules of the Court.

3

4     **IT IS SO STIPULATED.**

5

6   DATED: December ___, 2004     QUINN EMANUEL URQUHART

7                        OLIVER & HEDGES, LLP

8

9                        By _____

                          Jon Corey

10                        Attorneys for Plaintiff

                       Mattel, Inc.

11

12   DATED: December 21, 2004     LITTLER MENDELSON

13                        By _____

14                        Douglas A. Wickham

                       Attorneys for Defendant

15                        Carter Bryant

16   DATED: December ___, 2004     O'MELVENY & MEYERS, LLP

17

18                        By _____

                       Diana M. Torres

19                        Attorneys for Interventor-Defendant

                       MGA Entertainment, Inc.

20

21     **IT IS SO ORDERED.**

22

23   DATED: _____

24                        THE HONORABLE ROBERT N. BLOCK

                       United States Magistrate Judge

25

26

27

28

                               PROTECTIVE ORDER

**EXHIBIT 25 PAGE 460**

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

3

4  **IT IS SO STIPULATED.**

5

6  DATED: December __, 2004       QUINN EMANUEL URQUHART
                                   OLIVER & HEDGES, LLP
7

8                                  By_____
9                                     Jon Corey
                                      Attorneys for Plaintiff
10                                    Mattel, Inc.

11 DATED: December __, 2004       LITTLER MENDELSON

12

13                                 By_____
                                      Douglas A. Wickham
14                                    Attorneys for Defendant
                                      Carter Bryant
15

16 DATED: December __, 2004       O'MELVENY & MEYERS, LLP

17

18                                 By_____
                                      Diana M. Torres
19                                    Attorneys for Intervenor-Defendant
                                      MGA Entertainment, Inc.

20

21                                 **IT IS SO ORDERED.**

22

23

24 DATED: _____         _____
                                   THE HONORABLE ROBERT N. BLOCK
25                                 United States Magistrate Judge

26

27

28

07272/625581.2                       -17-

                                                      PROTECTIVE ORDER

**EXHIBIT 25 PAGE 461**

# EXHIBIT A

## ASSURANCE OF COMPLIANCE

I, _____, under penalty of perjury under the laws of the United States of America, declare and state as follows:

I reside at _____, in the City/County of _____ and State/Country of _____;

I have read the annexed Stipulated Protective Order, ("Protective Order") dated _____ in the action entitled *Mattel, Inc. v. Carter Bryant,* Case No. CV 04-9059 NM (RNBx), which currently is pending in the United States District Court for the Central District of California; that I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order;

I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use any Litigation Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" except solely as permitted by the Protective Order; and

I consent to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing said Protective Order, enjoining any violation or threatened violation of the Protective Order or seeking damages for the breach of said Protective Order.

_____
(Signature)

07272/625581.2

PROTECTIVE ORDER

**EXHIBIT 25 PAGE 462**

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA          )
COUNTY OF LOS ANGELES    )

I am employed in the county of Los Angeles  State of California.  I am over the age of 18 and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 22, 2004, I served the foregoing document described as

**STIPULATED PROTECTIVE ORDER; AND [PROPOSED] ORDER**

on  all interested parties in this action:

**SEE ATTACHED SERVICE LIST**

[ ]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on December 22, 2004, at Los Angeles, California.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Ivana Maiorano
Print Name                                          Signature

**EXHIBIT 25 PAGE 463**

Robert F. Millman, Esq.
Douglas A. Wickham, Esq.
Keith A. Jacoby, Esq.
Littler Mendelson
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
Phone: 310-553-0308
Fax: 310-553-5583

Diana M. Torres, Esq.
O'Melveney & Meyers
400 S. Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax: 213-430-6407

Daniel J. Warren, Esq.
Sutherland, Asbill & Brennan
999 Peachtree Street NE
Atlanta, GA  30309-3996
Phone: 404-853-8698
Fax: 404-853-8806

-2-

EXHIBIT 25 PAGE 464

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

2007 JAN 26  PM 12: 25

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1]  Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

1-26

**EXHIBIT 26 PAGE 465**

CALENDARED

EXHIBIT 26 PAGE 466

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel Production of Documents is GRANTED.

## II.  BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls.  This highly lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of Bratz dolls now rival Mattel's Barbie doll.

A.  Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed suit against its former employee Bryant in state court asserting claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion.  Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000.  Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement which required him not to engage in any employment or business other than for Mattel, or invest or assist in any manner any business competitive with the business or future business plans of Mattel.  Bryant also assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest.  Bryant agreed to notify Mattel of any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for a Mattel competitor (later identified as MGA).  Bryant entered into an agreement with MGA to

**EXHIBIT 26 PAGE 467**

provide product design services on a "top priority" basis.[2]  The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel.  In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

　　　　In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls.  In August of 2004, the district court remanded the action.

　　　　B. Bryant's Cross-complaint

　　　　In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2]  Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

---

**EXHIBIT 26 PAGE 468**

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 26 PAGE 469

### G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

### H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

### I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

**EXHIBIT 26 PAGE 470**

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

**EXHIBIT 26 PAGE 471**

1,600 pages of documents to date.  Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3]  Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

### J.   Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts.  First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents:  (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel.  Mattel's Motion at 6.  Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations.  According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]   According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear.  Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed.  Mattel again obtained a court order compelling the deposition and sanctions.  To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 26 PAGE 472

his earnings from his work for MGA.  Mattel's Motion at 7.  Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

### K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel.  He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004.  Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims.  Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter.  See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies.").  Accordingly, in the summer and fall of 2004, he produced the following categories of documents:  documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]  There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center.  MGA denies the accusation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

**EXHIBIT 26 PAGE 473**

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

**EXHIBIT 26 PAGE 474**

requests and that the stipulation controlled to the extent they were inconsistent.  Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation.  If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future.  Bryant's Opposition at 1:24-2:3.  Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel.  Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects.  In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees.  Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights.  Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

## III.  DISCUSSION

### A.  The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion.  The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute.  Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant.  It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions.  Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

**EXHIBIT 26 PAGE 475**

1   Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by

2   the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

3        Furthermore, because the parties met and conferred in good faith and because they had a

4   legitimate dispute over language governing Mattel's future right to pursue additional discovery

5   from Bryant, the Discovery Master denies Mattel's request for sanctions.

6

7        B.  Rule 26 of the Federal Rules of Civil Procedure

8        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

9   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

10  party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

11  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

12  Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

13  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

14  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

15  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

16  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

17  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

18  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

19  26(b)(2).

20       C.  Mattel's Requests for Production

21       Request Nos. 2, 13, 48:  Documents Relating to Bryant's Agreements with MGA

22       Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related

23  agreements.  Bryant is withholding responsive documents, including (a) documents relating to his

24  Bratz agreements with MGA other than final signed agreements, including communications

25  exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

**EXHIBIT 26 PAGE 476**

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

**EXHIBIT 26 PAGE 477**

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46: Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT 26 PAGE 478

when the payments were actually made.  Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement.  Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works.  Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages.  17 U.S.C. §504(b).  The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market.  For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation.  Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel.  Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant.  Among other things, the protective order provides protection for confidential trade secret information.  It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only."  The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.  Bryant,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

**EXHIBIT 26 PAGE 479**

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

**EXHIBIT 26 PAGE 480**

privileged documents responsive to Request Nos. 20, 23, 27, and 28.  However, Bryant may

continue to redact his telephone records, and shall provide a signed verification that none of the

telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project

that Bryant worked on, with, for, or on behalf of MGA.  Telephone calls that do not relate or refer

in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51:  Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them.

Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9:  Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and

registrations and applications for registration.  Bryant deems the motion moot with respect to

Request No. 9 because he agrees to produce any patent, copyright and trademark applications,

registrations or other non-privileged documents in his possession, custody or control that

constitute or relate to such applications and registrations obtained or applied in connection with

(1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation

Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA

during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz

limitation is improper.  Therefore, Bryant is ordered to produce all non-privileged documents

responsive to Request No. 9.

## IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of

Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

EXHIBIT 26 PAGE 481

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2.  Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3.  Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4.  Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5.  Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6.  Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7.  Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

**EXHIBIT 26 PAGE 482**

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjaklan Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Well & Shapiro, LLP | pglaser@chrismill.com |

**EXHIBIT 26 PAGE 483**

RECEIVED

JUL 1 0 2007

LAW OFFICES

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD

NINETEENTH FLOOR

LOS ANGELES, CALIFORNIA 90067

(310) 553-3000

FAX (310) 556-2920

DIRECT DIAL NUMBER
310-282.6217
EMAIL: PGLASER@CHRISGLASE.COM

July 5, 2007

MERITAS LAW FIRMS WORLDWIDE

**VIA FACSIMILE AND U.S. MAIL**

John B. Quinn
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017

   Re:  MGA Entertainment v. Mattel

Dear John:

   This is in response to your letter of May 29, 2007 concerning your law firm's improper and unethical communications with Fred Larian and Fred Larian's counsel in 2005, the circumstances of which have only recently come to our client's attention.

   Our client has determined that in the fall of 2005, members of your law firm met with Fred Larian and/or his attorney, Robert Wilson, and spent **two days** reviewing numerous confidential and privileged documents of MGA Entertainment, Inc. ("MGA") which were in Fred Larian's possession, including documents which are relevant to the pending litigation between MGA and Mattel, and documents which are covered by the protective order in this litigation.  As you know, Fred Larian is the brother of Isaac Larian, MGA's Chairman and Chief Executive Officer, and was Isaac Larian's business colleague for over 20 years.  The business relationship of the Larian brothers encompassed the ownership and operation of various ventures and businesses over many years, including ABC International Traders, Inc. (now called MGA and MGA Entertainment (HK), Ltd.).  The Larian brothers each owned 45% of the stock in MGA until 2000; another family member owned the remaining 10% of the company's shares. Fred Larian served as MGA's Executive Vice President and Treasurer until 2000, served on the company's Board of Directors until 2002 (including during the time period which is relevant to this litigation) and acted as a paid consultant for the company until December 31, 2005 (including during the time period in which members of your law firm engaged in communications with him).

   In these capacities, Fred Larian was involved in numerous privileged and confidential matters at the company, including providing litigation consulting services for the company and being privy to an extensive amount of privileged attorney-client communications, as well as high level, confidential business matters.  Further, Fred Larian was provided with or had access to an

500006 v2

**EXHIBIT 27 PAGE 484**

John B. Quinn, Esq.
July 5, 2007
Page 2

extensive number of privileged and confidential company documents, including documents
which are relevant to this litigation. In this regard, Fred Larian was copied on numerous
privileged and confidential communications which are uniquely relevant to this litigation, such
as numerous communications related to the development and initial sales of the "Bratz"
products. As you know, in 2005, Fred Larian was in possession of numerous confidential MGA
documents, including privileged documents, and was precluded from disclosing MGA's trade
secrets and confidential information pursuant to a confidentiality agreement which he had
previously entered into with the company.

During your communications with Fred Larian and his counsel, members of your law
firm requested and reviewed privileged and confidential information of MGA which is relevant
to this action, including documents which are subject to the protective order herein, a copy of
which is attached. Your letter dated November 28, 2005 to Robert Wilson, Fred Larian's then
counsel ("November 28, 2005 Letter"), demonstrates this. In particular, the November 28, 2005
Letter states that your firm was aware (e.g., apparently from your discussions with Fred Larian
and/or his counsel) that Fred Larian was in possession of certain general categories of documents
from MGA, some of which necessarily included privileged communications, and requested that
Fred Larian provide you with such documents as well as 18 other specific categories of
documents which were described as "relevant to Mattel's litigation." A copy of your firm's
November 28, 2005 Letter also is attached.

Your actions apparently were designed to induce Fred Larian to breach his fiduciary
duties to MGA, including inducing a breach of his confidentiality agreement with MGA, *and to
improperly obtain documents subject to the protective order herein without complying with such
order*. You also violated your ethical obligations, including but not limited to, Rule 4.2 of the
ABA Model Rules of Professional Conduct ("Rule 4.2") ("...[A] lawyer shall not communicate
about the subject of the representation with a party the lawyer knows to be represented by
another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is
authorized by law to do so") and Canon 9 of the ABA Code of Professional Responsibility
("Canon 9") ("A lawyer should avoid even the appearance of professional impropriety").

Case law prohibits counsel from seeking privileged information from former employees
of an adverse party and specifies the imposition of serious remedies for engaging in such
conduct. E.g., American Protection Insurance Co. v. MGM Grand Hotel-Las Vegas, Inc., 1986
WL 57464, *1, 6, 7 (D. Nev. 1986) (a violation of ethical rules and disqualification resulted
where attorney had ex parte contact with a former officer of adverse party who remained a
consultant for the adverse party and was privy to confidential information related to the
litigation); In re Data General Corp. Antitrust Litigation, 1986 U.S. Dist. LEXIS 21923, *10
(N.D. Cal. 1986) (counsel precluded from interviewing and hiring former employees of adverse
party because employees' knowledge of privileged information of adverse party was
intermingled with knowledge that might have been unprotected); Butler v. Biocore Medical
Technologies, Inc., 348 F.3d 1163, 1169-72 (10th Cir. 2003) (counsel violated Canon 9 and other
ethical rules by contacting former employee of adverse party who possessed confidential

**EXHIBIT 27 PAGE 485**

John B. Quinn, Esq.
July 5, 2007
Page 3

information; court stated that access to privileged information of adverse party may be grounds to disqualify an attorney); Rentclub, Inc. v. Transamerica Rental Finance Corp., 811 F. Supp. 651, 657-58 (M.D. Fl. 1992) (court disqualified counsel who hired as consultant former officer of adverse party who was privy to adverse party's confidential and proprietary information, noting ex parte contact with former employees of adverse party should be barred to prevent disclosure of any inadvertent confidential communications).

For example, in Kaiser v. American Telephone & Telegraph, 2002 U.S. Dist. LEXIS 25758, *30-32 (D. Ariz. 2002), the court disqualified and imposed sanctions on plaintiff's counsel for seeking information relevant to plaintiff's lawsuit from a former employee of defendant after holding that counsel violated Rule 4.2. Recognizing that the majority of cases prohibit inquiry into any confidential or privileged information possessed by an adverse party's former employee, the court concluded that "[i]f a former employee occupie[s] a high ranking position such that his or her exposure to confidential or privileged information may be assumed, or occupie[s] a position giving rise to a plaintiff's claims, then no ex parte contact should be permitted absent notice to the former employer." Id. at *19-20 (emphasis in original). The court in Kaiser further explained as follows: "The interest of the corporation in protecting information - especially privileged information - acquired by an employee during the course of employment from disclosure to an opponent in litigation remains after the employee leaves the corporation....[A]t least with respect to former highly-placed former employees, such as former officers and directors of the corporation, the potential for the release of such information makes the corporation's interest paramount to the plaintiff's interest in ex parte contact." Id. at *20-21.

Fred Larian is the very type of highly-placed former employee with whom ex parte contact is disallowed, as instructed by the Kaiser court, as it can be assumed that he was privy to confidential and privileged information of MGA. Indeed, Fred Larian was a paid consultant for MGA at the time of the subject communications, and in this capacity, he had been involved with high-level issues at the company, including certain litigation matters. Thus, the holding in Kaiser provides that your conduct in contacting Fred Larian and seeking confidential and privileged information of MGA from him violates your ethical duties and entitles MGA to appropriate relief, including your disqualification and sanctions.

