1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 90378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11 | CARTER BRYANT, an individual,  | CASE NO. CV 04-9049 SGL (RNBx)
12 |                                 | Consolidated with
   |          Plaintiff,             | Case Nos. CV 04-09059 & CV 05-2727
13 |     vs.                         | **DISCOVERY MATTER**
14 | MATTEL, INC., a Delaware        | **[To Be Heard By Hon. Edward Infante
15 | corporation,                    | (Ret.) Pursuant To Order Of
   |                                 | December 6, 2006]**
16 |          Defendant.             | MATTEL, INC.'S OPPOSITION TO
17 |                                 | MGA'S AND CARTER BRYANT'S
   |                                 | MOTION TO OVERRULE MATTEL'S
18 | AND CONSOLIDATED ACTIONS        | RELEVANCE OBJECTION AND
   |                                 | COMPEL DISCOVERY RELEVANT TO
19 |                                 | STATUTE OF LIMITATIONS AND
   |                                 | LACHES DEFENSES

[Declarations of Jon D. Corey and Michael Moore Filed Concurrently]

Date:   January 3, 2008
Time:   1:30 p.m.
Place:  JAMS
        Two Embarcadero Center
        Suite 1500
        San Francisco, California

**Phase 1**
Discovery Cut-Off:      January 28, 2008
Pre-Trial Conference:   May 5, 2008
Trial Date:             May 27, 2008

1

# TABLE OF CONTENTS

2
**Page**

3

4  MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

5  PRELIMINARY STATEMENT .................................................................................. 1

6  BACKGROUND FACTS........................................................................................... 2

7  ARGUMENT................................................................................................................ 7

8  I.  TOPIC NOS. 15, 16 AND 20 ARE IMPROPER AND
       OBJECTIONABLE........................................................................................ 7
9
       A.   The Topics Are Overbroad Because They Seek Information
10           Regarding Any Wrongful Conduct by Bryant......................................... 7

11     B.   The Topics are Vague and Ambiguous And Call For A Legal
            Conclusion ................................................................................................ 8
12
       C.   The Topics Seek The Date Mattel Obtained Actual Knowledge
13          of Bryant's Wrongful Conduct; That Date is November 24, 2003 ......... 9

14  II.  TOPIC NOS. 17-19 ARE OVERBROAD BECAUSE THEY SEEK
        INFORMATION THAT IS NOT A BASIS FOR MATTEL'S CLAIMS
15      OR MGA'S DEFENSES TO THOSE CLAIMS............................................ 10

16     A.   Topic Nos. 17-19 Seek Information That Cannot Put Mattel on
            Actual or Inquiry Notice of Any Claim, So It Is Irrelevant.................. 10
17
       B.   Mattel Cannot Educate A Witness to All Facts Regarding
18          Bryant's Creation of Bratz While At Mattel Because the
            Protective Order Prohibits Counsel from Showing Mattel Much
19          of That Evidence .................................................................................... 12

20     C.   Topic No. 19 Is Separately Overbroad .................................................. 14

21  III.  BRYANT WITHDREW TOPIC NO. 21......................................................... 14

22  IV.  TOPIC NO. 26 IS NOT ONLY OVERBROAD, BUT SEEKS
        EXCLUSIVELY ONLY PRIVILEGED INFORMATION ............................ 15
23
    V.  MATTEL SHOULD NOT BE COMPELLED TO SUPPLEMENT
24      ALL ITS DISCOVERY RESPONSES AND DOCUMENT
        PRODUCTION BASED ON OBJECTIONS TO EIGHT RULE
25      30(B)(6) DEPOSITION TOPICS .................................................................. 16

26  CONCLUSION........................................................................................................... 18

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

3M Co. v. Kanbar,
  2007 WL. 1794936 (N.D. Cal. 2007).................................................................. 9

Am. Banana Co., Inc. v. Republic Nat'l Bank of New York, N.A.,
  2000 WL. 521341 (S.D.N.Y. 2000) ................................................................... 15

Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.,
  175 F.R.D. 646 (C.D. Cal. 1997) ...................................................................... 17

Fresenius Med. Care Holdings Inc. v. Baxter Int'l, Inc.,
  224 F.R.D. 644 (N.D. Cal. 2004) ...................................................................... 11

Hobson v. Wilson,
  737 F.2d 1 (D.C. Cir. 1984),
  cert. denied, 470 U.S. 1084, 105 S. Ct. 1843, 85 L. Ed. 2d 142 (1985) .............. 11

Jolly v. Eli Lilly & Co.,
  44 Cal. 3d 1103 (1988)................................................................................ 10, 11

Kolani v. Gluska,
  64 Cal. App. 4th 402 (1998).............................................................................. 12

Mahach-Watkins v. Depee,
  2007 WL. 1394651 (N.D. Cal. 2007).................................................................. 17

Rambus Inc. v. Samsung Elecs. Co.,
  2007 WL. 3444376 (N.D. Cal. 2007).................................................................. 11

Robinson v. Jardine Ins. Brokers Intern. Ltd.,
  856 F. Supp. 554 (N.D. Cal. 1994).................................................................... 12

