# EXHIBIT 1

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

# EXHIBIT 2

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

**EXHIBIT 3**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

**EXHIBIT 4**



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware
Corporation,

                Plaintiff,

        v.

CARTER BRYANT, an individual; and
DOES 1 through 10, inclusive,

                Defendants.

CARTER BRYANT, on behalf of
himself, all present and former
employees of Mattel, Inc., and the
general public,

                Counter-Claimant,

        v.

MATTEL, INC., a Delaware
Corporation,

                Counter-Defendant.

CASE NO. CV 04-9059 NM (RNBx)

STIPULATED PROTECTIVE
ORDER; AND

[PROPOSED] ORDER

[Discovery Matter]

**EXHIBIT 4 PAGE 29**

1-4

2/625581.2

PROTECTIVE ORDER

## GOOD CAUSE STATEMENT

Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment, Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

In this Action, Mattel has alleged, and defendants dispute, that Bryant worked for and otherwise aided and assisted MGA while defendant was employed by Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

All parties believe that they will or may be required to produce or disclose in this Action, and that nonparties may produce or disclose, information that is trade secret, proprietary, confidential and/or is of a private or personal nature and that, if disclosed in this Action without restriction on its use or further disclosure, may cause disadvantage, harm, damage and loss to the disclosing Party or to the disclosing nonparty.

In addition, the Parties are currently in a competitive relationship in the toy industry, with Mattel and MGA operating as a manufacturers and marketers of dolls, toys and other products and Bryant working at this time as a contractor for a Mattel competitor, MGA, and further anticipate that nonparty competitor information may be produced or disclosed in this Action.

In particular, without prejudice to any Party's right to object to or resist disclosure of such categories of information on relevance or any other grounds, the Parties currently anticipate that categories of such trade secret, proprietary, confidential and/or private documents and other information that may be disclosed in discovery by the Parties and by nonparties will or may include:

(1)    Personnel files and other private or confidential employment, contractor or vendor information;

**EXHIBIT 4 PAGE 30**

PROTECTIVE ORDER

(2)   The specific terms of agreements with, and information received from, third parties that a Party is required to disclose only under conditions of confidentiality;

(3)   Personal or private financial information, and confidential financial data that is not known generally to the trade or to competitors, including financial data relating to specific sales, cost and profit information for specific products and product lines; and

(4)   Business plans and product information that are not known generally to the trade or to competitors, including non-public information relating to product development and design.

WHEREFORE, believing that good cause exists, the Parties HEREBY STIPULATE that, subject to the Court's approval, the following procedures shall be followed in this Action to facilitate the orderly and efficient discovery of relevant information while minimizing the potential for unauthorized disclosure or use of confidential or proprietary information:

## SCOPE OF THIS ORDER

1.   This Protective Order shall apply to trade secret, confidential and proprietary information, documents and things that are produced or disclosed in any form during the course of the Action by any Party or any nonparty:

(a)   through discovery;

(b)   in any pleading, document or other writing; or

(c)   in testimony given at a deposition.

(The foregoing information, documents and things shall be referred to hereinafter collectively as "Litigation Materials.")

**EXHIBIT 4 PAGE 31**

272/625581.2

-3-

PROTECTIVE ORDER

## CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION

2.   Any Party or nonparty producing or disclosing Litigation Materials in this Action may designate such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner set forth in paragraph 3 below.   The designation of Litigation Materials as "CONFIDENTIAL" shall be limited to information which the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature.   The designation of information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure.   Information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

## MANNER OF DESIGNATION OF MATERIALS

3.   A Party or nonparty may designate Litigation Materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the following manner:

(a)   *Documents or Things.*   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

PROTECTIVE ORDER

obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" on the particular document or thing.

(b)   Interrogatory Answers and Responses to Requests for Admissions. In answering any interrogatory or request for admission, or any part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" answers shall be made on separate pages from any other answers or portions thereof that are not designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

(c)   Deposition Testimony. Any Party or nonparty giving deposition testimony in this Action may obtain "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by designating, during the course of that testimony, for which "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired, the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," or alternatively by designating the entire testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," subject to a good faith obligation to identify any non-confidential portions of the testimony (and/or any lesser "CONFIDENTIAL" portions in the event that the entire testimony is designated "CONFIDENTIAL -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after receipt of the transcript of the testimony. The reporter shall separately transcribe and bind the testimony so designated as "CONFIDENTIAL" and "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face of the separate bound transcript containing such testimony with the term "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

A Party or nonparty also may make the above-referenced designation of confidentiality in writing and within fourteen (14) calendar days of the receipt by said Party or nonparty of the transcript of said testimony. In that event, said portion of the transcript will be treated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of this Protective Order, except that it will not be separately bound. If, during the course of deposition testimony, any Party or nonparty reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given.    Unless previously designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," all transcripts of deposition testimony and any related exhibits, and all information adduced in deposition, shall, in their entirety, be treated as "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of the transcript by counsel for the designating Party or nonparty. The Party or nonparty designating the testimony or information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen (14) calendar day period described above, specifically designate information contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously designated as such, by notifying all Parties in writing of the portions of the transcript or exhibit which contains such information. Each Party shall attach a copy of such written statement to the face page of the transcript or exhibit and to each copy in its or his possession, custody or control. Thereafter, these portions of the transcript or exhibits designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

272/625581.2         ——— **EXHIBIT 4 PAGE 34** ———    -6-

1   accordance with the terms of this Protective Order.  In addition, the provisions
2   of Paragraph 3(e) for later designating transcripts or exhibits shall apply after
3   the expiration of the fourteen (14) calendar day period described in this
4   Paragraph 3(c).

5            (d)    Typing or stamping the legend "CONFIDENTIAL" or
6   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a
7   collection of Litigation Materials which are bound together shall have the
8   effect of designating such collection in its entirety as "CONFIDENTIAL" or
9   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."  In the case of disks,
10  tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling,
11  stamping or marking the outside of such disk, tape, CD-ROM, DVD or other
12  medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL
13  -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire
14  contents of such disk, tape, CD-ROM, DVD or other medium or device, and
15  all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL --
16  ATTORNEYS' EYES ONLY," as the case may be.

17           (e)    Except as otherwise provided in Paragraph 3(c) of this
18  Protective Order, the receiving Party shall not reveal any information produced
19  for a period of seven (7) calendar days following receipt.  Failure to designate
20  a  document,  thing  or  other  information  as  CONFIDENTIAL"  or
21  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this
22  Protective Order shall not preclude any Party or nonparty desiring to so
23  designate the document, thing or information from so designating thereafter;
24  provided that the Party or nonparty proceeds promptly after discovery of any
25  omission of marking, in good faith marks the document, thing or other
26  information and requests, in writing, that each receiving Party so mark and
27  treat the document, thing or other information in accordance with this
28  Protective Order.  Thereafter, the document, thing or other information shall

be fully subject to this Protective Order.  No Party shall incur liability for any disclosures made prior to notice of such designation, except to the extent that any such disclosures occurred prior to the seven (7) day period described above or prior to such other time periods as are provided by this Protective Order, including without limitation such time periods as are provided in Paragraph 3(c) above.

## RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS

4.     Any Litigation Materials produced or disclosed in this Action, whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL — ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such information for purposes of litigation and not for any other purpose, including without limitation for any business or trade purpose.  As used herein, the term "litigation" shall mean preparation for, participation in and prosecution and defense of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in connection with any mediation or other alternative dispute resolution procedure that this or any other court may order or that the Parties may agree to.

5.     Subject to Paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be disclosed to any person other than:

(a)     the attorneys for the Parties and their partners, shareholders, associates, document clerks and paralegals who are necessary to assist such attorneys;

(b)     secretaries, stenographers and other office or clerical personnel employed by said attorneys and who are necessary to assist such attorneys;

(c)     a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)     such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)     professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)     non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

**EXHIBIT 4 PAGE 37**

6.      Subject to paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be disclosed to any person other than:

(a)     the attorneys for the Parties (but not including in-house counsel for the Parties or any attorney who is an officer, director, shareholder or employee of any Party or its corporate affiliates) and their partners, shareholders, associates, document clerks and paralegals who are assigned to and necessary to assist such attorneys. For the purposes of this subparagraph, "affiliate" shall mean any corporate parent or subsidiary of any Party, or any other entity that is under common control with any Party or corporate parent or subsidiary of any Party, or any of their successors or predecessors in interest;

(b)     secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to litigation;

(c)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(d)     such other persons as may be consented to by the Party designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(e)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(f)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for the purposes of litigation; and

**EXHIBIT 4 PAGE 38**

272/625581.2

-10-

PROTECTIVE ORDER

1    (g)   professional   court   reporters   engaged   to   transcribe
2  deposition  testimony,  professional  videographers  engaged  to  videotape
3  deposition testimony and translators.

4        7.    None of the following is bound by or obligated under this Order
5  in  any  respect  and  specifically  are  not  bound  or  obligated  to  treat  information
6  designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES
7  ONLY" in any particular manner: The Court hearing this Action (including the Court
8  having jurisdiction of any appeal), Court personnel, court reporters working for the
9  Court, translators working for the Court, or any jury impaneled in this Action.

10        8.    Other than those identified in Paragraph 7 above, each person to
11 whom  information  designated  as  "CONFIDENTIAL"  or  "CONFIDENTIAL --
12 ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this
13 Protective Order and agree to be bound by it before disclosure to such persons of any
14 such information.  The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall
15 not   have   access   to   either   "CONFIDENTIAL"   or   "CONFIDENTIAL --
16 ATTORNEYS' EYES ONLY" information, as the case may be, until they have
17 certified that they have read this Protective Order and have manifested their assent
18 to be bound thereby by signing a copy of the Assurance of Compliance attached
19 hereto as Exhibit A.  Once a person has executed such an Assurance of Compliance,
20 it shall not be necessary for that person to sign a separate Assurance of Compliance
21 each time that person is subsequently given access to confidential material.  Any
22 person who signed an Assurance of Compliance in connection with the Stipulation
23 for Protection of Confidential Information and Protective Order filed September 16,
24 2004 in Mattel Inc. v. Bryant, Case No. BC 314398, pending in Los Angeles County
25 Superior Court, need not re-sign the Assurance of Compliance attached hereto but
26 shall, by virtue of his or her prior signature, be deemed to have signed the attached
27 Assurance of Compliance.
28

**EXHIBIT 4 PAGE 39**

'272/625581.2

-11-

PROTECTIVE ORDER

9.     The failure of any Party to object to the designation of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be deemed an admission that such information qualifies for such designation.

10.     If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the Local Rules. Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11.     Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12.     The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.

**EXHIBIT 4 PAGE 40**

PROTECTIVE ORDER

13.     If a Party or nonparty through inadvertence produces or provides discovery that it, he or she believes is subject to a claim of attorney-client privilege or work product immunity, the producing Party or nonparty may give written notice to the receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the producing Party or nonparty.  The receiving Party shall promptly return to the producing Party or nonparty the inadvertently disclosed document and all copies of such document.  Return of the document by the receiving Party shall not constitute an admission or concession, or permit any inference, that the returned document is, in fact, properly subject to a claim of attorney-client privilege or work product immunity, nor shall it foreclose any Party from moving the Court for an Order that such document has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

14.     Nothing contained in this Protective Order shall affect the right of any Party or nonparty to make any objection, claim any privilege, or otherwise contest any request for production of documents, interrogatory, request for admission, or question at a deposition or to seek further relief or protective orders from the Court in accordance with the Federal Rules of Civil Procedure and the Local Rules. Nothing in this Protective Order shall constitute an admission or waiver of any claim or defense by any Party.

## FILING AND USE IN COURT OF DESIGNATED MATERIALS

15.     Except when the filing under seal is otherwise authorized by statute or federal rule, the Parties shall seek the Court's prior approval for the filing under seal of pleadings and other documents containing properly designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information in accordance with the procedures set forth in Local Rule 79-5.1, as such

1   Rule may be amended from time to time. Prior to the time that a Party receiving the

2   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"

3   information from any other Party files with the Court an application and the other

4   materials required by Local Rule 79-5.1, as such Rule may be amended from time to

5   time, to seal the producing Party's confidential information, the receiving Party shall

6   consult with the producing Party's attorney to determine whether the producing Party

7   will re-designate the previously designated confidential information so as to avoid the

8   need for the request to file such information under the seal. Upon the default of a

9   Party to seek the Court's approval to file a document containing "CONFIDENTIAL"

10   or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any

11   Party may subsequently seek the approval of the Court to file that document under

12   seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule

13   may be amended from time to time.

14

15   <u>THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS</u>

16

17        16.   If any Party or nonparty receives a subpoena or document request

18   from a third party which purports to require the production of materials in that Party's

19   possession which have previously been designated as "CONFIDENTIAL" or

20   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,

21   the Party or nonparty receiving such subpoena or document request (a) shall object

22   and refuse to produce documents absent a Court Order or the consent of the Party or

23   nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL

24   -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who

25   designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --

26   ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,

27   and (c) shall not oppose any effort by the Party or nonparty which designated the

28   material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

1 ONLY" to quash the subpoena or obtain a protective order limiting discovery of such
2 material.

3

## DISCOVERY FROM NONPARTIES

5

6      17.   Discovery of nonparties may involve receipt of information,
7 documents, things or testimony which include or contain "CONFIDENTIAL" or
8 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information.  A
9 nonparty producing such material in this case may designate as "CONFIDENTIAL"
10 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it
11 produces in the same manner provided for in this Protective Order with respect to
12 material furnished by or on behalf of the Parties.  Any Party may also designate as
13 "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any
14 materials or information produced by a nonparty that constitute "CONFIDENTIAL"
15 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating
16 Party under Paragraph 2 of this Protective Order, regardless of whether the producing
17 nonparty has also so designated.  In addition, a nonparty may also designate as
18 "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any
19 materials or information produced by a Party that constitute "CONFIDENTIAL" or
20 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such
21 nonparty under Paragraph 2 of this Protective Order, regardless of whether the
22 producing Party has also so designated.  In either such an event, the designation
23 providing for the greater level of protection for the material information shall control,
24 subject to Paragraph 10 of this Protective Order.  Nonparty materials designated
25 "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a
26 nonparty or Party shall be governed by the terms of this Protective Order.

27

28                 **EXHIBIT 4 PAGE 43**

272/625581.2

-15-

## CONCLUSION OF LITIGATION

18.    Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession. In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties. Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order. This Protective Order shall continue to be binding after the conclusion of this Action.

## AMENDMENT OF THIS AGREEMENT

19.    The provisions of this Stipulation and Protective Order may be modified at any time by stipulation of the Parties as approved by Order of the Court. In addition, a Party may at any time apply to the Court for modification of this

**EXHIBIT 4 PAGE 44**

1 | Stipulation and Protective Order pursuant to a motion brought in accordance with the
2 | rules of the Court.

3

4 |         **IT IS SO STIPULATED.**

5

6 | DATED: December 22, 2004          QUINN EMANUEL URQUHART
7 |                                   OLIVER & HEDGES, LLP

8

9 |                                   By _Jon Corey_____
                                        Jon Corey
10 |                                   Attorneys for Plaintiff
                                       Mattel, Inc.

11

12 | DATED: December ___, 2004         LITTLER MENDELSON

13

14 |                                   By _____
                                        Douglas A. Wickham
                                        Attorneys for Defendant
15 |                                   Carter Bryant

16 | DATED: December ___, 2004         O'MELVENY & MEYERS, LLP

17

18 |                                   By _____
                                        Diana M. Torres
19 |                                   Attorneys for Interventor-Defendant
                                       MGA Entertainment, Inc.

20

21

22 |         **IT IS SO ORDERED.**

23

24 | DATED: _1/4/05_____             ROBERT N. BLOCK
                                      THE HONORABLE ROBERT N. BLOCK
25 |                                   United States Magistrate Judge

26

27

28 |              **EXHIBIT 4 PAGE 45**

172/625581.2                        -17-

PROTECTIVE ORDER



1    Stipulation and Protective Order pursuant to a motion brought in accordance with the

2    rules of the Court.

3

4        IT IS SO STIPULATED.

5

6    DATED: December ___, 2004        QUINN EMANUEL URQUHART

7                                     OLIVER & HEDGES, LLP

8

9                                     By _____
                                         Jon Corey
10                                       Attorneys for Plaintiff
                                         Mattel, Inc.
11

12   DATED: December 21, 2004         LITTLER MENDELSON

13                                    By _____

14                                       Douglas A. Wickham
                                         Attorneys for Defendant
15                                       Carter Bryant

16   DATED: December ___, 2004        O'MELVENY & MEYERS, LLP

17

18                                    By _____
                                         Diana M. Torres
19                                       Attorneys for Intervenor-Defendant
                                         MGA Entertainment, Inc.
20

21

22       IT IS SO ORDERED.

23

24   DATED: _____

25                                    THE HONORABLE ROBERT N. BLOCK
                                      United States Magistrate Judge

26

27

28

07272/625581.2                        -17-

**EXHIBIT 4 PAGE 46**

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

3

4      **IT IS SO STIPULATED.**

5

6  DATED: December ___, 2004        QUINN EMANUEL URQUHART

7                                   OLIVER & HEDGES, LLP

8

9                                   By

                                     Jon Corey
10                                   Attorneys for Plaintiff
                                     Mattel, Inc.
11

12 DATED: December ___, 2004        LITTLER MENDELSON

13

14                                  By
                                     Douglas A. Wickham
                                     Attorneys for Defendant
15                                   Carter Bryant

16 DATED: December ___, 2004        O'MELVENY & MEYERS, LLP

17

18                                  By
                                     Diana M. Torres
19                                   Attorneys for Intervenor-Defendant
                                     MGA Entertainment, Inc.
20

21

22     **IT IS SO ORDERED.**

23

24 DATED: _____

25                                   THE HONORABLE ROBERT N. BLOCK
                                     United States Magistrate Judge
26

27

28

07272/625581.2                       -17-

                                                        PROTECTIVE ORDER

**EXHIBIT 4 PAGE 47**

# EXHIBIT A

## ASSURANCE OF COMPLIANCE

I, _____, under penalty of perjury under the laws of the United States of America, declare and state as follows:

I reside at _____, in the City/County of _____ and State/Country of _____;

I have read the annexed Stipulated Protective Order, ("Protective Order") dated _____ in the action entitled *Mattel, Inc. v. Carter Bryant,* Case No. CV 04-9059 NM (RNBx), which currently is pending in the United States District Court for the Central District of California; that I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order;

I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use any Litigation Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" except solely as permitted by the Protective Order; and

I consent to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing said Protective Order, enjoining any violation or threatened violation of the Protective Order or seeking damages for the breach of said Protective Order.

