# EXHIBIT 1



# World Barbie means business

By Andra Cheng
Princeton
April 21, 2004

Borys Poltoran found the perfect gift to take home to his eight-year-old daughter in Ukraine while shopping at New York's Times Square: Mattel's Barbie and her friend, Teresa, for a discount price of $US4.99 each.

"This price is perfect," said Poltoran, a print-shop owner. "My daughter will say, 'Wow! Two dolls!'" Even at Mattel's regular price of $US5.99, the California beach Barbie is no more expensive than a bathing-suit version last year, although the latest model has such accessories as crochet hats, beaded necklaces and sunglasses.



MGA Entertainment's Bratz dolls, pictured, have beaten off competition from Mattel's Flavas dolls.

Mattel chief executive Robert Eckert is adding more features to Barbie, a 45-year-old American icon that accounts for half of Mattel's profit, in a bid to revive sales of the world's largest toy maker. He's giving Barbie text-messaging capability and even a new boyfriend after losing more than 20 per cent of the $US1.7 billion ($A2.3 billion) US fashion-doll market to competitors such as MGA Entertainment, the maker of Bratz dolls.

Building up sales is vital because Mattel can't keep relying on cost reductions to boost profit, says Lawrence Creatura of Clover Capital Management. "Mattel's creative engine is not what it needs to be. At the end of the day, investors would love to see some revenue growth."

Since taking over in May 2000, Eckert has shut Mattel's last US plant and trimmed the company's workforce by about 17 per cent, or 5000 employees. To spur sales, he has given various Barbie models 16 pairs of earrings, surfboards, motorcycles and boyfriend Blaine.

The new love interest is an Australian surfer doll with sun-bleached hair and a tan, a boyfriend limited for now to the California girl, or Cali Girl, line of dolls. Mattel is still making Barbie's traditional love interest, Ken, introduced in 1961.

US sales of Barbie are expected to rise this year for the first time since 2000, after falling 25 per cent in the holiday quarter, Matthew Bousquette, president of the Mattel division that includes Barbie, said in a February interview. Mattel later said the company did not give estimates, and told investors to disregard his forecast.

"We have basically re-engineered Barbie," Eckert said in February at the American International Toy Fair in New York, where Mattel introduced eight "Worlds of Barbie" dolls. "What we need to do is grow faster in the US. That's our No. 1 priority."

Mattel's 1.5 per cent sales increase, to $US5 billion, was less than Hasbro's sales gain of about 11 per cent to $3.14 billion.

Barbie had more than 90 per cent of US sales of so-called fashion dolls, dress-up figures about 33 centimetres tall, until MGA Entertainment introduced the Bratz line in 2001, according to Jim Silver, the publisher of

EXHIBIT __1__ PAGE __3__

M 0079004

World Barbie means business – BusinessNews – www.theage.com.au

Toy Book, a trade journal.

Home – Business – News – Article
Now makes has about 70 per cent and Bratz about 30 per cent of the $US1.7 billion market.

Competition from Bratz, whose multicultural dolls bear names such as Jade and Yasmin and wear such hip-hop-inspired clothes as platform shoes and fur jackets, may slow any sales gains from the Barbie changes, Creatura and other investors say. One of Mattel's efforts to compete against Bratz flopped. The company scrapped its tattooed, hip-hop-styled "Flavas" dolls earlier this year because they failed to meet sales expectations.

Barbie, sold in more than 150 countries, represented about 30 per cent of Mattel's 2003 sales, says analyst Sean McGowan, of Harris Nesbitt Gerard. The brand represented as much as 50 per cent of Mattel's 2003 profit, helped by $US3.6 billion in retail sales of Barbie dolls, and Barbie-related radios, video cameras and clothing, for which Mattel receives licensing fees, he says.

Mattel orders may be hurt if the company's second-largest customer, Toys "R" Us, closes stores as a result of competition with the US's largest toy seller, Wal-Mart Stores. Toys "R" Us might shut 100-200 of its US stores, Smith Barney analyst Bill Sims said in January.

Competition from Wal-Mart led to bankruptcy filings by toy retailers KB Toys Inc and FAO Inc in the past four months. With fewer Toys "R" Us stores, McGowan predicts that Barbie's global sales would be little changed or drop slightly this year. "I don't think the new products are enough," he says.

