KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

v.

MATTEL, INC. a Delaware Corporation,

Defendant.

CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC.

Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727

**DISCOVERY MATTER**

[To Be Heard by Discovery Master Hon. Edward Infante (Ret.)]

**CARTER BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON, P.C.**

Date: T.B.D.
Time: T.B.D.
Judge: Hon. Stephen G. Larson
Date Comp. Filed: April 13, 2005
Discovery Cut-Off: Jan. 28, 2008
Trial Date: May 27, 2008

408163.02

CARTER BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

## I. INTRODUCTION

Mattel's motion to compel the deposition of Carter Bryant's prior counsel in this litigation, Littler Mendelson, P.C. ("Littler"), should be denied for all the same reasons Bryant's motion to quash Mattel's deposition subpoena to Littler should be granted. Mattel ignores both the applicable law and the facts that matter—which do not support deposing Littler—by resorting instead to baseless fear-mongering. Depositions of opposing litigation counsel are improper except in very limited circumstances. Because those circumstances do not exist here, Mattel must not be permitted to depose Bryant's counsel. The deposition Mattel seeks would intrude upon privileged matters, unnecessarily disrupt the adversary litigation process, and unreasonably burden and harass Bryant and his counsel. The information Mattel seeks is not crucial to it, and any information that is legitimately discoverable and not privileged is (or could be) available to Mattel from other, less intrusive sources. Accordingly, Bryant requests that the Court deny Mattel's motion to compel Littler's deposition, in its entirety.

## II. BACKGROUND

Littler represented Bryant in this litigation until May 2007. In that role, Littler of course investigated and learned the facts of this case as it deemed strategically necessary and appropriate under the applicable rules. The discoverable results of Littler's investigations—including complete, bit-by-bit forensic images of Bryant's relevant computers and documents contained thereon, and various witnesses' testimony about their history—are already available to Mattel through other sources. Mattel has already probed that wholly irrelevant history *ad nauseum*, and no doubt will seek to probe it further during its additional nine hours to depose Mr. Bryant. By deposing Littler, Mattel seeks to probe not discoverable matters relevant to the underlying litigation, but Littler's management of discovery in this case.

**A. Mattel has inspected and imaged Bryant's computers, and knows their history.**

Mattel has attempted to manufacture issues surrounding Bryant's computers, but the important facts are clear and not subject to dispute: Bryant had and used various computers; Littler secured complete, bit-for-bit forensic images of those computers at the outset of this litigation; and Mattel already has received all information from and directly inspected the computers at issue. Specifically, in October 2000, Bryant purchased and began to use an HP Pavilion desktop computer. In late 2001 or early 2002, he bought a new laptop computer (a Compaq Presario), which replaced the HP Pavilion. In late 2003, well before Mattel began this litigation, Bryant gave his old computer (the HP Pavilion) to his niece, Brooke Gilbert. In July 2004, shortly after this litigation began, Littler obtained that computer from its new owner, Ms. Gilbert, took a complete image of its hard drive, and returned the computer to Ms. Gilbert. Littler produced to Mattel all responsive documents and information contained on that computer, and even provided to Mattel the complete image of its hard drive.

At Mattel's renewed insistence, in 2007, Littler later retrieved the computer once more from Ms. Gilbert and provided the computer itself to Mattel for inspection. Page Decl. Ex. 5.[1] Bryant has also produced for Mattel's inspection his Compaq Presario, and a full forensic image taken of that computer's hard drive in July 2004, in addition to producing all responsive documents from that computer. *Id.* ¶ 3; *id.* Ex. 1. Mattel itself admits that Bryant's counsel has produced to it the 2004 forensic images and both computers. Motion at 8. Mattel has also deposed Mr. Bryant, Ms. Gilbert and Richard Irmen about Mr. Bryant's computers. *See* Page Decl. Exs. 2-4; *id.* ¶ 5. Mattel has at least another nine hours in which it may depose Mr. Bryant further on this topic. Bryant's counsel has also

---

[1] "Page Decl." refers to the Declaration fo Michael H. Page in Support of Carter Bryant's Motion to Quash Mattel's Deposition Subpoena of Littler Mendelson (filed December 12, 2007).

2

CARTER BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

408163.02

explained the history of Mr. Bryant's computers to Mattel's counsel. *E.g.*, *id.* Ex. 5.

