QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]** |
| AND CONSOLIDATED ACTIONS | **MATTEL, INC.'S OPPOSITION TO CARTER BRYANT'S MOTION TO QUASH MATTEL'S DEPOSITION SUBPOENA TO LITTLER MENDELSON, P.C.** |
| | [Declaration of B. Dylan Proctor filed concurrently] |
| | Hearing Date:      January 4, 2008<br>Time:                 TBA<br>Place:                Telephonic |
| | **Phase 1**<br>Discovery Cut-off:      January 28, 2008<br>Pre-trial Conference:  April 21, 2008<br>Trial Date:                May 27, 2008 |

**Preliminary Statement**

As it showed in its motion to compel the deposition of Littler Mendelson ("Littler"), Mattel has legitimate and serious concerns regarding Bryant's former counsel's handling of key evidence, including Bryant's computer hard drives and critical Bratz drawings that are at the heart of this case.  Bryant does not dispute here that Littler had a central role in retrieving and accounting for that evidence. After being forced to bring multiple motions just to gain access to Bryant's computer hard drives—and after receiving numerous conflicting statements from Littler Mendelson regarding whether they even existed—Mattel finally examined them only to discover that the "Evidence Eliminator" software program had been installed and used to permanently wipe data from Bryant's hard drives.  Mattel also discovered that Littler had been involved in the destructive testing of key drawings made by Bryant, without leave of Court or notice to Mattel.

In his motion to quash, Bryant offers no explanation for the at best questionable handling of evidence, and in fact does not even address it, instead claming that Mattel has "attempted to manufacture an air of mystery surrounding Bryant's computers."   The "mystery" is of Littler's creation, based on its inconsistent statements to the Court and Mattel about the hard drives—even to the point of claiming at different points that neither hard drive still existed.  There is also no dispute that the information at issue here is crucial to Mattel's case, and not available from any other source.  Only Littler can provide answers explaining when the hard drives were gathered and how they were maintained.

As anticipated in Mattel's Motion to Compel, Bryant seeks to shield Littler from disclosing purely factual information about the handling of evidence by relying on <u>Shelton</u>.  Even if the Court were to apply that inflexible test, the circumstances here are readily distinguishable, primarily because spoliation of critical evidence is at issue.  No case immunizes former counsel from providing testimony about crucial facts which only it can provide.

**Factual Background**

The relevant factual background is set forth by Mattel in its motion to compel the deposition of Littler.  Mattel respectfully incorporates that full recitation herein by reference.[1]  In brief, the material facts—which Bryant has largely and tellingly omitted from the Motion to Quash—are as follows:

In November 2004, Littler represented that it had located Bryant's desktop hard drive, but that it did not contain any responsive documents.[2]  Littler reiterated this claim in response to Mattel's January 2005 motion to compel the production of the drive, stating that counsel had "extensively" examined the Desktop and spent "scores of attorney hours" searching for responsive documents, but found none.[3]  Again, in January 2007, Littler represented to the court that it had searched the Desktop hard drive, but did not find "any responsive documents or relevant

---

[1]   See Mattel, Inc.'s Notice of Motion and Motion to Compel Deposition of Littler Mendelson, P.C. Pursuant to Subpoena, dated December 13, 2007 ("Motion to Compel"), at pp. 2-10.

[2]   Letter dated November 1, 2004 from Keith Jacoby, counsel for Bryant, to John Quinn and Michael Zeller, counsel for Mattel, at p. 2, attached as Exhibit 4 to the Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion to Compel Deposition of Littler Mendelson, P.C. Pursuant to Subpoena, dated December 13, 2007 ("Zeller Dec.") ("Regarding [Mattel's] requests to inspect Mr. Bryant's home computer, I have made further inquir[i]es on that subject to Mr. Bryant and my colleagues.  Mr. Bryant did not own a home computer during his time at Mattel.  He later purchased a computer, which he used for a time, and then gave away to his niece.  That computer has been retrieved and searched for responsive documents, and none have been located.  Mr. Bryant declines to produce his hard drive for inspection for the reasons articulated in his response to Mattel's document request.").

