# EXHIBIT 1

RECEIVED

APR 3 0 2007

1  DALE M. CENDALI (admitted *pro hac vice*)
   DIANA M. TORRES (S.B. #162284)
2  JAMES P. JENAL (S.B. # 180190)
   O'MELVENY & MYERS LLP
3  400 South Hope Street
   Los Angeles, CA 90071-2899
4  Telephone:  (213) 430-6000
   Facsimile:  (213) 430-6407
5  Email:      jjenal@omm.com

6
7  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK, JACOBS,
   WEIL & SHAPIRO, LLP
8  10250 Constellation Boulevard, 19th Floor
   Los Angeles, CA 90067
9  Telephone:  (310) 553-3000
   Facsimile:  (310) 557-9815
10
   Attorneys for MGA Entertainment, Inc.

11

12

13

14  **UNITED STATES DISTRICT COURT**

15  **CENTRAL DISTRICT OF CALIFORNIA**

    **EASTERN DIVISION**

16

| 17 | CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727) |
|---|---|---|
| 18 | Plaintiff, | |
| 19 | v. | **DISCOVERY MATTER** |
| 20 | MATTEL, INC., a Delaware Corporation, | **MGA ENTERTAINMENT INC.'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6) AND FOR SANCTIONS** |
| 21 | Defendant. | |
| 22 | | |
| 23 | | [To be heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to the Court's Order of December 6, 2006] |
| 24 | | |
| 25 | CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Hearing Date:  T.B.D. |
| 26 | | Time:          T.B.D. |
| | | Location:     T.B.D. |

27

28

!A2:829382.1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................1

II.   FACTUAL BACKGROUND.....................................................................1

III.  ARGUMENT..............................................................................................3

    A.    Mattel's Motion To Compel Should Be Denied As Moot
         Because MGA Has Already Designated Or Offered To
         Designate Witnesses For 46 of Mattel's 54 Topics Of
         Deposition Testimony ...................................................................4

    B.    Mattel's Motion To Compel For The Few Remaining Topics
         Should Also Be Denied ..................................................................5

        1.    Mattel's Motion to Compel on Topic 24, Regarding Any
              Fee Agreements Between MGA And Bryant, Seeks
              Information That is Privileged And Should Be Denied..............5

        2.    Mattel's Motion to Compel on Topic 25, Related to
              MGA's Revenue And Profit Information, Should Also Be
              Denied ..............................................................................6

        3.    Mattel's Motion to Compel Testimony on MGA's Net
              Worth and Expert Analysis (Topics 26 and 41) Should Be
              Denied As Premature Because It Seeks Testimony That is
              Properly The Subject of Expert Discovery ...............................7

        4.    Mattel's Motion to Compel on Topics 31 and 33, Related
              to Prior Work By Unidentified Individuals and Patents,
              Should Be Denied Because Such Information is Not
              Relevant To This Action ........................................... 10

        5.    Mattel's Motion to Compel Testimony on Topic 34,
              Which Relates to Prior Testimony of Unidentified
              Individuals, Should Also Be Denied....................... 11

    C.    Mattel's Arguments Regarding Application of Section 2019.210
         Are Improper As This Issue Is Currently Pending Before Judge
          Larson .............................................................................. 12

    D.    Mattel's Requests For Sanctions Should Be Denied......................... 14

IV.   CONCLUSION........................................................................................ 14

EXHIBIT __1__ PAGE __4__

# TABLE OF AUTHORITIES

Page

## CASES

*Advanced Modular Sputtering, Inc. v. Superior Court,*
132 Cal. App. 4th 826 (2d Dist. 2005).................................................. 13

*Cobb v. Superior Court,*
99 Cal. App. 3d 543 (1980) ..................................................................8

*Computer Economics Inc. v. Gartner Group Inc.,*
50 F. Supp. 2d 980 (S.D. Cal. 1999)............................................. 13, 14

*Covington v. Semones,*
2007 WL 1052460 (W.D. Va. 2007) .................................................. 12

*Diodes, Inc. v. Franzen et al.,*
260 Cal. App. 2d 244 (2d Dist. 1968).................................................. 13

*Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc,*
2007 WL 273949 (E.D. Cal. 2007)....................................................... 13

*KL Group v. Case, Kay & Lynch*
829 F.2d 909 (9th Cir. 1987)..................................................................6

*Rupe v. Fourman,*
532 F. Supp. 344 (S.D. Ohio 1981) .......................................................8

*Star Editorial, Inc. v. U.S. Dist. Ct. for the Central Dist. of California,*
7 F. 3d 856 (9th Cir. 1993)......................................................................6

*Vermont Microsystems, Inc. v. Autodesk, Inc.,*
88 F.3d 142 (2d Cir. 1996).................................................................... 13

## STATUTES

Federal Rule of Civil Procedure 26(a)(2)(C) ..........................................9

Cal. Bus. & Prof. Code § 6149 ...............................................................6

Cal. Civ. Code § 3295(c).........................................................................8

Cal. Code Civ. Proc. § 2019.210............................................................ 13

## RULES

Federal Rule of Civil Procedure 26(a)(2)(C) ........................................ 10

Federal Rule of Evidence 501 .................................................................7

EXHIBIT __1__ PAGE __5__

## **INTRODUCTION**

Mattel, Inc.'s ("Mattel") 80-page motion and approximately 575 pages of accompanying declarations and exhibits, is an attempt to give the misleading impression to the Court, through volume, rather than substance, that MGA Entertainment, Inc. ("MGA") is refusing to offer witnesses in response to Mattel's overreaching 30(b)(6) notices. Contrary to Mattel's insinuation, however, MGA has designated and provided deposition dates for all but a few objectionable topics on which the parties disagree, or where Mattel had agreed to provide additional information so that MGA could designate an appropriate witness. When MGA pointed this out to Mattel and asked Mattel to withdraw its motion as to everything but the few topics on which the parties genuinely disagree, so as to avoid burdening the Court with these issues, however, Mattel refused.

For the reasons discussed herein, Mattel's motion to compel and for sanctions should be denied.

## **FACTUAL BACKGROUND**

On March 15 and 16, 2007, counsel for MGA met and conferred with Mattel regarding Mattel's First Rule 30(b)(6) Notice ("First Notice") and Second Rule 30(b)(6) Notices ("Second Notice") of Deposition. During the conference of counsel MGA attempted to reach agreement with regard to the topics the parties disagreed on, as well as to seek clarification on issues related to various other topics. (*See* Declaration of Yvonne L. Garcia ("Garcia Decl.") filed concurrently, ¶ 2.) MGA repeatedly requested that Mattel consider the concerns raised by MGA, but Mattel, even with respect to the issues that it had explicitly agreed to contemplate further, never responded. (*Id.* ¶ 6.)

Thereafter, on March 21, 2007, the parties discussed the upcoming deposition of Paula Garcia. In particular, MGA informed Mattel that very few documents had been produced by Mattel related to work Mattel claims Ms. Garcia

1   did while at Mattel in connection with "Diva Starz," and that MGA has not seen

2   any such documents other than a few produced in unrelated litigation. (*See*

3   Declaration of Diana M. Torres ("Torres Decl.") filed concurrently, ¶ 2.) MGA

4   also stated that although the Protective Order in this case allows the parties to show

5   a witness any document that she would have seen in the ordinary course of

6   business, many of the "Diva Starz" documents produced by Mattel were drawings

7   marked "Attorney's Eyes Only" and did not indicate to whom they were circulated.

8   Thus, MGA could not properly prepare Ms. Garcia for her deposition with regard to

9   this topic. (*Id.*) Mattel, thus volunteered to produce any "Diva Starz" documents

10  reflecting work by Ms. Garcia and to identify the documents that Mattel contends

11  Ms. Garcia saw or otherwise had access to so that MGA could prepare her for

12  deposition. (*Id.*)

13        Thereafter, on April 5, 2007, MGA sent a letter to Mattel in follow up to the

14  conversation between the parties on March 21.  MGA again inquired as to Mattel's

15  agreement to identify documents it contends Ms. Garcia saw or to which she had

16  access at Mattel related to "Diva Starz," as Mattel had not yet produced or

17  identified such additional documents. (*Id.* ¶ 3 & Ex. 1.) MGA also requested that

18  the parties move Ms. Garcia's deposition to some time during the week of May 9 -

19  May 17, 2007, because her current deposition date posed a conflict for Bryant's

20  counsel. (*Id.*) MGA also noted that this would allow Mattel further time to provide

21  the documents or Bates numbers for documents related to "Diva Starz" as it had

22  previously agreed. (*Id.*) Mattel thereafter disputed that it had agreed to identify the

23  documents it contends Ms. Garcia saw or had access to at Mattel related to "Diva

24  Starz," but on April 12, 2007, the date on which Ms. Garcia's deposition was

25  previously scheduled, Mattel agreed to allow MGA to show Ms. Garcia any of the

26  documents produced by Mattel related to "Diva Starz" in preparing her for

27  deposition. (*Id.* ¶¶ 4-5 & Exs. 2 & 3.)

