KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                  Plaintiff,<br><br>    v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>                  Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727<br><br>**DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]**<br><br>**CARTER BRYANT'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES (NOS. 27-33, 36-40, 42, 45, AND 47)**<br><br>Date:     January 3, 2008<br>Time:    1:30 p.m.<br><br>**Phase I:**<br>Date Comp. Filed:  April 13, 2005<br>Discovery Cut-Off:  Jan. 28, 2008<br>Trial Date:  May 27, 2008 |

# TABLE OF CONTENTS

<u>Page</u>

I.   INTRODUCTION ...................................................................................... 1

II.  PROCEDURAL BACKGROUND ............................................................. 2

III. ARGUMENT ............................................................................................ 6

    A.   Mattel's motion to compel should be denied as untimely. .................. 6

    B.   If the Court considers the substance of Mattel's motion, despite Mattel's failure to meet and confer, it should uphold Bryant's objections. .......................................................................... 11

        1.   Bryant's objections to Mattel's contention interrogatories (Nos. 30-33, 36-38, 42-44, 48-50). .................... 12

            a.   Mattel's contention interrogatories, as drafted, are overbroad and abusive. .............................................. 12

            b.   Bryant's other objections to Mattel's contention interrogatories are also appropriate. ............................... 16

        2.   Bryant's objections to Mattel's interrogatories regarding BRATZ INVENTIONS (Nos. 27-29). ..................... 17

        3.   Bryant accurately answered Mattel's Interrogatory No. 45, as written. ...................................................... 20

        4.   Bryant's objections to Interrogatory Nos. 40 and 47. .............. 21

    C.   Mattel's motion to compel a response to Interrogatory No. 39, which requests that Bryant identify his bank and other financial institution accounts, should be denied. ............................... 23

    D.   Mattel's request for sanctions should be denied, and the Court should instead impose sanctions against Mattel. ..................... 25

IV.  CONCLUSION .......................................................................................... 27

# TABLE OF AUTHORITIES

## FEDERAL CASES

<u>Page</u>

*Birdine v. City of Coatesville*,
No. 08172004, 2004 WL. 2786153 (E.D. Pa. Aug. 17, 2004) ............................7

*Cable & Computer Tech, Inc. v. Lockheed Saunders, Inc.*,
175 F.R.D. 646 (C.D. Cal. 1997) ...................................................10, 26

*Catalano v. GWD Management Corp.*,
No. CV-403-167, 2005 WL. 5519861
(S.D. Ga. Mar. 30 2005).........................................................................7

*Clean Earth Remediation and Const. Services, Inc. v.
American Intern. Group, Inc.*,
245 F.R.D. 137 (S.D.N.Y. 2007) ..........................................................13

*Does I-VI v. Yogi*,
110 F.R.D. 629 (D.D.C. 1986)...............................................................24

*E.E.O.C. v. V & J Foods, Inc.*,
No. 05-C-194,2006 WL. 2947474 (E.D. Wis. Oct. 16, 2006)..................7

*Epling v. UCB Films, Inc.*,
Nos. 98-4226-RDR, 98-4227-RDR, 00-4062-RDR, 00-4186-
RDR, 2001 WL. 1249362 (D. Kan. Sep. 27, 2001)................................7

*Excess Insurance Co., Ltd. v. Rochdale Insurance Co.*,
05 Civ. 10174, 2007 WL. 2900217 (S.D.N.Y. Oct. 4, 2007) ...........9, 10

*Garland v. Interlake, Inc.*,
CIV A No. 28-9096, 1989 WL. 71467 (E.D. Pa. Jun. 28,
1989)........................................................................................................7

*Geico Casualty Co. v. Beauford*,
No. 8:05-CV-697-T24-EAS, 2007 WL. 1192446 (M.D. Fla.
Apr. 23, 2007) .........................................................................................7

*Grynberg v. Total S.A.*,
No. 03-cv-01280-WYD-BNB, 2006 WL. 1186836
(D. Colo. May 3, 2006) .........................................................................13

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Hiskett v. Wal-Mart Stores, Inc.,*
   180 F.R.D. 403 (D. Kan. 1998).................................................16

*Hoelzel v. First Select Corp.,*
   214 F.R.D. 634 (N.D. Colo. 2003).............................................10

*Ippolito v. Goord,*
   No. 05-CV-6683L, 2007 WL 2769503
   (W.D.N.Y. Sep. 21, 2007).........................................................7

*Johnson v. Kraft Foods N. America, Inc.,*
   238 F.R.D. 648 (D. Kan. 2006)............................................20, 22

*Kendrick v. Sullivan,*
   125 F.R.D. 1 (D. D.C. 1989)......................................................17

*Lawrence v. First Kansas Bank & Trust Co.,*
   169 F.R.D. 657 (D. Kan. 1996)............................................13, 14

*Lucero v. Valdez,*
   240 F.R.D. 591 (D. N.M. 2007).................................................13

*Luna v. Del Monte Fresh Produce (Southeast), Inc.,*
   No. 1-06-CV-2000-JEC, 2007 WL 1500269
   (N.D. Ga. May 18, 2007)..........................................................13

*Majdalani v. Legacy Bank,*
   No. 06-1317-MLB, 2007 WL 2694043
   (D. Kan. Sep. 11, 2007).........................................................8, 9

*Morris v. McGrath,*
   No. C 04-3142 SI, 2006 WL 870965
   (N.D. Cal. April 3, 2006)...........................................................10

*Peskoff v. Faber,*
   230 F.R.D. 25 (D.D.C. 2005)................................................24, 25

*Pierce v. Underwood,*
   487 U.S. 552 (1988).................................................................26

*Premium Service Corp. v. Sperry & Hitchinson Co.*
   511 F.2d 225 (9th Cir. 1975).....................................................24

iii

408135.03

*Rhea v. Uhry,*
  No. 3:05CV189 (RNC), 2007 WL. 926908
  (D. Conn. Mar. 26, 2007) .................................................................... 7

*Reygo Pacific Corp. v. Johnston Pump Co.*
  680 F.2d 647 (9th Cir. 1982) ............................................................... 26

*Robinson v. Potter,*
  453 F.3d 990 (8th Cir. 2006) ............................................................... 10

*Safeco of America v. Rawstron,*
  181 F.R.D. 441 (C.D. Cal. 1998) ..................................................... 2, 14

*Samuels v. Huff,*
  No. 04-0859-P, 2007 WL. 1237961 (W.D. La. Apr. 27, 2007) ............ 7

*Sherman v. City of Davis,*
  No. CIV S-04-2320 LKK EFB PS, 2007 WL. 1454278
  (E.D. Cal. May 17, 2007) .................................................................... 10

*Sommers v. West,*
  No. 97 Civ. 4902 (JSM), 1997 WL. 772783
  (S.D.N.Y. Dec. 12, 1997) .................................................................... 23

*Tatum v. Schwartz,*
  No. CIV S-06-1440 RRB EFB, 2007 WL. 2220977
  (E.D. Cal. Aug. 2, 2007) ..................................................................... 14

*Tuggle v. Kamara,*
  No. C 05-4142 MHP, 2007 WL. 760596
  (N.D. Cal. March 9, 2007) .................................................................. 10

*Walt Disney Co. v. DeFabiis,*
  168 F.R.D. 281 (C.D. Cal. 1996) .................................................. 11, 26

## STATE CASES

*Hooser v. Superior Court,*
  84 Cal. App. 4th 997 (2000) ............................................................... 24

