1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:    tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, California  94111-5974
7  Telephone:  (415) 984-6400
   Facsimile:  (415) 984-2698
8  Email:     rkennedy@skadden.com

9  Attorneys for MGA Entertainment, Inc.,
   MGA Entertainment (HK) Limited,
10 MGA De Mexico, S.R.L. DE C.V., and
   Isaac Larian

11

12             UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14                  EASTERN DIVISION

15 CARTER BRYANT, an individual      )  CASE NO. CV 04-9049 SGL (RNBx)
                                     )
16              Plaintiff,           )  Consolidated with Case No. 04-9059 and
                                     )  Case No. 05-2727
17     v.                            )
                                     )  **DISCOVERY MATTER**
18 MATTEL, INC., a Delaware          )
   corporation                       )  **[To be heard by Discovery Master
19                                   )  Hon. Edward A. Infante (Ret.)]**
                Defendant.           )
20 ──────────────────────────        )  **MGA ENTERTAINMENT, INC.'S
                                     )  OPPOSITION TO MATTEL, INC.'S
21 Consolidated with MATTEL, INC. v. )  RENEWED MOTION FOR
   BRYANT and MGA                    )  RECONSIDERATION OF THE
22 ENTERTAINMENT, INC. v.            )  SEPTEMBER 12, 2007 ORDER
   MATTEL, INC.                       )  GRANTING IN PART AND
23                                   )  DENYING IN PART MGA'S
                                        MOTION TO COMPEL
24                                      PRODUCTION OF DOCUMENTS**

25                                      Hearing Date:  January 3, 2008
                                        Time:          1:30 p.m.
26                                      Place:         JAMS

27                                      **Phase 1:**
                                        Discovery Cut-Off:    January 28, 2008
28                                      Pre-Trial Conference: May 5, 2008
                                        Trial Date:          May 27, 2008

─────────────────────────────────────────────────

## I.   Pertinent Background

As explained in this Court's September 12, 2007 Order Granting In Part and Denying In Part MGA's Motion to Compel Mattel To Supplement Responses And Produce Documents Responsive To First Set Of Requests For Production Of Documents And Things ("Order"), MGA initially sought all documents "mentioning, discussing, describing, referring or relating to" Mattel's Employee Confidential Information and Inventions Agreement and Conflict of Interest Questionnaire (collectively "Agreements").  Order at 13:4-8.  In its Motion to Compel, MGA voluntarily offered to narrow Request Nos. 281-282 and 284-285 to seek three categories of documents:

> [1]  All documents relating to any form "Employee Confidential Information and Inventions Agreement" or "Conflict of Interest Questionnaire" that Mattel alleges to exist between Mattel and Bryant;

> [2]  All documents relating to any discussions or negotiations between Mattel and anyone regarding the terms and conditions of any version of either of those agreements; and

> [3]  All documents relating to any instance in which Mattel has taken any action whatsoever to enforce against anyone the same terms of any such agreement that Mattel alleges Bryant violated [Id. at 13:19-24].

This Court found: "As narrowed, the Requests are not overbroad or unduly burdensome because they no longer call for production of documents 'mentioning, discussing, describing, referring or relating to' the two agreements and any and all documents involving negotiations concerning these agreements."  Id. at 14:2-5.

On September 26, Mattel filed a Motion for Reconsideration ("Motion").  Mattel there sought reconsideration of only the Court's ruling with respect to Category 2 only.  Mattel sought reconsideration solely on the grounds that producing all documents related to any discussions or negotiations between Mattel and "anyone" regarding the terms and conditions (Motion at 2:8-26) of those agreements

1  would be unduly burdensome since it would require the review of approximately

2  5,900 employee files and would cost in excess of $600,000 in legal fees.

3        On December 11, on the eve of the December 14, hearing of the Motion,

4  Mattel filed a Second Supplemental Declaration of Timothy L. Alger in support of

5  the Motion.  The thrust of that declaration was that Bryant's withdrawal of his Tenth

6  Affirmative Defense ("Failure of Contract") and Eleventh Affirmative Defense

7  (Unconscionability) renders the Requests irrelevant.

8        At the December 14 hearing, this Court directed that Mattel rebrief its

9  Reconsideration motion and reschedule it for hearing on January 3.

10        On December 18, Mattel filed the present, Renewed Motion ("Renewed

11  Motion").  In the Renewed Motion, Mattel seeks reconsideration of the Court's

12  rulings as to both Categories 2 and 3.  Matter asserts that its earlier arguments

13  concerning the burden of complying with Category 2 now also apply to Category 3.

