1

2

*Carter Bryant v. Mattel, Inc.*
*and consolidated cases*
*U.S.D.C., Central Dist. of California – Eastern Div.*
*Case No.:  CV-04-9049 SGL (RNBx)*
**[Consolidated with Case No. 04-0959 and Case No. 05-2727]**

3

4

5

6

# EXHIBIT A

7

8   **EXHIBIT A TO**:  DECLARATION OF LARRY MCFARLAND IN SUPPORT OF

9   NON-PARTIES ANAELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, VERONICA MARLOW'S, SARAH HALPERN'S AND LUCY ARANT'S

10  OPPOSITION TO MATTEL, INC.'S MOTION FOR ORDER CONFIRMING THAT DISCOVERY MASTER HEARS AND RESOLVES ALL DISCOVERY DISPUTES,

11  INCLUDING THOSE WITH THIRD PARTIES

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

November 14, 2007

VIA FACSIMILE, E-MAIL and U.S. MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

     Re:   Mattel v. Bryant

Dear Dylan:

     I am writing in response to your letters with respect to Mattel's contemplated motions regarding Ms. Leahy's planner and the deposition dates that I have provided you.

     Please let me know Mattel's position with respect to who you believe should hear this dispute if we are unable to resolve our differences.

     I look forward to your prompt response.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

cc:   Thomas J. Nolan
      Michael Page

Exhibit A
Page ___3___

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

November 21, 2007

VIA FACSIMILE, VIA HAND DELIVERY

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      Re:   Mattel v. Bryant

Dear Dylan:

      I am writing in response to your letter dated November 15, 2007.

      With respect to the document control numbers listed on the first two pages of your letter, I can confirm that this is a complete list of all the documents produced to date by Ms. Leahy, Ms. Marlow, Ms. Cloonan and Ms. Halpern that were assigned document control numbers.[1] [2] The reason that I am making this distinction is that, as you know, Ms. Leahy and Ms. Marlow have produced sculpts and other three-dimensional objects that your firm has photographed and/or videotaped. In order to avoid any confusion, I propose that we make photocopies of each of these produced sculpts and three-dimensional objects and assign each photocopy a bates number. Please let me know if you agree with this proposal. Also, with respect to the photographs taken and the videotapes made by your firm of these sculpts and three-dimensional objects, I previously asked Ms. Wines for copies of these photographs and videotapes. She refused to provide me with copies and told me that it was your firm's position that the photographs and videotapes are work product and that your firm does not intend to use them at any of the depositions or at trial. Please confirm that Ms. Wines' statement is correct and that you will not be using any of these photographs or videotapes at the depositions of any of my clients or at trial.

      With respect to your question involving whether the production of documents is complete, I can confirm that Ms. Halpern has produced all responsive documents in her possession, custody and control. With respect to Ms. Marlow, we are delivering to you with this

---

[1] For documents KMW-M 00667 through KMW-M 03040, your notation of the production date as August 29, 2007 does not reflect that an attorney from your office inspected the documents on August 24, 2007.

[2] For documents ACFR000364 through ACFR000390 and SHFR000225 through SHFR000364, your notation of the receipt date as October 29, 2007 does not reflect my letter dated October 26, 2007 to Mr. Zeller and Data Chasers, releasing the documents.

Exhibit A
Page  4

B. Dylan Procter, Esq.
November 21, 2007
Page 2


letter document control numbers KMW-M 006695 through KMW-M 007643. In addition, we received some three-dimensional objects from Ms. Marlow for your review. Please let me know when someone from your office is available to inspect them. Regarding Ms. Leahy, she has located some additional three-dimensional objects which are available for your review. Please let me know when someone from your office is available to review these items. With respect to Ms. Cloonan, we noticed that your computer expert did not pick up a computer disk with Ms. Cloonan's computer. I suggest that we provide this disk to Data Chasers pursuant to the terms of our agreement as set forth in the letter from Ms. Wines dated September 13, 2007. In addition, in order to speed things up, we will agree to review anything found by Data Chasers within five court days of receipt from Data Chasers rather than the ten court days set forth in Ms. Wine's letter. Please let me know if this is acceptable. With the production of these last remaining items, I believe that the production from Ms. Marlow, Ms. Leahy, Ms. Halpern and Ms. Cloonan is complete.

