1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

***Carter Bryant v. Mattel, Inc.***
***and consolidated cases***
***U.S.D.C., Central Dist. of California – Eastern Div.***
***Case No.:  CV-04-9049 SGL (RNBx)***
**[Consolidated with Case No. 04-0959 and Case No. 05-2727]**

# EXHIBIT B

**EXHIBIT B TO**:  DECLARATION OF LARRY MCFARLAND IN SUPPORT OF NON-PARTIES ANAELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, VERONICA MARLOW'S, SARAH HALPERN'S AND LUCY ARANT'S OPPOSITION TO MATTEL, INC.'S MOTION FOR ORDER CONFIRMING THAT DISCOVERY MASTER HEARS AND RESOLVES ALL DISCOVERY DISPUTES, INCLUDING THOSE WITH THIRD PARTIES

Larry McFarland (Bar No. 129668)
Christian Dowell (Bar No. 241973)
KEATS, McFARLAND & WILSON LLP
9720 Wilshire Blvd.
Penthouse Suite
Beverly Hills, CA 90212
Telephone:   (310) 248-3830
Facsimile:    (310) 860-0363
Email:   lmcfarland@kmwlaw.com
          cdowell@kmwlaw.com

Attorneys for
Ana Elise Cloonan, Margaret Hatch-Leahy, and
Veronica Marlow

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>        v.<br><br>MATTEL, INC., a Delaware corporation;<br><br>                    Defendant.<br><br>_____<br><br>AND RELATED ACTIONS. | Case No.: CV 04 – 09049 SGL (RNBx)<br>Consolidated with Case Nos.<br>CV 04-9059 and CV 05-2727<br><br><u>Hon. Stephen G. Larson</u><br><br>ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OF ANA ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER<br><br>Hearing Date:   November 20, 2007<br>Time:              10:00 a.m.<br>Place:             Courtroom 1 |

Exhibit B
Page __12__

## I.     INTRODUCTION

In its Standing Order, the Court reminds counsel "that ex parte applications are solely for extraordinary relief."  Court's Standing Order at 5.  Had Mattel heeded this admonition, it would not have burdened the Court with an *ex parte* application and 44 accompanying exhibits to resolve a simple dispute over when to schedule the depositions of ***non***-parties Margaret Hatch-Leahy, Elise Cloonan and Veronica Marlow (collectively, the "Non-Party Witnesses").[1]

Contrary to Mattel's gross mischaracterizations, the Non-Party Witnesses and their counsel have fully cooperated with Mattel in its document discovery of them and in scheduling depositions.  Indeed, for the past few months, the Non-Party Witnesses have repeatedly agreed to be deposed even though Mattel waited until yesterday to serve deposition subpoenas on them for the first time.  At issue here are the following deposition dates which the Non-Party Witnesses have proposed to Mattel and which represent the earliest dates on which they and their counsel are reasonably available: December 12, 2007 for Ms. Hatch-Leahy; December 14, 2007 for Ms. Cloonan; and January 9, 2008 for Ms. Marlow.

Mattel offers no compelling reason why the depositions cannot proceed on these dates.  As to Ms. Hatch-Leahy and Ms. Cloonan, the proposed dates are within a week of the December 7, 2007 date by which Mattel wants to complete their depositions.  For Ms. Marlow, the proposed date is well before Phase I fact discovery cutoff and is the first available date on which she can be deposed without suffering any undue burden, harassment or expense.

---

[1] Curiously, although Mattel believes that the Court should resolve this non-party discovery dispute, Mattel has asserted that disputes regarding the Non-Party Witnesses' production of documents should be handled by the Discovery Master.  The Non-Party Witnesses disagree with Mattel in both respects and believe that all such non-party discovery disputes should be decided by Magistrate Judge Block.  Nevertheless, because Mattel's *ex parte* application is unfounded, the Court should simply deny the application rather than refer it to Magistrate Judge Block.

OPPOSITION TO
EX PARTE APPLICATION

Exhibit B
Page ___13___

1    Moreover, the only two arguments that Mattel offers in support of its *ex parte*
2    application are either irrelevant or unsubstantiated. That the Non-Party Witnesses
3    possess discoverable information may entitle Mattel to depose them, but it has no
4    bearing on when those depositions should be scheduled. In addition, Mattel fails to
5    explain what "follow-up discovery" it could legitimately need as a result of the Non-
6    Party Witnesses' depositions that has not already been covered by the mountains of
7    discovery that Mattel has sought and obtained in this case over the past three years.

8    Mattel's *ex parte* application is entirely without merit and a waste of the Court's
9    valuable time and resources. Accordingly, the Non-Party Witnesses respectfully
10   request that the Court deny Mattel's *ex parte* application.

11   **II.    SUMMARY OF FACTS**

12   Mattel's description of "facts" relating to the scheduling of the Non-Party
13   Witnesses' depositions is incorrect and misleading. In particular, Mattel fails to
14   include numerous interactions which plainly show that the Non-Party Witnesses and
15   their counsel were working in good faith to schedule depositions and that much of the
16   delay was caused by Mattel's efforts to expand the scope of document production by
17   the Non-Party Witnesses in advance of their depositions. A more complete and
18   accurate summary of the relevant facts is set forth below.

19   In March and May 2005, Mattel served the Non-Party Witnesses with
20   subpoenas in the 04-9059 case requesting that they produce a broad range of
21   documents and things. (Declaration of Larry W. McFarland ("McFarland Decl."),
22   Exs. 1-3.) Shortly thereafter, the action was stayed pending Mattel's appeal to the
23   Ninth Circuit. In June 2007, after the stay was lifted and the cases were consolidated,
24   Mattel's counsel contacted the Non-Party Witnesses' counsel, Larry McFarland, to
25   discuss production of documents in response to the previously issued subpoenas.
26   (Proctor Decl., Ex. 3.)

27   At the same time though, Mattel sought to broaden substantially the scope of its
28   document discovery with respect to the Non-Party Witnesses. For example, Mattel

- 2 -

1  attempted to subpoena virtually all bank records relating to the Non-Party Witnesses
2  since 1999. (McFarland Decl., Ex. 4.) The Non-Party Witnesses objected to the
3  subpoenas as overly broad and agreed to produce a narrower set of records limited to
4  matters relevant to the litigation. (McFarland Decl., Ex. 5.)

5      In June 2007, Mattel's counsel also began demanding that the Non-Party
6  Witnesses provide Mattel copies of their entire computer hard drives without regard to
7  what, if any, actually relevant or responsive documents were stored on them.
8  (McFarland Decl., Ex. 6.) It was not until September 2007—after about three months
9  of negotiations—that Mattel's counsel finally agreed to a more reasonable approach
10  for identifying and producing responsive, non-privileged documents from the Non-
11  Party Witnesses' hard drives. (Proctor Decl., Ex. 16.)

12      In July 2007, Mattel also sought to expand the scope of document production
13  by asserting that it was "entitled to any documents Ms. Marlow, Ms. Leahy … or Ms.
14  Cloonan have relating to Bratz or Bratz derivative works *through the present time …*
15  [and] documents relating to Angel, Angel Baby, Prayer Angel or *any other product on*
16  *which any of [the Non-Party Witnesses] worked with Carter Bryant.*" (McFarland
17  Decl., Ex. 8 (emphasis added).) Rather than engage in protracted discussions about
18  the relevance of such additional documents, the Non-Party Witnesses agreed to re-
19  review their documents for these other materials in an effort to move the document
20  production toward completion. (Proctor Decl., Ex. 8, 16)

21      It was against this backdrop of broadening document discovery that Mattel first
22  broached the issue of the Non-Party Witnesses' depositions. Mattel contends that
23  after first agreeing to check on witness availability in June 2007, the Non-Party
24  Witnesses' counsel, Mr. McFarland, did not respond for three months. (*Ex Parte*
25  App. at 3.) To the contrary, in July 2007, Mr. McFarland conferred with Mattel's
26  counsel about scheduling depositions after completing the document productions in
27  light of the new document production issues being raised by Mattel. (McFarland
28  Decl., Ex. 7.) In particular, Mr. McFarland explained that "it makes sense that we

OPPOSITION TO
EX PARTE APPLICATION

Exhibit B
Page  15

1    have the document production finalized before you take their depositions.  Because

2    these individuals are third party witnesses, it is particularly important that they not be

3    burdened with more than one day of deposition which might occur if they were to be

4    deposed before you and I have resolved the document production issues."  (*Id.*)

5          Consistent with that approach, once Mr. McFarland and Mattel's counsel had

6    resolved most of the document production issues in September 2007, they began

7    discussing scheduling of the Non-Party Witnesses' depositions.  (Proctor Decl., Exs.

8    9, 11, 12 & 14.)  By late September, depositions of all of the Non-Party Witnesses had

9    been set and were scheduled to take place in late October 2007 and the first half of

10   November 2007.  (Proctor Decl., Ex. 14.)

11         However, rather than follow the normal practice of issuing deposition

12   subpoenas for these agreed-upon dates, Mattel's counsel requested that the Non-Party

13   Witnesses execute a stipulation and order for the deposition dates.  (Proctor Decl., Ex.

14   15.)  The reason for Mattel's tactic was apparent in the recitals of Mattel's proposed

15   stipulation and order, which stated that Mattel had been "actively seeking" deposition

16   dates since June 2007 but that the Non-Party Witnesses had made no effort to

17   cooperate until September 2007.  (*Id.*)  Understandably, the Non-Party Witnesses did

18   not agree to sign the document.

