# EXHIBIT 1

DALE M. CENDALI (admitted *pro hac vice*)
DAVID I. HURWITZ (S.B. #174632)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407
Email:      dhurwitz@omm.com

PATRICIA GLASER (S.B. #55668)
CHRISTENSEN, GLASER, FINK,
JACOBS, WEIL & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA  90067
Telephone:  (310) 553-3000
Facsimile:  (310) 557-9815

Attorneys for MGA Entertainment, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH<br><br>MATTEL, INC. v. BRYANT and<br><br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No.  CV 04-09049 SGL (RNBx)<br><br>**MGA ENTERTAINMENT, INC.'S NOTICE OF DEPOSITION OF MATTEL, INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)**<br><br>Judge:  Hon. Stephen G. Larson<br><br>Date:                    September 19, 2007<br>Discovery Cut-Off:  March 3, 2008<br>Pretrial Conference: June 2, 2008<br>Trial Date:            July 1, 2008 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to the provisions of Federal Rule of Civil Procedure 30(b)(6), MGA Entertainment, Inc. ("MGA") will take the deposition upon oral examination of Mattel, Inc. ("Mattel") regarding the matters described below beginning on September 19, 2007, at 9:30 a.m., and continuing from day to day thereafter, excluding weekends and holidays, or as otherwise agreed by counsel, until completed.

The deposition will be held at the offices of O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071, telephone: (213) 430-6000. The deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic, sound and visual means. The stenographic recordation method may provide for the instant visual display of the testimony at deposition. MATTEL shall designate one or more officers, directors, managing agents or other PERSONS who consent to testify on MATTEL's behalf, who shall testify as to matters known or reasonably available to MATTEL relating to the topics listed in Attachment A.

Dated: September 5, 2007

O'MELVENY & MYERS LLP

By
David Hurwitz
Attorneys for Plaintiff MGA
Entertainment, Inc.

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 2

**ATTACHMENT A**

**DEFINITIONS**

1.     "ACCELERACERS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "AcceleRacerS," "Acceleracers," or "Accelleracers."

2.     "ACTION" shall mean this action consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entm't, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

3.     "ADVERTISEMENT" means a commercial message or advertisement in any medium, including without limitation, television, radio, movies, magazines, newspapers, the Internet, signage, and billboards.

4.     "ALIEN RACERS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "Alien Racers."

5.     "BARBIE" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "Barbie."

6.     "BRATZ" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known

A-1

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 3

1    as, or sold and marketed under the name, "Bratz."

2        7.    "BRAWER" means Ron Brawer.

3        8.    "BRISBOIS" means Janine Brisbois.

4        9.    "BRYANT" means Carter Bryant.

5        10.    "CARU" shall mean and refer to the Children's Advertising Review

6    Unit of the Council of Better Business Bureaus, Inc. and any of its past or present

7    principals, directors, officers, agents, employees, representatives, consultants,

8    attorneys, entities and persons acting in joint-venture or partnership relationships

9    and all others acting on its behalf, pursuant to its authority or subject to its control.

10        11.    "COMMUNICATIONS" means any disclosure, transfer or exchange

11    of information between two or more PERSONS, whether orally or in writing,

12    including without limitation any conversation or discussion by means of meeting,

13    letter, telephone, note, memorandum, telex, telecopier, electronic mail, or any other

14    electronic or other medium.

15        12.    "COUNTERCLAIM[S]" means Mattel's Second Amended Answer in

16    Case No. 05-02727 and Counterclaims for: 1. Copyright Infringement; 2. Violation

17    of the Racketeer Influenced and Corrupt Organizations Act; 3. Conspiracy to

18    Violate the Racketeer Influenced and Corrupt Organizations Act; 4.

19    Misappropriation of Trade Secrets; 5. Breach of Contract; 6. Intentional

20    Interference with Contract; 7. Breach of Fiduciary Duty; 8. Aiding and Abetting

21    Breach of Fiduciary Duty; 9. Breach of Duty of Loyalty; 10. Aiding and Abetting

22    Breach of Duty of Loyalty; 11. Conversion; 12. Unfair Competition; and 13.

23    Declaratory Relief filed July 12, 2007.

24        13.    "COUNTER-DEFENDANTS" means MGA, LARIAN, BRYANT,

25    MGA HK, MGA MEXICO, MACHADO, and Does 4 through 10.

26        14.    "DIVA STARZ" means and refers to each image, character, logo, doll,

27    styling head, plush toy, toy, accessory, product, packaging or other thing or matter

28    that is or has ever been manufactured, marketed or sold by MATTEL, or others

A-2

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 4

1  under license by MATTEL, as part of a line of goods or merchandise commonly

2  known as, or sold and marketed under the name, "Diva Starz."

3      15.  "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

4  Civil Procedure 24, and shall be construed in the broadest sense to mean any and all

5  writings, tangible things and property, of any kind, that are now or that have been in

6  YOUR actual or constructive possession, custody or control, including, but not

7  limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

8  punched, copied, recorded, transcribed, graphic or photographic matter of any kind

9  or nature, in, through, or from which information may be embodied, translated,

10 conveyed or stored, whether an original, a draft or copy, however produced or

11 reproduced, whether sent or received or neither, including, but not limited to, notes,

12 memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports,

13 inter- and intra-office COMMUNICATIONS, work papers, work sheets, work

14 records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

15 estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders,

16 telephone records, telegrams, telexes, literature, invoices, contracts, purchase

17 orders, estimates, recordings, transcriptions of recordings, records, books,

18 pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio

19 and digital recordings, television commercials, story boards, website or other spot

20 advertisements, movies, movie trailers, prototypes, samples, products, diaries,

21 calendars, charts, drawings, sketches, messages, photographs and data contained in

22 or accessible through any electronic data processing system, including, but not

23 limited to, computer databases, data sheets, data processing cards, computer files

24 and tapes, computer disks, CD-ROMs, computer meta-data, microfilm, microfiche,

25 electronic mail, website and web pages and transcriptions thereof and all other

26 memorializations of any conversations, meetings and conference, by telephone or

27 otherwise.  The term DOCUMENT also means every copy of a DOCUMENT,

28 where such copy is not an identical duplicate of the original, whether because of

A-3

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 5

1   deletions, underlinings, showing of blind copies, initialing, signatures, receipt

2   stamps, comments, notations, differences in stationery or any other difference or

3   modification of any kind.

4       16.    "ELECTRONIC RECORDS" means electronic documents, data or

5   electronically stored information — including writings, drawings, graphs, charts,

6   photographs, sound recordings, images, and other data or data compilations stored

7   in any medium from which information can be obtained, including but not limited

8   to emails (Outlook, Exchange, etc.), word processing files (Word, WordPerfect,

9   etc.), spreadsheets (Excel, etc.), databases (Access, SQL, etc.), presentations

10  (PowerPoint, etc.), picture files (gif, tif, jpg, etc.), graphic files (DWG, PCX, EPS,

11  high or multi-dimension, etc.), audio files (wav, snd, rmp, etc.), video files (mpg,

12  mov, etc.), or any other compilation of data used by YOU.

13      17.    "FLAVAS" means and refers to each image, character, logo, doll,

14  styling head, plush toy, toy, accessory, product, packaging or other thing or matter

15  that is or has ever been manufactured, marketed or sold by MATTEL, or others

16  under license by MATTEL, as part of a line of goods or merchandise commonly

17  known as, or sold and marketed under the name, "Flavas."

18      18.    "4-EVER BEST FRIENDS" means and refers to each image,

19  character, logo, doll, styling head, plush toy, toy, accessory, product, packaging or

20  other thing or matter that is or has ever been manufactured, marketed or sold by

21  MGA, or others under license by MGA, as part of a line of goods or merchandise

22  commonly known as, or sold and marketed under the name, "4-Ever Best Friends."

23      19.    "INITIAL DISCLOSURE WITNESS(ES)" means and refers to each

24  person listed in YOUR Consolidated Initial Disclosures, served on January 5, 2007.

25      20.    "LARIAN" means MGA's Chief Executive Officer, Isaac Larian.

26      21.    "LITTLE MOMMY" means and refers to each image, character, logo,

27  doll, styling head, plush toy, toy, accessory, product, packaging or other thing or

28  matter that is or has ever been manufactured, marketed or sold by MATTEL, or

A-4                 MGA'S 30(b)(6) DEPOSITION NOTICE
                    CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 6

1   others under license by MATTEL, as part of a line of goods or merchandise

2   commonly known as, or sold and marketed under the name, "Little Mommy."

