# EXHIBIT 2

```
 1  ROBERT F. MILLMAN, Bar No. CA 062152
    DOUGLAS A. WICKHAM, Bar No. CA 127268
 2  KEITH A. JACOBY, Bar No. 150233
    LITTLER MENDELSON
 3  A Professional Corporation
    2049 Century Park East, 5th Floor
 4  Los Angeles, CA 90067.3107
    Telephone:  310.553.0308
 5  Facsimile:  310.553.5583

 6  Attorneys for Defendant and Counter-Claimant
    CARTER BRYANT
 7
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware Corporation, | Case No. CV 04-9059 NM (RNBx) |
| Plaintiff, | HON. NORA M. MANELLA |
| v. | **NOTICE OF DEPOSITION OF PLAINTIFF AND COUNTER-DEFENDANT MATTEL, INC.** |
| CARTER BRYANT, an individual; and DOES 1 through 10, inclusive, | [F.R.C.P. 30(b)(6)] |
| Defendant. | Date: January 11, 2005<br>Time: 9:30 a.m.<br>Place: Littler Mendelson, PC<br>2049 Century Park East<br>Suite 500, Los Angeles<br>California 90067 |
| CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public, | |
| Counter-Claimant, | |
| v. | |
| MATTEL, INC., a Delaware Corporation, | |
| Counter-Defendant. | |

Exhibit 2   Page 39

TO PLAINTIFF MATTEL INC. AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant and Counter-Claimant Carter Bryant ("Bryant") in the above-captioned matter shall take the deposition of the Person(s) Most Knowledgeable from Plaintiff and Counter-Defendant Mattel, Inc. ("Plaintiff" or "Mattel") at the offices of Littler Mendelson, 2049 Century Park East, Fifth Floor, Los Angeles, California 90067, beginning at 9:30 a.m. on January 11, 2005. The deposition shall continue from day to day excluding Saturdays, Sundays and holidays, until completed. The deposition will be taken before an officer or other person duly authorized to administer oaths and shall be recorded by stenographic, sound and visual (videotape), and real-time transcription means.

Pursuant to Rule 30(b)(6), the deponent is directed to designate one or more officers, directors, managing agents or other individuals able to fully and completely testify on its behalf concerning the matters listed in Exhibit "A" attached hereto.

Dated: December 21, 2004

Respectfully submitted,

ROBERT F. MILLMAN
DOUGLAS A. WICKHAM
KEITH A. JACOBY

DOUGLAS A. WICKHAM
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
and Counter-Claimant
CARTER BRYANT

1.

Exhibit 2   Page 40

## EXHIBIT A

### Definitions

1. "You," "Your" and "Mattel" refer to Plaintiff Mattel, Inc. and its officers, directors, agents, employees and all individuals acting under its direction or control or on its behalf.

2. "Complaint" means the complaint filed by Mattel against Bryant in the Superior Court of the State of California for the County of Los Angeles dated April 27, 2004.

3. "Communication" means any oral or written transmittal or receipt of words or information, by whatever manner or means, and regardless of how or by whom the communication was initiated and shall include any contact between two or more persons, including but not limited to written contact by such means as letter, memorandum, telegram, telex, email, facsimile or any Document, and oral contact by such means as face-to-face meeting or telephone.

4. "Concerning" means relating to, referring to, describing, discussing, mentioning, evidencing, or constituting.

5. "Contract" and/or "Agreement" mean the contract or agreement itself, and any drafts thereof, together with all schedules, exhibits, attachments or addenda thereto and any amendments of the foregoing.

6. "Document(s)" means all "WRITINGS" and "RECORDINGS," including, but not limited to, writings and records of every type and description including, but not limited to, notes (including notes made contemporaneously with meetings or conversations or thereafter), books, records, letters, telegrams, memoranda, electronic mail messages (including electronic mail messages stored on network or individual servers, hard drives, back up tapes or other storage media, collectively referred to as "e-mail"), reports, studies, speeches, calendars or diary entries, tabulations, data compilations, drawings, designs, sketches, paintings, artwork, graphs, charts, photographs, computer disks, backup tapes and diskettes and

2.

