# EXHIBIT 8

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100
7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx)

12 |        Plaintiff,            | Consolidated with
13 |                             | Case No. CV 04-09059
   |      vs.                    | Case No. CV 05-02727
14 |
15 | MATTEL, INC., a Delaware    | **DISCOVERY MATTER**
   | corporation,                |
16 |        Defendant.           | **[To Be Heard By Discovery Master
   |                             | Hon. Edward Infante (Ret.) Pursuant
17 |                             | To The Court's Order of December 6,
   |                             | 2006]**
18 | AND CONSOLIDATED ACTIONS    |
   |                             | MATTEL, INC.'S NOTICE OF
19 |                             | MOTION AND MOTION TO
   |                             | COMPEL MGA TO PRODUCE
20 |                             | WITNESSES PURSUANT TO
   |                             | MATTEL'S THIRD NOTICE OF
21 |                             | DEPOSITION UNDER RULE 30(B)(6)
   |                             | AND FOR SANCTIONS
22 |                             |
   |                             | [Declarations of Michael T. Zeller and
23 |                             | Tamar Buchakjian filed concurrently
   |                             | herewith]
24 |                             |
   |                             | Hearing Date:    TBA
25 |                             | Time:            TBA
   |                             | Place:           Telephonic
26 |                             |
   |                             | Discovery Cut-off: January 14, 2008
27 |                             | Pre-trial Conference: April 7, 2008
   |                             | Trial Date: April 29, 2008
28 |

   07209/2164784.7

   MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 208

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that, at a telephonic conference before

3  Discovery Master Hon. Edward Infante (Ret.), that will occur at a time to be set by

4  Judge Infante, Mattel, Inc. will, and hereby does, move the Court, pursuant to

5  Federal Rules of Civil Procedure 30(b)(6) and 37, for an order compelling MGA

6  Entertainment Inc. ("MGA") to designate and produce witnesses to testify on Topics

7  1-3, 6-8, 9, and 11-13 in Mattel's Third Notice of Deposition of MGA Entertainment

8  Inc. (the "Third Notice").

9      This Motion is made on the grounds that MGA refuses to identify or

10  produce any witness to testify on Topics 1-3, 6-8, 9, and 11-13 of the Third Notice.

11      This Motion is based on this Notice of Motion and Motion, the

12  accompanying Memorandum of Points and Authorities and Declarations of Michael

13  T. Zeller and Tamar Buchakjian filed concurrently herewith, the records and files of

14  this Court, and all other matters of which the Court may take judicial notice.

15

16                     **Statement of Rule 37-1 Compliance**

17      The parties met and conferred regarding the Third Notice on July 5,

18  2007.

19

20  DATED: July 19, 2007            QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
21

22                          By _Mima T. Z—_

23                              Michael T. Zeller
                                Attorneys for Plaintiff and Cross-Defendant
24                              Mattel, Inc.

25

26

27

28

07209/2164784.7

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 209

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

Preliminary Statement ...................................................................................... 1

Statement of Facts............................................................................................ 3

    A.    The Discovery Master Rejects MGA's Stonewalling On Mattel's First Rule 30(b)(6) Notice....................................................................... 3

    B.    The Discovery Master And Then Judge Larson Reject MGA's Stonewalling On Mattel's Second Rule 30(b)(6) Notice. ...................... 5

    C.    MGA Stonewalls On Mattel's Third 30(b)(6) Notice With Objections That Have Already Been Rejected. ...................................... 8

Argument    12

I.    the court should compel MGA To Produce witnesses for each of the topics at issue............................................................................................. 12

    A.    The Storage Devices MGA Employees Used For Digital Information Related to Bratz or Angel (Topic Nos. 1-3). ................... 12

    B.    MGA's Prior Statements To The Press Related To Bratz................... 18

    C.    Persons Who Performed "Test Projects" For MGA. ........................... 19

    D.    MGA's Payments To Isaac Larian, Farhad Larian and Zarabi. ...........23

II.    the court should SANCTION MGA FOR ITS unsupported refusal to PRODUCe witnesses......................................................................................... 26

Conclusion    28

7209/2164784.7

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 210

## TABLE OF AUTHORITIES

**Page**

### Cases

Beach v. City of Olathe, Kans.,
  203 F.R.D. 489 (D. Kan. 2001) ........................................................ 21

*Bills v. Kennecott Corp.,*
  108 F.R.D. 459 (D.C. Utah 1985) .................................................. 17

Braley v. Campbell,
  832 F.2d 1504 (10th Cir. 1987) .................................................... 26

Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.,
  175 F.R.D. 646 (C.D. Cal. 1997) .................................................. 24

Dunn v. Midwestern Indem.,
  88 F.R.D. 191 (D.C. Ohio 1980) .................................................. 17

G.D. v. Monarch Plastic Surgery, P.A.,
  239 F.R.D. 641 (D. Kan. 2007) ..................................................... 17

Hyde & Drath v. Baker,
  24 F.3d 1162 (9th Cir. 1994) ....................................................... 25

Oakes v. Halvorsen Marine Ltd.,
  179 F.R.D. 281 (C.D.Cal. 1998) ............................................... 24, 25

Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,
  267 F.3d 340 (3d Cir. 2001) ........................................................ 18

RTC v. Dabney,
  73 F.3d 262 (10th Cir. 1995) ....................................................... 26

Tracinda Corp. v. DaimlerChrysler AG,
  362 F. Supp. 2d 487 (D. Del. 2005) ............................................. 18

U.S. Equal Employment Opportunity Comm'n v. Ian Schrager Hotels, Inc.,
  2000 WL 307470 (C.D. Cal. 2000) .............................................. 25

United States v. Abel,
  469 U.S. 45 (1984) ..................................................................... 24

### Statutes

F.R.C.P. 26(b)(1) ........................................................................... 17

Fed. R. Civ. P. 30(B)(6) ................................................................... 3

Rule 30(B)(6) ..................................................... 1, 2, 3, 5, 7, 10, 18, 22

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 211

09460/2172397.1

Fed. R. Civ. P. 37(a)(4) ...................................................................... 25

Rule 37(a)(4) ...................................................................... 25

Second, 28 U.S.C. section 1927 ...................................................................... 25

-iii-

09460/2172397.1

Exhibit 8   Page 212

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

1
2
3
4        MGA continues with its failures and refusals to produce plainly
5  relevant -- even critical -- witnesses for deposition unless ordered by the Court to do
6  so. Regrettably, the Court is already familiar with MGA's obstructionist tactics with
7  respect to Mattel's First and Second <u>Rule</u> 30(b)(6) Notices on MGA.   After months
8  of MGA's gamesmanship, including last-minute cancellations of promised
9  depositions followed by outright refusals to produce witnesses, the Discovery
10  Master rejected every one of MGA's objections with respect to those Notices and
11  ordered MGA to designate and produce witnesses by the end of June.  It then filed a
12  meritless appeal with Judge Larson, who rejected MGA's appeal in its entirety on
13  July 2, 2007.  That was not sufficient for MGA to comply with the Discovery
14  Master's Order, so Mattel has been forced to seek enforcement of that Order, which
15  motion is currently pending before the Discovery Master.
16        Unfortunately, MGA is at it again with respect to Mattel's Third <u>Rule</u>
17  30(b)(6) Notice.  MGA refuses to produce witnesses for six out of ten Topics based
18  on the same groundless objections that the Discovery Master and/or Judge Larson
19  have already rejected.  First, MGA objects to three Topics regarding prior
20  inconsistent statements that MGA made to the press regarding the origins of Bratz.
21  MGA contends the only proper forum for those Topics is an individual deposition of
22  MGA's CEO.  But the Discovery Master rejected an identical argument with respect
23  to prior inconsistent sworn statements by MGA representatives.  So did Judge
24  Larson.  Indeed, under MGA's logic, no statement of any high corporate officer, no
25  matter the context in which the officer said it, could ever be attributed to a
26  corporation or subject to deposition testimony on behalf of the corporation.  And,
27  MGA's current position is not even consistent with the <u>Rule</u> 30(b)(6) testimony that
28

