THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA  90071-3144
Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600
E-mail:    tnolan@skadden.com

RAOUL D. KENNEDY (Bar No.  40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, California  94111-5974
Telephone:  (415) 984-6400
Facsimile:   (415) 984-2698
Email:        rkennedy@skadden.com

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA
ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation | **[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]** |
| Defendant. | **MGA DEFENDANTS' NOTICE OF MOTION AND MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT** |
| | **[DECLARATION OF AMY PARK AND SEPARATE STATEMENT FILED UNDER SEPARATE COVER]** |
| Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Date:   TBD Time:   TBD Place:  TBD |

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.    PRELIMINARY STATEMENT. .................................................................1

II.   STATEMENT OF FACTS. ..........................................................................3

      A.    In Response to Mattel's Thousands of Document Requests, the MGA Defendants Have Produced and Are Producing Over Three Million Pages of Documents. ...............................................................3

      B.    Mattel Has Targeted Non-Parties Having Personal, Financial or Business Relationships with the MGA Defendants and Subpoenaed Them for Irrelevant or Duplicative Documents. ..............5

III.  THE DISCOVERY MASTER MUST STOP MATTEL'S ABUSIVE NON-PARTY DISCOVERY PRACTICES. .................................................9

      A.    The Federal Rules Require Mattel to Limit Its Subpoenas to Relevant Matter that Is Not Duplicative of Party Discovery and Cannot Be Obtained Through Less Burdensome Means. ...................9

      B.    Mattel's Subpoenas Are Abusively Drawn to Seek Irrelevant and Duplicative Materials and Are Designed Solely to Harass the MGA Defendants and Non-Parties with whom They Have Personal, Financial or Business Relationships. .................................11

            1.    Mattel Seeks Irrelevant and Duplicative Financial Information Regarding MGA and Isaac Larian. ......................13

            2.    Mattel Seeks Irrelevant Financial Information Regarding Many Non-Parties. .................................................19

            3.    Mattel Seeks Irrelevant and Duplicative Information Regarding Litigation Between Isaac and Farhad Larian. .........21

            4.    Mattel's Requests for Documents Related to MGA's Products or Carter Bryant Are Overly Broad and Abusively Drawn. ...................................................................23

IV.   CONCLUSION.........................................................................................25

MGA DEFENDANT'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aliotti v. Senora*,
  217 F.R.D. 496 (N.D. Cal. 2003) ................................................................10, 16

*Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*,
  649 F.2d 646 (9th Cir. 1980) ........................................................................ 9

*In re Ashworth, Inc. Sec. Litig.*,
  Civil No. 99 cv 0121 L (JAH),
  2002 U.S. Dist. LEXIS 27991 (S.D. Cal. May 10, 2002) ....................................13

*J & M Turner, Inc. v. Applied Bolting Tech. Prods.*,
  Civil Action No. 95-2179, Civil Action No. 96-5819,
  1997 U.S. Dist. LEXIS 4447 (E.D. Pa. Apr. 2, 1997)..........................................11

*Lectrolarm Custom Sys. v. Pelco Sales*,
  212 F.R.D. 567 (E.D. Cal. 2002) ................................................................11, 23

*Mattel, Inc. v. Walking Mountain Productions*,
  353 F.3d 792 (9th Cir. 2003) ........................................................................*passim*

*Moon v. SCP Pool Corp.*,
  232 F.R.D. 633 (C.D. Cal. 2005)................................................................10, 21

*Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*,
  262 F. Supp. 2d 923 (N.D. Ill. 2003) ......................................................15

*S. Cal. Hous. Rights Ctr. v. Krug*,
  Case No. CV 06-1420 SJO (JCx),
  2006 U.S. Dist. LEXIS 65330 (C.D. Cal. Sept. 5, 2006) ....................................13

*Travelers Indem. Co. v. Metropolitan Life Ins. Co.*,
  228 F.R.D. 111  (D. Conn. 2005) ........................................................10

## RULES

Federal Rule of Civil Procedure 26(b)(1) ..............................................9, 16

Federal Rule of Civil Procedure 26(b)(2) ................................................10

Federal Rule of Civil Procedure 26(b)(2)(C)........................................ 10, 17, 21, 23

Federal Rule of Civil Procedure 45(c)(1) ..............................................9, 24

Federal Rule of Civil Procedure 45(c)(3)(A)(iv) ....................................... 9

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on _____, 2008, at _____, or as soon thereafter as the matter may be heard, before the Honorable Edward Infante (Ret.), Discovery Master, located at Two Embarcadero Center, Suite 1500, San Francisco, CA 94111, counter-defendants MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, the "MGA Defendants") will and hereby do move, pursuant to Federal Rule of Civil Procedure 26(b)(2) and 45(c)(3), for an order quashing subpoenas issued by Mattel, Inc. to non-parties ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells Fargo, or, in the alternative, a protective order limiting the scope of those subpoenas.

This motion is made on the grounds that Mattel's subpoenas are overly broad and impose an undue burden on the above-referenced non-parties. In particular, the subpoenas seek documents that are irrelevant to this litigation or are duplicative of documents and information that, to the extent it is relevant, has already been sought and obtained or is being obtained by Mattel through other discovery. In addition, Mattel has made no effort to properly tailor its requests and has failed to take reasonable steps to avoid unduly burdening the non-parties.

This motion is based on this Notice of Motion and Motion to Quash Subpoenas or, in the Alternative, for Protective Order, the attached Memorandum of Points and Authorities in support thereof, the supporting Declaration of Amy S. Park and Separate Statement filed herewith, the pleadings and records on file in this action, and any further evidence and argument as may be presented to the Discovery Master on this motion.

MGA DEFENDANT'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1

**Statement of Local Rule 7-3 Compliance**

2          The parties met and conferred on December 21, 2007, regarding the subject of

3 this motion but were not able to resolve this motion.

4

5 DATED:  December 21, 2007

6                                        SKADDEN, ARPS, SLATE, MEAGHER &
                                        FLOM, LLP

7

8                                        By: _____

9                                              Thomas J. Nolan

10                                       Attorneys for Counter-Defendants, MGA
                                        ENTERTAINMENT, INC., ISAAC
11                                       LARIAN, MGA ENTERTAINMENT (HK)
                                        LIMITED, and MGAE de MEXICO S.R.L.
12                                       de C.V.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT.

Counter-defendants MGA Entertainment, Inc. ("MGA"), Isaac Larian, MGA Entertainment (HK) Limited ("MGA HK"), and MGAE de Mexico S.R.L. de C.V. ("MGA Mexico") (collectively, the "MGA Defendants") bring this motion to quash subpoenas issued by Mattel to ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells Fargo (collectively, the "Non-Parties"), or, alternatively, for a protective order substantially limiting the scope of those subpoenas.[1]

Mattel has propounded thousands of discovery requests, including more than 2,300 document requests, on the MGA Defendants in this case.  Many of the documents that Mattel has sought and obtained from the MGA Defendants include a wide assortment of financial documents.  Indeed, the Discovery Master recently heard several motions brought by Mattel to compel the MGA Defendants to produce even more financial documents.

