# EXHIBIT 1

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10                     UNITED STATES DISTRICT COURT

11                    CENTRAL DISTRICT OF CALIFORNIA

12                            EASTERN DIVISION

13  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14              Plaintiff,                  Consolidated with
                                            Case No. CV 04-09059
15       vs.                                Case No. CV 05-02727

16  MATTEL, INC., a Delaware               MATTEL, INC.'S SECOND SET OF
    corporation,                           REQUESTS FOR DOCUMENTS AND
17                                          THINGS TO MGA
              Defendant.                    ENTERTAINMENT, INC.
18

19  AND CONSOLIDATED CASES

20

21

22         Pursuant to <u>Rule 34</u> of the <u>Federal Rules of Civil Procedure,</u>

23  Mattel, Inc. hereby requests that MGA Entertainment, Inc. ("MGA") respond to

24  these document requests ("Requests") and make available for inspection and

25  copying originals of the following documents within 30 days of service at the

26  offices of Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa

27  Street, 10th floor, Los Angeles, CA 90017.  MGA shall be obligated to supplement

28

1  responses to these requests at such times and to the extent required by <u>Rule 26(e)</u> of

2  the <u>Federal Rules of Civil Procedure</u>.

3  **I.     DEFINITIONS**

4           For purposes of these Requests, the following definitions apply:

5           A.     "YOU," "YOUR" and "MGA" means MGA Entertainment, Inc.,

6  any of its parents, subsidiaries, divisions, AFFILIATES, predecessors-in-interest

7  and successors-in-interest.  Without limiting the foregoing, MGA Entertainment,

8  Inc. includes the entities known as ABC International Traders or ABC International

9  Traders, Inc.

10          B.     "AFFILIATES" means any and all corporations, proprietorships,

11  d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

12  indirectly, in whole or in part, own or control, are under common ownership or

13  control with, or are owned or controlled by a PERSON, party or entity, including

14  without limitation each parent, subsidiary and joint venture of such PERSON, party

15  or entity.

16          C.     "PERSON" or "PERSONS" means all natural persons,

17  partnerships, corporations, joint ventures and any kind of business, legal or public

18  entity or organization, as well as its, his or her agents, representatives, employees,

19  officers and directors and any one else acting on its, his or her behalf, pursuant to

20  its, his or her authority or subject to its, his or her control.

21          D.     "BRATZ" means any project, product, doll or DESIGN ever

22  known by that name (whether in whole or in part and regardless of what such

23  project, product or doll is or has been also, previously or subsequently called) and

24  any product, doll or DESIGN or any portion thereof that is now or has ever been

25  known as, or sold or marketed under, the name or term "Bratz" (whether in whole or

26  in part and regardless of what such product, doll or DESIGN or portion thereof is or

27  has been also, previously or subsequently called) or that is now or has ever been

28  sold or marketed as part of the "Bratz" line, and each version or iteration of such

1  product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or

2  DESIGNS or any portion thereof" also includes without limitation any names,

3  fashions, accessories, artwork, packaging or any other works, materials, matters or

4  items included or associated therewith.  Without limiting the generality of the

5  foregoing and contrary to MGA's recent assertions in connection with other Mattel

6  discovery requests, the term "BRATZ" does not and shall not require that there be a

7  doll existing at the time of the event, incident or occurrence that is the subject of, or

8  otherwise relevant or responsive to, the Requests herein.

9         E.    "DESIGN" or "DESIGNS" means any and all representations,

10  whether two-dimensional or three-dimensional, and whether in tangible, digital,

11  electronic or other form, including but not limited to all works, designs, artwork,

12  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

13  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

14  practice, developments, inventions and/or improvements, as well as all other items,

15  things and DOCUMENTS in which any of the foregoing are or have been

16  expressed, embodied, contained, fixed or reflected in any manner, whether in whole

17  or in part.

18         F.    "BRATZ DOLL" means any doll that is or has ever been

19  distributed, marketed, sold or offered for sale under the name "Bratz" or as part of

20  the "Bratz" line.

21         G.    "BRATZ PRODUCT" means any product, whether two-

22  dimensional or three-dimensional, and whether in tangible, digital, electronic or

23  other form: (i) that is or has ever been distributed, marketed or sold under the name

24  "Bratz" or as part of the "Bratz" line; (ii) that depicts, incorporates, embodies,

25  consists of or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever

26  been distributed, marketed or sold in any packaging that includes the name "Bratz"

27  or depicts, incorporates, embodies, consists of or REFERS OR RELATES TO

28  BRATZ.

r7209/21328825.2

**EXHIBIT** 1
**PAGE** 3

-3-

1    H.    "BRATZ LICENSE" means any license that REFERS OR
2    RELATES TO any BRATZ PRODUCT.

3    I.    "BRATZ MOVIE" means any motion picture or film that
4    depicts, incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ
5    or any BRATZ WORK.

6    J.    "BRATZ TELEVISION SHOW" means any production
7    exhibited on television that depicts, incorporates, embodies, consists of or REFERS
8    OR RELATES TO BRATZ or any BRATZ WORK.

9    K.    "DOCUMENT" or "DOCUMENTS" means all "writings" and
10   "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil
11   Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not
12   limited to, all writings and records of every type and description including, but not
13   limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,
14   electronic mail ("e-mail"), records of telephone conversations, handwritten and
15   typewritten notes of any kind, statements, reports, minutes, recordings, transcripts,
16   and summaries of meetings, voice recordings, pictures, photographs, drawings,
17   computer cards, tapes, discs, printouts and records of all types, studies, instruction
18   manuals, policy manuals and statements, books, pamphlets, invoices, canceled
19   checks and every other device or medium by which or through which information of
20   any type is transmitted, recorded or preserved.  Without any limitation on the
21   foregoing, the term "DOCUMENT" shall include all copies that differ in any respect
22   from the original or other versions of the DOCUMENT, including, but not limited
23   to, all drafts and all copies of such drafts or originals containing initials, comments,
24   notations, insertions, corrections, marginal notes, amendments or any other variation
25   of any kind.

26   L.    "REFER OR RELATE TO" means constituting, embodying,
27   containing, referring to, commenting on, evidencing, regarding, discussing,

28

1  describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting,

2  contradicting, negating, revoking or otherwise relating to in any manner.

3        M.     "IDENTIFY" or "IDENTITY" means the following:

4              (i)    with reference to an individual or individuals, means to

5  state, fully and separately as to each, such individual's full name, any known

6  business title, current or last known business affiliation, current or last known

7  residential address, current or last known business address, current or last known

8  relationship to MGA, and current or last known telephone number.

9              (ii)   with reference to an entity or entities, means to state, fully

10  and separately as to each, such entity's full name, state (or country) of incorporation

11  or organization, present or last known address, and present or last known telephone

12  number.

13        N.    "Any" as used in these Requests includes the word "all," and the

14  word "all" as used in these Requests includes the word "any."

15        O.    The singular form of a noun or pronoun includes within its

16  meaning the plural form of the noun or pronoun so used, and vice versa; the use of

17  the masculine form of a pronoun also includes within its meaning the feminine form

18  of the pronoun so used, and vice versa; the use of any tense of any verb includes

19  also within its meaning all other tenses of the verb so used, whenever such

20  construction results in a broader request for information; and "and" includes "or"

21  and vice versa, whenever such construction results in a broader disclosure of

22  documents or information.

23  **II.**   **INSTRUCTIONS**

24        A.    YOU are to produce all requested DOCUMENTS in YOUR

25  possession, custody or control.

26        B.    If YOU contend that YOU are not required to produce certain

27  DOCUMENTS called for by these Requests on the grounds of a privilege or

28

07209/2132825.2

EXHIBIT  1
PAGE  5

-5-

MATTEL'S SECOND SET OF DOCUMENT REQUESTS TO MGA

1  protection that YOU are not prepared to waive, identify each such DOCUMENT
2  and provide the following information:

      3          1.     the date and type of the DOCUMENT, the author(s) and all
4  recipients;

      5          2.     the privilege or protection that YOU claim permits YOU to
6  withhold the DOCUMENT;

      7          3.     the title and subject matter of the DOCUMENT;

      8          4.     any additional facts on which YOU base YOUR claim of
9  privilege or protection; and

10          5.     the identity of the current custodian of the original of the
11  DOCUMENT.

12          C.     DOCUMENTS shall be produced in their original file folders, or
13  in lieu thereof, any writing on the file folder from which each such DOCUMENT is
14  taken shall be copied and appended to such DOCUMENT and the PERSON for
15  whom or department, division or office for which the DOCUMENT or the file
16  folder is maintained shall be identified.

17          D.     The DOCUMENTS should be produced in their complete and
18  unaltered form.  Attachments to DOCUMENTS should not be removed.  The
19  DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for
20  any reason, including alleged nonrelevance.  If emails are produced that had
21  attachments, the attachments shall be attached when produced.

22          E.     DOCUMENTS in electronic form shall be produced in that form.
23          F.     In the event that any DOCUMENT called for by these requests
24  has been destroyed or discarded, that DOCUMENT is to be identified by stating:

25          1.     the date and type of the DOCUMENT, the author(s) and all
26  recipients;

27          2.     the DOCUMENT's date, subject matter, number of pages, and
28  attachments or appendices;

3.   the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard;

4.   the PERSONS who were authorized to carry out such destruction or discard;

5.   the PERSONS who have knowledge of the content, origins, distribution and destruction of the DOCUMENT; and

6.   whether any copies of the document exist and, if so, the name of the custodian of each copy.

## III.   REQUESTS FOR DOCUMENTS AND THINGS

REQUEST FOR PRODUCTION NO. 1:

A sample of each BRATZ PRODUCT including, without limitation, each BRATZ DOLL, sold by YOU or YOUR licensees.

REQUEST FOR PRODUCTION NO. 2:

DOCUMENTS sufficient to IDENTIFY every PERSON who has entered into a BRATZ LICENSE with YOU or anyone acting on YOUR behalf.

REQUEST FOR PRODUCTION NO. 3:

DOCUMENTS sufficient to identify by product name, product number and SKU each BRATZ PRODUCT including, without limitation, each BRATZ DOLL, sold by YOU or YOUR licensees.

REQUEST FOR PRODUCTION NO. 4:

DOCUMENTS sufficient to show the number of units of each BRATZ DOLL sold by YOU or YOUR licensees.

REQUEST FOR PRODUCTION NO. 5:

DOCUMENTS sufficient to show the revenue received by YOU from the sale of each BRATZ DOLL sold by YOU or YOUR licensees.

REQUEST FOR PRODUCTION NO. 6:

DOCUMENTS sufficient to show YOUR cost of goods sold, unit cost and other costs for each BRATZ DOLL sold by YOU or YOUR licensees.

1  REQUEST FOR PRODUCTION NO. 7:

2  　　　　　All DOCUMENTS that evidence, reflect or REFER OR RELATE TO

3  YOUR profits from the sale of each BRATZ DOLL sold by YOU or YOUR

4  licensees.

5  REQUEST FOR PRODUCTION NO. 8:

6  　　　　　For each customer to whom YOU or YOUR licensees have ever sold

7  any BRATZ DOLL, DOCUMENTS sufficient to show the number of units of each

8  such BRATZ DOLL sold by YOU or YOUR licensees to that customer.

9  REQUEST FOR PRODUCTION NO. 9:

10  　　　　　For each customer to whom YOU or YOUR licensees have ever sold

11  any BRATZ DOLL, documents sufficient to show the revenue received by YOU

12  from each such BRATZ DOLL sold by YOU or YOUR licensees to that customer.

13  REQUEST FOR PRODUCTION NO. 10:

14  　　　　　For each customer to whom YOU or YOUR licensees have ever sold

15  any BRATZ DOLL, documents sufficient to show YOUR profits from each such

16  BRATZ DOLL sold by YOU or YOUR licensees to that customer.

17  REQUEST FOR PRODUCTION NO. 11:

18  　　　　　DOCUMENTS sufficient to show customer returns to YOU of BRATZ

19  DOLLS sold or distributed by YOU or YOUR licensees.

20  REQUEST FOR PRODUCTION NO. 12:

21  　　　　　DOCUMENTS sufficient to show customer rebates or credits given by

22  YOU or YOUR licensees to customers in connection with BRATZ DOLLS.

23  REQUEST FOR PRODUCTION NO. 13:

24  　　　　　DOCUMENTS sufficient to show, by product number or SKU, the

25  number of units of each BRATZ DOLL sold by YOU or YOUR licensees.

26

27

28

1   REQUEST FOR PRODUCTION NO. 14:

2          DOCUMENTS sufficient to show, by product number or SKU, the

3   revenue received by YOU from the sale of each BRATZ DOLL sold by YOU or

4   YOUR licensees.

5   REQUEST FOR PRODUCTION NO. 15:

6          DOCUMENTS sufficient to show, by product number or SKU, YOUR

7   cost of goods sold, unit cost and other costs for each BRATZ DOLL sold by YOU

8   or YOUR licensees.

9   REQUEST FOR PRODUCTION NO. 16:

10         All DOCUMENTS that evidence, reflect or REFER OR RELATE TO

11  YOUR profits, by product number or SKU, from the sale of each BRATZ DOLL

12  sold by YOU or YOUR licensees.

13  REQUEST FOR PRODUCTION NO. 17:

14         For each customer to whom YOU or YOUR licensees have ever sold

15  any BRATZ DOLL, DOCUMENTS sufficient to show, by product number or SKU,

16  the number of units of each such BRATZ DOLL sold by YOU or YOUR licensees

17  to that customer.

18  REQUEST FOR PRODUCTION NO. 18:

19         For each customer to whom YOU or YOUR licensees have ever sold

20  any BRATZ DOLL, DOCUMENTS sufficient to show, by product number or SKU,

21  the revenue received by YOU from each such BRATZ DOLL sold by YOU or

22  YOUR licensees to that customer.

23  REQUEST FOR PRODUCTION NO. 19:

24         For each customer to whom YOU or YOUR licensees have ever sold

25  any BRATZ DOLL, DOCUMENTS sufficient to show, by product number or SKU,

26  YOUR profits from each such BRATZ DOLL sold by YOU or YOUR licensees to

27  that customer.

28

**EXHIBIT**
**PAGE 9**

-9-

MATTEL'S SECOND SET OF DOCUMENT REQUESTS TO MGA

1  REQUEST FOR PRODUCTION NO. 20:

2          DOCUMENTS sufficient to show the revenue and profits derived by

3  YOU from the sale by YOU or YOUR licensees of BRATZ DOLLS including,

4  without limitation, DOCUMENTS sufficient to show sales revenue, costs of goods

5  sold, variable costs, gross margins, royalties paid and received, gross profits and

6  nets profits.

7  REQUEST FOR PRODUCTION NO. 21:

8          DOCUMENTS sufficient to show the number of units of each BRATZ

9  PRODUCT sold by YOU or YOUR licensees.

10  REQUEST FOR PRODUCTION NO. 22:

11          DOCUMENTS sufficient to show the revenue received by YOU from

12  the sale of each BRATZ PRODUCT sold by YOU or YOUR licensees.

13  REQUEST FOR PRODUCTION NO. 23:

14          DOCUMENTS sufficient to show YOUR cost of goods sold, unit cost

15  and other costs for each BRATZ PRODUCT sold by YOU or YOUR licensees.

16  REQUEST FOR PRODUCTION NO. 24:

17          All DOCUMENTS that evidence, reflect or REFER OR RELATE TO

18  YOUR profits from the sale of each BRATZ PRODUCT sold by YOU or YOUR

19  licensees.

20  REQUEST FOR PRODUCTION NO. 25:

21          DOCUMENTS sufficient to IDENTIFY all customers to whom YOU

22  or YOUR licensees have ever sold any BRATZ PRODUCT.

23  REQUEST FOR PRODUCTION NO. 26:

24          For each customer to whom YOU or YOUR licensees have ever sold

25  any BRATZ PRODUCT, DOCUMENTS sufficient to show the number of units of

26  each such BRATZ PRODUCT sold by YOU or YOUR licensees to that customer.

27

28

EXHIBIT __|__
PAGE |D

-10-
MATTEL'S SECOND SET OF DOCUMENT REQUESTS TO MGA

1  REQUEST FOR PRODUCTION NO. 27:

2          For each customer to whom YOU or YOUR licensees have ever sold

3  any BRATZ PRODUCT, documents sufficient to show the revenue received by

4  YOU from each such BRATZ PRODUCT sold by YOU or YOUR licensees to that

5  customer.

6  REQUEST FOR PRODUCTION NO. 28:

7          For each customer to whom YOU or YOUR licensees have ever sold

8  any BRATZ PRODUCT, documents sufficient to show YOUR profits from each

9  such BRATZ PRODUCT sold by YOU or YOUR licensees to that customer.

10  REQUEST FOR PRODUCTION NO. 29:

11          DOCUMENTS sufficient to show customer returns to YOU of BRATZ

12  PRODUCTS sold or distributed by YOU or YOUR licensees.

13  REQUEST FOR PRODUCTION NO. 30:

14          DOCUMENTS sufficient to show customer rebates and credits given

15  by YOU or YOUR licensees to customers in connection with BRATZ DOLLS.

16  REQUEST FOR PRODUCTION NO. 31:

17          DOCUMENTS sufficient to show, by product number or SKU, the

18  number of units of each BRATZ PRODUCT sold by YOU or YOUR licensees.

19  REQUEST FOR PRODUCTION NO. 32:

20          DOCUMENTS sufficient to show, by product number or SKU, the

21  revenue received by YOU from the sale of each BRATZ PRODUCT sold by YOU

22  or YOUR licensees.

23  REQUEST FOR PRODUCTION NO. 33:

24          DOCUMENTS sufficient to show, by product number or SKU, YOUR

25  cost of goods sold, unit cost and other costs for each BRATZ PRODUCT sold by

26  YOU or YOUR licensees.

27

28

EXHIBIT  \
PAGE  \ \

-11-

MATTEL'S SECOND SET OF DOCUMENT REQUESTS TO MGA

1 | REQUEST FOR PRODUCTION NO. 34:

2 |       All DOCUMENTS that evidence, reflect or REFER OR RELATE TO

3 | YOUR profits, by product number or SKU, from the sale of each BRATZ

4 | PRODUCT sold by YOU or YOUR licensees.

5 | REQUEST FOR PRODUCTION NO. 35:

6 |       For each customer to whom YOU or YOUR licensees have ever sold

7 | any BRATZ PRODUCT, DOCUMENTS sufficient to show, by product number or

8 | SKU, the number of units of each such BRATZ PRODUCT sold by YOU or YOUR

9 | licensees to that customer.

10 | REQUEST FOR PRODUCTION NO. 36:

11 |       For each customer to whom YOU or YOUR licensees have ever sold

12 | any BRATZ PRODUCT, DOCUMENTS sufficient to show, by product number or

13 | SKU, the revenue received by YOU from each such BRATZ PRODUCT sold by

14 | YOU or YOUR licensees to that customer.

15 | REQUEST FOR PRODUCTION NO. 37:

16 |       DOCUMENTS sufficient to show the revenue and profits derived by

17 | YOU from the sale by YOU or YOUR licensees of BRATZ PRODUCTS including,

18 | without limitation, DOCUMENTS sufficient to show sales revenue, costs of goods

19 | sold, variable costs, gross margins, royalties paid and received, gross profits and

20 | nets profits.

21 | REQUEST FOR PRODUCTION NO. 38:

22 |       DOCUMENTS sufficient to show the revenue and profits derived by

23 | YOU from BRATZ MOVIES including, without limitation, DOCUMENTS

24 | sufficient to show sales revenue, costs of goods sold, variable costs, gross margins,

25 | royalties paid and received, gross profits and net profits.

26 | REQUEST FOR PRODUCTION NO. 39:

27 |       DOCUMENTS sufficient to show the revenue and profits derived by

28 | YOU from BRATZ TELEVISION SHOWS including, without limitation,

1  DOCUMENTS sufficient to show sales revenue, costs of goods sold, variable costs,

2  gross margins, royalties paid and received, gross profits and net profits.

3  REQUEST FOR PRODUCTION NO. 40:

4          All DOCUMENTS that describe YOUR cost allocation procedures.

5  REQUEST FOR PRODUCTION NO. 41:

6          YOUR general ledgers from January 1, 1995 through the present.

7  REQUEST FOR PRODUCTION NO. 42:

8          All quarterly and annual profit and loss statements for BRATZ.

9  REQUEST FOR PRODUCTION NO. 43:

10         All sales, profit and cash flow projections or forecasts for BRATZ

11  DOLLS, BRATZ PRODUCTS, BRATZ MOVIES and BRATZ TELEVISION

12  SHOWS.

13  REQUEST FOR PRODUCTION NO. 44:

14         All DOCUMENTS that REFER OR RELATE TO the value of the

15  Bratz brand.

16  REQUEST FOR PRODUCTION NO. 45:

17         DOCUMENTS sufficient to calculate YOUR net worth on a yearly

18  basis for each year from 1999 to the present.

19

20

21

22

23

24

25

26

27

28

1   REQUEST FOR PRODUCTION NO. 46:

2          All DOCUMENTS that evidence, reflect or REFER OR RELATE TO

3   the BRATZ DOLL's share of the fashion doll market including, without limitation,

4   the extent to which Bratz has been or is gaining or losing market share in the fashion

5   doll market.

6   DATED:  June 6, 2007

7                                    QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
8

9                                    By
10                                      Scott B. Kidman
                                        Attorneys for Mattel, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1        **PROOF OF SERVICE**

2        I am employed in the County of Los Angeles, State of California.  I am over the age
of eighteen years and not a party to the within action; my business address is 865 South
3    Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

4        On June 6, 2007, I served true copies of the following document(s) described as
**MATTEL, INC.'S SECOND SET OF REQUEST FOR DOCUMENTS AND
5    THINGS TO MGA ENTERTAINMENT, INC.** on the parties in this action as follows:

6        John W. Keker                          Patricia Glaser, Esq.
**Keker & Van Nest, LLP**              **Christensen, Glaser, Fink, Jacobs,**
7        710 Sansome Street                     **Weil & Shapiro, LLP**
San Francisco, CA 94111                10250 Constellation Blvd., 19th Floor
8                                               Los Angeles, CA  90067

9    **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above,
and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was
10   mailed with postage thereon fully prepaid.

11       I declare that I am employed in the office of a member of the bar of this Court at
whose direction the service was made.
12

13       Executed on June 6, 2007, at Los Angeles, California.

14

15                                          Helen Lim

07209/2134423.1

**EXHIBIT 1**
**PAGE 15**

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California. I am over the age
of eighteen years and not a party to the within action; my business address is Now Legal
3 Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4      On June 6, 2007, I served true copies of the following document(s) described as
**MATTEL, INC.'S SECOND SET OF REQUESTS FOR DOCUMENTS AND
5 THINGS TO MGA ENTERTAINMENT, INC.** on the parties in this action as follows:

6      Diana M. Torres, Esq.
**O'MELVENY & MYERS, LLP**
7      400 S. Hope Street
Los Angeles, CA 90071

8

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the
9 person(s) being served.

10      I declare that I am employed in the office of a member of the bar of this Court at
whose direction the service was made.

11

      Executed on June 6, 2007, at Los Angeles, California.

12

13                                         _David Quintana_

14                                         David Quintana

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2134409.1

EXHIBIT __1__
PAGE __16__

# EXHIBIT 2

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:   (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10                 UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12                      EASTERN DIVISION

13  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14              Plaintiff,                  Consolidated with
                                            Case No. CV 04-09059
15        vs.                               Case No. CV 05-02727

16  MATTEL, INC., a Delaware               MATTEL, INC.'S FIRST SET OF
    corporation,                           REQUESTS FOR DOCUMENTS AND
17                                          THINGS TO MGA
              Defendant.                    ENTERTAINMENT (HK) LIMITED
18

19  AND CONSOLIDATED CASES

20

21

22        Pursuant to Rule 34 of the Federal Rules of Civil Procedure,

23  Mattel, Inc. hereby requests that MGA Entertainment (HK) Limited respond to these

24  document requests ("Requests") and make available for inspection and copying

25  originals of the following documents within 30 days of service at the offices of

26  Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th

27  floor, Los Angeles, CA 90017.  MGA Entertainment (HK) Limited shall be

28

7209/2137142.1

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO MGA ENTERTAINMENT (HK) LIMITED

EXHIBIT 2
PAGE 17

1  obligated to supplement responses to these requests at such times and to the extent

2  required by Rule 26(e) of the Federal Rules of Civil Procedure.

3  **I.   DEFINITIONS**

4              For purposes of these Requests, the following definitions apply:

5           A.    "YOU" and "YOUR" means MGA Entertainment (HK) Limited,

6  any of its parents, subsidiaries, divisions, AFFILIATES, predecessors-in-interest

7  and successors-in-interest.  Without limiting the foregoing, MGA Entertainment

8  (HK) Limited includes the entities known as Krisson Limited and Micro Games Far

9  East (HK) Limited.

10          B.    "AFFILIATES" means any and all corporations, proprietorships,

11  d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

12  indirectly, in whole or in part, own or control, are under common ownership or

13  control with, or are owned or controlled by a PERSON, party or entity, including

14  without limitation each parent, subsidiary and joint venture of such PERSON, party

15  or entity.

16          C.    "PERSON" or "PERSONS" means all natural persons,

17  partnerships, corporations, joint ventures and any kind of business, legal or public

18  entity or organization, as well as its, his or her agents, representatives, employees,

19  officers and directors and any one else acting on its, his or her behalf, pursuant to

20  its, his or her authority or subject to its, his or her control.

21          D.    "BRATZ" means any project, product, doll or DESIGN ever

22  known by that name (whether in whole or in part and regardless of what such

23  project, product or doll is or has been also, previously or subsequently called) and

24  any product, doll or DESIGN or any portion thereof that is now or has ever been

25  known as, or sold or marketed under, the name or term "Bratz" (whether in whole or

26  in part and regardless of what such product, doll or DESIGN or portion thereof is or

27  has been also, previously or subsequently called) or that is now or has ever been

28  sold or marketed as part of the "Bratz" line, and each version or iteration of such

-2-

**EXHIBIT 2**

**PAGE 19**

1  product, doll or DESIGN or any portion thereof. As used herein, "product, doll or

2  DESIGNS or any portion thereof" also includes without limitation any names,

3  fashions, accessories, artwork, packaging or any other works, materials, matters or

4  items included or associated therewith. Without limiting the generality of the

5  foregoing and contrary to MGA's recent assertions in connection with other Mattel

6  discovery requests, the term "BRATZ" does not and shall not require that there be a

7  doll existing at the time of the event, incident or occurrence that is the subject of, or

8  otherwise relevant or responsive to, the Requests herein.

9       E.   "DESIGN" or "DESIGNS" means any and all representations,

10 whether two-dimensional or three-dimensional, and whether in tangible, digital,

11 electronic or other form, including but not limited to all works, designs, artwork,

12 sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

13 diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

14 practice, developments, inventions and/or improvements, as well as all other items,

15 things and DOCUMENTS in which any of the foregoing are or have been

16 expressed, embodied, contained, fixed or reflected in any manner, whether in whole

17 or in part.

18      F.   "BRATZ DOLL" means any doll that is or has ever been

19 distributed, marketed, sold or offered for sale under the name "Bratz" or as part of

20 the "Bratz" line.

21      G.   "BRATZ PRODUCT" means any product, whether two-

22 dimensional or three-dimensional, and whether in tangible, digital, electronic or

23 other form: (i) that is or has ever been distributed, marketed or sold under the name

24 "Bratz" or as part of the "Bratz" line; (ii) that depicts, incorporates, embodies,

25 consists of or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever

26 been distributed, marketed or sold in any packaging that includes the name "Bratz"

27 or depicts, incorporates, embodies, consists of or REFERS OR RELATES TO

28 BRATZ.

17209/2137142.1

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO MGA ENTERTAINMENT (HK) LIMITED

EXHIBIT __2__
PAGE __19__

1        H.    "BRATZ LICENSE" means any license that REFERS OR

2 RELATES TO any BRATZ PRODUCT.

3        I.    "BRATZ MOVIE" means any motion picture or film that

4 depicts, incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ

5 or any BRATZ WORK.

6        J.    "BRATZ TELEVISION SHOW" means any production

7 exhibited on television that depicts, incorporates, embodies, consists of or REFERS

8 OR RELATES TO BRATZ or any BRATZ WORK.

9        K.    "DOCUMENT" or "DOCUMENTS" means all "writings" and

10 "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil

11 Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not

12 limited to, all writings and records of every type and description including, but not

13 limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,

14 electronic mail ("e-mail"), records of telephone conversations, handwritten and

15 typewritten notes of any kind, statements, reports, minutes, recordings, transcripts

16 and summaries of meetings, voice recordings, pictures, photographs, drawings,

17 computer cards, tapes, discs, printouts and records of all types, studies, instruction

18 manuals, policy manuals and statements, books, pamphlets, invoices, canceled

19 checks and every other device or medium by which or through which information of

20 any type is transmitted, recorded or preserved.  Without any limitation on the

21 foregoing, the term "DOCUMENT" shall include all copies that differ in any respect

22 from the original or other versions of the DOCUMENT, including, but not limited

23 to, all drafts and all copies of such drafts or originals containing initials, comments,

24 notations, insertions, corrections, marginal notes, amendments or any other variation

25 of any kind.

26        L.    "REFER OR RELATE TO" means constituting, embodying,

27 containing, referring to, commenting on, evidencing, regarding, discussing,

28

209/2137142.1

EXHIBIT  2
PAGE  20

1  describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting,

2  contradicting, negating, revoking or otherwise relating to in any manner.

3        M.    "IDENTIFY" or "IDENTITY" means the following:

4            (i)    with reference to an individual or individuals, means to

5  state, fully and separately as to each, such individual's full name, any known

6  business title, current or last known business affiliation, current or last known

7  residential address, current or last known business address, current or last known

8  relationship to MGA Entertainment (HK) Limited, and current or last known

9  telephone number.

10            (ii)    with reference to an entity or entities, means to state, fully

11  and separately as to each, such entity's full name, state (or country) of incorporation

12  or organization, present or last known address, and present or last known telephone

13  number.

14        N.    "Any" as used in these Requests includes the word "all," and the

15  word "all" as used in these Requests includes the word "any."

16        O.    The singular form of a noun or pronoun includes within its

17  meaning the plural form of the noun or pronoun so used, and vice versa; the use of

18  the masculine form of a pronoun also includes within its meaning the feminine form

19  of the pronoun so used, and vice versa; the use of any tense of any verb includes

20  also within its meaning all other tenses of the verb so used, whenever such

21  construction results in a broader request for information; and "and" includes "or"

22  and vice versa, whenever such construction results in a broader disclosure of

23  documents or information.

24  II.    <u>INSTRUCTIONS</u>

25        A.    YOU are to produce all requested DOCUMENTS in YOUR

26  possession, custody or control.

27        B.    If YOU contend that YOU are not required to produce certain

28  DOCUMENTS called for by these Requests on the grounds of a privilege or

1 protection that YOU are not prepared to waive, identify each such DOCUMENT
2 and provide the following information:

      1.    the date and type of the DOCUMENT, the author(s) and all
            recipients;

      2.    the privilege or protection that YOU claim permits YOU to
            withhold the DOCUMENT;

      3.    the title and subject matter of the DOCUMENT;

      4.    any additional facts on which YOU base YOUR claim of
            privilege or protection; and

      5.    the identity of the current custodian of the original of the
            DOCUMENT.

      C.    DOCUMENTS shall be produced in their original file folders, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT and the PERSON for whom or department, division or office for which the DOCUMENT or the file folder is maintained shall be identified.

      D.    The DOCUMENTS should be produced in their complete and unaltered form. Attachments to DOCUMENTS should not be removed. The DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for any reason, including alleged nonrelevance. If emails are produced that had attachments, the attachments shall be attached when produced.

      E.    DOCUMENTS in electronic form shall be produced in that form.

      F.    In the event that any DOCUMENT called for by these requests has been destroyed or discarded, that DOCUMENT is to be identified by stating:

      1.    the date and type of the DOCUMENT, the author(s) and all
            recipients;

      2.    the DOCUMENT's date, subject matter, number of pages, and
            attachments or appendices;

-6-
EXHIBIT  2
PAGE  22

3.  the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard;

4.  the PERSONS who were authorized to carry out such destruction or discard;

5.  the PERSONS who have knowledge of the content, origins, distribution and destruction of the DOCUMENT; and

6.  whether any copies of the document exist and, if so, the name of the custodian of each copy.

## III.   REQUESTS FOR DOCUMENTS AND THINGS

REQUEST FOR PRODUCTION NO. 1:

A sample of each BRATZ PRODUCT including, without limitation, each BRATZ DOLL, sold by YOU or YOUR licensees.

REQUEST FOR PRODUCTION NO. 2:

DOCUMENTS sufficient to IDENTIFY every PERSON who has entered into a BRATZ LICENSE with YOU or anyone acting on YOUR behalf.

REQUEST FOR PRODUCTION NO. 3:

DOCUMENTS sufficient to identify by product name, product number and SKU each BRATZ PRODUCT including, without limitation, each BRATZ DOLL, sold by YOU or YOUR licensees.

REQUEST FOR PRODUCTION NO. 4:

DOCUMENTS sufficient to show the number of units of each BRATZ DOLL sold by YOU or YOUR licensees.

REQUEST FOR PRODUCTION NO. 5:

DOCUMENTS sufficient to show the revenue received by YOU from the sale of each BRATZ DOLL sold by YOU or YOUR licensees.

REQUEST FOR PRODUCTION NO. 6:

DOCUMENTS sufficient to show YOUR cost of goods sold, unit cost and other costs for each BRATZ DOLL sold by YOU or YOUR licensees.

07209/2137142.1

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO MGA ENTERTAINMENT (HK) LIMITED

EXHIBIT 2
PAGE 23

1  REQUEST FOR PRODUCTION NO. 7:

2          All DOCUMENTS that evidence, reflect or REFER OR RELATE TO

3  YOUR profits from the sale of each BRATZ DOLL sold by YOU or YOUR

4  licensees.

5  REQUEST FOR PRODUCTION NO. 8:

6          For each customer to whom YOU or YOUR licensees have ever sold

7  any BRATZ DOLL, DOCUMENTS sufficient to show the number of units of each

8  such BRATZ DOLL sold by YOU or YOUR licensees to that customer.

9  REQUEST FOR PRODUCTION NO. 9:

10          For each customer to whom YOU or YOUR licensees have ever sold

11  any BRATZ DOLL, documents sufficient to show the revenue received by YOU

12  from each such BRATZ DOLL sold by YOU or YOUR licensees to that customer.

13  REQUEST FOR PRODUCTION NO. 10:

14          For each customer to whom YOU or YOUR licensees have ever sold

15  any BRATZ DOLL, documents sufficient to show YOUR profits from each such

16  BRATZ DOLL sold by YOU or YOUR licensees to that customer.

17  REQUEST FOR PRODUCTION NO. 11:

18          DOCUMENTS sufficient to show customer returns to YOU of BRATZ

19  DOLLS sold or distributed by YOU or YOUR licensees.

20  REQUEST FOR PRODUCTION NO. 12:

21          DOCUMENTS sufficient to show customer rebates or credits given by

22  YOU or YOUR licensees to customers in connection with BRATZ DOLLS.

23  REQUEST FOR PRODUCTION NO. 13:

24          DOCUMENTS sufficient to show, by product number or SKU, the

25  number of units of each BRATZ DOLL sold by YOU or YOUR licensees.

26

27

28

7209/2137142.1

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO MGA ENTERTAINMENT (HK) LIMITED

EXHIBIT  2
PAGE  24

1   REQUEST FOR PRODUCTION NO. 14:

2              DOCUMENTS sufficient to show, by product number or SKU, the

3   revenue received by YOU from the sale of each BRATZ DOLL sold by YOU or

4   YOUR licensees.

5   REQUEST FOR PRODUCTION NO. 15:

6              DOCUMENTS sufficient to show, by product number or SKU, YOUR

7   cost of goods sold, unit cost and other costs for each BRATZ DOLL sold by YOU

8   or YOUR licensees.

9   REQUEST FOR PRODUCTION NO. 16:

10             All DOCUMENTS that evidence, reflect or REFER OR RELATE TO

11  YOUR profits, by product number or SKU, from the sale of each BRATZ DOLL

12  sold by YOU or YOUR licensees.

13  REQUEST FOR PRODUCTION NO. 17:

14             For each customer to whom YOU or YOUR licensees have ever sold

15  any BRATZ DOLL, DOCUMENTS sufficient to show, by product number or SKU,

16  the number of units of each such BRATZ DOLL sold by YOU or YOUR licensees

17  to that customer.

18  REQUEST FOR PRODUCTION NO. 18:

19             For each customer to whom YOU or YOUR licensees have ever sold

20  any BRATZ DOLL, DOCUMENTS sufficient to show, by product number or SKU,

21  the revenue received by YOU from each such BRATZ DOLL sold by YOU or

22  YOUR licensees to that customer.

23  REQUEST FOR PRODUCTION NO. 19:

24             For each customer to whom YOU or YOUR licensees have ever sold

25  any BRATZ DOLL, DOCUMENTS sufficient to show, by product number or SKU,

26  YOUR profits from each such BRATZ DOLL sold by YOU or YOUR licensees to

27  that customer.

28

EXHIBIT _2_

PAGE _25_

)7209/2137142.1

1  REQUEST FOR PRODUCTION NO. 20:

2        DOCUMENTS sufficient to show the revenue and profits derived by

3  YOU from the sale by YOU or YOUR licensees of BRATZ DOLLS including,

4  without limitation, DOCUMENTS sufficient to show sales revenue, costs of goods

5  sold, variable costs, gross margins, royalties paid and received, gross profits and

6  nets profits.

7  REQUEST FOR PRODUCTION NO. 21:

8        DOCUMENTS sufficient to show the number of units of each BRATZ

9  PRODUCT sold by YOU or YOUR licensees.

10  REQUEST FOR PRODUCTION NO. 22:

11        DOCUMENTS sufficient to show the revenue received by YOU from

12  the sale of each BRATZ PRODUCT sold by YOU or YOUR licensees.

13  REQUEST FOR PRODUCTION NO. 23:

14        DOCUMENTS sufficient to show YOUR cost of goods sold, unit cost

15  and other costs for each BRATZ PRODUCT sold by YOU or YOUR licensees.

16  REQUEST FOR PRODUCTION NO. 24:

17        All DOCUMENTS that evidence, reflect or REFER OR RELATE TO

18  YOUR profits from the sale of each BRATZ PRODUCT sold by YOU or YOUR

19  licensees.

20  REQUEST FOR PRODUCTION NO. 25:

21        DOCUMENTS sufficient to IDENTIFY all customers to whom YOU

22  or YOUR licensees have ever sold any BRATZ PRODUCT.

23  REQUEST FOR PRODUCTION NO. 26:

24        For each customer to whom YOU or YOUR licensees have ever sold

25  any BRATZ PRODUCT, DOCUMENTS sufficient to show the number of units of

26  each such BRATZ PRODUCT sold by YOU or YOUR licensees to that customer.

27

28

-10-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO MGA ENTERTAINMENT (HK) LIMITED

EXHIBIT 2
PAGE 26

1  REQUEST FOR PRODUCTION NO. 27:

2          For each customer to whom YOU or YOUR licensees have ever sold

3  any BRATZ PRODUCT, documents sufficient to show the revenue received by

4  YOU from each such BRATZ PRODUCT sold by YOU or YOUR licensees to that

5  customer.

6  REQUEST FOR PRODUCTION NO. 28:

7          For each customer to whom YOU or YOUR licensees have ever sold

8  any BRATZ PRODUCT, documents sufficient to show YOUR profits from each

9  such BRATZ PRODUCT sold by YOU or YOUR licensees to that customer.

10 REQUEST FOR PRODUCTION NO. 29:

11         DOCUMENTS sufficient to show customer returns to YOU of BRATZ

12 PRODUCTS sold or distributed by YOU or YOUR licensees.

13 REQUEST FOR PRODUCTION NO. 30:

14         DOCUMENTS sufficient to show customer rebates and credits given

15 by YOU or YOUR licensees to customers in connection with BRATZ DOLLS.

16 REQUEST FOR PRODUCTION NO. 31:

17         DOCUMENTS sufficient to show, by product number or SKU, the

18 number of units of each BRATZ PRODUCT sold by YOU or YOUR licensees.

19 REQUEST FOR PRODUCTION NO. 32:

20         DOCUMENTS sufficient to show, by product number or SKU, the

21 revenue received by YOU from the sale of each BRATZ PRODUCT sold by YOU

22 or YOUR licensees.

23 REQUEST FOR PRODUCTION NO. 33:

24         DOCUMENTS sufficient to show, by product number or SKU, YOUR

25 cost of goods sold, unit cost and other costs for each BRATZ PRODUCT sold by

26 YOU or YOUR licensees.

27

28

-11-

EXHIBIT 2
PAGE 27

1  REQUEST FOR PRODUCTION NO. 34:

2          All DOCUMENTS that evidence, reflect or REFER OR RELATE TO

3  YOUR profits, by product number or SKU, from the sale of each BRATZ

4  PRODUCT sold by YOU or YOUR licensees.

5  REQUEST FOR PRODUCTION NO. 35:

6          For each customer to whom YOU or YOUR licensees have ever sold

7  any BRATZ PRODUCT, DOCUMENTS sufficient to show, by product number or

8  SKU, the number of units of each such BRATZ PRODUCT sold by YOU or YOUR

9  licensees to that customer.

10  REQUEST FOR PRODUCTION NO. 36:

11         For each customer to whom YOU or YOUR licensees have ever sold

12  any BRATZ PRODUCT, DOCUMENTS sufficient to show, by product number or

13  SKU, the revenue received by YOU from each such BRATZ PRODUCT sold by

14  YOU or YOUR licensees to that customer.

15  REQUEST FOR PRODUCTION NO. 37:

16         DOCUMENTS sufficient to show the revenue and profits derived by

17  YOU from the sale by YOU or YOUR licensees of BRATZ PRODUCTS including,

18  without limitation, DOCUMENTS sufficient to show sales revenue, costs of goods

19  sold, variable costs, gross margins, royalties paid and received, gross profits and

20  nets profits.

21  REQUEST FOR PRODUCTION NO. 38:

22         DOCUMENTS sufficient to show the revenue and profits derived by

23  YOU from BRATZ MOVIES including, without limitation, DOCUMENTS

24  sufficient to show sales revenue, costs of goods sold, variable costs, gross margins,

25  royalties paid and received, gross profits and net profits.

26  REQUEST FOR PRODUCTION NO. 39:

27         DOCUMENTS sufficient to show the revenue and profits derived by

28  YOU from BRATZ TELEVISION SHOWS including, without limitation,

1   DOCUMENTS sufficient to show sales revenue, costs of goods sold, variable costs,

2   gross margins, royalties paid and received, gross profits and net profits.

3   REQUEST FOR PRODUCTION NO. 40:

4           All DOCUMENTS that describe YOUR cost allocation procedures.

5   REQUEST FOR PRODUCTION NO. 41:

6           YOUR general ledgers from January 1, 1995 through the present.

7   REQUEST FOR PRODUCTION NO. 42:

8           All quarterly and annual profit and loss statements for BRATZ.

9   REQUEST FOR PRODUCTION NO. 43:

10          All sales, profit and cash flow projections or forecasts for BRATZ

11  DOLLS, BRATZ PRODUCTS, BRATZ MOVIES and BRATZ TELEVISION

12  SHOWS.

13  REQUEST FOR PRODUCTION NO. 44:

14          All DOCUMENTS that REFER OR RELATE TO the value of the

15  Bratz brand.

16  REQUEST FOR PRODUCTION NO. 45:

17          DOCUMENTS sufficient to calculate YOUR net worth on a yearly

18  basis for each year from 1999 to the present.

19

20

21

22

23

24

25

26

27

28

-13-

EXHIBIT  2
PAGE  29

1  REQUEST FOR PRODUCTION NO. 46:

2          All DOCUMENTS that evidence, reflect or REFER OR RELATE TO

3  the BRATZ DOLL's share of the fashion doll market including, without limitation,

4  the extent to which Bratz has been or is gaining or losing market share in the fashion

5  doll market.

6  DATED:  June 6, 2007

7                                          QUINN EMANUEL URQUHART OLIVER &
                                           HEDGES, LLP
8

9                                    By_____

10                                          Scott B. Kidman
                                           Attorneys for Mattel, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2       I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South

3  Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

4       On June 6, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS**

5  **TO MGA ENTERTAINMENT (HK) LIMITED** on the parties in this action as follows:

6  John W. Keker                         Patricia Glaser, Esq.
   **Keker & Van Nest, LLP**            **Christensen, Glaser, Fink, Jacobs,**

7  710 Sansome Street                    **Weil & Shapiro, LLP**
   San Francisco, CA 94111               10250 Constellation Blvd., 19th Floor

8                                        Los Angeles, CA  90067

9  **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was

10  mailed with postage thereon fully prepaid.

11       I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

12

13       Executed on June 6, 2007, at Los Angeles, California.

14

15  Helen Lim

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2134423.1

EXHIBIT  2
PAGE  37

# EXHIBIT 3

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant.<br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>MATTEL, INC.'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS TO MGA ENTERTAINMENT, INC. |

1    Pursuant to <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u>,

2    Mattel, Inc. hereby requests that MGA Entertainment, Inc. ("MGA") respond to

3    these document requests ("Requests") and make available for inspection and

4    copying originals of the following documents within 30 days of service at the

5    offices of Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa

6    Street, 10th floor, Los Angeles, CA 90017.  MGA shall be obligated to supplement

7    responses to these requests at such times and to the extent required by <u>Rule</u> 26(e) of

8    the <u>Federal Rules of Civil Procedure</u>.

9

10    **I.    DEFINITIONS**

11    A.    "YOU," "YOUR" and "MGA" means MGA Entertainment, Inc.

12    and all current or former subsidiaries, divisions, AFFILIATES, predecessors-in-

13    interest and successors-in-interest.  Without limiting the foregoing, MGA

14    Entertainment, Inc. includes ABC International Traders and ABC International

15    Traders, Inc.

16    B.    "LARIAN" means Isaac Larian, any FAMILY MEMBER of

17    Isaac Larian, and any trust of which Isaac Larian is a trustee or of which any

18    FAMILY MEMBER of Isaac Larian is a beneficiary including, without limitation,

19    the Isaac and Angela Larian Trust and the Isaac Larian Annuity Trust.

20    B.    "DOCUMENT" or "DOCUMENTS" means all "writings" and

21    "recordings" as those terms are defined in <u>Rule</u> 1001 of the <u>Federal Rules of</u>

22    <u>Evidence</u> and <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and shall include all

23    writings, including but not limited to handwriting, typewriting, printing, image,

24    photograph, photocopy, digital file of any kind, transmittal by (or as an attachment

25    to) electronic mail (including instant messages and text messages) or facsimile,

26    video and audio recordings, and every other means of recording upon any tangible

27    thing, any form of communication or representation, and any record thereby created,

28    regardless of the manner in which the record has been stored, and all non-identical

1  copies of such DOCUMENTS, in the possession, custody, or control of YOU,

2  YOUR counsel, or any other PERSON acting on YOUR behalf.

3    C.    "AFFILIATES" means any and all corporations, proprietorships,

4  d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

5  indirectly, in whole or in part, own or control, are under common ownership or

6  control with, or are owned or controlled by a PERSON, party or entity, including

7  without limitation each parent, subsidiary and joint venture of such PERSON, party

8  or entity.

9    D.    "IDENTIFY" or "IDENTITY" means the following:

10    (a)    With reference to an individual, means such individual's name,

11  current or last known business title, current or last known business affiliation,

12  current or last known relationship to YOU, current or last known residential and

13  business address, and current or last known telephone number.

14    (b)    With reference to an account with a bank or financial institution,

15  means the name and address of the bank or financial institution, the account

16  number(s) for or otherwise associated with such account and the name of each

17  holder, including without limitation each beneficial holder, of each such account.

18    E.    "FAMILY MEMBER" means any PERSON who at any time is,

19  was or has been a parent, spouse, child or sibling of another PERSON.

20    F.    "RELATING," "RELATING TO," "REFERRING OR

21  RELATING TO," or "REFER OR RELATE TO" means any and all of the following

22  terms and their synonyms:  refer to, discuss, constitute, evidence, pertain to,

23  mention, support, contradict, negate, bear on, touch on, contain, embody, reflect,

24  identify, state, deal with, concern, comment on, summarize, respond to, relate to, or

25  describe.

26    G.    "PERSON," in the plural as well as the singular, means any

27  natural person, association, partnership, corporation, joint venture, government

28

07209/2302419.1

1   entity, organization, trust, institution, proprietorship, or any other entity recognized

2   as having an existence under the laws in the United States or any other nation.

3           H.      The singular form of a noun or pronoun includes within its

4   meaning the plural form of the noun or pronoun so used, and vice versa; the use of

5   the masculine form of a pronoun also includes within its meaning the feminine form

6   of the pronoun so used, and vice versa; the use of any tense of any verb includes

7   also within its meaning all other tenses of the verb so used, whenever such

8   construction results in a broader request for information; and "and" includes "or"

9   and vice versa, whenever such construction results in a broader disclosure of

10  documents or information.

11

12  **II.    <u>INSTRUCTIONS</u>**

13          A.      YOU are to produce all requested DOCUMENTS in YOUR

14  possession, custody or control.

15          B.      If YOU contend that YOU are not required to produce certain

16  DOCUMENTS called for by these Requests on the grounds of a privilege or

17  protection that YOU are not prepared to waive, identify each such DOCUMENT

18  and provide the following information:

19          1.      the date and type of the DOCUMENT, the author(s) and all

20                  recipients;

21          2.      the privilege or protection that YOU claim permits YOU to

22                  withhold the DOCUMENT;

23          3.      the title and subject matter of the DOCUMENT;

24          4.      any additional facts on which YOU base YOUR claim of

25                  privilege or protection; and

26          5.      the identity of the current custodian of the original of the

27                  DOCUMENT.

28

1        C.    DOCUMENTS shall be produced in their original file folders, or

2    in lieu thereof, any writing on the file folder from which each such DOCUMENT is

3    taken shall be copied and appended to such DOCUMENT and the PERSON for

4    whom or department, division or office for which the DOCUMENT or the file

5    folder is maintained shall be identified.

6        D.    The DOCUMENTS should be produced in their complete and

7    unaltered form.  Attachments to DOCUMENTS should not be removed.  The

8    DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for

9    any reason, including alleged nonrelevance.  If emails are produced that had

10   attachments, the attachments shall be attached when produced.

11       E.    DOCUMENTS in electronic form shall be produced in that form.

12       F.    In the event that any DOCUMENT called for by these requests

13   has been destroyed or discarded, that DOCUMENT is to be identified by stating:

14       1.    the date and type of the DOCUMENT, the author(s) and all

15           recipients;

16       2.    the DOCUMENT's date, subject matter, number of pages, and

17           attachments or appendices;

18       3.    the date of destruction or discard, manner of destruction or

19           discard, and reason for destruction or discard;

20       4.    the PERSONS who were authorized to carry out such destruction

21           or discard;

22       5.    the PERSONS who have knowledge of the content, origins,

23           distribution and destruction of the DOCUMENT; and

24       6.    whether any copies of the document exist and, if so, the name of

25           the custodian of each copy.

26

27

28

**EXHIBIT** 3

**PAGE** 36

-5-

MATTEL, INC.'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS

1    **III.**    **REQUESTS FOR DOCUMENTS AND THINGS**

2

3    <u>REQUEST FOR PRODUCTION NO. 1</u>:

4          YOUR Articles of Incorporation and any amendments thereto.

5

6    <u>REQUEST FOR PRODUCTION NO. 2</u>:

7          YOUR By-Laws and any amendments thereto.

8

9    <u>REQUEST FOR PRODUCTION NO. 3</u>:

10          YOUR Notice of Incorporation as it appeared when first published and

11 any amendments thereto.

12

13    <u>REQUEST FOR PRODUCTION NO. 4</u>:

14          YOUR quarterly and annual profits and loss statements (both audited

15 and unaudited) from the date of YOUR incorporation to 1999.

16

17    <u>REQUEST FOR PRODUCTION NO. 5</u>:

18          YOUR quarterly and annual financial statements (both audited and

19 unaudited) from the date of YOUR incorporation to 1999.

20

21    <u>REQUEST FOR PRODUCTION NO. 6</u>:

22          YOUR general ledger from the date of YOUR incorporation to 1999.

23

24    <u>REQUEST FOR PRODUCTION NO. 7</u>:

25          YOUR federal and state tax returns for each year from the date of

26 YOUR incorporation to the present.

27

28

1    REQUEST FOR PRODUCTION NO. 8:

2           DOCUMENTS sufficient to evidence any and all meetings of

3    shareholders of MGA, including the date, time and location of the meeting and the

4    IDENTITY of each PERSON in attendance.

5

6    REQUEST FOR PRODUCTION NO. 9:

7           The minutes of all meetings of shareholders of MGA.

8

9    REQUEST FOR PRODUCTION NO. 10:

10          DOCUMENTS sufficient to evidence any and all meetings of the board

11   of directors of MGA, including the date, time and location of the meeting and the

12   IDENTITY of each PERSON in attendance.

13

14   REQUEST FOR PRODUCTION NO. 11:

15          The minutes of all meetings of the board of directors of MGA.

16

17   REQUEST FOR PRODUCTION NO. 12:

18          DOCUMENTS sufficient to show any and all salary, benefits or any

19   other compensation paid to LARIAN or any business affiliated with LARIAN,

20   including to whom the payments were made, the amounts paid and the dates of

21   payment.

22

23   REQUEST FOR PRODUCTION NO. 13:

24          DOCUMENTS sufficient to show any and all payments or transfers of

25   anything of value to LARIAN or any business affiliated with LARIAN, including to

26   whom the payments or transfers were made, the amounts of the payments or the

27   value of the item transferred and the dates of the payments or transfers.

28

1 | REQUEST FOR PRODUCTION NO. 14:

2 |       Statements for accounts maintained by YOU at any bank or other

3 | financial institution sufficient to show any and all payments to LARIAN or any

4 | business affiliated with LARIAN.

5

6 | REQUEST FOR PRODUCTION NO. 15:

7 |       DOCUMENTS sufficient to show any and all payments of dividends to

8 | LARIAN or any business affiliated with LARIAN, including to whom the dividends

9 | were paid, the amounts paid and the dates of payment.

10

11 | REQUEST FOR PRODUCTION NO. 16:

12 |       DOCUMENTS sufficient to show any and all distributions to LARIAN

13 | or any business affiliated with LARIAN, including to whom the distributions were

14 | made, the amounts of the distributions and the dates the distributions were made.

15

16 | REQUEST FOR PRODUCTION NO. 17:

17 |       DOCUMENTS sufficient to show any and all advances of funds to

18 | LARIAN or any business affiliated with LARIAN for services to be performed at a

19 | later date, including the amount of the advance, the date of the advance, the services

20 | to be performed, whether the services were performed and, if so, when they were

21 | performed.

22

23 | REQUEST FOR PRODUCTION NO. 18:

24 |       DOCUMENTS sufficient to show any and all gifts to LARIAN or any

25 | business affiliated with LARIAN, including to whom the gift was made, when the

26 | gift was made, the nature, amount and value of the gift and the reasons for making

27 | the gift.

28

1 | REQUEST FOR PRODUCTION NO. 19:

2 | DOCUMENTS sufficient to show any and all loans from MGA to

3 | LARIAN or any business affiliated with LARIAN, including the date of the loan,

4 | the amount of the loan, the interest rate, if any, whether the loan has been repaid or

5 | forgiven in whole or in part and, if so, when and by whom.

6 |

7 | REQUEST FOR PRODUCTION NO. 20:

8 | DOCUMENTS sufficient to show any and all loans from LARIAN or

9 | any business affiliated with LARIAN to MGA, including the date of the loan, the

10 | amount of the loan, the interest rate, if any, whether the loan has been repaid or

11 | forgiven in whole or in part and, if so, when and by whom.

12 |

13 | REQUEST FOR PRODUCTION NO. 21:

14 | DOCUMENTS sufficient to show any and all obligations of LARIAN

15 | or any business affiliated with LARIAN guaranteed or cosigned by MGA, including

16 | the IDENTITY of the PERSON whose obligation was guaranteed or cosigned, the

17 | identity of the creditor or lender, the nature and amount of the obligation, the date

18 | the obligation was guaranteed or cosigned, whether the obligation has been satisfied

19 | and, if so, when and by whom.

20 |

21 | REQUEST FOR PRODUCTION NO. 22:

22 | DOCUMENTS sufficient to show any and all obligations of MGA

23 | guaranteed or cosigned by LARIAN or any business affiliated with LARIAN,

24 | including the IDENTITY of the PERSON who guaranteed or cosigned the

25 | obligation, the identity of the creditor or lender, the nature and amount of the

26 | obligation, the date the obligation was guaranteed or cosigned, whether the

27 | obligation has been satisfied and, if so, when and by whom.

28 |

1  REQUEST FOR PRODUCTION NO. 23:

2          DOCUMENTS sufficient to IDENTIFY each and every PERSON who

3  has owned stock in MGA at any time including, without limitation, DOCUMENTS

4  sufficient to show whether such PERSON is a FAMILY MEMBER of Isaac Larian.

5

6  REQUEST FOR PRODUCTION NO. 24:

7          For each PERSON who has owned stock in MGA, DOCUMENTS

8  sufficient to show the number of shares of stock owned by such PERSON, the

9  percentage of shares owned as measured against the total outstanding shares, the

10  dates upon which the PERSON acquired the shares, the consideration paid or

11  promised for the shares and the dates on which such consideration was paid or

12  promised.

13

14  REQUEST FOR PRODUCTION NO. 25:

15          DOCUMENTS sufficient to show the total outstanding shares of MGA

16  stock at any time from the incorporation of MGA to the present.

17

18  REQUEST FOR PRODUCTION NO. 26:

19          All DOCUMENTS that REFER OR RELATE TO the issuance of

20  MGA stock certificates any time since the incorporation of MGA to the present,

21  including without limitation to whom they were issued and the dates of issuance.

22

23  REQUEST FOR PRODUCTION NO. 27:

24          All DOCUMENTS, including without limitation all

25  COMMUNICATIONS, that REFER OR RELATE TO the purchase, sale, transfer,

26  alienation, pledge, hypothecation or alienation of MGA stock or any ownership

27  interest in MGA.

28

07209/2302419.1

EXHIBIT __3____
PAGE __4)__                    -10-
                    MATTEL, INC.'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS

1   REQUEST FOR PRODUCTION NO. 28:

2          All DOCUMENTS, including without limitation all

3   COMMUNICATIONS, that REFER OR RELATE TO any instance in which any

4   shareholder, stockholder or other owner of any interest in MGA lost, misplaced or

5   was unable to locate original MGA stock certificates or in which any shareholder,

6   stockholder or other owner of any interest in MGA requested that any PERSON

7   attest to or assert such loss, misplacement or inability to locate, including without

8   limitation the emails between Isaac Larian and Jahangir Makabi requesting that

9   Makabi sign an affidavit that he lost his original stock certificates despite Makabi's

10   protestation that he never had any such certificates.

11

12   REQUEST FOR PRODUCTION NO. 29:

13          All DOCUMENTS that REFER OR RELATE TO how MGA was

14   capitalized upon its incorporation including, without limitation, the IDENTITY of

15   each PERSON who purchased or subscribed to stock in MGA, the number of shares

16   purchased or subscribed by each such PERSON, the amount paid or promised for

17   the shares purchased or subscribed by each such PERSON and the dates such

18   amounts were paid or promised.

19

20   REQUEST FOR PRODUCTION NO. 30:

21          DOCUMENTS sufficient to show how MGA has been capitalized from

22   the date of its incorporation to the present.

23

24   REQUEST FOR PRODUCTION NO. 31:

25          DOCUMENTS sufficient to show any and all payments of dividends to

26   any shareholder of MGA, including to whom the dividends were paid, the amounts

27   paid and the dates of payment.

28

1  REQUEST FOR PRODUCTION NO. 32:

2        DOCUMENTS sufficient to show any and all distributions to any

3  shareholders of MGA, including to whom the distributions were made, the amounts

4  of the distributions and the dates the distributions were made.

5

6  REQUEST FOR PRODUCTION NO. 33:

7        DOCUMENTS sufficient to IDENTIFY each PERSON who has served

8  as an officer or director of MGA including, without limitation, the offices or

9  positions held by each such PERSON and the dates such offices or positions were

10 held.

11

12 REQUEST FOR PRODUCTION NO. 34:

13       DOCUMENTS sufficient to show any and all salary, benefits or any

14 other compensation paid to any officer, director or shareholder of MGA, including

15 to whom the payments were made, the amounts paid and the dates of payment.

16

17 REQUEST FOR PRODUCTION NO. 35:

18       DOCUMENTS sufficient to show any and all payments or transfers of

19 anything of value to any officer, director or shareholder of MGA, including to

20 whom the payments or transfers were made, the amounts of the payments or the

21 value of the item transferred and the dates of the payments or transfers.

22

23 REQUEST FOR PRODUCTION NO. 36:

24       DOCUMENTS sufficient to show any and all salary, benefits or any

25 other compensation paid to any officer, director or shareholder of MGA, including

26 to whom the payments were made, the amounts paid and the dates of payment.

27

28

**EXHIBIT 3**
**PAGE 43**

-12-
MATTEL, INC.'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS

1    REQUEST FOR PRODUCTION NO. 37:

2            DOCUMENTS sufficient to show any and all payments or transfers of

3    anything of value to any officer, director or shareholder of MGA, including to

4    whom the payments or transfers were made, the amounts of the payments or the

5    value of the item transferred and the dates of the payments or transfers.

6

7    REQUEST FOR PRODUCTION NO. 38:

8            DOCUMENTS sufficient to show any and all salary, benefits or any

9    other compensation paid to any FAMILY MEMBER of any officer, director or

10   shareholder of MGA, including to whom the payments were made, the amounts paid

11   and the dates of payment.

12

13   REQUEST FOR PRODUCTION NO. 39:

14           DOCUMENTS sufficient to show any and all payments or transfers of

15   anything of value to any FAMILY MEMBER of any officer, director or shareholder

16   of MGA, including to whom the payments or transfers were made, the amounts of

17   the payments or the value of the item transferred and the dates of the payments or

18   transfers.

19

20   REQUEST FOR PRODUCTION NO. 40:

21           Statements for accounts maintained by YOU at any bank or other

22   financial institution sufficient to show any and all payments to any officer, director

23   or shareholder of MGA.

24

25   REQUEST FOR PRODUCTION NO. 41:

26           Statements for accounts maintained by YOU at any bank or other

27   financial institution sufficient to show any and all payments to any FAMILY

28   MEMBER of any officer, director or shareholder of MGA.

1  REQUEST FOR PRODUCTION NO. 42:

2          DOCUMENTS sufficient to show any and all advances of funds to any

3  officer, director or shareholder of MGA for services to be performed at a later date,

4  including the amount of the advance, the date of the advance, the services to be

5  performed, whether they were performed and when they were performed.

6

7  REQUEST FOR PRODUCTION NO. 43:

8          DOCUMENTS sufficient to show any and all gifts to any officer,

9  director or shareholder of MGA, including to whom the gift was made, when the gift

10  was made, the nature, amount and value of the gift and the reason for making the

11  gift.

12

13  REQUEST FOR PRODUCTION NO. 44:

14          DOCUMENTS sufficient to show any and all gifts to any FAMILY

15  MEMBER of any officer, director or shareholder of MGA, including to whom the

16  gift was made, when the gift was made, the nature, amount and value of the gift and

17  the reason for making the gift.

18

19  REQUEST FOR PRODUCTION NO. 45:

20          DOCUMENTS sufficient to show any and all obligations of any

21  officer, director or shareholder of MGA guaranteed or cosigned by MGA, including

22  the IDENTITY of the PERSON whose obligation was guaranteed or cosigned, the

23  identity of the creditor or lender, the nature and amount of the obligation, the date

24  the obligation was guaranteed or cosigned, whether the obligation has been satisfied

25  and, if so, by whom.

26

27

28

1   REQUEST FOR PRODUCTION NO. 46:

2           DOCUMENTS sufficient to show any and all obligations of MGA

3   guaranteed or cosigned by any officer, director, shareholder or employee of MGA,

4   including the IDENTITY of the PERSON who guaranteed or cosigned the

5   obligation, the identity of the creditor or lender, the nature and amount of the

6   obligation, the date the obligation was guaranteed or cosigned, whether the

7   obligation has been satisfied and, if so, by whom.

8

9   REQUEST FOR PRODUCTION NO. 47:

10          For each account maintained in the name of MGA at any bank or other

11  financial institution, a copy of each and every monthly statement from the date of

12  YOUR incorporation to the present, and DOCUMENTS sufficient to IDENTIFY

13  each PERSON authorized to sign checks on or access the account.

14

15  DATED:  November 27, 2007

16                              QUINN EMANUEL URQUHART OLIVER &
                                HEDGES, LLP
17

18                          By _____

19                              Scott B. Kidman
                                Attorneys for Mattel, Inc.
20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2       I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service,
3  1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4       On November 27, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS TO**
5  **MGA ENTERTAINMENT, INC.** on the parties in this action as follows:

6

7       Thomas Nolan, Esq.
       **SKADDEN ARPS SLATE MEAGHER**
8       **& FLOM, LLP**
       300 South Grand Avenue, Suite 3400
9       Los Angeles, CA 90071

10

**BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s)
11  being served.

12       I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.
13

14       Executed on November 27, 2007, at Los Angeles, California.

15

16       NOW LEGAL -- Dave Quintana

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  3
PAGE  47

-1-

1

## **PROOF OF SERVICE**

2         I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa

3     Street, 10th Floor, Los Angeles, California 90017-2543.

4     On November 27, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S FIFTH SET OF REQUESTS FOR DOCUMENTS AND THINGS TO**

5     **MGA ENTERTAINMENT, INC.** on the parties in this action as follows:

6         Mark E. Overland, Esq.               Michael H. Page, Esq.
    David C. Scheper, Esq.             **KEKER & VAN NEST, LLP**

7         Alexander H. Cote                 710 Sansome Street
    **OVERLAND BORENSTEIN**       San Francisco, CA 94111

8         **SCHEPER & KIM LLP**
    300 South Grand Avenue, Suite 2750

9         Los Angeles, CA 90071-3144

10    **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with

11    postage thereon fully prepaid.

12        I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

13

14        Executed on November 27, 2007, at Los Angeles, California.

15

16        Charlene Ho

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT** *3*
**PAGE** *48*

# EXHIBIT 4

🔖 AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### CENTRAL   DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation

**SUBPOENA IN A CIVIL CASE**

V.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

Case Number:[1] CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059 and
CV 05-2727

TO:  Kaye Scholer LLP
     1999 Avenue of the Stars, Suite 1700
     Los Angeles, CA 90067-6048

[ ]  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

[ ]  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

[X]  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP 865 South Figueroa St., 10th Floor Los Angeles, CA 90017 | September 20, 2007 9:00 a.m. |

[ ]  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Michael T. Zeller* Attorney for Plaintiff, Mattel, Inc. | September 6, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Michael T. Zeller, Esq., QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017  (213) 443-3000

(See Rule 45, Federal Rules of **EXHIBIT  4** ), on next page)
[1] If action is pending in district other than district of issuance, state district und **PAGE 99**

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT 4
PAGE 50

## ATTACHMENT A

## Documents To Be Produced

1.    **DEFINITIONS.**

      a.    "YOU" or "YOUR" means Kaye Scholer LLP, and all of YOUR current or former employees, attorneys, including partners, associates and shareholders, agents, representatives, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control, including without limitation Larry Feldman, Esq., Robert Turner, Esq. and Raymond Warner, Esq. and J. Andrew Sjoblom, Esq.

      b.    "FARHAD LARIAN" means Farhad Larian, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

      c.    "MORAD ZARABI" means Morad Zarabi, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

      d.    "ISAAC LARIAN" means Isaac Larian, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

      e.    "BRYANT" means Carter Bryant, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

      f.    "ERNEST DUTCHER" means Ernest Dutcher, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors,

1

EXHIBIT 4
PAGE 57

consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

g.    "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

h.    "ANGEL" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Angel" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Angel" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  Without limiting the generality of the foregoing, the term "ANGEL" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

i.    "PRAYER ANGELS" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Prayer Angels" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Prayer Angels" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  Without limiting

the generality of the foregoing, the term "PRAYER ANGELS" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

      j.    "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, concepts, ideas, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part. the phrase "product, doll or DESIGN or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

      k.    "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

      l.    "MATTEL" means Mattel, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

      m.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

      n.    "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, COMMUNICATIONS,

EXHIBIT  4
PAGE  53

facsimiles, electronic mail, records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including without limitation all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

o.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

p.    "RELATING TO" means referencing, referring to, constituting, evidencing, pertaining to, mentioning, supporting, contradicting, negating, bearing on, touching on, containing, embodying, reflecting, identifying, stating, dealing with, concerning, commenting on, summarizing, responding to, relating to, describing or discussing in any way.

q.    "FAMILY MEMBER" means any PERSON who at any time is, was or has been a spouse or child of another PERSON.

r.    "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether permanently, temporarily or otherwise, to create, generate, transmit, copy, retain, store or maintain DIGITAL INFORMATION. "DIGITAL INFORMATION" means any information created, maintained or stored digitally, including but not limited to electronically, magnetically or optically.

s.    "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly Mattel, Inc. v. Bryant, first filed in Los Angeles County Superior Court; Bryant v. Mattel, Inc.; and MGA

EXHIBIT 4
PAGE 54

Entertainment, Inc. v. Mattel, Inc.; and all counterclaims, cross-claims and defenses therein.

   t.  The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and vice versa, whenever such construction results in a broader disclosure of DOCUMENTS or information.

## 2. INSTRUCTIONS.

   a.  YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

   b.  If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

     (1)  The privilege or protection that you claim precludes disclosure;

     (2)  The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

     (3)  The date, author(s), addressee(s); and

     (4)  Any additional facts on which YOU would base YOUR claim of privilege or protection.

   c.  YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

   d.  YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

EXHIBIT 4
PAGE 55

e.    Each DOCUMENT shall be produced in its original file folder, or
in lieu thereof, any writing on the file folder from which each such DOCUMENT is
taken shall be copied and appended to such DOCUMENT.

3.    <u>DOCUMENTS TO BE PRODUCED.</u>

(1)    All DOCUMENTS, including all COMMUNICATIONS, RELATING
TO any and all lawsuits and/or arbitrations between FARHAD LARIAN and ISAAC
LARIAN, including without limitation all video and/or sound recordings, transcripts,
exhibits, memoranda, witness statements, declarations, affidavits and sworn testimony
given by any PERSON in connection therewith.

(2)    All DOCUMENTS, including all COMMUNICATIONS, RELATING
TO Los Angeles Superior Court Case No. BC301371 filed by FARHAD LARIAN
against ISAAC LARIAN and/or any related proceedings, including any appeal
thereof, and including without limitation all video and/or sound recordings,
transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations,
affidavits and sworn testimony given by any PERSON in connection with such suit
and/or related proceedings and/or any appeal related to such lawsuit.

(3)    All DOCUMENTS RELATING TO Los Angeles Superior Court Case
No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN, MORAD
ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any appeal of
such lawsuit, including without limitation all video and/or sound recordings,
transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations,
affidavits and sworn testimony given by any PERSON in connection with such suit
and/or related proceedings and/or any appeal related to such lawsuit.

(4)    All DOCUMENTS RELATING TO any contract or agreement, or any
proposed, offered or requested contract or agreement, between FARHAD LARIAN
and/or any FAMILY MEMBER of FARHAD LARIAN, on the one hand, and ISAAC
LARIAN and/or MGA, on the other hand, at any time since January 1, 1999,
including without limitation any and all actual, proposed, offered or requested
amendments or modifications thereto, and including without limitation: (a) the
Agreement for Sale of Stock, entered into on or about December 4, 2000, (b) the
Agreement to Arbitrate and Selection of Arbitrator between FARHAD LARIAN and
ISAAC LARIAN, (c) any and all employment and consulting agreements RELATING

EXHIBIT 4
PAGE 56

TO FARHAD LARIAN, (d) any and all settlements, resolutions or compromises of
any kind, and (e) any and all fee or indemnification agreements.

(5)    All DOCUMENTS RELATING TO BRYANT, including without
limitation his agreement with MGA dated "as of" September 18, 2000, his work on
BRATZ and his employment by MATTEL.

(6)    All DOCUMENTS RELATING TO BRATZ that discuss, concern or
reference the time period prior to January 1, 2002, regardless of when such
DOCUMENT was generated, created, received or transmitted.

(7)    All DOCUMENTS RELATING TO the creation, conception,
development, design or origins of BRATZ, including without limitation all statements
by ISAAC LARIAN, BRYANT or any other PERSON relating thereto at any time.

(8)    All COMMUNICATIONS to or from YOU, FARHAD LARIAN,
ISAAC LARIAN, MORAD ZARABI, BRYANT, Veronica Marlow, Mercedeh Ward,
Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy) and/or
Anna Rhee RELATING TO BRATZ, including without limitation all diaries, notes,
calendars, logs, phone records, letters and other DOCUMENTS relating thereto.

(9)    All planners and calendars, including without limitation any Franklin
planner or Outlook calendar, used by FARHAD LARIAN, ISAAC LARIAN or any
other PERSON at MGA RELATING TO the time period between January 1, 1999 and
December 31, 2001, inclusive.

(10)    All DOCUMENTS RELATING TO the timing of any meetings between
FARHAD LARIAN and anyone at MGA RELATING TO BRATZ, including but not
limited to any planners, calendars, or other meeting records.

(11)    All DOCUMENTS that REFER OR RELATE to any ownership rights or
interest, or any claimed or alleged ownership rights or interest, in BRATZ.

(12)    All DOCUMENTS, including all COMMUNICATIONS, RELATING
TO any actual, proposed, contemplated, considered or potential copyright, patent,
trademark, design rights or any other application or registration RELATING TO
BRATZ.

EXHIBIT 4
PAGE 57

(13)   All DOCUMENTS RELATING TO ANGEL.

(14)   All DOCUMENTS RELATING TO PRAYER ANGELS.

(15)   All DOCUMENTS RELATING TO Elise Cloonan or any of her
FAMILY MEMBERS, including without limitation all such COMMUNICATIONS
RELATING TO BRYANT, MATTEL, BRATZ, ISAAC LARIAN, MGA and/or
Anna Rhee, and including without limitation all diaries, notes, calendars, logs, phone
records,   letters   and   other   DOCUMENTS   RELATING   TO   such
COMMUNICATIONS.

(16)   ALL DOCUMENTS RELATING TO any financial appraisal of MGA
and/or BRATZ, including without limitation any appraisal or appraisals performed by
ERNEST DUTCHER and any instructions given to ERNEST DUTCHER regarding
such appraisal or appraisals.

(17)   All DOCUMENTS RELATING TO any financial or other information
considered, relied upon or used in any manner to conduct any valuation or appraisal of
MGA and/or BRATZ, including without limitation for the time period from January 1,
1999 to December 31, 2001.

(18)   All DOCUMENTS RELATING TO the value of MGA and/or BRATZ at
any time since January 1, 1999.

(19)   All DOCUMENTS RELATING TO allegations that ISAAC LARIAN
concealed from FARHAD LARIAN and/or MORAD ZARABI facts relating to
BRATZ and/or BRYANT.

(20)   All DOCUMENTS RELATING TO the meeting on or about January 26,
2003 between FARHAD LARIAN, MORAD ZARABI, ISAAC LARIAN and Mike
Shenasafar, including without limitation all notes and video and/or sound recordings
relating thereto.

(21)   DOCUMENTS sufficient to identify any and all appraisers, accountants
and consultants who participated or were involved in any lawsuit or arbitration,
including pre-arbitration proceedings, or any other dispute between FARHAD
LARIAN and ISAAC LARIAN RELATING TO MGA or BRATZ.

(22)   All DOCUMENTS RELATING TO any and all payments of money or transfers of anything of value that ISAAC LARIAN, his FAMILY MEMBERS and/or MGA have made, have offered or have proposed, promised or agreed to make, to or for the benefit of FARHAD LARIAN or his FAMILY MEMBERS at any time from January 1, 1999 through the present.

(23)   All DOCUMENTS RELATING TO any and all payments of money or transfers of anything of value that any PERSON has made, has offered or has proposed, promised or agreed to make, to or for the benefit of FARHAD LARIAN or his FAMILY MEMBERS and that was related in any way to BRATZ, BRYANT, MGA or this ACTION at any time from January 1, 1999 through the present.

(24)   All DOCUMENTS RELATING TO any royalties paid, proposed, offered or promised to or for the benefit of any PERSON RELATING TO BRATZ, including without limitation any such royalties paid, proposed, offered or promised to or for the benefit of ISAAC LARIAN and/or FARHAD LARIAN.

(25)   All DOCUMENTS RELATING TO this ACTION, including all COMMUNICATIONS relating thereto.

(26)   All COMMUNICATIONS between FARHAD LARIAN and MATTEL since January 1, 1999, and all DOCUMENTS relating thereto.

(27)   All DOCUMENTS that FARHAD LARIAN and/or YOU showed MATTEL at any time since January 1, 1999, including without limitation all such DOCUMENTS that attorneys for FARHAD LARIAN showed MATTEL in connection with this ACTION, including without limitation each of the following:

(a)   The MGA email dated November 16, 2000 that summarizes "last week's meeting" with K-Mart and references BRATZ.

(b)   FARHAD LARIAN's email to ISAAC LARIAN dated November 22, 2000 mentioning prices for a "Bratz Fashion Pack."

(c)   The November 22, 2000 chart describing changes to the Bratz Doll Assortment and Bratz Holiday doll.

EXHIBIT 4
PAGE 59

(d)     FARHAD LARIAN's August 19, 2005 email to Scott Bachrach (at scottbac@aol.com) inquiring about the first contact between Mr. Bachrach and MGA concerning BRATZ, as well as associated COMMUNICATIONS.

(e)     FARHAD LARIAN's August 22, 2005 email to Colleen O'Higgins asking about BRYANT and BRATZ, as well as associated COMMUNICATIONS.

(f)     The COMMUNICATIONS with Bin Ton, Michael Lingg and Jennifer Maurus regarding BRATZ, including without limitation those relating to actual and/or draft declaration(s) by the foregoing regarding BRATZ.

(g)     The December 21, 2000 email from ISAAC LARIAN to Paul Warner, with copies to Dennis Medici and FARHAD LARIAN, that mentions TRU purchases for products including BRATZ.

(h)     FARHAD LARIAN's August 1, 2005 email to Victoria O'Connor regarding BRATZ licensees, as well as associated COMMUNICATIONS.

(i)     FARHAD LARIAN's August 1, 2005 email chain with employees at dng.com asking about BRATZ, as well as associated COMMUNICATIONS.

(j)     The August 7, 2005 email from Mark Fragel responding to questions regarding BRATZ materials shown to Paulette Prim in November 2000.

(k)     FARHAD LARIAN's May 24, 2000 email to ISAAC LARIAN that states ISAAC LARIAN had instructed FARHAD LARIAN to withhold original documents that had been located in connection with the Fireman's Fund case and "to tell him [an MGA attorney] we could not find the originals."

(l)     The document entitled "Analysis of Design, Packaging & Mock-Up Expense for 6 Months Ending 6/30/99 and 6/30/00" attached to the August 11, 2000 email from Dennis Medici to ISAAC LARIAN and FARHAD LARIAN.

(m)     The August 14, 2000 ISAAC LARIAN email to Medici, Warner and FARHAD LARIAN that references cost tracking software used by MATTEL that ISAAC LARIAN says he learned about from interviewing MATTEL employees.

EXHIBIT    4
PAGE    60

(n)   The emails between ISAAC LARIAN and Jahangir Makabi requesting that Mr. Makabi sign an affidavit that he lost his original stock certificates despite Mr. Makabi's protestation that he never had any such certificates, as well as associated COMMUNICATIONS.

(o)   The January 31, 2001 email from ISAAC LARIAN to All in Marketing and Product Development, Medici and Didi Brown asserting that he (ISAAC LARIAN) had been purportedly diagnosed with "Alzheimer's" and denying in substance that he ever said anything that cannot be confirmed by a writing.

(p)   The November 15, 2000 Paula Treantafelles email to FARHAD LARIAN that says MGA will be selling a BRATZ backpack and states that a design for it is attached.

(28)   All DOCUMENTS that MATTEL provided to YOU and/or FARHAD LARIAN, or provided for YOUR review and/or for the review of FARHAD LARIAN, since January 1, 1999.

(29)   All DOCUMENTS RELATING TO the payment, offering or promising of money or anything of value by ISAAC LARIAN, MGA and/or FARHAD LARIAN to any PERSON who was at the time employed by or worked for MATTEL.

(30)   All DOCUMENTS, since January 1, 1999, RELATING TO FARHAD LARIAN's, ISAAC LARIAN's and/or MGA's receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any MATTEL line list or other DOCUMENT prepared or compiled by MATTEL identifying MATTEL products in the planning, design or development phase.

(31)   All DOCUMENTS, since January 1, 1999, RELATING TO FARHAD LARIAN's, ISAAC LARIAN's and/or MGA's receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that was not publicly available at the time of FARHAD LARIAN's, ISAAC LARIAN's and/or MGA's receipt of such DOCUMENT.

(32)   All DOCUMENTS, since January 1, 1999, RELATING TO FARHAD LARIAN's, ISAAC LARIAN's and/or MGA's knowledge of MATTEL's employment or inventions agreements.

(33)   Any STORAGE DEVICE used by FARHAD LARIAN RELATING TO any portion of the time period from January 1, 1999 through December 31, 2002, inclusive, and/or any DOCUMENTS responsive to any other Request herein.

(34)   All   DOCUMENTS   RELATING   TO   any   instruction   or COMMUNICATION by or to YOU, FARHAD LARIAN, ISAAC LARIAN and/or MGA to destroy, conceal, secret or withhold any DOCUMENT since January 1, 1998, including without limitation in connection with this ACTION.

(35)   All DOCUMENTS, including all COMMUNICATIONS, RELATING TO the preservation, retention or destruction of any DOCUMENT that is sought by or the subject of Request Nos. 1 through 34, inclusive.

EXHIBIT 4
PAGE 62