# EXHIBIT 26

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:   tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  Four Embarcadero Center, Suite 3800
   San Francisco, CA 94111
7  Telephone:  (415) 984-6400
   Facsimile:  (415) 984-2698
8
   Attorneys for Counter-Defendants,
9  MGA ENTERTAINMENT, INC.,
   ISAAC LARIAN, MGA ENTERTAINMENT
10 (HK) LIMITED, AND MGAE de MEXICO
   S.R.L. de C.V.

11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

                        EASTERN DIVISION

14 | CARTER BRYANT, an individual    | )  CASE NO. CV 04-9049 SGL (RNBx)
15 |              Plaintiff,          | )  Consolidated with Case No. 04-9059
   |                                  | )  and Case No. 05-2727
16 |        v.                        | )
17 | MATTEL, INC., a Delaware         | )  **OBJECTIONS OF MGA
   | corporation                      | )  ENTERTAINMENT, INC.,
18 |                                  | )  ISAAC LARIAN, MGA
   |              Defendant.          | )  ENTERTAINMENT (HK)
19 |                                  | )  LIMITED, AND MGAE DE
   |                                  | )  MEXICO S.R.L. DE C.V. TO
20 |                                  | )  MATTEL INC.'S SUBPOENA
   |                                  | )  TO MOSS ADAMS**
21 |                                  | )
22 |                                  | )  Honorable Stephen G. Larson
   |                                  | )  Courtroom 1
23 |                                  | )
24 |——————————————————————————————————| )
25 | Consolidated with MATTEL, INC. v.| )
   | BRYANT and MGA                   | )
26 | ENTERTAINMENT, INC. v.           | )
   | MATTEL, INC.                     | )
27 |——————————————————————————————————| )
28

OBJECTIONS OF THE MGA ENTITIES TO
MATTEL'S SUBPOENA FOR PRODUCTION OF DOCUMENTS TO MOSS ADAMS

EXHIBIT 26
PAGE 246

MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (the "MGA Entities") hereby respond to Plaintiff Mattel's ("Plaintiff") Subpoena for Production of Documents (the "Requests" or the "Subpoena"), served on Moss Adams LLP ("Moss Adams"), as follows:

## GENERAL OBJECTIONS

1. The MGA Entities object to the Subpoena and each and every Request to the extent that they seek documents that are protected from disclosure by any applicable privilege, doctrine or right, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, which is protected by virtue of the Ninth Amendment to the United States Constitution, Article 1, Section 1 of the California Constitution, and all other rights and privileges recognized under the constitutional, statutory or decisional law of the United States, the State of California, and all relevant jurisdictions. Nothing done in relation to the Subpoena is intended to or shall operate as a waiver by the MGA Entities, intentionally or otherwise, of the attorney-client privilege, work product doctrine protection, or any other applicable privilege, doctrine or immunity protecting the communications, transactions or records of the MGA Entities or any other person from disclosure.

2. The MGA Entities object to the Subpoena and each and every Request to the extent that they seek documents that are protected from disclosure by the accountant-client privilege.

3. The MGA Entities object to the Subpoena and each and every Request to the extent that they seek documents that are protected from disclosure by applicable federal and state tax return privileges. *See, e.g., Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *Southern California Housing Rights Center. v. Krug*, 2006 U.S. Dist. LEXIS 65330, **9-10 (C.D. Cal. 2006); *Aliotti v. Senora*, 217 FRD 496 , 498 (N.D. Cal. 2003); *San Francisco Bay*

1

1 | *Area Rapid Transit District v. Spencer*, 2006 U.S. Dist. LEXIS 81681 , **3-4 (N.D.
2 | Cal. 2006). *See also Webb v. Standard Oil Co.*, 49 Cal. 2d. 509, 513-514 (1957);
3 | *Sav-On Drugs, Inc. v. Sup. Ct.*, 15 Cal. 3d 1, 6-8 (1975); *Sammut v. Sammut*, 103 Cal.
4 | App. 3d 557, 562 (1982).

5 |       4.    The MGA Entities object to the Subpoena and each and every
6 | Request to the extent that they seek the production of documents that contain trade
7 | secrets, confidential, commercially sensitive and/or other proprietary or competitive
8 | information that is subject to Moss Adams's, the MGA Entities', or any other
9 | person's constitutional, statutory or common law right of privacy or protection. The
10 | MGA Entities object to the production of any such documents to the extent they exist.

11 |       5.    The MGA Entities object to the Subpoena and each and every
12 | Request to the extent that they seek documents that are not relevant to the claims and
13 | defenses in this action or are not reasonably calculated to lead to the discovery of
14 | admissible evidence. The MGA Entities' response to any Request that seeks
15 | documents beyond that scope shall not be deemed an admission or acknowledgment
16 | that such Request calls for information relevant to this action and is without
17 | prejudice to the MGA Entities' right to contend at any other time that the requested
18 | documents are irrelevant, immaterial or otherwise objectionable.

19 |       6.    The MGA Entities object to the Subpoena and each and every
20 | Request insofar as they seek the production of documents that, by reason of public
21 | filing, other public availability, or otherwise, are already in Plaintiff's possession,
22 | custody or control.

23 |       7.    The MGA Entities object to the Subpoena and each and every
24 | Request (including the Definitions) to the extent that they are overbroad, otherwise
25 | unlimited as to time, oppressive, vague, ambiguous, harassing, annoying, redundant,
26 | duplicative, overlapping, repetitive or cumulative, and/or otherwise unduly
27 | burdensome, thereby rendering the Subpoena unenforceable. *See, e.g.,* Fed. R. Civ.
28 |

OBJECTIONS OF THE MGA ENTITIES TO
MATTEL'S SUBPOENA FOR PRODUCTION OF DOCUMENTS TO MOSS ADAMS

EXHIBIT 26
PAGE 248

1 P. 45(c)(l) ("A party or an attorney responsible for the issuance and service of a

2 subpoena shall take reasonable steps to avoid imposing undue burden or expense on

3 a person subject to that subpoena."); *High Tech Medical Instrumentation v. New*

4 *Image Indus.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) ("[T]he Ninth Circuit has long

5 held that nonparties subject to discovery requests deserve extra protection from the

6 courts.").

7         8.     The MGA Entities object to the Subpoena and each and every

8 Request insofar as they seek the production of documents that are more easily

9 obtained from other entities, including the parties to this action.

10         9.     The MGA Entities object to the Subpoena and each and every

11 Request to the extent they seek production of documents that have already been

12 produced to Plaintiff, whether in these proceedings or any others.

13         10.    The MGA Entities object to the Definitions on the grounds that

14 they are vague, unclear or overbroad and, when applied to the Requests, purport to

15 impose obligations not authorized by Rule 45 of the Federal Rules of Civil Procedure.

16 By way of example only, the MGA Entities object to the following definitions:

17         (a)    The MGA Entities object to the definition of the term

18 "MGA" as vague, ambiguous, overbroad, and unduly burdensome.  The definition

19 includes "MGA Entertainment, Inc., any of its current or former employees, officers,

20 directors, agents, representatives, shareholders, attorneys, accountants, vendors,

21 consultants, independent contractors, parents, subsidiaries, divisions, affiliates,

22 predecessors-in-interest and successors-in-interest, and any other PERSON acting

23 on its behalf, pursuant to its authority or subject to its control. . . [including] ABC

24 International Traders, Inc."  In many instances, it is impossible for the MGA

25 Entities, much less Moss Adams, to know whether a particular person or entity

26 comes within this definition unless that person or entity at some point in time held

27 himself or herself out as such.  The MGA Entities additionally object to these terms

28

3

1   because they call for legal conclusions.

2
3          (b)     The MGA Entities object to the definition of the term
4   "MATTEL" as vague, ambiguous, overbroad, and unduly burdensome.  The
5   definition includes "Mattel, Inc., any of its current or former employees, officers,
6   directors, agents, representatives, shareholders, attorneys, accountants, vendors,
7   consultants, independent contractors, parents, subsidiaries, divisions, affiliates,
8   predecessors-in-interest and successors-in-interest, and any other PERSON acting
9   on its behalf, pursuant to its authority or subject to its control."  In many instances,
10  it is impossible for the MGA Entities, much less Moss Adams, to know whether a
11  particular person or entity comes within this definition unless that person or entity at
12  some point in time held himself or herself out as such.  The MGA Entities
13  additionally object to these terms because they call for legal conclusions.

14         (c)     The MGA Entities object to the definitions of the terms
15  "ISAAC LARIAN," "FARHAD LARIAN," "BRYANT," "GARCIA," and
16  "MARLOW" as vague, ambiguous, overbroad, and unduly burdensome.  These
17  terms each include some formulation of the following:  "all of his current or former
18  employees, agents, representatives, attorneys, accountants, vendors, consultants,
19  independent contractors, predecessors-in-interest and successors-in-interest, relative
20  (whether by blood or marriage), and any other PERSON acting on his behalf,
21  pursuant to his authority or subject to his control."  In many instances, it is
22  impossible for the MGA Entities, much less Moss Adams, to know whether a
23  particular person or entity comes within these definition unless that person or entity
24  at some point in time held himself or herself out as such.  The MGA Entities
25  additionally object to these terms because they call for legal conclusions.

26         (d)     The MGA Entities object to the definition of the term
27  "BRATZ" as vague, ambiguous, overly broad and unduly burdensome, and
28                                          4

1   designed to mislead and confuse the trier of fact.  The definition includes "any

2   project, product, doll or DESIGN ever known by [the Bratz] name (whether in

3   whole or in part and regardless of what such project, product or doll is or has been

4   also, previously or subsequently called) and any product, doll or DESIGN or any

5   portion thereof that is now or has ever been known as, or sold or marketed under,

6   the name or term 'Bratz' (whether in whole or in part and regardless of what such

7   product, doll or DESIGN or portion thereof is or has been also, previously or

8   subsequently called) or that is now or has ever been sold or marketed as part of the

9   'Bratz' line, and each version or iteration of such product, doll or DESIGN or any

10   portion thereof," and it goes on.  By incorporating the definition of "DESIGN," the

11   overly broad definition of "BRATZ" includes two-dimensional and three-

12   dimensional representations, including "works, designs, artwork, sketches, drawings,

13   illustrations, representations, depictions, blueprints, schematics, diagrams, images,

14   sculptures, prototypes, models, samples, rotocasts, reductions to practice,

15   developments, inventions and/or improvements . . . ."  These convoluted and multi-

16   part definitions combine to render the document requests that refer to the term

17   vague, ambiguous and overly broad, and to include within the term "BRATZ" things

18   that do not fairly represent the Bratz line of dolls, accessories and related products

19   that are the subject of this case.

20          (e)     The MGA Entities object to the definition of the term

21   "FARHAD LARIAN DISPUTES" on the grounds that it is overbroad and refers to,

22   purports to encompass, and as used in these requests purports to call for documents

23   that are not relevant to the claims or defenses in this action or reasonably calculated

24   to lead to the discovery of admissible evidence.

25

26          (f)     The MGA Entities object to the definition of the term

27   "RELATING TO" on the grounds that it is vague, ambiguous, overbroad and

28                                              5

EXHIBIT 26
PAGE 251

1  unduly burdensome.  The definition includes "referencing, referring to, constituting,

2  evidencing, pertaining to, mentioning, supporting, contradicting, negating, bearing

3  on, touching on, containing, embodying, reflecting, identifying, stating, dealing with,

4  concerning, commenting on, summarizing, responding to, relating to, describing or

5  discussing in any way," within the meaning of "RELATING TO."  Such an

6  overbroad and overwrought definition renders the document requests that refer to

7  the term vague, ambiguous and overly broad in that it is impossible for the MGA

8  Entities, much less Moss Adams, to know whether a particular document or thing

9  comes within this definition.

10      11.    The MGA Entities object to the Requests and, in particular, the

11  Instructions, to the extent that they purport to impose any requirements not imposed

12  by the Federal Rules of Civil Procedure.  By way of example only, the MGA Entities

13  object to Instruction d., which purports to require Moss Adams to "identify the

14  source of all DOCUMENTS produced, and the person for whom, or department,

15  division or office for which, such DOCUMENTS are maintained."  Federal Rule of

16  Civil Procedure 45(d)(l) requires only that "[a] person responding to a subpoena to

17  produce documents shall produce them as they are kept in the usual course of

18  business or shall organize and label them to correspond with the categories in the

19  demand."

20      12.    The MGA Entities object to the Subpoena and each and every

21  Request to the extent they seek production of documents generated after service of

22  the Subpoena.

23      13.    Except as otherwise stated below, an objection to a specific

24  document Request does not imply that documents responsive to that category exist or

25  that the MGA Entities accept the purported factual predicate for any Request.

26      14.    Without waiving any of the foregoing General Objections, each

27  of which is expressly incorporated into each individual response as if fully stated

28                                        6

1  therein, the MGA Entities object to each and every specific Request for documents,

2  subject to the following additional express reservations of rights:

3           a.     The right to object on any and all grounds, at any time, to

4  these or any other requests for production and inspection of documents or other

5  discovery procedures involving or relating to the subject matter of the Requests,

6  including by way of a motion to quash or modify the subpoena or a motion for a

7  protective order; and

8           b.     The right at any time to revise, correct, supplement or

9  clarify any of the responses and objections propounded herein.

10  **SPECIFIC OBJECTIONS AND RESPONSES**

11
12  REQUEST NO. 1:

13      All DOCUMENTS RELATING TO MGA, including without limitation

14  accounting records, tax returns and schedules (including without limitation Form

15  1040, Form 1099, Form 1120, Schedule E or Schedule K-l) and drafts thereof, work

16  papers, worksheets, payroll records, financial statements (audited and unaudited), pro

17  formas and budgets from the period beginning January 1, 1999 to the present.

18
19  RESPONSE TO REQUEST NO. 1:

20      The MGA Entities incorporate by reference their General Objections as

21  though fully set forth herein. The MGA Entities further object to the extent that this

22  request seeks information that is protected from disclosure under the attorney-client

23  privilege, the work product doctrine and/or the joint interest privilege. The MGA

24  Entities further object to this request to the extent it seeks documents protected by

25  the accountant-client privilege. The MGA Entities further object to the request on

26  the grounds that it seeks documents protected from disclosure by applicable federal

27  and state tax return privileges. The MGA Entities further object to this request to the

28

1  extent that it seeks documents that contain trade secrets, confidential, commercially

2  sensitive and/or other proprietary or competitive information that is subject to the

3  MGA Entities' or any other person's constitutional, statutory or common law right of

4  privacy or protection.  The MGA Entities further object that this request calls for the

5  production of documents that are not relevant to a claim or defense in the pending

6  litigation or reasonably calculated to lead to the discovery of admissible evidence.

7  The MGA Entities further object to this request as being overly broad, burdensome

8  and harassing to a non-party to the extent that it seeks to force Moss Adams to

9  produce documents or information available from parties to the litigation. The MGA

10  Entities further object to this request on the grounds that it is overbroad as to subject

11  matter and time; in particular, the MGA Entities object to the definitions of

12  "RELATING TO" and "MGA," on the grounds that they are overbroad, vague and

13  ambiguous.  The MGA Entities further object on the grounds that this request is

14  vague, ambiguous and overbroad, particularly as to the meaning of "accounting

15  records," "schedules," "work papers," "worksheets," "financial statements," "pro

16  formas" and "budgets."

17
18  <u>REQUEST NO. 2:</u>

19      All DOCUMENTS RELATING TO ISAAC LARIAN, including without

20  limitation accounting records, tax returns and schedules (including without limitation

21  Form 1040, Form 1099, Form 1120, Schedule E and Schedule K-1) and drafts thereof,

22  W-2s, work papers, worksheets, payroll records, financial statements (audited and

23  unaudited), pro formas, budgets, account information and account statements, from

24  the period beginning January 1, 1999 to the present.

25
26
27
28

8

RESPONSE TO REQUEST NO. 2:

    The MGA Entities incorporate by reference their General Objections as though fully set forth herein.  The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney-client privilege, the work product doctrine and/or the joint interest privilege.  The MGA Entities further object to this request to the extent it seeks documents protected by the accountant-client privilege.  The MGA Entities further object to the request on the grounds that it seeks documents protected from disclosure by applicable federal and state tax return privileges.  The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential, commercially sensitive and/or other proprietary or competitive information that is subject to the MGA Entities' or any other person's constitutional, statutory or common law right of privacy or protection.  The MGA Entities further object that this request calls for the production of documents that are not relevant to a claim or defense in the pending litigation or reasonably calculated to lead to the discovery of admissible evidence. The MGA Entities further object to this request as being overly broad, burdensome and harassing to a non-party to the extent that it seeks to force Moss Adams to produce documents or information available from parties to the litigation. The MGA Entities further object to this request on the grounds that it is overbroad as to subject matter and time; in particular, the MGA Entities object to the definitions of "RELATING TO" and "ISAAC LARIAN," on the grounds that they are overbroad, vague and ambiguous.  The MGA Entities further object on the grounds that this request is vague, ambiguous and overbroad, particularly as to the meaning of "accounting records," "schedules," "work papers," "worksheets," "financial statements," "pro formas," "account information," "account statements" and "budgets."

9

EXHIBIT 26
PAGE 255

1 | REQUEST NO. 3:

2

3      All DOCUMENTS RELATING TO FARHAD LARIAN, including without

limitation accounting records, tax returns and schedules (including without limitation

4 Form 1040, Form 1099, Form 1120, Schedule E and Schedule K-l) and drafts thereof,

5 W-2s, work papers, worksheets, payroll records, financial statements (audited and

6 unaudited), pro formas, budgets, account information and account statements from

7 the period beginning January 1, 1999 to the present.

8

9 | RESPONSE TO REQUEST NO. 3:

10

11      The MGA Entities incorporate by reference their General Objections as

though fully set forth herein.  The MGA Entities further object to the extent that this

12 request seeks information that is protected from disclosure under the attorney-client

13 privilege, the work product doctrine and/or the joint interest privilege.  The MGA

14 Entities further object to this request to the extent it seeks documents protected by

15 the accountant-client privilege.  The MGA Entities further object to the request on

16 the grounds that it seeks documents protected from disclosure by applicable federal

17 and state tax return privileges.  The MGA Entities further object to this request to the

18 extent that it seeks documents that contain trade secrets, confidential, commercially

19 sensitive and/or other proprietary or competitive information that is subject to the

20 MGA Entities' or any other person's constitutional, statutory or common law right of

21 privacy or protection.  The MGA Entities further object that this request calls for the

22 production of documents that are not relevant to a claim or defense in the pending

23 litigation or reasonably calculated to lead to the discovery of admissible evidence.

24 The MGA Entities further object to this request as being overly broad, burdensome

25 and harassing to a non-party to the extent that it seeks to force Moss Adams to

26 produce documents or information available from parties to the litigation. The MGA

27 Entities further object to this request on the grounds that it is overbroad as to subject

28 |                                     10

EXHIBIT 26
PAGE 256

1   matter and time; in particular, the MGA Entities object to the definitions of
2   "RELATING TO" and "FARHAD LARIAN," on the grounds that they are
3   overbroad, vague and ambiguous.  The MGA Entities further object on the grounds
4   that this request is vague, ambiguous and overbroad, particularly as to the meaning
5   of "accounting records," "schedules," "work papers," "worksheets," "financial
6   statements," "pro formas," "account information," "account statements" and
7   "budgets."

8
9   REQUEST NO. 4:

10      All DOCUMENTS RELATING TO the ISAAC AND ANGELA LARIAN
11  TRUST, including without limitation accounting records, tax returns and schedules
12  (including without limitation Form 1040, Form 1099, Form 1120, Schedule E and
13  Schedule K-l) and drafts thereof, W-2s, work papers, worksheets, payroll records,
14  financial statements (audited and unaudited), pro formas, budgets, account
15  information and account statements from the period beginning January 1, 1999 to the
16  present.

17
18  RESPONSE TO REQUEST NO. 4:

19      The MGA Entities incorporate by reference their General Objections as
20  though fully set forth herein.  The MGA Entities further object to the extent that this
21  request seeks information that is protected from disclosure under the attorney-client
22  privilege, the work product doctrine and/or the joint interest privilege.  The MGA
23  Entities further object to this request to the extent it seeks documents protected by
24  the accountant-client privilege.  The MGA Entities further object to the request on
25  the grounds that it seeks documents protected from disclosure by applicable federal
26  and state tax return privileges.  The MGA Entities further object to this request to the
27  extent that it seeks documents that contain trade secrets, confidential, commercially

28                                          11

1  sensitive and/or other proprietary or competitive information that is subject to the
2  MGA Entities' or any other person's constitutional, statutory or common law right of
3  privacy or protection.  The MGA Entities further object that this request calls for the
4  production of documents that are not relevant to a claim or defense in the pending
5  litigation or reasonably calculated to lead to the discovery of admissible evidence.
6  The MGA Entities further object to this request as being overly broad, burdensome
7  and harassing to a non-party to the extent that it seeks to force Moss Adams to
8  produce documents or information available from parties to the litigation. The MGA
9  Entities further object to this request on the grounds that it is overbroad as to subject
10  matter and time; in particular, the MGA Entities object to the definitions of
11  "RELATING TO" and "ISAAC AND ANGELA LARIAN TRUST," on the grounds
12  that they are overbroad, vague and ambiguous.  The MGA Entities further object on
13  the grounds that this request is vague, ambiguous and overbroad, particularly as to
14  the meaning of "accounting records," "schedules," "work papers," "worksheets,"
15  "financial statements," "pro formas," "account information," "account statements"
16  and "budgets."

17  REQUEST NO. 5:
18

19      All DOCUMENTS RELATING TO the ISAAC LARIAN ANNUITY TRUST,
20  including without limitation accounting records, tax returns and schedules (including
21  without limitation Form 1040, Form 1099, Form 1120, Schedule E and Schedule K-l)
22  and drafts thereof, W-2s, work papers, worksheets, payroll records, financial
23  statements (audited and unaudited), pro formas, budgets, account information and
24  account statements from the period beginning January 1, 1999 to the present.

25
26
27
28

12

RESPONSE TO REQUEST NO. 5:

The MGA Entities incorporate by reference their General Objections as though fully set forth herein.  The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney-client privilege, the work product doctrine and/or the joint interest privilege.  The MGA Entities further object to this request to the extent it seeks documents protected by the accountant-client privilege.  The MGA Entities further object to the request on the grounds that it seeks documents protected from disclosure by applicable federal and state tax return privileges.  The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential, commercially sensitive and/or other proprietary or competitive information that is subject to the MGA Entities' or any other person's constitutional, statutory or common law right of privacy or protection.  The MGA Entities further object that this request calls for the production of documents that are not relevant to a claim or defense in the pending litigation or reasonably calculated to lead to the discovery of admissible evidence. The MGA Entities further object to this request as being overly broad, burdensome and harassing to a non-party to the extent that it seeks to force Moss Adams to produce documents or information available from parties to the litigation. The MGA Entities further object to this request on the grounds that it is overbroad as to subject matter and time; in particular, the MGA Entities object to the definitions of "RELATING TO" and "ISAAC LARIAN ANNUITY TRUST," on the grounds that they are overbroad, vague and ambiguous.  The MGA Entities further object on the grounds that this request is vague, ambiguous and overbroad, particularly as to the meaning of "accounting records," "schedules," "work papers," "worksheets," "financial statements," "pro formas," "account information," "account statements" and "budgets."

OBJECTIONS OF THE MGA ENTITIES TO
MATTEL'S SUBPOENA FOR PRODUCTION OF DOCUMENTS TO MOSS ADAMS

EXHIBIT 26
PAGE 259

REQUEST NO. 6:

To the extent not included in your production responsive to Request Nos. 1-5, all DOCUMENTS indicating ISAAC LARIAN's net worth.

RESPONSE TO REQUEST NO. 6:

The MGA Entities incorporate by reference their General Objections as though fully set forth herein. The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney-client privilege, the work product doctrine and/or the joint interest privilege. The MGA Entities further object to this request to the extent it seeks documents protected by the accountant-client privilege. The MGA Entities further object to the request on the grounds that it seeks documents protected from disclosure by applicable federal and state tax return privileges. The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential, commercially sensitive and/or other proprietary or competitive information that is subject to the MGA Entities' or any other person's constitutional, statutory or common law right of privacy or protection. The MGA Entities further object that this request calls for the production of documents that are not relevant to a claim or defense in the pending litigation or reasonably calculated to lead to the discovery of admissible evidence. The MGA Entities further object to this request as being overly broad, burdensome and harassing to a non-party to the extent that it seeks to force Moss Adams to produce documents or information available from parties to the litigation. The MGA Entities further object to this request on the grounds that it is overbroad as to subject matter and time; in particular, the MGA Entities object to the definition of "ISAAC LARIAN," on the grounds that it is overbroad, vague and ambiguous. The MGA Entities further object on the grounds that this request is vague, ambiguous and overbroad, particularly as to the meaning of "indicating."

14

REQUEST NO. 7:

To the extent not included in your production responsive to Request Nos. 1-6, all DOCUMENTS indicating MGA' s net worth.

RESPONSE TO REQUEST NO. 7:

The MGA Entities incorporate by reference their General Objections as though fully set forth herein. The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney-client privilege, the work product doctrine and/or the joint interest privilege. The MGA Entities further object to this request to the extent it seeks documents protected by the accountant-client privilege. The MGA Entities further object to the request on the grounds that it seeks documents protected from disclosure by applicable federal and state tax return privileges. The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential, commercially sensitive and/or other proprietary or competitive information that is subject to the MGA Entities' or any other person's constitutional, statutory or common law right of privacy or protection. The MGA Entities further object that this request calls for the production of documents that are not relevant to a claim or defense in the pending litigation or reasonably calculated to lead to the discovery of admissible evidence. The MGA Entities further object to this request as being overly broad, burdensome and harassing to a non-party to the extent that it seeks to force Moss Adams to produce documents or information available from parties to the litigation. The MGA Entities further object to this request on the grounds that it is overbroad as to subject matter and time; in particular, the MGA Entities object to the definition of "MGA," on the grounds that it is overbroad, vague and ambiguous. The MGA Entities further object on the grounds that this request is vague, ambiguous and overbroad, particularly as to the meaning of "indicating."

15

EXHIBIT 26
PAGE 261

**REQUEST NO. 8:**

To the extent not included in your production responsive to Request Nos. 1-7, all DOCUMENTS indicating or calculating the value of MGA's intellectual property or goodwill.

**RESPONSE TO REQUEST NO. 8:**

The MGA Entities incorporate by reference their General Objections as though fully set forth herein.  The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney-client privilege, the work product doctrine and/or the joint interest privilege.  The MGA Entities further object to this request to the extent it seeks documents protected by the accountant-client privilege.  The MGA Entities further object to the request on the grounds that it seeks documents protected from disclosure by applicable federal and state tax return privileges.  The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential, commercially sensitive and/or other proprietary or competitive information that is subject to the MGA Entities' or any other person's constitutional, statutory or common law right of privacy or protection.  The MGA Entities further object that this request calls for the production of documents that are not relevant to a claim or defense in the pending litigation or reasonably calculated to lead to the discovery of admissible evidence.  The MGA Entities further object to this request as being overly broad, burdensome and harassing to a non-party to the extent that it seeks to force Moss Adams to produce documents or information available from parties to the litigation. The MGA Entities further object to this request on the grounds that it is overbroad as to subject matter and time; in particular, the MGA Entities object to the definition of "MGA," on the grounds that it is overbroad, vague and ambiguous.  The MGA Entities further

16

1 | object on the grounds that this request is vague, ambiguous and overbroad,
2 | particularly as to the meaning of "intellectual property" and "goodwill."

3
4 | REQUEST NO. 9:

5 |     All DOCUMENTS RELATING TO BRATZ that YOU obtained from ISAAC
6 | LARIAN or otherwise since January 1, 1999.

7
8 | RESPONSE TO REQUEST NO. 9:

9 |     The MGA Entities incorporate by reference their General Objections as
10 | though fully set forth herein. The MGA Entities further object to the extent that this
11 | request seeks information that is protected from disclosure under the attorney-client
12 | privilege, the work product doctrine and/or the joint interest privilege. The MGA
13 | Entities further object to this request to the extent it seeks documents protected by
14 | the accountant-client privilege. The MGA Entities further object to the request on
15 | the grounds that it seeks documents protected from disclosure by applicable federal
16 | and state tax return privileges. The MGA Entities further object to this request to the
17 | extent that it seeks documents that contain trade secrets, confidential, commercially
18 | sensitive and/or other proprietary or competitive information that is subject to the
19 | MGA Entities' or any other person's constitutional, statutory or common law right of
20 | privacy or protection. The MGA Entities further object that this request calls for the
21 | production of documents that are not relevant to a claim or defense in the pending
22 | litigation or reasonably calculated to lead to the discovery of admissible evidence.
23 | The MGA Entities further object to this request as being overly broad, burdensome
24 | and harassing to a non-party to the extent that it seeks to force Moss Adams to
25 | produce documents or information available from parties to the litigation. The MGA
26 | Entities further object to this request on the grounds that it is overbroad as to subject
27 | matter and time; in particular, the MGA Entities object to the definitions of
28 |

17

1 | "RELATING TO," "BRATZ," "YOU," and "ISAAC LARIAN," on the grounds that
2 | they are overbroad, vague and ambiguous.

3 | REQUEST NO. 10:
4 |

5 |     All DOCUMENTS RELATING to the MATTEL ACTION.

6 | RESPONSE TO REQUEST NO. 10:
7 |

8 |     The MGA Entities incorporate by reference their General Objections as
9 | though fully set forth herein.  The MGA Entities further object to the extent that this
10 | request seeks information that is protected from disclosure under the attorney-client
11 | privilege, the work product doctrine and/or the joint interest privilege.  The MGA
12 | Entities further object to this request to the extent it seeks documents protected by
13 | the accountant-client privilege.  The MGA Entities further object to the request on
14 | the grounds that it seeks documents protected from disclosure by applicable federal
15 | and state tax return privileges.  The MGA Entities further object to this request to the
16 | extent that it seeks documents that contain trade secrets, confidential, commercially
17 | sensitive and/or other proprietary or competitive information that is subject to the
18 | MGA Entities' or any other person's constitutional, statutory or common law right of
19 | privacy or protection.  The MGA Entities further object that this request calls for the
20 | production of documents that are not relevant to a claim or defense in the pending
21 | litigation or reasonably calculated to lead to the discovery of admissible evidence.
22 | The MGA Entities further object to this request as being overly broad, burdensome
23 | and harassing to a non-party to the extent that it seeks to force Moss Adams to
24 | produce documents or information available from parties to the litigation. The MGA
25 | Entities further object to this request on the grounds that it is overbroad as to subject
26 | matter and time; in particular, the MGA Entities object to the definition of
27 | "RELATING TO," on the grounds that it is overbroad, vague and ambiguous.

28 |

OBJECTIONS OF THE MGA ENTITIES TO
MATTEL'S SUBPOENA FOR PRODUCTION OF DOCUMENTS TO MOSS ADAMS

EXHIBIT 20
PAGE 264

REQUEST NO. 11:

All DOCUMENTS RELATING TO the FARHAD LARIAN DISPUTES, including without limitation any discovery requests received by YOU in connection therewith and any communications between YOU and counsel for FARHAD LARIAN or counsel for ISAAC LARIAN.

RESPONSE TO REQUEST NO. 11:

The MGA Entities incorporate by reference their General Objections as though fully set forth herein. The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney-client privilege, the work product doctrine and/or the joint interest privilege. The MGA Entities further object to this request to the extent it seeks documents protected by the accountant-client privilege. The MGA Entities further object to the request on the grounds that it seeks documents protected from disclosure by applicable federal and state tax return privileges. The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential, commercially sensitive and/or other proprietary or competitive information that is subject to the MGA Entities' or any other person's constitutional, statutory or common law right of privacy or protection. The MGA Entities further object that this request calls for the production of documents that are not relevant to a claim or defense in the pending litigation or reasonably calculated to lead to the discovery of admissible evidence. The MGA Entities further object to this request as being overly broad, burdensome and harassing to a non-party to the extent that it seeks to force Moss Adams to produce documents or information available from parties to the litigation. The MGA Entities further object to this request on the grounds that it is overbroad as to subject matter and time; in particular, the MGA Entities object to the definitions of "RELATING TO," "FARHAD LARIAN DISPUTES," "YOU," "FARHAD

19

1  LARIAN," and "ISAAC LARIAN," on the grounds that they are overbroad, vague
2  and ambiguous.

3  REQUEST NO. 12:
4

5      All DOCUMENTS evidencing, showing or relating to payments to or transfers
6  of value from MGA to ISAAC LARIAN, ISAAC LARIAN ANNUITY TRUST, or
7  ISAAC AND ANGELA ANNUITY TRUST.

8  RESPONSE TO REQUEST NO. 12:
9

10     The MGA Entities incorporate by reference their General Objections as
11 though fully set forth herein.  The MGA Entities further object to the extent that this
12 request seeks information that is protected from disclosure under the attorney-client
13 privilege, the work product doctrine and/or the joint interest privilege.  The MGA
14 Entities further object to this request to the extent it seeks documents protected by
15 the accountant-client privilege.  The MGA Entities further object to the request on
16 the grounds that it seeks documents protected from disclosure by applicable federal
17 and state tax return privileges.  The MGA Entities further object to this request to the
18 extent that it seeks documents that contain trade secrets, confidential, commercially
19 sensitive and/or other proprietary or competitive information that is subject to the
20 MGA Entities' or any other person's constitutional, statutory or common law right of
21 privacy or protection.  The MGA Entities further object that this request calls for the
22 production of documents that are not relevant to a claim or defense in the pending
23 litigation or reasonably calculated to lead to the discovery of admissible evidence.
24 The MGA Entities further object to this request as being overly broad, burdensome
25 and harassing to a non-party to the extent that it seeks to force Moss Adams to
26 produce documents or information available from parties to the litigation. The MGA
27 Entities further object to this request on the grounds that it is overbroad as to subject
28

20

1  matter and time; in particular, the MGA Entities object to the definitions of "MGA,"
2  "ISAAC LARIAN," "ISAAC LARIAN ANNUITY TRUST," and "ISAAC AND
3  ANGELA ANNUITY TRUST," on the grounds that they are overbroad, vague and
4  ambiguous.  The MGA Entities further object on the grounds that this request is
5  vague, ambiguous and overbroad, particularly as to the meaning of "relating to,"
6  "showing," "evidencing," "payments" and "transfers of value."

7
8  REQUEST NO. 13:

9      All DOCUMENTS evidencing, showing or relating to payments to or transfers
10  of value from MGA or ISAAC LARIAN to BRYANT.

11
12  RESPONSE TO REQUEST NO. 13:

13      The MGA Entities incorporate by reference their General Objections as
14  though fully set forth herein.  The MGA Entities further object to the extent that this
15  request seeks information that is protected from disclosure under the attorney-client
16  privilege, the work product doctrine and/or the joint interest privilege.  The MGA
17  Entities further object to this request to the extent it seeks documents protected by
18  the accountant-client privilege.  The MGA Entities further object to the request on
19  the grounds that it seeks documents protected from disclosure by applicable federal
20  and state tax return privileges.  The MGA Entities further object to this request to the
21  extent that it seeks documents that contain trade secrets, confidential, commercially
22  sensitive and/or other proprietary or competitive information that is subject to the
23  MGA Entities' or any other person's constitutional, statutory or common law right of
24  privacy or protection.  The MGA Entities further object that this request calls for the
25  production of documents that are not relevant to a claim or defense in the pending
26  litigation or reasonably calculated to lead to the discovery of admissible evidence.
27  The MGA Entities further object to this request as being overly broad, burdensome
28

OBJECTIONS OF THE MGA ENTITIES TO
MATTEL'S SUBPOENA FOR PRODUCTION OF DOCUMENTS TO MOSS ADAMS

EXHIBIT  26
PAGE  267

1 | and harassing to a non-party to the extent that it seeks to force Moss Adams to
2 | produce documents or information available from parties to the litigation. The MGA
3 | Entities further object to this request on the grounds that it is overbroad as to subject
4 | matter and time; in particular, the MGA Entities object to the definitions of "MGA,"
5 | "ISAAC LARIAN," and "BRYANT," on the grounds that they are overbroad, vague
6 | and ambiguous.  The MGA Entities further object on the grounds that this request is
7 | vague, ambiguous and overbroad, particularly as to the meaning of "relating to,"
8 | "showing," "evidencing," "payments" and "transfers of value."

9
10 | REQUEST NO. 14:

11 |     All DOCUMENTS evidencing, showing or relating to payments to or transfers
12 | of value from MGA or ISAAC LARIAN to GARCIA.

13
14 | RESPONSE TO REQUEST NO. 14:

15 |     The MGA Entities incorporate by reference their General Objections as
16 | though fully set forth herein.  The MGA Entities further object to the extent that this
17 | request seeks information that is protected from disclosure under the attorney-client
18 | privilege, the work product doctrine and/or the joint interest privilege.  The MGA
19 | Entities further object to this request to the extent it seeks documents protected by
20 | the accountant-client privilege.  The MGA Entities further object to the request on
21 | the grounds that it seeks documents protected from disclosure by applicable federal
22 | and state tax return privileges.  The MGA Entities further object to this request to the
23 | extent that it seeks documents that contain trade secrets, confidential, commercially
24 | sensitive and/or other proprietary or competitive information that is subject to the
25 | MGA Entities' or any other person's constitutional, statutory or common law right of
26 | privacy or protection.  The MGA Entities further object that this request calls for the
27 | production of documents that are not relevant to a claim or defense in the pending
28 |

22

1  litigation or reasonably calculated to lead to the discovery of admissible evidence.

2  The MGA Entities further object to this request as being overly broad, burdensome

3  and harassing to a non-party to the extent that it seeks to force Moss Adams to

4  produce documents or information available from parties to the litigation. The MGA

5  Entities further object to this request on the grounds that it is overbroad as to subject

6  matter and time; in particular, the MGA Entities object to the definitions of "MGA,"

7  "ISAAC LARIAN" and "GARCIA," on the grounds that they are overbroad, vague

8  and ambiguous.  The MGA Entities further object on the grounds that this request is

9  vague, ambiguous and overbroad, particularly as to the meaning of "relating to,"

10  "showing," "evidencing," "payments" and "transfers of value."

11
12  REQUEST NO. 15:

13      All DOCUMENTS evidencing, showing or relating to payments to or transfers

14  of value from MGA or ISAAC LARIAN to MARLOW.

15
16  RESPONSE TO REQUEST NO. 15:

17      The MGA Entities incorporate by reference their General Objections as

18  though fully set forth herein.  The MGA Entities further object to the extent that this

19  request seeks information that is protected from disclosure under the attorney-client

20  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

21  Entities further object to this request to the extent it seeks documents protected by

22  the accountant-client privilege.  The MGA Entities further object to the request on

23  the grounds that it seeks documents protected from disclosure by applicable federal

24  and state tax return privileges.  The MGA Entities further object to this request to the

25  extent that it seeks documents that contain trade secrets, confidential, commercially

26  sensitive and/or other proprietary or competitive information that is subject to the

27  MGA Entities' or any other person's constitutional, statutory or common law right of

28

23

1  privacy or protection.  The MGA Entities further object that this request calls for the
2  production of documents that are not relevant to a claim or defense in the pending
3  litigation or reasonably calculated to lead to the discovery of admissible evidence.
4  The MGA Entities further object to this request as being overly broad, burdensome
5  and harassing to a non-party to the extent that it seeks to force Moss Adams to
6  produce documents or information available from parties to the litigation. The MGA
7  Entities further object to this request on the grounds that it is overbroad as to subject
8  matter and time; in particular, the MGA Entities object to the definitions of "MGA,"
9  "ISAAC LARIAN" and "MARLOW," on the grounds that they are overbroad, vague
10  and ambiguous.  The MGA Entities further object on the grounds that this request is
11  vague, ambiguous and overbroad, particularly as to the meaning of "relating to,"
12  "showing," "evidencing," "payments" and "transfers of value."

13  REQUEST NO. 16:
14

15      All DOCUMENTS evidencing, showing or relating to non-payroll payments
16  to or transfers of value from MGA or ISAAC LARIAN to any FORMER MATTEL
17  EMPLOYEE.

18  RESPONSE TO REQUEST NO. 16:
19

20      The MGA Entities incorporate by reference their General Objections as
21  though fully set forth herein.  The MGA Entities further object to the extent that this
22  request seeks information that is protected from disclosure under the attorney-client
23  privilege, the work product doctrine and/or the joint interest privilege.  The MGA
24  Entities further object to this request to the extent it seeks documents protected by
25  the accountant-client privilege.  The MGA Entities further object to the request on
26  the grounds that it seeks documents protected from disclosure by applicable federal
27  and state tax return privileges.  The MGA Entities further object to this request to the
28

24

1  extent that it seeks documents that contain trade secrets, confidential, commercially

2  sensitive and/or other proprietary or competitive information that is subject to the

3  MGA Entities' or any other person's constitutional, statutory or common law right of

4  privacy or protection.  The MGA Entities further object that this request calls for the

5  production of documents that are not relevant to a claim or defense in the pending

6  litigation or reasonably calculated to lead to the discovery of admissible evidence.

7  The MGA Entities further object to this request as being overly broad, burdensome

8  and harassing to a non-party to the extent that it seeks to force Moss Adams to

9  produce documents or information available from parties to the litigation. The MGA

10  Entities further object to this request on the grounds that it is overbroad as to subject

11  matter and time; in particular, the MGA Entities object to the definitions of "MGA,"

12  "ISAAC LARIAN" and "FORMER MATTEL EMPLOYEE," on the grounds that

13  they are overbroad, vague and ambiguous.  The MGA Entities further object on the

14  grounds that this request is vague, ambiguous and overbroad, particularly as to the

15  meaning of "relating to," "showing," "evidencing," "non-payroll payments" and

16  "transfers of value."

17
18  REQUEST NO. 17:

19      DOCUMENTS sufficient to show YOUR policies or practices relating to the

20  preservation, retention or destruction of DOCUMENTS sought by or the subject of

21  Request Nos. 1 through 14.

22
23  RESPONSE TO REQUEST NO. 17:

24      The MGA Entities incorporate by reference their General Objections as

25  though fully set forth herein.  The MGA Entities further object to the extent that this

26  request seeks information that is protected from disclosure under the attorney-client

27  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

28

25

1  Entities further object to this request to the extent it seeks documents protected by

2  the accountant-client privilege.  The MGA Entities further object to the request on

3  the grounds that it seeks documents protected from disclosure by applicable federal

4  and state tax return privileges.  The MGA Entities further object to this request to the

5  extent that it seeks documents that contain trade secrets, confidential, commercially

6  sensitive and/or other proprietary or competitive information that is subject to the

7  MGA Entities' or any other person's constitutional, statutory or common law right of

8  privacy or protection.  The MGA Entities further object that this request calls for the

9  production of documents that are not relevant to a claim or defense in the pending

10 litigation or reasonably calculated to lead to the discovery of admissible evidence.

11 The MGA Entities further object to this request as being overly broad, burdensome

12 and harassing to a non-party.  The MGA Entities further object to this request on the

13 grounds that it is overbroad as to subject matter and time; in particular, the MGA

14 Entities object to the definition of "YOUR," on the grounds that it is overbroad,

15 vague and ambiguous.  The MGA Entities further object on the grounds that this

16 request is vague, ambiguous and overbroad, particularly as to the meaning of

17 "relating to," "sufficient," "practices" and "policies."

18 REQUEST NO. 18:
19

20     DOCUMENTS sufficient to identify any other PERSON who has served as

21 MGA's, ISAAC LARIAN's, FARHAD LARIAN's, the ISAAC AND ANGELA

22 LARIAN FAMILY TRUST or the ISAAC LARIAN ANNUITY TRUST'S auditor(s)

23 or accountant(s) since January 1, 1999.

24 RESPONSE TO REQUEST NO. 18:
25

26     The MGA Entities incorporate by reference their General Objections as

27 though fully set forth herein.  The MGA Entities further object to the extent that this

28                                          26

1  request seeks information that is protected from disclosure under the attorney-client

2  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

3  Entities further object to this request to the extent it seeks documents protected by

4  the accountant-client privilege.  The MGA Entities further object to the request to the

5  extent that it seeks documents protected from disclosure by applicable federal and

6  state tax return privileges.  The MGA Entities further object to this request to the

7  extent that it seeks documents that contain trade secrets, confidential, commercially

8  sensitive and/or other proprietary or competitive information that is subject to the

9  MGA Entities' or any other person's constitutional, statutory or common law right of

10  privacy or protection.  The MGA Entities further object that this request calls for the

11  production of documents that are not relevant to a claim or defense in the pending

12  litigation or reasonably calculated to lead to the discovery of admissible evidence.

13  The MGA Entities further object to this request as being overly broad, burdensome

14  and harassing to a non-party to the extent that it seeks to force Moss Adams to

15  produce documents or information available from parties to the litigation. The MGA

16  Entities further object to this request on the grounds that it is overbroad as to subject

17  matter and time; in particular, the MGA Entities object to the definitions of "MGA,"

18  "ISAAC LARIAN," "FARHAD LARIAN," "ISAAC AND ANGELA LARIAN

19  FAMILY TRUST," and "ISAAC LARIAN ANNUITY TRUST," on the grounds

20  that they are overbroad, vague and ambiguous.  The MGA Entities further object on

21  the grounds that this request is vague, ambiguous and overbroad, particularly as to

22  the meaning of "sufficient to identify."

23
24  REQUEST NO. 19:

25      DOCUMENTS sufficient to identify all trusts or other entity in which ISAAC

26  LARIAN is an officer, director, member, shareholder or trustee; has or had a direct

27  or indirect ownership interest; had or has direct or indirect control or of which he or

28
                                    27

1 | any member of his family (by blood or marriage) is or was an owner, shareholder,
2 | employee, officer, director, trustee, member or beneficiary.

3
RESPONSE TO REQUEST NO. 19:
4

5      The MGA Entities incorporate by reference their General Objections as
6 though fully set forth herein. The MGA Entities further object to the extent that this
7 request seeks information that is protected from disclosure under the attorney-client
8 privilege, the work product doctrine and/or the joint interest privilege. The MGA
9 Entities further object to this request to the extent it seeks documents protected by
10 the accountant-client privilege. The MGA Entities further object to the request to the
11 extent that it seeks documents protected from disclosure by applicable federal and
12 state tax return privileges. The MGA Entities further object to this request to the
13 extent that it seeks documents that contain trade secrets, confidential, commercially
14 sensitive and/or other proprietary or competitive information that is subject to the
15 MGA Entities' or any other person's constitutional, statutory or common law right of
16 privacy or protection. The MGA Entities further object that this request calls for the
17 production of documents that are not relevant to a claim or defense in the pending
18 litigation or reasonably calculated to lead to the discovery of admissible evidence.
19 The MGA Entities further object to this request as being overly broad, burdensome
20 and harassing to a non-party to the extent that it seeks to force Moss Adams to
21 produce documents or information available from parties to the litigation. The MGA
22 Entities further object to this request on the grounds that it is overbroad as to subject
23 matter and time; in particular, the MGA Entities object to the definition of "ISAAC
24 LARIAN," on the grounds that it is overbroad, vague and ambiguous. The MGA
25 Entities further object on the grounds that this request is vague, ambiguous and
26 overbroad, particularly as to the meaning of "indirect," "control" and "beneficiary."

27
28

28

OBJECTIONS OF THE MGA ENTITIES TO
MATTEL'S SUBPOENA FOR PRODUCTION OF DOCUMENTS TO MOSS ADAMS

EXHIBIT 26
PAGE 274

1

2  DATED:  December 12, 2007

3                               SKADDEN, ARPS, SLATE, MEAGHER &
                               FLOM, LLP

4                               By: _____

5                                     Thomas J. Nolan
                               Attorneys for Counter-Defendants, MGA
6                               ENTERTAINMENT, INC., ISAAC LARIAN,
                               MGA ENTERTAINMENT (HK) LIMITED,
7                               AND MGAE de MEXICO S.R.L. de C.V.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

OBJECTIONS OF THE MGA ENTITIES TO
MATTEL'S SUBPOENA FOR PRODUCTION OF DOCUMENTS TO MOSS ADAMS

255113-Palo Alto Server 1A - MSW

EXHIBIT 26
PAGE 225

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3
4

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

5

On December 12, 2007, I served the foregoing document described as:

6
7

**OBJECTIONS OF MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, AND MGAE DE MEXICO S.R.L. DE C.V. TO MATTEL INC.'S SUBPOENA TO MOSS ADAMS**

8

on the interested parties in this action addressed as follows:

9
10

**SEE ATTACHED SERVICE LIST**

11
12

[X]   (BY PERSONAL SERVICE)   ☐   By personally delivering a copy to the person served. (FEDERAL) (As Noted.)

13
14

[X]   I caused such document to be hand delivered to the office of the addressee. (FEDERAL) (As Noted.)

15
16
17
18
19

[X]   BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with Federal Express and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices. (As Noted.)

20
21

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

22

Executed on December 12, 2007 at Los Angeles, California.

23
24

Allison G. Velkes
PRINT NAME                          SIGNATURE

25
26
27
28

PROOF OF SERVICE                                              NO. CV 04-9049 SGL (RNBx)

EXHIBIT 2
PAGE 276

1 | <u>SERVICE LIST</u>

2

3 | John B. Quinn, Esq.                                    John W. Keker, Esq.
Michael T. Zeller, Esq.                              Michael H. Page, Esq.
4 | Jon D. Corey, Esq.                                    Keker & Van Nest, LLP
Timothy L. Alger, Esq.                              710 Sansome Street
5 | Quinn Emanuel Urquhart Oliver &            San Francisco, CA  94111
Hedges, LLP                                            (415)  391-5400
6 | 865 South Figueroa Street, 10th Floor     (415)  397-7188 (Fax)
Los Angeles, CA  90017-2543
7 | (213)  443-3000                                      Attorneys for Carter Bryant
(213)  443-3100 (Fax)                             [Federal Express]
8
Attorneys for Mattel, Inc.
9 | [Personal Service]

10

11
Mark E. Overland, Esq.                            Moss Adams
12 | Alexander H. Cote, Esq.                          11766 Wilshire Boulevard, Suite 900
David C. Scheper, Esq.                             Los Angeles, CA  90025
13 | Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750      [Federal Express]
14 | Los Angeles, CA  90071
(213)  613-4655
15 | (213)  613-4656 (Fax)

16 | Attorneys for Carlos Gustavo Machado
Gomez
17 | [Federal Express]

18

19

20

21

22

23

24

25

26

27

28

1

EXHIBIT 26
PAGE 277

# EXHIBIT 27

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

|  |  |
|---|---|
| CARTER BRYANT, an individual,<br><br>            Plaintiff,<br><br>     v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>            Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. |  |

## I.  INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1]  Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT 27
PAGE 278

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

Production of Documents is GRANTED.

## II.  BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls.  This highly

lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made

commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of

Bratz dolls now rival Mattel's Barbie doll.

A.  Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed

suit against its former employee Bryant in state court asserting claims for breach of contract,

breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion.  Mattel

employed Bryant as a product designer from September 1995 through April 1998, and from

January 1999 through October 2000.  Upon starting his second term, Bryant signed an Employee

Confidential Information and Inventions Agreement which required him not to engage in any

employment or business other than for Mattel, or invest or assist in any manner any business

competitive with the business or future business plans of Mattel.  Bryant also assigned to Mattel

all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his

employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that

he had not worked for any of Mattel's competitors in the prior twelve months and had not

engaged in any business dealings creating a conflict of interest.  Bryant agreed to notify Mattel of

any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for

a Mattel competitor (later identified as MGA).  Bryant entered into an agreement with MGA to

provide product design services on a "top priority" basis.[2]  The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel.  In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls.  In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 22
PAGE 280

C. <u>Bryant's Second Notice of Removal (CV 04-9059)</u>

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. <u>Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)</u>

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. <u>MGA's Complaint Against Mattel (CV 05-2727)</u>

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. <u>Mattel's Second Motion to Remand its Complaint against Bryant</u>

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT 27
PAGE 281

### G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted.  The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

### H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes.  For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA.  Mattel also sought leave to add a copyright infringement claim.  Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727.  The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

### I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004.  Bryant served objections and responses on July 16, 2004.  The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005.  That motion, however,

EXHIBIT 27
PAGE 282

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

EXHIBIT 27
PAGE 283

1    1,600 pages of documents to date.  Mattel contends, however, that the production is inadequate

2    and consistent with a pattern of stonewalling.[3]  Accordingly, Mattel filed the instant motion to

3    compel responsive documents, which includes a request for sanctions in the amount of $7,805.

4         J.   Mattel's Motion to Compel Production of Documents

5

6         Mattel's motion has three parts.  First, Mattel seeks an order compelling Bryant to produce

7    the following categories of requested documents:  (a) documents relating to Bratz designs created

8    by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for

9    Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-

10   related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA

11   that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was

12   exposed to while working at Mattel.  Mattel's Motion at 6.  Mattel asserts that these categories of

13   documents are relevant to establish Bryant's liability and would reveal works rightfully owned by

14

15   Mattel.

16

17        Second, as to other categories of documents which Bryant has agreed to produce, Mattel

18   contends that Bryant has imposed unjustified limitations.  According to Mattel, Bryant will not

19   produce any responsive documents that were created after the suit was filed; Bryant will not

20   produce any communications with MGA "created" after the end of his Mattel employment;

21   Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view,

22   "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known

23   contracts between him and MGA and refuses to produce non-privileged communications relating

24   to those contracts; and Bryant has withheld all but one category of financial documents relating to

25

26

27

28

29

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear.
Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed.  Mattel again obtained a
court order compelling the deposition and sanctions.  To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              7

EXHIBIT 27
PAGE 284

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]  There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

EXHIBIT 27
PAGE 285

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT 27
PAGE 286

requests and that the stipulation controlled to the extent they were inconsistent.  Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation.  If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future.  Bryant's Opposition at 1:24-2:3.  Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel.  Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects.  In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees.  Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights.  Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

III.  DISCUSSION

A.  <u>The Parties Did Not Reach a Stipulation to Resolve the Instant Motion</u>

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion.  The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute.  Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant.  It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions.  Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT 27
PAGE 282

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B.  Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C.  Mattel's Requests for Production

Request Nos. 2, 13, 48:  Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements.  Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT 27
PAGE 288

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

<u>Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA</u>

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT 27
PAGE 289

employment, regardless of whether they resulted in a Bratz doll released in June of 2001.  Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001.  Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA.  Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA.  Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information.  Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns.  Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion.  Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel.  Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT 27
PAGE 290

when the payments were actually made.  Such payments might also lead to evidence to support

Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright

infringement.  Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the

Bratz drawings and works by copying and preparing derivative works from those works.  Under

the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual

damages.  17 U.S.C. §504(b).  The works that potentially infringe Mattel's copyrights, therefore,

include all Bratz doll products that MGA released to the market.  For this reason, and for reasons

already discussed in the previous subsection, Bryant's limited production of documents relating to

only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret

misappropriation.  Payments could show when and what trade secret information Bryant and

other defendants allegedly misappropriated from Mattel.  Any proof of trade secret theft is also

relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual

causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality

concerns raised by Bryant.  Among other things, the protective order provides protection for

confidential trade secret information.  It has two tiers of protection, allowing a party to designate

documents as either "Confidential" or "Confidential – Attorney's Eyes Only."  The protective

order also requires the parties to use information produced in discovery only for purposes of this

litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged

documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.  Bryant,

EXHIBIT 29
PAGE 291

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

EXHIBIT 24
PAGE 292

privileged documents responsive to Request Nos. 20, 23, 27, and 28.  However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA.  Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51:  Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9:  Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration.  Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper.  Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1.  Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16



EXHIBIT 27
PAGE 2893

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant

need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30,

31, 32, 33, 34, 35, 36, 45, and 46.

2.  Bryant shall produce all redacted documents in un-redacted form, except for redactions

that are justified by the attorney-client privilege or work product doctrine or his telephone records

pursuant to the terms of this Order.

3.  Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5),

Fed.R.Civ.P.

4.  Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his

computers for forensic imaging.

5.  Bryant shall complete his production by producing missing attachments, fax cover

pages and all other missing responsive documents.

6.  Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7.  Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

Mattel shall file this Order with the Clerk of Court forthwith.


IT IS SO ORDERED.


Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT 27
PAGE 294