EXHIBIT 39

**CONFORMED COPY**



1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

                          EASTERN DIVISION
9

10
                                      CASE NO. C 04-09049 SGL (RNBx)
11  CARTER BRYANT, an individual,     JAMS Reference No.1100049530

12            Plaintiff,

13       v.                           Consolidated with
                                      Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,   Case No. CV 05-2727

15            Defendant.              **ORDER GRANTING MATTEL'S
                                      MOTION TO COMPEL CARTER
16                                    BRYANT TO ANSWER REQUESTS
                                      FOR ADMISSION OR TO ORDER
17                                    REQUESTS ADMITTED; DENYING
                                      REQUEST FOR MONETARY
18                                    SANCTIONS**

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23                    I. INTRODUCTION

24       On June 26, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Carter Bryant

25  To Answer Requests For Admission Or To Order Requests Admitted And For Monetary

26  Sanctions."  More specifically, Mattel seeks an order compelling Carter Bryant ("Bryant") to

27  answer Request Nos. 33, 34, 100, 106, 112, 118, 126, 127, 129, 131, 133, 135, 137, 139, 141 and

28  Bryant v. Mattel, Inc.,                                              1
    CV-04-09049 SGL (RNBx)

1   143 in Mattel's Third Set of Requests for Admission or an order that such Requests are deemed

2   admitted. Mattel also seeks $3,500 in sanctions. On July 3, 2007, Bryant submitted an opposition

3   brief, and on July 9, 2007, Mattel submitted a reply brief. The matter was heard on August 13,

4   2007. Having considered the motion papers and the comments of counsel at the hearing, Mattel's

5   motion to compel Bryant to answer requests for admission is granted and the request for sanctions

6   is denied.

7                              II. BACKGROUND

8          In February of 2007, Mattel served its Third Set of Requests for Admission to Bryant (the

9   "Requests"). Among other things, the Requests seek information regarding: (a) the timing of

10  meetings between Bryant and MGA regarding Bratz, work performed by Bryant on Bratz, designs

11  created by Bryant for Bratz and payments made to Bryant by MGA for Bratz; (b) the contract

12  between MGA and Bryant whereby Bryant purported to assign all of his rights, title and interest

13  in Bratz to MGA; and (c) whether specific Bratz works subject to copyright registrations are

14  derivative of other specific Bratz works.

15         In March of 2007, Bryant served his responses. In response to some of the requests asking

16  Bryant to admit that certain works were derivative of other Bratz works[1], Bryant asserted

17  numerous objections, including that they "call[ed] for the disclosure of information subject to the

18  attorney-client privilege, the work product doctrine and other applicable privileges" and "call[ed]

19  for a legal conclusion." See Bryant's Responses to Request Nos. 100, 106, 112, 118, 126, 127,

20  129, 131, 133, 135, 137, 139, 141 and 143, Kidman Decl., Ex. 2. Bryant also responded that "the

21  information known or readily obtainable" by Bryant was "insufficient" to enable him to admit or

22  deny the requests.

23         Bryant also objected and refused to answer two requests for admission regarding the

24  validity and enforceability of his contract with MGA on the grounds that the requests called for a

25  "legal conclusion" and "the disclosure of information subject to the attorney-client privilege, the

26  _____

27  [1]  Hereinafter, these requests are collectively referred to as the "requests for admission regarding derivative works."

28

EXHIBIT  39   PAGE  84

work product doctrine, and other applicable privileges." See Bryant's Responses to Request Nos. 33 and 34, Kidman Decl., Ex. 2.

After meeting and conferring, Bryant agreed to provide supplemental responses to the requests for admission regarding derivative works. Bryant, however, persisted in his objection to the two requests regarding his contract with MGA on "legal conclusion" and privilege grounds.

Bryant served supplemental and amended responses on May 29, June 11, and June 29, 2007. With respect to the requests for admission regarding derivative works, Bryant's responses consisted of objections on the grounds that the requests called for a legal conclusion and "for the disclosure of information subject to the attorney-client privilege, the work product doctrine, and other applicable privileges." See Bryant's Responses to Request Nos. 100, 106, 112, 118, 126, 127, 129, 131, 133, 135, 137, 139, 141 and 143, Kidman Decl., Ex. 6.

Mattel contends that MGA's objections and refusal to answer have no merit. More specifically, Mattel contends that Rule 36, Fed.R.Civ.P., provides that requests for admission may relate to the application of law to fact and the ultimate issues in the case. Mattel contends that only requests to admit pure conclusions of law unrelated to the facts of the case are objectionable, and that none of its requests for admission even remotely ask for pure questions of law. Further, Mattel contends that Bryant's objection that the requests call for privileged information and work product is without merit. Mattel argues that a party cannot avoid answering requests for admission that involve the application of law to fact by claiming that it needs to confer with counsel in order to do so. Mattel contends that to hold otherwise would effectively gut the provision of Rule 36 authorizing such requests.

Bryant contends that Mattel's requests for admission improperly call for ultimate legal conclusions, relying primarily upon Playboy Enterprises, Inc. v. Welles, 60 F.Supp.2d 1050, 1057 (S.D. Cal. 1999). Bryant also contends that the requests for admission are improper because they seek information covered by the attorney-client privilege or joint defense privilege or the work product doctrine. Bryant asserts that any legal opinion he may have of whether a work is derivative of another inevitably will seek the legal opinions of, and communications from, his counsel.

EXHIBIT 39  PAGE 723

### III. DISCUSSION

Rule 36 of the Federal Rules of Civil Procedure governs requests for admission and provides, in pertinent part, that "[a] party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request." Fed.R.Civ.P. 36(a). Further, "[a] party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why the party cannot admit or deny it." Id.

The Advisory Committee Notes to the 1970 Amendment to Rule 36 provide the following additional guidance:

> As revised, the subdivision provides that a request may be made to admit any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law to fact. It thereby eliminates the requirement that the matters be "of fact." This change resolves conflicts in the court decisions as to whether a request to admit matters of "opinion" and matters involving "mixed law and fact" is proper under the rule. . . .

> ✳   ✳   ✳

> Not only is it difficult as a practical matter to separate "fact" from "opinion," see 4 *Moore's Federal Practice* ¶36.04 (2d ed. 1966); cf. 2A Barron & Holtzoff, *Federal Practice and Procedure* 317 (Wright ed. 1961), but an admission on a matter of opinion may facilitate proof or narrow the issues or both. An admission of a matter involving the application of law to fact may, in a given case, even more clearly narrow the issues. For example, an admission that an employee acted in the scope of his employment may remove a major issue from the trial. In *McSparran v Hanigan*, [225 F. Supp. 628 (E.D. Pa. 1963)], plaintiff admitted that "the premises on which said accident occurred, were occupied or under the control" of one of the defendants, 225 F.Supp. at 636. This admission, involving law as well as fact, removed one of the issues from the lawsuit and thereby reduced the proof required at trial. The amended provision does not authorize requests for admissions of law unrelated to the facts of the case.

1970 Advisory Committee Notes to Rule 36, Fed.R.Civ.P.

<u>Nos. 100, 106, 112, 118, 126-127, 129, 131, 133, 135, 137, 139, 141, 143 re Derivative Works</u>

Mattel's requests for admission regarding derivative works all follow the same format. For example, Request for Admission No. 100 asks Bryant to "[a]dmit that the work registered as

EXHIBIT 39 PAGE 724

1    V A 1-090-287 is a derivative of the work registered as V A 1-218-487. Kidman Decl., Ex. 1, p.
2    21.
3        Rule 36 plainly states that requests for admission may "relate to statements or opinions of
4    fact or the application of law to fact." Mattel's requests for admission regarding derivative works
5    fall within this permissible category. Courts have required parties to answer requests for
6    admission similar to Mattel's requests. For example, in McSparran, supra, the plaintiff admitted
7    that "the premises on which said accident occurred, were occupied or under the control" of one of
8    the defendants. In Marchand v. Mercy Med. Ctr., 22 F.3d 933, 937 (9th Cir. 1994), the Ninth
9    Circuit found that a request to admit that defendant's care and treatment of plaintiff failed to
10   comply with the "applicable standards of care" was permissible. In First Options of Chicago, Inc.
11   v. Wallenstein, 1996 WL 729816 (E.D. Pa. 1996), the court ordered defendants to answer
12   requests to admit that they "owed a fiduciary duty" to certain creditors to preserve corporate
13   assets. Id. at *3. In Treister v. PNC Bank, 2007 WL 521935 (S.D. Fla. 2007), the court found
14   that a request for defendant to admit that it was not required to provide plaintiffs with copies of
15   cancelled checks drawn on their accounts "clearly calls for an application of law to fact." Id. at
     *2.
16       The cases relied upon by Bryant do not dictate a contrary result. Bryant cites to Playboy
17   Enterprises, Inc. v. Welles, 60 F.Supp.2d 1050, 1057 (S.D. Cal. 1999), where the court held that a
18   defendant could properly object and refuse to answer a request to (1) admit that she was a public
19   figure as defined in a Supreme Court case, and (2) admit that a specific contract provision
20   required her to obtain permission from Playboy Enterprises before using the designation
21   "Playmate of the Year." The holding, however, is debatable. One of the claims in the suit was
22   for defamation, which has different elements depending upon whether the party asserting
23   defamation is a public or non-public figure. Furthermore, whether a party is a public figure or
24   non-public figure could be reasonably characterized as a mixed question of fact and law. The
25   second request for an admission could also be reasonably characterized as a mixed question of
26   fact and law. "A party's *understanding* of the *meaning* or intent of a document is a statement of
27   fact. Thus, where the meaning of a document is at issue in the case, an RFA may seek the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 39 PAGE 725

1    admission or denial of the responding party's understanding of the *meaning or intent* of the

2    contract." <u>See</u> 11 Schwarzer, Tashima & Wagstaffe, <u>Cal. Prac. Guide: Fed. Civ.Pro. Before</u>

3    <u>Trial</u>, 11:2010 (The Rutter Group 2006) (emphasis in the original), citing <u>Booth Oil Site Admin.</u>

4    <u>Group v. Safety-Kleen Corp.</u>, 194 F.R.D. 76, 80 (W.D. NY 2000). In any event, the <u>Playboy</u>

5    decision is not binding precedent.

6            Bryant also cites to <u>Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.</u>, No. C03-4340,

7    2006 WL 3290402, at *2 (N.D. Cal. 2006). In <u>Google</u>, the court concluded that a request

8    compelling defendant to admit that "under certain described circumstances no 'use' of American

9    Blind's trademarks would occur within the meaning of Lanham Act" was an impermissible

10   request for a conclusion of law, and therefore, defendant need not admit or deny, but could simply

11   respond with objections. It is unclear, however, what the "certain described circumstances" might

12   have been in <u>Google</u>. If the "certain described circumstances" to which the court referred were

13   purely hypothetical, then the <u>Google</u> decision is consistent with the admonition in the 1970

14   Advisory Committee Notes that Rule 36 "does not authorize requests for admission of law

15   unrelated to the facts of the case."

16          Another case relied upon by Bryant, <u>Disability Rights Council of Greater Washington v.</u>

17   <u>Washington Metropolitan Area Transit Authority</u>, 234 F.R.D. 1, 3, (D. D.C. 2006), involved

18   purely legal conclusions, and therefore is distinguishable. The last case relied upon by Bryant,

19   <u>Photon, Inc. v. Harris Intertype, Inc.</u>, 28 F.R.D. 327, 328 (D. Mass. 1961), was issued well before

20   the 1970 amendments to Rule 36, and therefore is unreliable.

21          In sum, Mattel's requests for admission regarding derivative works are consistent with the

22   plain language of Rule 36 and several cases holding that requests for admission calling for

23   application of law to facts are permissible. <u>See e.g., Marchand</u>, <u>supra</u>; <u>First Options of Chicago,</u>

24   <u>Inc.</u>, <u>supra</u>; and <u>Treister</u>, <u>supra</u>. Therefore, Bryant's "legal conclusion" objection is overruled.

25          Bryant's privilege and work product objections are also without merit. The fact that

26   Bryant may need to consult with counsel to respond to the requests does not make the response

27   privileged. To hold otherwise would effectively gut the provision of Rule 36 authorizing requests

28   that call for the application of law to fact. <u>See also Convergent Business Systems, Inc. v.</u>

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT __3ª__ PAGE _726_

1    Diamond Reporting, Inc., 1989 WL 92038, at *1 (E.D.N.Y. 1988) ("Seeking the facts and

2    documents which support a particular allegation in a complaint violates neither the attorney-client

3    or work product privileges.").

4          Mattel's motion is granted as to the requests for admission regarding derivative works.

5    Nos. 33 and 34 re Contract Between Bryant and MGA

6          Request No. 33 asks Bryant to "[a]dmit that YOU do not contest that the contract between

7    MGA and YOU attached as Exhibits 30 is valid." Request No. 34 similarly asks Bryant to

8    "[a]dmit that YOU do not contest that the contract between MGA and YOU attached as Exhibit

9    30 is enforceable."

     These two requests for admission do not call for pure legal conclusions. Rather they are

10   akin to contention interrogatories that are routinely asked and answered. Therefore, Bryant's

11   objections to the requests are overruled and Bryant is ordered to admit or deny Request Nos. 33

12   and 34 consistent with Rule 36(a), Fed.R.Civ.P.

13                                   IV. CONCLUSION

14         For the reasons set forth above, Mattel's motion to compel Bryant to answer requests for

15   admission is granted. Bryant shall admit or deny the requests in accordance with Rule 36(a),

16   Fed.R.Civ.P., no later than August 30, 2007. The request for sanctions is denied.

17         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

18   Master, Mattel shall file this Order with the Clerk of Court forthwith.

19

20   Dated: August 20, 2007

21                                        HON. EDWARD A. INFANTE (Ret.)
                                                   Discovery Master
22

23

24

25

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                        7

EXHIBIT 39 PAGE 727

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 20, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL CARTER BRYANT TO ANSWER REQUESTS FOR ADMISSION OR TO ORDER REQUESTS ADMITTED; DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | ltrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 20, 2007, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT 39  PAGE 728

EXHIBIT 40

1 │ KEKER & VAN NEST, LLP
  │ JOHN W. KEKER - #49092
2 │ jkeker@kvn.com
  │ MICHAEL H. PAGE - #154913
3 │ mpage@kvn.com
  │ CHRISTA M. ANDERSON - #184325
4 │ canderson@kvn.com
  │ 710 Sansome Street
5 │ San Francisco, CA  94111-1704
  │ Telephone: (415) 391-5400
6 │ Facsimile:  (415) 397-7188

7 │ Attorneys for Plaintiff
  │ CARTER BRYANT

8 │

9 │

10 │     UNITED STATES DISTRICT COURT

11 │     CENTRAL DISTRICT OF CALIFORNIA

12 │     EASTERN DIVISION

13 │

| 14 | CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727 |
|---|---|---|
| 15 | Plaintiff, | |
| 16 | v. | **CARTER BRYANT AND MGA DEFENDANTS' JOINT OPPOSITION TO MATTEL, INC.'S MOTION FOR LEAVE TO SERVE A SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS' AFFIRMATIVE DEFENSES** |
| 17 | MATTEL, INC. a Delaware Corporation, | |
| 18 | Defendant. | |
| 19 | | |
| 20 | CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Date: December 3, 2007<br>Time: 10:00 a.m.<br>Dept: Courtroom 1<br>Judge: Hon. Stephen G. Larson |
| 21 | | |
| 22 | | Date Comp. Filed: April 13, 2005 |
| 23 | | Discovery Cut-Off: Jan. 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

24 │
25 │
26 │
27 │
28 │

---

CARTER BRYANT AND MGA DEFENDANTS' JOINT OPPOSITION TO MATTEL, INC.'S MOTION FOR
LEAVE TO SERVE A SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS' AFFIRMATIVE
DEFENSES
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 40  PAGE 329

## I.   INTRODUCTION

Mattel seeks leave to file at least 37 additional interrogatories—masquerading as one, but seeking a full account of all details supporting each and every affirmative defense raised—and to do so without counting them among the 50 interrogatories that the Court has already authorized per side in this litigation, and that Mattel has exhausted.  Such a vast expansion of Mattel's (and no other party's) interrogatories would be unduly burdensome and unfair to Bryant and the MGA defendants, and is neither necessary nor reasonable.  Nor would it satisfy Mattel's insatiable appetite for more discovery, through which Mattel seeks to make this relatively straightforward case as complex and burdensome as possible. Mattel's motion should be denied.

## II.   ARGUMENT

Mattel seeks a vast and unreasonable expansion of the interrogatories the Court has authorized in this case, offering no real justification beyond Mattel's own failure to plan strategically.  The Court should not reward Mattel's lack of foresight or encourage its insatiable desire for discovery by imposing unreasonable burdens on Bryant and MGA, and should deny Mattel's motion.

**A.   Mattel must make a particularized showing of good cause to justify additional interrogatories.**

Like any other form of discovery authorized under the Federal Rules, excess interrogatories may be permitted only where they are consistent with the general principles set forth in Federal Rule of Civil Procedure 26.  *See* Fed. R. Civ. P. 33(a) ("Leave to serve additional interrogatories shall be granted to the extent consistent with the principles of Rule 26(b)(2).").  Under Rule 26, the Court "shall" limit discovery (i) if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive, (ii) " if "the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought," *or* (iii) if

1

406656.01

EXHIBIT 40 PAGE 730

1  "the burden or expense of the proposed discovery outweighs its likely benefit,"

2  taking into account the needs of the case and other factors. Fed. R. Civ. P.

3  26(b)(2)(C).  Accordingly, a "particularized showing" of need under the Rule 26

4  principles is required to support a request for additional interrogatories under Rule

5  33(a).  *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 586-

6  87 (D. Minn. 1999); *see also Duncan v. Paragon Pub., Inc.*, 204 F.R.D. 127, 128

7  (S.D. Ind. 2001) ("The party seeking leave must set forth a 'particularized

8  showing' to exceed the limit of twenty-five interrogatories."); *Whittingham v.*

9  *Amherst College*, 163 F.R.D. 170, 171 (D. Mass. 1995) (Federal Rules require

10  party to make specific showing of necessity, and to first exhaust available

11  discovery before seeking leave of Court for supplemental discovery).

12      Mattel points to the Court's statements at the February 12, 2007 scheduling

13  conference that more interrogatories would be authorized "if there's a need for it,"

14  rather than evaluating its request under the rules outlined above.  Bryant and the

15  MGA defendants appreciate that the Court is willing to provide additional

16  discovery, if needed, but Mattel must still demonstrate a particularized need under

17  the principles set forth in the Federal Rules.  Mattel has not done so here, nor can

18  it.

19  **B.    The additional interrogatories Mattel seeks should be denied because they are not consistent with the principles of Rule 26.**

20

21      First, a clarification.  Mattel repeatedly states that it seeks leave to serve "a

22  single interrogatory." *E.g.*, Motion at 1.  However, its own analysis (applying

23  Judge Infante's ruling on exactly this point) indicates that the "single"

24  interrogatory is not in fact one, but the compound equivalent of at least 37 separate

25  interrogatories.  *See* Motion at 3, 7; Proctor Decl. Exh. 15 (September 5, 2007

26  Discovery Order) at 7-8.  The Court should disregard Mattel's attempt to minimize

27  the impact of the additional interrogatories it seeks, and should evaluate (and deny)

28  Mattel's request based on its true, extensive scope.  By Mattel's own count, its

2

EXHIBIT 40   PAGE 731

1   current request would increase the 50 interrogatories the Court has already

2   authorized by more than two-thirds, and would bring the total number of

3   interrogatories Mattel will have propounded to at least 87, more than three times

4   the presumptive limit of 25 authorized under Rule 33. *See* Fed. R. Civ. P. 33(a).

5        Aside from this attempt to downplay the scope of what it seeks, Mattel's

6   principal justification for seeking more interrogatories is that it has used the 50

7   interrogatories the Court already authorized, on other matters, and does not have

8   enough left to ask all the questions it wants. *See* Motion at 8 ("Because [Mattel's

9   additional interrogatories] cannot be asked and answered within the limits

10  previously set by the Court, the Court should grant Mattel leave to propound this

11  interrogatory as a stand-alone, supplemental interrogatory that does not count

12  towards the fifty interrogatory limit."). In other words, Mattel claims it should get

13  more interrogatories because it wants them. This is plainly insufficient under Rule

14  26(b), which sets standards precisely to impose a measure of judicial restraint on

15  litigants' desire for vast and burdensome discovery. *See* Fed. R. Civ. P.

16  26(b)(2)(C). Although the Court may increase the allowed interrogatories in the

17  face of a particularized showing of need, interrogatories are not intended to be

18  unlimited either under the current Rules or this Court's prior rulings. *See id.*; 8A

19  Wright & Miller, Fed. Prac. & Proc. § 2168.1 (explaining that the current

20  numerical limits were adopted in 1993 in part because other mandatory discovery

21  disclosures reduce the need to rely on interrogatories).

22       Mattel also argues that it is entitled to additional interrogatories because they

23  would seek "relevant information Mattel is entitled to discover." Motion at 8. But

24  while additional interrogatories might indeed help Mattel to obtain relevant

25  information, that too is not the standard for more discovery under Rule 26. *See*

26  Fed. R. Civ. P. 26(b)(2)(C). The fact that the information sought is relevant is

27  certainly a necessary precondition for additional interrogatories—they would be

28

3

406656.01

EXHIBIT 40 PAGE 737

1  entirely inappropriate otherwise—but it is far from a sufficient one. Mattel must

2  also demonstrate that it could not obtain the information through already-

3  authorized discovery means. Mattel's claim that contention interrogatories are the

4  preferred form of discovery for obtaining the information it is seeking, regardless

5  of the burden such interrogatories place on Bryant and the MGA defendants, *see*

6  Motion at 9, does not satisfy its burden under Rule 26.

7       In sum, Mattel has failed to make a particularized showing of need to take

8  additional discovery through the means of contention interrogatories with respect

9  to any of the defendants' asserted affirmative defenses.

10  **C.**   **Mattel already has had ample opportunity through interrogatories and other discovery means to obtain the information it is seeking, and it should not be rewarded for the strategic decision to use its interrogatories to obtain information on other topics.**

12       Mattel already has been granted 50 interrogatories against each defendant in

13  this case. In February 2007, the Court granted each side 50 interrogatories.

14  Proctor Decl. Exh. 8; *id.* Exh. 9. The Discovery Master has since ruled that Mattel

15  may serve an identical interrogatory on all six defendants, using only one of its 50

16  interrogatories, making the actual count greatly lopsided in Mattel's favor. *See*

17  Proctor Decl. Exh. 15 (September 5, 2007 Discovery Order), at 4 ("Although the

18  district court's order does not speak directly to this issue, the most reasonable

19  approach is to count one identical interrogatory served on all six of the Defendants

20  as one interrogatory."). Thus, even without the supplemental interrogatories it

21  seeks here, Mattel already has been granted the right to serve 50 interrogatories on

22  each of the defendants in this case. And Mattel has now used all of these 50

23  interrogatories. Indeed, while the present motion was pending—and thus without

24  knowing or, apparently, caring whether it would obtain leave to serve additional

25  interrogatories relating to the defendants' affirmative defenses that it claims are so

26  important—Mattel elected to serve four additional sets of interrogatories (its

27  Fourth through Seventh), more than exhausting its last nine interrogatories. *See*

28

4

CARTER BRYANT AND MGA DEFENDANTS' JOINT OPPOSITION TO MATTEL, INC.'S MOTION FOR LEAVE TO SERVE A SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS' AFFIRMATIVE DEFENSES
CASE NO. CV 04-09049 SGL (RNBx)

406856.01

EXHIBIT 40 PAGE 733

Case 2:04-cv-09049-DOC-RNB    Document 1322-18    Filed 12/21/07    Page 16 of 69    Page ID
#:13098
Case 2:04-cv-09049-SGL-RNB    Document 1131    Filed 11/19/2007    Page 6 of 11

1    Declaration of Audrey Walton-Hadlock ("Walton-Hadlock Decl.") Exhs. A–D;

2    Proctor Decl. Exh. 15 (September 5, 2007 Discovery Order).

3            Taken together with all of the other discovery Mattel has taken in this

4    litigation, those 50 interrogatories are more than adequate.  In addition to the 50

5    interrogatories it has now served on each defendant, Mattel has issued thousands of

6    requests for admission, many of which are disguised interrogatories that

7    improperly seek discovery, not admissions.  *See, e.g.*, Walton-Hadlock Decl. ¶ 3

8    (Mattel's Sixth Set of Requests for Admission to Bryant contains 782 RFAs); *id.*

9    Exh. E (Mattel's Fourth Set of Requests for Admission to Bryant (157 RFAs)); *cf.*

10   8A Wright & Miller, Fed. Prac. & Proc. Civ. 2d § 2168.1 (explaining that requests

11   for admission should not be used to substitute for other forms of discovery).

12   Mattel also has taken nearly twenty depositions to date, including three full days of

13   testimony from Carter Bryant.  And Mattel has issued hundreds of requests for

14   production, which have resulted in the production of more than three million pages

15   of documents by the defendants in this case.  In short, Mattel has had every

16   opportunity to explore and test Bryant and the MGA defendants' affirmative

17   defenses in this litigation, but it instead chose to focus its discovery on other

18   topics.

19           Despite Mattel's claims to the contrary, Mattel has known for a long time

20   that most of the affirmative defenses defendants have raised were at issue in the

21   case.  As stated in Mattel's Motion, Bryant raised nineteen affirmative defenses in

22   his May 14, 2004 answer to Mattel's original claims against him.  Motion at 1;

23   Proctor Decl. Exh. 1.  Most of the fourteen affirmative defenses in Bryant's most

24   recent pleading are identical to the defenses he raised more than three years ago in

25   that original answer to Mattel's original (and largely overlapping) claims against

26   him, although many now provide more factual detail.  *See* Walton-Hadlock Decl.

27   Exh. F (Bryant's Second Amended Reply to Counterclaims).  Similarly, many of

28

5

CARTER BRYANT AND MGA DEFENDANTS' JOINT OPPOSITION TO MATTEL, INC.'S MOTION FOR
LEAVE TO SERVE A SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS' AFFIRMATIVE
DEFENSES
CASE NO. CV 04-09049 SGL (RNBx)

406858.01

EXHIBIT 40 PAGE 734

1    the claims raised in MGA's own complaint against Mattel plainly overlap with

2    MGA's affirmative defenses to Mattel's claims. *See* Walton-Hadlock Decl. Exh.

3    G (MGA's Complaint); Walton-Hadlock Decl. Exh. H (MGA's Amended

4    Answer); Motion at 3 (listing defenses). Thus, Mattel was on notice of many of

5    defendants' affirmative defenses well before the most recent pleadings reflecting

6    them, and before Mattel had expended its allotment of interrogatories.

7         Mattel could have chosen to reserve some of its 50 interrogatories to

8    investigate defendants' inevitable affirmative defenses, to the extent any defenses

9    might raise novel or surprising issues. It chose not to, squandered its wealth of

10   interrogatories, and now asks the Court simply to ignore that choice. The Court

11   should not reward Mattel for its own conscious strategic choices, especially when

12   Mattel has already had ample opportunity to obtain discovery in this litigation

13   through interrogatories and other means, and additional discovery would

14   unreasonably burden defendants. *See* Fed. R. Civ. P. 26(b)(2)(C). Rather, the

15   Court should consider Mattel's request for additional interrogatories in the broader

16   context of other discovery in this case, including Mattel's established pattern of

17   seeking ever-increasing discovery. That context, as well as the sweeping nature of

18   Mattel's request at issue, makes clear that judicial control—not additional

19   interrogatories—is called for here.

20        Mattel has made clear by its actions that whatever discovery the parties

21   agree to or the Court authorizes, Mattel will always want more. Indeed, separate

22   and apart from the additional interrogatories it is requesting in the present motion,

23   Mattel has stated in meet and confer correspondence with the defendants that it

24   intends to request leave to serve 10-15 more interrogatories on other topics. Mattel

25   also has indicated that it intends to seek leave to take dozens more depositions, for

26   a total number of depositions far beyond the limit of 24 imposed by the Court in

27   February 2007. Walton-Hadlock Decl. Exh. I (October 26, 2007 Letter from Zeller

28

---

6

CARTER BRYANT AND MGA DEFENDANTS' JOINT OPPOSITION TO MATTEL, INC.'S MOTION FOR
LEAVE TO SERVE A SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS' AFFIRMATIVE
DEFENSES
CASE NO. CV 04-09049 SGL (RNBx)

406656.01

EXHIBIT __40__ PAGE __735__

Case 2:04-cv-09049-DOC-RNB   Document 1322-18   Filed 12/21/07   Page 18 of 69   Page ID
#:13100
Case 2:04-cv-09049-SGL-RNB      Document 1131      Filed 11/19/2007      Page 8 of 11

1   to Nolan et al.); *id.* Exh. J (Order dated February 12, 2007).  In light of Mattel's

2   past discovery conduct, and its stated intention to seek leave to serve still more

3   interrogatories, it is apparent that Mattel is either unwilling or unable to adhere to

4   reasonable discovery limits.  Consequently, the Court must now step in and keep

5   the discovery in this case within reasonable bounds.  The additional interrogatories

6   Mattel seeks here would impose further burdens, out of all proportion to the benefit

7   Mattel could conceivably obtain, by requiring each of the defendants to set out for

8   Mattel every detail supporting every element of every claimed affirmative defense.

9   Mattel's motion should be denied in its entirety.

10  **D.    Even if some expansion of interrogatories were warranted (which it is
            not), the Court should not grant Mattel's sweeping and one-sided
11          request, but should instead grant each side a narrowly-drawn and equal
            number of additional interrogatories based on a careful review of actual
12          need.**

13          Even if some additional interrogatories were warranted—which, as

14  explained above, they are not—Mattel should not be permitted the sweeping and

15  one-sided expansion of discovery it seeks, but should be required to identify more

16  carefully any areas it believes require further discovery.

17          In addition to the more basic problems with Mattel's request for

18  supplemental interrogatories spelled out above, Mattel's request is not at all

19  narrowly tailored to any purported need, and should not be granted in the form

20  sought.  Mattel does not identify which of its 37 interrogatories it expects to gain

21  useful information by serving, among the many that will simply serve to harass

22  Bryant and MGA by forcing them to respond to pointless and duplicative

23  discovery.  Instead, it bases its sweeping request on claims that "many" of the

24  asserted defenses "interject wholly new issues into this already complex litigation,"

25  and gives a few examples of defenses asserted by defendant Machado that

26  purportedly fall in this category.  Motion at 8.  But even if Mattel's claims were

27  accurate as to some affirmative defenses (which they are not), the discovery Mattel

28

7

CARTER BRYANT AND MGA DEFENDANTS' JOINT OPPOSITION TO MATTEL, INC.'S MOTION FOR
LEAVE TO SERVE A SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS' AFFIRMATIVE
DEFENSES
CASE NO. CV 04-09049 SGL (RNBx)

406656.01

EXHIBIT 40   PAGE 736

1    requests would affect many other defenses for which they are demonstrably false.

2    For example, Mattel's summary of the defendants' affirmative defenses reveals

3    that some of those affirmative defenses (though plead as such to avoid any possible

4    waiver) merely negate elements of Mattel's own claims, and plainly inject no new

5    issues into the case, so they could not justify increasing discovery at this late date.

6    *See* Motion at 3 (listing, for example, "Information Readily Ascertainable," "Lack

7    of Causation" and "Lack of Ownership").

8         Moreover, Mattel's proposed interrogatory, which seeks to require the

9    defendants to "state *all* facts" and "IDENTIFY *all* PERSONS … and *all*

10   DOCUMENTS that REFER OR RELATE to such facts", supporting each of their

11   affirmative defense is exactly the type of "blunderbuss" interrogatory that

12   numerous courts have held to be inappropriate and abusive. *Lawrence v. First*

13   *Kansas Bank & Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *see also*

14   *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D. N.M. 2007) ("Contention

15   interrogatories should not require a party to provide the equivalent of a narrative

16   account of its case, including every evidentiary fact, details of testimony of

17   supporting witnesses, and the contents of supporting documents."); *Grynberg v.*

18   *Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, *6, (D. Colo. May 3,

19   2006) (ruling that interrogatory that asks defendant to "plead and prove its entire

20   case, and to marshal all evidence, in response to one written interrogatory" is

21   overbroad and "constitutes an abuse of the discovery process").  This is

22   particularly true with respect to the defendant's negatively-framed affirmative

23   defenses, such as "Lack of Causation" and "Lack of ownership", because the

24   universe of potentially responsive information to prove a negative is "almost

25   endless." *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998)

26   (rejecting discovery requests seeking "all facts, documents, and witnesses that

27   support the denial of a statement or allegation of fact").

28

**8**

406656.01

EXHIBIT 40 PAGE 737

1        In short, like many of Mattel's discovery requests, in this and other

2    litigation, the interrogatories it seeks leave to serve are thus "abusively drawn" in

3    that they make "no attempt . . . to tailor the information request to the immediate

4    needs of the case." *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792,

5    813 (9th Cir. 2003) (affirming district court's quashing of Mattel's abusive

6    subpoena). Accordingly, even if the Court were to find that some more narrowly-

7    drawn additional interrogatories might be appropriate (which it should not),

8    Mattel's sweeping request should be denied.

9        Mattel also seeks special treatment for its extra interrogatories, asking that

10   the Court not count them against any authorized number of interrogatories, but

11   instead allow them simply as unnumbered "supplemental" interrogatories. Motion

12   at 1. Such one-sided treatment in discovery would be absolutely unfair to

13   defendants, and should not be permitted. Even if the Court were to find that the

14   issues in this case required more extensive discovery (and it should not), that

15   discovery would still need to be fair, reasonable, and even-handed. *See* Fed. R.

16   Civ. P. 26. Any expansion of the interrogatories authorized in this litigation should

17   be equal for both sides, and every additional interrogatory should be counted and

18   considered. Defendants have adhered to the discovery limits previously imposed

19   by the Court and have planned their discovery accordingly. Given the Federal

20   Rules' basic goal of ensuring fairness in litigation, Mattel should not be allowed to

21   pretend that the interrogatories at issue in this motion do not "count" as part of the

22   oppressive and burdensome weight of discovery it has already imposed on

23   defendants, and will continue to increase until prevented by this Court.

24       **III.   CONCLUSION**

25       For all the foregoing reasons, Mattel's motion for leave to file supplemental

26   interrogatories regarding defendants' affirmative defenses should be denied.

27       Respectfully submitted,

28

9

406858.01

EXHIBIT  40  PAGE 738

1   Dated: November 19, 2007          KEKER & VAN NEST, LLP

2

3                             By: _____

4                               MICHAEL H. PAGE
                                Attorneys for Plaintiff

5                               CARTER BRYANT

6

7   Dated: November 19, 2007          SKADDEN, ARPS, SLATE,
                                MEAGHER & FLOM LLP

8

9                               By: _____

10                               THOMAS J. NOLAN
                               Attorneys for Defendants

11                               MGA DEFENDANTS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

CARTER BRYANT AND MGA DEFENDANTS' JOINT OPPOSITION TO MATTEL, INC.'S MOTION FOR
LEAVE TO SERVE A SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS' AFFIRMATIVE
DEFENSES
CASE NO. CV 04-09049 SGL (RNBx)

406656.01

EXHIBIT 40 PAGE 739

EXHIBIT 41

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 42

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

| CARTER BRYANT, an individual,<br><br>                  Plaintiff,<br><br>          vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                  Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)<br><br>Discovery Cut-off:  None Set<br>Pre-trial Conference:  None Set<br>Trial Date:  None Set |
| --- | --- |

2-1

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

07209/2048031.1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 15, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.  Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped.

DATED: February 1, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____
        Michael T. Zeller
        Attorneys for Mattel, Inc.

-1-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT   Exhibit 42 Page 824

**Exhibit A**

# EXHIBIT A

     1.     "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

     2.     "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

     3.     "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also, previously or subsequently called) and any product or doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product or doll or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each EMBODIMENT of such doll or any portion thereof. As used herein, "product or doll or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

     4.     "DESIGN" or "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

07209/2048031.

EXHIBIT   **Exhibit 42 Page 826**

foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5. "EMBODIMENT" means any representation, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

6. The DRAWINGS means those documents produced as Bates Nos. MGA000053-57, MGA000392-395, MGA000435-439, MGA000455-481 MGA004606, MGA004608, MGA004640, MGA005065, MGA006423-6426, MGA006432-6436, MGA006438-06440, MGA006442-6467, and SL00016-45.

7. "BASED ON" means copied or reproduced from, substantially similar to, based on or derived from in any manner, whether in whole or in part.

8. "CREATED" means produced, prepared, created, authored, conceived of or reduced to practice, whether in whole or in part and whether alone or jointly with others.

9. "IDENTIFY" or "IDENTITY" means the following:

(a) With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b) With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

07209/2048031.

EXHIBIT   Exhibit 42 Page 827

or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)     With reference to an EMBODIMENT, means the IDENTITY of the individual author(s) or creator(s) of the EMBODIMENT as well as of each other individual who contributed in any manner to the EMBODIMENT; the form, material and medium of the EMBODIMENT (*e.g.*, preliminary three-dimensional resin sculpture, final three-dimensional wax sculpture, digitized file of final three-dimensional wax sculpture, two-dimensional design drawing on paper); each title or name of the EMBODIMENT; the start and end date(s) of the EMBODIMENT's creation or preparation; and the current location of the EMBODIMENT.

10.     "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

11.     "ACTION" shall mean this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

12.     "DIGITAL INFORMATION" shall mean any information created or stored digitally, including but not limited to electronically, magnetically or optically.

13.     "SYSTEM" or "SYSTEMS" shall mean any computer or network of computers or other network devices that allow a two or more computers to share information and equipment, including but not limited to local area networks, wide area networks, storage area networks, client-server networks or peer-to-peer networks. The

07209/2048031.

4

EXHIBIT   Exhibit 42 Page 828

use of the term "SYSTEM" or "SYSTEMS" shall also include the brand, model number, technical specifications, and capacities of the computers who are part of each such SYSTEM.

14.   "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

15.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

16.   "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and

-5-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT   Exhibit 42 Page 829

directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

17.    The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

## Topics of Examination

1.    The origin, conception, creation, design, sculpting, development, engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether such was released in any form to the public), including without limitation the timing thereof, the IDENTITY of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved therein, and the nature, extent and time period(s) of each such PERSON's involvement.

2.    The circumstances under which BRATZ or any BRATZ DESIGN first came to YOUR attention, including without limitation the timing, method and manner thereof and the IDENTITY of each PERSON with knowledge thereof.

3.    The identity of each doll, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

4.    To the extent not covered by Topic 3, each EMBODIMENT of any doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

5.    The work, activities and/or services that BRYANT performed for or with YOU or on YOUR behalf prior to June 30, 2001.

6.    The origin, conception and creation of DESIGNS that BRYANT CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever claimed to have, any right, title or interest (whether in whole or in part).

7.    The identity of, and the design, development, sculpting, development, engineering, rotocasting, modeling, prototyping and first sale of, any doll, product, work or item that has been produced, developed, manufactured, licensed, sold or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN referenced in Topic 6.

8.    Each EMBODIMENT of BRATZ that was CREATED prior to June 30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was CREATED prior to June 30, 2001.

9.    The DRAWINGS, including without limitation the authorship, creation, dissemination and use thereof and the source, meaning, authenticity and timing of any dates thereon.

10.    The IDENTITY of each vendor or third party who performed or contributed, or who was considered, solicited, requested, proposed or contemplated by YOU or BRYANT to perform or contribute, any activities, work or services in connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR COMMUNICATIONS therewith, and the nature, extent and timing of such activities, work or services.

11.    The exhibition, or proposed, offered, contemplated or requested exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise discussed with or communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that REFER OR RELATE thereto.

12.    The actual, proposed, requested or contemplated manufacture, fabrication or tooling (including the production of molds) of BRATZ, including without

07209/2048031.

-7-

EXHIBIT          Exhibit 42 Page 831

1    limitation the timing thereof and the IDENTITY of each manufacturer and potential
2    manufacturer used, proposed or considered.

3           13.    COMMUNICATIONS prior to June 30, 2001 between YOU and
4    any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or
5    potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE
6    TO BRATZ or any BRATZ DESIGN.

7           14.    When and where BRATZ was first manufactured, shipped,
8    distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

9           15.    The licensing, including without limitation the proposed or
10   requested licensing, of BRATZ or any BRATZ DESIGN prior to December 31, 2001,
11   including without limitation the timing thereof, the IDENTITY of each such licensee or
12   proposed or requested licensee and the product(s) or proposed product(s) involved.

13          16.    COMMUNICATIONS between YOU and BRYANT prior to
14   January 1, 2001, including without limitation the content, means and timing of such
15   COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and
16   the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

17          17.    COMMUNICATIONS that BRYANT made for YOU or on YOUR
18   behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior
19   to June 30, 2001.

20          18.    YOUR agreements and contracts with BRYANT, including without
21   limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
22   REFER OR RELATE thereto, and any actual or proposed amendments thereto.

23          19.    Each agreement or contract between YOU and any PERSON other
24   than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that
25   REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of
26   when such agreement or contract was negotiated or executed), including without
27   limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
28   REFER OR RELATE thereto, and any actual or proposed amendments thereto.

07209/2048031.

-8-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

20.   YOUR knowledge, prior to April 29, 2004, of BRYANT's contracts and agreements with, and his obligations to, MATTEL.

21.   YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ project information and DESIGNS prior to June 30, 2001.

22.   The payment of money or anything of value by or for YOU or on YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work, services or activities performed by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made), (b) for DESIGNS CREATED by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in connection with BRATZ or any BRATZ DESIGN at any time, including without limitation the timing, manner and amount(s) thereof and the reasons therefor.

23.   The payment of royalties to, for or on behalf of BRYANT made by or for YOU or on YOUR behalf, including the timing, manner and amounts of such payments and the reasons therefor.

24.   Any indemnification and fee arrangement that YOU and/or BRYANT has sought, proposed, requested or obtained in connection with this ACTION.

25.   YOUR revenues and profits from BRATZ, including without limitation YOUR gross and net profits, and YOUR costs associated therewith.

26.   YOUR net worth.

27.   The payment of money or anything of value that YOU have made or offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and reasons therefor.

28.   COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

-9-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT   Exhibit 42 Page 833

1    29.    COMMUNICATIONS made by, for or on behalf of YOU, whether

2    directly or indirectly, with Anna Rhee, including without limitation since February

3    2005 (but not including any such COMMUNICATIONS with her legal counsel).

4    30.    COMMUNICATIONS between YOU and Veronica Marlow,

5    Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah

6    Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO

7    BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all

8    DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

9    31.    The IDENTITY of each PERSON who, at any time since January 1,

10   1998, has performed any work or services for, by or on behalf of YOU while such

11   PERSON was employed by MATTEL, the nature and timing of each such PERSON's

12   work or services and the amount(s) paid by YOU to each such PERSON.

13   32.    COMMUNICATIONS between YOU and BRYANT that REFER

14   OR RELATE TO MATTEL or REFER OR RELATE TO any DOCUMENT that was

15   prepared, authored or created by MATTEL that BRYANT has ever provided to, shown,

16   described to, communicated to or disclosed in any manner to YOU.

17   33.    The applications for registration and the registrations for copyright,

18   patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ

19   DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT,

20   including without limitation COMMUNICATIONS pertaining thereto.

21   34.    Other than those previously filed and served in this ACTION or in

22   which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony,

23   transcripts, declarations, affidavits and other sworn written statements of any other type

24   by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ

25   THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of

26   when such testimony or sworn statement was taken, given, signed, made or filed).

27   35.    COMMUNICATIONS between YOU and Universal Commerce

28   Corp., Ltd. prior to June 30, 2001.

07209/2048031

-10-

EXHIBIT   Exhibit 42 Page 834

36.     The source, meaning and authenticity of SL00013-14, including without limitation the timing of its creation and the handwriting thereon.

37.     YOUR corporate structure since January 1, 1999, including without limitation the relationship between MGA Entertainment, Inc. and any of its predecessors, affiliates and subsidiaries.

38.     The retention or destruction policies, procedures and practices for YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO BRATZ since January 1, 1999, including without limitation the retention or destruction of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced, modified or upgraded and (b) when PERSONS leave YOUR employ.

39.     The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

40.     The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan or information) that YOU received in any manner from any PERSON who was at the time an employee of MATTEL or who had previously been an employee of MATTEL.

41.     The testing of or sampling from DOCUMENTS that REFER OR RELATE TO BRATZ or BRYANT, including without limitation such testing or sampling in connection with any ink, paper or chemical analysis performed or attempted to be performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results and reports relating thereto.

42.     YOUR DIGITAL INFORMATION data backup policies, practices and procedures from January 1, 1999 to the present, including without limitation the location and specifications of any media used to preserve YOUR DIGITAL

-11-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT   Exhibit 42 Page 835

1 | INFORMATION and the software, if any, used to preserve YOUR DIGITAL
2 | INFORMATION.

3 |     43.    The DIGITAL INFORMATION SYSTEMS and the application
4 | software that YOU have used since January 1, 1999 that REFER OR RELATE TO
5 | design, development, planning, inventory, manufacturing, sales, shipping and
6 | accounting, including without limitation the common or shared storage for such
7 | DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL
8 | INFORMATION SYSTEMS, and any changes, modifications or upgrades to such
9 | DIGITAL INFORMATION SYSTEMS or application software.

10 |     44.    The IDENTITY of PERSONS, including without limitation
11 | vendors, who since January 1, 1999 have been responsible for or supported YOUR
12 | DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of
13 | such PERSON who serviced or provided hardware for YOUR DIGITAL
14 | INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL
15 | INFORMATION, including but not limited to internet service providers, and provided
16 | analytical, training or implementation services with respect to YOUR DIGITAL
17 | INFORMATION SYSTEMS.

18 |     45.    The electronic messaging SYSTEMS used by YOUR employees
19 | within the scope of their employment between January 1, 1999 and the present,
20 | including but not limited to electronic mail, instant messenger, telephone or voice-mail,
21 | and the routing of such electronic messages to, from or within MGA.

22 |     46.    YOUR policies, practices and procedures regarding the use of
23 | transportable media that contain or are capable of containing DIGITAL
24 | INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB
25 | drives, portable hard drives, digital cameras and personal digital assistants.

26
27
28

07209/2048031.

-12-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On February 1, 2007, I served true copies of the following document(s) described as **SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on the parties in this action as follows:

**BY MAIL TO:**

Keith A. Jacoby, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Telephone: (310) 553-0308
Facsimile: (310) 553-5583

I enclosed the foregoing as well as a **COURTESY COPY** into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. (Courtesy copy

**BY PERSONAL SERVICE ON:**

Diana M. Torres, Esq.
O'Melveney & Meyers
400 So. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
**Facsimile: (213) 430-6407**

I delivered such envelope(s) **(COURTESY COPY INCLUDED)** by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 1, 2007, at Los Angeles, California.

Mia Albert

Dave Quintana

07209/2049386.1

EXHIBIT   **Exhibit 42 Page 837**

# EXHIBIT 43

**CONFORMED COPY**

FILED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone:   (213) 443-3000
7   Facsimile:   (213) 443-3100

2007 MAY 18  PM 3: 45

CALENDARED

8   Attorneys for Mattel, Inc.

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12                          EASTERN DIVISION

13   CARTER BRYANT, an individual,      | Case No. CV 04-09049 SGL (RNBx)

14              Plaintiff,              | Consolidated with
                                        | Case No. CV 04-09059
15          vs.                         | Case No. CV 05-02727

16   MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER**

17              Defendant.              | Hon. Edward A. Infante (Ret.)
                                        | Discovery Master
18   ─────────────────────────────     |
     AND CONSOLIDATED CASES             | [PROPOSED] ORDER GRANTING
19                                      | MATTEL INC.'S MOTION TO
                                        | COMPEL MGA TO PRODUCE
20                                      | WITNESSES FOR DEPOSITION
                                        | PURSUANT TO RULE 30(B)(6)
21
                                        | Date:  May 15, 2007
22                                      | Time:  8:15 a.m.
                                        | Place:  Telephonic
23
                                        | Discovery Cut-Off:  October 22, 2007
24                                      | Pre-Trial Conference:  January 14, 2008
                                        | Trial Date:  February 12, 2008
25

26

27

28

07209/2121176.1

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

C5/18/57

EXHIBIT   **Exhibit 43 Page 838**

# [PROPOSED] ORDER

Having considered Mattel, Inc.'s Motion To Compel MGA To Produce Witnesses For Deposition Pursuant To Rule 30(b)(6) (the "Motion"), and all other papers and argument submitted in support of or opposition to the Motion, and finding good cause therefor, Mattel's Motion is GRANTED.

IT IS HEREBY ORDERED that:

1.    MGA shall make Paula Garcia available for deposition on or before June 15, 2007 as a designee on Topics 1-3 and 6-8 of Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 16, 2005 and in her individual capacity.

2.    MGA shall confirm its designees and the dates of the designees' availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 1, 2007 (the "Second Notice") on or before May 22, 2007.

3.    MGA shall make its designees for all Topics in the Second Notice, except Topic Nos. 25 and 26, available for deposition on or before June 30, 2007.

4.    The parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice.  Such depositions may take place after June 30, 2007.

5.    All of MGA's objections and/or limitations regarding the Topics in Mattel's Rule 30(b)(6) deposition notices are overruled.

//
//
//
//
//
//

07209/2121176.1

-1-
ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

6.    Mattel's request for sanctions is denied.

**IT IS SO ORDERED.**

DATED: May 16, , 2007

_____
Hon. Edward A. Infante (Ret.)
Discovery Master

07209/2121176:1

-2-

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 17,

2007, I served the attached ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL

MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6)

in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on May 17, 2007, at San Francisco, California

Anthony R. Sales

EXHIBIT 44

1  DALE M. CENDALI (admitted *pro hac vice*)
   MICHAEL KEATS *(admitted pro hac vice)*
2  DIANA L. TORRES (S.B. #162284)
   JAMES P. JENAL (S.B. # 180190)
3  O'MELVENY & MYERS LLP
   400 South Hope Street
4  Los Angeles, CA 90071-2899
   Telephone: (213) 430-6000
5  Facsimile: (213) 430-6407
   Email:      jjenal@omm.com
6

7  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK, JACOBS,
8  WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
9  Los Angeles, CA 90067
   Telephone: (310) 553-3000
10 Facsimile: (310) 557-9815

11 Attorneys for MGA Entertainment, Inc.

12

13             **UNITED STATES DISTRICT COURT**

14             **CENTRAL DISTRICT OF CALIFORNIA**

               **EASTERN DIVISION**
15

16 | CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx)
17 |            Plaintiff, | (consolidated with CV 04-9059 & 05-2727)

18 |      v. | **MGA ENTERTAINMENT INC.'S**
   | MATTEL, INC., a Delaware | **MEMORANDUM OF POINTS AND**
19 | Corporation, | **AUTHORITIES IN SUPPORT OF**
   | | **MOTION OBJECTING TO PORTIONS**
20 |            Defendant. | **OF THE DISCOVERY MASTER'S**
   | | **MAY 15, 2007 ORDER GRANTING**
21 | | **MATTEL'S MOTION TO COMPEL**
   | | **PRODUCTION OF DOCUMENTS AND**
22 | | **INTERROGATORY RESPONSES BY**
   | | **MGA**
23 | |
   | | **[Federal Rule of Civil Procedure 72(a);**
24 | | **Local Rule 72-2.1]**

25 | CONSOLIDATED WITH | Hearing Date: _____, 2007
   | MATTEL, INC. v. BRYANT and | Time: _____ a.m.
26 | MGA ENTERTAINMENT, INC. v. | Location: Courtroom 1
   | MATTEL, INC. |
27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................2

II.    BACKGROUND ............................................................................4

     A.    Mattel's Seeks Production of Documents Regarding Ink-Testing........4

     B.    Mattel Seeks Documents from Bryant and MGA Concerning Unreleased Products ........................................................6

     C.    The Special Master Orders Production of Documents and Supplementation of Interrogatories by May 31, 2007 ........................7

III.    ARGUMENT ...............................................................................8

     A.    The Special Master's Order Compelling MGA to Produce Documents Concerning Ink-testing is Wrong as a Matter of Law .......8

     B.    The Special Master's Order Compelling MGA to Produce Unreleased Product Information for 2007, 2008 and Beyond is Clearly Erroneous ................................................... 11

         1.    Documents Concerning Unreleased Product Information Are Trade Secrets And Are Not Necessary to Mattel's Prosecution of its Claims ................................................ 11

         2.    Mattel's Requests Are Overbroad.............................................. 14

         3.    In the Alternative The Stipulated Protective Order Governing Documents Concerning Unreleased Products Scheduled for Release in 2007 Should be Extended to Cover Products Scheduled for Release in 2008 ....................... 15

     C.    The Special Master Imposed An Undue Burden on MGA by Requiring it To Produce Documents and Supplement Interrogatories by May 31, 2007 ......................................... 15

IV.    CONCLUSION............................................................ 16

- i -

EXHIBIT    Exhibit 44 Page 843

# TABLE OF AUTHORITIES

**Page**

### *CASES*

1 Fed. R. Serv. 3d 609 (S.D.N.Y. 1985) ................................................................. 14

28 U.S.C. §636(b)(1)(C) ................................................................................................8

Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th
    Cir.) ..................................................................................................................... 12

Fed. R. Civ. P. 26(c)(7) ..................................................................................... 11, 12

Fed. Rule Civ. Pro. 26(b)(4)(B) ...................................................................................9

In re Napster, Inc. v. Copyright Litigation, 479 F.3d 1078, 1089 (9th
    Cir. 2007) ...............................................................................................................8

In re Pizza Time Theatre Securities Litigation, 113 F.R.D. at 96 .......................... 11

In re Shell Oil Refinery 132 F.R.D. 437, 440-441 (D. La. 1990)...............................9

Moore U.S.A. Inc. v. The Standard Register Co., 206 F.R.D. 72, 75
    (W.D.N.Y. 2001)....................................................................................................9

Moore U.S.A., 206 F.R.D. at 75; Perry v. United States, CA3:96–CV-
    2038-T, 1997 U.S. Dist. LEXIS 23875 at * 10 (D. Tex. Feb. 4,
    1997) ..................................................................................................................... 10

see Am. Heavy Moving & Rigging Co. v. Robb Techs., L.L.C., No.
    2:04-CV-00933-JCM (GWF), 2006 U.S. Dist. LEXIS 51276, *10
    (D. Nev. July 24, 2006)....................................................................................... 12

Tennenbaum v. Deloitte & Touche, 77 F.3d 337, 340 (9th Cir. 1996) ....................8

USA v. Bell, C 94-20342, 1994 U.S. Dist. LEXIS 17408 at *10 (N.D.
    Cal. November 9, 1994).........................................................................................9

EXHIBIT    Exhibit 44 Page 844

1    This memorandum of points and authorities is filed in support of MGA

2    Entertainment, Inc.'s ("MGA") Objections to Discovery Master's May 15, 2007

3    Order Granting Mattel, Inc.'s ("Mattel") Motion to Compel Production of

4    Documents and Interrogatory Answers by MGA (hereinafter "the Order") in the

5    case originally captioned *Mattel, Inc. v. Bryant*, Case No. CV 04-9059 SGL

6    (RNBx).[1]

7    **I.   INTRODUCTION**

8        This is a *de novo* appeal from an order of the Special Master directing MGA

9    to produce, among other things, the work product of a consulting expert retained by

10   and operating under the direction of its outside trial counsel.  The Special Master's

11   Order violates Rule 26 of the Federal Rules of Civil Procedure, which precludes

12   discovery of communications with a non-testifying consulting expert absent

13   extraordinary circumstances.  The Special Master ordered MGA to produce "all

14   documents that refer or relate to any testing of or sampling from any documents

15   that refer or relate to Bratz or Bryant, including without limitation any such testing

16   or sampling in connection with any ink, paper or chemical analysis to date any such

17   documents and including without limitation all results and reports relating thereto."[2]

18   The only documents responsive to this request are communications with an ink

19   expert retained by MGA's trial counsel.  The Special Master did not cite any

20   extraordinary circumstances in rendering its decision.  Indeed, Mattel did not even

21   argue that there were any extraordinary circumstances sufficient to justify invading

22   MGA's counsel's work product privilege.  Rather, the Special Master merely

23   concluded that an ink test performed by a retained consulting expert might be

24

25   ───────────────────────────────
     [1] The parties met and conferred on May 24, 2007, but were unable to resolve the issues
26   raised in this appeal.
     [2] Declaration of Kendall J. Burr In Support of MGA Entertainment, Inc.'s Motion
27   Objecting to Portions of the Discovery Master's May 15, 2007 Order Granting Mattel's
     Motion to Compel Production of Documents and Interrogatory Responses by MGA
28   ("Burr Decl."), Exh. 10 at 11:7-11:10.

                                    -2-

1    "relevant" to the issues in this case.[3]

2    The conclusory assertion that privileged documents and work product might

3    be relevant to litigation does not make them producible.  No federal court has

4    required the disclosure of a consulting expert's work product in the absence of a

5    showing of extraordinary circumstances.   There is no reason why this Court should

6    be the first to do so.  MGA respectfully submits that the Special Master's Order is

7    contrary to controlling law and should be vacated and reversed.

8    The Special Master also ordered MGA to produce numerous documents and

9    drawings related to *unreleased* products -- MGA's most valuable and highly

10   protected trade secrets -- including products currently in development and

11   scheduled for release in 2007, 2008 and beyond.[4]  Mattel never even asked for these

12   documents in discovery -- the Special Master simply entered an order broad enough

13   to encompass them.  These documents have absolutely no bearing on the issues in

14   this phase of the litigation, namely, whether Carter Bryant ("Bryant") breached his

15   employment agreements while working at Mattel, and whether Bryant

16   misappropriated Mattel's "property" when he left Mattel to work with MGA on his

17   "Bratz" concept.  Because these documents are not essential to Mattel's case, the

18   risk of disclosure of MGA's most highly prized trade secrets outweighs Mattel's

19   need to obtain these documents.  Moreover, the required production is overbroad

20   and imposes a severe burden on MGA because it requires MGA to produce *all* of

21   its unreleased product drawings from 2001 and beyond to the very same entity,

22   Mattel, which has been misappropriating MGA's intellectual property for the past

23   six years.

24   MGA respectfully submits that the Special Master's Order is clearly

25   erroneous and should be vacated and reversed.  In the alternative, MGA seeks

26   extension of the modified protective order entered in this case to unreleased

27   _____

28   [3] *Id.* at 11:12-11:13.
     [4] *Id.* at 8:23-9:4.

- 3 -

1    products scheduled for release in 2008.

2    Lastly, the Special Master ordered MGA to produce by May 31, 2007, *all*
3    documents responsive to Mattel's requests (including volumes of documents
4    referring or relating to "Bratz") from MGA, as well as from MGA's indirect
5    subsidiary in Hong Kong; and to supplement its responses to Mattel's
6    interrogatories.[5] The issue of timing was not briefed by the parties, was not
7    discussed at oral argument, and it was not anticipated that MGA would be given a
8    mere two weeks and two days to collect, review and produce responsive documents
9    from both MGA and its indirect subsidiary in the Far East and to collect sufficient
10   information to supplement MGA's responses to ten interrogatories. The Special
11   Master's order patently imposes an undue burden on MGA and should be vacated
12   and reversed. MGA should be given an additional 60 days to comply with the
13   Special Master's Order.

14   ## II.    BACKGROUND

15   ### A.    Mattel's Seeks Production of Documents Regarding Ink-Testing

16   On March 14, 2005, Mattel propounded its First Set of Requests for the
17   Production of Documents by MGA which included Request No. 92 (hereinafter
18   "Request No. 92") that refer or relate to "any testing of or sampling" of
19   documents.[6] MGA refused to respond to this request on the grounds that it sought
20   work product from a consulting expert and was wholly premature with respect to
21   any undesignated testifying expert.[7] MGA therefore withheld production of
22   documents responsive to this Request because the only existing responsive
23   documents were privileged communications between MGA's outside counsel and a
24   consulting expert.

25   In June 2006, Mattel requested that this Court appoint an expert in the field

26

27   [5] Burr Decl., Exh. 10 at 14:12-14:14.
     [6] Burr Decl., Exh. 1 at 24:19-24:24.
28   [7] Burr Decl., Exh. 2 at 82:20-82:23.

- 4 -

1    of questioned documents examination and ink and paper chemistry analysis.[8]  In an

2    apparent ploy to obtain discovery concerning ink-testing conducted by MGA's

3    consulting expert that it was not otherwise entitled to, Mattel implied in its motion

4    papers that MGA and/or Bryant had destroyed evidence by making holes in "Bratz"

5    drawings.[9]  Mattel's insinuation in its papers was so strong that this Court issued an

6    order to show cause as to why it should not appoint an expert.  At argument,

7    however, Mattel's counsel was forced to concede that no evidence had been

8    compromised.[10]  To convince the Court of the complete inaccuracy of Mattel's

9    accusations, however, MGA and Bryant were forced to explain in general terms

10   certain ink-testing performed by a consulting expert.[11]  The Court denied Mattel's

11   motion.  MGA did not, at that time or at any time since, designate a testifying

12   expert in this area or disclose the results of their expert's work.

13        On February 2, 2007, in yet another attempt to obtain expert discovery to

14   which it otherwise is not entitled, Mattel filed its Motion to Compel Production of

15   Documents and Interrogatory Answers by MGA in which it sought to compel MGA

16   to produce, among other things, documents responsive to Mattel's Request No.

17   92.[12]  The only reference to Request No. 92 in the entirety of Mattel's briefing in

18   support of its Motion to Compel is buried in its "Separate Statement in Support of

19   Mattel's Motion to Compel" in which Request No. 92 is grouped in with numerous

20   other Requests concerning "the origins of Bratz."[13]  Mattel's papers did not identify

21   *any* basis for obtaining access to MGA's consulting expert's work product.

22        MGA argued in its opposition to Mattel's motion to compel that Mattel's

23   Request was premature and that MGA should not be compelled to produce

24

25   [8] *See* Burr Decl., Exh. 3.
     [9] *Id.* at 4:24-7:3.
26   [10] *Id.* at 13:10-13:15.
27   [11] *See* Burr Decl., Exh. 4.
     [12] Burr Decl., Exhs. 6 and 7.
28   [13] Burr Decl., Exh. 7 at 43:6-43:26.

- 5 -

1   documents responsive to this request because it had not yet designated any experts

2   with respect to ink-testing.[14]   Nevertheless, the Special Master ruled that documents

3   concerning ink-testing were "relevant" and that "there [was] no basis for delaying

4   production of responsive documents, other than expert reports." [15]   The Special

5   Master did not address MGA's arguments that Mattel was not entitled to expert

6   discovery until MGA designated testifying experts, nor did the Special Master

7   provide any reason for contravening the Federal Rules of Civil Procedure and well-

8   established precedent which states that the work product of a consulting expert is

9   not discoverable absent a showing of exceptional circumstances.

**B.   Mattel Seeks Documents from Bryant and MGA Concerning Unreleased Products**

On January 25, 2007, the Special Master issued an order compelling further production of documents from Bryant.[16]   Mattel took the position that the Special Master's January 25, 2007 Order required Bryant to produce drawings and designs created in 2006 or later irrespective of whether such drawings or designs resulted in a product that already had been released to the public.[17]   MGA, however, objected to producing documents related to unreleased products as being wholly irrelevant to the issues in this phase of the litigation, namely, whether Carter Bryant ("Bryant") breached his employment agreements while working at Mattel, and whether Bryant misappropriated Mattel's "property" when he left Mattel to work with MGA on his "Bratz" concept.   Immediately after issuance of the Special Master's January 25 Order, Mattel filed its February 2, 2007 Motion to Compel, requesting that the Special Master direct MGA to produce documents related to unreleased products.

Because the issue was of such import, MGA and Bryant jointly sought clarification that the Special Master's January 25 Order did not require the

---

[14] Burr Decl., Exh. 8 at 27:9-27:16

[15] Burr Decl., Exh. 10 at 11:12

[16] Burr Decl., Exh. 5.

[17] Burr Decl., Exh. 9 at 9:21-12:8.

EXHIBIT   Exhibit 44 Page 849

1  production of drawings or designs for products that have not been released.[18]  In the

2  alternative MGA and Bryant sought a protective order providing that such

3  documents either (a) need not be produced at all; (b) need not be produced until

4  after the products had been released to the public; or (c) would be produced

5  pursuant to a more restrictive protective order than was currently in place.[19]

6  The Special Master denied MGA and Bryant's request for clarification;

7  indicated that his January 25, 2007 order did require production of documents

8  concerning unreleased products scheduled for release in 2007, 2008 and beyond;

9  and entered a more restrictive protective order governing the production of such

10  documents.[20]  In the May 15 Order, the Special Master also directed MGA to

11  produce documents concerning unreleased products.[21]  The Special Master

12  reasoned that these documents were relevant to Mattel's breach of contract claim in

13  the Bryant case, as well as, Mattel's copyright infringement and trade secret

14  misappropriation counterclaims.[22]  Irrespective of the modified protective order,

15  MGA believes that the Special Master's Order compelling production of documents

16  that are irrelevant to the Bryant case and which are overbroad, imposing an undue

17  burden on MGA, is clearly erroneous and should be reversed and vacated.  In the

18  alternative however, MGA seeks extension of the modified protective order to

19  unreleased products scheduled for release in 2008.

20  **C.   The Special Master Orders Production of Documents and**
21  **Supplementation of Interrogatories by May 31, 2007**

22  In connection with the Special Master's May 15 Order, the Special Master

23  directed MGA to produce *all* documents responsive to Mattel's requests (including

24  volumes of documents referring or relating to "Bratz") from MGA, as well as from

25  ───────────
26  [18] Burr Decl., Exh. 11 at 3:6-3:7.
   [19] *Id.* at 3:8-3:14.
27  [20] *Id.*
   [21] Burr Decl., Exh. 10 at 9:2-9:4.
28  [22] Burr Decl., Exh. 11 at 7:11-7:17.

-7-

1   MGA's indirect subsidiary in Hong Kong; and to supplement its responses to

2   Mattel's interrogatories.  The issue of timing was not briefed by the parties nor was

3   it discussed at oral argument.  MGA did not anticipate that the Special Master

4   would grant MGA a little more than two weeks in which to collect, review and

5   produce all documents from MGA and its subsidiary in the Far East including all

6   documents that refer or relate to Bratz.  As such, MGA seeks reversal of only that

7   portion of the Special Master's order compelling production of documents and

8   supplementation of interrogatories by May 31, 2007.[23]

9   ## III.  ARGUMENT

10          This Court's review of the Discovery Master's May 15, 2007 Order is *de*

11  *novo*.  *See* 28 U.S.C. §636(b)(1)(C) ("A judge of the court shall make a *de novo*

12  determination of those portions of the report or specified proposed findings or

13  recommendations as to which objection is made.  A judge of the court may accept,

14  reject or modify in whole or in part, the findings or recommendations made by the

15  magistrate [judge].  The judge may also receive further evidence or recommit the

16  matter to the magistrate [judge] with instructions."); *see also In re Napster, Inc. v.*

17  *Copyright Litigation*, 479 F.3d 1078, 1089 (9th Cir. 2007) (rulings as to the scope

18  of privilege "involve mixed questions of law and fact and are reviewed *de novo*");

19  *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996).  For the

20  reasons discussed below, a (partial) reversal of the Discovery Master's Orders

21  granting Mattel's motions to compel is essential.

22  ### A.   The Special Master's Order Compelling MGA to Produce
23          Documents Concerning Ink-testing is Wrong as a Matter of Law

24          Mattel seeks access to the work product of MGA's consulting expert as well

25  as any undesignated experts -- all in advance of the time required by this Court's

26  Scheduling Order for designating experts.[24]  MGA addressed this point in its brief

27  _____
    [23] Burr Decl., Exh. 10 at 14:12-14:14.

28  [24] The Special Master also ordered on May 16, 2007, among other things, that MGA
    produce a witness pursuant to Rule 30(b)(6) to give testimony concerning "testing or

                                    - 8 -

1 in opposition to Mattel's motion to compel, but the Special Master ignored it and

2 ordered MGA to produce documents responsive to Mattel's Request No. 92

3 because (a) the documents are "relevant" and (b) there is no basis to withhold

4 them.[25] The Special Master's determination that these documents are discoverable

5 is wrong as a matter of law for several reasons:

6     First, the work product of a consulting expert is not discoverable absent a

7 showing of exceptional circumstances. Fed. Rule Civ. Pro. 26(b)(4)(B) (providing,

8 in relevant part, that where a consulting expert has been specially retained by a

9 party in anticipation of litigation, and has developed or acquired facts known and

10 opinions held in anticipation of litigation, those facts and opinions are only

11 discoverable upon a showing of "exceptional circumstances"); *See also USA v.*

12 *Bell*, C 94-20342, 1994 U.S. Dist. LEXIS 17408 at *10 (N.D. Cal. November 9,

13 1994). Accordingly, there is no basis under the Federal Rules of Civil Procedure to

14 compel MGA to produce its consulting expert's ink-test work product.

15     Second, expert discovery is wholly inappropriate here because the parties

16 have not even designated their testifying experts and are not scheduled to do so

17 until November 14, 2007. "A party is free to make, as well as to revise, strategic

18 decisions regarding which witnesses will testify at any time up until the court-

19 imposed designation deadline." *In re Shell Oil Refinery* 132 F.R.D. 437, 440-441

20 (D. La. 1990); *See also, Moore U.S.A. Inc. v. The Standard Register Co.*, 206

21 F.R.D. 72, 75 (W.D.N.Y. 2001) (granting motion for protective order where party

22 had not yet designated an expert as a "testifying expert"). Time and again, MGA

23 has reiterated that it has not yet designated any experts as "testifying experts" and

24 may in fact, refrain from designating a testifying expert on ink-testing entirely.[26]

25 Thus, to the extent MGA has consulted with *any* undesignated experts in this case

26

27 sampling of documents." MGA's appeal of the May 16, 2007 Order will follow.
[25] Burr Decl., Exh. 10 at 11:12-11:13.
28 [26] Burr Decl., Exh. 9 at 27:11-27:13

-9-

1    in anticipation of litigation or for trial preparation purposes, Mattel is not yet

2    entitled to discovery of that expert's work product. *In re Shell Oil Refinery*, 132

3    F.R.D. at 440 (defendant had no obligation to decide which experts it would call at

4    trial or disclose information about any experts expected to be called until deadline

5    for designating experts pursuant to case management order). Rather, Mattel must

6    wait until the MGA makes the strategic decision to designate an expert as a

7    testifying expert unless it can show "exceptional circumstances." *Id.*

8            Third, Mattel utterly failed in its motion to compel documents responsive to

9    Request No. 92 to indicate any circumstances -- extraordinary or otherwise -- under

10   which it should be entitled to the work product of any consulting or heretofore

11   undesignated expert, or to obtain any other information concerning MGA's

12   strategic decisions to designate testifying witnesses. In the absence of such

13   argument by Mattel, the Special Master made no finding that special circumstances

14   were present here. Rather, the Special Master's Order compelling MGA to produce

15   documents responsive to Request No. 92 was based solely on a conclusory

16   assertion that MGA's counsel's and consultant's documents were "relevant" to the

17   issues in this case.[27]   That plainly falls far short of a showing of exceptional

18   circumstances.

19           If the Special Master's order is permitted to stand, MGA will be the only

20   party in this litigation required to determine and disclose its expert designations far

21   earlier than required by this Court's Scheduling Order. Further, it would force

22   MGA to produce documents that are unquestionably work product, a serious

23   invasion of its counsel's work product privilege. *See Moore U.S.A.*, 206 F.R.D. at

24   75; *Perry v. United States*, CA3:96-CV-2038-T, 1997 U.S. Dist. LEXIS 23875 at *

25   10 (D. Tex. Feb. 4, 1997) (non-testifying expert opinion protected as work-product

26   which only becomes discoverable if defendant ultimately designates the expert as a

27

28   [27] Burr Decl., Exh. 10 at 11:12.

1   "testifying expert").  Compelling production of these documents at this point also

2   violates Rule 26(b)(4)(B), which was designed to prevent litigants from "trying to

3   cut case-preparation corners by leaching basic information or valuable opinions

4   from experts retained by their opponents." *See In re Pizza Time Theatre Securities*

5   *Litigation*, 113 F.R.D. at 96.

6        To the extent that MGA decides to designate a testifying expert on ink-

7   testing, MGA certainly will disclose the identity of expert witnesses to be called at

8   trial by no later than November 14, 2007, and will produce any documents, data or

9   information considered in forming any opinions contained in the expert's report in

10  accordance with the Federal Rules and this Court's Scheduling Order.  At that

11  point, Mattel will have ample opportunity to explore any documents upon which

12  MGA's expert opinion is based.  Until such time as MGA designates its testifying

13  experts, however, it should not be required to produce any documents created by or

14  in connection therewith.

15      **B.     The Special Master's Order Compelling MGA to Produce**
        **Unreleased Product Information for 2007, 2008 and Beyond is**
16      **Clearly Erroneous**

17

18          **1.     Documents Concerning Unreleased Product Information**
                **Are Trade Secrets And Are Not Necessary to Mattel's**
19              **Prosecution of its Claims**

20      MGA sought from the Discovery Master, a protective order pursuant to Rule

21  26(c) providing either that such documents either (a) need not be produced at all;

22  (b) need not be produced until after the products had been released to the public; or

23  (c) would be produced pursuant to a more restrictive protective order than was

24  currently in place." See FED. R. CIV. P. 26(c)(7).  Although the Special Master did

25  impose a more restrictive protective order than was currently in place, that order is

26  insufficient to protect the inadvertent disclosure of trade secrets particularly with

27  respect to products scheduled for release in 2007, 2008 and beyond.  The Special

28  Master incorrectly determined that the "relevance" of such documents to Mattel's

- 11 -

1   claims rendered them discoverable and, even though the Special Master recognized

2   Mattel's need for unreleased product information to be relatively small, ordered

3   their production anyway by June 29, 2007.[28]

4        In determining whether a protective order should be granted, the Ninth

5   Circuit requires that a court balance the risk to the disclosing party of inadvertent

6   disclosure of trade secrets to competitors against the risk to the moving party that

7   protection of the trade secret would *impair* the prosecution of its claims. *Brown*

8   *Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.) (upholding

9   protective order granting access to source codes and other trade secret materials

10  only to an independent consultant), *cert. denied sub nom.*, *BB Asset Mgmt., Inc. v.*

11  *Symantec Corp.*, 506 U.S. 869 (1992) (emphasis added).  The fact that MGA and

12  Mattel are direct competitors weighs significantly in favor of protection of

13  confidential information. *see Am. Heavy Moving & Rigging Co. v. Robb Techs.*,

14  *L.L.C.*, No. 2:04-CV-00933-JCM (GWF), 2006 U.S. Dist. LEXIS 51276, *10 (D.

15  Nev. July 24, 2006) ("The courts generally hold that there is a greater likelihood of

16  harm where disclosure of trade secrets is sought in litigation between competitors")

17  (citation omitted).

18        There is no question but that MGA's drawings for unreleased products fit

19  squarely within the scope of trade secret information covered by Rule 26(c) and

20  "should not be revealed" at all or, at the least, "should not be revealed" prior to

21  public release of the products. FED. R. CIV. P. 26(c)(7).   As MGA indicated in its

22  request for clarification, a toy manufacturer's unreleased toy concepts, *i.e.*, those

23  that have not been made public, are among its most highly valuable trade secrets.[29]

24  Although such drawings and designs are valuable even *after* the product's public

25  release, their value is enormous prior to their public release because they represent

26  works in progress and new ideas for advancing and developing product lines; it is

27  _____

28  [28] Burr Decl., Exh. 11 at 10:15-10:25; 12:3-12:4

    [29] Burr Decl., Exh. 12 at ¶ 4.

- 12 -

EXHIBIT    Exhibit 44 Page 855

1   the new ideas and designs that are most likely to generate new sales.[30]   And,

2   because of their tremendous value, MGA protects its product drawings in a number

3   of ways:  restricting access to a very small number of people, requiring strict

4   confidentiality agreements, using password-protected computers, and employing

5   security guards at their facilities who prohibit entry to unauthorized personnel and

6   who check even authorized personnel on their way out.[31]

7        MGA takes even greater efforts to protect some of its yet-unreleased "Bratz"

8   products.  In fact, with respect to some new "Bratz" products, there are *only two*

9   people – Carter Bryant and Paula Garcia – who know what the concept is and who

10  see the early product drawings.[32]  Even after Garcia approves and Bryant and

11  Garcia have finalized the concept, only a small number of people on the "Bratz"

12  development team have exposure to the drawings.[33]

13       The danger of inadvertent disclosure of MGA's trade secrets, even with the

14  modified protective order in place, still severely outweighs Mattel's need for these

15  documents.  Mattel's ability to prosecute the issues in the Mattel v. Bryant case

16  would not be impaired in the slightest were it unable to obtain these documents at

17  all or only after the underlying products were released to the public.  Mattel argued,

18  and the Special Master agreed, that unreleased product information was relevant to

19  its claims in the Bryant case that it "owns works" created by Bryant during his

20  employment at Mattel and to its claim that Bryant purportedly breached a

21  continuing obligation of "confidentiality" not to use what Mattel purports to be

22  misappropriated "property."  It is not.  Currently unreleased product development

23  documents have no bearing on whether Bryant created the original Bratz concept

24  during his employment at Mattel, and that Mattel therefore "owns" the original

25  Bratz concept.  Moreover, nowhere in Mattel's complaint against Bryant does

26  [30] *Id.*

27  [31] *Id.* at ¶¶ 5-6.

    [32] *Id.* at ¶ 6.

28  [33] *Id.*

- 13 -

1  Mattel allege that Bryant has engaged in subsequent breaches of his confidentiality

2  agreement by continuing to work for MGA. In fact, Mattel alleged only that Bryant

3  breached his confidentiality obligations while *employed* by Mattel.

4       Most importantly, "relevance" is not the test for determining whether to limit

5  the discoverability of trade secrets -- it is whether the potential damage to MGA is

6  outweighed by Mattel's need for these documents to proceed on its claims. Since

7  Mattel's need for these documents is extremely small and the potential damage to

8  MGA extremely great, the Special Master should have issued a protective order

9  directing that these documents either need not be produced or need only be

10  produced after the products at issue were released to the public.

11       To the extent these documents are relevant at all, they only are marginally

12  relevant to Mattel's copyright counterclaims, which are not set to be litigated until

13  July, 2008. As such, even if the Court decides that this marginal need for

14  documents outweighs MGA's interest in protecting its trade secrets, such

15  documents concerning products scheduled for release in 2008 need not be produced

16  by June 29, 2007 as the Special Master has indicated.

17             **2.**    **Mattel's Requests Are Overbroad**

18       MGA argued in its brief, that Mattel's requests were overbroad in that they

19  sought all documents pertaining to "Bratz" or to Bryant's work for MGA after June,

20  2001, are overbroad and should be limited at most to drawings or work for "Bratz"

21  products that have been released to the public or that are in fact scheduled for

22  release. In *Intersong-USA, Inc. v. CBS, Inc.*, a case of alleged copyright

23  infringement by Julio Iglesias and others, the plaintiff had similarly requested

24  information on "all" musical compositions that the defendants had authored.

25  Recognizing the overbreadth of this request, the Court held that the defendants

26  should produce information for musical compositions "actually published" over a

27  ten-year period. 1 Fed. R. Serv. 3d 609 (S.D.N.Y. 1985). The Special Master did

28

- 14 -

1    not address the issue of MGA's breadth objection, but instead ruled that all

2    documents concerning unreleased products were discoverable.

3       Mattel's requests require the production of volumes of documents that are

4    only of limited relevance to the issues in this case. As such, MGA's objection that

5    these requests are overbroad should be sustained and the requests limited to

6    drawings or work for "Bratz" products that have been released to the public or that

7    are in fact scheduled for release.

8       **3.     In the Alternative The Stipulated Protective Order**

9               **Governing Documents Concerning Unreleased Products**

               **Scheduled for Release in 2007 Should be Extended to Cover**

10               **Products Scheduled for Release in 2008**

11       The parties had entered into a stipulated protective order in the event

12    that the Special Master ordered production of MGA's unreleased product

13    information, which governs the production of documents concerning unreleased

14    products scheduled for release in 2007. That stipulation provided that (a) the

15    parties could withhold documents concerning products scheduled for release in

16    2007 until June 29th 2007; (b) the parties would enter a further stipulation in

17    connection with unreleased products schedule for release in 2008; and (b) if the

18    parties could not agree to a further stipulation with respect to documents scheduled

19    for release in 2008, the stipulation with respect to 2007 documents would apply.

20    However, in the event this Court agrees with the Order of the Special Master and

21    determines that drawings for all unreleased MGA products are somehow relevant,

22    MGA requests further protection pursuant to Federal Rule of Civil Procedure 26(c)

23    for those unreleased products scheduled for release in 2008, namely, that

24    documents concerning these products need not be produced until the month in

25    which the relevant products are shipped to the United States from Asia. Such an

26    Order would at least protect the most recent products developed by MGA and

27    scheduled for release next year.

28

EXHIBIT    **Exhibit 44 Page 858**

## C. The Special Master Imposed An Undue Burden on MGA by Requiring it To Produce Documents and Supplement Interrogatories by May 31, 2007

The Special Master ordered MGA to produce by May 31, 2007, *all* documents responsive to Mattel's requests from both MGA and MGA's indirect subsidiary in Hong Kong, including all documents related to "Bratz"; and to supplement MGA's interrogatory responses. The issue of timing was not briefed by the parties and it was not anticipated that MGA would be given a mere two weeks and two days to collect, review and produce responsive documents from both MGA and an indirect subsidiary in the Far East, as well as to collect the information necessary to supplement its interrogatory responses. The Discovery Master's order imposes a severe undue burden on MGA and should be vacated and reversed with respect to the timing of MGA's production. Instead, MGA should be given 60 days in which to complete its production and supplement its interrogatory responses.

## IV. CONCLUSION

For the foregoing reasons, the Court should vacate and reverse the Discovery Master's Order as to Mattel's Request No. 92; vacate and reverse the Order compelling MGA to produce documents related to unreleased products (or in the alternative to extend the current protective order to products scheduled for release in 2008); and vacate the Order with respect to MGA's time in which to comply and grant MGA's request for an additional 60 days in which to comply with the Special Master's Order.

Dated: May 30, 2007

O'MELVENY & MYERS LLP

*Michael Keats*

By: Michael Keats
Attorneys for MGA Entertainment, Inc.

- 16 -

EXHIBIT 45

**PRIORITY SEND**
& ENTERED

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date:  July 2, 2007

Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                           Theresa Lanza
        Courtroom Deputy Clerk               Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                         John B. Quinn
                                      Brett Dylan Proctor
                                      Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali
Patricia Glaser

PROCEEDINGS:   MINUTE ORDER



ENTERED
CLERK, U.S. DISTRICT COURT

JUL - 5 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

DOCKETED ON CM

JUL - 5 2007

BY _____ 164

        As set forth more fully herein, the Court hereby makes the following ruling regarding matters
heard on July 2, 2007:

(1)   The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)   The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's
      May 15, 2007, Order (docket #505);

(3)   The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                      Initials of Deputy Clerk  jh
CIVIL -- GEN                          1              Time: 01/15

EXHIBIT          **Exhibit 45 Page 860**

regarding date of production of documents (docket #545); and

(4)    The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)    The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)    Motion re Trial Structure (docket #462)

Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL**, as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)    MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)    MGA's Ex Parte Application regarding date of production of documents (docket #545).

The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

MGA acknowledges that it has raised an argument before the Court that was not raised

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __lh_____
Time: 01/15

EXHIBIT    **Exhibit 45 Page 862**

later than two weeks after that date. Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above. The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above. The application is **DENIED** in all other respects.

(4)   MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added). "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted). Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

EXHIBIT   Exhibit 45 Page 863

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)     Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

EXHIBIT   Exhibit 45 Page 864