EXHIBIT 49

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>MATTEL, INC.'S FIRST SET OF INTERROGATORIES RE CLAIMS OF UNFAIR COMPETITION TO MGA ENTERTAINMENT, INC. |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Mattel, Inc. hereby requests that MGA Entertainment, Inc. ("MGA") answer these interrogatories ("Interrogatories") separately and fully, in writing and under oath, within 30 days of service. MGA shall be obligated to supplement responses to these requests at such times and to the extent required by Rule 26(e) of the Federal Rules of Civil Procedure.

12-20

# I.    **DEFINITIONS**

For purposes of these Interrogatories, the following definitions apply:

A.    The term "YOU," "YOUR" and "MGA" mean MGA Entertainment, Inc. and any individual or entity acting directly or indirectly by, through, under or on behalf of MGA Entertainment, Inc., including but not limited to current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of MGA Entertainment, Inc. and any corporation, partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and any other PERSON acting on its behalf.

B.    The term "MATTEL" means defendant Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

C.    "EMBODIMENT" means any representation of the identified product or its retail packaging, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

D.    "CONTESTED MGA PRODUCTS" means the CONTESTED BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS

EXHIBIT    Exhibit 49 Page 928

1   PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has

2   ever been known as, or sold, offered for sale, licensed, offered for license or

3   marketed under the name or terms "Bratz," "4-ever Best Friends," "Mommy's

4   Little," "Alienracers," or any derivative thereof, that provides a basis for any claim

5   by YOU against MATTEL, including without limitation "Bratz Dolls," "Bratz

6   Dogz," "Winter Wonderland," "Bratz Sportz," "Formal Funk," "Sun-Kissed

7   Summer," "Funky Fashion Makeover Head," "Runway Disco," "4-ever Best

8   Friends," "Mommy's Little Patient," and "Alienracers."

9           E.      "CONTESTED BRATZ DOLLS PRODUCTS" means any of

10  the following that provides a basis for any claim by YOU against MATTEL: (i) any

11  EMBODIMENT or project ever known by the name "Bratz" or any derivative

12  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

13  project is or has been also, previously or subsequently called) and any doll or any

14  portion thereof that is now or has ever been known as, or sold, offered for sale,

15  licensed, offered for license or marketed under, the name or term "Bratz" or any

16  derivative thereof (whether in whole or in part and regardless of what such doll is or

17  has been also, previously or subsequently called), and all prototypes, models,

18  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

19  playset and accessory that YOU distribute under the name "Bratz" or any derivative

20  thereof; and/or (iii) any and all other goods, product packaging, advertisements,

21  promotional materials or other thing or item or material manufactured, produced,

22  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

23  imported, exported, licensed, offered for license, sold or offered for sale by YOU or

24  on YOUR behalf under the name "Bratz" or any derivative thereof.

25          F.      "CONTESTED BRATZ PETZ PRODUCTS" means any of the

26  following that provides a basis for any claim by YOU against MATTEL: (i) any

27  EMBODIMENT or project ever known by the name "Bratz Petz" or any derivative

28  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

07975/2022122 1

EXHIBIT   **Exhibit 49 Page 929**

1  project is or has been also, previously or subsequently called) and any toy pet or any

2  portion thereof that is now or has ever been known as, or sold, offered for sale,

3  licensed, offered for license or marketed under, the name or term "Bratz" or any

4  derivative thereof (whether in whole or in part and regardless of what such toy pet is

5  or has been also, previously or subsequently called), and all prototypes, models,

6  samples and versions of such EMBODIMENT, toy pet or any portion thereof; (ii)

7  any playset and accessory that YOU distribute under the name "Bratz Petz" or any

8  derivative thereof ; and/or (iii) any and all other goods, product packaging,

9  advertisements, promotional materials or other thing or item or material

10  manufactured, produced, printed, ordered, marketed, advertised, promoted,

11  displayed, distributed, shipped, imported, exported, licensed, offered for license,

12  sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Petz" or

13  any derivative thereof.

14          G.      "CONTESTED BRATZ FUNKY FASHION MAKEOVER

15  HEAD" means any of the following that provides a basis for any claim by YOU

16  against MATTEL:  (i) any EMBODIMENT or project ever known by the name

17  "Bratz Funky Fashion Makeover Head" or any derivative thereof (whether in whole

18  or in part and regardless of what such EMBODIMENT or project is or has been

19  also, previously or subsequently called) and any styling head or any portion thereof

20  that is now or has ever been known as, or sold, offered for sale, licensed, offered for

21  license or marketed under, the name or term "Bratz" or any derivative thereof

22  (whether in whole or in part and regardless of what such styling head is or has been

23  also, previously or subsequently called), and all prototypes, models, samples and

24  versions of such EMBODIMENT, styling head or any portion thereof; (ii) any

25  accessory that YOU distribute under the name "Bratz Funky Fashion Makeover

26  Head" or any derivative thereof; and/or (iii) any and all other goods, product

27  packaging, advertisements, promotional materials or other thing or item or material

28  manufactured, produced, printed, ordered, marketed, advertised, promoted,

1  displayed, distributed, shipped, imported, exported, licensed, offered for license,

2  sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Funky

3  Fashion Makeover Head" or any derivative thereof.

4      H.    "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means

5  any of the following that provides a basis for any claim by YOU against MATTEL:

6  (i) any EMBODIMENT or project ever known by the name "4-ever Best Friends" or

7  any derivative thereof (whether in whole or in part and regardless of what such

8  EMBODIMENT or project is or has been also, previously or subsequently called)

9  and any doll or any portion thereof that is now or has ever been known as, or sold,

10  offered for sale, licensed, offered for license or marketed under, the name or term

11  "4-ever Best Friends" or any derivative thereof (whether in whole or in part and

12  regardless of what such doll is or has been also, previously or subsequently called),

13  and all prototypes, models, samples and versions of such EMBODIMENT, doll or

14  any portion thereof; (ii) any playset and accessory that YOU distribute under the

15  name "4-ever Best Friends" or any derivative thereof; and/or (iii) any and all other

16  goods, product packaging, advertisements, promotional materials or other thing or

17  item or material manufactured, produced, printed, ordered, marketed, advertised,

18  promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

19  license, sold or offered for sale by YOU or on YOUR behalf under the name "4-ever

20  Best Friends" or any derivative thereof.

21      I.    "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS"

22  means any of the following that provides a basis for any claim by YOU against

23  MATTEL:  (i) any EMBODIMENT or project ever known by the name "Mommy's

24  Little Patient" or similar name or any derivative thereof (whether in whole or in part

25  and regardless of what such EMBODIMENT or project is or has been also,

26  previously or subsequently called) and any doll or any portion thereof that is now or

27  has ever been known as, or sold, offered for sale, licensed, offered for license or

28  marketed under, the name or term "Mommy's Little Patient" or similar name or any

1   derivative thereof (whether in whole or in part and regardless of what such doll is or

2   has been also, previously or subsequently called), and all prototypes, models,

3   samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

4   playset and accessory that YOU distribute under the name "Mommy's Little Patient"

5   or similar name or any derivative thereof; and/or (iii) any and all other goods,

6   product packaging, advertisements, promotional materials or other thing or item or

7   material manufactured, produced, printed, ordered, marketed, advertised, promoted,

8   displayed, distributed, shipped, imported, exported, licensed, offered for license,

9   sold or offered for sale by YOU or on YOUR behalf under the name "Mommy's

10  Little Patient" or similar name or any derivative thereof.

11          J.      "CONTESTED ALIENRACERS PRODUCTS" means any of

12  the following that provides a basis for any claim by YOU against MATTEL:  (i) any

13  EMBODIMENT or project ever known by the name "Alienracers" or any derivative

14  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

15  project is or has been also, previously or subsequently called) and any toy vehicle,

16  character, or any portion thereof that is now or has ever been known as, or sold,

17  offered for sale, licensed, offered for license or marketed under, the name or term

18  "Alienracers" or any derivative thereof (whether in whole or in part and regardless

19  of what such toy is or has been also, previously or subsequently called), and all

20  prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

21  character, or any portion thereof; (ii) any playset and accessory that YOU distribute

22  under the name "Alienracers" or any derivative thereof; and/or (iii) any and all other

23  goods, product packaging, advertisements, promotional materials or other thing or

24  item or material manufactured, produced, printed, ordered, marketed, advertised,

25  promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

26  license, sold or offered for sale by YOU or on YOUR behalf under the name

27  "Alienracers" or any derivative thereof.

28

1         **K.**    The term "PERSON," in the plural as well as the singular, means

2    any natural person, association, partnership, corporation, joint venture, government

3    entity, organization, trust, institution, proprietorship, or any other entity recognized

4    as having an existence under the laws in United States or any other nation.

5         **L.**    The term "RELATING TO" shall mean any and all of the

6    following terms and their synonyms:  refer to, discuss, constitute, evidence, pertain

7    to, mention, support, contradict, negate, bear on, touch on, contain, embody, reflect,

8    identify, state, deal with, concern, comment on, respond to, relevant to, or describe.

9         **M.**    "DOCUMENT" or "DOCUMENTS" means all "writings" and

10   "recordings" as those terms are defined in Rule 1001 of the Federal Rules of

11   Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all

12   writings, including without limitation handwriting, typewriting, printing, image,

13   photograph, photocopy, digital file of any kind, transmittal by (or as an attachment

14   to) electronic mail (including instant messages and text messages) or facsimile,

15   video and audio recordings, and every other means of recording upon any tangible

16   thing, any form of communication or representation, and any record thereby created,

17   regardless of the manner in which the record has been stored, and all non-identical

18   copies of such DOCUMENTS.

19        **N.**    "IDENTIFY" shall mean the following:

20           **1.**    When used in reference to a natural person, such person's

21   name, present or last-known home and business addresses, present or last-

22   known employment or business affiliation, present or last-known business

23   title or position, and present or last-known home and business telephone

24   number.

25           **2.**    When used in reference to an entity, such entity's name,

26   state (or country) of incorporation or organization, present or last-known

27   address, present or last-known telephone number, name of the contact person

28

1  for such entity, and the business address and business phone number for the

2  contact person.

3       3.      When used in reference to an EMBODIMENT, the names

4  of the individual author(s) or creator(s) of the EMBODIMENT as well as of

5  each other individual who contributed in any manner to the EMBODIMENT;

6  the form, material and medium of the EMBODIMENT (e.g., preliminary

7  three-dimensional resin sculpture, final three-dimensional wax sculpture,

8  digitized file of final three-dimensional wax sculpture, two-dimensional

9  EMBODIMENT drawing on paper); the title or name of the EMBODIMENT;

10  the start and end date(s) of the EMBODIMENT's creation or preparation; the

11  Bates-number of any DOCUMENT which REFERS OR RELATES TO the

12  EMBODIMENT or, if no such DOCUMENT has been produced, a full and

13  complete description of the EMBODIMENT and of all DOCUMENTS that

14  REFER OR RELATE to the EMBODIMENT; the version, modification,

15  revision or iteration number, if applicable; and the current location of the

16  EMBODIMENT.

17       O.      "COMPLAINT" means the Complaint for False Designation of

18  Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair

19  Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 *et seq.* and

20  California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code §

21  14330 and California Common Law); and Unjust Enrichment, filed by YOU on or

22  about April 13, 2005.

23  **II.    INTERROGATORIES**

24

25  INTERROGATORY NO. 1:

26       IDENTIFY, fully and separately, each and every PERSON who was

27  involved in the marketing, advertising, promotion, licensing, offering for sale,

28  conception, origin, creation, design, development, sculpting, engineering, reduction

07975/2022122.1

1  to practice, tooling or painting of, or who otherwise produced or contributed to any

2  EMBODIMENT of the CONTESTED MGA PRODUCTS, including without

3  limitation by fully and separately describing each such PERSON's role and the start

4  and end dates of such PERSON's involvement.

5

6  INTERROGATORY NO. 2:

7             IDENTIFY, fully and separately, each and every concept, design,

8  product, or product packaging that YOU contend MATTEL copied or infringed

9  (including without limitation by internal job or product number, SKU, and bar code

10  number) and, for each such concept, design, product, or product packaging,

11  describe, with specificity and in detail, those attributes of the concept, design,

12  product, or product packaging that were copied or infringed by MATTEL and the

13  alleged source(s) of those attributes.

14

15  INTERROGATORY NO. 3:

16             For each concept, design, product, or product packaging identified in

17  YOUR response to Interrogatory No. 2, state the following facts and IDENTIFY all

18  PERSONS with knowledge of those facts:  (1) the first date that each such concept,

19  design, product, or product packaging was shown or otherwise disclosed to any

20  PERSON not employed by MGA; (2) the circumstances and location of that

21  disclosure and the name(s) of PERSONS to whom the disclosure was made; and (3)

22  the first date that each product was made available for retail sale.

23

24  INTERROGATORY NO. 4:

25             State all facts RELATING TO any claim that YOU have sustained

26  damage, loss, or injury, or there has been unjust enrichment, by reason of any act or

27  omission by MATTEL.  YOUR response should explain in detail any calculation of

28  damage, loss, injury, or unjust enrichment that YOU have made or which has been

1   made on YOUR behalf or at YOUR request, and should IDENTIFY all

2   DOCUMENTS that support or otherwise bear on YOUR response and all

3   PERSONS who have knowledge of the facts stated in YOUR RESPONSE.

4

5   INTERROGATORY NO. 5:

6          State all facts RELATING TO the allegations in Paragraphs 9 and 113

7   of YOUR COMPLAINT that MATTEL "intimidated, coerced and threatened

8   retailers, licensees, suppliers and others in the industry" and "willfully and

9   maliciously used its power, influence and intimidation to threaten certain retailers,

10  suppliers, licensees, distributors and manufacturers so as to limit, if not prevent,

11  MGA from doing business with these retailers, suppliers, licensees, distributors and

12  manufacturers, using its power and influence to intimidate and manipulate industry

13  bodies."  YOUR response should IDENTIFY all DOCUMENTS that support or

14  otherwise bear on YOUR response and all PERSONS who have knowledge of the

15  facts stated in YOUR RESPONSE.

16

17  INTERROGATORY NO. 6:

18         State all facts RELATING TO the allegation in Paragraph 9 of YOUR

19  COMPLAINT that "Mattel has . . . serially imitated and copy-catted [*sic*] the look of

20  MGA products, trade dress, trademarks, themes, ideas, advertising and packaging,"

21  or any other contention by YOU that MATTEL created, designed, derived, or

22  developed products, packaging, and advertising using concepts, products, or

23  intellectual property owned by YOU.  YOUR response should IDENTIFY all

24  DOCUMENTS that support or otherwise bear on YOUR response and all

25  PERSONS who have knowledge of the facts stated in YOUR RESPONSE.

26

27

28

EXHIBIT  **Exhibit 49 Page 936**

INTERROGATORY NO. 7:

State all facts RELATING TO the allegations in YOUR COMPLAINT that consumers, the press, and retailers have confused YOUR products, packaging, and commercials with those of MATTEL, or vice versa. YOUR response should IDENTIFY all DOCUMENTS that support or otherwise bear on YOUR response and all PERSONS who have knowledge of the facts stated in YOUR RESPONSE.

INTERROGATORY NO. 8:

State all facts RELATING TO the allegation in Paragraph 79 of YOUR COMPLAINT that MATTEL has "manipulated the retail market," including but not limited to all COMMUNICATIONS with any persons RELATING TO YOUR allegation that "Mattel merchandisers have been caught tampering with MGA's retail displays." YOUR response should IDENTIFY all DOCUMENTS that support or otherwise bear on YOUR response and all PERSONS who have knowledge of the facts stated in YOUR RESPONSE.

INTERROGATORY NO. 9:

State all facts RELATING TO any allegation by YOU that MATTEL engaged in any unfair practice RELATING TO NPD, including without limitation the use of NPD data, alleged changes of NPD product classifications, or MGA's NPD subscription. YOUR response should IDENTIFY all DOCUMENTS that support or otherwise bear on YOUR response and all PERSONS who have knowledge of the facts stated in YOUR RESPONSE.

INTERROGATORY NO. 10:

State all facts RELATING TO any allegation by YOU that MATTEL engaged in any unfair practice RELATING TO any toy industry or consumer organization, including without limitation CARU and TIA. YOUR response should

1  IDENTIFY all DOCUMENTS that support or otherwise bear on YOUR response

2  and all PERSONS who have knowledge of the facts stated in YOUR RESPONSE.

3

4  DATED:  December 20, 2006          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
5

6

7  By

8  Timothy L. Alger
   Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/2022122.1

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S FIRST SET OF INTERROGATORIES (UNFAIR COMPETITION)

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On December 20, 2006 I served true copies of the following document(s) described as:

**MATTEL, INC.'S FIRST SET OF INTERROGATORIES RE CLAIMS OF UNFAIR COMPETITION TO MGA ENTERTAINMENT, INC.**

on the parties in this action as follows:

| | |
|---|---|
| Diana M. Torres, Esq.<br>O'Melveny & Myers<br>400 So. Hope Street<br>Los Angeles, CA 90071<br>Telephone: (213) 430-6000<br>Facsimile: (213) 430-6407 | Keith A. Jacoby, Esq.<br>Littler Mendelson<br>2049 Century Park East, 5th Floor<br>Los Angeles, CA 90067-3107<br>Telephone: (310) 553-0308<br>Facsimile: (310) 553-5583 |

[√]   [PERSONAL] by personally delivering the document listed above to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on December 20, 2006 at Los Angeles, California.

David Quintana

# EXHIBIT 50



CONFORMED COPY

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                  UNITED STATES DISTRICT COURT

8                 CENTRAL DISTRICT OF CALIFORNIA

9                        EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12              Plaintiff,

13         v.                              Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                 ORDER GRANTING MATTEL'S
                                           MOTION FOR AN EXTENSION OF
16                                         TIME TO DEPOSE PAULA GARCIA
                                           IN HER INDIVIDUAL CAPACITY
17                                         AND AS A 30(b)(6) DESIGNEE;
                                           DENYING REQUEST FOR
18  CONSOLIDATED WITH                      SANCTIONS
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
20

21

22                       I. INTRODUCTION

23       On June 15, 2007, Mattel, Inc. ("Mattel") submitted its "Motion To Enforce The Court's

24  Order To Compel, And For Sanctions." Specifically, Mattel moves (1) to enforce the Discovery

25  Master's May 16, 2007 Order Granting Mattel's Motion to Compel MGA to Produce Witnesses

26  for Deposition Pursuant to Rule 30(b)(6) by compelling MGA Entertainment, Inc. ("MGA") to

27  produce Paula Garcia for further deposition testimony, or in the alternative, by granting leave for

28

8/15

EXHIBIT 50    Exhibit 50 Page 940

1   additional time to depose Ms. Garcia on the topics set forth in Mattel's Rule 30(b)(6) notices[1];

2   (2) to compel Ms. Garcia to answer the questions MGA's counsel instructed her not to answer

3   during her deposition; and (3) for sanctions against MGA in the amount of $5,315.  MGA

4   submitted an opposition on June 25, 2007; and Mattel submitted a reply on June 29, 2007.  The

5   motion was heard on August 13.  Having considered the motion papers and the comments of

6   counsel, Mattel's motion for additional time to depose Ms. Garcia is granted, and the request for

7   sanctions is denied.

## II. BACKGROUND

8

9       In February of 2005 Mattel served a notice of deposition of MGA pursuant to Rule

10  30(b)(6), Fed.R.Civ.P. (the "First Notice").  The parties met and conferred, and by May of 2005

11  MGA named Ms. Garcia as one of the witnesses who would testify on six of the eight topics in

12  the First Notice.  Ms. Garcia has been MGA's product manager for Bratz since the product's

13  inception at MGA, and is, in Mattel's view, one of the most important witnesses in its case.

14      The action was stayed from mid-May of 2005 to mid-May of 2006.  Thereafter, Mattel

15  renewed its attempts to schedule a 30(b)(6) deposition.  In a telephonic conference with the

16  Discovery Master, MGA represented that it would provide Mattel with dates for the deposition.

17  In January of 2007, Mattel was able to depose one of MGA's designees on the First Notice, but

18  not Ms. Garcia due to her unavailability.  For the next couple of months, Mattel continued its

19  efforts to schedule Ms. Garcia's deposition without success.

20      In the interim, in February of 2007, Mattel served its Second Notice of Deposition of

21  MGA pursuant to Rule 30(b)(6), Fed.R.Civ.P. (the "Second Notice").  The parties met and

22  conferred, and MGA identified designees for some but not all of the forty-six topics in the

23  Second Notice.

24      After a couple of months had passed without any witnesses being produced for deposition

25  pursuant to the First and Second Notices, Mattel brought a motion to compel.  On May 16, 2007,

26  _____

27  [1] Mattel does not specify in its motion papers how much additional time it seeks.

28

Exhibit 50 Page 941

1   the Discovery Master granted Mattel's motion to compel and ordered MGA to, *inter alia*, (1)

2   produce Ms. Garcia for deposition on or before June 15, 2007, in her individual capacity and as a

3   designee on Topics 1-3 and 6-8 of Mattel's First Notice; and (2) make its designees available for

4   deposition for all Topics except Nos. 25 and 26 in Mattel's Second Notice on or before June 30,

5   2007 (the "Order").[2]  This is the Order that is the subject of Mattel's motion.

6       After the Court's Order, MGA confirmed Ms. Garcia's designation on the following

7   Topics in Mattel's Second Notice:  Topic Nos. 1-8, 9 (to the extent not covered by previously

8   designated testimony), 10, 12, 13 (with respect to manufacturers only), 16 (to the extent not

9   covered by designated portions of Isaac Larian's and Carter Bryant's depositions), 17, 29, 30, 35,

10  and 36.  MGA offered to produce Ms. Garcia for her deposition on May 24 and 25, 2007, or else

11  not until the end of June.  Mattel accepted the May 24 and 25 dates.  The parties agreed that the

12  this deposition would cover Bryant-related issues, and that they would make separate

13  arrangements to depose Ms. Garcia on the unfair competition, trade secrets and RICO issues in

14  the MGA v. Mattel and Mattel v. MGA suits.  Zeller Decl., Ex. 10; see also MGA's Opposition

15  at p.6, n. 19.

16      Two days before Ms. Garcia's deposition, MGA produced approximately 7,600 pages of

17  documents.  MGA's counsel, Diana Torres, advised Mattel that MGA was willing to defer her

18  deposition in light of the document production.  Ms. Torres also informed Mattel that by

19  proceeding with the deposition as scheduled, Mattel was "choosing to do so at the risk that later

20  discovery (including the [7,600 pages of documents] may be relevant to her deposition and will

21  not be entitled to call her back for that reason."[3]  Zeller Decl., Ex. 10.  Mattel's counsel

22

23      [2]   During the hearing, the undersigned stated that he did not think the seven-hour limitation on depositions
    applied to Rule 30(b)(6) depositions, but also commented that it did not make sense to be focusing on such a
24  "theoretical" issue, as Ms. Garcia had not yet been deposed. Zeller Decl., Ex. 8. Mattel's assertion that the
    Discovery Master "ruled" on this issue is erroneous.
25
        [3]   As stated previously, the parties have an agreement, however, that MGA will make Ms. Garcia available
26  for a separate deposition on the unfair competition, trade secrets and RICO issues in the MGA v. Mattel and Mattel
    v. MGA cases. Zeller Decl., Ex. 10; see also MGA's Opposition at p.6, n. 19.
27

28
    Bryant v. Mattel, Inc.,                                                                                      3
    CV-04-09049 SGL (RNBx)

1   responded by accusing MGA of delaying its document production for tactical reasons.  Mattel's

2   counsel also advised MGA that it was proceeding with Ms. Garcia's deposition as scheduled,

3   and furthermore, that it did not believe it was "waiving" its rights to obtain further discovery

4   regarding the 7,600 pages of documents.

5        Mattel began the deposition of Ms. Garcia in her individual and corporate capacity on

6   Thursday, May 24, 2007.  The next day, MGA's counsel offered to delay the deposition from

7   Friday, May 25, 2007, to Tuesday, May 29, 2007, in light of the recent document production.

8   Mattel's counsel rejected the offer because Mattel did not want to delay Ms. Garcia's deposition

9   any further and because Mattel was prepared to question Ms. Garcia about other documents

10  already produced in the case.

11       Mattel deposed Ms. Garcia for a total of 14 hours and 18 minutes.  Mattel asked MGA to

12  produce Ms. Garcia for at least one more day of deposition, however, MGA refused unless

13  Mattel agreed not to "revisit" topics that had already been covered.  Mattel's Motion at p.3.

14  MGA also indicated that even if it were to produce Ms. Garcia for further questioning, it would

15  probably not agree to produce her for an additional full day.

16       Mattel seeks additional time to depose Ms. Garcia.  Mattel contends that 14 hours and 18

17  minutes was not enough time to cover the 24 topics on which Ms. Garcia was designated, much

18  less to cover Ms. Garcia's personal knowledge of facts central to Mattel's claims against Bryant.

19  According to Mattel, the Discovery Master has ruled that the 7-hour rule does not apply to Rule

20  30(b)(6) depositions, and that MGA's refusal to produce Ms. Garcia for further questioning

21  violates the Order.

22       Even if the 7-hour rule applies, Mattel contends that there is good cause to extend the

23  deposition of Ms. Garcia for a number of reasons.  First, Mattel contends that the deposition

24  progressed slowly because Ms. Garcia regularly asked for questions to be repeated or rephrased

25  and often took long pauses before answering.  Mattel also contends that there were lengthy

26  breaks, after which Ms. Garcia returned with clarifications of her prior testimony that required

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                            4

1  further questioning. Mattel also contends that Ms. Garcia was not prepared to answer questions

2  regarding personnel involved in the early phases of the Bratz project.

3       Second, Mattel contends that MGA's counsel improperly instructed Ms. Garcia not to

4  answer questions regarding facts she ostensibly learned from counsel. Third, Mattel contends

5  that MGA's counsel improperly instructed Ms. Garcia not to answer questions about MGA

6  Mexico. Mattel admits that the parties had an agreement to limit the scope of Ms. Garcia's

7  deposition to Bryant-related issues; however, Mattel believes that this agreement did not bar

8  questions about MGA Mexico's contacts with the United States in light of MGA's then-pending

9  motion to dismiss MGA Mexico for lack of personal jurisdiction.[4]

10      Fourth, Mattel contends that it should be permitted to resume the deposition of Ms.

11  Garcia because just two days prior to the deposition, MGA produced approximately 7,600 pages

12  of documents, the bulk of which have Ms. Garcia's name on them and relate to the 2000 and

13  2001 time period. Mattel contends that MGA had no legitimate basis for withholding the

14  documents. Mattel also contends that the production was incomplete insofar as it did not include

15  documents that the Discovery Master ordered MGA to produce. Lastly, Mattel contends that it

16  should be given more time to depose Ms. Garcia because MGA has demanded more deposition

17  time for witnesses on topics that are far less central to this litigation.

18      MGA opposes the motion on numerous grounds. As a preliminary matter, MGA accuses

19  Mattel of using 30(b)(6) depositions as a means to circumvent the district court's order limiting

20  the number of depositions to be taken by each side. At present, the parties are limited to 24

21  depositions per side for the entire consolidated action, including both individual and 30(b)(6)

22  depositions. In MGA's view, Mattel is using 30(b)(6) depositions with excessive numbers of

23  topics to avoid noticing witnesses to testify in their individual capacity. MGA further contends

24  that Rule 30(b)(6) depositions are indeed limited to one seven-hour day, and furthermore, that

25

26       [4] The district court has since denied MGA's motion to dismiss MGA Mexico.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

Exhibit 50 Page 944

1    the district court must have intended the limit to apply when he restricted each side to 24

2    depositions.

3        Next MGA contends that Ms. Garcia was deposed on time and in compliance with the

4    Order. According to MGA, Ms. Garcia testified at length about the early development of Bratz,

5    the persons involved in that development process, as well as the other topics for which she had

6    been designated. MGA acknowledges that Ms. Garcia could not recall the names of some of the

7    individuals involved in Bratz; however, MGA believes Mattel could have remedied the situation

8    by simply showing Ms. Garcia documents to refresh her recollection rather than treating the

9    deposition as a memory test.

10        MGA denies engaging in any delay tactics or other forms of obstruction during the

11    deposition. According to MGA, Ms. Garcia requested to have questions rephrased when she did

12    not understand the question. MGA also contends that pauses are appropriate to allow counsel to

13    interject any necessary objections. Furthermore, MGA contends that it properly instructed Ms.

14    Garcia not to answer only when necessary to preserve the attorney-client privilege. MGA also

15    defends its instructions not to answer questions about MGA Mexico because those questions

16    exceeded the agreed upon scope of the deposition. The parties agreed that Ms. Garcia would be

17    made available for one deposition regarding Bryant-related matters and a separate deposition

18    regarding Mattel's counterclaims. MGA considers questions regarding MGA Mexico as

19    irrelevant to Bryant-related matters, and relevant only to Mattel's counterclaims.

20        In MGA's view, Mattel, not MGA is to blame for not completing Ms. Garcia's

21    deposition. MGA asserts that Mattel wasted time by questioning Ms. Garcia on topics not

22    relevant to the litigation, including her addresses for the past year, whether she had any

23    roommates during that time and who they were, and her cell phone bills.

24        MGA also contends that Mattel caused the document production delay by insisting that

25    MGA produce all color documents in a different electronic format than previously requested.

26    Furthermore, MGA contends that it made multiple offers to postpone the deposition to allow

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                                    6

1   Mattel additional time to review the document production.   MGA contends that Mattel chose to

2   move forward with the deposition, and therefore Mattel "has no basis for asserting that MGA's

3   document production was an attempt to prevent Mattel from deposing Ms. Garcia on the topics

4   for which she was designated nor that it had any impact on Mattel's ability to do so." MGA's

5   Opposition, p.6.

6       Lastly, MGA contends Mattel filed the instant motion without meeting and conferring in

7   good faith.  MGA points out that during the meet and confer process, it agreed to produce Ms.

8   Garcia for additional time without the need to resort to motion practice.  More specifically, MGA

9   is prepared to make Ms. Garcia available for an additional four hours, provided that any further

10  questioning "does not revisit already questioned areas of inquiry." MGA's Opposition at p.3.

11                    III. STANDARDS

12       Rule 30(d) of the Federal Rules of Civil Procedure provides the following with respect to

13  the schedule and duration of depositions:

14        (1) Any objection during a deposition must be stated concisely and in a non-
           argumentative and non-suggestive manner.  A person may instruct a deponent
15       not to answer only when necessary to preserve a privilege, to enforce a limitation
           directed by the court, or to present a motion under Rule (d)(4).
16

        (2) Unless otherwise authorized by the court or stipulated by the parties, a
17       deposition is limited to one day of seven hours.  The court must allow additional
           time consistent with Rule 26(b)(2) if needed for a fair examination of the
18       deponent or if the deponent or another person, or other circumstance, impedes or
           delays the examination.
19

        (3) If the court finds that any impediment, delay, or other conduct has
20       frustrated the fair examination of the deponent, it may impose upon the persons
           responsible an appropriate sanction, including the reasonable costs and attorney's
21       fees incurred by any parties as a result thereof.

22

23  The Advisory Committee Notes for Rule 30(d)(2) provide the following guidelines for

24  compliance:

25        Paragraph (2) imposes a presumptive durational limitation of one day of seven
           hours for any deposition.  The Committee has been informed that the overlong
26       depositions can result in undue costs and delays in some circumstances.  This
           limitation contemplates that there will be reasonable breaks during the day for
27       lunch and other reasons, and that the only time to be counted is the time occupied

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                            7

by the actual deposition. For purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition. The presumptive duration may be extended, or otherwise altered, by agreement. Absent agreement, a court order is needed. The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order.

Parties considering extending the time for deposition – and courts asked to order an extension – might consider a variety of factors. For example, if the witness needs an interpreter, that may prolong the examination. If the examination would cover events occurring over a long period of time, that may justify allowing additional time. . . .

It is expected that in most instances the parties and the witness will make reasonable accommodations to avoid the need for resort to the court. The limitation is phrased in terms of a single day on the assumption that ordinarily a single day would be preferable to a deposition extending over multiple days; if alternative arrangements would better suit the parties, they may agree to them. It is also assumed that there will be reasonable breaks during the day. Preoccupation with timing is to be avoided.

The rule directs the court to allow additional time where consistent with Rule 26(b)(2) if needed for a fair examination of the deponent. In addition, if the deponent or another person impedes or delays the examination, the court must authorize extra time. The amendment makes clear that additional time should also be allowed where the examination is impeded by an "other circumstance," which might include a power outage, a health emergency, or other event.

\* \* \*

Paragraph (3) includes sanctions provisions formerly included in paragraph (2). It authorizes the court to impose an appropriate sanction on any person responsible for an impediment that frustrated the fair examination of the deponent. This could include the deponent, any party, or any other person involved in the deposition. If the impediment or delay results from an "other circumstance" under paragraph (2), ordinarily no sanction would be appropriate.

See Advisory Committee Notes on the 2000 Amendments to Fed.R.Civ.P. 30(d).

## IV. DISCUSSION

### A. There Is Good Cause For An Extension Of Time To Depose Ms. Garcia

As a preliminary matter, MGA is in compliance with the Order insofar as it has produced Ms. Garcia for deposition in her individual and corporate capacity by the June 30th deadline.[5] Therefore, Mattel's motion, although styled as motion to compel compliance with

---

[5] Mattel, however, has filed a separate motion to compel compliance with other portions of the Order.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

1   the Order, is treated herein as motion for additional time to complete the deposition of Ms.

2   Garcia pursuant to Rule 30(d)(2), Fed.R.Civ.P.

3       Applying the standards above, Mattel has demonstrated the requisite good cause to

4   warrant an extension of the "presumptive" 7-hour time limit for depositions. Ms. Garcia is,

5   without question, one of the most important witnesses in this case. She has been the product

6   manager for Bratz since the product's inception at MGA. Therefore, she has considerable

7   knowledge regarding the timing and origins of Bratz, Bryant's involvement with MGA, and the

8   development of Bratz. Ms. Garcia was the first person at MGA with whom Bryant spoke. Ms.

9   Garcia was present when Bryant first presented the idea of Bratz to Mr. Larian. Ms. Garcia also

10   met with Bryant and Margaret Leahy to discuss doll sculpting at a time when Bryant was still

11   employed at Mattel. In addition, another witness, Steve Linker, testified that Ms. Garcia

12   contacted him in September of 2000 to create packaging for Bratz and gave him art boards and

13   illustrations in October of 2000. Ms. Garcia was also involved in naming the Bratz characters.

14       Furthermore, MGA has designated Ms. Garcia on numerous topics. MGA designated

15   Ms. Garcia to testify regarding Topics 1-3 and 6-8 of the First Notice, which are set forth below.

16     Topic 1: The identity of each person involved in the MGA Projects, and the
      nature and time period(s) of each such person's involvement therein.

17

18     Topic 2: The conception, design and development of the MGA Projects,
      including without limitation the chronology thereof.

19     Topic 3: The identity of, and the design, development and first sale of, any
      products resulting from the MGA Projects.

20

21     Topic 6: The identity of documents and tangible items that relate to the MGA
      Projects.

22     Topic 7: The identity, source and current location of each head that was
      provided by, for, on behalf of MGA or any of its representatives to Anna Rhee

23       for painting prior to October 21, 2000.

24     Topic 8: The identity of each person involved in the conception, design,
      development, production, sculpting, rotocasting, molding, modeling or

25       prototyping of each head that was provided by, for or on behalf of MGA or any
      of its representatives to Anna Rhee for painting prior to October 21, 2000.

26   //

27

28

EXHIBIT ___    Exhibit 50 Page 948

Zeller Decl., Ex. 1. MGA also designated Ms. Garcia to testify regarding the following

topics in the Second Notice:

Topic 1: The origin, conception, creation, design, sculpting, development, engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether such was released in any form to the public), including without limitation the timing thereof, the IDENTITY of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved therein, and the nature, extent and time period(s) of each such PERSON's involvement.

Topic 2: The circumstances under which BRATZ or any BRATZ DESIGN first came to YOUR attention, including without limitation the timing, method and manner thereof and the IDENTITY of each PERSON with knowledge thereof.

Topic 3: The identity of each doll, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

Topic 4: To the extent not covered by Topic 3, each EMBODIMENT of any doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

Topic 5: The work, activities and/or services that BRYANT performed for or with YOU or on YOUR behalf prior to June 30, 2001.

Topic 6: The origin, conception and creation of DESIGNS that BRYANT CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever claimed to have, any right, title or interest (whether in whole or in part).

Topic 7: The identity of, and the design, development, sculpting, development, engineering, rotocasting, modeling, prototyping and first sale of, any doll, product, work or item that has been produced, developed, manufactured, licensed, sold or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN referenced in Topic 6.

Topic 8: Each EMBODIMENT of BRATZ that was CREATED prior to June 30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was CREATED prior to June 30, 2001.

Topic 9: The DRAWINGS, including without limitation the authorship, creation, dissemination and use thereof and the source, meaning, authenticity and timing of any dates thereof.

Topic 10: The IDENTITY of each vendor or third party who performed or contributed, or who was considered, solicited, requested, proposed or contemplated by YOU or BRYANT to perform or contribute, any activities, work or services in connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR COMMUNICATIONS therewith, and the nature, extent and timing of such activities, work or services.

Topic 12: The actual, proposed, requested or contemplated manufacture, fabrication or tooling (including the production of molds) of BRATZ, including

EXHIBIT    Exhibit 50 Page 949

without limitation the timing thereof and the IDENTITY of each manufacturer and potential manufacturer used, proposed or considered.

Topic 13:  COMMUNICATIONS prior to June 30, 2001 between YOU and any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or any BRATZ DESIGN.

Topic 16:  COMMUNICATIONS BETWEEN YOU AND BRYANT prior to January 1, 2001, including without limitation the content, means and timing of such COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

Topic 17:  COMMUNICATIONS that BRYANT made for YOU or on YOUR behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior to June 30, 2001.

Topic 29:  COMMUNICATIONS made by, for or on behalf of YOU, whether directly or indirectly, with Anna Rhee, including without limitation since February 2005(but not including any such COMMUNICATIONS with her legal counsel).

Topic 30:  COMMUNICATIONS between YOU and Veronica Marlow, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

Topic 35:  COMMUNICATIONS between YOU and Universal Commerce Corp., Ltd. prior to June 30, 2001.

Topic 36:  The source, meaning and authenticity of SL00013-14, including without limitation the timing of its creation and the handwriting thereon.

Zeller Decl., Ex. 3. The specific topics identified above for which Ms. Garcia has been designated are relevant and proper.  It is unrealistic to require Mattel to cover the number and breadth of topics for which Ms. Garcia has been designated to testify in a matter of fourteen hours.

In addition, just two days prior to the scheduled deposition, MGA produced approximately 7,600 pages of documents. Mattel has reviewed these documents and determined that Ms. Garcia's name appears on the bulk of the documents.  Mattel also determined that a significant portion of the documents pertain to a key period (2000 or the first

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

1   half of 2001) and that some deal with the early development of Bratz while Carter Bryant was

2   still with Mattel.  Regardless of where the fault lies for the belated document production, Mattel

3   is entitled to a fair examination of the deponent regarding these 7,600 pages of documents.[6]

4        Mattel is also entitled to additional time to depose Ms. Garcia because MGA improperly

5   instructed her not to answer questions regarding MGA Mexico.  See Zeller Decl., Ex. 9 at

6   439:10-442:6 and 445:14-18.  Although the parties had an agreement to limit the scope of Ms.

7   Garcia's deposition to Bryant-related issues, that agreement was never presented to the court for

8   approval and therefore does not have the force and effect of a court order.  In the absence of a

9   court order, an instruction not to answer is improper unless necessary to preserve a privilege.

10  See Fed.R.Civ.P. 30(d)(1).

11       In summary, the four factors above provide ample good cause to justify additional time

12  to depose Ms. Garcia.

13  B.  Instructions Not To Answer Deposition Questions

14       Mattel next contends that counsel improperly asserted the attorney-client privilege as to

15  certain deposition questions.  In opposition, MGA contends that counsel properly instructed Ms.

16  Garcia not to answer to avoid revealing the substance of protected attorney-client

17  communications.

18       The attorney-client privilege protects an attorney's communication of legal advice to his

19  client, as well as the client's communication of information to the attorney "to enable him to give

20  sound and informed advice."  Upjohn Co. v. United States, 449 U.S. 383, 390 (1981).  The

21  protection extends only to communications; however, it does not extend to the facts underlying

22  privileged communications.  Id. at 395-96.  The Ninth Circuit has described the elements of the

23  attorney-client privilege as follows: "(1) When legal advice of any kind is sought (2) from a

24

25      [6] Furthermore, during the hearing, Mattel indicated that MGA produced more than 100,000 documents

26  after Ms. Garcia's deposition.  This production of documents provides additional justification for resuming Ms.
    Garcia's deposition.

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

               12

1  professional legal adviser in his or her capacity as such, (3) the communications relating to that

2  purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently

3  protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be

4  waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir.2002).  The party asserting the

5  privilege has the burden of establishing that the privilege applies.  In re Grand Jury Investigation,

6  974 F.2d 1068, 1070 (9th Cir. 1992).

7          In the first excerpt at issue, counsel, Ms. Torres, interjected an objection and instruction

8  not to answer:

9          Q:  How is it that you learned Carter Bryant was employed by Mattel as of the
          time that he had this meeting with you and others that you reference as occurring
10         on September 1, 2000?

11         Ms. Torres:  I object and instruct the witness not to answer if her answer involves
          communications with counsel.
12
          The Witness:  Then I can't answer the question.
13

14  Garcia Depo. at 273:6-14, Zeller Decl., Ex. 9.  This objection is sustained because a response

15  would have necessarily revealed the substance of a protected attorney-client communication.

16          In the next excerpt at issue, Mattel posed another question regarding Mr. Bryant's

17  employment with Mattel:

18         Q:  What facts are you aware of from any source as to whether or not Mr. Bryant
          was still working for Mattel as of September 1, 2000?
19
          Ms. Torres:  I am going to caution the witness not to disclose attorney-client
20         communications.  If you can answer that otherwise, go ahead.

21         The Witness:  Then I can't

22         (Instruction not to answer.)

23         Mr. Page:  I pose an objection as to form.

24         The Witness:  I can't answer the question.

25         Mr. Zeller:  Because of the instruction?

26         The Witness:  Yes.

27  //

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                          13

1   Garcia Depo. at 273:20-275:2, Zeller Decl., Ex. 9.  The objection is sustained because of the

2   way the question is phrased.  If the question had been posed differently, without reference to the

3   source of information and called for disclosure of facts only, the objection would have been

4   improper.

5          In the following excerpt, Ms. Garcia was asked how she learned of the arbitration

6   between Isaac and Fred Larian:

7          Q:  At some point, did you come to learn that there was an arbitration or
           litigation between Isaac Larian and Fred Larian?

8

9          A:  Yes.

           Q:  How did you learn that?

10

11         (Ms. Torres):  Objection, I'm going to instruct the witness not to answer if she
           learned from counsel.

12         The Witness:  I believe it was — I believe it was through his — Isaac's assistant.

13         Mr. Zeller:  Was it — I'm blanking on her name.  Was it still Dede Brown?  Was
           it still Dede Brown at that time?

14

15         A:  I don't think so, but I'm not sure.

16   Garcia Depo. at 349:7-21; Zeller Decl., Ex. 9.  Ms. Garcia answered the question posed to her

17   and therefore the objection is moot.

18         In the next section, Ms. Garcia also gave a response to the question posed:

19         Q:  So is it fair to say that you don't have any knowledge or information as to
           when it is that Mr. Bryant first created Bratz in any form?

20         Ms. Torres:  Objection, vague, calls for a legal conclusion.

21         The Witness:  Outside of privileged and confidential?

22         Ms. Torres:  I will instruct you not to answer to the extent you have knowledge
           that comes solely from counsel.

23

24         The Witness:  No.

25   Garcia Depo. at 291:12-22, Zeller Decl., Ex. 9.  Because Ms. Garcia gave a response, the

26   objection is moot.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              14

1    In the following excerpts, Mattel sought to question Ms. Garcia about what caused her to

2  change her testimony after returning from a break in the deposition:

3       A:  I don't mean to interrupt.  I want to state something before we got started.
        With some more thought during our break, I just wanted to state for the record
4       that I am very sure that Margaret Leahy received the armature engineering
        drawings that I mentioned in my earlier testimony.  I originally mentioned I
5       wasn't sure, but I'm very sure she received that sketch.

6       Q:  What's your basis for now being very sure of that?

7       A:  Taking a few minutes with fresh air and thinking through my memory more
        clearly.  My memory is more sharp and more clear.
8
        Q:  Between the time that you gave your prior answers about that particular
9       drawing and now, you obviously had discussions with MGA's counsel, is that
        correct?
10
        A:  Yes.
11
        Q:  Did you discuss with them that particular drawing?
12
        Ms. Torres:  I instruct the witness not to answer on the grounds of attorney-client
13      privilege.

14      (Instruction not to answer.)

15      The Witness:  I can't answer that question.

16      (By Mr. Zeller )
        Q:  Did you look at the armature drawing that you're referring to?
17
        A:  During the break?
18
        Q:  Yes.
19
        A:  No.
20
        Q:  It's fair to say what you learned about that drawing was told to you by MGA's
21      lawyers during the break?

22      Ms. Torres:  Objection, misstates the witness' testimony and calls for attorney-
        client privilege communications.  If you can answer without revealing attorney-
23      client privileged communications, go ahead.

24      The Witness:  I can't answer the question.

25      (By Mr. Zeller)
        Q:  Based upon the instruction that your counsel is giving you?
26
        A:  Yes.
27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

1   Garcia Depo. at 617:16-619:2. The objections are overruled. The questions did not require Ms.

2   Garcia to reveal the content of an attorney-client communication. Rather, the questions posed

3   called for disclosure of underlying facts to which Mattel is entitled.

4                                   IV. CONCLUSION

5           For the reasons set forth above, additional time to depose Paula Garcia in her individual

6   capacity and as a Rule 30(b)(6) designee is necessary for a fair examination pursuant to Rule

7   30(d)(2) and Rule 26(b)(2), Fed.R.Civ.P. MGA shall make Ms. Garcia available for deposition

8   for an additional fourteen hours.[7] Upon resumption of her deposition, Ms. Garcia shall provide

9   answers to the two questions where counsel's objections have been overruled. The deposition

10  shall be held at a mutually agreeable date and time, and shall be completed no later than

11  September 28, 2007. The motion for sanctions is denied.

12          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

13  Master, Mattel shall file this Order with the Clerk of Court forthwith.

14

15  Dated: August 14, 2007

16                                   HON. EDWARD A. INFANTE (Ret.)
                                     Discovery Master

17

18

19

20

21

22

23

24  _____

25      [7] During oral argument, MGA implied it may de-designate Ms. Garcia as to some topics. Without
    determining whether such a practice is proper or improper, if MGA does de-designate Ms. Garcia as to some topics,
26  it will have no bearing on the finding that fourteen hours are necessary for a full and fair examination of Ms. Garcia
    in her individual and corporate capacities.

27

28

EXHIBIT    Exhibit 50 Page 955

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 14, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION FOR AN EXTENSION OF TIME TO DEPOSE PAULA GARCIA IN HER INDIVIDUAL CAPACITY AS A 30(b)(6) DESIGNEE; DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 14, 2007, at San Francisco, California.

Sandra Chan

Exhibit 50 Page 956

EXHIBIT 51

1   RICHARD B. GOETZ (S.B. #115666)
    rgoetz@omm.com
2   DALE M. CENDALI (admitted *pro hac vice*)
    dcendali@omm.com
3   DIANA M. TORRES (S.B. #162284)
    dtorres@omm.com
4   O'MELVENY & MYERS LLP
    400 South Hope Street
5   Los Angeles, CA 90071-2899
    Telephone: (213) 430-6000
6   Facsimile: (213) 430-6407

7

8   Attorneys for MGA Entertainment, Inc.,
    MGA Entertainment (HK) Limited, MGAE
9   de Mexico S.R.L. de C.V. and Isaac Larian

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13

14  CARTER BRYANT, an individual,          Case No. CV 04-9049 SGL (RNBx)
                                           (consolidated with CV 04-9059 & 05-
15                    Plaintiff,           2727)

16       v.                                *EX PARTE* APPLICATION OF
                                           O'MELVENY & MYERS LLP FOR
17  MATTEL, INC., a Delaware               ORDER SHORTENING TIME FOR
    corporation,                           HEARING ON ITS MOTION TO
18                                         WITHDRAW AND REQUIRING *IN
                      Defendant.           CAMERA* INSPECTION OF
19                                         SUPPORTING DOCUMENTS;
                                           MEMORANDUM OF POINTS AND
20  AND CONSOLIDATED ACTIONS              AUTHORITIES IN SUPPORT
                                           THEREOF
21

22                                         Courtroom: Hon. Stephen G. Larson
                                           Discovery Cutoff: January 1, 2008
23                                         Trial Date: April 29, 2008

24

25

26

27

28

LA2:843340.8

1   TO THE HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT

2   JUDGE, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3       O'Melveny & Myers LLP ("O'Melveny"), co-counsel for MGA

4   Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L.

5   de C.V. and Isaac Larian (collectively, the "MGA Parties"), hereby respectfully

6   applies *ex parte* for an order from this Court (1) shortening time for hearing on its

7   Motion to Withdraw from its representation of the MGA Parties in the actions

8   consolidated as CV 04-9049 SGL (RNBx), and (2) giving O'Melveny leave to

9   submit the Memorandum of Points and Authorities and any other materials

10  supporting the Motion directly to Chambers under seal for review *in camera* by the

11  Court only.

12      O'Melveny makes this Application pursuant to Local Rules 7-19 and 83-2.9

13  and California Rule of Professional Conduct 3-700(C).

14      O'Melveny respectfully requests that the Court hear this Application in

15  person on October 9, 2007, or as soon thereafter as the matter may be heard.

16      This Application is brought properly on an *ex parte* basis, as it is in the

17  interest of all parties that O'Melveny's right to withdraw from this representation

18  be determined as promptly as possible, and in a manner that prevents undue

19  prejudice to the MGA Parties while protecting the confidences of their attorney-

20  client relationship with O'Melveny.  In addition, it appears from the Court's

21  website that the Court's calendar is such that the earliest date on which the Motion

22  could be heard on regular notice is November 19, 2007, more than five weeks from

23  now.

24      This Application is based on the accompanying Memorandum of Points and

25  Authorities, all papers and pleadings on file in this Court, and such argument as the

26  Court may entertain in connection with the Application.

27      Pursuant to Local Rule 7-19, on October 8, 2007, O'Melveny gave notice of

28  this Application and explained the nature of the relief being sought to the

LA2:843340.8                    - 1 -                EX PARTE APPLICATION RE:
                                                    O'MELVENY & MYERS LLP'S MOTION
                                                    TO WITHDRAW FROM CV 04-9049

1  following:

2  <u>MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de</u>

3  <u>Mexico S.R.L. de C.V. and Isaac Larian:</u>

4      Isaac Larian
       Chief Executive Officer
5      Craig Holden
       Senior Counsel
6      16380 Roscoe Blvd. Suite 200
       Van Nuys, CA 91406
7      Telephone: (818) 894-3150

8      Patricia Glaser
       Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
9      10250 Constellation Boulevard, 19th Floor
       Los Angeles, CA 90067
10     Telephone: (310) 553-3000
       Co-Counsel for MGA Entertainment, Inc., MGA Entertainment (HK)
11     Limited, MGAE de Mexico S.R.L. de C.V. and Isaac Larian

12     Ellen Pansky
       Pansky & Markle
13     1010 Sycamore Avenue, Suite 101
       South Pasadena, CA 91030
14     Telephone (213) 626-7300
       Counsel for MGA
15

16

17  <u>Counsel for Mattel, Inc.:</u>

18     Michael Zeller
       Quinn Emanuel Urquhart Oliver & Hedges, LLP
19     865 S. Figueroa Street, 10th Floor
       Los Angeles, CA 90017-2543
20     Telephone: (213) 443-3000

21

22  <u>Counsel for Carter Bryant:</u>

23     Michael Page
       Keker & Van Nest LLP
24     710 Sansome Street
       San Francisco, CA 94111
25     Telephone: (415) 391-5400

26

27     Acting on behalf of the MGA Parties, Patty Glaser of the Christensen, Glaser

28  firm responded that the MGA Parties do not oppose O'Melveny's withdrawal or

EXHIBIT ___          **Exhibit 51 Page 959**

1   request for an *in camera* review, but do oppose the Application insofar as it

2   requests that O'Melveny's Motion to Withdraw be heard on shortened time.   Ms.

3   Glaser stated that in the hearing on Tuesday, October 9, she wishes to participate by

4   telephone and her partner Amman Kahn intends to appear personally in Court.

5        Mattel's counsel Michael Zeller responded that Mattel does not oppose the

6   request that the Motion to Withdraw be heard on shortened time.  He stated that

7   Mattel is not likely to oppose the request for *in camera* review, but that Mattel takes

8   no position at this time.  He also stated that he would like to participate in the

9   hearing by telephone and that another Mattel attorney might be present in the

10  Courtroom when the Application is presented.

11       Mr. Bryant's counsel Michael Page responded that Mr. Bryant does not

12  oppose the Application and does not request to be present when the Application is

13  presented to the Court.

14       Pursuant to Local Rules 83-2.9 and 83-2.10, O'Melveny provided written

15  notice to MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE

16  de Mexico S.R.L. de C.V. in connection with this Application that corporations and

17  unincorporated associations may not appear *pro se.*

18

19

20  Dated:  October 9, 2007          RICHARD B. GOETZ
                                     DALE M. CENDALI
21                                   DIANA M. TORRES
                                     O'MELVENY & MYERS LLP
22
                                     By:
23                                        Richard B. Goetz
                                     Attorneys for MGA Entertainment, Inc.,
24                                   MGA Entertainment (HK) Limited,
                                     MGAE de Mexico S.R.L. de C.V. and
25                                   Isaac Larian

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

O'Melveny & Myers LLP ("O'Melveny") intends to file a Motion with the Court to withdraw as counsel in these consolidated actions for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Isaac Larian (collectively, the "MGA Parties"). As will be set out more fully in the Motion and supporting materials, O'Melveny cannot continue effectively as counsel for the MGA Parties, and the MGA Parties are not honoring their fee obligations to O'Melveny. In light of the compounding challenges posed by this breakdown in the relationship between O'Melveny and the MGA Parties, O'Melveny's objective is to withdraw from the representation as expeditiously and seamlessly as possible.

For the reasons set forth below, O'Melveny seeks an order of this Court (1) shortening the time for hearing and decision on its Motion to Withdraw, which O'Melveny is prepared to file immediately, and (2) granting leave for O'Melveny to submit the Memorandum of Points and Authorities and other materials supporting the Motion directly to Chambers under seal for *in camera* review by the Court only.

## I.   O'MELVENY'S MOTION SHOULD PROCEED ON AN ACCELERATED SCHEDULE.

Disagreements have arisen between O'Melveny and the MGA Parties that have made it unreasonably difficult for O'Melveny to continue serving as counsel to the MGA Parties in these consolidated actions. Those disagreements are continuing and interfere with O'Melveny's ability to provide effective representation. Following several meetings with the MGA Parties in which these disagreements were not resolved, O'Melveny notified the MGA Parties in writing on September 12, 2007, of its intention to withdraw as counsel in this matter.

EX PARTE APPLICATION RE:
O'MELVENY & MYERS LLP'S MOTION
TO WITHDRAW FROM CV 04-9049

EXHIBIT   **Exhibit 51 Page 961**

1    Despite O'Melveny's requests, the MGA Parties have not yet returned an executed

2    consent to the firm's withdrawal.

3        In addition, since giving notice of its intent to withdraw, O'Melveny has been

4    unsuccessful in obtaining the MGA Parties' agreement to a plan for transitioning

5    responsibilities to other counsel.

6        Accordingly, O'Melveny believes an accelerated review of its Motion to

7    Withdraw would be in the best interests of all concerned. In addition, it appears

8    from the Court's website that, absent *ex parte* relief, the Motion to Withdraw could

9    not be accommodated on the Court's calendar until November 19, 2007, more than

10   five weeks away.

11

12   **II.   *IN CAMERA* INSPECTION BEST PRESERVES THE CONFIDENCES**

13   **      OF THE MGA PARTIES AND AVOIDS WAIVER OF THE**

14   **      ATTORNEY-CLIENT PRIVILEGE.**

15       To avoid any undue prejudice to the MGA Parties' interests, O'Melveny

16   seeks *in camera* review of the materials in support of its Motion to Withdraw. This

17   cautionary approach is to avoid any risk of direct or indirect disclosure of the MGA

18   Parties' confidences or information covered by the attorney-client privilege.

19   Further, disclosure could reveal certain details of the MGA Parties' attorney-client

20   relationship with O'Melveny, details to which the MGA Parties' litigation

21   adversary, Mattel, Inc., should have no access or conceivable legitimate interest.

22       The Ninth Circuit has approved the use of *in camera* review as a method for

23   assessing whether information should be protected or revealed to other parties. In

24   *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir. 2003),

25   Private Intervenors requested access over defendant State Farm's objections to

26   eighty-five documents that had been filed under seal with the district court by the

27   parties to the action. After conducting an *in camera* review of the documents in

28   question in the court file, the district court granted the Private Intervenors' request

LA2:843340.8                             - 5 -            EX PARTE APPLICATION RE:
                                                         O'MELVENY & MYERS LLP'S MOTION
                                                         TO WITHDRAW FROM CV 04-9049

1    in part.  On appeal, the Private Intervenors argued that the *in camera* inspection was

2    improper because it deprived them of the opportunity to contest State Farm's

3    contention that the sealed records contain confidential information.  The Court of

4    Appeals observed that *in camera* review is a "commonly used procedural method

5    for determining whether information should be protected or revealed to other

6    parties." *Id.* at 1136, n. 6.  Although the Court of Appeals disagreed with some of

7    the district court's findings regarding what documents were entitled to be sealed, *id.*

8    at 1136-37, the Court of Appeals upheld the district court's decision to review the

9    court file *in camera* in making those findings: "In cases such as this, there are few,

10   if any, alternatives to *in camera* inspection that do not defeat the purpose of the

11   rules and privileges protecting confidential material.  As a result, we rely in the first

12   instance upon the district court conducting the *in camera* inspection to assess

13   critically the arguments of the party opposing disclosure." *Id.* at 1136, n. 6.

14          In reviewing withdrawal motions by counsel, federal courts routinely rely on

15   an *in camera* review to forestall any potential prejudice from the disclosure to

16   opposing counsel of the reasons for the withdrawal.  *See Weinberger v. Provident*

17   *Life and Cas. Ins. Co.*, No. 97 Civ. 9262(JGK), 1998 WL 898309, at *1 (S.D.N.Y.

18   Dec. 23, 1998) ("[I]t is appropriate for a Court considering a counsel's motion to

19   withdraw to consider in camera submissions in order to prevent a party from being

20   prejudiced by the application of counsel to withdraw."); *see also Harrison*

21   *Conference Services, Inc. v. Dolce Conference Services, Inc.*, 806 F. Supp. 23, 25-

22   26 (E.D.N.Y. 1992) (upholding the *in camera* submission of papers supporting

23   plaintiff's motion to substitute in new counsel); *Ficom Int'l, Inc. v. Israeli Export*

24   *Inst.*, 87 Civ. 7461, 1989 WL 13741, at *3 n.1 (S.D.N.Y. Feb. 10, 1989) (noting

25   that disclosing to opposing counsel information potentially adverse to one's client

26   in support of a motion to withdraw "pos[es] ethical problems" and stating that the

27   proper practice for an attorney seeking withdrawal is to "submit the supporting

28   documents to the trial court for inspection *in camera*").

LA2:843340.8                        - 6 -              EX PARTE APPLICATION RE:
                                                       O'MELVENY & MYERS LLP'S MOTION
                                                       TO WITHDRAW FROM CV 04-9049

III.    **CONCLUSION**

For all of the foregoing reasons, O'Melveny respectfully requests that the

Court grant its *ex parte* application.

Dated:  October 8, 2007

RICHARD B. GOETZ
DALE M. CENDALI
DIANA M. TORRES
O'MELVENY & MYERS LLP

By:
Richard B. Goetz
Attorneys for MGA Entertainment, Inc.,
MGA Entertainment (HK) Limited,
MGAE de Mexico S.R.L. de C.V. and
Isaac Larian

EXHIBIT ___   Exhibit 51 Page 964

<u>**PROOF OF SERVICE**</u>

I, Sharon Walker, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, CA 90071-2899. On October 9, 2007, I served the within documents:

*EX PARTE* **APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON ITS MOTION TO WITHDRAW AND REQUIRING** *IN CAMERA* **INSPECTION OF SUPPORTING DOCUMENTS; MEMORANDUM OF POINTS AND AUTH. IN SUPPORT THEREOF**

**(PROPOSED) ORDER GRANTING O'MELVENY & MYERS LLP** *EX PARTE* **APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON ITS MOTION TO WITHDRAW AND REQUIRED** *IN CAMERA* **INSPECTION OF SUPPORTING DOCUMENTS**

☐    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

☒    by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a overnight courier agent for delivery to the person(s) at the address(es) set forth below.

☐    by transmitting via facsimile machine the document(s) listed above to the fax number(s) set forth below.

SEE ATTACHED SERVICE LIST

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 9, 2007, at Los Angeles, California.

*Sharon Walker*

Sharon Walker

LA2:439857.1

1.

## SERVICE LIST

**MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Isaac Larian:**

Isaac Larian
Chief Executive Officer
Craig Holden
Senior Counsel
MGA Entertainment, Inc.
16380 Roscoe Blvd. Suite 200
Van Nuys, CA 91406
Telephone: (818) 894-3150
Facsimile: (818) 894-1267

Patricia Glaser
Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Facsimile: (310) 557-9815

Ellen Pansky
Pansky & Markle
1010 Sycamore Avenue, Suite 101
South Pasadena, CA 91030
Telephone: (213) 626-7300
Facsimile: (213) 626-7330
Counsel for MGA

**Mattel, Inc.:**

Michael Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

**Carter Bryant:**

Michael Page
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

LA2:844008.2

EXHIBIT 52

10-10-2007  07:59am   From-QUINN EMANUEL                    2134433100           T-958  P.002/006  F-786

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2   johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5   (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Plaintiff
   Mattel, Inc.

9

10               UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
                                         Consolidated With Case No. 04-9059
14            Plaintiff,                 and Case No. 05-2727

15       vs.                            MATTEL, INC.'S RESPONSE TO *EX
                                         PARTE* APPLICATION OF
16  MATTEL, INC., a Delaware             O'MELVENY & MYERS LLP
    corporation,                         REGARDING MOTION TO
17                                       WITHDRAW
              Defendant.
18                                       **Phase 1:**
                                         Discovery Cut-off: January 14, 2008
19  AND CONSOLIDATED ACTIONS             Pre-trial Conference:  April 7, 2008
                                         Trial Date:  April 29, 2008
20

21

22

23

24

25

26

27

28

'09/2250005.3

   MATTEL'S RESPONSE TO APP. OF O'MELVENY & MYERS REGARDING MOTION TO WITHDRAW

EXHIBIT          Exhibit 52 Page 967

## **Preliminary Statement**

O'Melveny & Myers has applied *ex parte* (1) to shorten the time for briefing and hearing on its motion to withdraw as counsel and (2) for permission to file the entirety of its memorandum of points and authorities and any supporting declarations in support of its motion *in camera*, denying Mattel access. Mattel has no objection to a shortened briefing schedule. However, O'Melveny should not be permitted to file its entire memorandum of points and authorities and supporting declarations *in camera*.

There is a strong presumption of open access to court records in this Circuit. Even where non-parties seek access, that presumption can be overcome only where a compelling need to deny access is shown. That need must be all the more compelling where a party seeks to deny access even to the other parties to the case, as here. O'Melveny has not met this burden. Instead, O'Melveny relies on a vague assertion that Mattel will learn "details to which [it] should have no access" if it has to serve its papers on Mattel.[1] But as the only Ninth Circuit authority O'Melveny cites itself makes clear, any prejudice to MGA's litigation position is not even a relevant consideration, let alone sufficient "prejudice" to justify denying Mattel access.

Mattel needs to have access, and has a right to access, to papers on O'Melveny's motion for at least two reasons. First, Mattel is entitled to review O'Melveny's motion papers to determine if Mattel even opposes the motion. Based on the *ex parte* alone Mattel cannot even discern what the full basis of the motion will be, let alone determine whether Mattel will oppose it. Mattel needs to see the motion to determine if O'Melveny's withdrawal will result in delay of trial, will improperly prevent MGA from complying with Orders compelling discovery or

---

[1] *Ex parte* App. at p. 5.

1 honoring the many promises O'Melveny has made to Mattel on MGA's behalf in

2 recent weeks regarding MGA's discovery obligations, or will prejudice Mattel in

3 some other way. Second, the papers on O'Melveny's motion may themselves

4 contain non-privileged, relevant, discoverable facts that Mattel is entitled to learn.

5 Depending on what the reason for the "breakdown" in the relationship between

6 MGA and O'Melveny is, the non-privileged facts surrounding that breakdown could

7 be highly relevant. Mattel cannot assess any of this based on the *ex parte* alone,

8 which is all O'Melveny proposes Mattel be permitted to see.

9        It certainly is not implausible that O'Melveny may need to disclose a

10 privileged matter to fully make its motion, and Mattel is sensitive to that concern.

11 However, any legitimate concerns about the disclosure of privileged

12 communications can be addressed through redactions, as such matters typically are.

13 Just as the parties to this case file complete versions of their papers under seal when

14 necessary and publicly file redacted versions that omit protected confidential

15 information, O'Melveny (and MGA, regarding any papers it files) should be

16 required to serve Mattel with a redacted version of its motion papers which redacts

17 privileged information but includes any non-privileged information at the same time

18 that it submits a complete version of its papers *in camera*. In this way, the

19 competing interests -- O'Melveny's interest in fully disclosing the bases for its

20 motion, MGA's interest in protecting its privileged communications and Mattel's

21 interest in making an informed decision about whether to oppose the motion and in

22 learning any non-privileged, discoverable facts revealed in the papers -- are all

23 accommodated.

## **Argument**

24

25 I.   **O'MELVENY'S STATED CONCERNS DO NOT COUNTERMAND**

26      **THE STRONG PRESUMPTION IN FAVOR OF ACCESS**

27        In the Ninth Circuit, there is a presumption of access. "In this circuit,

28 we start with a strong presumption in favor of access to court records." Foltz v.

77209/2250005.3

-3-

1   State Farm Mut. Auto Ins. Co., 331 F.3d 1122, 1134 (9th Cir. 2003); see also Nixon

2   v. Warner Communications, Inc., 435 U.S. 589, 597 (1978) ("It is clear that the

3   courts of this country recognize a general right to inspect and copy public records

4   and documents, including judicial records and documents."); Kamakana v. City and

5   County of Honolulu, 447 F.3d 1172, 1180 (9th Cir. 2006) ("Unlike private materials

6   unearthed during discovery, judicial records are public documents almost by

7   definition, and the public is entitled to access by default.") (citing Nixon).  In order

8   to overcome this presumption, a party must show a "compelling reason" for the

9   denial of public access.  Foltz, 331 F.3d at 1135.

10         This presumption of access is particularly important where a party

11   wishes to withhold information from another party, and not the public at large.

12   Mattel is entitled to know the basis for O'Melveny's application, and its effects, for

13   two main reasons.  First, Mattel cannot determine if it even wishes to oppose the

14   motion without further information.  For example, Mattel does not yet know if

15   O'Melveny's withdrawal will likely result in delay of trial, which can be a sufficient

16   basis for denying such a request.  See Local Rule 83-2.9.2.4 ("Unless good cause is

17   shown and the ends of justice require, no substitution or relief of attorney will be

18   approved that will cause delay in prosecution of the case to completion.").

19   Similarly, Mattel is concerned that O'Melveny's withdrawal could prevent MGA

20   from complying with Court Orders and otherwise prejudice Mattel in discovery.

21   For example, pursuant to a Stipulation and Order between Mattel and MGA, acting

22   through O'Melveny, MGA must produce the balance of documents it was ordered to

23   produce in August by October 17, 2007.[2]  MGA's other counsel, Christensen Glaser,

24   has repeatedly made it clear that O'Melveny has sole responsibility for MGA's

25   document production.  Without seeing O'Melveny's motion papers to learn how

26

27

28

-4-

EXHIBIT __   **Exhibit 52 Page 970**

1  O'Melveny proposes to address this and other pending matters, Mattel cannot

2  intelligently decide whether it will oppose its immediate withdrawal.

3          Second, the reasons for the withdrawal may themselves be relevant.

4  See, e.g., George v. Siemens Indus. Automation, Inc., 182 F.R.D. 134, 142 (D.N.J.

5  1998) (following motion to withdraw, *sua sponte* granting defendant access to

6  language in attorney's *in camera* declaration discussing plaintiff's mental state where

7  her psychological condition was relevant to the suit and the facts in the declaration

8  were not privileged); Blowers v. Lawyers Co-op. Pub. Co., 1982 WL 221, *5

9  (W.D.N.Y. 1982) (granting motion to obtain transcript of *in camera* proceedings

10  related to motion to withdraw as counsel where discussion involved non-privileged

11  fee arrangements).  O'Melveny has cited California Rule of Professional Conduct 3-

12  700(c) as a basis for its withdrawal, but has not clarified even which of the eleven

13  prongs of that section it purports to meet.  If, to take one of many possible examples,

14  O'Melveny wishes to withdraw because MGA "seeks to pursue an illegal course of

15  conduct" or "insists that the member pursue a course of conduct that is illegal or that

16  is prohibited under these rules or the State Bar Act," such information would be both

17  non-privileged and highly relevant to Mattel's case.  If O'Melveny seeks to withdraw

18  because MGA seeks to provide false testimony, that would be relevant and non-

19  privileged.  The *facts* surrounding O'Melveny's withdrawal could be highly relevant

20  for countless reasons, and those facts are not privileged.  See, e.g., Upjohn Co. v.

21  United States, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of

22  communications; it does not protect disclosure of the underlying facts by those who

23  communicated with the attorney.");  AMCO Ins. Co. v. Madera Quality Nut LLC,

24  2006 WL 931437, at *18 (E.D. Cal. 2006) ("it is only the communications that are

25  subject to attorney-client privilege, and not the foundational facts concerning the

26

27   [2]  See Stipulation and Order Regarding Deadline For MGA to Produce

28   (footnote continued)

-5-

MATTEL'S RESPONSE TO APP. OF O'MELVENY & MYERS REGARDING MOTION TO WITHDRAW

EXHIBIT

**Exhibit 52 Page 971**

1  communication, or the underlying, independent facts."); <u>Nutmeg Ins. Co. v. Atwell,</u>

2  <u>Vogel & Sterling A Div. of Equifax Services, Inc.,</u> 120 F.R.D. 504, 509 (W.D. La.

3  1988) ("The courts have consistently held that the work-product concept furnishes

4  no shield against discovery, by interrogatories or by deposition, of the facts that the

5  adverse party's lawyer has learned, or the persons from whom he has learned such

6  facts, or the existence or non-existence of documents, even though the documents

7  themselves may not be subject to discovery.") (citing 8 Wright & Miller, Fed.

8  Practice and Procedure § 2023 (1970); <u>see also</u> <u>Resolution Trust Corp. v. Dabney,</u>

9  73 F.3d 262, 266 (10th Cir. 1995) ("Because the work product doctrine is intended

10  only to guard against divulging the attorney's strategies and legal impressions, it

11  does not protect facts concerning the creation of work product or facts contained

12  within work product").  Relevant, non-privileged facts should not be shielded from

13  Mattel.[3]

14

15  Documents Pursuant to Order of August 13, 2007, dated September 25, 2007.

16  [3]  Indeed, based on O'Melveny's *ex parte* it appears highly likely that relevant,
non-privileged facts *will be* discussed in its motion papers. O'Melveny states that

17  one basis for its withdrawal is a fee dispute with MGA.  This Court has repeatedly

18  ruled that fee agreements, and the terms under which defendants' lawyers' fees are
paid, are not privileged under Ninth Circuit law.  <u>See</u> Order Granting in Part and

19  Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007,

20  to Compel Production of Documents By Carter Bryant and For Sanctions, dated
June 19, 2007, at 4 (recognizing that, "in general, fee agreements are not privileged

21  under Ninth Circuit law," and overruling claim of privilege as to Bryant/MGA fee

22  agreement); Minute Order dated July 2, 2007, at 4.  Moreover, any discussions
relating to fees are not made for the purpose of seeking legal advice, and hence are

23  not privileged.  <u>See</u> <u>United States v. Martin</u>, 278 F.3d 988, 999 (9th Cir. 2002)

24  (setting forth elements of the privilege).  O'Melveny's submission could even bear
directly on a pending motion before the Discovery Master to enforce the Discovery

25  Master's prior Order that MGA produce all documents which refer or relate to the

26  payment of Carter Bryant's legal fees in this action, with which MGA failed to
comply.  <u>See</u> Mattel, Inc.'s Notice of Motion and Motion to Enforce the Court's

27  Order of May 15, 2007, to (I) Compel MGA to Produce Compelled Documents

28  (footnote continued)

1        Here, O'Melveny has not shown any compelling reason why the strong
2    presumption of access should be overcome.  It makes two arguments: (1) disclosure
3    could prejudice MGA's litigation position; and (2) an *in camera* submission is
4    necessary to prevent disclosure of MGA's privileged communications.  The first
5    point is not an appropriate ground for consideration of the request at all.  The second
6    point is, at most, a reason to redact portions of O'Melveny's papers, not a basis for
7    denying Mattel access altogether.

8        On the first point, O'Melveny asserts that its memorandum of points
9    and authorities should be filed *in camera* because it will contain "certain details of
10   the MGA Parties' attorney-client relationship with O'Melveny, details to which . . .
11   Mattel, Inc. should have no access or conceivable legitimate interest."  Thus, on this
12   point, privilege is not the issue -- O'Melveny merely asserts that the information it
13   will discuss will prejudice MGA in some unexpressed fashion.  This kind of
14   "prejudice" is irrelevant.  In <u>Foltz</u>, the Ninth Circuit specifically held that there was
15   no basis for withholding non-privileged information that would merely result in
16   exposure to increased litigation liability:  "This disclosure might harm State Farm by
17   exposing it to additional liability and litigation . . . but a litigant is not entitled to the
18   court's protection from this type of harm."  <u>Foltz</u>, 331 F.3d at 1137.

19       The second point -- privilege -- may be a legitimate concern, but
20   O'Melveny's requested relief is overbroad.  The attorney-client privilege protects
21   only confidential communications made for the purpose of seeking legal advice.  <u>See</u>
22   <u>United States v. Martin</u>, 278 F.3d 988, 999 (9th Cir. 2002) (setting forth elements of
23   the privilege:  "(1) When legal advice of any kind is sought (2) from a professional
24   legal adviser in his or her capacity as such, (3) the communications relating to that
25   _____

26   (Including Fee and/or Indemnity Agreements Between MGA And Bryant), (II)
27   Order That Any Privilege Objections Have Been Waived, and (III) Impose
     Sanctions, dated September 11, 2007.
28

07209/2250005.3

EXHIBIT ___   **Exhibit 52 Page 973**

1  purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance,

2  permanently protected (7) from disclosure by the client or by the legal adviser (8)

3  unless the protection be waived."). O'Melveny's papers will presumably consist of

4  more than a mere litany of the contents of such communications, and will include

5  non-privileged factual information as well. O'Melveny should be required to

6  disclose that information to Mattel by serving a redacted version of its papers, which

7  it can submit to the Court in complete form, *in camera*. See Foltz, 331 F.3d at 1137

8  ("Contrary to the district court's conclusion, the limited number of third-party

9  medical and personnel records can be redacted easily to protect third-party privacy

10  interests while leaving other meaningful information . . . . We do not see how the

11  presence of a small number of third-party medical and personnel records that can be

12  redacted with minimal effort constitutes 'good cause,' let alone a compelling reason,

13  for this protective order to overcome the strong presumption in favor of public

14  access.").

15                                    **Conclusion**

16          For the foregoing reasons, Mattel requests that the Court require

17  O'Melveny to serve its motion papers on Mattel or, at the least, serve a redacted

18  version which contains all non-privileged facts and information in its papers.

19

20  DATED:  October 10, 2007          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
21

22                                  By *B. Dylan Proctor* (CSK)

23                                    B. Dylan Proctor
                                      Attorneys for Plaintiff
24                                    Mattel, Inc.

25

26

27

28

-8-

MATTEL'S RESPONSE TO APP. OF O'MELVENY & MYERS REGARDING MOTION TO WITHDRAW

EXHIBIT ___    Exhibit 52 Page 974

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On October 10, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S RESPONSE TO** *EX PARTE* **APPLICATION OF O'MELVENY & MYERS LLP REGARDING MOTION TO WITHDRAW** on the parties in this action as follows:

Diana M. Torres, Esq.  
**O'MELVENY & MYERS, LLP**  
400 S. Hope Street  
Los Angeles, CA 90071  
*Attorneys for MGA ENTERTAINMENT, INC.*

Patricia Glaser, Esq.  
**Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP**  
10250 Constellation Blvd., 19th Floor  
Los Angeles, CA 90067  
*Attorney for MGA Entertainment*

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 10, 2007, at Los Angeles, California.

NOW LEGAL – Dave Quintana

07209/2169461.1

1

## PROOF OF SERVICE

2  I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa
3  Street, 10th Floor, Los Angeles, California 90017-2543.

4  On October 10, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S RESPONSE TO** *EX PARTE* **APPLICATION OF O'MELVENY & MYERS LLP**
5  **REGARDING MOTION TO WITHDRAW** on the parties in this action as follows:

6      John W. Keker, Esq.               Mark E. Overland, Esq.
    Michael H. Page, Esq.           David E. Scheper, Esq.
7      Christina M. Anderson, Esq.     Alexander H. Cote, Esq.
    **Keker & Van Nest, LLP**         **Overland Borenstein Scheper & Kim,**
8      710 Sansome Street            **LLP**
    San Francisco, CA 94111       300 South Grand Avenue
9      ***Attorneys for Carter Bryant***     Suite 2750
                              Los Angeles, CA 90071-3144
10                                ***Attorneys for Carlos Gustavo Machado***

11

12  **BY U.S. MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed
13  with postage thereon fully prepaid.

14      I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

15

16      Executed on October 10, 2007, at Los Angeles, California.

17

18      Yalonda J. Dekle

19

20

21

22

23

24

25

26

27

28

07209/2128071.1

EXHIBIT 53

Law.com: Behind the Scenes, Bratz D...ase Heats Up                                    Page 1 of 2
Case 2:04-cv-09049-DOC-RNB   Document 1322-20   Filed 12/21/07   Page 56 of 57   Page ID
#:4901





# LAW.COM

Select **'Print'** in your browser menu to print this document.

**Copyright 2007 ALM Properties, Inc. All rights reserved.**

Page printed from: http://www.law.com

Back to Article

## Behind the Scenes, Bratz Doll Case Heats Up

Kellie Schmitt
The Recorder
11-02-2007

Anyone following the litigation over the multibillion-dollar Bratz doll empire knows that the May trial will feature a battle of top legal wills. But behind the scenes, an equally willful battle has already been fought and lost.

Dollmaker MGA Entertainment is bringing Thomas Nolan of Skadden, Arps, Slate, Meagher & Flom to face off against John Quinn of Quinn Emanuel Urquhart Oliver & Hedges for rival toymaker Mattel; and John Keker of Keker & Van Nest for the man who designed the attitude-fueled dolls.

But Nolan only joined the case after MGA got into a fight with one of its initial law firms, O'Melveny & Myers, over who would be the star attorney at the trial, according to court documents and attorneys familiar with the case. While MGA says it had tagged Patricia Glaser of Christensen, Glaser, Fink, Jacobs, Weil & Shapiro to be lead counsel, O'Melveny fought to put its trial giant, Daniel Petrocelli, into the first chair, according to MGA's chief executive.

The legal fight began in 2004 when Mattel sued Carter Bryant, an MGA designer and former Mattel employee, accusing him of helping MGA develop the highly successful Barbie alternatives while he was still working for Mattel. MGA countersued a year later.

MGA hired Christensen Glaser to handle the case. Glaser was a longtime friend of MGA CEO Isaac Larian, but needed more intellectual property expertise, so they brought in O'Melveny, Larian said this week.





As a 2008 trial date loomed, problems arose. Among other things, Larian said Thursday, "O'Melveny was pushing for Mr. Petrocelli to come in as new trial counsel in this case, and we decided against that."

In a statement to *The Recorder*, O'Melveny offered its own explanation for the split: "The grounds for application to withdraw include disagreements with us and the client that make it unreasonably difficult for us to continue serving as counsel and our client's unwillingness to honor the fee agreement." The firm's motion to withdraw also cited the fee

EXHIBIT    Exhibit 53 Page 977

dispute.

The real sticking point was over lead trial counsel, said Thomas Girardi, the L.A. attorney famous for his massive class actions. He said MGA asked him 10 days ago to look into the fees it had paid to O'Melveny.

When O'Melveny couldn't get Petrocelli in the lead chair, Girardi said, it wanted off the case. Petrocelli said Thursday that was inaccurate, adding that he didn't work on the case.

"What I can't do is share whatever brief discussions I did have with the client," Petrocelli said. "This is a case I haven't had any involvement in at all."

As the tensions with O'Melveny rose, Larian said, he talked to Glaser about her firm taking on the entire matter, but her firm was unable to do so.

"We decided to put it all under one roof," Larian said, "and we decided to go with Skadden and Tom Nolan."

Nolan confirmed the account. "Patty Glaser agreed that the matter should be handled by one firm," he said.

Glaser could not be reached for comment because she is traveling overseas. But according to transcripts of an Oct. 10 conference call between all sides and Judge Stephen Larson, Christensen attorneys agreed to Skadden taking the full case.

During the discussion, MGA's general counsel, Craig Holden, indicated that O'Melveny's resignation was directly related to a dispute over trial counsel: "And just preceding receiving that [motion] to withdraw -- and I consider this to be nonprivileged information -- the dispute was: Who would be the trial counsel? O'Melveny wanted to house everything internally under one roof, and we said Christensen Glaser. When that dispute was resolved not in O'Melveny's favor, we learned they wanted to get out of the case."

O'Melveny's Scott Dunham disputed that account, telling the judge, "I respectfully disagree with Mr. Holden's representations on virtually every stance."

He added that conflicts that had arisen between MGA and O'Melveny made it too difficult to continue serving the client, and added that "the client has not complied with the agreement to pay fees, and that creates a significant problem both in the past and today, and going forward."

Skadden's Nolan backed up Dunham during the call, saying the disagreement was over who would stand in front of the jury representing MGA "and that was a disagreement not accepted by counsel. It's their choice."

While MGA is putting the attorney substitution behind it, a fee fight may lie ahead. MGA is working with Girardi to evaluate the company's prior relationship with O'Melveny and the money involved.

"We are taking a look at the massively large fees that happened with the O'Melveny representation," Girardi said. "On first blush, it seems like an awful lot of money for what has been accomplished. I think the client has strong reason to have great concern."

The case itself will come to trial in May, and Nolan said he's looking forward to squaring off against such big names as Quinn and Keker.

"It's an interesting batting order; I think it will be fun," Nolan said. "If you're going to try a case you might as well try it with the best."