EXHIBIT 54

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　Defendant.<br><br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |

## I.  INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of

Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter

Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a

reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

EXHIBIT 54  PAGE 979

1-26

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of Bratz dolls now rival Mattel's Barbie doll.

### A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed suit against its former employee Bryant in state court asserting claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement which required him not to engage in any employment or business other than for Mattel, or invest or assist in any manner any business competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

provide product design services on a "top priority" basis.[2]  The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel.  In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls.  In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2]  Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT **54** PAGE **981**

C. <u>Bryant's Second Notice of Removal (CV 04-9059)</u>

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. <u>Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)</u>

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. <u>MGA's Complaint Against Mattel (CV 05-2727)</u>

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. <u>Mattel's Second Motion to Remand its Complaint against Bryant</u>

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT __54__ PAGE __982__

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

EXHIBIT **54** PAGE **983**

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. <u>See</u> Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. <u>Id.</u> at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

EXHIBIT __54__ PAGE __984__

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

### J. Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3] According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

EXHIBIT __54__ PAGE __985__

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. *See* Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4] There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

EXHIBIT __54__ PAGE __986__

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT __54__ PAGE __987__

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III.  DISCUSSION

#### A.  The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT __54__ PAGE __988__

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT __54__ PAGE __989__

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55:  Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT __54__ PAGE __990__

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works -- works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel -- through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

### Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT __54__ PAGE __991__

when the payments were actually made.  Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement.  Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works.  Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages.  17 U.S.C. §504(b).  The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market.  For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation.  Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel.  Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant.  Among other things, the protective order provides protection for confidential trade secret information.  It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only."  The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.  Bryant,

EXHIBIT 54 PAGE 992

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

<u>Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA</u>

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

EXHIBIT **54** PAGE **993**

privileged documents responsive to Request Nos. 20, 23, 27, and 28.  However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA.  Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

### Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

### Request No. 9:  Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration.  Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper.  Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

### IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1.  Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

EXHIBIT __54__  PAGE __994__

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED. However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2.  Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3.  Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4.  Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5.  Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6.  Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7.  Bryant shall comply with this Order no later than February 23, 2007. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

EXHIBIT __54__ PAGE __995__

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjaklian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjaklian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT __54__ PAGE __996__

EXHIBIT 55

1  ROBERT F. MILLMAN, Bar No. CA 062152
   DOUGLAS A. WICKHAM, Bar No. CA 127268
2  LITTLER MENDELSON
   A Professional Corporation
3  2049 Century Park East, 5th Floor
   Los Angeles, CA 90067.3107
4  Telephone: 310.553.0308
   Facsimile:   310.553.5583
5
   Attorneys for Defendant
6  CARTER BRYANT

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 MATTEL, INC., a Delaware            Case No. CV 04 3431 NM (RBx)
   Corporation,
12                                     **DEFENDANT'S FIRST SET OF**
              Plaintiff,               **INTERROGATORIES**
13                                     **PROPOUNDED ON PLAINTIFF**
         v.                            **MATTEL, INC.**
14
   CARTER BRYANT, an individual;
15 and DOES 1 through 10, inclusive,   Action Filed: April 27, 2004
16            Defendant.
17

18 PROPOUNDING PARTY:      DEFENDANT, CARTER BRYANT

19 RESPONDING PARTY:       PLAINTIFF, MATTEL, INC.

20 SET:                    ONE

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553.0308

EXHIBIT **5** PAGE **997**

INTERROGATORIES

1    TO PLAINTIFF MATTEL, INC. AND ITS ATTORNEYS OF RECORD,

2    QUINN EMANUEL URQUHART OLIVER & HEDGES:

3           Defendant Carter Bryant (hereinafter "Defendant" or "Bryant") hereby requests,

4    pursuant to Federal Rule of Civil Procedure Rule 33, that Plaintiff MATTEL, Inc.

5    (hereinafter "Plaintiff" or "MATTEL") answer in writing and under oath   the

6    following Interrogatories within 30 days of service hereof.

7                                  **DEFINITIONS**

8

9    1.    "PERSON" or "PERSONS" means any or all entities, including, but not

10   limited to, any or all individuals, single proprietorships, associations, companies,

11   firms, partnerships, joint ventures, corporations, employees or former employees, or

12   any other business, governmental, or labor entity, and any divisions, departments, or

13   other units thereof.

14   2.    The singular and plural forms of words are used interchangeably, as are

15   the masculine and feminine forms and the present and past tenses of verbs.

16   3.    "IDENTIFY" means:

17         A.    when used in reference to a natural PERSON, to state the

18               individual's full name, present or last known residence and

19               business addresses, social security number, present or last known

20               position and business affiliation, and present or last known e-mail

21               and telephone number;

22         B.    when used in reference to a corporation, partnership, or other

23               entity, to state the full and complete corporate name, the

24               organizational format (e.g., corporation, partnership, limited

25               liability partnership), the present or last known address of its

26               principal place of business, the present or last known e-mail

27               address and telephone number, the date on which it commenced

28               doing business, each and every officer of the company, and each

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553.0308

2.

INTERROGATORIES   EXHIBIT __55__   PAGE __998__

and every stockholder of a corporation or partner of a partnership, or anyone holding an equity interest in the entity;

C.     when used in reference to a DOCUMENT, to state the date, identity of the author, addressee(s), signatories, parties, or other PERSONS identified therein, the type of DOCUMENT (e.g., letter, memorandum, chart, etc.), its present location or custodian and a brief topical description of its contents; and

D.     when used in reference to a COMMUNICATION, to state the date, IDENTIFY the parties, the type of COMMUNICATION, and a brief description of its contents.

4.     "RELATE TO" and "RELATING TO" mean in any way directly or indirectly, concerning, referring to, pertaining to, mentioning, discussing, describing, disclosing, confirming, supporting, evidencing, representing, or being connected with a stated subject matter or any aspect thereof.

5.     "AND" and "OR" mean either the conjunctive or the disjunctive as context may require so that the meaning of the term is inclusive rather than exclusive.

6.     "MATTEL," "PLAINTIFF," "YOU" or "YOUR" refer to Plaintiff MATTEL, Inc. and its officers, directors, agents, employees and all persons acting under its direction or control or on its behalf.

**INTERROGATORY NO. 1:**

State all facts supporting YOUR contention, if YOU so contend, that Bryant performed services or did any work for a third party or for himself while in the employ of MATTEL.

**INTERROGATORY NO. 2:**

State all facts supporting YOUR contention, if YOU so contend, that Bryant for his own gain, or the gain of any third party, at any time converted, improperly used,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

3.
INTERROGATORIES

EXHIBIT 55   PAGE 999

1   sold, assigned or otherwise transferred any work product of his creation which YOU

2   believe was owned by MATTEL.

3   **INTERROGATORY NO. 3:**

4        State all facts supporting YOUR contention, if YOU so contend, that Bryant for

5   his own gain, or the gain of any third party, at any time converted, used, sold, assigned

6   or otherwise transferred any MATTEL work product owned at any time by MATTEL

7   or created by any MATTEL employee other than Bryant, or by any independent

8   contractor, during the time that such PERSON was working for MATTEL.

9   **INTERROGATORY NO. 4:**

10        State all facts supporting YOUR contention, if YOU so contend, that any

11   product sold by MGA Entertainment, Inc. ("MGA") under the trade name "Bratz"

12   originated from, is derived from, is based on, copies, incorporates, or is substantially

13   or confusingly similar to any design or work product created or worked on by Bryant

14   while employed by MATTEL.

15   **INTERROGATORY NO. 5:**

16        State all facts supporting YOUR contention, if YOU so contend, that any

17   product sold at any time by MGA under the trade name "Bratz" originated from, is

18   derived from, is based on, copies, incorporates, or is substantially or confusingly

19   similar to any design or work product owned at any time by MATTEL or created by

20   any MATTEL employee other than Bryant or by any independent contractor during

21   the time that such PERSON was working for MATTEL.

22   **INTERROGATORY NO. 6:**

23        State all facts supporting YOUR claim that YOU have been damaged by any act

24   or omission of Bryant.

25   **INTERROGATORY NO. 7:**

26        IDENTIFY all PERSONS YOU believe have knowledge of facts supporting

27   YOUR contention, if YOU so contend, that any product sold by MGA under the trade

28   name "Bratz" originated from, is derived from, is based on, copies, incorporates, is

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

INTERROGATORIES

EXHIBIT **55**  PAGE **1000**

1    substantially similar to any design, or elements thereof, created or worked on by

2    Bryant while employed by MATTEL.

3    **INTERROGATORY NO. 8:**

4        IDENTIFY all PERSONS YOU believe have knowledge of facts supporting

5    YOUR contention, if YOU so contend, that any product sold by MGA under the trade

6    name "Bratz" originated from, is derived from, is based on, copies, incorporates, or is

7    substantially or confusingly similar to any design or work product owned at any time

8    by MATTEL or created by any MATTEL employee other than Bryant or by any

9    independent contractor during the time that such PERSON was working for

10   MATTEL.

11   **INTERROGATORY NO. 9:**

12       State all facts supporting YOUR contention that MATTEL first became aware

13   of the alleged wrongful conduct of Bryant in November 2003, as set forth in

14   Paragraph 12 of the Complaint.

15   **INTERROGATORY NO. 10:**

16       State all facts supporting YOUR contention that Bryant failed to meet his

17   obligations under the MATTEL "Employee Confidential Information and Inventions

18   Agreement" attached to the Complaint as Exhibit "A".

19   **INTERROGATORY NO. 11:**

20       State all facts supporting YOUR contention that Bryant failed to meet his

21   obligations under the MATTEL Conflict of Interest Questionnaire," attached to the

22   Complaint as Exhibit "B".

23   **INTERROGATORY NO. 12:**

24       State all facts supporting YOUR contention that Bryant misappropriated

25   MATTEL property, including without limitation intellectual property, at any time.

26   **INTERROGATORY NO. 13:**

27       State all facts supporting YOUR contention that Bryant was in a fiduciary

28   relationship with MATTEL.

LITTLER MENDELSON
A Professional Corporation
2048 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0306

5.

INTERROGATORIES   EXHIBIT 55 PAGE 1001

**INTERROGATORY NO. 14:**

If YOU contend that prior to October 20, 2000, MATTEL had any toy concept or project which had not yet been offered for sale to the public, including without limitation, any toy concept or project in the pre-production or development phase, that Bryant improperly copied, replicated, borrowed or otherwise used in whole, or in any part, during or after Bryant's employment with MATTEL, IDENTIFY that toy concept or project.

**INTERROGATORY NO. 15:**

IDENTIFY each and every MATTEL employee who supervised work performed by Bryant throughout the period or periods of Bryant's employment with MATTEL.

**INTERROGATORY NO. 16:**

IDENTIFY each and every MATTEL employee or independent contractor that worked with Bryant on any project he worked on for MATTEL, from 1996 to October 2000.

**INTERROGATORY NO. 17:**

IDENTIFY each and every employee against whom YOU have filed, or threaten to file, a lawsuit pertaining in whole, or in any part, to an alleged violation of the MATTEL "Employee Confidential Information and Inventions Agreement," the form of which is attached to the Complaint as Exhibit "A".

**INTERROGATORY NO. 18:**

IDENTIFY each and every employee against whom YOU have filed, or threaten to file, a lawsuit pertaining in whole, or in any part, to an alleged violation of the MATTEL "Conflict of Interest Questionnaire," the form of which attached to the Complaint as Exhibit "B".

**INTERROGATORY NO. 19:**

IDENTIFY all measures taken by MATTEL to achieve compliance with the MATTEL "Employee Confidential Information and Inventions Agreement," the form

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

6.

1   of which is attached to the Complaint as Exhibit "A," and the MATTEL "Conflict of

2   Interest Questionnaire," the form of which attached to the Complaint as Exhibit "B".

3

4   Dated:  June 14, 2004

5                                               ROBERT F. MILLMAN
                                                DOUGLAS A. WICKHAM
6

7                                               DOUGLAS A. WICKHAM
8                                               LITTLER MENDELSON
                                                A Professional Corporation
9                                               Attorneys for Defendant
                                                CARTER BRYANT
10

11   Los_Angeles:361794.1 028307.1010

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT **55** PAGE **1003**

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

1

## PROOF OF SERVICE BY PERSONAL DELIVERY

2      I am employed in Los Angeles County, California. I am over the age of

3   eighteen years and not a party to the within-entitled action. My business address is

4   ProCourier, 1706 South Figueroa Street, Los Angeles, California 90015. On June 14,

5   2004, I personally served:

6      **DEFENDANT'S FIRST SET OF INTERROGATORIES**
7      **PROPOUNDED ON PLAINTIFF MATTEL, INC.**

8      by delivering copies thereof to:

9   Michael T. Zeller, Esq.
10  **Quinn Emanuel Urquhart Oliver & Hedges, LLP**
    865 South Figueroa Street, 10th Floor
11  Los Angeles, California 90017

12

13     Executed on June 14, 2004, at Los Angeles, California.

14

15

16                                    _____

17  Los_Angeles:362022.1 028307.1010

18

19

20

21

22

23

24

25

26

27

28

ITTLER MENDELSON
Pessessoon Cospessatioo
7045 Cestory Park Seat
515 Floor
se Angeles, CA 90067 3107
510.553.0006

PROOF OF PERSONAL SERVICE            EXHIBIT **55**   PAGE **1004**

# EXHIBIT 56

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:   (213) 687-5600
4  E-mail:    tnolan@skadden.com

5
   KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
6  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   4 Times Square
7  New York, NY  10036
   Telephone:  (212) 735-3000
8  Facsimile:   (212) 735-2000
   E-mail:      kplevan@skadden.com
9
   Attorneys for Counter-Defendants,
10 MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
   (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.
11
                  UNITED STATES DISTRICT COURT
12
                 CENTRAL DISTRICT OF CALIFORNIA
13
                         EASTERN DIVISION
14 CARTER BRYANT, an individual          )  CASE NO. CV 04-9049 SGL (RNBx)
15                 Plaintiff,            )  Consolidated with Case No. 04-9059
                                         )  and Case No. 05-2727
16        v.                             )
                                         )  **MGA'S SECOND SET OF**
17 MATTEL, INC., a Delaware             )  **INTERROGATORIES TO**
   corporation                          )  **MATTEL, INC.**
18                 Defendant.           )
19                                       )
                                         )
20                                       )  Honorable Stephen G. Larson
                                         )  Courtroom 1
21                                       )
22                                       )
23
24
25
26
27
28
                              12-4

MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.              NO. CV 04-9049 SGL (RNBx)

EXHIBIT 56 PAGE 1005

1  Consolidated with MATTEL, INC. v.
2  BRYANT and MGA
   ENTERTAINMENT, INC. v.
3  MATTEL, INC.

4

5  **PROPOUNDING PARTY:**      **MGA ENTERTAINMENT, INC.**

6  **RESPONDING PARTY:**       **MATTEL, INC.**

7  **SET NUMBER:**             **SECOND**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.                    NO. CV 04-9049 SGL (RNBx)

EXHIBIT **56** PAGE **1006**

MGA Entertainment Inc. ("MGA"), hereby requests that Plaintiff, Mattel Inc. ("Mattel") respond to the following Second Set of Interrogatories separately, fully, and under oath, pursuant to Rule 33 of the Federal Rules of Civil Procedure, within (30) days of service, in accordance with the definitions and instructions set forth herein.

## DEFINITIONS

1.     "AFFILIATES" means any and all corporations, proprietorships, d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or indirectly, in whole or in part, own or control, are under common ownership or control with, or are owned or controlled by a PERSON, party or entity, including without limitation each parent, subsidiary and joint venture of such person, party or entity.

2.     "ALLEGED COPYRIGHTED WORKS" means the copyrighted works alleged in paragraph 83 of MATTEL'S Second Amended Answer in Case No. 05-2727 and Counterclaim in THIS ACTION.

3.     "ALLEGED TRADE SECRETS" means the trade secret material alleged in paragraphs 107 thru 111 of MATTEL'S Second Amended Answer in Case No. 05-2727 and Counterclaim in THIS ACTION.

4.     "BARBIE" means and refers to each image, character, logo, doll, toy, styling head, plush toy, play set, accessory, product, packaging or any other thing that is or has ever been manufactured, marketed or sold by YOU, or others under licensed by YOU, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name "Barbie."

5.     "BRYANT" means Carter Bryant individually and does not include his agents, representatives, attorneys, experts or any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

6.     "BRATZ" means and refers to each image, character, logo, doll, fashion doll, plush toy, styling head, toy, accessory, product, packaging, theme, or other

2

EXHIBIT 55   PAGE 1007

1  thing or matter that is or has ever been manufactured, marketed or sold by MGA, or

2  others under license, as part of a line of goods or merchandise commonly known as,

3  or sold and marketed under the "Bratz" trademark or trade dress.

4      7.    "COLLECT," "COLLECTED" or "COLLECTION" with reference to

5  DOCUMENTS means to collect, review, produce, request, seek, look for, search for,

6  analyze or in any other way collect or review or attempt to collect or review such

7  DOCUMENTS in connection with YOUR search for, review of and/or production of

8  DOCUMENTS in this ACTION."

9      8.    The term "CONFLICT OF INTEREST QUESTIONNAIRE" refers to

10 Mattel's form of employment agreement concerning, inter alia, relations, if any,

11 between Mattel's employees, suppliers, and/or competition, whether known by the

12 title "Conflict of Interest Questionnaire" or any other title, including without

13 limitation the form of Conflict of Interest Questionnaire entitled "Conflict of Interest

14 Questionnaire" executed by Carter Bryant on or about January 4, 1999.

15     9.    "CONTESTED MATTEL PRODUCTS" means:

16     (a) each female fashion doll and its packaging that is or has ever been

17 manufactured, marketed or sold by MATTEL, or others under license by MATTEL,

18 as part of a line of goods or merchandise commonly known as, or sold and marketed

19 under the "My Scene" trademark or trade dress;

20     (b) each image, character, logo, fashion doll, doll, toy, accessory, product,

21 packaging or other thing or matter that is or has ever been manufactured, marketed or

22 sold by MATTEL, or others under license by MATTEL, as part of a line of goods or

23 merchandise commonly known as, or sold and marketed under the "My Scene"

24 "Chillin' Out!" trademark or trade dress, the "My Scene" "Night on the Town"

25 trademark or trade dress, the "My Scene" "My Bling Bling" trademark or trade

26 dress, and/or the "My Scene" "Jammin' in Jamaica" trademark or trade dress;

27     (c) each plush toy and its packaging that is or has ever been manufactured,

28 marketed or sold by MATTEL, or others under license by MATTEL, as part of a line

3

EXHIBIT __55__ PAGE _1008_

1  of goods or merchandise commonly known as, or sold and marketed under the "My

2  Scene" trademark or trade dress;

3      (d)  each styling head that is or has ever been manufactured, marketed or sold

4  by MATTEL, or others under license by MATTEL, as part of a line of goods or

5  merchandise commonly known as, or sold and marketed under the "My Scene"

6  trademark or trade dress;

7      (e) the "My Scene Sound Lounge" play set and packaging;

8      (f) each image, character, logo, doll, toy, accessory, product, packaging or any

9  other thing that is or has ever been manufactured, marketed or sold by MATTEL, or

10  others under license by MATTEL, as part of a line of goods or merchandise

11  commonly known as, or sold and marketed under the name "Little Mommy";

12      (g) each image, character, logo, doll, toy, accessory, product, packaging or any

13  other thing that is or has ever been manufactured, marketed or sold by YOU, or

14  others under licensed by YOU, as part of a line of goods or merchandise commonly

15  known as, or sold and marketed under the name "Wee 3 Friends"; and

16      (h) each image, character, logo, toy, accessory, product, packaging or any

17  other thing that is or has ever been manufactured, marketed or sold by MATTEL, or

18  others under license by MATTEL, as part of a line of goods or merchandise

19  commonly known as, or sold and marketed under the name "AcceleRacerS."

20      10.   "COUNTERCLAIMS" means Mattel, Inc.'s Second Amended Answer

21  and Counterclaims for: 1. Copyright Infringement; 2. Violation of the Racketeer

22  Influenced and Corrupt Organizations Act; 3. Conspiracy to Violate the Racketeer

23  Influenced and Corrupt Organizations Act; 4. Misappropriation of Trade Secrets; 5.

24  Breach of Contract; 6. Intentional Interference with Contract; 7. Breach of Fiduciary

25  Duty; 8. Aiding and Abetting Breach of Fiduciary Duty; 9. Breach of Duty of

26  Loyalty; 10. Aiding and Abetting Breach of Duty of Loyalty; 11. Conversion; 12.

27  Unfair Competition; and 13. Declaratory Relief filed July 12, 2007, in MGA v.

28  Mattel, Inc., CV 05-02727, including any amendment or supplement thereto.

4

EXHIBIT 56  PAGE 1009

11.   "DESCRIBE THE SALES AND PROFITS" means to state fully and separately for each MATTEL PRODUCT by year (a) the number of units of each such MATTEL PRODUCT sold by YOU or YOUR licensees, (b) the gross and net revenue received by YOU from such sales of each such MATTEL PRODUCT, (c) all costs YOU have incurred in connection with each such MATTEL PRODUCT, including but not limited to YOUR cost of goods sold, and (d) YOUR gross and net profits from each such MATTEL PRODUCT.

12.   "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blue prints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, development, inventions, or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, which in whole or in part.

13.   "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically, or optically.

14.   "DOCUMENT[S]" incorporates the full meaning of Federal Rule of Civil Procedure 34, and shall be construed in the broadest sense to mean any and all DIGITAL INFORMATION, STORAGE DEVICE, writings, tangible things and property, of any kind, that are now or that have been in YOUR actual or constructive possession, custody or control, including, but not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed or stored, whether an original, a draft or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports, inter- and intra-office

5

EXHIBIT __56__ PAGE __1010__

1  COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs,

2  indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills,

3  bills of lading, bids, time cards, receipts, purchase orders, telephone records,

4  telegrams, telexes, literature, invoices, contracts, purchase orders, estimates,

5  recordings, transcriptions of recordings, records, books, pamphlets, periodicals,

6  publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings,

7  television commercials, story boards, website or other spot advertisements, movies,

8  movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches,

9  messages, photographs and data contained in or accessible through any electronic

10  data processing system, including, but not limited to, computer databases, data sheets,

11  data processing cards, computer files and tapes, computer disks, CD-ROMs,

12  computer metadata, microfilm, microfiche, electronic mail, website and web pages

13  and transcriptions thereof and all other memorializations of any conversations,

14  meetings and conference, by telephone or otherwise.  The term DOCUMENT also

15  means every copy of a DOCUMENT, where such copy is not an identical duplicate

16  of the original, whether because of deletions, underlinings, showing of blind copies,

17  initialing, signatures, receipt stamps, comments, notations, differences in stationery

18  or any other difference or modification of any kind.

19      15.    The term "EMPLOYEE INVENTIONS AGREEMENT" refers to

20  Mattel's form of employment agreement concerning, inter alia, (i) ownership of

21  inventions, and (ii)(a) trade secrets and/or (iii) conflicts, whether known by the title

22  "Employee Confidential Information and Inventions Agreement" or any other title,

23  including without limitation the form of Employee Inventions Agreement entitled

24  "Employee Confidential Information and Inventions Agreement" executed by Carter

25  Bryant on or about January 4, 1999.

26      16.    "IDENTIFY," "IDENTITY," or "IDENTIFYING" mean the following:

27          •    With reference to an *individual*, means to state fully and

28  separately for each, such individual's full name, any known business title, current or

6

EXHIBIT _56_ PAGE _1011_

1  last known business affiliation, current or last known residential address, current or

2  last known business address, current or last known relationship with MATTEL, and

3  current or last known phone number(s).

4        •      With reference to an *entity*, means to state, fully and separately

5  for each, such entity's full name, state (or country) of incorporation or organization,

6  present or last known address, and present or last known telephone number(s).

7        •      With reference to any *DOCUMENT*, means to describe each

8  DOCUMENT by Bates number.  If the DOCUMENT does not have a Bates number,

9  IDENTIFY means to provide a complete description of the DOCUMENT such that it

10 may be the subject of a request for production of documents, including by stating the

11 date, identity of the author, addresses(s), recipient(s), signatories, parties, or other

12 PERSONS identified in the DOCUMENT, its present location or custodian and a

13 description of its contents.

14       •      With reference to any MATTEL or MGA product, means to state

15 fully and separately for each, the full name of the product; the number of the product;

16 the SKU of the product; any other applicable designation of the product; the period

17 of time in which the product has been sold; and IDENTIFY each PERSON who has

18 licensed such product.

19    17.   "MATTEL," "YOU," or "YOUR" means the party Mattel, Inc. and any

20 of its past or present officers, directors, employees, parents, subsidiaries, divisions,

21 affiliates, predecessors-in-interest, and joint venture partners.

22    18.   "MATTEL EMPLOYEE" means any of MATTEL's current or former

23 employees.

24    19.   "MATTEL'S INITIAL DISCLOSURES" means Mattel, Inc.'s

25 Consolidated (1) Initial Disclosures Relating to MGA's Unfair Competition Claims,

26 and (2) Second Supplemental Initial Disclosures Relating to Mattel's Claims Against

27 Bryant and MGA, dated January 5, 2007 and any supplemental or amendment

28 thereto.

7

EXHIBIT **56**   PAGE **1012**

20.   "MATTEL PRODUCTS," includes all products sold or offered by sale by MATTEL under or using the name "Barbie," including without limitation, all CONTESTED MATTEL PRODUCTS, all MY SCENE DOLLS, and any doll sold or offered for sale under the name "Diva Starz."

21.   "MY SCENE" means and refers to each image, character, logo, doll, fashion doll, toy, styling head, plush toy, play set, accessory, product, packaging or any other thing that is or has ever been manufactured, marketed or sold by YOU, or others under licensed by YOU, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name "My Scene."

22.   "MY SCENE DOLL" means any fashion doll that is or has ever been distributed, marketed, sold or offered for sale under the name "My Scene" or as part of the "My Scene" line, including separate themes.

23.   "PERSON" or "PERSONS" means all natural persons, partnerships, joint ventures and any kind of business, legal or public entity or organization, as well as its, its or her agents, representatives, employees, officers and directors and any one else acting on its, its or her behalf, pursuant to its, its or her authority or subject or its, its or her control.

24.   "REFERRING OR RELATING TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

25.   "STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION" means to (i) describe in detail the complete factual for the identified contention; (ii) IDENTIFY all DOCUMENTS that REFER OR RELATE TO that contention; and (iii) IDENTIFY all witnesses who may have information that REFERS OR RELATES TO the contention.

26.   "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether

8

EXHIBIT 56   PAGE 1013

1 | permanently, temporarily or otherwise, to create, generate, transmit, copy, retain,
2 | store, or maintain DIGITAL INFORMATION.

3 |     27.    "SOURCE OF INFORMATION" means any PERSON or medium
4 | containing DOCUMENTS, DIGITAL INFORMATION, or other information,
5 | whether in paper, electronic or other form, including, but not limited to any
6 | STORAGE DEVICE, file, file cabinet, or any other source of information or
7 | DOCUMENTS.

8 |     28.    "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-9059
9 | SGL (RNBx), filed on April 27, 2004 and all cases consolidated or coordinated
10 | therewith.

11 |     29.    The singular form of a noun or pronoun includes within its meaning the
12 | plural form of the noun or pronoun so used, and vice versa; the use of the masculine
13 | form of a pronoun also includes within its meaning the feminine form of the pronoun
14 | so used, and vice versa; the use of any tense of any verb includes also within its
15 | meaning all other tenses of the verb so used, whenever such construction results in a
16 | broader request for information; and "and" includes "or" and vice versa, whenever
17 | such construction results in a broader disclosure of documents or information.

18 |

19 | **INSTRUCTIONS**

20 |     1.    Mattel is instructed to serve written responses to these Interrogatories on
21 | MGA's counsel at Skadden, Arps, Slate, Meagher & Flom, LLP, 300 South Grand
22 | Avenue, Los Angeles, California 90071.

23 |     2.    Pursuant to Federal Rule of Civil Procedure 33, Mattel shall provide its
24 | answers under oath within 30 days of service.

25 |     3.    If, in responding to these Interrogatories, Mattel asserts an ambiguity in
26 | either a particular Interrogatory or an Instruction of Definition applicable thereto,
27 | Mattel shall identify in the response to such Interrogatory the language it contends is
28 | ambiguous and state the interpretation used in responding.

EXHIBIT **56** PAGE **1014**

4.    These Interrogatories impose a continuing obligation subsequent to your initial production to the full extent provided for in Rule 26(e) of the Federal Rules of Civil Procedure.

5.    If, in responding to these Interrogatories, any information is not being provided based on an objection or otherwise, IDENTIFY the information not be provided and explain the complete basis supporting YOUR refusal and/or failure to provide that information.

6.    Unless otherwise noted, these Interrogatories seek information from January 1, 1995, to the present.

10

EXHIBIT 56 PAGE 1015

**INTERROGATORIES**

INTERROGATORY NO. 12:

IDENTIFY each version of the EMPLOYEE INVENTIONS AGREEMENT adopted and/or used by or on behalf of MATTEL, including, without limitation, (a) the IDENTITY of all persons who participated in or were consulted concerning the creation, drafting, adoption, and/or use of the EMPLOYEE INVENTIONS AGREEMENT; (b) the date(s) and/or range(s) of dates MATTEL'S used each version of the EMPLOYEE INVENTIONS AGREEMENT; and (c) the reason(s) for the changes between each version.

INTERROGATORY NO. 13:

Describe in detail each instance in which any provision of an EMPLOYEE INVENTIONS AGREEMENT was breached or alleged to be breached by an employee, independent contractor, or any other person with whom MATTEL had entered into an EMPLOYEE INVENTIONS AGREEMENT, including without limitation: (a) a complete description of the conduct comprising said breach; and (b) a complete description of all steps taken by MATTEL in response to said breach or alleged breach (*including, for example, conducting an investigation or arranging that an investigation be conducted on MATTEL'S behalf; issuing a warning, whether written or oral; issuing any other notification, whether written or oral; initiating civil litigation, including the name, case number and court of any such litigation; initiating any other legal proceeding, including but not limited to criminal proceedings, including the name, case number and court of any such proceeding; making an exception, whether written, oral, express, or implied; making a determination that no breach occurred, whether or not such determination was documented; or no action*).

11

EXHIBIT 56    PAGE 1016

INTERROGATORY NO. 14:

    IDENTIFY each version of the CONFLICT OF INTEREST QUESTIONNAIRE adopted and/or used by or on behalf of MATTEL, including, without limitation, (a) the identity of all persons who participated in or were consulted concerning the creation, drafting, adoption, and/or use of the CONFLICT OF INTEREST QUESTIONNAIRE; (b) the date(s) and/or range(s) of dates MATTEL'S used each version of the CONFLICT OF INTEREST QUESTIONNAIRE; and (c) the reason(s) for the changes between each version.

INTERROGATORY NO. 15:

    Describe in detail each instance in which any provision of a CONFLICT OF INTEREST QUESTIONNAIRE was breached or alleged to be breached by an employee, independent contractor, or any other person with whom MATTEL had entered into a CONFLICT OF INTEREST QUESTIONNAIRE, including without limitation: (a) a description of the conduct comprising said breach; and (b) a description of all steps taken by MATTEL in response to said breach or alleged breach (*including, for example, conducting an investigation or arranging that an investigation be conducted on MATTEL'S behalf; issuing a warning, whether written or oral; issuing any other notification, whether written or oral; initiating civil litigation, including the name, case number and court of any such litigation; initiating any other legal proceeding, including but not limited to criminal proceedings, including the name, case number and court of any such proceeding; making an exception, whether written, oral, express, or implied; making a determination that no breach occurred, whether or not such determination was documented; or no action*).

EXHIBIT 56   PAGE 1017

INTERROGATORY NO. 16:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MATTEL has a viable affirmative claim for relief against MGA even if the evidence establishes both of the following: (i) in August and/or September, 1998, Carter Bryant conceived of the line of fashion dolls that he named Bratz, and (ii) the design for the BRATZ dolls sold by MGA in 2001 was reduced to practice after October 20, 2000.

INTERROGATORY NO. 17:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MATTEL employees in the Design Center who personally knew Carter Bryant did not know and/or believe, immediately following the launch of MGA's Bratz dolls in 2001, that Carter Bryant was the creator of the concept for the BRATZ line of dolls.

INTERROGATORY NO. 18:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that any of the fashions and/or accessories for the BRATZ line of dolls sold by MGA violate or infringe any of MATTEL'S intellectual property and/or proprietary rights.

INTERROGATORY NO. 19:

IDENTIFY with specificity each element of each ALLEGED COPYRIGHTED WORK that MATTEL contends is an original element protectable under the United States Copyright Laws.

13

EXHIBIT **56** PAGE **1018**

**INTERROGATORY NO. 20:**

IDENTIFY with specificity each ALLEGED TRADE SECRET, including the IDENTITY of each DOCUMENT that embodies or REFERS OR RELATES to each ALLEGED TRADE SECRET.

**INTERROGATORY NO. 21:**

IDENTIFY each PERSON who has had access to each ALLEGED TRADE SECRET, including (a) the ALLEGED TRADE SECRET each PERSON had access to; and (b) the date or dates each PERSON had this access.

**INTERROGATORY NO. 22:**

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MGA misappropriated any ALLEGED TRADE SECRET.

**INTERROGATORY NO. 23:**

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that the ALLEGED TRADE SECRETS are protectable.

**INTERROGATORY NO. 24:**

DESCRIBE THE SALES AND PROFITS for each MATTEL PRODUCT that has been sold or offered for sale by YOU or YOUR licensees. (The time period applicable to this interrogatory is from January 1, 1990 to the present).

**INTERROGATORY NO. 25:**

IDENTIFY, fully and separately, each and every PERSON who was involved in the development or marketing of the CONTESTED MATTEL PRODUCTS by stating each PERSON'S name, role, and start/end date. (As used in this Interrogatory, the phrase "development or marketing" means the entire process of

14

EXHIBIT **56** PAGE **1019**

1  creating and selling a new product or design, including without limitation, the

2  marketing, advertising, promotion, licensing, offering for sale, conception, origin,

3  creation, design, development, sculpting, engineering, reduction to practice, tooling

4  or painting of a product or embodiment of a product).

5

6  <u>INTERROGATORY NO. 26:</u>

7      Describe in detail all instances in which a PERSON expressed confusion as to

8  source or sponsorship between any MATTEL products, packaging or advertising

9  (including, but not limited to, the CONTESTED MATTEL PRODUCTS) and any

10  MGA products, packaging or advertising (including, but not limited to, "BRATZ"),

11  by: (i) stating the facts and circumstances of each instance; (ii) IDENTIFYING all

12  DOCUMENTS that REFER OR RELATE TO each instance; and (iii)

13  IDENTIFYING all witnesses who may have information that REFER OR RELATE

14  TO each instance.

15

16  <u>INTERROGATORY NO. 27:</u>

17      For each PERSON listed in MATTEL'S INITIAL DISCLOSURES,

18  IDENTIFY each PERSON and describe in detail each PERSON's alleged

19  knowledge of the subjects or information identified in MATTEL'S INITIAL

20  DISCLOSURES.

21

22  <u>INTERROGATORY NO. 28:</u>

23      Describe in detail the complete factual basis for YOUR COUNTERCLAIMS,

24  including, without limitation all facts, DOCUMENTS, and witnesses that REFER

25  OR RELATE TO YOUR COUNTERCLAIMS.

26

27

28

15

EXHIBIT __56__ PAGE __1020__

**INTERROGATORY NO. 29:**

Describe in detail any estimate or calculation of damage, loss, injury, or unjust enrichment, by reason of any act or omission alleged in YOUR COUNTERCLAIMS, that YOU have made or that has been made on YOUR behalf or at YOUR request, including all facts, DOCUMENTS or witnesses RELATING TO each estimate or calculation.

**INTERROGATORY 30:**

IDENTIFY each and every SOURCE OF INFORMATION from which YOU have COLLECTED DOCUMENTS that REFER OR RELATE TO BRATZ.

**INTERROGATORY 31:**

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that any BRATZ doll is substantially similar to, a copy or a derivative of BRATZ DESIGNS created by Carter Bryant on or before October 19, 2000.

DATED: December 4, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
    Robert J. Herrington
Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

16

EXHIBIT **56** PAGE **1021**

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On December 4, 2007, I served the foregoing document described as:

### MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

[X]   (BY PERSONAL SERVICE)   [ ]   By personally delivering copies to the person served. (FEDERAL)

[X]   I caused such document to be hand delivered to the office of the addressee. (FEDERAL) [As Noted.]

[X]   **(BY MAIL)** I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices. [As Noted.]

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on December 4, 2007 at Los Angeles, California.

Allison G. Velkes
PRINT NAME                          SIGNATURE

1

EXHIBIT __56__ PAGE __1022__

## SERVICE LIST

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
(213) 443-3100 (Fax)

Attorneys for Mattel, Inc.
[Personal Service]

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
(415) 397-7188 (Fax)

Attorneys for Carter Bryant
[Mail]

Mark E. Overland, Esq.
Alexander H. Cote, Esq.
David C. Scheper, Esq.
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071
(213) 613-4655
(213) 613-4656 (Fax)

Attorneys for Carlos Gustavo Machado
Gomez
[Mail]

2

EXHIBIT 56 PAGE 1023

EXHIBIT 57



CALENDARED

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 12 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

              Plaintiff,

v.

MATTEL, INC.,

              Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

      This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

      Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

EXHIBIT **57** PAGE **1024**

142

1-12

resources in creating and/or developing the BRATZ dolls or whether he continued to develop his BRATZ design while still working in Mattel's employ.  In either event, the rights to the BRATZ dolls could become the property of Mattel, either through infringement or through operation of the agreements noted above.  The case was later removed to this Court and was assigned the case number CV-04-9059.  MGA Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to protect its rights to Bratz dolls" that were at stake in the action.  Mattel, Inc. v. Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual property, i.e., the Bratz creations, were decided in the absence of MGA").

In the interim, Bryant filed a declaratory judgment action in this Court, seeking for the Court to declare that his BRATZ doll creations did not infringe Mattel's copyright in its Toon Teens products.  See Court's July 18, 2006, Order at 3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel products,' . . . the substance of his allegations all address the product 'Toon Teens'").  The declaratory judgment action was assigned the case number CV-04-9049.

MGA then filed an action against Mattel in this Court broadening the scope of the controversy beyond that concerned with the ownership rights to the BRATZ doll line.  MGA's complaint asserted various Lanham Act claims and their California state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of competition-by-intimidation and serial copycatting of MGA's products."  (Compl. ¶ 7).  In essence, although the prior actions were concerned with ownership in the rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.  MGA's complaint did make mention of other products that were affected by Mattel's alleged predatory business practices, but by far the largest portion of its complaint concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

EXHIBIT 57  PAGE 1025

line of BRATZ dolls.[1]

By Order dated June 19, 2006, the Court consolidated all three cases "for all purposes" as they "involve[d] a number of common issues of law and fact." As the Court later noted in its August 10, 2006, Order: "At its heart, this case asks the question: Who owns the rights to the Bratz dolls?" Resolution of this question lies at the heart of or, at the very least, affects many of the other claims set forth in each of the three respective cases. For instance, even though the allegations in 05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot many of those allegations. It is hard to imagine how it is unlawful for a company to thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel owned the rights to the BRATZ dolls, many of the allegations in the 05-2727 complaint would become moot. That said, such consolidation did not do away with the distinctions that do exist between the three cases. As the Court highlighted in its consolidation order, when either party files a pleading in the case, "the first paragraph of [that] document . . . shall inform the Court to which case(s) the document relates."

On July 18, 2006, the Court dismissed Bryant's declaratory judgment action, 04-9049, finding there existed no reasonable apprehension of an imminent copyright infringement claim being filed against him by Mattel based on Mattel's Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The Court's Order was predicated entirely upon counsel for Mattel's representation during oral argument that it "will not maintain that Bratz infringes the copyright in Toon Teens." Owing to this representation, the Court, in dismissing the declaratory judgment action, made clear that any future "claim by Mattel of copyright

---

[1] That the marketing of the BRATZ dolls lies at the heart of the issues between the rival doll makers in the 05-2727 case is best illustrated by the Court's discussion of those allegations in its August 26, 2005, Order, Granting in Part and Denying Part Mattel's Motion to Strike portions of MGA's complaint.

EXHIBIT **57** PAGE **1026**

1  infringement based on the Toon Teens product is barred by counsel's

2  representation." July 18, 2006, Order at 4.

3         Presently before the Court is Mattel's request for leave to file an amended

4  complaint in the 04-9059 action.  The complaint broadens considerably the nature

5  of the action from its genesis in state court.  Whereas before the complaint simply

6  sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7  employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8  claim to the BRATZ doll line), the amended complaint adds five more defendants

9  and nine new legal claims, alleging a wide range of commercial disputes between

10  the rival doll makers that spans three countries.  For instance, the amended

11  complaint now contains RICO claims, a misappropriation of trade secrets claim,

12  and various aiding and abetting claims all stemming from allegations that MGA

13  cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14  named as defendants in the amended complaint) or designers (namely, Bryant),

15  and then enticed or encouraged those same individuals to steal various trade and

16  proprietary secrets (be it sales plans, sales projections, customer profiles, or

17  intellectual property) from Mattel and hand them over to MGA before going to work

18  at MGA.

19         Moreover, the amended complaint expands upon the existing breaches of

20  contract and fiduciary duty claims in the original complaint by expanding the

21  universe of former employees (namely, the cherry-picked executives) to whom

22  those claims now apply.

23         Finally, Mattel now makes plain what was always lurking in its original

24  complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25  MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26  Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27  issue in Bryant's declaratory relief action: "The Amended Complaint does not

28  include a claim for infringement of copyrights in Toon Teens, but rather

4

EXHIBIT **57** PAGE **1027**

1   infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2   Mattel has recently filed copyright registrations with the U.S. Copyright Office

3   claiming ownership in various BRATZ doll design drawings penned by Bryant.

4   A.    ANALYSIS

5          Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6   pleading has been served, "a party may amend the party's pleading only by leave of

7   court or by written consent of the adverse party; and leave shall be freely given

8   when justice so requires." With no consent to Mattel's proposed filing proffered by

9   MGA and Bryant, determining whether to grant Mattel leave to file an amended

10  complaint is gauged by looking to the familiar formulation of factors set forth by the

11  Supreme Court in Forman v. Davis:

12              In the absence of any apparent or declared
13              reason—such as undue delay, bad faith or dilatory
                motive on the part of the movant, repeated failure to
14              cure deficiencies by amendments previously allowed,
                undue prejudice to the opposing party by virtue of
15              allowance of the amendment, futility of amendment,
                etc.—the leave sought should, as the rules require, be
16              'freely given.' Of course, the grant or denial of an
                opportunity to amend is within the discretion of the
17              District Court, but outright refusal to grant the leave
                without any justifying reason appearing for the denial is
18              not an exercise of discretion; it is merely abuse of that
                discretion and inconsistent with the spirit of the Federal
19              Rules.

20  371 U.S. 178, 182 (1962).

21          MGA and Bryant offer the following reasons for denying Mattel leave to

22  amend: (1) Mattel has long known of the factual predicates underlying its copyright

23  and intentional interference claims but delayed in asserting them; (2) the proposed

24  amendment to add the copyright claim and the intentional interference claims

25  (against the new defendants) are futile because they are barred by the applicable

26  statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27  because of its prior public disavowal of an intent to assert such a claim; and (4)

28  MGA and Bryant would incur undue prejudice were the copyright claim added to the

5

EXHIBIT __57__ PAGE __1028__

1   suit because of alleged spoliation of evidence issues involving Mattel's ZEUS

2   computer system used by doll designers at Mattel and its e-mail system.  None of

3   these arguments are persuasive.

4       1.   Awareness of Factual Predicate for Copyright and Intentional

5            Interference Claims

6       MGA argues that Mattel has long known about the factual predicate for its

7   recently added copyright claim, observing that, "[o]ver four years ago, in August

8   2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant

9   created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'

10  that project — while still employed at Mattel."  (MGA Opp. at 9).  Similarly, MGA

11  argues that Mattel has long known of the factual predicate for its intentional

12  interference claim with respect to Bryant's contract given that, "[b]y Mattel's own

13  admission, it learned in November 2003 — more than three years ago — that

14  Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at

15  Mattel."  (MGA Opp. at 11-12).

16      At the outset it must be observed that "[m]ere delay in proffering an

17  amendment does not justify denying leave to amend."  Sierra Club v. Union Oil Co.

18  of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,

19  485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988).  Seizing upon

20  this point of law, Mattel argues that "only in . . . cases" when "granting leave would

21  require discovery to be reopened after summary judgment motions have been filed"

22  has the Ninth Circuit found the denial of leave "justified" based on the passage of

23  time alone.  (Reply to MGA Opp. at 3).  That is incorrect.  There is a line of cases

24  from the Ninth Circuit finding that, if a "party seeking amendment knows or should

25  know of the facts underlying the amendment when the original complaint is filed,

26  the motion to amend may be denied."  Sierra Club, 813 F.2d at 1493 (citing Jordan

27  v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)).  And, recently, the

28  Ninth Circuit upheld the denial of leave to amend based on the passage of time

6

EXHIBIT 57 PAGE 1029

even though the requested leave to amend was tendered <u>before</u> the time, as set

forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.

<u>See AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006).

The Ninth Circuit observed that, even when a request for leave to amend is timely

under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless

still deny the request based on any of the <u>Forman</u> factors. <u>Id</u>. at 951-52. The Ninth

Circuit then noted that the issue of untimeliness (regardless of whether the

amendment is tendered "within the period of time allotted by the district court in a

Rule 16 scheduling order") in seeking to amend can constitute a justification for

denying leave to amend if "the moving party knew or should have known the facts

and theories raised by the amendment in the original pleading." <u>Id</u>. at 953.

Toward that end, the Ninth Circuit observed that "an eight month delay between the

time of obtaining a relevant fact and seeking a leave to amend is unreasonable."

<u>Id</u>. In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that,

even though the moving party had known of the facts prompting the amendment for

a long period of time, there still remained eight more months of discovery for the

parties to marshal facts against the allegations raised by the amended pleading:

"Even though eight months of discovery remained, requiring the parties to scramble

and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was

tainted, would have unfairly imposed potentially high, additional litigation costs on

Dialysist West that could have easily been avoided had AmerisourceBergen

pursued its 'tainted product' theory in its original complaint or reply." <u>Id</u>. Thus,

absent "a satisfactory explanation" for the delay in amending the complaint, the

Court is well within its rights to deny leave to amend. <u>Id</u>.

   Mattel proffers the following reasons for taking the time that it did before

presenting its amended complaint: (1) Acting out of an abundance of caution to its

obligations under Rule 11 to present "factual contentions [that] have evidentiary

support," Mattel waited until its claims were better supported by evidence

EXHIBIT <u>51</u> PAGE <u>1030</u>

1  uncovered in discovery; and (2) the delay in the proceedings caused by "the year-

2  long stay and the parties' prior jurisdictional disputes" have left the case still in its

3  "nascent stage." (Reply to MGA Opp. at 2, 4).

4  The first reason is not well-founded. Rule 11 specifically allows parties to

5  aver factual allegations that "are likely to have evidentiary support after a

6  reasonable opportunity for further investigation or discovery" so long as the party

7  makes clear in its pleading that its factual contentions on those points are with the

8  caveat that they are based on a good faith belief that further discovery would

9  unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule

10  11 did not stand in the way of Mattel averring the factual contentions it now claims it

11  "merely suspected" as being the case based on the limited information before it.

12  Mattel could have gone ahead and made such suspected factual allegations so

13  long as it caveated those claims with the declaration that it reasonably believed that

14  those allegations would be borne out by further discovery. Perhaps the time by

15  which Mattel could have reasonably believed such allegations would be borne out

16  by further discovery occurred after the dates noted by MGA, but it is hard to fathom

17  that such materialization took three or four years to occur.

18  The second reason would have some merit to it but for the fact that the

19  information that alerted (or should have alerted) Mattel to the existence of its now

20  asserted copyright and intentional interference claims was brought to Mattel's

21  attention well before the case was stayed on May 20, 2005. The stay, therefore,

22  did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the

23  stay does not explain why Mattel waited nearly six months after the stay was lifted

24  on May 16, 2006, to present those claims now.

25  All of that being said, the one thing that gives the Court pause in denying

26  leave based on the tardiness in Mattel's presentation is the lack of any evidence

27  that MGA or Bryant have been prejudiced by the delay. Delay unconnected to

28  some showing of prejudice, be it prejudice to the parties or disruption in judicial

EXHIBIT 57   PAGE 1031

1  management of the case, does not suffice to deny granting leave to amend.  The

2  Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3  in an amendment to a complaint, there is no serious prejudice to defendant in

4  allowing the amendment" even if it is made tardily.  Sierra Club, 813 F.2d at 1493.

5  Indeed, the denial of leave was proper in the Dialysist case not simply because of

6  the length of the delay, but because the delay itself was "detrimental" in that it

7  would entail the opposing party to have "unfairly" incurred "potentially high,

8  additional litigation costs" that could have been avoided if the moving party had

9  made clear its intentions earlier.  465 F.3d at 953.

10         Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11  pleadings filed by MGA and Bryant in this case that both have been aware for some

12  time of the factual predicates now underlying Mattel's copyright claim and

13  intentional interference claim.  (See MGA Opp. at 5 ("As Bryant and MGA

14  suspected at the time of filing — and Mattel now concedes by conduct — those

15  deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16  along")(emphasis added)).  The parties have engaged in meaningful discovery

17  regarding many of the facts touched upon by these new claims, be it tracking down

18  experts in various forensic fields or taking depositions of various of the key players

19  to those claims.   In point of fact, in their papers filed with this Court before this

20  present motion, both Bryant and MGA have made it abundantly clear that they have

21  long suspected that a copyright infringement claim was in the offing as evidenced

22  by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23  05-9059 matter to protect its rights to the BRATZ dolls.  Similarly, MGA and Bryant

24  have been on notice to the facts comprising the interference claim concerning

25  Bryant's contract as evidenced by the identity of the individuals who have been

26  deposed by Mattel, as well as the nature of the questions posed and the testimony

27  proffered at those depositions.  MGA's argument that, with the amendments, it

28  faces the prospect of defending "against stale claims" owing to faded memories and

9

EXHIBIT  57  PAGE  1032

1   loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),

2   is diminished by the fact that (no doubt owing to the sophistication of all counsel

3   involved) discovery on these very issues have been proceeding apace by both

4   sides long before Mattel filed its proposed amendments.  This is simply not a case

5   where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by

6   allowing the proposed amendments; much of those costs have already been borne

7   by the parties for some time.

8       2.    Spoilation of Evidence

9       MGA next argues that Mattel's delay in bringing the amended complaint has

10  caused it prejudice as, in the interim, critical pieces of evidence have been or are

11  suspected of having become lost.  For instance, MGA asserts that Mattel's Rule

12  30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,

13  "although Mattel identified and segregated its most relevant backup tapes available

14  for Zeus, Mattel allowed its tape backup system to expire the database for those

15  backup tapes, thereby eliminating all information about what was actually stored on

16  those backup tapes." (MGA Opp. at 9-10).  Information on the Zeus computer

17  system is critical because of Mattel's assertion that part of its copyright claim rests

18  on Bryant's exposure to Mattel development programs.  (First Am. Compl. ¶ 26(a)).

19  As explained by MGA: "[C]oncept data and drawings created by [Mattel] design

20  center personnel are stored on Zeus.  Thus, the electronic documents stored on

21  Zeus – which should include the metadata showing who created, edited and

22  accessed Mattel's concept drawings and designs – during the time Bryant worked

23  in the design center at Mattel is vitally important to defending against Mattel's

24  claims." (MGA Opp. at 14).  MGA's argument is neither an accurate

25  characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure

26  claim.

27      Ms. Marine did not testify that the information on the backup tapes (some

28  fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

EXHIBIT __57__ PAGE __1033__

that could restore the information still found on those tapes:

Q. So if you wanted to restore that 2002 backup tape[s] then, how would you go about doing that?

. . . .

A. You need the hardware so if we don't have the hardware — if [the technology used by the tape is] DLT we don't have the hardware and you've got to buy it and — well, first you have to find a place to put it with adequate power which we don't have in the design center. You need to have a tape library. You need to have the tape drives that carried those tapes. You need a server that has the capability to — that's big enough to handle all of the hardware. You need the software — the license for the backup software[, Net Backup]. You need the disk space to restore it to and then you have to start reading in all those tapes.

Q. You said that you don't have that in the design center. Do you have that hardware anywhere else in the company?

A. DLT? No, no.

Q. At what point did you get rid of the hardware?

A. Once the last backups — DLT backups expired so it would have been a couple years ago probably.

(Decl. Diana Torres, Ex. K at 118-119).

The above testimony clearly denotes the difficulty in restoring what was on Mattel's Zeus computer system during the relevant time frame, but it certainly does not demonstrate that the information on those backup tapes has been "eliminated" or forever lost. Undoubtedly it will be a costly endeavor to recover that information (not to mention to later search and sort through it); but to argue, as MGA does, that the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the information on the Zeus backup tapes has been present for some time (maybe since 2004 or perhaps even earlier). This is important because it undermines MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

11

EXHIBIT 57 PAGE 1034

1   it to suffer prejudice it otherwise would not have faced if the amendments were

2   brought sooner.  Such prejudice has been present for years, and Mattel's failure to

3   bring its amended complaint sooner would not have changed this situation.

4   　　　Similarly, MGA's point that access to what was on the Zeus computer

5   system is vital in demonstrating that Bryant was not exposed to or otherwise did not

6   hack the system to steal other designers work is diminished to some extent by the

7   fact that Bryant himself testified that he did not use the Zeus computer system and

8   was "pretty much computer illiterate" while employed at Mattel.  Admittedly, the

9   ability to point to information on the Zeus system backup tapes to prove that Bryant

10  did not access other designers drawings or to prove the date those drawings were

11  created by those other designers would be useful evidence to negate Mattel's

12  factual claims.  Nonetheless, such evidence still would not discount other avenues

13  outside of the Zeus computer system by which Mattel could seek to prove that

14  Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant

15  saw drawings of the same posted on other designers' cubicles.

16  　　　MGA next surmises that Mattel's e-mail records have disappeared, not

17  because it has any proof on that point, but simply because Mattel has postponed

18  the deposition of the individual most knowledgeable of Mattel's e-mail records until

19  after the hearing on Mattel's motion for leave to amend.  (MGA Opp. at 10).

20  Speculation of spoilation does not suffice.  That MGA's argumentation on this point

21  is nothing more than speculation is best exhibited by the evidence it has proffered

22  in support of its argument:  "[I]f the sole retained backup for Zeus is no longer

23  available, it is not hard to imagine that Mattel's electronic mail archives are similarly

24  out of reach."  (MGA Opp. at 15 (emphasis added)).  MGA then makes much of a

25  deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his

26  inbox would be automatically deleted if they had remained there for more than a

27  certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this

28  acknowledgment that Mattel has an "automatic email deletion system" that has

EXHIBIT **57**   PAGE   **1035**

1   compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).

2   Noticeably absent from MGA's argument is any evidence that the e-mails so

3   deleted from a Mattel employee's inbox are forever lost or, as is far more likely,

4   whether such information remains or is otherwise archived on some backup file on

5   Mattel's computer system.  Absent concrete proof that spoliation has occurred,

6   nothing in MGA's argument forms a basis for denying Mattel its requested leave to

7   amend.

8        3.    <u>Statute of Limitations</u>

9        MGA next argues that Mattel's copyright and intentional interference claims

10   are futile as both are barred by the applicable statute of limitations.  This argument

11   was pressed emphatically at oral argument.  With respect to the copyright claim,

12   MGA argues that the applicable statute of limitations is three years, with the

13   limitations period accruing from when a party has knowledge of a violation or when

14   a reasonably diligent person would have been put on inquiry of the infringement.

15   (MGA Opp. at 16 (citing <u>Roley v. New World Pictures</u>, 19 F.3d 479, 481 (9th Cir.

16   1994)).  MGA argues that Mattel was put on notice about its copyright claim in

17   August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant

18   had stolen the idea for BRATZ while working at Mattel.  Thus, according to MGA,

19   the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's

20   current copyright claim stale.

21        The problem with MGA's analysis is it fails to take into account the relations-

22   back principles found in Rule 15(c), which provides that "[a]n amendment of a

23   pleading relates back to the date of the original pleading when "the claim . . . in the

24   amended pleading arose out of the conduct, transaction, or occurrence set forth . . .

25   in the original pleading," or if such relation back is otherwise permissible by the

26   state "law that provides the statute of limitations applicable to the action."  By

27   MGA's own admission Mattel's copyright claim arises out of the same conduct or

28   transaction contained in the original complaint filed in April, 2004, well within the

13

EXHIBIT <u>57</u> PAGE <u>1036</u>

1  applicable limitations period.[2]  (MGA Opp. at 12 ("These very same allegations

2  [contained in the original complaint] underlie the copyright infringement and

3  intentional interference contract claims Mattel now seeks to allege against MGA,

4  Mr. Larian and Bryant")).

5      MGA's statute of limitations argument with respect to the intentional

6  interference claims fares no better.  According to MGA, the applicable statute of

7  limitations is two years for an intentional interference with contract claim and Mattel

8  was aware of the facts alerting it to this claim (insofar as Bryant's contract is

9  concerned) on November 24, 2003, when it learned "that Bryant worked with MGA

10 to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,

11 prior to the expiration of his contractual relationship with Mattel."[3]  (MGA Opp. at 18

12 (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)) .  Such a time line

13 would, according to MGA, mean that the applicable limitations period expired on

14 Mattel's interference with Bryant's contract claim on November 24, 2005, well

15 before Mattel sought leave to file its amended complaint.  (Id).  The problem again

16 with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional

17 interference claim would relate back to when it filed its original complaint in April,

18

19

20  ───────────────

21  [2]  The same would appear to be true — that the amendments would be timely
    — if the amendments related back to Mattel's answer (filed on May 13, 2005) to

22  MGA's complaint in the 05-2727 case.

23  [3]  With respect to Mattel's interference with contract claim as to one of its
    former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim

24  on September 17, 2004, when Brawer informed Mattel that he leaving to go to work
    for MGA.  (MGA Opp. at 19-20).  The problem with this argument is that nothing from

25  that simple event — Brawer's declaration of his intent to leave — in any way would
    apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct

26  (the stealing of proprietary information) causing Brawer to breach his contract with
    Mattel that he would not do anything to help a competitor while working for them.

27  MGA's contention that Mattel must have known of those misdeeds in mid-September
    is nothing more than speculation.  Futility cannot be founded on what might or might

28  not be the case; either a claim is futile to bring or it is not.

14

EXHIBIT 57  PAGE 1037

1   2004, well before the limitations period expired.[4]

2          Accordingly, MGA's futility argument is not well-founded.

3      **4.      Prior Disavowals of Asserting a Copyright Claim**

4          Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5   this case as to whether or not it is asserting a copyright infringement claim against

6   it. To MGA, such ducking and weaving on Mattel's part renders its effort to now

7   bring such a copyright claim as one done in bad faith. No doubt the Court itself has

8   been subjected to Mattel's overly vague statements on this point, but in the end

9   nothing in those statements has ever foreclosed the possibility that such a claim

10  may be in the offing. Indeed, during the oral argument on Mattel's motion to

11  dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12  to whether it would assert such a copyright claim against Bryant as it is currently

13  seeking to do. The most that Mattel's counsel would proffer was that Mattel would

14  not assert a copyright claim against Bryant based on Mattel's copyright rights in

15  TOON TEENS. At that point, the Court directed the parties to engage in a meet

16  and confer based on counsel for Mattel's representation and to provide a report to

17  the Court based on those discussions. The report submitted to the Court made

18  clear that, although Mattel was willing to accede that it would not bring a copyright

19  claim based on TOON TEENS, it refused to accede to Bryant's broader request

20  that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21  to any claim that Mattel has or ever will assert against Bryant." This by itself should

22  have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23  prior statements had foreclosed any potential copyright claim against them.[5]

24  _____

25          [4] Again the relations-back principle would also seem to render its claim timely
    if it were filed as an amended answer (the original having been filed in May, 2005) in
26  the 05-2727 case.

27          [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
    Larian, for the "Doe" defendants listed in its original complaint is improper because
28  Mattel knew of their identity when it filed the original complaint. The argument is

EXHIBIT **57** PAGE **1038**

1   That said, Mattel's allegation in the amended complaint as to how it is

2   seeking to lay claim to the copyright in BRATZ is disconcerting.  Paragraph 26,

3   subsection a, in the amended complaint alleges that Bryant "misappropriated and

4   misused Mattel property" by "using his exposure to Mattel development programs to

5   create the concept, design and name of Bratz."  (First Am. Compl. ¶ 26(a)).  Such

6   "exposure" could include Bryant misappropriating the Mattel design concept in

7   TOON TEENS in drawing his inspiration for the BRATZ doll.  Were Mattel's

8   copyright claim so predicated it would be barred by this Court's July, 2006, Order,

9   dismissing Bryant's declaratory judgment action.  Mattel was pressed on this point

10  during oral argument and conceded that such "exposure" to Mattel "development

11  programs" did not include TOON TEENS.  With this representation, nothing in

12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13      5.    Judicial Economy Considerations

14      In his opposition, Bryant adds an additional reason for denying leave beyond

15  those contained in MGA's papers — the amendment would muddy the waters in the

16  04-9059 by adding "tangential" issues that would only serve to delay resolution of

17  the key issue lying at the heart of the complaint:  Who owns the rights to the

18  BRATZ line of dolls.  (Bryant Opp. at 2 ).  Bryant notes that the case has proceeded

19  apace in moving toward resolving that issue, and the amendment would "transform

20

21

22  misplaced.  As made clear by Mattel, California law allows a plaintiff to substitute in a
    defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or
    ignorant of the basis for liability at the time the complaint was filed.  See Miller v.

23  Thomas, 121 Cal.App.3d 440 (1981).  MGA does not dispute this legal contention
    but at oral argument disputed that Mattel did not know the basis for liability against

24  itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in
    the original complaint and those now proffered against the two in the amended

25  complaint.  Specifically, MGA notes that the original complaint spoke of Bryant
    working for one of Mattel's competitions and of that employee's theft of Mattel's

26  intellectual property before leaving to work for that competitior.  At most, all this
    shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.

27  Larian encouraged Bryant's alleged unlawful behavior recited in the original
    complaint.

28

EXHIBIT  57  PAGE  1039

1  what Mattel has always claimed was a straightforward employment action against

2  an individual defendant into a global commercial dispute against Mattel's primary

3  competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns

4  BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to

5  amend because claims are 'tangential'" and then reiterates its point that some

6  showing of prejudice, namely, seeking leave after expiration of discovery, is

7  necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

8      As noted previously, the Ninth Circuit recently upheld a denial for leave to

9  amend because the amendment would have "drastically changed" the litigation,

10  even though the leave request was tendered <u>before</u> the time, as set forth in a Rule

11  16(b) pre-trial scheduling order, for filing a motion to amend had expired and well

12  before the discovery cut-off. <u>See</u> <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>,

13  465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited

14  approvingly to the following statement from a well-respected treatise: "If an

15  amendment substantially changes the theory on which the case has been

16  proceeding and is proposed late enough so that the opponent would be required to

17  engage in significant new preparation, the court may deem it prejudicial." <u>Id</u>. at 953

18  n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,

19  FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)). Thus, <u>Dialysist</u>

20  recognized that the introduction of "different legal theories" and/or proof of

21  materially different facts well into the litigation can itself be a basis for finding

22  prejudice regardless of whether the period for discovery has expired (or is even

23  close to expiring) or the parties have already filed summary judgment motions. <u>Id</u>.

24  at 953-54.

25      Although the parties can safely be said to be at this point well into the

26

27  ⁶ Bryant also brings intricate legal arguments about the sufficiency of the
28  allegations Mattel has averred in building its RICO claims against him. Such
   considerations are best left to be resolved on a properly filed motion to dismiss.

17

EXHIBIT 57 PAGE 1040

1   litigation in this consolidated action (as evidenced by the protracted discovery

2   disputes contained in the docket sheet that the parties have had before the

3   magistrate judge and now the special master, and the litigation of motions to

4   dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel

5   has made painfully clear in its papers, no scheduling order has been entered in this

6   case.[7] This takes away somewhat from the prejudice Dialysist found to exist when

7   a "drastic change [in a party's] litigation theory" takes place mid-stream in the

8   litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial

9   motions and other matters (e.g., discovery cutoff), the parties have been given free

10  reign in how to conduct the litigation in this case.

11          That the delay in bringing the proposed amendments and the relative length

12  of time into the litigation when those amendments were brought may not neatly fold

13  into Dialysist's reasoning does not mean that leave must nonetheless be granted.

14  The 04-9059 action, as it is presently constituted, is not a complex one. It asks a

15  rather narrow and straightforward question — Did anything from Bryant's

16  employment at Mattel during the 1999-2000 period give Mattel ownership rights to

17  the BRATZ doll line? The proposed amendments would radically alter the litigation

18  in that case to include far ranging disputes involving multiple parties and concerning

19  events not connected with the BRATZ ownership issue. That the original action

20  was a relatively simple and straight-forward matter raises another point beyond the

21  change in the action's litigation posture — whether entangling the rival doll makers'

22  other commercial disputes into this particular case would serve to muddy the waters

23  and make the matter that much more difficult to manage from the Court's

24  perspective.

25  _____

26          [7] Mattel's repeated refrain that the matter is in its nascent stage as evidenced by the fact that the parties only just recently exchanged in initial disclosures is misleading. The exchange of initial disclosures referred to by Mattel is in the 05-

27  2727 case. With respect to the 04-9059 case it appears that such initial disclosures were completed long ago as evidenced by the fact that discovery disputes appeared

28  in that case as far back as January, 2005.

EXHIBIT **57** PAGE **1041**

1   As has long been recognized, equally important in determining whether to

2   grant such leave is what impact such amendments would have on the court's ability

3   to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE

4   § 15.15[1] at 15–42.1 to 15–43 (3rd ed. 2006)("A court should also consider judicial

5   economy and its ability to manage the case. . . .  The court should also temper the

6   policy favoring freely granting leave to amend with consideration of the ability of the

7   district court to manage the case adequately if amendment is allowed"). As Judge

8   Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,

9   the court should consider judicial economy and whether the amendments would

10  lead to expeditious disposition of the merits of the litigation.  Finally, the court

11  should consider whether the amendment adds substance to the original allegations,

12  and whether it is germane to the original case of action."  Chitimacha Tribe of

13  Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also

14  Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

15  1987)("General considerations of judicial economy also justify allowing the

16  amendments. The violations included in the proposed amendment relate to the

17  same subject matter as the original complaint.  Allowing the amendment will further

18  the federal policy of 'wrapping in one bundle all matters concerning the same

19  subject matter.'").

20   Mattel's amendments do not add substance to the claims contained in its

21  original complaint.  Rather, they would expand the universe of claims and

22  defendants stretching well-beyond the questions raised in the original complaint

23  over whether Bryant's conduct while in the employ of Mattel subjected his later

24  attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions

25  Agreement or otherwise rendered his creation subject to an infringement action.

26  Nowhere does Mattel seek to reconcile the breadth of its present amendments with

27  the narrowness of the allegations contained in its original complaint.  In fact, the

28  precise opposite is true.  Mattel acknowledges that its proposed amendments bear

EXHIBIT __57__ PAGE **1042**

1 | more congruity to the allegations leveled against it in MGA's Lanham Act case than

2 | to those in the action to which it seeks to add them:

3 |
> [M]any of the matters raised by Mattel's proposed
4 | Amended Complaint are and will remain at issue
> because of MGA's Complaint, whether or not leave to
5 | amend is granted.  MGA's claims allege that a broad
> array of purported Mattel conduct across the globe,
6 | starting at least as early as 1999, has violated the
> Lanham Act and unfair competition law.  This includes
7 | Mattel's alleged infringement of Bratz and other MGA
> products.  As a result, issues in the proposed Amended
8 | Complaint are already part and parcel of Mattel's
> defenses to MGA's unfair competition claims, including
9 | because they show that MGA and Bryant, and not
> Mattel, are ones who stole the products and other
10 | properties involved.

11 | (Reply to Bryant Opp. at 7 (emphasis added)).  Mattel apparently finds this

12 | discongruity unimportant because "all of these matters have been consolidated with

13 | the Bryant case." (Id. at 7).  As noted earlier, the fact that the cases have been

14 | consolidated does not mean that the parties can ignore the distinctions that still

15 | exist between them.  If, as Mattel acknowledges, the present amendments are

16 | nothing more than re-formulated defenses and counterclaims it presently has to

17 | MGA's complaint against it in the 05-2727 case, then such amendments should be

18 | brought in the form of an amended answer and counterclaim in that case.

19 | Consideration of the distinctions between the two cases is wise as it serves

20 | as a useful tool in providing the Court a better means to manage the cases now

21 | that they have been consolidated.  The proverbial dog (ownership in BRATZ)

22 | should be wagging the proverbial tail (the remaining commercial disputes), not the

23 | other way around.  Admittedly, the dog's tail has grown in size both by MGA's filing

24 | of its complaint in the 05-2727 action and Mattel's response thereto through its

25 | proposed amendments.  Nonetheless, it is readily apparent to the Court that the

26 | crown jewel in this action still remains the ownership rights to the BRATZ dolls.  The

27 | parties have engaged in extensive and undoubtedly expensive discovery on this

28 | very issue (from hiring world-renowned experts to test the age of Bryant's design

EXHIBIT 57 PAGE 1043

drawings to technically complex discovery of what is on each other's computers).

Indeed the separateness of the two matters is reflected in how the cases are currently structured, namely, the narrowness of the issue involved in 04-9059 and the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court believes a two-track scheduling order wherein the 04-9059 matter's discovery cut off and trial date are set well-ahead of those in 05-2727 makes the most sense. As noted earlier, many of the legal claims being pressed in 05-2727 will be affected by the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's "development programs" or by way of the Inventions Agreement because he continued to work on his designs while at Mattel), then large portions of MGA's Lanham Act infringement claims may become moot. By the same token, if Mattel does not own rights to BRATZ, then some of the defenses and counterclaims set forth as independent claims in the present amended complaint may become moot, including Mattel's copyright infringement claim as well as portions of its remaining RICO, misappropriation, and aiding and abetting claims. If, however, the Court were to allow the amended complaint to be filed in the 04-9059 action, such case management would be difficult, if not impossible as many of the issues being litigated in the 05-2727 case would have been poured into the 04-9059 case by the amendment. Due to this substantial overlap in claims and facts, a two-track scheduling order utilizing the case number distinctions would be impossible to craft. When pressed by the Court at oral argument as to which of its proposed claims it believed would not undermine the BRATZ ownership posture of the 04-9059 case, Mattel cited to its copyright and RICO claims. However, upon further questioning by the Court, counsel for Mattel acknowledged that much of those claims were, like the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

In light of the burden allowing Mattel's amendment to proceed would have on this Court's ability to efficiently manage these consolidated matters denial of

21

EXHIBIT 57 PAGE 1044

1   Mattel's request to amend its complaint in the 04-9059 matter is justified.  See

2   Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial

3   system can justify a denial of a motion to amend 'even if the amendment would

4   cause no hardship at all to the opposing party'").  Buttressing the Court's decision is

5   the fact that, even with such a denial, Mattel may file (and the Court provides leave

6   to Mattel to so file) an amended answer and counterclaim in the 05-2727 case

7   raising all the new claims and defendants presently sought to be achieved through

8   amendment of its complaint in the 04-9059 action.  None of the substantive

9   concerns raised by MGA and Bryant to the present amended complaint, e.g.,

10  statutes of limitations, would appear to be affected if the new claims and

11  defendants were brought as defenses and counterclaims in the 05-2727 case as

12  opposed to the 04-9059 one.

13          Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed

14  amendments, but only insofar as they are pled in the form of an amended answer

15  and counterclaim in the 05-2727 case.

16          Finally, the lack of a scheduling order in this case is problematic; one should

17  have been entered long ago.  See Fed. R. Civ. P. 16(b)(noting that a scheduling

18  "order shall issue as soon as practicable but in any event within 90 days after the

19  appearance of a defendant and within 120 days after the complaint has been

20  served on a defendant").  In light of the fact that entry of a scheduling order is

21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)

22  scheduling conference be held in this consolidated matter on February 12, 2007, at

23  1:30 p.m. in Courtroom One.  The parties are directed to file a Joint Rule 26(f)

24  report with the Court by February 5, 2007.

25          IT IS SO ORDERED.

26  DATE:  _1-11-07_

27

28  _____
    STEPHEN G. LARSON
    UNITED STATES DISTRICT JUDGE

22

EXHIBIT 57 PAGE 1045