October 2000 time period: (i) Bryant had an idea in August or September of 1998, when he was not employed by Mattel, for a series of characters that he named Bratz that could be used to create, among other things, a line of fashion dolls; (ii) at the same time, Bryant sketched a series of drawings to illustrate his conception; (iii) Bryant was the rightful owner of the concepts reflected in his drawings and other representations of his ideas and of his drawings; (iv) Bryant and his counsel represented and warranted to MGA that he was the exclusive originator and owner of his Bratz ideas and drawing and that no third party had any interest or rights in the drawings or the ideas reflected in the drawings; (v) Bryant came recommended by Veronica Marlow, a trusted freelancer who had worked for MGA in the past; (vi) immediately upon entering into a written freelance agreement with Bryant, Isaac Larian, the CEO of MGA, instructed Bryant to immediately resign from Mattel; (vii) MGA employees and freelance artists had made substantial original and creative contributions to the creation of what ultimately was marketed as Bratz dolls; and (viii) assuming some part of the Bratz concept was a feature that could have been protected by a design patent, any such invention was not "reduced to practice" prior to October 20, 2000.

The following persons have knowledge of these facts: Carter Bryant; Bryant's mother, Janet Bryant; Bryant's father, Thomas Bryant; Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona Prince; Margaret Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward; Sarah Halpern; Paula Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon Djiguerian; Rachel Harris; Maggie Siu; Ben Ton; Sam Wong; Ray Wong.

The following documents may be relevant to these facts:   MGA's agreement with Carter Bryant; and documents that refer to or evidence the work performed by MGA employees and freelancers toward the reduction to practice of the Bratz line of doll.  Documents responsive to this interrogatory are protected by

1  the attorney-client privilege and work product doctrine.  MGA previously offered to

2  stipulate to a limited waiver of these privileges and protections to permit inspection

3  of such documents, but Mattel refused.

4  **INTERROGATORY NO. 37:**

5      State all facts that support YOUR contention, if YOU so contend, that

6  BRYANT did not breach the INVENTIONS AGREEMENT when BRYANT

7  purported to TRANSFER rights to BRATZ to MGA, and IDENTIFY all PERSONS

8  with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO

9  such facts.

10 **RESPONSE TO INTERROGATORY NO. 37:**

11     MGA incorporates by reference its General Response and General

12 Objections above, as though fully set forth herein and specifically incorporates

13 General Objection No. 7 (regarding Definitions), including but not limited to its

14 objections to the definitions of the terms INVENTIONS AGREEMENT, BRATZ

15 and REFER OR RELATE TO, and further objects on the ground that the

16 interrogatory is overbroad, unduly burdensome, vague and ambiguous both

17 generally and specifically with respect to the teams YOUR, YOU, BRYANT, MGA

18 and TRANSFER.  MGA also objects to this interrogatory to the extent it seeks

19 information that is not subject to disclosure under any applicable privilege, doctrine

20 or immunity, including without limitation the attorney-client privilege, the work

21 product doctrine, the right of privacy, and all other privileges recognized under the

22 constitutional, statutory or decisional law of the United States of America, the State

23 of California or any other applicable jurisdiction.  MGA further objects to the

24 interrogatory to the extent it calls for a legal conclusion. MGA further objects to the

25 interrogatory on the ground that Mattel - not MGA - bears the burden of proof to

26 show that Bryant breached the INVENTIONS AGREEMENT.

27     MGA further objects on the ground that this interrogatory is an

28 overbroad and unduly burdensome contention interrogatory to the extent it asks for

1   "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

2   *Am v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

3   requests seeking "all facts, documents, and witnesses that support the denial of a

4   statement or allegation of fact" because the "universe of potentially responsive

5   information is almost endless").  MGA further objects on the ground that it is an

6   abuse of the discovery process to effectively ask a Party to prove his, her or its

7   entire case in response to a single interrogatory.  *See, e.g., Lawrence v. First Kansas*

8   *Bank & Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*,

9   No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006)

10  (ruling that interrogatory that asks defendant to "plead and prove its entire case, and

11  to marshal all evidence, in response to one interrogatory" is overbroad and

12  "constitutes an abuse of the discovery process").

13          MGA further objects to the extent that this interrogatory seeks

14  information that is outside MGA's knowledge and is not in MGA's possession,

15  custody, or control.  In particular, MGA objects to this interrogatory to the extent

16  that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS ... and *all*

17  DOCUMENTS" (emphasis added).  In responding to this interrogatory, MGA

18  undertakes only to make a good faith, reasonable effort to summarize facts currently

19  known to it, and reserves the right to supplement its response.

20          MGA further objects to this interrogatory because Mattel has

21  propounded more than 50 interrogatories.  Under Judge Larson's order of

22  February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case

23  Nos. CV 04-04049-SGL and CV 05-02727]."

24          Subject to and without waiving the foregoing objections, MGA

25  responds as follows: MGA is willing to meet and confer with Mattel regarding this

26  interrogatory and the obligation of Mattel to supplement its responses to MGA's

27  First Set of Interrogatories.

28

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 37:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth, herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms INVENTIONS AGREEMENT, BRATZ and REFER OR RELATE TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, BRYANT, MGA and TRANSFER. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion. MGA further objects to the interrogatory on the ground that Mattel - not MGA - bears the burden of proof to show that Bryant breached the INVENTIONS AGREEMENT.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless"). MGA further objects on the ground that it is an abuse of the discovery process to effectively ask a Party to prove his, her or its entire case in response to a single interrogator. *See, e.g., Lawrence v. First Kansas Bank & Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006)

1  (ruling that interrogatory that asks defendant to "plead and prove its entire case, and

2  to marshal all evidence, in response to one interrogatory" is overbroad and

3  "constitutes an abuse of the discovery process").

4        MGA further objects to the extent that this interrogatory seeks

5  information that is outside MGA's knowledge and is not in MGA's possession,

6  custody, or control.  In particular, MGA objects to this interrogatory to the extent

7  that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS ... and *all*

8  DOCUMENTS" (emphasis added).  In responding to this interrogatory, MGA

9  undertakes only to make a good faith, reasonable effort to summarize facts currently

10  known to it, and reserves the right to supplement its response.

11        Subject to and without waiving the foregoing objections, MGA

12  responds as follows:

13        In August or September of 1998, Carter Bryant, inspired by images he

14  was exposed to, including in the August 1998 issue of Seventeen Magazine, the

15  appearance of teenagers as well as other images in the public domain, had an idea

16  for a line of fashion dolls that he named Bratz.  At the same time, Bryant sketched a

17  series of drawings to illustrate his conception.  To the extent that some aspect of

18  Bryant's idea would have been protectible under patent law, there was neither a

19  conception nor reduction to practice during the period of Bryant's unemployment

20  with Mattel.  In addition, Bryant's idea for a unique approach to fashion dolls was

21  not covered by the "INVENTIONS AGREEMENT."

22  **INTERROGATORY NO. 38:**

23        State all facts that support YOUR contention, if YOU so contend, that

24  BRYANT did not breach BRYANT's duty of loyalty or fiduciary duties to

25  MATTEL when BRYANT performed work or services with or for MGA while

26  BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with

27  knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such

28  facts.

**RESPONSE TO INTERROGATORY NO. 38:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including but not limited to its objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO, and further objects on the ground that the interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally and specifically with respect to the terms YOUR, YOU, BRYANT, MATTEL, MGA and BRATZ. MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory to the extent it calls for a legal conclusion. MGA further objects to the interrogatory on the ground that Mattel - not MGA - bears the burden of proof to show that Bryant breached any duties, fiduciary or otherwise, to Mattel.

MGA further objects on the ground that this interrogatory is an overbroad and unduly burdensome contention interrogatory to the extent it asks for "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of Am. v. Rawstron,* 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all facts, documents, and witnesses that support the denial of a statement or allegation of fact" because the "universe of potentially responsive information is almost endless"). MGA further objects on the ground that it is an abuse of the discovery process to effectively ask a Party to prove his, her or its entire case in response to a single interrogator. *See, e.g., Lawrence v. First Kansas Bank & Trust, Co.,* 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.,* No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006)

1  (ruling that interrogatory that asks defendant to "plead and prove its entire case, and

2  to marshal all evidence, in response to one interrogatory" is overbroad and

3  "constitutes an abuse of the discovery process").

4  　　　　MGA further objects to the extent that this interrogatory seeks

5  information that is outside MGA's knowledge and is not in MGA's possession,

6  custody, or control.  In particular, MGA objects to this interrogatory to the extent

7  that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS ... and all

8  DOCUMENTS" (emphasis added).   In responding to this interrogatory, MGA

9  undertakes only to make a good faith, reasonable effort to summarize facts currently

10  known to it, and reserves the right to supplement its response.

11  　　　　MGA further objects to this interrogatory because Mattel has

12  propounded more than 50 interrogatories.   Under Judge Larson's order of

13  February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case

14  Nos. CV 04-04049-SGL and CV 05-02727]."

15  　　　　Subject to and without waiving the foregoing objections, MGA

16  responds as follows:  MGA is willing to meet and confer with Mattel regarding this

17  interrogatory and the obligation of Mattel to supplement its responses to MGA's

18  First Set of Interrogatories.

19  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 38:**

20  　　　　MGA incorporates by reference its General Response and General

21  Objections above, as though fully set forth herein and specifically incorporates

22  General Objection No. 7 (regarding Definitions), including but not limited to its

23  objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

24  and further objects on the ground that the interrogatory is overbroad, unduly

25  burdensome, vague and ambiguous both generally and specifically with respect to

26  the terms YOUR, YOU, BRYANT, MATTEL, MGA and BRATZ.  MGA also

27  objects to this interrogatory to the extent it seeks information that is not subject to

28  disclosure under any applicable privilege, doctrine or immunity, including without

1  limitation the attorney-client privilege, the work product doctrine, the right of
2  privacy, and all other privileges recognized under the constitutional, statutory or
3  decisional law of the United States of America, the State of California or any other
4  applicable jurisdiction.  MGA further objects to the interrogatory to the extent it
5  calls for a legal conclusion.  MGA further objects to the interrogatory on the ground
6  that Mattel - not MGA - bears the burden of proof to show that Bryant breached any
7  duties, fiduciary or otherwise, to Mattel.

8         MGA further objects on the ground that this interrogatory is an
9  overbroad and unduly burdensome contention interrogatory to the extent it asks for
10 "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*
11 *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
12 requests seeking "all facts, documents, and witnesses that support the denial of a
13 statement or allegation of fact" because the "universe of potentially responsive
14 information is almost endless").  MGA further objects on the ground that it is an
15 abuse of the discovery process to effectively ask a Party to prove his, her or its
16 entire case in response to a single interrogatory.  *See, e.g., Lawrence . First Kansas*
17 *Bank & Trust, Co.,* 169 F.R.D 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.,*
18 No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006)
19 (ruling that interrogatory that asks defendant to "plead and prove its entire case, and
20 to marshal all evidence, in response to one interrogatory" is overbroad and
21 "constitutes an abuse of the discovery process").

22         MGA further objects to the extent that this interrogatory seeks
23 information that is outside MGA's knowledge and is not in MGA's possession,
24 custody, or control.  In particular, MGA objects to this interrogatory to the extent
25 that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSON ... and all
26 DOCUMENTS" (emphasis added).  In responding to this interrogatory, MGA
27 undertakes only to make a good faith, reasonable effort to summarize facts currently
28 known to it, and reserves the right to supplement its response.

1    Subject to and without waiving the foregoing objections, MGA

2    responds as follows:

3    Bryant was not a fiduciary of Mattel. Bryant was not an officer or

4    director of Mattel. Mattel has not proven any facts that would support its claim that

5    Bryant was a fiduciary of Mattel. MGA responds further that Bryant did not

6    perform any services for MGA prior to signing his agreement with MGA on

7    October 4, 2000. Bryant's activities with respect to the Bratz concept prior to

8    October 4, 2000, were directed to securing a commercially beneficial relationship

9    with MGA, i.e., Bryant "pitched" the concept of Bratz to MGA. In addition,

10    Bryant's employment with Mattel was at will, and Bryant had the right to leave

11    Mattel to join a competitor, or to work for a competitor, at any time. Any work that

12    Bryant performed relating to his Bratz ideas during the time period that he was still

13    employed by Mattel constituted lawful steps by Bryant to prepare to embark upon a

14    new career. Isaac Larian instructed Bryant to leave Mattel immediately upon

15    executing his contract with MGA. During the period from October 4, 2000, through

16    October 20, 2000, Bryant contributed very little to the development of what later

17    became the first generation of Bratz dolls.

18    The following persons have knowledge of the facts and circumstances

19    supporting this contention: Isaac Larian, Carter Bryant, Victoria O'Connor,

20    Margaret Leahy, Aileen Storer, Veronica Marlow, Paula Garcia, and Anne Wang.

21    **INTERROGATORY NO. 42:**

22    State all facts that support YOUR contention, if YOU so contend, that

23    any BRATZ DOLLS are not BASED ON BRATZ DESIGNS created by BRYANT

24    on or before October 19, 2000, and IDENTIFY all PERSONS with knowledge of

25    such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

26    **RESPONSE TO INTERROGATORY NO. 42:**

27    MGA incorporates by reference its General Response and General

28    Objections above, as though fully set forth herein and specifically incorporates

1  General Objection No. 7 (regarding Definitions), including without limitation
2  MGA's objection to the definition of the terms BASED ON, BRATZ DOLLS,
3  BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to
4  this interrogatory on the ground that it is overbroad, unduly burdensome, vague and
5  ambiguous.

6          MGA also objects to this interrogatory to the extent it seeks
7  information that is not subject to disclosure under any applicable privilege, doctrine
8  or immunity, including without limitation the attorney-client privilege, the work
9  product doctrine, the right of privacy, and all other privileges recognized under the
10 constitutional, statutory or decisional law of the United States of America, the State
11 of California or any other applicable jurisdiction. MGA objects to this interrogatory
12 to the extent it calls for a legal conclusion.

13         MGA further objects to this interrogatory on the ground that it is
14 premature because the invention, creation, conception, or reduction to practice of
15 Bratz (and other legal concepts that may be relevant) will be the subject of expert
16 testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit
17 the expert testimony that MGA may seek to introduce at trial. MGA will identify its
18 experts and make related disclosures in accordance with the Court's orders and
19 applicable rules.

20         MGA further objects to this interrogatory on the grounds that it seeks
21 information that is not relevant to the claims or defenses of any patty to the action
22 and is not reasonably calculated to lead to the discovery of admissible evidence
23 because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
24 January 1999, purports to state that any inventions conceived or reduced to practice
25 by him during his employment with Mattel would be owned by Mattel. The
26 references to the conception and reduction to practice of an invention are terms of
27 art in patent la. Accordingly, copyright law principles of substantial similarity,
28

1  copying, and derivative works are not relevant to the INVENTIONS AGREEMENT

2  which, by its terms, involves only principles of patent law.

3  　　　　MGA further objects on the ground that this interrogatory is an

4  overbroad and unduly burdensome contention interrogatory to the extent it asks for

5  "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

6  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

7  requests seeking "all facts, documents, and witnesses that support the denial of a

8  statement or allegation of fact" because the "universe of potentially responsive

9  information is almost endless").

10  　　　　MGA further objects to the extent that this interrogatory seeks

11  information that is outside MGA's knowledge and is not in MGA's possession,

12  custody, or control.  In particular, MGA objects to this interrogatory to the extent

13  that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS ... and *all*

14  DOCUMENTS" (emphasis added).

15  　　　　MGA further objects to this interrogatory because Mattel has

16  propounded more than 50 interrogatories.   Under Judge Larson's order of

17  February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case

18  Nos. CV 04-04049-SGL and CV 05-02727].

19  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ██████████

27  ████████████████████████████████████████████████

28  ████████████████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S SEPARATE STMT ISO MTC RESPONSE TO INTERROGATORIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S SEPARATE STMT ISO MTC RESPONSE TO INTERROGATORIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 ██████████████████████████████████████████████

2 ██████████████████████████

### INTERROGATORY NO. 50:

For each trade dress identified in response to Interrogatory No. 48, separately and completely IDENTIFY all facts that support YOUR contention that such trade dress is protectible, all DOCUMENTS that REFER OR RELATE to the foregoing and all PERSONS with knowledge of the foregoing.

### RESPONSE TO INTERROGATORY NO. 50:

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including without limitation its objection to the definitions of the terms "IDENTIFY" or "IDENTITY," and "REFER OR RELATE TO." MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

MGA further objects to the interrogatory on the grounds that it is oppressive, harassing, and unduly burdensome insofar as it requires MGA to compile detailed financial reports of information not reasonably available solely for the purpose of responding this interrogatory.

MGA further objects because the interrogatory additionally contains discrete subparts that require separate, distinct and multiple responses through defined terms. Specifically, Mattel's definitions of the term "IDENTIFY" as applied to the protectibility of trade dress would require MGA to provide separate, distinct, and multiple responses.

1           For example, Mattel's definition of the term "IDENTIFY," in the

2   context of protectibility of a trade dress (Definitions ¶ 10(f)), requests at least four

3   different and distinct facts: (a) all facts that support YOUR contention that such

4   trade dress is inherently distinctive or has acquired secondary meaning and that such

5   trade dress is famous; (b) the date that YOU contend such trade dress acquired

6   secondary meaning and, if YOU contend the trade dress is famous, the date on

7   which YOU contend that it became famous; (c) all facts that support YOUR

8   contention that such trade dress is not functional; and (d) if YOU are relying on

9   advertising to establish secondary meaning or fame, the dollar amounts, by year,

10  spent by YOU or anyone acting on YOUR behalf on advertising that features such

11  trade dress.  Additionally, through Mattel's definition of "YOU," this interrogatory

12  asks for all of the foregoing information about contentions regarding trade dress by

13  each of the multiple separate responding parties to this set of interrogatories.

14          MGA further objects to the extent this interrogatory seeks information

15  that is beyond MGA's personal knowledge and is not in MGA's possession, custody,

16  or control.   In particular, MGA objects to this interrogatory to the extent that it

17  requests that MGA "IDENTIFY *all* facts ...   *all* DOCUMENTS ...   and *all*

18  PERSONS" (emphasis added).  MGA also objects to this interrogatory to the extent

19  it calls for information already produced in this litigation or more easily obtainable

20  from other sources.  MGA objects to providing responses to interrogatories that can

21  be derived from documents that have or will be produced (when requested in

22  compliance with Rule 26) and where the burden to derive such information is

23  substantially the same for Mattel as it is for MGA.

24          MGA objects to this interrogatory because Mattel has propounded more

25  than 50 interrogatories.   Under Judge Larson's order of February 22, 2007,

26  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

27  SGL and CV 05-02727.]"

28

1   MGA further objects to this interrogatory on the ground that it is
2   premature because MGA's trade dress (and other legal concepts that may be
3   relevant) will be the subject of expert testimony at trial.   MGA objects to this
4   interrogatory to the extent it seeks to limit the expert testimony that MGA may seek
5   to introduce at trial.   MGA will identify its experts and make related disclosures in
6   accordance with the Court's orders and applicable rules.

7   Subject to and without waiving the foregoing objections, MGA
8   responds as follows: MGA. is willing to meet and confer with Mattel regarding this
9   interrogatory.

10   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 50:**

11   MGA incorporates by reference its General Response and General
12   Objections above, as though fully set forth herein and specifically incorporates
13   General Objection No. 7 (regarding Definitions), including without limitation its
14   objection to the definitions of the terms "IDENTIFY" or "IDENTITY," and
15   "REFER OR RELATE TO."   MGA also objects to this interrogatory to the extent it
16   seeks information that is not subject to disclosure under any applicable privilege,
17   doctrine or immunity, including without limitation the attorney-client privilege, the
18   work product doctrine, the right of privacy, and all other privileges recognized under
19   the constitutional, statutory or decisional law of the United States of America, the
20   State of California or any other applicable jurisdiction.

21   MGA further objects to the interrogatory on the grounds that it is
22   oppressive, harassing, and unduly burdensome insofar as it requires MGA to
23   compile detailed financial reports of information not reasonably available solely for
24   the purpose of responding this interrogatory.

25   MGA further objects because the interrogatory additionally contains
26   discrete subparts that require separate, distinct and multiple responses through
27   defined terms.   Specifically, Mattel's definitions of the term "IDENTIFY" as applied

28

1   to the protectibility of trade dress would require MGA to provide separate, distinct,

2   and multiple responses.

3          For example, Mattel's definition of the term "IDENTIFY," in the

4   context of protectibility of a trade dress (Definitions ¶ 10(f)), requests at least four

5   different and distinct facts: (a) all facts that support YOUR contention that such

6   trade dress is inherently distinctive or has acquired secondary meaning and that such

7   trade dress is famous; (b) the date that YOU contend such trade dress acquired

8   secondary meaning and, if YOU contend the trade dress is famous, the date on

9   which YOU contend that it became famous; (c) all facts that support YOUR

10  contention that such trade dress is not functional; and (d) if YOU are relying on

11  advertising to establish secondary meaning or fame, the dollar amounts, by year,

12  spent by YOU or anyone acting on YOUR behalf on advertising that features such

13  trade dress.  Additionally, through Mattel's definition of "YOU," this interrogatory

14  asks for all, of the foregoing information about contentions regarding trade dress by

15  each of the multiple separate responding parties to this set of interrogatories.

16         MGA further objects to the extent this interrogatory seeks information

17  that is beyond MGA's personal knowledge and is not in MGA's possession, custody,

18  or control.  In particular, MGA objects to this interrogatory to the extent that it

19  requests that MGA "IDENTIFY *all* facts ... *all* DOCUMENTS ... and *all*

20  PERSONS" (emphasis added).  MGA also objects to this interrogatory to the extent

21  it calls for information already produced in this litigation or more easily obtainable

22  from other sources.  MGA objects to providing responses to interrogatories that can

23  be derived from documents that have or will be produced (when requested in

24  compliance with Rule 26) and where the burden to derive such information is

25  substantially the same for Mattel as it is for MGA.

26         MGA further objects to this interrogatory on the ground that it is

27  premature because MGA's trade dress (and other legal concepts that may be

28  relevant) will be the subject of expert testimony at trial.  MGA objects to this

-97-

1  interrogatory to the extent it seeks to limit the expert testimony that MGA may seek
2  to introduce at trial.  MGA will identify its experts and make related disclosures in
3  accordance with the Court's orders and applicable rules.

4         Subject  to  and  without  waiving  the  foregoing  objections,  MGA
5  provides the following supplemental response:

6         That the elements of MGA's trade dress in its "Bratz" and "Bratz Petz"
7  lines are aesthetic and non-functional is apparent from an examination of the Bratz
8  products and packaging, compared to other leading fashion dolls.  That MGA's
9  packaging was and is inherently distinctive is apparent from a comparison of said
10  packaging to the state of fashion doll packaging when Bratz was introduced in 2001,
11  the fact that following the Bratz introduction competitors have copied significant,
12  innovative elements of the Bratz packaging, and the fact that the packaging has won
13  industry awards.  MGA's trade dress has also acquired secondary meaning as a
14  source indicator for "Bratz" as a result of the enormous success of the Bratz dolls in
15  the market, and the marketing and promotional efforts employed by MGA to
16  support Bratz.

17         Documents evidencing the market strength of the Bratz trade dress
18  features include documents evidencing (i) sales totals; (ii) package awards; (iii)
19  package related design patents; (iv) publicity given to the Bratz dolls and their
20  success; and.(v) documents evidencing industry awards given to MGA on account
21  of the success of the Bratz dolls and/or their innovative packaging, and the fact that
22  said packaging has been copied and mimicked by competitors.

23         Persons with knowledge of the packaging issues include Steffen Smith
24  (Director  of  Structural  Engineering/Creative  Package  Development),  Leon
25  Djiguerian (in Product Development), Saniir Khare and Aileen Storer (Creative
26  Director of Bratz & Dolls).   Such issues also fall within the scope of expert
27  testimony.  Many individuals are knowledgeable of the striking similarities between
28

the protected trade dress of Bratz and features of My Scene Barbie dolls and packaging. These include Carter Bryant and Paula Garcia.

That the unique aspects of the Bratz dolls heads/facial features have acquired secondary meaning falls within the scope of expert testimony.

## B.   MGA's Objections Should Be Overruled And MGA Should Be Compelled To Provide Complete Responses To Interrogatory Nos. 30, 31, 32, 33, 34, 35, 36, 37, 38, 42 and 50

In its responses, MGA provided only partial answers to Nos. 30, 31, 32, 33, 34, 35, 36, 37, 38, 42 and 50. Not a single one of these responses is full and complete. Rather, during the parties' meet and confers, MGA confirmed that (1) its answers regarding its various contentions contain only the "basic facts" on which it will rely, (2) it has limited its responses by its "interpretation" of Mattel's defined terms, and (3) it has not identified documents as requested.[38] MGA also confirmed that its supplemental responses will continue to be limited by its objections.[39]

Each of these interrogatories seeks facts relating to key issues in this case -- including MGA's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis MGA; how Bryant's Inventions Agreement with Mattel, assignment of rights to Bratz inventions to MGA, and services with or for MGA while employed by Mattel affect who owns the rights to Bratz inventions; Mattel's entitlement to punitive damages and other relief; MGA's purported innocent state of mind; MGA's intentionally interference with the Inventions Agreement between Bryant and Mattel; MGA's aiding and abetting Bryant's breach of fiduciary duty and duty of loyalty to Mattel; why the Bratz dolls purportedly are not based on designs Bryant created during his Mattel employment; and why the trade dress MGA

---

[38] Letter from Proctor to Miller, dated December 13, 2007, at 2, Proctor Dec., Exh. 7.
[39] Id.

1  contends Mattel infringed is protectible.  Given that these interrogatories go to core
2  issues in this litigation, Mattel indisputably has a substantial need for the requested
3  information.  MGA cannot show burden sufficient to outweigh Mattel's need for this
4  critical information.

5          MGA's objections that these interrogatories are purportedly improper
6  because they request "that MGA 'state *all* facts ... and IDENTIFY *all*
7  PERSONS ... and *all* DOCUMENTS,'"[40] because some of them ask "for 'every
8  fact' which supports the denial of a statement or allegation," and because Mattel
9  "bears the burden of proof" on the issues addressed by the interrogatories all lack
10  merit.[41]  Interrogatories like those served by Mattel are commonly used to elucidate
11  facts regarding a party's contentions, and numerous courts have held them proper.
12  See, e.g., Auto Meter Prods., Inc. v. Maxima Technologies & Sys., LLC, 2006 WL
13  3253636, at *2-5 (N.D. Ill. 2006) (compelling defendant to answer interrogatories
14  requesting "all supporting facts, documents, exhibits, testimony and/or expert
15  opinions" in support of contentions); Tennison v. San Francisco, 226 F.R.D. 615,
16  618 (N.D. Cal. 2005) (requiring plaintiff to answer interrogatory that requested "all
17  facts" supporting denial of allegation); Dang v. Cross, 2002 WL 432197, at *4 (C.D.
18  Cal. 2002) (affirming magistrate judge's holding that interrogatories requesting "all
19  facts" in support of a denial of a statement were not unduly burdensome); Twigg v.
20  Pilgrim's Pride Corp., 2007 WL 676208, at *11-12 (N.D. W. Va. 2007) (holding that
21  interrogatory asking party to state "each fact" in support of contention is proper);
22  Wilson v. Thompson/Center Arms Co., 2006 WL 3524250, at *1 (E.D. La. 2006)
23  (overruling vagueness and burden objections, and compelling defendants to "fully
24  respond" to interrogatories requesting "each fact, exhibit and witness" in support of
25

26  [40]  See e.g., MGA Entertainment, Inc.'s Supplemental Responses to Mattel's
27  Revised Third Set of Interrogatories, dated November 30, 2007, at 11 (Objs. to No. 27), Proctor Dec., Exh. 21.
28  [41]  See e.g., id. at 53 (Objs. to No. 37).

1  contentions); <u>Williams v. The Art Inst. of Atl.</u>, 2006 WL 3694649, at *7 (N.D. Ga.

2  2006) (granting plaintiff's motion to compel as to interrogatories asking defendant to

3  "[s]tate all facts that support defendant's contentions"); <u>Zapata v. IBP, Inc.</u>, 1997

4  WL 122588, at *1 (D. Kan. 1997) (ordering defendant to fully answer interrogatory

5  asking for factual basis for each of defendant's defenses, as well as all witnesses

6  with knowledge of and all documents relating to those facts); <u>Audiotext Comm.</u>

7  <u>Network, Inc. v. U.S. Telcomm., Inc.</u>, 1995 WL 625953, at *1 (D. Kan. 1995)

8  (approving contention interrogatories seeking "all facts" because "parties 'are

9  entitled to know the factual basis' of the claims, defenses, or denials of their

10  opponents" and rejecting defendant's objection that it could not answer

11  interrogatories because it had not obtained sufficient discovery from plaintiff, as a

12  party "may not withhold discovery solely because it has not obtained to its

13  satisfaction other discovery"); <u>Pension Ben. Guar. Corp v. Ziffer</u>, 1994 WL 11654,

14  at *1 (N.D. Ill. 1994) (stating that interrogatories asking for "all facts" supporting

15  contentions "are appropriately made").

16        MGA relies in its objections on <u>Safeco of Am. v. Rawstron</u>, 181 F.R.D.

17  441, 447-48 (C.D. Cal. 1998), <u>Lawrence v. First Kansas Bank & Trust, Co.</u>, 169

18  F.R.D. 657, 663-64 (D. Kan. 1996) and <u>Grynberg v. Total S.A.</u>, No. 03-cv-01280-

19  WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006), but these authorities

20  do not undermine Mattel's interrogatories.   Rather, they merely recognize that

21  interrogatories seeking all facts supporting the denial of an assertion may, in some

22  circumstances and in some cases, impose an undue burden.   See <u>Chapman v.</u>

23  <u>California Dept. of Education</u>, 2002 WL 32854376, at *2 (N.D. Cal. 2002) ("While

24  interrogatories that call for all facts, documents and witnesses may, in some

25  circumstances, place an unreasonable burden on the responding party . . . an

26  interrogatory that requests 'all facts' in support of a refusal to admit specific

27  relevant facts is not burdensome and oppressive *per se*.").   MGA has failed to make

28  a specific showing of burden here, and cannot do so.   <u>See, e.g.</u>, <u>Josephs v. Harris</u>

1 | Corp., 677 F.2d 985, 992 (3d Cir. 1982) ("mere statement by a party that the
2 | interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not
3 | adequate to voice a successful objection."); Walker v. Lakewood Condominium
4 | Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized
5 | objections are inadequate and tantamount to not making any objection at all.").

6 |         To determine whether an interrogatory imposes an "undue burden,"
7 | courts have adopted a "proportionality approach that balances the burden on the
8 | interrogated party against the benefit that having the information would provide to
9 | the party submitting the interrogatory." 8A Wright & Miller, Federal Practice &
10 | Procedure: Federal Rules of Civil Procedure § 2174; see also King v. Georgia Power
11 | Co., 50 F.R.D. 134, 136 (N.D. Ga. 1970) (overruling defendant's objection that
12 | interrogatory was burdensome and oppressive, even though preparation of answer
13 | would be time-consuming and costly, because information was crucial to the issues
14 | of the suit and in exclusive custody of defendant); Seff v. General Outdoor
15 | Advertising Co., 11 F.R.D. 597, 598 (N.D. Ohio 1951) (overruling "overly
16 | burdensome" objection because value of information to plaintiff clearly outweighed
17 | any annoyance or expense involved in disclosure by defendant). Here, as discussed
18 | in further detail below, the information sought by Mattel's interrogatories goes to
19 | core issues in this case and is exclusively within MGA's possession. Mattel's need
20 | to discover MGA's key contentions clearly outweighs any efforts MGA will be
21 | required to undertake to disclose the information in his possession.

22 |         By MGA's reasoning, a defendant may refuse to disclose facts and
23 | other information supporting his own contentions, even though such information is
24 | indisputably available to him (and not to the plaintiff), either because he should only
25 | have to state some of the facts he intends to rely on or because the plaintiff bears the
26 | burden of proof. Such an approach would subvert the Rules and improperly permit
27 | MGA to sandbag Mattel at trial. See Fed. R. Civ. P. 26(b)(1) (parties may "obtain
28 | discovery regarding any nonprivileged matter that is relevant to *any party's* claim or

defense") (emphasis added); see also Wright v. Touhy, 2003 WL 22439864, at *4 (N.D. Ill. 2003) (the Federal Rules "are designed to promote liberal discovery in an effort to narrow the issues for trial and to prevent unfair surprise").  Indeed, belying MGA's complaints here, defendants themselves have propounded interrogatories seeking "all facts" upon Mattel.[42]

Moreover, the Court has previously rejected these objections. Defendants argued precisely these points to Judge Larson when Mattel recently sought leave to serve a supplemental interrogatory, beyond the fifty interrogatory limit, regarding defendants' affirmative defenses.  Defendants claimed that Safeco disapproves Mattel's proposed form of interrogatory.[43]  They claimed that some of their affirmative defenses are "negatives," and that they should not have to state the facts supporting such negative contentions where Mattel bears the burden of proof.[44] They claimed courts disapprove interrogatories which seek all facts, witnesses and documents, like Mattel's.[45]   Judge Larson rejected all of these assertions, and ordered Defendants to answer -- "without objection" -- an interrogatory providing:

> State the facts upon which YOU intend to rely at trial to support YOUR
> affirmative defenses, and IDENTIFY all PERSONS with knowledge of
> those facts and all DOCUMENTS that REFER OR RELATE TO those
> facts.[46]

---

[42]   See Defendant's First Set of Interrogatories Propounded on Plaintiff Mattel, Inc., dated June 14, 2004, Proctor Dec., Exh. 55; MGA's Second Set of Interrogatories to Mattel, Inc. dated December 4, 2007, Proctor Dec., Exh. 56.

[43]   Defendants' Joint Opposition to Mattel's Motion for Leave to Serve a Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated November 19, 2007, at 8, Proctor Dec., Exh. 40.

[44]   Id.

[45]   Id.

[46]   Court's Order, dated December 3, 2007, Proctor Dec., Exh. 38.

1           Just as Judge Larson did not deem it too arduous a task for Defendants

2  to state the facts supporting their affirmative defenses, the Court should compel

3  MGA to completely answer Interrogatory Nos. 30, 31, 32, 33, 34, 35, 36, 37, 38, 42

4  and 50.

5  **VII.**  **MATTEL'S INTERROGATORIES ABOUT MGA'S SEARCHES FOR**

6        **DOCUMENTS AND STORAGE DEVICES CONTAINING EVIDENCE**

7        **OF EARLY WORK ON BRATZ**

8        **A.**        **Interrogatory Nos. 40 and 47**

9  **INTERROGATORY NO. 40:**

10           IDENTIFY each and every STORAGE DEVICE that YOU have used

11  for any purpose which contains or contained DIGITAL INFORMATION that

12  REFERS OR RELATES TO BRATZ prior to January 1, 2002.

13  **RESPONSE TO INTERROGATORY NO. 40:**

14           MGA incorporates by reference its General Response and General

15  Objections above, as though fully set forth herein and specifically incorporates

16  General Objection No. 7 (regarding Definitions), including but not limited to its

17  objections to the definitions of the terms IDENTIFY, REFERS OR RELATES TO

18  and BRATZ, and further objects to this interrogatory on the grounds that it is

19  overbroad, unduly burdensome, vague, and ambiguous both generally and

20  specifically with respect to the terms YOU, STORAGE DEVICE and DIGITAL

21  INFORMATION. MGA further objects to this interrogatory as compound because

22  it contains discrete subparts that require separate, distinct and multiple responses.

23  Specifically, MGA objects to the terms IDENTIFY and STORAGE DEVICE as

24  overbroad and unduly burdensome, as Mattel's definition of this term calls for

25  responses to multiple discrete subparts. For example, Mattel's definition of the term

26  IDENTIFY in the context of this interrogatory would require MGA to provide

27  numerous discrete facts for each STORAGE DEVICE, including:

28           (a)     the individual(s) that use or have used the STORAGE DEVICE;

1      (b)   the current location of the STORAGE DEVICE;

2      (c)   the IDENTITY of the PERSON who possesses the STORAGE

3  DEVICE or if it no longer exists, the date on which it was destroyed or disposed of;

4      (d)   the type of STORAGE DEVICE;

5      (e)   whether the STORAGE DEVICE has ever been copied or

6  imaged (and if so, the current location of each copy or image and the IDENTITY of

7  the PERSONS who possess such copies or image);

8      (f)   the date(s) on which such copies or images were made;

9      (g)   the manufacturer name, brand, model name, model number, and

10  serial number of the STORAGE DEVICE;

11      (h)   the technical specifications and capacities of such STORAGE

12  DEVICE.

13      In addition, Mattel's definition of YOU could be read to require MGA

14  to provide the foregoing information about STORAGE DEVICES belonging to each

15  of the responding parties.

16      MGA also objects to this interrogatory to the extent it seeks

17  information that is not subject to disclosure under any applicable privilege, doctrine

18  or immunity, including without limitation the attorney-client privilege, the work

19  product doctrine, the right of privacy, and all other privileges recognized under the

20  constitutional, statutory or decisional law of the United States of America, the State

21  of California or any other applicable jurisdiction.   MGA further objects to the

22  interrogatory on the ground that it is premature because the invention, creation,

23  conception, or reduction to practice of Bratz (and related issues) will be the subject

24  of expert testimony at trial.  MGA objects to this interrogatory to the extent it seeks

25  to limit the expert testimony that MGA may seek to introduce at trial.  MGA will

26  identify its experts and make related disclosures in accordance with the Court's

27  orders and applicable rule.  MGA further objects to the extent that this interrogatory

28

1   seeks information that is outside of MGA's knowledge and is not in MGA's
2   possession, custody or control.

3          MGA further objects to this interrogatory because Mattel has
4   propounded more than 50 interrogatories.   Under Judge Larson's order of
5   February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case
6   Nos. CV 04-04049-SGL and CV 05-02727]."

7          Subject to and without waiving the foregoing objections, MGA
8   responds as follows:  MGA is willing to meet and confer with Mattel regarding this
9   interrogatory and the obligation of Mattel to supplement its responses to MGA's
10  First Set of Interrogatories.

11  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 40:**

12         MGA incorporates by reference its General Response and General
13  Objections above, as though fully set forth herein and specifically incorporates
14  General Objection No. 7 (regarding Definitions), including but not limited to its
15  objections to the definitions of the terms IDENTIFY, REFERS OR RELATES TO
16  and BRATZ, and further objects to this interrogatory on the grounds that it is
17  overbroad, unduly burdensome, vague and ambiguous both generally and
18  specifically with respect to the terms YOU, STORAGE DEVICE and DIGITAL
19  INFORMATION.  MGA further objects to this interrogatory as compound because
20  it contains discrete subparts that require separate, distinct and multiple responses.
21  Specifically, MGA objects to the terms IDENTIFY and STORAGE DEVICE as
22  overbroad and unduly burdensome, as Mattel's definition of this term calls for
23  responses to multiple discrete subparts.  For example, Mattel's definition of the term
24  IDENTIFY in the context of this interrogatory would require MGA to provide
25  numerous discrete facts for each STORAGE DEVICE, including:

26         (a)   the individual(s) that use or have used the STORAGE DEVICE;
27         (b)   the current location of the STORAGE DEVICE;
28

1        (c)    the IDENTITY of the PERSON who possesses the STORAGE

2  DEVICE or if it no longer exists, the date on which it was destroyed or disposed of;

3        (d)    the type of STORAGE DEVICE;

4        (e)    whether the STORAGE DEVICE has ever been copied or

5  imaged and if so, the current location of each copy or image and the IDENTITY of

6  the PERSONS who possess such copies or image);

7        (f)    the date(s) on which such copies or images were made;

8        (g)    the manufacturer name, brand, model name, model number, and

9  serial number of the STORAGE DEVICE;

10        (h)    the technical specifications and capacities of such STORAGE

11  DEVICE.

12        In addition, Mattel's definition of YOU could be read to require MGA

13  to provide the foregoing information about STORAGE DEVICES belonging to each

14  of the responding parties.

15        MGA also objects to this interrogatory to the extent it seeks

16  information that is not subject to disclosure under any applicable privilege, doctrine

17  or immunity, including without limitation the attorney-client privilege, the work

18  product doctrine, the right of privacy, and all other privileges recognized under the

19  constitutional, statutory or decisional law of the United States of America, the State

20  of California or any other applicable jurisdiction.   MGA further objects to the

21  interrogatory on the ground that it is premature because the invention, creation,

22  conception, or reduction to practice of Bratz (and related issues) will be the subject

23  of expert testimony at trial.   MGA objects to this interrogatory to the extent it seeks

24  to limit the expert testimony that MGA may seek to introduce at trial.   MGA will

25  identify its experts and make related disclosures in accordance with the Court's

26  orders and applicable rule.   MGA further objects to the extent that this interrogatory

27  seeks information that is outside of MGA's knowledge and is not in MGA's

28  possession, custody or control.

1              Subject to and without waiving the foregoing objections; MGA

2  responds as follows:

3              With respect to North America prior to January 1, 2002, MGA

4  maintained several Snap servers in Los Angeles containing mostly graphic art files.

5  The servers are no longer in service but are currently archived at MGA's Southern

6  California facility.  MGA Art Department personnel also used Macintosh desktops

7  and laptops that linked to the snap servers which may have contained files referring

8  to Bratz.  Files created with accounting and other back office software applications

9  were saved on sequel servers located in Los Angeles via an application called "Great

10  Plains."  MGA personnel's emails were located on an exchange server, also housed

11  in Los Angeles.  MGA employees save all company related work files on a file

12  server called the "U Drive," which is also used by MGA Entertainment (HK) Ltd

13  ("MGA Hong Kong") employees.  This Drive is still in production and has been

14  upgraded to a Netapp Storage System.

15              With respect to MGA's offices in Hong Kong prior to January 1, 2002,

16  MGA Hong Kong Art Department personnel utilized Macintosh desktops that linked

17  to a few file servers housed in Hong Kong to store graphic files.  MGA Hong Kong

18  personnel connected to the "Great Plains" sequel server located in Southern

19  California.  MGA Hong Kong maintained its own exchange server in Hong Kong

20  for emails to and from MGA Hong Kong employees.

21  **INTERROGATORY NO. 47:**

22              IDENTIFY each and every SOURCE OF INFORMATION from which

23  YOU have COLLECTED DOCUMENTS in THIS ACTION that REFER OR

24  RELATE TO BRATZ and that also REFER OR RELATE TO the time period prior

25  to February 28, 2001 (regardless of when such DOCUMENT was, in whole or part,

26  created, drafted, generated, sent, received or transmitted).

27

28

**RESPONSE TO INTERROGATORY NO. 47:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including without limitation its objection to the definition of the term "IDENTIFY" insofar as it is used to refer to a "SOURCE OF INFORMATION" and "REFER OR RELATE TO." MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA further objects to the interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome insofar as it could be read to require MGA to search the hundreds of thousands of pages of documents it has produced in this action to "IDENTIFY" each document that "REFERS OR RELATES TO" "BRATZ" and also "REFERS OR RELATES TO" the period prior to February 28, 2000. The Federal Rules of Civil Procedure do not require MGA to conduct such a search.

MGA objects to this interrogatory as compound because it contains discrete subparts that require separate, distinct and multiple response. Specifically, Mattel's definitions of the terms "IDENTIFY" and "SOURCE OF INFORMATION" require MGA to provide separate, distinct, and multiple response. For example, Mattel's definition of the term IDENTIFY in the context of this interrogatory purports to require MGA to provide a multitude of discrete facts for each SOURCE OF INFORMATION, including: (a) the nature of the SOURCE OF INFORMATION; (b) any "unique identifier information" for each SOURCE OF INFORMATION; (c) the SOURCE OF INFORMATION's physical location(s), including full address information and computer network drive information; (d) the

"IDENTITY" of each natural person or individual who is, was or has been associated with each such SOURCE OF INFORMATION; (e) the date(s) on which documents were collected from each SOURCE OF INFORMATION; (f) whether each SOURCE OF INFORMATION contained documents that "REFER OR RELATE TO" "BRATZ" during the time period prior to February 28, 2001; and (g) the IDENTITY of any DOCUMENT. This interrogatory is further compounded by Mattel's definition of "IDENTITY," which purports to require MGA to provide the following information for each of the "natural persons" requested to be identified as part of Mattel's definition of "IDENTIFY," above: (1) the individual's name; (2) any known business title; (3) the current or last known business affiliation; (4) the current or last known residential address; (5) the current or last known business address; (6) the current or last known relationship to MGA; and (7) the current or last known telephone number. Additionally, through Mattel's definition of "YOU," this interrogatory asks for all of the foregoing information about "SOURCES OF INFORMATION" relating to, and searched by, each of the multiple separate responding parties in this litigation. MGA further objects to the extent this interrogatory seeks information that is beyond MGA's personal knowledge and is not in MGA's possession, custody, or control.

MGA objects to this interrogatory because Mattel has propounded more than 50 interrogatories. Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727.]"

Subject to and without waiving the foregoing objections, MGA responds as follows: MGA is willing to meet and confer with Mattel regarding this interrogatory.

**B.**   **MGA's Objections Should Be Overruled And MGA Should Be Compelled To Provide Complete Responses To Interrogatory Nos. 40 And 47**

The information sought by Interrogatory Nos. 40 and 47 is also clearly discoverable.  These interrogatories are designed to test MGA's productions in this litigation and obtain additional responsive documents and information.   Such discovery plainly is proper under the <u>Federal Rules</u>.   <u>See</u> <u>Fed. R. Civ. P.</u> 26(b)(1) (permitting discovery of "any nonprivileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things"); <u>see also</u> <u>Fed. R. Civ. P.</u> 34(a) (permitting a party to serve a request to "inspect, copy, test, or sample" any "electronically stored information . . . stored in any medium from which information can be obtained").

Nevertheless, MGA provided no answer whatsoever for No. 47 and only a partial answer for No. 40.   That partial response lacks most of the information requested by Mattel, including an identification of specific storage devices, the individuals who have used them, the persons who currently possess them, the dates on which they were destroyed or copied (if any), etc.[47]

MGA's limited responses are improper.  The law is clear that access to a party's information storage systems may be granted in appropriate circumstances, including where the party is shown to have improperly withheld relevant documents or information.  <u>See, e.g.</u>, <u>Ameriwood Industries v. Liberman</u>, 2006 WL 3825291, at *1 (E.D. Mo. 2006) (granting motion to compel imaging of defendant's hard drive because the court had "cause to question whether defendants had produced all

---

[47]   <u>See</u> Mattel's Revised Third Set of Interrogatories, dated September 21, 2007, at 8, 13, Proctor Dec., Exh. 7.; MGA Entertainment, Inc.'s Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, dated November 30, 2007, at 59-63, Proctor Dec., Exh. 21.

1   responsive documents"); <u>Simons Prop. Group L.P. v. Simon, Inc.</u>, 194 F.R.D. 639,

2   641 (S.D. Ind. 2000) (allowing plaintiff to inspect defendant's computer system

3   because plaintiff demonstrated "troubling discrepancies with respect to defendant's

4   document production"); <u>Playboy Enterprises, Inc. v. Welles</u>, 60 F. Supp. 2d 1050,

5   1054 (S.D. Cal. 1999) (allowing access to party's computer system where party had

6   systematically deleted e-mails after litigation commenced).  Interrogatory Nos. 40

7   and 47 are directed at precisely this issue.  Interrogatory No. 47 asks MGA to

8   identify the sources of information -- i.e., the media -- from which he has collected

9   documents relating to Bratz and the period prior to February 28, 2001, a key early

10  time period.  By identifying such information, Mattel will be able to discover what

11  sources MGA has examined to produce the key documents in this case, and perhaps

12  more important, the sources MGA has <u>not</u> examined.[48]  That is legitimate discovery.

13  Interrogatory No. 40, which seeks the identification of the storage devices MGA has

14  used that contain early Bratz-related information, is also legitimate discovery

15  because Mattel may have a right to access such storage devices.  The information

16  requested by Mattel is necessary to determine whether MGA has withheld

17  responsive documents and to enable Mattel to obtain such documents. MGA has not

18  articulated valid objections to these interrogatories, nor can it.  <u>See Roesberg</u>, 85

19  F.R.D. at 296-97 (objecting party has the burden of proving the interrogatory

20  improper).  MGA's objections should be overruled and complete responses should

21  be ordered.

22

23

---

24  [48]   <u>See</u> Mattel's Fifth Set of Interrogatories, dated October 19, 2007, at 6-7

25  (defining scope of Interrogatory No. 47 to include not only sources of information from which MGA has produced documents, but also any source MGA has collected,

26  reviewed, requested, sought, looked for, searched for or analyzed), Proctor Dec., Exh. 10; <u>see id.</u> at 7 (requiring MGA to state whether "each such SOURCE OF

27  INFORMATION contained or included DOCUMENTS that REFER OR RELATE

28  TO BRATZ and the time period prior to February 28, 2001").

During the meet and confer process, MGA proposed that the parties exchange what MGA called "source logs" regarding the entirety of their productions in lieu of MGA's provision of a response to Interrogatory Nos. 40 and 47.[49] According to MGA's proposal, these "source logs" would provide certain information for every document provided by MGA, including each document's Bates number, the identity of the individual who created the document and the location where the document was located by MGA.[50] However, as Mattel pointed out, these interrogatories do not request source information for every document in the case, and instead seek information only about key early Bratz documents. In addition, the interrogatories seek additional information MGA proposes not be included on the "source logs."[51] For example, Interrogatory No. 40 seeks the identification of all storage devices used by MGA to store relevant documents. Such information would not be contained in MGA's proposed "source log," which by definition would only provide the locations of documents actually produced by MGA. It thus would not reveal sources that contain early Bratz documents that MGA has not produced documents from.  The proposed a "source log" is not an adequate substitute for answering the interrogatories as it would do little to show Mattel where MGA looked for documents, as well as where MGA failed to look, and would do even less to identify storage devices.

---

[49]   Letter from Proctor to Miller, dated December 13, 2007, at 3-4, Proctor Dec., Exh. 5.
[50]   Id.
[51]   Id.

1 **VIII. MATTEL'S         INTERROGATORY         REGARDING         MGA'S**
2 **SUBSTITUTION OF COUNSEL**
3     **A.**    **Interrogatory No. 46**
4 **INTERROGATORY NO. 46:**
5     Without disclosing the content of communications which are protected
6 by the attorney-client privilege, state fully and in detail all facts which REFER OR
7 RELATE TO any dispute relating to THIS ACTION between, on the one hand,
8 MGA, LARIAN, BRYANT and/or MACHADO and, on the other hand,
9 O'MELVENY and/or CHRISTENSEN, including but not limited to any and all
10 disputes which were or have been asserted as a basis for, or which underlie,
11 contributed to or were a factor in, the withdrawal, termination and/or substitution of
12 O'MELVENY and/or CHRISTENSEN as counsel of record in this ACTION, and
13 IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that
14 REFER OR RELATE TO such facts.
15 **RESPONSE TO INTERROGATORY NO. 46:**
16     MGA incorporates by reference its General Response and General
17 Objections above, as though fully set forth herein and specifically incorporates
18 General Objection No. 7 (regarding Definitions), including but not limited to its
19 objections to the definitions of the terms "IDENTIFY" and "REFER OR RELATE
20 TO. MGA also objects to this interrogatory to the extent it seeks information that is
21 not subject to disclosure under any applicable privilege, doctrine or immunity,
22 including without limitation the attorney-client privilege, the work product doctrine,
23 the right of privacy, and all other privileges recognized under the constitutional,
24 statutory or decisional law of the United States of America, the State of California
25 or any other applicable jurisdiction. MGA further objects to this interrogatory on
26 the grounds that it is compound, vague, ambiguous and overly broad in that it seeks
27 disclosure of "facts" that "REFER OR RELATE TO" a "dispute" between certain
28 parties and their former counsel without any reference to the claims or defenses in

1 | this action.   MGA also objects to the extent that this interrogatory requests that

2 | MGA "state ... *all* facts ..   IDENTIFY *all* PERSONS ... and *all* DOCUMENTS"

3 | (emphasis added).   MGA further objects to this interrogatory as oppressive and

4 | harassing in that it seeks information not relevant to the claims or defenses of any

5 | party to this action and not reasonably calculated to lead to the discovery of

6 | admissible evidence.

7 | MGA objects to this interrogatory because Mattel has propounded more

8 | than 50 interrogatories.   Under Judge Larson's order of February 22, 2007,

9 | "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

10 | SGL and CV 05-02727]."

11 | Based on these objections, MGA will not respond further to this

12 | interrogatory.

13 | **B.**    <u>**MGA's Objections Should Be Overruled And MGA Should Be**</u>

14 | <u>**Compelled To Provide A Complete Response To Interrogatory**</u>

15 | <u>**No. 46**</u>

16 | MGA refuses to provide any response to Interrogatory No. 46, which

17 | calls for the "facts" relating to the dispute regarding this litigation between MGA

18 | and its former counsel.   During the meet and confer process, counsel for MGA

19 | refused to supplement this answer, asserting that "all" of the information called for

20 | is protected by the attorney-client privilege.[52]   That argument is not tenable.

21 | By its terms, Interrogatory No. 46 is limited to matters not protected by

22 | the attorney-client privilege and calls only for the revelation of non-privileged *facts*.

23 | In light of the terms of the interrogatory, MGA's purported basis for refusing to

24 | respond is baseless.   In general, neither the attorney-client privilege nor the work

25 |

26 |

27 | [52]   Letter from Proctor to Miller, dated December 13, 2007, at 3, Proctor Dec.,

28 | Exh. 5.

1  product doctrine protects *facts*, as the Court held.[53]  The protection of the attorney-
2  client privilege extends only to communications; it does not extend to the facts
3  underlying privileged communications.  Upjohn Co. v. United States, 449 U.S. 383,
4  390 (1981); see also In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir.
5  2002) (the party asserting the privilege has the burden of establishing that the
6  privilege applies).  In addition, "courts have consistently held that the work-product
7  concept furnished no shield to discovery...*of the facts* that the adverse party's lawyer
8  has learned, or the persons from whom he has learned such facts, or the existence or
9  non-existence of documents, even though such documents themselves may not be
10  subject to discovery."  Nutmeg Insurance Co. v. Atwell, Vogel & Sterling, et al.,
11  120 F.R.D. 504, 509 (W.D. La. 1988) (citing 8 Wright & Miller, Federal Practice &
12  Procedure, § 2023, at 194 (1970) (emphasis added); Garcia v. City of El Centro, 214
13  F.R.D. 587, 591 (S.D. Cal. 2003) ("[B]ecause the work product doctrine is intended
14  only to guard against divulging the attorney's strategies and legal impressions, it
15  does not protect *facts* concerning the creation of work product or *facts* contained
16  within work product.") (emphasis added).  MGA's blanket privilege objection is
17  improper.

18       Further belying MGA's contentions, Mr. Larian and MGA's counsel
19  have discussed this matter in the press.  For example, in a November 2, 2007 article
20  published on Law.com, both Larian and MGA's counsel made statements about
21  what they claimed to be the crux of the dispute that led to a substitution of counsel.[54]
22  Larian stated that the substitution of counsel was due in part to the fact that
23  "O'Melveny was pushing for [one of its attorneys] to come in as new trial counsel in
24

25  [53]  E.g., Order Granting Mattel's Motion for an Extension of Time to Depose
26  Paula Garcia in her Individual Capacity and as a 30(b)(6) Designee; Denying
   Request for Sanctions, dated August 14, 2007, at 12-13, Proctor Dec., Exh. 50.
27  [54]  Article entitled Behind the Scenes, Bratz Doll Case Heats Up, published on
28  Law.com on November 11, 2007, Proctor Dec., Exh. 53.

this case, and we decided against that," and that "[MGA] decided to go with Skadden and Tom Nolan."[55]  In the same article, Mr. Nolan stated that "Patty Glaser agreed that the matter should be handled by one firm."[56]  Thus, MGA has already intentionally disclosed to the public what it claims are the facts underlying MGA's dispute with its former counsel.  Assuming this information ever were privileged, it has now been waived.

The facts sought by this interrogatory clearly are discoverable and relevant.  In its application to the Court regarding its withdrawal, the O'Melveny firm cited <u>California Rule of Professional Conduct</u> 3-700(c) as a basis for its withdrawal,[57] but did not clarify which of the eleven prongs of that section applied. If, to take one of many possible examples, O'Melveny attempted to withdraw because MGA was seeking "to pursue an illegal course of conduct" or "insist[ed] that the member pursue a course of conduct that is illegal or that is prohibited under these rules or the State Bar Act," such information would be both non-privileged and highly relevant to Mattel's case.  If O'Melveny attempted to withdraw because MGA sought to provide false testimony, that would be relevant and non-privileged. Because they clearly can reveal relevant, non-privileged information that in fairness an opposing party should have access to, Courts grant disclosure of the facts relating to counsel's withdrawal in appropriate cases.  <u>See</u>, <u>e.g.</u>, <u>George v. Siemens Indus. Automation, Inc.</u>, 182 F.R.D. 134, 142 (D.N.J. 1998) (following motion to withdraw, *sua sponte* granting defendant access to language in attorney's *in camera* declaration discussing plaintiff's mental state where her psychological condition was relevant to the suit and the facts in the declaration were not privileged); <u>Blowers v.</u>

---

[55]  <u>Id.</u>
[56]  <u>Id.</u>
[57]  *Ex Parte* Application of O'Melveny & Myers LLP for Order Shortening Time for Hearing Its Motion to Withdraw and Requiring *In Camera* Inspection of Supporting Documents, dated October 8, 2007, at 1, Proctor Dec., Exh. 51.

1  Lawyers Co-op. Pub. Co., 1982 WL 221, *5 (W.D.N.Y. 1982) (granting motion to

2  obtain transcript of *in camera* proceedings related to motion to withdraw as counsel

3  where discussion involved non-privileged fee arrangements).  This is such a case.

4  MGA should be compelled to provide a full and complete answer to Interrogatory

5  No. 39 that will disclose relevant, non-privileged facts.  MGA should be compelled

6  to provide a full and complete answer to Interrogatory No. 39 that will disclose

7  relevant, non-privileged facts.

8

9  DATED:  December 20, 2007          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
10

11                                    By /s/ B. Dylan Proctor
                                         B. Dylan Proctor
12                                       Attorneys for Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28