KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                              Plaintiff,<br><br>        v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>                              Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)<br><br>**DECLARATION OF MICHAEL H. PAGE IN SUPPORT OF CARTER BRYANT'S OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY AND OBJECTIONS TO DISCOVERY MASTER ORDER OF SEPTEMBER 28, 2007**<br><br>Date:      January 7, 2007<br>Time:      10:00 AM<br>Dept:      Courtroom 1<br>Judge:    Hon. Stephen G. Larson<br><br>Date Comp. Filed:  April 13, 2005<br><br>Discovery Cut-Off: Jan. 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

DECLARATION OF MICHAEL H. PAGE IN SUPPORT OF CARTER BRYANT'S OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY AND OBJECTIONS TO DISCOVERY MASTER ORDER OF SEPTEMBER 28, 2007
CASE NO. CV 04-09049 SGL (RNBx)

408189.01

# Exhibit 1

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Plaintiff and Cross-
   Defendant Mattel, Inc.

9

10                UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13   CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

14             Plaintiff,                 Consolidated with
                                          Case No. CV 04-09059
15        vs.                             Case No. CV 05-02727

16   MATTEL, INC., a Delaware             **DISCOVERY MATTER**
17   corporation,
                                          **[To Be Heard By Discovery Master**
18             Defendant.                 **Hon. Edward Infante (Ret.) Pursuant**
                                          **to the Court's Order of December 6,**
19  _____      **2006]**

20   AND CONSOLIDATED ACTIONS            NOTICE OF MOTION AND MOTION
                                          OF PLAINTIFF MATTEL, INC. TO
21                                        OVERRULE INSTRUCTIONS NOT
                                          TO ANSWER DURING THE
22                                        DEPOSITION OF CARTER BRYANT,
                                          TO COMPEL BRYANT TO ANSWER
23                                        THOSE QUESTIONS, AND FOR
                                          SANCTIONS; AND MEMORANDUM
24                                        OF POINTS AND AUTHORITIES

25                                        Date:  TBA
                                          Time:  TBA
26                                        Place: TBA

27                                        Discovery Cut-Off: None Set
                                          Pre-Trial Conference: None Set
28                                        Trial Date:  None Set

7209/2045960.5

MATTEL'S MOTION TO COMPEL RE BRYANT DEPOSITION

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that, at a telephonic conference before

3 Discovery Master Hon. Edward Infante (Ret.), that will occur on a date and at a time

4 to be set by Judge Infante, Mattel, Inc. will, and hereby does, move the Court,

5 pursuant to <u>Federal Rules of Civil Procedure</u> 30(d)(3) and 37, for an order

6 overruling Carter Bryant's counsel's improper instructions not to answer during

7 Bryant's deposition, to compel Bryant to answer those questions, and for sanctions

8 against Bryant and MGA. This Motion is made on the grounds that Bryant's counsel

9 did not have a proper basis for his instructions not to answer; and, together with

10 Bryant's counsel's lengthy speaking objections, interruptions of Bryant in the middle

11 of his answers, taking Bryant out of the room in the middle of deposition, and

12 unilaterally terminating the deposition, Bryant's counsel prevented a fair

13 examination and unreasonably delayed the deposition. MGA's counsel engaged in

14 similar, improper conduct.

15         This motion shall be heard by the Honorable Edward Infante,

16 Discovery Master. The parties met and conferred on February 18, 2005, and times

17 thereafter regarding the issues set forth in this motion.

18         This Motion is based on this Notice of Motion and Motion, the

19 accompanying Memorandum of Points and Authorities, the Declaration of Michael

20 T. Zeller filed concurrently herewith, the Separate Statement filed concurrently

21 herewith, the [Proposed] Order filed concurrently herewith, the records and files of

22 this Court, and all other matters of which the Court may take judicial notice.

23

24 DATED: February 1, 2007       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

25

26                  By _____

27                     Michael T. Zeller
                    Attorneys for Plaintiff and Cross-Defendant

28                     Mattel, Inc.

MATTEL'S MOTION TO COMPEL RE BRYANT DEPOSITION

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................. 2

      1.   Bryant Refused To Appear For Deposition For Almost Five Months. ...................................................................... 2

      2.   Once Bryant Belatedly Appeared For Deposition, Counsel For Bryant and MGA Obstructed It. ............................... 3

            (a)   Bryant's counsel relied on improper privilege instructions. ...................................................... 4

            (b)   Bryant's counsel relied on improper non-privilege instructions. ...................................................... 7

            (c)   Bryant's counsel otherwise abused the discovery process. ................................................................ 8

            (d)   MGA's counsel also abused the discovery process. ........ 13

ARGUMENT ...................................................................................................... 18

I.   THE VAST MAJORITY OF BRYANT'S COUNSEL'S INSTRUCTIONS NOT TO ANSWER WERE IMPROPER. ....................... 18

   A.   Bryant's Counsel Asserted Privilege Instructions Not To Answer Questions Seeking Non-Privileged Information. .................................... 18

      1.   Bryant's Business Negotiations With MGA. ............................. 19

      2.   Bryant's Own Understanding Of What Is True. ......................... 19

      3.   Bryant's Preparation For Testimony. ...................................... 20

      4.   Whether Bryant Spoke To Counsel During Recesses. ............... 21

   B.   Bryant's Counsel Asserted A Joint Defense Privilege Where None Exists. ................................................................... 21

   C.   The Instructions Based On Non-Privilege Objections Should Be Overruled. ................................................................... 23

      1.   Confidentiality. .................................................................. 23

      2.   Instructions Regarding Bryant's Income From "Bratz." ............ 23

3.    Third-party Privacy...................................................................24

4.    "Asked and Answered" Instructions.........................................24

5.    "Legal Conclusion" Instructions..............................................25

II.    OTHER IMPROPER CONDUCT DURING DEPOSITION.........................25

III.    REQUEST FOR SANCTIONS....................................................................26

CONCLUSION.............................................................................................................27

7209/2045960.5

-ii-

## **TABLE OF AUTHORITIES**

**Page**

### **CASES**

Baxter Travenol Labs., Inc. v. Abbott Labs,
    117 F.R.D. 119 (N.D. Ill. 1987).................................................21

Clady v. County of Los Angeles,
    770 F.2d 1421 (9th Cir. 1985)...................................................19

Clarke v. American Commerce Nat'l Bank,
    974 F.2d 127 (9th Cir. 1992)..............................................18, 22

Cobell v. Norton,
    213 F.R.D. 16 (D. D.C. 2003)...................................................24

Damaj v. Farmers Insurance Co.,
    164 F.R.D. 559 (N.D. Okl. 1995)..............................................26

Durkin v. Shields (In Re Imperial Corp. of Am.),
    167 F.R.D. 447 (S.D. Cal.1995).................................................21

Griffith v. Davis,
    161 F.R.D. 687 (C.D. Cal. 1995)................................................19

Hall v. Cliffton Precision, A Division of Litton Systems, Inc.,
    150 F.R.D. 525 (E.D. Pa. 1993).................................................26

In re Grand Jury Subpoenas,
    803 F.2d 493 (9th Cir. 1986).....................................................22

Johnson v. Wayne Manor Apartments,
    152 F.R.D. 56 (E.D. Pa. 1993)...................................................25

Manufacturing Systems, Inc. of Milwaukee v. Computer Technology, Inc.,
    99 F.R.D. 335 (E.D. Wis. 1983).................................................19

Marx v. Kelly, Hart & Hallman, P.C.,
    929 F.2d 8 (1st Cir. 1991) ........................................................21

Matter of Bevill, Bresler & Schulman Asset Management Corp.,
    805 F.2d 120 (3d Cir. 1986).....................................................21

Nacional De Credito v. Bank of America N.T. & S.A.,
    11 F.R.D. 497 (N.D. Cal. 1951).................................................27

Nutmeg Ins. Co. v. Atwell, Vogel & Sterling,
    120 F.R.D. 504 (W.D. La. 1988) ..............................................27

Potter v. United States,
    2002 WL 31409613, at *6 (S.D. Cal. July 26, 2002).....................19

7209/2045960.5

Southern Union Co. v. Southwest Gas Corp.,
    205 F.R.D. 542 (D. Ariz. 2002) ..................................................................19

U.S. v. Friedman,
    445 F.2d 1076 (9th Cir. 1971) ...................................................................18

U.S. v. Munoz,
    233 F.3d 1117 (9th Cir. 2000) ..............................................................18, 21

United States Ex. Rel. Bagley v. TRW, Inc.,
    212 F.R.D. 554 (C.D. Cal. 2003) ..............................................................20

United States v. Blackman,
    72 F.3d 1418 (9th Cir. 1995) .....................................................................22

Waller v. Fin. Corp.,
    828 F.2d 579 (9th Cir. 1987) .....................................................................22

Winchester Capital Management Co., Inc. v. Manufacturers Hanover Trust
Co.,
    144 F.R.D. 170 (D. Mass. 1992) ................................................................19

## **STATUTES**

Cal. Evid. Code § 952..........................................................................................18

Fed. R. Civ. P. 30(d)(3) .......................................................................................27

Fed. R. Civ. P. 30(d)(4) .......................................................................................23

Fed. Rules Evid. § 612.........................................................................................20

Federal Rule of Civil Procedure 30(d)(1).............................................1, 23, 24, 26

MATTEL'S MOTION TO COMPEL RE BRYANT DEPOSITION

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The Discovery Master's should (1) overrule numerous improper instructions not to answer that Carter Bryant's counsel, Doug Wickham, asserted during Bryant's deposition, and compel Bryant to answer those questions; and (2) impose sanctions for the improper conduct of Bryant's and MGA's counsel at the deposition, which included instances of explicit coaching that influenced the witness's testimony.

Bryant first appeared for deposition on November 4, 2004. He did so only after more than five months of refusals and broken promises to appear. To avoid a Mattel motion to compel Bryant's deposition, his counsel even gave their "word as attorneys" that he would appear for deposition on a date certain, only to renege at the last minute. Mattel had to obtain two Court Orders compelling Bryant to sit for deposition before he appeared.

Once Bryant finally appeared, Bryant's counsel repeatedly thwarted a fair examination of Bryant. He instructed Bryant not to answer questions on ninety-seven separate occasions, only a handful of which were legitimate privilege-based instructions. For example, Bryant's counsel asserted the attorney-client privilege with respect to communications in 2000 and 2001 between Bryant and *agents of MGA* who were not his legal counsel. Indeed, at the time they were *adverse to each other* and engaged in contract negotiations. Contravening Federal Rule of Civil Procedure 30(d)(1), Bryant's counsel also instructed Bryant not to answer based on non-privilege objections such as "asked and answered" and "calls for speculation."

Bryant's counsel also engaged in lengthy narrative objections that suggested answers to questions, used gestures and speeches to interrupt Bryant in the middle of his responses, and took Bryant out of the room while questions were pending. In one particularly egregious example, counsel for Mattel, John Quinn, asked Bryant about a conversation he had with *MGA's* counsel during 2000 and

-1-

1  2001 when negotiating over "Bratz."  Not only did Bryant's counsel instruct Bryant
2  not to answer based on a non-existent attorney-client privilege, but he also insisted
3  on taking Bryant out of the room with the question pending, based on claims that
4  Bryant was "tired" and the purported need to confer.  When Mr. Bryant returned, he
5  volunteered a "clarification" of his prior answers by retracting them.

6       MGA's counsel, Dale Cendali, also prevented a fair examination.
7  MGA was not even a party to the litigation at the time of Bryant's deposition, and its
8  counsel was present solely for the purpose of protecting MGA's alleged trade
9  secrets.  Still, Ms. Cendali interposed over four hundred objections throughout the
10  deposition, many of them suggestive speaking objections.

11       Bryant's counsel's improper instructions at the deposition, a separate list
12  of which is included in the [Proposed] Order filed concurrently, should be overruled.
13  Bryant and MGA also should be sanctioned, including at a minimum by being
14  required to reimburse Mattel for its expenses incurred to obtain this ruling, and to
15  pay for the costs and fees that Mattel will have to incur in further deposing Bryant to
16  obtain the answers Mattel was improperly denied at deposition.

### Background

1.  ### Bryant Refused To Appear For Deposition For Almost Five Months.

20       Mattel served its first Notice of Deposition for Bryant on June 17,
21  2004.[1]  Bryant then engaged in a series of delay tactics.  Bryant first filed an
22  unsuccessful *ex parte* application to stay all discovery.[2]  He then refused to meet and
23  confer within required time limits, forcing Mattel to prepare and serve its portions of
24  a joint stipulation under the Local Rules to compel the deposition.[3]  Bryant's counsel

---

[1]  Declaration of Michael T. Zeller filed concurrently herewith, ¶ 2, Exh. 1.
[2]  Id., ¶ 3, Exh. 2.
[3]  Id., ¶ 4, Exh. 3.

1  finally agreed to meet and convinced Mattel not to file a motion to compel, based on

2  their "word as attorneys" that Bryant would appear on a specific date in August in

3  St. Louis.[4]  Two business days before the scheduled deposition in St. Louis, Bryant's

4  counsel reneged and Bryant refused to appear.[5]  After a second Notice of

5  Deposition, Bryant refused to appear even in his home town of Springfield,

6  Missouri.[6]  Finally, Mattel had no choice but to file a motion to compel, which was

7  granted.[7]  The Court's Order was still not sufficient for Bryant to appear, however,

8  and Mattel thus brought an *ex parte* motion to enforce the first Order compelling

9  Bryant to appear, which the Court granted and again ordered Bryant to sit for

10  deposition.[8]

11        **2.**    **Once Bryant Belatedly Appeared For Deposition, Counsel**

12                    **For Bryant and MGA Obstructed It.**

13        Bryant finally appeared for deposition on November 4, 2004.  As

14  further described below, during the three days of deposition that followed, Bryant's

15  counsel instructed him not to answer without a proper basis on sixty-seven separate

16  questions.[9]  Bryant's counsel also engaged in lengthy and suggestive speaking

17  objections, interrupting the witness mid-sentence, and taking him out of the room

18

19

20

21     [4]  Id., ¶¶ 5-7, Exhs. 5, 6.

22     [5]  Id., ¶ 8.

23     [6]  Id., ¶¶ 9-10, Exhs. 7-9.
   [7]  Id., ¶¶ 11-12, Exhs. 10-11.

24     [8]  Id., ¶ 13, Exh. 11.

25     [9]  See Mattel's Separate Statement in support of this Motion, filed concurrently
herewith, for a list of each instruction at issue.  For each instruction, the Separate

26  Statement includes the questions at issue, the instructions and counsel colloquy.

27

28

1  with questions pending.[10]  MGA's counsel likewise engaged in repeated

2  obstructionist tactics, including through lengthy, suggestive "objections."[11]

3         (a)    **Bryant's counsel relied on improper privilege**

4               **instructions.**

5        Most of Bryant's counsel's instructions not to answer that were

6  purportedly based on the attorney-client and/or joint defense privileges were

7  asserted in connection with questions that did not ask for the substance of

8  communications between attorney and client.  For example, one recurring privilege

9  instruction came after "yes" or "no" questions about whom Bryant spoke with

10  during unscheduled recesses, including those Bryant's counsel took while there were

11  pending questions.  For example:

12      Q  (By Mr. Quinn)  Okay.  Mr. Bryant, at your request we
    just took a break?

13  

14      A  Yes.

15      Q  And during the break did you speak with your
    counsel?

16      MR. WICKHAM:  Objection, attorney-client privilege and
    instruct my witness not to respond.

17  

18      MR. QUINN:  It just calls for a yes or no answer.  It
    doesn't call for the disclosure of any communication.

19      MR. WICKHAM:  I'm happy to meet and confer with you
    on this issue at some other point in time.  I'm instructing

20      the witness not to respond.  I request that you please
    proceed.[12]

21  

22  

23  

24  

25     [10]  Zeller Decl., ¶ 14, Exh. 12 (Bryant Depo.) at 124:4-124:24; 187:17-190:1;
478:22-480:7; 703:5-703:22.

26     [11]  See infra note 33 and accompanying text.

27     [12]  Id. at 17:21-18:8; see also id. at 18:15-18:19, 18:20-19:21; 53:9-53:13; 125:7-
11.

28

1  With respect to the joint defense privilege, Bryant not only admitted that he did not

2  have an attorney-client relationship with MGA's counsel,[13] but Bryant's counsel did

3  not allow Bryant to answer "yes" or "no" to questions such as whether he had a joint

4  defense agreement with MGA or if MGA was paying his attorneys fees.[14]

5           Bryant's counsel also used a "privilege" pretext to instruct Bryant not to

6  answer questions about his and his attorney's communications with agents of MGA

7  during 2000 and 2001, *a time when Bryant and MGA were opposite parties in*

8  *business negotiations*:

9           Q  After you got this agreement on or about
             September 18th from MGA, the draft agreement, what was
10           the next thing that happened with respect to the Bratz
             project?

11
             A  Are you talking about when I got the agreement on the
12           18th or are you talking about when I signed the
             agreement?

13
             Q  Talking about when you got it on the 18th, and I'm
14           trying to find out what's the next thing that happened.

15           A  I think the next thing that happened were some
             negotiations between the lawyers.

16
             Q  Were you ever present when any of those negotiations
17           took place?

18           A  No.

19           Q  And we know who your lawyer was.  Ms. Wang.

20           A  Yes.

21           Q  And do you recall who the lawyer was who was
             representing MGA?

22
             A  I don't.

23
             Q  Did you ever participate in a telephone call where the
24           lawyers were talking to each other?

25  _____

26  [13]  Id. at 18:20 - 19:21.
27  [14]  Id. at 19:22-20:1; 20:2-20:21; 20:22-21:2; 21:8-21:12; see also 18:15-19,
    18:20-19:21, 53:9-53:13, 59:2-59:9; 59:10-59:17; 60:1-61:1; 99:12-99:22.
28

1      A  No, I did not.

2      Q  But the -- is it -- was the upshot of those discussions
3      between the lawyers that there was a new version of the agreement arrived at?

4      MR. WICKHAM:  Objection, attorney-client privilege, instruct the witness not to respond.
5

6      Q  (By Mr. Quinn)  After the lawyers talked was there a new version of the agreement that was created?

7      MR. WICKHAM:  You know, you've asked and answered that question about 14 different times.  I think at this point
8      in time it's getting harassing and burdensome.  I'll instruct the witness not to respond.[15]

9

10 In fact, Bryant's counsel generally instructed Bryant not to answer any questions

11 about his relationship with MGA, even when the questions did not ask for the

12 substance of any privileged communication:

13      Q  Is it true that you consulted a lawyer before you first showed your Bratz idea to the folks at MGA?
14

15      A  Yes.

16      . . .

     Q  And did the lawyer help you come up with some type
17      of an agreement?

18      MR. WICKHAM:  Objection.  Currently I'll interpose an attorney-client privilege and instruct the witness not to
19      respond. . . .[16]

20      Another area where Bryant's counsel invariably asserted a privilege

21 instruction was Bryant's understanding of the transactions he entered into with

22 Mattel and MGA before this litigation arose.  Bryant's counsel instructed Bryant not

23 to answer as to anything he learned from Bryant's attorney during his negotiations

24

25 _____

26    [15] Id. at 204:16-205:21;  see also id. at 478:22-480:7, 481:14-482:1.
27    [16] Id. at 41:2-42:18 ; see also id. at 184:17-190:1, 186:3-187:10, 215:13-216:8; 622:24-624:6; 476:9-476:24.

28

1   with MGA.[17]  While Mattel does not, in general, have an issue with a witness not

2   disclosing information known to him solely as a result of attorney-client

3   communications, Bryant's counsel's instructions went further to encompass

4   questions that expressly *excluded* knowledge that came from attorneys[18] and that did

5   not ask to reveal the substance of any privileged communication.[19]  For example:

> Q:  You said that in the MGA agreement there were some
> things that you had hoped that maybe you could negotiate
> out?
>
> . . . .
>
> A:   I said that that there were some things that I had
> hoped to have changed.
>
> Q:  And what were those things?
>
> Bryant's counsel:  I object and instruct on attorney-client
> privilege to the extent that these are matters that are the
> subject of advice that he had had with Ms. Wang.  I'll be
> happy to meet and confer on this issue, and if the matters
> were disclosed, discussed outside of a privileged context,
> then I'll remove the instruction, but for the time being I'll
> be instructing not to respond.[20]

16   Finally, Bryant's counsel asserted the attorney-client privilege to prevent Bryant

17   from answering "yes" or "no" to questions whether in some of his other answers he

18   had withheld information based on Bryant's counsel's instructions.[21]

### (b)    Bryant's counsel relied on improper non-privilege instructions.

21          Bryant's counsel did not just resort to privilege objections to instruct

22   Bryant not to answer.  He also used "asked and answered,"[22] the alleged privacy of a

---

[17]  See, e.g., id. at 461:24-463:21; 465:9-465:16; 466:16-466:24; 467:4-468:7; 476:25-477:9; 478:1-478:21; 621:6-622:5; 677:10-677:22.

[18]  Id. at 22:6-22:18; 471:2-473:7; 623:14-624:6.

[19]  Id. at 640:15-641:6; 641:20-642:5; 642:22-643:5; 654:14-654:25.

[20]  Id. at 250:22-251:16.

[21]  Id. at 63:21 - 64:16; see also 100:16-101:18; 648:3-654:13; 654:14-654:25.

MATTEL'S MOTION TO COMPEL RE BRYANT DEPOSITION

7209/2045960.5

1    third party,[23] "calling for a legal conclusion,"[24] "confidentiality" (even though there

2    is a protective order in place in this action),[25] and calling for speculation and expert

3    testimony.[26]

### (c)    Bryant's counsel otherwise abused the discovery process.

6          On at least four separate occasions, Bryant's counsel took Bryant out of

7    the room when a question was pending.[27]  Bryant's counsel then instructed Bryant

8    not to testify whether he spoke to his or MGA's counsel during the break.[28]

9          Within minutes of the start of the deposition, Bryant's counsel also

10    started interrupting Bryant in the middle of his answers:

> Q   And I had asked you before whether that ever occurred to you and you said no, and I -- then I said to this day is it true that that never occurred to you, and your counsel said, well, in answering just leave out anything your lawyers have told you.
>
> A   Well -- I'm sorry.  No, it hadn't occurred to me because --
>
> MR. WICKHAM:  You've answered.
>
> MR. QUINN:  Let him -- no.  Let him finish.  You really should not raise your hand like that and cut a witness off when he's answering the question.
>
> MR. WICKHAM:  Counsel, when the witness has answered the question, he's answered the question.[29]

---

[22]    Id., Ex. 12 (Bryant Depo.) at 24:13 - 24:19; 130:3-9; 130:10-13; 138:24-139:11; 205:16-205:21; 253:9-253:17; 445:17-447:22; 447:23-450:10; 450:11-451:19; 471:2-473:7; 598:7-599:13; 599:14-600:7; 641:7-641:18; 654:14-654:25.

[23]    Id. at 45:25 - 46:9.

[24]    Id. at 565:18-566:3; 566:12-566:25.

[25]    Id. at 249:7-19.

[26]    Id. at 111:21-113:12; 705:21-706:10.

[27]    See supra note 10.

[28]    See supra note 12.

[29]    Zeller Decl., Ex. 12 (Bryant Depo.) at 23:16-24:8; see also 125:12-130:2.

1    Bryant's counsel also used lengthy speaking objections throughout the

2  deposition. For example, again within minutes of the start of the deposition,

3  Mr. Quinn asked Bryant: "in your understanding of your agreement with Mattel that

4  you had while you worked at Mattel, was it acceptable for you to work for a

5  competitor while you were employed by Mattel?"[30]  Before Bryant could answer,

6  Bryant's counsel offered a speech that suggested a response for the witness:

7         MR. WICKHAM: Counsel, your continued reference to
         an agreement is the subject of the witness's -- of
8         Mr. Bryant's cross-complaint where he is making a
         number of different claims challenging the document that
9         purports to be an agreement, Number 1, and, Number 2,
         that there were a number of different pieces of paper over
10        the course of his --

11        MR. QUINN: Is this an objection or is this just a speech?

12        MR. WICKHAM: -- two terms of employment with
         Mattel, so I would ask that you be more specific. You
13        vaguely refer to an agreement without identifying what it
         is that you're referring to.
14
         Q  (By Mr. Quinn) I'm going to stick with my question.
15        In your understanding, sir, under any of the agreements
         that you've had with Mattel at any time, was it acceptable
16        for you to do work for a competitor while you were
         employed by Mattel?
17
         MR. WICKHAM: Okay. Objection, calls for a legal
18        conclusion, overbroad, lacks foundation. Counsel has
         refused to be more specific as to what it is that he is
19        referring to, so he's vaguely asserting whatever that you
         have information of from 1995 through 2000.[31]
20

21  After the objections, Bryant responded to the question saying "I'm not sure what

22  contract you're referring to. . . ."[32]

23    Bryant's counsel also repeatedly relied on speaking objections to

24  declare that Bryant's sole understanding of his agreements with MGA could have

25  _____

26  [30]  Id. at 25:11-17.
27  [31]  Id. at 25:18-26:15.
     [32]  Id. at 26:17-18.
28

07209/2045960.5

1   "only" come from talking to his attorneys and then used that as a purported basis to

2   instruct even one question that asked Bryant *if* he had an understanding *apart from*

3   his communications with counsel:

    Q  Did you -- I mean, apart from anything any lawyer told you, did you have any understanding back in 2000 about what an irrevocable assignment was?

    MR. WICKHAM:  Okay.  Asked and answered.  You've already asked about this paragraph extensively and he's indicated that his sole understanding of this paragraph dealt with what he was -- information that he had obtained from Ms. Wang.  Now you're trying to splice it up into individual words and you're questioning on him in that manner is one that is designed to invade the attorney-client privilege.  I instruct the witness not to respond.

    MR. QUINN:  I didn't ask him about the whole paragraph before.

    MR. WICKHAM:  You're --

    MR. QUINN:  Now you're interrupting me.  I didn't ask him about the whole paragraph before and I explicitly carved out of my question what he was told by an attorney, so I think I'm entitled to know whether he had any understanding apart from what any attorney may have told him about what an irrevocable assignment is.  Hasn't been asked before.

    MR. WICKHAM:  Okay.  Mr. Quinn, the witness has already testified that his understanding concerning paragraph 3(a) and the document generally is information -- his understanding was based solely on the legal advice that he obtained.  Having said that, you are now trying to say, well, what about this word and what about this sentence and so on and so forth for something that he already has indicated is something was based solely on advice of counsel.  Your question, therefore, is one that does seek to invade the attorney-client privilege.  I instruct him not to respond.

    MR. QUINN:  Okay.  You know, we're going to be back here because that's -- that's not what he said and that's not what I asked.

    MR. WICKHAM:  Well, I --

    MR. QUINN:  We're all going to come back.

    MR. WICKHAM:  I'm not going to quibble with you over --

17209/2045960.5

1    MR. QUINN:  After Monday we're going to come back again.

2

3    MR. WICKHAM:  I'm not going to quibble with you as to what he said.  I recall what he did say.

4    MR. QUINN:  Okay.  Next?

5    MR. WICKHAM:  And just to be clear, the reason why I didn't take issue when you had asked him about "work

6    made for hire" is because during his prior testimony when he was referring to the angel face drawings, he actually

7    used the term "work for hire," which indicated that he actually had some understanding independent of any

8    advice that he may have obtained from Ms. Wang, but as to the contents and substance of this paragraph, he already

9    did testify that he only had understanding as to the -- this information based on the legal advice that he did obtain

10    from Ms. Wang. . . .[33]

11   Later, Bryant testified that, in 2000-2001, he, in fact, had discussed his MGA

12   agreement with MGA's counsel.  Being an opposite party to MGA in business

13   negotiations and transactions at the time, Bryant had no attorney-client or joint

14   defense relationship with MGA.  Still, Bryant's counsel prevented Bryant from

15   disclosing what *MGA's counsel* said, including by improper instructions and taking

16   the witness from the room:

17        Q   (By Mr. Quinn)  Who was the attorney who gave you an understanding of this agreement?

18

19        A   The only person I remember having any conversation with about this at all was -- I believe it was Daphne, Daphne Gronich.

20        Q   Now, this is a contract between you and MGA, right?

21        A   Yes.

22        Q   And she's MGA's lawyer?

23        A   Yes.

24        Q   She's not your lawyer?

25

26

27   [33]   *Id.* at 471:2-473:7; see also the counsel colloquy cited in the Separate

28   Statement filed concurrently herewith.

1    A   No.

2    Q   All right.  So what did Ms. Gronich tell you was the purpose of this agreement?

3    MR. WICKHAM:  I'm going to instruct the witness not to respond and I'm going to take a break because --

4

5    MR. QUINN:  He's answering questions and we don't want that to happen.

6    MR. WICKHAM:  No.  No.  It's late in the day.  It's 4:30. The witness is tired and I want to be sure --

7

8    Q   (By Mr. Quinn)  Are you tired?  Are you tired, Mr. Bryant?

9    MR. WICKHAM:  I want to be sure that the witness --

10   A   Yes, I am tired.

11   MR. WICKHAM:  -- does not violate his attorney-client privilege, and I suspect that you would do the same in your -- in the same circumstances.  We're going to take a break for purposes of --

12

13

14   MR. QUINN:  We're going to learn now that --

15   MR. WICKHAM:  -- preservation of the privilege.

16   MR. QUINN:  We're going to learn now that Daphne is his lawyer?

17

18   MR. WICKHAM:  Counsel, come on.

19   MR. QUINN:  Well, indeed, come on.[34]

20   Then, when Bryant and his counsel returned from the break to discuss the pending

21   question, Bryant and his counsel volunteered that Bryant had a "clarification" of his

22   testimony that was, in reality, a retraction.  Bryant predictably posited his counsel's

23   suggested answer:

24   Q   (By Mr. Quinn)  Okay.  So what understanding did you have about what the purpose of this agreement that's Exhibit 17?

25

26

27   [34] Id. at 478:22-480:7.

28

1    A  Well --

2    MR. WICKHAM:  Mr. Bryant has a clarification of his
     prior response.

3
     A  I need to make a clarification.  I'm exhausted and I'm
4    not thinking clearly.  The attorney who advised me on this
     document was my attorney Larry McFarland.[35]

5
         (d)   **MGA's counsel also abused the discovery process.**
6

7          Ms. Cendali, counsel for MGA (which was not a party to the litigation

8    at the time), also asserted speaking objections throughout the deposition.  For

9    example, when Mattel's counsel asked Bryant about a document *he had created,*

10   MGA's counsel interjected to assert what Bryant's testimony should be:

11         Q  [Page] 325?

12         A  *This was a page that I had just made some notes to*
           *myself of who might be doing what on the project.*

13
           Q  Who might be doing what on the project.  Is this all in
14         your handwriting?

15         A  Yes.

16         Q  And when did you write this?

17         A  I don't recall exactly when I wrote this.

18         Q  Where did you get the -- I mean, the information at the
           top appear to be -- are those costs or prices or what are
19         they?

20         A  Yes.  I think those were directions from Paula.

21         Q  Regarding cost or retail price or what?

22         A  Regarding retail price.

23         Q  And then these are just your ideas about people who
           might be used to work on --
24
           MS. CENDALI:  Objection --
25
           Q  (By Mr. Quinn)  -- the project?
26

27   ---
     [35]  <u>Id.</u> at 480:12-20.
28

7209/2045960.5

1    MS. CENDALI: -- mischaracterizes his testimony.

2    Q   (By Mr. Quinn)  And the idea you had for sculpting was Margaret Leahy?

3    MS. CENDALI:  Objection --

4    MR. WICKHAM:  Objection, mischaracterizes --

5    MS. CENDALI:  -- mischaracterizes.

6    MR. WICKHAM:  -- the witness's testimony.

7    MS. CENDALI:  *He did not say these were his ideas, Counsel.*  You know that you're adding that to his

8    question.  Do you want to read back what he previously

9    said?

10   MR. QUINN:  Well, he just said these were his ideas as to who would work on the project.

11   Q   (By Mr. Quinn)  Is that right?

12   MR. WICKHAM:  Objection --

13   MS. CENDALI:  That is not --

14   MR. WICKHAM:  -- mischaracterizes the witness's

15   testimony.

16   MS. CENDALI:  -- what he said.  Would you please read back for the record when he was originally asked what

17   these -- what this document was and what he responded with regard to what page 325 was.

18   MR. QUINN:  I'm -- I'm just going to ask my question.

19   Q   (By Mr. Quinn)  Are -- are these your ideas as to who

20   would work on this project?

21   MR. WICKHAM:  Objection, mischaracterizes the

22   witness's testimony.

23   Q   (By Mr. Quinn)  You can answer.

24   A   This was something that -- this entire page was something that Paula and I had discussed.[36]

25

26       . . .

27

28

[36]   Id. at 365:25-367:24 (emphasis added).

1      Q   The two of you's ideas about who might work on the project?

2

3      MR. WICKHAM:  Objection, mischaracterizes the witness's testimony.

4      Q   (By Mr. Quinn)  Is that true, sir?

5      MS. CENDALI:  Asked and answered, mischaracterizes his testimony. *He had previously said before you tried to*

6      *get him to change his answer -- and I'd like it to be read back by the court reporter -- that this was his writing*

7      *down of who he thought was going to be doing what.  You are now adding to his answer that these were his*

8      *suggestions when he made very clear that these were not his suggestions -- . . .*

9

10    MGA's and Bryant's counsel together also made sure Bryant would not give his own

11    testimony uninfluenced by counsel with respect to his own drawings of "Bratz":

12    Q   Okay.  But in terms of the look of the body, did you intend that this drawing 278 would be a guide to her as to

13    the look of the body?

14    MS. CENDALI:  Objection --

15    MR. WICKHAM:  Objection.

16    MS. CENDALI:  -- asked and answered.  Would you please read back the first time he was asked the question

17    what he intended the drawing to be and what his answer was *where he answered it was with regard to the size and*

18    *the --*

19    MR. QUINN:  No.  We heard size and pose and I'm asking a different question.

20

21    MS. CENDALI:  No.  You're asking the same question to get him to try to say more -- more --

22    MR. QUINN:  No.

23    MS. CENDALI:  -- than he said before.

24

25    _____

26    [37] Id. at 368:7-370:7 (emphasis added); see also 62:24-63:12; 74:12-75:22;
78:11-18; 87:7-13; 130:24-131:12; 180:3-180:15; 186:21-187:10; 234:9-234:17;

27    237:25-238:6; 270:8-271:10; 284:10-285:10; 436:25-438:7; 441:7-442:9; 447:14-
448:5; 564:16-566:3; 597:11-598:6; 635:8-16; 645:7-646:5; 703:5-16.

28

1      MR. QUINN: No, I'm not. I'm just asking my question.

2      Q (By Mr. Quinn) And that is, did you intend this also to communicate to her the look of the body?

3

4      MR. WICKHAM: Objection, ambiguous as to the term "look," asked and answered multiple times.

5      A Yes. What did you mean by -- what do you mean by the word "look"?

6

7      Q (By Mr. Quinn) The appearance.

8      MS. CENDALI: Objection, asked and answered. *You asked him if he -- it was to conveying anything else other than size and pose and he said no.*

9

10     A I just intended this to be a guide as to the size and the pose and the overall feeling of what I was after.[38]

11  Nor was this the only time that MGA's and Bryant's counsel appeared to work

12  together to assert lengthy objections:

13     Q (By Mr. Quinn) I'm just trying to find out whether your decision to have her start working on the sculpt was driven by some particular goal in terms of when the Bratz project would be ready.

14

15

16     MS. CENDALI: Objection, mischaracterizes --

17     MR. WICKHAM: That completely --

18     MS. CENDALI: -- his testimony as to whether he had any decision.

19     MR. WICKHAM: And Mr. Bryant didn't have Ms. Leahy start on working anything and he's made that clear throughout the day.

20

21     MR. QUINN: That's a nice piece of testimony, Counsel.

22     Q (By Mr. Quinn) You can answer the question.

23     A I don't recall. I don't recall why I had -- why I had her start when she did.[39]

24

25

26   [38] Id. at 562:3-563:4.

27   [39] Id. at 236:3-236:18; see also 365:25-367:24; 368:7-370:7; 447:14-23; 562:3-563:4; 564:16-566:3.

28

1   At one point, MGA's counsel even asked Bryant's counsel to assert an instruction

2   not to answer that was not based on any privilege:

> Q   In your view did the second sculpt look substantially similar to what you've drone -- drawn here as indicated on 278?

3

4

5   MR. WICKHAM:  Objection.

6   MS. CENDALI:  Objection, calls for a legal conclusion. "Substantially similar" is a term of copyright law.

7

> A   It was close to the drawing.

8   Q   (By Mr. Quinn)  Was it substantially similar in your view?

9

10   MR. WICKHAM:  Objection.

11   MS. CENDALI:  Objection, calls for a legal conclusion. Are you instructing him not to answer?

12

. . .

13   MR. QUINN:  I'll go back to my question.

14   Q   (By Mr. Quinn)  In your view was the second sculpt that you saw substantially similar to this drawing that we've marked as 278?

15

16   MR. WICKHAM:  Objection, calls for a legal conclusion, lacks foundation, calls for speculation, ambiguous. Instruct the witness not to respond.

17

18   MR. QUINN:  And the basis for that instruction is?

19   MR. WICKHAM:  Because you are asking the witness to respond to a legal inquiry.[40]

20

21   In the end, even though MGA's counsel was a non-party and was at the deposition

22   for only the alleged purpose of making sure MGA's trade secrets were ostensibly

23   protected,[41] MGA's counsel asserted more than four hundred objections, including

24   many lengthy narrative objections.[42]

25   _____

26   [40]  Id. at 564:16-566:3.

27   [41]  Id. at 74:12-75:12.
    [42]  Id., ¶ 14.

28

1    At the end of the third day of deposition, Mattel made clear that it did

2 not consider the deposition concluded.  Still, Bryant's counsel made the unilateral

3 decision that the deposition was over.[43]

4

5                              **Argument**

6 I.    **THE VAST MAJORITY OF BRYANT'S COUNSEL'S**

7       **INSTRUCTIONS NOT TO ANSWER WERE IMPROPER.**

8       A.    **Bryant's Counsel Asserted Privilege Instructions Not To Answer**

9             **Questions Seeking Non-Privileged Information.**

10          The attorney-client privilege protects from discovery the substance of

11 "confidential communications" between a client and his attorney.  Clarke v.

12 American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992); U.S. v.

13 Friedman, 445 F.2d 1076, 1085 (9th Cir. 1971); see also Cal. Evid. Code § 952

14 ("confidential communication" means "information transmitted between a client and

15 his or her lawyer in the course of that relationship and in confidence by a means

16 which, so far as the client is aware, discloses the information to no third persons

17 other than those who are present to further the interest of the client.").  The party

18 asserting the privilege has the burden of establishing that the privilege exists.

19 U.S. v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000).

20          Bryant's counsel repeatedly ignored the proper boundaries of the

21 attorney-client privilege.  He instructed Bryant not to answer basic questions having

22 nothing to do with the substance of attorney-client communications.  The improper

23 instructions in this respect encompassed the categories of questions discussed in the

24 following subsections.

25

26

27    [43]  Id., Ex. 12 (Bryant Depo.) at 722:25-723:6.

28

1        **1.    Bryant's Business Negotiations With MGA.**

2                Beginning in or about 2000, Bryant entered into negotiations and

3   business transactions with MGA with respect to "Bratz." The attorney-client

4   privilege did not protect information exchanged between Bryant and MGA (or each

5   others' counsel) in the context of their negotiations -- such information was not

6   shared between an attorney and his client, but rather with a third party. See, e.g.,

7   Clady v. County of Los Angeles, 770 F.2d 1421, 1433 (9th Cir. 1985); Griffith v.

8   Davis, 161 F.R.D. 687, 698 (C.D. Cal. 1995); Potter v. United States, 2002 WL

9   31409613, at *6 (S.D. Cal. July 26, 2002); Southern Union Co. v. Southwest Gas

10  Corp., 205 F.R.D. 542, 548 (D. Ariz. 2002); Winchester Capital Management

11  Co., Inc. v. Manufacturers Hanover Trust Co., 144 F.R.D. 170, 174 (D. Mass.

12  1992); Manufacturing Systems, Inc. of Milwaukee v. Computer Technology, Inc.,

13  99 F.R.D. 335, 337 (E.D. Wis. 1983).

14               Bryant's counsel invoked privilege with respect to these third-party

15  communications anyway.[44] Further, while Mattel does not have an issue with

16  Bryant withholding information that he received *solely* from his own attorney,

17  Bryant's counsel instructed him not to answer questions regarding his relationship

18  with MGA generally, irrespective of whether the question even remotely asked for

19  the substance of an attorney-client communication.[45]

20       **2.    Bryant's Own Understanding Of What Is True.**

21               With lengthy speaking objections and taking Bryant out of the room

22  with a question pending,[46] Bryant's counsel made clear that his witness should

23  always say that his only understanding of his agreements with MGA and Mattel

24  came from his attorneys. But even assuming Bryant's communications with

25  _____

26  [44]  See supra note 15 and accompanying text.

27  [45]  See supra note 16 and accompanying text.

    [46]  See supra note 10.

28

1   Ms. Wang were privileged,[47] most of Mattel's questions did not ask Bryant to reveal

2   -- and often expressly excluded -- the substance of attorney-client

3   communications.[48]  For example, Bryant's counsel did not allow Bryant to respond

4   whether or not *he* found any of the words in his agreement with Mattel confusing.[49]

5   Bryant's counsel did not even allow Bryant to expand on issues he had with his

6   MGA agreement *after Bryant himself raised the issue*.[50]

7       **3.**    **Bryant's Preparation For Testimony.**

8         Bryant had an obligation to disclose what documents he reviewed to

9   refresh his memory before his deposition.  Fed. Rules Evid. § 612; United States

10  Ex. Rel. Bagley v. TRW, Inc., 212 F.R.D. 554, 565 (C.D. Cal. 2003).  When

11  Mr. Quinn asked Bryant whether he reviewed his agreements with Mattel to prepare

12  for deposition, Bryant initially answered all of Mr. Quinn's questions, including

13  what documents he reviewed.[51]  Just a few minutes later, however, Bryant's counsel

14  instructed Bryant not to answer questions regarding Bryant's review of the very

15  same documents, regardless of whether the questions called for the substance of any

16  work product or attorney-client privilege.[52]

17        Even if Bryant's counsel had a legitimate work product privilege -- a

18  privilege he did not assert -- Bryant's counsel waived it when he initially allowed

19  _____

20  [47]  Because of Bryant's prior stonewalling on document production and his
inadequate privilege log, which were the subject of the Discovery Master's
21  January 25, 2007 Order granting Mattel's motion to compel, Mattel is not currently
in a position to evaluate the propriety of this issue.  Thus, on this motion, Mattel is
22  not seeking a ruling on whether or not Bryant's communications with Ms. Wang
23  were privileged, but reserves the right to do so in the future.
24  [48]  See supra notes 16, 18-20 and accompanying text.
    [49]  Zeller Decl., Ex. 12 (Bryant Depo.) at 640:15-641:6.
25  [50]  See supra note 20 and accompanying text.
26  [51]  Bryant Depo. at 29:23-31:2
27  [52]  Id. at 36:25-38:1; see also 38:2-38:9; 38:10-38:14; 124:4-24; 125:12-126:9;
126:10-127:1; 127:2-127:5; 127:6-130:2; 138:24-139:11.
28

1   Bryant to answer questions about his review of his agreements with Mattel.  <u>See</u>

2   <u>Baxter Travenol Labs., Inc. v. Abbott Labs</u>, 117 F.R.D. 119 (N.D. Ill. 1987) (failure

3   to make a timely and specific objection waives any objection based on privilege);

4   <u>Marx v. Kelly, Hart & Hallman, P.C.</u>, 929 F.2d 8, 10-11 (1st Cir. 1991).

5              **4.**    **<u>Whether Bryant Spoke To Counsel During Recesses.</u>**

6           Simple "yes" or "no" question about whether Bryant spoke to anyone,

7   and to whom, during a recess, do not ask for the substance of any attorney-client

8   communication.  Nevertheless, Bryant's counsel instructed him not to answer these

9   questions, including in contexts where Bryant's counsel had interrupted the

10  deposition to take Bryant out of the room with a question pending.[53]

11       **B.**    **<u>Bryant's Counsel Asserted A Joint Defense Privilege Where None</u>**

12           **<u>Exists.</u>**

13          The "joint defense privilege" requires that (1) communications were

14  made in the course of a joint defense effort; (2) the statements were designed to

15  further the joint defense effort; and (3) the privilege has not been waived.  <u>Durkin v.</u>

16  <u>Shields (In Re Imperial Corp. of Am.)</u>, 167 F.R.D. 447, 455 (S.D. Cal.1995);

17  <u>Matter of Bevill, Bresler & Schulman Asset Management Corp.</u>, 805 F.2d 120, 126

18  (3d Cir. 1986).  The burden rests with Bryant to establish a joint defense privilege.

19  <u>Munoz</u>, 233 F.3d  at 1128.

20          Despite this burden, Bryant's counsel instructed Bryant not to answer

21  even simple, non-privileged questions of whether or not he had ever entered into or

22  seen a joint defense agreement between him and MGA.[54]  Further, as with Bryant's

23  counsel's abuse of the attorney-client privilege, most joint defense assertions came

24  after questions that did not ask to reveal the substance of attorney-client

25

26

27  [53]  <u>See</u> <u>supra</u> note 12 and accompanying text.

28  [54]  <u>See</u> <u>supra</u> notes 13, 14 and accompanying text.

MATTEL'S MOTION TO COMPEL RE BRYANT DEPOSITION

1  communications, such as whether MGA is paying for Bryant's litigation costs.[55]  See

2  United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("[a]s a general rule,

3  client identity and the nature of the fee arrangement between attorney and client are

4  not protected from disclosure by the attorney-client privilege"); Clarke v. American

5  Commerce Natl. Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have

6  recognized that the identity of the client, the amount of the fee, the identification of

7  payment by case file name, and the general purpose of the work performed are

8  usually not protected from disclosure by the attorney-client privilege."); In re Grand

9  Jury Subpoenas, 803 F.2d 493, 499 (9th Cir. 1986) (reversing order quashing a

10  subpoena and requiring attorneys to identify third parties paying their fees).  Only

11  where disclosure of client identity "would convey information tantamount to a

12  confidential communication" is such information even arguably privileged

13  (Blackman, 72 F.3d at 1425), and that is obviously not the case here.

14          If no basis for an attorney-client privilege exists in the first place, then

15  the joint defense privilege is inapplicable.  Waller v. Fin. Corp., 828 F.2d 579, 583

16  n.7 (9th Cir. 1987).  Even if Mr. Bryant's instructions had a basis for an attorney-

17  client privilege, however, there is no evidence of a joint defense relationship

18  between Bryant and MGA in the record.  To the contrary, Bryant testified that he

19  understood that MGA's counsel does not represent his interests.[56] He also

20  understood that he promised MGA that he owned the rights to "Bratz,"[57] which

21  creates a conflict between MGA and Bryant on a critical issue in this litigation.

22  Bryant could not therefore withhold information shared between him and MGA's

23  counsel.[58]

24

25  [55]  Id.

26  [56]  Zeller Decl., Ex. 12 (Bryant Depo.) at 18:20 - 19:21.

27  [57]  Id. at 22:6-18.

28  [58]  Id. at 269:14-270:1

MATTEL'S MOTION TO COMPEL RE BRYANT DEPOSITION

07209/2045960.5

1    **C.**    **The Instructions Based On Non-Privilege Objections Should Be**

2    **Overruled.**

3    Several of Bryant's counsel's instructions not to answer in no way

4    implicated privilege or any other cognizable grounds for instructions and therefore

5    should be overruled.  See Fed. R. Civ. P. 30(d)(1) ("A person may instruct a

6    deponent not to answer only when necessary to preserve a privilege, to enforce a

7    limitation directed by the Court, or to present a motion under Rule 30(d)(4).")

8    **1.**    **Confidentiality.**

9    Bryant's counsel relied on vague "confidentiality" objections, invoking

10   MGA's alleged trade secrets, to prevent answers to questions regarding Bryant's

11   business relationship with MGA.[59]  Besides being improper, this objection is moot

12   because, with respect to Mattel's motion to compel production of documents from

13   Bryant, this Court ruled that "[t]he Protective Order filed on January 4, 2005, is

14   sufficient to address any confidentiality concerns raised by Bryant.  Among other

15   things, the protective order provided protection for confidential trade secret

16   information."[60]

17   **2.**    **Instructions Regarding Bryant's Income From "Bratz."**

18   Bryant's counsel made clear that he would not allow questioning about

19   Bryant's income from "Bratz" -- questions that go to both liability and damages --

20   other than what he earned in 2000 and only what he had earned as a gross total.[61]

21   Bryant's counsel relied on "proper subject of expert testimony," "foundation," and

22   "not having done an accounting" grounds.[62]  Not only are these improper bases for

23   an instruction not to answer, but again with respect to Mattel's motion to compel

24

25   [59]  Id. at 249:7-19.

26   [60]  Id., ¶ 16, Exh. 13 at 14.

27   [61]  Id., Exh. 12 (Bryant Depo.) at 703:5-707:12.

28   [62]  Id. at 705:21-706:10.

1  production of documents from Bryant, this Court ruled that "[p]ayments to Bryant,

2  including royalty statements and other payment information [including a breakdown

3  of gross payments] are relevant to several Mattel claims," including Mattel's claims

4  of copyright infringement and trade secret misappropriation, damages, and Mattel's

5  defense against MGA's unfair competition claims.[63]

6           ### 3.   **Third-party Privacy**

7           Bryant claimed at deposition that he originally drew a design for

8  "Bratz" dolls in 1998, while he lived at home, and that he showed the drawing to his

9  mother.[64]  This makes Bryant's mother a possible witness, and even though there is a

10 protective order in place, Bryant's counsel used a "privacy" objection to instruct

11 Bryant not to answer where she resides.[65]

12          ### 4.   **"Asked and Answered" Instructions.**

13          Bryant's counsel made unilateral decisions that a question was already

14 "asked and answered," and on that basis instructed Bryant not answer.  Once again,

15 this practice started within minutes of the start of the deposition:

16          Q:  And is it true that to this day it's never occurred to you
            that might have some liability to MGA if it turned out that
17          you didn't own the rights?  Is that true?

18          Bryant's counsel:   Objection, asked and answered,
            harassing and burdensome.  It's about the fourth or fifth
19          time that you've asked the question.  At this point in time
            I'll instruct the witness not to respond.[66]

20
    Even if the questions were identical -- which they were not -- this was not a proper
21
    ground for instructing Bryant not to answer the questions at issue here.  Fed. R. Civ.
22
    P. 30(d)(1); Cobell v. Norton, 213 F.R.D. 16, 27 (D. D.C. 2003).
23

24

25          [63]  Id., Exh. 13 at 13-14.

26          [64]  Id., Exh. 12 at 43:24-44:5.
            [65]  Id. at 45:25 - 46:9.
27          [66]  Id. at 24:13 - 24:19.

28

### 5.   "Legal Conclusion" Instructions

Mr. Quinn asked Bryant for *his own* understanding of whether his drawings were "substantially similar" to certain sculpts that were based on of those drawings.  Bryant's counsel, as seen above upon MGA's counsel's suggestion, relied on a "legal conclusion" objection to instruct Bryant not to answer.[67]

## II.   OTHER IMPROPER CONDUCT DURING DEPOSITION

Bryant's counsel's improper conduct extended well beyond improper instructions.  Throughout the deposition, Bryant's counsel also took Bryant out of the room with questions pending, interrupted Bryant in the middle of his answers and engaged in lengthy speaking objections.[68]

It is improper to take a witness out of the deposition with a question pending.  As the court observed in  Johnson v. Wayne Manor Apartments, 152 F.R.D. 56, 59 (E.D. Pa. 1993),

> When . . . witness' attorney unilaterally adjourns a deposition to confer regarding the witnesses' testimony, the deposing party is denied the opportunity to obtain the witness' knowledge or opinion, but "instead what [the deposing] counsel has effectively 'discovered' is the opinion and concomitant testimony of the [witness'] attorney."

Bryant's counsel professed he took Bryant out to preserve a privilege, but Mr. Quinn's questions in fact were not asking for the substance of any attorney-client communications.  Rather, Mr. Quinn asked (1) whether or not Ms. Wang reviewed agreements drafted by someone else during 2000-2001, (2) what Bryant discussed with *MGA's attorney* during the same time period, and (3) what Bryant's payments from MGA were with respect to "Bratz."[69]

---

[67]  Id., Exh. 12 (Bryant Depo.) at 565:18-566:3; 566:12-566:25.
[68]  See generally supra note 9-33 and accompanying text.
[69]  Id., Exh. 12 (Bryant Depo.) at 187:17-190:1; 478:22-480:7; 703:5-703:22.

MATTEL'S MOTION TO COMPEL RE BRYANT DEPOSITION

1    Further, the Federal Rules of Civil Procedure require that "[a]ny

2  objection during a deposition must be stated concisely and in a non-argumentative

3  and non-suggestive manner." Fed. R. Civ. P. 30(d)(1).  It was improper for counsel

4  to use speaking objections to coach the deponent, including through Bryant's

5  counsel's interruptions of Bryant mid-sentence to attempt to suggest the right answer

6  or warn him of a potentially harmful answer.  Hall v. Cliffton Precision, A Division

7  of Litton Systems, Inc., 150 F.R.D. 525, 530 (E.D. Pa. 1993); Damaj v. Farmers

8  Insurance Co., 164 F.R.D. 559, 560 (N.D. Okl. 1995) (frequent and suggestive

9  objections by opposing counsel can, and oft times do, completely frustrate a

10  deposition's purpose).

11    As seen above, Bryant's counsel's long soliloquies, body gestures and

12  other interruptions in the middle of Bryant's answers, his taking Bryant out of

13  deposition in the middle of pending questions, and MGA's litany of narrative,

14  suggestive objections directly contradict the requirement of brief objections and

15  uninterrupted answers necessary for depositions to serve their fact-finding purpose.

16  **III.   REQUEST FOR SANCTIONS**

17    Not only did Bryant unreasonably delay his deposition for almost five

18  months, but when he finally appeared for deposition, his counsel and MGA's

19  counsel frustrated a fair examination and unreasonably prolonged the examination

20  with invalid instructions not to answer.  As if that were not enough, Bryant's and

21  MGA's counsel tag-teamed to repeatedly assert suggestive objections and

22  interruptions of testimony.  Video clips of Bryant's deposition further show the

23  impropriety of his and MGA's counsel's behavior.[70]  Mattel made clear that the

24  deposition was not finished because of Bryant's counsel's instructions and other

25  obstructionist behavior, but Bryant's counsel nevertheless unilaterally terminated the

26  

27    [70]   Id., exh. 14.

28  

209/2045960.5

-26-

1   deposition.  This behavior justifies sanctions under <u>Rule</u> 30(d)(3), including costs

2   incurred necessary to obtain this Order.  <u>Id.</u>; <u>see also</u> <u>Nacional De Credito v. Bank</u>

3   <u>of America N.T. & S.A.</u>, 11 F.R.D. 497, 499 (N.D. Cal. 1951) (reasonable expenses

4   to obtain order awarded after improper refusals to answer questions at deposition);

5   <u>Nutmeg Ins. Co. v. Atwell, Vogel & Sterling</u>, 120 F.R.D. 504 (W.D. La. 1988)

6   (same where counsel improperly and unilaterally directed party's employee not to

7   answer questions on privilege grounds).

8                                   **<u>Conclusion</u>**

9          For the foregoing reasons, Mattel respectfully requests the Court to

10   (1) overrule each of the instructions set forth in table format in the Proposed Order

11   filed concurrently herewith, and (2) award Mattel sanctions in the amount of $5,500

12   to recover reasonable expenses to first compel Bryant's deposition and then obtain

13   the relief sought herein.[71]

14

15   DATED:  February 1, 2007          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
16

17                                      By _____
18                                         Michael T. Zeller
                                           Attorneys for Plaintiff and Cross-Defendant
19                                         Mattel, Inc.

20

21

22

23

24

25

26

27   [71]  <u>Id.</u>, ¶ 18.

28

7209/2045960.5

# Exhibit 2

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Plaintiff Mattel, Inc.

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)
                                           Consolidated with
12              Plaintiff,                  Case Nos. CV 04-09059 & CV 05-2727

13       vs.                               **DISCOVERY MATTER**

14  MATTEL, INC., a Delaware              **[To Be Heard By Discovery Master**
    corporation,                          **Hon. Edward Infante (Ret.)]**
15              Defendant.
                                          **[PUBLIC REDACTED]** NOTICE OF
16                                         MOTION AND MOTION OF
    AND CONSOLIDATED ACTIONS              PLAINTIFF MATTEL, INC. FOR
17                                         ADDITIONAL TIME AND/OR TO
                                           REOPEN THE DEPOSITION OF
18                                         CARTER BRYANT FOR ALL
                                           PURPOSES AND TO OVERRULE
19                                         ADDITIONAL INSTRUCTIONS NOT
                                           TO ANSWER AT THE DEPOSITION;
20                                         AND

21                                         MEMORANDUM OF POINTS AND
                                           AUTHORITIES
22
                                           Date:  TBA
23                                         Time:  TBA
                                           Place: Telephonic
24
                                           **Phase 1**
25                                         Discovery Cut-Off:   January 14, 2008
                                           Pre-Trial Conference: April 7, 2008
26                                         Trial Date:          April 29, 2008

27                                         **Phase 2**
                                           Discovery Cut-Off:   March 3, 2008
28                                         Pre-Trial Conference: June 2, 2008

07209/2179788.3

MATTEL'S MOTION RE: BRYANT

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that Mattel, Inc. will, and hereby does, move the

3  Court, pursuant to <u>Federal Rules of Civil Procedure</u> 30(d)(3) and 37, for an order

4  compelling Carter Bryant to sit for an additional 21 hours of deposition, and

5  overruling improper instructions not to answer on privilege grounds made during the

6  deposition.

7       This Motion is made on the grounds that: (1) there are numerous claims and

8  parties in this case which were not at issue when Bryant was deposed, about which

9  Mattel is entitled to question Bryant; (2) defendants have now produced dozens of

10  crucial documents and originals of key documents which were requested prior to the

11  Bryant deposition, but which defendants withheld until compelled by the Court,

12  requiring that the deposition be reopened for all purposes and that Mattel be granted

13  additional deposition time; (3) counsel's improper instructions, together with

14  counsel's coaching, lengthy speaking objections, interruptions of Bryant in the

15  middle of his answers, and extractions of Bryant from the deposition room with

16  questions pending, prevented a fair examination and unreasonably delayed the

17  deposition, requiring that the deposition be reopened and that Mattel be granted

18  additional deposition time; and (4) Bryant's counsel did not have a proper basis for

19  certain instructions not to answer on privilege grounds, which should be overruled.

20       This Motion shall be heard by the Honorable Edward Infante, Discovery

21  Master.  This Motion is based on this Notice of Motion and Motion, the

22  accompanying Memorandum of Points and Authorities, the Declarations of B.

23  Dylan Proctor and Michael T. Zeller filed concurrently herewith, the Separate

24  Statement filed concurrently herewith, the Notice of Lodging lodged concurrently

25  herewith, the [Proposed] Order lodged concurrently herewith, the records and files

26  of this Court, and all other matters of which the Court may take judicial notice.

27

28

1

## Statement of Rule 37-1 Compliance

2       The parties met and conferred on May 17, 2007, and times thereafter

3   regarding the issues set forth in this motion.

4

5   DATED: August 1, 2007          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
6

7                                  By
8                                     B. Dylan Proctor
                                      Attorneys for Plaintiff Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2179788.3

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ...................................................................................... 3

    A.    Mattel's 2004 Discovery ................................................... 3

    B.    The Court Grants Mattel's Motions to Compel Bryant and MGA to Produce Their Improperly Withheld Documents .............................. 4

    C.    The Court Grants Mattel's Motion to Compel Bryant to Make Original Documents Available ........................................................ 7

    D.    The Parties Add New Claims Following Bryant's Deposition ............... 8

    E.    The Court Grants Mattel's Motion to Overrule Specific Instructions Not to Answer at the Bryant Deposition.......................... 10

    F.    Bryant Moves to Overrule the Same Instructions His Own Counsel Had Given ..................................................................... 11

    G.    Mattel's Efforts to Meet and Confer ...................................... 12

ARGUMENT ......................................................................................... 13

I.    THE COURT SHOULD REOPEN BRYANT'S DEPOSITION FOR ALL PURPOSES AND GRANT MATTEL ADDITIONAL TIME FOR QUESTIONING ...................................................................... 13

    A.    Defendants Have Finally Produced Long Withheld Documents.......... 13

        1.    New Evidence Produced By Bryant ............................. 14

        2.    New Evidence Produced By MGA............................... 17

        3.    New Evidence Produced By Third Parties ..................... 18

    B.    New Claims Have Been Filed Since Bryant's First Deposition ........... 19

II.    THE COURT SHOULD OVERRULE ADDITIONAL INSTRUCTIONS NOT TO ANSWER ........................................... 20

CONCLUSION........................................................................................ 23

1

## **TABLE OF AUTHORITIES**

2                                                                      **Page**

3
                                              **Cases**
4

AMCO Ins. Co. v. Madera Quality Nut LLC,
    2006 WL 931437 (E.D. Cal. 2006) .......................................... 22

Burrows v. Redbud Community Hosp. Dist.,
    187 F.R.D. 606 (N.D. Cal. 1998) .......................................... 24

Clarke v. American Commerce Nat'l Bank,
    974 F.2d 127 (9th Cir. 1992) .............................................. 21

Collins v. International Dairy Queen,
    189 F.R.D. 496 (M.D. Ga. 1999) ......................................... 20

Communications Center, Inc. v. Hewitt,
    2005 WL 3277983 (E.D. Cal. 2005) ..................................... 16

Dixon v. Certainteed Corp.,
    164 F.R.D. 685, 692 (D. Kan. 1996) ................................ 14, 19

Garcia v. City of El Centro,
    214 F.R.D. 587 (S.D. Cal. 2003) ......................................... 22

Keck v. Union Bank of Switzerland,
    1997 WL 411931 (S.D.N.Y. 1997) .................................. 14, 19

Keithley v. Homestore.com, Inc.,
    2006 WL 1646119 (N.D. Cal. 2006) .................................... 20

Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.,
    2003 WL 22433095 (N.D. Ill. 2003) .................................... 16

McKay v. C.I.R.,
    886 F.2d 1237, 1238 (9th Cir. 1989) ..................................... 21

Nutmeg Ins. Co. v. Atwell, Vogel & Sterling A Div. of Equifax Services, Inc.,
    120 F.R.D. 504 (W.D. La. 1988) ......................................... 22

Resolution Trust Corp. v. Dabney,
    73 F.3d 262 (10th Cir. 1995) ............................................... 22

Ritchie v. U.S.,
    2004 WL 1161171 (N.D. Cal. 2004) ..................................... 14

Robins v. Scholastic Book Fairs,
    928 F. Supp. 1027 (D. Or. 1996) ......................................... 14

Stempler v. Collect America, Ltd.,
    2000 WL 288377 (E.D. La. 2000) ........................................ 24

Tillery v. Darby-Rogers Co.,
　　2006 WL 2735162 (M.D. Fla. 2006)....................................................................20

U.S. v. Munoz,
　　233 F.3d 1117 (9th Cir. 2000)..........................................................................23

## **Miscellaneous**

8 Wright & Miller,
　　Fed. Practice & Procedures § 2023 (1970) .....................................................23

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

The Discovery Master previously ruled, in an Order that was upheld by the District Court almost in its entirety, that Carter Bryant must reappear at deposition to answer approximately 50 questions he was improperly instructed not to answer. When Bryant is deposed further, Mattel should be permitted to question him on any topic, even beyond those on which he was instructed, and should be granted additional time to do so, for several reasons.

First, new evidence, which defendants withheld without excuse, has come to light since Bryant's deposition. Mattel served Bryant with its document requests and served MGA with a document subpoena well before the Bryant deposition was taken in late 2004. However, Defendants produced a total of 2264 pages of documents -- 1588 by Bryant and 676 by MGA -- prior to Bryant's deposition. Following the Discovery Master's Orders compelling Bryant and MGA to produce documents that were improperly withheld, MGA has now produced more than 157,000 pages and Bryant has produced more than 20,000 pages of documents. Thus, more than 98 percent of defendants' document production took place after Bryant's deposition.

As a result, defendants have now belatedly produced dozens of key documents, including documents relating to the origins of Bratz, that Mattel is entitled to question Bryant about. For example, Bryant has recently produced Bratz design drawings that are dated September 1999 -- a time when he was employed by Mattel. Bryant has also recently produced the hard drive of the computer he used during the relevant time period -- which he provided only after being ordered by the Court to do so, after then saying that he couldn't find it, and after then forcing Mattel to move to enforce the Court's Order. Why Bryant went to such extraordinary lengths to avoid producing that hard drive has now become clear: it had a program called "Evidence Eliminator" installed on it. Both courts and the creators of that

1  program have stated that, as its name suggests, the program's purpose is to

2  permanently destroy data and render it unrecoverable in legal proceedings.  As

3  another example, MGA now has produced October 10, 2000 e-mails between Isaac

4  Larian, Paula Garcia (formerly Treantafelles) and Victoria O'Connor reflecting that

5  Bryant worked with MGA on Bratz ".

6

7

8                                                  1.  Examples of other

9  similarly key documents (though by no means all, or even most of them) are

10  included as exhibits.[1]  Because this evidence had not been produced, Mattel could

11  not question Bryant about any of it when he was first deposed.

12          Bryant's deposition should also be reopened for all purposes because this case

13  includes several more claims than when Bryant was first deposed.  At the time

14  Bryant's deposition was taken in 2004, Mattel had asserted five state law claims

15  against Bryant.  Since then, MGA has sued Mattel on a variety of alleged federal

16  and state law unfair competition claims in the MGA v. Mattel case, and MGA lists

17  Bryant as a knowledgeable witness regarding these claims.  Indeed, MGA's product

18  manager for Bratz, Paula Garcia, has declared that Carter Bryant is one of only two

19  MGA people who know about the initial concept of and see the early product

20  drawings for many Bratz products.  Given the importance of timing issues to both

21  MGA's and Mattel's claims and the fact that Bryant is one of only two people

22  involved in the earliest phases of the conception and design of the Bratz dolls,

23  Bryant is a critical witness on MGA's claims -- which, according to MGA, put at

24  issue each of the hundreds of Bratz dolls.  To date, Mattel has been afforded no

25  opportunity to depose Bryant on any of these issues.

26

27  [1]  See Declaration of B. Dylan Proctor, dated July 30, 2007 ("Proctor Dec."),
    filed concurrently herewith, Exhs. 1-8, 11-12.

28

MATTEL'S MOTION RE: BRYANT

1    Since his deposition was taken in 2004, Mattel has also alleged 13

2    Counterclaims against Bryant and other defendants in MGA's case against Mattel,

3    including RICO and copyright infringement counterclaims.  Mattel is entitled to

4    question Bryant about issues such as his own acts of copyright infringement and his

5    participation in the RICO enterprise alleged by Mattel.  Mattel is also entitled to

6    question Bryant about his knowledge of MGA's and other defendants' acts of

7    copyright infringement and their roles in the enterprise.

8    Last, Bryant's deposition should be reopened based on defense counsel's

9    obstruction of the earlier deposition sessions.  Both Bryant's and MGA's counsel

10   abused the discovery process and obstructed the original Bryant deposition by

11   coaching the witness, interposing lengthy narrative objections and repeatedly taking

12   the witness out of the room with questions pending.  The Court previously found

13   that Bryant's counsel had improperly coached at the deposition and had interposed

14   47 improper instructions not to answer.  In addition to those, defense counsel

15   interposed another 12 improper instructions not to answer based on ostensible

16   privilege grounds, as set forth in the concurrently filed Separate Statement, which

17   should be overruled.  Bryant's counsel's obstruction of the deposition justifies its

18   being reopened even beyond the actual instructions not to answer.

19   For all of these reasons, Mattel asks that Bryant be compelled to sit for

20   additional deposition time and that his deposition be reopened for all purposes.

21                                          **Background**

22   A.   **Mattel's 2004 Discovery**

23   Mattel served its first set of document requests to Bryant on June 14, 2004,

24   and subpoenaed MGA to produce and permit inspection of its documents on

25   June 15, 2004.[2]  Shortly thereafter, on June 17, 2004, Mattel served a Notice of

26

27   [2]  See Plaintiff Mattel, Inc.'s First Set of Requests for the Production of
     Documents and Tangible Things to Defendant Carter Bryant, dated June 14, 2004;

28       (footnote continued)

MATTEL'S MOTION RE: BRYANT

1  Deposition for Bryant.[3]  Following a series of delay tactics by Bryant, refusals to

2  meet and confer, his counsel's broken promise made upon their "word as attorneys"

3  that he would appear and two Court Orders compelling Bryant to sit for deposition

4  (the second being necessary because Bryant refused to obey the first Order), Bryant

5  finally appeared for deposition beginning on November 4, 2004.[4]  As of that date,

6  Bryant had produced 1588 pages of documents and MGA had produced 676 pages

7  of documents in response to Mattel's document requests.[5]

8      At the deposition, Bryant's counsel thwarted a fair examination by instructing

9  Bryant not to answer questions on many dozens of occasions, including on such

10  frivolous grounds as "calls for speculation."[6]  Both Bryant's and MGA's counsel also

11  engaged in lengthy narrative objections and speeches that suggested answers to

12  questions, interrupted Bryant in the middle of his responses, and took Bryant out of

13  the room while questions were pending.[7]

14      **B.**      **The Court Grants Mattel's Motions to Compel Bryant and MGA to**

15           **Produce Their Improperly Withheld Documents**

16      Mattel moved to compel Bryant to produce the documents that Mattel had

17  requested in June 2004, prior to the Bryant deposition.[8]  The Discovery Master

18  _____

19  Mattel's Subpoena to MGA for Inspection and Production of Documents, dated
   June 15, 2004, Zeller Dec. Exhs. 1-2.

20  [3]  See Notice of Deposition for Carter Bryant, dated June 17, 2004, Proctor Dec.

21  Exh. 13.
   [4]  See Declaration of Michael T. Zeller in Support of Mattel's Motion to Overrule

22  Instructions Not to Answer During the Deposition of Carter Bryant, dated

23  February 1, 2007 ("02/01/07 Zeller Dec.") at ¶¶ 3-13 & Exhs. 2-3, 5-11, Notice of
   Lodging, dated July 30, 2007 ("Notice of Lodging"), lodged concurrently herewith,

24  Exh. 1.

25  [5]  Zeller Dec. ¶ 3.
   [6]  Bryant Depo. at 111:21-113:12, 705:21-706:10, Proctor Dec. Exh. 14.

26  [7]  See, e.g., Proctor Dec. ¶¶ 12-14, Exh. 14.

27  [8]  Zeller Dec. ¶ 4.  Mattel had moved to compel Bryant to produce his documents
   in January of 2005.  That motion was not heard before the Court stayed discovery.

28     (footnote continued)

1    granted that motion almost in its entirety on January 25, 2007.[9]   Since then, Bryant

2    has produced more than 18,000 additional pages, including a number of key

3    documents.[10]

4          One set of documents that Bryant had not produced -- and that Bryant

5    continued to refuse to produce even after the Discovery Master's January 25, 2007

6    Order -- was his fee agreements.  Accordingly, Mattel moved to compel again, and

7    the Court again ordered Bryant to produce his withheld fee agreements in an Order

8    dated June 19, 2007.[11]   Bryant still did not produce his fee agreements but, after

9    further requests by Mattel that he comply with the Court's Orders, eventually

10   produced one.[12]   That agreement provides that MGA "

11

12                                **REDACTED**

13

14   _____

15   On June 20, 2006, after the discovery stay was lifted, the parties met and conferred
     in Magistrate Judge Block's courtroom to discuss outstanding discovery issues that
16   predated the stay.  Though the parties were able to reach apparent tentative
     agreement regarding Bryant's document production during the meet and confer,
17   Bryant later backed out of the agreement and made additional demands, such as
18   insisting that Mattel waive its right to all further discovery.  Over the next several
     months, Mattel attempted to persuade Bryant to cure the deficiencies in his
19   production without judicial intervention and, at the direction of the Discovery
20   Master, met and conferred again on December 28, 2006.  However, Bryant's counsel
21   refused to produce any additional documents unless Mattel waived its right to
     further discovery.  Accordingly, Mattel moved to compel on January 3, 2007.  Id.
22   ¶¶ 4-5.
23      [9]   Order Granting Mattel's Motion to Compel Production of Documents, dated
     January 25, 2007, Zeller Dec. Exh. 3.
24      [10]   Zeller Dec. ¶ 5.
25      [11]   See Order Granting Mattel's Motion to Compel Production of Documents at
     11:24-12:14; Order Granting in Part and Denying in Part Mattel's Motion to Enforce
26   the Court's Order of January 25, 2007, Zeller Dec. Exhs. 3-4.
27      [12]   Proctor Dec. ¶ 2, Exh. 1.
        [13]   Proctor Dec. Exh. 1, at BRYANT2 000011.
28

                                                        MATTEL'S MOTION RE: BRYANT

1    In its January 25, 2007 Order, the Court also ordered Bryant to produce the

2   hard drive of his computer for forensic imaging.[14]  After that, Bryant told Mattel that

3   he could not locate the computer.[15]  It was only after Mattel moved for sanctions

4   that Bryant "found" it.[16]  Examination of the image of Bryant's hard drive has

5   revealed that it had a program called "Evidence Eliminator" installed on it.[17]  This is

6   so even though Bryant's counsel, in opposing Mattel's motions to compel Bryant's

7   hard drive, represented to Judge Block and the Discovery Master that defendants

8   had reviewed the hard drive of Bryant's computer but located no "relevant" or

9   "responsive" documents.[18]

10                              **REDACTED**

11

12    Other documents that Mattel requested before Bryant's deposition, but that

13   Bryant withheld, were Bratz designs that he created during the time of his Mattel

14   employment.  Only after being compelled, Bryant has now produced Bratz drawings

15   dated September 19, 1999 -- more than a year before Bryant left Mattel.[20]

16    Mattel also had to move to compel MGA to produce documents on

17   February 2, 2007.[21]  The Court granted that motion in a written Order dated May 15,

18

19   [14]   Zeller Dec. Exh. 3.  Before that, Mattel first moved to compel production of
     Bryant's hard drives in January of 2005, and reminded Bryant that he should
20   secure possession of all relevant computer hard drives to prevent the possible
     destruction of evidence as early as November 2004.  See id. ¶ 14, Exh. 10.
21
     [15]   Zeller Dec. ¶ 16, Exh. 13.
22   [16]   Zeller Dec. ¶ 16, Exh. 14.
     [17]   Zeller Dec. ¶ 17.
23   [18]   Zeller Dec. ¶ 15, Exhs. 11-12.
     [19]   Zeller Dec. ¶ 15, Exh. 11.  These representations were misleading at best,
24   given that the existence of the "Evidence Eliminator" program on Bryant's hard
25   drive alone was highly relevant and fell well within Mattel's requests for the
     production of documents and tangible things to Bryant.
26
     [20]   Proctor Dec. Exh. 7.
27   [21]   Zeller Dec. ¶ 6.

28

1   2007 and, before that, stated it was granting the motion at oral argument on

2   March 5, 2007.[22]  As of the date of Bryant's deposition, MGA had produced 676

3   pages of documents in response to Mattel's requests.[23]  Since the date of Bryant's

4   deposition, MGA has produced nearly 157,000 pages of documents, the vast

5   majority of which were produced after the Court granted Mattel's motion to compel

6   in March 2007.[24]  Moreover, as of today, MGA still has additional time to produce

7   its withheld documents from MGA Hong Kong.[25]  Accordingly, Mattel expects

8   MGA to produce yet more relevant documents that it has long withheld.

9        Altogether, MGA and Bryant have produced nearly 175,000 pages of

10  documents since Bryant's deposition was taken.[26]

11  **C.      The Court Grants Mattel's Motion to Compel Bryant to Make**

12  **         Original Documents Available**

13       Mattel asked Bryant to make his original drawings and other documents

14  available for inspection and photographing at least as early as October 25, 2004.[27]

15  Although Bryant's counsel stated that the originals would be made available at

16  Bryant's deposition, only a few original drawings were made available at that time.[28]

17

18

19

20

---

[22]   Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Answers by MGA, dated May 15, 2007, Zeller Dec. ¶ 6, Exh. 5.

[23]   Zeller Dec. ¶ 3.

[24]   Zeller Dec. ¶ 7.

[25]   July 2, 2007 Order, Zeller Dec. ¶ 7, Exh. 6.

[26]   Zeller Dec. ¶ 7.

[27]   Zeller Dec. ¶ 9, Exh. 7.

[28]   Zeller Dec. ¶ 10, Exh. 8; see also Bryant Depo. at 617:17-21, Proctor Dec., Exh. 14 (Mattel noting at the deposition itself that "we won't be able to complete this deposition until, among other things, we have a chance to examine the witness with respect to all the originals.").

1   Even after the deposition and multiple additional requests from Mattel, Bryant still

2   did not turn over a single additional original Bratz drawing or sketch.[29]

3            On February 14, 2007, the Discovery Master ordered Bryant to make all

4   original documents and three-dimensional items requested by Mattel available for

5   inspection and photographing no later than February 28, 2007.[30]  On February 27

6   and 28, 2007, Bryant allowed Mattel to inspect some, but not all, of the remaining

7   originals.[31]  Only after repeated requests by Mattel that he comply with the Order,

8   and only after Mattel had to threaten motion practice to enforce the Order, Bryant

9   finally allowed the inspection of yet more previously withheld originals on May 31,

10  June 20 and June 21, 2007.[32]

11           **D.    The Parties Add New Claims Following Bryant's Deposition**

12           In April 2005, after Bryant's deposition, MGA filed its lawsuit against Mattel

13  alleging a broad array of unfair competition claims.[33]  MGA asserts that Mattel has

14  engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products,

15  _____

16  [29]  Declaration of Shane McKenzie in Support of Mattel's Motion to Enforce
    Stipulation and Compel Bryant to Make Original Documents Available, dated
17  January 22, 2007 ("McKenzie Dec."), ¶¶ 2-4 & Exh. 1, Notice of Lodging Exh. 2;
    Zeller Dec. ¶ 11.  Mattel first filed a motion to compel Bryant to produce his
18  originals for inspection and photographing on February 18, 2005.  Zeller Dec. ¶ 11.
    The case was stayed before the motion was heard.  After the stay was lifted, Bryant
19  stipulated on the record before Judge Block, on June 20, 2006, that he would
    produce for inspection and photographing originals requested by Mattel on 15 days'
20  notice.  McKenzie Dec. ¶ 8, Zeller Dec. ¶ 11.   Mattel then repeatedly requested in
    writing that certain originals be made available by Bryant, but Bryant still refused --
21  in the face of his own stipulation -- to make all the requested originals available for
    inspection and photographing.  McKenzie Dec. Exh. 3, Zeller Dec. ¶ 12.  Mattel
22  thus filed a Motion To Enforce Stipulation And Compel Bryant To Make Original
    Documents Available on January 23, 2007.  Zeller Dec. ¶ 12.
23
24  [30]  Zeller Dec. ¶ 12, Exh. 9.
25  [31]  Id ¶ 13.
26  [32]  Id.
27  [33]  See MGA Entertainment, Inc.'s Complaint ("MGA Complaint"), filed
    April 13, 2005.
28

1  Bratz television commercials and Bratz packaging.[34]  MGA's Complaint also asserts

2  various other unfair competition claims.[35]  In its interrogatory responses, MGA lists

3  Bryant as a "person who was involved in the marketing, advertising, promotion,

4  licensing, offering for sale, conception, origin, creation, design, development,

5  sculpting, engineering, reduction to practice, tooling, or painting of" the allegedly

6  infringed MGA products that MGA has put at issue.[36]  There are hundreds such

7  products.  MGA's responses to Mattel's interrogatories state that the <u>entire</u> Bratz line

8  is the subject of MGA's claims, and an MGA witness has declared that there are

9  more than 200 Bratz products.[37]  Further, MGA's Vice President of Product Design

10  and Development, Paula Garcia, has stated that she and Carter Bryant are "the *only*

11  people who know what the concept is and who see the early product drawings" with

12  respect to many Bratz products.[38]

13      Also after Bryant's deposition, Mattel filed 13 counterclaims against Bryant,

14  MGA and other defendants in MGA's case against Mattel, including for copyright

15  infringement, RICO violations and misappropriation of trade secrets, among other

16  claims.[39]  These claims present new issues, such as Bryant's copying of or

17

18  [34]  <u>Id.</u> at, <u>e.g.,</u> ¶¶ 7, 33, 41, 59.

    [35]  <u>Id.</u> at ¶¶ 101-125.

19  [36]  MGA's Responses to Mattel's First Set of Interrogatories Re: Claims of

20  Unfair Competition, dated January 19, 2007, Response No. 1 at 6:9, Proctor Dec. Exh. 17.

21  [37]  <u>See</u> Declaration of Patricia Perrier in Support of MGA's Opposition to

22  Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One, ¶ 2;

    MGA Entertainment, Inc.'s Supplemental Response to Interrogatory No. 2 of

23  Mattel, Inc.'s First Set of Interrogatories Re: Claims of Unfair Competition, Proctor

24  Dec. ¶¶ 18, 20 & Exhs. 18, 20.

25  [38]  Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's

    Motion to Compel, dated February 9, 2007, ¶ 6 (emphasis in original),  Proctor Dec.

26  Exh. 19.

27  [39]  <u>See</u> Mattel's Second Amended Answer and Counterclaims, dated July 12,

    2007.

28

1  preparation of derivative works from the Bratz works Mattel claims it owns and

2  Bryant's activities in concert with the other members of the MGA Criminal

3  Enterprise.[40]  Mattel's counterclaims also implicate defendants' thefts of Mattel trade

4  secrets in the United States, Mexico and Canada, arising from events which

5  occurred after the original complaint was filed.[41]

6      **E.**     <u>**The Court Grants Mattel's Motion to Overrule Specific**</u>

7                 <u>**Instructions Not to Answer at the Bryant Deposition**</u>

8        Mattel moved to overrule specified instructions not to answer at the Bryant

9  deposition in a motion dated February 1, 2007.[42]  The Court granted this motion in

10  substantial part, overruling 47 instructions not to answer.[43]  The Court also found

11  that defense counsel coached Bryant during the deposition.[44]  The Court ordered

12  Bryant to appear for an additional two hours to answer the questions he was

13  improperly instructed not to answer and follow up questions.[45]

14

15

16      [40]   <u>See</u>, <u>e.g.</u>, <u>id.</u>, at ¶¶ 82-97, 122-128, 136-141, 149-166.

17      [41]   Mattel has pleaded 13 pending counterclaims: (1) Copyright Infringement, (2) Racketeer Influenced and Corrupt Organizations Act, (3) Conspiracy to Violate

18  the Racketeer Influenced and Corrupt Organizations Act, (4) Misappropriation of Trade Secrets, (5) Breach of Contract, (6) Intentional Interference With Contract,

19  (7) Breach of Fiduciary Duty, (8) Aiding and Abetting Breach of Fiduciary Duty, (9) Breach of Duty of Loyalty, (10) Aiding and Abetting Breach of Duty of Loyalty,

20  (11) Conversion, (12) Unfair Competition, and (13) Declaratory Relief.  <u>See id.</u>

21      [42]   Proctor Dec. ¶ 15.

22      [43]   <u>See</u> Discovery Master's March 7, 2007 Order Granting in Part and Denying in Part Mattel's Motion to Overrule Instructions Not to Answer During the Deposition

23  of Carter Bryant ("March 7 Order") ¶ 1 & Attachment A, overruling 49 instructions

24  not to answer made at Bryant's deposition.  Proctor Dec. Exh. 15.  The Discovery Master's ruling was affirmed except as to two of these instructions (Nos. 39 & 50).

25  <u>See</u> Order Re: Motions Heard on June 11, 2007, dated June 27, 2007, at 32-35,

26  Proctor Dec. ¶ 16, Exh. 16.

    [44]   Proctor Dec. ¶ 15.

27      [45]   March 7 Order ¶¶ 1-2, Proctor Dec. Exh. 15.

28

-10-

**F.** **Bryant Moves to Overrule the Same Instructions His Own Counsel Had Given**

When Mattel filed its February 2007 motion to overrule instructions not to answer at the Bryant deposition, it did not include certain instructions, including instructions not to disclose Bryant's understanding of subjects or facts learned through communications with counsel, based on an understanding between the parties that such information was protected by the attorney-client privilege.[46] Nevertheless, after Mattel's motion had been filed and ruled upon by the Discovery Master, Bryant moved to overrule comparable instructions given at the deposition of Alan Kaye.[47] The Discovery Master granted Bryant's motion to compel in substantial part and overruled Mattel's instructions not to disclose facts or understandings learned from communications with counsel, holding that such facts and understandings are not privileged.[48] The Court also permitted Bryant to

---

[46]  Proctor Dec. ¶ 21.

[47]  See Motion of Carter Bryant to Overrule Instructions Not to Answer During Deposition of Alan Kaye, dated March 28, 2007 ("Kaye Motion"), Proctor Dec. ¶ 22, Exh. 21. During the meet and confer process on that motion, Mattel informed Bryant that if Bryant so abandoned the parties' agreement, Mattel would move to overrule comparable instructions not to answer made at Bryant's deposition, which Mattel had not yet moved on. Proctor Dec. ¶ 23, Exh. 24.

[48]  For example, the Discovery Master overruled the following instructions given at Mr. Kaye's deposition:
   Page:  80:3-21

**REDACTED**

MATTEL'S MOTION RE: BRYANT

1   "resume questioning Mr. Kaye on all areas that Bryant's counsel previously

2   attempted to cover in his prior deposition," and granted Bryant four hours for the

3   continued Kaye deposition.[49]

4      **G.    Mattel's Efforts to Meet and Confer**

5         Mattel attempted to resolve this motion without further burdening the Court,

6   to no avail.  During several meet and confers, Mattel explained that Bryant's

7   deposition should be reopened for the reasons set forth in this motion, including

8   because of the new claims and parties added to the case after Bryant's deposition

9   and the new evidence requested by Mattel before Bryant's deposition but first

10   produced by defendants after the deposition.[50]  At their request, Mattel also provided

11   Bryant's counsel with examples of the newly produced documents that warrant

12   further deposition time.[51]

13         Bryant refused Mattel's requests on the sole stated basis that Mattel is not

14   entitled to a "do over" of its prior motion, which in fact addressed only specific

15      Page: 98:5-19

16

17

18

19                          **REDACTED**

20

21

22

23   Bryant's Separate Statement in Support of the Kaye Motion, Instruction Nos. 15, 17;

24   May 4, 2007 Order Granting in Part Bryant's Motion to Overrule Instructions Not to

25   Answer During the Deposition of Alan Kaye ("May 4 Order re: Kaye"), ¶ 1 &
      Attachment A, Proctor Dec. Exhs. 22, 25.

26      [49]  May 4 Order re: Kaye, at 2:10-12, Proctor Dec. Exh. 25.

27      [50]  Proctor Dec. ¶ 26, Exhs. 29-30.
        [51]  Proctor Dec. Exh. 30.

28

1   instructions not to answer at the Bryant deposition -- <u>not</u> the instructions at issue on

2   this motion or the present request for additional time to question Bryant on new

3   evidence and subsequently asserted claims.[52]   At no point did Bryant even suggest,

4   let alone offer authority, that on the merits Mattel should not be permitted to

5   question him regarding new evidence produced by defendants or the claims filed

6   after Bryant's deposition was taken in 2004.[53]

<u>Argument</u>

7

8   I.     <u>THE COURT SHOULD REOPEN BRYANT'S DEPOSITION FOR ALL</u>

9          <u>PURPOSES AND GRANT MATTEL ADDITIONAL TIME FOR</u>

10         <u>QUESTIONING</u>

11         A.     <u>Defendants Have Finally Produced Long Withheld Documents</u>

12              It is well established that a party can be compelled to testify regarding new

13   evidence that comes to light following his initial deposition.  "[A] second deposition

14   is often permitted, where new information comes to light triggering questions that

15   the discovering party would not have thought to ask at the first deposition."  <u>Keck v.</u>

16   <u>Union Bank of Switzerland</u>, 1997 WL 411931, at *1 (S.D.N.Y. 1997) (permitting

17   plaintiff to reopen depositions of two witnesses because "the request to reopen the

18   questioning is based on new information"); <u>see also</u> <u>Ritchie v. U.S.</u>, 2004 WL

19   1161171, at *3 (N.D. Cal. 2004) ("when further evidence linking [witness to the

20   project in dispute] subsequently came to light this court permitted plaintiff to depose

21   [the witness] a second time"); <u>Robins v. Scholastic Book Fairs</u>, 928 F. Supp. 1027,

22   1036 (D. Or. 1996) (finding "that the second set of depositions of these individuals

23   was necessary because they had to be questioned about additional documents that

24   Defendant produced after the first set of depositions"); <u>Dixon v. Certainteed Corp.</u>,

25

26

27   [52]   Proctor Dec. ¶ 27, Exhs. 31-32.
28   [53]   Proctor Dec. ¶ 27, Exhs 31-32.

1    164 F.R.D. 685, 692 (D. Kan. 1996) (production of document containing statement

2    by witness after first deposition warranted second deposition).

3        Indeed, when Mattel's witnesses, Alan Kaye and Ann Driskill, appeared for

4    depositions this year following their original 2004 depositions, defendants

5    questioned them extensively regarding documents and topics that were not

6    addressed at the prior depositions -- even though the Court's orders only permitted

7    them to question the witnesses on "areas that Bryant's counsel previously attempted

8    to cover" in the prior depositions.[54]  That was proper, according to defendants,

9    because this new evidence had not yet come to light at the time of the prior

10   depositions.[55]  The same is true here.  A wealth of new evidence has come to light

11   since Bryant's initial deposition.  Nearly all of it was requested by Mattel prior to

12   Bryant's deposition but withheld by defendants for tactical reasons, and

13   subsequently compelled by the Discovery Master.  Mattel should be allowed to

14   question Bryant about it.

15       1.    **New Evidence Produced By Bryant**

16       Well after Mattel served document requests on Bryant and subpoenaed MGA,

17   Mattel took Bryant's deposition in November 2004.[56]  As of the date of Mr. Bryant's

18   deposition, Bryant had produced 1588 pages of documents, and MGA had produced

19

20

21

22   [54]  See, e.g., Kaye Depo. at 395:7-18, 394:19-398:6, 459:21-466:6, 554:16-

23   565:8, 566:9-569:24; Driskill Depo. at 360:19-362:11, 401:2-403:1, 412:4-413:15,
     415:18-419:5 (defense counsel examining Kaye and Driskill regarding documents

24   that were not addressed in their prior depositions), Proctor Dec. ¶ 25, Exhs. 27-28.

25   [55]  See, e.g., Kaye Depo. at 395:7-18, Proctor Dec. Exh. 27 (Bryant's counsel
     arguing that he was entitled to go beyond the prior deposition into new areas

26   because the documents he was showing "weren't shown to the witness at [his prior]

27   deposition because you [Mattel] hadn't produced them yet").

     [56]  Proctor Dec. ¶ 12.

28

MATTEL'S MOTION RE: BRYANT

1   676 pages of documents.[57] Mattel's questioning of Bryant was necessarily limited by

2   the evidence defendants chose to produce.

3        Since then, Bryant has produced almost 20,000 additional pages, including a

4   number of key documents.[58] For instance, Bryant first produced his fee agreement

5   on June 28, 2007.[59] This agreement reflects that MGA has indeed been paying

6   ⌐

7

8                             **REDACTED**

9   ε        ε

10              Thus, the fee agreement shows that Bryant had and continues to

11  have a strong bias to tilt his testimony in favor of MGA, which is paying his legal

12  fees and which can seek reimbursement of those fees from Bryant if it so chooses.

13  Mattel is entitled to question Bryant about his understanding of this and other

14  relevant, withheld documents.

15       Mattel is also entitled to question Bryant about the "Evidence Eliminator"

16  software loaded onto his computer. The "Evidence Eliminator" website advertises

17  that, with use of this software, "the data destroyed is gone forever and it is

18  impossible to create mirror images of defendants' hard drives."[61] Courts have also

19  recognized this, and imposed terminating sanctions based on use of this program.

20  See Communications Center, Inc. v. Hewitt, 2005 WL 3277983, at *2-3 (E.D. Cal.

21  2005) (finding that defendant's use of "Evidence Eliminator" software warranted

22  default judgment for plaintiff: "the data destroyed is "gone forever" and it is

23  impossible to create mirror images of defendants' hard drives as they existed. . . no

24

25  [57]  Zeller Dec. ¶ 3.

26  [58]  Zeller Dec. ¶ 5.
    [59]  Proctor Dec. ¶ 2, Exh. 1.

27  [60]  Proctor Dec. Exh. 1, at BRYANT2 000011.
    [61]  Zeller Dec. Exh. 15.

28

1   sanction short of default is available to return the parties to the position in which

2   they would have been but for the deliberate [use of "Evidence Eliminator" software]

3   by defendant."); <u>Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.</u>, 2003 WL

4   22433095, at *3 (N.D. Ill. 2003) (party's possession of "Evidence Eliminator"

5   software and the fact that documents that one would reasonably expect to be found

6   were not produced or discovered supports a finding that documents were

7   purposefully destroyed).

8          In March 2007, Bryant also first produced Bratz drawings dated September

9   19, 1999 -- a date that falls in the middle of Bryant's second term of employment

10  with Mattel.[62]  These documents are important to many of Mattel's claims -- indeed,

11  Mattel claims that it owns drawings that Bryant created during his Mattel

12  employment.  Bryant and MGA have put timing at issue by claiming that Bryant

13  created his drawings and performed other relevant work either during the few

14  months in 1998 when he was not working for Mattel or after he left Mattel in

15  October 2000.[63]  Mattel is entitled to question Bryant regarding these key

16  documents.

17         In May and June 2007, after being compelled to do so, Bryant belatedly made

18  the originals of many of the key original documents in this case available for

19  inspection and photographing.  Despite Bryant's counsel's promise to bring them to

20  the deposition, Bryant made only a few original drawings available at his

21  deposition.[64]  Much of the documentary evidence produced by Bryant consists of

22  undated design drawings, without complete fax headers, date and time stamps and

23  fax cover pages, which Bryant produced to Mattel as black and white photocopies.[65]

24  Inspecting the original documents has opened a number of new lines of questioning

25  _____

[62]  Proctor Dec. Exh. 7.

26  [63]  <u>See, e.g.</u>, Bryant Depo. at 45:7-14, 139:23-141:8, Proctor Dec. Exh. 14.

27  [64]  <u>See supra</u>, at Background (C).

[65]  Zeller Dec. ¶ 8.

28

1   for Mattel, including based on new information that was not reflected in Bryant's

2   black and white photocopies. Mattel is entitled to question Bryant regarding the

3   original documents that he promised, but failed, to produce at deposition.

4                   **2.**   **New Evidence Produced By MGA**

5       As of the date of Bryant's deposition, MGA had produced 676 pages of

6   documents.[66]  Since then, after being compelled by the Discovery Master, MGA has

7   produced more than 155,000 additional pages.[67]  These new productions include the

8   following key documents, among many others: (1) a fax from Bryant to David

9   Rosenbaum, outside counsel for MGA, dated September 14, 2000, wherein Bryant

10   stated that he cannot ask Mattel's Human Resources any more questions about his

11   contract·

12                          **REDACTED**

13

14   ʻ                               invoices showing that one

15   vendor alone billed MGA for 169 hours of development services on Bratz that were

16   performed before Bryant left Mattel;[70] and (4) a February 24, 2003 declaration

17   signed by Bryant that contains false dates about the timing of Bratz's release and

18   was submitted in support of a patent application in which Larian claimed to be the

19   sole inventor of Bratz features which Bryant had previously claimed Bryant

20   created.[71]  Mattel is entitled to question Bryant about these and other highly relevant

21   documents produced in the past few months.[72]

22

---

23   [66]  Zeller Dec. ¶ 3.

     [67]  Zeller Dec. ¶ 7.

24   [68]  Proctor Dec. Exh. 2.

     [69]  Proctor Dec. Exh. 3.

25   [70]  Proctor Dec. Exh. 4.

26   [71]  Proctor Dec. Exh. 5.

27   [72]  As mentioned above, Mattel also expects MGA to produce many additional documents in coming weeks.  See supra at Background (B).

28

3.      **New Evidence Produced By Third Parties**

Finally, third parties have also produced new evidence since Bryant's deposition.  For example, on August 21, 2006, Union Bank produced documents which show that that Bryant was receiving payments from MGA while still employed by Mattel.[73]  In September of 2006, Steve Linker produced documents which, along with his deposition testimony, show that Bryant created a key design drawing that was the basis for three-dimensional sculptures of the Bratz dolls while Bryant was still employed by Mattel.[74]  In February 2005, Anna Rhee testified that she was painting three-dimensional Bratz heads by June 2000 -- a time well before Bryant left Mattel.[75]  Documents relating to Ms. Rhee's work were produced only after Bryant's deposition -- and were first produced by Ms. Rhee.  It was only after Ms. Rhee produced them that MGA belatedly did so.[76]  The list of relevant new evidence literally goes on and on.

Carter Bryant is the most important witness in this case.  Since he was deposed, and since Mattel's motions to compel were granted, a treasure trove of new evidence has come to light.  Mattel is entitled to explore this crucial new evidence at a resumed deposition.  See, e.g., Keck v. Union Bank of Switzerland, 1997 WL 411931, at *2 (permitting plaintiff to reopen depositions of witnesses because "the request to reopen the questioning is based on new information"); Dixon v. Certainteed Corp., 164 F.R.D. at 692 (production of document containing statement

---

[73]   See September 29, October 11, and October 13 invoices from ABC International Traders (MGA's predecessor) to Bryant, Proctor Dec. Exh. 6.

[74]   Linker, who worked as an independent consultant/designer for MGA, recently testified that MGA gave that design drawing (as well as other Bratz development documents) to him at a meeting held *before* Bryant left Mattel. Deposition of Steven Linker ("Linker Depo.") at 77:6-78:23, Proctor Dec. Exhs. 8-9.

[75]   Rhee Depo. at 105:2-110:9; 146:25-154:24 & Exh. 201, Proctor Dec. Exh. 10.

[76]   Proctor Dec. ¶ 10, Ehs. 11-12.

1  by witness after first deposition warranted second deposition).  Bryant's deposition

2  should be reopened for all purposes.

3  **B.    New Claims Have Been Filed Since Bryant's First Deposition**

4          Mattel is also entitled to explore Bryant's knowledge and information

5  regarding the many new claims that have been filed since he was deposed.  In

6  April 2005, MGA filed suit against Mattel alleging claims for false designation of

7  origin, unfair competition, trade dress dilution and unjust enrichment.[77]  Mattel has

8  also filed thirteen counterclaims against Bryant, MGA and others, including

9  copyright infringement and RICO claims against Bryant, MGA and Larian.[78]

10  Bryant is obviously knowledgeable about the counterclaims Mattel has alleged

11  against him, and MGA has listed him as a knowledgeable witness regarding its

12  unfair competition claims against Mattel.[79]

13          It is well established that witnesses may be deposed further on new claims

14  filed after their initial depositions were taken.  See, e.g., Keithley v.

15  Homestore.com, Inc., 2006 WL 1646119, at *1 (N.D. Cal. 2006) (rejecting

16  argument that witness should not have to be deposed again, "in light of the . . .

17  additional claims that have been added since his [] deposition more than two years

18  ago."); Tillery v. Darby-Rogers Co., 2006 WL 2735162, at *5 (M.D. Fla. 2006)

19  ("The Court will allow Defendants to re-depose Plaintiffs regarding the new

20  claims"); Collins v. International Dairy Queen, 189 F.R.D. 496, 498 (M.D. Ga.

21  1999) (granting defendants' request to reopen depositions of several witnesses based

22  on new claims in amended complaint: "Because of the time that has elapsed, the

23

24      [77]    MGA Complaint, ¶¶ 101-125.

25      [78]    See, e.g., Second Amended Answer and Counterclaims at ¶¶ 82-97, 122-128,
        136-141, 149-166.

26      [79]    MGA's Responses to Mattel's First Set of Interrogatories Re: Claims of

27  Unfair Competition, dated January 19, 2007, Response No. 1 at 6:9, Proctor Dec.
    Exh. 17.

28

1  addition of new claims, and the evident knowledge of the witnesses in particular

2  areas, re-examination of the two witnesses is likely to provide additional

3  information not obtainable at the first depositions.").

4          Here, likewise, because of the time that has elapsed since Bryant's first

5  deposition, the claims in MGA's Complaint and Mattel's Counterclaims and the

6  evident knowledge of Mr. Bryant in relevant areas, Bryant's re-examination is likely

7  to provide additional information not obtainable at his first deposition.  Even putting

8  MGA's entire Complaint to the side, Mattel needs to question Bryant about the

9  following topics, among others: (1) what copies Bryant has made of the works

10  Mattel claims it owns and Bryant infringed; (2) Bryant's knowledge of any copies

11  other defendants made of the works Mattel claims it owns; and (3) Bryant's role in

12  the alleged RICO enterprise, his knowledge of other participants' roles, and his acts

13  of mail fraud and wire fraud.

14          Moreover, Mattel is entitled to question Bryant regarding his participation in

15  the design and development of the many dozens of Bratz products MGA put at issue

16  by filing its unfair competition complaint.  Mattel had no reason to question Bryant

17  regarding any of these topics at his first deposition.  MGA agrees that he is one of

18  the most knowledgeable people about them.[80]  Mattel is entitled to question him on

19  them now.

20  **II.    THE COURT SHOULD OVERRULE ADDITIONAL INSTRUCTIONS**

21  **NOT TO ANSWER**

22          The Court previously overruled 47 instructions not to answer at the Bryant

23  deposition.  Aside from those, there are an additional 12 instructions which Mattel's

24  prior motion did not address that should be overruled because the questions did not

25  call for the disclosure of privileged communications.

26

27  _____

    [80]    Proctor Dec. Exh. 19.

28

1    The attorney-client privilege protects from discovery only the substance of

2    "confidential communications" between a client and his attorney.  Clarke v.

3    American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992); McKay v.

4    C.I.R., 886 F.2d 1237, 1238 (9th Cir. 1989).  As set forth in the accompanying

5    Separate Statement, Bryant's counsel repeatedly instructed Bryant not to answer

6    questions that did not call for the substance of attorney-client communications.

7    Instead, they merely called for disclosure of facts and information known to Bryant.

8    Many did not require anything more than a simple "yes" or "no" answer.  The

9    following excerpts are illustrative:

10

11

12

13

14

15                                  **REDACTED**

16

17

18

19

20

21

22

23    The Court has already ruled on a motion that Bryant brought that a witness'

24    own understanding of events and information known to a witness are discoverable.[83]

25    That is because the mere fact that a witness reveals facts to a lawyer or learns facts

26    [81]   Bryant Depo. at 477:4-13, Proctor Dec. Exh. 14.
27    [82]   Bryant Depo. at 639:11-17, Proctor Dec. Exh. 14.
28    [83]   See supra at Background (F).

07209/2179788.3

-21-

1  from a lawyer does not make the facts themselves privileged.  "[I]t is only the

2  communications that are subject to attorney-client privilege, and not the

3  foundational facts concerning the communication, or the underlying, independent

4  facts." AMCO Ins. Co. v. Madera Quality Nut LLC, 2006 WL 931437, at *18 (E.D.

5  Cal. 2006); see also Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir.

6  1995) ("Because the work product doctrine is intended only to guard against

7  divulging the attorney's strategies and legal impressions, it does not protect facts

8  concerning the creation of work product or facts contained within work product");

9  Garcia v. City of El Centro, 214 F.R.D. 587, 591 (S.D. Cal. 2003) (same); Nutmeg

10  Ins. Co. v. Atwell, Vogel & Sterling A Div. of Equifax Services, Inc., 120 F.R.D.

11  504, 509 (W.D. La. 1988) ("The courts have consistently held that the work-product

12  concept furnishes no shield against discovery, by interrogatories or by deposition, *of*

13  *the facts* that the adverse party's lawyer has learned, or the persons from whom he

14  has learned such facts, or the existence or non-existence of documents, even though

15  the documents themselves may not be subject to discovery.") (citing 8 Wright &

16  Miller, Fed. Practice and Procedure § 2023 (1970) (emphasis in the original)).

17  Questions about Bryant's understanding of agreements he signed do not call

18  for the substance of any attorney-client communications and are not protected by the

19  work-product doctrine.  Such facts are not privileged.  This is the law of the case as

20  a result of motions Bryant brought against Mattel.[84]  Bryant bears the burden of

21

22  † Bryant's counsel argued in his motions regarding the Kaye and Driskill

23

24  **REDACTED**

25

26  Kaye Motion at 17:10-16 (emphasis in the original); Memorandum of Points and Authorities in Support of Motion of Carter Bryant to Overrule Instructions Not

27  to Answer During the Deposition of Ann Driskill, dated March 28, 2007, at 15-16, Proctor Dec. Exhs. 21, 23.  The Discovery Master agreed with Bryant's arguments,

28  (footnote continued)

MATTEL'S MOTION RE: BRYANT

1   supporting his privilege assertions. U.S. v. Munoz, 233 F.3d 1117, 1128 (9th Cir.

2   2000). Because he cannot do so, the improper instructions set forth in the

3   concurrently filed Separate Statement should be overruled.

4        Moreover, Mattel submits that defense counsel's conduct at the Bryant

5   deposition independently requires that it be reopened. The Court has already found

6   that defense counsel attempted to coach Bryant at his deposition and interposed 47

7   improper instructions not to answer.[85] When viewed as a whole, counsel's conduct

8   obstructed a fair and complete examination of the witness. Therefore, as the Court

9   also previously ruled in connection with the Kaye and Driskill depositions, Mattel

10  should be allowed to further question Bryant on all topics it attempted to address at

11  the prior deposition, and not just those topics which were the subject of specific

12  improper instructions not to answer.[86] See, e.g., Burrows v. Redbud Community

13  Hosp. Dist., 187 F.R.D. 606, 613 (N.D. Cal. 1998) ("allow[ing] plaintiffs to

14  complete the deposition because defendants' counsel impermissibly coached [the

15  witness]"); Stempler v. Collect America, Ltd., 2000 WL 288377, at *1 (E.D. La.

16  2000) (granting plaintiff additional time for deposition due to defense counsel's

17  inappropriate objections).

## Conclusion

19       For the foregoing reasons, Mattel respectfully requests that the Court:

20  (1) overrule each of the instructions set forth in table format in the Proposed Order

21  lodged concurrently herewith, and (2) order that Bryant's deposition be reopened for

22  all purposes to permit Mattel to question Bryant regarding the new evidence that has

---

overruling Mattel's counsel's instructions not to disclose information learned from

24  counsel. See May 4, 2007 Kaye Order; May 4, 2007 Driskill Order, Proctor Dec.

    Exhs. 25-26.

    [85] Examples of this coaching and other improper conduct are included in the

26  accompanying Proctor Declaration. Proctor Dec. ¶¶ 12-14, Exh. 14.

    [86] May 4, 2007 Kaye Order ¶ 3; May 4, 2007 Driskill Order ¶ 3, Proctor Dec. ¶

27  24, Exhs. 25-26.

07209/2179788.3

1  come to light since his deposition was taken and claims filed since that date, and

2  because defendants' counsel's coaching, interruptions and other improper conduct at

3  the original Bryant deposition obstructed a fair examination of the witness.

4  Moreover, in light of the significance of Bryant's testimony and the volume of new

5  documents and evidence and new claims Mattel needs to question Bryant about,

6  Mattel respectfully requests that it be granted 21 hours at the resumed deposition.

7

8  DATED:  August 1, 2007            QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
9

10                                   By
11                                      B. Dylan Proctor
                                        Attorneys for Plaintiff Mattel, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 3

KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>                              Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727<br><br>DISCOVERY MATTER<br><br>[To be heard by Discovery Master Hon. Edward Infante (Ret.)]<br><br>**OPPOSITION TO MATTEL INC.'S MOTION FOR ADDITIONAL TIME AND/OR TO REOPEN THE DEPOSITION OF CARTER BRYANT FOR ALL PURPOSES AND TO OVERRULE ADDITIONAL INSTRUCTIONS NOT TO ANSWER AT THE DEPOSITION**<br><br>Date:      TBA<br>Time:      TBA<br>Place:     Telephonic<br><br>Discovery Cut-Off: Jan. 14, 2008<br>Pre-Trial Conference: Apr. 7, 2008<br>Trial Date:  Apr. 29, 2008 |

OPPOSITION TO MATTEL INC.'S MOTION FOR ADDITIONAL TIME AND/OR TO REOPEN THE
DEPOSITION OF CARTER BRYANT FOR ALL PURPOSES AND TO OVERRULE ADDITIONAL
INSTRUCTIONS NOT TO ANSWER AT THE DEPOSITION
CASE NO. CV 04-09049 SGL (RNBx)

401155.01

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................2

    A.    Mattel insists on deposing Carter Bryant prior to the conclusion of written discovery, and deposes him for three days in November 2004. ................................................................2

    B.    Three years later, Mattel moves to reopen Mr. Bryant's deposition testimony based on improper privilege instructions from counsel. ................................................................4

    C.    The Discovery Master grants Mattel 2 hours of additional deposition testimony, and limits the scope of the examination. ................................................................4

    D.    Months later, Mattel states that it is considering moving – again – to reopen Mr. Bryant's Deposition. ................................5

    E.    Now Mattel demands that the Court again review and overrule instructions made during Bryant's deposition, and asks for three additional days of deposition testimony. ................6

III.  ARGUMENT ................................................................................................6

    A.    Mattel has failed to show need or good reason for reopening Mr. Bryant's deposition. ................................................6

    B.    Production of documents and other discovery since November 2004 do not support Mattel's second motion to reopen Mr. Bryant's deposition. ................................................8

        1.    Mattel had access to virtually all the "new documents" prior to filing its February Motion. ................8

        2.    The production of the MGA/Bryant fee agreement does not justify reopening Mr. Bryant's deposition. ................9

        3.    Mattel already deposed Mr. Bryant about the "Bratz drawings" depicted in the documents that Mattel now claims support an additional 21 hours of deposition testimony. ................................................................10

        4.    Mattel is affirmatively misleading the Court regarding "Carter Bryant's" computer. ................................11

    C.    Claims filed since Mr. Bryant's first deposition provide no basis for the reopening of Bryant's deposition. ................13

    D.    Mattel's attempt to overrule additional instructions should be denied. ................................................................14

i

1.   Mattel's new objections are largely duplicative of similar objections propounded in Mattel's February 2007 Motion to Overrule Instructions. .......................................14

2.   Mattel's attempt to revive objections to counsel's conduct during the deposition should be denied. .....................17

IV.   CONCLUSION ..........................................................................18

# TABLE OF AUTHORITIES

## FEDERAL CASES

Dixon v. CertainTeed Corp.
164 F.R.D. 685 (D. Kan. 1996) ........................................................................6

Keithley v. Homestore.com, Inc.
2006 WL 1646119 (N.D. Cal. 2006) .............................................................13

Communications Center, Inc. v. Hewitt
2005 WL 3277983 (E.D. Cal. 2005)..............................................................12

Fresenius Medical Care Holdings, Inc. v. Roxanne Laboratories, Inc.
2007 WL 764302 (S.D.Ohio, Mar. 9, 2007) ...................................................7

Kucala Enterprises, Ltd. v. Automobile Wax Company, Inc.
2003 WL 22433095 (N.D. Ill. 2003) .............................................................12

Lowery v. Noble Drilling Corp.
1997 WL 675328 (E.D.La. October 29, 1997)................................................7

## MISCELLANEOUS

Cal. Bus. & Prof. C. § 6149...............................................................................9

Moore's Fed. Practice 3d § 30.05[1][c] ............................................................8

iii

OPPOSITION TO MATTEL INC.'S MOTION FOR ADDITIONAL TIME AND/OR TO REOPEN THE
DEPOSITION OF CARTER BRYANT FOR ALL PURPOSES AND TO OVERRULE ADDITIONAL
INSTRUCTIONS NOT TO ANSWER AT THE DEPOSITION
CASE NO. CV 04-09049 SGL (RNBx)

401155.01

# I.   INTRODUCTION

It is not often that a litigant asks the Court to reconsider a motion that it has already brought *and won.* But that is precisely what Mattel asks here.

In 2004, Mattel made the tactical decision to depose Carter Bryant at the outset of the case, when the parties had barely begun document discovery. That is a tactical choice every litigant faces, as regards every witness: take his deposition early, before he knows the evidence and testimony from other sources, or take it towards the end of discovery, when the record is fuller but the witness is better prepared? Mattel chose to take Mr. Bryant "right out of the box," and deposed Mr. Bryant for three full days.

Nearly three years later, Mattel sought—and received—a small second bite of the apple. In February of this year, it moved to compel a further deposition of Mr. Bryant based on a number of instructions not to answer based on privilege grounds ("Mattel's February Motion"). This Court, on March 7, granted that motion, overruling some of counsel's instructions and ordering Mr. Bryant to sit for an additional two hours to answer those specific questions. But instead of scheduling that deposition, Mattel has now renewed the same motion. Having gotten two hours of nose under the tent, Mattel wants to reargue the same motion in order to push through an incredible *twenty-one hours* worth of camel.

If Mattel had a problem with the Court's March 7 ruling on its original motion to reopen, its recourse was to file objections with Judge Larson. It chose not to, and the order on that motion is now final.

Instead, Mattel attempts to dress up and revive the February Motion in the hyperbolic clothing of "recently produced" or "improperly withheld" documents. Those claims, however, do not survive scrutiny for myriad reasons. *First,* virtually all of the documents cited by Mattel in this motion had been produced long before it filed its February Motion. *Second,* most of the documents cited by Mattel came

1

1  not from Mr. Bryant but from other parties or non-parties.  Mattel's tactical choice

2  to depose Mr. Bryant before completing discovery from others cannot be laid at

3  Mr. Bryant's feet.  If Mattel wanted to assert those documents as a basis to reopen,

4  it could and should have done so the first time around.  *Third,* much of Mattel's

5  motion rests on what can only be described as a deliberate attempt to mislead the

6  Court concerning the history and contents of a computer Mr. Bryant owned from

7  2000 through 2003, and had given away long before this lawsuit was filed.  As set

8  forth below, Mattel's allegations in this regard are nothing short of deliberate

9  misrepresentations to this Court.  *Finally,* Mattel's attempt to overrule 12

10  additional instructions, after moving to overrule 67 instructions just 6 months ago,

11  disregards and second guesses the Court's March 7 order.

12       Mattel made its tactical choice to depose Mr. Bryant "right out of the box."

13  That choice has its upside and its downside.  Mattel is not entitled to have it both

14  ways by deposing Mr. Bryant for three days at the start of discovery, and three

15  more at the end. Mr. Bryant respectfully requests that this Court DENY Mattel's

16  Motion for Additional Time and / or to Reopen the Deposition of Carter Bryant

17  ("Mattel's Second Motion").

18

19             **II.  BACKGROUND**

20  **A.  Mattel insists on deposing Carter Bryant prior to the conclusion of written discovery, and deposes him for three days in November 2004.**

21

22       In late April 2004, Mattel filed its complaint in this case, claiming breach of

23  contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment

24  and conversion.  Shortly thereafter, Mattel served its first request for production of

25  documents on Bryant,[1] and three days later, Mattel served notice for his

26  deposition.[2]

27  [1] Zeller Dec. ISO Mattel's Motion Exh. 1.

28  [2] Proctor Dec. ISO Mattel's Motion Exh. 13.

1        Prior to the deposition, Mr. Bryant argued that Mattel had refused to produce

2    documents supporting its claims against him, and that such production must

3    precede that deposition.[3]  Mr. Bryant also expressed his concern that "Mattel was

4    seeking to depose [Mr. Bryant] now and then use the excuse of additional

5    documents as a reason to compel him to come back."[4]  As a potential solution,

6    Bryant proposed "phased discovery" which would allow document production to

7    be fully exchanged before depositions would take place.[5]  Mattel refused.[6]  In

8    addition, Bryant moved for a protective order, requesting that Mattel produce

9    certain documents before the deposition.[7]  This motion was granted.[8]

10       At Mattel's insistence, and pursuant to a court order it demanded, Mr.

11   Bryant's deposition commenced on November 4.  The first day of deposition

12   testimony started at 9:10am and ended at 5:00pm.  The following day, November

13   5, Mattel deposed Mr. Bryant again, starting at 9:10am and ending at 4:57pm.  A

14   third day of deposition testimony took place on November 8, and went from

15   10:27am to 5:09pm.[9]  Over the course of those three days of deposition, Mattel

16   conducted approximately 17 hours of examination, excluding breaks.[10]

17

18

19

20   [3] See Declaration of Christa M. Anderson in Support of Opposition to Mattel's Motion ("Anderson Dec.") Exh 1, at 2.

21   [4] Anderson Dec. Exh 1, at 11.  This concern was reiterated in Bryant's September 3, 2004 Motion for Protective Order:  "Mattel's objective in seeking to depose Bryant at this early stage

22   of document discovery is clear:  it wants to ignore the 'one deposition rule' by taking his deposition at once, and then, after more document discovery, take it again." Anderson Exh 2, at

23   1.

24   [5] Anderson Dec. Exh 2, at 12, 17.

     [6] See Anderson Dec. Exh 3, at 16.

25   [7] Anderson Dec. Exh 2 at 12, 17.

26   [8] Anderson Dec. Exh. 4.

     [9] Anderson Dec. ¶ 16.

27   [10] Anderson Dec. ¶ 16.

28

**B.     Three years later, Mattel moves to reopen Mr. Bryant's deposition testimony based on improper privilege instructions from counsel.**

On February 1, 2007, Mattel filed a Motion to Overrule Instructions Not to Answer During the Deposition of Carter Bryant ("Mattel's February Motion"). Mattel's motion listed 67 separate examples of instructions they found inappropriate. This included many instructions Mattel claimed were "improper privilege instructions" made after counsel had posed questions asking for "Bryant's own understanding."[11]  For example, Mattel objected to the following instruction:[12]

> Q (By Mr. Quinn) It says that, you know, inventions that I create will be owned by the company. Do you have any understanding what those words mean?
>
> MR. WICKHAM:  Counsel, I would – if you – attorney-client privilege.  To the extent your understanding of this phrase, this paragraph, or this document is based on advice of counsel, instruct you not to respond.
>
> MS. CENDALI:  I also object on the grounds of vagueness and time frame.
>
> A  I'm not going to respond.

**C.     The Discovery Master grants Mattel 2 hours of additional deposition testimony, and limits the scope of the examination.**

The Discovery Master granted Mattel's motion in part, and overruled 47 of counsel's objections.[13]  Having reviewed Mattel's motion and reply briefs, and after hearing oral argument, the Court concluded that Mr. Bryant should reappear for a limited amount of time to answer a specific set of questions and "reasonable follow up questions."  Mattel was granted an additional 2 hours of deposition testimony from Bryant.[14]

---

[11] Anderson Dec. Exh 5.

[12] Anderson Dec. Exh 6, Objection 34 (citing Bryant Depo. 641:20-642:5).

[13] Proctor Dec. Exh. 15.

[14] Id.

4

**D.      Months later, Mattel states that it is considering moving – again – to reopen Mr. Bryant's Deposition.**

By letter of May 11, Mattel expressed its intention to file a new motion to overrule additional instructions during Mr. Bryant's deposition, and to reopen that deposition for all purposes.  Mattel made only one argument why such a motion was warranted:  because the Discovery Master's May 4, 2007 order reopened the depositions of Alan Kaye and Ann Driskill "for all purposes," Mr. Bryant's deposition should also be reopened without limitations.[15]

On May 15, Bryant responded, stating that he had reviewed the instructions that Mattel believed warranted additional time above and beyond the 2 hours granted by the Discovery Master.[16]  Bryant rejected Mattel's demands, pointing out that those instructions were proper, and that Mattel had tried to create the impression of improper instructions by truncating the citations.

Then, Mattel was silent on the issue for over a month.  Finally, on June 19, counsel for Mattel called counsel for Mr. Bryant offering a new argument:   that Carter Bryant's deposition should be further extended because of "numerous" late-produced documents.[17]  Mattel's counsel, however, did not identify any such documents, and Mr. Bryant's counsel accordingly wrote asking that he do so.[18]

Another month passed and, finally, on July 17, Mattel forwarded a set of documents they contended justify the unlimited reopening of Mr. Bryant's deposition.[19]  Those documents, however, establish nothing of the sort.  They were, with a single exception, *all* documents that were produced not by Mr. Bryant, but

---

[15] Proctor Dec. Exh. 29.

[16] Proctor Dec. Exh. 31.

[17] See Anderson Dec. Exh. 8.

[18] Id.

[19] Proctor Dec. Exh. 30.

1    by MGA and had been produced *prior* to Mattel's February Motion.[20]

2

**E.     Now Mattel demands that the Court again review and overrule**
3    **instructions made during Bryant's deposition, and asks for three**
**additional days of deposition testimony.**
4

5           On August 1, 2007, Mattel filed the instant motion, arguing yet again that

6    Mr. Bryant's counsel relied on improper privilege instructions.[21]   In an attempt to

7    distinguish this motion from their February Motion, Mattel now makes additional

8    arguments – arguments that were at their disposal long before February.

9    According to Mattel's new theory, the production of additional documents since

10   the November 2004 deposition, and the additional claims filed by MGA in April

11   2005 warrant *21 hours* of additional testimony.   Moreover, Mattel requests that the

12   deposition "be reopened for all purposes."

13          Mattel's extraordinary demands amount to nothing more than a desire to

14   have a "do over."   Worse yet, Mattel second guesses the Discovery Master's

15   March 7 Order reopening Bryant's deposition for a *limited time* and for *limited*

16   *topics*.   While Mattel's persistence in filing the same motion twice is notable, it

17   should not be rewarded.

18

19                              **III.    ARGUMENT**

**A.     Mattel has failed to show need or good reason for reopening Mr.**
20   **Bryant's deposition.**

21

          "Courts generally disfavor second depositions, and absent a showing of need
22

23   or good reason, a court generally will not require a deponent to appear for a second

deposition."[22]   New developments may – but do not automatically – provide
24

---

25   [20] Proctor Exh. 30.

26   [21] "[T]here are an additional 12 instructions which Mattel's prior motion did not address that should be overruled because the questions did not call for the disclosure of privileged
27   communications."   Mot. at 20.

28   [22] Moore's Fed. Practice 3d § 30.05[1][c], citing <u>Dixon v. CertainTeed Corp.</u>, 164 F.R.D. 685,

1  grounds for reopening a deposition.[23]  Courts "may deny leave to conduct a second

2  deposition of the witness *even if* relevant documents are produced subsequent to

3  the deposition if the party taking the deposition . . . chose to conduct the deposition

4  prior to the completion of document discovery."[24]

5      Mattel made a strategic choice to depose Carter Bryant at the outset of

6  litigation, well before the close of document discovery.  Furthermore, Mattel

7  rejected a plan that would have allowed for phased discovery, instead opting to

8  depose Mr. Bryant for three days in November 2004.[25]  Now Mattel argues that the

9  production of documents and additional claims filed since Mr. Bryant's deposition

10  provide sufficient need and reason for this instant motion.  Nonsense.

11      Almost all the documents Mattel claims warrant reopening the deposition

12  were produced in 2005 and 2006, MGA's claims were filed in 2005, and Mattel's

13  Amended Counterclaims were filed in January of this year.  Presumably, if Mattel

14  believed it had "need or good reason" for reopening Bryant's deposition based on

15  these documents and claims, it would have raised these issues in their February

16  Motion.  They did not.  Instead, Mattel has brought this duplicative motion,

17  wasting both Mr. Bryant's time and the Court's resources.

18      Mattel was previously warned that its decision to depose witnesses early on

19  would have consequences.  In 2005, Mattel moved to compel the deposition of

20  Isaac Larian.  Defendant MGA argued that, by taking Mr. Larian's deposition so

21  early, he would be subject to multiple and repeated depositions.  The Court noted

22

23  690 (D. Kan. 1996) (granting second deposition for limited purpose because defendant failed to conduct reasonable investigation to uncover relevant documents prior to deposition).

24  [23] See generally Lowery v. Noble Drilling Corp., 1997 WL 675328 at *1 (E.D.La. October 29, 1997) (denying defendant's motion to redepose witness in part because defendant could have "schedule[d] the deposition after it had inspected all responsive documents.").

25

26  [24] Fresenius Medical Care Holdings, Inc. v. Roxanne Laboratories, Inc., 2007 WL 764302 at *2 (S.D.Ohio, Mar. 9, 2007) (emphasis added).

27  [25] Anderson Dec. Exh 2-3.

28

7

that the Federal Rules limit depositions to seven hours unless otherwise authorized and dismissed MGA's arguments.[26]  However, Judge Block stated that he would take into account "the fact that Mattel persisted in going forward with Mr. Larian's deposition at the outset of discovery" should Mattel later seek to redepose Mr. Larian "on the basis of additional information developed in subsequent discovery."[27]  Similarly, this Court should take note of Mattel's insistence on deposing Mr. Bryant at the outset of the case, and deny its claim that new documents or claims now warrant reopening that deposition.

Moreover, Mattel's request for an additional **21 additional hours** to depose Bryant **"for all purposes"** flies in the face of reason.  "When a second deposition is permitted, the courts frequently limit the scope of the second deposition to specific matters not covered in the first deposition."  Moore's Fed. Practice 3d § 30.05[1][c].  Mattel's exaggerated requests, therefore, should be denied.

**B.    Production of documents and other discovery since November 2004 do not support Mattel's second motion to reopen Mr. Bryant's deposition.**

    **1.    Mattel had access to virtually all the "new documents" prior to filing its February Motion.**

The "new documents" cited by Mattel are not so new:  almost all were produced long before Mattel's February Motion.  Some were produced as far back as 2005.[28]  In addition, Mattel admits that all the third party documents they cite were produced in 2005 and 2006.[29]  If Mattel thought the production of those documents justified reopening Mr. Bryant's deposition, they could have - and should have - included them in their February Motion.  Mr. Bryant can not be

---

[26] Anderson Dec. Exh. 7.

[27] Anderson Dec. Exh. 7 (emphasis added).

[28] Zeller Dec. ¶3-4 and Exh. 2-3.

[29] Mot. at 18.

1  expected to defend against the same motion, over and over, every time Mattel's

2  counsel thinks of another exhibit or argument they should have raised the last time.

3      Furthermore, Mattel cites to numerous documents produced by MGA or

4  other parties to justify reopening Mr. Bryant's deposition. It was Mattel's tactical

5  choice to depose Mr. Bryant before it had completed its discovery from MGA.

6  Regardless whether Mattel or MGA is responsible for the timing of this discovery,

7  Mr. Bryant clearly is not. Mattel cannot justify dragging Mr. Bryant into three

8  additional days of deposition because it chose to depose him before it had obtained

9  documents from another party.

10
11
    **2.    The production of the MGA/Bryant fee agreement does not justify
            reopening Mr. Bryant's deposition.**

12
13      Nor does the June 2007 production of Mr. Bryant's fee agreement support

14  Mattel's demand to depose him for 21 more hours.[30] There are two separate

    reasons why that document cannot support Mattel's demands. *First*, that document

15  was not produced at the time of Mr. Bryant's deposition because at that time it was

16  privileged: as only state law claims were asserted against Mr. Bryant, state law

17  controlled, and fee agreements are privileged under California law.[31]

18      *Second*, Mattel cannot justify further expanding Mr. Bryant's deposition

19  based on discovery of his fee agreement because Mr. Bryant's deposition has

20  *already* been reopened for that purpose. One of the instructions not to answer that

21  this Court overruled in its previous motion was whether MGA was paying Mr.

22  Bryant's fees.[32] At Mr. Bryant's renewed 2 hour deposition, Mattel will ask that

23

24  [30] See Mot. at 15.

25  [31] Cal. Bus. & Prof. C. § 6149 (stating that written fee contract is deemed "confidential communication" for purpose of attorney-client privilege).
    [32]

26
27      Q (By Mr. Quinn) Is MGA paying your attorneys' fees –
        MR. WICKHAM: Objection.

28                                         9

1    question, Mr. Bryant will say "yes," Mattel will ask whatever follow-up questions

2    it can devise, and the matter will be closed.  The production of Mr. Bryant's fee

3    agreement does not change that state of affairs one whit, and can hardly be grounds

4    for an additional 21 hours of deposition testimony.

5

6          **3.      Mattel already deposed Mr. Bryant about the "Bratz drawings" depicted in the documents that Mattel now claims support an additional 21 hours of deposition testimony.**

7

8          Mattel also claims that it needs an additional 21 hours to depose Mr. Bryant

9    about two "Bratz drawings" which were produced in March 2007.[33]  Mattel fails to

10   mention that it received, and presumably reviewed, at least ten drawings depicting

11   the exact same "Bratz drawings" prior to Mr. Bryant's deposition.[34]  Mattel also

12   fails to mention the extensive questioning it conducted of these identical "Bratz

13   drawings" during Mr. Bryant's deposition.[35]  For example, Mr. Bryant testified that

14   one of the drawings "show[s] the original face design concepts" and that they were

15   created in 1998.[36]  He also testified that the other drawing was "a copy of one of

16   the poses that [he] created in '98."[37]  Mattel went on to question Mr. Bryant about

17   the handwritten notes found on those drawings,[38] and whether this drawing was

18

19         Q (By Mr. Quinn) – in this case?

20         MR. WICKHAM:  Objection, attorney-client privilege, joint defense privilege.  Instruct the witness not to respond.

21   Anderson Dec. Exh 7, at 61.  See also Zeller Dec. Exh 15 at 4.

22   [33] Mot. at 16; Proctor Dec. Exh. 8.

23   [34] <u>Compare</u> Proctor Dec. Exh. 7 at 33 to Anderson Dec. Exh 10.  <u>Compare</u> Proctor Dec. Exh 7 at 34 to Anderson Dec. Exh 11.

24   [35] <u>See, e.g.,</u> Anderson Dec. Exh. 13 (Bryant Depo. 332:8-18; 337:10-20; 341:18-346:14, 357:12-16, 361:15-364:6).

25   [36] Referring to Bryant 00192, included in Anderson Dec. Exh. 11.  See also Anderson Dec. Exh. 13 (Bryant Depo. at 332:8-18).

26   [37] Anderson Dec. Exh. 13 (Bryant Depo. at 341:19-20).

27   [38] Including notes about "jointed hips," "sculpted fingernails," "removable ankles," and "basic shoe sculpt."

28

1   given to a sculptor, his purpose in giving the drawing to a sculptor, whether the

2   actual Bratz doll had some of the features detailed in the drawing.[39]

3          Even though the documents cited by Mattel are dated September 19, 1999,

4   unlike the previously produced "Bratz drawings," Mattel is well aware that copies

5   and tracings of the drawings were made on dates that fell within Mr. Bryant's

6   second term of employment with Mattel.  How do they know this?  *Mattel asked*

7   *Mr. Bryant about this during his deposition.*[40]  Any additional questions Mattel

8   might ask Mr. Bryant about these recently produced documents would be

9   duplicative of questions posed during his first three days of deposition.  Because of

10  the unnecessarily cumulative nature of this line of questioning, the production of

11  these documents provides no support for the reopening of the Mr. Bryant's

12  deposition.

13

14      **4.      Mattel is affirmatively misleading the Court regarding "Carter Bryant's" computer.**

15

16         To hear Mattel tell it, Carter Bryant has wrongfully withheld electronic

17  documents in his possession, and deliberately spoliated evidence, by withholding

18  and erasing the contents of "his computer."[41]  This is a flat falsehood, and Mattel

    knows it.[42]

19

20         Mattel informs the Court that the July 1994 image of the computer contains

21  a copy of "Evidence Eliminator," and then regales the Court with tales of the

22

23  [39] Anderson Dec. Exh. 13 (Bryant Depo. at 341:18 – 346:14).

24  [40] Mr. Bryant testified during his deposition that in 1999, he traced and colored his original 1998 drawings. Anderson Dec. Exh. 12 (Bryant Depo. at 151:12-153:5).

25  [41] See Mot. at 1-2, 15-16.

26  [42] Mattel has full forensic images of this computer, has received all relevant documents from this computer, has inspected the actual computer, and in July of this year, took the deposition of Mr. Bryant's niece, Brooke Gilbert, who has owned the computer since the Fall of 2003.  None of this information, however, finds its way into Mattel's motion.

27

28

11

1    nefarious purposes of that software and citations to spoliation law.[43]  What is the

2    Court to take from this?  Mattel suggests that this means that Mr. Bryant has

3    engaged in a deliberate effort at mass spoliation.  But Mattel knows full well this is

4    not the case, and deliberately withheld this information from the Court.  Instead of

5    producing evidence of the *contents* of the July 2004 computer image, Mattel hides

6    it, using only counsel's declaration which states that the computer contained

7    "Evidence Eliminator" but which omits the relevant dates.[44]  Why does this make a

8    difference?  Because the same Mattel consultant who found that program on the

9    July 2004 image undoubtedly saw the program's "install.txt" file showing that the

10   software was installed **in July 2002**, *almost two years before this lawsuit was filed.*

11   A copy of the "install log" showing those dates is submitted herewith as Exhibit 9

12   to Christa M. Anderson's Declaration.[45]  By withholding that information, Mattel

13   has created the deliberately false implication that Bryant has engaged in spoliation.

14        Moreover, the contents of the desktop computer are irrelevant to this motion

15   for two additional reasons.  First, Mattel does not suggest that there are any

16   relevant documents in that image that were not produced to it prior to Mr. Bryant's

17   deposition.  As Bryant's counsel has previously advised the Court, the contents of

18   that computer were reviewed for responsive documents and imaged in July 2004.[46]

19   And, second, to the extent anything contained in the forensic image of the

20   computer is relevant, Mattel cannot rely on those contents as a basis to reopen Mr.

21   Bryant's deposition, as Mattel did not even seek production of those images until

22   

23   _____
     [43] See Mot. at 15-16.

     [44] Zeller Dec. ¶ 17.

24   [45] In both cases that Mattel cites regarding Evidence Eliminator, the program was installed or

25   purchased *after* the issuance of a court order requiring the party to provide their hard drives for
     inspection.  Communications Center, Inc. v. Hewitt, 2005 WL 3277983, *1 (E.D. Cal. 2005);

26   Kucala Enterprises, Ltd. v. Auto Wax Company, Inc., 2003 WL 22433095, *2 (N.D. Ill. 2003).
     Omitting this essential detail leaves the incorrect impression that simply having the program on

27   the hard drive is adequate grounds to infer spoliation.

     [46] See Zeller Dec. Exh. 11 at ¶ 23; Exh. 14.

28

*after* the November 2004 deposition. Once again, that is nothing more than the tradeoff inherent in Mattel's deliberate tactical choice to depose Mr. Bryant early in the case.

**C.     Claims filed since Mr. Bryant's first deposition provide no basis for the reopening of Bryant's deposition.**

Recent amendments to Mattel's claims and MGA's complaints do not justify deposing Mr. Bryant for another three days. Mattel's argument proves way too much. This case has been pending for well over three years, and dozens of depositions have been taken. If the amendment of claims justifies reopening one deposition, it justifies reopening all of them.

Mattel has provided scant legal support for the proposition that witnesses must be deposed further "on new claims filed after their initial depositions." Mattel cites <u>Keithley v. Homestore.com, Inc.</u> for this proposition, but fails to mention that in this case, the "initial" deposition in question occurred *in another matter in front of a different court.*[47] The witness in that case argued that he should not have to be deposed in this matter because he was already deposed in a Pennsylvania case. Had Mattel bothered to read the court's decision, instead of selectively selecting citations, it would easily have discovered that the court had distinguished the case from situations where, "unlike here, a party seeks to take a second deposition in the same case."[48]

In addition, Mattel has had ample opportunity through other discovery in this action to obtain relevant information to any additional claims. To date, Mattel has served Mr. Bryant with over 1200 Requests for Admission. A few weeks ago, Mattel served its Sixth Set of Requests for Admission which included 782 requests.

---

[47] 2006 WL 1646119, at *1 (N.D. Cal. 2006).
[48] <u>Id.</u>

13

1  Bryant fails to see how, after three days worth of deposition testimony and after

2  posing an absurd number of Requests for Admission, Mattel can claim that an

3  additional 21 hours of deposition testimony is warranted.

4  New facts, new documents, new law, and new claims always arise during the

5  course of every litigation. That is the essence of discovery. The job of counsel is

6  to choose which discovery to take early, and which to defer until later. Mattel

7  chose to depose Mr. Bryant early, and that early discovery was undoubtedly of

8  great benefit in shaping later depositions, document requests, and strategy.

9  Inevitably, later discovery will always reveal additional questions one would like

10  to have asked the first deponent. But the Federal Rules don't allow seriatim

11  depositions. Mattel made its choice. It cannot have it both ways.

12

13  **D.     Mattel's attempt to overrule additional instructions should be denied.**

14  Six months after filing their February Motion, Mattel again asks this Court

15  to overrule instructions made during Mr. Bryant's deposition. But Mattel fails to

16  give any good reason why, after ruling on over 67 objections in Mattel's February

17  Motion, this Court should entertain 12 additional objections. Mattel had its day to

18  object to any and all instructions it felt were improper, and should not get a second

19  bite at the apple.

20

21  **1.     Mattel's new objections are largely duplicative of similar objections propounded in Mattel's February 2007 Motion to Overrule Instructions.**

22

23  Mattel's new set of objections are largely duplicative of its previous

24  complaints lodged in February. Contrary to Mattel's assertion, the February

25  motion includes *multiple* objections to instructions not to disclose Mr. Bryant's

26  understanding of subjects or facts learned through communication with counsel.[49]

27  ---
[49] See Anderson Dec. Exh 6 (Objection Nos. 33-35).

1    For example, in February, Mattel objected to the following instruction:

2         Q (By Mr. Quinn) It says that, you know, inventions that
3         I create will be owned by the company. Do you have any
          understanding what those words mean?

4         MR. WICKHAM:  Counsel, I would -- if you – attorney-
5         client privilege.  To the extent your understanding of this
          phrase, this paragraph, or this document is based on
          advice of counsel, instruct you not to respond.

6         MS. CENDALI:  I also object on the grounds of
          vagueness and time frame.

7         A  I'm not going to respond.[50]

8    Any argument that Mattel showed some restraint and avoided objecting to such

9    instructions because of an understanding between the parties[51] is pure fiction.

10       Mattel wants to retry its February Motion, and has brought additional

11    objections to instructions similar to those sustained by the Discovery Master.  For

12    example, Mattel objects to the following instruction:

13         Q     At any time prior to the last date of your
14         employment at Mattel did Mr. Larian ever tell you that
          anything ought to be kept confidential or not shared with
          other people?

15         MR. WICKHAM:  I'll object to the extent that it seeks
16         information that is the subject of attorney-client
          privilege, attorney work product. To the extent that Mr.
17         Larian is imparting to you information that relates to
          legal advice that he obtained, you obtained, or you and he
18         jointly had, you should not share that information with
          counsel.  Other than legal advise, you can and should
19         respond.

20         A     Can you please restate the question?

21         Q     (By Mr. Quinn)  Sure.  At any time prior to the
          time you signed your October 4 agreement did Mr.
22         Larian ever indicate to you in any fashion that anything
          else should be kept confidential relating to your
          communications with MGA or this Bratz project?

23         Mr. WICKHAM:  Same objections and same
24         instructions.

          A     I don't recall him saying anything like that.[52]

25

26   [50] Anderson Dec. Exh 6 (Objection No. 34).

27   [51] Mot. at 11.

       [52] Mattel's New Objection No. 1.

28                           15

OPPOSITION TO MATTEL INC.'S MOTION FOR ADDITIONAL TIME AND/OR TO REOPEN THE
DEPOSITION OF CARTER BRYANT FOR ALL PURPOSES AND TO OVERRULE ADDITIONAL
INSTRUCTIONS NOT TO ANSWER AT THE DEPOSITION
CASE NO. CV 04-09049 SGL (RNBx)

401155.01

1  In its February Motion, Mattel objected to a similar line of questioning regarding

2  the same topic matter, *and lost.*[53]  The Court concluded counsel had repeated the

3  question, and "Bryant gave a complete response" in another part of the

4  deposition.[54]  Consequently, this matter is closed.

5          In addition to revisiting instructions that the Court sustained, Mattel also

6  repeats similar objections to instructions that the Court considered and overruled.

7  Back in February, Mattel objected to the following instruction not to answer

8

9  _____

[53] Anderson Dec., Exh. 6 (Objection No. 10):

10          Q     Now, I had -- before we took the break I had -- I'm asking -
            - I had asked you questions about whether Mr. Larian had asked
11          you or suggested to you that you ought to keep some things
            confidential.  Do you remember those questions?
12
            A     Yes.
13
            Q     And your counsel had made some remarks about exclude
            privileged information, that sort of thing.  Do you recall that?  Do
14          you recall your counsel making some instructions?

15          A     Yes.

            Q     In answering my questions on that subject, that is to say the
16          subject of Mr. Larian's instructions to you about confidentiality,
            were you withholding any information based on what your counsel
17          instructed you?

18                  MS. CENDALI:  Objection to the form.

19                  MR. WICKHAM:  Objection to form, but I also
            believe that you've grossly mischaracterized the record.  I don't
20          believe that -- when you're asking him about discussions that he
            had with Mr. Larian before he signed the October 4 agreement that
21          I made any instructions with regard to any of those questions on
            his discussions with Mr. Larian on that subject.  I made objections
            on other bases but I didn't make instructions on privileged grounds.
22
                    MR. QUINN:  Well, I thought you did but I could
23          be mistaken.  Just for clarity, then, maybe I should go back and
            make sure that we've covered this.

24  [54] Proctor Dec. Exh. 15 (March 7 Order).  See also Bryant Depo. at 101:19-24:

25          Q (By Mr. Quinn) Is it true that in the meeting with Mr. Larian he never said anything on
            the subject of keeping anything in confidence or not sharing anything with other people?
26          Is that true?

            MR. WICKHAM:  Objection, asked and answered.
27
            A:  I don't recall him saying anything to that effect.

28                                        16

1  questions regarding an agreement between Mr. Bryant and Mattel.[55]  Now Mattel

2  wants to overturn the instruction about the same topic matter in the immediately

3  preceding passage.[56]  The Court has already reopened the deposition to address

4  Mattel's concern, so there is no need for Mattel to move again on the same subject

5  matter.

6         Finally, Mattel also has revived its objections to the instructions included in

7  Mr. Bryant's Deposition Transcript 478: 1-21, an objection that it had asserted in

8  its February 2007 motion, but subsequently withdrew.[57]  Mattel should not be

9  rewarded with another 21 hours of deposition testimony for simply recycling

10  objections it previously discarded.

11

12     **2.     Mattel's attempt to revive objections to counsel's conduct during the deposition should be denied.**

13

14         In February, Mattel claimed that counsel used improper "speaking

15  objections to coach the deponent."[58]  Now, Mattel argues that they should be

16  allowed to "further question Bryant on all topics."[59]  The Discovery Master

17  considered these arguments and concluded that while Mattel was entitled to

18  additional time to depose Mr. Bryant, the time would be limited to 2 hours, and the

19  scope of questioning would be limited to previously asked questions and

20  reasonable follow-up questions.  Mattel now second guesses the Discovery

21  Master's order, rehashes the same arguments it made back in February, and asks

22  for 21 more hours and no subject matter limitations.  Enough.  Mattel has wasted

23  _____
[55] "It says that, you know, inventions that I create will be owned by the company.  Do you have

24  any understanding what those words mean?"  Mattel's Separate Statement, Objection No. 34 (citing Bryant Depo. at 641:20 – 642:5).

25  [56] Mattel's Sep. Statement, Objection 11 (citing Bryant Depo. at 642:6-17).

26  [57] Compare New Objection 7 to Mattel's Objection 27 (Anderson Exh. 6).

27  [58] Anderson Dec. Exh. 5, at 26.

28  [59] Mot. at 23.

401155.01

1    the Court's resources and Mr. Bryant's time by rehashing objections that were

2    brought or should have been brought back in February.

3                        IV.    CONCLUSION

4

5            For the above mentioned reasons, Bryant respectfully requests that the

6    Discovery Master DENY Mattel's Motion for Additional Time and / or to Reopen

7    the Deposition of Carter Bryant and to Overrule Additional Instructions.

8                                            Respectfully submitted,

9

10   Dated:   August 15, 2007                KEKER & VAN NEST, LLP

11

12                                  By:  Christa Anderson / AW

13                                       CHRISTA M. ANDERSON
                                         Attorneys for Plaintiff
14                                       CARTER BRYANT

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MATTEL INC.'S MOTION FOR ADDITIONAL TIME AND/OR TO REOPEN THE
DEPOSITION OF CARTER BRYANT FOR ALL PURPOSES AND TO OVERRULE ADDITIONAL
INSTRUCTIONS NOT TO ANSWER AT THE DEPOSITION
CASE NO. CV 04-09049 SGL (RNBx)

401155.01