1   **OVERLAND BORENSTEIN SCHEPER & KIM LLP**
MARK E. OVERLAND (State Bar No. 38375)
2   moverland@obsklaw.com
DAVID C. SCHEPER (State Bar No. 120174)
3   dscheper@obsklaw.com
ALEXANDER H. COTE (State Bar No. 211558)
4   acote@obsklaw.com
300 South Grand Avenue, Suite 2750
5   Los Angeles, CA 90071-3144
Telephone: (213) 613-4655
6   Facsimile:  (213) 613-4656

7   **Attorneys for**
**Carlos Gustavo Machado Gomez**

8

9                    **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

11

12   CARTER BRYANT,                         CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,                  Consolidated with CV 04-9059 and
                                            CV 05-2727
14        v.
                                            **CARLOS GUSTAVO MACHADO**
15   MATTEL, INC.,                          **GOMEZ'S MEMORANDUM OF**
                                            **POINTS AND AUTHORITIES IN**
16              Defendant.                  **OPPOSITION TO MATTEL, INC.'S**
                                            **MOTION FOR ORDER RE:**
17   ─────────────────────────             **APPLICABILITY OF DISCOVERY**
                                            **MASTER STIPULATION**
     AND CONSOLIDATED CASES
18
                                            Date:          January 7, 2008
19                                          Time:          10:00 AM
                                            Place:         Courtroom 1
20
                                            **Phase 1**
21                                          Discovery Cut Off: January 28, 2008
                                            Pre-Trial Conf.:   May 5, 2008
22                                          Trial Date:        May 27, 2008

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   PROCEDURAL POSTURE....................................................................... 2

III.  MACHADO IS NOT BOUND BY THE ORDER BECAUSE IT FAILS TO SATISFY
      RULE 53 ...................................................................................... 3

      A.   Machado Was Not Given Notice or an Opportunity to Object to
           Reference to the Master .................................................................. 3

      B.   Machado Is Not A Signatory To The Stipulation and Mattel
           Failed To Obtain Machado's Consent Thereto ......................................... 4

      C.   No Justification Exists for Reference of Machado's Discovery
           Disputes to the Special Master Over His Objections.............................. 5

      D.   Use of A Special Master Is Especially Inappropriate Here ................... 7

IV.   MATTEL'S PROCEDURAL ARGUMENTS ARE UNAVAILING ................................. 9

      A.   Stipulations, Unlike Orders, Are Not Binding On New Parties ............. 9

      B.   Machado Did Not Waive His Right to Object to the Discovery
           Master........................................................................................ 11

V.    CONCLUSION ................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

## <u>FEDERAL CASES</u>

Adriana Int'l Corp. v. Thoeren,
  913 F.2d 1406 (9th Cir. 1990) ...................................................................14

Burlington Northern R. Co. v. Department of Revenue of State of Wash.,
  934 F.2d 1064 (9th Cir. 1991) .............................................................12, 13

Constant v. Advanced Micro-Devices,
  848 F.2d 1560 (Fed. Cir.),
  cert. denied, 488 U.S. 892 (1988) ...........................................................13

Cruz v. Hauck,
  515 F.2d 322 (5th Cir. 1975),
  cert. denied 424 U.S. 917 (1976) ............................................................13

FDIC v. Fidelity's Deposit Co. of Maryland,
  196 F.R.D. 375 (S.D. Cal. 2000) ...............................................................8

Galbreath v. Metro. Trust Co. of California,
  134 F.2d 569 (10th Cir. 1943) ...................................................................9

Hall v. Norfolk Southern Railway Co.,
  469 F.3d 590 (7th Cir. 2006) .....................................................................8

Hill v. Duriron Co.,
  656 F.2d 1208 (6th Cir. 1981) .................................................................13

In re Agent Orange Product Liability Litigation,
  94 F.R.D. 173 (1982)...................................................................................9

In re Master Key Litigation,
  507 F.2d 292 (9th Cir. 1974) .....................................................................7

Jenkins v. Sterlacci,
  849 F.2d 627 (D.C. Cir.1988)...................................................................13

Kastigar v. United States,
  406 U.S. 441 (1972) .....................................................................................7

Madison Square Garden Boxing, Inc. v. Shavers,
  562 F.2d 141 (2d Cir.1977) ......................................................................10

Moore v. Rees,
  2007 WL 2955947 at *1, *3 (E.D. Ky. 2007) .........................................9

Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,
  526 U.S. 344 (1999) .....................................................................................4

Orange County v. Air California,
  799 F.2d 535 (9th Cir. 1986) ...............................................................9, 10

Southern Railway Co. v. U.S. Fidelity & Guaranty Co.,
    87 F.2d 118 (5th Cir. 1935)................................................10, 11

United Liquor Co. v. Gard (In re Seper),
    705 F.2d 1499 (9th Cir. 1983).............................................8

United States v. Allegheny-Ludlum Industries,
    517 F.2d 826 n. 21 (5th Cir.1975),
    cert. denied, 425 U.S. 944 (1976).........................................10

United States v. Bodwell,
    66 F.3d 1000 (9th Cir. 1995)..............................................7

United States v. Hubbell
    530 U.S. 27 (2000) .......................................................8

**FEDERAL STATUTES**

18 U.S.C. § 1832............................................................7

18 U.S.C. § 2701-2712 ......................................................6

**FEDERAL RULES**

Fed. R. Civ. P. 53 ...................................................... Passim

Fed. R. Civ. P. 53(a)(1)(A) ............................................4, 6

Fed. R. Civ. P. 53(a)(1)(B) ............................................3

Fed. R. Civ. P. 53(a)(1)(C) ............................................3, 5, 6

Fed. R. Civ. P. 53(b)(1)................................................3, 11, 12

Fed. R. Civ. P. 72(a) ..................................................8

**STATE REGULATIONS**

Cal. Pen. Code § 499c......................................................7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Mattel's motion attempts to force the terms of a stipulation – reached by and for the convenience of Mattel, Carter Bryant and MGA – on a nonparty to that stipulation, Gustavo Machado. In December 2006, nearly four months before Machado was served with process, Mattel, Bryant and MGA signed the *Stipulation For Appointment of a Discovery Master* ("Stipulation"), appointing Judge Infante as discovery master. The record discloses no notice or hearing prior to the reference. Machado was not involved in the negotiation of the Stipulation or its drafting.

The stipulation later became an order of the Court. Although Mattel cites ample authorities holding an intervening party to the terms of prior court orders, Mattel cannot identify a single case where a *stipulation* has been enforced against a non-stipulating party. Mattel cites no such authority, because none can be found. Orders based on stipulations sit in a drastically different procedural posture from other court orders, as they are voluntarily entered into by the parties, and supported by nothing more than the parties' own statements contained in the stipulation. Unlike other court orders, which arise out of a clash of adverse positions supported by legal authorities and arguments, stipulations like the one at issue here arise out of a relatively indolent agreement among the parties. Indeed, stipulations become orders of the Court for the sole purpose of ensuring that they are enforceable against the signatories.

Nor should an agreement reached for MGA and Mattel's convenience be forced upon Machado. Fed. R. Civ. P. 53 limits the use of special masters in the absence of party consent, permitting reference only when pretrial matters are beyond the Court's ability to resolve and only with notice and an opportunity to be heard.

Of course, Machado never received notice and had no opportunity to object. Nor has Mattel shown, because it cannot show, that any discovery disputes with Machado cannot be resolved by this Court. To the contrary, any discovery disputes

1

1  between Mattel and Machado should be resolved by this Court. Unlike discovery
2  disputes between MGA, Bryant and Mattel, which are voluminous and have only a
3  pecuniary impact, discovery disputes involving Machado are relatively discrete and
4  jeopardize far more than his pecuniary interests. Resolution of discovery disputes
5  with Machado affect his very liberty, since responses to Mattel's requests could
6  subject Machado to federal and state criminal liability. As a result, Machado may
7  assert his Fifth Amendment right to be free from self incrimination in this
8  proceeding. No argument of convenience, efficiency or cost can justify depriving
9  Machado of his right to have *this* Court rule on all matters concerning the assertion
10 of his Fifth Amendment privilege. As a result, Mattel's motion as to Machado must
11 be denied, and Mattel must be ordered to present all discovery disputes with
12 Machado to the magistrate judge assigned to this matter.

13 **II.    PROCEDURAL POSTURE**

14      The discovery master's authority for resolving discovery disputes between the
15 parties derives entirely from a single source: the December 6, 2006 *Stipulation For*
16 *Appointment of a Discovery Master* ("Stipulation"). (Alban Decl. Ex. 1.) Machado
17 was not a party to this or any other action against Mattel at that time, is not a
18 signatory to the Stipulation, and received no notice of the proposed appointment. In
19 fact, Machado was not named as a party until January 12, 2007. (Cote Decl. ¶ 2; Ex.
20 A at ¶ 143.) Moreover, Mattel has already conceded that Machado was not served
21 with process until, at the earliest, March 26, 2007. (Cote Decl. Ex. B at 2:5-6.)
22 Machado has never consented to the discovery master's appointment, and never
23 availed himself of the discovery master's jurisdiction.

24      Instead, via letter dated November 1, 2007, Machado informed Mattel of his
25 position that the discovery master had no jurisdiction over him. (Cote Decl. Ex. C at
26 2.) Nevertheless, Mattel brought a discovery motion on November 15, 2007 against
27 Machado, before Judge Infante. (Alban Decl. Ex. 8.) Machado filed an opposition
28

1  on November 26, 2007, again contesting the discovery master's jurisdiction. (Alban

2  Decl. Ex. 9.) Mattel subsequently filed a reply.

3  Contrary to the representations made in Mattel's Motion, the Stipulation

4  makes no finding that pretrial matters "cannot be effectively and timely addressed

5  by an available district judge or magistrate judge of the district." Fed. R. Civ. P.

6  53(a)(1)(C). To the contrary, the parties merely agree in a recital that the Stipulation

7  is designed to "minimize the burden on the Court." (Alban Decl. Ex. 1 at 3:2-6.)

8  **III.    MACHADO IS NOT BOUND BY THE ORDER BECAUSE IT**

9  **FAILS TO SATISFY RULE 53**

10  A special master may be appointed if either (1) the parties consent or (2) the

11  appointment is limited to "pretrial and post trial matters that cannot be effectively

12  and timely addressed by an available district judge or magistrate judge of the

13  district." *See* Fed. R. Civ. P. 53(a)(1)(A), (C).[1] However, a party must be given

14  notice of the proposed appointment and opportunity to object before the matter is

15  referred to the master. Fed. R. Civ. P. 53(b)(1). The Stipulation satisfies none of

16  these criteria.

17  **A.    Machado Was Not Given Notice or an Opportunity to Object to**

18  **Reference to the Master**

19  "The court must give the parties notice and an opportunity to be heard before

20  appointing a master." Fed. R. Civ. P. 53(b)(1). Therefore, Rule 53(b)(1) can only be

21  read as a rejection of the position Mattel asserts here. Because a new party to

22  litigation must be given "notice and an opportunity to be heard before appointing a

23  master," the reference to a master cannot automatically bind new parties to the

24  litigation. Here, Machado was never afforded an opportunity to be heard regarding

25

26  [1] Rule 53 envisions a third ground for appointing a special master, which is not

27  relevant here. Fed. R. Civ. P. 53(a)(1)(B).

28

3

1 the discovery master before entry of the reference order. Accordingly, lack of notice

2 alone is sufficient to defeat Mattel's motion.

3     **B.**    **Machado Is Not A Signatory To The Stipulation and Mattel Failed**

4          **To Obtain Machado's Consent Thereto**

5      Nor has Machado ever consented to the appointment of the discovery master.

6 Accordingly, the Stipulation cannot be enforced against Machado under Fed. R. Civ.

7 P. 53(a)(1)(A).

8      That Mattel now objects to this result is curious. At the time it negotiated and

9 executed the Stipulation, Mattel had already cemented its plan to bring suit against

10 Machado. On November 20, 2006, Mattel filed an amended complaint, naming

11 Machado as an adverse party. (Cote Decl. ¶ 2, Ex. A at ¶ 90.) Sixteen days later,

12 Mattel and MGA signed the Stipulation. However, Mattel never sought to obtain

13 Machado's consent to the appointment of the discovery master.

14      Nor was Machado under any obligation to object at that time.

15          [O]ne becomes a party officially, and is required to take

16          action in that capacity, only upon service of a summons or

17          other authority-asserting measure stating the time within

18          which the party served must appear and defend…. [T]he

19          summons continues to function as the sine qua non

20          directing an individual or entity to participate in a civil

21          action or forgo procedural or substantive rights.

22 *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350-351 (1999).

23 Prior to service, which did not occur, at the earliest, until four months after the

24 Stipulation was signed, Machado had no role in the litigation and could not be

25 required to take any action. Accordingly, Mattel cannot argue that he should have

26 objected to the Stipulation prior to its execution.

27

28

**C.    No Justification Exists for Reference of Machado's Discovery Disputes to the Special Master Over His Objections**

Although it is obvious on its face that the appointment of the special master was made pursuant to Fed. R. Civ. P. 53(a)(1)(A), which permits reference to a special master with party consent, Mattel now pretends that the order satisfies Rule 53(a)(1)(C), which allows reference without consent. However, Subsection C permits the appointment of a special master if, and only if, the Court identifies "matters that *cannot* be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C) (emphasis added). As the Advisory Committee Notes make clear, Subsection C does not allow the Court to refer discovery to a special master merely when it is convenient. To the contrary,

> a pretrial master should be appointed only when the need is clear. Direct judicial performance of judicial functions may be particularly important in cases that involve important public issues or many parties. At the extreme, a broad delegation of pretrial responsibility as well as a delegation of trial responsibilities can run afoul of Article III. Fed. R. Civ. P. 53 Adv. Comm. Notes (2003).

Mattel contends that the "clear need" required by Rule 53 is identified in the Stipulation. Not so.

First, the Stipulation fails to find that discovery disputes between Mattel and Machado "cannot be effectively and timely addressed" by the magistrate judge assigned to this case. Fed. R. Civ. P. 53(a)(1)(C). Rather, the Stipulation exists merely "to minimize the burden on the Court [and] to facilitate the fair and efficient completion of pre-trial discovery…" (Alban Decl. Ex. 1 at 3:2-6.) That is, the Stipulation furthers the convenience of the parties and the Court – a far cry from finding that the Court *cannot* address discovery disputes. Rather than making

5

1  findings pursuant to Subsection C, the Court merely approved the parties' request,
2  after seeing no objection *among the present litigants to the matter*, consistent with
3  Rule 53(a)(1)(A).

4       Second, the Stipulation says *nothing* about discovery disputes with Machado.
5  Even if the Court found a "clear need" for a discovery master because of
6  voluminous discovery disputes between the signatories – MGA, Carter Bryant and
7  Mattel – cannot be addressed by the Court, no such finding can apply to the discrete
8  discovery disputes anticipated between Machado and Mattel. Machado was not even
9  a named party at the time the Stipulation was signed. No history of discovery
10  disputes could justify such a conclusion at the time, and indeed, neither the parties
11  nor the Court gave any consideration to potential disputes with Machado at the time
12  the Stipulation went into effect.

13       Nor can Mattel argue that the Court cannot timely and effectively address
14  discovery disputes with Machado presently. Although Mattel brazenly argues that
15  "Machado's delays are well documented above," no evidence supports that claim.
16  (Mot. at 10:16.) Mattel has brought a single discovery motion against Machado, and
17  claims that it may need to bring another motion at a later date. (Mot. at 2:17-3:1, n.
18  10.) The first motion is now largely moot, as the parties have agreed to conduct the
19  deposition of Machado on January 15, 2008.[2] (Cote Decl. Ex. D.) And the parties
20  have not even met and conferred on the second potential motion. (Cote Decl. ¶ 6,
21  Ex. E.) But even assuming that the second motion is eventually filed, two discovery
22  motions do not suffice to satisfy the necessity requirement of Rule 53(a)(1)(C).

23
24
25

26  [2] In addition to seeking to compel Machado's deposition, a dispute which is now
moot, Mattel also sought an order compelling Machado to waive his rights under the
27  Stored Communications Act, 18 U.S.C. § 2701-2712 .
28

### D. Use of A Special Master Is Especially Inappropriate Here

Any discovery dispute between Mattel and Machado will focus on Machado's assertion of his Fifth Amendment privilege against self-incrimination. Mattel's motion seeks to deprive Machado of his right to have this essential constitutional right decided by the Court. In light of Mattel's allegations, as stated in its Amended Answer and Counterclaims, Machado faces "a possibility of prosecution" in responding to discovery relating to the conduct alleged therein. *In re Master Key Litigation*, 507 F.2d 292, 294 (9th Cir. 1974). Machado may be subject to federal or state criminal liability in California, for the conduct alleged by Mattel. *See, e.g.,* 18 U.S.C. § 1832 and Cal. Pen. Code § 499c (criminal theft of trade secrets). In fact, Mattel has referred this matter to the United States Attorney for the Central District of California.

Accordingly, Machado may assert his Fifth Amendment right to be free from self incrimination in response to Mattel's discovery requests, including document production requests, interrogatories and deposition testimony. Mattel has already moved – before the discovery master – for an order compelling Machado to answer inquiries to which he has asserted the privilege, and has threatened to do so again. (Alban Decl. Ex. 8 at 9-11 (challenging Machado's assertion of his Fifth Amendment right to be free from self incrimination); *see also* Cote Decl. Ex. F at 1.)

However, "[t]he only way the privilege can be asserted is on a question-by-question basis, and thus as to each question asked, the party has to decide whether or not to raise his Fifth Amendment right." *See United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995). As a result, Mattel's discovery disputes with Machado will necessarily turn on a searching inquiry into each document request, interrogatory and deposition questions posed.[3]

---

[3] *See Kastigar v. United States*, 406 U.S. 441, 444 (1972); *United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995); *In re Master Key Litigation*, 507 F.2d 292, 294 (footnote continued)

1   This is an inquiry that should be conducted by the district court, not a

2 discovery master. Unlike discovery disputes between MGA, Bryant and Mattel,

3 which are voluminous and ultimately have only pecuniary effect, rulings on

4 Machado's Fifth Amendment rights are discrete and jeopardize Machado's very

5 liberty. No argument of convenience, efficiency or cost can justify depriving

6 Machado of his right to appear before this Court on all matters concerning the

7 assertion of his Fifth Amendment privilege.

8   Moreover, a matter of such importance should be heard in the district court,

9 not a private arbitrator, absent consent. As the Advisory Notes to Rule 53 make

10 clear, "[d]irect judicial performance of judicial functions may be particularly

11 important in cases that involve important public issues or many parties." Fed. R.

12 Civ. P. 53 Adv. Comm. Notes (2003). Clearly, any order defining the existence or

13 scope of Machado's Fifth Amendment right is an "important public issue" requiring

14 direct judicial performance.[4]

16 (9th Cir. 1974).*United Liquor Co. v. Gard* (*In re Seper*), 705 F.2d 1499, 1501 (9th

17 Cir. 1983); *United States v. Hubbell*, 530 U.S. 27, 36 (2000).

18 [4] Mattel may contend in reply that Machado will suffer no prejudice if his

19 constitutional rights are adjudicated before Judge Infante, as this Court retains the

20 power to review and modify Judge Infante's decisions. However, the Stipulation provides that the master's decisions "shall be treated as rulings made by a

21 Magistrate Judge of the United States District Court." (Alban Decl. Ex. 1 at ¶ 6.) As

22 a result, Judge Infante's determinations will be entitled to deference by this Court. *See, e.g.,* Fed. R. Civ. P. 72(a) (nondispositive decisions by the magistrate can only

23 be reviewed on a "clearly erroneous" or "contrary to law" standard"); *see also Hall*

24 *v. Norfolk Southern Railway Co.*, 469 F.3d 590, 595 (7th Cir. 2006)("[d]istrict judges are to review nondispositive motions for clear error"); *FDIC v. Fidelity's*

25 *Deposit Co. of Maryland*, 196 F.R.D. 375, 378 (S.D. Cal. 2000)("Applying the

26 clearly erroneous standard, a magistrate judge's ruling should be overturned "only if the district court is left with the definite and firm conviction that a mistake has been

27 made").

## IV.  MATTEL'S PROCEDURAL ARGUMENTS ARE UNAVAILING

Unable to prove that reference to a discovery master – over Machado's objections – is permitted under Fed. R. Civ. P. 53, Mattel provides a variety of strictly procedural arguments in support of its motion. Mattel elevates form over substance, by arguing that (1) Machado is bound by the Stipulation because it bears the Court's signature and (2) Machado's objections are untimely. Neither position has any merit.

### A.  Stipulations, Unlike Orders, Are Not Binding On New Parties

Mattel cites several authorities for the proposition that pre-existing court orders are equally binding on new parties. However, Mattel fails to cite a single case holding that orders based on *stipulations* are binding on non-stipulating parties. *See, e.g., In re Agent Orange Product Liability Litigation*, 94 F.R.D. 173 (1982) ("Plaintiffs have opposed the appointment of a special master.") Moreover, Mattel's authorities involve a party seeking to voluntarily intervene in the litigation, not a party involuntarily joined. *See, e.g., Moore v. Rees*, 2007 WL 2955947 at *1, *3 (E.D. Ky. 2007)(Epperson "has filed a motion to intervene" and "will be bound by a final judgment in this matter as fully as any other party"); *Galbreath v. Metro. Trust Co. of California*, 134 F.2d 569, 570 (10th Cir. 1943)(intervenor is bound by all prior orders).

Research has failed to turn up even a single authority for the proposition that a stipulation, voluntarily entered into between the parties to litigation, can in turn be binding on a new party, dragged unwillingly into that litigation. However, authorities addressing an analogous situation – stipulated final judgments – are clear that they are binding only on signatories thereto. For example, in *Orange County v. Air California*, 799 F.2d 535, 538-39 (9th Cir. 1986), the Court rejected a third party's efforts to intervene in a matter that had been settled by the parties. The third party, Irvine, contended that its own related claims would be foreclosed if it were unable to participate. The Ninth Circuit disagreed:

9

1              There is no *stare decisis* effect to any future proceedings

2              Irvine may wish to bring because the product of the

3              litigation at bar was a Stipulated Judgment made pursuant

4              to a negotiated settlement effecting only the signing

5              parties. *See United States v. Allegheny-Ludlum Industries*,

6              517 F.2d 826, 845-46 n. 21 (5th Cir.1975), *cert. denied*,

7              425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976)

8              (consent decrees-products of negotiation rather than

9              contested litigation-are not likely to carry *stare decisis*

10             effects measurably adverse to the proposed intervention in

11             any future proceedings). Nor is there any *res judicata* or

12             collateral estoppel effect that would impair Irvine's ability

13             to litigate its concerns in a future, separate action. *See*

14             *Madison Square Garden Boxing, Inc. v. Shavers*, 562 F.2d

15             141, 143 (2d Cir.1977) (a judgment entered on stipulation

16             is binding upon the consenting parties only).

17 *Orange*, 799 F.2d at 538-39. As the Ninth Circuit held, a consent judgment between

18 the parties is not generally binding on third parties and does not carry *stare decisis*

19 effect. Rather, the ambit of a stipulated judgment is limited solely to the parties who

20 sign it.

21       A second analogy is found in *Southern Railway Co. v. U.S. Fidelity &*

22 *Guaranty Co.*, 87 F.2d 118, 120 (5th Cir. 1935), where the court faced an appeal

23 from an order directing receivers of a railway to resume monthly payments to a

24 creditor. The order was based on a stipulation between the receivers and the surety

25 company, to which the railway was not party. The railway opposed resumption of

26 the payments, but the district court enforced the stipulation, and the railway

27 appealed. In the appellate court, the receivers moved to dismiss the appeal. The

28 court of appeals denied the motion, holding that

1    The appellant [railway] was not a party to said stipulation
2    or present in court when said orders were granted....We
3    find nothing in the orders prior to the one appealed from,
4    or in the stipulation of the receivers, to interfere with the
5    consideration of this controversy on the merits.

6    *Id.* at 120.

7    The Court should be guided by these same principles. MGA and Mattel
8    voluntarily entered into an agreement to refer discovery disputes to a master. Like
9    all such agreements, the Stipulation is a product of negotiation rather than contested
10   litigation and therefore lacks any preclusive effect on non-stipulating parties. As a
11   result, even though it is styled as a court order, its effect must be limited to its
12   signatories.

13   **B.**     **<u>Machado Did Not Waive His Right to Object to the Discovery</u>**
14            **<u>Master</u>**

15   Mattel also contends that Machado waived his right to object to the discovery
16   master. Of course, no authority supports this position, as it turns the notion of
17   ripeness on its head. Additionally, the argument ignores the notice requirement of
18   Rule 53(b)(1).

19   Until Mattel moved for relief against Machado before Judge Infante, the
20   discovery master's jurisdiction was not at issue. Once the matter was raised by
21   Mattel, Machado promptly and timely objected to the discovery master's
22   jurisdiction – both in correspondence and in opposition to Mattel's motion. There
23   can be no waiver where the party objects expeditiously as soon as the matter is
24   raised. Moreover, since Machado never had prior notice of the appointment, he had
25   no prior duty to object under Rule 53.

26

27

28

11

1      In *Burlington Northern R. Co. v. Department of Revenue of State of Wash.*,

2 934 F.2d 1064, 1069-70 (9th Cir. 1991) the trial court referred the matter to a special

3 master without notice and without giving the parties an opportunity to object.[5]

4 Plaintiff Burlington objected to the referral, but did not formally move for

5 revocation of the order. On Appeal, the Ninth Circuit found no waiver:

6           [Burlington] filed an objection with the district court, and

7           *we find it irrelevant that it failed to move for revocation of*

8           *the order.* The cases cited above indicate that objection

9           below by any means-within a reasonable time after the

10          order is entered-suffices to preserve the objection on

11          appeal. Here, because the district court entered the order of

12          reference *sua sponte* and without notice, Burlington had

13          no opportunity to object or consent before entry. After the

14          order was entered, Burlington objected promptly-thirteen

15          days later, to be exact. *Burlington's failure to move for*

16          *revocation does not negate the effect of its initial*

17          *objection.*

18 *Burlington*, 934 F.2d at 1070 (emphasis added). Machado's actions here are quite

19 similar. As a non-party who had not been served with process, Machado "had no

20 opportunity to object or consent before entry" of the order. Indeed, Machado was

21 not even served with the summons and complaint until March 26, 2007, at the

22 earliest, *i.e.*, four months after the stipulation was signed. Nor did he have any

23 obligation to object until a controversy arose. Machado objected to the discovery

24 master's jurisdiction as soon as it became ripe, that is, as soon as Mattel sought to

25 _____

26 [5] The referral was made prior to the 2003 amendments to Rule 53 which now
expressly forbids *sua sponte* references to a special master, absent notice. *See* Fed.
27 R. Civ. P. 53(b)(1).

28

2:04-cv-09049-DOC-RNB   Document 1329   Filed 12/24/07   Page 17 of 18   Page ID #:13710

1 invoke the master's jurisdiction over Machado. Since Machado promptly objected to

2 the master's jurisdiction, he did not waive his objection. The fact that Mattel

3 brought this motion first, before Machado brought his own motion challenging the

4 master's jurisdiction is, in the words of the Ninth Circuit, "irrelevant" and "does not

5 negate the effect of [his] initial objection."[6]

6      Moreover, the *Burlington* court is clear that the waiver rule should be

7 employed only to prevent parties from hedging their bets. That is, waiting to see if

8 the master's report is unfavorable before objecting to the reference. *See Burlington*,

9 934 F.2d at 1070 (*citing Jenkins v. Sterlacci*, 849 F.2d 627, 634 (D.C. Cir.1988);

10 *Constant v. Advanced Micro-Devices,* 848 F.2d 1560, 1566 (Fed. Cir.), *cert. denied*,

11 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988); *Hill v. Duriron Co.*, 656 F.2d

12 1208, 1213 (6th Cir. 1981).) As *Burlington* noted, the concern is "that a party

13 disappointed with a master's report would be able to obtain a 'second bite at the

14 apple' by withholding his objection to the reference until after the report." *Id.* (*citing*

15 *Cruz v. Hauck*, 515 F.2d 322, 331 (5th Cir. 1975), *cert. denied* 424 U.S. 917

16 (1976)). "To permit such objections *after* the master makes his findings and

17 recommendations would certainly not serve the cause of judicial economy." *Id.*

18 (*citing Hill*, 656 F.2d at 1213.)

19      The policy underlying the waiver doctrine has no application here. Machado

20 cannot be accused of hedging his bets. He gave Mattel notice of his position that

21 Judge Infante had no jurisdiction as early as November 1, 2007, before a single

22 discovery dispute involving Mattel had been presented to the master. Then, when

23 Mattel moved for relief before Judge Infante, Machado again reiterated his

24

25 [6] Quite sensibly, Machado briefed the issue of jurisdiction before the discovery

26 master, and was awaiting the master's decision when Mattel brought the instant

27 motion. Mattel cannot claim waiver merely because it moved for relief before the discovery master ruled.

28

1 objections to the master's jurisdiction, in opposition to Mattel's motion. Nor has

2 Machado submitted any matters to the discovery master. To date the discovery

3 master has yet to rule on a single discovery dispute involving Machado.

4      In short, where Machado objected to the discovery master's jurisdiction prior

5 to the master ruling on any matter involving Machado, no waiver is present.[7]

6 Accordingly, the Stipulation cannot apply to Machado.

7 **V.    CONCLUSION**

8      For the foregoing reasons, Mattel's motion should be denied, and all

9 discovery motions against Machado should be heard by this Court.

10 DATED: December 24, 2007     OVERLAND BORENSTEIN SCHEPER &
             KIM LLP

11              MARK E. OVERLAND

12              DAVID C. SCHEPER
             ALEXANDER H. COTE

13

14

15

16      By: _____/s/_____

17         Alexander H. Cote
        Attorneys for CARLOS GUSTAVO
        MACHADO GOMEZ

18

19

20

21

22 [7] Mattel cited *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1410 (9th Cir. 1990)

23 in briefing before Judge Infante, but failed to cite it here, as its holding is contrary to

24 Mattel's position. There, plaintiff Adriana – who was a party to the case when the
master was first appointed – actually availed itself of the master for four months,

25 and only objected to the appointment after the master issued adverse rulings. That is

26 a far cry from the facts here, where Machado was not a party at the time of the
Stipulation and order, where Machado never availed himself of the discovery

27 master's services and where Machado objected at the first reasonable opportunity.

28