1 THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 300 South Grand Avenue
Los Angeles, CA 90071-3144
3 Telephone: (213) 687-5000
Facsimile: (213) 687-5600
4 E-mail: tnolan@skadden.com

5 KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 4 Times Square
New York, NY 10036
7 Telephone: (212) 735-3000
Facsimile: (212) 735-2000
8 E-mail: kplevan@skadden.com

9 Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC.,
10 ISAAC LARIAN, MGA
ENTERTAINMENT (HK) LIMITED,
11 and MGAE de MEXICO S.R.L. de
C.V.

12

13 UNITED STATES DISTRICT COURT

14 CENTRAL DISTRICT OF CALIFORNIA

15

16 | CARTER BRYANT, an individual | ) | CASE NO. CV 04-9049 SGL (RNBx)

17 | Plaintiff, | ) | Consolidated with Case No. 04-9059 and Case No. 05-2727

18 | v. | ) |

19 | MATTEL, INC., a Delaware corporation | ) | **MGA DEFENDANTS' (1) OPPOSITION TO MATTEL, INC.'S MOTION FOR LEAVE TO TAKE ADDITIONAL**

20 | Defendant. | ) | **DISCOVERY AND OBJECTIONS TO DISCOVERY MASTER**

21 | | ) | **ORDER OF SEPTEMBER 28, 2007, AND (2) JOINDER IN CARTER**

22 | | ) | **BRYANT'S OPPOSITION TO MATTEL'S MOTION**

23 | | ) |

24 | | ) | Honorable Stephen G. Larson

25 | | ) |

26 | Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | ) | Date: January 7, 2008
Time: 10:00 a.m.
Place: Courtroom 1

27 | | ) |

28 | | ) |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iii

I.     PRELIMINARY STATEMENT. .......................................................1

II.    STATEMENT OF FACTS. ...............................................................3

III.   THE COURT SHOULD DENY MATTEL'S MOTION BECAUSE THE COURT HAS ALREADY GIVEN MATTEL A FULL AND FAIR OPPORTUNITY TO TAKE DISCOVERY IN THIS CASE. .............................................................................................5

     A.    The Federal Discovery Rules Do Not Support Mattel's Request for Additional Discovery. ............................................5

     B.    Mattel Is Not Entitled to Any More Depositions. ......................7

         1.    Mattel Has Not Made a Good Faith, Diligent Effort to Adhere to the Court's 24-Deposition Limit. ...............8

         2.    Mattel Has Failed to Make a Particularized Showing as to Why It Needs Its Requested Depositions. .............10

         3.    Granting Mattel Additional Depositions Would Unduly Burden and Prejudice the MGA Defendants and the Various Non-Party Witnesses. ..........................14

         4.    Mattel's Improper Manipulation of Counter-Defendants' Deposition Count Warrants Denial of Mattel's Motion. .........................................................15

     C.    Mattel Is Not Entitled to Any More Interrogatories................17

         1.    Mattel Did Not Make a Good Faith, Diligent Attempt to Comply with the Court's Interrogatory Limit. ..........................................................................17

         2.    Mattel Has Not Made a Particularized Showing of Necessity with Respect to Each of Its Interrogatories....19

         3.    Mattel's Proposed Interrogatories Are Overly Broad and Would Impose an Undue Burden on Counter-Defendants. ................................................................20

     D.    The Court Should Deny Mattel's Motion in View of Mattel's Unwillingness to Comply with Its Own Discovery Obligations. .................................................................................21

     E.    Mattel Should Not Be Allowed to Circumvent the Discovery Master by Having this Court Rule on the Validity of Counter-Defendants' Responses and Objections to Mattel's Interrogatories.......................................................23

IV.    CONCLUSION .................................................................................25

# TABLE OF AUTHORITIES

**Cases** <span style="float:right">Pages</span>

*Archer Daniels Midland Co. v. Aon Risk Servs., Inc.,*
  187 F.R.D. 578 (D. Minn. 1999)................................................................6, 19

*In re At Home Corp.,*
  No. C 04-0931 MMC (JL), 2005 WL 289976
  N.D. Cal. Feb. 4, 2005)..........................................................................5, 6, 11

*Barrow v. Greenville Independent School District,*
  202 F.R.D. 480 (N.D. Tex. 2001) ...................................................................6

*Detoy v. City & County of San Francisco,*
  196 F.R.D. 362 (N.D. Cal. 2000) .................................................................16

*Dixon v. Certainteed Corp.,*
  164 F.R.D. 685 (D. Kan. 1996) ...................................................................10

*Jackson v. Laureate, Inc.,*
  186 F.R.D. 605 (E.D. Cal. 1999) ...........................................................7, 8, 17

*Johnson v. Mammoth Recreations, Inc.,*
  975 F.2d 604 (9th Cir. 1992)..............................................................7, 10, 19

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha,*
  218 F.R.D. 667 (C.D. Cal. 2003) ...................................................................7

*Newell v. State of Wis. Teamsters Joint Council No. 39,*
  No. 05-C-552, 2007 WL 3166757 (E.D.Wis. Oct. 25, 2007) .........6, 10, 11, 19

*Safeco of Am. v. Rawstron,*
  181 F.R.D. 441 (C.D. Cal. 1998) ...................................................................5

*Veranda Beach Club Ltd. Partnership v. Western Surety Co.,*
  936 F.2d 1364 (1st Cir. 1991) .......................................................................7

*Zivkovic v. Southern California Edison Co.,*
  302 F.3d 1080 (9th Cir. 2002)............................................................7, 10, 19

**Statutes** <span style="float:right">Pages</span>

Fed. R. Civ. P. 16(b)....................................................................................7

Fed. R. Civ. P. 26(b)(2)(C)......................................................................6, 11

Fed. R. Civ. P. 30(a)(2) ..............................................................................5, 6

Fed. R. Civ. P. 33 ........................................................................................5

Fed. R. Civ. P. 33(a).................................................................................5, 6

1    Counter-defendants MGA Entertainment, Inc., Isaac Larian, MGA

2 Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively,

3 the "MGA Defendants") hereby submit this opposition to Mattel, Inc.'s Motion for

4 Leave to Take Additional Discovery and Objections to Discovery Master Order of

5 September 28, 2007.  In addition, the MGA Defendants hereby join in Carter

6 Bryant's opposition to Mattel's motion.

7 **I.    PRELIMINARY STATEMENT.**

8    The Court recently granted a motion by Mattel to serve a "supplemental"

9 interrogatory on affirmative defenses that Mattel conceded was the equivalent of 37

10 separate interrogatories. Unwilling to exercise even an ounce of discipline or self-

11 control, Mattel has returned to the Court demanding that it now receive at least fifty

12 additional non-expert depositions, two additional Rule 30(b)(6) depositions covering

13 160 topics, and 19 additional interrogatories.  Having given Mattel considerably

14 more than an inch, the Court must not let Mattel take far more than a mile.

15    When the Court set the deposition and interrogatory limits in February 2007,

16 Mattel was well aware of the issues and witnesses that are the subject of the

17 additional interrogatories and depositions that Mattel now seeks.  In fact, Mattel told

18 the Court at the Rule 16(b) Scheduling Conference that at least "some 70" witnesses

19 had been identified as having relevant knowledge.  (Declaration of Amy S. Park

20 ("Park Decl."), Ex. 1 (2/12/07 Sched. Conf. Tr.) at 10:9-20.)  Nevertheless, the Court

21 limited each side to 24 non-expert depositions with the expectation that this number

22 "would hopefully capture most of the individuals who have some information  to

23 provide in this case." (*Id.* at 22:19-22.)  The Court also limited interrogatories to

24 fifty per side, which Mattel had proposed and represented would be sufficient to

25 cover *all* issues in the case.  (Park Decl., Ex. 3 at 5.)

26    Despite the Court's admonition that these were not "soft limits," Mattel and its

27 counsel have proceeded with discovery as if they could obtain any number of

28 additional interrogatories and depositions as a matter of right.  With full knowledge

of the issues and witnesses that Mattel now seeks to take discovery of, Mattel chose to devote its allotted interrogatories and depositions to other matters. Mattel served interrogatories and took depositions indiscriminately and without any regard for whether it would have any interrogatories or depositions left for Phase 2 issues. Indeed, it appears that Mattel deliberately chose to spend most of its allotted discovery tools on Phase 1 issues in order to manufacture the situation in which they now find themselves. Having made that choice, Mattel has only itself to blame for its current predicament.

Mattel cannot legitimately assert that it has not had a full and fair opportunity to conduct reasonable discovery. Mattel has used virtually every discovery tool available, frequently using multiple discovery tools to seek the same information. To date, Mattel has taken 21 depositions and served more than fifty interrogatories, more than fifty subpoenas, more than 2,300 document requests, and more than 4,500 requests for admissions. (Park Decl., ¶ 1.) If there are relevant areas that Mattel has not yet covered in its "scorched earth" discovery, it is because Mattel has failed to manage discovery properly, not because Mattel has too few discovery requests and depositions at its disposal.

In contrast to Mattel's shotgun approach, counter-defendants have used their interrogatories and depositions judiciously to stay within the Court's limits. To date, they have taken only eight of their 24 allotted depositions. Having nearly used up its allotted depositions though, Mattel does not want anyone else to take any more depositions. Mattel now claims for the first time that counter-defendants have only one allotted deposition left based on a newly concocted argument that their prior Rule 30(b)(6) depositions of Mattel now count as multiple depositions, and is refusing to produce witnesses on that basis. (Park Decl., ¶ 25 & Ex. 17 at 2.) Under this new argument, Mattel would be in contempt of the Court's Scheduling Order because it would have exceeded the deposition limit months ago. (Park Decl., ¶ 24.)

1  Mattel's argument is absurd and serves only to highlight its abusive and harassing
2  discovery practices.

3       The Court's discovery limits apply to both sides equally and Mattel must be
4  required to work within those bounds.  To hold otherwise would punish counter-
5  defendants for following the rules, but reward Mattel for adopting a strategy that
6  totally disregards the Court's limits.  With only 15 court days left in Phase 1
7  discovery when Mattel's motion is to be heard, Mattel should not be allowed to delay
8  and disrupt counter-defendants' efforts to complete discovery with the vast amounts
9  of additional discovery that Mattel now seeks.  Mattel's request is without merit and
10 patently unfair.  Accordingly, the Court should deny Mattel's motion in its entirety.

11 **II.     STATEMENT OF FACTS.**

12       On February 12, 2007, the Court held a Rule 16(b) Scheduling Conference to
13 schedule relevant dates and set discovery limits.  By that time, all of the claims
14 currently at issue in this case were well known to the parties.  (Mot. at 3-4.)  In
15 addition, well over a hundred potential witnesses had been identified in the parties'
16 Rule 26 initial and supplemental disclosures.  (Proctor Decl., Ex. 19 at 3-19.)  Indeed,
17 Mattel alone identified *155 witnesses* in its January 5, 2007 disclosures, including
18 the vast majority of the witnesses it now seeks leave to depose.  (*Id*.)

19       In preparation for the Scheduling Conference, the parties submitted a Joint
20 Rule 26(f) Report.  (Park Decl., Ex. 3.)  In the report, Mattel proposed that the Court
21 adopt the following discovery limits.  First, Mattel proposed that the Court limit the
22 parties to fifty interrogatories per side to address all issues in the case.  (*Id*. at 5.)
23 Second, Mattel proposed that the Court allow the parties forty depositions per side,
24 not including expert depositions or Rule 30(b)(6) depositions.  (*Id*.)

25       At the Scheduling Conference, the Court granted Mattel's proposal of fifty
26 interrogatories per side to address all issues.  (Proctor Decl., Ex. 6 at 1.)  With
27 respect to the deposition limit, Mattel argued that there were at least "some 70"
28 witnesses with relevant knowledge.  (Park Decl., Ex. 1 (2/12/07 Sched. Conf.) at

10:9-20.)  The Court rejected Mattel's proposal of 40 non-expert depositions and unlimited Rule 30(b)(6) depositions, finding Mattel's proposal to be "disconcerting." (*Id*. at 8:23-25.)  Instead, the Court limited depositions to 24 per side with the expectation that this "would hopefully capture most of the individuals who have some information to provide in this case." (*Id*. at 22:19-22.)  The Court allowed the parties to request additional discovery if necessary, but expressly contemplated that such requests would be limited to small increases. (*Id*. at 23:1-4 ("[I]f you get to the point where you need … 25 fact witnesses, you can make application to this Court and the Court will consider that …") .)

On September 21, 2007, Mattel filed a motion for leave to consolidate 37 separate interrogatories regarding each of counter-defendants' affirmative defenses into a single "supplemental" interrogatory that would not count against the fifty-interrogatory limit. (Park Decl., Ex. 4.)  Mattel argued that it had already served 41 interrogatories and would exceed the limit if it were not allowed to combine the 37 interrogatories. (*Id*. at 7 & 9.)  Notably, Mattel did not mention anything in its motion about needing any further expansion of the interrogatory limit.  On December 3, 2007, the Court granted Mattel's motion.  (Docket Item 1180.)

Mattel has fully exhausted its interrogatory limit and has nearly exhausted its deposition allotment, having taken 21 depositions to date.[1]  Mattel has also taken mountains of other discovery, including more than fifty subpoenas, more than 2,300 document requests, and more than 4,500 requests for admissions.  (Park Decl., ¶ 1.)

To date, counter-defendants have taken 8 depositions.  (Park Decl., ¶ 24.)  On December 20, 2007, however, Mattel informed counter-defendants for the first time that Mattel believed that counter-defendants had taken 17 depositions and, including currently noticed or scheduled depositions, had only one more deposition left.  (Park

---

[1] In addition to the 18 witnesses Mattel deposed prior to filing its motion, Mattel has since deposed Margaret Hatch-Leahy, Elise Cloonan and Jeanne Galvano.

1   Decl., Ex. 17.)  On that basis, Mattel objected to MGA's ten deposition notices and

2   refused to provide a deposition date for more than one of the ten witnesses. (*Id.* ¶ 24.)

3   Mattel's new theory is based on an argument that during the depositions of many of

4   Mattel's Rule 30(b)(6) designees, counter-defendants purportedly exceeded the

5   scope of the designations and were therefore deposing those designees both as

6   Mattel's representatives and in their individual capacities.  (*Id.*)  Although counter-

7   defendants had been requesting deposition dates for various witnesses from Mattel

8   for weeks, Mattel never mentioned that it believed counter-defendants were at or

9   near their deposition limit, even though counter-defendants told Mattel in mid-

10  November that they still had 18 depositions remaining.  (Park Decl., ¶ 24; Exs. 2, 16,

11  18 & 19.)  Under Mattel's new theory of calculating depositions, Mattel has taken 29

12  depositions to date and first violated the Court's 24-deposition limit in October 2007,

13  when it took its twenty-fifth deposition.  (Park Decl., ¶ 24.)

14  **III.   THE COURT SHOULD DENY MATTEL'S MOTION BECAUSE THE**

15  **COURT HAS ALREADY GIVEN MATTEL A FULL AND FAIR OPPORTUNITY TO TAKE DISCOVERY IN THIS CASE.**

16  **A.   The Federal Discovery Rules Do Not Support Mattel's Request for**

17  **Additional Discovery.**

18      The Federal Rules of Civil Procedure require courts to place appropriate

19  limitations on discovery.  Rules 30 and 33 restrict a party to 10 depositions and 25

20  interrogatories, respectively, absent leave of court.  *See* Fed. R. Civ. P. 30(a)(2)(A)

21  & 33(a).  These numerical limits were enacted to reduce litigation costs and increase

22  efficiency of interrogatory and deposition practice.  *See Safeco of Am. v. Rawstron*,

23  181 F.R.D. 441, 443 (C.D. Cal. 1998) ("The purpose of this revision is to reduce the

24  frequency and increase the efficiency of interrogatory practice."), quoting Fed. R.

25  Civ. P. 33, Advisory Comm. Notes to 1993 Amendment; *In re At Home Corp.*, No. C

26  04-0931 MMC (JL), 2005 WL 289976, at *3 (N.D. Cal. Feb. 4, 2005) ("Rule 30 is

27  designed to reduce litigation costs and delay of discovery by setting a limit on the

28  number of depositions, which is one of the more expensive forms of discovery.").

1    In addition, Rule 26(b)(2) provides that discovery "shall be limited by the

2  court" if it finds any of the following:

3    (i) the discovery sought is unreasonably cumulative or duplicative, or
     can be obtained from some other source that is more convenient, less
4    burdensome, or less expensive;

5    (ii) the party seeking discovery has had ample opportunity to obtain the
     information by discovery in the action; or
6

7    (iii) the burden or expense of the proposed discovery outweighs its
     likely benefit, considering the needs of the case, the amount in
     controversy, the parties' resources, the importance of the issues at stake
8    in the action, and the importance of the discovery in resolving the issues.

9  Fed. R. Civ. P. 26(b)(2)(C).  Thus, absent agreement of the parties, a court may only

10 expand the limits on interrogatories and depositions "to the extent consistent with the

11 principles stated in Rule 26(b)(2)."  Fed. R. Civ. P. 30(a)(2) & 33(a).

12   Any request for additional depositions or interrogatories must be supported by

13 a "particularized showing of why the discovery is necessary."  *At Home*, 2005 WL

14 289976, at *3 (internal quotations and citation omitted); *Archer Daniels Midland Co.*

15 *v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 586 (D. Minn. 1999).  The party

16 seeking additional discovery must "at an irreducible minimum" show that each

17 deposition or interrogatory "concern[s] an issue material to the case and [is] not

18 unreasonably cumulative or duplicative."  *Barrow v. Greenville Indep. Sch. Dist.*,

19 202 F.R.D. 480, 483-84 (N.D. Tex.. 2001).  *See also At Home*, 2005 WL 289976, at

20 *3 (denying request for 21 depositions where "many of [the witnesses] may

21 duplicate each other's testimony").  This showing must be made "for not only the

22 additional depositions [or interrogatories] but also the depositions [or interrogatories]

23 already taken. … Absent such a rule, … a party could circumvent the cap by taking

24 ten deposition[s] of questionable relevance first and leave the most crucial

25 depositions for the end, confident in the belief that leave of the court shall not be

26 denied."  *Newell v. State of Wis. Teamsters Joint Council No. 39*, No. 05-C-552,

27 2007 WL 3166757, at *1 (E.D.Wis. Oct. 25, 2007), citing *Barrow*, 202 F.R.D. at

28 482-483.

1   Moreover, where, as here, a court has set discovery limits as part of its Rule

2   16(b) scheduling order, those limits shall not be modified except upon a showing of

3   good cause.  Fed. R. Civ. P. 16(b).  "This 'good cause' standard 'primarily considers

4   the diligence of the party seeking the amendment.'"  *Matrix Motor Co. v. Toyota*

5   *Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003), quoting *Johnson v.*

6   *Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

> Because "[g]ood-faith compliance with [ ] Rule 16 plays an important role in this process," *Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 1371 (1st Cir.1991), not only must parties participate from the outset in creating a workable Rule 16 scheduling order but ***they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation***.  ...Accordingly, to demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, ...; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, ...; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order, ....

15   *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (emphasis added,

16   citations omitted).  "If the party seeking the modification 'was not diligent, the

17   inquiry should end' and the motion to modify should not be granted."  *Zivkovic v. So.*

18   *Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002), quoting *Johnson*, 975 F.2d at

19   609.

20   Applying the foregoing principles in this case, it is clear that Mattel has failed

21   to show the diligence and need required to support its request for more discovery.

22   ### B.    <u>Mattel Is Not Entitled to Any More Depositions.</u>

23   Mattel's request to take at least fifty additional depositions and two additional

24   Rule 30(b)(6) depositions covering 160 topics is untenable because Mattel has not

25   acted diligently, has failed to demonstrate sufficient need, and has made its request

26   for the purpose of harassing and unduly burdening the MGA Defendants, and the

27   non-party witnesses.

28

1.   **Mattel Has Not Made a Good Faith, Diligent Effort to Adhere to the Court's 24-Deposition Limit.**

When the Court imposed the 24-deposition limit, it was Mattel and its counsel's obligation to make a good faith, diligent effort to adhere to that limit.  *See Jackson*, 186 F.R.D. at 608.  This is particularly true because the Court made clear at the Scheduling Conference that it was not going to allow a substantially greater number of depositions.  Despite Mattel's assertion that there were at least "some 70" witnesses with relevant knowledge, the Court imposed the 24-deposition limit with the expectation that this number "would hopefully capture most of the individuals who have some information to provide in this case."  (Park Decl., Ex. 1 (2/12/07 Sched. Conf.) at 10:9-20 & 22:19-22.)  Notably, in setting the 24-deposition limit, the Court rejected Mattel's proposal of forty non-expert depositions and unlimited Rule 30(b)(6) depositions, finding Mattel's proposal to be "disconcerting."  (Park Decl., Ex. 1 (2/12/07 Sched. Conf. Tr.) at 8:23-25.)

Despite its duty to act diligently and in good faith, Mattel and its counsel have made little effort to adhere to the 24-deposition limit.  Rather than apportion its 24 depositions among the different claims and issues in this case, Mattel has used almost all of its allotted depositions on Phase 1 witnesses.  To date, Mattel has taken 21 depositions, although this number jumps to 29 applying Mattel's newly devised counting technique.  As Mattel concedes, only one of those depositions has been directed at non-Phase 1 issues.  (Mot. at 2.)  Indeed, although Mattel knew before February 2007 of the Phase 2 witnesses it now seeks to depose (*see* Proctor Decl., Ex. 19 at 3-19), Mattel did not reserve any of its 24 depositions for those witnesses.

In reviewing the list of witnesses whom Mattel has deposed, it is also clear that Mattel has made no attempt to prioritize its depositions.  Instead, Mattel has used numerous depositions on matters that are duplicative of discovery Mattel has already taken or on witnesses who have little or no relevant information.

1      For example, Mattel used two depositions to examine reporters Denise O'Neal

2 and Maureen Tkacik about whether quoted statements attributed to Isaac Larian in

3 articles they wrote were exact quotes.  (Park Decl., Ex. 5 (O'Neal Dep.) at 9:1-14:4;

4 Ex. 6 (Tkacik Dep.) at 8:25-10:5.)  Mattel also subpoenaed two other reporters—

5 Christopher Palmeri and Jeff Weiss—for deposition, presumably to ask them similar

6 questions about articles they wrote, and, but for scheduling issues, would have taken

7 those depositions by now.  (Proctor Decl., Ex. 21.)  Mattel used another deposition to

8 examine Bryant's 26-year-old niece solely because Bryant had given her one of his

9 computers as a gift, even though Mattel already had a copy of that computer's hard

10 drive from the relevant time period and already deposed Bryant about the computer.

11 (Park Decl., Exs. 7 & 8.)  Mattel also deposed Dave Malacrida because they

12 mistakenly believed that he was an "MGA public relations employee with

13 knowledge regarding early Bratz design and marketing" (Mot. at 6), despite the fact

14 that Mattel included those same topics in its previously served Rule 30(b)(6)

15 deposition notice to MGA.  (Proctor Decl., Ex. 38 at 6-7 (Topic Nos. 1 and 11).)

16      Mattel has only itself to blame for its lack of diligence in trying to adhere to

17 the Court's deposition limit.  Most of the additional witnesses Mattel seeks to depose

18 were known to Mattel prior to the February 2007 Scheduling Conference, as were

19 the areas of knowledge that Mattel ascribes to them.  (*See* Proctor Decl., Ex. 19 at 3-

20 19; Mot. at 10 n.26, n.28, n. 29, n.30.)  Indeed, Mattel identified the vast majority of

21 those witnesses, including all but one of the Phase 2 witnesses, in its Rule 26

22 disclosures in January 2007.  (Proctor Decl., Ex. 19 at 3-19.)  Thus, Mattel cannot

23 blame any unforeseen or unanticipated developments following the Scheduling

24 Conference for Mattel's failure to allocate some of its depositions to witnesses who

25 were clearly known to Mattel at that time.  Nor is anyone other than Mattel

26 responsible for Mattel's decision to use its depositions to examine tangential or

27 duplicative witnesses instead of, for example, any of the Phase 2 witnesses that

28 Mattel now seeks leave to depose.

1       There is also no reason why Mattel could not have brought its motion for

2  additional discovery earlier.  Mattel has known for many months about most of the

3  additional witnesses it wants to depose.  In addition, since even before the February

4  2007 Scheduling Conference, Mattel has known that counter-defendants would not

5  agree to a deposition limit substantially greater than 24 because they had already

6  rejected Mattel's proposed limit of 40.  (Park Decl., Ex. 3 at 6.)  Indeed, even after

7  Mattel's counsel told the Court at the October 31, 2007 Status Conference that it

8  would be filing shortly a motion for additional discovery (Park Decl., Ex. 9

9  (10/31/07 Status Conf.) at 36:14-37:9), Mattel inexplicably waited another three

10  weeks before filing its motion.  This delay alone caused the hearing on Mattel's

11  motion to be delayed by a month.  (Park Decl., Ex 10 (showing that Mattel's motion

12  could have been heard on December 10, 2007, if filed by November 5, 2007).

13       Mattel has proceeded with discovery in this case as if the Court's deposition

14  limit were nonexistent.  To the contrary, the deposition limit is an order of the Court

15  to which Mattel must make a diligent, good faith effort to adhere.  Mattel has failed

16  to do so and its request for more depositions therefore should be denied.  *See*

17  *Zivkovic*, 302 F.3d at 1087, quoting *Johnson*, 975 F.2d at 609 ("If the party seeking

18  the modification 'was not diligent, the inquiry should end' and the motion to modify

19  should not be granted.").

20         **2.**    **Mattel Has Failed to Make a Particularized Showing as to Why It Needs Its Requested Depositions.**

21

22       By its motion, Mattel essentially seeks to depose almost every non-Mattel

23  employee or witness who has been identified as potentially having some knowledge

24  of relevant information in this case.  However, "[t]he mere fact that many individuals

25  may have discoverable information does not necessarily entitle a party to depose

26  each such individual."  *Newell*, 2007 WL 3166757, at *1, quoting *Dixon v.*

27  *Certainteed Corp.*, 164 F.R.D. 685, 692 (D. Kan. 1996).

28

1    Rather, Mattel must make a particularized showing that each deposition it has

2    taken and wants to take is necessary (e.g., that the information sought in the

3    deposition is relevant, not duplicative of other discovery, and not available through

4    other sources).  *See* Fed. R. Civ. P. 26(b)(2)(C); *Newell*¸ 2007 WL 3166757, at *1.

5    Given that Mattel waited until three weeks before the close of Phase 1 discovery to

6    have its motion heard, the Court also should more closely scrutinize Mattel's

7    assertion of need with respect to each Phase 1 witness since there would be little time

8    left in which to conduct any additional Phase 1 depositions.

9    Mattel's argument is essentially that it needs more depositions because there

10   are many more than 24 potential witnesses with knowledge of relevant facts.

11   However, "[t]he number of potential witnesses does not justify deposing every one."

12   *At Home*, 2005 WL 289976, at *3.  Moreover, this argument is the same argument

13   that Mattel unsuccessfully advanced at the February 2007 Scheduling Conference in

14   support of its proposed 40 non-expert depositions and unlimited Rule 30(b)(6)

15   depositions.  (Park Decl., Ex. 1 (2/12/07 Sched. Conf.) at 10:9-20 (arguing that at

16   least "some 70" fact witnesses had been identified).)  The Court was not persuaded

17   by Mattel's argument and rejected Mattel's proposal as "disconcerting."  (*Id.* at 8:19-

18   25 & 22:19-22.)  Far more disconcerting is Mattel's proposal, which would bring its

19   total non-expert depositions to more than 70, including two more Rule 30(b)(6)

20   depositions on 160 topics.

21   Mattel fails to make the particularized showing necessary to justify its

22   troubling proposal.  With respect to witnesses Mattel has already deposed, Mattel

23   does nothing more than make a conclusory assertion that it "has had good cause for

24   each of those depositions" and then briefly identify each of those deponents.  (Mot.

25   at 5-6.)  Such a cursory discussion hardly constitutes the particularized showing that

26   Mattel is required to make.  Moreover, it is clear that Mattel cannot make a

27   particularized showing for each witness it has already deposed because, as discussed

28

1  above, Mattel has taken numerous depositions that either are duplicative of other

2  discovery or do not bear meaningfully on the issues to be tried in this case.

3      As to the additional witnesses Mattel wants to depose, Mattel's showing of

4  necessity is also lacking.  Mattel seeks leave to depose at least 37 additional Phase 1

5  witnesses and 13 additional Phase 2 witnesses, although Mattel indicates that these

6  numbers represent the minimum numbers of additional depositions that it seeks.

7  (Mot. at 13-14.)  Mattel, however, does not demonstrate how each witness's

8  knowledge is relevant to the specific issues in this case, why such information is not

9  duplicative or cumulative, or why Mattel cannot obtain such information from other

10 sources or through less burdensome means. For example, Mattel identifies three

11 MGA HK employees that it seeks to depose—Stephen Lee, Cecilia Kwok and Eric

12 Yip—but fails to show why their testimony would not be duplicative of each other or

13 of the Rule 30(b)(6) deposition notice that Mattel served on MGA HK.

14     Similarly, Mattel asserts that it needs two additional Rule 30(b)(6) depositions

15 covering 160 Phase 2 topics but fails to adequately demonstrate that each of the

16 proposed topics is relevant to Phase 2 issues and is not duplicative of other discovery.

17 For example, although Mattel claims that the proposed topics address only Phase 2

18 issues, several of the topics specifically relate to Bratz.  (*See, e.g.,* Mot., Ex. A at 11-

19 12 (Topics Nos. 38-46); Ex. B at 23-24 (Topics Nos. 85-87).)  Mattel's proposed

20 Rule 30(b)(6) topics also include topics directed at the factual bases of Defendants'

21 affirmative defenses.  (Mot. Ex. A at 11 (Topic No. 37); Ex. B at 24 (Topic No. 88).)

22 These topics are plainly duplicative of the "supplemental" interrogatory regarding

23 affirmative defenses that the Court recently allowed.  Moreover, Mattel has stated its

24 belief that Rule 30(b)(6) depositions "are far inferior" to a contention interrogatory

25 for gathering full and complete information about affirmative defenses.  (Park Decl.,

26 Ex. 4 at 9.)  Thus, Mattel does not need depositions on these topics.

27     Moreover, it is clear from Mattel's list of witnesses that Mattel's primary

28 objective in seeking to additional depositions is to harass and intimidate the MGA

1  Defendants through these non-party witnesses.  For example, Mattel claims that it

2  wants to depose Moss Adams, Mr. Larian's tax accounting firm, and Wachovia, one

3  of MGA's lenders, because they allegedly have knowledge of MGA's profits, net

4  worth, and payments to Mr. Larian.  (Mot. at 11.)  These non-parties, however, are

5  hardly material witnesses and have no meaningful, non-duplicative information to

6  provide.  Indeed, whatever relevant information about MGA's finances that these

7  non-parties might have would have come from the MGA Defendants, from whom

8  Mattel has already sought and obtained discovery on these subjects.  (*See, e.g.,*

9  Proctor Decl., Ex. 38 at 9 (identifying as topics for Mattel's Rule 30(b)(6) deposition

10  of MGA "YOUR revenues and profits from BRATZ…" and "YOUR net worth"); Ex.

11  39 at 8 (identifying as topic for Mattel's Rule 30(b)(6) deposition of MGA

12  "[p]ayments of money … that YOU have made to …Isaac Larian…").  Such

13  discovery obtained by Mattel has included numerous financial documents and

14  information, as well as the depositions of Mr. Larian and a MGA Rule 30(b)(6)

15  witness designated to testify about MGA's Bratz-related revenue and MGA's net

16  worth.  (Park Decl., ¶ 4.)

17       Mattel also contends that it needs to depose several of MGA's current and

18  former attorneys regarding MGA's patent and trademark applications and copyright

19  registrations.  (Mot. at 10.)  Mattel, however, has already sought and obtained

20  deposition testimony and other information regarding these subjects from the MGA

21  Defendants.  (Proctor Decl., Ex. 38 at 10 (identifying as topic for Mattel's Rule

22  30(b)(6) deposition of MGA "[t]he applications for registration and the registrations

23  for copyright, patent, trademark or any other right that REFER OR RELATE TO

24  BRATZ or BRATZ DESIGNS sought, made or obtained by, for or on behalf of

25  YOU or BRYANT, including without limitation COMMUNICATIONS pertaining

26  thereto").)  Indeed, MGA already produced two Rule 30(b)(6) witnesses on these

27  subjects for two days of deposition by Mattel and has even agreed to produce one of

28  its Rule 30(b)(6) witnesses for some follow-up examination.  (Park Decl., ¶¶ 2 & 3.)

1   Given the ample discovery that Mattel has already taken on issues such as MGA's
2   profits and its applications for intellectual property protections, Mattel does not
3   "need" to depose witnesses such as Moss Adams, Wachovia or MGA's current and
4   former attorneys.

5       Having failed to make a particularized showing of need with respect to each
6   witness that Mattel has deposed and seeks leave to depose, Mattel's motion for
7   additional depositions is unwarranted and must be denied.

8       **3.    Granting Mattel Additional Depositions Would Unduly
        Burden and Prejudice the MGA Defendants and the Various
9       Non-Party Witnesses.**

10      Glaringly absent from Mattel's motion is any discussion of the negative
11  impact that its requested expansion of the Court's deposition limit would have on the
12  other parties, the non-party witnesses, as well as the Court's schedule.  It is not
13  surprising, however, that Mattel would want to avoid discussing this issue because
14  the impact of allowing Mattel to have all, or even a small portion, of the additional
15  depositions it seeks would be severe.

16      Because Mattel waited until late November to file its motion, only three weeks
17  of Phase 1 discovery will remain when Mattel's motion is heard.  Mattel, however,
18  seeks at last fifty additional deponents, including at least 37 Phase 1 witnesses and
19  two more Rule 30(b)(6) depositions on 160 topics.  Conservatively assuming that
20  Mattel could cover one witness or five Rule 30(b)(6) topics per day, *it would take*
21  *nearly four months to complete all of the depositions Mattel has requested*.  It
22  would be impossible under the current schedule for the MGA Defendants and their
23  respective counsel to finish taking their Phase 1 discovery, complete their responses
24  to Mattel's continual stream of new discovery requests, and prepare for and
25  participate in Mattel's additional depositions.  Similarly, it would be unreasonable to
26  impose such a compressed schedule on the non-party witnesses.

27      Modifying the current schedule or allowing only some additional Phase 2
28  depositions is not the solution; denying Mattel's motion in its entirety is the solution.

After litigating this case for nearly four years, Mattel should not be allowed to extend the schedule at the eleventh hour so that it may engage in essentially limitless discovery. Mattel has had ample opportunity to take discovery regarding the issues in this case. In addition to its exhausted allotment of interrogatories and depositions, Mattel has served thousands of requests for production and thousands of requests for admissions. The time has come for Mattel to wrap up its discovery, not continue to ramp it up.

Even granting Mattel only additional Phase 2 witnesses would also unduly burden the MGA Defendants. Because Phase 2 discovery is proceeding concurrently with the Phase 1 litigation, if Mattel obtains additional Phase 2 depositions, counter-defendants would likely have to interrupt their preparation of Phase 1 summary judgment motions and trial preparation to prepare for and participate in these additional Phase 2 depositions. Moreover, Mattel's requested Phase 2 depositions include Rule 30(b)(6) depositions of MGA and MGA Mexico covering 160 topics. The amount of time and resources required to identify witnesses on each of these 160 topics and prepare for and participate in the depositions of each of those witnesses would be enormous. The MGA Defendants should not be forced to disrupt their case preparation because of Mattel's failure to abide by the Court's discovery limits.

Because Mattel's request for scores of additional depositions would unduly burden and unfairly prejudice counter-defendants and the non-party witnesses, the Court should deny Mattel's motion.

### 4. Mattel's Improper Manipulation of Counter-Defendants' Deposition Count Warrants Denial of Mattel's Motion.

Mattel's recent attempt to deny counter-defendants even the 24 depositions allowed under the Court's current order exemplifies Mattel's abusive discovery tactics and underscores the importance of denying Mattel's request for additional discovery.

1    Until December 20, 2007, one of the few undisputed issues in this case was
2  how to count depositions.  Each separately noticed deposition of a witness counted
3  as one deposition.  A deposition noticed under Rule 30(b)(6) also counted as one
4  deposition, regardless of the number of designated witnesses who testified.  This
5  approach is consistent with how courts count Rule 30(b)(6) witnesses.  *See Detoy v.*
6  *City & County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000) ("Nor should
7  one witness count as two depositions for purposes of the Local Rules' limit on the
8  number of depositions to be taken by each party. Such a rule would encourage
9  defending counsel to take a hard line and force an opponent to expend its deposition
10  allotment.").  Under this approved methodology, Mattel has taken 21 depositions to
11  date and counter-defendants have taken 8 depositions to date.

12    On December 20, however, after MGA had been trying for weeks to secure
13  deposition dates for numerous Mattel witnesses (Park Decl., Exs. 2, 16, 18 & 19),
14  Mattel took the position for the first time that if a Rule 30(b)(6) witness testified
15  outside the scope of his designation at his deposition, that deposition would count as
16  two depositions.  (Park Decl., Ex. 17.)  Under this methodology, Mattel argued that
17  counter-defendants could depose only one of the ten witnesses that counter-
18  defendants had asked to depose.  (*Id.*)  Mattel has now objected to producing any of
19  the ten witnesses for deposition until MGA identifies which *one* it wants.  (*Id.* ¶ 24.)

20    Not only is Mattel's new position contrary to the law, it also exemplifies the
21  abusive tactics that Mattel has employed in this litigation.  It is clear that Mattel has
22  taken this position at the eleventh hour to put counter-defendants in the same
23  predicament in which Mattel currently sits with respect to the deposition limit in
24  order to increase Mattel's chances of obtaining additional depositions.  In effect,
25  Mattel is trying to extort additional depositions from counter-defendants.  Had
26  Mattel genuinely believed that its methodology was the appropriate way to count
27  depositions, it would have stopped taking depositions in early October when it
28  reached 24 depositions to avoid being in contempt of the Court's Rule 16(b)

1  Scheduling Order.  (Park Decl., ¶ 24.)  The Court should not condone Mattel's

2  improper tactics, which are solely intended to unfairly prejudice counter-defendants.

3      Accordingly, the Court should deny Mattel's request for additional depositions.

4      **C.    Mattel Is Not Entitled to Any More Interrogatories.**

5      The same principles that weigh in favor of denying Mattel's request for

6  additional depositions also support denial of Mattel's request for 19 additional

7  interrogatories.  Specifically, Mattel is not entitled to additional interrogatories for

8  each of the following reasons: Mattel did not act diligently to try to comply with the

9  Court's interrogatory limit; Mattel has not made a particularized showing of

10 necessity with respect to each of its prior interrogatories and proposed interrogatories;

11 and Mattel's request for additional interrogatories would unduly burden and

12 prejudice the MGA Defendants.

13      **1.    Mattel Did Not Make a Good Faith, Diligent Attempt to
        Comply with the Court's Interrogatory Limit.**

14

15      In arguing to exceed the 50-interrogatory limit, Mattel conveniently omits the

16 fact that it was Mattel that originally proposed that limit to cover all issues in the

17 case:  "Mattel proposes that discovery should be taken on all issues, including

18 liability, damages and affirmatives defenses …   Mattel further proposes that each

19 side be permitted to propound 50 interrogatories."  (Park Decl., Ex. 3 (Joint Rule

20 26(f) Report) at 5.)  Because the Court adopted Mattel's proposal as part of its Rule

21 16(b) Scheduling Order, Mattel is obligated to act diligently to comply with that

22 interrogatory limit.  *See Jackson*, 186 F.R.D. at 608.  Mattel has not done so.

23      Tellingly, Mattel offers no explanation as to why it was not able to stay within

24 the limit.  Since Mattel was the party that proposed fifty interrogatories, Mattel

25 should have had no problem complying with the limit.  All of the issues for which

26 Mattel now seeks leave to serve additional interrogatories were known to Mattel

27 when the limit was imposed and therefore could have been included in Mattel's

28 interrogatories.  In short, nothing prevented Mattel from including some or all of its

1  proposed additional interrogatories among its fifty allotted interrogatories.

2  Nevertheless, rather than use any of its allotted interrogatories to address these issues,

3  Mattel used numerous interrogatories to address issues that were already the subject

4  of prior interrogatories or other discovery requests.

5        For example, Mattel served an interrogatory asking MGA to identify each

6  Bratz product sold and for each product, the number of units sold, the revenue

7  received, the costs incurred, and the gross and net profits.  (Proctor Decl., Ex. 67 at 7

8  (Interrogatory No. 45).)  Mattel, however, requested precisely the same information

9  in its Second Set of Document Requests to MGA.  (Park Decl., Ex. 12 at 7-8

10 (Requests Nos. 3-7).)

11       In June 2007, Mattel served three interrogatories asking MGA to identify

12 every "BRATZ INVENTION" created prior June 1, 2001.  (Proctor Decl., Ex. 13 at

13 8-9 (Interrogatories Nos. 12-14).  Two years earlier though, Mattel had served an

14 interrogatory covering the same issue: "IDENTIFY, fully and separately, each and

15 every EMBODIMENT of BRATZ prior to December 31, 2001."  (Proctor Decl., Ex.

16 10 at 7 (Interrogatory No. 7).)  Mattel's use of its allotted interrogatories to duplicate

17 other discovery requests plainly demonstrates that Mattel has not acted diligently to

18 comply with the interrogatory limit.

19       In addition, Mattel did not act diligently in filing its motion for additional

20 interrogatories because Mattel clearly could have raised this issue earlier.  At the

21 time of the February 2007 Scheduling Conference, Mattel knew that it had used up

22 24 interrogatories (which the Discovery Master later held were actually 26

23 interrogatories) and was well aware of all the issues for which Mattel now seeks

24 additional interrogatories. Thus, if Mattel believed it needed to address all of these

25 issues in its interrogatories, Mattel necessarily knew that fifty interrogatories would

26 not be enough at the time it proposed that limit to the Court.

27       Mattel also could have raised this issue in conjunction with its motion for

28 leave to file a "supplemental" interrogatory regarding affirmative defenses.  By its

1  own count, Mattel had used 41 of its allotted interrogatories by the time it filed its

2  motion in September 2007.  (Park Decl., Ex. 4 at 7.)  Yet, other than the

3  "supplemental" interrogatory, Mattel did not mention any need or desire to go

4  beyond the fifty-interrogatory limit.  As discussed above with respect to Mattel's

5  request for additional depositions, Mattel also inexplicably waited three weeks to file

6  its motion for additional discovery after informing the Court at the October 31, 2007

7  Status Conference that it would be filing the motion shortly.

8       Because Mattel was not diligent with regard to the interrogatory limit, "'the

9  inquiry should end' and [Mattel's] motion to modify [the interrogatory limit] should

10  not be granted." *Zivkovic*, 302 F.3d at 1087, quoting *Johnson*, 975 F.2d at 609.

11       **2.**    **Mattel Has Not Made a Particularized Showing of Necessity**

12             **with Respect to Each of Its Interrogatories.**

13       As with its request for more depositions, Mattel's request for additional

14  interrogatories must be supported by a "particularized showing of why the discovery

15  is necessary." *Archer Daniels*, 187 F.R.D. at 586.  That showing must be made for

16  each interrogatory that Mattel seeks leave to serve and for each interrogatory that

17  Mattel has already taken. *See Newell*, 2007 WL 3166757, at *1.  Mattel, however,

18  has failed to make the necessary showing with respect to both sets of interrogatories.

19       As to interrogatories it has previously served, Mattel does not assert any were

20  necessary.  Instead, Mattel simply identifies the issues to which they related.  (Mot.

21  at 17-18.)  That Mattel's prior interrogatories may have generally related to relevant

22  issues does not come close to showing that each interrogatory was necessary.  Indeed,

23  Mattel cannot make such a showing because, as discussed above, Mattel served

24  numerous interrogatories that were duplicative of other discovery requests served by

25  Mattel.  Mattel also served interrogatories that sought irrelevant or tangential

26  information.  For example, after the MGA Defendants' current counsel substituted in,

27  Mattel used one of its allotted interrogatories to try to find out why the MGA

28  Defendants' prior attorneys withdrew.  (Proctor Decl., Ex. 65 at 9.)  If Mattel wants

1   to use its allotted interrogatories to embark on such fishing expeditions rather than to

2   take relevant, non-duplicative discovery, it should not be allowed to assert later that

3   it did not have enough interrogatories to address all of the parties' claims.

4        Mattel also has not made the necessary showing with respect to the additional

5   interrogatories it seeks leave to propound.  For example, Mattel has failed to

6   demonstrate that its proposed interrogatories are not duplicative of interrogatories

7   and other discovery requests that it previously served.  Proposed Interrogatories Nos.

8   68 and 69 request the MGA Defendants to identify all payments by MGA to former

9   Mattel employees.  (Mot., Ex. C at 17.)  Mattel, however, previously served a

10  document request covering the same information: "All DOCUMENTS REFERRING

11  OR RELATING TO any bonuses, monetary incentives or payments other than as

12  part of base salary received by any of the FORMER MATTEL EMPLOYEES while

13  employed by YOU, including without limitation all DOCUMENTS REFERRING

14  OR RELATING TO the reasons therefor."  (Park Decl., Ex. 13 at Request 74.)  Even

15  assuming such information were relevant, it is not necessary to request the same

16  information in both a document request and two interrogatories.  Because Mattel has

17  not shown the requisite need with respect to the interrogatories it has served and

18  seeks leave to serve, Mattel's request for additional interrogatories should be denied.

### 3.   Mattel's Proposed Interrogatories Are Overly Broad and Would Impose an Undue Burden on Counter-Defendants.

21        The Court also should deny Mattel's request for additional interrogatories

22  because Mattel's proposed interrogatories are extremely overbroad and would

23  require the MGA Defendants to incur substantial burden and expense in responding

24  to them.  Many of Mattel's proposed interrogatories are not properly limited in time

25  or scope.  Proposed Interrogatory No. 56 exemplifies Mattel's overly expansive

26  interrogatories.  That interrogatory requests the identity of "all MATTEL

27  DOCUMENTS that MGA has obtained, received, reviewed, copied, reproduced,

28  transmitted, requested or used at any time since January 1, 1999."  (Mot. Ex. C at 14.)

1   Mattel broadly defines "MATTEL DOCUMENTS" to include "any document[s] …
2   obtained … from MATTEL by any PERSON." (*Id.* at 7.)  As written, proposed
3   Interrogatory No. 56 demands that MGA search through every paper and electronic
4   file over the past nine years for anything that might appear to relate to Mattel and
5   then try to trace the transfer history of each of those documents to determine whether
6   it came from anyone at Mattel.  Such an undertaking would be enormous and would
7   impose a burden and expense that far outweighs any probative value of the
8   information sought.  (*See also* Mot., Ex. C at 15 (Interrogatory No. 57: "IDENTIFY
9   all DOCUMENTS that REFER OR RELATE TO any MATTEL product or plan that
10  any of the FORMER MATTEL EMPLOYEES provided, transmitted or disclosed to,
11  shared with or used on behalf of MGA at any time since January 1, 1999…") & 16
12  (Proposed Interrogatory No. 64: "…state all facts which support YOUR claims
13  against Mattel in THIS ACTION…").)

14      In addition, as with Mattel's request for additional depositions, granting
15  Mattel's request for 19 more interrogatories would unfairly prejudice counter-
16  defendants by rewarding Mattel for disregarding the Court's discovery limits.  While
17  counter-defendants have diligently and in good faith worked to stay within the
18  Court's discovery limits, Mattel has blown through both the limits as if they did not
19  exist.  Mattel's conduct with regard to the interrogatories should be particularly
20  disconcerting to the Court since it was Mattel that proposed the fifty-interrogatory
21  limit.  Counter-defendants should not have to incur the added burden and expense of
22  responding to additional interrogatories that were only "necessitated" by Mattel's
23  unwillingness to comply with the court-ordered discovery limits.

24      Accordingly, the Court should deny Mattel's request for more interrogatories.

25      **D.    The Court Should Deny Mattel's Motion in View of Mattel's
           Unwillingness to Comply with Its Own Discovery Obligations.**
26

27      Mattel also should not be allowed additional depositions or interrogatories
28  because Mattel has failed to fulfill its discovery obligations to counter-defendants in

1  a reasonable or timely manner.  For months, the MGA Defendants have tried to

2  schedule depositions of numerous Mattel employees and non-parties represented by

3  Mattel's counsel before the end of Phase 1 discovery.  (Park Decl., Exs. 2, 16 & 19.)

4  Mattel has responded by either completely refusing to schedule the depositions or by

5  unreasonably delaying in scheduling witnesses.  (*Id.*, Exs. 2, 16, 17 & 19.)  For

6  example, although Mattel identified its CEO Robert Eckert as having personal

7  knowledge of "Mattel's business operations and the development and ownership of

8  intellectual property at issue" (Proctor Decl., Ex. 19 at 6), Mattel has refused to

9  permit counter-defendants to depose Mr. Eckert for any meaningful length of time.

10      Mattel has taken a similar approach with Rule 30(b)(6) designees, refusing to

11  designate witnesses or trying to limit improperly the depositions of designated

12  witnesses.  (Park Decl., Ex. 2 & 16.)

13      Moreover, Mattel has refused even to provide dates for the depositions of any

14  of the following ten witnesses based on their recently concocted counting scheme

15  that is designed to falsely inflate the number of depositions that counter-defendants

16  have taken:  Milt Zablow (former Mattel head of sales), Theresa Newcomb (former

17  Mattel corporate staffing employee), Roger Simoneau (Mattel investigator who

18  investigated Bryant in 2002), Evelyn Viohl (Mattel Vice President of Product Design

19  For Girls Dolls Plush Group), Hoi Hoffman-Briggs (pattern maker in Mattel's Collector

20  Group), Jean Gomez (Mattel Brand Manager of My Scene), Kevin Farr (Mattel Chief

21  Financial Officer), Tim Kilpin (Mattel Senior Vice President of Girls Marketing), Sheila

22  Kyaw (employee in Mattel Design Department) and Maureen Tafoya (Mattel Human

23  Resources Department, Manager of Corporate Staffing).  (Park Decl. ¶ 24.)  It is

24  apparent that Mattel's refusal to cooperate in the scheduling of depositions is

25  designed to run out the clock on Phase 1 discovery.

26      The same is true of Mattel's motion for additional discovery, which seeks to

27  depose at least another 37 Phase 1 witnesses.  If Mattel's motion were granted,

28  Mattel would be able to use the additional depositions to disrupt and delay counter-

1  defendants' efforts to complete Phase 1 discovery on time.  Because Mattel's

2  discovery practices have been abusive and improper, Mattel is not entitled to the vast

3  amounts of additional discovery it now seeks.

4        **E.**    **Mattel Should Not Be Allowed to Circumvent the Discovery Master**

5            **by Having this Court Rule on the Validity of Counter-Defendants' Responses and Objections to Mattel's Interrogatories.**

6        In addition to the 19 interrogatories that Mattel seeks leave to serve, Mattel

7  has also requested that the Court order counter-defendants to respond to numerous

8  interrogatories previously served by Mattel that counter-defendants have objected to

9  as exceeding the fifty-interrogatory limit.  Mattel's request, however, is improper

10  because the Discovery Master must decide such issues in the first instance and, in

11  fact, Mattel has already filed motions regarding counter-defendants' interrogatory

12  objections and responses with the Discovery Master.  Accordingly, there is no

13  reason for the Court to address this issue.

14        When Mattel filed its motion for additional discovery, the parties were still

15  meeting and conferring regarding whether and to what extent counter-defendants

16  would supplement their responses to Mattel's interrogatories.  (Proctor Decl., Ex. 76

17  at 1; Park Decl., Ex. 14.)  Indeed, after the filing of Mattel's motion, Mr. Bryant

18  agreed to supplement his responses and the MGA Defendants served supplemental

19  interrogatory responses.  (Park Decl., Exs. 14 & 15.)  Recently, Mattel filed with the

20  Discovery Master two motions to compel counter-defendants' further responses to

21  these interrogatories.  (Park Decl., ¶ 26.)  In short, Mattel has now brought the same

22  discovery issue—whether counter-defendants must respond further to Mattel's

23  previously served interrogatories—before both the Discovery Master and the Court

24  in the hope that at least one judge will find in its favor.

25        Mattel's approach violates the Discovery Master Order, which explicitly

26  provides that "[a]ny and all discovery motions and other discovery disputes in [this]

27  action shall be decided by a master ("Discovery Master") …."  (Docket Item 107

28  (December 6, 2006 Stipulation and Order), ¶ 1.)  In an attempt to "minimize the

1  burden of discovery disputes upon the Court," the Court appointed the Honorable

2  Edward Infante to be the Discovery Master and laid out clear steps for bringing a

3  motion before him.  (*Id.*, ¶¶ 2, 5.)  In addition, the Court granted the parties the right

4  to object or move to modify orders issued by the Discovery Master under Fed. R.

5  Civ. P. 53.  (*See Id.*, ¶ 6 ("The Discovery Master's orders resolving discovery

6  disputes, reports, or recommendations pursuant to Rule 53(e) or (f) shall be treated

7  as rulings made by a Magistrate Judge of the United States District Court.").)  Thus,

8  whether counter-defendants must respond further to Mattel's interrogatories must be

9  decided by the Discovery Master in the first instance.  This Court should only

10  consider the substance of that dispute if and only if a party objects to or seeks

11  modification of the Discovery Master's ruling.

12       That Mattel wants to avoid Judge Infante is not surprising since Judge Infante

13  previously held that other interrogatories served by Mattel exceeded the fifty-

14  interrogatory limit because they were "compound," contained multiple "discrete

15  subparts," and covered "multiple legal theories."  (September 5, 2007 Order at 7-9

16  (granting defendant's joint motion for protective order and denying Mattel's motion

17  to compel interrogatory responses).)  An adverse ruling, however, does not entitle

18  Mattel to circumvent the procedures set forth in the Discovery Master Order or to

19  pursue motions regarding the same issue before both the Discovery Master and the

20  Court.  Accordingly, the Court should deny Mattel's request to compel counter-

21  defendants to respond further to any of its previously served interrogatories.

22

23

24

25

26

27

28

IV.    **CONCLUSION**

For the foregoing reasons, the MGA Defendants respectfully request that the Court deny Mattel's motion for additional discovery in its entirety.

DATED:  December 24, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP


By:  /s/ Thomas J. Nolan
     Thomas J. Nolan

Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.