QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09039
Case No. CV 05-02727

**DISCOVERY MATTER**

**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]**

**REPLY OF MATTEL, INC. IN SUPPORT OF MOTION TO COMPEL DEPOSITION OF LITTLER MENDELSON, P.C. PURSUANT TO SUBPOENA**

[Declaration of Heidi Frahm filed concurrently]

Hearing Date: January 4, 2008
Time: TBA
Place: Telephonic

**Phase 1**
Discovery Cut-off: January 28, 2008
Pre-trial Conference: April 21, 2008
Trial Date: May 27, 2008

**Preliminary Statement**

Mattel should be permitted to depose Littler, and obtain reliable answers to serious questions regarding whether the truth-seeking functions of the Court have been compromised and to avoid surprise at trial about key evidence that Littler has discoverable information about.

Bryant's Opposition fails to meaningfully address the questions surrounding Littler's handling of key evidence in this case, including of centrally relevant Bratz drawings that Judge Larson has express concern may have been compromised by their handling while in Littler's possession. Bryant instead attempts to assume it away. He thus asserts that spoliation has not occurred (and that there is not even a *possibility* that spoliation has occurred) and then argues from that assumption that the deposition must be barred. Of course, the purpose of the discovery sought here—and a purpose of discovery in general—is itself to test the validity of those assertions at a sworn deposition from those who have the facts, i.e. Bryant's prior counsel. Mattel demonstrated in the moving papers that there is ample reason for the deposition here, and Bryant's claims that Mattel and the Court must just take his word for it does not serve to preclude that discovery.

The Opposition does not dispute that the potential spoliation issues are highly relevant to this case. Nor does it contest that Littler is the only party with certain information regarding the evidence at issue, such as when, where and how it collected the Bryant hard drives that the Court compelled and that were the subject of conflicting representations by Littler to the Court and to Mattel. This is reason enough to compel the deposition of Littler Mendelson, even if the out-of-circuit authority cited by Bryant were to be applied here.

## Argument

### I. BRYANT OFFERS NO COGENT SUPPORT FOR APPLYING *SHELTON* TO THE DISCOVERY SOUGHT HERE

Bryant makes a conclusory argument that the Shelton rule applies to former counsel such as Littler because the "harassment of even former counsel disrupts the ordinary litigation process, and is improper." (Opposition at 7.) This argument stretches Sheldon far beyond its reasoning in order to deny Mattel discovery into facts known to Littler. As discussed in Mattel's moving papers, the core purpose of the Shelton test is to protect trial counsel from a deposition that might disclose strategies and otherwise harass and disrupt trial counsel. "The Shelton test was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730 (8th Cir. 2002). The Littler deposition poses no such danger. Indeed, further belying his argument about alleged disruption, Bryant and the other defendants have themselves sought testimony from Mattel's in-house counsel on evidence preservation issues[1]—an effort that is surely closer to Sheldon than deposing former outside counsel such as Littler.

The authorities cited by Bryant, FMC Technologies, Inc. v. Edwards, 2007 WL 836709 (W.D. Wash. 2007), and Mass Mutual Life Ins. Co. v. Cerf, 177 F.R.D. 472 (N.D. Cal. 1998), do not warrant a different conclusion. Neither of these cases offer a sound basis to apply Shelton to bar the deposition of prior counsel and deny Mattel access to critical facts. First, in FMC Technologies, defendants sought to depose *current* counsel about a *former, substantially related case*. There,

---

[1] Declaration of Heidi Frahm, dated December 24, 2007, and filed concurrently herewith ("Frahm Dec."), Exh. 1.

deposing current counsel about substantially related cases would give insight into litigation strategies *current counsel* intended to apply. In applying Shelton, the court explicitly stated that its role was to determine whether the deposition "run[s] afoul of the Shelton policy of protecting opposing counsel's litigation strategy in the instant litigation." Id. at *4. Here, the situation is exactly the reverse. Mattel wishes to depose *former* counsel, who no longer has any litigation strategies to protect. See, e.g., Carey v. Textron, Inc. (E-Z-Go Textron), 224 F.R.D. 530, 532 (D. Mass. 2004) ("Moreover, the fact that Attorney Gelineau no longer represents Carey in this matter reduces the degree [of] interference that any deposition of him would introduce. He, presumably, does not possess information concerning Plaintiff's current litigation strategy.").

Second, in Mass Mutual, the court never considered the question of whether Shelton applied to depositions of former counsel and instead assumed that should be so. 177 F.R.D. at 481-482. Indeed, courts which have actually considered the issue have ruled that Shelton should not apply in those circumstances. See Carey, 224 F.R.D. at 532; Calvin Klein Trademark Trust v. Wachner, 124 F. Supp. 2d 207, 211 (S.D.N.Y. 2000) (noting counsel's role in litigation was "peripheral" and refusing to apply Shelton on that basis). Cf. Nakash v. U.S. Dept. of Justice, 128 F.R.D. 32, 34 (S.D.N.Y. 1989) ("[T]he major rationales in these cases—discouraging the depositions of opposing attorneys in a particular lawsuit to avoid unnecessary expense and interference with the attorney-client relationship—are not applicable here."). Apart from the fact that Mattel will not be questioning Littler on litigation strategy, Littler is not current counsel. Because its purpose and rationale is inapposite to Littler's deposition, the Shelton test should not be applied here.

## II. BRYANT'S RELIANCE ON *SHELTON* IS MISPLACED

### A. Mattel Seeks Relevant And Discoverable Information About the Gathering, Preservation and Destruction of Evidence

Even if Shelton is applied here (and it should not be), the deposition should be compelled. Shelton permits such discovery where (1) the information sought is relevant and non-privileged; (2) the information is crucial to the preparation of the case; and (3) no other means exists to obtain the information at issue than to conduct the deposition.

In contesting whether these factors are satisfied here, Bryant ignores the facts surrounding Littler's conflicting representations and handling of evidence. Instead, he resorts to an inapt argument that Mattel has "attempted to manufacture issues surrounding Bryant's computers, but the important facts are clear and not subject to dispute." (Opposition at 2.)  Bryant's bald assertions that spoliation has not occurred, and thus that there is no basis for a deposition, are unavailing. The "facts" at issue are indeed important, but are heavily contested in this case. The purpose of the deposition is to determine if spoliation has occurred. But even apart from those disputes, the purpose of the deposition is also to avoid surprise as to defendants' handling of key evidence that will be aired at trial.

Bryant does not explain or even address Littler's contradictory statements regarding the drives, nor the fact that Littler—and Littler alone—can provide the necessary factual information to explain when and how the drives were imaged, in whose possession they have been during the various purported disappearances (and reappearances) of this crucial evidence and aspects of how key Bratz drawings were collected handled. Although Bryant understandably wishes to put this sequence of events behind him, Mattel has every reason to investigate the extent to which evidence has been compromised and to avoid being sandbagged at trial by defendants about the control and custody of that evidence.

While Bryant claims that these are "irrelevant" topics, he is mistaken. The spoliation of evidence, including from Bryant's hard drives, is specifically referenced in Mattel's answer and counterclaims.[2] Thus, they are directly at issue in the case as part of Mattel's RICO claims as well as relevant pattern and intent evidence as part of those claims. In compelling the production of Bryant's drives, the Discovery Master also already found the drives to be relevant to this action.[3] Furthermore, Judge Larson found the handling of Bratz drawings to be highly pertinent and, indeed, expressed concern about whether that key evidence had been compromised as a result.[4] Both the Discovery Master and Judge Larson additionally

---

[2] Mattel, Inc.'s Second Amended Answer, at ¶ 93(c) (alleging defendants "did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by . . . destroying electronic and other evidence, including by **destroying evidence previously contained on Carter Bryant's and Isaac Larian's computer hard drives**.") (emphasis added), attached as Exh. 36 to the Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion to Compel Deposition of Littler Mendelson, P.C. Pursuant to Subpoena, dated December 13, 2007 ("Zeller Dec."); see also id. at ¶ 53 (alleging Machado destroyed Mattel hard drive to conceal evidence).

[3] Order of the Discovery Master Hon. Edward Infante (Ret.) dated January 25, 2007 at 17, Zeller Dec., Exh. 11.

[4] Expert Witnesses Order at 11:10-13, Zeller Dec. Exh. 31. Bryant's Opposition contends that Judge Larson found no spoliation occurred with respect to the drawings. (Opposition at 8.) In the passage Bryant relies on, however, the Court merely stated that it was not making a finding "*at this time*" that there was, in fact, spoliation. Id. at 13:16-17 (emphasis added). That is a far cry from exonerating Bryant's conduct and certainly does not foreclose discovery. To the contrary, as is disputed, Judge Larson specifically stated that the handling of these drawings, without Court permission or notice to Mattel, raises "serious questions . . . [which cause] the Court much concern about whether the truth seeking functions of the adversarial system have been fundamentally compromised in this case." Id. at 11:10-13. Indeed, in refusing to provide testimony about the destructive handling of these very drawings. MGA made an almost identical argument that Bryant asserts here about Judge Larson's prior ruling to both the Discovery Master and to Judge
   (footnote continued)

have held that the facts surrounding the handling of those drawings is relevant and discoverable.[5]

Bryant claims that information regarding Littler's handling of critical evidence, and the integrity of that evidence in the form of the imaged drives provided to Mattel, cannot be crucial to Mattel's case because spoliation never occurred. (Opposition at 12.) That argument assumes the conclusion and begs the question the Littler deposition is designed to answer: namely, when and how the drives were collected and imaged, and the extent to which they have been protected and did not have data deleted. He likewise claims that "Littler produced to Mattel all responsive documents and information contained on that [Desktop] computer, and even provided to Mattel the complete image of its hard drive." (Opposition at 2.) Even apart from the fact that Littler had made similar representations to the Court that were later revealed to be erroneous, the very purpose of the deposition is to determine when and under what factual circumstances the images were made. For this same reason, Bryant's assumption that Littler may as well have "tossed both computers off a bridge" merely because images of the drives exist is wholly misplaced. (Opposition at 12.) Of course, that Bryant would deem even such a scenario irrelevant only serves to confirm the groundlessness of his position here. In

---

Larson. MGA lost both times. MGA Entertainment Inc.'s Opposition to Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(B)(6) and for Sanctions, dated April 30, 2007, attached as Exhibit 1 to the Declaration of B. Dylan Proctor In Support Of Mattel, Inc.'s Opposition to Carter Bryant's Motion to Quash Mattel's Deposition Subpoena to Littler Mendelson, P.C., dated December 19, 2007 ("Proctor Dec."); Order Granting Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6), dated May 16, 2007, Proctor Dec., Exh. 2; Minute Order dated July 5, 2007, at 4-5, Frahm Dec., Exh. 5.

[5] Order Granting Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6), dated May 16, 2007, Proctor Dec., Exh. 2; Minute Order dated July 5, 2007, at 4-5, Frahm Dec., Exh. 5.

any event, it is the very authenticity and integrity of these images that Mattel seeks to find out in deposition and that Mattel is entitled to know.

**B. The Alternative Sources Bryant Cites Do Not Provide the Information Mattel Seeks**

Littler unquestionably has pertinent, unique knowledge of relevant, even crucial, matters in this case. Littler's own frequent and contradictory statements to Mattel and to the Court themselves establish the point. In pleadings filed with the Court, declarations signed under penalty of perjury, and letters to Mattel's counsel, Bryant and his counsel at first claimed they only hard drive they had retrieved was the Desktop, which they also claimed had been "tirelessly" and "extensively" inspected that drive but contained no relevant documents.[6] Since then, however, Bryant and Littler's story changed several times: first claiming they only had the Desktop, then revealing that had been in possession of another critical hard drive all along, only to then claim that they no longer had the Desktop drive and that their earlier representations about having retrieved the Desktop drive and inspected it were apparently "wrong."[7] Then, when faced with a motion to enforce the Court's original Order compelling the production of Bryant's drives, Littler announced that the Desktop drive had been suddenly recovered and belatedly made it available for inspection by Mattel.[8]

---

[6] Joint Stipulation at 62:2-13, 18-20, Zeller Dec., Exh. 5; 2005 Jacoby Dec. at ¶¶ 23, 24, Zeller Dec., Exh. 6.

[7] Letter dated April 6, 2007 from Michael Zeller to Douglas Wickham, Zeller Dec., Exh. 21; Zeller Dec. ¶ 25.

[8] Letter dated April 23, 2007, from Keith A. Jacoby to Michael Zeller. Zeller Dec., Exh. 24.

Given the questions Mattel seeks to ask, no other witness could have the same information. Littler arranged for and oversaw the imaging of the drives. Only Littler can explain what drives it collected, when it collected them and how they were maintained and imaged. Only Littler can state how the Desktop drive was temporarily "lost" and whether it ever left its possession. Only Littler can explain the factual bases of its inconsistent statements to Mattel and to the Court regarding its gathering, review, and production of those drives. Questions about the collection, storage, handling and imaging of these drives, and whether or not Littler turned over all of the drives it found, are sorely necessary here, and only Littler can provide answers to them.

Bryant's Opposition claims that Mattel has obtained much of the information it needs from Richard Irmen and Brooke Gilbert and can gather the rest at a future deposition of Carter Bryant. (Opposition at 8.) Those transcripts only serve to confirm that only Littler knows what it has done with respect to the hard drives while they were in its possession. For example, Richard Irmen repeatedly stated that he had no information regarding where the drives were taken once imaged[9] and that Bryant may have been out of town at the time.[10] Even on the one topic Bryant cites this deposition testimony for—installation and use of "Evidence Eliminator"—the transcripts demonstrate that the witnesses could not provide the necessary information. Richard Irmen testified that he was "computer illiterate" and could not say whether any data was deleted after April 2004 using the Evidence Eliminator program.[11] Brooke Gilbert testified that she knows nothing at all regarding installation of Evidence Eliminator and indeed, had never even heard of

---

[9] Deposition of Richard Irmen at 300:15-301:5; 302:18-22, Proctor Dec., Exh. 3.
[10] Id. at 300:4-8.
[11] Id. at 307:22-308:8.

it.[12]  Nor did she have information regarding facts about the collection, handling and imaging of the drives that Littler has.

It is also no answer to say that Littler purportedly lacks some types of direct information about the "Evidence Eliminator" programs that were installed and used on Bryant's hard drives.  In fact, it is a red herring.  If Littler never operated the installed "Evidence Eliminator" program on the drives, then its obvious recourse is to so say under oath at a deposition, not to obstruct discovery altogether, including as to unique, discoverable information it unquestionably has about the drives.  Rather, what is material is that Littler indisputably has information about the collection, handling and imaging of those drives.  Mattel's point is simply that such facts *about the drives* that are known to Littler—even standing alone—are directly material *because* the drives not only were in use by Bryant during a critical time period, but also bear indicia of having been spoliated.  If Bryant has engaged in spoliation, that fact would be material at trial.  See, e.g., Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993); Leon v. IDX Systems Corp., 464 F.3d 951, 961 (9th Cir. 2006) (affirming dismissal of action for deletion of files from computer hard drive); Kucala Enterprises, Ltd. v. Auto Wax Co., Inc., 2003 WL 21230605, *6 (N.D. Ill. 2003) (dismissing action for use of Evidence Eliminator software to delete computer files).[13]  In addition, it is germane to Mattel's RICO claims and indeed is specifically

---

[12]  Deposition of Brooke Gilbert at 34:7-18, Proctor Dec., Exh. 4.

[13]  Bryant equally goes astray in attempting to argue that there are legitimate security and privacy uses for the "Evidence Eliminator" software.  (Opposition at 3.)  Even apart from the program's name itself, there is abundant evidence—and indeed are Court decisions—establishing that the program was created for and is marketed as an evidence destruction tool.  To cite only a few examples, the "Reasons To Buy" page on the "Evidence Eliminator" website provides nothing but descriptions of various prisons throughout the United States.  Frahm Dec., Exhibit 2.  Its home page touts the progam's ability to defeat forensic recovery techniques.  Zeller Dec., Exh. 27.  Similar statements are also repeated in the "help" file from the "Evidence Eliminator" program found on Bryant's own drives.  Frahm Dec., Exhibit 3.
    (footnote continued)

alleged as predicate acts.[14]  In either case, information regarding spoliation would be crucial to Mattel's case, and Bryant cannot plausibly argue otherwise.

Littler also has knowledge about the destructive handling and sampling of the Bratz drawings.  Carter Bryant himself testified that he had no information regarding the destructive sampling of the Bratz drawings and had no idea why there were holes in his drawings.[15]  Ignoring this, Bryant argues that Mattel has no further need to inquire into the handling of the drawings because Erich Speckin submitted a declaration purportedly detailing what he had done to the drawings.  That is unavailing.  Not only did Judge Larson note the questions the declaration itself leaves open,[16] but the declaration nowhere addresses basic facts regarding the collection of the drawings in the first place or the handling of the drawings before or after Speckin had them and while they were in Littler's possession.  And, both the Discovery Master and Judge Larson rejected MGA's largely similar argument that

---

Similarly, though Bryant cites Mr. Irmen's testimony on the functions of Evidence Eliminator, Mr. Irmen admitted that his sole knowledge on the issue is what he heard from Carter Bryant.  Irmen Deposition at 288:21-289:7, Frahm Dec., Exh. 2.  Thus, Bryant's *ipse dixit* does not foreclose discovery into the drives or the installation and use of "Evidence Eliminator" on them, let alone inquiry into the issues regarding the drives' collection, handling and imaging.  To the contrary, by making such arguments here, Bryant merely proves Mattel's point that Bryant's spoliation of evidence is indeed the subject of dispute.

[14]  Mattel, Inc.'s Second Amended Answer, at ¶ 93(c), Zeller Dec., Exh. 36.
[15]  Bryant Deposition at 460:2-16, Zeller Dec., Exh. 3.
[16]  E.g., Expert Witness Order at 12:1-5, Zeller Dec., Exh. 31 ("The continued existence of the 'exact same pen stroke' is the very issue that is now left open because of the holes in some of Bryant's original BRATZ design drawings.  Is there anything left of that exact same pen stroke that was sampled by Mr. Speckin remaining on the original drawings for Mattel to test?  None of these questions have been addressed by MGA, Bryant, or Mr. Speckin in their papers.").

the Speckin declaration served to foreclose discovery into the facts regarding the handling of these drawings.[17]

Finally, although Mattel attempted to obtain the facts through the use of a document subpoena on Littler, no responsive documents have been produced. That wholesale absence is itself fair game for questioning, since it is highly doubtful that there is *no* record whatsoever relating to the collection, handling, transport and imaging of the evidence at issue. Furthermore, as explained in Mattel's Motion to compel, by its nature, investigation of spoliation requires the ability to ask follow-up questions to ferret out the truth, something that interrogatories or other written discovery cannot offer.

In sum, Mattel submits respectfully that even were the Shelton test applied, Mattel has satisfied that test for purposes of taking Littler's deposition.

**C. Privilege Does Not Justify Littler's Refusals To Provide Discovery**

Bryant asserts that the information Mattel seeks is privileged. (Opposition at 10.) This overstates both the boundaries of the privilege and the nature of the information sought by Mattel, i.e., facts regarding the gathering and preservation of evidence. Such factual information is not protected, let alone on the blanket basis Bryant surmises.

Bryant cites Shelton—and no other case—for the claim that information regarding the handling of evidence is privileged because an attorney's knowledge of such evidence implicates her professional judgment in preparing the case. (Opposition at 10-11.) Those concerns are not at issue here. The Shelton court noted that the attorney being deposed had memories regarding specific

[17] Order Granting Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6), dated May 16, 2007, Proctor Dec., Exh. 2; Minute Order dated July 5, 2007, at 4-5, Frahm Dec., Exh. 5.

documents, but not others. She only had information regarding certain documents because she had reviewed them in preparing her client's case." In these circumstances Burns' recollection of the documents concerning a certain subject will be limited to those documents she has selected as significant and important with respect to her legal theories." Shelton v. Amer. Motors Corp., 805 F.2d 1323, 1328 (8th Cir. 1986).

In clear contrast here, Mattel seeks facts regarding the *handling* of evidence Mattel submits—and the Court has found more than once—is relevant and even crucial. The distinction is an important one. Courts have found that questions regarding the existence, preservation, and/or handling of documents—rather than which ones an attorney believes are important—do not invade the work product doctrine. See, e.g., Carey v. Textron, Inc. (E-Z-Go Textron), 224 F.R.D. 530, 531 (D. Mass. 2004) (holding that party was "entitled to discover the condition of the [piece of evidence], efforts to preserve it and how it was eventually lost," and finding that this did not infringe on work product); Riddell Sports Inc. v. Brooks, 158 F.R.D. 555, 559 (S.D.N.Y. 1994) ("[T]he collection of evidence, without any creative or analytic input by an attorney or his agent, does not qualify as work product."); In re Grand Jury Subpoenas dated March 9, 2001, 179 F. Supp. 2d 270, 284 (S.D.N.Y. 2001) (same); In re Automotive Refinishing Paint Antitrust Litigation, 2006 WL 1479819, *7 (E.D. Pa. 2006) (permitting discovery regarding existence of evidence; "Defendants just want to know whether Plaintiffs possess any such documents at all. They are merely seeking to uncover the factual basis for Plaintiffs' claims—the central purpose of discovery.").

Similarly, Judge Larson has already determined that factual information concerning evidence preservation is not privileged when he ordered all parties to

submit affidavits setting forth those facts in detail.[18] Questioning Littler about facts regarding the mere existence, handling, or preservation of evidence by its nature does not invade the work product doctrine. Further, to the extent Bryant has legitimate basis to assert privilege or work product to questions while at the deposition, that is no reason to preclude *all* questioning. Instead, such issues can and should be considered on a question-by-question basis, with Bryant asserting instructions during the course of the deposition according to the usual rule.[19] Indeed, MGA raised similar privilege arguments when Mattel sought MGA's testimony on its Rule 30(b)(6) Topic related to the destructive testing of the Bratz drawings on Mattel's motion to compel depositions pursuant to 30(b)(6),[20] and they were rejected by both the Discovery Master and Judge Larson.[21]

---

[18] See Order Denying Motion For Terminating Sanctions; Order Denying Request For Interlocutory Appeal; Order Requiring Filing Of Affidavits Re Evidence Preservation, dated August 29, 2007, Zeller Dec., Exh. 37.

[19] E.g., Nash v. Waddington, 2006 WL 1207903, at *1 (W.D. Wash. 2006) ("While the attorney-client privilege may certainly be a proper objection to certain discovery questions, the court is not persuaded that the privilege may be used as a blanket refusal to any discovery."); Nakash v. U.S. Dept. of Justice, 128 F.R.D. 32, 34 (S.D.N.Y. 1989) ("If they do [ask questions on privileged topics], movants may make appropriate objections at that time . . . The mere possibility that such issues may arise does not merit the drastic relief of quashing these subpoenas before a single question has been asked."); Green v. Baca, 226 F.R.D. 624, 652 (C.D. Cal. 2005) ("Like his claim of attorney-client privilege, defendant's blanket invocation of the work product doctrine is not a sufficient basis to exclude Bobb's testimony in its entirety.").

[20] MGA Entertainment Inc.'s Opposition to Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(B)(6) and for Sanctions, dated April 30, 2007, Proctor Dec., Exh. 1

[21] Order Granting Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6), dated May 16, 2007, Proctor Dec., Exh. 2.

## **Conclusion**

For the foregoing reasons, Mattel respectfully requests that its motion to compel be granted.

DATED: December 24, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ James J. Webster
James J. Webster
Attorneys for Mattel, Inc.