1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
      Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                      EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12          Plaintiff, | Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| 13      vs. | **DISCOVERY MATTER** |
| 14  MATTEL, INC., a Delaware | **[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]** |
| 15  corporation, | |
| 16          Defendant. | MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL REGARDING MATTEL'S PRIVILEGE WAIVER BY CLAIM ASSERTION |
| 17 | |
| 18  AND CONSOLIDATED ACTIONS | [Declaration of B. Dylan Proctor filed Concurrently] |
| 19 | |
| 20 | Date:    January 3, 2008 |
| 21 | Time:    1:30 p.m. Place:   JAMS |
| 22 | Two Embarcadero Center Suite 1500 |
| 23 | San Francisco, California |
| 24 | **Phase 1** Discovery Cut-Off:    January 28, 2008 |
| 25 | Pre-Trial Conference: May 5, 2008 Trial Date:    May 27, 2008 |
| 26 | |
| 27 | |
| 28 | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ............................................................................................ 2

I.   MGA FAILS TO IDENTIFY SPECIFIC DISCOVERY REQUESTS AS TO WHICH IT SEEKS AN ORDER COMPELLING DISCOVERY ................................................................................ 2

II.  THE DISCOVERY MASTER HAS ALREADY RULED THAT THE ONLY CATEGORY OF DOCUMENTS MGA IDENTIFIES ARE PRIVILEGED ................................................................................. 4

III. MATTEL HAS NOT IMPLIEDLY WAIVED THE ATTORNEY-CLIENT PRIVILEGE ............................................................... 7

    A.   Mattel Has Not Affirmatively Put Privileged Information At Issue ........................................................................................ 8

    B.   Application of the Privilege Would Not Deny MGA Access to Information Vital to Its Defense ............................................. 12

IV.  IF THERE HAD BEEN AN IMPLIED WAIVER, THE SCOPE WOULD BE LIMITED ................................................................. 16

CONCLUSION ........................................................................................ 18

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4

5
*Beverly Health & Rehabilitation Services, Inc.*,
2006 WL 3593472 (E.D. Cal. 2006) ............................................................ 7

6
*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) ............................................................ 9, 16

7

8
*Bordallo v. Reyes*,
763 F.2d 1098 (9th Cir. 1985) ............................................................ 5

9
*Chamberlain Group v. Interlogix, Inc.*,
2002 WL 467153 (N.D. Ill. 2002) ............................................................ 8

10

11
*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ............................................................ 8

12
*Garamendi v. SDI Vendome S.A.*,
276 F. Supp. 2d 1030 (C.D. Cal. 2003) ............................................................ 17

13

14
*Estate of Gonzalez v. Hickman*,
2007 WL 3238725 (C.D. Cal. 2007) ............................................................ 3

15
*Hearn v. Rhay*,
68 F.R.D. 574 (E.D. Wash. 1975) ............................................................ 7, 10, 11, 12

16

17
*Hobson v. Wilson*,
737 F.2d 1 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084 (1985) ............................ 17

18
*Holmgren v. State Farm Mutual Automobile Ins. Co.*,
976 F.2d 573 (9th Cir. 1992) ............................................................ 9

19

20
*Home Indemnity Co. v. Lane Powell Moss and Miller*,
43 F.3d 1322 (9th Cir. 1995) ............................................................ 9, 12, 13

21
*In re Imperial Corp. of Am.*,
179 F.R.D. 286 (S.D. Cal. 1998) ............................................................ 11

22

23
*In re Intuit Privacy Litigation*,
138 F. Supp. 2d 1272 (C.D. Cal. 2001) ............................................................ 7

24
*Moreno v. Harrison*,
2006 WL 2411421 (N.D. Cal. 2006) ............................................................ 10

25

26
*Motorola, Inc. v. J.B. Rodgers Mechanical Contractors*,
215 F.R.D. 581 (D. Ariz. 2003) ............................................................ 6

27
*Novell, Inc. v. Unicom Sales, Inc.*,
2004 WL 1839117 (N.D. Cal. 2004) ............................................................ 17

28

*Rambus Inc. v. Samsung Electronics Co., Ltd.*,
   2007 WL 3444376 (N.D. Cal. Nov. 13, 2007)......................................................10

*Reavis v. Metropolitan Property & Liability Ins. Co.*,
   117 F.R.D. 160 (S.D. Cal. 1987)..........................................................................9

*Roley v. New World Pictures, Ltd.*,
   19 F.3d 479 (9th Cir. 1994)............................................................................12, 17

*Titan Corp. v. M/A-Com, Inc.*,
   1994 WL 16001739 (S.D. Cal. 1994) ..................................................................11

*U.S. ex. rel. O'Connell v. Chapman University*,
   245 F.R.D. 646 (C.D. Cal. 2007) ..........................................................................3

*U.S. v. Amlani*,
   169 F.3d 1189 (9th Cir. 1999)........................................................................7, 8, 9

*Watanabe v. Home Depot USA, Inc.*,
   2003 WL 24272634 (C.D. Cal. 2003)...................................................................6

*Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc.*,
   106 F.3d 894 (9th Cir. 1997)................................................................................17

*Wood v. Midland Credit Management, Inc.*,
   2005 WL 3159637 (C.D. Cal. 2005) .....................................................................6

## **Miscellaneous**

Local Rule 7-18 ...............................................................................................................6

Local Rule 37-2.1 ...........................................................................................................3

Epstein, The Attorney Client Privilege and the Work Product Doctrine (5th ed.
   2007)....................................................................................................................10

07209/2335360.2

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA seeks exceptional relief -- a finding that Mattel has impliedly waived the protections of the attorney-client privilege and work product doctrine. Strikingly absent from the moving papers, however, is any indication of what specific communications are the subject of its motion. MGA merely demands that Mattel supplement unidentified "discovery responses." During the pre-filing meet and confer, Mattel invited MGA to identify particular documents, communications or responses at issue to enable the Discovery Master to decide this motion in context. MGA refused. Discovery motions must be directed to specific discovery requests or items of information. This motion is not, and should denied for that reason alone.

Although MGA's motion does not refer to specific discovery requests, it does make general reference to certain investigations undertaken by Mattel in 2002. To the extent the motion seeks production of privileged documents related to those investigations, it is a repeat of a motion that MGA made on April 10, 2007. At that time, the Discovery Master ruled the documents were privileged and that the privilege had not been waived. MGA did not move to reconsider that ruling and here fails to make any of the requisite showings to justify reconsideration. Indeed, MGA simply ignores the Discovery Master's prior ruling all together.

In all events, there has been no waiver. Under Ninth Circuit law, waiver requires that a party affirmatively place its privileged communications at issue. The Ninth Circuit has found implied waiver *only* where a party (1) relies on privileged information in support of its claims or defenses, or (2) asserts a claim or defense for which the *only* possible evidence available to assess the truthfulness of the claim or defense is privileged information. Neither is true here. Mattel does not rely on privileged information in support of its fraudulent concealment allegations, and substantial non-privileged information exists -- and has been produced -- to

-1-

1  assess those allegations.  Neither the Ninth Circuit nor any other Court of Appeals

2  decision cited by MGA has ever held the privilege to be waived in such

3  circumstances.

4         The one unpublished district court opinion MGA principally relies on is

5  inconsistent with Ninth Circuit law.  Under MGA's overbroad interpretation of

6  implied waiver, the privilege is waived any time a party asserts fraudulent

7  concealment -- or, in fact, any time state of mind is at issue in any way -- simply

8  because privileged information may be probative of what a party knew.  That is not

9  the law in the Ninth Circuit.  That privileged communications may be relevant -- the

10 most MGA attempts to show here -- is insufficient to support a waiver.

11        Further, MGA cannot show that application of the privilege would deny

12 it information critical to its defenses as is required for a finding of implied waiver.

13 In fact, Mattel has produced substantial information -- including responses to

14 interrogatories, documents and testimony -- related to MGA's laches and statute of

15 limitations defenses.  Mattel has not shielded the facts of when and how it learned

16 that Bryant worked for MGA while he was employed by Mattel.

17        MGA's motion should be denied.

18

19                    **Argument**

20 I.   **MGA FAILS TO IDENTIFY SPECIFIC DISCOVERY REQUESTS AS**

21       **TO WHICH IT SEEKS AN ORDER COMPELLING DISCOVERY**

22        Claiming that Mattel has waived the attorney-client and work product

23 privileges, MGA seeks a generalized order "compelling that Mattel supplement its

24 discovery responses and document productions accordingly."[1]  But MGA never

25 identifies any particular information or discovery that is to be compelled.  During

26 the parties' meet and confer, Mattel invited MGA to identify documents or other

27

28   [1]   MGA's Notice of Motion.

1  discovery that MGA believed should be provided so that Mattel, and the Discovery
2  Master, could address the issues with the benefit of context, and not in a vacuum.[2]
3  MGA declined to do so.[3]  MGA's moving papers still fail to do so.

4        The <u>Local Rules</u> mandate that all discovery motions be supported by a
5  document setting forth either the specific requests or the specific question, and any
6  specific objections, so that the Court will have both precision and context for its
7  rulings. <u>Local Rule</u> 37-2.1; <u>U.S. ex. rel. O'Connell v. Chapman University</u>, 245
8  F.R.D. 646, 648 (C.D. Cal. 2007) (entering order to show cause for failure to
9  comply with <u>Local Rule</u> 37-2.1); <u>Estate of Gonzalez v. Hickman</u>, 2007 WL
10  3238725, at *2 (C.D. Cal. 2007) (refusing to hear motion because of party's failure
11  to comply with <u>Local Rule</u> 37-2.1).  MGA's motion utterly fails to do this.[4]

12        MGA provides no basis upon which to seek an order compelling further
13  responses to discovery "in general," rather than as to specific discovery requests.  A
14  motion seeking an order compelling "further responses" to unspecified discovery
15  requests does not give fair notice.  The Discovery Master has consistently rejected
16  the parties' request that he lay down general discovery guidelines not tied to specific
17  discovery requests.[5]  MGA's request for vague discovery rulings without
18  identification of the specific discovery requests or information at issue should
19  likewise be rejected here.

20
21
22
23

_____

24  [2]  Declaration of B. Dylan Proctor, dated December 27, 2007, and filed
concurrently herewith ("Proctor Dec."), ¶ 12.
25  [3]  <u>Id.</u>
26  [4]  For example, MGA has failed to challenge or otherwise identify any specific
privilege log entries or instructions not to answer that it claims are at issue.
27  [5]  <u>See, e.g.</u>, Transcript of June 19, 2007 Hearing, at pp. 17-18 (refusing to hear
matters regarding depositions not before the Discovery Master), Proctor Dec., Exh.
28  4; Transcript of May 4, 2007 Hearing, at pp. 12-13 (same), Proctor Dec., Exh. 5.

## II.   THE DISCOVERY MASTER HAS ALREADY RULED THAT THE ONLY CATEGORY OF DOCUMENTS MGA IDENTIFIES ARE PRIVILEGED

The Discovery Master has already held that the only category of documents MGA identifies even generally in its motion -- and in any event would be swept within the Order MGA now seeks -- are privileged.  MGA's claim that Mattel has waived the privilege as to those documents is contrary to that decision, and it is not entitled to another bite at the apple.

On April 10, 2007, MGA and Bryant filed a motion to compel documents from Mattel's global security files that Mattel withheld on privilege grounds.[6]  In particular, MGA sought an Order compelling the production of documents related to the same Mattel inquiries (the Spring 2002 investigation regarding potential copyright infringement of "Toon Teens" and the August 2002 investigation regarding the anonymous letter) that MGA references in the present motion.[7]  As here, MGA and Bryant had argued on the motion to compel that Mattel should be compelled to produce such documents, claiming Mattel had failed to produce documents reflecting "any findings by any Mattel employee or agent as to when Mattel first learned or what Mattel first knew concerning Mr. Bryant's involvement with MGA or the Bratz line of dolls."[8]  MGA and Bryant also argued, as they do here again, that this information was "highly relevant and strongly support[s] [their] defenses based on laches and the statute of limitations."[9]

---

[6]   MGA and Bryant's Joint Motion to (1) Compel Production of Certain Documents Withheld Under Claim of Privilege, (2) Attest to the Completeness of Its February 2007 Production of March 2002 Investigation Documents, and (3) De-Designate Attorney's Eyes Only Documents, dated April 10, 2007, Proctor Dec., Exh. 1.

[7]   Id. at p. 1.

[8]   Id. at p. 2.

[9]   Id. at pp 1-2.

-4-

1   On May 15, 2007, the Discovery Master entered an Order denying

2   MGA's and Bryant's request that Mattel "certify that it has produced 'all responsive

3   documents concerning its investigations of Carter Bryant, MGA and/or the origins

4   of Bratz.'"[10]   On July 10, 2007, after an *in camera* review of the Mattel documents at

5   issue, the Discovery Master upheld Mattel's privilege claims as to nearly all the

6   documents withheld.[11]   In so holding, the Discovery Master noted that a necessary

7   element of the attorney-client privilege is that the privilege not have been waived.[12]

8   The Discovery Master therefore necessarily decided that Mattel has not waived the

9   privilege as to the documents at issue.

10   MGA seeks to alter the Discovery Master's July 10, 2007 Order by now

11   moving, yet again, to compel the production of the same documents (including those

12   relating to "Toon Teens" and the anonymous letter) that were the subject of that

13   Order and that the Discovery Master found were privileged.[13]   This is thus, in

14   reality, a motion for reconsideration because it seeks to alter the Discovery Master's

15   prior Order.  Whatever name a movant puts on a motion, "nomenclature is not

16   controlling . . . .  A court must construe whether a motion, however styled, is

17   appropriate for the relief requested."  Bordallo v. Reyes, 763 F.2d 1098, 1101-02

18   (9th Cir. 1985) (finding that "motion for clarification" actually was such a motion

19

20   [10]   Order Granting MGA and Bryant's Motion to Compel Production of Certain
     Documents Withheld Under Claims of Privilege for In Camera Review, and
21   Denying Motion to Attest to the Completeness of February 2007 Production, dated
22   May 15, 2007, Proctor Dec., Exh. 2.
     [11]   Order Re In Camera Review of Global Security Files, dated July 10, 2007,
23   Proctor Dec., Exh. 3.
24   [12]   The Discovery Master cited the elements of the privilege as follows: "(1)
     When legal advice of any kind is sought (2) from a professional legal adviser in his
25   or her capacity as such, (3) the communications related to that purpose, (4) made in
26   confidence (5) by the client, (6) are, at the client's instance, permanently protected
     (7) from disclosure by the client or by the legal adviser (8) *unless the protection be*
27   *waived*."  Id. at p. 2 (emphasis added).
28   [13]   MGA's Motion, at pp. 8-11.

1    because it only invited interpretation of the judgment, and did not seek to alter or

2    amend the judgment).  Here, by seeking to compel production of the same

3    documents allegedly not protected by privilege that the Discovery Master already

4    declined to order produced because they are privileged, MGA's motion seeks

5    reconsideration.

6          MGA provides no basis for that decision to be reconsidered.  There

7    does not exist, nor does MGA contend that there exists, "any material difference in

8    fact or law from that presented" to the Discovery Master "that in the exercise of

9    reasonable diligence could not have been known to [MGA] at the time of [the

10    Order]."  See Local Rule 7-18(a).  There also has not been, nor does MGA contend

11    there has been, an "emergence of new material facts or change of law occurring after

12    the time" the Order was entered.  See Local Rule 7-18(b).  Finally, MGA has not

13    demonstrated "a manifest showing of a failure to consider material facts" presented

14    to the Discovery Master before his decision, nor even suggested there was such a

15    failure.  See Local Rule 7-18(c).  To the contrary, far from making any of these

16    necessary showings, MGA omits any reference to the Discovery Master's decision.

17    MGA's failure to raise its purported implied waiver arguments in its prior motion

18    and its present failure to identify new facts or law bars its motion as to the

19    investigation files.[14]  MGA's motion should be denied for that reason alone.[15]

20

21    [14]   See, e.g., Wood v. Midland Credit Management, Inc., 2005 WL 3159637, at

22    *1 (C.D. Cal. 2005) (denying motion to reconsider under Local Rule 7-18 because it "is not based no new facts, new law, or a failure of the Court to consider material

23    facts"); Watanabe v. Home Depot USA, Inc., 2003 WL 24272634, at *2 (C.D. Cal. 2003) (same, where "Defendant does not raise any new evidence or show that this

24    Court failed to consider evidence presented to it in Plaintiff's original Motion");

25    Motorola, Inc. v. J.B. Rodgers Mechanical Contractors, 215 F.R.D. 581, 586 (D. Ariz. 2003) (denying motion to reconsider under Central District standards (Local

26    Rule 7-18) because "Plaintiffs have not shown material differences in fact or law that were not and could not have been presented to the Court prior to its decision.

27    Nor do Plaintiffs allege new facts, an intervening change in the law, or that the

28    Court failed to consider facts that were before it.").

## III.   MATTEL HAS NOT IMPLIEDLY WAIVED THE ATTORNEY-CLIENT PRIVILEGE

MGA's motion also lacks merits and is contrary to Ninth Circuit law. As MGA acknowledges, the Ninth Circuit has adopted the three-pronged test for implied waiver that was first outlined in Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975): "First, the court considers whether the party is asserting the privilege as the result of some affirmative act, such as filing suit. Second, the court examines whether 'through this affirmative act, the asserting party puts the privileged information at issue. Finally, the court evaluates whether allowing the privilege would deny the opposing party access to information vital to its defense." U.S. v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (citations and internal quotation marks omitted).

Contrary to MGA's suggestions, however, these factors do not aid its case here because the second and third prongs are not satisfied. The only affirmative act MGA claims satisfies the first prong of the test is Mattel's pleading fraudulent concealment to toll the statute of limitations.[16] But pleading fraudulent concealment does not place privileged information at issue. Moreover, application of the privilege does not deny MGA access to information vital to its defense

---

[15]   Having failed in its moving papers to make any argument or factual showing on this issue, and having also failed to specify what discovery requests it is actually moving on with the required particularity, it would be improper for MGA to attempt to do so in its reply. See, e.g., Beverly Health & Rehabilitation Services, Inc., 2006 WL 3593472, at *7 (E.D. Cal. 2006) ("It is well established in this circuit that courts typically do not consider arguments raised for the first time in a reply brief, as doing so may unfairly deprive [the other party] of its opportunity to make a meaningful response."). Indeed, Judge Larson previously noted its impropriety when one of the MGA defendants had engaged in such a tactic before him. Order re Motions Heard on June 11, 2007, at 31, n. 7 (citing and quoting In re Intuit Privacy Litigation, 138 F. Supp. 2d 1272, 1275 n.3 (C.D. Cal. 2001) ("this court does not consider arguments raised anew for the first time in a reply brief as to do so would unfairly deny the non-moving party an opportunity to respond."), Proctor Dec., Exh. 9.

1  because Mattel has already produced the underlying evidence related to MGA's

2  defenses.

3

4  **A.    Mattel Has Not Affirmatively Put Privileged Communications At**

5  **Issue**

6          MGA argues that attorney-client communications regarding what

7  Mattel "knew or had reason to suspect prior to November 2003" are "*relevant* to the

8  determination of . . . MGA's statute of limitations and laches defense."[17]  Therefore,

9  MGA concludes, "fairness requires that [MGA] be given access to those

10  communications to dispute Mattel's allegations."[18]

11          Contrary to MGA's premise, *relevance* is not the standard for waiver of

12  the attorney client privilege.  See U.S. v. Amlani, 169 F.3d 1189, 1195 (9th Cir.

13  1999) ("[p]rivileged communications do not become discoverable simply because

14  they are related to issues raised in the litigation"); Chamberlain Group v. Interlogix,

15  Inc., 2002 WL 467153, at *2 (N.D. Ill. 2002) (finding no waiver where defendant

16  asserted statute of limitations defense despite fact that communications with

17  attorney were "relevant" to defense).  Rather, waiver requires that a party

18  *affirmatively put at issue* privileged information in support of its claim or defense.

19          The Ninth Circuit has only found that a party affirmatively put at issue

20  privileged information in two situations: (1) when a party *relies on privileged*

21  *communications* or work product in support of its claims or defenses, see, e.g.,

22  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156 (9th Cir. 1992) (finding implied

23  waiver where defendant asserted an advice of counsel defense); and (2) when the

24  *only* evidence available to assess a party's claim or defense consists of attorney-

25  client communications or work product.  See, e.g., Amlani, 169 F.3d at 1191

26  _____

27  [16]  MGA's Motion, at p. 16.
    [17]  MGA's Motion, at p. 1 (emphasis added).
28  [18]  Id.

1  (finding implied waiver where the only evidence of an essential element of

2  plaintiff's attorney disparagement claim -- the reason the plaintiff fired his attorney -

3  - was privileged communications); <u>Holmgren v. State Farm Mutual Automobile Ins.</u>

4  <u>Co.</u>, 976 F.2d 573, 577 (9th Cir. 1992) (finding implied waiver of attorney work

5  product regarding an insurer's counsel's handling of a claim in a cause of action for

6  bad faith claim settlement practices because "[i]n a bad faith insurance claim

7  settlement case, the 'strategy, mental impressions and opinion of [the insurer's]

8  agents concerning the handling of the claim are directly at issue.'") (quoting <u>Reavis</u>

9  <u>v. Metropolitan Property & Liability Ins. Co.</u>, 117 F.R.D. 160, 164 (S.D. Cal.

10  1987)).[19]

11         Neither situation is present here.  MGA does not and cannot point to

12  any privileged information that Mattel relies on in support of its allegations of

13  fraudulent concealment.  Mattel has not relied on privileged information.  And the

14  evidence related to Mattel's fraudulent concealment allegations is not solely

15  privileged information.  To the contrary, substantial non-privileged evidence bearing

16  on these allegations exists and has been produced to MGA.  That stands in contrast

17  to the situation presented in <u>Amlani</u>.  In <u>Amlani</u>, the Court only found waiver after

18  concluding that non-privileged sources of evidence related to plaintiff's attorney

19  disparagement claim "would be of little, if any, value." <u>Amlani</u>, 169 F.3d at 1196

20  (finding that the only evidence available to establish why plaintiff terminated his

21  attorney -- a fact essential to plaintiff's attorney disparagement claim -- was

22  plaintiff's communications with his attorneys).

23

24

---

25  [19]  In the other Ninth Circuit implied waiver cases cited by MGA, the Ninth Circuit *declined* to find implied waiver.  <u>See, e.g.</u>, <u>Bittaker v. Woodford</u>, 331 F.3d

26  715 (9th Cir. 2003) (discussing, but declining to find, implied waiver in the context

27  of a claim of ineffective assistance of counsel); <u>Home Indemnity Co. v. Lane Powell</u> <u>Moss and Miller</u>, 43 F.3d 1322 (9th Cir. 1995) (discussing, but declining to find,

28  implied waiver in the context of a claim of legal malpractice).

1    Instead of showing reliance on privileged communications or that the

2    only evidence is privileged, as the law requires, MGA argues that simply alleging

3    fraudulent concealment necessarily waives the privilege because any time a party

4    alleges fraudulent concealment, what its attorneys knew and when they knew it is

5    relevant.[20]  Such a rule is contrary to Ninth Circuit law regarding implied waiver.  If

6    MGA's position were accepted, the privilege would be waived whenever privileged

7    information is relevant to a claim or defense.  Indeed, whenever state of mind is at

8    issue in any sense a party would always be deemed to waive the privilege because,

9    in theory, what attorneys did or did not tell that party could be relevant.

10    As one of the treatises on which MGA relies itself notes, "[t]he better

11    reasoned cases eschew any broad reading of waiver based on merely raising the

12    defense of laches or equitable estoppel.  *Actual reliance on the opinion of counsel* to

13    prove the defense should be required."  Epstein, <u>The Attorney Client Privilege and</u>

14    <u>the Work Product Doctrine</u> (5th ed. 2007), at 545 (emphasis added).  Here, MGA

15    has not shown that Mattel is relying on the opinion of its counsel in support of its

16    assertion of fraudulent concealment.  That is because Mattel is not.

17    MGA principally relies on an unpublished district court decision,

18    <u>Rambus Inc. v. Samsung Electronics Co., Ltd.</u>, 2007 WL 3444376 (N.D. Cal. Nov.

19    13, 2007).[21]  The <u>Rambus</u> court failed to properly apply the second prong of <u>Hearn</u>.

20    It concluded that the second prong was satisfied simply because attorney-client

21    communications might be relevant to Samsung's claim of fraudulent concealment.

22    <u>Id.</u> at *4.  As shown above, however, any conclusion that relevance alone is

23    sufficient to find implied waiver is not supported by Ninth Circuit law.  <u>See</u>

24    <u>generally</u> <u>Moreno v. Harrison</u>, 2006 WL 2411421, at *3 n.4 (N.D. Cal. 2006)

25    (district court has no authority to disregard Ninth Circuit precedent).

26

27    [20]   MGA's Motion, at pp. 16-18.

28    [21]   <u>Id.</u> at pp. 16-17, 20-22.

1    In the other district court cases cited by MGA, the courts likewise

2  required that privileged information not merely be *relevant to* the claim of

3  fraudulent concealment, but that it actually be *relied on* by the party asserting the

4  claim.  For example, in In re Imperial Corp. of Am., 179 F.R.D. 286 (S.D. Cal.

5  1998), the court found implied waiver where the plaintiff contended that it learned it

6  had a claim for legal malpractice by means of counsel's investigation.  Similarly, in

7  Titan Corp. v. M/A-Com, Inc., 1994 WL 16001739, at *2 (S.D. Cal. 1994), the court

8  held that the "plaintiff put the allegedly protected information in issue by relying on

9  its counsel's investigation in order to overcome the statute of limitations bar."

10    Mattel has never claimed that it learned the basis of its claims by means

11  of privileged attorney-client communications or work product.  Mattel has disclosed

12  that it first learned of the wrongful conduct that is the basis of Mattel's claims when

13  it received a copy of Bryant's agreement with MGA in unrelated litigation.[22]  That

14  agreement was not transmitted to Mattel by means of an attorney-client

15  communication or attorney work product.[23]

16

17

18

19  [22]   See Order Denying Motion for Terminating Sanctions, dated August 27, 2007, at p. 3 ("Mattel received in discovery in an unrelated action a copy of a contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel. This contract appeared to Mattel to violate certain employment agreements executed by Bryant and Mattel, thus giving rise to one of the current consolidated actions."), Proctor Dec., Exh. 6.

20

21

22

23  [23]   And, to the extent that MGA is seeking to invade privilege with respect to Mattel security investigations, it is not only an improper motion for reconsideration as discussed above but goes even further astray on this prong of the Hearn test. Claiming that it is entitled to privileged communications or work product in investigations that *failed* to turn up facts revealing that Bryant worked on Bratz while employed by Mattel or that he had aided MGA while employed by Mattel would turn the reliance requirement on its head.  Indeed, there would be no logical stopping point for such an argument, and it would eviscerate the core, beneficial purposes of privilege.

24

25

26

27

28

-11-

1
2

## B.   Application of the Privilege Would Not Deny MGA Access to Information Vital to Its Defense

3       MGA's motion should also be denied because MGA cannot meet the

4   third prong of the Hearn test: it cannot show that application of the privilege would

5   deny it access to information vital to its defense.  MGA claims this requirement is

6   met simply because its statute of limitations and laches defenses are potentially

7   "case dispositive."[24]  Apart from being an exaggeration,[25] the test here is not

8   whether a defense is "case dispositive," but whether there is substantial other

9   evidence bearing on it.  Mattel has already produced substantial evidence related to

10  those defenses.  MGA has not been denied the factual evidence related to how and

11  when Mattel learned that Bryant was working for MGA while he was employed by

12  Mattel.  Mattel's privileged communications are not vital to any defense.

13      The Ninth Circuit's decision in Home Indemnity Co. v. Lane Powell

14  Moss and Miller, 43 F.3d 1322, 1326-27 (9th Cir. 1995), is instructive.  In that case,

15  the Court declined to find implied waiver because the defendant had access to non-

16  privileged information regarding its defense.  The defendant asserted, in defense to a

17  claim of legal malpractice related to a failure to settle a case, that its "conduct did

18  not cause the failure to settle because the plaintiffs never intended to settle for the

19  policy limits and in fact only wanted to 'set up' a bad faith action."  Id. at 1326.  The

20  court held that although that defense put at issue plaintiff's state of mind and

21

22      [24]  MGA's Motion, at p. 19.

23      [25]  For example, Mattel's copyright infringement claim is necessarily timely as to
        all acts of infringement that have occurred within three years of Mattel bringing suit.

24  See Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994) ("In a case

25  of continuing copyright infringements, an action may be brought for all acts that
        accrued within the three years preceding the filing of the suit.") (citations omitted).

26  Moreover, Judge Larson has held that Mattel's claims, including its copyright claim,
        relate back to April 2004 -- when Mattel first filed suit.  Order Regarding Mattel's

27  Motion for Leave to Amend, dated January 11, 2007, pp. 13-15, Proctor Dec., Exh.

28  8.

MATTEL'S OPPOSITION TO MGA'S MOTION TO COMPEL RE PRIVILEGE WAIVER BY CLAIM ASSERTION

1   motivations during privileged settlement discussions, there was no implied waiver
2   because plaintiff had pleaded that its intent in making a settlement offer was to
3   either settle or set up a basis for a bad faith claim.  Id.  The Ninth Circuit reasoned
4   that the information pleaded was sufficient to demonstrate that the defense asserted
5   by defendants was without merit, and that the defendant was therefore not entitled to
6   additional discovery of privileged information related to its defense.

7           Here, Mattel has provided far more information already than the Ninth
8   Circuit held to be sufficient in Home Indemnity.  Mattel has produced substantial
9   information setting forth the facts related to MGA's statute of limitations and laches
10   defenses and MGA's fraudulent concealment.  The only information MGA's motion
11   references is the investigations undertaken by Mattel's security department in 2002.
12   Yet MGA *already has* the underlying facts bearing on those investigations.  Mattel
13   has produced hundreds of pages of non-privileged documents regarding its
14   investigations of Bryant and MGA, including the 2002 investigations discussed in
15   MGA's motion.[26]  As the Discovery Master previously found, Mattel has "conducted
16   a reasonable search . . . and has produced all documents related to the March 2002
17   investigation that are responsive to MGA and Bryant's document requests."[27]

18           MGA argues that although the files regarding the 2002 investigations
19   were produced, there may be other unproduced information relating to earlier
20   investigations of Bryant or MGA.  MGA's speculation is unfounded.  After MGA
21   filed its motion, it took the deposition of Richard De Anda, Mattel's head of
22   security.  Mr. De Anda confirmed that he had not even heard of MGA, Bryant or
23   Bratz before March 2002.[28]  Mr. De Anda also testified at length regarding how and

24   
---
25   [26]   Proctor Dec., ¶ 13.
26   [27]   Order Granting MGA and Bryant's Motion to Compel Production of Certain Documents Withheld Under Claims of Privilege for In Camera Review, and
27   Denying Motion to Attest to the Completeness of February 2007 Production, dated May 15, 2007, at p. 6, Proctor Dec., Exh. 2.
28   [28]   De Anda Depo. Tr. at 166:5-167:9, Proctor Dec., Exh. 7.

1  when Mattel first investigated Bryant and MGA.[29]  Given that MGA has the *facts*

2  relating to Mattel's investigations, obtaining Mattel's privileged communications and

3  any of counsel's work product is far from "vital" to MGA's defense.

4        Mattel has also provided interrogatory responses explaining in further

5  detail its investigations of Bryant and MGA, and how and when it first learned of

6  Bryant's wrongful conduct that forms the basis for Mattel's claims.  For example,

7  MGA propounded an interrogatory asking Mattel to "[s]tate, with particularity,

8  when and how MATTEL first learned that BRYANT performed work for MGA."

9  Mattel responded by describing in detail when and how it first learned that Bryant

10  worked on Bratz for MGA while he was still employed by Mattel:

11            Mattel conducted an investigation in Spring 2002 based on

12            allegations that Bryant may have plagiarized 'Toon Teens'

13            and created Bratz dolls for MGA, and later in August 2002

14            based on an anonymous letter sent to Mattel.  The letter's

15            author (whoever it was) offered no evidence for his or her

16            allegations.  The potential claims investigated in 2002

17            have not been asserted in this case.  In March 2002, Mattel

18            investigated allegations of possible copyright infringement

19            of "Toon Teens" designs, not whether Mr. Bryant created

20            Bratz or worked with MGA during his Mattel

21            employment.  The potential claims investigated in 2002

22            did not give Mattel any knowledge, or even reason to

23            believe, that Bryant worked for MGA and/or conceived of

24            Bratz while a Mattel employee.

27  [29]  See, e.g., De Anda Depo. Tr. at 166:5-177:4, 224:18-227:8, 237:11-258:22,

28  Proctor Dec., Exh. 7.

1        Subsequently, on November 24, 2003, Mattel obtained a

2        copy of a contract between defendant Carter Bryant and

3        defendant MGA.  That contract -- which Bryant and MGA

4        had entered into while Bryant was employed by Mattel --

5        required Bryant to provide design services to MGA on a

6        "top priority" basis, in conflict with his then-existing

7        obligations to Mattel.  It also purported to grant MGA

8        ownership of works produced by Bryant both before and

9        after the agreement's effective date, in further

10        contravention of his obligations to Mattel.  Through this

11        agreement, Mattel first determined that it was likely that

12        Bryant worked as a designer for a Mattel competitor,

13        MGA, while being employed and paid by Mattel for his

14        exclusive services as a designer.[30]

15  Since this response was provided, MGA has not even sought to meet and confer

16  about its sufficiency or propriety, or challenged it in any way.[31]

17        MGA has also had the opportunity to cross-examine Mattel's relevant

18  in-house lawyer, Michael Moore, regarding when Mattel first became aware of the

19  conduct that forms that basis of its claims.  MGA's counsel questioned Mr. Moore at

20  an evidentiary hearing before Judge Larson on MGA's unsuccessful motion for

21  terminating sanctions.  One of the facts at issue was when Mattel first learned of the

22  conduct that forms that basis of its claims, and Mr. Moore provided substantial

23  testimony at the hearing on that subject.[32]  At no time did MGA complain to Judge

24

---

25    [30]  Supplemental Responses to MGA's First Set of Interrogatories to Mattel, Inc.,

26  at p. 113, attached as Exhibit 3 to the declaration of Marcus R. Mumford ("Mumford

27  Dec.").
    [31]  Proctor Dec., ¶ 14.

28    [32]  Transcript of August 27, 2007 Hearing, at pp. 83-99, Proctor Dec., Exh. 10.

1  Larson that the non-privileged information disclosed by him interfered with MGA's

2  ability to get to any facts, let alone vital ones.

3          In short, the only evidence shows that MGA has obtained sufficient

4  relevant information to determine when and how Mattel first learned that Bryant

5  was working on Bratz while still employed at Mattel and that Bryant was aiding

6  MGA while still employed by Mattel.  That the information does not support its

7  laches or statute of limitations defenses does not mean that MGA is entitled to

8  privileged information as well.

9

10 **IV.   <u>IF THERE HAD BEEN AN IMPLIED WAIVER, THE SCOPE WOULD</u>**

11 **<u>BE LIMITED</u>**

12          Should the Court find implied waiver here -- and it should not -- the

13 scope of any waiver would have to be narrowly tailored.  "[T]he court must impose

14 a waiver no broader than needed to ensure the fairness of the proceedings before it."

15 <u>Bittaker v. Woodford</u>, 331 F.3d 715, 720 (9th Cir. 2003).  The implied waiver

16 doctrine requires "closely tailor[ing] the scope of the waiver to the needs of the

17 opposing party."  <u>Id.</u>

18          MGA's requested relief flouts these principles.  Even putting aside its

19 overbroad, vague demand that Mattel "supplement its discovery responses

20 accordingly," MGA demands an overbroad Order "concluding that Mattel has

21 waived attorney-client privilege and work product concerning what it knew or had

22 reason to suspect prior to November 2003 *regarding Bryant's involvement in Bratz*,

23 his alleged breach of contract, *his work for MGA*, and/or Mattel's alleged 'true

24 owner[ship] of Bratz.'"[33]  That far exceeds the proper scope of any implied waiver.

25 Information regarding "Bryant's involvement in Bratz" and "his work for MGA," for

26

27

---

28  [33]   MGA's Notice of Motion.

MATTEL'S OPPOSITION TO MGA'S MOTION TO COMPEL RE PRIVILEGE WAIVER BY CLAIM ASSERTION

1    example, is far broader than what could possibly be necessary for any purported

2    laches or statute of limitations defenses.

3    For a copyright infringement claim, "the statute of limitations begins

4    running upon the plaintiff's actual or constructive knowledge of the wrong." Novell,

5    Inc. v. Unicom Sales, Inc., 2004 WL 1839117, at *4 (N.D. Cal. 2004) (citing Roley

6    v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994)).  The party asserting

7    the time bar must prove that the opposing party knew of facts giving it *notice of the*

8    *specific cause of action at issue*, not just any cause of action.  Westinghouse Elec.

9    Corp. v. General Circuit Breaker & Elec. Supply, Inc., 106 F.3d 894, 899 (9th Cir.

10   1997) (citing Hobson v. Wilson, 737 F.2d 1, 35 (D.C. Cir. 1984), cert. denied, 470

11   U.S. 1084 (1985)).  The notice required for any cause of action to begin to accrue

12   "refer[s] to an awareness of sufficient facts to identify a particular cause of action,

13   be it a tort, a constitutional violation or a claim of fraud.  [It does] not mean the kind

14   of notice--based on hints, suspicions, hunches or rumors--that requires a plaintiff to

15   make inquiries in the exercise of due diligence, but not to file suit."  Garamendi v.

16   SDI Vendome S.A., 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (quoting

17   Hobson, 737 F.2d at 35).

18   Here, Mattel's claims are based on the fact that Bryant "conceived,

19   created and developed" Bratz concepts and works "*while he was employed by Mattel*

20   *as a doll designer*" and worked with MGA while he was employed by Mattel.[34]

21   Quite simply, Mattel's causes of action could not possibly have accrued before

22   Mattel learned that Bryant worked on Bratz, or for MGA, *while he was employed by*

23   *Mattel*.  The relevant question is therefore when Mattel had knowledge that Bryant

24   created Bratz *while a Mattel employee* and worked for MGA *while a Mattel*

25   *employee*.  Information related to Mattel's knowledge that Bryant worked for MGA

26

27   [34]  Mattel, Inc.'s Second Amended Answer and Counterclaims, ¶ 2 (emphasis

28   added), Mumford Dec., Exh. 1.

1  or was involved with Bratz *after he left Mattel* is not even pertinent to laches or the

2  statute of limitations, and certainly not "vital."

3        Moreover, the time period MGA espouses -- "before November 2003" -

4  - is overbroad and lacking in principled support.  Judge Larson has ruled that

5  Mattel's claims relate back to its initial complaint in April 2004.[35]  Even according

6  to MGA the earliest possible statute of limitations applicable to any of Mattel's

7  claims is two years.[36]  Thus, the only possibly relevant information to MGA's laches

8  and statute of limitations defenses would be evidence that Mattel was aware of the

9  wrongful conduct that forms the basis of its claims prior to April 2002, not

10  November 2003.

11        Thus, even assuming for argument's sake that there was an implied

12  waiver of the privilege here, it should be limited to information sufficient to show

13  when Mattel obtained knowledge of Bryant's creation, design and development of

14  Bratz *while he was a Mattel employee* and work for MGA *while he was a Mattel*

15  *employee.*  As to MGA's other requested relief, the drastic relief it seeks is not even

16  arguably justified.

17

18  **Conclusion**

19        For the foregoing reasons, Mattel respectfully requests that the Court

20  deny MGA's motion to compel.

21  DATED: December 27, 2007      QUINN EMANUEL URQUHART OLIVER &
      HEDGES, LLP

22

23

24        By _Dylan Proctor /BBS_

25        B. Dylan Proctor
      Attorneys for Mattel, Inc.

26

27  [35]  Order Regarding Mattel's Motion for Leave to Amend, dated January 11, 2007, pp. 13-15, Proctor Dec., Exh. 8.

28  [36]  Id. at p. 14.

-18-

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On December 27, 2007, I served true copies of the following documents described as:

**MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL REGARDING MATTEL'S PRIVILEGE WAIVER BY CLAIM ASSERTION**

on the parties in this action as follows:

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>    Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA  90071<br>Telephone:  213.687.5000<br>Facsimile:  213.687.5600 | **Attorneys for *MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., Isaac Larian and MGAE de Mexico, S.R.L. de C.V.*** |

[√ ]    **[PERSONAL]** by personally delivering the document listed above to the person(s) at the address(es) set forth above.


I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made


Executed on December 27, 2007, at Los Angeles, California.


David Quintana

1

## **PROOF OF SERVICE**

2      I am employed in the County of Los Angeles, State of California.  I am over

3  the age of eighteen years and not a party to the within action; my business address is

4  865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

5      On December 27, 2007, I served true copies of the following documents

6  described as:

7  **MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL**
8  **REGARDING MATTEL'S PRIVILEGE WAIVER BY CLAIM ASSERTION**

on the parties in this action as follows:

9

| | |
|---|---|
| Keker & Van Nest, LLP<br>  John W. Keker, Esq.<br>  Michael H. Page, Esq.<br>  Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111<br>Telephone: 415.391.5400<br>Facsimile: 415.397.7188 | **Attorneys for *Carter Bryant*** |
| Overland Borenstein Scheper &<br>Kim, LLP<br>  Mark E. Overland, Esq.<br>  David C. Scheper, Esq.<br>  Alexander H. Cote, Esq.<br>300 South Grand Avenue, Suite 2750<br>Los Angeles, CA 90071<br>Telephone: 213.613.4655<br>Facsimile: 213.613.4656 | **Attorneys for *Carlos Gustavo Machado Gomez*** |

10

11

12

13

14

15

16

17

18

19

20      [√]    **[MAIL]** As follows:  I am "readily familiar" with the firm's practice of

21  collection and processing correspondence for mailing.  Under that practice it

22  would be deposited with U.S. postal service on that same day with postage

23  thereon fully prepaid at Los Angeles, California in the ordinary course of

24  business, addressed as set forth below.  I am aware that on motion of the party

25  served, service is presumed invalid if postal cancellation date or postage

26  meter date is more than one day after date of deposit for mailing in affidavit.

27

28

07209/2336687.1

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE RE MATTEL'S OPPOSITION TO MOTION TO COMPEL

1    I declare that I am employed in the office of a member of the bar of this court

2  at whose direction the service was made

3         Executed on December 27, 2007, at Los Angeles, California.

4

5

6                                          Albert V. Villamil

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2336687.1