QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>             Plaintiff,<br><br>   vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>             Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]**<br><br>[PUBLIC REDACTED] DECLARATION OF B. DYLAN PROCTOR IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL REGARDING MATTEL'S PRIVILEGE WAIVER BY CLAIM ASSERTION<br><br>[Declaration of B. Dylan Proctor Filed Concurrently]<br><br>Date:    January 3, 2008<br>Time:    1:30 p.m.<br>Place:   JAMS<br>              Two Embarcadero Center<br>              Suite 1500<br>              San Francisco, California<br><br>**Phase 1**<br>Discovery Cut-Off:    January 28, 2008<br>Pre-Trial Conference:  May 5, 2008<br>Trial Date:              May 27, 2008 |

I, B. Dylan Proctor, declare as follows:

1.      I am a member of the bar of the State of California and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.      Attached as Exhibit 1 is a true and correct copy of MGA and Bryant's Joint Motion to (1) Compel Production of Certain Documents Withheld Under Claim of Privilege, (2) Attest to the Completeness of Its February 2007 Production of March 2002 Investigation Documents, and (3) De-Designate Attorney's Eyes Only Documents, dated April 10, 2007.

3.      Attached as Exhibit 2 is a true and correct copy of the Discovery Master's Order Granting MGA and Bryant's Motion to Compel Production of Certain Documents Withheld Under Claims of Privilege for In Camera Review, and Denying Motion to Attest to the Completeness of February 2007 Production, dated May 15, 2007.

4.      Attached as Exhibit 3 is a true and correct copy of the Discovery Master's Order Re In Camera Review of Global Security Files, dated July 10, 2007.

5.      Attached as Exhibit 4 is a true and correct copy of the relevant excerpts of the transcript of the June 19, 2007 hearing before the Discovery Master.

6.      Attached as Exhibit 5 is a true and correct copy of the relevant excerpts of the transcript of the May 4, 2007 hearing before the Discovery Master.

7.      Attached as Exhibit 6 is a true and correct copy of Judge Larson's Order Denying Motion for Terminating Sanctions, dated August 27, 2007.

8.      Attached as Exhibit 7 is a true and correct copy of the relevant excerpts of the rough transcript of the December 19, 2007 deposition of Richard De Anda.

9.      Attached as Exhibit 8 is a true and correct copy of Judge Larson's Order Regarding Mattel's Motion for Leave to Amend, dated January 11, 2007.

1          10.     Attached as Exhibit 9 is a true and correct copy of Judge Larson's

2    Order Re Motions Heard on June 11, 2007, dated June 27, 2007.

3          11.     Attached as Exhibit 10 is a true and correct copy of the relevant

4    excerpts of the transcript of the August 27, 2007 hearing before Judge Larson.

5          12.     My partner, Jon Corey, and I participated on behalf of Mattel in

6    the parties' meet and confer on December 6, 2007, regarding MGA's claim that

7    Mattel waived the privilege.  During the parties' meet and confer Mattel invited

8    MGA to identify the documents on Mattel's privilege log, instructions not to answer

9    or other discovery that MGA believed should be provided so that Mattel, and the

10   Court, could address MGA's assertions in context.  MGA declined to do so.

11         13.     Mattel has produced hundreds of pages of non-privileged

12   documents regarding the investigations which are apparently at issue in this motion,

13   including its March 2002 "Toon Teens" investigation and its August 2002

14   anonymous letter investigation.

15         14.     Mattel served its Supplemental Responses to MGA's First Set of

16   Interrogatories on December 8, 2007.  Mattel's supplemental responses included a

17   nearly four page response to MGA's Interrogatory No. 10 which requested that

18   Mattel "[s]tate, with particularity, when and how MATTEL first learned that

19   BRYANT performed work for MGA."  This response is attached as Exhibit 3 to the

20   declaration of Marcus R. Mumford.  To the best of my knowledge, since this

21   response was provided MGA has not sought to meet and confer about its sufficiency

22   or propriety, or challenged it in any way.

23   //

24   //

25   //

26   //

27   //

28   //

1        I declare under penalty of perjury under the laws of the United States of

2   America that the foregoing is true and correct.

3        Executed this 27th day of December, 2007, at Los Angeles, California.

4

5   _____

6   B. Dylan Proctor

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

*Received 3/10/07*
*Calendar 5TH*

1  DALE M. CENDALI (admitted *pro hac vice*)
   dcendali@omm.com
2  DIANA M. TORRES (S.B. #162284)
   dtorres@omm.com
3  JAMES P. JENAL (S.B. # 180190)
   jjenal@omm.com
4  O'MELVENY & MYERS LLP
   400 South Hope Street
5  Los Angeles, CA  90071-2899
   Telephone:  (213) 430-6000
6  Facsimile:  (213) 430-6407

7  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK,
8  JACOBS, WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
9  Los Angeles, CA  90067
   Telephone:  (310) 553-3000
10 Facsimile:  (310) 557-9815

11 Attorneys for MGA Entertainment, Inc.

12                **UNITED STATES DISTRICT COURT**
13                **CENTRAL DISTRICT OF CALIFORNIA**
                       **EASTERN DIVISION**
14

15 CARTER BRYANT, an individual,      Case No. CV 04-09049 SGL (RNBx)
                                       (consolidated with CV 04-9059 & 05-2727)
          Plaintiff,
16                                     **DISCOVERY MATTER**
             v.
17                                     **MGA AND BRYANT'S JOINT**
   MATTEL, INC., a Delaware           **MOTION TO**
18 Corporation,                       **(1) COMPEL PRODUCTION OF**
                                       **CERTAIN DOCUMENTS WITHHELD**
          Defendant.                  **UNDER CLAIM OF PRIVILEGE, (2)**
19                                     **ATTEST TO THE COMPLETENESS**
                                       **OF ITS FEBRUARY 2007**
20                                     **PRODUCTION OF MARCH 2002**
                                       **INVESTIGATION DOCUMENTS, AND**
21                                     **(3) DE-DESIGNATE ATTORNEY'S**
                                       **EYES ONLY DOCUMENT**
22

23 CONSOLIDATED WITH                  [To be heard by Discovery Master Hon.
   MATTEL, INC. v. BRYANT and         Edward Infante (Ret.) Pursuant to the
24 MGA ENTERTAINMENT, INC. v.         Court's Order of December 6, 2006]
   MATTEL, INC.
25

26

27

28

1    This memorandum of points and authorities is filed in support of MGA

2    Entertainment, Inc.'s ("MGA") and Carter Bryant's ("Bryant") motion to compel

3    Mattel, Inc. ("Mattel") to: (1) certify that it has produced all responsive documents

4    concerning its investigations of Carter Bryant and the origins of Bratz; (2) produce

5    certain documents withheld under claim of privilege for in camera review to

6    determine whether the documents are privileged; and (3) de-designate a single

7    document that Mattel designated as "Attorneys Eyes Only" so that MGA can

8    adequately prepare its defense.

9    **I.    INTRODUCTION**

10    At the January 25, 2007, discovery hearing on MGA's motion to compel, the

11    Discovery Master overruled Mattel's relevancy objections to discovery concerning

12    when Mattel learned and what Mattel knew regarding the role of Carter Bryant and

13    MGA in the creation of Bratz.  At that time, the Discovery Master stated that any

14    ruling on the issue of whether investigation documents were privileged was

15    premature before Mattel had produced a privilege log, and advised Mattel to

16    supplement its privilege log with declarations to support its claims of attorney-

17    client privilege and work product protection.

18    On February 23, 2007, Mattel produced certain documents concerning the

19    investigation and a supplemental privilege log.  It is now clear why Mattel

20    stonewalled MGA's request for production and resisted the motion to compel.

21    What first appeared to have been an investigation of Carter Bryant and MGA

22    beginning in August 2002 now appears to be part of a series of investigations begun

23    in March 2002.  Mattel had never before produced any information even *suggesting*

24    that any knowledge of Mr. Bryant's involvement with MGA's "Bratz" dolls – let

25    alone the type of extensive investigation revealed by these documents – extended

26    that far back in time.[1]  These five-year-old documents, which Mattel has withheld

_____

[1] In fact, at deposition, Mattel witnesses routinely denied or claimed to lack any recollection of
any investigation in 2002, let alone the type of extensive investigation that took place even before
August 2002.  *See* Cassidy Park Depo. at 107:13-108:4 (testifying that she did not have

MGA AND BRYANT'S JOINT MOTION TO
COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT __1__ PAGE __5__

1     since the inception of this litigation three years ago, are highly relevant and strongly

2     support MGA and Bryant's defenses based on laches and the statute of limitations.

3          Two issues necessitate MGA's return to the Discovery Master for additional

4     relief at this time. First, based on MGA's review of Mattel's document production

5     and privilege log, it does not appear that Mattel produced a single document that

6     reflects any findings by any Mattel employee or agent as to when Mattel first

7     learned or what Mattel first knew concerning Mr. Bryant's involvement with MGA

8     or the Bratz line of dolls, and, indeed, it is clear that Mattel's production lacks a

9     number of documents concerning the investigation.[2] Given the extraordinary

10     lengths to which Mattel went to investigate MGA, Mr. Bryant and Mr. Larian, it is

11     difficult to believe that no such documents were created and retained by Mattel and

12     MGA therefore asked, both at an in-person meeting of counsel on March 8, 2007,

13     and by letter dated March 9, 2007,[3] for confirmation that, after a diligent search,

14     Mattel has produced or logged all documents of which it is aware concerning its

15     investigations of Mr. Bryant's involvement with MGA or the Bratz line of dolls.

16     This is no more than is required by the Federal Rules of Civil Procedure.

17          Second, MGA asked, both in person and in writing, whether Mattel intended

18     to follow the Discovery Master's advice to supplement the log with declarations to

19     support its invocation of privilege. Mattel replied by letter dated March 15, 2007,

20     that it intended to do so by Tuesday, March 20, 2007.[4] To this day, however,

---

21     conversations with Mattel's Head of Security Richard De Anda about Carter Bryant and did not
believe she had conversations with De Anda or anyone else in Mattel's security department about

22     Bryant or Bratz) (Hurwitz Decl. Ex. 1); and Alan Kaye Depo. at 27:10-15 (testifying that he did
not know whether Carter Bryant's activities at Mattel in 2000 were investigated at some point in

23     2002.) (Hurwitz Decl. Ex. 2.) It is clear, however, from the documents recently produced by
Mattel that, in fact, these Mattel witnesses were well aware of and participated in the 2002

24     investigation. (Hurwitz Decl. Ex. 3 (M0074372), 4 (M0074400)).

25     [2] For example, Mattel appears to have obtained and reviewed the electronic mail files of several
of its employees, yet has not produced those email files. (Hurwitz Decl. Ex. 5 (M0074962-

26     M0075005; M0074480-M0074504; and M0074537-M0074570)). In addition, as set forth *infra*,
Mattel also appears to have in its possession a surveillance video, from which it has produced

27     only one still frame rather than the video in its entirety.

    [3] Letter from David Hurwitz to Timothy Alger dated March 9, 2007 (Hurwitz Decl. Ex. 6).

28     [4] Letter from Timothy Alger to David Hurwitz dated March 15, 2007 (Hurwitz Decl. Ex. 7).

MGA AND BRYANT'S JOINT MOTION TO
COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT ____ PAGE ____

1  Mattel has not provided any declaration to support the opaque entries on its

2  Supplemental Privilege Log.  Without such additional information, MGA has no

3  reason to believe that the documents concerning the investigations of former

4  employees are attorney-client privileged or protected work product.  The

5  importance of Mattel's conclusions on these issues to the laches and limitations

6  defenses cannot be overstated and Mattel cannot hide beyond a naked assertion of

7  privilege to withhold these case-critical documents.

8  Accordingly, MGA and Bryant respectfully request that the Discovery

9  Master order Mattel to produce the non-privileged documents concerning the

10  investigation that it has withheld and then confirm that it has complied with the

11  order granting MGA's prior motion to compel; and to produce unredacted copies of

12  the investigation documents withheld under a claim of privilege to the Discovery

13  Master to review those documents in camera to determine whether they are in fact

14  privileged.

15  Finally, Mattel produced a document in discovery titled "WWBD: What

16  Would Brawer Do" and designated the document as "Attorneys Eyes Only" under

17  the terms of the protective order entered in this action.[5]  The document contains

18  nothing more than the theoretical musings of Mattel personnel about what Mr.

19  Brawer would do once he started at MGA and does not contain any trade secret or

20  other highly confidential Mattel information.  For this reason alone, it should be

21  designated at most as "Confidential."  Moreover, Mattel names Mr. Brawer

22  throughout its counterclaims and, in fact, previously sued Mr. Brawer personally in

23  state court for claims concerning trade secrets before abandoning that suit.  MGA

24  should be able to view this document and show it to Mr. Brawer to defend against

25  Mattel's claims.  For this reason, too, therefore, Mattel should not be able to

26  prevent MGA from seeing this document by giving it the inappropriate designation

27  of "Attorneys Eyes Only."

28  [5] Hurwitz Decl. Ex. 8 (M0047508).

3

MGA AND BRYANT'S JOINT MOTION TO
COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT __1__ PAGE __7__

## II.   BACKGROUND

### A.   Mattel's Attempt to Stonewall Discovery of the 2002 Investigation and Require MGA and Bryant to Obtain Court Order Requiring Production of Documents

On April 27, 2004, Mattel brought this action in state court against Bryant, alleging breach of contract, breach of fiduciary duty, breach of the duty of loyalty, conversion and unjust enrichment. Mattel, in a two-pronged effort to keep its case in state court and deny MGA the right to protect its interests, consistently denied that it was asserting any claim concerning the copyrights to MGA's Bratz fashion dolls.

More than two-and-a-half years after filing suit against Bryant, Mattel sought to amend its complaint to add claims against MGA and Bryant for, among other things, the very claim it has denied all along – copyright infringement, and succeeded in asserting these claims as counterclaims to the claims alleged by MGA in 2005. Accordingly, when and what Mattel first knew about Bryant's role in the creation of Bratz is directly relevant to MGA and Bryant's defenses based on laches and the three year statute of limitations. 17 U.S.C. § 507(b).

Bryant early on sought documents concerning Mattel's knowledge of his role in the creation of the Bratz dolls.[6] Mattel resisted these requests for the most part but ultimately produced a letter dated August 5, 2002, addressed to Mattel CEO Robert Eckert from an anonymous source (the "2002 Anonymous Letter"), alleging that Bryant stole the idea for "Bratz" from Mattel. Handwritten notes on the 2002 Anonymous Letter indicate that, at Mr. Eckert's direction, Alan Kaye, Mattel's Vice President of Human Relations, instructed Richard de Anda, Mattel's Vice President of World Wide Security, to conduct an investigation into the letter's allegations that Bryant had worked with MGA on the project that became the Bratz dolls while Bryant was still employed at Mattel.

---

[6] *See* Bryant Requests for Production Nos. 3, 5, 15, 17, 18, 28, 31, 35, and 36.

4

EXHIBIT ___1___ PAGE ___8___

1    Mattel strenuously resisted requests for further documents concerning the

2    2002 investigation, refusing to produce any responsive documents or log

3    documents withheld on claims of privilege.  Mattel's conduct left MGA and Bryant

4    with no choice but to move to compel MGA to produce documents relating to

5    Mattel's factual investigations concerning Bryant's involvement with MGA or the

6    Bratz line of dolls.  In addition, MGA and Bryant challenged Mattel's right to

7    withhold any documents on the basis of privilege both as unsupported in fact and

8    because Mattel had waived any privilege claim by refusing to provide a privilege

9    log.

10    The Discovery Master granted MGA and Bryant's motion to compel and

11    ordered Mattel to produce the documents requested.  The Discovery Master

12    deferred consideration of MGA and Bryant's challenge to Mattel's claims of

13    privilege, permitting Mattel to provide a supplemental log identifying the

14    document(s) withheld.  While not ordering Mattel to support its privilege claims

15    with declarations, the Discovery Master advised Mattel to do so to carry its burden

16    in asserting any privilege claims, noting that this would require Mattel to identify

17    who the participants to the communication were and why it happened.  (Hearing Tr.

18    at 13.)  Mattel stated it would do so within two weeks.  (*Id.*)

19    **B.    Mattel's Document Production Reveals That Mattel's**

20    **Investigation of Bryant and MGA Extends Back to March 2002.**

21    On February 23, 2007, Mattel produced additional documents and provided a

22    supplemental privilege log in response to the February 25, 2007 Order.[7]  Mattel

23    however chose not to follow the Discovery Master's advice about providing

24    declarations to support its privilege assertions.

25    Mattel's production revealed what it had zealously hidden in prior discovery:

26    Mattel first knew of Bryant's role with MGA's "Bratz" dolls and his involvement

27    with MGA long before the August 2002 letter.  In fact, Mattel's head of security De

28    [7] Mattel's Supplemental Privilege Log dated February 23, 2007, Hurwitz Decl. Ex. 9.

1   Anda had conducted a full-blown investigation of Bryant, MGA, and MGA CEO

2   Isaac Larian – complete with undercover surveillance and social security number

3   checks of Mr. Larian and his family – beginning in March 2002 when Mattel

4   received a claim from two of its employees, Evelyn Viohl and Ivy Ross, that MGA

5   had reportedly hired a number of former Mattel employees and was allegedly

6   manufacturing products that appeared to be Mattel designs.

7       These recently produced investigation files reveal that the scope of Mattel's

8   2002 investigations of MGA expanded beyond Bryant and Bratz.  In 2003, Mattel

9   expanded the scope of its investigation to focus on allegations that MGA had

10  received photographs of Mattel's "Flavas" dolls.  Mattel's investigators interviewed

11  numerous Mattel employees, collected documents from Mattel's personnel files,

12  and searched Mattel employees' email accounts and phone records.

13      Later, in 2004, Mattel turned its attention to investigate allegations that Ron

14  Brawer had dared to communicate with MGA while a Mattel employee.  Mattel

15  went so far as to hire private investigators to conduct surveillance on Brawer and

16  his family members in the Fall of 2004.

17      One of MGA's chief concerns is that Mattel's production of its investigation

18  files remains incomplete.  Mattel has produced documents which reference the

19  existence of other documents, a videotape and electronic files that MGA has never

20  seen.  For example, Mattel's documents show that Mattel's investigation of MGA

21  included reviewing the electronic mail files of a number of its own employees --

22  including employees who have been deposed in this litigation -- to determine

23  whether those employees were communicating information to MGA; although

24  Mattel produced various computer screen images of those Mattel employees' email

25  inboxes, it did not produce any of the actual emails themselves.[8]  Similarly, in an

26

---

27  [8] Hurwitz Decl. Ex. 5.  The emails that Mattel reviewed in connection with its investigation of
    MGA are directly relevant to the issues in this litigation and, indeed, could help MGA establish
28  that, in fact, it did not misappropriate any Mattel confidential information.

MGA AND BRYANT'S JOINT MOTION TO
COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT  I   PAGE  I0

1   email from De Anda to Laura Martel, De Anda advises Martel: "[T]he pst file for rb

2   is in the 'secureinfo' share, the file name is rbbackup2.pst.  [L]et me know if you

3   need anything else."[9]  Three handwritten bullet points state, "start," "run," and

4   "\\estwr07\secureinfo$".  It appears from the context of this email in Mattel's

5   investigation files that Mattel captured a copy of Ron Brawer's ".PST" or email

6   files in connection with its ongoing investigation of MGA, which Mattel has not

7   produced.  In addition, Mattel has produced a photograph taken by a security

8   camera in the lobby of Mattel's El Segundo offices.[10]  The photograph is actually a

9   computer screen printout displaying "play" and "pause" buttons, clearly indicating

10   that the photograph is merely a freeze frame from a videotape that Mattel has also

11   never produced.  These documents appear to all be part of Mattel's extensive

12   investigation of MGA, are highly relevant to this litigation, and, accordingly,

13   should be produced.

14        Also notably absent from Mattel's production of its investigation files are any

15   documents that reflect any findings or conclusions by any Mattel employee or

16   agent.  While De Anda's investigation file contained notes of interviews of

17   employees, Mattel produced no documents that reflected any conclusions reached

18   by De Anda or anyone else, nor any reports to or from anyone at Mattel about the

19   results of the investigation.  Indeed, the only documents that could possibly reflect

20   findings or conclusions as to what Mattel first knew and when were withheld as

21   privileged or redacted.  For example, after Kaye referred the 2002 Anonymous

22   Letter to De Anda for follow up, De Anda replied to Kaye by email (undated as

23   produced).[11]  De Anda wrote, in pertinent part:

24              I've received your anonymous letter originally sent to

25              Bob Eckert regarding Carter Bryant and "Bratz".  I'm

26

27   [9] Hurwitz Decl. Ex. 10 (M0075011).

     [10] Hurwitz Decl. Ex. 11 (M0075231).

28   [11] Hurwitz Decl. Ex. 4.

MGA AND BRYANT'S JOINT MOTION TO
COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT ___ PAGE ___

1    aware of the situation and have been working on it for

2    months.  My frustration in this matter was the genesis of

3    [REDACTED] and that is now in the hands of Robert

4    Normile.  The truth of the matter is that Carter Bryant did

5    work for Mattel, however [REDACTED] according to

6    outside attorneys.  [REDACTED]  McShane has been

7    [REDACTED]

8    While the email references Mattel counsel Robert Normile and unspecified

9    outside attorneys, one cannot discern from the document or the privilege log

10   whether the redacted information is in fact privileged.  Indeed, the text of the email

11   suggests that it is not.

12   **III.    ARGUMENT**

13         A.    **Mattel Should Be Ordered to Produce Any Additional Responsive**
14               **Documents and Attest to Completeness of its Production.**

15   To date, Mattel has not produced any documents that reflect any conclusions

16   or findings from the March 2002 or August 2002 investigations.  Given the

17   apparent thoroughness of the investigations and their importance to Mattel, MGA

18   and Bryant have reason to believe that such documents were created and retained in

19   Mattel's files.  In addition to those documents which clearly reference the existence

20   of additional files, emails, and videotape that Mattel has not produced, Mattel's

21   redactions of De Anda's documents indicate that Mattel General Counsel Normile

22   and other lawyers for Mattel were involved in, and communicated about, the

23   findings of De Anda's investigation.  *See* De Anda email to Kaye stating "that is in

24   the hands of Robert Normile," and the redacted entry from De Anda's

25   chronological investigation record from what appears to be March or April 2002.[12]

26   Despite these indications of communication with lawyers, Mattel's Supplemental

27   Privilege Log does not appear to list any 2002 investigation documents withheld

28   ───────────────
     [12]  Hurwitz Decl. Ex. 3.

1   from the files of Normile or any other Mattel counsel.

2       Given Mattel's prior efforts to stonewall discovery of any facts concerning

3   the investigation begun in March 2002, MGA requested that Mattel confirm that it

4   had produced or logged every document concerning the investigations that it found

5   after reasonable search.  Mattel however refused to confirm, which, coupled with

6   references to never-before-seen files and videotape footage contained in the

7   investigative documents themselves, only increases MGA's suspicion about the

8   completeness of Mattel's production.  Accordingly, Mattel should be required to

9   confirm to the Court and MGA that it has complied with the order granting the

10   prior motion to compel by producing or logging all responsive documents on the

11   investigation issue that could be found after diligent search, and if it has not

12   already, to produce any additional responsive documents.  *See Andritz Sprout-*

13   *Bauer v. Beazer East,* 174 F.R.D. 609, 630 (M.D. Pa. 1997) (ordering party to

14   "produce any additional documents responsive to [party's] outstanding document

15   requests and certify that to the best of its knowledge and information, the

16   documents produced represent all records responsive to [party's] requests);

17   *Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* NO. 90

18   CIV. 7811 (AGS), 1994 WL 698298 at *2 (S.D.N.Y. Dec 13, 1994) (granting

19   application for an order requiring [non-party] to certify the completeness of its

20   production).

21      **B.**   **Mattel Has Not Established That Investigation Documents**
22              **Withheld Or Redacted Are Privileged.**

23       MGA also challenges Mattel's claims of privilege as to those few

24   investigation documents produced with redactions or withheld under claims of

25   privilege.  The challenged documents are numbers 29, 32-33, 35, 50-51, and 57 on

26   Mattel's Supplemental Privilege Log.  In addition, MGA challenges Mattel's right

27   to redact in full pages M0074319-M0074326, M0074476.  None of these pages are

28   even listed on Mattel's Supplemental Privilege Log.

9

MGA AND BRYANT'S JOINT MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 1 PAGE 13

1    Mattel seeks to withhold these documents as attorney client privileged and
2    protected by the attorney work product doctrine.[13] The attorney-client privilege
3    protects confidential communications between an attorney and client made *only for*
4    *the purpose of securing legal advice from the attorney. See Weatherford v. Bursey*,
5    429 U.S. 545, n. 4 (1977) (citing *Fisher v. United States*, 425 U.S. 391, 402-405
6    (1976)); *United States v. Austin*, 416 F.3d 1016, 1022 (9th Cir. 2005). It does not
7    shield evidence from discovery merely because such evidence was transmitted, at
8    some point, to an attorney. *See  D.I. Chadbourne, Inc. v. Sup. Court of the City and*
9    *County of San Francisco*, 60 Cal. 2d 723, 737 (Cal. 1964) (employee witness to
10   matters then communicated to corporation's attorneys "is an independent witness;
11   and the fact that the employer requires him to make a statement for transmittal to
12   the latter's attorney does not alter his status or make his statement subject to the
13   attorney-client privilege.").

14   The work-product doctrine serves to guard against divulging the attorney's
15   strategies and legal impressions. *Upjohn Co. v. U.S.*, 449 U.S. 383, 401 (1981). It
16   does not shield the underlying facts from discovery simply because the party's
17   attorney later learned those facts. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262,
18   266 (10th Cir. 1995) ("Because the work product doctrine is intended only to guard
19   against divulging the attorney's strategies and legal impressions, it does not protect
20   facts concerning the creation of work product or facts contained within work
21   product."); *Nutmeg Insurance Co. v. Atwell, Vogel & Sterling, et al.*, 120 F.R.D.
22   504, 509 (W.D. La. 1988) ( "courts have consistently held that the work-product
23   concept furnishes no shield against discovery . . . of the facts that the adverse
24   party's lawyer has learned, or the persons from whom he has learned such facts, or
25   the existence or non-existence of documents…"). Moreover, evidence is not
26   protected by the work-product doctrine unless it was prepared "in anticipation of
27
28   ---
     [13]  Mattel claims only attorney client privilege, not work product, for Items 32 and 50.

10

MGA AND BRYANT'S JOINT MOTION TO
COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 1   PAGE 14

 

1   litigation." Fed. R. Civ. P. 26(b)(3); *Martin v. Valley Nat. Bank of Arizona*, 140

2   F.R.D. 291, 304 (S.D.N.Y. 1991) ("It follows, then, that if a party prepares a

3   document in the ordinary course of its business, it will not be protected even if the

4   party is aware that the document may also be useful in the event of litigation."). As

5   the court explained in *Binks Mfg. Co. v. National Presto Indus., Inc.*, "[a] more or

6   less routine investigation of a possibly resistable claim is not sufficient to immunize

7   an investigative report developed in the ordinary course of business." 709 F.2d

8   1109, 1119 (7th Cir. 1983). Factual work-product, as contrasted to opinion work

9   product may be discoverable upon a showing of substantial need for the

10  information sought. *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982).

11        Mattel, as the party asserting the privilege, must make a prima facie showing

12  that the privilege protects the information withheld. *In re Grand Jury Investigation*,

13  974 F.2d 1068, 1071 (9th Cir. 1992). "To facilitate its determination of privilege, a

14  court may require 'an adequately detailed privilege log in conjunction with

15  evidentiary submissions to fill in any factual gaps." *United States v. Construction*

16  *Prods. Research*, 73 F.3d 464, 473 (2d Cir. 1996); *Bowne, Inc. v. AmBase Corp.*,

17  150 F.R.D. 465 (S.D.N.Y. 1993) (log should "identify each document and the

18  individuals who were parties to the communications, providing sufficient detail to

19  permit a judgment as to whether the document is at least potentially protected from

20  disclosure. Other required information, such as the relationship between . . .

21  individuals not normally within the privileged relationship, is then typically

22  supplied by affidavit or deposition testimony.")

23        Mattel has not carried its burden to make a prima facie showing of privilege

24  here. Mattel's Supplemental Privilege Log does not assert that the communications

25  were made for the purpose of securing legal advice, or that any of the claimed work

26  product was prepared in anticipation of litigation. The log does not even identify

27  the former employees who are the subjects of these withheld or redacted

28  documents. The Discovery Master advised Mattel to substantiate its privilege

11

MGA AND BRYANT'S JOINT MOTION TO
COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT  1  PAGE 15

1   claims with supporting declarations that would identify the purpose of the

2   communications.  Mattel has not provided any supporting declarations or any

3   evidence to support its privilege and work product claims.

4        Accordingly, MGA requests that the Discovery Master order Mattel to

5   produce these documents it claims to be privileged for *in camera* review and a

6   determination of whether any of the privilege claims are valid.  As the Ninth Circuit

7   recently stated in discussing in camera review of privileged documents in the

8   context of the crime-fraud exception: "because in camera review 'does not have the

9   legal effect of terminating the privilege,' and is thus 'a smaller intrusion' on the

10  attorney-client privilege than outright disclosure, a 'lesser evidentiary showing is

11  needed to trigger in camera review' than would be necessary 'ultimately to

12  overcome the privilege.' *In re Napster, Inc. Copyright Litigation*,-- F.3d ---, 2007

13  WL 754748 at *11 (9th Cir Mar 14, 2007) (discussing *United States v. Zolin*, 491

14  U.S. 554, 572 (1989).

15  **C.    The WWBD Document Is Not Entitled to Attorneys Eyes Only**

16  **Protection.**

17       Finally, Mattel produced a document entitled "WWBD: What Would Brawer

18  Do?" and designated the document as "Attorneys Eyes Only" under the terms of the

19  protective order entered in this action.  The document appears to reflect what

20  certain Mattel employees thought Brawer would do after leaving Mattel and starting

21  work at MGA.[14]

22       The protective order provides for two levels of confidentiality:

23  "Confidential" and "Attorneys Eyes Only".  The AEO designation is intended to

24  provide highest level of protection for sensitive documents, but is limited under the

25  Protective Order to "trade secrets" and "other confidential commercial information"

26  such as "non-public designs and drawings which the disclosing Party or nonparty in

27  good faith believes will result in competitive disadvantage or harm if disclosed to

28  [14] *See* Hurwitz Decl. Ex. 8.

MGA AND BRYANT'S JOINT MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT _1_ PAGE _16_



1   another Party to this Action without restriction upon use or further disclosure."[15]

2   The WWBD document does not qualify for such protection. A designation

3   of "CONFIDENTIAL" is sufficient to protect any sensitive information contained

4   in the documents, without impeding MGA's ability to develop its case. MGA

5   needs to show this document to MGA and its employee Brawer to defend against

6   Mattel's charge that Brawer stole confidential Mattel information and used it for the

7   benefit of MGA.

8   MGA and Mattel met and conferred in person on March 8, 2007 about the

9   designation of this document and others. Mattel was not willing to change the

10   designation for this particular document.[16] MGA requests that the Discovery

11   Master order that the designation be changed pursuant to the protective order.

12   A party seeking to protect documents under a protective order must show

13   "good cause" justifying that protection. *See Verizon California Inc. v. Ronald A.*

14   *Katz Technology Licensing, L.P.*, 214 F.R.D. 583, 586 (C.D. Cal. 2003). A party

15   may show good cause by identifying, "for each particular document it seeks to

16   protect...that specific prejudice or harm will result if no protective order is

17   granted." *Foltz v. State Farm Mutual Automobile Ins. Co.*, 331 F.3d 1122, 1130

18   (9th Cir. 2003); *see also Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 308 (N.D. Cal.

19   2005) (applying *Foltz* to documents produced pursuant to a stipulated protective

20   order); *Beckman Industries Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)

21   ("Broad allegations of harm, unsubstantiated by specific examples or articulated

22   reasoning, do not satisfy the Rule 26(c) test."). "A party who has never made a

23   good cause showing under Fed. R. Civ. 26(c) justifying initial protection of

24   [disputed documents] may not rely solely on the protective order to justify refusal

25   when there is a reasonable request for disclosure." *Verizon California*, 214 F.R.D.

26

27   [15] *See* Stipulated Protective Order; And Order in Case No. CV 04-9059 NM (RNBx) filed January 4, 2005.

28   [16] *See* Letter from Jennifer Glad to Timothy Alger dated March 9, 2007 (Hurwitz Decl. Ex. 12.)

MGA AND BRYANT'S JOINT MOTION TO
COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 1 PAGE 17

1   at 586 (internal quotations omitted), *citing Beckman Industries*, 966 F.2d at 476.

2   **IV.   CONCLUSION**

3       Mattel's conduct here is consistent with its overarching resistance to MGA

4   and Bryant's efforts to discover when and what Mattel first knew about Bryant's

5   role in the creation of Bratz and his involvement with MGA. These documents are

6   relevant to both MGA and Bryant's affirmative defenses and the actual merits of

7   Mattel's claims. The Discovery Master has already ruled that Mattel must produce

8   these responsive documents. The Discovery Master should grant MGA and

9   Bryant's requests for additional relief and order Mattel to:

10       (1) produce all files and related documents referenced by document

11   M0075011;

12       (2) produce a copy of the security camera videotape from which the

13   photograph M0075231 was taken;

14       (3) produce all emails that investigators captured during their searches of

15   Mattel employees' email inboxes;

16       (4) certify that it has produced all responsive documents concerning its

17   investigations of Carter Bryant, MGA and/or the origins of Bratz;

18       (5) produce documents identified on Supplemental Privilege Log numbers

19   29, 32-33, 35, 50-51, and 57 and pages M0074319-M0074326, and M0074476 for

20   *in camera* review to determine whether the documents are privileged; and

21       (6) de-designate the WWBD document that Mattel designated as "Attorneys

22   Eyes Only" to "Confidential".

23

24

25

26

27

28

MGA AND BRYANT'S JOINT MOTION TO
COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 1  PAGE 18

1    Dated:  April 10, 2007                    O'MELVENY & MYERS LLP

2                                              _Diana Torres (yly)_

3                                              By: Diana Torres
                                               Attorneys for MGA Entertainment, Inc.
4
                                               LITTLER MENDELSON
5
                                               _Keith A. Jacoby (yly)_
6
                                               By: Keith A. Jacoby
7                                              Attorneys for Carter Bryant

8

9    LA2:827054.4

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          15

EXHIBIT __1__ PAGE __19__

## PROOF OF PERSONAL SERVICE

I am a citizen of the United States and employed in the County of Los Angeles, State of California, by Worldwide Network, Inc., whose address is 350 South Figueroa Street, Suite 299, Los Angeles, CA 90071, and which has been employed by a member of the bar of this Court at whose direction the service was made. I am over the age of eighteen years and not a party to the within action. On April 10, 2007, I personally served the following:

**MGA AND BRYANT'S JOINT MOTION TO (1)  COMPEL PRODUCTION OF CERTAIN DOCUMENTS WITHHELD UNDER CLAIM OF PRIVILEGE, (2)  ATTEST TO THE COMPLETENESS OF ITS FEBRUARY 2007 PRODUCTION OF MARCH 2002 INVESTIGATION DOCUMENTS, AND (3) DE-DESIGNATE ATTORNEY'S EYES ONLY DOCUMENT**

**DECLARATION OF DAVID HURWITZ IN SUPPORT OF MGA AND BRYANT'S JOINT MOTION TO COMPEL MATTEL TO (1) PRODUCE ADDITIONAL RESPONSIVE DOCUMENTS OR ATTEST TO THE COMPLETENESS OF ITS FEBRUARY 2007 PRODUCTION OF MARCH 2002 INVESTIGATION DOCUMENTS; (2) PRODUCE CERTAIN DOCUMENTS WITHHELD UNDER CLAIM OF PRIVILEGE; AND (3) DE-DESIGNATE AN ATTORNEYS EYES ONLY DOCUMENT**

**APPLICATION OF MGA ENTERTAINMENT, INC. FOR LEAVE TO FILE CERTAIN DOCUMENTS UNDER SEAL; AND [PROPOSED] ORDER**

by delivering a copy thereof to the office of the following, and either handing the copy to or leaving it with _____ of the office thereof:

> John B. Quinn
> Quinn Emanuel Urquhart Oliver & Hedges, LLP
> 865 South Figueroa Street
> Los Angeles, California 90071

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on April 10, 2007, at Los Angeles, California.

SIGNATURE: _____

PRINTED NAME: _____

EXHIBIT __1__ PAGE __26__

## PROOF OF SERVICE BY FEDERAL EXPRESS/OVERNIGHT DELIVERY

I am a citizen of the United States and employed in Los Angeles County, California, at the office of a member of the bar of this Court at whose direction this service was made. I am over the age of eighteen years and not a party to the within action. My business address is 400 South Hope Street, Los Angeles, California 90071-2899. On April 10, 2007, I served the following:

**MGA AND BRYANT'S JOINT MOTION TO (1) COMPEL PRODUCTION OF CERTAIN DOCUMENTS WITHHELD UNDER CLAIM OF PRIVILEGE, (2) ATTEST TO THE COMPLETENESS OF ITS FEBRUARY 2007 PRODUCTION OF MARCH 2002 INVESTIGATION DOCUMENTS, AND (3) DE-DESIGNATE ATTORNEY'S EYES ONLY DOCUMENT**

**DECLARATION OF DAVID HURWITZ IN SUPPORT OF MGA AND BRYANT'S JOINT MOTION TO COMPEL MATTEL TO (1) PRODUCE ADDITIONAL RESPONSIVE DOCUMENTS OR ATTEST TO THE COMPLETENESS OF ITS FEBRUARY 2007 PRODUCTION OF MARCH 2002 INVESTIGATION DOCUMENTS; (2) PRODUCE CERTAIN DOCUMENTS WITHHELD UNDER CLAIM OF PRIVILEGE; AND (3) DE-DESIGNATE AN ATTORNEYS EYES ONLY DOCUMENT**

**APPLICATION OF MGA ENTERTAINMENT, INC. FOR LEAVE TO FILE CERTAIN DOCUMENTS UNDER SEAL; AND [PROPOSED] ORDER**

by putting a true and correct copy thereof together with an unsigned copy of this declaration, in a sealed envelope, with delivery fees paid or provided for, for delivery the next business day to:

> Sandra Chan
> Case Manager for Judge Infante
> JAMS
> Two Embarcadero Center
> Suite 1500
> San Francisco, CA 94111

and by placing the envelope for collection today by the overnight courier in accordance with the firm's ordinary business practices. I am readily familiar with this firm's practice

EXHIBIT 1 PAGE 21

1   for collection and processing of overnight courier correspondence.  In the ordinary course

2   of business, such correspondence collected from me would be processed on the same day,

3   with fees thereon fully prepaid, and deposited that day in a box or other facility regularly

4   maintained by Airborne Express, which is an overnight carrier.

5           I declare under penalty of perjury under the laws of the United States that

6   the above is true and correct.  Executed on April 10, 2007, at Los Angeles, California.

7

8

9                                         Maria Silva

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1   PAGE 22

**EXHIBIT 2**

CONFORMED COPY
LODGED

FILED

2007 MAY 16  PM 1: 59

2007 MAY 16  PM 2: 00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY _____

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY _____

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7              UNITED STATES DISTRICT COURT

8             CENTRAL DISTRICT OF CALIFORNIA

9                    EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12          Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                     ORDER GRANTING MGA AND
                                           BRYANT'S JOINT MOTION TO
16                                         COMPEL PRODUCTION OF
                                           CERTAIN DOCUMENTS WITHHELD
17                                         UNDER CLAIMS OF PRIVILEGE FOR
                                           IN CAMERA REVIEW, AND
18                                         DENYING MOTION TO ATTEST TO
                                           THE COMPLETENESS OF
19  CONSOLIDATED WITH                      FEBRUARY 2007 PRODUCTION
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22                             INTRODUCTION

23      On April 10, 2007, MGA Entertainment, Inc. ("MGA") and Carter Bryant ("Bryant")

24  submitted a joint motion to compel Mattel, Inc. ("Mattel") to (1) produce certain documents

25  withheld under claims of privilege for an *in camera* review, (2) certify that it has produced "all

26  responsive documents concerning its investigations of Carter Bryant, MGA and/or the origins of

27

28  Bryant v. Mattel, Inc.,                                                      1
    CV-04-09049 SGL (RNBx)

EXHIBIT __2__ PAGE __23__

1    Bratz" (Joint Motion at 14:4-7) , and (3) de-designate an "Attorney's Eyes Only" document. On

2    April 17, 2007, Mattel submitted an opposition brief, and on April 24, 2007, Mattel submitted a

3    reply brief.

4       In its opposition brief, Mattel indicates that it does not believe an *in camera* review is

5    necessary, but does not object to the procedure. Accordingly, Mattel is ordered to submit the

6    documents in dispute for an *in camera* review. Mattel also states that it has withdrawn its

7    "Attorney's Eyes Only" designation for the document in dispute.

8       The only remaining issue is whether Mattel should be ordered to certify that it has

9    produced all "responsive" documents concerning its investigations of Carter Bryant, MGA and/or

10    the origins of Bratz, including what the parties refer to as the "March 2002" investigation. The

11    motion was heard on May 11, 2007. For the reasons set forth below, the motion for an order

12    compelling Mattel to provide a certification is denied.

13                    <u>BACKGROUND</u>

14       In October of 2004, Mattel produced to Bryant an anonymous letter received by Mattel's

15    CEO, Robert Eckert, in August 2002, alleging that Bryant had stolen the idea for Bratz from

16    Mattel (the "2002 Anonymous Letter"). In January of 2007, MGA and Bryant filed a motion to

17    compel Mattel to, among other things, produce or identify on a privilege log evidence related to

18    any investigation that occurred as a result of Mattel receiving the 2002 Anonymous Letter. The

19    motion was granted, and Mattel was ordered "to produce or identify on a privilege log all

20    documents relating to the 2002 Anonymous Letter and investigation that are responsive to

21    Bryant's Request Nos. 3, 5, 15, 17, 18, 28, 31, 35 and 36." Order Granting MGA and Bryant's

22    Joint Motion to Compel The Production Of Documents And Deposition 30(b)(6) Witness at p.8

23    ("Order").

24       In compliance with the Order, Mattel produced documents from a file from the Global

25    Security department related to the 2002 Anonymous Letter. Mattel also produced non-privileged

26    portions of files from Mattel's Global Security department pertaining to three additional matters:

27

28

EXHIBIT 2 PAGE 24

1    (1) a file related to a former Mattel executive, Ron Brawer, who departed for MGA in late 2004;

2    (2) a file from the June 2003 time frame related to MGA's alleged procurement of confidential

3    information; and (3) a file related to inquiries that Global Security made in March 2002 about

4    whether Carter Bryant had stolen a Mattel doll project called Toon Teens. Mattel also provided a

5    privilege log identifying withheld or redacted documents.

6         After reviewing Mattel's production, MGA and Bryant concluded that Mattel's

7    investigation was far broader than the 2002 Anonymous Letter. In particular, MGA and Bryant

8    contend that Mattel's document production revealed for the first time that "Mattel's head of

9    security De Anda had conducted a full-blown investigation of Bryant, MGA, and MGA CEO

10   Isaac Larian – complete with undercover surveillance and social security number checks of Mr.

11   Larian and his family – beginning in March 2002 when Mattel received a claim from two of its

12   employees, Evelyn Viohl and Ivy Ross, that MGA had reportedly hired a number of former

13   Mattel employees and was allegedly manufacturing products that appeared to be Mattel designs."

14   Joint Motion at 5:27-6:6. MGA and Bryant believe that Mattel "stonewalled" producing the

15   documents from the March 2002 time frame because those documents are allegedly highly

16   relevant and strongly support their defenses based upon laches and the statute of limitations. Id.

17   at 1:18-2:2. Prior to the production of the Global Security files, MGA and Bryant were basing

18   their laches and statute of limitations defense on the 2002 Anonymous Letter, which Mattel

19   received in August of 2002. Now that they have reviewed the Global Security files, MGA and

20   Bryant apparently intend to argue that March 2002 is the key time frame for evaluating their

21   laches and statutes of limitations defenses.

22        In addition, MGA and Bryant became suspicious that Mattel's document production was

23   incomplete because it did not include any "findings by any Mattel employee or agent as to when

24   Mattel first learned or what Mattel first knew concerning Mr. Bryant's involvement with MGA or

25   the Bratz line of dolls." Joint Motion at 2:6-8. MGA and Bryant also suspect that Mattel's

26   production is incomplete because some of the documents that were produced referenced the

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    3

EXHIBIT __2__ PAGE __25__

1    existence of other documents – a videotape and electronic files – that were not produced. Further,

2    MGA and Bryant contend that one of Mr. De Anda's e-mails regarding the 2002 Anonymous

3    Letter referred to Mattel's General Counsel, Robert Normile, and yet, Mattel did not produce or

4    identify on a privilege log any documents from Mr. Normile's files.

5         Because MGA and Bryant are now aware that Mattel's investigation was broader than the

6    2002 Anonymous Letter and are concerned that Mattel's document production remains

7    incomplete, MGA and Bryant move to compel Mattel to certify that it has produced "all"

8    responsive documents concerning its investigations of Carter Bryant, MGA and/or the origins of

9    Bratz." Joint Motion at 14:16-17. In particular, MGA and Bryant seek certification on two

10   points: (1) that Mattel has produced or identified on a privilege log documents concerning the

11   2002 investigation(s) of Carter Bryant; and (2) that Mattel "has searched the files of all custodians

12   likely to have responsive documents including personnel in its Legal and Human Resources

13   departments as well as outside private investigators (not just Global Security), and that it

14   produced or logged all responsive documents concerning these investigations within its

15   possession, custody, or control." Joint Reply at 1:9-23.

16        Mattel opposes the joint motion to compel a certification for a number of reasons. First,

17   Mattel represents that it "has produced more than 75,000 pages of documents that it has located

18   pursuant to a good faith, diligent search, and it continues to collect and produce documents on a

19   rolling basis." Opposition at 5:8-9. Second, Mattel contends that the Order requires production

20   of only non-privileged documents related to any investigation into the 2002 Anonymous Letter,

21   and not documents related to any other "investigations." Id. at 1:8-2:15.

22        Third, Mattel contends that the March 2002 "investigation"[1] is not relevant to MGA and

23   Bryant's laches and statute of limitations defenses. According to the declaration of Mr. De Anda,

24   in March of 2002, he "followed up on information that Carter Bryant might have misappropriated

25   ─────────────

26   [1] Mattel uses the term "inquiries" instead of "investigations" to describe Global Security's activities. See Mattel's Opposition at 1:9; 2:4.

27

28

EXHIBIT 2 PAGE 24

1  'Toon Teens,' a doll line created by Mattel designer Lily Martinez, after Mr. Bryant left Mattel."

2  De Anda Decl. at ¶4.  Mattel reasons that because it has not asserted any claim for infringement

3  of Toon Teens, the March 2002 "investigation" is not relevant to the laches and statute of

4  limitations defenses.  Mattel acknowledges, however, that Toon Teens are relevant to other

5  claims.  Mattel also represents that it "has no issue at this point in turning over relevant, non-

6  privileged Toon Teens documents that it locates after a reasonable search," and that it has been

7  producing such information.  Id.

8          Fourth, Mattel represents that the documents contained or referenced in the Global

9  Security files (including the videotape and electronic files) have been produced or identified on a

10  privilege log.  Mattel's Opposition at 6; and Alger Decl. at ¶¶4-5.  Lastly, Mr. De Anda represents

11  that "no one in Mattel Global Security prepared written 'findings or conclusions' for these four

12  matters."  De Anda Decl. at ¶8.

13                                   DISCUSSION

14          As a preliminary matter, the Federal Rules of Civil Procedure do not include any

15  procedure for filing a motion to compel the type of certification MGA and Bryant now seek.

16  Instead, the Federal Rules of Civil Procedure provide for other means of addressing discovery

17  abuses, including Rule 26 and Rule 37.

18          Furthermore, the requested relief is beyond the scope of the January 2007 Order.  MGA

19  and Bryant were unaware of the March 2002 "investigation" at the time they filed their motion to

20  compel in January of 2007.  The focus of MGA and Bryant's motion was on whether Mattel must

21  produce evidence related to any investigation that occurred as a result of Mattel receiving the

22  August 2002 Anonymous Letter.  The motion was granted, and Mattel was ordered "to produce or

23  identify on a privilege log all documents relating to the 2002 Anonymous Letter and investigation

24  that are responsive to Bryant's Request Nos. 3, 5, 15, 17, 18, 28, 31, 35 and 36."  Order at pp. 6-8.

25  Neither the prior motion nor the Order specifically addressed whether Mattel was required to

26  produce documents related to the March 2002 "investigation" or any other investigations.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              5

EXHIBIT 2  PAGE 27

1    Therefore, the Order does not provide any basis for ordering Mattel to provide any certification

2    related to the March 2002 "investigation" or any other investigations.

3        Moreover, a certification is unnecessary because Mattel has now explained all of the

4    alleged deficiencies in its document production.  Mattel represents that the documents contained

5    or referenced in the Global Security files (including the videotape and electronic files) have been

6    produced or identified on a privilege log.  Mattel's Opposition at 6; and Alger Decl. at ¶¶4-5.  In

7    addition, Mr. De Anda represents that "no one in Mattel Global Security prepared written

8    'findings or conclusions' for these four matters."  De Anda Decl. at ¶8.  Mattel also represents

9    that it has "no issue at this point in turning over relevant, non-privileged Toon Teens documents

10   that it locates after a reasonable search," and that it has been producing such information.

11   Mattel's Opposition at 6:19-27.  Mattel also represents that its document production is ongoing.

12       In addition, during the hearing, Mattel's counsel represented that Mattel has conducted a

13   reasonable search of its Human Resource Department, the Legal Department, and outside private

14   investigators retained by Mattel or its counsel, and has produced all documents related to the

15   March 2002 investigation that are responsive to MGA and Bryant's document requests.[2]

16   //

17   //

18   //

19   //

20

21

22

23

24

25       [2] Although the motion is captioned as one for certification, MGA stated at the hearing that it seeks, in the
     alternative, an order compelling further production of documents related to the March 2002 "investigation."  Because

26   Mattel has explained the alleged deficiencies in its production and the scope of its search for responsive documents,
     MGA's request for an order compelling further production of documents is denied.

27

28

EXHIBIT _2_ PAGE _28_

<u>CONCLUSION</u>

For the reasons set forth above, Mattel is ordered to submit the documents in dispute for an *in camera* review no later than May 18, 2007, and the motion for a certification is denied.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: May  15, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 2 PAGE 29

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MGA AND BRYANT'S JOINT MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE FOR IN CAMERA REVIEW AND DENYING MOTION TO ATTEST TO COMPLETENESS OF FEBRUARY 2007 PRODUCTION in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT _2_ PAGE _30_

**EXHIBIT 3**

CONFORMED COPY

FILED

2007 JUL 20 PH 3: 57

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT CALIF.
RIVERSIDE

BY

1   Hon. Edward A. Infante (Ret.)
2   JAMS
    Two Embarcadero Center
3   Suite 1500
    San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7               UNITED STATES DISTRICT COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9                     EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12          Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                     **ORDER RE IN CAMERA REVIEW OF
                                           GLOBAL SECURITY FILES**

16

17  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21

22                   I. INTRODUCTION

23      On May 15, 2007, Mattel, Inc. ("Mattel") submitted for *in camera* review fourteen

24  documents from Mattel's Global Security files that were redacted or withheld from production on

25  the grounds of the attorney-client privilege and the work product doctrine.  Mattel also submitted

26  a privilege log and the declaration of Richard De Anda in support of its claims of privilege.

27  Having reviewed the documents, privilege log and declaration of Mr. De Anda, Mattel's claims of

28
    Bryant v. Mattel, Inc.,                                                     1
    CV-04-09049 SGL (RNBx)

EXHIBIT 3   PAGE 31

1  privilege are sustained as to privilege log entries 29, 33, 35, 51, 57, 63, 64, 65, 66, 67, 68, and 69,

2  and overruled as to privilege log entries 32 and 50..

3  II. DISCUSSION

4  A. Claims Based Upon Work Product Doctrine

5      Although Mattel withheld the disputed documents based upon both the attorney-client

6  privilege and work product doctrine, Mr. De Anda's declaration addresses only the elements of

7  the attorney-client privilege. He does not assert that any of the fourteen documents in dispute

8  were prepared in anticipation of litigation. Decl. of Mr. De Anda at ¶7. Therefore the claims of

9  privilege based upon the work product doctrine are overruled as to all of the fourteen documents

10 in dispute.

   B. Claims Based Upon Attorney-Client Privilege

11     Mattel claims that each of the fourteen documents at issue is protected by the attorney-

12 client privilege. The attorney-client privilege protects an attorney's communication of legal

13 advice to his client, as well as the client's communication of information to the attorney "to

14 enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390

15 (1981). The protection extends only to communications; however, it does not extend to the facts

16 underlying privileged communications. Id. at 395-96. The Ninth Circuit has described the

17 elements of the attorney-client privilege as follows: "(1) When legal advice of any kind is sought

18 (2) from a professional legal adviser in his or her capacity as such, (3) the communications

19 relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance,

20 permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the

21 protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir.2002). The party

22 asserting the privilege has the burden of establishing that the privilege applies to a particular

23 document or set of documents. In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir.

24 1992).

25     When a party withholds information otherwise discoverable under the Federal Rules of

26 Civil Procedure by claiming that it is privileged or subject to protection as trial preparation

27 material, "the party shall make the claim expressly and shall describe the nature of the documents,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 3   PAGE 32

1   communications, or things not produced or disclosed in a manner that, without revealing

2   information itself privileged or protected, will enable other parties to assess the applicability of

3   the privilege or protection." Fed.R.Civ.P. 26(b)(5).

4        Mr. De Anda states in his declaration that  privilege log entries 29, 33, 35, 50, 51, 57, 63,

5   64, 65, 66, and 67 "constituted or recorded confidential communications between me and either

6   in-house counsel for Mattel or outside counsel for Mattel in which counsel conveyed to me legal

7   advice." Decl. of Mr. De Anda at ¶7.  A review of the documents confirms Mr. De Anda's

8   representations as to all of these privilege log entries, except entry 50.  Privilege log entry 50 is an

9   "investigative log," which Mattel produced in redacted form. The portion that has been redacted

10  consists of a one line entry which indicates that Mr. De Anda may have had a meeting with

11  certain individuals at Mattel, including Mattel's in-house counsel.  The one line entry does not

12  contain the substance of any communication whatsoever, much less the substance of a

13  confidential attorney-client privileged communication.  Accordingly, Mattel's claims of attorney-

14  client privilege are sustained as to privilege log entries 29, 33, 35, 51, 57, 63, 64, 65, 66, and 67,

     and overruled as to privilege log entry 50.

15       Mr. De Anda states in his declaration that the e-mail identified as privilege log entry 32

16  "was a confidential communication between Mr. Cassidy Park, a Mattel employee, and in-house

17  counsel for Mattel." Decl. of Mr. De Anda at ¶7.  Mattel produced privilege log entry 32 in

18. redacted form.  The redacted portion consists of a single line, "FYI, attached is Mercedeh's

19  resume." Mattel has failed to establish that this single line of text is a confidential attorney-client

20  communication for the purpose of giving or receiving legal advice.  Therefore, Mattel's claim of

21  privilege is overruled as to privilege log entry 32.

22       The last two documents in dispute are privilege log entries 68 and 69.  Mr. De Anda states

23  in his declaration that entries 68 and 69 "are communications from a private investigator to

24  outside counsel for Mattel relating to work that investigator performed at counsel's request."

25  Decl. of Mr. De Anda at ¶7.  There are circumstances under which communications between a

26  client's attorney and a third party who assists the attorney in rendering legal advice are protected

27  by the attorney-client privilege.  See e.g. U.S. v. Kovel, 296 F.2d 918 (2nd Cir. 1961).  It appears

28

EXHIBIT 3   PAGE 33

1   these transmittal letters were communications made for the purpose of giving legal advice.

2   Therefore, Mattel's claims of privilege are sustained as to privilege log entries 68 and 69.

3   IV. CONCLUSION

4       For the reasons set forth above, Mattel's claims of work product are overruled as to all of

5   the fourteen documents in dispute. Mattel's claims of attorney-client privilege are sustained as to

6   privilege log entries 29, 33, 35, 51, 57, 63, 64, 65, 66, 67, 68, and 69, and overruled as to

7   privilege log entries 32 and 50. Mattel shall produce privilege log entries 32 and 50 without

8   redactions within ten 10 days.

9       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

10  Master, Mattel shall file this Order with the Clerk of Court forthwith.

11

12  Dated: July 10 , 2007

13  HON. EDWARD A. INFANTE (Ret.)
    Discovery Master

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 3 PAGE 34

## PROOF OF SERVICE BY E-MAIL

     I, Sandra Chan, not a party to the within action, hereby declare that on July 11, 2007, I served the attached ORDER RE IN CAMERA REVIEW OF GLOBAL SECURITY FILES in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

     I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

     Executed on July 11, 2007, at San Francisco, California.

                                       Sandra Chan

EXHIBIT 3  PAGE 35

**EXHIBIT 4**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
PLAINTIFF, )
)
V. )          NO.  CV 04-9040  SGL (RNBX)
)
MATTEL, INC., A DELAWARE )          (CONSOLIDATED WITH
CORPORATION, )          NO. 04-9059  AND
)          CASE NO.  05-2727)
DEFENDANTS. )
_____)
)
AND CONSOLIDATED ACTIONS. )
_____)

# TRANSCRIPT OF
# TELEPHONIC PROCEEDINGS

# JUNE 19, 2007

REPORTED BY:
EMILY MCCARY
CSR NO. 7584
JOB NO. 07EM059



COURT REPORTERS
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT 4   PAGE 36

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVSION

CARTER BRYANT, AN INDIVIDUAL, )
                              )
                PLAINTIFF,    )
                              )
       V.                     ) CASE NO.
                              )
MATTEL, INC., A DELAWARE      ) CV 04-9049 SGL
CORPORATION,                  ) (RNBX)
                              ) [CONSOLIDATED WITH
             DEFENDANTS.      ) NO. 04-9059 AND
_____) CASE NO. 05-2727]
                              )
AND CONSOLIDATED ACTION(S).   )
_____)

TRANSCRIPT OF TELEPHONIC PROCEEDINGS,
TAKEN BEFORE HON. EDWARD A. INFANTE, AT
865 SOUTH FIGUEROA STREET, TENTH FLOOR,
LOS ANGELES, CALIFORNIA, COMMENCING AT
1:34 P.M., TUESDAY, JUNE 19, 2007,
BEFORE EMILY MCCARY, CSR NO. 7584.

EXHIBIT 4 ___ PAGE 37 ___

```
1
2      BEFORE HON. EDWARD A. INFANTE (TELEPHONICALLY)
3
4      APPEARANCES OF COUNSEL:
5
6      FOR MATTEL, INC.:
7               QUINN EMANUEL URQUHART
                OLIVER & HEDGES, LLP
8               BY:  B. DYLAN PROCTOR, ESQ.
                     TIMOTHY L. ALGER, ESQ.
9               865 SOUTH FIGUEROA STREET
                TENTH FLOOR
10              LOS ANGELES, CALIFORNIA  90017
                (213) 624-7707
11
12
13     FOR MGA ENTERTAINMENT, INC.:
14              O'MELVENY & MYERS, LLP
                BY:  MICHAEL KEATS, ESQ.
15                   MELANIE BRADLEY, ESQ.
                TIMES SQUARE TOWER
16              7 TIMES SQUARE
                NEW YORK, NEW YORK  10036
17              (212) 326-2000
                (TELEPHONICALLY)
18
19
       FOR THE PLAINTIFF:
20
                KEKER & VAN NEST, LLP
21              BY:  MICHAEL H. PAGE, ESQ.
                710 SANSOME STREET
22              SAN FRANCISCO, CALIFORNIA 94111
                (415) 391-5400
23              (TELEPHONICALLY)
24
25
```

EXHIBIT 4 PAGE 38

1    OBVIOUSLY APPEALED SOME SPECIFIC ITEMS.  YOU

2    KNOW, WE'RE NOT LOOKING TO STAY THE WHOLE

3    30(B)(6) ORDER.  WE'VE OBVIOUSLY BEEN PRODUCING

4    30(B)(6) WITNESSES AND THE LIKE AND IDENTIFYING

5    PEOPLE.  THERE ARE A FEW THINGS WE APPEALED ON

6    THAT WE THINK WE HAVE SOME ARGUMENTS, BUT I DON'T

7    KNOW IF -- I DON'T KNOW IF YOU GET COPIES OF THE

8    PAPERS WE'VE FILED BEFORE JUDGE LARSON, BUT,

9    SIMPLY PUT, THE ISSUES ARE RELATING TO WHETHER OR

10   NOT THE COMMUNICATIONS AND DOCUMENTS RELATING TO

11   OUR CONSULTING EXPERT ARE DISCOVERABLE.  AND OUR

12   POSITION IS UNDER THE FEDERAL RULES THOSE KINDS

13   OF THINGS AREN'T.  AND, YOU KNOW, WE'LL JUST --

14   WE'LL JUST DEAL WITH IT.

15          THE OTHER IS SORT OF THE DOCUMENTS

16   AND THE 30(B)(6) WITNESS.  SORRY.  ACTUALLY, I

17   THINK IT'S JUST THE 30(B)(6) WITNESS ON THE

18   QUESTION OF NET WORTH.  AND M.G.A. DOESN'T

19   CALCULATE NET WORTH.  WE DON'T HAVE ANYBODY WHO'S

20   REALLY SORT OF CAPABLE OF DOING IT.  IT WOULD

21   REQUIRE US TO GET AN EXPERT.  AND THAT'S THE KIND

22   OF THING THAT USUALLY IS THE SUBJECT OF EXPERT

23   DISCOVERY, BUT THAT'S ANOTHER ITEM.

24          AND THE LAST THING THAT WE APPEALED

25   WAS THE NOTION THAT WE SHOULD HAVE TO PRODUCE A

EXHIBIT 4  PAGE 39  17

1   30(B)(6) WITNESS WHO WILL GO THROUGH ALL OF PRIOR

2   WITNESS STATEMENTS OF ANY SORT OF M.G.A. -- ANY

3   WITNESSES, YOU KNOW, OF M.G.A. OR OTHERWISE WHO

4   HAVE TESTIFIED ABOUT BRATZ.  AND WE JUST THINK

5   THAT THAT'S JUST A WAY THAT PLAINTIFFS ARE TRYING

6   TO CIRCUMVENT SORT OF THE LIMITATIONS ON THE

7   NUMBER OF DEPOSITIONS.  AND IT'S HARD TO GET

8   SOMEONE UP TO SPEED ON THE KNOWLEDGE OF OTHER

9   PEOPLE'S TESTIMONY.

10          YOU KNOW, THE ORDINARY COURSE WOULD

11  BE TO CONFRONT WITNESSES WITH THEIR PRIOR

12  STATEMENTS IF THEY'RE INCONSISTENT OR OTHERWISE.

13  AND WE JUST DIDN'T SEE A REASON TO DEPART FROM

14  THE ORDINARY COURSE.

15      JUDGE INFANTE:  WELL, I'M NOT HEARING THE

16  APPEAL, SO I DON'T CARE ABOUT DEPOSITIONS.

17      MR. KEATS:  NO, NO, NO.  I UNDERSTAND.  I'M

18  JUST LETTING YOU KNOW THE THINGS WE'RE SEEKING

19  STAYS ON THE 30(B)(6) ORDER ARE MORE LIMITED.

20  THAT'S ALL I'M SAYING.  IT'S LIMITED TO THE STUFF

21  THAT WE HAVE RAISED ON APPEAL.  THAT IS ALL I'M

22  SAYING.

23          I UNDERSTAND THAT THAT'S NOT BEFORE

24  YOU AND THAT'S BEFORE JUDGE LARSON.  AND I THINK

25  THAT'S BEING ARGUED, ACTUALLY, ON THIS COMING

EXHIBIT 4  PAGE 40

**EXHIBIT 5**

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

------------------------------------

CARTER BRYANT, an individual,        )

            Plaintiff,        )

  vs.                                )  No. CV 04-0904

MATTEL, INC., a Delaware             )    (RNBx)   (c/w CV

corporation,                         )    04-9059 & 05-2727)

           Defendant.         )

CONSOLIDATED WITH MATTEL, INC.,      )

V. BRYANT and MGA ENTERTAINMENT,     )

INC., v. MATTEL, INC:                )

------------------------------------

Transcript of Proceedings before

the Honorable Edward A. Infante,

via conference call, commencing at

11:04 A.M., Friday, May 4, 2007,

before Cynthia Manning, CSR 7645.

PAGES 1 - 39

f1a7aa37-288b-49c4-8012-9d052aab6174

EXHIBIT 5 . PAGE 41

Page 2

1    APPEARANCES OF COUNSEL:

2

3        FOR MATTEL, INC.:

4

5            QUINN EMANUEL URQUHART OLIVER & HEDGES

6            BY:   B. DYLAN PROCTOR, ESQ.

7            865 South Figueroa Street, 10th Floor

8            Los Angeles, California 90017

9            213.443.3000

10           dylanproctor@quinnemanuel.com

11

12

13       FOR MGA ENTERTAINMENT, INC:

14

15           O'MELVENY & MYERS LLP

16           BY:   DAVID HURWITZ, ESQ.

17           400 South Hope Street

18           Los Angeles, California 90071

19           213.430.6000

20           dhurwitz@omm.com

21

22

23

24

25

EXHIBIT  5  PAGE 42

Page 3

1    APPEARANCES OF COUNSEL (CONTINUED):

2

3        FOR CARTER BRYANT:

4

5            LITTLER MENDELSON

6            BY: KEITH JACOBY, ESQ.

7                BRIAN ESKIN, ESQ.

8            2049 Century Park East, 5th Floor

9            Los Angeles, California 90067

10           310.553.0308

11           kjacoby@littler.com

12           beskin@littler.com

13

14               -AND-

15

16           KEKER & VAN NEST LLP

17           BY:  MICHAEL H. PAGE, ESQ.

18           710 Sansome Street

19           San Francsico, California 94111

20           415.397.7188

21           mpage@kvn.com

22

23       ALSO PRESENT:  MICHELLE TAKAMOTO, LAW CLERK

24

25

EXHIBIT 5  PAGE 43

1    it was an instruction not to answer and commentary from

2    Mr. Zeller.  And what that does is, coaches these

3    witnesses not to answer my questions.  It wastes my

4    time.  I'm billing now on this case at almost $500 an

5    hour and my client shouldn't have to spend a penny of

6    that money listening to Mr. Zeller berate me, and I just

7    think that the conduct has to stop.

8            JUDGE INFANTE:  Okay.  Thank you very much.

9            Does MGA have anything to add?

10           MR. HURWITZ:  No, Your Honor.

11           JUDGE INFANTE:  Okay.  I'll hear from Mattel's

12   counsel.

13           MR. PROCTOR:  Again, this is B. Dylan Proctor.

14           From Mattel's perspective, nearly all, the vast

15   majority, of the 135 excerpts that Bryant decided to

16   include in his separate statement, in nearly all cases

17   the instructions either should be sustained or, what's

18   much more common, there is no instruction not to answer

19   at all.  Bryant's counsel, I think through his motion

20   papers and at argument today, appears to be trying to

21   make Mattel's conduct appear comparable or, according to

22   him, even worse than Bryant's counsel's conduct at

23   Bryant's deposition.  But that's simply untrue.

24           And the court will recall in the Bryant

25   deposition Mattel included approximately 75 blanket

EXHIBIT ___S___ PAGE ___44___

f1a7aa37-288b-49c4-8012-9d052aab6174

1    instructions not to answer, and Mattel studiously

2    avoided including in the separate statement things like

3    the numerous, many speaking objections and the kinds of

4    things that Bryant is putting at issue in this motion.

5    In his separate statements, even though there are 135

6    separate excerpts, there are only a handful of actual

7    instructions not to answer.  And to fill the void, and

8    to try and make --

9              JUDGE INFANTE:  I don't want to hear --

10             MR. PROCTOR -- paint a picture through

11   numbers --

12             JUDGE INFANTE:  Would you stop for a moment.

13             MR. PROCTOR:  Yes.

14             JUDGE INFANTE:  I don't want to hear another

15   word about the Bryant deposition.

16             MR. PROCTOR:  Fair enough.

17             JUDGE INFANTE:  I am focusing on these two

18   depositions.

19             MR. PROCTOR:  Okay.

20             JUDGE INFANTE:  And there is two issues.  One

21   issue --

22             MR. PROCTOR:  Yes.

23             JUDGE INFANTE:  -- is on a number of occasions

24   you instructed the witness not to answer, and the

25   question is whether that was proper or not for each

EXHIBIT __S__ PAGE 45

**EXHIBIT 6**

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ____    Send ____
Entered ____    Closed ____
JS-5/JS-6 ____    JS-2/JS-3 ____
Scan Only ____    Docketed on CM ____
_____THIS CONSTITUTES NOTICE OF
    ENTRY AS REQUIRED BY FRCP 77(d)

8/29/07

EASTERN DIVISION
BY ____    DEPUTY

# PRIORITY SEND
### & ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES – GENERAL

Case No.    CV 04-09049 SGL (RNBx)                  Date:  August 27, 2007

Title:    CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
=================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Gina L. Guzman                          Theresa Lanza
Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER            ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker, Esq.                     John B. Quinn, Esq.
(morning session only)                  Michael T. Zeller, Esq.
                                        Jon D. Corey, Esq.

ATTORNEYS PRESENT FOR MGA:

Patricia Glaser, Esq.
Diana M. Torres, Esq.

PROCEEDINGS:    **ORDER DENYING MOTION FOR TERMINATING SANCTIONS;
                ORDER DENYING REQUEST FOR INTERLOCUTORY
                APPEAL; ORDER REQUIRING FILING OF AFFIDAVITS RE
                EVIDENCE PRESERVATION**

    This matter is before the Court on MGA's and Carter Bryant's Motion for Terminating
Sanctions, filed on July 24, 2007 (docket #689).  This matter was heard on August 27, 2007, at
which time it was taken under submission.  The Court has considered the moving, opposition, and
reply briefs, as well as the many declarations and other evidence presented by the parties.  The

MINUTES FORM 90                                     Initials of Deputy Clerk __glg__
CIVIL -- GEN                                        Time: 02/52
                        1                           Docket No. 895

EXHIBIT __6__ PAGE __46__

Court has also considered the arguments presented at the August 27 hearing and the sworn testimony given by Michael C. Moore, in-house counsel for Mattel. Although at the hearing the Court indicated it would defer ruling on the present motion pending further filings by all parties regarding their efforts to preserve evidence, upon further reflection the Court sees no reason to delay ruling on the current motion.[1] As set forth below, the Court **DENIES** the motion.

Based on their inherent power to sanction for "abusive litigation practices," district courts may impose sanctions against a party who destroys evidence, including the ultimate sanction of dismissal. Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006). Dismissal is a harsh sanction, which may nonetheless be imposed upon those parties who have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995). However, before imposing the ultimate sanction of dismissal, district courts should consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. Nevertheless, district courts need not make explicit findings regarding each of these factors and, in any event, "a finding of willfulness, fault, or bad faith is required for dismissal to be proper." Leon, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks and citation omitted).

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" Id. at 959 (quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (finding no willful spoliation where documents were destroyed in the routine course of business)). Neither Leon nor Kitsap elaborate on when a party has the "notice" necessary to trigger the duty to preserve evidence. However, in In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1068 (N.D. Cal. 2006), the district court presented a persuasive discussion of the standard, first rejecting an argument that the duty to preserve evidence arises only when litigation is "imminent," and then setting forth a lesser standard. Specifically, the Napster court noted that the duty arose "when a party should have known that the evidence may be relevant to future litigation," and that any such "future litigation" must be "probable," and not merely "possibl[e]." (internal quotation marks and citation omitted).

Keeping in mind these standards, the Court turns to the categories of evidence MGA and Bryant allege that Mattel has despoiled. As articulated by the Court at the hearing on this matter, those categories are (1) Mattel employees' emails, (2) documents maintained on the Zeus document storage system, (3) the delay in producing certain Rule 30(b)(6) witnesses, (4) Carter

---

[1] By the same token, upon further reflection, the Court sees no reason to delay ruling on MGA's request for interlocutory appeal of the present order. See 28 U.S.C. § 1292(b) (stating that certifications for interlocutory appeal should be set forth in the order to be appealed). The Court's ruling on that matter appears infra.

MINUTES FORM 90
CIVIL – GEN

2

Initials of Deputy Clerk __glg_____
Time: 02/52
Docket No. 895

EXHIBIT __6__ PAGE __47__

Bryant's missing phone records, and (5) Carter Bryant's missing time records.

In considering the arguments of the parties regarding when Mattel's duty to begin to preserve evidence arose, the Court determines that November 24, 2003, marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable. On this date, in-house counsel for Mattel received in discovery in an unrelated action a copy of a contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel. This contract appeared to Mattel to violate certain employment agreements executed by Bryant and Mattel, thus giving rise to one of the current consolidated actions. Although prior to this date an internal investigation may have raised a suspicion on Mattel's part that litigation might arise, there was no evidence presented to the Court that Mattel should have known it had a viable claim against Bryant before November 2003. Cf. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court . . . a pleading . . . , an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

The Court heard testimony from Michael C. Moore, in-house counsel for Mattel, regarding the efforts to preserve email communications and other evidence. Counsel for MGA and Bryant cross-examined Mr. Moore at the hearing on this matter. The Court credits his testimony. The efforts Mr. Moore described regarding the preservation of emails is reasonable, and certainly does not amount to spoliation. Moore described communications with specific individuals identified by Mattel as those most likely to have information relevant to the litigation and efforts made to preserve any evidence those individuals had in their custody or control. Emails not otherwise archived from the relevant time period – mostly September and October, 2000 – had already been deleted from Mattel's email servers in accordance with its email retention policies. Mattel cannot be faulted for deleting these emails in the regular course of business before it had notice of its claims against Bryant.

In April, 2005, the current litigation took a dramatic turn, when MGA filed suit against Mattel. At that time, all Mattel employees were instructed to maintain any evidence potentially relevant to the litigation. When that suit was filed, Mattel took action to preserve all of its emails, capturing emails that date back to December, 2004. They retain these backup tapes to this day. MGA and Bryant make much of Mattel's failure to suspend its 90-day auto-delete policy regarding emails, but fail to address two key points: First, Mattel altered only the storage mechanism for its emails, it did not actually delete any emails; and second, Mattel, a number of years ago, informed MGA that it was not planning on suspending its 90-day auto-delete policy, and MGA did not at that time object.

As for the Zeus tapes, there is simply no evidence of spoliation. First and foremost, as the system has been described to the Court, the system is a cumulative file system that continues to accumulate. The system is still in operation, does not have an auto-delete function, and

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __glg_____
Time: 02/52
Docket No. 895

EXHIBIT 4   PAGE 48

information dating back to all relevant time period in this case may be accessed from it. Additionally, Mattel's in-house counsel testified as to the existence of several backup tapes that it can make available to MGA and Bryant. Finally, outside of pure speculation, there is no evidence that anyone has deleted anything from the Zeus system. Although production issues may still remain with respect to these data, preservation of this data, in the Court's view, is simply not an issue based on the record before the Court.

The delay in producing certain Rule 30(b)(6) witnesses is not a proper basis for terminating sanctions in this case. No motions to compel were brought to compel these witnesses's depositions at earlier times, and MGA and Bryant's accusations that the delay in producing them for deposition is part of a cover-up of the destruction of evidence is mere unfounded speculation. Moreover, the Court is mindful that MGA has been found by the discovery master to be guilty of the very same unexcused delay of which it accuses Mattel. See August 14, 2007, J. Infante Order, at 8 and 9 (attached to the Supplemental Proctor Decl. as Ex. 1).

Although Mattel is at a loss to explain the missing phone records from the critical month of October, 2000, there is no evidence that the records were destroyed. Moreover, other evidence presented by Mattel, especially phone records produced by Bryant that show he was in contact with MGA during that time period, suggest that the missing records would not assist Bryant.

The "missing" time records were either never created or were deleted. There is no evidence that the latter occurred. In fact, the only evidence on this point, from Mattel's Rule 30(b)(6) witness, is that although deletion of time records is possible, he was unaware of any instances of that occurring. Artavia Depo. 116, 170-71.

In sum, MGA and Bryant have failed to present any evidence regarding the "willfulness, fault, or bad faith" required to justify the imposition of terminating sanctions. Leon, 464 F.3d at 958. Many of MGA and Bryant's allegations, especially those raised in connection with Mattel's failure to suspend its auto-delete policy (portrayed as a wholesale failure to preserve emails less than 90-days old) and the availability of data from the Zeus system, are nothing more than rhetoric laced with hyperbole. Other allegations, such as Mattel's motive for delaying certain Rule 30(b)(6) depositions, and the destruction of Bryant's October, 2000, phone records and time records, are nothing more than sheer speculation, unsupported by evidence. Although counsel impressed upon the Court MGA's conviction of the righteousness of its cause, such overzealous conviction as witnessed by the Court at the hearing is no substitute for proof.

Accordingly, the Court **DENIES** MGA's and Bryant's Motion for Terminating Sanctions.

At the hearing, counsel for MGA and Bryant requested the Court certify the present order for interlocutory appeal. That request is **DENIED**. Permissive interlocutory appeals are governed by 28 U.S.C. § 1292(b): .

When a district judge, in making in a civil action an order not otherwise

EXHIBIT 6     PAGE 49

appealable under this section, shall be of the opinion that such order involves a
controlling question of law as to which there is substantial ground for difference of
opinion and that an immediate appeal from the order may materially advance the
ultimate termination of the litigation, he shall so state in writing in such order.

Id. Here, there is no "controlling question of law" in controversy. The law is quite settled.
Accordingly, certification for interlocutory appeal of the present order is unwarranted.

As stated at the hearing, the Court **ORDERS** all parties to set forth, in affidavit form, their
preservation efforts and policies with respect to the present litigation on or before September 10,
2007.

**IT IS SO ORDERED**.

MINUTES FORM 90
CIVIL – GEN

5

Initials of Deputy Clerk __glg_____
Time: 02/52
Docket No. 895

EXHIBIT 6    PAGE 50

**EXHIBIT 7**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 8**

CALENDARED

RECEIVED

JAN 1 6 2007

P-Send

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 12 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

FILED

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

          Plaintiff,

v.

MATTEL, INC.,

          Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

    This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

    Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

EXHIBIT 8 PAGE 93

142

1-12

1   resources in creating and/or developing the BRATZ dolls or whether he continued

2   to develop his BRATZ design while still working in Mattel's employ.  In either event,

3   the rights to the BRATZ dolls could become the property of Mattel, either through

4   infringement or through operation of the agreements noted above.  The case was

5   later removed to this Court and was assigned the case number CV-04-9059.  MGA

6   Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to

7   protect its rights to Bratz dolls" that were at stake in the action.  Mattel, Inc. v.

8   Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a

9   significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual

10  property, i.e., the Bratz creations, were decided in the absence of MGA").

11         In the interim, Bryant filed a declaratory judgment action in this Court,

12  seeking for the Court to declare that his BRATZ doll creations did not infringe

13  Mattel's copyright in its Toon Teens products.  See Court's July 18, 2006, Order at

14  3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel

15  products,' . . . the substance of his allegations all address the product 'Toon

16  Teens'").  The declaratory judgment action was assigned the case number CV-04-

17  9049.

18         MGA then filed an action against Mattel in this Court broadening the scope

19  of the controversy beyond that concerned with the ownership rights to the BRATZ

20  doll line.  MGA's complaint asserted various Lanham Act claims and their California

21  state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of

22  competition-by-intimidation and serial copycatting of MGA's products." (Compl.

23  ¶ 7).  In essence, although the prior actions were concerned with ownership in the

24  rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there

25  had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.

26  MGA's complaint did make mention of other products that were affected by Mattel's

27  alleged predatory business practices, but by far the largest portion of its complaint

28  concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

2

EXHIBIT __8__ PAGE __94__

1  line of BRATZ dolls.[1]

2  By Order dated June 19, 2006, the Court consolidated all three cases "for all

3  purposes" as they "involve[d] a number of common issues of law and fact." As the

4  Court later noted in its August 10, 2006, Order: "At its heart, this case asks the

5  question: Who owns the rights to the Bratz dolls?" Resolution of this question lies

6  at the heart of or, at the very least, affects many of the other claims set forth in

7  each of the three respective cases. For instance, even though the allegations in

8  05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ

9  dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot

10  many of those allegations. It is hard to imagine how it is unlawful for a company to

11  thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel

12  owned the rights to the BRATZ dolls, many of the allegations in the 05-2727

13  complaint would become moot. That said, such consolidation did not do away with

14  the distinctions that do exist between the three cases. As the Court highlighted in

15  its consolidation order, when either party files a pleading in the case, "the first

16  paragraph of [that] document . . . shall inform the Court to which case(s) the

17  document relates."

18  On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,

19  04-9049, finding there existed no reasonable apprehension of an imminent

20  copyright infringement claim being filed against him by Mattel based on Mattel's

21  Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The

22  Court's Order was predicated entirely upon counsel for Mattel's representation

23  during oral argument that it "will not maintain that Bratz infringes the copyright in

24  Toon Teens." Owing to this representation, the Court, in dismissing the declaratory

25  judgment action, made clear that any future "claim by Mattel of copyright

26  _____

27  [1] That the marketing of the BRATZ dolls lies at the heart of the issues
between the rival doll makers in the 05-2727 case is best illustrated by the Court's

28  discussion of those allegations in its August 26, 2005, Order, Granting in Part and
Denying Part Mattel's Motion to Strike portions of MGA's complaint.

EXHIBIT  8  PAGE  95

1  infringement based on the Toon Teens product is barred by counsel's

2  representation." July 18, 2006, Order at 4.

3      Presently before the Court is Mattel's request for leave to file an amended

4  complaint in the 04-9059 action. The complaint broadens considerably the nature

5  of the action from its genesis in state court. Whereas before the complaint simply

6  sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7  employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8  claim to the BRATZ doll line), the amended complaint adds five more defendants

9  and nine new legal claims, alleging a wide range of commercial disputes between

10  the rival doll makers that spans three countries. For instance, the amended

11  complaint now contains RICO claims, a misappropriation of trade secrets claim,

12  and various aiding and abetting claims all stemming from allegations that MGA

13  cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14  named as defendants in the amended complaint) or designers (namely, Bryant),

15  and then enticed or encouraged those same individuals to steal various trade and

16  proprietary secrets (be it sales plans, sales projections, customer profiles, or

17  intellectual property) from Mattel and hand them over to MGA before going to work

18  at MGA.

19      Moreover, the amended complaint expands upon the existing breaches of

20  contract and fiduciary duty claims in the original complaint by expanding the

21  universe of former employees (namely, the cherry-picked executives) to whom

22  those claims now apply.

23      Finally, Mattel now makes plain what was always lurking in its original

24  complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25  MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26  Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27  issue in Bryant's declaratory relief action: "The Amended Complaint does not

28  include a claim for infringement of copyrights in Toon Teens, but rather

4

EXHIBIT 8   PAGE 96

1    infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2    Mattel has recently filed copyright registrations with the U.S. Copyright Office

3    claiming ownership in various BRATZ doll design drawings penned by Bryant.

4    A.    **ANALYSIS**

5      Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6    pleading has been served, "a party may amend the party's pleading only by leave of

7    court or by written consent of the adverse party; and leave shall be freely given

8    when justice so requires." With no consent to Mattel's proposed filing proffered by

9    MGA and Bryant, determining whether to grant Mattel leave to file an amended

10    complaint is gauged by looking to the familiar formulation of factors set forth by the

11    Supreme Court in <u>Forman v. Davis</u>:

12
13
14
15
16
17
18
19

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

20    371 U.S. 178, 182 (1962).

21      MGA and Bryant offer the following reasons for denying Mattel leave to

22    amend: (1) Mattel has long known of the factual predicates underlying its copyright

23    and intentional interference claims but delayed in asserting them; (2) the proposed

24    amendment to add the copyright claim and the intentional interference claims

25    (against the new defendants) are futile because they are barred by the applicable

26    statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27    because of its prior public disavowal of an intent to assert such a claim; and (4)

28    MGA and Bryant would incur undue prejudice were the copyright claim added to the

5

EXHIBIT 8 PAGE 97

1  suit because of alleged spoilation of evidence issues involving Mattel's ZEUS

2  computer system used by doll designers at Mattel and its e-mail system.  None of

3  these arguments are persuasive.

4          1.    Awareness of Factual Predicate for Copyright and Intentional

5                  Interference Claims

6        MGA argues that Mattel has long known about the factual predicate for its

7  recently added copyright claim, observing that, "[o]ver four years ago, in August

8  2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant

9  created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'

10  that project — while still employed at Mattel." (MGA Opp. at 9).  Similarly, MGA

11  argues that Mattel has long known of the factual predicate for its intentional

12  interference claim with respect to Bryant's contract given that, "[b]y Mattel's own

13  admission, it learned in November 2003 — more than three years ago — that

14  Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at

15  Mattel." (MGA Opp. at 11-12).

16        At the outset it must be observed that "[m]ere delay in proffering an

17  amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.

18  of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,

19  485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988).  Seizing upon

20  this point of law, Mattel argues that "only in . . . cases" when "granting leave would

21  require discovery to be reopened after summary judgment motions have been filed"

22  has the Ninth Circuit found the denial of leave "justified" based on the passage of

23  time alone. (Reply to MGA Opp. at 3).  That is incorrect.  There is a line of cases

24  from the Ninth Circuit finding that, if a "party seeking amendment knows or should

25  know of the facts underlying the amendment when the original complaint is filed,

26  the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan

27  v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)).  And, recently, the

28  Ninth Circuit upheld the denial of leave to amend based on the passage of time

EXHIBIT 8   PAGE 98

1  even though the requested leave to amend was tendered <u>before</u> the time, as set

2  forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.

3  <u>See</u> <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006).

4  The Ninth Circuit observed that, even when a request for leave to amend is timely

5  under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless

6  still deny the request based on any of the <u>Forman</u> factors. <u>Id.</u> at 951-52. The Ninth

7  Circuit then noted that the issue of untimeliness (regardless of whether the

8  amendment is tendered "within the period of time allotted by the district court in a

9  Rule 16 scheduling order") in seeking to amend can constitute a justification for

10  denying leave to amend if "the moving party knew or should have known the facts

11  and theories raised by the amendment in the original pleading." <u>Id.</u> at 953.

12  Toward that end, the Ninth Circuit observed that "an eight month delay between the

13  time of obtaining a relevant fact and seeking a leave to amend is unreasonable."

14  <u>Id.</u> In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that,

15  even though the moving party had known of the facts prompting the amendment for

16  a long period of time, there still remained eight more months of discovery for the

17  parties to marshal facts against the allegations raised by the amended pleading:

18  "Even though eight months of discovery remained, requiring the parties to scramble

19  and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was

20  tainted, would have unfairly imposed potentially high, additional litigation costs on

21  Dialysist West that could have easily been avoided had AmerisourceBergen

22  pursued its 'tainted product' theory in its original complaint or reply." <u>Id.</u> Thus,

23  absent "a satisfactory explanation" for the delay in amending the complaint, the

24  Court is well within its rights to deny leave to amend. <u>Id.</u>

25  Mattel proffers the following reasons for taking the time that it did before

26  presenting its amended complaint: (1) Acting out of an abundance of caution to its

27  obligations under Rule 11 to present "factual contentions [that] have evidentiary

28  support," Mattel waited until its claims were better supported by evidence

7

EXHIBIT _8_  PAGE _99_

1   uncovered in discovery; and (2) the delay in the proceedings caused by "the year-

2   long stay and the parties' prior jurisdictional disputes" have left the case still in its

3   "nascent stage." (Reply to MGA Opp. at 2, 4).

4       The first reason is not well-founded. Rule 11 specifically allows parties to

5   aver factual allegations that "are likely to have evidentiary support after a

6   reasonable opportunity for further investigation or discovery" so long as the party

7   makes clear in its pleading that its factual contentions on those points are with the

8   caveat that they are based on a good faith belief that further discovery would

9   unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule

10  11 did not stand in the way of Mattel averring the factual contentions it now claims it

11  "merely suspected" as being the case based on the limited information before it.

12  Mattel could have gone ahead and made such suspected factual allegations so

13  long as it caveated those claims with the declaration that it reasonably believed that

14  those allegations would be borne out by further discovery. Perhaps the time by

15  which Mattel could have reasonably believed such allegations would be borne out

16  by further discovery occurred after the dates noted by MGA, but it is hard to fathom

17  that such materialization took three or four years to occur.

18      The second reason would have some merit to it but for the fact that the

19  information that alerted (or should have alerted) Mattel to the existence of its now

20  asserted copyright and intentional interference claims was brought to Mattel's

21  attention well before the case was stayed on May 20, 2005. The stay, therefore,

22  did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the

23  stay does not explain why Mattel waited nearly six months after the stay was lifted

24  on May 16, 2006, to present those claims now.

25      All of that being said, the one thing that gives the Court pause in denying

26  leave based on the tardiness in Mattel's presentation is the lack of any evidence

27  that MGA or Bryant have been prejudiced by the delay.  Delay unconnected to

28  some showing of prejudice, be it prejudice to the parties or disruption in judicial

8

EXHIBIT 8  PAGE 160

1   management of the case, does not suffice to deny granting leave to amend.  The

2   Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3   in an amendment to a complaint, there is no serious prejudice to defendant in

4   allowing the amendment" even if it is made tardily.  Sierra Club, 813 F.2d at 1493.

5   Indeed, the denial of leave was proper in the Dialysist case not simply because of

6   the length of the delay, but because the delay itself was "detrimental" in that it

7   would entail the opposing party to have "unfairly" incurred "potentially high,

8   additional litigation costs" that could have been avoided if the moving party had

9   made clear its intentions earlier.  465 F.3d at 953.

10          Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11  pleadings filed by MGA and Bryant in this case that both have been aware for some

12  time of the factual predicates now underlying Mattel's copyright claim and

13  intentional interference claim.  (See MGA Opp. at 5 ("As Bryant and MGA

14  suspected at the time of filing — and Mattel now concedes by conduct — those

15  deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16  along")(emphasis added)).  The parties have engaged in meaningful discovery

17  regarding many of the facts touched upon by these new claims, be it tracking down

18  experts in various forensic fields or taking depositions of various of the key players

19  to those claims.   In point of fact, in their papers filed with this Court before this

20  present motion, both Bryant and MGA have made it abundantly clear that they have

21  long suspected that a copyright infringement claim was in the offing as evidenced

22  by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23  05-9059 matter to protect its rights to the BRATZ dolls.  Similarly, MGA and Bryant

24  have been on notice to the facts comprising the interference claim concerning

25  Bryant's contract as evidenced by the identity of the individuals who have been

26  deposed by Mattel, as well as the nature of the questions posed and the testimony

27  proffered at those depositions.  MGA's argument that, with the amendments, it

28  faces the prospect of defending "against stale claims" owing to faded memories and

EXHIBIT 8 PAGE 101

1  loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),
2  is diminished by the fact that (no doubt owing to the sophistication of all counsel
3  involved) discovery on these very issues have been proceeding apace by both
4  sides long before Mattel filed its proposed amendments.  This is simply not a case
5  where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by
6  allowing the proposed amendments; much of those costs have already been borne
7  by the parties for some time.

8       2.    Spoliation of Evidence

9       MGA next argues that Mattel's delay in bringing the amended complaint has
10  caused it prejudice as, in the interim, critical pieces of evidence have been or are
11  suspected of having become lost.  For instance, MGA asserts that Mattel's Rule
12  30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,
13  "although Mattel identified and segregated its most relevant backup tapes available
14  for Zeus, Mattel allowed its tape backup system to expire the database for those
15  backup tapes, thereby eliminating all information about what was actually stored on
16  those backup tapes."  (MGA Opp. at 9-10).  Information on the Zeus computer
17  system is critical because of Mattel's assertion that part of its copyright claim rests
18  on Bryant's exposure to Mattel development programs.  (First Am. Compl. ¶ 26(a)).
19  As explained by MGA: "[C]oncept data and drawings created by [Mattel] design
20  center personnel are stored on Zeus.  Thus, the electronic documents stored on
21  Zeus -- which should include the metadata showing who created, edited and
22  accessed Mattel's concept drawings and designs -- during the time Bryant worked
23  in the design center at Mattel is vitally important to defending against Mattel's
24  claims."  (MGA Opp. at 14).  MGA's argument is neither an accurate
25  characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure
26  claim.

27       Ms. Marine did not testify that the information on the backup tapes (some
28  fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

10

EXHIBIT 8  PAGE 102

that could restore the information still found on those tapes:

Q. So if you wanted to restore that 2002 backup tape[s] then, how would you go about doing that?

. . . .

A. You need the hardware so if we don't have the hardware — if [the technology used by the tape is] DLT we don't have the hardware and you've got to buy it and — well, first you have to find a place to put it with adequate power which we don't have in the design center. You need to have a tape library. You need to have the tape drives that carried those tapes. You need a server that has the capability to — that's big enough to handle all of the hardware. You need the software — the license for the backup software[, Net Backup]. You need the disk space to restore it to and then you have to start reading in all those tapes.

Q. You said that you don't have that in the design center. Do you have that hardware anywhere else in the company?

A. DLT? No, no.

Q. At what point did you get rid of the hardware?

A. Once the last backups — DLT backups expired so it would have been a couple years ago probably.

(Decl. Diana Torres, Ex. K at 118-119).

The above testimony clearly denotes the difficulty in restoring what was on Mattel's Zeus computer system during the relevant time frame, but it certainly does not demonstrate that the information on those backup tapes has been "eliminated" or forever lost. Undoubtedly it will be a costly endeavor to recover that information (not to mention to later search and sort through it); but to argue, as MGA does, that the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the information on the Zeus backup tapes has been present for some time (maybe since 2004 or perhaps even earlier). This is important because it undermines MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

11

EXHIBIT 8 PAGE 103

1   it to suffer prejudice it otherwise would not have faced if the amendments were
2   brought sooner. Such prejudice has been present for years, and Mattel's failure to
3   bring its amended complaint sooner would not have changed this situation.

4       Similarly, MGA's point that access to what was on the Zeus computer
5   system is vital in demonstrating that Bryant was not exposed to or otherwise did not
6   hack the system to steal other designers work is diminshed to some extent by the
7   fact that Bryant himself testified that he did not use the Zeus computer system and
8   was "pretty much computer illiterate" while employed at Mattel. Admittedly, the
9   ability to point to information on the Zeus system backup tapes to prove that Bryant
10  did not access other designers drawings or to prove the date those drawings were
11  created by those other designers would be useful evidence to negate Mattel's
12  factual claims. Nonetheless, such evidence still would not discount other avenues
13  outside of the Zeus computer system by which Mattel could seek to prove that
14  Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant
15  saw drawings of the same posted on other designers' cubicles.

16      MGA next surmises that Mattel's e-mail records have disappeared, not
17  because it has any proof on that point, but simply because Mattel has postponed
18  the deposition of the individual most knowledgeable of Mattel's e-mail records until
19  after the hearing on Mattel's motion for leave to amend. (MGA Opp. at 10).
20  Speculation of spoilation does not suffice. That MGA's argumentation on this point
21  is nothing more than speculation is best exhibited by the evidence it has proffered
22  in support of its argument: "[I]f the sole retained backup for Zeus is no longer
23  available, it is not hard to imagine that Mattel's electronic mail archives are similarly
24  out of reach." (MGA Opp. at 15 (emphasis added)). MGA then makes much of a
25  deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his
26  inbox would be automatically deleted if they had remained there for more than a
27  certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this
28  acknowledgment that Mattel has an "automatic email deletion system" that has

12

EXHIBIT 8 PAGE 104

1   compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).
2   Noticeably absent from MGA's argument is any evidence that the e-mails so
3   deleted from a Mattel employee's inbox are forever lost or, as is far more likely,
4   whether such information remains or is otherwise archived on some backup file on
5   Mattel's computer system.  Absent concrete proof that spoilation has occurred,
6   nothing in MGA's argument forms a basis for denying Mattel its requested leave to
7   amend.

8        3.    Statute of Limitations

9        MGA next argues that Mattel's copyright and intentional interference claims
10  are futile as both are barred by the applicable statute of limitations.  This argument
11  was pressed emphatically at oral argument.  With respect to the copyright claim,
12  MGA argues that the applicable statute of limitations is three years, with the
13  limitations period accruing from when a party has knowledge of a violation or when
14  a reasonably diligent person would have been put on inquiry of the infringement.
15  (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.
16  1994)).  MGA argues that Mattel was put on notice about its copyright claim in
17  August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant
18  had stolen the idea for BRATZ while working at Mattel.  Thus, according to MGA,
19  the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's
20  current copyright claim stale.
21        The problem with MGA's analysis is it fails to take into account the relations-
22  back principles found in Rule 15(c), which provides that "[a]n amendment of a
23  pleading relates back to the date of the original pleading when "the claim . . . in the
24  amended pleading arose out of the conduct, transaction, or occurrence set forth . . .
25  in the original pleading," or if such relation back is otherwise permissible by the
26  state "law that provides the statute of limitations applicable to the action."  By
27  MGA's own admission Mattel's copyright claim arises out of the same conduct or
28  transaction contained in the original complaint filed in April, 2004, well within the

13

EXHIBIT ___8___ PAGE __105__

1  applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations

2  [contained in the original complaint] underlie the copyright infringement and

3  intentional interference contract claims Mattel now seeks to allege against MGA,

4  Mr. Larian and Bryant")).

5      MGA's statute of limitations argument with respect to the intentional

6  interference claims fares no better. According to MGA, the applicable statute of

7  limitations is two years for an intentional interference with contract claim and Mattel

8  was aware of the facts alerting it to this claim (insofar as Bryant's contract is

9  concerned) on November 24, 2003, when it learned "that Bryant worked with MGA

10  to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,

11  prior to the expiration of his contractual relationship with Mattel."[3] (MGA Opp. at 18

12  (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)) . Such a time line

13  would, according to MGA, mean that the applicable limitations period expired on

14  Mattel's interference with Bryant's contract claim on November 24, 2005, well

15  before Mattel sought leave to file its amended complaint. (Id). The problem again

16  with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional

17  interference claim would relate back to when it filed its original complaint in April,

18

19

20      [2] The same would appear to be true — that the amendments would be timely

21  — if the amendments related back to Mattel's answer (filed on May 13, 2005) to
   MGA's complaint in the 05-2727 case.

22

23      [3] With respect to Mattel's interference with contract claim as to one of its
   former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim

24  on September 17, 2004, when Brawer informed Mattel that he leaving to go to work
   for MGA. (MGA Opp. at 19-20). The problem with this argument is that nothing from

25  that simple event — Brawer's declaration of his intent to leave — in any way would
   apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct

26  (the stealing of proprietary information) causing Brawer to breach his contract with
   Mattel that he would not do anything to help a competitor while working for them.

27  MGA's contention that Mattel must have known of those misdeeds in mid-September
   is nothing more than speculation. Futility cannot be founded on what might or might

28  not be the case; either a claim is futile to bring or it is not.

14

EXHIBIT 8   PAGE 196

1  2004, well before the limitations period expired.[4]

2       Accordingly, MGA's futility argument is not well-founded.

3       4.    Prior Disavowals of Asserting a Copyright Claim

4       Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5  this case as to whether or not it is asserting a copyright infringement claim against

6  it.  To MGA, such ducking and weaving on Mattel's part renders its effort to now

7  bring such a copyright claim as one done in bad faith.  No doubt the Court itself has

8  been subjected to Mattel's overly vague statements on this point, but in the end

9  nothing in those statements has ever foreclosed the possibility that such a claim

10  may be in the offing.  Indeed, during the oral argument on Mattel's motion to

11  dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12  to whether it would assert such a copyright claim against Bryant as it is currently

13  seeking to do.  The most that Mattel's counsel would proffer was that Mattel would

14  not assert a copyright claim against Bryant based on Mattel's copyright rights in

15  TOON TEENS.  At that point, the Court directed the parties to engage in a meet

16  and confer based on counsel for Mattel's representation and to provide a report to

17  the Court based on those discussions.  The report submitted to the Court made

18  clear that, although Mattel was willing to accede that it would not bring a copyright

19  claim based on TOON TEENS, it refused to accede to Bryant's broader request

20  that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21  to any claim that Mattel has or ever will assert against Bryant."  This by itself should

22  have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23  prior statements had foreclosed any potential copyright claim against them.[5]

24  _____

25       [4] Again the relations-back principle would also seem to render its claim timely if it were filed as an amended answer (the original having been filed in May, 2005) in

26  the 05-2727 case.

27       [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac

28  Larian, for the "Doe" defendants listed in its original complaint is improper because Mattel knew of their identity when it filed the original complaint.  The argument is

EXHIBIT  8  PAGE  107

1    That said, Mattel's allegation in the amended complaint as to how it is

2  seeking to lay claim to the copyright in BRATZ is disconcerting. Paragraph 26,

3  subsection a, in the amended complaint alleges that Bryant "misappropriated and

4  misused Mattel property" by "using his exposure to Mattel development programs to

5  create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)). Such

6  "exposure" could include Bryant misappropriating the Mattel design concept in

7  TOON TEENS in drawing his inspiration for the BRATZ doll. Were Mattel's

8  copyright claim so predicated it would be barred by this Court's July, 2006, Order,

9  dismissing Bryant's declaratory judgment action. Mattel was pressed on this point

10  during oral argument and conceded that such "exposure" to Mattel "development

11  programs" did not include TOON TEENS. With this representation, nothing in

12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13    5.    Judicial Economy Considerations

14    In his opposition, Bryant adds an additional reason for denying leave beyond

15  those contained in MGA's papers — the amendment would muddy the waters in the

16  04-9059 by adding "tangential" issues that would only serve to delay resolution of

17  the key issue lying at the heart of the complaint: Who owns the rights to the

18  BRATZ line of dolls. (Bryant Opp. at 2 ). Bryant notes that the case has proceeded

19  apace in moving toward resolving that issue, and the amendment would "transform

20

21  misplaced. As made clear by Mattel, California law allows a plaintiff to substitute in a

22  defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or
    ignorant of the basis for liability at the time the complaint was filed. See Miller v.

23  Thomas, 121 Cal.App.3d 440 (1981). MGA does not dispute this legal contention

24  but at oral argument disputed that Mattel did not know the basis for liability against
    itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in

25  the original complaint and those now proffered against the two in the amended
    complaint. Specifically, MGA notes that the original complaint spoke of Bryant

26  working for one of Mattel's competitiors and of that employee's theft of Mattel's
    intellectual property before leaving to work for that competitior. At most, all this

27  shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.

28  Larian encouraged Bryant's alleged unlawful behavior recited in the original
    complaint.

16

EXHIBIT 8 PAGE 108

1   what Mattel has always claimed was a straightforward employment action against

2   an individual defendant into a global commercial dispute against Mattel's primary

3   competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns

4   BRATZ.[6]  (Bryant,Opp. at 2).  Mattel argues that "the law does not deny leave to

5   amend because claims are 'tangential'" and then reiterates its point that some

6   showing of prejudice, namely, seeking leave after expiration of discovery, is

7   necessary.  (Reply to Bryant Opp. at 3).  That is not entirely correct.

8        As noted previously, the Ninth Circuit recently upheld a denial for leave to

9   amend because the amendment would have "drastically changed" the litigation,

10   even though the leave request was tendered <u>before</u> the time, as set forth in a Rule

11   16(b) pre-trial scheduling order, for filing a motion to amend had expired and well

12   before the discovery cut-off. <u>See</u> <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>,

13   465 F.3d 946, 953 (9th Cir. 2006).  In justifying its reasoning the Ninth Circuit cited

14   approvingly to the following statement from a well-respected treatise: "If an

15   amendment substantially changes the theory on which the case has been

16   proceeding and is proposed late enough so that the opponent would be required to

17   engage in significant new preparation, the court may deem it prejudicial." <u>Id</u>. at 953

18   n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,

19   FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)).  Thus, <u>Dialysist</u>

20   recognized that the introduction of "different legal theories" and/or proof of

21   materially different facts well into the litigation can itself be a basis for finding

22   prejudice regardless of whether the period for discovery has expired (or is even

23   close to expiring) or the parties have already filed summary judgment motions. <u>Id</u>.

24   at 953-54.

25        Although the parties can safely be said to be at this point well into the

26

27        [6] Bryant also brings intricate legal arguments about the sufficiency of the

28   allegations Mattel has averred in building its RICO claims against him.  Such
     considerations are best left to be resolved on a properly filed motion to dismiss.

17

EXHIBIT _____8____ PAGE __107__

1   litigation in this consolidated action (as evidenced by the protracted discovery
2   disputes contained in the docket sheet that the parties have had before the
3   magistrate judge and now the special master, and the litigation of motions to
4   dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel
5   has made painfully clear in its papers, no scheduling order has been entered in this
6   case.[7] This takes away somewhat from the prejudice Dialysist found to exist when
7   a "drastic change [in a party's] litigation theory" takes place mid-stream in the
8   litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial
9   motions and other matters (e.g., discovery cutoff), the parties have been given free
10  reign in how to conduct the litigation in this case.

11          That the delay in bringing the proposed amendments and the relative length
12  of time into the litigation when those amendments were brought may not neatly fold
13  into Dialysist's reasoning does not mean that leave must nonetheless be granted.
14  The 04-9059 action, as it is presently constituted, is not a complex one.  It asks a
15  rather narrow and straightforward question — Did anything from Bryant's
16  employment at Mattel during the 1999-2000 period give Mattel ownership rights to
17  the BRATZ doll line?  The proposed amendments would radically alter the litigation
18  in that case to include far ranging disputes involving multiple parties and concerning
19  events not connected with the BRATZ ownership issue.  That the original action
20  was a relatively simple and straight-forward matter raises another point beyond the
21  change in the action's litigation posture — whether entangling the rival doll makers'
22  other commercial disputes into this particular case would serve to muddy the waters
23  and make the matter that much more difficult to manage from the Court's
24  perspective.

25

26      [7]  Mattel's repeated refrain that the matter is in its nascent stage as evidenced
    by the fact that the parties only just recently exchanged in initial disclosures is
27  misleading.  The exchange of initial disclosures referred to by Mattel is in the 05-
    2727 case.  With respect to the 04-9059 case it appears that such initial disclosures
28  were completed long ago as evidenced by the fact that discovery disputes appeared
    in that case as far back as January, 2005.

18

EXHIBIT  8   PAGE  110

1    As has long been recognized, equally important in determining whether to

2  grant such leave is what impact such amendments would have on the court's ability

3  to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE

4  § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial

5  economy and its ability to manage the case. . . . The court should also temper the

6  policy favoring freely granting leave to amend with consideration of the ability of the

7  district court to manage the case adequately if amendment is allowed"). As Judge

8  Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,

9  the court should consider judicial economy and whether the amendments would

10  lead to expeditious disposition of the merits of the litigation. Finally, the court

11  should consider whether the amendment adds substance to the original allegations,

12  and whether it is germane to the original case of action." Chitimacha Tribe of

13  Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also

14  Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

15  1987)("General considerations of judicial economy also justify allowing the

16  amendments. The violations included in the proposed amendment relate to the

17  same subject matter as the original complaint. Allowing the amendment will further

18  the federal policy of 'wrapping in one bundle all matters concerning the same

19  subject matter.'").

20    Mattel's amendments do not add substance to the claims contained in its

21  original complaint. Rather, they would expand the universe of claims and

22  defendants stretching well-beyond the questions raised in the original complaint

23  over whether Bryant's conduct while in the employ of Mattel subjected his later

24  attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions

25  Agreement or otherwise rendered his creation subject to an infringement action.

26  Nowhere does Mattel seek to reconcile the breadth of its present amendments with

27  the narrowness of the allegations contained in its original complaint. In fact, the

28  precise opposite is true. Mattel acknowledges that its proposed amendments bear

19

EXHIBIT 8 PAGE 111

1    more congruity to the allegations leveled against it in MGA's Lanham Act case than

2    to those in the action to which it seeks to add them:

3
4          [M]any of the matters raised by Mattel's proposed
           Amended Complaint are and will remain at issue
5          because of MGA's Complaint, whether or not leave to
           amend is granted.  MGA's claims allege that a broad
6          array of purported Mattel conduct across the globe,
           starting at least as early as 1999, has violated the
7          Lanham Act and unfair competition law.  This includes
           Mattel's alleged infringement of Bratz and other MGA
8          products.  As a result, issues in the proposed Amended
           Complaint are already part and parcel of Mattel's
9          defenses to MGA's unfair competition claims, including
           because they show that MGA and Bryant, and not
10         Mattel, are ones who stole the products and other
           properties involved.

11   (Reply to Bryant Opp. at 7 (emphasis added)).  Mattel apparently finds this

12   discongruity unimportant because "all of these matters have been consolidated with

13   the Bryant case."  (Id. at 7).  As noted earlier, the fact that the cases have been

14   consolidated does not mean that the parties can ignore the distinctions that still

15   exist between them.  If, as Mattel acknowledges, the present amendments are

16   nothing more than re-formulated defenses and counterclaims it presently has to

17   MGA's complaint against it in the 05-2727 case, then such amendments should be

18   brought in the form of an amended answer and counterclaim in that case.

19         Consideration of the distinctions between the two cases is wise as it serves

20   as a useful tool in providing the Court a better means to manage the cases now

21   that they have been consolidated.  The proverbial dog (ownership in BRATZ)

22   should be wagging the proverbial tail (the remaining commercial disputes), not the

23   other way around.  Admittedly, the dog's tail has grown in size both by MGA's filing

24   of its complaint in the 05-2727 action and Mattel's response thereto through its

25   proposed amendments.  Nonetheless, it is readily apparent to the Court that the

26   crown jewel in this action still remains the ownership rights to the BRATZ dolls.  The

27   parties have engaged in extensive and undoubtedly expensive discovery on this

28   very issue (from hiring world-renowned experts to test the age of Bryant's design

20

EXHIBIT 8  PAGE 112

1  drawings to technically complex discovery of what is on each other's computers).

2  Indeed the separateness of the two matters is reflected in how the cases are

3  currently structured, namely, the narrowness of the issue involved in 04-9059 and

4  the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court

5  believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6  off and trial date are set well-ahead of those in 05-2727 makes the most sense. As

7  noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8  the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to

9  the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10  "development programs" or by way of the Inventions Agreement because he

11  continued to work on his designs while at Mattel), then large portions of MGA's

12  Lanham Act infringement claims may become moot. By the same token, if Mattel

13  does not own rights to BRATZ, then some of the defenses and counterclaims set

14  forth as independent claims in the present amended complaint may become moot,

15  including Mattel's copyright infringement claim as well as portions of its remaining

16  RICO, misappropriation, and aiding and abetting claims. If, however, the Court

17  were to allow the amended complaint to be filed in the 04-9059 action, such case

18  management would be difficult, if not impossible as many of the issues being

19  litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20  amendment. Due to this substantial overlap in claims and facts, a two-track

21  scheduling order utilizing the case number distinctions would be impossible to craft.

22  When pressed by the Court at oral argument as to which of its proposed claims it

23  believed would <u>not</u> undermine the BRATZ ownership posture of the 04-9059 case,

24  Mattel cited to its copyright and RICO claims. However, upon further questioning

25  by the Court, counsel for Mattel acknowledged that much of those claims were, like

26  the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27  In light of the burden allowing Mattel's amendment to proceed would have on

28  this Court's ability to efficiently manage these consolidated matters denial of

21

EXHIBIT $\cancel{8}$   PAGE $113$

1   Mattel's request to amend its complaint in the 04-9059 matter is justified. See

2   Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial

3   system can justify a denial of a motion to amend 'even if the amendment would

4   cause no hardship at all to the opposing party'"). Buttressing the Court's decision is

5   the fact that, even with such a denial, Mattel may file (and the Court provides leave

6   to Mattel to so file) an amended answer and counterclaim in the 05-2727 case

7   raising all the new claims and defendants presently sought to be achieved through

8   amendment of its complaint in the 04-9059 action. None of the substantive

9   concerns raised by MGA and Bryant to the present amended complaint, e.g.,

10  statutes of limitations, would appear to be affected if the new claims and

11  defendants were brought as defenses and counterclaims in the 05-2727 case as

12  opposed to the 04-9059 one.

13      Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed

14  amendments, but only insofar as they are pled in the form of an amended answer

15  and counterclaim in the 05-2727 case.

16      Finally, the lack of a scheduling order in this case is problematic; one should

17  have been entered long ago. See Fed. R. Civ. P. 16(b)(noting that a scheduling

18  "order shall issue as soon as practicable but in any event within 90 days after the

19  appearance of a defendant and within 120 days after the complaint has been

20  served on a defendant"). In light of the fact that entry of a scheduling order is

21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)

22  scheduling conference be held in this consolidated matter on February 12, 2007, at

23  1:30 p.m. in Courtroom One. The parties are directed to file a Joint Rule 26(f)

24  report with the Court by February 5, 2007.

25      IT IS SO ORDERED.

26  DATE: _/-//-07_

27

28  STEPHEN G. LARSON
    UNITED STATES DISTRICT JUDGE

22

EXHIBIT  8  PAGE 114