QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MATTEL, INC., a Delaware<br>corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated With Case No. 04-9059<br>and Case No. 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master<br>Hon. Edward Infante (Ret.)]**<br><br>REPLY IN SUPPORT OF MATTEL,<br>INC.'S RENEWED NOTICE OF<br>MOTION AND RENEWED MOTION<br>FOR RECONSIDERATION OF THE<br>SEPTEMBER 12, 2007 ORDER<br>GRANTING IN PART AND<br>DENYING IN PART MGA'S<br>MOTION TO COMPEL<br>PRODUCTION OF DOCUMENTS<br><br>Date:   January 3, 2008<br>Time:   1:30 p.m.<br>Place:  JAMS<br>        Two Embarcadero Center<br>        Suite 1500<br>        San Francisco, California<br><br>**Phase 1**<br>Discovery Cut-off:      January 28, 2008<br>Pre-trial Conference:  May 5, 2008<br>Trial Date:              May 27, 2008 |

07209/2335503.3

1

## TABLE OF CONTENTS

2
**Page**

3

4
PRELIMINARY STATEMENT ................................................................................. 1

5
ARGUMENT ............................................................................................................. 1

6   I.    THE DISCOVERY MASTER DID NOT CONCLUDE THAT
          AGREEMENTS MATTEL'S AGREEMENTS WITH OTHER
7         EMPLOYEES RELATE TO MATTEL'S CLAIMS; BRYANT
          WITHDREW THE ONLY DEFENSES TO WHICH THE
8         DISCOVERY MASTER FOUND THEM TO BE RELEVANT ..................... 1

9   II.   MGA'S NEWLY CONJURED THEORY OF RELEVANCE IS
          LEGALLY FLAWED ............................................................................... 3
10

11  III.  GIVEN THE AT-MOST MINIMAL RELEVANCE OF
          DOCUMENTS RESPONSIVE TO THE THIRD REQUEST TO THIS
          ACTION, THE BURDEN OF COMPLIANCE IS TOO SEVERE ............... 7
12

13  IV.   THE SECOND REQUEST, WHICH CALLS FOR A MANUAL
          REVIEW OF THOUSANDS OF THIRD PARTY EMPLOYEE FILES
          IS UNDULY BURDENSOME .................................................................. 8
14

    CONCLUSION ...................................................................................................... 10
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Page**

### Cases

*City of Atascadero v. Merrill Lynch,*
  68 Cal. App. 4th 445 (1998)..............................................................................4, 5

*Heston v. Farmers Ins. Group,*
  160 Cal. App. 3d 402 (1984)..........................................................................5, 6, 7

*U.S. Cellular Investment Co. of Los Angeles, Inc. v. GTE MobilNet, Inc.,*
  281 F.3d 929 (9th Cir. 2002).........................................................................4, 5, 6

### Statutes

*Cal. Civ. Code* § 1638 ...................................................................................3

*Federal Rule of Civil Procedure 26* .....................................................................2, 7

**Preliminary Statement**

Documents related to Mattel's contracts with third-parties are not the proper subject of the sweeping discovery that defendants seek, especially since Bryant withdrew the only affirmative defenses to which they nominally related. Tacitly conceding this, MGA argues that such documents are relevant to inform the interpretation of Mattel's agreement with Bryant. California courts have adopted many interpretation tools; however, if the Discovery Master rules that the negotiation, discussion, enforcement or threats to enforce contracts with non-parties are relevant, it would be a first. Such documents are neither relevant, nor could they lead to relevant evidence.

MGA's cases do not hold that the massive amounts of data concerning third party employees, which Mattel could only assemble at extreme cost, is justified now that Bryant has withdrawn the only affirmative defenses to which the requests once ostensibly related. The immense burden of a wholesale manual review of every personnel file of every past and present Mattel employee at Mattel's El Segundo headquarters called for by the second request is overbroad on its face, unduly burdensome and oppressive. Accordingly, the September 12 Order should be reconsidered and amended to prevent imposing this burden.

**Argument**

**I.    THE DISCOVERY MASTER DID NOT CONCLUDE THAT MATTEL'S AGREEMENTS WITH OTHER EMPLOYEES RELATE TO MATTEL'S CLAIMS; BRYANT WITHDREW THE ONLY DEFENSES TO WHICH THE DISCOVERY MASTER FOUND THEM TO BE RELEVANT**

Even before Bryant withdrew his unconscionability, illegality and "failure of contract" affirmative defenses upon which the requests for Mattel's

agreements with other employees were based, the Discovery Master found the relevance of those non-party agreements to be "tenuous" and "thin."[1] The Discovery Master nevertheless required the production of these documents, finding some relevance to "Bryant's contention that the agreements are unenforceable as contracts of adhesion, unconscionable, and violate California law."[2] Bryant since withdrew those defenses. As the Discovery Master correctly recognized, this withdrawal "affects the entire balance of relevancy versus burden."[3]

Recognizing that the withdrawal of these defenses renders these documents sought by defendants even further afield, MGA engages in revisionist history by suggesting that the Discovery Master's passing reference to "claims or defenses" from *Federal Rule of Civil Procedure* 26 somehow suggests that he ruled that Mattel's contracts with third parties are relevant to some unidentified *Mattel claim*. The Discovery Master did no such thing. Nor would it have made sense for him to do so.[4] Mattel does not seek those documents. Why would it? Mattel seeks to enforce in this action the "Employee Confidential Information and Inventions Agreement" and the "Conflict of Interest Questionnaire" that Bryant himself signed; the versions signed by Mattel's third-party employees have no bearing on

---

[1] *See* Declaration of Timothy L. Alger, dated December 18, 2007 (hereinafter, "Alger Decl."), Exh. 4 at 27:11-17 (Excerpts of the transcript of proceedings before the Hon. Edward A. Infante, dated January 25, 2007).

[2] Alger Decl., Exh. 3 at 13. (Discovery Master's Order Granting in Part and Denying in Part MGA's Motion to Compel Mattel to Supplement Responses, dated September 12, 2007) (hereinafter "September 12 Order").

[3] *See* Declaration of Rory S. Miller, dated December 27, 2007 (hereinafter, "Miller Decl."), Exh. 1 at 53:2 (Excerpts of the transcript of proceedings before the Hon. Edward A. Infante, dated December 14, 2007).

[4] In fact, the Discovery Master himself repeatedly recognized the irrelevance of these documents following Bryant's withdrawal of his affirmative defenses. *See* Miller Decl., Exh. 1 at 52:24-53:1 (stating that "reconsideration [of the September 12, 2007 Order] is appropriate in view of the new information submitted yesterday regarding withdrawn defenses").

1  Mattel's claims against Bryant.  These documents were relevant, at most, to
2  Bryant's now withdrawn defenses.

3  **II.    MGA'S NEWLY CONJURED THEORY OF RELEVANCE IS**
4  **         LEGALLY FLAWED**

5              Because Bryant has dismissed the only affirmative defenses to which
6  Mattel's agreements with third-parties could have related, MGA has conjured a new
7  theory of relevance.  MGA suggests that Mattel's contracts with third parties and
8  efforts to enforce those contracts somehow inform the Court's interpretation of the
9  contract between Mattel and Bryant.  This new theory is legally flawed. By
10 promoting it, MGA asks the Discovery Master to do what no other California court
11 has done.  Notably, and perhaps recognizing the fallibility of this new theory, MGA
12 did not include it as a basis for its original motion to compel the production of these
13 documents (which may be a separate waiver).[5]

14      Mattel fully addresses MGA's ambitious theory of relevance of Mattel's
15 contracts with non-party employees, including contracts post-dating Bryant's
16 employment, in its Opposition to MGA's Motion to Overrule Relevance
17 Objections,[6] which is incorporated herein by reference.  A short discussion of the
18 impropriety of MGA's newly minted argument, as well as the inapplicability of the
19 case law it cites, appears below.

20      In California, parties' intent is determined by the plain language of their
21 contract without reference to extrinsic evidence.  *Cal. Civ. Code* § 1638.  Only
22 where a contract has been determined to be ambiguous does a court turn to extrinsic
23 evidence of that contract's meaning.  Even so, the evidence that is examined is the

24

25     [5]  *See* Miller Decl., Exh. 2 (MGA Entertainment Inc.'s Motion to Compel, filed
26 July 3, 2007); Alger Decl., Exh. 2 (MGA's Reply in Support of its Motion to
27 Compel, filed July 26, 2007).
    [6] This Opposition is scheduled to be filed on Friday, December 28, 2007.

28

-3-

1  prior conduct *between* the parties to the dispute.  This examination of the course of
2  conduct and the course of performance by both parties is used to illuminate what
3  *those* parties' intent was in forming the ambiguous contract.  At all times, the crucial
4  inquiry is what *the parties,* not uninvolved third parties, meant by the contract that
5  they formed with each other.

6       No California court has stretched this tool of interpretation to encompass
7  contracts with strangers.  MGA's authorities do not suggest that the Discovery
8  Master should be the first to take that step.[7]  Contrary to MGA's representation, *U.S.*
9  *Cellular Investment Co. of Los Angeles, Inc. v. GTE MobilNet, Inc.,* 281 F.3d 929
10 (9th Cir. 2002), suggests nothing about contracts with third parties.  Rather, it is an
11 unremarkable application of section 1856(c) of the *Code of Civil Procedure,* which
12 provides that "[t]he terms set forth in a writing described in subdivision (a) may be
13 explained or supplemented by course of dealing . . . or by course of performance."
14 *U.S. Cellular Investment* itself is limited to discovery related solely to "the
15 subsequent acts and conduct *of the parties in the execution of the contract* in order
16 to determine the intent of those parties." *Id.* at 937 (citing Cal. Code Civ. Proc. §
17 1856(c)) (emphasis added).  Indeed, the only relevance question in that case was
18 concerned solely with the "course of performance of the agreement." *Id.*

19      MGA's quotation from *U.S. Cellular Investment* is actually a quotation from
20 *City of Atascadero v. Merrill Lynch,* 68 Cal. App. 4th 445 (1998).  That case plainly
21 demonstrates that MGA overreaches.  It holds only that "[t]he mutual intention to
22 which the courts give effect is determined by objective manifestations of *the parties'*
23 intent, including the words used in the agreement, as well as extrinsic evidence of

24

25    [7]  Beyond the lack of supporting cases, MGA has not cited, and Mattel has not
26 found, any authority in the leading treatises on contract law to support the
27 proposition that extrinsic evidence of dealings with third parties is appropriate in the
   interpretation of a contract.
28

1  such objective matters as the surrounding circumstances under which *the parties*
2  negotiated or entered into the contract; the object, nature and subject matter of the
3  contract; and the subsequent acts and conduct of *the parties*." *Id.* at 474 (citations
4  omitted) (emphasis added). *City of Atascadero* demonstrates that, under California
5  law, course of performance is limited to the performance between the parties to the
6  agreement. Mattel has already produced its Bryant-contract documents. A demand
7  for documents beyond this is not supported by *U.S. Cellular Investment* or *City of*
8  *Atascadero*.[8]

9      Similarly, MGA asks the Discovery Master to step far beyond the holding in
10  *Heston v. Farmers Ins. Group,* 160 Cal. App. 3d 402 (1984). There, the Court of
11  Appeal upheld a trial court's decision to admit evidence of prior litigation positions
12  adopted in the interpretation of a contract "with a paragraph identical to the one in
13  the Agreement." *Id.* at 414. The court affirmed that these prior litigation positions,
14  adopted in a brief submitted by Farmers to the National Labor Relations Board,
15  *estopped* Farmers from now denying that the construction of the contract at issue
16  was reasonable. *Id.* at 415.

17      *Heston* is based upon a common sense theory of estoppel—Farmers
18  Insurance, having once advocated one interpretation of a contract in a legal
19  proceeding before the NLRB, cannot later deny that it intended for that same
20  construction to apply in a subsequent proceeding. This is very different from
21  MGA's new position that the intent underlying one contract can be divined by
22  examining contracts, including those with differing language, with third parties.
23  *Heston* merely holds a company to an interpretation it had adopted and advocated

24  _____

25  [8] Regardless of whether MGA's interpretation of *U.S. Cellular Investment* is
   correct, that section is dicta and does not control this litigation. *See U.S. Cellular*
26  *Investment,* 281 F.3d at 937 ("We do not believe it is necessary to look beyond the
   plain language of the partnership agreement to determine the meaning that the
27  parties intended for the anti-transfer provisions. If it were, however…").
28

-5-

1   before a court. Unlike in that case, MGA has *not* shown that Mattel has ever
2   interpreted Bryant's contractual language in *any,* let alone an inconsistent, manner
3   in any judicial proceeding. In particular, MGA has never suggested that Mattel has,
4   at any time, argued to a court that a doll created by a Mattel doll designer during the
5   term of his or her employment at Mattel does not belong to Mattel pursuant to
6   Mattel's "Employee Confidential Information and Inventions Agreement" that
7   Bryant signed.

8           The second and third requests seek a far broader category of documents than
9   merely legal briefs adopting a position—by their wording, the second request does
10  not even touch upon legal proceedings, but instead seeks documents about
11  discussions and negotiations in the course of forming the contracts. Additionally,
12  the third request seeks *"all* documents relating to any instance in which Mattel has
13  taken *any action whatsoever"* to enforce its contracts (emphasis added). The third
14  request thus, without further narrowing after reconsideration by the Discovery
15  Master, seeks documents that range far beyond *Heston's* narrow estoppel category
16  of relevance, and seeks documents that hold no relevance to the current action.[9]

17          MGA instead advocates that the third request should stand under its fuzzy
18  standard of "practical interpretation" of the contract. Such aggressive and overbroad
19  discovery would require the onerous search for documents that range well beyond
20  ones that have been found to be relevant in the cases cited by MGA. Nor is the third
21  request limited to contracts with identical language to Bryant's. This is a crucial
22  distinction, because Mattel has used six different versions of the Employee
23  Confidential Information Agreement since 1995, and three different versions of the

24

25  [9] That *Heston* is limited solely to prior litigation positions is substantiated by
    MGA's own quotation from *U.S. Cellular Investment,* which notes that "[a]t a
26  minimum, this *prior litigation stance* substantially undermines U.S. Cellular's
    argument…" Opp. At 4:4-8 (quoting *U.S. Cellular Investment,* 281 F.3d at 938)
27  (emphasis added).
28

1   Conflict of Interest Questionnaire.[10]  Any discovery order that orders production of
2   documents with differing language is unwarranted even under the most expansive
3   reading of *Heston*.[11]  MGA's relevance theory thus fails.

4   **III.    GIVEN THE AT-MOST MINIMAL RELEVANCE OF DOCUMENTS**
5   **RESPONSIVE TO THE THIRD REQUEST TO THIS ACTION, THE**
6   **BURDEN OF COMPLIANCE IS TOO SEVERE**

7           MGA fundamentally misapprehends Mattel's Renewed Motion for
8   Reconsideration.  It portrays Mattel's request for reconsideration of the third
9   category from the September 12 Order as being based solely on "burden."  *See, e.g.,*
10  Opp. at 2:12-13; 5:14-22.  This is incorrect.  Mattel seeks reconsideration of the
11  third category on relevance grounds, now that Bryant has withdrawn the only
12  affirmative defenses upon relevance was predicated.

13          In light of the vanishing relevance, however, an inquiry into the relative
14  burden of compliance with the third request is called for, as the Discovery Master
15  has recognized.  *See Federal Rule of Civil Procedure* 26(b)(2)(C)(iii) (where "the
16  burden or expense of the proposed discovery outweighs its likely benefit" the court
17  may deny discovery).  Here, these documents are not relevant to the action.  Thus
18  their production is not justified, regardless of the burden of producing them.

19          MGA's claim in its Opposition that "Mattel doggedly refuses to explain" why
20  compliance with the third request will not be as unduly burdensome is not well-
21  taken.  As Mattel has repeatedly explained, Mattel can identify which personnel files

22
23      [10] Declaration of Lissa Freed, dated September 26, 2007 (hereinafter "Freed Decl."), ¶ 4.
24      [11] Even should the Discovery Master agree with MGA's interpretation of *Heston*,
25  reviewing and producing the documents with identical language to Bryant's
    contracts would still require an excessively burdensome manual search of *all* of
26  Mattel's third-party employee files to locate contracts with the identical language.
27  This burden, and the reasons justifying a modification of the September 12 Order to
    relieve Mattel of it, is discussed further below.
28

1   likely contain documents responsive to the third request without having to go
2   through thousands of personnel files.  Mattel can search through its litigation
3   database, consult the personal knowledge of Mattel's legal staff, reference public
4   court filings, and employ similar methods in order to comply with the third request.
5   Mattel explained as much to the Discovery Master during the December 14 hearing,
6   as MGA quotes in its Opposition.  *See* Opp. at 5:28-6:5.  Such a search, while still
7   being expensive and time consuming, would be far less time consuming than the
8   brute force manual review of every personnel file would be.

9       Accordingly, MGA's protests that Mattel has somehow violated the duty of
10  complete candor and disclosure is without merit.  Quite simply, the burden of
11  complying with the third request is less than the crushing burden of compliance with
12  the second request discussed below, but also remains far heavier than should be
13  borne in order to locate documents of, at best, tangential relevance to this action.

14  **IV.    THE SECOND REQUEST, WHICH CALLS FOR A MANUAL**
15  **REVIEW OF THOUSANDS OF THIRD PARTY EMPLOYEE FILES,**
16  **IS UNDULY BURDENSOME**

17      In its Renewed Motion, Mattel outlined the great expense and effort of a
18  manual search by attorneys of every current and former employee's personnel file
19  would entail.  MGA does not substantively dispute the burden that a manual review
20  of every current and former Mattel employee's personnel files would entail.  MGA's
21  sole response to this burden is an attack on the detail of Mattel's description of this
22  expense, and a misrepresentation of the specificity of Mattel's discussion of this
23  expense.

24      The employee files that would have to be reviewed in order to comply with
25  the second document request are maintained only in paper form, and there is no

26
27
28

-8-

1   searchable computer database of these documents.[12]  As a result, each of these files,
2   many of which exceed several hundred pages,[13] would need to be physically pulled
3   and reviewed by an attorney.  Additionally, these files do not have any form of
4   internal topic or category organization (they are generally in a chronological order)
5   and will require a review of each file in full in order to comply with the September
6   12 Order as currently worded.

7       As estimated by Timothy Alger in his declaration filed concurrently with
8   Mattel's Renewed Motion, the cost for such a manual review would be
9   approximately $600,000.  This is based upon an estimate of roughly one half-hour
10  of attorney time, on average, to review each of the roughly 6,000 files.[14]  This time
11  estimate is derived from Alger's extensive experience in legal practice and
12  discovery disputes, including prior experience in this case.

13      MGA's argument that Mattel has not identified the individuals or billing rates
14  of the reviewers is without foundation:  as explained in the Alger Declaration, the
15  $600,000 sum is based on an estimated half-hour per file, at a rate of $200 an
16  hour—which are extremely conservative estimates.[15]  When complaining that Mattel
17  has not adequately documented its estimate, MGA conspicuously avoids grappling
18  with the Alger Declaration, choosing only to cite Mattel's moving papers.

19      In its Opposition, MGA implicitly recognizes the severe burden that the
20  second request poses.  As a result, MGA proposes a narrowing construction, which
21  it has never previously offered Mattel, that Mattel can comply with the September
22  12 Order by reviewing only the files of the employees of Mattel's Design Center.

23  _____

24  [12] Freed Decl., ¶ 6.
25  [13] *See* Declaration of Timothy L. Alger in Support of Mattel's Renewed Motion
    for Reconsideration ("Alger Decl."), dated December 18, 2007, ¶ 4.
26  [14] Alger Decl., ¶ 4.
27  [15] As a matter of record, the average billing rate for Quinn Emanuel attorneys
    staffing this matter is much higher than this figure.
28

-9-

1   Even using MGA's count of 700 employees, which apparently does not include

2   Mattel's former design employees,[16] this still represents a narrowing of the burden

3   by over 80% from that required by MGA's interpretation of the September 12

4   Order.

5         MGA has never previously offered this alternative to Mattel.  Indeed, even

6   the overly burdensome second request that Mattel is seeking reconsideration of was

7   offered by MGA in its reply brief in support of a motion to compel compliance with

8   an even broader document demand.  Had MGA proposed this construction during

9   the meet and confer process, the entire burden to the Court of the original motion to

10  compel and both the original and renewed motions for reconsideration, as well as

11  both MGA and Mattel's resulting legal fees, could well have been obviated.

12  Instead, MGA has consistently sought the broadest possible discovery.

13        In any case, even this compromise proposal should be rejected at this stage.

14  While the burden of searching all design employees is at least less than searching *all*

15  employees, it is still undue.  MGA does not show how negotiations or discussions

16  with these other designers are likely to lead to the discovery of admissible evidence

17  at all, let alone how the burdens of these searches are outweighed by their likely

18  benefits.  The second request should be stricken in its entirety.

19        **Conclusion**

20        For the foregoing reasons, as well as those put forth in Mattel's opening

21  papers, Mattel respectfully requests that the Discovery Master reconsider his Order

22  of September 12, 2007 relating to Document Request Nos. 281-282 and 284-285,

23  and rule that Mattel is only required to produce documents responsive to the first

24  request.

25

26

27  [16]   MGA provides no basis for this figure, nor does it identify which 700 of
Mattel's employee files it proposes be searched.

28

1    In the alternative, Mattel respectfully requests that the Discovery Master

2 reconsider his Order of September 12, 2007 relating to Document Request Nos. 281-

3 282 and 284-285 and rule that Mattel is only required to produce documents

4 responsive to the first and third requests.

5    Mattel further requests that any production pursuant to the requests be

6 extended to a date 30 days after the Discovery Master's decision on its Renewed

7 Motion for Reconsideration.

8 DATED:  December 27, 2007          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
9

10                                   By _____ /FOR

11                                      Michael T. Zeller
                                        Attorneys for Plaintiff and Counter-
12                                      Defendant Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28