**EXHIBIT 4**



1   THOMAS J. NOLAN (Bar No. 66992)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2   300 South Grand Avenue
    Los Angeles, CA 90071-3144
3   Telephone: (213) 687-5000
    Facsimile: (213) 687-5600
4   Email: tnolan@skadden.com

5   RAOUL D. KENNEDY (Bar No. 40892)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6   4 Embarcadero Center, 38th Floor
    San Francisco, CA 94111-5974
7   Telephone: (415) 984-6400
    Facsimile: (415) 984-2698
8   Email: rkennedy@skadden.com

9

10  Attorneys for MGA Entertainment, Inc., MGA Entertainment
    (HK) Limited, MGAE de Mexico, S. de R.L. de C.V., and
11  Isaac Larian

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16  CARTER BRYANT, an individual,        )   CASE NO. CV 04-9049 SGL (RNBx)
                                         )
17              Plaintiff,               )   Consolidated with Case No. 04-9059
                                         )   and Case No. 05-2727
18       v.                              )
                                         )   SUPPLEMENTAL
19  MATTEL, INC., a Delaware             )   DECLARATION OF DAPHNE
    corporation,                         )   GRONICH IN RESPONSE TO
20                                       )   COURT'S REQUEST FOR
                                         )   INFORMATION REGARDING
21              Defendant.               )   DOCUMENT PRESERVATION
                                         )
22  Consolidated with                    )
    MATTEL, INC. v. BRYANT and           )   Judge: Hon. Stephen G. Larson
23  MGA ENTERTAINMENT, INC. v.           )
    MATTEL, INC.                         )
24                                       )

25

26

27

28                          12-05
    _____
    SUPPLEMENTAL DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR
            INFORMATION REGARDING DOCUMENT PRESERVATION

EXHIBIT   4   PAGE 91

1    I, Daphne Gronich, declare and state as follows:

2        1.    This declaration will supplement the September 10, 2007 Declaration of

3   Daphne Gronich in Response to Court's Request for Information Regarding

4   Document Preservation ("the September 10 Declaration") attached hereto as Exhibit

5   A. All of the facts set forth herein are known to me personally, except for those

6   stated on information and belief and, if called as a witness, I could and would testify

7   competently thereto.

8        2.    I was the General Counsel of MGA Entertainment, Inc. ("MGA") and

9   its subsidiaries, including MGA Entertainment (HK) Limited ("MGA HK") and

10   MGAE de Mexico, S. de R.L. de C.V. ("MGA Mexico") from December 2003

11   through early November 2007.  To clarify Paragraph 2 of the September 10

12   Declaration, I had oversight responsibility for the legal response of MGA, MGA HK

13   and MGA Mexico to this litigation since its inception.  To further clarify Paragraph 2

14   of the September 10 Declaration, the reference to communications with MGA

15   employees after Mattel sued Carter Bryant in April 2004, includes employees of

16   MGA, MGA HK and MGA Mexico, as well as Mr. Isaac Larian.

17        3.    To clarify Paragraphs 4 and 5 of the September 10 Declaration, the

18   references to Rich Daniels, outside counsel and/or myself confirming that MGA had

19   the documents of key potential witnesses and directing such witnesses to preserve

20   potentially relevant documents include MGA and MGA HK.  Although employees

21   of MGA Mexico were advised of the filing of the litigation, as a brand new entity

22   with new employees, MGA Mexico would not have had any documents potentially

23   relevant to the allegations set forth in the initial complaint.

24        4.    To clarify Paragraphs 6 and 7 of the September 10 Declaration, the

25   reminder emails that were sent to all employees of MGA on April 14, 2005,

26   December 5, 2006, and July 5, 2007 (reminding employees of their continuing

27   obligation to preserve documents potentially relevant to this litigation, including the

28

**EXHIBIT 4 PAGE 92**

1  new claims) included as recipients Mr. Larian, MGA HK and MGA Mexico

2  personnel.

3      5.      To clarify Paragraph 8 of the September 10 Declaration, the reference to

4  the collection of documents includes documents at MGA and MGA HK with regard

5  to the initial complaint and, later, MGA Mexico.

6      6.      To clarify Paragraph 10 of the September 10 Declaration, the reference

7  to the policy not to routinely destroy paper documents and the retention of certain

8  files includes MGA, MGA HK and MGA Mexico.

9      7.      To clarify Paragraph 11 of the September 10 Declaration, the reference

10  to the use of Microsoft's Exchange server by MGA includes MGA and MGA HK

11  with respect to the time period before 2004.  I am informed that since its

12  establishment in the spring of 2004, MGA Mexico also uses Microsoft's Exchange

13  email system and the Outlook email client.  To further clarify Paragraph 11 of the

14  September 10 Declaration, the reference to the policies regarding auto-deletion of

15  emails and creation of pst files, applies to MGA, MGA HK, MGA Mexico and Mr.

16  Larian.

17      8.      To clarify Paragraph 12 of the September 10 Declaration, the reference

18  to MGA's automation of the process for preserving emails applies to MGA and

19  MGA Mexico.

20      9.      To clarify Paragraph 13 of the September 10 Declaration, the reference

21  to the procedure whereby the IT department copied departing employees' pst files on

22  to CDs applies to MGA and MGA HK as well as MGA Mexico in 2004.  I am

23  informed that the improvement in the system used to preserve such pst files of

24  departing employees in September 2005 applies to MGA and MGA Mexico.  I am

25  also informed that during this time, MGA HK continued its practice of copying

26  departing employees' hard drives, including pst files, on to CDs or DVDs.

27

28

- 3 -

SUPPLEMENTAL DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR
INFORMATION REGARDING DOCUMENT PRESERVATION

EXHIBIT ___4___ PAGE ___93___

10.   To clarify Paragraph 14 of the September 10 Declaration, the reference
to the change in access permissions applies to MGA and MGA Mexico.  With
respect to MGA HK, I am informed that from September 2004 through July 2007,
the emails in a departing employee's mailbox were maintained for three months,
during which time the mailbox was backed up by MGA HK's disaster recovery
system.  I am further informed that since July 2007, in addition to being backed up,
departing MGA HK employees' mailboxes have been preserved on the server.

11.   To clarify Paragraph 15 of the September 10 Declaration, the reference
to "an even more automated process [which] was put in place to preserve and
manage email" applies to MGA and MGA Mexico.

12.   To clarify Paragraph 16 of the September 10 Declaration, the reference
to the nightly back up of the Exchange email server includes MGA, MGA HK and
MGA Mexico.  To further clarify, the reference to the 90-day rotation cycle of back-
up tapes used for the nightly back-up of the Exchange email server applies to MGA
and MGA Mexico.  With respect to MGA HK, I am informed that historically
backup tapes used for the nightly back-up of the Exchange email server had been
rotated on a 7-day cycle, with the back up tapes for the last day of the month being
preserved.  I am informed that since September 2007, all backup tapes used for the
nightly back-up of the Exchange email server at MGA HK have been preserved.

13.   To clarify Paragraph 17 of the September 10 Declaration, the reference
to employees being encouraged to store electronic documents on shared network file
servers, saving documents to "My Documents," and the copying onto CDs of
documents saved by departing employees on their computer's "My Documents"
folder includes MGA, MGA HK and MGA Mexico.  I am informed that the
evolution of the system in September of 2005 applies to MGA and MGA Mexico.
With respect to MGA HK, I am informed that when an employee leaves MGA HK,

- 4 -
SUPPLEMENTAL DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR
INFORMATION REGARDING DOCUMENT PRESERVATION

EXHIBIT ___4___ PAGE ___94___

1  the IT department copies the contents of the My Documents folder onto CDs or
2  DVDs and, more recently, preserves the hard-drive as well.

3      14.   To clarify Paragraph 18 of the September 10 Declaration, the reference
4  to files saved on the shared network file server (drive) includes MGA, MGA HK and
5  MGA Mexico.  I am informed that MGA and MGA Mexico have suffered no server
6  failures since this litigation begin April 2004.  With respect to MGA HK in 2006,
7  MGA HK suffered a server failure, which may have resulted in the loss of some
8  electronically stored data relating to purchasing and shipping information.  I am
9  further informed that paper copies of this information have been maintained.

10     15.   To clarify Paragraph 19 of the September 10 Declaration, the reference
11 to the automated process whereby the contents of the My Documents folders and pst
12 folders saved in users' Exchange folders are copied to a network file server includes
13 MGA and MGA Mexico.

14     16.   To clarify Paragraph 20 of the September 10 Declaration, the reference
15 to the server back ups includes MGA, MGA HK, and MGA Mexico.

16     17.   To clarify Paragraph 21 of the September 10 Declaration,  I am
17 informed that Mr. Larian's My Documents and pst files are regularly backed up by
18 MGA's IT department to the file server, rather than the spare computer.  In addition,
19 when Mr. Larian docks his computer into the MGA network, the email files on his
20 computer are automatically synchronized to the exchange server, rather than the
21 spare computer.

22     18.   To clarify Paragraph 22 of the September 10 Declaration, I am informed
23 that when Mr. Larian needs to replace his computer, the IT department transfers any
24 readable data from the old laptop on to the spare computer before it is provided to
25 Mr. Larian.

26     19.   To clarify Paragraph 23 of the September 10 Declaration, the reference
27 to the personal computers at MGA containing confidential and trade secret

28
- 5 -
SUPPLEMENTAL DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR
INFORMATION REGARDING DOCUMENT PRESERVATION

EXHIBIT __4__ PAGE _95_

1 information includes the personal computers of MGA, MGA HK and MGA Mexico,
2 in addition to the computers used by Mr. Larian.
3      20.   To clarify Paragraph 24 of the September 10 Declaration, the references
4 to the use of the Great Plains and Axapta enterprise accounting packages by MGA
5 includes MGA, MGA HK and MGA Mexico.
6      I declare under penalty of perjury under the laws of the United States that the
7 foregoing is true and correct.
8
9      Executed this 4th day of December, 2007, at Van Nuys, California.
10
11
12                              Daphne Gronich
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
- 6 -
SUPPLEMENTAL DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR
INFORMATION REGARDING DOCUMENT PRESERVATION

EXHIBIT ___4___ PAGE __9𝓊__

# EXHIBIT A

EXHIBIT ___4___ PAGE 97

FILED

2007 SEP 10 PM 4:00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY_____

1  DALE M. CENDALI (admitted *pro hac vice*)
   dcendali@omm.com
2  DIANA M. TORRES (S.B. #162284)
   dtorres@omm.com
3  JAMES P. JENAL (S.B. # 180190)
   jjenal@omm.com
4  O'MELVENY & MYERS LLP
   400 South Hope Street
5  Los Angeles, CA 90071-2899
   Telephone: (213) 430-6000
6  Facsimile: (213) 430-6407

7  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK,
8  JACOBS, WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
9  Los Angeles, CA 90067
   Telephone: (310) 553-3000
10 Facsimile: (310) 557-9815

11 Attorneys for MGA Entertainment, Inc.

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15 CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
                                        (consolidated with CV 04-9059 & 05-
16              Plaintiff,              2727)

17       v.
                                        DECLARATION OF DAPHNE
18 MATTEL, INC., a Delaware             GRONICH IN RESPONSE TO
   Corporation,                         COURT'S REQUEST FOR
19                                      INFORMATION REGARDING
                Defendant.              DOCUMENT PRESERVATION
20

21

22                                      Discovery Cut-off: March 3, 2008
                                        Pre-trial Conference: June 2, 2008
23                                      Trial Date: July 1, 2008

24                                      Judge: Hon. Stephen G. Larson

25

26                                      BY FAX

27

28

Los Angeles Court Services
COPY SENT TO CA2:841480.1
CALENDAR DEPT.

7

GRONICH DECL
CV 04-09049 SGL (RNBX)

EXHIBIT ___4___ PAGE 98

I, Daphne Gronich, declare and state as follows:

1. I am General Counsel for MGA Entertainment, Inc. ("MGA") and a resident of the state of California. All of the facts set forth herein are known to me personally, except for those stated on information and belief and if called as a witness, I could and would testify competently thereto.

**Document Preservation Communications**

2. I have been MGA's General Counsel since December, 2003, and have had oversight responsibility for MGA's legal response to this litigation since its inception. Shortly after Mattel sued Carter Bryant in April 2004, even though MGA had not been named as a defendant in that suit, I communicated to MGA employees that Mattel had filed suit against Carter Bryant alleging that he had breached his employment agreement with Mattel. I advised MGA's employees that MGA might at some point become involved in the litigation, and that it would be prudent for MGA to preserve all documents that might be potentially relevant to the claims at issue in the litigation. In addition to these initial communications, both I and my colleague, Rich Daniels, one of MGA's other in-house attorneys, repeated that advisement at numerous one-on-one and group meetings (including those held in Isaac Larian's office at MGA's former location on Schoenborn Avenue in North Hills) involving senior executives, creative staff members, sales and administration staff and others including IT personnel. These communications took place throughout the late-Spring and Summer of 2004.

3. In addition to those communications, the legal department began locating and collecting documents and materials that might be relevant to the lawsuit against Mr. Bryant. In that regard we were aided by the company's previous efforts to collect certain documents and materials related to the origin and initial development of "Bratz," due to MGA's involvement in prior, unrelated litigation (that did not challenge MGA's ownership of "Bratz"). As a result, we

GRONICH DECL
CV 04-09049 SGL (RNBX)

LA2:841480.1

EXHIBIT ___4___ PAGE 99

1  were able to preserve potentially relevant documents and materials from MGA's

2  employees in California and its related company in Hong Kong, including Isaac

3  Larian, Paula Treantafelles (now Garcia), Dave Malacrida, Victoria O'Connor,

4  Becky Harris, Charles O'Connor, Aileen Storer, Mercedeh Ward, Marcy George,

5  Shirin Salemnia, Edmond Lee, Dennis Soai, Stephen Lee, Samuel Wong, Cecilia

6  Kwok and Franki Tsang.

7        4.    In addition to the communications described above, in the weeks

8  following the filing of Mattel's lawsuit against Carter Bryant, both I and Rich

9  Daniels and/or our outside counsel, spoke with and/or confirmed that MGA had the

10  documents of key potential witnesses, including Isaac Larian, Paula Garcia,

11  Victoria O'Connor, Charles O'Connor, Aileen Storer, Mercedeh Ward, Marcy

12  George, Dennis Soai, Shirin Salemnia, and Dave Malacrida.   During those

13  conversations, we again personally directed MGA's potential witnesses to preserve

14  their potentially relevant documents.

15        5.    As a result of those discussions, MGA's potential witnesses

16  were given express direction by myself, Mr. Daniels, or MGA's outside counsel to

17  preserve their relevant paper documents and to assist, as necessary, MGA's IT

18  department in preserving their emails and electronic documents.  We also directed

19  the IT department to segregate and preserve emails from MGA employees who had

20  since left the company, which former employees included some who had also been

21  previously employed by Mattel prior to working for MGA.

22        6.    In the years since the litigation began, I have sent out reminder

23  emails to MGA's employees reminding them of their continuing obligation to

24  preserve documents potentially relevant to this litigation, including reminder emails

25  that I sent to all MGA employees on April 14, 2005, December 5, 2006, and July 5,

26  2007. In addition, other members of the legal department routinely advise the staff

27  members with whom they work to retain relevant documents. For example, Sam

28  Khare, an MGA in-house lawyer who works closely with the product design teams,

LA2:841480.1               - 2 -               GRONICH DECL
                                     CV 04-09049 SGL (RNBX)

EXHIBIT ___4___ PAGE l00

1   routinely reminds people in the design groups to retain documents.

2          7.      After we became aware of Mattel's claims against MGA, on

3   December 5, 2006 I sent an email to all MGA employees reminding them of their

4   ongoing obligations regarding Mattel's suit against Carter Bryant and informing

5   them of the nature of the new claims against MGA, including the allegation of trade

6   secret theft.  I reminded MGA's employees of MGA's policy that its employees

7   must not bring with them to MGA the property or confidential or proprietary

8   information of their former employers, and instructed them to preserve all

9   documents and materials relevant to these new claims as well.

10          8.      In addition to that communication, we also began collecting and

11  segregating the documents of all former Mattel employees, including those who

12  were no longer employed by MGA.

13          9.      While MGA is ready and willing to produce its communications

14  for the Court's review, I have been informed by MGA's outside counsel that Mattel

15  has taken the position that "it cannot agree" that MGA's production of those

16  communications would not constitute a waiver of the attorney-client privilege.

17  Attached hereto as **Exhibit 1** is a true and correct copy of a letter from Mattel's

18  counsel, Jon Corey, to MGA's outside counsel, Bill Charron, asserting that

19  position.  If the Court wishes to see such communications and agrees with MGA

20  that such production would not constitute a waiver of the attorney-client privilege,

21  MGA will produce its communications within 24 hours of receiving the Court's

22  guidance.

23

24  **Paper Document Preservation**

25          10.     MGA does not now, and never has had a policy to routinely

26  destroy paper documents.  In particular, since this litigation began, MGA has

27  expressly retained paper files in the Creative Departments, character art files,

28  vendor files, executive files and others.

LA2:841480.1                             - 3 -                          GRONICH DECL
                                                                CV 04-09049 SGL (RNBX)

EXHIBIT ___4___ PAGE _101_

**Email Preservation**

11.     Since before 2004, MGA has used Microsoft's Exchange email
system and the Outlook email client to provide email support to the company.
MGA does not have, and never has had, a policy to auto-delete emails; to the
contrary, employees are advised to retain work-related emails.  I am informed by
our IT staff that employees may, and often do, create email storage files (known as
"pst" files) to which they can move emails from their mailbox on the Exchange
server. MGA's practice is to preserve those pst files, and it has done so.

12.     MGA's process for preserving those emails has become more
automated over time as our IT department has grown in its sophistication to meet
the needs of the company, particularly as MGA itself has grown and expanded.  I
am informed that in January of 2000, MGA only had around eighty employees,
whereas by January of 2004 that number had grown to 196 and by January of 2007
it was approximately 900 domestically and 670 internationally, including
subsidiaries.

13.     In 2004, when an employee would leave the company, the IT
department copied the pst files from the employee's computer and burned them
onto CDs that were then retained by the IT department.  I am informed that in
September 2005, the system was improved so that instead of having to copy those
pst files onto CDs, the IT department was then able to preserve those pst files on a
network server.

14.     Emails in the departing employee's mailbox on our Exchange
server are retained on the Exchange server.  The IT department's network
administrators change the access permissions on that employee's mailbox so that
only the administrators can access it.  In that way, those emails are retained and can
be accessed when necessary with proper authorization.

15.     In the past year, an even more automated process was put in
place to preserve and manage email.  In January 2007, the IT department began

LA2:841480.1                                    - 4 -                        GRONICH DECL
                                                                    CV 04-09049 SGL (RNBX)

11

EXHIBIT ___4___ PAGE _102_

1  using a system known as "Archive One" which I am informed automatically

2  archives emails older than 90 days once a user's mailbox exceeds a set size

3  threshold.  In this way, access to older emails is retained, but the size of the user's

4  mailbox files on our Exchange server is controlled.

5      16.  MGA's Exchange email server is also backed up on a nightly

6  basis as a means of disaster recovery.  Historically those backup tapes had been

7  rotated on a 90-day cycle.  However, because we have no policy of auto-deleting

8  emails and because we preserve the mailboxes (and pst files) of former employees,

9  unless an employee violates MGA's policies, and the legal department's express

10  and repeated directives to preserve email, no email would be lost by recycling those

11  backup tapes.

12

13  **Other Electronic Document Preservation**

14      17.  Employees are encouraged to store other electronic documents

15  (such as Word documents or Excel spreadsheets) on a shared network file server.

16  Some employees may also save electronic documents in the "My Documents"

17  folder on their computer.  As was the case for emails saved to local pst files, going

18  back to 2004, if an employee left the company the contents of the My Documents

19  folder was also copied onto CDs and preserved.  Again, when the system evolved in

20  September of 2005, the My Documents folder was preserved onto a network server.

21  Since March of this year, the entire hard drive itself is preserved by the IT

22  department.

23      18.  In addition to those preservation methods when an employee

24  would leave the company, files saved to the shared network file server would be

25  retained indefinitely and protected by nightly backups.  I am informed that since

26  this litigation began in April 2004, MGA has not suffered any server failures that

27  resulted in the loss of data.

28      19.  In April of this year, another automated capability was brought

LA2:841489.1          - 5 -          GRONICH DECL.
CV 04-09049 SGL (RNBX)

12

EXHIBIT __4__ PAGE __103__

1   online.   MGA has now installed an automated process that daily copies the

2   contents of the My Documents folder and any pst files that are saved in the user's

3   "Exchange" folder to a network file server.

4        20.     Within days of learning of Mattel's intent to bring claims

5   against MGA, MGA made, and retains to this day, a complete backup of all of its

6   servers.

7

8   **Preservation of Data from Isaac Larian's Computer**

9        21.     I am informed by our IT department that there are always two

10  laptop computers assigned to Mr. Larian – the computer that he is actively using,

11  and a second, "mirrored" spare computer.  Whenever Mr. Larian docks his

12  computer into the MGA network, any changes that have been made to the files on

13  his computer are automatically "mirrored" or copied to the spare.  In that way, any

14  potential data loss is minimized.

15       22.     I am also informed by our IT department that when Mr. Larian

16  needs to replace his laptop, the IT department starts with the mirrored spare.  If the

17  hard drive on Mr. Larian's old laptop is still operable, they make sure that the files

18  on the mirrored spare contain the most up-to-date information that can be read from

19  the old hard drive.  When all of that data has been copied onto the spare, it is

20  provided to Mr. Larian and a new laptop becomes the mirrored spare.

21       23.     Personal computers at MGA frequently contain a great deal of

22  MGA's confidential and trade secret information – and this is especially true for

23  Mr. Larian's laptop.  I am informed by our IT department that prior to instituting

24  the present policy of retaining computer hard drives, whenever a computer that Mr.

25  Larian had been using was to be retired from his use – whether due to damage or

26  simply the need to provide newer technology – the hard drive was backed up to one

27  of the IT department's archive servers so as to preserve the data that was on the

28  hard drive in a secure location.  Once the data had been safely preserved, the IT

LA2:841480.1                              - 6 -                    GRONICH DECL
                                                         CV 04-09049 SGL (RNBX)

**13**

EXHIBIT ___4___  PAGE _104_

1  department then reformatted the hard drive in such a way that the confidential and
2  trade secret data was no longer present on the hard drive.  Thus, although the hard
3  drive had been "wiped" before being put back into service or disposed of, none of
4  the data had been lost to MGA as it remained preserved on one of the IT
5  department's archive servers.  Today, we would simply retain the hard drive from
6  Mr. Larian.
7
8  **Other Corporate Data Preservation**
9      24.   In 2004, MGA used an enterprise accounting package known as
10  Great Plains.  In January 2006, MGA converted to a newer system known as
11  Axapta and after that time, all new business transactions were processed on the
12  Axapta system.  However, MGA has retained the Great Plains system and I am
13  informed that no data was lost in the conversion.  Accordingly, MGA is able to
14  retrieve transaction data as needed going back to at least 1998.
15
16      I declare under penalty of perjury under the laws of the United States
17  that the foregoing is true and correct.
18      Executed this 10th day of September, 2007, at Van Nuys, California.
19
20                              Daphne Gronich
21
22
23
24
25
26
27
28

LA2:841480.1                        - 7 -                  GRONICH DECL.
                                                    CV 04-09049 SGL (RNBX)

14

EXHIBIT ___4___ PAGE 105

Exhibit 1

EXHIBIT __4__ PAGE __106__

09/07/2007 16:11 FAX  12136433100        QBUOH-LAD-2                              ☑002/003

quinn emanuel  trial lawyers | los angeles
865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

September 7, 2007

VIA FACSIMILE AND U.S. MAIL

William Charron, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

Re:    Mattel, Inc. v. Bryant

Dear Bill:

I write to follow up on the conversation that we had earlier today.

First, you reviewed the questions which MGA instructed Ms. Tonnu not to answer regarding Mr. Speckin's testing and handling of documents, and agreed that MGA would not instruct Ms. Tonnu not to answer such questions when she returns for deposition.

Second, you did not agree to produce to Mattel the documents that refreshed Mr. Lockhart's memory for his deposition, but inquired as to whether Mattel would agree that the content of the preservation affidavits requested by the Court would not constitute a waiver of any privilege. Mattel cannot agree to that. You indicated, however, that MGA may nevertheless include those documents with its affidavit. If MGA elects not to do so, or otherwise fails to produce the documents, then Mattel will ask Judge Infante to rule on MGA's assertion of privilege.

Finally, you agreed to provide, on September 17, 2007, initial disclosures for MGAE de Mexico, MGA Hong Kong and Isaac Larian. You also agreed to provide supplemental initial disclosures for MGA on that date.

quinn emanuel urquhart oliver & hedges, llp
NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
LOS FRANCISCO | 50 California Street; 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2674
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

8

EXHIBIT ___4___ PAGE ___107___

08/07/2007 16:11 FAX  12134433100          QEUGH-LAO-2                              ☑003/003

William Charron, Esq.
September 7, 2007

If the foregoing is inconsistent with your recollection of our conversation, please let me know at your earliest convenience.

Best regards,

Jon D. Corey

JDC:jcl
07200x2214875.1

9

16

EXHIBIT  4  PAGE 108

'SEP-19-2007  16:48      DMM COURT SVCS                    213 430 8136      P.02/02

## PROOF OF SERVICE

I, Karen A. Nakatsu, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899.  On September 10, 2007, I served the within document(s):

**DECLARATION OF DAPHNE GRONICH IN RESPONSE TO COURT'S REQUEST FOR INFORMATION REGARDING DOCUMENT PRESERVATION**

☒ by causing to be personally served the document(s) listed above to the person(s) listed below.

John B. Quinn, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street,
10th Floor
Los Angeles, CA 90017

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.  I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Patricia Glaser, Esq.                   Michael H. Page, Esq.
Christensen, Glaser, Fink, Jacobs,      Keker & Van Nest LLP
Weil & Shapiro, LLP                     710 Sansome Street
10250 Constellation Blvd.,              San Francisco, CA 94111
19th Floor
Los Angeles, CA 90067

James W. Spertus, Esq.
Law Offices of James W. Spertus
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on September 10, 2007, at Los Angeles, California.

_Karen A. Nakatsu_
Karen A. Nakatsu

LA2:#175252

17

TOTAL P.02

EXHIBIT __4__ PAGE _109_

**EXHIBIT 5**

CONFORMED COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Plaintiff Mattel, Inc.

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                  EASTERN DIVISION

| | |
|---|---|
| 13  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 14       Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| 15       vs. | |
| 16  MATTEL, INC., a Delaware corporation, | MEMORANDUM OF POINTS AND AUTHORITIES OF MATTEL, INC. IN OPPOSITION TO MOTION OF MGA ENTERTAINMENT, INC. AND CARTER BRYANT FOR TERMINATING SANCTIONS |
| 17       Defendant. | |
| 18  AND CONSOLIDATED ACTIONS | |
| 19 | [Declarations of Fred T. Kawashima, Michael Moore, Richard De Anda, Jon D. Corey, Timothy L. Alger, Michael T. Zeller and B. Dylan Proctor, filed concurrently] |
| 20 | |
| 21 | |
| 22 | [Notice of Lodging lodged concurrently] |
| 23 | Date:    August 27, 2007 |
| 24 | Time:    10:00 a.m. Place:   Courtroom 1 |
| 25 | Discovery Cut-off: January 14, 2008 |
| 26 | Pre-trial Conference: April 7, 2008 Trial Date:  April 29, 2008 |
| 27 | |
| 28 | |

07209/2191979.7

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ....................................................................................... 2

ARGUMENT ............................................................................................................ 10

I.   MGA AND BRYANT HAVE NO CLEAR AND CONVINCING
     EVIDENCE THAT MATTEL KNOWINGLY DESTROYED
     RELEVANT EVIDENCE, AS REQUIRED ................................................ 10

     A.   Mattel's Litigation Hold Obligations Attached In Late 2003, At
          The Earliest .......................................................................................... 11

     B.   Mattel Preserved All Relevant Documents, And Certainly Did
          Not Knowingly Fail To Do So ............................................................ 13

II.  MGA AND BRYANT HAVE NOT SHOWN EXTRAORDINARY
     CIRCUMSTANCES TO WARRANT DISMISSAL .................................. 16

     A.   There Are No Extraordinary Circumstances ...................................... 16

     B.   Mattel Did Not Act With Bad Faith, Willfulness Or Fault ................ 17

     C.   There Is No Nexus Between The Alleged Misconduct And The
          Merits Of The Case ............................................................................. 19

          1.   Mattel Has Overwhelming Evidence That Bryant Created
               Bratz While Employed By Mattel, And Aided By MGA .......... 19

          2.   The Allegedly Lost Evidence Does Not Even Bear On The
               Issues To Be Tried .................................................................... 20

     D.   MGA and Bryant Were Not Prejudiced .............................................. 22

     E.   Lesser Sanctions Are Available, Although they Are Not
          Appropriate Either ............................................................................... 23

III. DEFENDANTS' HANDS ARE UNCLEAN .............................................. 23

CONCLUSION ........................................................................................................ 25

EXHIBIT __5__ PAGE _111_

# TABLE OF AUTHORITIES

**Page**

## Cases

Adriana Int'l Corp. v. Thoeren,
913 F.2d 1406 (9th Cir. 1990).................................................................. 23

Advantacare Health Partners v. Access IV,
2004 WL 1837997 (N.D. Cal. 2004)...................................................... 16

Agency Holding Corp. v. Malley-Duff & Associates, Inc.,
483 U.S. 143 (1987)............................................................................... 22

Akiona v. U.S.,
938 F.2d 158 (9th Cir. 1991).......................................................... 17, 18

Anheuser-Busch, Inc. v. Natural Beverage Distribs.,
69 F.3d 337 (9th Cir. 1995)..................................................... 16, 17, 18

Bowmar Instrument Corp. v. Texas Instruments Inc.,
1977 U.S. Dist. LEXIS 16078 (N.D. Ind. 1977)................................... 13

Broccoli v. Echostar Communications Corp.,
229 F.R.D. 506 (D. Md. 2005).......................................................... 14, 18

Cache La Poudre Feeds, LLC v. Land O Lakes, Inc.,
2007 WL 684001 (D. Colo. 2007)........................................................ 17

Chambers v. NASCO, Inc.,
501 U.S. 32 (1991)................................................................................ 10

Columbia Pictures Industries v. Bunnell,
2007 WL 2080419 (C.D. Cal. 2007)..................................................... 18

Communications Center, Inc. v. Hewitt,
2005 WL 3277983 (E.D. Cal. 2005)..................................................... 25

Convolve, Inc. v. Compaq Computer Corp.,
223 F.R.D. 162 (S.D.N.Y. 2004).......................................................... 23

Daimler Chrysler Motors v. Bill Davis Racing, Inc.,
2005 U.S. Dist. LEXIS 38162 (D. Mich. 2005).................................... 17

Estrada v. Speno & Cohen,
244 F.3d 1050 (9th Cir. 2001).............................................................. 16

In re Everett,
364 B.R. 711 (D. Ariz. 2007)................................................................ 24

Fayemi v. Hambrecht & Quist, Inc.,
174 F.R.D. 319 (S.D.N.Y. 1997)........................................................... 24

07209/2191979.6

EXHIBIT ___5___ PAGE ͨ112

*FMC Technologies, Inc. v. Edwards,*
2007 WL 1725098 (W.D. Wash. 2007) ............................................................. 11

*Fink v. Gomez,*
239 F.3d 989 (9th Cir. 1991) ............................................................................. 11

*Google, Inc. v. Am. Blind Wallpaper Factory, Inc.,*
2007 U.S. Dist. LEXIS 48309 (N.D. Cal. 2007) ............................................. 23

*Halaco Engineering Co. v. Costle,*
843 F.2d 376 (9th Cir. 1988) ............................................. 16, 19, 23, 24

*Hall v. Wright,*
240 F.2d 787 (9th Cir. 1957) ............................................................................. 24

*Heller v. Plave et al.,*
1993 U.S. Dist. LEXIS 20936 (S.D. Fla. 1993) ............................................. 12

*Henry v. Gill Industries, Inc.,*
983 F.2d 943 (9th Cir. 1993) ..................................................................... 18, 23

*Hobson v. Wilson,*
737 F.2d 1 (D.C. Cir. 1984) ............................................................................. 21

*Housing Rights Center v. Sterling,*
2004 U.S. Dist. LEXIS 28877 (C.D. Cal. 2004) ............................................. 17

*Hynix Semiconductor Inc. v. Rambus, Inc.,*
2006 WL 565893 (N.D. Cal. 2006) ........................................................... 11, 13

*In re Kmart Corp.,*
2007 WL 2198309 (N.D. Ill. 2007) ................................................................. 11

*Lamont v. Wolfe,*
142 Cal. App. 3d 375, 379 (1983) ................................................................... 21

*Leon v. IDM Systems Corp.,*
464 F.3d 951 (9th Cir. 2006) ..................................................................... 17, 18

*Linnen v. A.H. Robins Co., Inc.,*
1999 WL 462015 (Mass. Sup. 1999) ............................................................... 14

*Maynard v. Nygren,*
332 F.3d 462 (7th Cir. 2003) ........................................................................... 11

*Mosaid Technologies Incorporated v. Samsung Electronic Co., Ltd.*
348 F.Supp. 2d 332 (D.N.J. 2004) ................................................................... 18

*In re Napster, Inc. Copyright Litigation,*
462 F. Supp. 2d 1060 (N.D. Cal. 2006) ........................................ 11, 12, 13, 16, 18

*Nostalgia Network, Inc. v. Rayle,*
56 Fed. Appx. 344 (9th Cir. 2003) ................................................................... 16

*Padgett v. City of Monte Sereno,*
2007 U.S. Dist. LEXIS 23409 ......................................................................... 18

07209/2191979.6

EXHIBIT __5__ PAGE __113__

*Pennar Software Corp. v. Fortune 500 Systems Ltd.,*
2001 WL 1319162 (N.D. Cal. 2001) ............................................................... 11

*Phoceene Sous-Marine v. U.S. Phosmarine, Inc.,*
682 F.2d 802 (9th Cir. 1982) .......................................................................... 10

*Polar Bear Prod. v. Timex Corp.,*
384 F.3d 700 (9th Cir. 2004) .......................................................................... 22

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,*
324 U.S. 806 (1945) ........................................................................................ 24

*Residential Funding Corp. v. DeGeorge Financial Corp.,*
306 F.3d 99 (2d Cir. 2002) ............................................................................. 23

*Ritchie v. U.S.,*
451 F.3d 1019 (9th Cir. 2006) ........................................................................ 10

*Roadway Express, Inc. v. Piper,*
447 U.S. 752 (1980) ........................................................................................ 10

*Rohn v. U.S.,*
2002 WL 32123927 (E.D. Cal. 2002) ............................................................ 11

*Roley v. New World Pictures,*
19 F.3d 479 (9th Cir. 1994) ...................................................................... 21, 22

*Shepherd v. American Broadcasting Cos., Inc.,*
62 F.3d 1469 (D.C. Cir. 1995) ....................................................................... 11

*U.S. v. Kitsap Physicians Service,*
314 F.3d 995 (9th Cir. 2002) ................................................................... 12, 15

*U.S. v. Lynch,*
437 F.3d 902 (9th Cir. 2006) .......................................................................... 16

*U.S. v. National Medical Enterprises, Inc.,*
792 F.2d 906 (9th Cir. 1986) .......................................................................... 23

*United States ex rel. Lujan v. Hughes Aircraft Co.,*
67 F.3d 242 (9th Cir. 1995) ..................................................................... 16, 24

*Wanderer v. Johnston,*
910 F.2d 652 (9th Cir. 1990) .......................................................................... 23

*Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.,*
106 F.3d 894 (9th Cir. 1997) .......................................................................... 21

*Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,*
593 F. Supp. 1443 (C.D. Cal. 1984) ........................................................ 14, 17

*Zubulake v. UBS Warburg LLC,*
220 F.R.D. 212 (SD NY 2003) ................................................................ 14, 23

## **Statutes**

Local Rule 7-3 ..................................................................................... 2

Fed. R. Civ. P. 15(c) ........................................................................... 21

Cal. Civ. Code § 3426.6 ...................................................................... 22

EXHIBIT __5__ PAGE __115__

1                           **Preliminary Statement**

2        From the beginning, defendants' strategy in this case was to conceal the true

3 facts, including by obstructing discovery.   Mattel has now obtained numerous

4 Orders compelling discovery from them, and the evidence mounts with each.

5 Evidence that Mattel has recently obtained powerfully shows that, on the merits,

6 Mattel will prevail -- Bryant was disloyal and worked with MGA on Bratz while he

7 was employed and paid by Mattel.   This motion is a desperate attempt to avoid

8 confronting that evidence with a get-out-of-jail-free card.

9        Indeed, defendants have already made many of the arguments they make here

10 in opposing Mattel's Motion for Leave to Amend, and the Court rejected them.   To

11 justify their improper request for reconsideration, they accuse Mattel of

12 "defrauding" the Court when Mattel said it had Zeus backup tapes for 1999 and

13 2000.   Mattel has the tapes and long ago offered to produce them.   They are still

14 available whenever MGA and Bryant want them.   Defendants also argue that emails

15 have been lost since Bryant left Mattel, but they gloss over that Bryant left Mattel *in*

16 *2000.*   Not even defendants contend Mattel had an obligation to preserve evidence

17 before 2002.   Emails relating to Bryant's work at Mattel were automatically deleted

18 from the live servers, and the backup tapes reused, more than a year and a half

19 before the date on which even defendants contend Mattel had to start keeping them.

20        The fact is that Mattel did not have any duty to preserve until late 2003.

21 MGA and Bryant argue the duty was triggered in 2002 because of a Mattel security

22 investigation, but that investigation concerned potential claims that are *not* at issue

23 here.   It did not relate to Bryant's creation of Bratz while he was a Mattel employee

24 or his work for MGA while he was a Mattel employee.   An obligation to preserve

25 occurs when a claim is "probable."   No claim was probable until late 2003, when

26 Mattel first learned that Bryant worked for MGA while still employed by Mattel.

27

28                                     **EXHIBIT**   5   **PAGE** 116

1     Unwittingly, even MGA acknowledges in its motion that, prior to then, Mattel's

2     claims were not "probable" -- they were "speculative."[1]

3         As discussed below, Mattel also has preserved hundreds of terabytes of data

4     and expended many thousands of hours of legal personnel time alone in preserving

5     and collecting documents -- far more than defendants could claim. There was no

6     spoliation. Nor do defendants show that any documents essential to their claims or

7     defenses have been lost. For example, MGA asserts (as it did on Mattel's Motion

8     for Leave to Amend) that a phone log from October 2000 would somehow counter

9     Mattel's claims. The October 2000 phone logs were no longer accessible long

10    before the claims asserted here were "probable." Moreover, a phone log only lists

11    phone numbers and dates of calls, not substance -- a log from October 2000 would

12    add nothing new, particularly since it is undisputed that Bryant was actively

13    working with MGA in October 2000 (and before) while employed by Mattel. MGA

14    asserts that missing evidence could prove its statute of limitations defense, but it

15    could not possibly do so. Among other reasons, that defense was ruled out six

16    months ago in accordance with well-settled law.

17         This motion has the sound and fury typical of hotly contested litigation, but

18    the evidence does not support it. There was no willful destruction of pertinent

19    documents. Defendants' motion should be denied.[2]

20                        **Statement of Facts**

21     <u>Mattel Learned of the Misconduct At Issue In This Case In 2003.</u>  Mattel did

22    not know of the present claims until 2003, precisely because, from the beginning,

23    defendants concealed their joint activities and misconduct. When Bryant left

24    Mattel's employ in October 2000, he lied about where he was going, telling Mattel

25

26

27    [1] Mot. at 22:9-12.

28    [2] MGA and Bryant did not meet and confer before filing this motion, nor do they represent that they complied with <u>Local Rule</u> 7-3. <u>See</u> Declaration of Jon D. Corey, ¶ 2; Declaration of Timothy L. Alger, ¶ 6.

EXHIBIT __5__ PAGE _117_

1  that he was going to do "non-competitive" freelance work.[3]   After that, MGA

2  repeatedly made public statements about the origins of Bratz in the press that

3  claimed persons other than Bryant created Bratz -- sometimes Larian took credit for

4  inventing Bratz (either his kid's clothes inspired him or boredom with Barbie did),

5  sometimes he gave credit to his son for the idea.[4]   Similarly, Larian represented to

6  the U.S. Patent and Trademark Office that Bratz originated from him.[5]   MGA admits

7  that no public statement even recognizing Bryant as Bratz's creator was issued until

8  July 18, 2003, when the <u>Wall Street Journal</u> published an article saying that.[6]

9       In late November 2003, Mattel first learned that Bryant had worked for MGA

10  while employed by Mattel when it obtained a copy of the agreement MGA and

11  Bryant signed while he worked for Mattel.[7]   As this Court has noted, MGA has

12  acknowledged that Mattel was only on notice of its breach of contract-related claims

13  on November 24, 2003.[8]   Mattel sued Bryant on April 27, 2004, accusing him of

14  working for MGA, using Mattel resources, while employed by Mattel.[9]

15       <u>When Mattel Learned of Bryant's Disloyalty, It Took Steps To Preserve</u>

16  <u>Relevant Evidence.</u>   When it learned of Bryant's disloyalty, Mattel investigated and

17  took steps to preserve relevant evidence.  For every percipient Mattel witness Mattel

18

19
20      [3]  Tr. of Jill Nordquist Depo. dated July 31, 2007 at 124:18-125:8, attached as
     Exh. 1 to the Declaration of B. Dylan Proctor, filed concurrently.
        [4]  July 8, 2003 <u>Business Week</u>, March 5, 2004 <u>Chicago Sun-Times</u> and March
21   29, 2004 <u>San Fernando Valley Business Journal</u> articles, Proctor Dec., Exhs. 2-4.
        [5]  U.S. Patent Application, U.S. PTO Dec'n, Proctor Dec., Exhs. 35, 36.
22      [6]  MGA's Responses to Mattel's Requests for Admission (Third Set) at 120
     (Resp. to RFA No. 185), Proctor Dec., Exh. 5 (MGA searched for and was unable to
23   find a prior public statement).
        [7]  Declaration of Michael Moore, ¶ 4; Bryant's Contract With MGA "as of
24   September 18, 2000," attached as Exhibit 1 to Moore Dec.; Mattel's April 27, 2004
     Complaint at 4, ¶ 12, Proctor Dec. Ex. 6.
25      [8]  Order Re Mattel's Motion For Leave To Amend, entered January 12, 2007
     ("Order re FAC") at 14:6-11, Proctor Dec., Exh. 7 ("According to MGA, . . .
26   [Mattel] was aware of the facts alerting it to this claim (insofar as Bryant's contract
     is concerned) on November 24, 2003, when it learned 'that Bryant worked with
27   MGA to develop the 'Bratz' dolls prior to his last day of employment by Mattel and
     hence, prior to the expiration of his contractual relationship with Mattel.") (quoting
28   MGA's Opp. re. FAC at 18, Proctor Dec., Exh. 8).
        [9]  Mattel's Complaint, ¶¶ 12, 18, 23, 30, 41, Proctor Dec., Exh. 6.

EXHIBIT   5   PAGE  118

1  could identify and find, Mattel collected emails and other documents that were

2  stored on Mattel's data servers or personal hard drives, or that could be found in

3  hard copy, and advised them to preserve evidence.[10]  Mattel imaged employee hard

4  drives and preserved over one hundred of them.[11]  Mattel preserved e-mails and any

5  hard drives it could locate in its possession for the percipient witnesses defendants'

6  motion identifies -- Ward, Park, Martinez, Driskill and Treantafelles -- and many

7  more.[12]  Bryant was obviously included in the e-mail and hard drive searches.[13]

8       **Mattel's 2002 "Investigation" Did Not Lead To Mattel's Claims in This Case.**

9  Defendants argue that Mattel had a duty to preserve evidence as of March 2002

10  based on a Spring 2002 investigation conducted by Mattel and an August 2002

11  anonymous letter sent to Mattel.   They claim that Mattel's 2004 "complaint

12  contained, ***almost verbatim***, the allegations that Mattel investigated in 2002."[14]  The

13  claims investigated in 2002 have *not* been asserted in this case.  In March 2002,

14  Mattel investigated allegations of possible copyright infringement of "Toon Teens"

15  designs, not whether Mr. Bryant created Bratz or worked with MGA during his

16  Mattel employment.[15]  The same allegations relating to copyright infringement of

17  "Toon Teens" were reported in the Wall Street Journal in 2003.[16]  Mattel has not

18  asserted Toon Teens copyright claims in this case; in fact, it has been explicit that it

19  is not pursuing any such copyright infringement claim.[17]  In its 2004 Complaint,

20  Mattel asserted tort and breach of contract claims because it learned that Bryant

21

22

---

23  [10]  Moore Dec. ¶¶ 5-11.
    [11]  Id. ¶ 9.
24  [12]  Id. ¶¶ 8, 9.  See also Mot. at 12:17-20.
    [13]  Moore Dec., ¶¶ 6, 8.
25  [14]  Mot. at 6:27-28.
    [15]  Declaration of Richard De Anda, ¶ 2.  As Mr. De Anda has confirmed,
26  Cassidy Park's March 28, 2002 statement about "the design of Lily Martinez" (Burr Dec., Exh. 4) refers to Toon Teens.  De Anda Dec. Re Defendants' Joint Motion to
27  Compel, lodged concurrently.
    [16]  Wall Street Journal Article, Proctor Dec., Exh. 11.
28  [17]  Tr. of Jan. 8, 2007 Proceedings re. FAC at 6:7-7:1, Proctor Dec., Exh. 12; Order re FAC at 15:13-16:11, Proctor Dec., Exh. 7.

**EXHIBIT __5__ PAGE __119__**

1  worked for MGA while Mattel paid him.[18]  Mattel learned in discovery that Bryant

2  created Bratz and worked with MGA to develop it while Mattel paid him, and filed

3  amended claims to clarify that it contends it owns Bratz based on Bryant's

4  Inventions Agreement with Mattel.[19]  None of Mattel's claims asserts infringement

5  of any Toon Teens copyright.[20]

6      <u>Even With An Earlier Notice Date, No Bryant Emails Could Possibly Have</u>

7  <u>Been Spoliated.</u>  Mattel has for many years had a policy of retaining e-mails on its

8  live servers for only 90 days.[21]  MGA asserts that Bryant e-mails were lost because

9  Mattel did not suspend that policy, but that ignores that Bryant left Mattel in

10 October 2000.[22]  Any e-mails Mr. Bryant sent or received, including e-mails

11 pertaining to his work on Bratz while at Mattel, were deleted from the e-mail servers

12 and backup tapes were overwritten by early 2001 at the latest -- long before the

13 March 15, 2002 date on which MGA claims Mattel should have started preserving

14 documents, and even before Bratz was first sold in stores.[23]

15     <u>Mattel Preserved Documents Pertaining To MGA's Complaint.</u>  On April 13,

16 2005, MGA served Mattel with a complaint alleging that Mattel engaged in "serial

17 copycatting" of the Bratz dolls and other MGA products, and that certain alleged

18 conduct by Mattel with buyers, licensees, industry associations, vendors and other

19

20     [18] Mattel's Complaint at 5-11, Proctor Dec. Exh. 6.

21     [19] Mattel's Second Amended Answer and Counterclaims dated July 12, 2007 at
   53-54, ¶¶ 82-87, Proctor Dec. Exh. 13.

22     [20] MGA's counsel has submitted a false declaration in this regard.  Counsel
   declares that Mattel has "not explained" its redactions to an e-mail about the 2002

23 investigation.  Burr Dec., ¶ 6.  However, Mattel produced the document together
   with a privilege log stating the redactions reflect opinions of legal counsel.  Mattel's

24 Supp. Priv. Log Dated February 23, 2007 at 7 (Item No. 29), Proctor Dec., Exh. 9.
   When MGA challenged the propriety of the redaction, Judge Infante reviewed the

25 un-redacted document <i>in camera</i> and <i>sustained</i> Mattel's redactions to the document
   on the basis of privilege.  Jul. 10, 2007 Order at 1-2, Proctor Dec., Exh. 10.

26     [21] Mattel preserved e-mail messages on its e-mail servers for 90 days and
   recycled backup tapes every 30 days.  Depo. Tr. of Fred T. Kawashima (Vol. 1)

27 dated Jan. 17, 2007 ("Kawashima Tr.") at 157:3-158:10, Proctor Dec. Exh. 14.
       [22] Depo. Tr. of Carter Bryant ("Bryant Tr."), dated November 4, 2007, at 55:15-

28 55:21, Declaration of Michael T. Zeller filed concurrently ("Zeller Dec."), Exh. 1.
       [23] Moore Dec. ¶ 6.

1   third parties harmed MGA.[24]  Mattel did not have prior notice that these claims were

2   probable, and MGA does not argue otherwise.   Three days after service of the

3   complaint -- on April 16, 2005 -- MGA sent Mattel a document preservation letter.[25]

4   Two days later, Mattel instructed all Mattel employees to preserve evidence relevant

5   to MGA's newly asserted claims.[26]

6          Mattel responded to MGA shortly thereafter, advising by letter that it would

7   preserve several broad categories of documents which tracked MGA's allegations,

8   including the "My Scene," "Acceleracers," "Wee 3 Friends" and other product lines,

9   communications with MGA and other categories of documents.[27]   Mattel then

10  explained that its e-mail retention period is 90 days, that the allegations in MGA's

11  complaint related to past conduct and that preserving the millions of future,

12  irrelevant e-mails that traverse Mattel's servers each month would cost hundreds of

13  thousands of dollars a year.  *Mattel told MGA, inviting a response, that it did not*

14  *plan to suspend its 90 day retention policy.*[28]  MGA never responded.[29]

15         Instead, MGA chose to remain silent, wait two years and then move for

16  sanctions based on Mattel's disclosed preservation practices, now arguing that

17  Mattel should have suspended its 90-day retention policy.[30]   Within three days of

18  MGA's preservation letter, Mattel took steps to ensure that e-mails *were* preserved.

19  Every day Mattel does a backup of e-mails on its exchange servers.[31]   On April 19,

20  2005, five days after MGA filed suit, Mattel stopped recycling backup tapes of the

21  e-mails on its El Segundo exchange servers.[32]   Mattel has preserved about 4200

22

23

24   [24]  MGA's Complaint filed on April 13, 2005 at 2, Proctor Dec., Exh. 16.
25   [25]  MGA Letter to Mattel dated April 16, Proctor Dec., Exh. 17.
     [26]  Kawashima Tr. (Vol. 2) at 366:1-14. Proctor Dec., Exh. 15.
26   [27]  Mattel Letter to MGA dated May 3, 2005, Proctor Dec., Exh. 18.
     [28]  Id.
27   [29]  Mattel Letter to MGA dated June 11, 2007, Proctor Dec., Exh. 19.
     [30]  Mot., §II(A) at 3-4.
28   [31]  Kawashima Tr. (Vol. 2) at 475:20-476:4, Proctor Dec., Exh. 15.
     [32]  Id. at 300:4-21, MGA admits Mattel implemented this process. Mot. at 4:4-6.

EXHIBIT   5   PAGE  121

1  tapes.[33]  This process has cost Mattel $500,000 to date for tapes alone.[34]  The Court

2  previously ruled that the existence of e-mail backups defeats any spoliation claim.[35]

3          Mattel's 90-day retention policy ensures effective and stable server

4  performance, *i.e.*, delivery of e-mail.[36]  The accumulation of e-mails on Mattel's live

5  servers that MGA now demands would crash these servers.[37]  Mattel's retention

6  period policy and rotation of backup tapes is typical of the policies of other

7  reputable companies such as, for example, Microsoft, TRW, DreamWorks and

8  TCW.[38]  While MGA suggests that Mattel should have suspended the auto-delete

9  policy for individual mailboxes, that is not currently possible, and the only possible

10  workaround would require dramatic configuration changes to the servers.[39]  Given

11  Mattel's preservation of *complete* backup tapes, such dramatic changes were not

12  called for.  That MGA did not respond when Mattel advised it was not discontinuing

13  its preexisting policy for its live servers is telling.[40]

14          MGA asserts that Mattel did not preserve evidence relevant to the "early"

15  development of Mattel's "My Scene" line, but Mattel preserved "My Scene"

16  evidence as soon as MGA filed its lawsuit making claims regarding "My Scene."[41]

17  Mattel's claims against Bryant in April 2004 were unrelated to the "My Scene" dolls,

18  and there was no reason to preserve such evidence at that time.  In any case,

19

20  [33]  Id. at 475:13-19.  See also Alger Dec., ¶¶ 3-5 (Mattel has collected, reviewed and produced hundreds of thousands of pages of pages of documents, including

21  electornic files).
   [34]  Declaration of Fred T. Kawashima Dec. ¶ 3.

22  [35]  Order re FAC at 13:2-5, Proctor Dec., Exh. 7 ("Noticeably absent from MGA's [spoliation] argument is any evidence that the e-mails so deleted from a

23  Mattel employee's inbox are forever lost or, as is far more likely, whether such information remains or is otherwise archived on some backup file . . .").

24  [36]  Kawashima Tr. (Vol. 1) at 256:11-21, Proctor Dec., Exh. 14.
   [37]  Id. at 256:24-257:3 ("If you rely on the user population to perform their own

25  housekeeping, they won't.  They'll just let e-mail grow and grow consuming valuable disk space which will eventually impede performance and shut the server

26  down.").
   [38]  Id. at 215:3-217:13.

27  [39]  Kawashima Tr. (Vol. 2) at 381:4-11, 389:10-390:22, 394:25-396:1, 397:2-403:2, Proctor Dec., Exh. 15.

28  [40]  Mattel Letter to MGA dated June 11, 2007, Proctor Dec., Exh. 19.
   [41]  Mot. at 23:20; Proctor Dec., Exh. 18.

1   fortuitously Mattel *has* preserved documents relevant to the "My Scene" doll line

2   since 2003 because of a separate litigation that involved those dolls.[42]

3       <u>Mattel Offered to Produce 1998 through 2001 Zeus Backup Tapes, But</u>

4   <u>Defendants Did Not Accept.</u>  Defendants accuse Mattel of defrauding the Court by

5   representing that it possesses "Zeus" backup tapes.  Mattel does possess such tapes,

6   and offered them to MGA and Bryant in 2005.[43]  They did not accept.[44]  As part of

7   the investigation that led to the claims asserted in this case, Mattel searched for

8   backup tapes of servers containing files from 1999 and 2000, including Zeus, a

9   network data server.[45]  Mattel has located and preserved older Zeus backup tapes for

10  April, May, August, September and December, 1998; January and February, 1999;

11  February, March, April, May, June, July, August and December, 2000; and January

12  and July, 2001.[46]  That is what Mattel previously offered to defendants, and they can

13  have them now if they want them.  In any case, as the Court noted when MGA last

14  raised this issue, that Bryant claims he never used Zeus, and that his access to other

15  Mattel projects was non-electronic, diminishes the relevance of this entire issue.[47]

16      <u>Mattel Discovered In 2003 That It Had No Records of October or December</u>

17  <u>2000 Phone Calls.</u>  Defendants assert that Mattel intentionally destroyed telephone

18  logs from October 2000.[48]  However, those logs ceased to exist within months of

19

---

20    [42] Moore Dec. ¶¶ 12-13.

21    [43] Zeller Dec. in support of Reply Re FAC, ¶ 14, lodged concurrently.
      [44] Id.

22    [45] Moore Dec. ¶ 11; Depo. Tr. of Julia Marine (Vol. 1) at 42:23-44:8, Proctor
    Dec., Exh. 20.

23    [46] Moore Dec. ¶ 11.  Ms. Marine, on whose testimony defendants rely for their
    fraud on the Court argument, was not responsible for tapes searched and preserved

24  for this litigation, and she expressly testified she did not know the dates of the tapes
    given to the Law Department for preservation.  Marine Tr. (Vol. 3) at 240:7-20,

25  244:10-245:1, Proctor Dec., Exh. 22.
      [47] Order re FAC at 12:4-8 ("MGA's point that access to what was on the Zeus

26  computer system is vital in demonstrating that Bryant was not exposed to or
    otherwise did not hack the system to steal other designers work is diminished to

27  some extent by the fact that Bryant himself testified that he did not use the Zeus
    computer system and was 'pretty much computer illiterate' while employed at

28  Mattel."); Bryant Tr. at 237:17-239:25, Zeller Dec., Exh. 1.
      [48] Mot., §II(H)(c) at 14.

1  Bryant's departure, again long before Mattel allegedly had a duty to preserve.  In

2  2000, Mattel logged phone calls on a PC hardwired to its main phone switch using

3  "Micro Call" software.[49] The logs do not show the substance of conversations -- just

4  originating number from Mattel, telephone number dialed, date, time and duration.[50]

5  The PC itself had capacity for only two and a half months of calls, at most.[51]  As of

6  January 2001, October 2000 phone log information was no longer on the Micro Call

7  PC.[52]  Mattel archived Micro Call logs from the PC on archive tapes and discovered

8  some archive tapes from the relevant time period while searching for phone logs, but

9  could not locate any tapes for October and December 2000.[53]

10        Even if they existed, these logs could not possibly help defendants' cause.

11  Logs from even earlier -- including September 2000 -- have been produced, and

12  reveal calls between Bryant (at Mattel) and MGA.[54]  Other evidence, including other

13  phone records, reveals contacts between them in October.[55]  The absence of still

14  further contacts in October (which is all the logs could show) would prove nothing.

15        <u>Mattel Has Preserved "Diva Starz" Evidence</u>.  Defendants assert that Mattel

16  failed to preserve evidence about the "Diva Starz" doll line.[56]  Mattel did not know

17  the "Diva Starz" line was potentially relevant to its claims against Bryant and MGA

18  ——————————

19     [49]  Tr. of Depo. of Rodney Palmer at 43:23-45:2, Proctor Dec., Exh. 23.  The PC
used was changed in 2003. Id. at 47:19-25.
20     [50]  Id. at 55:20-56:4, 57:13-58:9 (incoming phone numbers not recorded).
    [51]  Id. at 90:17-92:1.
21     [52]  Id. at 86:19-87:10 (phone log information put on tapes monthly).
    [53]  Id. at 51:7-25, 56:24-57:8, 86:19-87:17; Moore Dec. ¶ 10.  The archive tapes
22  were on a three-year rotation policy, which stopped in early 2003 when Mattel
began archiving log information to a network drive. Id.
23     [54]  MicroCall Log for Bryant, at M 0001820-1823, Proctor Dec., Exh. 24; Palmer
Tr. at 109:1-24.
24     [55]  Bryant admits he discussed Bratz with MGA by telephone while he was
working at Mattel. Bryant Tr. at 170:16-172:5, Zeller Dec., Exh. 1.  Phone logs that
25  Bryant has produced also reveal twenty-eight calls with MGA, Margaret Hatch-
Leahy and Veronica Marlow between October 3 and 19, 2000.  Bryant's Tel. Bills at
26  BRYANT 1288 (Oct. 2000), Proctor Dec., Exh. 25; Marlow Tel. Bills at SABW-M
00072-77, 148 (Oct. 2000), Proctor Dec., Exh. 26.  Ms. Hatch-Leahy worked for
27  MGA at the time, and before that worked for Mattel.  Bryant identified Ms. Marlow
as the first person who suggested that he take the Bratz idea to MGA -- she was
28  doing design work for MGA at the time. Bryant Depo. at 5:10-9:6.
    [56]  Mot. at 23:22-24:13.

1 until it discovered, beginning in 2005 (in the context of an unrelated litigation),

2 documents and designs for the "Diva Starz" project that were never publicly

3 released, that pre-date the release of Bratz, and that show that "Diva Starz" dolls

4 share certain common elements with Bratz dolls.[57]   Mattel also discovered during

5 that time that MGA's project manager for Bratz, Paula Garcia, had worked on the

6 Diva Starz project while she and Bryant were Mattel employees.[58]   Hence, the

7 relevance of "Diva Starz" to this suit was not known to Mattel until 2005.   Since

8 then (and, because of separate litigation, even before then), Mattel has preserved

9 more than 70 boxes worth of documents, electronic files, e-mail and tangible items

10 related to "Diva Starz," including those of Diva Starz designers Maureen Mullen,

11 Rene Pasko, Kislap Ongchangco and Joni Pratte, and Rob Hudnut.[59]

12                                        **Argument**

13 I.      **MGA AND BRYANT HAVE NO CLEAR AND CONVINCING**

14          **EVIDENCE THAT MATTEL KNOWINGLY DESTROYED**

15          **RELEVANT EVIDENCE, AS REQUIRED**

16          MGA and Bryant rely exclusively on the Court's inherent power to levy

17 sanctions.[60]   This inherent power "is not a broad reservoir of power, ready at an

18 imperial hand, but a limited source; an implied power squeezed from the need to

19 make the court function," Chambers v. NASCO, Inc., 501 U.S. 32, 42 (1991), which

20 "must be exercised with restraint and discretion." Roadway Express, Inc. v. Piper,

21 447 U.S. 752, 764 (1980).   Defendants must prove that Mattel willfully spoliated

22 relevant evidence by clear and convincing evidence. Ritchie v. U.S., 451 F.3d 1019,

23 1026 (9th Cir. 2006) ("bad faith must be proven by clear and convincing evidence")

24 (citing Phoceene Sous-Marine v. U.S. Phosmarine, Inc., 682 F.2d 802, 806 n.13 (9th

25 Cir. 1982) (noting that "fraud on the court" must be proved by clear and convincing

26 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27 [57]  Moore Dec. ¶ 16, Exh. 4.
    [58]  See Pasko Tr. at 42:13-20, 95:15-96:11, Proctor Dec., Exh. 37.
28 [59]  Moore Dec., ¶¶ 14-15.
    [60]  Their Notice cites no legal basis for their motion, but see Mot. at 15:10-13.

EXHIBIT ___5___ PAGE __125__

1  evidence)); Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 1991) (even "recklessness"

2  is insufficient to justify terminating sanctions under the court's inherent power).[61]

3  They have not done so, and cannot do so.

4      A.    **Mattel's Litigation Hold Obligations Attached In Late 2003, At The**

5             **Earliest**

6       For a litigation hold obligation to attach, the potential claims must be

7  ***"probable,"*** which means ***"more than a possibility."*** In re Napster, Inc. Copyright

8  Litigation, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) (citing Hynix

9  Semiconductor Inc. v. Rambus, Inc., 2006 WL 565893 at *21 (N.D. Cal. 2006))

10  (emphases added).  In Napster, the court found that (i) a Napster investor's receipt

11  of documents in litigation against Napster, and (ii) the investor's entering into a joint

12  defense agreement with Napster, were ***not*** sufficient to trigger litigation hold

13  obligations; rather, the obligation attached only after one of the plaintiffs suing

14  Napster expressly told the investor he would also sue the investor if copyright

15  infringement continued, making litigation "probable."  Id. at 1068-1069.  Even the

16  initiation of a litigation strategy does not require a litigation hold.  See Hynix, 2006

17  WL 565893 at *22-24 (preservation obligation attached when defendant determined

18  that litigation was "necessary or wise" to protect its intellectual property rights, not

19  with initiation of a litigation strategy); In re Kmart Corp., 2007 WL 2198309, at

20

21

22  ───────────────

[61]   See also Pennar Software Corp. v. Fortune 500 Systems Ltd., 2001 WL
23  1319162 at *5 (N.D. Cal. 2001) ("There must be clear and convincing evidence of
   misconduct before a punitive sanction such as a dismissal or default judgment is
24  entered.") (citing Shepherd v. American Broadcasting Cos., Inc., 62 F.3d 1469,
   1476-1477 (D.C. Cir. 1995)); Rohn v. U.S., 2002 WL 32123927 at *1 n.2 (E.D. Cal.
25  2002) (citing Shepherd to apply clear and convincing standard to dismissal sanctions
   request); Maynard v. Nygren, 332 F.3d 462, 468 (7th Cir. 2003) (applying clear and
26  convincing standard to dismissal request based on willfulness, bad faith, or fault);
   FMC Technologies, Inc. v. Edwards, 2007 WL 1725098 at *10 (W.D. Wash. 2007)
27  (no evidentiary sanctions awarded where "allegations regarding the destruction of
   computer files are anything but clear" and the Court "cannot find [spoliation]
28  assertions any more or less credible than [the other side's] explanations for the
   'missing' data.").

07209/2191979.7                       -11-        Case No. CV 04-9049 SGL (RNBx)

EXHIBIT ___5___ PAGE _126_

1   *17-18 (N.D. Ill. 2007) (filing bankruptcy proof of claim insufficient to start
2   litigation hold obligation; it did not mean litigation was "pending" or "impending").

3        Defendants argue that Mattel should have been preserving documents as of
4   March 2002, when Mattel investigated possible copyright infringement of Toon
5   Teens. That argument ignores that Mattel is not suing and never has sued MGA or
6   Bryant for infringement of any Toon Teens copyright. Defendants do not cite any
7   authority for the proposition that an investigation which does *not* lead to a lawsuit
8   on the investigated matter can nevertheless give rise to a duty to preserve. To the
9   contrary, the law is clear that an investigation, in and of itself, does not trigger a
10  company's obligation to preserve evidence -- even where the investigation is of
11  allegations that *are* eventually brought in court. U.S. v. Kitsap Physicians Service,
12  314 F.3d 995, 1001 (9th Cir. 2002) (defendant did not have a duty to preserve when
13  it initiated an internal investigation into allegations of fraudulent billings that
14  plaintiff eventually sued upon); see also Heller v. Plave et al., 1993 U.S. Dist.
15  LEXIS 20936, at * 37-38 (S.D. Fla. 1993) (defendants' interview of plaintiff's
16  accountant held to be insufficient notice of plaintiff's claims where interview was
17  "the first of several events upon which [the] lawsuit [was] based").

18       Moreover, even if (contrary to fact) Mattel had sued upon the claim it
19  investigated in 2002, there still was no duty to preserve because the speculative
20  information available to Mattel at that time did not render litigation "probable" or
21  "wise," as required. In fact, MGA and Bryant concede in their opposition that the
22  claims Mattel investigated in 2002 and 2003 were speculative, asserting that "Mattel
23  deliberately delayed bringing this lawsuit for years because *it knew its claims were*
24  *speculative . . . .*"[62] Precisely because the claims now at bar were "speculative" in
25  2002 (and indeed totally unknown to Mattel), they were not "probable," and Mattel
26  had no duty to preserve. See Napster, 462 F. Supp. 2d at 1068.

27

28
_____
[62]  Mot. at 22:9-12.

EXHIBIT___5___PAGE_127

1   Nor did the August 5, 2002 "anonymous letter"[63] give rise to a duty to
2   preserve.  The letter's author (whoever it was) offered no evidence for his or her
3   allegations.  That letter is clearly insufficient -- it did not provide notice of a claim
4   that was "probable,"  Napster, 462 F. Supp. at 1068-1069,  or "wise," Hynix, 2006
5   WL 565893, at *22-24.  See also Bowmar Instrument Corp. v. Texas Instruments
6   Inc., 1977 U.S. Dist. LEXIS 16078, at *12-13 (N.D. Ind. 1977) ("rumors" and
7   "innuendo" about possible litigation insufficient to attach preservation obligation).
8   Indeed, the Court has recognized this before:  "I certainly know that O'Melveny &
9   Myers would not file a complaint based on an anonymous letter from somebody
10  suggesting that there is a copyright infringement."[64]

11   Contrary to defendants' speculations, Mattel first learned of a probable claim
12  in late 2003, at the earliest.  It was then that Mattel first obtained evidence that
13  Bryant worked for MGA while employed by Mattel, when it obtained a copy of the
14  MGA/Bryant agreement revealing that.  Before that, no claims were probable, and
15  the investigated claims were never brought.

16  **B.    Mattel Preserved All Relevant Documents, And Certainly Did Not**
17  **Knowingly Fail To Do So**

18   Mattel gathered and preserved evidence as soon as it was obligated to do so.
19  Once it learned of the facts giving rise to the claims at bar, Mattel searched for and
20  preserved all relevant documents from every individual likely to have relevant or
21  discoverable information.[65]  This included computer hard drives, emails and paper
22  documents, among other things.[66]  Once MGA filed its lawsuit, Mattel greatly
23  expanded its preservation efforts in light of the expanded scope of the issues, at

24
25
26

---

27   [63]  Proctor Dec., Exh. 27.
     [64]  Jan. 8, 2007 Hearing Tr. at 16:14-17:7, Proctor Dec., Exh. 12
28   [65]  Moore Dec. ¶¶ 6-11.
     [66]  Id.

EXHIBIT  5  PAGE 128

1  substantial expense.[67]  Mattel did not destroy any relevant information, let alone do
2  so willfully to prejudice defendants.

3      Defendants fault Mattel for failing to "suspend its routine document retention
4  and destruction policies."[68]  However, no case they cite supports the breathtaking
5  proposition that Mattel had to retain every e-mail on its live exchange servers or
6  reconfigure its servers to create a different retention rule on a mailbox-by-mailbox
7  basis.  A litigant has no duty to preserve every document in its possession.  Wm. T.
8  Thompson Co. v. General Nutrition Corp., Inc., 593 F. Supp. 1443, 1455 (C.D. Cal.
9  1984).  A party has to preserve only what it knows, or reasonably should know, is
10  relevant in the action, is reasonably calculated to lead to the discovery of admissible
11  evidence, is reasonably likely to be requested during discovery and/or is the subject
12  of a pending discovery request.  Zubulake v. UBS Warburg LLC, 220 F.R.D. 212,
13  217-218 (SD NY 2003).  There is nothing improper about Mattel's e-mail retention
14  policy; it is standard for large corporations.[69]  Courts have found that 90-day
15  retention period policies and thirty-day recycling of back-up tapes are reasonable
16  retention policies.  Broccoli v. Echostar Communications Corp., 229 F.R.D. 506,
17  510 (D. Md. 2005) (under normal circumstances, a retention policy that deletes e-
18  mails even after only thirty days with no backups is acceptable); Linnen v. A.H.
19  Robins Co., Inc., 1999 WL 462015, at *1 (Mass. Sup. 1999) (three month retention
20  of internal communications and recycling of backup tapes for such information is "a
21  widely accepted business practice").

22      As soon as it had a probable claim, Mattel preserved the evidence it could
23  locate relevant to the claims it anticipated bringing.  The suggestion that Mattel
24  should have stopped its 90-day retention policy in November 2003 (or even 2002),
25  and crashed its servers, is unfounded.  Any Bryant-related e-mails (beyond those
26
27
        [67]  Mattel Letter to MGA dated May 3, 2005, Proctor Dec., Exh. 18.
28      [68]  Mot., §III(A)(3) at 17-18.
        [69]  Kawashima Tr. (Vol. 1) at 215:3-217:13.

1   that Mattel had on paper form or stored in locations other than its servers) had long

2   since left Mattel's e-mail servers when Mattel learned, notwithstanding defendants'

3   concealment, of Bryant's disloyalty.  Suspending the 90-day retention policy years

4   after Bryant worked at Mattel would have preserved nothing relevant.  Defendants

5   suggest at one point that Mattel had a duty to preserve e-mails dating back to the

6   1998-2001 time frame -- before Bratz was introduced, and long before defendants

7   contend Mattel had notice of its claims.[70]  But Mattel obviously had no duty to

8   preserve documents before it learned of Bryant's misconduct.  <u>U.S. v. Kitsap</u>

9   <u>Physicians Service</u>, 314 F.3d 995, 1001 (9th Cir. 2002) (no spoliation where

10   documents were destroyed in normal course of business before party had notice).

11        Defendants accuse Mattel of failing to preserve Zeus backup tapes.  As

12   discussed, Mattel has the tapes it said it had.[71]  Perhaps recognizing that, MGA and

13   Bryant argue that Mattel "destroyed" Zeus backup tapes when it disposed of tape

14   drives for those tapes after it stopped using DLT tapes.[72]  The Court has already

15   rejected that argument, holding that the fact that Mattel's IT Department no longer

16   has the hardware to read those tapes "certainly does not demonstrate that the

17   information on those backup tapes has been 'eliminated' or forever lost . . . .  [T]o

18   argue, as MGA does, that the information is 'unavailable' or 'lost' . . . exaggerates its

19   plight."[73]  A CD owner does not "destroy" the music on the CD when he or she loses

20   or sells a CD player, yet that is essentially all defendants can argue here.[74]

21

22

23

24

---

25   [70] Mot. at 9:23-25; 12:17-18.

26   [71] Mot., §II(G) at 10-11.

    [72] Mot. at 8:23-9:1; Marine Tr. (Vol. 2) at 119:10-13, Proctor Dec., Exh. 21.

27   [73] Order re FAC at 11:19-25, Proctor Dec., Exh. 7.

    [74] Notably, these tapes are not unique to Mattel.  Indeed, vendors tout their

28   ability to read and restore DLT backup tapes.  Zeller Dec. Re FAC ¶ 14, lodged concurrently;  <u>see also</u> e.g., http://www.bluestarcs.com/backup_tape.html, Proctor Dec., Exh. 28 (vendor's website stating it can restore and read on DLT tapes).

-15-

Case No. CV 04-9049 SGL (RNBx)

MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

EXHIBIT  5  PAGE  130

## II.   MGA AND BRYANT HAVE NOT SHOWN EXTRAORDINARY CIRCUMSTANCES TO WARRANT DISMISSAL

Even if defendants had clear and convincing evidence of Mattel's willful destruction of relevant evidence, which they do not, the analysis would not end there.  Before imposing dismissal sanctions, the Court would also have to find (i) extraordinary circumstances, (ii) willfulness or fault, (iii) that there is a nexus between the misconduct and the merits of the case, (iv) lesser sanctions are not viable, and (v) prejudice.  Halaco Engineering Co. v. Costle, 843 F.2d 376, 381-382 (9th Cir. 1988).

MGA and Bryant argue that the balancing test in Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995), is controlling.  It is not.  The *en banc* Halaco decision controls.  See U.S. v. Lynch, 437 F.3d 902, 912 (9th Cir. 2006) (holding that a three-judge panel of Court of Appeals may not overrule previous decision of court sitting en banc); see, e.g., Nostalgia Network, Inc. v. Rayle, 56 Fed. Appx. 344 (9th Cir. 2003) (applying Halaco standards); Estrada v. Speno & Cohen, 244 F.3d 1050, 1055-1056 (9th Cir. 2001) (same); United States ex rel. Lujan v. Hughes Aircraft Co., 67 F.3d 242, 247 (9th Cir. 1995) (same); In re Napster, 462 F. Supp. 2d at 1070-77 (same).  Defendants meet none of the Halaco standards, or even the Anheuser-Busch standards.

### A.   There Are No Extraordinary Circumstances

"[E]xtraordinary circumstances exist where there is a pattern of disregard for Court orders and deceptive litigation tactics that threaten to interfere with the rightful decision of a case."  Advantacare Health Partners v. Access IV, 2004 WL 1837997 at *5 (N.D. Cal. 2004) (citing Halaco, 843 F.2d at 31) (no extraordinary circumstances even though defendants admitted to intentionally destroying relevant evidence); see Anheuser-Busch, 69 F.3d at 348 (terminating sanctions are warranted when "a party has engaged in deliberately deceptive practices that undermine the integrity of judicial proceedings").  Defendants cannot show any "deceptive

1  litigation tactics that threaten to interfere with the rightful decision of the case" or
2  that "undermine the integrity of judicial proceedings."  Adhering to well-accepted,
3  routine document retention policies and then, after notice of a probable claim,
4  collecting and preserving evidence is not "deceptive."
5      Defendants' own cases confirm that Mattel's conduct warrants no sanctions,
6  much less terminating ones.  In <u>Housing Rights Center v. Sterling</u>, 2004 U.S. Dist.
7  LEXIS 28877, at *21-29 (C.D. Cal. 2004), this Court held that terminating sanctions
8  were not appropriate even after a defendant ***admitted to destroying*** categories of
9  ***indisputably relevant*** documents.  In <u>Wm. T. Thompson Co.</u>, 593 F. Supp. at 1446-
10 50, the court found terminating sanctions appropriate only after expressly finding
11 that defendant destroyed unquestionably relevant documents and made ***no effort*** to
12 preserve relevant documents, in violation of two Court Orders.  In <u>Cache La Poudre</u>
13 <u>Feeds, LLC v. Land O Lakes, Inc.</u>, 2007 WL 684001 at *17 (D. Colo. 2007), the
14 court found no bad faith even though the defendant allowed the destruction of
15 documents that "might have contained relevant" information.  And in <u>Daimler</u>
16 <u>Chrysler Motors v. Bill Davis Racing, Inc.</u>, 2005 U.S. Dist. LEXIS 38162 (D. Mich.
17 2005), the court found terminating sanctions were ***not*** appropriate even where the
18 party made ***no effort*** to retain documents after suit filed.  Mattel did not violate any
19 Order here, and it took substantial measures to preserve relevant documents.
20 Mattel's conduct simply does not compare to any case in which terminating
21 sanctions have been imposed.
22     **B.    Mattel Did Not Act With Bad Faith, Willfulness Or Fault**
23     MGA and Bryant attempt to show bad faith, willfulness or fault by proving
24 "only" that Mattel had "some notice" that automatically deleted e-mails were
25 potentially relevant to the litigation.[75] They rely on <u>Anheuser Busch, Leon v. IDM</u>
26 <u>Systems Corp., 464 F.3d 951</u>, <u>Akiona v. U.S.</u>, 938 F.2d 158 (9th Cir. 1991), and
27
28
___
[75]  Mot. at 16:6-8, 18:27-19:2.

1    Henry v. Gill Industries, Inc., 983 F.2d 943 (9th Cir. 1993), to support this purported

2    low threshold for finding bad faith.[76] However, as discussed, defendants must prove

3    Mattel's willful spoliation by clear and convincing evidence.[77]   Moreover, even

4    these cases show that Mattel's conduct does not reveal bad faith, willfulness or fault.

5    In Akiona, for example, the Ninth Circuit found no bad faith when the records were

6    deleted "pursuant to a policy of destroying documents two years after their

7    disposition" and "consistent with the party's document retention policies." 938 F.2d

8    at 160-161.  Even by defendants' factually erroneous account of what has and has

9    not been preserved, that is the most that happened here.[78]

10          Even if it were possible to fault Mattel for not suspending its 90-day retention

11   policy earlier -- and Mattel submits that it is not -- that simply is not sufficient to

12   support terminating sanctions.   See Napster, 462 F. Supp. at 1072-1074, 1077

13   (rejecting terminating sanctions because there were some efforts to preserve relevant

14   documents, even though party instructed its employees to delete relevant e-mails);

15   Broccoli, 229 F.R.D. at 511-512 (denying terminating sanctions although zero effort

16   to preserve documents); Mosaid Technologies Incorporated v. Samsung Electronic

17   Co., Ltd., 348 F.Supp. 2d 332, 339 (D.N.J. 2004) (same); Columbia Pictures

18   Industries v. Bunnell, 2007 WL 2080419, at *14 (C.D. Cal. 2007) (no evidentiary

19

20

21   _____

22      [76]  Mot. at 16:5-17.
        [77]  Supra § I.
23      [78]  Contrast Leon v. IDX Systems Corp., 464 F.3d 951, 959 (9th Cir.
     2006)(plaintiff admitted to intentionally deleting every "personal" file on work
24   laptop, and Court found personal files there "highly relevant" to employment
     discrimination claim); Anheuser-Busch, 69 F.3d at 349-351 (plaintiff "repeatedly
25   lied" to defendant and court that relevant documents had burned in a fire); Henry,
     983 F.2d at 947-949 ("disobedient conduct" justifying bad faith included failure to
26   appear for deposition twice, failure to respond to interrogatories, and disobeying
     Court order awarding monetary sanctions); Padgett v. City of Monte Sereno, 2007
27   U.S. Dist. LEXIS 23409 *9 (though party failed to preserve hard drive despite
     specific discovery request asking to inspect it and court order to "preserve
28   everything" and "delete nothing" in the hard drive, terminating sanctions not
     awarded in absence of finding of prejudice).

EXHIBIT   5   PAGE   133

1    sanctions in the absence of any violation of a preservation order, even though

2    "extremely relevant" data was lost).[79]

3       **C.**      **There Is No Nexus Between The Alleged Misconduct And The**

4                   **Merits Of The Case**

5       To prove the required nexus, defendants must show by clear and convincing

6    evidence that the allegedly destroyed evidence bears on the matters in controversy in

7    such a way as to interfere with the rightful decision of the case. Halaco, 843 F.2d at

8    381-382. That *clearly* is not the case here.

9       **1.**      **Mattel Has Overwhelming Evidence That Bryant Created**

10                   **Bratz While Employed By Mattel, And Aided By MGA**

11       The evidence that bears on the actual merits of this case is one-sided and

12    overwhelming. Notwithstanding defendants' pattern of obstructionism that has

13    required Judge Infante to issue multiple orders to compel against them, Mattel has

14    obtained powerful evidence showing that Bryant created Bratz and worked on it

15    with MGA while employed by Mattel. Among much else, this includes:

16      • After being compelled to produce documents in January 2007, Bryant
17        for the first time produced Bratz drawings dated September 1999 --
          squarely during Bryant's Mattel employment.[80]

18      • After being compelled to testify, MGA's Bratz project manager, Paula
19        Garcia, admitted that Bryant created a key Bratz design during the time
          of his Mattel employment.[81]

20      • After being compelled to produce documents in May 2007, MGA
21        produced an internal MGA e-mail message stating that the first Bratz
22        dolls were created in September 2000.[82] MGA's initial copyright

23 _____

[79]    Revealing how thin the reed defendants hope to grasp is, they argue Mattel
24   engaged in "bad faith" by delaying the deposition of its designee on email
   preservation. Mot., §II(F) at 8-10. Defendants' assertions are misleading and
25   irrelevant. Corey Dec. ¶¶ 3-5. They are also a virtual rehash of an argument the
   Court previously rejected. Proctor Dec., Exh. 7 at 12:16-13:1.
26   [80]   See Jan. 25, 2007 Order, Zeller Dec., Exh. 2; Drawings, Zeller Dec., Exhs. 3
   & 4.
27   [81]   See Discovery Master's May 15, 2007 Order, Zeller Dec., Exh. 5; Depo. Tr. of
   Paula Garcia (Vol. 2), dated May 25, 2007, at 590:10-592:4.
28   [82]   See Discovery Master's May 15, 2007 Order, Zeller Dec., Exh. 5; E-mail
   dated September 6, 2001, Bates-numbered MGA 0069426-7, Zeller Dec., Exh 6.

MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

EXHIBIT __5__ PAGE __134__

registrations for those dolls and the Bratz sculpt also list their dates of creation as 2000.[83]  After this lawsuit was filed, MGA then "corrected" those registrations to state that the dolls were created in 2001.[84]

- Fahrad Larian, a former MGA executive and Isaac Larian's brother, has stated in court pleadings that Bryant brought Bratz to MGA by February 2000 -- and that they attempted to conceal it.[85]
- Anna Rhee, the face painter of Bratz, testified that invoices dated as early as June 12, 2000 were for work she performed on Bratz for MGA under the "code name" of "Angel."[86]

The list of damning evidence literally goes on and on.[87]

### 2. The Allegedly Lost Evidence Does Not Even Bear On The Issues To Be Tried

There is little defendants can say about this evidence, or about how the allegedly spoliated evidence could change it.  Defendants' primary argument is that emails from 2002-2005 could support their statute of limitations defense.  That argument is fundamentally misguided.  Mattel had no duty to preserve evidence until late 2003 at the earliest.[88]  At the same time, there is no dispute that Mattel was on notice of its claims at issue here by late 2003.  There is simply no reason to think, as defendants suggest, that keeping additional, irrelevant emails in late 2003 or 2004 (through a suspension of the auto-delete policy) would somehow push the notice date *earlier* than late 2003 -- and emails from 2002 and early 2003 were already long gone from the live servers and the back-up tapes.[89]  In any case, the law is clear that an investigation into a claim that is not sued upon, such as the 2002 "Toon Teens" investigation defendants rely on, does not constitute notice for statute of limitations purposes.  Westinghouse Elec. Corp. v. General Circuit Breaker &

---

[83] See Copyright Registrations, Zeller Dec., Exhs. 7-11.
[84] See Copyright Correction Forms, Zeller Dec., Exh. 12.
[85] See Farhad Larian's Complaint in Larian v. Larian, Case No. BC301371, dated August 25, 2003, at ¶¶ 13-16, Zeller Dec., Exh. 14.
[86] See Depo. Tr. of Anna Rhee, dated February 3, 2005, at 197:6-197:25 and 199:8-199:16, Zeller Dec., Exh. 13.
[87] See, e.g., Zeller Dec., ¶¶ 15-21, Exhs. 14-20.
[88] See supra, § I(A).
[89] Moore Dec. ¶ 6.

Case No. CV 04-9049 SGL (RNBx)
MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

EXHIBIT ___5___ PAGE 135

1   Elec. Supply Inc., 106 F.3d 894, 899 (9th Cir. 1997) (defendants making a statute of
2   limitations argument must prove that the plaintiff knew of facts giving it notice of its
3   trademark counterfeiting cause of action, not just any cause of action); Hobson v.
4   Wilson, 737 F.2d 1, 35 (D.C. Cir. 1984) (for constructive discovery of a cause of
5   action to trigger the statute of limitations, the plaintiff must know facts giving notice
6   of the *particular* cause of action at issue; notice of a particular claim does not mean
7   a simple suspicion of wrongdoing, but rather "awareness of sufficient facts to
8   identify a particular cause of action . . . not . . . the kind of notice -- based on hints,
9   suspicions, hunches or rumors -- that requires a plaintiff to make inquiries in the
10  exercise of due diligence, but not to file suit").

11      Moreover, the Court has already rejected defendants' statute of limitations
12  defense, which was "pressed emphatically at oral argument" on Mattel's Motion  for
13  Leave, ruling that Mattel's claims are timely because they relate back to Mattel's
14  April 2004 Complaint.[90]  Indeed, many of Mattel's claims would be timely even if
15  there was no relation back.   For example, Mattel's copyright infringement
16  counterclaim has a rolling statute of limitations -- it could not possibly be
17  completely time barred.  Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.
18  1994) (section 507(b) "does not provide for a waiver of infringing acts within
19  limitation period if earlier infringements were discovered and not sued upon"); Polar
20  Bear Prod. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) (accord).  Many of
21  Mattel's other claims would also be timely even if Mattel were on notice of its
22  claims in 2002, as defendant allege.  See, e.g., Agency Holding Corp. v. Malley-
23  Duff & Associates, Inc., 483 U.S. 143, 156 (1987) (limitations period for civil RICO
24  actions is four years); Cal. Civ. Code § 3426.6 (limitations period for
25  misappropriation of trade secrets claims is three years).

26

27   [90]   Order Re FAC at 13-15, Proctor Dec., Exh. 7; see also Fed. R. Civ. P. 15(c);
     Lamont v. Wolfe, 142 Cal. App. 3d 375, 379 (1983) (amended claims relate back to
28   the original complaint where same transaction or occurrence is involved in both
     pleadings).

1   Defendants' other arguments fare no better.

2   • Defendants' assertion that lost emails could bear on "Carter Bryant's
3   employment and work at Mattel, including emails and data that would refute
    Mattel's claims that he did not meet his employment obligations," ignores that
4   such emails disappeared from Mattel's live servers and backup tapes by early
5   2001, long before even defendants could contend Mattel was on notice.[91]

6   • Hypothetical 2004, post-litigation e-mails among random Mattel employees
    sympathizing with Bryant will neither prove nor disprove any issue to be
7   tried.[92]

8   • Defendants argue that Mattel should have preserved "communications with
    suppliers, retailers, and others to impair MGA's ability to compete" and other
9   documents relating to MGA's claims.[93]  However, Mattel first had notice of
    these allegations when MGA filed its complaint in April 2005, and
10  immediately took proper steps to preserve such evidence.

11  • Defendants complain that "lost" October 2000 "time" records (when Bryant
    admits he was negotiating his deal with MGA) would exonerate Bryant,
12  presumably by proving that he was working on Mattel projects.  Actually,
13  Bryant's October 2000 "time" records are not lost -- and they show that he
    recorded *no* time to any Mattel project, only to vacation time, that month.[94]
14

15  **D.   MGA and Bryant Were Not Prejudiced**

16      Virtually all courts consider prejudice to the party seeking terminating
17  sanctions.  See, e.g., Halaco, 843 F.2d at 383; U.S. v. National Medical Enter., Inc.,
18  792 F.2d 906, 913 (9th Cir. 1986) (prejudice "is an important factor that the district
19  court should weigh before granting the extreme sanction of dismissal"); Henry, 983
20  F.2d at 948 (referring to prejudice as a "key factor"); Wanderer v. Johnston, 910
21  F.2d 652, 656 (9th Cir. 1990) (the element of prejudice is "essential"); Adriana Int'l
22  Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990) (when an order is violated,
23  prejudice and availability of lesser sanctions are decisive factors).

24

25  _____

26  [91] More Dec. ¶ 6.
    [92] Mot. at 23:1-10.
27  [93] Mot. at 23.20-21.
    [94] Depo. Tr. of Arnold Artavia dated Sep. 21, 2006, at 105:14-106:9, Exh. 350
28  thereto, Proctor Dec., Exhs. 29, 30 (only admin. time recorded in Oct. 2000, which
    was used to record vacation and other non-project time).

1   There can be no presumption of prejudice absent a showing of "gross
2   negligence." Convolve, Inc. v. Compaq Computer Corp., 223 F.R.D. 162, 176
3   (S.D.N.Y. 2004) (citing Residential Funding Corp. v. DeGeorge Financial Corp.,
4   306 F.3d 99, 109 (2d Cir. 2002)). No case defendants cite holds that efforts to
5   preserve relevant evidence like Mattel's even approach gross negligence.[95] Hence,
6   defendants must *prove* that the allegedly lost information contains relevant
7   information -- they must present evidence that the alleged missing evidence would
8   have been of the nature they assert and would favor them. Convolve, 223 F.R.D. at
9   176; Zubulake, 220 F.R.D. at 221. MGA and Bryant have not identified a single
10  relevant e-mail that was permanently destroyed (i.e., no backup available) pursuant
11  to Mattel's 90-day retention policy.

12      **E.      Lesser Sanctions Are Available, Although they Are Not**
13              **Appropriate Either**

14      Before imposing terminating sanctions, the Court must consider lesser
15  sanctions and explain the reasons for rejecting them. U.S. ex rel. Lujan v. Hughes
16  Aircraft Co., 67 F.3d 242, 247-248 (9th Cir. 1995) (citing Halaco Engineering Co. v.
17  Costle, 843 F.2d 376, 381 (9th Cir. 1988)). MGA and Bryant do not seek lesser
18  sanctions, and neither the relief they do seek nor such lesser sanctions are justified.

19  **III.   DEFENDANTS' HANDS ARE UNCLEAN**

20      Given their own demonstrable -- and quite intentional -- spoliation of
21  evidence, defendants' accusations against Mattel are reprehensible. They
22  independently disentitle defendants to any relief. To obtain sanctions from the
23  Court, MGA and Bryant must have clean hands. See, e.g., In re Everett, 364 B.R.
24  711, 723 (D. Ariz. 2007) (doctrine of unclean hands demands party seeking
25
26  _____

[95]   The two cases MGA cites here, Residential Funding Corp. v. Degeorge
27  Financial Corp., 306 F.3d 99, 112 (2d Cir. 2002), and Google, Inc. v. Am. Blind
    Wallpaper Factory, Inc., 2007 U.S. Dist. LEXIS 48309, at *15-16 (N.D. Cal. 2007),
28  dealt with, respectively, gross failure to produce documents in time for trial and
    refusal to even search for responsive documents.

MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

**EXHIBIT   5    PAGE 138**

equitable relief to "act fairly in the matter for which he seeks a remedy.  He must come into court with clean hands or he will be denied relief, regardless of the merits of his claim.") (citing Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814-815 (1945); Hall v. Wright, 240 F.2d 787, 794-795 (9th Cir. 1957); Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319, 226 (S.D.N.Y. 1997) (party who obtained copies of confidential files improperly was allowed to use such evidence because opposing party had subsequently destroyed the files, knowing they were relevant)).  Defendants' hands are unclean.

First, both MGA and Bryant engaged in a conspiracy to conceal when and by whom Bratz was created.  Bryant lied to his co-workers when he left Mattel, saying that he was going to a non-competitive position.[96]  MGA filled the press with false stories about the creation of Bratz.[97]

Moreover, defendants have tampered with and destroyed unquestionably relevant evidence:

- Bryant long refused to produce the hard drive of a computer he testified he used during the relevant time period,  finally producing the drive after no less than three motions by Mattel and a Court Order.[98]  In opposing Mattel's motions to compel Bryant's hard drive, Bryant's counsel represented that defendants had "tirelessly searched for and inspected [Bryant's] hard drives for relevant information," but located no "relevant" or "responsive" documents.[99]  It turns out, Bryant had installed the program "Evidence Eliminator" on the hard drive.[100]  The only purpose of this program, as both Courts and the program's creators acknowledge, is to permanently destroy data to prevent its use in legal proceedings.  See, e.g., Communications Center, Inc. v. Hewitt, 2005 WL 3277983, at * 2 (E.D. Cal. 2005) (finding use of Evidence Eliminator on hard drives was willful and in bad faith, and intended to destroy discoverable evidence).

---

[96] Nordquist Tr. at 124:18-125:8, Proctor Dec., Exh. 1.
[97] Proctor Dec., Exhs. 2-4.
[98] Zeller Dec., ¶¶ 22-23, Exhs. 21-22.
[99] Zeller Dec., ¶ 24; Exhs. 23-24.
[100] Zeller Dec., ¶ 25, Exh. 25.

EXHIBIT __5__ PAGE _139_

1   •    Bryant and MGA engaged in destructive testing of Bryant's original Bratz drawings without notice to the Court or Mattel.[101] The Court recognized that
2        defendants' handling of these "critical documents" raises "serious questions . .
3        . [which cause] the Court much concern about whether the truth seeking
4        functions of the adversarial system have been fundamentally compromised in this case."[102]
5   •    MGA's CEO, Isaac Larian, ordered another MGA executive to redact "Barbie
6        Collectibles" from the faxed version of Bryant's Bratz agreement with MGA to conceal that Bryant had sent the contract from Mattel's Design Center.[103]
7   •    Since MGA intervened in Mattel's lawsuit against Bryant in December 2004,
8        Isaac Larian has destroyed his computers and the information contained on them.[104] MGA also "wiped" the information from the hard drives of Mr.
9        Larian's computers every six months to a year, preserving only a portion of
10       the information they contained.[105]
   •    MGA does not preserve backup tapes for any e-mail server, but overwrites
11       them every eight weeks.[106]

12       That defendants can bring themselves to request gratuitous sanctions against

13  Mattel for non-preservation is remarkable, to say the least.

14  **<u>Conclusion</u>**

15       Mattel respectfully requests that the Court deny this motion in its entirety.

16  DATED: August 13, 2007      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

17

18                 By _____

19                 John B. Quinn
                  Attorneys for Plaintiff
20                 Mattel, Inc.

21

22  _____

23  [101]   Court's Order Denying Appointment of Expert Witnesses ("Expert Witnesses Order"), dated August 11, 2006, at 4:19-7:3, Zeller Dec., Exh. 26; <u>see</u> <u>also</u> Declaration of Erich J. Specking Re Expert Witness Order, ¶ 8, lodged concurrently
24  (performed ink testing for on MGA on various Bratz documents).
   [102]   Expert Witnesses Order at 11:10-13, Zeller Dec., Exh. 26.
25  [103]   O'Connor Tr. at 18:13-18, Zeller Dec., Exh. 27; <u>See</u> Expert Witness Order at 7:4-21, 8:10-9:9, 18:8-10, Zeller Dec., Exh. 26; Consulting Agreement, Zeller Dec.,
26  Exh. 28.
   [104]   See Depo. Tr. of Ken Lockhart (Vol. 2), dated May 15, 2007 at 255:2-256:18,
27  Zeller Dec. Exh. 30.
   [105]   See Lockhart Tr. (Vol. 2) at 255:2-258:9, Zeller Dec., Exh. 30.
28  [106]   See Deposition Transcript of Ken Lockhart (Vol. 1), dated May 14, 2007 at 114:2-8, 116:15-117:11, 118:8-18, 123:17-22; Zeller Dec., Exh. 29.

EXHIBIT __5__ PAGE __140__

**EXHIBIT 6**

1   DALE M. CENDALI (admitted *pro hac vice*)
    O'MELVENY & MYERS LLP
2   400 South Hope Street
    Los Angeles, CA 90071-2899
3   Telephone:  (213) 430-6000
    Facsimile:   (213) 430-6407
4   Email:         jjenal@omm.com

5   PATRICIA GLASER (S.B. # 55668)
    CHRISTENSEN, GLASER, FINK,
6   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
7   Los Angeles, CA 90067
    Telephone:  (310) 553-3000
8   Facsimile:   (310) 557-9815

9   Attorneys for MGA Entertainment, Inc.

10  JOHN KECKER
    KECKER & VAN NEST, LLP
11  710 Sansome Street
    San Francisco, CA 94111
12  Telephone:  (415) 391-5400
    Facsimile:   (415) 397-7188

13

14  Attorneys for Carter Bryant

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17

18  CARTER BRYANT, an individual,          Case No.  CV 04-09049 SGL (RNBx)
                                           (consolidated with CV 04-9059 & 05-
19                    Plaintiff,           2727)

20         v.                              MGA ENTERTAINMENT, INC.'S
                                           NOTICE OF MOTION FOR
21  MATTEL, INC., a Delaware               TERMINATING SANCTIONS
    Corporation,                           AGAINST MATTEL, INC. DUE TO
22                                         SPOLIATION OF EVIDENCE; AND
                      Defendant.
23                                         [PROPOSED] ORDER

24                                         Hearing Date:  August 13, 2007
                                           Time:  10:00 a.m.
25                                         Place:  Courtroom 1

26                                         Discovery Cutoff: January 14, 2008
    AND CONSOLIDATED ACTIONS              Pre-trial Conference: April 7, 2008
27                                         Trial Date: April 29, 2008

28

EXHIBIT ___6___ PAGE _141_

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that, on August 13, 2007, at 10:00 a.m.

3    before Hon. Stephen G. Larson, MGA Entertainment, Inc. ("MGA") and Carter

4    Bryant ("Bryant") jointly will, and hereby do, move the Court to issue an order for

5    terminating sanctions against Mattel, Inc. ("Mattel") due to Mattel's spoliation of

6    evidence.

7        This Motion is made on the grounds that Mattel has engaged in a

8    conscious and systematic effort to destroy evidence relevant to its claims against

9    MGA and Mr. Bryant, and then deliberately sought to conceal its efforts. Mattel's

10    conduct is in plain violation of its legal obligations, is highly prejudicial, and

11    warrants terminating sanctions.

12        This Motion is based on this Notice of Motion, the accompanying

13    Memorandum of Points and Authorities, the Declaration of Michael Keats filed

14    concurrently herewith and attached exhibits, the Declaration of Kendall J. Burr filed

15    concurrently herewith and attached exhibits, the Declaration of James P. Jenal filed

16    concurrently herewith and attached exhibits, the Declaration of Yvonne L. Garcia

17    filed concurrently herewith and attached exhibits, the record and files of this Court,

18    and all other matters of which the Court may take judicial notice.

19

20    Dated:     July 23 , 2007     MICHAEL KEATS

21                             O'MELVENY & MYERS LLP

22

23                    By: *Michael Keats*

24                       Michael Keats

25                       Attorneys for MGA Entertainment, Inc.

26

27

28

MGA'S NOTICE OF MTN FOR
TERMINATING SANCTIONS DUE TO
SPOLIATION CV 04-09049 SGL (RNBX)

EXHIBIT ___ PAGE 142

# [PROPOSED] ORDER

Based on the above Application, and good cause appearing for the entry thereof, IT IS HEREBY ORDERED that each of the following actions:

    1. Case No. CV 04-9059 SGL (RNBx); and

    2. Mattel's Counterclaims in Case No. CV 05-2727 SGL (RNBx)

are hereby dismissed with prejudice.

DATED: _____

                                             Hon. Stephen G. Larson

EXHIBIT __4__ PAGE 143

**EXHIBIT 7**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   October 31, 2006           **NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Dale Cendali<br>O'Melveny & Myers, LLP | (212) 326-2051 | (212) 326-2061 |
| Douglas Wickham<br>Littler Mendelson LLP | 310-553-0308 | 310-553-5583 |
| Diana Torres, Esq.<br>O'Melveny & Myers, LLP | (213) 430-6000 | (213) 430-6407 |

**FROM:**   John B. Quinn

**RE:**   Mattel, Inc. v. Carter Bryant

**MESSAGE:**



07209/1936806.1

| CLIENT # | **7209** | ROUTE/<br>RETURN TO: | **M. Albert** | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | *phillys* | | CONFIRMED?   ☐ NO   ☐ YES: _____ | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT ___7___ PAGE 144

```
                        ********************************
                   ***    MULTI TX/RX REPORT    ***
                        ********************************

TX/RX NO              1057
PGS.                  3
TX/RX INCOMPLETE

                      -----
TRANSACTION OK
                      (1)   76039#7209#12123262061
                      (2)   76039#7209#131055355583#
                      (3)   76039#7209#12134308407

ERROR INFORMATION
                      -----
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

| NEW YORK | LOS ANGELES | SAN FRANCISCO |
|---|---|---|
| 51 Madison Avenue, 22nd Floor | 865 South Figueroa Street, 10th Floor | 50 California Street, 22nd Floor |
| New York, NY 10010 | Los Angeles, CA 90017 | San Francisco, CA 94111 |
| (212) 849-7000 | (213) 443-3000 | (415) 875-6600 |
| Facsimile: (212) 849-7100 | Facsimile: (213) 443-3100 | Facsimile: (415) 875-6700 |

| SAN DIEGO | SILICON VALLEY |
|---|---|
| 4445 Eastgate Mall, Suite 200 | 555 Twin Dolphin Drive, Suite 560 |
| San Diego, CA 92121 | Redwood Shores, CA 94065 |
| (858) 812-3107 | (650) 801-5000 |
| Facsimile: (858) 812-3336 | Facsimile: (650) 801-5100 |

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

**DATE:**   October 31, 2006

**NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Dale Cendali<br>O'Melveny & Myers, LLP | (212) 326-2051 | (212) 326-2061 |
| Douglas Wickham<br>Littler Mendelson LLP | 310-553-0308 | 310-553-5583 |
| Diana Torres, Esq.<br>O'Melveny & Myers, LLP | (213) 430-6000 | (213) 430-6407 |

**FROM:**   John B. Quinn

**RE:**   Mattel, Inc. v. Carter Bryant

**MESSAGE:**

EXHIBIT ___7___ PAGE ___145___

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

October 31, 2006

<u>VIA FACSIMILE</u>
<u>AND U.S. MAIL</u>

Dale Cendali, Esq.                          Douglas A. Wickham, Esq.
O'Melveny & Myers, LLP                      Littler Mendelson, P.C.
Times Square Tower                          2049 Century Park East, 5th Floor
7 Times Square                              Los Angeles, California 90067
New York, NY 10036

<u>Mattel, Inc. v. Bryant</u>

Dear Counsel:

I write pursuant to <u>Local Rule</u> 7-3 to confer regarding a motion for leave to file an amended complaint that Mattel anticipates filing. Mattel will assert claims against MGA Entertainment, Inc. Additional defendants will likely include Isaac Larian and other defendants associated with MGA. Additional claims also will likely include a claim for violation of civil RICO, misappropriation of trade secrets, intentional interference with contract, inducing breach of fiduciary duty, inducing and breach of the duty of loyalty, unfair competition, trade libel, copyright and a claim for declaratory relief.

Leave to amend "shall be freely given when justice so requires." <u>Fed. R. Civ. P.</u> 15(a). Ninth Circuit law provides that this policy of granting leave to amend is applied with "extreme liberality." <u>Beery v. Hitachi Home Elecs. (Am.), Inc.</u>, 157 F.R.D. 481, 483 (C.D. Cal. 1994) (quoting <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990)). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 186 (9th Cir. 1987).

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-1107 FAX 858-812-1136

EXHIBIT __7__ PAGE __146__

The bases for Mattel's motion is as follows:  Mattel's new claims pose no prejudice to defendants, given that no trial date has been set and some are also based on conduct that occurred after Mattel filed its original complaint.  Further, the interests of judicial economy strongly favor the resolution of Mattel's claims in a single action.

Please let us know if your clients would be willing to stipulate to Mattel's filing of an amended complaint so as to avoid burdening the Court with a motion.  We also would, of course, be happy to discuss with you Mattel's contemplated motion and its bases in greater detail if you would like.  Please let me know.

Best regards,

John B. Quinn

John B. Quinn

cc:    Diana Torres, Esq. (via facsimile)

07209/1988078.1

2

EXHIBIT __7__ PAGE 147

**EXHIBIT 8**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

November 9, 2006

<u>VIA FACSIMILE</u>
<u>AND U.S. MAIL</u>

Dale Cendali, Esq.                          Douglas A. Wickham, Esq.
O'Melveny & Myers, LLP                      Littler Mendelson, P.C.
Times Square Tower                          2049 Century Park East, 5th Floor
7 Times Square                              Los Angeles, California 90067
New York, NY 10036

<u>Mattel, Inc. v. Bryant</u>

Dear Counsel:

I write to respond to Ms. Cendali's e-mail message of November 7, 2006 regarding the meet and confer letter discussing Mattel's Motion for Leave to File an Amended Complaint, and specifically the request to know the grounds for Mattel's proposed claims and who the additional defendants would be. We will, of course, provide you with a draft of the amended complaint shortly, but we are in the process of narrowing it and it has not yet been finalized. In the interim, we can provide you with the following information which we would be pleased to discuss at your convenience.

Currently, Mattel contemplates naming as Doe defendants MGA Entertainment, Inc. and MGA Entertainment (HK) Limited ("MGA Hong Kong"), and adding as a defendant MGA de Mexico. If Mattel elects to add additional defendants, then we will let you know.

Mattel's amended complaint will include the existing claims against Carter Bryant, including breach of contract, breach of fiduciary duty, breach of duty of loyalty and conversion. MGA and MGA Hong Kong will be added as Doe defendants to the conversion claim. Based on what Mattel has learned of MGA's inducement of Carter Bryant to leave Mattel and to violate his

EXHIBIT __8__ PAGE __148__

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX :
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-66
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650
PALM SPRINGS | 45-025 Manitou Drive, Suite 6, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-7444

common law and contractual obligations to Mattel, Mattel will include in the amended complaint claims against MGA and MGA Hong Kong for intentional interference with contract, inducing breach of fiduciary duty and inducing breach of the duty of loyalty.

Separately, Mattel has learned of a number of instances in which individuals who have left Mattel to work for MGA have taken Mattel trade secrets to MGA. Mattel is informed and believed that MGA has disclosed these trade secrets or used them to its advantage and to Mattel's detriment. As I am sure you understand, Mattel will not reveal those specific trade secrets in this context, but will do so at the appropriate time and subject to the protection of an appropriate protective order. It is that pattern of trade secret misappropriation, in addition to the Bryant-related conduct, that Mattel relies upon to plead claims for civil RICO, conspiracy to violate civil RICO, misappropriation of trade secrets and unfair competition.

Finally, with respect to the claim of copyright infringement, be assured that Mattel is not asserting that Bratz has infringed the "Toon Teens" copyright, which I assume is the representation made at the June 26, 2006 hearing on Mattel's motions to dismiss that is being referenced. *See* June 26, 2006 Hearing Tr. at 63:19-64:11. Instead, as you will recall, both the district and appellate court have acknowledged that the ownership of Bratz is at issue. Mattel will assert a copyright infringement claim based on the original Bratz design drawings that Carter Bryant created while a Mattel employee. On that same basis, Mattel will seek declaration of ownership of Bratz.

I trust that this additional information will allow us to have a productive discussion as to whether MGA and Bryant will be willing to stipulate to Mattel's filing of an Amended Complaint. Please let me know when you will be available to discuss these matters either in person or by telephone in the near term.

If you have any questions regarding the foregoing, please do not hesitate to call.

Very truly yours,

Michael T. Zeller

cc:    Diana Torres, Esq. (via facsimile)

07934/1994521.1

2

EXHIBIT ___8___ PAGE 149

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

<table>
<tr><td><u>NEW YORK</u><br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br>Facsimile: (212) 849-7100</td><td><u>LOS ANGELES</u><br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>(213) 443-3000<br>Facsimile: (213) 443-3100</td><td><u>SAN FRANCISCO</u><br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>(415) 875-6600<br>Facsimile: (415) 875-6700</td></tr>
<tr><td><u>SAN DIEGO</u><br>4445 Eastgate Mall, Suite 200<br>San Diego, CA 92121<br>(858) 812-3107<br>Facsimile: (858) 812-3336</td><td></td><td><u>SILICON VALLEY</u><br>555 Twin Dolphin Drive, Suite 560<br>Redwood Shores, CA 94065<br>(650) 801-5000<br>Facsimile: (650) 801-5100</td></tr>
</table>

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   November 9, 2006

**NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Dale Cendali, Esq. | | (212) 326-2061 |
| Douglas A. Wickman, Esq. | 310-553-0308 | 310-553-5583 |

**FROM:**   Mike Zeller

**RE:**   Mattel, Inc. v. Bryant

**MESSAGE:**



09849/1910286.1

| CLIENT # | 7934 | ROUTE/<br>RETURN TO: | Mia Albert-10th | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | *wyh* | | CONFIRMED?   ☐ No   ☐ YES: _____ | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT   8   PAGE   150

Job number    : 480          \ /     *** SEND SUCCESSFUL { }*

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:    November 9, 2006

NUMBER OF PAGES, INCLUDING COVER:

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Dale Cendali, Esq. | | (212) 326-2061 |
| Douglas A. Wickman, Esq. | 310-553-0308 | 310-553-5583 |

FROM:    Mike Zeller

RE:    Mattel, Inc. v. Bryant

MESSAGE:

| CLIENT/N. | 7934 | SCATTER RETURN TO: | Mia Albert-Mth | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | wm | CONFIRMED? | ☐ No  ☐ Yes: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _____ B _____ PAGE _151_

# Group Send Report

```
Page       : 001
Date & Time: 11-09-2006   04:23pm
Line 1     : 2136240643
Line 2     :
Machine ID : QUINN EMANUEL
```

Job number            :   480

Date                  :   11-09  04:22pm

Number of pages       :   003

Start time            :   11-09  04:22pm

End time              :   11-09  04:23pm

Successful nbrs.

   Fax numbers

      ☎+9414#07934#121232620618
      ☎131055355838

Unsuccessful nbrs.                                         Pages sent

EXHIBIT __8__ PAGE _152_