QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-
Defendant Mattel, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated With Case No. 04-9059 and Case No. 05-2727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| Defendant. | MATTEL, INC.'S OPPOSITION TO MGA'S AND CARTER BRYANT'S MOTION TO OVERRULE MATTEL'S RELEVANCE OBJECTION |
| AND CONSOLIDATED ACTIONS | |

Date: January 10, 2008
Time: 1:30 p.m.
Place: JAMS
       Two Embarcadero Center
       Suite 1500
       San Francisco, California

**Phase 1**
Discovery Cut-off:    January 28, 2008
Pre-trial Conference: May 5, 2008
Trial Date:           May 27, 2008

07209/2335258.8

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT ............................................................................................................... 7

I.   THE DISCOVERY MASTER SHOULD DENY THE MOTION WITH RESPECT TO TOPIC NO. 52 .................................................................. 7

　　A.   Topic No. 52 Is Not Reasonably Particularized, as *Rule* 30(b)(6) Requires, But Overbroad, Vague and Oppressive .................................. 7

　　B.   Topic No. 52 Does Not Seek Relevant Information ............................... 9

　　　　1.   Topic No. 52 Seeks Information Relating to Documents That Have Nothing to Do With the Claims or Defenses In This Case ........................................................................................ 9

　　　　2.   As Apparently Interpreted by MGA, Topic No. 52 Is Completely Duplicative of Topics Nos. 1, 49 and 50, On Which Mattel Has Produced A Witness ........................................ 9

II.   THE DISCOVERY MASTER SHOULD DENY THE MOTION WITH RESPECT TO TOPIC NO. 25 ................................................................ 10

　　A.   Topic No. 25 Is Not Reasonably Particularized ................................... 10

　　B.   An Inquiry Into Mattel's Decision to Enforce the Agreements Necessarily Invades The Attorney-Client Privilege and the Work Product Protection ................................................................................... 12

　　C.   Mattel's Enforcement, Efforts to Enforce or Contemplated Efforts to Enforce Agreements with Third Parties Are Not Relevant ................................................................................................... 12

　　　　1.   Bryant's Sole Grounds for Relevancy Have Been Dismissed or Withdrawn ................................................................ 12

　　　　2.   No California Court Has Adopted Bryant's New Theory That Agreements with Third Parties Are Relevant to Interpret Agreements Between the Parties ................................... 13

　　　　3.   Mattel's Alleged Failure to Prosecute Every Breach of the Pertinent Contracts Is Not Evidence of Its Intent as to Bryant ......................................................................................... 16

4.    Additional Discovery Is Unnecessary Even Under Bryant's Theory .......................................................................... 19

D.    Compliance with Topic No. 25 Would Be Oppressive and Unduly Burdensome ............................................................. 19

III.   BRYANT'S DEMAND THAT THE DISCOVERY MASTER ORDER MATTEL TO RESPOND TO UNSPECIFIED DISCOVERY REQUESTS IS IMPROPER ........................................................... 22

CONCLUSION ............................................................................................... 23

-ii-

1

# TABLE OF AUTHORITIES

2
**Page**

3

## Cases

*Automobile Salesmen's Union v. Eastbay Motor Car Dealers, Inc.*,
    10 Cal. App. 3d 419 (1970) ................................................................ 14

*B.F. Goodrich Co. v. Vinyltech Corp.*,
    711 F. Supp. 1513 (D. Ariz. 1989) ...................................................... 13

*Capitol Records, Inc. v. Naxos of America, Inc.*,
    372 F.3d 471 (2d Cir. 2004) ................................................................ 16

*Casey v. Lifespan Corp.*,
    672 F. Supp. 2d 471 (D.R.I. 1999) ...................................................... 14

*Crestview Cemetery Ass'n v. Dieden*,
    54 Cal. 2d 744 (1960) .......................................................................... 14

*Deal v. Consumer Programs, Inc.*,
    458 F. Supp. 2d 970 (E.D. Mo. 2005) .................................................. 17

*Dolgow v. Anderson*,
    53 F.R.D. 661 (E.D.N.Y. 1971) ............................................................ 19

*Emerson v. Electric Co. v. Rogers*,
    418 F.3d 841 (8th Cir. 2005) .......................................................... 16, 17

*Estate of Gonzalez v. Hickman*,
    2007 WL. 3238725 (C.D. Cal. 2007) .................................................... 21

*Heston v. Farmer's Ins. Group*,
    160 Cal. App. 3d 402 (1984) ................................................................ 15

*Hollenbeck Lodge (486) H.O.O.F. v. Wilshire Blvd. Temple*,
    175 Cal. App. 2d 469 (1959) ................................................................ 17

*In re Independent Service Organizations Antitrust Litig.*,
    168 F.R.D. 651 (D. Kan. 1996) .............................................................. 7

*Keith H. v Long Beach Unified Sch. Dist.*,
    228 F.R.D. 652 (C.D. Cal. 2005) .......................................................... 19

*Kitty-Anne Music Co. v. Swan*,
    112 Cal. App. 4th 30 (2003) .................................................................. 9

*Klapp v. United Ins. Group Agency, Inc.*,
    468 Mich. 459 (2003) .......................................................................... 15

*Laker Airways Ltd. v. Pan American World Airways*,
    559 F. Supp. 1124 (D.D.C. 1983) ........................................................ 19

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

*Microstar v. Formgen Inc.*,
154 F.3d 1107 (9th Cir. 1998) ................................................................ 16

*Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*,
319 F. Supp. 2d 1040 (C.D. Cal. 2003) ................................................. 13

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Elec. Transit Inc.*,
2006 WL. 1525809 (N.D. Cal. 2006) ..................................................... 19

*Nissel v. Certain Underwriters at Lloyd's of London*,
62 Cal. App. 4th 1103 (1998) ................................................................ 13

*Paramount Pictures Corp. v. Carol Publishing Group*,
11 F. Supp. 2d 329 (S.D.N.Y. 1998) ..................................................... 16

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,
2000 WL. 1028634 (S.D.N.Y. 2000), *vacated on other grounds* 2004 WL
906301 (S.D.N.Y. 2004) ........................................................................ 16

*Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun*,
315 Ill. App. 3d 329 (Ill. App. 2000) .................................................... 17

*Reed v. Bennett*,
193 F.R.D. 689 (D. Kan. 2000) ............................................................. 11

*S. Cal. Edison Co. v. Superior Court*,
37 Cal. App. 4th 839 (1995) .................................................................. 14

*SmithKline Beecham Corp. v. Apotex Corp.*,
2000 WL. 116082 (N.D. Ill 2000) ......................................................... 11

*Steinbach v. Credigy Receivables, Inc.*,
2006 WL. 1007272 (E.D. Ky. 2006) ...................................................... 11

*Tri-State Hosp. Supply Corp. v. U.S.*,
226 F.R.D. 118 (D.D.C. 2005) ............................................................... 11

*U.S. Cellular Inv. Co. of Los Angeles, Inc. v. GTE Mobilenet, Inc.*,
281 F.3d 929 (9th Cir. 2002) ...................................................... 13, 14, 15

*U.S. ex. rel. O'Connell v. Chapman University*,
245 F.R.D. 646 (C.D. Cal. 2007) .......................................................... 21

*Yuen v. Superior Court*,
121 Cal. App. 4th 1133 (2004) ................................................................ 9

### Statutes

*Cal. Civ. Code* § 1636 ................................................................................ 13

*Cal. Civ. Code* § 1638 ................................................................................ 13

*Cal. Civ. Code* § 1641 ................................................................................ 13

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

*Cal. Civ. Proc. Code* § 1856(c) .................................................................... 14

*Cal. Lab. Code* § 96(K) ............................................................................... 4

*Cal. Lab. Code* § 98.6 ................................................................................. 4

*Fed. R. Civ. P.* 26 ....................................................................................... 8

*Fed. R. Civ. P.* 26(b)(2)(C)(iii) .................................................................. 19

*Fed. R. Civ. P.* 26(b)(2)(iii) ...................................................................... 19

*Fed. R. Civ. P.* 30 ................................................................................. 1, 11

*Fed R. Civ. P.* 30(b)(6) ............................................... 7, 9, 10, 11, 21, 22

*Fed. R. Evid.* 403 ...................................................................................... 20

*Local Rule* 37 ............................................................................................. 2

*Local Rule* 37-2.1 .................................................................................... 21

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Judge Larson long ago rejected the only theories of relevance Defendants ever proffered for the discovery at issue in this motion, and Bryant has now formally abandoned those theories. To circumvent that ruling, Defendants now assert a theory of relevance for Mattel's relationships with thousands of former and current non-party employees that is based on fundamentally flawed legal assertions. No California court has ever adopted Defendants' assertions about the relevance of third-party contracts. Defendants' "groundbreaking" theories should be rejected.

When he first propounded the 30(b)(6) Topics at issue in this motion, Bryant's position was that they were relevant to his claims that his agreements with Mattel are unconscionable and pertained to claims he asserted on behalf of third party employees. Judge Larson dismissed all these claims. In light of that dismissal, Bryant recently abandoned his affirmative defenses of unconscionability and illegality. Accordingly, the foundations of this discovery no longer exist.

Nevertheless, Defendants now improperly ask the Discovery Master to radically expand the plain vanilla rule that the parties' conduct and interpretation *of their own contract* before a controversy arose may be probative of their intent into a rule that a party's contracts and interactions *with third parties* -- both those which pre-date and post-date the actual contract at bar -- somehow inform the parties' intent. This simply has no support in California law. The information at issue here is not reasonably likely to inform the interpretation of Bryant's contract with Mattel and is not reasonably likely to lead to admissible evidence. Courts also consistently reject Defendants' alternative theory that a failure to prosecute third party infringers indicates an intent to waive rights against a particular defendant. The information Defendants seek is irrelevant.

To the extent there could be any marginal relevance to some subset of the information at issue now, the discovery Defendants demand is clearly

07209/2335258.8

1   outweighed by the burdens it would impose.  Defendants misrepresent that Mattel's
2   only objection to the noticed 30(b)(6) Topics is relevance.  To the contrary, as
3   Mattel advised Defendants, the Topics are not reasonably particularized, are
4   hopelessly overbroad, seek privileged information, are vague and ambiguous, and
5   compliance would be unduly burdensome and oppressive.  Defendants do not
6   address or challenge any of these other objections in their Motion.

7        The oppressiveness of the Topics is apparent on their face.  Topic No.
8   52 seeks a designee, literally, on all "documents" and "forms" current and former
9   employees were asked to sign since 1995.  Topic No. 25 seeks a designee to testify
10  regarding any action or consideration by Mattel to enforce any provisions of any
11  version of the "Employee Confidential Information and Inventions Agreement" and
12  "Conflict of Interest Questionnaire" against any employee since 1998, whether or
13  not those provisions, or even the same versions of the agreements, are at issue in this
14  case.  Such requests are not "reasonably particularized" as required by Rule 30.  The
15  Discovery Master has rejected such sweeping, unbounded discovery requests before,
16  and should do so again.

17       Indeed, it would be practically impossible for Mattel to produce a
18  corporate representative to testify regarding the myriad documents and forms that
19  Mattel employees sign in their daily responsibilities and all breaches of any of its
20  employment agreements with any of its employees in the past decade.  Educating a
21  witness on these topics would require a review of thousands if not tens of thousands
22  of files (not just personnel files) over thousands of hours and at a cost of hundreds of
23  thousands dollars.  Even if the requested information were relevant -- and it is not --
24  the Discovery Master should deny the motion on the grounds of undue burden.
25  Defendants are looking for a needle in a haystack, hoping that somewhere, somehow
26  in the past 10 years Mattel might have said something about some agreement with
27  some employee that conceivably could aid their cause, and show that *Mattel* does
28  not believe that doll designs its designers create belong to Mattel under their

employment agreements.  That is preposterous.  This is a fishing expedition, and it does not justify the burdens it would impose.

Finally, Defendants' attempt to shoehorn this Motion directed at two, specific deposition topics into an broad general order compelling Mattel to supplement unspecified, unidentified discovery responses "accordingly" violates Local Rule 37.  However it rules, the Court should reject Defendants' invitation to rule on matters that are not before it.

### Statement of Facts

Bryant's Notice of Deposition of Mattel.  On December 21, 2004, Bryant served a notice of deposition upon Mattel.[1]  Topic No. 25 required a corporate representative to testify regarding any Mattel efforts to enforce any version of any Employee Confidential Information and Inventions Agreement or Conflict of Interest Questionnaire against any employee between 1998 and the December 2004:

> All measures taken by Mattel including, without limitation, any legal action brought or threatened to be brought (including in demand letters and other notices) from 1998 to present to achieve, or attempt to achieve, compliance with or adherence to any or all of the terms of Mattel's 'Employee Confidential Information and Inventions Agreement' (including all forms or versions of that agreement) from 1998 to present, and / or Mattel's 'Conflict of Interest Questionnaire' (including all forms or versions of that agreement) from 1998 to present.[2]

Topic No. 52 is similarly overbroad.  It asks Mattel to designate and prepare a witness to testify regarding "[a]ll forms or other documents which Mattel has requested prospective and actual employees to sign from January 1, 1995."[3]

---

[1]  *See* Declaration of Rory S. Miller, dated December 28, 2007 (hereinafter "Miller Decl."), Exh. 1 (Notice of Deposition of Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004).

[2]  Miller Decl., Exh. 1 at 6-7.

[3]  Miller Decl., Exh. 1 at 10.

07209/2335258.8

1                   **Mattel Objects to Bryant's Notice.**  On December 29, 2004, Mattel

2    served objections to the topics in the Notice, including Topic Nos. 25 and 52, which

3    read as follows:

> 25.  In addition to the general objections above, Mattel objects to Topic No. 25 on the grounds that it calls for the disclosure of information protected by the attorney-client privilege, work product doctrine and other privileges afforded consulting experts and protected by the absolute litigation privilege, including without limitation in seeking disclosure of "all measures taken by Mattel," including "legal action."  Mattel further objects to Topic No. 25 as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Among other things, Topic No. 25 purports to require testimony on "[a]ll" of the many "measures" Mattel has taken over the past seven years as to multiple agreements with its thousands of employees and former employees, including as to agreements that Bryant was not a party to and during time periods that he was not a Mattel employee, and further fails to describe with reasonable particularity the matters on which examination is requested.
>
> ...
>
> 52.  In addition to the general objections above, Mattel objects to Topic No. 52 as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Among other things, Topic No. 52 purports to require Mattel to produce witnesses to testify about unspecified matters relating to unspecified "forms or other documents" signed by many thousands of "prospective and actual employees" over a ten-year period, including such forms (such as those relating to health insurance) that have no relevance to this case and including such forms that Bryant never saw or signed. For these same reasons, Mattel objects to Topic No. 52 on the grounds that it fails to describe with reasonable particularity the matters on which examination is requested.  Mattel further objects to Topic No. 52 on the grounds that it calls for the disclosure of information protected by the attorney-client privilege, work product doctrine and privileges afforded consulting experts.[4]

---

[4]   *See* Miller Decl., Exh. 2 at 15, 27 (Mattel, Inc.'s Objections and Responses to Defendant Carter Bryant's Notices of Deposition of Mattel, Inc., dated December 29, 2004).

1    <u>Mattel and Bryant Meet and Confer on Topic No. 25</u>.  On March 15,
2    2005, Douglas Wickham, counsel for Bryant, and Michael Zeller, counsel for
3    Mattel, met and conferred regarding Mattel's objections to the Topics in Bryant's
4    Notice, including Topic Nos. 25 and 52.  With respect to Topic No. 25, regarding
5    Mattel's attempts to enforce all other versions of the Inventions Agreement and the
6    Conflict of Interest Questionnaire, Mattel asked MGA to articulate why it was
7    entitled to such sweeping discovery.  Bryant articulated only two reasons why
8    Mattel's efforts vis-à-vis other employees, contractors, etc. were purportedly
9    relevant.

10    First, Bryant said that he was entitled to discovery regarding Mattel's
11    contracts with third parties because Bryant alleged that Mattel's contracts with
12    Bryant and all other Mattel employees were illegal.  Specifically, Bryant claimed
13    that they violated sections 96(k) and 98.6 of the *California Labor Code* and
14    California public policy, and so "Mattel's enforcement actions with regard to those
15    provisions are ones that are directly pertinent to Mattel's [sic Bryant's] claims
16    asserted in the counterclaim."[5]

17    Second, Bryant suggested that the Inventions Agreement that he signed
18    was unconscionable -- that it was "an adhesive contract rendering it procedurally
19    unconscionable, and that, given the nature -- given the way in which it's been
20    drafted, which is not in conformity with *Labor Code* sections 2870 and 2871, that it
21    is rendered substantively unconscionable."[6]

22    Significantly, Bryant's counsel justified Bryant's efforts to obtain
23    discovery of agreements beyond those between Mattel and Bryant because, at the
24
25
_____
26    [5]   *See* Miller Decl., Exh. 3 at 269:17-270:2 (Transcript of the March 15, 2005
27    Meet and Confer); *see generally id.* at 267:2-275:14.
      [6]   Miller Decl., Exh. 3 at 270:7-12.
28

1   time, Bryant had purported to bring a representative action challenging these

2   agreements on behalf of all Mattel employees, current and former.[7]

3             <u>Bryant's Grounds for Seeking Testimony on Topic No. 25 Are</u>

4   <u>Dismissed or Withdrawn</u>.  In his Counterclaims against Mattel, Bryant alleged that

5   the contracts between Mattel and its employees formed "an unfair restraint of trade"

6   and that each was "a contract of adhesion and was procedurally unconscionable."[8]

7   Bryant sought relief not only on his own behalf, but on behalf of all current and

8   former Mattel employees in the form of a representative action.[9]  Mattel moved to

9   dismiss Bryant's counterclaims.  On July 18, 2006, Judge Larson dismissed both the

10  claims that Bryant asserted individually and those asserted on a representative

11  basis.[10]

12            Judge Larson afforded Bryant leave to amend, but Bryant elected not to

13  do so.[11]  Hence, the dismissal became permanent, and the alleged relevance of

14  Mattel's enforcement of all other agreements against all other employees vanished.

15            Thereafter, Bryant continued to assert affirmative defenses of

16  unconscionability and illegality, but then, when directed to Judge Larson's Order,

17  knowingly withdrew those defenses pursuant to a stipulation "so ordered" by Judge

18  Larson on October 5, 2007.[12]

19

20  _____

21  [7]   Miller Decl., Exh. 3. at 270:24-271:4; *see also* Miller Decl., Exh. 4, ¶ 31 (Carter Bryant's Cross-Complaint, dated August 24, 2004).

22  [8]   Miller Decl., Exh. 4, ¶¶ 32-37.

23  [9]   *See* Miller Decl., Exh. 4, ¶ 31.

    [10]  Miller Decl., Exh. 5 (Order Granting Motions to Dismiss dated July 18, 2006).

24  [11]  Miller Decl., Exh. 5 at 17 ("Bryant may file Amended Counterclaims that

25  conform with this Order…").

    [12]  *See* Miller Decl., Exh. 6 at 2 (Stipulation and Order Regarding Carter

26  Bryant's Amended Reply to Mattel's Counterclaims, dated October 5, 2007); *see*

27  *also* Miller Decl., Exh. 7 (Carter Bryant's Second Amended Reply to Mattel's Counterclaims, dated October 16, 2007).

28

1    Bryant Withdrew Topic No. 52. During the March 15, 2005 meeting of

2    counsel, Mattel and Bryant also discussed Topic No. 52, which seeks a corporate

3    designee to testify about all documents Mattel employees signed over the past

4    decade. The exchange was short, and Bryant withdrew the Topic:

5        Mr. Zeller: You don't really want to press 52; do you?
         Mr. Wickham: Let me table 52.[13]

6

7    That withdrawal or "tabling" was "so ordered" by Magistrate Judge Block in a May

8    5, 2005 Order, and Bryant never raised Topic No. 52 again.[14] Only recently,

9    counsel for MGA, not Bryant, has again raised this withdrawn Topic.

10                                   **Argument**

11   **I.    THE DISCOVERY MASTER SHOULD DENY THE MOTION WITH**

12   **       RESPECT TO TOPIC NO. 52**

13        Bryant withdrew Topic No. 52. That withdrawal or "tabling" was "so

14   ordered." The Motion on Topic No. 52 should be denied on that ground alone.

15        If the Discovery Master elects not to do so, Mattel's objections to Topic

16   No. 52 should be sustained.

17   **A.    Topic No. 52 Is Not Reasonably Particularized, as *Rule* 30(b)(6)**

18   **       Requires, But Overbroad, Vague and Oppressive**

19        Rule 30(b)(6) requires that a notice of deposition for a corporation must

20   "must describe with reasonable particularity the matters for examination." *See Fed.*

21   *R. Civ. P.* 30(b)(6). Overbroad and ambiguous deposition topics are improper. *See,*

22   *e.g., In re Independent Service Organizations Antitrust Litig.*, 168 F.R.D. 651, 654

23   (D. Kan. 1996). Topic No. 52 is not particular, but impermissibly overbroad and

24   ambiguous. It seeks testimony regarding "[a]ll forms or other documents which

25

26   ───────────────

27   [13]   Miller Decl., Exh. 3 at 400:8-10.
     [14]   Miller Decl., Exh. 8.

28

1  Mattel has requested prospective and actual employees to sign from January 1,
2  1995."

3       Mattel objects to this Topic because Bryant made no effort to limit it to
4  the documents at issue, the Inventions Agreement and the Conflict of Interest
5  Questionnaire. Rather, this Topic encompasses an unbounded array of documents
6  that prospective and actual Mattel employees have signed, including everything
7  from 401K forms, direct deposit information, citizenship and residency information,
8  and employee evaluations, to disability and medical insurance information,
9  discovery response verifications and certifications of the accuracy of Mattel's
10 financial statements. Based on the vagueness of the Topic, Mattel cannot discern
11 the bounds, if any, that apply to the testimony or how Mattel would prepare the
12 parade of witnesses who would be necessary to address each iteration of each such
13 document. Of course, none of these forms has anything to do with the actual issues
14 in this case.

15       The burden of identifying each version of each document signed by a
16 Mattel employee between 1995 and the date of the Notice far exceeds the burden of
17 looking through approximately 6,000 thousand personnel files, as is at issue in
18 Mattel's renewed motion for reconsideration.[15] Mattel's thousands of employees are
19 asked to sign "documents" and "forms" on a daily basis, and these "documents" and
20 "forms" can be found in not only the 6,000 personnel files, but potentially in files in
21 every single department at Mattel. A search of all Mattel's files for some category of
22 documents bounded only by whether a Mattel employee signed it is strikingly
23 oppressive.

24
25

26    [15]  *See* Declaration of Timothy L. Alger in Support of Mattel's Renewed Motion
27    for Reconsideration, dated December 18, 2007, ¶ 4; Declaration of Lissa Freed,
      dated September 26, 2007, ¶ 6.
28

-8-

**B.  Topic No. 52 Does Not Seek Relevant Information**

    **1.  Topic No. 52 Seeks Information Relating to Documents That Have Nothing to Do With the Claims or Defenses In This Case**

This Topic seeks information regarding documents that have nothing to do with the claims or defenses in the case, such as benefit and insurance documents, direct deposit documents, etc.  Under any interpretation, such documents fall outside the scope of discovery as set forth in Rule 26.  The Motion must be denied.

    **2.  As Apparently Interpreted by MGA, Topic No. 52 Is Completely Duplicative of Topics Nos. 1, 49 and 50, On Which Mattel Has Produced A Witness**

Adopting, in the alternative, an ambiguous but apparently more narrow interpretation of the Topic, MGA argues that this Topic calls for other versions of the agreements that Bryant signed, which may inform the interpretation of the Mattel/Bryant agreements.  Motion at 9 (citing *Kitty-Anne Music Co. v. Swan*, 112 Cal. App. 4th 30 (2003) and *Yuen v. Superior Court*, 121 Cal. App. 4th 1133 (2004)).[16]  While Mattel disagrees with that suggestion, MGA's narrowed interpretation renders Topic No. 52 completely duplicative of Topics No. 1, 49 and 50, which sought testimony relating to, respectively, "All Contracts, and terms thereof, You contend You had with Bryant," "[a]ll versions of the 'Employee Confidential Information and Inventions Agreement' used by Mattel since January 1, 1995. . . ," and "[a]ll versions of the 'Conflict of Interest Agreement' used by Mattel since January 1, 1995 . . . ."

---

[16]  *Kitty-Anne Music Co. and Yuen* stand for the unremarkable proposition that drafts of *the parties'* actual contract, or *the parties'* collateral agreements, may be used to interpret the final contract.  Here, of course, there are no collateral
    (footnote continued)

1    Mattel produced, and Bryant and MGA deposed a designee on that
2  topic, Ms. Lissa Freed, on May 3, 2007.  That deposition was concluded.  Because
3  MGA/Bryant have previously deposed someone on the very subject matter that it
4  claims is now at issue, the Motion should be denied.  And, contrary to MGA's
5  suggestion, Mattel has provided to MGA the "very documents upon which Mattel
6  based a number of its claims," including all documents related to its agreements
7  with Bryant, and prior and subsequent versions thereof.[17]

8  **II.     THE DISCOVERY MASTER SHOULD DENY THE MOTION WITH**
9  **         RESPECT TO TOPIC NO. 25**

10    **A.     Topic No. 25 Is Not Reasonably Particularized**

11    As discussed above, Rule 30(b)(6) requires that a notice to a
12  corporation topics must "must describe with reasonable particularity the matters for
13  examination." *See Fed. R. Civ. P.* 30(b)(6).  Topic No. 25 is not particularized.
14  Instead, it demands that Mattel produce a corporate representative to testify
15  regarding:

16        All measures taken by Mattel including, without
          limitation, any legal action brought or threatened to be
17        brought (including in demand letters and other notices)
          from 1998 to present to achieve, or attempt to achieve,
18        compliance with or adherence to any or all of the terms of
          Mattel's 'Employee Confidential Information and
19        Inventions Agreement' (including all forms or versions of
          that agreement) from 1998 to present, and / or Mattel's
20        'Conflict of Interest Questionnaire' (including all forms or
          versions of that agreement) from 1998 to present.
21   ────────────────────────────────────

22  agreements that are integrated in the contracts at issue.  Nor are third parties'
    contracts with Mattel drafts of the Mattel/Bryant contracts in any sense.
23    [17] Even if limited to the specific forms referenced in the Motion, the topic is still
24  overbroad.  For instance, the Employee Patent and Confidence Agreement,
    referenced by MGA, contains language on the employees' "at will" status, and
25  assignment to Mattel of the employees' right of publicity.  These contractual clauses
26  are not at issue in this case, and Mattel should not be forced to produce a corporate
    representative to testify about them.
27

28

1

2    Thousands of employees have left Mattel over the past decade.  Mattel cannot

3    reasonably be expected to designate a corporate representative who could testify

4    knowledgeably about the unique circumstances of any and all actual or potential

5    contractual breaches--ranging from copyright infringement to pilfering of office

6    supplies -- that have occurred since 1998.  In effect, MGA and Bryant seek an order

7    compelling Mattel to have a witness (a) identify every single contemplated or filed

8    enforcement action, (b) interview witnesses with respect to each such action, (c)

9    make an assessment as to the merits/viability of the action, and (d) testify about each

10   of them, creating, in essence, a witness to present, at deposition, a summary of all of

11   Mattel's disputes, potential or actual, with any employee, that ever arose or were

12   discussed, whether prosecuted or not over the past 10 years.  Such a Topic is not

13   "reasonably particularized." *See Fed. R. Civ. P.* 30(b)(6).  Indeed, it is not even

14   limited (nor did MGA and Bryant offer to limit it) to the language at issue in either

15   the Inventions Agreement or the Conflict of Interest Questionnaire.

16          Independently, the topic is overbroad because it utilizes "including

17   without limitation" language.  In *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan.

18   2000), the court quashed a *Rule* 30(b)(6) notice with "including but not limited to"

19   language since the "outer limits of the areas of inquiry" could not be determined.

20   *See also Tri-State Hosp. Supply Corp. v. U.S.,* 226 F.R.D. 118, 124 (D.D.C. 2005)

21   (deposition topics with "including but not limited to" phrase were improper because

22   "[l]isting several categories and stating that the inquiry may extend beyond the

23   enumerated topics defeats the purpose of having any topics at all.").  The Discovery

24   Master should deny the Motion to compel a witness to testify with respect to Topic

25   No. 25 for failure to comply with Rule 30.

26

27

28

**B. An Inquiry Into Mattel's Decision to Enforce the Agreements Necessarily Invades The Attorney-Client Privilege and the Work Product Protection**

Moreover, testimony regarding Mattel's decisions on whether to take action against an employee internally, or to file suit against a current or former employee, or to research and analyze the merits of a claim against a current or former employee, would necessarily and impermissibly invade the company's attorney client and work product privileges. *SmithKline Beecham Corp. v. Apotex Corp.*, 2000 WL 116082, *9 (N.D. Ill 2000) (holding that the proposed areas of inquiry "improperly trespasses into areas of work product and attorney-client privilege"); *see also Steinbach v. Credigy Receivables, Inc.*, 2006 WL 1007272, *11 (E.D. Ky. 2006) (rejecting interrogatory and document request asking for criteria considered in filing suit because parties, if they do not have a set formal policies and procedures on the subject, "file a lawsuit based on the advice and/or recommendation of counsel, clearly a privileged communication"). MGA and Bryant should not be able to inquire into privileged subject matter that is necessarily within the scope of Topic No. 25.

**C. Mattel's Enforcement, Efforts to Enforce or Contemplated Efforts to Enforce Agreements with Third Parties Are Not Relevant**

**1. Bryant's Sole Grounds for Relevancy Have Been Dismissed or Withdrawn**

As noted above, Bryant has consistently contended that the deposition topics at issue here are relevant to the alleged unconscionability of the agreements and/or his intent to bring a representative action with respect to third party employees. These grounds are now gone because these claims have been

1    dismissed.[18]  Similarly, although Bryant asserted affirmative defenses of

2    unconscionability and illegality, he withdrew those defenses in a stipulation "so

3    ordered" by Judge Larson on October 5, 2007.[19]  As the Discovery Master correctly

4    recognized, this withdrawal "affects the entire balance of relevancy versus

5    burden."[20]  This history is dispositive, placing Mattel's contracts with third parties

6    out of bounds.  Because the requested discovery is irrelevant to the claims and

7    defenses that remain in the case, the Discovery Master should deny Bryant's motion.

8          **2.**    **No California Court Has Adopted Bryant's New Theory**

9                **That Agreements with Third Parties Are Relevant to**

10                **Interpret Agreements Between the Parties**

11       Without a claim or defense to tie to Mattel's agreements with third

12    parties, Bryant and MGA have invented a new theory, albeit one that the cited

13    authority does not support.  While it is well settled that the pre-dispute conduct of

14    the *parties* to a contract may be an aid in interpretation, California courts have not

15    expanded that principle to apply to contracts with *non-parties*.  Bryant and MGA

16    mis-cite authority to suggest that they have, and rely on that mis-citation to justify

17    their demand that Mattel undertake the extraordinarily burdensome task of educating

18    a witness about Mattel's contractual relationships with thousands of other

19    employees.

20       Bryant's motion seeks evidence of Mattel's contracts with non-parties

21    to interpret Bryant's contracts with Mattel.  But Bryant's own authority emphasizes

22    the limited role that extrinsic evidence plays in contract interpretation:

23            California courts begin their analysis of a contract with the
                contract language. 'The language of a contract is to govern

24

---

25    [18]   Miller Decl., Exh. 5.

26    [19]   *See* Miller Decl., Exh. 6 at 2; *see also* Miller Decl., Exh. 7.

27    [20] *See* Miller Decl., Exh. 9 at 53:2 (Excerpts of the transcript of proceedings
before the Hon. Edward A. Infante, dated December 14, 2007).

28

1                       its interpretation, if the language is clear and explicit, and
2                       does not involve an absurdity." *Cal. Civ. Code* § 1638.
                        The California Civil Code mandates that the "intention of
3                         the parties [ ] be ascertained from the writing alone, if
                        possible" and from the review of the contract as a whole.
4                         *Id.* at §§ 1636 & 1641.

5    *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 319 F. Supp. 2d 1040, 1046 (C.D.

6    Cal. 2003). Indeed, in *U.S. Cellular Inv. Co. of Los Angeles, Inc. v. GTE Mobilenet,*

7    *Inc.*, 281 F.3d 929, 939 (9th Cir. 2002), cited by Bryant, the Ninth Circuit affirmed

8    the district court's order excluding parole evidence on the subject of contract

9    interpretation. Here, there is nothing ambiguous about the contractual provisions at

10   issue, despite Bryant's efforts to create ambiguity where there is none. *Cf. Nissel v.*

11   *Certain Underwriters at Lloyd's of London*, 62 Cal. App. 4th 1103, 1111 (1998) ("it

12   [is not] enough to find an abstract ambiguity or a meaning for a disputed word or

13   phrase which [is] simply 'semantically permissible.'"); *B.F. Goodrich Co. v.*

14   *Vinyltech Corp.*, 711 F. Supp. 1513, 1517 (D. Ariz. 1989) ("The mere fact that the

15   parties disagree as to the meaning of language contained in the agreement is not

16   sufficient to create an ambiguity.") (citation omitted).

17            Moreover, in asking the Discovery Master to hold that the

18   interpretation of his contract with Mattel can be informed by reference to Mattel's

19   *other* contracts with *other* employees made at *different* times, even *post-dating*

20   Bryant's employment at Mattel, MGA asks the Discovery Master to do something

21   no other California court has done. MGA does not cite a shred of authority for the

22   proposition that such materials are discoverable, let alone relevant. To the contrary,

23   MGA's authority is limited exclusively to situations where the contract *between the*

24   *two litigants* was interpreted by *their* prior actions and contracts. *See, e.g.,*

25   *Crestview Cemetery Ass'n v. Dieden*, 54 Cal. 2d 744, 752 (1960) (interpreting a

26   contract based upon how *the parties* previously performed under that contract); *S.*

27   *Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 851 (1995) (same);

28   *Automobile Salesmen's Union v. Eastbay Motor Car Dealers, Inc.*, 10 Cal. App. 3d

1  419, 424 (1970) (same).   Nor does MGA cite any support for its creative

2  proposition in the leading treatises on contract law, and Mattel has found none.

3         Indeed, MGA's authority actually undermines its argument.  In *U.S.*

4  *Cellular*, the Ninth Circuit explained, "Under California law, a court may consider

5  the subsequent acts and conduct of the parties in the execution of the contract in

6  order *to determine the intent of those parties."* 281 F.3d  at 937 (citing *Cal. Civ.*

7  *Proc. Code* § 1856(c)) (emphasis added).  Here, the contracting parties are Bryant

8  and Mattel.  No other employee is a party to the contract between Bryant and

9  Mattel.  It necessarily follows that actions of the parties to *other* contracts are not

10 relevant even under the rationale of *U.S. Cellular* and similar cases.  Quite simply,

11 no California court has adopted the radical expansion of the practical interpretation

12 doctrine to third party contracts proffered by defendants.

13         Defendants' authority from outside of California is equally

14 inapplicable.  In *Casey v. Lifespan Corp.*, 672 F. Supp. 2d 471, 489 (D.R.I. 1999),

15 the court considered prior interpretation of a bargaining agreement *by the two co-*

16 *defendants among themselves* where that interpretation was contrary to the one they

17 adopted in a later litigation.  Here, of course, third party employees are not parties to

18 this case.  Likewise, in *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459

19 (2003), the court *sought to reconcile two contradictory provisions* regarding

20 payment of benefits.  Only in that context, the court considered the plaintiff's

21 showing that the defendant in practice consistently ignored one of the provisions,

22 and that this provision was inadvertently carried over from an earlier version of the

23 document.  This simply is not the situation here and defendants do not contend

24 otherwise.  And, in any case, *Klapp* itself reiterates the general rule that "evidence

25 of practical interpretation *by the parties* is admissible as an aid in the determination

26 of the meaning to be given legal effect. . ." *Id*. at 478 (citation omitted, emphasis

27 added).  This principle merely permits evidence of the parties' conduct *toward each*

28

-15-

1  *other*, and does not extend to a party's interpretation of its other contracts *with third*

2  *parties*. Thus, MGA's cases from foreign jurisdictions do not aid its case either.

3  Finally, MGA relies upon cases involving situations where a party

4  interpreted the same document differently in two different judicial proceedings.

5  *See, e.g., U.S. Cellular*, 281 F.3d at 938 (a party's "vigorous[] assert[ion]" of a

6  contrary interpretation in another case undermined its later position that the contract

7  was not subject to different reasonable interpretations); *Heston v. Farmer's Ins.*

8  *Group*, 160 Cal. App. 3d 402 (1984) (allowing admission of evidence regarding the

9  defendant's submission of a brief to the National Labor Relations Board interpreting

10  a paragraph in an agent's agreement differently than in the underlying litigation).

11  These cases are easily distinguishable because they involve gamesmanship by

12  litigants who adopt diametrically opposed positions before different judicial

13  tribunals. Mattel has not litigated against Bryant previously. Despite having the

14  means to search public court records, defendants do not point to any instance where,

15  in litigation with third parties, Mattel took the position that doll designs created by a

16  Mattel designer do not belong to Mattel. And in all events, defendants' suggestion

17  that Mattel may have advocated an interpretation that grants it *narrower* contractual

18  rights is simply implausible, yet that is the needle in the haystack that defendants

19  purport to seek.

20  **3.   Mattel's Alleged Failure to Prosecute Every Breach of the**

21  **Pertinent Contracts Is Not Evidence of Its Intent as to Bryant**

22  Bryant's argument that "the failure to take enforcement action [against

23  third parties] is also demonstrative of intent"[21] fails as a matter of law. Under

24  copyright law, a failure to prosecute third party infringers simply is not probative of

25  intent to waive rights against the defendant. "Extending the doctrine of estoppel so

26

27  [21] Motion, at 8:6-7.

28

1  that a defendant may rely on a plaintiff's conduct toward another party is both

2  unsupported by law and pernicious as a matter of policy." *Paramount Pictures*

3  *Corp. v. Carol Publishing Group*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998)

4  (rejecting an affirmative defense based upon the copyright owner's failure to

5  prosecute third party infringements). *See also Capitol Records, Inc. v. Naxos of*

6  *America, Inc.*, 372 F.3d 471, 484 (2d Cir. 2004) ("failure to pursue third-party

7  infringers has regularly been rejected as a defense to copyright infringement or as an

8  indication of abandonment"); *Penguin Books U.S.A., Inc. v. New Christian Church*

9  *of Full Endeavor, Ltd.*, 2000 WL 1028634, *20 (S.D.N.Y. 2000), *vacated on other*

10  *grounds* 2004 WL 906301 (S.D.N.Y. 2004) ("[n]otwithstanding the evidence that

11  [p]laintiffs did not always enforce the copyright as vigorously as they are currently

12  attempting to do, there is no evidence of an overt act by [p]laintiffs evidencing an

13  intent to surrender the copyright"); *cf. Microstar v. Formgen Inc.*, 154 F.3d 1107,

14  1114 (9th Cir. 1998) ("abandonment of a right must be manifested by some overt act

15  indicating an intention to abandon the right."). Accordingly, Mattel's unique

16  decisions on whether to prosecute any other employee for infringement have

17  nothing to do with Mattel's interpretation of its contract with Bryant.

18      The same rule applies to common law claims. In *Emerson v. Electric*

19  *Co. v. Rogers*, 418 F.3d 841 (8th Cir. 2005), the plaintiff sued a former employee

20  for breach of employment agreement and misappropriation of trade secrets. The

21  employee argued, *inter alia*, that plaintiff had waived its right to enforce the

22  agreement against him because it did not enforce it against other employees. *Id.* at

23  844-845. The Eighth Circuit held:

24          While [employer] may not have exercised its rights under
            the covenant on every occasion, there is no credible

25          evidence that [its] failure to do so rose to a waiver of its
            right to enforce the agreement as to [the defendant

26          employee] or that its failure to enforce the agreement as to
            other employees makes it any less likely that [defendant]

27          could use information gained during his relationship with
            [the employer] to unfairly compete against it.

28

*Id.* at 845.  *See also Deal v. Consumer Programs, Inc.*, 458 F. Supp. 2d 970, 978 n 5 (E.D. Mo. 2005) (employer's alleged non-enforcement of a contractual provision against one executive does not operate as a waiver of that provision against another); *Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun*, 315 Ill. App. 3d 329, 339 (Ill. App. 2000) ("The non-enforcement of a provision as to previous employees in different situations is insufficient to constitute waiver as to a subsequent employee.").  Accordingly, Mattel's decisions concerning prosecution of its rights against other employees under different and necessarily unique circumstances have no bearing on its present dispute with Bryant or the interpretation of any contract between him and Mattel.  Notably, here as well, defendants do not cite any controlling or even persuasive authority.[22]

Even if the Discovery Master were to look beyond this authority -- which it need not --  the requested discovery cannot yield any evidence of Mattel's intent as to Bryant because each of Mattel's decisions on whether to prosecute claims against a former employee is based on practical considerations entwined with the unique factual circumstances of each situation -- all of which have nothing to do with Mattel's interpretation of the underlying contracts.  In some cases, for example, it may not be clear whether an infringement has in fact occurred.  Other times, a dispute may be settled prior to litigation.  Not one of these unique decisions has anything to do with Mattel's equally unique decision to prosecute claims against Bryant for, among other things, breaching his agreement and fiduciary obligations to

---

[22] *Hollenbeck Lodge (486) H.O.O.F. v. Wilshire Blvd. Temple*, 175 Cal. App. 2d 469 (1959), is plainly inapposite.  That case concerns *the same parties*: members of a lodge and a cemetery.  Here, by contrast, Bryant claims that Mattel's alleged failure to prosecute *third parties* is somehow relevant.  Further, Bryant does not claim that Mattel has failed to enforce its rights against him for nearly a decade, as was the case in *Hollenbeck Lodge*.

-18-

MATTEL'S OPPOSITION TO MOTION TO OVERRULE RELEVANCE OBJECTION

1   Mattel. Mattel's unique decisions on whether to sue *other* employees for *dissimilar*

2   misconduct are wholly irrelevant.

3          **4.     Additional Discovery Is Unnecessary Even Under Bryant's**

4                 **Theory**

5          Even accepting defendants' far-fetched theory of relevance, the

6   requested discovery would serve no purpose. Mattel disputes that its prior

7   agreements with Bryant are probative of the scope and/or meaning of its later

8   contracts with him. But even if the Discovery Master were to accept that premise,

9   defendants already have all the evidence that they need to present this argument.

10  Defendants do not dispute that he has already received all agreements between him

11  and Mattel. They also admit that these agreements are "standard forms signed by

12  other Mattel employees." Motion, 1:23-24. Discovery of thousands of "standard"

13  agreements between Mattel and other employees would not offer defendants more

14  evidence than they currently possess.

15         And, to put meat on the bone of the documents, Lissa Freed, Mattel's

16  Director of Human Resources, has already testified at length regarding the employee

17  forms at issue, and was made available to answer any questions that MGA and

18  Bryant had. Declaration of Stan Karas, Exh. A (Freed Depo., 20:9-22:15 and 28:2-

19  31:3 (testifying regarding changes to the inventions agreement); 25:5-27:5 and 72:9-

20  74:10 (testifying regarding the conflict of interest questionnaire); 121:22-125:21

21  (testifying regarding the exit questionnaire)). Accordingly, additional discovery

22  would serve no conceivable purpose.

23         **D.     Compliance with Topic No. 25 Would Be Oppressive and Unduly**

24                **Burdensome**

25         Even if the requested discovery were relevant, the extreme burden of

26  their search and production substantially outweighs any possible probative value.

27  *See Fed. R. Civ. P.* 26(b)(2)(C)(iii) (court has the power to deny discovery where

28  "the burden or expense of the proposed discovery outweighs its likely benefit,

1   considering … the importance of the discovery in resolving the issues."). A

2   Discovery Master has "a duty, of special significance in lengthy and complex cases

3   where the possibility of abuse is always present, to supervise and limit discovery to

4   protect parties and witnesses from annoyance and excessive expense." *Dolgow v.*

5   *Anderson*, 53 F.R.D. 661, 664 (E.D.N.Y. 1971); *see also Laker Airways Ltd. v. Pan*

6   *American World Airways*, 559 F. Supp. 1124, 1133 n.36 (D.D.C. 1983) (same).

7          The burden of complying with Bryant's request for a designee on Topic

8   No. 25 is extreme even in the context of this complex litigation.  Even putting aside

9   the search for documents related to the enforcement of contract with employees

10   other than Bryant, --- which itself would require work -- the inquiry hardly ends

11   with a review of such documents.  Instead, as set forth above, the designee or

12   counsel would have to interview witnesses involved with each such dispute--any

13   one of which could be a separate lawsuit and all that entails.  That oppressive effort

14   far exceeds the justification for evidence that the Discovery Master found "thin" and

15   "tenuous" even *before* Bryant withdrew the only affirmative defenses to which they

16   could have plausibly related.  *Fed. R. Civ. P.* 26(b)(2)(iii) (court may impose limits

17   on discovery if burden of responding outweighs its likely benefit); *Keith H. v Long*

18   *Beach Unified Sch. Dist.*, 228 F.R.D 652, 659 (C.D. Cal. 2005) (denying plaintiff's

19   motion, because request was burdensome and the gravamen of complaint addressed

20   other issues); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Elec. Transit Inc.*, 2006 WL

21   1525809, * 2 (N.D. Cal. 2006) (the court may deny a motion to compel if the burden

22   of discovery outweighs the utility of information sought).[23]

23

24   [23]   This burden is especially improper because MGA recently served Mattel with

25   numerous requests for admission on this issue, which would require hundreds of
     hours and many thousands of dollars to answer. *See* Miller Decl., Exh. 10 (MGA

26   Entertainment, Inc.'s Third Set of Requests for Admission to Mattel, Inc., dated

27   November 28, 2007).

28

1         Although the issue upon this motion is discoverability, not

2 admissibility, of evidence, it is appropriate to assess the extraordinary burden of the

3 requested discovery in the context of what evidence defendants may actually

4 introduce at trial.  Under *Federal Rule of Evidence* 403, defendants are highly likely

5 to be barred from presenting evidence regarding Mattel's decisions whether to

6 prosecute third party infringers, because it would inevitably transform the trial into

7 an interminable series of mini-trials regarding the facts and merits of any each

8 enforcement action, which would distract the jury from to the core issues.

9 Defendants cannot credibly argue that the hundreds of thousands of dollars it would

10 cost to review third-party files, to investigate the merits of each and to prepare a

11 designee to testify on every consideration to enforce these two agreements over a

12 decade is justified if he is not likely to be permitted to introduce any such evidence

13 at trial.  Thus the present request reduces to an impermissible fishing expedition that

14 does not come close to justifying the extraordinary burden it would impose on

15 Mattel.

16         Finally, granting defendants' request would undoubtedly create an

17 avalanche of new discovery requests from defendants.  If the Discovery Master

18 grants the motion, it would be opening the door to ever-increasing demands for a

19 complete turn-over of employee files in every case involving a breach of an

20 employment agreement, depositions of Mattel personnel regarding the unique

21 circumstances of such breaches, and subpoenas to the former employees.  The

22 Discovery Master should nip Bryant's overreaching requests in the bud by denying

23 the Motion in full,  lest this issue continue to create additional disputes between

24 parties.

25

26

27

28

**III.  BRYANT'S DEMAND THAT THE DISCOVERY MASTER ORDER MATTEL TO RESPOND TO UNSPECIFIED DISCOVERY REQUESTS IS IMPROPER**

The *Local Rules* mandate that all discovery motions be supported by a document setting forth either the specific requests or the specific question, and any specific objections, so that the Court will have both precision and context for its rulings. *Local Rule* 37-2.1; *U.S. ex. rel. O'Connell v. Chapman University*, 245 F.R.D. 646, 648 (C.D. Cal. 2007) (entering order to show cause for failure to comply with *Local Rule* 37-2.1); *Estate of Gonzalez v. Hickman*, 2007 WL 3238725, at *2 (C.D. Cal. 2007) (refusing to hear motion because of party's failure to comply with *Local Rule* 37-2.1).

Putting aside the two 30(b)(6) topics discussed above, defendants' motion utterly fails to comply with the *Local Rule*, and instead asks the Discovery Master to rule in a vacuum.  Specifically, MGA demands an "order compelling Mattel to supplement all of its discovery responses and document productions accordingly."  Notice of Motion, 1:9-10.  MGA does not specify any particular document request, interrogatory or request for admission that it deems to be affected by the Discovery Master's order on this motion.  Mattel cannot meaningfully respond to -- and the Discovery Master cannot rule upon -- a motion to compel further responses to unspecified discovery requests.  The Discovery Master has consistently rejected the parties' request that he lay down general discovery guidelines not tied to specific discovery requests.[24]  MGA's request for vague

[24] Declaration of B. Dylan Proctor In Support of Mattel Inc.'s Opposition to MGA's Motion to Compel Regarding Mattel's Privilege Waiver By Claim Assertion dated December 27, 2007, Exh. 4 (Transcript of June 19, 2007 Hearing, at pp. 17-18 (refusing to hear matters regarding depositions not before the Discovery Master)); Exh. 5 (Transcript of May 4, 2007 Hearing, at pp. 12-13 (same)).

1   discovery rulings without identification of the specific discovery requests or

2   information at issue should likewise be rejected here.

3           This argument is not a mere technicality.  Because MGA's motion is

4   not directed at specific discovery requests, the Discovery Master could not grant

5   properly tailored relief, if it were inclined to grant any relief.  An order that simply

6   grants the motion would leave all parties at a loss regarding which discovery

7   responses must be supplemented.  For instance, MGA has asked Mattel to admit --

8   in literally hundreds upon hundreds of Requests for Admission -- that some of its

9   employees have performed non-Mattel work while employed by the company.  An

10  order granting Bryant's non-specific request for relief could conceivably require

11  Mattel to search the computer and paper files of each of its thousands of employees

12  to be in compliance with the Order.  The tremendous burden of such discovery

13  cannot be overstated, and Mattel is entitled to address it in context.  This is the

14  precise situation that the Local Rule is designed to avoid, and the precise situation

15  that MGA seeks to create through its violation of the Local Rule.

16          Accordingly, even if the Discovery Referee grants the portion of

17  MGA's motion concerning *Rule* 30(b)(6) deposition, -- which it should not -- it

18  should deny the request that Mattel supplement "all of its discovery responses and

19  document productions accordingly."

20                              **Conclusion**

21          Defendants seek to open a new front in the ongoing discovery disputes

22  between the parties.  The only practical result of such an order would be an

23  avalanche of additional discovery motions on a brand new topic.  Defendants are not

24  entitled to the requested discovery, and it is unduly burdensome.  The Discovery

25  Master should deny the motion in full.

26

27

28

1 | DATED:  December 28, 2007

2

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

3

By _____ /FOR

4

B. Dylan Proctor
Attorneys for Plaintiff and Counter-Defendant Mattel, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28