QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**DECLARATION OF B. DYLAN PROCTOR IN SUPPORT OF MATTEL, INC.'S MOTION FOR ORDER CONFIRMING THAT THE DISCOVERY MASTER HEARS AND RESOLVES ALL DISCOVERY DISPUTES, INCLUDING THOSE OF THIRD PARTIES**<br><br>Hearing Date: January 7, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 1<br><br>**Phase I**<br>Discovery Cutoff: January 28, 208<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

## DECLARATION OF B. DYLAN PROCTOR

I, B. Dylan Proctor, declare as follows:

1.      I am a member of the bar of the State of California and a partner of Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel").  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.      Attached as Exhibit 1 is a true and correct copy of the Order Regarding Mattel's Motion for Leave to Amend, dated January 12, 2006.

3.      During the twelve motions that Judge Infante has been Discovery Master, I am informed and believe he has heard and resolved more than 45 discovery motions and held numerous telephonic conferences with the parties. Attached as Exhibit 2 is a true and correct copy of a list of the discovery Orders issued prior to appointment of the Discovery Master and the discovery Orders issued by the Discovery Master.

4.      I am informed and believe the parties and third parties have to date produced nearly four million pages of documents, with countless more yet to be produced.  The parties have served at least 90 subpoenas for non-party discovery (at least 60 of which were served by MGA and Bryant), nearly two thousand requests for production of documents (at least 1200 of which were served by MGA and Bryant), and taken several dozen depositions of persons in their individual capacities or as Rule 30(b)(6) designees.

5.      Judge Infante is set to hear approximately 21 discovery motions in the first ten days of January 2008—including approximately nine motions involving Machado and/or third parties.

6.      Attached as Exhibit 3 is a true and correct copy of Stern & Goldberg's Memorandum of Points and Authorities in Opposition to Mattel's Motion to Compel Production of Documents, dated December 21, 2007.

7.      Attached as Exhibit 4 is a true and correct copy of Kaye Scholer LLP's Opposition to Mattel, Inc.'s Motion to Compel Kaye Scholer to Produce Documents, dated December 27, 2007.

8.      Attached as Exhibit 5 is a true and correct copy of Non-Party Farhad Larian's Memorandum of Points and Authorities in Opposition to Mattel, Inc.'s Motion to Compel Farhad Larian to Produce Documents; Request for Sanctions, dated December 26 2007.

9.      Attached as Exhibit 6 is a true and correct copy of Carlos Gustavo Machado Gomez's Memorandum of Points and Authorities in Opposition to Mattel, Inc.'s Motion to Compel (1) Deposition of Carlos Gustavo Machado Gomez [and] (2) Consent to Production of Electronic Mail Messages, dated November 26, 2007 ("Motion to Compel re: Machado").

10.     Attached as Exhibit 7 is a true and correct copy of the Court's Order Regarding Status Conference, dated October 31, 2007.  As recounted therein, Defendant Machado participated in the status conference during which the Court entered a two-week stay of discovery and ordered the matters set to be heard by Judge Infante to be rescheduled to a date determined by Judge Infante.  Machado did not object to the jurisdiction of Judge Infante at that time.

11.     Attached as Exhibit 8 is a true and correct copy of the Stipulation to Add Parties to the Stipulated Protective; and Order Thereon, entered into by Defendant Machado on July 25, 2007, and issued by Judge Infante on August 6, 2007.

12.     On or about December 19, 2007, Stern & Goldberg, Kaye Scholer, and Farhad Larian requested relief from Judge Infante and participated in a teleconference with him, in which they asked him to stay Mattel's motions to compel against them.  I represented Mattel at this conference.  After taking their appearances, Judge Infante rejected their challenge to his jurisdiction out-of-hand, stating that they were "clearly" bound by the Order and questioning why the District

1   Court would want discovery to be handled piecemeal, with some disputes handled

2   by a discovery master and others by the magistrate assigned to the case.

3           13.     Attached as Exhibit 9 is a true and correct copy Counter-

4   Defendant Carlos Gustabo Machado Gomez's Initial Disclosures Pursuant to Rule

5   26(a)(1), dated September 24, 2007.

6           14.     Defendant Machado was served with process on March 26, 2007.

7   To my knowledge, he first objected to the Discovery Master's jurisdiction in his

8   Opposition to Mattel's Motion to Compel re: Machado, which was filed on

9   November 26, 2007—eight months after he was served.

10          I declare under penalty of perjury under the laws of the United States of

11  America and the State of California that the foregoing is true and correct.

12          Executed on December 31, 2007, at Los Angeles, California.

13

14  _____

15  B. Dylan Proctor

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2337831.3

# EXHIBIT 1

CALENDARED

JAN 1 0 2007

P-Send

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 1 2 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION     BY DEPUTY

FILED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

                    Plaintiff,

v.

MATTEL, INC.,

                    Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

EXHIBIT _1_ PAGE _5_

1-12

1   resources in creating and/or developing the BRATZ dolls or whether he continued
2   to develop his BRATZ design while still working in Mattel's employ.  In either event,
3   the rights to the BRATZ dolls could become the property of Mattel, either through
4   infringement or through operation of the agreements noted above.  The case was
5   later removed to this Court and was assigned the case number CV-04-9059.  MGA
6   Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to
7   protect its rights to Bratz dolls" that were at stake in the action.  Mattel, Inc. v.
8   Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a
9   significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual
10  property, i.e., the Bratz creations, were decided in the absence of MGA").

11        In the interim, Bryant filed a declaratory judgment action in this Court,
12  seeking for the Court to declare that his BRATZ doll creations did not infringe
13  Mattel's copyright in its Toon Teens products.  See Court's July 18, 2006, Order at
14  3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel
15  products,' . . . the substance of his allegations all address the product 'Toon
16  Teens'").  The declaratory judgment action was assigned the case number CV-04-
17  9049.

18        MGA then filed an action against Mattel in this Court broadening the scope
19  of the controversy beyond that concerned with the ownership rights to the BRATZ
20  doll line.  MGA's complaint asserted various Lanham Act claims and their California
21  state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of
22  competition-by-intimidation and serial copycatting of MGA's products." (Compl.
23  ¶ 7).  In essence, although the prior actions were concerned with ownership in the
24  rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there
25  had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.
26  MGA's complaint did make mention of other products that were affected by Mattel's
27  alleged predatory business practices, but by far the largest portion of its complaint
28  concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

EXHIBIT _1_ PAGE _6_

1   line of BRATZ dolls.[1]

2        By Order dated June 19, 2006, the Court consolidated all three cases "for all

3   purposes" as they "involve[d] a number of common issues of law and fact." As the

4   Court later noted in its August 10, 2006, Order: "At its heart, this case asks the

5   question: Who owns the rights to the Bratz dolls?" Resolution of this question lies

6   at the heart of or, at the very least, affects many of the other claims set forth in

7   each of the three respective cases. For instance, even though the allegations in

8   05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ

9   dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot

10   many of those allegations. It is hard to imagine how it is unlawful for a company to

11   thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel

12   owned the rights to the BRATZ dolls, many of the allegations in the 05-2727

13   complaint would become moot. That said, such consolidation did not do away with

14   the distinctions that do exist between the three cases. As the Court highlighted in

15   its consolidation order, when either party files a pleading in the case, "the first

16   paragraph of [that] document . . . shall inform the Court to which case(s) the

17   document relates."

18        On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,

19   04-9049, finding there existed no reasonable apprehension of an imminent

20   copyright infringement claim being filed against him by Mattel based on Mattel's

21   Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The

22   Court's Order was predicated entirely upon counsel for Mattel's representation

23   during oral argument that it "will not maintain that Bratz infringes the copyright in

24   Toon Teens." Owing to this representation, the Court, in dismissing the declaratory

25   judgment action, made clear that any future "claim by Mattel of copyright

26

27       [1] That the marketing of the BRATZ dolls lies at the heart of the issues between the rival doll makers in the 05-2727 case is best illustrated by the Court's

28   discussion of those allegations in its August 26, 2005, Order, Granting in Part and Denying Part Mattel's Motion to Strike portions of MGA's complaint.

3

EXHIBIT  1  PAGE  7

1   infringement based on the Toon Teens product is barred by counsel's

2   representation."  July 18, 2006, Order at 4.

3          Presently before the Court is Mattel's request for leave to file an amended

4   complaint in the 04-9059 action.  The complaint broadens considerably the nature

5   of the action from its genesis in state court.  Whereas before the complaint simply

6   sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7   employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8   claim to the BRATZ doll line), the amended complaint adds five more defendants

9   and nine new legal claims, alleging a wide range of commercial disputes between

10   the rival doll makers that spans three countries.  For instance, the amended

11   complaint now contains RICO claims, a misappropriation of trade secrets claim,

12   and various aiding and abetting claims all stemming from allegations that MGA

13   cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14   named as defendants in the amended complaint) or designers (namely, Bryant),

15   and then enticed or encouraged those same individuals to steal various trade and

16   proprietary secrets (be it sales plans, sales projections, customer profiles, or

17   intellectual property) from Mattel and hand them over to MGA before going to work

18   at MGA.

19          Moreover, the amended complaint expands upon the existing breaches of

20   contract and fiduciary duty claims in the original complaint by expanding the

21   universe of former employees (namely, the cherry-picked executives) to whom

22   those claims now apply.

23          Finally, Mattel now makes plain what was always lurking in its original

24   complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25   MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26   Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27   issue in Bryant's declaratory relief action: "The Amended Complaint does not

28   include a claim for infringement of copyrights in Toon Teens, but rather

4

EXHIBIT _1_ PAGE _8_

1  infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2  Mattel has recently filed copyright registrations with the U.S. Copyright Office

3  claiming ownership in various BRATZ doll design drawings penned by Bryant.

4  A.    ANALYSIS

5       Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6  pleading has been served, "a party may amend the party's pleading only by leave of

7  court or by written consent of the adverse party; and leave shall be freely given

8  when justice so requires." With no consent to Mattel's proposed filing proffered by

9  MGA and Bryant, determining whether to grant Mattel leave to file an amended

10 complaint is gauged by looking to the familiar formulation of factors set forth by the

11 Supreme Court in Forman v. Davis:

12       In the absence of any apparent or declared
13       reason—such as undue delay, bad faith or dilatory
         motive on the part of the movant, repeated failure to
14       cure deficiencies by amendments previously allowed,
         undue prejudice to the opposing party by virtue of
15       allowance of the amendment, futility of amendment,
         etc.—the leave sought should, as the rules require, be
16       'freely given.' Of course, the grant or denial of an
         opportunity to amend is within the discretion of the
17       District Court, but outright refusal to grant the leave
         without any justifying reason appearing for the denial is
18       not an exercise of discretion; it is merely abuse of that
         discretion and inconsistent with the spirit of the Federal
19       Rules.

20 371 U.S. 178, 182 (1962).

21      MGA and Bryant offer the following reasons for denying Mattel leave to

22 amend: (1) Mattel has long known of the factual predicates underlying its copyright

23 and intentional interference claims but delayed in asserting them; (2) the proposed

24 amendment to add the copyright claim and the intentional interference claims

25 (against the new defendants) are futile because they are barred by the applicable

26 statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27 because of its prior public disavowal of an intent to assert such a claim; and (4)

28 MGA and Bryant would incur undue prejudice were the copyright claim added to the

5

EXHIBIT _1_ PAGE _9_

1   suit because of alleged spoilation of evidence issues involving Mattel's ZEUS

2   computer system used by doll designers at Mattel and its e-mail system.  None of

3   these arguments are persuasive.

4       1.   <u>Awareness of Factual Predicate for Copyright and Intentional</u>

5              <u>Interference Claims</u>

6        MGA argues that Mattel has long known about the factual predicate for its

7   recently added copyright claim, observing that, "[o]ver four years ago, in August

8   2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant

9   created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'

10  that project — while still employed at Mattel."  (MGA Opp. at 9).  Similarly, MGA

11  argues that Mattel has long known of the factual predicate for its intentional

12  interference claim with respect to Bryant's contract given that, "[b]y Mattel's own

13  admission, it learned in November 2003 — more than three years ago — that

14  Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at

15  Mattel."  (MGA Opp. at 11-12).

16       At the outset it must be observed that "[m]ere delay in proffering an

17  amendment does not justify denying leave to amend."  <u>Sierra Club v. Union Oil Co.</u>

18  <u>of California</u>, 813 F.2d 1480, 1493 (9th Cir. 1987), <u>vacated on other grounds by</u>,

19  485 U.S. 931 (1988), <u>and reinstated by</u>, 853 F.2d 667 (9th Cir. 1988).  Seizing upon

20  this point of law, Mattel argues that "only in . . . cases" when "granting leave would

21  require discovery to be reopened after summary judgment motions have been filed"

22  has the Ninth Circuit found the denial of leave "justified" based on the passage of

23  time alone.  (Reply to MGA Opp. at 3).  That is incorrect.  There is a line of cases

24  from the Ninth Circuit finding that, if a "party seeking amendment knows or should

25  know of the facts underlying the amendment when the original complaint is filed,

26  the motion to amend may be denied."  <u>Sierra Club</u>, 813 F.2d at 1493 (citing <u>Jordan</u>

27  <u>v. County of Los Angeles</u>, 669 F.2d 1311, 1324 (9th Cir. 1982)).  And, recently, the

28  Ninth Circuit upheld the denial of leave to amend based on the passage of time

6

EXHIBIT <u>1</u> PAGE <u>10</u>

1  even though the requested leave to amend was tendered <u>before</u> the time, as set

2  forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.

3  See <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006).

4  The Ninth Circuit observed that, even when a request for leave to amend is timely

5  under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless

6  still deny the request based on any of the <u>Forman</u> factors. <u>Id.</u> at 951-52. The Ninth

7  Circuit then noted that the issue of untimeliness (regardless of whether the

8  amendment is tendered "within the period of time allotted by the district court in a

9  Rule 16 scheduling order") in seeking to amend can constitute a justification for

10  denying leave to amend if "the moving party knew or should have known the facts

11  and theories raised by the amendment in the original pleading." <u>Id.</u> at 953.

12  Toward that end, the Ninth Circuit observed that "an eight month delay between the

13  time of obtaining a relevant fact and seeking a leave to amend is unreasonable."

14  <u>Id.</u> In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that,

15  even though the moving party had known of the facts prompting the amendment for

16  a long period of time, there still remained eight more months of discovery for the

17  parties to marshal facts against the allegations raised by the amended pleading:

18  "Even though eight months of discovery remained, requiring the parties to scramble

19  and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was

20  tainted, would have unfairly imposed potentially high, additional litigation costs on

21  Dialysist West that could have easily been avoided had AmerisourceBergen

22  pursued its 'tainted product' theory in its original complaint or reply." <u>Id.</u> Thus,

23  absent "a satisfactory explanation" for the delay in amending the complaint, the

24  Court is well within its rights to deny leave to amend. <u>Id.</u>

25       Mattel proffers the following reasons for taking the time that it did before

26  presenting its amended complaint:  (1) Acting out of an abundance of caution to its

27  obligations under Rule 11 to present "factual contentions [that] have evidentiary

28  support," Mattel waited until its claims were better supported by evidence

7

EXHIBIT _1_ PAGE _11_

1  uncovered in discovery; and (2) the delay in the proceedings caused by "the year-
2  long stay and the parties' prior jurisdictional disputes" have left the case still in its
3  "nascent stage." (Reply to MGA Opp. at 2, 4).
4        The first reason is not well-founded.  Rule 11 specifically allows parties to
5  aver factual allegations that "are likely to have evidentiary support after a
6  reasonable opportunity for further investigation or discovery" so long as the party
7  makes clear in its pleading that its factual contentions on those points are with the
8  caveat that they are based on a good faith belief that further discovery would
9  unearth evidence to support them.  See FED. R. CIV. P. 11(b)(3).  Simply put, Rule
10  11 did not stand in the way of Mattel averring the factual contentions it now claims it
11  "merely suspected" as being the case based on the limited information before it.
12  Mattel could have gone ahead and made such suspected factual allegations so
13  long as it caveated those claims with the declaration that it reasonably believed that
14  those allegations would be borne out by further discovery.  Perhaps the time by
15  which Mattel could have reasonably believed such allegations would be borne out
16  by further discovery occurred after the dates noted by MGA, but it is hard to fathom
17  that such materialization took three or four years to occur.
18        The second reason would have some merit to it but for the fact that the
19  information that alerted (or should have alerted) Mattel to the existence of its now
20  asserted copyright and intentional interference claims was brought to Mattel's
21  attention well before the case was stayed on May 20, 2005.  The stay, therefore,
22  did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the
23  stay does not explain why Mattel waited nearly six months after the stay was lifted
24  on May 16, 2006, to present those claims now.
25        All of that being said, the one thing that gives the Court pause in denying
26  leave based on the tardiness in Mattel's presentation is the lack of any evidence
27  that MGA or Bryant have been prejudiced by the delay.  Delay unconnected to
28  some showing of prejudice, be it prejudice to the parties or disruption in judicial

8

EXHIBIT 1 PAGE 12

management of the case, does not suffice to deny granting leave to amend. The Ninth Circuit has noted that, "where a defendant is on notice of the facts contained in an amendment to a complaint, there is no serious prejudice to defendant in allowing the amendment" even if it is made tardily. Sierra Club, 813 F.2d at 1493. Indeed, the denial of leave was proper in the Dialysist case not simply because of the length of the delay, but because the delay itself was "detrimental" in that it would entail the opposing party to have "unfairly" incurred "potentially high, additional litigation costs" that could have been avoided if the moving party had made clear its intentions earlier. 465 F.3d at 953.

Here, as well demonstrated in Mattel's papers, it is readily apparent from the pleadings filed by MGA and Bryant in this case that both have been aware for some time of the factual predicates now underlying Mattel's copyright claim and intentional interference claim. (See MGA Opp. at 5 ("As Bryant and MGA suspected at the time of filing — and Mattel now concedes by conduct — those deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all along")(emphasis added)). The parties have engaged in meaningful discovery regarding many of the facts touched upon by these new claims, be it tracking down experts in various forensic fields or taking depositions of various of the key players to those claims.   In point of fact, in their papers filed with this Court before this present motion, both Bryant and MGA have made it abundantly clear that they have long suspected that a copyright infringement claim was in the offing as evidenced by Bryant's filing of the declaratory judgment action and MGA's intervention in the 05-9059 matter to protect its rights to the BRATZ dolls.  Similarly, MGA and Bryant have been on notice to the facts comprising the interference claim concerning Bryant's contract as evidenced by the identity of the individuals who have been deposed by Mattel, as well as the nature of the questions posed and the testimony proffered at those depositions.  MGA's argument that, with the amendments, it faces the prospect of defending "against stale claims" owing to faded memories and

EXHIBIT __1__ PAGE __13__

1   loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),

2   is diminished by the fact that (no doubt owing to the sophistication of all counsel

3   involved) discovery on these very issues have been proceeding apace by both

4   sides long before Mattel filed its proposed amendments.  This is simply not a case

5   where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by

6   allowing the proposed amendments; much of those costs have already been borne

7   by the parties for some time.

8          2.     Spoilation of Evidence

9          MGA next argues that Mattel's delay in bringing the amended complaint has

10  caused it prejudice as, in the interim, critical pieces of evidence have been or are

11  suspected of having become lost.  For instance, MGA asserts that Mattel's Rule

12  30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,

13  "although Mattel identified and segregated its most relevant backup tapes available

14  for Zeus, Mattel allowed its tape backup system to expire the database for those

15  backup tapes, thereby eliminating all information about what was actually stored on

16  those backup tapes."  (MGA Opp. at 9-10).  Information on the Zeus computer

17  system is critical because of Mattel's assertion that part of its copyright claim rests

18  on Bryant's exposure to Mattel development programs.  (First Am. Compl. ¶ 26(a)).

19  As explained by MGA: "[C]oncept data and drawings created by [Mattel] design

20  center personnel are stored on Zeus.  Thus, the electronic documents stored on

21  Zeus – which should include the metadata showing who created, edited and

22  accessed Mattel's concept drawings and designs – during the time Bryant worked

23  in the design center at Mattel is vitally important to defending against Mattel's

24  claims."  (MGA Opp. at 14).  MGA's argument is neither an accurate

25  characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure

26  claim.

27         Ms. Marine did not testify that the information on the backup tapes (some

28  fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

EXHIBIT _1_ PAGE _14_

1   that could restore the information still found on those tapes:

2   Q.   So if you wanted to restore that 2002 backup
        tape[s] then, how would you go about doing that?

3                        . . . .

4   A.   You need the hardware so if we don't have the
        hardware — if [the technology used by the tape
5       is] DLT we don't have the hardware and you've
        got to buy it and — well, first you have to find a
6       place to put it with adequate power which we
        don't have in the design center.  You need to
7       have a tape library.  You need to have the tape
        drives that carried those tapes.  You need a
8       server that has the capability to — that's big
        enough to handle all of the hardware.  You need
9       the software — the license for the backup
        software[, Net Backup].  You need the disk space
10      to restore it to and then you have to start reading
        in all those tapes.
11

12  Q.   You said that you don't have that in the design
        center.  Do you have that hardware anywhere
13      else in the company?

14  A.   DLT? No, no.

15  Q.   At what point did you get rid of the hardware?

16  A.   Once the last backups — DLT backups expired
        so it would have been a couple years ago
17      probably.

18  (Decl. Diana Torres, Ex. K at 118-119).

19      The above testimony clearly denotes the difficulty in restoring what was on

20  Mattel's Zeus computer system during the relevant time frame, but it certainly does

21  not demonstrate that the information on those backup tapes has been "eliminated"

22  or forever lost.  Undoubtedly it will be a costly endeavor to recover that information

23  (not to mention to later search and sort through it); but to argue, as MGA does, that

24  the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its

25  plight.  Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

26  information on the Zeus backup tapes has been present for some time (maybe

27  since 2004 or perhaps even earlier).  This is important because it undermines

28  MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

                                11

EXHIBIT _1_ PAGE _15_

1   it to suffer prejudice it otherwise would not have faced if the amendments were

2   brought sooner.  Such prejudice has been present for years, and Mattel's failure to

3   bring its amended complaint sooner would not have changed this situation.

4          Similarly, MGA's point that access to what was on the Zeus computer

5   system is vital in demonstrating that Bryant was not exposed to or otherwise did not

6   hack the system to steal other designers work is diminished to some extent by the

7   fact that Bryant himself testified that he did not use the Zeus computer system and

8   was "pretty much computer illiterate" while employed at Mattel.  Admittedly, the

9   ability to point to information on the Zeus system backup tapes to prove that Bryant

10  did not access other designers drawings or to prove the date those drawings were

11  created by those other designers would be useful evidence to negate Mattel's

12  factual claims.  Nonetheless, such evidence still would not discount other avenues

13  outside of the Zeus computer system by which Mattel could seek to prove that

14  Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant

15  saw drawings of the same posted on other designers' cubicles.

16         MGA next surmises that Mattel's e-mail records have disappeared, not

17  because it has any proof on that point, but simply because Mattel has postponed

18  the deposition of the individual most knowledgeable of Mattel's e-mail records until

19  after the hearing on Mattel's motion for leave to amend.  (MGA Opp. at 10).

20  Speculation of spoilation does not suffice.  That MGA's argumentation on this point

21  is nothing more than speculation is best exhibited by the evidence it has proffered

22  in support of its argument:  "[I]f the sole retained backup for Zeus is no longer

23  available, it is not hard to imagine that Mattel's electronic mail archives are similarly

24  out of reach."  (MGA Opp. at 15 (emphasis added)).  MGA then makes much of a

25  deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his

26  inbox would be automatically deleted if they had remained there for more than a

27  certain time period.  (Decl. Diana Torres, Ex. H at 292-93).  MGA takes from this

28  acknowledgment that Mattel has an "automatic email deletion system" that has

EXHIBIT __1__ PAGE _16_

1  compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).

2  Noticeably absent from MGA's argument is any evidence that the e-mails so

3  deleted from a Mattel employee's inbox are forever lost or, as is far more likely,

4  whether such information remains or is otherwise archived on some backup file on

5  Mattel's computer system. Absent concrete proof that spoilation has occurred,

6  nothing in MGA's argument forms a basis for denying Mattel its requested leave to

7  amend.

8      3.    Statute of Limitations

9      MGA next argues that Mattel's copyright and intentional interference claims

10  are futile as both are barred by the applicable statute of limitations. This argument

11  was pressed emphatically at oral argument. With respect to the copyright claim,

12  MGA argues that the applicable statute of limitations is three years, with the

13  limitations period accruing from when a party has knowledge of a violation or when

14  a reasonably diligent person would have been put on inquiry of the infringement.

15  (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.

16  1994)). MGA argues that Mattel was put on notice about its copyright claim in

17  August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant

18  had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA,

19  the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's

20  current copyright claim stale.

21      The problem with MGA's analysis is it fails to take into account the relations-

22  back principles found in Rule 15(c), which provides that "[a]n amendment of a

23  pleading relates back to the date of the original pleading when "the claim . . . in the

24  amended pleading arose out of the conduct, transaction, or occurrence set forth . . .

25  in the original pleading," or if such relation back is otherwise permissible by the

26  state "law that provides the statute of limitations applicable to the action." By

27  MGA's own admission Mattel's copyright claim arises out of the same conduct or

28  transaction contained in the original complaint filed in April, 2004, well within the

13

EXHIBIT _1_ PAGE _17_

applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations [contained in the original complaint] underlie the copyright infringement and intentional interference contract claims Mattel now seeks to allege against MGA, Mr. Larian and Bryant")).

MGA's statute of limitations argument with respect to the intentional interference claims fares no better. According to MGA, the applicable statute of limitations is two years for an intentional interference with contract claim and Mattel was aware of the facts alerting it to this claim (insofar as Bryant's contract is concerned) on November 24, 2003, when it learned "that Bryant worked with MGA to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence, prior to the expiration of his contractual relationship with Mattel."[3] (MGA Opp. at 18 (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999) . Such a time line would, according to MGA, mean that the applicable limitations period expired on Mattel's interference with Bryant's contract claim on November 24, 2005, well before Mattel sought leave to file its amended complaint. (Id.) The problem again with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional interference claim would relate back to when it filed its original complaint in April,

---

[2] The same would appear to be true — that the amendments would be timely — if the amendments related back to Mattel's answer (filed on May 13, 2005) to MGA's complaint in the 05-2727 case.

[3] With respect to Mattel's interference with contract claim as to one of its former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim on September 17, 2004, when Brawer informed Mattel that he leaving to go to work for MGA. (MGA Opp. at 19-20). The problem with this argument is that nothing from that simple event — Brawer's declaration of his intent to leave — in any way would apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct (the stealing of proprietary information) causing Brawer to breach his contract with Mattel that he would not do anything to help a competitor while working for them. MGA's contention that Mattel must have known of those misdeeds in mid-September is nothing more than speculation. Futility cannot be founded on what might or might not be the case; either a claim is futile to bring or it is not.

14

EXHIBIT 1 PAGE 18

1   2004, well before the limitations period expired.[4]

2            Accordingly, MGA's futility argument is not well-founded.

3       **4.    Prior Disavowals of Asserting a Copyright Claim**

4            Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5   this case as to whether or not it is asserting a copyright infringement claim against

6   it. To MGA, such ducking and weaving on Mattel's part renders its effort to now

7   bring such a copyright claim as one done in bad faith. No doubt the Court itself has

8   been subjected to Mattel's overly vague statements on this point, but in the end

9   nothing in those statements has ever foreclosed the possibility that such a claim

10  may be in the offing. Indeed, during the oral argument on Mattel's motion to

11  dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12  to whether it would assert such a copyright claim against Bryant as it is currently

13  seeking to do. The most that Mattel's counsel would proffer was that Mattel would

14  not assert a copyright claim against Bryant based on Mattel's copyright rights in

15  TOON TEENS. At that point, the Court directed the parties to engage in a meet

16  and confer based on counsel for Mattel's representation and to provide a report to

17  the Court based on those discussions. The report submitted to the Court made

18  clear that, although Mattel was willing to accede that it would not bring a copyright

19  claim based on TOON TEENS, it refused to accede to Bryant's broader request

20  that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21  to any claim that Mattel has or ever will assert against Bryant." This by itself should

22  have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23  prior statements had foreclosed any potential copyright claim against them.[5]

24  _____

25       [4] Again the relations-back principle would also seem to render its claim timely
    if it were filed as an amended answer (the original having been filed in May, 2005) in
26  the 05-2727 case.

27       [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
    Larian, for the "Doe" defendants listed in its original complaint is improper because
28  Mattel knew of their identity when it filed the original complaint. The argument is

                                        15

EXHIBIT  1  PAGE  19

1    That said, Mattel's allegation in the amended complaint as to how it is

2  seeking to lay claim to the copyright in BRATZ is disconcerting.  Paragraph 26,

3  subsection a, in the amended complaint alleges that Bryant "misappropriated and

4  misused Mattel property" by "using his exposure to Mattel development programs to

5  create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)).  Such

6  "exposure" could include Bryant misappropriating the Mattel design concept in

7  TOON TEENS in drawing his inspiration for the BRATZ doll.  Were Mattel's

8  copyright claim so predicated it would be barred by this Court's July, 2006, Order,

9  dismissing Bryant's declaratory judgment action.  Mattel was pressed on this point

10  during oral argument and conceded that such "exposure" to Mattel "development

11  programs" did not include TOON TEENS.  With this representation, nothing in

12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13       5.    Judicial Economy Considerations

14       In his opposition, Bryant adds an additional reason for denying leave beyond

15  those contained in MGA's papers — the amendment would muddy the waters in the

16  04-9059 by adding "tangential" issues that would only serve to delay resolution of

17  the key issue lying at the heart of the complaint:  Who owns the rights to the

18  BRATZ line of dolls.  (Bryant Opp. at 2 ).  Bryant notes that the case has proceeded

19  apace in moving toward resolving that issue, and the amendment would "transform

20

21  _____

   misplaced.  As made clear by Mattel, California law allows a plaintiff to substitute in a

22  defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or

   ignorant of the basis for liability at the time the complaint was filed.  See Miller v.

23  Thomas, 121 Cal.App.3d 440 (1981).  MGA does not dispute this legal contention

   but at oral argument disputed that Mattel did not know the basis for liability against

24  itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in

   the original complaint and those now proffered against the two in the amended

25  complaint.  Specifically, MGA notes that the original complaint spoke of Bryant

   working for one of Mattel's competitiors and of that employee's theft of Mattel's

26  intellectual property before leaving to work for that competitior.  At most, all this

   shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.

27  Larian encouraged Bryant's alleged unlawful behavior recited in the original

   complaint.

28

16

EXHIBIT 1 PAGE 20

what Mattel has always claimed was a straightforward employment action against

an individual defendant into a global commercial dispute against Mattel's primary

competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns

BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to

amend because claims are 'tangential'" and then reiterates its point that some

showing of prejudice, namely, seeking leave after expiration of discovery, is

necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

     As noted previously, the Ninth Circuit recently upheld a denial for leave to

amend because the amendment would have "drastically changed" the litigation,

even though the leave request was tendered <u>before</u> the time, as set forth in a Rule

16(b) pre-trial scheduling order, for filing a motion to amend had expired and well

before the discovery cut-off. See <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>,

465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited

approvingly to the following statement from a well-respected treatise: "If an

amendment substantially changes the theory on which the case has been

proceeding and is proposed late enough so that the opponent would be required to

engage in significant new preparation, the court may deem it prejudicial." <u>Id</u>. at 953

n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,

FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)). Thus, <u>Dialysist</u>

recognized that the introduction of "different legal theories" and/or proof of

materially different facts well into the litigation can itself be a basis for finding

prejudice regardless of whether the period for discovery has expired (or is even

close to expiring) or the parties have already filed summary judgment motions. <u>Id</u>.

at 953-54.

     Although the parties can safely be said to be at this point well into the

---

     [6] Bryant also brings intricate legal arguments about the sufficiency of the
allegations Mattel has averred in building its RICO claims against him. Such
considerations are best left to be resolved on a properly filed motion to dismiss.

EXHIBIT 1 PAGE 21

1  litigation in this consolidated action (as evidenced by the protracted discovery

2  disputes contained in the docket sheet that the parties have had before the

3  magistrate judge and now the special master, and the litigation of motions to

4  dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel

5  has made painfully clear in its papers, no scheduling order has been entered in this

6  case.[7] This takes away somewhat from the prejudice Dialysist found to exist when

7  a "drastic change [in a party's] litigation theory" takes place mid-stream in the

8  litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial

9  motions and other matters (e.g., discovery cutoff), the parties have been given free

10  reign in how to conduct the litigation in this case.

11        That the delay in bringing the proposed amendments and the relative length

12  of time into the litigation when those amendments were brought may not neatly fold

13  into Dialysist's reasoning does not mean that leave must nonetheless be granted.

14  The 04-9059 action, as it is presently constituted, is not a complex one.  It asks a

15  rather narrow and straightforward question — Did anything from Bryant's

16  employment at Mattel during the 1999-2000 period give Mattel ownership rights to

17  the BRATZ doll line?  The proposed amendments would radically alter the litigation

18  in that case to include far ranging disputes involving multiple parties and concerning

19  events not connected with the BRATZ ownership issue.  That the original action

20  was a relatively simple and straight-forward matter raises another point beyond the

21  change in the action's litigation posture — whether entangling the rival doll makers'

22  other commercial disputes into this particular case would serve to muddy the waters

23  and make the matter that much more difficult to manage from the Court's

24  perspective.

25

26        [7] Mattel's repeated refrain that the matter is in its nascent stage as evidenced by the fact that the parties only just recently exchanged in initial disclosures is misleading.  The exchange of initial disclosures referred to by Mattel is in the 05-2727 case.  With respect to the 04-9059 case it appears that such initial disclosures were completed long ago as evidenced by the fact that discovery disputes appeared in that case as far back as January, 2005.

28

EXHIBIT _1_ PAGE _22_

1    As has long been recognized, equally important in determining whether to
2  grant such leave is what impact such amendments would have on the court's ability
3  to manage the case.  See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE
4  § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial
5  economy and its ability to manage the case. . . .  The court should also temper the
6  policy favoring freely granting leave to amend with consideration of the ability of the
7  district court to manage the case adequately if amendment is allowed").  As Judge
8  Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,
9  the court should consider judicial economy and whether the amendments would
10  lead to expeditious disposition of the merits of the litigation.  Finally, the court
11  should consider whether the amendment adds substance to the original allegations,
12  and whether it is germane to the original case of action."  Chitimacha Tribe of
13  Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also
14  Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.
15  1987)("General considerations of judicial economy also justify allowing the
16  amendments. The violations included in the proposed amendment relate to the
17  same subject matter as the original complaint.  Allowing the amendment will further
18  the federal policy of 'wrapping in one bundle all matters concerning the same
19  subject matter.'").
20    Mattel's amendments do not add substance to the claims contained in its
21  original complaint.  Rather, they would expand the universe of claims and
22  defendants stretching well-beyond the questions raised in the original complaint
23  over whether Bryant's conduct while in the employ of Mattel subjected his later
24  attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions
25  Agreement or otherwise rendered his creation subject to an infringement action.
26  Nowhere does Mattel seek to reconcile the breadth of its present amendments with
27  the narrowness of the allegations contained in its original complaint.  In fact, the
28  precise opposite is true.  Mattel acknowledges that its proposed amendments bear

EXHIBIT _1_ PAGE _2 3_

1   more congruity to the allegations leveled against it in MGA's Lanham Act case than

2   to those in the action to which it seeks to add them:

3                [M]any of the matters raised by Mattel's proposed
4           Amended Complaint are and will remain at issue
            because of MGA's Complaint, whether or not leave to
5           amend is granted.  MGA's claims allege that a broad
            array of purported Mattel conduct across the globe,
6           starting at least as early as 1999, has violated the
            Lanham Act and unfair competition law.  This includes
7           Mattel's alleged infringement of Bratz and other MGA
            products.  As a result, issues in the proposed Amended
8           Complaint are already part and parcel of Mattel's
            defenses to MGA's unfair competition claims, including
9           because they show that MGA and Bryant, and not
            Mattel, are ones who stole the products and other
10          properties involved.

11  (Reply to Bryant Opp. at 7 (emphasis added)).  Mattel apparently finds this

12  discongruity unimportant because "all of these matters have been consolidated with

13  the Bryant case."  (Id. at 7).  As noted earlier, the fact that the cases have been

14  consolidated does not mean that the parties can ignore the distinctions that still

15  exist between them.  If, as Mattel acknowledges, the present amendments are

16  nothing more than re-formulated defenses and counterclaims it presently has to

17  MGA's complaint against it in the 05-2727 case, then such amendments should be

18  brought in the form of an amended answer and counterclaim in that case.

19          Consideration of the distinctions between the two cases is wise as it serves

20  as a useful tool in providing the Court a better means to manage the cases now

21  that they have been consolidated.  The proverbial dog (ownership in BRATZ)

22  should be wagging the proverbial tail (the remaining commercial disputes), not the

23  other way around.  Admittedly, the dog's tail has grown in size both by MGA's filing

24  of its complaint in the 05-2727 action and Mattel's response thereto through its

25  proposed amendments.  Nonetheless, it is readily apparent to the Court that the

26  crown jewel in this action still remains the ownership rights to the BRATZ dolls.  The

27  parties have engaged in extensive and undoubtedly expensive discovery on this

28  very issue (from hiring world-renowned experts to test the age of Bryant's design

                                        20

                            EXHIBIT 1 PAGE 24

1   drawings to technically complex discovery of what is on each other's computers).

2       Indeed the separateness of the two matters is reflected in how the cases are

3   currently structured, namely, the narrowness of the issue involved in 04-9059 and

4   the expansiveness of the facts at issue in 05-2727.  In light of this fact, the Court

5   believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6   off and trial date are set well-ahead of those in 05-2727 makes the most sense.  As

7   noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8   the result of the litigation in 04-9059.  If, for instance, Mattel does own the rights to

9   the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10  "development programs" or by way of the Inventions Agreement because he

11  continued to work on his designs while at Mattel), then large portions of MGA's

12  Lanham Act infringement claims may become moot.  By the same token, if Mattel

13  does not own rights to BRATZ, then some of the defenses and counterclaims set

14  forth as independent claims in the present amended complaint may become moot,

15  including Mattel's copyright infringement claim as well as portions of its remaining

16  RICO, misappropriation, and aiding and abetting claims.  If, however, the Court

17  were to allow the amended complaint to be filed in the 04-9059 action, such case

18  management would be difficult, if not impossible as many of the issues being

19  litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20  amendment.  Due to this substantial overlap in claims and facts, a two-track

21  scheduling order utilizing the case number distinctions would be impossible to craft.

22  When pressed by the Court at oral argument as to which of its proposed claims it

23  believed would not undermine the BRATZ ownership posture of the 04-9059 case,

24  Mattel cited to its copyright and RICO claims.  However, upon further questioning

25  by the Court, counsel for Mattel acknowledged that much of those claims were, like

26  the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27      In light of the burden allowing Mattel's amendment to proceed would have on

28  this Court's ability to efficiently manage these consolidated matters denial of

21

EXHIBIT 1 PAGE 25

1   Mattel's request to amend its complaint in the 04-9059 matter is justified.  See
2   Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial
3   system can justify a denial of a motion to amend 'even if the amendment would
4   cause no hardship at all to the opposing party'").  Buttressing the Court's decision is
5   the fact that, even with such a denial, Mattel may file (and the Court provides leave
6   to Mattel to so file) an amended answer and counterclaim in the 05-2727 case
7   raising all the new claims and defendants presently sought to be achieved through
8   amendment of its complaint in the 04-9059 action.  None of the substantive
9   concerns raised by MGA and Bryant to the present amended complaint, e.g.,
10   statutes of limitations, would appear to be affected if the new claims and
11   defendants were brought as defenses and counterclaims in the 05-2727 case as
12   opposed to the 04-9059 one.

13          Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed
14   amendments, but only insofar as they are pled in the form of an amended answer
15   and counterclaim in the 05-2727 case.

16          Finally, the lack of a scheduling order in this case is problematic; one should
17   have been entered long ago.  See Fed. R. Civ. P. 16(b)(noting that a scheduling
18   "order shall issue as soon as practicable but in any event within 90 days after the
19   appearance of a defendant and within 120 days after the complaint has been
20   served on a defendant").  In light of the fact that entry of a scheduling order is
21   woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)
22   scheduling conference be held in this consolidated matter on February 12, 2007, at
23   1:30 p.m. in Courtroom One.  The parties are directed to file a Joint Rule 26(f)
24   report with the Court by February 5, 2007.

25          IT IS SO ORDERED.

26   DATE:  1-11-07

27

28                                              STEPHEN G. LARSON
                                                UNITED STATES DISTRICT JUDGE

22

EXHIBIT 1 PAGE 26

**EXHIBIT 2**

| DISCOVERY ORDERS PRIOR TO APPOINTMENT OF DISCOVERY MASTER | |
|---|---|
| 5/17/2004 | STANDING ORDER |
| 6/23/2004 | CIVIL MINUTES - GENERAL RE: DEFENDANT CARTER BRYANT'S EX PARTE APPLICATION ORDER DENIED. |
| 7/20/2004 | STIPULATION AND ORDER RE: JULY 27, 2004 CONFERENCE |
| 8/4/2004 | STIPULATION AND [PROPOSED] ORDER RE: AUGUST 3, 2004 CONFERENCE |
| 9/3/2004 | ORDER GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER RECOVERY OF EXPENSES AND FOR EXPEDITED RESPONSE AND BRIEF IN SUPPORT |
| 9/16/2004 | STIPULATION FOR PROTECTION OF CONFIDENTIAL INFORMATION; AND PROTECTIVE ORDER |
| 10/5/2004 | TENTATIVE RULING ON (1) MOTION TO COMPEL DEPOSITION AND (2) MOTION FOR A PROTECTIVE ORDER AND ESTABLISH THE SEQUENCE AND TIMING OF DOSCOVERY |
| 10/5/2004 | MINUTES ENTERED COUNTY CLERK -- RE:  TO COMPEL DEPOSITION OF DEFENDANT AND CROSS CLAIMANT CARTER BRYANT AND FOR SANCTIONS IN THE AMOUNT OF 4,500: ATTACHED RULING ON (1) MOTION TO COMPEL DEPOSITION AND (2) MOTION FOR A PROTECTIVE ORDER AND ESTABLISH THE SEQUENCE AND TIMING OF DISCOVERY |
| 10/20/2004 | [PROPOSED] ORDER GRANTING MATTEL'S EX PARTE APPLICATION TO SET COMPELLED DEPOSITION OF DEFENDANT AND CROSS-CLAIMANT CARTER BRYANT FOR A DATE CERTAIN PURSUANT TO THE COURT'S ORDER OF OCTOBER 5, 2004 |
| 10/20/2004 | STIPULATION AND [PROPOSED] ORDER RE: (1) CONTINUING CASE MANAGEMENT CONFERENCE AND HEARING DATE ON PLAINTIFF AND CROSS-DEFENDANT'S DEMURRER AND MOTION TO STRIKE PORTIONS OF CROSS-COMPLIANT, AND  (2) TAKING OFF CALENDER PLAINTIFF'S AND CROSS-DEFENDANT'S MOTION TO STAY AND QUASH NOTICE OF VIDEOTAPED DEPOSITION |
| 10/22/2004 | COMMISSION FOR OUT OF STATE SUBPOENA'FOR PRODUCTION OF BUSINESS RECORDS TO CENTURYTEL, INC. [ORDER] NOT SIGNED |
| 10/26/2004 | ORDER - FOREIGN SUBPOENA - RE: CENTURY TEL, INC. |
| 11/16/2004 | ORDER RE MOTION FOR PROTECTIVE ORDER FILED 11/11/04 |
| 12/10/2004 | DALLAS COUNTY, TEXAS ORDER - MOTION TO COMPEL PRODUCTION OF DOCUMENTS TO SBC |
| 1/4/2005 | STIPULATED PROTECTIVE ORDER AND [PROPOSED] ORDER |

EXHIBIT 2 PAGE 27

| | |
|---|---|
| 1/7/2005 | STIPULATION AND [PROPOSED] ORDER REGARDING PRODUCTION OF DOCUMENTS BY AND ATTENDANCE AT DEPOSITION AND THIRD PARTY WITNESS ANNA RHEE |
| 1/25/2005 | CIVIL MINUTES - GENERAL RE PLAINTIFF'S EX PARTE APPLICATION FOR AN ORDER COMPELLING THE DEPOSITION OF LILY MARTINEZ [DENIED] |
| 2/2/2005 | CIVIL MINUTES - GENERAL - THIRD PARTY WITNESS ANNA RHEE'S EX PARTE APPLICATION FOR A PROTECTIVE ORDER TO CONTINUE DEPOSITION |
| 3/25/2005 | CIVIL MINUTES- GENERAL RE: DISCOVERY MOTIONS |
| 5/4/2005 | STIPULATION AND ORDER RE CERTAIN DISCOVERY ISSUES |
| 4/14/2006 | STANDING ORDER |
| 4/19/2006 | Standing Order - in Case CV 05-02727 |
| 6/19/2006 | CIVIL MINUTES RE: MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER ON MARCH 23, 2005 AND FOR SANCTIONS |
| 12/6/2006 | STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED] ORDER |
| | **DISCOVERY MASTER ORDERS** |
| 1/26/2007 | ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS |
| 1/30/2007 | ORDER GRANTING IN PART CARTER BRYANT AND MGA ENTERTAINMENT INC.'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND 30(B)(6) DEPOSITIONS |
| 2/5/2007 | ORDER GRANTING MGA'S MOTION TO RE-DESIGNATE MATTEL'S INITIAL DISCLOSURES |
| 2/14/2007 | SIGNED ORDER RE: STIPULATION RE: EXTENSION OF TIME WITHIN WHICH TO PRODUCE DOCUMENTS RELATED TO INVESTIGATION INTO THE AUGUST 2002 ANONYMOUS LETTER |
| 2/14/2007 | ORDER GRANTING MATTEL'S MOTION TO ENFORCE STIPULATION TO MAKE ORIGINAL DOCUMENTS AVAILABLE |
| 2/14/2007 | ORDER DENYING MATTEL'S MOTION TO COMPEL RULE 26(A) DISCLOSURES |
| 2/21/2007 | SIGNED ORDER RE: STIPULATION RE: MATTEL'S PENDING MOTION TO COMPEL MGA TO PRODUCE RULE 30(B)(6) WITNESSES |
| 2/27/2007 | SIGNED ORDER RE: STIPULATION RE REQUEST TO EXTEND DEADLINE WITHIN WHICH CARTER BRYANT MUST COMPLY WITH THE DISCOVERY MASTER'S JANUARY 25, 2007 ORDER GRANTING MATTEL'S MOTION TO COMPLY PRODUCTION OF DOCUMENTS |

EXHIBIT 2 PAGE 28

| | |
|---|---|
| 3/7/2007 | ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO OVERRULE INSTRUCTIONS NOT TO ANSWER DURING THE DEPOSITION OF CARTER BRYANT |
| 4/4/2007 | STIPULATION AND [PROPOSED] ORDER PROVIDING FOR EXTENSIONS OF TIME TO SUBMIT AND SERVE OPPOSITIONS AND REPLIES RE CARTER BRYANT'S MOTIONS TO OVERRULE INSTRUCTIONS NOT TO ANSWER DURING THE DEPOSITIONS OF ANN DRISKILL AND ALAN KAYE, TO COMPEL DRISKILL AND KAYE TO ANSWER THOSE QUESTIONS, AND FOR SANCTIONS |
| 4/18/2007 | STIPULATION AND [PROPOSED] ORDER PROVIDING FOR EXTENSIONS OF TIME TO SUBMIT AND SERVE OPPOSITION AND REPLY RE MATTEL, INC.'S MOTION TO ENFORCE COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE DESKTOP COMPUTER HARD DRIVE |
| 4/18/2007 | ORDER GRANTING MATTEL'S MOTION TO COMPEL RESPONSE TO INTERROGATORY NO. 1; DENYING REQUEST FOR SANCTIONS |
| 4/19/2007 | ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION FOR PROTECTIVE ORDER REGARDING "POLLY POCKET" DOCUMENTS |
| 4/26/2007 | STIPULATION AND ORDER RE BRIEFING SCHEDULE FOR (1) MGA'S MOTION TO COMPEL DATED APRIL 12, 2007 AND (2) MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION DATED APRIL 13, 2007 |
| 4/26/2007 | STIPULATION TO MODIFY PROTECTIVE ORDER; AND [PROPOSED] ORDER THEREON |
| 5/4/2007 | ORDER GRANTING IN PART CARTER BRYANT'S MOTION TO OVERRULE INSTRUCTIONS NOT TO ANSWER DURING THE DEPOSITION OF ANN DRISKILL, TO COMPEL ANSWERS TO THOSE QUESTIONS, AND FOR SANCTIONS |
| 5/4/2007 | ORDER GRANTING IN PART BRYANT'S MOTION TO OVERRULE INSTRUCTIONS NOT TO ANSWER DURING THE DEPOSITION OF ALAN KAYE, TO COMPEL KAYE TO ANSWER THOSE QUESTIONS, AND FOR SANCTIONS |
| 5/16/2007 | STIPULATION TO MODIFY PROTECTIVE ORDER; AND ORDER THEREON (JUDGE INFANTE) |
| 5/16/2007 | ORDER MODIFYING PROTECTIVE ORDER (JUDGE INFANTE) |
| 5/16/2007 | ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA (JUDGE INFANTE) |

EXHIBIT 2 PAGE 29

| | |
|---|---|
| 5/16/2007 | ORDER GRANTING MGA AND BRYANT'S JOINT MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE FOR IN CAMERA REVIEW, AND DENYING MOTION TO ATTEST TO THE COMPLETENESS OF FEBRUARY 2007 PRODUCTION (JUDGE INFANTE) |
| 5/18/2007 | [PROPOSED] ORDER GRANTING MATTEL, INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6) |
| 5/22/2007 | ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DATED NOVEMBER 22, 2006 |
| 6/19/2007 | ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF JANUARY 25, 2007, TO COMPEL PRODUCTION OF DOCUMENTS BY CARTER BRYANT AND FOR SANCTIONS |
| 6/21/2007 | [PROPOSED] ORDER REGARDING MGA ENTERTAINMENT, INC.'S REQUEST FOR STAY OR MODIFICATION OF DISCOVERY ORDERS |
| 7/20/2007 | ORDER DENYING MATTEL'S MOTION FOR RECONSIDERATION OF A PORTION OF THE MAY 22, 2007 ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS; GRANTING IN PART MATTEL'S REQUEST FOR AN EXTENSION OF TIME - JUDGE INFANTE |
| 7/20/2007 | COURT ORDER RE IN CAMERA REVIEW OF GLOBAL SECURITY FILES - JUDGE INFANTE |
| 7/25/2007 | [PROPOSED] ORDER DENYING MATTEL'S MOTION FOR PROTECTIVE ORDER RE: IVY ROSS |
| 7/27/2007 | ORDER DENYING JOINT MOTION TO STAY OR STRIKE MATTEL'S MOTION TO COMPEL; GRANTING JOINT MOTION TO EXTEND DEADLINE TO SUBMIT OPPOSITION TO MATTEL'S MOTION TO COMPEL |
| 8/7/2007 | STIPULATION TO ADD PARTIES TO THE STIPULATED PROTECTIVE ORDER; AND ORDER (SIGNED) THEREON |
| 8/14/2007 | ORDER GRANTING MATTEL'S MOTION FOR AN EXTENSION OF TIME TO DEPOSE PAULA GARCIA IN HER INDIVIDUAL CAPACITY AND AS A 30(b)(6) DESIGNEE; DENYING REQUEST FOR SANCTIONS |
| 8/14/2007 | ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA; DENYING REQUEST FOR MONETARY SNCTIONS |

EXHIBIT _2_ PAGE _30_

| 8/15/2007 | ORDER GRANTING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 16, 2007, TO COMPEL MGA TO PRODUCE WITMESSES FOR DEPOSITION PURSUANT TO RULE 30(b)(6), AND GRANTING REQUEST FOR SANCTIONS |
|---|---|
| 8/21/2007 | ORDER GRANTING MATTEL'S MOTION TO COMPEL CARTER BRYANT TO ANSWER REQUESTS FOR ADMISSION OR TO ORDER REQUESTS ADMITTED; DENYING REQUEST FOR MONETARY SANCTIONS |
| 8/21/2007 | ORDER GRANTING MATTEL'S MOTION TO COMPEL MGA TO ANSWER REQUESTS FOR ADMISSION |
| 8/24/2007 | ORDER DENYING MATTEL'S MOTION FOR MODIFICATION OF THE PROTECTIVE ORDER |
| 8/30/2007 | [PROPOSED] ORDER GRANTING MATTEL, INC.'S MOTION TO COMPEL BRYANT TO MAKE ORIGINAL DOCUMENTS AVAILABLE FOR EXPERT EXAMINATION AND TESTING |
| 8/31/2007 | STIPULATION RE: DEPOSITIONS OF TOM BRYANT, JANET BRYANT AND RICHARD IRMEN; AND [PROPOSED] ORDER THEREON |
| 9/5/2007 | ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S MOTION TO COMPEL INTERROGATORY RESPONSES |
| 9/7/2007 | STIPULATION RE: CARTER BTYANT'S LAPTOP HARD DRIVE AND IMAGE THEREOF; AND [PROPOSED] ORDER THEREON |
| 9/24/2007 | STIPULATION AND ORDER REGARDING DEADLINE FOR MATTEL TO PRODUCE DOCUMENTS PURSUANT TO ORDER OF SEPTEMBER 12, 2007 |
| 9/25/2007 | STIPULATION AND [PROPOSED] ORDER REGARDING DEADLINE FOR MGA TO PRODUCE DOCUMENTS PURSUANT TO ORDER OF AUGUST 13, 2007 |
| 9/26/2007 | ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(B)(6); DENYING REQUEST FOR SANCTIONS |
| 9/28/2007 | ORDER GRANTING IN PART MATTEL'S MOTION FOR ADDITIONAL TIME TO DEPOSE CARTER BRYANT FOR ALL PURPOSES |
| 12/17/2007 | ORDER GRANTING MATTEL'S MOTION TO COMPEL MGA TO PRODUCE DOCUMENTS BEARING BATES NO. MGA 0800973-0800974 AND MGA 0829296-0829305 |
| 12/28/2007 | ORDER GRANTING MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA ENTERTAINMENT, INC. |

EXHIBIT 2 PAGE 31

.

**EXHIBIT 3**

RECEIVED

DEC 2 7 2007

1  **ALAN N. GOLDBERG   (SBN 112836)**
   **KIEN C. TIET        (SBN 192058)**
2  **STERN & GOLDBERG**
   **6345 Balboa Boulevard, Suite 200**
3  **Encino, California  91316**
   **Telephone: (818) 758-3940**
4  **Facsimile:  (818) 758-3950**

5  Attorneys for Non-Party Stern & Goldberg

6

7

8                **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF THE STATE OF CALIFORNIA**

10                     **EASTERN DIVISION**

11
   CARTER BRYANT, an                )  CASE NO.: CV 04-9049 SGL (RNBx)
12 individual,                      )
                                    )  Consolidated with Case Nos. CV 04-
13              Plaintiff,           )  09059 and CV 05-02727
                                    )
14 vs.                              )  **STERN   &   GOLDBERG'S**
                                    )  **MEMORANDUM OF POINTS AND**
15                                  )  **AUTHORITIES IN OPPOSITION TO**
                                    )  **MATTEL'S MOTION TO COMPEL**
16 MATTEL, INC., a Delaware          )  **PRODUCTION OF DOCUMENTS**
   corporation,                     )
17                                  )  DATE:     January 10, 2008
                                    )  TIME:     9:00 a.m.
18              Defendant.           )
                                    )  **In front of the Honorable Edward A.**
19                                  )  **Infante U.S. Magistrate (Retired)**
                                    )
20 ─────────────────────────────────)
                                    )
21 AND CONSOLIDATED ACTIONS          )
                                    )
22 ─────────────────────────────────)

23      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24      Non-Party Stern & Goldberg hereby submits the following Memorandum of

25 Points and Authorities and Declaration of Alan N. Goldberg in Opposition to Mattel's

26 Motion to Compel Production of Documents in the above-entitled action.

27 //

28 //
   //

EXHIBIT _3_ PAGE _32_

12-26₁

1    This Opposition is based upon the following grounds:

2        1.    The Subpoena contains five (5) pages of single-space definitions and
3    instructions, and thirty-five (35) different document requests, many of which contain
4    numerous categories of documents and subparts. Such Subpoena does not comply with
5    the express mandates of **Fed. R. Civ. Proc., Rule 45(c)(1)** ( An "attorney responsible
6    for the issuance and service of a subpoena shall take reasonable steps to avoid
7    imposing undue burden or expense on a person subject to that Subpoena.").

8        2.    The Subpoena was issued by the same attorney for the same client who
9    were reprimanded by a United States District Court Judge, for engaging in a pattern of
10   serving oppressive Subpoenas upon third parties.  See **Mattel, Inc. v. Walking**
11   **Mountain Productions**, 353 F.3d 792, 813-814 (9th Cir. 2003).

12       3.    The Subpoena at issue suffers from the same defects as was found in
13   **Mattel**, **supra**, 353 F.3d at p. 813. It is an "abusively drawn" Subpoena.  The
14   Subpoena herein is "way too broad" and was obviously drafted while making "no
15   attempt . . . . to try to tailor the information request to the immediate needs of the case."
16   Similar to **Mattel, supra,** the Subpoena was obviously served for the "purpose of
17   annoying and harassment and not really for the purpose of getting information."

18       4.    The Subpoena seeks documents which are privileged, and therefore not
19   subject to production. See **Fed. R. Civ. Proc., Rule 45(c)(3)(A)(iii)**.  The privileges
20   include: (a) the attorney-client privilege and the attorney work-product privilege
21   regarding Stern & Goldberg's representation of Morad Zarabi; (b) the arbitrator's
22   privilege held by Mr. Zarabi, to the extent it seeks any documents which "constitute,
23   record, relate, summarize, comment or refer to deliberations" by the arbitrator; and (c)
24   privileged financial records of ABC International Traders, Inc., Isaac Larian and/or
25   Farhad Larian, and which were provided to the Arbitrator in confidence and Stern &
26   Goldberg also understands may be the subject of a protective order in the underlying
27   proceeding.

28       5.    "[T]he Ninth Circuit has long held that nonparties subject to discovery

1    requests deserve extra protection from the Courts." **High Tech Medical**
2    **Instrumentation, Inc. v. New Image Industries, Inc., 161 F.R.D. 86, 88 (N.D. Cal.**
3    **1995).** See also **United States v. C.B.S. Inc., 666 F.2d 364, 371-72 (9th Cir. 1982)**.

4         6.    Mattel has failed to comply with the **Local Rule 37-1** of this Court, or the
5    Discovery Stipulation it authored. Indeed, the Motion fails to contain a Separate
6    Statement discussing the requests in dispute, the Objections asserted to each such
7    dispute, and the factual and legal reasons upon why any such documents should be
8    produced.

9         The Opposition is also based on the Memorandum of Points and Authorities, the
10   Declaration of Alan N. Goldberg, the court's file, and any other matters which may be
11   presented during the hearing on oral argument.

12

13   DATED: December 21, 2007        STERN & GOLDBERG

14

15                           By _____
16                              ALAN N. GOLDBERG
                                Attorneys for Non-Party
17                              Stern & Goldberg

18

19

20

21

22

23

24

25

26

27

28
                                    EXHIBIT 3 PAGE 34

STERN & GOLDBERG'S OPPOSITION TO MATTEL'S MOTION TO COMPEL DOCUMENTS

1

# TABLE OF CONTENTS

2

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3

    A.    Stern & Goldberg Has Timely Objected To The Subpoena . . . . . . . . . 5

4

    B.    Mattel's Motion Lacks Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5

II.  THE MOTION SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6

    A.    The Subpoena is Burdensome, Oppressive and Overbroad . . . . . . . . 9

7

    B.    The Documents Are Available from The Parties to the Litigation  . . 10

8

    C.    The Subpoena Seeks Privileged Documents  . . . . . . . . . . . . . . . . . . 11

9

          1.    The Communications Between Stern & Goldberg and its
                 Client are Privileged . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

10

          2.    There is No Right to Obtain Discovery From An Arbitrator . . 13

11

    D.    Mattel Has Failed to Comply With The Local Rules Of This Court
          Or The Discovery Stipulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

12

13

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

14

DECLARATION OF ALAN N. GOLDBERG . . . . . . . . . . . . . . . . . . . . . . . . . 16

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _3_ PAGE _35_

STERN & GOLDBERG'S OPPOSITION TO MATTEL'S MOTION TO COMPEL DOCUMENTS

# TABLE OF AUTHORITIES

**Federal Cases**

Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.
    649 F.2d 646, 649 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hayworth, Inc. v. Herman Miller, Inc.
    998 F.2d 975, 977 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 10

High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.
    161 F.R.D. 86, 88 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . 10

Hoeft v. MVL Group, Inc.
    343 F.3d 57, 67 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 13, 14

In Re: Imperial Corporation of America v. Shield
    174 F.R.D. 475, 478 (S.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . 12

Mattel, Inc. v. Walking Mountain Productions
    353 F.3d 792, 813-814 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . 4, 7, 9

National Hockey League Players Ass'n v. Bettman
    WL 38130 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

O.R. Securities, Inc. v. Professional Planning Associates, Inc.
    857 F.2d 742, 748 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . 13

United States v. C.B.S. Inc.,
    666 F.2d 364, 371-72 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . 10

Woods v. Saturn Distribution Corp.
    78 F.3d 424, 430 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 13

**State Cases**

Calcor Space Facility Inc. v. Superior Court
    (1997) 53 Cal.App.4th 216, 223 . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Federal Statutes**

Federal Rules of Civil Procedure, Rule 34 . . . . . . . . . . . . . . . . . . . . . . . . 10

Federal Rules of Civil Procedure, Rule 45 . . . . . . . . . . . . . . . . . . . . . . . . 10

Federal Rules of Civil Procedure, Rule 45(b)(1) . . . . . . . . . . . . . . . . . . . 4, 9

Federal Rules of Civil Procedure, Rule 45(c)(1) . . . . . . . . . . . . . . . . . . . 10

Federal Rules of Civil Procedure, Rule 45(c)(3)(A)(iii) . . . . . . . . . . . . . . . 11

EXHIBIT _3_ PAGE _36_

**State Statutes**

California Evidence Code §703.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 14

**Local Rules**

C.D. Cal. Local Rule 37-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
C.D. Cal. Local Rule 37-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

EXHIBIT 3 PAGE 37

STERN & GOLDBERG'S OPPOSITION TO MATTEL'S MOTION TO COMPEL DOCUMENTS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I

### INTRODUCTION

This Motion involves the service of a Deposition Subpoena, containing five (5) pages of single-space definitions and instructions, and thirty-five (35) different document requests, many of which contain numerous categories of documents and subparts seeking compliance within the 14 day minimum provided by **Federal Rule 45.** The Subpoena was issued and served upon Stern & Goldberg on September 6, 2007. [Ex. "1" hereto.]

The Subpoena failed to contain any Proof of Service upon the parties to the action or identify their counsel, as required by **Federal Rule 45(b)(1).**

The Subpoena was issued by the same attorneys for the same client who were reprimanded by a United States District Court Judge for engaging in a pattern of serving oppressive Subpoenas upon third parties. See **Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792, 813-814 (9th Cir. 2003).**

The Subpoena at issue suffers from the same defects as was found in **Mattel, supra, 353 F.3d at p. 813.** It is an "abusively drawn" Subpoena. The Subpoena herein is "way to broad" and was obviously drafted while making "no attempt . . . . to try to tailor the information request to the immediate needs of the case."

Morad Zarabi was the Arbitrator, chosen by both parties, in a shareholder dispute between the principals of ABC International Traders, Inc., a family owned private corporation ("ABC International" herein). In connection therewith Mr. Zarabi was to value the shareholders' interests in ABC International to resolve a dispute between Isaac Larian and Farhad Larian.

Stern & Goldberg represented Mr. Zarabi in connection with the service of subpoenas upon him (and an appraiser he retained) in that certain action entitled **Farhad Larian v. Isaac Larian,** filed on August 25, 2003, in the Los Angeles Superior Court as Case No. BC 301371 ("Larian vs. Larian Action"). Subsequently,

4

EXHIBIT 3 PAGE 38

1   there were other actions filed by Farhad Larian, including one naming Morad Zarabi

2   as a defendant. However, Stern & Goldberg did not represent Mr. Zarabi in those other

3   proceedings.

4        In connection with its representation of the Arbitrator, Stern & Goldberg

5   previously provided copies of all non-privileged documents in its possession, custody

6   and control to counsel for both Isaac Larian and Farhad Larian. Any pleadings which

7   were served upon or prepared by Stern & Goldberg are all public records, and

8   therefore, equally available to Mattel. The only documents not in the possession of

9   Isaac Larian, Farhad Larian and/or MGA, are privileged attorney-client documents and

10  those involving the deliberative process of Morad Zarabi.

11  **A.    Stern & Goldberg Has Timely Objected To The Subpoena**

12       On September 6, 2007, Stern & Goldberg contacted counsel for Mattel to

13  discuss the Subpoena and obtain the requisite information under Rule 45 (which had

14  not been provided) as to the identities of parties and their attorneys in the action.

15  There was no response to said telephonic request. [Goldberg Decl. ¶ 3.]

16       On September 17, 2007, Stern & Goldberg served its written objections to each

17  request in the Subpoena and requested that Mattel comply with Local Rule 37-1 should

18  it seek to pursue the matter further. [Ex. "2" hereto.] Rather than address the objections

19  raised by Stern & Goldberg as required by the Local Rules of Court, on September 28,

20  2007, Mattel simply responded with a terse response claiming all of the objections

21  were boilerplate and that a meet and confer was requested pursuant to Rule 37 and

22  section 5 of the Order Appointing a Discovery Master ("Discovery Stipulation"

23  herein). [Ex. "3".]

24       On October 2, 2007, Stern & Goldberg, again requesting that Mattel comply

25  with Local Rule 37-1. Further, Stern & Goldberg advised it was unaware of the

26  Discovery Stipulation entered into in the action. [Ex. "4".]

27       On October 3, 2007, Mattel sent Stern & Goldberg a letter in which it enclosed

28  the Discovery Stipulation. [Ex. "5" hereto.]

EXHIBIT _3_ PAGE _39_

5

1    On October 8, 2007, Stern & Goldberg again raised the fact that not only had

2    Mattel's letters failed to comply with Local Rule 37-1, but also with the express

3    requirements of Section 5 of the Discovery Stipulation. [Ex. "6" herein.]

4    On October 10, 2007, Mattel finally sent a meet and confer letter which, at least,

5    partially complied with the Local Rules of this Court and the Discovery Stipulation.

6    [See Ex. "7".] Although, Mattel continued to refuse to serve such letter on the parties

7    to the litigation which is an express condition to the filing of a Discovery Motion.

8    On October 11, 2007, a telephonic meet and confer discussion took place

9    between counsel for Mattel and Stern & Goldberg.   In connection therewith Mattel

10   acknowledged it had Stern & Goldberg's letter which detailed the documents Stern &

11   Goldberg produced on behalf of the Arbitrator to the parties in the Larian v. Larian

12   action. Further, Stern & Goldberg agreed that it would produce the privilege log it had

13   provided to the parties in that proceeding, to Mattel, after giving the parties an

14   opportunity to object. [See Ex. "8".] No party objected to Stern & Goldberg providing

15   the privilege log and so on October 16, 2007, Stern & Goldberg provided Mattel with

16   said privilege log. [Ex. "9".]

17   On or about October 25, 2007, Mattel then claimed that Stern & Goldberg was

18   required to produce the documents it had produced to the parties in the underlying

19   proceeding (which it understands were subject to a protective order in that proceeding),

20   as well as documents subject to the Arbitrator's privilege. Further, the letter revealed

21   that Mattel either had those documents or they had been listed on a party's privilege

22   log since Mattel identified the documents by batestamp numbers placed there by other

23   than Stern & Goldberg. Mattel also requested a conference call to discuss the matter.

24   [Ex. "10".]

25   On October 31, 2007, Stern & Goldberg advised Mattel it would participate in

26   such a conference call and requested it include counsel for MGA, Isaac Larian and

27   Farhad Larian, since it relates to documents of those parties. The letter also responded

28   to the issues raised by Mattel, including requesting whether the documents sought from

1  Stern & Goldberg had already been produced to it or listed on a privilege log.  [Ex.
2  "11".] No response was received from Mattel to said letter.

3            Then on December 6, 2007, Mattel filed its discovery motion, with some 74
4  exhibits spanning over 800 pages.  Notwithstanding the volume of documents, Mattel
5  does not even provide a Separate Statement listing the discovery requests in issue, the
6  objections, and each side's position on each such request, as mandated by the Local
7  Rules of this Court.  However, a review of the Subpoena, establishes that it is abusive
8  for the same reasons stated by the Court in **Mattel**, **supra**, **353 F.3d at pp. 813-814**,
9  and should never have been issued.

10 **B.      Mattel's Motion Lacks Merit**

11           Mattel's Motion expends a majority of the first thirteen (13) pages of its Motion
12 with a recitation of its position of the facts and the relevancy of the documents sought.
13 However, much of the factual recitations (as it pertains to Stern & Goldberg) are
14 inaccurate and irrelevant.   Stern & Goldberg has not objected on the grounds of
15 relevancy, since it has no knowledge of the issues in this proceeding. As such, it will
16 not expend any time responding to the "relevancy" claimed by Mattel.  The parties to
17 the litigation can address those subjects.   Stern & Goldberg's objections relate to
18 whether the documents are privileged and whether they should be obtained from the
19 parties to the litigation.

20           Mattel admits in its Motion that it has sought such documents from MGA and
21 Isaac Larian, and that they have allegedly failed to produce such documents despite a
22 court order to do so. [Motion, p. 1, ln. 28 to p. 2, ln. 5 and p. 6, lns. 4-10.] If there truly
23 is such a court order, then Mattel's remedy is to seek to enforce it, not serve Subpoenas
24 upon non parties.

25           Mattel alleges, in pages 13 and 14, that the Subpoena is not overly burdensome.
26 Needless to say, Mattel omits any reference to the pinnacle decision in the Ninth
27 Circuit which governs such issue, that being the **Mattel v. Walking Mountain** action
28 referenced above, or the rules governing the issuing of Subpoenas to non-parties.

EXHIBIT _3_ PAGE _41_

STERN & GOLDBERG'S OPPOSITION TO MATTEL'S MOTION TO COMPEL DOCUMENTS

1    Mattel then incorrectly asserts that the arbitrator's privilege does not apply or it has
2    been waived.  Finally, Mattel claims that the two (2) described categories of attorney
3    client or other work product privileges are insufficient.  Mattel's Motion is erroneous
4    on all grounds and should be denied in its entirety.

5                                          II

6                          **THE MOTION SHOULD BE DENIED**

7            There is no legitimate reason for the filing of this Motion.  For whatever reason
8    Mattel and its counsel seem to believe that it is acceptable to serve abusive Subpoenas
9    upon non-parties.  In this instance they week to obtain privileged documents from the
10   Arbitrator's counsel, which they are no more entitled to than from the Arbitrator (or
11   if they had sought documents from the Discovery Master).

12           The documents sought by the Subpoena fall within the following categories:

13           (1)     Communications between Stern & Goldberg and Morad Zarabi with
14   respect to his role as arbitrator in the arbitration between Isaac Larian and Farhad
15   Larian.

16           (2)     Internal file memoranda which Stern & Goldberg may have prepared in
17   connection with its involvement in the representation of Morad Zarabi, such as, a
18   memo to the file based on a conversation, such as it had with counsel for Mattel.

19           (3)     Documents which are subject to the arbitrator's privilege because they
20   constitute documents of Mr. Zarabi in his role as arbitrator which were not revealed
21   to the parties.

22           (4)     Documents produced by the Arbitrator (through Stern & Goldberg) to
23   Isaac Larian and Farhad Larian.  These documents also include any confidential
24   financial information provided to the Arbitrator by Isaac Larian, Farhad Larian, and/or
25   ABC International.  While these types of documents are not privileged documents of
26   the Arbitrator, they were presented to him in confidence, and those parties are the
27   appropriates parties to waive any such privileges.

28   //

                                        EXHIBIT _3_ PAGE _42_

## A.   **The Subpoena is Burdensome, Oppressive and Overbroad.**

Mattel, in issuing this Subpoena failed to comply with its obligations under **Rule 45. Fed. R. Civ. Proc., Rule 45(c)(1)** (An "attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that Subpoena.").

As stated above, the Subpoena at issue suffers from the same defects as were found against Mattel in **Mattel, supra, 353 F.3d at pp. 813-814.** It is an "abusively drawn" Subpoena. The Subpoena is "way too broad" and was obviously drafted while making "no attempt . . . . to try to tailor the information request to the immediate needs of the case." Similar to **Mattel, supra,** the Subpoena was obviously served for the "purpose of annoying and harassment and not really for the purpose of getting information." **Id at p. 814**

Indeed, the Subpoena is so broad, that it seems to request virtually any document that ever existed relating to Isaac Larian, Morad Zarabi, Farhad Larian, Carter Bryant, and Ernest Dutcher, and any and all of their family members. In addition, it seeks all documents which ever existed as to various products identified as Bratz, Angel and Prayer Angels.

The Subpoena contains five (5) pages of single-space definitions and instructions, and then contains thirty-five (35) different document requests, many of which contain numerous categories of documents and subparts. Such Subpoena was obviously served for an improper purpose. See e.g. **Calcor Space Facility Inc. v. Superior Court (1997) 53 Cal.App. 4th 216, 223** (a party's "employment of six pages of 'definitions' and 'instructions' is particularly obnoxious").

Mattel's failure to address the decision in **Mattel** and the authority which governs the issuance of Subpoenas to non parties, establishes that it should never have been issued.

Similar to the decision in **Mattel, supra**, the objections to the Subpoena should be sustained.

EXHIBIT 3 PAGE 43

**B.      The Documents Are Available from The Parties to the Litigation.**

In its Motion, Mattel avoids discussion of the governing authority in this Circuit and appears to contend that Subpoenas under **Fed. R. Civ. Proc., Rule 45** permit discovery from non-parties equivalent to discovery from parties under **Rule 34.** The governing statutory and case law is quite clear that discovery from a nonparty under **Rule 45** is not the equivalent to discovery of parties under **Rule 34.** Indeed, **Fed. R. Civ. Proc., Rule 45(c)(1)** provides that: "A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject that subpoena."

[T]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the Courts." **High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc., 161 F.R.D. 86, 88 (N.D. Cal. 1995).** See also **United States v. C.B.S. Inc., 666 F.2d 364, 371-72 (9th Cir. 1982)** ("Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties. . . . . [A] witness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or producing party."); **Haworth, Inc. v. Herman Miller, Inc., 998 F.2d 975, 977 (Fed. Cir. 1993)** (Subpoenaing party should first attempt to obtain documents from party before seeking them from nonparty); and **Dart Industries Co., Inc. v. Westwood Chemical Co., Inc., 649 F.2d 646, 649 (9th Cir. 1980)** (discovery should be "more limited to protect third parties from harassment, inconvenience or disclosure of confidential information.").

Mattel has acknowledged that Isaac and Farhad Larian should have in their possession, the non-privileged documents which it seeks from Stern & Goldberg. Mattel then claims that the parties have not "produced documents in response to Mattel's document requests", but does not state why. Based upon the description in its letter, of October 25, 2007, Mattel obviously has much of such information or it has been claimed to be privileged by a party, as they are identified by batestamp numbers.

STERN & GOLDBERG'S OPPOSITION TO MATTEL'S MOTION TO COMPEL DOCUMENTS

1    Since those batestamp numbers were not placed upon the documents by Stern &
2    Goldberg, it is apparent that Mattel either have the documents or one of the parties to
3    the action has listed them on a privilege log. [Goldberg Decl. ¶13.] In its meet and
4    confer letter of October 31, 2007, Stern & Goldberg asked Mattel if those documents
5    had not been produced because they are claimed to be privileged? Mattel failed to
6    respond to such request.  [Goldberg Decl. ¶13.]

7          All of the Arbitrator's non-privileged documents which Mattel seeks from Stern
8    & Goldberg are in the possession, custody and control of parties to the litigation,
9    namely MGA and Isaac Larian.

10   **C.    The Subpoena Seeks Privileged Documents.**

11         In connection with its representation of the Arbitrator, Stern & Goldberg
12   previously provided copies of all non-privileged documents in its possession, custody
13   and control to counsel for Isaac Larian and Farhad Larian.  Any pleadings which were
14   served upon or prepared by Stern & Goldberg are all public records, and therefore,
15   equally available to Mattel.  The only documents not in the possession of Isaac Larian,
16   Farhad Larian or MGA, are privileged attorney-client documents and those involving
17   the deliberative process of Morad Zarabi.

18         In its objections to the Subpoena Stern & Goldberg asserted the following
19   privilege objections: (a) the attorney-client privilege and the attorney work-product
20   privilege regarding Stern & Goldberg's representation of Morad Zarabi; (b) the
21   arbitrator's privilege held by Mr. Zarabi, to the extent it seeks any documents which
22   "constitute, record, relate, summarize, comment or refer to deliberations" by the
23   arbitrator; and (c) privileged financial records of ABC, Isaac Larian and/or Farhad
24   Larian as to the privileged financial records presented to the Arbitrator they are all in
25   the possession of MGA, Isaac Larian and/or Farhad Larian.  ·

26         There is no obligation on a non-party to produce privileged documents.  See
27   **Fed.R. Civ. Proc., Rule 45 (c)(3)(A)(iii).**

28   //

EXHIBIT _3_ PAGE _45_

STERN & GOLDBERG'S OPPOSITION TO MATTEL'S MOTION TO COMPEL DOCUMENTS

### 1. The Communications Between Stern & Goldberg and its Client are Privileged.

In its letters of October 12, 2007, Stern & Goldberg advised Mattel that the following categories were subject to the attorney-client privilege and/or work product privilege:

(1) Communications between Stern & Goldberg and Morad Zarabi with respect to his role as arbitrator in the arbitration between Isaac Larian and Farhad Larian;

(2) Internal file memorandum which Stern & Goldberg may have prepared in connection with its involvement in the representation of Morad Zarabi, such as, a memo to the file based on a conversation, such as it had with counsel from Quinn Emanuel; and

Mattel stated it did not dispute Stern & Goldberg's assertion of attorney-client and attorney work-product as to those two (2) categories of documents. [Ex. "8".] However, by its motion it seems to request that Stern & Goldberg provide a privilege log to documents which they have conceded are obviously privileged. Indeed, to the extent they request Stern & Goldberg provide a further explanation it would simply indicate Mattel's intent is to harass and annoy. There is no requirement for a non-party to necessity to provide a document by document listing on admittedly privileged documents. See e.g. **In Re: Imperial Corporation of America v. Shield**, 174 F.R.D. **475, 478 (S.D. Cal 1997)**.

Mattel misstates Stern & Goldberg's position regarding these two (2) categories of documents. The tape recording of the January 23, 2003 meeting, was listed on the separate privilege log provided to Mattel. [See Ex. "9" hereto.] Although, Mattel was advised that Stern & Goldberg believes it has a transcription of that tape, which it would be subject to the attorney work product privilege since it was obtained by Stern & Goldberg for use in its representation of Mr. Zarabi, and was not disseminated to anyone outside of the Firm.

EXHIBIT 3 PAGE 46

STERN & GOLDBERG'S OPPOSITION TO MATTEL'S MOTION TO COMPEL DOCUMENTS

1     As such, the attorney-client and attorney work product objections should be

2  sustained.

3       **2.**    **There is No Right to Obtain Discovery From An Arbitrator.**

4     In its Motion, Mattel takes the position that there is no privilege provision in

5  either the Federal Arbitration Act or under the Federal Rules of Evidence similar to

6  **California Evidence Code §703.5** (Arbitrator is not competent to testify in subsequent

7  proceeding).  Mattel is just plain wrong.  The cases cited by Mattel clearly hold that

8  the deposition of arbitrators are repeatedly condemned by the Courts, and that

9  documents utilized by the Arbitrator during his deliberative process are not subject to

10  discovery.  See **Woods v. Saturn Distribution Corp.** 78 F.3d 424, 430 (9th Cir.

11  **1996); O.R. Securities, Inc. v. Professional Planning Associates, Inc.,** 857 F.2d 742,

12  **748 ( 11th Cir. 1988); and Hoeft v. MVL Group, Inc.** 343 F.3d 57, 67 (2d Cir. 2003)

13  (citing numerous cases which hold that it is improper to submit an arbitrator to

14  examination regarding the decision making process).

15     In **National Hockey League Players Ass'n v. Bettman**, WL 38130 (S.D.N.Y.

16  **1994)**, in which Mattel places great reliance, the court stated "under the *Andros* rule,

17  the subpoenas issued to the arbitrators can have no effect unless the Court finds it

18  appropriate".  **Id at p.*2.**  Further, case law establishes that it is only in situations in

19  which the request of discovery is "plainly relevant to colorable claims of arbitral bias

20  or misconduct" may discovery be properly granted from an arbitrator.  **Id at p.*2.**

21     Indeed, in **Bettman**, **supra,** the Court refused to allow a party to depose Mr.

22  Bettman, stating: "most or all of the areas of relevant inquiry can be conducted through

23  depositions of other League and team officials".  **Id at p.*5.**

24     In **Bettman,** the Court refused to order the production of any documents when

25  their "disclosure plainly would intrude upon the analytical basis for the arbitrator's

26  decision,  an area that is generally, and properly, viewed as not subject to inquiry."  **Id**

27  **at p.*7.**

28     The "cases are legion in which Courts have refused to permit parties to depose

13

EXHIBIT 3 PAGE 47

1  arbitrators or other judicial or quasi-judicial decision makers regarding the thought
2  processes underlying their decisions." **Hoeft**, **supra**, **343 F.3d at p. 67**.  Such rule
3  makes perfect sense and is equally applicable to Stern & Goldberg whose involvement
4  was representing the Arbitrator in the underlying <u>Larian v. Larian</u> case.  Mattel is
5  simply trying to obtain documents which it is not entitled to obtain from the Arbitrator
6  from the attorneys for the Arbitrator.  Similar to **California Evidence Code §703.5**,
7  the Arbitrator cannot be subpoenaed as a witness in this action.

8       Finally, as indicated in the correspondence attached hereto, Mattel continually
9  refuses to even comply with the express requirements of the Discovery Stipulation
10  which it authored.  Indeed,  it continues to fail to send copies of all meet and confer
11  correspondence to the parties to the action. [See Discovery Stipulation, Section 5.].

12  **D.**    **Mattel Has Failed To Comply With The Local Rules Of This Court**
13        **Or The Discovery Stipulation.**

14       The Discovery Stipulation was done by stipulation of the parties and authored
15  by Mattel's counsel.  However, Mattel has failed to comply with the express terms of
16  the Discovery Stipulation.

17       The Discovery Stipulation provides, in the relevant part of paragraph 5, the
18  following:

19       "The moving party shall first identify each dispute, state the
20       relief sought, and identify the authorities supporting the
21       request for relief in a meet and confer letter that shall be
22       served on all parties by facsimile or electronic mail."

23       Mattel initially failed to comply with the Discovery Stipulation it authored as it
24  took three (3) letters before they even addressed certain of the issues raised by Stern
25  & Goldberg.  Indeed, despite repeated demands, Mattel failed to serve any of its meet
26  and "confer" letters on the parties to the action.

27       Further, Mattel has blatantly failed to comply with the Local Rules of this Court.
28       **Local Rule 37-1**, in its relevant part, provides the following:

EXHIBIT 3 PAGE 48

14

1         "Prior to the filing of any motion relating to discovery

2         pursuant to **Fed. R. Civ. P. 26-37.** . . . Unless relieved by

3         written order of the Court upon good cause shown, counsel

4         for the opposing party shall confer with counsel for the

5         moving party within ten (10) calendar days after the moving

6         party serves a letter requesting such conference.   The

7         moving party's letter shall identify each issue and/or

8         discovery request in dispute, shall state briefly with respect

9         to each such issue/request the moving party's position (and

10        provide any legal authority which the moving party believes

11        is dispositive of the dispute as to that issue/request), and

12        specify the terms of the discovery order to be sought."

13 Stern & Goldberg attempted in good faith to resolve this dispute.  However,

14 Mattel simply stopped the discussions.   Then five (5) weeks after failing to respond

15 to Stern & Goldberg letter of October 31, 2007, Mattel simply filed a motion which

16 blatantly failed to comply with **Local Rule 37-2**.  Not only did Mattel fail to prepare

17 a joint stipulation, but it filed the motion without any separate statement, thereby

18 requiring the Court, the parties and Stern & Goldberg to wade through some 74

19 exhibits spanning over 800 pages, to respond to this Motion.

20                           **III**

21                    **CONCLUSION**

22 Based upon the foregoing, Mattel's Motion should be denied in its entirety.

23

24

25 DATED: December 21, 2007          STERN & GOLDBERG

26                  By _____

27                      ALAN N. GOLDBERG

28                      Attorneys for Non-Party
                            Stern & Goldberg

EXHIBIT _3_ PAGE _49_

**EXHIBIT 4**

RECEIVED

DEC 2 8 2007

Larry R. Feldman, Bar Number 45126
Bryant S. Delgadillo, Bar Number 208361
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1200
Email address: bdelgadillo@kayescholer.com

Attorneys for Non-Party
KAYE SCHOLER LLP

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC.,<br><br>Defendant.<br><br>------------------------------------<br>AND CONSOLIDATED CASES | CASE NO. CV 04-09049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-9059 and CV 05-2727<br><br>***DISCOVERY MATTER***<br><br>**KAYE SCHOLER LLP'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL KAYE SCHOLER TO PRODUCE DOCUMENTS**<br><br>[Filed concurrently with the Declaration Of Bryant S. Delgadillo]<br><br>Date: January 10, 2008<br>Time: 9:00 a.m.<br>Place: Telephonic Hearing |

EXHIBIT 4 PAGE 50

12-27

## MEMORANDUM OF POINTS AND AUTHORITIES

Non-party, Kaye Scholer LLP ("Kaye Scholer") submits the following memorandum of points and authorities in opposition to Mattel, Inc.'s ("Mattel") Motion to Compel Kaye Scholer LLP to Produce Documents ("Motion").

## PRELIMINARY STATEMENT

Mattel's Motion is premature, unnecessary and a waste of this Court's time. After meeting and conferring with Mattel's lawyers in good faith, Kaye Scholer, a non-party to this action, reached an agreement to produce documents responsive to almost every one of Mattel's overbroad request. The parties reached this agreement in order to reduced the expense, burden and inconvenience associated with complying with Mattel's overbroad and oppressive subpoena. Kaye Scholer has completed its review pursuant to the agreement reached during the meet and confer conferences, and is prepared to produce these documents. As discussed below, the **only** impediment remaining before these documents can be produced is an issue with respect to several protective orders entered in other litigations. The responsive documents covered by these protective orders will be produced only if: (1) there is a court order indicating that by producing those documents, Kaye Scholer would not be violating these two prior protective orders; or (2) the parties to those protective orders agree to modify the orders to permit production of documents in this case. Kaye Scholer has repeatedly indicated to Mattel's counsel its readiness to help it in its effort to obtain the documents and produce the responsive, non-privileged documents in Kaye Scholer's possession, but not at the expense of violating two validly entered protective orders designed to protect the confidentiality of certain documents.

## BACKGROUND

Kaye Scholer is not a party to this action. *See* Declaration of Bryant S. Delgadillo in Support of Kaye Scholer, LLP's Opposition to Mattel, Inc.'s Motion to Compel Kaye Scholer to Produce Documents ("Delgadillo Decl.") at ¶3. Kaye Scholer has been dragged into this case as a non-party because it formerly served as

2

23236044.DOC

EXHIBIT 4 PAGE 57

litigation counsel to Mr. Isaac Larian ("Mr. Larian") in connection with, among other things, Mr. Larian's dispute with his brother, Farhad Larian. *Id.* at ¶2. This representation included defending Mr. Larian in two related Superior Court actions, two arbitration proceedings and an appeal to the California Court of Appeals, and covered a time period of several years. *Id.* at ¶2. As a result of this representation, Kaye Scholer has accumulated a tremendous amount of paper in its files. Specifically, Kaye Scholer has approximately fifty-six (56) boxes containing its client files from its representation of Mr. Larian. *Id.* at ¶2. These files consist of the typical litigation files, including, among other things, correspondence files, pleading files, discovery files, witness preparation files, research files, exhibits, attorney work files, and billing files. *Id.* at ¶2.

On or about September 6, 2007, Kaye Scholer received a Rule 45 Subpoena in a Civil Case ("Subpoena") from Mattel, Inc's ("Mattel") counsel, Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel"). *Id.* at ¶3. The Subpoena was apparently issued in connection with these consolidated cases. Delgadillo Decl., Ex. A.

The Subpoena contained over five (5) pages of single-spaced definitions and instructions, and then propounded thirty-five (35) different document requests, many of which contain numerous categories of documents and sub-parts. Delgadillo Decl., Ex. A. For example, Request Number 27 alone contained sixteen (16) different subparts. *Id.*, Ex. A at 9-11. In addition, many of the requests were grossly overbroad as drafted. For example, Requests Numbers 1, 2 and 3 sought ***all*** documents relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian, including certain specifically identified Superior Court actions and private arbitrations. *Id.*, Ex. A at 6.[1]

---

[1]   Requests Nos. 1-3 read as follows:

(1)   All DOCUMENTS, including all COMMUNICATIONS, RELATING TO any and all arbitration proceedings between FARHAD LARIAN and ISAAC LARIAN, (continued...)

3    EXHIBIT  4  PAGE  52

KAYE SCHOLER LLP

1   As Mr. Larian's litigation counsel during these actions and arbitrations, every

2   document in Kaye Scholer's files would arguably be responsive to these broadly

3   worded requests.  Delgadillo Decl. at ¶4.  In addition, since the Subpoena was

4   seeking documents from a law firm's client files, a majority of those documents

5   naturally would be protected from disclosure by multiple privileges, including but not

6   limited to, the attorney-client and attorney work product privileges. *Id.* at ¶4.

7   On or about September 18, 2007 Kaye Scholer served its Objections to the

8   Subpoena in a Civil Case ("Objections").  Delgadillo Decl., Ex. B. On October 11,

9   2007, and again on October 29, 2007, in a good faith effort to accommodate Mattel in

10  its request for production of documents and resolve Kaye Scholer's objections to the

11  Subpoena, counsel for Kaye Scholer participated in meet and confer conferences with

12  counsel for Mattel. Delgadillo Decl. at ¶6.  During those conferences, counsel for

13  Kaye Scholer informed Mattel's counsel about the burden, expense and inconvenience

14  associated with complying with the Subpoena. *Id.* at ¶6.  In particular, Kaye Scholer's

15  counsel informed Mattel's counsel of the burden, expense and inconvenience

16  associated with creating a document-by-document privilege log in this case. *Id.* at ¶6.

17  Kaye Scholer's counsel estimated that it would take a Kaye Scholer lawyer, working

18  including without limitation all video and/or sound recordings, transcripts, exhibits,
    memoranda, witness statements, declarations, affidavits and sworn testimony given by
19  any PERSON in connection with such arbitration proceedings.

20  (2)    All DOCUMENTS, including all COMMUNICATIONS, RELATING TO Los
    Angeles Superior Court Case No. BC301371 filed by FARHAD LARIAN against
21  ISAAC LARIAN and/or any related proceedings, including any appeal thereof, and
    including without limitation all video and/or sound recordings, transcripts, exhibits,
22  pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn
    testimony given by any PERSON in connection with such suit and/or related
23  proceedings and/or any appeal related to such lawsuit.

24  (3)  All DOCUMENTS RELATING TO Los Angeles Superior Court Case No.
    BC329501 filed by FARHAD LARIAN against ISAAC LARIAN, MORAD ZARABI
25  and Kambiz Zarabi, and/or any related proceedings and/or any appeal of such lawsuit,
    including without limitation all video and/or sound recordings, transcripts, exhibits,
26  pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn
    testimony given by any PERSON in connection with such suit and/or related
27  proceedings and/or any appeal related to such lawsuit.

28

4

EXHIBIT 4 PAGE 53

23236044.DOC

1  full time on the project, in excess of seventy (70) hours to create a document-by-

2  document privilege log for this case. *Id.* at ¶6.

3       In an attempt to reduce this burden, expense and inconvenience, yet comply

4  with just about every one of Mattel's broadly worded requests, Kaye Scholer agreed to

5  review the following files for responsive documents: 1) pleading files; 2) discovery

6  files (i.e., documents produced in the underlying litigations/arbitrations); and 3)

7  arbitration exhibit (i.e., documents identified and/or submitted as an exhibit during

8  arbitration). *Id.* at ¶7. By focusing on these files, Kaye Scholer was attempting to

9  minimize the burden, expense and inconvenience imposed by the Subpoena since,

10  unlike the vast majority of the documents in Kaye Scholer's files, most of the

11  documents in the files Kaye Scholer agreed to search would not covered by the

12  attorney-client privilege or the attorney work product privilege. *Id.* at ¶7.

13       Moreover, Kaye Scholer agreed to search for documents responsive to every

14  one of Mattel's requests except for certain requests (Nos. 1, 2, 3, 6 &10) which were

15  so broadly worded that every document in Kaye Scholer's files would arguably be

16  responsive to those requests. *Id.* at ¶7. Kaye Scholer believed this was a more than

17  reasonable offer, particularly since many, if not all of the documents Mattel was

18  seeking were readily obtainable from parties in this action, in publicly available

19  material, or have already been produced to Mattel by parties in this litigation. Even

20  with these limitations, Kaye Scholer would still be reviewing and producing a large

21  volume of documents. *Id.* at ¶7.

22       During these meet and confer sessions, Kaye Scholer's counsel also informed

23  Mattel's counsel that the **only** impediment Kaye Scholer had to producing documents

24  in accordance with the proposal discussed above, were several protective orders

25  entered in various matters. *Id.* at ¶8. In fact, Kaye Scholer's counsel provided

26  Mattel's lawyers with copies of the two protective orders which it believed covered

27  many, if not all, of the responsive, non-privileged documents in Kaye Scholer's files.

28  Delgadillo Decl., Exhs. C & D. These protective orders prohibited Kaye Scholer from

5

EXHIBIT __4__ PAGE __5-4__

1   disclosing potential responsive documents in its possession absent a court order or

2   consent from the parties. Delgadillo Decl. at ¶8. To that end, Kaye Scholer asked

3   Mattel's lawyers to resolve this issue by asking the appropriate Court to relieve Kaye

4   Scholer from any obligations pursuant to those protective orders. *Id.* at ¶8.

5       Following the meet and confer on October 29, 2007, Mattel's lawyers did not

6   contact Kaye Scholer about its discovery responses until almost three weeks later,

7   when Kaye Scholer received a letter on Friday, November 16, 2007 (after the close of

8   business), which purportedly memorialized the agreement reached during those two

9   conferences (hereinafter "November 16 Letter"). *Id.* at ¶9. The November 16 Letter,

10  however, did not accurately reflect the agreements reached during the two meet and

11  confer conferences. *Id.* at ¶9.[2] On November 21, 2007, Kaye Scholer's lawyer sent

12  Mattel a letter which clarified Kaye Scholer's proposal for producing documents.

13  Delgadillo Decl., Ex. E.

14      Kaye Scholer has completed its review pursuant to the proposal outlined above,

15  and is prepared to produce these documents. Delgadillo Decl. at ¶11. As discussed

16  above, the **only** impediment remaining before these documents can be produced is the

17  issue with respect to the protective order. *Id.* The responsive documents covered by

18  these protective orders will be produced as soon as there is a court order indicating

19  that by producing those documents, Kaye Scholer would not be violating the two prior

20  protective orders mentioned above. *Id.*

21  //

22  //

23  //

24

25  ---
    [2]  In addition, in the November 16 letter, Mattel lawyers provided additional clarifications and guidance with respect to Requests Numbers 29 and 32 which they had promised to do during the October 29, 2007 conference. Specifically, Mattel's lawyers promised to give a specific list of individuals in connection with Request Number 29, as well as a copy of the "agreements" at issue in connection with Request Number 32. This required Kaye Scholer to go back and review their files again with these clarifications in mind. Delgadillo Decl. at ¶10.

26

27

28

6    EXHIBIT __4__ PAGE __15__

23236044.DOC

## ARGUMENT

**I.   KAYE SCHOLER WILL PRODUCE RESPONSIVE, NON-PRIVILEGED DOCUMENTS PURSUANT TO ITS AGREEMENT WITH MATTEL, ONCE IT IS RELIEVED OF ANY OBLIGATIONS OR DUTIES UNDER PRIOR PROTECTIVE ORDERS ENTERED IN OTHER PROCEEDINGS.**

Kaye Scholer has repeatedly indicated to Mattel's lawyers its readiness to help it in its effort to obtain the documents and produce the responsive, non-privileged documents in Kaye Scholer's possession, but not at the expense of violating two validly entered protective orders designed to protect the confidentiality of certain documents. The protective order entered by the Arbitrator on November 16, 2005 in the underlying Larian v. Larian arbitration (ADRS Case No.: 05-2096) (hereinafter "11/16 Protective Order") is of particular concern to Kaye Scholer. *See* Delgadillo Decl. Ex. C. That protective order covers, among other things, "documents produced by third party MGA Entertainment, Inc. ("MGA") and MGA documents produced by any Party or third party, all information copied or extracted therefrom, all copies, excerpts, summaries, or compilations thereof, and all testimony presented to the arbitrator, and transcripts of such testimony from any current or former MGA employee or contractor pertaining to MGA's business." *See* Delgadillo Decl. Ex. C at ¶2. The vast majority (if not all) of the responsive, non-privileged documents Kaye Scholer has in its possession are either: (1) documents produced by MGA or MGA documents produced by a party or third party during the arbitration, or (2) testimony or documents presented to the arbitrator during the arbitration. Delgadillo Decl. at ¶12. Thus, those documents would be covered by this Protective Order. Absent consent from the parties or a court order relieving Kaye Scholer from any obligations imposed by the 11/16 Protective Order, Kaye Scholer cannot risk producing these documents. To date, the parties to the 11/16 Protective Order have not consented to disclosure in this case. Delgadillo Decl. at ¶12. However, Kaye Scholer has been told by counsel for MGA that the parties to this protective order have informed counsel for Mattel that they are willing to modify this protective order and all that remains is to

7

23236044.DOC

EXHIBIT __4__ PAGE __56__