1  work out the details regarding the terms for modifying the protective order. *Id.* at ¶12.

2     In addition, Kaye Scholer also has a smaller number of responsive documents

3  covered by the protective order entered by Superior Court Judge Rodney Nelson on

4  September 23, 2004 in the underlying Larian v. Larian Superior Court action, Case

5  No. BC 301371 (hereinafter "9/23 Protective Order"). *See* Delgadillo Decl., Ex. D.

6  The 9/23 Protective Order applies to documents marked "ED and/or "MZ." Kaye

7  Scholer has a number of responsive, non-privileged documents in its possession that

8  are so marked. Delgadillo Decl. at ¶13. Pursuant to the 9/23 Protective Order, those

9  documents "shall not be disclosed to other persons except pursuant to the terms of this

10 Protective Order and the rules of law incorporated herein." *See Id.*, Ex. D at pg. 1, ¶2.

11 There is no provision in the 9/23 Protective Order that permits disclosure after consent

12 of the parties. Rather, it appears that they only way to modify or terminate the 9/23

13 Protective Order is by request of a *party* to the action only after due notice and hearing

14 and upon showing of good cause. *See Id.*, Ex. D at pg. 1, ¶3. To date, no party to that

15 action has made such a motion. Delgadillo Decl. at ¶13. Again, however, Kaye

16 Scholer has been told by counsel for MGA that the parties to this protective order

17 have informed counsel for Mattel that they are willing to modify this protective order

18 and all that remains is to work out the details regarding the terms for modifying the

19 protective order.

20 **II.   KAYE SCHOLER HAS NOT WAIVED ANY PRIVILEGE BY FAILING**
21 **TO PROVIDE A DOCUMENT-BY-DOCUMENT PRIVILEGE LOG.**

22     Mattel has an obligation to reduce the burden, expense and inconveinene

23 associated with compliance with the Subpoena since it is seeking discovery from a

24 non-party. *See* Fed. R. Civ. Proc., Rule 45(c)(1) ("A party or an attorney responsible

25 for the issuance and service of a subpoena shall take reasonable steps to avoid

26 imposing undue burden or expense on a person subject to that subpoena"); *United*

27 *States v. C.B.S.*, 666 F.2d 364, 371-72 (9th Cir. 1982) ("Nonparty witnesses are

28 powerless to control the scope of litigation and discovery, and should not be forced to

1    subsidize an unreasonable share of the costs of litigation to which they are not a party

2    . . . [A] witness's nonparty status is an important factor to be considered in

3    determining whether to allocate discovery costs on the demanding or producing

4    party."). Kaye Scholer has repeatedly informed Mattel's counsel that the creation of a

5    document-by-document privilege log in this case would be unduly burdensome,

6    expensive and inconvenient. It should not come as a shock to Mattel that when a

7    party seeks documents from a law firm's files, the vast majority of those documents

8    will be protected from disclosure by multiple privileges, including but not limited to,

9    the attorney-client and attorney work product privileges. Nevertheless, Mattel has

10   made absolutely no showing as to why it is necessary for Kaye Scholer to incur the

11   expense and endure the burden of creating a document-by-document privilege log in

12   this case.

13           The Federal Rule of Civil Procedure have been interpreted to provide that when

14   the creation of a document-by-document privilege log would be unduly burdensome,

15   such a log is not required. *See* Advisory Committee Note to F.RC.P. 26(b) (1993)

16   Amendments) (a privilege log "may be appropriate if only a few items are withheld,

17   but may be unduly burdensome when voluminous documents are claimed to be

18   privileged or protected"); *see also In re Imperial Corp. of America*, 174 F.R.D. 475,

19   477 (S.D. Cal, 1997) (citing Advisory Committee). Furthermore, the failure to

20   provide a document-by-document privilege log does not result in a per-se waiver of

21   any privilege. *See Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for

22   Dist. Of Mont.*, 408 F.3d 1142, 1147 (9ᵗʰ Cir. 2005). Lastly, requiring Kaye Scholer to

23   produce a document-by-document privilege log in this case would essentially

24   eviserate the agreement reached between the parties regarding the scope of Kaye

25   Scholer's search. As discussed above, in an attempt to reduce the burden, expense

26   and inconvenience associated with complying with Mattel's overly broad Subpoena,

27   Kaye Scholer agreed to focus its search on the files that would most likely contain

28   non-privileged documents (*i.e.*, pleading files, discovery files, and arbitration exhibit).

9

1  Instead of being able to limit its search to these files (as it did), if a document-by-

2  document privilege log is required, Kaye Scholer would necessarily have to review

3  every single piece of paper in its files.  The expense, burden and inconvenience

4  associated with such a review is unjustified in this case.

5  ## CONCLUSION

6       For the foregoing reasons, Kaye Scholer requests that Mattel's Motion be

7  denied in its entirety.

8  DATED:  *12-27-07*

    KAYE SCHOLER LLP

10

11  By:

12  Bryant S. Delgadillo

13  Attorneys for Non-Party
KAYE SCHOLER

14

15

EXHIBIT 4 PAGE 59

23236044.DOC

KAYE SCHOLER LLP
POS by Mail/State Court 9/00

## PROOF OF SERVICE

STATE OF CALIFORNIA    )
                       )    ss
COUNTY OF LOS ANGELES  )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is KAYE SCHOLER LLP, 1999 Avenue of the Stars, Suite 1700, Los Angeles, California 90067.

On **December 27, 2007**, I served the foregoing document described as follows: **KAYE SCHOLER LLP'S OPPOSITION TO MATTEL INC.'S MOTION TO COMPEL KAYE SCHOLER TO PRODUCE DOCUMENTS** by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| John B. Quinn, Esq.<br>Michael T. Zeller, Esq.<br>Jon D. Corey, Esq.*<br>Quinn Emanuel Urquhart Oliver & Hedges, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017 | Alan N. Goldberg<br>Stern & Goldberg<br>6345 Balboa Blvd., Suite 200<br>Encino, Ca 91316 |
| Larry McFarland, Esq.<br>Keats, McFarland & Wilson, LLP<br>9720 Wilshire Blvd.,<br>Penthouse Suite<br>Beverly Hills, CA 90212 | Alisa Morgenthaler Lever<br>Christensen, Glaser, Fink, Jacobs, Weil & Shapiro LLP<br>10250 Constellation Blvd., 19th Floor<br>Los Angeles, CA 90067 |

[] **BY PERSONAL SERVICE** I caused such envelope to be delivered :

___ by hand to the addressee.
___ and left it at the offices of the addressee with a clerk or other person in charge thereof.
___ and left it in a conspicuous place in the offices of the addressee.

[ ] **BY FACSIMILE** The above-referenced documents (without exhibits and attachments thereto) were transmitted via facsimile transmission to the addressee(s) as indicated above on the date thereof. The transmission was reported as completed and without error. Executed on **December 27, 2007** at Los Angeles, California.

[XXX] **BY U.S. MAIL** (I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.) Executed on **December 27, 2007** at Los Angeles, California.

1

EXHIBIT __4__ PAGE _60_

1  [   ]     **BY FEDERAL EXPRESS** I am readily familiar with KAYE SCHOLER LLP's
2                business practices of collecting and processing items for pick-up and next
               business day delivery by Federal Express.  Under said practices, items to be
3                delivered the next business day are either picked up by Federal Express or
               deposited in a box or other facility regularly maintained by Federal Express in the
4                ordinary course of business on that same day with the cost thereof billed to KAYE
               SCHOLER LLP's account.  I placed such sealed envelope for delivery by Federal
5                Express to the offices of the addressee(s) as above on the date hereof following
               ordinary business practices.)   Executed on **December 27, 2007** at Los Angeles,
6                California.

7  []         **STATE** I declare under penalty of perjury under the laws of the State of
               California that the foregoing is true and correct.

8  [XXX ]     **FEDERAL** I declare that I am employed in the office of a member of the bar of
9                this court at whose direction the service was made.

10 Executed on December 27, 2007 at Los Angeles, CA

11

12                             Sharon Rawana

4 of 61

# EXHIBIT 5

1  Patricia Glaser, State Bar No. 55668
   Alisa Morgenthaler Lever, State Bar No. 146940
2  Scott E. Gizer, State Bar No. 221962
   CHRISTENSEN, GLASER, FINK, JACOBS,
3    WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
4  Los Angeles, California 90067
   Telephone:  (310) 553-3000
5  Facsimile:  (310) 556-2920

6  Attorneys for Non-Party Farhad Larian

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  CARTER BRYANT, an individual          )   CASE NO. CV 04-09049 SGL (RNBx)
                                          )
12              Plaintiff,                )   Consolidated with Case Nos.
                                          )   CV 04-9059 & CV 05-2727
13       v.                               )
                                          )   **NON-PARTY FARHAD LARIAN'S**
14  MATTEL, INC., a Delaware              )   **MEMORANDUM OF POINTS AND**
    corporation                           )   **AUTHORITIES IN OPPOSITION**
15                                        )   **TO MATTEL, INC.'S MOTION TO**
                Defendant.                )   **COMPEL FARHAD LARIAN TO**
16                                        )   **PRODUCE DOCUMENTS;**
                                          )   **REQUEST FOR SANCTIONS**
17  _____  )
    AND CONSOLIDATED ACTIONS             )   [Filed concurrently with Farhad Larian's
18                                        )   Response to Mattel's Separate Statement
                                          )   and Declaration of Scott E. Gizer]
19  _____  )
                                             Date:    January 10, 2008
20                                           Time:    9:30 a.m.
                                             Place:   Telephonic
21

22

23

24

25

26

27

28
613049.2                                      EXHIBIT __5__ PAGE _6 2_

                                12 26

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1  Farhad Larian ("Farhad") submits the following memorandum of points and
2  authorities in opposition to Mattel, Inc.'s ("Mattel") Motion to Compel Farhad to
3  Produce Documents:

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION AND SUMMARY OF ARGUMENT**

    **A.   Mattel's Motion to Compel Should Be Denied Because It Was Filed Before The Parties' Meet And Confer Discussions Concluded**

8  Mattel attempts to mislead the Court into thinking that Farhad has made a
9  paltry production in response to Mattel's subpoena, which could not be farther from
10 the truth.  Farhad has produced over 12,000 pages of documents which are responsive
11 Mattel's forty-one overbroad and harassing documents requests and agreed to produce
12 at least some of the documents which are responsive to all but one of Mattel's
13 document requests.  Only three discovery requests essentially remain in dispute.  Had
14 Mattel complied with its meet and confer obligations to conclusion, the parties may
15 have been able to avoid this entire motion, or at the very least, present to the Court the
16 discovery issues which are truly in dispute.  Instead, Mattel filed this motion in bad
17 faith without completing the parties' meet and confer discussions and chose to waste
18 the Court's time.

19 Mattel moves to compel on an overbroad and harassing subpoena that seeks
20 forty-one categories of documents ("Requests") including, *inter alia*, all documents
21 related to *any* dispute between Farhad and his brother Isaac Larian ("Isaac"), any
22 appraisals of MGA Entertainment, Inc. ("MGA") and/or Bratz, and any payments,
23 regardless of amount, between Farhad, Isaac, Farhad and Isaac's family members, and
24 MGA.  Farhad made every effort to resolve his objections to Mattel's subpoena in
25 good faith, but Mattel rejected every reasonable attempt to limit the scope of its
26 subpoena.  In fact, in the middle of Farhad's attempts to resolve his disputes with
27 Mattel, Mattel unilaterally decided that the meet and confer discussions were
28 concluded in violation of the Local Rules.

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

EXHIBIT _5_ PAGE _63_

1    Mattel then prematurely filed this motion to compel the same day Farhad was

2  scheduled, pursuant to the parties' agreement, to make his supplemental production

3  (December 6, 2007) and before Farhad served his supplemental response (December

4  12, 2007), even though Mattel agreed to both of these dates.  (Declaration of Scott E.

5  Gizer ("Gizer Decl."), ¶ 17, 23-25, and 30).  As can be discerned from a simple

6  review of the correspondence between counsel and Farhad's supplemental responses,

7  had Mattel waited for Farhad to provide his agreed to supplemental production and

8  response, Mattel would have recognized that almost all of these Requests were

9  resolved and that there was still a possibility of resolution for the Requests that were

10  still in dispute.  Thus, there is no justification for Mattel's filing of this motion to

11  compel, and said filing is in bad faith.

12    It should come as no surprise that Mattel has filed this frivolous motion.

13  Mattel and its counsel's *modus operandi* in conducting third party discovery is not to

14  obtain relevant information, but to annoy and harass the third party with overbroad

15  and improper subpoenas for irrelevant documents until the third party submits to

16  Mattel's will.  *See Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813-

17  814 (9th Cir. 2003) (awarding sanctions because Mattel's subpoena was overly

18  burdensome and served for an improper purpose).  The Ninth Circuit Court of Appeal

19  sanctioned Mattel for this improper conduct, but it appears that these sanctions have

20  not deterred Mattel.  Mattel has employed this same improper tactic here by serving

21  numerous third parties, including Farhad, with virtually identical overbroad and

22  harassing subpoenas.  When Farhad understandably requested that Mattel narrow the

23  scope of some of its Requests to issues that are relevant to this action, Mattel refused.

24  (Gizer Decl., ¶ 16).  Thus, Mattel has made no effort once again to "tailor the

25  information requests to the immediate needs of the case" and should be sanctioned

26  once more for its discovery abuses.  *Id.* at 813.

27

28

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

EXHIBIT __5__ PAGE __64__

LAW OFFICES
CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

EXHIBIT 5 PAGE 65

**B.** **Mattel's Motion to Compel Should Be Denied As To The Few Requests That Are In Dispute Because These Requests Are Overbroad, Harassing, and Seek Irrelevant and Private Information**

Contrary to Mattel's Assertions, there are only three Requests that really remain in dispute—Requests Nos. 23, 24, and 41[1]. Further, as to these three requests, Farhad has produced those documents that are relevant to his credibility as a witness and the issues in the Mattel v. Bryant litigation. For the remainder of the Requests, Farhad has substantively responded to each Request as evidenced by Farhad's Supplemental Response.

Requests Nos. 23, 24 and 41 seek private financial information regarding Farhad and his family members. Mattel claims these Requests are proper because they allegedly seek information relevant to Farhad's credibility. But in reality, the majority of the documents encompassed by the scope of these Requests have nothing to do with credibility. These Requests, as phrased, are terribly intrusive, overbroad, harassing, cumulative, and not reasonably calculated to lead to the discovery of admissible evidence. Further, these Requests seek private information that is protected by the California Constitution and the federal courts. Mattel has made no showing to justify the incredible intrusion they are seeking on Farhad's right to privacy, and for this reason, Mattel's motion to compel must be denied.

**II.** **STATEMENT OF FACTS**

**A.** **Because Mattel Refused To Provide Farhad With A Reasonable Extension to Mattel's Subpoena, Farhad Was Initially Required To Object To Most of Mattel's Subpoena**

On September 2, 2007, Mattel served Farhad with an overbroad and harassing subpoena for documents and his personal appearance. The subpoena sought forty-one categories of documents including, *inter alia*, all documents related to any dispute

---

[1] Requests Nos. 1, 2, 4 and 16 are resolved for all intents and purposes as Mattel as specified the relevant documents it is seeking from the Larian v. Larian disputes, and Farhad has already produced those documents pursuant to his proposed limitation.

1  between Farhad, and his brother Isaac Larian ("Isaac"), any appraisals of MGA and/or

2  Bratz, and any payments, regardless of amount, between Farhad, Isaac Larian, Farhad

3  and Isaac's family members, and MGA Entertainment, Inc. ("MGA").  (Gizer Decl., ¶

4  2).

5       Almost immediately after receipt of this subpoena, Farhad's counsel contacted

6  Mattel's counsel to request an extension to respond to this subpoena to the beginning

7  of November 2007.  Farhad's counsel explained that Farhad was dealing with personal

8  family matters that were consuming all of his time, and these family matters would

9  preclude him from locating and gathering the numerous boxes of documents that

10 would potentially be responsive to Mattel's Requests.  Farhad's counsel also noted that

11 since Farhad is a non-party, he should be granted some latitude considering the scope

12 of Mattel's document demands.  (Gizer Decl., ¶ 3, Ex. "D")

13      Mattel's counsel would not agree to this request, and therefore, because Farhad

14 would not be able to determine what potentially responsive documents he possessed,

15 he was forced to serve mainly objections to Mattel's subpoena in order to preserve his

16 objections.  Farhad only agreed to produce those documents that were clearly relevant

17 to the issues in the <u>Mattel v. Bryant</u> litigation, and were sought through properly

18 tailored document requests—Request Nos. 5-7, 10-14, and 26-28.  (Gizer Decl., ¶ 4).

19      Soon after receiving Farhad's written response to Mattel's subpoena, Mattel's

20 counsel sent a letter demanding a meet and confer session to discuss Farhad's

21 responses.  (Gizer Decl., ¶ 5, Ex. "B").  Farhad's counsel responded to said letter

22 informing Mattel's counsel that its request for a meet and confer was premature

23 because Mattel's letter failed to comply with C.D. Cal. Local Rule 37-1, and as a

24 result, it could not be determined which Requests would be part of the meet and

25 confer.  (Gizer Decl., ¶ 6, Ex. "C").  C.D. Cal. Local Rule 37-1 required Mattel's meet

26 and confer letter to "identify each issue and/or discovery request in dispute, [] state

27 briefly with respect to each such issue/request the moving party's position (and

28 provide any legal authority which the moving party believes is dispositive of the

1  dispute as to that issue/request), and specify the terms of the discovery order to be

2  sought."

3  　　　　Further, Farhad's counsel communicated to Mattel's counsel that any meet and

4  confer discussions regarding Mattel's subpoena needed to be put off until November

5  because Farhad's counsel needed to review the documents in Farhad's possession first

6  so that they could have meaningful talks.  As stated above, Farhad had family issues

7  to deal with and would not be able to compile possible responsive documents until

8  early November 2007.  (Gizer Decl., ¶ 7, Ex. "D").  Judge Larson then implemented a

9  discovery stay in this action, which delayed meet and confer discussions until

10  November 14, 2007.  However, Farhad's counsel represented that they were more

11  than willing to participate in a meet and confer call following the lift of the discovery

12  stay.  (Gizer Decl., ¶ 8, Ex. "E").

13  　　　　The parties then had their initial meet and confer call on November 20, 2007.

14  MGA and Isaac's counsel also participated in the conference call as a party litigant.

15  (Gizer Decl., ¶ 9).

16  **B.**　　**Mattel's Motion to Compel Must Be Denied Because Mattel Violated**

17  　　　　**Its Meet and Confer Obligations By Filing This Motion Before**

18  　　　　**Farhad Made His Scheduled Supplemental Production And Before**

19  　　　　**The Parties' Meet And Confer Discussions Had Concluded**

20  　　　　**1.**　　**The November 20, 2007 Meet And Confer Conference Call**

21  　　　　　　　**and Farhad's Initial Production**

22  　　　　As previously stated, the parties had their initial meet and confer discussions

23  regarding Farhad's responses on November 20, 2007.  During this initial conference

24  call, the parties discussed Requests Nos. 1- 3, 8, 9, 15, and 17-22.[2]  It appeared that

25  during this conference call, the parties were able to resolve Requests Nos. 1, 2, 15 and

26  20-22.  (Gizer Decl., ¶ 10).  Farhad's counsel proposed a limitation of Requests Nos. 1

27  

28  
---

[2] Mattel asked that discussions on Requests Nos. 4 and 16 be deferred, and Requests Nos. 5-7 and 10-14 were not discussed because Farhad already agreed to produce all responsive, non-privileged documents to these Requests.

LAW OFFICES
CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

EXHIBIT 5  PAGE 67

1  and 2, thought to be acceptable to Mattel, narrowing them to all documents from the

2  Larian v. Larian disputes that relate to Bratz, including its origin, Carter Bryant or

3  Mattel as these would be the subject matters that are relevant to the Mattel v. Bryant

4  litigation. These Requests needed to be limited and it was believed that an agreement

5  was reached on this proposed limitation as these Requests were not discussed in the

6  subsequent November 27, 2007 conference call. (Gizer Decl., ¶11).

7          For Requests Nos. 3(d)(e)[3] and 17-19, the parties disagreed on the

8  appropriateness of these Requests, but Farhad's counsel agreed that they would review

9  the documents in Farhad's possession again before taking a position on his objections.

10  (Gizer Decl., ¶ 12). For Request Nos. 8 and 9, after discussing their scope, Farhad's

11  counsel stated they needed to get back to Mattel after they determined what

12  responsive documents Farhad possessed. Contrary to Mattel's motion, Farhad never

13  took the position that he would not respond to these Requests. (Gizer Decl., ¶ 13).

14          On November 21, 2007, Farhad made his initial document production,

15  consisting of just under 1,000 documents. These documents responded to Requests

16  Nos. 5-7, 10-14 and 26-28. Far from a paltry production, Farhad produced all

17  documents that directly referenced Bratz and Carter Bryant, which Mattel admits are

18  the most critical documents they seek. (Gizer Decl., ¶ 14, Ex. "G"; Mattel's Motion,

19  14-15).

20          **2.      The November 27, 2007 Meet And Confer Conference Call**

21          The parties then had a second meet and confer conference call on November

22  27, 2007. During this call, the parties discussed Requests Nos. 23, 24 and 29-41, and

23  were able to resolve, or potentially resolve,[4] all Requests except Requests Nos. 23, 24

24  and 41. (Gizer Decl., ¶ 15, Ex. "K"). Requests Nos. 23, 24 and 41 sought documents

25

26  [3] Farhad produced documents responsive to Request No. 3(a)(b)(c) in his initial
    production, and therefore, the parties did not need to discuss it further.

27  [4] For Requests Nos. 25, 38 and 39, the parties were able to clarify Mattel's intended
    scope for these requests, and Farhad's counsel represented that they would get back to

28  Mattel with their final position. Farhad ultimately responded to these Requests on
    December 6, 2007, before Mattel filed its motion to compel.

LAW OFFICES
CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

EXHIBIT 1 PAGE 68

regarding Farhad's person financial information.  Specifically, Requests Nos. 23 and 24 sought all payments, regardless of amount, made between Farhad, Isaac, Farhad and Isaac's family members, and MGA since 1999.  When Farhad's counsel asked why these payments were relevant, Mattel's counsel could only state "bias" without any further explanation.  While Farhad's counsel recognized that payments made to Farhad in connection with this litigation, such as a fee agreement, could potentially show bias, Mattel's Requests went far beyond this scope. (Gizer Decl., ¶ 16).  Indeed Mattel, requests documents from 1999, 5 years before this action was filed and six years before MGA was involved in this action. (Gizer Decl., ¶ 16).  Payments made to Farhad and his family before this actions was filed, and before MGA was a party to it, can have no relevance to Farhad's credibility as a witness in this action.

These Requests as phrased would seek documents related to Isaac giving one of Farhad's children a quarter to buy a gumball.  They would also include any card that accompanied a gift to anyone in the Larian family.  As a purported compromise, Mattel's counsel initially offered to exclude gifts of $25.00 or less.  When Farhad's counsel pointed out the feebleness of this limitation, Mattel's counsel offered to exclude gifts of $50.00 or less. (Gizer Decl., ¶ 16).  This is still a preposterous limitation.  Even with this limitation, Farhad would still be required to disclose documents regarding birthday gifts, Chanukah gifts, or general gifts of money between family members.  This has nothing to do with bias and violates the privacy rights of Farhad and his family.  Farhad would also be required to disclose all documents reflecting payments he received as an employee of MGA and its predecessor, a company he was employed by for decades.  Again, these documents have nothing to do with bias.  Farhad's counsel again offered to produce documents that show Farhad was somehow being compensated in relation to this case because such documents could potentially show bias, and in fact, Farhad did produce a fee agreement between MGA and him in relation to the Mattel v. Bryant litigation.  However, Mattel's counsel simply called off all further discussions when Farhad's

611929.2

7

LARIAN'S MEMO P'S & A'S IN OPPOSITION TO MATTEL'S MOTION TO COMPEL FARHAD LARIAN TO PRODUCE DOCUMENTS CV 04-09049 SGL (RNBx)

EXHIBIT 5 PAGE 69

LAW OFFICES
CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1    counsel refused to accept Mattel's absurd $50.00 limitation. (Gizer Decl., ¶ 16, Ex.

2    "K").

3          At the conclusion of the call, it was agreed that Farhad would make a

4    supplemental production of documents on December 6, 2007 and provide a written

5    supplemental response[5]. (Gizer Decl., ¶ 17). However, the parties also still needed to

6    discuss several documents Requests, including Requests Nos. 4, 8, 9, 16-19, 25 and

7    39. Farhad's counsel sent a letter to Mattel's counsel on November 30, 2007 to this

8    effect as a reminder. (Gizer Decl., ¶ 18, Ex. "H").

9          **3.      Mattel Unilaterally Canceled The Parties' December 6, 2007**

10                   **Meet and Confer Conference Call And Then Prematurely**

11                   **Filed This Motion to Compel**

12         On December 4, 2007, Mattel's counsel sent an e-mail to Farhad's counsel

13   asking if a conference call could be scheduled for December 5, 2007 at 11:00 a.m. to

14   discuss Farhad's counsel's November 30, 2007 letter seeking to complete the parties'

15   unfinished meet and confer discussions. Multiple e-mails were then exchanged the

16   same day between Farhad's counsel and Mattel's counsel to schedule this conference

17   call. The last e-mail sent on this issue was by Farhad's counsel, wherein they asked if

18   the conference call could be held during the afternoon of December 6, 2007 because

19   MGA's counsel wanted to participate in the call. Mattel's counsel never responded to

20   this proposal. (Gizer Decl., ¶ 19, Ex. "I").

21         Instead, the following day, Mattel's counsel sent a letter, dated December 5,

22   2007, stating that there was no need for a further meet and confer, even though certain

23   Requests were still obviously at issue. Also, in this December 5, 2007 letter, Mattel's

24   counsel attempted to summarize the parties' meet and confer discussions, but their

25   letter contained numerous factual inaccuracies. (Gizer Decl., ¶ 20, Ex. "J").

26

27

28   [5] Farhad served his supplemental response on December 12, 2007 pursuant to
     agreement with Mattel's counsel.

1  The next morning, December 6, 2007, Farhad's counsel contacted Mattel's

2  counsel to inform him that copies were being made of Farhad's supplemental

3  production, but that they would not be ready until later in the evening because Farhad

4  was producing six banker's boxes worth of documents.  Farhad's counsel also called

5  to confirm that Mattel was refusing to participate in another meet and confer

6  conference call to discuss the remaining Requests that required follow-up.  Mattel's

7  counsel confirmed that they would not be participating in any further meet and confer

8  discussions because they felt all Requests were sufficiently discussed in prior calls.

9  (Gizer Decl., ¶ 21).

10  Since it was apparent that Mattel intended to violate its meet and confer

11  obligations, and prematurely file a motion to compel, Farhad's counsel sent a letter to

12  Mattel's counsel on December 6, 2007 at 5:36 p.m., setting forth Farhad's position on

13  the Requests that were discussed during the conference calls with Mattel's counsel.  In

14  the letter, Farhad's counsel also outlined those discovery disputes that were resolved

15  and those that remained at issue.  (Gizer Decl., ¶ 22, Ex. "K").  Mattel filed this

16  motion to compel at 5:52 p.m. shortly after receiving this letter from Farhad's counsel.

17  (Gizer Decl., ¶ 23).  Despite the filing of this motion, Farhad still made his

18  supplemental production of documents that night, which consisted of over 11,000

19  documents.  (Gizer Decl., ¶ 24 Exs. "L" and "M").

20  The following day, after reviewing Mattel's motion to compel, Farhad's counsel

21  sent a letter to Mattel's counsel advising them that their motion to compel was entirely

22  premature given that they had not even looked at Farhad's supplemental production or

23  waited to receive Farhad's supplemental response.[6]  (Gizer Decl., ¶ 24 and 25, Ex.

24  "N").  It was apparent that had Mattel waited for Farhad's promised supplemental

25  production and response, it would have determined that only three Requests

26  essentially remained in dispute, and that there was potential for resolving these

27

28  [6] Also, in this letter, Farhad's counsel offered to make Farhad available for deposition on December 17, 2007.

1   Requests as well.  Therefore, Farhad's counsel sent a letter to Mattel's counsel

2   demanding that Mattel take its motion off-calendar because it was filed in bad faith.

3   (Gizer Decl., ¶ 25).

4        In a December 10, 2007 letter, Mattel rejected Farhad's request to take the

5   motion off-calendar simply claiming that the motion to compel was necessary based

6   on additional factual inaccuracies.  (Gizer Decl., ¶ 26, Ex. "O").  Farhad's counsel

7   made one last attempt in a December 12, 2007 letter to persuade Mattel that its

8   motion was premature, but Mattel never responded to this letter.  (Gizer Decl., ¶ 27,

9   Ex. "P").  Thus, despite Farhad's good faith efforts to resolve this discovery dispute

10  informally, Farhad is now forced to file these opposition papers.

11      **C.    <u>Farhad Has Fully Complied With Mattel's Subpoena,  Producing</u>**

12          **<u>Over 12,000 Documents To Date In Response to Mattel's Subpoena</u>**

13       Mattel mischaracterizes the extent of Farhad's document production.  In

14  response to Mattel's subpoena, Farhad has produced over 12,000 documents.  (Gizer

15  Decl., ¶ 28).  In his initial production, Farhad produced almost 1,000 documents.

16  (Gizer Decl., ¶ 28).  Since that time, Farhad has produced over 11,000 additional

17  documents, including all non-privileged documents from the <u>Larian v. Larian</u> matters

18  that relate to Bratz, including its origin, Carter Bryant or Mattel, a fee agreement

19  between Farhad and MGA, and all documents related to appraisals of MGA that are

20  not privileged or otherwise covered by a protective order.  (Gizer Decl., ¶ 28).  This is

21  an enormous production for a third party who has no interest in this litigation.  But,

22  Mattel tries to ignore this fact by claiming that it had not received Farhad's

23  supplemental production at the time it filed this motion, even though Mattel's counsel

24  agreed to the date of the supplemental production and knew that such production was

25  forthcoming.  In particular, Farhad's counsel had advised Mattel's counsel that the

26  documents for the supplemental production were being copied, would be delivered

27  the night Mattel filed this improper motion to compel, and consisted of six banker's

28  boxes.  (Gizer Decl., ¶ 21).

EXHIBIT 5 PAGE 72

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1   Mattel also claims that Farhad failed to produce various other documents that

2   he allegedly should possess.  Contrary to Mattel's assertions, Farhad does not possess

3   any transcripts or video recordings from the arbitration proceedings.  Further, aside

4   from what he has already produced, Farhad does not have any further information

5   regarding the allegations contained on page 12 of Mattel's motion to compel.  The

6   basis for the facts cited by Mattel were various newspaper articles that have already

7   been produced, and information and belief.  (Gizer Decl., ¶ 29).

8   Farhad has more than complied with his discovery obligations, and for this

9   reason, Mattel's motion to compel must be denied in its entirety.

10  **D.    Farhad's Supplemental Written Response To Mattel's Subpoena**

11  **Evidences That Only A Few Requests Remain In Dispute**

12  Farhad served his supplemental response to Mattel's subpoena on December 12,

13  2007 pursuant to an agreement with Mattel's counsel.  This supplemental response

14  evidences that Farhad has produced documents in response to each of Mattel's

15  Requests, except one Request—Request No. 41—that asked Farhad to identify every

16  bank account, telephone service provider, and e-mail account he has had since 1999.

17  Further, Farhad's written response evidences that aside from three Requests—

18  Requests Nos. 23, 24, and 41—all discovery disputes are essentially resolved.  (Gizer

19  Decl., ¶ 30).  Nonetheless, because Mattel prematurely filed its motion, it has

20  included many of these resolved disputes in its moving papers.

21  **III.   ARGUMENT**

22  **A.    Mattel Misrepresents The Number Of Requests In Dispute: Only**

23  **Three Requests Essentially Remain At Issue**

24  **1.    Mattel's Motion Should Be Denied As To Requests Nos. 8, 9,**

25  **25, 38 And 39 As These Requests Were All Resolved Prior To**

26  **The Filing Of This Motion**

27  Farhad's counsel informed Mattel's counsel before this motion to compel was

28  filed that a dispute no longer existed as to Requests Nos. 8, 9, 25, 38 and 39.  But, in

611929.2

LARIAN'S MEMO P'S & A'S IN OPPOSITION TO MATTEL'S MOTION TO COMPEL FARHAD LARIAN TO
PRODUCE DOCUMENTS CV 04-09049 SGL (RNRx)

*(left margin, vertical text)* LAW OFFICES CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP 10250 CONSTELLATION BOULEVARD NINETEENTH FLOOR LOS ANGELES, CALIFORNIA 90067 (310) 553-3000

*(left margin, vertical text)* EXHIBIT 5 PAGE 73

1    an apparent attempt to prejudice the Court against Farhad and paint him in a bad light,

2    Mattel rushed to file this Motion so that it could misrepresent the number of Requests

3    that are actually in dispute.  Prior to the filing of this motion, the parties had resolved

4    almost all of the Mattel's Requests and were still discussing others.  It was agreed that

5    Farhad would make a supplemental production on December 6, 2007 and serve a

6    written supplemental response on December 12, 2007.  For those Requests that

7    needed to be discussed further, Farhad understood that a further meet and conference

8    call would be scheduled, and in fact, the parties discussed scheduling this conference

9    call until Mattel abruptly declared that the meet and confer discussions were

10   concluded.  Among the Requests to be discussed further were Requests Nos. 8, 9, 25,

11   38 and 39.

12        Since it was apparent that Mattel intended to violate its meet and confer

13   obligations, and prematurely file a motion to compel, on December 6, 2007, Farhad's

14   counsel sent a letter to Mattel's counsel to clarify Farhad's position on Mattel's

15   Requests.  In the letter, Farhad's summarized their meet and confer discussions and

16   set forth Farhad's position on various Requests.  Specifically, as to Requests Nos. 8, 9,

17   25, 38, and 39, Farhad's counsel stated either that Farhad would produce responsive

18   documents or that Farhad did not have any responsive documents.  (Gizer Decl., ¶

19   22).  However, Mattel ignored this letter, along with the agreements reached in the

20   meet and confer discussions, when it filed this motion to compel.  If Mattel had

21   concluded its meet and confer with Farhad to conclusion, as required by the Federal

22   Rules of Civil Procedure, it would have recognized that the only disputes that remain

23   are those that relate to Requests seeking Farhad's private financial information, and

24   that there was hope to resolve these as well.

25        Accordingly, because Requests Nos. 8, 9, 25, 38 and 39 are no longer in

26   dispute, and in fact, were resolved prior to the filing of this motion, Mattel's motion to

27   compel must be denied as to these Requests.

28

2.  **Mattel's Motion Should Be Denied As To Requests Nos. 1, 2, 4, and 16 Because Farhad Produced All Relevant Documents From The Larian v. Larian Disputes**

Farhad agreed to, and produced, all pleadings filed in the Larian v. Larian disputes, and all documents from the Larian v. Larian disputes that relate to Bratz, including its origin, Carter Bryant and Mattel.  According to Mattel's own motion, these are the documents from the Larian v. Larian disputes that Mattel believes are relevant.  (Gizer Decl., ¶ 5).  Although Farhad has produced the documents Mattel states that it is seeking, Mattel has moved to compel responses to Requests Nos. 1, 2, 4 and 16.

When the parties initially met and conferred on November 20, 2007, Farhad counsel pointed out that Requests Nos. 1 and 2 were overbroad in that they sought all documents related to the Larian v. Larian disputes regardless of whether the documents were relevant to the Mattel v. Bryant litigation.[7]  The Requests contain no limiting language, and therefore, would require Farhad to produce numerous irrelevant documents regarding matters that have nothing to do with the issues in the pending litigation.  In fact, Request No. 2 seeks all documents related to "any dispute" between Farhad and Isaac, regardless of whether it relates to the Mattel v. Bryant issues or even a legal proceeding, and as phrased, could include arguments between Farhad and Isaac regarding wholly unrelated family matters.

For this reason, Farhad's counsel proposed limiting these Requests to documents that relate to Bratz, including its origin, Carter Bryant and Mattel.  In addition, Farhad offered to produce all pleadings from the Larian v. Larian disputes. Farhad's counsel believed that an agreement was reached based on this proposed limitation as these Requests were not mentioned during the parties November 27,

[7] Requests Nos. 4 and 16 were never discussed in the meet and confers between counsel because Mattel's counsel asked to defer discussion of these requests.  Thus, the parties never met and conferred on these requests prior to the filing of Mattel's motion to compel.

LARIAN'S MEMO P'S & A'S IN OPPOSITION TO MATTEL'S MOTION TO COMPEL FARHAD LARIAN TO PRODUCE DOCUMENTS CV 04-09049 SGL (RNBx)

LAW OFFICES
CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1   2007 meet and confer discussions. In fact, based on this limitation, Farhad produced

2   responsive documents the same day Mattel filed this motion to compel, and also

3   produced the transcript of the meeting between Ernest Dutcher, Morad Zarabi and an

4   unidentified third person, which Mattel inaccurately complains was not produced.

5          The remaining documents that Mattel stated that it would like produced are

6   being withheld at this point because they are covered by one of the two protective

7   orders in the Larian v. Larian matters. Farhad has not hid the existence of these

8   documents from Mattel. Rather, Farhad was very candid with Mattel regarding the

9   documents in his possession which are covered by protective orders and why they

10  were being withheld. (Gizer Decl., ¶ 12). Although he has no obligation to do so, in

11  a good faith effort to resolve this dispute, Farhad indicated he was willing to amend

12  the protective orders to include Mattel and allow production of those documents as

13  long as certain reasonable safeguards were met. (Gizer Decl., ¶ 12). Thus, there is

14  no merit to Mattel's contention that Farhad is being selective in his production of

15  documents. In short, Farhad has produced all relevant documents from the Larian v.

16  Larian matters that are not privileged or otherwise covered by a protective order and

17  has acted in good faith to attempt to resolve the dispute by agreeing to amend the

18  protective orders in Larian v. Larian. (Gizer Decl., ¶ 11, 12 and 28). Accordingly,

19  the Court should deny Mattel's motion as to Requests Nos. 1, 2, 4, and 16.

20  3.     **In Response To Requests Nos. 17-19, Farhad Agreed To**

21         **Produce All Appraisal Documents Covered By The Protective**

22         **Orders In The Larian v. Larian Disputes If The Protective**

23         **Orders Are Amended To Include Mattel**

24         Farhad produced all documents related to the appraisals of MGA made in

25  connection with Larian v. Larian disputes, except those documents covered by the

26  protective orders in the Larian v. Larian disputes. Regarding the documents covered

27  by the protective orders in Larian v. Larian, Farhad agreed to amend the protective

28  orders to include Mattel in a good faith effort to comply with Mattel's subpoena and

1   resolve this discovery dispute although he has no obligation to do so.  If the

2   amendment to the protective orders are effectuated, Farhad is willing to produce the

3   remaining documents related to the appraisals of MGA.[8]  Farhad only came into

4   receipt of these documents through the counsel for Morad Zarabi and Ernest Dutcher,

5   and thus, can only produce these documents after the protective orders in Larian v.

6   Larian are amended.

7        These are the documents Mattel seeks through Requests Nos. 17-19, and

8   therefore, there is no dispute regarding these Requests.  If Mattel completed its meet

9   and confer discussions with Farhad, it would have learned this fact.  When the parties

10  initially discussed Requests Nos. 17-19, Farhad's counsel informed Mattel's counsel

11  that it could not produce any documents covered by the protective orders in the Larian

12  v. Larian disputes unless and until those protective orders were amended to include

13  Mattel.  Mattel understood this position.  (Gizer Decl., ¶ 12).

14       As to the documents not covered by the protective orders, the parties discussed

15  their relevancy and Farhad's counsel represented that they would consider Mattel's

16  relevancy arguments and would get back to Mattel.  Had the parties gone forward

17  with the final meet and confer conference call that was proposed just two days prior

18  to the filing of this motion, Mattel would have realized that these Requests did not

19  need to be addressed in a motion to compel.  Farhad even attempted to communicate

20  his position in his December 6, 2007 letter to Mattel's counsel when he realized that

21  Mattel was breaking off further meet and confer sessions.  However, in its rush to file

22  this premature motion, Mattel unnecessarily included these Requests in its motion.

23  (Gizer Decl., ¶ 25, Ex. "N").

24       Accordingly, since Farhad has complied with his discovery obligations as to

25  Requests Nos. 17-19, Mattel's motion to compel must be denied as to these Requests.

26

27

28  [8] This agreement is reflected in multiple letters and Farhad's supplemental response to Mattel's subpoena.

LAW OFFICES
CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

**B.**   <u>Requests Nos. 23, 24, and 41 Seeking Farhad's Financial</u>
<u>Information Are Overbroad, Harassing, And Cumulative And</u>
<u>Invade The Right To Privacy of Farhad And His Family Members</u>

Requests 23 and 24 seek all documents, from 1999 to the present, regarding payments made or anything of value given between Farhad, Isaac, their family members and MGA. Request No. 41 seeks identifying information for every bank account, telephone subscription service and e-mail account that Farhad has had since 1999. Mattel claims this information is relevant because it could potentially establish Farhad's bias and credibility. As a threshold issue, there appears to be no purpose to try to establish Farhad's purported bias since he is Mattel's witness. The central purpose of bias/prejudice impeachment is to diminish the credibility of the witness to be impeached. *Behler v. Hanlon*, 199 F.R.D. 553, 557 (D. Md. 2001). But, Farhad is not an adverse witness to Mattel. MGA has never asked Farhad to testify on their behalf. Only Mattel intends to call Farhad as a witness in this case. Thus, why Mattel seeks to impeach its own witness is a conundrum and demonstrates that Mattel's Requests are improper.

However, even if it is advantageous for Mattel to attack Farhad's credibility, the scope of Mattel's Requests go far beyond what Mattel is entitled to through discovery. Discovery has ultimate and necessary boundaries, and requests directed at a matter not reasonably calculated to lead to discovery of admissible evidence is not within scope of discovery under Rule 26(b)(1) of Federal Rules of Civil Procedure. *Oppenheimer Fund, Inc. v Sanders*, 437 US 340, 351-352 (1978). Thus, when relevancy is not apparent, it is burden of party seeking discovery to show relevancy of discovery request. *Leighr v Beverly Enterprises-Kansas* (1996, D.C. Kan.) 164 F.R.D. 550, 552.

The mere fact that impeachment information is discoverable does not mean that Mattel is entitled to "unfettered discovery" of purported impeaching information, such as payments and gifts Farhad and his family have received from other family

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

LARIAN'S MEMO P'S & A'S IN OPPOSITION TO MATTEL'S MOTION TO COMPEL FARHAD LARIAN TO PRODUCE DOCUMENTS CV 04-09049 SGL (RNBx)

1   members and MGA. Fed. R. Civ. P. 26(b)(2); *Behler*, 199 F.R.D. at 561 ("[while] a

2   party legitimately may seek discovery of facts that relate to…impeachment…the mere

3   fact that such information falls within the scope of legitimate discovery does not

4   mean that parties are entitled to unfettered discovery of impeaching information, by

5   whatever means of discovery they seek."). Even if discoverable, the court may

6   restrict or prevent requested discovery if it determines that the discovery would be

7   burdensome, cumulative, unnecessarily costly, or insufficiently probative to the issues

8   in the litigation to warrant the expense of production. *Behler*, 199 F.R.D. at 561

9   (citing *Thompson v. HUD*, 199 F.R.D. 168, 2001 WL 258390, at *2-3 (D. Md. 2001).

10  These restrictions on discovery may even be broader when the discovery requests are

11  directed at a non-party. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal.

12  2005) (citing *Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649

13  (9th Cir. 1980) (discovery should be "more limited to protect third parties from

14  harassment, inconvenience, or disclosure of confidential information.")).

15       Aside from its conclusory statement that Requests Nos. 23, 24 and 41 are

16  relevant to "bias," Mattel makes no attempt to explain how every payment or gift

17  made between that Isaac, Farhad, their family members and MGA since 1999 is

18  relevant. The overbreadth and harassing nature of Mattel's Requests are compounded

19  given the fact that Mattel is seeking documents since 1999, five years before this

20  action was filed and six years before MGA became a party in this action. Mattel fails

21  to explain how any payment MGA or Isaac made to Farhad or his family members

22  before this action was filed or MGA was a party to it is relevant to Farhad's credibility

23  as a witness in this action. Mattel does not explain how a birthday gift from Farhad to

24  Isaac's children shows bias or how a loan of money between family members affects

25  Farhad's credibility or how the salary Farhad received from MGA and its predecessor

26  company can be used for impeachment, since this was well before MGA's

27  involvement in this lawsuit. Yet all of these scenarios would be covered by Mattel's

28  overbroad Requests.

611929.2                                    17

1    Mattel only claims that Judge Infante approved a similar document request that
2    was propounded on Isaac and MGA. However, Mattel fails to recognize that Isaac
3    and MGA are parties, whereas Farhad is a non-party. As a non-party, the Court must
4    analyze the scope of Mattel's request differently. As previously stated, the restrictions
5    on discovery are even broader when the discovery requests are directed at a non-
6    party. *Moon*, 232 F.R.D. at 638 (citing *Dart Indus. Co., Inc.*, 649 F.2d at 649
7    (discovery should be "more limited to protect third parties from harassment,
8    inconvenience, or disclosure of confidential information.")). Mattel made no attempt
9    to narrowly tailor these Requests to issues that are relevant to the <u>Mattel v. Bryant</u>
10   litigation. The logical explanation for Mattel's failure to meet its burden is that it
11   cannot do so.

12   Farhad has already produced all non-privileged documents which could
13   potentially show bias, including the amount of money he was paid for his shares of
14   MGA, his consulting agreement with MGA after he sold his shares, and the fee
15   agreement between MGA and him. Requiring Farhad to search for and produce
16   additional payment documents would only result in Farhad producing cumulative
17   information, which is not only irrelevant but violates the right to privacy of Farhad
18   and his family members. Farhad and Isaac are family members, and family members
19   exchange many payments and gifts. To require Farhad, a non-party, to search for
20   receipts documenting every gift he has ever given to Isaac and his family since 1999
21   or to search through cards that accompanied gifts to him and his children from the
22   Larian family is an unthinkable burden and terribly harassing, especially when taking
23   into account the low level of relevancy of these documents and the fact that Farhad is
24   a non-party. If Mattel wishes to question Farhad further about payments he received
25   from Isaac and MGA, it can certainly do so at Farhad's deposition, which would be a
26   far less intrusive mean of obtaining this information. Fed. R. Civ. P. 26(b)(2)(C)(i).
27   Moreover, Farhad is entitled to additional protections from discovery since
28   these Requests seek personal financial information which is protected by the

LAW OFFICES
CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1  California Constitution and is recognized as private by federal courts.  Cal. Const.,

2  art. I, § 1; *Valley Bank of Nevada v. Superior Court,* 15 Cal.3d 652, 656 (1975); *Kelly*

3  *v. City of San Jose,* 114 F.R.D. 653, 656 (N.D. Cal. 1987)(Federal courts should give

4  "some weight" to privacy rights that are protected by state constitutions); *Soto v. City*

5  *of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995)(A [person's] right to privacy in his

6  financial information has been specifically recognized by federal courts.).  When a

7  privacy right is asserted as an objection to discovery, the Court must balance the need

8  for the information versus the privacy right asserted.  *Soto,* 162 F.R.D. at 616.  Mattel

9  made no effort to balance Farhad's privacy interest versus the need for this

10  information in its moving papers.  Thus, Mattel's Requests for financial information

11  of Farhad and his family members must be denied.

12       As already stated above, there is little to no need for the information sought by

13  Mattel because most of the documents covered by these Requests would not go to

14  bias.  Further, Farhad already produced numerous documents showing payments he

15  received from Isaac and MGA, and the fee agreement between MGA and him for this

16  case.  These are the only documents which Farhad is aware of that potentially go to

17  bias.  (Gizer Decl., ¶ 28, Ex. "N" and "P").  On the other side, the intrusion into

18  Farhad's private affairs is great.  Farhad should not be required to produce documents

19  regarding gifts exchanged between family members, turn over every paycheck stub he

20  received as an employee of MGA, or disclose every account number he has at a bank

21  or financial institution.  When the balance tips so overwhelmingly on the side of a

22  person's right to privacy, a Court cannot order disclosure of the information.

23       Farhad's counsel raised these arguments with Mattel's counsel and proposed

24  limiting the Requests to those payments or gifts that evidence compensation in

25  relation to this case, but Mattel refused this reasonable proposal.  (Gizer Decl., ¶ 16).

26  Accordingly, since Requests Nos. 23, 24 and 41 are unreasonably overbroad and

27  harassing, and Mattel refused to limit their scope, Mattel's motion should be denied as

28  to these Requests.

611929.2

LARIAN'S MEMO P'S & A'S IN OPPOSITION TO MATTEL'S MOTION TO COMPEL FARHAD LARIAN TO
PRODUCE DOCUMENTS CV 04-09049 SGL (RNBx)

**C.**    **Farhad's Privilege Log Complies With The Federal Rules Of Civil Procedure Rule 26(b)**

Farhad is in possession of approximately three banker's box worth of documents that are responsive to Mattel's Requests, but are protected by the attorney-client and/or attorney work product privileges, or covered by a protective order in the <u>Larian v. Larian</u> matters[9]. In such a situation, where the amount of privileged documents is voluminous, Rule 26(b) of Federal Rules of Civil Procedure permits a party to submit a privilege log by category. The advisory comments to the 1993 amendment to Rule 26(b) state that a description of documents by category is appropriate where it would be "unduly burdensome" to provide a document by document privilege log. Specifically, the advisory comment states, "Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories."

These same advisory comments are cited in multiple cases. These authorities hold that it is considered "unduly burdensome" for a non-party to provide a document by document privilege log when there are numerous protected documents. It would be expensive for a non-party to prepare such a log. Stated differently, the amount of protected documents does not have to be in the hundreds of thousands to excuse a non-party from providing an item by item privilege log. Rather, a non-party is excused from providing a document by document privilege log when there are several hundred, if not thousands, of protected documents, which is precisely the case here. *SEC v. Thrasher*, 1996 WL 125661 (S.D. N.Y. 1996)(Defendant's assertion that the files sought were extremely voluminous and that a document-by-document privilege log would be a long and fairly expensive project for counsel to undertake was

---

[9] Farhad is in possession of one bankers' box of documents covered by attorney work product and/or attorney-client privileges, and two bankers' boxes of documents covered by the <u>Larian v. Larian</u> protective orders.

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1   sufficient to justify a categorical log); *Fifty-Six Hope Road Music, Ltd. v. Mayah*

2   *Collections, Inc.*, 2007 U.S. Dist. Lexis 43012 (2007 Nev.)(A categorical privilege

3   log was appropriate were the amount of protected documents were in the hundreds

4   and perhaps thousands).

5        We are not dealing with a few privileged documents here, but are dealing with

6   thousands of documents.  In such a case, Farhad is permitted to provide a categorical

7   privilege log.  Further, Farhad even went beyond his obligations and provided a

8   document by document privilege log when possible.  As reflected in Farhad's

9   privilege log, he provided dates, names and descriptions where possible for both the

10   categories of documents and the individual documents.  This more than complies with

11   Farhad's discovery obligations, especially considering he is a non-party.

12        As to the specific documents on the privilege log that Mattel refers to in its

13   motion, Farhad responds as follows:

14        1.    "Various e-mails between MGA and its counsel, and e-mails between

15   MGA e-mails at the instruction of counsel regarding trademark and copyright

16   registrations for Bratz."  As Mattel is well aware, Farhad remained a consultant for

17   MGA following the sale of his ownership interest, and therefore, it is of no surprise

18   that Farhad possesses such e-mails involving MGA's attorneys.  These e-mails

19   involve attorney-client communications and are privileged.

20        2.    "Draft Declaration of Victoria O' Conner."  This is a draft of a

21   declaration created by one of Farhad's attorneys in the <u>Larian v. Larian</u> dispute and

22   clearly qualifies as work product.  Farhad cannot recall which of the specific attorneys

23   or firms, that represented him, drafted the declaration, but recalls it was drafted by

24   one of his counsel.

25        3.    "Chart summarizing Morad's alleged corruption, conflicts of interest,

26   biases, concealments and misconduct, and applicable evidence."  Again, Farhad

27   recalls that this chart was drafted by an attorney to aid him in the <u>Larian v. Larian</u>

28   dispute, but does not recall which attorney or firm drafted it.  However, as a chart

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

Exhibit ___ PAGE __

LARIAN'S MEMO P'S & A'S IN OPPOSITION TO MATTEL'S MOTION TO COMPEL FARHAD LARIAN TO
PRODUCE DOCUMENTS CV 04-09049 SGL (RNBx)

1  summarizing an attorney's thoughts and strategies, it certainly qualifies as work
2  product.

3      Thus, there is nothing deficient about Farhad's privilege log nor is Farhad
4  withholding non-privileged documents.  The Court should therefore deny Mattel's
5  request for a document by document privilege log.

6  **D.   Mattel And Its Counsel Should Be Sanctioned, Jointly and Severally,**
7          **For Filing This Frivolous Motion**

8      The party who prevails on a motion to compel is entitled to its reasonable
9  expenses, including attorney's fees, unless the Court finds that the losing party's
10  position is "substantially justified" or "other circumstances make an award of
11  expenses unjust."  Fed. R. Civ. P. 37(a)(4)(A).  Here, Mattel has no justification for
12  filing this motion as to those Requests that were resolved and those Requests that the
13  parties were still discussing.  Regarding those Requests that are actually in dispute—
14  Requests Nos. 23, 24 and 41—, these Requests are horribly overbroad, harassing,
15  cumulative, and not reasonably calculated to the lead to the discovery of admissible
16  evidence, and violate the privacy rights of Farhad and his family members.

17      Farhad's counsel suggested a reasonable limitation to these Requests so Mattel
18  could obtain the documents it was really seeking—those documents that would
19  establish possible bias in the Mattel v. Bryant litigation.  Mattel's counsel rejected this
20  reasonable limitation without justification and instead proposed an absurd limitation
21  to exclude gifts less than $50.00. (Gizer Decl., ¶ 16).  As explained above, this
22  unreasonable limitation barely scratches the surface of the irrelevant payments
23  between Farhad, Isaac and their family members that would in no way show bias.
24  Accordingly, Mattel made no good faith attempt to resolve these Requests before
25  filing this motion and rejected Farhad's reasonable limitations.

26      Thus, rather than making a good faith effort to resolve these discovery disputes
27  informally, Mattel rushed to file its motion to compel without properly meeting and
28  conferring, and without considering Farhad's reasonable suggestions.  Thus, the Court

611929.2

22

1  should sanction Mattel and its counsel, jointly and severally, for this abusive conduct

2  in the amount of $13,332.50.  (Gizer Decl., ¶ 31).

3  **IV.    CONCLUSION**

4        Based on the foregoing reasons, Farhad Larian respectfully requests that

5  Mattel's Motion to Compel be denied in its entirety, and Mattel and its counsel should

6  be ordered to pay sanctions, jointly and severally, for their bad faith conduct.

7

8  Dated:  December 26, 2007                Patricia L. Glaser

9                                           Alisa Morgenthaler Lever
                                            Scott E. Gizer

10                                          CHRISTENSEN, GLASER, FINK, JACOBS,
                                              WEIL & SHAPIRO, LLP

11

12                                          By:

13                                              Scott E. Gizer
                                            Attorneys for Non-Party Farhad Larian

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  5  PAGE  85

611929.2

LARIAN'S MEMO P'S & A'S IN OPPOSITION TO MATTEL'S MOTION TO COMPEL FARHAD LARIAN TO
PRODUCE DOCUMENTS CV 04-09049 SGL (RNBx)

**PROOF OF SERVICE**
**[Carter V. Mattel, Inc.]**

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

On December 26, 2007, I served the foregoing document(s) described as: **NON-PARTY FARHAD LARIAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL FARHAD LARIAN TO PRODUCE DOCUMENTS; REQUEST FOR SANCTIONS** on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

Michael T. Zeller, Esq.
Juan Pablo Alban, Esq.
QUINN EMANUEL URQUHART
   OLIVER & HEDGES, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA  90017
Fax No.: (213) 443-3100

☐  (BY MAIL)  I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.  This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☒  (BY PERSONAL SERVICE)  I caused such envelope to be delivered by hand to the offices of the above named addressee(s).

☐  (BY E-MAIL)  I caused such documents to be delivered via electronic transmission to the offices of the addressee(s) at the e-mail addresses listed.

Executed this 26th day of December 2007, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

M. J. Barrett

EXHIBIT 5 PAGE 86

613581

**PROOF OF SERVICE**
**[Carter V. Mattel, Inc.]**

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

    On December 26, 2007, I served the foregoing document(s) described as: **NON-PARTY FARHAD LARIAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL FARHAD LARIAN TO PRODUCE DOCUMENTS; REQUEST FOR SANCTIONS** on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

Alan N. Goldberg, Esq.
STERN & GOLDBERG
6345 Balboa Boulevard
Suite 200
Encino, California 91316

Jose Allen, Esq.
Amy Park, Esq.
SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
Four Embarcadero center
Suite 3800
San Francisco, California 94111

[X]    (BY MAIL)  I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

[ ]    (BY E-MAIL)  I caused such documents to be delivered via electronic transmission to the offices of the addressee(s) at the e-mail addresses listed.

Executed this 26th day of December 2007, at Los Angeles, California.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

M. J. Barrett

EXHIBIT 5 PAGE 87

613581

**EXHIBIT 6**

CALENDARED

RECEIVED

NOV 2 7 2007

1 | **OVERLAND BORENSTEIN SCHEPER & KIM LLP**
MARK E. OVERLAND (State Bar No. 38375)
2 | moverland@obsklaw.com
DAVID C. SCHEPER (State Bar No. 120174)
3 | dscheper@obsklaw.com
ALEXANDER H. COTE (State Bar No. 211558)
4 | acote@obsklaw.com
300 South Grand Avenue, Suite 2750
5 | Los Angeles, CA 90071-3144
Telephone: (213) 613-4655
6 | Facsimile: (213) 613-4656

7 | Attorneys for
Carlos Gustavo Machado Gomez

8

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

11

12 | CARTER BRYANT                          CASE NO. 04-9049 SGL (RNBx)

13 |        Plaintiff,                      Consolidated with CV 04-9059 and
                                           CV 05-2727
14 |        v.
                                           **[DISCOVERY MATTER]**
15 | MATTEL, INC.,
                                           **[Improperly Filed Before Discovery
16 |        Defendant.                      Master Hon. Edward Infante (Ret.)]**

17 |                                        **CARLOS GUSTAVO MACHADO
                                           GOMEZ'S MEMORANDUM OF
18 |                                        POINTS AND AUTHORITIES IN
                                           OPPOSITION TO MATTEL, INC.'S
19 | AND CONSOLIDATED CASES                 MOTION TO COMPEL (1)
                                           DEPOSITION OF CARLOS
20 |                                        GUSTAVO MACHADO GOMEZ
                                           [AND] (2) CONSENT TO
21 |                                        PRODUCTION OF ELECTRONIC
                                           MAIL MESSAGES**
22

23

24

25

26

27

28 |                                        EXHIBIT 6 PAGE 88

11-26

MACHADO'S OPPOSITION TO MATTEL'S MOTION TO COMPEL

## MEMORANDUM OF POINTS AND AUTHORITIES

1  As counsel for Mattel is well aware, the discovery master has no jurisdiction
2  over the present motion or over Mr. Machado. (Corey Decl. Ex. 26 at 2.)  The
3  discovery master's authority for resolving discovery disputes between the parties
4  derives entirely from a single source: the December 6, 2006 *Stipulation For*
5  *Appointment of a Discovery Master* ("Stipulation").  Mr. Machado was not a party
6  to this or any other action against Mattel at that time, and is not a signatory to the
7  Stipulation.  In fact, Mr. Machado was not named as a party until January 12, 2007.
8  (Cote Decl. ¶ 2; Ex. A.)  Moreover, Mattel has already conceded that Mr. Machado
9  was not served with process until, at the earliest, March 26, 2007.  (Cote Decl. Ex.
10  B.)  As a result, Mr. Machado has never consented to the discovery master's
11  appointment.

12  "The court must give the parties notice and an opportunity to be heard before
13  appointing a master." Fed. R. Civ. P. 53(b)(1).  Similarly, the appointment must be
14  supported by either specific findings, *see* Fed. R. Civ. P. 53(a)(1)(B)-(C), or by the
15  consent of the parties, *see* Fed. R. Civ. P. 53(a)(1)(A).  Here, Mr. Machado was
16  never afforded an opportunity to be heard regarding the discovery master.  Nor has
17  the Court made any of the findings required under Fed. R. Civ. P. 53(a)(1)(B)-(C).
18  As a result, the only authority for the discovery master's jurisdiction is the parties'
19  consent.  Yet, Mr. Machado has never consented to the appointment of the discovery
20  master.  Accordingly, this matter cannot be heard by the discovery master.

21  Nor can Mattel object to this result. At the time it negotiated and executed the
22  Stipulation, Mattel had already cemented its plan to bring suit against Mr. Machado.
23  A month earlier, on November 20, 2006, Mattel had filed an amended complaint,
24  naming Mr. Machado as an adverse party. (Cote Decl. ¶ 2, Ex. A.)  However,
25  Mattel never sought to obtain Machado's consent to the appointment of the
26  discovery master.  Nor was Machado under any obligation to object at that time.
27  "[O]ne becomes a party officially, and is required to take action in that capacity,

2

EXHIBIT __6__ PAGE __89__

1  only upon service of a summons or other authority-asserting measure stating the

2  time within which the party served must appear and defend.... [T]he summons

3  continues to function as the *sine qua non* directing an individual or entity to

4  participate in a civil action or forgo procedural or substantive rights." *Murphy*

5  *Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350-351 (1999).  Prior to

6  service, which did not occur, at the earliest, until four months after the Stipulation

7  was signed, Mr. Machado had no role in the litigation.

8      Consequently, any further discovery motions brought by or against Mr.

9  Machado must be brought before the Hon. Robert N. Block, in conformity with Fed.

10  R. Civ. P. 37 and the appurtenant Local Rules governing the filing of motions to

11  compel, as provided by the Court's standing order.

12  DATED: November 26, 2007    OVERLAND BORENSTEIN SCHEPER &
13      KIM LLP
    MARK E. OVERLAND
14      DAVID C. SCHEPER
15      ALEXANDER H. COTE

16

17  By: _____
18      Alexander H. Cote
19      Attorneys for CARLOS GUSTAVO
    MACHADO GOMEZ

3

MACHADO'S OPPOSITION TO MATTEL'S MOTION TO COMPEL

EXHIBIT 6 PAGE 90

**EXHIBIT 7**

PRIORITY SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date: October 31, 2007
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS

========================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                         Theresa Lanza
Courtroom Deputy Clerk             Court Reporter

ATTORNEYS PRESENT FOR CARTER       ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Christa Martine Anderson           John Quinn
Matthew M. Werdegar                Jon D. Corey
                                   Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:         ATTORNEY PRESENT FOR CARLOS
                                   GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan                    Alexander H. Cote
Carl A. Roth

PROCEEDINGS:   ORDER REGARDING STATUS CONFERENCE

     The Court held a status conference to consider the current schedule set for Phase 1 of the
consolidated cases as well as the issue of the selection of a settlement officer for both Phase 1
and Phase 2 of the consolidated cases.

     For reasons discussed on the record, the Court enters a two-week STAY in these actions,
beginning November 1, 2007, and continuing through November 14, 2007. During that time, the
parties shall serve no discovery requests (including subpoenas) on parties or third parties. The
obligation to respond to any outstanding discovery requests is likewise suspended for that time
frame. No depositions shall be conducted during this time. The matters to be heard before Judge
Infante, the discovery master herein, are to be rescheduled to a date determined by Judge Infante,

MINUTES FORM 90                              Initials of Deputy Clerk __jh_____
CIVIL -- GEN                        1        Time: 00/20

EXHIBIT 7 PAGE 91          **EXHIBIT 18 PAGE 82**

provided, however, that such date is no earlier than November 26, 2007, and that no opposition or reply papers may be required to be filed during the pendency of the stay.

The Court CONTINUES the November 19, 2007, hearing on the Motion For Leave to Serve A Supplemental Interrogatory to December 3, 2007, at 10:00 a.m.

The current schedule regarding Phase 1 of the trial in these consolidated actions is modified as follows:

| | |
|---|---|
| Fact discovery cutoff: | 01/28/08 |
| Initial Expert Reports: | 02/11/08 |
| Rebuttal Expert Reports: | 03/17/08 |
| Last date for settlement conference: | VACATED (see below for Court's directive regarding mandatory settlement procedures) |
| Expert discovery cutoff: | 03/31/08 |
| Dispositive Motions hearing cutoff: | 03/31/08 @ 10:00 a.m. |
| Pretrial conference order and associated trial documents including proposed jury instructions: | 04/21/08 |
| Filing of Motions in Limine: | 05/05/08 |
| Pretrial conference: | 05/05/08 @ 11:00 a.m. |
| Hearing on Motions in Limine and Jury Instructions: | 05/19/08 @ 11:00 a.m. |
| Trial: | 05/27/08 @ 9:00 a.m. |

The schedule for Phase 2, previously set by the Court by Order filed February 22, 2007, in the case captioned MGA Entertainment, Inc. v. Mattel, Inc., et al., CV 05-02727, is VACATED. The Court will consider the scheduling of Phase 2 at a later date. However, the Court DENIES MGA's request to delay or otherwise bifurcate discovery regarding Phase 2 issues.

At the status conference, the parties acknowledged on the record their mutual agreement to the selection of Ambassador Pierre-Richard Prosper as the settlement officer for these

MINUTES FORM 90
CIVIL -- GEN                                  2                    Initials of Deputy Clerk __jh_____
                                                                   Time: 00/20

EXHIBIT 7 PAGE 92     EXHIBIT 18 PAGE 93

consolidated cases, and the Court hereby APPOINTS him in that capacity.  Counsel are directed to contact Ambassador Prosper to schedule a settlement conference on or before December 1, 2007. The settlement conference is to be directed towards resolution of both phases of this litigation. Counsel are ORDERED to carefully and diligently follow Ambassador Prosper's directions concerning preparation for and conduct at any settlement conferences.  The parties will be jointly responsible for paying the Ambassador's reasonable and customary rate for services rendered.  A failure to comply with this order, or a failure to provide reasonable compensation to the Settlement Officer upon completion of the mediation, may result in the imposition of appropriate sanctions. Ambassador Prosper is directed to provide a status report to the Court following the conclusion of the settlement efforts.

IT IS SO ORDERED.

c:    Judge Infante
      Ambassador Prosper

MINUTES FORM 90
CIVIL -- GEN                                3                    Initials of Deputy Clerk __jh_____
                                                                Time: 00/20

EXHIBIT 7 PAGE 93    EXHIBIT 18 PAGE 84

# NOTICE PARTY SERVICE LIST

Case No.  CV 04-09049 SGL(RNBx)   Case Title  Carter Bryant v. Mattel, Inc.

Title of Document   Minute Order Issued October 31, 2007

| | | |
|---|---|---|
| | Atty Sttlmnt Officer Panel Coordinator | |
| | BAP (Bankruptcy Appellate Panel) | |
| | Beck, Michael J (Clerk, MDL Panel) | |
| | BOP (Bureau of Prisons) | |
| | CA St Pub Defender (Calif. State PD) | |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | |
| | Case Asgmt Admin (Case Assignment Administrator) | |
| | Catterson, Cathy (9th Circuit Court of Appeal) | |
| | Chief Deputy Admin | |
| | Chief Deputy Ops | |
| | Clerk of Court | |
| | Death Penalty H/C (Law Clerks) | |
| | Dep In Chg E Div | |
| | Dep In Chg So Div | |
| | Federal Public Defender | |
| | Fiscal Section | |
| | Intake Section, Criminal LA | |
| | Intake Section, Criminal SA | |
| | Intake Supervisor, Civil | |
| | PIA Clerk - Los Angeles (PIALA) | |
| | PIA Clerk - Riverside (PIAED) | |
| | PIA Clerk - Santa Ana (PIASA) | |
| | PSA - Los Angeles (PSALA) | |
| | PSA - Riverside (PSAED) | |
| | PSA - Santa Ana (PSASA) | |
| | Schnack, Randall (CJA Supervising Attorney) | |
| | Statistics Clerk | |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

✔ **ADD NEW NOTICE PARTY**
(if sending by fax, mailing address must also be provided)

Name:  Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor):  P.O. Box 581103

Salt Lake City, UT  84158

*E-mail:  prposper@gmail.com

*Fax No.:

* For CIVIL cases only

*JUDGE / MAGISTRATE JUDGE (list below):*

Initials of Deputy Clerk  jh

G-75  (03/07)                    NOTICE PARTY SERVICE LIST

EXHIBIT 7 PAGE 94

EXHIBIT 18 PAGE 85

**EXHIBIT 8**

CONFORMED COPY

1   [Counsel listed on following page]

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11   CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

12              Plaintiff,                 Consolidated with
                                           Case No. CV 04-09059
13        v.                               Case No. CV 05-02727

14   MATTEL, INC., a Delaware
     corporation,                          **DISCOVERY MATTER**

15              Defendant.                 Hon. Edward A. Infante (Ret.)
16                                         Discovery Master

17   AND CONSOLIDATED CASES                **STIPULATION TO ADD PARTIES**
                                           **TO THE STIPULATED**
18                                         **PROTECTIVE ORDER; AND**

19

20                                         ~~[PROPOSED]~~ **ORDER THEREON**

21                                         Phase One Discovery Cut-off:  January
22                                         14, 2008
                                           Phase One Pre-trial Conference:  April
23                                         7, 2008
                                           Phase One Trial Date:  April 29, 2008
24

25

26

27

28

07209/2171055.1                           STIPULATION TO ADD PARTIES TO THE
                                           PROTECTIVE ORDER

EXHIBIT _8_ PAGE _95_

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
  Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8   KEKER & VAN NEST LLP
     Michael H. Page (Bar No. 154913)
9   710 Sansome Street
  San Francisco, CA 94111
10  Telephone: (415) 391-5400
   Facsimile: (415) 397-7188

11

12  Attorneys for Carter Bryant

13  O'MELVENY & MYERS LLP
     Dale Cendali (admitted *pro hac vice*)
     Diana M. Torres (Bar No. 162284)
14     James P. Jenal (Bar No. 180190)
  400 S. Hope Street
15  Los Angeles, California 90017
  Telephone: (213) 430-6000
16  Facsimile: (213) 430-6407

17  Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., Isaac
  Larian and MGAE de México, S.R.L. de C.V.

18

19  LAW OFFICE OF JAMES W. SPERTUS
     James W. Spertus (Bar No. 159825)
20     (Jim@SpertusLaw.com)
  12100 Wilshire Boulevard, Suite 620
21  Los Angeles, CA 90025
  Telephone: (310)826-4700
22  Facsimile: (310)826-4711

23  Attorneys for Carlos Gustavo Machado Gomez

24

25

26

27

28

07205/2171055.1

-2-

EXHIBIT 8 PAGE 96

1    Mattel, Inc. ("Mattel"), Carter Bryant ("Bryant"), MGA Entertainment,

2   Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), MGAE de

3   México, S.R.L. de C.V. (MGA Mexico), Isaac Larian ("Larian") and Carlos Gustavo

4   Machado Gomez ("Machado"), through their respective counsel of record, hereby

5   stipulate and agree as follows:

6    WHEREAS, Mattel, Bryant and MGA entered into a stipulated

7   Protective Order, which was so ordered by the Court on January 14, 2005 (the

8   "Protective Order");

9    WHEREAS, the parties stipulated to a modification of that Protective

10  Order, which was so ordered by the Court on May 15, 2007;

11   WHEREAS, Machado, Larian, MGA Hong Kong and MGA Mexico

12  were formally added as named parties to this case when Mattel filed its Amended

13  Answer and Counterclaims on January 12, 2007;

14   WHEREAS, Larian, MGA Hong Kong and MGA Mexico are

15  represented by the same counsel as MGA;

16   WHEREAS, Machado is represented by different counsel, namely

17  James W. Spertus, Esq.;

18   WHEREAS, the parties agree that Machado's counsel needs to have the

19  same access to documents and other information as the other parties;

20   NOW, THEREFORE, Mattel, Bryant, MGA, Larian, MGA Hong

21  Kong, MGA Mexico and Machado, by and through their respective counsel of

22  record, hereby stipulate and agree as follows:

23   1.    Machado and his counsel, James W. Spertus, Esq., agree to be

24  bound by the terms of the Protective Order, as modified on May 15, 2007, in the

25  same manner and to the same extent as the original parties thereto;

26   2.    All parties consent to the disclosure of previously produced and

27  future productions of materials designated by them as "CONFIDENTIAL,"

28  "CONFIDENTIAL — ATTORNEY'S EYES ONLY" or "HIGHLY

EXHIBIT 8 PAGE 97

1  CONFIDENTIAL - RESTRICTED ATTORNEY'S EYES ONLY" to Machado's

2  counsel, James W. Spertus, Esq., as though Machado was an original party in the

3  case; and

4         3.    Henceforth, all parties to this stipulation and Order, including

5  Machado, shall be deemed parties to, and bound by, the Protective Order as though

6  they were original parties thereto.

7    **IT IS SO STIPULATED.**

8  DATED: July 26, 2007      QUINN EMANUEL URQUHART

9                         OLIVER & HEDGES, LLP

10

11                  By

12                     Michael T. Zeller

13                     Attorneys for Mattel, Inc.

14  DATED: July 25 2007       O'MELVENY & MYERS LLP

15

16                  By

17                     Diana M. Torres

18                     Attorneys for MGA Entertainment, Inc.,

19                     MGA Entertainment (HK) Ltd., Isaac

20                     Larian and MGAE de México, S.R.L. de

21                     C.V.

22  DATED: July ___, 2007     KEKER & VAN NEST LLP

23

24                  By

25                     Michael H. Page

26                     Attorneys for Carter Bryant

27

28

07209/2171055.1                 STIPULATION TO ADD PARTIES TO THE

                             PROTECTIVE ORDER



EXHIBIT 8 PAGE 98

1  CONFIDENTIAL – RESTRICTED ATTORNEY'S EYES ONLY" to Machado's
2  counsel, James W. Spertus, Esq., as though Machado was an original party in the
3  case; and

4          3.     Henceforth, all parties to this stipulation and Order, including
5  Machado, shall be deemed parties to, and bound by, the Protective Order as though
6  they were original parties thereto.

7       IT IS SO STIPULATED.

8  DATED: July ___, 2007       QUINN EMANUEL URQUHART
9                               OLIVER & HEDGES, LLP

10
11                              By _____
12                                 Michael T. Zeller
13                                 Attorneys for Mattel, Inc.

14  DATED: July ___, 2007       O'MELVENY & MYERS LLP
15
16                              By _____
17                                 Diana M. Torres
18                                 Attorneys for MGA Entertainment, Inc.,
19                                 MGA Entertainment (HK) Ltd., Isaac
20                                 Larian and MGAE de México, S.R.L. de
21                                 C.V.

22  DATED: July 26, 2007       KEKER & VAN NEST LLP
23
24                              By _____
25                                 Michael H. Page
                               Attorneys for Carter Bryant

26
27
28

07890/2171035.1

STIPULATION TO ADD PARTIES TO THE
PROTECTIVE ORDER

– 4 –

EXHIBIT 8 PAGE 99



1   DATED: July 25, 2007            LAW OFFICES OF JAMES W. SPERTUS

2

3                                   By

4                                      James W. Spertus
                                       Attorneys for Carlos Gustavo Machado
5                                      Gomez

6

7

8          IT IS SO ORDERED.

9

10  DATED: 8-6-07 , 2007   By

11                                     Hon. Edward Infante (Retired)
                                       Discovery Master
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2171055.1                        -5-                      STIPULATION TO ADD PARTIES TO THE
                                                                 PROTECTIVE ORDER

EXHIBIT 8 PAGE 100

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 6, 2007, I served the attached STIPULATION TO ADD PARTIES TO THE STIPULATED PROTECTIVE ORDER AND ORDER THEREON in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 6, 2007, at San Francisco, California.

_Sandra Chan_

Sandra Chan

EXHIBIT 8 PAGE 101

# NOW LEGAL SERVICE

**FILING / SERVICE OF PROCESS INSTRUCTIONS**

**INVOICE NO. 259125**

L.A. (213) 482-1567 • FAX (213) 482-1572
O.C. (714) 835-6570 • FAX (714) 835-6670
www.nowlegalservices.com

PLEASE CHECK TYPE OF SERVICE REQUESTED

[X] COURT SERVICE   [ ] SERVICE OF PROCESS

PLEASE NOTE ANY SPECIFIC OR TIMELY FILING/SERVICE REQUIREMENTS

7/6/2004

| CHARGE TO | DATE | REFERENCE NUMBER |
|---|---|---|
| QUINN EMANUEL URQUHART 865 SOUTH FIGUEROA STREET # 1000 LOS ANGELES CA 90017 (213) 624-7707 | 8/7/07 | 7209 |

**METHOD OF SERVICE REQUESTED**

[X] RUSH
[ ] SPECIAL PICK UP
[ ] SAME DAY
[ ] NEXT DAY
[ ] RETAINER

RETURN BY
[X] SPECIAL
[ ] SAME DAY
[ ] NEXT DAY
[ ] CALL FROM COURT

COMPLETE BY: _____

| REQUESTED BY: ATTY / SECRETARY / NUMBER | CASE NUMBER |
|---|---|
| Dylan Laura K. | 04-9049 |

PLAINTIFF: Bryant
VS
DEFENDANT: Mattel

COURT ADDRESS: USDC – Riverside –

DOCUMENT TO BE FILED/SERVED:
Stip/order re Adding Parties To Stip. Protective order

[X] FILE   [X] CONFORM   [ ] ISSUE   [ ] CERTIFY
[ ] COURT RESEARCH   [ ] FORM REQUEST   [ ] COPY REQUEST   [ ] OTHER   [ ] RECORD

SPECIAL INSTRUCTIONS / DESCRIPTION OF PERSON (IF KNOWN)
Courtesy copys
Dept. I
Judge Larson

Fees Advanced
Amount _____ Check _____
Amount _____ Check _____
Amount _____ Check _____
Provided by Client
Amount _____ Check _____

PERSONS/ENTITIES TO BE SERVED AND KNOWN ADDRESS
(One Entity Per Invoice) (PLEASE INDICATE NAME EXACTLY AS IT SHOULD APPEAR ON PROOF OF SERVICE)

NAME: _____   NAME: _____
ADDRESS: _____   ADDRESS: _____
PHONE: _____   PHONE: _____
[ ] HOME  [ ] BUSINESS   [ ] HOME  [ ] BUSINESS

SERVICE: [ ] PERSONAL   [ ] POST   [ ] DELIVER   [ ] SUBSTITUTION OK

| HEIGHT | WEIGHT | HAIR | EYES | AGE | RACE | SEX | ADDITIONAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| DATE SERVED | TIME SERVED | PROCESS SERVER | PERSON SERVED | TITLE |
|---|---|---|---|---|
| 8/7/07 | 2:08 | W3 | Filing | |

RETURN COPY

EXHIBIT 8 PAGE 102

**EXHIBIT 9**

RECEIVED

SEP 2 6 2007

1   James W. Spertus, Esq., State Bar No. 159825
    Leah C. Gershon, Esq., State Bar No. 242327
2   **LAW OFFICES OF JAMES W. SPERTUS**
    12100 Wilshire Blvd., Ste. 620
3   Los Angeles, California 90025
    (310) 826-4700-Telephone
4   (310) 826-4711-Facsimile
    jim@spertuslaw.com
5   leah@spertuslaw.com

6   Attorneys for
    Carlos Gustavo Machado Gomez
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11  CARTER BRYANT, an individual          CASE NO.  CV 04-09049 SGL (RNBx)

12                Machado,                (Consolidated with CV 04-9059 and CV
                                          05-2727)
13        v.

14  MATTEL, INC., a Delaware             **COUNTER-DEFENDANT CARLOS**
    Corporation,                         **GUSTAVO MACHADO GOMEZ'S**
15                                        **INITIAL DISCLOSURES**
                                          **PURSUANT TO RULE 26(a)(1)**
16                Defendant.

17                                        Judge:      Hon. Steven G. Larson
                                          Courtroom:  1
18

19  AND CONSOLIDATED ACTIONS            Phase One
                                         Discovery Cut Off:  January 14, 2008
20                                       Pre-Trial Conference:  April 7, 2008
                                         Trial Date:  April 29, 2008
21
                                         Phase Two
22                                       Discovery Cut Off:  March 3, 2008
                                         Pre-Trial Conference:  June 2, 2008
23                                       Trial Date:  July 1, 2008

24

25      TO ALL PARTIES AND THEIR ATTORNEY'S OF RECORD,

26  Counter-Defendant Carlos Gustavo Machado Gomez ("Machado") hereby makes

27  his initial disclosures pursuant to Rule 26(A)(1) of the Federal Rules of Civil

28  Procedure.

                         1

                                    EXHIBIT 9 PAGE 103

Law Offices of James W. Spertus
12100 WILSHIRE BLVD., SUITE 620
LOS ANGELES, CA. CA 90025
TELEPHONE 310-826-4700, FACSIMILE 310-826-4711

Law Offices of James W. Spertus
12100 Wilshire Blvd., Suite 620
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

## PRELIMINARY STATEMENT

Machado has not yet completed discovery or preparation for trial, and has not concluded his analysis of information gathered to date. Machado makes these initial disclosures based upon information reasonably available to him at this time and reserves the right to identify additional documents and witnesses hereafter. Machado will supplement these disclosures as appropriate or necessary. To the extent that prior initial disclosures have been made by MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA Hong Kong"), MGAE de Mexico S.R.L. de C.V. ("MGA Mexico"), Isaac Larian ("Larian"), and Carter Bryant ("Bryant") (collectively, the "MGA Parties"), the instant disclosures hereby incorporate those prior disclosures as though set forth in full herein. These disclosures supplement any such prior disclosures by MGA parties with the additional facts and witnesses described herein. These initial disclosures are based upon information gathered to date and information presently available to Machado and his attorneys at this early stage of litigation.

Because the following disclosures are based upon, and necessarily limited by, the records and information in existence, presently recollected, and thus far discovered in the course of preparing these responses, Machado provides these disclosures without prejudice to his rights to produce additional evidence and to refer to at trial, and at any other hearing, any evidence, facts, documents, things or information not yet discovered, or the relevance of which has not yet been determined. As set forth below, much of the information upon which counsel for Machado relies in making these disclosures is in the Spanish language, and supplemental disclosures will be based upon translations from Spanish language documents. The initial disclosure of the identities of potential witnesses by Machado shall not, in any way, be deemed to be a representation that additional

2

EXHIBIT __9__ PAGE _104_

1  witnesses do not exist, and this disclosure is subject to Machado's identification

2  of additional individuals with knowledge of facts relevant to this case.

3  ### INITIAL DISCLOSURES

4  **(A)    The name and, if known, the address and telephone number of**

5  **each individual likely to have discoverable information that the disclosing**

6  **party may use to support its claims or defenses, unless solely for**

7  **impeachment, identifying the subjects of the information.**

8  **Response:**

9  Machado hereby discloses that judicial proceedings presently underway in

10  Mexico have revealed that (1) Mattel granted permission to Machado in its

11  "Manual of Conflicto de Intereses" to make copies of the materials Mattel alleges

12  in its Second Amended Answer were "stolen" by Machado and others from

13  Mattel, (2) Mattel unlawfully read Machado's emails and private

14  communications without a Court order in violation of Article XVI of the

15  Mexican Constitution; and (3) Upon learning of Machado's decision to leave

16  Mattel's employ, and recognizing that Mattel's "Manual of Conflicto de

17  Intereses" granted permission to Machado to make copies of the materials at

18  issue in this litigation, Mattel attempted to force Machado to sign a new

19  document prohibiting the copying of the materials at issue by withholding

20  Machado's earned salary unless Machado signed the new document.  Ultimately,

21  Machado had to utilize the Mexican judicial process to obtain from Mattel the

22  salary he had earned from Mattel.

23  Machado is actively working to identify witnesses to the above-described

24  events, and will supplement these initial disclosures when the people who are

25  likely to have discoverable information related to these events are identified.

26  **(B)    A copy of, or a description by category and location of, all**

27  **documents, data compilations, and tangible things that are in the possession,**

28

Law Offices of James W. Spertus
12100 Wilshire Blvd., Suite 620
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

3

Law Offices of James W. Spertus
12100 Wilshire Blvd. Suite 620
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

1    custody, or control of the party, and that the disclosing party may use to

2    support its claims or defenses, unless solely for impeachment.

3    **Response:**

4          To the extent that documents have been produced by the MGA Parties,

5    Machado hereby incorporates those disclosures as though set forth fully herein,

6    including any production of documents that may have been produced by the

7    MGA parties at any time during the litigation of this case. In addition, Machado

8    is actively trying to identify and gather additional documents that reveal that

9    (1) Mattel granted permission to Machado in its "Manual of Conflicto de

10   Intereses" to make copies of the materials Mattel alleges in its Second Amended

11   Answer were "stolen" by Machado and others from Mattel, (2) Mattel unlawfully

12   read Machado's emails and private communications without a Court order in

13   violation of Article XVI of the Mexican Constitution; and (3) Mattel attempted

14   to force Machado to sign a new document prohibiting the copying of the

15   materials at issue in this case by withholding Machado's earned salary unless

16   Machado signed the new document.

17         Although discovery is ongoing and continuing, Machado attaches the

18   following documents as a basis for the claims set forth above, and will

19   supplement this disclosure in the future as additional materials are translated and

20   made available to counsel for Machado:

21       1.    Mattel's Manual of Conflicto de Intereses;

22       2.    COMPARECENCIA DEL C. JAIME ELÍAS DEL 6 DE MAYO

23              DE 2005, A LAS 10:00 HORAS ANTE EL LIC. EDGAR ARANA

24              RODRÍGUEZ;

25       3.    Statement by FRANCISCO JAVIER TIBURCIO CELORIO;

26       4.    A Court Order compelling Mattel to pay Machado salary due

27              Machado by Mattel.

28

EXHIBIT 9 PAGE 106

4

Law Offices of James W. Spertus
12100 Wilshire Blvd., Suite 620
Los Angeles, CA, CA 90025
Telephone 310-824-4700; Facsimile 310-826-4711

1    **(C)**    **A computation of any category of damages claimed by the**

2    **disclosing party, making available for inspection and copying as under Rule**

3    **34 the documents or other evidentiary material, not privileged or protected**

4    **from disclosure, on which such computation is based, including material**

5    **bearing the nature and extent of injuries suffered.**

6    **Response:**

7        Discovery is ongoing and continuing and Machado reserves the right to

8    supplement and/or amend this response in the future.

9    **(D)**    **For inspection and copying as under Rule 34 any insurance**

10    **agreement  under which any person carrying on an insurance business may**

11    **be liable to satisfy part of all of a judgment which may be entered in the**

12    **action or to indemnify or reimburse for payments made to satisfy the**

13    **judgment.**

14    **Response:**

15        Discovery is ongoing and continuing and Machado reserves the right to

16    supplement and/or amend this response in the future.

17    **(E)**    **The identify of any known expert witness the party intends to**

18    **call, together with the expert's qualifications, a statement of the substance of**

19    **the expert's expected testimony, and a summary of the grounds for the**

20    **expert's opinion.**

21    **Response:**

22        Machado objects to subsection 26(A)(2) based on the fact that it seeks to

23    invade the attorney-client and attorney work product privileges.  Discovery is

24    ongoing and continuing and Machado reserves the right to supplement and/or

25    amend this response in the future.

26    //

27    //

28    //

EXHIBIT 9 PAGE 107

5

1    Discovery is ongoing and continuing and Machado reserves the right to
2    supplement and/or amend this response.

3

4    DATED:  September 24, 2007    Respectfully submitted,

5

6                                    LAW OFFICES OF JAMES W. SPERTUS

7

8    By:
                                     James W. Spertus
9                                    Leah C. Gershon
                                     Attorney for Lilly Walters
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices of James W. Spertus
12100 Wilshire Blvd., Suite 620
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

EXHIBIT  9  PAGE 108

6