# EXHIBIT 5

**CONFORMED COPY**

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone: (415) 774-2611
Facsimile: (415) 982-5287

FILED
2007 SEP 26 PM 2:28
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

　　　　　Plaintiff,

　　v.

MATTEL, INC., a Delaware corporation,

　　　　　Defendant.

CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
MGA ENTERTAINMENT, INC. v. MATTEL, INC.

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS**

## I. INTRODUCTION

On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA") to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice. On

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT 6 PAGE 31

1  July 31, 2007, MGA submitted an opposition brief. On August 6, 2007, Mattel submitted a reply
2  brief. The matter was heard on September 24, 2007. Having considered the motion papers and
3  the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for
4  sanctions is denied.

## II. BACKGROUND

6  Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005,
7  which specified eight topics for deposition. Mattel served a Second Notice of Deposition of
8  MGA in February of 2007, which specified forty-six topics for deposition. On June 5, 2007,
9  Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of
10  the present motion to compel. The Third Notice specifies sixteen topics for deposition. On June
11  29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and
12  conferred. The parties were not able to resolve their disputes regarding four subject matters: hard
13  drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-
14  8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian
15  and Morad Zarabi (Topic 11-13). The topics at issue are set forth below.

### Hard Drives and Other Storage Devices

17  1.  The IDENTITY, current or last known location, and disposition of
18  each STORAGE DEVICE that each of the following PERSONS has used to
19  create, generate, prepare, draft, send and/or receive any DOCUMENT or
20  DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or
21  ANGEL at any time since January 1, 1999, including without limitation the date
22  of acquisition and the date of disposition of each STORAGE DEVICE: Isaac
23  Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica
24  Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich,
25  Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles
26  O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen,
27  Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

2. The IDENTITY, current or last known location, and disposition of each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this Notice, including without limitation the date of creation and the date of disposition of each such backup or copy.

3. YOUR search for and production of DOCUMENTS and DIGITAL INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

### Prior Inconsistent Statements to the Press

6. YOUR statements to Christopher Palmeri in connection with the Business Week article entitled "To Really Be A Player, Mattel Needs Hotter Toys," published on or about July 28, 2003, including without limitation in connection with the statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers."

7. YOUR statements to Denise I. O'Neal in connection with the Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll World," published on or about March 5, 2004, including without limitation in connection with the statements that MGA's "creative team decided the name should be catchy and not have more than six letters. Keeping with today's trend of making names more 'cool' by changing the spelling, MGA executives decided to replace the 's' with a 'z'"

8. YOUR statements to Jeff Weiss in connection with the San Fernando Valley Business Journal article entitled "Immigrant's Creative Company Shakes Up Toy Industry," published on or about March 29, 2004, including without limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

### "Test Projects" for MGA

9. The IDENTITY of each PERSON who YOU had perform, or who

YOU requested, asked or solicited to perform, any "test project" in advance of or in consideration of employment by YOU since January 1, 1995, including without limitation the IDENTITY of each such PERSON who was a MATTEL employee at the time.

### Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi

11. Payments of money or any other item of value that YOU have made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac Larian since January 1, 1999, including without limitation (a) the amounts of such payment and the equivalent dollar value of each of item of value, (b) the dates of such payment, (c) the IDENTITY of each recipient of such payment, (d) the IDENTITY of each bank or financial institution account to which such payment was made and (e) the reasons for each such payment.

12. Payments of money or any other item of value that YOU have made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad Larian since January 1, 1999, including without limitation (a) the amounts of each such payment and the equivalent dollar value of each of item of value, (b) the timing of each such payment, (c) the IDENTITY of each recipient of each such payment, (d) the IDENTITY of each bank or financial institution account to which such payment was made and (e) the reasons for each such payment.

13. Payments of money or any other item of value that YOU have made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad Zarabi since January 1, 1999, including without limitation (a) the amounts of each such payment and the equivalent dollar value of each item of value, (b) the timing of each such payment, (c) the IDENTITY of each recipient of each such payment, (d) the IDENTITY of each bank or financial institution account to which such payment was made and (e) the reasons for each such payment.

Zeller Decl., Ex. 23.

1    Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,
2    9 and 11-13, and overruling all of MGA's objections and limitations. Mattel contends that the
3    testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as
4    cumulative or duplicative of any other deposition testimony already given in the case.
5    MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave
6    of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.
7    MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for
8    examining MGA any further. MGA further contends that Mattel has not established the requisite
9    good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify
10   its objections to the Third Notice. Lastly, MGA contends that Mattel has had many opportunities
11   to obtain, and in many cases has already obtained, the information it now moves to compel.

### III. STANDARDS

13   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain
14   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any
15   party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the
16   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.
17   Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of
18   use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably
19   cumulative or duplicative, or is obtainable from some other source that is more convenient, less
20   burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by
21   discovery in the action to obtain the information sought; or (iii) the burden or expense of the
22   proposed discovery outweighs its likely benefit, taking into account the needs of the case, the
23   amount in controversy, the parties' resources, the importance of the issues at stake in the
24   litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.
25   26(b)(2)(C).
26   Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including
27   a party, by deposition upon oral examination without leave of court, except as provided in Rule

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 5 PAGE 35

1  30(a)(2), Fed.R.Civ.P. In particular, Rule 30(a)(2) specifies that a party must obtain leave of
2  court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2),
3  Fed.R.Civ.P., if "the person to be examined already has been deposed in the case." Fed.R.Civ.P.
4  30(a)(2)(B).

## IV. DISCUSSION

As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P. There is caselaw to support each party's position. See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D. N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions). For purposes of the present motion, however, it is unnecessary to resolve this conflict in the law because the debate is purely academic and inconsequential. As Mattel has requested, Mattel's motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with additional topics. In evaluating the appropriateness of the topics, it is Mattel's burden to demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2), Fed.R.Civ.P.

### Hard Drives and Other Storage Devices (Topics 1-3)

Topic 1 seeks information regarding the location and disposition of computer hard drives or other storage devices used by specified MGA employees or contractors that contain or contained documents related to the Bratz or Angel projects. Topic 2 seeks the identification and last known location of any backup, copy or image of the hard drives or storage devices identified in Topic 1. Topic 3 seeks information regarding MGA's search for and production of documents

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT 5 PAGE 36

1  and digital information from the hard drives and storage devices referenced in Topic 1.
2       MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,
3  irrelevant, and not reasonably calculated to lead to admissible evidence. MGA also objected to
4  Topics 1-3 to the extent that the information sought is obtainable through other more convenient,
5  less burdensome and less expensive means. Lastly, MGA objected to Topics 1-3 as unreasonably
6  cumulative and duplicative of information already provided by Ken Lockhart, Vice President and
7  Chief Information Officer for MGA.
8       Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule
9  26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not
10 privileged, that is relevant to the claim or defense of any party, including "the existence,
11 description, nature, custody, condition, and location of any books, documents or other things." A
12 portion of the discovery sought, however, is unreasonably cumulative and duplicative of
13 information already provided by Mr. Lockhart. MGA designated Mr. Lockhart as a 30(b)(6)
14 witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital
15 information systems and application software, employees' electronic messaging systems, and
16 MGA's policies regarding the use of transportable media. Mr. Lockhart testified about the
17 location and disposition of MGA employees' hard drives and storage devices in general.
18      Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the
19 testimony previously given by Mr. Lockhart in that Mattel now seeks information about the
20 locations and dispositions of hard drives used by 24 named individuals. Mattel contends that the
21 testimony it seeks will enable it to assess MGA's production, including whether any documents
22 requested or compelled by the Court were destroyed, not collected or otherwise made unavailable
23 to Mattel. Mattel's Reply at p.7.
24      Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be
25 legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the
26 circumstances of this case. Mattel has accused MGA of obstructing discovery, and in particular
27 withholding Bryant's computer. There is no evidence, however, to suggest that MGA has refused
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 5 PAGE 37

or failed to search for and produce responsive documents located on the hard drives of the other individuals named in Topic 1. It is burdensome and expensive to prepare a witness to testify about the locations and dispositions of hard drives used for 24 different individuals. The likely benefit of undergoing such a burden and expense is doubtful. Furthermore, there are other less burdensome and less expensive means of assessing whether MGA has complied with its discovery obligations, including for example, document requests and interrogatories. Therefore, Mattel's motion is denied as to Topics 1-3.

<u>Prior Inconsistent Statements to the Press (Topics 6-8)</u>

Topics 6-8 seek testimony regarding three public statements made by Isaac Larian regarding who conceived of Bratz. MGA objected to Topics 6-8 as irrelevant and not reasonably calculated to lead to admissible evidence. MGA also objected to Topics 6-8 to the extent that the information sought is obtainable through other more convenient, less burdensome and less expensive means. Further, MGA objected to Topics 6-8 as unreasonably cumulative and duplicative of information already provided by MGA and/or Carter Bryant. MGA also objected to a deposition on these Topics "to the extent that the statements referenced above were not made by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6) designation." Zeller Decl., Ex. 24.

Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition because each of the statements identified therein was made by MGA's Chief Executive Officer, Isaac Larian. Mattel acknowledges that it already deposed Isaac Larian regarding one of the articles identified in Topics 6-8, but contends that it is not attempting to re-depose him. Rather, Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will not be "sandbagged" at trial. Mattel's Reply at p.6.

MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac Larian is the person who should be, and already has been, deposed about the statements identified in Topics 6-8. MGA also contends that Mattel opted to limit its examination of Isaac Larian to one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT 5 PAGE 38

MGA now. MGA also contends that Mattel could avail itself of other discovery methods, such as interrogatories or requests for admission, to obtain further information about the publications identified in Topics 6-8.

Topics 6-8 seek information relevant to the central issue in the case: who conceived of Bratz. Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will bind the corporation. The testimony Mattel now seeks is not unreasonably cumulative or duplicative of testimony it has already sought from Isaac Larian because Mattel previously questioned Isaac Larian about only one of the articles identified in Topics 6-8. Further, the likely benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics 6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel seeks. Mattel's motion is granted as to Topics 6-8.

### "Test Projects" for MGA (Topic 9)

In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA requested, asked or solicited to perform, any "test project" in advance of or in consideration of employment by MGA since January 1, 1995. MGA objected to Topic 9 as irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA also objected to Topic 9 as vague and ambiguous, particularly with respect to the term "test project." MGA also objected to Topic 9 to the extent that the information sought is obtainable through other, more convenient, less burdensome and less expensive means. MGA also objected to Topic 9 as seeking confidential, proprietary, and commercially sensitive information with no relevance to the litigation.

When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind of a project for" MGA. Zeller Decl., Ex. 29 at 9:19-20. He also referred to this "tryout" project as a "test assignment." Id. at 515-516. In light of Bryant's testimony, Mattel's stated purpose of Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's working for MGA while employed by Mattel was no different than a supposedly standard

industry practice of having candidates for creative positions make artwork as part of the job interview." Mattel's Motion at p.22.

MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains objectionable as overbroad, reasoning that it would require MGA to provide information "with regard to how it proceeded with hiring virtually every single employee hired since 1995." MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require MGA to have a designee review and potentially memorize information about every single person who has applied for a job at MGA since 1995, particularly when Bryant only began working for MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6) deposition to obtain the information called for in Topic 9.

Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their claim that Bryant's work for MGA while employed by Mattel was no different than a standard industry practice of having candidates for creative positions make artwork as part of the job interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin working at MGA until the year 2000. Topic 9 is also objectionable because the information sought is more appropriately obtained through a contention interrogatory, which would be significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998 through 2004.

Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)

In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA

1  also objected to Topics 11-13 to the extent that the information sought is obtainable through
2  other, more convenient, less burdensome and less expensive means. MGA also objected to
3  Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no
4  relevance to the litigation.

5  Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad
6  Larian that involved the timing of the creation of Bratz. More specifically, Farhad Larian claimed
7  that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and
8  alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.
9  Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and
10 therefore seeks information that may establish their bias. Mattel also emphasizes that Isaac
11 Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's
12 claim for punitive damages, and may be used as impeachment evidence. Lastly, although Mattel
13 acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel
14 contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15 MGA contends that Topics 11-13 are not relevant to this lawsuit. In particular, MGA
16 objects to Topics 12 and 13 as seeking "private financial records of persons who are neither
17 parties nor witnesses in this action, and whose only connection is knowing people involved in the
18 lawsuit." MGA's Opposition at p. 13. With regard to payments to Isaac Larian, MGA contends
19 that Mattel already had the opportunity to ask him about payments during his deposition. MGA
20 also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at
21 this time. Even if Mattel is entitled to conduct such discovery, MGA contends that payments
22 made to him would not establish his net worth because they represent only one of many sources
23 of income and do not account for his other assets and liabilities.

24 MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and
25 defenses in the case. Payments to Isaac Larian and Farhad Larian may also show possible bias
26 and be used for impeachment purposes. Moreover, MGA's payments to Isaac Larian may be
27 relevant to Mattel's claim for punitive damages. Payments to Isaac Larian are a component of his
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                              11

EXHIBIT 5 PAGE 41

1  net worth, even if they represent one source of income. The burden of producing such information
2  does not outweigh its relevance, taking into consideration the circumstances of this case.
3  Furthermore, there is no stay on discovery pertaining to punitive damages. Accordingly, Mattel's
4  motion is granted as to Topics 11 and 12.
5        In contrast, MGA's payments to Morad Zarabi are irrelevant. His only connection to this
6  litigation appears to be with the arbitration proceedings. Any potential relevance of MGA's
7  payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial
8  affairs. Mattel's motion is denied as to Topic 13.

## V. CONCLUSION

For the reasons set forth above, it is hereby ordered as follows:

1. Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

2. Mattel's motion to compel is denied as to Topics 1-3, 9 and 13. In lieu of taking a deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory regarding Topic 9 that is limited to the years 1998 through 2004.

3. Mattel's request for sanctions is denied.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: September 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT 5 PAGE 42

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 26, 2007, I served the attached ORDER GRANTING IN PART AND DENYI8NG IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| Name | Firm | Email |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 26, 2007, at San Francisco, California.

_Sandra Chan_

EXHIBIT 5 PAGE 43