# EXHIBIT 7

```
1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:  (415) 774-2611
4  Facsimile:  (415) 982-5287
5
6
7
```

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049450<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S MOTION TO COMPEL MGA TO PRODUCE DOCUMENTS BEARING BATES NOS. MGA 0800973-0800974 AND MGA 0829296-0829305** |

### I. INTRODUCTION

Mattel, Inc. ("Mattel") submitted a "Motion to Compel Withheld MGA Documents That Prove MGA Was Developing Bratz as Early as June 2000." Specifically, Mattel seeks an order compelling MGA to produce documents bearing Bates Nos. MGA 0800973-0800974 and MGA

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12-17

1

EXHIBIT 1 PAGE 54

1 | 0829296 – 0829305, which Mattel characterizes as "smoking gun" documents that prove MGA was developing Bratz as early as June 2000. MGA contends that the disputed documents were inadvertently produced and are protected by the attorney-client privilege. At MGA's request, Mattel destroyed the disputed documents. Mattel, however, disputes MGA's claims of privilege and presently seeks an order compelling production of the disputed documents. MGA submitted an opposition together with a supporting declaration, and lodged the disputed documents for an *in camera* review. Mattel submitted a reply. The matter was heard on December 14, 2007.

## II. BACKGROUND

Mattel's claims in this case include allegations that "Carter Bryant [hereinafter "Bryant"] conceived, created and developed Bratz designs while he was employed by Mattel as a doll designer." Mattel alleges that "using Mattel resources and while employed by Mattel, Bryant took steps to assist MGA to produce dolls," and that he "concealed his Bratz work from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee." Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶¶2, 26, attached as Ex. 3 to Proctor Decl. Mattel alleges that "as a result of the efforts of Bryant and other Mattel employees working on Bratz (which was done without Mattel's knowledge), the Bratz dolls had been designed and were far along in development during the time that Bryant was employed by Mattel and prior to the time that Bryant left Mattel on October 20, 2000." Id. at Counterclaims, ¶36. Mattel claims ownership of Bratz works created by Bryant while he was employed by Mattel, asserts that Bryant breached his duties of loyalty and fiduciary duties to Mattel, and claims that MGA aided and abetted Bryant. Defendants dispute these allegations.

The timing of Bryant's creation and development of Bratz is a central issue in the case, and thus has been the focus of a substantial amount of discovery. Bryant testified at his deposition that he first pitched the Bratz concept to MGA when he met Paula Garcia in August of 2000. According to the deposition testimony of Bryant and MGA's Isaac Larian ("Larian"), Bryant met Larian for the first time in September 2000. Larian testified that at the time of the September meeting, Bryant had names for each Bratz doll character. Larian also testified, however, that one of the Bratz dolls, "Yasmin," was subsequently named after his daughter

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 7 PAGE 55

Jasmine.

Another witness, Anna Rhee, testified that Bryant asked her to paint Bratz doll heads in June 2000. Bryant, however, testified that he did not ask Ms. Rhee to paint faces for Bratz dolls until November 2000.

In the course of discovery, MGA produced documents bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296-0829305 to Mattel. On August 7, 2007, however, MGA sent Mattel a letter asserting that the documents are protected by the attorney-client privilege and were inadvertently produced. Accordingly, Mattel destroyed its copies of the disputed documents and so confirmed to MGA.

The first document in question, marked as MGA 0800973-0800974, is an internal document sheet (the "Docket Sheet") from Russ, August, Kabat & Kent, trademark prosecution counsel for MGA, regarding MGA's trademark application for "Bratz." The Docket Sheet includes such information as the name of the mark, the country, the name of the registrant, the application number, the application date (December 11, 2000), the registration number, the registration date (December 2, 2003), the term, the date the renewal is due (December 2, 2013), and the type of goods/services the mark is used for ("Dolls"). Mattel is particularly interested in the notation "Dates of Use: 6-15-2000," which appears in a box entitled "Remarks" on the second page of the Docket Sheet.

The second document in question, marked as MGA 0829296-0829305, is a facsimile dated December 7, 2000 (the "Fax") from Lucy B. Arant, trademark counsel at Russ, August, Kabat & Kent to Paula Garcia (then known as Paula Traentafellas) at MGA. The first page of the Fax includes a written message from Ms. Arant to Ms. Garcia stating that the Fax attaches four trademark applications for Isaac Larian's review and signature. The message also includes the following remarks by Ms. Arant to Ms. Garcia: "You indicated that all four of the applications have a date of first use of June 15, 2000. Please confirm that this is correct." The remainder of the Fax consists of the "intent to use" trademark applications for "Jade," "Yasmin," "Sasha," and "Bratz." These "intent to use" trademark applications do not include any information regarding "dates of use."


Mr. Larian executed MGA's trademark applications for "Jade," "Yasmin," "Sasha," and "Bratz" on the day the Fax was sent, December 7, 2000, and the applications were filed with the Patent and Trademark Office ("PTO"). MGA subsequently filed a statement of use for each of the four marks that specified dates in May of 2001 for the "date of first use" and a "date of first use in commerce," which are significantly different from the June 15, 2000 date noted in the Docket Sheet and the Fax.

Mattel contends that the disputed documents, and in particular the June 15, 2000 date noted therein, are relevant to its claim that Bryant secretly worked with MGA on Bratz while he was employed by Mattel. Bryant was employed at Mattel from January 4, 1999 until October 20, 2000. Mattel also contends that the disputed documents are relevant to challenge the credibility of defendants' key witnesses, and to substantiate the testimony of Ms. Rhee.

Furthermore, Mattel contends that neither of the disputed documents are protected by the attorney-client privilege. Mattel contends that the Docket Sheet is not a communication, much less a communication from MGA to counsel for the purpose of obtaining legal advice. Rather, in Mattel's view, the Docket Sheet is an internal law firm document that contains basic facts that are not privileged.

Mattel also contends that even if the Docket Sheet were a privileged communication, the information contained within it, including the date of first use information, is not privileged because MGA did not communicate the information for the purpose of keeping it confidential. Rather, Mattel contends that MGA communicated the date of first use and other information listed on the Docket Sheet to its trademark attorneys so that they could use the information to register MGA's marks with the PTO. Indeed, Mattel points out that after MGA submitted its "intent to use" trademark applications, MGA submitted a "statement of use" for each of its marks to the PTO that specified a "date of first use," although the specified "date of first use" was not June 15, 2000.

Moreover, Mattel contends that applicants for trademarks must disclose to the PTO a date of first use of the mark. Mattel explains that an applicant may initially apply to register a trademark by filing an application for use of a trademark or by filing an application for bona fide

1  intention to use a trademark (see 15 U.S.C. §1051(a) and (b)), but in either case the applicant
2  must eventually disclose a "date of first use" of the mark. A use-based application must include
3  the date of first use of the mark at the outset. See 15 U.S.C. §1051(a)(1). In contrast, an "intent
4  to use" applicant must, within six month of the PTO's issuance of notice of allowance, file a
5  "statement that verifies the mark is in use in commerce, the date of first use in commerce, the
6  goods and services in connection with the mark are used in commerce, and the manner in which
7  the mark is being used." Eastman V. Kodak Co. v. Bell & Howell Document Management
8  Products Co., 994 F.2d 1569, 1570 (C.A. Fed. 1993). Mattel reasons that because MGA was
9  required to submit information about the date of first use to the PTO in order for MGA to obtain a
10  trademark registration, MGA could not have provided the information to trademark counsel with
    any reasonable expectation or intention that such information would remain confidential.
11
12      Mattel contends that the Fax is not privileged because it is a communication from counsel
13  to MGA, not vice versa, and that the attachments are non-privileged trademark applications.
14  Mattel also contends that the Fax is not privileged because it does not reveal any confidential
15  communication for the purpose of rendering legal advice. Rather, Mattel reiterates that MGA was
16  required to submit information about the date of first use to the PTO in order for MGA to obtain a
17  trademark registration, and therefore MGA could not have expected or intended that such
    information remain confidential.
18      MGA contends that the declaration of MGA employee Paula Garcia demonstrates that the
19  communications by MGA to its counsel regarding date of first use for the Bratz doll marks were
20  intended to be confidential attorney-client communications for the purpose of obtaining legal
21  advice for trademark applications. Accordingly, MGA contends that the references to the date of
22  first use in the Docket Sheet and the Fax are protected because the references reflect a client
23  confidence transmitted as part of a privileged communication.
24      MGA contends that Ms. Arant's role was not as a "mere conduit of data" or transcriber.
25  See e.g., Knogo Corp. v. United States, 213 U.S.P.Q. 936, 940, 1980 WL 39083 (Ct. Cl. Trial
26  Div. 1980) (rejecting the characterization of patent attorneys as mere "conduits" to the PTO).
27  Instead, MGA describes her role as providing what information should be included in the
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 1 PAGE 58

trademark applications and how it should be sent out. MGA contends that Ms. Arant requested "dates of first use" information from Ms. Garcia in connection with advising MGA regarding "intent to use" trademark applications. MGA's Opposition, pp. 5-6. According to MGA, "dates of first use" information has significance to "intent to use" applications for two reasons: first, an "intent to use" application is only appropriate for marks not already in use; and second, an applicant has six months from the "date of first use" to use the mark before it is abandoned. MGA emphasizes, however, that "dates of first use" are not among the facts disclosed to the PTO as part of an "intent to use" application. MGA reasons, therefore, that it is incorrect for Mattel to assume that Ms. Garcia intended her communications regarding date of first use to be made public.

MGA also contends that Mattel erroneously relies on MGA's later filings of the "statement of use" documents to argue that Ms. Garcia conveyed "dates of first use" to Ms. Arant with the intent that those dates would be publicly disclosed. MGA contends that Mattel has no evidentiary support for such a conclusion, and that indeed, Mattel's submissions show that different attorneys from two different law firms prepared the "statement of use" filings for MGA and specified different "dates of first use" for each mark than the June 15, 2000 date that Ms. Garcia allegedly communicated to Ms. Arant.

MGA contends further that "[e]ven as to information that made its way into the 'intent to use applications,' the documents generated in the preparation and drafting of applications that reflect attorney-client discourse are shielded by the attorney-client privilege." MGA's Opposition at p.7. Borrowing the reasoning in McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242, 252 (N.D. Ill. 2000), MGA asserts that drafts "necessarily reflect the communications between a client and his attorney as the attorney attempts to put forth the invention in the best light possible to protect a client's legal right." MGA also contends that attorney-client protection extends to factual information provided to counsel for the purpose of providing legal advice. See e.g. In re Spalding Sports Worldwide, Inc., 203 F.3d 800 (Fed. Cir. 2000) (invention record submitted to legal counsel for the purpose of obtaining legal advice was privileged); TeKnowledge Corp. v. Akamai Techs., Inc., 2004 U.S. Dist. LEXIS 19109, at *6 (N.D. Cal. Aug. 10, 2004) ("technical

information communicated to a patent attorney does not warrant different treatment than any other information communicated to an attorney in the process of obtaining legal services.").

As for Mattel's argument that the documents in question are "smoking gun" evidence, MGA responds that the Bratz launch occurred in June 2001, at which time the marks were first used. MGA asserts that "[a]ny contrary information contained in the documents in question was an error that should have no bearing on whether the information is privileged." MGA's Opposition, p.2. Ms. Garcia explains in her declaration that the June 15, 2000 date was erroneous. MGA also contends that there could have been no "date of first use" of Bratz in June 2000 within the meaning of trademark law. MGA reasons that the Lanham Act requires that "first use" be "actual use in commerce," or "bona fide use [] in the ordinary course of trade," (Fila Sport S.p.A. v. Diadora America, Inc., 141 F.R.D. 75, 78 (D. Ill. 1991), and that Bratz was not being used in commerce in June 2000.

### III. DISCUSSION

The essential elements of the attorney-client privilege are: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002). The burden is on the party asserting the privilege to establish all the elements of the privilege. United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000). "Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." Clark v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992).

### MGA has Failed to Establish that the Docket Sheet is Privileged

MGA argues that the attorney-client privilege extends to the Docket Sheet because it was a "paper [] prepared by an attorney or at an attorney's request for the purpose of advising the client, [which was] based on and would tend to reveal the client's confidential communications."

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 7 PAGE 60

MGA's Opposition at p.9 (citing In re Fischel, 557 F. 2d 209,211 (9th Cir. 1977)). MGA's argument, however, is unsupported by evidence.

The declaration of Paula Garcia fails to specifically address the Docket Sheet. Instead, Ms. Garcia generalizes as follows:

> Prior to the launch of Bratz, I communicated with outside lawyers for MGA in connection with protecting MGA's trademarks for the "Bratz" line of products it hoped to launch in June 2001. These communications were for the purpose of obtaining legal advice from MGA's trademark counsel, including communications in or about December 2000 with Lucy Arant of Russ, August, Kabat & Kent LLP. In general, I intended and expected my communications with counsel in connection with MGA's trademark filings to be confidential, including communications regarding the anticipated date of MGA's first use of the "Bratz" marks.

Garcia Decl. In Support of MGA's Opposition, ¶3.

Nowhere in the evidentiary record submitted by MGA does MGA explain why or how the Docket Sheet was created or maintained. MGA does not explain who created the Docket Sheet or provide the source of the information contained therein. MGA has not established the requisite elements of the attorney-client privilege for this specific document. See e.g. Automated Technologies, Inc. v. Knapp Logistics & Automation, Inc., 382 F.Supp.2d 1372, 1375 (N.D. Ga. 2005) (party invoking privilege has the burden of proving "that the particular communications were confidential"); Kodish v. Oakbrook Terrace Fire Protection Dist., 235 F.R.D. 447, 453 ("The party seeking to assert the privilege must show that the particular communication was part of a request for advice or part of the advice, and that the communication was intended to be and was kept confidential."). MGA has failed to carry its burden of establishing that the Docket Sheet is protected by the attorney-client privilege.

### MGA has Failed to Establish That the Fax is Privileged

An *in camera* review of the Fax confirms that the document constitutes a communication between MGA and counsel regarding MGA's trademark applications. That the Fax constitutes a

communication between MGA and counsel, however, is insufficient without more to establish that the Fax is privileged. MGA must also establish that the Fax is a confidential communication for the purpose of rendering legal advice. See e.g. Automated Technologies, Inc. v. Knapp Logistics & Automation, Inc., supra; Kodish v. Oakbrook Terrace Fire Protection Dist., supra. MGA has failed to do so. Ms. Garcia's declaration does not even mention the Fax, much less specify that the information contained therein was intended to be confidential for the purpose of rendering legal advice. Instead, Ms. Garcia speaks in generalities about communications regarding MGA's trademark applications. In fact, the Fax does not contain any legal opinions or advice. The only attorney-client communication reflected in the Fax is the statement regarding the "date of first use."

MGA could not have had a reasonable expectation that the June 15, 2000 "date of first use" stated in the Fax would be kept confidential. As Mattel points out, in order to obtain a full trademark registration, an applicant must disclose the "dates of first use" to the PTO. This is true regardless of whether the applicant initially files an "intent to use" application or a use-based application. See 15 U.S.C. §1051(a)(2) (use-based application must include the date of first use of the mark); Eastman V. Kodak Co. v. Bell & Howell Document Management Products Co., 994 F.2d at 1570 (an "intent to use" applicant must file a "statement that verifies . . . the date of first use in commerce).

MGA relies on Ms. Garcia's declaration that she generally expected her communications with trademark counsel to be confidential. However, a client's subjective belief as to whether a communication is privileged must be reasonable in order for the attorney-client privilege to attach. Speaker ex rel. Speaker v. County of San Bernadino, 82 F.Supp.2d 1105, 1112-1113 (C.D. Cal. 2000) (client's subjective belief "should be reasonable in order to lay claim to the protections of the privilege"); Griffith v. Davis, 161 F.R.D. 687, 696 (C.D. Cal. 1995) (attorney-client privilege not applicable to information communicated to attorney where client knew information would be used in his employer's administrative investigation). Although a client's subjective belief of confidentiality is necessary for the attorney-client privilege to attach, it is not sufficient. See In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 923 (8th Cir. 1997)

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT 7 PAGE 62

("[W]e know of no authority . . . holding that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one.").

Nevertheless, MGA attempts to identify confidential reasons why Ms. Garcia might have communicated "date of first use" information to Ms. Arant. According to MGA, the only reason Ms. Arant solicited "date of first use" information from Ms. Garcia was (i) to determine whether an "intent to use" application would be proper and (ii) to determine when MGA should file its applications. MGA asserts that "these legal considerations led Ms. Arant to request 'dates of first use' from Ms. Garcia." MGA's Opposition at p.6. However, there is no evidence of record to substantiate MGA's contentions.

MGA's failure to provide evidence to substantiate its claim that the Fax reveals the substance of a confidential communication is fatal to its claim of privilege. Because a mark's date of first use is factual information that must be conveyed to the PTO to secure a trademark application, communication of this information is not privileged. Weil Ceramics & Glass, Inc. v. Work, 110 F.R.D. 5000, 504 (E.D. N.Y. 1986) ("The party claiming the privilege must clearly show that a document renders legal advice and does not, for example, merely contain facts later disclosed in a patent or trademark application"); see also United States v. White, 950 F.2d 426, 430 (7th Cir. 1991) ("when information is disclosed for the purpose of assembly into a bankruptcy petition and supporting schedules, there is no intent for the information to be held in confidence because the information is to be disclosed on documents publicly filed").

MGA contends, however, that the June 15, 2000 date was not actually disclosed to the PTO and points out that Mattel's own submissions show that different attorneys from two different law firms prepared the "statement of use" filings for MGA and specified different "dates of first use" for each mark than the June 15, 2000 date that Ms. Garcia allegedly communicated to Ms. Arant. That the June 15, 2000 date was not actually disclosed is irrelevant. What is relevant is whether Ms. Garcia actually and reasonably intended and expected the "dates of first use" information she provided to Ms. Arant to remain confidential when she made the communication, not whether the information was actually conveyed to the public. See In re Grand Jury Proceedings, 727 F.2d 1352, 1358 (4th Cir. 1984) (information given to attorney to prepare

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 7 PAGE 63

prospectus was not protected by attorney-client privilege, even though no prospectus was ever actually issued); United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983) ("[I]f the client transmitted the information so that it might be used on the tax return, such a transmission destroys any expectation of confidentiality.").

Lastly, MGA's reliance on McCook, supra, and other related caselaw[1] is misplaced. In McCook, the court held that draft patent applications were privileged because they "contain[ed] the legal opinion and advice of the attorney regarding the wording of technical specifications, claims, and prior art, and whether an item is included, all of which are necessary to secure a legal claim for the client." McCook, 192 F.R.D. at 252-253. In contrast, the Fax at issue in this case reflects no such attorney opinions or advice. Indeed, the only attorney-client communication reflected in the Fax is the statement regarding the "date of first use." The cases cited by MGA are inapplicable to communications conveying date of first use information in the trademark context because, as discussed previously, a trademark attorney does not have discretion regarding whether to disclose the "date of first use" information to the PTO.[2]

## IV. CONCLUSION

For the reasons set forth above, Mattel's motion to compel MGA to produce documents bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296-0829305 is granted. MGA shall produce said documents on or before December 28, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: December 17, 2007

_____
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

---

[1] See Rohm v. Haas Co. v. Brotech Corp., 815 F.Supp. 793, 797 (D. Del. 1993); Hyuk Suh v. Choon Sik Yang, 1997 U.S. Dist. LEXIS 20077 (N.D. Cal. No. 18, 1977); Conner Peripherals, Inc. v. Western Digital Corp., 1993 U.S. Dist. LEXIS 20149 (N.D. Cal. June 8, 1993); TeKnowledge Corp. v. Akamai Techs, Inc., 2004 U.S. Dist. LEXIS 19109 (N.D. Cal. Aug. 10, 2004).

[2] Mattel argues in the alternative that even if the disputed documents were privileged, MGA has waived the privilege. Because MGA has failed to establish the requisite elements of the attorney-client privilege as to the disputed documents, it is unnecessary to address Mattel's waiver argument herein.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT 1 PAGE 64

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on December 17, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL MGA TO PRODUCE DOCUMENTS BEARING BATES NOS. MGA 0800973-0800974 AND MGA 0829296-0829305 in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on December 17, 2007, at San Francisco, California.

*/s/ Sandra Chan*
Sandra Chan

EXHIBIT 1 PAGE 65