QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**REPLY MEMORANDUM OF MATTEL, INC. TO MGA RESPONSE TO MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY AND OBJECTIONS TO DISCOVERY MASTER ORDER OF SEPTEMBER 28, 2007**<br><br>Hearing Date: January 7, 2007<br>Time: 10:00 a.m.<br>Courtroom: 1<br><br>**Phase 1:**<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ..................................................................................................................2

I. MATTEL SHOULD BE ALLOWED ADDITIONAL DEPOSITIONS ..........2

   A. Mattel Is Entitled To Additional Party Depositions..............................2

      1. The Relevant Standards Justify Granting Mattel's Motion...........2

      2. MGA's "Diligence" Contentions Are Wrong................................3

      3. The Depositions Sought Are Not Duplicative, And Mattel Has Made A Sufficiently Particularized Showing..........................5

   B. MGA's Third-Party Deposition Arguments Are Groundless..................6

   C. MGA's Other Arguments Do Not Justify Denial Of This Motion..........8

      1. The Depositions Mattel Has Taken Were Proper. ........................8

      2. MGA's Disputes About Its Discovery Are Unavailing. ...............9

      3. MGA's Disruption Arguments Are Unsubstantiated. ...................9

II. MATTEL SHOULD BE ALLOWED FURTHER INTERROGATORIES .................................................................................10

CONCLUSION .............................................................................................................12

# TABLE OF AUTHORITIES

Page

**Cases**

*Bendt v. G.D. Searle & Co.*,
  1990 WL. 299926 (D. Minn. 1990) .................................................................. 6

*In re Bergeson*,
  112 F.R.D. 692 (D. Mont. 1986) ...................................................................... 7

*Ierardi v. Lorillard, Inc.*,
  1991 WL. 158911 (E.D. Pa. 1991) ................................................................... 6

*Jackson v. Laureate, Inc.*,
  186 F.R.D. 605 (E.D. Cal. 1999) ..................................................................... 3

*Marker v. Union Fidelity Life Ins. Co.*,
  125 F.R.D. 121 (M.D.N.C. 1989) .................................................................... 6

*State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.*,
  2007 WL. 2993840 (E.D.N.Y. 2007) ............................................................... 7

**Statutes**

Fed. R. Civ. P. 26(b) & 33 ..................................................................................... 2

Fed. R. Civ. P. 26(b)(2) ..................................................................................... 3, 9

Fed. R. Civ. P. 30(a)(2)(A) ................................................................................ 3, 9

Fed. R. Civ. P. 33(a) ..................................................................................... 3, 9, 11

## Preliminary Statement

In endeavoring to avoid disclosure, defendants accuse Mattel of squandering discovery and assert that additional discovery would pose an undue burden. They contend that named defendants such as MGAE de Mexico and Gustavo Machado, who have unique knowledge of MGA's trade secret thefts, should not be deposed at all, apparently unfazed by the disruptions that such a trial-by-surprise approach would create. The facts, and defendants' own conduct, belie their rhetoric. While they complain about the scope of Mattel's discovery (which must be directed to five different defendants on a host of issues and which the MGA defendants exaggerate by counting identical discovery requests to each defendant multiple times), defendants omit that they have propounded just as much, and in some instances more, discovery than Mattel.

Defendants also overlook that much of the "burden" they decry is of MGA's making. MGA seeks "billions" of dollars against Mattel on its own claims and accuse some 400 Mattel products of infringing some 200 MGA products. This does not even include the litany of other supposed conduct that MGA's pleadings put at issue. MGA cannot fairly complain about any burden resulting from its own decision to interject such sweeping matters into this litigation.

MGA argues that the additional depositions sought are duplicative of other discovery and seeks to foreclose third-party depositions on burden grounds. A key deposition from just this past Friday demonstrates the crucial importance of additional third-party discovery in this case. Veronica Marlow, a third-party witness who long worked directly with Bryant and MGA, testified that she knew of at least three Mattel employees who *for years* worked on Bratz *while they were employed by Mattel*. This was a shocking revelation. Neither MGA nor Bryant had disclosed this information, despite repeated Court Orders and despite the fact that at least one of these individuals was a co-worker of Bryant's at Mattel. To the contrary, both Bryant and MGA gave flat denials under oath that there was any other Mattel employees knowingly involved.

Defendants argue that Mattel delayed in bringing this motion. The three-week "delay" they cite, however, was the result of MGA's requested stay and then Mattel's courtesy of attempting to work out the matter with new counsel. Defendants also fail to mention that, after this motion was filed, MGA itself brought a motion before Judge Infante seeking leave to proceed on forty-seven Rule 30(b)(6) topics that MGA says relate to Phase 1. Thus, defendants' own conduct contradict their tardiness and undue burden arguments here. In any event, the scheduling difficulties they claim granting Mattel's motion will cause are illusory because the bulk of the additional discovery Mattel seeks is for Phase 2.

The purpose of discovery and trial is get to the truth. Defendants' persistent efforts to thwart it should be rejected, and Mattel's motion should be granted.

## Argument

### I. MATTEL SHOULD BE ALLOWED ADDITIONAL DEPOSITIONS

#### A. Mattel Is Entitled To Additional Party Depositions.

##### 1. The Relevant Standards Justify Granting Mattel's Motion.

According to the MGA defendants, because Mattel has had to use a fair amount of its allotted deposition discovery on Phase 1 matters, Mattel should be denied the ability to take the depositions of even: (1) named defendant MGA de Mexico; (2) named defendant Gustavo Machado; (3) a single one of the nine individuals who were personally involved in the thefts of Mattel trade secrets as specifically set forth in Mattel's pleadings and interrogatory answers; and (4) named defendant MGA Entertainment on either MGA's own claims or the trade secret claims.

As the Rules make clear, however, discovery limits are not intended to "prevent needed discovery," and courts have "broad[] discretion" to allow additional discovery "based on the complexity of [the] cases" at hand. Notes of the Advisory Comm. (1993) to Fed. R. Civ. P. 26(b) & 33. The purpose of the limits are not to force Mattel to pick and choose among its claims or to forego defending against some or all MGA claims. Nor are the discovery limits to be treated as so much bean counting.

MGA largely disregards the governing principles set forth in Rule 26(b)(2). Fed. R. Civ. P. 30(a)(2)(A) & 33(a) (leave for additional discovery "shall be granted" to the extent consistent with principles set forth in Rule 26(b)(2)). Thus, nowhere does MGA contend, let alone demonstrate, that the requested party depositions are "unreasonably cumulative or duplicative" or can be obtained from some other "more convenient, less burdensome, or less expensive" source or that Mattel "has [had] ample opportunity obtain the information sought" here. Nor does MGA contest with specifics that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the party's resources, and the importance of the proposed discovery in resolving the issues." After all, MGA itself says "billions" of dollars are at stake, MGA is a multi-billion dollar business, and taking party depositions cannot reasonably be considered anything other than important.

### 2. MGA's "Diligence" Contentions Are Wrong.

The arguments the MGA defendants do make are erroneous. They urge that a more stringent Rule 16(b) standard should apply before Mattel is allowed discovery and argue that Mattel's motion should be denied because Mattel was supposedly "not diligent" in bringing it. Opp. at 7:1-10:19. That is not the law. The authorities MGA cites for this proposition do not apply Rule 16(b) to discovery limits. As MGA's own quotes confirm, these cases address modifications scheduling deadlines.[1] Here, Mattel does not seek to alter any deadline (and there are no Phase 2 deadlines in any event).

MGA's contention that Mattel did not bring this motion soon enough is factually incorrect. MGA argues: "[E]ven after Mattel's counsel told the Court at the October 31, 2007 conference that it would be filing shortly a motion for additional discovery, Mattel inexplicably waited another three weeks before filing its motion." Opp. 10:7-10.

[1] Opp. at 7:7-16 (quoting Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D. Cal. 1999) (party "must also diligently attempt to adhere to that ***schedule***" and show "noncompliance with a Rule 16 ***deadline*** occurred or will occur, notwithstanding [a party's] diligent efforts to to comply" (emphases added)).

Three weeks scarcely shows lack of diligence, especially on Phase 2 matters. MGA also omits what happened during those three weeks: At MGA's request, the case was stayed until mid-November and all opposition briefing was suspended until November 26. MGA's attempt to use the stay to deny Mattel discovery here is precisely the type of prejudice that MGA had assured the Court the stay would not cause.[2] MGA further fails to mention that during the so-called "delay" Mattel also properly sought to work out this motion with new counsel. The first time MGA's counsel said they were prepared to discuss it was at a November 21 meet and confer. When no agreement was forthcoming at that time, Mattel immediately brought its motion.

In further asserting that Mattel's motion is too late, MGA portrays almost all the discovery Mattel requests as Phase 1. Thus, MGA claims, Mattel seeks to depose "37 additional Phase 1 witnesses and 13 additional Phase 2 witnesses". Opp. at 12:4-5.[3] MGA does not explain how it calculated these numbers. Apparently it is counting anyone who is not a trade secret witness (there are 13 of those) as necessarily Phase 1. That is mistaken, however. Most of the witnesses have knowledge that is exclusively or substantially Phase 2. For example, as explained in Mattel's motion, thirteen of the witnesses have knowledge of the trade secret thefts. Am. Motion, at 13:3-16. Most of the rest have knowledge of Mattel's RICO claims, such as MGA's evidence tampering, or else worked on Bratz or other relevant products for years and thus have knowledge of MGA's claims and Mattel's Phase 2 claims. E.g., Am. Motion, at 12:1-8, 14:14-20.[4]

---

[2] Tr. of the October 15, 2007 Status Conference at 12:3-5, Zeller Dec., Exh. 22.
[3] MGA greatly exaggerates the number of depositions Mattel seeks, claiming that "Mattel essentially seeks to depose almost every non-employee or witness who has been identified as potentially having some knowledge of relevant information in this case". Opp. 10:22-24. Given that the parties have collectively identified hundreds of potential witnesses, Mattel clearly is not seeking anything so expansive.
[4] MGA makes the puzzling claim that because topics in Mattel's Rule 30(b)(6) notices "specifically relate to Bratz," they must be solely for Phase 1. Opp. at (footnote continued)

Defendants' own conduct contradicts their arguments that Mattel's additional discovery request is too late, as well as their various claims that they have been "judicious" in pursuing discovery while Mattel is engaging in scorched earth tactics. Defendants have propounded as much -- and in some instance more -- discovery than Mattel. Defendants have served in excess of 1,200 requests for production, 1,200 requests for admissions, more than 50 interrogatories, 146 Rule 30(b)(6) topics and at least 64 subpoenas.[5] Moreover, in only the past few days, and after Mattel filed this motion, MGA itself brought a motion seeking leave from Judge Infante for Rule 30(b)(6) testimony on 47 sweeping Topics that MGA claims relate to Phase 1.

### 3. The Depositions Sought Are Not Duplicative, And Mattel Has Made A Sufficiently Particularized Showing.

MGA argues that Mattel has failed to make a "particularized" showing of the need for these depositions. Not so. For example, as Mattel demonstrated on its motion and as set forth in considerable detail in its counterclaims, several former Mattel employees who Mattel wishes to depose were directly involved in stealing a wide array of trade secrets from Mattel. This includes MGA executives such as Ron Brawer. MGA offers no rebuttal to Mattel's evidence or its counterclaim allegations which detail that he and the other witnesses have discoverable, non-duplicative knowledge.[6]

Because it cannot show there is unreasonable duplication among depositions, MGA argues that Mattel's Rule 30(b)(6) notices "include topics directed at the factual bases of Defendants' affirmative defenses" and thus are "duplicative" of Mattel's contention interrogatory directed at defendants multitude of affirmative defenses. Opp. at 12:19-23. As an initial matter, MGA does not argue that any other of the proposed

---

12:17-19. Since Bratz is at issue in Phase 2 in multiple respects -- as MGA's own complaint shows on its face -- this is a *non sequitur*.

[5] Zeller Dec., ¶ 14.

[6] The few witnesses who MGA does mount such a challenge to are discussed below in Section I.B.

Rule 30(b)(6) Topics -- the vast majority of them -- are duplicative of other discovery. Further, courts reject the proposition that interrogatories are an adequate substitute for depositions.[7]  MGA cites no authority to support its position otherwise.[8]

### B. MGA's Third-Party Deposition Arguments Are Groundless.

MGA asserts that third-party depositions would "prejudice" and "burden" the third parties and are "unnecessary" because information can be obtained from MGA. MGA's contentions do not withstand scrutiny.

First, party discovery is no excuse for refusing third-party discovery.[9]  This is especially true where, as here, the record has shown that third-party discovery is essential to get at the truth. At a deposition just this past Friday, a third-party witness and former MGA vendor, Veronica Marlow, revealed that *no fewer than three Mattel*

---

[7] Ierardi v. Lorillard, Inc., 1991 WL 158911 at *2 (E.D. Pa. 1991) (answers to interrogatories "are an inadequate substitute" for deposition testimony pursuant to Rule 30(b)(6)); Bendt v. G.D. Searle & Co., 1990 WL 299926 at *1 (D. Minn. 1990) ("Interrogatories are not substitutes for depositions, and are not per se more efficient or economical."); Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989) (same).

[8] Because it lacks legal support, MGA claims Mattel had argued elsewhere that Rule 30(b)(6) depositions "are far inferior" to contention interrogatories, but tears Mattel's statement wholly out of context. Mattel in fact was pointing out the obvious: contention interrogatories are superior to obtaining full disclosure of a party's *contentions*, which are not the proper subject of a Rule 30(b)(6) topic. Mattel did not say (and never has said) that interrogatories are superior in general to deposition testimony, let alone that they are substitutes for the type of factual examination and development that can be obtained only by deposition.

[9] State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840, at *1 (E.D.N.Y. 2007) ("a person may not avoid a subpoena by saying that the evidence sought from him is obtainable from another"); In re Bergeson, 112 F.R.D. 692, 695 (D. Mont. 1986) (assertions that documents sought are available from others more economically "does not constitute a showing of unreasonableness or oppressiveness.").

1  *employees worked on Bratz while employed by Mattel.*[10]  At least two of these
2  individuals worked on Bratz while employed by Mattel *for years.*[11]  Defendants
3  nevertheless failed to disclose them -- and gave false, blanket denials under oath -- in
4  response to specific discovery questions seeking identification of Mattel employees
5  who worked on Bratz or for MGA.[12]

6    Second, not only do instances such as the Marlow testimony refute defendants'
7  claims that third-party discovery is unnecessary, but the examples MGA offers in
8  support miss the mark.[13]  MGA represents that Wachovia and Moss Adams "have no
9  meaningful, non-duplicative information" because MGA has provided a Rule 30(b)(6)
10 witness to testify on Bratz revenues and MGA's net worth.  In reality, and despite Judge
11 Infante's Orders compelling such testimony, MGA's designee testified: "Q. How much
12 revenue has MGA earned from the Bratz brand? A. I'm not sure."[14]  "Q. Do you know
13 how much profit MGA has generated from the Bratz brand? A. No."[15]  As for MGA's
14 net worth, MGA's designee testified only that MGA does not calculate its net worth.[16]
15 Accepting MGA's demand that third-party discovery be prohibited effectively would

---

[10]  See Rough Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007, at 300:11-301:4, 356:12-18, Hauler Dec., Exh. 2.
[11]  Id. at 282:16-284:6, 301:12-302:4.
[12]  See e.g., Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr."), at 286:25-287:5, Hauler Dec., Exh. 3; Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.), at 301:2-17, Hauler Dec., Exh. 4; MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories at 64-70, Hauler Dec., Exh. 5.
[13]  While wrongly taking Mattel to task for allegedly raising the same issues before this Court and Judge Infante as discussed below, MGA apparently has picked these examples because they relate to pending motions before Judge Infante, in the evident hopes that the Court will give them support in their efforts to stonewall this discovery.
[14]  9/24/2007 Tonnu Tr., 457:9-11, attached to the Hauler Dec., Exh. 4.
[15]  9/24/2007 Tonnu Tr., 457:25 - 458:2, attached to the Hauler Dec., Exh. 4; see also 417:13 - 419:23, attached to the Hauler Dec., Exh. 4.
[16]  9/24/07 Tonnu Tr., 333:3-7, attached to the Hauler Dec., Exh. 4.

allow MGA to withhold the facts altogether, including on matters Mattel needs to develop its claims and defend against MGA's.[17]

### C. MGA's Other Arguments Do Not Justify Denial Of This Motion.

#### 1. The Depositions Mattel Has Taken Were Proper.

MGA urges that Mattel be denied any other depositions because Mattel supposedly took four depositions MGA unilaterally deems tangential or somehow vaguely duplicative. Opp. at 9:1-15. MGA's arguments are erroneous.

- The two reporter depositions sought to confirm, in the face of MGA's denials, specific statements Larian had made before this suit was filed about the origins of Bratz that were contrary to testimony he and other MGA personnel have given in this case. The testimony developed is classic impeachment evidence by prior inconsistent statement. Mattel's examinations were less than an hour. Given that MGA examined one of the reporters far longer than Mattel did, MGA itself presumably did not consider the deposition tangential.

- Mattel also took a brief deposition of Brooke Gilbert, Bryant's niece who resides out of state, to exclude any contention by Bryant that his niece had installed or used the "Evidence Eliminator" program found on his belatedly produced hard drives. MGA's contention that Mattel had "already deposed Bryant about the computer" is incorrect. Mattel's reply to Bryant's opposition sets forth in detail the false representations that Bryant's counsel made to the Court and Mattel to avoid turning over his drives before the deposition and thus avoid questioning on his drives and his use of Evidence Eliminator.

- MGA does not deny that Dave Malicrida was a percipient witness and proper deponent. Nor could it, since his name was on early Bratz emails at

---

[17] MGA's reliance on information from Isaac Larian is especially groundless. He has failed to produce even a single page of documents in this litigation. Zeller Dec., Exh. 11.

MGA. MGA cites no authority for its novel proposition that merely because an individual witness has some knowledge covered by Rule 30(b)(6) topics that the deposition is somehow inappropriate or unnecessary.

Not only is MGA wrong about the few depositions it mentions, but MGA cannot even muster an argument that any of the other depositions Mattel has taken were inappropriate.

### 2. MGA's Disputes About Its Discovery Are Unavailing.

Equally erroneous is MGA's lengthy, and wholly collateral, claim that Mattel's ostensibly "improper manipulation" of *MGA's* deposition count in pending discovery disputes justifies denying Mattel any additional discovery. Opp. at 15:24-17:3, 21:27-23-3. Despite their length, these arguments are unsupported by a single authority holding that such alleged considerations could warrant the denial of a request for additional discovery. This is not surprising, because they are not supported by any of the principles set forth in Rule 26(b)(2) (or, for that matter, the Rule 16(b) standard MGA itself wrongly advances).[18] MGA's contentions are also refuted by the record. To ascertain who has been engaging in improper stonewalling, the Court need look no further than the 20 discovery Orders against MGA and its co-defendants as well as the three Orders that have found MGA to be in deliberate violation of Court Orders.

### 3. MGA's Disruption Arguments Are Unsubstantiated.

MGA asserts that "even granting Mattel only additional Phase 2 witnesses" would "interrupt" their Phase 1 preparation. Opp. at 15:8-18. MGA, however, offers no evidence in support. This is undoubtedly because it cannot. Common experience

---

[18] Despite MGA's contention that it is improper to raise with this Court matters pending before Judge Infante, MGA appears to include these arguments as well in the hopes of obtaining a preemptive ruling on these subjects. While Mattel will not belabor the errors in MGA's contentions since they are irrelevant here and will be fully aired before Judge Infante, MGA repeatedly mischaracterizes Mattel's discovery positions. MGA also neglects to mention that the position it now attacks was, in fact, MGA's own position previously.

certainly suggests that Skadden and the half-dozen other firms representing MGA could marshal sufficient resources to handle discovery. The alleged burden or disruption flowing from MGA's assertion of claims which seek "billions" of dollars in recovery against Mattel cannot justify refusing Mattel full and fair discovery into those claims.

## II. MATTEL SHOULD BE ALLOWED FURTHER INTERROGATORIES

Two categories of interrogatories are involved here: first, Mattel's proposed additional interrogatories that it seeks leave to serve; and second, interrogatories which Mattel has already served on defendants. As a review of the interrogatories makes clear, they all go to core issues relating to the dozens of claims in three operative complaints in effect in this case.

Because there is little it can say about the interrogatories themselves, MGA largely recycles its "diligence" standard argument under Rule 16(b), faulting Mattel for purportedly proposing a limit to interrogatories that it could not meet and for not moving for more interrogatories earlier. Those arguments thus fail for the same reasons addressed above. Moreover, they clearly fail here because -- as MGA does not dispute -- Mattel would be entitled to serve more interrogatories than it has served (or now seeks to serve) to date under the Federal Rules without modification, since in the normal course Mattel could serve 25 interrogatories against each of the six defendants in each of the consolidated cases before the Court, without seeking leave. Fed. R. Civ. P. 33(a). Mattel has studiously guarded against serving unnecessary interrogatories. But in this case, where Mattel is up against half a dozen defendants and is defending against vast, overbroad claims brought by a major competitor, it simply cannot obtain the information it needs within the 50 interrogatory limit.

Although it does not deny their relevance, MGA suggests that some Mattel interrogatories may not be "necessary." However, even the handful of examples MGA points to shows otherwise. MGA only identifies *two* which are purportedly "duplicative" because Mattel served an interrogatory seeking information that overlaps with *documents* Mattel also sought. MGA cites no rule that suggests that it is somehow

improper both to request documents and information in an interrogatory response. And indeed, not only are such requests commonplace, but the two types of requests serve wholly different purposes. For example, MGA faults Mattel for seeking information about its Bratz sales, profits and costs in the form of an interrogatory. Opp. at 18. MGA ignores that, even if it wishes to simply point to documents to respond under Rule 33(d), (1) it is required to *specifically* identify the documents that contain the relevant information that would otherwise be set forth in its interrogatory response, which a request for production cannot require, and (2) MGA is thereafter *limited to* the documents to which it points in its interrogatory response when it comes to things like pointing to allocable costs. That MGA highlights this as one of the few interrogatories Mattel purportedly "wasted" is telling.

MGA also avers that some of Mattel's leave interrogatories are overbroad. Here as well, the specific example MGA identifies refutes its argument. Citing Interrogatory No. 56, MGA complains that it should not have to identify *the Mattel documents MGA has stolen* because, in essence, it would have to search its records to find them -- to see if the documents in its files are in fact documents which were taken from Mattel. Opp. at 20-21. Such an undertaking does not "far outweigh[] any probative value of the information sought," given that the documents are essential evidence to both liability and damages for Mattel's trade secret claims.

Finally, MGA misapprehends Mattel's leave request as to the interrogatories Mattel has already served. Mattel is not asking this Court to "order counter-defendants to respond" to Mattel's interrogatories or to overrule any of their myriad boilerplate objections. Opp. at 23. Those issues are pending before Judge Infante. Conversely, Mattel has not asked Judge Infante for relief from the 50 interrogatory limit. That is what Mattel seeks from the Court, to the extent it is needed. This division is for good reason. This Court directed that all requests for leave from the discovery limits be addressed to it. Mattel is doing so.

## Conclusion

Mattel respectfully requests that its motion for leave be granted in its entirety.

DATED: December 31, 2007    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By_____
   John Quinn
   Attorneys for Mattel, Inc.