1 THOMAS J. NOLAN (Bar No. 66992)
  (tnolan@skadden.com)
2 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
  300 South Grand Avenue, Suite 3400
3 Los Angeles, CA 90071-3144
  Tel.: (213) 687-5000/Fax: (213) 687-5600
4
  RAOUL D. KENNEDY (Bar No. 40892)
5 (rkennedy@skadden.com)
  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 4 Embarcadero Center, 38th Floor
  San Francisco, CA 94111-5974
7 Tel.: (415) 984-6400 / Fax: (415) 984-2698

8 Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
  MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian
9

10                    UNITED STATED DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12

13

14 CARTER BRYANT, an individual,          )   CASE NO. CV 04-9049 SGL (RNBx)
                                          )
15              Plaintiff,                )   **DISCOVERY MATTER**
                                          )
16      v.                                )   MGA'S REPLY MEMORANDUM
                                          )   IN SUPPORT OF ITS MOTION TO
17 MATTEL, INC., a Delaware               )   COMPEL REGARDING MATTEL'S
   corporation,                           )   PRIVILEGE WAIVER BY CLAIM
18                                        )   ASSERTION
                Defendant.                )
19                                        )
                                          )   [To be heard by Discovery Master
20 AND CONSOLIDATED ACTIONS               )   Hon. Edward Infante (Ref.) Pursuant
                                          )   to Court Order of December 6, 2006]
21                                        )
                                              Hearing Date: TBD
22                                            Time: TBD

23

24

25

26

27

28

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

III. ARGUMENT ................................................................................................... 2

    A.    Mattel Has Waived Privilege Under the *Hearn* Test ................. 2

        1.    The First Prong of *Hearn* Is Met: Mattel's Assertion of Privilege Is a Result of Its Affirmative Act of Filing Suit.................................................................................. 2

        2.    The Second Prong of *Hearn* Is Met: Mattel Has Put Privileged Information at Issue ................................ 3

        3.    The Third Prong of *Hearn* Is Met: The Contested Information Is Vital to MGA's Defense ......................... 9

    B.    Mattel's Remaining, Contradictory Arguments Are Without Merit .......................................................................... 13

        1.    MGA Has Complied With the Local Rules................. 13

        2.    MGA's Motion Is Not Limited to Material Previously Before the Discovery Master ...................... 14

    C.    The Court Should Order Production of Information Sufficient for MGA to Develop Fully Its Statute of Limitations and Laches Defenses.............................................. 15

IV. CONCLUSION ............................................................................................... 17

**TABLE OF AUTHORITIES**

**CASES**

*Agster v. Maricopa County,*
   422 F.3d 836 (9th Cir. 2005) ........................................................ 4

*Aloe Vera of America, Inc. v. United States,*
   No. CV 99-1794 PHX JAT, 2003 WL 22429082 (D. Ariz. Sept. 23,
   2003) aff'd 376 F.3d 960 (9th Cir 2004) ..................................... 5, 7,
                                                                    10, 11, 17

*American Standard Inc. v. Bendix Corp.,*
   80 F.R.D. 706 (W.D. Mo. 1978) ............................................... 10

*Beneficial Franchise, Inc. v. Bank One*, N.A.,
   205 F.R.D. 212 (N.D. Ill. 2001) ................................................. 6

*Bittaker v. Woodford,*
   331 F.3d 715 (9th Cir. 2003) ............................................... 6, 10

*Bohack Corp. v. Iowa Beef Processors, Inc.,*
   No. 77C 1673, 1981 WL 2018 (E.D.N.Y. Jan. 13, 1981) .......... 17

*Chamberlain Group v. Interlogix,*
   No. 01 C 6157, 2002 WL 467153 (N.D. Ill. Mar. 27, 2002) ..... 5, 6

*Chevron Corp. v. Pennzoil Co.,*
   974 F.2d 1156 (9th Cir. 1992) .................................................... 6

*Conkling v. Turner,*
   883 F.2d 431 (5th Cir. 1989) .................................................... 10

*Estate of Gonalez v. Hickman,*
   No. 05-0660-MMM(RCx), 2007 WL 3238725
   (C.D. Cal. Mar. 8, 2007) ......................................................... 14

*Harbert v. Priebe,*
   466 F. Supp. 2d 1214 (N.D. Cal. 2006) ..................................... 4

*Hearn v. Rhay,*
   68 F.R.D. 574 (E.D. Wash. 1975) ....................................... *passim*

*Holmgren v. State Farm Mutual Automobile Insurance Co.,*
   976 F.2d 573 (9th Cir. 1992) ..................................................... 6

*Home Indemnity Co. v. Lane Powell Moss & Miller,*
   43 F.3d 1322 (9th Cir. 1995) ............................................... 4, 6,
                                                                    11, 12, 13

*In re Imperial Corp. of America,*
   179 F.R.D. 286 (S.D. Cal. 1998) .............................................. 8,
                                                                    9, 12

*Moreno v. Harrison*,
No. C04-2933 MMC, 2006 WL 2411421 (N.D. Cal. Aug. 18, 2006) .......... 6

*Public Service Co. of New Mexico v. Lyons*,
129 N.M. 487, 10 P.3d 166 (N.M. Ct. App. 2000) .................................... 3, 4

*Rambus Inc. v. Samsung Electronics Co.*,
Nos. C-05-02298 RMW, C-05-00334 RMW,
2007 WL 3444376 (N.D. Cal. Nov. 13, 2007) ...................................... *passim*

*Reavis v. Metropolitan Property & Liability Insurance Co.*,
117 F.R.D. 160 (S.D. Cal. 1987) ................................................................... 6

*Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*,
32 F.3d 851 (3d Cir. 1994) .................................................................... 6, 12, 13

*Russell v. Curtin Matheson Scientific, Inc.*,
493 F. Supp. 456 (S.D. Tex. 1980) ........................................................... 10

*Smith v. Massachusetts*
543 U.S. 462 (2005) ................................................................................ 15

*Titan Corp. v. M/A-Com, Inc.*,
No. 93-CV-335, 1994 WL 16001739 (S.D. Cal. Jun. 22, 1994) .......... *passim*

*U.S. ex rel. O'Connel v. Chapman University*,
245 F.R.D. 646 (C.D. Cal. 2007) ............................................................ 14

*United States v. Amlani*,
169 F.3d 1189 (9th Cir. 1999) ............................................................. 1, 2, 4, 6

*United States v. St. Pierre*,
132 F.2d 837 (2d Cir. 1942) .................................................................. 13

*Wm. T. Thompson Co. v. General Nutrition Corp.*,
671 F.2d 100 (3d Cir. 1982) .................................................................... 4

**STATUTES**

Local Rule 37-2.1 ...................................................................................... 13

**MISCELLANEOUS**

2 Paul R. Rice, *Attorney-Client Privilege in the United States*, §9:53 .................... 3

Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* (5th ed. 2007) ............................................................................ 6, 7

# I. INTRODUCTION

In its moving papers, MGA demonstrated that fairness requires disclosure of information in Mattel's possession bearing on what Mattel knew or had reason to suspect prior to November 2003 regarding Bryant's involvement in Bratz, his alleged breach of contract, his work for MGA, and/or Mattel's alleged "true owner[ship] of Bratz." MGA cited specific discovery requests it had propounded on Mattel in this regard, and showed how Mattel had waived the attorney-client and work product protections under the Ninth Circuit's three-part *Hearn* test because (1) Mattel took the affirmative act of filing suit against MGA, (2) Mattel put the protected information at issue in the case by relying on a claim of fraudulent concealment in order to oppose MGA's statute of limitations and laches defenses, and (3) application of the attorney-client and work product protections would deny MGA access to information vital to its defense.[1]

None of the arguments raised in Mattel's opposition papers come close to overcoming this showing. Instead, Mattel misstates the law governing waiver by claim assertion and mischaracterizes the facts and case law at issue, seeking to defeat a straw man of its own creation.

The three-part test for determining whether a party has impliedly waived privilege and work product as to subject matter it has placed at issue in litigation is well-established:

> The factors common to each exception [to the rules of privilege] may be summarized as follows: (1) assertion of the privilege was a result of *some affirmative act, such as filing suit*, by the asserting party; (2) through this affirmative act, the asserting party *put the protected information at issue by making it relevant* to the case; and (3)

---

[1] *See Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975); *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (recognizing the Ninth Circuit's adoption of the *Hearn* test).

application of the *privilege would have denied the opposing party access to information vital to his defense.*

*Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (emphasis added); *see also United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (recognizing the Ninth Circuit's adoption of the *Hearn* test).

Mattel does not dispute that *Hearn* lays out the applicable test in the Ninth Circuit.[2] Nor does Mattel dispute that the first prong of *Hearn* is met – that "assertion of the privilege was a result of *some affirmative act, such as filing suit*," by Mattel.[3] Instead, Mattel misstates the second and third prongs of *Hearn* and argues that an entirely different test, a minority view contrary to Ninth Circuit law, has not been satisfied. Mattel's arguments fail to come to grips with the issues before the Court and therefore lack merit.

## III. ARGUMENT

### A. Mattel Has Waived Privilege Under the *Hearn* Test

> 1. The First Prong of *Hearn* Is Met: Mattel's Assertion of Privilege Is a Result of Its Affirmative Act of Filing Suit

Mattel does not dispute, and therefore concedes, that the first prong of the *Hearn* test has been met.[4] Clearly, Mattel's assertion of privilege as to information bearing on MGA's statute of limitations and laches defenses arises only because Mattel has brought claims against MGA.[5]

---

[2] *See* Mattel's Opposition to MGA's Motion to MGA's Motion to Compel Regarding Mattel's Privilege Waiver by Claim Assertion ("Mattel's Opposition" or "Opp.") at 7 (Citing *Hearn* and *Amlani*). MGA notes that Mattel's straw-man argument, namely that "[c]ontrary to MGA's premise, *relevance* is not the standard for waiver of the attorney-client privilege," is simply not argued by MGA. *Hearn*, as adopted by the Ninth Circuit, is the rule. Motion at 15-22.

[3] *Hearn* at 581 (emphasis added).

[4] *See* Opp. at 7:13-14 (challenging only the second and third prongs of *Hearn* test).

[5] *See* MGA's Motion to Compel Regarding Mattel's Privilege Waiver by Claim Assertion ("Motion") at 16.

2.   The Second Prong of *Hearn* Is Met: Mattel Has Put Privileged Information at Issue

Mattel argues that it did not, through its affirmative act of filing suit, "put the protected information at issue by making it relevant to the case"[6] because "MGA does not and cannot point to any privileged information that Mattel relies on in support of its allegations of fraudulent concealment."[7]   Mattel's argument is based on a misstatement of the applicable law.   This waiver doctrine is not – as Mattel contends – limited to situations where the plaintiff has made offensive or direct use of privileged materials in its lawsuit.[8]   There are a few jurisdictions that have limited the doctrine in this manner, but this narrow interpretation is a minority viewpoint that has been rejected by the Ninth Circuit.   The majority rule, which applies here, holds that where, as here, a plaintiff asserts the discovery rule or equitable tolling to avoid application of the statute of limitations, the plaintiff has "inject[ed] the issue of her knowledge into the suit" and "[f]airness, therefore, requires that the defendant be given access to attorney-client communications that may impact on resolution of that issue."   2 Paul R. Rice, *Attorney-Client Privilege in the United States*, § 9:53 (2d ed., rev. 2007).

The "offensive or direct use" requirement that Mattel advocates, and its relationship to the *Hearn* test, is discussed in detail in *Public Service Co. of N.M. v. Lyons*, 129 N.M. 487, 10 P.3d 166 (N.M. Ct. App. 2000), a New Mexico appellate court case.   In *Lyons*, as here, the plaintiffs pled equitable tolling in their complaint in order to avoid the statute of limitations, claiming they did not discover the alleged improper conduct until 1997, long after the alleged wrongful conduct occurred.   The trial court ruled that plaintiffs' allegations on this topic placed their knowledge of the

---

[6] *Id.*
[7] Opp. at 9.
[8] *Id.*

alleged improper conduct at issue, thereby waiving their claims of privilege and work product protection with respect to documents that are "relevant to Plaintiffs' assertion that they did not discover the alleged improper conduct until 1997." *Id.*, 10 P.3d at 169. The New Mexico Court of Appeals reversed, holding that New Mexico will instead follow "*a minority of courts*" that require "offensive or direct use of privileged materials before the party will be deemed to have waived its attorney-client privileges." *Id.* at 173 (emphasis added).

In reaching this conclusion, the *Lyons* court explained that this outcome differs from the majority view, which does not require an offensive or direct use of privileged materials for a waiver to occur. *Id.* at 172. The court explained that the test set forth in *Hearn*, applying a more lenient standard, "represents the majority view" and "'has received overwhelming support in the courts that have addressed the issue.'" *Id.* (quoting Paul R. Rice, *Attorney-Client Privilege in the United States*, § 9:50 (2d ed. 1999).[9] The court quoted the three-part test under *Hearn*, and explained that "fairness" is the "guiding principle" of its analysis. *Id.* at 171-72. The *Lyons* court explained that, under *Hearn*, there is no "direct use" requirement and thus the test is less protective of the privilege. *Id.* at 174-75.

As reflected in the discussion in *Lyons*, the Ninth Circuit has squarely rejected the minority rule and held that there is no "offensive or direct use" requirement for the doctrine to apply. *See United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995).[10] Moreover, the more lenient *Hearn* test has been used to find a waiver by

---

[9] In the most update version of the Rice treatise (2d ed., rev. 2007), this statement is found in section 9:51.

[10] In federal court, the federal common law applies with respect to privilege issues where a lawsuit involves both federal and state law claims. *Agster v. Maricopa County*, 422 F.3d 836, 839-40 (9th Cir. 2005); *Wm. T. Thompson Co. v. Gen'l Nutrition Corp. Inc.*, 671 F.2d 100, 104 (3rd Cir. 1982); *Harbert v. Priebe*, 466 F. Supp. 2d 1214, 1215 (N.D. Cal. 2006).

California federal district courts in the exact same context as at issue here – where a plaintiff sought to avoid the statute of limitations by invoking the discovery rule or fraudulent concealment. *Rambus Inc. v. Samsung Elecs. Co., Ltd.*, Nos. C-05-02298 RMW, C-05-00334 RMW, 2007 WL 3444376, at *3 (N.D. Cal. Nov. 13, 2007) ("[T]the *Hearn* test explicitly contemplates allowing a party's *pleadings* to raise an issue giving rise to an implied privilege waiver. Similarly, *alleging a basis for avoiding a statute of limitations* constitutes an affirmative act under the *Hearn* test.") (emphasis added); *accord Titan Corp. v. M/A-Com, Inc.*, No. 93-CV-335, 1994 WL 16001739, at **2-4 (S.D. Cal. 1994); *see also Aloe Vera of Am., Inc. v. United States*, No. CV 99-1794 PHX JAT, 2003 WL 22429082 at *3 (D. Ariz. Sept. 23, 2003) (finding a waiver where "[p]laintiffs have asserted privilege as the result of an affirmative act – by filing a suit in which a statute of limitations defense is available," and the date of discovery of plaintiffs' claims was thereby put at issue.). In *Rambus*, *Titan* and *Aloe Vera*, the plaintiffs did not make any "offensive or direct use" of privileged material but were still found to have waived the privilege. The plaintiffs merely alleged they had no actual knowledge of the alleged wrongdoing until such time as would support plaintiffs' argument that their claims were timely filed. This mirrors the allegations in Mattel's Second Amended Answer and Counterclaims ("SAC") that its claims were timely because "Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel to suspect or to know that it was the true owner of Bratz...."[11]

Mattel's reliance on an opinion from the Northern District of Illinois, *Chamberlain Group v. Interlogix, Inc.*, No. 01 C 6157, 2002 WL 467153 (N.D. Ill. Mar. 27, 2002),[12] is also misplaced. The decision was based on the minority view of

---

[11] Mumford Decl., Ex. 1: SAC ¶ 35.

[12] *See* Opp. at 8.

the implied waiver doctrine as adopted by another jurisdiction, not the majority-view *Hearn* test applied in the Ninth Circuit. *See Chamberlain Group v. Interlogix*, 2002 WL 467153 at *3 (citing *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851 (3d Cir. 1994) *and Beneficial Franchise, Inc. v. Bank One*, 205 F.R.D. 212 (N.D. Ill. 2001)). Indeed, the court in *Rambus v. Samsung* expressly found that the Third Circuit's *Rhone-Poulenc* test was incompatible with the Ninth Circuit's *Hearn* test:

> In addition to requiring assertion of a claim or defense, the *Rhone-Poulenc* analysis requires the party impliedly waiving privilege to try *"to prove that claim or defense by disclosing or describing an attorney-client communication." This is not an element of the Hearn test.*

*Rambus v. Samsung*, 2007 WL 3444376 at *3, quoting *Rhone-Poulenc v. Home Indemnity*, 32 F.3d at 863 (emphasis added). By arguing that MGA must "point to … privileged information that Mattel relies on in support of its allegations of fraudulent concealment," Mattel argues that this Court should apply, not *Hearn*, but the conflicting, minority view. Of course, as even Mattel must concede, this Court has no such latitude. *See generally Moreno v. Harrison*, 2006 WL 2411421, at *3 n.4 (N.D. Cal. 2006) (district court has no authority to disregard Ninth Circuit precedent).[13]

Further, while Mattel cherry-picks language from a noted treatise, Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, (5th ed. 2007), in an

---

[13] Notably, the cases relied upon by Mattel regarding *Hearn*'s "at issue" requirement are *either* (1) from other Circuits, *see Chamberlain Group*, 2002 WL 467153 (N.D. Ill. Mar. 27, 2002), *or else* (2) cases from within the Ninth Circuit that did not involve a statute of limitations defense. *See Amlani*, 169 F.3d 1189, 1191 (attorney disparagement claim), *cited by* Opp. at 8-9; *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992) (advice of counsel defense), *cited by* Opp. at 8; *Holmgren v. State Farm Mut. Autom. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (bad faith insurance claim settlement case), *cited by* Opp. at 9; *Reavis v. Metropolitan Property & Liab. Ins. Co.*, 117 F.R.D. 160, 164 (S.D. Cal. 1987) (same), *cited by* Opp. at 9; *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) (ineffective assistance of counsel), *cited by* Opp. at 9; *Home Indemnity Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322 (9th Cir. 1995) (legal malpractice), *cited by* Opp. at 9.

effort to paint the requested relief as too broad,[14] Mattel studiously ignores the treatise's more germane discussion of the particular issues and case law before the Court, such as its approving summary of *Aloe Vera of America, Inc. v. United States*, 2003 WL 22429082 (D. Ariz. Sept. 23, 2003), *aff'd* 376 F.3d 960 (9th Cir. 2004):

> A statute confers upon a party the right to sue someone disclosing tax returns…. The statute has a two-year statute of limitations. Thus a key affirmative defense became that plaintiff had waited too long to bring suit. But to demonstrate that affirmative defense, defendant needed access to privileged and work-product information of plaintiff to demonstrate when plaintiff knew or should have known its purported cause of action. Discovery of both plaintiff's privileged and work-product documents was allowed so that defendant could prove its affirmative defense.

Edna S. Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, (5th ed. 2007), at 549.

Mattel's attempts to distinguish or discredit *Rambus v. Samsung*, a case on all fours with this motion, are unavailing. Contrary to Mattel's argument,[15] *Rambus* does not hold that the second prong of *Hearn* is satisfied by mere relevance of the information sought.[16] Rather, the *Rambus* court both required and found that Samsung had "'*put the protected information at issue* by making it relevant to the case[.]'" *Rambus*, 2007 WL 3444376 at *3 (emphasis added) (quoting *Hearn*, 68 F.R.D. at 581). After laying out the *Hearn* test in its entirety, the court explained that Samsung had "raise[d] an issue giving rise to an implied privilege waiver [by] alleging a basis for avoiding [the] statute of limitations[.]" *Rambus*, 2007 WL 3444376, at *3. Likewise, the court approved the Special Master's finding that

> [b]y affirmative[ly] asserting both the discovery rule and equitable tolling in its counterclaims and in its briefing and oral argument …

---

[14] *See* Opp. at 10.

[15] Opp. at 10

[16] The second prong of *Hearn* states that "through [its] affirmative act [such as filing suit], the asserting party *put the protected information at issue* by making it relevant to the case[.]" *Hearn*, 68 F.R.D. at 581 (emphasis added).

1
2
> *Samsung has placed the issue of what it knew about Steinberg's work at Rambus at issue in this litigation.*

3
4
*Id.* at *2 (emphasis added).  Thus, Mattel's attempt to caricature the holding of *Rambus* is plain wrong.[17]

5
6
7
8
In support of its incorrect reading of *Hearn* as requiring direct or offensive use of the disputed information, Mattel also cites *In re Imperial Corp. of America*, 179 F.R.D. 286 (S.D. Cal. 1998) and *Titan Corp..,* 1994 WL 16001739.[18]  These cases, however, do not support but rather sharply undercut Mattel's position.

9
10
11
12
13
14
15
16
17
18
19
20
The issue in *In re Imperial Corp.* was not, as Mattel contends, that "plaintiff contended that *it learned it had a claim* for legal malpractice *by means of counsel's investigation.*"[19]  Rather, at issue was, as here, whether plaintiff had waived privilege as to facts relating to defendant's statute of limitations defense.  *In re Imperial Corp. of America*, 179 F.R.D. at 289-90.  Thus the key factual question was not *how* plaintiff discovered its claims, but *when* it should have done so.  *Id.*  Defendant Shea & Gould ("S & G") contended that "earlier investigation by plaintiff's counsel … [was] linked to plaintiff's counsel's later decision to file the present action against S & G."  *Id.* at 288.  The predicate fact to the court's finding of waiver was not that plaintiff learned of its claims through privileged communications, as Mattel argues, but that plaintiff had pled around the statute of limitations, raising the question of what it knew when:

21
22
> S & G contends that *since plaintiff has alleged avoidance of the statute of limitations*, what facts [plaintiff's counsel] Pillsbury possessed prior to April 1991, and what investigations Pillsbury was pursuing during

23
24
25
26
[17] The page of the *Rambus* court's opinion cited by Mattel does *not* discuss the standard for prong two of the *Hearn* test, but rather addresses Samsung's argument that, regardless of whether Samsung had put the disputed information "at issue" for purposes of prong two of *Hearn*, the information was irrelevant to Rambus's statute of limitations defense and thus did not need to be produced.  *Rambus*, 2007 WL 3444376, at *4.  The court rejected that argument.  *Id.*

[18] *See* Opp. at 11.

27
[19] *Id.* (emphasis added).

28

that time frame, waive both the attorney-client privilege and work product doctrine to the extent the privileged information may be relevant to the avoidance of the statue of limitations issue.... *Since plaintiff has placed in issue his own knowledge, and that of his attorneys', and Pillsbury attorneys', any privilege that attaches to the information ... is waived, at least in the limited scope of addressing the avoidance of the statute of limitations issue.*

*In re Imperial Corp.*, 179 F.R.D. at 289-90 (emphasis added). Thus, *In re Imperial Corp.* holds that alleging avoidance of the statute of limitations is sufficient to waive privilege as to information that would allow the defendant to test that allegation. *Id.*

Similarly, Mattel selectively quotes from *Titan Corp.*, 1994 WL 16001739, to suggest that the case requires plaintiff to try to *prove a claim* by disclosing or describing an attorney-client communication.[20] However, *Titan Corp.* is in fact equally applicable to Mattel's claims here:

Plaintiff affirmatively relies on its counsel's investigation and assessment to support its claim that it did not and could not with reasonable diligence have discovered the alleged fraud prior to one year before it filed its complaint. Having taken this litigation position, *plaintiff cannot in fairness preclude defendant from now conducting discovery into the facts underlying this investigation and assessment.*

*Titan Corp.*, 1994 WL 16001739, at *2 (emphasis added). Notably, the *Titan* court also rejected plaintiff's argument that "it was forced to rely on [its counsel's] investigation only because defendant asserted the statute of limitations defense, and that plaintiff therefore has not committed an 'affirmative act.'" *Id.*

In short, under the second prong of the Ninth Circuit's *Hearn* test, pleading around the statute of limitations, as Mattel has done here, is sufficient to place "at issue" the question of plaintiff's knowledge about its potential claims.

   3.   The Third Prong of *Hearn* Is Met: The Contested Information Is Vital to MGA's Defense

The third prong of the *Hearn* test requires that "application of the privilege would have denied the opposing party access to information vital to his defense."

---

[20] Opp. at 11, quoting *Titan Corp.*, 1994 WL 16001739, at *2.

*Hearn*, 68 F.R.D. at 581.  That standard is easily met here, as MGA cannot develop its statute of limitations and laches defenses without information regarding when Mattel first knew or should have known of its purported claims against MGA.  *See Rambus*, 2007 WL 3444376, at *4-5 (information regarding when plaintiff learned its employee worked for competitor found "vital" to defense under *Hearn*); *Aloe Vera of Am.*, 2003 WL 22429082, at *5 ("information relating to when [p]laintiffs' counsel may have advised [p]laintiffs that a cause of action may have accrued [...] is vital to [d]efendant's statute of limitations defense."); *Titan Corp.* at *3 ("There is no real question that defendant has substantial need of the materials in preparation of its defense that this action is barred by the statute of limitations.");[21] *Russell v. Curtin Matheson Scientific, Inc.*, 493 F. Supp. 456, 458 (S.D. Tex. 1980) (following *Hearn* and holding "[i]t is essential to proper resolution of the equitable tolling issue to know when the plaintiffs learned of the 180-day requirement, whether they learned of it from their attorney or someone else."); *Am. Standard Inc. v. Bendix Corp.*, 80 F.R.D. 706, 709-10 (W.D. Mo. 1978) (finding substantial need for privileged information relating to plaintiff's knowledge of claims for statute of limitations defense, waiving privilege); *Conkling v. Turner*, 883 F.2d 431, 434-35 (5th Cir. 1989) (same).

Unable to come to grips with this standard, Mattel first mischaracterizes MGA's Motion papers on this point, claiming, incorrectly, that MGA stated the test as whether the defense is "case dispositive."[22]  Next, Mattel simply invents a new

---

[21] Though the *Titan* court's discussion of "substantial need" is part of its work product waiver analysis, the Ninth Circuit has held that the *Hearn* test applies equally to work product.  See *Bittaker*, 331 F.3d at 722, n.6 ("Although our decision is couched in terms of the attorney-client privilege, it applies equally to the work product privilege, a complementary rule that protects many of the same interests.").

[22] Opp. at 12.  Of course, requiring that a defense be "case dispositive" would impose a much more stringent standard than that the requested information be "vital" to the defense, as *Hearn* provides.  In fact, the "case dispositive" language does not stem from MGA's description of the standard, but the Discovery Master's description of MGA and Bryant's potentially "case dispositive … [statute of limitations and laches]

standard out of whole cloth: "the test here is ... whether there is substantial other evidence bearing on [the defense]."[23]  Mattel's supposed "test," however, is both contrary to *Hearn* and deeply flawed.

The profound flaw in Mattel's supposed "substantial other evidence test" is illustrated by this very case.  The information MGA seeks bears on when, with reasonable diligence, Mattel *first* knew or should have known of its alleged claims against MGA.  In response, Mattel points to its interrogatory response that states that Mattel did not obtain actual knowledge until November 24, 2003, and argues that MGA cannot show it happened any earlier.  However, the fact that "substantial evidence" exists to show that Mattel knew of its claims *in November 2003* does not mean Mattel did not know, or should not have known, *earlier*.  MGA is entitled to discovery to test Mattel's claim that the relevant date is November 24, 2003.  Mattel's analysis thus begs the very question at issue in MGA's motion.

The case on which Mattel relies in this regard, *Home Indemnity Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322 (9th Cir. 1995) does not support Mattel's position and – unlike *Rambus*, *Titan*, and *Imperial Corp.* – did not involve a defendant seeking discovery in support of a statute of limitations or laches defense.  Rather, *Home Indemnity* was a legal malpractice case, in which the defendant law firm sought to show that it could not, as plaintiff claimed, have settled an insurance dispute for the policy limit.  The law firm argued "that its conduct did not cause the failure to settle because the plaintiffs never intended to settle for the policy limits[.]"  *Id.* at 1326.  The law firm therefore "sought access to information about the plaintiffs' and their attorneys' states of mind, motivations, and intent with respect to their settlement negotiations with [the insurer]" in order to demonstrate that plaintiffs

---

defenses[.]"  MGA's Motion at 19, *quoting* Mumford Decl., Ex. 18: Reporter's Transcript of the Proceedings – January 25, 2007, at 11:1-12:9.
[23] Opp. at 12.

had not negotiated in good faith. *Id.* The court found no implied waiver because plaintiffs *had made a written settlement offer for the policy limit,* a fact which the court found completely at odds with defendant's theory:

> It follows then that even if there were attorney-client communications that would indicate that the plaintiffs were attempting to set up a bad faith action, they would not be relevant in light of the plaintiffs' apparent willingness to settle at the time of the [policy limit] offer.

*Id.* at 1326-27. Thus, the court found that even if a waiver had been found and the requested discovery allowed, it would have made no difference to defendants' case. *Id.* at 1327 (finding any error would have been harmless). The holding of *Home Indemnity* thus was not, as Mattel contends, that a defendant's "access to non-privileged information regarding its defense" is sufficient to defeat a claim of waiver.[24] That is simply not the law in California.

In sum, Mattel's arguments regarding whether the information MGA seeks is "vital" to MGA's defense encapsulate the very reason the doctrine of implied waiver by claim assertion exists: fairness demands that Mattel may not hide critical evidence bearing on MGA's statute of limitations and laches defenses behind a veil of privilege, and at the same time argue, as grounds for denying relief, that "MGA does not and cannot point to any privileged information [regarding Mattel's] allegations of fraudulent concealment."[25] Only last month Mattel conceded for the first time that "there was rumor and innuendo that Bryant may be working with MGA on Bratz" prior to July 2003.[26] MGA is entitled to test whether this so-called "rumor and innuendo" was sufficient to put Mattel on notice of its alleged claims. "[Privilege] should not furnish one side with what may be false evidence and deprive

---

[24] Opp. at 12.
[25] Opp. at 9.
[26] Mumford Decl., Ex. 3, Supplemental Responses to MGA's First Set of Interrogatories, at 113.

the other of any means of detecting the imposition." *United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir. 1942) (Hand, J.) (addressing Fifth Amendment privilege).

**B.**     **Mattel's Remaining, Contradictory Arguments Are Without Merit**

Implicitly acknowledging the strength of MGA's claim that Mattel has waived privilege, Mattel seeks to change the debate and argue either that (1) MGA's Motion is too broad to comply with the Court's local rules or, contrarily, (2) MGA's motion is narrowly limited to the documents from Mattel's 2002 investigation that have previously been the subject of motions before the Discovery Master.  Neither argument has merit.

1.     MGA Has Complied With the Local Rules

Mattel disregards the specific discovery requests cited in MGA's Motion and argues that the Motion is not sufficiently specific in its request for relief, citing Local Rule 37-2.1.  In so doing, Mattel mischaracterizes MGA's motion.  Moreover, neither Local Rule 37-2.1 nor the cases cited by Mattel support this position.

First, Mattel's representation that "MGA fails to identify specific discovery requests as to which it seeks an order compelling discovery," underlined and bolded for emphasis,[27] is demonstrably false.  Pages six and seven of MGA's Motion identify discovery requests by which the information now sought was requested of Mattel.[28]

Second, Local Rule 37-2.1 provides only that a party "present the disputed issues as concisely as the subject matter permits[.]" L.R. 37-2.1.  Here, as explained above, MGA's inability to locate evidence shielded by Mattel's claim of privilege is precisely what is at issue under the doctrine of implied waiver by claim assertion,

---

[27] Opp. at 2.

[28] *See* MGA's Motion at 6-7 and Mumford Decl., Ex. 12, MGA's First Set of Interrogatories to Mattel at 10-11 (Nos. 9-11); Ex. 13, MGA's First Set of Requests for the Production of Documents and Things at 56 (Requests 191-92).

particularly when the statute of limitations is implicated.  Accordingly, MGA's motion is drafted "as concisely as the subject matter permits." *Id.*

Third, consistent with this flexible approach to discovery motion practice, district courts in the Ninth Circuit have received requests – and ordered relief – of precisely the kind requested here by MGA.  *See* Section C, *infra*, and cases cited.[29]

2.  MGA's Motion Is Not Limited to Material Previously Before the Discovery Master

Mattel argues not only that MGA's request is too general, but that it is too specific, limited to documents as to which Mattel claims the Discovery Master has already ruled.[30]  As even a cursory review of MGA's motion reveals, however, this is not the case.  As stated in MGA's Motion, MGA's interrogatories ask Mattel to "[s]tate, with particularity, when and how [it] first learned of BRATZ," "that Bryant performed work for MGA," or "that Bryant conceived of the BRATZ CONCEPT."[31]  Likewise, MGA requested all documents "evidencing, mentioning, referring to, or relating to the date and manner in which [Mattel] first learned of Bryant's involvement with, work on, and connection to the conception, design, creation or development of BRATZ or BRATZ INTELLECTUAL PROPERTY" and Bryant's "involvement with, contract with, and work with or for MGA."[32]  Thus, MGA's

---

[29] The two cases Mattel cites in support of this argument, *United States ex rel. O'Connel v. Chapman University*, 245 F.R.D. 646, 648 (C.D. Cal. 2007) and *Estate of Gonalez v. Hickman*, No. EDCV 05-0660-MMM(RCx), 2007 WL 3238725 (C.D. Cal. Mar. 8, 2007), are inapposite.  Both cases are about a party's failure to submit a joint stipulation regarding discovery disputes, not about the specificity of discovery motions.

[30] Opp. at 4.

[31] MGA's Motion at 6-7, citing Mumford Decl., Ex. 12, MGA's First Set of Interrogatories to Mattel at 10-11 (Nos. 9-11)

[32] *Id.*, citing Mumford Decl., Ex. 13: MGA's First Set of Requests for the Production of Documents and Things at 56 (Requests 191-92).

1  Motion is not limited to documents addressed by, and does not improperly seek

2  reconsideration of, the Discovery Master's May 15, 2007 order.[33]

3

4  **C.   The Court Should Order Production of Information Sufficient for MGA to Develop Fully Its Statute of Limitations and Laches Defenses**

5

6  Mattel's argument that "[i]nformation regarding 'Bryant's involvement in

7  Bratz' and 'his work for MGA'… is far broader than … necessary for any purported

8  laches or statute of limitations defenses," because "Mattel's knowledge that Bryant

9  worked for MGA or was involved with Bratz *after he left Mattel* is not …

10  pertinent"[34] is wrong, and inconsistent with Mattel's other positions in this case.

11  Mattel has taken the position that the similarities between Toon Teens and Bratz,

12  which apparently were noted at least as early as the spring of 2002, "tend[] to

13  establish that Bryant created Bratz works *while he was a Mattel employee* and not in

14  1998 as he claims."[35]  By Mattel's own logic, then, Mattel's knowledge of the

15  similarities between Toon Teens and Bratz, *combined with knowledge of Bryant's*

16  *involvement in Bratz and his work for MGA*, would tend to establish that *Mattel had*

17

18

---

19  [33] Contrary to Mattel's suggestion in its opposition, the Court did not address in its
20  May 15, 2007 Order whether Mattel had waived the attorney-client privilege by
   putting the question of its knowledge at issue in this case.  Regardless, the Discovery
21  Master's May 15, 2007 was issued before Mattel disclosed that "there was rumor and
   innuendo" prior to July 2003 "that Bryant may be working with MGA on Bratz."
22  December 2007 Supplemental Responses to MGA's First Set of Interrogatories
   (Mumford Decl., Ex. 3 at 113.)  Thus, since the May 15, 2007 Order, additional facts
23  have come to light bearing on MGA's need for information from this time.  *See*
   *Smith v. Massachusetts* 543 U.S. 462, 475, (2005) ("[a] district court has the
24  *inherent power* to reconsider and modify its interlocutory orders prior to the entry of
   judgment … " (emphasis added; internal quotes omitted).  This development also
25  impacts the appropriate scope of Mattel's production.  *See* Section C, *infra*.
   [34] *Id.* (emphasis in original).
26  [35] *See* MGA's Motion at 17, citing Mumford Decl., Ex. 4: Mattel's Objections and
   Second Supplemental Responses to Defendant's First Set of Interrogatories at 27,
27  172, 214, 336, 376, 416, 456 and 488 (emphasis added).

28

*reason to know* "that Bryant created Bratz works while he was a Mattel employee and not in 1998 as he claims."[36]

Moreover, as stated in MGA's moving papers, Mattel recently admitted that prior to July 2003 "there was rumor and innuendo that Bryant may be working with MGA on Bratz."[37] While Mattel took care in its interrogatory responses to characterize this knowledge as "rumor and innuendo," it is clear that Mattel has not disclosed all information on this subject to which MGA, in fairness, is entitled. Thus, Mattel's attempt to limit its scope of production to "information sufficient to show when Mattel obtained knowledge of Bryant's creation design and development of Bratz *while he was a Mattel employee* and work for MGA *while he was a Mattel employee*"[38] is improper and should be rejected.

In addition, Mattel's arguments regarding the scope of its waiver improperly seek to adjudicate MGA's statute of limitations defense through this discovery motion, based on the current, limited record of what Mattel knew and when.[39] MGA rejects Mattel's sweeping characterizations of the posture of Mattel's diverse claims and MGA's defenses, which clearly are not before the Discovery Master by this Motion.

"[F]airness, not relevance, is the touchstone of the scope of the implied waiver doctrine." *Rambus*, 2007 WL 3444376, at *6. The relief MGA seeks is accordingly limited to what it needs to fully develop its statute of limitations and laches defenses. This relief is also consistent with that ordered in the same situation by other district courts in the Ninth Circuit. *See id.* at *7 (ordering production of "documents

---

[36] *Id.*

[37] *See* MGA's Motion at 17, citing Mumford Decl., Ex. 3: Supplemental Responses to MGA's First Set of Interrogatories to Mattel, Inc. at 113.

[38] Opp. at 18 (emphasis in original).

[39] Opp. at 16-18

demonstrating Samsung's subjective knowledge of [its former employee's] work for Rambus, or the objective circumstances relating to [his] work for Rambus, prior to the critical date(s) for Samsung's tolling allegations."); *Aloe Vera of Am.*, 2003 WL 22429082, at *5 (ordering production of "documents containing information relating to when [p]laintiffs' counsel may have advised [p]laintiffs that a cause of action may have accrued [...] if [such information] exists"); *Titan Corp.*, 1994 WL 16001739 at *4 (ordering production of "the following additional information: 1) specifically when plaintiff's counsel informed plaintiff or gave plaintiff reason to believe that it had been defrauded by defendant; 2) whether plaintiff or its agents supplied any information relevant to that determination; 3) the specifics of that information; and 4) when each item of information was supplied to plaintiff's counsel").

In this connection, MGA also notes that it is the date of Mattel's knowledge, not the date of the documents that may demonstrate such knowledge, that is key. *See Bohack Corp. v. Iowa Beef Processors, Inc.*, No. 77 C 1673, 1981 WL 2018, at *2 (E.D.N.Y. Jan. 13, 1981) (requiring production of May 20, 1974 letter despite plaintiff Bohack's concession of "its awareness of the possibility of a claim in May 1974" because "the letter may reveal that Bohack was aware of a possible claim prior to May 1974 or that Bohack had failed to exercise due diligence in investigating the possible claim").

## IV. CONCLUSION

For the foregoing reasons, MGA respectfully requests an order (1) concluding that Mattel has waived attorney-client privilege and work product concerning what it knew or had reason to suspect prior to November 2003 regarding Bryant's involvement in Bratz, his alleged breach of contract, his work for MGA, and/or Mattel's alleged "true owner[ship] of Bratz," and (2) compelling Mattel to supplement its discovery responses and document productions accordingly.

1    and/or Mattel's alleged "true owner[ship] of Bratz," and (2) compelling Mattel to

2    supplement its discovery responses and document productions accordingly.

3

4    DATED:  January 2, 2008

5                            SKADDEN, ARPS, SLATE, MEAGHER &

6                            FLOM, LLP



7

8           By: _____

9                  Raoul D. Kennedy
                 Attorney   for   MGA   ENTERTAINMENT, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA's Reply in Support of Motion To Compel
Regarding Mattel's Privilege Waiver By Claim Assertion
18
Q:\Documents and Settings\rkennedy\Local Settings\Temporary Internet Files\OLK3\hac1-488904-4.doc
MSW - Draft January 2, 2008 - 12:59 PM