THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
E-mail: tnolan@skadden.com

RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, California 94111-5974
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
Email: rkennedy@skadden.com

Attorneys for Counter-Defendants
MGA ENTERTAINMENT, INC., ISAAC LARIAN,
MGA ENTERTAINMENT (HK) LIMITED, and
MGAE de MEXICO S.R.L. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT, an individual

Plaintiff,

v.

MATTEL, INC., a Delaware corporation

Defendant.

Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC.

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with Case No. 04-9059 and Case No. 05-2727

**DISCOVERY MATTER**

**[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]**

**MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION TO ENFORCE THE MAY 15, 2007 ORDER OF THE DISCOVERY MASTER REGARDING PRODUCTION OF LARIAN V. LARIAN DOCUMENTS AND FOR SANCTIONS**

**[Declaration of Philip W. Marsh filed concurrently herewith]**

Date: January 10, 2008
Time: 9:30 a.m.
Place: Telephonic

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ........ ii
MEMORANDUM OF POINTS AND AUTHORITIES ........ 1
I. PRELIMINARY STATEMENT ........ 1
II. STATEMENT OF FACTS ........ 2
A. In Response to Mattel's Thousands of Document Requests, MGA Has Produced and Is Producing Over Three Million Pages of Documents ........ 2
B. Mattel Initially Propounded a Single Request for Documents Related to the *Larian v. Larian* Proceedings and the Court Later Granted Mattel's Motion to Compel on That Request ........ 3
C. MGA Offered Mattel an Efficient Solution to Resolve Its Concerns Regarding the Production of *Larian v. Larian* Documents, but Mattel Cut Short the Meet-and-Confer Process, Opting Instead to File This Motion to Enforce ........ 4
III. ARGUMENT ........ 6
A. The Documents Mattel Asserts MGA Failed to Produce Do Not Fall Within the Plain Language of the Request ........ 6
1. "Raw Data" Used by Ernest Dutcher ........ 7
2. Financial Models Prepared by Isaac Larian ........ 8
3. The April 2000 Board Meeting ........ 8
4. MGA's Financial Statements for 2000 and 2001 ........ 9
5. Transcripts and Exhibits From the *Larian v. Larian* Proceedings ........ 9
B. Mattel Has Misrepresented MGA's Position Regarding the Protective Orders, as Well as the Nature of Those Orders ........ 10
C. The Court Should Deny Mattel's Motion for Sanctions ........ 11
IV. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Larian v. Larian*,
123 Cal. App. 4th 751 (2004) .......... 9, 10

**RULES**

C.D. Cal. R. 37-1 .......... 12, 13

ii

MGA'S OPP. TO MATTEL'S MOT. TO ENFORCE THE MAY 15, 2007 ORDER RE: *LARIAN V. LARIAN* DOCS.

# MEMORANDUM OF POINTS AND AUTHORITIES

Counter-defendants MGA Entertainment, Inc. ("MGA"), Isaac Larian ("Isaac"), MGA Entertainment (HK) Limited ("MGA HK"), and MGAE de Mexico S.R.L. de C.V. ("MGA Mexico") (collectively, the "MGA Defendants") file this memorandum in opposition to Mattel's Motion to Enforce the May 15, 2007 Order of the Discovery Master Regarding Production of *Larian v. Larian* Documents and for Sanctions.

## I. PRELIMINARY STATEMENT

MGA has produced over 3.7 million pages of documents in response to more than a dozen sets of discovery requests from Mattel containing more than 2,300 individual requests. Mattel now complains that MGA's document production is deficient because MGA has failed to produce numerous documents relating to various unrelated lawsuits and arbitration proceedings between Isaac Larian and his brother Farhad Larian (the "*Larian v. Larian* proceedings"). Mattel contends that the Discovery Master ordered MGA to produce these documents in his order dated May 15, 2007 (the "Order") and has moved the Court to compel MGA to comply with the Order and impose sanctions.

Mattel's motions and its request for sanctions should be denied for three reasons. First, the documents Mattel alleges MGA has failed to produce simply do not fall within the scope of the document request (Document Request No. 41) Mattel propounded to MGA. That request was narrowly aimed at documents referring or relating to Bratz and/or Angel that were "filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad Larian against Isaac Larian. . . ." (Alban Decl., Ex. 1 (Mattel's First Set of RFPs to MGA) at 15:8-13 (emphasis added).) By means of its motion Mattel has attempted to drastically expand the scope of its request by demanding internal financial data, financial projections and board minutes that either do not "refer or relate" to Bratz or Angel or were not "filed, submitted or served" in the *Larian v. Larian* proceedings. Mattel should not be permitted to expand the scope of its discovery request under the guise of a motion to enforce a

prior court order.

Second, Mattel's assertion that MGA has based its refusal to produce the requested documents on two protective orders entered in the *Larian v. Larian* proceedings is untrue. On the contrary, MGA's counsel explicitly informed Mattel's counsel that it was not withholding documents from the *Larian v. Larian* proceedings on the basis of the protective orders and offered to conduct a new search for documents and to produce any documents that are responsive to Mattel's request. MGA also separately agreed in principle to modify the protective orders entered in the *Larian v. Larian* proceedings, thereby mooting any concern about the impact of the protective orders.

Third, MGA has not willfully failed to comply with the Court's Order. MGA's counsel offered a reasonable and practical proposal to address the concerns Mattel raised over the production of documents from the *Larian v. Larian* proceedings. Mattel's premature repudiation of MGA's good faith efforts to resolve those concerns in favor of pursuing yet another motion to compel should not be rewarded with an award of sanctions.

## II. STATEMENT OF FACTS

### A. In Response to Mattel's Thousands of Document Requests, MGA Has Produced and Is Producing Over Three Million Pages of Documents

During the course of this nearly four-year-old litigation, Mattel has served and continues to serve the MGA Defendants with more than a dozen sets of document requests containing more than 2,300 individual requests. (Declaration of Philip W. Marsh ("Marsh Decl."), ¶ 1.) In response to Mattel's document requests, MGA has already produced approximately 3.7 million pages of documents, and continues to produce responsive documents. (Marsh Decl., Ex. A (Transcript of December 14, 2007 hearing) at 72:18-20.)

**B. Mattel Initially Propounded a Single Request for Documents Related to the *Larian v. Larian* Proceedings and the Court Later Granted Mattel's Motion to Compel on That Request**

Mattel served its First Set of Requests for Production of Documents and Tangible Things to MGA, which include 100 document requests, on March 14, 2005. (Mot. to Enforce at 2:18-19; Alban Decl., Ex. 1.)

Request No. 41 is the only request at issue here. It seeks:

> REQUEST FOR PRODUCTION NO. 41:
>
> All DOCUMENTS that REFER OR RELATE TO BRATZ and/or ANGEL filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad Larian against Isaac Larian, including without limitation all declarations, affidavits and sworn testimony given by any PERSON in such suit or arbitration proceedings.

(Mot. to Enforce at 2:20-24; Alban Decl., Ex. 1 at 15:8-13.)

Request No. 41 was the subject of a motion to compel by Mattel, which was granted as to Request No. 41 by this Court. (Marsh Decl., Ex. B (5/15/07 Order of J. Infante) at 11:5.) In granting Mattel's Motion to Compel, this Court stated that the issue of the conception date for Bratz "appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian," noting that Farhad had made an allegation about the conception date. (Marsh Decl., Ex. B at 10:22-11:1.)

The Court also noted that "MGA objects to producing documents from the Larians' arbitration on the grounds that the arbitration was governed by a protective order that prohibits the use of any documents or testimony for any purpose other than the arbitration." (Marsh Decl., Ex. B at 11:1-4.) However, the Court observed that "MGA . . . has not provided any evidence of the protective order." (Marsh Decl., Ex. B at 11:4.)

C. **MGA Offered Mattel an Efficient Solution to Resolve Its Concerns Regarding the Production of *Larian v. Larian* Documents, but Mattel Cut Short the Meet-and-Confer Process, Opting Instead to File This Motion to Enforce**

On December 7, 2007, Mattel's counsel initiated the meet-and-confer process by sending a letter regarding what Mattel viewed as an "apparent violation of the Court's May 15, 2007 Order," because of what Mattel interpreted as a failure to produce documents relating to the *Larian v. Larian* proceedings. (Marsh Decl., Ex. C.) MGA's counsel responded by letter on December 11, 2007 (Marsh Decl., Ex. D), and on that same day the parties coordinated a mutually convenient time to meet on December 14, 2007, by email. (Marsh Decl., Ex. E.)

The parties met and conferred on December 14, 2007, as agreed. During the conference counsel for Mattel expressly stated that he was not asking MGA to produce documents from the *Larian v. Larian* proceedings that Mattel already had obtained from other sources but was interested in several discrete categories of documents that Mattel had not yet obtained. Counsel for MGA responded that he would endeavor to determine the existence of such documents and whether they had been previously produced. The parties agreed to schedule a follow-up meeting for December 21, 2007. (Marsh Decl. ¶¶ 7, 8.) Shortly after the meeting, Mattel's counsel requested that the follow-up meeting be moved up to December 20, 2007 because he was scheduled to travel out of town for the holidays on December 21, 2007, and MGA's counsel promptly accommodated this request. (Marsh Decl. ¶ 8, Ex. F.)

After the conference on December 14, 2007, MGA took several steps to follow up on the issues that had been raised by Mattel's counsel. Specifically, MGA's new counsel spoke with MGA's prior counsel to attempt to determine the scope of MGA's production and any areas requiring potential supplementation. (Marsh Decl. ¶ 12.) MGA's new counsel also performed an independent search of the production database in an attempt to verify the scope of that production, and initiated searches of MGA's

files to determine if there were additional responsive documents that would require collection and a supplemental production. (Marsh Decl. ¶ 13.) Based on its searches, MGA determined that the best course of action was to undertake a new search for responsive documents so that it could supplement its production, if necessary. (Marsh Decl. ¶¶ 11, 14, Ex. H (12/21/07 letter from J. Allen to J. Alban summarizing the 12/20/07 conference of counsel).)

The parties met and conferred again on December 20, 2007, as agreed. (Marsh, Decl. ¶¶ 7, 14.) During that meeting, MGA's counsel proposed that, because of the difficulty in determining which documents from the *Larian v. Larian* proceedings had already been produced, the most efficient way to address Mattel's concerns regarding MGA's document production would be to undertake a new search for documents. (Marsh Decl. ¶ 14, Ex. H.) MGA's counsel also proposed that MGA would provide Mattel with a timetable by December 27, 2007 for producing any documents that might need to be produced, noting that, because of the holiday season, it would likely take some time to obtain necessary information from MGA. (Marsh Decl. ¶ 14, Ex. H.) Mattel's counsel responded favorably to the proposal to undertake a new search and to provide Mattel a timetable for any necessary production, initially indicating agreement but stating that his agreement was subject to approval by his superiors at his firm. (Marsh Decl. ¶ 14, Ex. H.) He then indicated that he would check with his superiors and get back to MGA's counsel. (Marsh Decl. ¶ 14, Ex. H.)

Later that night, at 10:24 p.m., Mattel's counsel sent a letter by email to MGA's counsel purporting to summarize the December 14 and December 20 conferences, and indicating that the proposal he had previously responded to favorably was now unacceptable. (Marsh Decl., Ex. I.) Less than 24 hours later, at 5:20 p.m., before receiving any response from MGA, Mattel had filed this motion to Enforce. (Marsh Decl, Ex. J (12/21/07 email forwarding the present motion).) Later that evening, MGA's counsel sent a letter to Mattel's counsel correcting several misstatements regarding the parties' meet and confer efforts. (Marsh Decl., Ex. H.)

## III. ARGUMENT

### A. The Documents Mattel Asserts MGA Failed to Produce Do Not Fall Within the Plain Language of the Request

Mattel complains that MGA possesses approximately five categories of responsive documents that it has failed to produce. (Mot. to Enforce at 4:4-5:15.) However, none of the documents that are the subject of Mattel's latest motion fall within the plain wording of Mattel's document request.

The single request at issue here is Request No. 41 from Mattel's first set of document requests to MGA, which states as follows:

> REQUEST FOR PRODUCTION NO. 41:
>
> All DOCUMENTS that REFER OR RELATE TO BRATZ and/or ANGEL filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad Larian against Isaac Larian, including without limitation all declarations, affidavits and sworn testimony given by any PERSON in such suit or arbitration proceedings.

(Mot. to Enforce at 2:20-24; Alban Decl., Ex. 1 at 15:8-13.)

In order to fall within the four corners of this request, a document must meet three criteria. First, it must "REFER OR RELATE TO BRATZ and/or ANGEL." Second, it must have been "filed, submitted or served" in the suit and/or arbitration proceeding. Third, the suit or arbitration proceedings must have been "brought by Farhad Larian against Isaac Larian".

MGA does not dispute that the pleadings and briefs filed in the *Larian v. Larian* proceedings would fall within the scope of Document Request No. 41. However, because Mattel's counsel expressly stated that he was not asking MGA to produce papers that had been filed in the *Larian v. Larian* proceedings that Mattel already had obtained from other sources, these documents are not at issue in this motion and it does not appear that Mattel seeks to compel MGA to engage in the meaningless exercise of producing documents Mattel already has in its possession. (Marsh Decl. ¶ 8.)

Mattel's complaint appears focused on approximately five categories of documents it contends MGA has not produced: (1) certain "raw data" a gentleman by the name of Ernest Dutcher used to develop an appraisal of MGA that he prepared for Morad Zorabi, the individual Isaac Larian and Farhad Larian had designated as the arbitrator to resolve their dispute over the value of MGA; (2) unspecified internal financial models that were allegedly prepared by Isaac Larian that would, accordingly to Mattel, cast light on, among other things, the timing of Bratz's creation and development; (3) minutes of an April 2000 board meeting at which Isaac Larian allegedly asked for a bonus on any new toy idea he personally developed; (4) MGA's financial statements from 2000 and 2001; and (5) unspecified transcripts and exhibits from the *Larian v. Larian* proceedings.

1. "Raw Data" Used by Ernest Dutcher

Mattel claims that certain "raw data" used by Ernest Dutcher to prepare his appraisals of MGA refer or relate to Bratz and/or Angel, and cites a declaration prepared by Mr. Dutcher in support of this proposition. (Mot. to Enforce at 4:13-20 & n.13.) However, review of the Dutcher declaration (as opposed to accepting Mattel's characterization of its contents) reveals that Mr. Dutcher "was not provided with any information or documentation about revenues and profits generated from the Bratz line" when he prepared any of his appraisals. (Marsh Decl., Ex. T at 4:1-5; *see also* Alban Decl, Ex. 6 at 4:1-5.)

Mattel also cites to an uncertified and unverified transcript of a purported audio-taped meeting between Mr. Dutcher, Morad Zarabi, and an unidentified "male voice" as support for its assertion that Mr. Dutcher had identified certain "hot products" which he had used to justify a projected 25% revenue growth rate for MGA in 2001. Mattel surmises that the hot products to which Dutcher referred must have included Bratz. The transcript says nothing of the sort. Rather, the transcript indicates that Mr. Dutcher was explaining that he had observed fluctuations in MGA's revenue between 1995 and 1999 (Alban Decl., Ex. 7 at 17:6-19:12) which he ascribed

to the possible impact of an occasional hot product, but that he had used a 5% growth rate in his appraisal (not 25%) because of the volatility in MGA's historical sales. Thus, contrary to Mattel's assertion, Mr. Dutcher did not project a 25% revenue growth of MGA in 2000 based on Bratz.

In view of Mr. Dutcher's own sworn testimony that he did not receive any information relating to Bratz in connection with his preparation of his appraisals and his further statement that he did not project an unprecedented growth rate for MGA in 2001 based on the inclusion of any Bratz product, it is difficult to understand how the purported "raw data" on which he relied refers or relates to Bratz. More logically, the data does not relate or refer to Bratz.

2. Financial Models Prepared by Isaac Larian

Mattel also claims that MGA possesses certain financial models that Isaac Larian regularly prepared to forecast MGA's revenue streams and that such models have some bearing on Mattel's claims in this lawsuit. (Mot. to Enforce at 2:1-7, 5:7-10.) Mattel offers no evidence that any such models (if they exist at all),[1] were ever filed, submitted or served in the lawsuit or arbitration proceedings that Farhad Larian brought against Isaac Larian.

Mattel should be held to the plain wording of its request. Accordingly, MGA should not be required to produce documents that were not served, filed or submitted in the *Larian v. Larian* proceedings.

3. The April 2000 Board Meeting

Mattel offers no evidence that any documents referring or relating to an April 2000 MGA board meeting were ever filed in the *Larian v. Larian* proceedings. Moreover, Mattel appears to concede that there was no mention or reference to Bratz

[1] Because MGA has had to divert its attention to responding to Mattel's Motion to Enforce, it has not yet had time to ascertain whether the purported models sought by Mattel even exist. However, as discussed below, MGA already has produced to Mattel its financial statements. Therefore Mattel's complaint that MGA has not produced financial information is without merit.

at the alleged board meeting. (Mot. to Enforce at 5 n.15; Alban Decl., Ex. 9 at 2-3.) Therefore, Mattel's attempt to bring documents relating to the board meeting within the ambit of Document Request No. 41 is without merit. If Mattel wanted to obtain documents relating to that board meeting it could have easily drafted a request that specifically mentioned it. Its failure to do so is fatal to its argument that MGA failed to produce responsive documents.

4. MGA's Financial Statements for 2000 and 2001

Mattel has already sought and MGA has already produced audited and unaudited quarterly and annual profit and loss statements, quarterly and annual statements, as well as annual reports. (Marsh Decl. ¶ 30, Ex. W (Mattel's First Set of Requests for Documents and Things re: Claims of Unfair Competition to MGA Entertainment, Inc.), at 45, Request Nos. 157, 158, and 159.) In view of this earlier production, it is difficult to understand the basis for Mattel's complaint that MGA has not produced its financial documents. Mattel is not entitled to force MGA to re-produce documents it has already given to Mattel.

5. Transcripts and Exhibits From the *Larian v. Larian* Proceedings

Mattel suggests there is a treasure trove of transcripts and exhibits from the *Larian v. Larian* proceedings that MGA has refused to produce. (Mot. to Enforce at 8:9-9:14.) The facts do not align with Mattel's theory. Mattel neglects to mention three salient facts in its detailed recitation of the *Larian v. Larian* proceedings and its purported relevance to Mattel's claims in this case.

First, no formal discovery ever occurred in the state court proceedings because the case was ordered to arbitration following the Court of Appeal's decision in *Larian v. Larian*, 123 Cal. App. 4th 751 (2004). The appellate court ruled in that case that Farhad Larian's claims against Isaac Larian regarding Isaac's alleged failure to disclose that Bratz was under development at the time Farhad sold his stock in MGA to Isaac, was subject to an arbitration agreement between the brothers; therefore, Farhad could not pursue those claims in court. In remanding the matter to

the lower court, the Court of Appeal directed the lower court to grant Isaac Larian's motion to compel arbitration and to "stay civil proceedings." 123 Cal. App. 4th at 765-66.

Second, during the course of arbitration proceedings ordered by the Court of Appeal, the arbitrator ruled that the parties were not entitled to engage in discovery and the arbitrator therefore denied Farhad's attempt to engage in discovery. (Marsh Decl., Ex. X at 2.)

Third, on the second day of the arbitration proceedings Farhad Larian stated that he had concluded that "his claims against respondent Isaac Larian were unfounded and that it was his request that the proceedings be brought to a conclusion." (Marsh Decl. Ex. Y at 2:20-21.) Based upon Farhad Larian's request, the arbitrator dismissed the arbitration proceedings with prejudice and issued an award in favor of Isaac Larian. (Marsh Decl., Ex. Y at 3:8-13.)

In addition, although MGA's new counsel have not completed their search, it does not appear that any transcript was made of the arbitration proceedings. Therefore, it is not clear at this point whether any such transcripts even exist.

The foregoing procedural history of the *Larian v. Larian* proceedings undercuts Mattel's suggestion that MGA has withheld massive number of documents that were introduced during the course of those proceedings. Accordingly, Mattel's assertion that MGA has not complied with this Court's Order is without merit.

### B. <u>Mattel Has Misrepresented MGA's Position Regarding the Protective Orders, as Well as the Nature of Those Orders</u>

Mattel has devoted hundreds of words to what it claims is MGA's position with regard to the protective orders in the state court proceeding and the court-ordered arbitration proceeding between the Larian brothers. More specifically, Mattel contends that MGA has refused to produce documents from the *Larian v. Larian* proceedings on the basis of two protective orders entered in those proceedings. Mattel's assertion is untrue.

During the meet and confer conferences on December 14 and 20, 2007, counsel for MGA informed counsel for Mattel that although he had a concern about potential violations of the protective orders, MGA was not withholding any documents responsive to Document Request No. 41 on the basis of those orders. (Marsh Decl., Ex. H at 2.) MGA's counsel further stated that in light of MGA's, Isaac Larian's and Farhad Larian's agreement in principle to modify the protective orders, any concern about those orders would be rendered moot. (Marsh Decl., Ex. H at 2.) Therefore, Mattel's arguments regarding the protective order are red herrings.

Two points merit brief mention in order to correct Mattel's misstatements regarding the protective orders. First, Mattel asserts that MGA raised its concerns about the protective orders for the first time during the meet and confer conferences on December 14 and 20, 2007. (Mot. to Enforce at 6:11-7:11.) This is incorrect. In fact, MGA raised this issue in its opposition to Mattel's initial motion to compel, as this Court noted in its Order. (Marsh Decl., Ex. B at 11:1-4.)

Second, the protective orders were expressly entered in the *Larian v. Larian* proceedings to protect any documents provided by MGA in those proceedings from disclosure to third parties. (Marsh Decl., Ex. V; Alban Decl., Ex. 13 at 6:17-7:20.) Mattel's assertion to the contrary is incorrect.

**C. <u>The Court Should Deny Mattel's Motion for Sanctions.</u>**

The Court should deny Mattel's motion for sanctions, which are completely inappropriate and unwarranted here, for at least three reasons.

First, MGA has not withheld documents responsive to Mattel's Request No. 41—the only request at issue here—and Mattel has provided no evidence that would lead this Court to conclude differently. For the most part, Mattel merely speculates about the types of documents it believes MGA might have. MGA has very little evidence to back up its conjecture about the existence of the documents it seeks, and even less to indicate that MGA possesses those documents. Moreover, as discussed above, the evidence shows that the majority (if not all) documents Mattel is seeking

by the present motion are outside of the scope Request No. 41. Beyond merely seeking documents outside the scope of the Request, Mattel has also misrepresented MGA's position, incorrectly stating that MGA is relying on protective orders to withhold documents, in an attempt to bolster its unsupportable claim that MGA has violated this Court's Order. Without any evidence of withheld documents or any need to enforce a Court order that has not been violated, sanctions are completely inappropriate and unwarranted.

Second, despite believing that it is already in compliance with this Court's order, MGA has taken and is taking additional reasonable steps in a good faith attempt to address Mattel's concerns[2]. For example, MGA's new counsel has met with MGA's prior counsel to confirm the scope of MGA's prior production. (Marsh Decl. ¶ 12.) MGA has also begun a search of its own production database and hard-copy files in an effort to determine whether supplementing its production might be necessary. (Marsh Decl. ¶¶ 13, 14, Ex. H.) MGA has also worked in good faith with Farhad Larian and Mattel to modify the existing protective orders in the *Larian v. Larian* proceedings, in response to Mattel's request. (Marsh Decl., Exs. K, N-S.) With MGA taking all of these actions in an effort to address Mattel's stated concerns, despite believing that it is in compliance with the Court's order, it is more than a little surprising that Mattel would seek sanctions in return.

Finally, in keeping with its now-routine practice, Mattel abruptly ended meet-and-confer negotiations it requested to file the present motion, short-circuiting any possibility of achieving a negotiated resolution of the issues raised by this motion. While this conduct alone is likely a violation of Local Rule 37-1, Mattel has moved even one step further from the "good faith effort" required by that rule in this

[2] As outlined in MGA's oppositions to Mattel's motions to compel production by non-parties Farhad Larian, Stern & Goldberg, and Kaye Scholer, MGA was also working in parallel with Mattel and Farhad Larian to revise the existing protective orders in the *Larian v. Larian* proceedings when Mattel filed those motions. (*See* Marsh Decl., Exs. G, K, N-S.)

instance.[3] Specifically, although the tone of the negotiations was agreeable and Mattel's counsel had indicated that MGA's proposal to undertake a new search and provide a timetable by which that search would be completed was acceptable (pending approval by superiors), Mattel then sent a letter later that night suggesting that the proposal was unacceptable from its inception. (Marsh Decl. ¶ 14, Ex. H.) Before the ink on that letter was totally dry, Mattel had filed this motion. Although Mattel is permitted to respond however it chooses to MGA's proposal, making an abrupt about-face and mischaracterizing agreeable negotiations to create a false sense of disagreement between the parties or to attempt to create "critical disputes" that do not exist is certainly contrary to the good-faith effort required by Local Rule 37-1. Mattel should not be rewarded for flouting the rules of this Court by ignoring the requirement to negotiate in good faith, or for reflexively choosing to end what would otherwise be productive negotiations in favor of filing a motion.

## IV. CONCLUSION

Mattel has failed to establish that MGA has not produced documents responsive to Document Request No. 41. Accordingly, the MGA Defendants pray that Mattel's Motion, including its request for sanctions, be denied.

//

//

//

//

//

//

//

---

[3] Local Rule 37-1, entitled "Pre-Filing Conference of Counsel," requires that before filing any motion relating to discover, "counsel for the parties shall confer ***in a good faith effort*** to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible. . . ." (C.D. Cal. R. 37-1 (emphasis added).)

DATED: December 31, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: [signature]
Raoul D. Kennedy

Attorneys for Counter-Defendants MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.