# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION


CARTER BRYANT, an
individual,

       Plaintiff,

    vs.

MATTEL, INC., a Delaware
corporation,

       Defendants.

No. CV 04-9049 SGL
(RNBx)

**CERTIFIED COPY**

———————————————————

Consolidated with MATTEL, INC. v.
BRYANT and MGA ENTERTAINMENT, INC.
v. MATTEL, INC.

———————————————————


HEARING BEFORE THE HONORABLE EDWARD A. INFANTE

San Francisco, California

Friday, December 14, 2007


Reported by:
DANA M. FREED
CSR No. 10602

JOB No. 76864

EXHIBIT _A_
PAGE _1_

1                    UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
2                        EASTERN DIVISION

3

4     CARTER BRYANT, an
      individual,
5
                   Plaintiff,
6
           vs.                          No. CV 04-9049 SGL
7                                       (RNBx)
      MATTEL, INC., a Delaware
8     corporation,

9                  Defendants.

10    _____
      Consolidated with MATTEL, INC. v.
11    BRYANT and MGA ENTERTAINMENT, INC.
      v. MATTEL, INC.
12    _____

13

14             Hearing before the Honorable Edward A. Infante,

15    at JAMS, Two Embarcadero Center, Suite 1500, San Francisco,

16    California, beginning at 10:49 a.m. and ending at

17    12:43 p.m. on Friday, December 14, 2007, before

18    DANA M. FREED, Certified Shorthand Reporter No. 10602.

19

20

21

22

23

24

25

                         EXHIBIT  4
                         PAGE  2

                                                              2

```
 1     APPEARANCES:

 2

 3     For the Plaintiff CARTER BRYANT, an individual:

 4             KEKER & VAN NEST LLP
               BY:   MICHAEL H. PAGE
 5                   JOHN TRINIDAD
                     CHRISTA MARTINE ANDERSON
 6             Attorneys at Law
               710 Sansome Street
 7             San Francisco, California 94111-1704
               415.391.5400
 8

       For the Defendant MATTEL, INC., a Delaware
 9     corporation:

10             QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
               BY:   JOHN B. QUINN
11                   JON COREY
                     SCOTT B. KIDMAN
12                   B. DYLAN PROCTOR
               Attorneys at Law
13             865 Figueroa Street, 10th Floor
               Los Angeles, California 90017
14             213.443.3000

15     For the Defendants MGA Entertainment, Inc., MGA
       Entertainment (HK) Limited, and Isaac Larian:
16
               SKADDEN ARPS SLATE MEAGHER & FLOM LLP
17             BY:   RAOUL D. KENNEDY
                     THOMAS J. NOLAN
18                   AMY S. PARK
               Attorneys at Law
19             Four Embarcadero Center, 38th Floor
               San Francisco, California 94111-5974
20             415.984.6400

21     Also Present:

22             CRAIG HOLDEN, MGA Entertainment

23

24

25
```

EXHIBIT ___A___
PAGE ___3___

```
1      San Francisco, California, Friday, December 14, 2007

2                   10:49 a.m. - 12:43 p.m.

3

4           JUDGE INFANTE:  Let's begin with counsel.  If

5    you could please enter your appearances, please.

6    First for Mattel.

7           MR. QUINN:  John Quinn appearing for Mattel.

8           MR. COREY:  Jon Corey on behalf of Mattel.

9           MR. KIDMAN:  Scott Kidman for Mattel.

10          MR. PROCTOR:  B. Dylan Proctor for Mattel.

11          MS. ANDERSON:  Your Honor, Christa Martine

12   Anderson for Carter Bryant.

13          JUDGE INFANTE:  Okay.

14          MR. PAGE:  Michael Page for Carter Bryant.

15          MR. TRINIDAD:  John Trinidad for Carter

16   Bryant.

17          MR. HOLDEN:  Craig Holden for MGA.

18          MS. PARK:  Amy Park for MGA.

19          MR. NOLAN:  Tom Nolan for MGA.

20          MR. KENNEDY:  Raoul Kennedy also for MGA.

21          JUDGE INFANTE:  Thank you.

22          I received the parties' joint report

23   regarding motions scheduled to be heard as to which

24   motions you had resolved through your meet and confer

25   process, which motions needed a decision.  That report
```

EXHIBIT _A_

PAGE _4_

1    was submitted to me, I believe, November 30th.  I show

2    eight motions needed to be resolved.  And I'm prepared

3    to hear those motions now.

4              I also have a letter from MGA's counsel dated

5    December 7th, in which you ask that we add another

6    matter to this agenda with respect to procedures for

7    handling the future motion.

8              I also received a trail of e-mails between

9    you regarding that communication.

10             Let's begin with the motions.  Since most of

11   the motions pertain to Mattel as a moving party, I'll

12   call upon Mattel first.  And you may argue the motions

13   in any order that you wish.

14             MR. KENNEDY:  Your Honor, I brought my box

15   for the first three or four.  If we're going to be

16   going in a different order, may I have a minute just

17   to go get the other binders?

18             JUDGE INFANTE:  Of course.  What order do you

19   wish to proceed?

20             MR. QUINN:  I'm going to defer to Mr. Proctor.

21             MR. PROCTOR:  Your Honor, I thought we would

22   start, of course with permission, with the motion

23   about the redactions.

24             MR. KENNEDY:  Can I have just a minute,

25   Your Honor?

5

EXHIBIT  A
PAGE  5

**HEARING**                                                    12/14/07

```
 1              JUDGE INFANTE:  Sure.  Take your time.

 2              MR. KENNEDY:  Thank you.

 3              JUDGE INFANTE:  Sure.  Okay.  The motion, as

 4   I have it in front of me, is Mattel's motion to

 5   enforce the court's order of May 15, 2007 to compel

 6   MGA to produce compelled documents in unredacted form.

 7   And a motion for monetary sanctions.

 8              You may proceed.

 9              MR. PROCTOR:  Thank you, Your Honor.

10              Again, B. Dylan Proctor for Mattel.

11              There are really two issues that I believe

12   merit the court's attention on this motion.  The first

13   is the issue that's briefed, and that is the fact that

14   MGA has willfully violated the court's order by

15   failing to produce its documents in nonredacted form

16   after the Court instructed it to do so.  And still has

17   failed to produce its documents in nonredacted form.

18              And the second aspect of it is MGA's repeated

19   misrepresentations to the Court in connection with

20   this motion, which I believe merits the Court's

21   independent attention.

22              On the first motion or, excuse me, on the

23   first aspect of it, on the motion itself, there is no

24   real dispute.  MGA does not deny that it failed to

25   produce the documents it was compelled to produce in
```

                                                                    6

EXHIBIT  _A_
PAGE  _6_

1   unredacted form.  MGA does not deny that it continued

2   to produce its documents in redacted form, after

3   the Court specifically instructed it that it could no

4   longer produce documents in redacted form.  MGA does

5   not dispute that the Court told it not to do so, and

6   instructed it to produce its prior documents in

7   unredacted form.  And MGA doesn't dispute that it

8   still has not produced some unknown number of

9   documents in unredacted form as it was compelled to

10  do.

11          And that last point is really the nub of the

12  issue.  There has been -- the Court has probably seen

13  a flurry of supplemental declarations about this

14  motion in the past week.  I submitted one, MGA

15  submitted two in response.  And there's a lot of

16  details in there about what exactly has been produced

17  in unredacted form, what exactly has not been produced

18  in unredacted form.  But what is absolutely undisputed

19  is the fact that MGA has not complied with the Court's

20  order.  The Court's order was unequivocal.  The

21  Court's order said MGA shall produce its documents in

22  unredacted form except for redactions made on the

23  basis of privilege.  And MGA willfully flouted that

24  order by continuing to produce its documents with

25  redaction.

EXHIBIT _A_
PAGE _7_

7

1    We advised MGA in writing, at least three or

2    four times, that it was in violation of the Court's

3    order.  And it took no action to remedy the situation.

4    And then after new counsel became involved, we invited

5    MGA to cure its defective production by producing all

6    of its documents in unredacted form.  And even in the

7    supplemental declarations, MGA says, says that it did

8    not do so because it would be a, quote, "burden," and,

9    quote, "involve waste."  And I submit to the Court to

10   project that view towards the Court's orders as

11   improper.

12         The second point is misrepresentations.

13   Which again, I do believe merit the Court's

14   independent attention.  Back in February, when we

15   filed the motion to compel that led to the May 15th

16   order, MGA said in its opposition, told the Court that

17   it, quote, "will have resolved any remaining

18   deficiencies in its production before the motion was

19   heard."  That turned out not to be accurate.  MGA then

20   told the Court, in an e-mail that it sent to

21   Your Honor after we filed this motion, that it had,

22   quote, "completed its production of documents in

23   unredacted form on September 17th."  That was simply

24   false.

25         MGA then said in its opposition, and in the

EXHIBIT __A__
PAGE __8__

1    declarations in opposition, that by October 1,

2    four days after the opposition was filed, it will have

3    produced, quote, correction, quote, "every single

4    document MGA produced with redactions on grounds other

5    than privilege will be reproduced in unredacted form."

6    Every single document.  That's what they represented

7    to the Court.  That was also false.

8            There are also other miscellaneous

9    misrepresentations that are thrown in there.  They

10   told the Court that Mattel promised to take its motion

11   off calendar.  That's not true.  It's not documented,

12   it's not particularly plausible.  They complain that

13   Mattel didn't advise them that they were in violation

14   of the Court's order.  We said it in writing at least

15   three or four times.

16           And so there's, there's a problem here that

17   I think merit the Court's attention.  I think

18   the Court should again compel MGA to produce its

19   documents in unredacted form and impose sanctions.

20           JUDGE INFANTE:  Thank you very much.

21           Mr. Kennedy.

22           MR. KENNEDY:  Thank you, Your Honor.

23           The Court's aware we inherited this case

24   rather recently.  At that point, prior counsel had

25   produced something on the order of 3.4 million pages

EXHIBIT ___A___
PAGE ___9___

1    of documents.  A number of which are, without

2    question, improperly redacted.  Upon associating or

3    substituting in, we took a list that Mattel had then

4    submitted of documents that they had come across that

5    appeared to have improper redactions.  It was fairly

6    sizable.  And we went through and provided them with

7    properly redacted copies of everything on their list.

8    And that was done on November 20th.

9              After that we met and conferred with Mattel's

10   counsel, and they brought up the understandable point

11   there were other documents there.  And our position

12   was there is no way you're going to be looking at all

13   3.4 million pages.  There are obviously documents,

14   once you get to the cover, you're going to know the

15   next 170 pages are utterly irrelevant.

16             We propose the following, and this is in the

17   declaration that we filed with the Court yesterday.

18   If I'm repeating things, just cut me off, Your Honor.

19   But we said, when you come across a document that you

20   really want to use and it's gotten redacted, let us

21   know, we will check it.  If it's improperly redacted,

22   we will get you a proper copy.  They did not take us

23   up on that offer.  And the next we heard was on

24   December 10th, when Mr. Proctor filed his supplemental

25   declaration identifying, I believe, 12 new documents

EXHIBIT __A__
PAGE __10__

1    they had come across that appeared to be improperly

2    redacted.  As of last night, we found and were able to

3    supply him with unredacted copies of 11 of those, and

4    the other 2 are being ferreted out.  One of the

5    problems is we are not familiar with the databases we

6    inherited and prior counsel, to say the least, is not

7    being cooperative.

8            Against that background, as we've gotten into

9    the case, we found at least 400 documents that Mattel

10   has produced that contain what would be improper

11   redactions under your Honor's order.  And yesterday we

12   wrote a letter to Mattel advising them of that and

13   also proposing to use our approach.  We identified the

14   specific Bates number, said, please go through, if it

15   is improperly redacted, give it to us.

16           So I guess in some ways, this is a de-facto

17   motion for reconsideration.  It seems to me there is

18   an element of reason that has to prevail.

19           I'm sorry, I thought your phone was ringing.

20           JUDGE INFANTE:  It's not my phone.

21           MR. QUINN:  Oh, it's mine.  I'm sorry, I'm

22   just shutting it off.

23           MR. KENNEDY:  And I checked with our IT

24   people.  We would be incapable, knowing what we now

25   don't know about the existing databases, to go back

EXHIBIT ___A___
PAGE ___11___

11

1    and unredact.  We would need to do a complete

2    production from scratch, that would be quicker to do

3    it.  And I don't know how many documents that will be

4    unredacted.  But in terms of an utter exercise in

5    waste and futility, in the same way that if we went to

6    Mattel who's produced comparatively less around

7    300,000 documents and tell them they should go through

8    the fool's exercise of going through every one of

9    those to make sure they're properly redacted.  Surely

10   there's a better use of time on both sides.  And as

11   I think we've shown in the last three days, the

12   proposal we made works.  And we can get back to them

13   quickly.

14          As far as the misrepresentations, by the

15   dates that were given, those all appear to be when

16   prior counsel was on the bridge.  I'm in no position

17   to refute anything that's been said.  There is no

18   suggestion, though, that the client who's making any

19   of those kinds of pronouncements.  And I submit if

20   prior counsel should be paying some sanctions, so

21   the Court should so rule.

22          But getting you the bigger portion, this is

23   something we're going to hear again and again today,

24   Mattel seems to, if they don't have a motion to file

25   on that particular day, they feel a need to go file

EXHIBIT __A__
PAGE __12__

12

1   something regardless of what the consequences are

2   going to be.

3           Beyond that, I'm prepared to submit, unless

4   Your Honor has questions.

5           JUDGE INFANTE:  Thank you very much.

6           Is there any reply?

7           MR. PROCTOR:  Briefly, Your Honor.  Two

8   points.

9           First, if there are burdens involved in

10  fixing this problem, it is a problem and it is

11  a burden of MGA's own creation.  As of the date of the

12  Court's order, the May 15, 2007 order, MGA had

13  produced 43,494 documents.  43,000 documents are what

14  MGA had produced as of the date the Court instructed

15  MGA no more redactions.

16          Now, the burden that has been articulated is,

17  well, there are redactions riddled through our

18  3.4-million-page production.  But that all post-dated

19  the Court's instruction that they couldn't redact

20  their documents anymore.  This is a problem of their

21  own creation.

22          JUDGE INFANTE:  Okay.  Thank you very much.

23          It's clear that MGA did not fully comply with

24  the Court's very explicit and expressed order

25  regarding unredacted documents issued on May 15, 2007.

EXHIBIT __A__
PAGE __13__

13

1    I don't feel that noncompliance was justified.

2    I believe substantial compliance has been achieved now

3    with the leadership of new counsel.  I don't see

4    a need for any further order.  I think Mr. Kennedy's

5    approach in the recent meet-and-confer communications

6    and in his declarations is reasonable.

7              However, I hereby impose monetary sanctions,

8    as requested by Mattel, because MGA was clearly not in

9    compliance at the time it filed its motion.  Its

10   motion was necessary.  You seek $3,500.  The motion is

11   granted.  Sanctions shall be paid either by MGA or its

12   former counsel on or before December 31st.  Otherwise,

13   your motion is denied.

14             I'm going to ask you, Mr. Kennedy, to prepare

15   that order --

16             MR. KENNEDY:  Yes, Your Honor.

17             JUDGE INFANTE:  -- for my signature.

18             MR. PROCTOR:  Your Honor, may I add one

19   thing?

20             JUDGE INFANTE:  No.

21             Next motion.

22             MR. QUINN:  With the Court's permission.

23   Your Honor, the next motion that we would request be

24   considered is Mattel's motion with respect to waiver

25   of privilege with respect to the logging or failure to

EXHIBIT ___A___
PAGE ___14___

14

1    timely log privileged documents.

2              JUDGE INFANTE:  Okay.  Let me just pull it up

3    here.  This is a motion that I believe which is

4    captioned as Mattel's Motion to Compel Production of

5    Documents Withheld As Privileged.

6              MR. QUINN:  Yes.

7              JUDGE INFANTE:  And specifically, what you

8    are seeking is that the Court order that the privilege

9    has been waived as to all documents withheld on the

10   basis of privilege that were responsive to the first

11   set of requests for production of documents except for

12   the documents listed on a privilege log that was

13   submitted in 2005.  And except for documents that have

14   been created since the litigation began.  And except

15   for a few documents listed on a supplemental

16   privileged log that pertained to the Hong Kong

17   production.

18             MR. QUINN:  That is correct.

19             JUDGE INFANTE:  You may proceed.

20             MR. QUINN:  Your Honor will recall the

21   background to this motion.  Again, this motion arises

22   out of the Court's order on May 15, 2007, which

23   resulted from the hearing that was on March 5th, 2007

24   raising issues about documents which had not been

25   logged.  It was undisputed at that time that there was

EXHIBIT __A__
PAGE __15__

15

HEARING                                    12/14/07

1    some large volume of privilege documents which had not

2    been logged.   Your Honor indicated as of the time of

3    the March 5, 2000 hearing, that the motion would be

4    granted.   That MGA would be required to provide a

5    privilege log, something that one would not think

6    would require a motion in the first instance, but in

7    this case did.

8             That order came out, was dated March 15,

9    2007.   And your Honor's order was quite explicit that

10   a privilege log was to be produced.   And I quote, "no

11   later than May 31st, 2007."   Now, two weeks later MGA

12   appealed certain aspects of that order to Judge Larson.

13   MGA did not appeal that order with respect to the

14   requirement that there be a privilege log provided by

15   May 31st.

16            As of May 31st, no documents were produced,

17   no privilege log was provided.   A motion, an ex parte

18   application in the form of a letter to Your Honor was

19   sent that very day seeking a stay or modification of

20   the May 15th order.   On June 21st, Your Honor entered

21   an order rejecting that request for a stay, granted

22   some relief with respect to a certain category of

23   documents that were asserted to be in Hong Kong.

24            There was then an appeal on June 22nd that

25   was filed with Judge Larson, an ex parte application

EXHIBIT  _A_
PAGE  _16_

16

1    for review of the order.  That appeal did not seek any

2    relief with respect to the privilege log aspect of the

3    May 15th order.  On July 2nd, Judge Larson granted MGA

4    an extension to produce documents until July 31st, and

5    gave additional relief with respect to the Hong Kong

6    documents.

7           Judge Larson's order confirmed that MGA was

8    to provide a privilege log.  That then is the

9    justification that we have been given in the

10   opposition for not timely providing any privilege log.

11   MGA has said, well, Judge Larson said in his order and

12   where -- in response to an application where they had

13   not challenged the requirement that a privilege log be

14   provided by May 31st.

15          They said, Well, implicitly Judge Larson must

16   have vacated that and given us an additional extension

17   to provide a privilege log within a reasonable time is

18   the explanation that we're given.  Still no privilege

19   log was forthcoming in July.

20          Finally, we're now into August.  And there

21   was a meet and confer at that time.  MGA again stated

22   that there were many thousands of documents that were

23   being withheld on the grounds of privilege that had

24   not been logged.  And that we were told a log would

25   not be provided until mid September at the earliest.

EXHIBIT ___A___
PAGE ___17___

1   Mid September at the earliest, Your Honor.

2          At that point, a week later, Mattel filed the

3   motion to compel enforcement of Your Honor's order.

4   And thereafter, a week later, we got a first

5   supplemental privilege log.  And then there have been

6   privileged logs and supplemental privilege logs have

7   been provided from time to time since then.

8          But what this chronology shows, and I really

9   think it's undisputed, that there was a very cavalier

10  disregard of the unambiguous order that a privilege

11  log be provided by May 31st.

12         Now, where are we?  We are now within five,

13  six weeks of the discovery cutoff.  Privilege logs

14  have since been provided.  We're told all privileged

15  documents have now been identified, subject to

16  redaction issues which are the subject of different

17  motions.

18         But we are now in December, we've got a

19  discovery cutoff next January.  There has been

20  prejudice from this.  We simply -- there isn't the

21  time.  We have been handicapped in our ability to

22  follow up and look behind these privilege logs.  There

23  simply isn't the time any longer to deal with this

24  issue.  And it's a problem that we should never have

25  to deal with.

EXHIBIT __4__
PAGE __18__

18

**HEARING**                                            12/14/07

1        This is a, this is a case where the discovery

2    process simply did not work.  Mattel did what the

3    rules say it should do, it should bring a motion.  It

4    was filed clear last February, the motion was filed.

5    Ultimately, we do get an order that's unambiguous in

6    requiring the compliance in May.  It takes another

7    motion before we get any privilege log at all.

8    I submit on this record that, under the authorities

9    that we've cited here, this is the failure to timely

10   provide a privilege log.  Not just timely provide one

11   in response to a discovery request, but this is

12   untimely in that they just ignored the specific timing

13   provisions of Your Honor's order.  This is, by

14   definition, untimely.

15       And we submit that Your Honor should find

16   that there has been a waiver of the claim of privilege

17   with respect to these documents.

18       JUDGE INFANTE:  Thank you, Mr. Quinn.

19       Mr. Kennedy.

20       MR. KENNEDY:  Your Honor, if in Burlington

21   the Ninth Circuit had adopted an absolute rule that if

22   there's any noncompliance then there's a waiver,

23   I don't know what I'd say for the next 5 minutes.

24   I would be scrambling, that's for sure.  However, that

25   isn't the rule they adopted.  They said we're supposed

EXHIBIT __A__
PAGE __19__

19

1    to apply a holistic approach.

2         And here I think it's significant,

3    Your Honor, that if you look at Burlington, there the

4    requesting party was making repeated pleas from

5    January through April saying, where's your privilege

6    log?  Where's your privilege log?  And those go

7    ignored.  And finally they have to file a motion after

8    that a privilege log is finally forthcoming.

9         Here, and, Your Honor, if you'll cut me off

10   if I'm repeating things, but we're talking about

11   something like 1,138 privilege documents.  If there

12   was anything that's at least a semi-deaf-now motion,

13   this one's got to be pretty close to it.

14        JUDGE INFANTE:  That's the total count of

15   documents on all logs including the supplemental logs?

16        MR. KENNEDY:  In that range, Your Honor.

17        JUDGE INFANTE:  Yeah.

18        MR. KENNEDY:  It's certainly over 1,000

19   documents.  As you will recall, there was an earlier

20   privilege log that was issued in May of 2005 into

21   something like that 62 documents.  There was then

22   a protracted stay.  The stay got lifted and the

23   chronology it's been described took place.  Again, we

24   weren't in the case, but at page 24 of MGA's

25   opposition memo, the chronology on the meet and confer

**HEARING**                                      12/14/07

1    is set forth.  And I notice that isn't contradicted in

2    Mattel's reply memo.  What we're told there is Mattel

3    called on about July 25th, should be six days before

4    even the earlier of the production dates was due, to

5    talk about the 2005 privilege log.  And undenied, no

6    discussion there about where's our privilege log for

7    the documents you aren't even going to be producing

8    for another six days?  And then on April 3, there's

9    a confirmation letter sent on that meet and confer

10   that, again, says nothing about, oh, and, by the way,

11   we need a subsequent privilege log.

12             JUDGE INFANTE:  I think you said April, you

13   meant August.

14             MR. KENNEDY:  I meant August.

15             JUDGE INFANTE:  Yeah.

16             MR. KENNEDY:  I'm sorry, Your Honor.

17             And then on August 9th, the motion gets

18   filed.  So at this point, there is zero indication in

19   the record that there was any attempt made to secure

20   compliance with a log for the July 31st production

21   prior to the filing and the meet and confer that's

22   being cited is a discussion that took place back on

23   July 25 that gets memorialized on August 3.

24             I submit this motion is pretty close to the

25   judicial equivalent of a speed trap in a small town

EXHIBIT _A_
PAGE _21_

21

```
 1    in Georgia.  This was orchestrated, it was planned
 2    this way.  There was no this is a matter of last
 3    resort, they have been running us around the block as
 4    in Burlington.  And we're told there is prejudice.
 5    But I had in here one specific example of if we had
 6    had privileged logs back at a certain point in time,
 7    here is a depo we would have taken.  Here's a question
 8    we would have asked somebody who since died or
 9    whatever.  And I've heard zero discussion of if
10    there's prejudice, is there a less onerous alternative
11    to a waiver of a privilege on 1,138.
12              And my handlers here are correcting me,
13    Your Honor.  I'm told that we've since logged an
14    additional 4,000 items on privileged logs as we've
15    done subsequent production.  I believe we're now up to
16    3.7 million pages that have been produced and
17    something on the range of 5,000 documents in a
18    privilege log.
19              Yes, there's technical noncompliance.  Yes,
20    monetary sanctions may be appropriate.  Yes, if Mattel
21    can point to specific examples of things where they've
22    been prejudiced because they got, didn't get a log on
23    a given day, I would think the Court would be well
24    within its rights to look for creative ways of dealing
25    with that.  But this was, I submit, an orchestrated
```

EXHIBIT _A_
PAGE _22_

22

1   motion, it wasn't a result of any desperation.  It was

2   a gotcha.  And we urge you not to impose a gotcha

3   order, Your Honor.

4              JUDGE INFANTE:  Could you make it clear on

5   the record when you submitted your supplemental

6   privilege logs?  I believe in the month of August or

7   September?

8              MR. KENNEDY:  I'm not sure -- there is

9   material in the record that O'Melveny scrambled to get

10  a privilege log on file by December -- by August 14th,

11  I believe.  Your Honor, as far as the actual dates --

12             JUDGE INFANTE:  I think it's August 14th, is

13  my notation, that MGA produced through it prior

14  counsel a supplemental privilege log on August 14th

15  with about 1,138 documents on the log.  That's my

16  notation.  I'm just trying to verify it.

17             MR. KENNEDY:  That's consistent with my

18  understanding.

19             JUDGE INFANTE:  And then I believe there was

20  a privilege log supplemental produced regarding the

21  Hong Kong documents after that date.

22             MR. KENNEDY:  That's --

23             MS. PARK:  I believe that's right.  I believe

24  that was early September time frame.

25             MR. QUINN:  I think on September 10th, but

EXHIBIT __A__
PAGE __23__

23

1   they don't relate to the Hong Kong documents.  I'm

2   told that that was another.

3          JUDGE INFANTE:  No, they're supplemental.

4          MR. QUINN:  Yeah, of approximately,

5   approximately 2,000 entries.

6          JUDGE INFANTE:  Okay.

7          MR. QUINN:  2,000 entries in September.

8          JUDGE INFANTE:  That's what I wasn't clear

9   about.

10         MR. KENNEDY:  Your Honor, we can certainly

11   submit a short letter brief with the exact numbers.

12   We just --

13         JUDGE INFANTE:  No, that's okay.

14         MR. KENNEDY:  The people --

15         JUDGE INFANTE:  I've got enough that I need

16   for this motion.  I'm just trying to clarify that MGA

17   did produce a supplemental privilege log on

18   August 14th, '07, which is after the motion was

19   submitted and served on August 9th.  And which is

20   after July 31st, which was the final date of

21   production ordered by Judge Larson as to all documents

22   except for the Hong Kong documents.  And then a

23   further supplemental was submitted on September 10th.

24   Okay.  I think that's pretty accurate.

25         MS. PARK:  I think it's September 5th.

EXHIBIT _A_
PAGE _24_

1          MR. QUINN:  I think it's September 5th.

2    I missed -- I gave Your Honor the wrong date.

3          JUDGE INFANTE:  Thank you.

4          MR. QUINN:  And it's 2,868 entries on that

5    supplemental log.  September 5th.

6          JUDGE INFANTE:  Okay.  That will clarify the

7    record.

8          MR. NOLAN:  Then approximately, Your Honor --

9    this is Mr. Nolan -- 3,800, 4,000 additional on

10   November --

11         MS. PARK:  15th.

12         MR. NOLAN:  15th.

13         JUDGE INFANTE:  Okay.  Thank you.

14         Mr. Quinn, any reply?

15         Oh, I suppose I should -- before I give you

16   a reply, I should ask Mr. Kennedy whether or not you

17   wish to speak to the countermotion submitted by your

18   prior counsel in which you countermove to produce

19   documents withheld as privileged from Mattel that was

20   contained in the original opposition papers?  Do you

21   wish to speak to that?

22         MR. KENNEDY:  We'll withdraw that motion,

23   Your Honor.

24         JUDGE INFANTE:  Thank you.  You may proceed.

25         MR. QUINN:  There were no privilege logs

EXHIBIT __A__
PAGE __25__

25

1    provided until after we filed this motion, and then

2    they started to drill the Lau, and it was mostly

3    back-end loaded.  Within the next -- November was the

4    largest logging, within 60 days of the discovery

5    cutoff here.

6              This is not a gotcha situation.  If

7    Your Honor takes a look at our moving papers at page 5

8    and the citations to Mr. Proctor's declaration, we

9    discussed in the meet and confer that took place on

10   August 2nd, the fact that they were in default of

11   this, Your Honor's order requiring the privilege log.

12   This was no surprise.

13             And we confirmed that in a letter that we

14   were objecting to that, to their failure to comply.

15   I wouldn't think it should be necessary to continue to

16   object and object and object to the fact that your

17   adversary is not in compliance with an order.  This

18   was not a gotcha situation.  This was something that

19   was specifically raised and discussed.

20             I mean, this is a case that -- where there

21   has been, as the Burlington court said, Your Honor,

22   a manipulation of the -- and a failure to comply with

23   the discovery rules which has disrupted the discovery

24   process.  And the Court said in that case that in

25   those circumstances it's appropriate to find a waiver

EXHIBIT __A__
PAGE __26__

1   of privilege.  And I think that this is a, if there

2   ever was a case where such a waiver should be found

3   where there's been just defiance of an order being

4   told, notwithstanding the fact that there's an order

5   saying you·must produce the log by the end of May,

6   being told in August we are not going to do it until

7   the middle of September at the earliest, with no

8   justification provided, the only appropriate response

9   to that, the only corrective measure, the only

10  meaningful sanction is not a couple thousand dollars

11  in attorney's fees at this point, it's waiver of the

12  privilege as to these documents.

13          JUDGE INFANTE:  Okay.  Thank you very much.

14          I have read everything on this, including the

15  case law cited, and in particular the Burlington case

16  with respect to the ad hoc approach and the balancing

17  of factors cited in that case.

18          I believe that Judge Larson's order, which

19  was a result of review of my prior order, in which he

20  postulated a new date for production of July 31st,

21  impliedly authorized that the privilege logs be

22  completed by that date as opposed to the date

23  I originally imposed which was May 31st.

24          So I believe that the privilege logs

25  submitted by MGA are untimely, but they're untimely

EXHIBIT  4
PAGE  27

1    only as to, as of July 31st, '07, instead of

2    May 31st, '07.  Given the number of documents

3    involved, the magnitude of the document production,

4    other circumstances involved in this litigation, and

5    all of the factors taught by the Burlington case, I

6    find that a wholesale waiver of the attorney/client

7    privilege as to all documents requested by Mattel is

8    inappropriate.

9            Waiver is a serious matter.  It should be

10   dealt with cautiously.  Although I am not satisfied,

11   and indeed I'm disappointed, in the way discovery has

12   been produced, I think it would be too harsh to

13   declare a wholesale waiver of the scope that Mattel

14   hereby requests.

15           While I feel your motion was justified,

16   I decline to grant a waiver, to grant your motion and

17   find a waiver.  Motion is denied.

18           MR. QUINN:  May I -- I do not believe in our

19   moving papers we requested any other sanctions.

20           JUDGE INFANTE:  You did not.  You did not.

21   And for that reason, I'm not imposing any sanctions.

22           Mr. Kennedy, I would ask you to prepare an

23   order consistent with my comments on the record and my

24   citation of Burlington.

25           MR. KENNEDY:  Yes, Your Honor.

EXHIBIT _A_
PAGE _28_

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1          JUDGE INFANTE:  And let the record also

2    reflect that MGA withdrew its countermotion.

3          Let's move on to the next motion.  How would

4    Mattel like to proceed?

5          MR. QUINN:  The next one, Your Honor, would

6    be the motion relating to the production of documents

7    bearing on indemnity issues and agreements with

8    witnesses or with Mr. Bryant in particular.  In terms

9    of the timeline, this overlaps the motion that we just

10   discussed.

11         JUDGE INFANTE:  Yes.

12         MR. QUINN:  It arises out of the May 15th

13   order where Your Honor ordered MGA to either produce

14   such documents, ruled they were relevant, or log them

15   as privileged.

16         JUDGE INFANTE:  Yes.  This is just, so we can

17   clarify the record, this is Mattel's Motion to Enforce

18   the Court's Order of May 15, 2007 and to Compel MGA to

19   Produce Compelled Documents Including Fee and/or

20   Indemnity Agreements Between MGA and Bryant and Order

21   That Any Privilege Objections Have Been Waived and

22   Impose Sanctions.

23         You may proceed.

24         MR. QUINN:  That was then the subject of

25   a proceeding before Judge Larson where there was

EXHIBIT _A_
PAGE _29_

29

1    a motion for reconsideration before Judge Larson.

2    Judge Larson extended the deadline for compliance,

3    I believe, to July 31, for that aspect of the order.

4         Again, MGA did not comply with that deadline,

5    the July 31st deadline.  There was a subsequent

6    meet-and-confer session where MGA admitted that they

7    didn't know whether their response, whether there were

8    responsive documents, or if so, you know, how many

9    there were because they had not yet looked.  They

10   represented that they would do so by August 24th and

11   produce or log the documents.  They did not do that.

12   No documents responsive to that aspect of the order

13   were produced, no such documents were logged by

14   August 21st.

15        Since then, the -- some documents have been

16   produced, some documents have been logged as recently,

17   the last batch were produced by MGA two weeks ago with

18   a privilege log.  I think it's two weeks ago.  It's

19   November 23.  And we are told that those are all the

20   documents.

21        We had previously been told that Bryant had

22   produced all of his documents that would fall within

23   these categories, so we did not include that in this

24   motion.  MGA, at the time we filed the motion, was

25   saying indeed there are such documents, or we don't

EXHIBIT _A_
PAGE _30_

1   know but we haven't gotten to it yet.  Bryant

2   at the time said there were no documents.  We have

3   some reason now to believe that that was not accurate,

4   because in the last production from MGA there were

5   counterparts to communications with Mr. Bryant.

6   That's not before Your Honor.

7           But again, and this is a replay of the theme

8   I mentioned a couple of times, here we had an order

9   requiring compliance, even an agreement that it would

10  be done a little bit later in August.  We're now in

11  December.  Two weeks ago they tell us -- they give us

12  the last batch and they say that that's it.

13          We're up against a discovery cutoff.  Again,

14  this is a system where we have been prejudiced by

15  that.  We shouldn't have to go through these

16  proceedings to get to the point where they finally

17  tell us we've done it.  And we believe the sanctions

18  are appropriate here.

19          JUDGE INFANTE:  Okay.  Thank you very much.

20          MGA may proceed.

21          MR. KENNEDY:  Yes, Your Honor.

22          Mr. Quinn is right.  This has taken longer

23  than it should have.  No question about it.  This is

24  another one where I'm inheriting some men on base.

25          I think it's significant, however, that in

EXHIBIT __A__
PAGE __31__

31

1    Mr. Proctor's December 14th supplemental declaration

2    he spends the first 11 paragraphs explaining how he

3    didn't previously get what we now produced on

4    November 26th.  It almost reads like a compliment to

5    Ms. Park for her ability to get in and find things

6    that other people couldn't.  I don't mean to be

7    facetious.  There is nothing facetious about this

8    morning.

9         His only complaint at that point is in

10   paragraph 12 that says he's concerned there may be

11   some Littler Mendelson documents that are out there.

12   Ms. Park, who's with us this morning, has filed a

13   responsive declaration explaining that she has talked

14   to Littler lawyers and they've told her there is

15   nothing more.  I understand a move is now underway to

16   depose people from Littler.  Other lawyers here can

17   probably speak more appropriately to that.  But here

18   again, everything that we have in the way of papers,

19   short of going over and burglarizing Littler's

20   offices, has been produced.

21        Once again, this is a motion that shouldn't

22   have had to be filed in terms of monetary sanctions.

23   And again, if Mr. Quinn can point to something

24   specific that they would have done differently in

25   terms of their trial preparation, if they had had a

EXHIBIT ___A___
PAGE ___32___

1    particular indemnity agreement three months or

2    four months before, it would certainly be within your

3    Honor's power and prerogative to do something about

4    it.

5            But at this point, other than being

6    compensated for what they've asked for, I don't know

7    what more we can do.  They now have it.

8            JUDGE INFANTE:  Thank you very much.

9            Mr. Quinn?

10           MR. QUINN:  Nothing further.

11           JUDGE INFANTE:  Okay.  Mattel's motion was

12   fully justified.  MGA was not in compliance with the

13   May 15, 2007 order on this topic.  The motion is

14   granted.  MGA shall produce all nonprivileged

15   documents responsive to Mattel's requests 1, 2, 49 and

16   50.  And shall identify in a privilege log all

17   responsive documents withheld on the basis of the

18   claim of privilege.

19           Further, Mattel has sought sanctions in the

20   amount of $3,500.  The Court finds grounds for

21   awarding those sanctions under Rule 37(a)4.  MGA, or

22   its prior counsel, shall pay that amount and shall

23   comply with this order on or before December 31, 2007.

24           The part of the motion seeking an order that

25   MGA has waived its claims of privilege is denied, for

EXHIBIT __A__
PAGE __33__

33

1    the reasons I've previously stated in the previous

2    motion, having considered the matter under Burlington

3    and Santa Fe Railroad Company versus U.S. District

4    Court, 408 Fed 3rd, 1142.

5              Mr. Quinn, would you prepare that order?

6              MR. QUINN:  Yes, Your Honor.

7              JUDGE INFANTE:  Thank you.

8              Mattel may proceed.

9              MR. PROCTOR:  Your Honor, with permission, we

10   will do the date of first use documents motion next.

11             JUDGE INFANTE:  Yeah.  Let me just call that

12   for the record.  I think it was captioned as Mattel's

13   Motion to Compel Withheld MGA Documents That Prove MGA

14   Was Developing Bratz as early as June 2000.  That's

15   the way the motion was captioned.

16             And it related to two documents that had

17   inadvertently been produced by MGA for which you were

18   notified that they were claiming privilege after it

19   had been produced.  You then destroyed the documents,

20   because you received that letter of claim of

21   privilege, and you now seek production of those

22   documents and a right to use them in this litigation.

23             You may proceed.

24             MR. PROCTOR:  Thank you, Your Honor.  The

25   primary question this motion presents is whether

EXHIBIT 4
PAGE 34

34

1    MGA has proven that Ms. Garcia intended, rather that

2    Ms. Garcia provided the date of first use for those

3    marks in December 2000.  Those specific

4    communications, that specific communication both for

5    the purpose of seeking legal advice and with the

6    actual and reasonable expectation that it would be

7    kept confidential.  MGA has to show all of that, and

8    I don't believe they have.  For that reason, the

9    documents should be produced.

10          There's really two main points here, I think.

11   The first one is the provision of date-of-first-use

12   information in a situation like this, and in

13   particular a provision of patent date of first use

14   information, is simply it can't reasonably be expected

15   to be kept confidential.  This is information that in

16   every circumstance, in every trademark application

17   must be disclosed to the PTO.  It must be disclosed to

18   the PTO.  And it is a factual question.  And,

19   of course, trademark applicants have a duty of candor

20   to the PTO and cannot misstate something

21   intentionally, even the ITU application and the

22   statement of use that are attached as exhibits require

23   the applicant to certify that they are stating

24   everything accurately, to the best of their knowledge.

25          And so when date-of-first-use information is

EXHIBIT __A__
PAGE __35__

35

1    passed on to an attorney prosecuting a trademark

2    application in this fashion, it is simply something

3    which can't be omitted, must be disclosed, and can't

4    be manipulated for tactical purposes.  And that

5    differentiates this situation from every case they

6    cited.  Every other one.  There is not a, there is not

7    a case they cited which has facts along those lines.

8            Now, in their opposition MGA tries to come up

9    with legitimate confidential reasons why date-of-first-use

10   information might be passed on to an attorney.  And

11   they really offer two of them.  They say, one, it

12   might be passed on.  And it was passed on here because

13   you can't file an ITU application if the mark's

14   already been in use.  And Ms. Arant offers her

15   declaration that I would never file an ITU application

16   for marks already in use.  Then they say you also need

17   to know it, so that you know you're not filing too

18   early.  There's this timing explanation that they

19   have.

20           And as we pointed out in our, in our briefs,

21   this is just theoretical postulating.  This doesn't

22   make any sense at all here.  Because what was

23   provided, the documents somehow, and I believe

24   Your Honor has the document before you although

25   of course I do not.  What the documents show is that

EXHIBIT __A__
PAGE _36_

1    past date-of-first-use information was provided, not

2    anticipated date-of-first-use information.  And MGA

3    has offered literally no explanation for why past

4    date-of-first-use information might be provided other

5    than to pass it on to the PTO.  No confidential

6    explanation for that.

7            And the second point here is, all the

8    evidence supporting their theoretical explanations for

9    why anticipated date-of-first-use information might be

10   passed on, all that evidence is now gone.  Because, as

11   Your Honor has seen I'm sure, Ms. Arant has withdrawn

12   her declaration where she explained the confidential

13   reasons why she requested and used date-of-first-use

14   information when preparing these applications.  That

15   is now out of the record.  She has withdrawn that

16   after we pointed out that, contrary to her declaration

17   testimony, that she would never file an ITU

18   application where a mark has already been in use.  She

19   has done that on at least 46 other occasions, aside

20   from the occasions at issue here, as shown on the PTO

21   website.

22           And so there really can't be a confidential

23   purpose for the disclosure of the provision of

24   information such as the information we have here.  And

25   the second point is, even if there could be, MGA

EXHIBIT ___A___
PAGE ___37___

1    hasn't shown that's what happened here.  MGA hasn't

2    met its burden of showing that the provision of

3    information here was confidential.

4              Brian Armstrong who's MGA's -- who was MGA's

5    30(b)(6) designee on trademark applications, is a

6    senior paralegal at MGA, testified that one of the

7    reasons why MGA collects date-of-first-use information

8    is, quote, "to convey to the trademark office to

9    obtain trademark registration."  That's MGA speaking.

10   MGA's 30(b)(6) witness that's testifying that he

11   collects date-of-first-use information.  MGA collects

12   date-of-first-use information to convey it to the

13   trademark office.

14             The main evidence MGA proffered in opposition

15   is now withdrawn, as I mentioned.  And the only other

16   evidence that remains is the declaration of

17   Ms. Garcia.  The only particularly relevant statement

18   she has there is, quote, "In general, I intended and

19   expected my communications with counsel, in connection

20   with MGA's trademark filings, to be confidential

21   including communications regarding the anticipated

22   date of first use of the Bratz marks.

23             That says nothing about this specific

24   communication here.  It's a conclusory statement about

25   communications, about anticipated dates of first use

EXHIBIT ___4___
PAGE ___38___
                                                      38

1    which aren't what's even at issue here.  So I don't

2    think MGA has met its burden, even if the Court were

3    to find that in some theoretical circumstance someone

4    could provide date-of-first-use information to an

5    attorney prosecuting a trademark application for some

6    confidential reason as opposed to, for the obvious

7    reason, so that it can be disclosed to the PTO as

8    required.

9            MGA's cases.  There is a -- there is somewhat

10   of a split in the cases.  There are -- we've cited a

11   number of cases which under them I think very clearly

12   these documents would not be privileged.  MGA has

13   cited some cases which are more favorable to them.

14   I don't think any of the cases MGA cited would hold

15   these documents privileged.  There are at least two

16   reasons for that.  One, as I mentioned, in none of

17   them, none of them involve what we have here which is

18   specific factual information which must be disclosed

19   to the PTO without alteration.  And moreover, most of

20   them arise generally in the patent context which

21   involves a much more complex process.

22           So the language MGA uses in its opposition,

23   it talks about a complex discourse between inventor

24   and attorney.  We don't have that here.  It talks

25   about a dialectical process in which some information

EXHIBIT __4__
PAGE __39__

1   is selected for inclusion in the application and some

2   is rejected.  Date-of-first-use information must be

3   disclosed.  It can't be rejected.

4          The last point I would make here.  If you

5   look at paragraph 7, the last paragraph in Ms. Arant's

6   new declaration, she declares that she generally would

7   not elicit date-of-first-use information when

8   submitting an ITU application.  That provides an

9   independent ground for reproduction of these

10  documents.  MGA has the burden of proving the contrary

11  of that.

12         Under -- a number of Ninth Circuit cases cite

13  this, including In re Fischel which is cited by MGA.

14  And In re Grand Jury Investigations, which

15  I know Your Honor has cited in past orders.  And they

16  quote a Supreme Court case, which makes very clear

17  that MGA has to prove that the disclosures to the

18  attorney were, quote, "necessary to obtain informed

19  legal advice, and might not have been made absent the

20  privilege."  The disclosures must be necessary to

21  obtain informed legal advice.

22         Ms. Arant has effectively admitted that she

23  doesn't elicit, or her practice in her new declaration

24  is not to elicit date-of-first-use information when

25  submitting an ITU, because she didn't need it for any

EXHIBIT ___A___
PAGE __40__

1   legal advice that she's providing.  And so this is an

2   independent ground why the documents should be

3   produced.

4            And the last point, Your Honor, is regardless

5   of the Court's resolution of these issues, the docket

6   sheet I think clearly should be produced.  It simply

7   lists facts.  It's not a communication.  And there is

8   absolutely no evidence in the record about what those

9   facts are, how the docket sheet -- what those facts

10  are, where they come from, where the docket sheet --

11  how the docket sheet is created, where it's

12  maintained, anything else.  And so again, MGA has not

13  met its burden.

14            JUDGE INFANTE:  Okay.  Let me hear the

15  opposition.

16            MR. KENNEDY:  I was trying to figure out how

17  I could argue to the author of Connor Peripherals what

18  the law is in this area without sounding a bit

19  presumptuous.  But as I have listened to Mr. Proctor,

20  it sounds as though on that side of the table

21  Jack Winter is still the accepted law in the Ninth

22  Circuit.  As Your Honor is aware, in Advance

23  Cardiovascular, Judge Brazil adopted the view that

24  communications from inventor to patent lawyer,

25  trademark lawyer, even those that are entirely

EXHIBIT   A
PAGE   41

41

1   technical, remain presumptively protected by the

2   attorney/client privilege.

3          And Judge Brazil in that case went on to

4   point out that it would be a nonsequitur to suggest

5   that because the inventor knows that at some juncture

6   he will be required to disclose material information,

7   he cannot expect his earlier private conversations,

8   whose purpose is to determine which information is

9   material, to remain private.

10          And looking to the two documents in question

11   that first-date-of-use seems to me it's binary.  It

12   can only come from one of two sources.  Either

13   somebody in the lawyer's office mistakenly left a one

14   off at the end, or they got it from the client.  Those

15   are the only two places it can come from.  And the

16   first document, the one that ends with a 296

17   Bates number, is a memo from the lawyer to the client

18   transmitting information and asking for input.  I find

19   it significant both sides cite McCook Metals in 192 FRD

20   with approval.  And starting at page 252 of Cook,

21   there's this marvelous little decoder ring that goes

22   through each kind of a document and pointing out that

23   draft applications, correspondence regarding draft

24   applications are clearly privileged.

25          Turning to the other document, the docket

EXHIBIT  A
PAGE  42

42

**HEARING**                                                          **12/14/07**

1     sheet.   Same thing considered in Cook, that they had

2     various questionnaires and various applications and

3     said, although the uncompleted forms would clearly be

4     discoverable, the completed forms are privileged.  And

5     that appears at page 253 of McCook.

6              So this matter was briefed by prior counsel.

7     Our approach is considerably simpler.  We corrected

8     Ms. Arant's declaration, because we learned that it

9     was inaccurate.  But we are not relying on her in any

10    way.  What we're relying on is looking at the

11    documents facially, and the declaration from

12    Ms. Garcia, that this is clearly lawyer and client

13    consulting on what will or will not ultimately go in

14    an application.

15             And beyond that, as I say, since Your Honor

16    in a lot of ways created the law, I'm not about to

17    tell you what it is.

18             Submitted.

19             JUDGE INFANTE:  Thank you very much.

20             MR. PROCTOR:  Very briefly, Your Honor.

21    I would invite the Court to return to -- there is a

22    wide split in District Court opinions.  I would invite

23    the Court to return to first principles, not Circuit

24    Law, Supreme Court law.  Without a doubt MGA bears the

25    burden of proving that this communication specifically

EXHIBIT ___A___
PAGE ___43___

43

**HEARING**                                          12/14/07

1   was actually and reasonably intended to be

2   confidential and made for the purpose of seeking legal

3   advice.  And I don't think there's a basis for

4   concluding that that was the basis of this

5   communication.

6           JUDGE INFANTE:  Your position is that is an

7   essential fundamental question, without regard to the

8   split in the law, on what the scope of certain types

9   of communications are within the attorney/client

10  privilege?

11          MR. PROCTOR:  Correct.

12          JUDGE INFANTE:  Okay.  All right.  Thank you

13  very much.

14          I'll take the matter under submission.

15          All right.  What is your next motion?

16          MR. PROCTOR:  The next one, Your Honor, with

17  the Court's permission, would be Mattel's Motion For

18  Reconsideration.

19          JUDGE INFANTE:  Okay.  One moment.

20          This is captioned as Mattel's Motion For

21  Reconsideration of the September 12, 2007 Order, Which

22  Granted in Part and Denied in Part MGA'S Motion to

23  Compel Production of Documents.

24          You may proceed.

25          MR. PROCTOR:  Thank you, Judge.  This motion

EXHIBIT _A_
PAGE _44_

44

1   presents a straightforward -- from our perspective,

2   presents a straightforward benefits versus buried

3   question.  It's straightforward with 26(b) analysis.

4         The documents at issue, if any exist, will

5   reflect discussions or negotiations about the

6   inventions agreement or the conflict of interest

7   questionnaire between Mattel and people who have

8   nothing to do with this lawsuit.  Other Mattel

9   employees who have no connection to this lawsuit at

10  all.

11        The benefit of such documents to the

12  defendants, if any, is minimal.  It is hard to even

13  conceive of what relevance discussions between Mattel

14  and some other employee, who is not on anyone's

15  initial disclosures or witness lists or interrogatory

16  responses, will have.  What bearing that information

17  will have on this case.  And that is particularly so

18  now that Mr. Bryant has withdrawn the defenses, which

19  initially were used to persuade the Court that these

20  requests sought discoverable information.  Mr. Bryant

21  has withdrawn his defenses that the invention

22  agreement is unconscionable or contrary to law.  And

23  those are the defenses that MGA relied on in its

24  moving papers to persuade the Court that these

25  requests were proper.  And the Court referenced that

EXHIBIT _A_
PAGE _45_                                                         45

 1    argument in its order.

 2              And so particularly now, if not before, the

 3    relevance of this information is minimal and the

 4    burden of collecting it is extreme.  We're talking

 5    about roughly 6,000 files which would require a manual

 6    search.  And I think doing some basic math, we come

 7    out with an estimate of approximately $600,000 is what

 8    it would cost to look through all of these files for

 9    this fishing expedition into documents which have

10    little, little to do with the case.

11              I would submit that Mattel should not have to

12    undertake that burden and expense and seek relief.

13              JUDGE INFANTE:  Okay.  Thank you very much.

14              There is one thing that I have seemed to

15    misplace, and it was the withdrawal of those defenses.

16    That document just came in, I think, yesterday.  Does

17    anyone have a copy of that?  I've misplaced mine.

18              MR. PROCTOR:  I believe I do, Your Honor.

19              MS. ANDERSON:  Excuse me, Your Honor, while

20    we're waiting.  There are a few people at the hearing

21    that have to attend the meeting with the mediator in

22    this case at noon.  I just wanted to alert Your Honor

23    in case people are leaving.  It's not out of

24    disrespect, it's that we're supposed to meet with them

25    here.

EXHIBIT __A__
PAGE __46__

46

1          JUDGE INFANTE:  Yes.  Does that start at
2     noon?
3          MS. ANDERSON:  It's supposed to start at
4     noon.
5          JUDGE INFANTE:  Do you want to advise the
6     mediator that it might be delayed about 15 minutes?
7          MS. ANDERSON:  Oh, really.  You think you'll
8     finish that quickly?
9          JUDGE INFANTE:  I think it would be better to
10    do that.  15 to 20 minutes.  If someone wants to
11    advise the mediator to please graciously permit us a
12    little bit of extra time?
13         MS. ANDERSON:  Okay.  We can do that.  We
14    had -- I had brought additional people to the hearing
15    to be sure that we can continue.  But I'll go let the
16    mediator know.
17         JUDGE INFANTE:  All right.
18         MR. PROCTOR:  Exhibit 3.  I believe the
19    stipulation is Exhibit 3 to the declaration that
20    I just provided.
21         JUDGE INFANTE:  I'm glad to hear MGA's
22    position.
23         MR. KENNEDY:  Okay.  First, Your Honor, this
24    is another of the matters that was fully briefed by
25    prior counsel and I realize this case has been hard

EXHIBIT  A
PAGE  47

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1    fought.  We're hoping we can turn over a new leaf.  We

2    had a crew that was up all night finishing up answers

3    to 2200 requests for admissions just while Your Honor

4    doesn't have to wrestle with motion number 2.  In the

5    same vein, we are withdrawing any objection that this

6    motion does not comply with Rule 719 for a motion for

7    reconsideration.

8              JUDGE INFANTE:  Right.

9              MR. KENNEDY:  We found in this case that the

10   old "the devil is in the details" applies.  And what

11   you think you're going to be able to do perhaps on the

12   phone or in a conference room isn't necessarily the

13   way it works out when you get out into real life.  So

14   we are not trying to jump on Mattel's lawyers by

15   saying you should have anticipated all of these

16   arguments when you were back here at the time of the

17   original order.

18             So obviously Your Honor has a duty to enforce

19   the rules, but we at least are not asserting that as

20   a basis here.

21             Does Your Honor have a copy of the first page

22   of the opening paper that sets forth the revised

23   demand?  If not, I have a copy here which I think

24   might help, because we're talking about three.  If

25   I could approach?

EXHIBIT _A_
PAGE _48_

48

1            JUDGE INFANTE:  Sure.

2            MR. KENNEDY:  The requests were revised into

3    three paragraphs.

4            JUDGE INFANTE:  Right.

5            MR. KENNEDY:  And the motion for

6    reconsideration is directed, as I understand it, to

7    the third -- no, to the second (indicating).  And at

8    the meet and confer told counsel, you know -- and

9    we're the people looking at the $3.4 million --

10   3.4 million documents with potential redactions and

11   trying to be practical.  And said what concerns me is

12   how are you going to comply with 3, paragraph 3,

13   without going and looking through all files to try to

14   find any possible discussion that bore upon it?  Isn't

15   the burden going to be the same, and why is it you're

16   not moving on both?  And really didn't get an answer

17   on that one.

18            And I would still raise that to the Court if

19   they've got something short of looking through every

20   file to find one of those answers, don't they have

21   something short of looking through every file to look

22   at the other one?  So I guess that's number 1.

23            Number 2, this issue of what's relevant and

24   what isn't I think is going to be coming up again,

25   because there have been other objections.  And we will

EXHIBIT  $A$
PAGE  $49$

**HEARING**                                                 12/14/07

```
1    be trying to add to the January 4th calendar a motion
2    dealing with particularly the concept of the
3    interpretation, practical construction rule, which
4    says that how people have actually behaved under
5    a contract before litigation came along often speaks
6    volumes more than constructions and interpretations
7    that have come along after litigation.
8              So to the extent, if any, that Your Honor is
9    inclined to grant this motion on the basis of the
10   amended affirmative defenses, I'd request it be taken
11   under submission at least until you've heard the
12   broader question of the extent to which these are
13   still relevant concerns in the case.  Meanwhile,
14   looking for a practical solution that doesn't require
15   somebody to have to look, through whatever it is,
16   4- or 5,000 files.
17             JUDGE INFANTE:  Okay.  Thank you very much.
18             MR. PROCTOR:  In response to Mr. Kennedy's
19   first point.  And I believe, I believe we have
20   explained this before, although I could be mistaken so
21   I apologize if we have not.  The third category, which
22   is documents relating to enforcement of the same terms
23   of these contracts against other people.  Those
24   records, to the extent they exist, are accessible by
25   other means.  They're accessible in the legal
```

EXHIBIT ___A___
PAGE ___50___

50

1    department.  They're accessible by talking to people.

2    They don't require going through the personnel files

3    for every Mattel employee in order to access those

4    records.  Number 1.

5            Number 2.  In light of the withdrawal of the

6    defenses, we would -- and this is set forth concededly

7    only in our supplemental declaration.  But we would

8    suggest that that category as well is something that

9    should be taken off the table, because the information

10   simply isn't, isn't, to the extent it's relevant even,

11   to the extent it's relevant at all, which it's not

12   clear to me how it is, the burden of gathering it

13   would outweigh the benefits.

14           But in terms of the actual notice aspect of

15   the motion, which is Category 2, it simply, it's

16   simply a function of an increased burden in gathering

17   that information.

18           JUDGE INFANTE:  Okay.  Thank you very much.

19           MR. KENNEDY:  Briefly, Your Honor.

20           I gave you what appears to be my only copy.

21   But the third paragraph, it's not just enforcement.

22   It's quite broad language.  And I'm trying to figure

23   out how it is they plan to comply with getting all

24   of that.  I can understand if they have a list of

25   lawsuits or arbitrations or something, but that goes

EXHIBIT __A__
PAGE __51__

1   broader than that.  And so I'm wondering, is there a

2   de-facto motion here for reconsideration as to that

3   one as well, or are we going to be getting that in its

4   entirety?

5           JUDGE INFANTE:  The revised request, that had

6   been narrowed during the meet and confer sessions that

7   preceded my original consideration of the motion,

8   reads as follows, quote, "All documents relating to

9   any instance in which Mattel has taken any action,

10  whatsoever, to enforce against anyone the same terms

11  of any such agreement that Mattel alleges Bryant

12  violated," unquote.

13          I do not believe they're seeking

14  reconsideration on that particular revised request.

15          MR. PROCTOR:  Except to the extent the Court

16  will permit us to do so by our supplemental

17  declaration.  Based on the change of circumstances

18  which is brought to withdrawal of the defenses.

19          JUDGE INFANTE:  I see.  I see.

20          MR. PROCTOR:  We did not originally seek

21  reconsideration on that.

22          JUDGE INFANTE:  Yeah.

23          I think, under the circumstances, I'm going

24  to take the entire motion under submission.  I will

25  state now on the record that I am in a reconsideration

EXHIBIT __A__
PAGE __52__

52

1    mode.  In other words, notwithstanding local rules

2    7-19, I find reconsideration is appropriate in view of

3    the new information submitted yesterday regarding

4    withdrawn defenses in an amended pleading.  That

5    affects the entire balance of relevancy versus burden.

6    So I'm back in the starting gate on this motion.

7    I will take it under submission.

8              MR. PAGE:  Your Honor, would you entertain

9    brief letter briefs on the reasons this material is

10   still relevant?  I think it's clearly relevant way

11   beyond those defenses.

12             JUDGE INFANTE:  I think this is becoming such

13   a paper motion, I think it would help me if I got

14   entirely new briefs from both sides on the question

15   because it's a moving target.  It is a moving target.

16   And I'm not saying there's not justification for the

17   moving target.

18             So I think what I'd like to do is give you an

19   opportunity to recast your motion for reconsideration,

20   give you an opportunity to respond to it and clearly

21   explain the basis of relevancy notwithstanding a

22   change in the pleadings.  I think that would put the

23   thing in better order.  And then I could hear it at

24   our next hearing.

25             MR. NOLAN:  Right.  Your Honor, as

EXHIBIT  4
PAGE  53

                                                          53

1    Mr. Kennedy indicated, there are other motions that

2    are touching upon the same issue raising different

3    justifications, so I think it would be wise.  We'll do

4    the additional briefing.  But then it will all be

5    framed for the Court in a proper way, I think, for all

6    of the various arguments.

7            JUDGE INFANTE:  I agree with you.  The last

8    thing I want to do is appear inconsistent in my

9    rulings.

10           MR. NOLAN:  Thank you.

11           Your Honor, before we go to the next one, can

12   I just make a comment with the wisdom of my suggestion

13   that everything should be before Your Honor at the

14   next hearing when this issue will be framed?  I have

15   to note, though, that the time is running out and

16   these documents, we believe, are particularly

17   relevant.  I think that was what Mr. Page was raising.

18           If the Court believes that, on the basis of

19   additional briefing within a rapid period of time,

20   the Court would be in a better position to rule then

21   we could get the document.  What I'm most concerned

22   about is that we get to the January hearing on such

23   a critical area, and then Mattel is going to take

24   a position that it's going to be burdensome.  It will

25   take a long time and we're facing this discovery

EXHIBIT _A_
PAGE _54_

54

1    cutoff.

2            So in light of that, I'm just wondering

3    whether or not maybe there's a way to accelerate the

4    issue that still could be for the Court's schedule and

5    perhaps move the other issues that we've now filed

6    motions on to bring it to the Court's attention and

7    have there be a telephonic hearing or something.  I'm

8    just worried about running out of time, Your Honor.

9            JUDGE INFANTE:  I don't have any time before

10   January 4th.

11           MR. NOLAN:  Okay.

12           JUDGE INFANTE:  I would like a briefing

13   schedule, though, for the recasted motion for

14   reconsideration.  I think you should file that by next

15   Wednesday, if possible.  And then any opposition

16   perhaps by the following Wednesday from either

17   Carter Bryant or MGA.  And then any reply by that

18   Friday.  What are those dates?  Does anybody have a

19   calendar?

20           MR. PAGE:  That following Wednesday is the

21   day after Christmas.

22           JUDGE INFANTE:  Oh, is it?

23           MR. NOLAN:  Is there any way that we can

24   maybe, since it's there, a motion for reconsideration,

25   that we push it up a couple of days so that we're

EXHIBIT _4_
PAGE _55_

55

1   filing?

2         JUDGE INFANTE:  What do you suggest?

3         MR. NOLAN:  When do you think you would be

4   able to file your supplemental responses?  Can you do

5   it on Monday?

6         MR. PROCTOR:  Today is Friday.  I really

7   think we need until --

8         MR. NOLAN:  Tuesday?

9         MR. PROCTOR:  Wednesday is only three

10  business days.  I'd appreciate having until Wednesday.

11        JUDGE INFANTE:  Well, you already made all

12  the arguments.  The only new thing is what was

13  submitted yesterday.

14        MR. PROCTOR:  We could, if Your Honor would

15  like, we could try to get it by Tuesday.

16        JUDGE INFANTE:  All right.  What day is that

17  on the calendar?

18        MR. KENNEDY:  The 18th, I believe,

19  Your Honor.

20        JUDGE INFANTE:  December 18th.

21        MR. NOLAN:  Then we would try to reply on

22  December 24th?

23        JUDGE INFANTE:  No.  That Friday.

24        MR. NOLAN:  21st.  Friday the 21st.

25        JUDGE INFANTE:  Friday the 21st.  And then

EXHIBIT _A_
PAGE _56_

56

```
 1    any reply would be perhaps by the 27th, given the
 2    holidays.  And then the hearing would be January 4th.
 3    I need to adjust the time of the hearing.  I don't
 4    know if we gave you a time.  Did we?
 5            MR. PROCTOR:  I don't think we discussed
 6    that, Your Honor.
 7            JUDGE INFANTE:  I think it has to be in the
 8    afternoon.  So it will be at 1:30, January 4th, for
 9    hearing.
10            Okay.  I think there is one motion left, is
11    that correct, to hear today?
12            MR. KIDMAN:  I believe there's two motions,
13    Your Honor.
14            JUDGE INFANTE:  Which ones?
15            MR. KIDMAN:  Mattel's motion to compel MGA to
16    produce financial information.  And Mattel's motion to
17    compel Isaac Larian to produce documents.
18            MR. PAGE:  And, Your Honor, there's also
19    a joint motion from MGA and Carter Bryant on the
20    bandying of 30(b)(6) witnesses.
21            JUDGE INFANTE:  Well, I was told you were
22    still working on that.  I got a letter two days ago,
23    so I haven't read it.  What two motions are left?
24            MR. KIDMAN:  It's Mattel's motion to
25    compel MGA to produce financial information,
```

EXHIBIT _A_
PAGE _57_

57

**HEARING**                                                    12/14/07

```
 1    Your Honor.  I believe that's number 11.  This motion
 2    was added, Your Honor, after the --
 3              JUDGE INFANTE:  Well, it's a Motion
 4    Compelling MGA to Produce Documents Responsive to Your
 5    Second Set of Requests Dated June 6, 2007 Regarding
 6    Requests 2 through 46.
 7              MR. KIDMAN:  That's correct.
 8              JUDGE INFANTE:  Is there another motion after
 9    that?
10              MR. KIDMAN:  Yes.  There's a motion to compel
11    Isaac Larian to produce documents.
12              JUDGE INFANTE:  I don't have that in my list.
13    Where is that?
14              MR. KIDMAN:  It's motion number 10, I
15    believe, Your Honor.
16              JUDGE INFANTE:  Yes.  Oh, motion number 10.
17              Which one are you arguing now?
18              MR. KIDMAN:  With Your Honor's permission,
19    we'd like to argue the Motion to Compel MGA to Produce
20    Documents Responsive to Mattel's Second Set of
21    Requests.
22              JUDGE INFANTE:  Okay.
23              MR. KIDMAN:  And Your Honor, the request at
24    issue seeks basic financial information regarding
25    revenues, costs, unit sales relating to Bratz products
```

EXHIBIT __A__
PAGE __58__

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1    that are at issue in this lawsuit.

2              JUDGE INFANTE:  Right.

3              MR. KIDMAN:  The information is directly

4    relevant to Mattel's claims for damages in this

5    lawsuit where we seek profits made by MGA from their

6    sale and licensing of Bratz products.  There is no

7    dispute that this information is relevant.  MGA in

8    fact has agreed to produce the information.  And as

9    recently as a couple of weeks ago, MGA's new counsel

10   acknowledged that this information that we have been

11   seeking is the starting point for both sides' expert

12   analysis.

13             The reason that this motion was necessary is

14   that MGA promised to produce the information back in

15   September, did not produce the information.  We met

16   and conferred with them over that failure to produce

17   the document, they couldn't give us a date by which it

18   would be produced.  And as has been pointed out here

19   today, we're running up against discovery cutoff

20   deadlines, we have expert reports due February 11, we

21   simply weren't in a position to wait and get the

22   documents at MGA's pleasure.

23             Since we filed our motion, some documents

24   have been produced.  We're in the process of analyzing

25   those documents, but I think there's been two separate

EXHIBIT __A__
PAGE __59__

**HEARING**                                                    12/14/07

1    productions.  But even there's a production two days

2    ago.  The cover letter that accompanied that

3    production on its face indicates that the production

4    is incomplete.  Our position is that MGA should be

5    ordered to produce the documents by a date certain.

6    If that production is going to be completed, there

7    should be no issue with an order.  If there is any

8    issue with them completing that production, then

9    obviously an order is necessary.

10            JUDGE INFANTE:  Okay.  I understand.  Thank

11   you.

12            MR. KENNEDY:  Yes, Your Honor.  Some is

13   rather a modest term here.  36,749 pages of documents

14   have been produced pursuant to this request which

15   I understand go to the gut topics that the experts

16   really have to work with.  There are perhaps seven or

17   eight rather peripheral topics.  If we can have until

18   the end of the first week in January, we can complete

19   compliance as to those.

20            JUDGE INFANTE:  That would be, what,

21   January 4th?

22            MR. COREY:  January 7th is Friday.

23            MR. PAGE:  Friday is the 4th and the 11th.

24            JUDGE INFANTE:  That's what I thought.

25   Friday is the 4th and the 11th.  So you said the first

EXHIBIT __A__
PAGE __60__

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

**HEARING**                                                      **12/14/07**

1    week in January, and I'm seeking whether you mean the

2    fragmented week or the following week?

3              MR. KENNEDY:  The 11th is what the client's

4    people think they're going to need to finish it up.

5              JUDGE INFANTE:  Anything further?

6              MR. KIDMAN:  Well, the problem with that,

7    Your Honor, is that gives us a month to complete our

8    expert reports.  And this is information that we first

9    requested six months ago in June.  It was promised to

10   be produced in September.  More than three months

11   after that promised deadline.  And we've already been

12   prejudiced by the delay, Your Honor.

13             JUDGE INFANTE:  Okay.

14             MR. KENNEDY:  Your Honor, as I said, as

15   I understand it, other people are working closer to

16   this, what's really needed to get experts started,

17   Mr. Kidman could identify any of the uncompleted

18   topics or categories where he needs something before

19   the 11th.  Let us, or let the Court know when he needs

20   it.  Fine.  But right now I think we're talking about

21   chaff and the wheat's been made available.

22             JUDGE INFANTE:  Okay.  Thank you very much.

23             MR. KENNEDY:  Thank you, Your Honor.

24             JUDGE INFANTE:  Your motion is well taken.

25   It's granted.  The requests seek information that is

EXHIBIT _A_
PAGE _61_

61

1   undeniably relevant.  You have been waiting for this

2   information.  Even though it is now being produced,

3   you're entitled to a court order.

4            The motion is granted.  MGA shall produce all

5   unprivileged documents that are relevant to requests

6   2 through 46 on or before January 10th, 2008.

7            You may prepare the order.

8            MR. KIDMAN:  May I just clarify?  You said

9   all documents that are relevant, do you mean responses

10  to the request?

11           JUDGE INFANTE:  Responses.

12           MR. KIDMAN:  Thank you.

13           JUDGE INFANTE:  On or before January 10th,

14  2008.  You may prepare the order.

15           Okay.  The last motion, which I have brought

16  by Mattel, is a Motion to Compel Production of

17  Documents By Isaac Larian and For an Award of Monetary

18  Sanctions.  That was listed on the list as motion

19  number 10.  You may proceed.

20           MR. KIDMAN:  Your Honor, there are a number

21  of categories of requests that are at issue in our

22  motion.  They have all been very well briefed, and I

23  will come back and address some of the specific

24  categories.  But there's a couple of threshold issues

25  I'd like to address first and we've pointed these out

EXHIBIT _4_
PAGE _62_

62

**HEARING**                                                          **12/14/07**

1    in our reply brief.  And first is, Mr. Larian's

2    opposition was late.  It was due no later than

3    November 26.  It wasn't served until December 5th.

4    There was no request for an extension of the deadline,

5    and we would submit that it should be disregarded.

6            In addition, Your Honor, after our motion was

7    filed, there was an agreement, on the part of

8    Mr. Larian's counsel, to produce documents in response

9    to approximately 55 of the requests.  However, we

10   haven't received those documents.  We haven't been

11   told when they're going to be produced.  And we

12   believe that an order is in order compelling the

13   production of those documents.  There is no dispute

14   that they're relevant.  Mr. Larian has agreed to

15   produce them, and we've identified those 55 requests

16   in our reply papers.  We believe that an order is

17   appropriate.  That Mr. Larian be compelled to produce

18   those responsive documents that he has agreed to

19   produce by a date certain.

20           In Mr. Larian's opposition to our motion, he

21   has suggested that, as to those 55 requests, he will

22   produce documents that he's able to locate in his,

23   quote, "personal files."  And Mr. Larian's unilateral

24   restriction to documents in his personal files is

25   completely inappropriate.  That's something we have

EXHIBIT ___4___
PAGE ___63___

                                                                          63

1    not agreed to.  Mr. Larian is a party in this lawsuit.

2    He should produce responsive documents in his

3    possession, custody, or control and not be permitted

4    to withhold documents because he deems them to have

5    not been located in what he calls a personal file.

6           With respect to the individual categories

7    that were briefed by Mr. Larian in his opposition,

8    there's a number of categories I'd like to address

9    specifically.  The first relate to the documents

10   regarding the arbitration Mr. Larian had with his

11   brother.  We've requested the documents relating to

12   that arbitration.  Mr. Larian's position is that we're

13   not entitled to those documents, and that he should

14   only be required to produce documents that he deems to

15   relate to Bratz.

16          And the problem with that limitation,

17   Your Honor, is the core issue in that arbitration

18   between Mr. Larian and his brother was the allegation

19   that MGA, Mr. Larian, were aware of Bratz, as early as

20   2000, that they were developing Bratz in early 2000

21   and Mr. Larian concealed that from his brother in

22   order to deflate the value of his brother's shares.

23          The point is, Your Honor, that the issues in

24   that arbitration are key issues in this lawsuit.  And

25   therefore, giving Mr. Larian the ability to sort of

EXHIBIT  _4_
PAGE  _64_

64

1    pick and choose which documents from that arbitration

2    he's going to produce is going to result in the

3    failure to produce documents that are clearly relevant

4    to this lawsuit.

5            It's important to keep in mind that the

6    allegation is that Mr. Larian concealed the existence

7    of Bratz.  Allowing him now to say he'll produce

8    documents that relate to Bratz, is likely to result in

9    whole categories of documents that were at issue in

10   that arbitration not being produced here.  Mr. Larian's

11   position is he had never even heard of Bratz or never

12   even met Carter Bryant before September of 2000.

13   Presumably his position is any document that predates

14   September of 2000 has nothing to do with Bratz.  That

15   that was an issue in the arbitration and that's one of

16   the issues here in this lawsuit.

17           So we believe that our request for those

18   arbitration documents are highly relevant.  They're

19   not privileged.  This is a matter that's governed by

20   federal law and there is no federal privilege that

21   would prevent or allow Mr. Larian to withhold those

22   documents.  And a protective order in this case will

23   deal with any concerns that there might be about the

24   privacy or the types of information that's disclosed.

25           JUDGE INFANTE:  Okay.  Thank you very much.

EXHIBIT __A__
PAGE __65__                                          65

1          MR. KIDMAN:  Another category, Your Honor,

2     that I'd like to specifically address is documents

3     relating to Mr. Larian's financial condition.  These

4     are documents that are also undeniably relevant.  We

5     have claims against Mr. Larian in this lawsuit where

6     we're seeking discouragement of all amounts that he

7     has received from his wrongful conduct in the lawsuit.

8     And we're entitled to know amounts he has earned, what

9     the sources of those amounts might be.

10          Mr. Larian's opposition primarily is that we

11     should get this information from MGA.  Well, I think

12     we're entitled to get information about Mr. Larian's

13     financial condition from Mr. Larian.  There is no rule

14     that says that Mr. Larian gets to dictate where we go

15     to get information that's relevant to our claims

16     against him.

17          I want to specifically talk about the tax

18     returns.  Mr. Larian has taken the position that we're

19     not entitled to his tax returns.  As a preliminary

20     matter, Your Honor, there is no federal privilege

21     against the production of tax returns.  And this is

22     a matter that's governed by federal law.

23          JUDGE INFANTE:  There's Ninth Circuit cases

24     on that that discourage orders to produce tax returns.

25          MR. KIDMAN:  That's right, Your Honor.  And

EXHIBIT ___A___
PAGE ___66___

1    I think in this case this is a case that would warrant

2    the production of tax returns.  We think there's

3    a compelling need for Mr. Larian's tax returns here.

4    We know that in prior, prior lawsuit Mr. Larian under

5    oath testified that he had made virtually nothing from

6    Bratz.  He had received personally originally nothing

7    from Bratz, because he invests, puts all the money

8    back into the company.  At a minimum, these tax

9    returns, which he signs under oath, are critical

10   impeachment materials to impeach that testimony that

11   he hasn't made money from the sale of Bratz.

12           In addition, Mr. Larian points to Your Honor's

13   order where you denied Mattel's request for Carter

14   Bryant's tax returns.  But I would submit, Your Honor,

15   that Mr. Larian is in a very different position than

16   Carter Bryant.  Carter Bryant's amounts that he

17   received from the sale of Bratz are largely set forth

18   in royalty statements.

19           Mr. Larian's is in a much different position.

20   His financial transactions are far more complex.

21   There could be any number of instances where he has

22   used corporate assets for his own personal gain.  We

23   know that he holds interests in trusts.  He has other

24   entities.  There's a number of other entities that he

25   owns.  There could be any number of complex

EXHIBIT  A
PAGE  67

**HEARING**                                                    12/14/07

1    transactions that could be used to conceal amounts

2    that he has received from MGA.  And the tax returns

3    are the one in a summary document where he himself has

4    said here's what I made.

5            So we believe there is a compelling need for

6    the tax returns here.  Mr. Larian was in a different

7    position than Carter Bryant.  There's certainly no

8    burden in producing them.  And we do have a protective

9    order in that case, Your Honor.

10           The other category, Your Honor, that I'd like

11   to address or another category relates to Mr. Larian's

12   computer hard drives.  We requested Mr. Larian's

13   computer hard drives.  We have allegations in this

14   lawsuit, in our complaints, in our pleadings, that

15   Mr. Larian destroyed evidence on his computer hard

16   drives.  We have testimony from MGA, one of MGA's

17   IT people.  Mr. Larian's hard drives are routinely or

18   periodically wiped.

19           This is an instance where those hard drives

20   are clearly relevant to a direct allegation in the

21   complaint to the destruction of evidence in hard

22   drives.  And in addition, we have testimony that would

23   suggest the only way we might be able to recover

24   relevant communications is by being given the

25   opportunity, as we have done with Mr. Bryant's

EXHIBIT _A_
PAGE _68_

68

1    computers, to image those hard drives, have an

2    independent third party do that.  If there's concerns

3    about privilege, we have a protocol in place to

4    address that where the documents from the imaged hard

5    drive can be numbered, reviewed by counsel, and

6    anything that they claim is privileged can be put on

7    a log.

8             Another category, Your Honor, involves

9    Mr. Larian's telephone records.  And we have a request

10   for Mr. Larian's telephone records for two particular

11   periods of time.  And those are periods of time that

12   are of critical importance to this lawsuit.  The first

13   period of time is from January 1, 1998 to, I believe

14   it's January 1, 2001.

15            Clearly, telephone calls made to Carter Bryant,

16   other individuals that we know have worked on Bratz

17   during that period of time, goes directly to one of

18   the key issues in the lawsuit, this lawsuit, that's

19   the timing of the creation and development of Bratz.

20            The other time period that we've requested is

21   in the April through June 2004 time period, which goes

22   directly to our allegations of misappropriation of

23   trade secrets.  It was during that period of time that

24   Mr. Larian was soliciting the employees from Mattel's

25   Mexico facility, and as we have alleged, induced them

EXHIBIT ___4___
PAGE ___69___

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

**HEARING**                                                        12/14/07

```
 1    to steal Mattel's trade secrets.  We believe the

 2    telephone records are limited to those periods of

 3    time.  We believe that those are critically important

 4    periods of time.

 5          And the proposal to somehow limit the

 6    telephone records to those that relate to Mr. Bryant's

 7    or Bratz is simply not workable for a couple of

 8    reasons.  First of all, with respect to the

 9    misappropriation of trade secrets, limiting records to

10    Bryant or Bratz would exclude wholesale categories of

11    documents that are highly relevant.  Communications

12    with Mattel employees, former Mattel employees.

13          In addition, it creates a situation where if

14    Mr. Larian is allowed to go in and redact something

15    that doesn't relate to Bratz or Mr. Bryant,

16    for example, there are any number of telephone numbers

17    in there that presumably he's not going to, at this

18    point in time, know what those numbers are.  There

19    shouldn't be a position where, unless he knows that it

20    relates to Bryant's or Bratz, he's able to redact it,

21    because I think that would probably result in the

22    redaction of probably almost everything.

23          So we believe that our requests for the

24    telephone records are narrowly tailored.  They're

25    designed to get information that's highly relevant in
```

EXHIBIT ___A___
PAGE ___70___

70

1    this lawsuit.

2            There are a number of other categories where

3    there are one or two requests at issue.  I think we've

4    addressed those in our papers.  And if Your Honor has

5    any questions about any of those, we'd be happy to

6    address them.

7            JUDGE INFANTE:  Thank you very much.

8            MR. KENNEDY:  Thank you, Your Honor.

9            When we substituted into this case, the prior

10   counsel had not yet prepared any response either to

11   the memo of P's and A's or the 200-page separate

12   statement.  I went to Los Angeles on November 29th,

13   and met with Mattel's counsel, and at that point there

14   were 87 topics that were in dispute.  We on our side

15   agreed to produce as to 55 of those.  Mattel refused

16   to modify its position as to anything.

17           Between the 29th and December 5, we cranked

18   out a response to the separate statement and the memo

19   that's before Your Honor.  And I submit that having

20   filed anything earlier than that, before we had met

21   and conferred, would have been a further waste of

22   a tree.  We would ask the Court's indulgence in

23   considering what we have filed.

24           In regards to what the ruling is on that, the

25   biggest problem here is this:  Mattel's discovery

EXHIBIT __A__
PAGE __71__

71

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1   requests to MGA define MGA as the corporate entity,

2   all of its officers, directors, et cetera, so that

3   picks up Mr. Larian in three or four different

4   categories.  And as Your Honor has heard, there have

5   been literally millions of pages produced by them.

6   The requests to Mr. Larian seek anything that's within

7   his possession or subject to his control.  Given his

8   position at MGA, arguably he would have control over

9   just anything at MGA.

10          So read literally the requests are

11   coextensive that anything that MGA would produce would

12   be subject to Mr. Larian and vice versa.  Against that

13   background, we have offered to produce anything we can

14   find that Mr. Larian has in personal files that hasn't

15   already been produced on his behalf through MGA in the

16   millions of pages that are already there.

17          Anything broader than that, I think is

18   literally going to involve reproducing.  I think we're

19   up to 3.7 million pages this morning.  And all 3.7

20   million of those are, I think, subject to his control.

21   So that was our reason for wanting to limit it to new

22   things that were in his possession.

23          Briefly on some of the other specific

24   matters.  On the arbitration, as Your Honor may

25   recall, back in May that same information was sought

EXHIBIT  _A_
PAGE  _72_

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

HEARING                                                              12/14/07

1    as to MGA except at that time the request said, all

2    documents that refer or relate to Bratz and/or Angel

3    that came out of the arbitration.  There has been

4    production since then.  There hasn't been any claim by

5    Mattel that that resulted in there being shorted or

6    that anybody was misinterpreting those words.

7                This time around to Mr. Larian, the request

8    for the arbitration materials doesn't contain those

9    limitations.  They want everything.  And this is a

10   fight between two brothers, Your Honor.  And, without

11   waiving any privileges, in an inter-family dispute

12   some pretty ugly things often get said that have

13   absolutely nothing to do with Bratz or this case.

14               We would submit that Mattel has made no

15   showing why the same scope that it has already sought

16   and granted as to MGA ought not to apply to Mr. Larian.

17               On financial condition.  They're suing

18   Mr. Larian for punitive damages.  They are entitled

19   to a current statement of his net worth and his

20   earnings.  And we're prepared on an

21   attorney's-eyes-only basis to produce a copy of his

22   latest W-2.  We're checking to see if there is an

23   existing financial statement, or whatever would be the

24   best information in that regard.

25               The tax returns, Your Honor, was already

EXHIBIT _4_
PAGE _73_

73

1    mentioned in Ninth Circuit law there.  Plus, if you're

2    trying to find out a guy's net worth, for purposes of

3    jacking up your punitive damages, the tax return is

4    the last place you're going to go since if he really

5    is this person who plays with numbers, he's going to

6    have understated his income by some huge amount there.

7    So it isn't going to be of any help, whatsoever.

8           This, I submit, is the classic fishing

9    expedition.  In his depo he said he wasn't sure

10   whether he had gotten bonuses in given years or

11   whether the money had been plowed back into the

12   corporation.  And that's the threat upon which they

13   now claim they need his tax returns to impeach him on

14   that basis.  With no suggestion that any of that was

15   incorrect.

16          On storage devices.  Again, Your Honor

17   visited this issue before.  Up until now, everybody's

18   been allowed to print out and produce copies.  That's

19   what's been done here.  Absolutely no showing of why

20   that hasn't been found totally sufficient as to

21   Mr. Larian.  Likewise, on telephone records, up until

22   now, for everybody else it's been you can restrict to

23   things relevant to the case through lawyers.  No

24   suggestion as to why that isn't adequate.

25          To the extent Your Honor is willing to

EXHIBIT A
PAGE 74

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1    consider our written submission, what I said here is

2    all set forth there.  I won't repeat it again.  But if

3    it's not going to be considered, I felt some

4    constraint to get something on the record orally.  If

5    the Court has questions, I'd be pleased to try to

6    respond.

7              JUDGE INFANTE:  No, I think you've covered

8    everything in your opposition.

9              Is there any reply?

10             MR. KIDMAN:  A couple of points, Your Honor,

11   regarding this issue of Mr. Larian's personal files,

12   excuse me, limiting his search to his personal files.

13   As we've said, that's very problematic.  Mr. Larian

14   shouldn't get to decide what constitutes, quote,

15   unquote, "a personal file."  Our proposal to

16   Mr. Larian was that he need not reproduce a document

17   if it's already been produced.  However, he can't

18   limit his search unilaterally to that which he deems

19   to be his personal file.

20             And that sort of proposal to limit his

21   production and not have to reproduce the things that

22   have been produced applies to these specific requests,

23   Your Honor.  There are other requests where the mere

24   fact that Mr. Larian has something in his possession

25   is itself material.  And those are requests that are

EXHIBIT  _A_
PAGE _75_

1    not, they're not tee'd up in this motion.  They're

2    requests that go to misappropriation of trade secret

3    claims.

4            Your Honor, the fact that MGA has produced

5    something already should not excuse Mr. Larian from

6    producing it, because the mere fact that he has it in

7    his possession is material to our claim against him

8    for misappropriation of Mattel's trade secrets.

9            However, for these requests, Mr. Larian

10   doesn't need to reproduce documents that have already

11   been produced, but he can't limit his search to his

12   personal file.

13           MR. KENNEDY:  Your Honor, I have one

14   sentence.  Where does that end?  If it isn't limited

15   to his personal files, then we're told he has a duty

16   to go back and redo the entire production that's been

17   done in this case to make sure that there isn't

18   something out there at MGA that hasn't previously been

19   produced.  Meanwhile, they've just served another 200

20   requests for production on MGA.  If there's anything

21   out there that didn't get picked up the first time, it

22   should get swept in this time.

23           Thank you.  I'm prepared to submit.

24           MR. KIDMAN:  Your Honor, there's a couple of

25   additional points that I wanted to make, Your Honor.

EXHIBIT  _4_
PAGE  _76_

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1   And that with respect to the hard drives, what

2   Mr. Kennedy fails to acknowledge is that we have

3   claims here that he destroyed evidence and destroyed

4   his hard drives.  Therefore, printing out responsive

5   documents doesn't address the issue.  We need access

6   to those hard drives, so we can image them to seek

7   what was destroyed.

8          With respect to the tax returns issue, the

9   reason that the tax returns are so critical here is,

10  as we've said, Mr. Larian testified under oath that he

11  made something in the neighborhood of $500,000 from

12  Bratz and everything else was put back into the

13  company.  I think his tax returns are critically

14  important, because that is something where he has

15  represented under oath that he has made.

16         With respect to the Larian versus Larian

17  arbitration, there is a reason to believe, Your Honor,

18  that the request to MGA that was limited to documents

19  that refer or relate to Bratz was inadequate.  We've

20  gotten something like four documents from MGA that

21  relate to that arbitration.  We know that there are

22  other documents.  We've gotten from other sources,

23  third parties, including documents that talk about

24  valuations of Bratz.  So clearly that request as

25  limited to MGA was inadequate to getting key relevant

EXHIBIT __A__
PAGE __77__

77

1    documents.

2              JUDGE INFANTE:  Okay.  The matter is

3    submitted.

4              MR. KENNEDY:  Thank you, Your Honor.

5              JUDGE INFANTE:  The motion will be granted in

6    part and denied in part.  And I'll issue an order

7    hopefully within a week resolving the motion.

8              There is a motion with respect to MGA and

9    Carter Bryant.  It's a Joint Motion to Compel

10   Regarding Mattel's Bandying of 30(B)(6) Witnesses.

11   I haven't read it.  So it will have to be continued

12   until January 4th.

13             I believe that completes the motion calendar.

14             MR. KENNEDY:  Correct, Your Honor.  We did

15   submit the letter request -- yes, Your Honor.

16             JUDGE INFANTE:  You're simply seeking more

17   time?

18             MR. KENNEDY:  No, Your Honor.  First off,

19   I've thought harder about it since I wrote the letter.

20   I think we can now get our opposition in to this

21   motion within the time allotted.  What I am concerned

22   about, though, are the requests for terminating

23   sanctions.  What I would propose is that all requests

24   for terminating sanctions by all parties be deferred

25   until the end of discovery, since we really aren't

EXHIBIT ___A___
PAGE _78_

HEARING                                    12/14/07

1   going to know until then whether anybody has been

2   deprived of their ability to fully present an issue in

3   some way and we seem to have enough else to fight

4   about.   And I would propose that that apply across

5   the board to everybody, so that we can focus now just

6   on what information are people going to get and

7   whether monetary awards ought to be imposed.

8              JUDGE INFANTE:   So that's your only request?

9              MR. KENNEDY:   I'm modifying that one, as far

10  as that motion goes.

11             I do have one other proposal.   Again, I'm new

12  here.   So this may have already been considered and

13  been rejected.   But as we're getting close to the end

14  of discovery, we at least would find it enormously

15  helpful if we could get some upfront input from

16  Your Honor.   As we have discovery requests, especially

17  the number of them that are out here.

18             Again, you obviously would not rule on

19  motions.   But I know a number of the State Court

20  judges, in the complex litigation departments, are

21  giving people an indication as to what they think is

22  and is not relevant and necessary so the parties can

23  be guided accordingly.

24             And to the extent if we could schedule an

25  hour of Your Honor's time to try to talk through some

EXHIBIT __A__
PAGE __79__

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

**HEARING**                                                   12/14/07

1    of these things.  Because otherwise, even with the

2    expedited schedule, we're getting into January and

3    then if anybody wants to appeal and go to Judge Larson,

4    we're just concerned we're going to run out of time.

5    And you're ultimately going to tell us who you think

6    is being unreasonable and who isn't.  And if we could

7    get some upfront indication of that, these are all

8    sophisticated people in this room, I think they could

9    read the handwriting on the wall.

10           JUDGE INFANTE:  I'm not inclined to do that

11   in this case.  I've done it in other cases.  I would

12   rather not.  I would rather be formal on everything

13   that is resolved here --

14           MR. KENNEDY:  Yes, Your Honor.

15           JUDGE INFANTE:  -- given the history of the

16   case.

17           MR. COREY:  Would the Court like to hear from

18   Mattel with respect to Mr. Kennedy's request about the

19   sanctions that were being requested?

20           JUDGE INFANTE:  I think his request is that

21   any sanctions that are other than monetary sanctions

22   be deferred until later, so they can be all heard at

23   one time.

24           MR. COREY:  Let me just clarify one thing.

25   Mattel recently filed a motion in which the Court has

EXHIBIT ___A___
PAGE ___80___

80

HEARING                                                    12/14/07

1    seen the proposed order.  I don't perceive those as

2    being terminating sanctions.  They're very specific

3    sanctions that are being sought.  And actually they're

4    not even sanctions, it's a report and recommendations

5    that's being requested with respect to --

6              JUDGE INFANTE:  As I understand it, he's

7    saying any sanctions that are other than monetary

8    sanctions be deferred so the Court, so the Master only

9    has to write one report and recommendation to the

10   District Court.  I think, essentially, that's what he

11   is saying.

12             MR. COREY:  And that was my understanding as

13   well.  I just want to make sure that I understand

14   that, to the extent there's a preclusion motion or

15   preclusion sanctions being sought with respect to

16   MGA and Bryant's joint motion with respect to bandying,

17   that's also being withdrawn and taken off the table?

18             JUDGE INFANTE:  I don't know.  I don't care.

19   Do you have any comments regarding his request?

20             MR. COREY:  I don't disagree with his request

21   as long as it applies to all parties.

22             JUDGE INFANTE:  Of course, it does.

23             MR. COREY:  Thank you.

24             JUDGE INFANTE:  It applies to the Special

25   Master doing something once.  Don't you get it?

EXHIBIT  4
PAGE  81

81

**HEARING**                                                        12/14/07

1    A report and recommendation to the District Court on

2    all issues with respect to other than monetary

3    sanctions.  I don't know what's so hard about that.

4              Your request is granted.

5              MR. KENNEDY:  Thank you, Your Honor.

6              JUDGE INFANTE:  I'm not going to issue

7    multiple reports and recommendations to the

8    District Court on a piecemeal fashion with respect to

9    sanctions.  It's not going to happen here.

10             MR. COREY:  Thank you, Your Honor.

11             JUDGE INFANTE:  Is there anything else?

12             MR. PAGE:  There is one housekeeping request.

13   Counsel referred earlier to your earlier order denying

14   a request for Mr. Bryant's tax returns.  We yesterday

15   learned that Mattel has served a subpoena on Mr. Bryant's

16   personal --

17             JUDGE INFANTE:  It's not before me.

18             MR. PAGE:  I know.  I'm asking for a scheduling

19   order on it.

20             JUDGE INFANTE:  No.

21             MR. PAGE:  Could it be put on the --

22             JUDGE INFANTE:  No.  It's not before me.

23             MR. PAGE:  Okay.

24             JUDGE INFANTE:  We're done.  There is lunch

25   served in Room 31, if anybody wants a sandwich.

EXHIBIT __A__
PAGE __82__

82

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4     before me at the time and place herein set forth; that

5     any witnesses in the foregoing proceedings, prior to

6     testifying, were duly sworn; that a record of the

7     proceedings was made by me using machine shorthand

8     which was thereafter transcribed under my direction;

9     that the foregoing transcript is a true record of the

10    testimony given.

11         Further, that if the foregoing pertains to

12    the original transcript of a deposition in a Federal

13    Case, before completion of the proceedings, review of

14    the transcript [   ] was [   ] was not requested.

15         I further certify I am neither financially

16    interested in the action nor a relative or employee

17    of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20

21    Dated:   DEC 1 7 2007

22

23                    _Dana M. Freed_

24                    DANA M. FREED
                      CSR No. 10602

25

EXHIBIT _A_
PAGE _83_

**A**

ability 18:21 32:5 64:25 79:2
able 11:2 48:11 56:4 63:22 68:23 70:20
absent 40:19
absolute 19:21
absolutely 7:18 41:8 73:13 74:19
accelerate 55:3
accepted 41:21
access 51:3 77:5
accessible 50:24,25 51:1
accompanied 60:2
accurate 8:19 24:24 31:3
accurately 35:24
achieved 14:2
acknowledge 77:2
acknowledged 59:10
action 8:3 52:9 83:17,18
actual 23:11 35:6 51:14
ad 27:16
add 5:5 14:18 50:1
added 58:2
addition 63:6 67:12 68:22 70:13
additional 17:5,16 22:14 25:9 47:14 54:4,19 76:25
address 62:23,25 64:8 66:2 68:11 69:4 71:6 77:5
addressed 71:4
adequate 74:24
adjust 57:3
admissions 48:3
admitted 30:6 40:22
adopted 19:21,25 41:23
Advance 41:22
adversary 26:17
advice 35:5 40:19,21 41:1 44:3
advise 9:13 47:5,11
advised 8:1
advising 11:12
affirmative 50:10
afternoon 57:8
agenda 5:6

ago 30:17,18 31:11 57:22 59:9 60:2 61:9
agree 54:7
agreed 59:8 63:14 63:18 64:1 71:15
agreement 31:9 33:1 45:6,22 52:11 63:7
agreements 29:7,20
alert 46:22
allegation 64:18 65:6 68:20
allegations 68:13 69:22
alleged 69:25
alleges 52:11
allotted 78:21
allow 65:21
allowed 70:14 74:18
Allowing 65:7
alteration 39:19
alternative 22:10
amended 50:10 53:4
amount 33:20,22 74:6
amounts 66:6,8,9 67:16 68:1
Amy 3:18 4:18
analysis 45:3 59:12
analyzing 59:24
Anderson 3:5 4:11 4:12 46:19 47:3,7 47:13
and/or 29:19 73:2
Angel 73:2
Angeles 3:13 71:12
answer 49:16
answers 48:2 49:20
anticipated 37:2,9 38:21,25 48:15
anybody 55:18 73:6 79:1 80:3 82:25
anymore 13:20
anyone's 45:14
apologize 50:21
appeal 16:13,24 17:1 80:3
appealed 16:12
appear 12:15 54:8
appearances 3:1 4:5
appeared 10:5 11:1
appearing 4:7
appears 43:5 51:20
applicant 35:23

applicants 35:19
application 16:18,25 17:12 35:16,21 36:2,13,15 37:18 39:5 40:1,8 43:14
applications 37:14 38:5 42:23,24 43:2
applies 48:10 75:22 81:21,24
apply 20:1 73:16 79:4
appreciate 56:10
approach 11:13 14:5 20:1 27:16 43:7 48:25
appropriate 22:20 26:25 27:8 31:18 53:2 63:17
appropriately 32:17
approval 42:20
approximately 24:4 24:5 25:8 46:7 63:9
April 20:5 21:8,12 69:21
Arant 36:14 37:11 40:22
Arant's 40:5 43:8
arbitration 64:10,12 64:17,24 65:1,10 65:15,18 72:24 73:3,8 77:17,21
arbitrations 51:25
area 41:18 54:23
arguably 72:8
argue 5:12 41:17 58:19
arguing 58:17
argument 46:1
arguments 48:16 54:6 56:12
arises 15:21 29:12
Armstrong 38:4
ARPS 3:16
articulated 13:16
aside 37:19
asked 22:8 33:6
asking 42:18 82:18
aspect 6:18,23 17:2 30:3,12 51:14
aspects 16:12
asserted 16:23
asserting 48:19
assets 67:22
associating 10:2
attached 35:22

attempt 21:19
attend 46:21
attention 6:12,21 8:14 9:17 55:6
attorney 36:1,10 39:5,24 40:18 83:18
Attorneys 3:6,12,18
attorney's 27:11
attorney's-eyes-o... 73:21
attorney/client 28:6 42:2 44:9
August 17:20 21:13 21:14,17,23 23:6 23:10,12,14 24:18 24:19 26:10 27:6 30:10,14 31:10
author 41:17
authorities 19:8
authorized 27:21
available 61:21
Award 62:17
awarding 33:21
awards 79:7
aware 9:23 41:22 64:19
A's 71:11
a.m 2:16 4:2

**B**

B 3:10,11,12 4:10 6:10
back 8:14 11:25 12:12 21:22 22:6 48:16 53:6 59:14 62:23 67:8 72:25 74:11 76:16 77:12
background 11:8 15:21 72:13
back-end 26:3
balance 53:5
balancing 27:16
bandying 57:20 78:10 81:16
base 31:24
Based 52:17
basic 46:6 58:24
basis 7:23 15:10 33:17 44:3,4 48:20 50:9 53:21 54:18 73:21 74:14
batch 30:17 31:12
Bates 11:14 42:17
bearing 29:7 45:16

bears 43:24
becoming 53:12
began 15:14
beginning 2:16
behalf 4:8 72:15
behaved 50:4
believe 5:1 6:11,20 8:13 10:25 14:2 15:3 22:15 23:6,11 23:19,23,23 27:18 27:24 28:18 30:3 31:3,17 35:8 36:23 46:18 47:18 50:19 50:19 52:13 54:16 56:18 57:12 58:1 58:15 63:12,16 65:17 68:5 69:13 70:1,3,23 77:17 78:13
believes 54:18
benefit 45:11
benefits 45:2 51:13
best 35:24 73:24
better 12:10 47:9 53:23 54:20
beyond 13:3 43:15 53:11
bigger 12:22
biggest 71:25
binary 42:11
binders 5:17
bit 31:10 41:18 47:12
block 22:3
board 79:5
bonuses 74:10
bore 49:14
box 5:14
Bratz 34:14 38:22 58:25 59:6 64:15 64:19,20 65:7,8,11 65:14 67:6,7,11,17 69:16,19 70:7,10 70:15,20 73:2,13 77:12,19,24
Brazil 41:23 42:3
Brian 38:4
bridge 12:16
brief 24:11 53:9 63:1
briefed 6:13 43:6 47:24 62:22 64:7
briefing 54:4,19 55:12
briefly 13:7 43:20 51:19 72:23
briefs 36:20 53:9,14

bring 19:3 55:6
broad 51:22
broader 50:12 52:1
72:17
brother 64:11,18,21
brothers 73:10
brother's 64:22
brought 5:14 10:10
47:14 52:18 62:15
Bryant 1:4,11 2:4,11
3:3 4:12,14,16 29:8
29:20 30:21 31:1,5
45:18,20 52:11
55:17 57:19 65:12
67:16 68:7 69:15
70:10,15 78:9
Bryant's 67:14,16
68:25 70:6,20
81:16 82:14,15
burden 8:8 13:11,16
38:2 39:2 40:10
41:13 43:25 46:4
46:12 49:15 51:12
51:16 53:5 68:8
burdens 13:9
burdensome 54:24
burglarizing 32:19
buried 45:2
Burlington 19:20
20:3 22:4 26:21
27:15 28:5,24 34:2
business 56:10

**C**
calendar 9:11 50:1
55:19 56:17 78:13
California 1:1,15 2:1
2:16 3:7,13,19 4:1
83:2
call 5:12 34:11
called 21:3
calls 64:5 69:15
candor 35:19
captioned 15:4
34:12,15 44:20
Cardiovascular
41:23
care 81:18
Carter 1:4 2:4 3:3
4:12,14,15 55:17
57:19 65:12 67:13
67:16,16 68:7
69:15 78:9
case 9:23 11:9 16:7
19:1 20:24 26:20

26:24 27:2,15,15
27:17 28:5 36:5,7
40:16 42:3 45:17
46:10,22,23 47:25
48:9 50:13 65:22
67:1,1 68:9 71:9
73:13 74:23 76:17
80:11,16 83:14
cases 39:9,10,11,13
39:14 40:12 66:23
80:11
categories 30:23
61:18 62:21,24
64:6,8 65:9 70:10
71:2 72:4
category 16:22
50:21 51:8,15 66:1
68:10,11 69:8
cautiously 28:10
cavalier 18:9
Center 2:15 3:19
CENTRAL 1:1 2:1
certain 16:12,22
22:6 44:8 60:5
63:19
certainly 20:18
24:10 33:2 68:7
Certified 2:18 83:1
certify 35:23 83:3,16
cetera 72:2
chaff 61:21
challenged 17:13
change 52:17 53:22
check 10:21
checked 11:23
checking 73:22
choose 65:1
Christa 3:5 4:11
Christmas 55:21
chronology 18:8
20:23,25
Circuit 19:21 40:12
41:22 43:23 66:23
74:1
circumstance 35:16
39:3
circumstances
26:25 28:4 52:17
52:23
citation 28:24
citations 26:8
cite 40:12 42:19
cited 19:9 21:22
27:15,17 36:6,7
39:10,13,14 40:13

40:15
claim 19:16 33:18
34:20 69:6 73:4
74:13 76:7
claiming 34:18
claims 33:25 59:4
66:5,15 76:3 77:3
clarify 24:16 25:6
29:17 62:8 80:24
classic 74:8
clear 13:23 19:4 23:4
24:8 40:16 51:12
clearly 14:8 39:11
41:6 42:24 43:3,12
53:10,20 65:3
68:20 69:15 77:24
client 12:18 42:14,17
43:12
client's 61:3
close 20:13 21:24
79:13
closer 61:15
coextensive 72:11
collecting 46:4
collects 38:7,11,11
come 10:4,19 11:1
36:8 41:10 42:12
42:15 46:6 50:7
62:23
coming 49:24
comment 54:12
comments 28:23
81:19
communication 5:9
35:4 38:24 41:7
43:25 44:5
communications
14:5 31:5 35:4
38:19,21,25 41:24
44:9 68:24 70:11
company 34:3 67:8
77:13
comparatively 12:6
compel 6:5 8:15
9:18 15:4 18:3
29:18 34:13 44:23
57:15,17,25 58:10
58:19 62:16 78:9
compelled 6:6,25
7:9 29:19 63:17
compelling 58:4
63:12 67:3 68:5
compensated 33:6
complain 9:12
complaint 32:9

68:21
complaints 68:14
complete 12:1 60:18
61:7
completed 8:22
27:22 43:4 60:6
completely 63:25
completes 78:13
completing 60:8
completion 83:14
complex 39:21,23
67:20,25 79:20
compliance 14:2,9
19:6 21:20 26:17
30:2 31:9 33:12
60:19
complied 7:19
compliment 32:4
comply 13:23 26:14
26:22 30:4 33:23
48:6 49:12 51:23
computer 68:12,13
68:15
computers 69:1
conceal 68:1
concealed 64:21
65:6
concededly 51:6
conceive 45:13
concept 50:2
concerned 32:10
54:21 78:21 80:4
concerns 49:11
50:13 65:23 69:2
concluding 44:4
conclusory 38:24
condition 66:3,13
73:17
conduct 66:7
confer 4:24 17:21
20:25 21:9,21 26:9
49:8 52:6
conference 48:12
conferred 10:9
59:16 71:21
confidential 35:7,15
36:9 37:5,12,22
38:3,20 39:6 44:2
confirmation 21:9
confirmed 17:7
26:13
conflict 45:6
connection 6:19
38:19 45:9
Connor 41:17

68:21
consequences 13:1
consider 75:1
considerably 43:7
consideration 52:7
considered 14:24
34:2 43:1 75:3
79:12
considering 71:23
consistent 23:17
28:23
Consolidated 1:10
2:10
constitutes 75:14
constraint 75:4
construction 50:3
constructions 50:6
consulting 43:13
contain 11:10 73:8
contained 25:20
context 39:20
continue 26:15
47:15
continued 7:1 78:11
continuing 7:24
contract 50:5
contracts 50:23
contradicted 21:1
contrary 37:16 40:10
45:22
control 64:3 72:7,8
72:20
conversations 42:7
convey 38:8,12
Cook 42:20 43:1
cooperative 11:7
copies 10:7 11:3
74:18
copy 10:22 46:17
48:21,23 51:20
73:21
core 64:17
Corey 3:11 4:8,8
60:22 80:17,24
81:12,20,23 82:10
corporate 67:22
72:1
corporation 1:8 2:8
3:9 74:12
correct 15:18 44:11
57:11 58:7 78:14
corrected 43:7
correcting 22:12
correction 9:3
corrective 27:9
correspondence

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
EXHIBIT A
PAGE 85

42:23
**cost** 46:8
**costs** 58:25
**counsel** 4:4 5:4 8:4
9:24 10:10 11:6
12:16,20 14:3,12
23:14 25:18 33:22
38:19 43:6 47:25
49:8 59:9 63:8 69:5
71:10,13 82:13
**count** 20:14
**countermotion**
25:17 29:2
**countermove** 25:18
**counterparts** 31:5
**couple** 27:10 31:8
55:25 59:9 62:24
70:7 75:10 76:24
**course** 5:18,22 35:19
36:25 81:22
**court** 1:1 2:1 6:16,19
7:3,5,12 8:9,16,20
9:7,10,18 10:17
12:21 13:14 15:8
22:23 26:21,24
33:20 34:4 39:2
40:16 43:21,22,23
43:24 45:19,24,25
49:18 52:15 54:5
54:18,20 61:19
62:3 75:5 79:19
80:17,25 81:8,10
82:1,8
**court's** 6:5,12,14,20
7:19,20,21 8:2,10
8:13 9:14,17,23
13:12,19,24 14:22
15:22 29:18 41:5
44:17 55:4,6 71:22
**cover** 10:14 60:2
**covered** 75:7
**Craig** 3:22 4:17
**cranked** 71:17
**created** 15:14 41:11
43:16
**creates** 70:13
**creation** 13:11,21
69:19
**creative** 22:24
**crew** 48:2
**critical** 54:23 67:9
69:12 77:9
**critically** 70:3 77:13
**CSR** 1:22 83:25
**cure** 8:5

**current** 73:19
**custody** 64:3
**cut** 10:18 20:9
**cutoff** 18:13,19 26:5
31:13 55:1 59:19
**CV** 1:6 2:6

_____
**D**

**D** 3:17
**damages** 59:4 73:18
74:3
**DANA** 1:21 2:18
83:24
**databases** 11:5,25
**date** 13:11,14 23:21
24:20 25:2 27:20
27:22,22 34:10
35:2,13 38:22
59:17 60:5 63:19
83:19
**dated** 5:4 16:8 58:5
83:22
**dates** 12:15 21:4
23:11 38:25 55:18
**date-of-first-use**
35:11,25 36:9 37:1
37:2,4,9,13 38:7,11
38:12 39:4 40:2,7
40:24
**day** 12:25 16:19
22:23 55:21 56:16
**days** 9:2 12:11 21:3
21:8 26:4 55:25
56:10 57:22 60:1
**deadline** 30:2,4,5
61:11 63:4
**deadlines** 59:20
**deal** 18:23,25 65:23
**dealing** 22:24 50:2
**dealt** 28:10
**December** 1:16 2:17
4:1 5:5 10:24 14:12
18:18 23:10 31:11
32:1 33:23 35:3
56:20,22 63:3
71:17
**decide** 75:14
**decision** 4:25
**declaration** 10:17,25
26:8 32:1,13 36:15
37:12,16 38:16
40:6,23 43:8,11
47:19 51:7 52:17
**declarations** 7:13
8:7 9:1 14:6

**declare** 28:13
**declares** 40:6
**decline** 28:16
**decoder** 42:21
**deems** 64:4,14 75:18
**default** 26:10
**defective** 8:5
**Defendant** 3:8
**defendants** 1:9 2:9
3:15 45:12
**defenses** 45:18,21
45:23 46:15 50:10
51:6 52:18 53:4,11
**defer** 5:20
**deferred** 78:24
80:22 81:8
**defiance** 27:3
**deficiencies** 8:18
**define** 72:1
**definition** 19:14
**deflate** 64:22
**Delaware** 1:7 2:7
3:8
**delay** 61:12
**delayed** 47:6
**demand** 48:23
**denied** 14:13 28:17
33:25 44:22 67:13
78:6
**deny** 6:24 7:1
**denying** 82:13
**department** 51:1
**departments** 79:20
**depo** 22:7 74:9
**depose** 32:16
**deposition** 83:13
**deprived** 79:2
**described** 20:23
**designed** 70:25
**designee** 38:5
**desperation** 23:1
**destroyed** 34:19
68:15 77:3,3,7
**destruction** 68:21
**details** 7:16 48:10
**determine** 42:8
**developing** 34:14
64:20
**development** 69:19
**devices** 74:16
**devil** 48:10
**de-facto** 11:16 52:2
**dialectical** 39:25
**dictate** 66:14
**died** 22:8

**different** 5:16 18:16
54:2 67:15,19 68:6
72:3
**differentiates** 36:5
**differently** 32:24
**direct** 68:20
**directed** 49:6
**direction** 83:9
**directly** 59:3 69:17
69:22
**directors** 72:2
**disagree** 81:20
**disappointed** 28:11
**disclose** 42:6
**disclosed** 35:17,17
36:3 39:7,18 40:3
65:24
**disclosure** 37:23
**disclosures** 40:17,20
45:15
**discourage** 66:24
**discouragement**
66:6
**discourse** 39:23
**discoverable** 43:4
45:20
**discovery** 18:13,19
19:1,11 26:4,23,23
28:11 31:13 54:25
59:19 71:25 78:25
79:14,16
**discussed** 26:9,19
29:10 57:5
**discussion** 21:6,22
22:9 49:14
**discussions** 45:5,13
**dispute** 6:24 7:5,7
59:7 63:13 71:14
73:11
**disregard** 18:10
**disregarded** 63:5
**disrespect** 46:24
**disrupted** 26:23
**District** 1:1,1 2:1,1
34:3 43:22 81:10
82:1,8
**DIVISION** 1:2 2:2
**docket** 41:5,9,10,11
42:25
**document** 9:4,6
10:19 28:3 36:24
42:16,22,25 46:16
54:21 59:17 65:13
68:3 75:16
**documented** 9:11

**documents** 6:6,15
6:17,25 7:2,4,6,9
7:21,24 8:6,22 9:19
10:1,4,11,13,25
11:9 12:3,7 13:13
13:13,20,25 15:1,5
15:9,11,12,13,15,24
16:1,16,23 17:4,6
17:22 18:15 19:17
20:11,15,19,21
21:7 22:17 23:15
23:21 24:1,21,22
25:19 27:12 28:2,7
29:6,14,19 30:8,11
30:12,13,15,16,20
30:22,25 31:2
32:11 33:15,17
34:10,13,16,19,22
35:9 36:23,25
39:12,15 40:10
41:2 42:10 43:11
44:23 45:4,11 46:9
49:10 50:22 52:8
54:16 57:17 58:4
58:11,20 59:22,23
59:25 60:5,13 62:5
62:9,17 63:8,10,13
63:18,22,24 64:2,4
64:9,11,13,14 65:1
65:3,8,9,18,22 66:2
66:4 69:4 70:11
73:2 76:10 77:5,18
77:20,22,23 78:1
**doing** 46:6 81:25
**dollars** 27:10
**doubt** 43:24
**draft** 42:23,23
**drill** 26:2
**drive** 69:5
**drives** 68:12,13,16
68:17,19,22 69:1
77:1,4,6
**due** 21:4 59:20 63:2
**duly** 83:7
**duty** 35:19 48:18
76:15
**Dylan** 3:12 4:10 6:10

_____
**E**

**earlier** 20:19 21:4
42:7 71:20 82:13
82:13
**earliest** 17:25 18:1
27:7
**early** 23:24 34:14

36:18 64:19,20
earned 66:8
earnings 73:20
EASTERN 1:2 2:2
Edward 1:14 2:14
effectively 40:22
eight 5:2 60:17
either 14:11 29:13
    42:12 55:16 71:10
element 11:18
elicit 40:7,23,24
EMANUEL 3:10
Embarcadero 2:15
    3:19
employee 45:14
    51:3 83:18
employees 45:9
    69:24 70:12,12
ends 42:16
enforce 6:5 29:17
    48:18 52:10
enforcement 18:3
    50:22 51:21
enormously 79:14
enter 4:5
entered 16:20
entertain 53:8
Entertainment 1:11
    2:11 3:15,15,22
entire 52:24 53:5
    76:16
entirely 41:25 53:14
entirety 52:4
entities 67:24,24
entitled 62:3 64:13
    66:8,12,19 73:18
entity 72:1
entries 24:5,7 25:4
equivalent 21:25
especially 79:16
essential 44:7
essentially 81:10
estimate 46:7
et 72:2
everybody 74:22
    79:5
everybody's 74:17
evidence 37:8,10
    38:14,16 41:8
    68:15,21 77:3
ex 16:17,25
exact 24:11
exactly 7:16,17
example 22:5 70:16
examples 22:21

exclude 70:10
excuse 6:22 46:19
    75:12 76:5
exercise 12:4,8
Exhibit 47:18,19
exhibits 35:22
exist 45:4 50:24
existence 65:6
existing 11:25 73:23
expect 42:7
expectation 35:6
expected 35:14
    38:19
expedited 80:2
expedition 46:9 74:9
expense 46:12
expert 59:11,20 61:8
experts 60:15 61:16
explain 53:21
explained 37:12
    50:20
explaining 32:2,13
explanation 17:18
    36:18 37:3,6
explanations 37:8
explicit 13:24 16:9
expressed 13:24
extended 30:2
extension 17:4,16
    63:4
extent 50:8,12,24
    51:10,11 52:15
    74:25 79:24 81:14
extra 47:12
extreme 46:4
e-mail 8:20
e-mails 5:8

                F
face 60:3
facetious 32:7,7
facially 43:11
facility 69:25
facing 54:25
fact 6:13 7:19 26:10
    26:16 27:4 59:8
    75:24 76:4,6
factors 27:17 28:5
facts 36:7 41:7,9,9
factual 35:18 39:18
failed 6:17,24
failing 6:15
fails 77:2
failure 14:25 19:9
    26:14,22 59:16

65:3
fairly 10:5
fall 30:22
false 8:24 9:7
familiar 11:5
far 12:14 23:11 67:20
    79:9
fashion 36:2 82:8
favorable 39:13
Fe 34:3
February 8:14 19:4
    59:20
Fed 34:4
federal 65:20,20
    66:20,22 83:13
Fee 29:19
feel 12:25 14:1 28:15
fees 27:11
felt 75:3
ferreted 11:4
fight 73:10 79:3
Figueroa 3:13
figure 41:16 51:22
file 12:24,25 20:7
    23:10 36:13,15
    37:17 49:20,21
    55:14 56:4 64:5
    75:15,19 76:12
filed 8:15,21 9:2
    10:17,24 14:9
    16:25 18:2 19:4,4
    21:18 26:1 30:24
    32:12,22 55:5
    59:23 63:7 71:20
    71:23 80:25
files 46:5,8 49:13
    50:16 51:2 63:23
    63:24 72:14 75:11
    75:12 76:15
filing 21:21 36:17
    56:1
filings 38:20
final 24:20
finally 17:20 20:7,8
    31:16
financial 57:16,25
    58:24 66:3,13
    67:20 73:17,23
financially 83:17
find 19:15 26:25 28:6
    28:17 32:5 39:3
    42:18 49:14,20
    53:2 72:14 74:2
    79:14
finds 33:20

Fine 61:20
finish 47:8 61:4
finishing 48:2
first 4:6 5:12,15 6:12
    6:22,23 13:9 15:10
    16:6 18:4 32:2
    34:10 35:2,11,13
    38:22,25 42:16
    43:23 47:23 48:21
    50:19 60:18,25
    61:8 62:25 63:1
    64:9 69:12 70:8
    76:21 78:18
first-date-of-use
    42:11
Fischel 40:13
fishing 46:9 74:8
five 18:12
fixing 13:10
FLOM 3:16
Floor 3:13,19
flouted 7:23
flurry 7:13
focus 79:5
follow 18:22
following 10:16
    55:16,20 61:2
follows 52:8
fool's 12:8
foregoing 83:4,6,10
    83:12
form 6:6,15,17 7:1,2
    7:4,7,9,17,18,22
    8:6,23 9:5,19 16:18
formal 80:12
former 14:12 70:12
forms 43:3,4
forth 21:1 48:22 51:6
    67:17 75:2 83:5
forthcoming 17:19
    20:8
fought 48:1
found 11:2,9 27:2
    48:9 74:20
four 3:19 5:15 8:2
    9:2,15 33:2 72:3
    77:20
fragmented 61:2
frame 23:24
framed 54:5,14
Francisco 1:15 2:15
    3:7,19 4:1
FRD 42:19
FREED 1:21 2:18
    83:24

Friday 1:16 2:17 4:1
    55:18 56:6,23,24
    56:25 60:22,23,25
front 6:4
fully 13:23 33:12
    47:24 79:2
function 51:16
fundamental 44:7
further 14:4 24:23
    33:10,19 61:5
    71:21 83:12,16
futility 12:5
future 5:7

_____ G _____
gain 67:22
Garcia 35:1,2 38:17
    43:12
gate 53:6
gathering 51:12,16
general 38:18
generally 39:20 40:6
Georgia 22:1
getting 12:22 51:23
    52:3 77:25 79:13
    80:2
give 11:15 25:15
    31:11 53:18,20
    59:17
given 12:15 17:9,16
    17:18 22:23 28:2
    57:1 68:24 72:7
    74:10 80:15 83:11
gives 61:7
giving 64:25 79:21
glad 47:21
go 5:17 11:14,25
    12:7,25 20:6 31:15
    43:13 47:15 54:11
    60:15 66:14 70:14
    74:4 76:2,16 80:3
goes 42:21 51:25
    69:17,21 79:16
going 5:15,16,20
    10:12,14 12:8,23
    13:2 14:14 21:7
    27:6 32:19 48:11
    49:12,13,15,24
    51:2 52:3,23 54:23
    54:24 60:6 61:4
    63:11 65:2,2 70:17
    72:18 74:4,5,7 75:3
    79:1,6 80:4,5 82:6
    82:9
gotcha 23:2,2 26:6

SARNOFF COURT        EXHIBIT ___A___        . TECHNOLOGIES
                     PAGE ___87___

26:18
gotten 10:20 11:8
  31:1 74:10 77:20
  77:22
governed 65:19
  66:22
graciously 47:11
Grand 40:14
grant 28:16,16 50:9
granted 14:11 16:4
  16:21 17:3 33:14
  44:22 61:25 62:4
  73:16 78:5 82:4
ground 40:9 41:2
grounds 9:4 17:23
  33:20
guess 11:16 49:22
guided 79:23
gut 60:15
guy's 74:2

H

H 3:4
handicapped 18:21
handlers 22:12
handling 5:7
handwriting 80:9
happen 82:9
happened 38:1
happy 71:5
hard 45:12 47:25
  68:12,13,15,17,19
  68:21 69:1,4 77:1,4
  77:6 82:3
harder 78:19
harsh 28:12
hear 5:3 12:23 41:14
  47:21 53:23 57:11
  80:17
heard 4:23 8:19
  10:23 22:9 50:11
  65:11 72:4 80:22
hearing 1:14 2:14
  15:23 16:3 46:20
  47:14 53:24 54:14
  54:22 55:7 57:2,3,9
HEDGES 3:10
help 48:24 53:13
  74:7
helpful 79:15
he'll 65:7
highly 65:18 70:11
  70:25
history 80:15
HK 3:15

hoc 27:16
hold 39:14
Holden 3:22 4:17,17
holds 67:23
holidays 57:2
holistic 20:1
Hong 15:16 16:23
  17:5 23:21 24:1,22
Honor 4:11 5:14,21
  5:25 6:9 8:21 9:22
  10:18 13:4,7 14:16
  14:18,23 15:20
  16:2,18,20 18:1
  19:15,20 20:3,9,16
  21:16 22:13 23:3
  23:11 24:10 25:2,8
  25:23 26:7,21
  28:25 29:5,13 31:6
  31:21 34:6,9,24
  36:24 37:11 40:15
  41:4,22 43:15,20
  44:16 46:18,19,22
  47:23 48:3,18,21
  50:8 51:19 53:8,25
  54:11,13 55:8
  56:14,19 57:6,13
  57:18 58:1,2,15,23
  60:12 61:7,12,14
  61:23 62:20 63:6
  64:17,23 66:1,20
  66:25 67:14 68:9
  68:10 69:8 71:4,8
  71:19 72:4,24
  73:10,25 74:16,25
  75:10,23 76:4,13
  76:24,25 77:17
  78:4,14,15,18
  79:16 80:14 82:5
  82:10
Honorable 1:14 2:14
Honor's 11:11 16:9
  18:3 19:13 26:11
  33:3 58:18 67:12
  79:25
hopefully 78:7
hoping 48:1
hour 79:25
housekeeping 82:12
huge 74:6

I

identified 11:13
  18:15 63:15
identify 33:16 61:17
identifying 10:25

ignored 19:12 20:7
image 69:1 77:6
imaged 69:4
impeach 67:10 74:13
impeachment 67:10
implicitly 17:15
impliedly 27:21
importance 69:12
important 65:5 70:3
  77:14
impose 9:19 14:7
  23:2 29:22
imposed 27:23 79:7
imposing 28:21
improper 8:11 10:5
  11:10
improperly 10:2,21
  11:1,15
inaccurate 43:9
inadequate 77:19,25
inadvertently 34:17
inappropriate 28:8
  63:25
incapable 11:24
inclined 50:9 80:10
include 30:23
including 20:15
  27:14 29:19 38:21
  40:13 77:23
inclusion 40:1
income 74:6
incomplete 60:4
inconsistent 54:8
incorrect 74:15
increased 51:16
indemnity 29:7,20
  33:1
independent 6:21
  8:14 40:9 41:2 69:2
indicated 16:2 54:1
indicates 60:3
indicating 49:7
indication 21:18
  79:21 80:7
individual 1:4 2:4
  3:3 64:6
individuals 69:16
induced 69:25
indulgence 71:22
Infante 1:14 2:14
  4:4,13,21 5:18 6:1
  6:3 9:20 11:20 13:5
  13:22 14:17,20
  15:2,7,19 19:18
  20:14,17 21:12,15

23:4,12,19 24:3,6,8
  24:13,15 25:3,6,13
  25:24 27:13 28:20
  29:1,11,16 31:19
  33:8,11 34:7,11
  41:14 43:19 44:6
  44:12,19 46:13
  47:1,5,9,17,21 48:8
  49:1,4 50:17 51:18
  52:5,19,22 53:12
  54:7 55:9,12,22
  56:2,11,16,20,23,25
  57:7,14,21 58:3,8
  58:12,16,22 59:2
  60:10,20,24 61:5
  61:13,22,24 62:11
  62:13 65:25 66:23
  71:7 75:7 78:2,5,16
  79:8 80:10,15,20
  81:6,18,22,24 82:6
  82:11,17,20,22,24
information 35:12
  35:14,15,25 36:10
  37:1,2,4,9,14,24,24
  38:3,7,11,12 39:4
  39:18,25 40:2,7,24
  42:6,8,18 45:16,20
  46:3 51:9,17 53:3
  57:16,25 58:24
  59:3,7,8,10,14,15
  61:8,25 62:2 65:24
  66:11,12,15 70:25
  72:25 73:24 79:6
informed 40:18,21
inherited 9:23 11:6
inheriting 31:24
initial 45:15
initially 45:19
input 42:18 79:15
instance 16:6 52:9
  68:19
instances 67:21
instructed 6:16 7:3
  7:6 13:14
instruction 13:19
intended 35:1 38:18
  44:1
intentionally 35:21
interest 45:6
interested 83:17
interests 67:23
interpretation 50:3
interpretations 50:6
interrogatory 45:15
inter-family 73:11

invention 45:21
inventions 45:6
inventor 39:23 41:24
  42:5
Investigations
  40:14
invests 67:7
invite 43:21,22
invited 8:4
involve 8:9 39:17
  72:18
involved 8:4 13:9
  28:3,4
involves 39:21 69:8
irrelevant 10:15
Isaac 3:15 57:17
  58:11 62:17
issue 6:13 7:12
  18:24 37:20 39:1
  45:4 49:23 54:2,14
  55:4 58:24 59:1
  60:7,8 62:21 64:17
  65:9,15 71:3 74:17
  75:11 77:5,8 78:6
  79:2 82:6
issued 13:25 20:20
issues 6:11 15:24
  18:16 29:7 41:5
  55:5 62:24 64:23
  64:24 65:16 69:18
  82:2
items 22:14
ITU 35:21 36:13,15
  37:17 40:8,25

J

J 3:17
Jack 41:21
jacking 74:3
JAMS 2:15
January 18:19 20:5
  50:1 54:22 55:10
  57:2,8 60:18,21,22
  61:1 62:6,13 69:13
  69:14 78:12 80:2
JOB 1:23
John 3:5,10 4:7,15
joint 4:22 57:19 78:9
  81:16
Jon 3:11 4:8
Judge 4:4,13,21 5:18
  6:1,3 9:20 11:20
  13:5,22 14:17,20
  15:2,7,19 16:12,25
  17:3,7,11,15 19:18

20:14,17 21:12,15
23:4,12,19 24:3,6,8
24:13,15,21 25:3,6
25:13,24 27:13,18
28:20 29:1,11,16
29:25 30:1,2 31:19
33:8,11 34:7,11
41:14,23 42:3
43:19 44:6,12,19
44:25 46:13 47:1,5
47:9,17,21 48:8
49:1,4 50:17 51:18
52:5,19,22 53:12
54:7 55:9,12,22
56:2,11,16,20,23,25
57:7,14,21 58:3,8
58:12,16,22 59:2
60:10,20,24 61:5
61:13,22,24 62:11
62:13 65:25 66:23
71:7 75:7 78:2,5,16
79:8 80:3,10,15,20
81:6,18,22,24 82:6
82:11,17,20,22,24
**judges** 79:20
**judicial** 21:25
**July** 17:3,4,19 21:3
21:20,23 24:20
27:20 28:1 30:3,5
**jump** 48:14
**juncture** 42:5
**June** 16:20,24 34:14
58:5 61:9 69:21
**Jury** 40:14
**justification** 17:9
27:8 53:16
**justifications** 54:3
**justified** 14:1 28:15
33:12

_____ K _____
**keep** 65:5
**KEKER** 3:4
**Kennedy** 3:17 4:20
4:20 5:14,24 6:17
9:21,22 11:23
14:14,16 19:19,20
20:16,18 21:14,16
23:8,17,22 24:10
24:14 25:16,22
28:22,25 31:21
41:16 47:23 48:9
49:2,5 51:19 54:1
56:18 60:12 61:3
61:14,23 71:8

76:13 77:2 78:4,14
78:18 79:9 80:14
82:5
**Kennedy's** 14:4
50:18 80:18
**kept** 35:7,15
**key** 64:24 69:18
77:25
**Kidman** 3:11 4:9,9
57:12,15,24 58:7
58:10,14,18,23
59:3 61:6,17 62:8
62:12,20 66:1,25
75:10 76:24
**kind** 42:22
**kinds** 12:19
**know** 10:14,21 11:25
12:3 19:23 30:7,8
31:1 33:6 36:17,17
40:15 47:16 49:8
57:4 61:19 66:8
67:4,23 69:16
70:18 77:21 79:1
79:19 81:18 82:3
82:18
**knowing** 11:24
**knowledge** 35:24
**knows** 42:5 70:19
**Kong** 15:16 16:23
17:5 23:21 24:1,22

_____ L _____
**language** 39:22
51:22
**large** 16:1
**largely** 67:17
**largest** 26:4
**Larian** 3:15 57:17
58:11 62:17 63:14
63:17 64:1,7,10,18
64:19,21,25 65:6
65:21 66:5,13,14
66:18 67:4,12,15
68:6,15 69:24
70:14 72:3,6,12,14
73:7,16,18 74:21
75:13,16,24 76:5,9
77:10,16,16
**Larian's** 63:1,8,20,23
64:12 65:10 66:13
66:10,12 67:3,19
68:11,12,17 69:9
69:10 75:11
**Larson** 16:12,25 17:3
17:11,15 24:21

29:25 30:1,2 80:3
**Larson's** 17:7 27:18
**late** 63:2
**latest** 73:22
**Lau** 26:2
**law** 3:6,12,18 27:15
41:18,21 43:16,24
43:24 44:8 45:22
65:20 66:22 74:1
**lawsuit** 45:8,9 59:1,5
64:1,24 65:4,16
66:5,7 67:4 68:14
69:12,18,18 71:1
**lawsuits** 51:25
**lawyer** 41:24,25
42:17 43:12
**lawyers** 32:14,16
48:14 74:23
**lawyer's** 42:13
**leadership** 14:3
**leaf** 48:1
**learned** 43:8 82:15
**leaving** 46:23
**led** 8:15
**left** 42:13 57:10,23
**legal** 35:5 40:19,21
41:1 44:2 50:25
**legitimate** 36:9
**letter** 5:4 11:12
16:18 21:9 24:11
26:13 34:20 53:9
57:22 60:2 78:15
78:19
**Let's** 4:4 5:10 29:3
**licensing** 59:6
**life** 48:13
**lifted** 20:22
**light** 51:5 55:2
**Likewise** 74:21
**limit** 70:5 72:21
75:18,20 76:11
**limitation** 64:16
**limitations** 73:9
**limited** 3:15 70:2
76:14 77:18,25
**limiting** 70:9 75:12
**lines** 36:7
**list** 10:3,7 51:24
58:12 62:18
**listed** 15:12,15 62:18
**listened** 41:19
**lists** 41:7 45:15
**literally** 37:3 72:5,10
72:18
**litigation** 15:14 28:4

34:22 50:5,7 79:20
**little** 31:10 42:21
46:10,10 47:12
**Littler** 32:11,14,16
**Littler's** 32:19
**LLP** 3:4,10,16
**loaded** 26:3
**local** 53:1
**locate** 63:22
**located** 64:5
**log** 15:1,12,16 16:5
16:10,14,17 17:2,8
17:10,13,17,19,24
18:5,11 19:7,10
20:6,6,8,20 21:5,6
21:11,20 22:18,22
23:10,14,15,20
24:17 25:5 26:11
27:5 29:14 30:11
30:18 33:16 69:7
**logged** 15:25 16:2
17:24 22:13 30:13
30:16
**logging** 14:25 26:4
**logs** 18:6,6,13,22
20:15,15 22:6,14
23:6 25:25 27:21
27:24
**long** 54:25 81:21
**longer** 7:4 18:23
31:22
**look** 18:22 20:3
22:24 26:7 40:5
46:8 49:21 50:15
**looked** 30:9
**looking** 10:12 42:10
43:10 49:9,13,19
49:21 50:14
**Los** 3:13 71:12
**lot** 7:15 43:16
**lunch** 82:24

_____ M _____
**M** 1:21 2:18
**machine** 83:8
**magnitude** 28:3
**main** 35:10 38:14
**maintained** 41:12
**making** 12:18 20:4
**manipulated** 36:4
**manipulation** 26:22
**manual** 46:5
**March** 15:23 16:3,8
**mark** 37:18
**marks** 35:3 36:16

38:22
**mark's** 36:13
**Martine** 3:5 4:11
**marvelous** 42:21
**Master** 81:8,25
**material** 23:9 42:6,9
53:9 75:25 76:7
**materials** 67:10 73:8
**math** 46:6
**Mattel** 1:7,10,11 2:7
2:10,11 3:8 4:6,7,8
4:9,10 5:11,12 6:10
9:10,13 10:3 11:9
11:12 12:6,24 14:8
18:2 19:2 21:2
22:20 25:19 28:7
28:13 29:4 33:19
34:8 45:7,8,13
46:11 51:3 52:9,11
54:23 62:16 70:12
70:12 71:15 73:5
73:14 80:18,25
82:15
**Mattel's** 6:4 10:9
14:24 15:4 21:2
29:17 33:11,15
34:12 44:17,20
48:14 57:15,16,24
58:20 59:4 67:13
69:24 70:1 71:13
71:25 76:8 78:10
**matter** 5:6 22:2 28:9
34:2 43:6 44:14
65:19 66:20,22
78:2
**matters** 47:24 72:24
**McCook** 42:19 43:5
**MEAGHER** 3:16
**mean** 26:20 32:6
61:1 62:9
**meaningful** 27:10
**means** 50:25
**meant** 21:13,14
**measure** 27:9
**mediator** 46:21 47:6
47:11,16
**meet** 4:24 17:21
20:25 21:9,21 26:9
46:24 49:8 52:6
**meeting** 46:21
**meet-and-confer**
14:5 30:6
**memo** 20:25 21:2
42:17 71:11,18
**memorialized** 21:23

SARNOFF COURT        EXHIBIT ___A___
PAGE ___89___        TECHNOLOGIES

**men** 31:24
**Mendelson** 32:11
**mentioned** 31:8
  38:15 39:16 74:1
**mere** 75:23 76:6
**merit** 6:12 8:13 9:17
**merits** 6:20
**met** 10:9 38:2 39:2
  41:13 59:15 65:12
  71:13,20
**Metals** 42:19
**Mexico** 69:25
**MGA** 1:11 2:11 3:15
  3:15,22 4:17,18,19
  4:20 6:6,14,24 7:1
  7:4,7,14,19,21,23
  8:1,5,7,16,19,25
  9:4,18 13:12,14,15
  13:23 14:8,11 16:4
  16:11,13 17:3,7,11
  17:21 23:13 24:16
  27:25 29:2,13,18
  29:20 30:4,6,17,24
  31:4,20 33:12,14
  34:17 35:1,7 36:8
  37:2,25 38:1,6,7,9
  38:11,14 39:2,12
  39:14,22 40:10,13
  40:17 41:12 43:24
  45:23 55:17 57:15
  57:19,25 58:4,19
  59:5,7,14 60:4 62:4
  64:19 66:11 68:2
  68:16 72:1,1,8,9,11
  72:15 73:1,16 76:4
  76:18,20 77:18,20
  77:25 78:8 81:16
**MGA's** 5:4 6:18
  13:11 20:24 38:4,4
  38:10,20 39:9
  44:22 47:21 59:9
  59:22 68:16
**Michael** 3:4 4:14
**mid** 17:25 18:1
**middle** 27:7
**million** 9:25 10:13
  22:16 49:9,10
  72:19,20
**millions** 72:5,16
**mind** 65:5
**mine** 11:21 46:17
**minimal** 45:12 46:3
**minimum** 67:8
**minute** 5:16,24

**minutes** 19:23 47:6
  47:10
**misappropriation**
  69:22 70:9 76:2,8
**miscellaneous** 9:8
**misinterpreting**
  73:6
**misplace** 46:15
**misplaced** 46:17
**misrepresentations**
  6:19 8:12 9:9 12:14
**missed** 25:2
**misstate** 35:20
**mistaken** 50:20
**mistakenly** 42:13
**mode** 53:1
**modest** 60:13
**modification** 16:19
**modify** 71:16
**modifying** 79:9
**moment** 44:19
**Monday** 56:5
**monetary** 6:7 14:7
  22:20 32:22 62:17
  79:7 80:21 81:7
  82:2
**money** 67:7,11 74:11
**month** 23:6 61:7
**months** 33:1,2 61:9
  61:10
**morning** 32:8,12
  72:19
**motion** 5:7,22 6:3,4
  6:7,12,20,22,23
  7:14 8:15,18,21
  9:10 11:17 12:24
  14:9,10,10,13,21,23
  14:24 15:3,4,21,21
  16:3,6,17 18:3 19:3
  19:4,7 20:7,12
  21:17,24 23:1
  24:16,18 25:22
  26:1 28:15,16,17
  29:3,6,9,17 30:1,24
  30:24 32:21 33:11
  33:13,24 34:2,10
  34:13,15,25 44:15
  44:17,20,22,25
  48:4,6,6 49:5 50:1
  50:9 51:15 52:2,7
  52:24 53:6,13,19
  55:13,24 57:10,15
  57:16,19,24 58:1,3
  58:8,10,14,16,19
  59:13,23 61:24

62:4,15,16,18,22
63:6,20 76:1 78:5,7
78:8,9,13,21 79:10
80:25 81:14,16
**motions** 4:23,24,25
  5:2,3,10,11,12
  18:17 54:1 55:6
  57:12,23 79:19
**move** 29:3 32:15
  55:5
**moving** 5:11 26:7
  28:19 45:24 49:16
  53:15,15,17
**multiple** 82:7

——————
            **N**
**name** 83:20
**narrowed** 52:6
**narrowly** 70:24
**necessarily** 48:12
**necessary** 14:10
  26:15 40:18,20
  59:13 60:9 79:22
**need** 12:1,25 14:4
  21:11 24:15 36:16
  40:25 56:7 57:3
  61:4 67:3 68:5
  74:13 75:16 76:10
  77:5
**needed** 4:25 5:2
  61:16
**needs** 61:18,19
**negotiations** 45:5
**neighborhood** 77:11
**neither** 83:16
**NEST** 3:4
**net** 73:19 74:2
**never** 18:24 36:15
  37:17 65:11,11
**new** 8:4 10:25 14:3
  27:20 40:6,23 48:1
  53:3,14 56:12 59:9
  72:21 79:11
**night** 11:2 48:2
**Ninth** 19:21 40:12
  41:21 66:23 74:1
**Nolan** 3:17 4:19,19
  25:8,9,12 53:25
  54:10 55:11,23
  56:3,8,21,24
**noncompliance** 14:1
  19:22 22:19
**nonprivileged** 33:14
**nonredacted** 6:15
  6:17

**nonsequitur** 42:4
**noon** 46:22 47:2,4
**notation** 23:13,16
**note** 54:15
**notice** 21:1 51:14
**notified** 34:18
**notwithstanding**
  27:4 53:1,21
**November** 5:1 10:8
  25:10 26:3 30:19
  32:4 63:7 71:12
**nub** 7:11
**number** 7:8 10:1
  11:14 28:2 39:11
  40:12 42:17 48:4
  49:22,23 51:4,5
  58:1,14,16 62:19
  62:20 64:8 67:21
  67:24,25 70:16
  71:2 79:17,19
**numbered** 69:5
**numbers** 24:11
  70:16,18 74:5

——————
            **O**
**oath** 67:5,9 77:10,15
**object** 26:16,16,16
**objecting** 26:14
**objection** 48:5
**objections** 29:21
  49:25
**obtain** 38:9 40:18,21
**obvious** 39:6
**obviously** 10:13
  48:18 60:9 79:18
**occasions** 37:19,20
**October** 9:1
**offer** 10:23 36:11
**offered** 37:3 72:13
**offers** 36:14
**office** 38:8,13 42:13
**officers** 72:2
**offices** 32:20
**oh** 11:21 21:10 25:15
  47:7 55:22 58:16
**okay** 4:13 6:3 13:22
  15:2 24:6,13,24
  25:6,13 27:13
  31:19 33:11 41:14
  44:12,19 46:13
  47:13,23 50:17
  51:18 55:11 57:10
  58:22 60:10 61:13
  61:22 62:15 65:25
  78:2 82:23

**old** 48:10
**OLIVER** 3:10
**omitted** 36:3
**once** 10:14 32:21
  81:25
**onerous** 22:10
**ones** 57:14
**one's** 20:13
**opening** 48:22
**opinions** 43:22
**opportunity** 53:19
  53:20 68:25
**opposed** 27:22 39:6
**opposition** 8:16,25
  9:1,2 17:10 20:25
  25:20 36:8 38:14
  39:22 41:15 55:15
  63:2,20 64:7 66:10
  75:8 78:20
**orally** 75:4
**orchestrated** 22:1
  22:25
**order** 5:13,16,18 6:5
  6:14 7:20,20,21,24
  8:3,16 9:14,25
  11:11 13:12,12,24
  14:4,15 15:8,22
  16:8,9,12,13,20,21
  17:1,3,7,11 18:3,10
  19:5,13 23:3 26:11
  26:17 27:3,4,18,19
  28:23 29:13,18,20
  30:3,12 31:8 33:13
  33:23,24 34:5
  44:21 46:1 48:17
  51:3 53:23 60:7,9
  62:3,7,14 63:12,12
  63:16 64:22 65:22
  67:13 68:9 78:6
  81:1 82:13,19
**ordered** 24:21 29:13
  60:5
**orders** 8:10 40:15
  66:24
**original** 25:20 48:17
  52:7 83:13
**originally** 27:23
  52:20 67:6
**ought** 73:16 79:7
**outweigh** 51:13
**overlaps** 29:9
**owns** 67:25
**O'Melveny** 23:9

——————
            **P**

page 3:4 4:14,14 20:24 26:7 42:20 43:5 48:21 53:8 54:17 55:20 57:18 60:23 82:12,18,21 82:23
pages 9:25 10:13,15 22:16 60:13 72:5 72:16,19
paid 14:11
paper 48:22 53:13
papers 25:20 26:7 28:19 32:18 45:24 63:16 71:4
paragraph 32:10 40:5,5 49:12 51:21
paragraphs 32:2 49:3
paralegal 38:6
Park 3:18 4:18,18 23:23 24:25 25:11 32:5,12
part 33:24 44:22,22 63:7 78:6,6
parte 16:17,25
particular 12:25 27:15 29:8 33:1 35:13 52:14 69:10
particularly 9:12 38:17 45:17 46:2 50:2 54:16
parties 4:22 77:23 78:24 79:22 81:21
party 5:11 20:4 64:1 69:2 83:18
pass 37:5
passed 36:1,10,12,12 37:10
patent 35:13 39:20 41:24
pay 33:22
paying 12:20
people 11:24 24:14 32:6,16 45:7 46:20 46:23 47:14 49:9 50:4,23 51:1 61:4 61:15 68:17 79:6 79:21 80:8
perceive 81:1
period 54:19 69:13 69:17,20,21,23
periodically 68:18
periods 69:11,11 70:2,4
peripheral 60:17

Peripherals 41:17
permission 5:22 14:22 34:9 44:17 58:18
permit 47:11 52:16
permitted 64:3
person 74:5
personal 63:23,24 64:5 67:22 72:14 75:11,12,15,19 76:12,15 82:16
personally 67:6
personnel 51:2
perspective 45:1
persuade 45:19,24
pertain 5:11
pertained 15:16
pertains 87:3
phone 11:19,20 48:12
pick 65:1
picked 76:21
picks 72:3
piecemeal 82:8
place 20:23 21:22 26:9 69:3 74:4 83:5
places 42:15
Plaintiff 1:5 2:5 3:3
plan 51:23
planned 22:1
plausible 9:12
plays 74:5
pleading 53:4
pleadings 53:22 68:14
pleas 20:4
please 4:5,5 11:14 47:11
pleased 75:5
pleasure 59:22
plowed 74:11
Plus 74:1
point 7:11 8:12 9:24 10:10 18:2 21:18 22:6,21 27:11 31:16 32:9,23 33:5 37:7,25 40:4 41:4 42:4 50:19 59:11 64:23 70:18 71:13
pointed 36:20 37:16 59:18 62:25
pointing 42:22
points 13:8 35:10 67:12 75:10 76:25
portion 12:22

position 10:11 12:16 44:6 47:22 54:20 54:24 59:21 60:4 64:12 65:11,13 66:18 67:15,19 68:7 70:19 71:16 72:8
possession 64:3 72:7,22 75:24 76:7
possible 49:14 55:15
postulated 27:20
postulating 36:21
post-dated 13:18
potential 49:10
power 33:3
practical 49:11 50:3 50:14
practice 40:23
preceded 52:7
preclusion 81:14,15
predates 65:13
prejudice 18:20 22:4 22:10
prejudiced 22:22 31:14 61:12
preliminary 66:19
preparation 32:25
prepare 14:14 28:22 34:5 62:7,14
prepared 5:2 13:3 71:10 73:20 76:23
preparing 37:14
prerogative 33:3
present 3:21 79:2
presents 34:25 45:1 45:2
presumably 65:13 70:17
presumptively 42:1
presumptuous 41:19
pretty 20:13 21:24 24:24 73:12
prevail 11:18
prevent 65:21
previous 34:1
previously 30:21 32:3 34:1 76:18
primarily 66:10
primary 34:25
principles 43:23
print 74:18
printing 77:4
prior 7:6 9:24 11:6 12:16,20 21:21

23:13 25:18 27:19 33:22 43:6 47:25 67:4,4 71:9 83:6
privacy 65:24
private 42:7,9
privilege 7:23 9:5 14:25 15:8,10,12 16:1,5,10,14,17 17:2,8,10,13,17,18 17:23 18:5,6,10,13 18:22 19:7,10,16 20:5,6,8,11,20 21:5 21:6,11 22:11,18 23:6,10,14,20 24:17 25:25 26:11 27:1,12,21,24 28:7 29:21 30:18 33:16 33:18,25 34:18,21 40:20 42:2 44:10 65:20 66:20 69:3
privileged 11:5,16 18:6,14 22:6,14 25:19 29:15 39:12 39:15 42:24 43:4 65:19 69:6
privileges 73:11
probably 7:12 32:17 70:21,22
problem 9:16 13:10 13:10,20 18:24 61:6 64:16 71:25
problematic 75:13
problems 11:5
procedures 5:6
proceed 5:19 6:8 15:19 25:24 29:4 29:23 31:20 34:8 34:23 44:24 62:19
proceeding 29:25
proceedings 31:16 83:4,6,8,14
process 4:25 19:2 26:24 39:21,25 59:24
Proctor 3:12 4:10,10 5:20,21 6:9,10 10:24 13:7 14:18 34:9,24 41:19 43:20 44:11,16,25 46:18 47:18 50:18 52:15,20 56:6,9,14 57:5
Proctor's 26:8 32:1
produce 6:6,15,17 6:25,25 7:2,4,6,21

7:24 9:18 17:4 24:17 25:18 27:5 29:13,19 30:11 33:14 57:16,17,25 58:4,11,19 59:8,14 59:15,16 60:5 62:4 63:8,15,17,19,22 64:2,14 65:2,3,7 66:24 71:15 72:11 72:13 73:21 74:18
produced 7:8,16,17 9:3,4,25 11:10 12:6 13:13,14 16:10,16 22:16 23:13,20 28:12 30:13,16,17 30:22 32:3,20 34:17,19 35:9 41:3 41:6 59:18,24 60:14 61:10 62:2 63:11 65:10 72:5 72:15 75:17,22 76:4,11,19
producing 8:5 21:7 68:8 76:6
production 8:5,18 8:22 12:2 13:18 15:4,11,17 21:4,20 22:15 24:21 27:20 28:3 29:6 31:4 34:21 44:23 60:1,3 60:3,6,8 62:16 63:13 66:21 67:2 73:4 75:21 76:16 76:20
productions 60:1
products 58:25 59:6
proffered 38:14
profits 59:5
project 8:10
promised 9:10 59:14 61:9,11
pronouncements 12:19
proper 10:22 45:25 54:5
properly 10:7 12:9
proposal 12:12 70:5 75:15,20 79:11
propose 10:16 78:23 79:4
proposed 81:1
proposing 11:13
prosecuting 36:1 39:5
protected 42:1

SARNOFF COURT | EXHIBIT _4_ PAGE _91_ :CHNOLOGIES

protective 65:22
68:8
protocol 69:3
protracted 20:22
prove 34:13 40:17
proven 35:1
provide 16:4 17:8,17
19:10,10 39:4
provided 10:6 16:14
16:17 17:14,25
18:7,11,14 26:1
27:8 35:2 36:23
37:1,4 47:20
provides 40:8
providing 17:10 41:1
proving 40:10 43:25
provision 35:11,13
37:23 38:2
provisions 19:13
PTO 35:17,18,20
37:5,20 39:7,19
pull 15:2
punitive 73:18 74:3
purpose 35:5 37:23
42:8 44:2
purposes 36:4 74:2
pursuant 60:14
push 55:25
put 53:22 69:6 77:12
82:21
puts 67:7
P's 71:11
p.m 2:17 4:2

**Q**

question 10:2 22:7
31:23 34:25 35:18
42:10 44:7 45:3
50:12 53:14
questionnaire 45:7
questionnaires 43:2
questions 13:4 71:5
75:5
quicker 12:2
quickly 12:13 47:8
Quinn 3:10,10 4:7,7
5:20 11:21 14:22
15:6,18,20 19:18
23:25 24:4,7 25:1,4
25:14,25 28:18
29:5,12,24 31:22
32:23 33:9,10 34:5
34:6
quite 16:9 51:22
quote 8:8,9,17,22

9:3,3 16:10 38:8,18
40:16,18 52:8
63:23 75:14

**R**

Railroad 34:3
raise 49:18
raised 26:19
raising 15:24 54:2,17
range 20:16 22:17
Raoul 3:17 4:20
rapid 54:19
read 27:14 57:23
72:10 78:11 80:9
reads 32:4 52:8
real 6:24 48:13
realize 47:25
really 6:11 7:11
10:20 18:8 35:10
36:11 37:22 47:7
49:16 56:6 60:16
61:16 74:4 78:25
reason 11:18 28:21
31:3 35:8 39:6,7
59:13 72:21 77:9
77:17
reasonable 14:6
17:17 35:6
reasonably 35:14
44:1
reasons 34:1 36:9
37:13 38:7 39:16
53:9 70:8
recall 15:20 20:19
72:25
recast 53:19
recasted 55:13
received 4:22 5:8
34:20 63:10 66:7
67:6,17 68:2
recommendation
81:9 82:1
recommendations
81:4 82:7
reconsideration
11:17 30:1 44:18
44:21 48:7 49:6
52:2,14,21,25 53:2
53:19 55:14,24
record 19:8 21:19
23:5,9 25:7 28:23
29:1,17 34:12
37:15 41:8 52:25
75:4 83:7,10
records 50:24 51:4

69:9,10 70:2,6,9,24
74:21
recover 68:23
redact 13:19 70:14
70:20
redacted 7:2,4 10:2
10:7,20,21 11:2,15
12:9
redaction 7:25 18:16
70:22
redactions 5:23 7:22
9:4 10:5 11:11
13:15,17 49:10
redo 76:16
refer 73:2 77:19
referenced 45:25
referred 82:13
reflect 29:2 45:5
refused 71:15
refute 12:17
regard 44:7 73:24
regarding 4:23 5:9
13:25 23:20 38:21
42:23 53:3 58:5,24
64:10 75:11 78:10
81:19
regardless 13:1 41:4
regards 71:24
registration 38:9
rejected 40:2,3
79:13
rejecting 16:21
relate 24:1 64:9,15
65:8 70:6,15 73:2
77:19,21
related 34:16
relates 68:11 70:20
relating 29:6 50:22
52:8 58:25 64:11
66:3
relative 83:17
relevance 45:13
46:3
relevancy 53:5,21
relevant 29:14 38:17
49:23 50:13 51:10
51:11 53:10,10
54:17 59:4,7 62:1,5
62:9 63:14 65:3,18
66:4,15 68:20,24
70:11,25 74:23
77:25 79:22
relied 45:23
relief 16:22 17:2,5
46:12

relying 43:9,10
remain 42:1,9
remaining 8:17
remains 38:16
remedy 8:3
repeat 75:2
repeated 6:18 20:4
repeating 10:18
20:10
replay 31:7
reply 13:6 21:2
25:14,16 55:17
56:21 57:1 63:1,16
75:9
report 4:22,25 81:4,9
82:1
Reported 1:21
Reporter 2:18 83:2
reports 59:20 61:8
82:7
represented 9:6
30:10 77:15
reproduce 75:16,21
76:10
reproduced 9:5
reproducing 72:18
reproduction 40:9
request 14:23 16:21
19:11 50:10 52:5
52:14 58:23 60:14
62:10 63:4 65:17
67:13 69:9 73:1,7
77:18,24 78:15
79:8 80:18,20
81:19,20 82:4,12
82:14
requested 14:8 28:7
28:19 37:13 61:9
64:11 68:12 69:20
80:19 81:5 83:15
requesting 20:4
requests 15:11
28:14 33:15 45:20
45:25 48:3 49:2
58:5,6,21 61:25
62:5,21 63:9,15,21
70:23 71:3 72:1,6
72:10 75:22,23,25
76:2,9,20 78:22,23
79:16
require 16:6 35:22
46:5 50:14 51:2
required 16:4 39:8
42:6 64:14
requirement 16:14

17:13
requiring 19:6 26:11
31:9
resolution 41:5
resolved 4:24 5:2
8:17 80:13
resolving 78:7
resort 22:3
respect 5:6 14:24,25
16:13,22 17:2,5
19:17 27:16 64:6
70:8 77:1,8,16 78:8
80:18 81:5,15,16
82:2,8
respond 53:20 75:6
response 7:15 17:12
19:11 27:8 30:7
50:18 63:8 71:10
71:18
responses 45:16
56:4 62:9,11
responsive 15:10
30:8,12 32:13
33:15,17 58:4,20
63:18 64:2 77:4
restrict 74:22
restriction 63:24
result 23:1 27:19
65:2,8 70:21
resulted 15:23 73:5
return 43:21,23 74:3
returns 66:18,19,21
66:24 67:2,3,9,14
68:2,6 73:25 74:13
77:8,9,13 82:14
revenues 58:25
review 17:1 27:19
83:14
reviewed 69:5
revised 48:22 49:2
52:5,14
riddled 13:17
right 23:23 31:22
34:22 44:12,15
47:17 48:8 49:4
53:25 56:16 59:2
61:20 66:25
rights 22:24
ring 42:21
ringing 11:19
RNBx 1:7 2:7
room 48:12 80:8
82:25
roughly 46:5
routinely 68:17

royalty 67:18
rule 12:21 19:21,25
  33:21 48:6 50:3
  54:20 66:13 79:18
ruled 29:14
rules 19:3 26:23
  48:19 53:1
ruling 71:24
rulings 54:9
run 80:4
running 22:3 54:15
  55:8 59:19

_____ S _____
S 3:18
sale 59:6 67:11,17
sales 58:25
San 1:15 2:15 3:7,19
  4:1
sanction 27:10
sanctions 6:7 9:19
  12:20 14:7,11
  22:20 28:19,21
  29:22 31:17 32:22
  33:19,21 62:18
  78:23,24 80:19,21
  80:21 81:2,3,4,7,8
  81:15 82:3,9
sandwich 82:25
Sansome 3:6
Santa 34:3
satisfied 28:10
saying 20:5 27:5
  30:25 48:15 53:16
  81:7,11
says 8:7,7 21:10
  32:10 38:23 50:4
  66:14
schedule 55:4,13
  79:24 80:2
scheduled 4:23
scheduling 82:18
scope 28:13 44:8
  73:15
Scott 3:11 4:9
scrambled 23:9
scrambling 19:24
scratch 12:2
search 46:6 75:12,18
  76:11
second 6:18 8:12
  37:7,25 49:7 58:5
  58:20
secret 76:2
secrets 69:23 70:1,9

76:8
secure 21:19
see 14:3 52:19,19
  73:22
seek 14:10 17:1
  34:21 46:12 52:20
  59:5 61:25 72:6
  77:6
seeking 15:8 16:19
  33:24 35:5 44:2
  52:13 59:11 61:1
  66:6 78:16
seeks 58:24
seen 7:12 37:11 81:1
selected 40:1
semi-deaf-now
  20:12
senior 38:6
sense 36:22
sent 8:20 16:19 21:9
sentence 76:14
separate 59:25
  71:11,18
September 8:23
  17:25 18:1 23:7,24
  23:25 24:7,23,25
  25:1,5 27:7 44:21
  59:15 61:10 65:12
  65:14
serious 28:9
served 24:19 63:3
  76:19 82:15,25
session 30:6
sessions 52:6
set 15:11 21:1 51:6
  58:5,20 67:17 75:2
  83:5
sets 48:22
seven 60:16
SGL 1:6 2:6
shares 64:22
sheet 41:6,9,10,11
  43:1
short 24:11 32:19
  49:19,21
shorted 73:5
shorthand 2:18 83:1
  83:8
show 5:1 35:7 36:25
showing 38:2 73:15
  74:19
shown 12:11 37:20
  38:1
shows 18:8
shutting 11:22

side 41:20 71:14
sides 12:10 42:19
  53:14 59:11
signature 14:17
significant 20:2
  31:25 42:19
signs 67:9
simpler 43:7
simply 8:23 18:20,23
  19:2 35:14 36:2
  41:6 51:10,15,16
  59:21 70:7 78:16
single 9:3,6
situation 8:3 26:6,18
  35:12 36:5 70:13
six 18:13 21:3,8 61:9
sizable 10:6
SKADDEN 3:16
SLATE 3:16
small 21:25
soliciting 69:24
solution 50:14
somebody 22:8
  42:13 50:15
somewhat 39:9
sophisticated 80:8
sorry 11:19,21 21:16
sort 64:25 75:20
sought 33:19 45:20
  72:25 73:15 81:3
  81:15
sounding 41:18
sounds 41:20
sources 42:12 66:9
  77:22
speak 25:17,21
  32:17
speaking 38:9
speaks 50:5
Special 81:24
specific 11:14 19:12
  22:5,21 32:24 35:3
  35:4 38:23 39:18
  62:23 72:23 75:22
  81:2
specifically 7:3 15:7
  26:19 43:25 64:9
  66:2,17
speed 21:25
spends 32:2
split 39:10 43:22
  44:8
start 5:22 47:1,3
started 26:2 61:16
starting 42:20 53:6

59:11
state 52:25 79:19
  83:2
stated 17:21 34:1
statement 35:22
  38:17,24 71:12,18
  73:19,23
statements 67:18
STATES 1:1 2:1
stating 35:23
stay 16:19,21 20:22
  20:22
steal 70:1
stipulation 47:19
storage 74:16
straightforward
  45:1,2,3
Street 3:6,13
subject 18:15,16
  29:24 72:7,12,20
submission 44:14
  50:11 52:24 53:7
  75:1
submit 8:9 12:19
  13:3 19:8,15 21:24
  22:25 24:11 46:11
  63:5 67:14 71:19
  73:14 74:8 76:23
  78:15
submitted 5:1 7:14
  7:15 10:4 15:13
  23:5 24:19,23
  25:17 27:25 43:18
  53:3 56:13 78:3
submitting 40:8,25
subpoena 82:15
subscribed 83:20
subsequent 21:11
  22:15 30:5
substantial 14:2
substituted 71:9
substituting 10:3
sufficient 74:20
suggest 42:4 51:8
  56:2 68:23
suggested 63:21
suggestion 12:18
  54:12 74:14,24
suing 73:17
Suite 2:15
summary 68:3
supplemental 7:13
  8:7 10:24 15:15
  18:5,6 20:15 23:5
  23:14,20 24:3,17

24:23 25:5 32:1
  51:7 52:16 56:4
supply 11:3
supporting 37:8
suppose 25:15
supposed 19:25
  46:24 47:3
Supreme 40:16
  43:24
sure 6:1,3 12:9 19:24
  23:8 37:11 47:15
  49:1 74:9 76:17
  81:13
Surely 12:9
surprise 26:12
swept 76:22
sworn 83:7
system 31:14

_____ T _____
table 41:20 51:9
  81:17
tactical 36:4
tailored 70:24
take 6:1 9:10 10:22
  44:14 52:24 53:7
  54:23,25
taken 22:7 31:22
  50:10 51:9 52:9
  61:24 66:18 81:17
  83:4
takes 19:6 26:7
talk 21:5 66:17 77:23
  79:25
talked 32:13
talking 20:10 46:4
  48:24 51:1 61:20
talks 39:23,24
target 53:15,15,17
taught 28:5
tax 66:17,19,21,24
  67:2,3,8,14 68:2,6
  73:25 74:3,13 77:8
  77:9,13 82:14
technical 22:19 42:1
tee'd 76:1
telephone 69:9,10
  69:15 70:2,6,16,24
  74:21
telephonic 55:7
tell 12:7 31:11,17
  43:17 80:5
term 60:13
terminating 78:22
  78:24 81:2

SARNOFF COURT          EXHIBIT ___A___          CHNOLOGIES
                       PAGE ___93___

terms 12:4 29:8
32:22,25 50:22
51:14 52:10
testified 38:6 67:5
77:10
testifying 38:10 83:7
testimony 37:17
67:10 68:16,22
83:11
Thank 4:21 6:2,9
9:20,22 13:5,22
19:18 25:3,13,24
27:13 31:19 33:8
34:7,24 43:19
44:12,25 46:13
50:17 51:18 54:10
60:10 61:22,23
62:12 65:25 71:7,8
76:23 78:4 81:23
82:5,10
theme 31:7
theoretical 36:21
37:8 39:3
thing 14:19 43:1
46:14 53:23 54:8
56:12 80:24
things 10:18 20:10
22:21 32:5 72:22
73:12 74:23 75:21
80:1
think 9:17,17 12:11
14:4 16:5 18:9 20:2
21:12 22:23 23:12
23:25 24:24,25
25:1 26:15 27:1
28:12 30:18 31:25
34:12 35:10 39:2
39:11,14 41:6 44:3
46:6,16 47:7,9
48:11,23 49:24
52:23 53:10,12,13
53:18,22 54:3,5,17
55:14 56:3,7 57:5,7
57:10 59:25 61:4
61:20 66:11 67:1,2
70:21 71:3 72:17
72:18,20 75:7
77:13 78:20 79:21
80:5,8,20 81:10
third 49:7 50:21
51:21 69:2 77:23
THOMAS 3:17
thought 5:21 11:19
60:24 78:19
thousand 27:10

thousands 17:22
threat 74:12
three 5:15 8:1 9:15
12:11 33:1 48:24
49:3 56:9 61:10
72:3
threshold 62:24
thrown 9:9
time 6:1 12:10 14:9
15:25 16:2 17:17
17:21 18:7,7,21,23
22:6 23:24 30:24
31:2 47:12 48:16
54:15,19,25 55:8,9
57:3,4 69:11,11,13
69:17,20,21,23
70:3,4,18 73:1,7
76:21,22 78:17,21
79:25 80:4,23 83:5
timeline 29:9
timely 15:1 17:10
19:9,10
times 8:2 9:15 31:8
timing 19:12 36:18
69:19
today 12:23 56:6
57:11 59:19
told 7:5 8:16,20 9:10
17:24 18:14 21:2
22:4,13 24:2 27:4,6
30:19,21 32:14
49:8 57:21 63:11
76:15
Tom 4:19
topic 33:13
topics 60:15,17
61:18 71:14
total 20:14
totally 74:20
touching 54:2
town 21:25
trade 69:23 70:1,9
76:2,8
trademark 35:16,19
36:1 38:5,8,9,13,20
39:5 41:25
trail 5:8
transactions 67:20
68:1
transcribed 83:9
transcript 83:10,13
83:15
transmitting 42:18
trap 21:25
tree 71:22

trial 32:25
tries 36:8
Trinidad 3:5 4:15,15
true 9:11 83:10
trusts 67:23
try 49:13 56:15,21
75:5 79:25
trying 23:16 24:16
41:16 48:14 49:11
50:1 51:22 74:2
Tuesday 56:8,15
turn 48:1
turned 8:19
Turning 42:25
two 2:15 6:11 7:15
13:7 16:11 30:17
30:18 31:11 34:16
35:10 36:11 39:15
42:10,12,15 57:12
57:22,23 59:25
60:1 69:10 71:3
73:10
types 44:8 65:24

U

ugly 73:12
ultimately 19:5
43:13 80:5
unambiguous 18:10
19:5
uncompleted 43:3
61:17
unconscionable
45:22
undeniably 62:1
66:4
undenied 21:5
undersigned 83:1
understand 32:15
49:6 51:24 60:10
60:15 61:15 81:6
81:13
understandable
10:10
understanding
23:18 81:12
understated 74:6
undertake 46:12
underway 32:15
undisputed 7:18
15:25 18:9
unequivocal 7:20
unilateral 63:23
unilaterally 75:18
unit 58:25

UNITED 1:1 2:1
unknown 7:8
unprivileged 62:5
unquote 52:12 75:15
unreasonable 80:6
unredact 12:1
unredacted 6:6 7:1
7:7,9,17,18,22 8:6
8:23 9:5,19 11:3
12:4 13:25
untimely 19:12,14
27:25,25
upfront 79:15 80:7
urge 23:2
URQUHART 3:10
use 10:20 11:13
12:10 34:10,22
35:2,13,22 36:14
36:16 37:18 38:22
38:25
uses 39:22
utter 12:4
utterly 10:15
U.S 34:3

V

v 1:10,11 2:10,11
vacated 17:16
valuations 77:24
value 64:22
VAN 3:4
various 43:2,2 54:6
vein 48:5
verify 23:16
versa 72:12
versus 34:3 45:2
53:5 77:16
vice 72:12
view 8:10 41:23 53:2
violated 6:14 52:12
violation 8:2 9:13
virtually 67:5
visited 74:17
volume 16:1
volumes 50:6
vs 1:6 2:6

W

wait 59:21
waiting 46:20 62:1
waived 15:9 29:21
33:25
waiver 14:24 19:16
19:22 22:11 26:25
27:2,11 28:6,9,13

28:16,17
waiving 73:11
wall 80:9
want 10:20 47:5
54:8 66:17 73:9
81:13
wanted 46:22 76:25
wanting 72:21
wants 47:10 80:3
82:25
warrant 67:1
wasn't 23:1 24:8
63:3 74:9
waste 8:9 12:5 71:21
way 10:12 12:5
21:10 22:2 28:11
32:18 34:15 43:10
48:13 53:10 54:5
55:3,23 68:23 79:3
ways 11:16 22:24
43:16
website 37:21
Wednesday 55:15
55:16,20 56:9,10
week 7:14 18:2,4
60:18 61:1,2,2 78:7
weeks 16:11 18:13
30:17,18 31:11
59:9
went 10:6 12:5 42:3
71:12
weren't 20:24 59:21
We'll 25:22 54:3
we're 5:15 12:23
17:18,20 18:14
19:25 20:10 21:2
22:4,15 31:10,13
43:10 46:4,20,24
48:1,24 49:9 54:25
55:25 59:19,24
61:20 64:12 66:6,8
66:12,18 72:18
73:20,22 76:15
79:13 80:2,4,4
82:24
we've 11:8 12:11
18:18 19:9 22:13
22:14 31:17 39:10
55:5 61:11 62:25
63:15 64:11 69:20
71:3 75:13 77:10
77:19,22
whatsoever 52:10
74:7
wheat's 61:21

| | | | |
|---|---|---|---|
| **WHEROF** 83:19 | **Z** | **2,868** 25:4 | 30:5 |
| **wholesale** 28:6,13 | **zero** 21:18 22:9 | **20** 47:10 | **36,749** 60:13 |
| 70:10 | | **20th** 10:8 | **37(a)4** 33:21 |
| **wide** 43:22 | **$** | **200** 76:19 | **38th** 3:19 |
| **willfully** 6:14 7:23 | **$3,500** 14:10 33:20 | **200-page** 71:11 | |
| **willing** 74:25 | **$3.4** 49:9 | **2000** 16:3 34:14 | **4** |
| **Winter** 41:21 | **$500,000** 77:11 | 35:3 64:20,20 | **4** 50:16 |
| **wiped** 68:18 | **$600,000** 46:7 | 65:12,14 | **4th** 50:1 55:10 57:2 |
| **wisdom** 54:12 | | **2001** 69:14 | 57:8 60:21,23,25 |
| **wise** 54:3 | **0** | **2004** 69:21 | 78:12 |
| **wish** 5:13,19 25:17 | **04-9049** 1:6 2:6 | **2005** 15:13 20:20 | **4,000** 22:14 25:9 |
| 25:21 | **07** 24:18 28:1,2 | 21:5 | **400** 11:9 |
| **withdraw** 25:22 | | **2007** 1:16 2:17 4:1 | **408** 34:4 |
| **withdrawal** 46:15 | **1** | 6:5 13:12,25 15:22 | **415.391.5400** 3:7 |
| 51:5 52:18 | **1** 9:1 33:15 49:22 | 15:23 16:9,11 | **415.984.6400** 3:20 |
| **withdrawing** 48:5 | 51:4 69:13,14 | 29:18 33:13,23 | **43,000** 13:13 |
| **withdrawn** 37:11,15 | **1,000** 20:18 | 44:21 58:5 | **43,494** 13:13 |
| 38:15 45:18,21 | **1,138** 20:11 22:11 | **2008** 62:6,14 | **46** 37:19 58:6 62:6 |
| 53:4 81:17 | 23:15 | **21st** 16:20 30:14 | **49** 33:15 |
| **withdrew** 29:2 | **1:30** 57:8 | 56:24,24,25 | |
| **withheld** 15:5,9 | **10** 58:14,16 62:19 | **213.443.3000** 3:14 | **5** |
| 17:23 25:19 33:17 | **10th** 3:13 10:24 | **22nd** 16:24 | **5** 16:3 19:23 26:7 |
| 34:13 | 23:25 24:23 62:6 | **2200** 48:3 | 71:17 |
| **withhold** 64:4 65:21 | 62:13 | **23** 30:19 | **5th** 15:23 24:25 25:1 |
| **witness** 38:10 45:15 | **10:49** 2:16 4:2 | **24** 20:24 | 25:5 63:3 |
| 83:19 | **10602** 1:22 2:18 | **24th** 30:10 56:22 | **5,000** 22:17 50:16 |
| **witnesses** 29:8 | 83:25 | **25** 21:23 | **50** 33:16 |
| 57:20 78:10 83:6 | **11** 11:3 32:2 58:1 | **25th** 21:3 | **55** 63:9,15,21 71:15 |
| **wondering** 52:1 | 59:20 | **252** 42:20 | |
| 55:2 | **11th** 60:23,25 61:3 | **253** 43:5 | **6** |
| **words** 53:1 73:6 | 61:19 | **26** 63:3 | **6** 58:5 |
| **work** 19:2 60:16 | **1142** 34:4 | **26th** 32:4 | **6,000** 46:5 |
| **workable** 70:7 | **12** 10:25 32:10 44:21 | **26(b)** 45:3 | **60** 26:4 |
| **worked** 69:16 | **12:43** 2:17 4:2 | **27th** 57:1 | **62** 20:21 |
| **working** 57:22 61:15 | **14** 1:16 2:17 4:1 | **29th** 71:12,17 | |
| **works** 12:12 48:13 | **14th** 23:10,12,14 | **296** 42:16 | **7** |
| **worried** 55:8 | 24:18 32:1 | | **7** 40:5 |
| **worth** 73:19 74:2 | **15** 6:5 13:12,25 | **3** | **7th** 5:5 60:22 |
| **wouldn't** 26:15 | 15:22 16:8 29:18 | **3** 21:8,23 47:18,19 | **7-19** 53:2 |
| **wrestle** 48:4 | 33:13 47:6,10 | 49:12,12 | **710** 3:6 |
| **write** 81:9 | **15th** 8:15 16:20 17:3 | **3rd** 34:4 | **719** 48:6 |
| **writing** 8:1 9:14 | 25:11,12 29:12 | **3,800** 25:9 | **76864** 1:23 |
| **written** 75:1 | **1500** 2:15 | **3.4** 9:25 10:13 49:10 | |
| **wrong** 25:2 | **17th** 8:23 | **3.4-million-page** | **8** |
| **wrongful** 66:7 | **170** 10:15 | 13:18 | **865** 3:13 |
| **wrote** 11:12 78:19 | **18th** 56:18,20 | **3.7** 22:16 72:19,19 | **87** 71:14 |
| **W-2** 73:22 | **192** 42:19 | **30th** 5:1 | |
| | **1998** 69:13 | **30(b)(6)** 38:5,10 | **9** |
| **Y** | | 57:20 78:10 | **9th** 21:17 24:19 |
| **Yeah** 20:17 21:15 | **2** | **300,000** 12:7 | **90017** 3:13 |
| 24:4 34:11 52:22 | **2** 11:4 33:15 48:4 | **31** 30:3 33:23 82:25 | **94111-1704** 3:7 |
| **years** 74:10 | 49:23 51:5,15 58:6 | **31st** 14:12 16:11,15 | **94111-5974** 3:19 |
| **yesterday** 10:17 | 62:6 | 16:16 17:4,14 | |
| 11:11 46:16 53:3 | **2nd** 17:3 26:10 | 18:11 21:20 24:20 | |
| 56:13 82:14 | **2,000** 24:5,7 | 27:20,23 28:1,2 | |

SARNOFF COURT R          EXHIBIT    A          CHNOLOGIES
                                    PAGE      95