1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

| | |
|---|---|
| 11 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12 Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| 13 vs. | **DISCOVERY MATTER** |
| 14 MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| 15 Defendant. | REPLY MEMORANDUM OF MATTEL, INC. IN RESPONSE TO OPPOSITIONS |
| 16 | OF FARHAD LARIAN, STERN & GOLDBERG, KAYE SCHOLER AND |
| 17 AND CONSOLIDATED ACTIONS | MGA TO MOTIONS TO PRODUCE DOCUMENTS |
| 18 | |
| 19 | [Declaration of Michael T. Zeller, Supplemental Declarations of Jon D. Corey |
| 20 | and Juan Pablo Alban, and Consolidated Separate Statement Re Mattel, Inc.'s Motion |
| 21 | to Compel Farhad Larian to Produce Documents filed concurrently herewith] |
| 22 | |
| 23 | Hearing Date: January 10, 2008 Time: 9:30 a.m. Place: Telephonic |
| 24 | |
| 25 | **Phase 1** Discovery Cut-Off: January 28, 2008 |
| 26 | Pre-Trial Conference: May 5, 2008 Trial Date: May 27, 2008 |
| 27 | |
| 28 | |

07209/2340500.1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

I.    MGA AND THE THIRD PARTIES SEEK TO AVOID DISCOVERY
      BY POINTING FINGERS ............................................................................. 3

      A.    That Mattel Can and Has Sought Larian v. Larian Documents
            From The Parties Does Not Justify Quashing the Subpoenas ............... 3

      B.    Mattel Does Not Have Larian v. Larian Documents From MGA
            or Isaac Larian .................................................................................... 5

            1.    MGA Produced Only Four Larian v. Larian Documents ............. 5

            2.    Isaac Larian Has Yet to Produce Any Documents ...................... 6

      C.    The Claim That MGA Has All Documents Third Parties Have Is
            Incorrect ............................................................................................ 7

      D.    Third Parties Have Even Declined to Confirm That They Have
            Reviewed Their Files .......................................................................... 8

II.   MGA AND THE THIRD PARTIES CANNOT WITHHOLD BASED
      ON LARIAN V. LARIAN PROTECTIVE ORDERS ....................................... 9

      A.    A Protective Order Does Not, and Cannot, Prevent The Original
            Possessor of Documents from Producing Them .................................... 9

      B.    Many Responsive Documents Are Not Subject to the Protective
            Orders ................................................................................................ 10

      C.    The Reliance on the Protective Orders Is a Delay Tactic ..................... 11

III.  MGA'S AND THE THIRD PARTIES' BURDEN OBJECTIONS
      LACK MERIT .............................................................................................. 12

      A.    Any Alleged Burden Is Justified By The Stakes Here .......................... 12

      B.    Mattel Has Offered to Pay the Third Parties' Costs of Copying
            and Inspection .................................................................................... 13

      C.    Any Burden Claims Are Significantly Outweighed By the
            Importance of the Documents That Mattel Seeks ................................ 14

IV.   STERN & GOLDBERG CANNOT SHIELD RESPONSIVE
      DOCUMENTS BEHIND AN INAPPLICABLE ARIBTRAL
      PRIVILEGE ................................................................................................ 15

V.    FARHAD LARIAN'S CLAIM THAT ONLY THREE REQUESTS
      REMAIN AT ISSUE IS INCORRECT ......................................................... 17

-i-

VI.    EACH OF THE THIRD PARTIES MUST PRODUCE ADEQUATE
       PRIVILEGE LOGS.................................................................................20

VII.   THE THIRD PARTIES' CLAIMS THAT MATTEL FAILED TO
       COMPLY WITH THE LOCAL RULES AND MEET AND CONFER
       REQUIREMENTS ARE NOT TRUE.......................................................24

       A.    Mattel Satisfied Its Meet and Confer Requirements With Farhad
             Larian.............................................................................................24

       B.    Kaye Scholer's Claim That Mattel Filed Its Motion Prematurely
             Is Incorrect....................................................................................25

VIII.  KAYE SCHOLER'S OPPOSITION SHOULD BE REJECTED AS
       UNTIMELY..........................................................................................26

CONCLUSION................................................................................................27

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page</u>

3
<u>Cases</u>

4

<u>In re Bergeson,</u>
5    112 F.R.D. 692 (D. Mont. 1986) ............................................................................ 3

6
<u>Bliznik v. Int'l Harvester Co.,</u>
    87 F.R.D. 490 (N.D. Ill. 1980) ............................................................................ 16
7

<u>Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.,</u>
8    408 F.3d 1142 (9th Cir. 2005) ............................................................................ 22

9
<u>Clavo v. Zarrabian,</u>
    2003 WL. 24272641 (C.D. Cal. 2003) .............................................................. 23
10

<u>Covey Oil Co. v. Continental Oil Co.,</u>
11    340 F.2d 993 (10th Cir. 1965) .............................................................................. 3

12
<u>Fears v. Wal-Mart, Inc.,</u>
    2000 WL 1679418, at *2 (D. Kan. 2000) .......................................................... 12
13

<u>Gail v. New England Gas Co., Inc.,</u>
14    243 F.R.D. 28 (D. R.I. 2007) .............................................................................. 22

15
<u>In re Grand Jury Subpoenas,</u>
    318 F.3d 379 (2d Cir. 2003) ............................................................................... 23
16

<u>Hartford Fire Ins. Co. v. Garvey,</u>
17    109 F.R.D. 323 (N.D. Cal. 1985) ...................................................................... 16

18
<u>Hoeft v. MVL Group, Inc.,</u>
    343 F.3d 57 (2d Cir. 2003) ................................................................................. 15
19

<u>In re Imperial Corp. of Am.,</u>
20    174 F.R.D. 475 (S.D. Cal. 1997) ....................................................................... 22

21
<u>J&M Turner, Inc. v. Applied Bolting Tech. Prods.,</u>
    1997 U.S. Dist. LEXIS 4447 (E.D. Pa. 1997) ..................................................... 5
22

<u>Lectrolarm Custom Sys. v. Pelco Sales,</u>
23    212 F.R.D. 567 (E.D. Cal. 2002) ......................................................................... 4

24
<u>Marshall v. U.S. Postal Service,</u>
    88 F.R.D. 348 (D.D.C. 1980) ............................................................................ 16
25

<u>Martinez v. City of Fresno,</u>
26    2006 WL. 3762050 (E.D. Cal. 2006) ................................................................ 21

27
<u>McCarty v. Bankers Ins. Co., Inc.,</u>
    195 F.R.D. 39 (N.D. Fla. 1998) ........................................................................... 9
28

Moon v. SCP Pool Corp.,
   232 F.R.D. 633 (C.D. Cal. 2005) .................................................................... 4

Moore v. La Habra Relocations, Inc.,
   501 F. Supp. 2d 1278 (C.D. Cal. 2007).......................................................... 26

Nat'l Hockey League Players Ass'n v. Bettman,
   1994 WL. 38130 (S.D.N.Y. 1994) ................................................................. 15

O.R. Sec., Inc. v. Prof'l Planning Assoc., Inc.,
   857 F.2d 742 (11th Cir. 1988)....................................................................... 15

Plant Genetic Systems, N.V. v. Northrop King Co., Inc.,
   6 F. Supp. 2d 859 (E.D. Mo. 1998) ................................................................. 3

Rojas v. Superior Court,
   33 Cal. 4th 407 (2004)................................................................................... 16

SEC v. Dresser Indus., Inc.,
   453 F.Supp. 573 (D.D.C. 1978) .................................................................... 16

SEC v. Thrasher,
   1996 WL. 125661 (S.D.N.Y. 1996) ......................................................... 21, 22

T. McGann Plumbing, Inc. v. Chicago Journeyman Plumbers' Local 130, U.A.,
   2007 WL. 4039973 (N.D. Ill. Nov. 13, 2007)............................................... 16

U.S. v. American Optical Co.,
   39 F.R.D. 580 (N.D. Cal. 1966) .................................................................... 12

Walker v. Wal-Mart Stores, Inc.,
   2007 WL. 1031576 (D. Mont. April 2, 2007) ............................................... 12

Woods v. Saturn Distribution Corp.,
   78 F.3d 424 (9th Cir. 1996)........................................................................... 15

## **Statutes**

Fed R. Civ. Proc. 45 .................................................................................... 20, 22

Local Rule 7-9 ................................................................................................... 29

### **Preliminary Statement**

MGA, Farhad Larian, Stern & Goldberg and Kaye Scholer seek to deprive Mattel of documents related to the Larian v. Larian dispute -- documents that the Discovery Master has recognized are relevant to this litigation. They do not deny that they have the documents. Kaye Scholer admits that it possesses approximately 56 boxes of Larian v. Larian documents. Stern & Goldberg has identified several categories of documents it has. Mattel knows that Farhad Larian has at least 12-15 boxes of Larian v. Larian documents, including at least three to six boxes still unaccounted for after Farhad Larian's limited post-motion production.

These third parties assert that Mattel should obtain the documents from MGA or Isaac Larian instead of them. That is not a valid objection to producing plainly relevant discovery. Moreover, Mattel has sought responsive documents from MGA and Isaac Larian. MGA has produced only *four* documents. Isaac Larian has produced none. The shell game should stop, and the Court should order all of the involved parties and third parties to fully produce documents.

The third parties attempt to excuse their failure to comply with subpoenas by claiming that the documents are subject to protective orders. The law is clear that protective orders do not bar the person who originally possessed the documents from producing them. Mattel has served its requests on all parties to the protective orders in the Larian v. Larian litigations; therefore, all responsive documents should be produceable by at least one person, notwithstanding any protective order. Still, everyone involved here attempts to hide behind the protective orders.

Moreover, Mattel is aware of several important responsive documents that are not subject to the Larian v. Larian protective orders and which have not been produced. For example, Farhad Larian has a 2000 email in which Isaac Larian told him not to turn over documents to lawyers. It has not been produced. Stern & Goldberg refuses to produce the transcript of a January 23, 2003 meeting regarding

an appraisal of MGA.  Stern & Goldberg claims that the transcript is protected by work product, but supports its claim with nothing more than the assertion that it was obtained by lawyers.  Of course, a document does not become privileged simply because an attorney gets it.  And no party has produced the documents originally bates-stamped "MZ" (Morad Zarabi) or "ED" (Ernest Dutcher), which were produced to Farhad Larian and Isaac Larian in May and June 2004, before any protective orders were in place.

The third parties' burden objections lack merit.  Farhad Larian and Stern & Goldberg fail to offer any evidence of burden.  The burden Kaye Scholer (Isaac Larian's former attorneys) articulates pales in comparison to the stakes in this case.  Isaac Larian has claimed that MGA seeks to recover "billions" from Mattel on MGA's unfair competition claims.  The documents in the Larian v. Larian proceedings are central to this case.  That case was also a dispute regarding the time of the creation and concealment of Bratz.  Moreover, Mattel has offered to pay any copying and inspection costs.

The third parties should also be compelled to produce a document-by-document privilege log.  Kaye Scholer claims that preparing such a log would be unduly burdensome, but has failed to produce *any* form of log at all.  The minimal information Farhad Larian has provided regarding the documents he is withholding is inadequate based on the standard set forth in the cases he cites.  Stern & Goldberg's general claims of privilege are inadequate on their face.  For example, Stern & Goldberg claims that the financial records of MGA, Isaac Larian and Farhad Larian are privileged, but provides no explanation for that assertion.[1]

---

[1]  Each of the third parties make erroneous claims that Mattel failed to satisfy its meet and confer requirements.  In fact, Mattel has made every effort to obtain these documents without motion practice and repeatedly met and conferred.  It was MGA's and the third parties' gamesmanship that necessitated this Motion.  In fact, Kaye Scholer demonstrably violated its obligations.  Kaye Scholer served its opposition 10 days after the deadlines set forth in both the Stipulation for (footnote continued)

1   Mattel's motions should be granted.

2   <u>**Argument**</u>

3   **I.   MGA AND THE THIRD PARTIES SEEK TO AVOID DISCOVERY**

4   **BY POINTING FINGERS**

5   **A.   <u>That Mattel Can and Has Sought Larian v. Larian Documents</u>**

6   **<u>From The Parties Does Not Justify Quashing the Subpoenas</u>**

7   Farhad Larian, Kaye Scholer and Stern & Goldberg do not deny that

8   they possess documents relating to Farhad Larian's claim that Isaac Larian knew of,

9   but concealed, Bratz in 1999 and 2000.  MGA does not deny that either.  But each of

10   them asks the Discovery Master to deny Mattel these documents because it can

11   supposedly obtain them from someone else.  That argument is wrong, both factually

12   and legally.

13   Mattel is entitled to seek and obtain relevant documents from third

14   parties, whether the same or similar or related documents are in the possession of a

15   party.  <u>See</u> <u>Covey Oil Co. v. Continental Oil Co.</u>, 340 F.2d 993, 998 (10th Cir.

16   1965) ("a person may not avoid a subpoena by saying that the evidence sought from

17   him is obtainable from another."); <u>see also</u> <u>Plant Genetic Systems, N.V. v. Northrop</u>

18   <u>King Co., Inc.</u>, 6 F. Supp. 2d 859, 861-62 (E.D. Mo. 1998) (third party subpoena

19   proper where information sought pertained to a central issue in the underlying claim,

20   it was not burdensome in light of plaintiff's diligent efforts to obtain the information

21   from defendant, and the non-party had signed protective order prohibiting disclosed

22   information from being seen by plaintiff's counsel or nonparty's competitors); <u>In re</u>

23   <u>Bergeson</u>, 112 F.R.D. 692, 695 (D. Mont. 1986) (conclusory assertions that

24   documents sought are available from others more economically "does not constitute

25   a showing of unreasonableness or oppressiveness.").

26

27   Appointment of a Discovery Master and the <u>Local Rules</u>, so the Discovery Master

28   should not consider it.

07209/2340500.1

-3-

1    In addition, Mattel has tried to get Larian v. Larian documents from

2  parties and elsewhere.  However, other than public filings, four documents from

3  MGA and an incomplete production from Farhad Larian, all Mattel has received --

4  from parties and third parties -- is a chorus of "subpoena abuse."  The Discovery

5  Master has already ruled that documents related to the Larian v. Larian cases are

6  relevant.  Mattel should not be denied them because MGA refuses to comply with a

7  Court Order and third parties claim that it is someone else's obligation to produce

8  them.

9    The need for full and complete third party discovery is particularly

10  acute in this case.  As shown in Mattel's concurrently filed opposition to MGA's

11  motion to quash subpoenas, Veronica Marlow, a third-party witness who long

12  worked directly with Bryant and MGA, testified just this past Friday that she knew

13  of at least three Mattel employees who *for years* worked on Bratz *while they were*

14  *employed by Mattel*.  Neither MGA nor Bryant had disclosed this information,

15  despite repeated Court Orders and despite the fact that at least one of these

16  individuals was a co-worker of Bryant's at Mattel.  To the contrary, both Bryant and

17  MGA gave flat denials under oath that there was any other Mattel employees

18  knowingly involved.[2]  Nor is this an isolated incident.  As detailed further in

19

20    [2]  MGA's cited cases holding that third party discovery should be limited to
documents that cannot be obtained from the parties thus miss the point and are

21  distinguishable.  In Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005)

22  the court held that "plaintiffs have not shown they have attempted to obtain these
documents from defendant, the Court finds that, at this time, requiring nonparty

23  KSA to produce these documents is an undue burden on nonparty KSA."  Here,

24  Mattel has made every effort to obtain the documents from MGA and Isaac Larian.
In Lectrolarm Custom Sys. v. Pelco Sales, 212 F.R.D. 567, 573 (E.D. Cal. 2002),

25  the court granted a protective order because the subpoena at issue requested

26  documents that were not relevant, but noted that the protective order would be lifted
if plaintiff "provide[d] the Court with a showing that there is specific, relevant

27  information in [the third party's] possession."  Here, the documents Mattel seeks are

28  highly relevant, and Mattel has identified specific information in the third parties'
(footnote continued)

-4-

1 Mattel's concurrently filed reply, on other occasions MGA only came clean and

2 produced additional documents -- including compelled documents -- after they were

3 disclosed by third parties pursuant to subpoena.

**B.** **Mattel Does Not Have Larian v. Larian Documents From MGA or Isaac Larian**

**1.** **MGA Produced Only Four Larian v. Larian Documents**

7 MGA argues that Mattel's subpoenas are improper because they are

8 duplicative of document requests served on MGA and Isaac Larian.[3] It is ironic that

9 MGA would make this argument because it has produced only *four* documents from

10 the Larian v. Larian disputes. This, despite the Discovery Master's May 15, 2007

11 Order requiring MGA to produce the documents.[4] Mattel has been forced to file a

12 motion to enforce the Discovery Master's May 15 Order as well because of MGA's

13 non-compliance.[5]

14 Mattel knows that MGA has a substantial number of responsive

15 documents in its possession that it refuses to produce. Mattel has obtained an index

16 of boxes of documents kept by File Keepers, LLC, MGA's offsite storage vendor.

17 That index includes four boxes titled "Larian vs. Larian Lit. Files" and one box titled

18

---

19 possession. In J&M Turner, Inc. v. Applied Bolting Tech. Prods., 1997 U.S. Dist.

20 LEXIS 4447, at *3 (E.D. Pa. 1997), a motion to quash was granted because the subpoenaing party had already obtained the documents from a party. Here, Mattel

21 has been deprived substantial relevant documents, and there are substantial reasons

22 to believe that Mattel will not receive the information it is entitled to unless everyone involved is compelled to produce.

23 [3] MGA's Opposition, at pp. 12-13.

24 [4] See Declaration of Juan Pablo Alban in Support of Mattel, Inc.'s Motions to

25 Compel Farhad Larian and Stern & Goldberg to Produce Documents, dated December 6, 2007 ("Dec. 6 Alban Dec."), ¶ 35.

26 [5] See Mattel, Inc.'s Notice of Motion and Motion to Enforce the May 15, 2007

27 Order of the Discovery Master Regarding Production of Larian v. Larian Documents and for Sanctions, dated December 21, 2007, attached as Exhibit 1 to the

28 concurrently filed Supplemental Declaration of Jon D. Corey ("Corey Dec.").

1   "Larian vs. Larian Litigation."[6]  MGA has declined to confirm that it has searched

2   those boxes for responsive documents.[7]  Given that it has at least five boxes of

3   Larian v. Larian material, but has only produced four documents, it is clear that

4   MGA continues to improperly withhold relevant Larian v. Larian information from

5   Mattel in clear violation of the May 15 Order.

6           **2.    Isaac Larian Has Yet to Produce Any Documents**

7           Mattel has also sought Larian v. Larian documents from Isaac Larian.

8   Even though he agreed to produce "all documents referring or relating to Bratz," he

9   has produced no documents concerning the cases with Farhad Larian that concerned

10  the timing of the creation of Bratz.[8]  Indeed, he has yet to produce a single page of

11  documents.  The critical disputes in the Larian v. Larian lawsuits and arbitrations

12  involved Farhad Larian's allegations that (a) in late 1999 or early 2000, Isaac Larian

13  and MGA "became aware" of a new product line called "Bratz," (b) starting in early

14  2000 and throughout 2000, Isaac Larian and MGA devised plans to develop and

15  distribute Bratz, and (c) Isaac Larian concealed the plans for Bratz from Farhad

16  Larian in order to keep the valuation of MGA artificially low.[9]  Farhad Larian

17  submitted a declaration in which he testified that the "principal allegation" of his

18  suit was that "Isaac tricked [him] into agreeing to arbitration, knowing that he had

19  already concealed, and would continue to conceal during the arbitration process, the

20  company's license for the Bratz product line and other material financial information

21

22  _____

23  [6]   Letter from Morgenthaler Lever to Corey, dated December 19, 2007, at pp.
    61-62, Corey Dec., Exh. 2.

24  [7]   Letter from Corey to Park, dated December 12, 2007, Corey Dec., Exh. 3;
    Corey Dec., ¶ 4.

25  [8]   Isaac Larian's Supplemental Responses to Mattel, Inc.'s First Set of Requests

26  for Documents and Things, dated September 25, 2007, at pp. 134-137, Corey Dec.,
    Exh. 5.

27  [9]   See Larian v. Larian Complaint, dated August 25, 2003, at ¶¶ 13-23, Dec. 6

28  Alban Dec., Exh. 1.

1   about the company."[10]  Morad Zarabi has also declared that the <u>Larian v. Larian</u>

2   disputes concerned Farhad Larian's allegation "that Isaac concealed from Farhad and

3   [Mr. Zarabi] certain facts pertaining to a product line of [MGA] called the 'Bratz

4   doll,' which allegedly was of great value and would have justified a substantially

5   higher price for Farhad's shares."[11]

6         Thus, virtually every document related to the <u>Larian v. Larian</u> cases is

7   also related to Bratz, whether it expressly refers to Bratz or not.  On December 31,

8   2007, the Discovery Master ordered that Isaac Larian produce such documents by

9   January 11, 2008.[12]  As of the date of this reply, Mattel has received no <u>Larian v.</u>

10  <u>Larian</u> documents from Isaac Larian.[13]

11      **C.**   **The Claim That MGA Has All Documents Third Parties Have Is**

12              **Incorrect**

13        MGA's argument that because "Mattel can and has requested all of the

14  documents at issue from the parties, including MGA and Isaac Larian . . . [t]here is

15  no legitimate justification from seeking the same documents" from third parties is

16  without merit.[14]  It ignores that the third parties have documents that MGA and Isaac

17  Larian may not have.

18        For example, it appears that Stern & Goldberg is the only entity in

19  possession of the transcript of a January 23, 2003 meeting in which Morad Zarabi

20  participated -- a meeting that occurred six months after Farhad Larian first

21  ——————————————

22  [10]   Declaration of Farhad "Fred" Larian, dated November 7, 2003, ¶ 11, attached as Exhibit 18 to the Declaration of Juan Pablo Alban in Support of Mattel, Inc.'s

23  Motion to Compel Kaye Scholer to Produce Documents, dated December 10, 2007 ("Dec. 10 Alban Dec.").

24  [11]   Declaration of Morad Zarabi, dated September 14, 2004, ¶ 6, Dec. 10 Alban

25  Dec., Exh. 15.

26  [12]   Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian, dated December 31, 2007, Corey Dec.,

27  Exh. 6.

    [13]   Corey Dec., ¶ 18.

28

1  complained to Mr. Zarabi about Isaac Larian's concealment of Bratz in 2000 and

2  twenty days before Ernest Dutcher released the appraisal that valued MGA "as of

3  December 2000."[15]  MGA's argument also ignores that there is substantial benefit in

4  ensuring that MGA and Larian do not withhold documents they do have and that

5  third party productions will confirm the completeness of those productions (or the

6  lack thereof).  As mentioned above, Mattel has obtained key evidence and

7  documents in this case solely because third parties produced it.

8       **D.**    **<u>Third Parties Have Even Declined to Confirm That They Have</u>**

9           **<u>Reviewed Their Files</u>**

10        The third parties here have even declined to confirm that they have

11  looked through the documents they have.  Kaye Scholer concedes that it has

12  approximately 56 boxes of <u>Larian v. Larian</u> documents.[16]  Even though Kaye

13  Scholer admits that each document in those boxes "arguably 'relates to Bratz,'"[17] it

14  has agreed to search through only its "1) pleading files; 2) discovery files (i.e.,

15  documents produced in the underlying litigations/arbitrations; and 3) arbitration

16  exhibit (i.e., documents identified and/or submitted as an exhibit during

17  arbitration)."[18]  Mattel should not be deprived of responsive documents that Kaye

18  Scholer admits "relate to Bratz."

19        Stern & Goldberg also refuses to confirm that it has searched its <u>Larian</u>

20  <u>v. Larian</u> files.  In fact, Stern & Goldberg states that it is withholding from

21  production "[i]nternal file memoranda which Stern & Goldberg *may have* prepared

22  in connection with its involvement in the representation of Morad Zarabi, such as, a

23

---

24     [14]  MGA's Opposition, at p. 10.

25     [15]  Letter from Goldberg to Alban, dated October 31, 2007, Dec. 6 Alban Dec., Exh. 65.

26     [16]  Kaye Scholer's Opposition, at p. 3.

27     [17]  Letter from Delgadillo to Alban, dated November 21, 2007, at p. 3, Dec. 10 Alban Dec., Exh. 7.

28     [18]  Kaye Scholer's Opposition, at p. 5.

1  memo to the file based on a conversation, such as it had with counsel for Mattel."[19]

2  It appears that Stern & Goldberg likewise has not reviewed its files because it can

3  only provide qualified representations of what its files "may" include.

4  **II.    MGA AND THE THIRD PARTIES CANNOT WITHHOLD BASED ON**

5  **LARIAN V. LARIAN PROTECTIVE ORDERS**

6  **A.    A Protective Order Does Not, and Cannot, Prevent The Original**

7  **Possessor of Documents from Producing Them**

8  MGA and the third parties also claim that protective orders in the

9  Larian v. Larian cases prevent them from producing the documents.  Kaye Scholer,

10  which has yet to produce a single document, relies almost entirely on that ground.

11  No protective order operates to prevent the person who possessed or controlled the

12  documents originally from producing them.  See, e.g., McCarty v. Bankers Ins. Co.,

13  Inc., 195 F.R.D. 39, 44 (N.D. Fla. 1998) (party possessing documents prior to

14  entering into a protective order cannot rely on the protective order to keep them

15  confidential).  None of the third parties argue otherwise.  Mattel subpoenaed

16  documents from all parties to the protective orders in the Larian v. Larian

17  proceedings -- MGA, Mr. Zarabi, Isaac Larian and Farhad Larian.  Therefore, the

18  documents should be produced by at least one of the parties originally possessing

19  them.

20  For example, Isaac Larian, and thus his counsel, Kaye Scholer,

21  originally possessed documents such as (i) those relating to his meeting with MGA's

22  Board of Directors on April 11, 2000, where he asked for a separate bonus of 4%

23  royalty on any new toy idea he personally developed in MGA's 2001 line; and (ii)

24  MGA financial models which include revenue stream projections for each item

25  MGA sold or was planning to sell, and which Isaac Larian generated "regularly."[20]

26

27  [19]   Stern & Goldberg Opposition, at p. 8 (emphasis added).

28  [20]   Letter from Howarth to Kaye Scholer, dated April 6, 2004, Dec. 10 Alban Dec., Exh. 16.

1   Although the protective orders cannot prevent Kaye Scholer from producing those

2   documents, it has not.

**B.    Many Responsive Documents Are Not Subject to the Protective**

**Orders**

5   Many documents that the third parties refuse to produce are not subject

6   to the protective orders at all.  For example, Mattel is aware that at least one of the

7   third parties possesses the following categories of highly relevant documents that

8   have yet to be produced:

> •    Documents originally bates-stamped "MZ" [Morad Zarabi] or "ED" [Ernest Dutcher] and produced to Farhad Larian and Isaac Larian in May and June 2004; even though no protective order was in effect at the time of the production, and a September 2004 protective order expressly encompasses only some of these documents, Farhad Larian and Kaye Scholer continue to withhold them.[21]

> •    Documents related to the April 11, 2000 meeting of MGA's Board of Directors, in which Isaac Larian convinced the Board to give him an unprecedented separate bonus of 4% royalty on any new toy idea Isaac Larian personally developed in MGA's 2001 line.[22]

> •    Transcript of a January 23, 2003 meeting in which Morad Zarabi participated—a meeting that occurred six months after Farhad Larian first complained to Mr. Zarabi about Isaac Larian's concealment of Bratz in 2000 and twenty days before Mr. Dutcher released the appraisal that valued MGA "as of December 2000" for the first time.[23]

> •    Transcript or tape of a recorded meeting on January 26, 2003, among Isaac and Farhad Larian, Mr. Zarabi and an accountant, a meeting which again addressed Farhad Larian's allegations against Isaac Larian.[24]

---

[21]   Stipulation and Protective Order, dated September 23, 2004, Dec. 6 Alban Dec., Exh. 46 at Exh. A.

[22]   Letter from Howarth to Kaye Scholer, dated April 6, 2004, Dec. 6 Alban Dec., Exh. 39.

[23]   Letter from Goldberg to Alban, dated October 31, 2007, Dec. 6 Alban Dec., Exh. 65.

[24]   Declaration of Farhad Larian, dated February 5, 2004, Dec. 6 Alban Dec., Exh. 53 at ¶ 24.

•     A letter from Isaac Larian to Mr. Zarabi dated August 29, 2003 apparently related to the 2003 appraisal valuing MGA as of December 31, 2000.[25]

•     Financial models of MGA, including from 2000, which included revenue stream projections for each item MGA sold or was planning to sell, and which Isaac Larian generated "regularly."[26]

•     An email in which Isaac Larian told Farhad Larian not to turn over documents to lawyers.[27]

The third parties (and, for that matter, MGA) do not, and cannot, explain why such documents have not been produced.

## C.   The Reliance on the Protective Orders Is a Delay Tactic

MGA and the third parties are using the issue of the protective orders as a delaying tactic. The Larian v. Larian arbitration protective order, for example, may be modified by agreement to allow the production of documents subject to the protective order in this action, which MGA has conceded affords *more* protection.[28] No arbitrator approval is required. Mattel asked for such an agreement by counter-signature on December 12, 2007.[29] It has not been forthcoming. To the extent there is any issue regarding the applicability of the Larian v. Larian protective orders, Mattel respectfully requests that, with respect to the Larian v. Larian arbitration protective order, the Discovery Master order that documents subject to that protective order may be produced subject to the protective order here without violating the former.

---

[25]   Letter from Stern to Alban, dated October 16, 2007, Dec. 6 Alban Dec., Exh. 12 at 1.

[26]   Letter. from Howarth to Kaye Scholer, dated April 6, 2004, Dec. 6 Alban Dec., Exh. 39.

[27]   Declaration of Michael T. Zeller, dated January 3, 2007 ("Zeller Dec."), ¶ 2.

[28]   Letter from Corey to Morgenthaler Lever and Allen, dated December 12, 2007, Corey Dec., Exh. 7.

[29]   Id.

MATTEL'S REPLY RE MOTIONS TO COMPEL LARIAN V. LARIAN DOCUMENTS

07209/2340500.1

## III.    MGA'S AND THE THIRD PARTIES' BURDEN OBJECTIONS LACK MERIT

### A.    Any Alleged Burden Is Justified By The Stakes Here

Farhad Larian, Stern & Goldberg and Kaye Scholer all object, in conclusory terms, that compliance with the subpoenas is burdensome.[30]  The claim that compliance with a subpoena "would necessitate the examination of large quantities of documents, requiring a great deal of time and expense . . . is not alone a sufficient reason for refusing discovery which is otherwise appropriate. . . ." U.S. v. American Optical Co., 39 F.R.D. 580, 586-87 (N.D. Cal. 1966).  Moreover, the burden alleged should be balanced against what is at issue in the case.  Isaac Larian has claimed that MGA is seeking "billions" from Mattel on MGA's unfair competition claims.[31]  It would be unfair to deprive Mattel of crucial relevant information about Bratz development and concealment because of vague, unsupported objections of burden.

Because they are the parties objecting on grounds of undue burden, the third parties had the burden of proof to adduce evidence supporting that objection.  Neither Stern & Goldberg nor Farhad Larian have come forward with any evidence supporting their burden objections.  The Discovery Master should accordingly overrule their objections on this ground alone.  See Walker v. Wal-Mart Stores, Inc., 2007 WL 1031576, at *5 (D. Mont. April 2, 2007) ("The responding party has the burden of demonstrating not only 'undue burden or expense,' but also that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.")  (quoting Fears v. Wal-Mart, Inc., 2000 WL 1679418, at *2 (D. Kan. 2000)).

---

[30]    MGA also makes burden objections in its opposition despite the fact that it lacks standing to do so because the alleged burden would necessarily be on the third parties, not on it.

[31]    Nightline Transcript, at p. 5, Corey Dec., Exh. 9.

1   Kaye Scholer is the only third party that has identified a specific burden

2   in terms of time and cost.  Kaye Scholer, though, are the former counsel for Isaac

3   Larian, a party in this case.  Kaye Scholer's and MGA's claims that non-parties are

4   subject to greater protections from allegedly burdensome discovery are less

5   persuasive, coming from the party's former attorneys.  This is especially true since

6   Mattel has requested the same information from Isaac Larian, a party, directly but he

7   has failed to produce any responsive documents.  Isaac Larian should not be

8   permitted to hide responsive documents by having them maintained in his former

9   attorneys' possession, only for his attorneys to claim that they should not be required

10  to produce the documents because they are third parties.

11  **B.**   **Mattel Has Offered to Pay the Third Parties' Costs of Copying and**

12  **Inspection**

13  The parties burden objections are also unpersuasive because Mattel has

14  offered to pay the costs of copying and inspection.  Mattel has offered to pay all

15  copying costs for Farhad Larian, Stern & Goldberg and Kaye Scholer.[32]  A number

16  of other third parties upon whom Mattel has served subpoenas in this case have

17  accepted Mattel's offer to pay copying costs and have produced documents

18  notwithstanding previous burden objections.[33]  Mattel has also offered to pay for

19  their inspection costs by offering to have its own paralegal inspect documents with

20  an express agreement of not waiving any privileges.[34]  The third parties have

21  summarily refused.  Stern & Goldberg's and Kaye Scholer's failure to accept, or

22  even address, Mattel's offers to reduce any alleged burden associated with the

23

24  [32]   Letter from Alban to Morgenthaler Lever, dated November 2, 2007, Dec. 6

25  Alban Dec., Exh. 28; Letter from Alban to Goldberg, dated October 3, 2007, Dec. 6
    Alban Dec., Exh. 59; Letter from Alban to Delgadillo, dated November 16, 2007,

26  Dec. 10 Alban Dec., Exh. 6.

27  [33]   Supplemental Declaration of Juan Pablo Alban, dated January 3, 2008, ¶ 4.
    [34]   Letter from Alban to Delgadillo, dated November 16, 2007, Dec. 10 Alban

28  Dec., Exh. 6.

1  production of responsive documents confirms that their burden objections are

2  without merit.

3      **C.**     **Any Burden Claims Are Significantly Outweighed By the**

4            **Importance of the Documents That Mattel Seeks**

5          Alleged burden is not a reason to deprive Mattel of documents that go

6  to the heart of this case: the timing of Bratz creation and development and Isaac

7  Larian's concealment of it.  The Discovery Master has previously held that

8  documents related to <u>Larian v. Larian</u> are relevant to these key issues.[35]

9          MGA claims that Mattel's requests for documents related to the <u>Larian</u>

10  <u>v. Larian</u> proceedings are overbroad because they are not tailored to Bratz or Prayer

11  Angels.  In fact, as discussed in Section I.B.2. above, the key disputes in the <u>Larian</u>

12  <u>v. Larian</u> proceedings all concerned Bratz, including Isaac Larian's concealment of

13  Bratz and MGA's valuation in light of Bratz.  Virtually all, if not all, documents

14  related to the <u>Larian v. Larian</u> proceedings are therefore relevant.  Furthermore, the

15  documents from those proceedings are relevant to the parties' damages claims and to

16  MGA's disqualification threats against Mattel's counsel. Mattel's requests for

17  documents related to those proceedings are not overbroad.

18          Farhad Larian argues that Mattel's request for documents related to

19  payments made to him by the parties in this case are overbroad.  However, the

20  Discovery Master has already found that payments to Farhad Larian are relevant to

21  the claims and defenses in this case.[36]  As the Discovery Master has held,

22  "[p]ayments to . . . Farhad Larian may also show possible bias and be used for

23

---

24    [35]   Order Granting Mattel's Motion to Compel Production of Documents and

25  Interrogatory Responses by MGA, dated May 15, 2007, at pp. 10-11, Dec. 6 Alban Dec., Exh. 19.  Notably, Stern & Goldberg disclaims any objection on the grounds

26  of relevance.  Stern & Goldberg's Opposition., at p. 7.

27    [36]   Order Granting in Part and Denying in Part Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6),

28  dated September 25, 2007, at pp. 11-12, Dec. 6 Alban Dec., Exh. 45.

1  impeachment purposes."[37]  Farhad Larian claims that he has produced all documents
2  "that potentially go to bias."[38]  But Mattel should not be required to take Farhad
3  Larian's word for it.  That is especially true given that Farhad Larian originally
4  claimed to have produced all documents that directly reference Bratz.  Mattel is
5  aware of at least one specific document -- Ernest Dutcher's declaration -- that
6  references Bratz in Farhad Larian's possession that he did not produce until after
7  Mattel filed its motion.[39]  Mattel is entitled to all payments made by parties in this
8  case to Farhad Larian because such payments go to his credibility.

9  **IV.  STERN & GOLDBERG CANNOT SHIELD RESPONSIVE**
10      **DOCUMENTS BEHIND AN INAPPLICABLE ARIBTRAL**
11      **PRIVILEGE**

12          Stern & Goldberg argues that it need not produce responsive
13  documents because the documents are protected by the arbitral privilege.  As Mattel
14  discussed in its Motion, the arbitral privilege does not apply here.  The arbitral
15  privilege applies only to cases in which an arbitrator's ruling is challenged.  See
16  O.R. Sec., Inc. v. Prof'l Planning Assoc., Inc., 857 F.2d 742, 748 (11th Cir. 1988)
17  ("Courts have repeatedly condemned efforts to depose members of an arbitration
18  panel *to impeach or clarify their awards*.") (emphasis added).

19          The cases that Stern & Goldberg cites are distinguishable.  Each
20  involve attempts to obtain discovery from an arbitrator where the correctness of the
21  arbitrator's ruling is at issue.  See, e.g., Woods v. Saturn Distribution Corp., 78 F.3d
22  424 (9th Cir. 1996) (denying discovery for motion to vacate arbitration award);
23  Hoeft v. MVL Group, Inc., 343 F.3d 57 (2d Cir. 2003) (finding deposition of
24  arbitrator not proper for motion to vacate arbitration award); Nat'l Hockey League
25

---

26  [37] Id. at p. 11.
27  [38] Farhad Larian's Opposition, at p. 19.
    [39] See Declaration of Ernest Dutcher, dated January 9, 2005, Dec. 6 Alban Dec.,
28  Exh. 7.

1  Players Ass'n v. Bettman, 1994 WL 38130 (S.D.N.Y. 1994) (*allowing discovery* in

2  lawsuit to set aside two arbitration decisions).

3        Mattel is not challenging any decisions made by Mr. Zarabi as an

4  arbitrator.  Courts frequently allow discovery from arbitrators where, as here, the

5  arbitrator's ruling is not at issue in the case.  See T. McGann Plumbing, Inc. v.

6  Chicago Journeyman Plumbers' Local 130, U.A., 2007 WL 4039973, at *3 (N.D. Ill.

7  Nov. 13, 2007) ("a party may depose an arbitrator who possesses directly relevant

8  and probative evidence . . . so long as the testimony elicited from the arbitrator does

9  not question the correctness of his decision."); see also Bliznik v. Int'l Harvester Co.,

10  87 F.R.D. 490, 492 (N.D. Ill. 1980) (allowing deposition of arbitrator where "[t]he

11  issues raised by this motion do not focus on the correctness of the arbitrator's

12  decision given the facts presented at the hearing.").  Stern & Goldberg fails to

13  address this critical distinction.[40]

14        Finally, Stern & Goldberg does not address Mattel's showing that. even

15  assuming the arbitral privilege was applicable, it has been waived because Mr.

16  Zarabi admits to having produced documents to Farhad Larian related to Mr.

17  Zarabi's and his appraiser's deliberations.[41]  See Hartford Fire Ins. Co. v. Garvey,

18  109 F.R.D. 323, 327 (N.D. Cal. 1985) (voluntary disclosure inconsistent with

19  confidential nature of attorney client relationship waives attorney client privilege);

20  Marshall v. U.S. Postal Service, 88 F.R.D. 348, 350 (D.D.C. 1980) ("Once a party

21  begins to disclose any confidential communication . . . the privilege is lost for all

22  communications relating to the same matter.") (quoting SEC v. Dresser Indus., Inc.,

23

---

24  [40]  Stern & Goldberg does not dispute that "[e]ven under California's broader

25  protections of an arbitrator's deliberations, such protection does not apply to 'raw

26  data' on which an arbitrator relies to make his decisions."  See Mattel's Motion to Compel Stern & Goldberg, at p. 19 (citing Rojas v. Superior Court, 33 Cal. 4th 407,

27  417 (2004)).

  [41]  See Mattel's Motion to Compel Stern & Goldberg to Produce Documents, at

28  pp. 20-21.

1  453 F.Supp. 573, 576 (D.D.C. 1978)).  Stern & Goldberg's arbitrator's privilege
2  objection should be overruled.

3  **V.    FARHAD LARIAN'S CLAIM THAT ONLY THREE REQUESTS**
4  **REMAIN AT ISSUE IS INCORRECT**

5          Farhad Larian claims that he has produced all non-privileged
6  responsive documents except three of the document requests at issue.  Not so.
7  Farhad Larian produced approximately six boxes of documents, including those
8  produced after Mattel filed this Motion.[42]  Farhad Larian claims that he has
9  approximately three boxes of privileged material.[43]  That leaves three to six boxes of
10  non-privileged material unaccounted for.  Conkle, Kremer & Engle, Farhad Larian's
11  former attorneys, represented that they provided approximately 12 to 15 boxes of
12  documents related to the Larian v. Larian proceedings to Kabatech Brown Kellner,
13  Farhad Larian's successor attorneys.[44]  Kabatech Brown Kellner claims that it gave
14  these boxes to Farhad Larian without retaining copies when its representation of
15  Farhad Larian ended.[45]  Farhad Larian provides no explanation for why he has failed
16  to produce three to six boxes of likely relevant non-privileged information.  Unless
17  Farhad Larian destroyed those documents they should still be in his possession.  If
18  he has destroyed them, he should explain why he did so despite Mattel's having sent
19  him a preservation letter in 2005, before his arbitration with Isaac Larian ended.[46]

20          Mattel is also aware of a number of specific responsive documents in
21  Farhad Larian's possession that he has not produced, further demonstrating that his
22  representation that he has produced "all relevant documents from the Larian v.

---

[42]  Declaration of Scott E. Gizer, dated December 26, 2007, ¶ 21.
[43]  Farhad Larian's Opposition, at p. 20.
[44]  Letter from Alban to Conkle, dated December 7, 2007, Corey Dec., Exh. 11.
[45]  Letter from Alban to Kellner, dated December 13, 2007, Corey Dec., Exh. 12.
[46]  See Letter from Krebs to Wilson, dated December 22, 2005 (confirming that
Farhad Larian received document preservation letter), Corey Dec., Exh. 13.

1    Larian disputes" is false.[47]  For example, there are a number of documents produced

2    in the Larian v. Larian litigations by Morad Zorabi and Ernest Dutcher (stamped

3    "MZ" and "ED" respectively) that are expressly not subject to protection under the

4    protective orders.[48]  These have not been produced.[49]  Farhad Larian has also failed

5    to produce the raw data that was provided to the appraisers in the Larian v. Larian

6    litigations and the 2000 financial models that Farhad Larian claimed Isaac Larian

7    prepared.[50]  He also has not produced the three boxes of documents that his counsel

8    showed Mattel's counsel and upon which MGA's disqualification threats against

9    Mattel's counsel are based.

10            Farhad Larian's selective production is further demonstrated by his

11   assertion that he has "produced all documents that *directly referenced* Bratz and

12   Carter Bryant."[51]  As an initial matter, the product that became known as "Bratz"

13   was referred to by different names early in its conception and design -- the time

14   period that is of greatest concern in this case.[52]  By Farhad Larian's own admission

15   his production would not include such documents.

16            In addition, there are many highly relevant documents that may not

17   "directly reference" Bratz or Carter Bryant.  For example, the raw financial

18   information that was used for the appraisals of MGA and documents related to the

19   loan MGA obtained from Wachovia Corporation are relevant to show the timing of

20   Bratz creation and development, but would not likely "directly reference" Bratz or

21   Carter Bryant.  Moreover, Farhad Larian himself filed the Dutcher Declaration,

22   _____

23   [47]    Farhad Larian's Opposition, at p. 13.
     [48]    Stipulation and Protective Order, dated September 23, 2004, Dec. 6 Alban

24   Dec., Exh. 46 at Exh. A.
     [49]    Letter from Gizer to Alban, dated December 12, 2007, Corey Dec., Exh. 15.

25   [50]    Letter from Howarth to Kaye Scholer, dated April 6, 2004, Dec. 6 Alban

26   Dec., Exh. 39.
     [51]    Farhad Larian's Opposition, at p. 6 (emphasis added).

27   [52]    See Leahy Depo. Tr. at 134:25 - 136:17 (stating that Bratz was originally

28   called "Grrlz"), Corey Dec., Exh. 14.

1  which specifically references Bratz, in the <u>Larian v. Larian</u> proceedings.[53]  That
2  document has not been produced in its entirety.[54]

3          In response to Request Nos. 17-19, Farhad Larian only states that "[i]f
4  the amendment to the protective orders are effectuated, Farhad Larian is willing to
5  produce the remaining documents related to the appraisals of MGA."[55]  But that is
6  not all that those requests seek.  For example, Request No. 19 seeks "[a]ll
7  DOCUMENTS RELATING TO the value of MGA and/or BRATZ at any time since
8  January 1, 1999."[56]  That request is clearly relevant to Mattel's damages.  Farhad
9  Larian cannot unilaterally limit the request to documents "related to the appraisals of
10  MGA" and then claim that the request is no longer at issue.

11          Farhad Larian's refusal to produce documents that relate to the
12  appraisals of MGA until the protective orders are amended is improper.  Farhad
13  Larian has himself publicly filed -- as attachments to the Dutcher Declaration --
14  documents related to the appraisals.[57]  Having filed them publicly, he cannot now
15  claim that all such documents are subject to protective order confidentiality
16  restrictions.

17          Farhad Larian also misstates the scope of Request No. 2, claiming that
18  it is overbroad because it "seeks all documents related to 'any dispute' between
19  Farhad Larian and Isaac Larian, whether it relates to <u>Mattel v. Bryant</u> issues or even
20  a legal proceeding."[58]  In fact, Request No. 2 is limited to disputes related to

21

22  [53]  <u>See</u> Declaration of Ernest Dutcher, dated January 9, 2005, Dec. 6 Alban Dec.,
      Exh. 7.
23  [54]  <u>Id.</u> at p. 4; Letter from Gizer to Alban, dated December 12, 2007, Corey Dec.,
24  Exh. 15.
      [55]  Farhad Larian's Opposition, at p. 15.
25  [56]  Subpoena served on Farhad Larian, dated August 31, 2007, Dec. 6 Alban
26  Dec., Exh. 20.
      [57]  <u>See</u> Declaration of Ernest Dutcher, dated January 9, 2005, Dec. 6 Alban Dec.,
27  Exh. 7.
28  [58]  Farhad Larian's Opposition, at p. 13.

1  lawsuits or arbitration proceedings: "All DOCUMENTS, including without

2  limitation any and all pleadings, briefs, decisions, orders, correspondence and other

3  COMMUNICATIONS, created, reviewed, transmitted or received by YOU *in*

4  *connection with any lawsuit or arbitration proceedings*, including without limitation

5  any pre-arbitration and post-arbitration proceedings, or any other dispute between

6  YOU and ISAAC LARIAN."[59]  Farhad Larian has never contended that there are

7  any lawsuits or arbitrations between him and Isaac Larian other than the ones that

8  the Discovery Master has already held are relevant to this case.

9         Farhad Larian now also claims that he "never took the position that he

10  would not respond to [Request Nos. 8 and 9]."[60]  Farhad Larian served Mattel with a

11  laundry list of boilerplate objections to those requests with no indication that he

12  would produce any documents.[61]  Mattel was forced to move as to those requests

13  based on Farhad Larian's refusal to produce.

14  **VI.   EACH OF THE THIRD PARTIES MUST PRODUCE ADEQUATE**

15         **PRIVILEGE LOGS**

16         Farhad Larian, Kaye Scholer and Stern & Goldberg are withholding

17  documents on the basis of privilege.  None, however, has provided a privilege log

18  that comports with the requirements of Rule 45(d)(2).  That rule requires a claim of

19  privilege to "be made expressly and . . . supported by description of the nature of the

20  documents, communications, or things not produced that is sufficient to enable the

21  demanding party to contest the claim."

22         Farhad Larian claims that his general list of categories of documents is

23  sufficient.  That is wrong.  The entries on Farhad Larian's privilege log do not

24  provide sufficient description for Mattel to assess his claim of privilege.  For

---

25      [59]   Subpoena served on Farhad Larian, dated August 31, 2007, Dec. 6 Alban

26  Dec., Exh. 20.

27      [60]   Farhad Larian's Opposition, at p. 6.

28

1  example, Farhad Larian groups several documents into single entries described only
2  as "[v]arious articles, pleadings, and correspondence that are marked with comments
3  and remarks of counsel" and "[v]arious e-mails between MGA and its counsel."[62]  It
4  is well established that over-generalized descriptions that fail to adequately identify
5  specific documents are insufficient.  See Martinez v. City of Fresno, 2006 WL
6  3762050, at *6 (E.D. Cal. 2006).  Farhad Larian claims that to produce a document-
7  by-document privilege log would be unduly burdensome because he has three boxes
8  of privileged materials.  Given the size of this case and what is at stake, the burden
9  of logging three boxes of allegedly privileged documents is not undue under the
10  circumstances.  (See Section III. above).

11          Some courts have, under limited circumstances, accepted privilege logs
12  which did not identify documents document-by-document.  Those circumstances are
13  not present here, and in any event Farhad Larian's "privilege log" is inadequate even
14  by the standards of those cases.  In SEC v. Thrasher, 1996 WL 125661, at *1
15  (S.D.N.Y. 1996), the court noted that "[t]ypically, a privilege log must identify each
16  document and provide basic information, including the author, recipient, date and
17  general nature of the document," but allowed the defendant to provide categories of
18  privileged documents where the defendant also provided an attorney affidavit
19  representing that "all of the documents in question reflect communications between
20  defense attorneys and that all of these documents have been kept in confidence."  Id.
21  at *2.  Farhad Larian has provided no such affidavit here.

22          Kaye Scholer has failed to produce any privilege log.  It cites cases
23  recognizing that in certain cases a document-by-document privilege log may not be
24  required.  But those cases still require some description of what is withheld as

25

26

---

27  [61]  See Response and Objections to Subpoena Served on Non-Party Farhad Larian, dated September 21, 2007, Dec. 6 Alban Dec., Exh. 21.
28  [62]  Farhad Larian's Privilege Log, at p. 1, Dec. 6 Alban Dec., Exh. 52.

1  privileged.[63]  Even now Kaye Scholer does not offer to produce any description of
2  what it is withholding as privileged.  This is contrary to the requirements of Rule
3  45(d)(2).  This steadfast refusal to provide any form of privilege log warrants waiver
4  of the privilege.  See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist.
5  of Mont., 408 F.3d 1142, 1148-50 (9th Cir. 2005) (affirming district court's holding
6  that party waived privilege objections by failing to provide privilege log within
7  thirty days of serving its responses); In re Imperial Corp. of Am., 174 F.R.D. 475,
8  477 (S.D. Cal. 1997) (waiver rule for failure to provide privilege log applies to
9  subpoenas to third parties, such as law firms that represent party).  At the very least,
10  Kaye Scholer should be compelled to produce a privilege log.  Given the size and
11  stakes of this litigation (and the Kaye Scholer is the former attorneys for a party to
12  this case), Kaye Scholer should be required to produce a document-by-document log
13  as is generally required.  See Gail v. New England Gas Co., Inc., 243 F.R.D. 28, 33
14  (D. R.I. 2007) (discussing universally accepted requirement of document-by-
15  document log in the context of Rule 45); SEC v. Thrasher, 1996 WL 125661, at *2
16  (S.D.N.Y. 1996) ("Typically, a privilege log must identify each document and
17  provide basic information, including the author, recipient, date and general nature of
18  the document.").

19      Stern & Goldberg provides particularly equivocal descriptions of the
20  categories of documents it claims are privileged.  For example, Stern & Goldberg
21  claims to have "[i]nternal file memoranda which Stern & Goldberg *may have*
22  prepared in connection with its involvement in the representation of Morad Zarabi,
23  such as, a memo to the file based on a conversation, such as it had with counsel for
24  Mattel."[64]  That description provides Mattel and the Court little basis on which to
25  assess Stern & Goldberg's claim of privilege.  Whether documents were prepared in

26  
27  [63]  See, e.g., In re Imperial Corp. of Am., 174 F.R.D. 475, 478 (S.D. Cal. 1997) (requiring privilege log with categorical descriptions of documents withheld).
28  [64]  Stern & Goldberg Opposition, at p. 8 (emphasis added).

1  connection with Stern & Goldberg's representation of Morad Zarabi is a critical fact

2  in determining whether the documents are subject to work product protections.

3  Mattel cannot evaluate privilege claims base on such qualified generalities.

4          Stern & Goldberg also asserts that the "financial records of ABC, Isaac

5  Larian and/or Farhad Larian" are privileged.  This objection lacks merit on its face.

6  It is not clear how financial records could possibly be privileged; certainly Stern &

7  Goldberg provides no explanation or proof how they could be.  Stern & Goldberg

8  had no attorney-client relationship with ABC, Isaac Larian or Farhad Larian.

9  Accordingly, Stern & Goldberg's privilege claims should be rejected.

10          Stern & Goldberg also asserts that the transcript of a January 23, 2003

11  meeting is protected by work product because "it was obtained by Stern & Goldberg

12  for use in its representation of Mr. Zarabi, and was not disseminated to anyone

13  outside of the Firm."[65]  A document does not become privileged simply because it

14  was obtained by attorneys.  See Clavo v. Zarrabian, 2003 WL 24272641, at *2 (C.D.

15  Cal. 2003) ("The mere transmittal of documents to a lawyer is insufficient to bring

16  documents under the umbrella of the attorney-client privilege.").  Further, a

17  transcript of a non-privileged meeting is not work product because it does not

18  contain any attorney opinions or mental impressions.  See In re Grand Jury

19  Subpoenas, 318 F.3d 379, 384 (2d Cir. 2003) ("the principle underlying the work

20  product doctrine -- sheltering the mental processes of an attorney as reflected in

21  documents prepared for litigation -- is not generally promoted by shielding from

22  discovery materials in an attorney's possession that were prepared neither by the

23  attorney nor his agents.").

24

25

26

27

---

28  [65]  Id. at p. 12.

## VII.   THE THIRD PARTIES' CLAIMS THAT MATTEL FAILED TO COMPLY WITH THE LOCAL RULES AND MEET AND CONFER REQUIREMENTS ARE NOT TRUE

### A.   Mattel Satisfied Its Meet and Confer Requirements With Farhad Larian

Mattel first requested a meet and confer with Farhad Larian on October 3, 2007.[66]  Farhad Larian's counsel, however, delayed agreeing to a conference until November 13, 2007, after Mattel had requested a meet and confer on at least four separate occasions.[67]  The parties then conducted two separate meet and confers, one on November 20, 2007 and another on November 27, 2007.[68]  In total, Mattel's counsel and Farhad Larian's counsel met and conferred over Mattel's subpoena for more than three hours.[69]  After the parties' lengthy meet and confers, counsel for Farhad Larian raised a few, minor issues in a letter of November 30, 2007.[70] Counsel for Farhad Larian indicated that she could discuss those minor issues on the morning of December 5, 2007.[71]  However, she later asked that any discussion be rescheduled for late in the afternoon on December 5, 2007.[72]  Mattel agreed.[73]  Then, at 10:00 p.m. the night of December 4, 2007, counsel for Farhad Larian indicated that any discussion would have to be postponed and that counsel for MGA would

---

[66]   Letter from Alban to Morgenthaler Lever, dated October 3, 2007, Dec. 6 Alban Dec., Exh. 23.

[67]   Letter from Alban to Morgenthaler Lever, dated December 10, 2007, Corey Dec., Exh. 16.

[68]   Id.

[69]   Id.

[70]   Id.; Letter from Morganthaler Lever to Alban, dated November 30, 2007, Dec. 6 Alban Dec., Exh. 71.

[71]   Letter from Alban to Morgenthaler Lever, dated December 10, 2007, Corey Dec., Exh. 16.

[72]   Id.

[73]   Id.

1   need to participate.[74]  With this history, and the discovery cut-off fast approaching,

2   Mattel could not simply stand idly by while Farhad Larian's counsel and MGA

3   engaged in further delay.  Mattel more than satisfied its meet and confer

4   requirements.

5        **B.**   **Kaye Scholer's Claim That Mattel Filed Its Motion Prematurely Is**

6        **Incorrect**

7        According to Kaye Scholer, it has agreed to produce all non-privileged

8   responsive documents that it has located after a search of a limited number of its

9   files relating to <u>Larian v. Larian</u>.  Yet, Mattel has yet to receive a single document

10   from Kaye Scholer.[75]  Kaye Scholer' original objections made no reference to any

11   reference to protective orders, which is a waiver of that objection.[76]  Kaye Scholer

12   now claims that it will not produce any documents until the protective orders from

13   the <u>Larian v. Larian</u> proceedings are amended.[77]

14        As described above, numerous documents from <u>Larian v. Larian</u> are not

15   subject to the protective order, including documents that Isaac Larian was in control

16   of before the protective orders were entered.  Even based on Kaye Scholer's new

17   found objections, it should at least produce those documents.  It has not.  Moreover,

18   Kaye Scholer has failed to review its files or produce a privilege log of documents it

19   is withholding as privileged.[78]  In short, Mattel's motion was necessary because

20   Kaye Scholer failed to meet its obligations under <u>Rule</u> 45.

21

22

23   [74]  <u>Id.</u>

     [75]  Corey Dec., ¶ 18.

24   [76]  Objection to Subpoena in a Civil Case, dated September 18, 2007, Dec. 10

25   Alban Dec., Exh. 2.

     [77]  Kaye Scholer's Opposition, at p. 2.

26   [78]  <u>See</u> Kaye Scholer's Opposition, at p. 5 (acknowledging that Kaye Scholer has

27   reviewed only "1) pleading files; 2) discovery files (i.e., documents produced in the underlying litigations/arbitrations; and 3) arbitration exhibit (i.e., documents

28   identified and/or submitted as an exhibit during arbitration).

## VIII.  <u>KAYE SCHOLER'S OPPOSITION SHOULD BE REJECTED AS UNTIMELY</u>

The Discovery Master should not consider Kaye Scholer's opposition at all because it was not timely filed.  <u>See</u> Local Rule 7-12 ("The failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion."); <u>see also</u> <u>Moore v. La Habra Relocations, Inc.</u>, 501 F. Supp. 2d 1278, 1279 (C.D. Cal. 2007) (granting motion for failure to timely file opposition).  Mattel served its Motion on December 10, 2007.  Pursuant to the Stipulation for Appointment of a Discovery Master, Kaye Scholer had five court days -- to December 17, 2007 -- to submit its opposition.[79]  Kaye Scholer did not serve its opposition until December 27, 2007 -- ten days late.[80]

Kaye Scholer relied on <u>Local Rule</u> 7-9 to calculate the due date for its opposition.  It requires that opposing papers be served "not later than fourteen (14) days before the date designated for the hearing of the motion." <u>Local Rule</u> 7-9 does not apply to discovery motions.  <u>Local Rule</u> 37-2.2 would govern.  It requires that an opposing party provide its opposition portion of a joint stipulation within five court days after receiving the moving party's portion.  Kaye Scholer's opposition is therefore inconsistent with the deadlines set forth in both the <u>Local Rules</u> and the Stipulation for Appointment of a Discovery Master, and should be rejected.

---

[79]  Stipulation for Appointment of a Discovery Master; and Order, dated December 6, 2006, at p. 4, Dec. 6 Alban Dec., Exh. 40.

[80]  Unlike with Stern & Goldberg and Farhad Larian, Mattel entered into no agreement with Kaye Scholer to extend its time to respond.

## **Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Discovery Master (1) overrule each of Farhad Larian's, Stern & Goldberg's and Kaye Scholer's objections; and (2) compel Farhad Larian, Stern & Goldberg and Kaye Scholer to produce all documents responsive to every request in Mattel's subpoenas; and order Mr. Larian, Stern & Goldberg and Kaye Scholer to produce documents withheld on privilege grounds or, in the alternative, to prepare and serve within seven calendar days a document-by-document privilege log.

DATED:  January 3, 2008                QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____
     Jon D. Corey
     Attorney for Mattel, Inc.