**EXHIBIT 4**

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301-1908

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650-470-4654
DIRECT FAX
650-470-4570
EMAIL ADDRESS
ATEMKIN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
-----
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
-----
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

December 20, 2007

**BY EMAIL AND U.S. MAIL**

Jon Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:   Bryant v. Mattel, Document stored with File Keepers, LLC

Dear Mr. Corey:

This is in response to your letter to Amy Park dated December 12, 2007, regarding MGA's search for documents stored at File Keepers, LLC ("File Keepers"). During the course of this litigation, MGA has searched for and produced non-privileged responsive documents discovered at those locations where such documents are reasonably likely to be found, including File Keepers.

Please confirm that Mattel has conducted a search of and produced all responsive documents discovered at its offsite document repository in connection with this case.

Very truly yours,

Andrew C. Temkin

4 95

**EXHIBIT 5**

**ORIGINAL**

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   WILLIAM J. CHARRON (S.B. #220518)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   wcharron@omm.com

6   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, CA 90067
    Telephone: (310) 553-3000
9   Facsimile: (310) 557-9815

10  Attorneys for MGA Entertainment, Inc.

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                   EASTERN DIVISION

14

15  CARTER BRYANT, an individual,        Case No. CV 04-9049 SGL (RNBx)
                                         (consolidated with 04-9059 and 05-
16              Plaintiff,               2727)

17        v.                             **Isaac Larian's Supplemental
                                         Responses To Mattel, Inc.'s First Set
18  MATTEL, INC., a Delaware             Of Requests For Documents And
    Corporation,                        Things**
19
                Defendant.
20

21  AND CONSOLIDATED ACTIONS

22

23

24

25

26

27

28
                                         LARIAN'S SUPP. RESPONSE TO MATTEL'S
                                         1ST SET OF REQUESTS FOR PRODUCTION
                                         CV 04-9049 SGL (RNBX)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

Larian incorporates by reference the above-stated general objections as if fully set forth herein. Larian also specifically objects to this request on the grounds that it is overbroad, oppressive, and unduly burdensome in that it seeks information not relevant to the subject matter of this lawsuit or reasonably calculated to lead to the discovery of admissible evidence. Larian also specifically objects to this request on the grounds that it is overbroad, unduly burdensome and oppressive including, without limitation, in calling for all documents relating to any and all arbitrations and suits between Larian and Farhad Larian, but not otherwise limited as to subject matter or time. Larian also objects to this request on the grounds that it seeks information that is already known to Mattel and/or is a matter of public record and/or is equally available to Mattel, and is, therefore, unduly burdensome and oppressive. Larian also objects to this request to the extent it may seek documents the disclosure of which is or may be protected by contract or agreement. Larian also objects to this request to the extent that it may seek documents the disclosure of which is or may be governed by court orders. Larian also objects to this request on the grounds that it seeks confidential, proprietary or commercially sensitive information, the disclosure of which would be inimical to the business interests of Larian and one or more third parties. Larian also objects to this request to the extent it seeks information the disclosure of which would implicate the rights of third parties to protect private, confidential, proprietary or trade secret information. Larian also objects to this request to the extent it calls for the disclosure of attorney-client privileged information or information protected from disclosure by the work-product doctrine, joint defense or common interest privilege, or other privilege. Larian also objects to this request to the extent it seeks documents not within Larian's possession, custody or control.

Subject to the foregoing, Larian will produce all documents referring or relating to Bratz within his possession, custody, or control that are responsive to

- 134 -

5     97

1   the request, if any, and that have not already been produced, that he discovers in the

2   course of his reasonable search and diligent inquiry, which are within the

3   permissible scope of discovery, and to which no privilege or other protection

4   applies, including without limitation, the attorney-client privilege or attorney's

5   work product doctrine.

6   **REQUEST FOR PRODUCTION NO. 124:**

7        All DOCUMENTS filed, submitted or served in the suit and/or

8   arbitration proceedings brought by Farhad Larian against YOU, including without

9   limitation all declarations, affidavits, transcripts, video and/or audio recordings and

10  sworn testimony given by any PERSON in such suit or arbitration proceedings.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 124:**

12       Larian incorporates by reference the above-stated general objections as

13  if fully set forth herein.  Larian also specifically objects to this request on the

14  grounds that it is overbroad, oppressive, and unduly burdensome in that it seeks

15  information not relevant to the subject matter of this lawsuit or reasonably

16  calculated to lead to the discovery of admissible evidence.  Larian also objects to

17  this request on the grounds that it seeks confidential, proprietary or commercially

18  sensitive information, the disclosure of which would be inimical to the business

19  interests of Larian and one or more third parties.  Larian also objects to this request

20  to the extent it calls for the disclosure of attorney-client privileged information or

21  information protected from disclosure by the work-product doctrine, joint defense

22  or common interest privilege, or other privilege.

23       Subject to the foregoing, Larian will produce all documents referring

24  or relating to Bratz within his possession, custody, or control that are responsive to

25  the request, if any, and that have not already been produced, that he discovers in the

26  course of his reasonable search and diligent inquiry, which are within the

27  permissible scope of discovery, and to which no privilege or other protection

28  applies, including without limitation, the attorney-client privilege or attorney's

- 135 -

LARIAN'S SUPP. RESPONSE TO MATTEL'S
1ST SET OF REQUESTS FOR PRODUCTION
CV 04-9049 SGL (RNBX)

5   98

1   work product doctrine.

2   **REQUEST FOR PRODUCTION NO. 125:**

3           All DOCUMENTS RELATING TO any and all settlements

4   resolutions or compromises of any suit and/or arbitration proceedings between

5   YOU and Farhad Larian.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 125:**

7           Larian incorporates by reference the above-stated general objections as

8   if fully set forth herein.  Larian also specifically objects to this request on the

9   grounds that it is overbroad, oppressive, and unduly burdensome in that it seeks

10  information not relevant to the subject matter of this lawsuit or reasonably

11  calculated to lead to the discovery of admissible evidence.  Larian also specifically

12  objects to this request on the grounds that it is overbroad, unduly burdensome and

13  oppressive including, without limitation, in calling for all transcripts and video

14  and/or audio recordings of statements made by any person under oath, including

15  without limitation all deposition transcripts, trial transcripts and arbitration

16  transcripts relating to any suit and/or arbitration proceedings between Larian and

17  Farhad Larian, but not otherwise limited as to subject matter, and not limited in any

18  way as to time.  Larian also objects to this request on the grounds that it seeks

19  information that is already known to Mattel and/or is a matter of public record

20  and/or is equally available to Mattel, and is, therefore, unduly burdensome and

21  oppressive.  Larian also objects to this request to the extent it may seek documents

22  the disclosure of which is or may be protected by contract or agreement.  Larian

23  also objects to this request to the extent that it may seek documents the disclosure

24  of which is or may be governed by court orders.  Larian also objects to this request

25  on the grounds that it seeks confidential, proprietary or commercially sensitive

26  information, the disclosure of which would be inimical to the business interests of

27  Larian and one or more third parties.  Larian also objects to this request to the

28  extent it seeks information the disclosure of which would implicate the rights of

- 136 -

LARIAN'S SUPP. RESPONSE TO MATTEL'S
1ST SET OF REQUESTS FOR PRODUCTION
CV 04-9049 SGL (RNBX)

1   third parties to protect private, confidential, proprietary or trade secret information.

2   Larian also objects to this request to the extent it calls for the disclosure of attorney-

3   client privileged information or information protected from disclosure by the work-

4   product doctrine, joint defense or common interest privilege, or other privilege.

5          Subject to the foregoing, Larian will produce all documents referring

6   or relating to Bratz within his possession, custody, or control that are responsive to

7   the request, if any, and that have not already been produced, that he discovers in the

8   course of his reasonable search and diligent inquiry, which are within the

9   permissible scope of discovery, and to which no privilege or other protection

10  applies, including without limitation, the attorney-client privilege or attorney's

11  work product doctrine.

12  **REQUEST FOR PRODUCTION NO. 126:**

13         All contracts or agreements between YOU or MGA and Farhad Larian.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 126:**

15         Larian incorporates by reference the above-stated general objections as

16  if fully set forth herein. Larian also specifically objects to this request on the

17  grounds that it is overbroad, oppressive, and unduly burdensome in that it seeks

18  information not relevant to the subject matter of this lawsuit or reasonably

19  calculated to lead to the discovery of admissible evidence. Larian also objects to

20  this request on the grounds that it is overbroad, unlimited as to time, and unduly

21  burdensome and oppressive. Larian also objects to this request on the grounds that

22  it seeks confidential, proprietary or commercially sensitive information, the

23  disclosure of which would be inimical to the business interests of Larian and one or

24  more third parties. Larian also objects to this request to the extent it calls for the

25  disclosure of attorney-client privileged information or information protected from

26  disclosure by the work-product doctrine, joint defense or common interest

27  privilege, or other privilege.

28         Subject to the foregoing, Larian will produce all documents within his

- 137 -        LARIAN'S SUPP. RESPONSE TO MATTEL'S
               1ST SET OF REQUESTS FOR PRODUCTION
               CV 04-9049 SGL (RNBX)

5       100

1    Dated:        September 25, 2007

2                                  DIANA M. TORRES
3                                  DALE M. CENDALI
                                   WILLIAM J. CHARRON
4                                  O'MELVENY & MYERS LLP

5
6                            By: /s/ William J. Charron
                                  William J. Charron
7                            Attorneys for Plaintiff
                             MGA Entertainment, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LARIAN'S SUPP. RESPONSE TO MATTEL'S
1ST SET OF REQUESTS FOR PRODUCTION
CV 04-9049 SGL (RNBX)

**EXHIBIT 6**

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11

12                                          CASE NO. CV 04-09049 SGL (RNBx)
   CARTER BRYANT, an individual,           JAMS Reference No. 1100049530
13
              Plaintiff,
14                                          Consolidated with
         v.                                 Case No. CV 04-09059
15                                          Case No. CV 05-2727
   MATTEL, INC., a Delaware corporation,
16                                          ORDER GRANTING IN PART AND
              Defendant.                    DENYING IN PART MATTEL'S
17                                          MOTION TO COMPEL PRODUCTION
                                            OF DOCUMENTS BY ISAAC LARIAN;
18                                          DENYING REQUEST FOR
                                            SANCTIONS
19

20 CONSOLIDATED WITH
   MATTEL, INC. v. BRYANT and
21 MGA ENTERTAINMENT, INC. v. MATTEL,
   INC.
22

23

24                    I. INTRODUCTION

25      On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

26 of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks

27 an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

28 Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

   Bryant v. Mattel, Inc.,                                                              1
   CV-04-09049 SGL (RNBx)

                                                            - - - 6      102

15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199, 207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents withheld based on any claimed privilege. Mattel also seeks an award of sanctions against Larian in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing this motion. Larian submitted an opposition on December 5, 2007.[1] Mattel submitted a reply on December 10, 2007. The matter was heard on December 14, 2007. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of Documents and Things to Larian, the CEO and majority owner of MGA. On August 6, 2007, Larian filed his initial responses and objections. The parties met and conferred, and on September 25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the 276 Requests. The parties met and conferred further, and Larian ultimately agreed to provide further responses to 55 of the disputed 87 Requests. Specifically, Larian agreed to supplement his responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that have not previously been produced." MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories: (1) personal financial data; (2) communications with Mattel employees; (3) statements to the media; (4) telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position. The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

he will do so. Second, Larian's agreement to produce responsive documents is apparently limited

to documents from his so-called "personal files." See Opposition at 2:2-3.

Mattel's counsel "never agreed that Larian could limit his response to the above requests to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his response to documents in Larian's 'personal files.'" Supp. Decl. of Scott B. Kidman. Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34, Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding parties' "possession, custody or control." The limitation is also unworkable because, as Mattel points out, it "would create a situation by which responsive and highly relevant documents might never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and Larian, on the other hand, deems [a] document not to be part of his 'personal files.'" Reply at p.6.

Market Research for Products Not at Issue: Request Nos. 79-81

In Request No. 79, Mattel seeks all documents relating to any focus groups relating to Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports. In his supplemental response, Larian agrees to produce the following documents, subject to his general objections:

> Larian will produce all documents within his possession, custody, or control that relate to focus groups for "MGA contested products" and "Mattel contested products," as those terms are defined in Mattel's First Requests for Production regarding Claims of Unfair Competition, if any, and that have not already been produced, that he discovers in the course of his reasonable search and diligent inquiry, and to which no privilege or other protection applies, including without limitation, the attorney-client privilege or attorney's work product doctrine.

Mattel's Consolidated Separate Statement at pp. 20-21.

In Request No. 80, Mattel seeks all documents relating to any services or work performed by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all videotapes, summaries, notes and reports associated therewith. In his supplemental response, Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to the request and to which no privilege or other protection applies.

1    In Request No. 81, Mattel seeks all documents relating to Alaska Momma. In his

2    supplemental response, Larian agrees to produce all documents relating or referring to Bratz,

3    Angel or Bryant that are responsive to the request and to which no privilege or other protection

4    applies.

5        Mattel contends that the requests are as narrowly tailored as possible to capture relevant

6    information. More specifically, Mattel contends that Request No. 79 seeks documents that bear

7    directly on the timing of the development of Bratz, as well as MGA's unfair competition claims

8    and Mattel's defense thereto. Mattel contends that the requested documents may demonstrate that

9    MGA is guilty of copying Mattel's Barbie and My Scene products.

10       Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome. As an

11   example, Larian points to Request No. 80, which requests all documents relating to any services

12   or work performed by L.A. Focus, regardless of whether that work has any relation to the claims

13   and defenses in the action or any of the products at issue. Larian similarly contends that Request

14   Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or

15   defense in this case.

16       Mattel's motion to compel Larian to produce all documents responsive to Request No. 79

17   is granted. The request is reasonably limited in subject matter to Bratz and Angel. The requested

18   documents are relevant to several issues in the case, including the origin, conception and creation

19   of Bratz. The requested documents are also relevant to the unfair competition claims. Larian's

20   supplemental response to Request No. 79 is unduly restrictive. Among other things, the

21   definitions of "contested MGA products" encompass only those products that provide a basis for

22   any claim by MGA against Mattel, and not claims by Mattel against MGA.

23       Mattel's motion to compel Larian to produce all documents responsive to Request Nos.

24   80-81 is denied. These requests, as drafted, are clearly overbroad because they have no

25   reasonable limitations on subject matter or time. In particular, the requests are directed to L.A.

26   Focus and Alaska Momma without regard to whether the services or work the companies

27   provided has any relation to any product at issue.

28       Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

6.    10.6

1   documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's

2   supplemental response is too narrow and "may result in the exclusion of highly relevant

3   documents because the project, concept or design that is the subject of the focus group is deemed

4   not to relate to something then known as Bratz or Angel." However, Larian acknowledges that

5   these types of hypothetical documents would still fall within the narrower scope of production

6   proposed in his supplemental response.

7          Mattel also contends that it is entitled to all of the requested documents called for by

8   Request No. 80 because they are relevant to credibility and bias, particularly if the documents

9   show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.

10  Focus used. It is, however, not apparent how deviations from standard procedures would impact

11  credibility or bias.

12         As to Request No. 81, Mattel contends that the documents showing the relationship

13  between Larian or MGA and Alaska Momma are relevant, even if they do not themselves

14  specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian

15  or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant

16  claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's

17  and Bryant's stories about how and when they came to be introduced. Mattel also contends that

18  documents showing other dealings between Larian or MGA and Alaska Momma are relevant to

19  the issues of bias and credibility. Mattel's supposition about the types of documents that might

20  exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also

21  not limited by either subject matter or time.

22         Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in

23  accordance with his supplemental responses.

24  <u>Bryant's Attorney and Niece: Request Nos. 113-115</u>

25         In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne

26  Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No.

27  114, Mattel seeks all documents, including without limitation all communications, between

28

1   Larian or MGA and Anne Wang.  In Request No. 115, Mattel seeks documents relating to Brooke

2   Gilbert, Bryant's niece.  In his supplemental responses, Larian agrees to produce documents

3   relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4   other protection applies.  Thus, the only issue is whether Larian should be required to produce

5   responsive documents that do not relate to Bratz, Angel or Bryant.

6          Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7   and conception of Bratz and the timing thereof.  Mattel also contends that the documents may

8   disclose relevant information regarding Mattel's claims for breach of contract and inducing

9   breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10  contractual obligations with Mattel.  Mattel also contends that Larian has failed to carry his

11  burden of demonstrating that the requests are overly burdensome.

12         Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

13  are inadequate because the limitations on scope may eliminate otherwise relevant documents that

14  do not specifically refer to Bratz, Angel or Bryant.  For example, Mattel contends that

15  communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

16  Bryant may be relevant to the issues of credibility and bias.

17         Mattel contends that Request No. 115 seeks documents that are relevant to determine

18  whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

19  that had been installed and run on the hard drive.  Bryant claims to have given his computer to his

20  niece.  Mattel also contends that the requested documents are relevant to the issues of credibility

21  and bias.  Further, Mattel contends that Larian's supplemental response to Request No. 115 is

22  inadequate, because evidence of any communication between Larian and his niece, regardless of

23  subject matter, is significant.

24         Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

25  because they lack any subject matter or time constraints.  Further, Larian contends that the

26  requests constitute an improper fishing expedition and necessarily sweep in documents that are

27  not relevant to any claim or defense.

28  //

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2    requests are overbroad because they are not focused on relevant subject matter and are untethered

3    to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4    Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5    is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and

7    responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in

8    accordance with his supplemental responses.

9    
10   The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125

11   In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

12   suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all

13   documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

14   Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

15   and/or audio recordings and sworn testimony given by any person in such suit or arbitration

16   proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,

17   resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

18   Larian. In his supplemental responses, Larian agrees to produce all documents referring or

19   relating to Bratz that are responsive to the requests and to which no privilege or other protection

20   applies.

21   Mattel contends that the court has already ruled that the arbitration proceedings between

22   Larian and his brother are relevant because they involve, among other matters, the conception and

23   creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit

24   the requests to the exclusion of potentially relevant documents. For example, Mattel contends

25   that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

26   to the timing of the development of Bratz, whether or not they specifically refer to Bratz. Mattel

27   also contends that the requested documents are relevant to the value of the Bratz brand and

     the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28

1  example, profits from the sale and licensing of Bratz and other information that would impeach

2  Larian's testimony that he has not made any profits from Bratz. Further, Mattel contends that the

3  requested documents may lead to evidence of the assessments or valuations of the net worth or

4  value of MGA or Larian, regardless of any reference to Bratz specifically. Mattel also contends

5  that settlement documents may contain information that bears on the merit of Farhad Larian's

6  claims and the value of Bratz. Mattel also claims that the requested documents are relevant to

7  motive, intent, bias and credibility.

8      Larian contends the instant requests are overbroad and unduly burdensome. Further,

9  Larian contends that the relationship of the requested documents to any of the claims or defenses

10  in the present action is questionable, and the existence of such documents is conjectural.

11  Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12  already the subject of other requests. Larian also contends that Request Nos. 123-125 impose an

13  undue burden because of the protective orders in place that strictly limit the use of any documents

14  from an arbitration and suit between Larian and his brother. Larian represents that he is currently

15  working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

16  that are agreeable to all parties.

17      Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

18  denied. The requests are clearly overbroad in calling for all documents from the arbitrations and

19  suits between Larian and his brother, without any subject matter limitations. Furthermore, these

20  requests are unduly burdensome to the extent they require production of documents that do not

21  refer or relate to Bratz. Such documents have marginal relevance, at best, to the claims and

22  defenses in the case.

23      Larian's supplemental responses to Request Nos. 123-125 are sufficient. Larian's

24  agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

25  enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

26  of the categories of documents of interest to Mattel. For example, under Larian's proposed

27  limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

28  refer or relate to Bratz must be produced. Documents relating to the value of the Bratz brand are

1  also within the scope of Larian's proposed limitation and would have to be produced. Documents

2  relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3  produced. Further, Larian's proposed limitation does not necessarily foreclose discovery

4  regarding the appraisal of MGA prepared by Mr. Dutcher. In particular, documents relating to

5  MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6  projections must be produced if such documents refer or relate to Bratz. Accordingly, Larian

7  shall produce documents responsive to Request Nos. 123-125 in accordance with his

8  supplemental responses.

9

10  Telephone Records: Request Nos. 178-181

11       In Request No. 178, Mattel seeks all documents relating to, including without limitation

12  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

13  from January 1, 1998 through January 1, 2001. Larian objects to this request.

14       In Request No. 179, Mattel seeks all documents relating to, including without limitation

15  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

16  from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel. In his supplemental

17  responses, Larian agrees to produce documents responsive to Request No. 179. In response to

18  this motion, however, Larian contends that he should be permitted to produce documents

19  responsive to Request No. 179 in redacted form as discussed more fully below.

20       In Request No. 180, Mattel seeks all documents relating to, including without limitation

21  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

22  from April 1, 2004 through June 1, 2004. Larian objects to this request.

23       In Request No. 181, Mattel seeks all documents relating to, including without limitation

24  phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

25  at any time. In his supplemental response, Larian agrees to produce all documents pertaining to

26  communications made prior to January 1, 2001 that are responsive to the request and to which no

27  privilege or other protection applies.

28  //

1  Mattel contends that Request No. 178 seeks documents relevant to show Larian's

2  communications with Bryant and other Mattel employees while such employees may still have

3  been employed by Mattel and before Larian claims to have known about Bratz.  Similarly, Mattel

4  contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and

5  Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them

6  to steal Mattel trade secrets.

7  Further, Mattel contends that the requested documents regarding telephone records are

8  relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show

9  communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent

10  they show communications with current and former Mattel employees, including Machado,

11  Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements

12  Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses.  With respect to

13  burden, Mattel contends that it would be more burdensome to attempt to produce the requested

14  records in redacted form, and further, that the protective order in place is sufficient to protect

15  Larian's privacy concerns.

16  Larian contends that the requests regarding telephone records are overbroad, completely

17  unbounded as to subject matter, and necessarily sweep in private information that is completely

18  irrelevant to any of the claims or defenses in the case.  Larian also points out that the court

19  previously considered similar requests served on Bryant and allowed production of redacted

20  copies of telephone records as long as Bryant provided a signed verification that none of his

21  redactions related to Bratz, MGA or any other project he worked on for MGA.  Specifically,

22  Bryant was permitted to produce redacted phone records as long as he provided a "signed

23  verification that none of the telephone records that were redacted relate or refer in any way to

24  MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."

25  Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production

26  of Documents by Bryant).  Larian contends that he should be permitted to redact responsive

27  documents consistent with the court's prior order.  During the meet and confer, Larian offered to

28  provide redacted records and a signed verification that none of the redacted information was

1    relevant to the case, but Mattel did not respond to the offer.

2        Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3    relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied.  The

4    request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5    private information that is completely irrelevant to the case.  Larian should not be subjected to

6    such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7    the request to the communications, claims, and defenses identified above.

8        In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9    for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10   (Bratz and/or Angel).  Accordingly, Larian shall abide by his agreement to comply with Request

11   No. 179, as stated in his supplemental response.  Larian's proposal to produce responsive

12   documents in redacted form is appropriate to address his privacy concerns.  More specifically,

13   Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14   provides a signed verification that none of the redacted material refers or relates in any way to

15   MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

16   or that are otherwise relevant to the case.

17       Mattel's motion to compel documents responsive to Request No. 180 (documents relating

18   to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted.  Request No. 180

19   is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

20   employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets.  See

21   Mattel's Second Amended Answer and Counterclaims, ¶¶37-54.  Larian may produce documents

22   responsive to Request No. 180 in redacted form as specified above with respect to Request No.

23   179.

24       Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

25   is overbroad as written because it has no time limits.  In his supplemental response, Larian agrees

26   to produce communications prior to January 1, 2001 that are responsive to the request.  Larian's

27   proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

28   without imposing an undue burden.  Accordingly, Larian shall produce documents responsive to

1   Request No. 181 consistent with his supplemental response, and may produce such documents in

2   redacted form as specified above with respect to Request No. 179.

3

4   Statements to the Media:  Request Nos. 190-192, 194-197 and 199

5        In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6   and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7   Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8   to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9   Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10  regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11  products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12  Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13  also contain admissions regarding the origin and conception of Bratz and statements relevant to

14  damages.

15       Larian contends that the requests are overbroad and unduly burdensome, particularly

16  because several of the requests seek publicly available information.  Further, Larian points out

17  that the court has already considered and rejected as overbroad a nearly identical request served

18  on MGA that called for all documents relating to any communications by MGA with any news

19  organization regarding the contested MGA products or the contested Mattel products.  Larian

20  contends that the same reasoning applies to the instant requests.

21       Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

22  199 is denied.  Although several of the requests encompass potentially relevant documents, the

23  requests are overbroad and encompass documents that have little to no relevance to the claims and

24  defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

25  sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

26  Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

27  or damages.

28  //

1    Furthermore, many of these overbroad requests seek publicly available information that is
2    readily accessible to Mattel for which Larian should not be burdened.  To the extent the requested
3    documents and information are not publicly available, such documents and information are
4    marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.
5    In either case, the burden and expense of searching for and producing responsive documents are
6    unjustified.

7
8    Communications With Mattel Employees:  Request No. 198

9        In Request No. 198, Mattel seeks all communications between Larian and any individual
10   while the individual was employed by Mattel.  Mattel contends that this request is directly
11   relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported
     burden of production.

12       Larian contends that the request is overbroad and unduly burdensome because it is
13   unrestricted as to time and subject matter.  Larian also points out that the court has previously
14   found a similar request overbroad.  Larian further contends that employees in the toy industry are
15   likely to maintain contacts with other toy manufacturers, and that a large corporation such as
16   Mattel is likely to have a high number of employees communicating with MGA or its officers,
17   which makes the request more unduly burdensome and unreasonable than it appears on its face.

18       Unlike other requests regarding communications, Request No. 198 is reasonably tailored
19   to the specific and numerous allegations in the case regarding alleged trade secret theft.  Although
20   the request is not limited by subject matter, it is limited in other respects to seek relevant
21   documents without imposing an undue burden.  The request is limited to communications
22   between Larian (and not MGA or persons acting on his behalf) and individuals employed at
23   Mattel.  The request is also limited to only those communications that took place while the
24   individuals were employed at Mattel.

25       Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's
26   allegations of trade secret theft.  The alleged trade secret theft began with Bryant's conduct in
27   1999 and continued to 2005.  Accordingly, Larian shall produce documents responsive to Request

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                        14

                                                          6        115

1  No. 198 that are limited to the time frame 1999 to 2005.

2

3  <u>Personal Financial Data:  Request Nos. 207-209 and 269</u>

4       In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5  or financial institutions and other banking relationships since January 1, 1999.  In Request No.

6  208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7  income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal

8  and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks

9  documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from

10  1999 to the present.

11       Mattel contends that Request No. 207 seeks information reasonably calculated to lead to

12  information showing the timing of payments to Bryant and others, which in turn is relevant to the

13  timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos.

14  208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial

15  condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to

16  information regarding the sources of Larian's income to determine whether they are attributable

17  to the alleged misconduct and thus subject to disgorgement.

18       Larian contends that the requested personal financial information is not relevant to the

19  claims or defenses at issue.  More specifically, Larian contends that neither the names of his

20  banks nor his gross income have any bearing upon either compensatory or punitive damages or

21  Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for

22  Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

23       Larian also contends that all three of the requests overlap substantially with requests

24  Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or

25  burden posed by these requests to him.  Further, Larian contends that the court has previously

26  found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered

27  no reason why the same result should not apply here.

28       Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

—n-- 6    116

1   requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2   several issues in the case.  For example, the requested information is likely to lead to information

3   regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4   the creation of Bratz.  The requested information is also likely to show Larian's income and net

5   worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are

6   unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial

7   information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8        Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9   Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein

10  and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

11  returns.

12  Storage Devices:  Request Nos. 222 and 224

13       In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14  to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15  delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a

16  request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17  electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer

18  hard drives and other storage devices.

19       Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20  ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard

21  drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22  states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23  create a routine right of direct access to a party's electronic information system."  See

24  Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for

25  an inspection of his electronic devices because there is no allegation that he improperly deleted

26  documents.

27       Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

6   117

With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to authorize the routine production of a party's electronic devices. Mattel attempts to justify Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer laptops; "wiping" information from the hard drives of Larian's computer laptops every six months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how these alleged instances of evidence destruction justify Request No. 222, other than to assert that it has a right to inspect Larian's storage devices to ensure that relevant information has not been deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222. Among other things, Request No. 222 encompasses every storage device that Larian has used to copy digital information relating to Bratz. Mattel does not need every CD and DVD containing copies of Bratz-related video and audio content, but that is what the request seeks.

Request No. 222 is also duplicative because it requests information that is sought in numerous other requests served on Larian as well as MGA. Mattel has served hundreds of requests for documents and communications relating to Bratz, Angel, and Bryant. To comply with the requests, Larian was required to search for documents in both hard-copy and electronic form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage devices.

Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims and defenses in the case, and therefore do not justify the burden of production on Larian.

Bryant's Storage Devices:  Request Nos. 225, 227 and 228

In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

1  receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2  Larian contends that the requests are improperly directed to him because he does not have

3  personal possession of Bryant's hard drive or storage devices, or other information about those

4  devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5  requests are overbroad and unduly burdensome for the reasons discussed above in connection

6  with Request Nos. 222 and 224.

7  Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8  denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9  MGA Hong Kong and MGA Mexico: Request Nos. 272 and 273

10  In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

11  Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

12  Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

13  produce documents sufficient to show the ownership of these entities.

14  Mattel contends that the requests seek information relevant to refute MGA Mexico's

15  personal jurisdiction defense, and which bear on whether the acts of Larian and others are

16  attributable to the entities. Mattel also contends that Larian's (or MGA's) ownership interest in

17  these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

18  inadequate because it would allow Larian to withhold contradictory information and conceal the

19  true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

20  the ownership of these entities at times when different allegedly wrongful acts took place and to

21  determine if the ownership structure changed as a means of concealing assets or concealing the

22  payments of commercial bribes.

23  Larian contends that these requests should not be made to him, but to the entities

24  themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

25  Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26  served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

27  burdensome, and that at most, he should only have to produce a list of owners.

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                          18

6   119

1    Mattel contends that Larian cannot avoid his duty to respond to these requests simply by
2    saying that the information is obtainable from another source.  Further, Mattel contends that
3    Larian has failed to establish that the requests are unduly burdensome.

4    Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied
5    pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable
6    from another source that is more convenient, less burdensome, or less expensive, namely MGA
7    Mexico and MGA Hong Kong.  The requests are also overbroad and unduly burdensome.

## IV. CONCLUSION

8
9    For the reasons set forth above, it is hereby ordered as follows:

10   1.    At meet and confer sessions held after the filing of this motion, Larian agreed to
     produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-
11   146, 213, 221 and 223.  Accordingly, Larian shall produce, without limitation, all non-privileged
12   documents that are responsive to these Requests.

13   2.    With respect to the remaining requests that are at issue in this motion, Larian shall:
14        A.    produce, without limitation, all non-privileged documents that are
15   responsive to Request Nos.  79, 180, 198 (for the time period 1999-2005), 207, 208 and
16   269; and

17        B.    produce, in accordance with his supplemental responses, non-privileged
18   documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and
19   209.

20        C.    Larian may produce documents responsive to Request Nos. 179, 180 and
21   181 in redacted form as provided herein.

22        D.    Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,
23   209, 222, 224, 225, 227, 228, 272 and 273.

24   3.    Larian shall produce all non-privileged documents that are required by this Order
25   that are in his possession, custody or control and that have not already been produced no later
26   than January 11, 2008.

27   4.    Larian shall produce a privilege log no later than January 15, 2008.

28

6        120

1    5.    Mattel's request for sanctions is denied.

2        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3    Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5    Dated: December 31, 2007

                                    HON. EDWARD A. INFANTE (Ret.)
6                                            Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | crna@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

_Sandra Chan_

Sandra Chan

6        122

**EXHIBIT 7**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   December 12, 2007

**NUMBER OF PAGES, INCLUDING COVER: 8**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Alisa Morgenthaler Lever, Esq.*<br>Christensen, Glaser, Fink, Jacobs,<br>Weil & Shapiro, LLP | 310.553.3000 | 310.556.2920 |
| **Jose R. Allen, Esq.**<br>Skadden Arps Slate Meagher & Flom LLP | 415.984.6400 | 415.984.2698 |

**FROM:**   Jon Corey

**RE:**   Mattel, Inc. v. Bryant

DEC 1 2 2007

**MESSAGE:**

Please see attached.

07209/2226918.1

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Johanna Lopez -10th | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | priscilla | | CONFIRMED? ☐ No ☐ Yes: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

EXHIBIT 7 PAGE 12-3

Job number        : 791                    *** SEND FAILED ***

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

| NEW YORK | LOS ANGELES | SAN FRANCISCO |
|---|---|---|
| 51 Madison Avenue, 22nd Floor | 865 South Figueroa Street, 10th Floor | 50 California Street, 22nd Floor |
| New York, NY 10010 | Los Angeles, CA 90017 | San Francisco, CA 94111 |
| (212) 849-7000 | (213) 443-3000 | (415) 875-6600 |
| Facsimile: (212) 849-7100 | Facsimile: (213) 443-3100 | Facsimile: (415) 875-6700 |

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:     December 12, 2007                    NUMBER OF PAGES, INCLUDING COVER: 8

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Alisa Morgenthaler Lever, Esq.* Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | 310.553.3000 | 310.556.2920 |
| *Jose R. Allen, Esq.* Skadden Arps Slate Meagher & Flom LLP | 415.984.6400 | 415.984.2698 |

FROM:     Jon Corey

RE:       Mattel, Inc. v. Bryant

MESSAGE:

Please see attached.

07202/2313913.1

| CLIENT #   7399 | ROUTE/RETURN TO:  Jessica Lever-10th | □ CONFIRM FAX □ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR:  Priscilla | CONFIRMED?  □ NO  □ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT 7 PAGE 124

# Group Send Report

```
Page      : 001
Date & Time: 12-12-2007   14:51
Line 1    : 2134433100
Line 2    :
Machine ID : QUINN EMANUEL
```

| Job number | : | 791 |
|---|---|---|
| Date | : | 12-12  14:48 |
| Number of pages | : | 008 |
| Start time | : | 12-12  14:48 |
| End time | : | 12-12  14:51 |

Successful nbrs.

    Fax numbers

        ☎2+14159842698

| Unsuccessful nbrs. | | Pages sent |
|---|---|---|
| Fax numbers | | |
| ☎2+13105562920 | | 000 |

EXHIBIT _7_ PAGE _125_

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO                 4528
RECIPIENT ADDRESS        78708#7208#13105552920
DESTINATION ID
ST. TIME                 12/12 15:15
TIME USE                 02'18
PAGES SENT               9
RESULT                   OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

| NEW YORK | LOS ANGELES | SAN FRANCISCO |
|---|---|---|
| 51 Madison Avenue, 22nd Floor | 865 South Figueroa Street, 10th Floor | 50 California Street, 22nd Floor |
| New York, NY 10010 | Los Angeles, CA 90017 | San Francisco, CA 94111 |
| (212) 849-7000 | (213) 443-3000 | (415) 875-6600 |
| Facsimile (212) 849-7100 | Facsimile: (213) 443-3100 | Facsimile: (415) 875-6700 |

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

**DATE:** December 12, 2007          **NUMBER OF PAGES, INCLUDING COVER: 8**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Alisa Morgenthaler Lever, Esq.*<br>Christensen, Glaser, Fink, Jacobs,<br>Weil & Shapiro, LLP | 310.553.3000 | 310.556.2920 |
| *Jose R. Allen, Esq.*<br>Skadden Arps Slate Meagher & Flom LLP | 415.984.6400 | 415.984.2698 |

**FROM:**   Jon Corey

**RE:**   Mattel, Inc. v. Bryant

**MESSAGE:**

EXHIBIT 7 PAGE 126

quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

December 12, 2007

**VIA FACSIMILE AND U.S. MAIL**

Jose R. Allen, Esq.
Skadden Arps Slate Meagher & Flom LLP
Four Embarcadero Center
San Francisco, California 94111

Re:   Bryant v. Mattel, Inc.

Dear Mr. Allen:

I write in response to your letter of December 6, 2007.

While Mattel is willing to be a signatory to the stipulation amending the protective order in *Larian v. Larian*, it is unnecessary. Mattel cannot violate either the *Larian v. Larian* protective order or any amendment thereto, as it does not possess documents subject to that protective order. The protective order governs only the parties to *Larian v. Larian* and only they can be heard to complain about violations of it. The purpose of the amendment is solely to ensure that no person containing evidence subject to that protective order can complain, as they currently are, that it prevents them from producing responsive documents when they can be produced under the protection of a different protective order. Nevertheless, I have now added Mattel as a signatory.

With respect to how documents should be designated, if at all, under the *Bryant v. Mattel* protective order, the stipulation is silent on this point because the inclusion of such language in the stipulation would be redundant. Under the *Bryant v. Mattel* protective order, both parties and third parties have the option of designating documents produced in *Mattel v. Bryant* as being subject to the protective order which, your colleague Mr. Kennedy observed, provided for stronger protections. *See Stipulated Protective Order and Order Thereon* ¶ 17. The existence of paragraph 17 makes the inclusion of designation language in the amendment to the *Larian v.*

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT 7 PAGE 127

*Larian* protective order unnecessary, redundant and potentially conflicting. Mattel used the word "may" in its proposed stipulation to leave in the hands of either the producing third parties or even non-producing parties, to determine what the appropriate designation--"Confidential" or "Confidential-Attorneys Eyes Only"--of produced documents and information should be under the *Bryant v. Mattel* Protective Order. To avoid any conflict, however, I have included in the amendment a reference to paragraph 17 of the *Bryant v. Mattel* Protective Order.

With respect to your concern about pre-production notice to third parties, I am not sure that this is an issue. I am not aware of, nor have you identified for me any information that you or your client are aware of that was produced in reliance upon the protective orders. I speculate, however, that MGA Entertainment, Inc., who you represent, may have done so. To address this issue, I will add MGA Entertainment, Inc. as a party to the stipulation. I have also added a mechanism addressing this issue. Please let me know, at your earliest convenience, of any additional third parties who produced information in reliance upon the protective orders.

Finally, with respect to an agreement of mutuality, Mattel will not use the fact that Mattel has produced documents subject to protective orders in other cases to withhold otherwise properly responsive documents from production here. Indeed, Mattel has produced documents to Bryant and MGA that Mattel has also produced pursuant to protective orders in other cases. As you point out, however, there may be instances in which persons who are not parties to this suit may have produced documents subject to protective orders in other cases in which Mattel has been a party. These persons have rights and the opportunity to be heard. Mattel cannot unilaterally waive those rights. Mattel will cooperate, however, in seeking a resolution to any such issue if it arises in the future.

To that end, I have attached a revised proposed stipulation. Please let me know if it is acceptable. If you have additional comments or questions, please call me to discuss so that we can get this wrapped up.

Best regards,

Jon Corey

JDC:jdc
07209/2323633.1

cc:   Alisa Morgenthaler-Lever, Esq.

07209/2323633.1                         2

EXHIBIT __7__ PAGE __128__

1    SKADDEN ARPS SLATE MEAGHER & FLOM LLP
       Thomas J. Nolan (Bar No. _____ )
2    300 South Grand Ave.
     Los Angeles, California 90071
3    Telephone:    (213) 687-5000
     Facsimile:    (213) 687-5600
4
     Attorneys for Defendant Isaac Larian
5
     CHRISTENSEN, GLASER, FINK, JACOBS,
6    WEIL & SHAPIRO, LLP
       Alisa Morgenthaler-Lever (Bar No. _____ )
7    10250 Constellation Boulevard, 19th Floor
     Los Angeles, California 90067
8    Telephone:    (310) 553-3000
     Facsimile:    (310) 556-2920
9
     Attorneys for Plaintiff Farhad Larian
10

11

12                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                              COUNTY OF LOS ANGELES

14   Farhad Larian,                         CASE NO. BC 301371

15              Plaintiff,                   STIPULATION ~~AND [PROPOSED] ORDER~~
                                             TO MODIFY PROTECTIVE ORDER; AND
16         vs.
                                             [PROPOSED] ORDER
17   Isaac Larian ,
                                             Date:    December ~~November~~ ___ , 2007
18              Defendant.                   Dept.:   46

19                                           Assigned to Hon. Marjorie Steinberg
                                             Dept. 46
20
                                             Filing Date:    August 25, 2003
21                                           Trial Date:     Not Applicable

22

23

24

25

26

27

28
07209/2323693.1 07209                        EXHIBIT __7__ PAGE __129__
09908.2

                                   STIPULATION TO MODIFY PROTECTIVE ORDER

1       WHEREAS, the parties to this action entered into a Protective Order that was

2   signed by the Honorable Rodney E. Nelson (Ret.) in Los Angeles County Superior Court,

3   Department 46, on September 23, 2004 (the "Protective Order," attached as Exhibit A);

4       WHEREAS, this action is no longer active, but the Protective Order survived the

5   termination of this action;

6       WHEREAS, Paragraph 3 of the Protective Order allows Isaac and Farhad Larian to

7   request that this Court modify the Protective Order at any time;

8       WHEREAS, Isaac Larian is a defendant in separate litigation entitled <u>Bryant v.</u>

9   <u>Mattel, Inc.</u>, United States District Court for the Central District of California, Case No. CV 04-

10   9049-SGL (consolidated with cases CV 04-9059 and CV 05-2727);

11       WHEREAS, document requests that Mattel served on Isaac Larian in <u>Bryant v.</u>

12   <u>Mattel</u> and subpoenas that Mattel served on third-party Farhad Larian and other third parties in

13   <u>Bryant v. Mattel</u> seek production of documents which Isaac Larian, Farhad Larian and other third

14   parties contend are subject to the Protective Order;

15       WHEREAS, a protective order in effect in <u>Bryant v. Mattel</u> (attached as Exhibit B)

16   protects the confidentiality of the documents covered under the Protective Order at least to the

17   same extent as the Protective Order does and <u>specifically</u> allows third parties to avail themselves

18   of the protections of the <u>Bryant v. Mattel</u> protective order; and

19       WHEREAS, the <u>undersigned</u> ~~parties herein~~ agree to modify the Protective Order

20   solely to allow Isaac Larian, Farhad Larian and any other third party who claims to possess

21   documents subject to the Protective Order to produce responsive documents with the protections

22   of the protective order in the <u>Bryant v. Mattel</u> action.

23       THEREFORE, <u>the undersigned, by and through their duly authorized counsel,</u>

24   ~~Isaac Larian and Farhad Larian~~ hereby agree as follows, subject to the Court's approval:

25       A.    The Protective Order is modified to allow Isaac Larian, Farhad Larian and

26   any third party possessing documents ~~which~~ <u>that</u> may be subject to the Protective Order to produce

27   such documents in <u>Bryant v. Mattel</u>.

28

07209/2323693.1072093/3
83908.2

-2-

EXHIBIT 7 PAGE 130

STIPULATION TO MODIFY PROTECTIVE ORDER

1   B.    Isaac Larian, Farhad Larian and any third party shall be allowed, if they so

2   elect, to designate and rely upon the protective order in effect in Bryant v. Mattel to maintain the

3   confidentiality of the documents subject to the ~~covered under the~~ Protective Order, as permitted by

4   Section 17 of the Protective Order in Bryant v. Mattel, which is incorporated herein by reference.

5   C.    Production of documents in Bryant v. Mattel which may be subject to the

6   Protective Order shall not be a breach of that Protective Order if such documents are made subject

7   to the protective order in effect in Bryant v. Mattel.

8   D.    The Protective Order is not hereby modified in any other way, and the

9   parties do not otherwise waive any of the protections of the Protective Order, which shall remain

10  in effect subject to this stipulation.

11  E.    If a party in Bryant v. Mattel requests or has requested production of

12  documents that a third party produced in Larian v. Larian in reliance upon the Protective Order,

13  then the person possessing such documents shall, within five (5) days of this amendment being "so

14  ordered" or within five (5) days after service of a request for such documents: (a) identify for the

15  requesting party the documents and the third party who produced the documents, and (b) notify

16  the third party who produced the documents that such documents are being sought to allow that

17  third party to move for a protective order.  If that third party does not apply for a protective order

18  within five (5) days of receiving notice of the request, then any objection by that party shall be

19  waived and the documents shall be designated as "Confidential" pursuant to paragraph 17 of the

20  Bryant v. Mattel protective order and produced to the requesting party.  This paragraph shall not

21  apply to MGA Entertainment, Inc. or its officers, directors, parents, subsidiaries or affiliates, given

22  its status as a party to the Bryant v. Mattel action and hereby consents to the production of

23  documents it may have produced in reliance on the Protective Order in Larian v. Larian.

24  F.    By agreeing to this stipulation, no party to Larian v. Larian and no signatory

25  to this stipulation, except as set forth herein, waives any rights afforded it under the Federal Rules

26  of Civil Procedure or any applicable privileges or protections

27  Respectfully submitted,

28

EXHIBIT 7 PAGE 131

-3-

STIPULATION TO MODIFY PROTECTIVE ORDER

1

2    DATED: December ___, 2007        SKADDEN ARPS SLATE MEAGHER & FLOM LLP

3

4                                     By_____
                                      Thomas J. Nolan
5                                     Attorneys for Defendant Isaac Larian

6    DATED: December ___, 2007        CHRISTENSEN, GLASER, FINK, JACOBS, WEIL &
                                      SHAPIRO, LLP
7

8                                     By_____
9                                     Alisa Morgenthaler-Lever
                                      Attorneys for Plaintiff Farhad Larian
10   DATED: December ___, 2007        SKADDEN ARPS SLATE MEAGHER & FLOM LLP

11

12                                    By_____
13                                    Thomas J. Nolan
                                      Attorneys for Non-Party MGA Entertainment, Inc.
14   DATED: December ___, 2007        QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
15

16

17                                    By_____
                                      Jon Corey
18                                    Attorneys for Non-Party Mattel, Inc.

19

20

21

22

23

24

25

26

27

28

STIPULATION TO MODIFY PROTECTIVE ORDER

# [PROPOSED] ORDER

IT IS HEREBY ORDERED THAT:

A.     The Protective Order is modified to allow Isaac Larian, Farhad Larian and any third party possessing documents that may be subject to the Protective Order to produce such documents in Bryant v. Mattel.

B.     Isaac Larian, Farhad Larian and any third party shall be allowed, if they so elect, to designate and rely upon the protective order in effect in Bryant v. Mattel to maintain the confidentiality of the documents subject to the Protective Order, as permitted by Section 17 of the Protective Order in Bryant v. Mattel, which is incorporated herein by reference.

C.     Production of documents in Bryant v. Mattel which may be subject to the Protective Order shall not be a breach of that Protective Order if such documents are made subject to the protective order in effect in Bryant v. Mattel.

D.     The Protective Order is not hereby modified in any other way, and the parties do not otherwise waive any of the protections of the Protective Order, which shall remain in effect subject to this stipulation.

E.     If a party in Bryant v. Mattel requests or has requested production of documents that a third party produced in Larian v. Larian in reliance upon the Protective Order, then the person possessing such documents shall, within five (5) days of this amendment being "so ordered" or within five (5) days after service of a request for such documents: (a) identify for the requesting party the documents and the third party who produced the documents, and (b) notify the third party who produced the documents that such documents are being sought to allow that third party to move for a protective order.  If that third party does not apply for a protective order within five (5) days of receiving notice of the request, then any objection by that party shall be waived and the documents shall be designated as "Confidential" pursuant to paragraph 17 of the Bryant v. Mattel protective order and produced to the requesting party.  This paragraph shall not apply to MGA Entertainment, Inc. or its officers, directors, parents, subsidiaries or affiliates, given its status as a party to the Bryant v. Mattel action and hereby consents to the production of documents it may have produced in reliance on the Protective Order in Larian v. Larian.

-5-

EXHIBIT 7 PAGE 133

STIPULATION TO MODIFY PROTECTIVE ORDER

F.    By agreeing to this stipulation, no party to Larian v. Larian and no signatory to this stipulation, except as set forth herein, waives any rights afforded it under the Federal Rules of Civil Procedure or any applicable privileges or protections

IT IS SO ORDERED:

DATED: December ___, November ___, 2007

_____
Hon. Marjorie Steinberg

EXHIBIT 7 PAGE 134

07209/2323601.1 07209/
03908.2

**EXHIBIT 8**

**quinnemanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

November 26, 2007

**VIA FACSIMILE**
**213-687-5600, 310-556-2920**

Thomas Nolan                                    Alisa Morgenthaler-Lever
Skadden, Arps, Slate, Meagher & Flom LLP        Christensen, Glaser, Fink, Jacobs, Weil &
300 South Grand Avenue                          Shapiro, LLP
Los Angeles, California 90071                   10250 Constellation Boulevard, 19th Floor
                                                Los Angeles, California 90067

Re:    Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Counsel:

We write to request that Farhad Larian, Isaac Larian and MGA Entertainment, Inc. agree to
modify the protective orders entered in *Larian v. Larian*, Los Angeles Superior Court Case No.
BC 301371, and in *Larian v. Larian*, ADRS Case No. 05-2096-ABH, to allow production of
documents responsive to Mattel's subpoenas relating to those disputes. Both protective orders
are attached.

The protective order in Case No. BC 301371 allows Farhad Larian and Isaac Larian to request
the court therein to modify the protective order. See ¶ 3. A proposed stipulation to this effect is
attached. Please note that Judge Nelson, who signed the protective order, has retired and Judge
Marjorie Steinberg replaced him in Department 46.

The protective order in ADRS Case No. 05-2096-ABH allows Farhad Larian, Isaac Larian and
MGA to agree in writing to forego the obligations imposed by that protective order so as to allow
production in this litigation. See ¶ 3.

Farhad Larian, Isaac Larian and MGA have no valid reason to refuse the modifications that
Mattel requests. Isaac Larian and MGA are parties to this litigation. Farhad Larian will be a

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-1100 FAX 858-812-1316

EXHIBIT *8* PAGE _135_

November 26, 2007

witness in this litigation. To date, however, Farhad Larian, Isaac Larian and certain third-parties have declined to produce documents, relying on these protective orders. While Mattel does not expect any party to disobey a proper order, it proposes that the confidentiality provided for under those protective orders can be made equally available by allowing the production of responsive documents in this action under the protection of the protective order operative here, which provides more protection than those protective orders. As Judge Infante has ruled on numerous occasions, the Protective Order in this litigation adequately protects private and confidential proprietary information, including by allowing third parties like Farhad Larian to rely on it.

Protection of such information is exactly why the judge and arbitrator in the above-referenced proceedings signed protective orders in the first place: the protective order in Case No. BC 301371 expressly states that its purpose is to protect documents that "contain confidential financial, commercial, personal or proprietary information (see ¶ A); and the protective order in ADRS Case No. 05-2096-ABH was intended to protect MGA's "private and confidential" business information (see ¶ 4.5). Indeed, Mattel has obtained documents indicating that MGA—not the parties to the arbitration—sought a protective order in the arbitration in order to protect its confidential proprietary information.

We trust that the Protective Order in effect here assuages any concerns about confidentiality that MGA may have. Absent agreement to modify the prior protective orders, Mattel will request that Judge Infante compel consent from the parties and/or that the court/arbitrator who signed the prior protective orders modify them accordingly. No court or arbitrator would condone the use a protective order issued under their power for an improper purpose, such as withholding relevant documents in separate litigation that has an arguably stronger Protective Order already in effect.

Please let us know by the close of business on Wednesday, November 28, 2007 whether Farhad Larian, Isaac Larian and MGA agree to these modifications, and provide us with the executed pages on the stipulation.

2



November 26, 2007


By countersigning below, Farhad Larian, Isaac Larian and MGA Entertainment, reflect their consent that documents responsive to Mattel's requests and subpoenas, which may be subject to the arbitration protective order, may be produced to Mattel under the protections of the protective order operative in this case without violating the arbitration protective order.

Best regards,

Jon Corey
07209/2303754.1


SO AGREED:


November ___, 2007        _____
                          Isaac Larian



November ___, 2007        _____
                          MGA Entertainment, Inc.



November ___, 2007        _____
                          Farhad Larian


3

EXHIBIT 8 PAGE 137

1  SKADDEN ARPS SLATE MEAGHER & FLOM LLP
   [Insert Attorneys]
2  300 South Grand Ave.
   Los Angeles, California  90071
3  Telephone:     (213) 687-5000
   Facsimile:     (213) 687-5600
4
   Attorneys for Defendant Isaac Larian
5
   CHRISTENSEN, GLASER, FINK, JACOBS,
6  WEIL & SHAPIRO, LLP
   [Insert Attorneys]
7  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
8  Telephone:     (310) 553-3000
   Facsimile:     (310) 556-2920
9
   Attorneys for Plaintiff Farhad Larian
10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                      COUNTY OF LOS ANGELES

13
   Farhad Larian,                          | CASE NO. BC 301371
14
                  Plaintiff,               | STIPULATION AND [PROPOSED] ORDER
15                                          | TO MODIFY PROTECTIVE ORDER
            vs.                             |
16                                          | Date:    November ____, 2007
   Isaac Larian ,                           | Dept.:   46
17                                          |
                  Defendant.               | Assigned to Hon. Marjorie Steinberg
18                                          | Dept. 46
                                            |
19                                          | Filing Date:   August 25, 2003
                                            | Trial Date:    Not Applicable
20

21

22

23

24

25

26

27

28                                          EXHIBIT __8__ PAGE _138_

07209/2303908.2

                              STIPULATION TO MODIFY PROTECTIVE ORDER

1       WHEREAS, the parties to this action entered into a Protective Order that was

2   signed by the Honorable Rodney E. Nelson (Ret.) in Los Angeles County Superior Court,

3   Department 46, on September 23, 2004 (the "Protective Order," attached as Exhibit A);

4       WHEREAS, this action is no longer active, but the Protective Order survived the

5   termination of this action;

6       WHEREAS, Paragraph 3 of the Protective Order allows Isaac and Farhad Larian to

7   request that this Court modify the Protective Order at any time;

8       WHEREAS, Isaac Larian is a defendant in separate litigation entitled Bryant v.

9   Mattel, Inc., United States District Court for the Central District of California, Case No. CV 04-

10  9049-SGL (consolidated with cases CV 04-9059 and CV 05-2727);

11      WHEREAS, document requests that Mattel served on Isaac Larian in Bryant v.

12  Mattel and subpoenas that Mattel served on third-party Farhad Larian and other third parties in

13  Bryant v. Mattel seek production of documents which Isaac Larian, Farhad Larian and other third

14  parties contend are subject to the Protective Order;

15      WHEREAS, a protective order in effect in Bryant v. Mattel (attached as Exhibit B)

16  protects the confidentiality of the documents covered under the Protective Order at least to the

17  same extent as the Protective Order does and allows third parties to avail themselves of the

18  protections of the Bryant v. Mattel protective order; and

19      WHEREAS, the parties herein agree to modify the Protective Order solely to allow

20  Isaac Larian, Farhad Larian and any other third party who claims to possess documents subject to

21  the Protective Order to produce responsive documents with the protections of the protective order

22  in the Bryant v. Mattel action.

23      THEREFORE, Isaac Larian and Farhad Larian hereby agree as follows, subject to

24  the Court's approval:

25      A.    The Protective Order is modified to allow Isaac Larian, Farhad Larian and

26  any third party possessing documents which may be subject to the Protective Order to produce

27  such documents in Bryant v. Mattel.

28

EXHIBIT 8 PAGE 139

07209/2303908.1

-2-

STIPULATION TO MODIFY PROTECTIVE ORDER

1    B.   Isaac Larian, Farhad Larian and any third party shall be allowed, if they so

2 elect, to designate and rely upon the protective order in effect in Bryant v. Mattel to maintain the

3 confidentiality of the documents covered under the Protective Order.

4    C.   Production of documents in Bryant v. Mattel which may be subject to the

5 Protective Order shall not be a breach of that Protective Order if such documents are made subject

6 to the protective order in effect in Bryant v. Mattel.

7    D.   The Protective Order is not hereby modified in any other way, and the

8 parties do not otherwise waive any of the protections of the Protective Order, which shall remain

9 in effect subject to this stipulation.

10

11 DATED: November ___, 2007        Respectfully submitted,

12                                 SKADDEN ARPS SLATE MEAGHER & FLOM LLP

13

14                                 By_____

15                                    Attorneys for Defendant Isaac Larian

16

17                                 CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP

18

19                                 By_____

20                                    Attorneys for Plaintiff Farhad Larian

21

22    IT IS SO ORDERED:

23 DATED: November ___. 2007

24

25

26                                 _____
                                   Hon. Marjorie Steinberg

27

28                                             _____ 8 ___ 140

07209/2303908.2

-3-

STIPULATION TO MODIFY PROTECTIVE ORDER

**ORIGINAL**

KAYE SCHOLER LLP
Larry R. Feldman, Bar Number 45126
Robert M. Turner, Bar Number 44075
J. Andrew Sjoblom, Bar Number 193369
1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067-6048
Telephone: (310) 788-1000
Fax: (310) 788-1200

Attorneys for Defendant
ISAAC LARIAN

**FILED**
LOS ANGELES SUPERIOR COURT
SEP 3 3 2004
JOHN A. CLARKE, CLERK
BY G. MASON, DEPUTY

**RECEIVED**
SEP 3 1 2004
E. Torres

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| FARHAD LARIAN, | CASE NO. BC 301371 |
| Plaintiff, | [Assigned to the Honorable Rodney E. Nelson] |
| v. | STIPULATION AND [PROPOSED] PROTECTIVE ORDER |
| ISAAC LARIAN and DOES 1 through 50, inclusive, | |
| Defendants. | |

THIS STIPULATION is made with reference to the following facts:

A.    Documents have been produced by non-parties Morad Zarabi and National Business Appraisers, LLC and have been marked as "ED" and/or "MZ." Some of these documents contain confidential financial, commercial, personal or proprietary information. These documents are identified on Exhibit "A". The documents and the information they contain are hereinafter collectively referred to as "Confidential Material."

B.    The parties want to protect the unauthorized use or disclosure of the Confidential Material. Plaintiff's agreement to this protective order is done as an accommodation to defendant and is not intended as an agreement that any information contained in Exhibit A meets the standard under California law for such protection.

NOW, THEREFORE, THE PARTIES HEREBY STIPULATE AND AGREE AS

FOLLOWS:

1.    This stipulation and protective order only applies to documents marked "ED" and/or "MZ" and shall not apply to or limit a party's use of documents or information (a) obtained by the party independently of the subpoenas heretofore by plaintiff Farhad Larian in this action, or (b) belonging to that party or containing its financial, commercial, personal or proprietary information.

2.    Persons obtaining access to "Confidential Material" specified in Exhibit A under or as a result of this Protective Order shall use the information only for preparation and trial of this lawsuit (including appeals and retrials, and/or any arbitration proceedings), and shall not use such information for any other purpose, including business, governmental, commercial, administrative, or judicial proceedings.  To that end, the parties agree that the Confidential Material specified in Exhibit A shall not be disclosed to other persons except pursuant to the terms of this Protective Order and the rules of law incorporated herein.

3.    Any party to this action may, at any time, request the modification or termination of this Protective Order.  Such a request may be granted by the Court only after due notice and hearing and upon a showing of good cause.

4.    Confidential Material specified in Exhibit "A" may only be disclosed to the parties hereto and to their counsel who have been advised of and agreed to be bound by this Protective Order; to the partners, associates, secretaries, paralegal assistants, and employees of said counsel who have been advised of and agreed to be bound by this Protective Order; and to court officials involved in this lawsuit (including court reporters, videographers operating recording equipment at depositions), and any special master, arbitrator or ADR personnel who the parties have agreed to and/or before whom the parties have been ordered to appear.  Confidential Material may also be disclosed to:

    a.    Any person designated by the Court in the interest of justice, upon such terms the Court may deem proper; and

    b.    Persons noticed for depositions; persons preparing as trial witnesses;

1

STIPULATION AND [PROPOSED] PROTECTIVE ORDER

EXHIBIT 8 PAGE 142

KAYE SCHOLER LLP

1  outside consultants; so-retained or experts retained for the purpose of assisting counsel
2  in the lawsuit; third parties engaged solely in one or more aspects of organizing, filing,
3  coding, converting, storing, or retrieving data or designing programs for handling of
4  data connected with the lawsuit, provided however, that in all such cases the
5  individual to whom disclosure is to be made under subparagraph (b) has been advised
6  of this Protective Order and has agreed to comply with it.

7      5.    Nothing contained in this Protective Order is intended to prevent or govern the
8  use of Confidential Material at trial.  In the event that the parties are unable to agree to the
9  procedures for the use of Confidential Material at trial, any party may take such action with
10  the Court as it deems necessary and appropriate to resolve the dispute.

11      6.    If a party intends to file or lodge with the Court Confidential Material, to the
12  extent applicable, the parties shall comply with the procedures set forth in California Rules of
13  Court 243.1-243.2 for records sealed or proposed to be sealed with the Court; and the
14  Confidential Material shall be placed in a sealed envelope or other container marked on the
15  outside with the title of this action, identification of each document within and a statement
16  substantially as follows:

17      Confidential Information - Subject to Protective Order.  This
18  envelope contains material filed [lodged] under seal for the purpose of this litigation only.  It shall not be opened by a person
19  other than the Court except by Court Order or by written stipulation of all parties filed with the Clerk of this Court, and is
20  otherwise subject to the provisions of the Protective Order entered in this action on [date].

21  If Confidential Material is to be part of the record on appeal or used in an original proceeding
22  under California Rule of Court Rule 56, the parties shall comply with California Rules of
23  Court 12.5 and 56(e).

24      7.    In the event that any question is asked at a deposition which, in the opinion of
25  counsel for any party, calls for the disclosure of Confidential Information specified in Exhibit
26  "A", the witness shall nevertheless answer such question fully and completely, provided that
27  those in attendance are persons qualified to receive the information pursuant to the terms of
28  this Order.  Counsel for the party claiming confidentiality shall designate those portions of

2

STIPULATION AND [PROPOSED] PROTECTIVE ORDER

SEP-22-2006 05:48     FIRST LEGAL          5135801157     P.004

8   143

**KAYE SCHOLER**

1   the deposition for which a claim of confidentiality is made at the deposition by making a
2   statement for inclusion in the deposition transcript, including specifying on the record the
3   beginning and ending portions of the deposition for which confidentiality is claimed, with
4   such portions thereafter being marked on the record by the Court Reporter and/or
5   videographer as contemplated below, and afterwards by notifying opposing counsel, in
6   writing, within 30 days after receiving the deposition transcript of the page and line of each
7   portion of the transcript deemed "Confidential."

8        In the event a party decides to designate testimony as "Confidential" not so designated
9   during the taking of the deposition itself, a party may give notice of additional testimony to
10  be designated as "Confidential" within the 30-day period after receipt of the deposition
11  transcript. The notice must include specific page and line designations. Absent a designation
12  as "Confidential" during the taking of the deposition or within the 30-day period specified
13  herein, testimony is not subject to this agreement. Until a specific designation as
14  "Confidential" is made by a party, testimony and evidence is not covered by this agreement.

15       As soon as reasonably possible, all such designated portions of the transcript shall be
16  marked with the legend "Confidential." If any portion of a deposition is designated as
17  "Confidential," then until expiration of the 30-day period or until such time as notification is
18  received, counsel and the reporter will treat the entire transcript as if it had been designated
19  as containing Confidential Information. If no party timely designates information as
20  confidential in a deposition, then none of the transcript or its exhibits with the exception of
21  those exhibits identified on Exhibit "A" of the Protective Order, will be treated as
22  confidential; if a timely designation is made, the confidential portions and the exhibits shall
23  be treated as confidential in the manner described in other parts of this Protective Order.

24  DATED: _____, 2004                    KAYE SCHOLER, LLP

25

26                                   By _____
27                                       Larry W. Feldman
                                        Attorneys for Defendant ISAAC LARIAN
28

3

STIPULATION AND [PROPOSED] PROTECTIVE ORDER

EXHIBIT  8  PAGE  144



1   DATED: August—, 2004                    HOWARTH & SMITH
2          September 20

3                                    By: _____
                                         Brian D. Bubb
4                                    Attorneys for Plaintiff, FARHAD LARIAN

5

6      IT IS SO ORDERED.

7   DATED: Sept 23 2004

8                                    Judge of the Superior Court
                                         RODNEY E. NELSON
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    4
                        STIPULATION AND [PROPOSED] PROTECTIVE ORDER

**EXHIBIT "A"**

1.    The Appraisal Report (BD2-163).

2.    October 16, 2000 Letter from Ellis Stern to National Business Appraisers and enclosures (BD164-178).

3.    Income Tax Returns of MGA for 1994 through 1999 (BD179-465).

4.    Audited Financial Statements of MGA for 1993 through 1998 (BD467-524).

5.    Trial Balances and similar MGA accounting data (BD525-642).

6.    Confidential reconciliations (MZ942-1948).

**KAYE SCHOLER**

5

STIPULATION AND [PROPOSED] PROTECTIVE ORDER

EXHIBIT _E_ PAGE _146_

00/00/2006          08:41          FIRST LEGAL SUPPORT      FAX (213) 250-1197

1                            PROOF OF SERVICE

2    STATE OF CALIFORNIA        )
                                )
3    COUNTY OF LOS ANGELES      )

4          I am employed in the County of Los Angeles, State of California. I am over the
     age of 18 and not a party to the within action; my business address is KAYE SCHOLER LLP,
5    1999 Avenue of the Stars, Suite 1700, Los Angeles, California 90067-6048P.

6          On September 21, 2004, I served the foregoing document described as:
     STIPULATION AND [PROPOSED] PROTECTIVE ORDER by placing a true copy thereof
7    enclosed in a sealed envelope addressed as follows:

8          Don Howarth, Esq.
           Suzelle M. Smith, Esq.
9          Brian D. Bubb, Esq.
           Robert D. Brain, Esq.
10         HOWARTH & SMITH
           800 Wilshire Boulevard, Suite 750
11         Los Angeles, California  900017

12   [  ]  BY FACSIMILE  The above-referenced documents (without exhibits and
           attachments thereto) were transmitted via facsimile transmission to the
13         addressee(s) as indicated above on the date thereof.  The transmission was
           reported as completed and without error.  Executed on September 21, 2004, at
14         Los Angeles, California.

15   [XXX] BY U.S. MAIL  (I am readily familiar with the firm's practice of collection and
           processing correspondence for mailing.  Under that practice it would be deposited
16         with U.S. Postal Service on that same day with postage thereon fully prepaid at
           Los Angeles, California in the ordinary course of business.  I am aware that on
17         motion of the party served, service is presumed invalid if postal cancellation date
           or postage meter date is more than one day after date of deposit for mailing in
18         affidavit.)  Executed on September 21, 2004, at Los Angeles, California.

19
     [  ]  BY FEDERAL EXPRESS  I am readily familiar with KAYE SCHOLER LLP's
20         business practice of collecting and processing items for pick-up and next
           business day delivery by Federal Express.  Under said practice, items to be
21         delivered the next business day are either picked up by Federal Express or
           deposited in a box or other facility regularly maintained by Federal Express in the
22         ordinary course of business on that same day with the cost thereof billed to KAYE
           SCHOLER LLP's account.  I placed such sealed envelope for delivery by Federal
23         Express to the offices of the addressee(s) as above on the date hereof following
           ordinary business practices.  Executed on September 21, 2004, at Los Angeles,
24         California.

25

26

27

28

                                    1

Exhibit  8  PAGE  147



[XXX]   **STATE.** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[   ]   **FEDERAL.** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

John Drobnick



DIANA M. TORRES (S.B. #162284)
PAULA E. AMBROSINI (S.B. #193126)
CARLOS M. LAZATIN (S.B. #229650)
O'MELVENY & MYERS, LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
email: dtorres@omm.com

DALE M. CENDALI (of counsel, not admitted in California)
O'MELVENY & MYERS, LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Attorneys for Third Party,
MGA Entertainment, Inc.

ARBITRATION BEFORE

ADR SERVICES, INC.

FARHAD LARIAN,

    Plaintiff,

    v.

ISAAC LARIAN,

    Defendant.

ADRS Case No.: 05-2096-ABH

[PROPOSED] PROTECTIVE ORDER

LA2:782144.1

EXHIBIT 6 PAGE 149

1.   **PURPOSES AND LIMITATIONS**

This arbitration will involve the disclosure of documents and information that should be used only for the purpose of prosecuting, defending, or attempting to settle this arbitration and for no other purpose, including any other dispute involving any Party hereto or any non-party hereto.  Accordingly, the following Protective Order is hereby imposed upon the parties to this arbitration, Isaac Larian and Farhad Larian, and their employees, consultants, retained experts, counsel and support staff (the "Parties").

2.   **SCOPE**

Protection is conferred by this Protective Order on all documents produced by third party MGA Entertainment, Inc. ("MGA") and MGA documents produced by any Party or third party  all information copied or extracted therefrom, all copies, excerpts, summaries, or compilations thereof, and all testimony presented to the arbitrator, and transcripts of such testimony from any current or former MGA employee or contractor pertaining to MGA's business.  ("Protected Material").

3.   **DURATION**

The obligations imposed by this Protective Order shall remain in effect during and after this arbitration and until the parties, Isaac Larian *and* Farhad Larian, and MGA agree otherwise, in writing, or an arbitrator or court order otherwise directs.

4.   **ACCESS TO AND USE OF PROTECTED MATERIAL**

4.1   **Basic Principles:**  The Parties may use Protected Material in connection with this case only for prosecuting, defending or attempting to settle this arbitration and may not use such material for any other purposes, including in connection with any other matters, including between the same parties.  Protected Material may be disclosed only to the categories of persons and under the conditions described in this Protective Order.  When the arbitration has been terminated, the Parties must comply with the provision of section 5 below (FINAL DISPOSITION).  Protected Material must be stored and maintained by the Parties at a location and in a secure manner that ensure that access is

EXHIBIT _8_ PAGE _150_

1   limited to the persons authorized and for the purposes permitted under this Protective

2   Order.

3       **4.2    Disclosure of Protected Material:**  Unless otherwise ordered by a court or

4   jointly permitted in writing by Isaac Larian *and* MGA, Protected Material may be

5   disclosed only to:

6           (a)    counsel of record in this arbitration and employees of said counsel to

7   whom it is reasonably necessary to disclose the information for this arbitration, and who

8   have specifically agreed to be bound by the terms of this Protective Order by executing

9   the undertaking attached hereto as Exhibit A;

10          (b)    experts to whom disclosure is reasonably necessary for this

11  arbitration, and who have specifically agreed to be bound by the terms of this Protective

12  Order by executing the undertaking attached hereto as Exhibit A;

13          (c)    the arbitrator and his personnel;

14          (d)    court reporters, their staffs, and professional vendors to whom

15  disclosure is reasonably necessary for this arbitration, and who have specifically agreed to

16  be bound by the terms of this Protective Order by executing the undertaking attached

17  hereto as Exhibit A;

18          (e)    witnesses in the arbitration to whom disclosure is reasonably

19  necessary, and who have specifically agreed to be bound by the terms of this Protective

20  Order by executing the undertaking attached hereto as Exhibit A; and

21          (f)    the author of the document or the original source of the information.

22      **4.3    Identifying Legend:**  Protected Material shall be appropriately identified

23  and marked with the legend "Confidential" or "Confidential – Attorneys Only."

24  Transcripts shall further include a statement substantially in the following form:

25          This transcript contains material subject to Protective Order.  The transcript may not

26          be used for any purpose other than this arbitration and its contents may not be

27          disclosed to anyone other than those persons permitted to access Protected Material

28          under the terms of the Protective Order.

LA2-782144.1                          - 3 -

EXHIBIT 8 PAGE 151

**4.4    Challenge to Designation of Protected Material:**  To the extent any Party wishes to challenge the designation of Protected Material, that Party shall first make a good faith attempt to confer with the other Party and MGA to determine whether they are amenable to a change in the designation of Protected Material.  In the event the Parties and MGA are unable to reach agreement, either Party may bring a challenge to the designation before the arbitrator, who shall rule on the designation consistent with the terms and principles of this Protective Order.

**4.5    Other Restrictions on Access to and Use of Protected Material:**  No party or person shall be permitted to share or disseminate the documents produced by MGA or the transcripts of these proceedings to others (including any preliminary, "rough," livenote version thereof) remove them from the arbitration, make copies of them, or inform third parties of their existence or content or otherwise disclose the same to anyone, unless compelled by law.

In short, this is a private proceeding; whatever may be disclosed about MGA's business, in privacy and confidence during the course of the arbitration, should remain private and confidential both during – and after – the arbitration.

**5.    FINAL DISPOSITION**

Unless otherwise ordered or jointly agreed in writing by Isaac Larian, Farhad Larian and, MGA (to the extent the Protected Material pertains to MGA or MGA's products or property), within 10 days after the final termination of this arbitration and any appeal (or, if no notice of appeal is filed, the deadline for filing a notice of appeal), all Protected Material must be returned to its original source or destroyed, including all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material.  Whether the Protected Material is returned or destroyed, each Party must submit a written certification to the other Party, *and* the person or entity from whom the Protected Material was secured or subpoenaed, by the 10 day deadline that identifies (by category, where appropriate) all of the Protected Material that was returned or destroyed and that affirms that the Party has not retained any copies, abstracts,

LA2:782144.1

- 4 -

compilations, summaries or other forms or reproducing or capturing any of the Protected Material. Notwithstanding this provision, counsel of record for each Party is entitled to retain an archival copy of all pleadings, motion papers, legal memoranda, correspondence or attorney work product. Any such archival copies that contain or constitute Protected Material, however, shall otherwise remain subject to this Protective Order.

**6.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party is served with a subpoena or an order issued in other litigation that would compel disclosure of any Protected Material, the Party receiving the subpoena must notify the other Party *and* the person or entity from whom the Protected Material was secured or subpoenaed, in writing, immediately and in no event more than two business days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

The Party receiving the subpoena also must immediately inform, in writing, the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Protective Order. In addition, the Party receiving the subpoena must deliver a copy of this Protective Order promptly to the Party in the other action that caused the subpoena or order to issue.

The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and afford the Parties in this case *and* the person or entity from whom the Protected Material was secured or subpoenaed, an opportunity to try to protect whatever confidentiality interest such Party may have in the court from which the subpoena or order issued.

SO ORDERED:

DATED: 11/16/05                          _____

ARBITRATOR

UNDERTAKING RE
PROTECTIVE ORDER

## UNDERTAKING OF _____

I, _____, declare:

My address is _____

My present occupation is _____

1.    I have received a copy of the Protective Order operative in this action, ADRS Case No. 05-2096-ABH.  I have carefully read and understand the provisions of the Protective Order.

2.    I will comply with all of the provision of the Protective Order.  I will hold in confidence, and will not disclose to anyone other than those persons specifically authorized by the Protective Order, and will not copy or use except for the proceedings concerning the matters in issue between the parties, any and all Protected Material that I receive.

Executed this ____ day of _____, at _____.  I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

_____

LA2:982148.1

Exhibit 8 page 154

**EXHIBIT 9**

Westlaw.

12/23/06 ABCNIGHTLINE (No Page)

12/23/06 ABC Nightline (Pg. Unavail. Online)
2006 WLNR 22434503

ABC Nightline
Copyright 2006 American Broadcasting Company

December 23, 2006


NIGHTLINE


[SHOW: ABC Nightline] [AIRDATE: 12/22/06] [AIRTIME: 23:35] [ANCHOR: MARTIN BASHIR]
[ANCHOR LOCATION: NEW YORK, NY USA] [STORY: NIGHTLINE]

TOPIC:

CONTENT:

GRAPHICS: NIGHTLINE

GRAPHICS: BRAWL IN THE DOLLHOUSE

MARTIN BASHIR (ABC NEWS): Tonight on 'Nightline,' brawl in the dollhouse. After
almost 50 years of domination, Barbie is facing brash new competition from the
Bratz dolls. Billions of dollars are on the line. It's a toy story where nobody
is playing nice.

GRAPHICS: CHRISTMAS JOURNEY

MARTIN BASHIR (ABC NEWS): A Christmas journey. Retracing the root historians say
Joseph and Mary would have taken from Nazareth to Bethleham. The dangers, the
difficulties, then and today.

GRAPHICS: FANTASY VS REALITY

MARTIN BASHIR (ABC NEWS): Fantasy versus reality. It seems like the perfect gift
for a romantic holiday season. So why do so many of us get it wrong? Tonight, we
take you inside one store that thinks it has the answer.

MATT NEELY (STOCKING FELLA): The 34B should look good.

ANNOUNCER: From the global resources of ABC News, with Terry Moran in Washington,
Martin Bashir and Cynthia McFadden in New York City, this is 'Nightline,' December
22nd, 2006.

GRAPHICS: NIGHTLINE: DECEMBER 22, 2006

REPORTER: JOHN BERMAN
REPORTER LOCATION: LOS ANGELES, CA USA

TOPIC:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 9 PAGE 155

M 0082148

Case 2:04-cv-09049-DOC-RNB   Document 1460-4   Filed 01/04/08   Page 68 of 101   Page ID #:16285

CONTENT: BARBIE, BRATZ, MATTEL, MICRO GAMES OF AMERICA, CHUCK SCOTHON

MARTIN BASHIR (ABC NEWS): (Off-camera)  Good evening.  Many of us have spent at least part of today rushing around the shops looking for that perfect Christmas present particularly for our children.  Toys are now big business.  Almost $11 billion will be spent on them during the holiday season alone.  And nowhere is the business more competitive than in the world of dolls.  Yes.  Barbie has long been the biggest-selling toy doll of all, but now there's a serious challenger.  And in the fight to be number one nobody's backing down.  Here's ABC's John Berman.

JOHN BERMAN (ABC NEWS): (Voiceover)  In this corner, measuring nine inches tall with big eyes and even bigger bling, the challenger, Bratz.  And in this corner, with flowing blond hair and impossibly disproportionate bust, a 47-year undisputed, undefeated champion from Mattel, Barbie.  Now you might think the world of dolls isn't the kind of place for a knock down, drag out brawl but you'd be wrong.

ISAAC LARIAN (CEO: Ken is not gonna save Barbie.  Barbie is not gonna save Barbie.  And the leadership that they have at Mattel right now, it's not gonna save Barbie.

JOHN BERMAN (ABC NEWS): (Off-camera)  You sound like a linebacker on a football team.  You're like taunting Mattel.

ISAAC LARIAN (CEO: It's good.  It's good for the business.

JOHN BERMAN (ABC NEWS): (Off-camera)  It's good?  Trash talking in the doll business is good?

ISAAC LARIAN (CEO: I'm not trash talking.  I'm telling - I'm talking about the facts.

JOHN BERMAN (ABC NEWS): (Voiceover)  Meet Isaac Larian.  The seemingly nice man who wants to pummel Barbie.  He is the CEO of Micro Games of America, which makes the Bratz doll.  He might not strike you as the doll kind of guy.  He came to the US from Iran with nothing.

ISAAC LARIAN (CEO: I came here in 1971 with a one-way ticket and $750 in my pocket and a big American dream.  And I have lived the American dream.

JOHN BERMAN (ABC NEWS): (Voiceover)  Larian went from washing dishes to building a toy company to the American dream on steroids.  Largely due to this big-eyed, big-headed cartoonish doll.  When Larian first saw the Bratz design in 2001, he thought they looked like aliens.

JOHN BERMAN (ABC NEWS): (Off-camera)  Do you still they look like aliens?

ISAAC LARIAN (CEO: No.  I think now they look beautiful.  I've grown to like them.

JOHN BERMAN (ABC NEWS): (Voiceover)  Last year's $2 billion in sales can make many things beautiful.  Larian now says Bratz has a 40% market share and is the number two doll in the US market.  Number two for now.  Larian claims his Bratz girls are breathing down the lanky plastic neck of number one.  That would be Barbie.

JOHN BERMAN (ABC NEWS): (Off-camera)  What's wrong with Barbie?

ISAAC LARIAN (CEO: It's time for her to retire.  She's been around for too long.

JOHN BERMAN (ABC NEWS): (Voiceover)  And you want to help Barbie retire?

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

M 0062149

EXHIBIT 9 PG 156

ISAAC LARIAN (CEO: Yes, I would help her retire.  I would throw a party for her.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): He's welcome to throw a party for Barbie any time he wants, but it won't be a retirement party. She has been and will remain the number one fashion doll in the industry.

JOHN BERMAN (ABC NEWS): (Voiceover)  Meet Chuck Scothon.  A senior Mattel executive and former high school offensive lineman.  His product is the long-legged goliath of the toy business.  Since she was first created in 1959, Barbie has been an icon among icons with almost absurd success.  One study found that 90% of American girls between 3 and 10-years-old owns a Barbie doll.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): Now, we're traveling through the world of fairytopia.

JOHN BERMAN (ABC NEWS): (Voiceover)  Scothon doesn't like to talk about Bratz.  Let alone the fact that they might pose a challenge.

JOHN BERMAN (ABC NEWS): (Off-camera)  How was it, do you think, this become a story?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): I think a lot of people like to talk about the underdog and the leadership positions.  I think at the end of the day it's really about making more out of something than there really is.

JOHN BERMAN (ABC NEWS): (Voiceover)  But last year, Barbie might have started to show her age.  Sales dropped 13%, just as Bratz were getting white hot.

JOHN BERMAN (ABC NEWS): (Off-camera)  Is Barbie in danger?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): Not in the least. Barbie has been and will continue to be the number one fashion doll.

JOHN BERMAN (ABC NEWS): (Voiceover)  Barbie has rebounded a bit this year, but Isaac Larian is not impressed.  He says he has the key to cool.  A multicultural doll with the edgy sassy attitude girls want these days.

ISAAC LARIAN (CEO: The kids look at Bratz dolls and they think they are teenagers. And we ask them how old do you think Bratz dolls are?  They say they are teenagers. And when they look at Barbie doll they think it's old mom.

JOHN BERMAN (ABC NEWS): (Off-camera)  They think mom when they look at Barbie dolls?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): What I would suggest and say to that is, first of all if Barbie, for some girls, reminds them of their mothers, I would think of nothing better.  The most important job a woman can have in many ways is being a mom.

JOHN BERMAN (ABC NEWS): (Voiceover)  There is no mistaking a Bratz doll for a mom.

JOHN BERMAN (ABC NEWS): (Off-camera)  I look at that Bratz doll.  She's wearing, you know, the leopard skin top, she's got the sequins, she's got the hairs, I mean, you know, people have compared them to street walkers.  They look a little, you know, trashy.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ISAAC LARIAN (CEO: They don't look trashy to me.  And this is - I think trashy is in the eye of the adults.  When we show these to the little girls, and we have done that over and over, everybody said they're beautiful.  They never say they look like a streetwalker.

JOHN BERMAN (ABC NEWS): (Voiceover)  Barbie is clearly going for a different image. What image, you ask?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): First and foremost, I would say the Barbie doll is truly based on some great values for little girls. The courage, inspiration, imaginative play.

JOHN BERMAN (ABC NEWS): (Voiceover)  Whatever that means exactly, Barbie is famous for having careers like Doctor Barbie and Astronaut Barbie.  The Bratz dolls? Well, they like...

CARTOON VOICEOVER (GROUP): Shopping.

JOHN BERMAN (ABC NEWS): (Voiceover)  This is their motto.

ISAAC LARIAN (CEO: The girls with the passion for fashion.

JOHN BERMAN (ABC NEWS): (Off-camera)  The girls with the passion for fashion.

ISAAC LARIAN (CEO: Right.

JOHN BERMAN (ABC NEWS): (Off-camera)  What's that about?

ISAAC LARIAN (CEO: They have good fashion.  It's okay to look good.  It's okay, who said that you have to, who said that girls don't have to look good?

JOHN BERMAN (ABC NEWS): (Off-camera)  And Barbie doesn't look good?  I could tell you, there are a lot of people who think Barbie looks good.

ISAAC LARIAN (CEO: I don't know.  The consumers who are buying Bratz doll don't think Barbie is good.

JOHN BERMAN (ABC NEWS): (Voiceover)  If all this is true why hasn't Bratz yet overtaken Barbie as number one?  According to Larian...

ISAAC LARIAN (CEO: We would have beaten them up this year and year before if they had not engaged in, what I call, really unfair competition.

JOHN BERMAN (ABC NEWS): (Off-camera)  Really unfair competition?  Those are fighting words.

ISAAC LARIAN (CEO: They are fighting words.

JOHN BERMAN (ABC NEWS): (Voiceover)  The Barbie-Bratz battle has moved beyond the Barbie dream house to the courthouse.  Round one.  Mattel filed a lawsuit alleging that the designer of the Bratz concept came up with the idea when he was working at Mattel.  Round two, Isaac Larian sued back saying that Mattel tried to corner the market on doll hair, and more seriously that Mattel ripped off the Bratz concept for a new line of Barbie dolls.  The MyScene dolls.

JOHN BERMAN (ABC NEWS): (Off-camera) This is, the MyScene Barbies are what has, to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

M 0062151

some extent, they're in the center of a little bit of a controversy now because Bratz says these look just like their dolls.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): Okay.

JOHN BERMAN (ABC NEWS): (Off-camera)  I mean, don't you see the resemblance between MyScene Barbie and the Bratz doll?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): What we see is an evolution to the Barbie brand.  And again, the Barbie brand is made up of dolls that target girls of every age because it's really an evolution of where the Barbie doll has been with a little bit more animated look, but not necessarily something that's been inspired by the competition at all.

JOHN BERMAN (ABC NEWS): (Voiceover)  The cases are still pending, but both companies say they are confident they will win the legal battle, though they say it differently.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): I'm not really gonna talk about the legal piece of this.  I have all the confidence in the world that the justice system and that, that our attorneys can work through those issues.

ISAAC LARIAN (CEO: When we're done with Mattel, we will get them for billions of dollars, not only for this, but for defamation.

JOHN BERMAN (ABC NEWS): (Voiceover)  Who will prevail in this doll brawl?  It's one thing to be hot.  Bratz are hot, but another to be iconic.

ISAAC LARIAN (CEO: We're gonna become number one.  I promise you that.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): I can't speak to his guarantee.  What I can speak to is I believe that Barbie will continue to be the number fashion doll around the globe.

JOHN BERMAN (ABC NEWS): (Off-camera)  We're talking about dolls.  I mean, shouldn't everyone be able to play nice?

ISAAC LARIAN (CEO: They have gotten away too much with bullying everybody around.  And somebody has to stand up to them.  I will.

JOHN BERMAN (ABC NEWS): (Off-camera)  So you're gonna fight them on the schoolyard?

ISAAC LARIAN (CEO: I'm gonna fight, I'm gonna, not in the school schoolyard.  I'm gonna fight them in the courthouse.

JOHN BERMAN (ABC NEWS): (Off-camera)  And with this thing?

ISAAC LARIAN (CEO: With this thing and many other things.  But all 100% the old American fashion way.

JOHN BERMAN (ABC NEWS): (Voiceover)  Merry Christmas.  I'm John Berman for 'Nightline" in Los Angeles.

MARTIN BASHIR (ABC NEWS): (Off-camera)  The doll wars in a store near you.

GRAPHICS: ROAD TO BETHLEHEM

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12/23/06 ABCNIGHTLINE (No Page)                                          Page 6

MARTIN BASHIR (ABC NEWS): (Voiceover)  And just ahead on 'Nightline," retracing the
journey that has inspired millions for centuries.  In the footsteps of Joseph and
Mary.

GRAPHICS: STOCKING FELLAS

MARTIN BASHIR (ABC NEWS): (Voiceover)  And stocking fellas.  One store's solution
to the challenge of buying lingerie.  It's a 'Sign of the times."

ANNOUNCER: ABC News 'Nightline," brought to you by...

COMMERCIAL BREAK

REPORTER: WILF DINNICK
REPORTER LOCATION: NAZARETH, ISRAEL

TOPIC:

CONTENT: CHRISTMAS STORY, CHURCH OF NATIVITY, JESUS, MARY, JOSEPH, ISRAEL

MARTIN BASHIR (ABC NEWS): (Off-camera)  It's easy and commonplace to sentimentalize
the Christmas story.  Mary and Joseph, traveling for days on a donkey from their
home in Nazareth to Bethlehem.  Mary eventually giving birth to Jesus in a stable
because there was no room for them at the inn.  It wasn't an easy journey back
then, but imagine making the same trek today in 2006.  Here's ABC's Wilf Dinnick.

WILF DINNICK (ABC NEWS): (Voiceover)  A heavily pregnant woman, traveling across
deserts, through ancient cities and river crossings.  The story of a trip inspiring
Christians around the world.  The gospel according to Luke says it began in
Nazareth, a city where it's believed an angel told Mary she would have a son named
Jesus.

WILF DINNICK (ABC NEWS): (Off-camera)  Today, Nazareth is a city of about 70,000
people.  But back in Joseph and Mary's day, it was only a small village of about
1,000.  Now, to get to Bethlehem, it's actually only 65 miles, as the crow flies
but Joseph and Mary, they had a complicated route.  We're gonna take the exact same
route.  Well, they had a donkey.  We've got this car.

WILF DINNICK (ABC NEWS): (Voiceover)  The Bible does not have details of the
journey.  But historians told us, Mary and Joseph probably did not take the direct
way to Bethlehem because then, like today, the Middle East was a complicated,
sometimes dangerous, place.  From Nazareth they headed east to the Jordan River to
avoid hostile territory controlled by the Samaritans who hated Jews.  They crossed
the river by foot by the ancient city of Bet Sha'an.  Then through the Jordan
Valley, land that was controlled by Jewish kings, back into Israel, over the Jordan
River again and through the ancient city of Jericho passed Jerusalem and then on to
Bethlehem.  Steve Pfann sees similarities between today and 2,000 years ago.

STEPHEN PFANN (PRESIDENT): There is an interesting parallel that can be drawn with
border crossings, and police at the border, soldiers at the border, questions of
taxation and other types of things put more into a modern context.

WILF DINNICK (ABC NEWS): (Voiceover)  So, we drove from Nazareth to the Jordan
River.  It was in shallow areas like this where Mary and Joseph simply walked
across the river.

ISRAELI SECURITY PERSONNEL (MALE): But you don't understand.  Hey, I'm telling you,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

- 9   160

M 0062153

12/23/06 ABCNIGHTLINE (No Page)                                    Page 7

there is a problem.

WILF DINNICK (ABC NEWS): (Voiceover)  But today, crossing the Jordan is not so
simple.  We were greeted by Israeli security.

WILF DINNICK (ABC NEWS): (Off-camera)  The security here is so tight in fact that
they won't even let us shoot here, even though we have permission.  This is the
Jordan Valley and this as far as we can come here because this is now an
international border.

WILF DINNICK (ABC NEWS): (Voiceover)  So from here on in, it was hidden cameras
only.  Passport checks, departure tax and duty-free.

WILF DINNICK (ABC NEWS): (Off-camera)  And then we have to get on a bus to make the
very short trip from Israel to Jordan.  This is how you have to do it in 2006.

WILF DINNICK (ABC NEWS): (Voiceover)  I did manage to sneak a few shots as we
crossed the Jordan River.  On the other side, Jordanians were also nervous about
our cameras.

WILF DINNICK (ABC NEWS): (Off-camera)  We face yet another delay here.  This is how
on the Jordanian side and the security here says we can't actually use the cameras,
even though we applied for permission weeks ago, they somehow have lost our
permission.  So we're trying to go down to the Jordan Valley now, as quickly as we
can, and then we'll cross over to the Israeli side.

WILF DINNICK (ABC NEWS): (Voiceover)  The Jordan Valley is flat, perfect for
traveling.  In Joseph and Mary's day there would have been hardly anything here.
Today, plenty of busy Arab towns.

WILF DINNICK (ABC NEWS): (Off-camera)  Okay, let's go in.  A lot has changed over
the last 2,000 years but one thing that has remained the same is the type of bread
made almost exactly the same way as when Joseph and Mary made their journey.

WILF DINNICK (ABC NEWS): (Voiceover)  Then back into Israel, just before the border
closes.

WILF DINNICK (ABC NEWS): (Off-camera)  We're now gonna cross the Jordan River for
the second time here, where Mary and Joseph would have waded across on their way to
Bethlehem.

WILF DINNICK (ABC NEWS): (Voiceover)  Then on to the ancient town of Jericho, it is
Palestinian and the Israeli army demands special ID to enter.

WILF DINNICK (ABC NEWS): (Off-camera)  Could I get a falafel with hummus and pita?
Pita, yeah.  Okay.

WILF DINNICK (ABC NEWS): (Voiceover)  This was a chance for Mary and Joseph to rest
before the final, grueling leg of the trip, which was a treacherous road that was
yet again blocked for us by the Israeli army.

WILF DINNICK (ABC NEWS): (Off-camera)  This is the part of the trip we cannot do by
car.  This is the ancient route between Jericho and Bethlehem.  The silence here is
amazing, the view is stunning, but it must have been a daunting part of the journey
for Mary and Joseph.

WILF DINNICK (ABC NEWS): (Voiceover)  The last stretch of the journey that Mary and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Joseph took into Bethlehem is now impossible.  Blocked by Israel's security wall. Even Bethlehem itself is cut off by the wall.  We had to drive through this gate controlled by Israeli soldiers.

WILF DINNICK (ABC NEWS): (Off-camera)  We finally arrive in Bethlehem, and that's the church of the nativity behind us.  Now our trip took 15 hours, we crossed two international borders and dozens of military checkpoints.  Joseph and Mary's trip took about a week.

WILF DINNICK (ABC NEWS): (Voiceover)  But on our trip, we met at least one historian who believes Joseph and Mary's journey never happened.  The gospel according to Luke says the couple made the trip to Bethlehem for a Roman census, but historians now know there was no census at the time.

REVEREND JEROME MURPHY-O'CONNOR (ECOLE BIBLIQUE): I have no problem with the divinity of Christ.  I have no problem with his birth in Bethlehem.  It's just the colorful little bits that writers, storytellers, felt inclined to add.  These, we can legitimately question.

WILF DINNICK (ABC NEWS): (Voiceover)  He also believes, like many other historians, the couple already lived in Bethlehem and went to Nazareth later to look for work. But don't tell that to anyone here.  In the Church of the Nativity, in this small spot where it's believed Mary gave birth to Jesus.  For the faithful, a miracle, after such a grueling journey.

REVEREND JEROME MURPHY-O'CONNOR (ECOLE BIBLIQUE): It's an extremely good yarn, and that's why it has survived because people prefer good yarns to the truth.

WILF DINNICK (ABC NEWS): (Voiceover)  And it is a good story.  And for us, an amazing journey.  Wilf Dinnick for "Nightline" in Bethlehem.

MARTIN BASHIR (ABC NEWS): (Off-camera)  The Christmas journey then and now.  And when we come back, Santa's little helpers like you've never seen them before.  It's a "Sign of the Times."

GRAPHICS: SIGN OF THE TIMES

COMMERCIAL BREAK

ANNOUNCER: 'Nightline" continues from New York City with Martin Bashir.

REPORTER: NICK WATT
REPORTER LOCATION: LONDON, ENGLAND

TOPIC:

CONTENT: LINGERIE, STOCKING FELLA, MARKS AND SPENCER, MYLA

MARTIN BASHIR (ABC NEWS): (Off-camera)  It seems like the perfect gift, the sexy little outfit for the one we love this Christmas.  If only it were that simple. According to experts, men are simply hopeless at choosing lingerie.  So now, a department store in Britain is employing Santa's little helpers to guide men away from any lingerie land mines and, according to ABC's Nick Watt, it's a "Sign of the Times."

MATT NEELY (STOCKING FELLA): (Inaudible) nice, actually.  You guys doing okay? Finding everything you want?  Yeah?

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12/23/06 ABCNIGHTLINE (No Page)                                          Page 9

CUSTOMER (MALE): Yeah, we're fine.

CUSTOMER (FEMALE): Yes, thank you.

CUSTOMER (MALE): Thank you, sir.

MATT NEELY (STOCKING FELLA): Give me a shout if you need any more help.

NICK WATT (ABC NEWS): (Voiceover)  Here at Marks and Spencer they noticed a lot of lingerie returned by women after Christmas.  The problem?  Men were buying it. Matt Neely is part of the solution.

MATT NEELY (STOCKING FELLA): We were given all sorts of training about the styles of bra and what function it performs in terms pushing it together or lifting up, or squashing it down.

MATT NEELY (STOCKING FELLA): There we are.

NICK WATT (ABC NEWS): (Voiceover)  Two hundred stocking fellas were sent out to help hapless husbands.

MATT NEELY (STOCKING FELLA): That's quite sweet.

CUSTOMER (MALE): Mm-hmm.

MATT NEELY (STOCKING FELLA): Okay?

CUSTOMER (MALE): No.

MATT NEELY (STOCKING FELLA): You know, if the guys are wandering around not really know what they're doing, or kind of skirting around the outside too afraid to step in.

NICK WATT (ABC NEWS): (Voiceover)  He helps the unromantic.

NICK WATT (ABC NEWS): (Off-camera)  Do you always buy underwear for Christmas?

CUSTOMER (MALE): No.

NICK WATT (ABC NEWS): (Off-camera)  So why this year?

CUSTOMER (MALE): Because I've run out of ideas.

MATT NEELY (STOCKING FELLA): Yeah.

NICK WATT (ABC NEWS): (Voiceover)  He helps the clueless.

MATT NEELY (STOCKING FELLA): What color are you looking for?

CUSTOMER (MALE): Well...

NICK WATT (ABC NEWS): (Voiceover)  He even helps those who think they know better.

NICK WATT (ABC NEWS): (Off-camera)  Do you have the right size?

CUSTOMER (MALE): I have the right size, yeah.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9    163    M 0062156

NICK WATT (ABC NEWS): (Off-camera)  Color?

CUSTOMER (MALE): Well, color is my, my choice really, actually.

MATT NEELY (STOCKING FELLA): Hopefully, the presence of another man in the department will put them at ease.

NICK WATT (ABC NEWS): (Off-camera)  Now, this is Myla, an upmarket lingerie boutique where they have a very different philosophy.  Here, they only employ woman.

TAMARA DAVIES (MANAGER: I would say 75% of my customers are men.

NICK WATT (ABC NEWS): (Off-camera)  Are men?

TAMARA DAVIES (MANAGER: Are men.  Male.

NICK WATT (ABC NEWS): (Voiceover)  Men, like Anatoly (PH).

TAMARA DAVIES (MANAGER: Do you know what she likes?  Do you know what color?

CUSTOMER (MALE): Colors, yeah, yeah.

TAMARA DAVIES (MANAGER: Size?

CUSTOMER (MALE): Size, yeah.  I think, it's a must if you - you have to know your woman.

NICK WATT (ABC NEWS): (Voiceover)  But even at Myla, some men aren't quite so sure about the size.

TAMARA DAVIES (MANAGER: So they're like this, or, I mean, as a woman, you know, female working here, we have men come in and said, 'She's your size, what size are you?"

NICK WATT (ABC NEWS): (Voiceover)  So, there's one bonus of a female assistant but it's not male bonding.

NICK WATT (ABC NEWS): (Off-camera)  And how do you put them at ease?

TAMARA DAVIES (MANAGER: Smiling, 'Hello, how are you today?"  Talk about the weather.

NICK WATT (ABC NEWS): (Off-camera)  Bit of humor?

TAMARA DAVIES (MANAGER: A bit of humor, yes.  We do that.

NICK WATT (ABC NEWS): (Off-camera)  Do you flirt a little bit?

TAMARA DAVIES (MANAGER: Yes, a little.

NICK WATT (ABC NEWS): (Off-camera)  Apparently a lot of men end up buying two pairs, something safe and something saucy that they're both gonna enjoy.

NICK WATT (ABC NEWS): (Voiceover)  As Bridget Jones found out in the movie, safe can also be sexy.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CLIP FROM "BRIDGET JONES'S DIARY"

HUGH GRANT (ACTOR): Oh, absolutely enormous panties. No, no, don't apologize. I like them. Hello, mommy.

TAMARA DAVIES (MANAGER: Men don't wanna leave here. I got a guy here in yesterday, and he was looking around. He spent about half an hour, and he said to me, 'I just, I just don't wanna leave. I wanna stay here forever."

MATT NEELY (STOCKING FELLA): It's a 34B, which will be no good.

NICK WATT (ABC NEWS): (Voiceover) I wonder if any one's ever said that...

MATT NEELY (STOCKING FELLA): Yeah.

NICK WATT (ABC NEWS): (Voiceover) ...to a stocking fella? I'm Nick Watt for "Nightline" in Lingerie Land.

MARTIN BASHIR (ABC NEWS): (Off-camera) And in case you're wondering, I bought my wife a rather fetching handbag. And when we come back, a special look at the achievements and events of the past year.

COMMERCIAL BREAK

MARTIN BASHIR (ABC NEWS): (Off-camera) Next week on "Nightline," a look at some memorable moments and provocative people we've covered during 2006. The year in entertainment, power, money and love. It's all part of our special series beginning on Christmas Day with the 'Year in Jesus." We hope you'll join us. But that's our report for tonight. I'm Martin Bashir. For Cynthia McFadden, Terry Moran, and all of us at ABC News, good night America and have a very happy and peaceful Christmas.

FOR INFORMATION ON ORDERING A VIDEO OR TRANSCRIPT COPY OF ABC NEWS OR ABC NEWS NOW PROGRAMMING, PLEASE VISIT THE SECURE ONLINE ORDER FORM LOCATED AT WWW.TRANSCRIPTS.TV

---- INDEX REFERENCES ----

COMPANY: MATTEL INC; ABC NEWS; BRATZ F C; REACH TRADE AND MARKETING; ABC

INDUSTRY:  (TV (1TV19); Underwear (1UN06); Entertainment (1EN08); Gen Y Entertainment (1GE14); TV Programming (1TV26); Games & Toys (1GA85); Gen Y TV (1GE33); Apparel (1AP19); Consumer Products & Services (1CO62); Children's Apparel (1CH40); Apparel & Textiles (1AP20))

REGION:  (Americas (1AM92); North America (1NO39); Mediterranean (1ME20); Middle East (1MI23); USA (1US73); Palestine (1PA37); New York (1NE72); Israel (1IS16); Arab States (1AR46))

Language:  EN

OTHER INDEXING:  (MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS); MATT NEELY (STOCKING FELLA); ANNOUNCER; MARTIN BASHIR (ABC NEWS); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9   165   M 0062158

BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC
NEWS); ISAAC LARIAN (CEO; CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS
DIVISION); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL -
GIRLS DIVISION); JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON
(SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); JOHN
BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION);
JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); CHUCK SCOTHON
(SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); JOHN
BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR
VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); CARTOON VOICEOVER
(GROUP); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC
LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS);
ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC
NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); CHUCK
SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS);
CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC
NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); ISAAC LARIAN
(CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; CHUCK SCOTHON (SENIOR VICE
PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN
BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO;
JOHN BERMAN (ABC NEWS); MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS); MARTIN
BASHIR (ABC NEWS); ANNOUNCER; MARTIN BASHIR (ABC NEWS); WILF DINNICK (ABC NEWS);
WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); STEPHEN PFANN (PRESIDENT; WILF
DINNICK (ABC NEWS); ISRAELI SECURITY PERSONNEL (MALE); WILF DINNICK (ABC NEWS);
WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF
DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK
(ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC
NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS);
WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); REVEREND
JEROME MURPHY-O'CONNOR (ECOLE BIBLIQUE; WILF DINNICK (ABC NEWS); REVEREND JEROME
MURPHY-O'CONNOR (ECOLE BIBLIQUE; WILF DINNICK (ABC NEWS); MARTIN BASHIR (ABC NEWS);
ANNOUNCER; MARTIN BASHIR (ABC NEWS); MATT NEELY (STOCKING FELLA); CUSTOMER (MALE);
CUSTOMER (FEMALE); CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); NICK WATT (ABC
NEWS); MATT NEELY (STOCKING FELLA); MATT NEELY (STOCKING FELLA); NICK WATT (ABC
NEWS); MATT NEELY (STOCKING FELLA); CUSTOMER (MALE); MATT NEELY (STOCKING FELLA);
CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); NICK WATT (ABC
NEWS); CUSTOMER (MALE); NICK WATT (ABC NEWS); CUSTOMER (MALE); MATT NEELY (STOCKING
FELLA); NICK WATT (ABC NEWS); MATT NEELY (STOCKING FELLA); CUSTOMER (MALE); NICK
WATT (ABC NEWS); NICK WATT (ABC NEWS); CUSTOMER (MALE); NICK WATT (ABC NEWS);
CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); TAMARA DAVIES
(MANAGER; NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS);
TAMARA DAVIES (MANAGER; CUSTOMER (MALE); TAMARA DAVIES (MANAGER; CUSTOMER (MALE);
NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); NICK WATT (ABC
NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK
WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); NICK WATT (ABC
NEWS); HUGH GRANT (ACTOR; TAMARA DAVIES (MANAGER; MATT NEELY (STOCKING FELLA);
NICK WATT (ABC NEWS); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); MARTIN
BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS)) (ABC; ABC NEWS; BASHIR; BETHLEHEM;
BIBLE; BRATZ; BRAWL; CHRISTMAS; CHRISTMAS JOURNEY; CHUCK; CONTENT; CONTENT: BARBIE;
CONTENT: CHRISTMAS; CONTENT: LINGERIE; CYNTHIA MCFADDEN TERRY MORAN; DIARY;
DIVISION; DOLLHOUSE; FANTASY; FELLAS; GRAPHICS; GRAPHICS: BRAWL; GRAPHICS:
CHRISTMAS; GRAPHICS: FANTASY; GRAPHICS: SIGN; HUGH; ISAAC; JEWISH; JOSEPH; JOURNEY;
KEN; LUKE; MARTIN BASHIR; MARY GRAPHICS: STOCKING; MATT; MATTEL; NICK; NIGHTLINE;
NIGHTLINE: DECEMBER; PALESTINIAN; SIGN; STOCKING; TAMARA; TERRY MORAN; TOPIC: USA)
(Astronaut Barbie; Barbie; Barbies; BRATZ; BRATZ DOLL WARS; Cynthia McFadden;
Doctor Barbie; Finding; Hey; Isaac; Isaac Larian; JOHN BERMAN; Jordanians; Largely;
Larian; Mary; Matt Neely; MyScene Barbie; Passport; Round; Steve Pfann)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9 - 166          M 0062159

12/23/06 ABCNIGHTLINE (No Page)                                    Page 13

Word Count: 5025
12/23/06 ABCNIGHTLINE (No Page)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

M 0062160

**EXHIBIT 10**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 11**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**   December 7, 2007

**NUMBER OF PAGES, INCLUDING COVER: 2**

|  | **NAME/COMPANY** | **PHONE NO.** | **FAX NO.** |
|---|---|---|---|
|  | John A. Conkle | 310-998-9100 | 310-998-9109 |
|  | Conkle, Kremer & Engel, PLC | | |

**FROM:**   Juan Pablo Albán

**RE:**   Mattel v. Bryant
Case No. CV 04-9049 SGL (RNBx)

**MESSAGE:**

Please see attached.

FAXED
DEC 0 7 2007

---

07205/2241487.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Lorraine R. - 4th Fl | ☐ CONFIRM FAX X INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | PRISCILLA R. | CONFIRMED? | ☐ NO. ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

11     175

```
*****************
***   TX REPORT   ***
*****************
```

TRANSMISSION OK

TX/RX NO                     2787
RECIPIENT ADDRESS            96438720943100888109
DESTINATION ID
ST. TIME                     12/07 13:00
TIME USE                     00'40
PAGES SENT                   2
RESULT                       OK

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
81 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

DATE:      December 7, 2007                    NUMBER OF PAGES, INCLUDING COVER: 2

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| John A. Conkle<br>Conkle, Kremer & Engel, PLC | 310-998-9100 | 310-998-9109 |

FROM:      Juan Pablo Albán

RE:        Mattel v. Bryant
           Case No. CV 04-9049 SGL (RNBx)

MESSAGE:

Please see attached.

11      176

**quinnemanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S INTERNET ADDRESS
juanpabloalban@quinnemanuel.com

December 7, 2007

VIA FACSIMILE AND U.S. MAIL (310-998-9109)

John A. Conkle, Esq.
Conkle, Kremer & Engel, PLC
3130 Wilshire Blvd., Suite 500
Santa Monica, CA 90403-2351

Re:  Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Mr. Conkle:

It was good speaking with you. I write to confirm our conversation of December 6, 2007.

You said that you reviewed your files and confirmed that you had sent all documents responsive to Mattel's subpoena, approximately twelve to fifteen boxes, to Kabateck Brown Kellner LLP once they commenced representing Farhad Larian in his disputes with Isaac Larian and Morad Zarabi. This excludes privileged material, which you still have. On November 28, 2007, you stated that you had about 30 feet of possibly responsive documents, including privileged material. You since stated to me that the reason you later learned that you no longer had this material was because your indexes had not been updated.

If any of the above does not comport with your understanding of our conversation, please let me know as soon as possible. Please also provide us with a privilege log in accordance with Federal Rule of Civil Procedure 45(d)(2).

Very truly yours,

Juan Pablo Albán

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-1107 FAX 858-812-3336

11      177

**EXHIBIT 12**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3624**

WRITER'S INTERNET ADDRESS
juanpabloalban@quinnemanuel.com

December 13, 2007

VIA EMAIL AND FACSIMILE
RLK@KBKLAWYERS.COM, 213-217-5010

Richard L. Kellner
Kabateck Brown Kellner LLP
Historic Fire Engine Co. No. 28 Building
644 S. Figueroa St.
Los Angeles, California 90017

Re:   Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Mr. Kellner:

Thank you for your cooperation in producing documents responsive to Mattel's subpoena and for agreeing to provide us with a privilege log. I received approximately one banker's box of documents today. To confirm what you produced, you told me when we spoke yesterday that the production includes all responsive, non-privileged documents in your possession, custody or control. I informed you that John Conkle told me that, when his firm stopped representing Farhad Larian, they sent your firm twelve to fifteen boxes of documents from the Larian v. Larian proceedings. You told me that your firm no longer has the majority of that material because you gave all of it—save for what you produced to us and your privileged material—to Farhad Larian soon after those proceedings concluded.

If any of this is inconsistent with your understanding of our conversation, please let me know.

Very truly yours,

/s/ Juan Pablo Albán

07209/2335576.1

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
TOKYO | Akasaka Twin Tower Main Building 6th Floor 17-22, Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL (81) 3 5561-1711 FAX (81) 3 5561-1712

EXHIBIT _12_ PAGE _178_

**EXHIBIT 13**



**quinn emanuel** trial lawyers

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | PALM SPRINGS | SAN DIEGO

WRITER'S DIRECT DIAL NO.
(213) 443-3675

WRITER'S INTERNET ADDRESS
taniakrebs@quinnemanuel.com

December 22, 2005

Robert Wilson
Cotkin Collins & Ginsburg
300 South Grand Avenue, 24th Floor
Los Angeles, CA 90071

Dear Bob:

We received today your letter dated December 5, 2005, responding to my letter of November 28, 2005. Per your handwritten note, it appears that your letter was not delivered until today because your letter was misaddressed.

Per our telephone discussion today, thank you for confirming that you previously had forwarded to Farhad Larian our letter regarding his obligations to preserve documents relevant to Mattel's ongoing litigation against MGA and that Mr. Larian has received the letter. Also, we understand from you that Richard Kellner of Kabateck Brown Kellner LLP is currently representing Mr. Larian, and we will direct future correspondence accordingly. We are copying Mr. Kellner on this letter.

If any of this is incorrect, please let us know.

Very truly yours,

Tania M. Krebs

cc:   Richard L. Kellner, Esq.

LARIAN 13 FRC 179

**quinn emanuel urquhart oliver & hedges, llp**

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643
805 Third Avenue, 11th Floor, New York, New York 10022 | TEL 212-702-8100 FAX 212-702-8200
701 Sansome Street, 6th Floor, San Francisco, California 94104 | TEL 415-986-8700 FAX 415-986-1701
555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-650-4100 FAX 650-650-4111
45-025 Manitou Drive, Suite 8; Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
4445 Eastgate Mall, Suite 300, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

**EXHIBIT 14**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 15**

RECEIVED

DEC 1 4 2007

LAW OFFICES

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 556-7652
EMAIL: sgizer@chrisglase.com

December 12, 2007

TH MERITAS LAW FIRMS WORLDWIDE

**VIA FACSIMILE AND U.S. MAIL**

Juan Pablo Alban, Esq.
QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:    Subpoena to Non-Party Farhad Larian
       Carter Bryant v. Mattel, Inc. (and consolidated cases)
       Case No. CV 04-9049 SGL (RNBx)

Dear Juan Pablo:

        We received your December 10, 2007 letter. Your letter again contains factual misrepresentations regarding our meet and confer discussions and the substance of Farhad Larian's production to date.

        First, Farhad Larian has not agreed that Judge Infante needs to resolve any issue relating to Mattel's subpoena. In fact, we informed you in our October 9, 2007 letter, and again during our November 20, 2007 conference call, that we contend Judge Infante does not have jurisdiction to hear Mattel's Motion to Compel.

        Second, as you are aware, we asked that any meet and confer discussions regarding Mattel's subpoena be put off until November because we needed to review the documents in Mr. Larian's possession first. We informed you that Mr. Larian had family issues to deal with and would not be able to compile possible responsive documents until November 1, 2007. Judge Larsen then implemented a discovery stay, which delayed our discussions further. We then meet and conferred on November 20 and 27, 2007, but regardless of the amount of time spent, we still had outstanding issues that needed to be discussed further. You had postponed discussions on multiple requests and we stated we needed to get back to you on others. It is for this reason, you proposed another meet and confer session.

        Third, Requests Nos. 1 and 2 are substantively different from Requests Nos. 4 and 16 for the reasons outlined in my December 6, 2007 letter. We agreed to limit Requests Nos. 1 and 2 to those issues that are relevant to the Mattel v. Bryant litigation (matters that relate to Bratz, including its origin, Carter Bryant or Mattel). Amazingly, you claim this is too narrow a scope even though this is precisely the scope of documents you claim to be seeking in your motion to

612419

EXHIBIT 15 PAGE 188

Juan Pablo Alban, Esq.
December 12, 2007
Page 2

compel ("As the Discovery Master already ruled, the Larian v. Larian proceedings are relevant to this action. The conception and early development of Bratz, and Isaac Larian's efforts to conceal as much, were at the heart of [the Larian v. Larian] proceedings and of the present action." Motion to Compel, 14:6-9). Accordingly, there is no justification for your refusal to limit these requests to the very purposes you claim they were intended.

Further, Request No. 2 does seek documents related to any dispute between Isaac and Farhad regardless of whether it was in connection with a legal proceeding. Such a broad request could include any argument between two brothers. Request No. 2 seeks, "All DOCUMENTS ...created, reviewed, transmitted or received by YOU in connection with any lawsuit or arbitration proceedings...or any other dispute between YOU and ISAAC LARIAN." Thus, this Request is overbroad, harassing and burdensome. If this request was intended to be limited to legal proceedings only, please state so.

Fourth, regarding the Dutcher Declaration, and other documents also marked "ED" or "MZ," we cannot produce these documents because we are bound by a protective order. If we were to produce these documents, we would be violating a court order and we will not voluntarily violate a court order. However, as we have previously stated, we are more than willing to produce these documents if you are able to amend the protective order to include Mattel. To the extent any of these documents are publicly available, then there is no issue because you are free to obtain them yourselves (and it appears that you have already done so). To continue to demand that we produce documents that you already have, even though they are marked "ED" under the protective order, is nothing less than harassment.

Fifth, as to Request No. 9, we stated during our conference calls that Farhad Larian was still looking for outlook calendar entries and he did not have a Franklin Planner. We stated that we would get back to you once Mr. Larian completed his search. Mr. Larian later found outlook entries for the responsive time period and we produced them in the supplemental production. This is further evidence that your motion is premature. Had you reviewed the supplemental production before filing your motion to compel, you would have seen that Mr. Larian responded to Request No. 9.

Sixth, for Request No. 25. I do not understood how you can claim that we first raised our misunderstanding of the scope of this Request in my December 6, 2007 letter. You acknowledge in your December 5, 2007 letter that we "misunderstood the scope of the request" and that "Mattel clarified that the request was narrow, limited to documents that refer or relate to this action." After receiving this clarification, we confirmed that we do not have any responsive documents.

Lastly, your claim that further meet and confers would have been "nonsensical" is belied by this very exchange of correspondence. It is evident that the issues we have are far narrower than your motion suggests. The purpose of meet and confer discussions is too resolve as many disputes as possible before filing a motion so the motion is narrowly tailored to discovery requests that are actually in dispute. But, many of your justifications for Mattel's documents requests made their first appearance in your motion rather than in our meet and confer

612419                                                    EXHIBIT 15 PAGE 189

Juan Pablo Alban, Esq.
December 12, 2007
Page 3

discussions. Thus, you seem to take the position that a motion should be filed as soon as possible, and the parties should then clarify or narrow the scope of the motion after the fact. Your actions are in violation of the local rules and are in bad faith.

In order to have meaningful meet and confer discussions, Farhad Larian looked for documents responsive to all of Mattel's requests even though they are, among other things, overbroad, burdensome, irrelevant and harassing. Mattel has circumvented the meet and confer process, and instead, filed a premature motion to compel. If Mattel does not withdraw its motion, we will seek sanctions.

As for Farhad Larian's deposition, we will get back to you with alternate dates since you believe a December 17, 2007 deposition date is premature. We will also be serving Farhad Larian's supplemental response to Mattel's subpoena today along with another group of documents responsive to Requests Nos. 17-19. These documents are all the responsive documents (to Requests Nos. 17-19) in Farhad Larian's possession that are not privileged or covered by the protective order.

Very truly yours,

Scott E. Gizer
for CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP

SEG

cc:   Patricia L. Glaser, Esq.
      Alisa Morgenthaler Lever, Esq.
      Amy Park, Esq. (via facsimile)
      Jose Allen, Esq. (via facsimile)

EXHIBIT _15_ PAGE _190_

**EXHIBIT 16**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**   December 10, 2007

**NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Alisa Morgenthaler-Lever*<br>**Christensen, Glaser, Fink, Jacobs, Weil<br>& Shapiro, LLP** | 310-553-3000 | 310-556-2920 |

**FROM:**   Juan Pablo Albán

**RE:**   Mattel v. Bryant
Case No. CV 04-9049 SGL (RNBx)

**MESSAGE:**

Please see attached.

FAXED
DEC 1 0 2007

07209/2241401.1

CLIENT #   7209

ROUTE/
RETURN TO:   Lorraine R. - 4th Fl.

☐ CONFIRM FAX
X  INCLUDE CONF. REPORT

OPERATOR:   _____

CONFIRMED?   ☐ NO  ☐ YES: _____

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product.
The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or
the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution
or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by
telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

16   191

12/10/2007 09:53 FAX 12134435   QE\OR-LA0-2                                            ☐001

```
                        ***************************
                        ***   TX REPORT   ***
                        ***************************

          TRANSMISSION OK

          TX/RX NO            4485
          RECIPIENT ADDRESS   9643#7209#13105562920
          DESTINATION ID
          ST. TIME            12/10 09:52
          TIME USE            01'10
          PAGES SENT          4
          RESULT              OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

**DATE:**     December 10, 2007          **NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Alisa Morgenthaler-Lever*<br>Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | 310-553-3000 | 310-556-2920 |

**FROM:**     Juan Pablo Albán

**RE:**     Mattel v. Bryant
          Case No. CV 04-9049 SGL (RNBx)

**MESSAGE:**

Please see attached.

16      192

**quinnemanuel** triallawyers | losangeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S INTERNET ADDRESS
juanpabloalban@quinnemanuel.com

December 10, 2007

**VIA FACSIMILE AND U.S. MAIL**
310-556-2920

Alisa Morgenthaler-Lever
Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
10250 Constellation Boulevard, Nineteenth Floor
Los Angeles, California 90067

Re:   Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Ms. Lever:

Thank you for your December 7, 2007 letter.

Your letter's demand that Mattel withdraw its motion lacks merit and indeed fails to recognize that the motion principally deals with those requests Farhad Larian has refused—and still refuses —to produce documents in response to. As you know, Farhad Larian is relying on objections to withhold, and in many cases to even look for, documents to which Mattel is entitled. With respect to those objections, outlined in our motion, both Farhad Larian and Mattel previously agreed that Judge Infante needs to resolve those. Thus, your belated insistence now that further discussions should have been held before the motion was filed is without basis, especially given that the discovery cut-off is less than two months away. Of course, if you wish to further discuss whether Farhad Larian will withdraw some or all objections to narrow the scope of the motion, then Mattel will be happy to participate in such conversations.

Mattel more than amply complied with its meet and confer obligations and repeatedly attempted to resolve the matter with Farhad Larian's counsel, to no avail. Mattel asked you to participate in a meeting of counsel on October 3, 2007, more than two months ago. You delayed holding a conference until November 13, 2007, after we had to ask you to engage on this issue no fewer than four times. We had two telephonic conferences, one on November 20, 2007 and another on

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-5170; FAX 858-812-5176

16      193

Alisa Morgenthaler-Lever
December 10, 2007

November 27, 2007, which lasted together more than three hours, and we discussed each request at issue at length.

Nor was any of this altered by subsequent events. To clarify the record on your interpretation of the "process of scheduling an additional meet and confer," when we spoke on December 4, 2007, I told you that it would be more efficient for us to respond by letter to the few, minor issues raised in your November 30, 2007 letter. As an accommodation to you, and after you told me that you could speak by telephone on December 5, 2007, I thought a phone call the next morning was just as efficient as correspondence. You emailed me later saying you could not talk until the late afternoon of December 5. That was still okay on our end. Then, you emailed me at 10:02 p.m., saying for the first time that counsel for MGA—who has asserted no objections to the Farhad Larian subpoena—had to be involved, and that their participation necessitated yet more delay. Thus, any failure to conduct yet more meet and confers was solely your and MGA's doing. Moreover, your insistence on the participation of counsel for MGA raises genuine concerns. Isaac Larian and MGA have done nothing but obstruct discovery in this case, including with respect to the Larian v. Larian documents; MGA to the point of apparently violating an order of the Discovery Master (an issue that Mattel has separately raised with it).

In short, your suggestion that the meet and confer process was incomplete as to the matters Mattel has moved on is demonstrably wrong.

You claim that Request Nos. 1 and 2 are substantively different than Request Nos. 4 and 16. However, you have never remotely suggested that the lawsuits and arbitrations that Requests Nos. 1 and 2 ask about involve proceedings other than the ones related to Farhad Larian's sale of stock in December 2000, and his subsequent allegations that Isaac Larian concealed the development of Bratz before that sale. Contrary to your December 7 letter, Request Nos. 1 and 2 ask only about lawsuits and arbitrations, not "any" dispute. As far as we know, then, Request Nos. 1, 2, 4 and 16 ask about the same proceedings, and you have not suggested – in either the December 6 or 7 letters – that you produced documents responsive to these four requests without narrowing the production to your subjective, and self-serving, interpretation of what relates to Bratz, Carter Bryant or Mattel. You still have not said that you produced all non-privileged responsive documents responsive to Request Nos. 4 and 16.

Furthermore, based on our review of your December 6, 2007 production so far, it appears that Farhad Larian still has not produced the Dutcher Declaration and exhibits that we cite in the motion to compel and supporting separate statement. Farhad Larian himself publicly filed that declaration. As a result, Mr. Larian cannot now plausibly claim that he withheld this document because of a protective order. He also appears not to have produced the transcript of a meeting between Mr. Zarabi, Mr. Dutcher and an unidentified third person, clearly responsive to Mattel's Request Nos. 1, 2, 4 and 16. Mr. Zarabi produced that document to Mr. Larian without any confidentiality protection, and again, Mr. Larian cannot claim it is subject to a protective order. These two critical documents alone confirm that Farhad Larian continues to withhold non-privileged documents responsive to these four requests, apparently based on an improper

2

16          194

Alisa Morgenthaler-Lever
December 10, 2007

interpretation of what relates to Bratz. The production only confirms that Farhad Larian continues to flout his discovery obligations, that the meet and confer process concluded on November 27 and that the motion should go forward.

The same two documents missing from Mr. Larian's production also confirm his continued improper withholding of documents responsive to Request Nos. 17-19, which again without question call for production of these non-privileged documents.

Your notes on Request Nos. 8 and 9 (as summarized in your December 6 letter) apparently contradict our notes. Nevertheless, if you agreed during the conference to produce all non-privileged documents responsive to Request No. 8, as you claim, why did you raise it as an outstanding request in your November 30, 2007 letter? By your December 6 account, you agreed with us that the meet and confer process concluded for this request. As to Request No. 9, my notes indicate that you agreed to produce only entries "related to Bratz" (the same improper narrowing that concluded the meet and confer process for Request Nos. 4, 16, 17, 18 and 19). Mattel disagreed with your comment, as Mattel advised you at the time.

As for Request No. 25, which seeks documents related to this action, you say now that you understood our position during the conference. Yet, you never told us this until your December 6, 2007 letter, which I received after we filed the motion to compel. Regardless, it would have been nonsensical to schedule another telephonic conference, once again having to fit Skadden's schedule, for you to tell us this one-line representation. You could have so said in your November 30, 2007 letter, for example, instead of continuing the delay tactics. The same applies to Request Nos. 38 and 39. If you are now agreeable to producing all responsive, non-privileged documents to Request No. 25, then say so in your opposition. It will narrow the issues. If Mr. Larian does not have any documents responsive to Request Nos. 38 and 39, then supplement Mr. Larian's responses. As your December 6, 2007 and your second production confirms, however, the motion to compel was and remains necessary.

As for the deposition of Mr. Larian, because Mr. Larian's production obligations have not been resolved, a deposition date of December 17 is premature. Please provide us with dates when in January, after January 10, 2008 (when the Discovery Master determines the scope of Mr. Larian's remaining production obligations), Mr. Larian is available for deposition.

Very truly yours,

Juan Pablo Albán
07209/2313995.1

3

16        195