1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 | John B. Quinn (Bar No. 090378)
  | (johnquinn@quinnemanuel.com)
3 | Michael T. Zeller (Bar No. 196417)
  | (michaelzeller@quinnemanuel.com)
4 | Jon D. Corey (Bar No. 185066)
  | (joncorey@quinnemanuel.com)
5 | 865 South Figueroa Street, 10th Floor
  | Los Angeles, California  90017-2543
6 | Telephone:  (213) 443-3000
  | Facsimile:  (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | [PUBLIC REDACTED]<br>MATTEL, INC.'S REPLY IN SUPPORT OF ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS |

[Supplemental Declaration of Jon D. Corey and Mattel, Inc's Consolidated Separate Statements No. 1 and No. 2 filed concurrently]

Hearing Date: January 3, 2008
Time:          1:30 p.m.
Place:         JAMS
               Two Embarcadero Center
               Suite 1500
               San Francisco, California

**Phase 1**
Discovery Cut-off:       January 28, 2008
Pre-trial Conference:    May 5, 2008
Trial Date:              May 27, 2008

07209/2340825.1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

I.   MGA WILLFULLY FAILED TO COMPLY WITH THE
     DISCOVERY MASTER'S ORDERS ............................................................... 2

II.  MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE
     A WITNESS TO TESTIFY REGARDING TOPIC NOS. 21, 24, 25,
     31, 39 AND 40 ................................................................................................ 6

     A.   MGA Has Violated The Court's Orders With Respect To
          Testimony About Document And Electronic Evidence
          Preservation Collection And Destruction, Topic Nos. 39 and 40 .......... 6

     B.   MGA Should Be Compelled To Produce A Competent Witness
          In Response To Topics 21, 23, 24, 25 AND 31 ...................................... 9

III. MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE
     A COMPETENT WITNESS TO TESTIFY REGARDING TOPIC
     NOS. 11, 13, 14, 19, 22, 23, 27 AND 28, AND MGA'S DESIGNEE
     HARRIS SHOULD BE COMPELLED TO RETURN SO THAT
     MATTEL CAN FINISH HER DEPOSITION ON THE COMPELLED
     TOPICS ......................................................................................................... 11

     A.   Harris Lacked Knowledge Reasonably Available to MGA On
          Topic No. 11 ......................................................................................... 11

     B.   Harris Lacked Knowledge On Topic No. 13 ........................................ 14

     C.   Harris Lacked Knowledge On Topic No. 14 ........................................ 17

     D.   Harris Lacked Knowledge On Topic Nos. 27 And 28 ......................... 20

     E.   MGA Should Be Compelled to Comply With Its Prior
          Agreement to Produce Harris for an Additional Day ........................... 22

IV.  MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE
     A COMPETENT WITNESS TO TESTIFY REGARDING TOPIC NO.
     34, AND MGA'S DESIGNEE WOODMAN SHOULD BE
     COMPELLED TO RETURN ........................................................................ 25

     A.   MGA Defends Itself By Pointing to Woodman's Admittedly
          False Testimony On Topic No. 34 ....................................................... 26

     B.   MGA's Statements to the Patent and Trademark Office and
          Copyright Office Are Unquestionably "Sworn Statements" ................ 27

          1.   Testimony Relating to Statements In Or In Support of
               Patent Applications. ................................................................... 27

|    |    |    |    |    |
|---|---|---|---|---|
| 1 |   | 2. | Testimony Relating to Statements In Or In Support of Trademark Registration Applications | 29 |
| 2 |   |    |    |    |
| 3 |   | 3. | Testimony Relating to Statements In Or In Support of Copyright Registration Applications. | 30 |
| 4 | C. |    | MGA's Sentence-by-Sentence Approach To The Topic Makes Examination on Topic No. 34 Incomplete and Unintelligible; Mattel Deserves Full and Complete Testimony on Topic 34 | 31 |
| 5 |    |    |    |    |
| 6 | D. |    | MGA's Halfhearted New Privilege Claim Has No Legitimate Basis | 32 |
| 7 | V. |    | MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE A COMPETENT WITNESS TO TESTIFY REGARDING SPECKIN'S INK AND PAPER TESTING (TOPIC NO. 41), AND MGA'S DESIGNEE TONNU SHOULD BE COMPELLED TO RETURN TO ANSWER QUESTIONS REGARDING THAT TOPIC | 34 |
| 8 |    |    |    |    |
| 9 |    |    |    |    |
| 10 | A. |    | Mattel is Entitled to Information Concerning the Factual Circumstances Surrounding Mr. Speckin's Testing | 34 |
| 11 |    |    |    |    |
| 12 |    | 1. | MGA Admits Mattel is Entitled to the Factual Information Surrounding Mr. Speckin's Testing | 35 |
| 13 |    | 2. | MGA Concedes That The Federal Rules Abolish The Notion That This Information Is "Privileged" Or Protectable As "Work Product" | 42 |
| 14 |    |    |    |    |
| 15 |    |    | (a) | MGA Concedes That the Rules Permit Discovery of Facts Surrounding Mr. Speckin's Testing | 43 |
| 16 |    |    |    |    |
| 17 |    | 3. | MGA's Objections To Providing Information Concerning the Testing of Original Bratz Documents Were Overruled and MGA was Compelled to Produce A Competent Witness to Provide Complete Testimony | 44 |
| 18 |    |    |    |    |
| 19 | VI. |    | MGA WAIVED ANY CLAIM OF PRIVILEGE TO DOCUMENTS USED TO REFRESH LOCKHART'S RECOLLECTION | 45 |
| 20 |    |    |    |    |
| 21 | A. |    | MGA Failed to Present Any Evidence Demonstrating that the Logged Documents are Privileged. | 45 |
| 22 | B. |    | Because the Documents Refreshed Lockhart's Recollection, They Must Be Produced | 46 |
| 23 |    |    |    |    |
| 24 | C. |    | MGA Has Waived the Work Product Doctrine. | 48 |
| 25 | D. |    | The Legislative History Underlying Federal Rule of Evidence 612 Does Not Aid MGA. | 48 |
| 26 | E. |    | MGA's Cases Are Inapposite. | 49 |
| 27 | VII. |    | TONNU'S DEPOSITION SHOULD BE REOPENED | 50 |
| 28 |    |    |    |    |

07209/2340825.1

-ii-
MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1    A.    Tonnu's Deposition Should Be Reopened As A Result Of
           Material Revisions To Her Deposition Transcripts ............................... 50

2    B.    The Discovery Master Should Overrule MGA'S Improper
3          Instructions Not To Answer Questions At The Tonnu Deposition
           And Impose Sanctions For Counsel For MGA's Interference
4          With Questioning .................................................................................... 51

5    VIII.  MGA SHOULD BE SANCTIONED FOR ITS FAILURE TO
           COMPLY WITH THE ORDERS AND DISCOVERY ABUSES ................. 56

6    A.    Mattel Has Been Unfairly Prejudiced By MGA's Discovery
7          Violations And Is Entitled To Monetary Sanctions .............................. 56

8    CONCLUSION ......................................................................................................... 58

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2340825.1

-iii-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO
COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

# TABLE OF AUTHORITIES

**Page**

## CASES

A. Farber and Partners, Inc. v. Garber,
234 F.R.D. 186 (C.D. Cal. 2006) ....................................................................... 54

AK Steel Corp. v. Sollac & Ugine,
234 F. Supp. 2d 711 (S.D. Ohio 2002) ............................................................. 35

Anderson v. Air West, Inc.,
542 F.2d 522 (9th Cir. 1976) ...................................................................... 56, 57

Bailey v. Meister-Brau, Inc.,
57 F.R.D. 11 (N.D. Ill. 1972) .......................................................................... 47

Baker Oil Tools v. Geo Vann, Inc.,
828 F.2d 1558 (Fed. Cir. 1987) ....................................................................... 28

Barrer v. Women's National Bank,
96 F.R.D. 202 (D.D.C. 1982) .......................................................................... 49

Bd. of Trustees of Leland Stanford Junior Univ. v. Superior Court,
119 Cal. App. 3d 516 (1981) ............................................................................ 55

Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.,
228 F.3d 275 (3d Cir. 2000) ............................................................................... 3

CEH, Inc. v. FV "Seafarer",
153 F.R.D. 491 (D.R.I. 1994) .......................................................................... 54

Charles O. Bradley Trust v. Zenith Capital LLC,
2005 WL 1030218 *2 (N.D.Cal. May 3, 2005) ............................................... 52

Clavo v. Zarrabian,
2003 WL 24272448, *2 (C.D. Cal. July 9, 2003) ............................................ 45

Cook v. Yellow Freight Sys., Inc.,
132 F.R.D. 548 (E.D.Cal. 1990) ...................................................................... 55

Davidson v. Goord,
215 F.R.D. 73 (W.D.N.Y. 2003) ...................................................................... 20

Davis v. City of Seattle
2007 WL 4166154, at *3-4 (W.D. Wash. Nov. 20, 2007) ................................ 34

Denius v. Dunlap,
209 F.3d 944 (7th Cir. 2000) ...................................................................... 52, 53

EEOC v. Safeway Store, Inc.,
2002 WL 31947153 * 3 (N.D. Cal. Sept. 16, 2002) ........................................ 45

Ehrlich v. Howe,
   848 F. Supp. 482 (S.D.N.Y. 1994)..................................................................46

FMC Corp. v. Vendo Co.,
   196 F. Supp. 2d 1023 (E.D. Cal. 2002)..........................................................43

Hernandez v. City of El Monte,
   138 F.3d 393 (9th Cir. 1998)..........................................................................56

Hogan v. Robinson,
   slip op. 2006 WL 1049979, *4-5 (E.D.Cal. Apr. 20, 2006) ...........................55

In re Heritage Bond Litigation,
   2004 WL 1970058, *5 n. 12 (C.D. Cal. July 23, 2004)...................................54

In re Managed Care Litigation,
   415 F. Supp. 2d 1378 (S.D. Fla. 2006) ..........................................................49

In re Phenylpropanolamine (PPA) Prods. Liability Litig.,
   460 F.3d 1217 (9th Cir. 2006)........................................................................56

James Julian, Inc. v. Raytheon Co.,
   93 F.R.D. 138 (D. Del.1982)....................................................................47, 49

Judicial Watch, Inc. v. U.S. Dept. of Comm.,
   201 F.R.D. 265 (D.D.C. 2001)......................................................................34

Keith H. v. Long Beach Unified School,
   228 F.R.D. 652 (C.D. Cal. 2005) .............................................................52, 54

Koch v. The Burlington Northern & Santa Fe Railway Co.,
   2006 WL 2927665 (W.D. Wash. 2006)........................................................56

Mackey v. IBP, Inc.,
   167 F.R.D. 186 (D. Kan. 1996).....................................................................32

Marshall v. United States Postal Service,
   88 F.R.D. 348 (D.D.C. 1980)...................................................................46, 47

Medtronic Xomed, Inc. v. Gyrus Ent LLC,
   2006 WL 786425 (M.D. Fla. Mar. 27, 2006)................................................50

Moneymaker v. CoBen (In re Eisen),
   31 F.3d 1447 (9th Cir. 1994)..........................................................................56

Morris v. Morgan Stanley & Co.,
   942 F.2d 648 (9th Cir. 1991)..........................................................................56

Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust,
   230 F.R.D. 398 (D. Md. 2005).......................................................................33

Nguyen v. Excel Corp.,
   197 F.3d 200 n.16 (5th Cir. 1999).................................................................33

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

Pagtalunan v. Galaza,
    291 F.3d 639 (9th Cir. 2002)............................................................................ 56

Palazzetti Import/Export, Inc. v. Morson,
    2000 WL 1015921, at *1 (S.D.N.Y. Jul. 21, 2000) ....................................... 32

Perrignon v. Bergen Brunswig Corp.,
    77 F.R.D. 455 (N.D. Cal. 1978).......................................................................... 33

Resolution Trust Corp. v. Southern Union Co.,
    985 F.2d 196 (5th Cir. 1993)................................................................................ 3

S&A Painting Co., Inc. v. O.W.B. Corporation,
    103 F.R.D. 407 (W.D. Pa. 1984)........................................................47, 48, 50

U.S. v. 22.80 Acres of Land,
    107 F.R.D. 20 (N.D. Cal. 1985) ........................................................46, 48, 50

U.S. v. Landof,
    591 F.2d 36 (9th Cir. 1978)................................................................................ 45

United States ex rel. Bagley v. TRW Inc.,
    212 F.R.D. 554 (C.D. Cal. 2003) .................................................................48, 50

United States v. Bueno-Vargas,
    383 F.3d 1104 (9th Cir. 2004)............................................................................ 28

Vardon Golf Co. v. BBMG Golf Ltd.,
    156 F.R.D. 641 (N.D. Ill. 1994) ....................................................................35, 38

Warnaco, Inc. v. Freund,
    94 F.R.D. 237 (E.D.N.Y. 1980) ......................................................................... 34

Wells v. Xpedx,
    2007 WL 1200955, at *4 (M.D. Fla. Apr. 23, 2007) ....................................... 34

Wheeling-Pittsburgh Steel Corp. v. Underwriters Laboratories, Inc.,
    81 F.R.D. 8 (N.D. Ill. 1978)..........................................................................47, 50

Willis v. Mullins,
    2006 WL 302343, *5 (E.D.Cal. Feb. 8, 2006)................................................. 55

## STATUTES

Fed. R. Civ. P. 26(b)(4)(B)...............................................................................35, 43

Fed. R. Civ. P. 26(c) ...............................................................................................23

Fed. R. Civ. P. 30....................................................................................................23

Fed. R. Civ. P. 30(b)(6) ............................................................................................2

Fed. R. Civ. P. 30(d)(2) ..........................................................................................22

1

## OTHER AUTHORITIES

2   6 James Moore et al., Moore's Federal Practice § 26.47(1) (3d ed. 1999)................33

3   Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide: Civ. Proc. Before Trial,
        § 11:927 (Rutter's Group 2007).......................................................43

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-vii-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO
COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1  ## **Preliminary Statement**

2  MGA does not dispute that the witnesses it produced were incapable of testifying
3  about topics that the Discovery Master compelled.  To the contrary, MGA urges the
4  Discovery Master to deny the Motion because "MGA's Rule 30(b)(6) deposition
5  testimony is not complete."  MGA thereby admits that it violated the Orders, because
6  the Discovery Master had required MGA to "complete" the testimony on these topics
7  no later than June 30, 2007 or September 30, 2007.

8  MGA makes no credible effort to claim that its witnesses possessed, much less
9  testified to, the information the Discovery Master found relevant, that is uniquely
10  within MGA's possession, and that goes to the heart of the case, such as Bratz
11  development, Bratz revenues, Bratz manufacturing dates, and Bratz sales dates, among
12  many others.  Instead, MGA takes the breathtakingly narrow and indefensible position
13  that the Discovery Master only ordered MGA to prop up warm bodies to repeat the
14  mantra "I don't know."  That practice violates the letter and the spirit of both <u>Rule</u> 30
15  and the Orders.

16  Further, MGA offered to "complete" the testimony on only six of the sixteen
17  topics (with limitations on even the six).  MGA has to make this offer because its
18  designees' ability to testify competently is indefensible.  But, having tolerated months
19  of empty promises of compliance and with the deadline for MGA's compliance having
20  passed and with the discovery cut-off less than one month away, Mattel should not have
21  to wait any longer for information the Discovery Master already has ruled -- more than
22  once -- that Mattel is entitled to.  For the other ten topics, MGA apparently believes that
23  the testimony is full and complete.  It is not, as Mattel has shown.

24  MGA's willful violation of the Orders has prejudiced Mattel.  MGA has
25  successfully prevented Mattel from obtaining the compelled information related to
26  Bratz development, manufacture, sales, costs, etc., for months.  Even if Mattel obtains
27  this information at this stage, Mattel will get it within days of the discovery cut-off,
28  preventing follow-up discovery, and within weeks of the expert report due date,

07209/2340825.1

-1-
MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1 | potentially jeopardizing or limiting the type of analysis that Mattel's consultants can do.

2 | For example, the Court compelled a witness to testify about Bratz' revenues, costs and

3 | profits. MGA has yet to provide Mattel with the "starting point" for those calculations

4 | (and has implicitly admitted that these "starting point" documents were not shown to

5 | the designee prior to her testimony).

6 | MGA must bear the consequences of its decision not to comply with the Orders,

7 | despite having had months to do so. Mattel, therefore, respectfully requests that the

8 | Discovery Master grant Mattel's Motion.

9 | **Argument**

10 | **I. MGA WILLFULLY FAILED TO COMPLY WITH THE DISCOVERY**

11 | **MASTER'S ORDERS**

12 | The Discovery Master could not have been clearer in overruling all of MGA's

13 | objections and limitations to the topics in Mattel's Rule 30(b)(6) notice: "I find all of

14 | the topics relevant. I overrule the objections, the limitations, and the conditions

15 | asserted by MGA as to each topic."[1]   The Discovery Master compelled MGA to

16 | produce its witnesses to testify regarding all of the Topics at issue by July 30, 2007,

17 | except for Topics Nos. 25 and 26, which had a September 30, 2007 deadline.

18 | There is no dispute by MGA that its Rule 30(b)(6) witness must be able to

19 | provide, information "known or reasonably available to the organization". Fed. R. Civ.

20 | P. 30(b)(6); see also July 2, 2007 Minute Order at 4, attached to the Corey Dec.,

21 | Exh. 15. Compare Opp. at 42:24-26. MGA has no justification for its failure to

22 | produce such witnesses with this information for the compelled Topics. Mattel proved

23 | in its moving papers that the information in the Topics is reasonably available to MGA.

24 | See Motion at 39-45. Such proof is not difficult, given that the Topics related to

25 | information exclusively within MGA's possession: Bratz design, development, sales

26

27

28

07209/2340825.1

1  and manufacture; Bratz revenues, costs and profits; and MGA's own document
2  preservation, collection and destruction, for example. Given that the information
3  sought by the Topics is reasonably available to MGA—a proposition that MGA does
4  not dispute in the least—MGA's non-compliance is transparent. The witnesses did not
5  provide basic information on the compelled topics, in violation of the Court's Orders
6  and to Mattel's detriment and prejudice.

7      MGA declares compliance because it designated a witness and the witness was
8  sworn. For <u>Rule</u> 30(b)(6), however, the test is not whether a person understands the
9  oath and can be sworn, but the knowledge of a witness on the Topic. <u>Black Horse Lane</u>
10 <u>Assoc., L.P. v. Dow Chemical Corp.</u>, 228 F.3d 275, 300, 304 (3d Cir. 2000) (affirming
11 district court order imposing sanctions for producing a <u>Rule</u> 30(b)(6) designee who
12 lacked information in the possession of the corporation and noting that "[p]roducing an
13 unprepared witness is tantamount to a failure to appear that is sanctionable under <u>Rule</u>
14 37(d)"); <u>see also Resolution Trust Corp. v. Southern Union Co.</u>, 985 F.2d 196, 197 (5th
15 Cir. 1993) (affirming sanctions order and stating that if the corporate designee "is not
16 knowledgeable about relevant facts . . . then the appearance is, for all practical
17 purposes, no appearance at all."). MGA's argument is also without merit on its face.
18 The purpose and effect of the Orders were to compel MGA to provide Mattel with
19 information relevant to this suit. Were MGA's position accepted, it would mean that
20 the Discovery Master's (and Judge Larson's) Orders were a nullity when they were
21 entered.

22     And even a cursory review of MGA's designees shows that MGA failed to
23 comply with the Discovery Master's Orders. This included basic information relating to
24 Bratz project milestones and the timing thereof. Thus:

25

26 [1]  Transcript of May 15, 2007 Motion to Compel Hearing, 21:22-25, attached to
27 the Corey Dec., Exh. 10; <u>see also</u> May 16, 2007 Order, ¶ 5, attached to the Corey
   Dec., Exh. 11.
28

1    For Topic No. 11, regarding the first exhibition of Bratz or Bratz designs, Harris
2    could not identify any of the "boards" shown to retailers, including the drawings that
3    they contained.[2]

4    For Topic Nos. 13-14, relating to Bratz' first manufacture, shipment and sale,
5    Harris did not identify any dates and knew nothing of distribution agreements that had
6    obviously been negotiated and entered into in 2000.

7    For Topic No. 21, regarding MGA's access to aspects of Mattel's DIVA STARZ
8    project, MGA's designee did not know even what DIVA STARZ was and testified that
9    MGA employees and contractors had no such access, even though others had and have
10   since then testified that they did have access.[3]

11   For Topic No. 24, regarding fee and indemnity agreements, MGA's designee was
12   unable to discuss negotiations, term meanings, payments, amendments, threats to
13   enforce, or any facts other than the identification of the agreements and, in some cases,
14   of the persons who negotiated for MGA.

15   For Topic No. 25, regarding Bratz revenues, costs and profits, MGA's designee
16   was unable to identify Bratz revenues, costs and profits.

17   For Topic Nos. 27 and 28, regarding payments to Elise Cloonan and
18   communications between MGA and Cloonan relating to Bryant, Bratz, Mattel or Anna
19   Rhee, MGA's designee was unable to identify the amounts that MGA had paid to or on
20   behalf of Elise Cloonan or to testify about communications with Cloonan.

21   For Topic No. 31, regarding which Mattel employees had worked for MGA,
22   what they did and what they were paid, MGA's designee did not even inquire about

23

24   [2]   Harris Tr., 288:6-23, attached to the Corey Dec., Exh. 7.
25   [3]   Deposition of Margaret Leahy, dated December 12, 2007, at 48:10-52:23,
26   attached to the Supp. Corey Dec., Exh. 5. Deposition of Paula Garcia, dated May 25,
     2007, at 568:13-570:12, attached to the Supp. Corey Dec., Exh. 13. Deposition of
27   Paula Garcia, dated October 10, 2007, at 1099:3-1113:16; 1147:6-1151:15, attached
28   to the Supp. Corey Dec., Exh. 14.

1 | many Mattel employees, did not know whether some had worked for MGA while a
2 | employed by Mattel or, if they did, what they were paid.

3 |     For Topic No. 34, regarding prior sworn statements regarding Bratz prior to
4 | June 30, 2001, MGA's designee was instructed not to testify about most such statements
5 | and admittedly knew nothing about the rest.  Furthermore, only a few days ago, in
6 | violation of another Discovery Master Order requiring its production months ago,
7 | MGA produced yet another sworn statement of Isaac Larian attesting that he was the
8 | creator of Bratz features Carter Bryant testified in this case that he had purportedly
9 | created before ever even meeting Larian.[4]

10 |     For Topic Nos. 39-40, regarding the collection, preservation or destruction of
11 | documents and evidence responsive to Mattel's requests, MGA's designees did not
12 | know what steps had been taken to collect and preserve electronic evidence, including
13 | documents authored by Mattel, or to identify what physical files had been searched for
14 | responsive documents.

15 |     For Topic No. 41, regarding defendants' destructive handling of the Bratz
16 | drawings, MGA's designee did no more than identify the declaration of MGA's
17 | consultant -- she could not say whether it was true or accurate -- and identify some
18 | documents that he tested (but not all).

19 |     That MGA's designees say "I don't know" for hours and hours and pages and
20 | pages of deposition transcript does not prove compliance.  See Opp. at 1:27.  At
21 | bottom, the witnesses were unable to testify about the basic information for each Topic.
22 | The Discovery Master can see for himself by simply opening any of the designees'
23 | transcripts and following the questioning for any Topic at issue.

24 |     Rather than address these issues head-on, MGA tries to distract from its lack of
25 | compliance with the Orders by chastising Mattel for seeking discovery Mattel needs to
26 | prosecute the case.  Of course, MGA's complaints are unavailing here since the

27 |

28 | [4]   Declaration of Isaac Larian, attached to the Supp. Corey Dec., Exh. 12.

-5-

1 Discovery Master has already found, in some cases more than once, that each of the

2 Topics at issue on this motion seeks relevant information that Mattel is entitled to.

3 Judge Larson subsequently upheld each of those rulings which MGA challenged before

4 him. MGA cannot, at this stage, legitimately seek to justify its violation of the Court's

5 Orders through such matters that are at best irrelevant and at worse constitute collateral

6 attacks on the Court's Orders.[5]

7 **II.** **MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE**

8     **A WITNESS TO TESTIFY REGARDING TOPIC NOS. 21, 24, 25, 31,**

9     **39 AND 40**

10     **A.** **MGA Has Violated The Court's Orders With Respect To**

11         **Testimony About Document And Electronic Evidence Preservation**

12         **Collection And Destruction, Topic Nos. 39 and 40**

13 At the time that Mattel filed this Motion, MGA had refused to produce a witness

14 to testify on Topic No. 39, regarding MGA's preservation, collection and destruction of

15 evidence that Mattel had requested. After Mattel demonstrated in its moving papers

16 that Lockhart and Tonnu's testimony (or lack of testimony) regarding this Topic fell far

17 short of compliance with the Order, MGA blinked and agreed to produce an as yet

18 unidentified witness on an as yet unidentified date, but only on the topic of

19

---

20 [5] Apart from being ultimately irrelevant here because they do not excuse MGA's violation of Court Orders, MGA's generalized complaints about the scope of

21 Mattel's discovery requests are without merit. First, the discovery request numbers MGA cites are misleading, given that Mattel must take discovery from five

22 defendants. Indeed, MGA and the other defendants have propounded as much discovery as Mattel has and in some instances even more than Mattel has. Supp.

23 Corey Dec., ¶ 22. Second, as the Discovery Master is aware, the stakes in this case

24 are considerable -- MGA itself claims this litigation is worth "billions" -- and MGA has a pattern of obstructing discovery on what Judge Larson has observed includes

25 even obvious, basic information defendants should have turned over voluntarily but

26 had to be ordered to produce but still have not produced. If MGA simply chose to comply with its discovery obligations, then Mattel would not need to seek relief

27 from the Discovery Master and expensive motion practice would not be necessary.

28

07209/2340825.1

-6-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1  "collection."[6]  Thus, even apart from being belated and vague, MGA's offer to produce
2  a witness on only "collection" is deficient.  Agreeing, yet again, to produce a witness on
3  only a portion of the ordered topic does not absolve MGA of its complete failure to
4  produce a witness knowledgeable on the entirety of the topic within the time required.

5      Topic No. 39 seeks testimony on a variety of MGA policies, procedures and
6  methods, and MGA's efforts to *collect* the requested documents is just one of them.
7  The remainder of Topic No. 39 seeks MGA's policies regarding "preservation, . . .
8  destruction, removal, transfer, loss or impairment" of MGA's documents and digital
9  information in connection with this case.[7]  MGA should be compelled to produce a
10  deponent on the entirety of the subject matter encompassed by Topic No. 39—not
11  merely one small aspect of it.

12      MGA purports to demonstrate that Lockhart knew what he was talking about by
13  arguing sweeping generalities, such as "Lockhart testified regarding policies, practices
14  and procedures pre-dating his employment by MGA" and "Lockhart testified at length
15  about the configuration of MGA's computer systems and MGA's policies, practices and
16  procedures for the retention and preservation of electronic documents."[8]

17      But, the proof of the pudding is in the eating.  Whatever generalities MGA
18  invokes, Lockhart was utterly ignorant on numerous areas well within Topic No. 39.
19  For example, Mr. Lockhart did not know whether any effort had been made to
20  determine whether documents, including emails, responsive to Mattel's document
21  requests appears in MGA e-mail archive or ".pst" files;[9] he did not know whether these
22  pst files had been searched;[10] he did not know whether various other servers, including

23
24  [6]  MGA has offered "to produce an additional witness to discuss the *collection* of
      hard copy and electronic documents in connection with this action under Topic 39."
25  Opp. at 50:10-11 (emphasis added).
      [7]  See Second Notice, attached to the Corey Dec., Exh. 8.
26  [8]  Opp. at 54.
      [9]  Lockhart Tr. at 108:12-17, attached to the Corey Dec., Exh. 6.
27  [10]  Lockhart Tr. at 109:13-16, attached to the Corey Dec., Exh. 6.
28

1   snap servers and data file servers, had been searched for documents requested by

2   Mattel;[11] he did not know the details of the efforts, if any, made by MGA to collect

3   information related to Bratz development in 2000 and 2001;[12] he did not know whether

4   any Mattel-authored documents have been deleted or otherwise removed from MGA

5   user's local hard drives; and, other than limited testimony regarding e-mail searches and

6   a single search of Isaac Larian's computer, Mr. Lockhart did not know of any effort

7   undertaken by MGA to search MGA employees' hard drives for documents requested

8   by Mattel.[13]

9        Tonnu, also a designee on this Topic, had no idea what hard copy files or

10  documents MGA had preserved or collected or destroyed, and went so far as to testify

11  that MGA had not searched any of the off-site documents -- although, in fact, it is

12  apparent from the labels of the boxes stored in one off-site location that they contain

13  documents relating to the Larian v. Larian disputes and other categories of documents

14  that the Discovery Master compelled MGA to produce.   Tonnu testified on

15  September 25, 2007, that MGA had not reviewed the off-site files for documents

16  responsive to Mattel's requests.  Mattel subpoenaed FileKeepers' (MGA's off-site

17  document storage vendor) log of over 1000 boxes of documents that it stores for MGA.

18  Mattel reviewed the log and asked MGA to confirm that it had searched for responsive

19  documents from boxes on the FileKeepers log that Mattel specifically identified,

20  including boxes labeled HK Financial Statement, Larian vs. Larian Lit. Files (multiple

21  sets of documents), Larian vs. Larian Litigation, Trademark Searches, TM

22  Searches/Clearances, Name Clearances (multiple sets of documents), and Original

23  Dolls (multiple sets of documents).

24

25

26  [11]  Lockhart Tr. at 150:21-24, attached to the Corey Dec., Exh. 6.

27  [12]  Lockhart Tr. at 271:2-7, attached to the Corey Dec., Exh. 6.

    [13]  Lockhart Tr. at 288:9-14, attached to the Corey Dec., Exh. 6.

28

1   MGA wrote back, but did not confirm that it had searched any of the identified
2   boxes for responsive documents.[14]  The bulk of these documents are from 2000 and
3   2001, the critical time period, including those for 2000 sales and trademark searches
4   and clearances, that the Court has compelled. Most tellingly, MGA refused to confirm
5   that it had searched the Larian v. Larian boxes for responsive documents, even though
6   the Discovery Master also ordered MGA to produce these documents as well. To date,
7   MGA has produced only *four* documents related to those disputes; presumably the
8   boxes have more than four documents. Mattel has brought a separate motion to address
9   MGA's apparent failure to comply with the Discovery Master's order.[15]

10   If nothing else, this proves that MGA persists in its tactic of stonewalling efforts
11   to determine what documents it is improperly withholding from Mattel and that its
12   gamesmanship continues to this day. The Discovery Master ordered, and Mattel is
13   entitled, to a competent witness to testify regarding the MGA's corporate knowledge on
14   this Topic.

15   **B.   MGA Should Be Compelled To Produce A Competent Witness In**
16   **Response To Topics 21, 23, 24, 25 AND 31**

17   MGA states that it will reproduce Ms. Tonnu or another Rule 30(b)(6) designee
18   to "supplement" prior testimony, with the exception of Topic No. 41.[16]  MGA asserts
19   that, therefore, there is no basis to compel further testimony. An order compelling
20   MGA to provide further testimony is still necessary for several reasons.

21   First, MGA promised, or was compelled, to "supplement" prior testimony. As
22   MGA admits,[17] it failed to do so, flouting such Orders and breaking promises like those

23   _____
24   [14]  Letter from Andrew C. Temkin to Jon Corey dated December 20, 2007, Supp. Corey Dec., Exh. 19.
25   [15]  Letter from Jon Corey to Amy Park, dated December 12, 2007, Supp. Corey Dec. Ex. 18.
26   [16]  Opp. at 52:10-12.
27   [17]  See e.g. Opp. at 46:16-17 (admitting that during Ms. Tonnu's second
28   deposition, in response to Topic No. 24, she was "not able to testify" about the (footnote continued)

1  it now repeats in response to Mattel's Motion.  Even in its Opposition, MGA places

2  improper restrictions or conditions on the "supplemental" testimony.[18]

3      Second, MGA for months stood by its deficient testimony and objections,

4  including professing during the meet and confer process that the testimony of its

5  designees was full and complete.[19]  MGA agreed to supplement any testimony only

6  after Mattel informed MGA that Mattel would bring a motion and, in some instances,

7  only after Mattel filed it.  Based on this history, Mattel is entitled to an order and clear

8  guidance from the Discovery Master.  Accordingly, Mattel respectfully requests that

9  MGA be ordered to produce a witness properly prepared to provide complete testimony

10  for Topic Nos. 21, 24, 25, 40 and 41.

11      Finally, rather than put its specific responses to MGA's purported justifications

12  with respect to these Topics in the reply, Mattel refers the Discovery Master to

13  Consolidated Separate Statement No. 1, in which MGA has pasted its topic-specific

14  arguments and where Mattel sets forth its rejoinder.

15

16

17

18

19

20

21  specifics of key information called for by the Topic); and 50:7-8 (admitting that
Ms. Tonnu was unable to testify concerning the "actual collection of documents for

22  production in this action," in response to Topic No. 39.  Topic 39 specifically seeks
information concerning MGA's collection of documents in this action.  Importantly,

23

24  MGA acknowledge that Ms. Tonnu was unable to provide this key information,
despite the fact that MGA was twice compelled to produce a witness to testify on

25  the same.).

26  [18]  See e.g. Opp. at 45:18-19:6 (Topic No. 21); 47:17-48:4 (Topic No. 25); and
48:27-49:8 (Topic No. 31).

27  [19]  Supp. Corey Dec. ¶ 23; Letter from Jon Corey to Raoul Kennedy, dated
November 21, 2007, attached to the Corey Dec., Exh. 54.

28

-10-

III.  **MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE A COMPETENT WITNESS TO TESTIFY REGARDING TOPIC NOS. 11, 13, 14, 19, 22, 23, 27 AND 28, AND MGA'S DESIGNEE HARRIS SHOULD BE COMPELLED TO RETURN SO THAT MATTEL CAN FINISH HER DEPOSITION ON THE COMPELLED TOPICS**

Unlike the Tonnu and Lockhart topics, MGA now refuses to produce Harris to testify about the eight topics on which she was designated.[20] Remarkably, MGA's counsel originally recognized that Harris' testimony was deficient and that Mattel did not have sufficient time to examine Harris on those eight topics.[21] MGA agreed to produce Harris for an additional day of testimony.[22] Before MGA provided a date, however, it reneged. MGA now argues that Harris "substantially discharged" MGA's obligations to provide testimony on those Topics.[23] This is demonstrably incorrect because Harris knew precious little about the topics Mattel had time to ask about, but did not even get to some of the eight topics on the single day of Harris' deposition.

A.  **Harris Lacked Knowledge Reasonably Available to MGA On Topic No. 11**

Contrary to MGA's conclusory and unsupported claim, Rebecca Harris did not know basic information reasonably available to MGA about Topic No. 11, the exhibition or proposed exhibition of Bratz to any third party prior to June 30, 2001.[24] For example, MGA suggests that her testimony was adequate because she "learned that

---

[20]  In its Opposition, MGA inaccurately states that she was designated on nine topics, but Tonnu, not Harris, was MGA's designee on Topic No. 21. Opp. at 30:9.
[21]  Letter from Scott Gizer to Jon Corey, dated September 25, 2007, attached to the Corey Dec., Exh. 48.
[22]  Id.
[23]  Opp. at 30

07209/2340825.1

1  MGA used boards to present Bratz."[25]  But this ignores that  Harris did not have any
2  information regarding exhibitions of Bratz referenced in a planner produced by MGA,
3  including presentations to retailers on November 6, 2000,[26] November 7, 2000,[27] and
4  November 27, 2000,.[28] or a November 22, 2000 focus group,[29] or a 2000 presentation of
5  Bratz to Toys-R-Us.[30]  It also ignores that, even as to the "boards" she testified about
6  with respect to a single retailer presentation, Harris could not identify Bratz drawings,
7  images, photos or other content they contained:



16  Harris displayed a similar lack of knowledge regarding (a) the form in which Bratz
17  dolls were exhibited, and (b) which specific Bratz products were shown during the key
18  time period:

21  _____
[24]   Additionally, the Discovery Master overruled all of MGA's objections and
limitations concerning the topics set forth in the Second Notice.  See May 16 Order,
¶ 5, attached to the Corey Dec., Exh. 11.
[25]   Opp. at 31:21-22.
[26]   Harris Tr., 291:12-292:19, attached to the Supp. Corey Dec., Exh. 7.
[27]   Harris Tr., 293:16-294:17, attached to the Corey Dec., Exh. 7.
[28]   Harris Tr., 294:19-295:10, attached to the Corey Dec., Exh. 7.
[29]   Harris Tr., 297:3-18, attached to the Corey Dec., Exh. 7.
[30]   Harris Tr., 296:5-22, attached to the Corey Dec., Exh. 7.
[31]   Harris Tr., 288:6-23, attached to the Corey Dec., Exh. 7.

-12-
MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS



07209/2340825.1

---

[32] Harris Tr., 284:6-285:21, attached to the Corey Dec., Exh. 7.

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

█████████████████████████████████████████ [33]

In overruling MGA's objections and compelling the production of a witness, the
Discovery Master determined (a) that this information is reasonably available to MGA
and (b) that the Topic is reasonably particularized. It is therefore no defense to rehash,
as MGA does, that the Topic is too general[34] or that the basic information Mattel seeks
requires "clairvoyance" or to "anticipate every possible minute detail of a topic,"[35]
particularly when the witness can learn some of it in a mid-deposition phone call.[36]

Also unavailing is MGA's argument that Ms. Harris' testimony "substantially"
complied with the Discovery Master's Order. In fact, Harris could not even provide the
most basic details regarding MGA's exhibitions of Bratz. MGA does not dispute that
information responsive to Topic No. 11 is reasonably available to MGA, nor could it.
Ms. Harris testified that Julie Chemo likely attended presentations in which Bratz were
exhibited to retailers during the relevant time period.[37]   Further, as MGA notes,
Ms. Harris contacted Paula Garcia during a break to inquire whether Bratz sculpts were
shown to third parties during the period at issue, thus indicating that Ms. Garcia
likewise has detailed knowledge regarding the exhibition of Bratz prior to June 30,
2001.[38]   Since this information is available to MGA, it was obligated to produce a
witness capable of testifying to it, but failed to do so.

**B.     Harris Lacked Knowledge On Topic No. 13**

The Discovery Master again found Topic No. 13, regarding communications
referring or relating to Bratz between MGA and any manufacturer, distributor,
wholesaler or retailer prior to June 30, 2001, to be reasonably particularized and to be

---

[33]   Harris Tr., 302:16-303:7, attached to the Supp. Corey Dec., Exh. 7.
[34]   Opp. at 31.
[35]   Opp. at 31.
[36]   Harris Tr., 303:8 - 306:9, attached to the Corey Dec., Exh. 7.
[37]   Harris Tr., 288:24-289:2; 289:8-291:5, attached to the Corey Dec., Exh. 7.
[38]   Harris Tr., 303:8 - 306:9, attached to the Corey Dec., Exh. 7.

07209/2340825.1

1   reasonably available to MGA.  Again, contrary to MGA's claim, Harris knew little, if

2   anything.

3          Bandai agreed with MGA to distribute Bratz in Spain, the first market in

4   which it was allegedly sold.  MGA has produced documents referencing agreements

5   *already* reached between MGA and Bandai--clearly evidencing the existence of

6   communications predating these documents.[39]  Harris, however, knew nothing about

7   communications or negotiations that led to the agreement or agreements.[40]



[39]   Harris Tr., 174:19 - 176:3, 189:13 - 192:12, 200:10 - 203:9, attached to the Corey Dec., Exh. 7; Harris Deposition Exhibit 532, attached to the Supp. Corey Dec., Exh. 20; Harris Deposition Exhibit 534, attached to the Supp. Corey Dec., Exh. 21; Harris Deposition Exhibit 535, attached to the Supp. Corey Dec., Exh. 22.

[40]   Harris Tr., 193:15 - 195:11, attached to the Corey Dec., Exh. 7.  Harris was similarly unable to testify properly as to MGA's communications with other distributors and retailers.  <u>See, e.g.,</u> Harris Tr., 204:10 - 205:12, attached to the Corey Dec., Exh. 7.

[41]   Harris Tr., 176:8-177:9, attached to the Corey Dec., Exh. 7; Harris Deposition Exhibit 532, attached to the Supp. Corey Dec., Exh. 20.

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1   Nor could she say when MGA and Bandai first discussed Bratz.[42]  Similarly, she was

2   not competent to testify as to communications leading up to existing agreements with

3   other distributors:



20  The documents prove that such agreements exist; they did not appear from whole cloth;

21  communications or negotiations occurred; they are reasonably available to MGA; and

22  MGA must produce a witness to testify about them.

23      Mattel does not have to show that Mr. Hitch did or did not have files before

24  MGA must comply with the Order and produce a competent witness.[44]  Harris testified

---

26  [42]  Harris Tr., 195:2-6, attached to the Corey Dec., Exh. 7.

27  [43]  Harris Tr., 204:10-205:12, attached to the Corey Dec., Exh. 7.

28  [44]  Opp. at 31.

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

07209/2340825.1

1    that Martin Hitch, a former MGA employee, was involved in discussions between

2    MGA and Bandai, and that Alice Kao, MGA's Hong Kong employee, could get

3    Mr. Hitch's files.[45]  Neither Harris nor counsel made any effort to educate her with

4    information contained in those files.[46]  Nor did she speak to Isaac Larian or Jim

5    Olmstead regarding communications between MGA and distributors, despite the fact

6    that Larian and Olmstead authored e-mail messages referencing existing distributorship

7    deals in Europe and Australia, and thus likely have information responsive to this

8    topic.[47]  Rather, as Harris testified, she took no steps to prepare for her testimony on

9    Topic No. 13 beyond reviewing MGA's produced documents and speaking with

10    counsel, which did not arguably cover the information sought by the Topic and which is

11    reasonably available to MGA.  The Discovery Master should order MGA to fully

12    prepare a witness to testify regarding Topic No. 13.

13            **C.**    **Harris Lacked Knowledge On Topic No. 14**

14        Harris's testimony on Topic No. 14, concerning the first manufacture, shipment,

15    distribution and sale of Bratz, was woefully deficient, contrary to MGA's claim.  The

16    timing of Bratz creation is critical, but Harris could not identify when Bratz was first

17    manufactured.[48]  She must be compelled to return on that ground alone.  She lacked

18    knowledge regarding the identity or role of any person who was involved in the first

19    manufacture of Bratz dolls.[49]  MGA's failure to produce a witness prepared to testify on

20    Topic No. 14 violated the May 16 Order.

21        In its Opposition, MGA does not dispute that Harris was unable to competently

22    testify as to Topic No. 14, apparently conceding that it failed to provide a

23    knowledgeable witness on this topic.  MGA merely argues that Mattel had a "full and

24

---

25    [45]   Harris Tr., 178:1 - 178:7; 199:7 - 199:23, attached to the Corey Dec., Exh. 7.

26    [46]   Harris Tr., 194:12-24, attached to the Corey Dec., Exh. 7.

       [47]   Harris Tr., 187:6 - 192:11; 200:10 - 203:9, attached to the Corey Dec., Exh. 7.

27    [48]   Harris Tr., 115:5-12, attached to the Corey Dec., Exh. 7.

       [49]   Harris Tr., 116:15-117:16; 117:18-118:11, attached to the Corey Dec., Exh. 7.

28

fair opportunity" to examine Edmond Lee, MGA Hong Kong's 30(b)(6) designee, on this topic. This argument fails for a number of reasons. First, the Discovery Master's May 16, 2007 Order compelling the production of a <u>Rule</u> 30(b)(6) on this topic was directed at MGA, not MGA Hong Kong.[50] That Mattel also seeks testimony from MGA's Hong Kong affiliate on this topic simply does not excuse MGA's direct violation of the Court's clear and express order on information in MGA's possession.

Second, Harris did not testify that information responsive to this topic is not reasonably available to MGA, nor does MGA make that contention now. Rather, when questioned on this subject, Harris repeatedly responded "I don't know."[51]



---

[50]   May 16 Order, attached to the Corey Dec. Exh. 11.
[51]   Harris Tr., 116:15-117:16, attached to the Corey Dec., Exh. 7.

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS



[53]

Mattel is entitled to depose a knowledgeable <u>Rule</u> 30(b)(6) witness to obtain MGA's corporate knowledge on Topic No. 14, in addition to any information possessed by MGA Hong Kong.

Finally, MGA's contention that Mattel had a "full and fair opportunity" to examine Mr. Lee regarding the first manufacture, shipment, distribution and sale of Bratz during his two days of deposition is disingenuous at best. As an initial matter, Mr. Lee was designated as MGA Hong Kong's 30(b)(6) witness on all 61 topics to Mattel's Notice of Deposition to MGA Hong Kong.[54] It is unreasonable to expect Mattel, under the best circumstances, to fully examine one witness on 61 separate topics in a two-day span. In this case, Mr. Lee also required the assistance of a translator, causing the pace of the examination to proceed more slowly than usual.[55] Further, MGA compounded this problem by improperly coaching the witness and improperly instructing Mr. Lee not to answer questions that did not invade the attorney-

---

[52]   Harris Tr., 116:15-117:16, attached to the Corey Dec., Exh. 7.
[53]   Harris Tr., 118:3-11, attached to the Corey Dec., Exh. 7.
[54]   Letter from Michael T. Zeller to Thomas Nolan, dated November 15, 2007, attached to the Supp. Corey Dec., Exh. 8.

07209/2340825.1

-19-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1  client privilege -- as it did with many of the depositions at issue here.[56]  Mattel has

2  written to MGA, outlining the deficiencies in Mr. Lee's deposition and requesting

3  additional time to examine him.[57]  To date, however, MGA has not produced Mr. Lee

4  for further deposition.[58]   MGA should not be permitted to rely on the deficient

5  testimony of MGA Hong Kong's corporate designee to evade its own obligation,

6  pursuant to the May 16 Order, to produce a competent witness on Topic No. 14.  MGA

7  should again be compelled to produce a knowledgeable witness now.  See Davidson v.

8  Goord, 215 F.R.D. 73, 77 (W.D.N.Y. 2003) ("A requested party cannot refuse to

9  respond to a requesting party's discovery request on the ground that the requested

10  information is in the possession of the requesting party.").

11  **D.    Harris Lacked Knowledge On Topic Nos. 27 And 28**

12        Harris should also be compelled to return for no other reason than she was unable

13  to identify the amounts paid to Cloonan or to her counsel in connection with this case,

14  which is squarely within the scope of Topic No. 27:



23  [55]   Letter from Michael T. Zeller to Thomas Nolan, dated November 15, 2007, attached to the Supp. Corey Dec., Exh. 8.

24  [56]   Letter from Michael T. Zeller to Thomas Nolan, dated November 15, 2007,

25  attached to the Supp. Corey Dec., Exh. 8.

26  [57]   Letter from Michael T. Zeller to Thomas Nolan, dated November 15, 2007, attached to the Supp. Corey Dec., Exh. 8.  Letter from B. Dylan Proctor to Timothy

27  Miller, dated December 20, 2007, attached to the Supp. Corey Dec., Exh. 9.

28  [58]   Supp. Corey Dec., ¶ 10.

07209/2340825.1

-20-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮[59]

3  In an attempt to refute Mattel's claim that Harris was not properly prepared on

4 these subjects, MGA states that "Harris reviewed numerous MGA business records

5 where the requested information was most likely to be found and discussed the matter

6 with MGA's senior management."[60]  But Harris's deposition testimony defeats this

7 argument.  She testified that her so-called "review" of "numerous MGA business

8 records" was searching cherry-picked portions of MGA's vendor files and its electronic

9 purchase order files for the names "Elise" and "Cloonan," but she reviewed no

10 documents within these files:



[61]

21  Beyond this superficial search, Harris took no steps on this topic except to ask

22 Paula Garcia and Isaac Larian if they knew Ms. Cloonan.[62]  With respect to Topic

23 No. 28, Harris could not confirm specifically what, if anything, MGA searched for

---

[59]  Harris Tr., 204:10-205:12, attached to the Corey Dec., Exh. 7.
[60]  Opp. at 33.
[61]  Harris Tr., 69:12 - 70:18, attached to the Corey Dec., Exh. 7.
[62]  Harris Tr., 70:20-71:16, 81:17-82:11, attached to the Corey Dec., Exh. 7.

1   communications between MGA and Elise Cloonan referring or relating to Bryant,

2   Mattel, Bratz, and/or Anna Rhee.[63]   MGA should again be compelled to produce a

3   properly prepared witness on these topics.

4   **E.    MGA Should Be Compelled to Comply With Its Prior Agreement**

5   **to Produce Harris for an Additional Day**

6        MGA designated Harris to testify on eight separate topics, each of which go to

7   the heart of this action, including the origin, creation, design and development of Bratz

8   prior to June 30, 2001; relevant contracts concerning Carter Bryant and Bratz;

9   payments made to Bryant and other financial information relating to Bratz; and third

10  parties who were involved in or otherwise have knowledge about the creation, design

11  and development of Bratz.[64]   MGA does not dispute this, but has produced Harris for

12  only seven hours of examination.[65]   Less than one hour per topic is not sufficient.  The

13  Court should grant additional deposition time so that Mattel may fully inquire into the

14  Topics.  See Fed. R. Civ. P. 30(d)(2) (Court "must allow additional time . . . if needed

15  for a fair examination of the deponent or if the deponent or another person, or other

16  circumstance, impedes or delays the examination").

17

18

19
_____

[63]   Harris Tr., 97:17-20, attached to the Corey Dec., Exh. 7.

20
[64]   See Second Notice, attached to the Corey Dec., Exh. 8.  In its Opposition,

21  MGA states that Mattel failed to ask Harris questions on Topic Nos. 19, 21, 22 and
23.  Opp. at 34-35, n.9.  This is incorrect.  Mattel asked Harris questions regarding

22  both Topic Nos. 19 (Harris Tr., 78:10-81:2; 138:17-139:9; 259:18-280:6, attached to

23  the Supp. Corey Dec., Exh. 7.) and 23 (Harris Tr., 127:4-131:12; 135:17-137:19,
attached to the Supp. Corey Dec., Exh. 7.).  However, due to the unreasonable time

24  constraint imposed by MGA, Mattel was unable to adequately examine Harris on

25  these key issues in any depth.  Mattel was not able to ask Harris any questions at all
regarding Topic No. 22 (as stated above, Tonnu, not Harris, was MGA's designee on

26  Topic No. 21).  It is for precisely this reason that the Court also should grant

27  additional deposition time.  See Fed. R. Evid. 30(d)(2).

[65]   Corey Dec., ¶¶ 62-68.
28

-22-

1    Following Ms. Harris's deposition, MGA agreed that Mattel was entitled to
2  additional time and agreed to produce her for another day of deposition.[66]   MGA
3  reneged and now refused to produce her, to Mattel's prejudice.  As its justification,
4  MGA now claims that Mattel's counsel purportedly badgered and harassed the witness
5  (or was frustrated with Harris' lack of knowledge) and did not proceed efficiently
6  through the designated topics (on which Harris was not educated).[67]  The testimony
7  regarding Mattel's examination about agreements between MGA and Margaret Hatch-
8  Leahy (the subject of Topic No. 19), was not harassing.  If it had been, MGA could
9  have terminated the deposition and moved for a protective order.  Fed. R. Civ. P. 26(c),
10  30(d).[68]   The relevant testimony reveals that any inefficiency was not due to
11  "badgering" but to MGA's failure to present an adequately knowledgeable designee and
12  Ms. Harris's refusal to respond to straightforward questions.  For example:



25
26  [66]   Letter from Scott Gizer to Jon Corey, dated September 25, 2007, attached to
the Corey Dec., Exh. 48.
27  [67]   Opp. at 34-36.
28  [68]   Opp. at 35.

07209/2340825.1

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO
COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS



[Text redacted]

---

[69]    Harris Tr., 268:10-270:16, attached to the Supp. Corey Dec., Exh. 7.

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS



[70]

MGA should not be permitted to stonewall Mattel's discovery efforts by providing an unprepared 30(b)(6) witness, let alone on the grounds that MGA's own failure to present a witness who can confirm or deny that it had additional agreements with the sculptor of Bratz permits it to now refuse to provide information the Discovery Master compelled. The Court should grant Mattel leave for additional time to examine a competent witness on Topic Nos. 11, 13, 14, 19, 22, 23, 27 and 28.

## IV.   MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE A COMPETENT WITNESS TO TESTIFY REGARDING TOPIC NO. 34, AND MGA'S DESIGNEE WOODMAN SHOULD BE COMPELLED TO RETURN

MGA has gone to extraordinary lengths to avoid giving testimony on its past sworn statements and those of its agents. It is not difficult to understand MGA's resistance. It would prefer not to explain why MGA made statements under oath to the Patent Office and to other courts to obtain or benefit from Bratz-related purported intellectual property rights, but made contrary sworn statements in connection with this action. Or to explain why MGA felt the need to change basic information it had included in applications for copyright registrations on Bratz-related intellectual property at least 11 times.

These are just two of many reasons why Mattel has now had to bring three motions on this one topic, why MGA keeps coming up with new objections even though the Court overruled all of MGA's "objections, . . . limitations . . . and

---

[70]   Harris Tr., 272:6-17, attached to the Supp. Corey Dec., Exh. 7.

07209/2340825.1

-25-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1 || conditions," why the monetary sanctions imposed on MGA after the second motion
2 || have not deterred it from blocking the testimony,[71] and why MGA instructed Woodman
3 || not to answer about seventy five percent of the questions put to Woodman, and
4 || presented false testimony, or no testimony, on the rest. This Court should order MGA
5 || again to provide full and complete testimony on Topic 34 or should issue preclusion
6 || sanctions.

7 ||       **A.    MGA Defends Itself By Pointing to Woodman's Admittedly False**
8 ||             **Testimony On Topic No. 34**

9 ||       While trying to distance itself from prior counsel's improper instructions not to
10 || answer, MGA points to the testimony that Woodman did provide as supposed evidence
11 || that it provided an competent witness on Topic No. 34. But the testimony MGA now
12 || tells this Court to consider "binding" on the company is not even real testimony; it is
13 || just "MGA's position."

14 ||       MGA's argument in this regard was delicately and tellingly worded:

15 ||             Mr. Woodman reviewed 30-50 sworn statements, read the
      transcripts of the depositions of Carter Bryant . . . and
16 ||             Victoria O'Connor, . . . and interviewed Leon
      Djiguerian, . . . in preparation for his testimony [citations
17 ||             omitted].[72] Based on that review, Mr. Woodman
      answered questions as to the correctness or incorrectness
18 ||             of many factual statements plucked out of the multi-page
      sworn statements placed in front of him by Mattel's
19 ||             counsel. . . .  Mr. Woodman's testimony regarding the
      correctness or incorrectness of factual statements
20 ||             identified from these sworn statements at the deposition is
      binding on MGA.[73]

21 ||
22 ||
23 ||
24 ||  _____
      [71]   Underscoring MGA's recalcitrance, it even claims now that it "fully complied
25 || with its obligations under the May 16, 2007 Order" that this Court already found it
      to have violated. Opp. at 11.
26 ||  [72]   MGA does not deny the limited nature of Mr. Woodman's preparation, but
27 || merely argues that it was sufficient. *Cf.* Motion at 21 and Opp. at 22.
      [73]   Opp. at 22-23 (emphasis added).
28 ||

1   Further, MGA suggests that the testimony in question pertained to "whether MGA now

2   believes that the factual statements identified in those sworn statements were correct or

3   incorrect based on the materials reviewed in his investigation."[74]

4        But as Woodman himself revealed, the "testimony" he gave had nothing to do

5   with MGA's current beliefs, was not based on any "investigation," and certainly had

6   nothing to do with actual correctness or incorrectness of these statements.  Woodman

7   admitted (in what even MGA would define as sworn statements) that no matter what

8   inconsistencies existed between Bryant's testimony and MGA's sworn statements, he

9   always presented Carter Bryant's testimony as "true," not knowing whether the "facts"

10  were actually true or not, and not caring to investigate because he was there to testify

11  about "MGA's position."[75]   The Topic, however, sought facts, not conclusory

12  proclamations of MGA's "position."  Mattel is entitled to a witness willing and able to

13  testify truthfully regarding the facts concerning MGA's sworn statements.

14      **B.**   **MGA's Statements to the Patent and Trademark Office and**

15          **Copyright Office Are Unquestionably "Sworn Statements"**

16          **1.**   **Testimony Relating to Statements In Or In Support of Patent**

17             **Applications.**

18       MGA effectively concedes that Larian's statements to the Patent and Trademark

19  Office ("PTO") in support of the patentability of his invention—in his patent

20  application and the related materials—were sworn, under oath, pursuant to § 115.  See

21  Motion at 65-66.  MGA never addresses the application of § 115, choosing instead to

22  set up a straw man argument that Carter Bryant's declaration does not render Larian's

23  statements to the Patent Office "sworn."[76]  MGA similarly fails to address the fact that

24  the Office Action, Exhibit 501, relates directly to the sworn statements made by Larian

25

26    [74]  Opp. at 23.

27    [75] Motion at 30-33.

28    [76] Opp. at 26.

07209/2340825.1                     -27-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1  and Bryant in Exhibits 500, 502 and 548, instead pointing out the irrelevant and

2  obvious fact that Exhibit 501 is not itself a sworn statement of MGA.

3       Further, MGA acknowledges that both the <u>Baker Oil</u> and <u>Control Components</u>

4  courts treated statements made to the Patent Office as sworn statements.[77]  Indeed,

5  MGA tries to distinguish them on that basis.  It argues that those courts assumed the

6  statements to be sworn, whereas in the present case whether the statements are sworn is

7  disputed.  MGA misses the point.  These courts recognized the statements were sworn

8  because they are, and because it is frivolous to suggest otherwise.  Indeed, MGA's

9  argument cuts against the very essence of our common law, which is accretive by

10  nature and builds upon prior decisions exactly in this manner.  Further, in <u>Baker Oil</u>,

11  the Federal Circuit did *not* reverse the district court because it had treated the

12  statements in question as sworn statements.  The sole issue there was the *weight* those

13  sworn statements should have been given.[78]

14       Despite these concessions, MGA now argues that it will allow testimony from

15  Mr. Khare on the application, amendment and Bryant declaration it previously

16  instructed on, but only to the extent that the Larian inventorship declaration,

17  MGA3765285-86 (which MGA neither identified in its Opposition brief nor attached it

18  to its declaration) "makes specific reference to the contents of the patent application."

19  Miller Dec. ¶ 38.  According to MGA's hyper-literal view of the world, this means that

20  Mattel will again get no testimony.  MGA will say that Larian's declaration that he is

21  "the original, first and sole inventor" of the subject of his patent application and that

22

---

23    [77]  Opp. at 26, 27.

24    [78]  <u>Baker Oil Tools v. Geo Vann, Inc.</u>, 828 F.2d 1558 (Fed. Cir. 1987).  Further, <u>United States v. Bueno-Vargas</u>, cited by MGA, does not even address the question

25  of whether defendants' trademark and patent applications are "sworn statements."  That decision—interpreting issues of constitutional criminal procedure—simply

26  held that statements made under penalty of perjury satisfied the Fourth

27  Amendment's oath or affirmation requirement, an irrelevant issue here.  383  F.3d 1104, 1111 (9th Cir. 2004).

28

-28-

1   "[a]ll statements of [his] own knowledge are true,"[79] does not reference any of the

2   patent application's or other documents' contents sufficiently to be within the scope of

3   Topic 34, and will again instruct not to answer.

4        Under the Discovery Master's Order, MGA's limitations and objections were

5   overruled and Mattel is entitled to discovery of MGA's sworn submissions to the Patent

6   Office, not just a sentence or two plucked out of context. Even where some testimony

7   about a document was permitted, MGA's improper instructions not to answer on closely

8   related documents, or on other parts of the same document, tended to render this limited

9   questioning useless. Mattel is entitled to test—with a Rule 30(b)(6) witness—the

10  individual sworn statements that were made relating to the Bratz intellectual property;

11  as well as any statements made along with, or in support of, or facts that were

12  consistent, or inconsistent, with, those statements.[80]

13              **2.    Testimony Relating to Statements In Or In Support of**

14                      **Trademark Registration Applications.**

15       MGA also proposed that it allow Mr. Khare to present testimony on the sworn

16  statements in the applications for trademark registration filed by MGA.[81] But since

17  MGA's idea of testimony excludes everything about the statements, such as the

18  circumstances in which they were made, the factual basis of the statements or the lack

19  thereof, and even basic information about the drafting, investigation, review, or

20  authorization of the statements, this is not much of an offer. Again, Mattel is entitled to

21  ─────────────────────

22  [79]   See Letter from Timothy A. Miller to Scott Kidman, dated December 20,
     2007, Supp. Corey Dec., Exh. 11; Declaration of Isaac Larain, dated February 24,

23  2003, Supp. Corey Dec., Exh. 12.

24  [80]   Without relief from the many limitations MGA has improperly read into
     Topic 34, there is little point in deposing Mr. Khare or anyone else on the topic.

25  MGA makes much of its last-minute offer of a new witness on a tiny slice of Topic
     34, but since the proposed testimony again was so narrow as to be useless, Mattel

26  chose to reject this "offer" and brought this motion instead. There is no basis for

27  MGA's presumption that Mattel accepted it. Opp. at 15.

     [81]   Opp. at 26.

28

1 | discovery relating to the sworn statements, including the certificates of registration that
2 | are the result of the sworn statements in the applications for trademark registration.

### 3. Testimony Relating to Statements In Or In Support of Copyright Registration Applications.

5 | As for the copyright registrations and certificates, MGA merely assumes that the
6 | test for a "sworn statement" in this action is that required to establish the basis for a
7 | search warrant. But MGA never explains why the statements must meet the
8 | requirements of "sworn statement" needed for a search warrant, especially since Topic
9 | No. 34 specifically includes "other sworn written statements of any type."

10 | MGA argues, in effect, that registrations and certificates in question are not
11 | "sworn" enough to count as "sworn statements" because they only include a statement
12 | that the information is correct to the best of the swearer's knowledge.[82] MGA does not
13 | seem to appreciate the irony that it seeks to avoid scrutiny into the very loose
14 | statements it made under oath to the Copyright Office by arguing that they were loosely
15 | made. It is MGA's looseness with these statements that justifies a deposition relating to
16 | them.

17 | Although MGA argues that these statements were not made under penalty of
18 | perjury, it does not acknowledge or deal with the fact that each of the exhibits in
19 | question were made pursuant to 17 U.S.C. § 506(e) and state on their face that "Any
20 | person who knowingly makes a false representation of a material fact in the application
21 | for copyright registration provided for by section 409 or in any written statement filed
22 | in connection with the application shall be fined not more than $2500." Certainly, the
23 | same logic that makes a statement made under penalty of perjury a sworn statement
24 | makes a statement made under threat of other penalties sworn also.[83]

25

---

26 | [82] Opp. at 25.
27 | [83] MGA halfheartedly resurrects its "Topic No. 33" objection, which seeks to
28 | block testimony on one topic because it arguably happens to overlap with another
(footnote continued)

-30-

C.   **MGA's Sentence-by-Sentence Approach To The Topic Makes Examination on Topic No. 34 Incomplete and Unintelligible; Mattel Deserves Full and Complete Testimony on Topic 34**

MGA's discussion of its instructions not to answer based on its date restriction, and relating to sworn statements made during the Art Attacks trial, is both meritless and confirms that its obstruction and non-compliance were deliberate.

On the date issue, MGA states that will allow testimony "regarding statements that refer or relate to the specified time period" but simultaneously argues that "prior counsel's interpretation of Topic 34 was correct."[84] Thus, at best, MGA will continue to go sentence by sentence through the sworn documents it presented to courts, the PTO, the Copyright Office, and other bodies to obtain or enforce purported Bratz-related intellectual property rights, allowing narrow questioning on just those sentences that unquestionably relate to the period before June 30, 2001 and refusing questions on the other sentences in the same document, and on related documents so that Mattel cannot get a full picture of the circumstances in which these representations were made. This is improper.

MGA's Opposition presents no reasoned defense of its instruction as to the Art Attacks trial testimony. Even if these statements were not within the scope of Topic No. 34 because Mattel counsel was observing the trial along with other members of the public, they should be fair game for discussion at the deposition because they are part of the inconsistencies that exist between them and sworn statements made by MGA elsewhere. MGA continues to gut Topic No. 34 by carving out chunks to obscure MGA's web of inconsistencies about the origins, creation and timing of Bratz.

Oddly, MGA tries to downplay the harm caused by its instructions not to answer by arguing that Mr. Woodman did not have any knowledge of the relevant facts

topic. MGA presents no authority for this novel position; indeed, it would render the Rule 30(b)(6) procedure useless if carried to its logical extreme.

1    anyway.[85]  While Mattel does not dispute that Mr. Woodman was ignorant of the facts
2    he was supposed to be able to testify to, that does not relieve Mattel of the prejudice it
3    suffered through MGA's endless instructions.  Due to these instructions, Mattel's
4    counsel was not permitted to learn of basic background information it needed to
5    formulate questions on the permitted materials.  Nor could Mattel's counsel test a
6    document that contained a sworn statement with a document that supported, refuted, or
7    challenged that statement.  MGA should be ordered—again—to provide unrestricted
8    testimony on Topic No. 34.

9         **D.**    **MGA's Halfhearted New Privilege Claim Has No Legitimate Basis**

10       As set forth in specific examples in Mattel's motion, as to those statements that
11   even MGA would admit were sworn enough to provide testimony on, Woodman
12   admittedly knew nothing at all and was just testifying to "MGA's position."[86]  But if
13   that somehow weren't enough to completely block the facts Mattel is entitled to, MGA
14   now argues that much of the information Mattel seeks is protected from disclosure by
15   the attorney-client communications privilege and work product doctrine.[87]

16       MGA is wrong for three reasons.  First, if that type of questioning implicated
17   privileged or otherwise protected information, as MGA now claims, the privilege or
18   protection was waived when Mr. Klevens failed to object, or to instruct, on the basis of
19   the privilege or protection.  "Failure to timely assert an objection, even one of privilege,
20   constitutes a waiver of such objection."  Mackey v. IBP, Inc., 167 F.R.D. 186, 200 (D.
21   Kan. 1996); see also Rascon v. Hardiman, 803 F.2d 269, 277 (7th Cir. 1986) ("[f]ailure
22   to object at the time of the deposition results in a waiver of those objections");
23   Palazzetti Import/Export, Inc. v. Morson, 2000 WL 1015921, at *1 (S.D.N.Y. Jul. 21,
24   2000) (failure to object to deposition questions or instruct not answer on the basis of

25   _____
26   [84]  Opp. at 29.
     [85]  Opp. at 28.
27   [86]  Motion at 24-25, 28-33.
     [87]  Opp. at 23-24.
28

1  privilege constitutes waiver of that privilege); <u>Perrignon v. Bergen Brunswig Corp.</u>, 77
2  F.R.D. 455, 461 (N.D. Cal. 1978) (attorney waives client's privilege when he fails to
3  object to deposition). Despite Mr. Kleven's predilection for instructing not to answer,
4  he never once instructed, or even objected, on the basis of privilege during the
5  deposition when Mr. Woodman was being questioned as to information on the
6  preparation, review and approval of MGA's sworn statements. Mr. Richard Daniels,
7  MGA's in-house counsel and the declarant purportedly supporting MGA's brand-new
8  privilege claim, was sitting next to Mr. Klevens throughout Mr. Woodman's deposition
9  and did nothing to assert any claims of privilege as to the documents he lists in his
10 declaration.

11       Second, to the extent Mr. Daniels' declaration provides any support for a
12 privilege assertion at all, such "blanket claims of privilege" are improper. <u>Nguyen v.</u>
13 <u>Excel Corp.</u>, 197 F.3d 200, 207 n.16 (5th Cir. 1999); <u>see also</u> 6 James Moore et al.,
14 <u>Moore's Federal Practice</u> § 26.47(1) (3d ed. 1999) ("A bald assertion of privilege is
15 insufficient.... [A] claim of privilege must be directed to specific questions ..., so that
16 the trial court has enough information so as to rule on the privilege claim.") (footnotes
17 omitted). Even a generalized claim in an affidavit or declaration setting forth facts
18 supporting the assertion of privilege over the category of communications inquired
19 into—which is far beyond Daniels' attestation that lawyers were just "involved in the
20 preparation" of these exhibits—is not sufficient.     Rather, each document or
21 communication must be inquired into individually to assess the applicability of the
22 privilege. <u>Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust</u>, 230
23 F.R.D. 398, 407 (D. Md. 2005) (noting that attorney's "general and conclusory"
24 affidavit "rel[ied] mistakenly on his status as a lawyer and status of the other party to
25 the communication as a client, or agent of a client" to improperly shield discovery).

26       Finally, the information MGA seeks to protect from disclosure is not privileged.
27 Courts allow inquiries into the circumstances surrounding the creation of affidavits and
28 declarations, even when the parts of those documents may well be protected by the

-33-

1   privilege. See, e.g., Davis v. City of Seattle 2007 WL 4166154, at *3-4 (W.D. Wash.
2   Nov. 20, 2007) (allowing inquiry into factual information surrounding preparation of an
3   otherwise privileged report); Wells v. Xpedx, 2007 WL 1200955, at *4 (M.D. Fla. Apr.
4   23, 2007) (same); Judicial Watch, Inc. v. U.S. Dept. of Comm., 201 F.R.D. 265, 269-
5   270 (D.D.C. 2001) (allowing inquiry into draft declaration over work-product
6   objections); Warnaco, Inc. v. Freund, 94 F.R.D. 237, 238 (E.D.N.Y. 1980) (permitting
7   inquiry into factual information regarding preparation of an affidavit). Here not even
8   the underlying documents are privileged; in fact, every last one of them was submitted
9   to a third party, like a court, the Patent and Trademark Office or the Copyright Office.

10         MGA should be ordered to provide full and complete testimony as to the
11  circumstances of MGA's sworn statements—including the context, the preparation, the
12  review, the confirmation of facts, the approval and the authorization of the statements—
13  without further objection or qualification.

14  **V.    MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE**
15  **A COMPETENT WITNESS TO TESTIFY REGARDING SPECKIN'S**
16  **INK AND PAPER TESTING (TOPIC NO. 41), AND MGA'S**
17  **DESIGNEE TONNU SHOULD BE COMPELLED TO RETURN TO**
18  **ANSWER QUESTIONS REGARDING THAT TOPIC**

19         **A.    Mattel is Entitled to Information Concerning the Factual**
20                **Circumstances Surrounding Mr. Speckin's Testing**

21         Mattel does not seek information concerning Mr. Speckin's opinions or the
22  results of his tests on Bratz documents, which is the sole predicate of MGA's work
23  product objections.[88] Rather, Mattel seeks factual information concerning the handling
24

25  [88]   MGA knows this. See e.g. Tonnu Tr. 164:10-165:19, attached to the Supp.
    Corey Dec., Exh. 1; 9/25/07 Tonnu Tr. 571:22-579:12, attached to the Supp. Corey
26  Dec., Exh. 3. MGA's objections must be put into context with its past, similar
27  (overruled) objections concerning Topic No. 41. MGA at first refused to produce
    any witness in response to Topic No. 41, asserting that the results of testing by Erich
28  (footnote continued)

1  of original Bratz documents, as well as the identification of specific documents which

2  were subjected to handling by Mr. Speckin.[89]  These factual circumstances *surrounding*

3  Mr. Speckin's testing are not protected from discovery by the work-product doctrine.[90]

4  MGA does not dispute that Mattel is entitled to this information by law and pursuant to

5  Court Order.[91]  MGA's improper instructions not to answer deposition questions

6  concerning these surrounding facts should be overruled and sanctions should be

7  imposed against MGA.

8              1.    **MGA Admits Mattel is Entitled to the Factual Information**

9                    **Surrounding Mr. Speckin's Testing**

10        MGA objects to providing information concerning which documents were tested,

11 asserting that the "selection of certain pieces of evidence from a mass of evidence is an

12

---

13 Speckin, its alleged expert, are protected by attorney work product and privilege
   until it designates him to testify. MGA Entertainment Inc.'s Opposition to
14 Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses for Deposition
15 Pursuant to Rule 30(b)(6) and for Sanctions, dated April 26, 2007 ("MGA
   Opposition"), at 9-10, attached to the Corey Dec., Exh. 18. The Discovery Master
16 and then the District Court overruled MGA's objections. May 16 Order, ¶ 5,
17 attached to the Corey Dec., Exh. 11; Judge Larson's Minute Order dated July 2,
   2007, attached to the Corey Dec., Exh. 15. Still, MGA refused to comply, and the
18 Discovery Master in his August Order sanctioned MGA for its willful failure to
19 provide a witness to testify on this Topic. When MGA's witness eventually did
   appear, MGA instructed her not to answer. Motion at 46:21-47:5.
20    [89]   Opp. at 16-18. The case law relied upon by MGA focuses on whether a party
21 may discover its opponent's consulting expert's test results, as opposed to the factual
   circumstances surrounding the testing. See e.g. AK Steel Corp. v. Sollac & Ugine,
22 234 F. Supp. 2d 711, 713-14 (S.D. Ohio 2002) (plaintiff moved to compel
23 production "of *the results* of gas composition tests" performed by defendant)
   (emphasis added); Vardon Golf Co. v. BBMG Golf Ltd., 156 F.R.D. 641, 646 (N.D.
24 Ill. 1994) (plaintiff sought the information regarding the selection process for how
25 certain golf club heads were determined to be those selected for testing). It is
   therefore irrelevant to this matter.
26    [90]   See Fed. R. Civ. P. 26(b)(4)(B); Motion at 47:8-48:18.
27    [91]   See May 16 Order, ¶ 5, attached to the Corey Dec., Exh. 11; Judge Larson's
   Minute Order dated July 2, 2007, attached to the Corey Dec., Exh. 15.
28

                                          -35-

1   essentially important part of an attorneys' preparations."[92]   MGA itself, however,
2   *knowingly provided to Mattel's counsel a list identifying the documents that*
3   *Mr. Speckin tested to Mattel during the deposition of MGA designee Lisa Tonnu.*[93]



25   [92]   Opp. at 17:23-24.
26   [93]   See Tonnu Deposition Exhibit 521, attached to the Supp. Corey Dec., Exh. 4.
27   [94]   Tonnu Tr. 164:10-165:19, attached to the Supp Corey Dec., Exh. 1 (emphasis
28   added).

07209/2340825.1

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS



MGA now states that it will *not* produce any information concerning the identification of the documents to which Speckin referred in paragraph 8 of his declaration because that is work product.[96]

       To be clear, Mattel does not want the list of documents reproduced. As MGA's counsel stated, the list of documents provides no bates numbers for the documents, or other specific identification information, other than vague characterizations. For example, the list "identifies" documents such as "Three girls, big boots," and "Pointing finger, sculpt drawings."[97] The parties agreed that MGA would provide identification information for which documents the list referred to, and MGA reproduced Ms. Tonnu to testify accordingly.[98] MGA, after agreeing to do so, failed to educate Ms. Tonnu and provided no explanation for reneging on its agreement to provide document identification information.

       Nor did MGA assert any work product objection to questions about the identification of the documents. MGA instructed the witness not to disclose Speckin's results. MGA raised no work product objection to questions about the identification of the documents. To the contrary, MGA's counsel instructed the designee *to answer the question*, thus waiving any claim that the identity of the documents is subject to the work product protection:[99]

---

[95]   Tonnu Tr. 165:25-166:15, attached to the Supp. Corey Dec., Exh. 1.
[96]   Opp. at 18:11-16.
[97]   Tonnu Deposition Exhibit 521, attached to the Supp. Corey Dec., Exh. 4.
[98]   See Letter from Jon Corey to Jim Jenal, dated July 24, 2007, attached to the Supp. Corey Dec., Exh. 6..
[99]   MGA does not object to all information requested by Mattel in this instance as protected work-product, and thereby implicitly admits it is not privileged. MGA asserts the following information is protected work-product: "information (footnote continued)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17
18
19
20
21
22
23
24
25
26
27
28

concerning the selection of evidence for testing, choice of tests, testing conditions, and the logistics of tests" conducted by Mr. Speckin. Opp. at 17:1-4. By implication, even MGA does not believe information concerning how the tested documents were handled, how they were shipped and how they were stored is work product, or objectionable. Further, MGA fails to explain, as it must to carry its burden, how information concerning shipping, handling and storage is "opinion work-product," containing " "the mental impressions, conclusions, opinions or legal theories as an attorney," and therefore is "privileged from discovery." See Vardon Golf Co. v. BBMG Golf Ltd., 156 F.R.D. 641, 646 (N.D. Ill. 1994), discussed at Opp. at 17:23-18:10. Nor can it—such a position is illogical. MGA would have to claim work-product privilege as to whether the documents were shipped via Federal Express or UPS, and the type of packing and handling material used, for example. This makes no sense. Tellingly, MGA cites no authority supporting the position that such information concerning a consulting expert's work is work-product and privileged. Thus, for this reason and the reasons discussed herein and in the Motion, MGA's instructions not to answer related deposition questions should be overruled.



07209/2340825.1

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS



MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS



MGA does not explain why it reneged on its agreement. A witness capable of identifying the documents tested—by Bates number or other sufficient specificity—must be produced.[101]

Similarly, MGA claims that the tests Speckin performed are also protected by the work product doctrine. Opp. at 17. MGA overlooks that it disclosed the tests—"sidelight testing," examination using "infrared light," Electrostatic Detection Apparatus testing, "ink identification tests," and "ink dating chemical analysis"—that Speckin conducted in the declaration that it submitted to Judge Larson.[102] Ms. Tonnu testified to the same.[103] Having disclosed them, MGA cannot claim that they are covered by the work product protection and must produce a witness to testify regarding them, something Tonnu could not do.

---

[100]   9/25/07 Tonnu Tr. 571:22-579:12, attached to the Supp. Corey Dec., Exh. 3.
[101]   Tonnu testified that all of the tested documents were produced to Mattel. Tonnu Tr. at 578:3-579:5, attached to the Corey Dec. Ex. 2.
[102]   See Speckin Decl., attached to the Corey Dec., Exh. 19.
[103]   9/25/07 Tonnu Tr., 579:13-20, attached to the Corey Dec., Exh. 2.

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1

2. **MGA Concedes That The Federal Rules Abolish The Notion**

2

**That This Information Is "Privileged" Or Protectable As**

3

**"Work Product"**

4      MGA cites no authority proving that information tangential to its consulting

5   expert's testing of documents is work product, nor can it.  MGA does not refute, and

6   implicitly concedes that, as explained in the Advisory Committee Notes for <u>Rule</u>

7   <u>26(b)(4)(B)</u>, the governing rule for discovery of information from a consulting expert is

8   <u>not</u> "work product," but rather the doctrine of "unfairness:"

9              Subdivision (b)(4)(B) deals with an expert who has been
             retained or specially employed by the party in anticipation

10            of litigation or preparation for trial (thus excluding an
             expert who is simply a general employee of the party not

11            specially employed on the case), but who is not expected
             to be called as a witness. Under its provisions, <u>a party may</u>

12            <u>discover facts known or opinions held by such an expert</u>
             <u>only on a showing of exceptional circumstances under</u>

13            <u>which it is impracticable for the party seeking discovery to</u>
             <u>obtain facts or opinions on the same subject by other</u>

14            <u>means.</u>

15            . . .

16            These new provisions of subdivision (b)(4) repudiate the
             few decisions that have held an expert's information

17            privileged simply because of his status as an expert, <u>e.g.</u>,
             American Oil Co. v. Pennsylvania Petroleum Products

18            Co., 23 F.R.D. 680, 685-686 (D.R.I.1959). <u>See</u> Louisell,
             Modern California Discovery 315-316 (1963). <u>They also</u>

19            <u>reject as ill-considered the decisions which have sought to</u>
             <u>bring expert information within the work-product doctrine.</u>

20            <u>See</u> United States v. McKay, 372 F.2d 174, 176-177 (5th
             Cir.1967). <u>The provisions adopt a form of the more</u>

21            <u>recently developed doctrine of "unfairness." See e.g.</u>,
             United States v. 23.76 Acres of Land, 32 F.R.D. 593, 597

22            (D.Md.1963); Louisell, supra, at 317-318; 4 <u>Moore's</u>
             <u>Federal Practice</u> ¶ 26.24 (2d ed. 1966).[104]

23

24   The work-product privilege does not apply to information concerning the facts

25   surrounding Mr. Speckin's handling and testing of the Bratz documents.

26

27   [104]   Advisory Comm. Notes (1970) 48 FRD 487, 505 (emphasis added); <u>see</u> <u>also</u>
        Motion at 47:8-48:18.

28

07209/2340825.1

**(a)**     **MGA Concedes That the Rules Permit Discovery of Facts Surrounding Mr. Speckin's Testing**

"In assessing 'unfairness,' courts balance the intrusion on the resisting party's work product and the coerced appropriation of the nontestifying expert's knowledge *against the need for information that cannot be obtained in any other way*, in order to make an accurate determination of the facts." Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide: Civ. Proc. Before Trial, § 11:927 (Rutter's Group 2007) (emphasis in original) (citations omitted).[105] MGA does not address the "unfairness" issue raised in Mattel's motion, implicitly conceding that it is not only impracticable, but impossible for Mattel to obtain these facts elsewhere, that such facts are uniquely known to MGA's expert Mr. Speckin, and that MGA's refusal to provide the same precludes Mattel from properly discovering how original evidence was handled (or mis-handled), which is inherently unfair. MGA instead implies that Mattel seeks this information to make up for problems MGA believes Mattel has in its testing of the Bratz documents.[106] MGA's

---

[105]     Assuming that the information Mattel seeks contains "facts known or opinions held by" Mr. Speckin, Rule 26(b)(4)(B) permits discovery of this information, as MGA concedes, upon "showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(B); see also Motion at 47:8-50:4. Further, MGA states that "exceptional circumstances" may exist "where 1) the object or condition at issue is destroyed or has deteriorated after the non-testifying expert observes it but before the moving party's expert has an opportunity to observe it; or 2) there are no other available experts in the same field or subject area." Opp. at 19:11-14 (citing FMC Corp. v. Vendo Co., 196 F. Supp. 2d 1023, 1046 (E.D. Cal. 2002). MGA misrepresents the case law by implying that these are the only "exceptional circumstances" permitting discovery. See Opp. at 19:15-16, 20:4-22:5.

[106]     See, e.g. Opp. at 21:14-19. Based on its incorrect assertion concerning what Mattel seeks through deposition testimony, MGA argues at length that Mattel is unable to prove spoliation. MGA's argument is a red herring. Mattel does not seek information in response to Topic 41 solely to determine whether there was spoliation. Mattel seeks information in response to Topic No. 41 so that its consultants may be fully informed about the handling and treatment of the originals. (footnote continued)

1  argument is nothing more than speculation and misses the point.   Mattel needs
2  information concerning what, if any, changes, damage, or other alterations were made
3  to the Bratz design documents.   Without such information, Mattel experts cannot
4  ascertain whether they arose as a result of Bryant's doings, or in the shipping, handling,
5  and/or testing by MGA or Mr. Speckin.

6          **3.**    **MGA's Objections To Providing Information Concerning the**
7                  **Testing of Original Bratz Documents Were Overruled and**
8                  **MGA was Compelled to Produce A Competent Witness to**
9                  **Provide Complete Testimony**

10       MGA does not dispute, and thereby concedes, that all of its objections and
11  limitations to information concerning the testing or sampling of Bratz documents were
12  overruled.[107]   Further, MGA does not dispute, and thereby concedes, that it was
13  sanctioned for its "clear and flagrant violation of a court order" in failing to produce a
14  witness to discuss this information in response to Topic No. 41.[108]   MGA does not
15  refute, and thereby concedes, that it had an obligation to produce a competent witness
16  properly prepared to respond to Topic No. 41 and, for the third time, failed to do so.
17  Finally, MGA does not refute that it failed to produce a witness properly prepared to
18  testify on Topic No. 41.   Pursuant to the Court's Orders, Mattel is entitled to the
19  information concerning the shipping, handling and testing of Bratz documents,
20
21  _____

22  For the same reasons, MGA's unsubstantiated argument that Mattel is somehow at fault for not testing the Bratz documents is a red herring as well.
23  [107]   May 16 Order, ¶ 5, attached to the Corey Dec., Exh. 11. This information was requested in Topic 41 of the Second Notice, which seeks: "The testing of or
24  sampling from DOCUMENTS that REFER OR RELATE TO BRATZ or BRYANT, including without limitation such testing or sampling in connection with
25  any ink, paper or chemical analysis performed or attempted to be performed to date, and DOCUMENTS that REFER OR RELATE thereto and all results and reports
26  relating thereto." See Corey Dec., Exh. 8.
27  [108]   August Order, 9:15-22, Corey Dec., Exh. 12.
28

1 | including while in Mr. Speckin's possession. MGA's instructions to the contrary should
2 | be overruled.

3 | **VI. MGA WAIVED ANY CLAIM OF PRIVILEGE TO DOCUMENTS**
4 | **USED TO REFRESH LOCKHART'S RECOLLECTION**

5 | **A. MGA Failed to Present Any Evidence Demonstrating that the**
6 | **Logged Documents are Privileged.**

7 | MGA claims that the privilege log, and the privilege log alone, is sufficient to
8 | evidence for the Discovery Master to conclude that the document preservation e-mail
9 | messages are privileged.[109] A conclusory privilege log, however, is not evidence.

10 | As the party asserting the privilege, MGA bears the burden of proving that the
11 | document preservation-related documents are privileged. See U.S. v. Landof, 591
12 | F.2d 36, 37 (9th Cir. 1978) (party asserting the attorney-client privilege must prove
13 | that: "(1) Where legal advice of any kind is sought (2) from a professional legal advisor
14 | in his capacity as such, (3) the communications relating to that purpose, (4) made in
15 | confidence (5) by the client, (6) are at his instance permanently protected (7) from
16 | disclosure by himself or by the legal advisor, (8) except the protection be waived...."). 
17 | MGA submitted no deposition testimony, no declarations and no other evidence that
18 | tends to prove the required elements to establish that the documents are privileged, not
19 | even the documents themselves. Absent any evidence supporting the objection, it must
20 | be overruled. See, e.g., id. The only "evidence" supporting any claim of the privilege
21 | is the privilege log, which is not competent evidence of the privilege. EEOC v.
22 | Safeway Store, Inc., 2002 WL 31947153 * 3 (N.D. Cal. Sept. 16, 2002) (noting that
23 | when the court has only documents and a conclusory privilege log to support a claim a
24 | privilege, the court must evaluate the claim of privilege *based on the face of the*
25 | *documents themselves*); Clavo v. Zarrabian, 2003 WL 24272448, *2 (C.D. Cal. July 9,
26 | 2003) (burden to establish privilege cannot be met by mere conclusory assertions).

27 |

---

[109] Opp. at 36-37.

28 |

1   Because MGA presented no evidence, much less evidence sufficient to prove that the

2   documents are privileged, their production should be compelled.

3   **B.   Because the Documents Refreshed Lockhart's Recollection, They**

4   **Must Be Produced**

5   Furthermore, MGA does not dispute that Lockhart reviewed the documents to

6   prepare for his deposition and they refreshed his recollection. MGA's only argument is

7   that MGA's counsel provided these documents to Lockhart to provide information to

8   testify as MGA's Rule 30(b)(6) topics related to document preservation. That does not

9   change the result; the documents must be produced.

10   It is well settled that when a witness' recollection is refreshed, as Lockhart's was

11   with the preservation-related documents, any claim of privilege respecting that

12   privilege is waived. See Ehrlich v. Howe, 848 F. Supp. 482, 493 (S.D.N.Y. 1994)

13   ("when [c]onfronted with the conflict between the command of Rule 612 to disclose

14   materials used to refresh recollection and the protection afforded by the attorney-client

15   privilege . . . the weight of authority holds that the privilege . . . is waived") (internal

16   quotations omitted); U.S. v. 22.80 Acres of Land, 107 F.R.D. 20, 25-26 (N.D. Cal.

17   1985) (work product privilege waived where deponents used documents to refresh

18   recollection).

19   That Lockhart was a Rule 30(b)(6) designee does not change that result. Citing

20   two cases from the Southern and Middle Districts of Florida and an excerpt from the

21   legislative history of Federal Rule of Evidence 612, MGA asserts that the general rule

22   of waiver when a document refreshes a deponent's recollection does not apply if the

23   deponent is also a corporate designee. Opp. at 6:4 to 7:9. When the corporate designee

24   deponent has reviewed documents to refresh his recollection prior to deposition, the

25   greater weight of authority, militates in favor of disclosing those documents. See, e.g.,

26   Marshall v. United States Postal Service, 88 F.R.D. 348, 350 (D.D.C. 1980) ("[I]t is

27   apparent that once a document is used to refresh the recollection of a witness, privileges

28   as to that document have been waived."); Wheeling-Pittsburgh Steel Corp. v.

-46-

1   <u>Underwriters Laboratories, Inc.</u>, 81 F.R.D. 8, 10-11 (N.D. Ill. 1978) (holding that

2   plaintiff waived the attorney-client privilege as to the documents in question by

3   allowing their use for the purpose of refreshing deponent's recollection); <u>S&A Painting</u>

4   <u>Co., Inc. v. O.W.B. Corporation</u>, 103 F.R.D. 407, 409 (W.D. Pa. 1984 (finding

5   attorney-client privilege waived and noting that "[c]onfronted with the conflict between

6   the command of Rule 612 to disclose materials used to refresh recollection and the

7   protections afforded by the attorney-client privilege and the work product doctrine, the

8   weight of authority holds that the privilege and protections are waived.") (*citing* <u>James</u>

9   <u>Julian, Inc. v. Raytheon Co.</u>, 93 F.R.D. 138 (D. Del.1982) (work-product protection

10   waived); <u>Marshall v. United States Postal Service</u>, 88 F.R.D. 348, 350 (D.D.C. 1980)

11   (attorney-client privilege waived); <u>Wheeling-Pittsburgh Steel Corp. v. Underwriters</u>

12   <u>Laboratories, Inc.</u>, 81 F.R.D. 8, 9 (N.D. Ill. 1978) (attorney-client privilege waived);

13   <u>Bailey v. Meister-Brau, Inc.</u>, 57 F.R.D. 11, 13 (N.D. Ill. 1972) (attorney-client privilege

14   and work-product protection waived)). Therefore, in accordance with the foregoing

15   authorities, MGA should be ordered to produce the documents reviewed by

16   Mr. Lockhart in preparing for his 30(b)(6) deposition.

17       Further, even if MGA's standard applied, the "interests of justice"[110] compel the

18   production of the documents. MGA states unequivocally that "Mr. Lockhart was

19   required to review the purportedly privileged document preservation e-mail messages

20   because they related to MGA's preservation of documents in connection with this action

21   and they were reasonably available to MGA."[111] The only reason Lockhart reviewed

22   those e-mail messages *was to provide the information that they contained to Mattel at*

23   *deposition.* Indeed, MGA concedes that this is information that Lockhart should have

24   provided to Mattel. Given these circumstances, the "interests of justice" compel the

25   production of those documents so that Mattel may have that information.

26

27   [110]  Opp. at 38:27.

28   [111]  Opp. at 38:11-14.

07209/2340825.1

-47-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO
COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1   **C.    MGA Has Waived the Work Product Doctrine.**

2   MGA's attempt to invoke the work product doctrine to prevent disclosure of the

3   documents relied upon by Mr. Lockhart in preparing for his deposition is equally

4   unavailing. See Opp. at 7:7-8; 38:1-7. Decisions from district courts in this Circuit

5   make clear that MGA's claims of work product protection were also waived once

6   Mr. Lockhart reviewed the requested documents to refresh his recollection in

7   preparation for his deposition. See United States ex rel. Bagley v. TRW Inc., 212

8   F.R.D. 554, 565-66 (C.D. Cal. 2003) (requiring disclosure of documents reviewed by

9   relator in preparing for his deposition based upon waived of work product doctrine);

10  United States v. 22.80 Acres of Land, 107 F.R.D. 20, 25-26 (N.D. Cal. 1985) (work

11  product privilege waived where deponents used documents to refresh recollection).

12  Therefore, MGA's claims of work product are also meritless.

13  **D.    The Legislative History Underlying Federal Rule of Evidence 612**

14  **Does Not Aid MGA.**

15  MGA's citation to the legislative history underlying Federal Rule of Evidence

16  612 is misguided. At the outset, the purpose underlying Rule 612 is clear—"to test the

17  credibility of a witness's claim that memory has been revived and to expose any

18  discrepancies between the writing and the testimony." S&A Painting Co., 103 F.R.D.

19  at 410. This purpose cannot be served unless MGA be compelled to produce the

20  documents purportedly reviewed by Mr. Lockhart in preparation for his

21  30(b)(6) deposition, particularly when Lockhart was unable to convey the information

22  contained in those documents at deposition.

23  Furthermore, uncertainties in the legislative history of the Rule render it

24  inappropriate to rely upon facts in the face of contrary court decisions. In examining

25  Rule 612's legislative history, one court commented:

26  The legislative history of Rule 612 is ambiguous. It can be read to

27  indicate a congressional intent to leave the decision as to privileged

28  documents to the sound discretion of the district courts for

-48-

1    resolution on a case by case basis. It is also possible to view the

2    record as reflecting an intent to exempt privileged documents from

3    the operation of the expanded rule.

4    James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 145 (D. Del. 1982). When likewise

5    presented with the same argument regarding Rule 612's legislative history as that

6    proffered by MGA, another court recognized that the "history is not so clear and

7    unambiguous as to preclude the court from requiring production in the interests of

8    justice, when the circumstances may warrant such production in the exercise of sound

9    judicial discretion." Barrer v. Women's National Bank, 96 F.R.D. 202, 204-205

10   (D.D.C. 1982) (rejecting plaintiff's argument based upon legislative history and

11   requiring *in camera* examination of purportedly privileged documents to ascertain if

12   disclosure should be ordered). MGA's reliance on ambiguous and unexplained

13   congressional intimations should be rejected.

14       **E.    MGA's Cases Are Inapposite.**

15       MGA cites In re Managed Care Litigation, 415 F. Supp. 2d 1378 (S.D. Fla.

16   2006), for the proposition that a deponent's review of privileged documents in

17   preparation for deposition does not waive the attorney-client privilege. See Opp. at

18   38:15-22. The deponent in Managed Care was in-house counsel for the American

19   Medical Association and, therefore, in that capacity his preparation for deposition

20   undoubtedly required review of privileged materials. See id. at 1379. That the district

21   court in Managed Care would not extend the rule of law set forth by other district

22   courts interpreting Rule 612 regarding waiver of attorney-client privilege to in-house

23   counsel is an unremarkable proposition. See id.

24       Further, the district court in Managed Care reasoned that "the production of

25   writings used to refresh a witness' recollection prior to testifying is left to the discretion

26   of the court in the interests of justice." Id. at 1380. Applying this reasoning to this

27   instant case should require that the requested documents be produced. Mattel is entitled

28   to the documents reviewed by Mr. Lockhart so that Mattel may "search out any

1  discrepancies between the writing and [his] testimony. . . . " <u>Wheeling-Pittsburgh Steel</u>
2  <u>Corp.</u>, 81 F.R.D. at 10. Unless disclosure of these documents is ordered, Mattel will
3  have no other manner in which to identify these discrepancies—a determination which
4  bears directly on Mr. Lockhart's credibility. <u>See</u>, <u>e.g.</u>, <u>S&A Painting Co.</u>, 103 F.R.D. at
5  410. Given that the "paramount purpose of the federal discovery rules is the
6  ascertainment of the truth," the interests of justice require disclosure. <u>Wheeling-</u>
7  <u>Pittsburgh Steel Corp.</u>, 81 F.R.D. at 10.

8       MGA's additional cite to an unpublished district court decision, <u>Medtronic</u>
9  <u>Xomed, Inc. v. Gyrus Ent LLC</u>, 2006 WL 786425 (M.D. Fla. Mar. 27, 2006), is
10 similarly misguided. <u>See</u> Opp. at 39:2-7. The sole issue in <u>Medtronic</u> was whether
11 plaintiff waived the work product doctrine when plaintiff's <u>Rule</u> 30(b)(6) deponent
12 reviewed a protected document to prepare for his deposition. <u>See id.</u> at *3. Ninth
13 Circuit district courts, however, make clear that where, as here, a deponent has
14 reviewed a document in preparing for his deposition, the protections afforded by the
15 work product doctrine are waived. <u>See</u> <u>United States ex rel. Bagley</u>, 212 F.R.D. at 565-
16 66; <u>22.80 Acres of Land</u>, 107 F.R.D. at 25-26. Given the holdings of these Ninth
17 Circuit district courts, one unpublished decision from the Middle District of Florida
18 should not be given weight.

19 **VII.   <u>TONNU'S DEPOSITION SHOULD BE REOPENED</u>**
20       **A.   <u>Tonnu's Deposition Should Be Reopened As A Result Of Material</u>**
21            **<u>Revisions To Her Deposition Transcripts</u>**

22       Contrary to MGA's assertion, the revisions allegedly made by Ms. Tonnu to her
23 transcript were material. MGA does not refute that when Ms. Tonnu had answered
24 "no," Mattel's counsel stopped a line of questioning at the deposition and moved on to
25 another one. Further, MGA admits that Ms. Tonnu was improperly prepared, and thus
26 provided "mistaken" testimony concerning whether she knew if documents were
27 collected. Such "mistaken" testimony precluded a line of questions into what
28 documents were collected, how they were collected and by whom. MGA does not deny

1  that these questions fall squarely within Topic Nos. 39 and 40, Topics on which

2  Ms. Tonnu was twice designated.   MGA does not deny that it should have been

3  prepared to provide a correct response and provide Mattel with essential information

4  but failed. For the reasons discussed herein, at a minimum Mattel is entitled to a Court

5  Order compelling the reopening of Ms. Tonnu's deposition for Mattel to explore the

6  reasons for Ms. Tonnu's "revised" testimony and to complete the lines of questioning

7  previously precluded by Ms. Tonnu's answers.

8  **B.    The Discovery Master Should Overrule MGA'S Improper**

9  **Instructions Not To Answer Questions At The Tonnu Deposition**

10  **And Impose Sanctions For Counsel For MGA's Interference With**

11  **Questioning**

12  MGA does not defend the conduct of its prior counsel or defend against Mattel's

13  arguments concerning MGA's counsel's multitude of improper instructions and

14  interference with the questioning at the deposition of Lisa Tonnu.[112]  MGA does not

15  refute, and thereby concedes, that MGA's counsel's objections were improper (for a

16  variety of reasons as discussed in the Motion), and interfered with the deposition.  It

17  cannot—as MGA implicitly concedes. The information sought was relevant and all of

18  MGA's objections and limitations to the Topics were overruled.

19  MGA, instead, asserts that the majority of the instructions simply "do not justify

20  additional Rule 30(b)(6) testimony."[113]  MGA does not oppose Mattel's request to

21  reopen Ms. Tonnu's deposition in light of MGA's counsel's misconduct. Further still,

22

23  [112]   MGA states that it should not be "burdened" as a result of its "prior

24  counsel's" misconduct. To the extent that MGA is implying it is absolved of its

   prior counsel's misconduct, simply because MGA replaced such counsel, MGA

25  misses the point. Who asserted the improper objections is irrelevant. At issue here

   is that Mattel could not obtain the deposition testimony to which it was entitled, and

26  for which MGA has been compelled to provide, and must therefore again be

27  compelled to provide.

   [113]   Opp. at 39:21-22.

28

-51-

1   MGA does not specifically oppose Mattel's request for sanctions for such misconduct.

2   Accordingly, Mattel asks that its unopposed request to reopen Ms Tonnu's deposition

3   and for sanctions be granted.[114]

4        MGA, however, cherry-picks one area of testimony concerning MGA's corporate

5   structure and states that its objections were proper.  MGA asserts that because the

6   questions at issue seek information concerning the personal finances of MGA

7   executives, MGA's counsel's instructions not to answer were proper on privacy

8   grounds.  MGA is incorrect.  Discovery on the issue is not automatically foreclosed,

9   simply because privacy concerns are asserted.  As MGA's legal authority states, MGA

10  has the burden of establishing an existence of a clearly established constitutional right,

11  and the burden to show discovery should not be allowed.[115]  MGA has not met its

12  burden.

13

[114]  MGA asserts that "Mattel has been deprived of no Rule 30(b)(6) testimony
to which it may be entitled as a result of any conduct by prior counsel."  Opp. at
41:23-24.  MGA does not address the specific instructions not to answer, coaching
of the witness, or otherwise improper conduct of MGA's counsel.  MGA states that
it will produce Ms. Tonnu for additional testimony on Topic Nos. 21 and 31.  MGA,
however, does not state whether it will withdraw its instructions for these topics, or
the remainder of the topics as set forth in the Motion.  Accordingly, MGA's
improper instructions should be overruled and that MGA be compelled to bring
itself into compliance with the Court's Order.

[115]  See e.g. Denius v. Dunlap, 209 F.3d 944, 950 (7th Cir. 2000); Keith H. v.
Long Beach Unified School, 228 F.R.D. 652, 656-657 (C.D. Cal. 2005); Charles O.
Bradley Trust v. Zenith Capital LLC, 2005 WL 1030218 *2 (N.D.Cal. May 3, 2005)
("Courts that have considered whether a disclosure of financial information might
violate a constitutional right to privacy have employed a balancing test to determine
whether there has been a violation . . . Following those courts and applying a
balancing test, the Court concludes that information on Defendants' net worth and
financial condition should be disclosed because the interests favoring disclosure (
e.g., ascertaining the truth, addressing potentially severe wrongdoing by Defendants,
ensuring enforcement of rights) outweigh the interests favoring nondisclosure.").
MGA misstates the case law by implying that all personal financial information is
subject to a constitutional right of privacy.  In reality, those cases reflect only that
"some types of financial information involve the degree and kind of confidentiality
(footnote continued)

-52-

1    First, MGA presented no evidence that the subject of the questions is "personal
2  financial information," nor did Mr. Larian or Mr. Makabi, as MGA suggested they
3  would. Bearing the burden of preventing the disclosure of such information, MGA (or
4  Larian or Makabi) must show that the information sought is, in fact, "private" within
5  the scope of the any applicable constitutional guarantees. They have not done that.
6  For example, two of Mr. Larian's trusts hold significant interests in Zapf, a publicly
7  traded company in Europe. Zapf's publicly available annual report identifies no fewer
8  than three trusts that Isaac Larian used to acquire shares of Zapf, including the Isaac
9  Larian and Angela Larian Trust, The Isaac Larian Qualified Annuity Trust 2004 DTD
10  6/30/04, and the Isaac Larian Annuity Trust.[116] And, on December 21, 2007, Amy
11  Park, counsel for MGA, identified two of these trusts for Jon Corey, counsel for Mattel,
12  with no suggestion that the identity of the trusts was confidential or otherwise subject to
13  the protective order.[117] This information is not private.

14    Second, MGA does not refute that the information sought is relevant. One or
15  more Larian trusts owns the shares of defendant MGA.[118] The identity and specifics of
16  MGA's shareholders is relevant for a number of reasons. First, it is relevant to
17  damages, given that since 2001, MGA has distributed almost $500 million to its
18  shareholders, including this trust or trusts.[119]   Second, depending on the structure of
19  the trusts, they may be relevant to a showing of Larian's net worth for punitive damages
20  claims. Mattel cannot make that determination without first knowing the trusts' basic
21  information. Third, MGA and Isaac Larian themselves have asserted unclean hands

22  _____
   that is entitled to a measure of protection under the federal constitutional right of
23  privacy." Denius, 209 F.3d at 958 (emphasis added).
     [116]   Zapf 2006 Annual Report at 13-15, attached to the Supp. Corey Dec.
24  Exh. 17.
     [117]   Supp. Corey Dec. ¶ 12.
25   [118]   Tonnu Tr. at 49:3 to 52:15, Corey Dec., Exh. 1.
26
27
28

-53-

1  defenses that include a claim that Mattel interfered with the acquisition of Zapf. As
2  demonstrated above, this acquisition was not by MGA or by Mr. Larian, but by certain
3  trusts who are not a party to this litigation.[120] Mattel is entitled to the identification of
4  the trusts and the details of those acquisitions to show that Zapf was not acquired by a
5  party, and on that basis the unclean hands defense not only fails, but that MGA and
6  Larian lack standing to even assert it.

7  　　　　Third, upon disclosure, the requested information is adequately protected and
8  maintained as confidential. MGA does not refute, and thereby concedes, that, to the
9  extent privacy concerns are implicated (and it is unclear that they are), MGA's remedy
10  is to rely on the Protective Order in place in this matter. Again, the case law MGA
11  relies upon holds as much. See e.g. A. Farber and Partners, Inc. v. Garber, 234 F.R.D.
12  186, 191 (C.D. Cal. 2006) ("Resolution of a privacy objection . . . requires a balancing
13  of the need for the information sought against the privacy right asserted . . . *Here,*
14  *plaintiff's need for defendant Garber's financial documents outweighs defendant*
15  *Garber's claim of privacy, especially when the 'impact' of the disclosure of the*
16  *information can be protected by a 'carefully drafted' protective order*.") (citing In re
17  Heritage Bond Litigation, 2004 WL 1970058, *5 n. 12 (C.D. Cal. July 23, 2004) ("Any
18  privacy concerns Kasirer defendants have in their bank records and related financial
19  statements are adequately protected by the protective order, and are not sufficient to
20  prevent production in this matter.); CEH, Inc. v. FV "Seafarer", 153 F.R.D. 491, 499
21  (D.R.I. 1994) ("While a party does have an interest in nondisclosure and confidentiality
22  of its financial records, this interest can be adequately protected by a protective
23  order.")) (other citations omitted) (emphasis added) (Opp. at 40:8-9); Keith H. v. Long

24

25  [119]　MGA Audited Financial Statements, page 966 ($7,965,129 for 2002); page
26  981 ($49,937,220 for 2003); page 1009 ($108,227,317 for 2004) ($151,796,331 for
   2005); and page 1023 ($143,023,000 for 2006), Corey Dec. Exh. 59.
27  [120]　Zapf 2006 Annual Report at 13-15, attached to the Supp. Corey Dec. Exh. 17
28  (showing Larian trusts acquisition of shares of Zapf).

07209/2340825.1

-54-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1   Beach Unified School, 228 F.R.D. 652, 657 (C.D. Cal. 2005) ("Resolution of a privacy

2   objection . . . requires a balancing of the need for the information sought against the

3   privacy right asserted . . . 'a carefully drafted protective order [can] minimize the impact

4   of this disclosure.'") (citations omitted) (emphasis added) (Opp. at 40:4-6). MGA is

5   obviously aware that the Protective Order in place in this matter is sufficient. The

6   Discovery Master previously so found with respect to Bryant's financial information,

7   and MGA itself invoked the Protective Order for previous testimony concerning MGA's

8   corporate structure.[121] MGA's instructions not to answer are therefore improper and

9   should be overruled. Mattel has no objection to doing so subject to the Protective

10  Order.

11

12

13

14

_____

15  [121]  Tonnu Tr., 48:9-49:1, attached to the Supp. Corey Dec., Exh. 1. MGA's
    argument that neither Ms. Tonnu nor MGA had the right to "invade the
16  constitutional privacy rights" of Messrs. Larian and Makabi because MGA and
    Tonnu are "custodians" of private information, is a red herring. MGA asserts no
17  evidence, or any explanation, as to how MGA and/or Ms. Tonnu is a "custodian" of
    such information. If anything, MGA failure to prove the information was provided
18  to Ms. Tonnu with any restriction of confidentiality actually *refutes* its claims here.
    In any event, the case law relied upon by MGA states that regardless of whether a
19  privacy right exists, protected by a custodian or not, the information may be
20  compelled if relevant or otherwise necessary for the case. See e.g. Cook v. Yellow
    Freight Sys., Inc., 132 F.R.D. 548, 552 (E.D.Cal. 1990) (overruling the privacy
21  considerations associated with third-party names because it was "outweighed by the
    importance of such discovery to the case."); Willis v. Mullins, 2006 WL 302343, *5
22  (E.D.Cal. Feb. 8, 2006; Hogan v. Robinson, slip op. 2006 WL 1049979, *4-5
23  (E.D.Cal. Apr. 20, 2006); and Bd. of Trustees of Leland Stanford Junior Univ. v.
    Superior Court, 119 Cal. App. 3d 516, 526 (1981). The information Mattel sought
24  is relevant to this matter and fell squarely within Topic Nos. 26 and 37, and relates
25  to a party to this litigation. MGA was compelled to produce a witness competent to
26  testify concerning this information and its objections and limitations thereto were
27  overruled. Tellingly, MGA does not refute these points.

28

-55-

1   VIII. **MGA SHOULD BE SANCTIONED FOR ITS FAILURE TO COMPLY**

2   **WITH THE ORDERS AND DISCOVERY ABUSES**

3   A. **Mattel Has Been Unfairly Prejudiced By MGA's Discovery**

4   **Violations And Is Entitled To Monetary Sanctions**

5   MGA argues that Mattel has not been prejudiced by MGA's repeated flouting of

6   its discovery obligations and this Court's Orders. This contention is without merit. The

7   Ninth Circuit has held that the "law presumes prejudice from unreasonable delay." In

8   re Phenylpropanolamine (PPA) Prods. Liability Litig., 460 F.3d 1217, 1227-28 (9th Cir.

9   2006); Moneymaker v. CoBen (In re Eisen), 31 F.3d 1447, 1453 (9th Cir. 1994)

10  (quoting Anderson v. Air West, Inc., 542 F.2d 522, 524 (9th Cir. 1976)); Morris v.

11  Morgan Stanley & Co., 942 F.2d 648, 652 (9th Cir. 1991) (presuming prejudice to

12  defendants due to delay). While this presumption of prejudice may be rebutted,[122]

13  MGA has failed to do so here, as it offers no justification for its refusal to comply with

14  the Court's express Orders. See Hernandez v. City of El Monte, 138 F.3d 393, 401 (9th

15  Cir. 1998) (indicating that the burden of production shifts to defendant to show at least

16  some actual prejudice only after plaintiff has given a non-frivolous excuse for delay).

17  Even if MGA presented a legitimate excuse for its repeated violations of the

18  Court's Orders (and it has not), Mattel would nonetheless be entitled to the monetary

19  sanctions it seeks, because it has suffered actual prejudice as a result of MGA's

20  misconduct. Actual prejudice may "consist of costs or burdens of litigation." PPA

21  Prods. Liability Litig., 460 F.3d at 1228 (citing Pagtalunan v. Galaza, 291 F.3d 639,

22  642 (9th Cir. 2002)). Here, Mattel has incurred the cost and burden of bringing the

23  present motion to compel MGA's compliance with the Court's May 16 and August 14

24  Orders. See Koch v. The Burlington Northern & Santa Fe Railway Co., 2006 WL

25  2927665 (W.D. Wash. 2006) (rejecting defendant's argument that plaintiff was not

26  prejudiced by delay because "defendant's dilatory conduct, including months of

27  ─────────────

[122]   See PPA Prods. Liability Litig., 460 F.3d at 1228.

28

07209/2340825.1

1   unfulfilled promises, forced plaintiff to file a motion to compel to obtain discovery

2   which defendant was undisputedly required to provide months ago"). Moreover, this is

3   a complex, high-stakes litigation which involves a number of complicated issues. As

4   the Discovery Master is well-aware, the cut off for Phase 1 discovery in this case is

5   January 28, 2008, with expert reports for Phase 1 due two weeks later, on February 11,

6   2008. With no prospect of any effort by MGA to comply with the Orders before the

7   second week of January, Mattel will have less than a month to prepare its expert

8   reports. This is also prejudicial. See Anderson, 542 F.2d at 525 (that the case "is an

9   involved, complex case increases the prejudice from the delay. Early preparation and

10  participation are essential in such circumstances").

11        MGA should not be rewarded for its delay tactics and violation of the Court's

12  Orders. Accordingly, the Court should grant Mattel's request for partial reimbursement

13  of its fees and costs.[123]

14

15

16

17

18      [123]   Based upon the December 14, 2007 hearing, MGA declines to address

19  Mattel's request for preclusion sanctions and for an order recommending a finding
    of contempt, stating that it "will address any such claims, if Mattel chooses to press

20  them, at the appropriate time." Opp. at 59. Mattel understands that a single report

21  to the Discovery Master following the close of Phase 1 discovery is appropriate.
    Accordingly, Mattel does not further address the recommendation for either

22  preclusion sanctions or contempt at this juncture with the understanding that Mattel

23  will not be prejudiced or otherwise lose its ability to pursue those remedies for the
    violations identified in this Motion and Reply. Carter Bryant also filed a response to

24  Mattel's Motion on December 18, 2007, arguing that he allegedly would be

25  adversely affected by Mattel's requested preclusion sanctions, and asking that they
    be denied on that basis. As indicated above, and in accordance with the Court's

26  directive at the December 14, 2007 hearing, Mattel does not address Bryant's

27  arguments at this time. Mattel reserves the right, however, to brief this issue and
    otherwise respond to Bryant's contentions following the close of Phase 1 discovery.

28

1

## Conclusion

2          For the reasons set forth above, in the accompanying Responses to the Separate

3 Statements, and in Mattel's Motion and in the accompanying Separate Statements,

4 Mattel respectfully requests that its Motion be granted in its entirety.

5

6 DATED:  December 26, 2007          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
7

8                                     By  _Jon D. Corey /SH_____

9                                         Jon D. Corey
                                          Attorneys for Mattel, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO
COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS