1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2   John B. Quinn (Bar No. 90378)
     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
                                         Consolidated with
12                                       Case Nos. CV 04-09059 & CV 05-2727
                  Plaintiff,
13        vs.                            Hon. Stephen G. Larson

14  MATTEL, INC., a Delaware             MATTEL, INC.'S OPPOSITION TO
    corporation,                         CARTER BRYANT AND MGA
15                                       DEFENDANTS' *EX PARTE*
                                         APPLICATION TO COMPEL
16                Defendant.             PROPERLY NOTICED DEPOSITIONS

17                                       [Declaration of Jon D. Corey Filed
                                         Concurrently Herewith]
18  AND CONSOLIDATED ACTIONS
                                         Hearing Date:    January 7, 2008
19                                       Time: 10:00 a.m.
                                         Place: Courtroom 1
20
                                         **Phase 1**
21                                       Discovery Cut-Off:    January 28, 2008
                                         Pre-Trial Conference: May 5, 2008
22                                       Trial Date:           May 27, 2008

23

24

25

26

27

28

07209/2341996.2

MATTEL'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO COMPEL DEPOSITIONS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 3

ARGUMENT ............................................................................................................ 5

I.    THE COURT SHOULD DENY DEFENDANTS' APPLICATION
      FOR *EX PARTE* RELIEF BECAUSE THEY CANNOT MAKE THE
      REQUISITE SHOWINGS ................................................................................ 5

      A.    *Ex Parte* Relief Is Only Justified Where The Applicant Is
            Without Fault In Creating The Crisis ..................................................... 5

      B.    Defendants' Own Actions Caused The Alleged "Crisis" ......................... 5

II.   THE COURT SHOULD DENY DEFENDANTS' *EX PARTE*
      APPLICATION BECAUSE DEFENDANTS HAVE FAILED TO
      SERVE THE NECESSARY SUBPOENAS ON SEVEN OF THE TEN
      INDIVIDUALS WHOSE DEPOSITIONS THEY SEEK TO COMPEL ........ 7

      A.    A Deposition Of A Rule 30(b)(6) Designee That Far Exceeds the
            Scope of the Designation Constitutes An Additional Deposition
            of the Witness in His Individual Capacity .............................................. 9

      B.    Defendants Will Far Exceed the Court's Limit of 24 Depositions
            Per Side If They Are Permitted to Take the Ten Additional
            Depositions They Now Seek .................................................................. 11

      C.    Defendants' Application Contradicts Their Opposition To
            Mattel's Motion to Take Additional Discovery ..................................... 17

CONCLUSION ........................................................................................................ 18

-i-

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

Detoy v. City and County of San Francisco,
196 F.R.D. 362 (N.D. Cal. 2000) .......................................................................... 10

Jackson v. Woodford,
2007 WL. 2580566 (S.D. Cal. August 17, 2007) ................................................. 6

King v. Pratt & Whitney, a Div. of United Technologies Corp.,
161 F.R.D. 475 (S.D. Fla. 1995) ....................................................................... 8, 9

Mission Power Engineering Co. v. Continental Casualty Co.,
883 F. Supp. 488 (C.D. Cal. 1995) ..................................................................... 4, 5

In re Sulfuric Acid Antitrust Litigation,
No. C03-4576, 2005 WL. 1994105 (N.D. Ill. Aug. 19, 2005) ............................... 8

Taylor v. Shaw,
2007 WL. 710186 (D. Nev. 2007) ..................................................................... 9, 10

U.S. v. Santiago-Lugo,
904 F. Supp. 43 (D. Puerto Rico 1995) ................................................................. 6

UniRam Tech., Inc. v. Monolithic Sys. Tech., Inc., No. C 04-1268 VRW (MEJ),
2007 WL. 915225 (N.D. Cal. Mar. 23, 2007) ....................................................... 8

United States v. Taylor,
166 F.R.D. 356 (M.D.N.C. 1996) .......................................................................... 9

### **Statutes**

Fed. R. Civ. P. 26(b)(1) ............................................................................................ 8, 9

Fed. R. Civ. P. 30 ......................................................................................................... 9

Fed. R. Civ. P. 30(a)(2)(A), ........................................................................................ 8

Fed. R. Civ. P. 30(b)(6) ........................................................ 2, 3, 8, 9, 10, 11, 16, 17

Fed. R. Civ. P. 45 .................................................................................................. 6, 7, 8

Fed. R. Civ. P. 45(b) .................................................................................................... 6

Local Rule 37-3 ............................................................................................................ 4

### **Other**

Charles Alan Wright & Arthur R. Miller,
8A Federal Practice and Procedure § 2103 ........................................................... 8

Schwarzer, Tashima & Wagstaffe
   Cal. Prac. Guide: Fed. Civ. Pro. Before Trial §§ 11:2220, 11:2224 ...................... 6

Schwarzer, Tashima & Wagstaffe
   Cal. Prac. Guide: Fed. Civ. Pro. Before Trial 11:2228 ........................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

By their *ex parte*, Defendants seek to compel Mattel to produce ten additional individuals for deposition as Phase I witnesses. The application should be denied for the reasons discussed below. But it also contradicts Defendants' claims in their opposition to Mattel's Motion to Take Additional Discovery. In opposing that motion, Defendants argue that Mattel should not be allowed to take additional depositions because the time has come to "wrap up" discovery and it is too late to take additional Phase I discovery. Among the many flaws in Defendants' positions as shown on Mattel's papers, however, the bulk of the discovery Mattel seeks leave to serve relates to Phase II, so Defendants' timing argument is misplaced. Defendants' implicit contention on their present *ex parte* that there is sufficient time to take 10 additional depositions even before the close of Phase I discovery means that surely there is sufficiently time to take the additional discovery Mattel seeks.

The application should be denied because *ex parte* relief is not proper here. In stark contrast to the additional, largely Phase II discovery Mattel has requested, Defendants have no excuse for not previously seeking the 10 depositions they now demand be compelled by *ex parte*. On December 12, 2007, shortly before the holidays, and only some three weeks ago, Defendants informed Mattel *for the first time* that they wished to take these ten additional depositions that (they claim) all relate to Phase I claims. Defendants now complain, that absent *ex parte* relief, they will not be able to take all ten depositions before the January 28 fact discovery cut-off date. Defendants knew all along that the Phase I discovery cut-off was fast approaching, yet they made the decision to wait until mid-December to request ten additional Phase I depositions and until now to seek *ex parte* relief. If Defendants do not have sufficient time to depose these individuals before the discovery cut-off date, it is no one's fault but their own. Any urgency and prejudice to the Defendants is of their own creation, which alone compels denial of their *ex parte*.

1    In addition to being improper as an *ex parte*, the application is without
2   merit. In seeking to compel Mattel to produce ten additional individuals for deposition,
3   Defendants attempt to circumvent the Court-imposed limit of 24 depositions per side.
4   To date, Defendants have already taken and scheduled twenty-three out of their twenty-
5   four allotted depositions. This calculation includes the eight depositions of Mattel's
6   <u>Rule</u> 30(b)(6) designees where Defendants examined witnesses beyond the scope of the
7   designated subject matters. Depositions of corporate <u>Rule</u> 30(b)(6) designees that far
8   exceed the scope of the designation -- where examining counsel attempts to gather
9   totally unrelated information that would normally be gathered through individual
10  depositions -- become depositions of individual fact witnesses, and should be counted
11  accordingly. Defendants are one deposition shy of Court-imposed limit of 24
12  depositions per side and are not entitled to take any more than one more -- and certainly
13  not ten -- additional depositions without leave of the Court.[1] Here, Defendants make no
14  effort to establish their entitlement to these depositions beyond the imposed limit.[2]

15   Furthermore, and independently, the Court must deny the application to
16  compel depositions because no subpoena has been served on seven of the ten proposed
17  deponents as required. The law is clear: a subpoena is necessary to compel any
18  individual who is not presently an officer, director or managing agent of a corporate
19  party to appear for deposition. Of the ten witnesses Defendants seek to depose, only
20  three are presently Mattel officers, directors or managing agents who therefore do not
21  require subpoenas. The remaining seven do not hold, and have never held, such
22  positions at Mattel. In fact, two of them are not -- and were not as the time Defendants

23

24  [1]  Mattel invited Defendants to identify person they wish do depose with their
25  one, remaining deposition, but they did not do so.
    [2]  Indeed, Defendants make no showing that any of the individuals are proper
26  deponents. They do not even argue, let alone show, on what basis they believe these
    individuals have discoverable information relating to any claims or defenses in this
27  case. A number of them are not even identified among the hundreds of persons
28  identified in the parties' disclosures or written discovery.

1 | first sought their depositions in December -- even employed by Mattel. Defendants

2 | served no subpoenas, so the Court cannot compel seven of the depositions, even if they

3 | were within the limit. And, as to those three current Mattel officers who MGA seeks to

4 | depose, and as far as Mattel is currently aware, they only have Phase II knowledge.

5 | Defendants' failure to make any showing that they have knowledge relating to Phase I

6 | matters refutes any alleged urgency and disentitles Defendants to *ex parte* relief as to

7 | these depositions for this additional reason.

8 | The Court should deny Defendants' *ex parte* application.

9 | **Statement of Facts**

10 | On December 12, 2007, MGA served notices to take the depositions of ten

11 | current and former Mattel employees: Maureen Tofoya, Theresa Newcomb, Tim

12 | Kilpin, Sheila Kyaw, Kevin Farr, Jean Gomez, Hoi Hoffman-Briggs, Evelyn Viohl,

13 | Robert Simoneau, and Milt Zablow.[3]  This was the first time MGA raised the issue of

14 | deposing these individuals with Mattel.[4]  Two of these individuals are not even

15 | employed by Mattel,[5] and five of them are not officers, directors or managing agents of

16 | Mattel who can be deposed merely by a notice.[6]  MGA nevertheless has never served,

17 | or attempted to serve, subpoenas on any of them.[7]

18 |

19 |

20 | _____

21 | [3]  Declaration of Paul M. Eckles in Support of Carter Bryant and MGA

22 | Defendants' *Ex Parte* Application to Compel Properly Noticed Depositions, dated January 4, 2007 ("Eckles Dec.") at ¶ 3.

23 | [4]  Declaration of Jon D. Corey in Support of Mattel, Inc.'s Opposition to Carter Bryant and MGA Defendants' Ex Parte Application to Compel Properly Noticed

24 | Depositions, dated January 6, 2007 ("Corey Dec.") at ¶ 2.

25 | [5]  These are Robert Simoneau, and Milt Zablow. Id. at ¶ 5.

[6]  Only Tim Kilpin, Kevin Farr and Evelyn Viohl are current Mattel officers.

26 | Id. at ¶ 4.  Maureen Tofoya, Theresa Newcomb, Sheila Kyaw, Jean Gomez and Hoi Hoffman-Briggs are not, and never have been, Mattel officers, directors or

27 | managing agents.  Nor do Defendants make any showing otherwise.

28 | [7]  Id. at ¶ 3.

On December 20, 2007, the parties met and conferred to discuss depositions, including these ten.[8]  Mattel informed Defendants that the depositions were not proper, including because Defendants had already taken or had scheduled 23 depositions and had only one allotted deposition remaining.[9]  Mattel explained that each time Defendants had far exceeded the scope of a designation of a Rule 30(b)(6) witness, that deposition constituted an additional individual deposition.[10]  Mattel, however, offered to provide a deposition date for one of the ten additional people Defendants sought to depose.[11]  Defendants did not accept this offer.[12]

On January 2, 2007, Defendants informed Mattel by letter that they would seek *ex parte* relief if Mattel did not provide deposition dates for all ten individuals by 5:00 p.m. the following day.[13]

---

[8]   Letter from Jon Corey to Paul Eckles, dated December 20, 2007, Eckles Dec., Exh. D.

[9]   Id.; see also Scheduling Order, dated February 12, 2007, at 1, Corey Dec., Exh. 1.

[10]   Id.

[11]   Id.

[12]   Corey Dec., at ¶ 6.  On December 21, 2007, Mattel also served written objections to each of the ten deposition notices, including on the grounds that they exceeded the total number of depositions allowed in this case.  Eckles Dec., Exh. E.

[13]   Eckles Dec., Exh. A.

**Argument**

I.  **THE COURT SHOULD DENY DEFENDANTS' APPLICATION FOR
    *EX PARTE* RELIEF BECAUSE THEY CANNOT MAKE THE
    REQUISITE SHOWINGS**

    A.  **_Ex Parte_ Relief Is Only Justified Where The Applicant Is Without
    Fault In Creating The Crisis**

"*Ex parte* motions are rarely justified." <u>Mission Power Engineering Co. v.
Continental Casualty Co.</u>, 883 F. Supp. 488, 490 (C.D. Cal. 1995). *Ex parte* relief is
only warranted where the moving party establishes that (1) it will suffer irreparable
prejudice absent the requested relief, and (2) "the moving party is without fault in
creating the crisis that requires ex parte relief, or that crisis occurred as a result of
excusable neglect." <u>Id.</u>; <u>see also</u> <u>Local Rule</u> 37-3 ("[u]nless the Court in its discretion
otherwise allows, no discovery motions shall be filed or heard on an *ex parte* basis,
absent a showing of irreparable injury or prejudice not attributable to the lack of
diligence of the moving party.").

As is also well-settled, "[t]o show that the moving party is without fault, or
guilty only of excusable neglect, requires more than a showing that the other party is
the sole wrongdoer. . . . For example, merely showing that trial is fast approaching and
that the opposing party still has not answered crucial interrogatories is insufficient to
justify ex parte relief. The moving party must also show that it used the entire
discovery period efficiently and could not have, with due diligence, sought to obtain the
discovery earlier in the discovery period." <u>Mission Power</u>, 883 F. Supp. at 493.

    B.  **Defendants' Own Actions Caused The Alleged "Crisis"**

Defendants assert that they will suffer irreparable prejudice absent *ex parte*
relief because they will otherwise not have adequate time to complete these depositions
before the January 28, 2008 fact discovery cut-off date for Phase I claims and defenses.
However, Defendants fail to note that this alleged emergency is of their own making.
They did not even ask for the depositions of the ten individuals at issue here until

-5-

1   December 12, 2007.[14] Defendants waited until just before the winter holidays to raise
2   the issue of deposing these individuals, and they now seek *ex parte* relief immediately
3   following the holidays without offering any explanation why they waited so long to
4   depose them. Indeed, and to the contrary, Defendants even acknowledge that they
5   deliberately waited, claiming that they "chose to save most of their depositions to near
6   the conclusion of Phase I discovery." (*Ex Parte* App. at 1).

7        As the Court in <u>Mission Power</u> makes clear, *ex parte* relief is not
8   warranted simply because trial or other deadlines are fast approaching and the opposing
9   party has not answered all discovery requests. <u>See</u> <u>Mission Power</u>, 883 F. Supp. at 493.
10  Rather, Defendants must show that they "used the entire discovery period efficiently
11  and could not have, with due diligence, sought to obtain the discovery earlier in the
12  discovery period." <u>Id.</u> Defendants simply cannot make this showing, as their own
13  delays and decision to wait until the last minute caused the "crisis" they now complain
14  of. *Ex parte* relief is not warranted here for this reason alone.

15       Furthermore, it is plain that at least three of these depositions are not
16  urgent and Defendants will not suffer prejudice, even assuming Defendants were
17  entitled to them (which they are not as explained below). Notably, Defendants make no
18  showing that any of the individuals have knowledge relating to Phase I. Even apart
19  from that fatal defect, what is clear is that the three current Mattel officers raised on this
20  motion -- Tim Kilpin, Kevin Farr and Evelyn Viohl -- have Phase II information.
21  Because the issues as to these witnesses can be dealt with through the normal motion
22  process, there is no basis for *ex parte* relief. Defendants make no showing otherwise
23  with regard to these depositions.[15]

24

---

[14]   Eckles Dec. at ¶ 3.
[15]   Defendants also complain that they have been unable to complete the
25  depositions of Matt Bousquette and Tina Patel. (*Ex Parte* App. at 6-7). These
26  depositions, however, are not at issue here. In any event, Mr. Bousquette and Ms.
27  Patel are third-party witnesses who have knowledge only of Phase II matters. Judge
28  Infante also made clear that Mr. Bousquette would not be deposed until Defendants
    (footnote continued)

                                                        -6-

1   **II.   THE COURT SHOULD DENY DEFENDANTS' *EX PARTE***

2   **APPLICATION BECAUSE DEFENDANTS HAVE FAILED TO**

3   **SERVE THE NECESSARY SUBPOENAS ON SEVEN OF THE TEN**

4   **INDIVIDUALS WHOSE DEPOSITIONS THEY SEEK TO COMPEL**

5   Defendants currently seek to depose ten current and former Mattel

6   employees.[16] Although MGA noticed their depositions on December 12, 2007, it has

7   failed to serve <u>any</u> of them with subpoenas to appear for deposition or to ask Mattel's

8   counsel whether they are authorized to accept service of a subpoena on their behalf.[17]

9   This failure alone disentitles Defendants to relief on seven of the ten depositions they

10  seek to compel.

11  Although subpoenas are not necessary to compel the attendance of current

12  officers, directors, or managing agents of a corporate party, all "subordinate employees"

13  -- those who are not currently officers, directors, or managing agents -- must be

14  properly served before they can be compelled to appear for deposition. <u>See</u> Schwarzer,

15  Tashima & Wagstaffe, <u>Cal. Prac. Guide: Fed. Civ. Pro. Before Trial</u> 11:2228 (The

16  Rutter Group 2006) ("If at the time of the deposition the person sought to be deposed is

17  a *'subordinate employee'* or is no longer a director, officer or managing agent of the

18  corporation, a subpoena is necessary to compel his or her attendance.") (citing <u>Colonial</u>

19  <u>Capital Co. v. General Motors Corp.</u>, 29 F.R.D. 514, 515 (D. Conn. 1961) (secretaries

20  and stenographers employed by the corporate defendant were not managing agents or

21  officers of the defendant such that the deposition of the defendant could be taken

22  through them)).

23

24  ───────────────

25  had substantially completed their Phase II documents productions. Defendants only recently represented that their Phase II document production was substantially

26  complete and accordingly the scheduling of Mr. Bousquette's deposition will be resolved in due course.

27  [16]   Eckles Dec. at ¶ 3; <u>see also</u> Eckles Dec., Exh. B.

28  [17]   Eckles Dec. at ¶ 3; <u>see also</u> Corey Dec. at ¶ 3.

1    Of the ten individuals Defendants seek to depose, Tim Kilpin, Kevin Farr

2  and Evelyn Viohl are the only ones who are current Mattel officers, directors or

3  managing agents who therefore do not need to be subpoenaed to appear for

4  deposition.[18]  The remaining seven do not hold, and have never held, such positions at

5  Mattel.[19]  Indeed, two of them -- Robert Simoneau and Milt Zablow -- are no longer

6  even employed by Mattel.[20]  It is improper for Defendants to burden the Court with an

7  *ex parte* application to compel these individuals to appear for deposition when

8  Defendants have not even attempted to serve them with the required subpoenas.  See

9  Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial §§

10  11:2220, 11:2224 (The Rutter Group 2006) ("A Rule 45 subpoena is the *only* discovery

11  method by which information may be obtained directly from a nonparty. . . a subpoena

12  is necessary to obtain testimony or documents from anyone who is not a party to the

13  action."); U.S. v. Santiago-Lugo, 904 F. Supp. 43, 47 (D. Puerto Rico 1995) ("a

14  subpoena is necessary to compel someone who is not a party to appear for the taking of

15  a deposition"); see Jackson v. Woodford, 2007 WL 2580566 at *1 (S.D. Cal. August

16  17, 2007) (denying motion to compel depositions of third-party witnesses because the

17  subpoenas were not properly served pursuant to Fed. R. Civ. P. 45(b)).

18    The Court must deny Defendants' *ex parte* application to compel the

19  deposition of these seven individuals for this reason alone.

20

21

22

23

---

24  [18]  Corey Dec. at ¶ 4.

25  [19]  Id.
   [20]  Counsel for Mattel currently represents Mr. Simoneau, and it is currently

26  engaged in discussions to represent Mr. Zablow, although no agreement has been

27  reached.  Corey Dec. at ¶ 5.  Nonetheless, Mr. Simoneau and Mr. Zablow remain
   third-parties to this litigation, and Defendants may not compel either to sit for

28  deposition without service of process in accordance with Rule 45.

-8-

**III.    THE COURT SHOULD DENY DEFENDANTS' *EX PARTE* APPLICATION BECAUSE DEFENDANTS ARE NOT ENTITLED TO TAKE TEN ADDITIONAL DEPOSITIONS**

    **A.    A Deposition Of A Rule 30(b)(6) Designee That Far Exceeds the Scope of the Designation Constitutes An Additional Deposition of the Witness in His Individual Capacity**

Under the Court's Scheduling Order, each side is limited to 24 depositions.[21] The parties appear to agree that the deposition of a corporation under Rule 30(b)(6) counts as one deposition without regard to the number of witnesses designated. Rule 30(a)(2)(A), Advisory Committee Notes, 1993 Amendment; see also In re Sulfuric Acid Antitrust Litigation, No. C03-4576, 2005 WL 1994105, at *3 (N.D. Ill. Aug. 19, 2005). Nor does Mattel dispute that the examining party may ask a Rule 30(b)(6) designee questions outside the scope of the designation. See King v. Pratt & Whitney, a Div. of United Technologies Corp., 161 F.R.D. 475, 476 (S.D. Fla. 1995) ("If the examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern (i.e., Fed. R. Civ. P. 26(b)(1)), so that relevant questions may be asked and no special protection is conferred on a deponent by virtue of the fact that the deposition was noticed under 30(b)(6)."); UniRam Tech., Inc. v. Monolithic Sys. Tech., Inc., No. C 04-1268 VRW (MEJ), 2007 WL 915225, at *2 (N.D. Cal. Mar. 23, 2007) ("the reasonable particularity requirement of Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at a deposition"); Charles Alan Wright & Arthur R. Miller, 8A Federal Practice and Procedure § 2103 (2d ed. 1994 & Supp. 2005) ("courts have recognized that when a deponent is produced pursuant to Fed. R. Civ. P. 30(b)(6), the scope of questioning at the deposition is not defined by the notice of deposition -- instead Fed. R. Civ. P. 26(b)(1) defines the scope of discovery unless otherwise ordered by the court").

---

[21]    Scheduling Order, dated February 12, 2007, at 1, Corey Dec., Exh. 1.

1    Where Mattel and Defendants disagree, however, is how to count
2  depositions where the witness is produced as a corporate designee on limited topics, but
3  the examining party uses the majority of the deposition to gather totally unrelated
4  information that would normally be gathered by deposing individual fact witnesses. In
5  such cases, the deposition should count as an additional deposition of the witness in his
6  individual capacity. In <u>King</u>, the Court explained that if the examining party exceeds
7  the scope of the designation, the "general deposition rules govern . . . so that relevant
8  questions may be asked and no special protection is conferred on a deponent by virtue
9  of the fact that the deposition was noticed under 30(b)(6)." 161 F.R.D. at 476. Of
10  course, under "general deposition rules," each deposition of a fact witness counts
11  against the number of depositions each party is permitted to take. <u>See Fed. R. Civ. P.</u>
12  30(a)(2)(A) (requiring leave of court for depositions "being taken *under this rule*" that
13  exceed limit (emphasis added)). Accordingly, when an examining party far exceeds the
14  scope of the witness' designation, the party essentially deposes the witness as a
15  percipient fact witness, and the deposition must be counted as such. Any other rule
16  would create an obvious loophole.

17    Confirming that such depositions which obtain *individual* testimony from
18  a designee must be counted as an individual deposition, courts have held that "[a]
19  deposition of an individual and a deposition of the same person as a representative of
20  the organization are two distinct matters." <u>Taylor v. Shaw</u>, 2007 WL 710186 at *2 (D.
21  Nev. 2007) (holding that deposition of 30(b)(6) witness is permissible even though
22  same witness has already been deposed as a fact witness); <u>United States v. Taylor</u>, 166
23  F.R.D. 356, 361 (M.D.N.C. 1996) (<u>Rule</u> 30 allows depositions of a witness in her
24  individual capacity and in an organizational capacity because the depositions serve
25  distinct purposes and impose different obligations); <u>Fed. R. Civ. P.</u> 30(b)(6)
26  ("subdivision (b)(6) does not preclude taking a deposition by any other procedure
27  authorized in these rules"). <u>Id.</u> Because they are two distinct matters, it follows that
28  they should count as two separate depositions. If a party were to depose the same

-10-

1  witness on two different occasions, once as a <u>Rule</u> 30(b)(6) designee, and once as a
2  percipient fact witness, that would certainly constitute two distinct depositions under
3  the rationale set forth in <u>Taylor</u>.  The same should be true where a <u>Rule</u> 30(b)(6)
4  witness is questioned on his personal knowledge of subjects far outside the scope of the
5  designation during the <u>Rule</u> 30(b)(6) deposition -- the deposition should count both as a
6  30(b)(6) deposition and as a individual deposition.[22]

7          To hold otherwise would reward Defendants for purposefully exceeding
8  the scope of a witness' designation to circumvent the Court-imposed limit of 24
9  depositions per side and permit depositions in excess of the 24 deposition limit
10 established by the Scheduling Order without leave of Court.

11      **B.**     **<u>Defendants Will Far Exceed the Court's Limit of 24 Depositions</u>**
12              **<u>Per Side If They Are Permitted to Take the Ten Additional</u>**
13              **<u>Depositions They Now Seek</u>**

14          Defendants claim that they have taken only eight of their allotted 24
15 depositions.[23]  That calculation, however, does not include the numerous depositions of
16 Mattel's <u>Rule</u> 30(b)(6) designees where Defendants far exceeded the scope of the
17 designations.[24]

18 _____

19 [22]   Defendants have not cited any controlling authority that suggests otherwise.
   Defendants cite dicta in <u>Detoy v. City and County of San Francisco</u>, 196 F.R.D. 362
20 (N.D. Cal. 2000) for the proposition that one witness should not "count as two
   depositions for the purposes of the Local Rules' limit on the number of depositions
21 to be taken by each party."  <u>Detoy</u>, 196 F.R.D. at 367.  However, <u>Detoy</u> does not
   govern here, as it refers specifically to <u>Local Rules</u> in the Northern District of
22 California, which do not apply.  This is particularly true where, as here, the Court
   has imposed its own limit on the number of depositions each side may take.
23 Furthermore, <u>Detoy</u> is not persuasive since it does not take into account the potential
   for circumvention posed by what Defendants did here, which is to use the
24 production of any designee as a justification for extensive individual questioning
25 that was far outside the scope of the designation as shown in detail below.
26 [23]   Eckles Dec. at ¶ 13.
27 [24]   That number also does not include Maureen Tcacik, the third-party witness
28 whom Defendants deposed on September 28, 2007.  Corey Dec. at ¶ 7.  Defendants
   (footnote continued)

1    Mattel initially designated Julia Marine, Arnoldo Artavia, Fred
2 Kawashima, Rodney Palmer, Kislap Ongchango, Lissa Freed, Sandy Yonemoto, Joni
3 Pratte, Julia Jensen, Rene Pasko, Robert Hudnut, and Jill Nordquist as its Rule 30(b)(6)
4 designees on various topics.[25]   With the exception of the depositions of Marine,
5 Artavia, Kawashima, and Palmer, Defendants exceeded the scope of the designations
6 for these witnesses and proceeded to depose the witnesses in their individual capacities
7 on matters that were far afield from their designations.[26] Tellingly, Defendants do not
8 dispute that they strayed well outside the scope of the designations for these witnesses,
9 nor could they.  Some examples are as follows.

10    Sandy Yonemoto:   Ms. Yonemoto is a Senior Manager of Human
11 Resources Operations at Mattel and conducted Carter Bryant's exit interview in 2000.[27]
12 Mattel made clear to MGA and Bryant during the meet and confer process that
13 Ms. Yonemoto was designated to testify on certain topics to the extent those topics
14 were relevant to Carter Bryant's exit interview when he left Mattel in October 2000.[28]

15    MGA and Bryant nevertheless spent hours questioning Ms. Yonemoto
16 about matters that were outside the witness's designation, including, for example: the
17 circumstances under which Bryant came to work at Mattel in 1995 and the new

18

19 do not include Ms. Tkacik in their calculation simply because Ms. Tkacik's
20 deposition was noticed by Mattel. Eckles Dec. at ¶¶ 12-13. However, Defendants
21 fail to mention that they not only deposed Ms. Tkacik as well, but indeed their
   questions comprised the vast majority of her deposition and were well outside the
22 scope of any examination Mattel had taken from her. Corey Dec. at ¶ 7.
   Defendants' deposition of Ms. Tkacik also counts towards the number of depositions
23 they are allotted to take regardless of who initially noticed Ms. Tkacik's deposition.
24    [25]  Eckles Dec. at ¶ 9; see also Corey Dec. at ¶ X.
     [26]  Corey Dec. at ¶ 8.
25    [27]  Deposition of Sandy Yonemoto, dated May 30, 2007 ("Yonemoto Depo."),
26 Corey Dec., Exh. 2, at 26:10-18, 146:17-21.
     [28]  Yonemoto Depo., Corey Dec., Exh. 2., at 37:7-9 (". . . we have said that
27 Sandy [Yonemoto] is here to talk about the exit interview.  I mean, that's what she
28 participated in with respect to Mr. Bryant.").

1   employee orientation process at that time;[29] Mattel's "PeopleSoft" technical system used
2   to house employee personnel information;[30] whether Mattel maintains contact
3   information for former employees;[31] Mattel's "practices with respect to having
4   employees sign agreements in the form that is reflected in Exhibit 25" [an "onboarding"
5   or intake form signed by all Mattel employees upon hiring];[32] Mattel's prior reduction
6   in force;[33] and investigations by Mattel's Security Department.[34]  Bryant's lawyer also
7   repeatedly asked questions that required Ms. Yonemoto to testify about the "provisions
8   of Section 2870 of the California Labor Code."[35]

9   　　　　Jill Nordquist:  Ms. Nordquist is Director of Mattel Brands Consumer
10  Products and was formerly the Marketing Manager for Barbie Collectibles, the group
11  within Mattel for which Carter Bryant worked.[36]  Ms. Nordquist was designated to
12  testify as to portions of specific topics that related to her knowledge concerning
13  misstatements Carter Bryant made about his departure from Mattel.[37]  She testified

---

[29]  Id. at 18:8-15.
[30]  Id. at 80:10-84:20, 139:18-146:2.
[31]  Id. at 152:22-154:15.
[32]  Id. at 34:20-35:25.
[33]  Id. at 129:17-133:6.
[34]  Id. at 148:4-151:25.
[35]  Id. at 96:10-103:2.  Indeed, the questioning--all of which relied on improper legal opinion--spans several pages of deposition transcript and conveys counsel's condescending tone in asking questions that sought legal opinion:  "Let me help you out, Ms. Yonemoto.  Can you identify anyplace on the Proprietary Information checkout form which is Exhibit 27 that talks about the rights of employees under Section 2870 of the California Labor Code?"  Id. at 99:10-14.
[36]  Deposition of Jill Nordquist, dated July 31, 2007 ("Nordquist Depo."), Corey Dec., Exh. 3, at 29:10-20; 57:2-6.
[37]  30(b)(6) Scheduling Hearing Tr., Corey Dec., Exh. 6, at 20:14-18, 27:23-24, 29:15-16, 30:14-15; Nordquist Depo., Corey Dec., Exh. 3, at 14:8-23, 144:11-145:9, 124:18-24, 180:18-181:1.

1  extensively (her deposition ran from approximately 9:45 a.m. until 7:00 p.m.)[38] on facts
2  relevant to those topics.[39]

3      Ms. Nordquist had much detail to give about the relevant topics, but
4  Bryant's counsel questioned her on matters well outside the scope of the topics, such as
5  which members of the Design Team at Mattel were considered to be "cute" or "not
6  cute,"[40] and about an incident during which Carter Bryant cried because a doll idea of
7  his was not well received, (focusing on issues such as whether Bryant was "audibly
8  sobbing;"[41] what kinds of sounds Bryant made, e.g., whether he was sobbing, wailing,
9  or making some other noise;[42] whether he was "running" out of the room or "just
10  moving quickly;"[43] how many feet long the room was;[44] whether there was a big table
11  in the room;[45] whether there was one table in the room;[46] and whether the exit was "on
12  one of the longer sides of the rectangle or on one of the shorter sides").[47]  MGA's
13  counsel also questioned Ms. Nordquist at length about other matters that had nothing to
14  do with Ms. Nordquist's designated topics, including, for example: matters relating to
15  Mattel's trade secrets claims[48] and her familiarity with MY SCENE (including its
16  origins, target consumer, media brief, and marketing practices).[49]

17      Joni Pratte, Kislap Ongchangco, Rene Pasko and Robert Hudnut: These
18  employees were designated to testify as to two narrow aspects of  DIVA STARZ.

19

20  [38]  Nordquist Depo., Corey Dec., Exh. 3, at 5:4-6, 298:1-3.
     [39]  See e.g., id. at 56:5-58:5, 59:5-71:9, 110:10-111:20, 122:25-130:1, 132:20-
21  138:15, 141:20-167:6, 179:18-181:11, 186:16-191:20.
22  [40]  Id. at 115:8-116:3.
     [41]  Id. at 83:22-25.
23  [42]  Id. at 84:3-19.
     [43]  Id. at 85:12-14.
24  [44]  Id. at 85:16-86:13, 90:2-9.
25  [45]  Id. at 88:19.
26  [46]  Id. at 88:21, 90:14-15.
     [47]  Id. at 90:25-91:13.
27  [48]  Id. at 210:12-220:23.
28  [49]  Id. at 228:5-239:16.

DIVA STARZ is a line of fashion dolls Mattel first released in 2000, that included four different dolls with distinct personalities.[50]  Although DIVA STARZ was a vast project that included extensive software and electronics development, two narrow aspects of it are relevant to this case:  certain names that were considered for the project while Bryant was employed by Mattel, such as "Brats" and "Boyz" for example,[51] and documents and designs for the DIVA STARZ project which also date to the time of Bryant's employment and were never publicly released, but which nonetheless ended up in Bratz.[52]  Even though Joni Pratte, Kislap Ongchangco, Rene Pasko and Robert Hudnut were designated to testify on these narrow issues, Defendants nevertheless deposed them extensively on other matters.  Indeed, Defendants deposed them on virtually everything but what they were designated on as the examples below show.

Mr. Hudnut is Mattel's Vice President, Executive Producer Mattel Entertainment and was designated to testify only on certain topics as they pertained to his knowledge of his work on DIVA STARZ, namely the use of potential names like "Boyz" in DIVA STARZ scripts in 2000 that subsequently ended up in the Bratz line.[53] Defendants asked questions that far exceeded the scope of his narrow designation, such as whether Mr. Hudnut was ever able to apply the "theory of the hero's journey" that he learned in a script writing class to any of the work that he did,[54] whether Mr. Hudnut ever wanted to write scripts for sitcoms,[55] what his understanding was of the significance of the BARBIE product line to Mattel,[56] and the details of how Mr. Hudnut

---

[50]   Deposition of Joni Pratte dated June 1, 2007 ("Pratte Depo."), Corey Dec., Exh. 4, at 89:3-23.

[51]   Pratte Depo., Corey Dec., Exh. 4, at 106:24-107:7, 111:1-15.

[52]   See, e.g., documents Bates numbered M 0016585-M 0016586.001, M 0016817, M 0016504, TP 0008, TP 0009 and TP 0011, Corey Dec., Exh. 7.

[53]   Deposition of Robert Hudnut, dated July 13, 2007 ("Hudnut Depo."), Corey Dec., Exh. 5, at 92:3 - 94:24, 114:22 - 115:16.

[54]   Id. at 14:9 - 15:6.

[55]   Id. at 15:2-19.

[56]   Id. at 181:19-182:1.

-15-

1    transitioned from being a student to working on a television show about "Mighty

2    Max,"[57] a completely unrelated product. These questions clearly exceeded the scope of

3    Mr. Hudnut's designation.

4           Ms. Pratte is a Product Design Manager for Mattel and has previously

5    worked as a packaging designer on DIVA STARZ, Mini DIVA STARZ, and other

6    Mattel products.[58]  She testified from 10:00 a.m. until 5:00 p.m. about (among other

7    things): the logo design and development of the DIVA STARZ product;[59] the design of

8    DIVA STARZ packaging dating back to at least September/October 1999;[60] the design

9    of Mini DIVA STARZ packaging;[61] and the different names considered for the DIVA

10   STARZ and Mini DIVA STARZ.[62]

11          She was also questioned about other issues that went well beyond the

12   designated topics including, for example:  similarities she saw between the packaging

13   for Bratz dolls and the earlier-introduced DIVA STARZ packaging;[63] and her

14   understanding of her responsibility to inform her supervisor of any work she did outside

15   Mattel and her not having used Mattel resources to do work for something outside

16   Mattel.[64]

17          Mattel could cite numerous examples of Rule 30(b)(6) designees being

18   questioned far beyond the designated subjects if Defendants had not proceeded on an *ex*

19   *parte* basis. Taking these and other depositions in which MGA far exceeded the scope

20   of the designations, Defendants have taken 17 depositions to date: Alan Kaye, Ann

21   Driskill, Anna Rhee, Cassidy Park, Liliana Martinez, Richard De Anda, Kumi Croom,

22   _____

23   [57]   Id. at 30:3 - 37:1.
      [58]   Pratte Depo., Corey Dec., Exh. 4, at 9:14-24, 11:20-23, 15:18-16:2, 16:12-21,
24   57:5-8.
      [59]   Id. at 78:21-81:4.
25   [60]   Id. at 18:8-14, 21:7-22:13, 26:15-35:13.
26   [61]   Id. at 205:22-206:19.
      [62]   Id. at 36:10-21, 68:1-8, 106:24-107:7, 111:1-15.
27   [63]   Id. at 71:6-72:25, 81:5-84:4, 105:3-14.
28   [64]   Id. at 122:22-132:8, 133:1-137:15.

1  Maureen Tcascik, Mattel (Julia Marine, Arnoldo Artavia, Fred Kawashima, Rodney

2  Palmer), Kislap Ongchango, Lissa Freed, Sandy Yonemoto, Joni Pratte, Julia Jensen,

3  Rene Pasko, Rob Hudnut, and Jill Nordquist.[65]  Prior to December 12, 2007, when

4  Defendants noticed the ten additional depositions at issue here, Defendants had also

5  requested the depositions of Adrianne Fontanella, Matt Bousquette, Tina Patel, Brian

6  Hooks, Robert Eckert and Ivy Ross, for a total of 23 depositions.[66]  Thus, Defendants

7  are entitled to only one additional deposition, rather than the ten they seek to compel

8  here.

9          **C.      Defendants' Application Contradicts Their Opposition To Mattel's**

10                 **Motion to Take Additional Discovery**

11               In seeking to compel Mattel to produce ten additional individual

12  depositions, Defendants seek the same relief that Mattel seeks: to take additional

13  depositions beyond the 24 deposition limit set forth by the Court.  Defendants,

14  however, have opposed Mattel's Motion to Take Additional Discovery, including Rule

15  30(b)(6) depositions of the MGA Defendants and additional Phase II witnesses.[67]

16  Defendants argue that Mattel is not entitled to any more depositions because Mattel has

17  failed to demonstrate a particularized need for them.[68]  Specifically, Defendants argue

18  that Mattel must show that each additional deposition it seeks to take "concerns an issue

19  material to the case and is not unreasonably cumulative or duplicative."[69]  Defendants

20

---

21      [65]   Corey Dec. at ¶ 9.

22      [66]   Corey Dec. at ¶ 9; see also Letter from Jon Corey to Paul Eckles dated
        December 20, 2007, Eckles Dec., Exh. D.
23      [67]   Motion of Mattel, Inc. for Leave to Take Additional Discovery And

24      Objections to Discovery Master Order of September 28, 2007, dated November 19,
        2007.
25      [68]   MGA Defendants' (1) Opposition to Mattel, Inc.'s Motion for Leave to Take

26      Additional Discovery and Objections to Discovery Master Order of September 28,
        2007, and (2) Joinder in Carter Bryant's opposition to Mattel's Motion, dated
27      December 24, 2007 ("Opposition to Motion for Leave") at 7.

28      [69]   Id. at 6.

1 | have made no showing of "particularized need" as to the additional depositions they
2 | seek to take.

3 |       Defendants also fault Mattel for supposed waiting until the "eleventh hour"
4 | to seek additional discovery.[70]   However, unlike any of the witnesses that the
5 | Defendants seek, most of the additional witnesses Mattel requests to depose relate to
6 | Phase II claims.  Furthermore, Mattel has been seeking to take additional discovery for
7 | weeks now, and would have brought its motion sooner, but for the substitution of
8 | counsel and associated stays.  In sharp contrast to Mattel, Defendants did not even raise
9 | the issue of deposing the additional witnesses at issue here until just before the
10 | holidays, and all of the witnesses Defendants seek to compel relate to Phase I claims
11 | and defenses.  If "the time has come for Mattel to wrap up its discovery, not continue to
12 | ramp it up,"[71] the time has certainly come for Defendants to wrap up their discovery.
13 | Defendants cannot have it both ways.

### Conclusion

15 |       For the foregoing reasons, Mattel respectfully requests that the Court
16 | deny Defendants' application for *ex parte* relief.

17 | DATED: January 6, 2007       QUINN EMANUEL URQUHART OLIVER &
      HEDGES, LLP

19 |       By /s/ John B. Quinn
      John B. Quinn
20 |       Attorneys for Mattel, Inc.

---

[70] Id. at 15.
[71] Id.

07209/2341996.2

-18-

MATTEL'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO COMPEL DEPOSITIONS