1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10                            EASTERN DIVISION

11

12   CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
13              Plaintiff,

14        v.                                Consolidated with
                                            Case No. CV 04-09059
15   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16              Defendant.                  **ORDER GRANTING IN PART AND
                                            DENYING IN PART MATTEL'S
17                                          MOTION TO ENFORCE COURT'S
                                            DISCOVERY ORDERS AND TO
18                                          COMPEL; TO OVERRULE
                                            PURPORTEDLY IMPROPER
19                                          INSTRUCTIONS; AND FOR
                                            SANCTIONS**
20

21   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
22   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
23

24

25

26

27

28

     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                             1

## I. INTRODUCTION

On December 5, Mattel, Inc. ("Mattel") submitted a "Motion to (1) Enforce Court's Discovery Orders and to Compel; (2) to Overrule Improper Instructions; and (3) for Sanctions." Mattel's motion challenges the sufficiency of the testimony provided by four of MGA Entertainment Inc.'s Rule 30(b)(6) witnesses, Lisa Tonnu, Kenneth Lockhart, Rebecca Harris, and Spencer Woodman, on sixteen separate topics identified in Mattel's Second Notice of Deposition of MGA. MGA submitted an opposition on December 18, 2007. Mattel submitted a reply on December 26, 2007. The matter was heard on January 3, 2008. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is granted in part.

## II. BACKGROUND

On May 16, 2007, MGA was ordered to produce Rule 30(b)(6) designees for all topics identified in Mattel's Second Notice of Deposition of MGA, except Topic Nos. 25 and 26, on or before June 30, 2007. Mattel's Second Notice of Deposition includes many topics relevant to the case, including, *inter alia*, the development of Bratz before it was made available for purchase; when and whom MGA first offered Bratz for sale; who first manufactured, shipped and distributed Bratz; Bratz revenues and profits; MGA's access to Mattel's earlier DIVA STARZ project that allegedly had elements which subsequently appeared in Bratz; the identity of persons who worked on Bratz and payments made to them; fee and indemnification agreements; MGA's testing and handling of original Bratz drawings; MGA's sworn statements pertaining to Bratz's creation and development; and MGA's evidence preservation and collection. On July 2, 2007, the district court rejected MGA's objections to the May 16, 2007 Order.

MGA designated four different witnesses to testify on the topics identified in Mattel's Second Notice of Deposition of MGA. First, MGA designated Kenneth Lockhart to testify on Topic Nos. 38, 39 and 42. He testified on June 14-15, 2007.

Second, MGA designated Lisa Tonnu to testify on Topic Nos. 24-25, 31, 37, 39 (in part), 40 and 41. She testified on July 19, 2007. In the meantime, Mattel moved for an order compelling MGA to produce witnesses for deposition and sanctions because MGA did not

produce witnesses on certain topics as required by the May 16, 2007 Order.  On August 14, 2007, Mattel's motion was granted in part and denied in part and MGA was ordered, once again, to produce witnesses to testify on several topics.  On September 24-25, 2007, Mattel deposed Ms. Tonnu further on Topic Nos. 21, 24-26, 31, 39, 40 and 41.

Third, MGA designated Rebecca Harris to testify on Topic Nos. 11, 13, 14, 19, 22-23 and 27-28.  Ms. Harris' deposition was scheduled, but unilaterally cancelled by MGA, on two different occasions.  MGA ultimately produced Ms. Harris on July 20, 2007.

Fourth, MGA designated Spencer Woodman to testify on Topic No. 34.  He testified on October 9, 2007.

In September of 2007, the parties exchanged several meet and confer letters regarding purported deficiencies in the witnesses' depositions.  In mid October, MGA notified Mattel that it had retained new counsel who would be responding to Mattel's letters.  After a month-long stay that MGA obtained as a result of its substitution of counsel, the parties met and conferred on November 16, 2007 and again on November 21, 2007.  MGA offered to produce Ms. Tonnu again, but only on some of the topics for which she had been designated previously, and only during the second week of January 2008.  The parties continued to exchange letters; however, they were apparently unable to resolve any issues before Mattel filed the instant motion on December 5, 2007.

Mattel essentially contends that MGA's witnesses were not sufficiently knowledgeable to provide complete testimony on the 30(b)(6) topics at issue, and furthermore, that MGA's counsel obstructed the depositions by making improper objections and instructing witnesses not to answer.  Accordingly, Mattel seeks the following eight categories of relief:  (1) an order enforcing the May 16, 2007 and August 14, 2007 Orders and compelling MGA to comply therewith by designating and producing fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25, 27, 28, 31, 34 and 39-41 in Mattel's Second Notice of Deposition of MGA on dates of Mattel's selection; (2) an order overruling each of the purportedly improper instructions not to answer questions interposed at the deposition of MGA designees Spencer Woodman and compelling Woodman or other such person selected by MGA as its designee to provide complete testimony

on Topic No. 34; (3) an order compelling MGA to produce documents that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition as documents which he reviewed and relied upon to refresh his recollection in preparation for his deposition; (4) an order overruling each of the purportedly improper instructions not to answer questions interposed at the deposition of MGA designee Lisa Tonnu; (5) an order reopening the deposition of MGA designee Lisa Tonnu based on a purported "complete reversal of testimony" made through written "changes" to her deposition transcript; (6) an order compelling Rebecca Harris to sit for the completion of her deposition and/or compelling such person selected by MGA as its designee to complete the testimony on topics for which Harris was previously designated; (7) an order imposing monetary sanctions ($10,000) for MGA's alleged willful violations of the May 16, 2007 and August 14, 2007 Orders, for MGA's allegedly improper instructions not to answer deposition questions and for MGA's alleged improper coaching, harassing and obstructionist conduct at the September 24-25, 2007 deposition of Lisa Tonnu and at the October 9, 2007 deposition of Spencer Woodman; and (8) a report and recommendation to Judge Stephen G. Larson that recommends the imposition of preclusion sanctions, that certain facts related to the topics compelled be deemed admitted, and/or that MGA be found in contempt for MGA's allegedly willful and repeated violations of the Orders.

MGA opposes the motion, contending that it substantially complied with its obligation to produce witnesses knowledgeable on each of the topics at issue and that Mattel has had a full and fair opportunity to conduct its examinations. According to MGA's calculations, the four witnesses testified intelligently for nearly 36 hours over five deposition days. MGA also explains that its counsel instructed witnesses not to answer two types of questions, namely questions that invaded MGA's work product protection or attorney-client privilege, and questions that exceeded the scope of Topic No. 34. MGA also contends that Mattel is not entitled to additional time to depose Ms. Harris in particular because Mattel's counsel wasted time and badgered the witness. MGA acknowledges, however, that Ms. Tonnu did change her testimony and that there are some deficiencies in its witnesses' testimony that justify additional deposition time. Indeed, MGA points out that prior to the filing of the instant motion, MGA agreed to produce witnesses to

provide additional testimony on Topic Nos. 21, 24, 25, 31, 34 and 40. Further, after the filing of the motion, MGA agreed to produce witnesses to provide additional testimony on Topic No. 39. MGA contends that Mattel's motion to compel additional testimony with respect to topics on which MGA has already agreed to provide additional testimony is premature and should be denied.

### III. STANDARDS

Depositions of a corporation are governed by Rule 30(b)(6) of the Federal Rules of Civil Procedure, which provides in pertinent part that:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . The persons designated must testify about information known or reasonably available to the organization.

Fed.R.Civ.P. 30(b)(6) (effective Dec. 1, 2007). Rule 30 also provides that the examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence. Fed.R.Civ.P. 30(c)(1). Further, "[a]n objection at the time of the examination-- whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Fed.R.Civ.P. 30(c)(2). "An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Id.

Rule 30(d)(1), Fed.R.Civ.P., provides that a deposition is limited to one day of seven hours, unless otherwise stipulated or ordered by the court. "The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another

1  person, or any other circumstance impedes or delays the examination."[1]  Fed.R.Civ.P. 30(d)(1).

2  Furthermore, sanctions may be imposed --including the reasonable expenses and attorney's fees

3  incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the

4  deponent.  Fed.R.Civ.P. 30(d)(2).

5  ## IV. DISCUSSION

6  A. Mattel's Request for Relief No. 1:  Mattel seeks an order enforcing the May 16, 2007 and
   August 14, 2007 Orders and compelling MGA to comply therewith by designating and producing

7  fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25, 27, 28, 31, 34 and 39-41 in
   Mattel's Second Notice of Deposition of MGA on dates of Mattel's selection.

8

9  Mattel contends that MGA's witnesses were inadequately prepared and failed to provide

   sufficient testimony on sixteen of the topics identified in the Second Notice of Deposition of

10  MGA.  Each of the sixteen 30(b)(6) topics at issue is addressed separately below.

11

12  **Topic No. 11:**  The exhibition, or proposed, offered, contemplated or requested exhibition,
    of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including
    without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed,

13  offered for sale, pitched, shown or disclosed to, or otherwise discussed with or
    communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that

14  REFER OR RELATE thereto.

15  Mattel contends that Ms. Harris lacked sufficient knowledge on this topic.  In particular,

16  Mattel contends that Ms. Harris could not confirm what form of Bratz or Bratz design ("sculpts")

17  was first exhibited to third parties prior to June 30, 2001.

18  MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

19  this topic.  More specifically, MGA contends that Ms. Harris testified about the first exhibition,

20  sale and distribution of Bratz, including presentations to Target stores, and the first sale,

21  distribution and shipment of Bratz under an agreement with Bandai in Spain.  MGA contends that

22  it is not reasonable to expect MGA to have investigated specifically what type of Bratz "sculpts"

23  were shown at particular exhibitions.

24  ---
    [1] Rule 26(b)(2), Fed.R.Civ.P., provides that the court shall limit the frequency or extent of use of the

25  discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or
    is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party

26  seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the
    burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case,

27  the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the
    importance of the proposed discovery in resolving the issues."  Fed.R.Civ.P. 26(b)(2).

28

1    Furthermore, MGA points out that Mattel has taken the deposition of MGA HK on the

2    subject of the initial manufacture of Bratz.  More specifically, MGA contends that Mattel took the

3    deposition of the head of MGA's Hong Kong operations, Edmond Lee, for two full days, and

4    questioned him about the first manufacture of Bratz by Early Light.  Therefore, MGA contends

5    that Mattel has had a full and fair opportunity to examine MGA regarding the first manufacture of

6    Bratz.

7    A review of the transcript confirms that Ms. Harris was not reasonably prepared for her

8    deposition, especially in light of the importance of the timing of the creation of Bratz.  For

9    example, she could not specify what was shown to retailers during the year 2000.  She testified

10   that MGA used "boards" (i.e. sketched drawings) to show retailers Bratz during the year 2000

11   based upon a telephone conversation she had with Paula Garcia during a break.  Mattel is entitled

12   to delve into more detail about these "boards," and such information should be reasonably

13   available to MGA.  Ms. Harris testified that Julie Chemo likely attended presentations during the

14   year 2000.  Therefore, Mattel is entitled to an order compelling MGA to produce a witness to

     provide complete testimony on Topic No. 11.

15        **Topic No. 13**:  COMMUNICATIONS prior to June 30, 2001 between YOU and any
16        manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential
          manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or
17        any BRATZ DESIGN.

18   Mattel contends that Ms. Harris' testimony was wholly inadequate.  In particular, Mattel

19   contends that Ms. Harris had no knowledge concerning early MGA communications with Bandai,

20   which distributed Bratz in the first market in which it was allegedly sold.  Ms. Harris did not have

21   any knowledge or information as to when MGA and Bandai first had any type of contact or

22   communication regarding Bratz.  Similarly, Ms. Harris did not have any knowledge or

23   information as to when MGA first had contact with a company called J.H.N. regarding the sale of

     Bratz in Australia.

24        MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

25   Topic No. 13, as described above in connection with Topic No. 11.  Accordingly, MGA objects to

26   any further examination on Topic No. 13.

27        A review of the deposition transcript confirms that Ms. Harris provided significant

28

testimony on Topic No. 13. However, as Mattel points out, her testimony lacked many details relevant to when Bratz was developed. For example, Ms. Harris was unable to testify as to any communications or negotiations between MGA and Bandai leading up to the execution of written agreements. Indeed, Ms. Harris did not know when MGA and Bandia first had any contact regarding Bratz. Furthermore, MGA did not conduct a reasonable investigation to prepare Ms. Harris for Topic No. 13. Among other things, MGA made no effort to determine whether the former MGA HK employee known to have been directly involved in the first discussions with Bandai (Martin Hitch) had retained any documents responsive to this topic. Nor did Ms. Harris speak to Isaac Larian and Jim Olmstead, both of whom authored emails referencing existing distributorship deals in Europe and Australia. Therefore, Ms. Harris did not fulfill MGA's duty to produce a witness to testify on information known or reasonably available to MGA. Mattel is entitled to an order compelling MGA to produce a witness to provide complete testimony on Topic No. 13.

> **Topic No. 14**: When and where BRATZ was first manufactured, shipped, distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

Mattel contends that Ms. Harris did not have any knowledge regarding the identity or role of any person who was involved in the first manufacture of Bratz dolls by Early Light. Mattel also contends that Ms. Harris had no knowledge as to the date when manufacturing began for the first Bratz dolls. Furthermore, Mattel contends that MGA should not be permitted to rely on the testimony given by MGA HK's corporate designee to evade providing testimony on this topic because that designee's testimony was deficient.

MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on Topic No. 14, as described above in connection with Topic No. 11. Accordingly, MGA objects to any further examination on Topic No. 14.

A review of the deposition transcript confirms that Ms. Harris did not have any knowledge regarding the identity or role of any person at MGA who first had contact with Early Light, the first manufacturer of Bratz dolls. Nor did she know the identity of any person at MGA or at Early Light who was involved in the first manufacture of Bratz dolls. Furthermore, Ms. Harris stated that she did not undertake any investigation to uncover these facts. Ms. Harris also had no

1   information or knowledge regarding the date when manufacturing began for the first Bratz dolls.

2   Ms. Harris testified that personnel in MGA's Hong Kong affiliate coordinated with Early Light.

3   Thus, the information sought by Mattel is reasonably available to MGA.  That Mattel also seeks

4   testimony from MGA's Hong Kong affiliate does not excuse MGA from producing a witness

5   sufficiently knowledgeable on Topic No. 14.  Therefore, Mattel is entitled to an order compelling

6   MGA to produce a witness to provide complete testimony on Topic No. 14.

7          **Topic No. 21**:  YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ
project information and DESIGNS prior to June 30, 2001.

8          Mattel contends that Ms. Tonnu was not sufficiently prepared to provide testimony, as

9   evidenced by the fact that two other MGA employees, Paula Garcia and Margaret Leahy, testified

10   that they had "access" to non-public DIVA STARZ information.

11          MGA contends that Ms. Tonnu prepared for her deposition by speaking with five MGA

12   employees, including Paula Garcia.  Based upon that investigation, Ms. Harris testified that the

13   five employees did not work on DIVA STARZ.  MGA explains that Ms. Garcia merely testified

14   that when she was at Mattel she often spoke to co-workers at Mattel who happened to work on the

15   DIVA STARZ, that those co-workers may have mentioned the existence of the project and that

16   they told Ms. Garcia it was confidential.  MGA contends that Ms. Garcia's testimony does not

17   establish "access to" DIVA STARZ information, but the opposite – that the employees did not

18   share details with Ms. Garcia and told her the project was confidential.  MGA acknowledges,

19   however, that Ms. Garcia testified that on one occasion she saw a sketch of a DIVA STARZ

20   character.

21          Nevertheless, MGA represents that during the meet and confer process MGA designated

22   Ms. Tonnu to provide further testimony on Topic No. 21, and that she will be deposed on January

23   9, 2008.  MGA represents that Ms. Tonnu will be prepared to testify whether each former Mattel

24   employee now employed by MGA had "access to" DIVA STARZ information while employed by

25   Mattel.

26          A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

27   prepared to testify on Topic No. 21.  Ms. Tonnu did not know what DIVA STARZ was.

28   Furthermore, she was not sufficiently informed of the identities of the MGA employees and

1  contractors who had access to or worked on DIVA STARZ. For example, Ms. Tonnu was

2  uninformed of Ms. Garcia's and Ms. Leahy's knowledge and access to DIVA STARZ

3  information while employed by Mattel. Such information was known or reasonably available to

4  MGA. Therefore, Mattel is entitled to an order compelling MGA to produce a knowledgeable

5  witness to provide complete testimony on Topic No. 21.

6      **Topic No. 24**: Any indemnification and fee arrangement that YOU and/or BRYANT has

7  sought proposed, requested or obtained in connection with this ACTION.

8      Mattel contends that MGA's designee, Lisa Tonnu, was not sufficiently prepared to

9  testify, despite having been produced twice to testify on this topic. For example, Mattel points

10  out that Ms. Tonnu did not know why MGA agreed to pay Carter Bryant's attorneys' fees or how

11  much MGA had paid or whether Littler Mendelson's fees had been paid in full. Mattel's Motion

12  at pp. 14-15. Furthermore, Mattel points out that Ms. Tonnu did not make any effort to find out

13  the answers to these questions.

14      MGA contends that Ms. Tonnu substantially discharged MGA's obligation to provide

15  testimony in response to this topic. MGA contends that Ms. Tonnu reviewed responsive

16  documents and was able to identify the agreements in her deposition. Further, MGA contends

17  that Ms. Tonnu spoke to MGA's in-house counsel about the agreements and was able to identify

18  the individuals involved in the negotiations of those agreements.

19      MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the

20  specifics of those negotiations or the terms of those agreements. MGA represents that prior to the

21  filing of this motion, it designated in-house counsel Sam Khare to provide additional testimony on

22  this topic and that Mattel will depose him on January 8, 2008.

23      A review of the deposition transcript confirms that Ms. Tonnu was not prepared to testify

24  as to information known or reasonably available to MGA. For example, Ms. Tonnu did not know

25  why MGA agreed to pay Bryant's fees, did not know how much MGA had paid in fees, and did

26  not know whether MGA had paid Littler Mendelson's fees in full. Accordingly, Mattel is entitled

27  to an order compelling MGA to produce a knowledgeable witness to provide complete testimony

28  on Topic No. 24.

**Topic No. 25**: YOUR revenues and profits from BRATZ, including without limitation, YOUR gross and net profits, and YOUR costs associated therewith.

Mattel contends that Ms. Tonnu lacked the most basic information called for by this topic. For example, Mattel contends that Ms. Tonnu testified that: she did not recall nor could she provide an estimate of how much distribution revenue MGA derived from the Bratz brand between 2001 and the end of 2006; she did not know and could not provide a best estimate for the episodic costs or production costs associated with the distribution revenue; she did not know who in the company could provide this information; she did not know and could not provide a range for how much licensing revenue MGA had received for licensing anything associated with the Bratz brand between 2001 and the end of 2006; she did not know and could not estimate how much revenue the Bratz movie generated; she did not know how much revenue MGA had earned from the Bratz brand; and she did not know how much profit MGA had generated from the Bratz brand.

MGA contends that it substantially discharged its obligation to provide testimony on this topic. More specifically, MGA contends that Ms. Tonnu testified with the aid of Exhibit 660, a 143-page report summarizing the units sold from 2001 to 2006 organized by "stock-keeping-unit" or "SKU." MGA contends that Ms. Tonnu prepared for her deposition by speaking with MGA's Director of Finance, Anisse Evans, regarding Exhibit 660.

In the meet and confer process, MGA's counsel offered to provide Mattel with source information from which the profitability of Bratz products at the SKU level could be derived and to produce Ms. Tonnu for follow-up testimony regarding that source financial information so that Mattel's experts would be in a position to draw their own conclusions and opinions as to MGA's profits from Bratz. MGA represents that Mattel has agreed to depose Tonnu on this topic on January 9, 2008. MGA also represents that it has produced more than 27,700 pages of source financial information that will be the "starting point" from which MGA's and Mattel's experts will analyze the profitability of Bratz products. MGA represents that Ms. Tonnu will be prepared to discuss the source financial information produced to Mattel at her continued deposition.

A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently prepared to provide testimony on Topic No. 25. Ms. Tonnu could not identify, generally or by

1   product, Bratz revenues, costs, or gross or net profits.  Furthermore, MGA has failed to provide

2   any explanation for why Ms. Tonnu was not educated on the source financial information before

3   her deposition.  Accordingly, Mattel is entitled to an order compelling MGA to produce a

4   knowledgeable witness to provide complete testimony on Topic No. 25.

5         **Topic No. 27:**  The payment of money or anything of value that YOU have made or
          offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or
6         received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and
          reasons therefore.

7

8         Ms. Cloonan was Carter Bryant's roommate at some point.  Bryant testified that he

9   showed her early drawings prior to showing them to MGA.  She is not and never has been an

10  employee of MGA.

11        Mattel contends that Ms. Harris' testimony was incomplete because she only searched for

12  evidence of payment by reviewing vendor files and MGA's electronic purchase order files, and

13  did not review the individual documents within each account payable vendor file.  Mattel also

14  contends that Ms. Harris was not sufficiently prepared because she had no knowledge or

15  information as to who was paying her legal fees in this case.

16        MGA contends that it discharged its obligation to testify on Topic No. 27, emphasizing

17  that Ms. Harris unequivocally represented on behalf of MGA that MGA made no payments to,

18  had no agreements with and had no communications with Elise Cloonan.  Furthermore, MGA

19  points out that Mattel took the deposition of Elise Cloonan on December 14, 2007, and she

20  confirmed that she had received no payments from and had no communications with MGA.

21        A review of the transcript confirms that Ms. Harris' preparation for and testimony

22  regarding Topic No. 27 was adequate.  Furthermore, the burden and expense of conducting a

23  deposition on this topic substantially outweigh the potential relevance of the testimony sought.

24  Mattel's motion is denied with respect to Topic No. 27.

25        **Topic No. 28:**  COMMUNICATIONS between YOU and Elise Cloonan that REFER OR
          RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including
26        DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

27        Mattel contends that Ms. Harris's testimony was insufficient because she admitted she did

28  not have any knowledge or information as to what systems or hard drives in MGA were searched

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

1    for e-mails referencing Elise Cloonan.

2           MGA contends that Mattel is not entitled to further examination on Topic No. 28 because

3    Ms. Harris substantially discharged MGA's obligation to testify on the topic, as described above

4    in reference to Topic No. 27 above.

5           A review of the transcript confirms that Ms. Harris' preparation for and testimony

6    regarding Topic No. 28 was adequate.  Furthermore, the burden and expense of conducting a

7    deposition on this topic substantially outweigh the potential relevance of the testimony sought.

8    Mattel's motion is denied with respect to Topic No. 28.

9           **Topic No. 31**: The IDENTITY of each PERSON who, at any time since January 1, 1998,
       has performed any work or services for, by or on behalf of YOU while such PERSON was
       employed by MATTEL, the nature and timing of each such PERSON's work or services
10       and the amount(s) paid by YOU to each such PERSON.

11          Mattel contends that the first time MGA produced Ms. Tonnu to testify, she lacked any

12   personal knowledge regarding this topic and that MGA failed to educate her properly on the topic.

13   Ms. Tonnu testified that she spoke to an accounts payable clerk, Ms. Brooks, who had "a list of

14   vendors and the dates in which they were either employed or freelancing with Mattel, and she

15   cross-referenced that in her research." Tonnu Tr. at 147:5-148:20.  Mattel points out, however,

16   that Ms. Tonnu testified that she did not know who prepared the list; did not see the criteria used

17   to prepare the list; did not know who the vendors or freelance people were on the list; and did not

18   know whether the list included all former Mattel employees who were working at MGA.  MGA

19   produced Ms. Tonnu for a second time regarding Topic No. 31, however, Mattel contends that she

20   was still unprepared.

21          MGA contends that it has substantially discharged its obligation to provide testimony on

22   this topic.  MGA explains that Ms. Tonnu testified on this topic based on a review of MGA

23   business records.  MGA explains that to prepare for the deposition, it prepared a list of MGA

24   employees who were former Mattel employees, including the dates each person was employed by

25   Mattel.  Next, Ms. Brooks searched MGA's accounting records reflecting payments to outside

26   vendors for any evidence of a payment to a former Mattel employee on the list during the period

27   of that person's Mattel employment, or with respect to work or services performed during that

28   period.  MGA contends that Ms. Tonnu testified about this search and the results of the search

1  leading to the identification of three instances of payments to former Mattel employees while the

2  employee was still at Mattel.

3        Nevertheless, MGA represents that prior to the filing of this motion, it designated Ms.

4  Tonnu to provide additional testimony on this topic.  Specifically, MGA is prepared to produce

5  Ms. Tonnu to testify regarding whether former Mattel employees may have performed work or

6  services for MGA during their employment with Mattel without being paid for those services.

7  Ms. Tonnu's deposition is scheduled for January 9, 2008.

8        A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

9  prepared to testify on Topic No. 31.  Notably, Ms. Tonnu admitted that she did not know whether

10  any person has at any time since 1998 performed work or services for MGA while that person

11  was a Mattel employee.  Further, she testified that she did not speak with or ask any of the former

12  Mattel employees who were working at MGA whether they had provided work or services for

13  MGA while they were Mattel employees.  Instead, Ms. Tonnu only knew whether or not

14  payments were made to the former Mattel employees while they were still employees of Mattel.

15  Furthermore, the list of former Mattel employees provided by Ms. Brooks was incomplete

16  because it did not include twelve former Mattel employees.  Accordingly, Mattel is entitled to an

17  order compelling MGA to produce a witness to provide complete testimony on Topic No. 31.

**Topic No. 34:** Other than those previously filed and served in this ACTION or in which
Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts,
declarations, affidavits and other sworn written statements of any other type by or from
YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER
OR RELATE TO the time period prior to June 30, 2001 (regardless of when such
testimony or sworn statement was taken, given, signed, made or filed).

18        Mattel contends that Mr. Woodman had not been adequately prepared for his deposition

19  and lacked the most basic knowledge on the topic.  Mattel points out that Mr. Woodman had been

20  employed with MGA for less than one year and that his responsibilities had been limited to the

21  administration of licensing contracts and royalties.  Further, Mattel contends that in preparation

22  for his deposition, Mr. Woodman "did no more than review a selection of sworn statements

23  previously made by others, review transcripts of Carter Bryant's deposition testimony, and speak

24  'for a few minutes' with one other person besides counsel."  Mattel's Consolidated Separate

25  Statement, p.130.

1  Mattel also contends that Mr. Woodman was not sufficiently prepared to testify regarding

2  "sworn statements in MGA's many submissions to the Copyright Office or Patent and Trademark

3  Office," and sworn testimony from the "Art Attacks" trial. Id.  Further, Mattel contends that

4  MGA's counsel improperly instructed Mr. Woodman not to answer certain questions on the basis

5  that Topic No. 34 did not include sworn statements made in connection with the "Art Attacks"

6  matter or statements made in various submissions to the Copyright Office or Patent and

7  Trademark Office.  Counsel also instructed Mr. Woodman not to answer certain questions about

8  sworn statements that related to Topic No. 33 and statements that MGA believed did not

9  sufficiently relate to conduct prior to June 30, 2001.  Topic No. 33 seeks testimony on

10  applications for registration and the registrations for copyright, patent, trademark or any other

11  right that refer or relate to Bratz or Bratz designs, sought, made or obtained by, for or on behalf of

12  MGA or Bryant, including communications pertaining thereto.

13  MGA contends that Mattel is not entitled to any further testimony on this topic.  MGA

14  explains that Mr. Woodman reviewed 30-50 sworn statements, read the transcript of the

15  depositions of Carter Bryant and Victoria O'Connor, MGA's former Vice President of Licensing,

16  and interviewed Leon Djiguerian in MGA's Product Development.  MGA further asserts that Mr.

17  Woodman answered questions as to the completeness or incorrectness of many factual statements

18  contained in the sworn statements placed in front of him by Mattel's counsel.  Thus, MGA

19  contends that Mattel obtained exactly the testimony it sought.  In MGA's view, Mr. Woodman's

20  testimony regarding the correctness or incorrectness of factual statements identified from the

21  sworn statements is binding on MGA.  MGA also contends that Mr. Woodman was not required

22  to investigate the preparation, review and approval of MGA's various sworn statements because

23  such information would be protected from disclosure by the attorney-client privilege and work

24  product doctrine.

25  MGA next contends that most of the documents shown to Mr. Woodman were not "sworn

26  statements," but rather (i) copyright registrations and certificates that include a statement that the

27  application is "correct to the best of my knowledge," (ii) certificates of registration issued by the

28  USPTO, and (iii) an office action summary by the USPTO.  Nevertheless, MGA implicitly

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

1   acknowledges that Mr. Woodman did not provide sufficient testimony as to certain applications

2   for registrations containing declarations by Isaac Larian documents (Exhibits 580-584, 590), a

3   declaration by Bryant (Exhibit 502), and an application and amendment referred to in the Bryant

4   declaration (Exhibits 500, 548), and one additional declaration by Isaac Larian, by agreeing to

5   produce Sam Khare to testify regarding these documents.  Mattel is scheduled to depose Mr.

6   Khare on January 8, 2008.

7           MGA contends that prior counsel properly objected to certain questions as outside the

8   scope of Topic No. 34.  In particular, MGA contends that questions directed at statements that did

9   not refer or relate to the time period prior to June 30, 2001 are outside the scope of Topic No. 34.

10  Further, MGA contends that where a sworn statement relates in part to the time period before

11  June 30, 2001, and in part to other time periods, the scope of Topic No. 34 is limited by its own

12  terms to that portion of the statement that relates to the specified time period.  MGA also contends

13  that sworn testimony taken at the Art Attacks trial is outside the scope of Topic No. 34 because

14  Mattel's counsel was present at that trial.

15          MGA represents that its present counsel does not condone the instructions not to answer

16  made by prior counsel, and will not attempt to justify those instructions.  Nevertheless, MGA

17  contends that Mattel was not deprived of any discoverable testimony by those instructions

18  because the disputed questions sought information outside the scope of Topic No. 34.  More

19  specifically, MGA represents that each exhibit that was excluded from Mr. Woodman's testimony

20  on the grounds that it was not a "sworn statement" was the subject of examination of MGA's

21  designees on Topic No. 33, Bryan Armstrong and Sam Khare.  MGA also contends that

22  resumption of a deposition on Topic No. 34 beyond what MGA has agreed to provide is

23  unwarranted because Mattel obtained two full days of 30(b)(6) testimony on Topic No. 33.

24          A review of the deposition transcript confirms that Mr. Woodman was not sufficiently

25  prepared to provide testimony on Topic No. 34.  Mr. Woodman did no more than review the

26  sworn statements made by others and the transcripts of Carter Bryant's deposition.  For the sworn

27  statements he did review, Mr. Woodman offered little information beyond what was apparent on

28  the face of the documents.  For example, Mr. Woodman did not know who authorized submitting

the sworn statement.  Ultimately, Mr. Woodman only testified as to whether or not a particular sworn statement was consistent with deposition testimony of Carter Bryant.  Furthermore, Mr. Woodman admitted that the testimony he gave had nothing to do with MGA's current beliefs, was not based on any investigation, and had nothing to do with the actual correctness or incorrectness of any of the sworn statements.  Mr. Woodman admitted that no matter what inconsistencies existed between Carter Bryant's testimony and MGA's sworn statements, Mr. Woodman always presented Carter Bryant's testimony as to the facts as "true."  Thus, Mr. Woodman failed to testify as to information known or reasonably available to MGA.  Mr. Woodman's lack of preparedness alone justifies re-opening Topic No. 34.  Furthermore, MGA cannot rely on blanket claims of privilege to preclude testimony on Topic No. 34.

A further deposition on Topic No. 34 is also justified in light of the admittedly improper instructions not to answer, and MGA's acknowledgement that Mr. Woodman did not provide testimony as to Exhibits 500, 502, 548, 580-584, 590.  MGA shall abide by its agreement to produce a witness to testify on these exhibits.

MGA's interpretation of Topic No. 34 as excluding statements not made under oath or penalty of perjury, and as excluding any portion of a statement under oath that does not refer or relate to the time period prior to June 30, 2001, is overly technical.  There is, however, a clear overlap between Topic No. 34 and Topic No. 33, which is not at issue in this motion.  When the deposition on Topic No. 34 is resumed, MGA's corporate designee is not required to provide further testimony on statements that were the subject of examination of MGA's designees on Topic No. 33.

MGA's interpretation of Topic No. 34 as excluding testimony from the Art Attacks trial is appropriate.  Mattel does not contest that its counsel attended the Art Attacks trial.  Topic No. 34 clearly excludes any proceeding attended by Mattel's counsel.  When the deposition on Topic No. 34 is resumed, MGA's corporate designee is not required to provide further testimony with respect to the Art Attacks trial.

**Topic No. 39**: The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

MGA designated two individuals to testify on this topic:  Kenneth Lockhart to testify on electronic evidence; and Lisa Tonnu, to testify on documentary evidence.  Mattel contends that both designees were unable to provide substantive testimony.

Mattel points out that Mr. Lockhart did not know whether the MGA's "PST files" had been searched; whether e-mails had been deleted from the exchange mailbox between late 2004 and the present; whether MGA's "snap servers" had been searched; whether keywords were used to search "PST" files; and what user files were searched.  Further, Mattel contends that Mr. Lockhart was not aware of the location of any hard drive or any image of any hard drive that had been preserved for litigation purposes.

MGA contends that Mr. Lockhart substantially discharged MGA's obligation on Topic 39 with respect to electronic documents.  MGA represents that Mr. Lockhart prepared extensively for his testimony by speaking with various individuals and that he testified at length about the configuration of MGA's computer systems and MGA's policies, practices and procedures for the retention and preservation of electronic documents.

Nevertheless, MGA is willing to produce a witness to testify on its behalf regarding the collection of electronic documents in connection with this action in order to shore up the one area of Mr. Lockhart's testimony that MGA agrees was lacking.

As for Ms. Tonnu, Mattel contends that MGA made no discernible effort to educate her concerning the topic.  Ms. Tonnu testified that she did not know whether MGA has a document retention policy.  Mattel also contends that MGA's counsel instructed Ms. Tonnu not to answer any questions about MGA's preservation and collection of documents based upon unfounded claims of attorney-client privilege.[2]

MGA produced Ms. Tonnu a second time to testify on Topic No. 39, however Mattel contends that her testimony remained deficient.  For example, Ms. Tonnu testified that she prepared for the deposition by speaking with Rich Daniels, MGA's counsel, and by reviewing a

//

---

[2] The instructions not to answer are discussed in a separate section of this Order.

1   declaration prepared by Daphne Gronich, MGA's General Counsel on the subject of document

2   preservation.  Mattel points out, however, that Ms. Tonnu never spoke with Ms. Gronich, and

3   therefore was unable to provide any information beyond what was stated in the four corners of the

4   declaration.  In particular, Mattel contends that Ms. Tonnu did not know whether any documents

5   at the MGA campus had been searched for responsive documents.  Nor did Ms. Tonnu know what

6   documents were stored at MGA's three off-site facilities and could not confirm whether they had

7   been searched for documents responsive to Mattel's requests.

8        MGA contends that Ms. Tonnu testified fully and completely regarding MGA's

9   preservation of documents in connection with this action.  Indeed, MGA contends that the

10  Gronich declaration, which had already been provided to Mattel, contains detailed information

11  regarding MGA's document preservation efforts.  MGA also points out that Tonnu testified,

12  based on her investigation and MGA's general policy (that documents generated by employees in

13  the ordinary course of business should not be destroyed and the wide distribution of document

14  preservation notices to MGA employees), that MGA did not knowingly destroy any documents

    potentially relevant to this action.

15       MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the actual

16  collection of documents for production in this action.  MGA represents that it is willing to

17  produce an additional witness to discuss the collection of hard copy and electronic documents in

18  connection with this action.

19       A review of the deposition transcripts confirms that MGA's witnesses provided a

20  significant amount of testimony on this topic, and in particular regarding document preservation.

21  The one area where they were glaringly deficient was regarding document "collection."

22  Accordingly, MGA is ordered to abide by its agreement to produce a witness to testify further

23  with respect to the "collection" of hard copy and electronic documents.  In all other respects,

24  MGA is in substantial compliance with Topic No. 39, and the burden and expense of re-opening a

25  deposition on the entirety of Topic No. 39 outweighs the likely benefit of the testimony Mattel

26  seeks.

27       **Topic No. 40**: The preservation, collection, destruction, removal, transfer, loss or

28

1   impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that

2   REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan

3   or information) that YOU received in any manner from any PERSON who was at the time an

4   employee of MATTEL or who had previously been an employee of MATTEL.

5        This topic appears to be based, at least in part, upon Mattel's allegations that former

6   Mattel employee Ron Brawer, former Mattel employees in Mattel's offices in Mexico; and a

7   former Mattel employee located in Canada improperly provided MGA with documents containing

8   Mattel trade secrets.

9        Mattel contends that MGA made no discernible effort to educate Ms. Tonnu on Topic No.

10  40, and therefore she was unable to answer whether MGA has or has had in its possession any (1)

11  Mattel strategic plans, (2) any sales or profit information of Mattel, (3) any documents related to

12  Mattel's advertising strategy, (4) any documents relating to the results of Mattel's advertising, (5)

13  documents related to Mattel's pre-release line lists, and (6) documents related to Mattel's strategy

14  with respect to specific customers.  MGA produced Ms. Tonnu a second time, however, Mattel

15  contends that her testimony remained deficient.  In particular, Mattel complains that MGA spoke

16  with only two former employees about the documents described above, when there are many

17  more former Mattel employees working at MGA.

18       MGA contends that Ms. Tonnu spoke with the three individuals at MGA who would be

19  most knowledgeable about the allegations against MGA and testified as to any documents they

20  brought with them from Mattel:  Ron Brawer, Susana Kuemmerle and Janine Brisbois.  MGA

    contends that Ms. Tonnu's preparation to testify on Topic 40 was reasonable.

21       Nevertheless, MGA represents that it has agreed to provide additional testimony through

22  Ms. Tonnu to address Mattel's concerns, and that her deposition will take place on January 9,

23  2008.

24       A review of the deposition transcript indicates that Ms. Tonnu did not prepare sufficiently

25  for her testimony.  Ms. Tonnu spoke to only three individuals.  Clearly, there are far more sources

26  of information reasonably available to MGA, namely the many more former Mattel employees

27  now employed at MGA.  MGA made no effort to determine what Mattel documents, if any, these

28

1   individuals possess. Therefore, Mattel is entitled to an order compelling MGA to produce a

2   witness to provide complete testimony on Topic No. 40.

3       **Topic No. 41**: The testing or sampling from DOCUMENTS that REFER OR RELATE
        TO BRATZ or BRYANT, including without limitation such testing or sampling in
4       connection with any ink, paper or chemical analysis performed or attempted to be
        performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results
5       and reports relating thereto.

6       Mattel deposed Ms. Tonnu on this topic on two separate occasions. Mattel contends that

7   in each instance, she was unprepared to given any meaningful testimony regarding any ink, paper

8   or chemistry testing performed on Bratz documents. In particular, Mattel contends that Ms.

9   Tonnu's preparation for her deposition was inadequate because she did not speak to the MGA

10  litigation consultant who performed the testing, Mr. Speckin, but merely read his declaration.

11      Furthermore, Mattel contends that MGA's counsel improperly instructed Ms. Tonnu not to

12  answer questions based upon unfounded claims of work product protection. Mattel explains that

13  it is not seeking information concerning Mr. Speckin's opinions or the results of his test on Bratz

14  documents. Instead, Mattel contends that it is seeking factual information concerning the

15  handling and shipment of original Bratz documents, as well as the specific documents that were

16  tested. In Mattel's view, the factual circumstances surrounding Mr. Speckin's testing are not

    protected from discovery by the work-product doctrine.

17      Moreover, Mattel contends that MGA provided Mattel's counsel with a list identifying the

18  documents that Mr. Speckin tested and allowed Ms. Tonnu to testify about the identification of

19  documents, thereby waiving any work product protection with respect to the identification of

20  documents. Mattel also contends that Mr. Speckin's declaration, which was submitted in the

21  case, already discloses the types of tests conducted and therefore any privilege that may have

22  applied has been waived with respect to this subject.

23      MGA contends that it complied with this topic and that Mattel is not entitled to any further

24  examination because further questioning about the testing performed by Mr. Speckin would

25  violate MGA's attorney work product protection. Mr. Speckin is one of MGA's non-testifying

26  experts. MGA objects to any further questioning regarding Mr. Speckin's selection of which

27  documents to test, how the documents were handled, which tests were performed on the

28

documents, how they were shipped and how they were stored.  MGA contends that further questioning on these subjects would necessarily reveal the mental impressions, legal theories, and conclusions of MGA's counsel and its non-testifying experts formed in anticipation of litigation with Mattel.  Further, MGA contends that Mattel has not carried its heavy burden to demonstrate the "exceptional circumstances" required to invade MGA's work product.

A review of the deposition transcript confirms that Ms. Tonnu was not reasonably prepared to testify on Topic No. 41.  Ms. Tonnu did not speak with Mr. Speckin or anyone involved in the testing.  She had only read Mr. Speckin's declaration.  Therefore, she clearly was not in a position to testify as to information known or reasonably available to MGA.  On this basis alone, Mattel is entitled to an order compelling MGA to produce a witness to testify fully on Topic No. 41.

As for MGA's claims of work production protection, Judge Larson has already indicated that questions of privilege regarding the testing of the Bratz documents must be handled on a question-by-question basis.  The questions at issue are set forth in Mattel's Separate Statement No. 2, and are discussed below in connection with Mattel's Request for Relief No. 4.

B. Mattel's Request for Relief No. 2:  Mattel seeks an order overruling each of the purportedly improper instructions not to answer questions interposed at the deposition of MGA designees Spencer Woodman (Instruction Nos. 46-57) and compelling Woodman or other such person selected by MGA as its designee to provide complete testimony on Topic No. 34.

Mattel identifies each instance of allegedly improper instructions in its Separate Statement No. 2.  In each instance identified by Mattel, MGA's counsel instructed the witness not to answer questions about matters that counsel believed exceeded the scope of the deposition.  The instructions not to answer were not based upon a claim of privilege, and therefore were clearly improper.

Furthermore, as stated previously, MGA has acknowledged that some questions fell within the scope of Topic No. 34 and should be answered.  To that end, MGA has agreed to produce a corporate designee to provide supplemental testimony as to Exhibits 500, 502, 548, 580-584, 590.  MGA shall abide by its agreement to produce a witness to testify on these exhibits.

Nevertheless, many of the questions identified in the Separate Statement No. 2 for which

1   an improper instruction not to answer was given clearly exceeded the scope of the deposition

2   notice.  MGA is not required to provide further testimony as to those questions.  For example, the

3   question regarding the Art Attacks trial that Mattel's counsel attended (Instruction No. 46) exceed

4   the scope of Topic No. 34, and do not require any further testimony.  MGA is also not required to

5   provide further testimony as to documents that have been the subject of questioning during the

6   30(b)(6) deposition on Topic No. 33.[3]

7   C. Mattel's Request for Relief No. 3:  Mattel seeks an order compelling MGA to produce documents that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition as documents which he reviewed and relied upon to refresh his recollection in preparation for his deposition.

8

9        Mattel seeks an order compelling MGA to produce documents that Mr. Lockhart

10   identified during his deposition as documents which he reviewed and relied upon to refresh his

11   recollection in preparation for his deposition.

12        MGA contends that the documents Mattel seeks are privileged e-mail communications

13   from MGA's General Counsel to MGA employees regarding their document preservation

14   obligations in light of the present action.  MGA contends that its privilege log demonstrates that

15   the documents are protected by both the attorney-client privilege and the work product doctrine.

16   Furthermore, MGA contends that Mr. Lockhart was required to review the privileged emails

17   because they related to MGA's preservation of documents in connection with this action and they

18   were reasonably available to MGA.

19        Moreover, MGA contends that waiver of the attorney-client privilege and work product

20   doctrine is not automatic where a witness refreshes his recollection with privileged prior to a

21   deposition.  In re Managed Care Litig., 415 F.Supp.2d 1378 (S.D. Fla. 2006); Medtronic Xomed,

22   Inc. v. Gyrus ENT LLC, 2006 WL 786425, at *1, 3, 6-7 (M.D. Fla. March 27, 2006).

23        MGA's bare bones privilege log, unaccompanied by any supporting declarations, is

24   insufficient to establish the attorney-client privilege and the work product doctrine.  Further,

25   although there appears to be a split in authority, the weight of authority supports a finding of

26

27   [3] MGA represents that virtually all of the questioning quoted in Mattel's Separate Statement No. 2 at Instruction Nos. 47-57 was covered in the deposition on Topic No. 33.  However, MGA's representation cannot be confirmed by the excerpts of the deposition transcript submitted in connection with this motion.

28

1    waiver.  See e.g. United States ex rel. Bagley v. TRW Inc., 212 F.R.D. 554, 565-566 (C.D. Cal.

2    2003) (requiring disclosure of documents reviewed by relator in preparing for his deposition

3    based upon waiver of work product protection); U.S. v. 22.80 Acres of Land, 107 F.R.D. 25-26

4    (N.D. Cal. 1985) (work product waived where deponents used documents to refresh recollection);

5    Ehrlich v. Howe, 848 F.Supp. 482, 493 (S.D. N.Y. 1994) ("when [c]onfronted with the conflict

6    between the command of Rule 612 to disclose materials used to refresh recollection and the

7    protection afforded by the attorney-client privilege . . . the weight of the authority holds that the

8    privilege is waived."); Marshall v. United States Postal Service, 88 F.R.D. 348, 350 (D. D.C.

9    1980) ("[I]t is apparent that once a document is used to refresh the recollection of a witness,

     privileges as to that document have been waived.").

10         Furthermore, the interests of justice compel production of the e-mail documents used by

11   Mr. Lockhart to refresh his recollection.  MGA acknowledges that Mr. Lockhart was required to

12   review the e-mails because they related to MGA's preservation of documents.  Mr. Lockart

13   testified that the e-mails refreshed his recollection as to what MGA employees had been requested

14   to preserve.  Accordingly, MGA is ordered to produce the e-mails reference in Mr. Lockhart's

15   deposition.

16   D. Mattel's Request for Relief No. 4.  Mattel seeks an order overruling each of the purportedly
     improper instructions not to answer questions interposed at the deposition of MGA designee Lisa
17   Tonnu.

18         In Mattel's Separate Statement No. 2, Mattel identifies each purported instance of

19   improper objections and/or instructions not to answer for which it seeks a ruling.  Each instance

20   of allegedly improper conduct is discussed below.

21

22                                    Instruction Nos. 1-5

23         Mattel's counsel posed a series of questions regarding Mr. Larian's trusts.  In each

24   instance, MGA's counsel instructed Ms. Tonnu not to answer.  MGA's counsel objected to the

25   question on privilege and privacy grounds, and objected that the question exceeded the scope of

26   deposition.

27         The privilege objections are overruled because MGA has failed to establish the requisite

28
                                                                                                    24

     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

1   elements of any applicable privilege.  The privacy objections are overruled since there is a

2   protective order in place to address Mr. Larian's privacy concerns regarding his personal finances.

3   The remaining objections do not justify an instruction not to answer.  See Fed.R.Civ.P. 30(c)(2)

4   (an objection must be noted on the record, but the examination still proceeds and the testimony is

5   taken subject to any objection).  Accordingly, MGA shall produce a knowledgeable 30(b)(6)

6   designee to provide complete responses to the questions identified in Mattel's Separate Statement

7   No. 2 as Instruction Nos. 1-5.

8                                            Instruction No. 6

9           In this excerpt, the witness wanted to clarify her testimony regarding voucher payments,

10  which prompted Mattel's counsel to ask a series of questions about what prompted her make the

11  clarification, including "that's what counsel told you at the break?"; "[h]ow was your recollection

12  refreshed"; and "[d]id Mr. Jenal tell you what the dates were?"  MGA's counsel objected on

13  privilege grounds and instructed the witness not to answer.

14          The objections are overruled.  The attorney-client privilege protects an attorney's

15  communication of legal advice to his client, as well as the client's communication of information

16  to the attorney "to enable him to give sound and informed advice."  Upjohn Co. v. United States,

17  449 U.S. 383, 390 (1981).  In this instance, the question posed did not require the witness to

18  disclose the substance of an attorney-client communication.  Instead, the questions posed called

19  for the disclosure of underlying facts to which Mattel is entitled.  See Upjohn, supra at 395

20  (finding that the attorney-client privilege does not preclude disclosure of factual information and

21  that the privilege does not protect facts communicated to an attorney).

22          Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

23  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 6.

24                                      Instruction Nos. 7-20 and 23

25          In each of these excerpts, Mattel's counsel posed questions regarding testing performed on

26  Bratz drawings.  MGA's counsel objected to the questions based upon the work product doctrine

27  and instructed the witness not to answer.

28          The work product objections are overruled.  The work product doctrine, now codified in

part in Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial. The party claiming work product immunity has the burden of establishing its elements by competent evidence. In re Kidder Peabody Securities Litigation, 168 F.R.D. 459, 462 (S.D. N.Y. 1996).

In the instant case, all of the questions posed to the witness take one of four forms: "do you know whether" or "do you know who" or "do you know what" or "do you know why." The questions thus call for a simple "yes" or "no" response that did not require divulging any information protected by the work product doctrine.

Even if the questions are construed to require substantive responses beyond "yes" or "no," the information sought is factual (what test was conducted, how documents were stored, whether the documents were handled with cotton or latex gloves, who was with the expert when he performed his tests, what precautions he took). The questions do not require the witness to divulge the mental impressions, the legal theories, or conclusions of Mr. Speckin.

Moreover, Rule 26(b)(4)(B), Fed.R.Civ.P., provides that a party may discover facts known or opinions held by an non-testifying expert upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means. In the instant case, there is no other practicable means for Mattel to obtain information about the handling, shipping and testing of original Bratz documents while in Mr. Speckin's possession. Mr. Speckin is a non-testifying expert. The manner in which Mr. Speckin transported, analyzed, tested or otherwise used the original Bratz drawings is uniquely within his knowledge and plainly relevant. The original Bratz drawings are a key piece of evidence in this case. Mattel needs information concerning what, if any, changes, damage, or other alterations were made to the original Bratz drawings. Mattel is not seeking information regarding Mr. Speckin's opinions or the results of his tests. Rather, Mattel is seeking only information regarding the handling of the original Bratz documents and more precise identification information for the specific documents that were handled by Mr. Speckin.

MGA objects to providing information concerning Mr. Speckin's testing, the testing conditions, the selection of which drawings to test and other logistics. MGA, however, has

1   already disclosed the types of tests performed by Mr. Speckin in a declaration submitted to the

2   court, and has provided Mattel with a list identifying the documents that Mr. Speckin tested,

3   although the list did not identify the documents by Bates numbers.  Therefore, MGA has waived

4   any work product protection to which it may have been entitled with respect to the identification

5   of the original Bratz drawings that were subjected to testing and which tests were performed.

6          Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

7   responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 7-

8   20 and 23.

                              Instruction Nos. 21-22

9          In these excerpts, Mattel's counsel asked Ms. Tonnu whether she could identify or

10  describe any of the documents that were tested by Mr. Speckin.  MGA's counsel objected to the

11  questions based upon the work product doctrine and instructed the witness not to answer

12  The objections are overruled.  As discussed immediately above, the questions call for factual

13  information that is not protected by the work product doctrine.  Even if the work product doctrine

14  applied, the protection has been waived.  Furthermore, this case presents exceptional

15  circumstances under which it is impracticable for Mattel to obtain the information sought by other

16  means.  Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

17  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 21-

18  22.

                              Instruction Nos. 24-26

19         In these excerpts, Mattel's counsel asked the witness (1) what Ms. Garcia told her about

20  Diva Starz and (2) whether Ms. Garcia told the witness she had access to Diva Starz information

21  while she was at Mattel.  MGA's counsel objected to the questions to the extent the witness'

22  conversations with Ms. Garcia occurred in the presence of counsel and instructed the witness not

23  to answer.

24         The objections are overruled.  The questions do not require the witness to divulge the

25  substance of any privileged communication.  Instead, the questions call for factual information to

26  which Mattel is entitled.

27

28

Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 24-26.

### Instruction No. 27

In this excerpt, Mattel's counsel asked the witness twice whether MGA had access to Mattel internal information regarding Diva Starz prior to February 1st, 2000. MGA's counsel made a speaking objection, which clearly violated Rule 30(c)(2), Fed.R.Civ.P. However, the questions do not need to be repeated because the witness provided responses.

### Instruction No. 28

In this excerpt, Mattel's counsel asked, "MGA is denying that it had access to internal information about Mattel's Diva Starz project prior to September 1st, 2000?" MGA's counsel objected on the grounds that the question calls for a legal conclusion, calls for the disclosure of privileged information, and exceeds the scope of the deposition. Counsel also instructed the witness not to answer.

The objections are overruled. The question does not call for a legal conclusion and MGA has failed to establish the elements of the attorney-client privilege.

Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 28.

### Instruction Nos. 29-34

In these excerpts, Mattel's counsel asked as series of questions regarding whether MGA knew Mattel was considering using the name "Brats" and "Boyz" in connection with the Diva Starz project and whether MGA knew Mr. Linker worked on the project. MGA's counsel made several objections including the following: assumes facts not in evidence; misstates the witness' prior testimony; compound; outside the scope of the deposition; improper as to form; lacks foundation; vague and ambiguous; calls for speculation; argumentative; and asked and answered. MGA's counsel objected to one question (Instruction No. 30) on the additional ground that it may call for attorney-client communications. MGA's counsel also instructed the witness not to answer.

The repeated instructions not to answer were clearly improper. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 29-34.

Instruction No. 35

In this excerpt, the witness indicated that she did not know whether Mr. Linker worked on the Bratz project. Mattel's counsel then asked, "But you don't know one way or the other?" MGA's counsel objected to the question, asserting that it had been asked and answered and was argumentative. MGA's counsel also instructed the witness not to answer.

The instruction not to answer was clearly improper. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 35.

Instruction No. 36

In this excerpt, Mattel's counsel asked, "Did you have a conversation with Mr. Jenal about the net worth or the valuation of the company?" MGA's counsel objected on privilege grounds and instructed the witness not to answer.

The objection is overruled. The question calls for a "yes" or "no" answer and does not require the witness to divulge the substance of a privileged communication.

Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 36.

Instruction No. 37

In this excerpt, Mattel's counsel asked, "What did Mr. Daniels tell you about the net worth or valuation of the company?" MGA's counsel objected on privilege grounds.

The objection is sustained. As phrased, the question potentially calls for the disclosure of the substance of a privileged communication.

Instruction Nos. 38-40

In these excerpts, MGA's counsel instructed the witness not to answer. The instruction was not based upon a claim of privilege, and therefore was improper. MGA's counsel also made an improper speaking objection. Accordingly, MGA shall produce a knowledgeable 30(b)(6)

1    designee to provide complete responses to the questions identified in Mattel's Separate Statement

2    No. 2 as Instruction Nos. 38-40.

3                              Instruction No. 41

4         In this excerpt, Mattel's counsel asked the witness to identify the litigation for which

5    Exhibit 660 was prepared.  MGA's counsel objected to the question as calling for work product

6    and instructed the witness not to answer.

7         The work product objection is overruled.  The question calls for the disclosure of facts, not

8    work product.  Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide

9    complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction

10   No. 41.

11                            Instruction Nos. 42-44

12        In these excerpts, Mattel's counsel posed more questions about the litigation for which

13   Exhibit 660 was prepared, including the identity of the parties to the litigation and whether the

14   litigation was ongoing.  MGA's counsel objected on privilege and work product grounds.

15        The objections are overruled.  The questions call for the disclosure of facts, not work

16   product.  Further, MGA has failed to establish that the questions require the witness to disclose

17   the substance of a privileged communication.  Accordingly, MGA shall produce a knowledgeable

18   30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate

19   Statement No. 2 as Instruction Nos. 42-44.

20                              Instruction No. 45

21        In this excerpt, Mattel's counsel asked whether an attorney by the name of Mr. Daniels

22   wrote a document.  The work product objection by MGA's counsel is overruled.  The "yes" or

23   "no" question calls for the disclosure of facts, not work product.  Accordingly, MGA shall

24   produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions

25   identified in Mattel's Separate Statement No. 2 as Instruction No. 45.

26   E. Mattel's Request for Relief No. 5:  Mattel seeks an order reopening the deposition of MGA
     designee Lisa Tonnu based on a purported "complete reversal of testimony" made through written
     "changes" to her deposition transcript.

27        Ms. Tonnu made changes to her deposition transcript after her deposition was completed.

28

Counsel asked Ms. Tonnu whether any documents had been collected from MGA's Filenet storage facility, to which she responded "no"; whether Mr. Daniels told her that he was going to collect documents from Filenet, to which she responded "yes"; and whether the documents at Filenet contained any documents responsive to Mattel's request, to which she responded "no." Later, Ms. Tonnu revised her deposition transcript and reversed each of her answers.

Mattel contends that Ms. Tonnu's initial answers in the negative precluded a line of questioning into, for example, who collected documents, which documents were collected and how.

MGA contends that the changes Ms. Tonnu made do not justify re-opening a deposition. Nevertheless, MGA has no objection to follow-up questions about Ms. Tonnu's revision when she is deposed again in January.

In light of MGA's lack of opposition, MGA shall make Ms. Tonnu available for follow-up questioning regarding the revisions to her deposition testimony.

F. Mattel's Request for Relief No. 6:  Mattel seeks an order compelling Rebecca Harris to sit for the completion of her deposition and/or compelling such person selected by MGA as its designee to complete the testimony on topics for which Harris was previously designated.

Mattel seeks an additional day to depose Ms. Harris.  Mattel contends that it needs more than the 7-hours it has already deposed Ms. Harris to complete its questioning on all topics for which she was designated.  Mattel emphasizes that Ms. Harris is designated to testify on nine separate topics, each of which pertains to issues at the heart of the litigation, including the origin, creation, design and development of Bratz prior to June 30, 2001; relevant contracts concerning Carter Bryant and Bratz; payments made to Bryant and other financial information relating to Bratz; and third parties who were involved in or otherwise have knowledge about the creation, design and development of Bratz.

In addition to the topics already discussed above in Section "A" to this Order, Mattel contends that it did not have sufficient time to depose Ms. Harris on Topic Nos. 19, 22 and 23, which are set forth below:

Topic No. 19:  Each agreement or contract between YOU and any PERSON other than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of when such agreement or contract was negotiated or executed), including without limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that REFER OR RELATE

31

1    thereto, and any actual or proposed amendments thereto.

2    **Topic No. 22**:  The payment of money or anything of value by or for YOU or on YOUR
     behalf that has been made to, for or on behalf of BRYANT (a) for work, services or
3    activities performed by BRYANT prior to January 1, 2001 (regardless of when such
     payment was actually made), (2) for DESIGNS CREATED by BRYANT prior to January
4    1, 2001 (regardless of when such payment was actually made) or (c) in connection with
     BRATZ or any BRATZ DESIGN at any time, including amount(s) thereof and the reasons
5    therefore,

6    **Topic No. 23**:  The payment of royalties to, for or on behalf or BRYANT made by or for
     YOU or on YOUR behalf, including the timing, manner and amounts of such payments
7    and the reasons therefore.

8    MGA contends that Mattel has not made the required showing that additional time is "needed to

9    fairly examine the deponent" or that "the deponent, another person, or any other circumstance

10   impedes or delays the examination." Fed.R.Civ.P. 30(d)(1).  Furthermore, MGA contends that

11   Mattel wasted much of the 7-hours with Ms. Harris by asking questions outside the topics for

12   which she was designated and badgering the witness.

13        As discussed already above, Ms. Harris was not sufficiently prepared to testify on several

14   topics and did not discharge MGA's duty to produce a witness to testify as to information known

15   or reasonably available to MGA.  Her lack of preparedness alone justifies additional deposition

16   time.  The relatively large number of topics for which Ms. Harris was designated (Topic Nos. 11,

17   13, 14, 19, 21, 22, 23, 27 and 28), also justifies additional deposition time to enable Mattel to

18   fairly examine the deponent.  Many of the topics for which Ms. Harris was designated are highly

19   relevant to the case.  Mattel has identified a few instances where Mattel was inefficient in

20   conducting her deposition; however, the deposition generally proceeded at a reasonable pace.

21   Accordingly, Mattel is granted an additional four hours to complete the deposition of Ms. Harris

22   on all of the topics for which she was designated, except Topic Nos. 27 and 28 which were

23   discussed previously.

     G.  Mattel's Request for Relief No. 7:  Mattel seeks an order imposing sanctions for MGA's
24   alleged willful violations of the May 16, 2007 and August 14, 2007 Orders, for MGA's allegedly
     improper instructions not to answer deposition questions and for MGA's alleged improper
25   coaching, harassing and obstructionist conduct at the September 24-25, 2007 deposition of Lisa
     Tonnu and at the October 9, 2007 deposition of Spencer Woodman in the amount of $10,000.

26        Sanctions are appropriate based upon MGA's failure to produce 30(b)(6) designees who

27   were reasonably prepared to testify on seven out of the sixteen topics at issue, namely Topic Nos.

28

                                                                                              32

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

21, 24, 25, 31, 34, 39 and 40.  By agreeing to provide supplemental testimony on these topics,

MGA implicitly acknowledges that the witnesses provided insufficient testimony.  Further,

MGA's counsel also repeatedly flouted Rule 30(c)(2), Fed.R.Civ.P., and prior orders prohibiting

instructions not to answer for reasons other than privilege.  Accordingly, pursuant to Rule

30(d)(2) and 37(b), Fed.R.Civ.P., sanctions are imposed in the amount of $6,000.

H.  Mattel's Request for Relief No. 8:  Mattel seeks a report and recommendation to Judge
Stephen G. Larson that recommends the imposition of preclusion sanctions, that certain facts
related to the topics compelled be deemed admitted, and/or that MGA be found in contempt for
MGA's allegedly willful and repeated violations of the Orders.

　　　As previously stated at the December 14, 2007 hearing, it is premature to consider

preclusion sanctions and contempt at this time.  If Mattel intends to pursue such sanctions, it may

do so only after the close of Phase 1 discovery.

## V. CONCLUSION

　　　For the reasons set forth above, it is hereby ordered as follows:

　　　1.　　　No later than January 30, 2008, MGA shall produce witnesses who are prepared to

testify about information known or reasonably available to MGA in accordance with Rule

30(b)(6), Fed.R.Civ.P., and to provide complete testimony on the following topics as specified

herein:  Topic Nos. 11, 13, 14, 19, 21-25, 31, 34 (with limitations noted herein) 39 (with

limitations noted herein), 40 and 41.  Mattel's motion is denied as to Topic Nos. 27 and 28.

　　　2.　　　MGA's 30(b)(6) designee Spencer Woodman shall provide full and complete

responses to each of the questions identified in Mattel's Separate Statement No. 2 that are

identified herein as requiring a further response because the objections have been overruled

and/or the instructions not to answer have been found improper, and the question seeks relevant

and privileged information to which Mattel is entitled.

　　　3.　　　MGA shall produce the e-mails that MGA designee Kenneth Lockhart identified

during his June 14, 2007 deposition as documents which he reviewed and relied upon to refresh

his recollection in preparation for his deposition.  Mattel is also permitted to conduct reasonable

follow-up questioning regarding those documents.

　　　4.　　　MGA's 30(b)(6) designee Lisa Tonnu shall provide full and complete responses to

each of the questions identified in Mattel's Separate Statement No. 2 that are identified herein as

1 requiring a further response because the objections have been overruled and/or the instructions

2 not to answer have been found improper, and the question seeks relevant information to which

3 Mattel is entitled.

4      5.    In addition to the deposition testimony authorized above, Mattel is granted leave to

5 depose Ms. Tonnu regarding the changes she made to her deposition transcript.

6      6.    Mattel is granted additional time to complete a full and fair examination of Ms.

7 Harris on all of the topics for which she was designated, except Topic Nos. 27 and 28. The

8 deposition of Ms. Harris shall not exceed four (4) hours.

9      7.    Mattel's request for monetary sanctions is granted in part pursuant to Fed.R.Civ.P.

10 37(b). MGA shall pay sanctions in the amount of $6,000 no later than February 11, 2008.

11      8.    Mattel's request for preclusion sanctions and/or a finding of contempt is denied

12 without prejudice.

13      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

14 Master, Mattel shall file this Order with the Clerk of Court forthwith.

15 Dated: January 8, 2008

16                            HON. EDWARD A. INFANTE (Ret.)
                                 Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 9, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; TO OVERRULE PURPORTEDLY IMPROPER INSTRUCTIONS; AND FOR SANCTIONS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 9, 2008, at San Francisco, California.

_Sandra Chan_

Sandra Chan