QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| Defendant. | MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL MATTEL TO PRODUCE WITNESSES PURSUANT TO NOTICE OF DEPOSITION UNDER RULE 30(B)(6), OR, IN THE ALTERNATIVE, FOR LEAVE TO SERVE SUCH NOTICE |
| AND CONSOLIDATED ACTIONS | [Separate Statement, Notice of Lodging, and Declarations of Jon D. Corey, Lissa Freed, Vickie Cerrito and Michael Moore filed concurrently herewith] |
| | Hearing Date:     February 8, 2008<br>Time:                 9:30 a.m.<br>Place:               Telephonic |
| | **Phase 1**<br>Discovery Cut-Off:      January 28, 2008<br>Pre-Trial Conference:  May 5, 2008<br>Trial Date:                  May 27, 2008 |

07209/2343995.4

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

I.    THE ONE DEPOSITION RULE APPLIES TO MGA; IT MUST
      OBTAIN LEAVE TO DEPOSE MATTEL A SECOND TIME ..................... 2

II.   MGA MUST SHOW GOOD CAUSE FOR EACH TOPIC BEFORE
      THE DISCOVERY MASTER SHOULD GRANT MGA LEAVE TO
      SERVE A PROPER NOTICE ............................................................. 4

      A.    MGA Presented No Evidence To Support A Showing of Good
            Cause ........................................................................................ 4

      B.    MGA's Motion Violates Local Rule 37-1 and Should Be Denied
            On That Ground ......................................................................... 5

III.  THE TESTIMONY THAT MGA SEEKS IS DUPLICATIVE ..................... 5

IV.   COLLECTING INFORMATION TO PREPARE AND PREPARING
      A WITNESS TO TESTIFY ON MANY OF MGA'S DEPOSITION
      TOPICS WOULD IMPOSE AN OPPRESSIVE AND UNDUE
      BURDEN UPON MATTEL ............................................................. 11

      A.    The Discovery Master Has Already Rejected Similarly
            Burdensome and Overbroad Discovery ...................................... 12

      B.    The Burden on Mattel in Preparing a Witness on MGA's Topics
            is Oppressive ............................................................................. 13

V.    MGA'S DEPOSITION TOPICS ARE OVERBROAD AND NOT
      REASONABLY PARTICULARIZED .................................................. 16

VI.   MANY OF MGA'S TOPICS ARE VAGUE AND AMBIGUOUS ............... 19

VII.  THE TESTIMONY THAT MGA SEEKS IS NOT REASONABLY
      AVAILABLE TO MATTEL ............................................................... 22

VIII. MGA'S RULE 30(B)(6) NOTICE SEEKS DISCOVERY OF
      INFORMATION THAT IS MORE APPROPRIATELY OBTAINED
      THROUGH CONTENTION INTERROGATORIES ................................ 23

IX.   THERE ARE NO CHANGED CIRCUMSTANCES ................................ 25

CONCLUSION ................................................................................. 26

1

## TABLE OF AUTHORITIES

2
**Page**

3

### Cases

4

Alexander v. Federal Bureau of Investigation,
  188 F.R.D. 111 (D.D.C. 1998)...................................................................17

Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,
  244 F.3d 189 (1st Cir. 2001)........................................................................3

Boston Scientific Corp. v. Cordis Corp.,
  2004 WL 1945643  Mumford Dec., Exh. 10................................................4

Contratto v. Ethicon, Inc.,
  227 F.R.D. 304 (N.D. Cal. 2005).................................................................4

CSX Transp., Inc. v. Vela,
  2007 WL 3334966 (S.D. Ind. 2007).............................................................6

Cummings v. General Motors Corp.,
  2002 WL 32713320 (W.D. Okla. 2002).......................................................6

Estate of Gonzalez v. Hickman,
  2007 WL 3238725 (C.D. Cal. 2007).............................................................5

Helfer v. Marriott Int'l, Inc.,
  2007 WL 433477 (E.D. Pa. 2007)..............................................................21

Gold v. Wolpert,
  876 F.2d 1327 (7th Cir. 1989) .....................................................................4

In re Independent Service Organizations Antitrust Litig.,
  168 F.R.D. 651 (D. Kan. 1996) (finding Rule 30(b)(6)...........................22

Innomed Labs, LLC v. Alza Corp.,
  211 F.R.D. 237 (S.D.N.Y. 2002) ...............................................................15

In re Intuit Privacy Litigation,
  138 F. Supp. 2d 1272 (C.D. Cal. 2001)........................................................5

McCormick-Morgan, Inc. v. Teledyne Indus., Inc.,
  134 F.R.D. 275 (N.D. Cal. 1991)...............................................................22

Omni Home Financing, Inc. v. Hartford Life & Annuity Ins. Co.,
  2008 WL 66562 (S.D. Cal. 2008)...............................................................11

Payne v. Giant Food, Inc.,
  346 F. Supp. 2d 15 (D.D.C. 2004) ...............................................................5

Reed v. Bennett,
  193 F.R.D. 689 (D. Kan. 2000)..................................................................16

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SmithKline Beecham Corp. v. Apotex Corp.,
    2000 WL. 116082 (N.D. Ill. 2000)................................................................21

Southern Boston Management Corp. v. BP Prods. North America, Inc.,
    2006 WL. 162916 (S.D.N.Y. 2006)...............................................................15

Static Control Components, Inc. v. Lexmark Intern., Inc.,
    2006 WL. 3256767 (E.D. Ky. 2006)................................................................6

Thumin v. Bumble Bee Seafoods, Inc.,
    2001 WL. 1164691 (S.D.N.Y. 2001)..............................................................11

Ward v. Circus Casinos, Inc.,
    473 F.3d 994 (9th Cir. 2007) ...........................................................................5

Waters v. Weyerhaeuser Mortgage Co.,
    582 F.2d 503 (9th Cir. 1978) ...........................................................................5

## Statutes

Fed. R. Civ. P. 26 ...............................................................................................11

Fed. R. Civ. P. 26(b)(2) .......................................................................................4

Fed. R. Civ. P. 26(b)(2)(C) ................................................................................11

Fed. R. Civ. P. 30 ........................................................................................1, 3, 9

Fed. R. Civ. P. 30(a)(2) .............................................................................2, 3, 4, 9

Fed. R. Civ. P. 30(a)(2)(B) ......................................................................1, 2, 3, 9

Fed. R. Civ. P. 30(b)(6) ............................................................................. passim

## Miscellaneous

Local Rule 37-1 ....................................................................................................5

Local Rule 37-2.1 .................................................................................................5

**<u>Preliminary Statement</u>**

The "one deposition rule" applies to all depositions.  No exception exists for depositions of corporations under <u>Rule</u> 30(b)(6).  Indeed, months ago Mattel petitioned the Discovery Master to recognize an exception.  MGA objected and Mattel lost.  Having made its bed, MGA must now lie in it.  It, like Mattel, must show that the topics on which it seeks testimony are not objectionable and that good cause exists for each topic on which it seeks testimony.  This, MGA cannot do -- and does not even attempt to do.  That alone warrants denial of MGA's motion in its entirety.

MGA presents no evidence of good cause because it cannot.  MGA's notice, and particular the topics that are the subject of this motion, copy those in Bryant's notice.  And, although it does not disclose it, *MGA took most or all of those depositions of Mattel designees pursuant to the topics in Bryant's notice.  In many cases, MGA was the only questioning party.*  Having previously deposed Mattel, no case permits MGA another bite at the apple.  That it, not Bryant, is now the noticing party matters not.  As the plain language of <u>Rule</u> 30(a)(2)(B) provides, the "one deposition rule" exists to prevent this type of abuse.   If the Discovery Master adopted MGA's reasoning, the MGA could depose Mattel a second time and the other defendants Isaac Larian, MGA de Mexico and MGA Hong Kong could line up to each serve their own notices of deposition of Mattel.  Rule 30 prohibits this.

Finally, the topics themselves are textbook examples of violations of <u>Rule</u> 30.  They are overbroad, unduly burdensome, not reasonably particularized, and seek information that is not available to Mattel.  Specifically, they seek information that the Discovery Master has ruled is out of bounds, including a designee on everything related to Mattel's competitive response to Bratz and the July 23, 2003 <u>Wall Street Journal</u> article.

Mattel respectfully requests that the Motion be denied in its entirety.

**Argument**

**I.     THE ONE DEPOSITION RULE APPLIES TO MGA; IT MUST OBTAIN LEAVE TO DEPOSE MATTEL A SECOND TIME**

After a deponent has been deposed in the case, as Mattel has here, <u>Rule</u> 30(a)(2) requires a party to obtain leave of court to take another deposition of that deponent.  <u>Fed. R. Civ. P.</u> 30(a)(2).  A different rule does not apply for <u>Rule</u> 30(b)(6) depositions.  MGA has provided no authority suggesting an exception for depositions of corporations.  To the contrary, MGA took the position that depositions of corporations under <u>Rule</u> 30(b)(6) are subject to the one deposition rule and forced Mattel to seek leave from Judge Larson to serve an additional notice of deposition upon MGA, which leave Mattel sought and was granted.[1]

Mattel has been deposed.  Carter Bryant and MGA have deposed Mattel designees for 18 days pursuant to two <u>Rule</u> 30(b)(6) notices.[2]  Of those 18 days of deposition, MGA took 13.5 days; Carter Bryant only 4.5 days.[3]  Those depositions make up 3,339 pages of transcripts.[4]

At issue here is MGA's third notice of deposition of Mattel pursuant to <u>Rule</u> 30(b)(6), served on September 5, 2007.[5]  Mattel timely objected on September 19, 2007, on the grounds, *inter alia*, that MGA did not seek or obtain leave of court

---

[1]   Order Granting in Part and Denying in Part Mattel's Motion for Leave to Take Additional Discovery, dated January 7, 2008, attached as Exhibit 2 to the concurrently filed Declaration of Jon D. Corey ("Corey Dec.").
[2]   Mattel's designees included:  Sandy Yonemoto, Julia Jensen, Julia Marine, Jill Nordquist, Joni Pratte, Kislap Ongchangco, Rene Pasko, Robert Hudnut, Lily Martinez, Arnoldo Artavia, Fred Kawashima, Rodney Palmer and Lissa Freed. Corey Dec., ¶ 5.
[3]   <u>Id.</u>, ¶ 6.
[4]   <u>Id.</u>, ¶ 7.
[5]   MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 5, 2007, at 12-13, attached as Exhibit 1 to the Declaration of Marcus R. Mumford, dated December 21, 2007 ("Mumford Dec.").

MATTEL'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF 30(B)(6) WITNESSES

before serving its Notice.[6]  Mattel repeatedly advised MGA that a notice served without leave is a nullity.[7]  Mattel further invited MGA to show good cause why MGA was entitled to testimony on any of the topics.[8]  MGA never attempted to make that showing to Mattel.

MGA asks the Discovery Master to recognize an exception to the "one deposition" rule that Rule 30 does not have.  MGA claims that the Discovery Master should bend Rule 30 because MGA has not served Mattel with a notice of deposition, only Carter Bryant has.  The Rule and cases could not be more clear, however.  The Rule prohibits multiple depositions notices served on a deposed person; it draws no distinction between the serving party.  See Rule 30(a)(2) (leave required where "*the deponent* has already been deposed in the case) (emphasis added); see also Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 192 (1st Cir. 2001) (rejecting argument that leave was not required for a defendant serving its first 30(b)(6) notice on plaintiff where another defendant had already served a notice on plaintiff).

In addition to deviating from Rule 30, MGA's argument exalts form far over substance.  True, only Bryant served notices.  But, MGA, not Bryant, took most of the depositions on the topic; MGA moved to compel witnesses on those topics; MGA argued the motions seeking to compel witnesses on those topics.  At many of the deposition on the "Bryant" topics, Bryant's counsel did not deign to appear or, if counsel was there, asked no questions.  And, as addressed in detail below, many of the Topics in MGA's notice are duplicative of those in Bryant's Notices.  MGA's insistence that it is free to disregard the one deposition rule is without merit.

---

[6]   Mattel's Objections to MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 19, 2007, Corey Dec., Exh. 3.

[7]   Letter from Jon D. Corey to Paul Eckles, dated December 20, 2007, at 2, Mumford Dec., Exh. 13.

**II.   MGA MUST SHOW GOOD CAUSE FOR EACH TOPIC BEFORE THE DISCOVERY MASTER SHOULD GRANT MGA LEAVE TO SERVE A PROPER NOTICE**

   **A.   MGA Presented No Evidence To Support A Showing of Good Cause**

To obtain leave to depose Mattel again, MGA must show good cause. Fed. R. Civ. P. 30(a)(2) (requiring that leave of court be granted only upon a showing consistent with Rule 26(b)(2)). Applying that standard to Mattel, the Discovery Master held that the party seeking to serve an additional 30(b)(6) notice, had the "burden to demonstrate that there is *good cause* for such discovery."[9] MGA has failed to meet its burden and made no effort to meet that burden for any of the 47 Topics that are the subject of the Motion.

Although it bears the burden of proving good cause for leave to depose Mattel yet again, MGA submitted no evidence with its Motion purporting to show good cause. The Discovery Master required good cause on a topic-by-topic basis, but MGA's motion not only presents no evidence to show topic-by-topic good cause, *the Motion does not discuss or set forth a single topic.* The Discovery Master need go no further. The Motion should be denied outright for lack of evidence. Nor should MGA be permitted to present evidence with its reply to support a showing of good cause. Reply-only evidence is improper and should be stricken and disregarded. See Contratto v. Ethicon, Inc., 227 F.R.D. 304, 308 n.5 (N.D. Cal. 2005) ("Defendants' attempt to introduce new evidence in connection with their

---

[8]   Corey Dec., ¶ 8.

[9]   Order Granting in Part and Denying in Part Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition under Rule 30(b)(6), dated September 25, 2007, at p. 6 (citing Boston Scientific Corp. v. Cordis Corp., 2004 WL 1945643 (N.D. Cal. 2004)), Mumford Dec., Exh. 10.   The Discovery Master found good cause for some topics in Mattel's notice at issue in that order, but not others.   Id.

reply papers is improper.") (citing <u>Gold v. Wolpert</u>, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989) ("It is well settled that new arguments cannot be made for the first time in reply.  This goes for new facts too."); <u>Payne v. Giant Food, Inc.</u>, 346 F. Supp. 2d 15, 21 n.4 (D.D.C. 2004) ("These facts were raised for the first time in reply . . . petitioner's effort to meet his burden comes too late.") (additional citations omitted)).  Indeed, Judge Larson has so held in this case.[10]

## B. <u>MGA's Motion Violates Local Rule 37-1 and Should Be Denied On That Ground</u>

The failure to discuss or set forth the topics on which MGA moves warrants denial for the separate, independent reason that it fails to comply with <u>Local Rule</u> 37-1.  <u>Local Rule</u> 37-1 required MGA to set forth in its meet and confer letter and discuss at the meet and confer its position regarding good cause.  It did neither, despite Mattel's repeated invitations.  The failure to comply with the <u>Local Rules</u>, and here MGA made no effort to comply, warrants denial of the motion.  <u>See Ward v. Circus Casinos, Inc.</u>, 473 F.3d 994, 1000 (9th Cir. 2007) (holding that district court may in its discretion deny motion based on violation of local rules); <u>Waters v. Weyerhaeuser Mortgage Co.</u>, 582 F.2d 503, 507 (9th Cir. 1978) (upholding trial court's denial of motion to amend for violation of local rule); <u>Estate of Gonzalez v. Hickman</u>, 2007 WL 3238725, at *2 (C.D. Cal. 2007) (court will not consider discovery motion absent compliance with Local Rule 37-2.1).

## III. <u>THE TESTIMONY THAT MGA SEEKS IS DUPLICATIVE</u>

MGA cannot show good cause for its requested depositions, as the topics in MGA's Notice are, in large part, duplicative of those in Bryant's Notices.  MGA is not entitled to discovery that is duplicative and cumulative.  <u>See Fed. R.</u>

---

[10]  Order re Motions Heard on June 11, 2007, at 31, n. 7 (citing and quoting <u>In re Intuit Privacy Litigation</u>, 138 F. Supp. 2d 1272, 1275 n.3 (C.D. Cal. 2001) ("this court does not consider arguments raised anew for the first time in a reply brief as to (footnote continued)

1  Civ. P. 26(b)(2)(C); see also CSX Transp., Inc. v. Vela, 2007 WL 3334966, at *3

2  (S.D. Ind. 2007) (denying motion to compel on ground that "a Rule 30(b)(6)

3  deposition on this topic would be unduly cumulative"); Static Control Components,

4  Inc. v. Lexmark Intern., Inc., 2006 WL 3256767, at *5 (E.D. Ky. 2006) (denying

5  defendant's motion to compel, because topics were duplicative of another

6  defendant's previous Rule 30(b)(6) depositions, and because moving defendant was

7  present at those depositions and had an opportunity to ask questions); Cummings v.

8  General Motors Corp., 2002 WL 32713320, at *6 (W.D. Okla. 2002) (granting

9  protective order where Rule 30(b)(6) notice was duplicative of other notices).

10  MGA's Topic No. 11 is illustrative:

> Topic No. 11:  MATTEL's knowledge or information about the involvement of BRYANT or any person then employed by MATTEL (directly or via a temporary employment agency), in the origin, creation, design or and development of BRATZ, including, but not limited to (a) when MATTEL first learned about BRYANT's involvement with the origin and development of BRATZ; and (b) who at MATTEL knew about the involvement of BRYANT or any person then employed by MATTEL with the origin, creation, design or development of BRATZ, and when and how each individual came to possess such knowledge or information.[11]

The testimony sought by this topic is exactly the same as that covered by Topic Nos. 15-18 of Bryant's First Notice of Deposition:

> Topic 15:  All acts, omissions, circumstances and/or evidence showing, or tending to show, when Mattel first became aware of any alleged wrongful conduct of Bryant.

> Topic 16:  All acts, omissions, circumstances and/or evidence showing, or tending to show, the manner and mode by which Mattel first became aware of any alleged wrongful conduct of Bryant.

> Topic 17:  All acts, omissions, circumstances and/or evidence showing, or tending to show, when You first became aware that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.

do so would unfairly deny the non-moving party an opportunity to respond."), Corey Dec., Exh. 35.

[11]   MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 5, 2007, at 12-13, Mumford Dec., Exh. 1.

Topic 18:  All acts, omissions, circumstances and/or evidence showing, or tending to show, how You first became aware that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.[12]

A comparison of MGA's Topic No. 71 to Topic Nos. 28-29 and 32-35 of Bryant's First Notice and Topic Nos. 1 and 4-7 of Bryant's Second Notice, again demonstrates that MGA seeks duplicative testimony.  MGA's Topic No. 71 seeks the following information:

Topic No. 71:  YOUR policies, practices and procedures, written or otherwise, regarding management, preservation and/or destruction of ELECTRONIC RECORDS during the RELEVANT TIME PERIOD.[13]

The information sought by Topic Nos. 28-29 and 32-35 of Bryant's First Notice is nearly identical:

Topic 28:  Mattel's policies or procedures or practice in effect or use, from January 1998 to the present, regarding Document retention or destruction (including with respect to e-mails), including without limitation, e-mail backup procedures and policies; location of saved or backed-up e-mails, procedures for accessing saved or backed-up e-mails; policies regarding deletion of e-mails; and Mattel's document retention or destruction policies (including with respect to emails) when Mattel had notice of a potential claim or lawsuit in each of the years 1998, 1999, 2000, 2001, 2002, 2003 and 2004.

Topic 29:  Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion and destruction (including with respect to electronic documents and e-mail), including without limitation, e-mail backup policies, procedures and practices in effect or use; location of saved or backed-up e-mails, procedures for accessing saved or backed-up e-mails; policies, procedures and practices in effect or use regarding deletion of e-mails; and policies, procedures and practices in effect or use regarding retention of c-mails.

Topic 32:  Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) when Mattel is aware of a potential claim or lawsuit in which it may be involved.

---

[12]   Bryant's Notice of Deposition of Plaintiff and Counterdefendant Mattel, dated December 21, 2004, at 5, Mumford Dec., Exh. 2.

[13]   MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 5, 2007, at 30, Mumford Dec., Exh. 1.

-7-

Topic 33:  Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) after Mattel began considering or analyzing any potential claim or lawsuit against MGA or Bryant regarding "Bratz" or other claim of any nature.

Topic 34:  Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) after Mattel began investigating facts pertaining to Bryant's involvement with MGA or "Bratz" or any claim of any nature, actual or potential, against Bryant.

Topic 35:  Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction including with respect to e-mails and other electronic documents) after Mattel began investigating facts pertaining to the relationship, if any, between Bryant's involvement with MGA or "Bratz" and work or projects that Bryant may have seen during his employment with Mattel.[14]

The same information is also sought by Topic Nos. 1 and 4-7 of Bryant's Second Notice:

Topic 1:  Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion and destruction (including with respect to electronic documents and e-mail), including without limitation, e-mail backup policies, procedures and practices in effect or use; location of saved or backed-up e-mails, procedures for accessing saved or backed-up e-mails; policies, procedures and practices in effect or use regarding deletion of e-mails; and policies, procedures and practices in effect or use regarding retention of e-mails.

Topic 4:  Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to c-mails and other electronic documents) when Mattel is aware of a potential claim or lawsuit in which it may be involved.

Topic 5:  Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) after Mattel began considering or analyzing any potential claim or lawsuit against MGA or Bryant regarding "Bratz" or other claim of any nature.

Topic 6:  Matters policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic

---

[14]   Bryant's Notice of Deposition of Plaintiff and Counterdefendant Mattel, dated December 21, 2004, at 7-8, Mumford Dec., Exh. 2.

1   documents) after Mattel began investigating facts pertaining to Bryant's
2   involvement with MGA or "Bratz" or any claim of any nature, actual or
    potential, against Bryant.

3   Topic 7:  Mattel's policies, procedures and practices in effect or use, at any
    time from January 1, 1998 to the present, regarding Document retention,
4   deletion or destruction including with respect to e-mails and other electronic
    documents) after Mattel began investigating facts pertaining to the
5   relationship, if any, between Bryant's involvement with MGA or "Bratz" and
    work or projects that Bryant may have seen during his employment with
6   Mattel.[15]

7           These are just some examples of MGA's effort to obtain duplicative

8   testimony.  As set forth in Mattel's concurrently filed Separate Statement, Topic

9   Nos. 9, 11-17, 32, 39 and 71-85 are improperly duplicative of topics already

10  designated by Bryant in previous notices of deposition pursuant to Rule 30(b)(6).

11  MGA's attempt to get a second bite at the apple is particularly egregious given that,

12  counsel for MGA was not only present and had an opportunity to ask questions at

13  every single one of these 30(b)(6) depositions, it conducted the vast majority of the

14  examinations.[16]  Indeed, Bryant's counsel played very little role in these depositions

15  -- showing up late and not asking any questions at the November 8, 2006 Marine

16  deposition,[17] asking no questions at the September 21, 2006 Marine deposition,[18]

17  and not even showing up at the June 26, 2007 Marine deposition, the June 19 and

18  September 13, 2007 Kawashima depositions, or the June 26, 2007 Palmer

19  deposition.[19]  Thus, MGA's contention that it has not had a chance to examine

20  Mattel's designees on these Topics and that Bryant's 30(b)(6) notices should not be

21  attributed to MGA is disingenuous at best.

22          What MGA now seeks -- an opportunity for the same party to elicit the

23  same information from the same deponent -- is precisely the type of duplicative

24

25  [15]   Bryant's Second Notice of Deposition of Plaintiff and Counterdefendant
    Mattel, dated December 21, 2004, at 4-5, Corey Dec., Exh. 4.

26  [16]   Corey Dec., ¶ 6.
27  [17]   Marine Depo Tr., Vol. II, at 111:3-4, Corey Dec., Exh. 26.
    [18]   Corey Dec., ¶ 6
28  [19]   Id.

testimony which <u>Rule</u> 30 is designed to protect against.  <u>See</u> Fed. R. Civ. P. 30(a)(2).  Mattel specifically warned MGA's counsel against trying to take a second round of depositions pursuant to another notice on the very same Topics for which it has already deposed Mattel's 30(b)(6) designees:

> Mr. Corey:  . . . I'd would also like to further note that the noticing party who is Carter Bryant is not taking this deposition.  It's entirely possible that Mr. Bryant may have questions for the witness on this topic and Mattel is operating under the assumption that to the extent that MGA Entertainment is proceeding with this deposition, it will not the future propound a Rule 30(b)(6) notice on Mattel on this or similar topics as to which Mr. Kawashima or any other witness to whom MGA has previously deposed has testified.[20]

That is exactly what MGA is attempting to do here.  Mattel should not have to bear the burden and expense of producing its 30(b)(6) witnesses to provide duplicative testimony.  MGA cannot make the requisite showing of good cause, and the Court should deny its motion.

Finally, at least with respect to the new electronic evidence topics on which MGA seeks an order, the Discovery Master recently rejected a motion by MGA and Bryant to seek additional testimony on "Zeus."  So, to the extent that the overbroad and ambiguous topics relate to "Zeus," the Motion must be denied.[21]

---

[20]   Deposition Transcript of Fred Kawashima Deposition Transcript, Vol. I ("Kawashima Depo. Tr. Vol. I"), at 6:12-22., Corey Dec., Exh. 29.

[21]   <u>See</u> Mattel's Opposition to MGA and Bryant's Joint Motion to Compel re: Mattel's Alleged Bandying of 30(b)(6) Witnesses, dated September 26, 2007, Corey Dec., Exh. 22.

IV.   **COLLECTING INFORMATION TO PREPARE AND PREPARING A WITNESS TO TESTIFY ON MANY OF MGA'S DEPOSITION TOPICS WOULD IMPOSE AN OPPRESSIVE AND UNDUE BURDEN UPON MATTEL**

While the stakes in this case are significant, they do not justify the type of burden that MGA's topics seek to impose upon Mattel.  For example, MGA seeks Mattel witnesses to testify about:

- why every person who ever left Mattel to work for a competitor left and everything Mattel learned about that person, including reasons for leaving in any exit interview (See Topic No. 18, identifying no fewer than 129 specific people, some of whom were never Mattel employees);

- any communication that any employee or agent of Mattel ever had with a current or former MGA employee or contractor or any Mattel employee who went to work for MGA (See Topic Nos. 23, 48, 58);

- information from every single case filed or contemplated to be filed or asserted against Mattel in the past decade in any place in the world that relates to DIVA STARZ, FLAVAS, MY SCENE or BARBIE (See Topic Nos. 42, 47);

- information regarding every confidentiality agreement or severance agreement that Mattel has ever signed or asked anyone to sign (See Topic No. 26);

- the approval process at Mattel for any doll at Mattel (whether at issue or not) and the changes to the process over the past seven years (See Topic No. 24);[22]

---

[22]   See also Declaration of Vickie Cerrito filed concurrently.

1
2
3

- Mattel's consideration of Bratz as a competitive product and all strategies and efforts to compete with Bratz over the past seven years (<u>See</u> Topic No. 32);

4
5
6

- all communications with and facts learned from each of the 153 witnesses identified in Mattel's January 5, 2007 consolidated initial disclosures (<u>See</u> Topic No. 31);

7
8
9

- MGA's unclean hands defense, into which it has incorporated every claim in its unfair competition complaint against Mattel (<u>See</u> Topic No. 65); and

10
11

- everything related to Mattel's electronic information systems over the past decade (<u>See</u> Topic Nos. 71-85).

12  Mattel witnesses could testify between now and the first day of trial and not
13  sufficiently cover these Topics.

14         <u>Rule</u> 26 empowers the Court to "limit the frequency or extent of
15  discovery . . . if it determines that . . . the burden or expense of the proposed
16  discovery outweighs its likely benefit."  <u>Rule</u> 26(b)(2)(C); <u>see also</u> <u>Omni Home</u>
17  <u>Financing, Inc. v. Hartford Life & Annuity Ins. Co.</u>, 2008 WL 66562, at *3 (S.D.
18  Cal. 2008) (denying request for depositions because burden outweighed benefit);
19  <u>Thumin v. Bumble Bee Seafoods, Inc.</u>, 2001 WL 1164691, at *1 (S.D.N.Y. 2001)
20  (denying deposition because "the burden outweighs its likely benefit").  That is the
21  situation here.

22         A.    <u>**The Discovery Master Has Already Rejected Similarly**</u>
23               <u>**Burdensome and Overbroad Discovery**</u>

24         Many of MGA's <u>Rule</u> 30(b)(6) Topics seek discovery that the
25  Discovery Master has already found overbroad and unduly burdensome.  The
26  Discovery Master has held that discovery seeking any "mention [of] MGA, Larian,
27  Bratz or other MGA products, regardless of whether or not they have anything to do

28

1  with the claims and defenses in this case" is "clearly" and "grossly overbroad."[23]

2  MGA's <u>Rule</u> 30(b)(6) Topics seek similar testimony.  For example, Topic No. 32

3  seeks a Mattel witness to testify about all of Mattel's "strategies and efforts to

4  compete with 'Bratz' since its release in 2001."[24]

5        The Discovery Master also found that a document request seeking all

6  communications between Mattel and a third party "referring or relating to MGA,

7  Larian, Bratz, or MGA products" was overbroad where it was not limited to a

8  subject that is at issue in this case.[25]  Yet MGA seeks even broader discovery here.

9  For example, Topic No. 48 seeks "[a]ll COMMUNICATIONS between MATTEL

10  on the one hand and present or former employees or contractors of MGA on the

11  other" without any limitation to "MGA, Larian, Bratz, or MGA products."

12        The Discovery Master's prior rulings show that, even where the burden

13  was on Mattel to show that discovery was not warranted, MGA sought grossly

14  overbroad, improper discovery.  Here, the burden is on MGA to show good cause

15  for similar discovery.  It has not met its burden.

16    **B.    The Burden on Mattel in Preparing a Witness on MGA's Topics is**

17        **Oppressive**

18        As the Discovery Master's prior rulings recognized, collecting

19  information to prepare a witness to testify on many of the Topics that are the subject

20  of MGA's motion would impose an oppressive and undue burden upon Mattel.

21  MGA has not -- and cannot -- demonstrate good cause for imposing this burden

22  upon Mattel.

23  _____

24  [23]   Order Granting in Part and Denying in Part MGA's Motion to Compel
    Documents Responsive to First Set of Requests for Production of Documents, dated

25  May 22, 2007, at pp. 17-18, Corey Dec., Exh. 5.

26  [24]   MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P.
    30(b)(6), dated September 5, 2007, at 19-20, Mumford Dec., Exh. 1.

27

28

1    For example, Topic No. 32 seeks a Mattel witness to testify about all of

2  Mattel's "strategies and efforts to compete with 'Bratz' since its release in 2001."[26]

3  MGA makes no effort to limit this Topic to the claims and defenses in this case.  As

4  a product of a competitor, Mattel's "awareness of and response" to Bratz or

5  "strategies and efforts to compete with Bratz" over the past seven years appears in

6  countless communications and documents at Mattel, including those related to

7  research, consumer testing, retail sales, marketing reports and industry analyses.[27]

8  Mattel's "awareness" of and "competition" with Bratz is also reflected in vast

9  quantities of public documents that Mattel collects about its competitors, including

10 catalogs, advertising, press releases and media reports.[28]  In short, Mattel has

11 hundreds of thousands, if not millions of documents that reference Bratz and reflect

12 Mattel's "awareness of and response to" Bratz over the past seven years.[29]

13    It would be impossible to prepare a witness on this Topic.  The

14 Discovery Master rejected MGA's requests for documents "that merely mention

15 MGA, Larian, Bratz or other MGA products, regardless of whether or not they have

16 anything to do with the claims and defenses in the case" are "clearly" and "grossly

17 overbroad."[30]  The same reasoning applies and the same ruling should be made here

18 on Topic No. 32.

19

20 _____

21 [25]   Order Granting in Part and Denying in Part MGA's Motion to Compel
Documents Responsive to First Set of Requests for Production of Documents, dated
22 May 22, 2007, at pp. 14-15, Corey Dec., Exh. 5.

23 [26]   MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P.
30(b)(6), dated September 5, 2007, at 19-20, Mumford Dec., Exh. 1.

24 [27]   Declaration of Erin Bric, dated April 25, 2007 ("Bric Dec."), ¶ 7, Notice of
Lodging, Exh. 1.

25 [28]   Id. at ¶ 8.

26 [29]   Id. at ¶ 6-12.

27 [30]   Order Granting in Part and Denying in Part MGA's Motion to Compel
Documents Responsive to First Set of Requests for Production of Documents, dated
28 May 22, 2007, at pp. 17-18, Corey Dec., Exh. 5.

MATTEL'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF 30(B)(6) WITNESSES

Similarly, Topic No. 18 seeks a Mattel witness to testify regarding Mattel's knowledge of the reason every Mattel employee or contractor left Mattel to work for MGA and what Mattel learned at the exit interviews of each of these employees.[31]  MGA identifies at least 130 particular individuals that it purportedly claims are former Mattel employees or contractors that left to work for MGA.  To prepare a witness to testify as to the reasons that employees left Mattel to work for MGA and what Mattel learned at the employees' exit interviews would require interviewing each employee's manager and co-workers (which often could range into the dozens) and the individual who conducted the employee's exit interview to determine whether the employee expressed his or her reasons for leaving.[32]   It would also require review of employee personnel files and other Human Resources files that may include information on the employee's reasons for leaving.[33]   Even if the research to identify the former employee's manager, co-workers and the responsible person in human resources, the interviews of those persons and the documentary review for each employee took two hours, a conservative estimate, for just the 130 people that MGA identified that process would take a single person 260 hours, or approximately two full months.[34]

The burden would be even more significant were Mattel required to prepare a witness on this Topic as to all Mattel employees who have left to work for MGA or another competitor.  MGA puts no temporal limits on this Topic, but since 1997, more than 5,000 employees working at Mattel's El Segundo headquarters alone have left Mattel.[35]   The burden of searching records regarding all of these employees' departure from Mattel and interviewing their co-workers and managers

---

[31]   MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 5, 2007, at 15-16, Mumford Dec., Exh. 1.

[32]   Declaration of Lissa Freed filed concurrently filed ("Freed Dec."), ¶ 8.

[33]   Id.

[34]   Id.

[35]   Id., ¶ 9.

MATTEL'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF 30(B)(6) WITNESSES

1  would be considerable and take one person many, many months to identify and

2  gather.[36]   Even if the collection task took only one half-hour per employee, that

3  would take a single employee over 2500 hours just to collect that information.[37]

4           As another example, Topic No. 48 seeks "[a]ll COMMUNICATIONS

5  between MATTEL on the one hand and present or former employees or contractors

6  of MGA on the other."[38]  As discussed above, the Discovery Master has held that

7  much narrower requests were "grossly overbroad."[39]  Those already rejected

8  requests had sought any communications between Mattel and current or former

9  MGA employees "relating to Bratz, Larian, or MGA regarding the origins, design,

10  development, product launch, sales, promotions, advertising, quality, or price of

11  Bratz or any other MGA product."[40]  Here, Topic No. 48 is broader.  It seeks

12  testimony regarding *all* communications between Mattel and current or former

13  MGA employees.  Nor is it limited to MGA employees who left prior to Bryant

14  working there.  Many MGA employees formerly worked at Mattel and undoubtedly

15  have friends and acquaintances that work at Mattel.  The burden for Mattel to

16  prepare a witness on Topic No. 48 would be incalculable.[41]

17  **V.     MGA'S DEPOSITION TOPICS ARE OVERBROAD AND NOT**

18  **        REASONABLY PARTICULARIZED**

19           Rule 30(b)(6) requires that a deposition notice "describe with

20  reasonable particularity the matters on which examination is requested."  Topics

21

22  [36]  Id.
   [37]  Id.
23  [38]  MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P.
24  30(b)(6), dated September 5, 2007, at 24, Mumford Dec., Exh. 1.
   [39]  Order Granting in Part and Denying in Part MGA's Motion to Compel
25  Documents Responsive to First Set of Requests for Production of Documents, dated
26  May 22, 2007, at pp. 17-18, Corey Dec., Exh. 5.
   [40]  Id.
27  [41]  As set forth in Mattel's concurrently filed Separate Statement, Topic Nos. 17,
28  18, 24, 26, 31, 42, 47 and 48 are all unduly burdensome.

must be reasonably particularized so that counsel will have some guidance as to which witness would be best and how that witness should be prepared.  See Southern Boston Management Corp. v. BP Prods. North America, Inc., 2006 WL 162916, at *1-2 (S.D.N.Y. 2006) (denying application for additional witnesses for failure to meet Rule 30(b)(6)'s "reasonable particularity" requirement); Innomed Labs, LLC v. Alza Corp., 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (denying motion to compel because 30(b)(6) notice was insufficiently particularized).

         Almost all of MGA's Topics are not reasonably particularized, but are fatally overbroad.  For example, many of the Topics contain a sweeping subject matter, then lists of more specific items that are "included, but not limited to," the scope of the sweeping topic.  Topic Nos. 9, 11-21, 24, 28-32, 42, 58 and 65 are such topics.  They are defective on their face, as the Court explained in Reed v. Bennett, 193 F.R.D. 689 (D. Kan. 2000).  There, the court stated:

> Although plaintiff has specifically listed the areas of inquiry for which a 30(b)(6) designation is sought, she has indicated that the listed areas are not exclusive.  Plaintiff broadens the scope of the designated topics by indicating that the areas of inquiry will "includ[e], but not [be] limited to" the areas specifically enumerated.  An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task.  To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice.  Where, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.

Reed, 193 F.R.D. at 692 (citations omitted).  Thus, as the decision in Reed shows, MGA's Topics are unreasonably overbroad on their face.

         MGA's Notice includes other topics so broad that they are nothing more than a fishing expedition.  For example, Topic No. 47 purports to require Mattel to produce witnesses to testify as to sworn statements over the course of the last decade regarding several entire Mattel product lines -- DIVA STARZ, MY SCENE, FLAVAS and BARBIE[42]  -- despite the fact that each of these brands

---

[42]   MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 5, 2007, at 23, Mumford Dec., Exh. 1.

1  include numerous dolls, accessories, computer and video games, playsets and

2  licensed products, many of which are completely irrelevant to this action.  There

3  have been thousands of cases involving those Mattel product lines over the last ten

4  years in more than 50 countries.[43]  MGA's demand for testimony regarding those

5  thousands of cases is ironic because MGA has recently refused to produce similar

6  information related to 25 specific Bratz-related lawsuits MGA has identified.[44]

7  MGA claims that it would pose an undue burden to do so.[45]  MGA has not -- and

8  cannot -- show good cause here to obtain from Mattel the same type of information

9  on an exponentially larger scale than it claims would be unduly burdensome for it to

10  produce.[46]

11          Another example of MGA's failure to provide reasonably particularized

12  Topics is subsection (a) of Topic No. 65.[47]  That subsection seeks the facts regarding

13  "MATTEL'S efforts to undermine MGA's business and to 'kill' Bratz at any cost,

14  including but not limited to Mattel's efforts to infringe and dilute MGA's trade dress,

15  copy MGA's products, packaging, themes, and advertising (including for Mattel

16  products MY SCENE, DIVA STARZ, WEE 3 FRIENDS, ACCELERACERS, and

17  POLLY POCKET) and engage in other acts of unfair competition against MGA as

18  alleged in MGA's complaint against MATTEL."[48]  That subsection alone is, in

19  effect, a topic seeking all of Mattel's knowledge regarding MGA's unfair

20  competition complaint.  That is per se improper.  See Alexander v. Federal Bureau

21  _____

[43]   Declaration of Michael Moore, ¶¶ 7-8.

[44]   See Letter from Temkin to Proctor and Kidman, dated January 9, 2008, at 3, Corey Dec., Exh. 6.

[45]   Id.

[46]   As set forth in Mattel's concurrently filed Separate Statement, Topic Nos. 8-9, 11-19, 21-24, 26, 28-32, 39, 42, 47, 48, 58, 60, 65, 69 and 70 are overbroad and not reasonably particularized.

[47]   MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 5, 2007, at 28-29, Mumford Dec., Exh. 1.

28

1   of Investigation, 188 F.R.D. 111, 121 (D.D.C. 1998) (rejecting notice to depose on

2   "any matters relevant to this case" as not meeting the "reasonable particularity"

3   requirement).  Moreover, the Topic purports to sweep in product lines such as

4   POLLY POCKET that the Discovery Master has already ruled is impermissibly

5   overbroad.[49]

6   **VI.     MANY OF MGA'S TOPICS ARE VAGUE AND AMBIGUOUS**

7              Many of MGA's Topics also fail because they are so vague and

8   ambiguous that Mattel would have the guess as to what testimony MGA seeks.

9   Topic No. 65 is a particularly striking example of the vagueness of many of MGA's

10  Rule 30(b)(6) Topics.  Topic No. 65 copies MGA's unclean hands defense almost

11  verbatim.  It seeks testimony regarding:

12              The facts REFERRING OR RELATING to MGA's Third

13              Affirmative Defense of Unclean Hands in MGA's Answer and

14              Affirmative Defenses dated August 13, 2007, including, but not

15              limited to (a) MATTEL'S efforts to undermine MGA's business

16              and to "kill" Bratz at any cost, including but not limited to

17              Mattel's efforts to infringe and dilute MGA's trade dress, copy

18              MGA's products, packaging, themes, and advertising (including

19              for Mattel products MY SCENE, DIVA STARZ, WEE 3

20              FRIENDS, ACCELERACERS, and POLLY POCKET) and

21              engage in other acts of unfair competition against MGA as

22              alleged in MGA's complaint against MATTEL; (b) MATTEL'S

23              efforts to create negative publicity or press about MGA, MGA

24              products, BRYANT, LARIAN, or MGA employees;

25  ─────────────────────
    [48]   MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P.
26  30(b)(6), dated September 5, 2007, at 28-29, Mumford Dec., Exh. 1.

27

28

(c) MATTEL'S efforts to fund or commission market research or studies that portray BRATZ or MGA products negatively; (d) MATTEL'S efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG; (e) MATTEL'S efforts to include negative references to MGA or BRATZ on MATTEL's "We Believe in Girls" website; (f) MATTEL'S efforts or intent to interfere with business dealings or contractual relations between MGA and Smoby Group; (g) influencing Nickelodeon to reject MGA advertisements or to limit time slots for advertisements; (h) assisting parties in lawsuits against MGA; (i) monitoring, "spying on" or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and/or product development; (j) gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses; (k) wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers; (l) inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; (m) covertly investigating MGA, its officers and employees, and their family members; (n) contacting persons under false pretense in order to interrogate them about BRATZ and this litigation; (o) coercing MATTEL employees to accept restrictive covenants (right before massive layoffs) and non-compete

---

[49] Order Granting in Part and Denying in Part Mattel's Motion for Protective Order Regarding "Polly Pocket" Documents, dated April 19, 2007, Corey Dec., Exh. 34.

clauses and other efforts to prevent prospective MGA

employees from. accepting offers of employment;

(p) MATTEL'S delay in suing BRYANT because, inter alia,

MATTEL wanted BRYANT to testify in an unrelated

MATTEL case; (q) falsely inflating its BARBIE sales figures in

an effort to mislead the public and retailers; and (r) taking all

measures to conceal its bad acts, including the willful non-

retention and destruction of documents.[50]

It is impossible for Mattel to prepare a witnesses on such broad and undefined allegations.  MGA has failed to explain what it means by Mattel's alleged efforts to (1) "undermine MGA's business and to 'kill' Bratz at any cost" or (2) "engage in other acts of unfair competition against MGA."  Mattel cannot prepare a witness to testify where it is unclear as to what MGA's allegations refer.

MGA's request for testimony regarding "MATTEL'S efforts to create negative publicity or press about MGA, MGA products, BRYANT, LARIAN, or MGA employees" highlights MGA's failure to provide reasonably defined Rule 30(b)(6) Topics.  At a recent hearing, Judge Larson asked whether "anybody at MGA [could] give [him] one example of one disparaging false statement made by Mattel towards MGA."[51]  MGA was unable to provide a single example.[52]  Mattel cannot be expected to educate a corporate witness on allegedly disparaging statements that MGA itself cannot actually identify.

---

[50]   MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 5, 2007, at 28-29, Mumford Dec., Exh. 1.

[51]   Hearing on Mattel's Motion to Strike MGA's Affirmative Defenses, dated December 3, 2007, at 15:16 - 17:15, Corey Dec, Exh. 7.

[52]   Id.

1    **VII.   THE TESTIMONY THAT MGA SEEKS IS NOT REASONABLY**

2    **AVAILABLE TO MATTEL**

3             MGA requests testimony that Mattel does not have, but is exclusively

4    within MGA's possession.  For example, MGA Topics seek testimony regarding:

5         • MGA's showing of Bratz prototypes to focus groups and retailers

6            (See Topic No. 9);

7         • MGA's and Larian's encouragement, aiding and financing of

8            Bryant to develop Bratz while he was a Mattel employee (See

9            Topic No. 9);

10        • Bryant's and MGA's concealment of facts showing that Mattel

11           was the true owner of Bratz (See Topic No. 9);

12        • Bryant's use of Mattel materials, property and resources to

13           create, design and develop Bratz (See Topic No. 12); and

14        • Bryant's relationship with Paula Treantafelles (See Topic No.

15           19).

16            Mattel does not have corporate knowledge of the acts of others.  MGA

17   and Bryant fraudulently concealed many of those acts from Mattel.  Mattel also does

18   not have corporate knowledge of Bryant's relationship with Paula Treatafelles.  If

19   MGA wants information regarding their relationship it can -- and should -- ask

20   them.  Indeed, both of these individuals are available to MGA and not Mattel.

21            In addition, much of the information Mattel relies on in support of its

22   claims has been obtained from adverse and third parties.  The vast majority of the

23   information is designated "confidential" or "confidential--attorneys' eyes only,"

24   including by third parties.  Pursuant to the Protective Order in this case, Mattel

25   cannot provide such information to its employees or witnesses.  The information is

26   thus not "reasonably available" to the corporation.  Mattel cannot produce a

27   corporate witness on such Topics.  See Rule 30(b)(6) (30(b)(6) deponents "shall

28

testify as to matter known or *reasonably available* to the organization.").[53]  <u>Helfer v. Marriott Int'l, Inc.</u>, 2007 WL 433477, at *6 (E.D. Pa. 2007) (finding that corporation need not produce 30(b)(6) witness on acts of another company because they were not reasonably available to corporation).

## VIII.  <u>MGA'S RULE 30(B)(6) NOTICE SEEKS DISCOVERY OF INFORMATION THAT IS MORE APPROPRIATELY OBTAINED THROUGH CONTENTION INTERROGATORIES</u>

A number of MGA's Topics ask for testimony related to the bases for the claims and defenses in this case.  Courts have routinely recognized that <u>Rule</u> 30(b)(6) depositions are a particularly inefficient and unduly burdensome means for such discovery, which essentially is a form of contention interrogatory. <u>See, e.g.</u>, <u>SmithKline Beecham Corp. v. Apotex Corp.</u>, 2000 WL 116082, at *9 (N.D. Ill. 2000) ("the recipient of a <u>Rule</u> 30(b)(6) request is not required to have its counsel muster all of its factual evidence to prepare a witness to be able to testify regarding a defense or claim"); <u>In re Independent Service Organizations Antitrust Litig.</u>, 168 F.R.D. 651, 654 (D. Kan. 1996) (finding <u>Rule</u> 30(b)(6) depositions "highly inefficient and burdensome" means of discovery of a party's "defense or counterclaim"); <u>McCormick-Morgan, Inc. v. Teledyne Indus., Inc.</u>, 134 F.R.D. 275, 286-87 (N.D. Cal. 1991) (holding that contention interrogatories were more appropriate means of discovery of evidence relied on by party in support of its claims than <u>Rule</u> 30(b)(6) deposition).  That is especially true in a large complicated case, like this one.  As Judge Brazil noted in <u>McCormick-Morgan, Inc.</u>, "no one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by a party."  134 F.R.D. at 286.

---

[53]  As set forth in Mattel's concurrently filed Separate Statement, Topic Nos. 9, 12, 16, 19, 20, 27 and 39 all seek testimony on information that is not reasonably available to Mattel.

1    Here, MGA seeks Mattel to present a witness to do just that.  Topic No.
2  39 seeks testimony regarding:

> 3    [T]he identity of any product, project or concept that [Mattel]
> 4    contend[s] MGA copied or infringed or about which [Mattel]
> 5    contend[s] that MGA misappropriated MATTEL's trade secrets
> 6    or other confidential information, and, for each such product,
> 7    project or concept, (a) all facts concerning its origin, creation,
> 8    design and development and (b) any facts underlying [Mattel's]
> 9    claim or contention that MGA copied or infringed such product,
> 10    project or concept; and (c) MGA's use of MATTEL'S
> 11    intellectual property, confidential information or trade secret
> 12    information in connection therewith.[54]

13  Mattel should not be expected to prepare a witness to testify as to Mattel's
14  contentions.  If MGA is entitled to such information at all, it should obtain it
15  through less burdensome and intrusive forms of discovery such as interrogatories.[55]

16    In fact, recognizing that many of Bryant's Topics also constituted
17  improper contention interrogatories, the parties previously reached an agreement to
18  limit the scope of such Topics to the underlying facts related to Mattel's claims,
19  rather than Mattel's contentions.  The parties to agreed to so limit the scope of at
20  least 15 of Bryant's Topics, many of which are duplicative of Topics in MGA's
21  notice.[56]  (See Section II above).

22  _____

23  [54]   MGA's Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 5, 2007, at 22, Mumford Dec., Exh. 1.
24  [55]   As set forth in Mattel's concurrently filed Separate Statement, Topic Nos. 8-9, 19-20, 28-30 and 39 all improperly seek discovery that is more appropriately sought
25  through contention interrogatories.
26  [56]   The parties agreed to limit Topic Nos. 2-8, 11-13, 22, 24 and 54-56 in Bryant's first Rule 30(b)(6) notice to the "factual basis" regarding the Topics.  See
27  Letter from Jon D. Corey to Douglas A. Wickham dated May 13, 2005 ("5/13/05 letter"), Corey Dec., Exh. 8; Deposition Transcript of Sandy Yonemoto ("Yonemoto
28  (footnote continued)

07209/2343995.4
-24-

## IX.  THERE ARE NO CHANGED CIRCUMSTANCES

MGA claims that circumstances have changed since Bryant served his Rule 30(b)(6) notice on Mattel.  According to MGA it should therefore be entitled to serve an additional Rule 30(b)(6) notice on Mattel.  As an initial matter, MGA's argument does not change the fact that it must show good cause as discussed in Section I above.  It has not.  In any event, MGA's claim that circumstances have changed is incorrect.

MGA stresses the fact that Bryant's Rule 30(b)(6) deposition notice was served on December 2004.  Yet MGA fails to note that the case was stayed in May 2005 for one year.  Mattel then filed its motion for leave to amend its counterclaims in November 2006.  Nearly all of Mattel's designees in response to Bryant's Rule 30(b)(6) notice were deposed after Mattel filed its motion for leave.  In fact, other than two deponents who testified on limited aspects of Mattel's electronic information[57] -- topics that were unchanged by Mattel's amended counterclaims -- Lily Martinez was the *only* Rule 30(b)(6) deponent that testified on behalf of Mattel prior to Mattel's motion for leave.  Ms. Martinez testified about Topics regarding

---

Depo Tr."), dated May 30, 2007, at 14:9-15:17, 37:7-9, Corey Dec., Exh. 9; Deposition Transcript of Kislap Ongchangco ("Ongchangco Depo Tr."), dated April 24, 2007, at 159:2-160:14, Corey Dec., Exh. 10; Deposition Transcript of Robert Hudnut, Vol. I ("Hudnut Depo Tr., Vol. I"), dated July 13, 2007, at 92:7-94:24, Corey Dec., Exh. 11; Deposition Transcript of Joni Pratte ("Pratte Depo Tr."), dated June 1, 2007, at 8:16-9:6, Corey Dec., Exh. 12; Deposition Transcript of Rene Pasko ("Pasko Depo Tr."), dated June 13, 2007, at 10:23-11:12, Corey Dec., Exh. 13; Meet and Confer Transcript dated March 15, 2005 ("3/15/05 Tr."), at 156:11-159:23, 169:4-24, 173:4-176:19, 178:5-179:8, 191:10-21, Corey Dec., Exh. 14.

[57]  Julia Marine testified on September 21, 2006 and November 8, 2006, regarding Mattel's Zeus system as it existed between 1998 and 2000.  Deposition Transcripts of Julia Marine, Corey Dec., Exhs. 25, 26, 27.  Arnoldo Artavio testified on September 21, 2006, regarding Mattel's TRACS database.  Deposition Transcript of Arnoldo Artavio, Corey Dec., Exh. 28.

1   Toon Teens, a subject that has not substantially changed since Ms. Martinez

2   testified.

3           Moreover, Mattel's amended counterclaims did not change its claims

4   against Bryant -- the claims that are at the heart of the issues to be litigated in phase

5   one.  As MGA acknowledges, it has "made clear in the 'meet and confer' process

6   that for now it is only seeking testimony relating to Phase I topics."[58]  Bryant has

7   already served Mattel with two <u>Rule</u> 30(b)(6) notices with 65 topics related to all

8   aspects of the issues to be litigated in phase one.  No good cause exists for MGA to

9   serve a notice with yet additional phase one topics.  Certainly MGA has not met its

10  burden to demonstrate that good cause exists.

11  <u>**Conclusion**</u>

12          For the foregoing reasons, Mattel respectfully requests that the

13  Discovery Master deny MGA's motion in its entirety.

14

15  DATED:  January 11, 2008          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
16

17                                     By <u>/s/ Jon D. Corey</u>
                                          Jon D. Corey
18                                        Attorney for Mattel, Inc.

19

20

21

22

23

24

25

26

27

---

28  [58]   MGA's Motion, at p. 4.

MATTEL'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF 30(B)(6) WITNESSES