1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

| 11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 12 | Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| 13 | vs. | **DISCOVERY MATTER** |
| 14 | MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| 15 | Defendant. | MATTEL, INC.'S SEPARATE STATEMENT IN OPPOSITION TO |
| 16 | | MGA'S MOTION TO COMPEL MATTEL TO PRODUCE |
| 17 | AND CONSOLIDATED ACTIONS | WITNESSES PURSUANT TO NOTICE OF DEPOSITION UNDER |
| 18 | | RULE 30(B)(6), OR, IN THE ALTERNATIVE, FOR LEAVE TO |
| 19 | | SERVE SUCH NOTICE |
| 20 | | Hearing Date:   February 8, 2008 |
| 21 | | Time:              9:30 a.m. |
| 22 | | Place:              Telephonic |
| 23 | | **Phase 1** |
| | | Discovery Cut-Off: January 28, 2008 |
| 24 | | Pre-Trial Conference:  May 5, 2008 |
| | | Trial Date:  May 27, 2008 |

25

26

27

28

07209/2343782.1

1    Although MGA Entertainment, Inc. ("MGA") neglected to submit any
2    document containing the <u>Rule</u> 30(b)(6) Topics on which it seeks to compel Mattel,
3    Inc. ("Mattel") to produce a witness, Mattel respectfully submits the following
4    separate statement in support of its opposition to MGA's Motion to Compel Mattel
5    to Produce Witnesses Pursuant to Notice of Deposition Under <u>Rule</u> 30(b)(6), or, in
6    the Alternative, for Leave to Serve Such Notice.

7

8    **Individual MGA Topics**

9    **MGA'S TOPIC NO. 9**

10    MGA's alleged theft of "BRATZ" from YOU, including but not limited
11    to (a) MGA's showing of BRATZ prototypes or products to focus groups and
12    retailers in November 2000 as alleged in paragraph 29 of YOUR
13    COUNTERCLAIMS; (b) MGA's and LARIAN's alleged encouragement, aiding,
14    and financing of BRYANT to develop BRATZ while he was a MATTEL employee
15    as alleged in paragraph 33 of YOUR COUNTERCLAIMS; and (c) BRYANT's and
16    MGA's alleged concealment of facts that prevented MATTEL from discovering that
17    MATTEL allegedly was the true owner of BRATZ as alleged in paragraph 35 of
18    YOUR COUNTERCLAIMS.

19    **MATTEL'S RESPONSE TO TOPIC NO. 9**

20    In addition to the general objections above, Mattel objects to Topic No.
21    9 as overbroad, unduly burdensome, and not reasonably calculated to lead to the
22    discovery of admissible evidence.  Mattel further objects to Topic No. 9 on the
23    grounds that it fails to describe with reasonable particularity the matters on which
24    examination is requested.  Mattel further objects to Topic No. 9 on the grounds that
25    it is premature, unduly burdensome, and harassing in that it calls for information
26    uniquely known by defendants and by third parties within defendants' control, but is
27    not known by Mattel at this juncture, including because defendants have refused or
28    failed to produce discovery relating to this Topic, including discovery that the Court

1  has ordered MGA to produce.  Indeed, this Topic explicitly purports to require

2  Mattel to marshal evidence uniquely in the possession of defendants, and thus seeks

3  to impose upon Mattel burdens not permitted by the <u>Rules</u>, and with respect to even

4  the information that MGA and other defendants have disclosed, MGA and the other

5  defendants have designed such information under the Protective Order so as to

6  prohibit Mattel from reviewing or analyzing such information.  Mattel further

7  objects to Topic No. 9 on the grounds that it is duplicative of Topics already

8  designated by Bryant in previous notices of deposition pursuant to Rule 30(b)(6), in

9  which MGA has joined, including Topic No. 13 from the notice served on

10  December 21, 2004.  Mattel further objects to this Topic on the grounds that it is

11  premature in that it seeks to circumvent the expert disclosure provisions of the

12  <u>Federal</u> and <u>Local</u> <u>Rules</u>.  Matters of expert testimony shall be disclosed at the time

13  and in the manner called for by the <u>Rules</u> and the Court's Orders.  Mattel further

14  objects to Topic No. 9 on the grounds that it calls for the disclosure of information

15  protected by the attorney-client privilege and work product doctrine.

16  **<u>MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NO. 9</u>**

17          None.

18  **<u>MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL</u>**

19          This Topic is largely duplicative of testimony sought in Bryant's

20  Topics.  MGA's Topic No. 9 seeks testimony regarding MGA's theft of Bratz from

21  Mattel, including Bryant and MGA's concealment of facts from Mattel.  Bryant's

22  Topics Nos. 8, 13 and 55 largely cover the same subject -- MGA's copying of Bratz

23  from Mattel and misrepresentations made by Bryant upon his departure.  MGA is

24  not entitled to discovery that is duplicative and cumulative.  <u>See</u> <u>Fed. R. Civ. P.</u>

25  26(b)(2)(C); <u>see also</u> <u>CSX Transp., Inc. v. Vela</u>, 2007 WL 3334966, at *3 (S.D. Ind.

26  2007) (denying motion to compel on ground that "a <u>Rule</u> 30(b)(6) deposition on this

27  topic would be unduly cumulative"); <u>Static Control Components, Inc. v. Lexmark</u>

28  <u>Intern., Inc.</u>, 2006 WL 3256767, at *5 (E.D. Ky. 2006) (denying defendant's motion

1  to compel, because topics were duplicative of another defendant's previous <u>Rule</u>

2  <u>30(b)(6)</u> depositions, and because moving defendant was present at those

3  depositions and had an opportunity to ask questions); <u>Cummings v. General Motors</u>

4  <u>Corp.</u>, 2002 WL 32713320, at *6 (W.D. Okla. 2002) (granting protective order

5  where <u>Rule</u> 30(b)(6) notice was duplicative of other notices).  Following is a table

6  comparing MGA's Topic with those in Bryant's notice:

| <u>MGA Topic</u> | <u>Bryant Topic</u> |
|---|---|
| MGA's alleged theft of "BRATZ" from YOU, including but not limited to (a) MGA's showing of BRATZ prototypes or products to focus groups and retailers in November 2000 as alleged in paragraph 29 of YOUR COUNTERCLAIMS; (b) MGA's and LARIAN's alleged encouragement, aiding, and financing of BRYANT to develop BRATZ while he was a MATTEL employee as alleged in paragraph 33 of YOUR COUNTERCLAIMS; and (c) BRYANT's and MGA's alleged concealment of facts that prevented MATTEL from discovering that MATTEL allegedly was the true owner of BRATZ as alleged in paragraph 35 of YOUR COUNTERCLAIMS. | All acts, omissions, circumstances and/or evidence showing, or tending to show, that any and all products of MGA, including but not limited to, any and all products sold under the trade name "Bratz," originated from, were derived from, are based upon, are copied or incorporated from, or are substantially or confusingly similar to, any design, research and developmental work, work in progress, or product owned at any time by Mattel or created by any Mattel employee, including but not limited to Bryant, or by any independent contractor during the time that such Person was working for Mattel.  (Topic No. 8). <br><br> All acts, omissions, circumstances and/or evidence showing, or tending to show, that any product sold at any time by |

| | |
|---|---|
| 1 | MGA under the trade name "Bratz" |
| 2 | originated from, is derived from, is based |
| 3 | on, copies, incorporates, or is |
| 4 | substantially or confusingly similar to |
| 5 | any design or work product owned at any |
| 6 | time by Mattel or created by Bryant |
| 7 | during the time Bryant was working for |
| 8 | Mattel.  (Topic No. 13). |
| 9 | |
| 10 | All acts, omissions, circumstances and/or |
| 11 | evidence showing, or tending to show, |
| 12 | that Bryant made affirmative |
| 13 | misrepresentations to any and all Mattel |
| 14 | employees upon his departure from |
| 15 | Mattel.  (Topic No. 55). |

16

17    MGA is not entitled to Rule 30(b)(6) testimony regarding Mattel's

18  contentions.  Courts have routinely recognized that Rule 30(b)(6) depositions are a

19  particularly inefficient and unduly burdensome means for such discovery, which

20  essentially is a form of contention interrogatory.  See, e.g., SmithKline Beecham

21  Corp. v. Apotex Corp., 2000 WL 116082, at *9 (N.D. Ill. 2000) ("the recipient of a

22  Rule 30(b)(6) request is not required to have its counsel muster all of its factual

23  evidence to prepare a witness to be able to testify regarding a defense or claim"); In

24  re Independent Service Organizations Antitrust Litig., 168 F.R.D. 651, 654 (D. Kan.

25  1996) (finding Rule 30(b)(6) depositions "highly inefficient and burdensome"

26  means of discovery of a party's "defense or counterclaim"); McCormick-Morgan,

27  Inc. v. Teledyne Indus., Inc., 134 F.R.D. 275, 286-87 (N.D. Cal. 1991) (holding that

28  contention interrogatories were more appropriate means of discovery of evidence

1  relied on by party in support of its claims than <u>Rule</u> 30(b)(6) deposition).  That is

2  especially true in a large complicated case, like this one.

3          Here, MGA seeks information regarding the contentions alleged in

4  Mattel's counterclaims: "MGA's showing of BRATZ prototypes or products to focus

5  groups and retailers in November 2000 *as alleged in paragraph 29 of YOUR*

6  *COUNTERCLAIMS*; (b) MGA's and LARIAN's alleged encouragement, aiding, and

7  financing of BRYANT to develop BRATZ while he was a MATTEL employee *as*

8  *alleged in paragraph 33 of YOUR COUNTERCLAIMS*; and (c) BRYANT's and

9  MGA's alleged concealment of facts that prevented MATTEL from discovering that

10 MATTEL allegedly was the true owner of BRATZ *as alleged in paragraph 35 of*

11 *YOUR COUNTERCLAIMS*."  As Judge Brazil noted in <u>McCormick-Morgan, Inc.</u>,

12 "no one human being can be expected to set forth, especially orally in deposition, a

13 fully reliable and sufficiently complete account of all the bases for the contentions

14 made and positions taken by a party."  134 F.R.D. at 286.  If MGA is entitled to this

15 information at all, it should obtain it through less burdensome and intrusive forms of

16 discovery such as interrogatories.  Here, Mattel has provided chapter and verse in

17 recent, supplemental responses to MGA's interrogatories, including identifying

18 documents, facts and persons with knowledge.[1]

19          This Topic also seeks information that is not reasonably available to

20 Mattel.  MGA seeks testimony regarding "*MGA's* showing of BRATZ prototypes or

21 products to focus groups and retailers in November 2000" and *MGA and Larian's*

22 "encouragement, aiding, and financing of BRYANT to develop BRATZ while he

23 was a MATTEL employee."  Mattel does not have corporate knowledge of MGA's

24 acts.  MGA fraudulently concealed those acts from Mattel.  It would be a waste of

25

26

27      [1]  Mattel's Supplemental Responses to MGA's First Set of Interrogatories, dated
    December 7, 2007, Corey Dec., Exh. 15.

28

07209/2343782.1

1  the parties' time to have Mattel produce a witness to simply state that Mattel has no

2  corporate knowledge on the Topic.

3         The information Mattel relies on in support of its claims has been

4  obtained from adverse and third parties and has been set forth at length in Mattel's

5  responses to MGA's interrogatories. The vast majority of the information is

6  designated "confidential" or "confidential--attorneys' eyes only." Pursuant to the

7  protective order in this case, Mattel cannot provide such information to its

8  employees or witnesses.[2]  The information is thus not "reasonably available" to the

9  corporation. Mattel cannot produce a corporate witness on this Topic. <u>See</u>

10  <u>Rule</u> 30(b)(6) (30(b)(6) deponents "shall testify as to matter known or *reasonably*

11  *available* to the organization." (emphasis added)); <u>see also</u> <u>Helfer v. Marriott Int'l,</u>

12  <u>Inc.</u>, 2007 WL 433477, at *6 (E.D. Pa. 2007) (finding that corporation need not

13  produce 30(b)(6) witness on acts of another company because they were not

14  reasonably available to corporation).

15         Last, this Topic is defective on its face because it sets forth a generally

16  overbroad subject matter -- "MGA's alleged theft of 'BRATZ' from [Mattel]" -- and

17  then lists more specific items that are "included, but not limited to," the scope of that

18  subject. Such requests are not proper. As one court has explained:

19         Although plaintiff has specifically listed the areas of inquiry for which
         a 30(b)(6) designation is sought, she has indicated that the listed areas
20         are not exclusive. Plaintiff broadens the scope of the designated topics
         by indicating that the areas of inquiry will "includ[e], but not [be]
21         limited to" the areas specifically enumerated. An overbroad Rule
         30(b)(6) notice subjects the noticed party to an impossible task. To
22         avoid liability, the noticed party must designate persons knowledgeable
         in the areas of inquiry listed in the notice. Where, as here, the
23         defendant cannot identify the outer limits of the areas of inquiry
         noticed, compliant designation is not feasible.
24
   <u>Reed v. Bennett</u>, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations omitted).
25

26

27

28

07209/2343782.1

**MGA'S TOPIC NO. 12**

The use of any MATTEL materials, property or resources by BRYANT or any person then employed by MATTEL (directly or via a temporary employment agency) in connection with creation, design, or development of the original or first wave of BRATZ fashion dolls and accessories introduced in the U.S. in the summer of 2001, including, without limitation (a) PERSONS allegedly involved in putting together the three dimensional dummy used by BRYANT in meeting with MGA; and (b) the specific MATTEL materials, property or resources allegedly used in putting together the three dimensional dummy used by BRYANT in meeting with MGA.

**MATTEL'S RESPONSE TO TOPIC NO. 12**

In addition to the general objections above, Mattel objects to Topic No. 12 as vague and ambiguous, especially as to its use of the term "the three dimensional dummy used by BRYANT in meeting with MGA." Mattel further objects to Topic No. 12 as overbroad and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Mattel further objects to Topic No. 12 on the grounds that it fails to describe with reasonable particularity the matters on which examination is requested. Mattel further objects to Topic No. 12 on the grounds that it is premature, unduly burdensome, and harassing in that it calls for information uniquely known by defendants and by third parties within defendants' control, but is not known by Mattel at this juncture, including because defendants have concealed their conduct from Mattel and because defendants have refused or failed to produce discovery relating to this Topic, including discovery that the Court has ordered MGA to produce. Mattel further objects to this Topic on the grounds that it is premature in that it seeks to circumvent the expert disclosure

---

[2] See Protective Order, dated January 4, 2005, Corey Dec., Exh. 16.

1  provisions of the <u>Federal</u> and <u>Local</u> <u>Rules</u>.  Matters of expert testimony shall be

2  disclosed at the time and in the manner called for by the <u>Rules</u> and the Court's

3  Orders.  Mattel further objects to Topic No. 12 on the grounds that it calls for the

4  disclosure of information protected by the attorney-client privilege and work

5  product doctrine.

6  **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NO. 12**

7       None.

8  **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL**

9       Topic No. 12 is substantially identical to the subject matter of Bryant's

10  Topic Nos. 3, 6, and 7, as to which the Discovery Master recently compelled Mattel

11  to produce a witness.[3]  While Mattel disagrees with that Order for the reasons set

12  forth in Mattel's Opposition to that Motion, which is incorporated herein by

13  reference (and Mattel reserves all rights in that regard),[4] because MGA will have an

14  opportunity to inquire regarding the congruent compelled Topics in Bryant's Notice,

15  MGA's premature motion for a second bite at the apple should be denied.

16       Topic No. 12 is also duplicative of Bryant's Topic No. 22.  MGA is not

17  entitled to discovery that is duplicative and cumulative.  <u>See</u> <u>Fed. R. Civ. P.</u>

18  26(b)(2)(C); <u>see also</u> <u>CSX Transp., Inc. v. Vela</u>, 2007 WL 3334966, at *3 (S.D. Ind.

19  2007) (denying motion to compel on ground that "a <u>Rule</u> 30(b)(6) deposition on this

20  topic would be unduly cumulative"); <u>Static Control Components, Inc. v. Lexmark</u>

21  <u>Intern., Inc.</u>, 2006 WL 3256767, at *5 (E.D. Ky. 2006) (denying defendant's motion

22  to compel, because topics were duplicative of another defendant's previous 30(b)(6)

23

24  [3]  Order Granting in Part and Denying in Part MGA's and Bryant's Joint Motion

25  to Compel re: Mattel's Bandying of 30(b)(6) Witnesses, dated January 11, 2008, Corey Dec., Exh. 17.

26  [4]  Mattel's Opposition to MGA and Bryant's Joint Motion to Compel re: Mattel's

27  Alleged Bandying of 30(b)(6) Witnesses, dated September 26, 2007, Corey Dec., Exh. 22.

28

1   depositions, and because moving defendant was present at those depositions and had

2   an opportunity to ask questions); <u>Cummings v. General Motors Corp.</u>, 2002 WL

3   32713320, at *6 (W.D. Okla. 2002) (granting protective order where 30(b)(6) notice

4   was duplicative of other notices).

5           Following is a chart comparing MGA's Topic No. 12 to Topic Nos. 3,

6   6, 7 and 22 from Bryant's <u>Rule</u> 30(b)(6) notice:

| <u>MGA Topic</u> | <u>Bryant Topic</u> |
|---|---|
| The use of any MATTEL materials, property or resources by BRYANT or any person then employed by MATTEL (directly or via a temporary employment agency) in connection with creation, design, or development of the original or first wave of BRATZ fashion dolls and accessories introduced in the U.S. in the summer of 2001, including, without limitation (a) PERSONS allegedly involved in putting together the three dimensional dummy used by BRYANT in meeting with MGA; and (b) the specific MATTEL materials, property or resources allegedly used in putting together the three dimensional dummy used by BRYANT in meeting with MGA. | The services and property belonging to Mattel that Bryant provided to any third party, including MGA, from 1995 to the present.  (Topic No. 7).<br><br>All acts, omissions, circumstances and/or evidence showing, or tending to show, that Bryant misappropriated Mattel property, including without limitation intellectual property, at any time.  (Topic No. 22).<br><br>All of Bryant's acts or omissions which breached any contractual or non-contractual duty or obligation Bryant owed to Mattel.  (Topic No. 3).<br><br>All of Bryant's acts or omissions pursuant to which he aided, assisted and worked for a competitor of Mattel while |

| | employed by Mattel from 1995 to the present. (Topic No. 6). |
|---|---|

Much of the information Mattel relies on in support of its claims has been obtained from adverse and third parties. The vast majority of the information is designated "confidential" or "confidential--attorneys' eyes only." Pursuant to the protective order in this case, Mattel cannot provide such information to its employees or witnesses. The information is thus not "reasonably available" to the corporation. Mattel cannot produce a corporate witness on this Topics. See Rule 30(b)(6) (30(b)(6) deponents "shall testify as to matter known or *reasonably available* to the organization." (emphasis added)); see also Helfer v. Marriott Int'l, Inc., 2007 WL 433477, at *6 (E.D. Pa. 2007) (finding that corporation need not produce 30(b)(6) witness on acts of another company because they were not reasonably available to corporation).

This Topic is also defective on its face because it sets forth a generally overbroad subject matter -- "The use of any MATTEL materials, property or resources by BRYANT or any person then employed by MATTEL . . . in connection with creation, design, or development of the original or first wave of BRATZ fashion dolls and accessories introduced in the U.S. in the summer of 2001" -- and then lists more specific items that are "including, without limitation," the scope of that subject. Such requests are not proper. As one court has explained:

> Although plaintiff has specifically listed the areas of inquiry for which a 30(b)(6) designation is sought, she has indicated that the listed areas are not exclusive. Plaintiff broadens the scope of the designated topics by indicating that the areas of inquiry will "includ[e], but not [be] limited to" the areas specifically enumerated. An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task. To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice. Where, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.

1             <u>Reed v. Bennett</u>, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations

2 omitted).

3

4 **<u>MGA'S TOPIC NO. 16</u>**

5           The WSJ STATEMENTS, including, but not limited to (a) YOUR

6 knowledge of who made the WSJ STATEMENTS, or provided any of the

7 information contained in the WSJ STATEMENTS, to any WSJ REPORTERS; (b)

8 the identity of all fashion doll or doll designers who left MATTEL in 2001; (c) any

9 efforts by YOU to facilitate the publication of the WSJ STATEMENTS, including,

10 but not limited to, assisting a WSJ REPORTER to obtain the WSJ STATEMENTS

11 or the information contained in the WSJ STATEMENTS, to identify people for WSJ

12 REPORTERS to contact and interview, and to verify the WSJ STATEMENTS or

13 the information contained in the WSJ STATEMENTS; (d) when YOU first learned

14 or became aware of the WSJ STATEMENTS; (e) YOUR response or reaction to the

15 WSJ STATEMENTS after YOU first learned or became aware of them; (f) any

16 actions taken by YOU (including, but not limited to, any investigation or interviews)

17 in response to the WSJ STATEMENTS; and (g) COMMUNICATIONS among

18 MATTEL employees regarding the WSJ STATEMENTS.

19 **<u>MATTEL'S RESPONSE TO TOPIC NO. 16</u>**

20           In addition to the general objections above, Mattel objects to Topic No.

21 16 as vague and ambiguous, especially as to its use of the terms "information

22 contained in the WSJ STATEMENTS," "efforts by you to facilitate the publication

23 of the WSJ STATEMENTS," "assisting a WSJ REPORTER to obtain the WSJ

24 STATEMENTS or the information contained in the WSJ STATEMENTS," and

25 "response or reaction." Mattel further objects to Topic No. 16 as compound,

26 overbroad and unduly burdensome, and not reasonably calculated to lead to the

27 discovery of admissible evidence. Among other things, Topic No. 16 purports to

28 require Mattel to produce witnesses to testify as to "the identity of all fashion doll or

1   doll designers who left MATTEL in 2001," including employees that have no

2   relevance to this suit, and "COMMUNICATIONS among MATTEL employees,"

3   despite the fact that Mattel employs tens of thousands of employees across the

4   globe.  Mattel further objects to Topic No. 16 on the grounds that it fails to describe

5   with reasonable particularity the matters on which examination is requested.  Mattel

6   further objects to Topic No. 16 on the grounds that it calls for the disclosure of

7   information protected by the attorney-client privilege, work product doctrine and

8   other privileges.

9   **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NO. 16**

10          None.

11   **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL**

12          Topic No. 16 is substantially identical to Topic No. 41 in Bryant's <u>Rule</u>

13   30(b)(6) notice, for which Mattel has already produced a witness.  Both MGA's and

14   Bryant's Topics seek information regarding statements relating to the July 2003

15   Wall Street Journal article.  MGA is not entitled to discovery that is duplicative and

16   cumulative.  <u>See</u> <u>Fed. R. Civ. P.</u> 26(b)(2)(C); <u>see also</u> <u>CSX Transp., Inc. v. Vela</u>,

17   2007 WL 3334966, at *3 (S.D. Ind. 2007) (denying motion to compel on ground

18   that "a <u>Rule</u> 30(b)(6) deposition on this topic would be unduly cumulative"); <u>Static</u>

19   <u>Control Components, Inc. v. Lexmark Intern., Inc.</u>, 2006 WL 3256767, at *5 (E.D.

20   Ky. 2006) (denying defendant's motion to compel, because topics were duplicative

21   of another defendant's previous 30(b)(6) depositions, and because moving defendant

22   was present at those depositions and had an opportunity to ask questions); <u>

23   Cummings v. General Motors Corp.</u>, 2002 WL 32713320, at *6 (W.D. Okla. 2002)

24   (granting protective order where 30(b)(6) notice was duplicative of other notices).

25   Following is a chart comparing MGA's Topic No. 16 to Topic No. 41 in Bryant's

26   notice:

27

| **MGA Topic** | **Bryant Topic** |
| --- | --- |

28

| | |
|---|---|
| 1  The WSJ STATEMENTS, including, but | All statements of Mattel or ex-Mattel |
| 2  not limited to (a) YOUR knowledge of | employees in the July 2003 Wall Street |
| 3  who made the WSJ STATEMENTS, or | Journal article (produced by Mattel to |
| 4  provided any of the information | Bryant in the present case), including, |
| 5  contained in the WSJ STATEMENTS, to | without limitation, "Inside Mattel, some |
| 6  any WSJ REPORTERS; (b) the identity | are convinced the Bratz borrow liberally |
| 7  of all fashion doll or doll designers who | from a Mattel project that was scrapped |
| 8  left MATTEL in 2001; (c) any efforts by | at the testing stage in 1998"; "But the |
| 9  YOU to facilitate the publication of the | Bratz' oversized heads -- with their |
| 10 WSJ STATEMENTS, including, but not | pursed lips and cartoonist eyes -- are |
| 11 limited to, assisting a WSJ REPORTER | 'virtually identical' to the heads of the |
| 12 to obtain the WSJ STATEMENTS or the | dolls her team created"; "Anyone who |
| 13 information contained in the WSJ | passed by [Lily Martinez's] cubicle |
| 14 STATEMENTS, to identify people for | would see the picture up on the wall"; |
| 15 WSJ REPORTERS to contact and | and "The big heads, the big eyes, the big |
| 16 interview, and to verify the WSJ | feet -- they were all the same [as the |
| 17 STATEMENTS or the information | Bratz]."  (Topic No. 41). |
| 18 contained in the WSJ STATEMENTS; | |
| 19 (d) when YOU first learned or became | |
| 20 aware of the WSJ STATEMENTS; (e) | |
| 21 YOUR response or reaction to the WSJ | |
| 22 STATEMENTS after YOU first learned | |
| 23 or became aware of them; (f) any actions | |
| 24 taken by YOU (including, but not limited | |
| 25 to, any investigation or interviews) in | |
| 26 response to the WSJ STATEMENTS; | |
| 27 and (g) COMMUNICATIONS among | |

28

| 1 | MATTEL employees regarding the WSJ | |
| 2 | STATEMENTS. | |

Mattel produced Julia Jensen to testify about the Wall Street Journal article, preparation for it, who was interviewed, communications between the Wall Street Journal and Mattel, and inquiries into the statements made anonymously in that article. MGA's counsel, Mr. Keats, questioned Ms. Jensen on these exact topics for hours.[5] In addition, MGA deposed the author of the Wall Street Journal article about not only the statements, but her sources.[6]

After all that, MGA and Bryant jointly moved to compel Mattel to provide an additional witness regarding the Wall Street Journal statements. Judge Infante denied that request, finding that the testimony regarding those statements was "adequate."[7] Having taken the deposition of Mattel's designee on this Topic, there is no basis to now compel Mattel to produce a witness again on the same Topic. The Discovery Master has already decided the issue. MGA is not entitled to additional testimony.

This Topic also seeks information that is not reasonably available to Mattel. MGA seeks testimony of all "COMMUNICATIONS among MATTEL employees regarding the WSJ STATEMENTS." Mattel does not have corporate knowledge of all the communications between its employees. As in any workplace, Mattel's employees communicate with each other all of the time. Mattel would need to be omniscient to know the substance of all those communications. "Rule 30(b)(6) puts several duties on the designating party and on the deponent, but one of them is

---

[5] Deposition Transcript of Julia Jensen, dated June 8, 2007, at 3:1-7, 187:18-19, Corey Dec., Exh. 18.

[6] Deposition Transcript of Maureen Tkacik, dated September 28, 2007, Corey Dec., Exh. 19.

07209/2343782.1

1  not omniscience." <u>Alexander v. F.B.I.</u>, 186 F.R.D. 137, 143 (D.D.C. 1998).  Indeed,

2  the Discovery Master rejected Bryant's request to obtain such chatter regarding

3  Bryant from among Mattel employees.[8]

4          Last, this Topic is defective on its face because it sets forth a generally

5  overbroad subject matter -- "[t]he WSJ STATEMENTS" -- and then lists more

6  specific items that are "including, but not limited to," the scope of that subject.  Such

7  requests are not proper.  As one court has explained:

8          Although plaintiff has specifically listed the areas of inquiry for which
           a 30(b)(6) designation is sought, she has indicated that the listed areas
9          are not exclusive.  Plaintiff broadens the scope of the designated topics
           by indicating that the areas of inquiry will "includ[e], but not [be]
10         limited to" the areas specifically enumerated.  An overbroad Rule
           30(b)(6) notice subjects the noticed party to an impossible task.  To
11         avoid liability, the noticed party must designate persons knowledgeable
           in the areas of inquiry listed in the notice.  Where, as here, the
12         defendant cannot identify the outer limits of the areas of inquiry
           noticed, compliant designation is not feasible.

13         <u>Reed v. Bennett</u>, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations

14  omitted).

15

16  **MGA'S TOPIC NO. 17**

17          MATTEL's internal and external investigations of the facts related to

18  this ACTION, including, but not limited to (a) investigations of or concerning

19  BRYANT, Richard Irtnen, BRYANT's family, LARIAN, LARIAN's family, MGA,

20  MGA's current and former officers and employees, BRAWER, Farhad (Fred)

21  Larian, Shirin Larian Makabi; Shirin Salemnia, Holly Stinnett, Tina Patel, Mercedeh

22  Ward, Anna Rhee, Veronica Marlowe, Margaret Leahy, Thomas Park, and Jahangir

23  Makabi; (b) surveillance of BRYANT, Richard Irmen, BRYANT's family,

24

25  [7]  January 3, 2008 Hearing Tr. at 82:3 - 84:3, Corey Dec., Exh. 20..

26

27

28

1 LARIAN, LARIAN's family, MGA, MGA's current and former officers and

2 employees, BRAWER, Farhad (Fred) Larian, Shirin Larian Makabi; Shirin

3 Salemnia, Holly Stinnett, Tina Patel, Mercedeh Ward, Anna Rhee, Veronica

4 Marlowe, Margaret Leahy, Thomas Park, and Jahangir Makabi, including the dates

5 and times of surveillance, and the identities of the persons who conducted such

6 surveillance; (c) written or recorded statements; (d) the origin, source, meaning and

7 authenticity of DOCUMENTS produced in this ACTION from YOUR Global

8 Security department files.

9 **MATTEL'S RESPONSE TO TOPIC NO. 17**

10    In addition to the general objections above, Mattel objects to Topic No.

11 17 as vague and ambiguous, especially as to its use of the term "internal and

12 external investigations." Mattel further objects to Topic No. 17 as compound,

13 overbroad and unduly burdensome, and not reasonably calculated to lead to the

14 discovery of admissible evidence. Among other things, Topic No. 17 purports to

15 require Mattel to produce witnesses to testify as to supposed surveillance or

16 "investigations of or concerning BRYANT, Richard Irmen, BRYANT's family,

17 LARIAN, LARIAN's family, MGA, MGA's current and former officers and

18 employees, BRAWER, Farhad (Fred) Larian, Shirin Larian Makabi; Shirin

19 Salemnia, Holly Stinnett, Tina Patel, Mercedeh Ward, Anna Rhee, Veronica

20 Marlowe, Margaret Leahy, Thomas Park, and Jahangir Makabi," despite the fact that

21 the Topic would purport to sweep in such wholly irrelevant matters such as efforts

22 by process servers to serve any of these individuals when MGA's counsel refused to

23 accept service on their behalf and as well as matters relating to any number of

24 irrelevant products and subjects. Mattel further objects to Topic No. 17 on the

25

26 [8] Order Granting in Part and Denying in Part MGA's Motion to Compel
27 Documents Responsive to First Set of Requests for Production of Documents, dated
May 22, 2007, at pp. 17-18.

28

1  grounds that it fails to describe with reasonable particularity the matters on which

2  examination is requested.  Mattel further objects to Topic No. 17 on the grounds that

3  it is duplicative of Topics already designated by Bryant in previous notices of

4  deposition pursuant to <u>Rule</u> 30(b)(6), in which MGA has joined, including Topic

5  Nos. 19-20 from the notice served on December 21, 2004.  Mattel further objects to

6  Topic No. 17 on the grounds that it is an attempt to circumvent the Discovery

7  Master's prior Orders determining the topic is irrelevant and/or an inappropriate and

8  overbroad category of discovery.  Mattel further objects to Topic No. 17 on the

9  grounds that it calls for the disclosure of information protected by the attorney-client

10  privilege, work product doctrine and other privileges, including without limitation

11  the privileges afforded consulting experts.  Mattel further objects to this Topic on

12  the grounds that it is premature in that it seeks to circumvent the expert disclosure

13  provisions of the <u>Federal</u> and <u>Local</u> <u>Rules</u>.  Matters of expert testimony shall be

14  disclosed at the time and in the manner called for by the <u>Rules</u> and the Court's

15  Orders.

16  **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NO. 17**

17        None.

18  **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL**

19        Topic No. 17 substantially overlaps with the subject matter of Bryant's

20  Topic Nos. 19 and 20, as to which the Discovery Master recently compelled Mattel

21  to produce a witness.[9]  The Discovery Master ordered Mattel to produce a witness

22  regarding Mattel's investigations related to Bratz and Bryant.  Thus, to the extent

23  MGA's Topic seeks information related to Mattel investigations regarding Bratz or

24  Bryant, it is duplicative.  While Mattel disagrees with that Order for the reasons set

25  

26    [9]   Order Regarding MGA and Carter Bryant's Joint Motion to Overrule Mattel's

27  Relevance Objections and Compel Discovery Relevant to Statute of Limitations and Laches Defenses, dated January 9, 2008, Corey Dec., Exh. 21.

28

1  forth in Mattel's Opposition to that Motion, which is incorporated herein by

2  reference (and Mattel reserves all rights in that regard), because MGA will have an

3  opportunity to inquire regarding the congruent compelled Topics in Bryant's Notice,

4  MGA's premature motion for a second bite at the apple should be denied.

5         MGA is not entitled to discovery that is duplicative and cumulative.

6  See Fed. R. Civ. P. 26(b)(2)(C); see also CSX Transp., Inc. v. Vela, 2007 WL

7  3334966, at *3 (S.D. Ind. 2007) (denying motion to compel on ground that "a Rule

8  30(b)(6) deposition on this topic would be unduly cumulative"); Static Control

9  Components, Inc. v. Lexmark Intern., Inc., 2006 WL 3256767, at *5 (E.D. Ky.

10  2006) (denying defendant's motion to compel, because topics were duplicative of

11  another defendant's previous 30(b)(6) depositions, and because moving defendant

12  was present at those depositions and had an opportunity to ask questions);

13  Cummings v. General Motors Corp., 2002 WL 32713320, at *6 (W.D. Okla. 2002)

14  (granting protective order where 30(b)(6) notice was duplicative of other notices).

15  Following is a chart comparing MGA's Topic No. 17 to Topic Nos. 19 through 20

16  from Bryant's Rule 30(b)(6) notice:

| **MGA Topic** | **Bryant Topic** |
|---|---|
| MATTEL's internal and external investigations of the facts related to this ACTION, including, but not limited to (a) investigations of or concerning BRYANT, Richard Irtnen, BRYANT's family, LARIAN, LARIAN's family, MGA, MGA's current and former officers and employees, BRAWER, Farhad (Fred) Larian, Shirin Larian Makabi; Shirin Salemnia, Holly Stinnett, | All acts, omissions, circumstances and/or evidence showing, or tending to show, all actions taken by You, including but not limited to all circumstances surrounding any investigations you have undertaken, relating to Bratz after You learned that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.  (Topic No. 19). |

| | |
|---|---|
| Tina Patel, Mercedeh Ward, Anna Rhee, Veronica Marlowe, Margaret Leahy, Thomas Park, and Jahangir Makabi; (b) surveillance of BRYANT, Richard Irmen, BRYANT's family, LARIAN, LARIAN's family, MGA, MGA's current and former officers and employees, BRAWER, Farhad (Fred) Larian, Shirin Larian Makabi; Shirin Salemnia, Holly Stinnett, Tina Patel, Mercedeh Ward, Anna Rhee, Veronica Marlowe, Margaret Leahy, Thomas Park, and Jahangir Makabi, including the dates and times of surveillance, and the identities of the persons who conducted such surveillance; (c) written or recorded statements; (d) the origin, source, meaning and authenticity of DOCUMENTS produced in this ACTION from YOUR Global Security department files. | All acts, omissions, circumstances and/or evidence showing, or tending to show, all actions taken by You, including but not limited to all circumstances surrounding any investigations You have undertaken, relating to Bryant and any act of omission of Bryant that breached any contractual or non-contractual duty or obligation Bryant owed to Mattel. (Topic No. 20). |

To the extent MGA is seeking "the origin, source, meaning and authenticity of DOCUMENTS produced in this ACTION from [Mattel's] Global Security department files," it should do so through requests for admissions, which are far more efficient and less burdensome means of discovery for such information.

This Topic is also defective on its face because it sets forth a generally overbroad subject matter -- "MATTEL's internal and external investigations of the

facts related to this ACTION" -- and then lists more specific items that are "including, but not limited to," the scope of that subject.  Such requests are not proper.  As one court has explained:

> Although plaintiff has specifically listed the areas of inquiry for which a 30(b)(6) designation is sought, she has indicated that the listed areas are not exclusive.  Plaintiff broadens the scope of the designated topics by indicating that the areas of inquiry will "includ[e], but not [be] limited to" the areas specifically enumerated.  An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task.  To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice.  Where, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.

Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations omitted).

## MGA'S TOPIC NO. 18

YOUR policies and practices concerning interviews and investigations of employees who leave MATTEL to work for competitors, including but not limited to MGA, and YOUR knowledge of the reason(s) why each of your employees, including but not limited to the following former employees or contractors ceased working for MATTEL or a MATTEL subsidiary to work for MGA or an MGA subsidiary as employees or contractors, including what YOU learned through exit interviews: BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Eve Bennett; Kami Gilmour; Sarah Halpern; Margaret Leahy; Veronica Marlowe; Maureen Mullen; Amy Myer; Anna Rhee; TREANTAFELLES; Odette Vandenburg; Mercedeh Ward; Daniel Cooney; Janet Han; Steve Chang; Lui Domingo; Pui Pootipong; Ellen Komatsu; Shirin Salemnia; Joe Feldman; Ricardo Abundis; Ian Bate; Nanette Black; John E. Bloodworth III; Kevin Bloomfield; Jorge Castilla; Suzy Chang; Steve Cheng; Gerry Cody Jr.; Nick Contreras; Maria De La Cruz; Karen Dixon; Greg Paul Dominguez; Craig Forrest; Mia Garcia; Eduardo Gonzalez; Tracy Hall; Melody Hansen; Todd Hansen; Jill Hatch; Michael Hinh; Janet Hsu; Alice Kao; Ken Kaufman; Pamela Keller; Alejandro Gabriel Keossian;

1  Joyce Kim (Lee); Young Ran Kim; Kristen Kirst; Jill Larson; Adrian (Chi Shing)

2  Law; Bo Lumabao; Dorothy Marks; Raymond John Martin; Aye Aye Min; Yumi

3  Nakamura; Marvin Natareno; Christine Nigoghossian; Amelia Ivy Arafiles Palijo;

4  Danny Pestonji; Denise Phelan; Michael Pickard; Ronald Rae; Leland Ratleff;

5  Desiree Elisabeth Ronquillo; Micaela Ruiz; Natasha Sasic-Koetsier; Maria Elena

6  Salazar; Harvey Scott; Steffen J. Smith; Jier Su; Dennis Soai; Marla Thompson;

7  Chau Ngoc Tran; Esteban Umana; Gail Upshaw; Chang-Chin Wang; Lance Ward;

8  Dawn Whittaker; Jenny Wong; Troy Augborne; Carter Bryant; Reyna Zetino;

9  Daryoush Aryapour; Janet Blaser, Mari Joanne Bower Violette; Lilia Brown;

10  Gabriella Burlando; Fabienne Chonavel; Christine Dailey; Steve Feicht; Christopher

11  Hardouin; Martin Hitch; Jeff Ho; James Huntley; Randi Kagan; Andreas Koch; Lyn

12  Carol Mayer; Susan McBride; Frank Mils; Xuanlan Nguyen; Gary Thomas O'Brien;

13  Jose Otero; Dan Owen; Nicolletta Parasole; Ana Mancia Parkinson; Roger

14  Rambeau; Wendy Reed; Scot Anthony Reyes; Lon Ross; Dena Schwartz; Brandi

15  Shaver; Holly Stinnett; Lisa Tawil; Gord Terry; Joseph Whitaker; Patrick Williams;

16  Tong Wong; Cherrise Wright; Dave Zbojniewicz; Lourdes Aguilar; Juan Carlos

17  Virrueta Camacho; Alejandro Gurza Romay; Lidia Ivete Montero Leyva; Laura

18  Ochoa; Andrea Ramirez.

19  **MATTEL'S RESPONSE TO TOPIC NO. 18**

20            In addition to the general objections above, Mattel objects to Topic No.

21  18 on the grounds that it fails to describe with reasonable particularity the matters on

22  which examination is requested and that it is overbroad, unduly burdensome,

23  oppressive, and not reasonably calculated to lead to the discovery of admissible

24  evidence.  Among other things, Topic No. 18 purports to require Mattel to produce

25  witnesses to testify as to "employees who leave MATTEL to work for competitors,"

26  unlimited as to time, and including employees that have no relevance to this suit,

27  and to speculate "why each" such employee left.  Mattel further objects to Topic No.

28  18 on the grounds that it is an attempt to circumvent the Discovery Master's prior

1   Orders determining the topic is irrelevant and/or an inappropriate and overbroad

2   category of discovery. Mattel further objects to Topic No. 18 on the grounds that it

3   seeks confidential, proprietary and trade secret information, including such

4   information that has no bearing on the claims or defenses in this case. Mattel further

5   objects to Topic No. 18 on the grounds that it calls for the disclosure of information

6   protected by the attorney-client privilege and work product doctrine.

7   **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NO. 18**

8           None.

9   **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL**

10          Preparing a witness to testify regarding Topic No. 18 would impose an

11  oppressive, unjustified, and undue burden on Mattel. Rule 26 empowers the Court

12  to "limit the frequency or extent of discovery . . . if it determines that . . . the burden

13  or expense of the proposed discovery outweighs its likely benefit." Rule

14  26(b)(2)(C); see also Omni Home Financing, Inc. v. Hartford Life & Annuity Ins.

15  Co., 2008 WL 66562, at *3 (S.D. Cal. 2008) (denying request for depositions

16  because burden outweighed benefit); Thumin v. Bumble Bee Seafoods, Inc., 2001

17  WL 1164691, at *1 (S.D.N.Y. 2001) (denying deposition because "the burden

18  outweighs its likely benefit"). MGA has not, and cannot, demonstrate good cause to

19  obtain testimony on the Topic.

20          MGA seeks a Mattel witness to testify regarding Mattel's knowledge of

21  the reason every Mattel employee or contractor left Mattel to work for MGA and

22  what Mattel learned at the exit interviews of each of these employees. MGA

23  identifies at least 130 particular individuals that it purportedly claims are former

24  Mattel employees or contractors that left to work for MGA. To prepare a witness to

25  testify as to the reasons that employees left Mattel to work for MGA and what

26  Mattel learned at the employees' exit interviews would require interviewing each

27  employee's manager and co-workers (which often could range into the dozens) and

28  the individual who conducted the employee's exit interview to determine whether

1   the employee expressed his or her reasons for leaving.[10]  It would also require

2   review of employee personnel files and other Human Resources files that may

3   include information on the employee's reasons for leaving.[11]  Even if the research to

4   identify the former employee's manager, co-workers and the responsible person in

5   human resources, the interviews of those persons and the documentary review for

6   each employee took two hours, a conservative estimate, for just the 130 people that

7   MGA identified that process would take a single person 260 hours, or approximately

8   two full months.[12]

9          The burden would be even more significant were Mattel required to

10  prepare a witness on this Topic as to all Mattel employees that have left to work for

11  MGA or another competitor.  MGA puts no temporal limits on this Topic, but since

12  1997, more than 5,000 employees working at Mattel's El Segundo headquarters

13  alone have left Mattel.[13]  The burden of searching records regarding all of these

14  employees' departure from Mattel and interviewing their co-workers and managers

15  would be considerable and take one person many, many months to identify and

16  gather.[14]  Even if the collection task took only one half-hour per employee, that

17  would take a single employee over 2500 hours just to collect that information.[15]

18         Moreover, the Topic is not limited to the claims and defenses at issue.

19  Mattel does not allege (and presumably MGA does not believe) that every employee

20  that it ever induced to leave Mattel either lied to Mattel in his or her exit interview

21  or misappropriated Mattel trade secrets.  So, a designee to testify about the 130

22

23

24  [10]  Declaration of Lissa Freed ("Freed Dec."), ¶ 8.

25  [11]  Id.

    [12]  Id.

26  [13]  Id. at ¶ 9.

27  [14]  Id.

    [15]  Id.

28

1  specifically identified individuals would far exceed the bounds of relevancy as

2  dictated by <u>Rule</u> 26.

3           This Topic is also defective on its face because it sets forth a generally

4  overbroad subject matter -- "YOUR policies and practices concerning interviews

5  and investigations of employees who leave MATTEL to work for competitors" --

6  and then lists more specific items that are "including, but not limited to," the scope

7  of that subject.  Such requests are not proper.  As one court has explained:

> Although plaintiff has specifically listed the areas of inquiry for which
> a 30(b)(6) designation is sought, she has indicated that the listed areas
> are not exclusive.  Plaintiff broadens the scope of the designated topics
> by indicating that the areas of inquiry will "includ[e], but not [be]
> limited to" the areas specifically enumerated.  An overbroad Rule
> 30(b)(6) notice subjects the noticed party to an impossible task.  To
> avoid liability, the noticed party must designate persons knowledgeable
> in the areas of inquiry listed in the notice.  Where, as here, the
> defendant cannot identify the outer limits of the areas of inquiry
> noticed, compliant designation is not feasible.

<u>Reed v. Bennett</u>, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations omitted).

## <u>MGA'S TOPIC NO. 24</u>

           The process(es) by which MATTEL evaluates and approves ideas for

new fashion dolls, including, but not limited to, any changes to such process(es)

after BRATZ dolls were released in 2001.

## <u>MATTEL'S RESPONSE TO TOPIC NO. 24</u>

           In addition to the general objections above, Mattel objects to Topic No.

24 as vague and ambiguous, especially as to its use of the term "process(es) by

which MATTEL evaluates and approves ideas for new fashion dolls."  Mattel

further objects to Topic No. 24 on the grounds that it fails to describe with

reasonable particularity the matters on which examination is requested and that it is

overbroad and unduly burdensome, and not reasonably calculated to lead to the

discovery of admissible evidence.  Mattel further objects to Topic No. 24 on the

grounds that it seeks confidential, proprietary and trade secret information, including

1  such information that has no bearing on the claims or defenses in this case. Mattel

2  further objects to this Topic on the grounds that it is premature in that it seeks to

3  circumvent the expert disclosure provisions of the <u>Federal</u> and <u>Local</u> <u>Rules</u>. Matters

4  of expert testimony shall be disclosed at the time and in the manner called for by the

5  <u>Rules</u> and the Court's Orders. Mattel further objects to Topic No. 24 on the grounds

6  that it calls for the disclosure of information protected by the attorney-client

7  privilege, work product doctrine and other privileges.

8  **<u>MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NO. 24</u>**

9      None.

10  **<u>MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL</u>**

11      Preparing a witness to testify regarding Topic No. 24 would impose an

12  oppressive, unjustified, and undue burden on Mattel. <u>Rule</u> 26 empowers the Court

13  to "limit the frequency or extent of discovery . . . if it determines that . . . the burden

14  or expense of the proposed discovery outweighs its likely benefit." <u>Rule</u>

15  26(b)(2)(C); <u>see also</u> <u>Omni Home Financing, Inc. v. Hartford Life & Annuity Ins.</u>

16  <u>Co.</u>, 2008 WL 66562, at *3 (S.D. Cal. 2008) (denying request for depositions

17  because burden outweighed benefit); <u>Thumin v. Bumble Bee Seafoods, Inc.</u>, 2001

18  WL 1164691, at *1 (S.D.N.Y. 2001) (denying deposition because "the burden

19  outweighs its likely benefit"). MGA has not, and cannot, demonstrate good cause to

20  obtain testimony on the Topic.

21      MGA seeks a Mattel witness to testify regarding the "process(es) by

22  which MATTEL evaluates and approves ideas for new fashion dolls, including, but

23  not limited to, any changes to such process(es) after BRATZ dolls were released in

24  2001." To prepare a witness to testify as to the processes by which Mattel evaluates

25  and approves ideas for new fashion dolls would require Mattel to speak with many,

26  many people about the evaluation and approval process followed not only for each

27

28

of the Barbie Mainline dolls over the past seven years, but those considered by Barbie Collector and by Barbie Customized.[16]  Between 2001 and the present, over a hundred people worked solely on conception, evaluation and approval of Barbie Mainline products, with hundreds more working on Collector, Customized and the other non-Barbie fashion dolls that Mattel considered.[17]  To simply identify the actual consideration and approval process for each of the fashion dolls that Mattel considered, would require Mattel to interview hundreds of people, including many no longer with the company.[18]  That process would take weeks, if not months.[19]

For each unique concept or doll, the members of the responsible group followed an approval process that was unique for each non-Barbie fashion doll.[20] To determine what the process was for each of the non-Barbie fashion dolls that Mattel considered and rejected, undertook development of or took to market, a person would have to speak with the members of the teams responsible for those products (frequently between 20 and 50 people, and more for those taken to market), and would have to look at documents related to each product, particularly those associated with ideating, planning, scheduling, goals and milestones, planner notes and related documentation.[21]  Such documentation would be on the order of two to five boxes of documents per project (and more for those taken to market) and would require a person to speak with in excess of fifty people to account for the non-Barbie products that Mattel considered since 2001.[22]

---

[16]  Declaration of Vickie Cerrito ("Cerrito Dec."), ¶ 6.
[17]  Id.
[18]  Id.
[19]  Id.
[20]  Id. at ¶ 7.
[21]  Id.
[22]  Id.

1    Moreover, the Topic is not limited to the claims and defenses at issue.

2 The processes by which Mattel evaluates and approves ideas for its thousands of

3 products are not relevant to any claim or defense.  So, a designee to testify about

4 that processes used for those thousands of products would far exceed the bounds of

5 relevancy as dictated by <u>Rule</u> 26.

6    This Topic is also defective on its face because it sets forth a generally

7 overbroad subject matter -- "[t]he process(es) by which MATTEL evaluates and

8 approves ideas for new fashion dolls" -- and then lists more specific items that are

9 "including, but not limited to," the scope of that subject.  Such requests are not

10 proper.  As one court has explained:

11    Although plaintiff has specifically listed the areas of inquiry for which
     a 30(b)(6) designation is sought, she has indicated that the listed areas
12    are not exclusive.  Plaintiff broadens the scope of the designated topics
     by indicating that the areas of inquiry will "includ[e], but not [be]
13    limited to" the areas specifically enumerated.  An overbroad Rule
     30(b)(6) notice subjects the noticed party to an impossible task.  To
14    avoid liability, the noticed party must designate persons knowledgeable
     in the areas of inquiry listed in the notice.  Where, as here, the
15    defendant cannot identify the outer limits of the areas of inquiry
     noticed, compliant designation is not feasible.

16
17 <u>Reed v. Bennett</u>, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations omitted).

18
19 **<u>MGA'S TOPIC NO. 26</u>**

20    For each and every agreement requested by MATTEL concerning

21 confidentiality, ownership of intellectual property, and/or any post-employment

22 restrictions or obligations to MATTEL, the number, percentage, and identity of

23 MATTEL employees who have refused to sign such agreement(s) since 1998.

**<u>MATTEL'S RESPONSE TO TOPIC NO. 26</u>**
24
25    In addition to the general objections above, Mattel objects to Topic No.

26 26 as vague and ambiguous, especially as to its use of the term "agreement

27 requested by MATTEL concerning confidentiality, ownership of intellectual

28 property, and/or any post-employment restrictions or obligations to MATTEL."

-28-

1  Mattel further objects to Topic No. 26 as overbroad and unduly burdensome, and

2  not reasonably calculated to lead to the discovery of admissible evidence.  Mattel

3  further objects to Topic No. 26 on the grounds that it fails to describe with

4  reasonable particularity the matters on which examination is requested.  Mattel

5  further objects to Topic No. 26 on the grounds that it seeks confidential, proprietary

6  and trade secret information, including such information that has no bearing on the

7  claims or defenses in this case.  Mattel further objects to Topic No. 26 on the

8  grounds that it calls for the disclosure of information protected by the attorney-client

9  privilege, work product doctrine and other privileges.

10  **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NO. 26**

11  None.

12  **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL**

13  MGA's request for testimony regarding the "number, percentage, and

14  identity" of Mattel employees that have refused to sign "each and every agreement

15  requested by MATTEL concerning confidentiality, ownership of intellectual

16  property, and/or any post-employment restrictions or obligations to MATTEL"

17  would impose an undue burden on Mattel.  Mattel does not maintain a log of the

18  statistics that MGA seeks or a list identifying the persons who refused to sign

19  agreements concerning confidentiality, ownership of intellectual property or any

20  post-employment restrictions or obligations to Mattel.  To come up with the

21  statistics and identities, Mattel would have to review the personnel files of all of its

22  employees.  As Mattel has explained to the Discovery Master, the expense of such

23  an undertaking exceeds $600,000.[23]  That burden is not justified here.  Mattel,

24

25

---

26  [23]  See Declaration of Timothy L. Alger Declaration of Timothy L. Alger in
27  Support of Mattel, Inc.'s Motion for Reconsideration of the September 12, 2007
Order Granting in Part and Denying in Part MGA's Motion to Compel Production of
28  (footnote continued)

1  however, does know that Ron Brawer, MGA's Senior Vice President of Sales,

2  refused to sign or acknowledge that he was required to preserve the confidentiality

3  of Mattel's trade secrets when he left Mattel for MGA.

4       Separately, the Topic seeks information that is irrelevant to the claims

5  and defenses at issue in this case.  Mattel has more than 25,000 employees

6  worldwide.[24]  MGA has not, and cannot, show how the "number, percentage, and

7  identity" of those employees and Mattel's thousands of former employees' signature,

8  inadvertent non-signature or refusal to sign certain agreements, many of which are

9  not at issue here, relates to the claims and defenses in this case.  MGA cannot show

10  good cause for obtaining testimony on this Topic because MGA has failed to limit

11  the Topic to the claims and defenses at issue.

12

13  **MGA'S TOPIC NO. 27**

14       The circumstances under which BRYANT testified in September 2003

15  in the lawsuit brought by Gunther Wahl against MATTEL, including when and what

16  any individual, including MATTEL'S in-house and outside counsel with direct or

17  supervisory responsibility for this litigation, knew of BRYANT'S anticipated

18  appearance and testimony and the role that appearance and testimony played in the

19  timing of MATTEL'S lawsuit against BRYANT.

20  **MATTEL'S RESPONSE TO TOPIC NO. 27**

21       In addition to the general objections above, Mattel objects to Topic No.

22  27 as overbroad and unduly burdensome, and not reasonably calculated to lead to

23  the discovery of admissible evidence, including that the circumstances of Bryant's

24

25  Documents, dated September 26, 2007, attached as Exhibit 2 to Mattel's

26  concurrently filed Notice of Lodging, dated January 11, 2008.

27  [24]  Declaration of Erin Bric, dated April 25, 2007, ¶ 3, attached as Exhibit 1 to Mattel's concurrently filed Notice of Lodging, dated January 11, 2008.

28

1 | testimony are irrelevant and his testimony speaks for itself. Mattel further objects to

2 | Topic No. 27 on the grounds that it fails to describe with reasonable particularity the

3 | matters on which examination is requested. Mattel further objects to Topic No. 27

4 | on the grounds that it is premature, unduly burdensome, and harassing in that it calls

5 | for information uniquely known by defendants and by third parties within

6 | defendants' control. Mattel further objects to Topic No. 27 on the grounds that it

7 | calls for the disclosure of information protected by the attorney-client privilege,

8 | work product doctrine and other privileges.

9 | **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NO. 27**

10 |       None.

11 | **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL**

12 |       This Topic seeks plainly privileged information. MGA seeks testimony

13 | regarding "when and what any individual, *including MATTEL's in-house and*

14 | *outside counsel* with direct or supervisory relationship for this litigation, knew of

15 | BRYANT'S anticipated appearance and testimony [in the lawsuit brought by

16 | Gunther Wahl against Mattel]." What Mattel's lawyers knew regarding litigation is

17 | protected by the work product privilege. Moreover, Mattel's knowledge regarding

18 | testimony in litigation is likely to be based substantially on privileged attorney-

19 | client communications. MGA has made no showing of good cause to obtain plainly

20 | privileged testimony.

21 |       Topic No. 27 also seeks information that is not reasonably available to

22 | Mattel. MGA seeks testimony regarding the "circumstances under which *BRYANT*

23 | testified in September 2003." While Mattel may have some, mainly privileged,

24 | information regarding Bryant's testimony in the case, if MGA seeks information

25 | regarding the "circumstances" of Bryant's testimony, Bryant is the witness with the

26 | most knowledge of the subject. Indeed, Bryant is likely the only witness with

27 | knowledge as to many aspects of the circumstances of his testimony. To that extent,

28 | the information is not "reasonably available" to Mattel. See Rule 30(b)(6) (30(b)(6)

1   deponents "shall testify as to matter known or *reasonably available* to the

2   organization." (emphasis added)); <u>see also</u> <u>Helfer v. Marriott Int'l, Inc.</u>, 2007 WL

3   433477, at *6 (E.D. Pa. 2007) (finding that corporation need not produce 30(b)(6)

4   witness on acts of another company because they were not reasonably available to

5   corporation).  MGA has not, and cannot, demonstrate good cause to require *Mattel*

6   to produce a witness on his testimony.  Bryant is an MGA contractor,[25] and a party.

7   MGA can depose him.

8

9   **MGA'S TOPIC NO. 32**

10          YOUR awareness of and response to "BRATZ," including, but not

11   limited to: (a) YOUR reaction to "BRATZ" fashion dolls when they were first

12   released in 2001; (b) when and why YOU first began to consider "BRATZ" a

13   competitive threat to YOUR business; (c) YOUR strategies and efforts to compete

14   with "BRATZ" since its release in 2001, including, but not limited to, (i) the

15   creation, development, and release of "FLAVAS"; (ii) the redesign of "DIVA

16   STARZ"; (iii) the creation, development, and release of "MY SCENE"; (iv) the

17   origin, source, meaning and authenticity of the "Bratz Brief" produced in this

18   ACTION at M 0079765-71; (v) the origin, source, meaning and authenticity of the

19   Wal-Mart Hotline Report produced at M0080622-23; and (vi) the origin, source,

20   meaning and authenticity of the "WWBD: What Would Brawer Do?" document

21   produced at M0047508; (vii) the origin, source,. meaning and authenticity of notes

22   produced at PMH 2273, 2379-83, 1303-07, 2122-27, 2242-59, 2147-49 and any

23   meeting(s) at which these notes were taken; and (viii) the origin, source, meaning

24   and authenticity of Board of Directors Update, dated September 2005, produced at

25   M0093291-93314; and (d) the extent to which "BRATZ" products are present at

26   _____

27   [25]  <u>See</u> Agreement Between MGA and Carter Bryant, dated as of September 18,

28   (footnote continued)

07209/2343782.1

-32-

1 | YOUR offices, including, but not limited to, (i) the current and former MATTEL
2 | employees who have or have had "BRATZ" products in their offices or workspaces;
3 | and (ii) whether or not YOU have a room or area in YOUR offices dedicated to
4 | "BRATZ" products.

5 | **MATTEL'S RESPONSE TO TOPIC NO. 32**

6 |         In addition to the general objections above, Mattel objects to Topic No.
7 | 32 as vague, ambiguous and incomprehensible, especially as to its use of the terms
8 | "awareness of and response to 'BRATZ," "a competitive threat to YOUR business,"
9 | and "strategies and efforts to compete with 'BRATZ.'" Mattel further objects to
10 | Topic No. 32 as overbroad, unduly burdensome, and not reasonably calculated to
11 | lead to the discovery of admissible evidence. Among other things, MGA's
12 | definitions of the terms "YOUR" and "MATTEL" in this context are overbroad in
13 | that they ask for the knowledge of any of the tens of thousands of current or former
14 | employee anywhere at MATTEL. Mattel further objects to Topic No. 32 on the
15 | grounds that it fails to describe with reasonable particularity the matters on which
16 | examination is requested. Mattel further objects to Topic No. 32 on the grounds that
17 | it seeks confidential, proprietary and trade secret information, including such
18 | information that has no bearing on the claims or defenses in this case. Mattel further
19 | objects to Topic No. 32 on the grounds that it calls for the disclosure of information
20 | protected by the attorney-client privilege and work product doctrine. Mattel further
21 | objects to this Topic on the grounds that it is premature in that it seeks to circumvent
22 | the expert disclosure provisions of the Federal and Local Rules. Matters of expert
23 | testimony shall be disclosed at the time and in the manner called for by the Rules
24 | and the Court's Orders.

25 | **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NO. 32**

26 |
27 | 2000, Corey Dec., Exh. 23.
28 |

07209/2343782.1

-33-

1    None.

2    **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL**

3          Topic No. 32 substantially overlaps with the subject matter of Bryant's

4    Topic Nos. 11 and 12, as to which the Discovery Master recently compelled Mattel

5    to produce a witness.[26]  The Discovery Master ordered Mattel to produce a witness

6    regarding the creation and development of "Diva Starz" and "Mini Diva Starz."

7    Thus, to the extent MGA's Topic seeks information related to "Diva Starz" and

8    "Mini Diva Starz," it is duplicative.  While Mattel disagrees with that Order for the

9    reasons set forth in Mattel's Opposition to that Motion, which is incorporated herein

10   by reference (and Mattel reserves all rights in that regard),[27] because MGA will have

11   an opportunity to inquire regarding the congruent compelled Topics in Bryant's

12   Notice, MGA's premature motion for a second bite at the apple should be denied.

13         Topic No. 32 is also duplicative of Bryant's Topic No. 10.  MGA is not

14   entitled to discovery that is duplicative and cumulative.  See Fed. R. Civ. P.

15   26(b)(2)(C); see also CSX Transp., Inc. v. Vela, 2007 WL 3334966, at *3 (S.D. Ind.

16   2007) (denying motion to compel on ground that "a Rule 30(b)(6) deposition on this

17   topic would be unduly cumulative"); Static Control Components, Inc. v. Lexmark

18   Intern., Inc., 2006 WL 3256767, at *5 (E.D. Ky. 2006) (denying defendant's motion

19   to compel, because topics were duplicative of another defendant's previous 30(b)(6)

20   depositions, and because moving defendant was present at those depositions and had

21   an opportunity to ask questions); Cummings v. General Motors Corp., 2002 WL

22   32713320, at *6 (W.D. Okla. 2002) (granting protective order where 30(b)(6) notice

23

24   [26]  See Order Granting in Part and Denying in Part MGA's and Bryant's Joint
25   Motion to Compel re: Mattel's Bandying of 30(b)(6) Witnesses, dated January 11,
     2008., Corey Dec., Exh. 17.
26   [27]  Mattel's Opposition to MGA and Bryant's Joint Motion to Compel re:
27   Mattel's Alleged Bandying of 30(b)(6) Witnesses, dated September 26, 2007, Corey
     Dec., Exh. 22.

28

1  was duplicative of other notices).  Following is a chart comparing MGA's Topic No.

2  32 to Topic Nos. 10 through 12 from Bryant's <u>Rule</u> 30(b)(6) notice:

| **MGA Topic** | **Bryant Topic** |
|---|---|
| YOUR awareness of and response to "BRATZ," including, but not limited to: (a) YOUR reaction to "BRATZ" fashion dolls when they were first released in 2001; (b) when and why YOU first began to consider "BRATZ" a competitive threat to YOUR business; (c) YOUR strategies and efforts to compete with "BRATZ" since its release in 2001, including, but not limited to, (i) the creation, development, and release of "FLAVAS"; (ii) the redesign of "DIVA STARZ"; (iii) the creation, development, and release of "MY SCENE"; (iv) the origin, source, meaning and authenticity of the "Bratz Brief" produced in this ACTION at M 0079765-71; (v) the origin, source, meaning and authenticity of the Wal-Mart Hotline Report produced at M0080622-23; and (vi) the origin, source, meaning and authenticity of the "WWBD: What Would Brawer Do?" document produced at M0047508; (vii) the origin, source,. meaning and | All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "My Scene Barbie" and each of the other "My Scene" characters or dolls. (Topic No. 10).

All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "Diva Starz."  (Topic No. 11).

All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "Mini Diva Starz."  (Topic No. 12). |

1 authenticity of notes produced at PMH
2 2273, 2379-83, 1303-07, 2122-27, 2242-
3 59, 2147-49 and any meeting(s) at which
4 these notes were taken; and (viii) the
5 origin, source, meaning and authenticity
6 of Board of Directors Update, dated
7 September 2005, produced at
8 M0093291-93314; and (d) the extent to
9 which "BRATZ" products are present at
10 YOUR offices, including, but not limited
11 to, (i) the current and former MATTEL
12 employees who have or have had
13 "BRATZ" products in their offices or
14 workspaces; and (ii) whether or not
15 YOU have a room or area in YOUR
16 offices dedicated to "BRATZ" products.

17

18      To the extent this Topic is broader than the compelled Topics from

19 Bryant's Notice, MGA's motion to compel a witness to testify on Topic No. 32

20 should be denied.

21      Topic No. 32 seeks a Mattel witness to testify about Mattel's

22 "awareness of and response to 'BRATZ,'" including all of Mattel's "strategies and

23 efforts to compete with 'Bratz' since its release in 2001." MGA makes no effort to

24 limit this Topic to the claims and defenses in this case. As a product of a

25 competitor, Mattel's "awareness of and response" to Bratz or "strategies and efforts

26 to compete with Bratz" over the past seven years appears in countless

27 communications and documents at Mattel, including those related to research,

28 consumer testing, retail sales, marketing reports and industry analyses. Mattel's

1   "awareness" of and "competition" with Bratz is also reflected in vast quantities of

2   public documents that Mattel collects about its competitors, including catalogs,

3   advertising, press releases and media reports.  In short, Mattel has hundreds of

4   thousands, if not millions of documents that reference Bratz and reflect Mattel's

5   "awareness of and response to" Bratz over the past seven years.[28]

6          It would be impossible to prepare a witness on this Topic.  The

7   Discovery Master rejected MGA's requests for documents "that merely mention

8   MGA, Larian, Bratz or other MGA products, regardless of whether or not they have

9   anything to do with the claims and defenses in the case" are "clearly" and "grossly

10  overbroad."[29]  The same reasoning applies and the same ruling should be made here

11  on Topic No. 32.

12          To the extent MGA is seeking to authenticate documents produced by

13  Mattel, it should do so through requests for admissions, which are a far more

14  efficient and less burdensome means of discovery for such information.

15          This Topic is also defective on its face because it sets forth a generally

16  overbroad subject matter -- "[Mattel's] awareness of and response to 'BRATZ,'" --

17  and then lists more specific items that are "including, but not limited to," the scope

18  of that subject.  Such requests are not proper.  As one court has explained:

19      Although plaintiff has specifically listed the areas of inquiry for which
        a 30(b)(6) designation is sought, she has indicated that the listed areas
20      are not exclusive.  Plaintiff broadens the scope of the designated topics
        by indicating that the areas of inquiry will "includ[e], but not [be]
21      limited to" the areas specifically enumerated.  An overbroad Rule
        30(b)(6) notice subjects the noticed party to an impossible task.  To
22      avoid liability, the noticed party must designate persons knowledgeable
        in the areas of inquiry listed in the notice.  Where, as here, the

23

24
_____

25  [28]   Declaration of Erin Bric, dated April 25, 2007, ¶¶ 7-12, attached as Exhibit 1
    to Mattel's concurrently filed Notice of Lodging, dated January 11, 2008.

26  [29]   Order Granting in Part and Denying in Part MGA's Motion to Compel

27  Documents Responsive to First Set of Requests for Production of Documents, dated
    May 22, 2007, at pp. 17-18.

28

defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.

Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations omitted).

Finally, the presence or non-presence of publicly available Bratz products currently at Mattel is of no moment. Mattel and MGA are competitors. Mattel and MGA each purchase the other's products. That is no indicia of harm or wrong.

**MGA'S TOPIC NO. 39**

To the extent not covered by any of the topics above, the identity of any product, project or concept that YOU contend MGA copied or infringed or about which YOU contend that MGA misappropriated MATTEL's trade secrets or other confidential information, and, for each such product, project or concept, (a) all facts concerning its origin, creation, design and development and (b) any facts underlying YOUR claim or contention that MGA copied or infringed such product, project or concept; and (c) MGA's use of MATTEL'S intellectual property, confidential information or trade secret information in connection therewith.

**MATTEL'S RESPONSE TO TOPIC NO. 39**

In addition to the general objections above, Mattel objects to Topic No. 39 as compound, overbroad and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Among other things, Topic No. 39 purports to require Mattel to produce witnesses to testify as to "all facts concerning [the] origin, creation, design and development" of a whole host of products, many of which were part of line lists or other documents stolen by MGA that list numerous Mattel product lines all at once, and which are otherwise irrelevant to this action. Mattel further objects to Topic No. 39 on the grounds that it fails to describe with reasonable particularity the matters on which examination is requested. Mattel

1  further objects to Topic No. 39 on the grounds that it seeks confidential, proprietary

2  and trade secret information, including such information that has no bearing on the

3  claims or defenses in this case.  Mattel further objects to Topic No. 39 on the

4  grounds that it is an attempt to circumvent the Discovery Master's prior Orders

5  determining the topic is irrelevant and/or an inappropriate and overbroad category of

6  discovery.  Mattel further objects to Topic No. 39 on the grounds that it calls for the

7  disclosure of information protected by the attorney-client privilege and work

8  product doctrine.  Mattel further objects to this Topic on the grounds that it is

9  premature in that it seeks to circumvent the expert disclosure provisions of the

10 Federal and Local Rules.  Matters of expert testimony shall be disclosed at the time

11 and in the manner called for by the Rules and the Court's Orders.

12 **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NO. 39**

13      None.

14 **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL**

15      Topic No. 39 substantially overlaps with the subject matter of Bryant's

16 Topic Nos. 8 and 13, as to which the Discovery Master recently compelled Mattel to

17 produce a witness.[30]  The Discovery Master ordered Mattel to produce a witness

18 regarding any MGA products, including Bratz, which copy any Mattel work or

19 design.  Thus, to the extent MGA's Topic seeks information related to MGA's

20 copying of Mattel products, it is duplicative.  While Mattel disagrees with that Order

21 for the reasons set forth in Mattel's Opposition to that Motion, which is incorporated

22 herein by reference (and Mattel reserves all rights in that regard), because MGA will

23 have an opportunity to inquire regarding the congruent compelled Topics in Bryant's

24 Notice, MGA's premature motion for a second bite at the apple should be denied.

25 

26 [30]  Order Granting in Part and Denying in Part MGA's and Bryant's Joint Motion

27 to Compel re: Mattel's Bandying of 30(b)(6) Witnesses, dated January 11, 2008, Corey Dec., Exh. 17.

28

MGA is not entitled to discovery that is duplicative and cumulative. See Fed. R. Civ. P. 26(b)(2)(C); see also CSX Transp., Inc. v. Vela, 2007 WL 3334966, at *3 (S.D. Ind. 2007) (denying motion to compel on ground that "a Rule 30(b)(6) deposition on this topic would be unduly cumulative"); Static Control Components, Inc. v. Lexmark Intern., Inc., 2006 WL 3256767, at *5 (E.D. Ky. 2006) (denying defendant's motion to compel, because topics were duplicative of another defendant's previous 30(b)(6) depositions, and because moving defendant was present at those depositions and had an opportunity to ask questions); Cummings v. General Motors Corp., 2002 WL 32713320, at *6 (W.D. Okla. 2002) (granting protective order where 30(b)(6) notice was duplicative of other notices). Following is a chart comparing MGA's Topic No. 39 to Topic Nos. 8 and 13 from Bryant's Rule 30(b)(6) notice:

| MGA Topic | Bryant Topic |
| --- | --- |
| To the extent not covered by any of the topics above, the identity of any product, project or concept that YOU contend MGA copied or infringed or about which YOU contend that MGA misappropriated MATTEL's trade secrets or other confidential information, and, for each such product, project or concept, (a) all facts concerning its origin, creation, design and development and (b) any facts underlying YOUR claim or contention that MGA copied or infringed such product, project or concept; and (c) MGA's use of | All acts, omissions, circumstances and/or evidence showing, or tending to show, that any and all products of MGA, including but not limited to, any and all products sold under the trade name "Bratz," originated from, were derived from, are based upon, are copied or incorporated from, or are substantially or confusingly similar to, any design, research and developmental work, work in progress, or product owned at any time by Mattel or created by any Mattel employee, including but not limited to Bryant, or by any independent contractor |

| | |
|---|---|
| MATTEL'S intellectual property, confidential information or trade secret information in connection therewith. | during the time that such Person was working for Mattel.  (Topic No. 8).<br><br>All acts, omissions, circumstances and/or evidence showing, or tending to show, that any product sold at any time by MGA under the trade name "Bratz" originated from, is derived from, is based on, copies, incorporates, or is substantially or confusingly similar to any design or work product owned at any time by Mattel or created by Bryant during the time Bryant was working for Mattel.  (Topic No. 13). |

To the extent this Topic is not duplicative of Topics compelled from Bryant's notice, MGA's motion to compel Mattel to produce a witness on Topic No. 39 should be overruled.

Rule 30(b)(6) requires that a deposition notice "describe with reasonable particularity the matters on which examination is requested."  Topics must be reasonably particularized so that counsel will have some guidance as to which witness would be best and how that witness should be prepared.  See Southern Boston Management Corp. v. BP Prods. North America, Inc., 2006 WL 162916, at *1-2 (S.D.N.Y. 2006) (denying application for additional witnesses for failure to meet Rule 30(b)(6)'s "reasonable particularity" requirement); Innomed Labs, LLC v. Alza Corp., 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (denying motion to compel because 30(b)(6) notice was insufficiently particularized).

1          Here, MGA, while improperly seeking testimony regarding Mattel's

2  contentions, has failed to even identify what "claims or contentions" of Mattel are at

3  issue.  Mattel cannot be expected to prepare a witness in response to a Topic that is

4  not particularly described.

5          Moreover, MGA is not entitled to <u>Rule</u> 30(b)(6) testimony regarding

6  Mattel's contentions.  Courts have routinely recognized that <u>Rule</u> 30(b)(6)

7  depositions are a particularly inefficient and unduly burdensome means for such

8  discovery, which essentially is a form of contention interrogatory.  <u>See, e.g.,</u>

9  <u>SmithKline Beecham Corp. v. Apotex Corp.</u>, 2000 WL 116082, at *9 (N.D. Ill.

10  2000) ("the recipient of a <u>Rule</u> 30(b)(6) request is not required to have its counsel

11  muster all of its factual evidence to prepare a witness to be able to testify regarding a

12  defense or claim"); <u>In re Independent Service Organizations Antitrust Litig.</u>, 168

13  F.R.D. 651, 654 (D. Kan. 1996) (finding <u>Rule</u> 30(b)(6) depositions "highly

14  inefficient and burdensome" means of discovery of a party's "defense or

15  counterclaim"); <u>McCormick-Morgan, Inc. v. Teledyne Indus., Inc.</u>, 134 F.R.D. 275,

16  286-87 (N.D. Cal. 1991) (holding that contention interrogatories were more

17  appropriate means of discovery of evidence relied on by party in support of its

18  claims than <u>Rule</u> 30(b)(6) deposition).  That is especially true in a large complicated

19  case, like this one.

20          Here, MGA seeks testimony regarding Mattel's contentions that MGA

21  "copied or infringed" Mattel products and "misappropriated MATTEL's trade

22  secrets or other confidential information."  As Judge Brazil noted in <u>McCormick-</u>

23  <u>Morgan, Inc.</u>, "no one human being can be expected to set forth, especially orally in

24  deposition, a fully reliable and sufficiently complete account of all the bases for the

25  contentions made and positions taken by a party."  134 F.R.D. at 286.  If MGA is

26  entitled to this information at all, it should obtain it through less burdensome and

27  intrusive forms of discovery such as interrogatories.

28

1    This Topic also seeks information that is not reasonably available to

2  Mattel.  MGA seeks testimony regarding "*MGA's* use of MATTEL's intellectual

3  property, confidential information or trade secret."  Mattel does not have corporate

4  knowledge of MGA's acts.  MGA fraudulently concealed those acts from Mattel.  It

5  would be a waste of the parties' time to have Mattel produce a witness to simply

6  state that Mattel has no corporate knowledge on the Topic.

7    In addition, much of the information Mattel relies on in support of its

8  claims has been obtained from adverse and third parties.  The vast majority of the

9  information is designated "confidential" or "confidential--attorneys' eyes only."

10  Pursuant to the protective order in this case, Mattel cannot provide such information

11  to its employees or witnesses.  The information is thus not "reasonably available" to

12  the corporation.  Mattel cannot produce a corporate witness on this Topic.  See

13  Rule 30(b)(6) (30(b)(6) deponents "shall testify as to matter known or *reasonably*

14  *available* to the organization." (emphasis added)); see also Helfer v. Marriott Int'l,

15  Inc., 2007 WL 433477, at *6 (E.D. Pa. 2007) (finding that corporation need not

16  produce 30(b)(6) witness on acts of another company because they were not

17  reasonably available to corporation).

18

19  **MGA'S TOPIC NO. 70**

20    MATTEL's COMMUNICATIONS internally or to third-parties, or

21  assistance to third parties, concerning claims or potential claims against MGA, or

22  relating to MGA products, either directly or indirectly, including

23  COMMUNICATIONS with Art Attacks Ink, LLC; Hasbro; Toys & Trends (Hong

24  Kong) Limited; Cityworld Limited; Jurg Willi Kesselring; UbiSoft Entertainment,

25  S.A.; and Dyscom Corp. dba FilmBratz Productions and Hans Dys.

26  **MATTEL'S RESPONSE TO TOPIC NO. 70**

27    In addition to the general objections above, Mattel objects to Topic No.

28  70 as vague, ambiguous, and incomprehensible.  Mattel further objects to Topic No.

1  70 as overbroad, unduly burdensome, and not reasonably calculated to lead to the

2  discovery of admissible evidence.  Among other things, Topic No. 70 purports to

3  require Mattel to produce witnesses to testify as to a "MATTEL's

4  COMMUNICATIONS, internally or to third-parties . . . relating to MGA products,"

5  without any limitation as to the products or matters at issue in this litigation, despite

6  the Discovery Master's prior rulings rejecting such overbroad requests.  Mattel

7  further objects to Topic No. 70 on the grounds that it is an attempt to circumvent the

8  Discovery Master's prior Orders determining the topic is irrelevant and/or an

9  inappropriate and overbroad category of discovery.  Mattel further objects to Topic

10 No. 70 on the grounds that it fails to describe with reasonable particularity the

11 matters on which examination is requested.  Mattel further objects to Topic No. 70

12 on the grounds that it seeks confidential, proprietary and trade secret information,

13 including such information that has no bearing on the claims or defenses in this

14 case.  Mattel further objects to Topic No. 70 on the grounds that it calls for the

15 disclosure of information protected by the attorney-client privilege and work

16 product doctrine.  Mattel further objects to this Topic on the grounds that it is

17 premature in that it seeks to circumvent the expert disclosure provisions of the

18 <u>Federal</u> and <u>Local</u> <u>Rules</u>.  Matters of expert testimony shall be disclosed at the time

19 and in the manner called for by the <u>Rules</u> and the Court's Orders.

20 **<u>MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NO. 70</u>**

21        None.

22 **<u>MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL</u>**

23        Topic No. 70 seeks information that is entirely irrelevant to the claims

24 and defenses in this case.  It seeks information regarding third parties' "claims or

25 potential claims against MGA," not the claims at issue here.  MGA has not, and

26 cannot, show good cause for this testimony.

27        This Topic seeks information plainly protected by the attorney-client

28 privilege.  MGA seeks internal Mattel communications regarding "claims or

1  potential claims against MGA."  Naturally, a significant portion of internal

2  communications at Mattel regarding claims or potential claims are with and between

3  Mattel's lawyers and involve legal advice.  MGA's Topic specifically seeks

4  testimony as to such communications.  MGA has not, and cannot, show good cause

5  to obtain that clearly privileged information.

6          Topic No. 70 also seeks information protected by California's litigation

7  privilege, which protects alleged assistance in litigation.  California statutory law

8  makes privileged statements made "in any . . . judicial proceeding."  <u>Cal. Civ. Code</u>

9  § 47(b); <u>see also</u> <u>ITT Telecom Products Corp. v. Dooley</u>, 214 Cal. App. 3d 307,

10  313-14 (1989).  "This privilege is absolute in that it applies regardless of whether a

11  statement was uttered with malice or bad faith."  <u>Id.</u> (quoting <u>Thornton v. Rhoden</u>,

12  245 Cal. App. 2d 80, 93 (1966)).  In <u>ITT Telecom</u>, the court held that statements in

13  litigation made by a non-party consultant "in order to assist ITT's adversary in

14  litigation" were protected by the litigation privilege.  <u>Id.</u> at 315.  Here, any alleged

15  assistance Mattel has provided to MGA's adversaries in *other* lawsuits, is privileged

16  and is not the proper subject of discovery.

17

18  **<u>MGA's Topics Regarding Mattel's Knowledge Regarding Bryant and MGA</u>**

19  **<u>MGA'S TOPIC NO. 11</u>**

20          MATTEL's knowledge or information about the involvement of

21  BRYANT or any person then employed by MATTEL (directly or via a temporary

22  employment agency), in the origin, creation, design or and development of BRATZ,

23  including, but not limited to (a) when MATTEL first learned about BRYANT's

24  involvement with the origin and development of BRATZ; and (b) who at MATTEL

25  knew about the involvement of BRYANT or any person then employed by

26  MATTEL with the origin, creation, design or development of BRATZ, and when

27  and how each individual came to possess such knowledge or information.

28

1  **MATTEL'S RESPONSE TO TOPIC NO. 11**

2        In addition to the general objections above, Mattel objects to Topic No.

3  11 as vague and ambiguous, especially as to its use of the terms "involvement of

4  BRYANT or any person then employed by MATTEL."  Mattel further objects to

5  Topic No. 11 as overbroad and unduly burdensome, and not reasonably calculated to

6  lead to the discovery of admissible evidence.  Among other things, MGA's

7  definition of the term "MATTEL" in this context is overbroad, circular and

8  incomprehensible in that it asks for the knowledge of any current or former

9  employee anywhere at MATTEL, including Bryant himself and others at MGA who

10  were former Mattel employees involved with Bratz such as Paula Garcia.  For this

11  same reason, Mattel further objects to Topic No. 11 on the grounds that it is

12  premature, unduly burdensome, and harassing in that it calls for information

13  uniquely known by defendants and by third parties within defendants' control, but is

14  not known by Mattel at this juncture, including because defendants have refused or

15  failed to produce discovery relating to this Topic, including discovery that the Court

16  has ordered MGA to produce.  Mattel further objects to Topic No. 11 on the grounds

17  that it fails to describe with reasonable particularity the matters on which

18  examination is requested.  Mattel further objects to Topic No. 11 on the grounds that

19  it is duplicative of Topics already designated by Bryant in previous notices of

20  deposition pursuant to Rule 30(b)(6), in which MGA has joined, including Topic

21  Nos. 15-18 from the notice served on December 21, 2004.  Mattel further objects to

22  Topic No. 11 on the grounds that it calls for the disclosure of information protected

23  by the attorney-client privilege, work product doctrine and other privileges.

24  **MGA'S TOPIC NO. 13**

25        MATTEL's knowledge about BRYANT's performance of services for

26  MGA, including, without limitation (a) when and how MATTEL first learned about

27  BRYANT's performance of any services for MGA; (b) when and how MATTEL

28  first learned about the first instance of BRYANT's performance of services for

1  MGA; and (c) who at MATTEL knew about BRYANT's performance of any

2  services for MGA.

3  **MATTEL'S RESPONSE TO TOPIC NO. 13**

4     In addition to the general objections above, Mattel objects to Topic No.

5  13 as vague and ambiguous, especially as to its use of the term "performance of

6  services." Mattel further objects to Topic No. 13 as overbroad and unduly

7  burdensome, and not reasonably calculated to lead to the discovery of admissible

8  evidence. Among other things, MGA's definition of the term "MATTEL" in this

9  context is overbroad, circular and incomprehensible in that it asks for the knowledge

10  of any current or former employee anywhere at MATTEL, including Bryant himself

11  and others at MGA who were former Mattel employees involved with Bratz such as

12  Paula Garcia. For this same reason, Mattel further objects to Topic No. 13 on the

13  grounds that it is premature, unduly burdensome, and harassing in that it calls for

14  information uniquely known by defendants and by third parties within defendants'

15  control, but is not known by Mattel at this juncture, including because defendants

16  have refused or failed to produce discovery relating to this Topic, including

17  discovery that the Court has ordered MGA to produce. Mattel further objects to

18  Topic No. 13 on the grounds that it fails to describe with reasonable particularity the

19  matters on which examination is requested. Mattel further objects to Topic No. 13

20  on the grounds that it is duplicative of Topics already designated by Bryant in

21  previous notices of deposition pursuant to Rule 30(b)(6), in which MGA has joined,

22  including Topic Nos. 15-18 from the notice served on December 21, 2004. Mattel

23  further objects to Topic No. 13 on the grounds that it calls for the disclosure of

24  information protected by the attorney-client privilege, work product doctrine and

25  other privileges.

26  **MGA'S TOPIC NO. 14**

27     MATTEL's knowledge about BRYANT's contacts with MGA,

28  including, without limitation (a) when and how MATTEL first learned of any

07209/2343782.1

-47-

1  contacts BRYANT had with MGA; (b) when and how MATTEL first learned of the

2  first contact BRYANT had with MGA; and (c) who at MATTEL knew about

3  BRYANT's contacts with MGA.

4  **MATTEL'S RESPONSE TO TOPIC NO. 14**

5        In addition to the general objections above, Mattel objects to Topic No.

6  14 as vague and ambiguous, especially as to its use of the term "contacts with

7  MGA." Mattel further objects to Topic No. 14 as overbroad and unduly

8  burdensome, and not reasonably calculated to lead to the discovery of admissible

9  evidence. Among other things, the request is not limited as to any specific time, and

10  MGA's definition of the term "MATTEL" in this context is overbroad, circular and

11  incomprehensible in that it asks for the knowledge of any current or former

12  employee anywhere at MATTEL, including Bryant himself and others at MGA who

13  were former Mattel employees involved with Bratz such as Paula Garcia. For this

14  same reason, Mattel further objects to Topic No. 14 on the grounds that it is

15  premature, unduly burdensome, and harassing in that it calls for information

16  uniquely known by defendants and by third parties within defendants' control, but is

17  not known by Mattel at this juncture, including because defendants have refused or

18  failed to produce discovery relating to this Topic, including discovery that the Court

19  has ordered MGA to produce. Mattel further objects to Topic No. 14 on the grounds

20  that it fails to describe with reasonable particularity the matters on which

21  examination is requested. Mattel further objects to Topic No. 14 on the grounds that

22  it is duplicative of Topics already designated by Bryant in previous notices of

23  deposition pursuant to Rule 30(b)(6), in which MGA has joined, including Topic

24  Nos. 15-18 from the notice served on December 21, 2004. Mattel further objects to

25  this Topic on the grounds that it is premature in that it seeks to circumvent the

26  expert disclosure provisions of the Federal and Local Rules. Matters of expert

27  testimony shall be disclosed at the time and in the manner called for by the Rules

28  and the Court's Orders. Mattel further objects to Topic No. 14 on the grounds that it

1  calls for the disclosure of information protected by the attorney-client privilege and

2  work product doctrine.

3  **MGA'S TOPIC NO. 15**

4              MATTEL's knowledge of BRYANT's contract with MGA, including

5  without limitation (a) when, how and who at MATTEL first became aware of its

6  existence; (b) when MATTEL first became aware of its terms; and (c) when

7  MATTEL or its agents first obtained a copy of the contract.

8  **MATTEL'S RESPONSE TO TOPIC NO. 15**

9              In addition to the general objections above, Mattel objects to Topic No.

10  15 as vague and ambiguous, especially as to its use of the term "BRYANT's contract

11  with MGA." Mattel further objects to Topic No. 15 as overbroad and unduly

12  burdensome, and not reasonably calculated to lead to the discovery of admissible

13  evidence. Among other things, MGA's definition of the term "MATTEL" in this

14  context is overbroad, circular and incomprehensible in that it asks for the knowledge

15  of any current or former employee anywhere at MATTEL, including Bryant himself

16  and others at MGA who were former Mattel employees involved with Bratz such as

17  Paula Garcia. For this same reason, Mattel further objects to Topic No. 15 on the

18  grounds that it is premature, unduly burdensome, and harassing in that it calls for

19  information uniquely known by defendants and by third parties within defendants'

20  control, but is not known by Mattel at this juncture, including because defendants

21  have refused or failed to produce discovery relating to this Topic, including

22  discovery that the Court has ordered MGA to produce. Mattel further objects to

23  Topic No. 15 on the grounds that it fails to describe with reasonable particularity the

24  matters on which examination is requested. Mattel further objects to Topic No. 15

25  on the grounds that it is duplicative of Topics already designated by Bryant in

26  previous notices of deposition pursuant to Rule 30(b)(6), in which MGA has joined,

27  including Topic Nos. 15-18 from the notice served on December 21, 2004. Mattel

28  further objects to Topic No. 15 on the grounds that it calls for the disclosure of

1   information protected by the attorney-client privilege and work product doctrine.

2   Mattel further objects to this Topic on the grounds that it is premature in that it seeks

3   to circumvent the expert disclosure provisions of the <u>Federal</u> and <u>Local</u> <u>Rules</u>.

4   Matters of expert testimony shall be disclosed at the time and in the manner called

5   for by the <u>Rules</u> and the Court's Orders.

6   **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NOS. 11, 13,**

7   **14 AND 15**

8          None.

9   **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL TOPIC NOS.**

10  **11, 13, 14 AND 15**

11          Topic Nos. 11, 13, 14 and 15 are substantially identical to the subject

12  matter of Bryant's Topic Nos. 15 through 18, as to which the Discovery Master

13  recently compelled Mattel to produce a witness.[31]  While Mattel disagrees with that

14  Order for the reasons set forth in Mattel's Opposition to that Motion, which is

15  incorporated herein by reference (and Mattel reserves all rights in that regard),

16  because MGA will have an opportunity to inquire regarding the congruent

17  compelled Topics in Bryant's Notice, MGA's premature motion for a second bite at

18  the apple should be denied.

19          MGA is not entitled to discovery that is duplicative and cumulative.

20  <u>See</u> <u>Fed. R. Civ. P.</u> 26(b)(2)(C); <u>see also</u> <u>CSX Transp., Inc. v. Vela</u>, 2007 WL

21  3334966, at *3 (S.D. Ind. 2007) (denying motion to compel on ground that "a <u>Rule</u>

22  <u>30(b)(6)</u> deposition on this topic would be unduly cumulative"); <u>Static Control</u>

23  <u>Components, Inc. v. Lexmark Intern., Inc.</u>, 2006 WL 3256767, at *5 (E.D. Ky.

24  2006) (denying defendant's motion to compel, because topics were duplicative of

25  _____

26  [31]   Order Regarding MGA and Carter Bryant's Joint Motion to Overrule Mattel's
27  Relevance Objections and Compel Discovery Relevant to Statute of Limitations and
    Laches Defenses, dated January 9, 2008, Corey Dec., Exh. 21.

28

07209/2343782.1

MATTEL'S SEPARATE STATEMENT IN OPPOSITION TO MGA'S MOTION TO COMPEL

1  another defendant's previous 30(b)(6) depositions, and because moving defendant

2  was present at those depositions and had an opportunity to ask questions);

3  Cummings v. General Motors Corp., 2002 WL 32713320, at *6 (W.D. Okla. 2002)

4  (granting protective order where 30(b)(6) notice was duplicative of other notices).

5  Following is a chart comparing MGA's Topic Nos. 11, 13, 14 and 15 to Topic Nos.

6  15 through 18 from Bryant's Rule 30(b)(6) notice:

| MGA Topic | Bryant Topic |
|---|---|
| MATTEL's knowledge or information about the involvement of BRYANT or any person then employed by MATTEL (directly or via a temporary employment agency), in the origin, creation, design or and development of BRATZ, including, but not limited to (a) when MATTEL first learned about BRYANT's involvement with the origin and development of BRATZ; and (b) who at MATTEL knew about the involvement of BRYANT or any person then employed by MATTEL with the origin, creation, design or development of BRATZ, and when and how each individual came to possess such knowledge or information. (Topic No. 11).<br><br>MATTEL's knowledge about | All acts, omissions, circumstances and/or evidence showing, or tending to show, when Mattel first became aware of any alleged wrongful conduct of Bryant. (Topic No. 15).<br><br>All acts, omissions, circumstances and/or evidence showing, or tending to show, the manner and mode by which Mattel first became aware of any alleged wrongful conduct of Bryant. (Topic No. 16).<br><br>All acts, omissions, circumstances and/or evidence showing, or tending to show, when You first became aware that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz. (Topic No. 17). |

MATTEL'S SEPARATE STATEMENT IN OPPOSITION TO MGA'S MOTION TO COMPEL

| | |
|---|---|
| 1  BRYANT's performance of services for | All acts, omissions, circumstances and/or |
| 2  MGA, including, without limitation (a) | evidence showing, or tending to show, |
| 3  when and how MATTEL first learned | how You first became aware that Bryant |
| 4  about BRYANT's performance of any | was involved in the conception, creation, |
| 5  services for MGA; (b) when and how | design and/or reduction to practice of |
| 6  MATTEL first learned about the first | Bratz.  (Topic No. 18). |
| 7  instance of BRYANT's performance of | |
| 8  services for MGA; and (c) who at | |
| 9  MATTEL knew about BRYANT's | |
| 10  performance of any services for MGA. | |
| 11  (Topic No. 13). | |
| 12 | |
| 13  MATTEL's knowledge about | |
| 14  BRYANT's contacts with MGA, | |
| 15  including, without limitation (a) when | |
| 16  and how MATTEL first learned of any | |
| 17  contacts BRYANT had with MGA; (b) | |
| 18  when and how MATTEL first learned of | |
| 19  the first contact BRYANT had with | |
| 20  MGA; and (c) who at MATTEL knew | |
| 21  about BRYANT's contacts with MGA. | |
| 22  (Topic No. 14). | |
| 23 | |
| 24  MATTEL's knowledge of BRYANT's | |
| 25  contract with MGA, including without | |
| 26  limitation (a) when, how and who at | |
| 27  MATTEL first became aware of its | |
| 28 | |

MATTEL'S SEPARATE STATEMENT IN OPPOSITION TO MGA'S MOTION TO COMPEL

| | |
|---|---|
| existence; (b) when MATTEL first became aware of its terms; and (c) when MATTEL or its agents first obtained a copy of the contract.  (Topic No. 15). | |

Topic Nos. 11, 13, 14 and 15 are also overbroad and seek irrelevant information.  They request testimony regarding (1) "MATTEL's knowledge or information about the involvement of BRYANT or any person then employed by MATTEL . . . in the origin, creation, design or and development of BRATZ;" (2) "MATTEL's knowledge about BRYANT's performance of services for MGA;"  (3) "MATTEL's knowledge about BRYANT's contacts with MGA;" and (4) "MATTEL's knowledge of BRYANT's contract with MGA."  Mere knowledge that Bryant worked for MGA or worked on Bratz is not relevant to any of the claims or defenses in this action.

In contrast, Mattel's knowledge regarding Bryant's work for MGA *while he was a Mattel employee*, is crucial.  These Topics, however, encompass far more information about Bryant's work for MGA or on Bratz.  It would require Mattel to prepare a witness to provide testimony regarding any manner of things that Mattel may have learned about Bryant's work for MGA or work on Bratz well after he left Mattel.  MGA cannot show good cause for obtaining testimony on these Topics because MGA has failed to limit the Topics to the claims and defenses at issue in this case.

Unlike Bryant's Topics, MGA's Topic Nos. 11, 13, 14, and 15 are defective on their face because they set forth a generally overbroad subject matter (e.g., "MATTEL's knowledge or information about the involvement of BRYANT or any person then employed by MATTEL . . . in the origin, creation, design or and development of BRATZ") and then list more specific items that are "included, but

1  not limited to," the scope of that subject.  Such requests are not proper.  As one

2  court has explained:

> Although plaintiff has specifically listed the areas of inquiry for which a 30(b)(6) designation is sought, she has indicated that the listed areas are not exclusive.  Plaintiff broadens the scope of the designated topics by indicating that the areas of inquiry will "includ[e], but not [be] limited to" the areas specifically enumerated.  An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task.  To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice.  Where, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.

Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations omitted).

Finally, most, if not all of the communications on which MGA seeks evidence fall into the same category as Mattel's topic seeking communications between MGA and Elise Cloonan, which the Discovery Master found sufficiently irrelevant that the burden of producing a witness outweighed the relevance of the information.[32]  The Motion should be denied.

### MGA's Topics Regarding Bryant's Relationships

## MGA'S TOPIC NO. 19

BRYANT's relationship or contacts with TREANTAFELLES during the time they were both employed at MATTEL, including, but not limited to: (a) YOUR knowledge of whether BRYANT's workspace was next to or near TREANTAFELLES' workspace, and, if so, exactly when and for how long; (b) YOUR knowledge of whether BRYANT and TREANTAFELLES worked together on any projects for MATTEL and, if so, during what time period(s) and specific projects; (c) YOUR knowledge of whether BRYANT and TREANTAFELLES were social acquaintances and, if so, during what time

---

[32]  See Order Granting in Part and Denying in Part Mattel's Motion to Enforce Court's Discovery Orders and to Compel; to Overrule Purportedly Improper
(footnote continued)

1  period(s); and (d) any evidence that supports YOUR contention that BRYANT and

2  TREANTAFELLES knew each other during the time they were both employed at

3  MATTEL (including, but not limited to, that they had workspaces near or next to

4  each other, worked on projects together, and/or were social acquaintances),

5  including, but not limited to, any documentary evidence and potential witnesses.

6  **MATTEL'S RESPONSE TO TOPIC NO. 19**

7         In addition to the general objections above, Mattel objects to Topic No.

8  19 as vague and ambiguous, especially as to its use of the terms "relationship or

9  contacts," and "social acquaintances." Mattel further objects to Topic No. 19 as

10  overbroad and unduly burdensome, and not reasonably calculated to lead to the

11  discovery of admissible evidence. In particular, MGA's definitions of the terms

12  "YOUR" and "MATTEL" in this context are overbroad, circular and

13  incomprehensible in that they ask for the knowledge of any current or former

14  employee anywhere at MATTEL, including Bryant himself and others at MGA who

15  were former Mattel employees involved with Bratz such as Paula Garcia. Mattel

16  further objects to Topic No. 19 on the grounds that it is premature, unduly

17  burdensome, and harassing in that it calls for information uniquely known by

18  defendants and by third parties within defendants' control, but is not known by

19  Mattel at this juncture, including because defendants have refused or failed to

20  produce discovery relating to this Topic, including discovery that the Court has

21  ordered MGA to produce. Mattel further objects to Topic No. 19 on the grounds

22  that it fails to describe with reasonable particularity the matters on which

23  examination is requested. Mattel further objects to Topic No. 19 on the grounds that

24  it is premature, unduly burdensome, and harassing in that it calls for information

25  uniquely known by defendants and by third parties within defendants' control, but is

26  _____

27  Instructions; and for Sanctions, at 12-13, dated January 8, 2008, Corey Dec., Exh.

28     (footnote continued)

1  not known by Mattel at this juncture, including because defendants have concealed

2  their conduct from Mattel and because defendants have refused or failed to produce

3  discovery relating to this Topic, including discovery that the Court has ordered

4  MGA to produce.  Mattel further objects to Topic No. 19 on the grounds that it

5  purports to require Mattel to produce witnesses to marshal "evidence" in this case

6  and therefore seeks to impose upon Mattel burdens not permitted by the <u>Rules</u>.

7  Mattel further objects to Topic No. 19 on the grounds that it calls for the disclosure

8  of information protected by the attorney-client privilege, work product doctrine and

9  other privileges.

10  **MGA'S TOPIC NO. 20**

11         The floor plan and seating chart for MATTEL's offices in El Segundo,

12  California in 1999 and 2000, specifically the Design Center and the work spaces of

13  BRYANT, including the origin, source, authenticity, meaning and use of

14  DOCUMENTS produced by MATTEL as M13361-M13368, including M13365A,

15  and the physical proximity of the work spaces of BRYANT and other MATTEL

16  current or former employees, contract workers or PERSONS working for or at

17  MATTEL, including without limitation TREANTAFELLES, Rene Pasko, Lily

18  Martinez, Kislap Ongchangko, Joni Pratt, Barbara Miller, Maureen Mullen and any

19  other PERSON MATTEL claims had confidential information accessed by Bryant

20  or MGA (including any current or former employees who were employees, contract

21  workers or vendors of MATTEL at the relevant time).

22  **MATTEL'S RESPONSE TO TOPIC NO. 20**

23         In addition to the general objections above, Mattel objects to Topic No.

24  20 as overbroad, unduly burdensome, and not reasonably calculated to lead to the

25  discovery of admissible evidence.  Mattel further objects to Topic No. 20 on the

26  

27  33.

28

1  grounds that it fails to describe with reasonable particularity the matters on which

2  examination is requested.  Mattel further objects to Topic No. 20 on the grounds that

3  it is premature, unduly burdensome, and harassing in that it calls for information

4  uniquely known by defendants and by third parties within defendants' control, but is

5  not known by Mattel at this juncture, including because defendants have refused or

6  failed to produce discovery relating to this Topic, including discovery that the Court

7  has ordered MGA to produce.  Mattel further objects to Topic No. 20 on the grounds

8  that it calls for the disclosure of information protected by the attorney-client

9  privilege, work product doctrine and other privileges.

10  **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NOS. 19**

11  **AND 20**

12          None.

13  **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL TOPIC NOS.**

14  **19 AND 20**

15          Topic Nos. 19 and 20 seeks information that is not reasonably available

16  to Mattel.  MGA seeks testimony regarding "BRYANT's relationship or contacts

17  with TREANTAFELLES during the time they were both employed at MATTEL."

18  Mattel does not have corporate knowledge of Carter Bryant's "relationship" with

19  Paula Treatafelles, or any other individuals.  Mattel does not monitor its employees'

20  personal relationships.  The information is thus not "reasonably available" to Mattel.

21  See Rule 30(b)(6) (30(b)(6) deponents "shall testify as to matter known or

22  *reasonably available* to the organization." (emphasis added)); see also Helfer v.

23  Marriott Int'l, Inc., 2007 WL 433477, at *6 (E.D. Pa. 2007) (finding that corporation

24  need not produce 30(b)(6) witness on acts of another company because they were

25  not reasonably available to corporation).  If MGA seeks information regarding the

26  relationship between Bryant and Treantafelles it should seek it from them.  MGA

27  has not, and cannot, demonstrate good cause to require *Mattel* to produce a witness

28

07209/2343782.1

-57-

MATTEL'S SEPARATE STATEMENT IN OPPOSITION TO MGA'S MOTION TO COMPEL

1    on their relationship.  Treantafelles is an MGA employee.[33]  Bryant is an MGA

2    contractor,[34] and a party.  MGA can depose him.

3            Moreover, MGA is not entitled to Rule 30(b)(6) testimony regarding

4    Mattel's contentions.  Courts have routinely recognized that Rule 30(b)(6)

5    depositions are a particularly inefficient and unduly burdensome means for such

6    discovery, which essentially is a form of contention interrogatory.  See, e.g.,

7    SmithKline Beecham Corp. v. Apotex Corp., 2000 WL 116082, at *9 (N.D. Ill.

8    2000) ("the recipient of a Rule 30(b)(6) request is not required to have its counsel

9    muster all of its factual evidence to prepare a witness to be able to testify regarding a

10   defense or claim"); In re Independent Service Organizations Antitrust Litig., 168

11   F.R.D. 651, 654 (D. Kan. 1996) (finding Rule 30(b)(6) depositions "highly

12   inefficient and burdensome" means of discovery of a party's "defense or

13   counterclaim"); McCormick-Morgan, Inc. v. Teledyne Indus., Inc., 134 F.R.D. 275,

14   286-87 (N.D. Cal. 1991) (holding that contention interrogatories were more

15   appropriate means of discovery of evidence relied on by party in support of its

16   claims than Rule 30(b)(6) deposition).  That is especially true in a large complicated

17   case, like this one.

18           Here, to the extent MGA seeks testimony regarding "any evidence that

19   supports [Mattel's] contention that BRYANT and TREANTAFELLES knew each

20   other during the time they were both employed at MATTEL (including, but not

21   limited to, that they had workspaces near or next to each other, worked on projects

22   together, and/or were social acquaintances), including, but not limited to, any

23   documentary evidence and potential witnesses," MGA is improperly seeking

24   testimony regarding Mattel's contentions through Rule 30(b)(6) testimony.  As

25   _____

26   [33]  Garcia Depo. Tr. at 24:24-25:1, Corey Dec., Exh. 24.

27   [34]  Agreement Between MGA and Carter Bryant, dated as of September 18,
     2000, Corey Dec., Exh. 23.

28

Judge Brazil noted in <u>McCormick-Morgan, Inc.</u>, "no one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by a party." 134 F.R.D. at 286. If MGA is entitled to this information at all, it should obtain it through less burdensome and intrusive forms of discovery such as interrogatories.

Topic No. 19 is also defective on its face because it sets forth a generally overbroad subject matter -- "BRYANT's relationship or contacts with TREANTAFELLES during the time they were both employed at MATTEL" -- and then lists more specific items that are "including, but not limited to," the scope of that subject. Such requests are not proper. As one court has explained:

> Although plaintiff has specifically listed the areas of inquiry for which a 30(b)(6) designation is sought, she has indicated that the listed areas are not exclusive. Plaintiff broadens the scope of the designated topics by indicating that the areas of inquiry will "includ[e], but not [be] limited to" the areas specifically enumerated. An overbroad <u>Rule</u> 30(b)(6) notice subjects the noticed party to an impossible task. To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice. Where, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.

<u>Reed v. Bennett</u>, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations omitted).

### MGA's Topics Regarding Mattel's Sales and Revenues

### MGA'S TOPIC NO. 8

Any injury or damages suffered by MATTEL resulting from the acts alleged in MATTEL's COUNTERCLAIMS.

### MATTEL'S RESPONSE TO TOPIC NO. 8

In addition to the general objections above, Mattel objects to Topic No. 8 as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Mattel further objects to Topic No. 8 on the grounds that it fails to describe with reasonable particularity the matters on which

1  examination is requested. Mattel further objects to Topic No. 8 on the grounds that

2  it calls for the disclosure of information protected by the attorney-client privilege

3  and work product doctrine, including without limitation the privileges afforded

4  consulting experts. Mattel further objects to Topic No. 8 on the grounds that it is

5  premature in that it seeks to circumvent the Court's <u>Rules</u> and Orders governing the

6  timing, manner and sequence of expert disclosures. Matters of expert testimony

7  shall be disclosed at the time and in the manner called for by the <u>Rules</u> and the

8  Court's Orders.

9  **MGA'S TOPIC NO. 28**

10         The identity of, and the sales, revenues, and profits of, any MATTEL

11  product(s) MATTEL contends have been impacted by BRATZ, including, but not

12  limited to, BARBIE, DIVA STARZ, FLAVAS and MY SCENE, and any

13  accessories, and licensed products, from 1990 to the present.

14  **MATTEL'S RESPONSE TO TOPIC NO. 28**

15         In addition to the general objections above, Mattel objects to Topic No.

16  28 as vague and ambiguous, including in its use of the term "impacted." Mattel

17  further objects to this Topic as overbroad, unduly burdensome, and not reasonably

18  calculated to lead to the discovery of admissible evidence. Among other things,

19  Topic No. 28 purports to require Mattel to produce witnesses to testify as to "sales,

20  revenues, and profits" for many thousands of products, including "accessories" and

21  "licensed products," spanning an 18-year period that bears no rational connection to

22  the issues in this suit and appears to have been propounded only to harass. Mattel

23  further objects to Topic No. 28 on the grounds that it fails to describe with

24  reasonable particularity the matters on which examination is requested. Mattel

25  further objects to Topic No. 28 on the grounds that it calls for the disclosure of

26  information protected by the attorney-client privilege and work product doctrine and

27  the privileges afforded consulting experts. Mattel further objects to Topic No. 28 on

28  the grounds that it is premature in that it seeks to circumvent the Court's <u>Rules</u> and

1  Orders governing the timing, manner and sequence of expert disclosures.  Matters of

2  expert testimony shall be disclosed at the time and in the manner called for by the

3  Rules and the Court's Orders.

4  **MGA'S TOPIC NO. 29**

5  　　　　The impact BRATZ has had, if any, on the sales and sales revenues of

6  any Mattel product(s), including but not limited to BARBIE, DIVA STARZ,

7  FLAVAS, any accessories and licensed products, and any product not listed herein

8  that Mattel claims have been impacted by BRATZ.

9  **MATTEL'S RESPONSE TO TOPIC NO. 29**

10  　　　　In addition to the general objections above, Mattel objects to Topic No.

11  29 as overbroad, unduly burdensome, and not reasonably calculated to lead to the

12  discovery of admissible evidence.  Among other things, Topic No. 29 purports to

13  require Mattel to produce witnesses to testify as to "sales and sales revenues" of

14  many thousands of products that have no relevance to this suit and spanning an 18-

15  year period that bears no rational connection to the issues in this suit and appears to

16  have been propounded only to harass.  Mattel further objects to Topic No. 29 on the

17  grounds that it fails to describe with reasonable particularity the matters on which

18  examination is requested.  Mattel further objects to Topic No. 29 on the grounds that

19  it is duplicative of Topics already designated by Bryant in previous notices of

20  deposition pursuant to Rule 30(b)(6), in which MGA has joined, including Topic

21  No. 14 from the notice served on December 21, 2004.  Mattel further objects to

22  Topic No. 29 on the grounds that it calls for the disclosure of information protected

23  by the attorney-client privilege and work product doctrine and the privileges

24  afforded consulting experts.  Mattel further objects to Topic No. 29 on the grounds

25  that it seeks to circumvent prior Court rulings and is premature in that it seeks to

26  circumvent the Court's Rules and Orders governing the timing, manner and

27  sequence of expert disclosures.  Matters of expert testimony shall be disclosed at the

28  time and in the manner called for by the Rules and the Court's Orders.

**MGA'S TOPIC NO. 30**

The net worth or value of MATTEL'S "BARBIE" brand, including, but not limited to, its "My Scene" "Barbie" line of products, from 1990 to the present.

**MATTEL'S RESPONSE TO TOPIC NO. 30**

In addition to the general objections above, Mattel objects to Topic No. 30 as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Among other things, Topic No. 30 purports to require Mattel to produce witnesses to testify as to the "net worth or value of MATTEL's 'BARBIE' brand, including but not limited to, its 'My Scene' 'Barbie' line of products," spanning an 18-year period that bears no rational relationship to the issues in this suit and despite the fact that the BARBIE brand includes a wide variety of fashion dolls and accessories, most of which are irrelevant to this case. Mattel further objects to Topic No. 30 on the grounds that it fails to describe with reasonable particularity the matters on which examination is requested. Mattel further objects to Topic No. 30 on the grounds that it calls for the disclosure of information protected by the attorney-client privilege and work product doctrine and the privileges afforded consulting experts. Mattel further objects to Topic No. 30 on the grounds that it seeks confidential, proprietary and trade secret information, including such information that has no bearing on the claims or defenses in this case.

**MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NOS 8, 28, 29 AND 30**

None.

**MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL TOPIC NOS. 8, 28 AND 29**

Topic Nos. 8, 28, 29 and 30 seek information related to Mattel's damages, including sales and revenues of Mattel's products.

MATTEL'S SEPARATE STATEMENT IN OPPOSITION TO MGA'S MOTION TO COMPEL

1     MGA is not entitled to Rule 30(b)(6) testimony regarding Mattel's

2     contentions.  Courts have routinely recognized that Rule 30(b)(6) depositions are a

3     particularly inefficient and unduly burdensome means for such discovery, which

4     essentially is a form of contention interrogatory.  See, e.g., SmithKline Beecham

5     Corp. v. Apotex Corp., 2000 WL 116082, at *9 (N.D. Ill. 2000) ("the recipient of a

6     Rule 30(b)(6) request is not required to have its counsel muster all of its factual

7     evidence to prepare a witness to be able to testify regarding a defense or claim"); In

8     re Independent Service Organizations Antitrust Litig., 168 F.R.D. 651, 654 (D. Kan.

9     1996) (finding Rule 30(b)(6) depositions "highly inefficient and burdensome"

10    means of discovery of a party's "defense or counterclaim"); McCormick-Morgan,

11    Inc. v. Teledyne Indus., Inc., 134 F.R.D. 275, 286-87 (N.D. Cal. 1991) (holding that

12    contention interrogatories were more appropriate means of discovery of evidence

13    relied on by party in support of its claims than Rule 30(b)(6) deposition).  That is

14    especially true in a large complicated case, like this one.

15          Here, MGA seeks information regarding the basis for Mattel's

16    contention that it has suffered injury and damages from the acts alleged in Mattel's

17    counterclaim.  As Judge Brazil noted in McCormick-Morgan, Inc., "no one human

18    being can be expected to set forth, especially orally in deposition, a fully reliable

19    and sufficiently complete account of all the bases for the contentions made and

20    positions taken by a party." 134 F.R.D. at 286.  If MGA is entitled to this

21    information at all, it should obtain it through less burdensome and intrusive forms of

22    discovery such as interrogatories.

23          In addition, Topic No. 28 requests testimony regarding "sales,

24    revenues, and profits" for many thousands of Mattel products over an 18-year

25    period.  Topic No. 29 requests testimony regarding "the impact BRATZ has had, if

26    any, on the sales and sales revenues of any Mattel product."  Mattel sells over

27

28

10,000 different types of toys and dolls in more than 150 nations throughout the world.[35]  Mattel should not be required to prepare a witness as to "sales, revenues, and profits" for those thousands of products.  MGA cannot show good cause for obtaining testimony on this Topic.  See Google, Inc. v. Am. Blind & Wallpaper Factory, Inc., 2006 WL 2318803, at *3 (N.D. Cal. 2006) ("[d]eponents under Rule 30(b)(6) must be prepared and knowledgeable, but they need not be subjected to a 'memory contest.'") (quoting Alexander v. Federal Bureau of Investigation, 186 F.R.D. 137, 143 (D.D.C. 1998)).

Topic Nos. 8, 28, 29 and 30 also seek expert testimony regarding the financial impact Bratz has had on Mattel's products.  It is not proper to seek premature expert testimony through a Rule 30(b)(6) deposition.  The Court's Rules and Orders govern the timing, manner and sequence of expert disclosures.  Mattel will provide its expert disclosure pursuant to that schedule.

Topic No. 30 seeks information that is entirely irrelevant to the claims and defenses in this case.  The "net worth or value" of Mattel's Barbie brand has no connection to the claims and defenses at issue in this case.  It is difficult to see what purpose other than to harass, MGA could possibly have in obtaining the "net worth or value" of Barbie spanning the last 18 years.  MGA has not, and cannot, show good cause for this testimony.  That is especially true here, where MGA acknowledges it "is only seeking testimony relating to Phase I topics."[36]  There is simply no basis for discovery into Barbie's net worth in Phase I.  If Mattel elects to rely on Barbie's net worth to show damages in Phase II of the case, then it will produce someone to address the factual basis for such damages after the Phase I trial.

---

[35]  Declaration of Erin Bric, dated April 25, 2007, ¶ 2, attached as Exhibit 1 to Mattel's concurrently filed Notice of Lodging, dated January 11, 2008.

[36]  MGA's Motion, at p. 4.

1    Moreover, MGA makes no effort to explain the relevance of the value

2 of Barbie from 1990 to 2001.  Even if Mattel elects to rely on Barbie's net worth to

3 show damages in Phase II, MGA has not and cannot show good cause for testimony

4 regarding the value of Barbie pre-Bratz.

5    These Topics are also defective on their face because they set forth a

6 generally overbroad subject matter (e.g., "[t]he identity of, and the sales, revenues,

7 and profits of, any MATTEL product(s) MATTEL contends have been impacted by

8 BRATZ") and then list more specific items that are "including, but not limited to,"

9 the scope of that subject.  Such requests are not proper.  As one court has explained:

10    Although plaintiff has specifically listed the areas of inquiry for which
         a 30(b)(6) designation is sought, she has indicated that the listed areas
11       are not exclusive.  Plaintiff broadens the scope of the designated topics
         by indicating that the areas of inquiry will "includ[e], but not [be]
12       limited to" the areas specifically enumerated.  An overbroad Rule
         30(b)(6) notice subjects the noticed party to an impossible task.  To
13       avoid liability, the noticed party must designate persons knowledgeable
         in the areas of inquiry listed in the notice.  Where, as here, the
14       defendant cannot identify the outer limits of the areas of inquiry
         noticed, compliant designation is not feasible.

15

16 Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations omitted).

17

18 **MGA's Topics Regarding Legal Actions Involving Mattel Products**

19 **MGA'S TOPIC NO. 42**

20    Legal actions and claims regarding "MY SCENE" and/or "DIVA

21 STARZ," including, without limitation, any lawsuits, claims, or cease and desist

22 letters that (a) YOU have asserted against any PERSON regarding such PERSON's

23 alleged infringement of "MY SCENE" or "DIVA STARZ" or (b) any PERSON has

24 asserted against YOU that "MY SCENE" or "DIVA STARZ" infringes such

25 PERSON's intellectual property rights.

26 **MATTEL'S RESPONSE TO TOPIC NO. 42**

27    In addition to the general objections above, Mattel objects to Topic No.

28 42 as overbroad, unduly burdensome, and not reasonably calculated to lead to the

1  discovery of admissible evidence.  Among other things, "DIVA STARZ" and "MY

2  SCENE" consist of numerous products and elements that are completely irrelevant

3  to this action.  Mattel further objects to Topic No. 42 on the grounds that it fails to

4  describe with reasonable particularity the matters on which examination is

5  requested, including in that it fails to identify any particular aspect of the "[l]egal

6  actions and claims" on which testimony is sought.  Mattel further objects to Topic

7  No. 42 on the grounds that it calls for the disclosure of information protected by the

8  attorney-client privilege, work product doctrine and other privileges.

9  **MGA'S TOPIC NO. 47**

10          Other than those previously filed and served in this ACTION or in

11  which MGA's counsel in this ACTION was in attendance, the testimony, transcripts,

12  declarations, affidavits and other sworn written statements of any other type by or

13  from YOU or made on YOUR behalf that REFER or RELATE TO DIVA STARZ,

14  MY SCENE, FLAVAS, and BARBIE that REFER OR RELATE TO the

15  RELEVANT TIME PERIOD (regardless of when such testimony or sworn

16  statement was taken, given, signed, made or filed).

17  **MATTEL'S RESPONSE TO TOPIC NO. 47**

18          In addition to the general objections above, Mattel objects to Topic No.

19  47 as vague and ambiguous, especially as to its use of the term "on YOUR behalf."

20  Mattel further objects to Topic No. 47 as overbroad, unduly burdensome, and not

21  reasonably calculated to lead to the discovery of admissible evidence.  Among other

22  things, Topic No. 47 purports to require Mattel to produce witnesses to testify as to

23  sworn statements regarding DIVA STARZ, MY SCENE, FLAVAS, and BARBIE

24  over the course of the last decade, despite the fact that each of these brands include a

25  large line of dolls, accessories, computer and video games, and playsets, many of

26  which are completely irrelevant to this action.  Mattel further objects to Topic No.

27  47 on the grounds that it fails to describe with reasonable particularity the matters on

28  which examination is requested.  Mattel further objects to Topic No. 47 on the

1  grounds that it seeks confidential, proprietary and trade secret information, including

2  such information that has no bearing on the claims or defenses in this case.  Mattel

3  further objects to Topic No. 47 on the grounds that it is an attempt to circumvent the

4  Discovery Master's prior Orders determining the topic is irrelevant and/or an

5  inappropriate and overbroad category of discovery.  Mattel further objects to Topic

6  No. 47 on the grounds that it calls for the disclosure of information protected by the

7  attorney-client privilege and work product doctrine.  Mattel further objects to this

8  Topic on the grounds that it is premature in that it seeks to circumvent the expert

9  disclosure provisions of the <u>Federal</u> and <u>Local Rules</u>.  Matters of expert testimony

10 shall be disclosed at the time and in the manner called for by the <u>Rules</u> and the

11 Court's Orders.

12 **<u>MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NOS. 42</u>**

13 **<u>AND 47</u>**

14        None.

15 **<u>MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL TOPIC NOS.</u>**

16 **<u>42 AND 47</u>**

17        To prepare a witness on Topic Nos. 42 and 47 would pose an

18 oppressive, unjustified and undue burden on Mattel.  <u>Rule</u> 26 empowers the Court to

19 "limit the frequency or extent of discovery . . . if it determines that . . . the burden or

20 expense of the proposed discovery outweighs its likely benefit."  <u>Rule</u> 26(b)(2)(C);

21 <u>see</u> <u>also</u> <u>Omni Home Financing, Inc. v. Hartford Life & Annuity Ins. Co.</u>, 2008 WL

22 66562, at *3 (S.D. Cal. 2008) (denying request for depositions because burden

23 outweighed benefit); <u>Thumin v. Bumble Bee Seafoods, Inc.</u>, 2001 WL 1164691, at

24 *1 (S.D.N.Y. 2001) (denying deposition because "the burden outweighs its likely

25 benefit").  MGA has not, and cannot, demonstrate good cause to obtain testimony on

26 these Topics.

27        Topic No. 42 seeks information related to all legal actions related to

28 Mattel's My Scene and Diva Starz product lines.  Mattel has records of 70

1   infringement matters in 23 countries related to MY SCENE alone.[37]  Additionally,

2   Mattel has records of 37 cases in nine countries related to DIVA STARZ

3   infringement.[38]  Topic No. 47 seeks "testimony, transcripts, declarations, affidavits

4   and other sworn written statements of any other type" related to Mattel's Diva Starz,

5   My Scene, Flavas or Barbie products.  Since 1998, Mattel has been involved in

6   approximately 4,905 infringement actions in well more than 50 countries related to

7   its Barbie and Flavas products.[39]

8        The foregoing counts do not include non-infringement matters relating

9   to BARBIE, MY SCENE, FLAVAS or DIVA STARZ.  Such non-infringement

10  matters may include personal injury, property damage, product liability, contract or

11  licensing matters, among others.[40]

12       Mattel does not maintain, as a matter of course, the testimony,

13  transcripts, declarations, affidavits or other sworn written statements associated with

14  its matters.[41]  In virtually all instances, any such documents are maintained by

15  hundred or more attorneys who have represented Mattel in these matters over the

16  past decade.[42]  To obtain a complete record of testimony, transcripts, declarations,

17  affidavits or other sworn written statements associated with the matters discussed

18  above, Mattel would have to inquire of the hundred or more attorneys, have them

19  locate such records (the majority of which will be in outside storage facilities) and

20  ship them to Mattel.[43]  Mattel estimates that such an undertaking would take one

21  person at least two months to contact each attorney, to identify the information

22

23  _____

[37] Declaration of Michael Moore ("Moore Dec."), ¶ 6.

24  [38] Id., at ¶ 7.

25  [39] Id., at ¶ 8.

    [40] Id. at ¶ 10.

26  [41] Id., at ¶ 9.

    [42] Id.

27  [43] Id.

28

1  sought, to review the information for completeness and to prepare to testify about

2  each instance of testimony, transcript, declaration, affidavit or other sworn written

3  statement.[44]

4        MGA's demand for testimony regarding these thousands of legal

5  actions is ironic because MGA has recently refused to produce similar information

6  related to 25 specific Bratz-related lawsuits MGA has identified.[45]  MGA claims that

7  it would pose an undue burden to do so.[46]  MGA has not -- and cannot -- show good

8  cause here to obtain from Mattel the same type of information it claims would be

9  unduly burdensome for it to produce.

10        Moreover, these Topics are not limited to aspects of My Scene and

11  Diva Starz that are at issue.  The vast majority of legal actions related to My Scene

12  and Diva Starz are of no relevance to the claims and defenses here.  Mattel limited

13  its requests for prior sworn statements to the timing and creation of Bratz.  MGA has

14  failed to limit its Topics.  MGA has not, and cannot, show good cause for testimony

15  on all aspects of My Scene and Diva Starz legal actions.

16        These Topics are also defective on their face because they ses forth a

17  generally overbroad subject matter (e.g., "[l]egal actions and claims regarding 'MY

18  SCENE' and/or 'DIVA STARZ'") and then lists more specific items that are

19  "including, without limitation," the scope of that subject.  Such requests are not

20  proper.  As one court has explained:

> 21  Although plaintiff has specifically listed the areas of inquiry for which a 30(b)(6) designation is sought, she has indicated that the listed areas
> 22  are not exclusive.  Plaintiff broadens the scope of the designated topics by indicating that the areas of inquiry will "includ[e], but not [be]
> 23  limited to" the areas specifically enumerated.  An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task.  To

24

---

25  [44]  <u>Id.</u>

26  [45]  <u>See</u> Letter from Temkin to Proctor and Kidman, dated January 9, 2008, at p.

27  3, Corey Dec., Exh. 6.

    [46]  <u>Id.</u>

28

avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice. Where, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.

Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations omitted).

## MGA's Topics Related to Communications About Bratz, MGA or Bryant

### MGA'S TOPIC NO. 21

YOUR COMMUNICATIONS and COMMUNICATIONS made on YOUR behalf with Anna Rhee that refer or relate to BRATZ, MGA, BRYANT or Elise Cloonan, including the COMMUNICATIONS with Anna Rhee's counsel and YOUR contacts with Anna Rhee, including but not limited to when she began working for or with MATTEL, what projects she worked on for MATTEL and the dates of such work, and payments made by MATTEL to her.

### MATTEL'S RESPONSE TO TOPIC NO. 21

In addition to the general objections above, Mattel objects to Topic No. 21 as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Among other things, Topic No. 21 purports to require Mattel to produce witnesses to testify as to communications that "refer or relate to BRATZ, MGA, BRYANT, or Elise Cloonan," despite the fact that MGA is a large company producing a wide variety of toys that are irrelevant to this action and with which Mattel competes, and asks for information related to Anna Rhee's other work for Mattel, much of which is completely unrelated to the current case. In addition, persons named in this Topic are former Mattel employees and, even apart from the circularity and incomprehensibility of the definition of "YOUR" and "MATTEL" in this context for this reason, the Topic is thus overbroad, oppressive and not reasonably calculated to lead to the discovery of admissible evidence for this reason as well. Mattel further objects to Topic No. 21 on the grounds that it fails to describe with reasonable particularity the matters on which examination is

1   requested.  Mattel further objects to Topic No. 21 on the grounds that it is an attempt

2   to circumvent the Discovery Master's prior Orders determining the topic is irrelevant

3   and/or an inappropriate and overbroad category of discovery.  Mattel further objects

4   to Topic No. 21 on the grounds that it seeks confidential, proprietary and trade

5   secret information, including such information that has no bearing on the claims or

6   defenses in this case.  Mattel further objects to this Topic on the grounds that it is

7   premature in that it seeks to circumvent the expert disclosure provisions of the

8   Federal and Local Rules.  Matters of expert testimony shall be disclosed at the time

9   and in the manner called for by the Rules and the Court's Orders.  Mattel further

10  objects to Topic No. 21 on the grounds that it calls for the disclosure of information

11  protected by the attorney-client privilege and work product doctrine.

12  **MGA'S TOPIC NO. 22**

13          YOUR COMMUNICATIONS and COMMUNICATIONS made on

14  YOUR behalf with Steve Linker that refer or relate to BRATZ, MGA, BRYANT,

15  this ACTION or the asserted or potential allegations or defenses therein, any

16  witnesses in this ACTION, and DOCUMENTS that refer or pertain to any of the

17  above subjects, and YOUR contacts with Steve Linker, including but not limited to

18  when he began working for or with MATTEL, the projects on which he worked for

19  MATTEL and the dates of such work, and payments made by MATTEL to him, and

20  DOCUMENTS that refer or pertain to any of the above subjects.

21  **MATTEL'S RESPONSE TO TOPIC NO. 22**

22          In addition to the general objections above, Mattel objects to Topic No.

23  22 as vague and ambiguous, including without limitation as to its use of the

24  undefined term "witnesses in this ACTION."  Mattel further objects to this Topic as

25  overbroad, unduly burdensome, and not reasonably calculated to lead to the

26  discovery of admissible evidence.  Among other things, Topic No. 22 purports to

27  require Mattel to produce witnesses to testify about Steve Linker's other work for

28  Mattel, much of which is completely unrelated to the current case, and about

1  communications that "refer or relate to BRATZ, MGA, BRYANT . . ., " without

2  limitation as to time and despite the fact that MGA is a large company producing a

3  wide variety of toys that are irrelevant to this action and with which Mattel

4  competes. In addition, numerous persons apparently referenced in this Topic

5  include former Mattel employees and, even apart from the circularity and

6  incomprehensibility of the definition of "YOUR" and "MATTEL" in this context for

7  this reason, the Topic is thus overbroad, oppressive and not reasonably calculated to

8  lead to the discovery of admissible evidence for this reason as well. Mattel further

9  objects to Topic No. 22 on the grounds that it fails to describe with reasonable

10  particularity the matters on which examination is requested. Mattel further objects

11  to Topic No. 22 on the grounds that it is an attempt to circumvent the Discovery

12  Master's Orders determining the topic is irrelevant and/or an inappropriate and

13  overbroad category of discovery. Mattel further objects to Topic No. 22 on the

14  grounds that it seeks confidential, proprietary and trade secret information, including

15  such information that has no bearing on the claims or defenses in this case. Mattel

16  further objects to Topic No. 22 on the grounds that it calls for the disclosure of

17  information protected by the attorney-client privilege, work product doctrine and

18  other privileges.

19  **MGA'S TOPIC NO. 23**

20  YOUR COMMUNICATIONS and COMMUNICATIONS made on

21  YOUR behalf with Matt Bousquette, Elise Cloonan, David Dees, Sara Halpern,

22  Margaret Hatch aka Margaret Leahy, Rachel Harris, Liz Hogan, Andreas Koch,

23  Steve Linker, Kris Lynch, Veronica Marlowe, Len Mazzocco, Maureen Mullen

24  Chianese, Billy Ragsdale, Wendy Ragsdale, Brian Schmidt, Cassidy Park, Pam

25  Peretz, Jesse Ramirez and Ivy Ross, or any current or former MGA employee or

26  person you know or believe to be a current or former MGA freelancer, where the

27  COMMUNICATIONS refer or relate to BRATZ, MGA, BRYANT, this ACTION

28

1    or the asserted or potential allegations or defenses therein, any witnesses in this

2    ACTION, and DOCUMENTS that refer or pertain to any of the above subjects.

3    **MATTEL'S RESPONSE TO TOPIC NO. 23**

4             In addition to the general objections above, Mattel objects to Topic No.

5    23 as vague and ambiguous, including without limitation as to its use of the

6    undefined term "witnesses in this ACTION." Mattel further objects to this Topic as

7    overbroad, unduly burdensome, and not reasonably calculated to lead to the

8    discovery of admissible evidence. Among other things, Topic No. 23 purports to

9    require Mattel to produce witnesses to testify about matters wholly unrelated to the

10   current case and about communications that "refer or relate to BRATZ, MGA,

11   BRYANT . . ., " without limitation as to time and despite the fact that MGA is a

12   large company producing a wide variety of toys that are irrelevant to this action and

13   with which Mattel competes. In addition, numerous persons referenced in this

14   Topic include former Mattel employees and, even apart from the circularity and

15   incomprehensibility of the definition of "YOUR" and "MATTEL" in this context for

16   this reason, the Topic is thus overbroad, oppressive and not reasonably calculated to

17   lead to the discovery of admissible evidence for this reason as well. Mattel further

18   objects to Topic No. 23 on the grounds that it fails to describe with reasonable

19   particularity the matters on which examination is requested. Mattel further objects

20   to Topic No. 23 on the grounds that it is an attempt to circumvent the Discovery

21   Master's prior Orders determining the topic is irrelevant and/or an inappropriate and

22   overbroad category of discovery. Mattel further objects to Topic No. 23 on the

23   grounds that it seeks confidential, proprietary and trade secret information, including

24   such information that has no bearing on the claims or defenses in this case. Mattel

25   further objects to Topic No. 23 on the grounds that it calls for the disclosure of

26   information protected by the attorney-client privilege, work product doctrine and

27   other privileges. Mattel further objects to Topic No. 23 on the grounds that it seeks

28   confidential, proprietary and trade secret information, including such information

1  that has no bearing on the claims or defenses in this case.  Mattel further objects to

2  Topic No. 23 on the grounds that it calls for the disclosure of information protected

3  by the attorney-client privilege and work product doctrine.

4  **MGA'S TOPIC NO. 31**

5           The INITIAL DISCLOSURE WITNESSES, including, but not limited

6  to: (a) the specific knowledge or information relevant to YOUR allegations and

7  defenses that YOU believe each INITIAL DISCLOSURE WITNESS possesses; (b)

8  YOUR COMMUNICATIONS with each INITIAL DISCLOSURE WITNESS about

9  the subject matters YOU identified in YOUR Consolidated Initial Disclosures;

10  (c) YOUR COMMUNICATIONS with any PERSON concerning each INITIAL

11  DISCLOSURE WITNESS' knowledge of the subject matters YOU identified in

12  YOUR Consolidated Initial Disclosures; and (d) any DOCUMENTS pertaining to

13  information known by each INITIAL DISCLOSURE WITNESS about the subject

14  matters YOU identified in YOUR Consolidated Initial Disclosures.

15  **MATTEL'S RESPONSE TO TOPIC NO. 31**

16           In addition to the general objections above, Mattel objects to Topic No.

17  31 as compound, overbroad, unduly burdensome, and not reasonably calculated to

18  lead to the discovery of admissible evidence.  Among other things, MGA's

19  definition of the terms "INITIAL DISCLOSURE WITNESSES," "YOUR" and

20  "MATTEL" in this context are overbroad, circular and incomprehensible in that they

21  ask for the knowledge of any current or former employee anywhere at MATTEL,

22  including Bryant himself and others at MGA who were former Mattel employees

23  involved with Bratz and other products at issue such as Paula Garcia.  For this same

24  reason, Mattel further objects to Topic No. 31 on the grounds that it is unduly

25  burdensome, and harassing in that it calls for information uniquely known by

26  defendants and by third parties within defendants' control, but is not known by

27  Mattel at this juncture, including because defendants have refused or failed to

28  produce discovery relating to this Topic, including discovery that the Court has

1 | ordered MGA to produce.  Mattel further objects to Topic No. 31 on the grounds

2 | that it fails to describe with reasonable particularity the matters on which

3 | examination is requested.  Mattel further objects to Topic No. 31 on the grounds that

4 | it calls for the disclosure of information protected by the attorney-client privilege,

5 | work product doctrine and other privileges.

6 | **MGA'S TOPIC NO. 48**

7 |       All COMMUNICATIONS between MATTEL on the one hand and

8 | present or former employees or contractors of MGA on the other.

9 | **MATTEL'S RESPONSE TO TOPIC NO. 48**

10 |       In addition to the general objections above, Mattel objects to Topic No.

11 | 48 as vague, ambiguous, and incomprehensible, especially given its definitions of

12 | the terms MGA and MATTEL.  Mattel further objects to Topic No. 48 as overbroad,

13 | unduly burdensome, oppressive, and not reasonably calculated to lead to the

14 | discovery of admissible evidence, including without limitation in that the Topic is

15 | unlimited as to time, subject matter, product or anything else.  Furthermore, MGA's

16 | definitions of the terms "MATTEL" and "MGA" in this context are overbroad,

17 | circular and incomprehensible, including by the inclusion of any current or former

18 | employee anywhere at MATTEL, including Bryant himself and others at MGA who

19 | were former Mattel employees involved with Bratz such as Paula Garcia.  Thus, the

20 | Topic literally purports to ask for every communication between former Mattel

21 | employees that are solely internal to MGA and every communication Mattel had

22 | with that person when he or she was employed by Mattel.  Mattel further objects to

23 | Topic No. 48 on the grounds that it fails to describe with reasonable particularity the

24 | matters on which examination is requested.  Mattel further objects to Topic No. 48

25 | on the grounds that it seeks confidential, proprietary and trade secret information,

26 | including such information that has no bearing on the claims or defenses in this

27 | case.  Mattel further objects to Topic No. 48 on the grounds that it is an attempt to

28 | circumvent the Discovery Master's prior Orders determining the topic is irrelevant

1   and/or an inappropriate and overbroad category of discovery.  Mattel further objects

2   to this Topic on the grounds that it is premature in that it seeks to circumvent the

3   expert disclosure provisions of the <u>Federal</u> and <u>Local</u> <u>Rules</u>.  Matters of expert

4   testimony shall be disclosed at the time and in the manner called for by the <u>Rules</u>

5   and the Court's Orders.  Mattel further objects to Topic No. 48 on the grounds that it

6   calls for the disclosure of information protected by the attorney-client privilege and

7   work product doctrine.

8   **MGA'S TOPIC NO. 58**

9        YOUR COMMUNICATIONS with former MATTEL employees who

10  now work (or subsequently worked) for MGA, including but not limited to letters

11  sent to former MATTEL employees warning them not to disclose information about

12  MATTEL.

13  **MATTEL'S RESPONSE TO TOPIC NO. 58**

14       In addition to the general objections above, Mattel objects to Topic No.

15  58 on the grounds that it fails to describe with reasonable particularity the matters on

16  which examination is requested and that it is overbroad, unduly burdensome, and

17  not reasonably calculated to lead to the discovery of admissible evidence.  Among

18  other things, Topic No. 58 purports to require Mattel to produce witnesses to testify

19  as to "COMMUNICATIONS with former MATTEL employees who now work (or

20  subsequently worked) for MGA," without limitation as to subject matter or to time,

21  despite the fact that such communications could be on a wide variety of topics

22  completely irrelevant to this case.  Mattel further objects to Topic No. 58 on the

23  grounds that it is an attempt to circumvent the Discovery Master's prior Orders

24  determining the topic is irrelevant and/or an inappropriate and overbroad category of

25  discovery.  Mattel further objects to Topic No. 58 on the grounds that it seeks

26  confidential, proprietary and trade secret information, including such information

27  that has no bearing on the claims or defenses in this case.  Mattel further objects to

28

1  Topic No. 58 on the grounds that it calls for the disclosure of information protected

2  by the attorney-client privilege and work product doctrine.

3  **MGA'S TOPIC NO. 69**

4           The relationship between Farhad (Fred) Larian and MATTEL,

5  including, but not limited to (a) COMMUNICATIONS between Farhad (Fred)

6  Larian and MATTEL's counsel; (b) the identity of any DOCUMENTS that Farhad

7  (Fred) Larian has provided to or made available for inspection by MATTEL

8  (including MATTEL's counsel); (c) the identity of any DOCUMENTS that

9  MATTEL (including its counsel) has provided to or made available for inspection

10 by Farhad (Fred) Larian; and (d) MATTEL's efforts to hire Farhad (Fred) Larian as

11 a consultant or expert.

12 **MATTEL'S RESPONSE TO TOPIC NO. 69**

13          In addition to the general objections above, Mattel objects to Topic No.

14 69 as vague and ambiguous, especially as to its use of the false and misleading terms

15 "relationship" with and "efforts to hire" Farhad Larian.  Mattel further objects to

16 Topic No. 69 as overbroad, unduly burdensome, and not reasonably calculated to

17 lead to the discovery of admissible evidence.  Mattel further objects to Topic No. 69

18 on the grounds that it fails to describe with reasonable particularity the matters on

19 which examination is requested.  Mattel further objects to Topic No. 69 on the

20 grounds that it calls for the disclosure of information protected by the attorney-client

21 privilege, work product doctrine and other privileges.

22 **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NOS. 21-23,**

23 **31, 48, 58 AND 69**

24          None.

25 **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL TOPIC NOS.**

26 **21-23, 31, 48,  58 AND 69**

27          Topic Nos. 21-23, 31, 48, 58 and 69 are overbroad.  They all seek

28 communications between Mattel and particular individuals or groups of individuals

regarding a myriad of general subjects, including "the asserted or potential allegations or defenses" in this action and "Bratz, MGA or Bryant."  The Discovery Master has held that similar, or even more narrow, document requests were "grossly overbroad."[47]  The Discovery Master denied MGA's motion to compel document requests that sought any communications between Mattel and current or former MGA employees "relating to Bratz, Larian, or MGA regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of Bratz or any other MGA product."[48]  Here, MGA's Topics also seek all communications relating to Bratz or MGA.  Many of MGA's Topics seek far broader testimony as well.  For example, Topic No. 48 seeks "[a]ll COMMUNICATIONS between MATTEL on the one hand and present or former employees or contractors of MGA on the other."  Topic No. 48 is not even limited to communications related to Bratz or MGA.  Each of these Topics is fatally overbroad.

Moreover, to prepare a witness or witnesses on Topic Nos. 31 and 48 would pose an oppressive, unjustified and undue burden on Mattel.  Rule 26 empowers the Court to "limit the frequency or extent of discovery . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit."  Rule 26(b)(2)(C); see also Omni Home Financing, Inc. v. Hartford Life & Annuity Ins. Co., 2008 WL 66562, at *3 (S.D. Cal. 2008) (denying request for depositions because burden outweighed benefit); Thumin v. Bumble Bee Seafoods, Inc., 2001 WL 1164691, at *1 (S.D.N.Y. 2001) (denying deposition

---

[47]  Order Granting in Part and Denying in Part MGA's Motion to Compel Documents Responsive to First Set of Requests for Production of Documents, dated May 22, 2007, at pp. 17-18.

[48]  Id.

1 because "the burden outweighs its likely benefit").  MGA has not, and cannot,

2 demonstrate good cause to obtain testimony on the Topics.

3          Topic No. 48 seeks "[a]ll COMMUNICATIONS between MATTEL on

4 the one hand and present or former employees or contractors of MGA on the other."

5 As noted above, the Discovery Master has already rejected discovery "relating to

6 Bratz, Larian, or MGA regarding the origins, design, development, product launch,

7 sales, promotions, advertising, quality, or price of Bratz or any other MGA

8 product."[49]  Here, Topic No. 48 is broader.  It seeks testimony regarding *all*

9 communications between Mattel and current or former MGA employees.  There is

10 no telling how many communications employees at Mattel have had with current or

11 former MGA employees.  Mattel does not know who all former MGA employees

12 are and it is entirely possible that Mattel business people deal with former MGA

13 employees in their current employment on a daily basis.  Nor is it limited to MGA

14 employees who left prior to Bryant working there.  Many MGA employees formerly

15 worked at Mattel and undoubtedly have friends and acquaintants that work at

16 Mattel.  The burden for Mattel to prepare a witness on Topic No. 48 would be

17 incalculable.

18          Preparing a witness on Topic No. 31 would also be oppressively

19 burdensome.  That Topic seeks all communications with, facts learned from and

20 documents pertaining to information known by each of the witnesses identified in

21 Mattel's January 5, 2007 consolidated initial disclosures. Mattel's consolidated initial

22 disclosures currently lists 153 witnesses with knowledge on a wide range of topics,

23 including: (a) MGA's access to Mattel's intellectual property and trade secrets, (b)

24 MGA business practices, (c) MGA's theft of Mattel's intellectual property and trade

25 secrets, (d) The development and ownership of intellectual property at issue, (e) Toy

26

27 [49]  Id.

28

1    of the Year and the dealings of Mattel and MGA with TIA, (f) Mattel's business

2    operations, (g) design and development of Bratz and Bryant's work with of for

3    MGA during his Mattel employment, (h) Bryant's breach of obligations to Mattel,

4    and (i) Bryant's misrepresentations to Mattel.[50]

5              To prepare a Rule 30(b)(6) witness on Topic No. 31, Mattel would

6    need to interview the 153 witnesses listed in its initial disclosures (many of whom

7    are MGA employees or adverse parties) and the dozens of attorneys that have

8    worked on the case since it was filed to determine each witnesses' knowledge and

9    what communications Mattel has had with the witness, if any.[51]  Mattel would also

10   need to re-review the more than four million pages of documents that have been

11   produced in this action to determine which documents pertain to a particular

12   witnesses' knowledge.[52]

13             These Topics are also defective on their face to the extent they set forth

14   a generally overbroad subject matter (e.g., "YOUR COMMUNICATIONS with

15   former MATTEL employees who now work (or subsequently worked) for MGA")

16   and then list more specific items that are "including, but not limited to," the scope of

17   that subject.  Such requests are not proper.  As one court has explained:

18         Although plaintiff has specifically listed the areas of inquiry for which
           a 30(b)(6) designation is sought, she has indicated that the listed areas
19         are not exclusive.  Plaintiff broadens the scope of the designated topics
           by indicating that the areas of inquiry will "includ[e], but not [be]
20         limited to" the areas specifically enumerated.  An overbroad Rule
           30(b)(6) notice subjects the noticed party to an impossible task.  To
21         avoid liability, the noticed party must designate persons knowledgeable
           in the areas of inquiry listed in the notice.  Where, as here, the
22         defendant cannot identify the outer limits of the areas of inquiry
           noticed, compliant designation is not feasible.

23

24   _____

     [50]  Mattel, Inc.'s Consolidated Initial Disclosures Relating to MGA's Unfair
25   Competition Claims, and Second Supplemental Initial Disclosures Relating to
     Mattel's Claims Against Bryant and Mattel, dated January 5, 2007, Corey Dec., Exh.
26   1; Corey Dec., ¶ 4.
     [51]  Corey Dec., ¶ 3- 4.
27   [52]  Id.

28

1  Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations omitted).

2

3          **MGA's Topics Regarding Its Purported Unclean Hands Defense**

4  **MGA'S TOPIC NO. 60**

5          The magnitude and scope of layoffs of MATTEL employees during the

6  RELEVANT PERIOD.

7  **MATTEL'S RESPONSE TO TOPIC NO. 60**

8          In addition to the general objections above, Mattel objects to Topic No.

9  60 as vague and ambiguous, especially as to its use of the terms "magnitude and

10  scope." Mattel further objects to Topic No. 60 as overbroad, unduly burdensome,

11  and not reasonably calculated to lead to the discovery of admissible evidence. In

12  particular, the Topic asks for information related to wholly irrelevant actions by

13  Mattel with respect to employees, in literally any and all functions and areas of the

14  company regardless of their positions, over the course of a decade. Mattel further

15  objects to Topic No. 60 on the grounds that it fails to describe with reasonable

16  particularity the matters on which examination is requested.  Mattel further objects

17  to Topic No. 60 on the grounds that it is an attempt to circumvent the Discovery

18  Master's prior Orders determining the topic is irrelevant and/or an inappropriate and

19  overbroad category of discovery. Mattel further objects to Topic No. 60 on the

20  grounds that it calls for the disclosure of information protected by the attorney-client

21  privilege, work product doctrine and other privileges.

22  **MGA'S TOPIC NO. 65**

23          The facts REFERRING OR RELATING to MGA's Third Affirmative

24  Defense of Unclean Hands in MGA's Answer and Affirmative Defenses dated

25  August 13, 2007, including, but not limited to (a) MATTEL'S efforts to undermine

26  MGA's business and to "kill" Bratz at any cost, including but not limited to Mattel's

27  efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging,

28  themes, and advertising (including for Mattel products MY SCENE, DIVA STARZ,

1   WEE 3 FRIENDS, ACCELERACERS, and POLLY POCKET) and engage in other

2   acts of unfair competition against MGA as alleged in MGA's complaint against

3   MATTEL; (b) MATTEL'S efforts to create negative publicity or press about MGA,

4   MGA products, BRYANT, LARIAN, or MGA employees; (c) MATTEL'S efforts to

5   fund or commission market research or studies that portray BRATZ or MGA

6   products negatively; (d) MATTEL'S efforts to interfere with MGA's acquisition of

7   or investment in Zapf Creation AG; (e) MATTEL'S efforts to include negative

8   references to MGA or BRATZ on MATTEL's "We Believe in Girls" website;

9   (f) MATTEL'S efforts or intent to interfere with business dealings or contractual

10  relations between MGA and Smoby Group; (g) influencing Nickelodeon to reject

11  MGA advertisements or to limit time slots for advertisements; (h) assisting parties in

12  lawsuits against MGA;(i) monitoring, "spying on" or gaining knowledge of MGA's

13  trade secrets, non-public information, non-public activities, unreleased products,

14  and/or product development; (j) gaining access, or attempts to gain access, to MGA

15  showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false

16  pretenses; (k) wrongfully obtaining MGA's costs and sales information through

17  Mattel-employed category managers at retailers; (l) inducing non-party customers to

18  breach confidentiality agreements with MGA and divulge non-public information

19  about MGA's unreleased products; (m) covertly investigating MGA, its officers and

20  employees, and their family members; (n) contacting persons under false pretense in

21  order to interrogate them about BRATZ and this litigation; (o) coercing MATTEL

22  employees to accept restrictive covenants (right before massive layoffs) and non-

23  compete clauses and other efforts to prevent prospective MGA employees from.

24  accepting offers of employment; (p) MATTEL'S delay in suing BRYANT because,

25  *inter alia*, MATTEL wanted BRYANT to testify in an unrelated MATTEL case;

26  (q) falsely inflating its BARBIE sales figures in an effort to mislead the public and

27  retailers; and (r) taking all measures to conceal its bad acts, including the willful

28  non-retention and destruction of documents.

## MATTEL'S RESPONSE TO TOPIC NO. 65

In addition to the general objections above, Mattel objects to Topic No. 65 on the grounds that it is vague and ambiguous, including as to the term "business." Mattel further objects to this Topic on the grounds that it fails to describe with reasonable particularity the matters on which examination is requested and that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Among other things, Topic No. 65 purports to require Mattel to produce witnesses to testify as to any efforts "to undermine MGA's business," and "create negative publicity or press about MGA," without any limitation whatsoever, when MGA and Mattel produce a wide variety of products that are not at issue in this case, and furthermore as to products and other matters that are irrelevant to this suit. In addition, the Topic specifically lists issues that have no conceivable relevance to this action, including, for example, claims related to "MGA's acquisition of or investment in Zapf Creation AG," and have been added for no apparent purpose other than to circumvent the Discovery Master's prior rulings against MGA for its improper fishing expeditions. Mattel further objects to Topic No. 65 on the grounds that it is an attempt to circumvent the Discovery Master's prior Orders determining the topic is irrelevant and/or an inappropriate and overbroad category of discovery as well as Judge Larson's prior Orders rejecting MGA's false assertions repeated in the Topic. Mattel further objects to Topic No. 65 on the grounds that it seeks confidential, proprietary and trade secret information, including such information that has no bearing on the claims or defenses in this case. Mattel further objects to this Topic on the grounds that it is premature in that it seeks to circumvent the expert disclosure provisions of the Federal and Local Rules. Matters of expert testimony shall be disclosed at the time and in the manner called for by the Rules and the Court's Orders. Mattel further objects to Topic No. 65 on the grounds that it calls for the disclosure of information protected by the attorney-client privilege and work product doctrine.

1 **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NOS. 60**

2 **AND 65**

3        None.

4 **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL TOPIC NOS.**

5 **60 AND 65**

6        Topic Nos. 60 and 65 purportedly seek information regarding the litany

7 of allegations in MGA's unclean hands defense.

8        Topic No. 65 is hopelessly vague and ambiguous.  It copies MGA's

9 unclean hands defense almost verbatim, including a litany of broadly alleged "bad"

10 conduct by Mattel.  It is impossible for Mattel to prepare a witnesses on such broad

11 and undefined allegations.  For example, MGA has failed to explain exactly what it

12 means by Mattel's alleged efforts to (1) "undermine MGA's business and to 'kill'

13 Bratz at any cost" or (2) "engage in other acts of unfair competition against MGA."

14 Mattel cannot prepare a witness to testify where it is unclear as to what MGA's

15 allegations refer.

16        MGA's request for testimony regarding "MATTEL'S efforts to create

17 negative publicity or press about MGA, MGA products, BRYANT, LARIAN, or

18 MGA employees" highlights the ambiguity of this Topic.  At the hearing on Mattel's

19 motion to strike MGA's unclean hands defense, Judge Larson asked whether

20 "anybody at MGA [could] give [him] one example of one disparaging false

21 statement made by Mattel towards MGA."[53]  MGA was unable to provide a single

22 example.[54]  Mattel cannot be expected to educate a corporate witness on allegedly

23 disparaging statements that MGA itself cannot actually identify.

24

25
_____

26 [53]  Hearing on Mattel's Motion to Strike MGA's Affirmative Defenses, dated

27 December 3, 2007, at 15:16 - 17:15, Corey Dec., Exh. 7.
[54]  Id.

28

1         This Topic is also not reasonably particularized.  For example,

2    subsection (a) seeks the facts regarding "MATTEL'S efforts to undermine MGA's

3    business and to "kill" Bratz at any cost, including but not limited to Mattel's efforts

4    to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes,

5    and advertising (including for Mattel products MY SCENE, DIVA STARZ, WEE 3

6    FRIENDS, ACCELERACERS, and POLLY POCKET) and engage in other acts of

7    unfair competition against MGA as alleged in MGA's complaint against MATTEL."

8    In effect, subsection (a) seeks all of Mattel's knowledge regarding MGA's unfair

9    competition complaint.  That is per se improper.  See Alexander v. Federal Bureau

10   of Investigation, 188 F.R.D. 111, 121 (D.D.C. 1998) (rejecting notice to depose on

11   "any matters relevant to this case" as not meeting the "reasonable particularity"

12   requirement).

13        Topic No. 60 seeks completely irrelevant testimony.  Historical layoffs

14   at Mattel are unrelated to the claims and defenses in this case.  The fact that MGA's

15   litany of vague unclean hands allegations includes a passing parenthetical reference

16   to layoffs -- MGA alleges that Mattel "coerc[ed] MATTEL employees to accept

17   restrictive covenants (right before massive layoffs)" -- does not make information

18   regarding layoffs relevant.  MGA is simply not entitled to unfettered discovery into

19   Mattel's historical layoffs.  MGA has not, and cannot, meet its burden to show good

20   cause to obtain testimony regarding "[t]he scope and magnitude" of layoffs at

21   Mattel.

22        This Topic is also defective on its face because it sets forth a generally

23   overbroad subject matter -- "[t]he facts REFERRING OR RELATING to MGA's

24   Third Affirmative Defense of Unclean Hands in MGA's Answer and Affirmative

25   Defenses dated August 13, 2007" -- and then lists more specific items that are

26   "including, but not limited to," the scope of that subject.  Such requests are not

27   proper.  As one court has explained:

28

Although plaintiff has specifically listed the areas of inquiry for which a 30(b)(6) designation is sought, she has indicated that the listed areas are not exclusive.  Plaintiff broadens the scope of the designated topics by indicating that the areas of inquiry will "includ[e], but not [be] limited to" the areas specifically enumerated.  An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task.  To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice.  Where, as here, the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.

Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000) (citations omitted).

## MGA's Topics Related to Electronic Records

## MGA'S TOPIC NO. 71

YOUR policies, practices and procedures, written or otherwise, regarding management, preservation and/or destruction of ELECTRONIC RECORDS during the RELEVANT TIME PERIOD.

## MATTEL'S RESPONSE TO TOPIC NO. 71

In addition to the general objections above, Mattel objects to Topic No. 71 as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Among other things, this Topic purports to require testimony on undefined "policies, practices, or procedures" over a ten-year time period, regardless of the categories or subject matter of the documents involved.  It also purports to encompass the individual practices of any of Mattel's many thousands of employees worldwide (as well as the practices of any of Mattel's agents).  Mattel further objects to Topic No. 71 on the grounds that it fails to describe with reasonable particularity the matters on which examination is requested.  Mattel further objects to Topic No. 71 on the grounds that it is duplicative of Topics already designated by Bryant in previous notices of deposition pursuant to Rule 30(b)(6), in which MGA has joined, including Topic No. 28 from the notice served on December 21, 2004. Mattel further objects to Topic No. 71 on the grounds that it calls for the disclosure of information protected by the attorney-

-86-

1   client privilege and work product doctrine.  Mattel further objects to this Topic on

2   the grounds that it is premature in that it seeks to circumvent the expert disclosure

3   provisions of the <u>Federal</u> and <u>Local</u> <u>Rules</u>.  Matters of expert testimony shall be

4   disclosed at the time and in the manner called for by the <u>Rules</u> and the Court's

5   Orders.

6   **MGA'S TOPIC NO. 72**

7           The location, accessibility and retrievability of YOUR ELECTRONIC

8   RECORDS relevant to the design, development, sales and marketing of YOUR

9   accused products, as identified in the COMPLAINT.

10   **MATTEL'S RESPONSE TO TOPIC NO. 72**

11           In addition to the general objections above, Mattel objects to Topic No.

12   72 as vague and ambiguous, including without limitation as to the term

13   "retrievability."  Mattel further objects to this Topic on the grounds that it fails to

14   describe with reasonable particularity the matters on which examination is requested

15   and that it is overbroad, unduly burdensome, and not reasonably calculated to lead

16   to the discovery of admissible evidence.  Mattel further objects to Topic No. 72 on

17   the grounds that it is duplicative of Topics already designated by Bryant in previous

18   notices of deposition pursuant to Rule 30(b)(6), in which MGA has joined, including

19   Topic No. 31 from the notice served on December 21, 2004.  Mattel further objects

20   to this Topic on the grounds that it is premature in that it seeks to circumvent the

21   expert disclosure provisions of the <u>Federal</u> and <u>Local</u> <u>Rules</u>.  Matters of expert

22   testimony shall be disclosed at the time and in the manner called for by the <u>Rules</u>

23   and the Court's Orders.  Mattel further objects to Topic No. 72 on the grounds that it

24   calls for the disclosure of information protected by the attorney-client privilege and

25   work product doctrine, including without limitation the privileges afforded

26   consulting experts.

27

28

**MGA'S TOPIC NO. 73**

The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS created or stored by BRYANT, TREANTAFELLES; BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Richard de Anda and any person working with him in Mattel's Global Security department involved in any way in investigating BRYANT, Cassidy Park, Ann Driskill, MGA, LARIAN or any current or former MGA employee; Tim Kilpin; Matthew Bousquette; Robert Eckert; Chuck Scothon; Kislip Ongchanko; Jill Nordquist; Rob Hudnut; Ivy Ross; Alan Kaye; Rene Pasko; Adrienne Fontanella; Tina Patel; Julia Jensen; Julia Marine; Fred Kawashima; Evelyn Viohl; Anna Rhee; and any other person who currently works or previously worked for MATTEL who MATTEL knows or has reason to believe has knowledge or information concerning the claims or defenses in this litigation or the facts underlying them.

**MATTEL'S RESPONSE TO TOPIC NO. 73**

In addition to the general objections above, Mattel objects to Topic No. 73 as vague and ambiguous, including without limitation as to the term "retrievability." Mattel further objects to this Topic as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including without limitation in that the Topic is without limitation as to time or subject matter of the records and purports to sweep in any number of wholly unidentified and potentially thousands of persons who have any "information" that concerns any of the matters in this case. Mattel further objects to Topic No. 73 on the grounds that it fails to describe with reasonable particularity the matters on which examination is requested. Mattel further objects to Topic No. 73 on the grounds that it is duplicative of Topics already designated by Bryant in previous notices of deposition pursuant to Rule 30(b)(6), in which MGA has joined, including Topic No. 31 from the notice served on December 21, 2004. Mattel further objects to this Topic in that it seeks information uniquely within the possession, custody,

1  and control of Defendants and third parties within the control of Defendants and is

2  not known by Mattel at this juncture, including because Defendants refuse to

3  disclose such information, including in the face of Court Orders requiring MGA to

4  produce it.  Mattel further objects to Topic No. 73 on the grounds that it calls for the

5  disclosure of information protected by the attorney-client privilege and work

6  product doctrine.  Mattel further objects to this Topic on the grounds that it is

7  premature in that it seeks to circumvent the expert disclosure provisions of the

8  Federal and Local Rules.  Matters of expert testimony shall be disclosed at the time

9  and in the manner called for by the Rules and the Court's Orders.

10 **MGA'S TOPIC NO. 74**

11        YOUR policies, practices and procedures, written or otherwise,

12 regarding employee use of company computers and ELECTRONIC RECORDS

13 during the RELEVANT TIME PERIOD, including but not limited to (a) Desktop

14 computers; (b) Laptop computers; (c) Home-based computers used for company

15 business or communication purposes; (d) Removable media (e.g., USB drives); and

16 (e) PDAs (Personal Digital Assistants).

17 **MATTEL'S RESPONSE TO TOPIC NO. 74**

18        In addition to the general objections above, Mattel objects to Topic No.

19 74 as vague and ambiguous, including in its use of the term "use" and

20 "ELECTRONIC RECORDS" in this context.  Mattel further objects to this Topic as

21 overbroad, unduly burdensome, and not reasonably calculated to lead to the

22 discovery of admissible evidence, including in that it purports to seek discovery on

23 any and all forms of "ELECTRONIC RECORDS" of any kind, without limitation as

24 to subject, category or otherwise.  It also purports to encompass the individual

25 practices of any of Mattel's many thousands of employees worldwide (as well as the

26 practices of any of Mattel's agents).  Mattel further objects to Topic No. 74 on the

27 grounds that it fails to describe with reasonable particularity the matters on which

28 examination is requested.  Mattel further objects to this Topic on the grounds that it

1  is premature in that it seeks to circumvent the expert disclosure provisions of the

2  Federal and Local Rules.  Matters of expert testimony shall be disclosed at the time

3  and in the manner called for by the Rules and the Court's Orders.  Mattel further

4  objects to Topic No. 74 on the grounds that it calls for the disclosure of information

5  protected by the attorney-client privilege and work product doctrine.

6  **MGA'S TOPIC NO. 75**

7      Computers currently in use and computers no longer in use by YOU

8  during the RELEVANT TIME PERIOD, including (a) Number, types and locations;

9  (b) Operating systems with versions and dates of use; and (c) Application software

10  with versions and dates of use.

11  **MATTEL'S RESPONSE TO TOPIC NO. 75**

12      In addition to the general objections above, Mattel objects to Topic No.

13  75 as overbroad, unduly burdensome, harassing, and not reasonably calculated to

14  lead to the discovery of admissible evidence.  Among other things, this Topic seeks

15  information related to any of the many thousands of computers owned by Mattel

16  throughout the world over a ten-year period.  Mattel further objects to Topic No. 75

17  on the grounds that it fails to describe with reasonable particularity the matters on

18  which examination is requested.  Mattel further objects to Topic No. 75 on the

19  grounds that it calls for the disclosure of information protected by the attorney-client

20  privilege and work product doctrine.  Mattel further objects to this Topic on the

21  grounds that it is premature in that it seeks to circumvent the expert disclosure

22  provisions of the Federal and Local Rules.  Matters of expert testimony shall be

23  disclosed at the time and in the manner called for by the Rules and the Court's

24  Orders.

25  **MGA'S TOPIC NO. 76**

26      YOUR policies, practices and procedures, written or otherwise,

27  regarding the processing of YOUR computers after an employee leaves YOUR

28  employ.

1  **MATTEL'S RESPONSE TO TOPIC NO. 76**

2        In addition to the general objections above, Mattel objects to Topic No.

3  76 as overbroad, unduly burdensome, and not reasonably calculated to lead to the

4  discovery of admissible evidence.  Among other things, the Topic is unlimited as to

5  time and purports to encompass the individual practices of any of Mattel's many

6  thousands of employees worldwide (as well as the practices of any of Mattel's

7  agents).  Mattel further objects to Topic No. 76 on the grounds that it fails to

8  describe with reasonable particularity the matters on which examination is

9  requested.  Mattel further objects to this Topic on the grounds that it is premature in

10  that it seeks to circumvent the expert disclosure provisions of the <u>Federal</u> and <u>Local</u>

11  <u>Rules</u>.  Matters of expert testimony shall be disclosed at the time and in the manner

12  called for by the <u>Rules</u> and the Court's Orders.  Mattel further objects to Topic No.

13  76 on the grounds that it calls for the disclosure of information protected by the

14  attorney-client privilege and work product doctrine.

15  **MGA'S TOPIC NO. 77**

16        YOUR network architecture during the RELEVANT TIME PERIOD,

17  including (a) Network topology; (b) File-naming conventions; (c) Access

18  authorization; and (d) Remote access.

19  **MATTEL'S RESPONSE TO TOPIC NO. 77**

20        In addition to the general objections above, Mattel objects to Topic No.

21  77 as overbroad, unduly burdensome, harassing, and not reasonably calculated to

22  lead to the discovery of admissible evidence.  Among other things, this Topic seeks

23  information related to the many networks owned by Mattel throughout the world

24  over a ten-year period and includes networks that have no conceivable relevance to

25  this suit.  Mattel further objects to Topic No. 77 on the grounds that it fails to

26  describe with reasonable particularity the matters on which examination is

27  requested.  Mattel further objects to this Topic as duplicative of Bryant's prior <u>Rule</u>

28  30(b)(6) notice, in which MGA joined.  Mattel further objects to Topic No. 77 on

1  the grounds that it calls for the disclosure of information protected by the attorney-

2  client privilege and work product doctrine.

3  **MGA'S TOPIC NO. 78**

4        Document management systems used by YOU during the RELEVANT

5  TIME PERIOD.

6  **MATTEL'S RESPONSE TO TOPIC NO. 78**

7        In addition to the general objections above, Mattel objects to In

8  addition to the general objections above, Mattel objects to Topic No. 78 as vague

9  and ambiguous, especially as to its use of the term "document management

10  systems." Mattel further objects to Topic No. 78 as overbroad, unduly burdensome,

11  harassing, and not reasonably calculated to lead to the discovery of admissible

12  evidence. Among other things, this Topic seeks information related to the many

13  computer systems owned by Mattel throughout the world over a ten-year period.

14  Mattel further objects to Topic No. 78 on the grounds that it fails to describe with

15  reasonable particularity the matters on which examination is requested. Mattel

16  further objects to this Topic as duplicative of Bryant's prior Rule 30(b)(6) notice, in

17  which MGA joined. Mattel further objects to Topic No. 78 on the grounds that it

18  calls for the disclosure of information protected by the attorney-client privilege and

19  work product doctrine. Mattel further objects to this Topic on the grounds that it is

20  premature in that it seeks to circumvent the expert disclosure provisions of the

21  Federal and Local Rules. Matters of expert testimony shall be disclosed at the time

22  and in the manner called for by the Rules and the Court's Orders.

23  **MGA'S TOPIC NO. 79**

24        Email systems used by YOU during the RELEVANT TIME PERIOD.

25  **MATTEL'S RESPONSE TO TOPIC NO. 79**

26        In addition to the general objections above, Mattel objects to In

27  addition to the general objections above, Mattel objects to Topic No. 79 as vague

28  and ambiguous, especially as to its use of the term "email systems." Mattel further

1  objects to Topic No. 79 as overbroad, unduly burdensome, harassing, and not

2  reasonably calculated to lead to the discovery of admissible evidence.  Mattel

3  further objects to Topic No. 79 on the grounds that it fails to describe with

4  reasonable particularity the matters on which examination is requested, including in

5  that it fails to specify any of the potentially vast array of subjects relating to such

6  systems on which testimony is sought.  Mattel further objects to this Topic as

7  duplicative of Bryant's prior Rule 30(b)(6) notice, in which MGA joined.  Mattel

8  further objects to Topic No. 79 on the grounds that it calls for the disclosure of

9  information protected by the attorney-client privilege and work product doctrine.

10  Mattel further objects to this Topic on the grounds that it is premature in that it seeks

11  to circumvent the expert disclosure provisions of the Federal and Local Rules.

12  Matters of expert testimony shall be disclosed at the time and in the manner called

13  for by the Rules and the Court's Orders.

14  **MGA'S TOPIC NO. 80**

15      Instant messaging systems used by YOU during the RELEVANT

16  TIME PERIOD.

17  **MATTEL'S RESPONSE TO TOPIC NO. 80**

18      In addition to the general objections above, Mattel objects to In

19  addition to the general objections above, Mattel objects to Topic No. 80 as vague

20  and ambiguous, overbroad, unduly burdensome, harassing, and not reasonably

21  calculated to lead to the discovery of admissible evidence.  Mattel further objects to

22  Topic No. 80 on the grounds that it fails to describe with reasonable particularity the

23  matters on which examination is requested, including in that it fails to specify any of

24  the potentially vast array of subjects relating to instant messaging on which

25  testimony is sought.  Mattel further objects to this Topic as duplicative of Bryant's

26  prior Rule 30(b)(6) notice, in which MGA joined.  Mattel further objects to this

27  Topic on the grounds that it is premature in that it seeks to circumvent the expert

28  disclosure provisions of the Federal and Local Rules.  Matters of expert testimony

1 | shall be disclosed at the time and in the manner called for by the <u>Rules</u> and the
2 | Court's Orders.  Mattel further objects to Topic No. 80 on the grounds that it calls
3 | for the disclosure of information protected by the attorney-client privilege and work
4 | product doctrine.

5 | **MGA'S TOPIC NO. 81**

6 | YOUR intranets deployed during the RELEVANT TIME PERIOD.

7 | **MATTEL'S RESPONSE TO TOPIC NO. 81**

8 | In addition to the general objections above, Mattel objects to In
9 | addition to the general objections above, Mattel objects to Topic No. 81 as vague
10 | and ambiguous, overbroad, unduly burdensome, harassing, and not reasonably
11 | calculated to lead to the discovery of admissible evidence.  Among other things, this
12 | Topic seeks information related to the many computer systems owned by Mattel
13 | throughout the world over a ten-year period and includes systems that could have no
14 | conceivable relevance to this case.  Mattel further objects to Topic No. 81 on the
15 | grounds that it fails to describe with reasonable particularity the matters on which
16 | examination is requested, including in that it fails to specify any of the potentially
17 | vast array of subjects relating to "intranets" on which testimony is sought.  Mattel
18 | further objects to this Topic as duplicative of Bryant's prior <u>Rule</u> 30(b)(6) notice, in
19 | which MGA joined.  Mattel further objects to this Topic on the grounds that it is
20 | premature in that it seeks to circumvent the expert disclosure provisions of the
21 | <u>Federal</u> and <u>Local Rules</u>.  Matters of expert testimony shall be disclosed at the time
22 | and in the manner called for by the <u>Rules</u> and the Court's Orders.  Mattel further
23 | objects to Topic No. 81 on the grounds that it calls for the disclosure of information
24 | protected by the attorney-client privilege and work product doctrine.

25 | **MGA'S TOPIC NO. 82**

26 | YOUR archival systems and procedures, including to/from disk, tape,
27 | or other media during the RELEVANT TIME PERIOD.

28 |

1  **MATTEL'S RESPONSE TO TOPIC NO. 82**

2              In addition to the general objections above, Mattel objects to In

3  addition to the general objections above, Mattel objects to Topic No. 82 as vague

4  and ambiguous, especially as to its use of the term "archival systems and

5  procedures." Mattel further objects to Topic No. 82 as overbroad, unduly

6  burdensome, harassing, and not reasonably calculated to lead to the discovery of

7  admissible evidence. Among other things, this Topic seeks information related to

8  the many computer systems owned by Mattel throughout the world over a ten-year

9  period. Mattel further objects to Topic No. 82 on the grounds that it fails to describe

10  with reasonable particularity the matters on which examination is requested,

11  including in that it fails to specify which of the potentially vast array of aspects

12  "archival systems and procedures" testimony is sought on. Mattel further objects to

13  this Topic as duplicative of Bryant's prior Rule 30(b)(6) notice, in which MGA

14  joined. Mattel further objects to Topic No. 82 on the grounds that it calls for the

15  disclosure of information protected by the attorney-client privilege and work

16  product doctrine. Mattel further objects to this Topic on the grounds that it is

17  premature in that it seeks to circumvent the expert disclosure provisions of the

18  Federal and Local Rules. Matters of expert testimony shall be disclosed at the time

19  and in the manner called for by the Rules and the Court's Orders.

20  **MGA'S TOPIC NO. 83**

21              YOUR backup procedures, inventories and schedules, including tape

22  reuse cycles for ELECTRONIC RECORDS during the RELEVANT TIME

23  PERIOD.

24  **MATTEL'S RESPONSE TO TOPIC NO. 83**

25              In addition to the general objections above, Mattel objects to In

26  addition to the general objections above, Mattel objects to Topic No. 83 as vague

27  and ambiguous, especially as to its use of the term "backup procedures, inventories

28  and schedules." Mattel further objects to Topic No. 83 as overbroad, unduly

1  burdensome, harassing, and not reasonably calculated to lead to the discovery of
2  admissible evidence.  Among other things, this Topic seeks information related to
3  backups for the thousands of computers and the many computer systems maintained
4  by Mattel throughout the world over a ten-year period.  Mattel further objects to
5  Topic No. 83 on the grounds that it fails to describe with reasonable particularity the
6  matters on which examination is requested, including in that it fails to specify which
7  of the potentially vast array of aspects "archival systems and procedures" testimony
8  is sought on.  Mattel further objects to this Topic as duplicative of Bryant's prior
9  Rule 30(b)(6) notice, in which MGA joined.  Mattel further objects to Topic No. 83
10  on the grounds that it calls for the disclosure of information protected by the
11  attorney-client privilege and work product doctrine.  Mattel further objects to this
12  Topic on the grounds that it is premature in that it seeks to circumvent the expert
13  disclosure provisions of the Federal and Local Rules.  Matters of expert testimony
14  shall be disclosed at the time and in the manner called for by the Rules and the
15  Court's Orders.

16  **MGA'S TOPIC NO. 84**

17      YOUR efforts to identify and preserve potentially physical and
18  ELECTRONIC RECORDS potentially relevant to the claims and defenses in this
19  ACTION, the dates and circumstances of each and every such efforts, the
20  circumstances surrounding such efforts, and whether such efforts were in
21  anticipation of litigation involving YOU, BRYANT, and/or MGA.

22  **MATTEL'S RESPONSE TO TOPIC NO. 84**

23      In addition to the general objections above, Mattel objects to In
24  addition to the general objections above, Mattel objects to Topic No. 84 as vague
25  and ambiguous, especially as to its use of the term "efforts to identify and preserve,"
26  and "potentially relevant to the claims and defenses in this ACTION."  Mattel
27  further objects to Topic No. 84 as overbroad, unduly burdensome, harassing, and not
28  reasonably calculated to lead to the discovery of admissible evidence.  Mattel

1 | further objects to Topic No. 84 on the grounds that it fails to describe with
2 | reasonable particularity the matters on which examination is requested.  Mattel
3 | further objects to Topic No. 84 on the grounds that it is duplicative of Topics
4 | already designated by Bryant in previous notices of deposition pursuant to Rule
5 | 30(b)(6), in which MGA has joined, including Topic Nos. 33-35 from the notice
6 | served on December 21, 2004.   Mattel further objects to this Topic as contrary to
7 | and an effort to circumvent Judge Larson's findings and rulings on the propriety of
8 | Mattel's preservation efforts in this case.  Mattel further objects to this Topic on the
9 | grounds that it is premature in that it seeks to circumvent the expert disclosure
10 | provisions of the Federal and Local Rules.  Matters of expert testimony shall be
11 | disclosed at the time and in the manner called for by the Rules and the Court's
12 | Orders.  Mattel further objects to Topic No. 84 on the grounds that it calls for the
13 | disclosure of information protected by the attorney-client privilege and work
14 | product doctrine.

**MGA'S TOPIC NO. 85**

YOUR policies, practices and procedures, written or otherwise, regarding monitoring or reviewing of employee-created ELECTRONIC RECORDS by any technical means or by or at the direction of any department at MATTEL, including but not limited to Information Technology, Human Resources and/or "Global Security" or "Worldwide Security" during the RELEVANT TIME PERIOD.

**MATTEL'S RESPONSE TO TOPIC NO. 85**

In addition to the general objections above, Mattel objects to Topic No. 85 as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Among other things, this Topic purports to require testimony on undefined "policies, practices, or procedures" over a ten-year time period, regardless of the categories or subject matter of the documents involved.  Mattel further objects to Topic No. 85 on the grounds that it fails to

1   describe with reasonable particularity the matters on which examination is

2   requested.  Mattel further objects to this Topic on the grounds that it is premature in

3   that it seeks to circumvent the expert disclosure provisions of the <u>Federal</u> and <u>Local</u>

4   <u>Rules</u>.  Matters of expert testimony shall be disclosed at the time and in the manner

5   called for by the <u>Rules</u> and the Court's Orders.  Mattel further objects to Topic No.

6   85 on the grounds that it calls for the disclosure of information protected by the

7   attorney-client privilege, work product doctrine and other privileges.  Mattel further

8   objects to Topic No. 85 on the grounds that it seeks confidential, proprietary and

9   trade secret information, including such information that has no bearing on the

10  claims or defenses in this case.

11  **MGA'S GOOD CAUSE TO COMPEL TESTIMONY ON TOPIC NOS. 71-85**

12          None.

13  **MATTEL'S RESPONSE TO MGA'S MOTION TO COMPEL TOPIC NOS.**

14  **71-85**

15          Topic Nos. 71 through 85 seek testimony regarding Mattel's electronic

16  records.  Mattel has already produced four separate <u>Rule</u> 30(b)(6) designees to

17  testify on the subject of electronic records:  Julia Marine, Arnoldo Artavia, Fred

18  Kawashima and Rodney Palmer.  MGA, not Carter Bryant, deposed these witnesses

19  for 8 days on a broad range of electronic information related topics.  The testimony

20  on these topics spans well over one thousand pages of deposition transcript.  Topics

21  that MGA asked Mattel about include, but are not limited to: Zeus,[55] personnel and

22

23  _____

24      [55]   Deposition Transcript of Julia Marine, Volume I ("Marine Depo Tr., Vol. I"),

25  dated September 21, 2006, at 11:24-12:12, Corey Dec., Exh. 25; Deposition
    Transcript of Julia Marine, Volume II ("Marine Depo Tr., Vol. II"), dated November

26  8, 2006, at 81:18-21, Corey Dec., Exh. 26; Deposition Transcript of Julia Marine,
    Volume III ("Marine Depo Tr., Vol. III"), dated June 26, 2007, at 161:16-19, Corey

27  Dec., Exh. 27.

28

1  project planning databases,[56] Mattel's e-mail system and back-up practices and

2  preservation,[57] and Mattel's electronic phone records, storage, preservation and

3  ability to retrieve phone logs from an individual extension,[58]  Mattel's general tape

4  backup policies, procedures and practices and restoration, including retention, cycle

5  times and specific hardware or tapes used;[59] the servers and storages for Mattel's e-

6  mail and user files, including the storage arrays that Mattel uses and their

7  preservation;[60] instant messaging,[61] the manner in which Mattel can access the

8  information on its network systems, employee computer use policies and security

9  measures, intranets or virtual private networks,[62] policies and practices regarding

10  preservation of information when an employee leaves Mattel's employee,[63] and what

11  steps, if any Mattel takes to prevent theft of its intellectual property, including by

12  security steps taken with respect to inbound and outbound electronic mail and

13  attachments.[64]

14

15

---

16  [56]  Deposition Transcript of Arnoldo Artavia ("Artavia Depo Tr."), dated
September 21, 2006, at 29:23-30:22, Corey Dec., Exh. 28.

17  [57]  Deposition Transcript of Fred Kawashima, Volume I ("Kawashima Depo Tr.,
Vol. I"), dated January 17, 2007, at 5:1-6:11, Corey Dec. Exh. 29; Deposition

18  Transcript of Fred Kawashima, Volume II ("Kawashima Depo Tr., Vol. II"), dated

19  June 19, 2007, at 286:7-287:13, Corey Dec., Exh. 30.

20  [58]  Deposition Transcript of Rodney Palmer ("Palmer Depo Tr."), dated June 26,
2007, at 10:17-11:12, Corey Dec., Exh. 32.

21  [59]  E.g., Marine Tr. Vol. II at 109:3-114:3, Corey Dec. Exh. 26; Kawashima Tr.

22  Vol. I at 161:5-164:5, Corey Dec. Exh. 29; Kawashima Tr. Vol. II at 300:4-320:10,
338:21-341:11, Corey Dec. Exh. 30.

23  [60]  Kawashima Tr. Vol. II at 336:11-352:8, Corey Dec., Exh. 30.

24  [61]  Kawashima Tr. Vol. II at 420:12-19, Corey Dec. Exh. 30 (testifying that use
of instant messenger is not allowed).

25  [62]  Kawashima Tr. Vol. II at 427:8-440:20, Corey Dec. Exh. 30; Kawashima Tr.

26  Vol. 1 at 104:3-126:19.

27  [63]  Kawashima Tr. Vol. II at 461:6-472:3, Corey Dec. Exh. 30.
[64]  Kawashima Tr. Vol. III at 527:16-665:19, Corey Dec. Exh. 31.

28

1    Counsel for MGA was not only present and had an opportunity to ask

2  questions at every single one of these 30(b)(6) depositions, it conducted the vast

3  majority of the examinations.[65]  Indeed, Bryant's counsel played very little role in

4  these depositions -- showing up late and not asking any questions at the November

5  8, 2006 Marine deposition,[66] asking no questions at the September 21, 2006 Marine

6  deposition,[67] and not even showing up at the June 26, 2007 Marine deposition, the

7  June 19 and September 13, 2007 Kawashima depositions, or the June 26, 2007

8  Palmer deposition.[68]  Thus, MGA's contention that it has not had a chance to

9  examine Mattel's designees on these Topics and that Bryant's 30(b)(6) notices

10  should not be attributed to MGA is disingenuous at best.

11    Moreover, Mattel expressly notified MGA, on the record, that Mattel

12  would object if MGA tried to serve its own notice on the very same Topics for

13  which it has already deposed Mattel's 30(b)(6) designees:

14    Mr. Corey:  . . . I'd would also like to further note that the
      noticing party who is Carter Bryant is not taking this
15    deposition.  It's entirely possible that Mr. Bryant may have
      questions for the witness on this topic and Mattel is
16    operating under the assumption that to the extent that
      MGA Entertainment is proceeding with this deposition, it
17    will not the future propound a Rule 30(b)(6) notice on
      Mattel on this or similar topics as to which Mr.
18    Kawashima or any other witness to whom MGA has
      previously deposed has testified.[69]
19

20    The Topics regarding electronic records in MGA's Rule 30(b)(6)

21  Notice are unreasonably cumulative of those in Bryant's prior Notices and are

22  therefore improper.  MGA is not entitled to discovery that is duplicative and

23  cumulative.  See Fed. R. Civ. P. 26(b)(2)(C); see also CSX Transp., Inc. v. Vela,

24

25  [65]  Corey Dec., ¶ 6.
    [66]  Marine Depo Tr., Vol. II, at 111:3-4, Corey Dec., Exh. 26.
26  [67]  Corey Dec., ¶ 6.
    [68]  Corey Dec., ¶ 6.
27  [69]  Kawashima Depo Tr., Vol. I, at 6:12-22, Corey Dec., Exh. 29.

28

1   2007 WL 3334966, at *3 (S.D. Ind. 2007) (denying motion to compel on ground

2   that "a <u>Rule</u> 30(b)(6) deposition on this topic would be unduly cumulative"); <u>Static</u>

3   <u>Control Components, Inc. v. Lexmark Intern., Inc.</u>, 2006 WL 3256767, at *5 (E.D.

4   Ky. 2006) (denying defendant's motion to compel, because topics were duplicative

5   of another defendant's previous 30(b)(6) depositions, and because moving defendant

6   was present at those depositions and had an opportunity to ask questions);

7   <u>Cummings v. General Motors Corp.</u>, 2002 WL 32713320, at *6 (W.D. Okla. 2002)

8   (granting protective order where 30(b)(6) notice was duplicative of other notices).

9   The Court should deny MGA's Motion as to these Topics.

10          Following is a chart comparing MGA's electronic records Topics with

11   Bryant's electronic records Topics, for which Mattel has produced witnesses as

12   described above:

| **MGA Topic** | **Bryant Topic** |
|---|---|
| YOUR policies, practices and procedures, written or otherwise, regarding management, preservation and/or destruction of ELECTRONIC RECORDS during the RELEVANT TIME PERIOD.  (Topic No. 71). | Mattel's electronic mail system's ability to retrieve electronic mail messages from any Mattel server, Mattel electronic mail archive tape, or hard drive networked to the Mattel computer network, as that network existed from January 1998 to the present.  (Topic No. 27). |
| The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS relevant to the design, development, sales and marketing of YOUR accused products, as identified in the COMPLAINT.  (Topic No. 72). | Mattel's policies or procedures or practice in effect or use, from January 1998 to the present, regarding Document retention or destruction (including with respect to e-mails), including without limitation, e-mail |

| | | |
|---|---|---|
| 1 | The location, accessibility and | backup procedures and policies; location |
| 2 | retrievability of YOUR ELECTRONIC | of saved or backed-up e-mails, |
| 3 | RECORDS created or stored by | procedures for accessing saved or |
| 4 | BRYANT, TREANTAFELLES; | backed-up e-mails; policies regarding |
| 5 | BRAWER; BRISBOIS; MACHADO; | deletion of e-mails; and Mattel's |
| 6 | VARGAS; TRUEBA; Richard de Anda | document retention or destruction |
| 7 | and any person working with him in | policies (including with respect to |
| 8 | Mattel's Global Security department | emails) when Mattel had notice of a |
| 9 | involved in any way in investigating | potential claim or lawsuit in each of the |
| 10 | BRYANT, Cassidy Park, Ann Driskill, | years 1998, 1999, 2000, 2001, 2002, |
| 11 | MGA, LARIAN or any current or former | 2003 and 2004.  (Topic No. 28). |
| 12 | MGA employee; Tim Kilpin; Matthew | |
| 13 | Bousquette; Robert Eckert; Chuck | Mattel's policies, procedures and |
| 14 | Scothon; Kislip Ongchanko; Jill | practices in effect or use, at any time |
| 15 | Nordquist; Rob Hudnut; Ivy Ross; Alan | from January 1, 1998 to the present, |
| 16 | Kaye; Rene Pasko; Adrienne Fontanella; | regarding Document retention, deletion |
| 17 | Tina Patel; Julia Jensen; Julia Marine; | and destruction (including with respect |
| 18 | Fred Kawashima; Evelyn Viohl; Anna | to electronic documents and e-mail), |
| 19 | Rhee; and any other person who | including without limitation, e-mail |
| 20 | currently works or previously worked for | backup policies, procedures and |
| 21 | MATTEL who MATTEL knows or has | practices in effect or use; location of |
| 22 | reason to believe has knowledge or | saved or backed-up e-mails, procedures |
| 23 | information concerning the claims or | for accessing saved or backed-up e- |
| 24 | defenses in this litigation or the facts | mails; policies, procedures and practices |
| 25 | underlying them.  (Topic No. 73). | in effect or use regarding deletion of e- |
| 26 | | mails; and policies, procedures and |
| 27 | YOUR policies, practices and | practices in effect or use regarding |
| 28 | | |

1  procedures, written or otherwise,

2  regarding employee use of company

3  computers and ELECTRONIC

4  RECORDS during the RELEVANT

5  TIME PERIOD, including but not

6  limited to (a) Desktop computers; (b)

7  Laptop computers; (c) Home-based

8  computers used for company business or

9  communication purposes; (d) Removable

10  media (e.g., USB drives); and (e) PDAs

11  (Personal Digital Assistants). (Topic No.

12  74).

13

14  Computers currently in use and

15  computers no longer in use by YOU

16  during the RELEVANT TIME PERIOD,

17  including (a) Number, types and

18  locations; (b) Operating systems with

19  versions and dates of use; and (c)

20  Application software with versions and

21  dates of use. (Topic No. 75).

22

23  YOUR policies, practices and

24  procedures, written or otherwise,

25  regarding the processing of YOUR

26  computers after an employee leaves

27  YOUR employ. (Topic No. 76).

28

retention of e-mails. (Topic No. 29).

All hardware and software used by
Mattel at any time from January 1, 1998
to the present for Mattel's e-mail systems
including, without limitation, all on-site
and off-site back-up computer systems
and files, exchange servers and computer
storage space. (Topic No. 30).

The ability of Mattel to retrieve e-mail
messages from any server, disk, drive,
archive disk, tape, server or drive,
storage disk, tape server or drive,
individual computer hard drive, or any
hard drive or server networked to any
Mattel computer network, at any time
from January 1, 1998 to the present.
(Topic No. 31).

Mattel's policies, procedures and
practices in effect or use, at any time
from January 1, 1998 to the present,
regarding Document retention, deletion
or destruction (including with respect to
e-mails and other electronic documents)
when Mattel is aware of a potential claim

| | |
|---|---|
| 1 | or lawsuit in which it may be involved. |
| 2 YOUR network architecture during the | (Topic No. 32). |
| 3 RELEVANT TIME PERIOD, including | |
| 4 (a) Network topology; (b) File-naming | Mattel's policies, procedures and |
| 5 conventions; (c) Access authorization; | practices in effect or use, at any time |
| 6 and (d) Remote access.  (Topic No. 77). | from January 1, 1998 to the present, |
| 7 | regarding Document retention, deletion |
| 8 Document management systems used by | or destruction (including with respect to |
| 9 YOU during the RELEVANT TIME | e-mails and other electronic documents) |
| 10 PERIOD.  (Topic No. 78). | after Mattel began considering or |
| 11 | analyzing any potential claim or lawsuit |
| 12 Email systems used by YOU during the | against MGA or Bryant regarding |
| 13 RELEVANT TIME PERIOD.  (Topic | "Bratz" or other claim of any nature. |
| 14 No. 79). | (Topic No. 33). |
| 15 | |
| 16 Instant messaging systems used by YOU | Mattel's policies, procedures and |
| 17 during the RELEVANT TIME PERIOD. | practices in effect or use, at any time |
| 18 (Topic No. 80). | from January 1, 1998 to the present, |
| 19 | regarding Document retention, deletion |
| 20 YOUR intranets deployed during the | or destruction (including with respect to |
| 21 RELEVANT TIME PERIOD.  (Topic | e-mails and other electronic documents) |
| 22 No. 81). | after Mattel began investigating facts |
| 23 | pertaining to Bryant's involvement with |
| 24 YOUR archival systems and procedures, | MGA or "Bratz" or any claim of any |
| 25 including to/from disk, tape, or other | nature, actual or potential, against |
| 26 media during the RELEVANT TIME | Bryant.  (Topic No. 34). |
| 27 PERIOD.  (Topic No. 82). | |
| 28 | |

MATTEL'S SEPARATE STATEMENT IN OPPOSITION TO MGA'S MOTION TO COMPEL

| | |
|---|---|
| 1 | Mattel's policies, procedures and |
| 2 YOUR backup procedures, inventories | practices in effect or use, at any time |
| 3 and schedules, including tape reuse | from January 1, 1998 to the present, |
| 4 cycles for ELECTRONIC RECORDS | regarding Document retention, deletion |
| 5 during the RELEVANT TIME PERIOD. | or destruction including with respect to |
| 6 (Topic No. 83). | e-mails and other electronic documents) |
| 7 | after Mattel began investigating facts |
| 8 YOUR efforts to identify and preserve | pertaining to the relationship, if any, |
| 9 potentially physical and ELECTRONIC | between Bryant's involvement with |
| 10 RECORDS potentially relevant to the | MGA or "Bratz" and work or projects |
| 11 claims and defenses in this ACTION, the | that Bryant may have seen during his |
| 12 dates and circumstances of each and | employment with Mattel.  (Topic No. |
| 13 every such efforts, the circumstances | 35). |
| 14 surrounding such efforts, and whether | |
| 15 such efforts were in anticipation of | Mattel's policies, procedures and |
| 16 litigation involving YOU, BRYANT, | practices in effect or use, at any time |
| 17 and/or MGA.  (Topic No. 84). | from January 1, 1998 to the present, |
| 18 | regarding Document retention, deletion |
| 19 YOUR policies, practices and | and destruction (including with respect |
| 20 procedures, written or otherwise, | to electronic documents and e-mail), |
| 21 regarding monitoring or reviewing of | including without limitation, e-mail |
| 22 employee-created ELECTRONIC | backup policies, procedures and |
| 23 RECORDS by any technical means or by | practices in effect or use; location of |
| 24 or at the direction of any department at | saved or backed-up e-mails, procedures |
| 25 MATTEL, including but not limited to | for accessing saved or backed-up e- |
| 26 Information Technology, Human | mails; policies, procedures and practices |
| 27 Resources and/or "Global Security" or | in effect or use regarding deletion of e- |
| 28 | |

| | |
|---|---|
| 1   "Worldwide Security" during the | mails; and policies, procedures and |
| 2   RELEVANT TIME PERIOD.  (Topic | practices in effect or use regarding |
| 3   No. 85). | retention of e-mails.  (Topic No. 1 in |
| 4 | Second Notice). |
| 5 | |
| 6 | All hardware and software used by |
| 7 | Mattel at any time from January 1, 1998 |
| 8 | to the present for Mattel's e-mail systems |
| 9 | including, without limitation, all on site |
| 10 | and off-site back-up computer systems |
| 11 | and files, exchange servers and computer |
| 12 | storage space.  (Topic No. 2 in the |
| 13 | Second Notice). |
| 14 | |
| 15 | The ability of Mattel to retrieve e-mail |
| 16 | messages from any server, disk; drive, |
| 17 | archive disk, tape, server or drive, |
| 18 | storage disk, tape server or drive, |
| 19 | individual computer hard drive, or any |
| 20 | hard drive or server networked to any |
| 21 | Mattel computer network, at any time |
| 22 | from January 1, 1998 to the present. |
| 23 | (Topic No. 3 in the Second Notice). |
| 24 | |
| 25 | Mattel's policies, procedures and |
| 26 | practices in effect or use, at any time |
| 27 | from January 1, 1998 to the present, |
| 28 | |

| | |
|---|---|
| 1 | regarding Document retention, deletion |
| 2 | or destruction (including with respect to |
| 3 | c-mails and other electronic documents) |
| 4 | when Mattel is aware of a potential claim |
| 5 | or lawsuit in which it may be involved. |
| 6 | (Topic No. 4 in Second Notice). |
| 7 | |
| 8 | Mattel's policies, procedures and |
| 9 | practices in effect or use, at any time |
| 10 | from January 1, 1998 to the present, |
| 11 | regarding Document retention, deletion |
| 12 | or destruction (including with respect to |
| 13 | e-mails and other electronic documents) |
| 14 | after Mattel began considering or |
| 15 | analyzing any potential claim or lawsuit |
| 16 | against MGA or Bryant regarding |
| 17 | "Bratz" or other claim of any nature. |
| 18 | (Topic No. 5 in Second Notice). |
| 19 | |
| 20 | Matters policies, procedures and |
| 21 | practices in effect or use, at any time |
| 22 | from January 1, 1998 to the present, |
| 23 | regarding Document retention, deletion |
| 24 | or destruction (including with respect to |
| 25 | e-mails and other electronic documents) |
| 26 | after Mattel began investigating facts |
| 27 | pertaining to Bryant's involvement with |
| 28 | |

07209/2343782.1

MATTEL'S SEPARATE STATEMENT IN OPPOSITION TO MGA'S MOTION TO COMPEL

|  |  |
|---|---|
| 1 | MGA or "Bratz" or any claim of any |
| 2 | nature, actual or potential, against |
| 3 | Bryant.  (Topic No. 6 in Second Notice). |
| 4 |  |
| 5 | Mattel's policies, procedures and |
| 6 | practices in effect or use, at any time |
| 7 | from January 1, 1998 to the present, |
| 8 | regarding Document retention, deletion |
| 9 | or destruction including with respect to |
| 10 | e-mails and other electronic documents) |
| 11 | after Mattel began investigating facts |
| 12 | pertaining to the relationship, if any, |
| 13 | between Bryant's involvement with |
| 14 | MGA or "Bratz" and work or projects |
| 15 | that Bryant may have seen during his |
| 16 | employment with Mattel.  (Topic No. 7 |
| 17 | in Second Notice). |

Finally, Mattel's eight days of testimony on electronic evidence related topics far exceeds the less than two days for deposition testimony on electronic evidence preservation from MGA designees Ms. Tonnu and Mr. Lockhart that the Discovery Master recently found to be sufficient.[70]  Further, to the extent that these topics relate to "Zeus," the Discovery Master recently confirmed that the testimony on

---

[70]   Court's Order Granting in Part and Denying in Part Mattel's Motion to Enforce Court's Discovery Orders and to Compel; to Overrule Purportedly Improper Instructions; and for Sanctions, dated January 8, 2008, Corey Dec., Exh. 33.

1   Mattel's designee was adequate and denied MGA's and Bryant's Motion to compel

2   further testimony on that topic.[71]  This motion should be denied on those grounds.

3

4   DATED:  January 11, 2008          QUINN EMANUEL URQUHART OLIVER &

5                                     HEDGES, LLP

6

7                                     By  _Jon D Corey_ /BBS_____

8                                         Jon D. Corey
                                          Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

26   [71]   Order Granting in Part and Denying in Part MGA's and Bryant's Joint Motion

27   to Compel re: Mattel's Bandying of 30(b)(6) Witnesses, dated January 11, 2008,
     Corey Dec., Exh. 17.

28

07209/2343782.1