1 QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
2 (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
3 (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
4 (joncorey@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
5 Los Angeles, California 90017-2543
  Telephone: (213) 443-3000
6 Facsimile: (213) 443-3100

7 Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

| | |
|---|---|
| 11 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12        Plaintiff, | Consolidated with<br>Case No. CV 04-09059 |
| 13    vs. | Case No. CV 05-2727 |
| 14 MATTEL, INC., a Delaware | **DISCOVERY MATTER** |
| 15 corporation, | **[To be Heard by Discovery Master Hon.**<br>**Edward Infante (Ret.) Pursuant to Court** |
| 16        Defendant. | **Order of December 6, 2006]** |
| 17 | MATTEL, INC.'S OPPOSITION TO<br>JOINT MOTION TO COMPEL AN |
| 18 AND CONSOLIDATED ACTIONS | UNREDACTED VERSION OF<br>M0074400, MATTEL'S INVESTIGATIVE |
| 19 | FILE 02-299 AND THE FURTHER<br>DEPOSITION TESTIMONY OF |
| 20 | RICHARD DE ANDA |
| 21 | Date:   February 9, 2008<br>Time:   9:30 a.m. (telephonic) |
| 22 | |
| 23 | Discovery Cut-Off:   Jan. 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:   May 27, 2008 |
| 24 | |
| 25 | [Declarations of Jon D. Corey and Brian<br>O'Connor filed concurrently] |

26            <u>**CONFIDENTIAL-ATTORNEYS' EYES ONLY**</u>

27     <u>**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**</u>

28

1

## Preliminary Statement

2 Defendants' joint motion should be rejected in its entirety. The motion raises

3 several discrete issues relating to the recent deposition of Richard De Anda, Mattel's

4 Vice President of Global Security. Each is without merit.

5 First, defendants argue that Mr. De Anda voluntarily disclosed the content of

6 privileged communications with Mattel's in-house counsel, Michele McShane,

7 regarding certain internal investigations in 2002. This is not the case. Mr. De

8 Anda's testimony was limited to the factual circumstances surrounding those

9 conversations or matters relating to scheduling and coordination of the

10 investigations. In no way did his testimony reveal the substance of any privileged

11 communication. Defendants' waiver argument is no more than a thinly veiled

12 attempt to seek reconsideration of this Court's prior Order rejecting their previous

13 attempts to obtain discovery on this subject.

14 Second, defendants argue that Mattel should produce Investigative File 02-

15 299. This file is in no way relevant to this litigation. It had nothing to do with

16 Carter Bryant or any other claim or defense in this case. Moreover, even if the

17 documents were relevant (and they are not), they are protected from disclosure by

18 the attorney-client privilege as shown by Mattel's accompanying declarations and by

19 the documents submitted to the Court *in camera*.

20 Third, defendants seek additional time to depose Mr. De Anda, arguing that

21 the presumptive limits established by the Rules did not afford them an adequate

22 opportunity to inquire into Mr. De Anda's knowledge. In fact, defendants had ample

23 opportunity to depose Mr. De Anda; instead, they chose to waste much of their

24 allotted time on collateral topics. Such was their right, but they should not now

25 complain that they had insufficient time. Their request should be denied.

26

27

28

- 1 -

1  I.    **MR. DE ANDA'S DEPOSITION TESTIMONY DID NOT WAIVE THE**
2        **ATTORNEY CLIENT PRIVILEGE WITH RESPECT TO THE**
3        **REDACTED E-MAIL MEMORANDUM**
4        A.    **Mr. De Anda's Testimony Did Not Reveal Any Privileged**
5              **Communication**

6        Defendants' argument rests on the unremarkable proposition that "voluntary

7  disclosures of privileged communications to a third party destroys confidentiality

8  and the privilege asserted." (Mot. at 7.) What is remarkable, however, and fatal to

9  their motion, is defendants' imprecision in identifying the "privileged" information

10 that Mr. De Anda purportedly disclosed.

11       Courts consistently distinguish between testimony that relates to a privileged

12 communication and testimony that reveals the substance of that communication.

13 See Murata Mfg. Co. v. Bel Fuse, Inc., 2007 WL 781252, at * 3 (N.D. Ill. Mar. 8,

14 2007) ("There is a significant difference between indicating the fact or topic of a

15 confidential [communication] with an attorney and revealing its content. The latter

16 effects a waiver of the attorney client privilege, while the former does not.").

17 Accordingly, deposition testimony which relates to privileged communications—

18 including the circumstances of the communication, the participants, and even the

19 subject-matter—does not provide grounds for waiver. See, e.g., R.J. Reynolds

20 Tobacco Co. v. Premium Tobacco Stores, Inc., 2001 WL 1286727, at *7 (N.D. Ill.

21 Oct. 21, 2001) (deponent's answers to questions as to the circumstances,

22 participants, and purposes regarding the preparation of privileged documents did not

23 waive the privilege); Burd v. Gen. Elec. Capital Auto Lease, Inc., 1994 WL 583330,

24 at *2 (N.D. Ill. Oct. 20, 1994) (deponent's general testimony regarding

25 conversations with counsel did not waive privilege because the specific content of

26 those conversations not disclosed). Recent decisions from this district make clear

27 that waiver will be found only where the deposition testimony truly "reveal[s] the

28

07209/2351562.2

- 2 -

1  substance of the attorney-client communication," not simply because it touches upon
2  or involves privileged communications.  Quicksilver, Inc. v. Kymsta Corp., 2007
3  WL 4324642, at *5 (C.D. Cal. Oct. 18, 2007) (holding that executive's discussion of
4  legal advice received as part of a broader commercial trademark strategy did not
5  provide grounds for waiver).

6        Defendants ignore this well-settled law.  They cite to numerous pages of Mr.
7  De Anda's deposition in an effort to cobble together an argument that he "disclosed
8  the content" of communications and that those communications were privileged.
9  (Mot. at 2.)  This is not the case.  While De Anda testified "concerning several
10 conversations" with Mattel's in-house counsel, there is no basis for defendants' claim
11 that this testimony waived the attorney-client privilege.  Plainly, the excerpts cited
12 by defendants—tellingly quoted infrequently—do not disclose the specific content
13 of the privileged communications between Mr. De Anda and in-house counsel:

14

15        •     On pages 192:2-193:17, cited by defendants, Mr. De Anda testified
16              as to a conversation with Ms. McShane regarding "how [the
17              investigation] was going to be managed and who was going to
18              manage it."  The essence of this conversation was to who, between
19              the Law Department and Global Security, "would take
20              responsibility" for the investigation into a potential claim for

21

22

23

24

25

26

27

28

- 3 -

1    copyright infringement of Toon Teens. [1]  Decisions regarding the

2    allocation of responsibility is not a privileged communications.[2]

3

4    •    On page 197:11-22, cited by defendants, Mr. De Anda gave

5         generalized testimony regarding how an investigation should be

6         conducted: "You don't necessarily shotgun an investigation and go

7         in a thousand directions in one place because actually what that nets

8         you is just busy work that has very little value to it. You have to do

9         this methodically.  So the first—the first process in this is to

10        understand who is going to take responsibility for this matter and

11        that was basically trying to gain an understanding . . ."[3] Allocation

12        of responsibility and generic investigative processes are not a

13        privileged communication.[4]

14   •    On pages 205:22-207:17, cited by defendants, Mr. De Anda

15        testified as to the fact of a meeting which he and Ms. McShane,

16

17   [1]   Transcript of Richard De Anda Deposition ("De Anda Tr."), at 192:2-193:17,
     attached as Exhibit 8 to Declaration of Marcus R. Mumford in Support of Joint
18   Motion ("Mumford Decl.").

19   [2]   See, e.g., In re Vioxx Prods. Liab. Litig., 501 F. Supp. 2d 789, 805 (E.D. La.
     2007) (business decision arising from legal advice not privileged); Burton, 170
20   F.R.D. at 486 (same); see also Quicksilver, 2007 WL 4324642, at *5 (executive's
     discussion of how legal advice was integrated into business strategy did not provide
21   grounds for waiver).

22   [3]   De Anda Tr. 197:11-22, Mumford Decl., Ex. 8.

     [4]   Indeed, defendants previously argued in this case in connection with Alan
23   Kaye's deposition that such general investigative techniques are not privileged. See
24   Joint Stipulation of Issues in Dispute Regarding Defendant and Cross-Claimant
     Carter Bryant's Motion to Compel Further Deposition Testimony From Anne
25   Driskell and Alan Kaye and for the Appointment of a Discovery Special Master, at
26   15-20, attached as Exhibit 1 to the Declaration of Jon D. Corey in Support of
     Mattel's Opposition to Defendants' Joint Motion ("Corey Decl.").

27

28

1    among others attended. He indicated where the meeting took place,

2    who attended, and that the "take-away from that meeting was that

3    Michele McShane would – would take the next step."[5] Again, that

4    decision is not privileged.[6]

5

6    •    On page 227:1-17, cited by defendants, Mr. De Anda testified that

7         he felt "frustrated" that Ms. McShane's work was ongoing.[7] Mr. De

8         Anda's subjective emotional reaction is not privileged, nor is there

9         any suggestion that he revealed any communication with counsel.[8]

10   •    On pages 240:10-241:23, cited by defendants, Mr. De Anda

11        testified that he had no recollection of discussing "the subject of the

12        letter" and that after being directed to investigate the 2002

13        "anonymous letter" he contacted Ms. McShane to find out the

14        "status" and stated that his understanding from that conversation

15        was that no conclusion had yet been reached.[9]  This type of

16        communication, which nowhere reveals the substance of legal

17

18

19

20   _____

21   [5]  De Anda Tr. 205:22-207:17, Mumford Decl., Ex. 8.
     [6]  See, e.g., In re Vioxx Prods. Liab. Litig., 501 F. Supp. at 805 ("[W]hen a
22   corporate executive makes a decision after consulting with an attorney, his decision
     is not privileged whether it is based on that advice or even mirrors it.").
23   [7]  De Anda Tr. 227:1-17, Mumford Decl., Ex. 8.
     [8]  See, e.g., Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec.
24   Co., 953 F.2d 1004, 1007 (5th Cir. 1992) (where disclosure "reveals no
25   communication" between the client and attorney, there can be no waiver of the
26   attorney client privilege).
     [9]  De Anda Tr. 240:10-241:23, Mumford Decl., Ex. 8.
27

28

07209/2351562.2

- 5 -

OPPOSITION TO JOINT MOTION

advice, falls squarely into non-privileged communications about non-privileged facts and scheduling, which are not privileged.[10]

• On pages 258:23-259:15, cited by defendants, Mr. De Anda testified he contacted Ms. McShane approximately twice a month to inquire as to the status of the investigation.[11] Such testimony provides no grounds for waiver unless privileged content from those conversations was revealed.[12] None was.

• On pages 221:17-224:16, cited by defendants, Mr. De Anda testified that he did not recall the specifics of a later conversation with Ms. McShane, but that she may have talked to him about whether Bratz infringed the Toon Teens copyright.[13] Such an imprecise and ambiguous recollection cannot constitute "disclosure" of a privileged communication sufficient to constitute a waiver.[14] To the extent that MGA characterizes this testimony to suggest that Mattel decided not to assert a claim that Bratz infringed the Toon Teens copyright, this is not a surprise. Indeed, Mattel clarified to Judge Larson almost two years ago that it was

---

[10]   See, e.g., Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd., 1996 WL 732522, at *7 (N.D. Ill. Dec. 9, 1996) (ordering disclosure of communications regarding "general business and scheduling information about the meeting which is not subject to the attorney-client privilege")

[11]   De Anda Tr. 258:23-259:15, Mumford Decl., Ex. 8.

[12]   See, e.g., Skeddle, 989 F.Supp. at 920 (investigator's deposition testimony which relayed the fact that conversations had taken place provides no grounds for waiver).

[13]   De Anda Tr. 221:17-224:16, Mumford Decl., Ex. 8.

07209/2351562.2

OPPOSITION TO JOINT MOTION

1   not asserting a claim that Bratz infringed the copyrights in Mattel's
2   Toon Teens.[15]  Judge Larson dismissed Bryant's claims seeking a
3   declaration of non-infringement of Toon Teens, taking the claim,
4   and necessarily the investigation related to that claim, out of the
5   case.[16]

6
7   •   On pages 281:3-283:22, cited by defendants, Mr. De Anda testified
8       regarding an email that he sent to Alan Kaye in connection with the
9       "anonymous letter."  In response to defendants' counsel's questions,
10      Mr. De Anda indicated that the redacted portions of the email
11      contained information which he had received from Ms. McShane
12      through their prior conversations regarding the investigation.
13      Specifically, Mr. de Anda testified "I don't know how to
14      characterize the reporting as me asking questions as to the status"
15      and that Ms. McShane was "answering those questions."[17]  None of
16      this   testimony   revealed   the   substance   of   privileged
17      communications, but to the contrary confirmed (as the Discovery
18      Master previously ruled) that the undisclosed portion of the email
19      was privileged.

20

21   [14]  See, e.g., Kovacs v. Hershey Co., 2006 WL 3054167, at * 3 (Oct. 25, 2006)
22   (holding that a " general description of the subject matter of the [privileged] discussion .
23   . . is too vague to constitute a waiver of the attorney-client privilege").
     [15]  See Mattel, Inc.'s Report of Meeting of Counsel Regarding Mattel's Motion to
24   Dismiss Bryant's Declaratory Relief Claim, at 1:11-13, Corey Decl. Ex. 2; see also
25   See Transcript of Hearing Re Bryant's Motion for Terminating Sanctions (Aug. 27,
     2007), at 57:5-19, Corey Decl., Ex. 3.
26   [16]  See Order Granting Motions to Dismiss (Jul. 17, 2006), Corey Decl., Ex. 10.
     [17]  De Anda Tr. 281:3-283:22, Mumford Decl., Ex. 8.
27

28

OPPOSITION TO JOINT MOTION

1    These non-privileged conversations—while occurring between an in-house
2  counsel and a Mattel executive—are the testimony on which the defendants seek to
3  build their waiver argument. It is an ephemeral foundation. These conversations
4  relate to matters of scheduling and coordination of the investigation, not the
5  substance of privileged legal advice. The disclosure of non-privileged information
6  does not support an implied waiver of privilege. Voluntary disclosure of non-
7  privileged information does not compel an implied waiver of privileged information
8  on the same or related subject. See BASF Aktiengesellschaft v. Reilly Indus., 2004
9  WL 1721574, at *2 (S.D. Ind. July 29, 2004); Long-Term Capital Holdings v. U.S.,
10  2003 WL 1548770, at *5 (D. Conn. Feb. 14, 2003); Sony Elec., Inc. v. Soundview
11  Tech., Inc., 217 F.R.D. 104, 109 (D. Conn. Feb. 5, 2002); Falise v. Am. Tobacco
12  Co., 193 F.R.D. 73, 86 (E.D.N.Y. 2000); Allen-Bradley Co., Inc. v. Autotech Corp.,
13  1989 WL 134500, at *1 (N.D. Ill. Oct. 11, 1989); RCA Corp. v. Data Gen. Corp.,
14  1986 WL 15693, at *7-8 (D. Del. July 2, 1986); Allianz Underwriters, Inc. v. Rusty
15  Jones, Inc., 1986 WL 6950, at *2 (N.D. Ill. June 2, 1986).[18]

16

17

18    [18]  The decisions cited by defendants are not helpful to their argument of waiver. In
19  re Syncor ERISA Litig., 229 F.R.D. 636, 646 (C.D. Cal. 2005), involved the question
    of *selective* waiver after a company voluntarily disclosed documents to the S.E.C.
20  pursuant to a confidentiality agreement. In re Grand Jury Subpoena, 341 F.3d 331, 336
    (4th Cir. 2003), involved waiver in the context of an F.B.I. interrogation. The factual
21  situations are simply too far removed to provide anything helpful more than a stand-
22  alone recitation of the black letter law. Hollins v. Powell, 773 F.2d 191, 196 (8th Cir.
    1985), a §1983 action, involved a party whose trial testimony directly revealed his
23  conversations with various attorneys, while Adler v. Wallace Comp. Servs., 202 F.R.D.
24  666, 674 (N.D. Ga. 2001), involved an attorney's direct testimony regarding what they
    were told by their client. While presenting clear cases of waiver, Hollins and Adler
25  shed little light as to whether testimony which merely touches upon the factual
26  circumstances surrounding a privileged communication—but does not the reveal the
    substantive content of the communication—can waive the privilege.
27

28

07209/2351562.2
                                        - 8 -

1    Further, Mr. De Anda's testimony in no way revealed the substance of those
2    conversations.  For example, on pages 184:20-188:23, cited by defendants, Mr. De
3    Anda testified regarding *his impressions* after a conversation with Ms. McShane:
4    "My take-away was that we were talking about one or two of the same individuals
5    that had contacted me had contacted her or it could have been the other one of the
6    one who contacted me."  This conclusion is Mr. De Anda's and does not reveal the
7    content of any privileged communication—indeed, Mr. De Anda went on to
8    expressly note that he had "nothing [on which] to base" these conclusions.

9    The flaw in defendants' argument is particularly apparent in their attempt to
10   apply these scattered excerpts from Mr. De Anda's testimony, focusing on the
11   procedural coordination and status of an investigation with in-house counsel, to
12   argue that Mattel should be compelled to produce an unredacted version of Mr. De
13   Anda's email to Alan Kaye regarding the "anonymous letter."[19]  Mr. De Anda
14   indicated that the redacted portions of the email contained the substance of
15   privileged communications which he had received from Ms. McShane.[20]  The
16   language of the letter does not support this deductive leap.  The conversations about
17   which Mr. De Anda testified related to scheduling and his frustrations.  The letter
18   clearly refers to something more substantive and something else.  It reads:  "My
19   frustration in this matter was the genesis of [redacted] and that is now in the hands
20   of Robert Normile," who was (and is) Mattel's General Counsel.[21]  Conversations
21   about scheduling and allocations of responsibility do not lead to the conclusion that
22   he waived the privilege regarding the substance of a separate e-mail message. (See
23   Mot. at 7.)  Defendants' argument is all the more illogical because it conflates the
24   non-privileged information which Mr. De Anda testified about with any privileged

25   
---
[19]   See M0074401 and M0074400, Mumford Decl., Ex. 8.
26   [20]   De Anda Tr. 285:17-286:14, Mumford Decl., Ex. 8.

27

28

1 communications he may also have received in those same conversations, and in turn,
2 relayed in the email. Nowhere in his deposition did Mr. De Anda testify as to the
3 latter. Mattel is, again, submitting to the Discovery Master *in camera* an unredacted
4 copy of the email, which confirms on its face that defendants are confusing apples
5 and oranges.

6      Plainly, Mr. De Anda's testimony did not reveal the substantive content of any
7 privileged communications. Nor could it, as his testimony concerned the factual
8 circumstances surrounding Mattel's investigation, information which is by nature
9 not privileged (even though it may relate to privileged communications). Simply
10 put, the doctrine of implied waiver is inapposite in this context. And this makes
11 sense: at bottom, the doctrine is concerned with fairness, seeking to "prevent
12 prejudice to a party and distortion of the judicial process that may be caused by the
13 privilege-holder's selective disclosure during litigation of otherwise privileged
14 information." In re Von Bulow, 894 F. 2d 94, 101 (2d Cir. 1987). This is not such a
15 case and the waiver doctrine has no application. Defendants' suggestion to the
16 contrary would require parties to instruct on every line of inquiry which might
17 touch, however slightly, upon privileged matters. This result is unworkable.

18     It would be harsh indeed to impose waiver where authority
19     exists for a conclusion that a document is not privileged.
20     Imposition of waiver under this circumstance would defeat
21     the policy to encourage parties to make these judgments
22     without intervention of the court at each step . . . . In short,
23     waiver cannot stem from an unprivileged communication.
24 Allen-Bradley Co., Inc. v. Autotech Corp., 1989 WL 134500, at *1 (N.D. Ill. Oct.
25 11, 1989).

26 _____
27 [21] Mumford Dec., Ex. 3.
28

1

2

3

**B.    Defendants' Waiver Argument Improperly Seeks Reconsideration Of The Discovery Master's Prior Order Finding M0074400 To Be Privileged**

4    As the Discovery Master will recall, Document M0074400 has already been

5  the subject of unsuccessful discovery motions by defendants challenging privilege.

6  In connection with defendants' previous motion to compel, Mattel submitted a

7  number of privileged documents, including Mr. De Anda's email to Alan Kaye

8  (M0074400), for an *in camera* review.  The Discovery Master found that Mattel's

9  assertion of the attorney-client privilege was proper as to Mr. De Anda's email, as

10  well as nearly all of the other documents in the Global Security files.[22]

11    Defendants' current motion--while styled nominally as one of waiver--is

12  nothing more than a creative, but improper, motion to reconsider the Court's prior

13  orders.  Here, defendants seek to compel production of the very same document

14  which the Discovery Master already declined to compel because it was found to be

15  privileged.  Casting about for a means to avoid this holding, defendants posit an

16  implied waiver argument.  But whatever name a movant puts on a motion,

17  "nomenclature is not controlling . . . . A court must construe whether a motion,

18  however styled, is appropriate for the relief requested."  <u>Bordallo v. Reyes</u>, 763 F.2d

19  1098, 1101-02 (9th Cir. 1985).

20    Defendants do not even attempt to satisfy the stringent requirements for a

21  motion for reconsideration.  They fail to point to any "new material facts or change

22  of law" to justify its reconsideration.  <u>See</u> <u>Local Rule</u> 7-18(b).  No doubt defendants

23  will argue that Mr. De Anda's testimony is itself sufficiently novel to require a

24  reevaluation of the privilege.  This is not so.  Indeed, in connection with the prior

25

26

27

[22]    <u>See</u> Order Re In Camera Review of Global Security Files (July 10, 2007), at 3, Corey Decl., Ex. 4.

28

OPPOSITION TO JOINT MOTION

1   proceeding, Mr. De Anda submitted a declaration which covered much of this same

2   ground.  For example, regarding the "anonymous letter" investigation, Mr. De Anda

3   indicated that he "made inquiries into the allegations in that letter and, in the course

4   of doing so, spoke with Michele McShane . . . " and that he later conveyed his

5   "understanding of those statements" in the email to Mr. Kaye (the document that

6   was then, as now, at issue).[23]  Surely, it cannot be the case that Mr. De Anda's

7   testimony about the allocation of responsibility in the investigations, his frequency

8   of contact with Ms. McShane, or even his frustrations at the pace of the

9   investigation, amount to new "material" facts which would alter the privilege

10  analysis.

11          There is, in short, nothing of substance new here.  As before, defendants seek

12  discovery of privileged communications to which they are not entitled; and, as

13  before, this is inappropriate and should be denied.  See, e.g., Motorala, Inc. v. J.B.

14  Rodgers Mech. Contractors, 215 F.R.D. 581, 586 (D. Ariz. 2003) (construing serial

15  discovery motions as a motion for reconsideration under the Central District's Local

16  Rule 7-18 and denying motion to compel because party had not shown sufficient

17  change in facts or law from prior decision).

18  **II.    DEFENDANTS ARE NOT ENTITLED TO MATTEL'S**

19          **INVESTIGATIVE FILE 02-299**

20          Defendants argue that Mattel should be compelled to produce an investigative

21  file that is wholly irrelevant to the claims and defenses here. (Mot. at 8.)  The

22  documents in this file arise from another investigation undertaken by Mattel's Law

23

24  [23]   Declaration of Richard De Anda in Support of Mattel, Inc.'s Opposition to Joint
      Motion to Compel (1) Production of Certain Documents Withheld Under a Claim of
25  Privilege, (2) Attest to the Completeness of its February 2007 Production of March
26  2002 Investigation Documents, and (3) De-Designate Attorneys' Eyes Only Document,
      at ¶ 4, Corey Decl., Ex. 5.
27

28

1  Department with the assistance of Mr. De Anda.  That investigation was related to
2  an MGA French licensing agent who had provided Bratz-related licensing
3  information to an employee of Mattel's French affiliate, as part of an attempt by
4  MGA's agent to generate interest in licensing Bratz products.  The circumstances of
5  that investigation have nothing to do with Carter Bryant or the other investigations
6  or any claim or defense in this action.  Disclosure of the most of the contents of the
7  file is also prohibited by the attorney-client privilege.

8         **A.   The File Has No Relevance To This Litigation**

9         Time and again, defendants have sought to use the liberal discovery mandated
10  by the Rules to obtain inappropriate discovery.  Each time, this Court has made clear
11  that defendants are not entitled to discovery which is "untethered to a claim or
12  defense" at issue in this litigation.[24]  Just because a Mattel document may reference
13  Bratz or MGA does not make it relevant or discoverable, as the Discovery Master
14  has ruled.  In fact, numerous discovery requests which require the production of
15  documents that "merely mention MGA, Larian, Bratz, or other MGA, products,
16  regardless of whether or not they have anything to do with the claims and defenses
17  in this case" have been found "grossly overbroad."[25]

18         Such is the case here.  Defendants state that Mr. De Anda "acknowledged that
19  Investigative File 02-299 was related to the March 2002 investigation."  (Mot. at 8.)
20  He did not.  He testified that a notation that one investigative file is related to
21  another "could mean a variety of things" such as being "related either by location,

22

23  [24]  Order Granting in Part and Denying in Part Mattel's Motion for Protective
24  Order Regarding "Poly Pocket" Documents (April 19, 2007), at 7, Corey Decl., Ex.
25  6.
    [25]  Order Granting in Part and Denying in Part MGA's Motion to Compel
26  Documents Responsive to First Set of Requests for Production of Documents Dated
27  November 22, 2006 (May 22, 2007), at 18, Corey Decl., Ex. 7.

28

1 subject matter, [or] type of issue."[26]  Mr. De Anda further noted that it was "not

2 necessarily" the case that related files would contain related facts and information

3 and that they could be designated as related because of a host of factors.[27]  Clearly,

4 as an *in camera* review of the file will indicate, Investigative File 02-299 was

5 "related" to MGA in only the broadest –and for purposes of this litigation wholly

6 irrelevant—sense because it involved an investigation that mentioned  Bratz.  But it

7 was in no way related to the March 2002 investigation, the "anonymous letter" or to

8 the claims and defenses at issue in this litigation.[28]  That is exactly why, unlike the

9 other related files, Mr. De Anda did not review this file in preparation for his

10 deposition.[29]  It simply has no relevance here.

11 **B.  The File is Protected From Discovery By the Attorney Client**

12 **Privilege**

13 Further, even if Investigative File 02-299 was relevant to this litigation

14 (which it is not), the contents of the file would not be discoverable as it is made up

15 of a compilation of privileged attorney-client communications.  Communications

16 fall within the scope of the attorney-client privilege when they are confidential and

17 between an attorney and their client, or between an attorney's agent and the client.

18 In re Napster, Inc., 479 F.3d 1078, 1090 (9th Cir. 2007) (noting that "[t]he assurance

19

20 [26]  De Anda Tr. 294:4-9, Mumford Decl., Ex. 1.

21 [27]  De Anda Tr. 294:13-295:18, Mumford Decl., Ex. 1.

[28]  See MGA's Complaint for False Designation of Origin, Affiliation, Association

22 or Sponsorship, Unfair Competition, Dilution, and Unjust Enrichment, Corey Decl., Ex.

23 8. MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, Corey Decl., Ex.  9.

24 [29]  Mr. De Anda could not recall exactly which files he had reviewed during the

25 preparation for his deposition. Defendants' rely on pure speculation by arguing that he "admitted" that he may have reviewed the file.  Given its utter lack of relevance,

26 Mr. De Anda did not review the file in preparation for his deposition. Corey Decl. ¶

27 11.

28

- 14 -

OPPOSITION TO JOINT MOTION

—

1   of confidentiality promotes open attorney-client communications, which are 'central

2   to the legal system and the adversary process.'").  In a corporate business entity, the

3   privilege attaches when the client is a corporation and the attorney is its in-house

4   counsel.  Boca Investerings Partnership v. U.S., 31 F. Supp. 2d 9, 11 (D.D.C. 1998)

5   ("Communications made by and to in-house lawyers in connection with

6   representatives of the corporation seeking and obtaining legal advice may be

7   protected by the attorney-client privilege just as much as communications with

8   outside counsel.").  It also applies to reports prepared by employees for in-house

9   counsel.  See Upjohn Co. v. U.S., 449 U.S. 383, 394-97 (1981).  Additionally, "no

10  waiver of the attorney-client privilege occurs by reason of disclosure of confidential

11  communications to business associates to whom disclosure is reasonably necessary."

12  Giovan v. St. Thomas Diving Club, Inc., 1997 WL 360867, *4 (Terr. V.I. 1997).

13       As established by the declaration of Brian O'Connor, Mattel's Vice President

14  and Assistant General Counsel, save the folder label and investigative log, the

15  communications comprising twenty of the twenty-two page Investigative File No.

16  02-299 were part of an investigation undertaken at his request regarding a matter

17  that has no relation to Carter Bryant, the investigations of 2002 or this litigation.[30]

18  The documents consist of communications between attorneys from Mattel, including

19  Mr. O'Connor and others, regarding the investigation and/or directing Mr. De Anda

20  to undertake certain actions, as well as communications by Mr. De Anda related to

21  the investigation and made under the direction of counsel.[31]  The file also contains a

22  privileged memorandum authored by Mr. O'Connor, which provided legal advice to

23  Mattel's employees.[32]  These documents, which Mattel has submitted in camera so

24

25  ───────────────
    [30]  Declaration of Brian O'Connor ("O'Connor Decl.") ¶ 2.

26  [31]  O'Connor Decl. ¶ 5-6.

27  [32]  O'Connor Decl. ¶ 4.

28

OPPOSITION TO JOINT MOTION

1   as to resolve this issue, are unquestionably protected by the attorney-client

2   privilege.[33]

3   **III.    FURTHER DEPOSITION OF MR. DE ANDA IS UNWARRANTED AS**

4   **DEFENDANTS HAD MORE THAN ADEQUATE OPPORTUNITY TO**

5   **ADDRESS ALL RELEVANT ISSUES**

6           The <u>Federal Rules of Civil Procedure</u> expressly limit depositions to one day

7   of seven hours absent a stipulation by the parties or order of the court.  <u>Fed. R. Civ.</u>

8   <u>P.</u> 30(d)(2); <u>Elvig v. Calvin Presbyterian Church</u>, 375 F.3d 951, 968 (9th Cir. 2004)

9   (noting that the <u>Rules</u> presumptively limit depositions to one day of seven hours).

10  While <u>Rule</u> 26(b)(2) permits the granting of additional time for good cause,

11  "extensions of that limit should be the exception, not the rule."  <u>Roberson v. Bair</u>,

12  2007 WL 1373180, at *10 (D.D.C. 2007).

13          Defendants argue that they have shown "good cause" for additional time

14  because "despite their best efforts" they were unable to cover all the topics that they

15  wished. (Mot. at 5.)  MGA did not use its best efforts to finish that deposition in

16  seven hours.  While Mr. De Anda has "personal knowledge regarding the claims and

17  defenses asserted in this matter," including, most significantly, his "involvement in

18  the March 2002 investigation" (Mot. at 9.), defendants amply covered the March

19  2002 investigation and other topics on which Mr. De Anda had relevant

20  knowledge.[34]  Significantly, MGA spent the first hours of the deposition discussing

21

22  [33]   O'Connor Decl. ¶ 2, 7.

23  [34]   Defendants complain that because certain documents, some in Spanish, were
    produced closely before Mr. De Anda's scheduled deposition they were unable to

24  inquire into those documents. (Mot. at 9-10.)  As Mr. De Anda does not speak
    Spanish, did not author the documents and did not review those documents before

25  his deposition, this cannot serve as any basis for seeking more time with Mr. De

26  Anda.  <u>See, e.g.</u>, <u>Lone Star Indus., Inc. v. River's Bend Red-E-Mix, Inc.</u>, 1992 WL
    752147, at *2 (D. Kan. Oct. 6, 1992) (noting that a "court will generally not require

27  (footnote continued)

28

1    nothing related to Mr. De Anda's purported knowledge as it relates to the claims and
2    defenses in the case.

3          What other topics they did not have sufficient time to cover is not evident.
4    Indeed, defendants' "efforts" were directed at multiple lines of inquiry which were
5    marginally relevant to this litigation. As defendants' own motion indicates, a
6    significant portion of the allotted time was spent inquiring into Mr. De Anda's
7    history with the Los Angeles police department, the fact that he—with the approval
8    and knowledge of Mattel—provides consulting and expert witness testimony on his
9    own account, as well as self-defense invention of Mr. De Anda's that he had
10   invented prior to joining Mattel. (Mot. at 5.) Defendants spent over two hours
11   covering these collateral topics in significant detail.[35] Defendants knew that the
12   seven hour limitation applied, but elected, among themselves, to spend it on
13   collateral topics. They, including Bryant with whom MGA has a joint defense
14   agreement, cannot be heard to that the seven hours was insufficient. Indeed, for
15   characterizing Mr. De Anda as a crucial witness on the investigations related to
16   Bryant, it seems ill-advised to spend hours on, at best, tangential matters before
17   broaching the subject. <u>See, e.g.</u>, <u>Ames v. Black Entertainment Television</u>, 1998 WL
18   _____

19   a deponent to appear for a second deposition" and that the production of a large
     volume of documents days before the deposition did not amount to the "exceptional
20   circumstance[s]" warranting further deposition because party did not show "that the
     number or nature of the documents was so great that counsel could not have
21   reviewed them adequately" and deponent appeared to have no knowledge regarding
22   the documents). Additionally, defendants do not indicate how additional questioning
     by Bryant's counsel could not be anything but cumulative and duplicative of the
23   more than adequate testimony already given.
24        [35]  <u>See</u> De Anda Tr. 27:13-31:22, 80:18-86:21, 86:23-90:11, 97:5-100:2, 100:14-
     102:13, 103:19-104:18, 139:4-140:18, 152:19-153:20, 157:6-19, 158:6-162:14,
25   Mumford Decl., Ex. 1; <u>see also</u> De Anda Tr. 13:6-18:14, 23:10-41:13, 77:18-86:21,
26   90:12-90:23, 92:11-108:21, 109:21-114:18, 138:22-141:5, 152:19-162:14, Corey
     Decl., Ex. 11.
27

28

1   812051, at *9 (S.D.N.Y. Nov. 18, 1998) (denying leave for additional time where

2   party "did not use the limited deposition time wisely, asking many repetitive and

3   irrelevant questions"); Six v. Henry, 796 F. Supp. 1448, 1456 (W.D. Okla. 1992)

4   (denying leave for additional time where party wasted time pursuing marginally

5   relevant inquiries).  Having had an ample opportunity to depose Mr. De Anda on the

6   topics they identify him having knowledge of, defendants' motion should be denied.

### Conclusion

8           For the foregoing reasons, Mattel respectfully requests this Court to deny

9   MGA and Bryant's Joint Motion in its entirety.

10   DATED:  January 14, 2008          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP

12                                      By Jon D. Carey / ZDK
13                                         Jon D. Corey
                                           Attorneys for Mattel, Inc.

OPPOSITION TO JOINT MOTION