1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 90378)
     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

12                  Plaintiff,          Consolidated with
                                        Case No. CV 04-09059
13        vs.                           Case No. CV 05-2727

14  MATTEL, INC., a Delaware            **DISCOVERY MATTER**
15  corporation,                        **[To be Heard by Discovery Master Hon.
                                        Edward Infante (Ret.) Pursuant to Court
16                  Defendant.          Order of December 6, 2006]**

17  ─────────────────────────           DECLARATION OF JON D. COREY IN
18  AND CONSOLIDATED ACTIONS            SUPPORT OF MATTEL, INC.'S
                                        OPPOSITION TO JOINT MOTION TO
19  ─────────────────────────           COMPEL AN UNREDACTED VERSION
                                        OF M0074400, MATTEL'S
20                                      INVESTIGATIVE FILE 02-299 AND
                                        THE FURTHER DEPOSITION
21       **[PUBLIC REDACTED]**          TESTIMONY OF RICHARD DE ANDA

22                                      Date:  February 8, 2008
                                        Time:  9:30 a.m.
23                                      Place: Telephonic

24                                      **Phase 1**
                                        Discovery Cut-Off:    Jan. 28, 2008
25                                      Pre-Trial Conference:  May 5, 2008
                                        Trial Date:           May 27, 2008
26            **CONFIDENTIAL-ATTORNEYS' EYES ONLY**

27        **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

28

07209/2352127.1

                                                    COREY DECLARATION

**DECLARATION OF JON D. COREY**

I, Jon D. Corey, declare as follows:

1. I am a member of the bar of the State of California and the District of Columbia. I am a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). I make this declaration in support of Mattel's Opposition to Defendants' Joint Motion to Compel an Unredacted Version of M0074400, Mattel's Investigative File 02-299 and the Further Testimony of Richard De Anda. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2. Attached as Exhibit 1 is a true and correct copy of the Joint Stipulation of Issues in Dispute Regarding Defendant and Cross-Claimant Carter Bryant's Motion to Compel Further Deposition Testimony From Anne Driskrill and Alan Kaye and for the Appointment of a Discovery Special Master, dated February 7, 2005.

3. Attached as Exhibit 2 is a true and correct copy of Mattel, Inc.'s Report of Meeting of Counsel Regarding Mattel's Motion to Dismiss Bryant's Declaratory Relief Claim, dated July 5, 2006.

4. Attached as Exhibit 3 is a true and correct copy of relevant excerpts from the August 27, 2007 Hearing Re Bryant's Motion for Terminating Sanctions.

5. Attached as Exhibit 4 is a true and correct copy of the Order Re In Camera Review of Global Security Files, dated July 10, 2007.

6. Attached as Exhibit 5 is a true and correct copy of the Declaration of Richard De Anda in Support of Mattel, Inc.'s Opposition to Joint Motion to Compel (1) Production of Certain Documents Withheld Under a Claim of Privilege, (2) Attest to the Completeness of its February 2007 Production of March

2002 Investigation Documents, and (3) De-Designate Attorneys' Eyes Only Document, dated April 19, 2007.

7. Attached as Exhibit 6 is a true and correct copy of the Order Granting in Part and Denying in Part Mattel's Motion for Protective Order Regarding "Poly Pocket" Documents, dated April 19, 2007.

8. Attached as Exhibit 7 is a true and correct copy of the Order Granting in Part and Denying in Part MGA's Motion to Compel Documents Responsive to First Set of Requests for Production of Documents Dated November 22, 2006, dated May 22, 2007.

9. Attached as Exhibit 8 is a true and correct copy of MGA's Complaint for False Designation of Origin, Affiliation, Association or Sponsorship, Unfair Competition, Dilution, and Unjust Enrichment, dated April 13, 2005.

10. Attached as Exhibit 9 is a true and correct copy of MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated January 7, 2007.

11. Attached as Exhibit 10 is a true and correct copy of Judge Larson's July 18, 2006 Order Granting Motions To Dismiss.

12. Attached as Exhibit 11 is a true and correct copy of relevant pages of the deposition transcript of Richard De Anda.

13. I met with Mr. De Anda to prepare him for his deposition. During those meetings Mr. De Anda did not review or discuss either (a) the unredacted version of M 0074400 or the contents thereof, or (b) Mattel's

///

///

///

///

///

Investigative File 02-299 or the contents thereof. He did review the redacted version of M0074400.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 14, 2008, at Los Angeles, California.

Jon D. Corey

EXHIBIT 1

Received: 2/ 7/05 6:08; 310 553 5583 -> JetFax 820; Page 2
FEB-07-2005 18:06 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.2

ROBERT F. MILLMAN, Bar No. CA 062152
DOUGLAS A. WICKHAM, Bar No. CA 127268
KEITH A. JACOBY, Bar No. 150233
LITTLER MENDELSON
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067.3107
Telephone: 310.553.0308
Facsimile: 310.553.5583

Attorneys for Defendant and Cross-Claimant
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation,

Plaintiff,

v.

CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,

Defendant.

AND RELATED COUNTERCLAIMS.

Case No. CV 04-9059 NM (RNBx)

**DISCOVERY MATTER**

**JOINT STIPULATION OF ISSUES IN DISPUTE REGARDING DEFENDANT AND CROSS-CLAIMANT CARTER BRYANT'S MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY FROM ANNE DRISKILL AND ALAN KAYE AND FOR THE APPOINTMENT OF A DISCOVERY SPECIAL MASTER**

[Local Rule 37-2]

Judge: Hon. Nora M. Manella

Magistrate Judge: Hon. Robert N. Block

Discovery Cut-Off: TBD
Pre-Trial Conference: TBD
Trial Date: TBD

EXHIBIT 1

PAGE 4

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107

#m. 370

Received: 2/ 7/05 6:08 310 553 5583 -> JetFax 920; Page 3
FEB-07-2005 18:06 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.3

Defendant and Cross-Claimant Carter Bryant ("Bryant") hereby submits the following Joint Stipulation of Issues In Dispute ("Joint Stipulation") regarding his Motion to Compel Further Deposition Testimony from Plaintiff and Counter-Defendant Mattel, Inc.'s ("Mattel") executives, Ann Driskill ("Driskill") and Alan Kaye ("Kaye"), and for the Appointment of a Discovery Special Master, in accordance with Rules 37 and 53 of the Federal Rules of Civil Procedure and Local Rules 37-2 and 53-1.

I.

**BRYANT'S INTRODUCTORY STATEMENT**

While it is unfortunate that the Court must be burdened with yet another discovery dispute in this case, Mattel's repeated misconduct, obstruction of proper discovery, and its refusals to meet and confer in good faith have necessitated the instant motion. With this motion, Bryant seeks an order from this Court directing Mattel witnesses to respond to proper, probative questions that were posed to them during their depositions, which were improperly objected to and instructed upon by Mattel's lawyers. In addition, however, to stem the tide of Mattel's stonewalling discovery tactics in this case, Bryant also seeks the appointment of a Discovery Special Master to monitor and oversee the discovery process, including attendance at all depositions, for the remainder of this litigation.

Presently at issue are the depositions of Ann Driskill and Allan Kaye, both of whom are Mattel employees with substantial knowledge of the issues in dispute in this case. See Declaration of Keith A. Jacoby ("Jacoby Decl.") submitted concurrently herewith, ¶ . Driskill has been employed by Mattel for more than 11 years, admits that, as a supervisor, she is responsible for administering Mattel's employment policies. (Jacoby Decl., ¶ ). Driskill also directly supervised Bryant from January 1999 to October 2000. (Jacoby Decl., ¶ ). Driskill is also an experienced toy designer, with over a decade of Mattel product knowledge and a professional eye for artistic detail that such experience engenders. (Jacoby Decl., ¶ ).

Kaye is Mattel's Vice-President of Human Resources, with 28 years of experience in the field of human resources, nine of those years spent at Mattel. (Jacoby Decl., ¶ ). Kaye's deposition testimony suggests he has intimate knowledge of Mattel's employment agreement and policies, all of which emanate directly from his department. (Jacoby Decl., ¶ ). Kaye testified that he has over 10 years of training and experience in conducting internal investigations of alleged employee misconduct and related personnel issues. (Jacoby Decl., ¶ ). Based on his experience and training, he is familiar with the steps that should be taken to document employee investigations and other personnel issues, including obtaining and recovering any witness statements, e-mails, notes, correspondence, or other documentation.[1] (Jacoby Decl., ¶ ).

Despite the fact that these two Mattel witnesses have direct, relevant and critical information to which Bryant is absolutely entitled, Mattel flagrantly halted the deposition testimony of both witnesses at every turn when their testimony appeared to be potentially damaging to Mattel. (Jacoby Decl., ¶ ). Rather than permit Bryant to properly discover such critical information, Mattel's counsel steered the witnesses (and itself) clear from danger, by injecting verbal roadblocks throughout their depositions, including fragrantly coaching its witnesses, instructing the witnesses not to answer valid questions, lengthy speaking objections and ongoing verbal histrionics. (Jacoby Decl., ¶ ).

Most troubling of all, however, is the fact that Mattel's conduct at these depositions seems to be part of a larger systematic cover up effort including hiding the ball, repeated stall and delay tactics, withholding relevant evidence, allowing evidence, including e-mails and other electronic documentation, to be destroyed, despite Bryant's requests that it be preserved, and now, at the Kaye and Driskill

---

[1] In fact, during his tenure at Mattel, Kaye has personally requested e-mails and other documentation associated with investigations of suspected employee misconduct, and has dealt with situations in which he was unable to retrieve certain e-mails and other documents that were not retained. (Jacoby Decl., ¶___)

Received: 2/ 7/05 6:09PM; 310 553 5583 -> JetFax 920; Page 5
FEB-07-2005 18:07 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.5/31

depositions, deliberating hiding evidence that may be harmful to its case, even though Bryant is absolutely entitled to discover it. (Jacoby Decl., ¶ ). These ongoing egregious tactics have unnecessarily burdened this Court, corrupted the record, needlessly prolonged the depositions, and constituted a clear abuse of the discovery process.

*This abuse must end.* Accordingly, Bryant, by this joint stipulation and motion, Bryant seeks to compel Driskill and Kaye to respond to questions that Mattel's attorneys impermissibly instructed them not to answer, and to appoint a Discovery Special Master to supervise the taking of all future depositions and related discovery issues that may arise. Finally, Bryant seeks sanctions against Mattel and/or its counsel in the amount of $__________ for its reasonable costs and fees incurred by having no choice but to bring this motion. (Jacoby Decl., ¶ ).

## II.

## MATTEL'S INTRODUCTORY STATEMENT

TBA

## III.

## BRYANT'S STATEMENT OF FACTS

### A. The Thwarted Kaye And Driskill Depositions And Underlying Discovery Disputes.

Mattel's core contention in this lawsuit against Bryant is that in conceiving "Bratz," Bryant "converted" or copied Mattel intellectual property. Case critical issues also revolve around Mattel's form "Confidential Information and Inventions Agreement" ("Agreement") and form "Conflict of Interest Questionnaire" ("Questionnaire"). Mattel forced Bryant, and apparently all of its employees, to sign these forms or variations of them. (Jacoby Decl., ¶ ). For its part, Mattel contends that Bryant breached these agreements by going to work for MGA Entertainment, Inc. (Jacoby Decl., ¶ ). On the other hand, Bryant contends he did no such thing and,

EXHIBIT 1

further, that Mattel' agreements are unenforceable contracts of adhesion, unconscionable and violate California law. (Jacoby Decl., ¶ ). The method and manner in which Mattel negotiates, interprets, enforces and applies the terms of the aforementioned contracts is clearly discoverable, and Driskill and Kaye were uniquely positioned to offer testimony on these subjects. (Jacoby Decl., ¶ ).

Another crucial issue in this matter is Bryant's contention that Mattel is not only depriving Bryant of relevant evidence to which he is entitled, but that Mattel is deliberately allowing such evidence, including e-mails and other electronic documentation, to be destroyed. (Jacoby Decl., ¶ ). In particular, Bryant contends that Mattel has deliberately failed to produce, in response to several document requests, a host of relevant electronic evidence, including e-mails from Bryant during his tenure at Mattel,[2] and e-mails concerning Bryant during Mattel's investigation into Bryant's alleged wrongdoing in August of 2002. (Jacoby Decl., ¶ ). Indeed, the gravity of Mattel's suspicions against Bryant were so serious that it not only garnered the attention of Mattel's Chief Executive Officer ("CEO"), Robert Eckert, but it prompted Mr. Eckert to personally direct Kaye, a senior executive at Mattel, to investigate the allegations of suspected misconduct by Bryant in August of 2002. (Jacoby Decl., ¶ ).

Notwithstanding the severity of its allegations, the involvement of high level Mattel executives, and a presumably thorough internal investigation, Mattel now claims that it cannot produce a host of e-mails and other electronic documentation concerning Bryant and Mattel's investigation into his alleged wrongdoing because such e-mails purportedly do not exist and/or the e-mails were destroyed through

---

[2] While Mattel has apparently managed to retrieve scores of emails *to* addressees including Bryant, Mattel has failed to produce any email *from* Bryant, which are obviously more germane, and called for by many of Bryant's requests for production of documents in this case. (Jacoby Decl., ¶___) Additionally, Bryant provided Mattel with a list of 24 people with whom he had regular email contact. However, no emails or communications with any of these people have been produced. (Jacoby Decl., ¶___)

### B. Bryant's Repeated Efforts To Meet And Confer Regarding The Kaye And Driskill Depositions.

Bryant attempted, in vain, to meet and confer with Mattel and resolve these issues on at least ***five separate occasions*** over a six-week period. (Jacoby Decl., ¶ ). First, Bryant's counsel sent a letter on December 17, 2004, requesting to meet and confer with Mattel's counsel and setting forth the relevant law prohibiting Mattel's improper behavior and instructions not to answer. (Jacoby Decl., ¶ ). Mattel ignored the letter. (Jacoby Decl., ¶ ).

On January 14, 2005, counsel for Bryant and counsel for Mattel met and conferred in person before a certified court reporter to discuss, at length, the specific grounds for Bryant's need to re-open the depositions of Driskill and Kaye, and appoint a Discovery Special Master due to Mattel's conduct during those depositions. (Jacoby Decl., ¶ ). At that meeting, counsel for Mattel promised to respond to Bryant's proposal for stipulating to a discovery master by January 21, 2005. Yet, once again, no further response was received. (Jacoby Decl., ¶ ).

Then, on January 18, 2005, Bryant's counsel sent yet another letter to Mattel's counsel setting forth, in detail, the specific grounds, relevant authorities, and citations to the record of the objectionable conduct with respect to an anticipated motion to compel responses from Driskill and Kaye, and for a Discovery Special Master, again to no avail. (Jacoby Decl., ¶ ).

On January 21, 2005, still Bryant, having received no response from Mattel's counsel, sent another letter reminding Mattel of its promise to respond to Bryant's proposals that day as promised. Once again, Mattel's lawyers failed to offer any response whatsoever. (Jacoby Decl., ¶ ). However, on January 24, 2005, Mattel's counsel finally sent a letter to Bryant in which it rejected outright the proposal for a Discovery Special Master, without providing any authorities in support of its position.[4] (Jacoby Decl., ¶ ). In the letter, Mattel's counsel acknowledged that

[4] In Mattel's letter, counsel for Mattel ignored Bryant's two previous letters setting forth, in

Received: 2/ 7/05 6:10PM; 310 553 5583 -> JetFax 920; Page 8
FEB-07-2005 18:08 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.8/31

Mattel had not responded at all to the issue of re-opening the Driskill/ Kaye depositions, but indicated that it would do so. (Jacoby Decl., ¶ ). Predictably, because Mattel failed once again to respond, on January 31, 2005, Bryant sent a final meet and confer letter to Mattel reiterating its position on these issues. (Jacoby Decl., ¶ ).

On February 2, 2005, Mattel finally responded to the issue of the Driskill/ Kaye depositions, in which it flatly rejected Bryant's repeated requests to re-open the depositions, without providing any legitimate grounds or supporting authority for its position.[5] (Jacoby Decl., ¶ ). Mattel also refused to stipulate to a Discovery Special Master and again confirmed its previous refusals to re-open the Driskill and Kaye depositions. (Jacoby Decl., ¶ ).

Unfortunately, despite its repeated efforts to resolve these pressing issues informally and to avoid burdening this court with a discovery motion, Bryant was left with no choice but to seek an Order compelling the further testimony of Driskill and Kaye and for an Order appointing a Discovery Special Master to oversee all future depositions and other discovery issues that may arise during the course of this litigation. Bryant respectfully requests this court grant his Motion in order to curb Mattel's ongoing improper conduct tactics and to prevent further needless discovery motions. Additionally, Mattel should also be ordered to pay sanctions, including Bryant's attorneys' fees incurred in making this motion in the amount of ______________, pursuant to Federal Rule of Civil Procedure 37 (a)(4)(A) and 28 U.S.C. § 1927.

---

detail, the relevant authorities relating to Mattel's improper instructions not to answer, and the grounds for his motion to compel deposition responses and for a discovery master. (Jacoby Decl., ¶ __)

[5] Indeed, despite the fact that Bryant sent *four* letters on the subject of the Driskill/ Kaye depositions, including two which set forth in detail his position, the relevant authorities, exemplars of the objectionable conduct at issue, and the relevant citations to the record, Mattel's letter incredulously states that it will not produce the witnesses for deposition because they need further authority on the issue. (Jacoby Decl., ¶ __).

LITTLER MENDELSON A Professional Corporation 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553.0308

7 CASE NO. 04-9059 NM (RNBx)

EXHIBIT 1

PAGE 10

Received: 2/ 7/05 6:10PM; 310 553 5583 -> JetFax 820; Page 8
FEB-07-2005 18:08 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.9/31

IV.

MATTEL'S STATEMENT OF FACTS

TBA

V.

ISSUE NUMBER ONE

Should Ann Driskill and Alan Kaye Be Compelled To Answer Deposition Questions That Were Improperly Objected To And To Which Mattel's Counsel Improperly Instructed Them Not To Answer?

A. **Bryant's Position**

1. **Mattel Instructed Driskill Not To Answer On Impermissible Grounds.**

As a matter of law, Bryant is entitled to resume his questioning of Driskill and Kaye in all areas where Mattel instructed the witnesses not to answer questions based on lack of foundation, relevance and other impermissible grounds. Under the Federal Rules, "[a] person may instruct a witness not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." Fed. R. Civ. P. 30 (d)(1). Instructions not to answer based on other grounds, such as those asserted by Mattel's attorneys, are "devoid of merit and fail[] to comply with the established procedure of FRCP 30(c)." Shapiro v. Paul Revere Life Ins. Co., 1997 WL 601430 at *1 (N.D. Cal. 1997) ("FRCP 30(d)(1) provides exclusive grounds for instructing a deponent not to answer."); see also Ralston Purina Co. v. McFarland, 550 F.2d 967, 973 (4th Cir. 1997) ("Counsel for party had no right to impose silence or instruct witnesses not to answer and if he believed questions to be without scope of [the discovery] orders, he should have done nothing more than state his objections"); Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995) ("It is inappropriate [for an attorney] to instruct a witness not to answer based on the basis of relevance."); Hearst/ABC-Viacom Entertainment Services v. Goodway Marketing, Inc., 145 F.R.D. 59, 63 (E.D. Pa. 1992) (the mere

EXHIBIT 1

PAGE 11

fact that a question is repetitive or irrelevant is not a proper ground to instruct a witness not to answer). If a deponent's counsel has an objection, the proper procedure is to state the objection for the record and allow the question to be answered. See Ralston Purina Co., 550 F.2d at 973.

Mattel disobeyed well-established procedural rules repeatedly. Counsel's improper objections and conduct during the depositions infected them from the start.[6] For example, Bryant's counsel attempted to question Driskill about some of Mattel's employment agreements, including its "Confidential Information and Inventions Agreement", which is directly at issue in this lawsuit. (Jacoby Decl., ¶ ). According to Driskill's own testimony, during her 11 year tenure as an employee of Mattel she had previously signed, or declined to sign, several versions of this agreement and, as Bryant's former supervisor and manager at Mattel, she was involved in administering Mattel's employment policies, including the enforcement of this agreement. (Jacoby Decl., ¶ ). She could identify no fact suggesting she signed agreements that were any different than those presented to former colleague Bryant.[7] (Jacoby Decl., ¶ ). Nonetheless, Mattel blocked any questioning about her knowledge of Mattel's employment agreements, objecting and instructing Driskill not to answer on the grounds that the questions "lacked foundation." (Jacoby Decl., ¶ ). The following excerpts are illustrative:

Q: Do you understand what that paragraph [in the Proprietary Information Check-Out Form] means?

Mr. Zeller: I'm instructing the witness not to answer the question. Let's move on, counsel.

Mr. Jacoby: On what grounds? Privilege?

Mr. Zeller: No. On the complete lack of foundation. Were you

[6] Only select examples are quoted herein; all relevant excerpts are attached as exhibits to the declaration of Keith Jacoby filed concurrently in support of this Joint Stipulation and Motion, and highlighted for the Court's convenience. (Jacoby Decl., ¶ _).

[7] Specifically, in response to the question, "Do you have any reason to believe that the agreement that Carter Bryant signed was different in any way from the agreement that anybody else in collectibles signed back in 1999?," the witness responded, "no." (Jacoby Decl., ¶ ).

Received: 2/ 7/05 6:11PM; 310 553 5583 -> JetFax 920; Page 11
FEB-07-2005 18:09 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.11/31

not listening when she testified that she had not seen this document which you haven't bothered to mark as an exhibit?

(Jacoby Decl., ¶ ).

Q: I understand you've testified that you haven't seen this document. Are you familiar with the policy that that paragraph articulates?

* * * *

Mr. Zeller: I'm going to instruct the witness not to answer the question as phrased ... on the basis there is no foundation for this, counsel.

* * * *

Mr. Jacoby .... I've laid 20 minutes of foundation that over the course of 11 years she's familiar with the policies and practices of the company. You don't get to immunize her from this testimony because she hasn't read this particular document. Mr. Zeller, you are obstructing the deposition, you are obstructing my ability to prove the facts in my cross-complaint....

* * * *

Mr. Zeller: Oh, I see. Well, then, that's another basis on which I'm instructing [the witness not to answer] because we've moved to dismiss your nonsensical cross-complaint. And you haven't shown any entitlement to discovery on it. So why don't you move on.

(Jacoby Decl., ¶ ).

Q: Now, I'm going to ask you some questions about Carter Bryant's [Inventions and Assignment] Agreement, which I'm perfectly entitled to do.

Mr. Zeller: No, actually you're not, counsel. This lacks foundation. Why don't you move on?

Q: What does the term "reduced to practice" mean to you?

Mr. Zeller: I'm instructing the witness not to answer the question. This completely lacks foundation.

(Jacoby Decl., ¶ ).

Q: Okay. I've given you an opportunity to review this [Inventions and Assignments Agreement]. Why don't you take the opportunity to read it from top to bottom.

Mr. Zeller: What's your question, counsel?

Mr. Jacoby: I'm going to have lots of questions.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

10

CASE NO. 04-9059 NM (RNBx)

EXHIBIT 1
PAGE 13

> Mr. Zeller: Well, she's not answering questions about – you're not going to have a witness sit down, read a document that she's told you that she doesn't recall seeing before and ask her questions about it. It's that simple. You've been told that. So if you want to waste your time and have the witness reading the – this document at the deposition, I guess that's your prerogative.

(Jacoby Decl., ¶ ). These "lack of foundation" objections were improper and did not provide any basis for instructing the witness not to answer. An attorney may not foreclose questioning about a document just because a witness may not recall seeing the particular document:

> When the deposing attorney presents a document to a witness at a deposition, that attorney is entitled to have the witness, and the witness alone, answer questions about the document. . . . ***If the witness does not recall having seen the document before or does not understand the document, the witness may ask the deposing lawyer for some additional information, or the witness may simply testify to the lack of knowledge or understanding.***

Plaisted v. Geisinger Medical Center, 210 F.R.D. 527, 530 (2002)(emphasis added)("[d]irections to a deponent not to answer a question can be even more disruptive than objections. . . a party may instruct a deponent not to answer only when necessary to preserve a privilege" or on other limited grounds set forth in FRCP 30(d)).

At other points during the deposition, Mattel precluded Bryant from obtaining testimony concerning key employment agreements, by claiming that the questions had been "asked and answered," stating: "I'm instructing the witness not to answer repeated questions." (Jacoby Decl., ¶ ). This, too, was improper. That a question may have been asked and answered is not a legitimate basis for instructing a witness not to answer. First Tennessee Bank v. Federal Deposit Ins. Corp., 108 F.R.D. 640 (E.D. Tenn. 1985)(inappropriate to instruct a witness not to answer on the grounds that the question has been asked and answered).

Bryant's counsel's efforts to question Driskill about her understanding of Mattel's employment policies based, again, on her 11 years of knowledge and experience as a Mattel manager and employee were also foreclosed. (Jacoby Decl., ¶

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

). Here, too, Mattel's attorney obstructed Bryant's ability to obtain relevant testimony on the subject, by repeatedly interposing improper speaking objections and effectively precluding the witness from answering the questions. The following is illustrative:

> Q: Ok. If a Mattel employee in your department did a drawing, a pencil drawing, at home, would you believe – do you believe that it belongs to Mattel?
>
> Mr. Zeller: A pencil drawing of what?
>
> Mr. Jacoby: Anything.
>
> Mr. Zeller: Well, the question is incomplete. It's also a hypothetical. Lacks foundation.
>
> The witness: I think it depends on what the drawing is.
>
> Q: What kind of drawings would belong to Mattel?
>
> Mr. Zeller: Counsel, this is completely inappropriate and hypothetical. There's no foundation for this. You don't have a right to ask lay witnesses hypothetical questions.
>
> Mr. Jacoby: I'm asking her about Mattel's policies. And again, every time my questions go into an area you're uncomfortable with you [object] –
>
> Mr. Zeller: It's not uncomfortable with. It has to do with the fact that, as you know, you have to have a foundation to ask [these questions] –
>
> Mr. Jacoby: No, I don't, not in a deposition.
>
> Mr. Zeller: You don't think you have to have a foundation? Well, then I guess we better leave now, because we will go to court on that. That's absurd. You know full well you have to have foundation.
>
> Mr. Jacoby: I laid the foundation. She says she's familiar with [Mattel's employment] policies.

(Jacoby Decl., ¶ ).

Objections, such as these, to the competency of a witness to testify about certain subjects provide no basis for an instruction not to answer and, indeed, are preserved for trial without an objection even being stated during the deposition. See Fed. R. Civ. P. 32(d)(3)(A); see also Hall v. Clifton Precision, 150 F.R.D. 525, 528 n.3 (E.D.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

EXHIBIT /

Received: 2/ 7/05 6:12PM; 310 553 5583 -> JetFax 920; Page 14
FEB-07-2005 18:10 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.14/31

Pa. 1993)( Under Fed. R. Civ. P. 32(d)(3)(A), objections to the competency, relevancy, or materiality of deposition testimony generally are preserved for trial. Therefore, counsel should not repeatedly interrupt the deposition to make these objections).

Mattel's counsel similarly prevented Driskill from answering a line of questions from Bryant's counsel regarding what similarities or differences Driskill observed, as an experienced designer, between "Bratz" dolls and Mattel's property and products, on the alleged grounds that the questions were a "waste of time", "overbroad" "vague", "irrelevant" and "just improper." (Jacoby Decl., ¶ ).

> Q: Okay. The Bratz dolls don't look like Barbie dolls. That's true, isn't it?
>
> A: I'm going to object. The question is overbroad. Lacks foundation. Vague and ambiguous.
>
> * * * *
>
> Q: What about the Bratz, as you first saw them, was different from anything you had seen at Mattel?
>
> Mr. Zeller: You know, counsel, this is – I'm going to start instructing the witness [not to answer]. This is [a?] complete and utter waste of time. Having a designer give a verbal inventory, without any documents or any foundation laid, as to differences, similarities, and the like in response to these overbroad and vague questions is just improper.
>
> Mr. Jacoby: She's – she testified that there were things that were different. I'm just following up on her answer.
>
> Mr. Zeller: I understand. And, you know, there's a point at which this is just –
>
> Mr. Jacoby: It's funny how that point comes when it gets to the part that would be helpful to my client's case.
>
> Mr. Zeller: I don't think that's – that's the case. I'm just giving you some forewarning that this is – this is only going to for so long because it's just completely irrelevant. Having a designer, like I [said], give a series of verbal inventory of things just from memory is about an irrelevant as it gets.

(Jacoby Decl., ¶ ). Mattel's instructions not to answer based on relevance were wholly improper. Hall, 150 F.R.D. at 528 n.3; Resolution Trust Corp., 73 F.3d at 266

EXHIBIT 1
PAGE 16

(objections not to answer based on relevancy are improper). The objections were also specious because discovery of this information is, without question, relevant. Mattel contends that Bryant "stole" the "Bratz" concept from Mattel, by copying Mattel's abandoned "Toon Teens" project or some other Mattel project. (Jacoby Decl., ¶ ). Whether Driskill observed similarities or differences between "Bratz" and Mattel's property is directly probative of whether "Bratz" was "stolen" or copied from Mattel property. Moreover, it goes without saying that information need not be admissible to be discoverable. Fed. R. Civ. P. 26 (b)(1). For discovery purposes, areas of inquiry need only appear "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26 (c); Ralston Purina Co., 550 F.2d at 973 ("it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence") This standard was unquestionably satisfied by Bryant's counsel's questions at the deposition.

**2. Mattel Instructed Kaye Not To Answer On Impermissible Grounds.**

Mattel's counsel employed the same tactic at Kaye's deposition when Kaye was asked questions about the interpretation of Mattel's form employment contracts:

> Q: If a Mattel designer paints a home as a hobby, is he required to offer those paintings to Mattel as a condition of his employment?
>
> Mr. Zeller: The question is hypothetical, lacks foundation, and is incomplete as a hypothetical.
>
> Q: By Mr. Jacoby: Based on your understanding of this paragraph, if a Mattel employee paints at home is he required to offer those paintings to Mattel?
>
> Mr. Zeller: What's he painting? His house?
>
> The witness: I would say it depends on his painting.
>
> Q: By Mr. Jacoby: What does it depend on?
>
> A: Depends on what he's painting.
>
> * * * *

LITTLER MENDELSON A Professional Corporation 2049 Century Park East 5th Floor Los Angeles, CA 90067 3107 310.553.0308

EXHIBIT 1
PAGE 17

Q: He paints a picture of his house, is he required to offer it to Mattel?

A. I would say --

Mr. Zeller: Same objections.

The witness: I would say no.

* * * *

Q: How could someone distinguish between what Mattel can use to be made into a Mattel product versus what they can't, in your mind. . . . I'm saying given the fact that maybe a house – a house could be something that Mattel wouldn't be interested in turning into a dollhouse versus something that Mattel would be interested in turning into a dollhouse, it would require judgment to distinguish between the two; isn't that right?

Mr. Zeller: I'm going to instruct the witness not to answer this question. This is just abusive.

Mr. Jacoby: On the basis of what?

Mr. Zeller: On the basis that you are so completely out of bounds of wasting an executive's time on your hypotheticals. What basis do you think you have for asking these opinion hypotheticals of a lay witness and wasting the executive's time? Why don't you cite me a rule.

Mr. Jacoby: I'm not required ... to do that ... I'm asking him to explain a form that emanates from his department.

* * * *

Mr. Zeller: You've been asking him hypotheticals. And it is completely inappropriate . . . I'm telling you move on, counsel.

(Jacoby Decl., ¶ ).

Bryant's counsel also attempted to ask Kaye about an investigation that Mattel conducted of Bryant's purported "conversion" of Mattel's property. These efforts, too, were stifled by Mattel's counsel. (Jacoby Decl., ¶ ). For example, Bryant's counsel asked Kaye, based on his 28 years of experience in the field of Human Resources, "is it typical in an internal investigation that interviews are conducted[?]" Mattel's attorney retorted:

[T]his has absolutely nothing to do with this case. And so unless you lay some foundation as to how this could have anything whatsoever to do with this case,

I'm going to instruct the witness not to answer these questions.

(Jacoby Decl., ¶ ). He then argued that Bryant was not "allow[ed] to engage in what is clearly a fishing expedition on behalf of MGA in order to find out how it is Mattel ascertains its wrongdoing." (Jacoby Decl., ¶ ). This is nonsense under the modern rules of discovery.

> [N]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. *Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.* To that end, either party may compel the other to disgorge whatever facts he has in his possession.

Ralston Purina Co., 550 F.2d at 973 (emphasis added).

**3. Mattel's Improper Instructions Not To Answer Are Alone Sufficient Grounds To Grant Bryant's Motion To Compel And Award Sanctions.**

A motion to compel and an award of sanctions is appropriate based solely on Mattel's improper instructions to the deponents not to answer properly propounded questions. See FRCP 30(d)(1) and (3) ("If the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof"); see also Banco Nacional De Credito Ejidal, S.A. v. Bank of America Nat. Trust & Savings Ass'n, 11 F.R.D. 497, 499-500 (N.D. Cal. 1951) (granting motion to compel answers to deposition questions under FRCP 37 and issuing sanctions where opposing counsel improperly instructed witness not to answer questions); Plaisted, 210 F.R.D. at 530 (finding improper instructions not to answer during a deposition to be particularly disruptive and that the "making of an excessive number of objections may itself constitute sanctionable conduct"); see also Paramount Communications Inc. v. QVC Network Inc., 637 A.2d 34, 56 (Del. 1994) (finding counsel's behavior unacceptable

Received: 2/ 7/05 6:14PM; 310 553 5583 -> JetFax 920; Page 18
FEB-07-2005 18:11 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.18/31

where he "continually interrupted questioning, engaged in colloquies and objections . . . and constantly pressed the questioner for time throughout the deposition"); One Bancorp Securities Litigation v. One Bancorp, 134 F.R.D. 4, 5-8 (D. Me. 1991) (granting motion to compel responses to deposition questions where the deponent, on advice of counsel, had refused to answer questions based on irrelevance); Ralston Purina Co., 550 F.2d at 973 (granting motion to compel because deponent's counsel improperly instructed the deponent not to answer a series of questions on grounds other than privilege or other bases specifically recognized in FRCP 30(d)(1), and stating that "[t]he action of plaintiff's counsel in directing [the witness] not to answer the questions posed to him was ***indefensible and utterly at variance*** with the discovery provisions of the Federal Rules of Civil Procedure").

Mattel deliberately frustrated Bryant's ability to obtain relevant testimony necessary for Bryant's defense and the prosecution of his cross-claims and to fairly examine the witnesses. Mattel's disruptive objections and improper instructions also unnecessarily prolonged and disrupted the depositions of Driskill and Kaye. (Jacoby Decl., ¶ ). Bryant's motion to compel and for sanctions should be granted for this reason alone.

**4. Mattel Also Instructed Driskill And Kaye Not To Answer Questions Based On Improper Assertions Of Privilege And Work Product.**

Even when Mattel seemingly instructed its witnesses not to answer questions on the permissible grounds of privilege, its instructions were often improper because it was using the privilege not only to shield advice sought or obtained in an attorney-client communication or legitimate attorney work-product, but also to shield underlying facts from discovery merely because the facts were transmitted, at some point, to an attorney. That a witness reveals facts to a lawyer or learns facts from a lawyer does not make such facts privileged. "[C]ourts have consistently held that the work-product concept furnishes no shield against discovery . . . by deposition, ***of the***

LITTLER MENDELSON

EXHIBIT 7

PAGE 20

*facts* that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or non-existence of documents, even though such documents themselves may not be subject to discovery." Nutmeg Insurance Co. v. Atwell, Vogel & Sterling, et al., 120 F.R.D. 504, 509 (W.D. La. 1988)(*citing* 8 Wright & Miller, Federal Practice & Procedure, § 2023, at 194 (1970))(emphasis added); Resolution Trust Corp., 73 F.3d at 266 ("Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect *facts* concerning the creation of work product or *facts* contained within work product.") (emphasis added). The following excerpts from the Kaye deposition are illustrative:

> Q: What input have you given during your tenure of employment about these form of Agreements?
>
> Mr. Zeller: To the extent that those were communications from counsel concerning the content of those agreements I would instruct the witness not to disclose those.
>
> Mr. Jacoby: Well, I'm asking what you said, what your input is, and that's asking for what you say. I would suggest to you that that's not privileged. Because saying something to a lawyer doesn't make it privileged.

(Jacoby Decl., ¶ ).

* * * *

> Q: Was it your practice in 2002 to consult with legal before referring an investigation to either H.R. or Worldwide Security?
>
> Mr. Zeller: You are talking about with respect – with respect to a specific incident?
>
> Mr. Jacoby: To any incident. I'm asking for his practice.
>
> Mr. Zeller: Well, but then that goes back to the point I was making earlier. To the extent that the practice is predicated upon communications with counsel and advice that you have received from counsel, you should exclude that from your answer. And the substance of that should not be disclosed.
>
> (Jacoby Decl., ¶ ).

Similarly, Mattel's improper instructions deprived Bryant of his ability to elicit facts relevant to his contention that Mattel allowed the destruction of key emails in

EXHIBIT 1
PAGE 21

this case through its dubious document retention system and failed to take steps to preserve all e-mails concerning Bryant and the investigation into his alleged wrongdoing. The following excerpts from the deposition of Alan Kaye are illustrative.

> Q: And so if a person with an email account at Mattel is separated [from employment], is there any practice that Mattel has to gather up and retain the emails that the person has on their system at the point of separation?
>
> Mr. Zeller. Again, I'm going to instruct the witness to exclude from his answer information that he has received from or communications with counsel.
>
> * * * *
>
> Q: Based on your 28 years of experience could you describe the basic elements of an internal investigation. I mean, I can walk you through it if you like. Is it typical in an internal investigation that interviews are done[?]
>
> Mr. Zeller: First of all, this is clearly asking for privileged information. Because if you laid the foundation, what you would find out is obviously these things, as you know, Mr. Jacoby, are done in connection with counsel including the practices that are followed.
>
> * * * *
>
> Q: And so it's true, then, that Mattel has used in its internal investigations electronic documents that are older than four months old, including emails?
>
> Mr. Zeller: I'm going to instruct the witness not to answer the question.
>
> Mr. Jacoby: On what basis?
>
> Mr. Zeller: <u>On the grounds of privilege and work product.</u>

(Jacoby Decl., ¶ )(emphasis added).

Clearly, Mattel's overbroad and blanket assertions of the attorney-client privilege were not only improper, but were also a deliberate attempt to thwart Bryant's ability to obtain relevant facts and testimony necessary to defend this case and prosecute his cross-claims. <u>See In re Bevill, Bresler & Schulman Asset Mgmt. Corp.</u>, 805 F.2d 120, 123 (3rd Cir. 1986) (overbroad and blanket assertions of the attorney-

EXHIBIT 1
PAGE 22

Received: 2/ 7/05 6:15PM 310 553 5583 -> JetFax M920; Page 21
FEB-07-2005 18:12 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.21/31

client privilege are inappropriate). Further, the party who asserts the privilege has the burden of proving that **each question** elicits a privileged or work-product communication. See In re Arthur Treacher's Franchise Litigation, 92 F.R.D. 429, 437 (E.D. Pa. 1981); *cf.* Conoco, Inc. v. United States Dept. of Justice, 687 F.2d 724, 730 (3rd Cir. 1982). Mattel's overbroad and vague assertions of the privilege, however, have wholly failed to satisfy its burden. See In re Arthur Treacher's Franchise Litigation, 92 F.R.D. at 437 (an objection and refusal to answer must be predicated on a sufficient demonstration that the matter inquired about is privileged); Swarthmore Radiation Oncology v. Lapes, 1993 U.S. Dist. LEXIS 17059 *8 (E.D. Pa. November 15, 1993) (blanket objections are of no avail when unsupported by evidence that privilege or work product protection applies).

**5. Mattel Corrupted The Driskill And Kaye Depositions By Interposing Lengthy Speaking Objections And Coaching The Witnesses.**

In addition to improperly instructing Driskill and Kaye not to answer legitimate questions, Mattel's attorneys frequently interrupted important questions with "objections" that were transparently designed to coach the witness, to suggest the desired response and, indeed, to outright re-frame the question to Mattel's liking. (Jacoby Decl., ¶ ). An attorney may not, however, object to questions in such a way as to coach the witness or suggest an answer. American Directory Service Agency v. Beam, 131 F.R.D. 15, 18 (D.D.C. 1990) (counsel "coached" responses, frequently instructed witnesses not to answer, and made vexatious requests for clarification that "prevented the elicitation of meaningful testimony and needlessly added to the expense of this litigation," thus warranting sanctions). Such conduct justifies granting Bryant's motion to redepose the witness. This did not stop Mattel from doing so, however.

Q: Do you have an understanding of what the term "reduced to practice" means?

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

EXHIBIT 1
PAGE 23

Received: 2/ 7/05 6:16PM; 310 553 5583 -> JetFax 920; Page 22
FEB-07-2005 18:13 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.22/31

A: You're asking as used in Exhibit 50 [the Inventions and Assignments Agreement]; right?

Q: No. In general.

Mr. Zeller: Well, the question is vague and ambiguous and lacks foundation.

Mr. Jacoby: Do you?

Mr. Zeller: There's no context to it. What context are you talking about?

Mr. Jacoby: In any context. Do you know what the term "reduced to practice" means?

Mr. Zeller: The question is grossly improper. Why don't you give a context, counsel. Are you talking about in agreements? In some agreement that she signed?

Mr. Jacoby: You can answer.

Mr. Zeller: Do you understand the question? I mean in terms of what context he's asking about?

The witness: Not really.

(Jacoby Decl., ¶ ).

Q: Okay. The Bratz dolls don't look like Barbie dolls. That's true, isn't it?

Mr. Zeller: I'm going to object. The question is overbroad. Lacks foundation. Vague and ambiguous.

The witness: They're not the same doll.

Q: How are they different as a general proposition?

Mr. Zeller: The question lacks foundation. What Barbie doll are you talking about? And in what respect?

Mr. Jacoby: Well, can you – can you describe for me specific features of the Bratz dolls that aren't found in any Barbie doll?

Mr. Zeller: I'm going to object. The question lacks foundation. You haven't established that the witness has seen every Barbie doll. And you still haven't described what aspect of these dolls you're asking about.

(Jacoby Decl., ¶ ).

Q: Is there a policy to not explain [the Employee Agreement] to employees unless they ask questions?

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

21. CASE NO. 04-9059 NM (RNBx)

EXHIBIT 1

Mr. Zeller: The question is confused.

The witness: I don't understand it. Is there -- one more time.

Mr. Jacoby: In other words, is it the policy of H.R. to have employees sign these agreements without explanation from H.R. unless the employee affirmatively asks questions?

Mr. Zeller: Objection as to the term "policy."

The witness: Again -- "policy," yeah.

(Jacoby Decl., ¶ ).

In several instances, Mattel's deliberately lengthy and disruptive speaking objections even caused the witness to forget the pending question:

Q: Do you have any reason to believe -- is there any fact that you have in your brain that suggests that you didn't sign the same form of Inventions and Assignment Agreement as [??] Carter Bryant?

Mr. Zeller: This assumes facts not in evidence, counsel. She's already testified that she doesn't recall this particular form. And moreover, when you say same one as Carter Bryant, you're talking about a particular one in January of 1999. And there is absolutely no foundation for you to suggest to the witness that she must have signed this particular form. You haven't established anything along those lines. To suggest to the witness that you have is -- completely lacks foundation.

Mr. Jacoby: You can answer.

The witness: I've kind of forgotten the question again.

Mr. Jacoby: Okay. Well, that's why your attorney's [sic] objecting the way he is.

(Jacoby Decl., ¶ ).

In this manner, Mattel prevented Bryant from conducting a fair examination of the witnesses. As one District Court has aptly observed:

Depositions have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond ... objections and colloquy by lawyers tend to disrupt the question-and-answer rhythm of a deposition and obstruct the witnesses's testimony. Since most objections, such as those grounded on relevance and materiality, are preserved for trial, they need not be made. As for those objections which would be waived if not made immediately, they should be stated pithily.

* * * *

> The underlying purpose of a deposition is to find out what a witness saw, heard, or did –what the witness thinks. ***A deposition is not meant to be a question-and-answer conversation between the deposing lawyer and the witness.*** There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. ***It is the witness, not the lawyer who is the witness.***

Hall, 150 F.R.D. at 530 (emphasis added); see also American Directory Service Agency, 131 F.R.D. at 18. For this reason, Bryant should be allowed to further question the witnesses, and sanctions should be imposed.

**6. Bryant Should Be Permitted To Further Question Driskill And Kaye On Certain Subjects.**

Specifically, Bryant requests an Order compelling Driskill and Kaye each to re-appear for deposition and provide further testimony in subject areas in which Bryant was unable to conduct a fair examination. These subject areas include:

- The witnesses' knowledge and understanding of Mattel's employment agreements and employment documents including, but not limited to, its Confidential Information and Inventions Agreement and Conflict of Interest Questionnaire
- Driskill's observations regarding the similarities and differences between "Bratz" dolls and Mattel property and products.
- The witnesses' knowledge of, and involvement in, Mattel's investigation or inquiry into any alleged wrongdoing by Bryant.
- The witnesses' knowledge and understanding of Mattel's employment policies and practices.

**B. Mattel's Position**

TBA

EXHIBIT 1

PAGE 26

VI.

**ISSUE NUMBER TWO**

Should a Discovery Special Master be appointed for the limited purpose of supervising future depositions in this case, to halt Mattel's abusive practices and avert the need for further motion practice?

**C. Bryant's Position**

"The ends of justice compel the appointment of a Discovery Special Master to preside over all pending and future depositions in this case, lest there be repetition of these obstructive tactics, further delay, waste, expense, and still more needless burdens cast upon this congested court." Shapiro v. Freeman, 38 F.R.D. 308, 312 (S.D.N.Y. 1965). Local Rule 53-1 expressly authorizes the appointment of a master pursuant to Federal Rule of Civil Procedure 53. Rule 53 authorizes the Court to appoint a master to aid in performing specific functions in a pending action, including supervising discovery.

Indeed, Mattel benefits from its abusive discovery tactics in so many ways that it is not likely to stop its wrongful conduct without a Discovery Special Master. Obviously, Mattel's tactics hamper Bryant's defense and increase the expense and burden of the defense of this action. In addition to this, however, Mattel reaps further rewards even if it is ultimately compelled to provide additional discovery. Its behavior allows it to get a sneak preview of Bryant's questioning. Once it obtains a road-map of the deposition, without permitting witnesses to answer the hardest questions, it then has weeks of additional time to prepare its witnesses to respond to these questions *after* Bryant has completed the time-consuming motion process. Bryant is, thus, deprived of spontaneous, unrehearsed, uncoached responses from the witnesses. In effect, Mattel gets to see Bryant's deposition outline, before the deposition. The only way Bryant will be able to elicit facts, untainted by weeks of rehearsal, is through the appointment of a Discovery Special Master. Bryant is entitled to no less.

Received: 2/ 7/06 6:16PM; 310 553 5583 -> JetFax 20; Page 26
FEB-07-2005 18:14 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.26/31

One of the purposes of deposition is to "freez[e] a witness's testimony at an early stage of the proceedings, before that witness's recollection of the events at issue either has faded or has been altered by intervening events, other discovery, ***or the helpful suggestions of lawyers.***" Hall, 150 F.R.D. at 530 (emphasis added). Indeed, District Courts commonly appoint Discovery Special Masters or referees to supervise depositions in situations where "Rambo litigation" tactics, similar to those used by Mattel, are employed. For instance, in Van Pilsum v. Iowa State University of Science and Technology, 152 F.R.D. 179, 180-181 (S.D. Iowa 1993), the District Court appointed a special master to preside over all future depositions because plaintiff's counsel, John Barrett:

> repeatedly took it upon himself to restate Defendants' counsel's questions in order to "clarify" them for the Plaintiff. Mr. Barrett consistently interrupted Mr. Young and the witness, interposing "objections" which were thinly veiled instructions to the witness, who would then incorporate Mr. Barrett's language into her answer ... [c]ounsel for both parties engage in extensive colloquy which interrupted the flow of the deposition, and made for inefficient use of everyone's time. Mr. Barrett repeatedly objected to the form of Mr. Young's questions . . . In fact, of the 4025 lines of transcript, only seventy percent contain questions by Mr. Young and answers by [the witness]. The balance of the discussion is discussion, argument, bickering, haranguing, and general interference by Mr. Barrett ... and response by Mr. Young . . .
>
> The style adopted by Mr. Barrett, and responded to in kind by Mr. Young, has become "Rambo Litigation." It does not promote the "just, speedy, and inexpensive determination of every action," as is required by Fed.R.Civ.P. 1. This style, which may prove effective out of the presence of the court, and may be impressive to clients as well as ego-gratifying to those who practice it, will not be tolerated by this court. ***Merely because depositions do not take place in the presence of a judge does not mean lawyers can forget their responsibilities as officers of the court. They should conduct themselves accordingly.***

Id. at 180-181 (emphasis added). In addition to appointing a special master, the District Court in Van Pilsum granted the defendant's motion to compel and for request for sanctions.[8] Id.

[8] The court further ordered Mr. Barrett to personally pay for half of the cost of the plaintiff's initial deposition. The court also ordered that the cost of the discovery master for the completion of plaintiff's deposition be borne solely by Mr. Barrett personally. Id. at 181.

Received: 2/ 7/05 6:17PM; 310 553 5583 -> JetFax 20; Page 27
FEB-07-2005 18:15 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.27/31

The result should be the same here. See also United States of America v. Montrose Chemical Corporation of California, 980 F. Supp. 1112, 1114 (C.D. Cal. 1997)("the Special Master is charged with the duty and responsibility to superintend ... all discovery matters, including the taking of depositions, and to decide all questions and disputes with reference thereto. The Special Master may also determine in his discretion to be personally present at any discovery proceedings."); 601 West 26 Corp. v. Solitron Devices, Inc., 291 F. Supp. 882, 887 (S.D. N.Y. 1968)("[t]he case in chief would seem to require a substantial amount of discovery and inspection, which, in light of the nature of the allegations in the complaint and counterclaim, is likely to be acrimonious and grudging. The Court, anticipating the numerous problems will arise in the course of discovery and inspection, grants plaintiff's motion with respect to ... the appointment of a special master as follows ... to superintend the taking of depositions ... and to preside at the taking with power" to rule on any objection to a question made or on behalf of any party or witness). Given Mattel's pervasive "Rambo" style obstructive tactics during the depositions of Driskill and Kaye, and in the interests of justice, a Discovery Special Master should be appointed to preside over all pending and all future depositions in this matter. Fed. R. Civ. P. 53. Under Local Rule 53-2, the "master's fees and expenses, when approved by the Court, shall be paid as the Court orders."

D. **Mattel's Position**

TBA

V.

**ISSUE NUMBER THREE**

Should sanctions be imposed on Mattel for deliberately having engaged in abusive tactics during the depositions of Driskill and Kaye and requiring Bryant to seek court intervention to resolve the issue?

E. **Bryant's Position**

Mattel, not Bryant, should bear the expense of Mattel's behavior. Federal Rule

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107

26. EXHIBIT / CASE NO. 04-9059 NM (RNBx)

PAGE 29

Received: 2/ 7/05 6:17PM; 310 553 5583 -> JetFax ; Page 28
FEB-07-2005 18:15 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.28/31

of Civil Procedure 37(a)(4)(A) mandates that when a motion such as this is granted:

> the court ***shall,*** after affording the opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party ***the reasonable expenses incurred in making the motion, including attorney's fees,*** unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37 (a)(4)(A); see also Shapiro, 1997 WL 601430 at *1 (awarding sanctions for improper conduct); Van Pilsum, 152 F.R.D. at 180-181 (same). Bryant has incurred attorneys' fees and costs in the amount of $____. (Jacoby Decl., ¶ ). In addition, the reporter's fees for the Driskill and Kaye depositions, totaling $_____, should be assessed against Mattel. (Jacoby Decl., ¶ ).

Mattel's attorneys should also be personally sanctioned for their unprofessional conduct. Section 1927 of Title 28 of the Unites States Code provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Sanctions under § 1927 are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard for the attorney's duties to the court." Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987). Instructing a witness not to answer questions at a deposition on the basis of relevance, and objecting on work product grounds to questions that clearly did not call for work product material, has been found to be conduct that "viewed objectively, manifested intentional or reckless disregard of the attorney's duties to the court" and warrants sanctions against the attorney under Section 1927. Resolution Trust Corp., 73 F.3d at 266. In addition to this, Mattel's attorneys failed to meet and confer on this, as Local Rule 37 requires, despite Bryant's repeated efforts to resolve the issues raised herein. (Jacoby Decl., ¶ ). There is no excuse for this behavior, and it should not be

Received: 2/ 7/05 6:18PM; 310 553 5583 -> JetFax ; Page 29
FEB-07-2005 18:15 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.29/31

tolerated.

Dated: February , 2005

Respectfully submitted,

ROBERT F. MILLMAN
DOUGLAS A. WICKHAM
KEITH A. JACOBY

KEITH A. JACOBY
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant and Cross-Claimant CARTER BRYANT

Dated: February , 2005

Respectfully submitted,

JOHN B. QUINN
MICHAEL T. ZELLER
JOHN COREY

QUINN EMMANUEL URQUHART OLIVER & HEDGES, LLP
Attorneys for Plaintiff and Cross-Defendant MATTEL, INC.

EXHIBIT 1

PAGE 31

Received: 2/ 7/05 6:18PM; 310 553 5583 -> JetFax #20; Page 30
FEB-07-2005 18:15 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.30/31

**PROOF OF SERVICE BY FACSIMILE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 2049 Century Park East, 5th Floor, Los Angeles, California 90067.3107. On February 7, 2005, I served the within document(s):

**DISCOVERY MATTER**

**JOINT STIPULATION OF ISSUES IN DISPUTE REGARDING DEFENDANT AND CROSS-CLAIMANT CARTER BRYANT'S MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY FROM ANNE DRISKILL AND ALAN KAYE AND FOR THE APPOINTMENT OF A DISCOVERY SPECIAL MASTER**

X by facsimile transmission on February 7, 2005. This document was transmitted by using a facsimile machine that complies with California Rules of Court Rule 2003(3), telephone number 310.553.5583. The transmission was reported as complete and without error. A copy of the transmission report, properly issued by the transmitting machine, is attached. The names and facsimile numbers of the person(s) served are as set forth below.

·· by placing a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Los Angeles, California addressed as set forth below.

X by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees provided for, in an overnight delivery service pick up box or office designated for overnight delivery, and addressed as set forth below.

·· by personally delivering a copy of the document(s) listed above to the person(s) at the address(es) set forth below.

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

(213) 624-0643

Diana M. Torres, Esq.
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, CA 90071

(213) 430-6407

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107

EXHIBIT 1
PAGE 32

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on February 7, 2005, at Los Angeles, California.

Criss A. Draper

Los_Angeles:394092.1 028307.1010

EXHIBIT 1

PAGE 33

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

EXHIBIT 2

Received: 7/ 5/06 1: PM; -> Quinn Emanuel; Page 2
JUL-05-2006(WED) 12:04 P.002/003
07/05/2006 13:38 FAX 002/007

FILED
2006 JUL -5 PM 12:39
U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. RIVERSIDE

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Cross-Defendant Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

BRYANT,

Plaintiff,

v.

MATTEL, INC.,

Defendant,

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with Case Nos. CV 04-9059 and CV 05-2727

MATTEL, INC.'S REPORT OF MEETING OF COUNSEL REGARDING MATTEL'S MOTION TO DISMISS BRYANT'S DECLARATORY RELIEF CLAIM

Hearing Date: N/A
Time: N/A
Courtroom: 1

Hon. Stephen G. Larson

Discovery Cutoff: None set
Pretrial Conf. Date: None set
Trial Date: None set

BY FAX

ORIGINAL COPY

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Cross-Defendant
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| BRYANT,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC.,<br><br>Defendant, | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-9059 and CV 05-2727<br><br>MATTEL, INC.'S REPORT OF MEETING OF COUNSEL REGARDING MATTEL'S MOTION TO DISMISS BRYANT'S DECLARATORY RELIEF CLAIM<br><br>Hearing Date: N/A<br>Time: N/A<br>Courtroom: 1<br><br>Hon. Stephen G. Larson<br><br>Discovery Cutoff: None set<br>Pretrial Conf. Date: None set<br>Trial Date: None set |

ORIGINAL

07209/1912332.1

EXHIBIT 2

35

This pleading relates to *Bryant v. Mattel, Inc.*, designated as Case No. CV 04-09049 SGL (RNBx) prior to consolidation.

At the June 26, 2006 hearing on Mattel's Motion to Dismiss Bryant's Declaratory Relief Claim, the Court directed the parties to confer as to what, if any, further issues raised in Mattel's Motion could be mooted and to file a "joint statement" about the meeting of counsel. That meet and confer was held on June 29, 2006. Notwithstanding the Court's instruction that the parties submit a "joint statement," Bryant's counsel declined to file a joint submission and instead, on Friday, June 30, 2006, filed unilateral report.[1] Mattel thus has no alternative but to submit this report.

As the Court will recall, John Quinn, counsel for Mattel, represented in open court at the June 26 hearing that Mattel would not assert a claim against Bryant "that Bratz infringes the copyright in 'Toon Teens.'" Mattel's representation deprived the Court of jurisdiction to hear Bryant's claim for a declaration of non-infringement. To prove the requisite case or controversy in a non-infringement case, Bryant must show a reasonable apprehension of imminent suit for copyright infringement. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1989) (holding that to demonstrate actual controversy in non-infringement case, plaintiff must have a "'real and reasonable apprehension that he will be subject to liability.'") (quoting *Societe de Conditionnement v. Hunter Engineering Co.*, 655 F.2d 938, 944 (9th Cir. 1981)); *Japan Gas Lighter Ass'n. v. Ronson Corp.*, 257 F. Supp. 219, 237 (D.N.J. 1966). By definition Bryant can have no apprehension of

[1] Bryant filed the unilateral report despite Mattel's specific request to Bryant's counsel about how the "joint" report requested by the Court would be prepared. In response to Mattel's inquiry, Bryant's counsel stated that he "intend[ed] to file a short report confirming the meeting and asking for a ruling on the motion" on his own and then proceeded to file his report without asking for comment by Mattel.

EXHIBIT 2

suit after Mattel represented that it would not maintain that Bratz infringes the Toon Teen copyright.

In response to Mr. Quinn's comments, however, Bryant's counsel claimed at the hearing that other matters besides "Toon Teens" were also the subject of the declaratory relief claim. The Court then instructed the parties to meet and confer.

Contrary to Bryant's assertion in his unilateral report that Mattel refused to make an offer during the June 29 meeting of counsel, Mattel stated to Bryant's counsel that Mattel was willing to consider an appropriate stipulation that might moot these other unidentified matters, depending on what they were. During the meet and confer, Mattel therefore asked Bryant's counsel to identify these other Mattel works or products as to which Bryant claimed to have a reasonable apprehension of suit for copyright infringement. Bryant's counsel declined to identify any such works or products, however. In rejecting the concept of a potential stipulation raised by Mattel, Bryant's counsel stated that Bryant would not accept anything other than Mattel's "confession of judgment" that Bryant "never copied anything" and that no Mattel product has any "relevance" to any claim that Mattel has or ever will assert against Bryant.

Mattel attempted to explain to Bryant's counsel that such a proposal was unworkable. Mattel informed Bryant's counsel that Mattel releases many thousands of products every year and that its designers create many more that are not yet released. Mattel further noted that in discovery thus far Bryant has not, with limited exceptions such as so-called first generation of "Bratz," specified what designs he has worked on.[2] Mattel further explained that the relief that Bryant's counsel, Mr. Jacoby, described not only exceeded the relief sought in Bryant's Complaint, but was inconsistent with the fundamental tenets of declaratory relief claim. In

[2] In fact, thus far both Bryant and MGA have generally not produced any discovery involving matters that post-date June 2001.

EXHIBIT 2

PAGE 37

particular, the premise of a claim for a declaration of non-infringement is that the plaintiff, here Mr. Bryant, have a reasonable apprehension of suit for copyright infringement and that no such apprehension can exist without knowledge of a specific product. Bryant's counsel nevertheless stated that he would not identify any such products. Then, when Mattel started to posit examples of specific Mattel products to see if they were among the ones as to which Bryant was claiming a reasonable apprehension of suit so that they could potentially be taken off the table, counsel for MGA terminated the call.

Bryant's Complaint identifies a single product—Toon Teens—as to which he alleges to have a reasonable apprehension of suit for copyright infringement. Mattel disagrees for the reasons set forth in its moving papers, including because Mattel has never threatened Bryant with a suit alleging copyright infringement of Toon Teens. Subsequently, Mattel represented in open court that it will not sue Bryant for infringement of the Toon Teens copyright, which negates any claim by Bryant that he suffers "reasonable apprehension" of a copyright infringement suit or that such a copyright infringement suit is "imminent." Although Mattel asked during the meet and confer what more Bryant believed would be necessary on that score as to Toon Teens specifically, Bryant's counsel insisted only that a "confession of judgment"—*i.e.*, a declaration of non-infringement on the merits—would satisfy him. Such a demand, of course, puts the merits cart before the case-or-controversy horse, as Mattel also explained at the meet and confer. Because Bryant has no basis to claim a reasonable, objective apprehension of suit of copyright infringement of Toon Teens, Mattel's motion to dismiss Bryant's non-infringement claim with respect to Toon Teens can therefore be granted.[3]

[3] *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1989); *Japan Gas Lighter Ass'n. v. Ronson Corp.*, 257 F. Supp. 219, 237 (D.N.J. 1966); 12 *Moore's Federal Practice* § 57.22[2][c] (3d ed. 2004) (footnote continued)

EXHIBIT 2

Bryant's failure to claim an imminent suit for copyright infringement of Mattel works and products other than Toon Teens further compels the conclusion that the Court lacks subject matter jurisdiction. At the outset, Bryant's Complaint identifies no work or product other than "Toon Teens" as to which Bryant claims a reasonable apprehension of suit. That alone means that Bryant cannot establish subject matter jurisdiction as to them. *See Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (holding that facts sufficient to establish jurisdiction must appear on the face of the complaint). Furthermore, at the meet and confer, Bryant's counsel declined to identify any such product or work other than "Toon Teens" as to which he claims to have an objective basis for a reasonable apprehension of suit for copyright infringement. Logically, if Bryant cannot identify any other work or product, then he cannot have the requisite apprehension of imminent suit. Bryant is asking for an advisory opinion that he has never infringed the copyright of any Mattel's thousands of products and other works. Article III prohibits such claims.

DATED: July 5, 2006

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature]
Jon Corey
Attorneys for Plaintiff and Counter-Defendant Mattel

---

("Declaratory relief is appropriate when and only when one or both parties have pursued a course of conduct that will result in imminent and inevitable litigation unless the issue is resolved by declaratory relief."); *see also Xerox Corp. v. Apple Computer Co.*, 734 F. Supp. 1542, 1547 (N.D. Cal. 1990) (declaratory relief was not justified because litigation was not "imminent").

**PROOF OF SERVICE**
1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP, 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On July 5, 2006, I caused to be served the following document(s) on interested parties in this action described as MATTEL, INC.'S REPORT OF MEETING OF COUNSEL REGARDING MATTEL'S MOTION TO DISMISS BRYANT'S DECLARATORY RELIEF CLAIM addressed as follows:

Diana M. Torres, Esq.
O'Melveney & Myers, LLP
400 South Hope Street
Los Angeles, California 90071
Facsimile: (213) 430-6407

Keith Jacoby, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, CA 90067
Facsimile: (310) 553-5583

X **(BY MAIL) I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

_____ **(BY MAIL) I caused such envelope to be placed in the firm's mail. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

X **(BY FACSIMILE) I caused such document to be transmitted by facsimile to the offices of the addressee. Upon completion of the said facsimile transmission, the transmitting machine issued a transmission report showing the transmission was complete and without error.

_____ **(BY FEDERAL EXPRESS) by placing the document(s) listed above in such envelope for deposit with FEDERAL EXPRESS to be delivered via priority overnight service to the persons at the addresses set forth above.

_____ **(BY PERSONAL SERVICE) I caused to be delivered by hand such envelope to the offices of the addressee.

Executed on July 5, 2006, at Los Angeles, California.

_____ (State)I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

X (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

SUZANNE JOHNSON
Type or Print Name

Suzanne Johnson
Signature

CONFORMED COPY

FILED

2007 JUL 20 PM 3:57

CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. RIVERSIDE

BY

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone: (415) 774-2611
Facsimile: (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

v.

MATTEL, INC., a Delaware corporation,

Defendant.

CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC.

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER RE IN CAMERA REVIEW OF GLOBAL SECURITY FILES**

I. INTRODUCTION

On May 15, 2007, Mattel, Inc. ("Mattel") submitted for *in camera* review fourteen documents from Mattel's Global Security files that were redacted or withheld from production on the grounds of the attorney-client privilege and the work product doctrine. Mattel also submitted a privilege log and the declaration of Richard De Anda in support of its claims of privilege. Having reviewed the documents, privilege log and declaration of Mr. De Anda, Mattel's claims of

privilege are sustained as to privilege log entries 29, 33, 35, 51, 57, 63, 64, 65, 66, 67, 68, and 69, and overruled as to privilege log entries 32 and 50..

## II. DISCUSSION

### A. Claims Based Upon Work Product Doctrine

Although Mattel withheld the disputed documents based upon both the attorney-client privilege and work product doctrine, Mr. De Anda's declaration addresses only the elements of the attorney-client privilege. He does not assert that any of the fourteen documents in dispute were prepared in anticipation of litigation. Decl. of Mr. De Anda at ¶7. Therefore the claims of privilege based upon the work product doctrine are overruled as to all of the fourteen documents in dispute.

### B. Claims Based Upon Attorney-Client Privilege

Mattel claims that each of the fourteen documents at issue is protected by the attorney-client privilege. The attorney-client privilege protects an attorney's communication of legal advice to his client, as well as the client's communication of information to the attorney "to enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390 (1981). The protection extends only to communications; however, it does not extend to the facts underlying privileged communications. Id. at 395-96. The Ninth Circuit has described the elements of the attorney-client privilege as follows: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir.2002). The party asserting the privilege has the burden of establishing that the privilege applies to a particular document or set of documents. In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir. 1992).

When a party withholds information otherwise discoverable under the Federal Rules of Civil Procedure by claiming that it is privileged or subject to protection as trial preparation material, "the party shall make the claim expressly and shall describe the nature of the documents,

communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5).

Mr. De Anda states in his declaration that privilege log entries 29, 33, 35, 50, 51, 57, 63, 64, 65, 66, and 67 "constituted or recorded confidential communications between me and either in-house counsel for Mattel or outside counsel for Mattel in which counsel conveyed to me legal advice." Decl. of Mr. De Anda at ¶7. A review of the documents confirms Mr. De Anda's representations as to all of these privilege log entries, except entry 50. Privilege log entry 50 is an "investigative log," which Mattel produced in redacted form. The portion that has been redacted consists of a one line entry which indicates that Mr. De Anda may have had a meeting with certain individuals at Mattel, including Mattel's in-house counsel. The one line entry does not contain the substance of any communication whatsoever, much less the substance of a confidential attorney-client privileged communication. Accordingly, Mattel's claims of attorney-client privilege are sustained as to privilege log entries 29, 33, 35, 51, 57, 63, 64, 65, 66, and 67, and overruled as to privilege log entry 50.

Mr. De Anda states in his declaration that the e-mail identified as privilege log entry 32 "was a confidential communication between Mr. Cassidy Park, a Mattel employee, and in-house counsel for Mattel." Decl. of Mr. De Anda at ¶7. Mattel produced privilege log entry 32 in redacted form. The redacted portion consists of a single line, "FYI, attached is Mercedeh's resume." Mattel has failed to establish that this single line of text is a confidential attorney-client communication for the purpose of giving or receiving legal advice. Therefore, Mattel's claim of privilege is overruled as to privilege log entry 32.

The last two documents in dispute are privilege log entries 68 and 69. Mr. De Anda states in his declaration that entries 68 and 69 "are communications from a private investigator to outside counsel for Mattel relating to work that investigator performed at counsel's request." Decl. of Mr. De Anda at ¶7. There are circumstances under which communications between a client's attorney and a third party who assists the attorney in rendering legal advice are protected by the attorney-client privilege. See e.g. U.S. v. Kovel, 296 F.2d 918 (2nd Cir. 1961). It appears

EXHIBIT 2

PAGE 43

these transmittal letters were communications made for the purpose of giving legal advice. Therefore, Mattel's claims of privilege are sustained as to privilege log entries 68 and 69.

IV. CONCLUSION

For the reasons set forth above, Mattel's claims of work product are overruled as to all of the fourteen documents in dispute. Mattel's claims of attorney-client privilege are sustained as to privilege log entries 29, 33, 35, 51, 57, 63, 64, 65, 66, 67, 68, and 69, and overruled as to privilege log entries 32 and 50. Mattel shall produce privilege log entries 32 and 50 without redactions within ten 10 days.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: July 10, 2007

Edward A. Infante

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

EXHIBIT 2

PAGE 44

**PROOF OF SERVICE BY E-MAIL**

I, Sandra Chan, not a party to the within action, hereby declare that on July 11, 2007, I served the attached ORDER RE IN CAMERA REVIEW OF GLOBAL SECURITY FILES in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on July 11, 2007, at San Francisco, California.

[signature]
Sandra Chan

EXHIBIT 2

PAGE 45

EXHIBIT 3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

CERTIFIED COPY

| | |
|---|---|
| CARTER BRYANT, PLAINTIFF, VS. MATTEL, INC., DEFENDANT. | NO. ED CV 04-09049 (LEAD LOW NUMBER) |
| AND RELATED ACTIONS, | BRYANT'S MOTION FOR TERMINATING SANCTIONS |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

MONDAY, AUGUST 27, 2007

11:06 A.M.

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA 92501
(951) 274-0844
CSR11457@SBCGLOBAL.NET

THERE WERE ALSO KEY WORD TYPE SEARCHES DONE, AND THOSE TYPES OF THINGS WERE PRESERVED; BUT THAT WAS A DIFFERENT EFFORT.

**THE COURT:** VERY WELL.

**MR. QUINN:** IN ADDITION, AS MR. ZELLER MENTIONED, WE TRACKED DOWN SOME 130-PLUS OLDER HARD DRIVES THAT MATTEL I.T. HAD IN ITS POSSESSION; TOOK CUSTODY OF THOSE AND MADE SURE THAT THEY WERE NOT DISPOSED OF. WE BACKED UP THE NETWORK SERVERS THAT WE THOUGHT MIGHT CONCEIVABLY HAVE RELEVANT INFORMATION AND PRESERVED THOSE AS WELL. 01:51 01:51

SO THOSE ARE ALL OF THE THINGS THAT WERE DONE IN THIS TIME FRAME, AFTER WE RECEIVED A COPY OF THIS CONTRACT.

GOING FORWARD, WE DID MAKE A DECISION NOT TO SUSPEND THE AUTOMATIC E-MAIL DELETION POLICY. AND THE REASON WE MADE THAT DECISION AT THAT TIME IS THE FOLLOWING: 01:52

THESE CONCERNED EVENTS GOING BACK TWO AND A HALF YEARS, OR WHATEVER THE NUMBER IS, IT SEEMED TO US PRETTY UNLIKELY THAT THERE WOULD BE E-MAILS THAT PEOPLE WOULD THEN BE CREATING THAT WOULD HAVE SOME BEARING ON THOSE EVENTS WHEN MR. BRYANT LEFT MATTEL TWO AND A HALF -- OR WHATEVER THE NUMBER -- THE PERIOD OF TIME WAS BEFORE, BACK IN OCTOBER, IN 2000. 01:52

**THE COURT:** COUNSEL, YOU SERIOUSLY MAINTAIN THAT IN ANY LITIGATION IN WHICH THE ALLEGATIONS GO FAR BEYOND, AS THIS ONE DOES -- IT GOES FAR BEYOND SIMPLY WHAT CARTER BRYANT DID OR 01:52

EXHIBIT 3

PAGE 47

DID NOT DO BACK IN 2000; IT TALKS ABOUT ONGOING CONDUCT, AS ALLEGED IN YOUR MOST RECENT COMPLAINT AGAINST MGA -- THAT THERE WOULD NOT BE INFORMATION GENERATED IN THESE INTERNAL INVESTIGATIONS THAT MIGHT HAVE SOME RELEVANCE OR BEARING?

**MR. QUINN:** YOUR HONOR, THESE INTERNAL INVESTIGATIONS -- WE SORT OF SKIPPED OVER THAT -- THAT CONCERNS SOMETHING QUITE DIFFERENT, WHICH WE DECIDED WE DID NOT HAVE A CLAIM, THAT THERE WAS NO CLAIM. AND WE DIDN'T TALK ABOUT THAT.

ONE OF THE PROBLEMS HERE IN DEALING WITH THIS IS, WE HAVE KIND OF A HINDSIGHT BIAS. WE ARE NOW SITTING HERE KNOWING WHAT WE KNOW, LOOKING AT THE SIZE OF THE CASE THAT WE ARE NOW LOOKING AT; AND IT'S TEMPTING TO TRY TO ASSUME THAT BACK IN NOVEMBER OF 2003, WE KNEW WHAT WE KNOW NOW AND THAT WE KNEW THAT WE HAD CLAIMS AGAINST MGA.

I SUBMIT, YOUR HONOR, WE DID NOT KNOW THAT. ALL WE KNEW WAS THAT THIS MAN HAD SIGNED A CONTRACT. WE DIDN'T KNOW WHETHER MGA HAD INDUCED HIM TO DO THIS; HAD PAID HIM; WE DIDN'T KNOW THEY HAD PAID HIM WHILE HE WAS WORKING FOR US. WE DIDN'T KNOW WHAT THEY KNEW.

**THE COURT:** THAT NEVER CROSSED THE MIND OF ANYBODY AT MATTEL, THAT PERHAPS CARTER BRYANT WAS INDUCED AWAY FROM MATTEL, ALONG WITH THE PRODUCTS OR DESIGNS THAT HE HAD MADE?

**MR. QUINN:** NO, I'M NOT GOING TO SAY IT NEVER CROSSED ANYBODY'S MIND, YOUR HONOR. BUT WE HAD NO WAY OF KNOWING WHETHER THERE WAS A VIABLE CLAIM AGAINST MGA. FOR ALL WE KNEW,

01:53 01:53 01:53 01:54 01:54

IS ACTUALLY GOING TO BE UNDER SEAL.

I'LL ISSUE A MINUTE ORDER DIRECTING FURTHER PROCEEDINGS IN THIS MATTER, BUT BE WORKING ON THIS DECLARATION.

**MS. GLASER:** THANK YOU, YOUR HONOR.

**MR. QUINN:** THANK YOU, YOUR HONOR.

03:19

**THE COURT:** GOOD DAY, COUNSEL.

CERTIFICATE

I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

[signature] 9-5-07

THERESA A. LANZA, CSR, RPR
FEDERAL OFFICIAL COURT REPORTER

DATE