EXHIBIT 4

CONFORMED COPY

1  | Hon. Edward A. Infante (Ret.)
2  | JAMS
3  | Two Embarcadero Center
   | Suite 1500
   | San Francisco, California 94111
4  | Telephone:    (415) 774-2611
   | Facsimile:    (415) 982-5287
5
6
7                    UNITED STATES DISTRICT COURT
8                    CENTRAL DISTRICT OF CALIFORNIA
                           EASTERN DIVISION
9
10
11 | CARTER BRYANT, an individual,              CASE NO. C 04-09049 SGL (RNBx)
                                                JAMS Reference No. 1100049530
12 |            Plaintiff,
13 |       v.                                   Consolidated with
                                                Case No. CV 04-09059
14 | MATTEL, INC., a Delaware corporation,      Case No. CV 05-2727
15 |            Defendant.                       **ORDER  RE IN CAMERA REVIEW OF
                                                GLOBAL SECURITY FILES**
16
17 | CONSOLIDATED WITH
   | MATTEL, INC. v. BRYANT and
18 | MGA ENTERTAINMENT, INC. v. MATTEL,
   | INC.
19
20
21
22                          I. INTRODUCTION
23        On May 15, 2007, Mattel, Inc. ("Mattel") submitted for *in camera* review fourteen
24   documents from Mattel's Global Security files that were redacted or withheld from production on
25   the grounds of the attorney-client privilege and the work product doctrine.  Mattel also submitted
26   a privilege log and the declaration of Richard De Anda in support of its claims of privilege.
27   Having reviewed the documents, privilege log and declaration of Mr. De Anda, Mattel's claims of
28

FILED

2007 JUL 20  PM 3: 57

EXHIBIT ____4____

PAGE ____50____

1   privilege are sustained as to privilege log entries 29, 33, 35, 51, 57, 63, 64, 65, 66, 67, 68, and 69,
2   and overruled as to privilege log entries 32 and 50..

3                                    II. DISCUSSION

4   A. Claims Based Upon Work Product Doctrine

5          Although Mattel withheld the disputed documents based upon both the attorney-client
6   privilege and work product doctrine, Mr. De Anda's declaration addresses only the elements of
7   the attorney-client privilege. He does not assert that any of the fourteen documents in dispute
8   were prepared in anticipation of litigation. Decl. of Mr. De Anda at ¶7. Therefore the claims of
9   privilege based upon the work product doctrine are overruled as to all of the fourteen documents
10  in dispute.

11  B. Claims Based Upon Attorney-Client Privilege

12         Mattel claims that each of the fourteen documents at issue is protected by the attorney-
13  client privilege. The attorney-client privilege protects an attorney's communication of legal
14  advice to his client, as well as the client's communication of information to the attorney "to
15  enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390
16  (1981). The protection extends only to communications; however, it does not extend to the facts
17  underlying privileged communications. Id. at 395-96. The Ninth Circuit has described the
18  elements of the attorney-client privilege as follows: "(1) When legal advice of any kind is sought
19  (2) from a professional legal adviser in his or her capacity as such, (3) the communications
20  relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance,
21  permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the
22  protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir.2002). The party
23  asserting the privilege has the burden of establishing that the privilege applies to a particular
24  document or set of documents. In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir.
25  1992).

26         When a party withholds information otherwise discoverable under the Federal Rules of
27  Civil Procedure by claiming that it is privileged or subject to protection as trial preparation
28  material, "the party shall make the claim expressly and shall describe the nature of the documents,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT ____4____

PAGE ____51____

1  communications, or things not produced or disclosed in a manner that, without revealing

2  information itself privileged or protected, will enable other parties to assess the applicability of

3  the privilege or protection." Fed.R.Civ.P. 26(b)(5).

4          Mr. De Anda states in his declaration that  privilege log entries 29, 33, 35, 50, 51, 57, 63,

5  64, 65, 66, and 67 "constituted or recorded confidential communications between me and either

6  in-house counsel for Mattel or outside counsel for Mattel in which counsel conveyed to me legal

7  advice." Decl. of Mr. De Anda at ¶7.  A review of the documents confirms Mr. De Anda's

8  representations as to all of these privilege log entries, except entry 50.  Privilege log entry 50 is an

9  "investigative log," which Mattel produced in redacted form. The portion that has been redacted

10  consists of a one line entry which indicates that Mr. De Anda may have had a meeting with

11  certain individuals at Mattel, including Mattel's in-house counsel.  The one line entry does not

12  contain the substance of any communication whatsoever, much less the substance of a

13  confidential attorney-client privileged communication.  Accordingly, Mattel's claims of attorney-

14  client privilege are sustained as to privilege log entries 29, 33, 35, 51, 57, 63, 64, 65, 66, and 67,

    and overruled as to privilege log entry 50.

15          Mr. De Anda states in his declaration that the e-mail identified as privilege log entry 32

16  "was a confidential communication between Mr. Cassidy Park, a Mattel employee, and in-house

17  counsel for Mattel." Decl. of Mr. De Anda at ¶7. Mattel produced privilege log entry 32 in

18  redacted form.  The redacted portion consists of a single line, "FYI, attached is Mercedeh's

19  resume." Mattel has failed to establish that this single line of text is a confidential attorney-client

20  communication for the purpose of giving or receiving legal advice.  Therefore, Mattel's claim of

21  privilege is overruled as to privilege log entry 32.

22          The last two documents in dispute are privilege log entries 68 and 69.  Mr. De Anda states

23  in his declaration that entries 68 and 69 "are communications from a private investigator to

24  outside counsel for Mattel relating to work that investigator performed at counsel's request."

25  Decl. of Mr. De Anda at ¶7.  There are circumstances under which communications between a

26  client's attorney and a third party who assists the attorney in rendering legal advice are protected

27  by the attorney-client privilege.  See e.g. U.S. v. Kovel, 296 F.2d 918 (2nd Cir. 1961).  It appears

28

EXHIBIT    4

PAGE    52

1  these transmittal letters were communications made for the purpose of giving legal advice.

2  Therefore, Mattel's claims of privilege are sustained as to privilege log entries 68 and 69.

3  IV. CONCLUSION

4  For the reasons set forth above, Mattel's claims of work product are overruled as to all of

5  the fourteen documents in dispute. Mattel's claims of attorney-client privilege are sustained as to

6  privilege log entries 29, 33, 35, 51, 57, 63, 64, 65, 66, 67, 68, and 69, and overruled as to

7  privilege log entries 32 and 50. Mattel shall produce privilege log entries 32 and 50 without

8  redactions within ten 10 days.

9  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

10  Master, Mattel shall file this Order with the Clerk of Court forthwith.

11  Dated: July 10, 2007

12  HON. EDWARD A. INFANTE (Ret.)

13  Discovery Master

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                        4

EXHIBIT ____4____

PAGE ____53____

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on July 11, 2007,
I served the attached ORDER RE IN CAMERA REVIEW OF GLOBAL SECURITY FILES
in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Well & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on July 11, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT ___4___

PAGE ___54___

EXHIBIT 5

# CONFIDENTIAL - FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

EXHIBIT 6

**CONFORMED COPY**

FILED

2007 APR 19  PM 11: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY_____

1 | Hon. Edward A. Infante (Ret.)
  | JAMS
2 | Two Embarcadero Center
  | Suite 1500
3 | San Francisco, California 94111
  | Telephone:    (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

#### EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No.1100049530 |
| 12        Plaintiff, | |
| 13    v. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| 14  MATTEL, INC., a Delaware corporation, | |
| 15        Defendant. | **ORDER GRANTING IN PART AND<br>DENYING IN PART MATTEL'S<br>MOTION FOR PROTECTIVE ORDER<br>REGARDING "POLLY POCKET"<br>DOCUMENTS** |
| 16 | |
| 17  CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |
| 18 | |
| 19 | |

20

## I. INTRODUCTION

On March 30, 2007, Mattel, Inc. ("Mattel") submitted its Motion For Protective Order

Regarding "Polly Pocket" Documents.  Pursuant to Rule 26(c), Fed.R.Civ.P., Mattel seeks a

protective order to limit the scope of MGA Entertainment, Inc.'s ("MGA") and Carter Bryant's

("Bryant") subpoenas for production of documents relating to Polly Pocket to only those

documents that relate to a single Polly Pocket commercial identified by MGA in an interrogatory

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___6___

PAGE ___60___

C 4 | 19 | c 7

1

1   response.  On April 6, 2007, MGA submitted its opposition brief, and on April 11, 2007, Mattel

2   submitted a reply brief.  The matter was heard via telephonic conference on April 19, 2007.

3   Having considered the motion papers and comments of counsel at the hearing, Mattel's motion

4   for a protective order is granted in part and denied in part.[1]

5                                    II. BACKGROUND

6           This consolidated action includes MGA's claims for unfair competition against Mattel.

7   Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

8   products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

9   packaging and Bratz television commercials.

10          On March 7, 2007 and March 12, 2007, MGA and Bryant issued subpoenas to three of

11  Mattel's advertising agencies:  Young & Rubicam Brands, Peterson Milla Hooks, Inc., and

12  Ogilvy & Mather Worldwide.  The subpoenas seek, among other things, documents relating to

13  Mattel's products, including the Polly Pocket line of products.  See Request Nos. 3, 4, 7, 12, 13,

14  and 14.  The subpoenas define Polly Pocket as "each image, character, logo, doll, toy, accessory,

15  product, packaging or other thing or matter that is or has ever been manufactured, marketed or

16  sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise

17  commonly known as, or sold and marketed under the POLLY POCKET trademark or trade

18  dress."  The requests at issue are set forth below:

19          Request No. 3:  All DOCUMENTS REFERRING OR RELATING TO any focus

20          group for "MY SCENE," "POLLY POCKET," or "ACCELERACERS" products

21          and which also REFER OR RELATE TO "BRATZ," "ALIEN RACERS," or

22          MGA.

23          Request No. 4:  All DOCUMENTS REFERRING OR RELATING TO any

24          participant comments from any focus group for "MY SCENE," "POLLY

25  _____

26      [1]  Pursuant to the Order for Appointment Of A Discovery Master, dated December 6, 2006, the undersigned
    is authorized to resolve disputes regarding third party subpoenas.  See Order at 3-4, 6.

27

28

Bryant v. Mattel, Inc.,                                                                    2
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 6

PAGE _____ 61

POCKET," or "ACCELERACERS" products and which also REFER OR

RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

Request No. 7:  All DOCUMENTS REFERRING OR RELATING TO any

MARKET RESEARCH REFERRING OR RELATING TO "MY SCENE,"

"POLLY POCKET," or "ACCELERACERS" or MATTEL, and which also

REFER OR RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

Request No. 12:  All DOCUMENTS REFERRING OR RELATING TO proposed

or actual advertisements for "MY SCENE," "POLLY POCKET," OR

"ACCELERACERS" products and which also REFER OR RELATE TO

"BRATZ," "ALIEN RACERS," or MGA.

Request No. 13:  All DOCUMENTS REFERRING OR RELATING TO

directives, suggestions, or instructions from MATTEL to create advertisements

for "MY SCENE," "POLLY POCKET," OR "ACCELERACERS" products using

elements that are similar to or the same as elements used in advertisements for

"BRATZ," "ALIEN RACERS," or MGA products.

Request No. 14:  Copies of all advertisements for "BRATZ," "ALIEN RACERS,"

or MGA products that YOU consulted or reviewed to create advertisements for

"MY SCENE," "POLLY POCKET," or "ACCELERACERS" products.

(collectively referred to hereinafter as the "Polly Pocket Requests"). See Decl. of B. Dylan

Proctor in Support of Mattel's Motion for Protective Order, Exs. 1-3.

Mattel served objections to the subpoenas and requested a meet and confer with MGA and

Bryant regarding the scope of the Polly Pocket Requests. The parties met and conferred on

March 27, 2007. MGA asserted that the Polly Pocket Requests sought information relevant to

MGA's claims that Mattel has serially copied and imitated MGA's commercials. MGA pointed

out that it is currently aware of at least one Polly Pocket commercial that copied elements from a

MGA Bratz commercial. More specifically, in response to a contention interrogatory, MGA

identified twenty-two separate instances of alleged serial copycatting and imitating, one of which

was that "Mattel filmed a 'Polly Pocket' commercial in the same mall and featuring the same

1  escalator as appeared in a previous 'Bratz' commercial." See MGA's Second Supplemental

2  Responses to Mattel's First Set of Interrogatories re Claims of Unfair Competition, Response to

3  Interrogatory No. 6.   MGA asserted that it was entitled to discovery to determine whether

4  Mattel's advertising agencies have documents evidencing plans, strategies or intentions to

5  copycat or imitate MGA commercials for this or any other Polly Pocket commercials in the past

6  or future. Further, MGA asserted that the Polly Pocket Requests sought only those documents

7  that specifically related to MGA and its products. In contrast, Mattel asserted that the Polly

8  Pocket Requests were overbroad, seeking information far beyond the Polly Pocket commercial

9  identified in MGA's interrogatory response. The parties later exchanged meet and confer letters,

10  but were unable to resolve their dispute.

11      In this motion, Mattel contends that it is entitled to a protective order because the Polly

12  Pocket Requests are overbroad, seeking documents that have no connection or relevance to the

13  claims or defenses in the case, other than the single television commercial identified in MGA's

14  interrogatory response.  Mattel also contends that MGA and Bryant should not be permitted to

15  engage in a fishing expedition for potential claims involving Polly Pocket products.  Furthermore,

16  Mattel contends that its Polly Pocket line of dolls is in direct competition with MGA's doll

17  products, and that MGA and Bryant are not entitled to issue sweeping subpoenas for the improper

18  purpose of discovering Mattel's confidential focus group and market research documents relating

19  to competing products and other matters that are not even alleged to be at issue.  Accordingly,

20  Mattel seeks an order limiting the scope of the Polly Pocket Requests to only those Polly Pocket

21  documents that relate to the television commercial MGA claims that Mattel copied.

22      MGA and Bryant contend that Mattel has not demonstrated the requisite "good cause" for

23  a protective order.  They contend that there has been no showing that a protective order is

24  necessary to avoid annoyance, embarrassment, oppression or undue burden or expense.  Further,

25  they contend that the Stipulated Protective Order is sufficient to address Mattel's confidentiality

26  concerns.  MGA and Bryant also contend that the Polly Pocket Requests are narrowly tailored to

27  seek documents relevant to the claims that Mattel has serially imitated and copycatted MGA's

28  advertising for Bratz and other products.  Further, they contend that the Polly Pocket Requests

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT _____ 6

PAGE _____ 63

1    target documents that specifically relate to MGA or its products.  Lastly, MGA and Bryant object

2    to limiting discovery to the one Polly Pocket commercial referenced in MGA's interrogatory

3    response.  They contend that such a limitation would prevent them from obtaining documents

4    "that reveal Mattel's plans to copy or imitate MGA commercials for other 'Polly Pocket'

5    commercials and related efforts by Mattel's ad agencies to effectuate or evaluate these plans,

6    simply because the plans are non-public and about which MGA and Bryant could not possibly

7    have any actual knowledge."  Opposition at p.7.

8                                            III. DISCUSSION

9            Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

10   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

11   party." Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

12   permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

13   2004) ("District courts need not condone the use of discovery to engage in 'fishing

14   expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

15   (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

16   (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

17   the phrase "subject matter involved in the pending action," were intended to target discovery that

18   swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

19   litigate the issues presented by the pleadings but to develop new claims or defenses.).

20   Furthermore, Rule 26(c), Fed.R.Civ.P., provides, in pertinent part, that upon motion and for good

21   cause shown, "the court in which the action is pending may make any order which justice requires

22   to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

23   expense, including that certain matters not be inquired into, that the scope of the disclosure or

24   discovery be limited to certain matters, or that a trade secret or other confidential research,

25   development or commercial information not be revealed or be revealed only in a designated way."

26   Fed.R.Civ.P. 26(c).

27           Polly Pocket is not mentioned in either MGA's or Bryant's complaint or any of the other

28   pleadings filed in this consolidated action.  Rather, MGA's complaint alleges that Mattel's

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT    6

PAGE    64

1  advertising and marketing schemes for two of its products – "My Scene" and "AcceleRacers" –
2  have "serially imitated" MGA's advertising. MGA's complaint does not even reference the Polly
3  Pocket line of dolls or other Polly Pocket products.

4        The only proffered justification for the Polly Pocket Requests is an interrogatory response
5  in which MGA claims that one of Mattel's Polly Pocket commercials was allegedly filmed in the
6  same mall using the same escalator as an MGA Bratz commercial.[2] The bulk of the Polly Pocket
7  Requests (Nos. 3, 4, 7, 12, 14), however, are far broader than the commercial identified by MGA.
8  The definition for Polly Pocket includes not just commercials, but  "each image, character, logo,
9  doll, toy, accessory, product, and packaging that is or has ever been manufactured, marketed or
10  sold by Mattel as part of a line of goods or merchandise known as, or sold and marketed under the
11  Polly Pocket trademark or trade dress.  Furthermore, MGA and Bryant seek all Polly Pocket focus
12  group documents, including participant comments which relate to Bratz, MGA or Alien Racers.
13  They seek all "market research" referring or relating to Polly Pocket and which also relate to
14  Bratz, MGA, or Alien Racers, where "market research" is defined as "any type of research, study,
15  survey or analysis of consumers or potential consumers of a product or potential product
16  including, without limitation, focus groups, consumer surveys, market analyses, behavioral
17  analyses and consumer research." They also seek all documents relating to proposed or actual
18  advertisements for Polly Pocket dolls which also relate to Bratz, MGA or Alien Racers.  MGA
19  and Bryant also seek copies of all advertisements for Bratz, Alien Racers, or MGA products that
20  were consulted or reviewed to create any and all advertisements for Polly Pocket products. These
21  requests are clearly overbroad, extending far beyond the single Polly Pocket commercial that
22  MGA has contended is actionable.  The Federal Rules of Civil Procedure do not permit MGA and
23

24  _____

25  [2]  Like MGA's complaint, MGA's response to Mattel's contention interrogatory regarding the alleged serial imitating and copycatting focus primarily on Mattel's "My Scene" and "Acceleracers" products.

26        See MGA's Second Supplemental Responses to Mattel's First Set of Interrogatories re Claims of Unfair Competition
27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                                    6

EXHIBIT ___6___

PAGE ___65___

1    Bryant to use broad discovery requests, untethered to a claim or defense, to fish for new claims.

2    Rivera v. NIBCO, Inc., supra. Because Request Nos. 3, 4, 7, 12, and 14 extend far beyond the

3    permissible scope of discovery under Rule 26, Fed.R.Civ.P., there is good cause to issue the

4    requested protective order limiting their scope to the Polly Pocket commercial identified in

5    MGA's interrogatory response.

6        In contrast, however, Request No. 13 is reasonably tailored to documents relevant to

7    MGA's unfair competition claim. Evidence of directives, suggestions, or instructions from Mattel

8    to its advertising agencies to create advertisements for Polly Pocket using elements that are

9    similar to or the same as elements used in advertisements for "BRATZ," "ALIEN RACERS," or

10    MGA products could establish that Mattel intentionally used the same mall and escalator to

11    produce the Polly Pocket commercial identified in MGA's interrogatory response. Therefore,

12    Mattel's motion is denied with respect to Request No. 13.

13                           IV. CONCLUSION

14        For the reasons set forth above, Mattel's motion for a protective order is granted in part

15    and denied in part. Request Numbers 3, 4, 7, 12, and 14 of MGA's and Bryant's subpoenas to

16    Young & Rubicam Brands, Peterson Milla Hooks, Inc., and Ogilvy & Mather Worldwide relating

17    to Polly Pocket are hereby limited in scope to Polly Pocket documents relating to the single Polly

18    Pocket television commercial identified in MGA's interrogatory response. Mattel's motion is

19    denied as to Request No. 13.

20        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

21    Master, Mattel shall file this Order with the Clerk of Court forthwith.

22    Dated: April 19, 2007

23

24                               HON. EDWARD A. INFANTE (Ret.)

25                                 Discovery Master

26

27

28

EXHIBIT _____ 6 _____

PAGE _____ 66 _____

7

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 19, 2007,

I served the attached ORDER GRANTING IN PART AND DENYING IN PART

MATTEL'S MOTION FOR PROTECTIVE ORDER REGARDING "POLLY POCKET"

DOCUMENTS" in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 19, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT ___6___

PAGE ___67___

EXHIBIT 7

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                      UNITED STATES DISTRICT COURT

8                     CENTRAL DISTRICT OF CALIFORNIA

9                            EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12            Plaintiff,

13       v.                                Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15            Defendant.                   **ORDER GRANTING IN PART AND
                                           DENYING IN PART MGA'S MOTION
16                                         TO COMPEL DOCUMENTS
                                           RESPONSIVE TO FIRST SET OF
17                                         REQUESTS FOR PRODUCTION OF
                                           DOCUMENTS DATED NOVEMBER
                                           22, 2006**
18  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
20                                            I. INTRODUCTION

21       On April 13, 2007, MGA Entertainment, Inc. ("MGA") submitted a motion to compel

22  Mattel, Inc. ("Mattel") to produce documents responsive to MGA's First Set of Requests for

23  Production of Documents dated November 22, 2006 (the "requests"), which generally seeks

24  documents that MGA contends are relevant to its Lanham Act and unfair competition claims.  On

25  April 25, 2007, Mattel submitted its opposition brief, and on May 2, 2007, MGA submitted a

26  reply brief.  The matter was heard via telephonic conference on May 11, 2007.  Having

27

28
    Bryant v. Mattel, Inc.,                    EXHIBIT _____ 7 _____
    CV-04-09049 SGL (RNBx)
                                               PAGE _____ 68 _____

considered the motion papers and comments of counsel at the hearing, MGA's motion to compel
is granted in part and denied in part.

## II. BACKGROUND

There are two themes underlying MGA's claims for unfair competition against Mattel.
First, MGA alleges that Mattel has intentionally "serially imitated and copy-catted the look of
MGA products, trade dress, trademarks, themes, ideas, advertising and packaging, including for
the 'Bratz' line of dolls," to dilute MGA's brand, create customer confusion, and unfairly stifle
competition. MGA's Complaint at ¶¶9, 65. Second, MGA alleges, on information and belief,
that "Mattel has intimidated, coerced and threatened retailers, licensees, suppliers and others in
the industry – both in the U.S. and internationally – in order to inhibit and stifle MGA's ability to
compete with Mattel and to prevent MGA from obtaining licensees, contracts and supplies for its
products." Id. at ¶9.

### The Alleged Copy-catting

Mattel's alleged serial copycatting "began with the 'Bratz' dolls themselves, but quickly
extended to MGA's packaging, themes, accessories, advertising and even other product lines."
Id. at ¶33. Mattel allegedly "designed its 'My Scene' dolls to evoke the unique and distinctive
look of the 'Bratz' – also with disproportionately oversized heads, artfully made-up almond-
shaped eyes, large, overly-lined and lipsticked lips, trendy, hip clothes and hair styles, and over-
sized feet." Id. at ¶34. Mattel also allegedly "systematically proceeded to modify the 'My Scene'
dolls since their original release, particularly their eyes, to increase their similarity to 'Bratz' more
and more over time." Id.

Further, Mattel allegedly "modified its 'My Scene' packaging, and the manner in which
the dolls are displayed, to more closely mimic the packaging, trade-dress and overall look and
total image of MGA's 'Bratz.'" Id. at ¶41. For example, Mattel allegedly changed its packaging
"to the open and transparent style of the 'Bratz' packaging." Id. at ¶43. Mattel also allegedly
hung its packaging and product display to "look even more closely and confusingly similar to

EXHIBIT ___7___

PAGE ___69___

2

1   MGA's packaging and '*tout ensemble.*'" Id. at ¶45.  Mattel also allegedly "discarded its

2   traditional rectangular shaped box, and like 'Bratz', adopted an unusual, non-rectangular shaped

3   box." Id. at ¶46.  Mattel also allegedly "adopted the 'flying banner' ribbon-style slogan running

4   across the middle of the box, similar to that used on the 'Bratz' packaging." Id.

5        In addition to the packaging changes, Mattel allegedly copied "MGA's practice of

6   regularly releasing new dolls in connection with a theme – but not just any theme, often MGA's

7   theme." Id. at ¶47.  For example, when MGA released its "Wintertime Wonderland" theme,

8   Mattel allegedly released "Chillin Out." Id. at ¶48.  Mattel also allegedly imitated Bratz

9   accessories and related products in order to create consumer confusion in the marketplace. Id. at

10  ¶52.  Further, Mattel allegedly "began running television commercials for its 'My Scene' dolls

11  bearing a remarkable similarity to 'Bratz' commercials, combining live action with animated

12  sequences set to similar sounding pop music and lyrics." Id. at ¶51.  MGA alleges that Mattel's

13  conduct described above "is a calculated and intentional effort unquestionably designed to trade

14  off of MGA's hard work and goodwill, create confusion in the marketplace, steal MGA's thunder

15  and momentum, and dilute and blur away the novelty and distinctiveness of MGA's products."

16  Id. at ¶54.

17       Further, MGA alleges that when it "came out with a 'Bratz' 'Funky Fashion Makeover

18  Head,' Mattel came out with a confusingly similar – indeed, practically identical – 'My Scene'

19  styling head." Id. at ¶55.  Mattel also allegedly "used a portion of the Bratz doll's now-famous

20  trademarked tag line 'The Girls With a Passion for Fashion' on Mattel's website for its 'Diva

21  Starz' dolls, asking its website users: 'Do you have a passion for fashion?'" Id. at ¶58.

22       MGA also alleges that Mattel recently came out with a confusingly similar line of "My

23  Scene" plush pets that have the distinctive look of MGA's "Bratz" line. Id. at ¶59.  In addition,

24  Mattel allegedly "chose to package its pets the same way that MGA packaged its 'Bratz Petz',

25  sitting in an open box, with no top and with partial side panels that slope from a narrow front

26  panel to a higher back panel." Id. at ¶60.  MGA alleges that the similarity of the "My Scene" pets

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ____7____   3

PAGE ____70____

1  and the "Bratz Petz" has confused sophisticated retailers who have mistakenly merchandised the

2  products together.  Id. at ¶61.

3  　　　MGA alleges that Mattel's television commercials and "My Scene" products have become

4  so confusingly similar to MGA's commercials and products that advertising executives have

5  expressed concern.  Id. at ¶62.  MGA also alleges that the press has taken notice of Mattel's

6  alleged attempts to confuse consumers.  Id. at ¶63.  Further, MGA alleges that some customers

7  have contacted MGA seeking to purchase "My Scene" dolls.  Id. at ¶64.

8  　　　MGA alleges that Mattel's conduct has reached beyond "Bratz" to include other new

9  MGA toy lines.  Id. at ¶67.  For example, Mattel allegedly modeled its "Wee 3 Friends" line of

10  dolls and packaging on MGA's "4-Ever Best Friends" line.  Id. at ¶68.  Mattel also allegedly

11  modeled its "Little Mommy Potty Training Baby Doll" on MGA's "Mommy's Little Patient."  Id.

12  at ¶69.  Mattel also allegedly revamped and renamed one of its "Hot Wheels" lines with the

13  "AcceleRacerS" logo based upon MGA's "AlienRacers" radio controlled racing vehicles.  Id. at

14  ¶70.

15  　　　　　　　　　　Additional Allegedly Anti-Competitive Conduct

16  　　　MGA alleges that Mattel has engaged in additional allegedly anti-competitive conduct,

17  including "sending threatening letters to several of its former employees who now work for MGA

18  warning them not to disclose *even publicly available information* about Mattel, including the

19  names and positions of Mattel employees."  Id. at ¶75 (emphasis in original).  Mattel has also

20  allegedly "warned a number of companies, including the biggest publishing entity in the United

21  Kingdom, not to license MGA products, or risk retribution."  Id. at ¶76.  MGA alleges that it has

22  lost valuable licensing opportunities as a result of Mattel's conduct.  Id.

23  　　　MGA also alleges that "Mattel has used similar intimidation to pressure distributors and

24  retailers, particularly in foreign countries, not to distribute 'Bratz', to reduce shelf and display

25  space for 'Bratz' and to place 'Bratz' in unfavorable locations at retail outlets."  Id. at ¶77.  MGA

26  further alleges that "[w]hen MGA faced a shortage of doll hair in October 2002, MGA is

27

28  Bryant v. Mattel, Inc.,
　　CV-04-09049 SGL (RNBx)

EXHIBIT _____7_____

PAGE _____71_____

4

1    informed and believes that the reason for that shortage was that Mattel had locked MGA out by

2    buying up the supply from the two main hair supply companies." Id. at ¶78.

3          MGA also alleges that Mattel manipulated the retail market. More specifically, MGA

4    alleges that "Mattel merchandisers have been caught tampering with MGA's retail displays,

5    replacing favorably located MGA merchandise with Mattel merchandise instead." Id. at ¶79.

6    MGA further alleges on information and belief that "Mattel has falsely told a major United States

7    retailer that MGA was giving another major United States retailer below-market pricing and

8    falsely told a United Kingdom retailer that MGA was discontinuing one of its lines, in order to

9    make such line less attractive to buyers and thereby attempt to increase sales of the competitive

10   Mattel product and improve its own sales, at MGA's expense." Id.

11         Next MGA alleges on information and belief that NPD Funworld ("NPD"), the leading

12   supplier of sales statistics in the toy industry, terminated MGA's subscription ostensibly for

13   misusing NPD data and that "the termination was the result of pressure from Mattel." Id. at ¶¶80-

14   85. MGA also alleges on information and belief that Mattel pressured NPD into changing certain

15   product classifications for "Bratz" products to manipulate the data and preserve Mattel's market

16   share rankings in the "fashion doll" category. Id. at ¶86.

17         MGA further alleges on information and belief that Mattel used its influence as a major

18   contributor to the Children's Advertising Review Unit ("CARU"), which is a unit of the Council

19   of Better Business Bureaus, to "place onerous restrictions on MGA advertisements, and require

20   MGA to amend aspects of commercials that have gone unchallenged in other parties'

21   commercials." Id. at ¶89. As a result of CARU's restrictions, MGA allegedly incurred

22   unnecessary costs for reshooting and producing or re-editing its commercials. Id. at ¶90.

23         MGA also alleges on information and belief that Mattel's subsidiary, Fisher Price,

24   "orchestrated" a change to the selection process for TIA's "Toy-of-the-Year Awards," which

25   allegedly resulted in a Fisher Price toy beating out "BRATZ Formal Funk Super Stylin' Runway

26   Disco." Id. at ¶¶92-96. MGA also alleges on information and belief that one year "Mattel was

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7 _____

PAGE _____ 72 _____

5

1 | instrumental in attempting to keep MGA from participating as a sponsor in the 'Kids' Choice

2 | Awards.'" Id. at ¶97.

3 |   As a result of Mattel's alleged conduct described above, MGA has allegedly suffered, and

4 | unless abated, will continue to suffer lost sales, lost licensing fees, lost contracts, lost

5 | relationships, lost business opportunities and other damages. Id. at ¶100. MGA also alleges that

6 | its ability to enter new markets and product lines has been hampered and delayed. Id.

7 | Furthermore, MGA alleges that "[i]ts production costs have increased, its reputation and

8. | relationships with important players in the industry have been negatively impacted, the value of

9 | its business has been diminished, and its ability to attract, hire and retain employees has been

10 | affected." Id. Based upon the foregoing, MGA asserts claims for (1) false designation of origin

11 | or affiliation in violation of 15 U.S.C. §1125(a); (2) unfair competition in violation of 15 U.S.C.

12 | §1125(a) and unfair competition and unfair business practices in violation of Cal. Bus. & Prof.

13 | Code §17200 et seq. and California common law; (3) dilution in violation of 15 U.S.C. §1125(c),

14 | Cal. Bus. & Prof. Code §14330 and California common law; and (4) unjust enrichment.

15 | <div align="center">MGA's First Set of Requests for Production of Documents</div>

16 |   On November 22, 2006, MGA propounded one hundred fifteen (115) document requests

17 | seeking discovery regarding, among other things: (a) Mattel's alleged copycatting efforts and

18 | activities with respect to Bratz and other MGA product lines; (b) anti-competitive business

19 | practices allegedly carried out by Mattel; and (c) any similar or related activities. In response,

20 | Mattel objected to many requests primarily on the grounds that they were overly broad and

21 | unduly burdensome. Mattel agreed, however, to produce documents responsive to many of the

22 | requests.

23 |   The parties met and conferred in person on March 9, 2007. MGA's counsel demanded

24 | that Mattel withdraw all objections based on relevance. Alger Decl. in Support of Mattel's

25 | Opposition at ¶7. Mattel's counsel responded that Mattel was producing responsive documents

26 | and would continue to produce responsive documents, but had concerns over the "lack of focus

27 |

28 | Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7

PAGE _____ 73

6

1  and infinite scope" of MGA's document requests. Id. Mattel's counsel suggested that MGA
2  narrow the requests to "those products, retailers, licensees, and time frames that MGA has put at
3  issue in its Complaint and response to interrogatories." Id. MGA's counsel, however, rejected
4  the proposal. Id.

5      A few days later, counsel for MGA sent Mattel's counsel a letter offering several
6  suggestions for limiting the requests. Glad Decl. in Support of MGA's Motion, Ex. 1. In
7  particular, MGA stated that "it would be amenable to certain limitations on the number and
8  identities of custodians whose files must be searched, so long as Mattel is willing to accept
9  reciprocal accommodations for MGA's own document review." Id. Mattel did not respond to the
10  letter, and the instant motion ensued.

11                          III. STANDARDS

12      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain
13  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any
14  party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not
15  permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.
16  2004) ("District courts need not condone the use of discovery to engage in 'fishing
17  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)
18  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)
19  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for
20  the phrase "subject matter involved in the pending action," were intended to target discovery that
21  swept far beyond the claims and defenses of the parties and that seemed designed not to fairly
22  litigate the issues presented by the pleadings but to develop new claims or defenses.). Further,
23  pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit discovery where "the burden or
24  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of
25  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in
26  the litigation, and the importance of the proposed discovery in resolving the issues."

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT ___7___

PAGE ___74___

7

<div align="center">IV. DISCUSSION</div>

A. General Objections

      MGA contends that Mattel has improperly withheld documents based on three generalized objections.  First, MGA contends that Mattel has asserted an objection based upon relevance to requests that are not related to facts specifically alleged in MGA's complaint.  MGA contends the objection is improper because it essentially grafts a heightened pleading standard onto discovery requests, is inconsistent with the standard for discovery set forth in Rule 26(b), Fed.R.Civ.P., and goes against the very purpose of discovery.  MGA denies "fishing" for new claims, contending that it is seeking discovery tending to support or refute existing claims.

      Second, MGA contends that Mattel has improperly refused to produce "documents related to MGA's BRATZ dolls unless the documents are 'in the context' of Mattel's BARBIE or MY SCENE products."  MGA's Motion at 9:10-11.  MGA contends that all of the documents related to Bratz that it seeks are relevant, regardless of whether they refer to or contemplate Barbie or My Scene.  In particular, MGA contends that documents related to Bratz, even if they do not refer to Barbie or My Scene, are relevant to its claims that (1) Mattel has exerted pressure on licensees not to license Bratz products; (2) Mattel has exerted pressure on retailers or distributors not to distribute Bratz products; (3) Mattel has tampered with Bratz displays; and (4) Mattel intentionally copied Bratz products.

      Third, MGA contends that Mattel has improperly limited its production of My Scene documents to only those documents related to the specific acts of product and packaging infringement identified in MGA's complaint.  MGA contends that it is entitled to far more, including documents concerning potential acts of infringement not mentioned in the complaint and documents concerning the development of the My Scene product line from inception of this suit to the present.  In particular, MGA contends that documents concerning the current development of My Scene may tend to show continuing infringement, and therefore are relevant to prove that Mattel's conduct is willful.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT     7

PAGE     75

8

1   Mattel contends that it has produced documents in response to many of MGA's requests,

2   and will continue to do so.  Mattel objects, however, to those requests that require Mattel to

3   produce virtually every document, anywhere in the world, that mentions MGA, Larian, Bratz, or

4   any other MGA product.  Mattel contends that MGA is engaging in an improper fishing

5   expedition, casting its requests so broadly as to require production of documents relating to

6   products and entire product lines that are irrelevant to the suit.  Mattel also contends that the

7   requests are overbroad because they seek documents about subjects such as quality and pricing

8   which do not appear anywhere in MGA's pleadings.  Id.  Furthermore, Mattel contends that

9   MGA's requests are not linked in any manner to MGA's claims in the suit and do not reference

10  any particular alleged wrongdoing by Mattel.

11   Mattel also contends that responding to MGA's document requests would impose a

12  considerable, unjustifiable burden on Mattel.  Mattel emphasizes that it is a large company, with

13  over 140 subsidiaries and affiliates in approximately 43 different countries.  Mattel represents that

14  it has over 5,000 employees in the United States and more than 25,000 employees at subsidiaries

15  and affiliates worldwide.

16   Mattel also represents that its products are sold in thousands of stores.  It represents that it

17  deals with Wal-Mart, Target, K-Mart, and Toys "R" Us on a daily basis, and that these four

18  retailers have more than 4,500 stores in the United States.  Mattel also represents that it deals with

19  many hundreds more retailers domestically and overseas.  Further, Mattel represents that it has

20  relationships with more than 1,400 licensees and licensors.

21   Mattel also represents that the toys it produces vary widely, including collectible card

22  games, electronic handheld devices, toy cars, and the Barbie doll line.  Mattel asserts that it

23  introduces annually more than 2,000 different types of toys, dolls and other products in more than

24  150 nations throughout the world.  Mattel asserts that many products often involve the creation of

25  many categories of documents relating to design, marketing, consumer and market research,

26  planning, engineering, cost, manufacturing, distribution, sales and finance.  Mattel represents that

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT ___7___

PAGE ___76___

9

1    these types of documents are stored on Mattel's over 800 computer servers worldwide, and that

2    countless others are stored in hardcopy or stored on individual employees' desktop computers and

3    laptops. Furthermore, Mattel represents that many of its network systems, including its e-mail

4    system, are not readily searchable, or searchable at all, by use of keyword terms. For example,

·5    Mattel asserts that the computer system used by Mattel's designers and engineers overwhelmingly

6    consists of graphical files whose content cannot be searched by keywords.

7        Mattel estimates that MGA and its products are referenced in millions of pages of

8    documents and computer files at Mattel. More specifically, Mattel contends that many groups

9    across Mattel, such as marketing, consumer research, sales, finance, human resources and safety

10    testing, have documents that refer or relate to MGA or its products in some way. Mattel also

11    contends that a large volume of this information is from third party analysts and third party

12    sources, including retail sales reports that track doll sales across the entire industry, newspaper

13    and magazine articles, commercials and advertisements. Mattel also represents that it collects

14    great quantities of documents about its competitors that are readily available on the Internet or

15    other public sources, including catalogs, advertising, press releases, and media reports, and from

16    retailers and distributors throughout the world.

17        Furthermore, Mattel represents that its documents, particularly its marketing and sales

18    research documents, often reference many competing products, not just the Bratz dolls at issue.

19    Mattel contends that these types of documents would be difficult to search and collect because, in

20    many instances, the only way to determine whether a particular document mentions Bratz would

21    be to review the entire document.

22        Mattel contends that virtually any employee at Mattel might have documents that are

23    responsive to MGA's requests. Mattel estimates that "to locate all such documents would take

24    years, cost millions of dollars, and seriously interfere with the operation of Mattel's business."

25    Mattel's Opposition at 17. Matter also asserts that "[s]uch efforts – including search of Mattel's

26    servers, its employees' computer workstations, hard copy files, computer disks, and video files –

27

28   

EXHIBIT   7

PAGE   77

10

1    would be in addition to the cost of attorney review of the materials before they are produced in

2    litigation." Id. Mattel also contends that the burden and expense of production is multiplied

3    several times further if Mattel is required to search the files in the possession of its worldwide

4    subsidiaries.

5          Mattel contends that even if the search for responsive documents could be accomplished,

6    the resulting document production would provide MGA with countless documents with little or

7    no relevance. For example, Mattel anticipates that many documents would be discussions of the

8    competition in the context of irrelevant dolls, such as any number of mainline Barbie dolls.

9    Mattel contends that other documents would simply be third party market reports which are

10   equally available to MGA from public sources. Accordingly, Mattel requests that the motion be

11   denied in full.

12         In its reply, MGA counters that the requests are not unduly burdensome. MGA contends

13   that contrary to Mattel's assertions, the requests are factually self-limited, containing restrictive

14   language and defining the outer parameters for the documents sought. Furthermore, MGA

15   contends that it told Mattel that it would be amenable to certain limitations on the number and

16   identities of custodians whose files must be searched, so long as Mattel was amenable to

17   reciprocal accommodations for MGA's own document review. MGA contends that, at a

18   minimum, Mattel should be required to search the physical and electronic files of its employees.

19   MGA contends that Mattel should not be released wholesale from its discovery obligations based

20   on a purported burden, particularly when it failed to work with MGA in good faith to mitigate that

21   burden.

22         Lastly, MGA argues that any burden to Mattel is outweighed by the benefit to be secured

23   from the discovery. MGA contends that it "realistically has no other way of obtaining documents

24   tending to support its claims that Mattel engaged in a pattern of conduct with suppliers,

25   distributors, licensees and others constituting unfair competition except from Mattel." MGA's

26

27                                              EXHIBIT ___ 7

28   Bryant v. Mattel, Inc.,                    PAGE ___ 78                              11
     CV-04-09049 SGL (RNBx)

1  Reply at 10.  Therefore, MGA believes that the benefits of the discovery it seeks are

2  immeasurable and that in contrast, the burden to Mattel is not unreasonable.[1]

3  B. Document Requests

4        In addition to the three general objections described above, Mattel has asserted other

5  objections to certain categories of document requests which MGA contends are improper.  The

6  general objections stated above, as well as the additional objections asserted by Mattel, are

7  reviewed herein in the context of the nine categories of document requests at issue.

8  <center>1. Document Request Nos. 32-33, 61</center>

9        Request nos. 32, 33 and 61 seek production of communications with sales personnel,

10  merchandisers and retailers relating to alteration of displays or retail spacing of MGA products

11  other than Bratz.  MGA contends that the documents it seeks are relevant to the allegation in

12  paragraph 79 of its complaint that "Mattel merchandisers have been caught tampering with

13  MGA's displays, replacing favorably located MGA merchandise with Mattel merchandise

14  instead."  In its reply brief, MGA clarifies that it "seeks information tending to show that at any

15  time after June 2001, Mattel sales personnel tampered with, or directed others to tamper with,

16  MGA's in-store displays."  MGA's Reply at 8.

17        During the meet and confer process, Mattel agreed to produce documents responsive to

18  request nos. 32-33 and 61 insofar as they related to displays, retail spacing, or shelf space for

19  Bratz, but refused to produce responsive documents relating to any other MGA products.  Glad

20  Decl. in Support of MGA's Motion, Ex. 1.  Mattel contends that request nos. 32 and 33 are

21  overbroad and unduly burdensome insofar as they require production of communications relating

22  to displays, retail spacing, or shelf-space for any other MGA products.  Mattel views the requests

23  as a directive to "go out and find, review and produce essentially all of its retailer

24  
_____

25    [1] In a footnote, MGA mentions that Mattel has also withheld documents relating to conduct occurring
outside of the United States, and that this issue will be addressed in a separate motion. MGA's Motion at 10, n. 29.

26  Nothing in this Order is intended in any way to permit or foreclose discovery relating to conduct occurring outside of
the United States.

27  

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT ____7____

PAGE ____79____

12

1 || communications about any 'change' in any 'display' or any 'retail spacing' for any MGA

2 || product." Mattel's Opposition at 10. Mattel contends that MGA, not Mattel, should bear the

3 || burden of identifying specific incidents of alleged tampering, and thereafter Mattel will attempt to

4 || find and produce pertinent documents relating to those incidents. Id.

5 || Mattel also contends that request no. 61 is overbroad and amounts to an improper fishing

6 || expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

7 || product, whether or not they have anything to do with anything placed at issue by MGA. Mattel's

8 || Opposition at 7-8. Mattel also contends that the request has no linkage to any possible consumer

9 || confusion between Bratz and My Scene or between the other products mentioned in MGA's

10 || complaint or MGA's responses to Mattel's contention interrogatories. Id. at 8.

11 || Request nos. 32, 33, and 61 seek documents relevant to MGA's allegation that "Mattel

12 || merchandisers have been caught tampering with MGA's displays, replacing favorably located

13 || MGA merchandise with Mattel merchandise instead." MGA's allegation of tampering is broader

14 || than just Bratz products, and therefore, Mattel's objection to producing responsive documents for

15 || MGA products other than the Bratz line is overruled.

16 || Further, the requests are not unduly burdensome. Request nos. 32 and 33 are limited to

17 || communications between Mattel and its sales personnel and merchandisers relating to alterations

18 || of display or retail spacing for MGA products, and therefore do not require Mattel to search for

19 || documents from every single one of its employees. Request no. 61 is also reasonably tailored to

20 || seek relevant information, requiring production of communications between Mattel and any

21 || retailer, sales person or merchandiser referring or relating to the allocation of shelf space, altering

22 || of retail displays, or placement of Bratz in retail stores, including but not limited to

23 || communications concerning the placement of "Bratz" relative to My Scene. Contrary to Mattel's

24 || assertion, request no. 61 does not require Mattel to search for virtually all documents that mention

25 || MGA, Larian, Bratz, or any other MGA product, whether or not they have anything to do with

26 || anything placed at issue by MGA. Instead request no. 61 is clearly limited to a defined category

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 7 _____                13

PAGE _____ 60

1  of communications with certain individuals and/or entities regarding a defined subject matter.  In

2  addition, MGA indicates in its reply brief that it seeks documents and communications from June

3  2001 forward.  With this temporal limitation, MGA's motion is granted as to request nos. 32, 33

4  and 61.

5                                        · 2. Document Request Nos. 37-39

6          Request nos. 37 through 39 call for production of Mattel's communications with CARU

7  relating to MGA and restrictions to be placed on MGA, as well as documents supporting Mattel's

8  allegation in its answer that MGA violated CARU standards.  MGA contends that the documents

9  it seeks are relevant to its allegation in paragraph 89 of its complaint that "Mattel used its

10  influence as a major contributor to CARU's budget to induce CARU to place onerous restrictions

11  on MGA advertisements, and to require MGA to amend aspects of commercials that have gone

12  unchallenged in other parties' commercials."

13          In its opposition brief, Mattel represents that is prepared to produce documents that bear

14  on MGA's claims and Mattel's defenses involving CARU, but nothing further.  Mattel contends

15  that the sweep of these requests "goes far beyond any particular advertisements or the allegations

16  in MGA's complaint that Mattel pressured CARU or obtained better treatment different than

17  MGA." Mattel's Opposition at 10.  Furthermore, Mattel contends that the requests are improper

18  because CARU investigates complaints and claims in confidence.

19          MGA's request nos. 37 and 39 seek information relevant to MGA's allegation that Mattel

20  influenced CARU to place restrictions on MGA's advertisements.  The Federal Rules of Civil

21  Procedure do not require MGA to identify every instance when CARU imposed restrictions or

22  required amendments to MGA's advertisements before propounding discovery on the subject.

23          Request no. 38 is much broader, however, seeking all communications between Mattel

24  and CARU referring or relating to MGA, Larian, Bratz, or MGA products.  Request no. 38 is not

25  limited to the subject of MGA's advertisements, or any other subject that is at issue in the case.

26  Further, request no. 38 is, to a certain extent, cumulative of request nos. 37 and 39.

27

28     Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT ___7___

PAGE ___81___

14

1        Accordingly, MGA's motion is granted with respect to request nos. 37 and 39, but denied

2   as to request no. 38.

3                      3. Document Request No. 43

4        Request no. 43 seeks documents relating to any attempts by Mattel to price My Scene

5   below Bratz. MGA contends that the documents it seeks are likely to lead to admissible evidence

6   relating to whether Mattel has an "organic process" for setting prices, or whether it set prices

7   based on confidential information obtained from MGA. MGA's Motion at 13:22.

8        Mattel contends that there is no allegation in MGA's complaint of below-market pricing.

9   Further, Mattel contends that the request is overbroad and seeks documents that have no relevance

10   to any other subject matter in suit.

11        Request no. 43 seeks documents that have no relevance to any claim or defense in the

12   case. There is no allegation in MGA's complaint related to below-market pricing. Nor is there

13   any allegation that Mattel misappropriated confidential pricing information from MGA.

14   Accordingly, MGA's motion is denied as to request no. 43.

15                      4. Document Request No. 47

16        Request no. 47 calls for production of documents relating to Mattel's communications

17   with buyers, merchandisers, general merchandise managers, or retailers relating to whether MGA

18   was giving any other U.S. retailer below-market pricing or whether MGA was discontinuing one

19   of its product lines. MGA contends that these documents are relevant to the allegation in

20   paragraph 79 of its complaint that "Mattel has falsely told a major United States retailer that

21   MGA was giving another major United States retailer below-market pricing and falsely told a

22   United Kingdom retailer that MGA was discontinuing one of its lines."

23        Mattel contends that request no. 47 is improper because it demands documents about

24   "alleged statements to an unidentified retailer and an unidentified toy line" without giving Mattel

25   "a hint as to where to look in order to perform a good-faith search for documents." Mattel's

26   Opposition at 12.

27

28

EXHIBIT    7

PAGE    82

15

1    Request no. 47 seeks documents relevant to MGA's allegation that Mattel made a false

2    representation to a major United States retailer that MGA was giving another retailer below-

3    market pricing, and falsely told a United Kingdom retailer that MGA was discontinuing a product

4    line.  The Federal Rules of Civil Procedure do not require MGA to identify the businesses to

5    whom Mattel allegedly made the false statements as a precondition to propounding discovery.

6    Nor is MGA required to identify every instance in which Mattel allegedly made such false

7    representations before propounding discovery.  Nevertheless, the request is extremely broad and

8    burdensome, requiring Mattel to search for "all documents referring or relating to any

9    communications between Mattel" and buyers, merchandisers, general merchandise managers, or

10   retailers referring or relating to whether MGA was giving another United States retailer below-

11   marketing pricing, or whether MGA was discontinuing one of its lines.  To alleviate some of the

12   burden to Mattel, the request is hereby limited to require production of only Mattel's

13   communications with any buyers, merchandisers, general merchandise managers or retailers

14   about MGA providing below-market pricing or MGA discontinuing a product line.  With this

15   limitation, MGA's motion is granted as to request no. 47.

16                    5. Document Request Nos. 48 – 50

17   Request nos. 48 through 50 essentially seek all documents referring or relating to Mattel's

18   communications with any buyers, merchandisers, general merchandise managers, retailers,

19   suppliers, licensees, and potential licensees, referring or relating to Bratz, Larian or MGA

20   regarding the origins, design, development, product launch, sales, promotions, advertising,

21   quality, or price of Bratz or any other MGA product.  During the meet and confer, Mattel agreed

22   to produce some, but not all, responsive documents.  In particular, Mattel objected to producing

23   documents relating to the pricing of Bratz or any MGA product.  Mattel also objected to

24   producing documents relating to Bratz unless the documents also referenced Mattel's My Scene

25   or Barbie products.

26

27

28

EXHIBIT ___7___

PAGE ___83___

1       MGA contends that these documents are relevant to its allegation that Mattel interfered

2  with its business dealings with third parties. In its reply brief, MGA asserts that it seeks

3  documents and communications between Mattel and certain third parties "from June 2001 tending

4  to support or refute MGA's assertions that Mattel interfered with MGA's dealings with such

5  parties by providing false or misleading information concerning MGA products, the ownership of

6  'Bratz' and exerting pressure on these parties not to license or sell MGA products." MGA's

7  Reply at 8.

8       Mattel contends that these requests are overbroad and amount to an improper fishing

9  expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

10  product, whether or not they have anything to do with anything placed at issue by MGA. Mattel's

11  Opposition at 7-8. Mattel also contends that the requests have no linkage to any possible

12  consumer confusion between Bratz and My Scene or between the other products mentioned in

13  MGA's complaint or MGA's responses to Mattel's contention interrogatories. Id. at 8.

14       This category of requests is clearly overbroad, requiring production of documents that

15  merely mention MGA, Larian, Bratz or other MGA products, regardless of whether or not they

16  have anything to do with the claims and defenses in the case. MGA has not made any attempt to

17  link these requests to any of the numerous and far-ranging allegations of unfair competition set

18  forth in its complaint. Instead MGA makes a very generalized argument that the requests seek

19  information relevant to its allegation that Mattel interfered with MGA's business dealings with

20  third parties. Furthermore, Mattel has carried its burden of establishing that the burden and

21  expense of complying with the requests far exceed their likely benefit, taking into account the

22  needs of the case. Accordingly, MGA's motion is denied as to request nos. 48 through 50.

23                6. Document Request Nos. 51 – 55

24       This category of document requests requires production of essentially all documents

25  referring or relating to any communications between Mattel and any public relations firms,

26  members of the press, current or former MGA employees, or former Mattel employees, relating to

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ____7____

PAGE ____81____

17

1  Bratz, Larian, or MGA regarding the origins, design, development, product launch, sales,
2  promotions, advertising, quality, or price of Bratz or any other MGA product.  During the meet
3  and confer process, Mattel agreed to produce some, but not all responsive documents.

4      MGA contends that these documents are relevant to its allegations that Mattel has engaged
5  in serial imitation of MGA products in an attempt to dilute their distinctiveness and create
6  confusion in the marketplace.  MGA also contends that these documents are likely to lead to
7  admissible evidence relating to the creation and ownership of Bratz, Mattel's knowledge and
8  awareness of Bratz products and marketing and its attempt to imitate those products and dilute
9  their distinctiveness.

10      Mattel contends that these requests are overbroad and amount to an improper fishing
11  expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA
12  product, whether or not they have anything to do with anything placed at issue by MGA.  Mattel's
13  Opposition at 7-8.  Mattel also contends that the requests have no linkage to any possible
14  consumer confusion between Bratz and My Scene or between the other products mentioned in
15  MGA's complaint or MGA' responses to Mattel's contention interrogatories.  Id. at 8.

16      Like the previous category of requests, this category of requests is grossly overbroad,
17  requiring production of documents that merely mention MGA, Larian, Bratz or other MGA
18  products, regardless of whether or not they have anything to do with the claims and defenses in
19  the case.  MGA has not made any attempt to link these requests to any of the allegations of unfair
20  competition set forth in its complaint or to the responses it provided to Mattel's contention
21  interrogatories.  Furthermore, Mattel has carried its burden of establishing that the burden and
22  expense of complying with these requests far exceed their likely benefit, taking into account the
23  needs of the case.  Accordingly, MGA's motion is denied as to request nos. 51-55.

24                      7. Document Request Nos. 56 – 58
25      This category of requests requires production of all documents relating to business
26  dealings between any licensee, supplier, manufacturer, retailer, distributor, or merchandiser and
27
28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT 7
PAGE 85

18

1   MGA. MGA contends that these document requests are specifically tailored to documents in

2   Mattel's possession, custody or control concerning MGA's business dealings with licensees,

3   suppliers, manufacturers, retailers, distributors, or merchandisers, and are directly relevant to its

4   claims that Mattel interfered with MGA's business dealings with third parties.

5        Again, Mattel contends that these requests are overbroad and amount to an improper

6   fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other

7   MGA product, whether or not they have anything to do with anything placed at issue by MGA.

8   Mattel's Opposition at 7-8. Mattel also contends that the requests have no linkage to any possible

9   consumer confusion between Bratz and My Scene or between the other products mentioned in

10  MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at 8. Mattel

11  also objects to request nos. 57 and 58 insofar as they require Mattel to produce documents that

12  refer "explicitly or implicitly" to business dealings involving MGA.

13       Like the previous two categories of document requests, this category of requests is grossly

14  overbroad. Request nos. 56 and 57 require production of documents referring or relating to

15  MGA's business dealings, without specifying any products or other subject matter limitations.

16  Request no. 58 is narrower, but is unreasonable insofar as it requires Mattel to produce documents

17  that refer "explicitly or implicitly" to business deals involving MGA's Bratz or other products.

18  Furthermore, Mattel has carried its burden of establishing that the burden and expense of

19  complying with the requests far exceed their likely benefit, taking into account the needs of the

20  case. Accordingly, MGA's motion is denied as to request nos. 56 through 58.

21              8. Document Request Nos. 59, 60, 62-63, 99, 101

22       This category of requests requires production of all documents relating to (a) any

23  interference with or inhibition of the licensing or potential licensing of MGA's products, or

24  relating to any limitations or restrictions on any MGA licensee (request nos. 59, 62-63); (b) any

25  third party's licensing or potential licensing of MGA products (request no. 60); and (c)

26  communications between Mattel and MGA's licensees and distributors referring to MGA, Bratz

27

28

EXHIBIT ___7___

PAGE ___66___

1   or the claims in this lawsuit (request nos. 99, 101). MGA contends that the documents it seeks are

2   relevant to its allegation that Mattel exerted its influence on retailers and other third parties not to

3   do business with MGA.

4          Mattel contends that request nos. 59, 60, 62 and 63 are overbroad, seeking all documents

5   that might bear on MGA's business without identifying any particular business dealings. Mattel

6   also contends that they are overbroad insofar as they require production of all documents related

7   to "any MGA PRODUCT world wide," where "product" is defined as "each image, character,

8   logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been

9   manufactured, marketed or sold by MGA or others under license." Mattel's Opposition at 9.

10         Mattel also contends that request nos. 99 and 101 are overbroad and amount to an

11  improper fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or

12  any other MGA product, whether or not they have anything to do with anything placed at issue by

13  MGA. Mattel's Opposition at 7-8. Mattel also contends that the requests have no linkage to any

14  possible consumer confusion between Bratz and My Scene or between the other products

15  mentioned in MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at

16  8.

17         Request nos. 59, 60, 62, and 63 seek information relevant to MGA's allegations, including

18  among others, that Mattel "warned a number of companies, including the biggest publishing

19  entity in the United Kingdom, not to license MGA products, or risk retribution," and that Mattel

20  "terminated one of its licensees, apparently in retribution for licensing Bratz." MGA's Complaint

21  at ¶76. They are also reasonably tailored to require production of only those documents and

22  communications that refer or relate to interference with or inhibition of the licensing or potential

23  licensing of MGA's products, that refer or relate to any limitations or restrictions on any MGA

24  licensee, and that refer or relate to any third party's licensing or potential licensing of MGA

25  products. Mattel has not established that searching for theses types of responsive documents is

26  unduly burdensome. Therefore, MGA's motion is granted as to request nos. 59, 60, 62 and 63.

27

28

EXHIBIT _____ 7

PAGE _____ 67

20

1        In contrast, however, request nos. 99 and 101 are overbroad, requiring Mattel to search for

2  and produce all documents referring or relating to communications between Mattel and any MGA

3  licensee or distributor that refer or relate to MGA, Bratz, this lawsuit, other litigation involving

4  the parties or their employees, claims by MGA against Mattel or claims by Mattel against MGA

5  or its employees. For example, the requests would potentially require production of documents

6  that merely mentioned MGA and Bratz but that otherwise have no relevance to the claims and

7  defenses in the suit. Therefore, MGA's motion is denied as to request nos. 99 and 101.

8                     9. Document Request Nos. 64, 65, 66, 67

9        This category of requests requires production of all documents relating to (a) any third

10  party's agreement or decision not to license, manufacture, promote, distribute or sell MGA

11  products or supply materials or services to MGA, or to limit, restrict, curtail or reduce such

12  activities (request nos. 64-65); and (b) any interference with or inhibition of the supply of goods

13  or services to MGA, or of MGA's distribution of its products (request nos. 66-67). MGA

14  contends that these documents are relevant to its claims that Mattel interfered with MGA's

15  business dealings with distributors, retailers, and other third parties, as alleged in paragraphs 76-

16  79 of its complaint.

17        Mattel contends that these requests are overbroad, seeking all documents that might bear

18  on MGA's business without identifying any particular business dealings. Mattel also contends

19  that they are overbroad insofar as they require production of all documents related to "any MGA

20  PRODUCT world wide," where "product" is defined as "each image, character, logo, doll, toy,

21  accessory, product, packaging or other thing or matter that is or has ever been manufactured,

22  marketed or sold by MGA or others under license." Mattel's Opposition at 9.

23        These requests seek information relevant to MGA's allegation that Mattel interfered with

24  its business dealings. In particular, MGA has alleged that Mattel "warned a number of

25  companies, including the biggest publishing entity in the United Kingdom, not to license MGA

26  products, or risk retribution," and that Mattel "terminated one of its licensees, apparently in

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT _____7_____

PAGE _____88_____

21

1   retribution for licensing Bratz." MGA's Complaint at ¶76. MGA's requests are reasonably

2   calculated to lead to information relevant to this allegation. Although the definition of product is

3   broad, the definition does not render the requests overbroad because they are otherwise limited in

4   subject matter. Further Mattel has failed to establish that it is unduly burdensome to search for

5   and produce documents responsive to this category of requests. Therefore, MGA's motion is

6   granted as to request nos. 64, 65, 66, and 67.

7                          10. Document Request Nos. 102-104

8          This category of requests requires production of Mattel's communications with three

9   companies referring to MGA, Bratz or Larian. MGA contends that these documents are relevant

10  to its claims that Mattel interfered with its business dealings with third parties.

11         Mattel now represents that it will produce communications with Nickelodeon that bear on

12  MGA's allegation regarding sponsorship of the 2005 Kids Choice Awards. Mattel contends,

13  however, that communications with Cartoon Network or 4kids Entertainment are not relevant to

14  any claim or defense in suit.

15         Mattel's communications with Nickelodeon regarding MGA, Bratz or Larian are relevant

16  in light of MGA's allegation that Mattel was "instrumental in attempting to keep MGA from

17  participating as a sponsor in the 'Kids' Choice Awards.'" Id. at ¶97. Therefore, MGA's motion

18  is granted as to request nos. 102. In contrast, MGA has failed to establish that similar

19  communications with Cartoon Network and 4kids Entertainment are relevant to a claim or

20  defense in suit. Therefore, MGA's motion is denied as to request nos. 103 and 104.

21  //

22  //

23  //

24

25

26

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____7_____

PAGE _____69_____                    22

1                V. CONCLUSION

2        For the reasons set forth above, MGA's motion to compel is granted in part as to

3 document request nos. 32 ( as modified), 33 (as modified), 61 (as modified), 37, 39, 47 (as

4 modified) , 59, 60, 62, 63, 64, 65, 66, 67, and 102, and denied in part as to document request nos.

5 38, 43, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 99, 101, 103 and 104.  MGA's request for

6 sanctions is denied.  Mattel shall produce responsive documents as set forth above no later than

7 June 15, 2007.

8        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

9 Master, MGA shall file this Order with the Clerk of Court forthwith.

10

11 Dated: May 22, 2007

12                           HON. EDWARD A. INFANTE (Ret.)

                                  Discovery Master

EXHIBIT    1

PAGE    90