EXHIBIT 10

FILED

2006 JUL 18 AM 10: 16

# ENTERED

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

JUL 18 2006

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

    Plaintiff,

v.

MATTEL, INC.,

    Defendant,

and related actions.

)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 04-09049 SGL (RNBx)

(Consolidated with cases CV 04-09059
and CV 05-02727)

ORDER GRANTING MOTIONS TO
DISMISS

## I. Introduction

This consolidated action involves the individual cases of Bryant v. Mattel, Inc., CV 04-09049; Mattel, Inc. v. Bryant, CV 04-09059; and MGA Entertainment, Inc. v. Mattel, Inc., CV 05-02727. This Order rules on Motions to Dismiss previously docketed in cases 04-09049 and 04-9059.

The factual background underlying this consolidated action is complex. The Court sets forth the factual background only to the extent that it is necessary to discuss its ruling on two pending motions to dismiss. A hearing regarding these motions was held on June 26, 2006. For the reasons and in the manner set forth below, the Court grants both motions.

EXHIBIT ____ 10 ____

PAGE ____ 210 ____

DOCKETED ON CM

JUL 18 2006

045

Case 2:04-cv-09049-DOC-RNB  Document 1536-5  Filed 01/15/08  Page 3 of 21  Page ID
#:17898
Case 2:04-cv-09049-GL-RNB  Document 63  Filed 07/1(  )006  Page 2 of 18

## II. Motion to Dismiss (04-09049)

### A.  Factual Background

Carter Bryant is a designer to whom creation of MGA's "Bratz" line of dolls has been attributed. Compl. ¶ 6. Mattel has sued him under a variety of state-law theories relating to certain agreements Bryant signed while an employee with Mattel. See generally Compl. filed in 04-09059. Although Mattel has not sued him for copyright infringement of any Mattel product, Bryant nevertheless claims that he is reasonably apprehensive regarding being sued for copyright infringement. Specifically, Bryant makes the following allegations in his complaint seeking declaratory relief:

First, Bryant claims that an article published in the Wall Street Journal in July, 2003, attributed to Mattel sources a belief that "the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998." Compl. Ex. A; Compl. ¶ 54. The scrapped Mattel project is alleged to be the project referred to by Mattel as "Toon Teens." Compl. ¶ 56.

Second, Bryant alleges that he suggested, as a way to resolve a discovery dispute, that Mattel stipulate that it would not sue based on "Toon Teens." Compl. ¶ 55. Mattel refused to do so. Id. However, since that initial refusal, Mattel has represented to the Court that it "will not maintain that Bratz infringes the copyright in Toon Teens." June 26, 2006, Tr. at 64 (statement of Mattel counsel John B. Quinn). Mattel has reiterated this position in a post-hearing brief, filed on July 5, 2006.

Third, Mattel cooperated with a Hong Kong toy company that MGA sued for copyright infringement. Compl. ¶ 56. MGA's claims involved the Bratz dolls. Id. Mattel's cooperation consisted of providing the Hong Kong toy company with documents and photographs of the Toon Teens products, ostensibly to help prove that Bratz was not an original design and that Bryant had copied and infringed Toon Teens. Compl. ¶ 57.

Finally, Bryant notes that Mattel did not seek copyright registration until November, 2003, which is the same time Mattel claims it first learned of Bryant's

EXHIBIT _____ /O

2        PAGE _____ ᾱ/7

Case 2:04-cv-09049-DOC-RNB   Document 1536-5   Filed 01/15/08   Page 4 of 21   Page ID
Case 2:04-cv-09049-GL-RNB   Document 83   Filed 07/1  2006   Page 3 of 18
#:17899

1  contract with MGA.  Compl. ¶¶ 59-60.  Bryant alleges that registration of a copyright is

2  a necessary step to be taken prior to filing a copyright infringement action.  Compl.

3  ¶ 60.

4  **B.   Standing to Seek Declaratory Relief**

5       The purpose of the Declaratory Judgment Act is "to relieve potential defendants

6  from the Damoclean threat of impending litigation which a harassing adversary might

7  brandish, while initiating suit at his leisure — or never."  Societe de Conditionnement

8  v. Hunter Engineering Co., 655 F.2d 938, 943 (9th Cir.1981).  However, a party

9  seeking declaratory relief must still satisfy the "case or controversy" requirement found

10  in 28 U.S.C. § 2201(a).  Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896

11  F.2d 1542,1555 (9th Cir. 1990).  This requirement must be satisfied at the time the

12  suit is filed and must continue throughout the term of the suit.  Id. at 1556 (citing

13  International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir.1980)).

14       To meet this requirement, a party seeking declaratory relief must show that,

15  based on his reasonable perceptions, under all the circumstances of the case, there is

16  a substantial controversy between parties having adverse legal interests that causes

17  in the plaintiff a real and reasonable apprehension that he will be subject to liability,

18  and the controversy is of sufficient immediacy and reality to warrant declaratory relief.

19  Hal Roach, 896 F.2d at 1555.  The apprehension must have been caused by the

20  defendant's actions.  Id. (citing International Harvester, 623 F.2d at 1211).

21       Viewing Bryant's allegations in light of this standard, and in light of recent

22  developments, the Court must conclude that Bryant, although having a reasonable

23  apprehension of suit prior to counsel's representations regarding the intent to sue

24  based on Toon Teens, no longer has a reasonable apprehension that he will be

25  subject to liability.  Bryant's Complaint, of course, makes reference to "other Mattel

26  products;" however, the substance of his allegations all address the product "Toon

27  Teens."  The Wall Street Journal article is alleged to have involved Toon Teens.

28  Mattel's cooperation with the Hong Kong toy company allegedly involved Toon Teens.

EXHIBIT _____ _10_

3

PAGE _____ _218_

Case 2:04-cv-09049-DOC-RNB  Document 1536-5  Filed 01/15/08  Page 5 of 21  Page ID
#:17900
Case 2:04-cv-09049  BL-RNB  Document 63  Filed 07/1  2006  Page 4 of 18

1  The copyright registration referenced in the Complaint relates to Toon Teens. No

2  other allegations are made that might tend to raise a real and reasonable

3  apprehension that Bryant could be subject to liability for copyright infringement based

4  on any other Mattel product. Accordingly, Bryant has not met the standard for

5  asserting a claim for declaratory relief.

6  **C.    Ruling on Motion to Dismiss**

7       Accordingly, the Court **GRANTS** the Motion to Dismiss and dismisses without

8  prejudice Bryant's claim for declaratory relief. Should Bryant, through discovery or

9  otherwise, acquire a real and reasonable apprehension of being subject to liability on

10  the basis of another identifiable Mattel product, Bryant may file a declaratory relief

11  claim. A claim by Mattel of copyright infringement based on the Toon Teens product

12  is barred by counsel's representation; therefore, Bryant may not seek declaratory relief

13  regarding this issue.

14  **III. Motion to Dismiss (04-9059)**

15  **A.    Factual Background**

16       The parties make the following factual allegations and assert the following

17  claims and counterclaims.

18       Bryant was employed by Mattel from September, 1995, to April, 1998, and

19  again beginning in January, 1999, and ending in October, 2000. Compl. ¶ 9. In

20  January, 1999, Bryant signed documents entitled "Employee Confidential Information

21  and Inventions Agreement" ("Employee Agreement") and "Conflict of Interest

22  Questionnaire" ("COI Questionnaire"). The Employee Agreement provides:

23       This Agreement is designed to make clear that: (I) I will maintain the

24       confidentiality of the Company's trade secrets; (ii) I will use those trade

25       secrets for the exclusive benefit of the Company; (iii) inventions that I

26       create will be owned by the Company; (iv) my prior and continuing

27       activities separate from the Company will not conflict with the Company's

28       development of its proprietary rights; and (v) when and if my employment

EXHIBIT _____ 10

4

PAGE _____ 219

Case 2:04-cv-09049-DOC-RNB   Document 1536-5   Filed 01/15/08   Page 6 of 21   Page ID
#:17901
Case 2:04-cv-09049-GL-RNB   Document 63   Filed 07/1 2006   Page 5 of 18

1   with the Company terminates I will not use my prior position with the

2   Company to the detriment of the Company.

3       1.     Provisions Related to Trade Secrets

4       . . . .

5       (b) As used in the Agreement, "Proprietary Information" means

6   any information (including formula, pattern, compilation, device, method,

7   technique or process) that derives independent economic value, actual

8   or potential, from not being generally known to the public or to other

9   persons who can obtain economic value from its disclosure or use, and

10   includes information on the Company, its customers, suppliers, joint

11   ventures, licensors, licensees, distributors and other persons and entities

12   with whom the Company does Business.

13       (c) I will not disclose or use at any time either during or after my

14   employment with the Company, any Proprietary Information except for

15   the exclusive benefit of the Company as required by my duties for the

16   Company, or as the Company expressly may consent to in writing, I will

17   cooperate with the Company and use my best efforts to prevent the

18   unauthorized disclosure, use or reproduction of all Proprietary

19   Information.

20       . . . .

21       2.     Ownership of Inventions

22       (a) I agree to communicate to the Company as promptly and fully

23   as practicable all inventions [as defined below] conceived or reduced to

24   practice to me (alone or jointly by others) at any time during my

25   employment by the Company, I hereby assign to the Company and/or its

26   nominees all my right, title and interest in such inventions, and all my

27   right, title and interest in any patents, copyrights, patent applications or

28   copyright applications based thereon. . . .

EXHIBIT _____ /0

5   PAGE_____ 220

Case 2:04-cv-09049-DOC-RNB  Document 1536-5  Filed 01/15/08  Page 7 of 21  Page ID
#:17902
Case 2:04-cv-09049-GL-RNB  Document 63  Filed 07/1.  2006  Page 6 of 18

1     (b) As used in this Agreement, the term "Inventions" includes, but

2   is not limited to, all discoveries, improvements, processes,

3   developments, designs, know-how, data computer programs and

4   formulae, whether patentable or unpatentable.

5     (c) Any provision in this Agreement requiring me to assign my

6   rights in any invention does not apply to an invention which qualifies

7   under the provision of Section 2870 of the California Labor Code.  That

8   section provides that the requirement to assign "shall not apply to an

9   invention that the employee developed entirely on his or her own time

10  without using the employer's equipment, supplies, facilities or trade

11  secret information except for those inventions that either (1) relate at the

12  time of conception or reduction to practice of the invention to the

13  employer's business, or actual or demonstrably anticipated research or

14  development of the employer; or (2) result from any work performed by

15  the employee for the employer."  I understand that I bear the burden of

16  proving that an invention qualifies under Section 2870.

17         . . . .

18    3.  Conflicts with Other Activities

19     (a) My employment with the Company requires my undivided

20  attention and effort.  Therefore, during my employment with the

21  Company, I will fully comply with the Company's Conflict of Interest

22  Policy, as it may be amended from time to time.  I shall not, without the

23  Company's express written consent, engage in any employment or

24  business other than for the Company, or invest in or assist (in any

25  manner) any business competitive with the business or future business

26  plans of the Company.

27    4.  Miscellaneous

28         . . . .

EXHIBIT _____ /0

6

PAGE _____ 22/

Case 2:04-cv-09049-DOC-RNB   Document 1536-5   Filed 01/15/08   Page 8 of 21   Page ID
#:17903
Case 2:04-cv-09049-GL-RNB   Document 63   Filed 07/1.. 2006   Page 7 of 18

1            (f) This agreement will be governed by and interpreted in

2     accordance with the laws of the State of California.

3           . . . .

4          CAUTION: THIS AGREEMENT CREATES IMPORTANT

5     OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS

6     TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER

7     EMPLOYMENT.

8   Employment Agreement, attached to the Compl. as Ex. A.[1]

9   **B.   The Parties' Claims**

10      Mattel brings a number of claims based on these documents, including breach

11  of contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment,

12  and conversion.

13      Bryant brings a number of counterclaims based on these documents.

14  Specifically, Bryant makes the following challenges to the Employment Agreement:

15      In his first counterclaim, Bryant claims that the Employment Agreement violates

16  Cal. Bus. & Prof. Code §§ 17200 (unfair competition law) because (a) it is an unfair

17  restraint of trade (restricting job mobility and use of publicly available information) in

18  violation of Cal. Bus. & Prof. Code § 16600; (b) it violates Cal. Labor Code §§ 96(k),

19  98.6, and 2699; (c) it violates Cal. Labor Code § 2870; and (d) it is procedurally and

20  substantively unconscionable. See Bryant's Counterclaims ¶¶ 33-47.

21      In his second counterclaim, Bryant claims that the Employment Agreement

22  should be rescinded because it was procured due to mistake, duress, menace and/or

23

24        [1] Bryant objects to the Court's consideration of the Agreement and the COI

25  Questionnaire. Bryant purports to dispute the authenticity of these documents.

26  However, examining the substance of Bryant's objections, it becomes clear that Bryant
objects not to the content of these documents, but to the validity and legal effect of

27  these documents. Accordingly, the Court's consideration of these documents in
connection with the present Motion to Dismiss is proper. See Parrino v. FHP, Inc., 146

28  F.3d 699, 706 (9th Cir. 1998) (the Court may consider documents whose authenticity is
not questioned and upon which the complaint necessarily relies).

**EXHIBIT** _10_

7

Case 2:04-cv-09049-DOC-RNB   Document 1536-5   Filed 01/15/08   Page 9 of 21   Page ID
#:17904
Case 2:04-cv-09049-BL-RNB   Document 63   Filed 07/1\_2006   Page 8 of 18

1   fraud. See Bryant's Counterclaims ¶¶ 48-54.

2   In his third counterclaim, Bryant alleges that the Employment Agreement was

3   procured by fraud in that Mattel "fail[ed] to disclose to Bryant the true meaning of the

4   terms and the purported legal effect of the [Employment] Agreement." See Bryant's

5   Counterclaims ¶¶ 55-60.

6   Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that

7   Mattel's conduct in requiring Bryant and other employees to execute the Employment

8   Agreement constitutes unfair competition and unfair business practices in violation of

9   Cal. Bus. & Prof. Code §§ 17200 and 16600. Bryant also seeks a declaration that the

10   Employment Agreement is unlawful and unenforceable as to him and as to other

11   current and former employees of Mattel. See Bryant's Counterclaims ¶¶ 61-65.

12   **C.   Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

13   The present Motion to Dismiss requires the Court to determine whether the

14   counterclaims state any claim upon which relief may be granted. See Fed R. Civ. P.

15   12(b)(6). The Court will not dismiss the claims for relief unless Bryant cannot prove

16   any set of facts in support of the claims that would entitle him to relief. See Steckman

17   v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998). In limiting its inquiry to the

18   content of the counterclaims, the Court must take the allegations of material fact as

19   true and construe them in the light most favorable to Bryant. See Western Reserve

20   Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985). Additionally, the Court "is

21   not required to accept legal conclusions cast in the form of factual allegations if those

22   conclusions cannot be reasonably drawn from the facts alleged." Clegg v. Cult

23   Awareness Network, 18 F.3d 752, 755 (9th Cir. 1994).

24   **D.   § 17200 Claim**

25   **1.   Generally**

26   "California's unfair competition law (UCL) (17200 et seq.) defines 'unfair

27   competition' to mean and include any unlawful, unfair or fraudulent business act or

28   practice. . . ." Kasky v. Nike, Inc., 27 Cal.4th 939, 949, 119 Cal.Rptr.2d 296 (2002)

EXHIBIT _____ 10

8

PAGE _____ 233

1 (internal quotation marks and citation omitted). Because "section 17200 is written in

2 the disjunctive, it establishes three varieties of unfair competition--acts or practices

3 which are unlawful, unfair, or fraudulent." Cel-Tech Communications v. Los Angeles

4 Cellular Telephone Co., 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548 (1999) (emphasis

5 added). "Unlawful" practices are those practices that are prohibited by law, whether

6 "civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."

7 Saunders v. Superior Court, 27 Cal.App.4th 832, 839 (citing People v. McKale, 25

8 Cal.3d 626, 632 (1979)). The prohibition against "unfair" conduct is not as broad as it

9 would seem. In Cel-Tech, the California Supreme Court announced that the test of

10 "unfairness" for commercial cases: "Unfair" means "conduct that threatens an

11 incipient violation of an antitrust law, or violates the policy or spirit of one of those laws

12 because its effects are comparable to or the same as a violation of the law, or

13 otherwise significantly threatens or harms competition." Cel-Tech, 20 Cal.4th at 187.

14     **2.**    **Standing**

15     Bryant claims to be bringing the § 17200 "on his own behalf, on behalf of all

16 current and former employees of Mattel employees . . . and on behalf of the general

17 public." See Counterclaims ¶ 10. The parties disagree as to whether he may bring

18 such a claim on behalf of anyone other than himself and argue this point on state-law

19 grounds. However, it is clear under established Ninth Circuit authority that Bryant's

20 purported claims on behalf of others suffer from a federal constitutional deficiency:

21 Bryant must satisfy the case-or-controversy requirement of Article III for any claim that

22 he brings under § 17200. Bryant has not alleged facts that establish that he has

23 standing to bring his claims on behalf of anyone other than himself.[2] See Lee v.

24 American Nat. Ins. Co., 260 F.3d 997, 1001 (9th Cir. 2001) (rejecting, on

25 constitutional grounds, a plaintiff's attempt to assert a § 17200 claim on behalf of

26 others noting that "Article III of the Constitution . . . limits the jurisdiction of the federal

27

28
_____

[2] As stated below, Bryant has failed to state a claim on his own behalf as well.

EXHIBIT _____ /0

PAGE _____ 224

Case 2:04-cv-09049-DOC-RNB   Document 1536-5   Filed 01/15/08   Page 11 of 21   Page ID –
#:17906
Case 2:04-cv-09049-SL-RNB   Document 63   Filed 07/1( )006   Page 10 of 18

1    courts to 'cases and controversies,' a restriction that has been held to require a

2    plaintiff to show, *inter alia*, that he has actually been injured by the defendant's

3    challenged conduct.") (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,

4    528 U.S. 167, 180, 120 S.Ct. 693 (2000)).

5         Absent class-action type allegations (and a successful motion to certify a class

6    pursuant to Fed. R. Civ. P. 23), it appears to the Court that Bryant cannot assert

7    claims challenging the Employee Agreement or the COI Questionnaire on behalf of

8    anyone other than himself. Therefore, the Court considers only whether Bryant has

9    stated a claim pursuant to § 17200 on his own behalf.

10        **3.   Cal. Bus. & Prof. Code § 16600**

11        Bryant argues that the Agreement is "unlawful" because it violates Cal. Bus. &

12   Prof. Code § 16600, which provides: "Except as provided in this chapter, every

13   contract by which anyone is restrained from engaging in a lawful profession, trade, or

14   business of any kind is to that extent void." Id. Specifically, Bryant argues (without

15   further elaboration) that "the [Employment] Agreement unlawfully impair[s] Bryant's

16   right to prepare to compete with Mattel." Opp. at 7.

17        California law permits an employee to seek other employment and even to

18   make some "preparations to compete" before resigning. See Bancroft-Whitney Co. v.

19   Glen, 64 Cal.2d 327, 346 (1966) ("The mere fact that the officer makes preparations

20   to compete before he resigns his office is not sufficient to constitute a breach of duty.

21   It is the nature of his preparations which is significant.") However, "an employee may

22   not transfer his loyalty to a competitor." Stokes v. Dole Nut Co., 41 Cal.App.4th 285,

23   295 (1995). "During the term of employment, an employer is entitled to its employees'

24   undivided loyalty." Id. (internal citations and quotation marks omitted).

25        Mattel alleges in the Complaint that Bryant entered into an agreement with

26   MGA to provide MGA design services on a "top priority" basis while he was still

27   employed with by Mattel. Compl. ¶ 13. Bryant also makes similar allegations in the

28   related case, Bryant v. Mattel, Inc., 04-09049: "MGA ultimately offered Bryant a

EXHIBIT _____ *10*

10

PAGE _____ *225*

Case 2:04-cv-09049-DOC-RNB   Document 1536-5   Filed 01/15/08   Page 12 of 21   Page ID
#:17907
Case 2:04-cv-09049-JL-RNB   Document 63   Filed 07/11/2006   Page 11 of 18

1  consulting arrangement. His agreement with MGA was signed on or about October 4,

2  2000. Bryant resigned from Mattel immediately, giving two weeks notice, but stayed at

3  the company until October 20 to finish up and transition the projects on which he had

4  been working." Compl. ¶ 38.

5      The parties' arguments assume that the Employment Agreement would prohibit

6  such conduct;[3] therefore, the Court considers whether an agreement prohibiting an

7  employee from entering into a contract with a competitor *during the course of his*

8  *employment* constitutes an unfair restraint of trade in violation of § 16600. The Court

9  concludes that it does not. Such an agreement is more akin to ensuring the employer

10  has the "employee's undivided loyalty" than it is to an agreement that restricts an

11  employee from "prepar[ing] to compete." For this reason, Plaintiff cannot state a

12  § 17200 claim on this basis.

13      **4.**    **Cal. Labor Code §§ 96(k), 98.6 and 2699**

14      Bryant also argues that the Agreement is "unlawful" because it violates a

15  number of provisions of the California Labor Code. Specifically, Bryant alleges that

16  the Agreement is "unlawful" because it violates § 96(k), which provides:

17      The Labor Commissioner and his or her deputies and

18      representatives authorized by him or her in writing shall, upon the filing

19      of a claim therefor by an employee, or an employee representative

20      authorized in writing by an employee, with the Labor Commissioner, take

21      assignments of: . . . (k) Claims for loss of wages as the result of

22      demotion, suspension, or discharge from employment for lawful conduct

23      occurring during nonworking hours away from the employer's premises.

24  Cal. Labor Code § 96(k).

25      Section 98.6 prohibits discrimination or retaliation against an employee who

26  engages in conduct described in §96(k). Section 2699 authorizes a private right of

27

28      [3] The Court does not mean to imply that Bryant has conceded this point.

11

EXHIBIT _____ /0

PAGE _____ 226

Case 2:04-cv-09049-DOC-RNB   Document 1536-5   Filed 01/15/08   Page 13 of 21   Page ID...
#:17908
Case 2:04-cv-09049-JL-RNB   Document 63   Filed 07/1L 006   Page 12 of 18

1   action for certain violations of the Labor Code.

2       Assuming that § 96(k) would otherwise support a § 17200 claim, Bryant has still

3   failed to allege any "loss of wages" or "demotion, suspension or discharge" based on

4   lawful off-duty conduct. Therefore, Bryant has not alleged facts sufficient to support a

5   violation of § 96(k) that would, in turn, support his § 17200 claim.

6       Despite Mattel's arguments against § 98.6 and § 2699 as a proper basis for

7   Bryant's § 17200 claim, Bryant did not defend such claims in his opposition; therefore,

8   the Court treats these claims as abandoned.

9       **5.    Cal. Labor Code § 2870**

10      Bryant also argues that the Agreement is "unlawful" because it violates Cal.

11  Labor Code § 2870. That provision states:

12          (a) Any provision in an employment agreement which provides

13      that an employee shall assign, or offer to assign, any of his or her rights

14      in an invention to his or her employer shall not apply to an invention that

15      the employee developed entirely on his or her own time without using the

16      employer's equipment, supplies, facilities, or trade secret information

17      except for those inventions that either:

18          (1) Relate at the time of conception or reduction to practice of the

19      invention to the employer's business, or actual or demonstrably

20      anticipated research or development of the employer; or

21          (2) Result from any work performed by the employee for the

22      employer.

23          (b) To the extent a provision in an employment agreement

24      purports to require an employee to assign an invention otherwise

25      excluded from being required to be assigned under subdivision (a), the

26      provision is against the public policy of this state and is unenforceable.

27  Cal. Labor Code § 2870.

28      The Employment Agreement assigns the rights to certain inventions by the

EXHIBIT _____ /O

12

PAGE _____ 22#

Case 2:04-cv-09049-DOC-RNB  Document 1536-5  Filed 01/15/08  Page 14 of 21  Page ID
#:17909
Case 2:04-cv-09049-JL-RNB    Document 63    Filed 07/11/006    Page 13 of 18

1   employee to the Company.  The Agreement limits the scope of this assignment to the

2   extent required by § 2870 by specifically incorporating and quoting § 2870.  The

3   Agreement also informs the employee that he bears the burden of proving that the

4   invention falls within the scope of § 2870.  This is consistent with California law.  See

5   Cal. Labor Code § 2872 ("In any suit or action arising thereunder, the burden of proof

6   shall be on the employee claiming the benefits of its provisions.").

7           Therefore, Bryant cannot maintain a § 17200 claim based on § 2870.

8           **6.    Unconscionability**

9           Unconscionability has both procedural and substantive elements.  Armendariz

10  v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 99 (2000).  Both must

11  be present for a court to invalidate a contract or one of the contract's provisions.  Id. at

12  114.  However, "[t]he more substantively oppressive the contract term, the less

13  evidence of procedural unconscionability is required to come to the conclusion that the

14  term is unenforceable, and vice versa."  Id.

15          Procedural unconscionability focuses on the elements of oppression and

16  surprise.  Discover Bank v. Superior Court, 36 Cal.4th 148, 160 (2005).  "Oppression

17  arises from an inequality of bargaining power which results in no real negotiation and

18  an absence of meaningful choice . . . . Surprise involves the extent to which the terms

19  of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior

20  bargaining position."  Crippen v. Central Valley RV Outlet, 124 Cal.App.4th 1159, 1165

21  (2004).

22          Substantive unconscionability focuses on the actual terms of the agreement

23  and evaluates whether they create "overly harsh" or "one-sided results."  Armendariz,

24  24 Cal.4th at 114.  To be substantively unconscionable, a contractual provision must

25  shock the conscience.  California Grocers Assn. v. Bank of America, 22 Cal.App.4th

26  205, 214 (1994).

27          Here, Bryant alleges that the Employee Agreement is a contract of adhesion.

28  Counterclaims ¶ 26.  For purposes of the present analysis, the Court assumes that the

EXHIBIT _____

13    PAGE _____  228

Case 2:04-cv-09049-DOC-RNB   Document 1536-5   Filed 01/15/08   Page 15 of 21   Page ID
#:17910
Case 2:04-cv-09049-JL-RNB   Document 63   Filed 07/1_006   Page 14 of 18

1   Employment Agreement is procedurally unconscionable. See Discover Bank v.

2   Superior Court, 36 Cal.4th 148, 160 (2005) ("The procedural element of an

3   unconscionable contract generally takes the form of a contract of adhesion, which,

4   imposed and drafted by the party of superior bargaining strength, relegates to the

5   subscribing party only the opportunity to adhere to the contract or reject it.") (internal

6   quotation marks and citation omitted). However, upon examination of the terms of the

7   Employment Agreement, the Court is unable to conclude that the element of

8   substantive unconscionability has been met. It is not surprising or overly harsh that

9   Mattel would expect its trade secrets and proprietary information to be kept

10  confidential; the same is true regarding Mattel's expectation that the works of its

11  design staff — created by Mattel's employees, using Mattel's resources, during time

12  for which Mattel paid the employee — be considered its property. Therefore, Bryant

13  cannot state a claim based on unconscionability.

14       **7.    Cal. Labor Code §§ 232 and 232.5**

15       Although not pleaded in the Counterclaims, Bryant argues that his § 17200

16  claim is supported by an alleged violation of §§ 232 and 232.5. These provisions

17  prohibit limitations on an employee's ability to disclose the amount of his or her wages

18  or information about his or her working conditions. Bryant's arguments fail to address

19  how the Employment Agreement (which prohibits the disclosure of "trade secrets" and

20  "proprietary information") prevented him from disclosing the amount of his wages or

21  information about his working conditions. Bryant has failed to state a § 17200 claim

22  based on §§ 232 and 232.5.

23       **8.    Unfairness**

24       As noted above, there is only a limited basis on which a plaintiff may challenge

25  conduct as an "unfair" business practice. See Cel-Tech Communications, 20 Cal.4th

26  at 187 ("unfair" conduct that may be challenged pursuant to § 17200 is conduct that is,

27  or is similar to, conduct that constitutes a violation of antitrust laws). Bryant's

28  allegations do not state a claim for an "unfair" business practice in violation of

EXHIBIT _____ /O

14

PAGE _____ 229

1    § 17200.

2        **9.    "Fraudulent" Conduct**

3        Bryant also argues that the same conduct complained of in connection with his

4    fraud claim also supports a § 17200 claim based on the prohibition against

5    "fraudulent" conduct. This claim is not cognizable. Bryant's fraud claim, explored

6    more fully in the following section, is based upon Mattel's alleged failure to explain to

7    him the terms of the Employment Agreement. However, to allege a "fraudulent

8    business practice" under § 17200, a plaintiff must allege that "members of the public

9    are likely to be deceived." Comm. on Children's Television, Inc. v. Gen. Foods Corp.,

10   35 Cal.3d 197, 211 (1983). Bryant has not alleged facts that would tend to establish

11   that the public might be deceived by Mattel's conduct regarding its employment

12   practices.

13   **E.    Fraud Claim**

14       The parties agree that Bryant's fraud claim is one for fraudulent concealment,

15   and that Bryant must allege all the elements set forth in Marketing West, Inc. v. Sanyo

16   Fisher Corp., 6 Cal.App.4th 603, 612-13 (1992): (1) Mattel must have concealed or

17   suppressed a material fact; (2) Mattel must have been under a duty to disclose the

18   fact to Bryant; (3) Mattel must have intentionally concealed or suppressed the fact with

19   the intent to defraud Bryant; (4) Bryant must have been unaware of the fact and would

20   not have acted as he did if he had known of the concealed or suppressed fact; and (5)

21   as a result of the concealment or suppression of the fact, Bryant must have sustained

22   damage. Bryant alleges that "Mattel required [him] to execute the [Employment]

23   Agreement without disclosing to him its true import and terms." Counterclaims ¶ 56.

24   Bryant's claim is, in essence, that Mattel failed to inform him of the potential legal

25   effect the Agreement might have; in other words, Bryant claims that Mattel failed to

26   fully explain the Agreement to him. This does not support a fraudulent concealment

27   claim.

28       Bryant argues, based on Marketing West, that because Mattel chose to

EXHIBIT _____ 10

PAGE _____ 230

Case 2:04-cv-09049-DOC-RNB Document 1536-5 Filed 01/15/08 Page 17 of 21 Page ID..

Case 2:04-cv-09049-DOC-RNB Document 63 #:17912 Filed 07/1?006 Page 16 of 18

1 respond to his inquiries, Mattel was under a duty to disclose material facts. Under

2 Marketing West, where a party is "under no duty to speak" but nevertheless

3 "undertakes to do so, either voluntarily or in response to inquiries, he is bound not only

4 to state truly what he tells but also not to suppress or conceal any facts within his

5 knowledge which materially qualify those stated." Marketing West, 6 Cal.App.4th at

6 613 (citing Rogers v. Warden, 20 Cal.2d 286, 289 (1942)) (internal quotation marks

7 omitted). In other words, one who speaks "must make a full and fair disclosure." Id.

8 Bryant makes no allegations that suggest that anyone at Mattel falls into this

9 category. He alleges that he was "presented with the form Agreement by Mattel," and

10 that "he was told that his execution of the Agreement was a condition of his

11 employment." Counterclaims ¶ 26. He then alleges that "[t]he terms of the Agreement

12 were not explained to him." Id. This is not the situation discussed in Marketing West

13 which, not surprisingly, prohibits a party from disclosing only that part of the truth that

14 favors it. Here, Bryant's allegations complain that Mattel did not disclose anything

15 regarding the Employment Agreement.

16 **F.  Rescission**

17 Bryant asserts that rescission is proper because (1) the Agreement was

18 obtained through fraud; (2) Mattel required Bryant to execute the document as a

19 condition of employment, which resulted in duress; and (3) Mattel did not explain the

20 terms of the Agreement to Bryant, did not give him sufficient time to review it, and did

21 not permit or encourage him to seek legal counsel regarding the Agreement.

22 Bryant failed to state a fraud claim; therefore, rescission based on his fraud

23 claim would be improper.

24 Bryant's allegations do not meet the standard for duress, and Mattel's failure to

25 encourage him to seek legal counsel also does not require rescission of the

26 Employment Agreement. See Robison v. City of Manteca, 78 Cal.App.4th 452, 457

27 (2000). Additionally, although Bryant argues that he was not "given a meaningful

28 opportunity to review the Agreement at the time he executed it," he does not allege

EXHIBIT _____ /0

16

PAGE _____ 23/

1  that he asked for, and was refused, sufficient time to actually read the Agreement with

2  which he was presented.

3  **G.  Declaratory Relief**

4  Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that

5  Mattel's conduct in requiring Bryant and other employees to execute the Employment

6  Agreement constitutes unfair competition and unfair business practices in violation of

7  Cal. Bus. & Prof. Code §§ 17200 and 16600. This claim for declaratory relief fails

8  because the underlying § 17200 fails.

9  Bryant also seeks a declaration that the Employment Agreement is unlawful

10  and unenforceable as to him and as to other current and former employees of Mattel.

11  See Bryant's Counterclaims ¶¶ 61-65. As discussed previously, Bryant has no

12  standing to assert claims on behalf of anyone other than himself. As discussed

13  throughout this Order, Bryant has not sufficiently alleged that the Employment

14  Agreement is unlawful or unenforceable as to him.

15  **H.  Ruling on Motion to Dismiss (04-09059)**

16  The Motion to Dismiss is **GRANTED** in its entirety. Bryant requested in his

17  Opposition for an opportunity to amend his counterclaims. Therefore, the Court

18  dismisses Bryant's counterclaims without prejudice. Bryant may file Amended

19  Counterclaims that conform with this Order within ten days of the entry of this Order.

20  **IV. Conclusion**

21  For the reasons set forth above, the Court **GRANTS** the Motion to Dismiss in

22  04-09049 and **DISMISSES WITHOUT PREJUDICE** Bryant's action for declaratory

23  relief. The Court also **GRANTS** the Motion to Dismiss in 04-09059, and **DISMISSES**

24  **WITHOUT PREJUDICE** Bryant's counterclaims. Bryant is granted ten days' leave to

25  amend the counterclaims in conformity with this Order.

26

27

28

EXHIBIT _____ _10_

PAGE _____ _232_

17

Case 2:04-cv-09049-DOC-RNB   Document 1536-5   Filed 01/15/08   Page 19 of 21   Page ID
#:17914
Case 2:04-cv-09049-_L-RNB   Document 63   Filed 07/1_ _06   Page 18 of 18

1   Although this Order dismisses the Complaint in 04-09049, any future filings in

2   the consolidated action shall continue to be filed under 04-09049 in conformity with

3   the Court's consolidation order.

4   IT IS SO ORDERED.

5   DATE:   7 - 17 - 06

6

7   STEPHEN G. LARSON
    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   EXHIBIT _____ 10

27   PAGE _____ 233

28

18

EXHIBIT 11

# CONFIDENTIAL – FILED UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER