**EXHIBIT 22**

**CONFORMED COPY**

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Duane R. Lyons (Bar No. 125091)
  (duanelyons@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

FILED  2007 JUL 12  Fri 3:02

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated With Case No. 04-9059 and Case No. 05-2727<br><br>MATTEL, INC.'S SECOND AMENDED ANSWER IN CASE NO. 05-2727 AND COUNTERCLAIMS FOR: |
| MGA ENTERTAINMENT, INC. a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation, and DOES 1-10,<br><br>Defendants. | 1. COPYRIGHT INFRINGEMENT;<br>2. VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;<br>3. CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;<br>4. MISAPPROPRIATION OF TRADE SECRETS;<br>5. BREACH OF CONTRACT;<br>6. INTENTIONAL INTERFERENCE WITH CONTRACT;<br>7. BREACH OF FIDUCIARY DUTY;<br>8. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;<br>9. BREACH OF DUTY OF LOYALTY;<br><br>**PUBLIC REDACTED VERSION**<br><br>**Volume I** |

EXHIBIT 22

PAGE 130

C7.12.c7

54363.2

| | |
|---|---|
| 1 | MATTEL, INC., a Delaware corporation, |
| 2 | |
| 3 | Counter-claimant, |
| | v. |
| 4 | MGA ENTERTAINMENT, INC., a California corporation; ISAAC LARIAN, an individual; CARTER BRYANT, an individual; MGA ENTERTAINMENT (HK) LIMITED, a Hong Kong Special Administrative Region business entity; MGAE DE MEXICO, S.R.L. DE C.V., a Mexico business entity; CARLOS GUSTAVO MACHADO GOMEZ, an individual; and DOES 4 through 10, |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | Counter-defendants. |
| 11 | |
| 12 | AND CONSOLIDATED CASES |

1  MATTEL, INC., a Delaware corporation,

2              Counter-claimant,

3        v.

4  MGA ENTERTAINMENT, INC., a California corporation; ISAAC LARIAN, an individual; CARTER BRYANT, an individual; MGA ENTERTAINMENT (HK) LIMITED, a Hong Kong Special Administrative Region business entity; MGAE DE MEXICO, S.R.L. DE C.V., a Mexico business entity; CARLOS GUSTAVO MACHADO GOMEZ, an individual; and DOES 4 through 10,

              Counter-defendants.

AND CONSOLIDATED CASES

10. AIDING AND ABETTING BREACH OF DUTY OF LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION; AND
13. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

EXHIBIT 22

PAGE 131

54363.2

-2-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

## SECOND AMENDED ANSWER

Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007, Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment, Inc. ("Complaint") as follows:

### Preliminary Statement

The Complaint in this case contravenes Rule 8(a) of the Federal Rules of Civil Procedure in multiple respects. For example, in many places, the Complaint improperly mixes factual averments with argumentative rhetoric. The Complaint also includes a selective recitation of alleged historical facts and "rumor," much of which is both irrelevant and inflammatory in tone and content. In addition, many of the allegations of the Complaint are overly broad, vague or conclusory and include terms which are undefined and which are susceptible to different meanings. Accordingly, by way of a general response, all allegations are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations which are contained in the averment or in the Complaint as a whole. These comments and objections are incorporated, to the extent appropriate, into each numbered paragraph of this Second Amended Answer.

Mattel further submits that the use of the headings throughout the Complaint is improper, and therefore no response to them is required. In the event that a response is required, Mattel denies those allegations.

The Complaint also contains many purported photographs of various items, and it uses one or more headings purporting to describe, either individually or in groups, these various photographs. The images of these photographs contained in the Complaint are all relatively small and some are of less than optimal quality, making it difficult to evaluate the adequacy of the photographs or their fairness and accuracy in depicting what they purport to represent. The Complaint also does not describe the circumstances or time frame in which these photographs were taken,

EXHIBIT 22

PAGE 133

2154363.2

1    and in many cases does not identify, or does not sufficiently or properly identify, the

2    item depicted in the photographs. All of these factors, as well as the use of these

3    photographs and headings out of context, or with an insufficient context, impair the

4    ability of Mattel to fully respond to these photographs and headings, or to any

5    purported allegations involving, or relying upon, the use of such photographs and

6    accompanying headings. By way of a general response, Mattel therefore does not

7    admit the authenticity of any photograph, or the accuracy or adequacy of any

8    heading, nor does it admit any allegation or inference that is based on, or purports to

9    be based on, any photograph or accompanying heading in the Complaint. Mattel

10   reserves the right to challenge the authenticity of any photograph and the accuracy

11   or adequacy of any heading (either as included in the Complaint or in the context of

12   additional material not included). Further, with reference to all photographs and

13   accompanying headings, or any averments based on the Complaint's use of such

14   photographs and headings, which might be offered into evidence, Mattel specifically

15   reserves its right to object to any use of such photographs, headings, and averments,

16   or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

17          To the extent that Mattel has endeavored to answer any particular

18   allegation containing any such photographs and headings, any admission concerning

19   the item purported to be depicted in such photograph, or described in such headings,

20   shall not constitute an admission that the photograph is authentic, adequate, or

21   admissible, nor that any heading is accurate, adequate, or admissible. All such items

22   purportedly depicted in such photographs, and described in such headings, "speak

23   for themselves". Accordingly, to the extent that any such referenced materials are

24   deemed allegations against Mattel, they are denied.

25                              Responses

26          1.     Answering paragraph 1 of the Complaint, Mattel admits that

27   plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California

28   corporation with a principal place of business in Van Nuys, California.

EXHIBIT __22__

PAGE __133__

4363.2

1           2.     Answering paragraph 2 of the Complaint, Mattel admits that

2  Mattel is a Delaware corporation with a principal place of business in El Segundo,

3  California.

4           3.     Answering paragraph 3 of the Complaint, Mattel denies that

5  there has been wrongful conduct on its part and states that it is without knowledge

6  or information sufficient to form a belief as to the truth or falsity of the remaining

7  allegations set forth therein and, on that basis, denies them.

8           4.     Answering paragraph 4 of the Complaint, Mattel admits that

9  plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and

10  (c), California Business and Professions Code §§ 17200 *et seq.*, California Business

11  and Professions Code § 14330 and California common law, denies that plaintiff is

12  entitled to any relief thereunder and denies the truth of the remaining allegations set

13  forth in paragraph 4.

14           5.     Answering paragraph 5 of the Complaint, Mattel admits that it is

15  subject to personal jurisdiction in this District and denies the truth of the remaining

16  allegations set forth in paragraph 5.

17           6.     Answering paragraph 6 of the Complaint, Mattel admits that

18  venue is proper in this District and denies the truth of the remaining allegations set

19  forth in paragraph 6.

20           7.     Answering paragraph 7 of the Complaint, Mattel admits that

21  MGA has filed the instant lawsuit and denies the truth of the remaining allegations

22  set forth in paragraph 7.

23           8.     Answering paragraph 8 of the Complaint, Mattel states that it is

24  without knowledge or information sufficient to form a belief as to the truth or falsity

25  of the allegations regarding MGA's history set forth therein and, on that basis,

26  denies them, states that MGA has made conflicting representations, including in

27  sworn statements, that are at odds with the allegations of the Complaint and denies

28  the truth of the remaining allegations set forth in paragraph 8.

EXHIBIT _22_

PAGE _131_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

363.2

1    9.    Answering paragraph 9 of the Complaint, Mattel admits that
2 MGA filed this action, states that Mattel's web site and corporate governance
3 policies speak for themselves and denies the truth of the remaining allegations set
4 forth in paragraph 9.

5    10.    Answering paragraph 10 of the Complaint, Mattel admits that it
6 is the world's most successful toy company, states that the first doll in its BARBIE
7 line was publicly introduced in 1959 and that BARBIE-branded dolls have been the
8 world's best-selling toys, states that Mattel's sales and stock price speak for
9 themselves, and denies the truth of the remaining allegations set forth in paragraph
10 10.

11    11.    Answering paragraph 11 of the Complaint, Mattel admits that
12 Adrienne Fontanella is the former president for girls' toys at Mattel, states that it is
13 without knowledge or information sufficient to form a belief as to the truth or falsity
14 of the allegations regarding an alleged statement by Ms. Fontanella, and denies the
15 truth of the remaining allegations set forth in paragraph 11.

16    12.    Answering paragraph 12 of the Complaint, Mattel is without
17 knowledge or information sufficient to form a belief as to the truth or falsity of the
18 allegations regarding alleged statements by unidentified "analysts," states that
19 Mattel's sales and stock price speak for themselves, and denies the truth of the
20 remaining allegations set forth in paragraph 12.

21    13.    Answering paragraph 13 of the Complaint, Mattel admits that Jill
22 Barad became President and Chief Executive Officer of Mattel in January 1997, that
23 Mattel acquired Tyco Industries, Inc. ("Tyco") in March 1997, that Mattel acquired
24 Pleasant Company in 1998, Mattel acquired the Learning Company in May 1999,
25 that Mattel acquired Purple Moon in 1999, that the MATCHBOX brand was owned
26 by Tyco, that the AMERICAN GIRL line of dolls was made by Pleasant Company
27 at the time of that entity's acquisition, and denies the truth of the remaining
28 allegations set forth in paragraph 13.

EXHIBIT __22__

PAGE __135__

i3.2

14.     Answering paragraph 14 of the Complaint, Mattel states that its public announcements speak for themselves, and denies the truth of the remaining allegations set forth therein.

15.     Answering paragraph 15 of the Complaint, Mattel states that its stock price and its public announcements speak for themselves, and denies the truth of the remaining allegations set forth therein.

16.     Answering paragraph 16 of the Complaint, Mattel states that its stock price speaks for itself, states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the alleged views of unnamed "analysts" and "[i]nvestors," and denies the truth of the remaining allegations set forth therein.

17.     Answering paragraph 17 of the Complaint, Mattel admits that Ms. Barad resigned in February 2000.

18.     Answering paragraph 18 of the Complaint, Mattel admits that Robert Eckert became Chairman and Chief Executive Officer of Mattel in May 2000 and that Mr. Eckert previously was employed at Kraft Foods, Inc. for 23 years, is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the views of unnamed "[i]nvestors" and others, and denies the truth of the remaining allegations set forth in paragraph 18.

19.     Answering paragraph 19 of the Complaint, Mattel admits that the *Wall Street Journal* published an article on August 10, 2000 the content of which speaks for itself, and denies the truth of the remaining allegations set forth therein.

20.     Answering paragraph 20 of the Complaint, Mattel admits that it disposed of the Learning Company in October 2000, states that its sales and revenues speak for themselves, states that the remainder of the allegations contained therein are characterizations, not factual assertions, and therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies the truth of any remaining allegations set forth in paragraph 20.

54363.2

EXHIBIT _____22

SECOND AMENDED ANSWER AND COUNTERCLAIMS
PAGE _____134

1    21.   Answering paragraph 21 of the Complaint, Mattel admits that

2  products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and

3  other product lines and states that the remainder of the allegation contained

4  therein—consisting of a sentence fragment—is unintelligible and on that basis

5  denies the truth of any such remaining allegation set forth therein.

6    22.   Answering paragraph 22 of the Complaint, Mattel admits that

7  products in plaintiff's "Bratz" line compete with Mattel products, states that the

8  remainder of the allegations contained therein are characterizations, not factual

9  assertions, and that therefore no response is necessary under Fed. R. Civ. P. 8(b)

10  and, to the extent any further response is required, denies the truth of any remaining

11  allegations set forth therein.

12    23.   Answering paragraph 23 of the Complaint, Mattel states that

13  MGA has made conflicting statements, including in sworn statements, that are

14  inconsistent with the allegations set forth in paragraph 23 of the Complaint and

15  states that it is therefore without knowledge or information sufficient to form a

16  belief as to the truth or falsity of the allegations set forth therein and, on that basis,

17  denies them.

18    24.   Answering paragraph 24 of the Complaint, Mattel states that the

19  "look" of the referenced dolls speak for themselves and denies the truth of the

20  remaining allegations set forth therein.  By way of further answer, Mattel states that

21  the photographs and their accompanying caption on page 7 of the Complaint are

22  false and misleading to the extent they are intended to suggest that MGA has

23  produced or used a consistent packaging shape or look or that it has protectible

24  rights in the matters depicted in the photographs.

25    25.   Answering paragraph 25 of the Complaint, Mattel admits that

26  Bratz dolls are between approximately 9.5 to 10 inches in height, states that the

27  appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were

28  intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz"

2154363.2

**EXHIBIT** 22

**PAGE** 137

1  dolls "looked like no other" and denies the truth of the remaining allegations set

2  forth in paragraph 25.

3       26.   Answering paragraph 26 of the Complaint, Mattel states that the

4  use of the term "classic" is unintelligible, since Mattel has designed and sold

5  different dolls using different heads and with different fashions and themes over the

6  years, and denies the truth of any remaining allegations.  By way of further answer,

7  Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the

8  Complaint is misleading in that it depicts one of the doll heads that have been used

9  as part of the BARBIE line for many years, and therefore ignores that Mattel has

10  long designed and sold an array of different BARBIE line dolls that use different

11  doll heads, including doll heads which depict different ethnicities, and that are

12  dressed in different clothing and fashion styles.

13       27.   Answering paragraph 27 of the Complaint, Mattel admits that

14  MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

15  denies that MGA originated or otherwise has rights to that phrase, admits that one

16  audience for products in the "Bratz" line has been "tweens" and denies the truth of

17  the remaining allegations set forth in paragraph 27.

18       28.   Answering paragraph 28 of the Complaint, Mattel admits that

19  certain "Bratz" dolls have won certain awards, the terms of which speak for

20  themselves, states that it is without knowledge or information sufficient to form a

21  belief as to the truth or falsity of the allegations regarding the "awards" MGA claims

22  and, on that basis, denies them, denies that plaintiff has protectible rights and denies

23  the truth of any remaining allegations set forth in paragraph 28.

24       29.   Answering paragraph 29 of the Complaint, Mattel admits that

25  dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that

26  Mattel has or has ever had a "stranglehold" on any market, states that the market

27  allegations contained in paragraph 29 are vague and ambiguous, including without

28  limitation in that the allegations fail to specify what products among the parties'

2154363.2

1  respective lines are being referred to and what time period is being referred to, and

2  denies the truth of any remaining allegations set forth in paragraph 29.

3       30.    Answering paragraph 30 of the Complaint, Mattel admits that

4  MGA has been a licensee of Mattel, states that the market allegations are vague and

5  ambiguous, including without limitation in that the allegations fail to specify what

6  products are being referred to and what time periods or points in time are being

7  referred to, and states that the remainder of the allegations contained therein are

8  characterizations, not factual assertions, and therefore no response is necessary

9  under <u>Fed. R. Civ. P.</u> 8(b) and, to the extent any further response is required, denies

10  the truth of any remaining allegations set forth in paragraph 30.

11       31.    Answering paragraph 31 of the Complaint, Mattel states that the

12  allegations contained therein are characterizations, not factual assertions, and

13  therefore no response is necessary under <u>Fed. R. Civ. P.</u> 8(b) and, to the extent any

14  further response is required, denies the truth of the allegations set forth in paragraph

15  31.

16       32.    Answering paragraph 32 of the Complaint, Mattel denies the

17  truth of the allegations set forth therein.

18       33.    Answering paragraph 33 of the Complaint, Mattel denies the

19  truth of the allegations set forth therein.

20       34.    Answering paragraph 34 of the Complaint, Mattel states that it

21  has released various MY SCENE dolls, including MY SCENE dolls named

22  "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY

23  SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE

24  dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff

25  has protectible rights, states that MGA has made conflicting representations that are

26  at odds with the allegations of the Complaint and that it is therefore without

27  knowledge or information sufficient to form a belief as to the truth or falsity of the

28  allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,

EXHIBIT _____ <u>22</u>

-10-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

PAGE _____ <u>139</u>

2154363.2

1    denies them, and denies the truth of the remaining allegations set forth therein.  By

2    way of further answer, Mattel states that the photographs and their accompanying

3    captions on page 10 of the Complaint are misleading and false to the extent they are

4    intended to suggest that a particular Mattel doll has been changed over time as

5    purportedly depicted.  Among other things, Mattel has long designed and sold an

6    array of different BARBIE line dolls using different doll heads, and the photographs

7    encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been

8    used, and continues to be used, as part of the BARBIE line.  In addition, the

9    photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll

10   character called BARBIE that continues to be sold and/or marketed with that head,

11   and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY

12   SCENE doll character separate and apart from the one depicted in the "circa 2002"

13   image (and is not a revised character as plaintiff apparently attempts to imply).

14        35.    Answering paragraph 35 of the Complaint, Mattel admits that

15   Mattel released a product line called FLAVAS, states that the appearance of the

16   FLAVAS dolls speaks for themselves, states that it is without knowledge or

17   information sufficient to form a belief as to the truth or falsity of the allegations

18   regarding the  "rumor" relied upon by plaintiff and the undefined "media"

19   purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel

20   has abandoned the FLAVAS line, and denies the truth of the remaining allegations

21   set forth in paragraph 35.

22        36.    Answering paragraph 36 of the Complaint, Mattel denies the

23   truth of the allegations set forth therein.

24        37.    Answering paragraph 37 of the Complaint, Mattel denies the

25   truth of the allegations set forth therein.  By way of further answer, Mattel states that

26   the unnumbered photographs and their accompanying captions on pages 11 through

27   16 of the Complaint -- which apparently were included to purportedly support the

28   allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel

EXHIBIT _____ 22

-11-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

i4363.2

PAGE

1  specifically denies -- are false and misleading.  Among other things, the heads

2  depicted are among an array of different doll heads that Mattel has used, and

3  continues to use, over the course of many years.  Moreover, the images purport to

4  compare different Mattel doll lines to show alleged changes in appearance even

5  though, in fact, each of the heads are currently sold and/or marketed to the public.

6  The "Blonde" series of photographs encaptioned "original" and "recent" MY

7  SCENE is further and specifically misleading in that it purports to compare two

8  differently named and outfitted dolls in the MY SCENE doll line, both of which

9  continue to be sold and/or marketed.

10          38.    Answering paragraph 38 of the Complaint, Mattel states that the

11  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

12  denies that MGA was the originator of or the first to use the eye shape or makeup

13  depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has

14  copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations

15  contained in paragraph 38.  By way of further answer, Mattel states that the

16  unnumbered photographs and accompanying caption on page 13 of the Complaint

17  are false and misleading.  Among other things, the purported "Original Mattel 'My

18  Scene' Eye" is one of the eye and makeup designs that Mattel has used over the

19  course of many years, and Mattel continues to sell and/or market dolls using the eye

20  and makeup design depicted therein.

21          39.    Answering paragraph 39 of the Complaint, Mattel states that the

22  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

23  denies that MGA was the originator of or the first to use the eye shape or makeup

24  purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has

25  copied "the 'BRATZ' eye," states that the relevant dolls speak for themselves and

26  denies the truth of the remaining allegations contained in paragraph 39.  By way of

27  further answer, Mattel states that the unnumbered photographs and accompanying

28  captions on page 14 of the Complaint are false and misleading.  Among other things,

EXHIBIT _____ 22

363.2

1   the purported "New Mattel 'My Scene' Eye" is one of the eye and makeup designs
2   that Mattel has used over the course of many years, and Mattel continues to sell
3   and/or market dolls using the eye and makeup design depicted on page 14 of the
4   Complaint.
5           40.     Answering paragraph 40 of the Complaint, Mattel denies the
6   truth of the allegations therein. By way of further answer, Mattel states that the
7   unnumbered photographs and their accompanying captions on pages 15 to 16 are
8   false and misleading. Among other things, the heads depicted are among an array of
9   different doll heads that Mattel has used, and continues to use, over the course of
10  many years. Moreover, the photographs purport to compare different Mattel doll
11  lines to show alleged changes in appearance even though, in fact, each of the heads
12  are currently sold and/or marketed to the public. The "Blonde" series of
13  photographs encaptioned "original" and "recent" MY SCENE is further and
14  specifically misleading in that it purports to compare two differently named and
15  outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or
16  marketed.
17          41.     Answering paragraph 41 of the Complaint, Mattel denies the
18  truth of the allegations set forth therein.
19          42.     Answering paragraph 42 of the Complaint, Mattel admits that the
20  photographs purport to depict two packages that were, among others, part of the MY
21  SCENE line, state that the packages speak for themselves and denies the truth of any
22  remaining allegations set forth therein.
23          43.     Answering paragraph 43 of the Complaint, Mattel admits that the
24  photograph purports to depict one of the packages that were, among others, part of
25  the MY SCENE line, states that the parties' packages speak for themselves, states
26  that MGA has failed to establish that it originated, or has protectible rights in, an
27  "open and transparent style" for packaging and denies the truth of the remaining
28  allegations set forth therein.

EXHIBIT _____ 22

-13-     PAGE _____ 142

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1    44.    Answering paragraph 44 of the Complaint, Mattel admits that

2  one photograph purports to depict one of the packages that were, among others, part

3  of the MY SCENE line, admits that the other photograph purports to depict one of

4  the packages that were, among others, used as part of the Bratz line, states that the

5  parties' packages speak for themselves, denies that MGA originated, or has

6  protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in the

7  Complaint and denies the truth of any remaining allegations set forth therein.

8    45.    Answering paragraph 45 of the Complaint, Mattel admits that

9  one photograph purports to depict one of the packages that were, among others, part

10  of the MY SCENE line, admits that the other photograph purports to depict one of

11  the packages that were, among others, used as part of the Bratz line, states that the

12  parties' packages speak for themselves, denies that MGA originated, or has

13  protectible rights in, the packaging depicted in the Complaint and denies the truth of

14  any remaining allegations set forth therein.

15    46.    Answering paragraph 46 of the Complaint, Mattel states that it

16  has utilized a wide variety of packaging styles and shapes over the years, states that

17  the relevant packaging speaks for itself, states that MGA lacks protectible rights in

18  "non-rectangular shaped box" packaging or in the other elements MGA claims in

19  paragraph 46, and denies the truth of the remaining allegations set forth therein.

20    47.    Answering paragraph 47 of the Complaint, Mattel denies that

21  any alleged "theme" is "MGA's theme," denies that MGA originated or has rights to

22  any theme and denies the truth of the remaining allegations set forth therein.

23    48.    Answering paragraph 48 of the Complaint, Mattel admits that it

24  released a doll called "Chillin Out!", states that it has released such themed dolls

25  over the course of many years, admits MGA released a "Wintertime Wonderland"

26  themed doll, denies that MGA originated or has rights to such theme, states that the

27  relevant products speak for themselves and denies the truth of the remaining

28  allegations set forth therein.

EXHIBIT ___ *22*

1    49.    Answering paragraph 49 of the Complaint, Mattel admits that it

2  released a doll called "Night on the Town", states that it has released such themed

3  dolls over the course of many years, admits MGA released a "Formal Funk" themed

4  doll, denies that MGA originated or has rights to such theme, states that the relevant

5  products speak for themselves and denies the truth of the remaining allegations set

6  forth therein.

7    50.    Answering paragraph 50 of the Complaint, Mattel admits that it

8  released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch Tiki

9  Lounge", states that it has released such themed dolls and products over the course

10  of many years, admits that MGA released a "Sun-Kissed Summer" themed doll and

11  playset, denies that MGA originated or has rights to such theme, states that the

12  relevant products speak for themselves and denies the truth of the remaining

13  allegations set forth therein.

14    51.    Answering paragraph 51 of the Complaint, Mattel admits that it

15  has aired television commercials for its MY SCENE line, states that such

16  commercials speak for themselves, denies the truth of the remaining allegations set

17  forth therein and specifically denies that MGA was the originator of or has rights to

18  commercials "combining live action with animated sequences" set to "pop music

19  and lyrics".

20    52.    Answering paragraph 52 of the Complaint, Mattel denies the

21  truth of the allegations set forth therein.

22    53.    Answering paragraph 53 of the Complaint, Mattel admits that it

23  released a MY SCENE "Sound Lounge", admits that MGA released a product called

24  "Runway Disco", states that the relevant products speak for themselves, denies that

25  it "imitated MGA's trapezoidal box," denies that MGA has rights thereto, and

26  denies the truth of the remaining allegations set forth therein.

27    54.    Answering paragraph 54 of the Complaint, Mattel denies the

28  truth of the allegations set forth therein.

EXHIBIT __22__

PAGE __144__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

55.     Answering paragraph 55 of the Complaint, Mattel admits that, among the styling heads it has produced and sold over the course of many years, it released a MY SCENE styling head, admits that MGA released a styling head called "Funky Fashion Makeover Head", states that the relevant products speak for themselves, denies that MGA has protectible rights and denies the truth of the remaining allegations set forth in paragraph 55.

56.     Answering paragraph 56 of the Complaint, Mattel is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein because plaintiff fails to identify the alleged instances of confusion, including the source of the unidentified picture titled "Hairstyle practice", and on that basis, denies them, and denies the truth of any remaining allegations set forth in paragraph 56.

57.     Answering paragraph 57 of the Complaint, Mattel admits that it has aired television commercials for its MY SCENE line, states that such commercials speak for themselves and denies the truth of the remaining allegations set forth therein.

58.     Answering paragraph 58 of the Complaint, Mattel admits that MGA has used the line "The Girls With a Passion for Fashion" in some contexts, denies that MGA originated that phrase or otherwise has rights to it, states that Mattel's web site speaks for itself and denies the truth of the remaining allegations set forth therein.

59.     Answering paragraph 59 of the Complaint, Mattel admits that, among the plush products that it has produced and sold over the course of many years, it has released plush dogs as part of its MY SCENE "Miami Getaway" themed product line, states that Mattel has for many years sold plush pets of the type used with its MY SCENE dog, admits that MGA has released various Bratz pets, states that MGA was not the originator of and has no rights to the features and other

EXHIBIT __22__

PAGE __145__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1   elements described therein, states that the relevant products speak for themselves
2   and denies the truth of the remaining allegations set forth therein.

3         60.   Answering paragraph 60 of the Complaint, Mattel admits that,
4   among the plush toys that it has released over the course of many years, its MY
5   SCENE dog has been sold in packaging depicted (in part) on page 22 of the
6   Complaint, states that Mattel has for many years sold plush pets and other plush
7   products in packaging of the type used with its MY SCENE dog, admits that MGA
8   has released a "Bratz" dog, states that MGA was not the originator of and has no
9   rights to the packaging described therein, states that the relevant packages speak for
10  themselves and denies the truth of the remaining allegations set forth therein.

11        61.   Answering paragraph 61 of the Complaint, Mattel denies that it
12  has intended to cause any consumer confusion and states that it is without
13  knowledge or information sufficient to form a belief as to the truth or falsity of the
14  allegations set forth therein concerning unnamed retailers, customers and others
15  because plaintiff fails to identify any source for the matters alleged and, on that
16  basis, denies them and denies the truth of any remaining allegations set forth therein.

17        62.   Answering paragraph 62 of the Complaint, Mattel denies that it
18  has intended to cause any confusion and states that it is without knowledge or
19  information sufficient to form a belief as to the truth or falsity of the allegations set
20  forth therein concerning alleged comments and conversations because plaintiff fails
21  to identify any source for the alleged comments and conversations and, on that
22  basis, denies them, and denies the truth of any remaining allegations set forth
23  therein.

24        63.   Answering paragraph 63 of the Complaint, Mattel denies that it
25  has intended to cause any confusion and states that it is without knowledge or
26  information sufficient to form a belief as to the truth or falsity of the allegations set
27  forth therein because plaintiff fails to identify any source for the alleged comments
28

EXHIBIT _____22_____

PAGE _____146_____

-17-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1 | and conversations and, on that basis, denies them, and denies the truth of any

2 | remaining allegations set forth therein.

3 |       64.    Answering paragraph 64 of the Complaint, Mattel denies that it

4 | has intended to cause any confusion and states that it is without knowledge or

5 | information sufficient to form a belief as to the truth or falsity of the allegations set

6 | forth therein because plaintiff fails to identify any source for the alleged comments

7 | and conversations and, on that basis, denies them, and denies the truth of any

8 | remaining allegations set forth therein.

9 |       65.    Answering paragraph 65 of the Complaint, Mattel denies the

10 | truth of the allegations set forth therein.

11 |       66.    Answering paragraph 66 of the Complaint, Mattel admits that it

12 | sued a competitor in the German courts for unfair competition for copying various

13 | Mattel BARBIE line products, states that such claims exclusively arose under and

14 | were the subject of German law, states that since that time the Federal Supreme

15 | Court has rejected the contention made by MGA in paragraph 66 that

16 | "systematically copying and borrowing elements" from competing dolls supports a

17 | claim for unfair competition, and denies the truth of the remaining allegations set

18 | forth therein.

19 |       67.    Answering paragraph 67 of the Complaint, Mattel denies the

20 | truth of the allegations set forth therein.

21 |       68.    Answering paragraph 68 of the Complaint, Mattel admits that it

22 | has released dolls called "Wee 3 Friends," admits that MGA has released dolls

23 | called "4-Ever Best Friends," states that the relevant products speak for themselves,

24 | denies that MGA's packaging is distinctive, denies that MGA has protectible rights

25 | thereto and denies the truth of the remaining allegations set forth in paragraph 68.

26 |       69.    Answering paragraph 69 of the Complaint, Mattel admits that its

27 | Fisher Price division has released, among other dolls called "Little Mommy," the

28 | "Little Mommy Potty Training Baby Doll," admits that MGA has released a

EXHIBIT 22

14 7

1    "Mommy's Little Patient" doll and denies the truth of the remaining allegations set

2    forth therein.

3          70.    Answering paragraph 70 of the Complaint, Mattel admits that it

4    has released die-cast cars and other products called "Acceleracers" as part of its

5    HOT WHEELS line, admits that MGA has released products called "AlienRacers,"

6    denies that MGA was the originator of or has rights to the elements and matters

7    described in paragraph 70, states that the relevant products speak for themselves and

8    denies the truth of the remaining allegations set forth therein.

9          71.    Answering paragraph 71 of the Complaint, Mattel admits that it

10   has aired commercials relating to "Acceleracers," states that such commercials

11   speak for themselves, denies the truth of the remaining allegations set forth therein

12   and specifically denies that MGA originated or has rights to commercials and other

13   matters described therein.

14         72.    Answering paragraph 72 of the Complaint, Mattel states that its

15   web site speaks for itself, denies the truth of the remaining allegations contained in

16   paragraph 72 and specifically denies that Mattel intended to create confusion in the

17   marketplace.

18         73.    Answering paragraph 73 of the Complaint, Mattel denies the

19   truth of the allegations set forth therein.

20         74.    Answering paragraph 74 of the Complaint, Mattel denies the

21   truth of the allegations set forth therein.

22         75.    Answering paragraph 75 of the Complaint, Mattel admits that it

23   has reminded certain former employees who became employed by MGA by letter of

24   their contractual and fiduciary obligation to maintain the secrecy of all Mattel

25   confidential and proprietary business information, states that such letters were

26   prepared and sent to their recipients in good faith contemplation of litigation, admits

27   that it filed a complaint for declaratory relief against Ronald Brawer in Los Angeles

28   Superior Court, entitled <u>Mattel, Inc. v. Brawer</u>, Case No. BC323381, on October 21,

EXHIBIT _____ 22

4363.2

1  2004, states that pursuant to the Court's Order of August 25, 2005 it need not

2  respond to the allegations in paragraph 75 relating to that action, and denies the truth

3  of the remaining allegations set forth in paragraph 75.

4       76.    Answering paragraph 76 of the Complaint, Mattel states that

5  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

6  including such acts that are lawful in foreign nations, and denies the truth of

7  allegations set forth therein.

8       77.    Answering paragraph 77 of the Complaint, Mattel states that

9  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

10  including such acts that are lawful in foreign nations, and denies the truth of the

11  allegations set forth therein.

12       78.    Answering paragraph 78 of the Complaint, Mattel states that it is

13  without knowledge or information sufficient to form a belief as to the truth or falsity

14  of the allegations regarding MGA's claimed "shortage of doll hair" and, on that

15  basis, denies them and denies the truth of the remaining allegations set forth therein.

16       79.    Answering paragraph 79 of the Complaint, Mattel states that

17  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

18  including such acts that are lawful in foreign nations, and denies the truth of

19  allegations set forth therein.

20       80.    Answering paragraph 80 of the Complaint, Mattel denies the

21  truth of the allegations set forth therein.

22       81.    Answering paragraph 81 of the Complaint, Mattel admits that

23  NPD Funworld ("NPD") supplies sales statistics in *inter alia* the toy, PC games and

24  video games industries, admits that to Mattel's knowledge NPD restricts the use of

25  its subscriber information, states that MGA was sued by NPD and states that it is

26  without knowledge or information sufficient to form a belief as to the truth or falsity

27  of the allegations regarding the need of unspecified "toy companies" for NPD

28

EXHIBIT _____ 22

-20-     PAGE _____ 149

SECOND AMENDED ANSWER AND COUNTERCLAIMS

163.2

1   statistics and, on that basis, denies them and denies the truth of any remaining
2   allegations set forth therein.

3          82.    Answering paragraph 82 of the Complaint, Mattel denies the
4   truth of the allegations set forth therein.

5          83.    Answering paragraph 83 of the Complaint, Mattel states that it is
6   without knowledge or information sufficient to form a belief as to the truth or falsity
7   of the allegations set forth therein because MGA fails to quantify its annual
8   subscription fees and, on that basis, denies them.

9          84.    Answering paragraph 84 of the Complaint, Mattel states that it is
10  without knowledge or information sufficient to form a belief as to the truth or falsity
11  of the allegations set forth therein and, on that basis, denies them.

12         85.    Answering paragraph 85 of the Complaint, Mattel states that
13  MGA was sued by NPD, states that it is without knowledge or information sufficient
14  to form a belief as to such nature and grounds for such litigation (to which Mattel
15  was not a party) and, on that basis, denies the allegations relating thereto, and denies
16  the truth of the remaining allegations set forth therein.

17         86.    Answering paragraph 86 of the Complaint, Mattel denies the
18  truth of the allegations set forth therein.

19         87.    Answering paragraph 87 of the Complaint, Mattel admits that the
20  Children's Advertising Review Unit ("CARU") is the children's arm of the
21  advertising industry's self-regulation program, states that compliance with CARU's
22  Privacy Program can provide FTC-approved Safe Harbor under the Children's
23  Online Privacy Protection Act ("COPPA"), and denies the truth of the remaining
24  allegations set forth therein.

25         88.    Answering paragraph 88 of the Complaint, Mattel admits that it
26  is one of dozens of CARU Supporters and denies the truth of the remaining
27  allegations set forth therein.

28

EXHIBIT ___22___

PAGE ___150___

-21-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

54363.2

1          89.    Answering paragraph 89 of the Complaint, Mattel denies the

2   truth of the allegations set forth therein.

3          90.    Answering paragraph 90 of the Complaint, Mattel states that it is

4   without knowledge or information sufficient to form a belief as to the truth or falsity

5   of the allegations as to the consequences to MGA of MGA's violations of CARU

6   standards and, on that basis, denies them.

7          91.    Answering paragraph 91 of the Complaint, Mattel states that it is

8   without knowledge or information sufficient to form a belief as to the truth or falsity

9   of the allegations as to the consequences to MGA of MGA violation of CARU

10  standards and, on that basis, denies them.

11         92.    Answering paragraph 92 of the Complaint, Mattel admits that the

12  Toy Industry Association, Inc. ("TIA") is a toy industry trade association, admits

13  that at certain times TIA has given awards called the People's Choice Toy of The

14  Year or the Toy of The Year Award, denies that Mattel wrongfully influenced TIA

15  and states that it is without knowledge or information sufficient to form a belief as

16  to the truth or falsity of the remaining allegations set forth therein and, on that basis,

17  denies them.

18         93.    Answering paragraph 93 of the Complaint, Mattel states that the

19  allegations set forth therein are vague and ambiguous, including in that they fail to

20  properly identify the years in which the referenced awards were given and/or the

21  particular product which won such awards, and accordingly lacks knowledge or

22  information sufficient to form a belief as to the truth or falsity of the allegations set

23  forth therein and, on that basis, denies them.

24         94.    Answering paragraph 94 of the Complaint, Mattel admits that

25  Neil Freidman was the chairman of TIA from approximately May 2002 to May

26  2004, states that Fischer Price is a division of Mattel and denies the truth of the

27  remaining allegations set forth therein.

28

EXHIBIT _____22_____

PAGE _____151_____

2154363.2

-22-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1    95.    Answering paragraph 95 of the Complaint, Mattel admits that

2 Hokey Pokey Elmo won the Toy of the Year Award and denies the truth of the

3 remaining allegations set forth therein.

4    96.    Answering paragraph 96 of the Complaint, Mattel states that it is

5 without knowledge or information sufficient to form a belief as to the truth or falsity

6 of the allegations set forth therein and, on that basis, denies them.

7    97.    Answering paragraph 97 of the Complaint, Mattel denies the

8 truth of the allegations set forth therein.

9    98.    Answering paragraph 98 of the Complaint, Mattel denies the

10 truth of the allegations set forth therein.

11    99.    Answering paragraph 99 of the Complaint, Mattel denies the

12 truth of the allegations set forth therein.

13    100.    Answering paragraph 100 of the Complaint, Mattel denies the

14 truth of the allegations set forth therein.

15    101.    Answering paragraph 101 of the Complaint, Mattel repeats its

16 responses contained in paragraphs 1 through 100 of this Second Amended Answer

17 and incorporates them by reference as though fully and completely set forth herein.

18    102.    Answering paragraph 102 of the Complaint, Mattel denies the

19 truth of the allegations set forth therein and specifically denies that MGA's alleged

20 trade dress is distinctive.

21    103.    Answering paragraph 103 of the Complaint, Mattel denies the

22 truth of the allegations set forth therein and specifically denies that MGA's alleged

23 trade dress is distinctive.

24    104.    Answering paragraph 104 of the Complaint, Mattel denies the

25 truth of the allegations set forth therein.

26    105.    Answering paragraph 105 of the Complaint, Mattel denies the

27 truth of the allegations set forth therein.

28

EXHIBIT ___22___

PAGE ___152___

2154363.2

-23-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1    106.   Answering paragraph 106 of the Complaint, Mattel denies the
2  truth of the allegations set forth therein.

3    107.   Answering paragraph 107 of the Complaint, Mattel denies the
4  truth of the allegations set forth therein.

5    108.   Answering paragraph 108 of the Complaint, Mattel denies the
6  truth of the allegations set forth therein and specifically denies that plaintiff is
7  entitled to injunctive relief.

8    109.   Answering paragraph 109 of the Complaint, Mattel repeats its
9  responses contained in paragraphs 1 through 108 of this Second Amended Answer
10 and incorporates them by reference as though fully and completely set forth herein.

11   110.   Answering paragraph 110 of the Complaint, Mattel denies the
12 truth of the allegations set forth therein.

13   111.   Answering paragraph 111 of the Complaint, Mattel denies the
14 truth of the allegations set forth therein.

15   112.   Answering paragraph 112 of the Complaint, Mattel denies the
16 truth of the allegations set forth therein.

17   113.   Answering paragraph 113 of the Complaint, Mattel denies the
18 truth of the allegations set forth therein.

19   114.   Answering paragraph 114 of the Complaint, Mattel denies the
20 truth of the allegations set forth therein.

21   115.   Answering paragraph 115 of the Complaint, Mattel denies the
22 truth of the allegations set forth therein.

23   116.   Answering paragraph 116 of the Complaint, Mattel denies the
24 truth of the allegations set forth therein.

25   117.   Answering paragraph 117 of the Complaint, Mattel denies the
26 truth of the allegations set forth therein and specifically denies that plaintiff is
27 entitled to injunctive relief.

28

EXHIBIT __22__

PAGE __153__

-24-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1    118.   Answering paragraph 118 of the Complaint, Mattel denies the

2  truth of the allegations set forth therein.

3    119.   Answering paragraph 119 of the Complaint, Mattel repeats its

4  responses contained in paragraphs 1 through 118 of this Second Amended Answer

5  and incorporates them by reference as though fully and completely set forth herein.

6    120.   Answering paragraph 120 of the Complaint, Mattel denies the

7  truth of the allegations set forth therein.

8    121.   Answering paragraph 121 of the Complaint, Mattel denies the

9  truth of the allegations set forth therein.

10    122.   Answering paragraph 122 of the Complaint, Mattel denies the

11  truth of the allegations set forth therein.

12    123.   Answering paragraph 123 of the Complaint, Mattel denies the

13  truth of the allegations set forth therein and specifically denies that plaintiff is

14  entitled to injunctive relief.

15    124.   Answering paragraph 124 of the Complaint, Mattel repeats its

16  responses contained in paragraphs 1 through 123 of this Second Amended Answer

17  and incorporates them by reference as though fully and completely set forth herein.

18    125.   Answering paragraph 125 of the Complaint, Mattel denies the

19  truth of the allegations set forth therein.

20

21                        General Denial

22    Unless specifically admitted herein, Mattel denies the truth of each and

23  every allegation set forth in plaintiff's Complaint and specifically denies that

24  plaintiff is entitled to any relief against Mattel.

25

26

27    EXHIBIT _____ 22

28    PAGE _____ 154

54363.2

-25-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

## Affirmative Defenses

By alleging the Affirmative Defenses set forth below, Mattel does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

## First Affirmative Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## Second Affirmative Defense

Plaintiff has no valid, enforceable or protectible rights or interest in the alleged trade dress or other matters asserted, including without limitation in that plaintiff has failed to establish that its alleged trade dress is distinctive as to plaintiff.

## Third Affirmative Defense

Plaintiff's claims, including without limitation plaintiff's claims based upon alleged extra-territorial acts, are barred in whole or in part by lack of subject matter jurisdiction.

## Fourth Affirmative Defense

Plaintiff's claims are barred in whole or in part by plaintiff's unclean hands.

## Fifth Affirmative Defense

Plaintiff's claims are barred in whole or in part by virtue of Mattel's prior-creation of the elements and other matters asserted in the Complaint.

EXHIBIT _22_

PAGE _155_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

363.2

### Sixth Affirmative Defense

Plaintiff's claims are barred in whole or in part by its lack of standing.

### Seventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the applicable statutes of limitation and the doctrine of laches.

### Eighth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrines of waiver, estoppel and acquiescence.

### Ninth Affirmative Defense

Plaintiff's claims are barred in whole or in part by Mattel's constitutional rights of free speech, petitioning and association, including without limitation by the litigation privilege as protected by and/or codified in *inter alia* Section 47(b) of the California Civil Code, the *Noerr-Pennington* doctrine, the common interest privilege and by other privileges.

### Tenth Affirmative Defense

Plaintiff's claims are barred in whole or in part by Mattel's federal and state constitutional rights of free speech, including without limitation under the First Amendment of the United States Constitution.

### Eleventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the competitor privilege.

EXHIBIT _22_

PAGE _156_

-27-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

## Twelfth Affirmative Defense

Plaintiff's claims are in whole or in part preempted by the Copyright Act and barred by the *Sears-Compco* doctrine.

## Thirteenth Affirmative Defense

Plaintiff's requested relief, including plaintiff's requests for punitive and/or enhanced damages, are barred in whole or in part because all of Mattel's actions were in good faith.

## Fourteenth Affirmative Defense

Plaintiff's damages, if any, were not caused by Mattel and are not attributable to the acts or omissions of Mattel.

## Fifteenth Affirmative Defense

Plaintiff has failed to mitigate its damages, if any.

## Additional Defenses

Mattel has insufficient knowledge or information upon which to form a belief as to whether additional defenses are available.  Mattel reserves the right to amend this Second Amended Answer to add, delete, or modify additional defenses based on legal theories which may or will be divulged through clarification of the Complaint, through discovery, through change or clarification of the governing law or through further legal analysis of plaintiff's positions in this litigation.

## Prayer for Relief

WHEREFORE, Mattel prays for relief as follows:

EXHIBIT 22

PAGE 154

-28-

2154363.2

1.    That the Complaint be dismissed with prejudice;

2.    That plaintiff take nothing by reason of the Complaint against Mattel and that judgment be entered in Mattel's favor;

3.    That Mattel recover its costs and attorneys' fees; and

4.    That this Court award such other and further relief as it deems just and proper.

## COUNTERCLAIMS

Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007, and incorporating its [Proposed] Amended Complaint dated November 19, 2006, Mattel, Inc. alleges as follows:

### Preliminary Statement

1.    For years MGA Entertainment, Inc. has engaged in a pattern of stealing and using Mattel, Inc.'s property and trade secrets.  MGA's use of the stolen property and trade secrets caused and continues to cause significant harm to Mattel.  MGA first stole "Bratz," a fashion doll, from Mattel, and then continued stealing Mattel's confidential and proprietary information to fuel MGA's growth.

2.    Carter Bryant conceived, created and developed Bratz designs while he was employed by Mattel as a doll designer.  He concealed his Bratz work from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee.  As MGA knows, Mattel owns the Bratz designs that Bryant made.  As the rightful owner of those Bratz designs, Mattel has registered copyrights for them and seeks damages arising from MGA's repeated infringement of those copyrights.

3.    Emboldened by the success of its illegal conduct, MGA has repeated—and even expanded—its pattern of theft on numerous occasions.  For example, in or about 2004, MGA decided to expand into Mexico.  To do so, and operating from its Southern California offices, MGA hired away three key Mattel employees in Mexico, who, on their way out, stole virtually every category of

EXHIBIT _____ 22

1  Mattel's sensitive and trade secret business plans and information for the Mexican

2  market, as well as a significant quantity of sensitive and trade secret information

3  for Mattel's U.S. and worldwide businesses, and took them to MGA.  Armed with

4  Mattel's confidential business plans and methods, MGA claimed to have increased

5  its market share in Mexico alone by 90% in a single year.

6      4.    In 2005, MGA needed help in Canada.  So MGA, again

7  operating from its Southern California headquarters, hired Janine Brisbois from

8  Mattel.  At that time, Ms. Brisbois was responsible for Mattel's account with Toys

9  'R Us ("TRU") and Wal-Mart.  MGA gave her responsibility for those same

10  accounts, and she took from Mattel documents containing proprietary advertising,

11  project, sales, customer and strategy information for not only Canada, but for the

12  United States.  Eliminating any doubt that MGA then proceeded to use those stolen

13  materials, Brisbois subsequently accessed and modified certain of those Mattel

14  documents while employed by MGA.

15      5.    These are not the only instances of such misconduct, which

16  MGA orchestrated and carried out from its headquarters in this District.  Counter-

17  defendants have engaged in an ongoing, widespread pattern of illegal acts,

18  consisting of inducing Mattel employees to steal Mattel's confidential information

19  or other property and take it with them to MGA to further MGA's business interests

20  and to harm Mattel.

21                          **Jurisdiction**

22      6.    This Court has federal question jurisdiction over this action

23  pursuant to 28 U.S.C. §§ 1331, 17 U.S.C. §§ 101 *et seq.*, and 18 U.S.C. § 1964(c).

24  This Court has supplemental jurisdiction over Mattel's state law claims pursuant to

25  28 U.S.C. § 1367.

26                          **Venue**

27      7.    Venue is proper in this District pursuant to 28 U.S.C.

28  §§ 1391(b)-(d), 1391(f) and 1400(a) and 18 U.S.C. § 1965.  EXHIBIT __22__

                                                            159

363.2

**Parties**

8.     Mattel is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in El Segundo, California.

9.     Counter-defendant MGA Entertainment, Inc. ("MGA") is a corporation organized and existing under the laws of the State of California, with its principal place of business in Van Nuys, California.  Mattel is informed and believes, and on that basis alleges, that ABC International Traders, Inc. is a predecessor corporation to MGA and that until September 16, 2002, MGA was incorporated and known as ABC International Traders, Inc.  Upon the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope of MGA Entertainment, Inc.'s involvement and complicity in the conduct alleged therein and having designated MGA Entertainment, Inc. in the Complaint as Doe 1 and having discovered its involvement and complicity, Mattel hereby amends its Complaint by substituting MGA Entertainment, Inc. for the fictitious Doe name Doe 1.

10.     Counter-defendant Carter Bryant ("Bryant") is an individual who formerly was employed by Mattel and has worked for and continues to work as a contactor for MGA.  Mr. Bryant currently resides in the State of Missouri.

11.     Counter-defendant MGA Entertainment (HK) Limited is a business entity organized and existing under the laws of the Hong Kong Special Administrative Region, with its principal place of business in Hong Kong.  Upon the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope of involvement and complicity of MGA Entertainment (HK) Limited in the conduct alleged therein and having designated MGA Entertainment (HK) Limited in the Complaint as Doe 2 and having discovered its involvement and complicity, Mattel hereby amends its Complaint by substituting MGA Entertainment (HK) Limited for the fictitious Doe name Doe 2.

EXHIBIT  22

PAGE  160

-31-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1363.2

1          12.   Counter-defendant MGAE de Mexico, S.R.L. de C.V. ("MGA

2    de Mexico") is a business entity organized and existing under the laws of Mexico,

3    with its principal place of business in Mexico City, Mexico.

4          13.   Mattel is informed and believes, and on that basis alleges, that

5    Counter-defendant Larian is the President and CEO of MGA and an individual

6    residing in the County of Los Angeles.   Upon the filing of the Complaint, Mattel,

7    being ignorant of the nature, extent and scope of involvement and complicity of

8    Larian in the conduct alleged therein and having designated Larian in the

9    Complaint as Doe 3 and having discovered his involvement and complicity, Mattel

10   hereby amends its Complaint by substituting Larian for the fictitious Doe name

11   Doe 3.

12          14.   Counter-defendant Carlos Gustavo Machado Gomez is an

13   individual who is employed by Counter-defendant MGA and who, on information

14   and belief, currently resides in the County of Los Angeles.

15          15.   The true names and capacities of Counter-defendants sued herein

16   as DOES 4 through 10, inclusive, are unknown to Mattel, which therefore sues said

17   Counter-defendants by such fictitious names.   Mattel will amend its pleadings to

18   allege their true names and capacities when the same are ascertained.

19                              **Factual Background**

20   **I.    MATTEL**

21          16.   Mattel manufactures and markets toys, games, dolls and other

22   consumer products.   Harold Mattson and Eliot and Ruth Handler founded Mattel in

23   1945.   The name of the company was created by incorporating the names of two of

24   its founders, "MATT-son" and "EL-liot."   Originating from the Handlers' garage in

25   Southern California, the company greatly expanded its operations following World

26   War II.   During the next several decades, Mattel became famous for producing

27   high-quality products at reasonable prices.

28

EXHIBIT _____22_____

PAGE _____161_____

4363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

17.   Critical to Mattel's success is its ability to design and develop new products.  Mattel invests millions of dollars in product design and development and introduces hundreds of new products each year.  Mattel maintains a 180,000 square-foot design center in El Segundo, California, that houses hundreds of designers, sculptors, painters and other artists, who work exclusively to create the products on which Mattel's business depends.

18.   Mattel also has invested substantial amounts over many years to develop its business methods and practices, including, without limitation, its marketing and advertising research, plans, methods and processes; its business research and forecasts; its costs, budgets, pricing, credit terms, deal terms and finances; its manufacturing, distribution, and sales methods and processes; and its inventory methods and processes.  These represent a material part of the intellectual infrastructure of Mattel and are highly valuable.

## II.   MGA ENTERTAINMENT

19.   MGA is also a toy manufacturer.  MGA began as a consumer electronics business, but expanded into the toy business with licenses to sell handheld electronic games.  By approximately late 1999 or early 2000, MGA developed a strategy to expand its business and compete directly with Mattel by launching a fashion doll line, so it stole a fashion doll that was owned by Mattel – "Bratz."

20.   MGA intentionally stole not just specific Mattel property, such as Bratz designs, prototypes and related materials, but also a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure.  MGA's rapid growth was not organic, but rather was based upon its theft of Bratz.  As a result, MGA lacked an appropriate intellectual infrastructure for a company of its size and it became increasingly difficult to manage.  To deal with these problems, as detailed below, time and time again MGA simply stole Mattel's proprietary business methods, practices and information.  This not only

EXHIBIT 22

1   allowed MGA to avoid expending time, money and effort necessary to build a

2   legitimate business, but also allowed MGA to unfairly compete against Mattel by

3   taking Mattel's playbook.

4   **III.  MGA STEALS A NEW LINE OF FASHION DOLLS FROM MATTEL**

5         21.   Carter Bryant is a former Mattel employee.  Bryant joined Mattel

6   in September 1995, where he worked in Mattel's Design Center as a BARBIE

7   product designer.  In or about April 1998, Bryant resigned his position with Mattel

8   and moved to Missouri to live with his parents.  Late in 1998, Bryant applied to

9   Mattel to be rehired.  On January 4, 1999, he began working at Mattel in Mattel's

10  Design Center, again as a product designer, for Mattel's BARBIE collectibles line.

11        22.   Upon his return to Mattel in January 1999, Bryant executed an

12  Employee Confidential Information and Inventions Agreement (the "Employment

13  Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

14        23.   Pursuant to his Employment Agreement and as a condition of

15  and in consideration for his employment, Bryant agreed, among other things, that

16  he held a position of trust with Mattel, that the designs and inventions he created

17  during his Mattel employment (with certain exceptions not relevant here) were

18  owned by Mattel, and that he would be loyal to the company by agreeing not to

19  assist or work for any competitor of Mattel while he was employed by Mattel.

20        24.   On January 4, 1999, Bryant also executed Mattel's Conflict of

21  Interest Questionnaire (the "Conflict Questionnaire").  Among other things, Bryant

22  certified in the Conflict Questionnaire that, other than as disclosed, he had not

23  worked for any competitor of Mattel in the prior twelve months and had not

24  engaged in any business venture or transaction involving a Mattel competitor that

25  could be construed as a conflict of interest.  Bryant understood what the Conflict

26  Questionnaire required because, among other things, he disclosed on it the

27  freelance work he had performed while in Missouri for Ashton-Drake, which is

28  EXHIBIT _____ 22

2154363.2

1  unrelated to the conduct alleged herein. A true and correct copy of the Conflict

2  Questionnaire executed by Bryant is attached hereto as Exhibit B.

3      25. Pursuant to the Conflict Questionnaire, Bryant also agreed that

4  he would immediately notify his supervisor of any change in his situation that

5  would cause him to change any of the foregoing certifications. Despite this

6  obligation, at no time did Bryant disclose to Mattel that he was engaging in any

7  business venture or transaction with MGA or any other Mattel competitor.

8      26. More specifically, while Bryant was employed by Mattel, Bryant

9  and other Counter-defendants misappropriated and misused Mattel property and

10  Mattel resources for the benefit of Bryant and MGA. Such acts included, but are

11  not limited to, the following:

12      a. using his exposure to Mattel development programs to

13  create the concept, design and name of Bratz;

14      b. using Mattel resources, and while employed by Mattel,

15  Bryant worked by himself and with other Mattel employees and contractors to

16  design and develop Bratz, including without limitation by creating drawings and

17  three-dimensional models of Bratz dolls, and fashion designs for the dolls'

18  associated clothing and accessories; and

19      c. using Mattel resources, and while employed by Mattel,

20  Bryant took steps to assist MGA to produce Bratz dolls.

21      27. During the time that he was employed by Mattel and thereafter,

22  Bryant concealed these actions from Mattel, including by failing to notify his

23  supervisor of the conflict of interest he created when he began working on MGA's

24  behalf and when he began receiving payments from MGA. Bryant additionally

25  enlisted other Mattel employees to perform work on Bratz during the time he was

26  employed by Mattel and, by all indications, in at least some cases led them to

27  believe that they were performing work on a project for Mattel.

28

EXHIBIT _____ 22

-35-    PAGE _____ 164

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

28.   Bryant also made affirmative misrepresentations to Mattel management and employees immediately before his departure from Mattel on October 20, 2000.  For example, during his last few weeks at Mattel, Bryant told his co-workers and supervisors that he was going to leave Mattel for "non-competitive" pursuits.  Bryant's representations to his supervisors and his co-workers were false.  Bryant knew at the time that those representations were false and made those false statements to conceal from Mattel the fact that he was already working with MGA and that he had contracted with MGA to assign Bratz works to MGA and to provide design and development services to MGA, a Mattel competitor.

29.   As a result of the efforts of Bryant and other Mattel employees working on Bratz (which were done without Mattel's knowledge), the Bratz dolls had been designed and were far along in development during the time that Bryant was employed by Mattel and prior to the time that Bryant left Mattel on October 20, 2000.  Not only did Bryant create and develop designs for the dolls as well as other aspects of the products such as their fashion accessories during the time he was employed by Mattel, but MGA showed Bratz prototypes and/or product to both focus groups and retailers in November 2000, less than three weeks after Bryant left Mattel.  Bryant, Larian and others at MGA arranged these meetings while Bryant was still employed by Mattel.

30.   Bryant and MGA employees also repeatedly and continuously communicated with employees of MGA Entertainment (HK) Limited on subjects such as design and manufacturing of Bratz.  On information and belief, at all material times, MGA Entertainment (HK) Limited has maintained regular and continuous contacts with persons in the County of Los Angeles; it regularly has shipped products that it manufactures, or that are manufactured for it, to the County of Los Angeles; and such products have been distributed to retailers and sold to consumers in the County of Los Angeles.

EXHIBIT _____ 22

-36-          PAGE _____ 165

1      31.   Bratz also were shown to retailers at the Hong Kong Toy Fair in

2  January 2001. By early 2001, only a few months after Bryant resigned from

3  Mattel, MGA began having the Bratz fashion doll line and accessories

4  manufactured and then, shortly thereafter, began selling them at retail.

5      32.   Since 2001, MGA has distributed and sold Bratz and Bratz-

6  related products throughout the world. Mattel is informed and believes that MGA

7  also licenses Bratz to third parties. Mattel is also informed and believes that MGA

8  derives annual revenue from its sales and licenses of Bratz in excess of $500

9  million. Mattel is further informed and believes that MGA and Bryant claim

10  current ownership of Bratz, and all copyrights and copyright registrations attendant

11  thereto. MGA continues to market, sell and license Bratz and has expressed an

12  intention to continue to do so.

13      33.   Mattel is informed and believes that MGA and Larian

14  encouraged, aided and financed Bryant to develop Bratz, knowing full well that

15  Bryant was still employed by Mattel at the time and that by performing such work,

16  including design-related work, for his own benefit and/or the benefit of MGA,

17  Bryant would be, and was, in breach of his contractual, statutory and common law

18  duties to Mattel. Mattel is also informed and believes that MGA proceeded to aid

19  and encourage Bryant to develop Bratz with the goal of obtaining a valuable

20  fashion doll line that would be commercially successful in the competitive, multi-

21  billion dollar market for fashion dolls.

22      34.   Pursuant to Bryant's contract with Mattel, among other things,

23  Mattel is the true owner of Bratz designs and works, including those specifically

24  that were conceived, created or reduced to practice during Bryant's Mattel

25  employment as well as all designs and works that are or have been derived

26  therefrom. Counter-defendants' continued use, sale, distribution and licensing of

27  Bratz thus infringes upon Mattel's rights, injures Mattel and unlawfully enriches the

28  Counter-defendants.

EXHIBIT _____22_____

PAGE _____166_____

SECOND AMENDED ANSWER AND COUNTERCLAIMS

163.2

1         35.   Bryant and MGA deliberately and intentionally concealed facts

2    sufficient for Mattel to suspect or to know that it was the true owner of Bratz.

3    Their acts of concealment include, but are not limited to, concealing the fact that

4    Bryant conceived, created, designed and developed Bratz while employed by

5    Mattel, including by tampering with and defacing documents which showed that, in

6    fact, Bryant was a Mattel employee while he was working for and with MGA;

7    concealing the fact that Bryant worked with and assisted MGA during the time

8    Bryant was employed by Mattel and was compensated for that assistance;

9    concealing that Bryant was providing consulting services to MGA; concealing

10   Bryant's role in Bratz by falsely claiming that Larian and others were the creators

11   of Bratz; and concealing the fact that Mattel was the true owner of Bratz by, among

12   other things, filing fraudulent registrations and/or amendments to registrations with

13   the United States Copyright Office claiming MGA as the author of Bratz as a work

14   for hire and altering relevant dates on such documents to further obscure the true

15   facts of when the works were created.

16        36.   Because of Bryant's and MGA's acts of concealment and Bryant's

17   misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had

18   worked with MGA, or assisted MGA, while he still employed by Mattel until

19   approximately November 24, 2003, when Mattel received, through an unrelated

20   legal action, a copy of Bryant's agreement with MGA which showed that the date

21   of Bryant's agreement with MGA predated Bryant's departure from Mattel.  It was

22   then, as a result, that Mattel learned for the first time that Bryant had secretly aided,

23   assisted and worked for and with MGA while employed at Mattel and in violation

24   of his Mattel Employment Agreement.  Specifically, Bryant's agreement with

25   MGA obligated Bryant to provide product design services to MGA on a "top

26   priority" basis.  Bryant's agreement with MGA also provided that Bryant would

27   receive royalties and other consideration for sales of products on which Bryant

28   provided aid or assistance; that all works and services furnished by Bryant under

EXHIBIT _____

-38-

363.2

1 │ the agreement, including those he purportedly provided while still a Mattel

2 │ employee, purportedly would be considered "works for hire" of MGA; and that all

3 │ intellectual property rights to preexisting works by Bryant, including Bratz designs,

4 │ purportedly were assigned to MGA.

5 │ **IV.  MGA STEALS MATTEL TRADE SECRETS IN MEXICO**

6 │ 37.   On information and belief, in or about late 2003 or early 2004,

7 │ MGA decided to open business operations in Mexico. Faced with the difficult task

8 │ of developing an overall strategy for expanding into a market in which it had only a

9 │ nominal presence and no operations, MGA elected to steal Mattel's plans, strategy

10 │ and business information for the Mexican market and materials related to Mattel's

11 │ worldwide business strategies. As detailed below, MGA and Larian approached

12 │ three employees of Mattel's Mexican subsidiary ("Mattel Mexico"), enticed them to

13 │ steal Mattel's most sensitive business planning materials, and then hired them to

14 │ assist in establishing and running MGA's new Mexican subsidiary.

15 │ **A.    MGA Hires Three Senior Mattel Employees in Mexico**

16 │ 38.   Carlos Gustavo Machado Gomez ("Machado") was the Senior

17 │ Marketing Manager, Boys Division, for Mattel Mexico, a position of trust and

18 │ confidence. He was employed at Mattel Mexico from April 1, 1997 until April 19,

19 │ 2004. His duties included short, medium and long-term marketing planning,

20 │ generating product sales projections, and assisting in creation of the media plan. In

21 │ his position, Machado had access to highly confidential and sensitive marketing

22 │ and product development information. Machado had an employment agreement

23 │ with Mattel in which he agreed to maintain the confidentiality of Mattel's protected

24 │ information. Mattel's policies also required Machado to protect Mattel's

25 │ proprietary information and not to disclose it to competitors.

26 │ 39.   Mariana Trueba Almada ("Trueba") was the Senior Marketing

27 │ Manager, Girls Division, for Mattel Mexico, a position of trust and confidence.

28 │ She was employed at Mattel Mexico from November 3, 1997 until April 19, 2004.

363.2

EXHIBIT _____22_____

PAGE _____166_____

1  Like Machado, her duties included short, medium and long-term marketing

2  planning, generating product sales projections, and assisting in creation of the

3  media plan. In her position, Trueba had access to highly confidential and sensitive

4  marketing and product development information. Trueba had an employment

5  agreement with Mattel in which she agreed to maintain the confidentiality of

6  Mattel's protected information. Mattel's policies also required Trueba to protect

7  Mattel's proprietary information and not to disclose it to competitors.

8          40.   Pablo Vargas San Jose ("Vargas") was a Senior Trade Marketing

9  Manager with Mattel Mexico, a position of trust and confidence. He was employed

10  at Mattel Mexico from March 29, 2001 until April 19, 2004. Vargas was

11  responsible for ensuring that point-of-sale promotions were carried out, analyzing

12  the results of such promotions, negotiating promotion budgets, and generally

13  managing promotional activities. Vargas also had access to highly confidential and

14  sensitive marketing and product development information. Vargas had an

15  employment agreement with Mattel in which he agreed to maintain the

16  confidentiality of Mattel's protected information. Mattel's policies also required

17  Vargas to protect Mattel's proprietary information and not to disclose it to

18  competitors.

19          41.   Beginning in late 2003 or early 2004, Machado, Trueba and

20  Vargas began planning to leave Mattel Mexico to join MGA. In connection with

21  that plan, and with the encouragement of Larian and other MGA officers operating

22  in the United States, they began accessing, copying and collecting proprietary

23  Mattel documents to take with them. On April 19, 2004, Machado, Trueba and

24  Vargas each resigned their positions with Mattel, effective immediately. They

25  stated that they had been hired by a Mattel competitor, but refused to identify that

26  competitor. In fact, they had been offered and accepted employment by MGA to

27  establish and run MGA's new operation in Mexico.

28

EXHIBIT _____ 22

54363.2

-40-

PAGE _____ 169

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**B.**   **Machado, Trueba and Vargas Stole Dozens of Confidential Trade Secret Marketing and Sales Documents for MGA's Benefit**

42.   Following these resignations, Mattel discovered that Machado, Trueba and Vargas had been in frequent telephonic and e-mail contact with MGA personnel, including Larian, for over three months prior to their resignations.  The primary vehicle for these communications in furtherance of their "plot" was an America Online e-mail account with the address <plot04@aol.com>.  On information and belief, during this time, Machado, Trueba and Vargas supplied Larian with certain Mattel confidential and proprietary information in order to prove their value to MGA and to improve their negotiating position vis-à-vis their respective employment contracts with MGA.

43.   In March 2004, Machado, Trueba and Vargas were making plans to travel from Mexico to Los Angeles to meet with MGA personnel in person prior to resigning their positions at Mattel.  Also, by at least March 3, 2004, Machado, Trueba and Vargas were discussing with MGA personnel, including Larian, specific details regarding setting up MGA offices in Mexico City.  On information and belief, prior to their resignations, Larian and others at MGA directed Machado, Trueba and Vargas to steal virtually all Mattel confidential and proprietary information that they could access and bring it with them to MGA.  This was reflected in, among things, e-mail messages that Mattel had discovered after Machado, Trueba and Vargas had resigned.  For example, on March 22, 2006, approximately one month before they resigned, Machado, Trueba and Vargas wrote an e-mail message from the <plot04@aol.com> e-mail account addressed to Larian, MGA's General Manager Susan Kuemmerle and another MGA officer Thomas Park.  In that e-mail message, Machado, Trueba and Vargas sought to prove their value in this endeavor to MGA by writing: "Attached you will find our analysis for future discussion.  We will be available during the nights of the week after 16:30 Los Angeles time . . . ."  In another e-mail message, showing that the

1154363.2

EXHIBIT _____ 22

PAGE _____ 170

1    participants intentionally sought to maximize the damage to Mattel from their

2    conduct, Kuemmerle wrote to Larian and Park: "Gustavo, Mariana and Pablo want

3    to resign (all at the same time, and you can believe my smile!) next Wednesday."

4            44.   Beginning on April 12, 2004, a week before his resignation and

5    after numerous communications and meetings with Larian and other MGA

6    personnel, Machado began transferring additional Mattel confidential and

7    proprietary information to a portable USB storage device (also know as a "thumb

8    drive") that he connected to his Mattel computer.  On Friday, April 16, 2004, the

9    last business day before he gave notice, Machado copied at least 70 sensitive

10   documents to the portable USB storage device.

11           45.   Starting on April 12, 2004, Vargas also copied a host of

12   confidential and proprietary materials to a portable USB storage device, including

13   sales plans, sales projections and customer profiles.

14           46.   On April 16, 2004, Trueba also copied Mattel confidential and

15   proprietary information to a portable USB storage device connected to her Mattel

16   computer.

17           47.   With full knowledge that she was going to leave Mattel for a

18   competitor, Trueba also took steps to increase further her access to Mattel's

19   confidential information shortly before her resignation.  For example, just four days

20   before leaving, Trueba went out of her way to seek to attend a meeting at which

21   Mattel personnel analyzed BARBIE programs for the United States, Canada and

22   South America.  Two days before her resignation, she contacted both a Mattel

23   employee located in El Segundo, California and Mattel's advertising agency to

24   request updated confidential information about advertising plans for BARBIE.  On

25   information and belief, Trueba acted at the direction of MGA and Larian and did so

26   in order to obtain further information that would allow MGA to obtain unfair

27   competitive advantage over Mattel.

28

EXHIBIT _____ 22

PAGE _____ 171

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

48.    Machado, Trueba and Vargas stole virtually every type of document a competitor would need to enter the Mexican market and to unlawfully compete with Mattel in Mexico, in the United States, and elsewhere. They stole global internal future line lists that detailed anticipated future products, production and shipping costs for Mattel products; daily sales data for Mattel products; customer data; sales estimates and projections; marketing projections; documents analyzing changes in sales performance from 2003 to 2004; budgets for advertising and promotional expenses; strategic research reflecting consumer responses to products in development; media plans; consumer comments regarding existing Mattel products customer discounts and terms of sale; customer inventory level data; assessments of promotional campaign success; market size historical data and projections; marketing plans and strategies; merchandising plans; retail pricing and marketing strategies; and other similar materials.

49.    The stolen data was not limited to the Mexican market. The information stolen would, and did, give MGA an unfair competitive advantage in the United States and around the world. Further, the stolen information was not located exclusively in Mexico, but included confidential and proprietary information that resided on Mattel computers in Phoenix, Arizona and El Segundo, California, and/or documents which were originally created by personnel in El Segundo. Included among these stolen documents was one of Mattel's earliest internal global line lists, which included information for BARBIE products for the upcoming year and included, for each product, the expected profit margin, advertising expenditures, expected volume and marketing strategy. On information and belief, Machado, Trueba or Vargas delivered that internal line list to Larian or another MGA officer during their negotiations with MGA.

50.    MGA has used the information taken from Mattel to obtain an unfair advantage over Mattel, including in both the United States and Mexico. In fact, MGA later publicized its claim that, in 2005, it had increased its Mexican

EXHIBIT _____

-43-

2154363.2

1  market share by 90 percent over the prior year. This increase came at the expense

2  of Mattel, which lost market share during 2004 in Mexico and was forced to

3  increase its advertising and promotional spending to offset further losses.

4      51.   Machado, Trueba and Vargas attempted to conceal their

5  widespread theft of Mattel's proprietary information. For example, Machado ran a

6  software program on his Mattel personal computer in an attempt to erase

7  information, including information that would reveal the addresses to which he had

8  sent, or from which he had received, e-mail messages. On information and belief,

9  for the same purpose Machado also damaged the hard drive of the personal

10 computer that he used at Mattel.

11      52.   On information and belief, on April 19, 2004, immediately after

12 Machado, Trueba and Vargas simultaneously resigned, they traveled from Mexico

13 to Los Angeles to meet with MGA personnel, including Larian, in person.

14      53.   Mattel notified Mexican authorities about the theft of its trade

15 secret and confidential information. On October 27, 2005, the Mexican Attorney

16 General Office obtained a search warrant from the Mexican Federal Criminal

17 Courts for MGA's facilities in Mexico City. In that search, the Mexican authorities

18 found and seized from MGA's offices both electronic and paper copies of a large

19 number of documents containing Mattel trade secrets, including those that Mattel

20 discovered through its forensic investigations, plus many others that Mattel had not

21 known had been stolen.

22      54.   Based on Machado's "performance" in Mexico, Isaac Larian

23 subsequently promoted Machado and he was transferred to MGA's main office in

24 Van Nuys, California. On information and belief, Machado currently resides in the

25 County of Los Angeles, California.

EXHIBIT  22

-44-  PAGE  173

SECOND AMENDED ANSWER AND COUNTERCLAIMS

363.2

**V.    MGA HIRES MATTEL'S SENIOR VICE PRESIDENT AND GENERAL MANAGER TO FACILITATE ITS THEFT AND USE OF MATTEL'S HIGHLY VALUABLE BUSINESS METHODS AND PRACTICES**

55.    On October 1, 2004, Mattel's Senior Vice President and General Manager, Ron Brawer, left Mattel and joined MGA. Tyco Toys, Inc. ("Tyco"), a predecessor to Mattel, had hired Brawer on April 22, 1996. The same day, Brawer entered into an Employee Invention & Trade Secret Agreement with Tyco. On April 9, 1997, Brawer became a Marketing Director for Mattel in Mount Laurel, New Jersey, and remained bound by his Employee Invention & Trade Secret Agreement.

56.    In January 2003, while Brawer held a position of trust and confidence at Mattel, Mattel's "Code of Conduct" was circulated to all Mattel employees worldwide. Included in the Code of Conduct were statements that:

> Employees and Directors have an obligation to protect the confidentiality of Mattel's proprietary information. Proprietary information is any information not generally known to the public that is useful to Mattel, that would be useful to its competitors or other third parties or that would be harmful to Mattel or its customers if disclosed. Proprietary information includes trade secrets, revenue and profit information and projections, new product information, marketing plans, design and development efforts, manufacturing processes and any information regarding potential acquisitions, divestitures and investments.
>
> We can protect the security of Mattel's proprietary information by limiting access to it. Confidential information should not be discussed with those who are not obligated to maintain the information in confidence and in public places where the

EXHIBIT _22_

163.2

1    information is not likely to be kept secret, such as planes,

2    restaurants and elevators.  The obligation to preserve confidential

3    information continues even after employment ends.

4  The Code of Conduct applied to Brawer and required that he meet his obligations

5  under the Code of Conduct.

6        57.  By 2003, Brawer had advanced within Mattel to a Senior Vice

7  President position over customer marketing, a position of trust and confidence.  In

8  his executive position, Brawer was provided access to information that was both

9  sensitive and confidential, including, but not limited to, detailed information related

10  to development, manufacture, marketing, pricing, shipping, and performance of

11  Mattel's then-current and anticipated future product lines, and other confidential

12  business plans between Mattel and its most significant retail customers.

13        58.  In December 2003, Alan Kaye, Mattel's Senior Vice President of

14  Human Resources, asked Brawer whether he was discussing potential employment

15  with MGA.  Brawer denied that he had been in contact with MGA and represented

16  that he would not talk to MGA.  Throughout 2004, Mattel reminded and stressed to

17  its employees, including Brawer, the importance of protecting Mattel's confidential

18  and proprietary materials and information.

19        59.  On March 18, 2004, in response to a survey from the President of

20  Mattel Brands, Matt Bousquette, confirming compliance with Mattel's Code of

21  Conduct, Brawer wrote back that he "applaud[ed] the company's vigorous

22  protection of it's [sic] intellectual property," reflecting Brawer's clear

23  understanding that Mattel required its proprietary information to be kept

24  confidential.

25        60.  In April 2004, Mattel promoted Brawer to Senior Vice

26  President/General Manager.  The General Manager position also is an executive

27  position of trust and confidence.  The role of a General Manager is to lead a cross-

28  functional "Customer Business Team."  Each General Manager is accountable for a

EXHIBIT

-46-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

4363.2

strategic partnership with a key Mattel retailer, covering all aspects of the business, including both traditional toy sales and retail development of licensed products.

61.   In or about late May 2004, Brawer began performing General Manager duties, working with one of Mattel's major retail customer accounts. Thereafter, Brawer began receiving information related not only to the Senior Vice President, Customer Marketing position that he still formally held, but also began receiving detailed information related to his role as General Manager.  Brawer began requesting and analyzing detailed information related to Mattel and its four key retail accounts.

62.   On September 15, 2004, Brawer left work at noon for observance of Rosh Hashanah.  As Brawer left, he carried a large cardboard box with binders and other materials.  Several hours after his departure, Brawer instructed his assistant to print Mattel's 2004 Sales Plan for one of Mattel's significant customers and to provide it to him, falsely claiming he needed it for a meeting

63.   On September 17, 2004, Brawer returned to Mattel and immediately informed his supervisor that he was leaving Mattel, effective October 1, 2004, to work for competitor MGA.

64.   On September 20, 2004, Mattel hand-delivered a letter to Brawer reminding him of his continuing obligation to preserve the confidentiality of Mattel's proprietary information and trade secrets not only through October 1, 2004, but continuing beyond the termination of his employment.

65.   At his exit interview on September 29, 2004, Mattel reminded Brawer that he had ongoing duties of confidentiality to Mattel, even after the termination of his employment.  Brawer was given a copy of his Original Confidentiality Agreement, which he had signed on April 22, 1996, and another copy of the Code of Conduct.  During the exit interview, however, Brawer noted that he had not signed the Code of Conduct, which he intended and Mattel understood to mean that Brawer believed he was not bound by Mattel's policy

EXHIBIT _____ 22

1  because he had not signed it. Brawer was unwilling to complete or sign the form

2  that sought to confirm that Brawer understood his ongoing obligations under the

3  Code of Conduct, which included the obligation to preserve the confidentiality of

4  Mattel's proprietary and trade secret information.

5        66.   On October 1, 2004, Brawer's final day of employment with

6  Mattel, Mattel hand-delivered to Brawer a letter that, among other things, reminded

7  Brawer of his confidentiality obligations to Mattel under the Code of Conduct.

8        67.   Upon joining MGA, Brawer became its Executive Vice-

9  President of Sales and Marketing. In that role he was responsible for MGA's sales

10  worldwide. As part of those responsibilities, Brawer had and continues to have

11  responsibility for MGA's accounts with the same retailers that he worked with

12  while at Mattel.

13        68.   Brawer represented during his Mattel exit interview that he had

14  returned all proprietary information to Mattel. That representation was false.   On

15  information and belief, Brawer removed proprietary and trade secret information

16  from Mattel that he did not return. Mattel is informed and believes that Brawer did

17  not return to Mattel, for example, the information contained in his contacts file.

18  The contacts file included contact information for Mattel customers, most notably

19  TRU, and extensive contact information for Mattel employees, including titles, e-

20  mail addresses and telephone numbers.

21        69.   Mattel has recently learned that Brawer has been using that

22  contact information on a regular basis, including within recent months. Since

23  leaving Mattel, Brawer has had contacts with Mattel employees, both by telephone

24  and by electronic mail. Based on his knowledge of Mattel's operations and the

25  roles of certain Mattel employees, he has targeted certain Mattel employees who

26  have broad access to Mattel proprietary information in an effort to induce and

27  encourage them to join MGA and to steal or otherwise wrongfully misappropriate

28  Mattel confidential information and trade secrets. Brawer has done so by

EXHIBIT _____ 22

2154363.2

1   promising these Mattel employees salaries 25 percent or more higher than they earn

2   at Mattel and stating to them that they should not be concerned by legal action

3   taken by Mattel to protect its trade secrets and its rights because such claims are

4   hard to prove and easy to defeat.

5   **VI.  MGA STEALS MATTEL TRADE SECRETS IN CANADA**

6          70.   In an effort to increase its market share and sales in Canada and

7   elsewhere, MGA stole Mattel trade secrets regarding Mattel's customers, sales,

8   projects, advertising and strategy, not only for Canada, but the United States and

9   the rest of the world.

10         71.   Janine Brisbois was a Director of Sales for the Girls Division in

11  Canada.  Mattel hired her as a National Account Manager in August 1999.  When

12  she was hired as a Mattel employee, Brisbois agreed that she would preserve and

13  would not disclose Mattel's proprietary or confidential information.  For example,

14  Brisbois agreed:

15         You must keep Mattel's Proprietary Information confidential,

16         and you may only use or disclose such information as necessary

17         to perform your job responsibilities in accordance with Mattel

18         policies.  Your obligation to keep Mattel's Proprietary

19         Information confidential will continue even after any termination

20         of your employment with your employer.

21         . . .

22         Mattel takes steps to maintain the secrecy and confidential nature

23         of Mattel's Proprietary Information and, if a competitor

24         discovered Mattel's Proprietary Information, it could

25         significantly damage Mattel and your Employer.

26         72.   While with Mattel, Brisbois had responsibility for Mattel's

27  account with TRU and later had responsibility for Mattel's Wal-Mart account.  In

28  her capacity as Sales Director-Wal-Mart/CTC/Girls Team, Brisbois had access to

EXHIBIT _____

PAGE _____

54363.2

-49-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

Mattel confidential and proprietary information regarding Mattel's future product lines, advertising and promotional campaigns and product profitability.

73.   On September 26, 2005, Brisbois resigned from Mattel to take a position as Vice President of Sales at MGA.  Mattel is informed and believes that in that position Brisbois has responsibility for MGA's accounts with both TRU and Wal-Mart.  During Brisbois' exit interview she was specifically asked whether she was "taking anything."  Brisbois responded, "No."  Both during and after her exit interview, Brisbois was advised by Mattel of her obligations to preserve Mattel's confidential and proprietary information.

74.   Mattel is informed and believes that Brisbois spoke with Isaac Larian, MGA's CEO, on September 22, 2005 at approximately 8:30 p.m., when he called Ms. Brisbois at her home.  Mattel subsequently learned that on the same day that she spoke with Mr. Larian and four days before she resigned, Brisbois copied approximately 45 Mattel documents on to a USB or "thumb" drive with the volume label "BACKPACK."  On information and belief, Brisbois removed the thumb drive from Mattel Canada's office by concealing it in her backpack or gym bag the last time that she left that office.  These documents contained Mattel trade secret and proprietary information, and included:

- a document containing the price, cost, sales plan and quantity of every Mattel product ordered by every Mattel customer in 2005 and 2006;
- the BARBIE television advertising strategy and information concerning sales increases generated by television advertisements;
- competitive analysis of Mattel vis-à-vis its competitors in Canada;
- an analysis of Mattel's girls business sales beginning in 2003 and forecasts through 2006;
- profit and loss reviews for Mattel's products being sold in Wal-Mart, including margins and profit in not only Canada, but in the United States and Mexico; and

EXHIBIT _____ 22

-50-

PAGE _____ 179

SECOND AMENDED ANSWER AND COUNTERCLAIMS

363.2

1      •  a document containing the product launch dates and related advertising

2         for all Mattel new products between Fall 2005 and Spring 2006.

3         75.   After Mattel discovered that Brisbois had copied these sensitive

4 documents to a thumb drive, Mattel notified Canadian law enforcement authorities.

5 Canadian law enforcement authorities recovered from Brisbois a thumb drive with

6 the volume label "BACKPACK" containing the documents that Brisbois had

7 copied from Mattel's computer system.  Mattel later learned that while she was

8 working as a Vice President of Sales at MGA, Brisbois accessed and modified

9 documents on that thumb drive.

10        76.   After joining MGA, Brisbois repeatedly traveled to MGA's

11 offices in Van Nuys, California and met with Larian and Brawer.  In February,

12 2006, knowing that Mattel trade secrets had been seized from MGA's Mexico City

13 offices and that at least three MGA employees were under criminal investigation,

14 MGA nonetheless issued a press release trumpeting its 2005 performance, with

15 Larian himself concluding, "Our international teams in Mexico and Canada have

16 done a fantastic job."

**VII.  MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL TO**

**JOIN MGA TO MISAPPROPRIATE MATTEL TRADE SECRETS**

**FOR THE BENEFIT OF MGA**

20        77.   In the past few years, MGA has hired directly from Mattel's

21 United States operations at least 25 employees, from Senior Vice-President level to

22 lower level employees.  On information and belief, many of these employees were

23 specifically targeted and recruited by MGA, including by Larian and Brawer, based

24 on the Mattel confidential and proprietary information they could access.  Many of

25 these employees had access to information that Mattel considers to be highly

26 proprietary and confidential.  Mattel believes that some of those former Mattel

27 employees may be observing their obligations not to misappropriate, disclose or

28 use Mattel's confidential and proprietary information.  Mattel is informed and

EXHIBIT _____

63.2