1  believes, however, that certain additional employees accessed, copied and took

2  from Mattel confidential and proprietary information, including Mattel's strategic

3  plans; business operations, methods and systems; marketing and advertising

4  strategies and plans; future product lines; product profit margins; and customer

5  requirements. The misappropriated confidential and proprietary information

6  included information that these Mattel employees were not authorized to access.

7  On information and belief, the misappropriated confidential and proprietary

8  information taken from Mattel is being disclosed to and used by MGA for the

9  benefit of MGA and to the detriment of Mattel.

10  **VIII.  LARIAN MAKES MISREPRESENTATIONS TO RETAILERS**

11  **ABOUT MATTEL'S PRODUCTS**

12  78.  Counter-defendants have engaged in other illegal practices in

13  their efforts to compete unfairly with Mattel. Larian has a practice of sending e-

14  mail messages to a "Bratz News" distribution list that Larian created or that was

15  created for him. Mattel is informed and believes that the recipients of e-mail

16  messages sent to the "Bratz News" distribution list include members of the media

17  as well as representatives of many of Mattel's most significant customers.

18  79.  On May 12, 2006, Larian sent an e-mail message to the "Bratz

19  News" distribution list that included a reference to Mattel's updated MY SCENE

20  MY BLING BLING product with real gems. Mattel had not publicly announced

21  this product at the time that Larian sent his May 12, 2006 e-mail. In fact, Mattel

22  had guarded the identification of this particular product.

23  80.  Shortly thereafter, Larian engaged in a campaign of calling

24  Mattel's most significant customers, including but not limited to Target and TRU,

25  regarding the MY SCENE MY BLING BLING product with real gems. In an

26  effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING

27  BLING product with real gems, Larian knowingly made false factual statements

28  about that product to each retailer. As of the writing of this Second Amended

EXHIBIT 22
-52-
SECOND AMENDED ANSWER AND COUNTERCLAIMS
PAGE 18

154363.2

1   Answer and Counterclaims, Mattel is aware that Larian represented to each retailer

2   that each was the only retailer to purchase the product and that Mattel would not be

3   supporting the product with television advertising.  At the time that Larian made

4   these statements, he knew them to be false.  As a result of Larian's

5   misrepresentations, at least one retailer cancelled its order for 75,000 units of the

6   MY SCENE MY BLING BLING product with real gems.  Only after Mattel

7   learned of Larian's misrepresentations and was able to correct them was Mattel able

8   to assure the retailer that Larian's representations were false and to persuade the

9   retailer to reinstate the order.

10          81.   Such conduct is not an isolated incident.  MGA and Larian, in an

11   effort to gain an unfair competitive advantage, repeatedly issued false and

12   misleading press releases.  In these press releases, MGA and Larian have

13   misrepresented Bratz's sales, Bratz's market share, Bratz's position vis-à-vis

14   Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market

15   share of Mattel's BARBIE products.

16                           **CLAIMS FOR RELIEF**

17                           **First Counterclaim**

18                           **Copyright Infringement**

19          **(Against MGA, MGA Entertainment (HK) Limited,**

20                  **Larian, Bryant and Does 4 through 10)**

21          82.   Mattel repeats and realleges each and every allegation set forth in

22   paragraphs 1 through 81, above, as though fully set forth at length.

23          83.   Mattel is the owner of copyrights in works that are fixed in

24   tangible media of expression and that are the subject of valid, and subsisting,

25   copyright registrations owned by Mattel.  These include, without limitation, the

26   works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-

27   378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-

28                                          EXHIBIT _____ *22*

378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273.

84.    Counter-defendants have reproduced, created derivative works from and otherwise infringed upon the exclusive rights of Mattel in its protected works without Mattel's authorization.  Counter-defendants' acts violate Mattel's exclusive rights under the Copyright Act, including without limitation Mattel's exclusive rights to reproduce its copyrighted works and to create derivative works from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

85.    Counter-defendants' infringement (and substantial contributions to the infringement) of Mattel's copyrighted works is and has been knowingly made without Mattel's consent and for commercial purposes and the direct financial benefit of Counter-defendants.  Counter-defendants, moreover, have deliberately failed to exercise their right and ability to supervise the infringing activities of others within their control to refrain from infringing Mattel's copyrighted works and have failed to do so in order to deliberately further their significant financial interest in the infringement of Mattel's copyrighted works.  Accordingly, Counter-defendants have engaged in direct, contributory and vicarious infringement of Mattel's copyrighted works.

86.    By virtue of defendants' infringing acts, Mattel is entitled to recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of suit and attorneys' fees, and all other relief permitted under the Copyright Act.

87.    Counter-defendants' actions described above have caused and will continue to cause irreparable damage to Mattel, for which Mattel has no remedy at law.  Unless Counter-defendants are restrained by this Court from continuing their infringement of Mattel's copyrights, these injuries will continue to occur in the future.  Mattel is accordingly entitled to injunctive relief restraining Counter-defendants from further infringement.

EXHIBIT _____ 22

2154363.2

## Second Counterclaim

### Violation of the Racketeer Influenced and Corrupt Organizations Act
### 18 U.S.C. §§ 1962(c) and 1964(c)
### (Against All Counter-defendants)

88.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 87, above, as though fully set forth at length.

89.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas and Brisbois were employed by and associated-in-fact with an enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "MGA Criminal Enterprise").  The MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois).  In addition, beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, were employed by and associated-in-fact with a second enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "Bratz Criminal Enterprise").

90.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and each of them, for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information, by

EXHIBIT _____

1154363.2

1 means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully

2 and knowingly conduct and participate, directly and indirectly, in the conduct of

3 the MGA Criminal Enterprise's affairs and, in the case of MGA, MGA

4 Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe Counter-

5 defendants, the Bratz Criminal Enterprise's affairs, through a pattern of

6 racketeering activity. Their actions include multiple, related acts in violation of:

7 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512

8 (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and

9 foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. §

10 506(a)(1)(A) (criminal copyright infringement).

11       91.  MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

12 Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

13 Brisbois, and the Other Former Employees, and each of them, shared the common

14 purpose of enabling MGA to obtain confidential, proprietary and otherwise

15 valuable Mattel property through improper means in order to assist MGA in

16 illegally competing with Mattel domestically and throughout the world.

17       92.  The MGA Criminal Enterprise and Bratz Criminal Enterprise as

18 described herein are and have been at all relevant times continuing enterprises

19 because, among other reasons, each is designed to and did unlawfully acquire the

20 confidential business information and property of Mattel and incorporated this

21 information and property into MGA's ongoing business, marketing strategies and

22 business methods, practices and processes. The conduct of each enterprise

23 continues through the date of this Second Amended Answer and Counterclaims and

24 is ongoing by virtue of MGA's continuing use of Mattel's information and property,

25 all to the detriment of Mattel.

26       93.  The pattern of racketeering activity, as defined by 18 U.S.C.

27 §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

28 of continuing criminal activity. This activity consists of multiple acts of

EXHIBIT ____ 22

63.2

1  racketeering by each member of the MGA Criminal Enterprise and Bratz Criminal

2  Enterprise, is interrelated, not isolated and is perpetrated for the same or similar

3  purposes by the same persons.  This activity extends over a substantial period of

4  time, up to and beyond the date of this Second Amended Answer and

5  Counterclaims.  These activities occurred after the effective date of 18 U.S.C.

6  §§ 1961 *et seq.*, and the last such act occurred within 10 years after the commission

7  of a prior act of racketeering activity.  These racketeering activities included

8  repeated acts of:

(a)  <u>Mail Fraud</u>:  Counter-defendants MGA, MGA Entertainment

(HK) Limited, MGA de Mexico, Larian, Bryant, Machado and

Does 4 through 10, aided and abetted by each other and some or

all of the remaining members of the MGA Criminal Enterprise,

having devised a scheme or artifice to defraud Mattel of its

confidential trade secret information and property by conversion,

false representations, concealment and breaches of fiduciary duty,

did for the purpose of furthering and executing such a scheme or

artifice to defraud, deposited or caused to be deposited matters or

things to be sent or delivered by the Postal Service, or any private

or commercial interstate carrier, or took or received matters or

things therefrom, or knowingly caused matters or things to be

delivered by mail or such carrier according to the direction

thereon, or at the place at which it is directed to be delivered by

the person to whom it is addressed, in violation of 18 U.S.C.

§ 1341 and 18 U.S.C. § 2, as alleged with greater particularity in

the foregoing paragraphs and as evidenced by, among other

things, the true and correct copies of communications and other

evidence included in Exhibit C;

EXHIBIT _____22_____

PAGE _____186_____

SECOND AMENDED ANSWER AND COUNTERCLAIMS

63.2

(b) <u>Wire Fraud</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, having devised a scheme or artifice to defraud Mattel of its confidential and trade secret information and property by conversion, false representations, concealment and breaches of fiduciary duty, did for the purpose of furthering and executing such a scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other things, the true and correct copies of communications and other evidence included in Exhibit C;

(c) <u>Tampering With a Witness, Victim or Informant</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by:

    i.    altering Bryant's contract with MGA relating to Bratz to conceal evidence that Bryant faxed the contract from the BARBIE COLLECTIBLES department of Mattel, using a fax

EXHIBIT _____ 23

PAGE _____ 187

SECOND AMENDED ANSWER AND COUNTERCLAIMS

363.2

1    machine owned by Mattel and while Bryant was employed by

2    Mattel;

3          ii.    altering numerous original Bratz drawings created

4    by Bryant by adding false and misleading date notations of

5    "8/1998" and "© 8/1998" to the drawings even though the

6    drawings were not created in August 1998; and

7          iii.    destroying electronic and other evidence, including

8    by destroying evidence previously contained on Carter Bryant's

9    and Isaac Larian's computer hard drives.

10          Such actions are in violation of 18 U.S.C. § 1512 and 18

11    U.S.C. § 2, as alleged with greater particularity in the foregoing

12    paragraphs;

13        (d)    <u>Interstate and Foreign Travel in Aid of Racketeering Enterprises</u>:

14    Counter-defendants MGA, MGA Entertainment (HK) Limited,

15    MGA de Mexico, Larian, Bryant, Machado and Does 4 through

16    10, aided and abetted by each other and some or all of the

17    remaining members of the MGA Criminal Enterprise, traveled in

18    interstate and foreign commerce, or used the mail or any facility

19    in interstate or foreign commerce, with the intent to promote,

20    manage, establish, carry on and facilitate the promotion,

21    management, establishment and carrying on of unlawful activity,

22    *i.e.* bribery, in violation of the laws of the State of California,

23    *Cal. Penal Code* § 641.3, all in violation of 18 U.S.C. § 1952 and

24    18 U.S.C. § 2, as alleged with greater particularity in the

25    foregoing paragraphs;

26        (e)    <u>Criminal Copyright Infringement</u>: Counter-defendants MGA,

27    MGA Entertainment (HK) Limited, MGA de Mexico, Larian,

28    Bryant, Machado and Does 4 through 10, aided and abetted by

2154363.2

EXHIBIT _____ 22

-59-

PAGE _____

1        each other and some or all of the remaining members of the MGA

2        Criminal Enterprise, willfully infringed Mattel's copyrights,

3        including with respect to documents containing Mattel trade

4        secret and confidential information, for purposes of commercial

5        advantage and private financial gain, all in violation of 18 U.S.C.

6        § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater

7        particularity in the foregoing paragraphs.

8        94.    The persons alleged herein to have violated 18 U.S.C. § 1962(c)

9 are separate from, though employed by or associated with, MGA, the MGA Group,

10 the Bryant Group, the Mexican Group and the Canadian Group.

11        95.    MGA had a role in the racketeering activity that was distinct

12 from the undertaking of those acting on its behalf. MGA also attempted to benefit,

13 and did benefit, from the activity of its employees and agents alleged herein, and

14 thus was not a passive victim of racketeering activity, but an active perpetrator.

15        96.    Mattel has been injured in its business or property as a direct

16 and proximate result of the Counter-defendants' and the other enterprise members'

17 violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts

18 constituting the pattern of racketeering activity.

19        97.    As a result of the violations of 18 U.S.C. § 1962(c), by MGA,

20 MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado,

21 Does 4 through 10, Brawer, Trueba, Vargas, Brisbois and the Other Former

22 Employees, Mattel has suffered substantial damages, in an amount to be proved at

23 trial. Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its

24 general and special compensatory damages, plus interest, costs and attorneys, fees,

25 incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

26

27

28

EXHIBIT _____ 22

**Third Counterclaim**

**Conspiracy To Violate the Racketeer**

**Influenced And Corrupt Organizations Act**

**(18 U.S.C. §§ 1962(d) and 1964(c))**

**(Against All Counter-defendants)**

98.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 97, above, as though fully set forth at length.

99.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

100.   These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

101.   The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), including acts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18

EXHIBIT ____

-61-

!154363.2

1   U.S.C. § 2; acts of tampering with witnesses, victims or informants in violation of

2   18 U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of

3   racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; and

4   acts of criminal copyright infringement in violation of 18 U.S.C. § 2319(a) and 17

5   U.S.C. § 506(a)(1)(A).

6        102. Counter-defendants and the other members of the MGA Criminal

7   Enterprise schemed to defraud Mattel and steal its property and trade secret

8   information by means of false representation, breaches of fiduciary duty,

9   conversation and concealment, as more fully set forth in the foregoing paragraphs.

10        103. In furtherance of this unlawful conspiracy, and to effect its

11   objectives, Counter-defendants and various co-conspirators committed numerous

12   overt acts, including but not limited to those set forth in the foregoing paragraphs.

13        104. Mattel has been injured in its business or property as a direct and

14   proximate result of the Counter-defendants' and the other enterprise members'

15   violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts

16   constituting the pattern of racketeering activity.

17        105. As a result of the conspiracies between and among all Counter-

18   defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has

19   suffered substantial damages, in an amount to be proved at trial. Pursuant to 18

20   U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

21   compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

22   of Counter-defendants' violations of 18 U.S.C. § 1962(d).

**Fourth Counterclaim**

**Misappropriation of Trade Secrets**

**(Against Counter-defendants MGA, MGA de Mexico,**

**Larian, Machado and Does 4 through 10)**

27        106. Mattel repeats and realleges each and every allegation set forth in

28   paragraphs 1 through 105, above, as though fully set forth at length.

EXHIBIT _22_

_191_

1  107. As used herein, "Trade Secret Material" shall mean the

2  documents, materials and information stolen by Machado, Trueba, Vargas,

3  Brisbois, the Other Former Employees, and other persons acting for, on behalf of or

4  at the direction of MGA and/or Larian. Prior to their theft by Counter-defendants,

5  the Trade Secret Materials gave Mattel a significant competitive advantage over its

6  existing and would-be competitors, including MGA. This advantage, as to MGA,

7  has now been compromised as a result of Counter-defendants' unlawful activities.

8  108. Mattel made reasonable efforts under the circumstances to

9  maintain the confidentiality of the Trade Secret Materials, including by having

10  employees and consultants who may have access the Trade Secret Materials sign

11  confidentiality agreements that oblige them not to disclose the Trade Secret

12  Materials or characteristics of the Trade Secret Materials; by limiting the

13  circulation of said materials within Mattel; by protecting and limiting access to

14  computers with log-in identifications and passwords; by limiting each employee's

15  access to electronic files to those that the particular employee needs to access; by

16  educating employees on the nature of Mattel's information that is confidential and

17  proprietary; and by reminding employees on a regular and periodic basis of their

18  obligation to protect and maintain Mattel's confidential and proprietary

19  information.

20  109. Mattel's Trade Secret Materials derive independent economic

21  value from not being generally known to the public or to other persons who can

22  obtain economic benefit from their disclosure.

23  110. Counter-defendants have illegally obtained the trade secret

24  materials, as set forth above, and through other means of which Mattel is presently

25  unaware.

26  111. Counter-defendants have used and disclosed Mattel's Trade

27  Secret Materials without Mattel's consent and without regard to Mattel's rights, and

28

EXHIBIT _____ 22

3.2

1   without compensation, permission, or licenses for the benefit of themselves and
2   others.

3     112. Counter-defendants' conduct was, is, and remains willful and
4   wanton, and was taken with blatant disregard for Mattel's valid and enforceable
5   rights.

6     113. Counter-defendants' wrongful conduct has caused and, unless
7   enjoined by this Court, will continue in the future to cause irreparable injury to
8   Mattel. Mattel has no adequate remedy at law for such wrongs and injuries. Mattel
9   is therefore entitled to a permanent injunction restraining and enjoining Counter-
10  defendants, and each of them, as well as their agents, servants, and employees, and
11  all persons acting thereunder, in concert with, or on their behalf, from further using
12  in any manner Mattel's trade secrets.

13    114. In addition, as a proximate result of Counter-defendants'
14  misconduct, Mattel has suffered actual damages, and Counter-defendants have been
15  unjustly enriched.

16    115. The aforementioned acts of the Counter-defendants were willful
17  and malicious, including in that Counter-defendants misappropriated Mattel's trade
18  secrets with the deliberate intent to injure Mattel's business and improve their own.
19  Mattel is therefore entitled to enhanced damages. Mattel is also entitled to
20  reasonable attorney's fees.

21      **Fifth Counterclaim**
22      **Breach of Contract**
23      **(Against Bryant)**

24    116. Mattel repeats and realleges each and every allegation set forth in
25  paragraphs 1 through 115, above, as though fully set forth at length.

26    117. Pursuant to his Employment Agreement, Bryant agreed that he
27  would not, without Mattel's express written consent, engage in any employment or
28  business other than for Mattel or assist in any manner any business competitive

EXHIBIT _____22_____

PAGE _____193_____

-64-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

4363.2

1   with the business or future business plans of Mattel during his employment with

2   Mattel. Pursuant to his Mattel Employment Agreement, Bryant further assigned to

3   Mattel all right, title and interest in "inventions," including without limitation

4   "designs" and other works that he conceived, created or reduced to practice during

5   his employment by Mattel. In addition, pursuant to the Conflict Questionnaire,

6   Bryant certified that, other than as disclosed, he had not worked for any competitor

7   of Mattel and had not engaged in any business venture or transaction involving a

8   Mattel competitor that could be construed as a conflict of interest. Bryant further

9   promised that he would notify his supervisor immediately of any change in his

10  situation that would cause him to change any of the foregoing certifications or

11  representations.

12          118. The Employment Agreement and the Conflict Questionnaire are

13  valid, enforceable contracts, and Mattel has performed each and every term and

14  condition of the Employment Agreement and Conflict Questionnaire required to be

15  performed by Mattel.

16          119. Bryant materially breached the foregoing contracts with Mattel,

17  in that, among other things, he secretly aided, assisted and worked for a Mattel

18  competitor during his employment with Mattel without the express written consent

19  of Mattel.

20          120. As a consequence of Bryant's breach, Mattel has suffered and

21  will, in the future, continue to suffer damages in an amount to be proven at trial.

22  Such damages include, without limitation, the amounts paid by the competitor to

23  Bryant during his Mattel employment; the amounts paid by MGA to Bryant during

24  his Mattel employment; the amount that Mattel paid Bryant during the time he

25  wrongfully worked with MGA; the value of information and intellectual property

26  owned by Mattel which Bryant provided to MGA; the value of the benefits that

27  MGA obtained from Bryant during the time he was employed by Mattel; and the

28

EXHIBIT _____ 22

PAGE _____ 194

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

value of the benefits that MGA obtained from Bryant as a result of the work he performed for or with MGA during his Mattel employment.

121. Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies." Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

### Sixth Counterclaim

### Intentional Interference with Contract

### (Against MGA, Larian and Does 4 through 10)

122. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 121, above, as though fully set forth at length.

123. Valid agreements existed between Mattel and Bryant, Brawer, Machado, Trueba, Vargas, Brisbois and the Other Former Employees (collectively, the "Mattel Employees")

124. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees had a duty under their agreements not to work for or assist any competitor of Mattel, such as MGA. In addition, at all times mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had assigned to Mattel, and was obligated to disclose to Mattel all inventions, including designs and other works, created, conceived or reduced to practice during their employment with Mattel.

EXHIBIT _22_

PAGE _195_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

21543363.2

125. Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, induced and encouraged the Mattel Employees to breach their contracts with Mattel.

126. As a direct and proximate result of Counter-defendants' efforts and inducements, the Mattel Employees did breach their contracts with Mattel.

127. As a result of said breaches, Mattel has suffered damages and will imminently suffer further damages, including the loss of its competitive position and lost profits, in an amount to be proven at trial.

128. Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Seventh Counterclaim

### Breach of Fiduciary Duty

### (Against Bryant and Machado)

129. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 128, above, as though fully set forth at length.

130. Bryant and Machado held positions of trust and confidence with Mattel. In their positions, Bryant and Machado had access to and were entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of their job assignments and duties. In their positions, Bryant and Machado also represented Mattel in its dealings with third parties and, in actions in the course and scope of their employment with Mattel, were agents of Mattel. They confirmed their relationship of trust with Mattel in respective employee agreements. Bryant and Machado thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests

EXHIBIT _____ 22

PAGE ____ 190

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1   or that would deprive Mattel of any opportunities, profit or advantage which Bryant

2   or Machado might bring to Mattel.

3        131. Bryant breached his fiduciary duty to Mattel in that, while

4   employed by Mattel, he secretly aided and assisted a competitor of Mattel,

5   including without limitation by entering into an agreement with a Mattel

6   competitor. As alleged above, Bryant also breached the aforementioned duty by

7   using Mattel property and resources for the benefit of, and to aid and assist, himself

8   personally and MGA.

9        132. Machado breached his fiduciary duty to Mattel, in that while

10  employed by Mattel, he secretly aided and assisted a competitor of Mattel by,

11  among other things, misappropriating Mattel trade secret and proprietary

12  information and providing said information to officers of MGA. Machado also

13  breached the aforementioned duty by using Mattel property and resources for the

14  benefit of, and to aid and assist, himself personally and MGA.

15       133. As a direct and proximate result of Counter-defendants' wrongful

16  conduct, Mattel has incurred damages in an amount to be determined at trial.

17       134. Counter-defendants acted with malice, fraud and oppression, and

18  in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an

19  award of exemplary damages against Counter-defendants in an amount to be

20  determined at trial.

21       135. Furthermore, Counter-defendants' conduct has caused, and unless

22  enjoined will continue to cause, irreparable injury to Mattel that cannot be

23  adequately compensated by money damages and for which Mattel has no adequate

24  remedy at law. Accordingly, Mattel is entitled to an order restraining further

25  breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants

26  from continuing to benefit from such breach.

27

28

EXHIBIT ____22____

PAGE ____197____

SECOND AMENDED ANSWER AND COUNTERCLAIMS

4363.2

### Eighth Counterclaim

**Aiding and Abetting Breach of Fiduciary Duty**

**(Against MGA, Larian and Does 4 through 10)**

136. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 135, above, as though fully set forth at length.

137. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant held a position of trust and confidence at Mattel. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to secretly developing and designing Bratz while employed by Mattel and by secretly assisting Larian and MGA .

138. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) held positions of trust and confidence at Mattel. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to taking confidential trade secret information from Mattel's premises and providing that information to a competitor.

139. Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, encouraged, aided and abetted and gave substantial assistance to the Mattel Employees to breach their fiduciary duties to Mattel, knowing that their conduct would constitute breaches of their fiduciary duties to Mattel.

140. As a direct and proximate result of Counter-defendants' efforts, the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has incurred damages in an amount to be proven at trial. Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

EXHIBIT _____22_____

363.2

141. In taking the aforesaid actions, MGA, Larian and Does 4 through 10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

**Ninth Counterclaim**

**Breach of Duty of Loyalty**

**(Against Bryant and Machado)**

142. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 141, above, as though fully set forth at length.

143. As employees of Mattel, Bryant and Machado owed a duty of undivided loyalty to Mattel. Pursuant to this duty, Bryant and Machado could not compete with Mattel or assist a competitor of Mattel during their employment with Mattel. Pursuant to this duty, Bryant and Machado were required to always give preference to Mattel's business over their own, similar interests during the course of their employment with Mattel.

144. Bryant and Machado breached their duty of loyalty to Mattel in that, while employed by Mattel, they secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into agreements with a Mattel competitor. As alleged above, they also breached the aforementioned duty by using Mattel property and resources for the benefit of, and to aid and assist, themselves personally and the competitor of Mattel.

145. As a direct and proximate result of Counter-defendants' wrongful conduct, Mattel has incurred damages in an amount to be determined at trial.

146. Counter-defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against Counter-defendants in an amount to be determined at trial.

EXHIBIT _22_

PAGE _199_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1    147. Furthermore, Counter-defendants' conduct has caused, and unless

2    enjoined will continue to cause, irreparable injury to Mattel that cannot be

3    adequately compensated by money damages and for which Mattel has no adequate

4    remedy at law. Accordingly, Mattel is entitled to an order restraining further

5    breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-

6    defendants from continuing to benefit from such breach.

7    148. In breaching their duty of loyalty to Mattel, Bryant and Machado

8    acted with malice, fraud and oppression, and in conscious disregard of Mattel's

9    rights. Accordingly, Mattel is entitled to recover exemplary damages from

10   Counter-defendants in an amount to be determined at trial.

11                    **Tenth Counterclaim**

12          **Aiding and Abetting Breach of Duty of Loyalty**

13            **(Against MGA, Larian and Does 4 through 10)**

14   149. Mattel repeats and realleges each and every allegation set forth in

15   paragraphs 1 through 148, above, as though fully set forth at length.

16   150. MGA, Larian and Does 4 through 10 knew that Bryant, as an

17   employee of Mattel, owed a duty of loyalty to his employer. MGA, Larian and

18   Does 4 through 10 knew that this duty included an obligation on the part of Bryant

19   not to compete with Mattel or assist a competitor of Mattel during the term of his

20   employment with Mattel. MGA, Larian and Does 4 through 10 also knew that

21   Bryant was required to give preference to Mattel's business over his own, similar

22   interests or those of Mattel's competitors. or those of Mattel's competitors during

23   the course of his employment with Mattel.

24   151. MGA, Larian and Does 4 through 10 knew that the Mattel

25   Employees (excluding Bryant) were employed by Mattel, and, as employees of

26   Mattel, that they owed duties of loyalty to Mattel. MGA, Larian and Does 4

27   through 10 knew that these duties included an obligation on the part of the Mattel

28

EXHIBIT _22_

_-71-_     PAGE _20C_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

154363.2

1    Employees (excluding Bryant) not to compete with Mattel or assist a competitor of
2    Mattel during their Mattel employment.
3         152. Despite such knowledge, Counter-defendants MGA, Larian and
4    Does 4 through 10 intentionally and without justification solicited, encouraged,
5    aided and abetted and gave substantial assistance to the Mattel Employees to
6    breach their duties of loyalty to Mattel, knowing that their conduct would constitute
7    breaches of their duties of loyalty to Mattel.
8         153. As a further consequence of Counter-defendants' efforts, Mattel
9    has suffered injury and is entitled to compensatory damages in an amount to be
10   proven at trial.
11        154. In taking the aforesaid actions, MGA, Larian and Does 4 through
12   10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's
13   rights. Accordingly, Mattel is entitled to recover exemplary damages from
14   Counter-defendants in an amount to be determined at trial.

15                            **Eleventh Counterclaim**
16                                 **Conversion**
17                      **(Against All Counter-defendants)**

18        155. Mattel repeats and realleges each and every allegation set forth in
19   paragraphs 1 through 154, above, as though fully set forth at length.
20        156. Counter-defendants wrongfully converted Mattel property and
21   resources by appropriating and using them for their own benefit and gain and for
22   the benefit and gain of others, without the permission of Mattel.
23        157. Mattel was entitled to, among other things, the exclusive right
24   and enjoyment in property and tangible materials owned by Mattel, including
25   without limitation such proper and materials that were created by Bryant while he
26   was a Mattel product designer. Such property was taken by Bryant from Mattel to
27   further his own interests and, in at least some instances, provided by Bryant to
28   Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

EXHIBIT 22

PAGE 201

2154363.2

1    158.  In addition, Counter-defendants wrongfully converted Mattel's

2   property by removing the Trade Secret Materials in electronic and paper form from

3   Mattel's offices.  Counter-defendants did so without Mattel's permission and

4   continue to possess them.

5    159.  As a direct and proximate result of Counter-defendants' wrongful

6   conversion of Mattel property, including those relating to Bratz and Mattel's Trade

7   Secret Materials, Mattel has incurred damages.  Mattel, therefore, is entitled to

8   recover compensatory damages in an amount to be determined at trial.

9    160.   As a result of Counter-defendants' acts of conversion, Mattel is

10   entitled to damages in an amount sufficient to indemnify Mattel for the loss

11   suffered, which is not measured by the value of the property misappropriated, but

12   includes the lost profits that Mattel suffered as a result of the conversion or,

13   alternatively, the profits generated by the Counter-defendants that would not have

14   been generated but for the conversion.  Only such a measure of damages would

15   fully and fairly compensate Mattel for the injury it suffered due to Counter-

16   defendants' acts of conversion.

17    161.  Counter-defendants performed the aforementioned conduct with

18   malice, fraud and oppression, and in conscious disregard of Mattel's rights.

19   Accordingly, Mattel is entitled to recover exemplary damages from Counter-

20   defendants in an amount to be determined at trial.

21    162.  Furthermore, Counter-defendants' conduct has caused, and unless

22   enjoined will continue to cause, irreparable injury to Mattel that cannot be

23   adequately compensated by money damages and for which Mattel has no adequate

24   remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-

25   defendants from further conversion of Mattel property and resources and/or

26   restraining Counter-defendants from continuing to benefit from such conversion.

27

28

EXHIBIT _____22_____

PAGE _____202_____

2154363.2

-73-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

### Twelfth Counterclaim

**Unfair Competition**

**(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

**(Against All Counter-defendants)**

163.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 162, above, as though fully set forth at length.

164.  Section 17200 of the California Business and Professions Code prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

165.  By engaging in the foregoing conduct, Counter-defendants have, individually and in combination, engaged in unlawful, unfair and/or fraudulent acts of unfair competition in violation of both the common law of the state of California and *Cal. Bus. & Prof. Code* § 17200 *et seq.*  Such conduct included, without limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code* § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a). Such conduct also included, without limitation, MGA's and Larian's disparagement of Mattel's products and misrepresentations as alleged above.

166.  As a result of the aforementioned conduct, Mattel has suffered damages and will imminently suffer further damages, including but not limited to lost profits in an amount to be proven at trial.  No adequate remedy at law exists for the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel is entitled to an injunction enjoining Counter-defendants' continued wrongful acts. Mattel is also entitled to recover compensatory and exemplary damages pursuant to the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

EXHIBIT 22

PAGE 203

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

### Thirteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

167. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168. As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169. Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170. Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

### Prayer for Relief

WHEREFORE, Mattel respectfully requests judgment:

1.    For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

EXHIBIT ___

PAGE ___

4363.2

1   created or reduced to practice by Bryant during the term of his Mattel employment

2   and/or by any others then-employed by Mattel, as well as in all derivatives

3   prepared therefrom, and that Mattel is the true owner of the foregoing;

4         2.   For a declaration that any agreement between Bryant, on the one

5   hand, and MGA or any person or entity, on the other hand, in which Bryant

6   purported to assign any right, title or interests in any work that he conceived,

7   created or reduced to practice while a Mattel employee, including but not limited to

8   the Bratz designs, is void and of no effect;

9         3.   For an Order enjoining and restraining Counter-defendants, their

10  agents, servants and employees, and all persons in active concert or participation

11  with them, from further wrongful conduct, including without limitation from

12  imitating, copying, distributing, importing, displaying, preparing derivatives from

13  and otherwise infringing Mattel's copyright-protected works;

14        4.   For an Order, pursuant to 17 U.S.C. § 503(a) and other

15  applicable law, impounding all of Counter-defendants' products and materials that

16  infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles

17  by which copies of the works embodied in Mattel's copyrights may be reproduced

18  or otherwise infringed;

19        5.   For an Order mandating that Counter-defendants return to Mattel

20  all tangible items, documents, designs, diagrams, sketches or any other

21  memorialization of inventions created or reduced to practice during Bryant's

22  employment with Mattel as well as all Mattel property converted by Counter-

23  defendants;

24        6.   For an Order mandating specific performance by Bryant to

25  comply with and satisfy Bryant's contractual obligations to Mattel;

26        7.   That Mattel be awarded, and Counter-defendants be ordered to

27  disgorge, all payments, revenues, profits, monies and royalties and any other

28  benefits derived or obtained as a result of the conduct alleged herein, including

EXHIBIT _____

63.2

1    without limitation of all revenues and profits attributable to Counter-defendants'

2    infringement of Mattel's copyrights under 17 U.S.C. § 504;

3          8.    For an accounting of all profits, monies and/or royalties from the

4    exercise of ownership, use, distribution, sales and licensing of Bratz;

5          9.    For the imposition of a constructive trust over Bratz, including

6    without limitation registrations and applications for registrations relating thereto

7    made or filed by Counter-defendants and third parties, and all profits, monies,

8    royalties and any other benefits derived or obtained from Counter-defendant's

9    exercise of ownership, use, sale, distribution and licensing of Bratz;

10         10.    That Mattel recover its actual damages and lost profits;

11         11.    That Counter-defendants be ordered to pay exemplary damages

12    in a sum sufficient to punish and to make an example of them, and deter them and

13    others from similar wrongdoing;

14         12.    That Counter-defendants be ordered to pay treble its general and

15    special damages, plus interest, costs and attorney's fees incurred by reason of

16    Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

17         13.    That Counter-defendants be ordered to pay double damages due

18    to their willful and malicious misappropriation of Mattel's trade secrets with

19    deliberate intent to injure Mattel's business and improve its own;

20         14.    That Counter-defendants pay to Mattel the full cost of this action

21    and Mattel's attorneys' and investigators' fees; and

22

23

24

25

26

27

28

EXHIBIT _22_

PAGE _206_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1363.2

1           15.   That Mattel have such other and further relief as the Court may

2    deem just and proper.

3

4    DATED: July 12, 2007            QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP

5

6                                    By_____

7                                        John B. Quinn
                                         Attorneys for Defendant and Counter-
8                                        claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                    EXHIBIT ___22___

28                                                    PAGE ___207___

                                     -78-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1

## DEMAND FOR JURY TRIAL

2

3       Mattel, Inc. respectfully requests a jury trial on all issues triable

4    thereby.

5

6    DATED:  July 12, 2007          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
7

8                                   By _____
9                                      John B. Quinn
                                       Attorneys for Defendant and Counter-
10                                     claimant Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27       EXHIBIT ___22___

28       PAGE ___208___

# EXHIBIT 23

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 24**

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California  94111
Telephone:      (415) 774-2611
Facsimile:      (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production of Documents by Isaac Larian and for Award of Monetary Sanctions."  Specifically, Mattel seeks an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

EXHIBIT ___24___

PAGE ___225___

1

1  15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199,

2  207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents

3  withheld based on any claimed privilege.  Mattel also seeks an award of sanctions against Larian

4  in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing

5  this motion.  Larian submitted an opposition on December 5, 2007.[1]  Mattel submitted a reply on

6  December 10, 2007.  The matter was heard on December 14, 2007.  Having considered the

7  motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in

8  part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of

10  Documents and Things to Larian, the CEO and majority owner of MGA.  On August 6, 2007,

11  Larian filed his initial responses and objections.  The parties met and conferred, and on September

12  25, 2007, Larian served supplemental responses and objections.

13  Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the

14  276 Requests.  The parties met and conferred further, and Larian ultimately agreed to provide

15  further responses to 55 of the disputed 87 Requests.  Specifically, Larian agreed to supplement his

16  responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-

17  76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that

18  have not previously been produced."  MGA's Opposition at pp. 1-2.

19  The remaining 32 Requests at issue can be grouped into ten categories: (1) personal

20  financial data; (2) communications with Mattel employees; (3) statements to the media; (4)

21  telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market

22  research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's

23  arbitration; and (10) MGA Hong Kong and MGA Mexico.

24  //

---

26  [1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should
not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim
27  statement of Mattel's position.  The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve
Mattel's motion on the merits.

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _24_

PAGE _225_

2

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

### The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____24_____

PAGE _____226_____

3

1    he will do so.  Second, Larian's agreement to produce responsive documents is apparently limited

2    to documents from his so-called "personal files."  See Opposition at 2:2-3.

3         Mattel's counsel "never agreed that Larian could limit his response to the above requests

4    to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5    response to documents in Larian's 'personal files.'"  Supp. Decl. of Scott B. Kidman.

6    Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7    Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8    parties' "possession, custody or control."  The limitation is also unworkable because, as Mattel

9    points out, it "would create a situation by which responsive and highly relevant documents might

10   never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11   Larian, on the other hand, deems [a] document not to be part of his 'personal files.'"  Reply at p.6.

12   Market Research for Products Not at Issue:  Request Nos. 79-81

13        In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14   Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In

15   his supplemental response, Larian agrees to produce the following documents, subject to his

16   general objections:

17        Larian will produce all documents within his possession, custody, or control that
          relate to focus groups for "MGA contested products" and "Mattel contested

18        products," as those terms are defined in Mattel's First Requests for Production
          regarding Claims of Unfair Competition, if any, and that have not already been

19        produced, that he discovers in the course of his reasonable search and diligent
          inquiry, and to which no privilege or other protection applies, including without

20        limitation, the attorney-client privilege or attorney's work product doctrine.

21   Mattel's Consolidated Separate Statement at pp. 20-21.

22        In Request No. 80, Mattel seeks all documents relating to any services or work performed

23   by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

24   videotapes, summaries, notes and reports associated therewith.  In his supplemental response,

25   Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

26   the request and to which no privilege or other protection applies.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____24_____

PAGE ____227____

4

In Request No. 81, Mattel seeks all documents relating to Alaska Momma.  In his supplemental response, Larian agrees to produce all documents relating or referring to Bratz, Angel or Bryant that are responsive to the request and to which no privilege or other protection applies.

Mattel contends that the requests are as narrowly tailored as possible to capture relevant information.  More specifically, Mattel contends that Request No. 79 seeks documents that bear directly on the timing of the development of Bratz, as well as MGA's unfair competition claims and Mattel's defense thereto.  Mattel contends that the requested documents may demonstrate that MGA is guilty of copying Mattel's Barbie and My Scene products.

Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome.   As an example, Larian points to Request No. 80, which requests all documents relating to any services or work performed by L.A. Focus, regardless of whether that work has any relation to the claims and defenses in the action or any of the products at issue.  Larian similarly contends that Request Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or defense in this case.

Mattel's motion to compel Larian to produce all documents responsive to Request No. 79 is granted.  The request is reasonably limited in subject matter to Bratz and Angel.  The requested documents are relevant to several issues in the case, including the origin, conception and creation of Bratz.  The requested documents are also relevant to the unfair competition claims.  Larian's supplemental response to Request No. 79 is unduly restrictive.  Among other things, the definitions of "contested MGA products" encompass only those products that provide a basis for any claim by MGA against Mattel, and not claims by Mattel against MGA.

Mattel's motion to compel Larian to produce all documents responsive to Request Nos. 80-81 is denied.  These requests, as drafted, are clearly overbroad because they have no reasonable limitations on subject matter or time.  In particular, the requests are directed to L.A. Focus and Alaska Momma without regard to whether the services or work the companies provided has any relation to any product at issue.

Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's supplemental response is too narrow and "may result in the exclusion of highly relevant documents because the project, concept or design that is the subject of the focus group is deemed not to relate to something then known as Bratz or Angel." However, Larian acknowledges that these types of hypothetical documents would still fall within the narrower scope of production proposed in his supplemental response.

Mattel also contends that it is entitled to all of the requested documents called for by Request No. 80 because they are relevant to credibility and bias, particularly if the documents show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A. Focus used. It is, however, not apparent how deviations from standard procedures would impact credibility or bias.

As to Request No. 81, Mattel contends that the documents showing the relationship between Larian or MGA and Alaska Momma are relevant, even if they do not themselves specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's and Bryant's stories about how and when they came to be introduced. Mattel also contends that documents showing other dealings between Larian or MGA and Alaska Momma are relevant to the issues of bias and credibility. Mattel's supposition about the types of documents that might exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also not limited by either subject matter or time.

Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in accordance with his supplemental responses.

Bryant's Attorney and Niece: Request Nos. 113-115

In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No. 114, Mattel seeks all documents, including without limitation all communications, between

EXHIBIT ___24___

PAGE ___229___

Larian or MGA and Anne Wang. In Request No. 115, Mattel seeks documents relating to Brooke Gilbert, Bryant's niece. In his supplemental responses, Larian agrees to produce documents relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or other protection applies. Thus, the only issue is whether Larian should be required to produce responsive documents that do not relate to Bratz, Angel or Bryant.

Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin and conception of Bratz and the timing thereof. Mattel also contends that the documents may disclose relevant information regarding Mattel's claims for breach of contract and inducing breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's contractual obligations with Mattel. Mattel also contends that Larian has failed to carry his burden of demonstrating that the requests are overly burdensome.

Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114 are inadequate because the limitations on scope may eliminate otherwise relevant documents that do not specifically refer to Bratz, Angel or Bryant. For example, Mattel contends that communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or Bryant may be relevant to the issues of credibility and bias.

Mattel contends that Request No. 115 seeks documents that are relevant to determine whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software that had been installed and run on the hard drive. Bryant claims to have given his computer to his niece. Mattel also contends that the requested documents are relevant to the issues of credibility and bias. Further, Mattel contends that Larian's supplemental response to Request No. 115 is inadequate, because evidence of any communication between Larian and his niece, regardless of subject matter, is significant.

Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome because they lack any subject matter or time constraints. Further, Larian contends that the requests constitute an improper fishing expedition and necessarily sweep in documents that are not relevant to any claim or defense.

//

EXHIBIT ___24___

PAGE ___236___

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

1      Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied.  The

2  requests are overbroad because they are not focused on relevant subject matter and are untethered

3  to any claim or defense.  Although Mattel asserts that responsive documents unrelated to Bratz,

4  Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5  is too remote to justify the breadth of Mattel's requests.

6      Larian's supplemental responses are sufficient to provide Mattel with relevant and

7  responsive documents.  Larian shall produce documents responsive to Request Nos. 113-115 in

8  accordance with his supplemental responses.

9

10  The Larian Brothers' "Arbitrations and Suits":  Request Nos. 123-125

        In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

11  suits between Larian and his brother, Farhad Larian.  In Request No. 124, Mattel seeks all

12  documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

13  Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

14  and/or audio recordings and sworn testimony given by any person in such suit or arbitration

15  proceedings.  In Request No. 125, Mattel seeks all documents relating to any and all settlements,

16  resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

17  Larian.  In his supplemental responses, Larian agrees to produce all documents referring or

18  relating to Bratz that are responsive to the requests and to which no privilege or other protection

19  applies.

20      Mattel contends that the court has already ruled that the arbitration proceedings between

21  Larian and his brother are relevant because they involve, among other matters, the conception and

22  creation date for Bratz.  Mattel contends that Larian's supplemental responses improperly limit

23  the requests to the exclusion of potentially relevant documents.  For example, Mattel contends

24  that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

25  to the timing of the development of Bratz, whether or not they specifically refer to Bratz.  Mattel

26  also contends that the requested documents are relevant to the value of the Bratz brand and

27  the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28

EXHIBIT _____24_____

PAGE _____231_____

8

1   example, profits from the sale and licensing of Bratz and other information that would impeach
2   Larian's testimony that he has not made any profits from Bratz.  Further, Mattel contends that the
3   requested documents may lead to evidence of the assessments or valuations of the net worth or
4   value of MGA or Larian, regardless of any reference to Bratz specifically.  Mattel also contends
5   that settlement documents may contain information that bears on the merit of Farhad Larian's
6   claims and the value of Bratz.  Mattel also claims that the requested documents are relevant to
7   motive, intent, bias and credibility.
8          Larian contends the instant requests are overbroad and unduly burdensome.  Further,
9   Larian contends that the relationship of the requested documents to any of the claims or defenses
10  in the present action is questionable, and the existence of such documents is conjectural.
11  Moreover, Larian contends that many of the categories of documents of interest to Mattel are
12  already the subject of other requests.  Larian also contends that Request Nos. 123-125 impose an
13  undue burden because of the protective orders in place that strictly limit the use of any documents
14  from an arbitration and suit between Larian and his brother.  Larian represents that he is currently
15  working with Mattel and his brother in an attempt to achieve suitable modifications to the orders
    that are agreeable to all parties.
16         Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is
17  denied.  The requests are clearly overbroad in calling for all documents from the arbitrations and
18  suits between Larian and his brother, without any subject matter limitations.  Furthermore, these
19  requests are unduly burdensome to the extent they require production of documents that do not
20  refer or relate to Bratz.  Such documents have marginal relevance, at best, to the claims and
21  defenses in the case.
22         Larian's supplemental responses to Request Nos. 123 -125 are sufficient.  Larian's
23  agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will
24  enable Mattel to obtain documents relevant to the claims and defenses in the case, including many
25  of the categories of documents of interest to Mattel.  For example, under Larian's proposed
26  limitation, documents that relate to the business, activities and plans of MGA in 2000 that also
27  refer or relate to Bratz must be produced.  Documents relating to the value of the Bratz brand are

28

EXHIBIT ___24___

PAGE ___232___

9

also within the scope of Larian's proposed limitation and would have to be produced.  Documents relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian shall produce documents responsive to Request Nos. 123-125 in accordance with his supplemental responses.

Telephone Records:  Request Nos. 178-181

In Request No. 178, Mattel seeks all documents relating to, including without limitation phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period from January 1, 1998 through January 1, 2001.  Larian objects to this request.

In Request No. 179, Mattel seeks all documents relating to, including without limitation phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental responses, Larian agrees to produce documents responsive to Request No. 179.  In response to this motion, however, Larian contends that he should be permitted to produce documents responsive to Request No. 179 in redacted form as discussed more fully below.

In Request No. 180, Mattel seeks all documents relating to, including without limitation phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period from April 1, 2004 through June 1, 2004.  Larian objects to this request.

In Request No. 181, Mattel seeks all documents relating to, including without limitation phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to communications made prior to January 1, 2001 that are responsive to the request and to which no privilege or other protection applies.

//

Mattel contends that Request No. 178 seeks documents relevant to show Larian's communications with Bryant and other Mattel employees while such employees may still have been employed by Mattel and before Larian claims to have known about Bratz.  Similarly, Mattel contends that Request No. 180 seeks relevant to Mattel's allegation that MGA, and Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them to steal Mattel trade secrets.

Further, Mattel contends that the requested documents regarding telephone records are relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent they show communications with current and former Mattel employees, including Machado, Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses.  With respect to burden, Mattel contends that it would be more burdensome to attempt to produce the requested records in redacted form, and further, that the protective order in place is sufficient to protect Larian's privacy concerns.

Larian contends that the requests regarding telephone records are overbroad, completely unbounded as to subject matter, and necessarily sweep in private information that is completely irrelevant to any of the claims or defenses in the case.  Larian also points out that the court previously considered similar requests served on Bryant and allowed production of redacted copies of telephone records as long as Bryant provided a signed verification that none of his redactions related to Bratz, MGA or any other project he worked on for MGA.  Specifically, Bryant was permitted to produce redacted phone records as long as he provided a "signed verification that none of the telephone records that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."  Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production of Documents by Bryant).  Larian contends that he should be permitted to redact responsive documents consistent with the court's prior order.  During the meet and confer, Larian offered to provide redacted records and a signed verification that none of the redacted information was

1    relevant to the case, but Mattel did not respond to the offer.

2        Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3 relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The

4 request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5 private information that is completely irrelevant to the case. Larian should not be subjected to

6 such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7 the request to the communications, claims, and defenses identified above.

8        In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9 for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10 (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request

11 No. 179, as stated in his supplemental response. Larian's proposal to produce responsive

12 documents in redacted form is appropriate to address his privacy concerns. More specifically,

13 Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14 provides a signed verification that none of the redacted material refers or relates in any way to

15 MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

 or that are otherwise relevant to the case.

16        Mattel's motion to compel documents responsive to Request No. 180 (documents relating

17 to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180

18 is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

19 employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. See

20 Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents

21 responsive to Request No. 180 in redacted form as specified above with respect to Request No.

22 179.

23        Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

24 is overbroad as written because it has no time limits. In his supplemental response, Larian agrees

25 to produce communications prior to January 1, 2001 that are responsive to the request. Larian's

26 proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

27 without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

28

EXHIBIT _____24_____

PAGE _____235_____

12

1   Request No. 181 consistent with his supplemental response, and may produce such documents in

2   redacted form as specified above with respect to Request No. 179.

3

4   Statements to the Media:  Request Nos. 190-192, 194-197 and 199

5           In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6   and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7   Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8   to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9   Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10   regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11   products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12   Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13   also contain admissions regarding the origin and conception of Bratz and statements relevant to

14   damages.

15           Larian contends that the requests are overbroad and unduly burdensome, particularly

16   because several of the requests seek publicly available information.  Further, Larian points out

17   that the court has already considered and rejected as overbroad a nearly identical request served

18   on MGA that called for all documents relating to any communications by MGA with any news

19   organization regarding the contested MGA products or the contested Mattel products.  Larian

20   contends that the same reasoning applies to the instant requests.

21           Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

22   199 is denied.  Although several of the requests encompass potentially relevant documents, the

23   requests are overbroad and encompass documents that have little to no relevance to the claims and

24   defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

25   sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

26   Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

27   or damages.

28   //

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 24

PAGE _____ 236

13

Furthermore, many of these overbroad requests seek publicly available information that is readily accessible to Mattel for which Larian should not be burdened. To the extent the requested documents and information are not publicly available, such documents and information are marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm. In either case, the burden and expense of searching for and producing responsive documents are unjustified.

<u>Communications With Mattel Employees: Request No. 198</u>

In Request No. 198, Mattel seeks all communications between Larian and any individual while the individual was employed by Mattel. Mattel contends that this request is directly relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported burden of production.

Larian contends that the request is overbroad and unduly burdensome because it is unrestricted as to time and subject matter. Larian also points out that the court has previously found a similar request overbroad. Larian further contends that employees in the toy industry are likely to maintain contacts with other toy manufacturers, and that a large corporation such as Mattel is likely to have a high number of employees communicating with MGA or its officers, which makes the request more unduly burdensome and unreasonable than it appears on its face.

Unlike other requests regarding communications, Request No. 198 is reasonably tailored to the specific and numerous allegations in the case regarding alleged trade secret theft. Although the request is not limited by subject matter, it is limited in other respects to seek relevant documents without imposing an undue burden. The request is limited to communications between Larian (and not MGA or persons acting on his behalf) and individuals employed at Mattel. The request is also limited to only those communications that took place while the individuals were employed at Mattel.

Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's allegations of trade secret theft. The alleged trade secret theft began with Bryant's conduct in 1999 and continued to 2005. Accordingly, Larian shall produce documents responsive to Request

EXHIBIT ___24___

PAGE ___237___

14

No. 198 that are limited to the time frame 1999 to 2005.

Personal Financial Data:  Request Nos. 207-209 and 269

In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks or financial institutions and other banking relationships since January 1, 1999.  In Request No. 208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from 1999 to the present.

Mattel contends that Request No. 207 seeks information reasonably calculated to lead to information showing the timing of payments to Bryant and others, which in turn is relevant to the timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos. 208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to information regarding the sources of Larian's income to determine whether they are attributable to the alleged misconduct and thus subject to disgorgement.

Larian contends that the requested personal financial information is not relevant to the claims or defenses at issue.  More specifically, Larian contends that neither the names of his banks nor his gross income have any bearing upon either compensatory or punitive damages or Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

Larian also contends that all three of the requests overlap substantially with requests Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or burden posed by these requests to him.  Further, Larian contends that the court has previously found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered no reason why the same result should not apply here.

Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___24___

PAGE ___238___

15

requests are reasonably calculated to lead to the discovery of admissible evidence relevant to several issues in the case. For example, the requested information is likely to lead to information regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of the creation of Bratz. The requested information is also likely to show Larian's income and net worth, which are relevant to damages. Further, Larian has failed to establish that the requests are unduly burdensome. Although Mattel has sought and obtained broad discovery of financial information from MGA, Mattel is also entitled to seek financial information directly from Larian.

Mattel's motion is denied as to Request No. 209, provided that Larian complies with Request Nos. 207, 208 and 269. In light of the discovery of financial information ordered herein and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax returns.

Storage Devices: Request Nos. 222 and 224

In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive, delete or modify digital information relating to Bratz, Angel, or Bryant. Mattel contends that a request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in electronic form. Mattel also contends that Rule 34 permits a party to obtain and test computer hard drives and other storage devices.

Larian contends that the requests are overbroad, unduly burdensome, duplicative, and ignore his privilege and privacy interests. Larian also objects to an inspection of his actual hard drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which states that the amendment of Rule 34 relating to "electronically stored information is not meant to create a routine right of direct access to a party's electronic information system." See Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes. Larian contends that there is no justification for an inspection of his electronic devices because there is no allegation that he improperly deleted documents.

Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

EXHIBIT 24

PAGE 239

16

1   With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to

2   authorize the routine production of a party's electronic devices. Mattel attempts to justify

3   Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's

4   Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer

5   laptops; "wiping" information from the hard drives of Larian's computer laptops every six

6   months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and

7   destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how

8   these alleged instances of evidence destruction justify Request No. 222, other than to assert that it

9   has a right to inspect Larian's storage devices to ensure that relevant information has not been

10   deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is

11   launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal

12   Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated

13   purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.

14   Among other things, Request No. 222 encompasses every storage device that Larian has used to

15   copy digital information relating to Bratz. Mattel does not need every CD and DVD containing

     copies of Bratz-related video and audio content, but that is what the request seeks.

16       Request No. 222 is also duplicative because it requests information that is sought in

17   numerous other requests served on Larian as well as MGA. Mattel has served hundreds of

18   requests for documents and communications relating to Bratz, Angel, and Bryant. To comply

19   with the requests, Larian was required to search for documents in both hard-copy and electronic

20   form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage

21   devices.

22       Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims

23   and defenses in the case, and therefore do not justify the burden of production on Larian.

24

25   Bryant's Storage Devices:  Request Nos. 225, 227 and 228

26       In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents

27   relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT ___24___

PAGE ___240___

17

1    receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2         Larian contends that the requests are improperly directed to him because he does not have

3    personal possession of Bryant's hard drive or storage devices, or other information about those

4    devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5    requests are overbroad and unduly burdensome for the reasons discussed above in connection

6    with Request Nos. 222 and 224.

7         Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8    denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9    MGA Hong Kong and MGA Mexico: Request Nos. 272 and 273

10        In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

11   Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

12   Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

13   produce documents sufficient to show the ownership of these entities.

14        Mattel contends that the requests seek information relevant to refute MGA Mexico's

15   personal jurisdiction defense, and which bear on whether the acts of Larian and others are

16   attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in

17   these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

18   inadequate because it would allow Larian to withhold contradictory information and conceal the

19   true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

20   the ownership of these entities at times when different allegedly wrongful acts took place and to

21   determine if the ownership structure changed as a means of concealing assets or concealing the

22   payments of commercial bribes.

23        Larian contends that these requests should not be made to him, but to the entities

24   themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

25   Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26   served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

27   burdensome, and that at most, he should only have to produce a list of owners.

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____ 24

PAGE _____ 241

18

1    Mattel contends that Larian cannot avoid his duty to respond to these requests simply by

2    saying that the information is obtainable from another source.  Further, Mattel contends that

3    Larian has failed to establish that the requests are unduly burdensome.

4    Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied

5    pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable

6    from another source that is more convenient, less burdensome, or less expensive, namely MGA

7    Mexico and MGA Hong Kong.  The requests are also overbroad and unduly burdensome.

IV. CONCLUSION

8    For the reasons set forth above, it is hereby ordered as follows:

9    1.    At meet and confer sessions held after the filing of this motion, Larian agreed to

10   produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-

11   146, 213, 221 and 223.  Accordingly, Larian shall produce, without limitation, all non-privileged

12   documents that are responsive to these Requests.

13   2.    With respect to the remaining requests that are at issue in this motion, Larian shall:

14   A.    produce, without limitation, all non-privileged documents that are

15   responsive to Request Nos.  79, 180, 198 (for the time period 1999-2005), 207, 208 and

16   269; and

17   B.    produce, in accordance with his supplemental responses, non-privileged

18   documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and

19   209.

20   C.    Larian may produce documents responsive to Request Nos. 179, 180 and

21   181 in redacted form as provided herein.

22   D.    Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,

23   209, 222, 224, 225, 227, 228, 272 and 273.

24   3.    Larian shall produce all non-privileged documents that are required by this Order

25   that are in his possession, custody or control and that have not already been produced no later

26   than January 11, 2008.

27   4.    Larian shall produce a privilege log no later than January 15, 2008.

EXHIBIT ___24___

PAGE ___242___

28

1       5.     Mattel's request for sanctions is denied.

2       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3  Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5  Dated: December 31, 2007                   *[signature]*

6                            HON. EDWARD A. INFANTE (Ret.)
                                Discovery Master

EXHIBIT 24

PAGE 243

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

_____
Sandra Chan

EXHIBIT _24_

PAGE _244_