1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
7  Facsimile:    (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10               UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14          Plaintiff,                     Consolidated with
                                           Case No. CV 04-09039
15      vs.                                Case No. CV 05-02727

16  MATTEL, INC., a Delaware               [PUBLIC REDACTED] MATTEL,
    corporation,                           INC.'S NOTICE OF MOTION AND
17                                         MOTION OBJECTING TO
          Defendant.                       PORTIONS OF DISCOVERY
18                                         MASTER'S DECEMBER 31, 2007
                                           ORDER REGARDING TAX
19  AND CONSOLIDATED ACTIONS               RETURNS; AND

20                                         MEMORANDUM OF POINTS AND
                                           AUTHORITIES
21
                                           [Declaration of Scott B. Kidman filed
22                                         concurrently]

23                                         Hearing Date:    February 25, 2008
                                           Time:            10:00 a.m.
24                                         Place:           Courtroom 1

25                                         **Phase 1**
                                           Discovery Cut-off:    January 28, 2008
26                                         Pre-trial Conference:  April 21, 2008
                                           Trial Date:           May 27, 2008

27

28

07209/2351176.2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 25, 2008, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of The Honorable Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff and counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move the Court to overrule portions of the Discovery Master's December 31, 2007 Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions relating to the production of Isaac Larian's tax returns.

This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 72(a) on the grounds that the Discovery Master's Order was clearly erroneous and contrary to law in its ruling denying Mattel's motion to compel production of Isaac Larian's tax returns.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Scott B. Kidman filed concurrently herewith, and all other matters of which the Court may take judicial notice.

## **Statement of Rule 37-1 Compliance**

The parties met and conferred regarding this motion on [date].

DATED:  January 16, 2008                QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Scott B. Kidman
   Scott B. Kidman
   Attorneys for Mattel, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Isaac Larian's finances are more complicated than those of most people. His ownership share of MGA is held through a trust or trusts, his income comes partly through salary, partly through stock dividends, partly through royalties received by MGA, and partly through whatever he decides to take out of his company at any given time.

The complex financial structures Larian uses create the potential that they may be used to hide his income. In a recent trial in an unrelated case, Isaac Larian went so far as to state that, other than an increase in salary, he made no profits at all on Bratz because all profits were reinvested. Of course, such a claim seems highly questionable to Mattel, especially given some of the documents already produced in this case, and Mattel should be permitted to investigate it.

In an attempt to do so, Mattel served a request for production seeking Isaac Larian's tax returns. In his December 31, 2007 Order, the Discovery Master rejected that Request, claiming that Mattel had not shown a "compelling need" for them.

Yet the Discovery Master was incorrect as a matter of law in requiring Mattel to make this showing. Such a standard should not apply to prevent access to tax returns in the possession of a party to a case, when there is a protective order in place to protect their confidentiality.

Further, Mattel does have a compelling need for these documents, and the Discovery Master was incorrect as a matter of law in not ordering their production. Only Larian's tax returns provide his sworn attestation to their accuracy, and only his tax returns provide his own synthesis of all his various sources of income into one plain statement of what he has made since the inception of Bratz. The Discovery Master's Order was incorrect as a matter of law with

1  respect to this Request, and Mattel respectfully requests the Court modify that Order

2  to require the production of Isaac Larian's tax returns.

3  **Factual Background**

4  As discussed below, Mr. Larian's profits from the sale of Bratz

5  products, and his financial condition in general, are highly relevant to Mattel's

6  damages claims.  It thus came as a surprise to Mattel when it learned that Isaac

7  Larian had testified under oath that he had received none of the profits made on the

8  products.

9  In an unrelated case, <u>Art Attacks Ink, LLC v. MGA</u>

10  <u>Entertainment, Inc.</u>, Isaac Larian was questioned during trial about his income:

11  ███████████████████████████

12  ███████████████████████████

13  ███████████████████████████

14  ███████████████████████████

15  ███████████████████████████

16  ███████████████████████████

17  ███████████████████████████

18  ███████████████████████████

19  ███████████████████████████

20  ████████████████████████████[1]

21  The testimony continued in this vein, with Larian acknowledging an increase in his

22  salary, but claiming he could not recall having received any special compensation

23  resulting from the success of Bratz.[2]

24

25  _____

26  [1]  Excerpts of trial testimony on May 1, 2007 in the matter entitled <u>Art Attacks</u>
<u>Ink, LLC v. MGA Entertainment, Inc.</u>, at 23:2-12, Kidman Dec., Exh. 1.

27  [2]  <u>Id.</u> at 23:2-27:11.  Showing the lengths to which Larian and MGA have gone to

28  hide financial information from Mattel, ████████████████████████
(footnote continued)

-2-

On June 13, 2007, Mattel propounded its First Set of Requests for Production of Documents and Things to Isaac Larian.[3]  Because of Larian's surprising claims about lack of benefit, Mattel included, among these Requests, one seeking production of Isaac Larian's tax returns.[4]  This Request asked for, "YOUR federal and state tax returns for each of the years 1999 through the present, inclusive."[5]

Larian refused to provide any documents in response to this and other Requests, and Mattel moved to compel their production on October 11, 2007.[6]  In its motion and reply, Mattel noted that Mr. Larian's tax returns were relevant for the following reasons:

- The returns are important as impeachment of Larian's claims, made under oath, that he reinvests all profits, and could not recall receiving any special bonus from 2000 to 2006.  Larian's tax returns are the only document he has signed, attesting to the federal government of their truth and accuracy.  Without these returns, Mattel has no other sworn statements by Larian regarding his profits to contradict his prior testimony.[7]

_____

██████████████████████████████████████
Id. at 9:9-13:14.

[3]  Declaration of Scott B. Kidman dated October 11, 2007 ("Kidman Dec.") at ¶ 3.

[4]  Request No. 209, found in the excerpts of Mattel, Inc.'s Consolidated Separate Statement in Support of Motion to Compel Production of Documents by Isaac Larian at p. 183, Kidman Dec., Exh. 2.

[5]  Id.

[6]  Kidman Dec., ¶ 4.

[7]  Excerpts of Mattel, Inc.'s Consolidated Separate Statement in Support of Motion to Compel Production of Documents by Isaac Larian (public redacted version) at 186, 191, Kidman Dec., Exh. 2.

•   The returns are important as a roadmap to establishing Larian's income. Larian's finances are highly complex, with much of his money, and his ownership interest in MGA, held in a trust or trusts.  Only his tax returns include the values that represent a synthesis of these various sources of income to provide what Larian believes is his total and actual income.[8]

•   More generally, the returns are relevant as a means of establishing Mattel's damages claims.[9]

In Opposition, Larian argued that he should not have to produce his tax returns because Mattel must show a "compelling need" to receive them, and it had not done so.  It also argued that Bryant had not been ordered to produce his tax returns, and therefore Larian should not be compelled to do so either.

Judge Infante ruled on the motion on December 31, 2007.[10]  In considering the issue of the tax returns, Judge Infante merely stated that, "In light of the discovery of financial information ordered herein and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax returns."[11]

## **Argument**

By the stipulation and court order appointing a Discovery Master, the Discovery Master's rulings are treated like those of a magistrate judge.  Such rulings should be overruled if they are "clearly erroneous or [] contrary to law." Fed. R. Civ. Proc. 72(a).

---

[8]   Id. at 191-192.
[9]   Id. at 185.
[10]   Discovery Master's Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions, dated December 31, 2007, Kidman Dec., Exh. 3.
[11]   Id. at 16.

1   I.      **THE DISCOVERY MASTER INCORRECTLY REQUIRED MATTEL**

2           **TO SHOW A COMPELLING NEED FOR THE TAX RETURNS**

3                   In ruling that Mattel must show a compelling need for the tax returns,

4   the Discovery Master's Order was contrary to law.  As a preliminary matter, each of

5   the cases cited by Larian, and accepted by the Discovery Master, acknowledges that

6   "[t]ax returns do not enjoy an absolute privilege from discovery."  <u>Premium</u>

7   <u>Services Corp. v. Sperry & Hutchinson Co.</u>, 511 F.2d 225, 229 (9th Cir. 1975);

8   <u>Southern California Housing Rights Center v. Krug</u>, 2006 WL 4122148, *3 (C.D.

9   Cal. 2006) (same).

10                  More importantly, however, each acknowledges that the reason for the

11  rule is a "public policy against unnecessary **public** disclosure."  <u>Premium Services</u>

12  <u>Corp.</u>, 511 F.2d at 229 (emphasis added); <u>Southern California Housing Rights</u>

13  <u>Center</u>, 2006 WL 4122148 at *3.  Where, as here, the documents could be produced

14  subject to the protective order, courts have found that this reasoning does not apply.

15  <u>See, e.g.</u>, <u>In re Heritage Bond Litigation</u>, 2004 WL 1970058, *5, n.12 (granting

16  motion to compel production of defendant's financial records because "[a]ny privacy

17  concerns . . . defendants have in their bank records and related financial statements

18  are adequately protected by the protective order, and are not sufficient to prevent

19  production in this matter"); <u>A. Farber and Partners, Inc.</u>, 234 F.R.D. 186, 191-92

20  (C.D. Cal. 2006) ("plaintiff's need for defendant Garber's financial documents

21  outweighs defendant Garber's claim of privacy, especially when the 'impact' of the

22  disclosure of the information can be protected by a 'carefully drafted' protective

23  order"); <u>Gohler v. Wood</u>, 162 F.R.D. 691, 697 (D. Utah 1995) ("Because the

24  protective order limits disclosure of confidential material to those who are

25  necessarily involved in the case, and these parties may use this information only for

26  purposes of litigating this case, excluding any business purpose, the court concludes

27  Deloitte's confidentiality concerns have been addressed adequately.").

28

Second, this case involves a request for production directed to a party, rather than a non-party as in Premium Service Corp. v. Sperry & Hutchinson Co., 511 F.2d 225 (9th Cir. 1975).  At least one case has held that the concerns outlined by the Ninth Circuit do not apply to subpoenas on a party, and that relevant returns may be ordered produced.  "[T]he tax returns sought to be discovered are those of a party, rather than a nonparty as in Premium Serv.  The court holds that the plaintiff's tax returns from the time of the accident to the present are not privileged and are discoverable."  Young v. United States, 149 F.R.D. 199, 205 (S.D. Cal. 1993).

For these reasons, the Discovery Master's Order was incorrect as a matter of law in requiring Mattel to demonstrate a compelling need.

## II.   THE DISCOVERY MASTER APPLIED AN OVERLY HARSH INTERPRETATION OF THE COMPELLING NEED STANDARD

Even if the compelling need standard did apply, Mattel has satisfied that burden.  In finding that Mattel had not, the Discovery Master applied an overly stringent test that was incorrect as a matter of law.

Larian has already testified under oath ███████████████████████████████████████████████████████████.  This testimony is contrary to information Mattel has obtained in documents produced in this lawsuit, including MGA's audited financial statements.[12]  Undoubtedly, Larian will attempt to disclaim knowledge, or the accuracy, of those documents.  Only his tax returns have his signature attesting to their truth and accuracy.  Thus, they are important impeachment evidence that is not available anywhere else.

Moreover, Mr. Larian's finances are far more complex than those of ordinary invidivuals.  Larian is in a position where he may, for example, conceal

_____

[12]  E.g., Consolidated Financial Statements Years Ended December 31, 2004 and 2003, Kidman Dec., Exh. 5, at line 3.

1   payments through personal use of corporate assets, transfers of assets among a
2   multitude of corporate entities, trusts, and other transactions that will be difficult, if
3   not impossible, to unravel.  For example, Mattel now knows that Larian's controlling
4   interest in MGA is held not by him personally, but through a trust or trusts.[13]  And
5   far from getting information on this issue from MGA, MGA's counsel instructed its
6   30(b)(6) witness, Lisa Tonnu, not to answer questions about Larian's trusts.[14]  MGA
7   purports not to know about Larian's financial dealings or holdings.  Tonnu does not
8   prepare Larian's taxes.[15]  He and MGA use different accountants.[16]  Only Larian's
9   tax returns offer a plain—and sworn—summary number as to what Larian himself
10  has concluded he has made.

## Conclusion

12          Isaac Larian's tax returns are relevant to the issues of damages,
13  credibility, and net worth.  For these reasons, Mattel has a compelling need for Isaac
14  Larian's tax returns.  The Discovery Master was incorrect as a matter of law in
15  finding that Mattel had not met this burden.

16          For the foregoing reasons, Mattel respectfully requests that its motion
17  be granted in its entirety.

19  DATED:  January 16, 2008          QUINN EMANUEL URQUHART OLIVER &
20                                    HEDGES, LLP

21                                    By /s/ Scott B. Kidman
22                                       Scott B. Kidman
                                         Attorneys for Mattel, Inc.

---

25  [13]   Depo. Tr. of Lisa Tonnu (Vols. 1 and 2), dated July 19, 2007, and September
26  24, 2007 ("Tonnu Tr."), at 49:3-25, Kidman Dec., Exh. 4.
27  [14]   Id. at 53:15-55:8.
    [15]   Id. at 53:12-14; 363:5-364:10.
28  [16]   Id. at 363:5-364:10.