EXHIBIT 16



1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12              Plaintiff,               Consolidated with
                                         Case No. CV 04-09059
13                                       Case No. CV 05-02727
        vs.
14                                       FOURTH NOTICE OF DEPOSITION
15  MATTEL, INC., a Delaware corporation, OF MGA ENTERTAINMENT, INC.
                                         PURSUANT TO FEDERAL RULE OF
16              Defendant.               CIVIL PROCEDURE 30(B)(6)

17                                       Discovery Cut-off: January 14, 2008
                                         Pre-trial Conference: April 7, 2008
18  AND CONSOLIDATED ACTIONS             Trial Date: April 29, 2008

19

20

21

22

23

24

25

26

27

28

07209/2254636.1

FOURTH NOTICE OF DEPOSITION OF MGA

**Exhibit 16, Page 8**

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on _____, beginning at 9:30 a.m.

3  Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant

4  MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges

5  LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.  Pursuant to Fed. R.

6  Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers,

7  directors, managing agents or other persons who consent to testify on its behalf

8  concerning each of the topics set forth in Exhibit A hereto.

9       PLEASE TAKE FURTHER NOTICE that the deposition will take place

10  before a duly authorized notary public or other officer authorized to administer oaths at

11  depositions, and will continue from day to day, Sundays, Saturdays and legal holidays

12  excepted, until completed.

13       PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

14  P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use

15  Livenote or other technology for real-time transcription of the testimony.

16

17  DATED: _____   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

18

19                                By_____

20                                  Jon Corey
                                Attorneys for Mattel, Inc.

21

22

23

24

25

26

27

28

07209/2254636.1

-1-

**Exhibit 16, Page 9**

## EXHIBIT A

1.   "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.   "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.   "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

4.   "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence

FOURTH NOTICE OF DEPOSITION OF MGA

07209/2254636.1

1   that is the subject of, or otherwise relevant or responsive to, the Topics of Examination

2   herein.

3        5.   "DESIGN" or "DESIGNS" means any and all representations,

4   whether two-dimensional or three-dimensional, and whether in tangible, digital,

5   electronic or other form, including but not limited to all works, designs, artwork,

6   sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

7   diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

8   practice, developments, inventions and/or improvements, as well as all other items,

9   things and DOCUMENTS in which any of the foregoing are or have been expressed,

10  embodied, contained, fixed or reflected in any manner, whether in whole or in part.

11       6.   "THE BRATZ PITCH MATERIALS" means each and every

12  BRATZ WORK which was displayed, shown, provided, or offered to YOU on or

13  before the date on which YOU executed the BRYANT/MGA AGREEMENT.

14       7.   "BRYANT/MGA AGREEMENT" means the written agreement

15  between CARTER BRYANT and MGA dated as of September 18, 2000, produced as

16  BRYANT 00794-00799, and any other version or versions thereof.

17       8.   "CREATE OR IMPROVE" or "CREATED OR IMPROVED," in

18  the context of a BRATZ WORK or BRATZ WORKS, means to create, improve,

19  develop, modify, alter, conceive, reduce to practice, or otherwise work on the BRATZ

20  WORK or BRATZ WORKS.

21       9.   "IDENTIFY" or "IDENTITY" means the following:

22       (a)   With reference to an individual, means such individual's

23  name, current or last known business title, current or last known business affiliation,

24  current or last known relationship to YOU, current or last known residential and

25  business address, and current or last known telephone number.

26       (b)   With reference to an entity or governmental organization,

27  means such entity's or organization's name, present or last-known address, and present

28

-3-

**Exhibit 16, Page 11**

1  or last-known telephone number and the IDENTITY of each individual who has served

2  or participated as a contact for or on behalf of such entity or organization.

3          (c)     With reference to an account with a bank or financial

4  institution, means the name and address of the bank or financial institution, the account

5  number(s) for or otherwise associated with such account and the name of each holder,

6  including without limitation each beneficial holder, of each such account.

7          (d)     With reference to a STORAGE DEVICE, means the

8  manufacturer name, brand, model name and number, serial number and all other

9  manufacturer identifiers, and the technical specifications and capacities of such

10  STORAGE DEVICE.

11          10.     "DIGITAL INFORMATION" means any information created or

12  stored digitally, including but not limited to electronically, magnetically or optically.

13          11.     "STORAGE DEVICE" means any computer hard drive, memory,

14  USB device, tape, storage array or any other device or medium that allows a user,

15  whether permanently, temporarily or otherwise, to create, generate, transmit, copy,

16  retain, store or maintain DIGITAL INFORMATION.

17          12.     "GLASER LETTER" means the letter sent from Patricia L. Glaser

18  to John B. Quinn, dated July 5, 2007.

19          13.     "RELATING TO" or "REFER OR RELATE TO" means

20  constituting, embodying, containing, referring to, commenting on, evidencing,

21  regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to,

22  concerning, supporting, contradicting, negating, revoking or otherwise relating to in

23  any manner.

24          14.     "COMMUNICATION," in the plural as well as the singular, means

25  any transmittal and/or receipt of information, whether such was oral or written, and

26  whether such was by chance, prearranged, formal or informal, and specifically includes,

27  but is not limited to, conversations in person, telephone conversations, electronic mail

28  (including instant messages and text messages), voicemail, letters, memoranda,

-4-

**Exhibit 16, Page 12**

1  statements, media releases, magazine and newspaper articles, and video and audio

2  transmissions.

3      15.    "EMBODIMENT" means any representation of the identified

4  product or its retail packaging, whether two-dimensional or three-dimensional, and

5  whether in tangible, digital, electronic or other form, including but not limited to all

6  works, designs, artwork, sketches, drawings, illustrations, representations, depictions,

7  blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

8  reductions to practice, developments, inventions and/or improvements, as well as all

9  other items, things and DOCUMENTS in which any of the foregoing are or have been

10  expressed, embodied, contained, fixed or reflected in any manner, whether in whole or

11  in part.

12      16.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as

13  those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and

14  Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings

15  and records of every type and description including, but not limited to, contracts,

16  agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"),

17  records of telephone conversations, handwritten and typewritten notes of any kind,

18  statements, reports, minutes, recordings, transcripts and summaries of meetings, voice

19  recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and

20  records of all types, studies, instruction manuals, policy manuals and statements, books,

21  pamphlets, invoices, canceled checks and every other device or medium by which or

22  through which information of any type is transmitted, recorded or preserved.  Without

23  any limitation on the foregoing, the term "DOCUMENT" shall include all copies that

24  differ in any respect from the original or other versions of the DOCUMENT, including,

25  but not limited to, all drafts and all copies of such drafts or originals containing initials,

26  comments, notations, insertions, corrections, marginal notes, amendments or any other

27  variation of any kind.

28

-5-

**Exhibit 16, Page 13**

17.   "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

18.   "CONTESTED MGA PRODUCTS" means the CONTESTED BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS PRODUCTS, and any other doll, product, toy, packaging, advertisement or other matter that, in whole or in part, provides a basis for any claim or defense by YOU against MATTEL.

19.   "CONTESTED BRATZ DOLLS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL:  (i) any EMBODIMENT or project ever known by the name "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "Bratz" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz" or any derivative thereof.

07209/2254636.1

-6-

**Exhibit 16, Page 14**

1          20.    "CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD"

2 means any of the following that provides a basis for any claim by YOU against

3 MATTEL: (i) any EMBODIMENT or project ever known by the name "Bratz Funky

4 Fashion Makeover Head" or any derivative thereof (whether in whole or in part and

5 regardless of what such EMBODIMENT or project is or has been also, previously or

6 subsequently called) and any styling head or any portion thereof that is now or has ever

7 been known as, or sold, offered for sale, licensed, offered for license or marketed under,

8 the name or term "Bratz" or any derivative thereof (whether in whole or in part and

9 regardless of what such styling head is or has been also, previously or subsequently

10 called), and all prototypes, models, samples and versions of such EMBODIMENT,

11 styling head or any portion thereof; (ii) any accessory that YOU distribute under the

12 name "Bratz Funky Fashion Makeover Head" or any derivative thereof; and/or (iii) any

13 and all other goods, product packaging, advertisements, promotional materials or other

14 thing or item or material manufactured, produced, printed, ordered, marketed,

15 advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

16 offered for license, sold or offered for sale by YOU or on YOUR behalf under the name

17 "Bratz Funky Fashion Makeover Head" or any derivative thereof.

18          21.    "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means any

19 of the following that provides a basis for any claim by YOU against MATTEL: (i) any

20 EMBODIMENT or project ever known by the name "4-ever Best Friends" or any

21 derivative thereof (whether in whole or in part and regardless of what such

22 EMBODIMENT or project is or has been also, previously or subsequently called) and

23 any doll or any portion thereof that is now or has ever been known as, or sold, offered

24 for sale, licensed, offered for license or marketed under, the name or term "4-ever Best

25 Friends" or any derivative thereof (whether in whole or in part and regardless of what

26 such doll is or has been also, previously or subsequently called), and all prototypes,

27 models, samples and versions of such EMBODIMENT, doll or any portion thereof;

28 (ii) any playset and accessory that YOU distribute under the name "4-ever Best

Exhibit 16, Page 15

1  Friends" or any derivative thereof; and/or (iii) any and all other goods, product

2  packaging, advertisements, promotional materials or other thing or item or material

3  manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

4  distributed, shipped, imported, exported, licensed, offered for license, sold or offered

5  for sale by YOU or on YOUR behalf under the name "4-ever Best Friends" or any

6  derivative thereof.

7     22. "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS" means

8  any of the following that provides a basis for any claim by YOU against MATTEL:

9  (i) any EMBODIMENT or project ever known by the name "Mommy's Little Patient"

10  or similar name or any derivative thereof (whether in whole or in part and regardless of

11  what such EMBODIMENT or project is or has been also, previously or subsequently

12  called) and any doll or any portion thereof that is now or has ever been known as, or

13  sold, offered for sale, licensed, offered for license or marketed under, the name or term

14  "Mommy's Little Patient" or similar name or any derivative thereof (whether in whole

15  or in part and regardless of what such doll is or has been also, previously or

16  subsequently called), and all prototypes, models, samples and versions of such

17  EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU

18  distribute under the name "Mommy's Little Patient" or similar name or any derivative

19  thereof; and/or (iii) any and all other goods, product packaging, advertisements,

20  promotional materials or other thing or item or material manufactured, produced,

21  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

22  imported, exported, licensed, offered for license, sold or offered for sale by YOU or on

23  YOUR behalf under the name "Mommy's Little Patient" or similar name or any

24  derivative thereof.

25     23. "CONTESTED ALIENRACERS PRODUCTS" means any of the

26  following that provides a basis for any claim by YOU against MATTEL:  (i) any

27  EMBODIMENT or project ever known by the name "Alienracers" or any derivative

28  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

FOURTH NOTICE OF DEPOSITION OF MGA

07209/2254636.1

**Exhibit 16, Page 16**

1 project is or has been also, previously or subsequently called) and any toy vehicle,

2 character, or any portion thereof that is now or has ever been known as, or sold, offered

3 for sale, licensed, offered for license or marketed under, the name or term "Alienracers"

4 or any derivative thereof (whether in whole or in part and regardless of what such toy is

5 or has been also, previously or subsequently called), and all prototypes, models,

6 samples and versions of such EMBODIMENT, toy vehicle, character, or any portion

7 thereof; (ii) any playset and accessory that YOU distribute under the name

8 "Alienracers" or any derivative thereof; and/or (iii) any and all other goods, product

9 packaging, advertisements, promotional materials or other thing or item or material

10 manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

11 distributed, shipped, imported, exported, licensed, offered for license, sold or offered

12 for sale by YOU or on YOUR behalf under the name "Alienracers" or any derivative

13 thereof.

14       24.   "CONTESTED MATTEL PRODUCTS" means the CONTESTED

15 MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED MATTEL MY

16 SCENE PETS PRODUCTS, the CONTESTED MATTEL MY SCENE STYLING

17 HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the CONTESTED

18 MATTEL LITTLE MOMMY DOLL PRODUCTS, and the CONTESTED MATTEL

19 ACCELERACERS PRODUCTS, and any other MATTEL doll, product, toy,

20 packaging, advertisement or other matter that, in whole or in part, provides a basis for

21 any claim or defense by YOU against MATTEL.

22       25.   "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"

23 means any of the following that provides a basis for any claim by YOU against

24 MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene" or

25 any derivative thereof (whether in whole or in part and regardless of what such

26 EMBODIMENT or project is or has been also, previously or subsequently called) and

27 any doll or any portion thereof that is now or has ever been known as, or sold, offered

28 for sale, licensed, offered for license or marketed under, the name or term "My Scene"

FOURTH NOTICE OF DEPOSITION OF MGA

07209/2254636.1

**Exhibit 16, Page 17**

1   or any derivative thereof (whether in whole or in part and regardless of what such doll

2   is or has been also, previously or subsequently called), and all prototypes, models,

3   samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

4   playset and accessory that MATTEL distributes under the name "My Scene" or any

5   derivative thereof; and/or (iii) any and all other goods, product packaging,

6   advertisements, promotional materials or other thing or item or material manufactured,

7   produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

8   shipped, imported, exported, licensed, offered for license, sold or offered for sale by

9   MATTEL under the name "My Scene" or any derivative thereof.

10          26.      "CONTESTED MATTEL MY SCENE PETS PRODUCTS" means

11   any of the following that provides a basis for any claim by YOU against MATTEL:

12   (i) any EMBODIMENT or project ever known by the name "My Scene Pets" or any

13   derivative thereof (whether in whole or in part and regardless of what such

14   EMBODIMENT or project is or has been also, previously or subsequently called) and

15   any toy pet or any portion thereof that is now or has ever been known as, or sold,

16   offered for sale, licensed, offered for license or marketed under, the name or term "My

17   Scene" or any derivative thereof (whether in whole or in part and regardless of what

18   such toy pet is or has been also, previously or subsequently called), and all prototypes,

19   models, samples and versions of such EMBODIMENT, toy pet or any portion thereof;

20   (ii) any playset and accessory that MATTEL distributes under the name "My Scene

21   Pets" or any derivative thereof; and/or (iii) any and all other goods, product packaging,

22   advertisements, promotional materials or other thing or item or material manufactured,

23   produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

24   shipped, imported, exported, licensed, offered for license, sold or offered for

25          27.      "CONTESTED MATTEL MY SCENE STYLING HEAD" means

26   any of the following that provides a basis for any claim by YOU against MATTEL:

27   (i) any EMBODIMENT or project ever known by the name "My Scene Styling Head"

28   or any derivative thereof (whether in whole or in part and regardless of what such

FOURTH NOTICE OF DEPOSITION OF MGA

1   EMBODIMENT or project is or has been also, previously or subsequently called) and

2   any styling head or any portion thereof that is now or has ever been known as, or sold,

3   offered for sale, licensed, offered for license or marketed under, the name or term "My

4   Scene" or any derivative thereof (whether in whole or in part and regardless of what

5   such styling head is or has been also, previously or subsequently called), and all

6   prototypes, models, samples and versions of such EMBODIMENT, styling head or any

7   portion thereof; (ii) any accessory that MATTEL distributes under the name "My Scene

8   Styling Head" or any derivative thereof; and/or (iii) any and all other goods, product

9   packaging, advertisements, promotional materials or other thing or item or material

10   manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

11   distributed, shipped, imported, exported, licensed, offered for license, sold or offered

12   for sale by MATTEL under the name "My Scene Styling Head" or any derivative

13   thereof.

14           28.   "CONTESTED MATTEL WEE-3 PRODUCTS" means any of the

15   following that provides a basis for any claim by YOU against MATTEL:  (i) any

16   EMBODIMENT or project ever known by the name "Wee-3" or any derivative thereof

17   (whether in whole or in part and regardless of what such EMBODIMENT or project is

18   or has been also, previously or subsequently called) and any doll or any portion thereof

19   that is now or has ever been known as, or sold, offered for sale, licensed, offered for

20   license or marketed under, the name or term "Wee-3" or any derivative thereof

21   (whether in whole or in part and regardless of what such doll is or has been also,

22   previously or subsequently called), and all prototypes, models, samples and versions of

23   such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that

24   MATTEL distributes under the name "Wee-3" or any derivative thereof; and/or (iii) any

25   and all other goods, product packaging, advertisements, promotional materials or other

26   thing or item or material manufactured, produced, printed, ordered, marketed,

27   advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

28

1   offered for license, sold or offered for sale by MATTEL under the name "Wee-3" or

2   any derivative thereof.

3           29.   "CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS"

4   means any of the following that provides a basis for any claim by YOU against

5   MATTEL: (i) any EMBODIMENT or project ever known by the name "Little

6   Mommy" or any derivative thereof (whether in whole or in part and regardless of what

7   such EMBODIMENT or project is or has been also, previously or subsequently called)

8   and any doll or any portion thereof that is now or has ever been known as, or sold,

9   offered for sale, licensed, offered for license or marketed under, the name or term

10   "Little Mommy" or any derivative thereof (whether in whole or in part and regardless

11   of what such doll is or has been also, previously or subsequently called), and all

12   prototypes, models, samples and versions of such EMBODIMENT, doll or any portion

13   thereof; (ii) any playset and accessory that MATTEL distributes under the name "Little

14   Mommy" or any derivative thereof; and/or (iii) any and all other goods, product

15   packaging, advertisements, promotional materials or other thing or item or material

16   manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

17   distributed, shipped, imported, exported, licensed, offered for license, sold or offered

18   for sale by MATTEL under the name "Little Mommy" or any derivative thereof.

19           30.   "CONTESTED MATTEL ACCELERACERS PRODUCTS" means

20   any of the following that provides a basis for any claim by YOU against MATTEL:

21   (i) any EMBODIMENT or project ever known by the name "AcceleRacers" or any

22   derivative thereof (whether in whole or in part and regardless of what such

23   EMBODIMENT or project is or has been also, previously or subsequently called) and

24   any toy vehicle, character, or any portion thereof that is now or has ever been known as,

25   or sold, offered for sale, licensed, offered for license or marketed under, the name or

26   term "AcceleRacers" or any derivative thereof (whether in whole or in part and

27   regardless of what such toy is or has been also, previously or subsequently called), and

28   all prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

-12-

1  character, or any portion thereof; (ii) any playset and accessory that MATTEL

2  distributes under the name "AcceleRacers" or any derivative thereof; and/or (iii) any

3  and all other goods, product packaging, advertisements, promotional materials or other

4  thing or item or material manufactured, produced, printed, ordered, marketed,

5  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

6  offered for license, sold or offered for sale by MATTEL under the name

7  "AcceleRacers" or any derivative thereof.

8      31.  "FORMER MATTEL EMPLOYEES" means any former Mattel

9  employee who left MATTEL to join YOU, including but not limited to Janine Brisbois,

10  Ron Brawer, Jorge Castilla, Nic Contreras, Dan Cooney, Carlos Gustavo Machado,

11  Mariana Trueba Almada, Pablo Vargas San Jose and Shirin Salemnia.

12      32.  "COMPLAINT" means the Complaint for False Designation of

13  Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair

14  Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 et seq. and

15  California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code

16  § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or

17  about April 13, 2005.

18      33.  The singular form of a noun or pronoun includes within its meaning

19  the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine

20  form of a pronoun also includes within its meaning the feminine form of the pronoun so

21  used, and *vice versa*; the use of any tense of any verb includes also within its meaning

22  all other tenses of the verb so used, whenever such construction results in a broader

23  request for information; and "and" includes "or" and *vice versa*, whenever such

24  construction results in a broader disclosure of documents or information.

25

26              **Topics of Examination**

27      1.  The invention, creation, origin, conception, authorship, design and

28  development of the CONTESTED MGA PRODUCTS, including without limitation the

-13-

FOURTH NOTICE OF DEPOSITION OF MGA

**Exhibit 16, Page 21**

1 | circumstances under which and the date(s) on which each occurred and the IDENTITY

2 | and role(s) of each PERSON involved.

3 |       2.    Any revisions, modifications or changes made to any of the

4 | CONTESTED MGA PRODUCTS, including without limitation any proposed

5 | alternatives, modifications or changes (whether or not implemented) to such

6 | CONTESTED MGA PRODUCTS, the date(s) on which such revisions, modifications

7 | or changes were made or proposed and the reasons for their implementation or non-

8 | implementation.

9 |       3.    The development of YOUR 2005 product line, including the

10 | IDENTITY of each PERSON who participated in the decision making leading up to

11 | YOUR 2005 product line and any changes or modifications thereto, and the invention,

12 | creation, origin, conception, authorship, design, development, manufacture, distribution

13 | and sale of products therein.

14 |       4.    The development of YOUR 2006 product line, including the

15 | IDENTITY of each PERSON who participated in the decision making leading up to

16 | YOUR 2005 product line and any changes or modifications thereto, and the invention,

17 | creation, origin, conception, authorship, design, development, manufacture, distribution

18 | and sale of products therein.

19 |       5.    The content, meaning, authenticity and source of

20 | COMMUNICATIONS, advertisements, and/or promotional statements that provide a

21 | basis for any claim by YOU against MATTEL.

22 |       6.    COMMUNICATIONS between YOU and any PERSON, including

23 | without limitation any retailer or distributor, that REFER OR RELATE TO the

24 | CONTESTED MATTEL PRODUCTS.

25 |       7.    The first date of manufacture, shipment and availability for

26 | distribution and retail sale of each of the CONTESTED MGA PRODUCTS.

27

28

-14-

FOURTH NOTICE OF DEPOSITION OF MGA

8.    The first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form, and the IDENTITY of each PERSON involved therein.

9.    The sculptures, including all preliminary sculptures and all versions of such sculptures, made, produced or prepared in connection with the CONTESTED BRATZ DOLLS PRODUCTS.

10.    The tooling and manufacture of any of the CONTESTED MGA PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase orders and payment relating thereto and including but not limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging therefor.

11.    The marketing, advertising, promotion and licensing of the CONTESTED MGA PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including the identity of the channels in which such have been or are disseminated or distributed.

12.    The ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

13.    Any copyright, patent, design right or any other registration or application for registration of the CONTESTED MGA PRODUCTS, including but not limited to all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits, correspondence, notes and other DOCUMENTS relating thereto.

14.    The display, exhibition, publication, circulation, or other dissemination of the CONTESTED MGA PRODUCTS to distributors, retailers, licensees, the media, or the public, including but not limited to toy and trade shows and conventions and the date(s) on which such occurred.

07209/2254636.1

-15-

1      15.   YOUR expenditures in advertising or promoting the CONTESTED
2 MGA PRODUCTS, including by year and by medium.

3      16.   Any contracts or licenses entered into, negotiated, proposed, or
4 requested RELATING TO any of the CONTESTED MGA PRODUCTS.

5      17.   The target market or potential target market, and the demographics
6 of any actual, potential or prospective consumers, customers, purchasers or licensees of
7 the CONTESTED MGA PRODUCTS.

8      18.   The number of units of the CONTESTED MGA PRODUCTS
9 manufactured, produced, ordered, stored in inventory, imported, exported, shipped,
10 sold, or offered for sale by any PERSON, including but not limited to YOU.

11      19.   YOUR revenues, costs and profits for each of the CONTESTED
12 MGA PRODUCTS, including but not limited to YOUR per-unit cost, and YOUR gross,
13 incremental and net profits for each of the CONTESTED MGA PRODUCTS.

14      20.   Any complaints or dissatisfaction concerning the CONTESTED
15 MGA PRODUCTS, including but not limited to the returns of, or the number of or rate
16 of defects for, such products.

17      21.   Any potential or actual confusion, any potential or actual mistake or
18 any potential or actual deception of any PERSON as to the origin, affiliation,
19 sponsorship or association of the CONTESTED MGA PRODUCTS or CONTESTED
20 MATTEL PRODUCTS that YOU are aware of, including but not limited to all studies,
21 surveys, interviews, reports and COMMUNICATIONS regarding any such confusion,
22 mistake or deception.

23      22.   Any potential or actual confusion, any potential or actual mistake or
24 any potential or actual deception of any PERSON as to the origin, affiliation,
25 sponsorship or association of the CONTESTED MATTEL PRODUCTS that you are
26 aware of, including but not limited to all studies, surveys, interviews, reports and
27 COMMUNICATIONS regarding any such confusion, mistake or deception.

28

-16-

FOURTH NOTICE OF DEPOSITION OF MGA

**Exhibit 16, Page 24**

1    23.   Any consumer studies, reports, surveys, interviews or reports
2    regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL
3    PRODUCTS, included but not limited to YOUR knowledge of the reasons why
4    consumers purchase any of the CONTESTED MGA PRODUCTS or any of the
5    CONTESTED MATTEL PRODUCTS.

6    24.   Marketing studies, marketing plans, sales plans, sales forecasts,
7    strategies and analyses that REFER OR RELATE TO THE CONTESTED MATTEL
8    PRODUCTS.

9    25.   MATTEL's alleged copying, infringement or dilution of the
10   CONTESTED MGA PRODUCTS or any claimed EMBODIMENT thereof.

11   26.   To the extent not disclosed in response to any other Topic, all other
12   facts RELATING TO any claim made by YOU against MATTEL or the CONTESTED
13   MATTEL PRODUCTS, and the IDENTITY of all PERSONS with knowledge thereof.

14   27.   COMMUNICATIONS between YOU and MATTEL RELATING
15   TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL
16   PRODUCTS.

17   28.   Any damage, loss, injury or unjust enrichment that YOU claim has
18   been sustained by reason of any act or omission by MATTEL, including but not limited
19   to any alleged lost profits, lost sales, lost royalty, lost opportunity, lost license, revenue,
20   price erosion, or consequential or incidental damage, including but not limited to the
21   causation for any such alleged unjust enrichment, damage, loss, or injury and the
22   amounts of all such damage, loss, injury or unjust enrichment.

23   29.   When, and under what circumstances, YOU became aware that
24   Mattel had created, designed, developed, sold, offered for sale or licensed the
25   CONTESTED MATTEL PRODUCTS.

26   30.   The copying, reproduction or use of any MATTEL work, product,
27   or EMBODIMENT by YOU or on YOUR behalf since January 1, 1999.

28

Exhibit 16, Page 25

1       31.   Any similarity or dissimilarity between any of the CONTESTED

2   MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

3       32.   The hiring, engagement, or retention by YOU of any current or

4   former MATTEL employee or contractor since January 1, 1999, including but not

5   limited to the terms of all employment agreements and agreements RELATING TO

6   confidentiality or the invention, authorship, or ownership of any concept or product.

7       33.   YOUR receipt, reproduction, copying, storage, transmission,

8   transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or

9   information, including but not limited to any compilation of information, that was

10   prepared, made, created, generated, assembled or compiled by or for MATTEL and that

11   was not publicly available at the time of YOUR receipt of such DOCUMENT, data

12   and/or information.

13       34.   YOUR knowledge of any MATTEL product prior to the time that

14   such product had been announced or disclosed by MATTEL to retailers or the public,

15   including but not limited to the CONTESTED MATTEL PRODUCTS.

16       35.   YOUR receipt, reproduction, copying, storage, transmission,

17   transfer, retention, destruction, deletion or use of any MATTEL line list or other

18   DOCUMENT prepared by MATTEL identifying MATTEL products in the planning,

19   design or development phase.

20       36.   The search and seizure of DOCUMENTS by Mexican authorities

21   from MGA's office in Mexico City, Mexico, and all COMMUNICATIONS that

22   REFER OR RELATE thereto.

23       37.   All payments of money or any item of value made by YOU, directly

24   or indirectly, or offered, proposed, promised, requested or solicited by or from YOU,

25   directly or indirectly, in connection criminal proceedings or potential or prospective

26   criminal proceedings against YOU or any of YOUR employees, including without

27   limitation Gustavo Machado, and including without limitation YOUR payment or

28   reimbursement of legal fees for or on behalf of any PERSON.

FOURTH NOTICE OF DEPOSITION OF MGA

**Exhibit 16, Page 26**

1        38.   COMMUNICATIONS between YOU and any PERSON

2    RELATING TO the resignation or departure of any FORMER MATTEL

3    EMPLOYEES from Mattel.

4        39.   The compensation, money or any other item of value paid to any

5    FORMER MATTEL EMPLOYEE, whether directly or indirectly, by YOU.

6        40.   The identity of DOCUMENTS RELATING TO any MATTEL

7    product or plan that any FORMER MATTEL EMPLOYEE provide or disclosed to or

8    shared with YOU, directly or indirectly.

9        41.   COMMUNICATIONS with any PERSON, RELATING TO YOUR

10   receipt, reproduction, copying, storage, transmission, transfer, retention, destruction,

11   deletion or use of any DOCUMENTS, data and/or information, including but not

12   limited to any compilation of information, that was prepared, made, created, generated,

13   assembled or compiled by or for MATTEL and that YOU received, directly or

14   indirectly, from any FORMER MATTEL EMPLOYEE.

15       42.   The content, authenticity, accuracy and meaning of each personnel

16   file maintained or created by YOU RELATING TO any FORMER MATTEL

17   EMPLOYEE.

18       43.   COMMUNICATIONS between YOU and Pablo Vargas San Jose

19   prior to April 20, 2004.

20       44.   COMMUNICATIONS between YOU and Janine Brisbois prior to

21   September 27, 2005.

22       45.   COMMUNICATIONS between YOU and Ron Brawer prior to

23   October 2, 2004.

24       46.   COMMUNICATIONS between YOU and Carlos Gustavo Machado

25   Gomez ("Machado") prior to April 20, 2004.

26       47.   COMMUNICATIONS between YOU and Mariana Trueba Almada

27   ("Trueba") prior to April 20, 2004.

28

**Exhibit 16, Page 27**

1       48.    The existence or extent of competition or substitution between any

2  of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL

3  PRODUCTS.

4       49.    The factual basis for YOUR claim that any of the CONTESTED

5  MGA PRODUCTS have acquired secondary meaning or are famous.

6       50.    The factual basis for YOUR claim that any of MATTEL's actions

7  have caused actual dilution.

8       51.    Mattel's alleged intimidation, coercion or threats to retailers,

9  licensees, suppliers and others in the industry."

10       52.    The factual basis for YOUR claim that Mattel "serially imitated and

11  copy-catted [*sic*] the look of MGA products, trade dress, trademarks, themes, ideas,

12  advertising and packaging."

13       53.    The basis for YOUR claim that the Bratz dolls launched in 2001

14  were "unique and distinctive."

15       54.    The identification of YOUR alleged trade dress in connection with

16  the CONTESTED MGA PRODUCTS, including without limitation with respect to

17  "themes," and the factual bases for YOUR claim that YOU have any legally protected

18  interest in such trade dress.

19       55.    The factual basis for YOUR allegation that advertising executives

20  have expressed concern about "Bratz" and Mattel's "My Scene," what concerns they

21  expressed and the IDENTITY of each such executive.

22       56.    The factual basis for YOUR allegation that the press confused

23  YOUR products with MATTEL products and "has taken notice" of alleged confusion

24  between "Bratz" and "My Scene."

25       57.    All COMMUNICATIONS relating to customers who have allegedly

26  contacted YOU to purchase Mattel's "My Scene" dolls or any of the CONTESTED

27  MATTEL PRODUCTS.

28

58.   The factual basis for YOUR claim that MATTEL has infringed, diluted or otherwise violated any trade dress that YOU contend YOU own in the CONTESTED MGA PRODUCTS.

59.   The factual basis for YOUR claim that MATTEL has engaged in "strong-arm tactics, and other illegitimate, unfair and anti-competitive means."

60.   COMMUNICATIONS between YOU and any PERSON RELATING TO the departure from MATTEL of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

61.   COMMUNICATIONS between YOU and any PERSON RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

62.   COMMUNICATIONS between YOU and any current or FORMER MATTEL EMPLOYEE or MATTEL or contractor RELATING TO the ownership of any idea, concept, design, or product.

63.   COMMUNICATIONS between YOU and any PERSON RELATING TO the retention, destruction, transfer, or use of any information or DOCUMENTS known to or possessed by any current or former MATTEL employee or contractor.

64.   Mattel's alleged "warnings," "threats" or "intimidation" that are the subject of YOUR claims, including but not limited to all COMMUNICATIONS with any present or former licensees of MATTEL and any present or former distributors and retailers of MGA and MATTEL products.

65.   MATTEL's alleged responsibility for "shortage of doll hair in October 2002."

66.   MATTEL's alleged "manipulation of the retail market," including by its alleged tampering with MGA's retail displays.

67.   MATTEL's alleged false statements about YOU or YOUR business practices.

07209/2254636.1

-21-

**Exhibit 16, Page 29**

68.     MATTEL's alleged violation of any rules or restrictions relating to data provided to subscribers by NPD or any other wrongful conduct relating to NPD.

69.     COMMUNICATIONS between YOU and NPD, other than periodic reports transmitted by NPD or information made available to YOU by NPD, between January 1, 2000 and the present.

70.     YOUR contracts and agreements with NPD since January 1, 1999, including without limitation any allegation by NPD that YOU were or have been in breach or violation thereof.

71.     The status of YOUR NPD subscription between January 1, 1999 and the present.

72.     MATTEL's alleged inducement of CARU to place onerous restrictions on MGA advertisements, and require MGA to amend aspects of commercials that have gone unchallenged in other parties' commercials.

73.     COMMUNICATIONS between YOU and CARU between January 1, 2000 and the present RELATING TO MATTEL, ANY CONTESTED MGA PRODUCTS, ANY CONTESTED MATTEL PRODUCTS or any other subject or matter that YOU are relying upon in this ACTION.

74.     MATTEL's allegedly improper influence with or within TIA, including but not limited to the procedures for and manner in which the Toy of the Year was selected for 2003.

75.     YOUR COMMUNICATIONS with TIA RELATING TO Toy of the Year since January 1, 2000 or any other subject or matter on which YOU base any claim.

76.     MATTEL's purported power, influence and intimidation to threaten retailers, suppliers, licensees, distributors, manufacturers and industry bodies so as to limit or prevent MGA from doing business.

77.     MATTEL's alleged intimidation of or threats against MGA's current and potential employees.

1        78.    YOUR monthly, quarterly and annual financial reports, including

2 financial statements (both audited and unaudited) for the years 1998 through the

3 present, inclusive.

4        79.    The identity of DOCUMENTS that YOU have reason to believe

5 were created by or originated from MATTEL (excluding MATTEL products that YOU

6 purchased at retail) at any time since January 1, 1998.

7        80.    The destruction of any DOCUMENT RELATING TO the

8 CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

9        81.    COMMUNICATIONS with, or inquiry or investigation by, any

10 government entity, industry organization, safety compliance, or consumer organization

11 RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL

12 PRODUCTS.

13        82.    YOUR understanding or belief of whether the BRYANT/MGA

14 AGREEMENT was lawful when YOU entered into it, and DOCUMENTS and

15 COMMUNICATIONS related thereto.

16        83.    The public perception of the CONTESTED MGA PRODUCTS,

17 including without limitation with respect to the appropriateness or suitability of Bratz

18 for children.

19        84.    The factual basis for YOUR alleged belief that YOU had the right to

20 market products developed as a result of the BRYANT/MGA AGREEMENT and to the

21 lawful right to fully exploit the drawings drawn and presented by BRYANT prior to the

22 execution of the BRYANT/MGA AGREEMENT, and the DOCUMENTS and

23 COMMUNICATIONS YOU so relied upon when YOU entered into the agreement.

24        85.    The factual basis for YOUR contention that YOU believed at the

25 time YOU entered into the BRYANT/MGA AGREEMENT that it would be lawful for

26 YOU to acquire THE BRATZ PITCH MATERIALS from BRYANT, and the

27 DOCUMENTS and COMMUNICATIONS YOU so relied upon at the time YOU

28 entered into the BRYANT/MGA AGREEMENT.

07209/2254636.1

-23-

FOURTH NOTICE OF DEPOSITION OF MGA

**Exhibit 16, Page 31**

1        86.    YOUR belief or non-belief that BRYANT created or improved any

2  of THE BRATZ PITCH MATERIALS while employed by MATTEL, and the

3  DOCUMENTS and COMMUNICATIONS YOU so relied upon.

4        87.    Any investigation or inquiry YOU conducted to confirm the timing

5  of BRYANT'S work prior to executing the BRYANT/MGA AGREEMENT, including

6  but not limited to DOCUMENTS and COMMUNICATIONS RELATING thereto.

7        88.    The factual bases for YOUR affirmative defenses.

8        89.    The IDENTITY of all DOCUMENTS that were in the possession of

9  Farhad Larian that YOU claim were reviewed by Quinn Emanuel Urquhart Oliver &

10  Hedges LLP at any time prior to January 1, 2007.

11        90.    The factual bases for YOUR allegations in the GLASER LETTER,

12  including YOUR allegation that DOCUMENTS in the possession of Farhad Larian and

13  reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP were purportedly

14  privileged and confidential.

15        91.    Any services Farhad Larian has provided to YOU since January 1,

16  2005, including any litigation consulting services.

17        92.    The IDENTITY of DOCUMENTS that Farhad Larian was provided

18  with or had access to, including YOUR allegedly privileged and confidential

19  DOCUMENTS, since January 1, 2001.

20        93.    The terms of any contracts or agreements, including any

21  confidentiality agreements, between YOU and Farhad Larian.

22        94.    The identity of each doll, accessory, product, work or item

23  produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or

24  on YOUR behalf that was BASED ON any BRATZ DESIGN or any design derivative

25  of any BRATZ DESIGN.

26        95.    Except for deposition testimony provided in this ACTION, the

27  testimony, transcripts, declarations, affidavits and other sworn written statements of any

28  other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO

FOURTH NOTICE OF DEPOSITION OF MGA

1   BRATZ and that REFER OR RELATE TO the time period prior to June 30, 2001

2   (regardless of when such testimony or sworn statement was taken, given, signed, made

3   or filed).

4          96.    The authenticity, content, timing, meaning, and truth and accuracy

5   of YOUR COMMUNICATIONS with any PERSON, including without limitation any

6   retailer and the media, that REFER OR RELATE TO the National Labor Committee

7   dated December 21, 2006 entitled "Made in China: The Sweatshop Behind the Bratz"

8   or the Hau Tai K4 factory.

9          97.    The identity of each doll, product, packaging or other matter that

10   YOU have accused of infringing, diluting or otherwise violating YOUR purported

11   rights in any of the CONTESTED MGA PRODUCTS, the IDENTITY of each

12   manufacturer of each doll, product, packaging or other matter and the specific aspects

13   of each such doll, product, packaging or other matter that YOU have claimed was

14   confusingly or substantially similar to any of the CONTESTED MGA PRODUCTS.

15          98.    The identity, and outcome and resolution, of each lawsuit that YOU

16   have brought or cease and desist letter YOU have sent each doll, product, packaging or

17   other matter that YOU have accused of infringing, diluting or otherwise violating

18   YOUR purported rights in any of the CONTESTED MGA PRODUCTS.

19          99.    The job responsibilities of each FORMER MATTEL EMPLOYEE

20   in the first six months after each joined MGA.

21          100.   YOUR scheduling, planning, inventory, shipping, distribution or

22   forecasting software since January 1, 2005, including but not limited to any and all

23   changes, improvements, acquisitions, upgrades and purchases.

24          101.   DOCUMENTS created by each of the FORMER MATTEL

25   EMPLOYEES in the first six months after each joined MGA

26          102.   The make-up, source, calculation and purpose of the amounts

27   presented in MGA documents Bates-numbered MGA 0101018-21 (Exhibit 661) and

28   MGA 08185789 (Exhibit 662).

07209/2254636.1

-25-

**Exhibit 16, Page 33**