**EXHIBIT 4**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

| | |
|---|---|
| 12 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13       Plaintiff, | Consolidated with |
| 14      vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 15 MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| 16       Defendant. | NOTICE OF MOTION AND MOTION OF MATTEL, INC. FOR LEAVE TO TAKE ADDITIONAL DISCOVERY AND OBJECTIONS TO DISCOVERY MASTER ORDER OF SEPTEMBER 28, 2007; AND |
| 17 | |
| 18 AND CONSOLIDATED ACTIONS | |
| 19 | MEMORANDUM OF POINTS AND AUTHORITIES |
| 20 | [Declaration of B. Dylan Proctor filed concurrently] |
| 21 | |
| 22 | Hearing Date:  January 7, 2008 |
| 23 | Time:  10:00 a.m.<br>Courtroom:  1 |
| 24 | **Phase 1:** |
| 25 | Discovery Cut-off:  January 28, 2008<br>Pre-trial Conference:  May 5, 2008 |
| 26 | Trial Date:  May 27, 2008 |

27

28

07209/2299353.1

-i-

EXHIBIT _____   PAGE _____  15

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on January 7, 2008, at 10:00 a.m., or as soon

3  thereafter as the matter may be heard, in the courtroom of Honorable Stephen G.

4  Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. will,

5  and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure 26(b)

6  and the Court's February 12, 2007 Scheduling Order, for an order granting Mattel leave

7  to take additional depositions, including Rule 30(b)(6) depositions of defendants MGA

8  Entertainment, Inc., and MGAE de Mexico S.R.L. de C.V., beyond the current limit set

9  by the Court and to serve additional interrogatories on defendants. Pursuant to 28

10  U.S.C. § 636(b)(1), Mattel also seeks an additional 12 hours to depose Carter Bryant, in

11  addition to the seven hours already permitted by Discovery Master Infante.

12      Mattel makes this Motion on the grounds that the breadth and complexity of this

13  case warrant more than the 24 depositions and 50 interrogatories permitted by the

14  Court's Scheduling Order. Mattel further makes this Motion on the grounds that, given

15  Bryant's central role in the hundreds of products that MGA has sued upon in this case,

16  and because both the parties and third-parties have produced many millions of pages of

17  documents since Mr. Bryant's deposition in 2005, seven hours is not enough time to

18  fully depose Mr. Bryant.

19      This Motion is based on this Notice of Motion and Motion, the accompanying

20  Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed

21  concurrently herewith, the records and files of this Court, and all other matters of which

22  the Court may take judicial notice.

23

24

25

26

27      EXHIBIT __4__, PAGE __16__

28

1           **Statement of Local Rule 7-3 Compliance**

2       The parties met and conferred pursuant to Local Rule 7-3 on October 3, 2007,

3 and times thereafter, but were not able to resolve this motion.

4

5 DATED: November 19, 2007      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7                                By_____

8                                          Jon Corey
                                       Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                              EXHIBIT __4__ PAGE __17__

28

1

## **TABLE OF CONTENTS**

2                                                                                          **Page**

PRELIMINARY STATEMENT...............................................................................1

STATEMENT OF FACTS .................................................................................3

ARGUMENT ....................................................................................................6

I.      THE RULES CONTEMPLATE ADDITIONAL DISCOVERY....................6

        A.      Each Category of Claims Warrants More Depositions.........................8

                1.      The Bratz Claims Require Additional Depositions ....................8

                2.      Mattel's Trade Secret and RICO Claims and MGA's Unfair
                        Competition Claims Require Additional Depositions ...............12

        B.      Mattel Needs Additional Depositions Because the Integrity of
                MGA's and Bryant's Preservation of Documents Is At Issue...............14

        C.      Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-
                Duplicative Topics..........................................................................15

        D.      Mattel Meets The Requirements for Additional Discovery.................15

II.     THE COURT SHOULD GRANT LEAVE WITH RESPECT TO
        MATTEL'S INTERROGATORIES.............................................................16

III.    THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE
        BRYANT DEPOSITION ..........................................................................20

CONCLUSION ..................................................................................................25

EXHIBIT 4 PAGE 18

# TABLE OF AUTHORITIES

Page

### Cases

Andamiro v. Konami Amusement of Am.,
2001 WL 535667 (C.D. Cal. April 26, 2001).......................................................8

Bahn v. NME Hosps., Inc.,
929 F.2d 1404 (9th Cir. 1991) ........................................................................22

Bromgard v. Montana,
2007 WL 1101179 (D. Mont. April 11, 2007) .......................................... 11, 18

Collaboration Prop. v. Polycom, Inc.,
224 F.R.D. 473 (N.D. Cal. 2004).....................................................................8

Fresenius Med. Care Hldgs, Inc. v. Roxane Labs., Inc.,
2007 WL 764302  Proctor Dec., Ex. 43 ...........................................................23

Rx USA Wholesale, Inc. v. McKesson Corp.,
2007 WL 1827335 (E.D.N.Y. June 25, 2007)...................................... 7, 11, 19

Whittingham  v. Amherst Coll.,
163 F.R.D. 170 (D. Mass. 1995).......................................................................7

### Statutes

Cal. Civ. Code § 3426.1.....................................................................................20

Fed. R. Civ. P. 26(b)..................................................................................... 8, 20

Fed. R. Civ. P. 30(a)(2)(A) ............................................................................ 7, 20

Fed. R. Civ. P. 33 ..................................................................................... 7, 8, 20

Local Rule 7-3 ....................................................................................................3

Fed. R. Civ. P. 30(b)(6) ........................................................... 9, 14, 16, 17

Fed. R. Civ. P. 53(e) .........................................................................................21

EXHIBIT  4  PAGE  19

07209/2299353.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

In its Scheduling Order, the Court limited each side to 50 interrogatories and 24 fact depositions.  The Court recognized, however, that the case's complexity could require additional depositions or interrogatories and invited motions for additional discovery, if necessary:  "I don't want to say they are soft limits [on the number of depositions], but they are limits which the Court would certainly understand or would invite counsel to submit a motion to expand if there's reason to.  But I just want to have some parameters placed on this at the outset."  Likewise, with respect to the interrogatory limit, the Court stated:   "[L]et's try and work within the confines of the 50 interrogatories, and if you need more, again, the Court is going to be forthcoming, if there's a need for it."[1]  Mattel respectfully submits that time has come.

Under the Federal Rules, leave to take additional discovery "shall be granted" to the extent consistent with the principles set forth in Rule 26(b)(2).  Fed. R. Civ. P. 30(a)(2)(A) & 33(a).  The additional discovery Mattel seeks is appropriate under that framework.  It is not duplicative of prior discovery, Mattel has not had an adequate opportunity to take discovery on these matters, and the substantial benefits of discovery on these central issues outweigh any burden.  MGA has identified many dozens of witnesses with knowledge of the parties' claims or defenses. Mattel has sued MGA for inducing several Mattel employees to misappropriate many thousands of pages of documents containing Mattel trade secrets over an extended period of time.   For its part, MGA has accused over 400 Mattel products of infringing the trade dress of more than 200 MGA products.  As MGA has proclaimed, it will be seeking "billions" of dollars from Mattel on its claims alone.  Additional depositions are warranted given the breadth and complexity of the claims and defenses in this case and the stakes involved.

---

[1]   February 12, 2007 Scheduling Conference Tr. at 22:12-15 and 24:5-7, Exhibit 7 to the Declaration of B. Dylan Proctor, dated November 19, 2007 ("Proctor Dec.").

EXHIBIT __4__ PAGE _20_

1    To date, Mattel has taken 18 depositions, which leaves Mattel with six
2 remaining. Mattel has been able to take only one deposition on its counterclaims or
3 defenses to MGA's unfair competition claims, and as of yet, Mattel has been unable to
4 depose any of the individuals actively involved in the theft of Mattel's trade secrets.
5 The specific individuals who Mattel seeks to depose are identified below, along with
6 the justification for each. In addition, Mattel cannot obtain without the Court's leave
7 the corporate testimony of MGA or MGAE de Mexico on the facts related to either
8 MGA's unfair competition claims or Mattel's counterclaims. Mattel seeks leave to
9 serve the First Notice of Deposition of MGAE de Mexico, attached as Exhibit A, and
10 an additional Notice of Deposition of MGA, attached as Exhibit B, on those subjects.

11    Mattel also seeks leave to serve defendants with additional interrogatories.
12 Mattel has served interrogatories seeking MGA's contentions with respect to the
13 creation of Bratz and MGA's unfair competition claims. Mattel's proposed
14 interrogatories, which are attached as Exhibit C, seek information related to Mattel's
15 counterclaims and to MGA's claims against Mattel for alleged unfair competition, as
16 well as certain of defendants' defenses.[2]

17    Finally, Mattel seeks additional time to depose Mr. Bryant. Although Bryant was
18 deposed in 2004, since that time MGA and Bryant have produced millions of pages of
19 documents that they had long withheld until compelled by the Court, and the scope of
20 the claims in these consolidated cases has increased dramatically. Only after Bryant's
21 deposition occurred, MGA asserted its broad unfair competition claims against Mattel.
22 Only after Bryant's deposition occurred, Mattel asserted its counterclaims, including its
23 copyright infringement and RICO counterclaims, against Bryant and other defendants.
24 And, despite the fact that Mattel sought documents relating to the origins of Bratz
25

26    [2] Because defendants refuse to answer Mattel's previously served interrogatories based
on spurious claims that they exceed the 50 limit, Mattel seeks leave as to them to avoid
27 defendants' further quarreling over the counting of interrogatories and thereby obtain
obvious information about defendants' own contentions and other critical subjects.
28

EXHIBIT __4__ PAGE _21_

1  before Bryant's initial deposition, both MGA and Bryant were, unbeknownst to Mattel,

2  withholding such documents at the time of the deposition – this was discovered only

3  after multiple motions to compel brought by Mattel were granted.   Judge Infante

4  recognized that Bryant is the "most knowledge witness with respect to virtually all of

5  the factual issues" and claims in these matters.[3] Judge Infante nevertheless gave Mattel

6  only seven additional hours for Bryant's deposition (on top of two hours previously

7  granted due to Bryant's and his counsel's improper conduct during the prior deposition).

8  That simply is not enough to depose Bryant on MGA's claims, Mattel's counterclaims

9  and all the newly produced evidence that post-dates the 2004 deposition.   Mattel

10  therefore requests that this Court grant additional time of another 12 hours for a total of

11  21 additional hours to question Bryant.

12  **Statement of Facts**

13  <u>Mattel's Original Complaint</u>.  Mattel filed its initial Complaint on April 27, 2004,

14  alleging that Carter Bryant breached his duties to Mattel by working with and assisting

15  a Mattel competitor, MGA, while he was employed by Mattel.[4]  While at Mattel,

16  Bryant worked on the "Bratz" project.[5] On December 7, 2004, MGA filed an answer in

17  intervention claiming that the action put at issue MGA's rights to Bratz.[6]

18  <u>MGA's Complaint</u>.  MGA filed a complaint against Mattel on April 13, 2005

19  alleging that Mattel engaged in "serial copycatting" of the Bratz dolls.[7] Mattel's action

20  and MGA's action were later consolidated along with a declaratory relief action filed by

21  Bryant, which was later dismissed.[8]

22  <u>Mattel's Counterclaims</u>.  On November 19, 2006, Mattel moved for leave to

23  amend its complaint.  The Court granted Mattel's motion, allowing Mattel's new claims

---

[3]  9/27/07 Hearing Tr. at 24:24-25:2, Proctor Dec., Ex 85.
[4]  Proctor Dec., Ex. 1.
[5]  <u>Id.</u> ¶¶ 12-13.
[6]  Proctor Dec., Ex. 2.
[7]  Proctor Dec., Ex. 3.
[8]  Minute Order Re Consolidation (June 19, 2006), Proctor Dec., Ex. 4.

EXHIBIT ___4___ PAGE ___22___

1  to be alleged as counterclaims to MGA's complaint.[9]  Mattel filed its Second Amended

2  Answer and Counterclaims on July 12, 2007.  Mattel's counterclaims against MGA

3  Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L.

4  de C.V. include claims for copyright infringement, violation of RICO, conspiracy to

5  violate RICO, misappropriation of trade secrets, intentional interference with contract,

6  aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of

7  loyalty, conversion and unfair competition.[10]  MGA's current amended answer to

8  Mattel's counterclaims asserts twenty-two affirmative defenses.[11]

9       Scheduling Conference.  At the February 12, 2007, and as reflected in a Minute

10  Order, the Court limited depositions to 24 per side and interrogatories to 50 per side.[12]

11  The Court recognized that the parties might need more depositions or interrogatories:

12       I don't want to say they are soft limits [on the number of
13       depositions], but they are limits which the Court would
         certainly understand or would invite counsel to submit a
14       motion to expand if there's reason to.  But I just want to have
15       some parameters placed on this at the outset.
         . . .
16       [L]et's try and work within the confines of the 50
17       interrogatories, and if you need more, again, the Court is
         going to be forthcoming, if there's a need for it.[13]
18

19       Mattel's Interrogatories.  To date, Mattel has propounded 50 interrogatories.[14]  In

20  June 2007, Mattel propounded 19 interrogatories on MGA, MGA Hong Kong, Larian

21

---

22  [9]  1/11/07 Order Re Mattel's Motion for Leave to Amend, Proctor Dec., Ex. 5.
    [10]  See Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims,
23  dated July 12, 2007 ("Mattel's Counterclaims"), Proctor Dec., Ex. 16.
    [11]  See MGA's Amended Answer and Affirmative Defenses ("MGA's Amended
24  Answer"), Proctor Dec., Ex. 46.  MGA had filed its original answer on August 13, 2007.
25  Proctor Dec., Ex. 17.  After meeting and conferring, MGA acknowledged deficiencies in
    its defenses and served its amended answer on September 19, 2007.
26  [12]  2/12/07 Scheduling Order, at 1, Proctor Dec., Ex. 6.
    [13]  2/12/07 Scheduling Conference Tr., at 22:12-15 and 24:5-7, Proctor Dec., Ex. 7.
27  [14]  See Proctor Dec., Exs. 8-12, 15, 64-68.
28

EXHIBIT   4   PAGE   23

07209/2299353.1

-4-

1   and Bryant, seeking information about Bratz development, their affirmative defenses to

2   Mattel's claims, defendants' contentions regarding unfair competition claims and

3   MGA's benefit from Bratz.[15] Defendants claimed they exceeded the interrogatory limit,

4   and on September 5, 2007, Judge Infante ruled that identical interrogatories served on

5   multiple parties, as well as interrogatories asking defendants to "state all facts"

6   supporting a particular contention, "identify all persons with knowledge of such facts,"

7   and "identify all documents" relevant to such facts, would each count as only one

8   interrogatory.[16]   However, an interrogatory asking a party to state facts supporting

9   different affirmative defenses would count as a different interrogatory per defense.[17] In

10  accordance with that ruling, on September 21, 2007, Mattel served revised sets of

11  fifteen interrogatories.[18] Defendants nevertheless still refuse to substantively answer

12  these interrogatories, including because they allegedly exceed the number permitted.[19]

13      <u>Mattel Depositions</u>.   To date, Mattel has taken 18 depositions.   Mattel has had

14  good cause for each of those depositions.   They include:

- Carter Bryant – defendant

- Victoria O'Connor – former MGA executive with knowledge of MGA's and Larian's spoliation of evidence

- Jaqueline Prince – witness allegedly supporting Bryant's Bratz creation story

- Isaac Larian – defendant

- Steve Linker – third party with knowledge of work on Bratz before Bryant left Mattel

- Paula Garcia – Bratz project manager from the start who worked on Bratz with Bryant before he left Mattel

- Brooke Gilbert – Bryant's niece with knowledge of Bryant's computer on which Bryant installed and used "Evidence Eliminator"

---

[15]  Proctor Dec., Ex. 13.
[16]  9/5/07 Order Re Mattel's Interrogatories, at 5-6, Proctor Dec., Ex. 14.
[17]  <u>See id.</u> at 7.
[18]  Proctor Dec., Ex. 45.
[19]  <u>See</u> Proctor Dec., Exs. 73-74.

EXHIBIT __4__ PAGE __24__

- Kerri Brode – MGA employee with knowledge of Bryant's work on Bratz while at Mattel

- Dave Malacrida – MGA public relations employee with knowledge regarding early Bratz design and marketing

- Janet Bryant – Bryant's mother and relied upon by Bryant to establish alleged date of Bratz creation

- Thomas Bryant – Bryant's father and relied upon by Bryant to establish alleged date of Bratz creation

- Sarah Chui – worked on Bratz in 2000 for MGA Hong Kong

- Richard Irmen – Bryant's partner and relied upon by Bryant to establish alleged date of Bratz creation

- Maureen Tkacik – *Wall Street Journal* reporter to whom Larian stated, in an interview, that he chose Mr. Bryant's idea for the Bratz over several others after holding "a sort of fashion-doll design contest in late 1999" -- a time during which Bryant was employed by Mattel and months before MGA and Bryant now say they first were introduced

- MGA Entertainment, Inc. – defendant

- MGA Entertainment (HK) Limited – defendant

- Schyler Bacon – MGA employee who recruited Mattel employees who stole trade secrets

- Denise O'Neal – *Chicago Sun Times* reporter to whom Larian made prior inconsistent statements, including that MGA's creative team decided to use the "Brats" name but to change the "s" to a "z"

## Argument

## I.   THE RULES CONTEMPLATE ADDITIONAL DISCOVERY

The Federal Rules require that a party obtain leave before serving interrogatories or taking depositions beyond the limits established by the Court. See Fed. R. Civ. P. 33(a) (interrogatories); id. 30(a)(2)(A) (depositions). The purpose of these limits is to allow the Court to "maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of [w]ide ranging discovery". Rx USA Wholesale, Inc. v. McKesson Corp., 2007 WL 1827335, at *2-3 (E.D.N.Y. June 25, 2007) (quoting Whittingham v. Amherst Coll., 163 F.R.D. 170, 171-72 (D. Mass. 1995)). The limits, however, are not intended to "prevent needed discovery," and courts have "broad[] discretion" to allow

EXHIBIT   4   PAGE   25

1  additional discovery "based on the complexity" of the case at hand.  Notes of the
2  Advisory Committee (1993) to Fed. R. Civ. P. 26(b) & 33.  Leave to take additional
3  discovery "shall be granted" to the extent consistent with the principles set forth in Rule
4  26(b)(2). Fed. R. Civ. P. 30(a)(2)(A), & 33(a). Courts permit additional interrogatories
5  or depositions after considering whether:

> (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has [had] ample opportunity obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the party's resources, and the importance of the proposed discovery in resolving the issues.

Andamiro v. Konami Amusement of Am., 2001 WL 535667, at *2 (C.D. Cal. April 26, 2001) (depositions); see also Collaboration Prop. v. Polycom, Inc., 224 F.R.D. 473, 475 (N.D. Cal. 2004) (interrogatories).

## II.   MATTEL SHOULD BE GRANTED ADDITIONAL DEPOSITIONS

Mattel should be permitted to take more than 24 depositions in these consolidated cases.  This action contains three broad categories of significant claims, each of which necessitates additional depositions:  Mattel's Bratz-related claims, MGA's unfair competition claims, and Mattel's trade secret theft and RICO claims. MGA's supplemental initial disclosures identified 86 witnesses with knowledge of MGA's claims and defenses, 62 of whom are not Mattel employees.[20]  Mattel's supplemental disclosures contain nearly double the number of witnesses with knowledge, only 43 of whom are Mattel employees.[21] Based on the million-and-a-half pages that MGA has recently produced, Mattel is preparing third supplemental

---

[20]   See MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Larian's Initial Disclosures Under Rule 26(a)(1), dated September 21, 2007, at 1-16, Proctor Dec., Ex. 18.
[21]   See Proctor Dec., Ex. 19, at 3-19.

EXHIBIT  4  PAGE  26

1  disclosures which will name additional witnesses.  Mattel can rely on <u>Rule</u> 30(b)(6) to

2  obtain some information, but Mattel cannot effectively prosecute or defend these cases

3  with only 24 depositions.

4      **A.**   **<u>Each Category of Claims Warrants More Depositions</u>**

5         **1.**   **<u>The Bratz Claims Require Additional Depositions</u>**

6       The number of witnesses involved with the creation of Bratz or with knowledge

7  of Bryant's purported story about when he created – and the inconsistent stories that

8  MGA spun in the media – justify additional depositions.  For example, Bryant claims

9  that he created Bratz when he was not a Mattel employee.[22]  He initially identified three

10 people who he claimed could corroborate this story:  Tom and Janet Bryant (his

11 parents) and Richard Irmen (his partner).  Bryant's mother for the first time in this case

12 recently identified a fourth:  her friend, Jeanne Galvano.  Bryant will introduce their

13 testimony to vouch for his story, so Mattel obviously needs and is entitled to depose

14 them.  Similarly, Isaac Larian has repeatedly made conflicting, inconsistent statements

15 about Bratz's creation to the press, among others.[23]  Mattel thus far has deposed two of

16 the journalists who wrote those stories – depositions where Mattel's questioning lasted

17 far less than an hour.  Bryant's "alibi" witnesses and the reporters alone use up one-third

18 of Mattel's originally allotted 24 depositions.

19      In addition, at the time of the Scheduling Order, Bryant and MGA had said only

20 a handful of people worked directly on Bratz prior to 2002:  Bryant, Anna Rhee,

21 Mercedeh Ward, Margaret Leahy, Paula Garcia and unidentified people in Hong

22 Kong.[24]  In a recent supplemental interrogatory response, MGA identified 11 more

23 people who worked on the first Bratz dolls, including Sarah Halpern, Veronica Marlow,

24

25   [22]  Bryant Dep. Tr. at 140:9-141:8, Proctor Dec., Ex. 20.

    [23]  Proctor Dec., Ex. 21.

26   [24]  <u>See</u> Bryant's Objections and Responses to Second Set of Interrogatories

27 Propounded by Mattel, Inc., at 4, Proctor Dec., Ex. 22; MGA's Response to Mattel's

Second Set of Interrogatories, at 4:17-20, Proctor Dec., Ex. 23.

28                          EXHIBIT ___4___   PAGE ___27___

1   Cecilia Kwok, David Dees, Stephen Tarmichael, Edmond Lee, Franki Tsang, Samuel

2   Wong, Stephen Lee, William Ragsdale and Wendy Ragsdale (and Mattel now knows

3   that even this list is incomplete).[25] This list does not include anyone involved in early

4   sales, marketing, product testing or advertising of Bratz.

5          When a deponent possesses unique information, courts generally grant leave for

6   additional depositions because they do not undermine the key purpose of the limits –

7   preventing duplicative discovery. See, e.g., Bromgard v. Montana, 2007 WL 1101179,

8   at *2 (D. Mont. April 11, 2007).  Courts deny additional depositions when deponents

9   are likely to have common, interchangeable information. And, even in such instances,

10  courts may allow a limited number or sequential depositions to proceed. See, e.g., Rx

11  USA, 2007 WL 1827335, at *3 (allowing additional deposition testimony on one but

12  not both individuals with generalized information).

13         Here, Mattel seeks depositions of witnesses who each have specific, unique

14  personal knowledge of the Bratz claims as well as about other claims in the case. All of

15  them are third parties:

16  - Sarah Halpern – worked on the patterns for the first Bratz dolls

17  - Margaret Leahy – sculpted the first Bratz dolls and 4-Ever Best Friends

18  - Veronica Marlow – worked on the first Bratz doll fashions as well on
        products at issue in MGA's claims
19
    - Elise Cloonan – worked with Bryant on his Bratz pitch to MGA while both
20      were employed by Mattel

21  - Jesse Ramirez – worked on molds for Bratz

22  - Jeanne Galvano – alleged witness Bryant's mother recently claimed can
        verify facts relating to Bratz's creation
23
    - Stephen Lee – Managing Director of MGA Hong Kong during development
24      of Bratz and other products at issue

25  _____

26  [25]  MGA's Third Supplemental Responses to Mattel's Second Set of Interrogatories, at
    4:1-6:3, Proctor Dec., Ex. 24; see Linker Dep. Tr. at 59:22-64:9, Proctor Dec., Ex. 25
27  (testifying that Paula (Treantafelles) Garcia and Bryant approached him and his partner,
    Liz Hogan, before Bryant left Mattel to work on Bratz).
28

EXHIBIT  4    PAGE  28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Cecilia Kwok – MGA Hong Kong employee principally involved with first Bratz dolls

- Farhad Larian – brother of Isaac Larian, who sued Isaac Larian and alleged, inter alia, that MGA was working on Bratz by early 2000 (months before MGA and Bryant claim to have met) when he was a part owner of MGA[26]

- Certain as yet unidentified attorneys who represented parties to disputes between Isaac Larian and Farhad Larian in which the creation of and value of Bratz was at issue

- Sandra Bilotto – sculptor who worked on Prayer Angel dolls at issue[27]

- Anne Wang – represented Bryant in negotiations with MGA while he was a Mattel employee that led to the agreement dated "as of September 18, 2000"[28]

- David Rosenbaum – represented MGA in negotiations with Bryant's first agreement with MGA[29]

- Christensen Glaser LLP – firm to which Victoria O'Connor faxed the MGA/Bryant agreement that Isaac Larian had ordered her to alter[30]

- Lucy Arant – lawyer with knowledge of MGA's first use of Bratz

- Mitchell Kamarck – former MGA counsel who responsible for patent applications, including those in which Isaac Larian had claimed to be the inventor of Bratz features that Bryant has since testified he created[31]

- Carol Witschell – lawyer who worked on MGA trademark applications and other trademark matters at issue

- Nana Ashong – former MGA employee who stated Bratz was created during Bryant's employment by Mattel[32]

- Larry McFarland – wrote MGA copyright registrations that stated the Bratz dolls were created during 2000 and that, after this suit was filed, MGA claimed were incorrect

- Eric Yip – MGA Hong Kong Sales Administrator in 2000 and 2001, when Bratz were created and first shipped to Bandai in Spain[33]

---

[26]  See Larian Dep. Tr. at 159:17-160:14, Proctor Dec. Ex. 54.
[27]  Brode Dep. Tr. at 303:9-316:16, Proctor Dec. Ex. 55; Dep. Exhs. 607, 608, 609, Proctor Dec., Ex. 56.
[28]  See Bryant Tr. at 39:6-42:18, Proctor Dec. Ex. 60.
[29]  See O'Connor Dep. Tr. at 94:1-95:21, Proctor Dec., Ex. 61.
[30]  See O'Connor Tr. 17:3-19:19, Proctor Dec., Ex 75.
[31]  See Armstrong Dep. Tr. at 10:7-12, 26:16-23, 244:18-21, Proctor Dec. Ex. 62.
[32]  See Brode Tr. at 87:13-88:11, Proctor Dec., Ex. 55.
[33]  See Harris Dep. Tr. at 121:16-122:17, Proctor Dec. Ex. 63.

EXHIBIT  4  PAGE  29

07209/2299353.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Gentle Giant Studios – created relevant moldings and casts while Bryant was still employed at Mattel[34]

- Christopher Palmeri – *Business Week* reporter who wrote that Larian purportedly "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers"[35]

- Jeff Weiss – *San Fernando Valley Business Journal* reporter who quoted another inconsistent Larian statement concerning the origin of Bratz[36]

- Kickapoo High School – where Bryant allegedly found inspiration for Bratz and author of documents refuting that claim

- LA Focus – conducted Bratz focus groups, including focus groups that MGA denies occured

- Joyce Ng – independent contractor who moderated Bratz focus groups

- Rachel Harris – former MGA employee who worked on initial Bratz packaging as well as on other packaging which MGA's claims rest on

- Peter Marlow – spouse of Veronica Marlow who negotiated millions of dollars in payments for Bratz from Bryant on her behalf

- Andreas Koch – former MGA manager who has knowledge of Bryant's initial contacts with MGA

- Kami Gillmour – former Mattel and MGA employee who has knowledge regarding Paula Garcia's employment with MGA, confidential information taken from Mattel and MGA's projects at issue

- Mercedeh Ward – engineer on initial Bratz dolls and author of emails reflecting the use of Mattel property in its creation

- Moss Adams – accounting firm with knowledge of MGA's profits and distributions thereof to Larian (who owns 90% of MGA's shares)

- Wachovia Bank – bank identified as being involved in early Bratz financing and knowledgeable about MGA's net worth or value

- Amy Myers – formerly with MGA and has knowledge of Prayer Angels project that MGA has raised as a defense

- Two or three parties MGA sued for infringement of Bratz and whose identities are not yet known to Mattel – they will have knowledge of the dolls and other properties MGA has sued on in the past, which is relevant to refuting MGA's current claims that earlier iterations of Bratz products look nothing like subsequent iteration of Bratz products

---

[34] See Proctor Dec., Ex 72.
[35] Proctor Dec. Ex. 52.
[36] Proctor Dec. Ex. 53.

EXHIBIT 4 PAGE 30

Case 2:04-cv-09049-DOC-RNB   Document 1554-3   Filed 01/17/08   Page 18 of 92   Page ID
#:18657
Case 2:04-cv-09049-SGL-RNB     Document 1134     Filed 11/19/2007     Page 17 of 30

1    Further, many of these same witnesses are also knowledgeable as to MGA's

2    claims of unfair competition and Mattel's trade secret and RICO claims, as they

3    continued to work with MGA in later years.  For example, MGA has already identified

4    Halpern, Kwok, Leahy, Marlow, Lee, Ward and Yip as individuals involved with the

5    products at issue.[37]  Likewise, Ramirez continued working on molds for subsequent

6    Bratz dolls through at least 2005,[38] while  Kamarck,[39] Witschell,[40] Arant, and

7    McFarland[41] were involved in subsequent Bratz-related intellectual property matters.

8    As such, testimony from these witnesses is essential for both phases of trial.

9           **2.    Mattel's Trade Secret and RICO Claims and MGA's Unfair**

10                  **Competition Claims Require Additional Depositions**

11    Mattel has sued MGA for misappropriating Mattel trade secrets and RICO

12    violations by, among other things, stealing thousands of pages of Mattel confidential

13    information in the United States, Canada and Mexico.[42]  Mattel identified Ron Brawer,

14    Janine Brisbois, Gustavo Machado, Mariana Trueba Almada and Pablo Vargas as

15    individuals who misappropriated Mattel trade secrets.  The only person Mattel has been

16    able to depose on its counterclaims is Ms. Bacon, who coordinated MGA's recruiting of

17

18

19

20    _____

21    [37]  See MGA's Fourth Supp. Response to Interrogatory No. 1 of Mattel's First Set of
      Interrogatories Re Claims of Unfair Competition, at 10-12, 18, 19, Proctor Dec., Ex. 27.
22    [38]  See, e.g., Proctor Dec., Ex. 69 (showing various Bratz-related work in 2005).
      [39]  See, e.g., Armstrong Tr. 26:5-23, Proctor Dec., Ex. 62 (discussing involvement in
23    Bratz-related patent applications through 2004).
24    [40]  See, e.g., Proctor Dec., Ex. 70 (discussing involvement with Bratz registrations).
      [41]  See, e.g., Proctor Dec., Ex. 71 (discussing involvement with Bratz licensing).
25    [42]  Mattel's Counterclaims ¶¶ 37-54, 70-76, Proctor Dec., Ex 16.

26

27

28                                    EXHIBIT ___4___ PAGE ___31___

1  Mattel employees.[43]   Accordingly, Mattel seeks leave to take the depositions of the

2  following witnesses on such claims:[44]

3  - Ron Brawer – has knowledge of stolen Mattel trade secrets in the U.S.

4  - Janine Brisbois – former Mattel employee who stole Mattel trade secrets

5  - Gustavo Machado – former Mattel employee who stole Mattel trade secrets

6  - Mariana Trueba – former Mattel employee who stole Mattel trade secrets

7  - Pablo Vargas – former Mattel employee who stole Mattel trade secrets

8  - Ricardo Abundis – has knowledge of stolen Mattel trade secrets in Mexico

9  - Jorge Castilla – believed to have stolen Mattel trade secrets in the U.S.

10  - Nic Contreras – believed to have knowledge of stolen Mattel trade secrets

11  - Dan Cooney – believed to have knowledge of stolen Mattel trade secrets

12  - Susan Kuemmerle – believed to have knowledge regarding stolen Mattel

13  trade secrets in Mexico

14  - Shirin Salemnia – believed to have knowledge of stolen Mattel trade secrets

15  - MGAE de Mexico – defendant to trade secret theft and RICO claims

16  - MGA Entertainment, Inc. – defendant

17  Further, MGA has accused Mattel of trade dress infringement and dilution and

18  unfair competition in connection with more than 440 products.[45]   MGA has identified

19

20  [43]  Bacon Dep. Tr. at 12:12-13, 51:22-52:17, 86:8-12, and 114:19-116:9, Proctor Dec.,
     Ex. 28. And even with respect to Ms. Bacon's deposition, MGA attempted to prevent her
21  from testifying on the grounds that Mattel had not noticed her deposition individually, but
     only as a Rule 30(b)(6) designee. See Proctor Dec., Ex. 29.
22  [44]  These are those who Mattel has identified to date. Mattel anticipates that there may
23  be more who will need to be deposed in connection with MGA's unfair competition claims
     and Mattel's counterclaims because (a) it continues to review the over one-and-a-half
24  million pages of documents that MGA produced in the past month and (b) MGA, to date,
     has failed to identify how it anticipates defending Mattel's counterclaims or which
25  documents or witnesses it will rely upon to do so, including by its ongoing failures to
26  answer Mattel contention interrogatories related to its defenses to Mattel's counterclaims.
     [45]  MGA's Supp. Response to Interrogatory No. 2 Of Mattel, Inc.'s First Set of
27  Interrogatories Re Claims of Unfair Competition, at 5-19, Proctor Dec., Ex. 26.

28

EXHIBIT ___4___ PAGE ___32___

1   117 witnesses with knowledge of the creation or promotion of those products,[46]

2   including many of the persons listed above.  Mattel has taken the depositions of only

3   six of those 117 named individuals, and has not yet been able to depose two of them,

4   Bryant or Larian, regarding the unfair competition allegations.

5   **B.    Mattel Needs Additional Depositions Because the Integrity of MGA's**

6   **and Bryant's Preservation of Documents Is At Issue**

7   Mattel also is entitled to inquire about MGA's and Bryant's preservation and

8   production of evidence.  For example, as MGA's designee on document preservation

9   testified, MGA had only obtained off-site documents as of the summer of 2007 and had

10  searched none of these documents for responsive documents, even though the Court

11  had ordered MGA to produce them and MGA had previously represented that its

12  production was complete.[47]  Further, MGA's designee on MGA's electronic document

13  preservation and collection testified that MGA's only search of such information was a

14  single search of Isaac Larian's e-mails in 2005, nothing more.[48]  MGA's designee

15  repeatedly testified that Joe Tiongco, who Mattel seeks to depose, has more

16  knowledge.[49]  In the same vein, Mattel seeks to depose Daphne Gronich, who provided

17  the preservation declaration on MGA's behalf.[50]  In addition, there are serious issues

18  about Bryant's hard drives, including because of Bryant's prior counsel's conflicting

19  representations about their collection and preservation – and indeed even their

20  existence.  Mattel therefore seeks testimony on these subjects.[51]  Bryant's belated

21  revelation that he installed and used the "Evidence Eliminator" program on these drives

---

22  [46]  MGA's Fourth Supp. Resp. Unfair Comp. No. 1, at 5-16, Proctor Dec., Ex. 27.

23  [47]  9/24/07 Stip. and Order, Proctor Dec., Ex. 30; Tonnu Dep. Tr. at 612:13-612:15,

24  620:14-621:21, Proctor Dec., Ex. 31; 8/13/07 Order, at 14:18-22, Proctor Dec., Ex. 32.
    [48]  See Lockhart Deposition Tr. at 265:1-11, Proctor Dec., Ex. 33.

25  [49]  Id. at 116:2-14, 150:25-151:5, 158:10-15. 258:17-259:9, 265:1-11, 266:12-267:5.
    [50]  See Dec. of Daphne Gronich in Response to Court's Request for Information

26  Regarding Document Preservation, dated September 10, 2007, Proctor Dec., Ex. 34.
    [51]  Notice of Deposition of Littler Mendelson Pursuant to Federal Rule of Procedure

27  30(b)(6), dated September 6, 2007, Proctor Dec., Ex. 35.

28                                                EXHIBIT ___4___ PAGE 33

1  underscores all the more the legitimacy of full and fair discovery into the integrity of
2  his drives.

3  **C.      Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative**
4  **Topics**

5      MGA objected, and the Discovery Master has ruled, that a corporate party who
6  has been deposed pursuant to a Rule 30(b)(6) notice cannot be deposed pursuant to a
7  subsequent notice absent Court leave.[52]  Mattel has not propounded a Rule 30(b)(6)
8  Notice of Deposition on MGA or MGAE de Mexico related to either MGA's unfair
9  competition claims or Mattel's counterclaims.  Mattel's Notices of Deposition—
10 attached as Exhibits A and B—contain topics of testimony which relate to those
11 claims.[53]  Mattel has not previously served any Rule 30(b)(6) Notice on MGAE de
12 Mexico at all, and the topics in the additional Notice to MGA are not duplicative of
13 those in Mattel's prior Notices to MGA.[54]  Mattel respectfully submits that it should be
14 granted leave to proceed with those depositions.

15 **D.      Mattel Meets The Requirements for Additional Discovery**

16     When a deponent possess unique information, courts will generally allow leave
17 for additional depositions because they do not undermine the key purpose of the
18
19 [52]  9/25/07 Order Re Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under 30(b)(6), Proctor Dec., Ex. 36.
20 [53]  See Exhibits A & B.  Mattel's Fourth Notice of Deposition is far less than burdensome compared to MGA's recently served Notice of Deposition, which contains
21 more than 80 topics, each of which has many sub-parts.  See MGA Entertainment, Inc.'s Notice of Deposition of Mattel, dated September 5, 2007, Proctor Dec., Ex. 40.
22 [54]  Mattel's First Notice of Deposition was narrowly tailored to obtain information
23 related to MGA's contentions that Bryant and Anna Rhee had worked on Prayer Angels, not Bratz, while Bryant employed by Mattel.  Proctor Dec., Ex. 37.  Mattel's Second
24 Notice sought information related to Bratz, including Bratz revenues, costs and profits, and
25 evidence preservation and collection.  Proctor Dec., Ex. 38.  Mattel's Third Notice sought follow-up information on matters that had arisen in discovery, including with respect to
26 specific electronic evidence, specific individuals who worked on the first Bratz dolls,
27 payments made to witnesses or parties, and statements to reporters related to Bratz's creation and inspiration.  Proctor Dec., Ex. 39.
28

EXHIBIT __4__ PAGE 34

1  limits—preventing duplicative discovery. See, e.g., Bromgard, 2007 WL 1101179, at

2  *2 (D. Mont. April 11, 2007).  As explained above, Mattel seeks depositions of

3  individuals who each have specific, unique knowledge of the underlying events.

4      Without additional depositions, Mattel cannot discover the full extent of MGA's

5  wrongdoing or adequately prepare to defend against MGA's claims.  Mattel seeks a

6  declaration of ownership of Bratz works that Bryant created during his Mattel

7  employment and their derivatives – property that MGA and Bryant have claimed are

8  worth hundreds of millions of dollars and perhaps more.  Mattel has accused MGA of

9  stealing thousands of pages of Mattel's most valuable trade secrets, including product

10 lines, and strategic plans.  MGA has accused Mattel of infringing hundreds of MGA

11 products, alleging "billions" of dollars in damages.  In light of the magnitude of this

12 case, the burden or additional expense of these depositions pales in comparison to

13 Mattel's need to fully prepare to try this case.  As set forth above, the depositions that

14 Mattel seeks by this motion are not collateral, but go to the heart of its claims and

15 defenses.  See, e.g., Rx USA, 2007 WL 1827335, at *2-3 (additional depositions

16 warranted in a dispute between large corporations, given the complexity of the issues

17 and the parties' resources).

18 **III.  THE COURT SHOULD GRANT LEAVE WITH RESPECT TO**

19    **MATTEL'S INTERROGATORIES**

20     Two categories of interrogatories are involved here:  first, Mattel's proposed

21 additional interrogatories that it seeks leave to serve; and, second, interrogatories which

22 Mattel has already served on defendants.

23     **A.  Mattel Should Be Allowed To Propound Additional Interrogatories**

24     Mattel seeks leave to propound additional interrogatories related to MGA's unfair

25 competition claims and Mattel's counterclaims, and MGA's evidence collection and

26 preservation.  To properly prepare for trial, Mattel seeks leave to serve interrogatories

27 requiring defendants to identify the facts, documents and witnesses it will use to prove

28 its claims, defenses and damages.  Mattel's proposed interrogatories thus seek to

EXHIBIT ___4___ PAGE ___35___

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

07209/2299353.1

1  identify which specific Mattel designs or products defendants allege infringe on
2  defendants' designs[55] and trade dress[56] and the facts supporting those legal claims.[57]
3  Additionally, Mattel seeks to determine defendants' position regarding their
4  misappropriation of Mattel documents, including whether defendants contend that no
5  such documents were obtained improperly,[58] that the information contained therein has
6  no value as a trade secret,[59] that the information had been publicly disclosed,[60] that
7  defendants did not use or disclose such information,[61] that any such disclosure neither
8  benefited defendants nor harmed Mattel,[62] and that defendants have a right to possess,
9  use or disclose any such documents in their possession.[63]  These are essential elements
10 of the trade secret theft claim.  See Cal. Civ. Code § 3426.1.  Finally, Mattel seeks
11 information related to MGA's efforts to collect and preserve evidence relevant or
12 potentially relevant to this action.[64]

13         The proposed interrogatories are consistent with the factors set out in Rule 26(b)
14 and should be permitted.  They seek disclosure of specific relevant facts regarding
15 topics which have not been the subject of prior interrogatories.  The majority of Mattel's
16 prior interrogatories focused on issues related to creation and ownership of Bratz.[65]
17 Only Mattel's set of interrogatories relating to MGA's unfair competition claims could

18
19

20  [55]  See Mattel's Proposed Interrogatory No. 51.
     [56]  See Mattel's Proposed Interrogatory No. 52.
21  [57]  See Mattel's Proposed Interrogatories Nos. 53, 54, 55.
22  [58]  See Mattel's Proposed Interrogatory No. 56.
     [59]  See Mattel's Proposed Interrogatory No. 57.
23  [60]  See Mattel's Proposed Interrogatory No. 58.
     [61]  See Mattel's Proposed Interrogatory No. 59.
24  [62]  See Mattel's Proposed Interrogatory No. 60.
25  [63]  See Mattel's Proposed Interrogatory No. 61.
     [64]  See Mattel's Proposed Interrogatories Nos. 63-64.
26  [65]  See First Set to Bryant, Proctor Dec., Ex 8; First Set to MGA, Proctor Dec., Ex. 9;
27  Second Set to Bryant, Proctor Dec., Ex. 11; Second Set to MGA, Proctor Dec., Ex. 10;
     Third Set Revised, Proctor Dec., Ex. 45.
28                                        EXHIBIT  4  PAGE 36

07209/2299353.1
                                        -17-
                    MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1   conceivably overlap with the proposed interrogatories.[66] However, the interrogatories

2   already propounded focused on issues distinct from the proposed interrogatories—

3   specifically, facts relating to MGA employees involved with certain MGA products,[67]

4   MGA's alleged injuries,[68] MGA's allegations regarding Mattel's conduct with certain

5   third-parties in the industry[69] and MGA's allegations of product confusion.[70] These are

6   not duplicated in the interrogatories which Mattel is proposing.

7        Finally, the benefits of the proposed interrogatories outweigh any added burden,

8   as these type of facts are properly revealed through interrogatories, and the information

9   sought by the interrogatories will advance this litigation and avoid surprise at trial.

10  **B.    The Court Should Grant Leave With Respect To Mattel's**

11        **Outstanding Interrogatories That Defendants Will Not Answer**

12        To date, Mattel has served 50 interrogatories on the defendants. Yet, by

13  objecting to some of those previously served interrogatories served as being compound,

14  defendants refuse to answer on the purported ground that they exceed the Court's

15  limit.[71] Although defendants are wrong, the Court should eliminate further delay and

16  quarreling by defendants by simply granting Mattel leave to serve them regardless of

17  how they are counted.

18        Mattel has been seeking answers to these basic interrogatories for over five

19  months now. To justify their wholesale refusal to answer them, defendants claimed

20  they exceeded the Court's limit on the number of interrogatories. Mattel moved to

21  compel, defendants moved for a protective order, and in a September 5, 2007 Order

22  Judge Infante provided guidance on the counting of the interrogatories. Mattel then

23

24  [66]  See First Set Re Unfair Comp., Proctor Dec., Ex. 12.
    [67]  See id. No. 1.

25  [68]  See id. No. 4.
    [69]  See id. Nos. 5, 8, 9, and 10.

26  [70]  See id. No. 7.

27  [71]  See Bryant's Objections to Revised Third Set, Proctor Dec., Ex. 73; Bryant's
    Objections to Amended Fourth Set, Proctor Dec., Ex. 74.

28

EXHIBIT __4__ PAGE _37_

1  propounded revised interrogatories that were consistent with the Discovery Master's

2  Order.

3      Defendants nevertheless claim, once again, that Mattel exceeds its 50 allotted

4  interrogatories. Not only is this without merit,[72] but it is clear that defendants rehash

5  this objection for no other reason than to obstruct. Bryant refuses to answer any

6  interrogatory past No. 27 because "Mattel has propounded more than 50

7  interrogatories."[73] And, even the minimal answers he gave to others amply confirms

8  that he continues to stonewall on even basic discovery in this case. MGA makes

9  essentially the same objection.[74] Accordingly, through nothing more than creatively

10 _____

11 [72] The essence of the defendants' objection is that Mattel's revised interrogatories are compound interrogatories because they improperly require them to respond to individual

12 interrogatories with "different and distinct facts." See Bryant's Objections to Revised Third Set, at 18; Bryant's Objections to Amended Fourth Set, at 4. For example,

13 defendants frivolously object to having to identify both the name of a product and its corresponding product number. But Judge Infante ruled on this matter, explaining that

14 interrogatories "'containing subparts directed at eliciting details concerning [a] common theme should be considered a single question,'" while interrogatories on "discrete issues"

15 should be treated as multiple interrogatories. Order re Mattel's Interrogs., at 5 (quoting 8A Wright & Miller, Federal Practice & Procedure § 2168.1 (2d ed. 1994)); see also id. at 7.

16 The scope of Mattel's revised interrogatories is no different than those which Judge Infante

17 ruled were permissible, as in both instances the "subparts are related and directed to the

18 underlying details of a specifically identified" subject. See id. Judge Infante specifically observed that under the Advisory Committee notes, interrogatories which required distinct

19 factual answers relating to the same subject—e.g., the time, place, persons present, and

20 contents of a particular communication—should be treated as a single interrogatory. See id. Mattel's revised interrogatories are not compound, and defendants' arguments to the

21 contrary are groundless: the fact that an interrogatory answer requires different facts does

22 not convert it into a compound interrogatory on different issues.

   [73] Bryant's Objections to Revised Third Set, at 7. Bryant then makes the same

23 objection to the remaining 23 interrogatories.

   [74] See MGA's Objections to Revised Third Set, at 8, Proctor Dec., Ex. 76; MGA (HK)

24 Ltd.'s Objections to Revised Third Set, at 17, Proctor Dec., Ex. 77; MGAE de Mexico's

25 Objections to Revised Third Set, at 8, Proctor Dec., Ex. 78; Larian's Objections to Revised Third, at 8, Proctor Dec., Ex. 79; MGA's Objections Amended Fourth Set, at 7, Proctor

26 Dec., Ex. 80; MGA (HK) Ltd.'S Objections to Amended Fourth Set, at 7-8, Proctor Dec.,

27 Ex. 81; MGAE de Mexico's Objections to Amended Fourth Set, at 8, Proctor Dec., Ex. 82; Larian's Objections to Amended Fourth Set, at 7, Proctor Dec., Ex. 83.

28

EXHIBIT __4__ PAGE __30__

1  counting a few interrogatories as a multitude, defendants manufacture grounds to delay
2  yet more and refuse obviously appropriate discovery.  To the extent that defendants
3  have substantive objections to specific interrogatories, these issues may be properly
4  heard before the Discovery Master.  But defendants should not be permitted to serially
5  raise the same objection to a few specific interrogatories in order to delay for yet more
6  months in responding to the bulk of Mattel's interrogatories.  Mattel requests that this
7  Court cut through this issue by granting Mattel leave, to the extent needed, to serve
8  each of the interrogatories that have been served to date regardless of how they are
9  counted.

10  **IV.   THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE**
11        **BRYANT DEPOSITION**

12       On September 28, 2007, the Discovery Master issued an Order Granting in Part
13  Mattel's Motion for Additional Time to Depose Carter Bryant for All Purposes,
14  granting Mattel seven additional hours to depose Bryant (in addition to 2 hours
15  previously granted based on counsel's dozens of improper instructions not to answer at
16  the Bryant deposition), but denying Mattel the 21 hours that it sought.[75]   Mattel
17  respectfully submits that the facts, as determined by the Discovery Master, justify far
18  more than seven additional hours, and the Court should grant additional time.

19       Mattel does not contest the Discovery Master's factual findings in any way.  To
20  the contrary, the underlying factual findings were plainly correct.  As Judge Infante
21  noted, Mattel's deposition of Bryant in 2004 took place before MGA even brought its
22  unfair competition claims and before Mattel filed its counterclaims, and Mattel had no
23  opportunity to depose Bryant on either.[76]   Thus, as Judge Infante justifiably found:

24      •   The new claims and defenses that were added to the case after Bryant's
        deposition justify additional deposition time. . . . Without question,
25

---

26  [75]   Order Granting in Part Mattel's Motion for Additional Time to Depose Carter
Bryant for All Purposes (Sept. 28, 2007) ("Order re Additional Time"), at 8:7-13, Proctor
27  Dec., Ex. 43.
   [76]   Id. at 5:2-10.
28

EXHIBIT   4   PAGE   39

1        Bryant is a critical witness regarding MGA's unfair competition claims and Mattel has not had an opportunity to depose him on such claims.[77]

2    • In addition, Mattel filed a counterclaim against Bryant, MGA, and
3      other defendants in 2007, asserting thirteen different claims . . . .
       Bryant filed an answer asserting over twenty affirmative defenses.
4      Mattel has not had an opportunity to depose Bryant on any of these
       claims or defenses.[78]

5    • Bryant is the central figure in this litigation and arguably the most
6      important witness *for virtually every claim in the case.* No other
       witness in the case has his depth and breadth of relevant information.[79]

7        Bryant and MGA cannot dispute any of this. In interrogatory responses, MGA

8    lists Bryant as a person directly involved with and knowledgeable about the allegedly

9
     infringed MGA products that MGA has put at issue.[80]  MGA's responses to Mattel's
10
     interrogatories also state that the underlined entire Bratz line is the subject of MGA's claims, and
11
     an MGA witness has declared that there are more than 200 Bratz products.[81]  Moreover,
12
     Paula Garcia, MGA's Vice President of Product Design and Development, has declared
13
     that she and  Bryant are "the *only* people who know what the concept is and who see
14
     the early product drawings" with respect to many Bratz products.[82]  That is particularly
15
     important because many of both Mattel's *and* MGA's claims will turn on the source and
16
     timing of these products at issue.  As the Court knows, Mattel's defenses to MGA's
17
     infringement claims rest, in part, on the fact that it was MGA which stole and copied
18
     Mattel products through its trade secret thefts.  Testimony on the origins of those MGA
19
     products and when they were created is indispensable.
20

21

22   [77]  Id. at 5:4-5.
     [78]  Id. at 5:6-10.
23   [79]  Id. at 5:15-17 (emphasis added).
     [80]  MGA's Responses to Mattel's First Set of Interrogatories Re Claims of Unfair
24   Competition, dated January 19, 2007, Response No. 1, at 6:9, Proctor Dec., Ex. 57.
     [81]  See Declaration of Patricia Perrier in Support of MGA's Opposition to Mattel's
25   Motion to Try All Claims Related to Bratz Ownership in Phase One, dated May 25, 2007,
26   at ¶ 2, Proctor Dec., Ex. 58; MGA Sup. Resp. Unfair Comp. No. 2, Proctor Dec., Ex. 26.
     [82]  Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's Motion to
27   Compel, dated February 9, 2007, ¶ 6 (emphasis in original), Proctor Dec., Ex. 59.
28
                                          EXHIBIT __4__  PAGE 40

07209/2299353.1

1    Bryant is also obviously a crucial witness on Mattel's copyright infringement,

2  RICO and other counterclaims, which raise a host of new issues Bryant has not been

3  deposed on. According to MGA, Mattel's copyright infringement claim against Bryant

4  alone relates to "*hundreds* of products."[83]  Bryant was also personally involved, either

5  as sender or recipient, in approximately 100 of the predicate acts of mail and wire fraud

6  alleged by Mattel. [84]  Mattel is entitled to question Bryant about these and all the other

7  issues presented for the first time by Mattel's counterclaims and Bryant's answer.

8    Moreover, as Judge Infante found, "new evidence justifies additional time to

9  depose Bryant."[85]  Judge Infante noted that Bryant's deposition took place before "98

10  percent of Bryant's and MGA's collective document production took place"[86] – and that

11  did not even reflect the more than a million-and-a-half pages, that MGA has produced

12  in recent weeks.[87]  In truth, *99.9% of defendants' production in this case has occurred

13  only after Bryant's 2004 deposition*. Thus, Mattel has had no opportunity to examine

14  Bryant on the vast bulk of the evidence, whether relevant to new claims or the original

15  ones.  This includes, for example:

16  •    Bryant's fee agreements with MGA, which reflect that MGA is paying
      Bryant's legal fees at its discretion, and which were withheld by Bryant
17      even in the face of prior court orders;

18  •    Bratz design drawings produced by Bryant for the first time this year,
      only after being ordered, which bear handwritten dates of September
19      19, 1999, at time when Bryant was employed by Mattel;

20  •    Bryant's desktop hard drive, which reveals his use of "Evidence
      Eliminator" software, which was not produced until compelled this
21      year.

---

22  [83]  See MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz

23  Ownership in Phase One at 3:12-19.
    [84]  See Mattel's Second Amended Answer & Counterclaims, Exhibit C.
24    [85]  Order re Additional Time at 5:20 (font altered), Proctor Dec., Ex. 43.
    [86]  Id. at 5:24-27, Proctor Dec., Ex. 43. Notably, Judge Infante calculated the 98
25  percent number based on MGA's production of 157,000 pages of documents as of the close
26  of briefing in late August. Since that time MGA has produced over a million-and-a-half
27  pages of documents. See Proctor Dec. ¶ 45.
    [87]  See Proctor Dec. ¶ 45.

28                                  EXHIBIT  4   PAGE  41

1    •   Original Bratz drawings, which Bryant did not make available for inspection until this summer, after being ordered to do so, notwithstanding his promise that he would produce such documents at the 2004 deposition.

2

3    •   A fax from Bryant to David Rosenbaum, outside counsel for MGA, dated September 14, 2000, wherein Bryant stated that he could not ask Mattel's Human Resources any more questions about his contract with Mattel "without risking suspicion."

4

5

6    •   October 10, 2000 e-mails between Isaac Larian, Victoria O'Connor and Paula Garcia (formerly Treantafelles), reflecting that Bryant worked on Bratz with MGA "on average about 4 hours a day," starting at least six weeks before he left Mattel.

7

8    •   Invoices showing that Veronica Marlow, a key third party, billed MGA for 169 hours of development services on Bratz that were performed before Bryant left Mattel.

9

10   The list of new evidence that was requested by Mattel before Bryant's deposition but

11   first produced by defendants only later literally goes on and on. As Judge Infante

12   ruled, "a witness may be re-deposed with respect to . . . new developments" in a

13   case, including new documents such as these, as well as new claims.[88]

14

15        Despite his factual findings, Judge Infante ruled that Mattel is only entitled to an

16   additional seven hours of deposition. Previously Judge Infante had gave Mattel two

17   additional hours as a result of the improper instructions and objections by counsel at

18   Bryant's deposition.[89] So, under Judge Infante's ruling, Mattel has been limited to only

19   seven hours to depose Bryant – the "most important witness for virtually every claim in

20   the case"[90] – on MGA's claims, Mattel's counterclaims, the hundreds of MGA and

21   Mattel products now at issue about which Bryant has unique knowledge, and the vast

22   amounts of recently produced new evidence. This is unfair. The ruling that Mattel be

23

24   ───────────────

[88]    Order re Additional Time at 4:20-24 (quoting Fresenius Med. Care Hldgs, Inc. v.

25   Roxane Labs., Inc., 2007 WL 764302 (S.D. Ohio 2007)), Proctor Dec., Ex. 43.

[89]    Order re Additional Time at 7:24-25, Proctor Dec., Ex. 43; see Order Granting In

26   Part And Denying In Part Mattel's Motion To Overrule Instructions Not To Answer During

27   The Deposition Of Carter Bryant (March 7, 2007), Proctor Dec., Ex. 44.

[90]    Id. at 5:15-17.

28                                          EXHIBIT __4__ PAGE __42__

1  granted only seven additional hours is clearly erroneous given Bryant's singular
2  importance, the magnitude of this case and the tectonic shift of claims.

3  Also, based on <u>Rule</u> 30's "presumptive one day, seven-hour limitation on
4  depositions," Judge Infante awarded Mattel a total of 7 hours to depose Bryant on all of
5  MGA's claims and all of Mattel's counterclaims.[91] It is simply impossible to conduct a
6  deposition on those claims – which had not even been filed when Bryant was first
7  deposed – in that amount of time. Judge Infante apparently awarded Mattel no
8  additional time based on new evidence, even though 99.9% of defendants' production
9  has taken place since the 2004 deposition. That effectively punishes Mattel for
10 defendants' discovery misconduct. Mattel requested defendants' documents before the
11 deposition took place; defendants withheld them at their own peril, not at Mattel's.[92]
12 Mattel is entitled to a fair amount of time to depose the key witness in the case on the
13 new claims and evidence he has not been deposed on. The Court should afford that,
14 and grant Mattel a total of 21 hours for the deposition.[93]

---

[91] <u>Id.</u> at 8:10-13.
[92] <u>See, e.g.</u>, <u>Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.</u>, 2007 WL 764302, at *2 (S.D. Ohio 2007) (originally cited by Bryant to Judge Infante) (allowing second deposition because defendant failed to produce requested documents prior to first deposition); <u>Robins v. Scholastic Book Fairs</u>, 928 F. Supp. 1027, 1036 (D. Or. 1996) ("the second set of depositions of these individuals was necessary because they had to be questioned about additional documents that Defendant produced after the first set of depositions"); <u>Ritchie v. U.S.</u>, 2004 WL 1161171, at *3 (N.D. Cal. 2004) ("when further evidence linking [witness to the project in dispute] subsequently came to light this court permitted plaintiff to depose [the witness] a second time").
[93] In the alternative, the Court should excercise its discretion to enlarge Mattel's time to depose Bryant. The Court previously extended MGA's deadlines to produce documents that it was compelled to produce even though Judge Infante had specifically *rejected* MGA's request for additional time to comply and despite MGA's failure to show there was any error in that ruling. Here, there can be no dispute that the Court has the right to ensure that the parties receive fair discovery, proportionate to the magnitude and complexity of the case, and that trial in this matter is conducted without undue surprises which will cause prejudice and waste the time of the Court and the jury.

EXHIBIT __4__ PAGE __43__

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Conclusion</u>**

For the foregoing reasons, Mattel respectfully requests that the Court grant Mattel's motion for leave.

DATED:  November 19, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By<u>Jon Corey /s/</u>
          Jon Corey
          Attorneys for Mattel, Inc.

EXHIBIT __4__ PAGE __44__

07209/2299353.1

-25-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

# EXHIBIT A

EXHIBIT __4__ PAGE __45__

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2 |   (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3 |   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4 |   (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5 |   (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Mattel, Inc.

9 |

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12 | EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with |
| | Case No. CV 04-09059 |
| vs. | Case No. CV 05-02727 |
| MATTEL, INC., a Delaware corporation, | NOTICE OF DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |
| Defendant. | |

| AND CONSOLIDATED ACTIONS | |

EXHIBIT __4__ PAGE __46__

07975/2280277.2

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |      PLEASE TAKE NOTICE that on _____, 200_ beginning at

3 | 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of

4 | defendant MGAE de Mexico, S.R.L. de C.V. at the offices of Quinn Emanuel

5 | Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles,

6 | CA 90017.  Pursuant to Fed. R. Civ. P. 30(b)(6), MGAE de Mexico, S.R.L. de C.V.

7 | shall designate one or more officers, directors, managing agents or other persons

8 | who consent to testify on its behalf concerning each of the topics set forth in

9 | Exhibit A hereto.

10 |      PLEASE TAKE FURTHER NOTICE that the deposition will take

11 | place before a duly authorized notary public or other officer authorized to administer

12 | oaths at depositions, and will continue from day to day, Sundays, Saturdays and

13 | legal holidays excepted, until completed.

14 |      PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

15 | P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use

16 | Livenote or other technology for real-time transcription of the testimony.

17 |

18 | DATED:  December___, 2007    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

19 |

20 |     By_____

21 |      Jon Corey
        Attorneys for Mattel, Inc.

22 |

23 |

24 |

25 |

26 |

27 |

28 |

EXHIBIT __4__ PAGE __47__

07975/2280277.2

-1-

## EXHIBIT A

1.    "YOU," "YOUR" or "MGA" means MGAE de Mexico, S.R.L. de C.V., any of its current or former employees (including but not limited to MACHADO, TRUEBA and VARGAS) , officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.    "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

3.    "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.  Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

EXHIBIT __4__ PAGE __40__

-2-

07975/2280277.2

1    4.    "DESIGN" or "DESIGNS" means any and all representations,
2    whether two-dimensional or three-dimensional, and whether in tangible, digital,
3    electronic or other form, including but not limited to all works, designs, artwork,
4    sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
5    diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
6    practice, developments, inventions and/or improvements, as well as all other items,
7    things and DOCUMENTS in which any of the foregoing are or have been
8    expressed, embodied, contained, fixed or reflected in any manner, whether in whole
9    or in part.

10    5.    "BRATZ DOLL" means any doll that is or has ever been
11    distributed, marketed, sold or offered for sale under the name "Bratz" or as part of
12    the "Bratz" line.

13    6.    "BRATZ PRODUCT" means any product, whether two-
14    dimensional or three-dimensional, and whether in tangible, digital, electronic or
15    other form: (i) that is or has ever been distributed, marketed or sold under the name
16    "Bratz" or as part of the "Bratz" line; (ii) depicts, incorporates, embodies, consists of
17    or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever been
18    distributed, marketed or sold in any packaging that includes the name "Bratz" or
19    depicts, incorporates, embodies, consists of or REFERS OR RELATES TO
20    BRATZ.

21    7.    "BRATZ LICENSE" means any license that REFERS OR
22    RELATES TO any BRATZ PRODUCT.

23    8.    "SYSTEM" or "SYSTEMS" means any computer or network of
24    computers or other network devices that allow a two or more computers to share
25    information and equipment, including but not limited to local area networks, wide area
26    networks, storage area networks, client-server networks or peer-to-peer networks. The
27    use of the term "SYSTEM" or "SYSTEMS" also includes the brand, model number,
28

EXHIBIT ___4___ PAGE ___49___

07975/2280277.2

-3-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  technical specifications, and capacities of the computers who are part of each such
2  SYSTEM.

3      9.    "DIGITAL INFORMATION" means any information created or
4  stored digitally, including but not limited to electronically, magnetically or optically.

5      10.    "ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-
6  9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated
7  therewith.

8      11.    "IDENTITY" means the following:

9          (a)    with reference to an individual or individuals, means to
10  state, fully and separately as to each, such individual's full name, any known
11  business title, current or last known business affiliation, current or last known
12  residential address, current or last known business address, current or last known
13  relationship to MGA, and current or last known telephone number.

14          (b)    with reference to an entity or entities, means to state, fully
15  and separately as to each, such entity's full name, state (or country) of incorporation
16  or organization, present or last known address, and present or last known telephone
17  number.

18          (c)    with reference to any other DOCUMENT or
19  DOCUMENTS, means to describe each DOCUMENT by Bates number.  In the
20  event that a DOCUMENT does not have a Bates number, IDENTITY means, with
21  respect to each such DOCUMENT, to provide a complete description of it such that
22  it may be the subject of a request for the production of documents, including by
23  stating the date, IDENTITY of the author, addressee(s), signatories, parties, or other
24  PERSONS identified therein, its present location or custodian and a description of
25  its contents.

26      12.    "RELATING TO" or "REFERS OR RELATES TO" means
27  constituting, embodying, containing, referring to, commenting on, evidencing,
28  regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to,

07975/2280277.2

-4-

EXHIBIT  4  PAGE 56

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1   concerning, supporting, contradicting, negating, revoking or otherwise relating to in

2   any manner.

3       13.    "COMMUNICATION," in the plural as well as the singular,

4   means any transmittal and/or receipt of information, whether such was oral or

5   written, and whether such was by chance, prearranged, formal or informal, and

6   specifically includes, but is not limited to, conversations in person, telephone

7   conversations, electronic mail (including instant messages and text messages),

8   voicemail, letters, memoranda, statements, media releases, magazine and newspaper

9   articles, and video and audio transmissions.

10      14.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS"

11  as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and

12  <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not limited to, all

13  writings and records of every type and description including, but not limited to,

14  contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic

15  mail ("e-mail"), records of telephone conversations, handwritten and typewritten

16  notes of any kind, statements, reports, minutes, recordings, transcripts and

17  summaries of meetings, voice recordings, pictures, photographs, drawings,

18  computer cards, tapes, discs, printouts and records of all types, studies, instruction

19  manuals, policy manuals and statements, books, pamphlets, invoices, canceled

20  checks and every other device or medium by which or through which information of

21  any type is transmitted, recorded or preserved.  Without any limitation on the

22  foregoing, the term "DOCUMENT" shall include all copies that differ in any respect

23  from the original or other versions of the DOCUMENT, including, but not limited

24  to, all drafts and all copies of such drafts or originals containing initials, comments,

25  notations, insertions, corrections, marginal notes, amendments or any other variation

26  of any kind.

27      15.    "PERSON" or "PERSONS" means all natural persons,

28  partnerships, corporations, joint ventures and any kind of business, legal or public

07975/2280277.2

-5-

EXHIBIT ___4___ PAGE 51

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  entity or organization, as well as its, his or her agents, representatives, employees,

2  officers and directors and any one else acting on its, his or her behalf, pursuant to

3  its, his or her authority or subject to its, his or her control.

4      16.    "LARIAN" means Isaac Larian, and all of his past or present

5  employees, officers, agents, representatives, attorneys, consultants, independent

6  contractors, any predecessors or successors in interest, and any other PERSON

7  acting on his behalf, pursuant to his authority or subject to his control.

8      17.    "MACHADO" means Carlos Gustavo Machado Gomez, and all

9  of his current or former employees, agents, representatives, attorneys, accountants,

10  vendors, consultants, independent contractors, predecessors-in-interest and

11  successors-in-interest, and any other PERSON acting on his behalf, pursuant to his

12  authority or subject to his control.

13      18.    "TRUEBA" means Mariana Trueba Almada, and all of her

14  current or former employees, agents, representatives, attorneys, accountants,

15  vendors, consultants, independent contractors, predecessors-in-interest and

16  successors-in-interest, and any other PERSON acting on her behalf, pursuant to her

17  authority or subject to her control.

18      19.    "VARGAS" means Pablo Vargas San Jose, and all of his current

19  or former employees, agents, representatives, attorneys, accountants, vendors,

20  consultants, independent contractors, predecessors-in-interest and successors-in-

21  interest, and any other PERSON acting on his behalf, pursuant to his authority or

22  subject to his control.

23      20.    "FORMER MATTEL EMPLOYEES" means any former

24  MATTEL employee who left MATTEL to join YOU, including but not limited to

25  MACHADO, TRUEBA and VARGAS.

26      21.    The singular form of a noun or pronoun includes within its

27  meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of

28  the masculine form of a pronoun also includes within its meaning the feminine form

EXHIBIT 4 PAGE 52

07975/2280277.2

-6-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1   of the pronoun so used, and *vice versa*; the use of any tense of any verb includes

2   also within its meaning all other tenses of the verb so used, whenever such

3   construction results in a broader request for information; and "and" includes "or"

4   and *vice versa*, whenever such construction results in a broader disclosure of

5   documents or information.

### Topics of Examination

7       1.      YOUR knowledge of any MATTEL product prior to the time

8   that such product had been announced or disclosed by MATTEL to retailers or the

9   public.

10      2.      YOUR receipt, reproduction, copying, storage, transmission,

11  transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or

12  information, including but not limited to any compilation of information, that was

13  prepared, made, created, generated, assembled or compiled by or for MATTEL and

14  that was not publicly available at the time of YOUR receipt of such DOCUMENT,

15  data and/or information.

16      3.      YOUR receipt, reproduction, copying, storage, transmission,

17  transfer, retention, destruction, deletion or use of any MATTEL line list or other

18  DOCUMENT prepared by MATTEL identifying MATTEL products in the planning,

19  design or development phase.

20      4.      The hiring, engagement or retention by YOU of any current or

21  former MATTEL employee or contractor, including but not limited to the terms of

22  all employment agreements and agreements RELATING TO confidentiality or the

23  invention, authorship, or ownership of any concept or product.

24      5.      The seizure of DOCUMENTS by Mexican authorities from

25  YOUR office in Mexico City, Mexico, including but not limited to the IDENTITY

26  of such DOCUMENTS and YOUR PRESERVATION of any MATTEL authored

27  DOCUMENT after the execution of the search warrant by Mexican authorities.

28                              EXHIBIT 4  PAGE 53

07975/2280277.2

-7-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1      6.    COMMUNICATIONS RELATING TO the search of YOUR

2 office in Mexico City, Mexico that was conducted by Mexican authorities.

3      7.    The IDENTITY of all DOCUMENTS received by YOU, directly

4 or indirectly, from any FORMER MATTEL EMPLOYEE authored by or for the

5 benefit of MATTEL, or RELATING TO MATTEL or any MATTEL product, plan,

6 client, customer, current or former MATTEL employee, sales, advertising,

7 marketing, analysis, tool or procedure.

8      8.    COMMUNICATIONS with any PERSON RELATING TO

9 YOUR receipt, reproduction, copying, storage, transmission, transfer, retention,

10 destruction, deletion or use of any DOCUMENTS, data and/or information,

11 including but not limited to any compilation of information, that was prepared,

12 made, created, generated, assembled or compiled by or for MATTEL and that YOU

13 received, directly or indirectly, from any FORMER MATTEL EMPLOYEE.

14      9.    COMMUNICATIONS between YOU and any of the FORMER

15 MATTEL EMPLOYEES prior to April 20, 2004, including without limitation any

16 and all DOCUMENTS any of the FORMER MATTEL EMPLOYEES transmitted

17 to or shared with YOU prior to April 20, 2004.

18      10.    COMMUNICATIONS between YOU and any of the FORMER

19 MATTEL EMPLOYEES RELATING TO MATTEL or any MATTEL product,

20 potential product, business plan, line list, DOCUMENT or pricing.

21      11.    COMMUNICATIONS between any of the FORMER MATTEL

22 EMPLOYEES and LARIAN, Thomas Park and/or Susanna Kuemmerle prior to

23 April 20, 2004.

24      12.    Travel to Los Angeles, California by any of the FORMER

25 MATTEL EMPLOYEES between January 1, 2004 and April 20, 2004.

26      13.    The content, meaning and authenticity of e-mail messages,

27 including attachments and metadata, sent from or received by YOU to or from the e-

28 mail address <plot04@aol.com>.

EXHIBIT 4 PAGE 54

07975/2280277.2

1      14.    The content, meaning and authenticity of e-mail messages,

2   including attachments and metadata, sent from or received at the e-mail address

3   <argentrade@aol.com> to or from the e-mail address <plot04@aol.com>.

4      15.    The content, meaning and authenticity of e-mail messages,

5   including attachments and metadata, sent from or received at the e-mail address

6   <argentrade@aol.com> to or from any of the FORMER MATTEL EMPLOYEES.

7      16.    COMMUNICATIONS RELATING TO YOUR market planning

8   and product development RELATING TO the toy market in Mexico prepared,

9   created, sent or transmitted, whether in whole or in part, by MACHADO, TRUEBA

10  and/or VARGAS at any time prior to April 30, 2005.

11     17.    COMMUNICATIONS between YOU and any PERSON

12  RELATING TO the departure or resignation from MATTEL of any current or

13  FORMER MATTEL EMPLOYEE or MATTEL contractor.

14     18.    The job responsibilities of each FORMER MATTEL

15  EMPLOYEE in the first six months after each joined MGA.

16     19.    The content, meaning and authenticity of each personnel file

17  maintained or created by YOU RELATING TO any FORMER MATTEL

18  EMPLOYEE.

19     20.    Any and all agreements between YOU and any of the FORMER

20  MATTEL EMPLOYEES, including all drafts of such agreements and

21  COMMUNICATIONS related thereto.

22     21.    Compensation, money or any other item of value paid by YOU

23  to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, or paid to

24  any PERSON for the benefit of or RELATING TO any FORMER MATTEL

25  EMPLOYEE.

26     22.    Any promotions, raises, bonuses, monetary incentives, payments,

27  awards, transfers, warnings, admonishment, discipline, reprimands, demotions or

28

EXHIBIT 4   PAGE 55

07975/2280277.2

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  terminations of or received by any of the FORMER MATTEL EMPLOYEES while
2  employed by YOU.

3       23.    Any agreements, contracts, offers, promises, proposals or requests
4  RELATING TO the indemnification of or by any of the FORMER MATTEL
5  EMPLOYEES or the payment of legal fees by or for any of the FORMER MATTEL
6  EMPLOYEES.

7       24.    COMMUNICATIONS between YOU and any PERSON
8  RELATING TO the obligations to MATTEL, including the duty of confidentiality,
9  of any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

10      25.    COMMUNICATIONS between YOU and any current or
11  FORMER MATTEL EMPLOYEE or MATTEL contractor RELATING TO the
12  ownership of, or any right, title or interest in, any idea, concept, design, or product.

13      26.    COMMUNICATIONS between YOU and any PERSON
14  RELATING TO the retention, destruction, transfer, or use of any information or
15  DOCUMENTS known to or possessed by any current or former MATTEL
16  employee or contractor.

17      27.    The IDENTITY of DOCUMENTS that YOU have reason to
18  believe were created by or originated from MATTEL, other than MATTEL products
19  that YOU purchased at retail at any time since January 1, 2004.

20      28.    The development of MGA's 2005 product line, including the
21  IDENTITY of each person who participated in the decision making leading up to
22  such product line.

23      29.    The development of MGA's 2006 product line, including the
24  IDENTITY of each person who participated in the decision making leading up to
25  such product line.

26      30.    Any warning, admonition, discipline or other adverse
27  employment action by YOU RELATING TO any of YOUR current or former

28

EXHIBIT __4__ PAGE _56_

07975/2280277.2

-10-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1   employees for using a competitor's confidential or proprietary information, trade
2   secrets or intellectual property.
3           31.   YOUR policies or procedures regarding the use or prohibition of
4   use of an competitor's confidential or proprietary information, trade secrets or
5   intellectual property.
6           32.   YOUR efforts to maintain the secrecy of YOUR claimed trade
7   secrets and the date YOU started such efforts.
8           33.   Any failures to comply with YOUR efforts to maintain the
9   secrecy of YOUR trade secrets, and any violations of YOUR policies or procedures
10  with respect to the maintenance of the secrecy of YOUR trade secrets.
11          34.   The IDENTITY of each individual who has failed to comply with or
12  violated YOUR policies and procedures to maintain the secrecy of YOUR trade secrets.
13          35.   Any alleged failures of MATTEL to maintain the secrecy of its trade
14  secrets.
15          36.   COMMUNICATIONS between YOU and any individual while
16  the individual was employed by MATTEL.
17          37.   The factual bases for YOUR affirmative defenses.
18          38.   The product name, product number and SKU of each BRATZ
19  PRODUCT, including without limitation each BRATZ DOLL, sold by YOU or
20  YOUR licensees, and the number of units of each sold by YOU or YOUR licensees.
21          39.   YOUR cost of goods sold, unit cost and other costs for each
22  BRATZ PRODUCT, including without limitation BRATZ DOLLS, sold by YOU or
23  YOUR licensees.
24          40.   YOUR revenues and profits, including gross, net and incremental
25  profits, from the sale of each BRATZ PRODUCT sold by YOU or YOUR licensees.
26          41.   The number of units of each BRATZ PRODUCT sold by YOU
27  or YOUR licensees, the identity of each customer to whom YOU or YOUR
28

EXHIBIT  4  PAGE  57

07975/2280277.2

-11-
NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  licensees have ever sold any BRATZ PRODUCT, and the revenues and profits that

2  YOU have earned therefrom by customer.

3        42.   Customer returns to YOU of BRATZ PRODUCTS, including

4  without limitation BRATZ DOLLS, sold or distributed by YOU or YOUR licensees.

5        43.   Customer rebates or credits given by YOU or YOUR licensees to

6  customers in connection with BRATZ PRODUCTS, including without limitation

7  BRATZ DOLLS.

8        44.   YOUR cost allocation procedures.

9        45.   YOUR sales, profit and cash flow projections or forecasts for

10  BRATZ PRODUCTS, including without limitation BRATZ DOLLS.

11        46.   The BRATZ DOLLS' share of the fashion doll market in Mexico

12  including, without limitation, the extent to which BRATZ has been or is gaining or

13  losing market share in the Mexico fashion doll market.

14        47.   YOUR net worth on a yearly basis from January 1, 2004 to the

15  present.

16        48.   YOUR monthly, quarterly and annual financial reports, including

17  financial statements (both audited and unaudited) from January 1, 2004 through the

18  present, inclusive.

19        49.   YOUR tax returns from January 1, 2004 to the present, including

20  all schedules and work papers RELATING TO their preparation and filing.

21        50.   YOUR corporate structure since January 1, 2004, including without

22  limitation YOUR relationship with MGA Entertainment, Inc., to MGA Entertainment

23  Mexico, Inc. and the IDENTITY of YOUR officers, directors, shareholders and

24  employees.

25        51.   The retention or destruction policies, procedures and practices for

26  YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO

27  BRATZ since January 1, 2004, including without limitation the retention or destruction

28

EXHIBIT ___4___  PAGE _50_

07975/2280277.2

-12-

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1    of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced,
2    modified or upgraded and (b) when PERSONS leave YOUR employ.

3         52.    The preservation, collection, destruction, removal, transfer, loss or
4    impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection
5    with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

6         53.    The preservation, collection, destruction, removal, transfer, loss or
7    impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1,
8    2004 that REFER OR RELATE TO MATTEL (including without limitation to any
9    MATTEL product, plan or information) that YOU received in any manner from any
10   PERSON who was at the time an employee of MATTEL or who had previously been
11   an employee of MATTEL.

12        54.    YOUR DIGITAL INFORMATION data backup policies, practices
13   and procedures from January 1, 2004 to the present, including without limitation the
14   location and specifications of any media used to preserve YOUR DIGITAL
15   INFORMATION and the software, if any, used to preserve YOUR DIGITAL
16   INFORMATION.

17        55.    The DIGITAL INFORMATION SYSTEMS and the application
18   software that YOU have used since January 1, 2004 that REFER OR RELATE TO
19   design, development, planning, inventory, manufacturing, sales, shipping and
20   accounting, including without limitation the common or shared storage for such
21   DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL
22   INFORMATION SYSTEMS, and any changes, modifications or upgrades to such
23   DIGITAL INFORMATION SYSTEMS or application software.

24        56.    The IDENTITY of PERSONS, including without limitation
25   vendors, who since January 1, 2004 have been responsible for or supported YOUR
26   DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of
27   such PERSON who serviced or provided hardware for YOUR DIGITAL
28   INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL

07975/2280277.2

-13-

EXHIBIT 4    PAGE 59

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

1  INFORMATION, including but not limited to internet service providers, and provided
2  analytical, training or implementation services with respect to YOUR DIGITAL
3  INFORMATION SYSTEMS.

4       57.   The electronic messaging SYSTEMS used by YOUR employees
5  within the scope of their employment between January 1, 2004 and the present,
6  including but not limited to electronic mail, instant messenger, telephone or voice-mail,
7  and the routing of such electronic messages to, from or within MGA.

8       58.   YOUR policies, practices and procedures regarding the use of
9  transportable media that contain or are capable of containing DIGITAL
10 INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB
11 drives, portable hard drives, digital cameras and personal digital assistants.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT __4__ PAGE __60__

NOTICE OF 30(B)(6) DEPOSITION OF MGAE DE MEXICO, S.R.L. DE C.V.

07975/2280277.2

# EXHIBIT B

EXHIBIT 4    PAGE 61

```
 1 ║ QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
        John B. Quinn (Bar No. 090378)
 2 ║    (johnquinn@quinnemanuel.com)
        Michael T. Zeller (Bar No. 196417)
 3 ║    (michaelzeller@quinnemanuel.com)
        Jon D. Corey (Bar No. 185066)
 4 ║    (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
 5 ║ Los Angeles, California 90017-2543
      Telephone:  (213) 443-3000
 6 ║ Facsimile:  (213) 443-3100

 7 ║ Attorneys for Mattel, Inc.

 8 ║                  UNITED STATES DISTRICT COURT

 9 ║                 CENTRAL DISTRICT OF CALIFORNIA

10 ║                      EASTERN DIVISION

11 ║
```

| CARTER BRYANT, an individual, Plaintiff, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| vs. | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| MATTEL, INC., a Delaware corporation, Defendant. | FOURTH NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |
| AND CONSOLIDATED ACTIONS | Discovery Cut-off: January 14, 2008 Pre-trial Conference: April 7, 2008 Trial Date: April 29, 2008 |

EXHIBIT  4   PAGE  62

07209/2254636.1

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2            PLEASE TAKE NOTICE that on _____, beginning at 9:30 a.m.

3  Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant

4  MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges

5  LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R.

6  Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers,

7  directors, managing agents or other persons who consent to testify on its behalf

8  concerning each of the topics set forth in Exhibit A hereto.

9            PLEASE TAKE FURTHER NOTICE that the deposition will take place

10  before a duly authorized notary public or other officer authorized to administer oaths at

11  depositions, and will continue from day to day, Sundays, Saturdays and legal holidays

12  excepted, until completed.

13            PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

14  P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use

15  Livenote or other technology for real-time transcription of the testimony.

16

17  DATED: _____        QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP

18

19                                  By_____

20                                    Jon Corey
                                      Attorneys for Mattel, Inc.

21

22

23

24

25

26

27

28                                  EXHIBIT ___4___ PAGE __63__

07209/2254636.1

-1-

FOURTH NOTICE OF DEPOSITION OF MGA

1

## EXHIBIT A

2        1.     "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any

3 of its current or former employees, officers, directors, agents, representatives, attorneys,

4 parents,    subsidiaries,    divisions,    affiliates,    predecessors-in-interest    and

5 successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

6 authority or subject to its control.

7        2.     "BRYANT" means Carter Bryant, any of his current or former

8 agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-

9 interest and successors-in-interest, and any other PERSON acting on his behalf,

10 pursuant to his authority or subject to his control.

11        3.     "MATTEL" means Mattel, Inc. and all current or former directors,

12 officers, employees, agents, contractors, attorneys, accountants, representatives,

13 subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest,

14 and any other PERSON acting on its behalf, pursuant to its authority or subject to its

15 control.

16        4.     "BRATZ" means any project, product, doll or DESIGN ever known

17 by that name (whether in whole or in part and regardless of what such project, product

18 or doll is or has been also, previously or subsequently called) and any product, doll or

19 DESIGN or any portion thereof that is now or has ever been known as, or sold or

20 marketed under, the name or term "Bratz" (whether in whole or in part and regardless

21 of what such product, doll or DESIGN or portion thereof is or has been also, previously

22 or subsequently called) or that is now or has ever been sold or marketed as part of the

23 "Bratz" line, and each version or iteration of such product, doll or DESIGN or any

24 portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof"

25 also includes without limitation any names, fashions, accessories, artwork, packaging

26 or any other works, materials, matters or items included or associated therewith.

27 Without limiting the generality of the foregoing, the term "BRATZ" does not and shall

28 not require that there be a doll existing at the time of the event, incident or occurrence

1  that is the subject of, or otherwise relevant or responsive to, the Topics of Examination
2  herein.

3       5.    "DESIGN" or "DESIGNS" means any and all representations,
4  whether two-dimensional or three-dimensional, and whether in tangible, digital,
5  electronic or other form, including but not limited to all works, designs, artwork,
6  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
7  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
8  practice, developments, inventions and/or improvements, as well as all other items,
9  things and DOCUMENTS in which any of the foregoing are or have been expressed,
10  embodied, contained, fixed or reflected in any manner, whether in whole or in part.

11       6.    "THE BRATZ PITCH MATERIALS" means each and every
12  BRATZ WORK which was displayed, shown, provided, or offered to YOU on or
13  before the date on which YOU executed the BRYANT/MGA AGREEMENT.

14       7.    "BRYANT/MGA AGREEMENT" means the written agreement
15  between CARTER BRYANT and MGA dated as of September 18, 2000, produced as
16  BRYANT 00794-00799, and any other version or versions thereof.

17       8.    "CREATE OR IMPROVE" or "CREATED OR IMPROVED," in
18  the context of a BRATZ WORK or BRATZ WORKS, means to create, improve,
19  develop, modify, alter, conceive, reduce to practice, or otherwise work on the BRATZ
20  WORK or BRATZ WORKS.

21       9.    "IDENTIFY" or "IDENTITY" means the following:

22       (a)    With reference to an individual, means such individual's
23  name, current or last known business title, current or last known business affiliation,
24  current or last known relationship to YOU, current or last known residential and
25  business address, and current or last known telephone number.

26       (b)    With reference to an entity or governmental organization,
27  means such entity's or organization's name, present or last-known address, and present

28  

EXHIBIT 4    PAGE 65

1    or last-known telephone number and the IDENTITY of each individual who has served

2    or participated as a contact for or on behalf of such entity or organization.

3            (c)    With reference to an account with a bank or financial

4    institution, means the name and address of the bank or financial institution, the account

5    number(s) for or otherwise associated with such account and the name of each holder,

6    including without limitation each beneficial holder, of each such account.

7            (d)    With reference to a STORAGE DEVICE, means the

8    manufacturer name, brand, model name and number, serial number and all other

9    manufacturer identifiers, and the technical specifications and capacities of such

10   STORAGE DEVICE.

11           10.    "DIGITAL INFORMATION" means any information created or

12   stored digitally, including but not limited to electronically, magnetically or optically.

13           11.    "STORAGE DEVICE" means any computer hard drive, memory,

14   USB device, tape, storage array or any other device or medium that allows a user,

15   whether permanently, temporarily or otherwise, to create, generate, transmit, copy,

16   retain, store or maintain DIGITAL INFORMATION.

17           12.    "GLASER LETTER" means the letter sent from Patricia L. Glaser

18   to John B. Quinn, dated July 5, 2007.

19           13.    "REFER OR RELATE TO" means constituting, embodying,

20   containing, referring to, commenting on, evidencing, regarding, discussing, describing,

21   mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting,

22   negating, revoking or otherwise relating to in any manner.

23           14.    "COMMUNICATION," in the plural as well as the singular, means

24   any transmittal and/or receipt of information, whether such was oral or written, and

25   whether such was by chance, prearranged, formal or informal, and specifically includes,

26   but is not limited to, conversations in person, telephone conversations, electronic mail

27   (including instant messages and text messages), voicemail, letters, memoranda,

28

EXHIBIT __4__ PAGE _66_

07209/2254636.1

-4-

 1   statements, media releases, magazine and newspaper articles, and video and audio

 2   transmissions.

 3        15.   "EMBODIMENT" means any representation of the identified

 4   product or its retail packaging, whether two-dimensional or three-dimensional, and

 5   whether in tangible, digital, electronic or other form, including but not limited to all

 6   works, designs, artwork, sketches, drawings, illustrations, representations, depictions,

 7   blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

 8   reductions to practice, developments, inventions and/or improvements, as well as all

 9   other items, things and DOCUMENTS in which any of the foregoing are or have been

10   expressed, embodied, contained, fixed or reflected in any manner, whether in whole or

11   in part.

12        16.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as

13   those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and

14   Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings

15   and records of every type and description including, but not limited to, contracts,

16   agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"),

17   records of telephone conversations, handwritten and typewritten notes of any kind,

18   statements, reports, minutes, recordings, transcripts and summaries of meetings, voice

19   recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and

20   records of all types, studies, instruction manuals, policy manuals and statements, books,

21   pamphlets, invoices, canceled checks and every other device or medium by which or

22   through which information of any type is transmitted, recorded or preserved. Without

23   any limitation on the foregoing, the term "DOCUMENT" shall include all copies that

24   differ in any respect from the original or other versions of the DOCUMENT, including,

25   but not limited to, all drafts and all copies of such drafts or originals containing initials,

26   comments, notations, insertions, corrections, marginal notes, amendments or any other

27   variation of any kind.

28

EXHIBIT ___4___ PAGE _67_

07209/2254636.1

FOURTH NOTICE OF DEPOSITION OF MGA

17.  "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

18.  "CONTESTED MGA PRODUCTS" means the CONTESTED BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS PRODUCTS, and any other doll, product, toy, packaging, advertisement or other matter that, in whole or in part, provides a basis for any claim or defense by YOU against MATTEL.

19.  "CONTESTED BRATZ DOLLS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL:  (i) any EMBODIMENT or project ever known by the name "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "Bratz" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz" or any derivative thereof.

EXHIBIT  4  PAGE  68

20. "CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "Bratz Funky Fashion Makeover Head" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any styling head or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such styling head is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, styling head or any portion thereof; (ii) any accessory that YOU distribute under the name "Bratz Funky Fashion Makeover Head" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Funky Fashion Makeover Head" or any derivative thereof.

21. "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "4-ever Best Friends" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "4-ever Best Friends" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "4-ever Best

EXHIBIT 4 PAGE 69

FOURTH NOTICE OF DEPOSITION OF MGA

1   Friends" or any derivative thereof; and/or (iii) any and all other goods, product
2   packaging, advertisements, promotional materials or other thing or item or material
3   manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,
4   distributed, shipped, imported, exported, licensed, offered for license, sold or offered
5   for sale by YOU or on YOUR behalf under the name "4-ever Best Friends" or any
6   derivative thereof.

7          22.    "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS" means
8   any of the following that provides a basis for any claim by YOU against MATTEL:
9   (i) any EMBODIMENT or project ever known by the name "Mommy's Little Patient"
10  or similar name or any derivative thereof (whether in whole or in part and regardless of
11  what such EMBODIMENT or project is or has been also, previously or subsequently
12  called) and any doll or any portion thereof that is now or has ever been known as, or
13  sold, offered for sale, licensed, offered for license or marketed under, the name or term
14  "Mommy's Little Patient" or similar name or any derivative thereof (whether in whole
15  or in part and regardless of what such doll is or has been also, previously or
16  subsequently called), and all prototypes, models, samples and versions of such
17  EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU
18  distribute under the name "Mommy's Little Patient" or similar name or any derivative
19  thereof; and/or (iii) any and all other goods, product packaging, advertisements,
20  promotional materials or other thing or item or material manufactured, produced,
21  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,
22  imported, exported, licensed, offered for license, sold or offered for sale by YOU or on
23  YOUR behalf under the name "Mommy's Little Patient" or similar name or any
24  derivative thereof.

25         23.    "CONTESTED ALIENRACERS PRODUCTS" means any of the
26  following that provides a basis for any claim by YOU against MATTEL:  (i) any
27  EMBODIMENT or project ever known by the name "Alienracers" or any derivative
28  thereof (whether in whole or in part and regardless of what such EMBODIMENT or

07209/2254636.1

-8-

EXHIBIT  4  PAGE  70

FOURTH NOTICE OF DEPOSITION OF MGA

1  project is or has been also, previously or subsequently called) and any toy vehicle,
2  character, or any portion thereof that is now or has ever been known as, or sold, offered
3  for sale, licensed, offered for license or marketed under, the name or term "Alienracers"
4  or any derivative thereof (whether in whole or in part and regardless of what such toy is
5  or has been also, previously or subsequently called), and all prototypes, models,
6  samples and versions of such EMBODIMENT, toy vehicle, character, or any portion
7  thereof; (ii) any playset and accessory that YOU distribute under the name
8  "Alienracers" or any derivative thereof; and/or (iii) any and all other goods, product
9  packaging, advertisements, promotional materials or other thing or item or material
10 manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,
11 distributed, shipped, imported, exported, licensed, offered for license, sold or offered
12 for sale by YOU or on YOUR behalf under the name "Alienracers" or any derivative
13 thereof.

14          24.     "CONTESTED MATTEL PRODUCTS" means the CONTESTED
15 MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED MATTEL MY
16 SCENE PETS PRODUCTS, the CONTESTED MATTEL MY SCENE STYLING
17 HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the CONTESTED
18 MATTEL LITTLE MOMMY DOLL PRODUCTS, and the CONTESTED MATTEL
19 ACCELERACERS PRODUCTS, and any other MATTEL doll, product, toy,
20 packaging, advertisement or other matter that, in whole or in part, provides a basis for
21 any claim or defense by YOU against MATTEL.

22          25.     "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"
23 means any of the following that provides a basis for any claim by YOU against
24 MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene" or
25 any derivative thereof (whether in whole or in part and regardless of what such
26 EMBODIMENT or project is or has been also, previously or subsequently called) and
27 any doll or any portion thereof that is now or has ever been known as, or sold, offered
28 for sale, licensed, offered for license or marketed under, the name or term "My Scene"

1  or any derivative thereof (whether in whole or in part and regardless of what such doll

2  is or has been also, previously or subsequently called), and all prototypes, models,

3  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

4  playset and accessory that MATTEL distributes under the name "My Scene" or any

5  derivative thereof; and/or (iii) any and all other goods, product packaging,

6  advertisements, promotional materials or other thing or item or material manufactured,

7  produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

8  shipped, imported, exported, licensed, offered for license, sold or offered for sale by

9  MATTEL under the name "My Scene" or any derivative thereof.

10         26.    "CONTESTED MATTEL MY SCENE PETS PRODUCTS" means

11  any of the following that provides a basis for any claim by YOU against MATTEL:

12  (i) any EMBODIMENT or project ever known by the name "My Scene Pets" or any

13  derivative thereof (whether in whole or in part and regardless of what such

14  EMBODIMENT or project is or has been also, previously or subsequently called) and

15  any toy pet or any portion thereof that is now or has ever been known as, or sold,

16  offered for sale, licensed, offered for license or marketed under, the name or term "My

17  Scene" or any derivative thereof (whether in whole or in part and regardless of what

18  such toy pet is or has been also, previously or subsequently called), and all prototypes,

19  models, samples and versions of such EMBODIMENT, toy pet or any portion thereof;

20  (ii) any playset and accessory that MATTEL distributes under the name "My Scene

21  Pets" or any derivative thereof; and/or (iii) any and all other goods, product packaging,

22  advertisements, promotional materials or other thing or item or material manufactured,

23  produced, printed, ordered, marketed, advertised, promoted, displayed, distributed,

24  shipped, imported, exported, licensed, offered for license, sold or offered for

25         27.    "CONTESTED MATTEL MY SCENE STYLING HEAD" means

26  any of the following that provides a basis for any claim by YOU against MATTEL:

27  (i) any EMBODIMENT or project ever known by the name "My Scene Styling Head"

28  or any derivative thereof (whether in whole or in part and regardless of what such

1   EMBODIMENT or project is or has been also, previously or subsequently called) and

2   any styling head or any portion thereof that is now or has ever been known as, or sold,

3   offered for sale, licensed, offered for license or marketed under, the name or term "My

4   Scene" or any derivative thereof (whether in whole or in part and regardless of what

5   such styling head is or has been also, previously or subsequently called), and all

6   prototypes, models, samples and versions of such EMBODIMENT, styling head or any

7   portion thereof; (ii) any accessory that MATTEL distributes under the name "My Scene

8   Styling Head" or any derivative thereof; and/or (iii) any and all other goods, product

9   packaging, advertisements, promotional materials or other thing or item or material

10  manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

11  distributed, shipped, imported, exported, licensed, offered for license, sold or offered

12  for sale by MATTEL under the name "My Scene Styling Head" or any derivative

13  thereof.

14          28.    "CONTESTED MATTEL WEE-3 PRODUCTS" means any of the

15  following that provides a basis for any claim by YOU against MATTEL:  (i) any

16  EMBODIMENT or project ever known by the name "Wee-3" or any derivative thereof

17  (whether in whole or in part and regardless of what such EMBODIMENT or project is

18  or has been also, previously or subsequently called) and any doll or any portion thereof

19  that is now or has ever been known as, or sold, offered for sale, licensed, offered for

20  license or marketed under, the name or term "Wee-3" or any derivative thereof

21  (whether in whole or in part and regardless of what such doll is or has been also,

22  previously or subsequently called), and all prototypes, models, samples and versions of

23  such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that

24  MATTEL distributes under the name "Wee-3" or any derivative thereof; and/or (iii) any

25  and all other goods, product packaging, advertisements, promotional materials or other

26  thing or item or material manufactured, produced, printed, ordered, marketed,

27  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

28

EXHIBIT  4  PAGE 73

FOURTH NOTICE OF DEPOSITION OF MGA

1 offered for license, sold or offered for sale by MATTEL under the name "Wee-3" or

2 any derivative thereof.

3      29.   "CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS"

4 means any of the following that provides a basis for any claim by YOU against

5 MATTEL:   (i) any EMBODIMENT or project ever known by the name "Little

6 Mommy" or any derivative thereof (whether in whole or in part and regardless of what

7 such EMBODIMENT or project is or has been also, previously or subsequently called)

8 and any doll or any portion thereof that is now or has ever been known as, or sold,

9 offered for sale, licensed, offered for license or marketed under, the name or term

10 "Little Mommy" or any derivative thereof (whether in whole or in part and regardless

11 of what such doll is or has been also, previously or subsequently called), and all

12 prototypes, models, samples and versions of such EMBODIMENT, doll or any portion

13 thereof; (ii) any playset and accessory that MATTEL distributes under the name "Little

14 Mommy" or any derivative thereof; and/or (iii) any and all other goods, product

15 packaging, advertisements, promotional materials or other thing or item or material

16 manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed,

17 distributed, shipped, imported, exported, licensed, offered for license, sold or offered

18 for sale by MATTEL under the name "Little Mommy" or any derivative thereof.

19      30.   "CONTESTED MATTEL ACCELERACERS PRODUCTS" means

20 any of the following that provides a basis for any claim by YOU against MATTEL:

21 (i) any EMBODIMENT or project ever known by the name "AcceleRacers" or any

22 derivative thereof (whether in whole or in part and regardless of what such

23 EMBODIMENT or project is or has been also, previously or subsequently called) and

24 any toy vehicle, character, or any portion thereof that is now or has ever been known as,

25 or sold, offered for sale, licensed, offered for license or marketed under, the name or

26 term "AcceleRacers" or any derivative thereof (whether in whole or in part and

27 regardless of what such toy is or has been also, previously or subsequently called), and

28 all prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

1   character, or any portion thereof; (ii) any playset and accessory that MATTEL
2   distributes under the name "AcceleRacers" or any derivative thereof; and/or (iii) any
3   and all other goods, product packaging, advertisements, promotional materials or other
4   thing or item or material manufactured, produced, printed, ordered, marketed,
5   advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,
6   offered for license, sold or offered for sale by MATTEL under the name
7   "AcceleRacers" or any derivative thereof.

8          31.    "FORMER MATTEL EMPLOYEES" means any former Mattel
9   employee who left MATTEL to join YOU, including but not limited to Janine Brisbois,
10  Ron Brawer, Jorge Castilla, Nic Contreras, Dan Cooney, Carlos Gustavo Machado,
11  Mariana Trueba Almada, Pablo Vargas San Jose and Shirin Salemnia.

12         32.    "COMPLAINT" means the Complaint for False Designation of
13  Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair
14  Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 et seq. and
15  California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code
16  § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or
17  about April 13, 2005.

18         33.    The singular form of a noun or pronoun includes within its meaning
19  the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine
20  form of a pronoun also includes within its meaning the feminine form of the pronoun so
21  used, and *vice versa*; the use of any tense of any verb includes also within its meaning
22  all other tenses of the verb so used, whenever such construction results in a broader
23  request for information; and "and" includes "or" and *vice versa*, whenever such
24  construction results in a broader disclosure of documents or information.

25
26                          **Topics of Examination**
27         1.     The invention, creation, origin, conception, authorship, design and
28  development of the CONTESTED MGA PRODUCTS, including without limitation the

07209/2254636.1
                              -13-
EXHIBIT   4   PAGE   75

FOURTH NOTICE OF DEPOSITION OF MGA

1   circumstances under which and the date(s) on which each occurred and the IDENTITY
2   and role(s) of each PERSON involved.

3       2.    Any revisions, modifications or changes made to any of the
4   CONTESTED MGA PRODUCTS, including without limitation any proposed
5   alternatives, modifications or changes (whether or not implemented) to such
6   CONTESTED MGA PRODUCTS, the date(s) on which such revisions, modifications
7   or changes were made or proposed and the reasons for their implementation or non-
8   implementation.

9       3.    The development of YOUR 2005 product line, including the
10  IDENTITY of each PERSON who participated in the decision making leading up to
11  YOUR 2005 product line and any changes or modifications thereto, and the invention,
12  creation, origin, conception, authorship, design, development, manufacture, distribution
13  and sale of products therein.

14      4.    The development of YOUR 2006 product line, including the
15  IDENTITY of each PERSON who participated in the decision making leading up to
16  YOUR 2005 product line and any changes or modifications thereto, and the invention,
17  creation, origin, conception, authorship, design, development, manufacture, distribution
18  and sale of products therein.

19      5.    The content, meaning, authenticity and source of
20  COMMUNICATIONS, advertisements, and/or promotional statements that provide a
21  basis for any claim by YOU against MATTEL.

22      6.    COMMUNICATIONS between YOU and any PERSON, including
23  without limitation any retailer or distributor, that REFER OR RELATE TO the
24  CONTESTED MATTEL PRODUCTS.

25      7.    The first date of manufacture, shipment and availability for
26  distribution and retail sale of each of the CONTESTED MGA PRODUCTS.

27

28

EXHIBIT 4 PAGE 76

07209/2254636.1

-14-

FOURTH NOTICE OF DEPOSITION OF MGA

1    8.    The first date that each of the CONTESTED MGA PRODUCTS
2    was shown to any PERSON not employed by MGA, whether in concept, prototype, or
3    finished form, and the IDENTITY of each PERSON involved therein.

4    9.    The sculptures, including all preliminary sculptures and all versions
5    of such sculptures, made, produced or prepared in connection with the CONTESTED
6    BRATZ DOLLS PRODUCTS.

7    10.    The tooling and manufacture of any of the CONTESTED MGA
8    PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase
9    orders and payment relating thereto and including but not limited to all DOCUMENTS
10   relating to the engineering, preparation, fabrication and creation of the molds and face
11   paint masks used in connection therewith and to the film and/or digital files used in
12   connection with the packaging therefor.

13   11.    The marketing, advertising, promotion and licensing of the
14   CONTESTED MGA PRODUCTS, including but not limited to all marketing studies,
15   marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and
16   including the identity of the channels in which such have been or are disseminated or
17   distributed.

18   12.    The ownership of any right, title or interest, whether in whole or in
19   part, in or to the CONTESTED MGA PRODUCTS.

20   13.    Any copyright, patent, design right or any other registration or
21   application for registration of the CONTESTED MGA PRODUCTS, including but not
22   limited to all COMMUNICATIONS relating thereto, and all filings, declarations,
23   affidavits, correspondence, notes and other DOCUMENTS relating thereto.

24   14.    The display, exhibition, publication, circulation, or other
25   dissemination of the CONTESTED MGA PRODUCTS to distributors, retailers,
26   licensees, the media, or the public, including but not limited to toy and trade shows and
27   conventions and the date(s) on which such occurred.

28

EXHIBIT  4   PAGE  77

07209/2254636.1

-15-

1          15.    YOUR expenditures in advertising or promoting the CONTESTED
2   MGA PRODUCTS, including by year and by medium.

3          16.    Any contracts or licenses entered into, negotiated, proposed, or
4   requested RELATING TO any of the CONTESTED MGA PRODUCTS.

5          17.    The target market or potential target market, and the demographics
6   of any actual, potential or prospective consumers, customers, purchasers or licensees of
7   the CONTESTED MGA PRODUCTS.

8          18.    The number of units of the CONTESTED MGA PRODUCTS
9   manufactured, produced, ordered, stored in inventory, imported, exported, shipped,
10  sold, or offered for sale by any PERSON, including but not limited to YOU.

11         19.    YOUR revenues, costs and profits for each of the CONTESTED
12  MGA PRODUCTS, including but not limited to YOUR per-unit cost, and YOUR gross,
13  incremental and net profits for each of the CONTESTED MGA PRODUCTS.

14         20.    Any complaints or dissatisfaction concerning the CONTESTED
15  MGA PRODUCTS, including but not limited to the returns of, or the number of or rate
16  of defects for, such products.

17         21.    Any potential or actual confusion, any potential or actual mistake or
18  any potential or actual deception of any PERSON as to the origin, affiliation,
19  sponsorship or association of the CONTESTED MGA PRODUCTS or CONTESTED
20  MATTEL PRODUCTS that YOU are aware of, including but not limited to all studies,
21  surveys, interviews, reports and COMMUNICATIONS regarding any such confusion,
22  mistake or deception.

23         22.    Any potential or actual confusion, any potential or actual mistake or
24  any potential or actual deception of any PERSON as to the origin, affiliation,
25  sponsorship or association of the CONTESTED MATTEL PRODUCTS that you are
26  aware of, including but not limited to all studies, surveys, interviews, reports and
27  COMMUNICATIONS regarding any such confusion, mistake or deception.

28

EXHIBIT  4  PAGE  78

07209/2254636.1

FOURTH NOTICE OF DEPOSITION OF MGA

23.   Any consumer studies, reports, surveys, interviews or reports regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS, included but not limited to YOUR knowledge of the reasons why consumers purchase any of the CONTESTED MGA PRODUCTS or any of the CONTESTED MATTEL PRODUCTS.

24.   Marketing studies, marketing plans, sales plans, sales forecasts, strategies and analyses that REFER OR RELATE TO THE CONTESTED MATTEL PRODUCTS.

25.   MATTEL's alleged copying, infringement or dilution of the CONTESTED MGA PRODUCTS or any claimed EMBODIMENT thereof.

26.   To the extent not disclosed in response to any other Topic, all other facts RELATING TO any claim made by YOU against MATTEL or the CONTESTED MATTEL PRODUCTS, and the IDENTITY of all PERSONS with knowledge thereof.

27.   COMMUNICATIONS between YOU and MATTEL RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

28.   Any damage, loss, injury or unjust enrichment that YOU claim has been sustained by reason of any act or omission by MATTEL, including but not limited to any alleged lost profits, lost sales, lost royalty, lost opportunity, lost license, revenue, price erosion, or consequential or incidental damage, including but not limited to the causation for any such alleged unjust enrichment, damage, loss, or injury and the amounts of all such damage, loss, injury or unjust enrichment.

29.   When, and under what circumstances, YOU became aware that Mattel had created, designed, developed, sold, offered for sale or licensed the CONTESTED MATTEL PRODUCTS.

30.   The copying, reproduction or use of any MATTEL work, product, or EMBODIMENT by YOU or on YOUR behalf since January 1, 1999.

EXHIBIT  4   PAGE  79

1     31.   Any similarity or dissimilarity between any of the CONTESTED
2   MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

3     32.   The hiring, engagement, or retention by YOU of any current or
4   former MATTEL employee or contractor since January 1, 1999, including but not
5   limited to the terms of all employment agreements and agreements RELATING TO
6   confidentiality or the invention, authorship, or ownership of any concept or product.

7     33.   YOUR receipt, reproduction, copying, storage, transmission,
8   transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or
9   information, including but not limited to any compilation of information, that was
10  prepared, made, created, generated, assembled or compiled by or for MATTEL and that
11  was not publicly available at the time of YOUR receipt of such DOCUMENT, data
12  and/or information.

13    34.   YOUR knowledge of any MATTEL product prior to the time that
14  such product had been announced or disclosed by MATTEL to retailers or the public,
15  including but not limited to the CONTESTED MATTEL PRODUCTS.

16    35.   YOUR receipt, reproduction, copying, storage, transmission,
17  transfer, retention, destruction, deletion or use of any MATTEL line list or other
18  DOCUMENT prepared by MATTEL identifying MATTEL products in the planning,
19  design or development phase.

20    36.   The search and seizure of DOCUMENTS by Mexican authorities
21  from MGA's office in Mexico City, Mexico, and all COMMUNICATIONS that
22  REFER OR RELATE thereto.

23    37.   All payments of money or any item of value made by YOU, directly
24  or indirectly, or offered, proposed, promised, requested or solicited by or from YOU,
25  directly or indirectly, in connection criminal proceedings or potential or prospective
26  criminal proceedings against YOU or any of YOUR employees, including without
27  limitation Gustavo Machado, and including without limitation YOUR payment or
28  reimbursement of legal fees for or on behalf of any PERSON.

EXHIBIT ___4___ PAGE __80__

38.   COMMUNICATIONS between YOU and any PERSON RELATING TO the resignation or departure of any FORMER MATTEL EMPLOYEES from Mattel.

39.   The compensation, money or any other item of value paid to any FORMER MATTEL EMPLOYEE, whether directly or indirectly, by YOU.

40.   The identity of DOCUMENTS RELATING TO any MATTEL product or plan that any FORMER MATTEL EMPLOYEE provide or disclosed to or shared with YOU, directly or indirectly.

41.   COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from any FORMER MATTEL EMPLOYEE.

42.   The content, authenticity, accuracy and meaning of each personnel file maintained or created by YOU RELATING TO any FORMER MATTEL EMPLOYEE.

43.   COMMUNICATIONS between YOU and Pablo Vargas San Jose prior to April 20, 2004.

44.   COMMUNICATIONS between YOU and Janine Brisbois prior to September 27, 2005.

45.   COMMUNICATIONS between YOU and Ron Brawer prior to October 2, 2004.

46.   COMMUNICATIONS between YOU and Carlos Gustavo Machado Gomez ("Machado") prior to April 20, 2004.

47.   COMMUNICATIONS between YOU and Mariana Trueba Almada ("Trueba") prior to April 20, 2004.

EXHIBIT __4__ PAGE _81_

07209/2254636.1

-19-

FOURTH NOTICE OF DEPOSITION OF MGA

1    48.    The existence or extent of competition or substitution between any

2 of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL

3 PRODUCTS.

4    49.    The factual basis for YOUR claim that any of the CONTESTED

5 MGA PRODUCTS have acquired secondary meaning or are famous.

6    50.    The factual basis for YOUR claim that any of MATTEL's actions

7 have caused actual dilution.

8    51.    Mattel's alleged intimidation, coercion or threats to retailers,

9 licensees, suppliers and others in the industry."

10    52.    The factual basis for YOUR claim that Mattel "serially imitated and

11 copy-catted [*sic*] the look of MGA products, trade dress, trademarks, themes, ideas,

12 advertising and packaging."

13    53.    The basis for YOUR claim that the Bratz dolls launched in 2001

14 were "unique and distinctive."

15    54.    The identification of YOUR alleged trade dress in connection with

16 the CONTESTED MGA PRODUCTS, including without limitation with respect to

17 "themes," and the factual bases for YOUR claim that YOU have any legally protected

18 interest in such trade dress.

19    55.    The factual basis for YOUR allegation that advertising executives

20 have expressed concern about "Bratz" and Mattel's "My Scene," what concerns they

21 expressed and the IDENTITY of each such executive.

22    56.    The factual basis for YOUR allegation that the press confused

23 YOUR products with MATTEL products and "has taken notice" of alleged confusion

24 between "Bratz" and "My Scene."

25    57.    All COMMUNICATIONS relating to customers who have allegedly

26 contacted YOU to purchase Mattel's "My Scene" dolls or any of the CONTESTED

27 MATTEL PRODUCTS.

28

EXHIBIT  4  PAGE  82

FOURTH NOTICE OF DEPOSITION OF MGA

1      58.    The factual basis for YOUR claim that MATTEL has infringed,
2  diluted or otherwise violated any trade dress that YOU contend YOU own in the
3  CONTESTED MGA PRODUCTS.

4      59.    The factual basis for YOUR claim that MATTEL has engaged in
5  "strong-arm tactics, and other illegitimate, unfair and anti-competitive means."

6      60.    COMMUNICATIONS between YOU and any PERSON
7  RELATING TO the departure from MATTEL of any current or FORMER MATTEL
8  EMPLOYEE or MATTEL contractor.

9      61.    COMMUNICATIONS between YOU and any PERSON
10 RELATING TO the obligations to MATTEL, including the duty of confidentiality, of
11 any current or FORMER MATTEL EMPLOYEE or MATTEL contractor.

12     62.    COMMUNICATIONS between YOU and any current or FORMER
13 MATTEL EMPLOYEE or MATTEL or contractor RELATING TO the ownership of
14 any idea, concept, design, or product.

15     63.    COMMUNICATIONS between YOU and any PERSON
16 RELATING TO the retention, destruction, transfer, or use of any information or
17 DOCUMENTS known to or possessed by any current or former MATTEL employee or
18 contractor.

19     64.    Mattel's alleged "warnings," "threats" or "intimidation" that are the
20 subject of YOUR claims, including but not limited to all COMMUNICATIONS with
21 any present or former licensees of MATTEL and any present or former distributors and
22 retailers of MGA and MATTEL products.

23     65.    MATTEL's alleged responsibility for "shortage of doll hair in
24 October 2002."

25     66.    MATTEL's alleged "manipulation of the retail market," including by
26 its alleged tampering with MGA's retail displays.

27     67.    MATTEL's alleged false statements about YOU or YOUR business
28 practices.

EXHIBIT  4  PAGE  83

FOURTH NOTICE OF DEPOSITION OF MGA

07209/2254636.1

1        68.    MATTEL's alleged violation of any rules or restrictions relating to

2  data provided to subscribers by NPD or any other wrongful conduct relating to NPD.

3        69.    COMMUNICATIONS between YOU and NPD, other than periodic

4  reports transmitted by NPD or information made available to YOU by NPD, between

5  January 1, 2000 and the present.

6        70.    YOUR contracts and agreements with NPD since January 1, 1999,

7  including without limitation any allegation by NPD that YOU were or have been in

8  breach or violation thereof.

9        71.    The status of YOUR NPD subscription between January 1, 1999 and

10  the present.

11        72.    MATTEL's alleged inducement of CARU to place onerous

12  restrictions on MGA advertisements, and require MGA to amend aspects of

13  commercials that have gone unchallenged in other parties' commercials.

14        73.    COMMUNICATIONS between YOU and CARU between

15  January 1, 2000 and the present RELATING TO MATTEL, ANY CONTESTED MGA

16  PRODUCTS, ANY CONTESTED MATTEL PRODUCTS or any other subject or

17  matter that YOU are relying upon in this ACTION.

18        74.    MATTEL's allegedly improper influence with or within TIA,

19  including but not limited to the procedures for and manner in which the Toy of the Year

20  was selected for 2003.

21        75.    YOUR COMMUNICATIONS with TIA RELATING TO Toy of the

22  Year since January 1, 2000 or any other subject or matter on which YOU base any

23  claim.

24        76.    MATTEL's purported power, influence and intimidation to threaten

25  retailers, suppliers, licensees, distributors, manufacturers and industry bodies so as to

26  limit or prevent MGA from doing business.

27        77.    MATTEL's alleged intimidation of or threats against MGA's current

28  and potential employees.

EXHIBIT  4  PAGE 84

1         78.   YOUR monthly, quarterly and annual financial reports, including

2    financial statements (both audited and unaudited) for the years 1998 through the

3    present, inclusive.

4         79.   The identity of DOCUMENTS that YOU have reason to believe

5    were created by or originated from MATTEL (excluding MATTEL products that YOU

6    purchased at retail) at any time since January 1, 1998.

7         80.   The destruction of any DOCUMENT RELATING TO the

8    CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

9         81.   COMMUNICATIONS with, or inquiry or investigation by, any

10   government entity, industry organization, safety compliance, or consumer organization

11   RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL

12   PRODUCTS.

13        82.   YOUR understanding or belief of whether the BRYANT/MGA

14   AGREEMENT was lawful when YOU entered into it, and DOCUMENTS and

15   COMMUNICATIONS related thereto.

16        83.   The public perception of the CONTESTED MGA PRODUCTS,

17   including without limitation with respect to the appropriateness or suitability of Bratz

18   for children.

19        84.   The factual basis for YOUR alleged belief that YOU had the right to

20   market products developed as a result of the BRYANT/MGA AGREEMENT and to the

21   lawful right to fully exploit the drawings drawn and presented by BRYANT prior to the

22   execution of the BRYANT/MGA AGREEMENT, and the DOCUMENTS and

23   COMMUNICATIONS YOU so relied upon when YOU entered into the agreement.

24        85.   The factual basis for YOUR contention that YOU believed at the

25   time YOU entered into the BRYANT/MGA AGREEMENT that it would be lawful for

26   YOU to acquire THE BRATZ PITCH MATERIALS from BRYANT, and the

27   DOCUMENTS and COMMUNICATIONS YOU so relied upon at the time YOU

28   entered into the BRYANT/MGA AGREEMENT. EXHIBIT __4__ PAGE __85__

07209/2254636.1

1      86.   YOUR belief or non-belief that BRYANT created or improved any

2 of THE BRATZ PITCH MATERIALS while employed by MATTEL, and the

3 DOCUMENTS and COMMUNICATIONS YOU so relied upon.

4      87.   Any investigation or inquiry YOU conducted to confirm the timing

5 of BRYANT'S work prior to executing the BRYANT/MGA AGREEMENT, including

6 but not limited to DOCUMENTS and COMMUNICATIONS RELATING thereto.

7      88.   The factual bases for YOUR affirmative defenses.

8      89.   The IDENTITY of all DOCUMENTS that were in the possession of

9 Farhad Larian that YOU claim were reviewed by Quinn Emanuel Urquhart Oliver &

10 Hedges LLP at any time prior to January 1, 2007.

11      90.   The factual bases for YOUR allegations in the GLASER LETTER,

12 including YOUR allegation that DOCUMENTS in the possession of Farhad Larian and

13 reviewed by Quinn Emanuel Urquhart Oliver & Hedges LLP were purportedly

14 privileged and confidential.

15      91.   Any services Farhad Larian has provided to YOU since January 1,

16 2005, including any litigation consulting services.

17      92.   The IDENTITY of DOCUMENTS that Farhad Larian was provided

18 with or had access to, including YOUR allegedly privileged and confidential

19 DOCUMENTS, since January 1, 2001.

20      93.   The terms of any contracts or agreements, including any

21 confidentiality agreements, between YOU and Farhad Larian.

22      94.   The identity of each doll, accessory, product, work or item

23 produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or

24 on YOUR behalf that was BASED ON any BRATZ DESIGN or any design derivative

25 of any BRATZ DESIGN.

26      95.   Except for deposition testimony provided in this ACTION, the

27 testimony, transcripts, declarations, affidavits and other sworn written statements of any

28 other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO

1  BRATZ and that REFER OR RELATE TO the time period prior to June 30, 2001
2  (regardless of when such testimony or sworn statement was taken, given, signed, made
3  or filed).

4          96.     The authenticity, content, timing, meaning, and truth and accuracy
5  of YOUR COMMUNICATIONS with any PERSON, including without limitation any
6  retailer and the media, that REFER OR RELATE TO the National Labor Committee
7  dated December 21, 2006 entitled "Made in China: The Sweatshop Behind the Bratz"
8  or the Hau Tai K4 factory.

9          97.     The identity of each doll, product, packaging or other matter that
10 YOU have accused of infringing, diluting or otherwise violating YOUR purported
11 rights in any of the CONTESTED MGA PRODUCTS, the IDENTITY of each
12 manufacturer of each doll, product, packaging or other matter and the specific aspects
13 of each such doll, product, packaging or other matter that YOU have claimed was
14 confusingly or substantially similar to any of the CONTESTED MGA PRODUCTS.

15         98.     The identity, and outcome and resolution, of each lawsuit that YOU
16 have brought or cease and desist letter YOU have sent each doll, product, packaging or
17 other matter that YOU have accused of infringing, diluting or otherwise violating
18 YOUR purported rights in any of the CONTESTED MGA PRODUCTS.

19         99.     The job responsibilities of each FORMER MATTEL EMPLOYEE
20 in the first six months after each joined MGA.

21         100.    YOUR scheduling, planning, inventory, shipping, distribution or
22 forecasting software since January 1, 2005, including but not limited to any and all
23 changes, improvements, acquisitions, upgrades and purchases.

24         101.    DOCUMENTS created by each of the FORMER MATTEL
25 EMPLOYEES in the first six months after each joined MGA

26         102.    The make-up, source, calculation and purpose of the amounts
27 presented in MGA documents Bates-numbered MGA 0101018-21 (Exhibit 661) and
28 MGA 08185789 (Exhibit 662).

EXHIBIT 4 PAGE 87

# EXHIBIT C

EXHIBIT  4   PAGE  88

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12  CARTER BRYANT, an individual,        | CASE NO. CV 04-09049 SGL (RNBx)

13              Plaintiff,               | Consolidated with Case Nos. CV 04-
                                          9059 and CV 05-2727
14       vs.
                                          MATTEL, INC.'S SUPPLEMENTAL
15  MATTEL, INC., a Delaware             | INTERROGATORIES
    corporation,
16
              Defendant.
17

18  AND CONSOLIDATED ACTIONS

19

20

21
    PROPOUNDING PARTY:       Mattel, Inc.
22
    RESPONDING PARTIES:      MGA Entertainment, Inc., Isaac Larian, Carter
23
                             Bryant, MGA Entertainment (HK) Limited, MGAE
24
                             de Mexico S.R.L. de C.V., and Carlos Gustavo
25
                             Machado Gomez
26
    SET NO.:                 SUPPLEMENTAL
27

28                           EXHIBIT  4  PAGE  89

07209/2239571.2

1      Pursuant to <u>Federal Rule of Civil Procedure</u> 33, plaintiff Mattel, Inc.

2   ("Mattel") hereby requests that MGA Entertainment, Inc., Isaac Larian, Carter

3   Bryant, MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and

4   Carlos Gustavo Machado Gomez (collectively, "the Responding Parties")

5   individually answer the following Interrogatories separately and fully, in writing and

6   under oath, within 30 days after service hereof. The Responding Parties shall be

7   obligated to supplement their responses to the Interrogatories at such times and to

8   the extent required by the <u>Federal Rules of Civil Procedure</u>.

9

10         **Definitions**

11     1.  "YOU" and "YOUR" mean each of the Responding Parties.

12     2.  "MGA" means MGA Entertainment, Inc., any of its current or

13  former employees, officers, directors, agents, representatives, attorneys, experts,

14  divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any

15  other PERSON acting on its behalf, pursuant to its authority or subject to its control.

16  Without limiting the foregoing, "MGA" includes the entities known as ABC

17  International Traders or ABC International Traders, Inc. For purposes of the these

18  Interrogatories, "MGA" does not include BRYANT.

19     3.  "MATTEL" means Mattel, Inc., its current employees, officers,

20  directors, agents, representatives, attorneys, parents, subsidiaries, divisions,

21  AFFILIATES, predecessors-in-interest and successors-in-interest, and any other

22  PERSON acting on its behalf, pursuant to its authority or subject to its control.

23     4.  "AFFILIATES" means any and all corporations, proprietorships,

24  d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

25  indirectly, in whole or in part, own or control, are under common ownership or control

26  with, or are owned or controlled by a PERSON, party or entity, including without

27  limitation each parent, subsidiary and joint venture of such PERSON, party or entity.

28           EXHIBIT ___4___ PAGE ___90___

-2-

MATTEL'S SUPPLEMENTAL INTERROGATORIES

1        5.     "PERSON" or "PERSONS" means all natural persons, partnerships,
2  corporations, joint ventures and any kind of business, legal or public entity or
3  organization, as well as its, his or her agents, representatives, employees, officers and
4  directors and any one else acting on its, his or her behalf, pursuant to its, his or her
5  authority or subject to its, his or her control.

6        6.     "DESIGN" or "DESIGNS" means any and all representations,
7  whether two-dimensional or three-dimensional, and whether in tangible, digital,
8  electronic or other form, including but not limited to all works, designs, artwork,
9  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
10  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
11  practice, developments, inventions and/or improvements, as well as all other items,
12  things and DOCUMENTS in which any of the foregoing are or have been expressed,
13  embodied, contained, fixed or reflected in any manner, whether in whole or in part.

14        7.     "BRATZ" means any project, product, doll or DESIGN ever known
15  by that name (whether in whole or in part and regardless of what such project, product
16  or doll is or has been also, previously or subsequently called) and any product, doll or
17  DESIGN or any portion thereof that is now or has ever been known as, or sold or
18  marketed under, the name or term "Bratz" (whether in whole or in part and regardless
19  of what such product, doll or DESIGN or portion thereof is or has been also, previously
20  or subsequently called) or that is now or has ever been sold or marketed as part of the
21  "Bratz" line, and each version or iteration of such product, doll or DESIGN or any
22  portion thereof. As used herein, "product, doll or DESIGN or any portion thereof" also
23  includes without limitation any names, fashions, accessories, artwork, packaging or any
24  other works, materials, matters or items included or associated therewith. Without
25  limiting the generality of the foregoing, the term "BRATZ" does not and shall not
26  require that there be a doll existing at the time of the event, incident or occurrence that
27  is the subject of, or otherwise relevant or responsive to, the Interrogatories.

28

1      8.      "SOLD," "SELL" or "SALE" means to distribute, market, license,
2  sell, offer to sell, or convey or transfer in any way for compensation.

3      9.      "DOCUMENT" or "DOCUMENTS" means all "writings" and
4  "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil
5  Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited
6  to, all writings and records of every type and description including, but not limited to,
7  contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail
8  ("e-mail"), records of telephone conversations, handwritten and typewritten notes of
9  any kind, statements, reports, minutes, recordings, transcripts and summaries of
10 meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes,
11 discs, printouts and records of all types, studies, instruction manuals, policy manuals
12 and statements, books, pamphlets, invoices, canceled checks and every other device or
13 medium by which or through which information of any type is transmitted, recorded or
14 preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall
15 include all copies that differ in any respect from the original or other versions of the
16 DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or
17 originals containing initials, comments, notations, insertions, corrections, marginal
18 notes, amendments or any other variation of any kind.

19     10.     "COMMUNICATION" or "COMMUNICATIONS" means and
20 includes any disclosure, transfer or exchange of information between two or more
21 PERSONS, whether orally or in writing, including without limitation, any conversation
22 or discussion by means of meeting, letter, telephone, note, memorandum, telegraph,
23 telex, telecopier, electronic mail, or any other electronic or other medium, including
24 without limitation in written, audio or video form.

25     11.     "MACHADO" means Carlos Gustavo Machado Gomez, and all of
26 his current or former employees, agents, representatives, attorneys, accountants,
27 vendors, consultants, independent contractors, predecessors-in-interest and successors-

28

07209/2239571.2

EXHIBIT   4   PAGE   92

-4-

1  in-interest, and any other PERSON acting on his behalf, pursuant to his authority or

2  subject to his control.

3      12.   "TRUEBA" means Mariana Trueba Almada, and all of her current

4  or former employees, agents, representatives, attorneys, accountants, vendors,

5  consultants, independent contractors, predecessors-in-interest and successors-in-

6  interest, and any other PERSON acting on her behalf, pursuant to her authority or

7  subject to her control.

8      13.   "VARGAS" means Pablo Vargas San Jose, and all of his current or

9  former employees, agents, representatives, attorneys, accountants, vendors, consultants,

10  independent contractors, predecessors-in-interest and successors-in-interest, and any

11  other PERSON acting on his behalf, pursuant to his authority or subject to his control.

12      14.   "BRAWER" means Ron Brawer, and all of his current or former

13  employees, agents, representatives, attorneys, accountants, vendors, consultants,

14  independent contractors, predecessors-in-interest and successors-in-interest, and any

15  other PERSON acting on his behalf, pursuant to his authority or subject to his control.

16      15.   "CASTILLA" means Jorge Castilla, and all of his current or former

17  employees, agents, representatives, attorneys, accountants, vendors, consultants,

18  independent contractors, predecessors-in-interest and successors-in-interest, and any

19  other PERSON acting on his behalf, pursuant to his authority or subject to his control.

20      16.   "COONEY" means Dan Cooney, and all of his current or former

21  employees, agents, representatives, attorneys, accountants, vendors, consultants,

22  independent contractors, predecessors-in-interest and successors-in-interest, and any

23  other PERSON acting on his behalf, pursuant to his authority or subject to his control.

24      17.   "BRISBOIS" means Janine Brisbois, and all of her current or former

25  employees, agents, representatives, attorneys, accountants, vendors, consultants,

26  independent contractors, predecessors-in-interest and successors-in-interest, and any

27  other PERSON acting on her behalf, pursuant to her authority or subject to her control.

28

1      18.    "RAE" means Ron Rae, and all of his current or former employees,
2  agents, representatives, attorneys, accountants, vendors, consultants, independent
3  contractors, predecessors-in-interest and successors-in-interest, and any other PERSON
4  acting on her behalf, pursuant to her authority or subject to his control.

5      19.    "CONTRERAS" means Nick Contreras, and all of his current or
6  former employees, agents, representatives, attorneys, accountants, vendors, consultants,
7  independent contractors, predecessors-in-interest and successors-in-interest, and any
8  other PERSON acting on her behalf, pursuant to her authority or subject to his control.

9      20.    "ABUNDIS" means Ricardo Abundis, and all of his current or
10 former employees, agents, representatives, attorneys, accountants, vendors, consultants,
11 independent contractors, predecessors-in-interest and successors-in-interest, and any
12 other PERSON acting on her behalf, pursuant to her authority or subject to his control.

13     21.    The "FORMER MATTEL EMPLOYEES" means MACHADO,
14 TRUEBA, VARGAS, BRAWER, CASTILLA, COONEY, BRISBOIS, CONTRERAS,
15 RAE, ABUNDIS, and any other former Mattel employee or contractor who
16 misappropriated Mattel trade secrets or violated his or her obligations to maintain the
17 confidentiality of Mattel's trade secrets.

18     22.    "REFER OR RELATE TO" a given subject matter means relate to,
19 refer to, constitute, contain, embody, depict, incorporate, reflect, evidence, identify,
20 state, deal with, comment on, respond to, describe, analyze, support, refute, contradict,
21 or in any way pertain to that subject matter, either directly or indirectly.

22     23.    "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-
23 9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated
24 therewith.

25     24.    "SLEEKCRAFT FACTORS" means those factors enumerated in
26 AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979), and includes specifically:
27 (1) strength of the mark; (2) similarity of the marks; (3) relatedness of the goods; (4)
28 marketing channels; (5) type of goods and purchaser's likely degree of care; (6)

07209/2239571.2

-6-    EXHIBIT  4   PAGE  94

1   evidence of actual confusion; (7) likelihood of expansion of the product lines; and (8)

2   defendant's intent in selecting the mark.

3          25.    "MATTEL DOCUMENTS" means any and all DOCUMENTS

4   stolen, obtained or taken from MATTEL by any PERSON, including but not limited to

5   the DOCUMENTS identified as Bates Numbers M 0019162-M 0019365, M 0019375-

6   M 0019491, M 0019492-M 0019586, M 0030576, M 0019587-M 0022008, M

7   0022009-M 0026076, M 0026077-M 0029024, M 0029025-M 0029042, M 0029043-M

8   0029044, M 0029045-M 0029050, M 0029051-M 0029053, M 0031471-M 0031473, M

9   0029054-M 0029255, M 0031474-M 0031485, M 0029226-M 0030163, M 0030164-M

10  0030173, M 0030174-M 0030183, M0030261-M 0030268, M 0030269-M 0030278, M

11  0030440-M 0030441, M 0030505-M 0030575, M 0030577-M 0030608, M 0019366-M

12  0019374, M 0030184-M 0030240, M 0030254-M 0030260, M 0030279-M 0030439, M

13  0030442-M 0030470, M 0030471-M 0030501, M 0030609, M 0030610-M 0030625, M

14  0030626-M 0030674, M 0030241-M 0030253, M 0030502-M 0030504, M 0030675-M

15  0030754, M 0030755-M 0030756, M 0030770-M 0030782, M 0030757-M 0030769, M

16  0030783-M 0030788, M 0030789-M 0030799, M 0030800-M 0030834, M 0030835, M

17  0030836-M 0030838, M 0030839-M 0030841, M 0030842-M 0030845, M 0030846-M

18  0030850, M 0030851- M 0030959, M 0030960-M 0030972, M 0030973-M 0031141,

19  M 0031142-M 0031153, M 0031154-M 0031162, M 0031163-M 0031172, M 0031173,

20  M 0031174-M 0031206, M 0031207-M 0031223, M 0031224-M 0031229, M

21  0031230-M 0031247, M 0031248-M 0031258, M 0031259-M 0031262, M 0031263-M

22  0031264, M 0031265, M 0031266, M 0031267, M 0031268, M 0031269, M 0031270-

23  M 0031278, M 0031279-M 0031280, M 0031281-M 0031282, M 0031283-M 0031291,

24  M 0031292-M 0031470, M 0032318, M 0031486-M 0031503, M 0031504-M 0031612,

25  M 0031613-M 0031860, M 0031863-M 0031864, M 0031865-M 0031919, M

26  0031861-M 0031862, M 0031925-M 0032000, M 0031920-M 0031924, M 0032001-M

27  0032009, M 0032010-M 0032057, M 0032058, M 0032059-M 0032070, M 0032071-M

28  0032288, M 0032289, M 0032290-M 0032317, M 0059836-M 0059837, M 0075253-M

EXHIBIT 4   PAGE 95

07209/2239571.2

1   0075260, M 0075261-M 0075277, M 0075278-M 0075289, M 0075290-M 0075307, M
2   0075308-M 0075309, M 0075310-M 0075315, M 0075316-M 0075317, M 0075318-M
3   0075322, M 0075323-M 0075324, M 0075325, M 0075326-M 0075328, M 0075329-M
4   0075333, M 0075334-M 0075375, M 0075376-M 0075378, M 0075379-M 0075380, M
5   0075381-M 0075384, M 0075385, M 0075386-M 0075388, M 0075389, M 0075390,
6   M 0075391, M 0075392-M 0075398, M 0075399-M 0075400, M 0075401-M 0075407,
7   M 0075408, M 0075409-M 0075416, M 0075417-M 0075420, M 0075421, M
8   0075422-M 0075469, M 0075470-M 0075490, M 0075491-M 0075494, M 0075495-M
9   0075515, M 0075516-M 0075531, M 0075532-M 0075552, M 0075553-M 0075572, M
10  0075573, M 0075574-M 0075594, M 0075595-M 0075616, M 0075617, M 0075618-M
11  0075619, M 0075620-M 0075635, M 0075636-M 0075654, M 0075655-M 0075661, M
12  0075662-M 0075699, M 0075700-M 0075709, M 0075710-M 0075713, M 0075714-M
13  0075775, M 0075776-M 0075780, M 0075781-M 0075798, M 0075799-M 0075842, M
14  0075843-M 0075906, M 0075907-M 0075949, M 0075950-M 0076018, M 0076019, M
15  0076020-M 0076132, M 0076133-M 0076143, M 0076144-M 0076145, M 0076146-M
16  0076148, M 0076149-M 0076155, M 0076156-M 0076169, M 0076170-M 0076171, M
17  0076172-M 0076196, M 0076197-M 0076215, M 0076216-M 0076250, M 0076251-M
18  0076264, M 0076265-M 0076279, M 0076280, M 0076281-M 0076311, M 0076312-M
19  0076362, M 0076363-M 0076370, M 0076371, M 0076372-M 0076425, M 0076426-M
20  0076427, M 0076428-M 0076431, M 0076432- M 0076442, M 0076443-M 0076446,
21  M 0100646-M 0100653, M 0098687-M 0098688, M 0098689-M 0098697, M
22  0098698-M 0098723, M 0098724-M 0098771, M 0098772-M 0098832, M 0098833-M
23  0098846, M 0098847-M 0098865, M 0098866-M 0098879, M 0098880-M 0098883, M
24  0098884-M 0098933, M 0098934-M 0098936, M 0098937-M 0098971, M 0098972-M
25  0099436, M 0099437-M 0099439, M 0099440-M 0099448, M 0099449-M 0099461, M
26  0099462-M 0099471, M 0099472-M 0099476, M 0099477-M 0099493, M 0099494-M
27  0099529, M 0099530-M 0099594, M 0099595-M 0099597, M 0099598-M 0099601, M
28  0099602-M 0099618, M 0099619-M 0099628, M 0099629-M 0099656, M 0099657-M

-8-   EXHIBIT   4   PAGE   96
MATTEL'S SUPPLEMENTAL INTERROGATORIES

1   0099665, M 0099666-M 0099725, M 0099726-M 0100622, M 0100623-M 0100645, M

2   0100646-M 0100653, M 0100654-M 0100695, M 0100696-M 0100698, M 0100699-M

3   0100700, M 0100701-M 0100735, M 0100736-M 0100741, M 0100742-M 0100774, M

4   0100775-M 0100778, M 0100779-M 0100780, M 0100781, M 0100782, M 0100783-M

5   0100789, M 0100790-M 0100795, M 0100796-M 0100858, M 0100859-M 0100868, M

6   0100869-M 0100878, M 0100879-M 0100891, M 0100892-M 0100905, M 0100906-M

7   0100918, M 0100919-M 0100932, M 0100933-M 0100941, M 0100942-M 0100952, M

8   0100953, M 0100954-M 0100955, M 0100956-M 0100983, M 0100984-M 0101013, M

9   0101014-M 0101064, M 0101065 and M 0101069-M 0101128.

10       26.     "DIGITAL INFORMATION" means any information created or

11   stored digitally, including but not limited to electronically, magnetically or optically.

12       27.     "STORAGE DEVICE" means any computer hard drive, memory,

13   USB device, tape, storage array or any other device or medium that allows a user,

14   whether permanently, temporarily or otherwise, to create, generate, transmit, copy,

15   retain, store or maintain DIGITAL INFORMATION.

16       28.     "SOURCE OF INFORMATION" means any medium containing

17   DOCUMENTS or other information, whether in paper, electronic or other form,

18   including but not limited to any STORAGE DEVICE, file, file cabinet or other any

19   other source of information or DOCUMENTS.

20       29.     "COLLECT," "COLLECTED" or "COLLECTION," with reference

21   to DOCUMENTS, means to collect, review, produce, request, seek, look for, search for,

22   analyze or in any other way collect or review or attempt to collect or review such

23   DOCUMENTS in connection with YOUR search for, review of and/or production of

24   DOCUMENTS in this ACTION.

25       30.     "IDENTIFY" or "IDENTITY" means the following:

26           (a)     with reference to an individual or individuals, means to state,

27   fully and separately as to each, such individual's full name, any known business title,

28   current or last known business affiliation, current or last known residential address,

1  current or last known business address, current or last known relationship to MGA, and

2  current or last known telephone number.

3        (b)    with reference to an entity or entities, means to state, fully and

4  separately as to each, such entity's full name, state (or country) of incorporation or

5  organization, present or last known address, and present or last known telephone

6  number.

7        (c)    with reference to a SOURCE OF INFORMATION, means

8  to describe and state, fully and separately as to each, the SOURCE OF

9  INFORMATION so as to distinctly identify each such SOURCE OF INFORMATION

10  and differentiate each such SOURCE OF INFORMATION from all other SOURCES

11  OF INFORMATION, including without limitation by stating its nature (e.g., USB

12  drive, computer hard drive, file cabinet, etc.), and any unique identifier information

13  (such as hard drive serial number); the physical location(s), including full address

14  information and full identifying computer network drive information if applicable, of

15  each such SOURCE OF INFORMATION (as of the time of YOUR COLLECTION of

16  DOCUMENTS from the SOURCE OF INFORMATION, regardless of whether such

17  DOCUMENTS were thereafter moved elsewhere for the purpose of YOUR review); the

18  IDENTITY of each natural person or individual who is, was or has been associated

19  with each such SOURCE OF INFORMATION; the date(s) on which YOU

20  COLLECTED DOCUMENTS from each such SOURCE OF INFORMATION in

21  connection with this ACTION; and the IDENTITY of any DOCUMENTS, by Bates

22  number, that YOU have produced from each such SOURCE OF INFORMATION to

23  Mattel in this ACTION.

24        (d)    with reference to any other DOCUMENT or DOCUMENTS,

25  means to describe each DOCUMENT by Bates number.   In the event that a

26  DOCUMENT does not have a Bates number, IDENTIFY means, with respect to each

27  such DOCUMENT, to provide a complete description of it such that it may be the

28  subject of a request for the production of documents, including by stating the date,

1  identity of the author, addressee(s), signatories, parties, or other PERSONS identified
2  therein, its present location or custodian and a description of its contents.

3          (e)    with reference to the payment of money or other item of
4  value, or any promise, agreement, proposal or offer to pay money or any item of value,
5  means to state the amount of the payment or the value of the item, the IDENTITY of
6  the payor, the IDENTITY of the payee, the IDENTITY of the PERSON on whose
7  behalf it is being made, the IDENTITY of the PERSON on whose behalf it is being
8  received, the date(s) on which such payment or item of value was paid, promised,
9  agreed to be paid, proposed or offered, the nature of the method of payment (e.g., cash,
10  check) and any identifying information accompanying such payment (e.g., check
11  number), and the IDENTITY of each bank or financial institution involved therein.

12         31.    "Any" as used in these interrogatories includes the word "all," and
13  the word "all" as used in these interrogatories includes the word "any."

14         32.    The singular form of a noun or pronoun includes within its meaning
15  the plural form of the noun or pronoun so used, and vice versa; the use of the masculine
16  form of a pronoun also includes within its meaning the feminine form of the pronoun so
17  used, and vice versa; the use of any tense of any verb includes also within its meaning
18  all other tenses of the verb so used, whenever such construction results in a broader
19  request for information; and "and" includes "or" and vice versa, whenever such
20  construction results in a broader disclosure of documents or information.

21

22                    **Instructions**

23         A.    When   an   interrogatory   requests   disclosure   of   a
24  COMMUNICATION or other information as to which YOU claim any privilege or
25  protection as a ground for nondisclosure, identify each PERSON who participated in or
26  had knowledge of the COMMUNICATION or other information and provide the
27  following:

28         (i)    the privilege or protection that YOU claim precludes disclosure;

07209/2239571.2

EXHIBIT ___4___ PAGE ___99___      -11-
MATTEL'S SUPPLEMENTAL INTERROGATORIES

1       (ii)   the subject matter of the COMMUNICATION or information

2             (without revealing the content as to which the privilege is claimed);

3             and

4       (iii)   any additional facts or grounds on which YOU base YOUR claim

5             of privilege or protection.

6       B.     When an interrogatory requests that YOU provide information,

7 YOU are required to supply all information known by or available to YOU or YOUR

8 employees, officers, directors, agents, representatives, attorneys and experts. If YOU

9 cannot completely answer the interrogatory after making diligent efforts to do so,

10 please so state. Then describe in detail all efforts made to answer the interrogatory;

11 identify every PERSON involved in such efforts; and state the additional information

12 YOU need, if any, to respond completely to the interrogatory.

13

14 **Interrogatories**

15

16 <u>INTERROGATORY NO. 51</u>:

17       For each concept, design, product, product packaging or other matter that

18 YOU contend MATTEL has copied, infringed or diluted, including but not limited to

19 those identified in MGA's Responses to Mattel, Inc.'s First Set of Interrogatories Re

20 Claims of Unfair Competition, Response to Interrogatory No. 2 (and any Supplemental

21 Responses to such Interrogatory), describe, fully and separately, each and every

22 concept, design, product, product packaging or other matter of or by MATTEL that

23 YOU contend is a copy of, infringes or dilutes YOUR alleged concept(s), design(s),

24 product(s), product packaging or other matter. Your answer should describe the Mattel

25 concept, design, product, product packaging or other matter with specificity and in

26 detail (including without limitation by product name, product number, SKU, or bar

27 code number), and specify those elements or attributes of YOUR claimed concept,

28

EXHIBIT __4__ PAGE __100__     -12-

1  design, product, product packaging or other matter that YOU contend were copied,
2  infringed or diluted by MATTEL.

3

4  <u>INTERROGATORY NO. 52</u>:

5           For each trade dress that YOU contend MATTEL copied, infringed or
6  diluted, separately IDENTIFY each product sold by YOU or YOUR licensees that
7  incorporates such trade dress and, for each such product, separately state (a) the number
8  of units, by year, of each such product sold by YOU or YOUR licensees; (b) revenue
9  received by YOU from such SALES of each such product; (c) all costs YOU have
10 incurred in connection with each product, including but not limited to YOUR cost of
11 good sold, and (d) YOUR gross and net profits from each such product.

12

13 <u>INTERROGATORY NO. 53</u>:

14          For each MATTEL concept, design, product, product packaging or other
15 matter that YOU contend is likely to cause confusion, to cause mistake, or to deceive as
16 to affiliation, connection, or association, or as to origin, sponsorship, or approval,
17 separately state all facts that support YOUR contention of such, including but not
18 limited to all facts that support YOUR contention, if YOU so contend, that any of the
19 SLEEKCRAFT FACTORS weighs against MATTEL, and IDENTIFY all PERSONS
20 with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
21 such facts.

22

23 <u>INTERROGATORY NO. 54</u>:

24          For each concept, design, product, product packaging or other matter that
25 YOU contend MATTEL copied, infringed or diluted, state all facts that support
26 contention, if YOU so contend, that such copying or infringement was intentional or
27 willful, and IDENTIFY all PERSONS with knowledge of such facts and all
28 DOCUMENTS that REFER OR RELATE TO such facts.

1

2   INTERROGATORY NO. 55:

3           State all facts which support the allegation in Paragraph 120 of YOUR

4   COMPLAINT that MATTEL has "caused and continues to cause blurring and dilution

5   of the distinctive look of MGA's products and trade dress," and IDENTIFY all

6   PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR

7   RELATE TO such facts.

8

9   INTERROGATORY NO. 56:

10          IDENTIFY all MATTEL DOCUMENTS that MGA has obtained,

11  received, reviewed, copied, reproduced, transmitted, requested or used at any time since

12  January 1, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all

13  DOCUMENTS that REFER OR RELATE TO such MATTEL DOCUMENTS.

14

15  INTERROGATORY NO. 57:

16          IDENTIFY all DOCUMENTS that REFER OR RELATE TO any

17  MATTEL product or plan that any of the FORMER MATTEL EMPLOYEES

18  provided, transmitted or disclosed to, shared with or used on behalf of MGA at any

19  time since January 1, 1999, and IDENTIFY all PERSONS with knowledge of such

20  facts.

21

22  INTERROGATORY NO. 58:

23          State all facts which support YOUR contention, if YOU so contend, that

24  YOU and/or MGA did not obtain any MATTEL DOCUMENTS through improper

25  means, and IDENTIFY all PERSONS with knowledge of such facts and all

26  DOCUMENTS that REFER OR RELATE TO such facts.

27

28

EXHIBIT  4 -  PAGE  l02

MATTEL'S SUPPLEMENTAL INTERROGATORIES

1  INTERROGATORY NO. 59:

2          State all facts which support YOUR contention, if YOU so contend, that
3  any information in the MATTEL DOCUMENTS does not and/or did not derive
4  independent economic value from not being generally known to the public or other
5  PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY
6  all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
7  RELATE TO such facts.

8

9  INTERROGATORY NO. 60:

10          State all facts which support YOUR contention, if YOU so contend, that
11  any information in the MATTEL DOCUMENTS was known to the public or to
12  PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY
13  all PERSONS with knowledge of the foregoing and all DOCUMENTS that REFER OR
14  RELATE TO the foregoing.

15

16  INTERROGATORY NO. 61:

17          State all facts which support YOUR contention, if YOU so contend, that
18  YOU and/or MGA independently developed, or did not otherwise use or disclose, any
19  information in the MATTEL DOCUMENTS, and IDENTIFY all PERSONS with
20  knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such
21  facts.

22

23  INTERROGATORY NO. 62:

24          State all facts which support YOUR contention that YOUR use or
25  disclosure of information in the MATTEL DOCUMENTS neither benefited YOU nor
26  MGA nor harmed MATTEL, and IDENTIFY all PERSONS with knowledge of such
27  facts and all DOCUMENTS that REFER OR RELATE TO such facts.

28

EXHIBIT  4  PAGE  103

MATTEL'S SUPPLEMENTAL INTERROGATORIES

07209/2239571.2

1  INTERROGATORY NO. 63:

2       State all facts which support YOUR contention, if YOU so contend, that
3  YOU and/or MGA had, has or have any right to copy, possess, use or disclose any
4  MATTEL DOCUMENT, and IDENTIFY all PERSONS with knowledge of such facts
5  and all DOCUMENTS that REFER OR RELATE TO such facts.

6

7  INTERROGATORY NO. 64:

8       To the extent YOU have not previously disclosed such information in a
9  prior interrogatory response YOU provided to Mattel, state all facts which support
10  YOUR claims against Mattel in THIS ACTION, and IDENTIFY all PERSONS with
11  knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such
12  facts.

13

14  INTERROGATORY NO. 65:

15       Describe in detail each and every action YOU have taken, or directed be
16  taken, to locate, maintain or preserve evidence which is, might be or could be relevant
17  or potentially relevant to THIS ACTION.

18

19  INTERROGATORY NO. 66:

20       IDENTIFY each and every SOURCE OF INFORMATION from which
21  YOU have COLLECTED DOCUMENTS for responsiveness and potential production
22  in THIS ACTION.

23

24  INTERROGATORY NO. 67:

25       IDENTIFY fully and separately each and every payment of money or
26  other item of value that YOU have made or given, or any promise, agreement, proposal
27  or offer by YOU to pay money or give any item of value, to or on behalf of any
28  PERSON identified in any of the parties' initial disclosures in this ACTION at any time

1  when such PERSON was not an employee of MGA, including without limitation with
2  respect to legal fees incurred by or on behalf of such PERSON.

3

4  INTERROGATORY NO. 68:

5          To the extent not disclosed in response to prior Interrogatories, IDENTIFY
6  fully and separately each and every payment of money or other item of value that MGA
7  has made, or any promise, agreement, proposal or offer by MGA to pay money or give
8  any item of value, to or on behalf of any of the FORMER MATTEL EMPLOYEES,
9  including without limitation with respect to legal fees incurred by or on behalf of any of
10  the FORMER MATTEL EMPLOYEES.

11

12  INTERROGATORY NO. 69:

13          To the extent not disclosed in response to prior Interrogatories, IDENTIFY fully
14  and separately each and every payment of money or other item of value that YOU have
15  made, or any promise, agreement, proposal or offer by YOU to pay money or give any
16  item of value, since January 1, 1998 to or on behalf of any PERSON who has been
17  employed by MATTEL (excluding ordinary salary and benefits paid to such PERSON
18  while an MGA employee), including without limitation with respect to legal fees
19  incurred by or on behalf of such PERSON and bonuses paid to such PERSON.

20

21

22  DATED: _____        QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
23

24
                                     By_____
25                                     B. Dylan Proctor
                                       Attorneys for Mattel, Inc.
26

27                                     EXHIBIT _4_ PAGE _105_

28