1       •   a document containing the product launch dates and related advertising

2          for all Mattel new products between Fall 2005 and Spring 2006.

3          75.   After Mattel discovered that Brisbois had copied these sensitive

4 documents to a thumb drive, Mattel notified Canadian law enforcement authorities.

5 Canadian law enforcement authorities recovered from Brisbois a thumb drive with

6 the volume label "BACKPACK" containing the documents that Brisbois had

7 copied from Mattel's computer system. Mattel later learned that while she was

8 working as a Vice President of Sales at MGA, Brisbois accessed and modified

9 documents on that thumb drive.

10          76.   After joining MGA, Brisbois repeatedly traveled to MGA's

11 offices in Van Nuys, California and met with Larian and Brawer. In February,

12 2006, knowing that Mattel trade secrets had been seized from MGA's Mexico City

13 offices and that at least three MGA employees were under criminal investigation,

14 MGA nonetheless issued a press release trumpeting its 2005 performance, with

15 Larian himself concluding, "Our international teams in Mexico and Canada have

16 done a fantastic job."

17 **VII. MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL TO**

18      **JOIN MGA TO MISAPPROPRIATE MATTEL TRADE SECRETS**

19      **FOR THE BENEFIT OF MGA**

20          77.   In the past few years, MGA has hired directly from Mattel's

21 United States operations at least 25 employees, from Senior Vice-President level to

22 lower level employees. On information and belief, many of these employees were

23 specifically targeted and recruited by MGA, including by Larian and Brawer, based

24 on the Mattel confidential and proprietary information they could access. Many of

25 these employees had access to information that Mattel considers to be highly

26 proprietary and confidential. Mattel believes that some of those former Mattel

27 employees may be observing their obligations not to misappropriate, disclose or

28 use Mattel's confidential and proprietary information. Mattel is informed and

EXHIBIT 3

SECOND AMENDED ANSWER AND COUNTERCLAIMS
PAGE

1   believes, however, that certain additional employees accessed, copied and took

2   from Mattel confidential and proprietary information, including Mattel's strategic

3   plans; business operations, methods and systems; marketing and advertising

4   strategies and plans; future product lines; product profit margins; and customer

5   requirements.  The misappropriated confidential and proprietary information

6   included information that these Mattel employees were not authorized to access.

7   On information and belief, the misappropriated confidential and proprietary

8   information taken from Mattel is being disclosed to and used by MGA for the

9   benefit of MGA and to the detriment of Mattel.

10  **VIII.  LARIAN MAKES MISREPRESENTATIONS TO RETAILERS**

11  **ABOUT MATTEL'S PRODUCTS**

12          78.     Counter-defendants have engaged in other illegal practices in

13  their efforts to compete unfairly with Mattel. Larian has a practice of sending e-

14  mail messages to a "Bratz News" distribution list that Larian created or that was

15  created for him.  Mattel is informed and believes that the recipients of e-mail

16  messages sent to the "Bratz News" distribution list include members of the media

17  as well as representatives of many of Mattel's most significant customers.

18          79.     On May 12, 2006, Larian sent an e-mail message to the "Bratz

19  News" distribution list that included a reference to Mattel's updated MY SCENE

20  MY BLING BLING product with real gems.  Mattel had not publicly announced

21  this product at the time that Larian sent his May 12, 2006 e-mail.  In fact, Mattel

22  had guarded the identification of this particular product.

23          80.     Shortly thereafter, Larian engaged in a campaign of calling

24  Mattel's most significant customers, including but not limited to Target and TRU,

25  regarding the MY SCENE MY BLING BLING product with real gems.  In an

26  effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING

27  BLING product with real gems, Larian knowingly made false factual statements

28  about that product to each retailer. As of the writing of this Second Amended

EXHIBIT 3

83

163.2

1    Answer and Counterclaims, Mattel is aware that Larian represented to each retailer

2    that each was the only retailer to purchase the product and that Mattel would not be

3    supporting the product with television advertising. At the time that Larian made

4    these statements, he knew them to be false. As a result of Larian's

5    misrepresentations, at least one retailer cancelled its order for 75,000 units of the

6    MY SCENE MY BLING BLING product with real gems. Only after Mattel

7    learned of Larian's misrepresentations and was able to correct them was Mattel able

8    to assure the retailer that Larian's representations were false and to persuade the

9    retailer to reinstate the order.

10    81.    Such conduct is not an isolated incident. MGA and Larian, in an

11    effort to gain an unfair competitive advantage, repeatedly issued false and

12    misleading press releases. In these press releases, MGA and Larian have

13    misrepresented Bratz's sales, Bratz's market share, Bratz's position vis-à-vis

14    Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market

15    share of Mattel's BARBIE products.

**CLAIMS FOR RELIEF**

**First Counterclaim**

**Copyright Infringement**

**(Against MGA, MGA Entertainment (HK) Limited,**

**Larian, Bryant and Does 4 through 10)**

21    82.    Mattel repeats and realleges each and every allegation set forth in

22    paragraphs 1 through 81, above, as though fully set forth at length.

23    83.    Mattel is the owner of copyrights in works that are fixed in

24    tangible media of expression and that are the subject of valid, and subsisting,

25    copyright registrations owned by Mattel. These include, without limitation, the

26    works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-

27    378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-

28

EXHIBIT ___3___

PAGE __84__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273.

84.    Counter-defendants have reproduced, created derivative works from and otherwise infringed upon the exclusive rights of Mattel in its protected works without Mattel's authorization.  Counter-defendants' acts violate Mattel's exclusive rights under the Copyright Act, including without limitation Mattel's exclusive rights to reproduce its copyrighted works and to create derivative works from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

85.    Counter-defendants' infringement (and substantial contributions to the infringement) of Mattel's copyrighted works is and has been knowingly made without Mattel's consent and for commercial purposes and the direct financial benefit of Counter-defendants.  Counter-defendants, moreover, have deliberately failed to exercise their right and ability to supervise the infringing activities of others within their control to refrain from infringing Mattel's copyrighted works and have failed to do so in order to deliberately further their significant financial interest in the infringement of Mattel's copyrighted works.  Accordingly, Counter-defendants have engaged in direct, contributory and vicarious infringement of Mattel's copyrighted works.

86.    By virtue of defendants' infringing acts, Mattel is entitled to recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of suit and attorneys' fees, and all other relief permitted under the Copyright Act.

87.    Counter-defendants' actions described above have caused and will continue to cause irreparable damage to Mattel, for which Mattel has no remedy at law.  Unless Counter-defendants are restrained by this Court from continuing their infringement of Mattel's copyrights, these injuries will continue to occur in the future.  Mattel is accordingly entitled to injunctive relief restraining Counter-defendants from further infringement.

EXHIBIT 3

PAGE 85

## Second Counterclaim

### Violation of the Racketeer Influenced and Corrupt Organizations Act

### 18 U.S.C. §§ 1962(c) and 1964(c)

### (Against All Counter-defendants)

88.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 87, above, as though fully set forth at length.

89.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas and Brisbois were employed by and associated-in-fact with an enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "MGA Criminal Enterprise").  The MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois).  In addition, beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, were employed by and associated-in-fact with a second enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "Bratz Criminal Enterprise").

90.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and each of them, for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information, by

EXHIBIT _____ 3

86

1363.2

1   means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully

2   and knowingly conduct and participate, directly and indirectly, in the conduct of

3   the MGA Criminal Enterprise's affairs and, in the case of MGA, MGA

4   Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe Counter-

5   defendants, the Bratz Criminal Enterprise's affairs, through a pattern of

6   racketeering activity. Their actions include multiple, related acts in violation of:

7   18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512

8   (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and

9   foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. §

10  506(a)(1)(A) (criminal copyright infringement).

11          91.    MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

12  Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

13  Brisbois, and the Other Former Employees, and each of them, shared the common

14  purpose of enabling MGA to obtain confidential, proprietary and otherwise

15  valuable Mattel property through improper means in order to assist MGA in

16  illegally competing with Mattel domestically and throughout the world.

17          92.    The MGA Criminal Enterprise and Bratz Criminal Enterprise as

18  described herein are and have been at all relevant times continuing enterprises

19  because, among other reasons, each is designed to and did unlawfully acquire the

20  confidential business information and property of Mattel and incorporated this

21  information and property into MGA's ongoing business, marketing strategies and

22  business methods, practices and processes. The conduct of each enterprise

23  continues through the date of this Second Amended Answer and Counterclaims and

24  is ongoing by virtue of MGA's continuing use of Mattel's information and property,

25  all to the detriment of Mattel.

26          93.    The pattern of racketeering activity, as defined by 18 U.S.C.

27  §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

28  of continuing criminal activity. This activity consists of multiple acts of

EXHIBIT   3

1  racketeering by each member of the MGA Criminal Enterprise and Bratz Criminal

2  Enterprise, is interrelated, not isolated and is perpetrated for the same or similar

3  purposes by the same persons.  This activity extends over a substantial period of

4  time, up to and beyond the date of this Second Amended Answer and

5  Counterclaims.  These activities occurred after the effective date of 18 U.S.C.

6  §§ 1961 *et seq.*, and the last such act occurred within 10 years after the commission

7  of a prior act of racketeering activity.  These racketeering activities included

8  repeated acts of:

9           (a)    <u>Mail Fraud</u>:  Counter-defendants MGA, MGA Entertainment

10                  (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and

11                  Does 4 through 10, aided and abetted by each other and some or

12                  all of the remaining members of the MGA Criminal Enterprise,

13                  having devised a scheme or artifice to defraud Mattel of its

14                  confidential trade secret information and property by conversion,

15                  false representations, concealment and breaches of fiduciary duty,

16                  did for the purpose of furthering and executing such a scheme or

17                  artifice to defraud, deposited or caused to be deposited matters or

18                  things to be sent or delivered by the Postal Service, or any private

19                  or commercial interstate carrier, or took or received matters or

20                  things therefrom, or knowingly caused matters or things to be

21                  delivered by mail or such carrier according to the direction

22                  thereon, or at the place at which it is directed to be delivered by

23                  the person to whom it is addressed, in violation of 18 U.S.C.

24                  § 1341 and 18 U.S.C. § 2, as alleged with greater particularity in

25                  the foregoing paragraphs and as evidenced by, among other

26                  things, the true and correct copies of communications and other

27                  evidence included in Exhibit C;

28

EXHIBIT ___3___

PAGE __88__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

(b)  Wire Fraud:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, having devised a scheme or artifice to defraud Mattel of its confidential and trade secret information and property by conversion, false representations, concealment and breaches of fiduciary duty, did for the purpose of furthering and executing such a scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other things, the true and correct copies of communications and other evidence included in Exhibit C;

(c)  Tampering With a Witness, Victim or Informant:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by:

   i.     altering Bryant's contract with MGA relating to Bratz to conceal evidence that Bryant faxed the contract from the BARBIE COLLECTIBLES department of Mattel, using a fax

EXHIBIT ___3___

PAGE ___89___

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  machine owned by Mattel and while Bryant was employed by

2  Mattel;

3        ii.    altering numerous original Bratz drawings created

4  by Bryant by adding false and misleading date notations of

5  "8/1998" and "© 8/1998" to the drawings even though the

6  drawings were not created in August 1998; and

7        iii.   destroying electronic and other evidence, including

8  by destroying evidence previously contained on Carter Bryant's

9  and Isaac Larian's computer hard drives.

10       Such actions are in violation of 18 U.S.C. § 1512 and 18

11  U.S.C. § 2, as alleged with greater particularity in the foregoing

12  paragraphs;

13  (d)  <u>Interstate and Foreign Travel in Aid of Racketeering Enterprises</u>:

14  Counter-defendants MGA, MGA Entertainment (HK) Limited,

15  MGA de Mexico, Larian, Bryant, Machado and Does 4 through

16  10, aided and abetted by each other and some or all of the

17  remaining members of the MGA Criminal Enterprise, traveled in

18  interstate and foreign commerce, or used the mail or any facility

19  in interstate or foreign commerce, with the intent to promote,

20  manage, establish, carry on and facilitate the promotion,

21  management, establishment and carrying on of unlawful activity,

22  *i.e.* bribery, in violation of the laws of the State of California,

23  *Cal. Penal Code* § 641.3, all in violation of 18 U.S.C. § 1952 and

24  18 U.S.C. § 2, as alleged with greater particularity in the

25  foregoing paragraphs;

26  (e)  <u>Criminal Copyright Infringement</u>: Counter-defendants MGA,

27  MGA Entertainment (HK) Limited, MGA de Mexico, Larian,

28  Bryant, Machado and Does 4 through 10, aided and abetted by

4363.2

EXHIBIT ___3___

each other and some or all of the remaining members of the MGA Criminal Enterprise, willfully infringed Mattel's copyrights, including with respect to documents containing Mattel trade secret and confidential information, for purposes of commercial advantage and private financial gain, all in violation of 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater particularity in the foregoing paragraphs.

94.   The persons alleged herein to have violated 18 U.S.C. § 1962(c) are separate from, though employed by or associated with, MGA, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group.

95.   MGA had a role in the racketeering activity that was distinct from the undertaking of those acting on its behalf.  MGA also attempted to benefit, and did benefit, from the activity of its employees and agents alleged herein, and thus was not a passive victim of racketeering activity, but an active perpetrator.

96.   Mattel has been injured in its business or property as a direct and proximate result of the Counter-defendants' and the other enterprise members' violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts constituting the pattern of racketeering activity.

97.   As a result of the violations of 18 U.S.C. § 1962(c), by MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, Brawer, Trueba, Vargas, Brisbois and the Other Former Employees, Mattel has suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special compensatory damages, plus interest, costs and attorneys, fees, incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

EXHIBIT __3__

154363.2

1

**Third Counterclaim**

2  **Conspiracy To Violate the Racketeer**

3  **Influenced And Corrupt Organizations Act**

4  **(18 U.S.C. §§ 1962(d) and 1964(c))**

5  **(Against All Counter-defendants)**

6       98.   Mattel repeats and realleges each and every allegation set forth in

7  paragraphs 1 through 97, above, as though fully set forth at length.

8       99.   Beginning at various times from approximately 1999 through the

9  filing of this Second Amended Answer and Counterclaims, in the Central District

10  of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK)

11  Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and

12  Brawer, Trueba, Vargas, Brisbois and the Other Former Employees willfully,

13  knowingly and unlawfully, did conspire, combine, confederate and agree together

14  to violate 18 U.S.C. § 1962(c).

15       100.  These conspirators were employed by and associated-in-fact with

16  the MGA Criminal Enterprise engaging in, and the activities of which affect,

17  interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group,

18  the Mexican Group and the Canadian Group, constituting a group of individuals

19  associated-in-fact, did unlawfully, willfully, and knowingly participate in and

20  conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a

21  pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK)

22  Limited, Larian and Bryant, and certain of the Doe Counter-defendants,

23  constituting a group of individuals associated-in-fact, did unlawfully, willfully, and

24  knowingly participate in and conduct, directly and indirectly, the Bratz Criminal

25  Enterprise's affairs through a pattern of racketeering activity.

26       101.  The pattern of racketeering activity, as defined by 18 U.S.C.

27  §§ 1961(1) and (5), including acts of mail fraud in violation of 18 U.S.C. § 1341

28  and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18

**EXHIBIT  3**

363.2

1   U.S.C. § 2; acts of tampering with witnesses, victims or informants in violation of

2   18 U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of

3   racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; and

4   acts of criminal copyright infringement in violation of 18 U.S.C. § 2319(a) and 17

5   U.S.C. § 506(a)(1)(A).

6        102.  Counter-defendants and the other members of the MGA Criminal

7   Enterprise schemed to defraud Mattel and steal its property and trade secret

8   information by means of false representation, breaches of fiduciary duty,

9   conversation and concealment, as more fully set forth in the foregoing paragraphs.

10        103.  In furtherance of this unlawful conspiracy, and to effect its

11   objectives, Counter-defendants and various co-conspirators committed numerous

12   overt acts, including but not limited to those set forth in the foregoing paragraphs.

13        104.  Mattel has been injured in its business or property as a direct and

14   proximate result of the Counter-defendants' and the other enterprise members'

15   violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts

16   constituting the pattern of racketeering activity.

17        105.  As a result of the conspiracies between and among all Counter-

18   defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has

19   suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18

20   U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

21   compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

22   of Counter-defendants' violations of 18 U.S.C. § 1962(d).

23   **Fourth Counterclaim**

24   **Misappropriation of Trade Secrets**

25   **(Against Counter-defendants MGA, MGA de Mexico,**

26   **Larian, Machado and Does 4 through 10)**

27        106.  Mattel repeats and realleges each and every allegation set forth in

28   paragraphs 1 through 105, above, as though fully set forth at length

EXHIBIT ___3___

92

3.2

107.  As used herein, "Trade Secret Material" shall mean the documents, materials and information stolen by Machado, Trueba, Vargas, Brisbois, the Other Former Employees, and other persons acting for, on behalf of or at the direction of MGA and/or Larian.  Prior to their theft by Counter-defendants, the Trade Secret Materials gave Mattel a significant competitive advantage over its existing and would-be competitors, including MGA.  This advantage, as to MGA, has now been compromised as a result of Counter-defendants' unlawful activities.

108.  Mattel made reasonable efforts under the circumstances to maintain the confidentiality of the Trade Secret Materials, including by having employees and consultants who may have access the Trade Secret Materials sign confidentiality agreements that oblige them not to disclose the Trade Secret Materials or characteristics of the Trade Secret Materials; by limiting the circulation of said materials within Mattel; by protecting and limiting access to computers with log-in identifications and passwords; by limiting each employee's access to electronic files to those that the particular employee needs to access; by educating employees on the nature of Mattel's information that is confidential and proprietary; and by reminding employees on a regular and periodic basis of their obligation to protect and maintain Mattel's confidential and proprietary information.

109.  Mattel's Trade Secret Materials derive independent economic value from not being generally known to the public or to other persons who can obtain economic benefit from their disclosure.

110.  Counter-defendants have illegally obtained the trade secret materials, as set forth above, and through other means of which Mattel is presently unaware.

111.  Counter-defendants have used and disclosed Mattel's Trade Secret Materials without Mattel's consent and without regard to Mattel's rights, and

EXHIBIT ___3____

PAGE ___94___

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   without compensation, permission, or licenses for the benefit of themselves and

2   others.

3          112.  Counter-defendants' conduct was, is, and remains willful and

4   wanton, and was taken with blatant disregard for Mattel's valid and enforceable

5   rights.

6          113.  Counter-defendants' wrongful conduct has caused and, unless

7   enjoined by this Court, will continue in the future to cause irreparable injury to

8   Mattel.  Mattel has no adequate remedy at law for such wrongs and injuries.  Mattel

9   is therefore entitled to a permanent injunction restraining and enjoining Counter-

10  defendants, and each of them, as well as their agents, servants, and employees, and

11  all persons acting thereunder, in concert with, or on their behalf, from further using

12  in any manner Mattel's trade secrets.

13         114.  In addition, as a proximate result of Counter-defendants'

14  misconduct, Mattel has suffered actual damages, and Counter-defendants have been

15  unjustly enriched.

16         115.  The aforementioned acts of the Counter-defendants were willful

17  and malicious, including in that Counter-defendants misappropriated Mattel's trade

18  secrets with the deliberate intent to injure Mattel's business and improve their own.

19  Mattel is therefore entitled to enhanced damages.  Mattel is also entitled to

20  reasonable attorney's fees.

### Fifth Counterclaim

### Breach of Contract

### (Against Bryant)

24         116.  Mattel repeats and realleges each and every allegation set forth in

25  paragraphs 1 through 115, above, as though fully set forth at length.

26         117.  Pursuant to his Employment Agreement, Bryant agreed that he

27  would not, without Mattel's express written consent, engage in any employment or

28  business other than for Mattel or assist in any manner any business competitive

EXHIBIT _____ 3

1 | with the business or future business plans of Mattel during his employment with
2 | Mattel. Pursuant to his Mattel Employment Agreement, Bryant further assigned to
3 | Mattel all right, title and interest in "inventions," including without limitation
4 | "designs" and other works that he conceived, created or reduced to practice during
5 | his employment by Mattel. In addition, pursuant to the Conflict Questionnaire,
6 | Bryant certified that, other than as disclosed, he had not worked for any competitor
7 | of Mattel and had not engaged in any business venture or transaction involving a
8 | Mattel competitor that could be construed as a conflict of interest. Bryant further
9 | promised that he would notify his supervisor immediately of any change in his
10 | situation that would cause him to change any of the foregoing certifications or
11 | representations.

12 | 118. The Employment Agreement and the Conflict Questionnaire are
13 | valid, enforceable contracts, and Mattel has performed each and every term and
14 | condition of the Employment Agreement and Conflict Questionnaire required to be
15 | performed by Mattel.

16 | 119. Bryant materially breached the foregoing contracts with Mattel,
17 | in that, among other things, he secretly aided, assisted and worked for a Mattel
18 | competitor during his employment with Mattel without the express written consent
19 | of Mattel.

20 | 120. As a consequence of Bryant's breach, Mattel has suffered and
21 | will, in the future, continue to suffer damages in an amount to be proven at trial.
22 | Such damages include, without limitation, the amounts paid by the competitor to
23 | Bryant during his Mattel employment; the amounts paid by MGA to Bryant during
24 | his Mattel employment; the amount that Mattel paid Bryant during the time he
25 | wrongfully worked with MGA; the value of information and intellectual property
26 | owned by Mattel which Bryant provided to MGA; the value of the benefits that
27 | MGA obtained from Bryant during the time he was employed by Mattel; and the
28 |

EXHIBIT ___3___

PAGE ___96___

SECOND AMENDED ANSWER AND COUNTERCLAIMS

i4363.2

value of the benefits that MGA obtained from Bryant as a result of the work he performed for or with MGA during his Mattel employment.

121. Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies." Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

## Sixth Counterclaim
### Intentional Interference with Contract
### (Against MGA, Larian and Does 4 through 10)

122. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 121, above, as though fully set forth at length.

123. Valid agreements existed between Mattel and Bryant, Brawer, Machado, Trueba, Vargas, Brisbois and the Other Former Employees (collectively, the "Mattel Employees")

124. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees had a duty under their agreements not to work for or assist any competitor of Mattel, such as MGA. In addition, at all times mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had assigned to Mattel, and was obligated to disclose to Mattel all inventions, including designs and other works, created, conceived or reduced to practice during their employment with Mattel.

EXHIBIT 3
PAGE 97

1    125. Despite such knowledge, Counter-defendants MGA, Larian and

2 Does 4 through 10 intentionally and without justification solicited, induced and

3 encouraged the Mattel Employees to breach their contracts with Mattel.

4    126. As a direct and proximate result of Counter-defendants' efforts

5 and inducements, the Mattel Employees did breach their contracts with Mattel.

6    127. As a result of said breaches, Mattel has suffered damages and

7 will imminently suffer further damages, including the loss of its competitive

8 position and lost profits, in an amount to be proven at trial.

9    128. Counter-defendants performed the aforementioned conduct with

10 malice, fraud and oppression, and in conscious disregard of Mattel's rights.

11 Accordingly, Mattel is entitled to recover exemplary damages from Counter-

12 defendants in an amount to be determined at trial.

13        **Seventh Counterclaim**

14        **Breach of Fiduciary Duty**

15      **(Against Bryant and Machado)**

16    129. Mattel repeats and realleges each and every allegation set forth in

17 paragraphs 1 through 128, above, as though fully set forth at length.

18    130. Bryant and Machado held positions of trust and confidence with

19 Mattel. In their positions, Bryant and Machado had access to and were entrusted

20 with Mattel's proprietary and confidential information, supervised the work of

21 others, exercised discretion and worked independently in many of their job

22 assignments and duties. In their positions, Bryant and Machado also represented

23 Mattel in its dealings with third parties and, in actions in the course and scope of

24 their employment with Mattel, were agents of Mattel. They confirmed their

25 relationship of trust with Mattel in respective employee agreements. Bryant and

26 Machado thus owed Mattel a fiduciary duty that included, but was not limited to,

27 an obligation not to take any action that would be contrary to Mattel's best interests

28

EXHIBIT ___3___

PAGE ___98___

SECOND AMENDED ANSWER AND COUNTERCLAIMS

54363.2

1  or that would deprive Mattel of any opportunities, profit or advantage which Bryant

2  or Machado might bring to Mattel.

3       131. Bryant breached his fiduciary duty to Mattel in that, while

4  employed by Mattel, he secretly aided and assisted a competitor of Mattel,

5  including without limitation by entering into an agreement with a Mattel

6  competitor. As alleged above, Bryant also breached the aforementioned duty by

7  using Mattel property and resources for the benefit of, and to aid and assist, himself

8  personally and MGA.

9       132. Machado breached his fiduciary duty to Mattel, in that while

10  employed by Mattel, he secretly aided and assisted a competitor of Mattel by,

11  among other things, misappropriating Mattel trade secret and proprietary

12  information and providing said information to officers of MGA. Machado also

13  breached the aforementioned duty by using Mattel property and resources for the

14  benefit of, and to aid and assist, himself personally and MGA.

15       133. As a direct and proximate result of Counter-defendants' wrongful

16  conduct, Mattel has incurred damages in an amount to be determined at trial.

17       134. Counter-defendants acted with malice, fraud and oppression, and

18  in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an

19  award of exemplary damages against Counter-defendants in an amount to be

20  determined at trial.

21       135. Furthermore, Counter-defendants' conduct has caused, and unless

22  enjoined will continue to cause, irreparable injury to Mattel that cannot be

23  adequately compensated by money damages and for which Mattel has no adequate

24  remedy at law. Accordingly, Mattel is entitled to an order restraining further

25  breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants

26  from continuing to benefit from such breach.

27

28

EXHIBIT __3__

PAGE __99__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

## Eighth Counterclaim

### Aiding and Abetting Breach of Fiduciary Duty

### (Against MGA, Larian and Does 4 through 10)

136.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 135, above, as though fully set forth at length.

137.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant held a position of trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to secretly developing and designing Bratz while employed by Mattel and by secretly assisting Larian and MGA .

138.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) held positions of trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to taking confidential trade secret information from Mattel's premises and providing that information to a competitor.

139.   Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, encouraged, aided and abetted and gave substantial assistance to the Mattel Employees to breach their fiduciary duties to Mattel, knowing that their conduct would constitute breaches of their fiduciary duties to Mattel.

140.  As a direct and proximate result of Counter-defendants' efforts, the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has incurred damages in an amount to be proven at trial.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

EXHIBIT _____3_____

PAGE _____100_____

SECOND AMENDED ANSWER AND COUNTERCLAIMS

141.   In taking the aforesaid actions, MGA, Larian and Does 4 through 10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Ninth Counterclaim

### Breach of Duty of Loyalty

### (Against Bryant and Machado)

142.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 141, above, as though fully set forth at length.

143.   As employees of Mattel, Bryant and Machado owed a duty of undivided loyalty to Mattel.  Pursuant to this duty, Bryant and Machado could not compete with Mattel or assist a competitor of Mattel during their employment with Mattel.  Pursuant to this duty, Bryant and Machado were required to always give preference to Mattel's business over their own, similar interests during the course of their employment with Mattel.

144.   Bryant and Machado breached their duty of loyalty to Mattel in that, while employed by Mattel, they secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into agreements with a Mattel competitor.  As alleged above, they also breached the aforementioned duty by using Mattel property and resources for the benefit of, and to aid and assist, themselves personally and the competitor of Mattel.

145.   As a direct and proximate result of Counter-defendants' wrongful conduct, Mattel has incurred damages in an amount to be determined at trial.

146.   Counter-defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against Counter-defendants in an amount to be determined at trial.

EXHIBIT    3

PAGE    101

SECOND AMENDED ANSWER AND COUNTERCLAIMS

147.  Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining further breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-defendants from continuing to benefit from such breach.

148.  In breaching their duty of loyalty to Mattel, Bryant and Machado acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Tenth Counterclaim

### Aiding and Abetting Breach of Duty of Loyalty

### (Against MGA, Larian and Does 4 through 10)

149.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 148, above, as though fully set forth at length.

150.  MGA, Larian and Does 4 through 10 knew that Bryant, as an employee of Mattel, owed a duty of loyalty to his employer.  MGA, Larian and Does 4 through 10 knew that this duty included an obligation on the part of Bryant not to compete with Mattel or assist a competitor of Mattel during the term of his employment with Mattel.  MGA, Larian and Does 4 through 10 also knew that Bryant was required to give preference to Mattel's business over his own, similar interests or those of Mattel's competitors. or those of Mattel's competitors during the course of his employment with Mattel.

151.  MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) were employed by Mattel, and, as employees of Mattel, that they owed duties of loyalty to Mattel.  MGA, Larian and Does 4 through 10 knew that these duties included an obligation on the part of the Mattel

EXHIBIT ___3___

PAGE ___102___

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   Employees (excluding Bryant) not to compete with Mattel or assist a competitor of

2   Mattel during their Mattel employment.

3       152. Despite such knowledge, Counter-defendants MGA, Larian and

4   Does 4 through 10 intentionally and without justification solicited, encouraged,

5   aided and abetted and gave substantial assistance to the Mattel Employees to

6   breach their duties of loyalty to Mattel, knowing that their conduct would constitute

7   breaches of their duties of loyalty to Mattel.

8       153. As a further consequence of Counter-defendants' efforts, Mattel

9   has suffered injury and is entitled to compensatory damages in an amount to be

10   proven at trial.

11       154. In taking the aforesaid actions, MGA, Larian and Does 4 through

12   10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

13   rights. Accordingly, Mattel is entitled to recover exemplary damages from

14   Counter-defendants in an amount to be determined at trial.

15                  **Eleventh Counterclaim**

16                       **Conversion**

17            **(Against All Counter-defendants)**

18       155. Mattel repeats and realleges each and every allegation set forth in

19   paragraphs 1 through 154, above, as though fully set forth at length.

20       156. Counter-defendants wrongfully converted Mattel property and

21   resources by appropriating and using them for their own benefit and gain and for

22   the benefit and gain of others, without the permission of Mattel.

23       157. Mattel was entitled to, among other things, the exclusive right

24   and enjoyment in property and tangible materials owned by Mattel, including

25   without limitation such proper and materials that were created by Bryant while he

26   was a Mattel product designer. Such property was taken by Bryant from Mattel to

27   further his own interests and, in at least some instances, provided by Bryant to

28   Larian and MGA in furtherance of the interests of Bryant, Larian and MGA. **3**

14363.2

1        158.  In addition, Counter-defendants wrongfully converted Mattel's

2   property by removing the Trade Secret Materials in electronic and paper form from

3   Mattel's offices.  Counter-defendants did so without Mattel's permission and

4   continue to possess them.

5        159.  As a direct and proximate result of Counter-defendants' wrongful

6   conversion of Mattel property, including those relating to Bratz and Mattel's Trade

7   Secret Materials, Mattel has incurred damages.  Mattel, therefore, is entitled to

8   recover compensatory damages in an amount to be determined at trial.

9        160.   As a result of Counter-defendants' acts of conversion, Mattel is

10  entitled to damages in an amount sufficient to indemnify Mattel for the loss

11  suffered, which is not measured by the value of the property misappropriated, but

12  includes the lost profits that Mattel suffered as a result of the conversion or,

13  alternatively, the profits generated by the Counter-defendants that would not have

14  been generated but for the conversion.  Only such a measure of damages would

15  fully and fairly compensate Mattel for the injury it suffered due to Counter-

16  defendants' acts of conversion.

17       161.  Counter-defendants performed the aforementioned conduct with

18  malice, fraud and oppression, and in conscious disregard of Mattel's rights.

19  Accordingly, Mattel is entitled to recover exemplary damages from Counter-

20  defendants in an amount to be determined at trial.

21       162.  Furthermore, Counter-defendants' conduct has caused, and unless

22  enjoined will continue to cause, irreparable injury to Mattel that cannot be

23  adequately compensated by money damages and for which Mattel has no adequate

24  remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-

25  defendants from further conversion of Mattel property and resources and/or

26  restraining Counter-defendants from continuing to benefit from such conversion.

EXHIBIT  3

PAGE  109

SECOND AMENDED ANSWER AND COUNTERCLAIMS

154363.2

## Twelfth Counterclaim

### Unfair Competition

### (Common Law and *Cal. Bus. & Prof. Code* § 17200)

### (Against All Counter-defendants)

163. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 162, above, as though fully set forth at length.

164. Section 17200 of the California Business and Professions Code prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

165. By engaging in the foregoing conduct, Counter-defendants have, individually and in combination, engaged in unlawful, unfair and/or fraudulent acts of unfair competition in violation of both the common law of the state of California and *Cal. Bus. & Prof. Code* § 17200 *et seq.* Such conduct included, without limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code* § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a). Such conduct also included, without limitation, MGA's and Larian's disparagement of Mattel's products and misrepresentations as alleged above.

166. As a result of the aforementioned conduct, Mattel has suffered damages and will imminently suffer further damages, including but not limited to lost profits in an amount to be proven at trial. No adequate remedy at law exists for the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel is entitled to an injunction enjoining Counter-defendants' continued wrongful acts. Mattel is also entitled to recover compensatory and exemplary damages pursuant to the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

EXHIBIT 3

SECOND AMENDED ANSWER AND COUNTERCLAIMS

### Thirteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

167.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168.  As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169.  Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170.  Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

### Prayer for Relief

WHEREFORE, Mattel respectfully requests judgment:

1.    For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

EXHIBIT 3

PAGE 106

1  created or reduced to practice by Bryant during the term of his Mattel employment

2  and/or by any others then-employed by Mattel, as well as in all derivatives

3  prepared therefrom, and that Mattel is the true owner of the foregoing;

4        2.   For a declaration that any agreement between Bryant, on the one

5  hand, and MGA or any person or entity, on the other hand, in which Bryant

6  purported to assign any right, title or interests in any work that he conceived,

7  created or reduced to practice while a Mattel employee, including but not limited to

8  the Bratz designs, is void and of no effect;

9        3.   For an Order enjoining and restraining Counter-defendants, their

10  agents, servants and employees, and all persons in active concert or participation

11  with them, from further wrongful conduct, including without limitation from

12  imitating, copying, distributing, importing, displaying, preparing derivatives from

13  and otherwise infringing Mattel's copyright-protected works;

14        4.   For an Order, pursuant to 17 U.S.C. § 503(a) and other

15  applicable law, impounding all of Counter-defendants' products and materials that

16  infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles

17  by which copies of the works embodied in Mattel's copyrights may be reproduced

18  or otherwise infringed;

19        5.   For an Order mandating that Counter-defendants return to Mattel

20  all tangible items, documents, designs, diagrams, sketches or any other

21  memorialization of inventions created or reduced to practice during Bryant's

22  employment with Mattel as well as all Mattel property converted by Counter-

23  defendants;

24        6.   For an Order mandating specific performance by Bryant to

25  comply with and satisfy Bryant's contractual obligations to Mattel;

26        7.   That Mattel be awarded, and Counter-defendants be ordered to

27  disgorge, all payments, revenues, profits, monies and royalties and any other

28  benefits derived or obtained as a result of the conduct alleged herein, including

EXHIBIT 3

1  without limitation of all revenues and profits attributable to Counter-defendants'

2  infringement of Mattel's copyrights under 17 U.S.C. § 504;

3         8.   For an accounting of all profits, monies and/or royalties from the

4  exercise of ownership, use, distribution, sales and licensing of Bratz;

5         9.   For the imposition of a constructive trust over Bratz, including

6  without limitation registrations and applications for registrations relating thereto

7  made or filed by Counter-defendants and third parties, and all profits, monies,

8  royalties and any other benefits derived or obtained from Counter-defendant's

9  exercise of ownership, use, sale, distribution and licensing of Bratz;

10       10.   That Mattel recover its actual damages and lost profits;

11       11.   That Counter-defendants be ordered to pay exemplary damages

12  in a sum sufficient to punish and to make an example of them, and deter them and

13  others from similar wrongdoing;

14       12.   That Counter-defendants be ordered to pay treble its general and

15  special damages, plus interest, costs and attorney's fees incurred by reason of

16  Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

17       13.   That Counter-defendants be ordered to pay double damages due

18  to their willful and malicious misappropriation of Mattel's trade secrets with

19  deliberate intent to injure Mattel's business and improve its own;

20       14.   That Counter-defendants pay to Mattel the full cost of this action

21  and Mattel's attorneys' and investigators' fees; and

22

23

24

25

26

27

28

EXHIBIT __3__

PAGE __108__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1          15.   That Mattel have such other and further relief as the Court may

2  deem just and proper.

3

4  DATED:  July 12, 2007         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                    By _____

7                       John B. Quinn

8                       Attorneys for Defendant and Counter-claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                       EXHIBIT _____3_____

28                                       PAGE _____109_____

SECOND AMENDED ANSWER AND COUNTERCLAIMS

4363.2

1

## DEMAND FOR JURY TRIAL

2

3      Mattel, Inc. respectfully requests a jury trial on all issues triable

4  thereby.

5

6  DATED: July 12, 2007              QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
7

8                                    By_____

9                                       John B. Quinn
                                        Attorneys for Defendant and Counter-
10                                      claimant Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                         EXHIBIT ___3___

28                                         PAGE ___110___

54363.2
                                        -79-

# EXHIBIT 4

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**