1 QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2   (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5 Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6 Facsimile: (213) 443-3100

7 Attorneys for Mattel, Inc.

8

                    UNITED STATES DISTRICT COURT
9
                  CENTRAL DISTRICT OF CALIFORNIA
10
                          EASTERN DIVISION
11

12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx)

13 |            Plaintiff,          | Consolidated with
                                      Case No. CV 04-09059
                vs.                   Case No. CV 05-02727
14
15 | MATTEL, INC., a Delaware       | **DISCOVERY MATTER**
     corporation,
16 |                                | **[To Be Heard By Hon. Edward
              Defendant.             Infante (Ret.) Pursuant To Order Of
17 |                                | December 6, 2006]**

18 | AND CONSOLIDATED ACTIONS       | DECLARATION OF JON COREY IN
                                      SUPPORT OF MATTEL, INC.'S
19                                    NOTICE OF MOTION AND MOTION
                                      TO (1) ENFORCE THE COURT'S
20                                    AUGUST 13, 2007 ORDER AND TO
                                      COMPEL; AND (2) FOR AWARD OF
21                                    MONETARY SANCTIONS

22                                    Hearing Date:  February 8, 2008
                                      Time:          9:30 a.m.
23                                    Place:         Telephonic

24                                    **Phase 1**
                                      Discovery Cut-off:  January 28, 2008
25                                    Pre-trial Conference:  May 5, 2008
                                      Trial Date:         May 27, 2008.

26

27

28

## DECLARATION OF JON D. COREY

I, Jon D. Corey, declare as follows:

1.     I am a member of the bars of the State of California and the District of Columbia.  I am a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel").  I make this declaration in support of Mattel's Motion To (1) Enforce The Court's August 13, 2007 Order and To Compel; and (2) For Award Of Monetary Sanctions.  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.     Attached as Exhibit 1 is a true and correct copy of excerpts from the deposition transcript of Lisa Tonnu, taken on July 19, 2007.

3.     Attached as Exhibit 2 is a true and correct copy of excerpts from the deposition transcript of Lisa Tonnu, taken on September 25, 2007.

4.     A true and correct copy of Mattel's Second Notice of Deposition of MGA Entertainment, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6), dated February 1, 2007 ("Second Notice"), is attached hereto as Exhibit 3.

5.     Attached as Exhibit 4 is a true and correct copy of Mattel, Inc.'s First Set of Requests for Production of Documents and Things Re Claims for Unfair Competition, dated December 18, 2006.

6.     Attached as Exhibit 5 is a true and correct copy of MGA Entertainment, Inc.'s Opposition to Mattel, Inc's Motion to Compel Production of Documents by MGA Entertainment, Inc. and for Award of Monetary Sanctions, dated July 3, 2007.

7.     Attached as Exhibit 6 is a true and correct copy of the Court's Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by MGA; Denying Request for Monetary Sanctions, dated August 13, 2007.

07209/2361717.1

## Mattel's Meet and Confer Efforts

8.      A true and correct copy of a letter from me to Thomas Nolan and Carl Roth, dated November 2, 2007 (the "November Letter"), is attached hereto as Exhibit 7.  I never received a response to the November Letter.

9.      A true and correct copy of a letter from me to Thomas Nolan and Carl Roth, dated January 8, 2008, wherein I reiterate my requests from the November Letter, or alternatively, ask that MGA consider the letter a request to meet and confer pursuant to paragraph 5 of the Discovery Master Stipulation and Order, is attached as Exhibit 8.

10.     A true and correct copy of a letter from Andrew Temkin to me, dated January 16, 2008, is attached as Exhibit 9.

11.     A true and correct copy of my response letter to Mr. Temkin, dated January 17, 2008, is attached as Exhibit 10.  MGA did not respond to this letter, MGA did not produce the requested information or permit any inspection, and it never agreed to meet and confer as also requested.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 22, 2008, at Los Angeles, California.

_____
Jon D. Corey

07209/2361717.1

-2-

DECLARATION OF JON COREY

# EXHIBIT 1

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

|  |  |  |
|---|---|---|
| CARTER BRYANT, AN INDIVIDUAL, | ) | |
| PLAINTIFF, | ) | |
| V. | ) | NO.  CV 04-9040 SGL (RNBX) |
| MATTEL, INC., A DELAWARE CORPORATION, | ) | |
| DEFENDANT. | ) | |
| AND CONSOLIDATED ACTION(S). | ) | |

**C O N F I D E N T I A L**
**FOR ATTORNEYS EYES ONLY**

# DEPOSITION OF LISA TONNU

# VOLUME I

# JULY 19, 2007



REPORTED BY:
APRIL PRAXMARER
CSR NO.  12437
JOB NO. 07AE487-AC

COURT REPORTERS
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

| | | |
|---|---|---|
| 1 | Q    DO YOU KNOW IF THE PAPER CONTACT LIST THAT HE | 10:23:57 |
| 2 | TOOK HAS BEEN PRESERVED? | 10:24:11 |
| 3 | A    I DO NOT KNOW. | 10:24:12 |
| 4 | Q    YOU ALSO SPOKE TO A MS. KUEMMERLE? | 10:24:13 |
| 5 | A    YES. | 10:24:17 |
| 6 | Q    WHY -- WHY DID YOU SPEAK TO HER? | 10:24:17 |
| 7 | A    WHY DID I SPEAK TO HER? | 10:24:20 |
| 8 | Q    YEAH. | 10:24:21 |
| 9 | A    I SPOKE TO HER IN REGARDS TO ANY MATTEL | 10:24:22 |
| 10 | MATERIALS THAT MAY HAVE BEEN TAKEN. | 10:24:25 |
| 11 | Q    WHEN DID YOU SPEAK TO HER? | 10:24:27 |
| 12 | A    I SPOKE TO HER YESTERDAY. | 10:24:29 |
| 13 | Q    ACTUALLY, DID YOU ASK MR. BRAWER IF HE | 10:24:36 |
| 14 | TOOK -- IF HE TOOK ANY ELECTRONIC FILES? | 10:24:39 |
| 15 | A    I ASKED HIM WHAT DOCUMENTATIONS OR ANY -- | 10:24:43 |
| 16 | ANYTHING THAT HE'S TOOK FROM MATTEL, AND HE TOLD ME HE | 10:24:46 |
| 17 | ONLY TOOK HIS PERSONAL BELONGINGS AND A CONTACT LIST. | 10:24:50 |
| 18 | Q    YOU SPOKE WITH MS. KUEMMERLE YESTERDAY? | 10:24:54 |
| 19 | A    YES. | 10:24:57 |
| 20 | Q    HOW LONG DID THAT CONVERSATION TAKE? | 10:24:58 |
| 21 | A    APPROXIMATELY TEN MINUTES. | 10:25:00 |
| 22 | Q    WAS IT A FACE-TO-FACE CONVERSATION? | 10:25:04 |
| 23 | A    NO. | 10:25:11 |
| 24 | Q    WHERE IS MS. KUEMMERLE LOCATED? | 10:25:12 |
| 25 | A    SHE'S LOCATED IN MEXICO. | 10:25:14 |

| | | |
|---|---|---|
| 1 | Q    WHAT'S -- WHAT'S HER TITLE THERE? | 10:25:20 |
| 2 | A    HER TITLE IS VICE PRESIDENT OF MEXICO AND | 10:25:25 |
| 3 | LATIN AMERICA SALES. | 10:25:31 |
| 4 | Q    HOW LONG HAS SHE HAD THAT POSITION? | 10:25:33 |
| 5 | A    I DON'T KNOW. | 10:25:41 |
| 6 | Q    SINCE BEFORE YOU STARTED WITH THE COMPANY? | 10:25:42 |
| 7 | A    YES. | 10:25:45 |
| 8 | Q    IS SHE BASED IN MEXICO? | 10:25:46 |
| 9 | A    YES. | 10:25:53 |
| 10 | Q    IN MEXICO CITY? | 10:25:53 |
| 11 | A    IN OUR MEXICO CITY OFFICE. | 10:25:54 |
| 12 | Q    AND WHY DID YOU TALK TO MS. KUEMMERLE? | 10:25:58 |
| 13 | MR. JENAL:  OBJECTION.  ASKED AND ANSWERED. | 10:26:09 |
| 14 | BY MR. COREY: | 10:26:13 |
| 15 | Q    YOU CAN GO AHEAD AND ANSWER THE QUESTION. | 10:26:13 |
| 16 | UNLESS -- UNLESS YOUR COUNSEL INSTRUCTS YOU NOT TO | 10:26:15 |
| 17 | ANSWER -- | 10:26:18 |
| 18 | A    OKAY. | 10:26:19 |
| 19 | Q    -- THEN ALL HE'S DOING IS MAKING A RECORD | 10:26:19 |
| 20 | BECAUSE HE THINKS MY QUESTION IS IMPROPER OR ODD OR | 10:26:21 |
| 21 | SOMETHING LIKE THAT.  OR MAYBE HE DOESN'T UNDERSTAND | 10:26:27 |
| 22 | IT. | 10:26:29 |
| 23 | BUT UNLESS HE INSTRUCTS YOU NOT TO ANSWER, | 10:26:29 |
| 24 | YOU SHOULD GO AHEAD AND ANSWER THE QUESTION. | 10:26:32 |
| 25 | A    OKAY.  AS I DISCUSSED EARLIER, I WAS -- I | 10:26:33 |

25

| | | |
|---|---|---|
| 1 | ASKED HER ABOUT HER UNDER -- HER KNOWLEDGE OF ANY | 10:26:35 |
| 2 | DOCUMENTATION THAT MAY HAVE BEEN A MATTEL | 10:26:37 |
| 3 | DOCUMENTATION. | 10:26:41 |
| 4 | Q    ANY -- ANY DOCUMENTATION THAT SHE MAY HAVE | 10:26:42 |
| 5 | THAT MAY BE MATTEL DOCUMENTATION? | 10:26:46 |
| 6 | A    ANY -- ANY KNOWLEDGE THAT SHE MAY HAVE ABOUT | 10:26:48 |
| 7 | ANY DOCUMENTATION THAT WAS MATTEL DOCUMENTATION THAT'S | 10:26:52 |
| 8 | IN THE POSSESSION OF MGA MEXICO. | 10:26:56 |
| 9 | Q    AND WHAT DID SHE TELL YOU? | 10:26:58 |
| 10 | A    SHE TOLD ME OF AN INCIDENT IN MEXICO WHERE | 10:26:59 |
| 11 | THE FEDERAL AUTHORITIES CAME WITH THE SEARCH WARRANT | 10:27:02 |
| 12 | AND LOCATED ONE C.D. AND SEVERAL LOOSE PAPER DOCUMENTS. | 10:27:06 |
| 13 | Q    DID SHE TELL YOU WHAT THOSE LOOSE PAPER | 10:27:10 |
| 14 | DOCUMENTS WERE? | 10:27:27 |
| 15 | A    NO. | 10:27:27 |
| 16 | Q    DID SHE TELL YOU WHAT WAS ON THE C.D.? | 10:27:29 |
| 17 | A    SHE DIDN'T TELL ME SPECIFICALLY WHAT WAS ON | 10:27:31 |
| 18 | VERSUS THE OTHER.  SHE DID INDICATE -- TELL ME -- STATE | 10:27:35 |
| 19 | TO ME THAT THE MATERIAL WAS MARKETING RELATED. | 10:27:41 |
| 20 | Q    DID SHE TELL YOU WHERE THE MATERIALS CAME | 10:27:44 |
| 21 | FROM? | 10:27:51 |
| 22 | A    NO. | 10:27:51 |
| 23 | Q    WHAT -- WHAT DID -- WHAT DID SHE TELL YOU? | 10:27:52 |
| 24 | A    SHE TOLD ME THAT THE MATERIALS WERE LOCATED | 10:27:57 |
| 25 | IN THE OFFICES OF MGA MEXICO. | 10:28:02 |

26

| | | |
|---|---|---|
| 1 | Q    DID SHE TELL YOU WHOSE OFFICE IN PARTICULAR | 10:28:05 |
| 2 | OR OFFICES? | 10:28:09 |
| 3 | A    NO. | 10:28:09 |
| 4 | Q    WHAT DID SHE TELL YOU ABOUT THE -- THE RAID? | 10:28:10 |
| 5 | A    THE RAID? | 10:28:18 |
| 6 | Q    IS THAT WHAT YOU CALLED IT? | 10:28:21 |
| 7 | A    I DIDN'T CALL IT A "RAID." | 10:28:22 |
| 8 | Q    WHAT DID YOU CALL IT? | 10:28:23 |
| 9 | A    A SEARCH WARRANT. | 10:28:24 |
| 10 | Q    A SEARCH WARRANT. | 10:28:26 |
| 11 | WHAT DID SHE TELL YOU ABOUT THE EXECUTION OF | 10:28:26 |
| 12 | THE SEARCH WARRANT? | 10:28:29 |
| 13 | A    SHE SAID IT WAS A SEARCH WARRANT MADE BY THE | 10:28:30 |
| 14 | FEDERAL AUTHORITIES, AND THE SEARCH WARRANT WAS ON | 10:28:34 |
| 15 | BEHALF OF MATTEL AND THE DOCUMENTS AND THE C.D. THAT | 10:28:38 |
| 16 | WAS LOCATED. | 10:28:47 |
| 17 | Q    WHAT ELSE DID MS. KUEMMERLE TELL YOU? | 10:28:48 |
| 18 | A    SHE MENTIONED SOME EX-MATTEL EMPLOYEES THAT | 10:28:51 |
| 19 | WERE IMPLICATED. | 10:28:59 |
| 20 | Q    DID SHE TELL YOU WHO THEY WERE? | 10:29:00 |
| 21 | A    YES. | 10:29:03 |
| 22 | Q    WHO WERE THEY? | 10:29:03 |
| 23 | A    GUSTAVO MACHADO, MARIANA TRUEBA AND | 10:29:05 |
| 24 | PABLO VARGAS. | 10:29:15 |
| 25 | Q    DID SHE TELL YOU HOW THEY WERE IMPLICATED OR | 10:29:17 |

27

| | | |
|---|---|---|
| 1 | CLEAR -- CLEAR THINGS UP. | 04:51:23 |
| 2 | MR. COREY:  WELL, I MEAN, I'LL ASK HER IF | 04:51:24 |
| 3 | SHE'D LIKE TO CHANGE HER ANSWER TO ANY OF THE QUESTIONS | 04:51:26 |
| 4 | THAT WERE ASKED JUST BEFORE THE BREAK. | 04:51:30 |
| 5 | MR. JENAL:  FAIR ENOUGH. | 04:51:32 |
| 6 | THE WITNESS:  I BELIEVE YOUR LAST QUESTION | 04:51:33 |
| 7 | WAS IN REGARDS TO IF MGA HAS -- | 04:51:35 |
| 8 | MR. JENAL:  LET'S MAKE IT A LITTLE EASIER. | 04:51:38 |
| 9 | COULD YOU JUST READ BACK THE LAST QUESTION | 04:51:38 |
| 10 | AND ANSWER WE HAD BEFORE THE BREAK. | 04:51:40 |
| 11 | MR. COREY:  WELL, I ACTUALLY THINK IT'S | 04:51:42 |
| 12 | EASIER IF SHE -- SHE DOES IT THIS WAY BECAUSE THEN SHE | 04:51:44 |
| 13 | CAN GET ON THE RECORD WHAT HER UNDERSTANDING OF THE | 04:51:46 |
| 14 | QUESTION WAS. | 04:51:46 |
| 15 | MR. JENAL:  DO YOU NEED TO HEAR THE QUESTION | 04:51:46 |
| 16 | READ BACK? | 04:51:48 |
| 17 | THE WITNESS:  PLEASE. | 04:51:49 |
| 18 | (RECORD READ.) | 04:52:21 |
| 19 | THE WITNESS:  AND TO CLARIFY ON THAT, THAT IN | 04:52:21 |
| 20 | THE THREE INCIDENTS THAT WE DISCUSSED EARLIER, WHERE | 04:52:25 |
| 21 | THEY WERE EX-MATTEL EMPLOYEES THAT HAD CERTAIN | 04:52:29 |
| 22 | DOCUMENTATION, THAT THOSE DOCUMENTATIONS WERE NOT | 04:52:34 |
| 23 | DESTROYED BY MGA. | 04:52:37 |
| 24 | FOR EXAMPLE, RON BRAWER, THE CONTACT LIST, | 04:52:39 |
| 25 | THE CONTACT LIST STILL IS IN EXISTENCE.   FOR | 04:52:42 |

| | | |
|---|---|---|
| 1 | JANINE BRISBOIS, WHAT WE DISCUSSED EARLIER, THE | 04:52:48 |
| 2 | THUMBDRIVE, IT'S BEING HELD BY A THIRD PARTY, K.P.M.G. | 04:52:52 |
| 3 | AND IN THE INSTANCE IN MEXICO, I BELIEVE THAT | 04:52:56 |
| 4 | THE FEDERAL AUTHORITIES HAVE A COPY.  AND THEN THE -- | 04:53:01 |
| 5 | THERE'S ANOTHER COPY THAT'S BEING HELD BY LEGAL | 04:53:06 |
| 6 | COUNSEL. | 04:53:10 |
| 7 | BY MR. COREY: | 04:53:11 |
| 8 | Q    THERE'S A COPY OF THE MATERIALS -- JUST LET | 04:53:11 |
| 9 | ME MAKE SURE I'M CLEAR. | 04:53:21 |
| 10 | THERE'S A COPY OF THE MATERIALS THAT WERE | 04:53:22 |
| 11 | COLLECTED AS A RESULT OF THE SEARCH WARRANT THAT ARE | 04:53:26 |
| 12 | BEING HELD BY LEGAL COUNSEL? | 04:53:30 |
| 13 | A    YES. | 04:53:32 |
| 14 | Q    EXCUSE ME.  LET ME BE CLEARER. | 04:53:32 |
| 15 | A COPY OF THE DOCUMENTS THAT WERE COLLECTED | 04:53:36 |
| 16 | BY THE SEARCH WARRANT EXECUTED BY THE MEXICAN OFFICIALS | 04:53:39 |
| 17 | IN MEXICO THAT ARE BEING HELD BY COUNSEL? | 04:53:43 |
| 18 | A    CORRECT. | 04:53:46 |
| 19 | Q    IS THAT COUNSEL IN THE UNITED STATES OR IS | 04:53:47 |
| 20 | THAT COUNSEL IN MEXICO? | 04:53:49 |
| 21 | A    I BELIEVE THAT COUNSEL IS IN THE UNITED | 04:53:51 |
| 22 | STATES. | 04:53:53 |
| 23 | Q    IS IT MR. JENAL'S FIRM? | 04:53:53 |
| 24 | A    I BELIEVE SO. | 04:53:57 |
| 25 | Q    SO LET ME ASK YOU THIS QUESTION:  SO THE ONLY | 04:53:58 |

198

```
STATE OF CALIFORNIA      )
                         ) SS.
COUNTY OF LOS ANGELES    )
```

I, APRIL CRUZ CACULITAN, CSR 12437, IN AND FOR THE STATE OF CALIFORNIA, DO HEREBY CERTIFY;

THAT, PRIOR TO BEING EXAMINED, THE DEPONENT NAMED IN THE FOREGOING DEPOSITION WAS BY ME DULY SWORN TO TESTIFY THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH;

THAT SAID DEPOSITION WAS TAKEN DOWN BY ME IN SHORTHAND AT THE TIME AND PLACE THEREIN NAMED, AND THEREAFTER REDUCED TO TYPEWRITING UNDER MY DIRECTION, AND THE SAME IS A TRUE, CORRECT AND COMPLETE TRANSCRIPT OF SAID PROCEEDINGS;

I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE EVENT OF THE ACTION.

WITNESS MY HAND THIS _____2_____ DAY OF _August_____, 2007.


_____
CERTIFIED SHORTHAND
REPORTER FOR THE
STATE OF CALIFORNIA

# EXHIBIT 2

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
                                 )
        PLAINTIFF,       )
                                 )
     V.                   )    NO. CV 04-9040 SGL (RNBX)
                                 )
MATTEL, INC., A DELAWARE    )
CORPORATION,            )
                                 )
      DEFENDANTS.     )
                                 )
                                 )
AND CONSOLIDATED ACTION (S).    )

C O N F I D E N T I A L

ATTORNEYS' EYES ONLY

DEPOSITION OF LISA TONNU

VOLUME III

SEPTEMBER 25, 2007



COURT REPORTERS

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

REPORTED BY:
J'ANA SIEGERS
CSR NO. 10845
JOB NO. 07AE615-JS

| | | |
|---|---|---|
| 03:06:22 | 1 | BY MR. COREY: |
| 03:06:22 | 2 | Q.   AND NOW I'M SPECIFICALLY TALKING ABOUT |
| 03:06:24 | 3 | MGA'S POSSESSION OF DOCUMENTS THAT ORIGINATED AT |
| 03:06:26 | 4 | MATTEL.  I'M TRYING TO BE MUCH MORE SPECIFIC NOW. |
| 03:06:30 | 5 | MS. MORGENTHALER LEVER:   OBJECTION.   VAGUE |
| 03:06:31 | 6 | AND AMBIGUOUS.  CALLS FOR SPECULATION. |
| 03:06:35 | 7 | THE DEPONENT:   I WAS ADVISED THAT A CD, I |
| 03:06:39 | 8 | BELIEVE, RELATED TO MY DISCUSSION WITH MS. KUEMMERLE |
| 03:06:43 | 9 | WAS GIVEN TO YOUR FIRM. |
| 03:06:54 | 10 | BY MR. COREY: |
| 03:06:55 | 11 | Q.   AND DO YOU KNOW WHERE THAT -- DO YOU KNOW |
| 03:06:57 | 12 | WHERE THAT CD CAME FROM? |
| 03:07:01 | 13 | MS. MORGENTHALER LEVER:   OBJECTION.   CALLS |
| 03:07:06 | 14 | FOR ATTORNEY-CLIENT COMMUNICATIONS.  VAGUE AND |
| 03:07:08 | 15 | AMBIGUOUS.  CALLS FOR SPECULATION. |
| 03:07:10 | 16 | YOU CAN ANSWER. |
| 03:07:11 | 17 | THE DEPONENT:   I BELIEVE IT CAME FROM |
| 03:07:12 | 18 | O'MELVENY. |
| 03:07:16 | 19 | BY MR. COREY: |
| 03:07:18 | 20 | Q.   ACTUALLY, I SHOULD HAVE ASKED A COUPLE |
| 03:07:20 | 21 | QUESTIONS BEFORE. |
| 03:07:21 | 22 | THE CD THAT YOU'RE REFERRING TO IS A CD |
| 03:07:26 | 23 | CONTAINING DOCUMENTS THAT WERE OBTAINED WHEN MEXICAN |
| 03:07:31 | 24 | OFFICIALS EXECUTED A SEARCH WARRANT ON MGA MEXICO'S |
| 03:07:35 | 25 | OFFICES?  IS THAT WHAT YOU'RE REFERRING TO? |

664

A & E Court Reporters        (213) 955-0070        Fax: (213) 955-0077

| 03:07:37 | 1 | A.   I BELIEVE SO. |
|---|---|---|

03:07:37  1       A.   I BELIEVE SO.

03:07:37  2       Q.   OKAY.  AND WERE THERE DOCUMENTS THAT WERE

03:07:41  3  ALSO DISCOVERED WITH THAT -- WHEN THAT SEARCH

03:07:44  4  WARRANT WAS EXECUTED?

03:07:45  5       MS. MORGENTHALER LEVER:  OBJECTION.  VAGUE

03:07:47  6  AND AMBIGUOUS.  ASKED AND ANSWERED.  MISSTATES THE

03:07:49  7  WITNESS'S TESTIMONY.

03:07:52  8       THE DEPONENT:  I BELIEVE, IF I RECALL, IT

03:07:54  9  WAS A CD AND MAYBE SOME LOOSE DOCUMENTS.

03:07:58  10  BY MR. COREY:

03:07:59  11      Q.   HAVE YOU SEEN ANY OF THOSE DOCUMENTS?

03:08:02  12      MS. MORGENTHALER LEVER:  VAGUE AND

03:08:02  13  AMBIGUOUS.

03:08:02  14      WHICH DOCUMENTS?

03:08:06  15      MR. COREY:  THE LOOSE DOCUMENTS.

03:08:08  16      THE DEPONENT:  NO.

03:08:08  17  BY MR. COREY:

03:08:08  18      Q.   HAVE YOU SEEN ANY DOCUMENTS THAT WERE ON

03:08:09  19  THE CD?

03:08:10  20      A.   NO.

03:08:13  21      Q.   WHO GAVE THE CD TO O'MELVENY & MEYERS?

03:08:20  22      MS. MORGENTHALER LEVER:  OBJECTION.  ASKED

03:08:21  23  AND ANSWERED.  CALLS FOR SPECULATION.  LACK OF

03:08:22  24  FOUNDATION.

03:08:27  25      THE DEPONENT:  I DON'T RECALL EXACTLY.  IT

665

| | | |
|---|---|---|
| 03:08:29 | 1 | MAY HAVE BEEN MS. KUEMMERLE GAVE IT -- SENT IT TO |
| 03:08:32 | 2 | THE ATTORNEYS AFTER I -- I CAN'T RECALL. |
| 03:08:37 | 3 | BY MR. COREY: |
| 03:08:38 | 4 | Q.   DO YOU KNOW WHEN -- |
| 03:08:38 | 5 | MS. MORGENTHALER LEVER:   I'LL JUST CAUTION |
| 03:08:39 | 6 | THE WITNESS NOT TO GUESS OR SPECULATE. |
| 03:08:42 | 7 | BY MR. COREY: |
| 03:08:43 | 8 | Q.   DO YOU KNOW WHEN THAT WAS SENT TO |
| 03:08:45 | 9 | O'MELVENY & MEYERS AND -- DO YOU KNOW WHEN THE CD |
| 03:08:49 | 10 | AND THE LOOSE DOCUMENTS -- STRIKE THAT. |
| 03:08:51 | 11 | WERE BOTH THE CD AND THE LOOSE DOCUMENTS |
| 03:08:54 | 12 | GIVEN TO O'MELVENY & MYERS? |
| 03:08:57 | 13 | MS. MORGENTHALER LEVER:   IF YOU KNOW. |
| 03:08:57 | 14 | CALLS FOR SPECULATION.   LACK OF |
| 03:08:58 | 15 | FOUNDATION. |
| 03:09:03 | 16 | THE DEPONENT:   I DON'T RECALL. |
| 03:09:03 | 17 | BY MR. COREY: |
| 03:09:03 | 18 | Q.   BUT THE CD WAS? |
| 03:09:06 | 19 | A.   I BELIEVE SO, BUT I CAN'T REALLY RECALL |
| 03:09:08 | 20 | FOR SURE. |
| 03:09:10 | 21 | Q.   DO YOU KNOW WHEN THE CD WAS GIVEN TO |
| 03:09:12 | 22 | O'MELVENY & MEYERS? |
| 03:09:20 | 23 | A.   I DON'T RECALL. |
| 03:09:20 | 24 | Q.   DO YOU KNOW HOW MS. KUEMMERLE OBTAINED A |
| 03:09:20 | 25 | COPY OF THE CD? |

666

| | | |
|---|---|---|
| 03:09:21 | 1 | MS. MORGENTHALER LEVER:  OBJECTION.  VAGUE |
| 03:09:23 | 2 | AND AMBIGUOUS AS TO THE TERM "CD." |
| 03:09:30 | 3 | BY MR. COREY: |
| 03:09:30 | 4 | Q.   THE CD THAT WE'VE BEEN TALKING ABOUT. |
| 03:09:35 | 5 | MS. MORGENTHALER LEVER:  CALLS FOR |
| 03:09:35 | 6 | SPECULATION.  LACK OF FOUNDATION. |
| 03:09:41 | 7 | THE DEPONENT:  I CAN'T RECALL EXACTLY. |
| 03:09:43 | 8 | BY MR. COREY: |
| 03:09:43 | 9 | Q.   WHAT'S YOUR BEST ESTIMATE? |
| 03:09:47 | 10 | A.   WITHIN A TIME FRAME?  WAS THAT YOUR |
| 03:09:49 | 11 | QUESTION, ABOUT A TIME FRAME? |
| 03:09:51 | 12 | Q.   YES, WITHIN A TIME FRAME. |
| 03:09:53 | 13 | A.   I JUST CAN'T RECALL. |
| 03:09:54 | 14 | Q.   DO YOU KNOW WHETHER IT WAS LAST MONTH OR |
| 03:09:56 | 15 | TWO YEARS AGO? |
| 03:09:59 | 16 | MS. MORGENTHALER LEVER:  OBJECTION.  CALLS |
| 03:09:59 | 17 | FOR SPECULATION.  LACK OF FOUNDATION.  VAGUE AND |
| 03:10:04 | 18 | AMBIGUOUS. |
| 03:10:08 | 19 | THE DEPONENT:  I CAN'T RECALL. |
| 03:10:10 | 20 | BY MR. COREY: |
| 03:10:14 | 21 | Q.   DO YOU KNOW HOW MS. KUEMMERLE OBTAINED A |
| 03:10:16 | 22 | COPY OF THE CD? |
| 03:10:17 | 23 | MS. MORGENTHALER LEVER:  OBJECTION.  CALLS |
| 03:10:17 | 24 | FOR SPECULATION.  LACK OF FOUNDATION.  ASSUMES... |
| 03:10:35 | 25 | THE DEPONENT:  I CAN'T RECALL. |

667

| | | |
|---|---|---|
| 03:10:35 | 1 | BY MR. COREY: |
| 03:10:36 | 2 | Q.   DID YOU KNOW AT ONE TIME AND YOU CAN'T |
| 03:10:37 | 3 | RECALL, OR DO YOU JUST NOT KNOW? |
| 03:10:39 | 4 | A.   I REMEMBERED THAT ONE TIME AS PART OF MY |
| 03:10:43 | 5 | PREPOSITION (SIC) FOR THE FIRST DEPOSITION, BUT |
| 03:10:44 | 6 | SINCE THEN, I CAN'T RECALL. |
| 03:10:49 | 7 | Q.   DID SHE -- WAS SHE GIVEN A COPY OF THE CD |
| 03:10:51 | 8 | BY COUNSEL? |
| 03:10:53 | 9 | MS. MORGENTHALER LEVER:   OBJECTION.   VAGUE |
| 03:10:54 | 10 | AND AMBIGUOUS.   CALLS FOR SPECULATION.   LACK OF |
| 03:10:58 | 11 | FOUNDATION.   ASKED AND ANSWERED. |
| 03:11:02 | 12 | THE DEPONENT:   I CAN'T RECALL. |
| 03:11:03 | 13 | BY MR. COREY: |
| 03:11:03 | 14 | Q.   DO YOU KNOW WHETHER SHE WAS GIVEN A COPY |
| 03:11:05 | 15 | OF THE CD BY MR. MACHADO? |
| 03:11:08 | 16 | MS. MORGENTHALER LEVER:   OBJECTION.   VAGUE |
| 03:11:08 | 17 | AND AMBIGUOUS.   ASKED AND ANSWERED.   LACK OF |
| 03:11:10 | 18 | FOUNDATION.   CALLS FOR SPECULATION. |
| 03:11:13 | 19 | THE DEPONENT:   I CAN'T RECALL. |
| 03:11:14 | 20 | BY MR. COREY: |
| 03:11:14 | 21 | Q.   DO YOU KNOW WHO CREATED THE CD? |
| 03:11:17 | 22 | MS. MORGENTHALER LEVER:   SAME OBJECTIONS. |
| 03:11:18 | 23 | THE DEPONENT:   NO. |
| 03:11:18 | 24 | BY MR. COREY: |
| 03:11:27 | 25 | Q.   ARE YOU SURE THAT IT WAS MS. KUEMMERLE |

668

| 03:11:30 | 1 | THAT GAVE IT TO O'MELVENY & MEYERS? |
|---|---|---|
| 03:11:32 | 2 | **MS. MORGENTHALER LEVER:**   OBJECTION. |
| 03:11:33 | 3 | MISSTATES THE WITNESS'S PRIOR TESTIMONY.   CALLS FOR |
| 03:11:35 | 4 | SPECULATION.   ARGUMENTATIVE.   OBJECTION AS TO FORM. |
| 03:11:43 | 5 | **THE DEPONENT:**   NO. |
| 03:11:50 | 6 | BY MR. COREY: |
| 03:11:50 | 7 | Q.   DO YOU KNOW WHETHER IT WAS SENT TO |
| 03:11:51 | 8 | O'MELVENY & MEYERS FROM MEXICO OR FROM THE VAN NUYS |
| 03:11:56 | 9 | CAMPUS? |
| 03:11:59 | 10 | **MS. MORGENTHALER LEVER:**   OBJECTION.   VAGUE |
| 03:12:02 | 11 | AND AMBIGUOUS.   CALLS FOR SPECULATION.   LACK OF |
| 03:12:07 | 12 | FOUNDATION. |
| 03:12:07 | 13 | **THE DEPONENT:**   I BELIEVE IT WAS MEXICO. |
| 03:12:09 | 14 | BY MR. COREY: |
| 03:12:09 | 15 | Q.   IT WAS SENT FROM MEXICO? |
| 03:12:11 | 16 | A.   I BELIEVE SO. |
| 03:12:25 | 17 | Q.   YOU BELIEVE THAT IT WAS SENT FROM MEXICO, |
| 03:12:26 | 18 | BUT YOU'RE NOT SURE WHETHER MS. KUEMMERLE OR SOMEONE |
| 03:12:29 | 19 | ELSE IN MEXICO SENT IT? |
| 03:12:32 | 20 | A.   I CAN'T REMEMBER FOR SURE WHETHER OR NOT |
| 03:12:33 | 21 | IT WAS MS. KUEMMERLE. |
| 03:12:36 | 22 | Q.   ARE YOU SURE THAT IT WAS SENT FROM MEXICO? |
| 03:12:39 | 23 | A.   I BELIEVE SO. |
| 03:12:42 | 24 | Q.   DID YOU ASK MS. KUEMMERLE -- STRIKE THAT. |
| 03:12:45 | 25 | DO YOU KNOW WHETHER ANY OF THE DOCUMENTS |

669

1  DEPONENT.  [FED. R. CIV. P. 30(F)(1)].

2      BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

3  THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

4  REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

5  PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

6  ARE APPENDED HERETO.  [FED. R. CIV. P. 30(E)].

7

8

9  DATED:  OCTOBER 8, 2007.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

732

# EXHIBIT 3

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)<br><br>Discovery Cut-off: None Set<br>Pre-trial Conference: None Set<br>Trial Date: None Set |

2-1

07209/2048031.1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 15, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.  Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped.

DATED:  February 1, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____
Michael T. Zeller
Attorneys for Mattel, Inc.

07209/2048031.

**Exhibit A**

## EXHIBIT A

1.     "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.     "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.     "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also, previously or subsequently called) and any product or doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product or doll or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each EMBODIMENT of such doll or any portion thereof.  As used herein, "product or doll or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

4.     "DESIGN" or "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the

foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.    "EMBODIMENT" means any representation, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

6.    The DRAWINGS means those documents produced as Bates Nos. MGA000053-57,    MGA000392-395,    MGA000435-439,    MGA000455-481 MGA004606,   MGA004608,   MGA004640,   MGA005065,   MGA006423-6426, MGA006432-6436, MGA006438-06440, MGA006442-6467, and SL00016-45.

7.    "BASED ON" means copied or reproduced from, substantially similar to, based on or derived from in any manner, whether in whole or in part.

8.    "CREATED" means produced, prepared, created, authored, conceived of or reduced to practice, whether in whole or in part and whether alone or jointly with others.

9.    "IDENTIFY" or "IDENTITY" means the following:

(a)    With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)    With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present

-3-

07209/2048031.

or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)     With reference to an EMBODIMENT, means the IDENTITY of the individual author(s) or creator(s) of the EMBODIMENT as well as of each other individual who contributed in any manner to the EMBODIMENT; the form, material and medium of the EMBODIMENT (*e.g.*, preliminary three-dimensional resin sculpture, final three-dimensional wax sculpture, digitized file of final three-dimensional wax sculpture, two-dimensional design drawing on paper); each title or name of the EMBODIMENT; the start and end date(s) of the EMBODIMENT's creation or preparation; and the current location of the EMBODIMENT.

10.     "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

11.     "ACTION" shall mean this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

12.     "DIGITAL INFORMATION" shall mean any information created or stored digitally, including but not limited to electronically, magnetically or optically.

13.     "SYSTEM" or "SYSTEMS" shall mean any computer or network of computers or other network devices that allow a two or more computers to share information and equipment, including but not limited to local area networks, wide area networks, storage area networks, client-server networks or peer-to-peer networks. The

-4-

use of the term "SYSTEM" or "SYSTEMS" shall also include the brand, model number, technical specifications, and capacities of the computers who are part of each such SYSTEM.

14.     "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

15.     "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

16.     "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and

directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

17.     The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

## Topics of Examination

1.     The origin, conception, creation, design, sculpting, development, engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether such was released in any form to the public), including without limitation the timing thereof, the IDENTITY of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved therein, and the nature, extent and time period(s) of each such PERSON's involvement.

2.     The circumstances under which BRATZ or any BRATZ DESIGN first came to YOUR attention, including without limitation the timing, method and manner thereof and the IDENTITY of each PERSON with knowledge thereof.

3.     The identity of each doll, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

4.     To the extent not covered by Topic 3, each EMBODIMENT of any doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

5.     The work, activities and/or services that BRYANT performed for or with YOU or on YOUR behalf prior to June 30, 2001.

6. The origin, conception and creation of DESIGNS that BRYANT CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever claimed to have, any right, title or interest (whether in whole or in part).

7. The identity of, and the design, development, sculpting, development, engineering, rotocasting, modeling, prototyping and first sale of, any doll, product, work or item that has been produced, developed, manufactured, licensed, sold or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN referenced in Topic 6.

8. Each EMBODIMENT of BRATZ that was CREATED prior to June 30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was CREATED prior to June 30, 2001.

9. The DRAWINGS, including without limitation the authorship, creation, dissemination and use thereof and the source, meaning, authenticity and timing of any dates thereon.

10. The IDENTITY of each vendor or third party who performed or contributed, or who was considered, solicited, requested, proposed or contemplated by YOU or BRYANT to perform or contribute, any activities, work or services in connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR COMMUNICATIONS therewith, and the nature, extent and timing of such activities, work or services.

11. The exhibition, or proposed, offered, contemplated or requested exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise discussed with or communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that REFER OR RELATE thereto.

12. The actual, proposed, requested or contemplated manufacture, fabrication or tooling (including the production of molds) of BRATZ, including without

1 | limitation the timing thereof and the IDENTITY of each manufacturer and potential
2 | manufacturer used, proposed or considered.

3 | 13. COMMUNICATIONS prior to June 30, 2001 between YOU and
4 | any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or
5 | potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE
6 | TO BRATZ or any BRATZ DESIGN.

7 | 14. When and where BRATZ was first manufactured, shipped,
8 | distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

9 | 15. The licensing, including without limitation the proposed or
10 | requested licensing, of BRATZ or any BRATZ DESIGN prior to December 31, 2001,
11 | including without limitation the timing thereof, the IDENTITY of each such licensee or
12 | proposed or requested licensee and the product(s) or proposed product(s) involved.

13 | 16. COMMUNICATIONS between YOU and BRYANT prior to
14 | January 1, 2001, including without limitation the content, means and timing of such
15 | COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and
16 | the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

17 | 17. COMMUNICATIONS that BRYANT made for YOU or on YOUR
18 | behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior
19 | to June 30, 2001.

20 | 18. YOUR agreements and contracts with BRYANT, including without
21 | limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
22 | REFER OR RELATE thereto, and any actual or proposed amendments thereto.

23 | 19. Each agreement or contract between YOU and any PERSON other
24 | than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that
25 | REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of
26 | when such agreement or contract was negotiated or executed), including without
27 | limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
28 | REFER OR RELATE thereto, and any actual or proposed amendments thereto.

1        20.     YOUR knowledge, prior to April 29, 2004, of BRYANT's contracts

2   and agreements with, and his obligations to, MATTEL.

3        21.     YOUR knowledge of, and access to, non-public MATTEL DIVA

4   STARZ project information and DESIGNS prior to June 30, 2001.

5        22.     The payment of money or anything of value by or for YOU or on

6   YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work,

7   services or activities performed by BRYANT prior to January 1, 2001 (regardless of

8   when such payment was actually made), (b) for DESIGNS CREATED by BRYANT

9   prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in

10  connection with BRATZ or any BRATZ DESIGN at any time, including without

11  limitation the timing, manner and amount(s) thereof and the reasons therefor.

12       23.     The payment of royalties to, for or on behalf of BRYANT made by

13  or for YOU or on YOUR behalf, including the timing, manner and amounts of such

14  payments and the reasons therefor.

15       24.     Any indemnification and fee arrangement that YOU and/or

16  BRYANT has sought, proposed, requested or obtained in connection with this

17  ACTION.

18       25.     YOUR revenues and profits from BRATZ, including without

19  limitation YOUR gross and net profits, and YOUR costs associated therewith.

20       26.     YOUR net worth.

21       27.     The payment of money or anything of value that YOU have made or

22  offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought

23  or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s)

24  and reasons therefor.

25       28.     COMMUNICATIONS between YOU and Elise Cloonan that

26  REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including

27  the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

28

29.     COMMUNICATIONS made by, for or on behalf of YOU, whether directly or indirectly, with Anna Rhee, including without limitation since February 2005 (but not including any such COMMUNICATIONS with her legal counsel).

30.     COMMUNICATIONS between YOU and Veronica Marlow, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

31.     The IDENTITY of each PERSON who, at any time since January 1, 1998, has performed any work or services for, by or on behalf of YOU while such PERSON was employed by MATTEL, the nature and timing of each such PERSON's work or services and the amount(s) paid by YOU to each such PERSON.

32.     COMMUNICATIONS between YOU and BRYANT that REFER OR RELATE TO MATTEL or REFER OR RELATE TO any DOCUMENT that was prepared, authored or created by MATTEL that BRYANT has ever provided to, shown, described to, communicated to or disclosed in any manner to YOU.

33.     The applications for registration and the registrations for copyright, patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT, including without limitation COMMUNICATIONS pertaining thereto.

34.     Other than those previously filed and served in this ACTION or in which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

35.     COMMUNICATIONS between YOU and Universal Commerce Corp., Ltd. prior to June 30, 2001.

1    36.   The source, meaning and authenticity of SL00013-14, including

2  without limitation the timing of its creation and the handwriting thereon.

3    37.   YOUR corporate structure since January 1, 1999, including without

4  limitation the relationship between MGA Entertainment, Inc. and any of its

5  predecessors, affiliates and subsidiaries.

6    38.   The retention or destruction policies, procedures and practices for

7  YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO

8  BRATZ since January 1, 1999, including without limitation the retention or destruction

9  of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced,

10  modified or upgraded and (b) when PERSONS leave YOUR employ.

11    39.   The preservation, collection, destruction, removal, transfer, loss or

12  impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection

13  with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

14    40.   The preservation, collection, destruction, removal, transfer, loss or

15  impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1,

16  1999 that REFER OR RELATE TO MATTEL (including without limitation to any

17  MATTEL product, plan or information) that YOU received in any manner from any

18  PERSON who was at the time an employee of MATTEL or who had previously been

19  an employee of MATTEL.

20    41.   The testing of or sampling from DOCUMENTS that REFER OR

21  RELATE TO BRATZ or BRYANT, including without limitation such testing or

22  sampling in connection with any ink, paper or chemical analysis performed or

23  attempted to be performed to date, any DOCUMENTS that REFER OR RELATE

24  thereto and all results and reports relating thereto.

25    42.   YOUR DIGITAL INFORMATION data backup policies, practices

26  and procedures from January 1, 1999 to the present, including without limitation the

27  location and specifications of any media used to preserve YOUR DIGITAL

28

1  INFORMATION and the software, if any, used to preserve YOUR DIGITAL

2  INFORMATION.

3       43.   The DIGITAL INFORMATION SYSTEMS and the application

4  software that YOU have used since January 1, 1999 that REFER OR RELATE TO

5  design, development, planning, inventory, manufacturing, sales, shipping and

6  accounting, including without limitation the common or shared storage for such

7  DIGITAL   INFORMATION   SYSTEMS,   remote   access   of   such   DIGITAL

8  INFORMATION SYSTEMS, and any changes, modifications or upgrades to such

9  DIGITAL INFORMATION SYSTEMS or application software.

10      44.   The IDENTITY of PERSONS, including without limitation

11  vendors, who since January 1, 1999 have been responsible for or supported YOUR

12  DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of

13  such  PERSON  who  serviced  or  provided  hardware  for  YOUR  DIGITAL

14  INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL

15  INFORMATION, including but not limited to internet service providers, and provided

16  analytical,  training  or  implementation  services  with  respect  to  YOUR  DIGITAL

17  INFORMATION SYSTEMS.

18      45.   The electronic messaging SYSTEMS used by YOUR employees

19  within the scope of their employment between January 1, 1999 and the present,

20  including but not limited to electronic mail, instant messenger, telephone or voice-mail,

21  and the routing of such electronic messages to, from or within MGA.

22      46.   YOUR policies, practices and procedures regarding the use of

23  transportable  media  that  contain  or  are  capable  of  containing  DIGITAL

24  INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB

25  drives, portable hard drives, digital cameras and personal digital assistants.

26

27

28

-12-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On February 1, 2007, I served true copies of the following document(s) described as **SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on the parties in this action as follows:

**BY MAIL TO:**

Keith A. Jacoby, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, CA  90067-3107
Telephone: (310) 553-0308
Facsimile: (310) 553-5583

I enclosed the foregoing as well as a **COURTESY COPY** into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  (Courtesy copy

**BY PERSONAL SERVICE ON:**

Diana M. Torres, Esq.
O'Melveney & Meyers
400 So. Hope Street
Los Angeles, CA  90071
Telephone: (213) 430-6000
**Facsimile: (213) 430-6407**

I delivered such envelope(s) **(COURTESY COPY INCLUDED)** by hand to the office of the person(s) being served.

l declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 1, 2007, at Los Angeles, California.

Mia Albert

Dave Quintana

07209/2049386.1

# EXHIBIT 4

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9           UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11              EASTERN DIVISION

12 | CARTER BRYANT, an individual,  | CASE NO. CV 04-9049 SGL (RNBx)

13 |            Plaintiff,          | Consolidated with
                                    | Case No. CV 04-09059
14 |       v.                       | Case No. CV 05-02727

15 | MATTEL, INC., a Delaware       | MATTEL, INC.'S FIRST SET OF
   | corporation,                   | REQUESTS FOR DOCUMENTS AND
16 |                                | THINGS RE CLAIMS OF UNFAIR
   |            Defendant.          | COMPETITION TO MGA
17 |                                | ENTERTAINMENT, INC.

18 | AND CONSOLIDATED CASES.

19

20

21         Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Mattel,

22 Inc. hereby requests that MGA Entertainment, Inc. ("MGA") respond to these

23 document requests ("Requests") and make available for inspection and copying

24 originals of the following documents within 30 days of service at the offices of

25 Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th

26 floor, Los Angeles, CA 90017.  MGA shall be obligated to supplement responses to

27 these requests at such times and to the extent required by Rule 26(e) of the Federal

28 Rules of Civil Procedure.

12-18

1  **I.**  **DEFINITIONS**

2         For purposes of these Requests, the following definitions apply:

3         A.    The terms "YOU," "YOUR" and "MGA" mean MGA

4  Entertainment, Inc. and any individual or entity acting directly or indirectly by,

5  through, under or on behalf of MGA Entertainment, Inc., including but not limited

6  to current or former directors, officers, employees, agents, contractors, attorneys,

7  accountants, or representatives of MGA Entertainment, Inc. and any corporation,

8  partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-

9  interest and successor-in-interest, and any other PERSON acting on its behalf.

10        B.    The term "MATTEL" means Mattel, Inc. and all current or

11 former directors, officers, employees, agents, contractors, attorneys, accountants,

12 representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and

13 successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

14 authority or subject to its control.

15        C.    "DOCUMENT" or "DOCUMENTS" means all "writings" and

16 "recordings" as those terms are defined in Rule 1001 of the Federal Rules of

17 Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all

18 writings, including but not limited to handwriting, typewriting, printing, image,

19 photograph, photocopy, digital file of any kind, transmittal by (or as an attachment

20 to) electronic mail (including instant messages and text messages) or facsimile,

21 video and audio recordings, and every other means of recording upon any tangible

22 thing, any form of communication or representation, and any record thereby created,

23 regardless of the manner in which the record has been stored, and all non-identical

24 copies of such DOCUMENTS, in the possession, custody, or control of YOU,

25 YOUR counsel, or any other PERSON acting on YOUR behalf.

26        D.    The term "COMMUNICATION," in the plural as well as the

27 singular, means any transmittal and/or receipt of information, whether such was oral

28 or written, and whether such was by chance, prearranged, formal or informal, and

07975/1928319.2

1  specifically includes, but is not limited to, conversations in person, telephone

2  conversations, electronic mail (including instant messages and text messages),

3  voicemail, letters, memoranda, statements, media releases, magazine and newspaper

4  articles, and video and audio transmissions.

5         E.    "EMBODIMENT" means any representation of the identified

6  product or its retail packaging, whether two-dimensional or three-dimensional, and

7  whether in tangible, digital, electronic or other form, including but not limited to all

8  works, designs, artwork, sketches, drawings, illustrations, representations,

9  depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models,

10  samples, reductions to practice, developments, inventions and/or improvements, as

11  well as all other items, things and DOCUMENTS in which any of the foregoing are

12  or have been expressed, embodied, contained, fixed or reflected in any manner,

13  whether in whole or in part.

14         F.    "CONTESTED MGA PRODUCTS" means the CONTESTED

15  BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the

16  CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the

17  CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED

18  MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS

19  PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has

20  ever been known as, or sold, offered for sale, licensed, offered for license or

21  marketed under the name or terms "Bratz," "4-ever Best Friends," "Mommy's

22  Little," "Alienracers," or any derivative thereof, that provides a basis for any claim

23  by YOU against MATTEL, including but not limited to "Bratz Dolls," "Bratz

24  Dogz," "Winter Wonderland," "Bratz Sportz," "Formal Funk," "Sun-Kissed

25  Summer," "Funky Fashion Makeover Head," "Runway Disco," "4-ever Best

26  Friends," "Mommy's Little Patient," and "Alienracers."

27         G.    "CONTESTED BRATZ DOLLS PRODUCTS" means any of

28  the following that provides a basis for any claim by YOU against MATTEL: (i) any

07975/1928319.2

1    EMBODIMENT or project ever known by the name "Bratz" or any derivative

2    thereof (whether in whole or in part and regardless of what such EMBODIMENT or

3    project is or has been also, previously or subsequently called) and any doll or any

4    portion thereof that is now or has ever been known as, or sold, offered for sale,

5    licensed, offered for license or marketed under, the name or term "Bratz" or any

6    derivative thereof (whether in whole or in part and regardless of what such doll is or

7    has been also, previously or subsequently called), and all prototypes, models,

8    samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

9    playset and accessory that YOU distribute under the name "Bratz" or any derivative

10   thereof; and/or (iii) any and all other goods, product packaging, advertisements,

11   promotional materials or other thing or item or material manufactured, produced,

12   printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

13   imported, exported, licensed, offered for license, sold or offered for sale by YOU or

14   on YOUR behalf under the name "Bratz" or any derivative thereof.

15          H.     "CONTESTED BRATZ PETZ PRODUCTS" means any of the

16   following that provides a basis for any claim by YOU against MATTEL:  (i) any

17   EMBODIMENT or project ever known by the name "Bratz Petz" or any derivative

18   thereof (whether in whole or in part and regardless of what such EMBODIMENT or

19   project is or has been also, previously or subsequently called) and any toy pet or any

20   portion thereof that is now or has ever been known as, or sold, offered for sale,

21   licensed, offered for license or marketed under, the name or term "Bratz" or any

22   derivative thereof (whether in whole or in part and regardless of what such toy pet is

23   or has been also, previously or subsequently called), and all prototypes, models,

24   samples and versions of such EMBODIMENT, toy pet or any portion thereof; (ii)

25   any playset and accessory that YOU distribute under the name "Bratz Petz" or any

26   derivative thereof; and/or (iii) any and all other goods, product packaging,

27   advertisements, promotional materials or other thing or item or material

28   manufactured, produced, printed, ordered, marketed, advertised, promoted,

1  displayed, distributed, shipped, imported, exported, licensed, offered for license,

2  sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Petz" or

3  any derivative thereof.

4       I.     "CONTESTED BRATZ FUNKY FASHION MAKEOVER

5  HEAD" means any of the following that provides a basis for any claim by YOU

6  against MATTEL:  (i) any EMBODIMENT or project ever known by the name

7  "Bratz Funky Fashion Makeover Head" or any derivative thereof (whether in whole

8  or in part and regardless of what such EMBODIMENT or project is or has been

9  also, previously or subsequently called) and any styling head or any portion thereof

10  that is now or has ever been known as, or sold, offered for sale, licensed, offered for

11  license or marketed under, the name or term "Bratz" or any derivative thereof

12  (whether in whole or in part and regardless of what such styling head is or has been

13  also, previously or subsequently called), and all prototypes, models, samples and

14  versions of such EMBODIMENT, styling head or any portion thereof; (ii) any

15  accessory that YOU distribute under the name "Bratz Funky Fashion Makeover

16  Head" or any derivative thereof; and/or (iii) any and all other goods, product

17  packaging, advertisements, promotional materials or other thing or item or material

18  manufactured, produced, printed, ordered, marketed, advertised, promoted,

19  displayed, distributed, shipped, imported, exported, licensed, offered for license,

20  sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Funky

21  Fashion Makeover Head" or any derivative thereof.

22       J.     "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means

23  any of the following that provides a basis for any claim by YOU against MATTEL:

24  (i) any EMBODIMENT or project ever known by the name "4-ever Best Friends" or

25  any derivative thereof (whether in whole or in part and regardless of what such

26  EMBODIMENT or project is or has been also, previously or subsequently called)

27  and any doll or any portion thereof that is now or has ever been known as, or sold,

28  offered for sale, licensed, offered for license or marketed under, the name or term

1  "4-ever Best Friends" or any derivative thereof (whether in whole or in part and

2  regardless of what such doll is or has been also, previously or subsequently called),

3  and all prototypes, models, samples and versions of such EMBODIMENT, doll or

4  any portion thereof; (ii) any playset and accessory that YOU distribute under the

5  name "4-ever Best Friends" or any derivative thereof; and/or (iii) any and all other

6  goods, product packaging, advertisements, promotional materials or other thing or

7  item or material manufactured, produced, printed, ordered, marketed, advertised,

8  promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

9  license, sold or offered for sale by YOU or on YOUR behalf under the name "4-ever

10  Best Friends" or any derivative thereof.

11       K.    "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS"

12  means any of the following that provides a basis for any claim by YOU against

13  MATTEL: (i) any EMBODIMENT or project ever known by the name "Mommy's

14  Little Patient" or similar name or any derivative thereof (whether in whole or in part

15  and regardless of what such EMBODIMENT or project is or has been also,

16  previously or subsequently called) and any doll or any portion thereof that is now or

17  has ever been known as, or sold, offered for sale, licensed, offered for license or

18  marketed under, the name or term "Mommy's Little Patient" or similar name or any

19  derivative thereof (whether in whole or in part and regardless of what such doll is or

20  has been also, previously or subsequently called), and all prototypes, models,

21  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

22  playset and accessory that YOU distribute under the name "Mommy's Little Patient"

23  or similar name or any derivative thereof; and/or (iii) any and all other goods,

24  product packaging, advertisements, promotional materials or other thing or item or

25  material manufactured, produced, printed, ordered, marketed, advertised, promoted,

26  displayed, distributed, shipped, imported, exported, licensed, offered for license,

27  sold or offered for sale by YOU or on YOUR behalf under the name "Mommy's

28  Little Patient" or similar name or any derivative thereof.

1    L.    "CONTESTED ALIENRACERS PRODUCTS" means any of

2 the following that provides a basis for any claim by YOU against MATTEL:  (i) any

3 EMBODIMENT or project ever known by the name "Alienracers" or any derivative

4 thereof (whether in whole or in part and regardless of what such EMBODIMENT or

5 project is or has been also, previously or subsequently called) and any toy vehicle,

6 character, or any portion thereof that is now or has ever been known as, or sold,

7 offered for sale, licensed, offered for license or marketed under, the name or term

8 "Alienracers" or any derivative thereof (whether in whole or in part and regardless

9 of what such toy is or has been also, previously or subsequently called), and all

10 prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

11 character, or any portion thereof; (ii) any playset and accessory that YOU distribute

12 under the name "Alienracers" or any derivative thereof; and/or (iii) any and all other

13 goods, product packaging, advertisements, promotional materials or other thing or

14 item or material manufactured, produced, printed, ordered, marketed, advertised,

15 promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

16 license, sold or offered for sale by YOU or on YOUR behalf under the name

17 "Alienracers" or any derivative thereof.

18    M.    "CONTESTED MATTEL PRODUCTS" means the

19 CONTESTED MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED

20 MATTEL MY SCENE PETS PRODUCTS, the CONTESTED MATTEL MY

21 SCENE STYLING HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the

22 CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS, and the

23 CONTESTED MATTEL ACCELERACERS PRODUCTS, and any doll, toy,

24 portion thereof, or version thereof that is now or has ever been known as, or sold,

25 offered for sale, licensed, offered for license or marketed under the name or terms

26 "My Scene," "Wee-3," "Little Mommy," "AcceleRacerS," or any derivative thereof,

27 that provides a basis for any claim by YOU against MATTEL, including but not

28 limited to "My Scene Dolls," "My Scene Pets," "My Scene Chillin' Out," "My Scene

1  Miami Getaway," "My Scene Night on the Town," "My Scene Jammin' in Jamaica,"

2  "My Scene Guava Gulch Tiki Lounge," "My Scene Sound Lounge," "My Scene

3  Stylin' Head," "Mattel Wee-3," "Mattel Little Mommy Potty Training Baby Doll,"

4  and "Mattel Acceleracers."

5         N.   "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"

6  means any of the following that provides a basis for any claim by YOU against

7  MATTEL:  (i) any EMBODIMENT or project ever known by the name "My Scene"

8  or any derivative thereof (whether in whole or in part and regardless of what such

9  EMBODIMENT or project is or has been also, previously or subsequently called)

10  and any doll or any portion thereof that is now or has ever been known as, or sold,

11  offered for sale, licensed, offered for license or marketed under, the name or term

12  "My Scene" or any derivative thereof (whether in whole or in part and regardless of

13  what such doll is or has been also, previously or subsequently called), and all

14  prototypes, models, samples and versions of such EMBODIMENT, doll or any

15  portion thereof; (ii) any playset and accessory that MATTEL distributes under the

16  name "My Scene" or any derivative thereof; and/or (iii) any and all other goods,

17  product packaging, advertisements, promotional materials or other thing or item or

18  material manufactured, produced, printed, ordered, marketed, advertised, promoted,

19  displayed, distributed, shipped, imported, exported, licensed, offered for license,

20  sold or offered for sale by MATTEL under the name "My Scene" or any derivative

21  thereof.

22         O.   "CONTESTED MATTEL MY SCENE PETS PRODUCTS"

23  means any of the following that provides a basis for any claim by YOU against

24  MATTEL:  (i) any EMBODIMENT or project ever known by the name "My Scene

25  Pets" or any derivative thereof (whether in whole or in part and regardless of what

26  such EMBODIMENT or project is or has been also, previously or subsequently

27  called) and any toy pet or any portion thereof that is now or has ever been known as,

28  or sold, offered for sale, licensed, offered for license or marketed under, the name or

1 | term "My Scene" or any derivative thereof (whether in whole or in part and
2 | regardless of what such toy pet is or has been also, previously or subsequently
3 | called), and all prototypes, models, samples and versions of such EMBODIMENT,
4 | toy pet or any portion thereof; (ii) any playset and accessory that MATTEL
5 | distributes under the name "My Scene Pets" or any derivative thereof; and/or (iii)
6 | any and all other goods, product packaging, advertisements, promotional materials
7 | or other thing or item or material manufactured, produced, printed, ordered,
8 | marketed, advertised, promoted, displayed, distributed, shipped, imported, exported,
9 | licensed, offered for license, sold or offered for sale by MATTEL under the name
10 | "My Scene Pets" or any derivative thereof.

11 |       P.    "CONTESTED MATTEL MY SCENE STYLING HEAD"
12 | means any of the following that provides a basis for any claim by YOU against
13 | MATTEL:  (i) any EMBODIMENT or project ever known by the name "My Scene
14 | Styling Head" or any derivative thereof (whether in whole or in part and regardless
15 | of what such EMBODIMENT or project is or has been also, previously or
16 | subsequently called) and any styling head or any portion thereof that is now or has
17 | ever been known as, or sold, offered for sale, licensed, offered for license or
18 | marketed under, the name or term "My Scene" or any derivative thereof (whether in
19 | whole or in part and regardless of what such styling head is or has been also,
20 | previously or subsequently called), and all prototypes, models, samples and versions
21 | of such EMBODIMENT, styling head or any portion thereof; (ii) any accessory that
22 | MATTEL distributes under the name "My Scene Styling Head" or any derivative
23 | thereof; and/or (iii) any and all other goods, product packaging, advertisements,
24 | promotional materials or other thing or item or material manufactured, produced,
25 | printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,
26 | imported, exported, licensed, offered for license, sold or offered for sale by
27 | MATTEL under the name "My Scene Styling Head" or any derivative thereof.
28 |

Q.     "CONTESTED MATTEL WEE-3 PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL:  (i) any EMBODIMENT or project ever known by the name "Wee-3" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Wee-3" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that MATTEL distributes under the name "Wee-3" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by MATTEL under the name "Wee-3" or any derivative thereof.

R.     "CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL:  (i) any EMBODIMENT or project ever known by the name "Little Mommy" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Little Mommy" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that MATTEL distributes

1   under the name "Little Mommy" or any derivative thereof; and/or (iii) any and all

2   other goods, product packaging, advertisements, promotional materials or other

3   thing or item or material manufactured, produced, printed, ordered, marketed,

4   advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

5   offered for license, sold or offered for sale by MATTEL under the name "Little

6   Mommy" or any derivative thereof.

7          S.     "CONTESTED MATTEL ACCELERACERS PRODUCTS"

8   means any of the following that provides a basis for any claim by YOU against

9   MATTEL: (i) any EMBODIMENT or project ever known by the name

10   "AcceleRacers" or any derivative thereof (whether in whole or in part and regardless

11   of what such EMBODIMENT or project is or has been also, previously or

12   subsequently called) and any toy vehicle, character, or any portion thereof that is

13   now or has ever been known as, or sold, offered for sale, licensed, offered for

14   license or marketed under, the name or term "AcceleRacers" or any derivative

15   thereof (whether in whole or in part and regardless of what such toy is or has been

16   also, previously or subsequently called), and all prototypes, models, samples and

17   versions of such EMBODIMENT, toy vehicle, character, or any portion thereof; (ii)

18   any playset and accessory that MATTEL distributes under the name "AcceleRacers"

19   or any derivative thereof ; and/or (iii) any and all other goods, product packaging,

20   advertisements, promotional materials or other thing or item or material

21   manufactured, produced, printed, ordered, marketed, advertised, promoted,

22   displayed, distributed, shipped, imported, exported, licensed, offered for license,

23   sold or offered for sale by MATTEL under the name "AcceleRacers" or any

24   derivative thereof.

25          T.     The term "PERSON," in the plural as well as the singular, means

26   any natural person, association, partnership, corporation, joint venture, government

27   entity, organization, trust, institution, proprietorship, or any other entity recognized

28   as having an existence under the laws in United States or any other nation.

1    U.    The term "RELATING TO" means any and all of the following

2  terms and their synonyms:  refer to, discuss, constitute, evidence, pertain to,

3  mention, support, contradict, negate, bear on, touch on, contain, embody, reflect,

4  identify, state, deal with, concern, comment on, respond to, relevant to, or describe.

5    V.    "COMPLAINT"  means the Complaint for False Designation of

6  Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair

7  Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 *et seq.* and

8  California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code

9  § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or

10  about April 13, 2005.

11

12  **II.   INSTRUCTIONS**

13    A.    YOU are to produce all requested DOCUMENTS in YOUR

14  possession, custody or control.

15    B.    If YOU contend that YOU are not required to produce certain

16  DOCUMENTS called for by these Requests on the grounds of a privilege or

17  protection that YOU are not prepared to waive, identify each such DOCUMENT

18  and provide the following information:

19    1.    the date and type of the DOCUMENT, the author(s) and

20          all recipients;

21    2.    the privilege or protection that YOU claim permits YOU

22          to withhold the DOCUMENT;

23    3.    the title and subject matter of the DOCUMENT;

24    4.    any additional facts on which YOU base YOUR claim of

25          privilege or protection; and

26    5.    the identity of the current custodian of the original of the

27          DOCUMENT.

28

07975/1928319.2

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

C.     DOCUMENTS shall be produced in their original file folders, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT and the PERSON for whom or department, division or office for which the DOCUMENT or the file folder is maintained shall be identified.

D.     The DOCUMENTS should be produced in their complete and unaltered form.  Attachments to DOCUMENTS should not be removed.  The DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for any reason, including alleged nonrelevance.  If emails are produced that had attachments, the attachments shall be attached when produced.

E.     DOCUMENTS in electronic form shall be produced in that form.

F.     In the event that any DOCUMENT called for by these requests has been destroyed or discarded, that DOCUMENT is to be identified by stating:

    1.     the date and type of the DOCUMENT, the author(s) and all recipients;

    2.     the DOCUMENT's date, subject matter, number of pages, and attachments or appendices;

    3.     the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard;

    4.     the PERSONS who were authorized to carry out such destruction or discard;

    5.     the PERSONS who have knowledge of the content, origins, distribution and destruction of the DOCUMENT; and

    6.     whether any copies of the document exist and, if so, the name of the custodian of each copy.

## III.  **REQUESTS FOR DOCUMENTS AND THINGS**

REQUEST FOR PRODUCTION NO. 1:

A sample of each of the CONTESTED MGA PRODUCTS, together with each such product's packaging and all instructions, promotional literature, coupons, bounce-back cards and any other materials inserted in or associated with such packaging.

REQUEST FOR PRODUCTION NO. 2:

A sample of each display, including but not limited to each point-of-purchase or in-store display, prepared, produced, printed, manufactured or used in connection with the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 3:

A complete copy of each advertisement or promotional statement prepared, produced, printed, broadcast, made available to anyone in any manner via the Internet, or otherwise used or disseminated in any way in connection with the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 4:

A complete copy of each COMMUNICATION, advertisement, promotional statement that provides a basis for any claim by YOU against MATTEL.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, and ownership of any product packaging that provides a basis for any claim by YOU against MATTEL.

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 8:

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, and ownership of all product packaging that provides a basis for any claim by YOU against MATTEL.

REQUEST FOR PRODUCTION NO. 9:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of products and packaging that YOU contend provide a basis for any claim against MATTEL, whether or not such claim is made in the COMPLAINT.

REQUEST FOR PRODUCTION NO. 10:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of all products and packaging that YOU contend MATTEL copied or infringed.

1    REQUEST FOR PRODUCTION NO. 11:

2          All DOCUMENTS RELATING TO COMMUNICATIONS with any

3    PERSON regarding the invention, creation, origin, conception, authorship, design,

4    development, production, engineering, manufacture, distribution, sale, and

5    ownership of the CONTESTED MATTEL PRODUCTS and their associated

6    packaging.

7

8    REQUEST FOR PRODUCTION NO. 12:

9          All DOCUMENTS RELATING TO COMMUNICATIONS with any

10   PERSON regarding the invention, creation, origin, conception, authorship, design,

11   development, production, engineering, manufacture, distribution, sale, and

12   ownership of all products and packaging that YOU contend MATTEL copied or

13   infringed.

14

15   REQUEST FOR PRODUCTION NO. 13:

16         All DOCUMENTS RELATING TO any revision of any CONTESTED

17   MGA PRODUCTS, including but not limited to any proposed alternatives,

18   modifications or changes (whether or not implemented) to such CONTESTED

19   MGA PRODUCTS.

20

21   REQUEST FOR PRODUCTION NO. 14:

22         All DOCUMENTS RELATING TO the first date of availability for

23   retail sale of each of the CONTESTED MGA PRODUCTS.

24

25   REQUEST FOR PRODUCTION NO. 15:

26         All DOCUMENTS RELATING TO the first date that each of the

27   CONTESTED MGA PRODUCTS was shown to any PERSON not employed by

28   MGA, whether in concept, prototype, or finished form.

07975/1928319.2

-16-

REQUEST FOR PRODUCTION NO. 16:

All head sculptures, including all preliminary head sculptures and all versions of such sculptures, made, produced or prepared in connection with the CONTESTED BRATZ DOLLS PRODUCTS.

REQUEST FOR PRODUCTION NO. 17:

All DOCUMENTS RELATING TO the tooling for any of the CONTESTED BRATZ DOLLS PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase orders and payment relating thereto and including but not limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging therefor.

REQUEST FOR PRODUCTION NO. 18:

All DOCUMENTS RELATING TO the marketing, advertising, promotion, licensing, offering for sale or sale of the CONTESTED MGA PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs, advertisements, brochures, displays and Internet publications.

REQUEST FOR PRODUCTION NO. 19:

All DOCUMENTS RELATING TO the ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 20:

All DOCUMENTS RELATING TO any copyright, patent, design right or any other registration or application for registration of the CONTESTED MGA

1  PRODUCTS, including but not limited to the complete file history relating thereto,

2  all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits,

3  correspondence, notes and other DOCUMENTS relating thereto.

4

5  REQUEST FOR PRODUCTION NO. 21:

6           Documents sufficient to identify each of the CONTESTED MGA

7  PRODUCTS by internal job or product number, SKU, and bar code number.

8

9  REQUEST FOR PRODUCTION NO. 22:

10          Documents sufficient to identify the individuals who worked on or

11  were involved in any manner with the invention, creation, origin, conception,

12  authorship, or design of the CONTESTED MGA PRODUCTS.

13

14  REQUEST FOR PRODUCTION NO. 23:

15          All DOCUMENTS RELATING TO the display, exhibition,

16  distribution, publication, circulation, or other dissemination of the CONTESTED

17  MGA PRODUCTS to distributors, the media, or the public, including but not

18  limited to toy and trade shows and conventions.

19

20  REQUEST FOR PRODUCTION NO. 24:

21          All DOCUMENTS RELATING TO any contracts or licenses entered

22  into, negotiated, proposed, or requested RELATING TO any of the CONTESTED

23  MGA PRODUCTS.

24

25  REQUEST FOR PRODUCTION NO. 25:

26          All DOCUMENTS RELATING TO any actual, proposed, offered, or

27  requested licensing, sale, or purchase of the CONTESTED MGA PRODUCTS,

28

1  including but not limited to all contracts and proposed or offered contracts relating

2  thereto.

3

4  REQUEST FOR PRODUCTION NO. 26:

5        All DOCUMENTS RELATING TO the target market or potential

6  target market, and the demographics of any actual, potential or prospective

7  consumers, customers, purchasers or licensees of the CONTESTED MGA

8  PRODUCTS.

9

10  REQUEST FOR PRODUCTION NO. 27:

11        All DOCUMENTS RELATING TO the number of units of the

12  CONTESTED MGA PRODUCTS manufactured, produced, ordered, stored in

13  inventory, imported, exported, shipped, sold, or offered for sale by any PERSON,

14  including but not limited to YOU.

15

16  REQUEST FOR PRODUCTION NO. 28:

17        All DOCUMENTS RELATING TO revenues received by YOU in

18  connection with each of the CONTESTED MGA PRODUCTS.

19

20  REQUEST FOR PRODUCTION NO. 29:

21        All DOCUMENTS RELATING TO YOUR costs, including but not

22  limited to YOUR per-unit cost, for each of the CONTESTED MGA PRODUCTS.

23

24  REQUEST FOR PRODUCTION NO. 30:

25        All DOCUMENTS RELATING TO YOUR profits, including but not

26  limited to gross, incremental and net profits, for each of the CONTESTED MGA

27  PRODUCTS.

28

REQUEST FOR PRODUCTION NO. 31:

All DOCUMENTS RELATING TO any complaints or dissatisfaction concerning the CONTESTED MGA PRODUCTS, including but not limited to DOCUMENTS recording the returns of, or the number of or rate of defects for, such products.

REQUEST FOR PRODUCTION NO. 32:

All DOCUMENTS RELATING TO the belief of any PERSON (whether or not such belief is accurate) as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS, including but not limited to all studies, surveys, interviews, reports, and COMMUNICATIONS regarding any such belief.

REQUEST FOR PRODUCTION NO. 33:

All DOCUMENTS RELATING TO the belief of any PERSON (whether or not such belief is accurate) as to the origin, affiliation, sponsorship or association of the CONTESTED MATTEL PRODUCTS, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such belief.

REQUEST FOR PRODUCTION NO. 34:

All DOCUMENTS RELATING TO any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS RELATING TO any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MATTEL PRODUCTS, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS RELATING TO any consumer studies, reports, surveys, interviews or reports regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS RELATING TO the marketing, advertising, promotion, licensing, offering for sale or sale of the CONTESTED MATTEL PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs, advertisements, brochures, displays and Internet publications.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS RELATING TO the ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 39:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, and ownership of the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 40:

All DOCUMENTS RELATING TO the display, exhibition, distribution, publication, circulation, or other dissemination of the CONTESTED MATTEL PRODUCTS to distributors, the media, or the public, including but not limited to toy and trade shows and conventions.

REQUEST FOR PRODUCTION NO. 41:

All COMMUNICATIONS between YOU and any stock analyst, investment analyst, investment bank, institutional lender, or venture capital fund since January 1, 1999.

REQUEST FOR PRODUCTION NO. 42:

All COMMUNICATIONS between YOU and any individual while the individual was employed by MATTEL.

REQUEST FOR PRODUCTION NO. 43:

All COMMUNICATIONS between YOU and MATTEL RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

1   REQUEST FOR PRODUCTION NO. 44:

2          All COMMUNICATIONS between YOU and any PERSON

3   RELATING TO the claims made in YOUR COMPLAINT or the facts that YOU

4   contend support such claims.

5

6   REQUEST FOR PRODUCTION NO. 45:

7          All DOCUMENTS RELATING TO YOUR knowledge of MATTEL's

8   alleged infringement of YOUR claimed EMBODIMENTS.

9

10  REQUEST FOR PRODUCTION NO. 46:

11         All DOCUMENTS RELATING TO any unjust enrichment, damage,

12  loss, or injury that YOU claim has been sustained by reason of any act or omission

13  by MATTEL, including but not limited to all DOCUMENTS RELATING TO any

14  alleged lost profits, lost sales, lost opportunity, lost license, price erosion,

15  consequential or incidental damage, information or intellectual property provided to

16  any competitor, or benefit obtained by any competitor, including but not limited to

17  all DOCUMENTS RELATING TO the causation for any such alleged unjust

18  enrichment, damage, loss, or injury.

19

20  REQUEST FOR PRODUCTION NO. 47:

21         All DOCUMENTS supporting YOUR contention that MATTEL

22  created, designed, derived, or developed products, packaging, and advertising using

23  concepts, products, or intellectual property owned by YOU.

24

25  REQUEST FOR PRODUCTION NO. 48:

26         All DOCUMENTS RELATING TO the copying, reproduction or use

27  of any MATTEL work, product, or EMBODIMENT by YOU or on YOUR behalf.

28

REQUEST FOR PRODUCTION NO. 49:

All DOCUMENTS RELATING TO any similarity or dissimilarity between, on the one hand, any of the CONTESTED MGA PRODUCTS and any other work or product developed, manufactured, or distributed by any other person or entity, including but not limited to MATTEL.

REQUEST FOR PRODUCTION NO. 50:

All DOCUMENTS RELATING TO the reasons why consumers purchase any of the CONTESTED MGA PRODUCTS, including but not limited to all consumer surveys, studies and comments pertaining thereto.

REQUEST FOR PRODUCTION NO. 51:

All DOCUMENTS RELATING TO the channels of trade or potential or prospective channels of trade for the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 52:

All DOCUMENTS RELATING TO any similarity or dissimilarity between any of the CONTESTED MGA PRODUCTS and any EMBODIMENTS authored, created, distributed, made, sold or offered for sale by any PERSON other than YOU.

REQUEST FOR PRODUCTION NO. 53:

All DOCUMENTS RELATING TO any similarity or dissimilarity between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 54:

All DOCUMENTS RELATING TO any COMMUNICATION by YOU with any news organization regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 55:

All periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical, that mention the CONTESTED MGA PRODUCTS that have been published since January 1, 1999.

REQUEST FOR PRODUCTION NO. 56:

All television or radio broadcasts or cablecasts that mention the CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999.

REQUEST FOR PRODUCTION NO. 57:

All Internet postings or COMMUNICATIONS that mention the CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999.

REQUEST FOR PRODUCTION NO. 58:

All DOCUMENTS RELATING TO publicity by YOU or about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to advertising, media releases, and public relations material.

REQUEST FOR PRODUCTION NO. 59:

All DOCUMENTS RELATING TO any effort by YOU to recruit employees or contractors since January 1, 1999, including but not limited to

advertising, media releases, brochures, articles, catalogs, handbooks, and public
relations material.

REQUEST FOR PRODUCTION NO. 60:

All DOCUMENTS RELATING TO the hiring, engagement, or
retention by YOU of any current or former MATTEL employee or contractor since
January 1, 1999, including but not limited to all employment agreements and
agreements RELATING TO confidentiality or the invention, authorship, or
ownership of any concept or product.

REQUEST FOR PRODUCTION NO. 61:

All DOCUMENTS RELATING TO any of the CONTESTED
MATTEL PRODUCTS that were obtained by YOU before the date that such
product was first offered for sale to the general public.

REQUEST FOR PRODUCTION NO. 62:

All DOCUMENTS, since January 1, 1999, RELATING TO YOUR
receipt, reproduction, copying, storage, transmission, transfer, retention, destruction,
deletion or use of any DOCUMENTS, data and/or information, including but not
limited to any compilation of information, that was prepared, made, created,
generated, assembled or compiled by or for MATTEL and that was not publicly
available at the time of YOUR receipt of such DOCUMENT, data and/or
information.

REQUEST FOR PRODUCTION NO. 63:

All DOCUMENTS, since January 1, 1999, RELATING TO YOUR
knowledge of any MATTEL product prior to the time that such product had been

1 | announced or disclosed by MATTEL to retailers or the public, including but not
2 | limited to the CONTESTED MATTEL PRODUCTS.

3

4 | REQUEST FOR PRODUCTION NO. 64:

5 |      All DOCUMENTS, since January 1, 1999, RELATING TO YOUR
6 | receipt, reproduction, copying, storage, transmission, transfer, retention, destruction,
7 | deletion or use of any MATTEL line list or other DOCUMENT prepared by
8 | MATTEL identifying MATTEL products in the planning, design or development
9 | phase.

10

11 | REQUEST FOR PRODUCTION NO. 65:

12 |      Copies of all DOCUMENTS that were seized by Mexican authorities
13 | from MGA's office in Mexico City, Mexico.

14

15 | REQUEST FOR PRODUCTION NO. 66:

16 |      All DOCUMENTS RELATING TO the DOCUMENTS, data and/or
17 | information that were seized by Mexican authorities from MGA's office in Mexico
18 | City, Mexico.

19

20 | REQUEST FOR PRODUCTION NO. 67:

21 |      All DOCUMENTS, including all COMMUNICATIONS, RELATING
22 | to the search of MGA's office in Mexico City, Mexico that was conducted by
23 | Mexican authorities.

24

25 | REQUEST FOR PRODUCTION NO. 68:

26 |      All DOCUMENTS RELATING TO the email account
27 | <plot04@aol.com>, including but not limited to all emails and attachments sent

28

1   from, sent to, received by, transmitted by way of or through and/or stored in such

2   account in any manner.

3

4   REQUEST FOR PRODUCTION NO. 69:

5          All DOCUMENTS RELATING TO when the email account

6   <plot04@aol.com> was first registered, set up or established.

7

8   REQUEST FOR PRODUCTION NO. 70:

9          All DOCUMENTS identifying each PERSON who registered, set up,

10  established or used the email account <plot04@aol.com>.

11

12  REQUEST FOR PRODUCTION NO. 71:

13         All COMMUNICATIONS between YOU and Carlos Gustavo

14  Machado Gomez ("Machado") prior to April 20, 2004.

15

16  REQUEST FOR PRODUCTION NO. 72:

17         All DOCUMENTS RELATING TO COMMUNICATIONS between

18  YOU and Machado prior to April 20, 2004, including but not limited to all calendar

19  entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21  REQUEST FOR PRODUCTION NO. 73:

22         All DOCUMENTS, including but not limited to all

23  COMMUNICATIONS with any PERSON, RELATING TO Machado prior to April

24  20, 2004.

25

26

27

28

1    REQUEST FOR PRODUCTION NO. 74:

2            All DOCUMENTS, including but not limited to all

3    COMMUNICATIONS with any PERSON, RELATING TO Machado's resignation

4    from Mattel.

5

6    REQUEST FOR PRODUCTION NO. 75:

7            All DOCUMENTS, including but not limited to all

8    COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9    or any other item of value paid to Machado, whether directly or indirectly, by YOU.

10

11   REQUEST FOR PRODUCTION NO. 76:

12           All DOCUMENTS received by YOU, directly or indirectly, from

13   Machado RELATING TO any MATTEL product or plan.

14

15   REQUEST FOR PRODUCTION NO. 77:

16           All DOCUMENTS, including but not limited to all

17   COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18   reproduction, copying, storage, transmission, transfer, retention, destruction,

19   deletion or use of any DOCUMENTS, data and/or information, including but not

20   limited to any compilation of information, that was prepared, made, created,

21   generated, assembled or compiled by or for MATTEL and that YOU received,

22   directly or indirectly, from Machado.

23

24   REQUEST FOR PRODUCTION NO. 78:

25           A copy of each personnel file maintained or created by YOU

26   RELATING TO Machado.

27

28

1  REQUEST FOR PRODUCTION NO. 79:

2          All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

4  in part, by Machado RELATING TO any of the CONTESTED MGA PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 80:

7          All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

9  in part, by Machado RELATING TO any of the CONTESTED MATTEL

10  PRODUCTS.

11

12  REQUEST FOR PRODUCTION NO. 81:

13          All COMMUNICATIONS between YOU and Mariana Trueba Almada

14  ("Trueba") prior to April 20, 2004.

15

16  REQUEST FOR PRODUCTION NO. 82:

17          All DOCUMENTS RELATING TO COMMUNICATIONS between

18  YOU and Trueba prior to April 20, 2004, including but not limited to all calendar

19  entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21  REQUEST FOR PRODUCTION NO. 83:

22          All DOCUMENTS, including but not limited to all

23  COMMUNICATIONS with any PERSON, RELATING TO Trueba prior to April

24  20, 2004.

25

26

27

28

**REQUEST FOR PRODUCTION NO. 84:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Trueba's resignation from Mattel.

**REQUEST FOR PRODUCTION NO. 85:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Trueba, whether directly or indirectly, by YOU.

**REQUEST FOR PRODUCTION NO. 86:**

All DOCUMENTS received by YOU, directly or indirectly, from Trueba RELATING TO any MATTEL product or plan.

**REQUEST FOR PRODUCTION NO. 87:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Trueba.

**REQUEST FOR PRODUCTION NO. 88:**

A copy of each personnel file maintained or created by YOU RELATING TO Trueba.

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

REQUEST FOR PRODUCTION NO. 89:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Trueba RELATING TO any of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 90:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Trueba RELATING TO any of the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 91:

All COMMUNICATIONS between YOU and Pablo Vargas San Jose ("Vargas") prior to April 20, 2004.

REQUEST FOR PRODUCTION NO. 92:

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Vargas prior to April 20, 2004, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 93:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Vargas prior to April 20, 2004.

REQUEST FOR PRODUCTION NO. 94:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Vargas' resignation from Mattel.

REQUEST FOR PRODUCTION NO. 95:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Vargas, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 96:

All DOCUMENTS received by YOU, directly or indirectly, from Vargas RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 97:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Vargas.

REQUEST FOR PRODUCTION NO. 98:

A copy of each personnel file maintained or created by YOU RELATING TO Vargas.

1  REQUEST FOR PRODUCTION NO. 99:

2           All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

4  in part, by Vargas RELATING TO any of the CONTESTED MGA PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 100:

7           All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

9  in part, by Vargas RELATING TO any of the CONTESTED MATTEL

10 PRODUCTS.

11

12 REQUEST FOR PRODUCTION NO. 101:

13          All COMMUNICATIONS between YOU and Janine Brisbois

14 ("Brisbois") prior to September 27, 2005.

15

16 REQUEST FOR PRODUCTION NO. 102:

17          All DOCUMENTS RELATING TO COMMUNICATIONS between

18 YOU and Brisbois prior to September 27, 2005, including but not limited to all

19 calendar entries, phone logs, phone records and notes reflecting such

20 COMMUNICATIONS.

21

22 REQUEST FOR PRODUCTION NO. 103:

23          All DOCUMENTS, including but not limited to all

24 COMMUNICATIONS with any PERSON, RELATING TO Brisbois prior to

25 September 27, 2005.

26

27

28

1    REQUEST FOR PRODUCTION NO. 104:

2          All DOCUMENTS, including but not limited to all

3    COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation

4    from Mattel.

5

6    REQUEST FOR PRODUCTION NO. 105:

7          All DOCUMENTS, including but not limited to all

8    COMMUNICATIONS with any PERSON, RELATING TO compensation, money

9    or any other item of value paid to Brisbois, whether directly or indirectly, by YOU.

10

11   REQUEST FOR PRODUCTION NO. 106:

12         All DOCUMENTS received by YOU, directly or indirectly, from

13   Brisbois RELATING TO any MATTEL product or plan.

14

15   REQUEST FOR PRODUCTION NO. 107:

16         All DOCUMENTS, including but not limited to all

17   COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt,

18   reproduction, copying, storage, transmission, transfer, retention, destruction,

19   deletion or use of any DOCUMENTS, data and/or information, including but not

20   limited to any compilation of information, that was prepared, made, created,

21   generated, assembled or compiled by or for MATTEL and that YOU received,

22   directly or indirectly, from Brisbois.

23

24   REQUEST FOR PRODUCTION NO. 108:

25         A copy of each personnel file maintained or created by YOU

26   RELATING TO Brisbois.

27

28

07975/1928319.2

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

REQUEST FOR PRODUCTION NO. 109:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Brisbois RELATING TO any of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 110:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Brisbois RELATING TO any of the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 111:

All COMMUNICATIONS between YOU and Ron Brawer ("Brawer") prior to October 2, 2004.

REQUEST FOR PRODUCTION NO. 112:

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Brawer prior to October 2, 2004, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 113:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brawer prior to October 2, 2004.

REQUEST FOR PRODUCTION NO. 114:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brawer's resignation from Mattel.

REQUEST FOR PRODUCTION NO. 115:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brawer, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 116:

All DOCUMENTS received by YOU, directly or indirectly, from Brawer RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 117:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Brawer.

REQUEST FOR PRODUCTION NO. 118:

All DOCUMENTS RELATING TO the existence or extent of competition or substitution between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

1  REQUEST FOR PRODUCTION NO. 119:

2            All DOCUMENTS RELATING TO the facts that YOU contend

3  support the claims for relief in YOUR COMPLAINT.

4

5  REQUEST FOR PRODUCTION NO. 120:

6            All DOCUMENTS RELATING TO any claim by YOU that any of the

7  CONTESTED MGA PRODUCTS have acquired secondary meaning or are famous.

8

9  REQUEST FOR PRODUCTION NO. 121:

10           All DOCUMENTS RELATING TO any claim by YOU that

11 MATTEL's actions have caused actual dilution.

12

13 REQUEST FOR PRODUCTION NO. 122:

14           All DOCUMENTS RELATING TO the allegation in Paragraph 9 of

15 YOUR COMPLAINT that "Mattel has intimidated, coerced and threatened retailers,

16 licensees, suppliers and others in the industry."

17

18 REQUEST FOR PRODUCTION NO. 123:

19           All DOCUMENTS RELATING TO the allegation in Paragraph 9 of

20 YOUR COMPLAINT that "Mattel has . . . serially imitated and copy-catted [*sic*] the

21 look of MGA products, trade dress, trademarks, themes, ideas, advertising and

22 packaging."

23

24 REQUEST FOR PRODUCTION NO. 124:

25           All DOCUMENTS RELATING TO the allegation in Paragraphs 34

26 and 36 of YOUR COMPLAINT that the Bratz dolls launched in 2001 were "unique

27 and distinctive."

28

REQUEST FOR PRODUCTION NO. 125:

All DOCUMENTS RELATING TO any allegation by YOU that YOU have any legally protected interest in any of the following "themes" or any other Bratz "theme" that you contend was copied by MATTEL: "Winter Wonderland," "Bratz Sportz," "Formal Funk," "Sun-Kissed Summer."

REQUEST FOR PRODUCTION NO. 126:

All DOCUMENTS RELATING TO any allegation by YOU that YOU have any legally protected interest in any "color scheme" that you contend was copied by MATTEL.

REQUEST FOR PRODUCTION NO. 127:

All DOCUMENTS RELATING TO the allegation in Paragraph 56 of YOUR COMPLAINT that the press has confused YOUR products with those of MATTEL, or vice versa.

REQUEST FOR PRODUCTION NO. 128:

All DOCUMENTS RELATING TO any allegation by YOU that anyone has confused any commercial for YOUR Funky Fashion Makeover Head with any commercial for MATTEL's My Scene Styling Head.

REQUEST FOR PRODUCTION NO. 129:

All DOCUMENTS RELATING TO any allegation by YOU that MATTEL has used any "tag line" allegedly belonging to YOU, including but not limited to "Passion for Fashion" or any derivative thereof.

REQUEST FOR PRODUCTION NO. 130:

All DOCUMENTS RELATING TO the allegation in Paragraph 61 of YOUR COMPLAINT that retailers have been confused by Bratz Petz and MATTEL's My Scene Pets, including but not limited to YOUR allegation that "even sophisticated retailers . . . have mistakenly merchandised 'My Scene' dogs in the middle of the 'BRATZ' section of a retail display, next to and as if they were part of MGA's 'BRATZ Petz' line."

REQUEST FOR PRODUCTION NO. 131:

All DOCUMENTS RELATING TO the allegation in Paragraph 62 of YOUR COMPLAINT that advertising executives have "expressed concern" about "Bratz" and Mattel's "My Scene," including but not limited to the alleged remarks set forth in Paragraph 62.

REQUEST FOR PRODUCTION NO. 132:

All DOCUMENTS RELATING TO the allegations in Paragraph 63 of YOUR COMPLAINT that the press "has taken notice" of alleged confusion between "Bratz" and Mattel's "My Scene," including but not limited to the alleged remarks set forth in Paragraph 63.

REQUEST FOR PRODUCTION NO. 133:

All DOCUMENTS RELATING TO the allegation in Paragraph 64 of YOUR COMPLAINT that customers have contacted YOU to purchase Mattel's "My Scene" dolls.

1  REQUEST FOR PRODUCTION NO. 134:

2          All DOCUMENTS RELATING TO any allegation by YOU that YOU

3  have a legally protected interest in what YOU describe in Paragraph 71 of YOUR

4  COMPLAINT as "MGA's 'other-worldly' theme."

5

6  REQUEST FOR PRODUCTION NO. 135:

7          All DOCUMENTS RELATING TO the allegation in Paragraph 71 of

8  YOUR COMPLAINT that MATTEL's commercials and product "mimic[] MGA's

9  alien theme and commercials in which MGA's 'AlienRacers' are engaged in a 'race

10  to save the universe.'"

11

12  REQUEST FOR PRODUCTION NO. 136:

13          All DOCUMENTS RELATING TO the allegation in Paragraph 74 of

14  YOUR COMPLAINT that MATTEL has engaged in "strong-arm tactics, and other

15  illegitimate, unfair and anti-competitive means."

16

17  REQUEST FOR PRODUCTION NO. 137:

18          All DOCUMENTS RELATING TO the allegations in Paragraph 75 of

19  YOUR COMPLAINT regarding MATTEL's dealings and COMMUNICATIONS

20  with former employees, including but not limited to all COMMUNICATIONS

21  between YOU and any present or former employees or contractors of MATTEL.

22

23  REQUEST FOR PRODUCTION NO. 138:

24          All COMMUNICATIONS between YOU and any PERSON

25  RELATING TO the departure from MATTEL of any current or former MATTEL

26  employee or contractor.

27

28

REQUEST FOR PRODUCTION NO. 139:

All COMMUNICATIONS between YOU and any PERSON RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current or former MATTEL employee or contractor.

REQUEST FOR PRODUCTION NO. 140:

All COMMUNICATIONS between YOU and any current or former MATTEL employee or contractor RELATING TO the ownership of any idea, concept, design, or product.

REQUEST FOR PRODUCTION NO. 141:

All COMMUNICATIONS between YOU and any PERSON RELATING TO the retention, destruction, transfer, or use of any information or DOCUMENTS known to or possessed by any current or former MATTEL employee or contractor.

REQUEST FOR PRODUCTION NO. 142:

All DOCUMENTS RELATING TO the "warnings" or "threats" alleged in Paragraph 76 of YOUR COMPLAINT, including but not limited to all COMMUNICATIONS with any present or former licensees of MATTEL.

REQUEST FOR PRODUCTION NO. 143:

All DOCUMENTS RELATING TO the "intimidation" alleged in Paragraph 77 of YOUR COMPLAINT, including but not limited to all COMMUNICATIONS with any present or former distributors and retailers of MGA and MATTEL products.

REQUEST FOR PRODUCTION NO. 144:

All COMMUNICATIONS between YOU and any retailer, wholesaler or distributor RELATING TO the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 145:

All DOCUMENTS RELATING TO the allegation in Paragraph 78 of YOUR COMPLAINT that MATTEL was responsible for what YOU refer to as a "shortage of doll hair in October 2002."

REQUEST FOR PRODUCTION NO. 146:

All DOCUMENTS RELATING TO the allegation in Paragraph 79 of YOUR COMPLAINT that MATTEL has "manipulated the retail market," including but not limited to all COMMUNICATIONS with any persons RELATING TO YOUR allegation that "Mattel merchandisers have been caught tampering with MGA's retail displays."

REQUEST FOR PRODUCTION NO. 147:

All DOCUMENTS RELATING TO any allegation by YOU that MATTEL has made false statements about YOU or YOUR business practices, including but not limited to the allegations in Paragraph 79 of YOUR COMPLAINT.

REQUEST FOR PRODUCTION NO. 148:

All DOCUMENTS RELATING TO any allegation by YOU that MATTEL has violated any rules or restrictions relating to data provided to subscribers by NPD or engaged in any other wrongful conduct relating to NPD.

1  REQUEST FOR PRODUCTION NO. 149:

2        All DOCUMENTS RELATING TO any COMMUNICATIONS

3  between YOU and NPD, other than periodic reports, between January 1, 2000 and

4  the present.

5

6  REQUEST FOR PRODUCTION NO. 150:

7        DOCUMENTS sufficient to show the status of YOUR NPD

8  subscription between January 1, 2000 and the present.

9

10  REQUEST FOR PRODUCTION NO. 151:

11        All DOCUMENTS RELATING TO the allegation in Paragraph 89 of

12  YOUR COMPLAINT that MATTEL "used its influence . . . to induce CARU to

13  place onerous restrictions on MGA advertisements, and require MGA to amend

14  aspects of commercials that have gone unchallenged in other parties' commercials."

15

16  REQUEST FOR PRODUCTION NO. 152:

17        All DOCUMENTS RELATING TO any COMMUNICATIONS

18  between YOU and CARU between January 1, 2000 and the present.

19

20  REQUEST FOR PRODUCTION NO. 153:

21        All DOCUMENTS RELATING TO any allegation by YOU that

22  MATTEL has exercised improper influence with or within TIA, including but not

23  limited to the procedures for and manner in which the Toy of the Year was selected

24  for 2003.

25

26  REQUEST FOR PRODUCTION NO. 154:

27        All DOCUMENTS RELATING TO any COMMUNICATIONS with

28  TIA RELATING TO Toy of the Year since January 1, 2000.

1  REQUEST FOR PRODUCTION NO. 155:

2       All DOCUMENTS RELATING TO the allegation in Paragraph 113 of

3  YOUR COMPLAINT that MATTEL has "willfully and maliciously used its power,

4  influence and intimidation to threaten certain retailers, suppliers, licensees,

5  distributors and manufacturers so as to limit, if not prevent, MGA from doing

6  business with these retailers, suppliers, licensees, distributors and manufacturers,

7  using its power and influence to intimidate and manipulate industry bodies."

8

9  REQUEST FOR PRODUCTION NO. 156:

10       All DOCUMENTS RELATING TO the allegation in Paragraph 113 of

11  YOUR COMPLAINT that MATTEL has "used its power and influence to attempt

12  to, if not actually, intimidate and threaten MGA's current and potential employees so

13  as to cause MGA competitive injury."

14

15  REQUEST FOR PRODUCTION NO. 157:

16       YOUR quarterly and annual profit and loss statements (both audited

17  and unaudited) for the years 2000 through the present, inclusive.

18

19  REQUEST FOR PRODUCTION NO. 158:

20       YOUR quarterly and annual financial statements (both audited and

21  unaudited) for the years 2000 through the present, inclusive.

22

23  REQUEST FOR PRODUCTION NO. 159:

24       YOUR annual reports for each of the years 2000 through the present,

25  inclusive.

26

27

28

REQUEST FOR PRODUCTION NO. 160:

All DOCUMENTS received from MATTEL (whether directly or indirectly) by YOU at any time since January 1, 1999.

REQUEST FOR PRODUCTION NO. 161:

All DOCUMENTS that YOU have reason to believe were created by or originated from MATTEL, other than MATTEL products that YOU purchased at retail.

REQUEST FOR PRODUCTION NO. 162:

All DOCUMENTS RELATING TO the destruction or retention of any DOCUMENT RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 163:

All internal MGA COMMUNICATIONS and schedules RELATING TO document retention or destruction between January 1, 1999 and the present.

REQUEST FOR PRODUCTION NO. 164:

All DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by, any government entity RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 165:

All DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by, any toy industry organization, safety compliance, or consumer organization RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

1    <u>REQUEST FOR PRODUCTION NO. 166</u>:

2         To the extent not produced in response to any other Request for

3    Production, all DOCUMENTS and tangible things upon which YOU intend to rely

4    upon in this action.

5

6    DATED:  December 18, 2006      QUINN EMANUEL URQUHART OLIVER &

7                          HEDGES, LLP

8

9                By _____

10                   Timothy L. Alger
Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On December 18, 2006, I true copies of the following document(s) described as:

### MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS RE CLAIMS OF UNFAIR COMPETITION TO MGA ENTERTAINMENT, INC.

on the parties in this action as follows:

| | |
|---|---|
| Diana M. Torres, Esq.<br>O'Melveny & Myers<br>400 So. Hope Street<br>Los Angeles, CA  90071<br>Telephone: (213) 430-6000<br>Facsimile: (213) 430-6407 | Keith A. Jacoby, Esq.<br>Littler Mendelson<br>2049 Century Park East, 5th Floor<br>Los Angeles, CA  90067-3107<br>Telephone: (310) 553-0308<br>Facsimile: (310) 553-5583 |

[√ ]    [PERSONAL] by personally delivering the document listed above to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on December 18, 2006 at Los Angeles, California.

_____
David Quintana

07209/2020338.1

Case No. SACV 05-00953 JVS (ANx)
PROOF OF SERVICE