Given the egregious nature of your misconduct and the prejudice to MGA, we intend to bring your actions to the attention of the Court and seek all appropriate remedies. In the interim, we demand that you stipulate to (1) return all documents which you obtained from Fred Larian and/or his counsel and all notes from your meetings with Fred Larian and/or his counsel; (2) refrain from introducing or using in any fashion any documents or information obtained from Fred Larian or his counsel or derived from information or documents obtained from Fred Larian; (3) cease any further contact with Fred Larian or any of his counsel; and (4) compensate MGA for its attorneys' fees and costs in investigating this matter. We will give you until July 19, 2007 to respond to our requested stipulation before we bring your actions to the attention of the Court and seek all appropriate remedies. Some of the remedies we shall seek will include the

EXHIBIT 27 PAGE 486

John B. Quinn, Esq.
July 5, 2007
Page 4

following, among others: an order seeking to disqualify your law firm as counsel for Mattel
herein; an order excluding any evidence you obtained from Fred Larian; an adverse inference
instruction to the jury based on your misconduct; an order precluding you from further
communication with Fred Larian; an order prohibiting you from filing documents containing or
referring to any information or documents obtained from Fred Larian or derived from
information or documents obtained from Fred Larian; and an order for monetary sanctions
against your law firm for the costs incurred by MGA in investigating this matter and seeking
such remedies.

Nothing contained herein shall be deemed as a waiver of any of our client's rights and
remedies, at law or in equity, all of which are hereby expressly reserved and preserved.

Very truly yours,

Patricia L. Glaser
of CHRISTENSEN, GLASER, FINK, JACOBS,
WEIL & SHAPIRO, LLP

PLG/eb
cc:    Daphne Gronich, Esq.
       Craig Holden, Esq.
       Dale Cendali, Esq.

**EXHIBIT 27 PAGE 487**

1  DIANA M. TORRES (S.B. #162284)
   PAULA E. AMBROSINI (S.B. #193126)
2  CARLOS M. LAZATIN (S.B. #229650)
   O'MELVENY & MYERS, LLP
3  400 South Hope Street
   Los Angeles, California 90071-2899
4  Telephone: (213) 430-6000
   Facsimile: (213) 430-6407
5  email:  dtorres@omm.com

6  DALE M. CENDALI (of counsel, not admitted in
   California)
7  O'MELVENY & MYERS, LLP
   7 Times Square
8  New York, New York 10036
   Telephone: (212) 326-2000
9  Facsimile: (212) 326-2061

10 Attorneys for Third Party,
   MGA Entertainment, Inc.

11

12                    ARBITRATION BEFORE

13                  ADR SERVICES, INC.

14

15 FARHAD LARIAN,                    ADRS Case No.:  05-2096-ABH

16         Plaintiff,                [PROPOSED] PROTECTIVE ORDER

17         v.                        COPY

18 ISAAC LARIAN,

19         Defendant.

20

21

22

23

24

25

26

27

28

LA2:782144.1

EXHIBIT 28 PAGE 488

1.   **PURPOSES AND LIMITATIONS**

This arbitration will involve the disclosure of documents and information that should be used only for the purpose of prosecuting, defending, or attempting to settle this arbitration and for no other purpose, including any other dispute involving any Party hereto or any non-party hereto. Accordingly, the following Protective Order is hereby imposed upon the parties to this arbitration, Isaac Larian and Farhad Larian, and their employees, consultants, retained experts, counsel and support staff (the "Parties").

2.   **SCOPE**

Protection is conferred by this Protective Order on all documents produced by third party MGA Entertainment, Inc. ("MGA") and MGA documents produced by any Party or third party  all information copied or extracted therefrom, all copies, excerpts, summaries, or compilations thereof, and all testimony presented to the arbitrator, and transcripts of such testimony from any current or former MGA employee or contractor pertaining to MGA's business. ("Protected Material").

3.   **DURATION**

The obligations imposed by this Protective Order shall remain in effect during and after this arbitration and until the parties, Isaac Larian *and* Farhad Larian, and MGA agree otherwise, in writing, or an arbitrator or court order otherwise directs.

4.   **ACCESS TO AND USE OF PROTECTED MATERIAL**

4.1   <u>**Basic Principles:**</u>  The Parties may use Protected Material in connection with this case only for prosecuting, defending or attempting to settle this arbitration and may not use such material for any other purposes, including in connection with any other matters, including between the same parties.  Protected Material may be disclosed only to the categories of persons and under the conditions described in this Protective Order. When the arbitration has been terminated, the Parties must comply with the provision of section 5 below (FINAL DISPOSITION).  Protected Material must be stored and maintained by the Parties at a location and in a secure manner that ensure that access is

LA2:782144.1                                    - 2 -

**EXHIBIT 28 PAGE 489**

1   limited to the persons authorized and for the purposes permitted under this Protective

2   Order.

3        **4.2    Disclosure of Protected Material:**  Unless otherwise ordered by a court or

4   jointly permitted in writing by Isaac Larian *and* MGA, Protected Material may be

5   disclosed only to:

6            (a)    counsel of record in this arbitration and employees of said counsel to

7   whom it is reasonably necessary to disclose the information for this arbitration, and who

8   have specifically agreed to be bound by the terms of this Protective Order by executing

9   the undertaking attached hereto as Exhibit A;

10           (b)    experts to whom disclosure is reasonably necessary for this

11  arbitration, and who have specifically agreed to be bound by the terms of this Protective

12  Order by executing the undertaking attached hereto as Exhibit A;

13           (c)    the arbitrator and his personnel;

14           (d)    court reporters, their staffs, and professional vendors to whom

15  disclosure is reasonably necessary for this arbitration, and who have specifically agreed to

16  be bound by the terms of this Protective Order by executing the undertaking attached

17  hereto as Exhibit A;

18           (e)    witnesses in the arbitration to whom disclosure is reasonably

19  necessary, and who have specifically agreed to be bound by the terms of this Protective

20  Order by executing the undertaking attached hereto as Exhibit A; and

21           (f)    the author of the document or the original source of the information.

22       **4.3    Identifying Legend:**  Protected Material shall be appropriately identified

23  and marked with the legend "Confidential" or "Confidential – Attorneys Only."

24  Transcripts shall further include a statement substantially in the following form:

25           This transcript contains material subject to Protective Order.  The transcript may not

26           be used for any purpose other than this arbitration and its contents may not be

27           disclosed to anyone other than those persons permitted to access Protected Material

28           under the terms of the Protective Order.

LA2:782144.1                         - 3 -

**EXHIBIT 28 PAGE 490**

**4.4    Challenge to Designation <u>of Protected Material</u>:** To the extent any Party wishes to challenge the designation of Protected Material, that Party shall first make a good faith attempt to confer with the other Party and MGA to determine whether they are amenable to a change in the designation of Protected Material. In the event the Parties and MGA are unable to reach agreement, either Party may bring a challenge to the designation before the arbitrator, who shall rule on the designation consistent with the terms and principles of this Protective Order.

**4.5    <u>Other Restrictions on Access to and Use of Protected Material</u>:** No party or person shall be permitted to share or disseminate the documents produced by MGA or the transcripts of these proceedings to others (including any preliminary, "rough," livenote version thereof) remove them from the arbitration, make copies of them, or inform third parties of their existence or content or otherwise disclose the same to anyone, unless compelled by law.

In short, this is a private proceeding; whatever may be disclosed about MGA's business, in privacy and confidence during the course of the arbitration, should remain private and confidential both during – and after – the arbitration.

**5.    FINAL DISPOSITION**

Unless otherwise ordered or jointly agreed in writing by Isaac Larian, Farhad Larian and, MGA (to the extent the Protected Material pertains to MGA or MGA's products or property), within 10 days after the final termination of this arbitration and any appeal (or, if no notice of appeal is filed, the deadline for filing a notice of appeal), all Protected Material must be returned to its original source or destroyed, including all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, each Party must submit a written certification to the other Party, *and* the person or entity from whom the Protected Material was secured or subpoenaed, by the 10 day deadline that identifies (by category, where appropriate) all of the Protected Material that was returned or destroyed and that affirms that the Party has not retained any copies, abstracts,

LA2:782144.1                                          - 4 -

**EXHIBIT 28 PAGE 491**

compilations, summaries or other forms or reproducing or capturing any of the Protected Material. Notwithstanding this provision, counsel of record for each Party is entitled to retain an archival copy of all pleadings, motion papers, legal memoranda, correspondence or attorney work product. Any such archival copies that contain or constitute Protected Material, however, shall otherwise remain subject to this Protective Order.

6. **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party is served with a subpoena or an order issued in other litigation that would compel disclosure of any Protected Material, the Party receiving the subpoena must notify the other Party *and* the person or entity from whom the Protected Material was secured or subpoenaed, in writing, immediately and in no event more than two business days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

The Party receiving the subpoena also must immediately inform, in writing, the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Protective Order. In addition, the Party receiving the subpoena must deliver a copy of this Protective Order promptly to the Party in the other action that caused the subpoena or order to issue.

The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and afford the Parties in this case *and* the person or entity from whom the Protected Material was secured or subpoenaed, an opportunity to try to protect whatever confidentiality interest such Party may have in the court from which the subpoena or order issued.

SO ORDERED:

DATED: 11/16/05

_____
ARBITRATOR

LA2:782144.1                              - 5 -

**EXHIBIT 28 PAGE 492**

UNDERTAKING RE
PROTECTIVE ORDER


UNDERTAKING OF _____


I, _____, declare:


My address is _____.

My present occupation is _____.


1.     I have received a copy of the Protective Order operative in this action, ADRS Case No. 05-2096-ABH.  I have carefully read and understand the provisions of the Protective Order.

2.     I will comply with all of the provision of the Protective Order.  I will hold in confidence, and will not disclose to anyone other than those persons specifically authorized by the Protective Order, and will not copy or use except for the proceedings concerning the matters in issue between the parties, any and all Protected Material that I receive.

Executed this ____ day of _____, at _____.  I declare under penalty of perjury under the laws of California that the foregoing is true and correct.


_____

**EXHIBIT 28 PAGE 493**

LAW OFFICES

## CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 282-6287
EMAIL: AMORGENTHALER@CHRISGLASE.COM

December 6, 2007

MERITAS LAW FIRMS WORLDWIDE

### VIA FACSIMILE AND U.S. MAIL

Juan Pablo Alban, Esq.
Quinn Emanuel Urquhart Oliver
  & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017

> Re:    Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Mr. Alban:

This is in response to your letter of November 26, 2007.

Farhad Larian will agree to modify the protective orders entered in Larian v. Larian, Los Angeles Superior Court Case No. BC 301371, and in Larian v. Larian, ADRS Case No. 05-2096-ABH, to allow for the production of documents which Mr. Larian otherwise agrees to produce in response to the subpoena served on him by Mattel provided that (i) the other parties to those actions similarly agree to such modification; and (ii) suitable arrangements are made to have the documents covered by the protective order entered in the Mattel litigation. It is of course understood that Mr. Larian is not agreeing at this time to produce all non-privileged documents responsive to Mattel's subpoena which are covered by the protective orders; he is merely agreeing at this time to modify the protective orders as specified above to allow the production of documents responsive to the subpoena which he has agreed to produce which are being held solely on the basis that they are covered by the protective orders.

Please do not hesitate to contact me if you have questions regarding the foregoing.

Very truly yours,

Alisa Morgenthaler Lever
of CHRISTENSEN, GLASER, FINK, JACOBS,
WEIL & SHAPIRO, LLP

AML/eb
cc:    Patricia L. Glaser, Esq.
       Amy Park, Esq. (via facsimile)
       Scott Gizer, Esq.

611927.1

**EXHIBIT 29 PAGE 494**

12-06-07   12:50pm   From-CHRISTENSEN GLASER          310-556-2920          T-292   P.001/002   F-252

LAW OFFICES

# CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067

⌖ MERITAS LAW FIRMS WORLDWIDE

**FAX TRANSMISSION**

TELEPHONE NO.: (310) 553-3000
FACSIMILE NO.: (310) 556-2920

FROM:    Alisa Morgenthaler Lever, Esq.

Number of Pages:          2
(including this page)

DATE:    December 6, 2007

Client Reference No.:   03460-009

TO:

Juan Pablo Albán, Esq.

FAX NO.:                    CONFIRMATION NO:

213-443-3100            213-443-3000

**Sender's Comments:**

**If you have received this Transmission in error, please call:  (310) 553-3000 and mail it to the above address.  Thank you.**

NOTE:  THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.   THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION AND, AS SUCH, IS PRIVILEGED AND CONFIDENTIAL.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR, AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE BY MAIL. THANK YOU.

606368-1

**EXHIBIT 29 PAGE 495**

**Juan Pablo Alban**

**To:** Jon Corey
**Subject:** RE: Mattel/MGA

----- Original Message -----
From: Kennedy, Raoul <RKENNEDY@skadden.com>
To: Jon Corey
Cc: Park, Amy <APARK@skadden.com>; Allen, Jose <JRALLEN@skadden.com>
Sent: Wed Dec 05 10:09:13 2007
Subject: RE: Mattel/MGA

As previously mentioned, our clients have no objection in principle to this idea but we have questions concerning the operative details. Jose Allen, who is handling a number of third party subpoena issues, will be back to you no later than Thursday with the specifics.

------------------------------

From: Jon Corey [mailto:joncorey@quinnemanuel.com]
Sent: Tuesday, December 04, 2007 11:51 AM
To: Kennedy, Raoul
Cc: Park, Amy
Subject: Mattel/MGA

Dear Raoul,

I am writing to follow up on Mattel's request that Isaac Larian agree that documents sought from third parties related to the Larian v. Larian disputes may be produced pursuant to the protective order operative in this case.  Please let me know what Mr. Larian's position is at your earliest convenience.

Best regards,

Jon Corey
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone:  (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  joncorey@quinnemanuel.com <blocked::mailto:username@quinnemanuel.com>
Web:  www.quinnemanuel.com <blocked::http://www.quinnemanuel.com/>

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

-------------------------------------------------------------------------
To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-

1

**EXHIBIT 30 PAGE 496**

related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
===================================================================

**EXHIBIT 30 PAGE 497**

11-14-05

1   DIANA M. TORRES  (S.B. #162284)
    PAULA E. AMBROSINI (S.B. #193126)
2   O'MELVENY & MYERS, LLP
    400 South Hope Street
3   Los Angeles, California 90071-2899
    Telephone: (213) 430-6000
4   Facsimile:  (213) 430-6407
    email:  dtorres@omm.com
5
    DALE M. CENDALI (of counsel, not admitted in
6   California)
    O'MELVENY & MYERS, LLP
7   7 Times Square
    New York, New York 10036
8   Telephone: (212) 326-2000
    Facsimile:  (212) 326-2061
9
    Attorneys for Third Party,
10  MGA Entertainment, Inc.

11              ARBITRATION BEFORE

12           ADR SERVICES, INC.

13

14
    FARHAD LARIAN,                          ADRS Case No.:  05-2096-ABH
15
                 Plaintiff,                 THIRD PARTY MGA
16                                          ENTERTAINMENT INC.'S MOTION
                 v.                         FOR PROTECTIVE ORDER
17
    ISAAC LARIAN,
18
                 Defendant.
19

20

21

22

23

24

25

26

27                                          CC 00342

28
                                          MGA'S MOTION FOR PROTECTIVE
                                          ORDER

EXHIBIT 31 PAGE 498

## I.   INTRODUCTION

Third party, MGA Entertainment Inc., ("MGA") has received a subpoena from Plaintiff, Farhad Larian ("Farhad Larian"), requesting that MGA produce documents that contain an extensive amount of highly confidential, commercially sensitive material. Farhad Larian has already demonstrated a disregard for the confidentiality of MGA's proprietary and trade secret information *and* his willingness to cooperate with MGA's competitors and adversaries in other litigation. MGA has also received word that Farhad Larian has issued subpoenas to and intends to call as witnesses many of its key employees and former employees and contractors to testify about MGA's product development. MGA seeks a protective order, accordingly, to ensure that its documents, their contents, and testimony elicited in this arbitration concerning MGA's business operations cannot be disseminated to others outside of the arbitration and will not be used for any purpose other than the arbitration.

## II.   BACKGROUND FACTS

MGA is the maker of the highly successful "Bratz" line of dolls and related products. After its initial launch in Spain in June 2001, MGA introduced those dolls in the United States later that year. The "Bratz" dolls, with their hip, edgy fashions were a sudden – and surprising – hit among the "tween"-age girls who had years ago lost interest in the long-reigning but stale "Barbie" doll. (*See* Declaration of Daphne Gronich ("Gronich Decl.") filed concurrently ¶ 2.)

In April 2004, Mattel, Inc. filed suit against Carter Bryant, a consultant for MGA who had created the initial "Bratz" drawings. Bryant, a former Mattel employee, had twice left his employment at Mattel, the second time to work for MGA in October 2000. Although it had been three and a half years since Bryant had left Mattel, Mattel filed suit apparently after reading a 2003 *Wall Street Journal* article that inaccurately reported that MGA had begun working on the "Bratz" dolls in 1999 after conducting a fashion doll "contest." (*Id.* ¶ 3.) At that time, Mattel was suffering substantial losses in a variety of

1  product lines including "Barbie," which reportedly was being dethroned even more

2  rapidly with the increase in the "Bratz" dolls' popularity. According to published reports,

3  the "Barbie" line accounted for the great majority of Mattel's revenues. (*Id.*)

4      Since that time, MGA has learned that Mattel has been in contact with a wide

5  variety of people involved in litigation against MGA. First, Mattel entered into an

6  information sharing agreement with a company in Hong Kong that was producing and

7  distributing counterfeit "Bratz" products. Second, Mattel has been in contact with Art

8  Attacks, LLC, a company suing MGA for purported trademark infringement of its

9  "Spoiled Brats" airbrush art. Finally, and importantly, Mattel appears to have been

10  providing Mr. Larian with assistance in this arbitration. All of Mattel's efforts have been

11  designed to undermine MGA's rights to the "Bratz" line of products in a last-ditch effort

12  to save its ailing "Barbie" line. (*Id.* ¶ 4.)

13      Mattel has been unable to conduct discovery of MGA in its case against Bryant

14  since May 2005 because of an interlocutory appeal Mattel filed at that time. (*Id.* ¶ 5.) In

15  Farhad Larian, however, Mattel has found an ally eager and willing to help Mattel bypass

16  the discovery stay. Using home address lists he improperly took from MGA, Farhad

17  Larian has spent the past few months repeatedly calling MGA's current and former

18  employees and contractors in an effort to obtain confidential information about MGA's

19  product development. He persisted in these efforts even though MGA – and those he

20  called – complained about his harassing conduct. MGA also learned that Mattel was

21  calling many of these very same witnesses at or about the same time that Farhad Larian

22  was calling them. (*Id.* ¶¶ 6-7.) And, MGA has learned that Farhad Larian apparently has

23  obtained information from Mattel and provided that information to Art Attacks. (*See*

24  Declaration of Paula E. Ambrosini ("Ambrosini Decl.") filed concurrently ¶¶ 3-4.)

25      MGA is not a party to the instant dispute between its CEO Isaac Larian and his

26  brother Farhad Larian, and has not participated in this matter. MGA is nonetheless

27  legitimately concerned that Farhad Larian seeks to use this arbitration as a means of

28  obtaining information that he can then disclose, to MGA's detriment, to MGA's

-3-

MGA'S MOTION FOR PROTECTIVE ORDER

CC 00344

**EXHIBIT 31 PAGE 500**

1   competitors and adversaries.  (Gronich Decl. ¶ 8.)  Neither MGA's corporate interest nor

2   the interests of its many employees who have worked tirelessly on the "Bratz" line of

3   products should be compromised in this way because of what is essentially a dispute

4   among family members.  (*Id.* ¶ 14.)

5   **III.   MGA IS ENTITLED TO PROTECT FROM DISCLOSURE THE
        CONFIDENTIAL, PROPRIETARY, TRADE SECRET AND**

6   **COMMERCIALLY SENSITIVE INFORMATION SOUGHT BY FARHAD
        LARIAN.**

7

8        The ADR rules specifically give the arbitrator power and authority to "issue orders

9   to protect the confidentiality of proprietary information, trade secrets or other sensitive

    information."[1]  (*See* ADR Rule 27.)  A third party – such as MGA is here – is

10  presumptively entitled to a protective order limiting the disclosure of its confidential,

11  proprietary information.  *See. e.g., Harris v. Sup. Ct.,* 3 Cal. App. 4th 661, 668 (1992)(trial

12  court required to limit the scope of inquiry to the extent necessary to a fair resolution of

13  the case).  Such an order is appropriate and should issue here.[2]

14

15  **A.   Farhad Larian Seeks To Obtain and Use Confidential and Trade
        Secret Documents Belonging to MGA.**

16       At the hearing, Farhad Larian seeks to obtain and use confidential and proprietary,

17  trade secret documents.  Farhad Larian has issued a subpoena for, among other things,

18  internal and private financial information relating to MGA's product pricing, costs, sales

19  and projections.  He also seeks documents that contain trade secret and proprietary details

20  relating to MGA's development, marketing, licensing and sale of a wide array of products,

21  including MGA's "Bratz" line of fashion dolls and related toys and accessories.  Indeed,

22  some of the documents depict trade secret ideas, designs and concepts that have not yet

23  _____

24  [1] Even if the ADR rules do not specifically apply to this arbitration, Rule 27 is representative of
    the powers the arbitrator has.  California and Federal Rules of Civil Procedure confer similar

25  power and authority on California and Federal Courts Judges to issue protective orders limiting
    the use and dissemination of confidential information.  *See* Cal. Code Civ. Proc. 2031.060 (b)(5)

26  (authorizing court to order that "a trade secret or other confidential research, development, or
    commercial information not be disclosed, or be disclosed only to specified person or only in a

27  specified way"); Fed. R. Civ. Proc. 26 (c)(7) (authorizing court to order "that a trade secret or
    other confidential research, development, or commercial information not be revealed or be

28  revealed only in a designated way").
    [2] A Proposed Order is attached hereto as Exhibit A.

                                        - 4 -                    MGA'S MOTION FOR PROTECTIVE
                                                                                ORDER

                                   **CC 00345**

**EXHIBIT 31 PAGE 501**

1   been commercially marketed by MGA.  Others include detailed specifications for "Bratz'"

2   eye designs and facial features, including paint colors for the eyelids, eye shadow, iris

3   color, lip and cheek color and color placement, and detailed specifications for "Bratz" hair

4   characteristics, including color, weight and curl size.  Still others disclose confidential

5   product production and development information including production and development

6   schedules lead times, capacity information and ramp-up times.  Certain documents

7   additionally disclose confidential concept drawings and proposed names of "Bratz"

8   characters that have never been publicly revealed.  (Gronich Decl. ¶ 9.)  Apart from the

9   fact that such information cannot reasonably be deemed relevant to a dispute relating to

10  events taking place in 2000 well before the "Bratz" dolls were fully developed, finalized

11  or commercially introduced, this type of information too is unquestionably proprietary,

12  trade secret or competitively sensitive information and, thus, entitled to protection.  ADR

13  Rule 27; *see Sprinturf, Inc. v. Southwest Recreational Industries, Inc.,* 216 F.R.D. 320,

14  324 (E.D.Pa. 2003)(finding proprietary information regarding the development of product

15  line to be confidential, sensitive and appropriate for protective order); *see also, e.g., Vacco*

16  *Inds., Inc. v. Van Den Berg,* 5 Cal. App. 4th 34 (1992)(drawings, plans, designs and

17  similar documents relating to a company's products may constitute trade secrets);

18  *Components for Research, Inc. v. Isolation Prods., Inc.,* 241 Cal. App. 2d 726, 728-29

19  (1966)(production techniques and manufacturing "know-how" may be trade secret); *MAI*

20  *Sys. Corp. v. Peak Computer, Inc,* 991 F.2d 511, 522 (9th Cir. 1993)(technical data, not

21  generally known to the public, is trade secret); *Formulabs, Inc. v. Hartley Pen Co.,* 318

22  F.2d 485 (9th Cir. 1963)(formulas and dyes used in product manufacturing, and product

23  testing procedures, are trade secret).

24          Indeed, the detailed information that Farhad Larian has asked MGA to produce

25  would provide a virtual road-map for the production of a "Bratz" doll and could obviously

26  be used to MGA's competitive injury and disadvantage.  Collectively, the documents

27  disclose exactly how MGA took "Bratz" from idea, to concept, to design, to production,

28  how long it took, what steps MGA followed, what its internal approval processes were,

- 5 -

MGA'S MOTION FOR PROTECTIVE ORDER

CC 00346

**EXHIBIT 31 PAGE 502**

1  what designs it considered and rejected and similar information.  Such information would

2  be of great value to MGA's competitors and, in the wrong hands, could wreak havoc on

3  MGA's business, jeopardize its competitive position in the toy industry, and cause MGA

4  severe and extensive damage.

**B.  Farhad Larian Seeks Testimony From MGA Personnel and Contractors Concerning MGA Proprietary and Trade Secret Information.**

7  The disclosure of its documents is not MGA's only concern.  Many of the people

8  that Farhad Larian intends to call as witnesses at the arbitration, apparently to testify at the

9  arbitration about the conception and development of the "Bratz" dolls, will also be

10  prominent witnesses in MGA's litigation with Mattel on the same subjects.  Thus, the

11  testimony generated during the arbitration is also likely to disclose MGA trade secrets and

12  proprietary and confidential financial and product development information.  MGA, as a

13  third party, however, will not be able to object or otherwise attempt to curtail such

14  disclosures.  Nor will MGA be able to cross-examine the witnesses or present rebuttal

15  testimony and evidence.  MGA is, thus, also concerned about the potential disclosure of

16  information obtained through the testimony of its witnesses during the arbitration hearing.

**C.  MGA Has Legitimate Concerns That Farhad Larian May Share Its Confidential, Proprietary Trade Secret Information With MGA's Competitors And Adversaries.**

19  MGA is – and has reason to be – concerned that documents produced and

20  testimony generated during the course of this arbitration will be disclosed to its

21  competitors or to other parties adverse to MGA.  MGA is currently involved in a high-

22  stakes litigation with its fiercest competitor, Mattel, over the ownership rights to the

23  "Bratz" line of dolls (*Mattel v. Bryant*, case number CV 04-9059 NM (RnBx) in the

24  United States District Court for the Central District of California.)[3].  In the course of that

25  litigation, MGA has learned that Mattel has entered into at least one document sharing

26  ―――――――――――――――――
[3] In a nutshell, Mattel contends that it owns the rights to the "Bratz" line of dolls by virtue of the
27  fact that the creator of the original "Bratz" artwork is a former Mattel employee.  Mattel sued the
creator in April 2004, and MGA has intervened to protect its rights.  That case is pending in the
28  United States District Court in Los Angeles but all discovery in the case is currently stayed
pending the outcome of an interlocutory appeal over federal jurisdiction.

- 6 -                    MGA'S MOTION FOR PROTECTIVE ORDER

**CC 00347**

**EXHIBIT 31 PAGE 503**

1   agreement with a party adverse to MGA in another litigation, through which Mattel has

2   received information and documents produced in that case. (Gronich Decl. ¶ 4;

3   Ambrosini Decl. ¶ 2.) Because Mattel currently manufactures and sells fashion dolls that

4   directly compete with "Bratz" dolls in the same market for the same customers, it

5   obviously has a keen interest in obtaining any competitively sensitive information it can

6   regarding "Bratz," from any source. The Protective Order in place in the *Mattel v. Bryant*

7   case, however, prevents Mattel from using the information that it obtains there for

8   purposes other than that litigation. If Mattel could get the same information from another

9   source, however, such as Farhad Larian, it would potentially be free to use the information

10  in any way it chose. (Ambrosini Decl. ¶ 2.)

11          Farhad Larian appears to be in close, cooperative contact with Mattel and other

12  MGA adversaries. He has already obtained a partial transcript of a deposition taken in the

13  Mattel litigation (which could have been obtained only from Mattel) and given it to

14  another party adverse to MGA, Art Attacks Ink, LLC, who is suing MGA for trademark

15  infringement in the Southern District of California. (Ambrosini Decl. ¶¶ 3-4.) In addition

16  to this, Farhad Larian has moved to intervene in the Art Attacks' case for the sole purpose

17  of obtaining confidential MGA documents. (Ambrosini Decl. ¶ 5.)[4] Indeed, Farhad

18  Larian has used this arbitration as an excuse for trying to obtain access to confidential

19  documents in the Art Attacks case – claiming he needs them for the arbitration when, in

20  fact, the arbitration will be over before his motion will be heard.[5] (*Id.*)

21      **D.    MGA Is Entitled To Stringent Protective Measures To Prevent
22              The Disclosure Of Its Confidential, Proprietary and Trade Secret
                Information.**

23          There is no reason that MGA should have to run the risk that its confidential,

24  proprietary and trade-secret information may become freely available to all, just because it

25  and its employees have been served with third-party subpoenas. On the contrary, the

26  Larian arbitration is a private proceeding, arranged by contract; it is not a public trial. *See*

27  _____
    [4] A true and correct copy of the Motion is attached to the Ambrosini Declaration as Exhibit 1.
28  [5] Farhad Larian's Motion for Intervention to allow him access to confidential information in the
    Art Attacks case is currently scheduled to be heard on December 12. (Ambrosini Decl. ¶ 5.)

                                  - 7 -                    MGA'S MOTION FOR PROTECTIVE
                                                                              ORDER

                                                              CC 00348

EXHIBIT 31 PAGE 504

1   *O'Flaherty v. Belgum,* 115 Cal. App. 4th 1044, 9 Cal. Rptr. 3d 286 (2004)("Arbitration is

2   a private proceeding, arranged by contract.")(citing *Rifkind & Sterling, Inc., v. Rifkind,* 28

3   Cal. App. 4th 1282, 1290, 33 Cal. Rptr. 2d 282 (1994)). In fact, ADR Rule 13 requires

4   that "[t]he arbitrator and ADR Services shall maintain the privacy of the hearings unless

5   the law provides to the contrary." Thus, whereas a public Court may balance the public's

6   right to access against a litigant's need to protect confidential information, such

7   considerations have no application here. Indeed, as ADR notes on its website, the private,

8   confidential nature of arbitration is one of its attractive benefits. (*See*

9   adrservices.org/processes.htm (mentioning a number of advantages that arbitration

10   provides over a court trial, including that "the arbitration process is private and

11   confidential" and stating that "[c]ontractual arbitration and arbitration by stipulation are

12   private. . .").

13         An appropriate Protective Order restricting access to and use and dissemination of

14   MGA's documents and transcripts of the arbitration will fairly balance the interests of all

15   concerned, allowing Farhad Larian to arbitrate his claims, while guarding against

16   potentially harmful side effects that could compromise MGA's proprietary interests and

17   cause competitive injury and disadvantage to MGA. *See e.g., Moskowitz v. Sup. Ct.,* 137

18   Cal. App. 3d 313, 318-19 (1982)(limiting use of information to purposes related to lawsuit

19   and limiting access to persons with a legitimate interest in the lawsuit); *Brown Bag*

20   *Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir. 1992)(limiting access to trade

21   secret material to counsel of record); *see also, e.g., Liberty Felder v. Curtiss Anthony*

22   *Corp.,* 90 F.R.D. 80, 83 (S.D. Ohio 1981) (employing protective order to limit access and

23   use confidential information); *Chesa Intern., Ltd. v. Fashion Associates, Inc.,* 425 F.

24   Supp. 234, 237 (S.D.N.Y. 1977) (restricting access to competitive information to

25   "plaintiff's attorneys *only*")(emphasis in original); *Safe Flight Instr. Corp. v. Sundstrand*

26   *Data Control Inc.,* 682 F. Supp. 20, 22 (D. Del. 1988) (limiting access to attorneys only

27   of, among other things, confidential research and development information in patent

28   case); *Borden Co. v. Sylk,* 289 F. Supp. 847, 848-49 (E.D.Pa. 1968) (ordering discovery

-8-

MGA'S MOTION FOR PROTECTIVE ORDER

CC 00349

EXHIBIT 31 PAGE 505

1   on condition that it not be revealed or used for any purpose other than preparation for

2   trial); *Miles v. Boeing Co.*, 154 F.R.D. 112, 116 (E.D.Pa. 1994) (placing restrictions on

3   access and use of confidential information).

4        Specifically, MGA requests an order – such as that appended hereto as Exhibit A –

5   providing (1) that the documents that MGA produces pursuant to the subpoena, the

6   information contained therein, and the testimony elicited during the arbitration shall not

7   be used for any purpose other than arbitrating Farhad Larian's claims against Isaac Larian;

8   (2) that, in keeping with the protective orders entered by the United States District Courts

9   for the Central and Southern Districts of California (as well as other tribunals), the

10  documents produced by MGA or concerning MGA's business and the testimony about

11  same shall be deemed "Attorneys Eyes Only" and Farhad Larian shall not be permitted to

12  view, obtain, access or copy those documents or the transcripts of the arbitration and that

13  such documents, transcripts and any copies thereof, shall be destroyed at the completion

14  of the arbitration and the expiration of any appeal (or time to appeal) thereof; and (3) that

15  neither Farhad Larian nor his counsel shall be permitted to share or disseminate the

16  documents or transcripts to others, remove them from the arbitration, make copies of

17  them, or inform third parties of their existence or content or otherwise disclose the same to

18  anyone, unless compelled by law.  In other words, whatever may be disclosed about

19  MGA's business, in privacy and confidence during the course of the arbitration, should

20  remain private and confidential both during – and after – the arbitration.  In addition,

21  MGA respectfully requests that the arbitrator exercise discretion and not allow Farhad

22  Larian to explore areas of confidential information that have no bearing on the instant

23  arbitration.

24       ADR Rule 27 gives the arbitrator power and authority to issue such an order and to

25  exercise such discretion.  For the reasons discussed, there is ample reason to do so.

26  MGA's Motion should be granted.

27  **IV.   CONCLUSION**

28       MGA's should be granted a Protective Order to restrict access to confidential,

- 9 -

MGA'S MOTION FOR PROTECTIVE ORDER

CC 00350

**EXHIBIT 31 PAGE 506**

1   proprietary, trade secret and commercially and competitively sensitive information that

2   may be disclosed, in documents or testimony, during the course of this arbitration, limit

3   the use of such information to the purposes of this proceeding, and prohibit the

4   dissemination of such information to others not party to the proceeding.

5

6   Dated: November 14, 2005

7                                    DIANA M. TORRES
                                     PAULA E. AMBROSINI
8                                    O'MELVENY & MYERS LLP

9                                    By: _____
10                                        Paula E. Ambrosini
                                     Attorneys for Third-Party,
11                                   MGA Entertainment, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                  CC 00351

28

                                - 10 -            MGA'S MOTION FOR PROTECTIVE
                                                              ORDER

**EXHIBIT 31 PAGE 507**

# EXHIBIT A

CC 00352

EXHIBIT 31 PAGE 508

1   DIANA M. TORRES  (S.B. #162284)
    PAULA E. AMBROSINI (S.B. #193126)
2   CARLOS M. LAZATIN  (S.B. #229650)
    O'MELVENY & MYERS, LLP
3   400 South Hope Street
    Los Angeles, California 90071-2899
4   Telephone:  (213) 430-6000
    Facsimile:  (213) 430-6407
5   email:   dtorres@omm.com

6   DALE M. CENDALI (of counsel, not admitted in California)
7   O'MELVENY & MYERS, LLP
    7 Times Square
8   New York, New York 10036
    Telephone: (212) 326-2000
9   Facsimile: (212) 326-2061

10  Attorneys for Third Party,
    MGA Entertainment, Inc.

11

12                    ARBITRATION BEFORE

13                    ADR SERVICES, INC.

14

15  FARHAD LARIAN,                      ADRS Case No.:  05-2096-ABH

16              Plaintiff,              [PROPOSED] PROTECTIVE ORDER

17              v.

18  ISAAC LARIAN,

19              Defendant.

20

21

22

23

24

25

26

27

28

LA2:782144.1                                      CC 00353

**EXHIBIT 31 PAGE 509**

1. **PURPOSES AND LIMITATIONS**

This arbitration will involve the disclosure of documents and information that should be used only for the purpose of prosecuting, defending, or attempting to settle this arbitration and for no other purpose, including any other dispute involving any Party hereto or any non-party hereto.  Accordingly, the following Protective Order is hereby imposed upon the parties to this arbitration, Isaac Larian and Farhad Larian, and their employees, consultants, retained experts, counsel and support staff (the "Parties").

2. **SCOPE**

Protection is conferred by this Protective Order on all documents produced by third party MGA Entertainment, Inc. ("MGA") to Farhad Larian in response to a subpoena, all information copied or extracted therefrom, all copies, excerpts, summaries, or compilations thereof, and all testimony presented to the arbitrator, and transcripts of such testimony from any current or former MGA employee or contractor pertaining to MGA's business.  ("Protected Material").

3. **DURATION**

The obligations imposed by this Protective Order shall remain in effect during and after this arbitration and until the parties, Isaac Larian *and* Farhad Larian, and MGA agree otherwise, in writing, or an arbitrator or court order otherwise directs.

4. **ACCESS TO AND USE OF PROTECTED MATERIAL**

4.1   **Basic Principles:**  The Parties may use Protected Material in connection with this case only for prosecuting, defending or attempting to settle this arbitration and may not use such material for any other purposes, including in connection with any other matters, including between the same parties.  Protected Material may be disclosed only to the categories of persons and under the conditions described in this Protective Order. When the arbitration has been terminated, the Parties must comply with the provision of section 5 below (FINAL DISPOSITION).  Protected Material must be stored and maintained by the Parties at a location and in a secure manner that ensure that access is

LA2:782144.1                                    - 2 -                          **CC 00354**

**EXHIBIT 31 PAGE 510**

1    limited to the persons authorized and for the purposes permitted under this Protective

2    Order.

3        **4.2    Disclosure of Protected Material:**  Unless otherwise ordered by a court or

4    jointly permitted in writing by Isaac Larian *and* MGA, Protected Material may be

5    disclosed only to:

6                (a)    counsel of record in this arbitration and employees of said counsel to

7    whom it is reasonably necessary to disclose the information for this arbitration, and who

8    have specifically agreed to be bound by the terms of this Protective Order by executing

9    the undertaking attached hereto as Exhibit A;

10               (b)    experts to whom disclosure is reasonably necessary for this

11   arbitration, and who have specifically agreed to be bound by the terms of this Protective

12   Order by executing the undertaking attached hereto as Exhibit A;

13               (c)    the arbitrator and his personnel;

14               (d)    court reporters, their staffs, and professional vendors to whom

15   disclosure is reasonably necessary for this arbitration, and who have specifically agreed to

16   be bound by the terms of this Protective Order by executing the undertaking attached

17   hereto as Exhibit A;

18               (e)    witnesses in the arbitration to whom disclosure is reasonably

19   necessary, and who have specifically agreed to be bound by the terms of this Protective

20   Order by executing the undertaking attached hereto as Exhibit A; and

21               (f)    the author of the document or the original source of the information.

22       **4.3    Identifying Legend:**  Protected Material shall be appropriately identified

23   and marked with the legend "Confidential" or "Confidential – Attorneys Only."

24   Transcripts shall further include a statement substantially in the following form:

25        This transcript contains material subject to Protective Order.  The transcript may not

26        be used for any purpose other than this arbitration and its contents may not be

27        disclosed to anyone other than those persons permitted to access Protected Material

28        under the terms of the Protective Order.

LA2:782144.1                              - 3 -                          CC 00355

**EXHIBIT 31 PAGE 511**

1       **4.4**   Other Restrictions on Access to and Use of Protected Material:  No

2    party or person shall be permitted to share or disseminate the documents produced by

3    MGA or the transcripts of these proceedings to others, remove them from the arbitration,

4    make copies of them, or inform third parties of their existence or content or otherwise

5    disclose the same to anyone, unless compelled by law.

6       In short, this is a private proceeding; whatever may be disclosed about MGA's

7    business, in privacy and confidence during the course of the arbitration, should remain

8    private and confidential both during – and after – the arbitration.

9    **5.**    **FINAL DISPOSITION**

10       Unless otherwise ordered or jointly agreed in writing by Isaac Larian *and*

11   Farhad Larian, within 10 days after the final termination of this arbitration and any appeal

12   (or, if no notice of appeal is filed, the deadline for filing a notice of appeal), all Protected

13   Material must be returned to its original source or destroyed, including all copies,

14   abstracts, compilations, summaries or any other form of reproducing or capturing any of

15   the Protected Material.  Whether the Protected Material is returned or destroyed, each

16   Party must submit a written certification to the other Party, *and* the person or entity from

17   whom the Protected Material was secured or subpoenaed, by the 10 day deadline that

18   identifies (by category, where appropriate) all of the Protected Material that was returned

19   or destroyed and that affirms that the Party has not retained any copies, abstracts,

20   compilations, summaries or other forms or reproducing or capturing any of the Protected

21   Material.  Notwithstanding this provision, counsel of record for each Party is entitled to

22   retain an archival copy of all pleadings, motion papers, legal memoranda, correspondence

23   or attorney work product.  Any such archival copies that contain or constitute Protected

24   Material, however, shall otherwise remain subject to this Protective Order.

25    **6.**    **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

26

27       If a Party is served with a subpoena or an order issued in other litigation that

28   would compel disclosure of any Protected Material, the Party receiving the subpoena must

1    notify the other Party *and* the person or entity from whom the Protected Material was

2    secured or subpoenaed, in writing, immediately and in no event more than two business

3    days after receiving the subpoena or order.  Such notification must include a copy of the

4    subpoena or court order.

5        The Party receiving the subpoena also must immediately inform, in writing, the

6    party who caused the subpoena or order to issue in the other litigation that some or all of

7    the material covered by the subpoena or order is the subject of this Protective Order.  In

8    addition, the Party receiving the subpoena must deliver a copy of this Protective Order

9    promptly to the Party in the other action that caused the subpoena or order to issue.

10       The purpose of imposing these duties is to alert the interested parties to the

11   existence of this Protective Order and afford the Parties in this case *and* the person or

12   entity from whom the Protected Material was secured or subpoenaed, an opportunity to try

13   to protect whatever confidentiality interest such Party may have in the court from which

14   the subpoena or order issued.

15

16   SO ORDERED:

17   DATED:_____      _____

18

19

20

21

22

23

24

25

26

27

28

LA2:782144.1                          - 5 -                     CC 00357

**EXHIBIT 31 PAGE 513**

1   UNDERTAKING RE
    PROTECTIVE ORDER
2

3               UNDERTAKING OF _____

4

5

6   I, _____, declare:

7

8        My address is _____.

9   My present occupation is _____.

10

11       1.      I have received a copy of the Protective Order operative in this action,

12  ADRS Case No. 05-2096-ABH.  I have carefully read and understand the provisions of

13  the Protective Order.

14       2.      I will comply with all of the provision of the Protective Order.  I will hold in

15  confidence, and will not disclose to anyone other than those persons specifically

16  authorized by the Protective Order, and will not copy or use except for the proceedings

17  concerning the matters in issue between the parties, any and all Protected Material that I

18  receive.

19       Executed this ____ day of _____, at _____.  I declare under

20  penalty of perjury under the laws of California that the foregoing is true and correct.

21

22          _____

23

24

25

26

27

28

LA2:782144.1                     - 6 -                    CC 00358

**EXHIBIT 31 PAGE 514**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE

I, Linda M. Rich, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On November 14, 2005, I served the within documents:

1.    **THIRD PARTY MGA ENTERTAINMENT INC.'S MOTION FOR PROTECTIVE ORDER**

| | |
|---|---|
| [X] | by transmitting via facsimile machine the document(s) listed above to the fax number(s) set forth below on this date. The outgoing facsimile machine telephone number in this office is (213) 430-6407. The facsimile machines used in this office create a transmission report for each outgoing facsimile transmitted. A copy of the transmission report(s) for the service of this document, properly issued by the facsimile machine(s) that transmitted this document and showing that such transmission was (transmissions were) completed without error, is attached hereto. |
| [X] | by transmitting via e-mail the document(s) listed above to the e-mail address(s) set forth below on this date. |
| [X] | by putting a true and correct copy thereof, together with an unsigned copy of this declaration, in a sealed envelope designated by the carrier, with delivery fees paid or provided for, for delivery the next business day to the person(s) listed above, and placing the envelope for collection today by the overnight courier in accordance with the firm's ordinary business practices. I am readily familiar with this firm's practice for collection and processing of overnight courier correspondence. In the ordinary course of business, such correspondence collected from me would be processed on the same day, with fees thereon fully prepaid, and deposited that day in a box or other facility regularly maintained by Federal Express, which is an express carrier. |

## PLEASE SEE ATTACHED SERVICE LIST

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on November 14, 2005, at Los Angeles, California.

LINDA M. RICH

LA2:782602.1                                    CC 00359

**EXHIBIT 31 PAGE 515**



1                                    **SERVICE LIST**

| Kabateck Brown Kellner LLP | Cotkin, Collins & Ginsburg |
|---|---|
| Michael R. Brown | Robert G. Wilson |
| Richard L. Kellner | 300 South Grand Avenue |
| 350 S. Grand Avenue | 24th Floor |
| 39th Floor | Los Angeles, CA  90071-3134 |
| Los Angeles, CA  90071 | (213) 688-9350 Telephone |
| (213) 217-5000 Telephone | (213) 688-9351 Fax |
| (213) 217-5010 Fax | rgw@ccglaw.cc |
| mrb@kbklawyers.com | |
| rlk@kbklawyers.com | |

LA2:782602.1

CC 00360

**EXHIBIT 31 PAGE 516**

**REDACTED**

**SUBJECT TO**

**PROTECTIVE ORDER**