Soliman v. Philip Morris Inc.,
  311 F.3d 966 (9th Cir. 2002)........................................................................ 10, 11

Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc.,
  106 F.3d 894 (9th Cir. 1997) ............................................................................ 11

## Statutes

Cal. Bus. & Prof. Code § 16600 ............................................................................ 12

Fed. R. Civ. P.
  26 .................................................................................................................... 14
  26(b)(1)......................................................................................................... 8, 13
  30(b)(6)...................................................................................................... 8, 9, 14

-ii-

1

# Other Authorities

2  Central District Local Rules

    Rule 37-1 ........................................................................................................... 17

3    Rule 37-2.1 ........................................................................................................ 17

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S OPPOSITION TO MGA'S AND CARTER BRYANT'S MOTION TO COMPEL

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA and Bryant start with false statements.  First, Mattel does *not* refuse to provide any discovery as to when it first knew or should have known the facts underlying its claims against MGA or Bryant.  To the contrary, Mattel and Bryant and MGA agreed to narrow the overbroad topics at issue in this Motion to "the claims and defenses" in this case, and Mattel agreed to produce a witness on those narrowed topics.  Bryant and MGA reneged on that agreement and rejected Mattel's offer.

Second, Mattel's sole objection to the scope of specific topics is not that Judge Larson has already determined the date of when Mattel first learned that Bryant worked for MGA while a Mattel employee—November 23, 2003—when it received a copy of Bryant's contract with MGA.  Indeed, Bryant and MGA's motion studiously avoids the language of the Topics at issue, which are not reasonably particularized and are independently objectionable.

While disguised as a motion about statutes of limitations and laches, Bryant and MGA seek an order compelling Mattel to educate a witness to testify regarding information that far exceeds the scope of the claims or defenses at issue.  They seek to compel Mattel to educate and to produce a witness to testify regarding "*all* acts, omissions, circumstances and/or evidence showing, or tending to show, when Mattel first became aware of *any alleged wrongful conduct of Bryant*" – regardless of whether the allegedly wrongful conduct is at issue in this case.  And MGA and Bryant seek to compel a witness on "*all* acts, omissions, circumstances and/or evidence showing, or tending to show, all actions taken by [Mattel] . . . relating to Bratz after [Mattel] learned that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz."  As written, that topic includes every action ever taken by Mattel related to Bratz.  As a key product manufactured and marketed by a Mattel competitor, Mattel has taken innumerable

1  actions related to Bratz that have no relevance to the claims or defenses in this case

2  (e.g., decisions on how to compete with Bratz), let alone MGA's and Bryant's

3  laches and statute of limitations defenses. Indeed, this request parallels MGA's

4  requests that Mattel produce all documents it has that reference "Bratz," which the

5  Discovery Master has rejected.

6            MGA and Bryant tack on to their motion a request for an order

7  compelling Mattel to "supplement all of its discovery responses and document

8  productions" based on Mattel's objections to the eight Rule 30(b)(6) topics at issue

9  in the motion. Such a request flouts both the requirement of the Local Rules, and

10 the practice of the Discovery Master, that discovery disputes be resolved in the

11 context of specific requests and specific questions, not based on unsupported

12 generalities. MGA and Bryant provide no authority warranting such broad relief,

13 and the motion should be denied.

14                      **Background Facts**

15           Bryant' Notice of Deposition. On December 21, 2004, Carter Bryant

16 served a Rule 30(b)(6) notice on Mattel that included 56 topics for examination.[1]

17 MGA's and Bryant's motion seeks to compel Mattel to prepare and produce a

18 witness on eight of those topics. The eight topics at issue essentially fall into two

19 broad categories. First, topics that seek information regarding *any* wrongful conduct

20 by Carter Bryant, whether a basis for a claim or defense in this case or not:

21           Topic 15: All acts, omissions, circumstances and/or evidence showing, or

22               tending to show, when Mattel first became aware of *any alleged wrongful*

23               *conduct of Bryant.*

24

25

26

27    [1] Notice of Deposition of Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004, attached as Exhibit 3 to the Declaration of Marcus R. Mumford

28 ("Mumford Dec.").

1       Topic 16: All acts, omissions, circumstances and/or evidence showing, or

2       tending to show, the manner and mode by which Mattel first became

3       aware of *any alleged wrongful conduct of Bryant.*

4       Topic 20: All acts, omissions, circumstances and/or evidence showing, or

5       tending to show, all actions taken by [Mattel], including but not limited to

6       all circumstances surrounding any investigations [Mattel has] undertaken,

7       relating to Bryant and *any act or omission of Bryant that breached any*

8       *contractual or non-contractual duty or obligation Bryant owed to Mattel.*

9       Second, topics that seek information regarding Mattel's actions and

10  knowledge regarding Bryant's involvement in Bratz:

11      Topic 17: All acts, omissions, circumstances and/or evidence showing, or

12      tending to show, when [Mattel] first became aware that *Bryant was*

13      *involved in the conception, creation, design and/or reduction to practice*

14      *of Bratz.*

15      Topic 18: All acts, omissions, circumstances and/or evidence showing, or

16      tending to show, how [Mattel] first became aware that *Bryant was*

17      *involved in the conception, creation, design and/or reduction to practice*

18      *of Bratz.*

19      Topic 19: All acts, omissions, circumstances and/or evidence showing, or

20      tending to show, all actions taken by [Mattel], including but not limited to

21      all circumstances surrounding any investigations you have undertaken,

22      relating to Bratz *after [Mattel] learned that Bryant was involved in the*

23      *conception, creation, design and/or reduction to practice of Bratz.*

24      Topic 21: All Communications regarding *Bryant's involvement in the*

25      *conception, creation, design and/or reduction to practice of Bratz* from

26      1998 until the date of the filing of the Complaint.

27      Topic 26: Communications, discussion, meetings, analyses and the

28      decision-making process regarding measures taken or contemplated by

1          Mattel including, without limitation, any legal action brought or

2          threatened to be brought (including demand letters or other notices)

3          against Bryant including, without limitation, the filing of the Complaint.

4   Mattel served objections to the Topics set forth in Bryant's Notice on December 29,

5   2004.

6          <u>March 15, 2005 Meeting of Counsel</u>. On March 14 and 15, 2005, the

7   parties met and conferred regarding a number of pending discovery issues, including

8   several of the topics in Bryant's <u>Rule</u> 30(b)(6) notice to Mattel. Mattel identified its

9   objection to Topic Nos. 15 and 16 on the grounds that "any alleged wrongful

10   conduct of Bryant is too broad," but offered to produce a witness if the scope of the

11   topics were limited to the wrongful conduct at issue in Mattel's claims.[2] Mattel also

12   outlined its overbreadth objections to Topic Nos. 17-20, but offered to produce a

13   witness on the topics subject to a similar limitation of their scope.[3] Magistrate

14   Judge Block adopted the narrowing of the topics, as agreed to by the parties, at the

15   March 14 and 15, 2005 meet and confer in a stipulation that was ordered on May 4,

16   2005.[4] The Court imposed a stay of proceedings on May 20, 2005, sixteen days

17   later.[5]

18          <u>November Meetings of Counsel</u>. At a meeting of counsel on

19   November 21, 2007, the parties again discussed certain topics in Bryant's <u>Rule</u>

20   30(b)(6) notice of Mattel. Mattel repeated its overbreadth and relevancy objections

21   to a number of the <u>Rule</u> 30(b)(6) topics, including the eight topics at issue in MGA's

22   and Bryant's motion and Topic Nos. 2-7 which generally seek information regarding

23

24     [2]  Transcript of Meet and Confer, dated March 15, 2005, at 256:18-257:24,

25   attached as Exhibit 5 to the concurrently filed Declaration of Jon D. Corey ("Corey Dec.").

26     [3]  <u>Id</u>. at 259:17-260:2, 262:16-20, 264:4-265:23.

       [4]  Stipulation and Order Re Certain Discovery Issues, Corey Dec., Exh. 6.

27     [5]  Court's Minute Order Re Discovery Stay, dated May 20, 2005, Corey Dec.,

28   Exh. 7.

1   all acts and omission of Bryant related to the contractual duties he owed Mattel and

2   to proprietary Mattel information.[6] MGA proposed narrowing the scope of Topic

3   Nos. 2-7 to the extent that Mattel is using the information as a basis for its claims or

4   defenses in this litigation.[7] Mattel agreed to produce a witness on those topics based

5   on that proposed limitation. MGA also agreed to similarly limit the scope of Topic

6   Nos. 15 and 16 regarding Bryant's wrongful conduct "to the extent Mattel asserts it

7   as a basis for any of its claims or defenses in this matter."[8] Mattel proposed that the

8   same limitation be applied to Topic Nos. 17-20.[9] Mattel also reiterated its objection

9   to Topic No. 26 on the grounds that to the extent it seeks relevant information, "its

10   subject matter is privileged."[10]

11         On November 29, 2007, counsel for MGA responded to Mattel's letter

12   memorializing the parties' November 21, 2007 meeting of counsel.[11] MGA

13   withdrew its agreement to limit the scope of Topic Nos. 15 and 16 and refused

14   Mattel's proposal to limit the scope of the other topics at issue in MGA's and

15   Bryant's motion.[12] Mattel's counsel responded to MGA's letter, reiterating its

16   overbreadth and related relevance objection to the topics at issue.[13] Specifically,

17   Mattel noted that "[a]s phrased, Topics Nos. 15-16 and 20 are overbroad" because

18   they "seek information regarding when Mattel first learned of 'any alleged wrongful

19   conduct of Bryant' and 'any act or omission of Bryant that breached any contractual

20

---

21   [6]   Letter from Jon D. Corey to Raoul Kennedy, dated November 26, 2007,

22   Mumford Dec., Exh. 1.

23   [7]  Id. at p. 2.
    [8]  Id. at p. 4.

24   [9]  Id.
    [10]  Id.

25   [11]  Letter from Marcus R. Mumford to Jon D. Corey, dated November 29, 2007,

26   Mumford Dec., Exh. 14.

27   [12]  Id.
    [13]  Letter from Jon D. Corey to Marcus Mumford, dated December 6, 2007,

28   Mumford Dec., Exh. 15.

1  or non-contractual duty or obligation Bryant owed to Mattel.'"[14]  Mattel explained
2  that "[a]s phrased . . . the scope of the topics contemplate every single bad act
3  Bryant may have engage in at any time in his life, including . . . the theft of a
4  pencil."[15]  Mattel reiterated its understanding that the parties' had agreed to limit the
5  scope of those requests to "any alleged wrongful conduct to the extent Mattel asserts
6  it in claims or defenses of Bryant at issue in this matter."[16]  Mattel also restated its
7  position that Topic Nos. 17-19 were overbroad in that, as drafted, they sought
8  information not relevant to the claims or defenses at issue in the litigation.  Mattel
9  explained that "[i]t is not a defense to Mattel's claims that Mattel knew that Bryant
10 worked for MGA prior to November 2003," and that "when Mattel learned that
11 Bryant may have been involved in creating, designing or reducing to practice Bratz
12 while he was an MGA employee (or contractor), provides no notice of the predicate
13 facts of Bryant's wrongdoing in this suit."[17]  Mattel offered to produce a witness to
14 the extent MGA and Bryant agreed to limit the scope of the topics to "how Mattel
15 discovered that Bryant was involved in the conception, creation, design or reduction
16 to practice of Bratz *while he was a Mattel employee* and Mattel's response
17 thereto."[18]  That proposed limitation did not exclude Mattel's knowledge, if any,
18 prior to November 2003.  Last, Mattel reiterated its objections to Topic Nos. 21 and
19 26.

20         December 6, 2007 Meeting of Counsel.  The parties subsequently met
21 and conferred on December 6, 2007, at which each of these issues were discussed
22 and Mattel reiterated its positions, objections, and made clear that it was willing to
23 prepare a witness to testify regarding when Mattel first learned that Bryant was
24 performing work for MGA while a Mattel employee.  Bryant and MGA rejected that

---

[14]  Id. at p. 1.
[15]  Id.
[16]  Id. at pp. 1-2.
[17]  Id. at p. 2.
[18]  Id.

-6-

1  offer.  Mattel explained, once again, that these requests should be tailored by the
2  claims and defenses at issue in this case.  Namely, Mattel's claim is that Bryant
3  breached obligations to Mattel when he worked for MGA while a Mattel employee.
4  MGA's statute of limitations and laches defenses are to those claims only; any
5  statute of limitations or laches defense to claims that Mattel has not brought, such as
6  a claim that Bratz infringes the Toon Teen copyrights, are irrelevant.[19]

7          Neither counsel for Bryant nor counsel for MGA were familiar with the
8  discussions that occurred on March 15, 2005.[20]  Bryant's counsel requested a copy
9  of the transcript of that meeting of counsel, which counsel for Mattel provided.[21]
10  MGA and Bryant did not respond to the transcript that Mattel provided, but filed
11  this motion.

12  **Argument**

13  **I.**    **TOPIC NOS.  15, 16 AND 20 ARE IMPROPER AND**
14        **OBJECTIONABLE**

15        **A.**    **The Topics Are Overbroad Because They Seek Information**
16            **Regarding Any Wrongful Conduct by Bryant**

17          Topic Nos. 15, 16 and 20 in Bryant's Rule 30(b)(6) notice seek
18  information regarding when Mattel learned of *any* wrongful conduct by Bryant.  As
19  drafted, Topic Nos. 15, 16 and 20 would require Mattel to prepare a witness on a
20  whole range of potentially wrongful conduct by Bryant that is plainly unrelated to
21  the claims and defenses in this litigation.  For example, those Topics would require
22  Mattel to prepare a witness on matters as far afield as the theft of a pen or
23  complaints that Bryant harassed other employees or Bryant's failure to comply with
24  Mattel's vacation policy.  Mattel should not be required to prepare a witness on such
25  irrelevant information.

26
27  [19]  Corey Dec., ¶ 4.
    [20]  Corey Dec., ¶ 5.
28  [21]  Corey Dec., ¶ 6.

1    Mattel has asserted claims arising from very specific wrongful conduct,
2  such as Bryant's creation of Bratz while a Mattel employee and wrongful
3  assignment of Bratz to MGA and working with MGA while he was an employee at
4  Mattel, for example.[22]  Because the claims are limited to specific conduct, discovery
5  must be limited to information relevant to that specific conduct. Fed. R. Civ. P.
6  26(b)(1). Mattel, as it has previously offered and as all parties have previously
7  agreed, will produce a witness to testify regarding when Mattel first learned of
8  Bryant's wrongful conduct as alleged in the Complaint and the Counterclaims—
9  namely that Bryant worked for MGA while a Mattel employee and assigned MGA
10  rights that rightfully belonged to Mattel.  MGA and Bryant are, of course, entitled to
11  inquire of Mattel witnesses about *any* misconduct by Bryant, but Mattel has no
12  obligation to educate and produce a corporate designee to testify in that regard.

13       **B.    The Topics are Vague and Ambiguous And Call For A Legal**
14            **Conclusion**

15    Rule 30(b)(6) topics must be "reasonably particularized." See Fed. R.
16  Civ. P. 30(b)(6) (notice "must describe with reasonable particularity the matters for
17  examination"). Topics 15, 16 and 20 are not. They seek witnesses to testify
18  regarding "any wrongful conduct" or "any act or omission of Bryant that breached
19  any contractual or non-contractual duty or obligation Bryant owed to Mattel." Such
20  requests are not "reasonably particularized." See Fed. R. Civ. P. 30(b)(6). Indeed,
21  they require Mattel to speculate as to what Bryant meant by "wrongful conduct" or
22  "any contractual or non-contractual duty or obligation."

23    Further, none of those requests are factual, as they must be. Rather, to
24  frame each request, Mattel must make a legal conclusion—beyond its claims—as to
25  whether Bryant's unrelated conduct was "wrongful" or breached duties or
26  obligations owed to Mattel. See 3M Co. v. Kanbar, 2007 WL 1794936, at *2 (N.D.

27

28  [22]  See Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and Counter-Claims, dated July 12, 2007, Corey Dec., Exh. 8.

1  Cal. 2007) (granting protective order because <u>Rule</u> 30(b)(6) topics sought "legal
2  conclusions that should not form the basis for 30(b)(6) deposition topics"). Indeed,
3  at the meeting of counsel on March 15, 2005, the parties specifically agreed that the
4  scope of each Topic would be limited to factual information, not legal contentions.[23]

5  **C.  The Topics Seek The Date Mattel Obtained Actual Knowledge of**
6  **Bryant's Wrongful Conduct; That Date is November 24, 2003**

7  Only when the Topics are narrowed to the claims that Mattel has
8  asserted do they become reasonable. Mattel obtained knowledge of Bryant's
9  wrongful conduct on November 24, 2003. That was the date that a Mattel
10  representative, Michael Moore, received a copy of Bryant's contract with MGA in
11  which he agreed to provide services to MGA "as of September 18, 2000," which
12  coincided with his Mattel employment.[24]

13  Judge Larson saw this—and far more evidence than MGA or Bryant
14  have presented here supporting their position. His ruling is unequivocal. "[T]he
15  Court determines that November 24, 2003, marks the date when litigation between
16  Mattel and Bryant became more than merely speculative and in fact became
17  probable."[25] To the extent that the Topics seek Mattel's actual knowledge of
18  Bryant's wrongful conduct at issue in this case, that date is November 24, 2003.

19  In light of the Court's ruling that Mattel gained actual knowledge of
20  Bryant's misconduct that formed the basis for the claims on November 23, 2003—
21  whether binding or not—and given that the Topics seek only Mattel's actual
22  knowledge, no witness is necessary on these Topics. MGA and Bryant may seek
23  discovery of other facts to support a defense based upon inquiry notice, but those
24  facts do not fall within the scope of Topic Nos. 15, 16 or 20, which are limited to

25
26
27  [23] March 15, 2005 Tr. at 169:17-24, 175:23-176:16, Corey Dec., Exh. 5.
      [24] Moore Dec., ¶ 4.
28  [25] Order Denying Motion for Terminating Sanctions at 3, Corey Dec. Exh. 9.

1   when and how "Mattel first became *aware*."[26]  If necessary, Mattel will educate and
2   produce a witness to testify that Mattel received Bryant's contract with MGA on
3   November 24, 2003.

**II.   TOPIC NOS. 17-19 ARE OVERBROAD BECAUSE THEY SEEK**
**INFORMATION THAT IS NOT A BASIS FOR MATTEL'S CLAIMS**
**OR MGA'S DEFENSES TO THOSE CLAIMS**

    **A.   Topic Nos. 17-19 Seek Information That Cannot Put Mattel on**
        **Actual or Inquiry Notice of Any Claim, So It Is Irrelevant**

9       Topic Nos. 17-19 are overbroad, seek information that imposes an
10  undue burden upon Mattel and seek irrelevant information.  Each Topic is
11  predicated upon Mattel knowing when "Bryant was involved in the conception,
12  creation, design and/or reduction to practice of Bratz."  When Mattel learned that,
13  however, is irrelevant.  That Bryant created Bratz provides no notice of any
14  wrongful conduct.  Employees regularly leave Mattel to work for competitors.  No
15  claim accrues each time Mattel learns that a former employee works for a
16  competitor on a competing product.

17      In contrast, when Mattel learned that Bryant created Bratz *while he was*
18  *a Mattel employee*, is crucial.  If the Topics are so narrowed, Mattel could possibly
19  educate and produce a witness.  See Part II.B.  But, Bryant and MGA do not seek
20  that information with Topic Nos. 17-19, nor have they agreed to Mattel's offer to
21  produce a witness on such narrowed Topics.

22      MGA's and Bryant's own authorities compel the conclusion that
23  Bryant's work on Bratz while at MGA, as opposed to Mattel, is irrelevant.  In both
24  Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103 (1988) and Soliman v. Philip Morris Inc.,
25  311 F.3d 966 (9th Cir. 2002), both the California Supreme Court and the Ninth

---

26      [26]  Webster's Encyclopedic Unabridged Dictionary defines "aware" as "having
27  knowledge, conscious, cognizant."  Corey Dec., Exh. 10.  In Topic No. 20, Mattel's
28  knowledge is implicit in the Topic.

1 | Circuit required facts sufficient to put a party on notice *of a wrong* before a

2 | limitations period began to run. Jolly, 44 Cal. 3d at 1110, 1113 ("The statute of

3 | limitations begins to run when the plaintiff suspects or should suspect that her injury

4 | was caused *by wrongdoing, that someone has done something wrong to her. . . .* At

5 | this point it is necessary only to point out the oft-stated rule that it is the discovery

6 | of facts, not their legal significance, that starts the statute.") (emphasis added);

7 | Soliman, 311 F.3d at 972 (holding that the limitations period commenced when "he

8 | should have known of any significant injury *from defendants' wrongful conduct*")

9 | (emphasis added).[27]

10 |        Similarly, in Fresenius Med. Care Holdings Inc. v. Baxter Int'l, Inc.,

11 | 224 F.R.D. 644, 655 (N.D. Cal. 2004), the court compelled the plaintiff in a patent

12 | infringement action to produce documents related to when it first received notice of

13 | the allegedly infringing product–the specific *wrongful* conduct at issue in plaintiff's

14 | claims. In Rambus Inc. v. Samsung Elecs. Co., 2007 WL 3444376, at *4 (N.D. Cal.

15 | 2007), the court compelled the production of documents related to when Samsung

16 | first had notice that its former employee took confidential information to a

17 | competitor—the allegedly *wrongful* conduct at issue in the case.

18 |        Unlike all of those cases, merely working for a competitor is not notice

19 | of a wrong. The only facts sought to be elicited in Topic Nos. 17-19, as phrased, are

20 | when Mattel learned what Bryant was doing at a competitor. Unlike Rambus,

21 | Mattel had no idea that Bryant "took confidential information to a competitor."

22 |

[27] Mattel does not, by citing these cases, concede that they have any application
23 | here whatsoever, given that they deal with statute of limitations governing personal
24 | injury claims arising out of defective products. Indeed, in a far more relevant
context, the Ninth Circuit has ruled that to establish equitable defenses of estoppel,
25 | laches, and acquiescence, the defendants had to prove that Mattel knew of facts
26 | giving it notice of its trademark counterfeiting cause of action, *not just any cause of
action*. Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc.,
27 | 106 F.3d 894, 899 (9th Cir. 1997) (citing Hobson v. Wilson, 737 F.2d 1, 35 (D.C.
28 | Cir. 1984), cert. denied, 470 U.S. 1084, 105 S. Ct. 1843, 85 L. Ed. 2d 142 (1985)).

1    ·There is nothing inherently "wrong" or to suggest that Mattel was being

2  "wronged" when it learned that Bryant had left Mattel to work for a competitor, or

3  even to work on a competing product.  The California Legislature has specifically

4  determined that employees in California can leave employers to work for

5  competitors.  See Cal. Bus. & Prof. Code § 16600 ("Except as provided in this

6  chapter, every contract by which anyone is restrained from engaging in a lawful

7  profession, trade, or business of any kind is to that extent void."); Kolani v. Gluska,

8  64 Cal. App. 4th 402, 407 (1998) (finding covenant not to compete in employment

9  agreement to be "an outright prohibition on competition" and therefore void);

10  Robinson v. Jardine Ins. Brokers Intern. Ltd., 856 F. Supp. 554, 558 (N.D. Cal.

11  1994) (under California law, "[a]s a general proposition, an individual has a right to

12  freely pursue the livelihood of his or her choice").

13    Because, by definition, working for a competitor cannot constitute

14  notice for statute of limitations purposes, the Topics are irrelevant and overbroad

15  and Mattel's objections should be sustained or the Topics tailored to relevant

16  evidence—Mattel's knowledge that Bryant created Bratz while at Mattel.

17    **B.    Mattel Cannot Educate A Witness to All Facts Regarding Bryant's**

18    **Creation of Bratz While At Mattel Because the Protective Order**

19    **Prohibits Counsel from Showing Mattel Much of That Evidence**

20    When Mattel and Bryant first broached these Topics, it was agreed that

21  Mattel (and MGA on the other hand) would only be required to educate a witness

22  about information in the possession of the client.  Neither party adopted a burden of

23  educating a witness to testify about evidence gathered from the opposing party or

24  parties or from third parties in discovery.[28]  Nor could they.  Significant portions of

25  the evidence produced in discovery, particularly as it relates to the early

26  development of Bratz, is identified as Attorney's Eyes Only under the Protective

27

28    [28]    March 15, 2005 Tr. at 204:7-213:6, Corey Dec., Exh. 5.

1    Order.  So designated, evidence relating to the timing of the early creation of Bratz,
2    including, for example, payments to Bryant by MGA, invoices submitted by Anna
3    Rhee to MGA, and payments to Veronica Marlow all before Bryant left Mattel,
4    cannot be shown to Mattel.[29]  Because of these limitation, Mattel cannot "connect
5    the dots" for MGA or Bryant in this regard.

6              As MGA and Bryant acknowledge, Mattel proposed limiting the scope
7    of the topics "to the extent Mattel asserts [the matter at issue] as a basis for any of its
8    claims or defenses in this matter."[30]  On November 21, 2007, Mattel agreed to
9    produce a witness to testify when Mattel learned that Bryant worked for MGA while
10   a Mattel employee.  After initially agreeing to that limitation, MGA and Bryant now
11   claim that the proposed limitation somehow omits from testimony matters that
12   might form the basis of *their* defenses.[31]  That argument misses the point.  MGA and
13   Bryant claim that the Topics are relevant only to their statute of limitations and
14   laches defenses.  Those defenses depend on when Mattel first learned of wrongful
15   conduct at issue in *Mattel's* claims, not when Mattel learned of some other claims
16   that are strangers to this litigation.  MGA and Bryant have not, and cannot, identify
17   any other wrongful conduct by Bryant for which Mattel's knowledge would have
18   any relevance to the statute of limitations and laches defenses pleaded.  For
19   example, Mattel has disclaimed any claim that Bryant's work on Bratz infringed
20   Mattel's "Toon Teens" copyrights.[32]  Because that is not a claim in this case—and
21   neither Bryant nor MGA have a defense to that claim—any inquiry into whether
22   Mattel had notice of a claim for infringement of the Toon Teens copyrights is
23   irrelevant.  Fed. R. Civ. P. 26(b)(1).

24

25   ───────────────
        [29]   Corey Dec., ¶ 9.
26      [30] MGA/Bryant Motion, at p. 4.
        [31] Id.
27      [32]   Report to Judge Larson; June 26, 2006 Hearing Tr. at 61:10-62:17, Corey
28   Dec. Exh. 13.

1  **C.  Topic No. 19 Is Separately Overbroad**

2  Topic No. 19 is overbroad and not reasonably particularized for an

3  additional reason. Topic No. 19 seeks "[a]ll acts, omissions, circumstances and/or

4  evidence showing, or tending to show, *all actions taken by [Mattel] . . . relating to*

5  *Bratz* after [Mattel] learned that Bryant was involved in the conception, creation,

6  design and/or reduction to practice of Bratz." Mattel and MGA are competitors and,

7  as with any competitor, Mattel takes innumerable actions relating to products of

8  MGA, including decisions on how to compete with those products. As drafted,

9  Topic No. 19 would require Mattel to prepare a witness on all such actions taken by

10  Mattel that relate to Bratz. The scope of the topic is thus well beyond the bounds of

11  discoverable information pursuant to Rule 26. Indeed, the Discovery Master has

12  regularly rejected requests for all documents related to Bratz.[33] This Topic is the

13  same request in a different context and Mattel's objection should be sustained for the

14  same reason.

15  **III.  BRYANT WITHDREW TOPIC NO. 21**

16  Topic No. 21 seeks "[a]ll communications regarding *Bryant's*

17  *involvement in the conception, creation, design and/or reduction to practice of Bratz*

18  from 1998 until the date of the filing of the Complaint." Bryant made no effort to

19  tailor this request, in that it seeks all communications occurring over more than six

20  years. For example, no communications within two years of filing the complaint

21  would remotely impact any statute of limitations or laches defense. Nor is this a

22  "reasonably particularized" topic that Rule 30(b)(6) requires. Indeed, the Discovery

23  Master has repeatedly rejected such overbroad requests.[34]

24

25

---

26  [33]  See Order Granting in Part and Denying in Part MGA's Motion to Compel

27  Documents Responsive to First Set of Requests for Production of Documents Dated
November 22, 2006, dated May 22, 2007, at 17-19, 21, Corey Dec., Exh. 14.

28  [34]  Id.

1    Recognizing these deficiencies, at the meeting of counsel on March 15,
2   2005, Bryant withdrew and "tabled" Topic No. 21.[35]  Magistrate Judge Block "so
3   ordered" that tabling on May 4, 2004, when he adopted the parties' agreements as
4   reflected in the March 15, 2005 transcript.[36]  The Motion to compel Mattel to
5   produce a witness on this, at best, unwieldy topic, should be denied.

6   **IV.    TOPIC NO. 26 IS NOT ONLY OVERBROAD, BUT SEEKS**
7   **EXCLUSIVELY ONLY PRIVILEGED INFORMATION**

8    Topic 26 seeks "[c]ommunications, discussion, meetings, analyses and
9   the decision-making process regarding measures taken or contemplated by Mattel
10  including, without limitation, any legal action brought or threatened to be brought
11  (including demand letters or other notices) against Bryant including, without
12  limitation, the filing of the Complaint."  Mattel possesses only privileged
13  information in response to this Topic, and requests for discovery on such topics is
14  routinely denied on that ground.  See Am. Banana Co., Inc. v. Republic Nat'l Bank
15  of New York, N.A., 2000 WL 521341, at *4 (S.D.N.Y. 2000) (finding that requests
16  for documents regarding plaintiff's decision to commence action were not relevant
17  to laches defense because such documents "would likely be protected by privilege").

18   At the March 15, 2005 meeting of counsel, Bryant's counsel
19  specifically agreed to "exclude from this [Topic No. 26] and all of these matters that
20  are subject to the protection under the attorney-client privilege or the work product
21  privilege."[37]  Later, during the December 6, 2007 meeting of counsel, Bryant's
22  counsel asked Mattel whether meetings occurred between and among business
23  people at Mattel—as opposed to lawyers—about whether or not to sue Bryant for
24  solely business reasons.[38]  Because, if such meetings occurred, then they would not

25

26  [35]  March 15, 2005 Tr. at 266:16-19, Corey Dec., Exh. 5.
    [36]  Stipulation Regarding Discovery Matters at 1:12-16, Corey Dec. Exh. 6.
27  [37]  March 15, 2005 Tr. at 278:8-10, Corey Dec. Exh. 5.
28  [38]  Corey Dec. ¶ 7.

-15-

1  be privileged and could, theoretically, fall within the scope of this Topic. Mattel is
2  aware of no such meeting or meetings occurring. All "communications, discussions,
3  meetings, analysis and the decision-making process" regarding any legal action
4  against Bryant occurred with the advice of and in consultation with counsel, both
5  inside and outside.[39]

6        In addition to being denied on grounds that the scope of the Topic
7  exceeds the scope of the claims or defenses at issue, the Motion should be denied on
8  the grounds that the information responsive to this Topic is privileged.

9  **V.    MATTEL SHOULD NOT BE COMPELLED TO SUPPLEMENT ALL**
10        **ITS DISCOVERY RESPONSES AND DOCUMENT PRODUCTION**
11        **BASED ON OBJECTIONS TO EIGHT RULE 30(B)(6) DEPOSITION**
12        **TOPICS**

13        Although MGA's and Bryant's motion is focused on eight specific
14  topics in Bryant's Rule 30(b)(6) notice and Mattel's objections to those topics,
15  MGA and Bryant ask the Discovery Master to enter an order requiring Mattel to
16  overrule any relevancy objection and to supplement *all* of its discovery responses
17  and document productions to date.[40] MGA's and Bryant's request is improper and
18  should be denied.

19        MGA and Bryant claim that Mattel has made allegedly improper
20  relevance objections throughout its discovery responses. But Mattel's responses to
21  all discovery propounded on it throughout this litigation is not properly before the
22  Discovery Master on this Motion. As cast, the Motion is an affront to the Local
23  Rules and the practice of the Discovery Master.

24

25

26  [39]  Moore Dec. ¶ 6. Mattel's Supplemental Privilege Log, dated October 29, 2007, p. 1, Corey Dec., Exh. 15.
27  [40]  MGA/Bryant Notice of Motion (seeking an order "compelling Mattel to
28  supplement *all* of its discovery responses and document productions" (emphasis added)).

1    MGA and Bryant provide no basis upon which to seek an order
2    compelling further responses to discovery in general, rather than as to specific
3    discovery requests.  The Discovery Master has consistently rejected the parties'
4    efforts to address discovery issues not properly before the Discovery Master.[41]
5    MGA's and Bryant's request for an order compelling further responses to general
6    discovery requests not before the Discovery Master should also be rejected here.
7    Indeed, the Local Rules require that such motions be supported by a document
8    setting forth either the specific requests or the specific question, and any specific
9    objections, so that the Discovery Master will have both precision and context for
10   such rulings.  Central District Local Rule 37-2.1.

11    Although MGA and Bryant do identify a small number of specific
12   discovery requests as examples of discovery that they believe Mattel should be
13   ordered to supplement, MGA and Bryant do not seek an order compelling a
14   response as to those requests, nor have they met and conferred on those requests.[42]
15   Those requests are therefore not properly before the Discovery Master on the instant
16   motion.  Further, to the extent MGA's and Bryant's motion does seek to compel
17   Mattel to provide a further response to those few specific requests identified, it
18   should be denied because MGA and Bryant failed to meet and confer as required by
19   Local Rule 37-1 and the Stipulation for Appointment of the Discovery Master as to
20   those requests.  See Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.,
21   175 F.R.D. 646, 649-50 (C.D. Cal. 1997) (recognizing that failure to meet and
22   confer is proper basis not to hear motion); Mahach-Watkins v. Depee, 2007 WL
23   1394651, at *1 (N.D. Cal. 2007) ("failure to meet and confer is reason alone to deny
24   [] motion").

25

26   [41]   See, e.g., Transcript of June 19, 2007 Hearing, at pp. 17-18 (refusing to hear
     matters regarding depositions not before the Discovery Master), Corey Dec.,
27   Exh. 11; Transcript of May 4, 2007 Hearing, at pp. 12-13 (same), Corey Dec.,
     Exh. 12.
28   [42]   Corey Dec. ¶ 8.

1

## **Conclusion**

2          For the foregoing reasons, Mattel respectfully requests that the Court

3    deny MGA's and Carter Bryant's motion to compel.

4

5    DATED: December 18, 2007          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
6

7

8                                       By _____
                                            Jon D. Corey
9                                           Attorneys for Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28