_____
(Signature)

**EXHIBIT 4 PAGE 48**

272/625581.2

PROTECTIVE ORDER

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES }

    I am employed in the county of Los Angeles  State of California.  I am over the age of 18 and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

    On December 22, 2004, I served the foregoing document described as

**STIPULATED PROTECTIVE ORDER; AND [PROPOSED] ORDER**

on  all interested parties in this action:

**SEE ATTACHED SERVICE LIST**

[ ]    By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]    **BY MAIL**

[ ]    I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[ ]    As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]    **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on December 22, 2004, at Los Angeles, California.

[X]    (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Ivana Maiorano
Print Name

_____
Signature

**EXHIBIT 4 PAGE 49**

1  Robert F. Millman, Esq.
   Douglas A. Wickham, Esq.
2  Keith A. Jacoby, Esq.
   Littler Mendelson
3  A Professional Corporation
   2049 Century Park East, 5th Floor
4  Los Angeles, California 90067-3107
   Phone: 310-553-0308
5  Fax: 310-553-5583

6  Diana M. Torres, Esq.
   O'Melveney & Meyers
7  400 S. Hope Street
   Los Angeles, CA 90071
8  Phone: 213-430-6000
   Fax: 213-430-6407
9

10 Daniel J. Warren, Esq.
   Sutherland, Asbill & Brennan
11 999 Peachtree Street NE
   Atlanta, GA  30309-3996
12 Phone: 404-853-8698
   Fax: 404-853-8806

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 4 PAGE 50

-2-

CONFORMED COPY

2007 MAY 16 PM 2:00

FILED

1   [Counsel listed on following page]

2

3

4

5

6

7

8           UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10   CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

11                   Plaintiff,           Consolidated with
                                          Case No. CV 04-09059
12          v.                            Case No. CV 05-02727

13   MATTEL, INC., a Delaware
     corporation,                         **DISCOVERY MATTER**
14
                     Defendant.           Hon. Edward A. Infante (Ret.)
15
                                          Discovery Master
16

17                                        **STIPULATION TO MODIFY
18                                        PROTECTIVE ORDER; AND**

19                                        [PROPOSED] ORDER THEREON

20                                        Discovery Cut-Off: October 22, 2007
21                                        Pre-Trial Conference: January 14, 2008
                                          Trial Date:  February 12, 2008
22

23

24

25

26

27

28

                                          Case No. CV 04-09049 SGL (RNBx)
                              STIPULATION AND ORDER RE PROTECTIVE ORDER

**EXHIBIT 4 PAGE 51**          05|16|c 7

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 |   John B. Quinn (Bar No. 090378)
    |   (johnquinn@quinnemanuel.com)
    |   Michael T. Zeller (Bar No. 196417)
3 |   (michaelzeller@quinnemanuel.com)
    |   Jon D. Corey (Bar No. 185066)
4 |   (joncorey@quinnemanuel.com)
    | 865 South Figueroa Street, 10th Floor
5 | Los Angeles, California  90017-2543
    | Telephone:  (213) 443-3000
6 | Facsimile:  (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | LITTLER MENDELSON
    |   Robert F. Millman (Bar No. 062152)
9 |   Douglas A. Wickham (Bar No. 127268)
    |   Keith A. Jacoby (Bar No. 150233)
10 | 2049 Century Park East, 5th Floor
    | Los Angeles, California  90067-3107
11 | Telephone:  (310) 553-0308
    | Facsimile:  (310) 553-5583
12 |

13 | Attorneys for Carter Bryant

14 | O'MELVENY & MYERS LLP
    |   Diana M. Torres (Bar No. 162284)
15 | 400 S. Hope Street
    | Los Angeles, California  90017
16 | Telephone:  (213) 430-6000
    | Facsimile:  (213) 430-6407

17 | O'MELVENY & MYERS LLP
    |   Dale Cendali
18 | Times Square Tower
    | 7 Times Square
19 | New York, NY 10036

20 | CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
    |   Patricia Glaser (Bar No. 55668)
21 | 10250 Constellation Boulevard - 19th Floor
    | Los Angeles, CA 90067
22 | Telephone: (310) 553-3000
    | Facsimile: (310) 556-2920
23 |

24 | Attorneys for MGA Entertainment, Inc.

25 |

26 |

27 |

28 |

- 2 -

STIPULATION AND ORDER RE PROTECTIVE ORDER

**EXHIBIT 4 PAGE 52**

1   WHEREAS, on January 24, 2007, Discovery Master Infante heard
2   Mattel, Inc.'s ("Mattel") Motion to Compel Carter Bryant ("Bryant") to Produce
3   Documents ("Motion to Compel");

4   WHEREAS, on January 25, 2007, Discovery Master Infante issued an
5   Order granting Mattel's Motion to Compel (the "Order");

6   WHEREAS, on March 19, 2007, Discovery Master Infante heard
7   Bryant's and MGA Entertainment, Inc.'s ("MGA") Motion for Clarification,
8   Reconsideration and/or Further Protection of the Discovery Master's January 25,
9   2007 Order or for Protective Order Pursuant to Rule 26(c) (the "Motion");

10   WHEREAS, Discovery Master Infante denied the Motion to the extent
11   it sought clarification of the Order and stated that design drawings of currently
12   unreleased products are relevant to the parties' claims and defenses; and

13   WHEREAS, Discovery Master Infante granted the Motion to the extent
14   it sought further protection pursuant to Rule 26 and paragraph 19 of the Protective
15   Order entered by the Court as of January 4, 2005 (the "Protective Order") so as to
16   afford further restrictions on the handling of Subject Documents (defined below) for
17   purposes of providing additional protection for their confidentiality and directed the
18   parties to provide specifics for such modification.

19   NOW, THEREFORE, Mattel, Bryant and MGA, by and through their
20   respective counsel of record, hereby stipulate and agree as follows:

21   1.   As used herein, "Subject Documents" means documents (defined
22   to include both tangible items and electronic data) created after January 1, 2006 that
23   pertain to products which are currently unreleased and scheduled for public release
24   in 2007 or 2008 and that constitute highly sensitive trade secrets of the producing
25   Party.  The parties are presently negotiating and may enter an additional stipulation
26   concerning a subset of Subject Documents that pertain to products which are
27   currently unreleased and scheduled for public release in 2008 and that constitute
28   highly sensitive trade secrets of the producing Party (the "2008 Subject

-3-

STIPULATION AND ORDER RE PROTECTIVE ORDER

**EXHIBIT 4 PAGE 53**

1   Documents"). In the event the parties do not reach a stipulation with respect to the
2   2008 Subject Documents, MGA and/or Bryant are not, by entering into this
3   stipulation, waiving any rights to seek review by Judge Larson of the aspects of the
4   Order or Ruling on the Motion that pertain to the 2008 Subject Documents. Until
5   such time that the parties execute a stipulation with respect to the 2008 Subject
6   Documents and in the event that neither MGA nor Bryant seek the afore-mentioned
7   review by Judge Larson, the 2008 Subject Documents shall be treated in the manner
8   set forth herein for the Subject Documents, provided that such 2008 Subject
9   Documents meet the definition for "Subject Documents" set forth above.

10      2.   A Party may withhold from production to other Parties Subject
11   Documents until June 29, 2007.

12      3.   Upon production (whether before, on or after June 29, 2007), a
13   producing Party may designate Subject Documents as "HIGHLY CONFIDENTIAL
14   – RESTRICTED ATTORNEYS' EYES ONLY."

15      (a)   Subject Documents designated as "HIGHLY CONFIDENTIAL
16   – RESTRICTED ATTORNEYS' EYES ONLY" shall be so designated in the
17   manner set forth in paragraph 3 of the Protective Order.

18      (b)   Documents designated as "HIGHLY CONFIDENTIAL –
19   RESTRICTED ATTORNEYS' EYES ONLY" shall not be disclosed in any way to,
20   nor their contents summarized or discussed in substance with, any person other than:
21   (i) up to three attorneys at the receiving Party's outside law firm; (ii) such
22   independent, outside expert(s) for the receiving Party who outside counsel deems
23   necessary to show such documents for purposes of providing expert opinion or
24   expert testimony; (iii) one assistant or paralegal for each Party (for the purposes of
25   photocopying and maintaining files as set forth in subparagraph (d) below); (iv) the
26   Court, including the Discovery Master, and other personnel identified in paragraphs
27   6(g) and 7 of the Protective Order; (v) the authors, senders, addressees and
28   designated copy recipients of any document designated "HIGHLY

- 4 -

STIPULATION AND ORDER RE PROTECTIVE ORDER

**EXHIBIT 4 PAGE 54**

1  CONFIDENTIAL – RESTRICTED ATTORNEYS' EYES ONLY"; and (vi) such
2  other persons as may be consented to in writing or on the record by the Party
3  designating such documents "HIGHLY CONFIDENTIAL – RESTRICTED
4  ATTORNEYS' EYES ONLY."

5          (c)    The Experts described in subsection (ii) of paragraph 3(b) above
6  shall not have access to "HIGHLY CONFIDENTIAL – RESTRICTED
7  ATTORNEYS' EYES ONLY" documents until he/she has certified that he/she has
8  read the Protective Order and this Stipulation and Order and has manifested his/her
9  assent to be bound by signing the Assurance of Compliance attached to the
10  Protective Order as Exhibit A; any such expert who has previously signed an
11  Assurance of Compliance must be shown this Stipulation and Order and sign an
12  Assurance of Compliance that encompasses this Stipulation and Order.

13          (d)    Documents designated as "HIGHLY CONFIDENTIAL –
14  RESTRICTED ATTORNEYS' EYES ONLY" shall not be copied except to create
15  one archival file copy, one working copy for the designated attorneys and/or any
16  designated expert, or for use as exhibits at deposition or trial or in filings with the
17  Court, including the Discovery Master. In the event and to the extent that copies are
18  provided to counsel in attendance at a deposition where documents designated as
19  "HIGHLY CONFIDENTIAL – RESTRICTED ATTORNEYS' EYES ONLY" are
20  shown or marked at deposition, the Party who so designated the documents may
21  require that any such additional copies be returned to the designating Party's counsel
22  or destroyed.   Any document designated as "HIGHLY CONFIDENTIAL –
23  RESTRICTED ATTORNEYS' EYES ONLY" that is marked as a deposition exhibit
24  shall not be bound with the exhibits to the deposition transcript but shall be
25  separately maintained by the deposing party.  The parties shall work together to
26  agree upon a proposed procedure for handling such documents at trial if necessary.

27          (e)    Each receiving Party's original copy set and all copies of Subject
28  Documents, including any copies for use as exhibits or in motion practice, shall be

- 5 -

STIPULATION AND ORDER RE PROTECTIVE ORDER

**EXHIBIT 4 PAGE 55**

1  maintained in a secure, locked file at all times when not physically being used by the
2  receiving party's counsel or expert.

3        4.      The producing Party shall re-designate or de-designate Subject
4  Documents relating to a product within fourteen (14) days of the following events,
5  whichever occurs earlier: (a) the product is first shipped, or (b) the product is first
6  disclosed to a third party without an express confidentiality agreement. Any Subject
7  Documents initially designated "HIGHLY CONFIDENTIAL – RESTRICTED
8  ATTORNEYS' EYES ONLY" may be re-designated a lesser degree of
9  confidentiality under the Protective Order, such as "CONFIDENTIAL" or
10  "CONFIDENTIAL – ATTORNEYS' EYES ONLY," as appropriate under the
11  Protective Order. Such re-designated or de-designated documents shall thereafter be
12  handled and treated in accordance with the terms of the Protective Order for
13  "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY"
14  material, whichever the case may be.

15        5.      The Protective Order is hereby amended to add the phrase
16  "HIGHLY CONFIDENTIAL – RESTRICTED ATTORNEYS' EYES ONLY" to
17  paragraphs 2, 3, 4, 7, 8, 9, 10, 12, 15, 16, 17 and 18 of the Protective Order.

18        6.      Except as modified herein, all other provisions of the Protective
19  Order shall remain in full force and effect and are incorporated herein by reference.
20  Without limiting the generality of the foregoing, documents produced as "HIGHLY

21

22

23

24

25

26

27

28

STIPULATION AND ORDER RE PROTECTIVE ORDER

**EXHIBIT 4 PAGE 56**

1    CONFIDENTIAL – RESTRICTED ATTORNEYS' EYES ONLY" shall be subject
2    to the provisions of paragraphs 13 and 14 of the Protective Order.
3
4        SO STIPULATED.
5    Dated: April 23, 2007
6                                                DOUGLAS A. WICKHAM
7                                                LITTLER MENDELSON
8                                                A Professional Corporation
                                                 Attorneys for CARTER BRYANT
9    Dated: April 12, 2007
10                                               DIANA M. TORRES
11                                               O'MELVENY & MYERS LLP
                                                 Attorneys for MGA
12                                               ENTERTAINMENT, INC.
13   Dated: April 23, 2007
14                                               MICHAEL ZELLER
15                                               QUINN EMANUEL URQUHART
                                                 OLIVER & HEDGES, LLP
16                                               Attorneys for MATTEL, INC.
17
18       IT IS SO ORDERED.
19
20   DATED: May 15, 2007   By
21                                               Hon. Edward Infante (Retired)
                                                 Discovery Master
22
23
24
25
26
27
28

                            - 7 -        STIPULATION AND ORDER RE PROTECTIVE ORDER

**EXHIBIT 4 PAGE 57**

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached STIPULATION TO MODIFY PROTECTIVE ORDER; AND ORDER THEREON in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq, | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaye B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

**EXHIBIT 4 PAGE 58**

**EXHIBIT 5**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MATTEL, INC., A DELAWARE CORPORATION, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | NO. CV-04 9059 (NM) |
| | ) | |
| CARTER BRYANT, AN INDIVIDUAL; AND DOES 1 THROUGH 10, INCLUSIVE, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |
| | ) | |
| CARTER BRYANT, ON BEHALF OF HIMSELF, ALL PRESENT AND FORMER, EMPLOYEES OF MATTEL, INC., AND THE GENERAL PUBLIC, | ) | |
| | ) | |
| COUNTER-COMPLAINANT, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| MATTEL, INC., A DELAWARE CORPORATION, | ) | |
| | ) | |
| COUNTER-DEFENDANT. | ) | |
| _____ | ) | |

VOLUME II

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TUESDAY, MARCH 15, 2005

LOS ANGELES, CALIFORNIA

REPORTED BY:

JOHN M. TAXTER
C.S.R. NO. 3579, R.P.R.

JOB NUMBER:
41191LMF

**LUDWIG KLEIN**
REPORTERS & VIDEO, INC.
10868 KLING STREET
TOLUCA LAKE, CALIFORNIA 91602
800.540.0681     Fax 818.508.6326
e-mail: lois@ludwigklein.com

**EXHIBIT 5 PAGE 59**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3

4    MATTEL, INC., A DELAWARE          )
     CORPORATION,                      )
5                                      )
                PLAINTIFF,             )
6                                      )
          VS.                          )  NO. CV-04 9059 (NM)
7                                      )
     CARTER BRYANT, AN INDIVIDUAL; AND )
8    DOES 1 THROUGH 10, INCLUSIVE,     )
                                       )
9               DEFENDANTS.            )
     _____)
10                                     )
     CARTER BRYANT, ON BEHALF OF       )
11   HIMSELF, ALL PRESENT AND FORMER,  )
     EMPLOYEES OF MATTEL, INC., AND THE)
12   GENERAL PUBLIC,                   )
                                       )
13              COUNTER-COMPLAINANT,   )
                                       )
14        VS.                          )
                                       )
15   MATTEL, INC., A DELAWARE          )
     CORPORATION,                      )
16                                     )
                COUNTER-DEFENDANT.     )
17   _____)

18

19            REPORTER'S TRANSCRIPT OF PROCEEDINGS, VOLUME

20      II, TAKEN AT 9:36 A.M., ON TUESDAY, MARCH 15, 2005,

21      AT 2049 CENTURY PARK EAST, FIFTH FLOOR, LOS

22      ANGELES, CALIFORNIA, BEFORE JOHN M. TAXTER,

23      C.S.R. NO. 3579, R.P.R., A CERTIFIED SHORTHAND

24      REPORTER IN AND FOR THE STATE OF CALIFORNIA.

25

139

VOLUME II

EXHIBIT 5 PAGE 60

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    APPEARANCES:

2        FOR PLAINTIFF AND COUNTER-DEFENDANT MATTEL, INC.:

3            QUINN EMANUEL URQUHART OLIVER & HEDGES,
                 L.L.P.
4            BY:  MICHAEL ZELLER
                 ATTORNEY AT LAW
5            865 SOUTH FIGUEROA STREET
             TENTH FLOOR
6            LOS ANGELES, CALIFORNIA  90017
             213.443.3180
7

8

         FOR DEFENDANT CARTER BRYANT:
9
             LITTLER MENDELSON
10           BY:  DOUGLAS WICKHAM
                  ATTORNEY AT LAW
11                   -AND-
                  KEITH JACOBY
12                ATTORNEY AT LAW
             2049 CENTURY PARK EAST
13           FIFTH FLOOR
             LOS ANGELES, CALIFORNIA  90067-2709
14           310.553.0308

15

16       FOR INTERVENOR M.G.A. ENTERTAINMENT, INC.:

17           O'MELVENY & MYERS, L.L.P.
             BY:  ALICIA CARRASQUILLO MEYER
18                ATTORNEY AT LAW
                     -AND-
19                PAULA AMBROSINI
                  ATTORNEY AT LAW
20           400 SOUTH HOPE STREET
             LOS ANGELES, CALIFORNIA  90071-2899
21           213.430.6000

22

23

24

25

                                                    140

                    VOLUME II

EXHIBIT 5 PAGE 61

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   PROVISIONS OF THE CONTRACT DOES MATTEL BELIEVE WERE

2   BREACHED, AND WHAT'S YOUR BASIS -- WHAT IS THE FACTUAL

3   BASIS FOR THAT BELIEF?"

4            "WELL, WE ALLEGE THAT HE BREACHED SUBSECTION 4

5   OF THE INVENTIONS AND ASSIGNMENT AGREEMENT."

6            "WHY DO YOU BELIEVE THAT?"

7            "WELL, BECAUSE HE WAS USING OUR FAX MACHINE

8   AND HE SHOULDN'T HAVE BEEN USING IT TO WORK WITH M.G.A."

9   I MEAN THAT'S HOW YOU DO THIS.  I CAN'T GET INSIDE

10  MATTEL'S HEAD AND GUESS WHAT THEY THINK BRYANT DID

11  WRONG.  SOMEBODY HAS TO TELL ME, "THIS IS WHAT WE THINK

12  BRYANT DID WRONG."

13           MR. WICKHAM:  AND WHAT WE DID DO IS TO SERVE

14  CONTENTION INTERROGATORIES.  WE DID ASK IN INTERROGATORY

15  NO. 3 FOR MATTEL TO STATE ALL FACTS EVIDENCING ITS

16  CONTENTION THAT BRYANT IS IN A FIDUCIARY RELATIONSHIP

17  WITH MATTEL.  MATTEL RESPONDED WITH ITS VERIFIED

18  INTERROGATORY RESPONSES, AND WE SEEK TO DEPOSE A

19  30(B)(6) WITNESS WITH REGARD TO THE FACTS THAT ARE LAID

20  OUT IN MATTEL'S INTERROGATORY RESPONSES WHICH GO TO WHAT

21  DUTIES THAT MATTEL BELIEVES THAT BRYANT OWED TO THEM.

22           SO I THINK THAT, AGAIN, THERE IS SOME CHANCE

23  THAT WE CAN RESOLVE THIS, IF WE CAN AGREE THAT, AS TO

24  THE FACTUAL BASIS FOR THE PARTICULAR TOPICS THAT WE'RE

25  TALKING ABOUT, THAT SHOULD BE FAIR GAME.  AND, AS TO ANY

168

VOLUME II

**EXHIBIT 5 PAGE 62**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    OTHER MATTERS, I MEAN, I DON'T WANT TO -- YOU WANT TO

2    RESERVE YOUR OBJECTIONS, BUT I DON'T WANT TO

3    CHARACTERIZE THAT.  BUT THIS IS A DISCOVERABLE TOPIC.

4              MR. JACOBY:   I MEAN I AGREE THAT I ANTICIPATE

5    FULLY THAT THERE WILL BE DISAGREEMENTS ABOUT ANY GIVEN

6    QUESTION ABOUT WHETHER IT CALLS FOR A PURE LEGAL

7    CONCLUSION OR WHETHER IT CALLS FOR THE ACTUAL

8    UNDERPINNING OF A LEGAL CONTENTION.  THERE'S NO WAY I

9    COULD GUARANTEE, NOR COULD YOU, THAT I WON'T COME UP

10   WITH SOME QUESTION THAT YOU WOULD OBJECT TO ON THAT

11   BASIS, NOR COULD I GUARANTEE OR ALICIA GUARANTEE THAT

12   MATTEL WON'T COME UP WITH SOME OBJECTION OR THAT THEY

13   WON'T COME UP WITH SOME OBJECTION WHEN MATTEL ASKS THE

14   SAME KIND OF QUESTIONS TO BRYANT OR M.G.A.  BUT I THINK

15   THAT THERE'S AGREEMENT HERE THAT, IN TERMS OF FACTUAL

16   UNDERPINNINGS, THAT IS FAIR GAME FOR DISCOVERY.

17             WHAT I WOULD PROPOSE IS THAT WE AGREE, WITH

18   RESPECT TO NO. 2, THAT YOU WILL PRODUCE A WITNESS ON THE

19   FACTUAL UNDERPINNINGS OF THE DUTIES THAT BRYANT OWED TO

20   MATTEL DURING HIS EMPLOYMENT AND THAT WE WILL MEET AND

21   CONFER AFTER THAT SECTION OF THE DEPOSITION CONCLUDES ON

22   ANY AREAS WHERE YOU BELIEVE WE WERE ASKING FOR SOMETHING

23   MORE THAN THAT BECAUSE I AGREE WITH YOU IN PRINCIPLE

24   THAT WE'RE ENTITLED TO FACTS, NOT LEGAL CONCLUSIONS.

25             MR. ZELLER:   RIGHT.  AND JUST SO IT'S CLEAR,

169

VOLUME II

**EXHIBIT 5 PAGE 63**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    THOUGH, WE APPEAR TO HAVE A FAIR AMOUNT OF COMMON GROUND

2    HERE, BUT THE ONE THING I JUST WANT TO MAKE VERY CLEAR

3    IS THAT WHEN -- IF YOU'RE GOING TO BE ASKING WITNESSES

4    LIKE, "DOES MATTEL ALLEGE," "DOES MATTEL CONTEND," THOSE

5    SORT OF QUESTIONS I DON'T THINK ARE APPROPRIATELY

6    DIRECTED TO A 30(B)(6) WITNESS.  I THINK THAT THERE IS

7    PRETTY DECENT AUTHORITY FOR THE PROPOSITION THAT ASKING

8    OR -- ASKING FOR THE DESIGNATION OF A CORPORATE

9    REPRESENTATIVE TO SAY, "WELL, OUR ALLEGATIONS IN THE

10   CASE OR OUR CONTENTIONS IN THE CASE ARE 'X,' 'Y,' AND

11   'Z,'" ISN'T A PROPER STARTING POINT FOR WITNESS

12   TESTIMONY.  AND THAT'S WHERE I THINK WE HAVE, YOU KNOW,

13   AT LEAST ONE -- PROBABLY THE ONLY THING IT APPEARS THAT

14   WE REALLY NEED TO SORT OUT ON THAT, OR, "DOES MATTEL

15   ALLEGE"; THOSE KIND OF QUESTIONS THAT YOU WERE GIVING

16   EXAMPLES OF.

17.          MR. WICKHAM:  WELL, I THINK THAT THOSE ARE

18   THINGS THAT ARE THE SUBJECT OF THE INTERROGATORIES THAT

19   WE HAD SERVED AND THAT WE'VE GOT SOME ISSUES WITH THAT.

20   IN PRINCIPLE, I AGREE WITH YOU.

21          ON THE OTHER HAND, A CORPORATION, LIKE AN

22   INDIVIDUAL, HAS TO HAVE A GOOD-FAITH BASIS GROUNDED IN

23   FACTS AND LAW FOR ASSERTING ITS COMPLAINT.  A

24   CORPORATION IS SUBJECT TO NUMEROUS OBLIGATIONS.

25          MR. ZELLER:  ALL I'M ACTUALLY SAYING IS THAT

                                                        170

VOLUME II

**EXHIBIT 5 PAGE 64**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   CONTENTIONS IN MATTEL'S COMPLAINT, IT DOESN'T MEAN THAT

2   THEY'RE NOT PROPER FACTUAL INQUIRIES OF A 30(B)(6)

3   DEPOSITION WITNESS.

4          MR. ZELLER:   WELL, I MEAN, WITHOUT COMMENTING

5   ON THE PARTICULAR EXAMPLES THAT YOU'RE GIVING OF THE

6   TYPES OF QUESTIONS, MY PARTICULAR CONCERN JUST GOES TO,

7   YOU KNOW, AT THIS JUNCTURE, IN TRYING TO COME UP WITH A

8   FRAMEWORK FOR DEALING WITH THESE VARIOUS ISSUES -- IS

9   THAT, YOU KNOW, WE REACH RESOLUTION -- AND I BELIEVE

10  THAT WE HAVE -- THAT IT'S NOT YOUR EXPECTATION THAT

11  WITNESSES ARE GOING TO BE PRODUCED THAT ARE GOING TO SAY

12  IN RESPONSE TO QUESTIONS, "DOES MATTEL ALLEGE 'X'?  DOES

13  MATTEL ALLEGE 'Y'?" AND THAT THESE WITNESSES --

14         MR. JACOBY:   THAT'S NOT MY ENVISIONING OF HOW

15  WE'RE DOING TO DO THIS.  I THINK THE WAY I ENVISION THAT

16  WE'RE GOING TO DO THIS IS THAT WE'RE GOING TO ASK IN

17  INTERROGATORIES, "WHAT DO YOU CONTEND BRYANT CONVERTED?"

18         AND SO LET'S SAY THE ANSWER TO THE QUESTION

19  WAS, "THE MASTER BRATZ DRAWINGS."

20         AND THEN WE GO TO THE 30(B)(6) DEPOSITION AND

21  SAY, "WHY DO YOU BELIEVE MR. BRYANT CONVERTED THE MASTER

22  BRATZ DRAWINGS?"

23         "WELL, MATTEL BELIEVES THAT BECAUSE MATTEL

24  BELIEVES THAT THEY WERE DRAWN WHILE HE WORKED AT

25  MATTEL."

174

VOLUME II

**EXHIBIT 5 PAGE 65**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   "WHY DO YOU BELIEVE THAT?"

2   "WELL, BECAUSE WE SAW SOMEONE DRAWING THEM

3   WHILE HE WAS AT MATTEL."  I MEAN THAT'S PROPER QUESTIONS

4   AND ANSWERS IN A 30(B)(6) DEPOSITION.  IT'S NOT TRUE,

5   BUT THAT WOULD BE PROPER.  THE CONTENTION, APPLYING

6   FACTS TO LAW, MATTEL IS OBLIGATED TO DO IN INTERROGATORY

7   RESPONSES WITH THE ASSISTANCE OF COUNSEL.  ASCERTAINING

8   THE FACTUAL BASIS THAT UNDERPINS THAT CONTENTION, WHAT

9   HE CONVERTED, IN MY VIEW, THAT'S THE PROPER BASIS OF A

10  30(B)(6) DEPOSITION.

11  NOW, THEORETICALLY YOU COULD GIVE THOSE SAME

12  FACTS IN AN INTERROGATORY RESPONSE.  "WE BELIEVE BRYANT

13  CONVERTED THE MASTER BRATZ DRAWINGS BECAUSE WE SAW HIM

14  DOING THEM ON SEPTEMBER 20TH, 2000."  THAT COULD BE PART

15  OF AN INTERROGATORY RESPONSE.  BUT THE PURPOSE OF A

16  30(B)(6) DEPOSITION IS TO EXPLORE THOSE FACTS.

17  WHO SAW HIM DRAWING IT?  WHERE DID YOU SEE IT?

18  WHEN DID THAT HAPPEN?  WHO DID YOU TELL?

19  I MEAN THAT'S -- THOSE ARE ALL FACTS.  THEY

20  DON'T CALL FOR LEGAL CONCLUSIONS, AND I THINK THAT'S

21  WITHIN THE SCOPE OF AT LEAST, YOU KNOW, FIVE OR TEN OF

22  THESE CATEGORIES.

23  SO CAN WE AGREE, THEN, THAT THE FRAMEWORK FOR

24  THESE RESPONSES TO -- AND WE CAN SEE IF WE CAN APPLY

25  THIS TO OTHERS -- IS THAT MATTEL WILL REVISIT ITS

175

VOLUME II

**EXHIBIT 5 PAGE 66**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    INTERROGATORY RESPONSES AND LAY OUT ANY FURTHER

2    FACTUAL -- ANY FURTHER CONTENTIONS THAT IT BELIEVES IT

3    NEEDS TO DO TO PROPERLY FRAME IN ITS MIND THE SCOPE OF

4    THESE 30(B)(6) CATEGORIES, AND THEN AT THE DEPOSITION

5    YOU WILL HAVE THE RIGHT TO OBJECT AND INSTRUCT ON THE

6    GROUNDS THAT WE CROSSED THE LINE INTO A LEGAL

7    CONCLUSION, BUT WE WOULD HAVE THE RIGHT TO EXPLORE THE

8    FACTUAL UNDERPINNINGS OF THE CONTENTIONS THAT ARE

9    IDENTIFIED EITHER IN THE COMPLAINT OR IN THE

10   INTERROGATORY RESPONSES OR ARE SUGGESTED BY DOCUMENTS OR

11   OTHER INFORMATION THAT'S BEEN PRODUCED OR THAT WE'VE

12   LEARNED THROUGH OTHER SOURCES?

13          MR. ZELLER:  YEAH.  I THINK THAT THAT'S SORT

14   OF THE FRAMEWORK I WAS PROPOSING, AND I THINK THAT

15   THAT'S --

16          MR. JACOBY:  OKAY.

17          MR. ZELLER:  I THINK THAT GETS US A FAIR

18   DISTANCE.

19          MR. JACOBY:  OKAY.

20          MR. ZELLER:  ONE THING, JUST SO IT'S CLEAR,

21   YOU'RE RAISING, TOO, IN TERMS OF, YOU KNOW, SOME OF

22   THESE, SOME OF THESE, YOU KNOW, WILL HAVE TO BE ANOTHER

23   SET OF ISSUES WE'RE GOING TO HAVE TO ADDRESS KIND OF

24   GENERALLY SPEAKING WITH RESPECT TO PRODUCING A 30(B)(6)

25   WITNESS TO, YOU KNOW, TALK ABOUT CERTAIN THINGS THAT

176

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   CARTER BRYANT DID THAT WEREN'T NECESSARILY AT MATTEL'S

2   DESIGN CENTER OR, YOU KNOW, THE LIKE.

3           I MEAN THAT'S SORT OF A SEPARATE ISSUE

4   BECAUSE, OBVIOUSLY, THERE'S INFORMATION THROUGH

5   DISCOVERY AND THAT SORT OF THING IN THE LAWSUIT.  YOU

6   KNOW, WE CAN TALK ABOUT WHAT THE PARAMETERS OF THOSE

7   SORT OF THINGS WOULD BE WITH RESPECT TO OUR HAVING TO

8   EDUCATE A WITNESS TO DISCUSS THOSE SORT OF THINGS.  BUT,

9   I MEAN, I THINK GENERALLY SPEAKING WE'RE SORT OF -- I

10  THINK WE HAVE AN AGREEABLE FRAMEWORK FOR TRYING TO DEAL

11  WITH THESE THINGS.

12          MR. WICKHAM:  AND IT'S PERFECTLY APPROPRIATE

13  FOR A WITNESS TO SAY, "I DON'T KNOW WHAT HE DID AT

14  M.G.A., BUT IT SURE LOOKS BAD TO US," OR SOMETHING LIKE

15  THAT.  SO, I MEAN --

16          MR. ZELLER:  ALSO, I MEAN, PART OF THE PROBLEM

17  IS, TOO, IN TERMS OF WHAT DO WE -- WHAT ARE THE

18  PARTIES' EX -- YOU KNOW, WHAT ARE YOUR EXPECTATIONS, AND

19  WHAT CAN WE DO IN TRYING TO RESOLVE SOME OF THESE

20  ISSUES?

21          AND PARTICULARLY THE SCOPE OF SOME OF THE

22  TOPICS THAT ARE SET FORTH IN THE 30(B)(6) NOTICE IS THAT

23  OBVIOUSLY THERE ARE RESTRICTIONS ON WHAT IT IS THAT WE

24  CAN SHARE WITH, YOU KNOW, THE CORPORATE REPRESENTATIVES,

25  YOU KNOW, THE INFORMATION THAT'S IN THE CASE.  SO --

177

VOLUME II

**EXHIBIT 5 PAGE 68**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          LOS ANGELES, CALIFORNIA

2          TUESDAY, MARCH 15, 2005

3          12:10 P.M.

4

5          MR. WICKHAM:   I BELIEVE THAT WE HAVE HAD

6  SUBSTANTIAL PROGRESS THIS MORNING, AND I THINK THAT A

7  LOT OF OUR DISCUSSION HELPS FRAME THE BOX AND FRAMES THE

8  CONTOURS BY WHICH THESE THINGS CAN PROCEED.

9          I'M WONDERING, YOU KNOW, SO THAT, YOU KNOW,

10  MAYBE WE CAN START CLEARING AWAY SOME OF THE BRUSH, CAN

11  WE TURN -- CAN WE TURN TO SPECIFIC SUBJECTS THAT WE CAN

12  TAKE EVERYTHING THAT WE DISCUSSED THIS MORNING, AGREE TO

13  APPLY THOSE PRINCIPLES TO THEM, AND THEN SUBJECT TO

14  THOSE PRINCIPLES REACH AGREEMENT CONCERNING VARIOUS

15  SUBJECTS, OR DO YOU THINK THAT WE -- YOU STILL NEED TO

16  GET FURTHER DEFINITION OF THE BOX AND PARAMETERS, ET

17  CETERA?

18          MR. ZELLER:   WELL, I THINK THAT WE STILL NEED

19  TO JUST MAKE CLEAR -- AND I KNOW THIS IS WHERE WE WERE

20  JUST BEFORE WE TOOK OUR BREAK -- THAT WE HAVE SOME

21  PARAMETERS IN DEALING WITH WHAT IS DEEMED TO BE WITHIN

22  MATTEL'S KNOWLEDGE FOR PURPOSES OF THE SUBJECTS.  AND, I

23  MEAN, WHILE NORMALLY THIS IS NOT THAT MUCH OF AN ISSUE

24  WITH RESPECT TO 30(B)(6) TOPICS BECAUSE A LOT OF THESE

25  ARE FRAMED IN SORT OF THIS, WE'LL SAY, YOU KNOW, LOOSELY

203

VOLUME II

**EXHIBIT 5 PAGE 69**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   CONTENTION KIND OF WAY, YOU KNOW, I JUST NEED SOME

2   CLARITY FOR PURPOSES OF SEEING WHETHER OR NOT WE CAN

3   RESOLVE THESE THINGS AS TO WHAT EXACTLY ARE WE TALKING

4   ABOUT, OR AT LEAST I SHOULD SAY MORE GENERALLY SPEAKING

5   WHAT ARE WE TALKING ABOUT WHEN WE SAY WHAT ARE THE

6   SOURCES OF INFORMATION?

7           AS WE WERE TALKING ABOUT BEFORE THE BREAK, I

8   WAS CONCERNED SOMEWHAT ABOUT, FOR EXAMPLE, KEITH'S USE

9   OF KNOWLEDGE FROM ANY SOURCE.  I MEAN OBVIOUSLY SOME OF

10  THOSE THINGS JUST CAN'T BE THE SUBJECT OF EDUCATING OF A

11  MATTEL WITNESS BECAUSE SOME OF THOSE THINGS ARE KNOWN AS

12  A RESULT OF DISCOVERY IN THE CASE THAT'S BEEN PROVIDED

13  BY THE DEFENDANTS AND BY THIRD PARTIES, AND, OF COURSE,

14  SOME OF THAT STUFF -- AND A GREAT DEAL OF IT -- IS ALSO

15  DESIGNATED AS ATTORNEYS' EYES ONLY.

16          MR. WICKHAM:  WOULDN'T IT NOT BE THE CASE THAT

17  THAT INFORMATION THAT MATTEL DOESN'T KNOW, EITHER THEY

18  CAN SAY, "WE DON'T HAVE A P.M.K. ON THAT SUBJECT," OR

19  THEY CAN IDENTIFY A P.M.K. ON THAT SUBJECT, TESTIFY TO

20  THE LIMITS OF CORPORATE KNOWLEDGE, AND SAY, "BUT THAT'S

21  ALL THAT I KNOW, AND I DON'T KNOW, OBVIOUSLY, ABOUT

22  THINGS THAT MAY HAVE TRANSPIRED, YOU KNOW, OUTSIDE OF

23  MATTEL"?

24          SO I'M WONDERING IF -- I MEAN, IF THEY HAVE

25  BEEN GIVEN THE BRYANT TRANSCRIPT AND THEY HAVE READ THE

204

VOLUME II

EXHIBIT 5 PAGE 70

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    BRYANT TRANSCRIPT AND THEY THEN CLAIM THAT VARIOUS

2    THINGS THAT HE HAS DESCRIBED, YOU KNOW, REPRESENT, YOU

3    KNOW, DEFALCATIONS OF SOME PART ON BRYANT'S PART, THAT

4    WOULD BE SOMETHING THAT THEY KNOW OR, AT A MINIMUM, THAT

5    WOULD BE SOMETHING THAT THEY HAVE BEEN EXPOSED TO.  BUT,

6    IF THEY HAVEN'T READ THE BRYANT TRANSCRIPT OR

7    TRANSCRIPTS OF OTHER, YOU KNOW, THIRD-PARTY WITNESSES

8    AND THAT MATTEL DOES NOT OTHERWISE HAVE KNOWLEDGE OF

9    THAT PARTICULAR SUBJECT, THEN THEY COULDN'T TESTIFY TO

10   THAT SUBJECT.

11          I MEAN I'M -- HELP ME OUT WITH THE -- FRAMING

12   THE ISSUE, I MEAN, BECAUSE THE RULES CONCERNING PERSONAL

13   KNOWLEDGE, FOUNDATION, YOU KNOW, THINGS OF THAT NATURE,

14   APPLY TO CORPORATE P.M.K. DESIGNEES PROVIDED THAT THE

15   KNOWLEDGE IS CORPORATE KNOWLEDGE, NOT NECESSARILY JUST,

16   YOU KNOW, THE PARTICULAR INDIVIDUAL'S PERSONAL

17   KNOWLEDGE.  SO FOR A P.M.K., THAT P.M.K., YOU KNOW, HAS

18   TO BE FED INFORMATION ABOUT WHAT THE CORPORATION KNOWS,

19   BUT THE P.M.K. WON'T KNOW THINGS THAT THE CORPORATION

20   DOESN'T KNOW.  SO, I MEAN, HELP ME OUT HERE IN FRAMING

21   WHAT THE CONCERN IS.

22          MR. ZELLER:  WELL, PART OF IT GOES TO THE

23   DEFINITION OF MATTEL WHICH INCLUDES ALL INDIVIDUALS

24   ACTING UNDER ITS DIRECTION OR CONTROL OR ON ITS BEHALF.

25   SO AT LEAST, AS THINGS ARE DEFINED, THAT WOULD

                                                      205

VOLUME II

**EXHIBIT 5 PAGE 71**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    POTENTIALLY INCLUDE PEOPLE LIKE, YOU KNOW, THE OUTSIDE

2    LAWYERS, THE IN-HOUSE COUNSEL, AND THAT SORT OF THING

3    WHO HAVE HAD, OBVIOUSLY, ACCESS TO, YOU KNOW, IN THE

4    CASE OF THE OUTSIDE LAWYERS ALL THE INFORMATION THAT'S

5    BEEN PRODUCED BY PARTIES OTHER THAN MATTEL, INCLUDING

6    THIRD PARTIES AND THEN THAT SORT OF DEFINITION ALONG

7    WITH HOW THE TOPICS ARE FRAMED WHICH TALKS ABOUT THINGS

8    LIKE ALL OF BRYANT'S ACTS OR OMISSIONS WHICH BREACHED

9    ANY CONTRACTUAL OR NONCONTRACTUAL DUTY OR OBLIGATION

10   BRYANT OWED TO MATTEL.

11            WHEN THOSE THINGS ARE READ TOGETHER, PART OF

12   THE PROBLEM THAT EMERGES -- AND, AS I SAY, IT'S

13   TYPICALLY NOT THAT MUCH OF AN ISSUE IN TERMS OF HOW

14   PEOPLE FRAME THE 30(B) TOPICS, BUT THE WAY THIS IS SET

15   UP CAUSES, YOU KNOW, OR RAISES THE ISSUE CONCERNING THE

16   SCOPE OF THE TOPICS AND, IN PARTICULAR, WHETHER OR NOT

17   THESE TOPICS ARE MEANT TO EMBRACE INFORMATION THAT IS

18   KNOWN TO MATTEL'S AGENTS, INCLUDING ITS LAWYERS, ONLY

19   BECAUSE OF DISCOVERY THAT'S BEEN TAKEN IN THE ACTION,

20   YOU KNOW, WHETHER FROM THE DEFENDANTS OR THIRD PARTIES

21   LIKE MS. RAY OR VICTORIA O'CONNOR.

22            SO, JUST TO TAKE ONE EXAMPLE, OBVIOUSLY,

23   MR. BRYANT TESTIFIED ABOUT WHAT IS, YOU KNOW, THIS

24   SO-CALLED ANGEL PROJECT WHICH, YOU KNOW, OBVIOUSLY IS A

25   RECENT ISSUE THAT HAS EMERGED.   YOU KNOW, WHETHER IT'S

206

VOLUME II

**EXHIBIT 5 PAGE 72**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   A SEPARATE PROJECT OR NOT WILL OBVIOUSLY BE THE SUBJECT

2   OF ADDITIONAL DISCOVERY.  BUT, JUST TO SORT OF --

3   REGARDLESS OF WHAT THAT PROJECT IS, YOU KNOW, THE ONLY

4   WAY THAT WE KNOW ABOUT THAT IS BECAUSE OF MR. BRYANT'S

5   DEPOSITION.  HE MENTIONED THAT THIS WAS ANOTHER PROJECT

6   HE WORKED ON WITH M.G.A. DURING THE TIME THAT HE WAS

7   WORKING WHEN HE WAS EMPLOYED BY MATTEL.  I PRESUME THAT

8   IT'S NOT INTENDED HERE, NOTWITHSTANDING SORT OF THE

9   BREADTH OF THE TOPICS AND THE BREADTH OF THE DEFINITION

10  OF MATTEL, THAT YOU WOULD EXPECT A WITNESS TO BE

11  TESTIFYING WITH SAYING ALL OF BRYANT'S ACTS OR OMISSIONS

12  WHICH BREACHED ANY CONTRACTUAL OR NONCONTRACTUAL DUTY OR

13  OBLIGATION BRYANT OWED TO MATTEL -- THAT WE WOULD BE

14  EDUCATING THE WITNESS TO SAY, "WELL, MR. BRYANT

15  TESTIFIED THAT HE ALSO WORKED ON ANGEL," JUST TO GIVE A

16  SORT OF SPECIFIC CONCRETE EXAMPLE OF WHAT MY CONCERN

17  GOES TO.

18          MR. WICKHAM:  LET ME RESPOND THIS WAY:  WITH

19  REGARD TO THE BREADTH OF THE DEFINITION OF MATTEL, I

20  MEAN, LITIGANTS CAN PROVIDE WHATEVER DEFINITIONS THAT

21  THEY MAY HAVE, BUT THE SCOPE OF A CORPORATE P.M.K.'S

22  KNOWLEDGE, MY SUSPICION, IS ONE THAT IS FAIRLY WELL

23  ESTABLISHED.  AND, THEREFORE, IF, FOR EXAMPLE, MATTEL

24  DOES NOT REGULARLY, YOU KNOW, VET ITS INDEPENDENT

25  CONTRACTORS AND DIRECT ITS INDEPENDENT CONTRACTORS TO

207

VOLUME II

**EXHIBIT 5 PAGE 73**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    KEEP MATTEL APPRISED OF WHAT THEY'RE DOING, YOU KNOW,

2    FOR OTHER COMPANIES, THEN I CERTAINLY WOULD HAVE NO

3    REASON TO SUSPECT THAT MATTEL WOULD HAVE INFORMATION

4    COMING FROM MS. RAY CONCERNING, YOU KNOW, HER

5    INVOLVEMENT WITH A PROJECT, AN ANGEL PROJECT, OR OTHER

6    THINGS THAT SHE DID FOR M.G.A.

7          SO, EVEN THOUGH I MAY HAVE IN THE DEFINITION

8    OF MATTEL A REFERENCE TO AGENTS, IF THAT INFORMATION

9    ISN'T COMING BACK TO MATTEL IN ANY -- HASN'T COME BACK

10   TO MATTEL, THEN MATTEL CORPORATELY WOULD SAY, "I DON'T

11   KNOW."  AND YOU HAVE OBJECTED TO THE BREADTH OF THE

12   DEFINITION, AND PRESUMABLY THE SCOPE OF THE DEFINITION

13   OF MATTEL AS A CORPORATE ENTITY, IT WILL BE ONE THAT IS

14   DEFINED BY FEDERAL RULES AND THE CASE LAW IN THE CENTRAL

15   DISTRICT AND 9TH CIRCUIT SO WE DON'T REALLY -- DESPITE

16   MY BEST EFFORTS TO DRAFT AS BROAD OF A DEFINITION OF

17   THAT, I HAVE TO LIVE WITH WHATEVER DEFINITION AND SCOPE

18   THAT THE 9TH CIRCUIT AND CENTRAL DISTRICT ALLOWS FOR.

19   AND, AGAIN, I DO BELIEVE THAT IT COMES BACK TO WHAT THE

20   CORPORATION KNOWS THROUGH ITS OFFICERS, DIRECTORS,

21   MANAGING AGENTS, EMPLOYEES, ET CETERA.  AND I GUESS, AS

22   YOU GET FARTHER DOWN THE FOOD CHAIN, THERE'S A QUESTION

23   OF WHETHER OR NOT ACTIVITIES AT THE LINE EMPLOYEE LEVEL

24   ARE ONES THAT WILL FILTER UP TO THE CORPORATION.

25          I MEAN I'M SURE THAT, YOU KNOW, MATTEL

208

VOLUME II

EXHIBIT 5 PAGE 74

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    PROBABLY HAS SITUATIONS WHERE EMPLOYEES MAY HAVE DONE

2    THINGS THAT THE CORPORATION SIMPLY DOESN'T KNOW ABOUT.

3    SO YOU TAKE THE DEPOSITION OF THE CORPORATE P.M.K., AND

4    THEY SAY, "WELL, NO, I DIDN'T KNOW THAT, YOU KNOW, JOE

5    SMITH WAS DOING 'X,' 'Y,' AND 'Z'; THE CORPORATION

6    DIDN'T KNOW ABOUT IT; AND, BY GOD, HAD WE KNOWN ABOUT

7    IT, IT WOULD HAVE HAD CONSEQUENCES," AND SO ON AND SO

8    FORTH.

9              MY HUNCH IS THAT MATTEL'S POSITION IN THIS

10   CASE REGARDING THE ALLEGED ACTIVITIES OF MR. BRYANT --

11   THAT MATTEL'S OFFICIAL POSITION WILL BE, "WE DID NOT

12   KNOW ABOUT ANY OF THIS AT THE TIME, AND WE DID NOT LEARN

13   ABOUT THIS UNTIL NOVEMBER OF 2003," AND SO ON AND SO

14   FORTH.  SO I -- SO I GUESS, IN TERMS THE SCOPE OF THE

15   DEFINITION OF MATTEL, IT'S NOT ONE THAT WE -- YOU KNOW,

16   THAT WE HAVE TO DISAGREE ABOUT BECAUSE WE BOTH HAVE TO

17   LIVE BY THE SCOPE OF THE DEFINITION OF THAT, AS PROVIDED

18   UNDER THE FEDERAL RULES AND DECISIONS OF THE 9TH CIRCUIT

19   AND CENTRAL DISTRICT.  I DON'T HAVE CITATIONS TO THEM,

20   BUT, I MEAN, THAT'S THE CASE LAW THAT WE'RE DEALT.

21              COMING BACK TO THE QUESTION ABOUT IF

22   MR. BRYANT TESTIFIED TO SOMETHING AT HIS DEPOSITION, IS

23   THAT SOMETHING THAT MATTEL KNOWS? WELL, YOU KNOW, SURELY

24   YOU WERE AT THE DEPOSITION.  QUINN WAS AT THE

25   DEPOSITION.  MICHAEL MOORE WAS AT THE DEPOSITION.

209

VOLUME II

EXHIBIT 5 PAGE 75

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1           DOES MR. MOORE'S ATTENDANCE AT THAT DEPOSITION

2     SUDDENLY TAKE INFORMATION WHICH MATTEL HERETOFORE DIDN'T

3     KNOW AND SUDDENLY THRUST IT WITHIN MATTEL'S KNOWLEDGE?

4           I'LL BE HONEST.  I DON'T KNOW THE ANSWER TO

5     THAT QUESTION RIGHT NOW.  I SUPPOSE IT WILL DEPEND ON IF

6     MATTEL WERE TO DESIGNATE MR. MOORE AS ONE OF HIS -- ONE

7     OF ITS CORPORATE DESIGNEES.

8           IS THAT WHERE YOUR CONCERN LIES?

9           MR. ZELLER:  WELL, IT'S CERTAINLY PART OF IT.

10    YOU KNOW, IT DOESN'T NECESSARILY TURN ON THE PARTICULAR

11    MECHANICS OF WHETHER, YOU KNOW, MICHAEL MOORE WAS

12    PRESENT AND, YOU KNOW, FOR WHAT AS TO WHETHER OR NOT

13    THAT'S SOMETHING THAT COMES WITHIN THE SCOPE OF IT.  I'M

14    MORE CONCERNED WITH RESPECT TO JUST UNDERSTANDING THE

15    SCOPE OF THE TOPICS AND TRYING TO REACH AGREEMENT ON

16    THEM SO THAT, YOU KNOW, 1, WE KNOW WHETHER WE CAN REACH

17    SOME SORT OF RESOLUTION; AND, 2, TO THE EXTENT THAT WE

18    DO, THAT OBVIOUSLY THERE'S A CLEAR UNDERSTANDING AS TO

19    WHAT WE'RE GOING TO BE PROVIDING WITNESSES ON AND

20    EDUCATING THEM ON.

21          NOW, ONE WAY OF PERHAPS PROCEEDING ON THAT IS

22    THAT, YOU KNOW, I THINK WE'RE FAIRLY FAR ALONG IN TERMS

23    OF SAYING, "OKAY.  WELL, IT'S MATTEL'S CORPORATE

24    KNOWLEDGE."  YOU KNOW, PART OF THIS IS GOING TO TURN ON

25    WHAT WE'RE TALKING ABOUT WHEN WE TALK ABOUT MATTEL.

                                                    210

VOLUME II

**EXHIBIT 5 PAGE 76**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    WHAT I'M SAYING IS THAT, WITH SOME EXCEPTIONS WHICH WE

2    CAN TALK ABOUT WITH RESPECT TO PARTICULAR TOPICS, WHEN

3    WE TALK ABOUT THE SCOPE OF THESE TOPICS, WE'RE NOT

4    TALKING ABOUT KNOWLEDGE THAT IS, YOU KNOW, IN THE HANDS

5    OF ITS OUTSIDE LAWYERS AND ITS -- YOU KNOW, ITS IN-HOUSE

6    COUNSEL AS WELL AS ITS OUTSIDE VENDORS, UNLESS PERHAPS

7    WITH THE VENDORS IT WAS COMMUNICATED TO MATTEL.  THAT'S

8    SORT OF A SEPARATE ISSUE.

9            NOW, WITH RESPECT TO SOME OF THE PARTICULAR

10   TOPICS, THAT DISTINCTION, WE'LL SAY, WOULDN'T

11   NECESSARILY HOLD IN THE SENSE THAT SOME OF THESE THINGS,

12   OF COURSE, WERE DONE BY OUTSIDE LAWYERS AND IN-HOUSE

13   LAWYERS.  LIKE, FOR EXAMPLE, CERTAIN KINDS OF

14   INVESTIGATIONS, YOU KNOW, WHAT IS -- OUR PLAN IS TO --

15   IS TO EDUCATE SOMEBODY WHO CAN SPEAK TO THOSE THINGS,

16   YOU KNOW, SO AT LEAST WITH RESPECT TO SOME TOPICS.

17   OBVIOUSLY, IT WILL BE LESS OF AN ISSUE WHEN WE'RE

18   TALKING ABOUT WHETHER WE INCLUDE OUTSIDE COUNSEL AND

19   IN-HOUSE COUNSEL AS BEING WITHIN THE SCOPE OF THE

20   DEFINITION BECAUSE, YOU KNOW, THERE'S NO REASON, YOU

21   KNOW, AS TO -- FOR ANYONE TO THINK THAT A LOT OF THAT

22   INFORMATION THAT I'M TALKING ABOUT, SUCH AS WHAT WAS

23   SAID AT MR. BRYANT'S DEPOSITION, IS REALLY ATTRIBUTABLE

24   TO MATTEL, IF WE'RE AT LEAST EXCLUDING THE LAWYERS AS

25   BEING PART OF THE DEFINITION OF MATTEL.

211

VOLUME II

**EXHIBIT 5 PAGE 77**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1            MR. WICKHAM:  YEAH.  I MEAN A COUPLE OF

2    THINGS.  I GUESS I COME BACK TO, YOU KNOW, YOU AS -- YOU

3    AND MR. QUINN AS TRIAL COUNSEL ARE THE MASTER OF YOUR

4    OWN FATE.  I MEAN, IF YOU WANT TO CALL A PARTICULAR

5    WITNESS TO TESTIFY ON CERTAIN SUBJECTS, YOU KNOW, YOU'RE

6    PERFECTLY ENTITLED TO.  BUT, IF YOU PREVIOUSLY HAD

7    DESIGNATED THAT PERSON AS A CORPORATE DESIGNEE AND

8    YOU -- THAT DESIGNEE SAYS, "I DON'T KNOW ANYTHING ABOUT

9    THAT SUBJECT," WE WOULD BE ENTITLED TO OBJECT AT TRIAL

10   TO THE PERSON TESTIFYING ON THOSE MATTERS ON THE GROUNDS

11   THAT, YOU KNOW, IT LACKS FOUNDATION AND WE WEREN'T

12   GRANTED THE OPPORTUNITY TO CONDUCT -- TAKE A DEPOSITION

13   ON THOSE SUBJECTS.

14            IN ADDITION, YOU -- I DON'T WANT TO -- I MEAN

15   YOU NEVER WOULD BE WAIVING THE PRIVILEGE, BUT, IF YOU

16   HAD COMMUNICATIONS WITH CORPORATE EMPLOYEES IN

17   CONNECTION WITH YOU HAD DISCLOSED TO THEM, YOU KNOW,

18   FACTUAL INFORMATION ABOUT THE CASE BY WAY OF STATUS

19   REPORTS AND THINGS OF THAT NATURE, FOR OUTSIDE COUNSEL

20   TO BE REPORTING TO THEIR CLIENT WHAT OUTSIDE COUNSEL HAS

21   DISCOVERED, IT MAY VERY WELL BE THAT THE CONVERSATION

22   WOULD BE SOMETHING LIKE, "REALLY?  YOU KNOW, WE DIDN'T

23   KNOW THAT THAT HAPPENED."

24            AND SO I THINK THAT THAT WOULD AGAIN BE THE

25   MEASURE OF MATTEL'S KNOWLEDGE; THAT, IF IT WAS A FACT

212

VOLUME II

**EXHIBIT 5 PAGE 78**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    THAT OUTSIDE COUNSEL HAD DISCOVERED AND WAS NOT KNOWN TO

2    THE CORPORATION, THAT THE CORPORATION COULD TESTIFY THAT

3    THEY DIDN'T KNOW.  AND MERELY BECAUSE OUTSIDE COUNSEL

4    PROVIDED A PRIVILEGE REPORT TO THE CORPORATION, YOU

5    KNOW, DOESN'T INSTANTLY MEAN THAT THE CORPORATION KNOWS

6    THAT FACT PER SE, SUBJECT TO IF YOU LATER THEN WANT TO

7    CALL THAT PERSON TO TESTIFY AT TRIAL ON THAT FACT, THEN

8    WE WOULD ARGUE THAT, YOU KNOW, THEY CERTAINLY SHOULD BE

9    PREPARED TO TESTIFY ON THAT SUBJECT, YOU KNOW, IN

10   CONNECTION WITH THEIR 30(B)(6) DEPOSITION.

11        SO THROUGH THE USE OF OBJECTIONS AND

12   INSTRUCTIONS BASED ON THE ATTORNEY-CLIENT PRIVILEGE AND

13   THE WORK PRODUCT PRIVILEGE YOU WOULD BE ABLE TO CHOOSE

14   AND SECURE COMMUNICATIONS FROM OUTSIDE COUNSEL, EVEN

15   THOUGH THOSE COMMUNICATIONS MAY HAVE INVOLVED RELAYING

16   FACTS TO THE CLIENT.

17        NOW, SO FAR WE HAVE BEEN DISCUSSING SORT OF

18   THE PARAMETERS AS IT RELATES TO MATTEL'S AFFIRMATIVE

19   CLAIMS AGAINST MR. BRYANT.  MR. BRYANT DOES HAVE

20   AFFIRMATIVE CLAIMS AGAINST MATTEL IN THIS ACTION, AND,

21   AS TO THOSE CLAIMS, I GUESS I WOULD HAVE A SLIGHTLY

22   DIFFERENT VIEW OF THINGS BECAUSE -- AND I HAVEN'T LOOKED

23   AT THE COUNTERCLAIM RECENTLY, BUT I BELIEVE THAT

24   THERE'S, YOU KNOW, SOME TORT CLAIMS ASSERTED IN THERE.

25        IF MATTEL WERE TO LEARN A FACT DURING THE

213

VOLUME II

**EXHIBIT 5 PAGE 79**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   COURSE OF DISCOVERY, ALBEIT EVEN, YOU KNOW, DISCOVERY

2   CONDUCTED BY ITS OUTSIDE COUNSEL BUT WITH ITS IN-HOUSE

3   COUNSEL PRESENT, AND THAT COULD BE A FACT ESTABLISHING A

4   MALICIOUS ACT OR GROSSLY NEGLIGENT ACT ON MATTEL'S PART

5   AND IF MATTEL THEN WITH KNOWLEDGE OF THAT FACT EITHER

6   DOESN'T REMEDY THAT FACT OR RATIFIES IT OR DOES ANY

7   NUMBER OF OTHER THINGS TO LAY THE FOUNDATION FOR BRYANT

8   SEEKING PUNITIVE DAMAGES AGAINST MATTEL, THE MERE FACT

9   THAT MATTEL HAD LEARNED THAT FACT DURING THE COURSE OF

10   LITIGATION DOESN'T MEAN THAT THEY DON'T HAVE AN

11   AFFIRMATIVE OBLIGATION TO NOT RATIFY A MALICIOUS ACT,

12   NOT RATIFY A GROSSLY NEGLIGENT ACT, OR SOMETHING OF THAT

13   NATURE.

14       SO, YOU KNOW, I GUESS WHEN YOU'RE TALKING

15   ABOUT ISSUES OF KNOWLEDGE AND ALL THAT SORT OF STUFF,

16   INFORMATION THAT THE ENTITY COULD LEARN DURING THE

17   COURSE OF LITIGATION COULD TRIGGER CERTAIN DUTIES AND

18   POTENTIALLY COULD TRIGGER CERTAIN LIABILITIES, IF THERE

19   WAS, YOU KNOW, WILLFUL BLINDNESS OR RATIFICATION AND

20   THINGS OF THAT NATURE.

21       BUT, COMING BACK TO A P.M.K. DEPOSITION, YOU

22   KNOW, IT'S -- WE SEEK TO CONDUCT A FACTUAL INQUIRY HERE.

23   WE SEEK TO FIND OUT, YOU KNOW, WHAT MATTEL KNOWS AND

24   WHEN DID THEY KNOW IT CONCERNING THE VARIOUS MATTERS

25   THAT, YOU KNOW, ARE LAID OUT THERE, AND PRINCIPALLY IT

214

VOLUME II

**EXHIBIT 5 PAGE 80**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          MR. ZELLER:  YEAH.  I MEAN I DON'T KNOW THAT

2    IN PRINCIPLE WE HAVE AN ISSUE TO THE EXTENT THAT THESE

3    ARE THINGS THAT ARE GOING TO BE WITHIN, YOU KNOW,

4    MATTEL'S CORPORATE KNOWLEDGE.  I MEAN, OBVIOUSLY,

5    CATEGORIES OF DAMAGES ARE, FIRST OF ALL, NOT GOING TO BE

6    SOMETHING THAT IS GOING TO BE KNOWN TO MATTEL SUCH AS,

7    YOU KNOW, ANY KIND OF DISGORGEMENT REMEDY.

8          THE SECOND THING IS THAT SOME OF THIS

9    UNDOUBTEDLY WILL BE THE SUBJECT OF EXPERT TESTIMONY AT

10   THE APPROPRIATE TIME.  BUT, YOU KNOW, CERTAINLY IN

11   PRINCIPLE HAVING A 30(B)(6) WITNESS TESTIFY, YOU KNOW,

12   AS TO THE, YOU KNOW, APPROPRIATE FACTS, IF THERE ARE ANY

13   INDEPENDENTLY, YOU KNOW, THAT ARE WITHIN MATTEL'S

14   CORPORATE KNOWLEDGE, YOU KNOW, AT AN APPROPRIATE TIME IS

15   NOT AN ISSUE.

16          MR. WICKHAM:  I MEAN, FOR MY PART, I WOULD BE

17   VERY SURPRISED THAT MATTEL, YOU KNOW, HASN'T BEEN

18   TRACKING ITS SALES AND CONDUCTING, YOU KNOW, ANALYSIS OF

19   THE FINAL -- THE FINANCIAL IMPACT OF BRATZ AND THINGS OF

20   THAT NATURE, AND I WOULD BE VERY SURPRISED THAT -- YOU

21   KNOW, IF THERE WAS A NEGATIVE FINANCIAL IMPACT TO MATTEL

22   BECAUSE OF BRATZ, THAT YOU WOULDN'T BE ARGUING AT TRIAL,

23   IN PART, THAT THAT IS A MEASURE OF DAMAGES.  WELL, WE

24   CERTAINLY WOULD BE RESISTING THAT AND ARGUING CONTRARY

25   TO THAT, BUT MY GUESS IS THAT THERE IS DISCOVERABLE

                                                      255

VOLUME II

**EXHIBIT 5 PAGE 81**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    INFORMATION AT MATTEL ON THIS TOPIC.

2            MR. ZELLER:  WELL, I THINK YOU'RE ASSUMING AN

3    AWFUL LOT AT THIS STAGE.  BUT, YOU KNOW, IN TERMS OF AT

4    LEAST THE PRINCIPLE OF HAVING SOMEBODY TESTIFY -- I MEAN

5    YOU'RE SORT OF ASSUMING A FAIR AMOUNT ABOUT WHAT DAMAGES

6    THEORIES WOULD BE ASSERTED IN THIS CASE AND THE LIKE.

7    YOU KNOW, IT'S JUST NOT EVEN -- A LITTLE TOO EARLY TO

8    EVEN START COMMENTING ON THAT.

9            MR. WICKHAM:  OKAY.

10           MR. ZELLER:  BUT WHAT I'M JUST SAYING IS

11   THAT -- YOU KNOW, SORT OF ALONG THE LINES OF WHAT I

12   TALKED ABOUT, HAVING SOMEBODY -- YOU KNOW, AGAIN, IF

13   IT'S SOMETHING THAT WILL BE A SUBJECT THAT'S WITHIN THE

14   CORPORATE KNOWLEDGE OF MATTEL AS OPPOSED TO JUST WHAT

15   ITS EXPERTS ARE GOING TO TESTIFY ABOUT IT AND IT WOULD

16   INCLUDE THINGS LIKE ANY POTENTIAL DISGORGEMENT, YOU CAN

17   HAVE A WITNESS.

18           MR. WICKHAM:  TERRIFIC.

19           15 IS ONE THAT GOES TO BRYANT'S LATCHES

20   DEFENSE AND STATUTE OF LIMITATION DEFENSES.  MY GUESS --

21   WELL, I MEAN, THE RECORD THAT WE KNOW OF RIGHT NOW IS

22   THE 2002 LETTER TO BOB ECKERT.  WHETHER THERE IS A

23   BENCHMARK THAT PRECEDES THAT WE DON'T KNOW BECAUSE, YOU

24   KNOW, WE HAVEN'T SEEN ANY DOCUMENTS PRODUCED IN

25   DISCOVERY AND, YOU KNOW, WITNESSES TESTIFYING ON THAT

256

VOLUME II

EXHIBIT 5 PAGE 82

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   SUBJECT.  SO CERTAINLY THAT'S OF THE NATURE OF WHAT

2   WE'RE -- OF WHAT INFORMATION THAT WE'RE SEEKING HERE.

3       MR. ZELLER:  I MEAN WE'LL CERTAINLY PRODUCE A

4   WITNESS,   AND OBVIOUSLY SOMEONE IS GOING TO HAVE TO BE

5   EDUCATED   TO DISCUSS THE FACTS AND CIRCUMSTANCES

6   SURROUNDING   WHEN MATTEL BECAME AWARE AND HOW MATTEL

7   BECAME AWARE   OF THE CONDUCT OF BRYANT THAT'S THE

8   SUBJECT OF THE SUIT HERE.

9       ONE DIFFICULTY WITH BOTH 15 AND 16, I THINK,

10  WHERE WE CAN SORT OF DEAL WITH THEM TOGETHER IN THIS

11  REGARD IS WHERE IT SAYS AWARE OF ANY ALLEGED WRONGFUL

12  CONDUCT.  YOU KNOW, THE 9TH CIRCUIT LAW IS PRETTY CLEAR,

13  PARTICULARLY WITH RESPECT TO THE WESTINGHOUSE CIRCUIT

14  BREAKER CASE THAT THINGS LIKE LATCHES, STATUTE OF

15  LIMITATIONS DOESN'T TURN ON, WELL, WHETHER OR NOT THERE

16  WAS ANY ALLEGED WRONGFUL CONDUCT THAT COULD HAVE BEEN

17  SUED UPON, BUT, RATHER, IT PERTAINS TO THE CLAIMS THAT

18  ARE ASSERTED IN THE ACTION.  SO, IN OUR VIEW, THIS IS

19  TOO BROAD.

20      I'M WILLING TO PRODUCE A WITNESS, YOU KNOW,

21  ALONG THE LINES OF WHAT I JUST MENTIONED, BUT I THINK

22  ANY ALLEGED WRONGFUL CONDUCT OF BRYANT IS TOO BROAD, AND

23  I DON'T THINK IT ALIGHTS TO THE LATCHES OR ANY STATUTE

24  OF LIMITATIONS DEFENSE.

25      MR. WICKHAM:  DO YOU HAVE A CITATION ON THE

257

VOLUME II

**EXHIBIT 5 PAGE 83**

LUDWIG KLEIN REPORTERS & VIDEO, INC.  800.540.0681

1   WESTINGHOUSE CASE?

2            MR. ZELLER:  I CAN SEND YOU THE EXACT CITE.

3            MR. WICKHAM:  LET ME TAKE A LOOK AT THAT AND

4   SEE IF WE CAN'T REACH SOME AGREEMENT ON THAT.  I DO

5   BELIEVE THAT THESE WERE PRINCIPALLY DRAFTED TO GATHER

6   INFORMATION CONCERNING BRYANT'S LATCHES AND STATUTE OF

7   LIMITATION DEFENSES.  THERE ARE ISSUES REGARDING

8   CORPORATE RESPONSIBILITY, CORPORATE INVESTIGATIONS.

9            WHEN YOU ARE PUT ON NOTICE OF SOMETHING, DO

10  YOU HAVE A DUTY TO ACT?  DO YOU HAVE A DUTY TO ACT

11  QUICKLY, YOU KNOW, PARTICULARLY WITH REGARD TO ENFORCING

12  INTELLECTUAL PROPERTY AGREEMENTS AND THINGS OF THAT

13  NATURE, AND WHETHER MATTEL'S, YOU KNOW, FAILURE TO ACT

14  QUICKLY SOMEHOW COULD GIVE RISE TO A WAIVER OF ITS

15  CONTRACTUAL CLAIMS IN THIS CASE?

16           BASICALLY, IF MATTEL HAD A CONTRACTUAL CLAIM

17  AGAINST BRYANT FOR ANY ALLEGED DEFALCATION AND THEY

18  DO -- THEY KNEW OF IT RIGHT THERE IN 2000 OR IN 2001 AND

19  THEY CHOSE NOT TO ENFORCE THE CONTRACT, THAT COULD GIVE

20  RISE TO BRYANT'S, YOU KNOW, DEFENSE OF WAIVER.  I DON'T

21  DISAGREE WITH YOU THAT, IF IT'S SOME DE MINIMUS

22  ACTIVITY -- IF THEY FOUND THAT BRYANT HAD STOLEN A PEN

23  OR SOMETHING LIKE THAT THAT -- AND YOU'RE NOT SUING OVER

24  STOLEN PENS, THAT YOU, YOU KNOW, MAY OR MAY NOT HAVE TO

25  PUT SOMEBODY UP ABOUT IT.  I SUPPOSE IF, YOU KNOW, PEN

258

VOLUME II

**EXHIBIT 5 PAGE 84**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   THIEVERY IN THE DESIGN CENTER WAS A BIG ISSUE FOR ANN

2   DRISCOLL OR RON LONGSDORF OR FOR, YOU KNOW, THE PEOPLE

3   UP THE CHAIN OF COMMAND, YOU KNOW, IRRESPECTIVE OF THE

4   MINUSCULE FINANCIAL COST OF THAT -- BUT, IF IT'S A BIG

5   ISSUE FOR MATTEL, THEN IRRESPECTIVE OF ITS BREADTH OF

6   DAMAGE IT'S -- IF WE'RE LIKELY TO SEE SOMEBODY TESTIFY

7   ABOUT IT AT TRIAL, WE'RE GOING TO WANT TO KNOW ABOUT

8   THAT.  BUT LET ME TAKE A LOOK AT THE WESTINGHOUSE CASE

9   AND SEE IF WE CAN'T AGREE ON A FRAMEWORK HERE.

10          MR. ZELLER:  YEAH.  I MADE THE PROPOSAL AS TO

11  HOW TO ADDRESS WHAT I THINK IS AN OVERBREADTH PROBLEM

12  WITH 15 AND 16, AND, IF YOU HAVE SOME AUTHORITY WITH

13  RESPECT TO THE POINTS YOU WERE MAKING ABOUT WAIVER AND

14  ALL THAT, I'D BE HAPPY TO LOOK AT IT AND RECONSIDER

15  THAT.

16          MR. WICKHAM:  RIGHT.  SURE.

17          MR. ZELLER:  BUT THAT'S THE PROPOSAL I'M

18  PUTTING FORTH RIGHT NOW.  IT BASICALLY ALSO APPLIES --

19  WE'LL COME BACK TO 17 AND 18, IF IT'S OKAY WITH YOU, BUT

20  I THINK BASICALLY THE SAME.

21          THOSE WOULD APPLY TO 19 AND 20 WHICH, AGAIN,

22  ARE ASKING ABOUT INVESTIGATIONS, WHAT DID WE LEARN, WHEN

23  DID WE LEARN IT; THAT KIND OF THING.  AND THEN I THINK

24  THE SAME PROPOSAL THAT I WAS MAKING AND THE SAME

25  EXPLANATION I WAS GIVING FOR IT I THINK APPLIES TO

259

VOLUME II

**EXHIBIT 5 PAGE 85**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    THOSE, AS WELL.  SO WHY DON'T YOU CONSIDER THAT, AND WHY

2    DON'T YOU SEND ME THE AUTHORITY, LIKE YOU SAY YOU HAVE.

3         MR. WICKHAM:  WELL, LET ME ASK YOU.  I'M NOT

4    QUITE CLEAR HOW THE WESTINGHOUSE PRINCIPLE THAT YOU HAVE

5    DESCRIBED AS -- IF YOU'RE NOT SUING ON A PARTICULAR

6    THING, THEN DISCOVERY ON THAT THING CAN'T RELATE TO A

7    LATCHES DEFENSE.

8         MR. ZELLER:  NO.  IT'S NOT -- THE WESTINGHOUSE

9    CIRCUIT BREAKER CASE DEFINES WHAT THE PARAMETERS ARE OF

10   A LATCHES AND A STATUTE OF LIMITATIONS DEFENSE.  IT'S

11   TRIGGERED BY THE KNOWLEDGE WITH RESPECT TO THAT CLAIM.

12   IT'S NOT JUST SIMPLY KNOWLEDGE OF ANY WRONGFUL CONDUCT

13   OR ANY INVESTIGATIONS AS TO OTHER MATTERS THAT WERE

14   UNDERTAKEN.  IT'S FOR THE CLAIMS THAT ARE IN SUIT.

15        TO TAKE AN EXAMPLE, YOU KNOW, JUST SORT OF A

16   HYPOTHETICAL ONE HERE, OBVIOUSLY, YOU KNOW, PRIOR TO THE

17   EVENTS HERE AND FOR SOME PERIOD OF TIME M.G.A. WAS

18   A LICENSEE OF MATTEL, AND ONE COULD CERTAINLY POSIT

19   THAT, WELL, PERHAPS MATTEL HAD POTENTIAL CLAIMS OR MIGHT

20   HAVE BROUGHT CLAIMS OR THAT SORT OF THING IN CONNECTION

21   WITH THE LICENSING RELATIONSHIP.  WHETHER IT

22   INVESTIGATED IT, WHETHER IT MADE A DETERMINATION,

23   WHETHER IT DECIDED NOT TO PURSUE THEM WOULDN'T HAVE ANY

24   BEARING ON A LATCHES OR STATUTE OF LIMITATIONS KIND OF

25   DEFENSE IN THIS PARTICULAR CASE.  I MEAN IT HAS TO BE

260

VOLUME II

**EXHIBIT 5 PAGE 86**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   FOR THE CLAIMS THAT ARE AT SUIT.   AND THAT'S WHY I THINK

2   THAT THOSE TOPICS, YOU KNOW, SWEEP TOO BROADLY WHEN IT

3   TALKS ABOUT ANY INVESTIGATION OR ANY CIRCUMSTANCES ABOUT

4   ANY INVESTIGATION OR ANY ALLEGED WRONGFUL CONDUCT.

5            SO I'M OFFERING TO RESOLVE THAT, YOU KNOW,

6   ALONG THE LINES OF MY PROPOSAL.   LIKE I SAY, I'LL SEND

7   YOU THE CITATION, INCLUDING THE WESTINGHOUSE CIRCUIT

8   BREAKER, AND, YOU KNOW, AGAIN, IF YOU HAVE STUFF ON THE

9   WAIVER AND SIMILAR KINDS WERE POINTS YOU'RE MAKING, I

10  MEAN, I'LL TAKE A LOOK AT IT.

11            MR. WICKHAM:   BUT THE DISCOVERY SLOT ON 19 AND

12  20 CONCERNING INVESTIGATIONS ISN'T INFORMATION THAT IS

13  LIMITED TO WAIVER OR LATCHES.

14            IF MATTEL CONDUCTED A CONTEMPORANEOUS

15  INVESTIGATION, YOU KNOW, MUCH EARLIER IN TIME

16  IDENTIFYING WITNESSES, SECURING DOCUMENTS, OR SECURING

17  E-MAILS, SECURING TELEPHONE RECORDS, SECURING, YOU KNOW,

18  OTHER NONPRIVILEGED OTHERWISE DISCOVERABLE INFORMATION,

19  ALL OF THAT INFORMATION IS DISCOVERABLE IN THIS CASE

20  BECAUSE, AGAIN, IT IS RELEVANT TO THE SUBJECT MATTER OF

21  THE PROCEEDINGS AND/OR LIKELY TO LEAD TO THE DISCOVERY

22  OF ADMISSIBLE EVIDENCE.   SO, I MEAN, I WOULDN'T PUT, YOU

23  KNOW, 19 AND 20 IN THE SAME SLOT AS 15 AND 16 BECAUSE 15

24  AND 16 ARE ONES THAT ARE PRINCIPALLY FOCUSING ON

25  LATCHES, STATUTE OF LIMITATIONS, AS WELL AS THIS CONCEPT

261

VOLUME II

**EXHIBIT 5 PAGE 87**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    OF WAIVER.   19 AND 20 SEEK INFORMATION THAT'S DIRECTLY

2    RELEVANT TO THE CASE.   SO I'M NOT QUITE SURE WHY THE

3    WESTINGHOUSE CIRCUIT BREAKER LIMITATIONS -- YOUR

4    INTERPRETATION OF THEM WOULD APPLY TO LIMIT THE

5    INFORMATION ON 19 AND 20.

6              MR. ZELLER:   BECAUSE, AGAIN, THESE -- JUST

7    BECAUSE THERE MAY HAVE BEEN SOME INVESTIGATION TAKEN AS

8    TO OTHER MATTERS THAT ARE NOT THE SUBJECT OF THE CLAIMS

9    IN THIS SUIT IS JUST NOT RELEVANT.   YOU HAVE SAID THAT

10   IT'S RELEVANT TO THE SUBJECT MATTER OF THE SUIT, BUT I

11   DON'T SEE HOW.   YOU KNOW, AGAIN, IF YOU HAVE SOME

12   AUTHORITY ON YOUR WAIVER POINT AND THAT KIND OF THING,

13   I'M HAPPY TO LOOK AT IT.   I'M NOT FAMILIAR WITH THAT OR

14   THERE BEING SUCH CASES ENOUGH THAT I COULD SAY THAT THAT

15   WOULD BE A WAIVER.   BUT, AGAIN, I'M HAPPY TO LOOK AT IT.

16             BUT, ALSO, ACTUALLY 19 ASKS ABOUT

17   INVESTIGATIONS RELATING TO BRATZ AFTER YOU LEARNED THAT

18   BRYANT WAS INVOLVED IN BRATZ, BASICALLY.   BUT MY POINT

19   IS THAT THESE TOPICS, TOO, ALSO FROM MY PERSPECTIVE

20   SWEEP TOO BROADLY.   AND, YOU KNOW, AS I SAY, I MEAN, I

21   HAVE MADE A PROPOSAL IN TERMS OF TRYING TO RESOLVE IT.

22   I THINK WE HAVE A WAY OF TRYING TO ADDRESS IT GOING

23   FORWARD.

24             MR. WICKHAM:   MATTEL REALLY DOESN'T WANT TO

25   HAVE DISCOVERY ON THE INVESTIGATIONS.   OKAY.   WELL, I

262

VOLUME II

**EXHIBIT 5 PAGE 88**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    THINK THAT WITH REGARD TO --

2          MR. ZELLER:  THAT'S YOUR PERCEPTION, BUT I'M

3    TRYING TO DEAL HERE WITH --

4          MR. WICKHAM:  NO.  I THINK IT'S --

5          MR. ZELLER:  -- YOU HAVE MADE A NUMBER OF

6    INACCURATE STATEMENTS WITH RESPECT TO THESE THINGS

7    BUT --

8          MR. WICKHAM:  LET ME ASK YOU A DIFFERENT

9    QUESTION.  YOU SAY 19 AND 20 SWEEP TOO BROADLY.

10         HOW WOULD YOU PROPOSE LIMITING 19 AND 20?

11         MR. ZELLER:  WE'RE -- WE'LL GIVE YOU --

12         MR. WICKHAM:  I MEAN BECAUSE OF PRIVILEGE?

13         MR. ZELLER:  LET ME JUST --

14         MR. WICKHAM:  LET ME FINISH.  AGAIN, IN

15   DESCRIBING WESTINGHOUSE CIRCUIT BREAKER -- AND YOU'RE

16   TALKING ABOUT THINGS THAT AREN'T THE SUBJECT OF THE

17   LITIGATION, BLAH, BLAH, BLAH -- THAT 19 FOCUSES ON

18   BRATZ.

19         MR. ZELLER:  I WAS POINTING OUT THAT YOU HAD

20   ACTUALLY MISSTATED WHAT 19 WAS.

21         MR. WICKHAM:  OKAY.  I DIDN'T -- I APOLOGIZE.

22         MR. ZELLER:  THAT'S OKAY.

23         MR. WICKHAM:  I DIDN'T THINK I HAD COMMENTED

24   ON IT, BUT, ANYWAY -- SO 19 DOESN'T EVEN GET INTO, YOU

25   KNOW, SORT OF INCONSEQUENTIAL THINGS.  THEY'RE JUST, YOU

263

VOLUME II

**EXHIBIT 5 PAGE 89**

LUDWIG KLEIN REPORTERS & VIDEO, INC.    800.540.0681

1    KNOW, THE INVESTIGATIONS THAT HAVE BEEN UNDERTAKEN, YOU

2    KNOW, RELATING TO BRATZ, BRYANT'S INVOLVEMENT WITH THAT,

3    ET CETERA.

4              MR. ZELLER:  BUT, I MEAN, LITERALLY READ IT

5    SAYS:

6                    ALL ACTIONS TAKEN BY YOU INCLUDING,

7              BUT NOT LIMITED TO, ALL CIRCUMSTANCES

8              SURROUNDING ANY INVESTIGATIONS YOU HAVE

9              UNDERTAKEN RELATING TO BRATZ AFTER YOU

10             LEARNED THAT BRYANT WAS INVOLVED IN THE

11             CONCEPTION, CREATION, DESIGN, AND/OR

12             REDUCTION TO PRACTICE IN BRATZ.

13             THAT LEADS US BACK TO ONE OF THE PROBLEMS THAT

14   I WAS MENTIONING EARLIER WHICH IS THAT THIS WOULD

15   LITERALLY BE SAYING THAT YOU WANT INFORMATION ON

16   INVESTIGATIONS, INQUIRIES, AND THE LIKE THAT MATTEL HAS

17   UNDERTAKEN RELATING TO BRATZ THAT JUST ARE NOT AT ISSUE

18   IN THIS SUIT.

19             M.G.A. AND MATTEL ARE COMPETITORS.  THERE ARE

20   A NUMBER OF ISSUES THAT HAVE BEEN RELATED TO BRATZ.

21   THERE HAVE BEEN -- IT'S EVEN BEEN THE SUBJECT OF LETTERS

22   BACK AND FORTH BETWEEN THE PARTIES AND ALL MANNER OF

23   OTHER THINGS, SO -- I MEAN, YOU KNOW, ON SUBJECTS THAT

24   HAVE NOTHING TO DO WITH THIS CASE.

25             MR. WICKHAM:  YEAH.  NO.  NO.  I -- AS YOU

264

VOLUME II

**EXHIBIT 5 PAGE 90**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    WERE DESCRIBING THAT, THAT WAS, YOU KNOW, SOME THINGS

2    THAT WERE COMING TO MIND.

3          HOW WOULD -- WHAT WORD OR WORDS WOULD WE NEED

4    TO INSERT INTO 19 TO CENTER IT?

5          MR. ZELLER:  WELL, WHAT I'M SORT OF SUGGESTING

6    HERE IS THAT WE CAN -- WITH RESPECT TO 15, 16, 19, AND

7    20 WE'D BE WILLING TO PRODUCE A WITNESS TO TALK ABOUT

8    THE -- YOU KNOW, AND, OBVIOUSLY, SUBJECT TO THINGS LIKE

9    PRIVILEGE AND THE LIKE, BUT, YOU KNOW -- AND WORK

10   PRODUCT.  BUT WE'RE WILLING TO HAVE SOMEONE COME AND

11   TESTIFY CONCERNING, YOU KNOW, THE TIMING AND THE FACTS

12   INVOLVING WHEN MATTEL BECAME AWARE OF, YOU KNOW, THE

13   FACTS UNDERLYING ITS CLAIMS IN THIS CASE AND THE

14   INVESTIGATION THAT WAS DONE WITH RESPECT TO IT.  THAT'S

15   WHAT I'M TRYING TO COME UP WITH WITHOUT NECESSARILY

16   WORDSMITHING EXACTLY, YOU KNOW, WHAT WE'RE TALKING ABOUT

17   HERE.  BUT THAT'S JUST TO SORT OF GIVE, YOU KNOW, SOME

18   FLAVOR OF WHAT IT IS THAT, YOU KNOW, I THINK IS AN

19   APPROPRIATE WAY OF TRYING TO RESOLVE THOSE PARTICULAR

20   ISSUES BECAUSE OF THE WAY THAT THEY'RE FRAMED.  AND, YOU

21   KNOW, I THINK, YOU KNOW, THEY DO SORT OF SWEEP IN THINGS

22   THAT -- YOU KNOW, THAT REALLY AREN'T RELATED TO THIS

23   SUIT.

24          MR. WICKHAM:  I THINK THAT WHAT YOU JUST SAID

25   IS VERY HELPFUL.  LET ME, YOU KNOW -- AGAIN, I'LL TAKE A

265

VOLUME II

**EXHIBIT 5 PAGE 91**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    LOOK AT THE WESTINGHOUSE CIRCUIT BREAKER CASE.   HOW

2    ABOUT WITH REGARD TO -- WELL, 17 AND 18 I SUPPOSE RELATE

3    TO THE PRIOR ONES.

4            YES?

5            MR. ZELLER:   YEAH.   I THINK SO.   I MEAN, YOU

6    KNOW, TO THE EXTENT THAT IT'S SOMETHING SEPARATE, WHICH

7    MY UNDERSTANDING IS IT'S NOT, BUT, YOU KNOW -- BUT

8    CERTAINLY WE WOULD -- WE WOULD BE WILLING TO PRODUCE

9    SOMEBODY WHO WOULD SAY, "THIS IS HOW MATTEL BECAME AWARE

10   OF BRYANT'S INVOLVEMENT IN BRATZ."

11           MR. WICKHAM:   OKAY.   21.

12           MR. ZELLER:   BEFORE I MOVE ON TO THAT, COULD

13   WE TAKE A FEW MINUTES?

14           MR. WICKHAM:   SURE.

15           (RECESS.)

16           MR. WICKHAM:   I'M JUST -- IN LOOKING AT 21,

17   IT SEEMS MORE AKIN TO A DOCUMENT REQUEST THAN A

18   P.M.K. TOPIC.   I'M TRYING TO FRAME -- WELL, LET'S TABLE

19   21 FOR THE TIME BEING.

20           22, 23, AND 24 SEEM TO BE ONES THAT WE CAN

21   SIMPLY WORK OUT CONSISTENT WITH THE FRAMEWORK THAT WE'VE

22   PREVIOUSLY DESCRIBED, UNLESS THERE'S SPECIAL ISSUES

23   RELATING TO THOSE THAT WE HAVEN'T OTHERWISE DISCUSSED.

24           MR. ZELLER:   YEAH.   I THINK WE CAN PRETTY MUCH

25   DEAL WITH THESE IN THE CONTEXT OF THE PRINCIPLES WE

266

VOLUME II

**EXHIBIT 5 PAGE 92**

LUDWIG KLEIN REPORTERS & VIDEO, INC.    800.540.0681

1    ALREADY DISCUSSED.

2         MR. WICKHAM:    NOW, 25 RELATES TO MATTEL'S

3    COMPLIANCE EFFORTS, THINGS OF THAT NATURE, CONCERNING

4    THE TWO AGREEMENTS -- PRINCIPALLY CONCERNING THE TWO

5    AGREEMENTS AT ISSUE IN THE LAWSUIT.

6         NOW, WE KNOW THAT YESTERDAY WE HAD -- WE BEGAN

7    A DISCUSSION SORT OF GOING AROUND AND AROUND ON 17, 18,

8    AND 19 ON THE INTERROGATORY RESPONSES.    THAT WAS DEALING

9    WITH LAWSUITS GENERALLY.    THIS QUESTION, IN PART,

10   ADDRESSES FACTUAL REPRESENTATIONS THAT MATTEL MADE IN

11   ITS PRESS RELEASE IN FILING THIS ACTION AGAINST BRYANT

12   OR WHERE MATTEL ASSERTED IN ITS PRESS RELEASE THAT THEY

13   CONSISTENTLY ENFORCED THESE THINGS AND SO ON AND SO

14   FORTH.    SO THAT I THINK THERE CLEARLY IS INFORMATION

15   THAT GOES TO THE VERACITY OF THE STATEMENTS.

16        BUT, SETTING THAT ASIDE, THESE FOCUS ON

17   WHETHER -- WERE YOU TO PERCEIVE THESE DOCUMENTS, THESE

18   AGREEMENTS, WHATEVER YOU WANT TO CALL THEM, AS

19   EMPLOYMENT POLICIES, WERE THEY EMPLOYMENT POLICIES WHICH

20   MATTEL, YOU KNOW, CONSISTENTLY ENFORCED, PERIODICALLY

21   WAIVED, PERIODICALLY TURNED A BLIND EYE TO, DIDN'T

22   ENFORCE, ONLY ENFORCED IF THERE WAS SOMETHING OF

23   INTEREST, NEVER ENFORCED, NEVER TOOK ANY ACTION ON,

24   EXCEPT WHEN POOR MR. BRYANT JUST HAPPENED ALONG.

25        MR. ZELLER:    WELL, I THINK THIS GETS US BACK

267

VOLUME II

EXHIBIT 5 PAGE 93

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    IS ENTITLED TO EXAMINE THE MOTIVATIONS OF DECISION

2    MAKERS WHEN SEEKING TO REACH A CONCLUSION AS TO THEIR

3    VERACITY, THEIR CREDIBILITY, THE BASIS UPON WHICH, YOU

4    KNOW, THE CLAIMS ARE BEING ASSERTED.

5            SO FROM THAT STANDPOINT, TO DETERMINE WHETHER

6    OR NOT THE DECISION MAKERS OR THE DECISION MAKER WHO

7    GREEN-LIGHTED THIS CASE -- WHETHER, YOU KNOW, HE, SHE,

8    OR IT OR THEY AT A MINIMUM DISCHARGED THEIR OBLIGATIONS

9    UNDER RULE 11 BUT ALSO MORE GENERALLY DISCHARGED THEIR

10   OBLIGATIONS TO SHAREHOLDERS AND TO EMPLOYEES AND TO THE

11   GENERAL PUBLIC, ET CETERA, YOU KNOW, THIS IS INFORMATION

12   THAT, YOU KNOW, WE SEEK TO EXAMINE IN CONNECTION WITH

13   ITEM 26.

14           MR. ZELLER:  WELL, IF THAT'S THE EXPLANATION

15   FOR THIS TOPIC, THEN I THINK IT'S PRETTY CLEAR THAT IT'S

16   NOT, "A," APPROPRIATE FOR A RULE 30(B)(6) TOPIC; AND "B"

17   IS, I THINK YOU'RE MISTAKEN IN THINKING THAT SOMEHOW

18   THAT IS SOMETHING THAT WILL BE DETERMINED BY A TRIER OF

19   FACT.

20           IF BRYANT BELIEVES THAT HE HAS SOME BASIS FOR

21   SEEKING RECOURSE UNDER RULE 11, THAT IS A DETERMINATION

22   MADE BY THE COURT.  THE INFORMATION AS TO WHAT UNDERPINS

23   THE LAWSUIT IS, OF COURSE, IN THE LAWSUIT ITSELF,

24   INCLUDING THE VERY M.G.A. AGREEMENT THAT HE SIGNED THAT

25   EVIDENCES HIS BREACH.  AND, IF THE COURT BELIEVES THAT

277

VOLUME II

**EXHIBIT 5 PAGE 94**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   ADDITIONAL INFORMATION IS NECESSARY TO MAKE A

2   DETERMINATION, THEN WE'LL DEAL WITH IT IN THAT CONTEXT.

3   BUT I DON'T THINK WHAT YOU'VE DESCRIBED WARRANTS THE

4   30(B)(6) WITNESS TESTIFYING ABOUT IT.  AND ALSO ON ITS

5   FACE, I MEAN, THIS IS JUST CLEARLY SEEKING A NUMBER OF

6   THINGS PERTAINING TO THE ACTIONS OF MATTEL'S ATTORNEYS.

7          MR. WICKHAM:  AND, JUST FOR CLARITY, THAT WE

8   WOULD EXCLUDE FROM THIS AND EXCLUDE FROM ALL OF THESE

9   MATTERS THAT ARE SUBJECT TO PROTECTION UNDER THE

10  ATTORNEY-CLIENT PRIVILEGE OR THE WORK PRODUCT PRIVILEGE,

11  BUT WE WOULD --

12         MR. ZELLER:  YEAH, AND I THINK THAT PART OF IT

13  COULD BE DEALT WITH.  I MEAN CERTAINLY TO THE EXTENT --

14  IF YOU'RE LOOKING FOR INFORMATION CONCERNING WHAT THE

15  INVESTIGATION WAS, YOU KNOW, YOU'RE GOING TO GET AT

16  LEAST SOME OF THAT, YOU KNOW, SUBJECT TO PRIVILEGE.  BUT

17  ONE DIFFICULTY WITH 26, HOWEVER, IS THAT IT'S LITERALLY

18  ASKING ABOUT, YOU KNOW -- EVEN SETTING ASIDE, YOU KNOW,

19  THE PRIVILEGE COMPONENT OF THIS, THINGS THAT ARE NOT

20  PRIVILEGED WOULD STILL BE PRETTY ONEROUS AND BURDENSOME

21  FOR US TO HAVE TO PROVIDE WHICH WOULD BE, YOU KNOW,

22  A CHRONOLOGY AND HAVE SOMEONE TESTIFY AS TO A CHRONOLOGY

23  OF ALL THE COMMUNICATIONS AND DISCUSSIONS AND MEETINGS,

24  ANALYSES, AND THE LIKE THAT WERE TAKEN BY, YOU KNOW,

25  MATTEL'S LAWYERS LEADING UP TO THE LAWSUIT.  YOU KNOW,

278

VOLUME II

**EXHIBIT 5 PAGE 95**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    JUST EVEN ATTEMPTING TO CREATE THAT KIND OF LOG OF

2    INFORMATION AND THEN HAVE SOMEONE TESTIFY TO IT, YOU

3    KNOW, I THINK IS PRETTY ONEROUS, AND, ALSO, I JUST HAVE

4    A HARD TIME SEEING WHAT IT IS THAT IT REALLY ULTIMATELY

5    GETS YOU.  I MEAN, IF WHAT YOU'RE SAYING IS THAT, YOU

6    KNOW -- OBVIOUSLY, I DON'T BELIEVE THERE'S EVEN THE

7    SLIGHTEST MERIT IN IT, BUT, IF YOU SOMEHOW THINK THAT

8    YOU HAVE RECOURSE UNDER RULE 11, IT'S NOT THROUGH THE

9    MECHANISM THAT YOU JUST DESCRIBED, AND IT'S CERTAINLY

10   NOT SOMETHING THAT IS GOING TO BE DETERMINED BY THE

11   TRIER OF FACT.  THE TRIER OF FACT IS GOING TO LOOK AT

12   THE EVIDENCE IN THE CASE AND WHAT MATTEL'S

13   DECISION-MAKING PROCESS WAS, PRINCIPALLY, OF COURSE,

14   AMONG ITS LAWYERS, AS TO PROCEEDING WITH THE SUIT.  THIS

15   IS REALLY OF NO MOMENT TO THAT.

16          MR. WICKHAM:  WE CAN AGREE TO DISAGREE.

17          MR. ZELLER:   I MEAN, IF YOU HAVE SOME PROPOSAL

18   FOR TRYING TO NARROW THE TOPIC IN SOME WAY, YOU KNOW,

19   I'M HAPPY TO LISTEN TO IT.  BUT I'M GOING OFF OF, YOU

20   KNOW, AS I UNDERSTAND IT, THE ONLY THING THAT'S BEING

21   ASKED FOR HERE.

22          MR. WICKHAM:  WELL, I MEAN, IN MY EXPERIENCE

23   IN REPRESENTING CORPORATIONS, DECISIONS OF THIS NATURE

24   ARE MADE AT RELATIVELY HIGHER LEVELS AND THAT THEY ARE

25   MADE ON A RELATIVELY LIMITED RECORD AND THAT, AS

279

VOLUME II

**EXHIBIT 5 PAGE 96**

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1               REPORTER'S CERTIFICATE

2

3

4            I, JOHN M. TAXTER, C.S.R. NO. 3579,

5    R.P.R., A CERTIFIED SHORTHAND REPORTER IN AND FOR

6    THE STATE OF CALIFORNIA, DO HEREBY CERTIFY:

7            THAT, PRIOR TO BEING EXAMINED, THE WITNESS

8    NAMED IN THE FOREGOING PROCEEDINGS WAS BY ME DULY

9    SWORN TO TESTIFY THE TRUTH, THE WHOLE TRUTH, AND

10   NOTHING BUT THE TRUTH;

11           THAT SAID PROCEEDINGS WERE TAKEN BY ME IN

12   SHORTHAND AT THE TIME AND PLACE HEREIN NAMED AND

13   WERE THEREAFTER TRANSCRIBED INTO TYPEWRITING UNDER

14   MY DIRECTION, SAID TRANSCRIPT BEING A TRUE AND

15   CORRECT TRANSCRIPTION OF MY SHORTHAND NOTES.

16           I FURTHER CERTIFY THAT I HAVE NO INTEREST

17   IN THE OUTCOME OF THIS ACTION.

18

19

               APRIL 21, 2005

20

21                        _John M. Taxter_

                   JOHN M. TAXTER

22                 C.S.R. NO. 3579, R.P.R.

23

24

25

413

**EXHIBIT 5 PAGE 97**

**EXHIBIT 6**



1   DIANA M. TORRES (S.B. #162284)
    PAULA E. AMBROSINI (S.B. #193126)
2   ALICIA C. MEYER (S.B. #230189)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   email:      dtorres@omm.com

6   DALE M. CENDALI (admitted pro hac vice)
    O'MELVENY & MYERS, LLP
7   Times Square Tower
    7 Times Square
8   New York, New York 10036
    Telephone: (212) 326-2000
9   Facsimile: (212) 326-2061

10  Attorneys for Defendant-in-Intervention
    MGA Entertainment, Inc.

11

**RECEIVED**
MAY 6 2005

FILED
CLERK, U.S. DISTRICT COURT

MAY - 4 2005

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority    ✓
Send        ✓
Enter       ____
Closed      ____
JS-5/JS-6   ____
JS-2/JS-3   ____
Scan Only   ____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

17  MATTEL, INC.,

18              Plaintiff,

19      v.

20  CARTER BRYANT and MGA
    ENTERTAINMENT, INC.,

21
                Defendant and
22              Defendant-in-
                Intervention.
23

24

25

26

27  AND RELATED CROSS-CLAIMS

28

Case No. CV 04-09059 NM (RNBx)

**DISCOVERY MATTER**

STIPULATION AND [PROPOSED]
ORDER RE CERTAIN DISCOVERY
ISSUES

Magistrate Judge: Hon. Robert N. Block

No Hearing Required

Discovery Cut Off:    TBD
Pretrial Conference:  TBD
Trial:                TBD

Judge:         Hon. Nora M. Manella

DOCKETED ON CM

MAY - 4 2005

BY _____ 110

STIPULATION AND [PROPOSED] ORDER
RE DISCOVERY ISSUES
CV 04-09059 NM (RNBX)

198

5:4

**EXHIBIT 6 PAGE 98**

1  WHEREAS certain discovery disputes between Plaintiff Mattel Inc.

2  ("Mattel") and Defendant-in-Intervention MGA Entertainment, Inc. ("MGA") have

3  arisen; and

4  WHEREAS Mattel and MGA have reached certain agreements resolving

5  such disputes;

6  THEREFORE, Mattel and MGA by and through their attorneys of record

7  hereby stipulate as follows:

8  1.  Mattel and MGA shall mutually and simultaneously exchange the

9  discovery listed below on May 16, 2005 commencing at 10:00 a.m.:

10  Mattel shall:

11  a. designate and identify the witness(es) who will testify pursuant to

12  Federal Rule of Civil Procedure 30(b)(6), as agreed at the March 15, 2005

13  meeting of counsel, concerning the subjects listed in the 30(b)(6) deposition

14  notice served by Carter Bryant on or about January 11, 2005 as agreed to by

15  Bryant and Mattel in the March 15, 2005 meeting of counsel and as reflected

16  in the transcript of that meeting;

17  b.  supplement its responses to Carter Bryant's First Set of

18  Interrogatories and provide the file listing, as discussed and agreed at the

19  meeting of counsel on March 15, 2005 (*see, e.g.,* Transcript of March 15th

20  Rule 37-1 conference at 405:6-25 – 406:1-16), provided that the service of

21  the file listing shall not be deemed a waiver of any privilege or protection;

22  c.  supplement or correct its June 28, 2004 initial Rule 26

23  disclosure to (1) identify additional witnesses to the extent required under the

24  Rule; (2) identify the subjects of the information known by each witness

25  identified in Mattel's disclosure; and (3) make available for inspection and

26

27

28

1  STIPULATION AND [PROPOSED] ORDER
RE DISCOVERY ISSUES
CV 04-09059 NM (RNBX)

**EXHIBIT 6 PAGE 99**

copying, in good faith, all other documents identified pursuant to Rule 26 to the extent such documents have not yet been produced to MGA and/or Bryant and are not being withheld on grounds of privilege;

d.    make available for inspection and copying, in good faith, all documents that Mattel has identified, to date, as being responsive to the document requests served, to date, by Carter Bryant and the document requests served (but excluding MGA's Second Set of Requests for Production of Documents), to date, by MGA, to the extent such documents have not yet been produced to MGA and/or Bryant and are not being withheld from production pursuant to good faith objections, including, without limitation, the originals of the "Toon Teens" documents that Mattel produced as M12564-12618, and all other documents in Mattel's possession related to the "Toon Teens" project and/or Ms. Martinez' role in the project, which were requested, for instance, in MGA's document requests numbers 82-111; and

e.    supplement its privilege log, in good faith, corresponding to the responsive documents redacted or withheld from production on the grounds of privilege;

MGA shall:

a.    identify the witness(es) who will testify pursuant to the Federal Rule of Civil Procedure 30(b)(6) deposition notice served by Mattel on February 16, 2005, and propose dates for the deposition of the witness(es) as agreed by counsel and as will be documented no later than Thursday, May 5, 2005;

2

STIPULATION AND [PROPOSED] ORDER
RE DISCOVERY ISSUES
CV 04-09059 NM (RNBX)

EXHIBIT 6 PAGE 100

b.      supplement or correct its January 6, 2005 initial Rule 26 disclosure to (1) identify additional witnesses to the extent required under the Rule; (2) identify the subjects of the information known by each witness identified in MGA's disclosure; (3) make available for inspection and copying, in good faith, all other documents identified pursuant to Rule 26, to the extent such documents have not yet been produced to Mattel by MGA and/or Bryant and are not being withheld on grounds of privilege, including, without limitation, documents relating to the negotiation of MGA's contract with Carter Bryant dated as of September 18, 2000 and documents relating to the design and development of the first generation of "Bratz";

c.      make available for inspection and copying, in good faith, all documents that MGA has identified, to date, as being responsive to the documents requests served by Mattel on March 14, 2005, to the extent such documents have not yet been produced and are not being withheld from production pursuant to good faith objections; and

d.      provide its privilege log, in good faith, corresponding to the responsive documents redacted or withheld from production on the grounds of privilege.

2.      Mattel shall produce Lily Martinez for deposition on May 18, 19 or 20 2005 (which date shall be mutually agreed upon by counsel by Thursday, May 5,

3

STIPULATION AND [PROPOSED] ORDER
RE DISCOVERY ISSUES
CV 04-09059 NM (RNBX)

EXHIBIT 6 PAGE 101

2005) commencing at 9:30 a.m. at the offices of O'Melveny and Myers, LLP, 1999 Avenue of the Stars, 7th Floor, Los Angeles, California 90067.

**SO STIPULATED:**

Dated:       May ___, 2005          DIANA M. TORRES
                                    PAULA E. AMBROSINI
                                    ALICIA C. MEYER
                                    O'MELVENY & MYERS LLP


By: _____
      Paula E. Ambrosini
Attorneys for Defendant-in-Intervention
MGA Entertainment, Inc.

Dated:       May ___, 2005          MICHAEL T. ZELLER
                                    JON D. COREY
                                    QUINN, EMANUEL, URQUHART,
                                    OLIVER & HEDGES LLP


By: _____
      Jon D. Corey
Attorneys for Plaintiff Mattel, Inc.

Dated:       May 3, 2005            DOUGLAS A. WICKHAM
                                    KEITH A. JACOBY
                                    LITTLER, MENDELSON, P.C.


By: _____
      Douglas A. Wickham
Attorneys for Defendant Carter Bryant

**SO ORDERED:**
Dated:       May ___, 2005


_____
Hon. Robert N. Block
Magistrate Judge for the United States
District Court of the Central District of
California

4                     STIPULATION AND [PROPOSED] ORDER
                         RE DISCOVERY ISSUES
                         CV 04-09059 NM (RNBX)

**EXHIBIT 6 PAGE 102**

1   2005) commencing at 9:30 a.m. at the offices of O'Melveny and Myers, LLP, 1999

2   Avenue of the Stars, 7th Floor, Los Angeles, California  90067.

3

4   **SO STIPULATED:**

5        Dated:     May 3, 2005          DIANA M. TORRES
                                         PAULA E. AMBROSINI
6                                        ALICIA C. MEYER
                                         O'MELVENY & MYERS LLP
7
8                                        By: _Paula E. C_____
                                             Paula E. Ambrosini
9                                        Attorneys for Defendant-in-Intervention
                                         MGA Entertainment, Inc.
10       Dated:     May 2, 2005          MICHAEL T. ZELLER
                                         JON D. COREY
11                                       QUINN, EMANUEL, URQUHART,
                                         OLIVER & HEDGES LLP
12
13                                       By: _Jon D Corey_____
14                                           Jon D. Corey
                                         Attorneys for Plaintiff Mattel, Inc.
15       Dated:     May __, 2005         DOUGLAS A. WICKHAM
                                         KEITH A. JACOBY
16                                       LITTLER, MENDELSON, P.C.
17
18                                       By: _____
                                             Douglas A. Wickham
19                                       Attorneys for Defendant Carter Bryant

20   **SO ORDERED:**
21       Dated:     May 4, 2005
22                                       _____
                                         Hon. Robert N. Block
23                                       Magistrate Judge for the United States
                                         District Court of the Central District of
24                                       California
25
26
27
28

                                         4

**EXHIBIT 6 PAGE 103**

**EXHIBIT 7**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES-GENERAL

CV04-09059-NM(RNBx)
CASE NO.  CV05-02727-NM(RNBx)        DATE:  5/20/05

TITLE:   Mattel Inc. -v- Carter Bryant, et al
         MGA Entertainment Inc. -v- Mattel, Inc.

PRESENT:        HON. NORA M. MANELLA, JUDGE

Judith Hurley              N/A
Deputy Clerk               Court Reporter

ATTORNEY FOR PLAINTIFF        ATTORNEY FOR DEFENDANT

     N/A                          N/A

PROCEEDINGS:  IN CHAMBERS

        Now that the Ninth Circuit has granted Mattel's petition for permission to file
an interlocutory appeal, all discovery in these actions is stayed pending the
determination of the appeal.  The stay of discovery also applies to pending &
prospective discovery motions.

Priority
Send
Clsd
Enter
JS-5/JS-6
JS-2/JS-3

DOCKETED ON CM
MAY 20 2005
BY

cc: Counsel
CIVIL MINUTES 11

Initials of Deputy Clerk

EXHIBIT 7 PAGE 104

CONFIDENTIAL

EXHIBIT 7 PAGE 105

**EXHIBIT 8**

CONFORMED COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2   (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    Duane R. Lyons (Bar No. 125091)
5   (duanelyons@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12            Plaintiff,                 Consolidated With Case No. 04-9059 and
                                         Case No. 05-2727
13       v.
                                         MATTEL, INC.'S SECOND AMENDED
14                                       ANSWER IN CASE NO. 05-2727 AND
    MATTEL, INC., a Delaware             COUNTERCLAIMS FOR:
15  corporation,
                                         1.  COPYRIGHT INFRINGEMENT;
16            Defendant.                 2.  VIOLATION OF THE
                                             RACKETEER INFLUENCED AND
17                                           CORRUPT ORGANIZATIONS
                                             ACT;
18  MGA ENTERTAINMENT, INC. a           3.  CONSPIRACY TO VIOLATE THE
    California corporation,                  RACKETEER INFLUENCED AND
19                                           CORRUPT ORGANIZATIONS
                                             ACT;
20            Plaintiff,                 4.  MISAPPROPRIATION OF TRADE
                                             SECRETS;
21       v.                              5.  BREACH OF CONTRACT;
                                         6.  INTENTIONAL INTERFERENCE
22  MATTEL, INC., a Delaware                 WITH CONTRACT;
    corporation, and DOES 1-10,         7.  BREACH OF FIDUCIARY DUTY;
23                                       8.  AIDING AND ABETTING
              Defendants.                    BREACH OF FIDUCIARY DUTY;
24                                       9.  BREACH OF DUTY OF
                                             LOYALTY;
25

26                                       PUBLIC REDACTED VERSION

27                                          Volume I

28

2154363.2

C7.12.c7

EXHIBIT 8 PAGE 106

SECOND AMENDED ANSWER AND COUNTERCLAIMS

| | | |
|---|---|---|
| 1 | MATTEL, INC., a Delaware corporation, | 10. AIDING AND ABETTING BREACH OF DUTY OF LOYALTY; |
| 2 | Counter-claimant, | 11. CONVERSION; |
| 3 | v. | 12. UNFAIR COMPETITION; AND |
| | | 13. DECLARATORY RELIEF |
| 4 | MGA ENTERTAINMENT, INC., a | |
| 5 | California corporation; ISAAC LARIAN, an individual; CARTER | DEMAND FOR JURY TRIAL |
| 6 | BRYANT, an individual; MGA ENTERTAINMENT (HK) LIMITED, | |
| 7 | a Hong Kong Special Administrative Region business entity; MGAE DE | |
| 8 | MÉXICO, S.R.L. DE C.V., a Mexico business entity; CARLOS | |
| 9 | GUSTAVO MACHADO GOMEZ, an individual; and DOES 4 through 10, | |
| 10 | Counter-defendants. | |
| 11 | | |
| 12 | AND CONSOLIDATED CASES | |
| 13 | | |

**EXHIBIT 8 PAGE 107**

-2-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1 | **SECOND AMENDED ANSWER**

2   Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007,

3 Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment,

4 Inc. ("Complaint") as follows:

5     <u>Preliminary Statement</u>

6   The Complaint in this case contravenes <u>Rule</u> 8(a) of the <u>Federal Rules</u>

7 <u>of Civil Procedure</u> in multiple respects.  For example, in many places, the Complaint

8 improperly mixes factual averments with argumentative rhetoric.  The Complaint

9 also includes a selective recitation of alleged historical facts and "rumor," much of

10 which is both irrelevant and inflammatory in tone and content.  In addition, many of

11 the allegations of the Complaint are overly broad, vague or conclusory and include

12 terms which are undefined and which are susceptible to different meanings.

13 Accordingly, by way of a general response, all allegations are denied unless

14 specifically admitted, and any factual averment admitted is admitted only as to the

15 specific facts and not as to any conclusions, characterizations, implications or

16 speculations which are contained in the averment or in the Complaint as a whole.

17 These comments and objections are incorporated, to the extent appropriate, into

18 each numbered paragraph of this Second Amended Answer.

19   Mattel further submits that the use of the headings throughout the

20 Complaint is improper, and therefore no response to them is required.  In the event

21 that a response is required, Mattel denies those allegations.

22   The Complaint also contains many purported photographs of various

23 items, and it uses one or more headings purporting to describe, either individually or

24 in groups, these various photographs.  The images of these photographs contained in

25 the Complaint are all relatively small and some are of less than optimal quality,

26 making it difficult to evaluate the adequacy of the photographs or their fairness and

27 accuracy in depicting what they purport to represent.  The Complaint also does not

28 describe the circumstances or time frame in which these photographs were taken,

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

**EXHIBIT 8 PAGE 108**

1  and in many cases does not identify, or does not sufficiently or properly identify, the

2  item depicted in the photographs.  All of these factors, as well as the use of these

3  photographs and headings out of context, or with an insufficient context, impair the

4  ability of Mattel to fully respond to these photographs and headings, or to any

5  purported allegations involving, or relying upon, the use of such photographs and

6  accompanying headings.  By way of a general response, Mattel therefore does not

7  admit the authenticity of any photograph, or the accuracy or adequacy of any

8  heading, nor does it admit any allegation or inference that is based on, or purports to

9  be based on, any photograph or accompanying heading in the Complaint.  Mattel

10  reserves the right to challenge the authenticity of any photograph and the accuracy

11  or adequacy of any heading (either as included in the Complaint or in the context of

12  additional material not included).  Further, with reference to all photographs and

13  accompanying headings, or any averments based on the Complaint's use of such

14  photographs and headings, which might be offered into evidence, Mattel specifically

15  reserves its right to object to any use of such photographs, headings, and averments,

16  or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

17         To the extent that Mattel has endeavored to answer any particular

18  allegation containing any such photographs and headings, any admission concerning

19  the item purported to be depicted in such photograph, or described in such headings,

20  shall not constitute an admission that the photograph is authentic, adequate, or

21  admissible, nor that any heading is accurate, adequate, or admissible.  All such items

22  purportedly depicted in such photographs, and described in such headings, "speak

23  for themselves".  Accordingly, to the extent that any such referenced materials are

24  deemed allegations against Mattel, they are denied.

<u>Responses</u>

26         1.     Answering paragraph 1 of the Complaint, Mattel admits that

27  plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California

28  corporation with a principal place of business in Van Nuys, California.

2154363.2

-4-

**EXHIBIT 8 PAGE 109**

1       2.    Answering paragraph 2 of the Complaint, Mattel admits that

2   Mattel is a Delaware corporation with a principal place of business in El Segundo,

3   California.

4       3.    Answering paragraph 3 of the Complaint, Mattel denies that

5   there has been wrongful conduct on its part and states that it is without knowledge

6   or information sufficient to form a belief as to the truth or falsity of the remaining

7   allegations set forth therein and, on that basis, denies them.

8       4.    Answering paragraph 4 of the Complaint, Mattel admits that

9   plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and

10  (c), California Business and Professions Code §§ 17200 *et seq.*, California Business

11  and Professions Code § 14330 and California common law, denies that plaintiff is

12  entitled to any relief thereunder and denies the truth of the remaining allegations set

13  forth in paragraph 4.

14      5.    Answering paragraph 5 of the Complaint, Mattel admits that it is

15  subject to personal jurisdiction in this District and denies the truth of the remaining

16  allegations set forth in paragraph 5.

17      6.    Answering paragraph 6 of the Complaint, Mattel admits that

18  venue is proper in this District and denies the truth of the remaining allegations set

19  forth in paragraph 6.

20      7.    Answering paragraph 7 of the Complaint, Mattel admits that

21  MGA has filed the instant lawsuit and denies the truth of the remaining allegations

22  set forth in paragraph 7.

23      8.    Answering paragraph 8 of the Complaint, Mattel states that it is

24  without knowledge or information sufficient to form a belief as to the truth or falsity

25  of the allegations regarding MGA's history set forth therein and, on that basis,

26  denies them, states that MGA has made conflicting representations, including in

27  sworn statements, that are at odds with the allegations of the Complaint and denies

28  the truth of the remaining allegations set forth in paragraph 8.

-5-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT 8 PAGE 110**

9. Answering paragraph 9 of the Complaint, Mattel admits that MGA filed this action, states that Mattel's web site and corporate governance policies speak for themselves and denies the truth of the remaining allegations set forth in paragraph 9.

10. Answering paragraph 10 of the Complaint, Mattel admits that it is the world's most successful toy company, states that the first doll in its BARBIE line was publicly introduced in 1959 and that BARBIE-branded dolls have been the world's best-selling toys, states that Mattel's sales and stock price speak for themselves, and denies the truth of the remaining allegations set forth in paragraph 10.

11. Answering paragraph 11 of the Complaint, Mattel admits that Adrienne Fontanella is the former president for girls' toys at Mattel, states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding an alleged statement by Ms. Fontanella, and denies the truth of the remaining allegations set forth in paragraph 11.

12. Answering paragraph 12 of the Complaint, Mattel is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding alleged statements by unidentified "analysts," states that Mattel's sales and stock price speak for themselves, and denies the truth of the remaining allegations set forth in paragraph 12.

13. Answering paragraph 13 of the Complaint, Mattel admits that Jill Barad became President and Chief Executive Officer of Mattel in January 1997, that Mattel acquired Tyco Industries, Inc. ("Tyco") in March 1997, that Mattel acquired Pleasant Company in 1998, Mattel acquired the Learning Company in May 1999, that Mattel acquired Purple Moon in 1999, that the MATCHBOX brand was owned by Tyco, that the AMERICAN GIRL line of dolls was made by Pleasant Company at the time of that entity's acquisition, and denies the truth of the remaining allegations set forth in paragraph 13.

14.   Answering paragraph 14 of the Complaint, Mattel states that its public announcements speak for themselves, and denies the truth of the remaining allegations set forth therein.

15.   Answering paragraph 15 of the Complaint, Mattel states that its stock price and its public announcements speak for themselves, and denies the truth of the remaining allegations set forth therein.

16.   Answering paragraph 16 of the Complaint, Mattel states that its stock price speaks for itself, states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the alleged views of unnamed "analysts" and "[i]nvestors," and denies the truth of the remaining allegations set forth therein.

17.   Answering paragraph 17 of the Complaint, Mattel admits that Ms. Barad resigned in February 2000.

18.   Answering paragraph 18 of the Complaint, Mattel admits that Robert Eckert became Chairman and Chief Executive Officer of Mattel in May 2000 and that Mr. Eckert previously was employed at Kraft Foods, Inc. for 23 years, is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the views of unnamed "[i]nvestors" and others, and denies the truth of the remaining allegations set forth in paragraph 18.

19.   Answering paragraph 19 of the Complaint, Mattel admits that the *Wall Street Journal* published an article on August 10, 2000 the content of which speaks for itself, and denies the truth of the remaining allegations set forth therein.

20.   Answering paragraph 20 of the Complaint, Mattel admits that it disposed of the Learning Company in October 2000, states that its sales and revenues speak for themselves, states that the remainder of the allegations contained therein are characterizations, not factual assertions, and therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies the truth of any remaining allegations set forth in paragraph 20.

21.     Answering paragraph 21 of the Complaint, Mattel admits that products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and other product lines and states that the remainder of the allegation contained therein—consisting of a sentence fragment—is unintelligible and on that basis denies the truth of any such remaining allegation set forth therein.

22.     Answering paragraph 22 of the Complaint, Mattel admits that products in plaintiff's "Bratz" line compete with Mattel products, states that the remainder of the allegations contained therein are characterizations, not factual assertions, and that therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies the truth of any remaining allegations set forth therein.

23.     Answering paragraph 23 of the Complaint, Mattel states that MGA has made conflicting statements, including in sworn statements, that are inconsistent with the allegations set forth in paragraph 23 of the Complaint and states that it is therefore without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein and, on that basis, denies them.

24.     Answering paragraph 24 of the Complaint, Mattel states that the "look" of the referenced dolls speak for themselves and denies the truth of the remaining allegations set forth therein.  By way of further answer, Mattel states that the photographs and their accompanying caption on page 7 of the Complaint are false and misleading to the extent they are intended to suggest that MGA has produced or used a consistent packaging shape or look or that it has protectible rights in the matters depicted in the photographs.

25.     Answering paragraph 25 of the Complaint, Mattel admits that Bratz dolls are between approximately 9.5 to 10 inches in height, states that the appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz"

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT 8 PAGE 113**

2154363.2

1   dolls "looked like no other" and denies the truth of the remaining allegations set

2   forth in paragraph 25.

3          26.   Answering paragraph 26 of the Complaint, Mattel states that the

4   use of the term "classic" is unintelligible, since Mattel has designed and sold

5   different dolls using different heads and with different fashions and themes over the

6   years, and denies the truth of any remaining allegations.  By way of further answer,

7   Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the

8   Complaint is misleading in that it depicts one of the doll heads that have been used

9   as part of the BARBIE line for many years, and therefore ignores that Mattel has

10   long designed and sold an array of different BARBIE line dolls that use different

11   doll heads, including doll heads which depict different ethnicities, and that are

12   dressed in different clothing and fashion styles.

13          27.   Answering paragraph 27 of the Complaint, Mattel admits that

14   MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

15   denies that MGA originated or otherwise has rights to that phrase, admits that one

16   audience for products in the "Bratz" line has been "tweens" and denies the truth of

17   the remaining allegations set forth in paragraph 27.

18          28.   Answering paragraph 28 of the Complaint, Mattel admits that

19   certain "Bratz" dolls have won certain awards, the terms of which speak for

20   themselves, states that it is without knowledge or information sufficient to form a

21   belief as to the truth or falsity of the allegations regarding the "awards" MGA claims

22   and, on that basis, denies them, denies that plaintiff has protectible rights and denies

23   the truth of any remaining allegations set forth in paragraph 28.

24          29.   Answering paragraph 29 of the Complaint, Mattel admits that

25   dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that

26   Mattel has or has ever had a "stranglehold" on any market, states that the market

27   allegations contained in paragraph 29 are vague and ambiguous, including without

28   limitation in that the allegations fail to specify what products among the parties'

2154363.2

-9-

**EXHIBIT 8 PAGE 114**

1   respective lines are being referred to and what time period is being referred to, and

2   denies the truth of any remaining allegations set forth in paragraph 29.

3         30.    Answering paragraph 30 of the Complaint, Mattel admits that

4   MGA has been a licensee of Mattel, states that the market allegations are vague and

5   ambiguous, including without limitation in that the allegations fail to specify what

6   products are being referred to and what time periods or points in time are being

7   referred to, and states that the remainder of the allegations contained therein are

8   characterizations, not factual assertions, and therefore no response is necessary

9   under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies

10  the truth of any remaining allegations set forth in paragraph 30.

11        31.    Answering paragraph 31 of the Complaint, Mattel states that the

12  allegations contained therein are characterizations, not factual assertions, and

13  therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any

14  further response is required, denies the truth of the allegations set forth in paragraph

15  31.

16        32.    Answering paragraph 32 of the Complaint, Mattel denies the

17  truth of the allegations set forth therein.

18        33.    Answering paragraph 33 of the Complaint, Mattel denies the

19  truth of the allegations set forth therein.

20        34.    Answering paragraph 34 of the Complaint, Mattel states that it

21  has released various MY SCENE dolls, including MY SCENE dolls named

22  "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY

23  SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE

24  dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff

25  has protectible rights, states that MGA has made conflicting representations that are

26  at odds with the allegations of the Complaint and that it is therefore without

27  knowledge or information sufficient to form a belief as to the truth or falsity of the

28  allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,

-10-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT 8 PAGE 115**

1  denies them, and denies the truth of the remaining allegations set forth therein.  By

2  way of further answer, Mattel states that the photographs and their accompanying

3  captions on page 10 of the Complaint are misleading and false to the extent they are

4  intended to suggest that a particular Mattel doll has been changed over time as

5  purportedly depicted.  Among other things, Mattel has long designed and sold an

6  array of different BARBIE line dolls using different doll heads, and the photographs

7  encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been

8  used, and continues to be used, as part of the BARBIE line.  In addition, the

9  photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll

10  character called BARBIE that continues to be sold and/or marketed with that head,

11  and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY

12  SCENE doll character separate and apart from the one depicted in the "circa 2002"

13  image (and is not a revised character as plaintiff apparently attempts to imply).

14       35.    Answering paragraph 35 of the Complaint, Mattel admits that

15  Mattel released a product line called FLAVAS, states that the appearance of the

16  FLAVAS dolls speaks for themselves, states that it is without knowledge or

17  information sufficient to form a belief as to the truth or falsity of the allegations

18  regarding the  "rumor" relied upon by plaintiff and the undefined "media"

19  purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel

20  has abandoned the FLAVAS line, and denies the truth of the remaining allegations

21  set forth in paragraph 35.

22       36.    Answering paragraph 36 of the Complaint, Mattel denies the

23  truth of the allegations set forth therein.

24       37.    Answering paragraph 37 of the Complaint, Mattel denies the

25  truth of the allegations set forth therein.  By way of further answer, Mattel states that

26  the unnumbered photographs and their accompanying captions on pages 11 through

27  16 of the Complaint -- which apparently were included to purportedly support the

28  allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel

2154363.2

-11-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT 8 PAGE 116**

1  specifically denies -- are false and misleading.  Among other things, the heads

2  depicted are among an array of different doll heads that Mattel has used, and

3  continues to use, over the course of many years.  Moreover, the images purport to

4  compare different Mattel doll lines to show alleged changes in appearance even

5  though, in fact, each of the heads are currently sold and/or marketed to the public.

6  The "Blonde" series of photographs encaptioned "original" and "recent" MY

7  SCENE is further and specifically misleading in that it purports to compare two

8  differently named and outfitted dolls in the MY SCENE doll line, both of which

9  continue to be sold and/or marketed.

10         38.    Answering paragraph 38 of the Complaint, Mattel states that the

11  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

12  denies that MGA was the originator of or the first to use the eye shape or makeup

13  depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has

14  copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations

15  contained in paragraph 38.  By way of further answer, Mattel states that the

16  unnumbered photographs and accompanying caption on page 13 of the Complaint

17  are false and misleading.  Among other things, the purported "Original Mattel 'My

18  Scene' Eye" is one of the eye and makeup designs that Mattel has used over the

19  course of many years, and Mattel continues to sell and/or market dolls using the eye

20  and makeup design depicted therein.

21         39.    Answering paragraph 39 of the Complaint, Mattel states that the

22  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

23  denies that MGA was the originator of or the first to use the eye shape or makeup

24  purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has

25  copied "the 'BRATZ' eye," states that the relevant dolls speak for themselves and

26  denies the truth of the remaining allegations contained in paragraph 39.  By way of

27  further answer, Mattel states that the unnumbered photographs and accompanying

28  captions on page 14 of the Complaint are false and misleading.  Among other things,

-12-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

**EXHIBIT 8 PAGE 117**