Bratz has helped MGA quadruple its sales – to more than $US650 million last year – since it was introduced in June 2001. Chief executive Isaac Larian said in February Bratz dolls had about $US1.3 billion in sales. "We've just begun," he said. "We are going to be bigger than Barbie."

Barbie got her start in 1959 when company co-founder Ruth Handler named the doll for her daughter. Intended as a teenage dress-up doll, the first Barbie had a blond ponytail and a black and white swimsuit, and sold for $US3. The doll, 29 centimetres tall, has since had three physical makeovers and has been outfitted in more than 80 personas, from rock star to astronaut to presidential candidate.

Rival Hasbro, the toy maker known more for its brands popular with boys such as GI Joe, is trying to draw more sales from girls. Its new products include Secret Central mini-dolls, a class of dolls about 8 cm tall, that tell the story of the lives of 20 high school students. Some come equipped with a locker and yearbook.

"We know very well how to compete" for sales from girls, chief executive Al Verrecchia says. "We see that as an opportunity."

Mattel, already the maker of Polly Pocket and other mini-dolls, is introducing a model called Shorties this year. The company will also start selling an instant-message Barbie that comes with miniature cell phones that let kids send text messages.

"They are doing a lot with products this year," says Kevin Grant, of Harris Associates, Mattel's second-largest shareholder as of December. "We'll see better results."

– Bloomberg

**More news**

   Snapshot
   Grow a strong spine and you can soar without wings
   Hawks gather to talk turkey

Copyright © 2004. The Age Company Ltd.

EXHIBIT ____1____ PAGE ___4___

M 0079005

**EXHIBIT 2**

Faces In The News
**Eckert's Mattel Touts Barbie As Multimedia Star**
By Greg Levine
June 20, 2006

NEW YORK - They love to butcher Barbie, a study found. But they still love to love her.

Born as a Berlin vamp, the ultimate California girl still reigns supreme in sales, toymaker Mattel (nyse: MAT - news - people ) says. And Chief Executive Robert A. Eckert is making sure Mattel's impossibly blonde figurine, and its other classic brands like Hot Wheels and Fisher-Price, will stay on top 21st century-style. In other words, via major media and marketing hookups.

Eckert's company gave a presentation at the 2006 Licensing International Show in New York City Tuesday. There, Mattel declared the formation of "Premier Alliances," linking its key products with leaders in "entertainment, apparel, sporting goods, electronics and infant-toddler categories," the better to thrash rivals like Hasbro (nyse: HAS - news - people ) and Jakks Pacific (nasdaq: JAKK - news - people ).

In a press release, Richard Dickson, the toymaker's senior vice president of marketing, media and entertainment, worldwide, declared that Mattel's "licensing portfolio boasts the industry's top properties, most innovative programs and premier partnerships."

One such alliance: Time Warner's (nyse: TWX - news - people ) Cartoon Network named Mattel its "master toy licensee" for original programming. And the release promises "Boys and babies alike will burn rubber" with a new Adidas collection of Hot Wheels and Fisher-Price footwear.

With the Walt Disney Co. (nyse: DIS - news - people ), Mattel will create a multimedia DVD/board game of *High School Musical*, featuring video clips, outtakes and all the songs and dances from the Disney Channel movie.

Puig Beauty and Fashion Group is distilling Barbie's "essence of fun, energy and femininity" into a second Barbie Eau de Toilette fragrance and a new *parfum*, minimalistically named "B."

And there's a "global, multi-year, multi-picture alliance" with General Electric's (nyse: GE - news - people ) Universal Studios Home Entertainment. Barbie and top-selling mini-doll, the aptly named Polly Pocket, will enjoy DVD-movie releases--and an accompanying deluge of toys, consumer goods, and Internet tie-ins.

So privately held MGA Entertainment, whose harlot-like Bratz dolls have stolen

EXHIBIT __2__ PAGE __5__

M 0055002

market share from Ken's willowy girlfriend, take heed: To paraphrase vaudevillians, they mangle Barbie—but they mangle because they love.

EXHIBIT **2** PAGE **6**

M 0055003

**EXHIBIT 3**

# Factiva

Dow Jones & Reuters

Advertising
**'Tween Queen Comes to Fashion Doll's Aid**
By Queena Sook Kim and Suzanne Vranica
1,154 words
23 August 2004
The Wall Street Journal
B1
English
(Copyright (c) 2004, Dow Jones & Company, Inc.)

HOPING TO GET Barbie back on the cultural radar screen, **Mattel** Inc. is bringing in a younger, more popular blonde -- the teen actress and singer Hilary Duff.

In a new ad campaign created by WPP Group's Ogilvy & Mather, the 16-year-old star of TV's "Lizzie McGuire" appears just long enough to give her blessing to a new line of Barbie clothing -- to be worn by girls, not dolls. Stepping out of a limousine into a gaggle of screaming girls, Ms. Duff stops before one fan wearing a pink miniskirt. "I love your skirt," the 'tween queen says. "Where'd you get that?" Up comes the Barbie logo and a message: "Introducing Barbie. The Fashion."

The campaign says something about Barbie's current place in the world. Sales of Barbie dolls, one of the main engines driving **Mattel's** revenue, in recent years have sputtered: Domestic sales of the dolls fell 15% last year alone. The sales decline mirrors Barbie's fall from favor with eight- to 12-year-old girls, the sweet spot of Hilary Duff's core audience.

**Mattel**, based in El Segundo, Calif., is counting on the ads to help reinvent and revitalize the slumping Barbie business, with $3.6 billion in world-wide retail sales last year, including the dolls and licensed consumer goods. The company doesn't break out sales, but analysts believe Barbie's domestic licensing revenue has fallen alongside domestic sales of the doll. Barbie-licensed goods are believed to generate from $2.2 billion to $2.4 billion in sales at retail, with an undisclosed royalty going to **Mattel**, says Jim Silver, a toy expert and publisher of the monthly trade magazines Toy Book and Licensing Book. "The licensed goods have slowed down in recent years for older girls," he says.

Where Barbie once had a near-monopoly in the fashion segment of the doll world, **Mattel's** share is believed to have shrunk, although **Mattel** says it still outsells competitors by a two-to-one margin.

**Mattel** has been working all year to pump up interest in the statuesque blonde and make her more relevant to modern eight to 12-year-olds. In February, **Mattel** announced the break-up of Barbie and her stalwart boyfriend, Ken, and lost no time ushering in his replacement, the Australian bad-boy surfer Blaine. Barbie and Ken "may have gone the way of J-Lo and Ben," **Mattel's** chief executive, Bob Eckert, said at the time.

The new line of clothes and a perfume are the latest effort to capture 'tweens' attention. In the commercial, girls wearing furry pink vests, preppy plaid miniskirts and funky-striped pants upstage Barbie, who appears for only a few moments wearing her own little funky fashions. The 'tween clothes and perfume are sold at Macy's Herald Square store, a unit of Federated Department Stores Inc.

Some toy-industry observers are puzzled by the new effort. "If **Mattel** can't make it in the 'tween market with dolls, how are they going to make it in apparel?" asks Margaret Whitfield, an analyst Ryan Beck & Co., New York. "The Barbie doll image has to work with 'tweens before **Mattel** sells related products."

**Mattel** declined to comment on the clothing line and ad campaign.

Currently on a concert tour, Ms. Duff wasn't available for comment. Her people say she isn't a celebrity endorser per se: "She has grown up with Barbie and has agreed to be the special ambassador for this campaign, Ms. Duff's spokeswoman says. Whatever, as her fans might say. Still, the commercial and the clothes serve two of **Mattel's** purposes. They aim to capture more spending of eight to 12-year-olds in an era when they seldom play with toys. And with specialty toy stores growing extinct, they also will help **Mattel** in its search for alternative distribution channels.

**Mattel** over the past year has taken steps to establish the Barbie brand in the fashion pipeline, introducing a Barbie couture fashion line for women in Japan and teaming up with British designer Julian MacDonald to create a limited-edition collection of girls clothes that sold at Selfridges, a swank London department store. In addition, a few Barbie-brand clothing items for teenage girls, such as T-shirts, are sold at the Hot Topic shopping-mall chain. **Mattel** figures if teens and young women -- not to mention celebrities -- buy into Barbie-branded items, then young girls will take note and buy more dolls.

EXHIBIT __3__ PAGE __7__

M 0249325

**Mattel** also has launched a print campaign, sans Ms. Duff, to support the 'tween clothing line in magazines such as J-14, M and Nickelodeon.

The late Ruth Handler, a founder of Mattel who is credited with creating Barbie in 1959, resisted the idea of giving Barbie a personality, in the belief that girls would supply it from their own imaginations as they played. And in the past, Barbie's star power was considered so powerful that **Mattel** didn't have to rely on celebrities in ads to promote her (notwithstanding an appearance the actress Maureen McCormick made in a Barbie commercial in the late 1960s, before she became famous as Marcia Brady). For years afterward, Barbie was in her prime, the unchallenged queen of fashion dolls.

Mr. Eckert, the **Mattel** chief, broke with the tradition, moving to boost flagging Barbie sales soon after taking the helm in 2000. Since then, Barbie has starred in three full-length, direct-to-video movies, including an animated version of "The Nutcracker"; this fall, she will appear in a musical movie, "The Princess and the Pauper." The videos seem to have reignited little girls' interest in Barbie and have been widely copied.

Then, in February, taking aim at an older group of girls, **Mattel** launched a strategy called "Worlds of Barbie," which features more accessories and assigns plot lines to various Barbie dolls. Analysts have been watching closely to see whether it works: So far, there are few signs that older girls' interest in Barbie is growing. Mr. Eckert has told investors that the strategy won't be fully implemented until 2005.

Analysts and toy experts in the past criticized **Mattel** for leaving Barbie behind the times and open to attack from rivals such as MGA Entertainment Inc.'s Bratz fashion dolls. The North Hills, Calif., toymaker has been adept at tapping fashion trends and pop culture. For example, last year, while **Mattel** introduced the Barbie Cruise Ship, MGA Entertainment gave its racier dolls a disco dance-party set.

Some analysts are encouraged that **Mattel** is finally getting hip to the influence of celebrity endorsements in kid's spending. "I think Hilary Duff is the right kind of celebrity," says Sean McGowan, a toy analyst at Harris Nesbitt, New York. "She's someone girls aspire to be."

Document J000000020040823e08n00020

© 2004 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

EXHIBIT 3 PAGE 8                M 0249326

**EXHIBIT 4**

Rehabbed Barbie aims to win                                                    Page 1 of 2



MARKETPLACE: Classifieds • Autos • Apartments • Jobs • Homes • Shopping – New          How to jad



Home
News
Opinion
Business
Markets – New
• Indiana Stocks
Technology
Columnists
• Dana Knight
• J. K. Wall
AP Business
AP Technology
Sports
Entertainment
Indiana Living
Obituaries
Weather | Traffic
Customer Services
Subscriber Services



INtake
Community
Fact Files
Message Boards
Multimedia/Photos
Newsletters

## BUSINESS/TECH

### Rehabbed Barbie aims to win

Mattel tries to help the iconic doll get her groove back and beat those edgier Bratz.

By Alex Veiga
Associated Press
November 28, 2004

LOS ANGELES — Barbie's going through a midlife crisis.

After splitting with longtime boyfriend Ken earlier this year, she has sought refuge in shopping, surfing, bubble baths and partying with a crew of trendy pals on the beach in Jamaica. At 45, she even made a bid for the White House.

Then there was the makeover: A new set of Paul Frank fashions, her own fragrance, a new musical and a new man – spiky-haired Southern California surfer Blaine.

But she's nonetheless going through a crisis, one that started at the cash register. While the Barbie brand as a whole generated $3.6 billion in global retail sales this year, says manufacturer Mattel Inc., Barbie has seen sales slide during the past seven quarters. And in the last few years, rivals including the edgier Bratz have upstaged the iconic doll.

To re-energize its flagship brand, the world's largest toy maker set out to cast Barbie and her pals in a series of books, magazines and animated films, hoping the storylines would drive sales of the doll and her trove of accessories.

For girls 6 to 9, Mattel crafted stories with preteen scenarios — dance parties, dating and shopping. Barbie's look now better reflects current fashion trends. And Mattel signed "tween" diva Hillary Duff to promote the brand.

She's "the 'It' girl for the Barbie set," observed Chris Byrne, an independent toy consultant and editor of Toy Report.

Mattel is applying the storyline concept to doll lines across Barbie's universe, though only about two-thirds of the new toys will be in stores this year, with the rest arriving in 2005.

"We need to make progress in regaining the confidence of retailers, and that takes time," Robert A. Eckert, Mattel's chairman and chief executive

EXHIBIT  4   PAGE  9

M 0079067

**Star Source**
Send us your news tips, ideas

**Star Links**
Links mentioned in The Star

**Star Headlines**
Get RSS feed of latest news

officer, told Wall Street analysts last month.

Perhaps a bigger challenge is persuading parents and kids that Barbie is cool. That cachet has eluded the brand in recent years, particularly among older girls, many of whom either have lost interest in dolls or prefer Bratz.

Shopper Davina Lee, browsing the Bratz aisle at Toys R Us Inc. store in Burbank, said it's all about looks and attitude.

The Bratz, made by MGA Entertainment Inc., have disproportionately large faces, prominent makeup and sport hip, sexy clothing with hair to match.

"That's how kids dress these days," said the 25-year-old student. "Barbie's plain. Bratz look better."

Mattel hopes to alter that perception with design touches meant to give Barbie a younger, hipper look. There's Cali Girl Barbie -- an update on Malibu Barbie -- and the Jammin' In Jamaica series for the My Scene Barbie line that's intended to be direct competition for Bratz.

"The initial response to the Cali Girl has been good, but it has not been off the charts," said John Reilly, spokesman for KB Toys.

Other new products that Mattel hopes will attract older girls include the Fashion Fever Barbie line and her runway model look, and an "American Idol" Barbie inspired by the popular talent show.

Mattel girls' brands spokeswoman Julia Jensen said executives familiar with Barbie's overhaul were not available to comment.

Mattel's CEO told analysts it's too early to tell if the plan is working.

"It's difficult when you are in the midst of a turnaround to tell exactly where you are," Eckert said.

---

✉ Email this     🖨 Print this     💬 Post message     ✉ Send letter to editor     📰 Reprint info

Customer Service • Terms of Service • Send feedback about IndyStar.com • Subscribe Now • Jobs v
Copyright 2004 IndyStar.com, All rights reserved

Gannett Indiana network: Indianapolis • Fishers • Lafayette • Marion • Muncie • Noblesville • Rich
USA Today • USA Weekend • Gannett Co. Inc. • Gannett Foundation • Space.com

EXHIBIT __4__ PAGE __10__

M 0079068

**EXHIBIT 5**

# CONFIDENTIAL - FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

**EXHIBIT 6**

**CONFIDENTIAL - FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 7**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

November 29, 2007

<u>VIA FACSIMILE AND FEDEX</u>

Thomas J. Nolan, Esq.                         Raoul Kennedy, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP      Skadden Arps Slate Meagher & Flom, LLP
300 South Grand Avenue, Suite 3400            Four Embarcadero Center Suite 3800
Los Angeles, CA 90071                         San Francisco, California 94111

Re:     <u>Mattel v. Bryant</u>

Dear Counsel:

I have to follow up on the conference of counsel that we have engaged in regarding outstanding discovery disputes, specifically deposition scheduling.

We have offered to produce Ms. Patel, a third-party, on Tuesdays in January, preferably not the 7th, however. Please let me know which of those dates MGA prefers.

We have offered to produce Ivy Ross, a third-party, on January 17th. As we have previously advised you, she will be produced only on the 17th. She will not be produced on the 18th or any other date unless MGA can make a showing that seven-hours is not sufficient. MGA has not, to date, made any effort to make that showing.

Nor will Mattel produce her before January 17th. Mattel offered to make Ms. Ross available on August 23 or on October 3. MGA expressed a preference for October 11. Ms. Ross was available on that date and the parties agreed that the deposition of Ms. Ross, a senior executive at her company, would go forward on October 11. On October 3, 2007, however, counsel for MGA unilaterally cancelled Ms. Ross' deposition, asking that it occur in November. So, Mattel secured a date from Ms. Ross for her deposition in November. Due to the withdrawal of O'Melveny & Myers and Christensen Glaser, the stays requested by your firm (and the representations to the Court that you were not prepared to take depositions), Ms. Ross had to use

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2313913.1

EXHIBIT __7__ PAGE __14__

that date for other commitments. I then secured the next available date for Ms. Ross' deposition, January 17th. I informed you of this date at our first meeting of counsel on November 16, 2007. Given this history, there is no reason to move the date of Ms. Ross' deposition yet again. In response to Mr. Nolan's request, I confirmed that Ms. Ross is not available to be deposed in December.

Mattel will make Mr. de Anda available for deposition on December 19, 2007. As I mentioned in the meeting of counsel last week, Mr. de Anda will likely be a designee on some of the topics in Bryant's Rule 30(b)(6) deposition notice of Mattel. I expect to meet and confer with someone from your firm by Thursday on some of those topics and expect to clarify the agreed scope of those topics. I will identify those topics on which Mr. de Anda is designated after that conference, as any agreements may inform that designation.

Mattel will provide deposition dates for Mr. Bousquette, a third party, when MGA has complied with its obligation, as directed by Judge Infante, to inform Mattel in writing that its document production with respect to MGA's unfair competition claims is substantially complete. *See* February 13, 2007 Hearing Tr. at 24:15-18 ("I think the deposition [of Mr. Bousquette] should not take place until the document discovery is substantially completed, with respect to that witness.") This requirement is not ambiguous. Please provide Mattel with such a representation in writing and reasonable date ranges for Mr. Bousquette's deposition, the Mattel will provide dates for Mr. Bousquette.

Mattel will respond under separate cover to Mr. Mumford's letter of November 29, 2007, relating to certain of the Rule 30(b)(6) topics in Bryant's notice.

If you have questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon Corey

Jon Corey

cc:     Marcus Mumford

2

EXHIBIT   7   PAGE   15

**EXHIBIT 8**

RightFAX          8/30/2007 2:35     PAGE 002/006    Fax Server

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ___   Send ___
Entered ___    Closed ___
JS-5/JS-6 ___  JS-2/JS-3 ___
Scan Only ___  Docketed on CM _L_
     THIS CONSTITUTES NOTICE OF
     ENTRY AS REQUIRED BY FRCP 77(d)

8/30/07

EASTERN DIVISION
BY ___  DEPUTY

**PRIORITY SEND**
**& ENTERED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES — GENERAL

Case No.    CV 04-09049 SGL (RNBx)                 Date:  August 27, 2007

Title:    CARTER BRYANT -v- MATTEL, INC.,
          AND CONSOLIDATED ACTIONS

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Gina L. Guzman                    Theresa Lanza
          Courtroom Deputy Clerk            Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker, Esq.                   John B. Quinn, Esq.
(morning session only)                Michael T. Zeller, Esq.
                                      Jon D. Corey, Esq.

ATTORNEYS PRESENT FOR MGA:

Patricia Glaser, Esq.
Diana M. Torres, Esq.

PROCEEDINGS:    ORDER DENYING MOTION FOR TERMINATING SANCTIONS;
                ORDER DENYING REQUEST FOR INTERLOCUTORY
                APPEAL; ORDER REQUIRING FILING OF AFFIDAVITS RE
                EVIDENCE PRESERVATION

     This matter is before the Court on MGA's and Carter Bryant's Motion for Terminating
Sanctions, filed on July 24, 2007 (docket #689). This matter was heard on August 27, 2007, at
which time it was taken under submission. The Court has considered the moving, opposition, and
reply briefs, as well as the many declarations and other evidence presented by the parties.  The

MINUTES FORM 90                            Initials of Deputy Clerk _sig_
CIVIL -- GEN                               Time: 02/52
                                           Docket No. 895

                              1

EXHIBIT  8    PAGE  16

RightFAX          8/30/2007 2:34      PAGE 003/006    Fax Server

Court has also considered the arguments presented at the August 27 hearing and the sworn testimony given by Michael C. Moore, in-house counsel for Mattel. Although at the hearing the Court indicated it would defer ruling on the present motion pending further filings by all parties regarding their efforts to preserve evidence, upon further reflection the Court sees no reason to delay ruling on the current motion.[1]  As set forth below, the Court DENIES the motion.

Based on their inherent power to sanction for "abusive litigation practices," district courts may impose sanctions against a party who destroys evidence, including the ultimate sanction of dismissal. Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006).  Dismissal is a harsh sanction, which may nonetheless be imposed upon those parties who have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings.". Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995).  However, before imposing the ultimate sanction of dismissal, district courts should consider five factors:  "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  Id.  Nevertheless, district courts need not make explicit findings regarding each of these factors and, in any event, "a finding of willfulness, fault, or bad faith is required for dismissal to be proper."  Leon, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks and citation omitted).

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'"  Id. at 959 (quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (finding no willful spoliation where documents were destroyed in the routine course of business)).  Neither Leon nor Kitsap elaborate on when a party has the "notice" necessary to trigger the duty to preserve evidence.  However, in In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1068 (N.D. Cal. 2006), the district court presented a persuasive discussion of the standard, first rejecting an argument that the duty to preserve evidence arises only when litigation is "imminent," and then setting forth a lesser standard.  Specifically, the Napster court noted that the duty arose "when a party should have known that the evidence may be relevant to future litigation," and that any such "future litigation" must be "probable," and not merely "possibl[e]." (internal quotation marks and citation omitted).

Keeping in mind these standards, the Court turns to the categories of evidence MGA and Bryant allege that Mattel has despoiled.  As articulated by the Court at the hearing on this matter, those categories are: (1) Mattel employees' emails, (2) documents maintained on the Zeus document storage system, (3) the delay in producing certain Rule 30(b)(6) witnesses, (4) Carter

---

[1]  By the same token, upon further reflection, the Court sees no reason to delay ruling on MGA's request for interlocutory appeal of the present order.  See 28 U.S.C. § 1292(b) (stating that certifications for interlocutory appeal should be set forth in the order to be appealed).  The Court's ruling on that matter appears infra.

EXHIBIT   8   PAGE   17

Bryant's missing phone records, and (5) Carter Bryant's missing time records.

In considering the arguments of the parties regarding when Mattel's duty to begin to preserve evidence arose, the Court determines that November 24, 2003, marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable. On this date, in-house counsel for Mattel received in discovery in an unrelated action a copy of a contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel. This contract appeared to Mattel to violate certain employment agreements executed by Bryant and Mattel, thus giving rise to one of the current consolidated actions. Although prior to this date an internal investigation may have raised a suspicion on Mattel's part that litigation might arise, there was no evidence presented to the Court that Mattel should have known it had a viable claim against Bryant before November 2003. Cf. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court . . . a pleading . . . , an attorney
. . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

The Court heard testimony from Michael C. Moore, in-house counsel for Mattel, regarding the efforts to preserve email communications and other evidence. Counsel for MGA and Bryant cross-examined Mr. Moore at the hearing on this matter. The Court credits his testimony. The efforts Mr. Moore described regarding the preservation of emails is reasonable, and certainly does not amount to spoliation. Moore described communications with specific individuals identified by Mattel as those most likely to have information relevant to the litigation and efforts made to preserve any evidence those individuals had in their custody or control. Emails not otherwise archived from the relevant time period – mostly September and October, 2000 – had already been deleted from Mattel's email servers in accordance with its email retention policies. Mattel cannot be faulted for deleting these emails in the regular course of business before it had notice of its claims against Bryant.

In April, 2005, the current litigation took a dramatic turn, when MGA filed suit against Mattel. At that time, all Mattel employees were instructed to maintain any evidence potentially relevant to the litigation. When that suit was filed, Mattel took action to preserve all of its emails, capturing emails that date back to December, 2004. They retain these backup tapes to this day. MGA and Bryant make much of Mattel's failure to suspend its 90-day auto-delete policy regarding emails, but fail to address two key points: First, Mattel altered only the storage mechanism for its emails, it did not actually delete any emails; and second, Mattel, a number of years ago, informed MGA that it was not planning on suspending its 90-day auto-delete policy, and MGA did not at that time object.

As for the Zeus tapes, there is simply no evidence of spoliation. First and foremost, as the system has been described to the Court, the system is a cumulative file system that continues to accumulate. The system is still in operation, does not have an auto-delete function, and

MINUTES FORM 90
CIVIL – GEN

3

Initials of Deputy Clerk __gig__
Time: 02/52

Docket No. 895

EXHIBIT __6__ PAGE __18__

information dating back to all relevant time period in this case may be accessed from it. Additionally, Mattel's in-house counsel testified as to the existence of several backup tapes that it can make available to MGA and Bryant. Finally, outside of pure speculation, there is no evidence that anyone has deleted anything from the Zeus system. Although production issues may still remain with respect to these data, preservation of this data, in the Court's view, is simply not an issue based on the record before the Court.

The delay in producing certain Rule 30(b)(6) witnesses is not a proper basis for terminating sanctions in this case. No motions to compel were brought to compel those witnesses's depositions at earlier times, and MGA and Bryant's accusations that the delay in producing them for deposition is part of a cover-up of the destruction of evidence is mere unfounded speculation. Moreover, the Court is mindful that MGA has been found by the discovery master to be guilty of the very same unexcused delay of which it accuses Mattel. See August 14, 2007, J. Infante Order, at 8 and 9 (attached to the Supplemental Proctor Decl. as Ex. 1).

Although Mattel is at a loss to explain the missing phone records from the critical month of October, 2000, there is no evidence that the records were destroyed. Moreover, other evidence presented by Mattel, especially phone records produced by Bryant that show he was in contact with MGA during that time period, suggest that the missing records would not assist Bryant.

The "missing" time records were either never created or were deleted. There is no evidence that the latter occurred. In fact, the only evidence on this point, from Mattel's Rule 30(b)(6) witness, is that although deletion of time records is possible, he was unaware of any instances of that occurring. Artavia Depo. 116, 170-71.

In sum, MGA and Bryant have failed to present any evidence regarding the "willfulness, fault, or bad faith" required to justify the imposition of terminating sanctions. Leon, 464 F.3d at 958. Many of MGA and Bryant's allegations, especially those raised in connection with Mattel's failure to suspend its auto-delete policy (portrayed as a wholesale failure to preserve emails less than 90-days old) and the availability of data from the Zeus system, are nothing more than rhetoric laced with hyperbole. Other allegations, such as Mattel's motive for delaying certain Rule 30(b)(6) depositions, and the destruction of Bryant's October, 2000, phone records and time records, are nothing more than sheer speculation, unsupported by evidence. Although counsel impressed upon the Court MGA's conviction of the righteousness of its cause, such overzealous conviction as witnessed by the Court at the hearing is no substitute for proof.

Accordingly, the Court DENIES MGA's and Bryant's Motion for Terminating Sanctions.

At the hearing, counsel for MGA and Bryant requested the Court certify the present order for interlocutory appeal. That request is DENIED. Permissive interlocutory appeals are governed by 28 U.S.C. § 1292(b):

When a district judge, in making in a civil action an order not otherwise

EXHIBIT __8__  PAGE __19__

RightFAX    8/30/2007 2:34   PAGE 008/008   Fax Server

appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

_Id._ Here, there is no "controlling question of law" in controversy. The law is quite settled. Accordingly, certification for interlocutory appeal of the present order is unwarranted.

As stated at the hearing, the Court ORDERS all parties to set forth, in affidavit form, their preservation efforts and policies with respect to the present litigation on or before September 10, 2007.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL – GEN

5

Initials of Deputy Clerk ___gig___
Time: 02:52
Docket No. 895

EXHIBIT __8__ PAGE __20__

RightFAX                8/30/2007 2:34      PAGE 001/006      Fax Server

**From:**  **Name:**     United States District Court
                         312 North Spring Street
                         Los Angeles, CA 90012
           **Voice Phone:** (213) 894-5474


**To:**    **Name:**      Michael Zeller
           **Company:**
                         865 S Figueroa St, 10th Floor,
           **City/State:**  Los Angeles, CA 90017-2543
           **Fax Number:**  213-443-3100



**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCIV.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

Fax Notes:

Case 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

Pursuant to General Order 05-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a Judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:

            Western Division:  CrimIntakeCourtDocs-LA@cacd.uscourts.gov
            Southern Division:  CrimIntakeCourtDocs-SA@cacd.uscourts.gov
            Eastern Division:  CrimIntakeCourtDocs-RS@cacd.uscourts.gov

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

Switch to e-mail delivery and get these documents sooner!
To switch, complete and submit
Optical Scanning Enrollment / Update form G-76,
Call 213-894-5474 for help and free technical support.

If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.

Date and time of transmission:      Thursday, August 30, 2007 2:34:04 PM
Number of pages including this cover sheet: 06

EXHIBIT **8**  PAGE **21**