Although the software program Evidence Eliminator does appear on Bryant's computers, the program—like many others with less provocative names—is advertised as protecting reasonable security and privacy interests. Thus, for example, Evidence Eliminator's website claims that the program will "Clear your cache and cookies," "erase the temporary internet file folder," and take other steps to "Protect your credit card and personal information!" Trinidad Decl. (filed herewith) Ex. 1. A general consumer website rating the program and other similar privacy protection software alerts consumers that without such privacy software, routine internet activity may expose them to identity theft. *Id.* Ex. 2. And Mr. Irmen, who lived with Mr. Bryant during the relevant time period, testified that he understood that this program was used on those computers to "ke[ep] your files clean from viruses and it kept your computer running tiptop." Page Decl. Ex. 3 at 288:15-19. Moreover, whatever the program's purposes, Mattel offers no reason why it should be allowed to depose *Littler* about the presence of the program, except Littler's purported observation that Bryant's desk top hard drive contained data from 2002 and 2003—which of course would reveal only that Littler had looked at the contents of the drive or the 2004 image thereof. Motion at 8.

**B. Expert testing has not altered or "destroyed" Bryant's original drawings, and Mattel knows the drawings' history and has inspected them.**

Likewise, no mystery justifying deposition of trial counsel surrounds Bryant's original drawings, and the Court has already concluded that the previous testing of the drawings (though technically "destructive" of the tiny samples taken) did not alter the drawings' evidentiary value or in any way affect Mattel's ability to conduct similar testing. Bryant has now produced to Mattel all of his original drawings. Page Decl. Exs. 6-10. Mattel has known since Bryant's November

3

408163.02

CARTER BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

2004 deposition that testing had been done on certain original drawings. December 13, 2007 Declaration of Michael T. Zeller ("Zeller Decl.") Ex. 31 at 14. Mattel also knows, and Judge Larson has concluded, that despite the testing "there has been no alteration, however slight, made to the documents insofar as Mattel's ability to replicate the exact same test is concerned." *Id.* at 15. Mattel (and the Court) have also received the sworn declaration of Erich Speckin, the expert who conducted the testing of Bryant's drawings. Zeller Decl. Ex. 35 (Speckin declaration). Mr. Speckin's declaration explains exactly what types of testing he did, and the care he took in doing it, and (as Judge Larson has recognized) proves that the testing was not "destructive" of Mattel's ability to do similar testing or of the documents' evidentiary integrity. *Id.* ¶ 8; *id.* Ex. 31 at 16. Pursuant to the Discovery Master's August 30, 2007 Order, Mattel had 35 days for the inspection and testing of Bryant's original drawings (including at Mattel's election, destructive testing) in September and October of this year. Page Decl. Ex. 11-12; Trinidad Decl. Ex. 3. Mattel may also depose Mr. Bryant about his drawings, to the extent permissible, during his continued deposition. Mattel will also receive discoverable expert information from Bryant and MGA in due course, under the Court's schedule for expert discovery.

**C. Despite this lack of mystery, Mattel seeks to depose Littler.**

Not content with ordinary means of discovery, however, Mattel has turned its sights directly upon Bryant's former counsel.[2] On August 3, 2007, Mattel issued a document subpoena to Littler seeking, among other things, documents and communications related to Mr. Bryant's computers. *Id.* Ex. 13. Littler timely objected to that subpoena. On September 5, 2007, Mattel issued a subpoena seeking to depose Littler on similar topics, noticing the deposition for September

[2] If the Court does not cut off Mattel's assault upon trial counsel in this case, it will likely expand: Mattel's recent interrogatory responses name MGA's former litigation counsel, O'Melveny & Myers, among persons with knowledge supporting Mattel's claims.

4

CARTER BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

408163.02

19, 2007. *Id.* Ex. 14. The deposition subpoena seeks broad categories of testimony relating to Mr. Bryant's computers and any related storage devices, Littler's communication's with Brooke Gilbert, various declarations filed by Littler in this litigation about Mr. Bryant's computers, Mr. Bryant's fee arrangements in this litigation, and the handling and expert examination of certain original documents. *Id.*

Bryant promptly informed Mattel that the deposition subpoena to Littler was improper, and that Bryant would move to quash it, and the parties and met and conferred about this issue on September 10, 2007. *Id.* Ex. 15. Although the parties were unable to resolve the dispute, they agreed that Littler's deposition would not go forward as noticed, and agreed to meet and confer further about a briefing schedule for Bryant's motion to quash the subpoena, to be coordinated on the same schedule as any motion to compel filed by Mattel against Littler. *Id.*

The parties met and conferred regarding Mattel's document subpoena on September 17, 2007. Because of the overlap in topics between Mattel's two subpoenas to Littler, that conference also necessarily addressed Mattel's proposed deposition topics. During the conference, Bryant informed Mattel that Bryant had no objection to Littler producing any responsive, non-privileged documents in response to the subpoena. Littler informed Mattel that Littler had no such documents. Bryant agreed to review Bryant's files received from Littler for any responsive, non-privileged documents and to supplement Carter Bryant's production with any such documents. *Id.* ¶ 4; *id.* Ex. 16.

Mattel never raised or pursued this issue further after that discussion on September 17, 2007, until November 30, 2007, when, without any preliminary inquiry, Mattel's counsel sent a letter once again threatening a motion to compel Littler to produce documents in response to the document subpoena. *Id.* Ex. 17. Bryant's counsel reminded Mattel of its agreement to resolve any disputes about the Littler subpoenas under a coordinated and mutually agreed-upon briefing

schedule. When the parties remained unable to resolve their disputes about the document subpoena, the parties agreed on a briefing schedule for motions on both Littler subpoenas. Mattel's motion to compel Littler's deposition regarding Bryant's computers and drawings followed,[3] with Bryant's motion to prohibit the deposition entirely.

## III. ARGUMENT

As explained in Bryant's December 13 motion to quash, Mattel's deposition subpoena to Littler seeks non-crucial information available from other sources, encroaches upon privileged and work-product information, and will interfere with the normal adversary litigation process. Littler's deposition would serve no end but harassment. Indeed, Mattel makes only a cursory attempt to satisfy the strict legal test governing depositions of litigation counsel, and instead asks the Court to ignore it. Accordingly, Bryant requests that the Court deny Mattel's motion in its entirety. Fed. R. Civ. P. 26; Fed. R. Civ. P. 45; *Nocal, Inc. v. Sabercat Ventures, Inc.*, No. C 04-0240 PJH(JL), 2004 WL 3174427 (N.D. Cal. Nov. 15, 2004) (quashing subpoena and granting protective order).

### A. Deposing Littler is improper under the well-established *Shelton* rule.

Mattel's deposition subpoena to Littler is improper under the prevailing rule sharply limiting depositions of opposing litigation counsel, set forth in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987). As the *Shelton* court explained, "[t]he harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Id* at 1330. *Shelton* is the leading case on this issue, despite its out-of-circuit origins, and Ninth Circuit district courts have "uniformly followed"

[3] In its motion, Mattel does not claim any right to depose Littler about Bryant's fee arrangements.

6

CARTER BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

408163.02

it. *Lloyd Lifestyle Ltd. v. Soaring Helmet Corp.*, No. C06-0349C, 2006 WL 753243 at *2 (W.D. Wash. Mar. 23, 2006). Mattel does not cite a single case from within the Ninth Circuit in urging the Court to disregard this well-established rule.

Under *Shelton*, deposing an opponent's current or former litigation counsel is proper only in extremely limited circumstances, although not absolutely prohibited. *Shelton*'s restrictions apply to depositions of former as well as current counsel (and even to former counsel in closely related litigation), because courts recognize that harassment of even former counsel disrupts the ordinary litigation process, and is improper. *See Mass. Mutual Life Ins. Co. v. Cerf*, 177 F.R.D. 472 (N.D. Cal. 1998) (Infante, J.) (granting protective order preventing deposition of Cerf's former counsel in the litigation at issue, applying *Shelton*); *FMC Techs., Inc. v. Edwards*, 2007 WL 836709 (W.D. Wash. March 15, 2007) (granting motion to quash deposition subpoena to opponent's former counsel in a related case). Because depositions of opposing counsel are disfavored, the party seeking such a deposition must prove the following three elements:

(1) no other means exists to obtain the information;

(2) the information sought is relevant and non-privileged; and

(3) the information is crucial to the preparation of the case.

*Shelton*, 805 F.2d at 1327. If the party seeking to depose opposing litigation counsel cannot prove all three of these elements, courts will quash the subpoena or enter a protective order prohibiting the deposition. *See, e.g., Dibel v. Jenny Craig, Inc.*, No. 06cv2533 BEN(AJB), 2007 WL 2220987 (S.D. Cal. Aug. 1, 2007) (quashing subpoena seeking deposition of defendant's attorney); *Lloyd Lifestyle Ltd.*, 2006 WL 753243 at *3 (same); *Nocal, Inc.*, 2004 WL 3174427 at *4 (quashing subpoena and granting protective order); *Mass. Mutual Life Ins. Co.*, 177 F.R.D. at 481-82 (granting protective order).

7

CARTER BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

408163.02

**1. Mattel has other sources for all properly discoverable information.**

Because Mattel has other sources for all of the information legitimately discoverable on the topics at issue, deposing Littler would be improper. First, Mattel has ample sources of information about the history of Bryant's computers, the subject of topics 1-5 of the Littler deposition subpoena. In addition to inspecting the computers themselves and images thereof, Mattel already has deposed Mr. Bryant, Ms. Gilbert and Richard Irmen at length about the history of Mr. Bryant's computers, including the dates on which Ms. Gilbert first received the HP Pavilion computer and the dates on which Mr. Bryant's attorneys at Littler at access to it. Mattel will be able to question Mr. Bryant further about his computer history during his continued deposition, which will extend another nine hours. *See* Page Decl. ¶¶ 3, 5; *id.* Exs. 1-4. Likewise, as to topics 7-8, Mattel has both inspected Bryant's original drawings itself, and their expert was given 35 days to inspect and test those drawings under the Discovery Master's August 30, 2007 Order. *Id.* Exs. 7-12; Trinidad Decl. Ex. 3. Mattel has also received Erich Speckin's declaration explaining his testing and handling of the drawings, and the Court held in 2006 that this expert testing did not destroy or alter any evidentiary value of the drawings, rejecting the same claims of spoliation Mattel attempts to revive here. Zeller Decl. Ex. 31 at 14-15 (Order); *id.* Ex. 35 (Speckin declaration). Mattel will also receive expert discovery regarding the defendants' inspection and testing of those documents in due course, under the schedule set for such discovery, and has no right to receive early expert discovery. Mattel has thus had ample opportunity to obtain legitimate discovery on these topics from more direct, less intrusive sources than Littler, and will have more such opportunities in the future. If Mattel is unsatisfied with Bryant's performance of his discovery obligations in this case (including his obligation to comply with the Court's previous discovery orders), the proper remedy is to challenge that performance

8

408163.02

CARTER BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

directly by seeking the Court's intervention, not by seeking to depose Bryant's counsel.

More fundamentally, Littler is not a witness to any underlying events in this case. Like other attorneys whose depositions the courts have barred, Littler has no knowledge related to Mattel's underlying claims (which center on Bryant's history with Mattel and MGA), but only knowledge of how Littler has managed Bryant's affairs in this litigation. That knowledge is protected work product, and is not essential to Mattel or properly discoverable. *See Shelton*, 805 F.2d at 1328 (discussing protected work-product involved in exercise of attorney judgment in preparing client's case, including handling documents). Thus, for example, in *Cerf*, the court declined to permit former opposing counsel's deposition, although the party seeking the deposition claimed that counsel had been involved in "structuring" his client's medical care during a time at issue in the litigation. 177 F.R.D. at 481. The court found it important that counsel had "no firsthand knowledge of facts relevant to [the two key incidents underlying the litigation]." *Id.* at 481-82. Littler has even less firsthand knowledge of any underlying facts, since it served as Bryant's counsel only during this litigation and not during any of the underlying events. Although Littler could confirm the evidence already available to Mattel about its role in, for example, retrieving Mr. Bryant's HP Pavilion from Ms. Gilbert, Littler's deposition may not be required "simply because it would be helpful." *FMC Tech.*, 2007 WL 836709 * 4 (quashing subpoena where other witnesses were available to testify about letters written by counsel).

Litigation counsel will always have access to numerous "facts" about the handling of the litigation, necessarily intertwined with counsel's protected work product. Allowing parties to depose opposing counsel about any such "facts" would eviscerate the *Shelton* rule. *See Shelton*, 805 F.2d at 1327 (finding improper deposition of opposing counsel regarding whether party possessed particular types

9

CARTER BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

408163.02

of documents). Opposing counsel depositions can be proper, and the *Shelton* rule satisfied, only where the attorneys in question have actual involvement in events underlying the litigation, which Littler does not—and even then, the *Shelton* test applies. *Am. Casualty Co. v. Krieger*, 160 F.R.D. 582, 588 (S.D. Cal. 1995) (*Shelton* applies "even where it is clear that the attorney *is* a witness to relevant, nonprivileged events and/or conversations."). *Cf. In re Interactive Network, Inc.*, 243 B.R. 766, 767-68 (Bankr. N.D. Cal. 2000) (allowing the deposition of an attorney who was a witness to basic underlying transactions in the litigation, was not (nor had been) litigation counsel, and whose client indicated he might be a witness at trial). Littler is not such a witness.

**2. Mattel seeks to invade privileged and work-product information.**

Deposing Littler will inevitably intrude upon privileged information and Littler's protected work product. As explained above, any properly discoverable information Mattel seeks from Littler is available from other sources. The only remaining purpose for deposing Littler (aside from harassment and delay) is to invade privileged information and work product. *Shelton* made plain that forcing attorneys to testify about their awareness and handling of client documents or other evidence improperly invades privileged and work product information. *Shelton*, 805 F.2d at 1328. Rejecting claims similar to Mattel's here, *Shelton* found that an attorney's mere knowledge of the existence of certain client documents was protected work product, because she had developed that knowledge only by exercising her professional judgment in preparing her client's case. *Id.* Likewise, Littler's handling of all of the subpoenaed topics, including its communications about those topics, reflects Littler's professional judgment about the important issues, documents, and events in this litigation. The "practice of forcing trial counsel to testify as a witness . . . has been long discouraged" precisely because of its potential to invade such privileged and protected areas, allowing parties to bypass the ordinary tools of discovery to pry directly into their opponents' plans.

10

CARTER BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

408163.02

*Id.* at 1327. As the court explained in *Shelton*, "[t]aking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Id.* Forcing Littler to testify about the subpoenaed topics here would be improper for all these reasons.

**3. Mattel seeks no crucial information from Littler.**

Mattel also cannot prove the third required element of the *Shelton* test, because none of the information Mattel seeks from Littler is crucial to its preparation of this case. *See Shelton*, 805 F.2d at 1327. First, any information that is either available to Mattel elsewhere, or not within the scope of permissible discovery, cannot be considered "crucial" for Mattel to obtain from Littler. As explained above, Mattel has alternate sources for all of the information it has any right to discover, so prohibiting Littler's deposition as to that information cannot affect Mattel's ability to prepare for trial. Likewise, Mattel is not entitled to privileged or work product information, no matter how helpful it claims that information might be to its case, so the privileged and work product information Mattel seeks to intrude upon here cannot be considered "crucial" and used to justify Littler's deposition.

Moreover, the whereabouts and Littler's handling of Mr. Bryant's computers, and all of the other information Mattel seeks from Littler, are not "crucial" to Mattel's case. Even if Mattel could obtain some non-privileged information useful to its case by deposing Littler on these topics (which it cannot), that information would be tangential at best—not crucial—to the actual issues presented in this litigation. *Cf. Am. Casualty*, 160 F.R.D. at 589-91 (allowing deposition of counsel under *Shelton*, subject to partial protective order limiting scope and duration, where counsel was "instrumental" in default judgment and assignment of rights, the validity of which was central to the opposing party's defense). Mattel has images of Bryant's computers, as they were in July 2004, at

11

CARTER BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

408163.02

the outset of this litigation.

Nothing concerning Littler's subsequent handling of those computers could possibly have the slightest relevance to this case. If Littler had tossed both computers off a bridge the day after they were imaged in the summer of 2004, not a bit of relevant evidence would have been lost. That, after all, is the whole point of taking a forensic image: it preserves intact every bit of evidence one could extract from the original computer, frozen in time. Mattel does not need to depose Littler to know what relevant documents were on the computers when Littler imaged them, and the facts of Littler's activities since July 2004 have no relevance to Mattel's claims against Bryant. Similarly, Mattel has inspected and tested Bryant's original drawings, and has received Erich Speckin's explanation of his expert testing procedures. Mattel does not need any testimony from Littler about those drawings' history to support whatever theory about the drawings it intends to present at trial. Nothing Mattel could hope to obtain by deposing Littler is crucial to Mattel's case.

## IV. CONCLUSION

Because Mattel cannot satisfy the *Shelton* test, for all the reasons above, Bryant respectfully requests that the Court DENY Mattel's motion to compel Littler's deposition, in its entirety.

Respectfully submitted,

Dated: December 19, 2007

KEKER & VAN NEST, LLP

By: ______________________________
MICHAEL H. PAGE
Attorneys for Plaintiff
CARTER BRYANT

12

CARTER BRYANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON, P.C.
CASE NO. CV 04-09049 SGL (RNBx)

408163.02