[3]   Joint Stipulation at 62:2-13, 18-20, Zeller Dec., Exh. 5; 2005 Jacoby Dec. at ¶¶ 23, 24, Zeller Dec., Exh. 6.

information" on it.[4]  It also represented that the only hard drive that could be located was the Desktop hard drive.[5]

The Discovery Master ordered Bryant to produce his hard drives.[6] Shortly after the  deadline for production, Littler claimed that it could not locate the Desktop drive, and that it was "not sure" about the accuracy of its prior representations—i.e., that the Desktop drive had been retrieved from Bryant's niece—and that it may have been "wrong".[7]  In addition, it stated for the first time— years into this litigation—that it had in its possession images of two other computer hard drives, including the laptop drive, that had been made in 2004 after this suit was filed and before it had represented to the Court that it had searched for and found only one hard drive, i.e., from the Desktop.[8]

Mattel then moved to enforce the Court Order requiring production of the Desktop drive.[9]  The day before Littler's Opposition was due, it reversed course without explanation, and stated that it had found the drive and would make it available for inspection.[10]  Mattel imaged that drive, and took its motion off

---

[4]   2007 Jacoby Dec., ¶ 31, Zeller Dec., Exh. 10.
[5]   Separate Statement of Defendant Carter Bryant in Opposition to Mattel's Motion to Compel, filed on January 11, 2007 ("Bryant's 2007 Separate Statement") at 39, Zeller Dec., Exh. 9; Declaration of Keith A. Jacoby in Support of Carter Bryant's Opposition to Mattel, Inc.'s Motion to Compel Production of Documents (excerpted and without exhibits) ("2007 Jacoby Dec.") at ¶ 31, Zeller Dec., Exh. 10.
[6]   Order of the Discovery Master Hon. Edward Infante (Ret.) dated January 25, 2007 at 17, Zeller Dec., Exh. 11.
[7]   Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Zeller Dec., Exh. 21; Zeller Dec. ¶ 25.
[8]   Id.
[9]   See Notice of Motion and Motion of Mattel, Inc. for an Order to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop Computer Hard Drive, dated April 10, 2007, Zeller Dec., Exh. 23.
[10]   Letter dated April 23, 2007, from Keith A. Jacoby to Michael Zeller. Zeller Dec., Exh. 24.

1  calendar.[11]  Shortly after, Littler withdrew as counsel and was replaced by Bryant's

2  current counsel, Keker & Van Nest.[12]  Keker subsequently produced the Laptop

3  drive and the image.

4           Upon reviewing the drives, Mattel discovered that a software program

5  called "Evidence Eliminator" had been installed and used on the drives.[13]  That was

6  never previously disclosed by Littler or Bryant.

7           **<u>Destructive Testing of the Bratz Drawings.</u>**  Mattel uncovered

8  evidence in 2004 that Littler had engaged in destructive sampling of the original

9  Bratz drawings without notice to the Court or Mattel.[14]  In sworn declarations,

10  Littler initially denied that anyone had engaged in destructive sampling or analysis

11  of Bryant's original drawings[15]—only to later admit that such sampling had been

12  done after Mattel filed a motion with the Court.[16]  In ruling on that motion, the

13  Court recognized that defendants' handling of these "critical documents" raised

14  "serious questions . . . [which cause] the Court much concern about whether the

15  truth seeking functions of the adversarial system have been fundamentally

16  compromised in this case."[17]

17

18  _____

19  [11]   Mattel, Inc.'s Notice of Withdrawal Without Prejudice of Motion for an Order

20  to Enforce Court's January 25, 2007 Order Compelling Bryant to Produce Desktop
Computer Hard Drive, Zeller Dec., Exh. 25.

21  [12]   Request for Approval of Substitution of Attorney, dated May 18, 2007, Zeller

22  Dec., Exh. 26.

23  [13]   Zeller Dec. ¶ 30, Exh. 27.

[14]   Court's Order Denying Appointment of Expert Witnesses ("Expert Witnesses

24  Order"), dated August 11, 2006, at 4:19-7:3, Zeller Dec., Exh. 31.

25  [15]   Declaration of Keith Jacoby in support of Bryant's portion of Joint Stipulation
Re: Mattel, Inc.'s Motion to Compel Inspection of Original Documents and

26  Tangible Things, filed February 18, 2005, ¶ 11, Zeller Dec., Exh. 34.

27  [16]   Declaration of Erich J. Speckin, dated July 21, 2006, ¶¶ 8, 13, Zeller Dec.,
Exh. 35.

28  [17]   Expert Witnesses Order at 11:10-13, Zeller Dec., Exh. 31.

**Mattel Serves Subpoenas on Littler Mendelson.**  Faced with Littler's contradictory statements about the hard drives, and apparent spoliation of evidence with regard to the original Bratz drawings, Mattel served a subpoena on Littler for documents[18] and a Rule 30(b)(6) subpoena to depose Littler.[19]  Bryant took the position that he had no objection to production of documents, but that Littler had no responsive, non-privileged documents in its possession.[20]  Bryant refused to allow the deposition, arguing that it was barred in its entirety under Shelton v. Amer. Motors Corp., 805 F.2d 1323 (8th Cir. 1986).

## Argument

## I.   AS SET FORTH IN MATTEL'S MOTION, THE SHELTON RULE DOES NOT APPLY IN THESE CIRCUMSTANCES

Mattel submits that whether or not the Shelton test is followed here, the deposition should go forward.  However, as stated in Mattel's Motion, there are compelling reasons here not to apply it in these circumstances.  First, the Ninth Circuit has never approved of its test, and other courts have found it to be inappropriately inflexible.  See, e.g., In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003) (rejecting Shelton rule and stating, "the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship"); qad.inc v. ALN Associates, Inc., 132 F.R.D. 492, 495 (N.D. Ill. 1990) ("[T]his Court subscribes wholeheartedly to a procedure that rejects any prior restraint in favor of permitting the deposition to go forward, with any individualized objections to be dealt with during its regular course.");

---

[18]  Zeller Dec., Exh. 28.
[19]  Zeller Dec., Exh. 29.
[20]  Zeller Dec., Exh. 30.

1   Cook, Inc. v. C. R. Bard, Inc., 2003 WL 23009047, *1 (S.D. Ind. 2003) ("[T]he

2   Court finds that it was not error for the Magistrate Judge to decline to follow

3   Shelton and permit the deposition of Mr. Godlewski to proceed.").

4               Second, Littler is former, not current trial counsel, and so the

5   considerations inherent in Shelton do not apply here.  The core purpose of the

6   Shelton test is to protect a party from a trial-counsel deposition that might disclose

7   strategies and otherwise harass and disrupt trial-counsel.  "The Shelton test was

8   intended to protect against the ills of deposing opposing counsel in a pending case

9   which could potentially lead to the disclosure of the attorney's litigation strategy."

10  Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730 (8th Cir. 2002).  The Littler

11  deposition poses no such danger.  Apart from the fact that Mattel will not be

12  questioning Littler on litigation strategy, Littler has withdrawn as Bryant's counsel,

13  and been replaced by Keker & Van Nest.  The Shelton test should not be applied

14  here. See, e.g., Carey v. Textron, Inc. (E-Z-Go Textron), 224 F.R.D. 530, 532 (D.

15  Mass. 2004) ("Moreover, the fact that Attorney Gelineau no longer represents Carey

16  in this matter reduces the degree [of] interference that any deposition of him would

17  introduce. He, presumably, does not possess information concerning Plaintiff's

18  current litigation strategy."); Calvin Klein Trademark Trust v. Wachner, 124 F.

19  Supp. 2d 207, 211 (S.D.N.Y. 2000) (noting that counsel's role in litigation was

20  "peripheral" and refusing to apply Shelton on that basis); Nakash v. U.S. Dept. of

21  Justice, 128 F.R.D. 32, 34 (S.D.N.Y. 1989) ("[T]he major rationales in these cases—

22  discouraging the depositions of opposing attorneys in a particular lawsuit to avoid

23  unnecessary expense and interference with the attorney-client relationship—are not

24  applicable here.").

25              For the same reasons, Littler is no longer preparing Bryant's case for

26  trial.  Accordingly, the concern that counsel will be distracted or unable to "devote

27  his or her time and efforts to preparing the client's case" if faced with a deposition

28  simply does not apply.  Shelton, 805 F.2d at 1327.  Nor could this have a chilling

1   effect on future communications with Littler, id., or lead to the disqualification of

2   counsel who may be called as witnesses.  See Kaiser v. Mutual Life Ins. Co. of New

3   York, 161 F.R.D. 378, 382 (S.D. Ind. 1994).

4   **II.      BRYANT'S RELIANCE ON SHELTON IS MISPLACED**

5              In his motion to quash, Bryant largely ignores the facts surrounding

6   Littler's conflicting representations and admitted mishandling of evidence.  Bryant

7   resorts to an inapt argument that Mattel has "attempted to manufacture an air of

8   mystery surrounding Bryant's computers," and seeks to depose Littler on "wholly

9   irrelevant" topics.  (Motion to Quash at pp. 1-2.)  Despite the rhetoric, Bryant does

10  not and cannot take issue with his and Littler's own contradictory statements, nor the

11  fact that Littler—and Littler alone—can provide the necessary factual information to

12  explain how key evidence was handled, when and how the drives were imaged, and

13  in whose possession they have been during the various purported disappearances

14  (and reappearances) of crucial evidence.

15             This is scarcely speculation on Mattel's part.  After attempting to gain

16  access to Bryant's computer hard drives for years, and after repeated and conflicting

17  claims regarding the existence, handling and condition of those drives, Mattel

18  finally learned that Evidence Eliminator—a software program specifically designed

19  to destroy evidence so that it cannot be used in legal proceedings—had been

20  installed and used on the drives.  Such possible spoliation of evidence is of obvious

21  concern to the Court and the parties, and carries with it significant consequences.

22  Although Bryant predictably wishes to put this sequence of events behind him,

23  Mattel has every reason to investigate the extent to which evidence has been

24  compromised.  And, while Bryant claims that this is an "irrelevant" topic, he is

25  obviously mistaken.  The Discovery Master, in compelling the production of the

26  drives, found them to be material.

27             Moreover, and as discussed in more detail in Section II(C), below, only

28  Littler can provide the information Mattel seeks.  Littler was the one involved in

1  gathering and purportedly preserving evidence.  Littler is the repository of

2  information regarding the destructive sampling done on the Bratz drawings.  No

3  other witness can speak to what has happened to documents while they were in the

4  possession of Littler, as far as Mattel is aware, and Bryant identifies no such other

5  witnesses.

6      **A.**    <u>**Mattel's Questioning Regarding Gathering, Preservation and**</u>

7              <u>**Destruction of Evidence Does Not Invade the Work Product**</u>

8              <u>**Doctrine**</u>

9          Instead of acknowledging this troubling history, Bryant attempts to

10  shield himself from any inquiry by invoking <u>Shelton</u>.  Although <u>Shelton</u> does

11  explain a rationale for shielding *current* trial counsel from depositions which are

12  harassing and not directed at obtaining significant evidence which counsel alone can

13  provide, even by that rationale the deposition here should go forward.  <u>Shelton</u>

14  permits such discovery where (1) the information sought is relevant and non-

15  privileged; (2) the information is crucial to the preparation of the case; and (3) no

16  other means exists to obtain the information at issue than to conduct the deposition.

17  As explained in Mattel's Motion to Compel, those criteria are in any event met here,

18  where in Judge Larson's own words there are already serious questions as to whether

19  "the truth seeking functions of the adversarial system have been fundamentally

20  compromised in this case."[21]

21          Mattel is seeking relevant and non-privileged information.  The

22  spoliation of evidence, including from Bryant's hard drives—and in addition by way

23  of destructive handling of key Bratz drawings—is specifically referenced in Mattel's

24  answer and counterclaims.[22]

25  

26  

[21]  Expert Witnesses Order at 11:10-13, Zeller Dec., Exh. 31.

[22]  Mattel, Inc.'s Second Amended Answer In Case No. 05-2727, dated July 12, 2007 (without exhibits), at ¶ 93(c), Zeller Dec., Exh. 36 ("Counter-defendants
    (footnote continued)

1    Littler also unquestionably has knowledge of spoliation in this case.

2    Littler's frequent and contradictory statements to Mattel and to the Court themselves

3    establish the point.  In pleadings filed with the Court, declarations signed under

4    penalty of perjury, and letters to Mattel's counsel, Bryant and his counsel have stated

5    that the only hard drive they could find was that on his Desktop, and that his counsel

6    had "tirelessly" and "extensively" inspected that drive, and found no relevant

7    documents.[23]  Since then, however, Bryant and Littler have changed their story

8    several times, first stating that they possessed multiple drives containing responsive

9    information, only to then claim that they did not have the Desktop hard drive and

10   that their earlier representations about having retrieved the Desktop hard drive and

11   inspected it were apparently "wrong."[24]  Then, when faced with a motion to compel,

12   Littler announced that the drive had been suddenly recovered and finally made it

13   available for inspection by Mattel.[25]

14   In addition—and as Bryant ignores—Littler has also been instrumental

15   in the destructive sampling of physical evidence.  That destructive handling of the

16   original Bratz drawings prompted Judge Larson to write that defendants' treatment

17   ———————————————

18   MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant,
     Machado and Does 4 through 10, aided and abetted by each other and some or all of

19   the remaining members of the MGA Criminal Enterprise, did corruptly alter,
     destroy, mutilate, or conceal more than one record, document, or other object, or

20   attempted to do so, with the intent to impair the object's integrity or availability for
     use in an official proceeding, including this action, including without limitation by .

21   . . destroying electronic and other evidence, including by **destroying evidence**

22   **previously contained on Carter Bryant's and Isaac Larian's computer hard**

23   **drives**.") (emphasis added); see also id. at ¶ 53 (alleging that Machado destroyed his

24   Mattel hard drive to conceal evidence).

25   [23]  Joint Stipulation at 62:2-13, 18-20, Zeller Dec., Exh. 5; 2005 Jacoby Dec. at
     ¶¶ 23, 24, Zeller Dec., Exh. 6.

26   [24]  Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Zeller
     Dec., Exh. 21; Zeller Dec. ¶ 25.

27   [25]  Letter dated April 23, 2007, from Keith A. Jacoby to Michael Zeller. Zeller

28   Dec., Exh. 24.

1   of these "critical documents" raises "serious questions . . . [which cause] the Court

2   much concern about whether the truth seeking functions of the adversarial system

3   have been fundamentally compromised in this case."[26]  Such information is

4   unquestionably relevant, and Judge Larson clearly so found.  Indeed, aside from a

5   mere conclusory statement that the topics are "wholly irrelevant," Bryant does not

6   provide any argument to the contrary on this issue. (Motion to Quash at 1.)

7   Moreover, on that motion as well, Littler had submitted a declaration to the Court

8   that was misleading at best, initially denying any testing was done on the drawings:

9              There is no evidence that Bryant has conducted or intends

10             to conduct any destructive testing of the original

11             documents at issue, because no such testing has occurred

12             or will take place.  Bryant has every interest in preserving

13             all the documentary evidence in his possession, given that

14             it refutes Mattel's claims *and* supports his counter-

15             claims.[27]

16             Bryant asserts that the information Mattel seeks is privileged. (Bryant

17   Motion at 8.)  This overstates both the boundaries of the privilege and the nature of

18   the information sought by Mattel, which are facts regarding the gathering and

19   preservation of evidence.  Such factual information is not protected by the work

20   product doctrine.

21             Bryant cites <u>Shelton</u>—and no other case—for the claim that

22   information regarding the handling of evidence is privileged because an attorney's

23   knowledge of such evidence implicates her professional judgment in preparing the

24   case.  Those concerns are not at issue here.  The <u>Shelton</u> court noted that the

25

26   [26]  Expert Witnesses Order at 11:10-13, Zeller Dec., Exh. 31.

27   [27]  Declaration of Keith Jacoby in support of Bryant's portion of Joint Stipulation Re: Mattel, Inc.'s Motion to Compel Inspection of Original Documents and

28   Tangible Things, filed February 18, 2005, ¶ 11, Zeller Dec., Exh. 34.

1   attorney being deposed had memories regarding specific documents, but not others.

2   She only had information regarding certain documents because she had reviewed

3   them in preparing her client's case.  "In these circumstances Burns' recollection of

4   the documents concerning a certain subject will be limited to those documents she

5   has selected as significant and important with respect to her legal theories."  Shelton

6   v. Amer. Motors Corp., 805 F.2d 1323, 1328 (8th Cir. 1986).

7                     In clear contrast here, Mattel's subpoena is directed at the handling of

8   evidence Mattel believes, and the Court has found, is relevant and even crucial.  The

9   distinction is an important one.  Courts have found that questions regarding the

10  existence, preservation, and/or handling of documents—rather than which ones an

11  attorney believes are important—do not invade the work product doctrine.  See, e.g.,

12  Carey v. Textron, Inc. (E-Z-Go Textron), 224 F.R.D. 530, 531 (D. Mass. 2004)

13  (holding that party was "entitled to discover the condition of the [piece of evidence],

14  efforts to preserve it and how it was eventually lost," and finding that this did not

15  infringe on work product); Riddell Sports Inc. v. Brooks, 158 F.R.D. 555, 559

16  (S.D.N.Y. 1994) ("[T]he collection of evidence, without any creative or analytic

17  input by an attorney or his agent, does not qualify as work product."); In re Grand

18  Jury Subpoenas dated March 9, 2001, 179 F. Supp. 2d 270, 284 (S.D.N.Y. 2001)

19  (same); In re Automotive Refinishing Paint Antitrust Litigation, 2006 WL 1479819,

20  *7 (E.D. Pa. 2006) (permitting discovery regarding existence of evidence;

21  "Defendants just want to know whether Plaintiffs possess any such documents at all.

22  They are merely seeking to uncover the factual basis for Plaintiffs' claims—the

23  central purpose of discovery.").  Similarly, Judge Larson has already determined

24  that factual information concerning evidence preservation is not privileged when he

25

26

27

28

-11-

1   ordered all parties to submit affidavits setting forth those facts in detail.[28]

2   Questioning Littler about facts regarding the mere existence, handling, or

3   preservation of evidence does not invade the work product doctrine.

4          Further, to the extent Bryant has legitimate basis to assert privilege or

5   work product to questions while at the deposition, that is no reason to preclude *all*

6   questioning.  Instead, such issues can and should be considered on a question-by-

7   question basis, with Bryant asserting instructions during the course of the deposition

8   according to the usual rule.  E.g., Nash v. Waddington, 2006 WL 1207903, at *1

9   (W.D. Wash. 2006) ("While the attorney-client privilege may certainly be a proper

10  objection to certain discovery questions, the court is not persuaded that the privilege

11  may be used as a blanket refusal to any discovery."); Green v. Baca, 226 F.R.D.

12  624, 652 (C.D. Cal. 2005) ("Like his claim of attorney-client privilege, defendant's

13  blanket invocation of the work product doctrine is not a sufficient basis to exclude

14  Bobb's testimony in it entirety.").  Indeed, MGA raised similar privilege arguments

15  when Mattel sought MGA's testimony on its Rule 30(b)(6) Topic related to the

16  destructive testing of the Bratz drawings on Mattel's motion to compel depositions

17  pursuant to 30(b)(6),[29] and they were rejected by the Discovery Master and by Judge

18  Larson.[30]

19

20

21

22   _____

23   [28]   See Order Denying Motion For Terminating Sanctions; Order Denying
     Request For Interlocutory Appeal; Order Requiring Filing Of Affidavits Re
24   Evidence Preservation, dated August 29, 2007, Zeller Dec., Exh. 37.

25   [29]   MGA Entertainment Inc.'s Opposition to Mattel, Inc.'s Motion to Compel
     MGA to Produce Witnesses for Deposition Pursuant to Rule 30(B)(6) and for
26   Sanctions, dated April 30, 2007, attached as Exhibit 1 to the concurrently filed
     Declaration of B. Dylan Proctor ("Proctor Dec.").

27   [30]   Order Granting Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses
28   for Deposition Pursuant to Rule 30(b)(6), dated May 16, 2007, Proctor Dec., Exh. 2.

1   Bryant has provided no basis to believe that <u>Shelton</u>'s rulings apply to

2   preservation or spoliation of evidence.  The information at issue is both relevant and

3   non-privileged.  Mattel therefore satisfies the first prong of the <u>Shelton</u> test.

**B.** **<u>The Motion to Quash Assumes Without Showing That Littler's Handling of Critical Evidence Cannot be Probative of A Spoliation Claim</u>**

7   Bryant claims that information regarding Littler's handling of critical

8   evidence, and the integrity of that evidence in the form of the imaged drives

9   provided to Mattel, cannot be crucial to Mattel's case because spoliation never

10  occurred.  That argument assumes the conclusion, and begs the question the Littler

11  deposition is designed to answer: namely, when and how the drives were imaged,

12  and the extent to which they have been protected and did not have data deleted.

13  Bryant's assumption is that, since images of the drives exist, Littler may as well

14  have "tossed both computers off a bridge" and that conduct would be irrelevant.

15  (Motion to Quash at 9-10.)  Of course, it is the very authenticity and integrity of

16  these images that is the purpose of Mattel's deposition and to which Mattel is

17  entitled discovery.  Similarly, Bryant argues that since Mattel has inspected the

18  damaged Bratz drawings, Mattel has no further need to inquire into how they were

19  damaged, and the extent of that damage.  Bryant's unsupported assumption that

20  neither he nor his counsel were engaged in spoliation of evidence, and thus that the

21  information Mattel seeks about the handling of evidence cannot be crucial to its

22  case, has it backwards.  It is the very purpose of the deposition to determine whether

23  this assumption is unfounded, which it very likely seems to be.

24  If Bryant has engaged in spoliation, that fact would be crucial to

25  Mattel's preparation of its case.  <u>See, e.g.</u>, <u>Leon v. IDX Systems Corp.</u>, 464 F.3d

26  951, 961 (9th Cir. 2006) (affirming dismissal of action for deletion of files from

27  computer hard drive); <u>Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.</u>, 2003 WL

28  21230605, *6 (N.D. Ill. 2003) (dismissing action for use of Evidence Eliminator

1  software to delete computer files).  At the least, such spoliation would potentially

2  give Mattel a valuable presumption at trial of Bryant's work on Bratz while

3  employed at Mattel.  See, e.g., Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir.

4  1993).  In addition, such destruction is germane to establishing Mattel's RICO

5  claims and indeed are specifically alleged as predicate acts.[31]  In either case,

6  information regarding spoliation would be crucial to Mattel in preparing its case.

7    **C.**    **The Depositions of Richard Irmen and Brooke Gilbert Do Not**

8         **Provide the Information Mattel Seeks**

9         Finally, there are no other means of acquiring the factual information at

10  issue here.  Bryant claims that Mattel has obtained much of the information it needs

11  from Richard Irmen and Brooke Gilbert, and can gather the rest at a future

12  deposition of Carter Bryant.  Those transcripts show that only Littler knows what it

13  has done with respect to the hard drives while they were in its possession.  Thus, for

14  example, Richard Irmen repeatedly stated that he had no information regarding

15  where the hard drives were taken once imaged,[32] and that Bryant may have been out

16  of town at the time.[33]  Even on the one topic Bryant cites this deposition testimony

17  for—installation and use of Evidence Eliminator—the transcripts demonstrate that

18  the witnesses did not have all the necessary information.  Brooke Gilbert testified

19  that she knows nothing at all regarding installation of Evidence Eliminator and

20  indeed, had never even heard of it.[34]  Richard Irmen testified that he was "computer

21  illiterate" and could not say whether any data was deleted after April 2004 using the

22

23

24   _____

25  [31]   Mattel, Inc.'s Second Amended Answer In Case No. 05-2727, dated July 12, 2007 (without exhibits), at ¶ 93(c), Zeller Dec., Exh. 36.

26  [32]   Deposition of Richard Irmen at 300:15-301:5; 302:18-22, Proctor Dec., Exh. 3.

27  [33]   Id. at 300:4-8.

28  [34]   Deposition of Brooke Gilbert at 34:7-18, Proctor Dec., Exh. 4.

1   Evidence Eliminator program.[35]  Similarly, Carter Bryant testified that he had no

2   information regarding the destructive sampling of the Bratz drawings and had no

3   idea why there were holes in his drawings.[36]

4          This is not surprising.  Given the types of questions Mattel seeks to ask,

5   no other witness could have the same information.  Littler arranged for and oversaw

6   the imaging of the drives.  Only Littler can explain how the Desktop drive was

7   temporarily "lost," and whether it ever left its possession.  Only Littler can explain

8   the factual bases of its inconsistent statements to Mattel and to the Court regarding

9   its gathering, review, and production of those drives.  Moreover, with regards to the

10  Bratz drawings, it is Littler which has the information about the destructive handling

11  of them.

12         Mattel has exhausted other means of obtaining the evidence; Mattel has

13  already attempted to investigate through the use of a document subpoena on Littler,

14  but no responsive documents have been produced.  As explained in Mattel's Motion

15  to compel, by its nature, investigation of spoliation requires the ability to ask follow-

16  up questions to ferret out the truth, something that interrogatories or other written

17  discovery cannot offer.

18         Thus, even if the Shelton test were applied, Mattel has satisfied each

19  prong of that test.

20

21

22

23

24

25

26

_____

27  [35]  Id. at 307:22-308:8.

28  [36]  Bryant Deposition at 460:2-16, Zeller Dec., Exh. 3.

1

2                                  **<u>Conclusion</u>**

3              For the foregoing reasons, Mattel respectfully requests that Bryant's

4   motion to quash the deposition subpoena on Littler Mendelson, P.C. be rejected in

5   its entirety.

6

7   DATED:  December 19, 2007          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
8

9                                      By /s/ James J. Webster
10                                        James J. Webster
                                          Attorneys for Mattel, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-