28        During the meeting on April 12, MGA and Mattel also conferred regarding

1   MGA's designation of witnesses in response to Mattel's First and Second Notices.
2   In particular, MGA's counsel informed Mattel that a letter had already been drafted
3   providing witness designations with respect to the majority of categories in Mattel's
4   Notices. (*Id.* ¶ 6.) MGA thus asked Mattel to notify MGA if the letter sent to
5   Mattel the following morning designating its witnesses was inadequate and Mattel
6   needed a further response before filing a motion. (*Id.*) The following morning,
7   April 13, 2007, MGA provided Mattel with designees on the majority of topics
8   Mattel had noticed for deposition and indicated that it would be designating prior
9   deposition testimony for a few other categories, as the parties agreed. (*Id.* ¶ 7 &
10  Ex. 4.) (Pursuant to the Discovery Master's order, the date for designating prior
11  testimony is not until May 15, 2007). In addition, MGA indicated that it would
12  notify Mattel the following business day of the identities of any remaining
13  designees. (*Id.*) In response, Mattel filed the instant motion, as if none of the meet
14  and confer process had ever occurred.

15      Thereafter, on Monday, April 16, 2007, MGA sent another letter to Mattel,
16  with a small number of additional designations for the topics in Mattel's Second
17  Notice on which the parties agreed, and provided deposition dates for the witnesses
18  for which no dates had previously been offered. (*Id.* ¶ 8 & Ex. 5.) MGA also
19  offered to designate Ms. Garcia as to the remaining topics in Mattel's First Notice
20  and to produce Ms. Garcia for two days of deposition, if Mattel agreed to allow
21  MGA to depose one of its similarly situated 30(b)(6) designees. (*Id.* ¶ 8, Ex. 5.)
22  Believing the matter to now be moot, MGA asked Mattel to withdraw its motion as
23  to the topics for which it had designated a witness, so as to avoid burdening the
24  Court. Mattel refused. (*Id.* ¶ 8 & Ex. 6.)

25  **ARGUMENT**

26      Contrary to Mattel's motion, MGA has already designated witnesses for all
27  but a few topics on which the parties disagree, or on which MGA has been awaiting
28  clarification from Mattel to enable MGA to designate an appropriate witness. For

1    the reasons set forth below, Mattel's motion to compel should be denied.

2    **A.    Mattel's Motion To Compel Should Be Denied As Moot Because**
3         **MGA Has Already Designated Or Offered To Designate Witnesses**
         **For 46 Of Mattel's 54 Topics Of Deposition Testimony**
4
5         As Mattel is well aware, MGA designated or offered to designate witnesses

6    and provide deposition dates for all eight topics noticed in Mattel's First Notice and

7    all but a few of the 46 topics in Mattel's Second Notice on which the parties

     disagree or where MGA was waiting for Mattel to provide clarification.
8
9         On the Morning of Friday, April 13, 2007, prior to Mattel filing its 80-page

10   motion, MGA provided Mattel with designees on the majority of topics Mattel had

11   noticed for deposition. In particular, MGA designated witnesses on topic numbers:

12   1-8, 10, 12-15, 22-23, 29-30, 36, 38-40 and 42-46. MGA also stated that it would

13   designate prior testimony as to a variety of topics, including: 9, 11, 16-18, 20 and

14   35. In addition, MGA stated that it would notify Mattel by Monday, April 16,

15   2007, who, if anyone, MGA would be designating for the remaining topics, as well

16   as whether Ms. Garcia would be designated on the remaining topics set forth in

17   Mattel's First Notice. (*See* Torres Decl. ¶ 7 & Ex. 4.)

18        The following Monday, as promised, MGA designated witnesses and

19   provided deposition dates for all of the remaining topics on which the parties

20   agreed. In particular, MGA offered to designate Ms. Garcia on the remaining

21   topics in Mattel's First Notice, subject to an agreement with respect to the amount

22   of time for the deposition, and designated several witnesses on the remaining topics

23   in Mattel's Second Notice, including topics: 19, 21, 25,[1] 27-28, 33,[2] and 37. MGA

24   [1] MGA designated Eric Villete as MGA's 30(b)(6) witness for topic number 25 for
     revenues and costs from "Bratz" prior to December 31, 2001. With regard to MGA's
25   profits from "Bratz," MGA stated that such information has not yet been calculated and is
     a subject of expert testimony, not percipient witness testimony. Additionally, with regard
26   to MGA's revenues or costs for "Bratz" after December 31, 2001, MGA stated that this
     topic is premature and requested to meet and confer to negotiate the timing of questioning
27   as to this subject, which Mattel itself agreed was appropriate during the meet and confer.
     (*See* Torres Decl., ¶ 8 & Ex. 5).
28   [2] MGA designated Bryan Armstrong as its 30(b)(6) witness for topic 33 as to trademarks

EXHIBIT __1__ PAGE __9__

1    further stated that it would be designating prior testimony for topic 32. (*Id.*)

2    Finally, MGA provided deposition dates for the witnesses it had designated for

3    Mattel's First and Second Notices, to the extent they had not been provided

4    previously. (*Id.*) The only topics on which MGA declined to designate a witness

5    were Topics 24, 26, 31, 34 and 41.

6        Although MGA had already designated witnesses as to the vast majority of

7    Mattel's topics, and had stated that it would provide additional designees the

8    following business day, Mattel nonetheless filed the instant motion, claiming that

9    MGA had refused wholesale to provide witnesses for deposition. Moreover, even

10    though MGA provided additional designations and dates the following business

11    day, Mattel refused to withdraw any portion of its motion.

12        In sum, of the 54 topics noticed by Mattel, the only topics as to which no

13    witness has been designated and no dates have been offered are topics 24, 26, 31,

14    34 and 41. Accordingly, with respect to the topics for which MGA has designated

15    a witness and provided dates for deposition, Mattel's motion to compel is improper

16    and should be denied as moot.

### B.    Mattel's Motion To Compel For The Few Remaining Topics Should Also Be Denied

19        The remaining topics for which MGA has not agreed to provide witnesses

20    seek testimony that is privileged, not relevant to the present litigation, or is properly

21    the subject of expert testimony and is thus premature. Accordingly, Mattel's

22    motion to compel should be denied.

#### 1.    Mattel's Motion to Compel on Topic 24, Regarding Any Fee Agreements Between MGA And Bryant, Seeks Information That is Privileged And Should Be Denied

25    Mattel's Topic 24 seeks testimony related to any indemnification or fee

26    arrangements between MGA and Bryant. In support of its request, Mattel argues

28    and copyrights only. (*Id.*)

1    that such information is relevant to show bias, and that the Discovery Master

2    already determined such information was relevant.  As this Court is well aware,

3    Bryant was ordered to produce all *non-privileged* documents related to its fee

4    arrangements.[3]  As MGA has repeatedly informed Mattel, the only non-privileged

5    agreement responsive to Topic 24 is the original contract between Bryant and

6    MGA, signed on October 4, 2000, and dated "as of" September 18, 2000.  Notably,

7    MGA has already stated that it intends to designate prior deposition testimony for

8    Topic 18, which relates to Bryant's agreements and contracts with MGA.  Bryant's

9    fee agreements, however, are privileged under California law, which is applicable

10   to this diversity action.[4]  Moreover, such information is not relevant to any claim or

11   defense in this litigation and has no bearing on any potential "bias" because there is

12   no dispute that Bryant's interests in this case are aligned with those of MGA, and

13   that Bryant is "biased" in that sense.  In fact, as MGA previously informed the

14   Discovery Master, MGA and Bryant previously offered to stipulate to that "bias."[5]

15   Accordingly, Mattel's motion to compel as to Topic 24 should be denied.

16                      **2.    Mattel's Motion to Compel on Topic 25, Related to MGA's**
17                             **Revenue And Profit Information, Should Also Be Denied**

18           Mattel's motion to compel designation of a witness for Topic 25 concerning

19   MGA's revenues and profits is surprising given that Mattel and MGA already

20   agreed to postpone designation for that topic until a later date.  Mattel's instant

21   motion is an attempt to go back on that agreement.  During the conference of

22

23   [3] *See* Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007, at 12.

24   [4] *See* Cal. Bus. & Prof. Code § 6149; *Star Editorial, Inc. v. U.S. Dist. Ct. for the Central Dist. of California*, 7 F. 3d 856, 859 (9th Cir. 1993) (citing Federal Rule of Evidence 501

25   for the proposition that state law on privilege applied where a state law action was removed to federal court based on diversity of citizenship); *KL Group v. Case, Kay &*

26   *Lynch*, 829 F.2d 909, 918 (9th Cir. 1987) ("The availability of the attorney-client privilege in a diversity case is governed by state law.")

27   [5] *See* Declaration of Diana M. Torres filed in Support of MGA's Opposition to Mattel's Motion to Compel Production of Documents and Interrogatory Answers, dated February

28   20, 2007, ¶ 14.

1  counsel on March 15 and 16, 2007, MGA explained that it has compiled revenue
2  and profit information regarding first-generation "Bratz," but that it has yet to
3  compile such information regarding the other products at issue in the litigation
4  because MGA does not keep such information in the normal course of business.
5  (*See* Garcia Decl. ¶ 3.)  MGA assured Mattel, however, that it is currently in the
6  process of compiling the remaining revenue and profit information.  (*Id.*)  MGA
7  offered to designate a witness to testify regarding the revenue and profit
8  information for first-generation "Bratz," and then designate a witness to testify
9  regarding the revenue and profit information for subsequent products once that
10  information became available.  (*Id.*)  Mattel declined MGA's proposal, but agreed
11  instead to allow MGA to designate a witness for Topic 25 at a later date.  (*Id.*)

12      Now, after MGA has already relied upon Mattel's representations during the
13  meet and confer, Mattel asks the Discovery Master to compel MGA to designate a
14  witness for Topic 25, while failing to mention the agreement previously reached.
15  Mattel's decision to move on this topic, if granted, would render moot the entire
16  meet and confer process.  Mattel should not be rewarded for this tactic and its
17  motion as to Topic 25 should be denied.

18      **3.   Mattel's Motion to Compel Testimony on MGA's Net Worth**
19      **and Expert Analysis (Topics 26 and 41) Should Be Denied**
20      **As Premature Because It Seeks Testimony That is Properly**
        **The Subject of Expert Discovery**

21      Mattel argues that MGA should be compelled to produce witnesses to testify
22  as to topics that are properly the subject of expert discovery, and on which Mattel
23  has itself refused to provide discovery on the grounds that such discovery is
24  premature.  Mattel should not be allowed to have it both ways.

25      Mattel first argues that MGA should be compelled to designate a witness for
26  Topic 26, which seeks testimony as to MGA's net worth.  In support of its
27  argument, Mattel claims that information related to MGA's net worth is relevant to

28

1    its claim for punitive damages. Mattel's request is clearly premature. As this Court

2    is no doubt aware, the ownership phase of this case is set to go to trial in February

3    2008, the outcome of which the District Court has already indicated will likely

4    affect the contours of this case.[6] Notably, Mattel has not asserted a claim for

5    punitive damages against MGA for its claims based on Bryant's alleged breach of

6    contract, breach of fiduciary duty and breach of the duty of loyalty. Rather,

7    Mattel's claim for punitive damages is only relevant to the second phase of the

8    litigation between the parties, which is scheduled for trial in July 2008. Similar to

9    cases where a court orders bifurcation, requiring MGA to designate a witness

10   regarding its net worth at this stage of the litigation is premature.[7] There will be

11   ample time after the determination as to ownership of "Bratz" in the first trial for

12   Mattel to take discovery on MGA's net worth.

13       Moreover, MGA is a private company and has no reporting requirements

14   which would require it to gather and disclose information on its net worth, and does

15   not compile such information in the ordinary course of business. Because MGA

16   does not calculate its net worth in the ordinary course of business, it does not know

17   its net worth and thus has no percipient witness who can testify on this topic. *If*

18   MGA decides to calculate its net worth, it will do so *only* in connection with expert

19   discovery, for which the time has not yet arrived. Accordingly, Mattel's motion to

20   compel MGA to produce a witness to testify as to its net worth is premature and

21

22   [6] Torres Decl., ¶ 9, Ex. 7 (Order Regarding Mattel's Motion For Leave to Amend, dated January 12, 2007, at 3).

23   [7] *See Rupe v. Fourman*, 532 F. Supp. 344, 350-51 (S.D. Ohio 1981) (holding that discovery on punitive damages was premature and unnecessary until liability was

24   established); *see also Cobb v. Superior Court*, 99 Cal. App. 3d 543, 548-50 (1980) (explaining that "[i]t would seldom seem necessary to the integrity of discovery

25   proceedings that extensive discovery be permitted over objection into financial affairs of a defendant ahead of discovery on the merits of the underlying cause of action" and that in

26   such cases, the court should "consider the advisability of requiring a prima facie showing into the right to punitive damages."); Cal. Civ. Code § 3295(c) (precluding pretrial

27   discovery on a defendant's financial condition unless so ordered by the court after a finding that the plaintiff has established a substantial probability that punitive damages

28   will be awarded).

LA2:829382.1                                   -8-        EXHIBIT __1__ PAGE __13__

1    should be denied.

2          Mattel's motion to compel MGA to produce a witness to testify for Topic 41,

3    regarding testing performed by MGA's expert, is similarly premature.  The time for

4    designating experts has not yet arrived, thus MGA cannot be required to disclose at

5    this time whom it will be designating as its testifying experts in this litigation.

6    Under Federal Rule of Civil Procedure 26(a)(2)(C), the deadline for the disclosure

7    of expert testimony is 90 days before the trial date.  This case is set for trial on

8    February 12, 2008.  Requiring MGA to designate an expert witness at this early

9    stage of the proceedings is premature and inappropriate.

10         In June 2006, Mattel made the belated request that the District Court appoint

11   one document expert to test all documents in this case, to be used jointly by the

12   parties.  In support of that argument, Mattel implied in its motion papers that MGA

13   and/or Bryant had destroyed evidence by making holes in certain "Bratz"

14   drawings.[8]  Mattel's insinuation in its papers was so strong that Judge Larson issued

15   an order to show cause as to why the Court should not appoint an expert.  At

16   argument, however, Mattel's counsel was forced to concede that *no evidence had*

17   *been* comprised.[9]  In fact, as Judge Larson later found, MGA and Bryant did the

18   appropriate thing -- very shortly after Mattel filed its complaint, MGA and Bryant

19   date-tested certain original "Bratz" drawings while Mattel waited until the

20   documents were too old to be dated and therefore too old to confirm the merits of

21   MGA and Bryant's defenses.[10]  To convince Judge Larson of the complete

22   inaccuracy of Mattel's accusations, however, MGA and Bryant were forced to

23   explain in general terms the testing procedures they had used.[11]  They did not, at

24

---

25   [8] *See* Torres Decl., ¶ 10, Ex. 8 (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006).

26   [9] *Id.* (Order Denying Motion For Appointment of Expert Witnesses, at 13).

     [10] *Id.* (Order Denying Motion For Appointment of Expert Witnesses, at 14).

27   [11] *See* Declaration of B. Jennifer Glad filed concurrently, ¶ 2, Ex. 1 (Response of Bryant

28   and MGA to the Order to Show Cause Regarding the Appointment of Expert Witness(es), dated July 21, 2006, at 5).

1  that time or at any time since, designate a testifying expert in this area to disclose

2  the results of the expert's work. Mattel should not be allowed to benefit from its

3  false and unsubstantiated accusations that required MGA and Bryant even to

4  acknowledge the fact that they had performed expert analysis on a consulting basis.

5       Contrary to Mattel's suggestion, the issue is not whether the consulting

6  expert's analysis is "reasonably available," as that would be true as to any

7  consulting expert. But rather, unless and until MGA designates a testifying expert,

8  these analyses are protected as MGA's work product and privileged from

9  disclosure. MGA will be prepared to identify its experts, and produce expert

10  reports, as required by the Federal Rules of Civil Procedure, at the appropriate time.

11  In addition, Mattel has itself refused to produce discovery related to its document

12  experts on the grounds that such information is protected from disclosure by the

13  attorney-client privilege, the attorney work product doctrine, and the non-

14  designated expert consultant privilege.[12] Mattel's motion on this topic should be

15  denied.

16
17
18

**4.   Mattel's Motion to Compel on Topics 31 and 33, Related to Prior Work By Unidentified Individuals and Patents, Should Be Denied Because Such Information is Not Relevant To This Action**

19  Mattel's motion to compel on Topics 31 and 33 should be denied because

20  they seek information not relevant to this litigation. First, Topic 31 seeks testimony

21  related to the identities of persons, to the extent any exist, that have performed work

22  for MGA while the person was employed by Mattel. Because Mattel has asserted

23  no claim of this nature with respect to anyone other than Bryant, such information

24  is not relevant to this litigation, and, as this Court recently noted, discovery is not a

25  fishing expedition for new claims.[13] Indeed, it is impossible to prepare a witness on

26
27  [12] *See* Torres Decl., ¶ 11, Ex. 9 (Objections of Mattel and Timothy James Lider to MGA's Subpoena for Production of Documents, Response to Request No. 6).

28  [13] *See* Order Granting in Part and Denying in Part Mattel's Motion For Protective Order Regarding "Polly Pocket" Documents, at 5.

1   this topic without knowing all of Mattel's past and present employees and their

2   dates of employment.  In an attempt to compromise, however, MGA stated that it

3   would be willing to consider designating a 30(b)(6) witness to testify on this topic if

4   Mattel was willing to narrow it.  (*See* Garcia Decl. ¶ 4.)  Mattel, however, refused.

5   (*Id.*)  Mattel should not now be heard to complain that MGA has failed to meet its

6   discovery obligations by not designating a witness as to this topic.

7       Mattel's motion with regard to Topic 33, which seeks information related to

8   any trademarks, copyrights and patents, similarly seeks irrelevant information.  As

9   discussed herein, MGA designated a witness for Topic 33 with regard to trademarks

10  and copyrights only.  MGA should not be required to provide a witness to testify as

11  to MGA's patents and patent applications, to the extent any exist, as Mattel has

12  asserted no patent claims in this litigation and provided no rationale as to how any

13  MGA patent or patent application is conceivably relevant to the claims or defenses

14  in this litigation.  Accordingly, Mattel's motion to compel should be denied.

15          **5.**    **Mattel's Motion to Compel Testimony on Topic 34, Which**

16                  **Relates to Prior Testimony of Unidentified Individuals,**

17                  **Should Also Be Denied**

18      Mattel's motion to compel testimony from MGA on Topic 34 seeks to have

19  the Discovery Master require MGA to prepare and produce a corporate witness to

20  testify about prior declarations and deposition testimony of various individuals, all

21  but two of whom are unidentified.[14]  In essence, Mattel seeks to have MGA prepare

22  a witness to testify about statements by other witnesses, rather than simply depose

23  those witnesses from whom it wants testimony.  Mattel has cited no authority for

24  such an inappropriate topic of corporate testimony, and MGA has found none.

25      Such testimony is not only inappropriate for a corporate designee, but it is

---

26  [14] During the meet and confer, MGA requested that Mattel more adequately define Topic

27  34, which relates to testimony and sworn statements prior to June 30, 2001.  (*See* Garcia Decl., ¶ 5.)  With this request still pending, Mattel filed the instant motion, in which it

28  identifies for the first time two of the declarations which it apparently had in mind all along, but had previously refused to identify for MGA.

EXHIBIT __1__ PAGE __16__

1   impracticable to require MGA to prepare a witness to testify as to the prior
2   testimony of individuals, including individuals who are not employed by MGA.  In
3   *Covington v. Semones,* plaintiffs served a Rule 30(b)(6) notice on one entity, a
4   town, in order to obtain information about another entity, the county attorney's
5   office.  The court held that the town had no duty to inquire into or provide
6   information about the knowledge of the county attorney's office, stating that such a
7   practice would be "neither practicable nor efficient."  2007 WL 1052460, *2 (W.D.
8   Va. 2007) ("[t]here is no duty imposed to inquire into the knowledge of another
9   entity").  It is just as impracticable and inefficient to require MGA to designate a
10  corporate witness to testify about the knowledge of any individuals, let alone
11  witnesses not employed by MGA, especially where Mattel has refused to identify
12  the declarants or deponents and can easily depose individuals it believes to have
13  relevant information.  Moreover, Mattel has cited no authority, and MGA is aware
14  of none, that would permit Mattel to question MGA's 30(b)(6) witness about the
15  prior testimony of other individuals.  Accordingly, Mattel's motion to compel
16  MGA to produce a 30(b)(6) witness to testify as to prior sworn testimony and
17  statements should be denied.

18
19
20      **C.   Mattel's Arguments Regarding Application of Section 2019.210
            Are Improper As This Issue Is Currently Pending Before Judge
            Larson**

21          Mattel's argument regarding MGA's objections based on Mattel's failure to
22  identify its alleged trade secrets is an attempt to do an end run around MGA's
23  motion to dismiss.  As Mattel is well aware, MGA argued in its motion to dismiss
24  that Mattel should not be allowed to proceed with its claims based on the alleged
25  misappropriation of trade secrets because Mattel has failed to identify its allegedly
26  misappropriated trade secrets with the required specificity.[15]  MGA's motion to

27
28  _____
    [15] *See* Torres Decl., ¶ 12, Ex. 10 (MGA and Isaac Larian's Joint Motion to Dismiss
    Mattel's Amended Answer and Counterclaims, at 15-19).

LA2:829382.1                     -12-   EXHIBIT __/__  PAGE /7

1 | dismiss is currently pending before Judge Larson, and is scheduled for oral

2 | argument on May 21, 2007. Mattel's efforts to have the Discovery Master resolve

3 | this issue in an attempt to undermine MGA's motion before the District Court is

4 | improper and should not be condoned.

5 | As discussed in MGA's motion to dismiss, all of Mattel's claims against

6 | MGA proceed from the foundational allegation that MGA misappropriated Mattel's

7 | purported trade secrets. Under California law, when a claim is premised on trade

8 | secret misappropriation, a plaintiff must disclose the trade secret with "reasonable

9 | particularity" before proceeding with discovery on any of those claims.[16] This rule

10 | is not merely procedural, as Mattel suggests, but substantive in that it protects a

11 | defendant from spending time, money and effort defending against baseless

12 | claims.[17] Thus, contrary to Mattel's assertion, section 2019.210 applies in federal

13 | proceedings.[18]

14 | Moreover, Mattel's reliance on the unpublished opinion in *Funcat Leisure

15 | Craft*[19] is particularly unpersuasive, as it dismisses the substantive nature of

16 | California's statutory protection from baseless trade secret claims without even

17 | considering the origin and purpose of the law. *Computer Economics*, cited by

18 | MGA in its motion to dismiss, is the more closely reasoned case, and addresses the

19 | purpose of section 2019.210, namely to: promote well-investigated claims, dissuade

20 | the filing of meritless trade secret complaints, and protect against expending money

---

[16] *See Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826 (2d Dist. 2005); Cal. Code Civ. Proc. § 2019.210.

[17] *See Computer Economics Inc. v. Gartner Group Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999); *see also Diodes, Inc. v. Franzen et al.*, 260 Cal. App. 2d 244, 252 (2d Dist. 1968) (purpose of rule is to substantively protect against having to answer to and defend against baseless claims).

[18] *See Computer Economics*, 50 F. Supp. 2d at 985 (establishing the applicability of California's statutory provision to federal cases, including cases where pendant jurisdiction applies to state law claims, under the *Erie* doctrine); *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142 (2d Cir. 1996) (applying California trade secret law and specifically this provision without dispute or need for discussion).

[19] *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949 (E.D. Cal. 2007).

- 13 -  EXHIBIT __1__ PAGE __18__

1    and time on false claims - not just to control the timing of discovery.[20]

2       In any event, until such time as the District Court rules on this issue as part of

3    MGA's motion to dismiss, Mattel should be precluded from pursuing further

4    discovery on this issue.

5       **D.**     **Mattel's Requests For Sanctions Should Be Denied**

6       Finally, Mattel argues that it is entitled to sanctions. As set forth at length

7    above, and contrary to Mattel's assertions, MGA has designated witnesses for all

8    but the few topics on which the parties disagree, or as to which Mattel agreed to

9    provide further clarification so that MGA could designate the appropriate witness.

10    Moreover, MGA's refusal to provide witnesses as to the remaining topics was in

11    good faith given that the topics sought testimony that was privileged, not relevant to

12    the claims in the litigation, or else was properly the subject of expert testimony and

13    was, thus, premature. Accordingly, Mattel's motion for sanctions should be denied.

14    **CONCLUSION**

15       For the reasons set forth above, the Court should deny Mattel's Motion to

16    Compel and for Sanctions in its entirety.

17

18       Dated: April 26, 2007          O'MELVENY & MYERS LLP

19

20                            By: James P. Jenal
                           Attorneys for MGA Entertainment, Inc.

21

22

23

24

25

26

27   [20] *See Computer Economics*, 50 F. Supp. 2d at 985-88; Torres Decl., ¶ 12, Ex. 10 (MGA
and Isaac Larian's Joint Motion to Dismiss Mattel's Amended Answer and

28   Counterclaims, at 15-19).

# EXHIBIT 2

1 QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5   (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6 Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7 Facsimile: (213) 443-3100

8 Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

| | |
|---|---|
| 12 CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| 13 Plaintiff, | Consolidated with |
| 14 vs. | Case No. CV 04-09059 Case No. CV 05-02727 |
| 15 MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 16 Defendant. | Hon. Edward A. Infante (Ret.) Discovery Master |
| 17 | |
| 18 AND CONSOLIDATED CASES | [PROPOSED] ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6) |
| 19 | |
| 20 | |
| 21 | Date: May 15, 2007 Time: 8:15 a.m. |
| 22 | Place: Telephonic |
| 23 | Discovery Cut-Off: October 22, 2007 Pre-Trial Conference: January 14, 2008 |
| 24 | Trial Date: February 12, 2008 |

25

26

27

28            EXHIBIT _2_ PAGE _20_

17209/2121176.1

*Es*

# ~~[PROPOSED]~~ ORDER

Having considered Mattel, Inc.'s Motion To Compel MGA To Produce Witnesses For Deposition Pursuant To Rule 30(b)(6) (the "Motion"), and all other papers and argument submitted in support of or opposition to the Motion, and finding good cause therefor, Mattel's Motion is GRANTED.

IT IS HEREBY ORDERED that:

1.     MGA shall make Paula Garcia available for deposition on or before June 15, 2007 as a designee on Topics 1-3 and 6-8 of Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 16, 2005 and in her individual capacity.

2.     MGA shall confirm its designees and the dates of the designees' availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 1, 2007 (the "Second Notice") on or before May 22, 2007.

3.     MGA shall make its designees for all Topics in the Second Notice, except Topic Nos. 25 and 26, available for deposition on or before June 30, 2007.

4.     The parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice. Such depositions may take place after June 30, 2007.

5.     All of MGA's objections and/or limitations regarding the Topics in Mattel's Rule 30(b)(6) deposition notices are overruled.

//
//
//
//
//
//

EXHIBIT __2__ PAGE __21__

07209/2121176.1

-1-
ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

1

2      6.      Mattel's request for sanctions is denied.

3

4      **IT IS SO ORDERED.**

5

6   DATED: _May 16_, 2007

7

8                                    _____
                                     Hon. Edward A. Infante (Ret.)
9                                    Discovery Master

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                        EXHIBIT __2__ PAGE __22__

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 17,

2007, I served the attached ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL

MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6)

in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | brnitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on May 17, 2007, at San Francisco, California.

Anthony R. Sales

## EXHIBIT _2_ PAGE _23_

# EXHIBIT 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION


CARTER BRYANT, an individual,

      Plaintiff,

  vs.               No.   CV04-9049 SGL (RNBx)

MATTEL, INC., a Delaware
corporation,

      Defendants.

**CERTIFIED
COPY**

_____

AND CONSOLIDATED ACTIONS.

_____


VIDEOTAPED DEPOSITION OF RICHARD IRMEN

San Francisco, California

Friday, September 28, 2007


REPORTED BY:
MONICA LEPE-GEORG
CSR No. 11976

Job No. 1-74003

EXHIBIT 3 PAGE 24

1                  UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
2                       EASTERN DIVISION

3

4    CARTER BRYANT, an individual,

5              Plaintiff,

6        vs.                  No.   CV04-9049 SGL  (RNBx)

7    MATTEL, INC., a Delaware
     corporation,
8
               Defendants.
9

10

11   _____

     AND CONSOLIDATED ACTIONS.
12   _____

13

14

15         VIDEOTAPED DEPOSITION OF RICHARD IRMEN,

16   taken on behalf of Plaintiff, at Keker & Van Nest,

17   710 Sansome Street, San Francisco, California

18   beginning at 9:36 a.m. and ending at 7:18 p.m., on

19   Friday, September 28, 2007, before Monica

20   Lepe-Georg, Certified Shorthand Reporter No. 11976

21

22

23

24

25             EXHIBIT _3_ PAGE _25_

2

```
 1   APPEARANCES:

 2   For the Plaintiff:

 3            KEKER & VAN NEST
              Attorneys at Law
 4            710 Sansome Street
              San Francisco, California 94111-1704
 5            BY:  CHRISTA MARTINE ANDERSON, ESQ.
              415.391.5400
 6            E-mail:  canderson@kvn.com

 7   For the Defendants:

 8            QUINN EMANUEL URQUHART OLIVER & HEDGES
              Attorneys at Law
 9            865 S. Figueroa Street
              10th Floor
10            Los Angeles, California 90017
              BY:  MICHAEL T. ZELLER, ESQ.
11                 BRIDGET A. HAULER, ESQ.
              213.624.7707
12            E-mail:  michaelzeller@quinnemanuel.com
                       bridgethauler@quinnemanuel.com
13
     Also present:
14
              VINCENT SPANIER, Videographer
15

16

17

18

19

20

21

22

23

24

25           EXHIBIT  3  PAGE 26
```

1                              INDEX

2    RICHARD IRMEN                              EXAMINATION

3              BY MR. ZELLER                             6

4              BY MS. ANDERSON                          321

5              BY MR. ZELLER                            322

6

7                            EXHIBITS

8    EXHIBIT NO.                                       PAGE

9         824        Layout of Mattel Design Center    163

10        825        2001-05-26 E-mail from
                     Peter Marlow to Carter Bryant     253

11

          826        5/26/2001 E-mail from
12                   Peter Marlow to Carter Bryant     258

13        827        5/30/2001 E-mail from Isaac
                     Larian to Carter Bryant           259

14

          828        Typewritten document, "Veronica
15                   will be entitled..."              259

16        829        Typewritten document, "Veronica
                     will be entitled..." with
17                   handwriting at both side
                     margins and bottom of document    259

18

          830        2/10/03 letter to Pat from
19                   Carter Bryant                     263

20        831        Photocopy of various checks,      267
                     front and back

21

          832        Handwritten notes in regards
22                   to HK Toyfair                     278

23        833        Multiple Carter Bryant Enterprise
                     financial documents               309

24

25

                    EXHIBIT 3 PAGE 27

                                                         4

1           San Francisco, California

2           Friday, September 28, 2007

3              9:36 a.m. - 7:18 p.m.

4

5           THE VIDEOGRAPHER:  Here begins Media No. 1

6    of the deposition of Richard Irmen in the matter of

7    Carter Bryant versus Mattel, Inc. and Consolidated

8    Actions.  The case is in the court -- thank you,

9    United States District Court, Central District of

10   California, Eastern Division, case number is CV04,

11   dash, 9049 SGL, paren, RNBx, close paren.

12           Today's date is September 28th, 2007.  The

13   time on the video monitor is 9:36 a.m.

14           This deposition is taking place at 710

15   Sansome in San Francisco, California and is being

16   taken on behalf of defendants.

17           Videographer is Vincent Spanier appearing

18   on behalf of Sarnoff Court Reporters and Legal

19   Technologies located in San Francisco, California.

20           Counsel, please identify yourselves and

21   state whom you represent.

22           MR. ZELLER:  Mike Zeller for Mattel.

23           MS. ANDERSON:  Christa Anderson for Carter

24   Bryant and the witness.

25           MS. HAULER:  Bridget Hauler for Mattel.

EXHIBIT 3  PAGE 28

5

```
 1              THE VIDEOGRAPHER:  Thank you.
 2              Would the reporter please administer the
 3    oath.
 4
 5                    RICHARD IRMEN,
 6    called as a witness by the Plaintiff herein, being
 7    first duly sworn by the Certified Shorthand
 8    Reporter, was thereupon examined and interrogated as
 9    is hereinafter set forth.
10
11              THE VIDEOGRAPHER:  Please begin.
12
13                    EXAMINATION
14    BY MR. ZELLER:
15         Q.  Good morning.
16         A.  Good morning.
17         Q.  Please tell us your full name for the
18    record.
19         A.  Richard William Irmen.
20         Q.  And what is your current residential
21    address?
22         A.  1303 South Farm Road, 115, Springfield,
23    Missouri, 65802.
24         Q.  How long have you resided at that address?
25         A.  About three years.
```

Time stamps: 09:37:07 (15), 09:37:08 (16), 09:37:08 (17), 09:37:11 (19), 09:37:13 (20), 09:37:15 (22), 09:37:27 (24), 09:37:30 (25)

EXHIBIT 3 PAGE 29

6

**RICHARD IRMEN**                                              09/28/07

| | | |
|---|---|---|
| 18:14:54 | 1 | A.  No. |
| 18:14:56 | 2 | Q.  So it's the case that you didn't have a |
| | 3 | computer prior to October of 2000 in that house? |
| 18:15:02 | 4 | A.  No, we did not. |
| 18:15:04 | 5 | Q.  Neither you nor Carter did? |
| 18:15:06 | 6 | A.  No, we didn't. |
| 18:15:09 | 7 | Q.  Did -- did you use Elise's computer prior |
| | 8 | to that time? |
| 18:15:15 | 9 | A.  No, I don't believe I did. |
| 18:15:19 | 10 | Q.  Did you ever see Carter use it? |
| 18:15:21 | 11 | A.  No. |
| 18:15:30 | 12 | Q.  When Elise moved out, did she take the |
| | 13 | computer with her? |
| 18:15:34 | 14 | A.  Yes, she did. |
| 18:15:36 | 15 | Q.  So there was no computer at all in the |
| | 16 | house from the time period when Elise moved out up |
| | 17 | until the time that Carter bought that desktop |
| | 18 | computer in October of 2000? |
| 18:15:47 | 19 | A.  That's correct. |
| 18:15:53 | 20 | Q.  And we were talking about Carter bought a |
| | 21 | desktop computer in October of 2000, but that was in |
| | 22 | the Gardena house? |
| 18:16:02 | 23 | A.  Yes. |
| 18:16:03 | 24 | Q.  Did you use that computer? |
| 18:16:06 | 25 | A.  Yes. |

EXHIBIT  3  PAGE  30

285

**RICHARD IRMEN**                                        09/28/07

| | | |
|---|---|---|
| 18:16:07 | 1 | Q. Did Carter use that computer that you saw? |
| 18:16:10 | 2 | A. Yes. |
| 18:16:18 | 3 | Q. At some point on that desktop computer a |
| | 4 | program called "Evidence Eliminator" was installed; |
| | 5 | is that correct? |
| 18:16:33 | 6 | A. I believe so. |
| 18:16:35 | 7 | Q. Was that something that you did or Carter |
| | 8 | did? |
| 18:16:37 | 9 | A. I believe Carter did. |
| 18:16:42 | 10 | Q. Have you ever had any conversations or |
| | 11 | discussions with Carter about -- about that program? |
| 18:16:50 | 12 | MS. ANDERSON: Again, excluding any |
| | 13 | conversations that you might have had in the |
| | 14 | presence of counsel, which would be attorney-client |
| | 15 | privilege, otherwise you may answer. |
| | 16 | THE WITNESS: Yes. |
| | 17 | BY MR. ZELLER: |
| 18:17:01 | 18 | Q. And what did you and Carter discuss in that |
| | 19 | regard? |
| 18:17:06 | 20 | A. I've seen it running. I'm very computer |
| | 21 | illiterate. They don't like me and I know it. I |
| | 22 | would say -- you know, in his office it would be |
| | 23 | running and I'd say turn off your computer and he'd |
| | 24 | say oh, it's running through. It keeps the computer |
| | 25 | clean and it shuts itself off. I remember asking |

## EXHIBIT 3 PAGE 31

**RICHARD IRMEN**                                    09/28/07

|          |    |                                                    |
|----------|----|----------------------------------------------------|
|          | 1  | him about that.                                    |
| 18:17:30 | 2  | Q.  When you say you had seen it running, you      |
|          | 3  | saw the Evidence Eliminator program running on the |
|          | 4  | computer?                                          |
| 18:17:37 | 5  | A.  Yeah, the screen thing and whatever, it had    |
|          | 6  | lines or --                                        |
| 18:17:43 | 7  | Q.  And did you see this for the first time        |
|          | 8  | when you and Carter were in the Gardena house?     |
| 18:17:50 | 9  | A.  I believe that was in the Nixa house where     |
|          | 10 | I seen it.                                         |
| 18:17:55 | 11 | Q.  And is it fair to say that you hadn't seen     |
|          | 12 | it running prior to the time that you were in the  |
|          | 13 | Nixa house?                                        |
| 18:18:03 | 14 | A.  I don't recall, but I'm not really sure        |
|          | 15 | about that either.                                 |
| 18:18:07 | 16 | Q.  It's fair to say that the first               |
|          | 17 | recollection you have of seeing it running was when |
|          | 18 | you were in the Nixa house?                        |
| 18:18:14 | 19 | A.  Yes.                                           |
| 18:18:14 | 20 | Q.  And tell me if I'm wrong, but it sounded       |
|          | 21 | like you had seen this running more than once; is  |
|          | 22 | that correct?                                      |
| 18:18:21 | 23 | A.  Probably did.                                  |
| 18:18:23 | 24 | Q.  That's your best recollection?                |
| 18:18:25 | 25 | A.  Yes.                                           |

## EXHIBIT 3 PAGE 32

287

**RICHARD IRMEN**                                      **09/28/07**

18:18:31  1        Q.  Were you involved in any way in the
          2    purchase of the Evidence Eliminator program that was
          3    on the desktop computer?
          4             MS. ANDERSON:  Lacks foundation.
          5             THE WITNESS:  No, I wasn't.
          6    BY MR. ZELLER:
18:18:45  7        Q.  Do you -- do you know how Carter went about
          8    obtaining that program?
          9             MS. ANDERSON:  Calls for speculation.
         10             THE WITNESS:  I do not.
         11    BY MR. ZELLER:
18:18:52 12        Q.  Do you have any knowledge or information as
         13    to why Carter obtained that program?
         14             MS. ANDERSON:  Calls for speculation.
         15             THE WITNESS:  My understanding is -- is
         16    that when you ran that at the end of the day or once
         17    a week or whatever, that it kept your files clean
         18    from viruses and it kept your computer running
         19    tiptop.
         20    BY MR. ZELLER:
18:19:18 21        Q.  And this understanding that you mentioned
         22    was based upon what Carter told you?
18:19:23 23        A.  Yes.
18:19:26 24        Q.  Was that understanding based on anything
         25    other than what Carter told you?

## EXHIBIT 3  PAGE 33

288

**RICHARD IRMEN**                                    09/28/07

| | | |
|---|---|---|
| 18:32:56 | 1 | Q. Do you know who was present? |
| | 2 | MS. ANDERSON: Calls for speculation. |
| | 3 | THE WITNESS: The computer guy doing it. I |
| | 4 | don't remember who was there. |
| | 5 | BY MR. ZELLER: |
| 18:33:10 | 6 | Q. Was that done over at Brooke Gilbert's |
| | 7 | house or at your house? |
| | 8 | MS. ANDERSON: Lacks foundation. |
| | 9 | THE WITNESS: I don't remember. I know |
| | 10 | that that computer and others were imaged. I |
| | 11 | remember having to meet the representative or |
| | 12 | whoever came out to do it. I don't even remember |
| | 13 | which computer was done where. I just know it was |
| | 14 | done. |
| | 15 | BY MR. ZELLER: |
| 18:33:37 | 16 | Q. Is it fair to say that the computers that |
| | 17 | were imaged, that you're aware of, were imaged at |
| | 18 | your house? |
| | 19 | MS. ANDERSON: Lacks foundation. |
| | 20 | Mischaracterizes his testimony. |
| | 21 | THE WITNESS: Possibly. Excuse me. |
| | 22 | BY MR. ZELLER: |
| 18:33:52 | 23 | Q. Let me try something more specific. |
| | 24 | Did you ever go over to Brooke Gilbert's |
| | 25 | house in connection with the imaging of the desktop |

EXHIBIT 3  PAGE 34

299

1    computer?

18:34:02  2         A.   No.   I believe that they were done at our

3    house, but I'm not 100 percent sure on that one.

18:34:08  4         Q.   Is that something that Carter was involved

5    in?

6              MS. ANDERSON:   Vague and lacks foundation.

7              THE WITNESS:   I -- I don't remember if he

8    was even in town at that time.

9    BY MR. ZELLER:

18:34:26  10        Q.   Is there any specific person who you could

11   identify by name who was involved in that?

12             MS. ANDERSON:   Vague.

13             THE WITNESS:   No.

14   BY MR. ZELLER:

18:34:39  15        Q.   After the desktop computer was imaged,

16   where did it go next?

17             MS. ANDERSON:   That question calls for

18   speculation.   Lacks foundation and may call for

19   attorney-client privileged communications as to

20   which I instruct you not to answer.

21             THE WITNESS:   I don't know.

22   BY MR. ZELLER:

18:35:04  23        Q.   Do you have any knowledge as to where the

24   desktop computer has been since the time that it was

25   imaged in the summer of 2004 up until, as you

EXHIBIT 3 PAGE 35

**RICHARD IRMEN**                                          **09/28/07**

| | |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| | 5 |
| | 6 |
| 18:35:34 | 7 |
| | 8 |
| 18:35:45 | 9 |
| 18:35:47 | 10 |
| | 11 |
| 18:35:53 | 12 |
| 18:35:55 | 13 |
| 18:35:56 | 14 |
| 18:35:59 | 15 |
| | 16 |
| | 17 |
| 18:36:07 | 18 |
| | 19 |
| | 20 |
| | 21 |
| | 22 |
| 18:36:28 | 23 |
| | 24 |
| 18:36:37 | 25 |

1   mentioned, the lawyers had gotten it and you last

2   knew where it was?

3           MS. ANDERSON:  Same objection.  Same

4   instruction.

5           THE WITNESS:  I'm not sure where it was at.

6   BY MR. ZELLER:

7       Q.  At any time in 2004 did you and Carter

8   visit Brooke Gilbert's other house?

9       A.  Yeah.  We are family.

10      Q.  And was that an usual occurrence or unusual

11  occurrence during that time period?

12      A.  That we visit Brooke?

13      Q.  Right.

14      A.  No, it's usual.

15      Q.  Can you tell me approximately how often it

16  was in that time period?  Was it once a week?  Once

17  every couple weeks?  Once a month?

18      A.  It's -- nothing -- not a once a week type

19  of deal.  We were at her house for kid's birthday

20  parties and different family events like that.  Stop

21  in, say hi, have a cup of coffee if we were in the

22  neighborhood.  Just sporadic, general stuff.

23      Q.  At any time after that desktop computer was

24  given to Brooke Gilbert, did you use it?

25      A.  No.

EXHIBIT **3** PAGE **36**

301

**RICHARD IRMEN**          09/28/07

18:36:41   1      Q.  Do you know one way or another whether

     2   Carter used it after that time?

     3        MS. ANDERSON:  Calls for speculation.

     4        THE WITNESS:  To my knowledge, Brooke is

     5   the only person who used the computer after it was

     6   given to her.

     7   BY MR. ZELLER:

18:36:55   8      Q.  Is it fair to say that you don't know for

     9   sure, though?

18:36:59 10      A.  I don't know who used it when Brooke owned

     11   it.

18:37:04 12      Q.  All right.  And that's what I'm trying to

     13   find out.

     14      You don't know for a fact who used the

     15   desktop computer after it was in Brooke's house and

     16   after it was given to Brooke; is that true?

18:37:18 17      A.  That is true.

18:37:28 18      Q.  Do you know anything about what happened to

     19   the image that was made of the desktop computer in

     20   the summer of 2004?

     21        MS. ANDERSON:  Calls for speculation.

     22        THE WITNESS:  I have no idea.

     23   BY MR. ZELLER:

18:37:41 24      Q.  Did you ever review it?

18:37:42 25      A.  No, I never did.

EXHIBIT  3  PAGE 37

| 18:37:45 | 1 | Q.  Do you know anyone who reviewed it? |
| | 2 | MS. ANDERSON:  That question calls for |
| | 3 | speculation and it's vague. |
| | 4 | THE WITNESS:  No, I do not. |
| | 5 | BY MR. ZELLER: |
| 18:37:56 | 6 | Q.  Did you get a copy of it? |
| 18:37:59 | 7 | A.  No. |
| | 8 | MS. ANDERSON:  The question -- |
| | 9 | BY MR. ZELLER: |
| 18:38:01 | 10 | Q.  Did Carter, to your knowledge? |
| | 11 | MS. ANDERSON:  Calls for speculation. |
| | 12 | THE WITNESS:  No, to my knowledge nobody |
| | 13 | had -- did not receive any of that. |
| | 14 | A copy of the images is what you're asking, |
| | 15 | correct? |
| | 16 | MR. ZELLER:  Right.  Exactly. |
| | 17 | THE WITNESS:  No, we've never received any |
| | 18 | copies of any images taken from our computers. |
| | 19 | BY MR. ZELLER: |
| 18:38:22 | 20 | Q.  Do you have any knowledge or information as |
| | 21 | to what was done, if anything, to review the image? |
| | 22 | MS. ANDERSON:  That question calls for |
| | 23 | speculation as well as seeks to invade the |
| | 24 | attorney-client privilege.  You should not respond |
| | 25 | with respect to information you only know from your |

EXHIBIT 3  PAGE 38

303

**RICHARD IRMEN**                                    09/28/07

| | |
|---|---|
| 1 | counsel, that's privileged and I instruct you not to |
| 2 | answer, otherwise you may respond. |
| 3 | THE WITNESS:  I don't know what was done |
| 4 | with that. |
| 5 | BY MR. ZELLER: |
| 18:38:51  6 | Q.  Are you excluding anything from your answer |
| 7 | based on the instruction? |
| 18:38:59  8 | A.  No. |
| 18:39:01  9 | Q.  Is there anything else where the laptop -- |
| 10 | or excuse me, where the desktop computer has been at |
| 11 | any time since October of 2000 that you haven't told |
| 12 | me about already? |
| 13 | MS. ANDERSON:  Asked and answered.  And |
| 14 | also caution the witness not to reveal |
| 15 | attorney-client privileged information. |
| 16 | THE WITNESS:  No. |
| 17 | BY MR. ZELLER: |
| 18:39:23  18 | Q.  Put differently, I have your complete |
| 19 | knowledge and testimony about -- about that desktop |
| 20 | computer; is that true? |
| 18:39:31  21 | A.  Yes. |
| 18:39:32  22 | Q.  At least in terms of who used it and where |
| 23 | its been? |
| 18:39:37  24 | A.  Yes.  To the best of my knowledge. |
| 18:39:44  25 | Q.  After the -- well, let me ask it this way, |

EXHIBIT 3  PAGE 39

304

|  |  |  |
|---|---|---|
| | 1 | at any time after 2004 did you see the desktop |
| | 2 | computer over there at Brooke's house? |
| 18:40:05 | 3 | A.  I'm sure I did if I was there and I was -- |
| | 4 | if I was in her computer room or her office -- |
| | 5 | actually, it was a rumpus room because the kids were |
| | 6 | there, too.  I'm sure I've seen it. |
| 18:40:19 | 7 | Q.  When you say you're sure you've seen it, |
| | 8 | you saw that desktop computer at Brooke's house -- |
| 18:40:26 | 9 | A.  Yes. |
| 18:40:27 | 10 | Q.  -- after 2004? |
| 18:40:30 | 11 | A.  Yes.  Yes. |
| 18:40:33 | 12 | Q.  At some time after Carter's purchase of the |
| | 13 | desktop computer in October of 2000, did he buy a |
| | 14 | Compaq laptop? |
| 18:40:44 | 15 | A.  Yes. |
| 18:40:45 | 16 | Q.  And do you know when he bought that one? |
| | 17 | MS. ANDERSON:  Calls for speculation to |
| | 18 | some extent. |
| | 19 | THE WITNESS:  I believe it was around |
| | 20 | February of 2002. |
| | 21 | BY MR. ZELLER: |
| 18:41:08 | 22 | Q.  Did you ever see Evidence Eliminator |
| | 23 | running on that laptop? |
| 18:41:14 | 24 | A.  I don't recall. |
| 18:41:15 | 25 | Q.  Did you install Evidence Eliminator on that |

EXHIBIT 3  PAGE 40

305

**RICHARD IRMEN**                                    09/28/07

1    laptop?

18:41:19   2         A.   No, I did not.

18:41:20   3         Q.   Have you ever installed Evidence Eliminator

4    on any computer?

18:41:26   5         A.   No, I've never installed anything on any

6    computer.

18:41:35   7         Q.   That saves us a lot of questions.

8              Other than in connection with the desktop

9    computer that you described earlier, have you ever

10   seen Evidence Eliminator running on any of Carter's

11   computers?

18:41:50   12        A.   No.

18:41:54   13        Q.   Is it fair to say that -- well, let me ask

14   you this way, do you know whether or not Evidence

15   Eliminator was installed on the laptop?

18:42:05   16        A.   I don't know.

18:42:06   17        Q.   You're not -- you don't know one way or

18   another?

18:42:11   19        A.   No.

18:42:22   20        Q.   You mentioned that your best recollection

21   is that the laptop was purchased in February of

22   2002?

18:42:30   23        A.   Yes.

18:42:31   24        Q.   As of April of 2004, was that laptop still

25   in your house?

EXHIBIT _3_ PAGE _41_

306

| | | |
|---|---|---|
| 18:42:36 | 1 | A.  Yes. |
| 18:42:41 | 2 | Q.  Was that laptop imaged in the summer of |
| | 3 | 2004? |
| 18:42:45 | 4 | A.  Yes, I believe it was. |
| 18:42:47 | 5 | Q.  Was that done at your house, yours and |
| | 6 | Carter's house? |
| 18:42:52 | 7 | A.  Yes, I believe it was. |
| 18:42:54 | 8 | Q.  And you saw that being done; is that |
| | 9 | correct? |
| 18:43:00 | 10 | A.  Yeah, I believe so. |
| 18:43:06 | 11 | Q.  Have you ever reviewed that image? |
| 18:43:09 | 12 | A.  No.  I've never reviewed any images of |
| | 13 | anything -- any of our computers that were imaged or |
| | 14 | received copies. |
| 18:43:21 | 15 | Q.  With respect to the laptop image, do you |
| | 16 | know if anyone's reviewed it? |
| | 17 | MS. ANDERSON:  That calls for speculation. |
| | 18 | Lacks foundation. |
| | 19 | THE WITNESS:  I do not know who or if |
| | 20 | anybody has reviewed it. |
| | 21 | BY MR. ZELLER: |
| 18:43:38 | 22 | Q.  Do you have any knowledge or information as |
| | 23 | to -- whether or not any information that was on the |
| | 24 | laptop as of April of 2004, or after that time |
| | 25 | period, was deleted or altered by the Evidence |

EXHIBIT 3  PAGE 42

307

| | |
|---|---|
| 1 | Eliminator program? |
| 2 | MS. ANDERSON:  Calls for speculation. |
| 3 | Lacks foundation. |
| 4 | THE WITNESS:  I have no idea. |
| 5 | BY MR. ZELLER: |
| 18:44:04   6 | Q.  And is the same true for the desktop |
| 7 | computer? |
| 18:44:06   8 | A.  Yes, that is true also. |
| 18:44:12   9 | Q.  Do you have any knowledge or information on |
| 10 | that subject with respect to the desktop computer at |
| 11 | any time period? |
| 18:44:17  12 | A.  No, I do not. |
| 18:44:25  13 | Q.  Have you ever had a discussion or |
| 14 | conversation with Carter about the installation of |
| 15 | Evidence Eliminator on the laptop? |
| 18:44:34  16 | A.  No. |
| 17 | MR. ZELLER:  838, is that where I'm at? |
| 18 | THE REPORTER:  833. |
| 19 | MR. ZELLER:  Let's please mark as |
| 20 | Exhibit 833 a compilation exhibit consisting of |
| 21 | various Carter Bryant Enterprise financial documents |
| 22 | that have been produced under the Bryant Bates |
| 23 | stamp.  The first page of which is entitled "Income |
| 24 | Statement Year-to-date Ending December 31st, 2002." |
| 25 | ///// |

EXHIBIT _3_ PAGE _43_

|         |    |                                                      |
|---------|----|------------------------------------------------------|
|         | 1  | (Whereupon, Exhibit No. 833 was marked for           |
|         | 2  | identification.)                                     |
|         | 3  | THE REPORTER:  There you go.                          |
|         | 4  | THE WITNESS:  Thank you.                              |
|         | 5  | BY MR. ZELLER:                                        |
| 18:46:04| 6  | Q.  So, as soon as we go through every one of        |
|         | 7  | these line entries --                                |
| 18:46:08| 8  | A.  Easy.                                             |
| 18:46:09| 9  | Q.  If you could just take a look at                 |
|         | 10 | Exhibit 833 and if you could just review it          |
|         | 11 | sufficiently to satisfy yourself as to whether or    |
|         | 12 | not you generally recognize what these pages are.    |
| 18:46:20| 13 | A.  Yes.                                              |
| 18:46:20| 14 | Q.  And you recognize these as various Carter        |
|         | 15 | Bryant Enterprise financial statements, including    |
|         | 16 | income statements and profit-and-loss statements; is |
|         | 17 | that correct?                                         |
| 18:46:31| 18 | A.  Yes.                                              |
| 18:46:34| 19 | Q.  And you'll see that generally speaking the       |
|         | 20 | dates for these documents run in the late 2002       |
|         | 21 | through 2003 time period?                            |
| 18:46:46| 22 | A.  Yes.                                              |
| 18:46:47| 23 | Q.  Let me ask first, are these documents that      |
|         | 24 | were generated by Foothill?                          |
| 18:46:53| 25 | A.  I believe so.                                     |

EXHIBIT 3   PAGE 44

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4     before me at the time and place herein set forth; that

5     any witnesses in the foregoing proceedings, prior to

6     testifying, were duly sworn; that a record of the

7     proceedings was made by me using machine shorthand

8     which was thereafter transcribed under my direction;

9     that the foregoing transcript is a true record of the

10    testimony given.

11         Further, that if the foregoing pertains to

12    the original transcript of a deposition in a Federal

13    Case, before completion of the proceedings, review of

14    the transcript [   ] was [ X ] was not requested.

15         I further certify I am neither financially

16    interested in the action nor a relative or employee

17    of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20

21    Dated:  _OCT 1 2 2007_____

22

23    _____

      MONICA LEPE-GEORG

24    CSR No. 11976

25

EXHIBIT 3  PAGE 45

# EXHIBIT 4

1

1    UNITED STATES DISTRICT COURT
2    CENTRAL DISTRICT OF CALIFORNIA
     EASTERN DIVISION

3    CARTER BRYANT, an
     individual,
4
                    Plaintiff,
5                                    CASE NUMBER:
     vs.                             CV 04-9049 SGL (RNBx)
6
     MATTEL, INC., a Delaware        Consolidated with
7    corporation,                    Case No. CV 04-09059
                                     Case No. CV 05-02727
8                   Defendant.

9    AND CONSOLIDATED CASES          COPY

10

11

12       VIDEOTAPED DEPOSITION OF MS. BROOKE GILBERT,

13   produced, sworn, and examined on Tuesday,

14   July 24, 2007, at 9:30 a.m. of that day,

15   at Renaissance Inn, 1303 East Kingsley Street,

16   in the City of Springfield, County of Greene,

17   and State of Missouri, before me,

18   Debbi J. Sonntag, RPR, CCR, in the

19   above-captioned cause; taken on behalf of the

20   Defendants.

21

22

23
                    FOR THE RECORD, LLC
24          2042-B South Brentwood, Suite 115
               Springfield, Missouri 65804
25                  (417) 881-1186



EXHIBIT 4 PAGE 46

2

1                    A P P E A R A N C E S

2        For Plaintiff:      MR. MICHAEL H. PAGE
                             KEKER & VAN NEST, LLP
3                            710 Sansome Street
                             San Francisco, California 94111
4                            (415) 391-5400

5        For Defendant       MS. SUSAN L. WINES
         Mattel, Inc.:       QUINN EMANUEL
6                            865 South Figueroa Street
                             10th Floor
7                            Los Angeles, California 90017
                             (213) 443-3193
8
         For Defendant       MS. JENNIFER GLAD
9        MGA:                O'MELVENY & MYERS, LLP
                             400 South Hope Street
10                           Los Angeles, California 90071
                             (213) 430-6000
11
         Videotaped by:      Mr. Jeff Gilmore
12                           Repeat Performance
                             3534 East Sunshine
13                           Suite J
                             Springfield, Missouri 65809
14                           (417) 882-9262

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT __4__ PAGE __47__

3

1                        I N D E X

2     Testimony of:
      MS. BROOKE GILBERT                        PAGE

3     Examination By Ms. Wines:                  4

4

5     REPORTER'S CERTIFICATE:   58

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24     Phonetic spellings are signified by: (ph.).

25     Exactly as stated: (sic).



EXHIBIT 4 PAGE 48

4

1    Whereupon,

2                    **MS. BROOKE GILBERT,**

3    being produced, sworn, and examined, testified

4    as follows:

5                    EXAMINATION

6    BY MS. WINES:

7    Q.   Good morning.

8    A.   Good morning.

9    Q.   I'm Susan Wines.  We chatted a little bit before

10        we got onto the record.  Would you please state

11        your name?

12   A.   Brooke Gilbert.

13   Q.   Ms. Gilbert, have you had your deposition taken

14        before?

15   A.   No.

16   Q.   I just want to talk to you about a couple of the

17        ground rules very briefly.  Do you understand

18        that you have been placed under oath today?

19   A.   Yes.

20   Q.   And that the oath has the same effect as if you

21        were testifying in a court of law?

22   A.   Yes.

23   Q.   Is there any reason that you feel you can't give

24        your best and most accurate testimony today?

25   A.   No.





EXHIBIT __4__ PAGE __49__

33

1    A.    Yes.

2    Q.    Have you used the computer at all?

3    A.    No.

4    Q.    Have you ever had the experience of installing a

5          new operating system onto a computer?

6    A.    No.

7    Q.    Have you ever had the experience of making up a

8          backup of the computer hard drive on any

9          computer?

10   A.    No.

11   Q.    Do you have any knowledge of software -- let me

12         ask you this.  Are you -- do you have knowledge

13         that in certain circumstances when you delete a

14         file or an E-mail from your computer using the

15         delete function that remnants of the file may

16         remain on the computer hard drive?

17   A.    Yes.

18   Q.    Do you have a general understanding of why that

19         is?

20   A.    No.

21   Q.    Do you have any knowledge of software programs

22         that eliminate these remnants from a computer?

23   A.    No.

24   Q.    Have you ever had experience with any software

25         programs that get rid of or wipe clean these

EXHIBIT __4__ PAGE _50_

34

1      remnants of files on a computer hard drive?

2   A.  No.

3          MR. PAGE:  Object as asked and answered.

4      Wait.  I think it's the same question you just

5      asked one question earlier, but if it isn't, I

6.     missed the difference.

7   Q.  (By Ms. Wines) Have you ever heard of a program

8      called Evidence Eliminator?

9   A.  Only from Mike yesterday.

10         MR. PAGE:  Instruct you not to include

11     -- to exclude from your answers the content of

12     any communications we had.

13  A.  Oh.

14  Q.  (By Ms. Wines) So before -- excluding any

15     conversations with Mr. Page, do you have any

16     knowledge of a program called

17     Evidence Eliminator?

18  A.  No.

19  Q.  Do you have any knowledge of what that program

20     is used for?

21  A.  No.

22  Q.  You don't know what it does?

23  A.  No.  Only what you would gather from the name of

24     the program.

25  Q.  And what would you gather from the name of the

EXHIBIT   4   PAGE 51

35

1        program?

2  A.  That it's to get rid of stuff on the computer.

3  Q.  And you've certainly never downloaded it?

4  A.  No.

5  Q.  And never purchased it?

6  A.  No.

7  Q.  I want to talk to you just focusing in a little

8      more particularly on the computer -- what I've

9      been calling the Carter Bryant computer.

10  A.  Okay.

11  Q.  You said you received that in November 2003?

12  A.  Yes.

13  Q.  How did that come about?

14  A.  I was telling Carter that I needed a computer

15      for school and that I had planned on using the

16      one that my mom had brought that I had used

17      before, and she took that when she moved back to

18      Idaho, and he said, "I have an old one you can

19      use."  And I told him, "What a great uncle you

20      are."

21  Q.  Did he drop it off?  Did you pick it up?

22  A.  I picked it up.

23  Q.  At that time was Mr. Bryant living in

24      Springfield?

25  A.  I think he was living in Nixa.

EXHIBIT 4 PAGE 52

58

1                    REPORTER'S CERTIFICATE

2       STATE OF MISSOURI  )
                           )ss
3       COUNTY OF CHRISTIAN)

4            I, DEBBI J. SONNTAG, Registered
        Professional Reporter and Certified Court
5       Reporter, do hereby certify that the witness was
        duly sworn by me; that the facts stated by me in
6       the caption hereof are true; that the said
        witness did make the above and foregoing answers
7       in response to questions propounded as shown;
        that I did, in stenotype, report said
8       proceedings; and that the above and foregoing
        typewritten pages contain a full, true, and
9       correct transcription of my shorthand notes
        taken on such occasion; that said deposition is
10      now herewith returned.

11           I further certify that I am neither
        attorney for, nor counsel for, nor related to,
12      nor employed by any of the parties to the action
        in which this deposition was taken; and,
13      further, that I am not a relative or employee of
        any attorney or counsel employed by the parties
14      hereto, or financially interested in the action.

15

16                     _Debbi J. Sonntag_____
                     DEBBI J. SONNTAG, RPR, CCR

17

18

19

20

21

22

23                      FOR THE RECORD, LLC
                   2042-B South Brentwood, Suite 115
24                    Springfield, Missouri 65804
                           (417) 881-1186

25


EXHIBIT 4 PAGE 53