*Valley Bank v. Superior Court,*
  15 Cal. 3d 652 (1975) ......................................................................... 23

iv

# DOCKETED CASES

*Chapman v. Cal. Department of Education,*
  No. C-01-1780, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) ........................... 14

*Sotelo-Camacho v. Morales,*
  CIVA No. 1:05CV1349 WSD, 2006 WL 3709613 (ND. Ga.
  Nov. 7, 2000) ................................................................................................ 7

*Use Techno Corp. v. Kenko USA, Inc.,*
  No. C-06-02754 (N.D. Cal. Oct. 18, 2007) ...................................................... 8, 10

# FEDERAL STATUTES

Fed. R. Civ. P. 37 ............................................................................................... 1, 2,

Fed. R. Civ. P. 69(a) ........................................................................................... 23

# STATE STATUTES

Cal. Code Civ.Proc. § 708.110 ............................................................................ 23

Cal. Const., Art. I, § 1 ........................................................................................ 23

Cal. Penal Code § 641.3 ...................................................................................... 24

# I.   INTRODUCTION

With one lone exception, Mattel's Motion to Compel Responses to Interrogatories by Carter Bryant is either moot or it is premature and filed in violation of the meet and confer requirements of Federal Rule of Civil Procedure 37 and Central District Local Rule 37-1.  Whichever way it is viewed, Mattel's motion is neither timely nor appropriate.  Mattel seeks to compel further interrogatory responses by Bryant to fifteen interrogatories contained within Mattel's Revised Third, Amended Fourth, Fifth, Sixth, and Seventh Sets of Interrogatories.  But Bryant promised to provide supplemental responses to all but one of these interrogatories days before Mattel served its motion to compel, as Mattel itself admits in its motion.[1]  *See* Mattel's Mot. to Compel Resps. to Interrogs. ("Mattel Mot."), at 1.  And Bryant has since provided those supplemental responses to Mattel, exactly as promised.  *See* Decl. of Matthew M. Werdegar in Support of Bryant's Opp'n to Mattel's Mot. To Compel Resps. to Interrogs, filed herewith, ("Werdegar Decl."), Exs. 4-8.

Consequently, to the extent Mattel's motion is directed against Bryant's original responses to Interrogatory Nos. 27-33, 36-38, 40, 42, 45, and 47, Mattel's motion is now moot, as those responses have been superceded by Bryant's supplemental responses, served on December 17, 2007.  And to the extent that Mattel's motion is directed against Bryant's supplemental responses, it is plainly premature, as it was filed before Mattel ever received, much less analyzed or sought to meet and confer regarding, those responses.  The Discovery Master therefore should deny Mattel's motion as untimely and should sanction Mattel for its failure to meet and confer regarding Bryant's supplemental responses, as

---

[1] The only interrogatory that Bryant has declined to supplement is Mattel's Interrogatory No. 39, seeking the identity of each and every bank or financial institution account that in any way refers or relates to Bryant since January 1, 1999.  *See* Decl. of B. Dylan in Support of Mattel's Mot. To Compel Resps. to Interrogs,  ("Proctor Decl."), Ex. 1, at 11, 14, 19.  As discussed below, this interrogatory is entirely improper and Bryant's objections to it should be sustained.

1   required by the Federal Rules and the Local Rules of the Central District of

2   California.  *See* Fed. R. Civ. P. 37(a)(2); Cent. Dist. Local Rule 37-1.

3   Because Mattel has failed to meet and confer regarding Bryant's

4   supplemental responses, the Discovery Master need not, should not, pass judgment

5   on the substance of Mattel's motion at this time.  But if the Discovery Master

6   nonetheless elects to consider the merits of Mattel's motion, it should uphold

7   Bryant's objections and should not overrule them *en masse*, as requested by

8   Mattel.  Mattel's interrogatories are defective in many respects, and Bryant's

9   objections to them are specific and proper.

10   For example, Bryant has objected to several interrogatories that purport to

11   require him to "state all facts" supporting his denial of a particular allegation (such

12   as that he breached his employment agreement with Mattel and that he breached

13   his fiduciary duties to Mattel) as overbroad and unduly burdensome.  *See* Proctor

14   Decl., Ex. 5, at 62-71.  This objection is supported by numerous federal district

15   court decisions, including published decisions from the Central District of

16   California, and Mattel itself has asserted the identical objection in response to

17   interrogatories propounded by MGA and Bryant in this litigation.  *See*, *e.g.*, *Safeco*

18   *of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998); Werdegar Decl., Ex.

19   10.  Bryant also has objected to certain interrogatories as improperly seeking

20   Bryant's contentions regarding incomplete hypothetical scenarios.  *Id.*, Ex. 5, at

21   65-67.  Mattel does not address these objections, which are well-supported by law,

22   in its motion.

23   Accordingly, whether or not the Discovery Master considers the merits of

24   Mattel's motion, the Discovery Master should deny the motion in its entirety.

## II.    PROCEDURAL BACKGROUND

26   Mattel served its Third Set of Interrogatories on Bryant and the other

27   defendants on June 7, 2007.  Because many of Mattel's interrogatories were

28   compound, in violation of Federal Rule of Civil Procedure 33(a) and the Court's

2

408135.03

limit of 50 interrogatories per side, Bryant and the other defendants objected to Mattel's Third Set and filed a motion for a protective order. *See* Proctor Decl., Ex. 16 (Defs.' Joint Mot. for Protective Order Re. Mattel's Third Set of Interrogs.). On September 5, 2007, the Discovery Master granted defendants' motion for a protective order, holding that "many of Mattel's interrogatories are compound because they address discrete issues." Proctor Decl., Ex. 13 (Order Granting Joint Mot. for Protective Order ("Sept. 5 Order")), at 135. The Discovery Master permitted Mattel to serve a Revised Third Set of Interrogatories that, unlike Mattel's original Third Set, did not exceed the 50 interrogatory limit. *Id.* at 137.

In his September 5 Order, the Discovery Master also held that an interrogatory that contains subparts seeking "facts supporting a contention, the identity of persons with knowledge, and documents" are not counted separately for purposes of applying the 50 interrogatory limit. *Id.* at 134-35. However, the Discovery Master was not asked to decide, and Bryant believes he did not decide, whether a party propounding an interrogatory may specially define the term "IDENTIFY" to require the responding party to provide multiple, discrete facts regarding each person or document to be identified.

On September 21, 2007, Mattel served a Revised Third Set of Interrogatories on each defendant. Proctor Decl., Ex. 1. Mattel subsequently served a Fourth Set of Interrogatories on October 12, 2007, a Fifth Set of Interrogatories on October 19, 2007, and an Amended Fourth and Sixth Set on October 23, 2007. *Id.*, Exs. 2, 3, 4. Finally, Mattel served a Seventh Set of Interrogatories on October 25, 2007. Werdegar Decl., Ex. 10 (Mattel's Seventh Set of Interrogatories).

In an effort to expand its interrogatories, while still appearing to comply with the Discovery Master's September 5 Order, each of these sets of interrogatories include numerous specially-defined terms, including multiple special definitions of the term "IDENTIFY," which purport to require the defendants to provide numerous, discrete facts with respect to each and every

document and witness identified in their interrogatory responses.  *See*, *e.g.*, Proctor Decl., Ex. 1, at 12-13.  Taking into consideration Mattel's specially defined terms, Mattel's Revised Third through Sixth Sets of Interrogatories more than exhaust Mattel's 50 interrogatory allotment.

Bryant served Responses and Objections to Mattel's Revised Third Set and Amended Fourth Set of Interrogatories on November 15, 2007, the day the temporary stay on discovery imposed by the Court ended.  Proctor Decl., Exs. 5, 6.  Bryant thereafter served Responses and Objections to Mattel's Fifth Set of Interrogatories on November 21, 2007, and to Mattel's Sixth Set and Seventh Set on November 26, 2007.  *Id*, Exs. 7, 8; Werdegar Decl., Ex. 8 (Bryant's Rsps. to Mattel's 7th Set of Interrogatories).

The parties met and conferred telephonically regarding Bryant's original responses to Mattel's Revised Third Set and Amended Fourth Set of Interrogatories on November 27 and on December 4 and 5, 2007.  Werdegar Decl., ¶ 2; Proctor Decl., ¶ 8; Ex. 12.  The parties also met and conferred regarding Bryant's original responses to Mattel's Fifth, Sixth, and Seventh Sets of Interrogatories on December 5, 2007.  Werdegar Decl., ¶ 2; Proctor Decl., ¶ 8, Ex. 12.  During these meet and confer sessions, Bryant explained to Mattel the bases for his objections to Mattel's interrogatories and sought to reach a mutually-acceptable agreement regarding the scope of a number of the interrogatories.  Werdegar Decl., ¶ 3; Proctor Decl., Ex. 12.

For example, Bryant explained that Mattel's Interrogatory Nos. 27-29, which seek to require Bryant to identify seventeen separate pieces of factual information regarding each and every email, conversation, thought or idea, however fleeting, that Bryant may have had that in any way whatsoever related to Bratz, broadly defined, at any point during a specified multi-month period, were over broad and unduly burdensome.  Proctor Decl., Ex. 12.  Bryant asked whether Mattel would consider limiting the scope of these requests in any way, and offered,

1   as one possible compromise, to identify every tangible Bratz-related drawing or

2   design that he had done during each time period. *Id.*; Werdegar Decl., ¶ 3. Mattel,

3   however, refused to accept this compromise or to offer any of its own. Proctor

4   Decl., Ex. 12; Werdegar Decl., ¶ 3.

5   　　　Although Mattel refused to compromise as to any of its interrogatories,

6   Bryant nonetheless agreed to supplement his responses to numerous

7   interrogatories, including fourteen of the fifteen interrogatories at issue in Mattel's

8   motion – Interrogatory Nos. 27-33, 36-38, 40, 43, 45 and 47—in an effort to avoid

9   needless motion practice. Proctor Decl., Ex. 12; Werdegar Decl., ¶ 3. The only

10  interrogatory that Bryant declined to supplement is Interrogatory No. 39, which, as

11  discussed below, is inappropriate. Proctor Decl., Ex. 12  Bryant stated that he

12  would serve these supplemental responses on Friday, December 14, 2007 (which

13  he later postponed to Monday, December 17, 2007, in order to gather certain

14  additional responsive information). *Id.*; Werdegar Decl., Ex. 1. Bryant's

15  agreement to supplement his responses to these interrogatories was communicated

16  both during the parties teleconference on December 6, and in writing on December

17  11, 2007. Proctor Decl., Ex. 12.

18  　　　However, despite Mattel's knowledge that Bryant was in the process of

19  preparing supplemental responses, Mattel filed the present Motion to Compel on

20  December 13, 2007, without having waited to receive Bryant's supplemental

21  responses, much less review or discuss them with Bryant. On December 14, 2007,

22  Bryant wrote to Mattel's counsel asking that Mattel withdraw the present motion

23  as premature and that Mattel meet and confer regarding Bryant's supplemental

24  responses as required by Rule 37 and Local Rule 37-1. Werdegar Decl., Ex. 1.

25  　　　At approximately 10:45 p.m. on December 19, nearly a week after Mattel

26  filed the present motion, and five days after Bryant had requested that Mattel

27  withdraw the motion as premature, Mattel finally contacted Bryant in writing to

28  discuss his supplemental interrogatory responses. Werdegar Decl., ¶ 9, Ex. 2.

1    Although Mattel continued to argue that certain of Bryant's supplemental

2    responses remained deficient, the scope of Mattel's concerns, as reflected in its

3    counsel's correspondence, was much narrower than those expressed by Mattel in

4    the parties' previous conferences of counsel and in its motion to compel.  *See*

5    *generally id.*, Ex. 2.

6        In his letter of December 19, 2007, Mattel's counsel requested that the

7    parties immediately meet and confer regarding Bryant's supplemental responses.

8    Mattel did not, however, offer to withdraw the present motion.  Rather, it only

9    offered to give Bryant one additional day to prepare and file his opposition.  *Id.*  In

10   response, Bryant agreed to meet and confer, but informed Mattel that he could not

11   both meet and confer and finalize his opposition to Mattel's 32-page motion at the

12   same time.  Werdegar Decl., Ex. 3.  Bryant again requested that Mattel withdraw

13   the present motion as moot and explained that if Mattel did so, Bryant could meet

14   and confer immediately.  *Id.*  If Mattel insisted on pursuing this motion, Bryant

15   explained that he would not be available to meet and confer until December 21,

16   2007, the day after this opposition was due.  *Id.*

### III.   ARGUMENT

17

18   **A.    Mattel's motion to compel should be denied as untimely.**

19       Mattel's motion to compel can be viewed one of two ways:  Either it is a

20   motion to compel directed against Bryant's allegedly inadequate original responses

21   to Mattel's interrogatories, or it is a motion to compel further supplemental

22   responses from Bryant.  Viewed either way, Mattel's motion is untimely and

23   inappropriate.

24       To the extent Mattel's motion is directed at Bryant's original interrogatory

25   responses—which are the only responses it properly could be directed at, as those

26   are the only responses Mattel had received, or met and conferred about, prior to

27   filing its motion—the motion is moot, except as to Interrogatory No. 39.  As courts

28   across the country repeatedly have held, motions to compel are rendered moot by

the service of responses or supplemental responses to the discovery requests at issue.  *See, e.g., Ippolito v. Goord*, No. 05-CV-6683L, 2007 WL 2769503, *1-2 (W.D.N.Y. Sep. 21, 2007) (denying motion to compel responses to interrogatories as moot where opposing party had served responses after the motion was filed); *Samuels v. Huff*, No. 04-0859-P, 2007 WL 1237961, *1 (W.D. La. Apr. 27, 2007) (same); *Geico Cas. Co. v. Beauford*, No. 8:05-CV-697-T24-EAS, 2007 WL 1192446, *2 (M.D. Fla. Apr. 23, 2007) (denying as moot motion to compel Rule 26 disclosures because defendant served amended and supplemental disclosures after motion to compel was filed); *Rhea v. Uhry*, No. 3:05CV189 (RNC), 2007 WL 926908, *2 (D. Conn. Mar. 26, 2007) (denying motion to compel responses to interrogatories as moot where opposing party had served responses after the motion was filed); *Sotelo-Camacho v. Morales*, CIVA No. 1:05CV1349 WSD, 2006 WL 3709613, *1 (N.D. Ga. Nov. 7, 2006) (same); *E.E.O.C. v. V & J Foods, Inc.*, No. 05-C-194,2006 WL 2947474, *1 (E.D. Wis. Oct. 16, 2006) (same); *Catalano v. GWD Management Corp.*, No. CV-403-167, 2005 WL 5519861, *15 (S.D. Ga. Mar. 30 2005) (same); *Birdine v. City of Coatesville*, No. 08172004, 2004 WL 2786153, *2 (E.D. Pa. Aug. 17, 2004) (same); *Epling v. UCB Films, Inc.*, Nos. 98-4226-RDR, 98-4227-RDR, 00-4062-RDR, 00-4186-RDR, 2001 WL 1249362, *3 (D. Kan. Sep. 27, 2001) (same); *Garland v. Interlake, Inc*., CIV A No. 28-9096, 1989 WL 71467, *1 (E.D. Pa. Jun. 28, 1989) (denying motion to compel interrogatories as moot because defendants had filed supplemental responses to the interrogatories at issue).

On the other hand, to the extent Mattel's motion is directed at Bryant's supplemental responses, the motion is premature and was filed in violation of Federal Rule of Civil Procedure 37(a)(2) and Local Rule 37-1.  It is undisputed that Mattel filed the motion without ever having received Bryant's supplemental responses, much less having met and conferred with Bryant about those responses.  Thus, Mattel has not satisfied its obligation under Rule 37(a)(2) to meet and confer

in good faith regarding those responses and to certify in its moving papers that it has done so.  *See Use Techno Corp. v. Kenko USA, Inc.*, No. C-06-02754 EDL, 2007 WL 3045996, at *1 (N.D. Cal. Oct. 18, 2007) ("Counsel are required to meet and confer, or attempt to meet and confer, in good faith prior to filing a discovery motion.").

To cite one of many possible examples, during the parties' telephonic meet and confer, Bryant offered to provide a complete supplemental responses to Mattel's Interrogatory No. 40, which asks for information about Bryant's computer ownership and use, and Interrogatory No. 47, which requests a variety of information about Bryant's search for responsive documents in this case.  Proctor Decl., Ex. 12.  Mattel indicated that it appreciated Bryant's offer to supplement and never suggested that it would move to compel with respect to these interrogatories.  Proctor Decl., Ex. 11, at 4.  Indeed, in his December 6, 2007 meet and confer letter, Mattel's counsel wrote:

> You agreed to supplement Mr. Bryant's response to Interrogatory No. 47, and stated that you were inclined to provide a complete response but were not committing to do so.  Thank you for agreeing to provide a supplemental response.

*Id.*[2]  This was Mattel's last word on this interrogatory, which is nonetheless included in the present motion.  Mattel did not wait to see Bryant's supplemental responses to this, or any other interrogatory, and it never bothered to inquire whether Bryant's response was limited in any material way by his stated objections.

Mattel's actions with respect to the present motion are analogous to those recently litigated in *Majdalani v. Legacy Bank*, No. 06-1317-MLB, 2007 WL 2694043 (D. Kan. Sep. 11, 2007).  In that case, the parties met and conferred

---

[2] Counsel for Bryant's only hesitation with respect to his agreement to supplement Bryant's response to this interrogatory was that , given Mattel's broad definition of "COLLECTED" and other terms, certain of the requested information could implicate the attorney-client privilege and the attorney work product doctrine.

regarding plaintiff Majdalani's First Set of Interrogatories, during which defendant Legacy Bank agreed to supplement its responses to the interrogatories at issue.  *Id.* at *4-5.  Yet despite Legacy Bank's agreement to supplement, Majdalani went ahead and filed a motion to compel regarding the very same interrogatories.  *Id.* at 5.  The court denied the motion as premature on grounds that "[t]here is no indication or evidence in the record that plaintiff conferred with defendant after receipt of the supplemental responses" as is required.  *Id.*  The court explained that "[i]nherent in both [Rule 37 and the equivalent local rule] *is the principle that a motion to compel is inappropriate when, during the meet and confer process, the party opposing discovery agrees to supplement its discovery responses.*"  *Id.* (emphasis added).

The same principle applies here.  There is no excuse for Mattel's failure to abstain from filing the present motion until it had received Bryant's promised supplemental responses and met and conferred with Bryant regarding any remaining concerns it may have had regarding those responses.  Doing so would have taken, at most, an additional few days (Bryant's supplemental responses were served two court days after Mattel's motion).  Werdegar Decl., ¶ 8.  And by forbearing for those few days, Mattel could have substantially reduced, if not eliminated altogether, the number of interrogatories in dispute and, thus, the burden on the Court and the parties of litigating yet another discovery matter.  *Cf. Excess Ins. Co., Ltd. v. Rochdale Ins. Co.*, 05 Civ. 10174, 2007 WL 2900217, at *1 (S.D.N.Y. Oct. 4, 2007) ("The requirement that parties meet and confer is designed to "resolve discovery matters without the court's intervention to the greatest extent possible.  Only those matters that remain unresolved after serious attempts to reach agreement should be the subject of a motion to compel.").

That Mattel properly should have waited to receive Bryant's supplemental responses is further demonstrated by Mattel's post hoc meet and confer letter

Werdegar Decl., ¶ 4.

BRYANT'S OPPOSITION TO MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES
CASE NO. CV 04-09049 SGL (RNBx)

regarding those responses.  Werdegar Decl., Ex. 2.  Although Mattel still finds fault with many of Bryant's answers, a close reading of Mattel's letter reveals that the dispute between the parties is now much narrower, and could be narrowed further still by additional conferences of counsel.  For example, Mattel's only stated complaint regarding Bryant's supplemental response to Interrogatory No. 40 (regarding his computer ownership and use) is that his response does not provide enough information about his parents' and former roommate Elise Cloonan's computers (*i.e.,* computers that are not within Bryant's possession custody or control).  *Id.*  Any confusion regarding this narrow aspect of Bryant's response should be easily resolvable through the meet and confer process.  The same is true with respect to Bryant's supplemental responses to Interrogatory Nos. 45 and 47, for which Mattel has stated only narrow remaining concerns, and likely several others.

Mattel's decision "to shoot first and ask questions later" should not be condoned.  As already discussed, Central District Local Rule 37-1 and Federal Rule of Civil Procedure 37(a)(2) both require that a party meet and confer in good faith before filing a motion to compel as to any discovery response.  Courts routinely deny motions to compel where the moving party has failed to comply with its meet and confer obligations.  *See, e.g.*, *Use Techno*, 2007 WL 3045996, at *1; *Sherman v. City of Davis*, No. CIV S-04-2320 LKK EFB PS, 2007 WL 1454278, at *2-3 (E.D. Cal. May 17, 2007); *Tuggle v. Kamara*, No. C 05-4142 MHP, 2007 WL 760596, at *4 (N.D. Cal. March 9, 2007); *Morris v. McGrath*, No. C 04-3142 SI, 2006 WL 870965, at *1 (N.D. Cal. April 3, 2006); *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 636 (N.D. Colo. 2003); *Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006).  Furthermore, Local Rule 37-4 specifically authorizes sanctions where a party fails to comply with its meet and confer obligations.  And courts in the Central District have imposed sanctions for failing adequately to meet and confer on numerous occasions.  *See, e g, Cable & Computer Tech, Inc. v.*

10

*Lockheed Saunders, Inc.*, 175 F.R.D. 646, 649-650 (C.D. Cal. 1997); *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 285 (C.D. Cal. 1996).  The Discovery Master should follow these courts' lead.

In sum, given Mattel's failure to meet and confer with Bryant regarding any of Bryant's supplemental responses, the Discovery Master should deny Mattel's motion to compel with respect to those interrogatories and should order Mattel to confer in good faith with Bryant regarding any legitimate concerns Mattel has with respect to Bryant's supplemental responses.  If the parties cannot resolve all of Mattel's remaining concerns after conferring, then, and only then, should Mattel be permitted bring a motion to compel, and that motion should be narrowly-tailored to address only the specific portions of Bryant's supplemental interrogatory responses that Mattel believes remain deficient.  Additionally, as discussed below, Mattel should be sanctioned for its violation of Federal Rule of Procedure 37(a)(2) and Local Rule 37-1.

**B.      If the Court considers the substance of Mattel's motion, despite Mattel's failure to meet and confer, it should uphold Bryant's objections.**

For all the foregoing reasons, the Discovery Master need not, and should not, consider the merits of Mattel's motion until after the parties have had the opportunity to meet and confer regarding Bryant's supplemental responses.  Mattel first communicated any concerns regarding those responses to Bryant after the close of business on December 19—the day before this opposition brief was due to be filed—and, consequently, Bryant has not had any meaningful opportunity to evaluate and respond to Mattel's alleged concerns.  Werdegar Decl., ¶ 9.  Thus, any issues with respect to Bryant's supplemental responses simply are not ripe at this time, and the record before the Discovery Master is not complete.

The premise of Mattel's motion—and the basis upon which it will likely argue the motion remains relevant—appears to be that because Bryant declined to withdraw each and every one of his stated objections to Mattel's interrogatories,

BRYANT'S OPPOSITION TO MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES
CASE NO. CV 04-09049 SGL (RNBx)

any supplemental response he provides will necessarily be deficient.  But this premise lacks any support in law or logic.  It simply is not true that a response, or a supplemental response, to an interrogatory is incomplete or inappropriate simply because the responding party has interposed an objection to an interrogatory.  Mattel has not cited any cases so holding, and Bryant has not been able to identify any such authority.  Moreover, if Mattel's novel argument were accepted, then each and everyone of Mattel's interrogatory responses would be similarly deficient, as each is prefaced by a host of similar, if not identical, objections.  Interrogatory responses must be evaluated, on a response by response basis, based upon their substance.  And that evaluation should only take place after the meet and confer process has run its course.  However, if the Discovery Master nonetheless elects to consider the substance of Mattel's motion, the Discovery Master should deny it on the merits.

**1.     Bryant's objections to Mattel's contention interrogatories (Nos. 30-33, 36-38, 42-44, 48-50).**

Mattel contends that Bryant's objections to its contention interrogatories are unfounded.  Mattel is wrong.  These interrogatories are inappropriate in numerous respects, as explained in Bryant's objections.

**a.     Mattel's contention interrogatories, as drafted, are overbroad and abusive.**

Most fundamentally, Mattel's contention interrogatories are overbroad and unduly burdensome.[3]  These interrogatories all ask Bryant to "state *all* facts" and "IDENTIFY *all* PERSONS … and *all* DOCUMENTS that REFER OR RELATE to such facts" supporting his contentions on such broad topics as whether Mattel is entitled to injunctive relief (Interrogatory No. 32) or whether Mattel is entitled to

---

[3] On page 8 of its Motion, Mattel argues that Bryant failed to specify how these interrogatories are overbroad, burdensome or oppressive.  However, later in its Motion, Mattel acknowledges that Bryant provided specific authority to support these objections.  *See* Mattel's Mot., at 12 n.39.

punitive damages in this action (Interrogatory No. 33).  Proctor Decl., Ex. 1, at 17. "Blunderbuss" interrogatories of this type have repeatedly been condemned by federal courts across the country as unduly burdensome and abusive.  *See, e.g., Lawrence v. First Kansas Bank & Trust Co*., 169 F.R.D. 657, 663-664 (D. Kan. 1996) ("Some lawyers attempt to use contention interrogatories to require the opponent to state every fact, identify every witness, and specify each document supporting each allegation of the complaint or answer.  *Such blunderbuss interrogatories are likely to be found objectionable and should not be used*." (emphasis added)); *see also Lucero v. Valdez*, 240 F.R.D. 591, 594 (D. N.M. 2007) ("Contention interrogatories that systematically track all of the allegations in an opposing party's pleadings, and that ask for "each and every fact" and application of law to fact that supports the party's allegations, are an abuse of the discovery process because they are overly broad and unduly burdensome."); *Clean Earth Remediation and Const. Services, Inc. v. American Intern. Group, Inc*., 245 F.R.D. 137, *141 (S.D.N.Y. 2007) (rejecting as improper interrogatories seeking "identification of each fact supporting an allegation"); *Luna v. Del Monte Fresh Produce (Southeast), Inc.*, No. 1-06-CV-2000-JEC, 2007 WL 1500269, *8 (N.D. Ga. May 18, 2007) (holding that "Plaintiffs' interrogatories are overly broad to the extent they request 'all' facts in support of defendants' assertions"); *Grynberg v. Total S.A.,* No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, *6 (D. Colo. May 3, 2006) (ruling that interrogatory that asks defendant to "state all material facts supporting the denial or affirmative defense, identify all witnesses with knowledge of those facts, and identify all material documents supporting the denial or affirmative defense is unduly burdensome as a matter of law and an abuse of the discovery system.").

This objection applies with particular force with respect to Mattel's interrogatories that seek "all facts" supporting Bryant's denial of certain claims by Mattel, such as his denial of Mattel's claim that he breached his employment

agreement and that he breached his alleged fiduciary duties to Mattel.  Proctor Decl., Ex. 1, at 18.  As one court in the Central District has explained, such interrogatories are inherently overbroad and unduly burdensome, because the "universe of potentially responsive information [to prove a negative proposition] is almost endless."  *Safeco*, 181 F.R.D. at 447-448 (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact").

Mattel admits in its motion that "interrogatories seeking all facts supporting the denial of an assertion may, in some circumstances and in some cases, impose an undue burden."  Mattel Mot., at 12.  But Mattel then goes on to rely upon decades-old case law from outside the Ninth Circuit to argue that the test for determining when such interrogatories become unduly burdensome is a strict balancing test, which Mattel claims tips in its favor.  *See* Mattel Mot., at 13.  What Mattel fails to mention is that current authority from *within* the Ninth Circuit and elsewhere holds that "all facts" contention interrogatories are only appropriate when directed toward "discrete, narrow" issues, not broad allegations effectively implicating all the evidence in the case.  *See Tatum v. Schwartz*, No. CIV S-06-1440 RRB EFB, 2007 WL 2220977, *1 (E.D. Cal. Aug. 2, 2007) (explaining that courts have approved of "state all facts supporting" a particular contention interrogatories "when they are limited to discrete, narrow factual events."); *see also Chapman v. Cal. Dept. of Educ.*, No. C-01-1780 CRB, 2002 WL 32854376, *3 (N.D. Cal. Feb. 6, 2002) (distinguishing the interrogatories before the court "from the problem of interrogatories seeking 'all facts' supporting denials of wide ranging allegations pled by the plaintiff discussed in *Safeco, supra*." because "the interrogatories here directed at specific factual questions."); *see also Grynberg*, 2006 WL 1186836, *6 ("It is proper, of course, to inquire about the material facts supporting specific factual matters raised in the pleadings."); *Lawrence*, 169 F.R.D. at 664 ("It is altogether different for interrogatories to inquire about specific

issues[.]").  Mattel's interrogatories unquestionably cross this line.  None of Mattel's contention interrogatories are directed at "discrete, narrow" issues, but rather at Bryant's contentions on the broadest possible topics.

Mattel's argument that Bryant's objections are inappropriate is also disingenuous in light of Mattel's own discovery responses in this litigation.  In Mattel's supplemental responses to MGA's First Set of Interrogatories, which Mattel served just days before Mattel filed the present motion, Mattel asserts that MGA's almost identically worded "state all facts" interrogatories are "unreasonably burdensome and overbroad in that it purports to require Mattel to summarize all facts and identify all documents on this subject, including without limitation facts that are known to or in the possession, custody and control of the defendants and non-parties, including non-parties associated with defendants."  Werdegar Decl., Ex. 6, at 4, 101, 115.  Mattel did not explain during the parties' meet and confer conferences—and does not explain in its memorandum of points and authorities—how its continued assertion of this objection can be squared with its request that the Court overrule Bryant's similar objections as inappropriate with respect to its own interrogatories.  Rather, it appears that Mattel is once again seeking to apply a double standard when it comes to the parties' discovery obligations.

Finally, Mattel argues that Judge Larson rejected similar over breadth and burden objections when it granted Mattel's motion for leave to serve a supplemental interrogatory.  *See* Mattel Mot., at 14-15.  What Mattel neglects to explain, however, is that Judge Larson significantly narrowed the scope of Mattel's requested supplemental interrogatory.  Specifically, Judge Larson changed the wording of the supplemental interrogatory from the open-ended "state all facts which support YOUR affirmative defenses" language requested by Mattel to the much more limited "state all facts upon *which YOU intend to rely at trial* to support YOUR affirmative defenses."  Proctor Decl., Ex. 20 at 225-26 (emphasis

added).  In doing so, Judge Larson implicitly recognized that interrogatories asking for "all facts," as opposed to a parties' "principle facts" or the facts it intends to "rely upon at trial," are overbroad and inappropriate.  *Cf. Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 405 (D. Kan. 1998) ("Interrogatories may ... properly ask for the 'principal or material' facts which support an allegation or defense").

### b.    Bryant's other objections to Mattel's contention interrogatories are also appropriate.

Bryant's overbreadth and burden objections are not his only objections to Mattel's contention interrogatories.  Bryant has also objected to Mattel's contention interrogatories as seeking information outside Bryant's possession, custody, or control.  Mattel claims that this objection is merely boilerplate and without merit.  But Mattel's interrogatories in no way limit their demand that Bryant's "state all facts" and "IDENTIFY" all witnesses and "DOCUMENTS" supporting his contentions to facts, witnesses and documents within Bryant's possession, custody or control.  Consequently, on their face, these interrogatories ask for information that is beyond the scope of Bryant's discovery obligations under the Federal Rules and are objectionable.

Bryant also has additional objections to certain of these interrogatories, many of which Mattel fails to dispute in its motion.  For example, Mattel's Interrogatory No. 32 asks Bryant to:

> State all facts that support YOUR contention, if YOU so contend, that MATTEL is not or would not be entitled to injunctive relief as requested in its COMPLAINT and/or COUNTERCLAIMS if it is ultimately determined that MATTEL owns one or more BRATZ INVENTIONS, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

Proctor Decl., Ex. 1, at 17.  Bryant objected to this interrogatory on grounds that it asks Bryant to assume facts not in (and contrary to) evidence, and further asks him to base any response on an incomplete hypothetical scenario.  Proctor Decl., Ex. 5, 65-67.  This objection is well-taken, and apparently undisputed by Mattel.

Hypothetical contention interrogatories are inappropriate as a general matter.  *See, e.g., Kendrick v. Sullivan*, 125 F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention interrogatories directed at hypothetical scenarios).  And this particular hypothetical contention interrogatory is especially defective because the hypothetical it poses is incomplete in critical ways.  Specifically, whether Mattel would or would not be "entitled to injunctive relief" depends on, among other factual and legal factors, which specific "BRATZ INVENTION" Mattel is hypothetically found to own, and whether and / or to what extent it is determined that any Bratz products that have been produced and sold are derivative works of any such BRATZ INVENTIONS—all information that is not provided in the incomplete hypothetical scenario posited in this interrogatory.

In sum, Mattel's contention interrogatories, seeking "all facts" supporting certain broad contentions, are overbroad and unduly burdensome, and Bryant's objections to them are appropriate.  Nonetheless, in an effort to avoid the present motion, Bryant agreed to supplement his responses to these contentions, and he has now done so.

### 2.   Bryant's objections to Mattel's interrogatories regarding BRATZ INVENTIONS (Nos. 27-29).

Mattel's Interrogatories 27 through 29 regarding the "BRATZ INVETIONS" are wildly overbroad, yet Mattel has steadfastly refused to agree to any limitation on these interrogatories.

These interrogatories asks Bryant to "IDENTIFY" (*i.e.,* provide (a) the bates number of any document that "REFERS OR RELATES TO the BRATZ INVENTION"; (b) the IDENTITY of the individual author or creator of the BRATZ INVENTION; (c) the IDENTITY of each other individual who contributed in any manner to the BRATZ INVENTION; (d) the form, material and medium of the BRATZ INVENTION; (e) the title or name of the BRATZ INVENTION; (f) the version, modification, revision or iteration number of the

17

1  BRATZ INVENTION; (g) the current location of the original of the BRATZ

2  INVENTION; (h) the first day on which the BRATZ INVENTION was created; (i)

3  the last day on which the BRATZ INVENTION was CREATED; and (j) whether

4  the entire invention was CREATED during the period of time listed in the

5  Interrogatory (and if not, which portions were created during, earlier, or later than

6  the period of time listed in the Interrogatory))—over a period of timing spanning

7  several years—every "BRATZ INVENTION", defined by Mattel as every

8  "representation, idea, concept, work, process, procedure, plan, improvement,

9  design or other development, whether fixed in tangible form or not" that "refer[s]

10  to, constitute[s], contain[s], embod[ies], depict[s], incorporate[s], reflect[s],

11  evidence[s], identif[ies], state[s], deal[s] with, comment[s] on, respond[s] to,

12  describe[s], analyze[s], support[s], refute[s], contradict[s], or in any way

13  pertain[s]" to "any project, doll or [representations, whether two-dimensional or

14  three dimensional, and whether in tangible, digital, electronic or other form,

15  including but not limited to all works, designs, blueprints, schematics, diagrams,

16  images, sculptures, prototypes, models, samples, rotocasts, reductions to practice,

17  developments, inventions and/or improvements, as well as other items, things and

18  DOCUMENTS [broadly defined] in which any of the foregoing are or have been

19  expressed embodied, contained fixed, or reflected in any manner, whether in whole

20  or in part"] ever known by [the name Bratz] (whether in whole or in part and

21  regardless of what such product, doll or DESIGN or portion thereof is or has also,

22  previously or subsequently called) or that is now or has ever been sold or marketed

23  as part of the 'Bratz line,' and each version or iteration of such product, doll or

24  DESIGN or any portion thereof … includ[ing] without limitation any names,

25  fashions, accessories, artwork, packaging or any other works, materials, matters or

26  items included or associated therewith."  Proctor Decl., Ex. 1, at 9-16.[4]

27

28  _____

[4] Notably, Mattel makes no mention of the absurdly sweeping nature of its
definition of BRATZ INVENTION in its motion, choosing instead to use the term

1    The burden imposed by these interrogatories is not only undue, it is

2  insurmountable.  Literally interpreted, these interrogatories ask Bryant to catalogue

3  every idea, thought, conversation, musing, doodle, etc., however fleeting or

4  insignificant, that he has had having anything to do with anything in any way

5  related to Bratz from time he came up with the idea in 1998 through June 2001, a

6  nearly three year period.  There is no justification for such sweeping

7  interrogatories.  Mattel has made no effort whatsoever in drafting these

8  interrogatories to tailor them to seek information that is genuinely likely to be

9  useful.[5]  And despite Bryant's repeated attempts to find a workable compromise so

10  that discovery could proceed without further motion practice, Mattel has refused to

11  consider any limitation on the scope of these interrogatories, including Bryant's

12  offer to provide the requested information with respect to all the tangible drawings

13  and designs he created during each of the relevant time periods.  Mattel's

14  uncompromising stance is unreasonable and should not be condoned.  As one court

15  recently explained:

16        The nature of the federal discovery rules themselves suggests they are
        intended to facilitate reasonable discovery, not unduly burdensome,
17        but selected by each party to fit the needs of the particular case. The
        discovery rules provide no absolute, unharnessed right to find out
18        every conceivable, relevant fact that opposing litigants know.... This
        requires counsel in any given case to exercise professional judgment
19        and determine the priorities of discovery.

20  *Grynberg*, 2006 WL 1186836, *6 -7.  This admonition could not be more

21  applicable to Mattel's "BRATZ INVENTION" interrogatories, or to Mattel's

22  discovery conduct more generally.

23

24  _____

"Bratz invention" in the lower case in its brief, as if it were not seeking to impose
25  any special definition on the term.  *See, e.g.,* Mattel Mot. at 16-17.  The Discovery
Master should not be deceived.

26  [5] Mattel claims that these interrogatories "seek an identification of Bratz inventions
[lower case] that .... ***constitute Mattel property***"  *Id.* at 19 (emphasis in original).
27  But Mattel cannot be seriously contending that it owns everything that falls within
the scope of its definition of Bratz invention, including Bryant's every thought or
28  passing comment that touched upon Bratz.

BRYANT'S OPPOSITION TO MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES
CASE NO. CV 04-09049 SGL (RNBx)

### 3.   Bryant accurately answered Mattel's Interrogatory No. 45, as written.

Mattel's Interrogatory No. 45 asks Bryant to:

IDENTIFY each BRATZ PRODUCT that has been SOLD by YOU or YOUR licensees and, for each such BRATZ PRODUCT, state fully and separately (a) the number of units of each such BRATZ PRODUCT SOLD by YOU or YOUR licensees, (b) the gross and net revenue received by YOU from such SALES of each such BRATZ PRODUCT, (c) all costs YOU have incurred in connection with each such BRATZ PRODUCT, including but not limited to YOUR cost of goods sold, and (d) YOUR gross and net profits from each such BRATZ PRODUCT.

Proctor Decl., Ex. 4, at 48.  Bryant answered this interrogatory accurately and completely:  he has not sold any "BRATZ PRODUCT."  *Id.*, Ex. 8 at 109.  Mattel nonetheless complains about Bryant's response, arguing that it is "not plausible."  Mattel Mot., at 25.  But as Bryant explained to Mattel in meet confer, this interrogatory, as written by Mattel, does not apply to Bryant's transfer of rights to his Bratz idea to MGA in October 2000.  Specifically, BRATZ PRODUCT is defined by Mattel for purposes of this interrogatory as "any product . . . ."  Proctor Decl., Ex. 4, at 45.  A "product," particularly as used in this interrogatory (which asks for number of units sold, costs of goods sold, product and SKU numbers, etc.) is not ordinarily understood to mean a unique, abstract idea, such as Bryant's Bratz idea.  Rather a "product" ordinarily is defined and understood to mean "an article or substance manufactured for sale."  Concise Oxford Dictionary of Current English (8th ed. 1990); *cf. Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 655 (D. Kan. 2006) (explaining that a party responding to discovery requests should "attribute ordinary definitions to terms and phrases used in interrogatories").  Bryant's Bratz idea quite clearly does not fit this ordinary definition.

Nonetheless, although he believes that his original response was complete and accurate, Bryant agreed to supplement his response to this interrogatory.

### 4.    Bryant's objections to Interrogatory Nos. 40 and 47.

Bryant's objections to Interrogatory Nos. 40 and 47 were entirely appropriate.  Pursuant to the special definitions of "IDENTIFY" used by Mattel, each of these interrogatories requested that Bryant provide separate, distinct, and multiple responses.  For example, Interrogatory No. 40 would have require Bryant to provide numerous discrete facts for each storage device, including:

(a) the individuals that use or have used the storage device;

(b) the current location of the storage device;

(c) the identity of the person who possesses the storage device or if it no longer exists, the date on which it was destroyed or disposed of;

(d) the type of storage device;

(e) whether the storage device has ever been copied or imaged (and if so, the current location of each copy or image (and the identity of the persons who possess such copies or image);

(f) the date(s) on which such copies or images were made;

(g) the manufacturer name, brand, model name, model number, and serial number of the storage device;

(h) the technical specifications and capacities of such storage device;

(i) any known business title of any person who possesses the storage device;

(j) any known business title of any person who possesses a copy of the storage device

(i) the current or last known business affiliation of any person who possesses the storage device;

(j) the current or last known business affiliation of any known business title of any person who possesses a copy of the storage device;

(k) the current or last known residential address of any person who possesses the storage device;

(l) the current or last known residential address of any person who possesses a copy of the storage device;

(m) the current or last known business address of any person who possesses the storage device;

(n) the current or last known business address of any person who

possesses a copy of the storage device;

(o) the current or last known relationship to MGA of any person who possesses the storage device;

(p) the current or last known relationship to MGA of any person who possesses a copy of the storage device;

(q) the current or last known telephone number of any person who possesses the storage device;

(r) the current or last known telephone number of any person who possesses a copy of the storage device.

Proctor Decl., Ex. 1, at 12-14, 19.  Interrogatory No. 47 required a similarly lengthy laundry list of discrete facts with respect to the sources of information from which Bryant has collected documents in this action.  *Id.*,  Ex. 3, at 35-37, 39.

Mattel attempts to squeeze these interrogatories into the scope of the Discovery Master's September 5 Order, which found that a single interrogatory could request the following three pieces of information from a recipient: (1) facts supporting a contention; (2) persons with knowledge of the contention, and; (3) documents referring or relating to the contention.  *See* Proctor Decl., Ex. 13, at 134-35.  The reality, however, is that these interrogatories extend far beyond the scope of what the Discovery Master found was permissible.  Through its multiple specialized definitions of the term "IDENTIFY," Mattel attempts to shoehorn a request for twenty discrete pieces of information into a single interrogatory. Bryant does not believe that Mattel's tactics are within either the letter or the spirit of the Discovery Master's September 5 Order.

In spite of Bryant's reasonable objections to Interrogatory Nos. 40 and 47, Bryant offered to provide as complete as possible a supplemental response to each of these interrogatories.  Werdegar Decl., ¶ 4.  In fact, Mattel indicated it was satisfied with Bryant's offer.  *Id.*  Yet rather than waiting to receive and review Bryant's supplemental responses, Mattel chose to rush ahead with a motion to compel regarding these interrogatories.

**C.    Mattel's motion to compel a response to Interrogatory No. 39, which requests that Bryant identify his bank and other financial institution accounts, should be denied.**

The only one of Bryant's interrogatory responses that is properly before the Discovery Master relates to Interrogatory No. 39, which asks Bryant to:

> IDENTIFY [i.e., "to state, fully and separately as to each account, the name of the bank or financial institution, the location and/or branch of the bank or financial institution, the account number, the name in which the account is or was held, and the time period during which the account is or was open"] each and every bank or financial institution account that REFERS OR RELATES TO [broadly defined to mean to "relate to, refer to, constitute, contain, embody, depict, incorporate, reflect, evidence, identify, state, deal with, comment on, respond to, describe, analyze, support, refute, contradict, or in any way pertain to"] YOU, including accounts in YOUR name or for YOUR benefit.

As noted above, this is the only interrogatory response that Bryant did not agree to supplement and has not supplemented.  He has not done so because this interrogatory is a premature attempt by Mattel to obtain sensitive personal financial information not only of Bryant himself, but also of Carter Bryant Enterprises, which is not a defendant in this case, that goes far beyond what is relevant or necessary at this state of the proceedings.  Discovery into the identity and location of all of a defendant's personal assets is only appropriate under the Federal Rules and California law *after* entry of a judgment.  *See* Fed. R. Civ. P. 69(a); Cal. Code Civ.Proc. § 708.110; *see also Sommers v. West*, No. 97 Civ. 4902 (JSM), 1997 WL 772783, *1 (S.D.N.Y. Dec. 12, 1997) ("the amount and location of a defendant's assets are generally irrelevant unless and until a judgment against the defendant is recovered) (citing 8 C. Wright, A. Miller & R. Marcus, Federal Practice & Procedure § 2010 at 184 (2d ed. 1994)).  Before entry of judgment, as is the case here, this information is considered private and protected under the California Constitution.

Under the California constitution, the right to privacy is an "'inalienable right' expressly protected by force of constitutional mandate." *Valley Bank v. Superior Court*, 15 Cal. 3d 652, 656 (1975) (quoting Cal. Const., art. I, § 1).  It

23

408135.03

provides protection against the "unwarranted, compelled disclosure of various private or sensitive information regarding one's personal life . . . including his or her financial affairs." *Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1004 (2000). Federal courts have also recognized the need to protect private financial and corporate information from unwarranted discovery, such as Mattel's Interrogatory No. 39. *See*, *e.g.*, *Premium Service Corp. v. Sperry & Hitchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (quashing subpoena because plaintiff's need for documents "was not sufficient to outweigh the burden and invasion of corporate privacy . . ."); *Peskoff v. Faber*, 230 F.R.D. 25, 28-30 (D.D.C. 2005); *Does I-VI v. Yogi*, 110 F.R.D. 629, 633 (D.D.C. 1986).

Mattel attempts to justify Interrogatory No. 39 by spending several pages arguing why certain specific financial information of Bryant's is relevant to its claims in this case. In particular, Mattel asserts that payments made by MGA to Bryant and Bryant's net worth are relevant to its claims under Cal. Penal Code § 641.3, for punitive damages, and to establish bias. Mattel Mot., 20-22. But Interrogatory No. 39 goes far beyond materials related to those discrete issues. Rather, Interrogatory No. 39 seeks information concerning the entire universe of Bryant's financial information and the financial information of other entities to the extent it is even peripherally related to Bryant. Given the extraordinarily broad definition of the term "REFERS OR RELATES TO," Interrogatory No. 39 requires detailed account information for *any* account, no matter under whose name or for whose benefit, that in any way mentions Bryant or reflects his existence. The interrogatory therefore not only implicates Bryant's privacy interest in his personal financial information, but also the privacy interests of nonparties, including Carter Bryant Enterprises and, potentially, Bryant's friends and family.

To the extent that Interrogatory No. 39 seeks relevant information, that information is readily available through alternative, less intrusive sources. Bryant has produced, and will continue to produce his royalty statements from MGA. *See*

Werdegar Decl., Ex. 7, at 8-9.  And Mattel can obtain additional information concerning payments from MGA to Bryant via MGA's financial records or at the continuation of Bryant's deposition.  There is no need for the sweeping pre-judgment financial discovery Mattel is seeking through this Interrogatory, much less a compelling need sufficient to overcome Bryant's privacy rights.

The circumstances of this case mirror those presented in *Peskoff* where the court found that the defendant's financial records should be protected from discovery because any relevant information sought in those records was available through other sources.  *See Peskoff*, 230 F.R.D. at 29.  In that case, the court noted that "the plaintiff has failed to explain why any such transactions [from the company to the defendant] could not be exposed via the financial records of the [company]."  *Id.*  The *Peskoff* court thus held that "[u]ntil a persuasive argument is made based on a review of the [company's] financial records, this Court will not order the production of the defendant's personal account information.  To do otherwise, in this Court's view, would allow an unwarranted fishing expedition."  *Id.*  The outcome here should be no different.

**D.    Mattel's request for sanctions should be denied, and the Court should instead impose sanctions against Mattel.**

Bryant has engaged in no sanctionable conduct.  Where the parties have disagreed about discovery, Bryant has tried to resolve disputes through the meet and confer process.  Where Mattel has made reasonable and relevant discovery requests, Bryant has endeavored to comply fully with them.  Even where Mattel has made overbroad and burdensome discovery requests, Bryant has attempted to comply with them to the extent possible.  Yet despite Bryant's good faith attempts to meet and confer with Mattel regarding these objections, Mattel refused to even wait to review Bryant's supplemental responses before filing a motion to compel and for sanctions.

Attorney's fees are not warranted in the context of discovery when there is a

"genuine dispute" of fact or law, *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), or "if reasonable people could differ as to [the appropriateness of the contested action]," *Id.* (*quoting Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982) (alteration in original).  In the sections above, Bryant has articulated how Mattel's interrogatories are overbroad, unduly burdensome, compound, and intrude unnecessarily upon Bryant's privacy interests.  And Bryant has provided citations to persuasive and/or controlling authority directly supporting his positions.   Under such circumstances, sanctions against Bryant are unwarranted.

Rather, it is Mattel that should be sanctioned for its failure to comply with its meet and confer obligations.  Under Local Rule 37-4, "[t]he failure of any counsel to comply with or cooperate in the [meet and confer] procedures may result in the imposition of sanctions."  Central Dist. Local Rule 37-4; *see also Cable & Computer Tech.*, 175 F.R.D. at 649-50; *Walt Disney*, 168 F.R.D. at 285.  The requirement that parties meet and confer is designed to "resolve discovery matters without the court's intervention to the greatest extent possible.  Only those matters that remain unresolved after serious attempts to reach agreement should be the subject of a motion to compel."  *Excess Ins. Co.*, 2007 WL 2900217, at *1.  Local Rule 37 thus attempts to lessen the burden on the court and the unnecessary expenditure of resources by litigants by promoting informal, extrajudicial resolution of discovery disputes.

Here, as discussed at length above, Mattel filed a motion to compel before even reviewing Bryant's supplemental responses.  Mattel's single-minded focus on filing a motion to compel no matter what the meet and confer process achieved by definition cannot constitute a "good faith effort" at informal resolution.  *See* Central Dist. Local Rule 37-1.  The purpose of a meet and confer is to force the parties to resolve their discovery disputes informally and to only trouble the Court on whatever issues they cannot resolve on their own.  That process actually worked

1   as it should have here—Mattel complained about perceived deficiencies in

2   Bryant's responses, the parties met and conferred, and Bryant agreed to

3   supplement all but one of his responses.  The problem is that Mattel, animated by

4   its desire to paint Bryant as obstructing discovery, insisted on filing the motion

5   anyway.  The Discovery Master cannot condone this misconduct.

6       Bryant therefore requests that the Discovery Master deny Mattel's motion

7   for sanctions and impose $3,000 in sanctions on Mattel.

8                    **IV.   CONCLUSION**

9       For all the foregoing reasons, Bryant respectfully requests that the Court

10  deny Mattel's motion in its entirety and that it award Bryant sanctions in the

11  amount of $3,000.

12

13  Dated:  December 20, 2007                KEKER & VAN NEST, LLP

14

15

16                          By: /s/ Michael H. Page
                                Michael H. Page
17                              Attorneys for Plaintiff
                                CARTER BRYANT
18

19

20

21

22

23

24

25

26

27

28

BRYANT'S OPPOSITION TO MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES
CASE NO. CV 04-09049 SGL (RNBx)