14  In addition, Mattel now argues that Bryant's withdrawal of his Tenth and Eleventh

15  Affirmative defenses have rendered Mattel's dealings with employees, other than

16  Bryant, irrelevant.

17  **II.**     **Bryant's Withdrawal Of Two Affirmative Defenses Does Not Eliminate**

18          **The Relevancy Of Mattel's Interpretation And Treatment Of The**
        **Agreements With Respect To Other Employees**

19        Mattel's claim that the requests are now irrelevant is predicated on the

20  misstatement that this Court ordered production of documents pertaining to other

21  employees "only because of their claimed relevance to Bryant's now-withdrawn

22  defenses that the agreements are unenforceable and unconscionable."  Renewed

23  Motion at 5:14-15.

24        As noted in the Order, MGA moved to compel production on the grounds that

25  "the documents it seeks are central to Mattel's *claim* that Bryant breached the two

26  agreements and Bryant's *defenses* thereto, including Bryant's contention that the

27  agreements are unenforceable as contracts of adhesion, unconscionable and violate

28  California law."  Order at 12:26-13:2 (emphasis added).  And, in ordering production,

1  the Court found that the requested documents were "relevant to the *claims* and

2  *defenses* in the case, which Mattel implicitly conceded by producing various

3  iterations of the two agreements." Id. at 13:27-14:2 (emphasis added). This Court

4  nowhere found that the documents were relevant only to Bryant's Tenth and Eleventh

5  Affirmative Defenses.

6  As is explained in MGA's and Carter Bryant's Joint Notice of Motion and

7  Motion to Overrule Mattel's Relevance Objection and Compel Discovery Relevant to

8  Mattel's Employee Agreements ("Joint Motion"), which is also scheduled for hearing

9  on January 3 and which, in the interests of brevity, is incorporated by reference, the

10  documents are not just relevant – but crucial – to all of the contract claims in this

11  case, as well as to all of the claims that are in part dependent on the contract claims.

12  As is fully explained in the Joint Motion, the Agreements are at the center of

13  this litigation. Mattel's Bratz ownership claims are premised upon Carter Bryant's

14  "invention" of Bratz being covered by the Agreements. MGA contends that Bryant's

15  drawings do not fall within the scope of the Agreements. In short, Bryant's now-

16  dismissed Tenth and Eleventh Affirmative Defenses were in no way the sole reason

17  why the Agreements, and documents relating to the Agreements, are relevant.

18  As is also detailed in the Joint Motion, in determining what the parties to the

19  Agreements intended, extrinsic evidence of the parties' conduct bears directly on

20  their intent. Joint Motion at 5:18-6:21. Accordingly, the construction that the parties

21  give a contract "before any controversy has arisen as to its meaning, is entitled to

22  great weight and will, when reasonable, be adopted and enforced by the court," U.S.

23  Cellular Investment Co. of Los Angeles, Inc. v. GTE MobilNet, Inc., 281 F.3d 929,

24  937 (9th Cir. 2002) and "the practical construction placed on the contract by the

25  parties is more convincing than a construction which has been reached in an attempt

26  to escape liability in the circumstances." Collins v. Home Sav. & Loan Ass'n, 205

27  Cal. App. 2d 86, 100 (1962). These principles are well illustrated by Heston v.

28  Farmers Ins. Group, 160 Cal. App. 3d 402, 413-14 (1984) where the Court found that

3

1  the most significant evidence concerning the defendant's intent concerning the

2  contract in dispute was found in its prior briefing of the issues in an earlier case

3  involving a different Farmers' agent where Farmers had urged different interpretation.

4      The Ninth Circuit reached a similar result in U.S. Cellular Inv. Co. of Los

5  Angeles, Inc. v. GTE MobilNet, Inc., 281 F.3d 929, 938 (9th Cir. 2002), where the

6  Court considered the positions that U.S. Cellular had taken in other cases concerning

7  the contract in issue, and concluded "[a]t a minimum, this prior litigation stance

8  substantially undermines U.S. Cellular's argument in this case that 'the only

9  reasonable construction' of the same [ ] provisions is the exact opposition of the

10 construction for which it previously argued."  See also Joint Motion at 6:22-9:15.

11 **III.   Mattel Has Not Documented Its Cost Or Burden Claims**

12     Mattel sweepingly asserts that compliance with the Order would necessitate

13 reviewing 5,883 employee personnel files at a likely cost "well in excess of $600,000

14 in legal fees."  Renewed Motion at 9:7-22.

15     First, Mattel does not explain how it got to the "in excess of $600,000"

16 prediction.  Mattel says nothing about the category of persons who do the reviewing

17 or their billing rates.  Mattel says many of the files are voluminous (id. at 9:14-15)

18 but makes no claim that it had performed test reviews of "typical" files to determine

19 how long the process will actually take.  Mattel says that some undisclosed number

20 of the files are "voluminous" (id.), but does not say whether the entire file would

21 have to be reviewed to determine whether Mattel took any action to enforce an

22 Agreement with that employee.  Mattel says nothing about how the files are

23 maintained and, for example, whether they are subdivided so that categories such as

24 medical data are separated.

25     Second, Mattel studiously avoids offering any compromise proposals.  For

26 example, discovery in the case indicates that approximately 700 people are employed

27 in the Design Center where Bryant worked.  MGA would be willing to explore a

28 phased production under which files for employees most similarly situated to Bryant

4

MGA'S OPPOSITION TO MATTEL'S RENEWED MOTION FOR RECONSIDERATION

1 are screened and produced, after which the parties (and the Court) can evaluate the

2 screening and production of files dealing with less similarly situated employees, such

3 as janitors, production line workers, or functionaries in the accounting department.

4 **IV.  Mattel Doggedly Refuses To Explain Why Compliance With Category 1 Will Be Burdensome, While Compliance With Category 3 Will Not**

6   Mattel's original Motion for Reconsideration only sought reconsideration of

7 Category 2:  "All documents relating to any discussions or negotiations between

8 Mattel and anyone regarding the terms and conditions of any version of either of

9 those agreements . . . ."

10   Mattel did not seek reconsideration of Category 3:  "All documents relating to

11 any instance in which Mattel has *taken any action whatsoever to enforce* against

12 anyone the same terms of any such agreement that Mattel alleges Bryant

13 violated . . . ." (emphasis added.)

14   "Any action whatsoever to enforce" includes not just lawsuits or terminations,

15 but also any writings in which Mattel has taken the position that someone has

16 violated an agreement or even taken the position that, if some reported or suspected

17 conduct actually occurred, that would constitute a violation of an Agreement.

18 Moreover, the responsive documents are not limited to Mattel's communications

19 with the alleged violator; they also include any investigative, or other informational

20 gathering, steps that Mattel may have taken to determine whether a violation has

21 occurred.  How did Mattel intend to comply with Category 3 without reviewing

22 individual personnel files?

23   MGA raised this question during the meet and confer process.  Mattel's

24 lawyers summarily replied that there were non-burdensome sources from which

25 documents responsive to Category 3 could be obtained but declined to say what

26 those sources might be.  Declaration of Raoul D. Kennedy ("Kennedy Decl.") ¶ 1.

27   As the Court will recall, MGA's attorneys asked this same question during the

28 December 14 hearing and Mattel's counsel replied:  "The third category, which is

1  documents relating to enforcement of the same terms of these contracts against other

2  people.  Those records, to the extent they exist, are accessible by other means.

3  They're accessible in the legal department.  They're accessible by talking to people.

4  They don't require going through the personnel files for every Mattel employee in

5  order to assess those records."  Kennedy Decl. ¶ 4, Ex. A (December 14, 2007 Tr. at

6  3-4.)

7        Four days later Mattel filed its Renewed Motion in which, without explanation,

8  it expands its reconsideration requests to include Category 3.

9        Without belaboring the point, MGA submits that a party seeking, through a

10  motion for reconsideration, to be relieved from complying with an Order of this

11  Court has a duty of complete candor and disclosure.  So far, Mattel has not

12  discharged that duty.

13  **V.    Conclusion**

14        Mr. Bryant's dismissal of two affirmative defenses has in no way rendered the

15  requests irrelevant as to the many remaining claims and affirmative defenses.  In fact,

16  the discovery is crucial to the contract issues that lie at the heart of the case.

17  Particularly in light of the significance of the discovery, Mattel has not begun to

18  approach demonstrating that compliance would be unreasonable.  MGA urges that

19  the Renewed Motion for Reconsideration be denied.

20  DATED:  December 21, 2007

21                          SKADDEN, ARPS, SLATE, MEAGHER &
                            FLOM LLP

22

23                          /s/ Raoul D. Kennedy
                            Raoul D. Kennedy

24                          Attorneys for Counter-Defendants, MGA
                            ENTERTAINMENT, INC., ISAAC LARIAN,

25                          MGA ENTERTAINMENT (HK) LTD., and
                            MGAE de MEXICO S.R.L. de C.V.

26

27

28

MGA'S OPPOSITION TO MATTEL'S RENEWED MOTION FOR RECONSIDERATION
202451.01-San Francisco Server 1A - MSW