Regarding the withholding of documents based on privilege grounds, it is our position that the fee agreements between our clients and their attorneys, as well as all correspondence between our clients and their attorneys, are privileged.

Regarding your statements with respect to redactions, your assertion that our clients have improperly redacted documents is incorrect. In addition, you continue to cite the previously redacted pages from Ms. Leahy's day planner, even though, as you know, additional pages from that day planner were produced pursuant to our agreement with Ms. Wines. (See my letter to you dated November 14, 2007.) I am not aware of any order from Judge Infante that precludes third parties from redacting irrelevant information. If there are any such orders, please provide copies to me. In addition, as I have previously stated, it is our position that any discovery disputes with our third party clients will be heard by Magistrate Judge Block. However, in an effort to try to avoid unnecessary motion practice, we are re-reviewing all of the documents that were redacted, and if there are any errors, we will provide corrected documents to you.

With respect to your request regarding whether Ms. Leahy, Ms. Marlow, Ms. Halpern or Ms. Cloonan have fee agreements with MGA, written or otherwise, without admitting that any such documents exist, it is our position that the request seeks the production of privileged information. Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure. California statutory authority provides that "[a] written fee contract shall be deemed to be a confidential communication within the meaning of [Cal. Bus. & Prof. Code § 6068(e)] and of [Cal. Evid. Code § 952]." Section 6068(e)(1) affirms that "[i]t is the duty of an attorney to ... maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Therefore, the requested fee agreements are confidential communications protected under the attorney-client privilege. If you have any authority to the contrary, please let me know. Finally, in response to your assertions in the November 15, 2007 letter, I am not aware of Judge Infante ruling on this issue with respect to any third party. If I am mistaken, please inform me of any such ruling.

B. Dylan Procter, Esq.
November 21, 2007
Page 3


Regarding bank accounts used by Ms. Marlow in connection with her work with MGA, as I stated in my letters to Ms. Wines dated July 23, 2007 and September 21, 2007, we have not received any documents from Wells Fargo in response to your subpoena. In addition, we have not yet received any documents from Bank of America. As soon as we receive these documents, we will comply with the review procedure as set forth in the letter from Ms. Wines dated September 13, 2007, and the letter from you dated November 2, 2007. Finally, with respect to your question whether Ms. Marlow has used any additional bank accounts in connection with her work for MGA, I will provide you this information on the condition that you agree to comply with the protocol set forth in the letter from Ms. Wines dated September 13, 2007, and the letter from you dated November 2, 2007. Please let me know if you agree to this protocol.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP


LWM/jlt

cc:  Thomas J. Nolan
     Michael Page

Enclosures (KMW-M 006695 through KMW-M 007643)

Exhibit A
Page ____6____

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

December 3, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   <u>Mattel v. Bryant</u>

Dear Dylan:

I am writing in response to your letter dated November 28, 2007.

First, we will make photocopies of the three-dimensional objects that have been produced to you and will assign each photo a Bates number. With respect to my question regarding the photographs and video taken by your firm of the sculpts and three-dimensional objects that we have produced, you ignored my question with respect to whether you intend to use these videotapes or photographs at the depositions of any of my clients. I would appreciate the courtesy of an answer.

Second, this letter serves to confirm that an associate from your office, along with two assistants, visited our offices today to photograph and videotape the remaining three-dimensional items produced by Ms. Marlow and Ms. Leahy. We expect that they will return tomorrow to complete their review of the items.

Third, with respect to the computer disk belonging to Ms. Cloonan, we spoke with Mr. Albee on Friday. Mr. Albee emailed me the search results on Friday and we will review and respond within the five-day time frame as agreed.

Fourth, you state that "Judge Infante has already found fee agreements to be relevant to bias and credibility, and non-privileged."[1] Our review of the orders attached to your letter reveals that these orders apply to Mr. Bryant and MGA, who are, of course, both parties to this litigation. We are not aware of any orders entered by Judge Infante with respect to the production of retainer agreements by third parties. Moreover, your reliance on Judge Infante's orders is undercut by the

---

[1] As we have repeatedly stated, it is our position that all discovery disputes with respect to our witnesses must be heard by Magistrate Judge Block.

Exhibit A
Page ____

B. Dylan Procter, Esq.
December 3, 2007
Page 2

positions taken by your firm. It is my understanding that after Judge Infante's order dated
January 25, 2007, your firm objected to the production of third-party retainer letters as privileged
and that you have stood by these objections and not produced these agreements. In the
Objections of Mattel, Inc. and Timothy James Lider to MGA Entertainment Inc.'s Subpoena for
Production of Documents, dated March 29, 2007, you stated as follows:

Request NO. 9:

All DOCUMENTS constituting, mentioning, referring or relating to any
agreement or contract between YOU and MATTEL, including MATTEL's inside
and outside counsel.

RESPONSE TO REQUEST NO. 9:

Mattel and Lider object to Request No. 9 on the grounds that it is overbroad and
unduly burdensome, including in that it seeks all documents on this subject,
regardless of whether such documents relate to products or matters at issue in this
case. Mattel and Lider further object to the Request on the grounds that it seeks
documents that are not relevant to this action or likely to lead to the discovery of
admissible evidence. Mattel and Lider further object to this Request on the
grounds that is seeks confidential, proprietary and trade secret information that
has no bearing on the claims or defenses in this case. Mattel and Lider further
object to this Request on the grounds that it seeks documents that are protected
from disclosure by the attorney-client privilege, the attorney work product
doctrine, and the non-designated expert consultant privilege.

Without waiving, and subject to, the foregoing objections and/or privileges, Lider
responds as follows: Lider will produce responsive documents in his possession,
custody or control, if any, relating to the chain of custody of electronic data
relating to MGA's and the other counter-defendants' thefts of Mattel's trade
secrets, to the extent not protected by the attorney-client privilege, the work
product doctrine and/or the non-designated expert consultant privilege.

If you have produced the retainer letter for Mr. Lider or any other third-party, please
provide me with a copy of that document.

Further, it is my understanding that as recently as September 4, 2007, which is well after
the dates of all of the orders from Judge Infante that you rely on in your letter, Mattel has
continued to take the position that retainer letters are privileged. I am at a loss to understand
how you can contend that "Judge Infante has already found fee agreements to be relevant to bias
and credibility, and non-privileged," while at the same time objecting as follows:

B. Dylan Procter, Esq.
December 3, 2007
Page 3

Request 530:

All DOCUMENTS, including but not limited to agreements, draft agreements and correspondence, REFERRING OR RELATING TO the payment or offer of payment of attorneys fees by MATTEL to any PERSON in connection this ACTION.

Response:

In addition to the general objections stated above which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is overbroad, unduly burdensome and unintelligible, including in that it seeks all documents on this subject without limitation as to time, and regardless of whether such documents relate to products or matters at issue in this case. Mattel further objects to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel further objects to this Request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, joint defense privilege, the attorney work-product doctrine and other applicable privileges.

Subject to and without waiving the foregoing objections, Mattel responds as follows: Mattel will produce such responsive, non-privileged documents that are in Mattel's possession, custody, or control, if any, that Mattel has been able to locate after a diligent search and reasonable inquiry, to the extent not previously produced.

Request 531:

DOCUMENTS sufficient to show YOUR fee arrangement with YOUR counsel Quinn Emanuel Urquhart Oliver & Hedges LLP for services in connection with this ACTION, including, but not limited to, a copy of the fee agreement or retainer agreement between YOU and Quinn Emanuel Urquhart Oliver & Hedges LLP.

Response:

In addition to the general objections stated above which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is overbroad, unduly burdensome and unintelligible, including in that it seeks all documents on this subject without limitation as to time, and regardless of whether such documents relate to products or matters at issue in this case. Mattel further objects to the Request on the grounds that it seeks documents that are not relevant to this action or likely to lead to the discovery of admissible evidence. Mattel further objects to this Request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, the attorney work-product doctrine and other applicable privileges.

Exhibit A
Page _____9_____

B. Dylan Procter, Esq.
December 3, 2007
Page 4

You also state in your letter that, "[a]s the Court has held, the Business and Professions Code's privilege provisions do not apply in this federal question case, which is governed by federal privilege law." I do not see this holding in the orders attached to your letter. If I have missed it, I would appreciate it if you would direct me to this holding. Finally, with respect to your statements regarding a privilege log, as I stated in my letter dated November 21, 2007, it is our position that the fee agreements between our clients and their attorneys, as well as all correspondence between our clients and their attorneys, are privileged. In all of my years of practice, I have never provided a privilege log listing all of the correspondence between me and my clients where my clients are not parties to the litigation. If you believe that I am required to do this, please direct me to the relevant authority. In addition, please confirm whether your firm has produced such a privilege log identifying all communications to and from Mattel.

Fifth, we continue to disagree with your contention that you are "entitled to unredacted copies of all documents that have been produced by your clients." In support of your argument you again cite to orders by Judge Infante that address specific discovery disputes between the parties to this action. Not only are all discovery disputes by their nature fact specific, in the case of disputes with a third party witness, nonparty status may be considered in evaluating the burden of complying with a production subpoena under Rule 45. *See Richards of Rockford, Inc. v. Pac. Gas & Elec. Co.*, 71 F.R.D. 388, 390 (N.D. Cal. 1976) (status of nonparty considered in deciding motion to compel testimony and production of documents); *see also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("the fact of nonparty status may be considered by the court in weighing the burdens"). Therefore, the orders that you rely on are not controlling as to my clients. In addition, I do not appreciate your threat that if we do not do what you want, you will burden our third-party witnesses with an additional day of deposition. As you know, I have long taken the position that I will not allow the depositions of these witnesses to go beyond one day of seven hours. With respect to the redactions, the matters that we redacted from the documents were not relevant to this litigation and I am unaware of any requirement that we produce irrelevant information. For example, certain email chains contained both relevant and irrelevant information, and we properly redacted the irrelevant information. However, in an effort to avoid burdening the Court with unnecessary motion practice, we will produce to you unredacted copies of all of the documents that we have produced other than Ms. Leahy's planner. Our position with respect to Ms. Leahy's planner is set forth in my letter dated November 14, 2007 and remains unchanged.

Lastly, with respect to the bank records of Ms. Marlow, on Thursday, November 29, 2007, at approximately 5:00 p.m. you notified me for the first time that your firm was in possession of all of Ms. Marlow's bank records from Wells Fargo. As you know, this is a violation of the agreement reached with your partner Susan Wines. That agreement required that all bank records be produced to me for my review and I would produce all of the documents that related to agreed upon persons and entities. That agreement was reached after I notified Ms. Wines that I intended to file an ex parte application to quash a similar subpoena served on Mattel Federal Credit Union with respect to the bank records for Ms. Cloonan and Ms. Marlow. As you know, Ms. Wines confirmed our agreement in a letter dated June 14, 2007. In addition, in letters dated

B. Dylan Procter, Esq.
December 3, 2007
Page 5

July 23, 2007, September 21, 2007, and November 21, 2007, I notified your firm that I had not
yet received the bank records from Wells Fargo. When you told me on Thursday that you were in
possession of all of Ms. Marlow's bank records from Wells Fargo, I asked you to agree to return
all copies and originals of the Wells Fargo bank records, to confirm that your firm had not
reviewed or made any use of these documents and to provide me with the date that your firm
received these documents. You told me that you would consider my request. On Friday, I
received a copy of the Wells Fargo documents with a cover letter from you that stated as follows:

> Further to our conversation of today, enclosed herewith you will find the Wells
> Fargo documents relating to your client, Veronica Marlow, as produced by Mattel
> to the other parties in this action. As I explained, Wells Fargo sent these
> documents directly to us without any prompting by us, notwithstanding our prior
> understanding that the documents would be produced to you, and in the normal
> course of handling they were produced to all parties on October 2, 2007.

Although you did not answer my question with respect to when your firm received these
documents, I note that the Wells Fargo declaration provided with the documents is dated August
27, 2007, which is well after both the date of the agreement entered into by Ms. Wines and my
letter dated July 23, 2007, informing you that I had not yet received the banking records. Without
waiver of our position that your firm has violated Ms. Marlow's privacy rights and has breached
the agreement entered into with Ms. Wines, I reiterate my request that you return all copies and
originals of the Wells Fargo bank records, confirm that your firm has not reviewed or made any
use of these documents, and provide me with the date that your firm received these documents.

With respect to your request regarding additional bank accounts used by Ms. Marlow in
connection with her work with MGA, in light of your firm's violation of our agreement and, as I
mentioned to you on Thursday, I believe that Ms. Marlow needs additional protection in order to
proceed. What I suggested during our telephone conversation is that you identify the place of
production as our offices in all of the subpoenas served on these additional financial institutions.
If you agree to this condition, I will provide you with the additional information.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

cc:  Thomas J. Nolan
     Michael Page

Exhibit A
Page ___ 11 ___