19         On October 15, 2007, the Court entered a "soft stay" in the case until October

20   31, 2007.  "Specifically all proceedings *and discovery* are STAYED during that time."

21   (Docket Item 1089 (emphasis added).)  On October 31, 2007, the Court issued another

22   stay until November 15, 2007.  The Court's order expressly stated that "[n]o

23   depositions shall be conducted during this time."  (Docket Item 1104.)

24         As a result of these stays, the Non-Party Witnesses' depositions were taken off

25   calendar.  Although Mattel contends that Mr. McFarland "cancel[ed]" the depositions,

26   the record is clear that the depositions were postponed by operation of the Court's stay

27   orders, not through any unilateral action taken by Mr. McFarland.  Moreover, Mattel's

28   suggestion that the Non-Party Witnesses and their counsel were in cahoots with MGA

OPPOSITION TO
EX PARTE APPLICATION

Exhibit B
Page \_\_\_\_\_16

1   to obtain a stay only to delay the Non-Party Witnesses' depositions is nothing more
2   than pure conjecture and has no basis in fact.

3        Following entry of the second stay, Mattel's counsel requested that the
4   depositions of Ms. Leahy and Ms. Marlow be scheduled in late November and that the
5   deposition of Ms. Cloonan be scheduled by early December. (Proctor Decl., Ex. 25.)
6   Mr. McFarland responded with dates reasonably close to those requested by Mattel's
7   counsel: December 12, 2007 for Ms. Leahy; December 14, 2007 for Ms. Cloonan; and
8   January 9, 2008 for Ms. Marlow. (Proctor Decl., Ex. 28.)

9        These proposed dates represent the earliest dates on which the Non-Party
10  Witnesses and their counsel are reasonably available for deposition in view of prior
11  commitments, travel schedules, and the holiday season. For example, starting in late
12  November, Ms. Marlow will be out of the country for a long planned three-week trip
13  to Brazil. (McFarland Decl., ¶ 11.) In addition, Ms. Cloonan, who recently gave
14  birth, has limited availability because she is the primary caregiver of her baby and has
15  very limited help. (*Id.*) Mr. McFarland also has other client and personal
16  commitments in late November and December, including a week-long trip in late
17  December. (*Id.*)

18       Mattel's counsel objected to the proposed dates on the sole ground that Mattel
19  would be prejudiced in its ability to take "follow-up discovery" before the Phase I fact
20  discovery cutoff, which is currently set for January 28, 2008. (Proctor Decl., Ex. 29.)
21  Mattel, however, has already obtained ample discovery in this case. Since 2004, when
22  this litigation commenced, Mattel has served more than 30 subpoenas for non-party
23  discovery, all of its allotted 50 interrogatories, thousands of requests for admissions
24  and over 800 document requests. (McFarland Decl., ¶ 13.) In addition, excluding the
25  three Non-Party Witnesses, Mattel has used 20 of the 24 depositions that it is allowed
26  to take in this case. (*Id.*)

27       In a November 13, 2007 letter, Mattel's counsel requested that Mr. McFarland
28  contact him by the end of the following day to discuss about alternative arrangements

OPPOSITION TO
EX PARTE APPLICATION

Exhibit B

Page   17

1    for the depositions. (Proctor Decl., Ex. 29.) However, unwilling to wait that long,

2    Mattel's counsel called Mr. McFarland at 2:15 p.m. on November 14 to give notice

3    that Mattel would be filing an *ex parte* application. (McFarland Decl., ¶ 12.)

4    Contrary to Mattel's assertion, its counsel made no attempt to actually "discuss[] the

5    matter" during the call. (*Id.*) On November 15, the same day it filed its *ex parte*

6    application, Mattel served for first time deposition subpoenas on the Non-Party

7    Witnesses. (Proctor Decl., Exs. 39-41.)

8    **III.**    **MATTEL'S *EX PARTE* APPLICATION SHOULD BE DENIED**

9         **BECAUSE MATTEL HAS NOT MADE THE REQUISITE SHOWING.**

10      **A.**    ***Ex Parte* Relief Is Justified Only Where the Applicant Will Suffer**

11         **Irreparable Prejudice Absent Emergency Relief and the Applicant**

12         **Did Not Contribute to Creating the Problem.**

13    "Ex parte motions are rarely justified." *Mission Power Engineering Co. v.*

14    *Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). Indeed, as the Court's

15    Standing Order makes clear, "<u>ex parte</u> applications are solely for extraordinary relief."

16    Court's Standing Order at 5, citing *Mission Power*, 883 F. Supp. 488. Because of the

17    urgency that attends *ex parte* applications, courts hold such requests and those who

18    file them to greater scrutiny than in the case of regularly filed motions. *See Mission*

19    *Power*, 883 F. Supp. at 492 ("Lawyers must understand that filing an ex parte motion

20    … is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!'

21    There had better be a fire.").

22    *Ex parte* relief is only warranted where the movant establishes that (1) the

23    movant will suffer irreparable prejudice absent the requested relief, and (2) "the

24    moving party is without fault in creating the crisis that requires ex parte relief, or that

25    the crisis occurred as a result of excusable neglect." *Id.* "To show that the moving

26    party is without fault, or guilty only of excusable neglect, requires more than a

27    showing that the other party is the sole wrongdoer. … For example, merely showing

28    that trial is fast approaching and that the opposing party still has not answered crucial

- 6 -

1  interrogatories is insufficient to justify ex parte relief. The moving party must also

2  show that it used the entire discovery period efficiently and could not have, with due

3  diligence, sought to obtain the discovery earlier in the discovery period." *Id.* at 493.

4       As is shown below, Mattel has not established either of the elements necessary

5  to justify granting its requested *ex parte* relief.

6       **B.    Mattel Will Not Be Prejudiced if the Non-Party Witnesses'**

7              **Depositions Occur on the Dates that They Have Proposed.**

8       Mattel offers only two arguments in support of its *ex parte* application.  First,

9  Mattel argues that the Non-Party Witnesses possess discoverable information. *Ex*

10 *Parte* App. at 7-8.  Second, Mattel argues that absent its requested relief, Mattel will

11 be prejudiced because it will not have sufficient time to take "follow-up discovery"

12 after the depositions. *Id.* at 8-11.  Both arguments fail to support its *ex parte*

13 application.

14      Mattel's first argument is irrelevant to the resolution of Mattel's *ex parte*

15 application and appears to have been included solely to give Mattel an opportunity to

16 argue its version of the case to the Court.  That the Non-Party Witnesses have

17 discoverable information does not dictate or even influence when the depositions of

18 those witnesses should be scheduled.  It is merely a basis for Mattel to assert that the

19 depositions should occur sometime during fact discovery, which the Non-Party

20 Witnesses do not deny and have worked diligently to accomplish.

21      Mattel's second argument regarding prejudice is also unfounded because Mattel

22 relies on a false sense of urgency and does not substantiate its purported need for

23 "follow-up discovery."  Although Mattel contends that it will be harmed if Ms. Hatch-

24 Leahy and Ms. Cloonan's depositions proceed on their proposed dates of December

25 12 and December 14, respectively, those dates are within one week of the December 7

26 date requested in Mattel's *ex parte* application.  Mattel cannot reasonably assert that it

27 will be prejudiced, let alone irreparably prejudiced, by having to wait an extra week to

28 depose Ms. Hatch-Leahy and Ms. Cloonan.

-7-

OPPOSITION TO
EX PARTE APPLICATION

1    Mattel also fails to explain how it will be prejudiced with regard to "follow-up

2    discovery" if the Non-Party Witnesses are deposed on the dates they have proposed.

3    Mattel does not explain what possible "follow-up discovery" would be necessitated as

4    a result of the Non-Party Witnesses' depositions.  Indeed, by Mattel's account, all of

5    the pertinent information that Mattel seeks resides with the Non-Party Witnesses and

6    presumably will be obtained at their depositions.  Phase I fact discovery also does not

7    close until January 28, 2008, giving Mattel three weeks from the proposed date of Ms.

8    Marlow's deposition and six weeks from the proposed dates of Ms. Hatch-Leahy and

9    Ms. Cloonan's depositions to wrap up any remaining discovery issues.

10    Moreover, it is hard to believe that Mattel could have any legitimate "follow-up

11    discovery" arising from depositions that have not already been addressed in the

12    mountains of discovery that Mattel has sought and obtained in this case.  Mattel has

13    spent the past three years taking discovery regarding Phase I issues.  In that time,

14    Mattel has served literally thousands of requests for admissions, more than 800

15    document requests, all of its allotted interrogatories, and more than 30 subpoenas for

16    non-party discovery.  (McFarland Decl., ¶ 13.)  Excluding the depositions of the Non-

17    Party Witnesses, Mattel also has used 20 of its allotted 24 depositions and will have

18    only one more deposition available once it deposes the Non-Party Witnesses.  (*Id.*)  In

19    view of such exhaustive discovery efforts, Mattel's argument that the Non-Party

20    Witnesses' depositions will reveal information previously unknown or unavailable to

21    Mattel that will require two months of additional discovery simply is not credible.

22    Glaringly absent from Mattel's *ex parte* application is any discussion of the

23    burden and expense to the Non-Party Witnesses if Mattel's requested relief is granted.

24    Federal Rule of Civil Procedure 45 requires Mattel and its counsel to "take reasonable

25    steps to avoid imposing undue burden or expense" on the Non-Party Witnesses.

26    Fed.R.Civ.P. 45(c)(1).  "Underlying the protections of Rule 45 is the recognition that

27    '"the word non-party" serves as a constant reminder of the reasons for the limitations

28    that characterize third-party' discovery."  *Gonzales v. Google, Inc.*, 234 F.R.D. 674,

OPPOSITION TO
EX PARTE APPLICATION

Exhibit B

Page _____20_____

1   680 (N.D. Cal. 2006), quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646,

2   649 (9th Cir. 1980). Courts are "particularly concerned anytime enforcement of a

3   subpoena imposes an economic burden on a non-party." *Gonzales*, 234 F.R.D. at 683.

4          Mattel attempts to avoid having to address these protections afforded non-

5   parties by asserting that the Non-Party Witnesses and their counsel are closely aligned

6   with MGA and Carter Bryant. It is undisputed, however, that none of the Non-Party

7   Witnesses is a party to this action or is employed by or is an agent of MGA or Carter

8   Bryant. In short, the Non-Party Witnesses are exactly that—***non***-party witnesses—

9   and they should be treated accordingly.

10         Forcing the Non-Party Witnesses to sit for deposition on dates earlier than the

11  dates they have proposed would impose an undue burden and expense. The dates

12  proposed by the Non-Party Witnesses are the earliest dates on which they and their

13  counsel are reasonably available in view of their schedules and prior obligations.

14  (McFarland Decl., ¶ 11.) Ms. Marlow, for example, will be on a long planned three-

15  week trip to Brazil starting in late November, and then will be hosting many of her

16  family members during the December and early January holidays. (*Id.*) It would be

17  unduly burdensome, expensive and harassing to require Ms. Marlow to sacrifice these

18  travel and family commitments merely because Mattel wants, but in no way needs, to

19  take her deposition before January 9, 2008. Similarly, it would be an undue burden to

20  force Ms. Cloonan, who is the primary caregiver of her new baby and has very limited

21  help (*id.*), to make undesirable childcare arrangements just so that Mattel can depose

22  during the week prior to the date she proposed for her deposition.

23         Because Mattel has not shown any need for its requested relief or irreparable

24  harm if such relief is not granted, Mattel's *ex parte* application must be denied.

25     **C.     Mattel's Own Actions Contributed to this Dispute.**

26         Mattel's attempts to seek overly broad discovery from the Non-Party Witnesses

27  contributed to the delay in scheduling their depositions and serve as a separate and

28  independent basis for rejecting Mattel's *ex parte* application. *See Mission Power*, 883

OPPOSITION TO
EX PARTE APPLICATION

Exhibit B
Page ___21___

1    F. Supp. at 493 ("The moving party must also show that it used the entire discovery

2    period efficiently and could not have, with due diligence, sought to obtain the

3    discovery earlier in the discovery period."). Although Mattel blames the Non-Party

4    Witnesses and their counsel for delaying the scheduling of their depositions, the

5    record shows otherwise.

6        As discussed above, the Non-Party Witnesses and their counsel have acted

7    diligently and in good faith not only to schedule the depositions, but to provide Mattel

8    in advance of those depositions all of the non-privileged documents responsive to

9    Mattel's document subpoenas. (*See* § II above.) To the extent there was any

10    unreasonable delay in scheduling the depositions, Mattel has only itself to blame since

11    it delayed the completion of that production by spending months trying to expand the

12    scope of documents to be produced by the Non-Party Witnesses. (*See id.*)

13        Because Mattel is not without fault in delaying the scheduling of the Non-Party

14    Witnesses' depositions, Mattel's *ex parte* application must fail.

15    **IV.   CONCLUSION**

16        For the foregoing reasons, the Non-Party Witnesses respectfully request that the

17    Court deny Mattel's *ex parte* application.

18

19    Dated:  November 16, 2007       KEATS MCFARLAND & WILSON LLP

20

21

22                            Larry W. McFarland, Esq.

                             Attorneys for Non-Parties Ana Elise Cloonan,

23                          Margaret Hatch-Leahy, and

                         Veronica Marlow

24

25

26

27

28

Exhibit B
Page _____ 22

## DECLARATION OF SERVICE

*CARTER BRYANT v. MATTEL, INC.*
*Case No.: CV 04 – 09049 SGL (RNBx)*
*Consolidated with Case Nos. CV 04-9059 and CV 05-2727*

I, the undersigned say, I am and was at all times herein mentioned a resident of the County of Los Angeles, over the age of eighteen (18) years and not a party to the within action or proceeding. My business address is 9720 Wilshire Boulevard, Penthouse Suite, Beverly Hills, California 90212 and I am employed in the offices of Keats, McFarland & Wilson LLP by a member of the Bar of this Court at whose direction the service mentioned herein below was made.

On November 16, 2007, I served the following document(s):

1.  ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OF ANA ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

2.  DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OF ANA ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

upon counsel and interested parties named below or on an attached service list, by placing a true and correct copy thereof in an envelope addressed as follows:

### See Attached Service List

[XX] **BY MAIL:**   I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Beverly Hills, California.   I am readily familiar with the practice of Keats McFarland & Wilson LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.   I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after deposit for mailing in affidavit.

[ ]   **BY FACSIMILE:**   The above referenced document(s) was transmitted by facsimile transmission and the transmission was reported as completed and without error.   Pursuant to C.R.C. 2009(i), I either caused, or had someone cause, the transmitting machine to properly transmit the attached documents to the facsimile numbers shown on the service list.

[ ]   **BY OVERNIGHT DELIVERY:**   I am readily familiar with the practice of Keats McFarland & Wilson LLP for collection and processing of documents for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express, UPS, DHL or the like, or by Express Mail via the United States Postal Service.

[ ]   **BY EMAIL OR ELECTRONIC TRANSMISSION:**   I caused the document(s) to be sent to the persons at the e-mail addresses as listed above and/or on the attached Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 16, 2007, at Beverly Hills, California.

Janice L. Trayes

Keats McFarland
& Wilson
720 Wilshire Blvd.
Penthouse
Beverly Hills, CA
90212

Exhibit B
Page ___23___

1

## SERVICE LIST

2

**CARTER BRYANT v. MATTEL, INC.**
*Case No.: CV 04 – 09049 SGL (RNBx)*

3

*Consolidated with Case Nos. CV 04-9059 and CV 05-2727*

4

| Counsel | Tele/Fax/E-Mail | Party |
|---|---|---|
| **QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP** <br> 865 South Figueroa Street, 10th Fl. <br> Los Angeles, CA 90017 <br><br> Dylan Proctor, Esq. | Tel: 213.443.3000 <br> Fax: 213.443.3100 <br><br> Email:dylanproctor@quinnemanuel.com | MATTEL, INC. |
| **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP & AFFILIATES** <br> 300 South Grand Avenue, Suite 3400 <br> Los Angeles, CA 90017 <br><br> Thomas J. Nolan, Esq. | Tel: 213.687.5250 <br> Fax: 213.621.5250 <br> Email: tnolan@skadden.com | MGA |
| **KEKER & VAN NEST, LLP** <br> 710 Sansome Street <br> San Francisco, CA 94111 <br><br> Michael H. Page, Esq. | Tel: 415.391.5400 <br> Fax: 415.397.7188 <br> Email: mpage@kvn.com | CARTER BRYANT |

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit B

Page _____ 24

Larry McFarland (Bar No. 129668)
Christian Dowell (Bar No. 241973)
KEATS McFARLAND & WILSON LLP
9720 Wilshire Boulevard
Penthouse Suite
Beverly Hills, California 90212
Telephone: (310) 248-3830
Facsimile:  (310) 860-0363
Email:  lmcfarland@kmwlaw.com
           cdowell@kmwlaw.com

Attorneys for
Ana Elise Cloonan, Margaret Hatch-Leahy, and
Veronica Marlow

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation;<br><br>                    Defendant.<br><br>AND RELATED ACTIONS. | Case No.: CV 04 – 09049 SGL (RNBx)<br>Consolidated with Case Nos.<br>CV 04-9059 and CV 05-2727<br><br>Hon. Stephen G. Larson<br><br>DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OF ANA ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER<br><br>Hearing Date:  November 20, 2007<br>Time:              10:00 a.m.<br>Place:             Courtroom 1 |

I, Larry W. McFarland, hereby declare as follows:

1.     I am an attorney admitted to practice before the courts of the State of California and have been admitted to this Court. I am a partner at the law firm of Keats, McFarland & Wilson, LLP. In connection with this action, I am counsel for non-parties Margaret Hatch-Leahy, Elise Cloonan and Veronica Marlow (collectively, the "Non-Party Witnesses"). I provide this declaration in support of the Non-Party Witnesses' Opposition to Mattel's *Ex Parte* Application to (1) Compel Depositions of Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow or (2), in the Alternative, Modify the Scheduling Order. I have personal knowledge of the facts stated herein and, if called as a witness, would testify competently thereto.

2.     Attached hereto as Exhibit 1 is a true and complete copy of a document subpoena issued to Ms. Hatch-Leahy on March 14, 2005.

3.     Attached hereto as Exhibit 2 is a true and complete copy of a document subpoena issued to Ms. Cloonan on May 12, 2005.

4.     Attached hereto as Exhibit 3 is a true and complete copy of a document subpoena issued to Ms. Marlow on March 14, 2005.

5.     In June 2007, counsel for Mattel contacted me regarding production of documents in response to the subpoenas attached as Exhibit 1-3, as well as scheduling depositions for the Non-Party Witnesses. Since June 2007, I have engaged in regular and numerous communications with Mattel's counsel regarding the review and production of documents responsive to those subpoenas and the scheduling of depositions. My letter dated October 4, 2007 to Michael Zeller, a copy of which is attached as Exhibit 16 to the Proctor Declaration filed in support of Mattel's *ex parte* application, accurately summarizes some of my interactions with Mattel's counsel regarding these non-party discovery matters.

6.     Attached hereto as Exhibit 4 is a true and complete copy of a letter dated June 4, 2007, from me to Susan Wines, then-counsel for Mattel.

-2-

DECLARATION OF
LARRY W. MCFARLAND

1      7.     Attached hereto as Exhibit 5 is a true and complete copy of a letter dated

2  June 13, 2007, from Ms. Wines to me.

3      8.     Attached hereto as Exhibit 6 is a true and complete copy of a letter dated

4  June 21, 2007, from Ms. Wines to me.

5      9.     Attached hereto as Exhibit 7 is a true and complete copy of a letter dated

6  July 17, 2007, from me to Ms. Wines.

7      10.    During the past several months, I have worked diligently and in good

8  faith to schedule the depositions of the Non-Party Witnesses. Some of my efforts in

9  this regard are reflected in letters attached as Exhibits 8, 11, 12 and 14 to the Proctor

10  Declaration.

11      11.    Most recently, I proposed the following dates for the Non-Party

12  Witnesses' depositions: December 12, 2007 for Ms. Leahy; December 14, 2007 for

13  Ms. Cloonan; and January 9, 2008 for Ms. Marlow. These deposition dates represent

14  the earliest dates on which the Non-Party Witnesses and I are reasonably available for

15  deposition in view of our prior commitments, our travel schedules, and the impending

16  holiday season. For example, in late November, Ms. Marlow will be starting a long

17  planned three-week trip to Brazil. Thereafter, she will be hosting many of her out-of-

18  town family members during the December and early January holidays. In addition,

19  Ms. Cloonan recently gave birth to a new child and currently has limited availability

20  due to childcare issues because she is her baby's primary caregiver and has very

21  limited help. I also have prior client and personal commitments in late November and

22  December. Among those commitments is a week-long trip in late December,

23  including for my parents' 50th wedding anniversary.

24      12.    On November 13, 2007, Mr. Proctor sent me a letter objecting to my

25  proposed deposition dates. A copy of his letter is attached as Exhibit 29 to the Proctor

26  Declaration. In his letter, Mr. Proctor asked me to contact him before close of

27  business on November 14, 2007, to discuss other possible arrangements. However, I

28

1  did not have the opportunity to respond to Mr. Proctor because at approximately 2:15
2  p.m. on November 14, Mr. Proctor called me to notify me that Mattel would be filing
3  an *ex parte* application with the Court to address the scheduling of the Non-Party
4  Witnesses' depositions.  I told Mr. Proctor that I would oppose such an application.
5  During the call, Mr. Proctor did not engage in any discussions to confer about the
6  dispute.
7      13.    I am informed and believe that to date, Mattel has served in this litigation
8  more than 30 subpoenas for non-party discovery; at least 50 interrogatories, which I
9  understand to be the maximum number of interrogatories allowed in this case; more
10  than 3,000 requests for admissions; and more than 800 requests for production of
11  documents and things.  I am also informed and believe that Mattel is allowed to take
12  no more than 24 depositions in this case and that, excluding the three Non-Party
13  Witnesses, Mattel has used 20 of its depositions.
14      14.    Attached hereto as Exhibit 8 is a true and complete copy of a letter dated
15  July 20, 2007, from Jennifer Lewis to me.
16      I declare under penalty of perjury under the laws of the United States of
17  America, that the foregoing is true and correct and that this declaration was executed
18  in Beverly Hills, California.

20  Dated: November 16, 2007
                          Larry W. McFarland

- 4 -

DECLARATION OF
LARRY W. MCFARLAND

Exhibit B
Page ___ 28

CARTER BRYANT v. MATTEL, INC.
Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.
CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# EXHIBIT 1

Subpoena dated March 14, 2005

to Ms. Hatch-Leahy

---

DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS
OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

Hearing Date: November 20, 2007
Time:          10:00 a.m.
Place:         Courtroom 1

Exhibit 1
Page ____ 5

Mar 22 05 11:30a      3P°. Inc.              (626) 791-2137          p.1

ATTN: STEPHEN CONTOPULOS          Leahy + Marlow/
                                                          Mattel!

AO 88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

### CENTRAL    DISTRICT OF LOS ANGELES

MATTEL, INC., a Delaware Corporation

**SUBPOENA IN A CIVIL CASE**

v.

CARTER BRYANT, an Individual; and DOES     Case Number: [1]  CV 04-9059 NM (RNBx)
1 through 10, inclusive

TO: Margaret Hatch-Leahy          (626) 791-2137
    1824 Braeburn Road
    Altadena, CA  91001

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHMENT "A"

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP. 865 So. Figueroa Street, 10th Fl., Los Angeles, CA 90017 (213) 443-3000 | March 25, 2005 9:30 a.m. |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Shane McKenzie* Attorney for Plaintiff, Mattel, Inc. | March 14, 2005 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
SHANE H. McKENZIE, ESQ., Quinn Emanuel Urquhart Oliver & Hedges, LLP.
865 So. Figueroa Street, 10th Floor, Los Angeles, CA  90017  (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

Exhibit 1
Page ____

Exhibit B
Page ___ 30

Mar 22 05 11:30a      3D⁻  Inc.            (626) 791-2137          p.2

*AR (Rev. 11/94) Subpoena in a Civil Case*

---

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

**Rule 45, Federal Rules of Civil Procedure, Parts C & D:**

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Exhibit 1
Page _____

Exhibit B
Page 31

<u>ATTACHMENT A</u>

<u>Documents And Tangible Things To Be Produced</u>

I.    <u>DEFINITIONS.</u>

      1.   "YOU" or "YOUR" means Margaret Hatch-Leahy, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

      2.   "CARTER BRYANT" means Carter Bryant and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

      3.   "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Bratz" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and all DESIGNS and versions of such doll or any portion thereof.

      4.   "ANGEL" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Angel" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Angel" line, and all DESIGNS and versions of such doll or any portion thereof.

      5.   "PRAYER ANGELS" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Prayer Angels" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Prayer Angels" line, and all DESIGNS and versions of such doll or any portion thereof.

      6.   "MATTEL" means Mattel, Inc., any subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

Exhibit 1
Page _____ 8

Exhibit B
Page _____ 32

7.     "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

8.     "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

9.     "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

10.     "DOCUMENT" means any "writing" or "recording" as defined in <u>Federal Rule of Evidence</u> 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

11.     "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

12.     "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

ATTACHMENT A

Exhibit 1
Page _____ 

Exhibit B
Page __33__

*ATTN. STEPHEN CONTOPULOS*

## II.    INSTRUCTIONS.

A.    YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

B.    If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

1.    The privilege or protection that you claim precludes disclosure;

2.    The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

3.    The date, author(s), addressee(s); and

4.    Any additional facts on which YOU would base YOUR claim of privilege or protection.

C.    YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

D.    YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

E.    Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

## III.    DOCUMENTS AND TANGIBLE THINGS TO BE PRODUCED.

1.    All DOCUMENTS REFERRING OR RELATING TO BRATZ any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted), including without limitation any work or services performed by YOU or any other PERSON on BRATZ prior to January 1, 2001.

2.    All DOCUMENTS REFERRING OR RELATING TO ANGEL, including without limitation any work or services performed by YOU or any other PERSON on ANGEL.

ATTACHMENT A

Exhibit 1
Page    10

Mar 22 05 11:35a      3PP, Inc.                    (626) 791-2137           p.2

3.   All DOCUMENTS REFERRING OR RELATING TO PRAYER ANGELS, including without limitation any work or services performed by YOU or any other PERSON on PRAYER ANGELS.

4.   All DOCUMENTS REFERRING OR RELATING TO any agreements or contracts REFERRING OR RELATING TO BRATZ, ANGEL and/or PRAYER ANGELS between YOU and any PERSON.

5.   All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted).

6.   All DOCUMENTS REFERRING OR RELATING TO Anna Rhee any time prior to January 1, 2001 (regardless of when such document was created, written, received or transmitted).

7.   All DOCUMENTS, including without limitation phone records, REFERRING OR RELATING TO COMMUNICATIONS between Anna Rhee, on the one hand, and YOU, MGA and/or CARTER BRYANT prior to January 1, 2001.

8.   All DOCUMENTS REFERRING OR RELATING TO this litigation.

9.   All DOCUMENTS REFERRING OR RELATING TO any work or services that YOU performed for or on behalf of any competitor of MATTEL, including without limitation MGA, during the term of YOUR MATTEL employment.

10.   All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between YOU and MGA during the term of YOUR MATTEL employment.

11.   All doll heads, sculpts, prototypes, models, samples, molds and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER OR RELATE TO BRATZ.

07209/634362.1                          4

ATTACHMENT A

Exhibit 1
Page 11

Exhibit B
Page 35

12.    All doll heads, sculpts, prototypes, models, samples, molds and tangible items that REFER OR RELATE TO ANGEL and/or PRAYER ANGELS.

ATTACHMENT A

Exhibit 1
Page ___ 12

Exhibit B
Page ___ 36

CARTER BRYANT v. MATTEL, INC.
Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.
CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# EXHIBIT 2

Subpoena dated May 12, 2005

to Ms. Cloonan

---

DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS
OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

Hearing Date: November 20, 2007
Time:          10:00 a.m.
Place:         Courtroom 1

Exhibit 2
Page ___13___

AO 88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

Central   DISTRICT OF California

MATTEL, INC., a Delaware Corporation

### SUBPOENA IN A CIVIL CASE

v.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

Case Number:[1]  CV 04-9059 NM (RNBx)

TO:  Elise Cloonan
     1219 W. 160th Street
     Gardena, CA  90247

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment "A"

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP. | May 27, 2005 |
| 865 So. Figueroa Street, 10th Floor | 10:00 a.m. |
| Los Angeles, CA  90017        (213) 443-3000 |  |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Shane McKenzie     Attorney for Plaintiff, Mattel, Inc. | May 12, 2005 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
SHANE H. McKENZIE, ESQ., Quinn Emanuel Urquhart Oliver & Hedges, LLP.
865 So. Figueroa Street, 10th Floor, Los Angeles, CA  90017   (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

Exhibit 2
Page ___

JUN 01 2007 18:04

Exhibit B
Page ___ 38

2134433100

PAGE.07

AO 88 (Rev. 11/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Exhibit 2
Page _____ 15

# ATTACHMENT A

## Documents And Tangible Things To Be Produced

I.  **DEFINITIONS.**

       1.     "YOU" or "YOUR" means Elise Cloonan, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

       2.     "CARTER BRYANT" means Carter Bryant and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

       3.     "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Bratz" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and all DESIGNS and versions of such doll or any portion thereof.

       4.     "ANGEL" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Angel" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Angel" line, and all DESIGNS and versions of such doll or any portion thereof.

       5.     "PRAYER ANGELS" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Prayer Angels" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Prayer Angels" line, and all DESIGNS and versions of such doll or any portion thereof.

       6.     "MATTEL" means Mattel, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any

Exhibit B
Page _____ 40

Exhibit 2
Page _____ 46

other PERSON acting on its behalf, pursuant to its authority or subject to its control.

7.    "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

8.    "TOON TEENS" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as the name "Toon Teens" (whether in whole or in part and regardless of what such doll is or has been also called), and all DESIGNS and versions of such doll or any portion thereof.

9.    "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

10.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

11.    "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

12.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note,

2

Exhibit 2
Page ____

Exhibit B
Page ___41___

33100    PAGE.10

memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

13.   "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

II.   **INSTRUCTIONS.**

A.   YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

B.   If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

1.   The privilege or protection that you claim precludes disclosure;

2.   The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

3.   The date, author(s), addressee(s); and

4.   Any additional facts on which YOU would base YOUR claim of privilege or protection.

C.   YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

D.   YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

E.   Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

JUN 01 2007 18:05

ATTACHMENT A
2134433100          PAGE.11

Exhibit 2
Page ____ 18

Exhibit B
Page ____ 47

III.   DOCUMENTS AND TANGIBLE THINGS TO BE PRODUCED.

1.   All DOCUMENTS REFERRING OR RELATING TO BRATZ any time prior to December 31, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted), including without limitation any work or services performed by YOU or any other PERSON on BRATZ prior to December 31, 2001.

2.   All DOCUMENTS REFERRING OR RELATING TO ANGEL, including without limitation any work or services performed by YOU or any other PERSON on ANGEL.

3.   All DOCUMENTS REFERRING OR RELATING TO PRAYER ANGELS, including without limitation any work or services performed by YOU or any other PERSON on PRAYER ANGELS.

4.   All DOCUMENTS REFERRING OR RELATING TO any agreements or contracts between YOU and MGA, including without limitation all COMMUNICATIONS relating thereto.

5.   All DOCUMENTS REFERRING OR RELATING TO any agreements or contracts REFERRING OR RELATING TO BRATZ, ANGEL and/or PRAYER ANGELS between YOU and any PERSON, including without limitation all COMMUNICATIONS relating thereto.

6.   All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT.

7.   All DOCUMENTS, including without limitation phone records, REFERRING OR RELATING TO COMMUNICATIONS between CARTER BRYANT, on the one hand, and YOU and/or MGA on the other hand.

8.   All DOCUMENTS REFERRING OR RELATING TO Anna Rhee.

---

07209/642603.1                                4                              ATTACHMENT A

Exhibit 2
Page _____ 19

9.   All DOCUMENTS, including without limitation phone records, REFERRING OR RELATING TO COMMUNICATIONS between Anna Rhee, on the one hand, and YOU, MGA and/or CARTER BRYANT, on the other hand.

10.  All DOCUMENTS REFERRING OR RELATING TO this litigation.

11.  All DOCUMENTS REFERRING OR RELATING TO any work or services that YOU performed with, for or on behalf of any competitor of MATTEL, including without limitation MGA, during the term of YOUR MATTEL employment.

12.  All DOCUMENTS REFERRING OR RELATING TO MGA, including without limitation all DOCUMENTS REFERRING OR RELATING TO any money or payment made by MGA to YOU.

13.  All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between YOU and MGA prior to June 11, 2002.

14.  All DOCUMENTS, including without limitation phone records, REFERRING OR RELATING TO any COMMUNICATIONS between YOU and MGA after April 27, 2004.

15.  All DOCUMENTS REFERRING OR RELATING TO TOON TEENS.

16.  All doll heads, sculpts, prototypes, models, samples, molds and tangible items that were created, prepared or made, whether in whole or in part, prior to December 31, 2001 REFERRING OR RELATING TO BRATZ.

17.  All doll heads, sculpts, prototypes, models, samples, molds and tangible items REFERRING OR RELATING TO ANGEL and/or PRAYER ANGELS.

Exhibit 2
Page _____ 20

Exhibit B
Page _____ 44

**MAY 13 LETTER**

Exhibit 2
Page ____ 24

May 13, 2005

BY FACSIMILE
AND U.S. MAIL

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:   Mattel v. Bryant

Dear Mr. McFarland:

Thank you for meeting with me on Friday, April 29, 2005. I am writing to address some outstanding issues regarding the subpoena to Ms. Halpern.

During the meet and confer, you agreed to produce Ms. Halpern's hard drive from the relevant period, subject to a stipulated agreement regarding the procedure for a forensic examination. Further to our phone discussion on the subject on May 9, 2005, the specific proposal is as follows: We will pay for the forensic examination. The examiners will take possession of Ms. Halpern's hard drive, subject to the confidentiality provisions in the protective order. The examiners will make a forensic "image" of the hard drive, to determine whether the hard drive has been "wiped clean." If the computer has not been "wiped clean," then the parties can discuss the terms of the key word search, which will be used to generate a report of the files remaining on the hard drive.

We will share the report with counsel for Halpern, MGA and Bryant and discuss privilege, privacy and other disclosure issues at that time. All parties will reserve their rights as to whether

Exhibit 2
Page ___ 22

Exhibit B
Page ___ 46

any documents recovered from the hard drive are actually produced. Please let me know whether this proposal is acceptable to Ms. Halpern at your earliest convenience.

In addition, you have produced Ms. Halpern's 2001 1099 federal tax form. You stated that this is Ms. Halpern's only tax return that reflects payment from MGA relating to Bratz. If this is incorrect, please let me know as soon as possible.

Please also confirm that Ms. Halpern conducted another search for documents after our meet and confer on April 29, as you agreed she would, in an attempt to locate any records which she may have overlooked in her prior search. You agreed that this search would include a search for all documents relating to payment from MGA, including without limitation check stub receipts. We would also like confirmation that she has looked for any phone records she may have for the relevant time period, 1998-2001.

I look forward to hearing from you.


Very truly yours,



Shane Heather McKenzie

07209/#652479v1<QuinnEmanuel> -letter to McFarland re Agreement to Produce

CARTER BRYANT v. MATTEL, INC.
Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.
CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# EXHIBIT 3

Subpoena dated March 14, 2005

to Ms. Marlow

DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS
OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

Hearing Date: November 20, 2007
Time:          10:00 a.m.
Place:         Courtroom 1

Exhibit 3
Page _____ 24

FROM : MARLOW                    FAX NO. : 818 360 9158            Mar. 15 2005 05:01PM  P2

AO 88 (Rev. 11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

_____CENTRAL_____ DISTRICT OF LOS ANGELES

**FILE COPY**
~Pleading clip

MATTEL, INC., a Delaware Corporation

### SUBPOENA IN A CIVIL CASE

v.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

Case Number: [1]  CV 04-9059 NM  (RNBx)

TO:  Veronica Marlow      (818) 360-9150
     12250 Woodley
     Granada Hills, CA  91344

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHMENT "A"

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP. | March 25, 2005 |
| 865 So. Figueroa Street, 10th Fl., Los Angeles, CA 90017 | 9:30 a.m. |
| (213) 443-3000 |  |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] Shane McKenzie   Attorney for Plaintiff, Mattel, Inc. | March 14, 2005 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
SHANE H. McKENZIE, ESQ., Quinn Emanuel Urquhart Oliver & Hedges, LLP.
865 So. Figueroa Street, 10th Floor, Los Angeles, CA  90017   (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

Exhibit 3
Page ___25___

AO 88 (Rev. 11/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
|  |  |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to

the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Exhibit 3
Page ___ 36

Exhibit B
Page ___ 50

# ATTACHMENT A

## Documents And Tangible Things To Be Produced

### I.    DEFINITIONS.

1.    "YOU" or "YOUR" means Veronica Marlow, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

2.    "CARTER BRYANT" means Carter Bryant and any of his current or former agents, representatives, employees, attorneys, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.    "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Bratz" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and all DESIGNS and versions of such doll or any portion thereof.

4.    "ANGEL" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Angel" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Angel" line, and all DESIGNS and versions of such doll or any portion thereof.

5.    "PRAYER ANGELS" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also called), any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name "Prayer Angels" (whether in whole or in part and regardless of what such doll is or has been also called) or that is now or has ever been sold or marketed as part of the "Prayer Angels" line, and all DESIGNS and versions of such doll or any portion thereof.

6.    "MATTEL" means Mattel, Inc., any subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

07209/634361.1                              1

Exhibit 3
Page ___ 27

Exhibit B
Page ___ 51

7.    "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

8.    "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

9.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

10.   "DOCUMENT" means any "writing" or "recording" as defined in <u>Federal Rule of Evidence</u> 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

11.   "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

12.   "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

ATTACHMENT A

Exhibit 3
Page _____ 28

Exhibit B
Page _____ 52

## II.    INSTRUCTIONS.

A.    YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

B.    If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

1.    The privilege or protection that you claim precludes disclosure;

2.    The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

3.    The date, author(s), addressee(s); and

4.    Any additional facts on which YOU would base YOUR claim of privilege or protection.

C.    YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

D.    YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

E.    Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

## III.    DOCUMENTS AND TANGIBLE THINGS TO BE PRODUCED.

1.    All DOCUMENTS REFERRING OR RELATING TO BRATZ any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted), including without limitation any work or services performed by YOU or any other PERSON on BRATZ prior to January 1, 2001.

2.    All DOCUMENTS REFERRING OR RELATING TO ANGEL, including without limitation any work or services performed by YOU or any other PERSON on ANGEL.

ATTACHMENT A

Exhibit 3
Page _____ 29

Exhibit B
Page _____ 53

3.    All DOCUMENTS REFERRING OR RELATING TO PRAYER ANGELS, including without limitation any work or services performed by YOU or any other PERSON on PRAYER ANGELS.

4.    All DOCUMENTS REFERRING OR RELATING TO any agreements or contracts REFERRING OR RELATING TO BRATZ, ANGEL and/or PRAYER ANGELS between YOU and any PERSON.

5.    All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted).

6.    All DOCUMENTS REFERRING OR RELATING TO Anna Rhee any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted).

7.    All DOCUMENTS, including without limitation phone records, REFERRING OR RELATING TO COMMUNICATIONS between Anna Rhee, on the one hand, and YOU, MGA and/or CARTER BRYANT prior to January 1, 2001.

8.    All DOCUMENTS REFERRING OR RELATING TO this litigation.

9.    All DOCUMENTS REFERRING OR RELATING TO any work or services that YOU performed for or on behalf of any competitor of MATTEL, including without limitation MGA, during the term of YOUR MATTEL employment.

10.   All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between YOU and MGA during the term of YOUR MATTEL employment.

11.   All doll heads, sculpts, prototypes, models, samples, molds and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER OR RELATE TO BRATZ.

07209/634361.1                              4

ATTACHMENT A

Exhibit B                    Exhibit 3
Page    54                   Page    30

12.   All doll heads, sculpts, prototypes, models, samples, molds and
      tangible items that REFER OR RELATE TO ANGEL and/or
      PRAYER ANGELS.

ATTACHMENT A

Exhibit B
Page ___ 55

Exhibit 3
Page ___ 3|

CARTER BRYANT v. MATTEL, INC.
Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.
CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# EXHIBIT 4

Letter dated June 4, 2007

from Larry McFarland to Susan Wines

---

DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS
OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

Hearing Date: November 20, 2007
Time:          10:00 a.m.
Place:         Courtroom 1

Exhibit B
Page ___56___

Exhibit 4
Page ___38___

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS. CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750
WRITER'S EMAIL

lmcfarland@kmwlaw.com

June 4, 2007

<u>VIA FACSIMILE and U.S. MAIL</u>

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   <u>Mattel v. Bryant</u>

Dear Ms. Wines:

I am writing on behalf of our client, Ana Elisa Cloonan. Pursuant to Local Rule 7-19.1, please note that we will be filing an *ex parte* motion to quash the subpoena you recently served on Mattel Federal Credit Union for the production of documents pertaining to Ms. Cloonan. This motion is based on the fact that the requests violate Ms. Cloonan's California constitutional privacy rights, are overbroad and seek documents that are not relevant to this matter.

In addition, it is our position that you have further violated Ms. Cloonan's rights by not providing her with the required notice. See, Rutter *Federal Procedure Before Trial*, § 11:1433 (2007). Since your requests seek Ms. Cloonan's consumer records, you are required to notify Ms. Cloonan "[n]ot less than 10 days prior to the date for production specified in the subpoena duces tecum, plus the additional time provided by Section 1013 if service is by mail" and "[a]t least five days prior to service upon the custodian of the records, plus the additional time provided by Section 1013 if service is by mail." Cal. Civ. Code § 1985.3. You served the subpoena on Mattel Federal Credit Union on May 23, 2007. However, you chose not to provide Ms. Cloonan's counsel notice until <u>after</u> the service of the subpoena by mailing the notice on May 24, 2007, which was right before the Memorial Day weekend. Thus, Ms. Cloonan's prior counsel did not receive the notice until May 29, 2007. Such late notice clearly violates Cal. Civ. Code § 1985.3.

Your violation of Cal. Civ. Code § 1985.3 is compounded by the unfettered scope of your requests. As you know, Ms. Cloonan is not a party to this case. Yet, you have requested "<u>**all**</u> documents referring or relating to Ana Cloonan from January 1, 1999 to the present, inclusive." (Subpoena, emphasis added.) Such documents necessarily include documents that have no

Exhibit 4
Page _____ 33

Exhibit B
Page _____ 57

Susan Wines, Esq.
June 4, 2007
Page 2

relationship to either party in this case and, since Ms. Cloonan continues to maintain an account with Mattel Federal Credit Union to this date, include documents outside the time frame of issues of this case. You cannot possibly support your position that these documents are relevant to this case.

We attempted to resolve this issue directly with Mattel Federal Credit Union after receiving notice of the subpoena. On Friday, June 1, 2007, we sent a letter to Mattel Federal Credit Union requesting that it file objections to the subpoena on behalf of Ms. Cloonan. (See letter to Mattel Federal Credit Union attached hereto.) However, Mattel Federal Credit Union sent us a letter today stating that it intends to comply with the subpoena on June 11, 2007. (See letter from Mattel Federal Credit Union attached hereto.)

Unless you immediately withdraw the subpoena, we shall serve our ex parte motion to quash it. Please let me know immediately whether you will be withdrawing the subpoena or whether you will oppose our motion to quash.

Very truly yours,

Larry McFarland
KEATS McFARLAND & WILSON LLP

LWM/jlt

Exhibit B
Page   58

Exhibit 4
Page   34



June 4, 2007

Larry W. McFarland
Keats McFarland & Wilson LLP
9720 Wilshire Boulevard, Penthouse Suite
Beverly Hills, California 90212

Re:   Subpoena Seeking Records of Members Ana Elise Cloonan and Margaret Hatch-Leahy relating to Mattel, Inc. v. Bryant

Dear Mr. McFarland:

Please be informed that Mattel Federal Credit Union will not release the records of Ana Elise Cloonan until the subpoena compliance date of June 11, 2007. As we have informed Ms. Toutant, we will comply with the subpoena in the absence of a court order prohibiting the release of the records being sought.

With regards to the subpoena seeking the records of Margaret Hatch-Leahy, we have yet to be served this subpoena. Similarly, should a subpoena be served on the credit union it is our intention to comply with the subpoena in the absence of a court order stating otherwise.

Should you have any questions please contact Jay Lee (310) 877-3932.

Sincerely,

Jon Hernandez
President

cc:       Jay Lee, Internal Auditor

JUN 04 2007 14:27

Exhibit B
Page   59

Exhibit 4
Page   35

PAGE.02

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750
WRITER'S EMAIL
lmcfarland@kmwlaw.com

June 1, 2007

VIA FACSIMILE

Mattel Federal Credit Union
333 Continental Blvd.
El Segundo, CA 90245
Attn: Jay Lee, Custodian of Records

Re:   Subpoena Served on Mattel Federal Credit Union on or about May 23, 2007
      Seeking Records of Customer Ana Elise Cloonan
      In re Mattel, Inc. v. Bryant, U.S.D.C. (C.D. Cal.) Case No. 04-9059 NM (RNBx)

Dear Mr. Lee:

We are counsel for Ana Elise Cloonan, the consumer whose records are being sought in the above-referenced subpoena. As confirmed with you this morning in a telephone conference with Ms. Cloonan's former attorney, Linda Toutant of Margolis & Tisman LLP, Ms. Cloonan strongly objects to the Credit Union's compliance with the above-referenced subpoena (copy attached). Ms. Cloonan is not a party to the above-referenced litigation, but rather, an ex-employee of Mattel, Inc. and a customer of Mattel Federal Credit Union. Ms. Cloonan's financial records are personal and confidential and I am not aware of any relevance of those records to the subject matter of the litigation. In addition, the subpoena is vastly overbroad in that it requires the production of "ALL DOCUMENTS REFERRING OR RELATING TO ANA CLOONAN from January 1, 1999 to the present, inclusive."

I understand you informed Ms. Toutant today that the Credit Union has not produced any records in response to the subpoena, and will not do so under any circumstances before the subpoena compliance date (June 11th). As Ms. Toutant informed you, Ms. Cloonan requests that, as your customer, you protect her privacy rights by serving a written objection to the subpoena and informing the subpoenaing party that the Credit Union will not produce any records in response to the subpoena absent a court order. As I am sure you know, pursuant to Rules 45(c)(2)(B) of the Federal Rules of Civil Procedure, your written objection excuse the Credit Union from any liability for failure to comply with the subpoena.

Any independent financial institution would routinely honor its customer's request in these circumstances, but I have some concern here because the names of the Credit Union and the subpoenaing party both include the word "Mattel." Accordingly, please inform me immediately

Exhibit B
Page _____ 60

Exhibit 4
Page _____ 36

Jay Lee
June 1, 2007
Page 2

whether the Credit Union will or will not comply with Ms. Cloonan's request by serving the objection and declining to produce. If the Credit Union informs me that it intends to produce over Ms. Cloonan's objection, Ms. Cloonan will promptly file a motion with the court seeking an order prohibiting the production. Of course, Ms. Cloonan reserves all rights to seek relief against the Credit Union for any act or omission that fails to preserve her privacy right or other applicable rights.

I look forward to hearing from you and thank you for your prompt response.

Sincerely,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

cc:   All Counsel

Exhibit B
Page ____ 6 1

Exhibit 4
Page ____ 3 7

CARTER BRYANT v. MATTEL, INC.
Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.
CV 04-9059 and CV 05-2727

<u>Hon. Stephen G. Larson</u>

# <u>EXHIBIT 5</u>

Letter dated June 13, 2007

from Susan Wines to Larry McFarland

---

DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS
OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

Hearing Date: November 20, 2007
Time:          10:00 a.m.
Place:         Courtroom 1

Exhibit 5
Page _____ 38

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

June 13, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>
(310) 860-0363

Larry McFarland, Esq.
Keats McFarland & Wilson LLP
9720 Wilshire Boulevard
Penthouse Suite
Beverly Hills, California 90212

Re:    <u>Mattel, Inc. v. Bryant et al.</u>

Dear Mr. McFarland:

I write to follow up on our telephone conversations regarding the subpoenas that Mattel, Inc. ("Mattel") served on Mattel Federal Credit Union ("MFCU") on May 23, 2007 requesting records of Elise Cloonan and Margaret Hatch-Leahy.  Pursuant to our discussions, and in exchange for the parties' agreement to negotiate in good faith regarding how MFCU's production in response to the subpoenas will be handled, Mattel has requested that MFCU delay production of documents in response to the subpoenas until June 18, 2007.

Consistent with what we discussed, and to avoid motion practice on the MFCU subpoenas, Mattel is amenable to handling MFCU's production of documents in response to the subpoenas regarding Elise Cloonan and Margaret Hatch-Leahy in the following way:

1.    As counsel for Ms. Cloonan and Ms. Hatch-Leahy, you will receive production of all documents MFCU produces in response to the subpoenas.

2.    Attached as Exhibit A is a list of individuals and/or entities Mattel has reason to believe are related to MGA, Carter Bryant, Bratz, or other matters relevant to this litigation.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue. 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street. 22nd Floor. San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive  Suite 560. Redwood Shores. California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2136442.1

3.      You will review the records produced by MFCU and produce to Mattel any and all records constituting or referring or relating to any payments or transactions that relate to MGA, Isaac Larian, Carter Bryant and/or any of the individuals and/or entities on the list which Mattel provides to you or that otherwise relate to the Bratz project in any manner.  Ms. Cloonan and Ms. Hatch-Leahy will review the produced records and certify that they constitute all records from the documents obtained from MFCU that refer or relate to any payments or transactions regarding the individuals, entities and projects on Exhibit A and that none of the records withheld from production relate to the individuals, entities or projects on Exhibit A.

4.      In the event Mattel adds other individuals and/or entities at a later time that it has reason to believe are related to this litigation, it will provide those names to you and the parties will meet and confer regarding the production of any additional documents at that time.

5.      You will also produce to Mattel documents produced by MFCU showing:  (1) the identities of individuals with access to or control over any MFCU account for which records are being produced, including, for example, all signature cards and depository agreements and (2) the type of account at issue, whether it be a single, joint or multiple party account.

The purpose of this agreement is to resolve potential motion practice over the subpoena to MFCU.  It is without prejudice to Mattel's rights to seek or compel the production of documents of any kind from your clients, MGA, Bryant or any other person or entity, including without limitation, the production of financial documents from any source.

Please let me know if this proposal is satisfactory to you and your clients.  If you and your clients agree to this proposal, please sign below and return your signature to me at your earliest convenience.

Very truly yours,

Susan L. Wines

AGREED:

Signed: _____

Larry McFarland, Esq.
Attorney for Elise Cloonan and Margaret Hatch-Leahy

Dated: ___6/13/07_____

07209/2136442.1

2

Exhibit 5
Page  40

CARTER BRYANT v. MATTEL, INC.
Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.
CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# EXHIBIT 6

Letter dated June 21, 2007

from Susan Wines to Larry McFarland

DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

Hearing Date: November 20, 2007
Time:           10:00 a.m.
Place:          Courtroom 1

Exhibit 6
Page _____

Exhibit B
Page ___65___

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

June 21, 2007

**VIA FACSIMILE AND U.S. MAIL**

Larry McFarland, Esq.
Keats McFarland & Wilson LLP
9720 Wilshire Boulevard, Penthouse Suite
Beverly Hills, California 90212

Re:     Mattel, Inc. v. Bryant et al.

Dear Mr. McFarland:

I write to follow up on our phone conversation of today regarding Sarah Halpern and Elise Cloonan's obligation to make their computer hard drives available for inspection by Mattel.

Mattel is entitled to inspect and image Ms. Halpern's and Ms. Cloonan's hard drives to ensure that evidence is not lost and to permit Mattel to ascertain whether any relevant materials have been deleted. As noted in the 2006 Committee Notes to Federal Rule of Civil Procedure 45, "Rule 45(a)(1)(C) is amended to recognize that electronically stored information, as defined in Rule 34(a), can also be sought by subpoena." Under Federal Rule of Civil Procedure 34(a), the term "documents" includes documents stored in electronic form. See Playboy Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999); Fed. R. Civ. P. 34, adv. comm. note. Mattel's subpoenas to Halpern and Cloonan also defined "documents" to include electronic data and documents. Even if the relevant materials on their computers have been deleted, the hard drives must be produced because deleted records are discoverable. See Simon Property Group L.P. v. mySimon, Inc., 194 F.R.D. 639, 640-41 (S.D. Ind. 2000) (holding that plaintiff was entitled to attempt to recover deleted computer files from computers used by employees of the defendant to develop evidence supporting its claims); Playboy Enterprises, 60 F. Supp. 2d at 1054-55 (ordering a computer expert to make a mirror image of defendant's hard drive to search for emails deleted by defendant); Kucala Enterprises, Ltd. v. Auto Wax Co., Inc., 2003 WL

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2150439.1

Exhibit B
Page ___ 66

Exhibit 6
Page ___ 43

21230605, at *4, fn. 5 (N.D. Ill. 2003) ("Emails and other electronic documents are discoverable, as are deleted documents still located in a computer's hard drive.") .

Further, Mattel is entitled to inspect these hard drives to determine whether the computers contain additional responsive documents. The evidence suggests that they do. Carter Bryant admitted in his deposition that he used Ms. Cloonan's computer when they were roommates from approximately late 1998 to 2000, which is a critical time period in the case. Carter Bryant also acknowledged working with Ms. Halpern on Bratz in late 2000. As Ms. Halpern was a freelancer, she likely did much of her work on her personal computer.

The fact that these computers are the personal computers of Ms. Halpern and Ms. Cloonan does not make them immune from production. Courts routinely permit inspection of home computers. See Simon Property Group L.P., 194 F.R.D. at 640-41 (holding that plaintiff in trademark case was entitled to attempt to recover deleted computer files from computers used by employees of the defendant - whether such computers were at home or at work - to develop evidence supporting its claims); Superior Consultant Co. v. Bailey, 2000 WL 1279161, at *13 (E.D. Mich. 2000) (ordering defendants to "create and produce to defense counsel a backup file of defendant Bailey's laptop computer, and a backup file of any personal computer hard-drive to which defendant Bailey has had access at any time."). Such an inspection is particularly appropriate where, as here, both computers were used for business as well as personal purposes.

While Mattel is clearly entitled to these computer hard drives, it is also anxious to avoid subjecting Ms. Halpern or Ms. Cloonan to any undue burden. That is why we suggested only taking a mirror image of their hard drives. Creating a mirror image not only is forensically sound, but it takes very little time and causes no disruption to the computer's functionality. Mattel, of course, is willing to pay the costs involved in imaging the computer hard drives and is prepared to do so immediately. I hope we will be able to resolve this issue without burdening the court with a motion to compel.

I look forward to speaking with you early next week regarding this issue.

Very truly yours,

*Susan Wines*

Susan Wines

SLW
07209/2150439.1

07209/2150439.1

2

CARTER BRYANT v. MATTEL, INC.
Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.
CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# EXHIBIT 7

Letter dated July 17, 2007

from Larry McFarland to Susan Wines

---

DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS
OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

Hearing Date: November 20, 2007
Time:        10:00 a.m.
Place:       Courtroom 1

Exhibit B
Page _____ 68

Exhibit 7
Page _____ 44

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3730
WRITER'S EMAIL

lmcfarland@kmwlaw.com

July 17, 2007

VIA FACSIMILE and U.S. MAIL

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   Mattel v. Bryant

Dear Ms. Wines:

I am writing in response to your letter dated July 13, 2007.

With respect to Ms. Cloonan, as you know, she very recently had a caesarian section, and I have asked that she get me a doctor's note. I will let you know as soon as I have it. With respect to possible deposition dates for Ms. Marlow, Ms. Leahy and Ms. Halpern, as we have previously discussed, it makes sense that we have the document production finalized before you take their depositions. Because these individuals are third party witnesses, it is particularly important that they not be burdened with more than one day of deposition which might occur if they were to be deposed before you and I have resolved the document production issues. On that note, I have not heard from you with respect to the proposal for the inspection of the hard drives for Ms. Halpern and Ms. Cloonan set forth in my letter dated June 28, 2007. Also, on July 12, 2007, I received from Ms. Lewis a copy of the Order Granting Mattel's Motion to Compel Production of Documents. Based on our discussions, it appears to be your position that all four of our witnesses need to produce documents relating to Bratz through the present time. We need to discuss this issue, but if we were to agree with you, in the case of Ms. Leahy and Ms. Marlow, this will necessitate the production of additional documents.

Therefore, as it stands now, there are outstanding document production issues with Ms. Halpern, Ms. Marlow and Ms. Leahy that need to be resolved before their depositions can be taken.

I look forward to discussing these issues further with you at your convenience.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

Exhibit 7
Page ___45___

Exhibit B
Page ___69___

CARTER BRYANT v. MATTEL, INC.
Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.
CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# EXHIBIT 8

Letter dated July 20, 2007

from Jennifer Lewis to Larry McFarland

---

DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

Hearing Date: November 20, 2007
Time:            10:00 a.m.
Place:           Courtroom 1

Exhibit B
Page ___ 70

Exhibit 8
Page ___ 46

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

July 20, 2007

**VIA FACSIMILE AND U.S. MAIL**

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212
Fax: 310-860-0363

Re:   <u>Mattel, Inc. v. Bryant</u>

Dear Mr. McFarland:

I write in response to your letter dated July 17, 2007 and to follow up after our phone call on July 19, 2007.

Ms. Wines is currently working on a response to your proposal regarding the inspection of Ms. Halpern's and Ms. Cloonan's hard drives. We anticipate getting this proposal to you next week.

As we agreed during our conversation, we are entitled to any documents Ms. Marlow, Ms. Leahy, Ms. Halpern or Ms. Cloonan have relating to Bratz or Bratz derivative works through the present time. As I mentioned in my email earlier today, we also are entitled, per the court's order of January 25, 2007, to documents relating to Angel, Angel Baby, Prayer Angel or any other product on which any of your clients worked with Carter Bryant.

Further, during this conversation, you confirmed that you will speak with all four of your clients before next Thursday, July 26 to determine whether they have additional documents to produce in light of the above. You also stated that you will determine the approximate number of

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2172309.1

Exhibit 8
Page _____ 4ク

Exhibit B
Page _____ 7 1

documents, if any, each of your clients intends to produce.  When we speak on July 26, 2007, please be prepared to provide us with a date by which we will receive any supplemental productions from your clients.

We also request that when you speak with your clients before our July 26, 2007 phone call you determine their dates of availability for deposition in August.  We have been requesting deposition dates for Ms. Leahy, Ms. Marlow and Ms. Halpern for well over a month now.  We see no reason why we cannot agree on August deposition dates for Ms. Leahy, Ms. Marlow and Ms. Halpern by the end of July.

As we agreed, you will also speak with Ms. Cloonan this week and provide us with her doctor's note verifying that she cannot sit for deposition until early September.

I appreciate your consideration and look forward to hearing from you next week.


Very truly yours,

Jennifer E. Lewis


Exhibit B
Page _____ 72

Exhibit 8
Page _____ 48

**DECLARATION OF SERVICE**

*CARTER BRYANT v. MATTEL, INC.*
*Case No.: CV 04 – 09049 SGL (RNBx)*
*Consolidated with Case Nos. CV 04-9059 and CV 05-2727*

I, the undersigned say, I am and was at all times herein mentioned a resident of the County of Los Angeles, over the age of eighteen (18) years and not a party to the within action or proceeding. My business address is 9720 Wilshire Boulevard, Penthouse Suite, Beverly Hills, California 90212 and I am employed in the offices of Keats, McFarland & Wilson LLP by a member of the Bar of this Court at whose direction the service mentioned herein below was made.

On November 16, 2007, I served the following document(s):

1.  ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OF ANA ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER
2.  DECLARATION OF LARRY W. MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL DEPOSITIONS OF ANA ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

upon counsel and interested parties named below or on an attached service list, by placing a true and correct copy thereof in an envelope addressed as follows:

**See Attached Service List**

[XX]**BY MAIL:**    I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Beverly Hills, California.  I am readily familiar with the practice of Keats McFarland & Wilson LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after deposit for mailing in affidavit.

[  ]  **BY FACSIMILE:**    The above referenced document(s) was transmitted by facsimile transmission and the transmission was reported as completed and without error.  Pursuant to C.R.C. 2009(i), I either caused, or had someone cause, the transmitting machine to properly transmit the attached documents to the facsimile numbers shown on the service list.

[  ]  **BY OVERNIGHT DELIVERY:**    I am readily familiar with the practice of Keats McFarland & Wilson LLP for collection and processing of documents for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express, UPS, DHL or the like, or by Express Mail via the United States Postal Service.

[  ]  **BY EMAIL OR ELECTRONIC TRANSMISSION:**    I caused the document(s) to be sent to the persons at the e-mail addresses as listed above and/or on the attached Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 16, 2007, at Beverly Hills, California.

Janice L. Trayes

Keats McFarland
& Wilson
720 Wilshire Blvd.
Penthouse
Beverly Hills, CA
90212

Exhibit B

Page _____

## SERVICE LIST

**CARTER BRYANT v. MATTEL, INC.**
*Case No.: CV 04 – 09049 SGL (RNBx)*
*Consolidated with Case Nos. CV 04-9059 and CV 05-2727*

| Counsel | Tele/Fax/E-Mail | Party |
|---|---|---|
| **QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP** 865 South Figueroa Street, 10th Fl. Los Angeles, CA  90017<br><br>Dylan Proctor, Esq. | Tel:  213.443.3000 Fax:  213.443.3100<br><br>Email:dylanproctor@quinnemanuel.com | MATTEL, INC. |
| **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP & AFFILIATES** 300 South Grand Avenue, Suite 3400 Los Angeles, CA  90017<br><br>Thomas J. Nolan, Esq. | Tel:  213.687.5250 Fax:  213.621.5250 Email:  tnolan@skadden.com | MGA |
| **KEKER & VAN NEST, LLP** 710 Sansome Street San Francisco, CA 94111<br><br>Michael H. Page, Esq. | Tel:  415.391.5400 Fax:  415.397.7188 Email: mpage@kvn.com | CARTER BRYANT |

*Exhibit B*
*Page* 74