3       22.    "MACHADO" means Carlos Gustavo Machado Gomez.

4       23.    "MATTEL," "YOU" and "YOUR" shall mean and refer to defendant

5   Mattel, Inc. and any of its past or present officers, directors, agents, employees,

6   representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates,

7   predecessors-in-interest and successors-in-interest, entities and persons acting in

8   joint venture or partnership relationships with MATTEL and any others acting on

9   MATTEL's behalf, pursuant to its authority or subject to its control.

10      24.    "MGA" shall mean and refer to plaintiff MGA Entertainment, Inc. and

11  any of its past or present officers, directors, agents, employees, representatives,

12  consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

13  interest (including ABC International Traders, Inc. and Micro Games of America,

14  Inc.) and successors-in-interest, entities and persons acting in joint venture or

15  partnership relationships with MGA and any others acting on MGA's behalf,

16  pursuant to its authority or subject to its control.

17      25.    MGA HK shall mean counter-defendant MGA Entertainment (HK)

18  Ltd. and any of its past or present officers, managers, agents, employees,

19  representatives, consultants, attorneys, divisions, affiliates, predecessors-in-interest

20  and successors-in-interest, entities and persons acting in joint venture or partnership

21  relationships with MGA HK and any others acting on MGA HK's behalf, pursuant

22  to its authority or subject to its control.

23      26.    MGA MEXICO shall mean counter-defendant MGAE de Mexico,

24  S.R.L. de C.V. and any of its past or present officers, managers, agents, employees,

25  representatives, consultants, attorneys, divisions, affiliates, predecessors-in-interest

26  and successors-in-interest, entities and persons acting in joint venture or partnership

27  relationships with MGA MEXICO and any others acting on MGA MEXICO's

28  behalf, pursuant to its authority or subject to its control.

A-5                MGA'S 30(b)(6) DEPOSITION NOTICE
                   CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 7

27. "MOMMY'S LITTLE..." means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known as, or sold and marketed under the names beginning with, "Mommy's Little...," including but not limited to the phrase "Mommy's Little Patient."

28. "MY SCENE" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "My Scene."

29. "MY SCENE THEMES" means and refers to the following themes for MY SCENE products: "Chillin Out!," "Night on the Town," "Jammin' in Jamaica," and "My Bling Bling."

30. "NPD" shall mean and refer to The NPD Group, Inc. and NPD Funworld, and any of their past or present principals, directors, officers, agents, employees, representatives, consultants, attorneys, entities and persons acting in joint-venture or partnership relationships and all others acting on their behalf, pursuant to its authority or subject to its control.

31. "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

32. "POLLY POCKET" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or

1    merchandise commonly known as, or sold and marketed under the name, "Polly
2    Pocket."
3         33.    The terms "RELATE TO" and "REFER TO" should each be construed
4    in the broadest possible sense to mean concerning, consisting of, referring to,
5    describing, discussing, constituting, evidencing, containing, reflecting, mentioning,
6    pertaining to, citing, summarizing, analyzing or bearing any logical or factual
7    connection with the matter discussed.
8         34.    "RELEVANT TIME PERIOD" means the period from January 1,
9    1998 through the present.
10        35.    "TIA" shall mean and refer to the Toy Industry Association, Inc., and
11   any of its past or present principals, directors, officers, agents, employees,
12   representatives, consultants, attorneys, entities and persons acting in joint-venture
13   or partnership relationships and all others acting on its behalf, pursuant to its
14   authority or subject to its control.
15        36.    "TREANTAFELLES" means Paula (Treantafelles) Garcia, currently
16   MGA's Vice President of Product Design and Development.
17        37.    "TRUEBA" means Mariana Trueba Alamada.
18        38.    "VARGAS" means Pablo Vargas San Jose.
19        39.    "WEE 3 FRIENDS" means and refers to each image, character, logo,
20   doll, styling head, plush toy, toy, accessory, product, packaging or other thing or
21   matter that is or has ever been manufactured, marketed or sold by MATTEL, or
22   others under license by MATTEL, as part of a line of goods or merchandise
23   commonly known as, or sold and marketed under the name, "Wee 3 Friends."
24        40.    "WSJ REPORTERS" means and refers to any current or former
25   reporters for the *Wall Street Journal* (including, but not limited to, Maureen
26   Tkacik) and any of their agents, assistants, investigators, employees, or
27   representatives.
28        41.    "WSJ STATEMENTS" means and refers to any and all of the

A-7                    MGA'S 30(b)(6) DEPOSITION NOTICE
                       CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1  Page 9

following statements that appeared in the *Wall Street Journal* article, dated July 18, 2003, entitled "Dolled Up: To Lure Older Girls, Mattel Brings in Hip-Hop Crowd":

....Inside Mattel, some are convinced the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998....

Mr. Bryant didn't work on the line that Mattel scrapped, according to former and current Mattel designers. But most Barbie designers had seen the prototypes, his former colleagues say. ...

The Mattel doll line that was scrapped wasn't exactly like the Bratz, says a longtime Mattel designer who worked on the project. But the Bratz's oversized heads -- with their pursed lips and cartoonish eyes -- are "virtually identical" to the heads of the dolls her team created, says the designer, who left Mattel in 2001.

Lily Martinez, a designer who still works at Mattel, came up with the idea for the big doll heads for Mattel, colleagues say. ... She even posted her sketch on her cubicle, colleagues say. "Anyone who passed by her cubicle would see the picture up on the wall," says another designer who also left Mattel in 2001. "The big heads, the big eyes, the big feet -- they were all the same" as the Bratz.

The Mattel dolls were scrapped in testing, current and former designers say, because Mattel had strict quotas that allowed only one "flanker brand" -- that is, a brand that would compete with Barbie for shelf space -- on the market at a time. At the time, Mattel chose a product called "What's Her Face" -- a doll with a blank face on which kids could draw expressions. ...

## EXAMINATION TOPICS

1.    MGA's and MGA MEXICO's alleged theft and use of, or direction of others to steal and use on MGA's or MGA MEXICO's behalf, MATTEL's trade secrets in Mexico as alleged in paragraphs 37-54 of YOUR COUNTERCLAIMS, including but not limited to (a) any trade secrets or confidential or proprietary information of MATTEL stolen or used by MGA or MGA MEXICO; (b) MGA and LARIAN's alleged enticement and direction of MACHADO, VARGAS or TRUEBA to steal MATTEL's trade secrets; (c) the specific DOCUMENTS and data allegedly copied, taken, accessed or modified by MACHADO, VARGAS, or TRUEBA; (d) YOUR policies and procedures for protecting the confidentiality of

A-8                    MGA'S 30(b)(6) DEPOSITION NOTICE
                       CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 10

1   the DOCUMENTS and data YOU contend were improperly taken by MACHADO,

2   TRUEBA or VARGAS; (e) the factual basis of YOUR information and belief that

3   MACHADO, TRUEBA or VARGAS delivered an internal line list to LARIAN or

4   another MGA officer as alleged in paragraph 49 of YOUR COUNTERCLAIMS;

5   (f) YOUR knowledge of any use of the allegedly misappropriated information by

6   MGA for unfair advantage in the United States and Mexico as alleged in paragraph

7   50 of YOUR COUNTERCLAIMS; (g) alleged efforts by MACHADO, TRUEBA

8   and VARGAS to conceal their alleged theft as alleged in paragraph 51 of YOUR

9   COUNTERCLAIMS; (h) YOUR investigation of facts and circumstances

10   concerning the departure of MACHADO, VARGAS or TRUEBA from MATTEL

11   and the alleged theft and use, including any proof of actual use by them or MGA

12   MEXICO, of MATTEL trade secrets in Mexico; (i) when YOU first learned the

13   facts and circumstances alleged in paragraphs 37-54 of YOUR

14   COUNTERCLAIMS; (j) YOUR and YOUR agents' and attorneys' roles in,

15   participation in or knowledge of any and all investigations by Mexican government

16   authorities as alleged in paragraph 53 of YOUR COUNTERCLAIMS; and (n)

17   YOUR knowledge of COMMUNICATIONS between MGA, LARIAN, or other

18   MGA or MGA MEXICO employees or agents on the one hand and MACHADO,

19   VARGAS or TRUEBA on the other hand, including but not limited to the

20   recruitment and hiring MACHADO, VARGAS or TRUEBA and the use of "Plot

21   04" email account.

22       2.    MGA's alleged hiring of BRAWER to facilitate its theft and use,

23   including any proof of actual use, of MATTEL's business methods and practices as

24   alleged in paragraphs 55-69 of YOUR COUNTERCLAIMS, including but not

25   limited to (a) the specific confidential and proprietary information YOU contend

26   that BRAWER took from MATTEL as alleged in 68-69 of YOUR

27   COUNTERCLAIMS; (b) BRAWER's Employee Invention and Trade Secret

28   Agreement with Tyco; (c) BRAWER's access to confidential information about

A-9

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 11

1   Mattel and its business; (d) YOUR COMMUNICATIONS with BRAWER

2   concerning MATTEL's Code of Conduct and protecting MATTEL's confidential

3   and proprietary business information; (e) the contents of the cardboard box

4   allegedly carried by BRAWER out of MATTEL's offices on September 15, 2004

5   as alleged in paragraph 62 of YOUR COUNTERCLAIMS; (f) the taking by

6   BRAWER of the 2004 sales plan for one of MATTEL's significant customers as

7   alleged in paragraph 62 of YOUR COUNTERCLAIMS; (g) YOUR

8   COMMUNICATIONS with BRAWER during his exit interview; (h) when YOU

9   first learned the facts and circumstances alleged in paragraphs 55-69 of YOUR

10   COUNTERCLAIMS; (i) YOUR investigation of facts and circumstances

11   concerning BRAWER's departure from MATTEL and BRAWER's alleged theft

12   and use of MATTEL's highly valuable business methods and practices; and (j)

13   BRAWER's alleged targeting of and COMMUNICATIONS with MATTEL

14   employees in an effort to induce them to join MGA and misappropriate confidential

15   MATTEL information as alleged in paragraph 69 of YOUR COUNTERCLAIMS,

16   including the IDENTITIES of the MATTEL employees contacted by BRAWER

17   and YOUR knowledge of the substance of those COMMUNICATIONS.

18        3.    MGA's alleged theft and actual use of, or direction of others to steal

19   and use on MGA's behalf, MATTEL's trade secrets in Canada as alleged in

20   paragraphs 70-76 of YOUR COUNTERCLAIMS, including (a) the specific

21   DOCUMENTS and data allegedly copied, taken, accessed or modified by

22   BRISBOIS; (b) when YOU first learned the facts and circumstances alleged in

23   paragraphs 70-76 of YOUR COUNTERCLAIMS; and (c) YOUR investigation of

24   facts and circumstances concerning BRISBOIS's departure from MATTEL and

25   alleged theft and use of, including any proof of actual use by MGA of, MATTEL

26   trade secrets in Canada, including MATTEL's participation in any investigation by

27   Canadian government authorities.

28

A-10                           MGA'S 30(b)(6) DEPOSITION NOTICE
                               CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 12

4. Any other instances where YOU contend that MGA misappropriated or attempted to misappropriate MATTEL trade secrets for the benefit of MGA, or persuaded MATTEL employees to join MGA to misappropriate MATTEL trade secrets as alleged in paragraph 77 of YOUR COUNTERCLAIMS, including (a) the IDENTITY of all former MATTEL employees who allegedly copied, took, accessed, modified or actually used MATTEL confidential information; (b) confidential information or trade secrets allegedly copied and taken from MATTEL; (c) MATTEL confidential information or trade secrets allegedly disclosed to and used by MGA; (d) when each theft occurred; (e) when MATTEL first learned of each theft or attempted theft; and (f) what MATTEL did in response to each theft or attempted theft.

5. The IDENTITY, origin, source, meaning and authenticity of all materials YOU contend were MATTEL trade secrets improperly taken by employees of MGA, including M0019162-M0032318, M0059836-M0059836, M0074952-M0074961, and M0075253-M0076446 and YOUR policies and procedures for protecting the confidentiality of the DOCUMENTS YOU contend were MATTEL trade secrets improperly taken by employees of MGA.

6. LARIAN's alleged misrepresentations to retailers about MATTEL's and MGA's products, as alleged in paragraphs 78-81 of YOUR COUNTERCLAIMS, including (a) the customers and retailers to whom YOU allege LARIAN made false representations; (b) the retailer who cancelled and subsequently reinstated its order for 75,000 units of MY SCENE BLING BLING product; (c) the alleged false and misleading press releases; and (d) YOUR COMMUNICATIONS with any retailers concerning the alleged statements by LARIAN.

7. YOUR knowledge of all acts YOU contend are the predicate acts constituting a pattern of racketeering activity in violation of RICO as alleged in

A-11

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1  Page 13

1   paragraph 93 of YOUR COUNTERCLAIMS and Exhibit C to YOUR

2   COUNTERCLAIMS.

3       8.    Any injury or damages suffered by MATTEL resulting from the acts

4   alleged in MATTEL's COUNTERCLAIMS.

5       9.    MGA's alleged theft of "BRATZ" from YOU,  including but not

6   limited to (a) MGA's showing of BRATZ prototypes or products to focus groups

7   and retailers in November 2000 as alleged in paragraph 29 of YOUR

8   COUNTERCLAIMS; (b) MGA's and LARIAN's alleged encouragement, aiding,

9   and financing of BRYANT to develop BRATZ while he was a MATTEL employee

10  as alleged in paragraph 33 of YOUR COUNTERCLAIMS; and (c) BRYANT's and

11  MGA's alleged concealment of facts that prevented MATTEL from discovering

12  that MATTEL allegedly was the true owner of BRATZ as alleged in paragraph 35

13  of YOUR COUNTERCLAIMS.

14      10.   COMMUNICATIONS between YOU (including YOUR agents and

15  attorneys) and law enforcement authorities in Mexico, Canada or the United States,

16  including but not limited to the United States Attorney's Office, the Department of

17  Justice and any national, federal, regional, state, provincial, or local authorities,

18  concerning any of the allegations in YOUR COUNTERCLAIMS or any other

19  alleged taking of confidential MATTEL information by MGA or persons currently

20  or formerly employed by MGA, including MACHADO, VARGAS, TRUEBA,

21  BRISBOIS, and Jorge Castilla, and DOCUMENTS YOU or YOUR agents or

22  attorneys provided to such law enforcement authorities.

23      11.   MATTEL's knowledge or information about the involvement of

24  BRYANT or any person then employed by MATTEL (directly or via a temporary

25  employment agency), in the origin, creation, design or and development of BRATZ,

26  including, but not limited to (a) when MATTEL first learned about BRYANT's

27  involvement with the origin and development of BRATZ; and (b) who at MATTEL

28  knew about the involvement of BRYANT or any person then employed by

A-12

MGA'S 30(b)(6) DEPOSITION NOTICE<br>CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 14

MATTEL with the origin, creation, design or development of BRATZ, and when and how each individual came to possess such knowledge or information.

12.   The use of any MATTEL materials, property or resources by BRYANT or any person then employed by MATTEL (directly or via a temporary employment agency) in connection with creation, design, or development of the original or first wave of BRATZ fashion dolls and accessories introduced in the U.S. in the summer of 2001, including, without limitation (a) PERSONS allegedly involved in putting together the three dimensional dummy used by BRYANT in meeting with MGA; and (b) the specific MATTEL materials, property or resources allegedly used in putting together the three dimensional dummy used by BRYANT in meeting with MGA.

13.   MATTEL's knowledge about BRYANT's performance of services for MGA, including, without limitation (a) when and how MATTEL first learned about BRYANT's performance of any services for MGA; (b) when and how MATTEL first learned about the first instance of BRYANT's performance of services for MGA; and (c) who at MATTEL knew about BRYANT's performance of any services for MGA.

14.   MATTEL's knowledge about BRYANT's contacts with MGA, including, without limitation (a) when and how MATTEL first learned of any contacts BRYANT had with MGA; (b) when and how MATTEL first learned of the first contact BRYANT had with MGA; and (c) who at MATTEL knew about BRYANT's contacts with MGA.

15.   MATTEL's knowledge of BRYANT's contract with MGA, including without limitation (a) when, how and who at MATTEL first became aware of its existence; (b) when MATTEL first became aware of its terms; and (c) when MATTEL or its agents first obtained a copy of the contract.

16.   The WSJ STATEMENTS, including, but not limited to (a) YOUR knowledge of who made the WSJ STATEMENTS, or provided any of the

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 15

1  information contained in the WSJ STATEMENTS, to any WSJ REPORTERS;

2  (b) the identity of all fashion doll or doll designers who left MATTEL in 2001;

3  (c) any efforts by YOU to facilitate the publication of the WSJ STATEMENTS,

4  including, but not limited to, assisting a WSJ REPORTER to obtain the WSJ

5  STATEMENTS or the information contained in the WSJ STATEMENTS, to

6  identify people for WSJ REPORTERS to contact and interview, and to verify the

7  WSJ STATEMENTS or the information contained in the WSJ STATEMENTS;

8  (d) when YOU first learned or became aware of the WSJ STATEMENTS;

9  (e) YOUR response or reaction to the WSJ STATEMENTS after YOU first learned

10  or became aware of them; (f) any actions taken by YOU (including, but not limited

11  to, any investigation or interviews) in response to the WSJ STATEMENTS; and

12  (g) COMMUNICATIONS among MATTEL employees regarding the WSJ

13  STATEMENTS.

14     17.   MATTEL's internal and external investigations of the facts related to

15  this ACTION, including, but not limited to (a) investigations of or concerning

16  BRYANT, Richard Irmen, BRYANT's family, LARIAN, LARIAN's family,

17  MGA, MGA's current and former officers and employees, BRAWER, Farhad

18  (Fred) Larian, Shirin Larian Makabi; Shirin Salemnia, Holly Stinnett, Tina Patel,

19  Mercedeh Ward, Anna Rhee, Veronica Marlowe, Margaret Leahy, Thomas Park,

20  and Jahangir Makabi; (b) surveillance of BRYANT, Richard Irmen, BRYANT's

21  family, LARIAN, LARIAN's family, MGA, MGA's current and former officers

22  and employees, BRAWER, Farhad (Fred) Larian, Shirin Larian Makabi; Shirin

23  Salemnia, Holly Stinnett, Tina Patel, Mercedeh Ward, Anna Rhee, Veronica

24  Marlowe, Margaret Leahy, Thomas Park, and Jahangir Makabi, including the dates

25  and times of surveillance, and the identities of the persons who conducted such

26  surveillance; (c) written or recorded statements; (d) the origin, source, meaning and

27  authenticity of DOCUMENTS produced in this ACTION from YOUR Global

28  Security department files.

A-14

Exhibit 1   Page 16

18.    YOUR policies and practices concerning interviews and investigations of employees who leave MATTEL to work for competitors, including but not limited to MGA, and YOUR knowledge of the reason(s) why each of your employees, including but not limited to the following former employees or contractors ceased working for MATTEL or a MATTEL subsidiary to work for MGA or an MGA subsidiary as employees or contractors, including what YOU learned through exit interviews:  BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Eve Bennett; Kami Gilmour; Sarah Halpern; Margaret Leahy; Veronica Marlowe; Maureen Mullen; Amy Myer; Anna Rhee; TREANTAFELLES; Odette Vandenburg; Mercedeh Ward; Daniel Cooney; Janet Han; Steve Chang; Lui Domingo; Pui Pootipong; Ellen Komatsu; Shirin Salemnia; Joe Feldman; Ricardo Abundis; Ian Bate; Nanette Black; John E. Bloodworth III; Kevin Bloomfield; Jorge Castilla; Suzy Chang; Steve Cheng; Gerry Cody Jr.; Nick Contreras; Maria De La Cruz; Karen Dixon; Greg Paul Dominguez; Craig Forrest; Mia Garcia; Eduardo Gonzalez; Tracy Hall; Melody Hansen; Todd Hansen; Jill Hatch; Michael Hinh; Janet Hsu; Alice Kao; Ken Kaufman; Pamela Keller; Alejandro Gabriel Keossian; Joyce Kim (Lee); Young Ran Kim; Kristen Kirst; Jill Larson; Adrian (Chi Shing) Law; Bo Lumabao; Dorothy Marks; Raymond John Martin; Aye Aye Min; Yumi Nakamura; Marvin Natareno; Christine Nigoghossian; Amelia Ivy Arafiles Palijo; Danny Pestonji; Denise Phelan; Michael Pickard; Ronald Rae; Leland Ratleff; Desiree Elisabeth Ronquillo; Micaela Ruiz; Natasha Sasic-Koetsier; Maria Elena Salazar; Harvey Scott; Steffen J. Smith; Jier Su; Dennis Soai; Marla Thompson; Chau Ngoc Tran; Esteban Umana; Gail Upshaw; Chang-Chin Wang; Lance Ward; Dawn Whittaker; Jenny Wong; Troy Augborne; Carter Bryant; Reyna Zetino; Daryoush Aryapour; Janet Blaser; Mari Joanne Bower Violette; Lilia Brown; Gabriella Burlando; Fabienne Chonavel; Christine Dailey; Steve Feicht; Christopher Hardouin; Martin Hitch; Jeff Ho; James Huntley; Randi Kagan; Andreas Koch; Lyn Carol Mayer; Susan McBride; Frank Mils; Xuanlan Nguyen;

A-15

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 17

1   Gary Thomas O'Brien; Jose Otero; Dan Owen; Nicolletta Parasole; Ana Mancia

2   Parkinson; Roger Rambeau; Wendy Reed; Scot Anthony Reyes; Lon Ross; Dena

3   Schwartz; Brandi Shaver; Holly Stinnett; Lisa Tawil; Gord Terry; Joseph Whitaker;

4   Patrick Williams; Tong Wong; Cherrise Wright; Dave Zbojniewicz; Lourdes

5   Aguilar; Juan Carlos Virrueta Camacho; Alejandro Gurza Romay; Lidia Ivete

6   Montero Leyva; Laura Ochoa; Andrea Ramirez.

7       19.   BRYANT's relationship or contacts with TREANTAFELLES during

8   the time they were both employed at MATTEL, including, but not limited to: (a)

9   YOUR knowledge of whether BRYANT's workspace was next to or near

10  TREANTAFELLES' workspace, and, if so, exactly when and for how long; (b)

11  YOUR knowledge of whether BRYANT and TREANTAFELLES worked together

12  on any projects for MATTEL and, if so, during what time period(s) and specific

13  projects; (c) YOUR knowledge of whether BRYANT and TREANTAFELLES

14  were social acquaintances and, if so, during what time period(s); and (d) any

15  evidence that supports YOUR contention that BRYANT and TREANTAFELLES

16  knew each other during the time they were both employed at MATTEL (including,

17  but not limited to, that they had workspaces near or next to each other, worked on

18  projects together, and/or were social acquaintances), including, but not limited to,

19  any documentary evidence and potential witnesses.

20      20.   The floor plan and seating chart for MATTEL's offices in El Segundo,

21  California in 1999 and 2000, specifically the Design Center and the work spaces of

22  BRYANT, including the origin, source, authenticity, meaning and use of

23  DOCUMENTS produced by MATTEL as M13361-M13368, including M13365A,

24  and the physical proximity of the work spaces of BRYANT and other MATTEL

25  current or former employees, contract workers or PERSONS working for or at

26  MATTEL, including without limitation TREANTAFELLES, Rene Pasko, Lily

27  Martinez, Kislap Ongchangko, Joni Pratt, Barbara Miller, Maureen Mullen and any

28  other PERSON MATTEL claims had confidential information accessed by Bryant

A-16

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 18

1   or MGA (including any current or former employees who were employees, contract

2   workers or vendors of MATTEL at the relevant time).

3       21.   YOUR COMMUNICATIONS and COMMUNICATIONS made on

4   YOUR behalf with Anna Rhee that refer or relate to BRATZ, MGA, BRYANT or

5   Elise Cloonan, including the COMMUNICATIONS with Anna Rhee's counsel and

6   YOUR contacts with Anna Rhee, including but not limited to when she began

7   working for or with MATTEL, what projects she worked on for MATTEL and the

8   dates of such work, and payments made by MATTEL to her.

9       22.   YOUR COMMUNICATIONS and COMMUNICATIONS made on

10  YOUR behalf with Steve Linker that refer or relate to BRATZ, MGA, BRYANT,

11  this ACTION or the asserted or potential allegations or defenses therein, any

12  witnesses in this ACTION, and DOCUMENTS that refer or pertain to any of the

13  above subjects, and YOUR contacts with Steve Linker, including but not limited to

14  when he began working for or with MATTEL, the projects on which he worked for

15  MATTEL and the dates of such work, and payments made by MATTEL to him,

16  and DOCUMENTS that refer or pertain to any of the above subjects.

17      23.   YOUR COMMUNICATIONS and COMMUNICATIONS made on

18  YOUR behalf with Matt Bousquette, Elise Cloonan, David Dees, Sara Halpern,

19  Margaret Hatch aka Margaret Leahy, Rachel Harris, Liz Hogan, Andreas Koch,

20  Steve Linker, Kris Lynch, Veronica Marlowe, Len Mazzocco, Maureen Mullen

21  Chianese, Billy Ragsdale, Wendy Ragsdale, Brian Schmidt, Cassidy Park, Pam

22  Peretz, Jesse Ramirez and Ivy Ross, or any current or former MGA employee or

23  person you know or believe to be a current or former MGA freelancer, where the

24  COMMUNICATIONS refer or relate to BRATZ, MGA, BRYANT, this ACTION

25  or the asserted or potential allegations or defenses therein, any witnesses in this

26  ACTION, and DOCUMENTS that refer or pertain to any of the above subjects.

27

28

A-17                MGA'S 30(b)(6) DEPOSITION NOTICE
                    CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 19

24.   . The process(es) by which MATTEL evaluates and approves ideas for new fashion dolls, including, but not limited to, any changes to such process(es) after BRATZ dolls were released in 2001.

25.   MATTEL'S hiring and recruiting practices, including its practices of recruiting and hiring PERSONS who have been employed by MATTEL competitors, including, but not limited to, MGA, Hasbro, Leap Frog, Jakks Pacific, Maui Toys, Malibu Toys, Galoob Toys, the number of such people MATTEL has hired since 1998, and YOUR efforts to ensure that new employees did not bring confidential information from their former employers.

26.   For each and every agreement requested by MATTEL concerning confidentiality, ownership of intellectual property, and/or any post-employment restrictions or obligations to MATTEL, the number, percentage, and identity of MATTEL employees who have refused to sign such agreement(s) since 1998.

27.   The circumstances under which BRYANT testified in September 2003 in the lawsuit brought by Gunther Wahl against MATTEL, including when and what any individual, including MATTEL'S in-house and outside counsel with direct or supervisory responsibility for this litigation, knew of BRYANT'S anticipated appearance and testimony and the role that appearance and testimony played in the timing of MATTEL'S lawsuit against BRYANT.

28.   The identity of, and the sales, revenues, and profits of, any MATTEL product(s) MATTEL contends have been impacted by BRATZ, including, but not limited to, BARBIE, DIVA STARZ, FLAVAS and MY SCENE, and any accessories, and licensed products, from 1990 to the present.

29.   The impact BRATZ has had, if any, on the sales and sales revenues of any Mattel product(s), including but not limited to BARBIE, DIVA STARZ, FLAVAS, any accessories and licensed products, and any product not listed herein that Mattel claims have been impacted by BRATZ.

A-18                MGA'S 30(b)(6) DEPOSITION NOTICE
                    CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1  Page 20

30. The net worth or value of MATTEL'S "BARBIE" brand, including, but not limited to, its "My Scene" "Barbie" line of products, from 1990 to the present.

31. The INITIAL DISCLOSURE WITNESSES, including, but not limited to: (a) the specific knowledge or information relevant to YOUR allegations and defenses that YOU believe each INITIAL DISCLOSURE WITNESS possesses; (b) YOUR COMMUNICATIONS with each INITIAL DISCLOSURE WITNESS about the subject matters YOU identified in YOUR Consolidated Initial Disclosures; (c) YOUR COMMUNICATIONS with any PERSON concerning each INITIAL DISCLOSURE WITNESS' knowledge of the subject matters YOU identified in YOUR Consolidated Initial Disclosures; and (d) any DOCUMENTS pertaining to information known by each INITIAL DISCLOSURE WITNESS about the subject matters YOU identified in YOUR Consolidated Initial Disclosures.

32. YOUR awareness of and response to "BRATZ," including, but not limited to: (a) YOUR reaction to "BRATZ" fashion dolls when they were first released in 2001; (b) when and why YOU first began to consider "BRATZ" a competitive threat to YOUR business; (c) YOUR strategies and efforts to compete with "BRATZ" since its release in 2001, including, but not limited to, (i) the creation, development, and release of "FLAVAS"; (ii) the redesign of "DIVA STARZ"; (iii) the creation, development, and release of "MY SCENE"; (iv) the origin, source, meaning and authenticity of the "Bratz Brief" produced in this ACTION at M 0079765-71; (v) the origin, source, meaning and authenticity of the Wal-Mart Hotline Report produced at M0080622-23; and (vi) the origin, source, meaning and authenticity of the "WWBD: What Would Brawer Do?" document produced at M0047508; (vii) the origin, source, meaning and authenticity of notes produced at PMH 2273, 2379-83, 1303-07, 2122-27, 2242-59, 2147-49 and any meeting(s) at which these notes were taken; and (viii) the origin, source, meaning

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 21

1  and authenticity of Board of Directors Update, dated September 2005, produced at

2  M0093291-93314; and (d) the extent to which "BRATZ" products are present at

3  YOUR offices, including, but not limited to, (i) the current and former MATTEL

4  employees who have or have had "BRATZ" products in their offices or

5  workspaces; and (ii) whether or not YOU have a room or area in YOUR offices

6  dedicated to "BRATZ" products.

7      33.   "MY SCENE," including, but not limited to: (a) the origins or sources

8  of inspiration of the "MY SCENE" female fashion dolls and packaging, including,

9  without limitation, (i) the purpose for which "MY SCENE" fashion dolls and

10  packaging were created; and (ii) the extent to which "BRATZ" fashion dolls and

11  packaging were an inspiration or factor in the development of "MY SCENE"

12  fashion dolls and packaging; (b) any changes to the appearance of the "MY

13  SCENE" female fashion dolls and packaging (including, but not limited to, any

14  changes to the head sculpts, facial features, or face painting) since their initial

15  release; (c) "MyScene Platypus" and the origin, source, meaning and authenticity of

16  the document produced at M0086367-M0086428; (d) the origins or sources of

17  inspiration for the MY SCENE THEMES and the extent to which any "BRATZ"

18  themes were an inspiration or factor in their development; (e) the origins or sources

19  of inspiration for the "MY SCENE" styling heads and the extent to which any

20  "BRATZ" "Funky Fashion Makeover Heads" were an inspiration or factor in their

21  development; (f) the origins or sources of inspiration for the "MY SCENE" plush

22  pets and packaging and the extent to which any "BRATZ PETZ" and packaging

23  was an inspiration or factor in their development; (g) marketing strategies and

24  consumer demographics for "MY SCENE"; and (h) the selection, approval process,

25  design and development of "MY SCENE" products and themes (including timing

26  and release dates).

27      34.   "WEE 3 FRIENDS," including, but not limited to (a) the origins or

28  sources of inspiration of "WEE 3 FRIENDS" and the extent to which "4-EVER

A-20

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 22

1   BEST FRIENDS" was an inspiration or factor in the development; and

2   (b) marketing strategies and consumer demographics for "WEE 3 FRIENDS"; and

3   (c) the selection, approval process, design and development of "WEE 3 FRIENDS"

4   (including timing and release dates).

5       35.   "LITTLE MOMMY," including but not limited to (a) the origins or

6   sources of inspiration of "LITTLE MOMMY" and the extent to which

7   "MOMMY'S LITTLE…" was an inspiration or factor in the development of

8   "LITTLE MOMMY"; (b) marketing strategies and consumer demographics for

9   "LITTLE MOMMY"; and (c) the selection, approval process, design and

10   development of "LITTLE MOMMY" (including timing and release dates).

11       36.   "ACCELERACERS," including, but not limited to (a) the origins or

12   sources of inspiration of "ACCELERACERS" and whether "ALIEN RACERS"

13   was a source of inspiration for or factor in the development of ACCELERACERS;

14   (b) YOUR decision re-brand one of YOUR "Hot Wheels" toy lines

15   "ACCELERACERS"; (c) marketing strategies and consumer demographics for

16   "ACCELERACERS"; and (d) the selection, approval process, design and

17   development of "ACCELERACERS" (including timing and release dates).

18       37.   "DIVA STARZ," including, but not limited to (a) the origins or

19   sources of inspiration of YOUR tag line "Do you have a passion for fashion?" and

20   the extent to which MGA's tag line "The Girls with a Passion for Fashion" was an

21   inspiration or factor; (b) the origins or sources of inspiration of the redesign of

22   "DIVA STARZ" fashion dolls including, without limitation, (i) the purpose for

23   which the redesigned "DIVA STARZ" products were created; and (ii) the extent to

24   which "BRATZ" was an inspiration or factor in the development of the redesigned

25   "DIVA STARZ"; (c) marketing strategies and consumer demographics for "DIVA

26   STARZ"; and (d) the selection, approval process, design and development of

27   "DIVA STARZ" (including timing and release dates).

28       38.   "FLAVAS," including, but not limited to (a) the origins or sources of

A-21

Exhibit 1   Page 23

1  inspiration of "FLAVAS" and the extent to which "BRATZ" was an inspiration or

2  factor in the development of "FLAVAS"; (b) marketing strategies and consumer

3  demographics for "FLAVAS"; and (c) the selection, approval process, design and

4  development of "FLAVAS" (including timing and release dates).

5       39.    To the extent not covered by any of the topics above, the identity of

6  any product, project or concept that YOU contend MGA copied or infringed or

7  about which YOU contend that MGA misappropriated MATTEL's trade secrets or

8  other confidential information, and, for each such product, project or concept, (a)

9  all facts concerning its origin, creation, design and development; and (b) any facts

10  underlying YOUR claim or contention that MGA copied or infringed such product,

11  project or concept; and (c) MGA's use of MATTEL'S intellectual property,

12  confidential information or trade secret information in connection therewith.

13       40.    MATTEL's advertising, promotion, and licensing of MY SCENE,

14  BARBIE and DIVA STARZ, including but not limited to any direction or

15  information provided by or from any MATTEL employee to any MATTEL

16  advertising firm, public relations or publicity firm, or licensee concerning any

17  MGA products or advertising.

18       41.    The names, locations, job descriptions and length of employment of

19  current and former MATTEL employees and independent contractors responsible

20  for, who contributed to or who were involved in any aspect of the creation,

21  marketing, sales, design, and development of "MY SCENE," "WEE 3 FRIENDS,"

22  "LITTLE MOMMY," "ACCELERACERS," "DIVA STARZ," and "FLAVAS."

23       42.    Legal actions and claims regarding "MY SCENE" and/or "DIVA

24  STARZ," including, without limitation, any lawsuits, claims, or cease and desist

25  letters that (a) YOU have asserted against any PERSON regarding such PERSON's

26  alleged infringement of "MY SCENE" or "DIVA STARZ" or (b) any PERSON has

27  asserted against YOU that "MY SCENE" or "DIVA STARZ" infringes such

28  PERSON's intellectual property rights.

A-22

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 24

43.   YOUR claimed intellectual property rights in "MY SCENE" and "DIVA STARZ," including, without limitation, (a) any applications for registration and registration for copyright, patent, trademark, or any other right sought or obtained by YOU, and any COMMUNICATIONS pertaining thereto; and (b) any trademark searches performed in connection with the selection of the "MY SCENE" or "DIVA STARZ" names.

44.   Any evidence of confusion among consumers, retailers, licensees, suppliers, wholesalers, members of the press, or any other PERSONS between any MATTEL product or packaging on the one hand, and any MGA product or packaging, including, but not limited, to "MY SCENE" and "BRATZ" on the other, and the origin, source, meaning and authenticity the document produced at M0079817-39.

45.   Any statements or comments by any PERSON that a MATTEL product, packaging or ADVERTISEMENT is a copy or "knock off" of an MGA product, packaging or ADVERTISEMENT, including, but not limited, to such comments reflected in YOUR Wal-Mart Fall 2004 Toy Fair Recap (M0080055-65).

46.   Efforts by MATTEL to copy and imitate MGA's ADVERTISEMENTS, including, without limitation, the extent to which ADVERTISEMENTS for "BRATZ" or "ALIEN RACERS" were an inspiration or factor in the development of ADVERTISEMENTS for "MY SCENE" or "ACCELERACERS."

47.   Other than those previously filed and served in this ACTION or in which MGA's counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER or RELATE TO DIVA STARZ, MY SCENE, FLAVAS, and BARBIE that REFER OR RELATE TO the RELEVANT TIME PERIOD (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

A-23                    MGA'S 30(b)(6) DEPOSITION NOTICE
                        CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 25

48.   All COMMUNICATIONS between MATTEL on the one hand and present or former employees or contractors of MGA on the other.

49.   The applications for registration and the registrations for copyright, patent, trademark or any other right that REFER OR RELATE TO DIVA STARZ, MY SCENE, FLAVAS, BARBIE, ACCELERACERS, LITTLE MOMMY, WEE 3 FRIENDS and POLLY POCKET, or their designs RELATING thereto, sought, made or obtained by, for or on behalf of YOU, including without limitation COMMUNICATIONS pertaining thereto.

50.   MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere with or inhibit MGA's business with distributors and retailers (including, but not limited to, Wal-Mart, Target, Toys 'R Us, Zellers, Bandai, Jumbo, and Woolworth U.K.), including, but not limited to (a) pressuring or influencing distributors or retailers not buy, sell or distribute "BRATZ" or other MGA products, to reduce shelf and display space for "BRATZ" or other MGA products, or to place "BRATZ" or other MGA products in unfavorable locations at retail outlets; and (b) COMMUNICATIONS with retailers or distributors RELATING TO whether MGA is providing below-market pricing or discontinuing a product line.

51.   MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere, modify, tamper with or alter MGA's retail product displays, including, but not limited to, COMMUNICATIONS between YOU (including, but not limited to, Erika Ashbrook and Connie Hibbert) and any current or former employee or representative of Wal-Mart (including, but not limited to, Heather Hocut and Barb Lubestine) regarding interfering, modifying, tampering with or altering MGA's retail product displays at Wal-Mart.

52.   MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere with or inhibit MGA's business with a licensee or licensing agent (including, but not limited to, Smith & Brooks, Zeon, Gemma International,

Exhibit 1   Page 26

1   MV Sports, Hart Concepts, Random House, Egmont, Euromic, Character Licensing
2   and Marketing, JNH Israel, SuperRTL, Candide, and Rose Art Industries) and/or to
3   decline to renew a licensing agreement based in whole or in part on that licensee's
4   or licensing agent's relationship (or proposed relationship) with MGA.
5       53.    MATTEL's efforts, or knowledge of any efforts by any PERSON,
6   worldwide to interfere with or inhibit MGA's business with suppliers, factories, or
7   manufacturing facilities, including, but not limited to, Asahi Kasei Life & Living
8   Corporation, L.A.M.P. S.p.A. (a.k.a. Filo), Jetta Company Ltd., Early Light
9   Industrial Co. Ltd., Kaneka Corp., and Universal Commerce Corporation Limited.
10      54.    MATTEL's efforts, or knowledge of any efforts by any PERSON,
11  worldwide to interfere with or inhibit MGA's business, including, without
12  limitation (a) any threats or attempts to reduce advertising spending if a publication
13  reported on MGA, "BRATZ" or other MGA products; (b) any threats, directions or
14  instructions to market research firms (including, but not limited to,
15  ConsumerQuest) not to work with MGA; (c) any efforts to prevent or influence
16  former MATTEL employees or independent contractors (including, but not limited
17  to, Charlotte Broussard, Margo Eldridge, and Andrew Gallerani) from or against
18  working for, with, or on behalf of MGA; (d) COMMUNICATIONS with
19  Nickelodeon regarding MGA's proposed sponsorship of the "Kids' Choice
20  Awards" and MGA's ability to advertise on Nickelodeon; (e) YOUR efforts to
21  pressure or influence 4Kids Entertainment to cancel or discontinue "Bratz"
22  programming; (f) YOUR efforts to interfere with MGA's investment in or
23  acquisition of Zapf Creation AG; and (g) YOUR plans, attempts, efforts or intent to
24  interfere with business dealings or contractual relations between MGA and Smoby
25  Group, including, but not limited to, YOUR plans to acquire the "Majorette" brand.
26      55.    YOUR COMMUNICATIONS with any PERSON, including, but not
27  limited to, any supplier, factory manufacturer, distributor, retailer, licensee,
28  licensing agent, market research firm, and independent contractor, REFERRING

A-25

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 27

1  OR RELATING TO such PERSON'S business with MGA, including, but not

2  limited to, any efforts by MATTEL to persuade that PERSON (a) to cease doing

3  business with MGA; (b) to limit or reduce its business with MGA; or (c) increase

4  such PERSON'S business with MATTEL at the expense of that PERSON'S

5  business with MGA.

6      56.    YOUR knowledge of MGA's non-public information (regardless of

7  the source) and YOUR efforts worldwide to monitor, "spy on" or gain knowledge

8  of MGA's activities, unreleased products, and product creation, design and

9  development, including, but not limited to (a) contacts with MGA's current or

10  former employees about MGA or its business; (b) use or attempt to use confidential

11  informants, spies, or moles within MGA; (c) knowledge of any MGA product

12  before its release to the public; (d) the origin, source, meaning and authenticity of

13  the document produced at M0065557-58; (e) instances of obtaining access to MGA

14  showrooms, including obtaining access on false pretenses; (f) access to MGA's

15  products or showroom at any Toy Fair; (g) access to retailer's Plan-o-Grams or

16  merchandising display plans or display areas; and (h) access to MGA's confidential

17  product and pricing information through "competitive management agreements" or

18  "category management agreements" with retailers.

19      57.    MATTEL's efforts, or knowledge of any efforts by any PERSON,

20  worldwide to unfairly compete with MGA by eroding or damaging its goodwill,

21  including, but not limited to (a) efforts to generate negative publicity or consumer

22  comments about MGA, LARIAN, "BRATZ" or other MGA products;

23  (b) COMMUNICATIONS with any PERSON concerning whether "BRATZ" are

24  too sexy or otherwise inappropriate for girls; (c) any publicly-released studies or

25  market research about "BRATZ" or MGA products commissioned by or funded by

26  MATTEL; and (d) efforts to provide negative information about MGA to financial

27  or investment analysts (including, but not limited, to J.P. Morgan) regarding MGA

28  or MGA products.

A-26

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1  Page 28

58.   YOUR COMMUNICATIONS with former MATTEL employees who now work (or subsequently worked) for MGA, including but not limited to letters sent to former MATTEL employees warning them not to disclose information about MATTEL.

59.   YOUR hiring of, or consideration of hiring, former MGA employees, including, without limitation, any procedures YOU have adopted to ensure that MGA's confidential proprietary information is protected.

60.   The magnitude and scope of layoffs of MATTEL employees during the RELEVANT PERIOD.

61.   NPD, including, but not limited to, (a) YOUR payments to NPD, (b) COMMUNICATIONS with NPD regarding MGA's alleged misuse of NPD data; (c) YOUR involvement with and knowledge of NPD's decision to terminate MGA's subscription; (d) YOUR use and misuse of NPD data since 2001; and (e) YOUR efforts to pressure, convince, or request that NPD change product classifications categories involving "BRATZ" or other MGA products and whether such efforts were successful.

62.   CARU, including, but not limited to (a) COMMUNICATIONS with CARU regarding MGA's ADVERTISEMENTS, amendments to MGA ADVERTISEMENTS, or MGA's website, including, but not limited to, restrictions placed or suggested to be placed on the foregoing; (b) any formal or informal complaints to CARU regarding MGA's ADVERTISEMENTS or MGA's website; and (c) subsidies given to CARU by MATTEL.

63.   TIA, including, but not limited to (a) MATTEL's role in planning, its participation in, or involvement with TIA's Toy-of-the-Year Awards since 2001; and (b) the change in the voting procedures of "Toy of the Year" award from a "people's choice" award to an award based on votes from retailers, the media, and based on NPD data.

A-27                    MGA'S 30(b)(6) DEPOSITION NOTICE
                        CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 29

1    64.    The facts supporting each of the Affirmative Defenses in YOUR

2    Second Amended Answer in Case No. 05-2727, dated July 12, 2007.

3    65.    The facts REFERRING OR RELATING to MGA's Third Affirmative

4    Defense of Unclean Hands in MGA's Answer and Affirmative Defenses dated

5    August 13, 2007, including, but not limited to (a) MATTEL'S efforts to undermine

6    MGA's business and to "kill" Bratz at any cost, including but not limited to

7    Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products,

8    packaging, themes, and advertising (including for Mattel products MY SCENE,

9    DIVA STARZ, WEE 3 FRIENDS, ACCELERACERS, and POLLY POCKET) and

10   engage in other acts of unfair competition against MGA as alleged in MGA's

11   complaint against MATTEL; (b) MATTEL'S efforts to create negative publicity or

12   press about MGA, MGA products, BRYANT, LARIAN, or MGA employees; (c)

13   MATTEL'S efforts to fund or commission market research or studies that portray

14   BRATZ or MGA products negatively; (d) MATTEL'S efforts to interfere with

15   MGA's acquisition of or investment in Zapf Creation AG; (e) MATTEL'S efforts

16   to include negative references to MGA or BRATZ on MATTEL's "We Believe in

17   Girls" website; (f) MATTEL'S efforts or intent to interfere with business dealings

18   or contractual relations between MGA and Smoby Group; (g) influencing

19   Nickelodeon to reject MGA advertisements or to limit time slots for

20   advertisements; (h) assisting parties in lawsuits against MGA; (i) monitoring,

21   "spying on" or gaining knowledge of MGA's trade secrets, non-public information,

22   non-public activities, unreleased products, and/or product development; (j) gaining

23   access, or attempts to gain access, to MGA showrooms, Plan-o-Grams,

24   merchandising displays, Toy Fair displays on false pretenses; (k) wrongfully

25   obtaining MGA's costs and sales information through Mattel-employed category

26   managers at retailers; (l) inducing non-party customers to breach confidentiality

27   agreements with MGA and divulge non-public information about MGA's

28   unreleased products; (m) covertly investigating MGA, its officers and employees,

A-28

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 30

1   and their family members; (n) contacting persons under false pretense in order to

2   interrogate them about BRATZ and this litigation; (o) coercing MATTEL

3   employees to accept restrictive covenants (right before massive layoffs) and non-

4   compete clauses and other efforts to prevent prospective MGA employees from

5   accepting offers of employment; (p) MATTEL'S delay in suing BRYANT because,

6   *inter alia*, MATTEL wanted BRYANT to testify in an unrelated MATTEL case;

7   (q) falsely inflating its BARBIE sales figures in an effort to mislead the public and

8   retailers; and (r) taking all measures to conceal its bad acts, including the willful

9   non-retention and destruction of documents.

10      66.   The name, address and telephone number of each PERSON or entity

11   with whom MATTEL has communicated regarding this ACTION or the facts and

12   circumstances giving rise to this ACTION; the facts and circumstances surrounding

13   each such COMMUNICATION, including, without limitation, the date, nature and

14   substance of each such COMMUNICATION; and the name, address and telephone

15   number of each PERSON or entity that may have discoverable knowledge,

16   information or DOCUMENTS.

17      67.   All efforts made by MATTEL, directly or indirectly, to contact or

18   communicate with BRYANT since the commencement of the ACTION regarding

19   any subject, whether or not related to or involving the ACTION, and MATTEL's

20   knowledge of any efforts by third-parties or its counsel to contact or communicate

21   with BRYANT since the commencement of the ACTION.

22      68.   The existence, nature and extent of any third-party funding or

23   reimbursement of fees and costs incurred by MATTEL in prosecuting or defending

24   this ACTION, the sharing with any third-party in the financial outcome of this

25   litigation, and the nature and extent of any insurance, indemnification, or similar

26   agreement or arrangement to fund, pay for or reimburse MATTEL for any potential

27   liability it may incur in connection with this ACTION, and the fee arrangement

28   between MATTEL and Quinn Emanuel Urquhart Oliver & Hedges LLP.

69.   The relationship between Farhad (Fred) Larian and MATTEL, including, but not limited to (a) COMMUNICATIONS between Farhad (Fred) Larian and MATTEL's counsel; (b) the identity of any DOCUMENTS that Farhad (Fred) Larian has provided to or made available for inspection by MATTEL (including MATTEL's counsel); (c) the identity of any DOCUMENTS that MATTEL (including its counsel) has provided to or made available for inspection by Farhad (Fred) Larian; and (d) MATTEL's efforts to hire Farhad (Fred) Larian as a consultant or expert.

70.   MATTEL's COMMUNICATIONS internally or to third-parties, or assistance to third parties, concerning claims or potential claims against MGA, or relating to MGA products, either directly or indirectly, including COMMUNICATIONS with Art Attacks Ink, LLC; Hasbro; Toys & Trends (Hong Kong) Limited; Cityworld Limited; Jurg Willi Kesselring; UbiSoft Entertainment, S.A. ; and Dyscom Corp. dba FilmBratz Productions and Hans Dys.

71.   YOUR policies, practices and procedures, written or otherwise, regarding management, preservation and/or destruction of ELECTRONIC RECORDS during the RELEVANT TIME PERIOD.

72.   The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS relevant to the design, development, sales and marketing of YOUR accused products, as identified in the COMPLAINT.

73.   The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS created or stored by BRYANT; TREANTAFELLES; BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Richard de Anda and any person working with him in Mattel's Global Security department involved in any way in investigating BRYANT, Cassidy Park, Ann Driskill, MGA, LARIAN or any current or former MGA employee; Tim Kilpin; Matthew Bousquette; Robert Eckert; Chuck Scothon; Kislip Ongchanko; Jill Nordquist; Rob Hudnut; Ivy Ross; Alan Kaye; Rene Pasko; Adrienne Fontanella; Tina Patel; Julia Jensen; Julia

A-30

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 32

1   Marine; Fred Kawashima; Evelyn Viohl; Anna Rhee; and any other person who

2   currently works or previously worked for MATTEL who MATTEL knows or has

3   reason to believe has knowledge or information concerning the claims or defenses

4   in this litigation or the facts underlying them.

5       74.   YOUR policies, practices and procedures, written or otherwise,

6   regarding employee use of company computers and ELECTRONIC RECORDS

7   during the RELEVANT TIME PERIOD, including but not limited to (a) Desktop

8   computers; (b) Laptop computers; (c) Home-based computers used for company

9   business or communication purposes; (d) Removable media (e.g., USB drives); and

10  (e) PDAs (Personal Digital Assistants).

11      75.   Computers currently in use and computers no longer in use by YOU

12  during the RELEVANT TIME PERIOD, including (a) Number, types and

13  locations; (b) Operating systems with versions and dates of use; and (c) Application

14  software with versions and dates of use.

15      76.   YOUR policies, practices and procedures, written or otherwise,

16  regarding the processing of YOUR computers after an employee leaves YOUR

17  employ.

18      77.   YOUR network architecture during the RELEVANT TIME PERIOD,

19  including (a) Network topology; (b) File-naming conventions; (c) Access

20  authorization; and (d) Remote access.

21      78.   Document management systems used by YOU during the

22  RELEVANT TIME PERIOD.

23      79.   Email systems used by YOU during the RELEVANT TIME PERIOD.

24      80.   Instant messaging systems used by YOU during the RELEVANT

25  TIME PERIOD.

26      81.   YOUR intranets deployed during the RELEVANT TIME PERIOD.

27      82.   YOUR archival systems and procedures, including to/from disk, tape,

28  or other media during the RELEVANT TIME PERIOD.

A-31                   MGA'S 30(b)(6) DEPOSITION NOTICE
                       CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 33

1    83.   YOUR backup procedures, inventories and schedules, including tape

2  reuse cycles for ELECTRONIC RECORDS during the RELEVANT TIME

3  PERIOD.

4    84.   YOUR efforts to identify and preserve potentially physical and

5  ELECTRONIC RECORDS potentially relevant to the claims and defenses in this

6  ACTION, the dates and circumstances of each and every such efforts, the

7  circumstances surrounding such efforts, and whether such efforts were in

8  anticipation of litigation involving YOU, BRYANT, and/or MGA.

9    85.   YOUR policies, practices and procedures, written or otherwise,

10  regarding monitoring or reviewing of employee-created ELECTRONIC RECORDS

11  by any technical means or by or at the direction of any department at MATTEL,

12  including but not limited to Information Technology, Human Resources and/or

13  "Global Security" or "Worldwide Security" during the RELEVANT TIME

14  PERIOD.

15    86.   YOUR COMMUNICATIONS with American Greetings regarding

16  BRATZ and competing with BRATZ, including by using research and dolls such as

17  Holly Hobby.

18  1697009

19

20

21

22

23

24

25

26

27

28

A-32                        MGA'S 30(b)(6) DEPOSITION NOTICE
                            CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 1   Page 34

## PROOF OF PERSONAL SERVICE

I am a citizen of the United States and employed in the County of Los Angeles, State of California, by Nationwide Legal, whose address is 316 W. 2nd Street, Suite 705, Los Angeles, CA 90071, and which has been employed by a member of the bar of this Court at whose direction the service was made. I am over the age of eighteen years and not a party to the within action. On September 5, 2007, I personally served the following:

**MGA Entertainment, Inc.'s Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6)**

**Notice of Deposition of Tina Patel**

by delivering a copy thereof to the office of the following, and either handing the copy to or leaving it with ___George Lee/ Clerk___ of the office thereof:

Michael T. Zeller
Timothy Alger
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on September 5, 2007, at Los Angeles, California.

_____
SIGNATURE

_Eduardo Castillo_
PRINT NAME

LA2:833516.2                          1                    PROOF OF PERSONAL SERVICE

Exhibit 1   Page 35

1   DALE M. CENDALI (admitted *pro hac vice*)
    dcendali@omm.com
2   DIANA M. TORRES (S.B. #162284)
    dtorres@omm.com
3   STEVEN J. OLSON (S.B. #182240)
    solson@omm.com
4   O'MELVENY & MYERS LLP
    400 South Hope Street
5   Los Angeles, California 90071-2899
    Telephone:  (213) 430-6000
6   Facsimile:  (213) 430-6407

7   PATRICIA GLASER (S.B. #55668)
    pglaser@chrisglase.com
8   CHRISTENSEN, GLASER, FINK,
    JACOBS, WEIL & SHAPIRO, LLP
9   10250 Constellation Boulevard, 19th Floor
    Los Angeles, California 90067
10  Telephone:  (310) 553-3000
    Facsimile:  (310) 557-9815

11  Attorneys for Counter-defendants MGA
12  Entertainment, Inc., Isaac Larian, MGA
    Entertainment (HK) Limited, and MGAE de
13  Mexico S.R.L. de C.V.

14

15                 UNITED STATES DISTRICT COURT

16               CENTRAL DISTRICT OF CALIFORNIA

17                       EASTERN DIVISION

18

19  CARTER BRYANT, an individual        Case No.  CV 04-09049 SGL (RNBx)
                                        (consolidated with CV 04-9059 &
20                   Plaintiff,         CV 05-2727)

21        v.                            PROOF OF SERVICE

22  MATTEL, INC., a Delaware
    Corporation,
23                                      Judge:        Hon. Stephen G. Larson
                     Defendant.         Courtroom:    1
24  CONSOLIDATED WITH

25  MATTEL, INC. v. BRYANT and
26  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.

27

28

LA2:833516.2                                      PROOF OF SERVICE

Exhibit 1   Page 36

## PROOF OF SERVICE

I, Cecelia A. Rolland, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On September 5, 2007, I served the within documents:

**MGA Entertainment, Inc.'s Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6)**

**Notice of Deposition of Tina Patel**

☒ by placing the document(s) on the attached list in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Michael T. Zeller
Timothy Alger
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
talger@quinnemanuel.com

Patricia Glaser
Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
pglaser@chrisglase.com

Michael H. Page
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111
mpage@kvn.com

James W. Spertus, Esq.
Law Offices of James W. Spertus
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025
jim@spertuslaw.com

LA2:833516.2

1

PROOF OF SERVICE

Exhibit 1   Page 37

1

2  ☒  by causing to be personally served the document(s) listed above on the person(s) listed below.

3

4      Michael T. Zeller
       Timothy Alger
5      Quinn Emanuel Urquhart Oliver & Hedges, LLP
       865 South Figueroa Street, 10th Floor
       Los Angeles, CA 90017
6      talger@quinnemanuel.com

7

8  ☐  by sending by electronic mail the documents(s) on the attached list to the person(s) listed below.

9

10

11      I declare under penalty of perjury under the laws of the United States that the above is true and correct.

12      Executed on September 5, 2007, at Los Angeles, California.

13

14                                      _Cecelia A. Rolland_
                                        Cecelia A. Rolland
15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:833516.2                        2                        PROOF OF SERVICE

Exhibit 1   Page 38