Exhibit 2 Page 41

other data compilations from which information can be obtained or tabulated through detection devices into reasonably usable forms. "Document" also includes reproductions or film impressions of any of the aforementioned documents, tape recordings and copies of documents, which are not identical duplicates of the originals and copies of all documents of which the originals are not in the possession, custody or control of Mattel.

7. "Relate To" and "Relating To" mean in any way directly or indirectly, concerning, referring to, pertaining to, mentioning, discussing, describing, disclosing, confirming, supporting, evidencing, representing, or being connected with a stated subject matter or any aspect thereof.

8. "And" and "Or" mean either the conjunctive or the disjunctive as context may require so that the meaning of the term is inclusive rather than exclusive.

9. "Person" or "Persons" means any or all entities including, without limitation, any or all individuals, single proprietorships, associations, companies, firms, partnerships, joint ventures, corporations, employees or former employees, or any other business, governmental or labor entity, and any division, departments or other units thereof.

10. "MGA" means and refers to MGA Entertainment, Inc., formerly known as ABC International Traders, Inc. dba MGA Entertainment and Micro Games of America, Inc., and each of its officers, directors, agents, and employees or any other person acting on its behalf.

11. "Bryant" means and refers to Defendant Carter Bryant and each of his agents, employees or any other person acting on his behalf.

## DESIGNATED SUBJECTS OF TESTIMONY AT PERSONS MOST KNOWLEDGEABLE DEPOSITION

1. All Contracts, and the terms thereof, that You contend You had with Bryant.

2. All contractual and non-contractual duties and obligations Bryant owed or performed for Mattel during his employment with Mattel, and thereafter.

3. All of Bryant's acts or omissions which breached any contractual or non-contractual duty or obligation Bryant owed to Mattel.

4. All of Bryant's acts or omissions which breached any duties or obligations imposed by the Conflict of Interest Questionnaire and/or the Employee Confidential Information and Inventions Agreement.

5. All Mattel proprietary or confidential information Bryant had access to during his employment with Mattel.

6. All of Bryant's acts or omissions pursuant to which he aided, assisted and worked for a competitor of Mattel while employed by Mattel from 1995 to the present.

7. The services and property belonging to Mattel that Bryant provided to any third party, including MGA, from 1995 to the present.

8. All acts, omissions, circumstances and/or evidence showing, or tending to show, that any and all products of MGA, including but not limited to, any and all products sold under the trade name "Bratz," originated from, were derived from, are based upon, are copied or incorporated from, or are substantially or confusingly similar to, any design, research and developmental work, work in progress, or product owned at any time by Mattel or created by any Mattel employee, including but not limited to Bryant, or by any independent contractor during the time that such Person was working for Mattel.

9. All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "Toon Teens."

10. All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "My Scene Barbie" and each of the other "My Scene" characters or dolls.

11. All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "Diva Starz."

12. All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "Mini Diva Starz."

13. All acts, omissions, circumstances and/or evidence showing, or tending to show, that any product sold at any time by MGA under the trade name "Bratz" originated from, is derived from, is based on, copies, incorporates, or is substantially or confusingly similar to any design or work product owned at any time by Mattel or created by Bryant during the time Bryant was working for Mattel.

14. All acts, omissions, circumstances and/or evidence showing, or tending to show, that Mattel has been damaged or suffered any financial or other loss by any act or omission of Bryant.

15. All acts, omissions, circumstances and/or evidence showing, or tending to show, when Mattel first became aware of any alleged wrongful conduct of Bryant.

16. All acts, omissions, circumstances and/or evidence showing, or tending to show, the manner and mode by which Mattel first became aware of any alleged wrongful conduct of Bryant.

17. All acts, omissions, circumstances and/or evidence showing, or tending to show, when You first became aware that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.

18. All acts, omissions, circumstances and/or evidence showing, or tending to show, how You first became aware that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.

19. All acts, omissions, circumstances and/or evidence showing, or tending to show, all actions taken by You, including but not limited to all circumstances

· 5.

Exhibit 2   Page 44

surrounding any investigations you have undertaken, relating to Bratz after You learned that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.

20. All acts, omissions, circumstances and/or evidence showing, or tending to show, all actions taken by You, including but not limited to all circumstances surrounding any investigations You have undertaken, relating to Bryant and any act or omission of Bryant that breached any contractual or non-contractual duty or obligation Bryant owed to Mattel.

21. All Communications regarding Bryant's involvement in the conception, creation, design and/or reduction to practice of Bratz from 1998 until the date of the filing of the Complaint.

22. All acts, omissions, circumstances and/or evidence showing, or tending to show, that Bryant misappropriated Mattel property, including without limitation intellectual property, at any time.

23. All acts, omissions, circumstances and/or evidence showing, or tending to show, that Bryant owed fiduciary duties to, or occupied a fiduciary relationship with, Mattel.

24. All acts, omissions, circumstances and/or evidence showing, or tending to show, that prior to October 21, 2000, Mattel had any toy concept or project which had not yet been offered for sale to the public, including without limitation, any toy concept or project in the pre-production or development phase, that Bryant improperly copied, replicated, borrowed or otherwise used in whole, or in any part, during or after Bryant's employment with Mattel.

25. All measures taken by Mattel including, without limitation, any legal action brought or threatened to be brought (including in demand letters or other notices), from 1998 to the present to achieve, or attempt to achieve, compliance with or adherence to any or all of the terms and conditions of Mattel's "Employee Confidential Information and Inventions Agreement" (including all forms or versions

6.

Exhibit 2 Page 45

of that agreement) from 1998 to the present, and/or Mattel's "Conflict of Interest Questionnaire" (including all forms or versions of that agreement) from 1998 to the present.

26. Communications, discussion, meetings, analyses and the decision-making process regarding measures taken or contemplated by Mattel including, without limitation, any legal action brought or threatened to be brought (including demand letters or other notices) against Bryant including, without limitation, the filing of the Complaint.

27. Mattel's electronic mail system's ability to retrieve electronic mail messages from any Mattel server, Mattel electronic mail archive tape, or hard drive networked to the Mattel computer network, as that network existed from January 1998 to the present.

28. Mattel's policies or procedures or practice in effect or use, from January 1998 to the present, regarding Document retention or destruction (including with respect to e-mails), including without limitation, e-mail backup procedures and policies; location of saved or backed-up e-mails, procedures for accessing saved or backed-up e-mails; policies regarding deletion of e-mails; and Mattel's document retention or destruction policies (including with respect to emails) when Mattel had notice of a potential claim or lawsuit in each of the years 1998, 1999, 2000, 2001, 2002, 2003 and 2004.

29. Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion and destruction (including with respect to electronic documents and e-mail), including without limitation, e-mail backup policies, procedures and practices in effect or use; location of saved or backed-up e-mails, procedures for accessing saved or backed-up e-mails; policies, procedures and practices in effect or use regarding deletion of e-mails; and policies, procedures and practices in effect or use regarding retention of e-mails.

7.

Exhibit 2   Page 46

30. All hardware and software used by Mattel at any time from January 1, 1998 to the present for Mattel's e-mail systems including, without limitation, all on-site and off-site back-up computer systems and files, exchange servers and computer storage space.

31. The ability of Mattel to retrieve e-mail messages from any server, disk, drive, archive disk, tape, server or drive, storage disk, tape server or drive, individual computer hard drive, or any hard drive or server networked to any Mattel computer network, at any time from January 1, 1998 to the present.

32. Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) when Mattel is aware of a potential claim or lawsuit in which it may be involved.

33. Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) after Mattel began considering or analyzing any potential claim or lawsuit against MGA or Bryant regarding "Bratz" or other claim of any nature.

34. Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) after Mattel began investigating facts pertaining to Bryant's involvement with MGA or "Bratz" or any claim of any nature, actual or potential, against Bryant.

35. Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction including with respect to e-mails and other electronic documents) after Mattel began investigating facts pertaining to the relationship, if any, between Bryant's involvement with MGA or "Bratz" and work or projects that Bryant may have seen during his employment with Mattel.

8.

Exhibit 2 Page 47

36. Files (including human resources and legal files and files kept or maintained at business locations and personal residences), locations, offices, computers (including business, lap top and residence computers), warehouses, records centers, file rooms, archives, servers, storage facilities, back up or storage tapes, and any and other method and/or location for maintaining or storing Documents that were searched or reviewed by Mattel when searching for Documents responsive to Bryant's Request for Identification and Production of Documents and Tangible Things (Set One) including, without limitation, all efforts made and steps undertaken when searching for and producing Documents in a tangible, electronic, magnetic or any other form.

37. The facts and circumstances surrounding the filing of the copyright registration for "Toon Teens, produced by Mattel as Document Control Nos. M0012564-65.

38. The development of "Toon Teens," including Your decision to not offer "Toon Teens" for sale to the public.

39. What actions, if any, You took with respect to the "Toon Teens" project after You decided not to offer this project for sale to the public.

40. The current status of the "Toon Teens" project.

41. All statements of Mattel or ex-Mattel employees in the July 2003 Wall Street Journal article (produced by Mattel to Bryant in the present case), including, without limitation, "Inside Mattel, some are convinced the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998"; "But the Bratz' oversized heads -- with their pursed lips and cartoonist eyes -- are 'virtually identical' to the heads of the dolls her team created"; "Anyone who passed by [Lily Martinez's] cubicle would see the picture up on the wall"; and "The big heads, the big eyes, the big feet -- they were all the same [as the Bratz]."

42. Documents produced by Mattel as Document Control Nos. M0012567-71.

9.

Exhibit 2   Page 48

43. Documents produced by Mattel as Document Control Nos. M0012572-78.

44. Documents produced by Mattel as Document Control Nos. M0012579-86.

45. Documents produced by Mattel as Document Control Nos. M0012587.

46. Documents produced by Mattel as Document Control Nos. M0012594-617 and Nos. M0001558-81.

47. Mattel's phone log system, and the maintenance, storage and ability to retrieve phone logs from an individual extension, such as the log produced by Mattel as Document Control Nos. M0001808-24, including Bryant's phone logs for extension 6099 for October 2000.

48. All board of director's meeting minutes that evidence, relate or refer to Bryant from January 1998 to the present.

49. All versions of the "Employee Confidential Information and Inventions Agreement" used by Mattel since January 1, 1995 including, without limitation, the "Employee Confidential Information and Inventions Agreement" produced by Mattel as Document Control Nos. M0001638-39 and the "Employee Confidential Information and Inventions Agreement" attached to the Complaint as Exhibit "A."

50. All versions of the "Conflict of Interest Agreement" used by Mattel since January 1, 1995 including, without limitation, the "Conflict of Interest Agreement" produced by Mattel as Document Control Nos. M0001636-37 and the "Conflict of Interest Agreement" attached to the Complaint as Exhibit "B."

51. The "Proprietary Information Checkout" form produced by Mattel as Document Control No. M0001597.

52. All forms or other documents which Mattel has requested prospective and actual employees to sign since January 1, 1995.

53. All recording and tracking of the time spent by Bryant while working on various Mattel projects.

10.

Exhibit 2 Page 49

54. Bryant's "Job Summary" report, produced by Mattel as Document Control Nos. M001667-68.

55. All acts, omissions, circumstances and/or evidence showing, or tending to show, that Bryant made affirmative misrepresentations to any and all Mattel employees upon his departure from Mattel.

56. Bryant's "Exit Interview Report" dated October 19, 2000, produced by Mattel as Document Control No. M0001654.

Los_Angeles:388196.2 028307.1010

11.

Exhibit 2   Page 50

## PROOF OF SERVICE BY MESSENGER

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Allstar Messenger Service, 345 South Figueroa Street, Suite 305, Los Angeles, California 90071. On December 21, 2004, I personally served:

**NOTICE OF DEPOSITION OF PLAINTIFF AND COUNTER DEFENDANT MATTEL, INC.**

by delivering copies thereof to:

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Diana M. Torres, Esq.
O'Melveny & Myers LLP
400 S. Hope Street, 10th Floor
Los Angeles, CA 90071

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 21, 2004, at Los Angeles, California.

*/s/ Marcus Robinson*

Los_Angeles:388357.1 028307.1010

PROOF OF SERVICE

Exhibit 2 Page 51