07209/2164784.7

-1-

1   it sought -- and obtained -- from Mattel regarding alleged statements made to the

2   *Wall Street Journal.*

3           Second, MGA claims that three other Topics regarding MGA's

4   payments to a party-witness -- Isaac Larian -- and two witnesses -- Farhad Larian

5   and Morad Zarabi -- are irrelevant. Once again, the Discovery Master already

6   rejected the same objections MGA raised with respect to discovery about (a) MGA's

7   payments to Carter Bryant and (b) the arbitration between Isaac Larian and Farhad

8   Larian, which Morad Zarabi arbitrated. Two different Orders overruling MGA's

9   similar objections apparently are insufficient to deter MGA's stonewalling on these

10  plainly relevant Topics.

11          MGA's objections on the remaining Topics are equally without merit.

12  Three Topics ask for a testimony about electronic storage devices, including most

13  importantly MGA computer hard-drives, that specified MGA employees or vendors

14  have used with respect to data related to the "Bratz" or "Angel" projects that are

15  squarely at issue. MGA incorrectly claims these Topics were already covered in

16  prior Rule 30(b)(6) Topics for which MGA designated Kenneth Lockhart to testify

17  and that Mattel there is entitled to no further discovery. In fact, the Topics from the

18  prior Notice were different, since they related to MGA's storage and document

19  retention policies and did not ask at all about storage devices that particular MGA

20  employees used for these critical projects. Furthermore, when Lockhart was asked

21  questions about particular hard drives used by particular MGA employees, he had

22  no or virtually no information and certainly did not provide the testimony sought by

23  the current three Topics.

24          Finally, one Topic asks for a designation regarding "test projects"

25  which MGA asked persons to perform from 1995 to the present. MGA claims it

26  does not understand the phrase "test projects," even though Defendants use that term

27  to describe one of their own supposed defenses in the case and indeed MGA itself

28  used the phrase during a recent deposition of a Mattel Rule 30(b)(6) witness. MGA

07209/2164784.7

-2-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 214

1  also objects to the 1995 time frame as over-broad even though MGA itself sought

2  witnesses for <u>Rule</u> 30(b)(6) topics regarding Mattel's practices dating back to 1995.

3  The Discovery Master expressly ruled the topics were proper without restricting the

4  time frame.

5          Mattel respectfully requests that the Discovery Master compel MGA to

6  produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third <u>Rule</u> 30(b)(6)

7  Notice to MGA and to sanction MGA to deter MGA from forcing the parties and the

8  Court to address issues already litigated at length and ruled upon.

9

10                          <u>**Statement of Facts**</u>

11

12  A.    <u>**The Discovery Master Rejects MGA's Stonewalling On Mattel's**</u>

13        <u>**First Rule 30(b)(6) Notice.**</u>

14          Mattel first served a <u>Rule</u> 30(b)(6) Notice of MGA (the "First Notice")

15  on February 16, 2005.[1]  It took MGA until May 16, 2005 to designate two

16  witnesses.[2]  The Court stayed discovery four days later[3] and lifted the stay almost

17  one year after that, on May 17, 2006.[4]  Afterwards, Mattel repeatedly requested that

18  MGA provide dates for its designees' depositions.[5]  MGA at first ignored the

19  requests and then refused to provide dates unless Mattel produced additional

20  witnesses to testify on topics in a separate <u>Rule</u> 30(b)(6) notice that Bryant (not

21      [1]   First Notice of Deposition of MGA Entertainment, Inc. Pursuant to <u>Fed. R.</u>

22  <u>Civ. P.</u> 30(b)(6), attached as Exh. 1 to the Declaration of Michael T. Zeller, filed
    concurrently ("Zeller Dec.").

23      [2]   Ambrosini letter to Zeller dated May 16, 2005, Zeller Dec. Exh. 2.

24      [3]   Court's Order Staying Discovery dated May 20, 2005, Zeller Dec., Exh. 3.
        [4]   Court's Order Lifting Discovery Stay dated May 17, 2006, Zeller Dec., Exh. 4.

25      [5]   Letters from Jon Corey to MGA counsel dated December 11, 13, & 26, 2007,

26  Zeller Dec., Exh. 5.

27

28

-3-

1  MGA) propounded.[6]  During a conference on December 19, 2006 with the

2  Discovery Master, MGA at last represented to Mattel and to the Discovery Master

3  that MGA would provide Mattel with deposition dates for its designees.[7]

4          That promise went unfulfilled.  First, during the deposition of its

5  designee for two of eight Topics in the First Notice, MGA instructed the designee

6  (Kerri Brode) not to answer questions about relevant documents, no matter if Brode

7  herself was a recipient of the documents.[8]  Mattel had to adjourn the deposition to

8  obtain a ruling from the Discovery Master after MGA's counsel refused to withdraw

9  the instructions.[9]  MGA never supported its instructions with any legal authority,[10]

10  but still refused to remove them "without an order of the Court."[11]  Only after Mattel

11  filed a motion to compel did MGA agree to withdraw its improper instructions.[12]  It

12  then produced a different designee (Charnayne Brooks) to continue the deposition

13  on March 2, 2007, more than two years after Mattel served the First Notice.

14          Second, for more than *five* months after its promise to the Discovery

15  Master, MGA stalled in producing its designee for six out of eight Topics in the

16  First Notice, Paula Garcia.  MGA at first claimed that she was unavailable until

17  March 19 and 20.[13]  MGA then unilaterally cancelled the March dates without

18  explanation.[14]  Mattel accepted April 12, 2007 as a substitute date for her deposition

19

20   [6]  E-mail message from Jenal to Corey dated December 5, 2006, Zeller Dec., Exh. 6.

21   [7]  Zeller Dec., ¶ 8.

      [8]  Depo. Tr. of Kerri Brode, Zeller Dec., Exh. 7 at 55:4-57:9, 58:2-12.

22   [9]  Id. at 61:14-62:8.

23   [10]  Meyer letter to Zeller dated January 23, 2007, Zeller Dec., Exh. 8.

      [11]  Zeller Dec., ¶ 11, Exh. 9.

24   [12]  Stipulated Order Regarding MGA's 30(b)(6) Witness (the "Stipulation")

25  dated February 21, 2007, Zeller Dec. ¶ 12, Exh. 10.

      [13]  Jenal letter to Corey dated January 5, 2007, Zeller Dec., Exh. 11.

26   [14]  Zeller letter to Y. Garcia dated April 3, 2007, Zeller Dec., Exh. 13.

27

28

-4-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 216

1  in the hopes of avoiding motion practice,[15] but MGA then turned around and began

2  suggesting that it would no longer designate Ms. Garcia on the First Notice and that

3  she would be produced in her individual capacity.[16] Then, as the substitute date

4  approached, MGA again unilaterally cancelled the deposition.[17] Mattel thus was

5  forced to file a motion to compel, which the Discovery Master granted on May 16,

6  2007.[18]

7        But this still did not end MGA's game playing.  It waited until two days

8  before Ms. Garcia's deposition to produce some 7,500 pages documents that, in the

9  main, related to her work on the Bratz or Angel projects, including indisputably

10  relevant documents that MGA should have produced months (if not years) earlier

11  but had withheld without any justification.[19] And, when MGA did finally produce

12  Ms. Garcia for deposition on May 24 and 25, 2007, MGA refused to allow it to be

13  completed and instructed her not to answer clearly relevant questions, which is the

14  subject of a pending motion before the Discovery Master.[20]

15

16  **B.**    **The Discovery Master And Then Judge Larson Reject MGA's**

17        **Stonewalling On Mattel's Second Rule 30(b)(6) Notice.**

18        Mattel served a Second Notice of Deposition of MGA on February 1,

19  2007 (the "Second Notice").[21] In response, MGA served objections on February 14,

20  2007, in which it refused to designate witnesses for twenty Topics and unjustifiably

21  [15]  Zeller letter to Torres dated March 9, 2007, Zeller Dec., Exh. 14.

22  [16]  Zeller letter to Garcia dated April 3, 2007, Zeller Dec., Exh. 13.

23  [17]  Torres letter to Zeller dated April 5, 2007, Zeller Dec., Exh. 15.

24  [18]  Order Granting Mattel Inc.'s Motion to Compel MGA To Produce Witnesses For Deposition Pursuant To <u>Rule</u> 30(b)(6), dated May 16, 2007, Zeller Dec., Exh. 20.

25  [19]  Zeller Dec., ¶ 37.

26  [20]  <u>Id.</u>, ¶ 36.

27  [21]  Mattel's Second Notice of Deposition of MGA dated February 1, 2007, Zeller Dec. Exh. 16.

28

1   narrowed others.[22]  Through meet and confer, the parties reached apparent

2   agreement regarding the scope of many of the topics in the Second Notice, and

3   MGA represented that it would provide designee dates and names by March 23,

4   2007.[23]  The parties were unable to reach agreement on thirteen Topics.[24]

5          Even as to the Topics on which there was evident agreement, however,

6   and even as to those Topics MGA had stated in its response that it would produce

7   witnesses to testify on, the March 23, 2007 date came and went without any

8   designation by MGA.[25]  After more follow-up by Mattel,[26] MGA sent a letter on

9   April 13, 2007 that for the first time identified MGA designees for any of the Topics

10  in the Second Notice.[27]  Even then, MGA offered no proposed dates for the

11  depositions of three of the four designees.[28]  Nor did MGA provide any designees

12  for twelve Topics, including some on which the parties had supposedly agreed, and

13  gave only more promises that they would be forthcoming.[29]  Indeed, as to these

14  additional Topics, MGA did not commit to actually designate anyone, but instead

15  said that they would let Mattel know "*whether* we will be designating anyone on

16  [the] topics ...".[30]

17          After MGA had unilaterally and repeatedly cancelled Paula Garcia's

18  deposition in her individual capacity and her capacity as designee on the First

19  _____

20  [22]   MGA 's Objections to Mattel's Second Notice of Deposition of MGA
    Entertainment, Inc. dated February 14, 2007, Zeller Dec., Exh. 17.

21  [23]   Zeller Dec., ¶ 20.

22  [24]   Id.
    [25]   Zeller letter to Garcia dated April 3, 2007, Zeller Dec., Exh. 13.

23  [26]   Id.

24  [27]   Torres letter to Zeller dated April 13, 2007, Zeller Dec., Exh. 18.  Although
    MGA's letter is oddly phrased to suggest that the identification of designees for

25  Topics in the Second Notice had occurred earlier, it had not.

26  [28]   Zeller letter to Torres dated April 13, 2007, Zeller Dec., Exh. 19.
    [29]   Torres letter to Zeller dated April 13, 2007, Zeller Dec., Exh. 18.

27  [30]   Id.

28

1  Notice as described above, and after MGA refused to designate witnesses pursuant

2  to the Second Notice, Mattel moved to compel.  After briefing and argument, the

3  Discovery Master (1) ordered MGA to produce Garcia for deposition on or before

4  June 15, 2007, (2) ordered MGA to produce designees and dates for each of the

5  Topics at issue in the Second Notice, and (3) overruled all of MGA's objections and

6  limitations to the First and Second Notices.[31]

7         The Discovery Master's order did not convince MGA that it needed to

8  comply with the First and Second Notices.  Instead, MGA filed an appeal to the

9  District Judge arguing that the order was "clearly erroneous."[32]  MGA argued,

10  among other things, that Mattel could not ask MGA to produce a corporate witness

11  to testify about prior sworn statements of other company employees, and that Mattel

12  instead must depose the relevant witnesses as individuals.[33]  On July 2, 2006, Judge

13  Larson denied MGA's appeal in its entirety.[34]  The Court specifically ruled that

14  MGA's argument that prior sworn statements of MGA employees were not proper

15  subjects of a Rule 30(b)(6) notice was without merit.[35]

16         Yet, even after these rulings against it by Judge Larson and the

17  Discovery Master, MGA still fails and refuses to comply with its Rule 30(b)(6)

18  obligations.  Mattel had to file yet another motion to enforce the Discovery Master's

19  order, which also is currently pending before the Discovery Master.[36]

20  _____

21  [31]  May 16, 2007 Order Granting Mattel Inc.'s Motion to Compel MGA To
    Produce Witnesses For Deposition Pursuant To Rule 30(b)(6), Zeller Dec., Exh. 20.

22  [32]  MGA's Memorandum of Points and Authorities In Support Of Motion
    Objecting To Portions Of The Discovery Master's May 16, 2007 Order, Zeller Dec.,
23  Exh. 21.

24  [33]  Id. at 2:13-19.
    [34]  July 2, 2007 Minute Order, Zeller Dec., Exh. 22, at 4-5.
25  [35]  Id. at 5.

26  [36]  Zeller Dec., ¶ 36.

27

28

**C.   MGA Stonewalls On Mattel's Third 30(b)(6) Notice With Objections That Have Already Been Rejected.**

On June 5, 2007, Mattel served a Third Notice of Deposition of MGA (the "Third Notice") asking to designate witnesses for sixteen topics.[37]  MGA served objections to the Third Notice on June 29, 2007.[38]  The parties met and conferred on MGA's objections on July 5, 2007.[39]  MGA refused to provide any designees to testify about (i) the three Topics about hard drives and electronic storage devices that certain MGA employees or contractors used for digital information related to Bratz or Angel (Topics 1-3), (ii) three Topics about prior inconsistent statements MGA made to the press (Topics 6-8), (iii) one Topic about persons that performed "test projects" for MGA since January 1, 1995 (Topic 9), and (iv) three Topics about payments of money MGA made to Isaac Larian, who is a party-witness to this case, or to Farhad Larian and Morad Zarabi, who are fact witnesses in this litigation (Topics 11-13).[40]

The *verbatim* language of the Topics from the Third Notice at issue follows, along with a summary of MGA's objections to the Topics:

*Hard Drives and Other Storage Devices.*

1.  The IDENTITY, current or last known location, and disposition of each STORAGE DEVICE that each of the following PERSONS has used to create, generate, prepare, draft, send and/or receive any DOCUMENT or DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL at any time since January 1, 1999, including without limitation the date of acquisition and

---

[37]   Mattel's Third Notice of Deposition of MGA Pursuant to <u>Federal Rule of Civil Procedure</u> 30(b)(6), Zeller Dec., Exh. 23.
[38]   MGA's Objections to Mattel's Third Notice of Deposition of MGA, Zeller Dec. Exh. 24.
[39]   Zeller Dec., ¶ 28.
[40]   <u>Id.</u>, Zeller Letter to Jenal dated July 6, 2007, Zeller Dec., Exh. 25.

-8-

07209/2164784.7

Exhibit 8   Page 220

1 | the date of disposition of each such STORAGE DEVICE: Isaac Larian, Farhad

2 | Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica Marlow, Mercedeh

3 | Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich, Ninette Pembleton,

4 | Kerri Brode, Victoria O'Connor, Aileen Storer, Charles O'Connor, Helene Bartels,

5 | Colleen O'Higgins, Vivian Matt, Maureen Mullen, Rachel Harris, Barbara Malcolm,

6 | David Dees, Ben Ton, Dave Malacrida.

7 |         2.    The IDENTITY, current or last known location, and disposition

8 | of each backup, copy or image of the STORAGE DEVICES referenced in Topic 1

9 | of this Notice, including without limitation the date of creation and the date of

10 | disposition of each such backup or copy.

11 |         3.    YOUR search for and production of DOCUMENTS and

12 | DIGITAL INFORMATION from the STORAGE DEVICES referenced in Topic 1

13 | of this Notice.

14 |         Among other boilerplate objections, MGA objected to these three

15 | Topics on the grounds that they are purportedly duplicative of prior deposition

16 | testimony of Kenneth Lockhart.[41] Lockhart was MGA's <u>Rule</u> 30(b)(6) designee for

17 | certain Topics in Mattel's Second Notice related to MGA's storage and retention

18 | policies in electronic database systems, including e-mail.[42] During the meet and

19 | confer, MGA refused to designate a witness for these Topics because, according to

20 | MGA, Mattel had the obligation to ask about these topics when they examined

21 | Lockhart and thus had no right to further discovery.[43]

22 | ***Prior Inconsistent Statements to the Press.***

23 |         6.    YOUR statements to Christopher Palmeri in connection with the

24 | Business Week article entitled "To Really Be A Player, Mattel Needs Hotter Toys,"

25 |

26 | [41]  MGA's Objections to the Third Notice, Zeller Dec., Exh. 24 at 5-7.

27 | [42]  Lockhart Depo. Tr., Zeller Dec., Exh. 26 at 34:12-25. <u>See also</u> Mattel's Second 30(b)(6) Notice to MGA, at 11-12 (Topics 38-46), Zeller Dec., Exh. 16.

28 |

-9-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 221

1    published on or about July 28, 2003, including without limitation in connection with

2    the statement that Isaac Larian "got the idea for Bratz after seeing his own kids run

3    around in navel-bearing tops and hip-huggers."

4          7.    YOUR statements to Denise I. O'Neal in connection with the

5    Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll World,"

6    published on or about  March 5, 2004, including without limitation in connection

7    with the statements that MGA's "creative team decided the name should be catchy

8    and not have more than six letters.  Keeping with today's trend of making names

9    more 'cool' by changing the spelling, MGA executives decided to replace the 's' with

10   a 'z.'"

11         8.    YOUR statements to Jeff Weiss in connection with the San

12   Fernando Valley Business Journal article entitled "Immigrant's Creative Company

13   Shakes Up Toy Industry," published on or about March 29, 2004, including without

14   limitation in connection with the statement that "[i]t was Jason's idea for Bratz."[44]

15         Among other boilerplate objections, MGA objected to each of these

16   Topics on the ground that they are an improper subject of a Rule 30(b)(6) Notice

17   because the statements were made by MGA's CEO and "MGA" thus did not make

18   the statements as a corporate actor.[45]  During meet and confer, MGA asserted that it

19   would not designate a witness on these Topics because Mattel can obtain this

20   information only through a personal deposition of Isaac Larian.[46]

21   **_"Test Projects" for MGA._**

22         9.    The IDENTITY of each PERSON who YOU had perform, or

23   who YOU requested, asked or solicited to perform, any "test project" in advance of

24   or in consideration of employment by YOU since January 1, 1995, including

25   ───────────────

26   [43]   Zeller Letter to Jenal dated July 6, 2007, Zeller Dec., Exh. 25.

27   [44]   The "Jason" referenced is Isaac Larian's son, Jason Larian.

28   [45]   MGA's Objections to Third Notice, Zeller Dec., Exh. 24 at 9-11.

1  without limitation the IDENTITY of each such PERSON who was a MATTEL

2  employee at the time.

3            Among other boilerplate objections, MGA objected to this Topics on

4  the grounds that "as worded, it is vague and ambiguous, particularly with respect to

5  the term 'test project.'"[47]  During meet and confer, despite Mattel's explanation that

6  Bryant and MGA themselves had been asserting that Bryant's work for MGA during

7  his Mattel employment was a "test project" akin to a "job interview," MGA refused

8  to designate a witness for this Topic primarily for the "vagueness" reason.  MGA

9  also took the position that 1995 to the present was too broad of a time frame.[48]

10  ***Payments MGA Made To Isaac Larian, Farhad Larian and Morad Zarabi.***

11            11.    Payments of money or any other item of value that YOU have

12  made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac Larian

13  since January 1, 1999, including without limitation (a) the amounts of such payment

14  and the equivalent dollar value of each of item of value, (b) the dates of such

15  payment, (c) the IDENTITY of each recipient of such payment, (d) the IDENTITY

16  of each bank or financial institution account to which such payment was made and

17  (e) the reasons for each such payment.

18            12.    Payments of money or any other item of value that YOU have

19  made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

20  Larian since January 1, 1999, including without limitation (a) the amounts of each

21  such payment and the equivalent dollar value of each of item of value, (b) the timing

22  of each such payment, (c) the IDENTITY of each recipient of each such payment,

23  (d) the IDENTITY of each bank or financial institution account to which such

24  payment was made and (e) the reasons for each such payment.

25

26  [46]  Zeller Letter to Jenal dated July 6, 2007, Zeller Dec., Exh. 25.
    [47]  MGA's Objections to Third Notice, Zeller Dec., Exh. 24 at 12.
27  [48]  Zeller Letter to Jenal dated July 6, 2007, Zeller Dec., Exh. 25.

28

13.    Payments of money or any other item of value that YOU have made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad Zarabi since January 1, 1999, including without limitation (a) the amounts of each such payment and the equivalent dollar value of each of item of value, (b) the timing of each such payment, (c) the IDENTITY of each recipient of each such payment, (d) the IDENTITY of each bank or financial institution account to which such payment was made and (e) the reasons for each such payment.

Among other boilerplate objections, MGA objected to these three Topics on the grounds that they are not relevant to any claim or defense in this litigation.[49]  During meet and confer, MGA stated this was the primary reason it would not designate witnesses on these topics.[50]

## Argument

## I.    THE COURT SHOULD COMPEL MGA TO PRODUCE WITNESSES FOR EACH OF THE TOPICS AT ISSUE.

### A.    The Storage Devices MGA Employees Used For Digital Information Related to Bratz or Angel (Topic Nos. 1-3).

Topic No. 1 seeks information regarding the location and disposition of computer hard drives or other storage devices that contain or contained documents related to the Bratz or Angel projects used by specified MGA employees or contractors.  MGA objected to this Topic on the grounds that "the testimony sought is unreasonably cumulative and duplicative of information already provided to Mattel by MGA and/or Defendant Carter Bryant, specifically with respect to the

---

[49]   MGA's Objections to Mattel's Third Notice at 12-16, Zeller Dec., Exh. 24.
[50]   Zeller Letter to Jenal dated July 6, 2007, Zeller Dec., Exh. 25.

1  deposition of Ken Lockhart, Vice President and Chief Information Office for MGA,

2  which took place on June 14-15, 2007."[51]  Topic No. 2 in the Third Notice seeks the

3  identification and last known location of any backup, copy or image of the hard

4  drives or storage devices identified in Topic No. 1.  Topic No. 3 addresses MGA's

5  search for and production of documents and digital information from the hard drives

6  and storage devices referenced in Topic 1.  Again, MGA claims that these two Topic

7  are cumulative and duplicative of Lockhart's testimony.

8           The objection is meritless and should be stricken.  First, the Topics at

9  issue in the Third Notice are substantively different from the ones in the Second

10 Notice.  Specifically, for the Second Notice, MGA designated Lockhart to testify

11 about (i) MGA's retention, destruction and data back-up *policies*, (ii) MGA's digital

12 information *systems* and application *software*, (iii) employees' electronic messaging

13 *systems* and (iv) MGA's *policies* regarding the use of transportable media.[52]  By

14 contrast, Topics 1, 2 and 3 in the Third Notice ask about particular electronic storage

15 devices, such as computer hard drives and including identifying information about

16 the devices, which specific MGA employees used for information related to the

17 Bratz and Angel projects.  The Topics are different on their face.

18           Second, in any event, Mr. Lockhart indeed was asked about the

19 location and disposition of particular hard drives and storage devices, but he was

20 unable to provide any substantive testimony regarding Topic Nos. 1-3 of the Third

21 Notice.  To be sure, Lockhart testified about the location and disposition of MGA

22 employees' hard drives and storage devices *in general* -- i.e., about MGA's policies

23 regarding certain kinds of electronic media.  As to matters concerning Topic No. 1,

24 however, and contrary to MGA's claim that Lockhart "already provided" the

25

26  [51]  MGA's Objections To Third Notice, Zeller Dec., Exh. 24 at 5:20-23.
    [52]  Lockhart Depo. Tr. at 34:12-25, Zeller Dec., Exh. 26; Mattel's Second
27 30(b)(6) Notice to MGA, Zeller Dec., Exh. 16 (Topics 38-46).

28

07209/2164784.7

-13-

Exhibit 8   Page 225

1 information sought by Topic No. 1, he was unable to identify the locations of prior

2 hard drives used by the persons identified in Topic 1 or meaningfully discuss the

3 disposition of any of those hard drives:

4      Q.  Do you know who Fred Larian is?

5      A.  Yes, I do.

6      Q.  Does he have a -- an MGA-issued computer?

7      A.  Not at this time.

8      Q.  Has he in the past?

9      A.  Yes.

10      Q.  Do you know whether the -- either the Hard drive or

11 information off of the hard drive of Mr. Larian has been preserved?

12      A  I don't know.

13      Q.  Do you know where any hard drives used by Mr. Larian would

14 be located?

15      A.  No.

16   . . .

17 By Mr. Corey:

18      Q.  Do you know where any hard drives used by Ms. Paula Garcia

19 would be located, or are located?

20      A.  Yes.

21      Q.  Where?

22      A.  In her office.

23      Q.  Other than that?

24      A.  No.

25      Q.  I mean other than the hard drive that she's currently using in the

26 computer that's been issued to her.

27      A.  No.

28

-14-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 226

1    Q.   And I believe I asked you whether Carter Bryant had been

2    issued a computer by MGA, and you didn't know the -- you didn't

3    know.

4    A.   That's correct.

5    Q.   Do you know what steps, if any, have been taken to preserve

6    either the hard drive or the information on the hard drive of Kami

7    Gillmour?

8    A.   I do not.

9    Q.   Do you know the location of any hard drive used by Kami

10   Gillmour?

11   A.   I do not.

12   Q.   Do you know whether any information -- excuse me.  Do you

13   know what steps have been taken to preserve information on any hard

14   drive used or the hard drive used -- hard drives used by Veronica

15   Marlow?

16   A.   Not outside of our normal process, I do not.

17   Q.   Do you know where any hard drive used at any time by

18   Veronica Marlow would be located?

19   A.   No, I do not.

20   Q.   Do you know what steps have been taken to preserve

21   information on any hard drive where the hard drives used by Mercedeh

22   Ward?

23   A.   Not outside of our normal practice.

24   Q.   Do you know the location of all hard drives -- any hard drive

25   used by Mercedeh Ward?

26   A.   No.

27

28

07209/2154754 7

-15-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 227

1      Q.   Same questions with respect to Margaret Hatch-Lahey.

2      A.   No.[53]

3          Lockhart's testimony was similarly meaningless when asked for

4   information sought by Topic Nos. 2 and 3 of the Third Notice.  As the testimony

5   cited above shows, he was unprepared to testify about search for and production of

6   documents and digital information from the hard drives and storage devices

7   referenced in Topic 1.  Indeed, he was unable to identify even whether a forensic

8   image of any hard drive had been made, much less identify where such an image

9   would be or when it was made:

10     Q.   And do you know whether a forensic image has been made of

11         any of the hard drives used by any of those people that I identified?

12     A.   No.

13     Q.   Including Mr. Larian?

14     Mr. Jenal:  Fred?

15     Mr. Corey:  Mr. Isaac Larian.

16     The Deponent:  No.[54]

17  The Topics are hardly duplicative or cumulative of Lockhart's testimony that he had

18  no knowledge of the location of backups or images of the requested hard drives.

19         MGA also cannot claim that information about hard drives and storage

20  devices the identified MGA employees or contractors used to store digital

21  information about the Bratz or Angel projects is not relevant.  Comments to the

22  2000 Amendments to Rule 26 expressly state such information is discoverable:

23  ────────────────────────────────

24  [53]  Lockhart Depo. Tr., Zeller Dec., Exh. 26 at 327:4-329:19.  Lockhart went on
    to testify that he also did not know the location of any hard drives used by Jennifer

25  Maurus, Judy Rich, Ninette Pembleton, Kerri Brode, Victoria O'connor, Aileen
    Storer, Charles O'connor, Helene Bartels, Colleen O'higgins, Vivian Matt, Maureen

26  Mullen, Rachel Harris, Barbara Malcolm, David Dees, Ben Ton or Dave Malacrida.
    Id. at 329:20-331:1.

27

28

1   "Information about filing systems of a party could be discoverable if likely to yield

2   or lead to the discovery of admissible information."  Adv. Comm. Notes to 2000

3   Amendments to F.R.C.P. 26(b)(1).  See also G.D. v. Monarch Plastic Surgery, P.A.

4   239 F.R.D. 641, 645-646 (D. Kan. 2007) (allowing inspection of computers for

5   relevant information.  In fact, long before the 2000 Amendments to Rule 26, federal

6   courts had recognized that not just electronically-stored data, but also information

7   about the systems in which the data is stored, is discoverable information.  See, e.g,

8   Bills v. Kennecott Corp., 108 F.R.D. 459, 461 (D.C. Utah 1985) ("any material

9   relating to the record holder's computer hardware, the programming techniques

10  employed in connection with the relevant data, the principles governing the structure

11  of the stored data, and the operation of the data processing system" subject to

12  discovery); Dunn v. Midwestern Indem., 88 F.R.D. 191, 195 (D.C. Ohio 1980)

13  (computer systems, programs and tapes were relevant and subject to discovery

14  where claimants sought relevant information that should be in the computers, or

15  information that should not be there but was).

16          Finally, any contention that Topic Nos. 1, 2 and 3 are unduly

17  burdensome is without merit.  They ask for specific information related to electronic

18  information about Bratz or Angel received, sent or generated by key players.

19  Furthermore, MGA already has been ordered to produce, but has not produced, an

20  IT person to testify about electronic information.  After MGA backtracked on

21  designating Lockhart for one Topic in the Second Notice (No. 40, retention policies

22  for digital information regarding Mattel), MGA stated that Lockhart or another

23  witness could testify about that Topic on another day, but not that day.[55]

24  ───────────────
    [54] Id. at 331:2-9.
25  [55] Id. at 35:20-21.

26

27

28

-17-
MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 229

**B.**   **MGA's Prior Statements To The Press Related To Bratz.**

MGA next contends that Topics 6, 7 and 8 are not proper for a 30(b)(6) deposition because Mattel can "only" ask Isaac Larian about these in his individual capacity.  This is nothing short of bad faith.  As shown above, first the Discovery Master and then Judge Larson rejected an identical argument with respect to prior sworn statements by MGA employees.  In his order rejecting MGA's argument for the second time, Judge Larson emphasized the language of Rule 30(b)(6) stating that corporate witnesses are required to give testimony on matters *known or reasonably available* to the organization.[56]

With respect to the present issue, there is no difference between prior inconsistent sworn statements and prior inconsistent statements related to MGA's moving target on who invented Bratz and when.  Mattel's Topics identify three specific articles with such prior statements.  MGA cannot make the straight-face argument that it has no information about public statements its Chief Executive Officer made in the course of his work for the company.[57]  Indeed, under MGA's logic, a party could never attribute any statements of high corporate officers to a corporate party.  This is, of course, an absurd proposition.  See, e.g, Tracinda Corp. v. DaimlerChrysler AG, 362 F. Supp. 2d 487, 504 (D. Del. 2005) (prior out of court statements made by Chrysler's chief executive officer qualified as admissions of the corporation); Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F. 3d 340, 358-359 (3d Cir. 2001) ("courts impute fraud of an officer to a

---

[56]   July 2, 2007 Minute Order, Zeller Dec., Exh. 22 at 4.
[57]   MGA claims that "MGA" did not make these statements as a corporate actor.  Zeller Dec., Exh. 24 at 9-12.  Of course "MGA" did not make the statements.  Corporations themselves cannot speak, so its agents speak on their behalf.  Given the titles of the articles at issue -- "To Really Be A Player, Mattel Needs Hotter Toys," "Bratz Packers Are What's Cool in Doll World," and "Immigrant's Creative Company Shakes Up Toy Industry" -- it is simply not credible that Larian spoke to the journalists on his personal behalf rather than as an agent of MGA.

-18-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 230

1 | corporation when officer commits fraud (1) in the course of his employment and (2)
2 | for the benefit of the corporation.").
3 |      Finally, and underscoring the particularly frivolous nature of MGA's
4 | objections to these Topics as "unsuitable" for a Rule 30(b)(6) deposition, *MGA* itself
5 | sought, and has already obtained, Rule 30(b)(6) testimony from *Mattel* about
6 | statements made to the press.  Topic No. 41 of Bryant's Notice to Mattel -- which
7 | MGA has purported to rely on and even moved to compel on -- requested Mattel
8 | testimony on "[a]ll statements of Mattel or ex-Mattel employees in the July 2003
9 | *Wall Street Journal* article".[58]  If, as MGA has claimed, statements by Mattel's
10 | employees and even persons who were not then-current Mattel employees to the
11 | press are a fair subject of Rule 30(b)(6) examination, MGA scarcely can evade
12 | discovery on its own prior statements to the press relating to even more fundamental
13 | Bratz issues in this case.
14 |
15 | C.    **Persons Who Performed "Test Projects" For MGA.**
16 |      Next, MGA claims that the term "test project" in Topic 9 is vague and
17 | ambiguous, so they cannot answer it.  The most remarkable part about MGA's
18 | excuse is that Carter Bryant and MGA, not Mattel, have long been using "test
19 | project" to defend Bryant's working for MGA while he was still a Mattel employee.
20 | Bryant himself introduced the concept at his deposition:
21 |     Q  (By Mr. Quinn)  At any time prior to the last day of your
22 |         employment at Mattel did you have any discussion with MGA
23 |         about any projects you might work on with them other than
24 |         Bratz?
25 |     A  I did sort of a *tryout kind of a project for them*.  It was
26 |         an angel project.  It was actually not my project.  It was
27 |
28 |

---

[58]  Zeller Dec., Exh. 29 at 9:19-20.

-19-

Exhibit 8   Page 231

1    Veronica's project, and I did some face designs for them,

2    just some drawings, and I don't know if they used any of

3    them or not, but it was my -- excuse me, *my understanding*

4    *that this was kind of a test* to see how well I would do,

5    you know, with working with the team, working with

6    direction.[59]

7  Bryant later referred to the same "test project" concept when discussing his

8  employment with Mattel:

9    Q  How were things left at the conclusion of the second

10    meeting?  Was it -- did you have a job offer at that

11    point?  Did they say they would get back to you or

12    something else?

13    A  I think again they wanted me to come and meet with another

14    lady.  They wanted me to go do the *test assignment* and

15    then they wanted me to come back for an interview with

16    another woman.

17    Q  Tell me about the test assignment.  What was that?

18    A  They *wanted me to do a project* in which I would come up

19    with sort of a -- I forget what the project was called but

20    they wanted me to come up with some sort of superhero kind

21    of a look . . . .[60]

---

22

[59]  Bryant Depo. Tr., Zeller Dec., Exh. 27 at 178:3-18 (emphasis added).  Bryant

23  also used the similar term "trial project" to refer to the same concept--doing test

24  work prior to being considered for formal employment--in his Complaint for

    Declaratory Relief filed against Mattel on November 2, 2004.  Zeller Dec., Exh. 34

25  at 5, ¶ 25.

26  [60]  Id. at 515:19-516:7 (emphasis added).

27

28

07209/2164784.7

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 232

1       MGA too has freely adopted the phrase "test project," including most

2  recently while deposing a Mattel 30(b)(6) witness just last month, in questioning

3  that had nothing to do with that witness's areas of designation:

4       Q.  Do you have any information about Mr. Bryant allegedly working

5       on a *test project* separate and apart from the work that he was doing for

6       Mattel during the time of his employment from Mattel?

7       MR. ZELLER:  The question is vague.

8       THE WITNESS:  When you say "do you have any information," can

9       you clarify what you mean by that?

10      BY MS. ANDERSON:

11      Q.  Do you know of any facts that relate to that?  Let me restate it so

12      it's clear.  Do you have any knowledge about Mr. Bryant allegedly

13      working on a *test project* separate and apart from the work that he did

14      for Mattel during the time of his employment with Mattel?

15      MR. ZELLER:  The question is still vague.

16      THE WITNESS:  Other than what -- the fact that the complaint was

17      brought up, that's all the knowledge that I have.[61]

18  MGA apparently did not think "test project" was so vague as to prevent questioning

19  that used the exact same phrase when it comes to Mattel's witnesses.  Obviously,

20  MGA understands exactly what the phrase means in the Third Notice.

21      Even if (contrary to fact) MGA had a legitimate ground to object to the

22  phrase as "vague," it is not a proper basis for refusing to designate and produce a

23  witness.  "Vague and ambiguous" objections should not be sustained if the

24  ambiguity could have been resolved through the meet and confer process.  Beach v.

25  City of Olathe, Kans., 203 F.R.D. 489, 497 (D. Kan. 2001).  Mattel explained at the

26

27  _____

    [61]  Sandy Yonemoto Depo. Tr., Zeller Dec., Exh. 28 at 76:2-19 (emphasis added).

28

-21-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 233

1  meet and confer not only that the term was that of Bryant and MGA's making, but

2  that Mattel was using it in the same way Bryant had explained it at his deposition --

3  namely, having an employment prospect create artwork as part of the job interview

4  process. For its part, MGA did not attempt to resolve the supposed ambiguity

5  during meet and confer and instead insisted on stonewalling. And, of course, their

6  designee could also ask for clarification of any terms used in questioning during

7  deposition as appropriate.

8         MGA further contends that the "1995 to the present" time frame of

9  Topic No. 9 is too broad. Yet, MGA has given no basis for its assertion (which it

10  bears the burden of proof on) and has not proposed any alternative time period for

11  the Topic. In addition, the purpose for the Topic is to obtain information that will

12  refute MGA and Bryant's assertions that Bryant's working for MGA while employed

13  by Mattel was no different than a supposedly standard industry practice of having

14  candidates for creative positions make artwork as part of the job interview. The

15  Topic is thus not only plainly relevant, but the requested time period is congruent

16  with the time period that Bryant has been in the toy industry starting in 1995. It thus

17  covers a sufficient period to avoid arguments by MGA and Bryant that this

18  purported practice was common and indeed to show in all likelihood that it does not

19  even exist.

20         Finally, on this issue, too, MGA's own discovery demands refute its

21  arguments here. In December 2004, Bryant served Mattel with a Rule 30(b)(6)

22  notice that included two topics on Bryant's work for third parties while he worked

23  for Mattel "from 1995 to the present," and one topic about Mattel contracts with

24  employees "since January 1, 1995."[62] MGA, since that time, has insisted that it has

25  "adopted" Bryant's Notice as its own and, in fact, has moved to compel on it. In

26

27  ---

[62]  Notice of Deposition of Mattel, Inc., Zeller Dec., Exh. 29  at 4, 10 (Topics 6, 7, 50).

28

-22-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 234

1   connection with a motion to compel brought by MGA and Bryant, the Discovery

2   Master ordered Mattel to designate witnesses for these topics covering the 1995 to

3   present time period without narrowing the relevant time period.[63]  Defendants' topics

4   relate to the same subject as Topic 9 here -- work Bryant did for the benefit of a

5   third party while working for Mattel.  MGA cannot take one position to obtain

6   discovery from Mattel, only to then take the exact opposite position to stonewall

7   Mattel's discovery.

8

9   **D.      MGA's Payments To Isaac Larian, Farhad Larian and Zarabi.**

10          MGA refuses to designate a witness for Topics 11-13 because it

11   contends that payments MGA made to Isaac Larian, Farhad Larian and Morad

12   Zarabi are irrelevant.  Isaac Larian is, of course, a party in this litigation.  Farhad

13   Larian is Isaac's brother, and Morad Zarabi is the uncle of Isaac Larian and Farhad

14   Larian.  Zarabi was the arbitrator in a dispute between the Larian brothers, in which

15   Farhad claimed that Isaac concealed from him that MGA was developing Bratz by

16   early 2000.  That issue is, obviously, directly relevant to the issues in this case,

17   which at its core involve the timing of Bratz's creation, design and development.

18   MGA's refusals to provide testimony on these Topics fly in the face of the

19   Discovery Master's prior Orders on issues that the parties have already briefed and

20   argued at length.

21          The Discovery Master previously ruled that the Bratz-related

22   arbitration between the Larian brothers is relevant in this litigation, and he ordered

23   MGA to produce documents from the arbitration.[64]  Given the arbitration's

24   _____

25   [63]   January 30, 2007 Order Granting In Part Carter Bryant and MGA
    Entertainment, Inc.'s Motion to Compel The Production Of Documents And
26   30(b)(6) Depositions, Zeller Dec., Exh. 30.
    [64]   May 15, 2007 Order Granting Mattel's Motion to Compel Production of
27   Documents and Interrogatory Responses By MGA, at 10-11, Zeller Dec., Exh. 31.

28

-23-

Exhibit 8   Page 235

1  relevance, all three persons at issue here are witnesses in this litigation.  Of course,

2  payments from a party (MGA) to witnesses is admissible information, as it goes to

3  bias.  See United States v. Abel, 469 U.S. 45, 50-51 (1984); Wright & Miller,

4  Federal Practice & Procedure: Federal Rules of Evidence § 6095 (bias is a

5  "particularly favored basis for attacking credibility," and "circumstantial evidence of

6  bias" may include evidence of the "payment of bribes or fees").  Because evidence

7  tending to show bias or lack of credibility is admissible, it also is discoverable.

8  Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D.Cal. 1998) (Rule 26

9  permits discovery of information which may simply relate to the credibility of a

10  witness or other evidence in the case); Cable & Computer Technology, Inc. v.

11  Lockheed Saunders, Inc., 175 F.R.D. 646, 650 (C.D. Cal. 1997) (same).

12          With respect to Isaac Larian as a defendant, the Topics are also relevant

13  to his liability and to damages.  Again, the Discovery Master has already rejected

14  MGA's similar "relevance" objections regarding MGA's payments to Bryant.  The

15  Discovery Master ordered production of documents relating to such payments,

16  including royalty statements.  He stated that such payments are relevant to Mattel's

17  claims of breach of contract, breach of fiduciary duty, breach of duty of loyalty,

18  unjust enrichment, conversion, copyright infringement and trade secret

19  misappropriation.[65]  With respect to copyright infringement, the Discovery Master

20  noted that the Copyright Act entitles plaintiff to recover profits from infringement as

21  well as actual damages.[66]  With respect to trade secrets, the Discovery Master stated

22  that "[p]ayments could show when and what trade secret information Bryant *and*

23  *other defendants* allegedly misappropriated from Mattel."[67]  MGA's payments to

24  Larian (whether he calls them royalties or otherwise) are no different than payments

25  _____

26  [65]  January 25, 2007 Order Granting Mattel's Motion To Compel Production of
    Documents, at 13-14, Zeller Dec., Exh. 32.

27  [66]  Id. at 14 (citing 17 U.S.C. 504(b)).

28

J7209/2164784.7

1   to Bryant here.  Mattel's claims against Larian include copyright infringement, trade

2   secret misappropriation, intentional interference with contract, aiding and abetting

3   Bryant's breach of fiduciary duty and duty of loyalty, and conversion.[68]

4           MGA's payments to Larian are also relevant and discoverable to

5   Mattel's prayer for punitive damages against him.  See, e.g., U.S. Equal

6   Employment Opportunity Comm'n v. Ian Schrager Hotels, Inc., 2000 WL 307470,

7   *4 (C.D. Cal. 2000) (information about a party's net worth "is relevant under Rule

8   26(b) to plaintiff's claims for damages and punitive damages."); Oakes, 179 F.R.D.

9   at 286 (C.D. Cal. 1998) ("The discovery of financial information relevant to a

10  punitive damages claim is permissible under the Federal Rules of Civil Procedure,

11  whether or not such evidence would be admissible at trial."); Britton v. Car Toys,

12  Inc., 2007 WL 1395290, at *3 (D. Colo. 2007) ("Evidence regarding a defendant's

13  earnings and assets may be relevant in proving punitive damages.").

14          Finally, MGA's payments to Larian are relevant impeachment

15  evidence.  For example, at the recent trial of another case, *Art Attacks v. MGA*, that

16  also involved Bratz, Mr. Larian claimed under oath that he made far less money than

17  one would expect for the majority owner of a purportedly multi-billion dollar

18  company since, Larian claimed, it was mostly ploughed back into the company.[69]

19  While this alone shows that Mattel's concern that Larian will try to avoid a

20  significant punitive damages award by pleading that he makes relatively little

21  money is far from hypothetical, MGA's payments to him also would tend to show

22  that Larian made misrepresentations about his financial condition under oath.  Such

23

24  [67]  Id. at 14 (emphasis added).
    [68]  Mattel's Second Amended Answer In Case No. 05-2727 And Counterclaims,
25  Zeller Dec., Exh. 33 at 53, 62, 66, 69, 71, 72.
    [69]  Declaration of Tamar Buchakjian, dated July 19, 2007 and filed concurrently
26  herewith, ¶ 3.

27

28

07209/2164784.7

1 | evidence is unquestionably relevant and MGA should be ordered to provide a

2 | witness to testify about it.

3 |

4 | II.     **THE COURT SHOULD SANCTION MGA FOR ITS UNSUPPORTED**

5 |        **REFUSAL TO PRODUCE WITNESSES.**

6 |                There are at least two separate bases justifying sanctions on MGA here.

7 | First, Rule 37(a)(4) of the Federal Rules of Civil Procedure states that a party forced

8 | to bring a motion to compel is entitled to the "reasonable expenses incurred in

9 | making the motion, including attorney's fees, unless the court finds that the motion

10 | was filed without the movant's first making a good faith effort to obtain the

11 | disclosure or discovery without court action, or that the opposing party's

12 | nondisclosure, response or objection was substantially justified, or that other

13 | circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4).  The

14 | burden of establishing substantial justification is on the party being sanctioned.

15 | Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994).  Second, 28 U.S.C.

16 | section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in

17 | any case unreasonably and vexatiously may be required by the court to satisfy

18 | personally the excess costs, expenses, and attorneys' fees reasonably incurred

19 | because of such conduct."  Sanctions under this section are appropriate "for conduct

20 | that, viewed objectively, manifests either intentional or reckless disregard of the

21 | attorney's duties to the court."  RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995),

22 | citing Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987).

23 |                MGA's objections to Mattel's Topics in the Third Notice lack

24 | reasonable justification.  On the Topics relating to (i) MGA's prior inconsistent

25 | statements to the press relating to Bratz, (ii) MGA's payments to witnesses and

26 | parties in this litigation and (iii) the 1995 time frame for issues relating to Bryant's

27 | services for MGA while he was a Mattel employee, the Discovery Master and/or

28 | Judge Larson already squarely rejected identical objections on similar discovery

-26-

MATTEL'S MOTION TO COMPEL PRODUCTION OF WITNESSES FOR DEPOSITION (THIRD NOTICE)

Exhibit 8   Page 238

1    disputes. Indeed, as shown above, some of the Topics MGA stonewalls on are
2    comparable to <u>Rule</u> 30(b)(6) sought and obtained from Mattel. On the "test project"
3    Topic, it defies reason for a defendant to object to the phrase as vague even though
4    the defendant itself as recently as May 2007 used the phrase during one of its
5    30(b)(6) depositions of Mattel. MGA's bad faith is also evidence from its refusal to
6    seek clarification of the term during meet and confer in order to resolve the issue.
7    Finally, with respect to storage devices, the Topics in the Third Notice are not only
8    different on their face from the ones MGA claims are the same in the Second
9    Notice, but Mattel attempted to ask Lockhart about the Topics in the Third Notice --
10   he was unable to provide information about them.

11          Mattel also respectfully submits that this request for sanctions should
12   be considered in the context of the disputes over the First Notice and Second Notice,
13   which have now spanned more than two years. Clearly, the fact that Orders fom
14   both the Discovery Master and Judge Larson have rejected MGA's meritless
15   objections to Mattel's 30(b)(6) Notices and other discovery requests is not sufficient
16   deterrence to MGA's stonewalling on discovery by re-hashing the same objections.
17   As MGA made clear when it refused to withdraw the obviously-improper
18   instructions not to answer during a prior 30(b)(6) deposition, it has no intention of
19   voluntarily withdrawing meritless discovery obstructions "without an Order of the
20   Court." Apparently, as the Discovery Master and the parties found out later, not
21   even a Court Order is sufficient. In fact, in some instances, not even two Court
22   Orders. Mattel therefore respectfully requests the Discovery Master order MGA to
23   reimburse Mattel for a portion of the fees it incurred in having to bring this motion,
24   in the amount of $5,135.00.[70]

25   _____
     [70]  Zeller Dec., ¶ 40.
26

27

28

## Conclusion

For the foregoing reasons, the Court should compel MGA to produce witnesses to testify on Mattel's Third Notice, Topics 1-3, 6-8, 9 and 11-13, and overrule all of MGA's objections and limitations. Further, MGA should be sanctioned for its needless delay and failure to produce witnesses without Court intervention, despite prior rulings rejecting MGA's identical objections.

DATED: July 13, 2007                    QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP


                                        By _____
                                        Michael T. Zeller
                                        Attorneys for Plaintiff and Cross-Defendant
                                        Mattel, Inc.

07209/2164784.7

-28-