Apparently not satisfied with the voluminous production of information that Mattel has received and will be receiving from the MGA Defendants, Mattel has recently embarked on an expansive and harassing campaign to obtain much of the same information, as well as substantial amounts of other irrelevant documents, from a host of non-parties who have a personal, financial or business relationship with the MGA Defendants but have no involvement in this case.  Mattel's efforts to harass these non-parties with overly broad subpoenas represent the same type of abusive non-party discovery tactics that Mattel has been sanctioned for in other litigation.

---

[1] The issue of whether the Discovery Master Order in this case applies to non-parties subpoenaed by Mattel is the subject of a pending motion before the Court.  The MGA Defendants' motion, however, does not implicate that motion because the MGA Defendants only seek relief as to Mattel, over whom the Discovery Master unquestionably has jurisdiction, and the subpoenas at issue here implicate issues that Mattel has already put before the Discovery Master in prior motions to compel.

1  Indeed, in *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813-14 (9th

2  Cir. 2003), the Ninth Circuit affirmed the district court's order sanctioning Mattel

3  and its counsel, Quinn Emanuel, for issuing a "very broad" and "abusively drawn"

4  discovery subpoena.  The Court held that – just like the subpoenas here – "no attempt

5  had been made to try to tailor the information request to the immediate needs of the

6  case" and that the subpoena was served simply "for the purpose of annoying and

7  harassment and not really for the purpose of getting information."  *Id.*

8      Mattel's subpoenas to the Non-Parties generally consist of four categories of

9  requests, all of which are overly broad and seek materials that are irrelevant to this

10  case or that have been or could be obtained from the MGA Defendants.

11      *First*, Mattel has subpoenaed the Non-Parties for the ***entirety*** of MGA and Mr.

12  Larian's financial records, from tax returns to canceled checks, for a nine-year period

13  from 1999 to the present.  There is no claim or defense at issue in this case that could

14  possibly justify giving Mattel such unfettered access to MGA and Mr. Larian's

15  financial histories.  Moreover, to the extent some of the requested documents may be

16  relevant, the MGA Defendants have already produced many responsive documents,

17  and indeed, the Discovery Master recently ordered MGA to produce numerous other

18  financial documents.

19      *Second*, Mattel has demanded that the Non-Parties produce vast amounts of

20  financial records for a host of other *non-parties*, including every person who ever did

21  any work for MGA or Mr. Larian, and every conceivable relative of Mr. Larian.  The

22  private financial records of these non-parties are not even remotely relevant to this

23  case and Mattel's efforts to obtain such information constitute a clear abuse of the

24  non-party discovery process.

25      *Third*, Mattel has requested from the Non-Parties all documents relating to any

26  litigation between Mr. Larian and his brother Farhad Larian.  Mattel, however, has

27  already requested the same documents from both Isaac and Farhad Larian, as well as

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1    MGA and at least two law firms involved in the litigation between the Larian
2    brothers.  Even if the documents were relevant, Mattel should not be permitted to
3    seek the same documents from twelve different sources.  Such duplication is not only
4    unreasonable, it also unduly burdens the Non-Parties.

5         *Fourth*, Mattel's subpoenas include various requests for all documents
6    obtained from MGA or Isaac Larian relating to Bratz, other MGA products, or Carter
7    Bryant.  While some documents relating to Mr. Bryant or the MGA products at issue
8    in this case may be relevant, Mattel's requests to the Non-Parties are improper
9    because Mattel has already requested and received well over three million pages of
10   such documents from the MGA Defendants.  To the extent that Mattel is seeking
11   relevant documents that are not duplicative, Mattel's requests are so overly broad that
12   it is impossible to discern what specific relevant, non-duplicative documents Mattel
13   is requesting from the Non-Parties.

14        With fewer than 40 days left until the January 28, 2008 Phase 1 fact discovery
15   cut-off, the parties should be working diligently to wrap up Phase 1 discovery, not
16   ramp it up with excessive non-party discovery.  However, absent the Discovery
17   Master's intervention, it is clear that Mattel will continue its abusive and harassing
18   non-party discovery tactics.  Accordingly, the MGA Defendants request that the
19   Discovery Master grant their motion to quash or, alternatively, for a protective order.

20   **II.   STATEMENT OF FACTS.**

21        **A.   In Response to Mattel's Thousands of Document Requests, the
22        MGA Defendants Have Produced and Are Producing Over Three
          Million Pages of Documents.**

23        During the course of this nearly four-year-old litigation, Mattel has served and
24   continues to serve the MGA Defendants with more than a dozen sets of document
25   requests containing more than 2,300 individual requests.  (Declaration of Amy Park
26   ("Park Decl."), ¶ 1.)  These requests have included hundreds of requests for
27   documents relating to Bratz and other MGA products at issue in the case.  (Park

28

3

1    Decl., ¶ 1.)  They have also included well over 120 requests devoted to an overly

2    broad array of personal and corporate financial information.  (*See, e.g.,* Park Decl.,

3    Ex. 1 (Mattel's 2nd Set of RFPs to MGA) at Requests 3-45; Ex. 2 (Mattel's 1st Set of

4    RFPs to MGA HK) at Requests 3-45; Ex. 3 (Mattel's 5th Set of RFPs to MGA) at

5    Requests 4-7, 12-47.)  The MGA Defendants have responded and are responding to

6    Mattel's requests by objecting, where appropriate, on relevance, breadth and other

7    grounds, and by producing responsive documents.  (Park Decl. ¶ 4.)  To date, the

8    MGA Defendants have produced more than three million pages of documents

9    responsive to Mattel's many requests.  (*Id*. ¶ 2.)

10        With respect to financial information, Mattel has already sought ***and obtained***

11   broad discovery from MGA, including the following:

12        •    Audited and unaudited quarterly and annual profit and loss statements;

13        •    Audited and unaudited quarterly and annual statements;

14        •    Annual reports;

15        •    Various MGA financial reports;

16        •    Various financial documents relating to Veronica Marlow;

17        •    Documents showing royalty payments to Carter Bryant;

18        •    Documents showing MGA's sales, returns and costs of good sold for
19             each month, by SKU, since 2001;

20        •    Documents showing MGA's promotional, advertising and media
             expenditures, including MGA's internal allocation of those expenditures
21             by brand and/or product;

22        •    Documents showing MGA's amortization and depreciation of certain
             capital assets and expenditures;

23        •    Documents showing MGA's monthly general ledger entries aggregated
24             by account, including income and expense accounts, reserves and
             liabilities; and

25        •    Documents sufficient to explicate MGA's various accounts as presently
             and historically maintained in MGA's books and records, as well as
26             various nomenclature assigned to items, products, brands, sub-brands,
             and profit centers.

27

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1  (Park Decl. ¶ 3.)  The MGA Defendants also will be producing or otherwise making

2  available to Mattel additional documents responsive to Mattel's Second Set of

3  Requests for Production.  (Park Decl. ¶ 4.)  In addition, in the upcoming weeks, the

4  MGA Defendants will be responding to six other outstanding sets of document

5  requests for which responses are not yet due, including, by producing responsive

6  documents, identifying responsive documents that have already been produced, or by

7  requesting that the parties meet and confer over the scope of the requests.  (*Id.*)

8      **B.    Mattel Has Targeted Non-Parties Having Personal, Financial or**
       **Business Relationships with the MGA Defendants and Subpoenaed**
9      **Them for Irrelevant or Duplicative Documents.**

10          In addition to seeking millions of pages of documents from the MGA

11  Defendants, Mattel has issued subpoenas seeking wide-ranging categories of

12  documents from dozens of non-parties.  In particular, in the past few months, Mattel

13  has served subpoenas on non-parties who have personal, financial or business

14  relationships with the MGA Defendants, but have no connection to this litigation.

15  These subpoenas, which are summarized below, are replete with requests for

16  documents that are largely irrelevant, duplicative of materials already sought from

17  the MGA Defendants, or seek information that is obtainable from the parties or other

18  less intrusive means.

19          In September 2007, Mattel served document subpoenas on Isaac Larian's

20  brother Farhad Larian, who is a former executive and shareholder of MGA, and two

21  law firms that were involved in an arbitration between Isaac and Farhad Larian—

22  Kaye Scholer, which represented Isaac Larian, and Stern & Goldberg, which

23  represented the arbitrator.  (Park Decl., Exs. 4-5.)  Although some of the requests

24  concerned Bratz and Mattel, many were directed at a variety of unrelated matters.

25  For example, Mattel's subpoenas included numerous requests seeking all documents

26  relating in any way to any disputes between Farhad and Isaac Larian (Park Decl., Ex.

27  6 (F. Larian Subpoena) at Requests 1, 2, 4, 16, 22; Ex. 5 (Stern & Goldberg

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1  Subpoena) at Requests 1-3, 21; Ex. 4 (Kaye Scholer Subpoena) at Requests 1-3, 21);

2  and all documents relating in any way to any financial transactions or other

3  agreements between MGA, Isaac Larian or his family, on the one hand, and Farhad

4  Larian or his family, on the other (Park Decl., Ex 6 (F. Larian Subpoena) at Requests

5  3, 23, 24; Ex. 5 (Stern & Goldberg Subpoena) at Requests 4, 22, 23; Ex. 4 (Kaye

6  Scholer Subpoena) at Requests 4, 22, 23).[2]

7          On October 25, 2007, Mattel issued identical subpoenas to MGA's auditors,

8  Ernst & Young and Deloitte & Touche.  (Park Decl., Exs. 7-8.)  Only one request

9  specifically related to Bratz.  (*Id*. at Request 4.)  The other requests demanded all

10  documents related in any way to MGA audits, including "accounting records, audit

11  programs, audit reports and drafts thereof, tax returns, work papers, worksheets,

12  payroll records, financial projections, pro formas and budgets"; calculations of

13  MGA's net worth or the value of its intellectual property or goodwill; and any

14  litigation between Isaac and Farhad Larian.  (*Id*. at Requests 1-3, 6.)  Mattel also

15  requested that MGA's auditors produce documents identifying any other MGA

16  accountants or auditors.  (*Id*. at Request 8.)

17          On October 25, 2007, Mattel also issued a subpoena to Wachovia, one of

18  MGA's lenders.  (Park Decl., Ex. 9.)  As with the subpoenas to MGA's auditors, only

19  one request to Wachovia related to Bratz.  (*Id*. at Request 8.)  The other requests

20  sought all documents related in any way to any loan agreement with MGA, including

21  "accounting records, tax returns, pro formas, expense records, financial projections,

22  budgets or business plans"; calculations of MGA's net worth or the value of its

23  intellectual property or goodwill; and any litigation between Isaac and Farhad Larian.

24

25

26  [2] The subpoenas to Farhad Larian and the law firms are currently the subject of
    motions to compel that Mattel filed with the Discovery Master.  As will be pointed
27  out in the briefing on those motions, those subpoenas suffer from the same defects as
    the subpoenas at issue here.

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1  (*Id.* at Requests 1-4, 6, 7, 10.)  Mattel also demanded all communications with MGA,

2  regardless of subject matter, in 1999 and 2000.  (*Id.* at Request 5.)

3      On November 16, 2007, Mattel issued a subpoena to ConsumerQuest, a

4  market research firm that did various research work for MGA.  (Park Decl., Ex. 10.)

5  The requests sought wide-ranging categories of documents, including: all documents

6  related in any way to Bratz or Scooter Samantha, or to any work done for MGA

7  relating to those and various other MGA products (*id.* at Requests 1-5, 8, 13); all

8  documents related in any way to any work done for MGA before 2003, regardless of

9  the subject matter (*id.* at Request 6); all actual or proposed agreements with MGA,

10  Isaac Larian, Farhad Larian or Carter Bryant on any subject matter (*id.* at Request

11  12); and all documents related in any way to any litigation between Isaac and Farhad

12  Larian (*id.* at Request 14).  Mattel's subpoena also sought virtually every

13  communication between ConsumerQuest and the MGA Defendants, without

14  limitation as to time or subject.  (*Id.* at Requests 9-11.)

15      On November 20, 2007, Mattel subpoenaed MGA's bank Wells Fargo,

16  requesting all documents related in any way to MGA during a nine-year period from

17  1999 to the present.  (Park Decl., Ex. 11 at Request 1.)  Mattel also requested all

18  documents from the same nine-year period related in any way to any MGA account

19  with Wells Fargo, including "statements, monthly statements, annual statements,

20  daily transaction history reports, monthly transaction history reports, deposit reports,

21  deposit slips, canceled checks, [and] signature cards."  (*Id.* at Requests 2-5.)

22      On November 26, 2007, Mattel subpoenaed Isaac Larian's tax accounting firm,

23  Moss Adams, for all documents related in any way to MGA, Isaac or Farhad Larian,

24  any of their relatives, and two trusts established by Isaac Larian—the Isaac Larian

25  Annuity Trust and the Isaac and Angela Larian Trust (collectively, the "Larian

26

27

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

Trusts")[3]—during a nine-year period from 1999 to the present.  (Park Decl., Ex. 12 at Requests 1-5, 12.)  The documents requested by Mattel included "accounting records, tax returns and schedules (including without limitation Form 1040, Form 1099, Form 1120, Schedule E and Schedule K-1) and drafts thereof, W-2s, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro formas, budgets, account information and account statements."  (*Id*. at Requests 1-5.)

Mattel also sought numerous other documents from Moss Adams, including: all documents indicating Isaac Larian's net worth, MGA's net worth or the value of MGA's intellectual property or goodwill (*id*. at Requests 6-8); all documents related in any way to any litigation between Isaac and Farhad Larian (*id*. at Request 11); all documents related in any way to payments from MGA, Isaac Larian or any of his relatives to Mr. Bryant or any of his relatives, Veronica Marlow or any of her relatives, Paula Garcia or any of her relatives, or any former Mattel employee (*id*. at Requests 13-16).  Mattel also demanded documents identifying every auditor or accountant used by MGA, Isaac or Farhad Larian, any of their relatives, or the Larian Trusts since 1999.  (*Id*. at Request 18.)  In addition, Mattel sought documents identifying every entity in which Isaac Larian or any of his relatives ever had any ownership interest in or served as an employee, officer, director, trustee, shareholder, beneficiary or member.  (*Id*. at Request 19.)

On December 14, 2007, Mattel issued identical subpoenas to the Larian Trusts.[4]  (Park Decl., Exs. 13-14.)  The subpoenas demanded a host of documents covering virtually every aspect of the Trusts, including: all of their actual and draft

---

[3] Mattel misidentified the trusts.  The correct names of the trusts are The Isaac and Angela Larian Family Trust and The Isaac E. Larian Qualified Annuity Trust 2004.

[4] Mattel's misidentification of the trusts renders the subpoenas to them ineffective. However, assuming Mattel serves the same subpoenas on the correctly named trusts, those subpoenas should be quashed or a protective order as to those subpoenas issued for the reasons set forth herein.

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1   formation documents (*id.* at Request 1); all documents relating in any way to the

2   Larian Trusts' tax liabilities, including all actual and draft tax returns and schedules

3   from 1999 to the present (*id.* at Requests 2-3); documents showing all trustees,

4   beneficiaries, disbursements made, assets owned, or liabilities owed since 1999 (*id.*

5   at Requests 4-8); all documents related in any way to Bratz or Bryant (*id.* at Requests

6   9-10); and all documents related in any way to any litigation between Isaac and

7   Farhad Larian (*id.* at Request 12).  As with the Moss Adams subpoena, Mattel

8   demanded documents identifying every auditor or accountant used by the Larian

9   Trusts since 1999, plus documents identifying every entity in which Isaac Larian or

10   any of his relatives ever had an ownership interest or served as an employee, officer,

11   director, trustee, shareholder, beneficiary or member.  (*Id.* at Requests 14-15.)

12        All of the Non-Parties, as well as the MGA Defendants, have objected to

13   Mattel's subpoenas on the grounds that, *inter alia*, they are overly broad, unduly

14   burdensome, and seek irrelevant and/or duplicative information.  (Park Decl. Exs.

15   15-26.)  Counsel for Mattel and the MGA Defendants met and conferred on

16   December 21, 2007, in an attempt to resolve the MGA Defendants' objections to the

17   subpoenas, but they were not able to reach a resolution.  (Park Decl., ¶ 5.)

18   **III.**   **THE DISCOVERY MASTER MUST STOP MATTEL'S ABUSIVE**
19        **NON-PARTY DISCOVERY PRACTICES.**

20        **A.**   **The Federal Rules Require Mattel to Limit Its Subpoenas to**
             **Relevant Matter that Is Not Duplicative of Party Discovery and**
21            **Cannot Be Obtained Through Less Burdensome Means.**

22        A party is only entitled to seek discovery of materials and information that are

23   "relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  The need to

24   limit the permissible scope of discovery applies with even greater force in the

25   context of non-party discovery.  *See Dart Indus. Co., Inc. v. Westwood Chem. Co.,*

26   *Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and

27   should not be unnecessarily restricted, . . . the 'necessary' restriction may be broader

28

9

1  when a nonparty is the target of discovery.") (citation omitted).  Indeed, a

2  subpoenaing party must "take reasonable steps to avoid imposing undue burden or

3  expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1).

4      Where the subpoenaing party fails to properly limit the scope of its subpoena

5  such that the subpoena "subjects a person to undue burden," a court must quash or

6  modify the subpoena on timely motion.  Fed. R. Civ. P. 45(c)(3)(A)(iv).  In addition,

7  Federal Rule of Civil Procedure 26(b)(2)  requires that discovery shall be limited by

8  the court if it finds any of the following:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

15  Fed. R. Civ. P. 26(b)(2)(C).

16     A motion to quash a subpoena or for a protective order as to that subpoena

17  may be made by a party-opponent.  *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633,

18  636 (C.D. Cal. 2005) (granting defendants' motion to quash subpoena issued by

19  plaintiff); *Aliotti v. Senora*, 217 F.R.D. 496, 499 (N.D. Cal. 2003) (granting

20  defendant's motion for protective order as to subpoenas issued by plaintiff).  Indeed,

21  a party cannot merely object to a subpoena served on a nonparty; rather, the party

22  "must seek a protective order or make a motion to quash."  *Moon*, 232 F.R.D. at 636.

23     In evaluating whether a subpoena imposes an undue burden and therefore

24  must be quashed or modified, "'the court [must] weigh the burden to the subpoenaed

25  party against the value of the information to the serving party,' . . . and, in particular,

26  requires the court to consider: 'such factors as relevance, the need of the party for the

27  documents, the breadth of the document request, the time period covered by it, the

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1  particularity with which the documents are described and the burden imposed.'" *Id.*

2  at 637, quoting *Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111,

3  113  (D. Conn. 2005) (granting defendant's motion to quash subpoena because it

4  covered a ten-year period and was not limited to products at issue).

5      A subpoena is also unduly burdensome where the subpoenaing party "can

6  more easily and inexpensively obtain the documents from [another party], rather than

7  from [the] nonparty." *Moon*, 232 F.R.D. at 638.  *See also Lectrolarm Custom Sys. v.*

8  *Pelco Sales*, 212 F.R.D. 567, 573 (E.D. Cal. 2002) (issuing protective order where

9  plaintiff subpoenaed non-party for documents that plaintiff had sought from

10  defendant because the "burdensome and harassing nature of the requests clearly

11  outweigh[ed] the minimal need for the very limited amount of information that could

12  be discovered under the subpoenas"); *J & M Turner, Inc. v. Applied Bolting Tech.*

13  *Prods.*, Civil Action No. 95-2179, Civil Action No. 96-5819, 1997 U.S. Dist. LEXIS

14  4447 (E.D. Pa. Apr. 2, 1997) (granting non-party bank's motion to quash subpoena

15  seeking financial information already sought and obtained from another party).

16      Applying these principles here, there is no question that Mattel's subpoenas to

17  the Non-Parties must be quashed or, at a minimum, substantially narrowed.

18  **B.    Mattel's Subpoenas Are Abusively Drawn to Seek Irrelevant and**
19  **Duplicative Materials and Are Designed Solely to Harass the MGA**
    **Defendants and Non-Parties with whom They Have Personal,**
20  **Financial or Business Relationships.**

21      Spurning the limitations that the Federal Rules and the Court have expressly

22  imposed on non-party discovery, Mattel has spent its last few months of Phase 1

23  discovery issuing a multitude of subpoenas demanding the production of vast

24  amounts of largely irrelevant personal and financial information about the MGA

25  Defendants, every person who ever worked for or represented MGA, and every

26  conceivable relative of Isaac Larian.  As is clear from the face of Mattel's requests,

27

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1  Mattel has abused the non-party discovery process with these unnecessary and
2  harassing subpoenas.

3      This is hardly the first time that Mattel has engaged in improper non-party
4  discovery practices.  In *Mattel, Inc. v. Walking Mountain Productions*, Mattel and its
5  trial counsel, Quinn Emanuel, tried to enforce a subpoena issued to the San Francisco
6  Museum Of Modern Art ("SFMOMA"), the employer of one of the defendant's
7  experts.  The subpoena demanded not only "all documents relating to [the defendant]
8  and his works and all documents relating to Mattel or Barbie, . . . [b]ut it also
9  demanded all documents relating to the SFMOMA's 'policy or practice relating to the
10  third-party copying, reproduction, or photographing' of works in which the
11  SFMOMA had a proprietary interest—a topic that [had] no bearing on [the] litigation
12  or [the expert]."  353 F.3d at 813.

13      The district court quashed the subpoena and sanctioned Mattel, finding that
14  Mattel's subpoena was "very broad" and "abusively drawn"; that Mattel made "no
15  attempt . . . to try to tailor the information request to the immediate needs of the
16  case"; and that the subpoena was "served for the purpose of annoying and
17  harassment and not really for the purpose of getting information."  *Id*. at 813-14.
18  The Ninth Circuit affirmed the district court's order: "Given the intended protections
19  of the Rule [45] and Mattel's violation of those protections, we find that the San
20  Francisco federal district court did not abuse its discretion by quashing Mattel's
21  subpoena, and its factual findings do not display clear error."  *Id*. at 814.

22      Mattel's non-party discovery tactics in this case are as abusive and improper as
23  its tactics in *Walking Mountain*, if not more so.  Mattel's subpoenas to the Non-
24  Parties generally seek four categories of information: (1) financial information
25  regarding MGA and Isaac Larian; (2) financial information regarding non-parties,
26  including every current and former MGA employee, the Larian Trusts and every
27  conceivable relative of Mr. Larian; (3) all documents related in any way to any
28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

litigation between Isaac and Farhad Larian; and (4) various documents related to Bratz, other MGA products at issue or Carter Bryant.  Mattel's requests are so overly broad and abusively drawn that it is readily apparent that they were specifically drafted solely to burden and harass the Non-Parties and the MGA Defendants.  In addition, to the extent that any of the materials sought by Mattel are relevant, Mattel has made no effort to exclude from the scope of its subpoenas those documents that it has already obtained, sought or could seek through party discovery.

### 1.   Mattel Seeks Irrelevant and Duplicative Financial Information Regarding MGA and Isaac Larian.

Mattel has subpoenaed five different entities that perform financial services for MGA or Isaac Larian seeking virtually every scrap of paper and every byte of data pertaining to MGA and Mr. Larian's finances over the last nine years.  (Park Decl., Ex. 11 (Wells Fargo Subpoena) at Requests 1-5; Ex. 9 (Wachovia Subpoena) at Requests 1-7, 12; Exs. 7-8 (Ernst & Young and Deloitte & Touche Subpoenas) at Requests 1-3, 8; Ex. 12 (Moss Adams Subpoena) at Requests 1, 2, 6-8, 12-16, 18.)  There is no justification for issuing such expansive subpoenas covering largely irrelevant material, particularly since whatever small amount of relevant information may be covered by the subpoenas has already been requested from the parties.

When a party subpoenas an adverse party's financial information, courts are especially vigilant in limiting the subpoena's scope so that irrelevant financial information is not produced.  *See S. Cal. Hous. Rights Ctr. v. Krug,* Case No. CV 06-1420 SJO (JCx), 2006 U.S. Dist. LEXIS 65330 (C.D. Cal. Sept. 5, 2006) (denying request for production of tax return because plaintiff could not show a compelling need for the return where less intrusive means could be used to establish defendant's net worth); *In re Ashworth, Inc. Sec. Litig.*, Civil No. 99 cv 0121 L (JAH), 2002 U.S. Dist. LEXIS 27991, at *20 (S.D. Cal. May 10, 2002).  In *Ashworth*, for example, the district court quashed subpoenas issued to the defendant's financial analysts and

1   investment companies as "overwhelmingly broad in category and content" because

2   "[a]s they are phrased, the requests appear, in this Court's view, to seek all

3   documents in the third party financial analysts' possession that refer to or mention

4   Ashworth in any shape or form."  2002 U.S. Dist. LEXIS 27991, at *20.

5        Here, Mattel's subpoenas do not merely appear to ask for everything relating

6   to MGA or Mr. Larian, they *literally* demand everything.  The subpoena to MGA's

7   bank Wells Fargo, for example, demands "[a]ll DOCUMENTS REFERRING OR

8   RELATING TO MGA from January 1, 1999 to the present, inclusive."  (Park Decl.,

9   Ex. 11 at Request 1.  *See also id.* at Requests 2-5 (requesting all documents related to

10  any MGA account at Wells Fargo or any other financial institution).)  The subpoena

11  to Mr. Larian's tax accounting firm Moss Adams similarly demands "[a]ll

12  DOCUMENTS RELATING TO MGA [and] ISAAC LARIAN, including without

13  limitation accounting records, tax returns and schedules . . . and drafts thereof, W-2s,

14  work papers, worksheets, payroll records, financial statements (audited and

15  unaudited), pro formas, budgets, account information and account statements."  (Park

16  Decl., Ex. 12 at Requests 1, 2.)  Moreover, in case it was not clear enough from these

17  requests that Mattel truly wanted *everything*, Mattel gave the term "RELATING TO"

18  the broadest possible construction imaginable.  (*Id.* at 4 (defined as "referencing,

19  referring to, constituting, evidencing, pertaining to, mentioning, supporting,

20  contradicting, negating, bearing on, touching on, containing, embodying, reflecting,

21  identifying, stating, dealing with, concerning, commenting on, summarizing,

22  responding to, relating to, describing or discussing in any way.").)

23       Mattel's subpoenas to MGA's auditors and lender are equally unrestrained in

24  scope.  For example, Mattel's subpoenas request all documents relating to the

25  financial services that MGA's auditors and lender have provided MGA over the last

26  nine years.  (Park Decl., Exs. 7-8 (Ernst & Young and Deloitte & Touche Subpoenas)

27  at Request 1 ("All documents constituting or relating to MGA's annual audits . . .

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1  from the period beginning January 1, 1999 to the present."); Ex. 9 (Wachovia

2  Subpoena) at Request 1 ("All documents relating to any loan agreement . . . that

3  YOU have entered into with MGA since January 1, 1999 . . .").)  Mattel has also

4  requested that the Non-Parties produce documents identifying other lenders, auditors

5  or accountants of MGA or Mr. Larian, presumably because Mattel wants to serve

6  them with similar subpoenas.  (Park Decl., Exs. 7-8 (Ernst & Young and Deloitte &

7  Touche Subpoenas) at Request 8; Ex. 12 (Moss Adams Subpoena) at Request 18; Ex.

8  9 (Wachovia Subpoena) at Request 12.)

9       Mattel has asserted that it needs this financial information because it is

10  relevant to damages, Mattel's commercial bribery allegations, and to counter a

11  statement Mr. Larian made in a prior litigation that, as of 2007, he could not recall

12  whether he received a bonus in 2003 because MGA's owners invested the company's

13  profits back into the company.  Such inchoate assertions of relevance are insufficient

14  to justify the type of unfettered access to MGA and Mr. Larian's financial

15  information that Mattel seeks.  *See, e.g., Ocean Atlantic Woodland Corp. v. DRH*

16  *Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003).

17       In *Ocean Atlantic*, the copyright owner of real estate development plans sued a

18  developer for infringement with respect to one of its development sites.  The

19  plaintiff's "interrogatories and production requests [sought] all of the defendants'

20  financial records relating to their entire business and professional activities, on all

21  construction projects throughout the country, beginning from 1997 through present

22  date." *Id.* at 926.  Posing the question "can anything remotely relevant to the claims

23  and defenses-or more pointedly to damages-arising from use of the Development

24  Plans at the Liberty Grove development site justify this massive body of discovery,"

25  the court answered, "*We hardly think so*." *Id.* (emphasis added).  "This court

26  perceives an improper motive and purpose to this broad discovery. We cannot

27  conceive of any relevance to the claims or defenses asserted in this copyright

28

1   infringement case, or of any legitimate purpose of this massive discovery demand.

2   The production of virtually the entirety of defendants' business books and records

3   relating to all of its projects could not lead to any admissible evidence." *Id*. at 927.

4       The Discovery Master should reach the same conclusion in this case.  Mattel's

5   alleged damages in this case are tied to the particular products at issue, not MGA or

6   Mr. Larian's entire financial history.  Documents such as all of MGA and Mr.

7   Larian's tax returns, account statements and expense records, or the audit files and

8   loan documents for MGA, are neither relevant to damages in this case nor reasonably

9   calculated to lead to the discovery of admissible evidence.  *See* Fed. R. Civ. P.

10  26(b)(1).  Indeed, the Discovery Master already rejected an attempt by Mattel to

11  obtain Carter Bryant's tax returns.  (Park Decl., Ex. 27 (1/25/07 Order) at 14-15.)

12      Similarly, Mattel's assertion that the requested financial information is relevant

13  to its commercial bribery allegations is specious.  Mattel's bribery allegations consist

14  of nothing more than an assertion that MGA financed Bryant to develop Bratz while

15  he was still employed at Mattel.  Mattel's Second Am. Answer & Counterclaim at 37

16  (¶ 33), 59 (¶ 93(d)), 74 (¶ 165).  Thus, the only financial documents that could

17  possibly be relevant to this allegation are documents showing any payments by

18  MGA to Bryant during the time he was a Mattel employee.

19      Mattel's claim that it needs all of Mr. Larian's financial records to counter his

20  statement that he did not think he received a bonus in 2003 because MGA's owners

21  invested the company's profits back into MGA is nothing more than an absurd

22  fishing expedition.  *See Aliotti*, 217 F.R.D. at 498 (rejecting request for party-

23  opponent's tax returns for impeachment purposes because request was "the kind of

24  'fishing expedition' that would undermine the public policy against unnecessary

25  public disclosure of tax returns") (quotation marks and citations omitted).  Setting

26  aside the issue of relevance (which we dispute), Mattel does not need to comb

27

28

16

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1  through nine years' worth of Mr. Larian's financial records to determine whether he

2  received a bonus from MGA in 2003.  That information is obtainable from MGA.

3       In addition to seeking irrelevant material, Mattel's subpoenas contain requests

4  that are covered by one or more of the more than 2,300 document requests Mattel

5  has served on the MGA Defendants.  (Park Decl., Ex. 28 (chart comparing Mattel's

6  requests to Non-Parties with Mattel's document requests to MGA Defendants).)  For

7  example, Mattel has requested that some of the Non-Parties produce documents

8  relating to calculations of MGA and Mr. Larian's net worth and the value of MGA's

9  intellectual property and goodwill, even though Mattel has already requested the

10  same documents from the MGA Defendants.  (*Id.* at 24, 39, and 53.)  As shown

11  below, MGA has already produced numerous documents reflecting MGA's historical

12  and current financial status.  In addition, MGA is continuing to identify, offer to

13  meet and confer about, and produce other relevant, responsive documents.  There is

14  no reason for Mattel to harass non-parties for the same information.

15       Similarly, Mattel's subpoenas for financial records relating to Mr. Larian are

16  duplicative of documents that Mattel served on Mr. Larian.  The document requests

17  to Mr. Larian are the subject of a motion to compel that Mattel filed with the

18  Discovery Master and that has been taken under submission.  Regardless of how the

19  Discovery Master rules as to Mr. Larian's financial documents, resolution of that

20  motion will obviate the need for any production by the Non-Parties.  If the Discovery

21  Master orders Mr. Larian to produce financial documents, Mattel's requests to the

22  Non-Parties will be duplicative of those documents and therefore unnecessary.  If,

23  however, the Discovery Master finds that Mattel's requests to Mr. Larian seek

24  irrelevant information, that ruling would also prevent Mattel from pursuing the Non-

25  Parties for the same irrelevant information.

26       Numerous other documents requested from the Non-Parties are also

27  duplicative of documents that the MGA Defendants have already produced or will be

28

17

1  producing.  *See* Fed. R. Civ. P. 26(b)(2)(C) (limiting discovery if it "is unreasonably

2  cumulative or duplicative, or can be obtained from some other source that is more

3  convenient, less burdensome, or less expensive").  The financial documents produced

4  by the MGA Defendants to date include:

- Audited and unaudited quarterly and annual profit and loss statements;

- Audited and unaudited quarterly and annual statements;

- Annual reports;

- Various MGA financial reports;

- Various financial documents relating to Veronica Marlow;

- Documents showing royalty payments to Carter Bryant;

- Documents showing MGA's sales, returns and costs of good sold for each month, by SKU, since 2001;

- Documents showing MGA's promotional, advertising and media expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

- Documents showing MGA's amortization and depreciation of certain capital assets and expenditures;

- Documents showing MGA's monthly general ledger entries aggregated by account, including income and expense accounts, reserves and liabilities; and

- Documents sufficient to explicate MGA's various accounts as presently and historically maintained in MGA's books and records, as well as various nomenclature assigned to items, products, brands, sub-brands, and profit centers.

(Park Decl., ¶ 3.)  The MGA Defendants also will be producing or otherwise making

available to Mattel additional documents responsive to Mattel's Second Set of

Requests for Production.  (Park Decl., ¶ 4.)  In addition, since Mattel continues to

serve additional document requests, the MGA Defendants will continue to review

and respond to those requests, and to offer to meet and confer regarding the scope of

any production of documents.  (*Id.*)  In view of the ample financial documents that

the MGA Defendants have produced or will be producing, there is no basis for

Mattel to be seeking volumes of financial information from the Non-Parties.

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1    Mattel has no legitimate need to discover the entirety of MGA and Mr.

2    Larian's financial records over the last nine years.  Nor is there any reason to unduly

3    burden non-parties with expansive requests for such records when those materials

4    either are irrelevant or are properly the subject of party discovery.  The Discovery

5    Master should bar Mattel from seeking such discovery from the Non-Parties.

### 2.    Mattel Seeks Irrelevant Financial Information Regarding Many Non-Parties.

8    Mattel's subpoenas also demand financial documents regarding numerous non-

9    parties, including everyone who has ever worked for or represented MGA or Isaac

10   Larian, and every relative of Mr. Larian.  (Park Decl., Ex. 11 (Wells Fargo Subpoena)

11   at Requests 1-5; Ex. 9 (Wachovia Subpoena) at Requests 1-7, 12; Exs. 7-8 (Ernst &

12   Young and Deloitte & Touche Subpoenas) at Requests 1-3, 8; Ex. 12 (Moss Adams

13   Subpoena) at Requests 1-8, 12-16, 18, 19; Exs. 13-14 (Larian Trusts Subpoenas) at

14   Requests 1-8, 14, 15.)  Such documents are irrelevant and Mattel's efforts to discover

15   them constitute a clear abuse of the non-party discovery process.

16   Mattel's subpoenas to Moss Adams and the Larian Trusts, for example,

17   include requests that expressly demand the production of a wide array of financial

18   records relating to the Larian Trusts and Farhad Larian.  (Park Decl., Ex. 12 (Moss

19   Adams Subpoena) at Requests 3-5, 12.)  Among the documents sought from the

20   Larian Trusts are "[a]ll of [their] formation DOCUMENTS," all tax returns and any

21   other tax-related documents from 1999 to the present, and documents relating to

22   every material aspect of the Larian Trusts' operation since 1999, including every

23   trustee and beneficiary of each trust, every disbursement made by each trust, every

24   asset owned by each trust, and every liability owed by each trust.  (Park Decl., Exs.

25   13-14 (Larian Trusts Subpoenas) at Requests 1-8.)

26   The financial records of the Larian Trusts and Farhad Larian are not relevant

27   to this case.  None of them are parties to this litigation or alleged to have participated

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1 | in any of the wrongful acts charged by Mattel.  Mattel asserts that financial
2 | information regarding Farhad Larian and the Larian Trusts is relevant to show what
3 | Mr. Larian did with his money.  How Larian spent or invested his money, however,
4 | is irrelevant to the party's claims and defenses.  Mattel's conversion counterclaim, for
5 | example, alleges that Mr. Larian wrongfully obtained property and monies belonging
6 | to Mattel.  Mattel's Second Am. Answer and Counterclaim at 72-73.  *See also id.* at
7 | 76 (requesting disgorgement of monies "obtained as a result of the conduct alleged
8 | herein").  How Larian spent or invested his money does not bear on the issue of
9 | where that money came from or how Larian obtained it.  Nor is such information
10 | reasonably calculated to lead to admissible evidence regarding that issue.

11 | In addition to the Larian Trusts and Farhad Larian, Mattel has demanded that
12 | Wells Fargo, Moss Adams, Ernst & Young, Deloitte & Touche and Wachovia
13 | produce financial records for numerous non-parties by using overly broad definitions
14 | of "MGA" and "ISAAC LARIAN."  Specifically, Mattel has broadly defined "MGA"
15 | to include "any of its current or former employees, officers, directors, agents,
16 | representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-
17 | interest and successors-in-interest, and any other PERSON acting on its behalf,
18 | pursuant to its authority or subject to its control."  (Park Decl., Ex. 11 (Wells Fargo
19 | Subpoena) at 1.  *See also* Ex. 12 (Moss Adams Subpoena) at 3; Park Decl., Ex. 9
20 | (Wachovia Subpoena) at 1-2.)  Similarly, Mattel has defined "ISAAC LARIAN" to
21 | include "all of his current or former employees, agents, representatives, attorneys,
22 | accountants, vendors, consultants, independent contractors, predecessors-in-interest
23 | and successors-in-interest, relatives (whether by blood or marriage), and any other
24 | PERSON acting on his behalf, pursuant to his authority or subject to his control."
25 | (Park Decl., Ex. 12 (Moss Adams Subpoena) at 1.)

26 | Mattel's sweeping definitions have no legitimate purpose and were intended
27 | solely to harass.  Indeed, *Mattel's definition of Mr. Larian even extends to his*

28 |

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

*children.*  Mattel cannot credibly assert that the tax returns, financial statements, payroll records and other financial records for Mr. Larian's children and all of these other non-parties are even remotely relevant to proving damages or establishing or refuting any of the parties' claims or defenses.  Even if Mattel could concoct some theory of relevance, any probative value would be far outweighed by the burden and expense associated with identifying all of these individuals and searching for and collecting responsive documents, as well as by the substantial privacy interests of the many non-parties who would be affected by compliance with the subpoenas.

Mattel's attempt to seek financial records of non-parties such as the Larian Trusts, all of Mr. Larian's relatives and everyone who has ever done any work for MGA or Mr. Larian mirrors the abusive non-party discovery tactics that Mattel and Quinn Emanuel employed in *Walking Mountain*.  As was the case in *Walking Mountain*, none of the non-party information that Mattel is demanding in this case has anything to do with this litigation.  In addition, Mattel's requests are overly broad and have not been tailored in any way to focus on relevant documents that Mattel actually needs.  Indeed, Mattel appears to have deliberately drafted its requests to be as broad as possible.  The Discovery Master should respond in the same manner that the district court and Ninth Circuit responded in *Walking Mountain*—quash Mattel's subpoenas.

### 3. Mattel Seeks Irrelevant and Duplicative Information Regarding Litigation Between Isaac and Farhad Larian.

Each of Mattel's subpoenas to the Non-Parties except Wells Fargo includes a request for all documents relating to any litigation between Isaac Larian and his brother Farhad.  (Park Decl., Ex. 9 (Wachovia Subpoena) at Request 10; Exs. 7-8 (Ernst & Young and Deloitte & Touche Subpoenas) at Request 6; Ex. 12 (Moss Adams Subpoena) at Request 11; Ex. 10 (ConsumerQuest Subpoena) at Request 14; Exs. 13-14 (Larian Trusts Subpoenas) at Request 12.)  These requests are excessive

1   and unnecessary. Mattel has requested those documents from the best sources of

2   those materials and, to the extent they are relevant, has obtained or will obtain them

3   from those sources.  *See* Fed. R. Civ. P. 26(b)(2)(C) (limiting discovery where it "is

4   unreasonably cumulative or duplicative, or can be obtained from some other source

5   that is more convenient, less burdensome, or less expensive"); *Moon*, 232 F.R.D. at

6   638 (subpoena was unduly burdensome where party "can more easily and

7   inexpensively obtain the documents from [another party]").

8          Mattel's requests to the Non-Parties for documents relating to any litigation

9   between Isaac and Farhad Larian are duplicative of requests that Mattel previously

10  served on Isaac Larian, MGA, Farhad Larian, Stern & Goldberg and Kaye Scholer.

11  (Park Decl., Ex. 28 (comparison chart) at 28-29, 44, 57 and 92.)  Mattel has already

12  received some documents in response to those previously served requests and is

13  currently engaged in motion practice with respect to the production of additional

14  documents by Isaac Larian, Farhad Larian and the law firms.  (Park Decl., ¶ 6.)

15  Mattel has not asserted that the Non-Parties possess any unique set of relevant, non-

16  privileged materials relating to litigation between Isaac and Farhad Larian that

17  neither Isaac Larian, Farhad Larian, nor the law firms possess.  Under the

18  circumstances, Mattel's duplicative requests to the Non-Parties are improper.

19         As to documents that Mattel has already received, Mattel's demand that the

20  Non-Parties search for and produce the same documents is unduly burdensome.  To

21  the extent production of additional documents is ordered in connection with the

22  pending discovery motions, Mattel's requests that the Non-Parties also produce those

23  documents would be improper since Mattel would already be obtaining such

24  materials from other sources.  Moreover, to the extent it is determined that Mattel is

25  not entitled to any further production by Isaac Larian, Farhad Larian or the law firms,

26  Mattel should not be permitted to circumvent that ruling by seeking such production

27  from the Non-Parties.  Accordingly, Mattel's requests to the Non-Parties for

28

documents relating to all litigation between Isaac and Farhad Larian must be rejected.

### 4. Mattel's Requests for Documents Related to MGA's Products or Carter Bryant Are Overly Broad and Abusively Drawn.

Mattel's subpoenas to the Non-Parties also include requests for all documents relating to Bratz that they obtained from MGA and/or Isaac Larian. (Park Decl., Ex. 9 (Wachovia Subpoena) at Request 8; Exs. 7-8 (Ernst & Young and Deloitte & Touche Subpoenas) at Request 4; Ex. 12 (Moss Adams Subpoena) at Request 9; Ex. 10 (ConsumerQuest Subpoena) at Requests 1, 3, 5; Exs. 13-14 (Larian Trusts Subpoenas) at Request 9.) Mattel has also requested that the Larian Trusts and ConsumerQuest produce documents relating to Carter Bryant. (Park Decl., Exs. 13-14 (Larian Trusts Subpoenas) at Request 10; Ex. 10 (ConsumerQuest Subpoena) at Request 11.) The ConsumerQuest subpoena further requests documents relating to other MGA products or work performed for MGA. (Park Decl., Ex. 10 at Requests 2, 4, 6-8, 10, 12.) Although some documents regarding MGA's products or Mr. Bryant may be relevant, Mattel's requests are improper because they are overly broad and not tailored to exclude irrelevant or duplicative information. *See* Fed. R. Civ. P. 26(b)(2)(C); *Walking Mountain*, 353 F.3d at 813 (quashing subpoena issued by Mattel and Quinn Emanuel because "no attempt had been made to try to tailor the information request to the immediate needs of the case").

Over the past three years, Mattel has taken vast amounts of discovery regarding Bratz, other MGA products at issue and Mr. Bryant. Mattel has served the MGA Defendants with hundreds of document requests covering these subjects and has received in response to its requests more than three million pages of responsive documents. (Park Decl., ¶ 2.) For example, Mattel has already requested and obtained from MGA mountains of documents relating to Bratz. (*See, e.g.,* Park Decl., Ex. 29 (Mattel's 1st Set of RFPs to MGA) at Request 32 ("ALL DOCUMENTS prepared, written, transmitted or received (whether in whole or in part) prior to

1   January 1, 2001 that REFER OR RELATE TO BRATZ.") & Request 33 ("ALL

2   DOCUMENTS that REFER OR RELATE TO BRATZ that REFER OR RELATE

3   TO any time prior to January 1, 2001 (regardless of when such document was

4   prepared, written, transmitted or received, whether in whole or in part).").)  Similarly,

5   documents relating to market research for MGA's "4 Best Friends," "Mommy's Little

6   Patient," "Mommy's Little" and "Alienracers" products are already the subject of

7   several of Mattel's document requests to MGA.  (*See, e.g.*, Park Decl., Ex. 30

8   (Mattel's 1st Set of RFPs Re Unfair Competition) at Request 26 ("All DOCUMENTS

9   RELATING TO the target market or potential target market, and the demographics

10  of any actual, potential or prospective consumers, customer, purchasers or licensees

11  of the CONTESTED MGA PRODUCTS.") & Request 36 ("All DOCUMENTS

12  RELATING TO any consumer studies, reports, surveys, interviews or reports

13  regarding the CONTESTED MGA PRODUCTS . . .").)

14          Having had ample opportunity to take discovery regarding Bratz, the other

15  MGA products at issue, and Mr. Bryant, Mattel should not be permitted to burden

16  the Non-Parties with duplicative discovery requests.  Fed. R. Civ. P. 26(b)(2)(C);

17  *Lectrolarm*, 212 F.R.D. at 573 (granting protective order against subpoenas that

18  requested information that was already the subject of party discovery).  Even if some

19  of the documents Mattel seeks are relevant, Mattel has a duty to "take reasonable

20  steps to avoid imposing undue burden or expense on [subpoenaed non-parties]."  Fed.

21  R. Civ. P. 45(c)(1).  Such steps include tailoring the requests by specifying only the

22  relevant, non-duplicative materials that Mattel needs.  *See Walking Mountain*, 353

23  F.3d at 813 (quashing Mattel's subpoena where Mattel made "no attempt . . . to try to

24  tailor the information request to the immediate needs of the case"); *Lectrolarm*, 212

25  F.R.D. at 573 (holding that plaintiff could only obtain documents from non-party

26  "with a showing that there is specific, *relevant* information in [non-party's]

27  possession that [is not privileged]").

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

1   Mattel has made no effort to tailor its requests, but has deliberately drafted

2   them to cast as wide a net as possible.  For example, Mattel has broadly requested

3   that ConsumerQuest produce "ALL DOCUMENTS REFERRING OR RELATING

4   TO BRATZ . . . [AND] SCOOTER SAMANTHA," without any limitation as to time

5   or type of documents.  (Park Decl., Ex. 10 at Requests 1, 2.)  Mattel has also

6   demanded that ConsumerQuest produce "all DOCUMENTS REFERRING OR

7   RELATING TO any study, survey, focus group, research group or other work or

8   services for MGA that YOU conducted, facilitated or were otherwise involved with

9   prior to December 31, 2002, " which literally encompasses everything that

10  ConsumerQuest ever did for MGA prior to 2003, even if it had nothing to do with

11  Bratz or any of the other MGA products at issue.  (*Id.* at Request 6.)

12     Because Mattel has failed to take any steps, let alone reasonable steps, to avoid

13  unduly burdening the Non-Parties, its subpoenas are improper and must be quashed

14  or substantially narrowed.

15  **IV.   CONCLUSION.**

16     Mattel has misused the subpoena process by serving deliberately overbroad

17  requests in an attempt to harass and intimidate the MGA Defendants and Non-Parties.

18  Even worse, Mattel has refused to withdraw the subpoenas or make any effort to

19  narrow their scope in any meaningful way.  Accordingly, the MGA Defendants

20  respectfully request that the Discovery Master quash Mattel's subpoenas to

21  ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian

22  Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells

23  Fargo, or, at a minimum, issue a protective order substantially narrowing the scope

24  of those subpoenas and requiring Mattel to specifically identify the relevant and non-

25  duplicative information that it seeks from the Non-Parties.

26

27

28

1    DATED:  December 21, 2007

2                                              SKADDEN, ARPS, SLATE, MEAGHER &
                                               FLOM, LLP

3

4                                              By:  _____/s/_____

5                                                   Thomas J. Nolan

6                                              Attorneys for Counter-Defendants, MGA
                                               ENTERTAINMENT, INC., ISAAC
7                                              LARIAN, MGA ENTERTAINMENT (HK)
                                               LIMITED, and MGAE de MEXICO S.R.L.
8                                              de C.V.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT