ORIGINAL

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

| 11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 12 | Plaintiff, | Consolidated with |
| 13 | vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 14 | MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 15 | | **[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]** |
| 16 | Defendant. | |
| 17 | AND CONSOLIDATED ACTIONS | MATTEL, INC.'S: (1) OPPOSITION TO MGA'S MOTION TO QUASH OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER; AND (2) COUNTERMOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THIRD-PARTY SUBPOENAS |

18

19

20

21  [Mattel, Inc's Response to MGA's Separate
22  Statements and Declarations of Jon D.
    Corey, Michael Zeller, and B. Dylon
23  Proctor filed concurrently herewith]

24  Hearing Date:   February 8, 2008
    Time:           9:30 a.m.
25  Place:          Telephonic

26  Phase 1:
    Discovery Cut-off:      January 28, 2008
27  Pre-trial Conference:   May 5, 2008
    Trial Date:             May 27, 2008

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS .............................................................................. 2

ARGUMENT ................................................................................................. 7

I.  DEFENDANTS' MOTION TO QUASH SHOULD BE DENIED BECAUSE THE DOCUMENTS SOUGHT MAY BE PRODUCED WITH MINIMAL BURDEN .................................................................... 7

II.  MATTEL'S SUBPOENAS SEEK DOCUMENTS THAT ARE UNQUESTIONABLY RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES ........................................................................... 11

    A.  Documents Related To Bratz Go To The Very Heart Of This Case ................................................................................... 12

        1.  ConsumerQuest Subpoena: ......................................... 12

        2.  Ernst & Young and Deloitte & Touche Subpoenas .................. 13

        3.  Wachovia Subpoenas ................................................ 13

    B.  Documents Related To The Timing of The Creation of Bratz Are Extremely Relevant ........................................... 13

    C.  Documents Related to the Legal Dispute Between Isaac Larian and Farhad Larian are Relevant To The Development of Bratz and the Defendants' Financial Condition ................................. 17

    D.  Documents Related To MGA's and Isaac Larian's Net Worth Are Undeniably Relevant ....................................... 18

        1.  Mattel is Entitled to Documents Showing or Related to MGA's and Larian's Net Worth ............................ 18

        2.  Financial Records Concerning MGA ............................. 19

        3.  Financial Records Concerning Isaac Larian .................... 20

    E.  The Documents Sought Are Also Relevant to Mattel's Disgorgement Claim ..................................................... 23

    F.  Mattel Seeks Documents to Prepare Its Defenses to MGA's Counter Claims ................................................. 25

    G.  The Evidence of Payments to Others is Relevant to Mattel's Commercial Bribery Claim and Evidence of Bias ................. 27

III.  THE SUBPOENAS ARE NOT OVERBROAD ................................ 29

IV.  THE SUBPOENAS ARE NOT UNREASONABLY DUPLICATIVE .........31

    A.  The Parties Have Unique and Relevant Documents ...........................31

    B.  MGA Failed to Produce Documents Responsive to Most of Mattel's Requests, and What It Did Produce is Largely Non-Responsive to the Third-Party Subpoenas. ...........................................33

    C.  Mattel Should Not Be Forced To Assume MGA and Larian's Good-Faith Production of Documents ................................................36

        1.  MGA's and Larian's Illusory Promises to Produce Do Not Render the Subpoenas Duplicative ..............................................36

        2.  Larian Cannot be Trusted to Timely Produce Responsive Documents ........................................................................36

        3.  Mattel is Entitled to the Requested Documents Because of Legitimate Concerns of MGA's Obstruction, Spoliation and Document Tampering .....................................................37

    D.  That Documents "May" Be Available From Another Source Is Not Sufficient Grounds to Quash The Subpoenas ..............................39

V.  THE REMAINING OBJECTIONS ARE BOILERPLATE AND SHOULD BE OVERRULED .......................................................................40

    A.  The Boilerplate Objections Are Improper ............................................40

    B.  The Objection Based Upon the Accountant-Client Privilege Is Unfounded .............................................................................................41

    C.  The Objection Based Upon The Tax Return Privilege Is Improper .................................................................................................41

    D.  Concerns Over Confidentiality Are Alleviated by the Protective Order ......................................................................................................43

VI.  MGA'S CLAIM THAT MATTEL FAILED TO MEET AND CONFER IS FALSE ..................................................................................................44

COUNTER MOTION TO COMPEL ................................................................... 1

I.  THE COURT SHOULD ISSUE AN ORDER COMPELLING COMPLIANCE WITH THE SUBPOENAS ...................................................... 2

    A.  The Documents Sought By The Third-Party Subpoenas Are Relevant And Good Cause Exists For Their Production ...................... 2

    B.  The Subpoenas Are Not Overbroad or Unduly Burdensome ................ 2

    C.  Concerns Over Confidentiality Are Addressed by the Existing Protective Order ................................................................................... 2

    D.  The Remaining Objections Do Not Preclude Production ...................... 3

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1

II.      EACH OF THE SUBPOENAED PARTIES MUST PRODUCE ADEQUATE PRIVILEGE LOGS ................................................................ 4

2

CONCLUSION ........................................................................................... 5

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

A. Farber and Partners, Inc. v. Garber,
  234 F.R.D. 186 (C.D. Cal. 2006) ........................................................... 2, 38, 40, 41

Aliotti v. Senora,
  217 F.R.D. 496 (N.D. Cal. 2003) ................................................................. 39

In re Bergeson,
  112 F.R.D. 692 (D. Mont. 1986) ................................................................. 38

Burlesci v. Petersen,
  68 Cal. App. 4th 1062 (1998) ..................................................................... 22

Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.,
  408 F.3d 1142 (9th Cir. 2005) ....................................................................... 4

Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.,
  175 F.R.D. 646 (C.D. Cal. 1997) ................................................................. 16

Clark v. Bunker,
  453 F.2d 1006 (9th Cir. 1972) ..................................................................... 21

Couch v. United States,
  409 U.S. 322 (1972) ................................................................................... 39

Covey Oil Co. v. Continental Oil Co.,
  340 F.2d 993 (10th Cir. 1965) ..................................................................... 37

Cramer v. Biddison,
  65 Cal. Rptr. 624, 257 Cal. App. 2d 720 (1968) .......................................... 22

E. Bassett Co. v. Revlon, Inc.,
  435 F.2d 656 (2d Cir. 1970) ........................................................................ 21

Farmers Ins. Exchange v. Zerin,
  53 Cal. App. 4th 445 (1997) ........................................................................ 22

Gohler v. Wood,
  162 F.R.D. 691 (D. Utah 1995) ................................................................... 41

Goodman v. U.S.,
  369 F.2d 166 (9th Cir. 1966) ......................................................................... 8

Green v. Baca,
  226 F.R.D. 624 (C.D. Cal. 2005) ................................................................... 7

Heat and Control, Inc. v. Hester Industries, Inc.,
  785 F.2d 1017 (Fed. Cir. 1986) ..................................................................... 7

-iv-

In re Heritage Bond Litigation,
    2004 WL. 1970058 (C.D. Cal. 2004) ................................................ 41

Hilao v. Estate of Marcos,
    103 F.3d 767 (9th Cir. 1996) ........................................................ 17

Housing Rights Center v. Sterling,
    2005 WL. 3320739 (C.D. Cal. 2005) .......................................... 22, 23

In re Imperial Corp. of Am.,
    174 F.R.D. 475 (S.D. Cal. 1997) ..................................................... 4

JZ Buckingham Investments, LLC v. United States,
    78 Fed. Cl. 15 (Fed. Cl. Ct. 2007) .................................................. 8

Korea Supply Co. v. Lockheed Martin Corp.,
    29 Cal. 4th 1134 (2003) ........................................................... 21, 22

Kraus v. Trinity Management Servs., Inc.,
    23 Cal. 4th 116 (2000) ............................................................. 21, 22

Kraus v. Willow Park Public Golf Course,
    140 Cal. Rptr. 744, 73 Cal. App. 3d 354 (1977) .............................. 22

Mattel, Inc. v. Walking Mountain Productions,
    353 F.3d 792 (9th Cir. 2003) .......................................................... 7

Momah v. Albert Einstein Medical Center,
    164 F.R.D. 412 (E.D. Pa. 1996) ...................................................... 2

Northrop Corp. v. McDonnell Douglas Corp.,
    751 F.2d 395 (D.C. Cir. 1984) ........................................................ 8

Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.,
    292 F. Supp. 2d 923 (N.D. Ill. 2003) ......................................... 27, 28

Panola Land Buyers Ass'n v. Shuman,
    762 F.2d 1550 (11th Cir. 1985) ..................................................... 38

Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,
    6 F. Supp. 2d 859 (E.D. Mo. 1998) ........................................... 38, 41

Premium Service Corp. v. Sperry & Hutchinson Co.,
    511 F.2d 225 (9th Cir. 1975) ......................................................... 39

Southern California Housing Rights Center v. Krug,
    2006 WL. 4122148 (C.D. Cal. 2006) ......................................... 17, 28

St. Regis Paper Co. v. United States,
    368 U.S. 208 (1961) ..................................................................... 39

State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.,
    2007 WL. 2993840 (E.D.N.Y. 2007) ......................................... 30, 38

Taylor v. Polackwich,
    145 Cal. App. 3d 1014 (1983) ....................................................... 22

U.S. v. American Optical Co.,
  39 F.R.D. 580 (N.D. Cal. 1966) ........................................................... 7, 9

United States v. Abel,
  469 U.S. 45 (1984) .............................................................................. 25

Weiss v. Marchus,
  51 Cal. App. 3d 590 (1975) ................................................................ 22

Yund v. Covington Foods, Inc.,
  193 F.R.D. 582 (S.D. Ind. 2000) ........................................................ 41


**Statutes**

§ 17 U.S.C. 504(b) .................................................................................... 2

Cal. Civ. Code §§ 2223, 2224 ................................................................. 22

Cal Civ. Code §§ 2223, 2224 .................................................................. 22

Fed. R. Civ. P. 26 ................................................................................... 38

Fed. R. Civ. P. 26(B)(2)(c)(i) .................................................................. 38

Fed. R. Civ. P. 30(b)(6) .......................................................................... 16

Fed. R. Civ. P. 33(b)(4) ............................................................................ 2

Fed. R. Civ. P. 45(b) ................................................................................. 7

Fed. R. Civ. P. 45(c)(2) ............................................................................. 1

Fed. R. Civ. P. 45(d)(2) ............................................................................ 4


**Other Authorities**

4 Callmann,
  Unfair Competition and Monopolies § 14.45 (4th ed.) .......................... 21

Wright & Miller,
  Federal Practice & Procedure: Federal Rules of Evidence § 6095 ........... 25

## **Preliminary Statement**

While Mattel was negotiating the scope and produce with the subpoenaed parties, MGA blocked Mattel's efforts by moving to Quash.  Many of the subpoenaed parties stand ready to produce (nor did they join the motion to quash).  The Motion must be seen as what it is--an obstructionist tactic--and denied.  The MGA defendants and Isaac Larian seek to prevent Mattel from getting documents about the creation and development of Bratz, Isaac Larian's net worth, the acts of MGA's commercial bribery that are the basis of Mattel claims, MGA's damages claims and the value of MGA's good will and intellectual property, among others.

Defendants assert that the third parties should not have to produce documents relating to such plainly discoverable matters because defendants have already produced some responsive documents and because they might at some unspecified date in the future produce some other unidentified responsive documents. The law is clear, however, that Mattel is entitled to third-party discovery regardless of MGA's production.  MGA itself presumably agrees with that proposition, because it has served in excess of 64 subpoenas in this case seeking Mattel documents from a wide variety of third parties.  Furthermore, as to the documents sought by the subpoenas at issue here, defendants have not made any showing that they actually have in their possession the same set of documents as the third parties, let alone that defendants have produced them.

A key deposition taken only two weeks ago also demonstrates the crucial importance of third-party discovery in this case and why MGA should not be permitted to foreclose Mattel from obtaining information from third parties, even on matters that MGA claims it has produced discovery on.  At her deposition on December 28, 2007, Veronica Marlow, a third-party witness who long worked directly with Bryant and MGA, testified that she knew of at least three Mattel employees who *for years* worked

on Bratz *while they were employed by Mattel*.[1]   This was a shocking revelation. Neither MGA nor Bryant had disclosed this information, despite repeated Court Orders and despite the fact that at least one of these individuals was a co-worker of Bryant's at Mattel.   To the contrary, both Bryant and MGA gave flat denials under oath that there was any other Mattel employees knowingly involved.[2]   Yet, by defendants' reasoning here, the Court and Mattel should have been denied Ms. Marlow's plainly relevant evidence because it purportedly duplicated discovery requested of defendants.   In fact, defendants made that very argument to Judge Larson is resisting producing Ms. Marlow for deposition in the first place, to no avail.

MGA also alleges that the subpoenas here will burden third parties.   Not only is that argument unsubstantiated, but most tellingly none of the subpoenaed parties has filed a declaration or offered any specific evidence that the subpoenas actually impose an undue burden.   To the contrary, some of the subpoenaed parties were already in the process of preparing documents for production or having productive meet and confer discussions with Mattel when the MGA defendants improperly intervened with this Motion to Quash.

The Motion to Quash should be denied, and the documents sought by Mattel should be compelled.

## Statement of Facts

**Mattel Subpoenaed Documents Related to Mattel's Claims and Defenses From Third Parties**.   Mattel served document subpoenas on third parties who have documents relating to the timing of the creation of Bratz, MGA and

---

[1]   Exh. S at 288:8-289:21, 306:8-25; 307:8-308:1; 363:15-21[Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007) to the Declaration of Jon Corey ("Corey Dec."). All exhibits are to the Corey Dec. unless otherwise stated.
[2]   Exh. W at 286:25-287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")]; Exh. O at 301:2-17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.)]; Exh. X at 64-70 [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

Larian's net worth, the value of MGA's good will and its intellectual property, among other things. Mattel served subpoenas on the following parties:

   • <u>Ernst & Young and Deloitte & Touche</u>. These firms are MGA's auditors. The subpoenas to them were served on October 25, 2007 and seek: (1) documents related to MGA's annual audits and the identity of other auditors; (2) documents indicating MGA's net worth; (3) documents indicating the value of MGA's good will and intellectual property; (4) documents relating to Bratz, including documents that may shed light on the timing and creation of Bratz; and, (5) documents related to the legal dispute between Isaac Larian and his brother Farhad Larian, if any.[3]

   • <u>Wachovia</u>. Mattel served this subpoena on October 25, 2007. Wachovia lent MGA the money it used to fund the creation and/or development of Bratz.[4] Wachovia also lent over $100 million to MGA Entertainment in 2006, with its acquisition of Little Tikes.[5] Mattel's subpoena seeks documents related to: (1) the aforementioned loans; (2) the legal dispute between Isaac Larian and Farhad Larian; (3) MGA's net worth, good will, and intellectual property; (4) Bratz; and (5) this action.[6] The loan documents will contain information about the timing and creation of Bratz or any efforts by Isaac Larian or MGA to conceal Bratz' origin, creation or development. The Wachovia documents will also show the value that MGA and Larian attributed to the Bratz product early on, the timing of its creation, as well as the net worth of MGA, among other things. In addition, the Wachovia documents will show, or will be raw material that Mattel's experts can use to calculate, MGA's and Isaac Larian's net worth, and prove false Isaac Larian's claim

---

[3] Exhs. 8 [Deloitte & Touche subpoena] and 7 [Ernst & Young subpoena] to the Declaration of Amy Park (Park Dec.).
[4] Declaration of Jon D. Corey ("Corey Dec."), ¶ 7. Farhad Larian stated during his arbitration with Isaac Larian to this effect.
[5] Exh. O, at 350:9-351:14 [Tonnu Tr.].
[6] Exh. 9 [Wachovia subpoena] to the Park Dec.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

that he took no money from MGA.  Judge Larson, based on this showing, granted Mattel leave to depose Wachovia.

• <u>Wells Fargo</u>.  Wells Fargo is and has been MGA's bank during periods relevant to this action.  Mattel issued this subpoena on November 7, 2007.  It contains five requests, seeking MGA's banking and financial documents, including account information, cancelled checks, monthly and daily transactional history, and bank statements.[7]  The Wells Fargo documents also will reveal evidence of MGA's commercial bribery and other payments to Mattel employees that are alleged as predicate acts to Mattel's RICO claims.  The Wells Fargo documents are directly relevant to Mattel's damages claims, determining MGA's net worth.  These documents will also assist Mattel in defending against MGA's claims of unfair competition, including its lost profits remedy.  .

• <u>ConsumerQuest</u>.  ConsumerQuest is a marketing research firm that performed market research and analysis for MGA products, including Bratz.  MGA accused Mattel of interfering with MGA's relationship with ConsumerQuest.[8]  The ConsumerQuest documents will provide information concerning the timing and creation of Bratz and other products at issue in the case, including those Bratz that MGA accuses Mattel of infringing.  Mattel seeks documents related to: (1) Bratz and other products involved in this action; (2) consumer research and marketing work done regarding other MGA products underlying the parties' claims; and (3) communications with MGA, Isaac Larian, and other parties relevant to this action, such as Mr. Bryant or other former Mattel employees and vendors.[9]

• <u>Moss Adams</u>.  Moss Adams is and has been Isaac Larian's accountant during the relevant period.  Mattel issued this subpoena on December 14, 2007.  It

---

[7]   Exh. 11 [Wells Fargo Subpoena] to the Park Dec.  Four of the requests are limited to documents from January 1, 1999 to the present.
[8]   Exh. 1, at 20:24-21:8; 30:20-22; 31:10-22 [MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s First Set of Interrogatories re: Claims of Unfair Competition] to the Declaration of Michael Zeller (Zeller Dec.).
[9]   Exh. 10 [ConsumerQuest Subpoena] to the Park Dec.

1   seeks:  (1) accounting records, tax records, and schedules for MGA, Larian, Larian's

2   trusts (discussed below) and Farhad Larian; (2) documents indicating MGA and

3   Larian's net worth; (3) documents related to the value of MGA's intellectual

4   property and good will; (4) documents related to Bratz and this action; (5) evidence

5   of payments from MGA or Larian to Bryant and other Mattel employees; and (6)

6   Larian's involvement with other trusts or institutions in which he has an interest.

7   These documents are relevant to Mattel's damages claims, among other things, and

8   are particularly important since neither Larian nor MGA have produced any

9   documents concerning Larian's net worth or use of proceeds from MGA.  Notably,

10  based on a similar showing Judge Larson granted Mattel leave to depose Moss

11  Adams.

12          • <u>Isaac Larian Trusts</u>.  Larian holds his share in MGA through trusts.[10]

13  Between 2001 and 2006, MGA has distributed approximately to its shareholders.[11]

14  These subpoenas seek: (1) documents related to the trusts' organization, including

15  the identities of its trustees and beneficiaries; (2) the Trusts' tax records; (3)

16  documents indicating the trusts' assets; and (4) information related to other trusts

17  within which Larian has an interest.  Again, these documents are directly relevant to

18  Larian's net worth and MGA's net worth for purposes of punitive damages.

19          **Mattel Meets and Confers With The Third Parties, Some Of**

20  **Whom Had Already Gathered Responsive Documents.**  Before defendants filed

21  their Motion to Quash, Mattel worked with the third parties to address any questions

22  they had and to facilitate the production of documents.

23

24  [10]   Exh. O, at 49:3-50:9. [Tunno Tr.].
        [11]   Exhs. 46-48 to the Declaration of Bernard C. Shek.  Before serving the
25  subpoenas on the Larian Trusts, Mattel, attempted to confirm their names with
    counsel for MGA and Larian, but were rebuffed.  As a result, Mattel obtained their
26  names from public sources, but were told by counsel for MGA and Larian that the
    names were incorrect.  Since then, Mattel has obtained additional information about
27  their names and served new, though identical, subpoenas with revised names.  Corey
    Dec., ¶ 4.  However, according to MGA's designee, it appears that two of those new
28  names were also in error.  Exh. GG, at 78:10-22 [Rough Transcript of January 17,
    2008 Deposition of Tonnu].

1        Mattel met and conferred with counsel for Ernst & Young, John Baran.

2    Mr. Baran stated that since receiving Mattel's document subpoena, Ernst & Young

3    was prepared to produce documents by diligently searching for and gathering

4    approximately 60,000 pages of documents that Ernst & Young believes to be

5    responsive to Mattel's requests.[12]  In addition to offering to pay for copying, Mattel

6    offered to send a paralegal and associate to Ernst & Young to review these

7    documents in order to narrow the production and reduce costs further.[13]

8        Further, on December 20, 2007, Mattel met and conferred with counsel

9    for Wachovia, Neal Potischman.  During that call, Mr. Potischman stated that

10    Wachovia had three concerns with Mattel's requests: (1) Wachovia was opposed to

11    producing documents regarding Wachovia's underwriting standards, policies or

12    procedures; (2) Wachovia was opposed to producing documents regarding

13    Wachovia's syndication standards, policies or procedures; and (3) Wachovia

14    asserted that the timeframe set forth in Mattel's requests, 1999 to present, was too

15    expansive and requested that it be narrowed.[14]  In response to Wachovia's concerns,

16    Mattel agreed not to seek documents regarding underwriting or syndication, and

17    Mattel further agreed to tailor the time period encompassed by its document requests

18    based on the representation by Wachovia's counsel that MGA had only two loans to

19    MGA.[15]  Mattel also provided examples of the precise documents sought by

20    Mattel.[16]

21        Additionally, Request No. 3 of the Wachovia subpoena seeks the three

22    boxes of the loan documents referenced in a November 15, 2005 letter from

23    Wachovia.[17]  During Mattel's meet and confer with Wachovia, Mr. Potischman

24

---

25    [12]  Corey Dec., ¶ 7.  Exh. C [letter from Jon Corey to John Baran dated December 20, 2007].
     [13]  Id.

26    [14]  Corey Dec., ¶ 8.  Exh. D [letter from Jon Corey to Neal Potischman dated December 24, 2007].

27    [15]  Id.

28    [16]  Id.
     [17]  Exh. 9, Attach. B [Wachovia Subpoena] to the Park Dec.

1   stated that Wachovia had already searched for and located these three boxes of

2   documents.  Mr. Potischman concluded that he would discuss Mattel's requests with

3   Wachovia and let Mattel know if this narrowing and clarification were amenable to

4   Wachovia.[18]

5          Although the holidays impaired Mattel's ability to meet and confer

6   further with the other third-parties, some of them have also expressed their ability to

7   produce responsive documents.  Counsel for Wells Fargo expressed his intent to

8   meet and confer with Mattel "in order to address" Wells Fargo's concerns.[19]  Since

9   then, Mattel has discussed the subpoena with Albert Boro, counsel for Wells Fargo,

10  who stated that Wells Fargo was ready to start pulling the records at any time, but

11  did not because MGA filed the Motion to Quash.[20]

12         Although stating its objections (which were made at the "direction" of

13  MGA and Larian), the President of Moss Adams stated that Moss Adams "was

14  prepared to produce the records as agreed by the parties, or ordered by the court."[21]

15         Notably, no independent representative of the Larian Trusts has met

16  and conferred regarding their subpoenas.  Rather, MGA and Larian's lawyers in this

17  action have acted on their behalf.[22]

18                                    **Argument**

19  **I.    DEFENDANTS' MOTION TO QUASH SHOULD BE DENIED**

20         **BECAUSE THE DOCUMENTS SOUGHT MAY BE PRODUCED**

21         **WITH MINIMAL BURDEN**

22         The <u>Federal Rules of Civil Procedure</u> obligates third parties to produce

23  documents responsive to a subpoena that a party serves on them.  <u>Fed. R. Civ. P.</u>

24  <u>45</u>(b), (d).  Neither MGA nor the third parties dispute this.  If the documents are

25

26  [18]  Corey Dec., ¶ 9.  Exh. D [letter from Jon Corey to Neal Potischman dated December 24, 2007].
27  [19]  Exh. 19 [Wells Fargo's Objections to Subpoena], to the Park Dec.
    [20]  Declaration of B. Dylan Proctor, ¶ 2.
28  [21]  Exh. 20 [Moss Adams' Objections to Subpoena], to the Park Dec.
    [22]  Corey Dec., ¶ 6.

1  relevant and there is good cause for their production, the subpoena is enforced

2  unless the documents are privileged or the subpoena is unreasonable, oppressive,

3  annoying, or embarrassing.  U.S. v. American Optical Co., 39 F.R.D. 580, 583 (N.D.

4  Cal. 1966).  Many of the subpoenaed parties have documents ready for inspection

5  and/or production.

6          As the party moving to quash, MGA bears the initial burden of

7  persuasion to demonstrate that Mattel's document requests are improper.  See Green

8  v. Baca, 226 F.R.D. 624, 653 (C.D. Cal. 2005).[23]  The burden on the party moving

9  to quash a subpoena is a "heavy one."  Heat and Control, Inc. v. Hester Industries,

10  Inc., 785 F.2d 1017, 1024-25 (Fed. Cir. 1986) (noting that "the factors required to be

11  balanced by the trial court in determining the propriety of a subpoena are the

12  relevance of the discovery sought, the requesting party's need, and the potential

13  hardship to the party subject to the subpoena.").  Here, MGA and Larian have failed

14  to meet their burden.

15          In addition, a party claiming that production of requested documents is

16  unduly burdensome bears the burden of proving up the objection.  Northrop Corp. v.

17  McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984) (reversing district

18  court's decision quashing subpoena).  The party cannot rest on conclusory

19  assertions.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966) (reversing the

20  quashing of a subpoena because of lack of specific evidence of burden).  "The party

21  must provide specific and compelling proof that the burden is undue."  JZ

22  Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25 (Fed. Cl. Ct.

23  2007) (denying motion to quash).

24          Here, MGA and Isaac Larian offer no evidence--such as a declaration

25  or testimony--regarding the time, cost, or burden involved in responding to Mattel's

26  ─────────────────

27  [23]  With no evidence of impropriety in the subpoenas at issue here, MGA feebly resorts to resurrecting a completely unrelated case to argue that Mattel somehow must have done something wrong in this case.  See Mattel, Inc. v. Walking

28  (footnote continued)

1  subpoenas.  Indeed, *their* complaints about alleged burden are irrelevant.  "The

2  burden of showing that a subpoena is unreasonable and oppressive *is upon the party*

3  *to whom it is directed*."  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966)

4  (emphasis added).

5          There is also no basis for an argument that the subpoenas unduly

6  burden the third parties.  Some third parties have already collected and stand ready

7  to produce documents.  For example, Ernst & Young has searched for and gathered

8  60,000 pages of documents in response to Mattel's subpoena.[24]  Notably, the only

9  mention of burden during Mattel's meet and confer discussions with Ernst & Young

10  related to the burden upon Mattel of incurring substantial copying costs—not burden

11  upon Ernst & Young.[25]

12          In addition, in a further effort to reduce any inconvenience to the third-

13  parties, Mattel will reimburse the third parties for the costs incurred in copying the

14  responsive documents.  However, even if Mattel was unwilling to pay for the third

15  parties' copying costs (which is not an issue here since Mattel will reimburse them),

16  and even if the third parties did not already have separated case files, a claim that

17  compliance with Mattel's requests "would necessitate the examination of large

18  quantities of documents, requiring a great deal of time and expense . . . is not alone a

19  sufficient reason for refusing discovery which is otherwise appropriate . . . ."

20  American Optical Co., 39 F.R.D. 580, 586-587 (N.D. Cal. 1966) (denying motion to

21  quash where documents sought covered a twelve year period).  And, in an effort to

22  further reduce burden upon the third-parties, Mattel has offered to have its own

23  paralegal and counsel inspect documents gathered thus far by the third-party

24  financial institutions with an agreement that the inspection will not result in

25

26  ───────────────────────
27  Mountain Productions, 353 F.3d 792 (9th Cir. 2003).  That case, involving different facts, issues and discovery requests, has no bearing on the issues presented here.
[24]  Corey Dec., ¶ 7. Exh. C [letter from Jon Corey to John Baran dated

28  December 20, 2007].
[25]  Id.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1  waiver.[26]  Given these concessions and the applicable case law, the raw assertions of
2  undue burden are meritless.

3        During meetings with Mattel, Wachovia's concerns regarding burden
4  were further addressed by Mattel agreeing to tailor the timeframe and by Mattel
5  providing examples to Wachovia of the types of documents that it seeks.[27]  In short,
6  prior to MGA and Larian's efforts to obstruct and to prevent Mattel from obtaining
7  this information, Mattel, the financial institutions and the auditors were well on their
8  way to a successful resolution of Mattel's document subpoenas, at least with respect
9  to the third parties not controlled by MGA and Larian.

10       It is very unlikely that the remaining subpoenaed entities Moss Adams
11  or the Larian trusts have boxes and boxes of documents that would be burdensome
12  to collect and produce.  None of them have provided any declaration or evidence
13  that the burden on them would be heavy, much less undue in light of the relevance
14  of the documents requested.  Moss Adams simply sent a two-page letter listing some
15  objections "as directed" by MGA with a conclusory assertion that the subpoena was
16  "unduly broad and burdensome."  Despite the objection, Moss Adams stated that it
17  "is prepared to produce the records as agreed to by the parties, or as ordered by the
18  court."[28]  The Larian trusts themselves have not even objected; only MGA and
19  Larian, though they lack standing to assert any such objections as to the trusts.

20       Wells Fargo also has not provided any declaration establishing that the
21  burden placed on it by the subpoena is unduly burdensome.  Moreover, in its letter
22  stating, among other objections, its conclusory assertion that the subpoena imposes
23  an "unfair financial burden," it also stated that it was "willing to meet and confer
24  with you about narrowing of the scope and breadth of the subpoena and the timing

25
26  _____
   [26]  Corey Dec., ¶ 7.  Exh. C [letter from Jon Corey to John Baran dated
27  December 20, 2007].
   [27]  Corey Dec., ¶ 8.  Exh. D [letter from Jon Corey to Neal Potischman dated
28  December 24, 2007].
   [28]  Exh. 20 [Moss Adams Objection to Subpoena] to the Park Dec.

                                    MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1  of production."[29]  Since then, Wells Fargo and counsel for Mattel have met and

2  conferred about the document requests and Wells Fargo has stated that it is ready to

3  start pulling responsive documents.[30]

4          Finally, ConsumerQuest likewise failed to serve a declaration or any

5  other evidence regarding the burden placed on it by the subpoena.  It simply asserts

6  that the time and expense would be "enormous" with no further elaboration.[31]  As

7  discussed below, the burden is not undue in light of the evidence's importance.

8  MGA placed ConsumerQuest at issue by making vague, sweeping allegations that

9  Mattel supposedly interfered with MGA's relationship.  Mattel needs the evidence

10  sought to defend itself, against MGA's accusation

11          Having failed to provide specific evidence of undue burden, and given

12  the lack of any such evidence being provided by the subpoenaed parties, the Court

13  should reject MGA's and Larian's argument that the subpoenas are unduly

14  burdensome.

15  II.    **MATTEL'S SUBPOENAS SEEK DOCUMENTS THAT ARE**

16        **UNQUESTIONABLY RELEVANT TO THE PARTIES' CLAIMS AND**

17        **DEFENSES**

18          Even though the Discovery Master has found documents related to

19  Bratz, to MGA's revenues, and to the Larian v. Larian disputes to be relevant to the

20  claims and defenses in this action, MGA asks the Discovery Master to quash the

21  subpoenas because the majority of the documents sought by the subpoenas--related

22  to Bratz, to MGA's revenues and the Larian v. Larian disputes--purportedly are not

23  relevant to the claims and defenses in this case.  MGA's efforts to block Mattel from

24  obtaining relevant discovery should be rejected.

25

26

27  ────────────────────

    [29]  Exh. 19 [Wells Fargo Objection to Subpoena] to the Park Dec.

    [30]  Proctor Dec., ¶ 2.

28  [31]  Exh. 18, at 155 [ConsumerQuest Objection to Subpoena] to the Park Dec.

A.      **Documents Related To Bratz Go To The Very Heart Of This Case**

Many of Mattel's requests seek documents directly related to Bratz, which is at the center of this case, or its creator, Mr. Bryant.  The relevancy of these requests is incontestable.[32]  Recognizing the undeniable relevance of such documents, MGA has recently argued that subpoenas to third parties possessing documents related to the Larian v. Larian disputes must be limited to "Bratz."[33] The "Bratz" requests include:

1.      **ConsumerQuest Subpoena:**

•      ALL DOCUMENTS REFERRING OR RELATING TO BRATZ.  [Request No. 1].

•  All DOCUMENTS REFERRING OR RELATING TO any study, survey, focus group, research group or other work or services for MGA relating to BRATZ, including without limitation all tangible items relating thereto and all photographs, videos or other images depicting any such tangible items and all viability reports relating thereto. [Request No. 3].

•  All DOCUMENTS, including without limitation COMMUNICATIONS, and all tangible things REFERRING OR RELATING TO BRATZ prior to December 31, 2002. [Request No. 5].

•  All COMMUNICATIONS with MGA, ISAAC LARIAN, FARHAD LARIAN or BRYANT REFERRING OR RELATING TO BRYANT.  [Request No. 11].

•  All contracts or agreements or proposed or requested contracts or agreements with MGA, ISAAC LARIAN, FARHAD LARIAN or BRYANT since January 1, 1998. [Request No. 12].[34]

---

[32]    Exh. N, at 11:1-2 [Court's August 9, 2006 Order Denying Appointment of Expert Witnesses] ("At its heart, this case asks the question:  Who owns the rights to the Bratz dolls?"); Exh. Q, at 8:8-21 [Discovery Master's May 15, 2007 Order Granting Mattel's Motion to Compel].

[33]    See MGA's Memorandum of Points and Authorities in Opposition to Mattel's Motion to Compel Non-Party Kaye Scholer to Produce Documents, dated December 27, 2007, at 11-12.

[34]    Exh. 10 [ConsumerQuest Subpoena] to the Park Dec.

### 2.      Ernst & Young and Deloitte & Touche Subpoenas

• All documents relating to BRATZ that you have obtained from MGA or otherwise since January 1, 1999. [Request No. 4].[35]

### 3.      Wachovia Subpoenas

• All documents relating to BRATZ, including without limitation those you have obtained from MGA, since January 1, 1999. [Request No. 8].[36]

## B.      Documents Related To The Timing of The Creation of Bratz Are Extremely Relevant

Other documents that do not explicitly refer to Bratz are nonetheless highly relevant to it. A central dispute in this litigation is the timing of the creation of Bratz, including when MGA and Mr. Bryant began developing Bratz.[37] It is undisputed that during certain time periods Mr. Bryant was an employee of Mattel, and that any designs or development work he did while a Mattel employee are the property of Mattel. MGA and Larian contend that Bratz was developed at times when Mr. Bryant was not employed by Mattel. Many of the requests seek documents that are probative of when Bratz was conceived and developed. For example:

Request Nos. 13-16 of the Moss Adams subpoena, and Request No. 1 of the Wachovia subpoena, seek documents related to payments to people working on Bratz, including Mr. Bryant and other current and former Mattel employees.[38] When the payments to Mattel employees and vendors were made is relevant to the timing of the development of Bratz, which is at the crux of this case.

---

[35]   Exhs. 7 [Ernst & Young Subpoena] and 8 [Deloitte & Touche Subpoena] to the Park Dec.
[36]   Exh. 9 to the Park Dec.
[37]   Exh. N, at 11:1-2 [Court's August 9, 2006 Order Denying Appointment of Expert Witnesses] ("At its heart, this case asks the question: Who owns the rights to the Bratz dolls?"); Exh. Q, at 8:8-21 [Discovery Master's May 15, 2007 Order Granting Mattel's Motion to Compel].
[38]   Exh. 12 [Moss Adams Subpoena] to the Park Dec.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1    To whom the payments were made is also directly relevant.  Mattel is

2  certainly not required to take MGA and Larian's word that Mr. Bryant was the only

3  Mattel employee they were bribing.  At her deposition on December 28, 2007,

4  Veronica Marlow, a third-party witness who long worked directly with Bryant and

5  MGA, testified that she knew of at least three Mattel employees who *for years*

6  worked on Bratz *while they were employed by Mattel*.[39]  Notably, neither MGA nor

7  Bryant had disclosed this information, despite repeated Court Orders and despite the

8  fact that at least one of these individuals was a co-worker of Bryant's at Mattel.  To

9  the contrary, both Bryant and MGA gave flat denials under oath that there was any

10  other Mattel employees knowingly involved.[40]  To ascertain the full scope of MGA's

11  wrong doing, Mattel is entitled to discovery as to all other Mattel employees who

12  received payments from or on behalf of MGA and/or Larian during their

13  employment with Mattel.  Moreover, payments to Mattel vendors will also be

14  probative of MGA's misconduct, and potentially identify the Mattel employees who

15  may have been complicit in the wrongdoing.

16    Request Nos. 2-5 of Mattel's subpoena to Wachovia seek documents

17  related to Wachovia's loans to MGA.[41]  MGA used the first, which MGA applied for

18  and was funded in 1999 or 2000,[42] for Bratz development costs.  Isaac Larian

19  testified (in another case) that MGA used a line of credit with Congress Financial to

20

21

---

22    [39]    Exh. S at 288:8-289:21, 306:8-25; 307:8-308:1; 363:15-21[Deposition
23  Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007] to the
      Declaration of Jon Corey ("Corey Dec.").  All exhibits are to the Corey Dec. unless
24  otherwise stated.
          [40]    Exh. W at 286:25-287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")];
25  Exh. O at 301:2-17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.")]; Exh. X at 64-70
      [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].
26        [41]    Exh. 9 [Wachovia Subpoena] to the Park Dec.
          [42]    Exh. D [letter from Jon Corey to Neal Potischman dated December 24, 2007].
27  Mattel is currently aware of two loans made by Wachovia to MGA.  Corey Dec., ¶
      7.  Wachovia's counsel, however, is still in the process of confirming that these are
28  the only two loans.  To the extent that additional loans made by Wachovia to MGA
      exist, Mattel reserves its right to seek documents related to those additional loans.

07209/2339499.2

-14-

1  fund the development of Bratz.[43]  Congress Financial then merged with Wachovia

2  Capital Finance.[44]  The Wachovia subpoena defines "YOU" as Wachovia

3  Corporation and all its affiliates and predecessors-in-interest and specifically

4  includes "lines of credit."[45]  Notably, Judge Larson has recognized the relevance of

5  the information and granted Mattel leave to take the deposition of Wachovia.[46]

6  Accordingly, Wachovia should produce the documents related to MGA's financing

7  of the development of Bratz.

8            Both loan documents and supporting loan documentation are relevant

9  because they are likely to contain information regarding when MGA asserts that the

10 Bratz design was first conceived, the stage of development of Bratz at the time of

11 the loan application or funding, and projections by MGA regarding potential

12 revenues attributable to Bratz and related products.[47]  These requests include:

13            • To the extent not included in YOUR production
              responsive to Request No. 1, all documents that MGA or
14            any other person provided to YOU for purposes of
              entering into any loan agreement between YOU and
15            MGA, including without limitation any line of credit or
              other financing arrangement or agreement, at any time
16            since January 1, 1999, including without limitation
              accounting records, tax returns, pro formas, expense
17            records, financial projections, budgets or business plans.
              [Request No. 2].

18            • To the extent not included in YOUR production
19            responsive to Request Nos. 1-2, all documents that were in
              the "three (3) boxes of loan documents" that YOU refer to
20            in YOUR November 15, 2005 letter to Robert G. Wilson,
              Esq., letter which is included herein as Attachment "B."
21            [Request No. 3].

22

23  [43]   Exh. Y [December 15, 2005 Isaac Larian Deposition Transcript from Art
Attacks Ink, LLC v. MGA Entertainment, Inc., C.D. Cal. Case No. 04-1035-JJ.
24  [44]   Exh. Z [Wachovia/Congress Financial Press Release].
    [45]   Exh. 9 [Wachovia Subpoena] to the Park Dec.
25  [46]   Exh. BB [January 7, 2007 Order]; Exh. DD [Mattel's Motion for Leave to
Take Additional Discovery].
26  [47]   MGA applied for and received its second loan from Wachovia in 2006 in
order to fund MGA's acquisition of Little Tykes.  The loans documents from both
27  loans are relevant to demonstrate the value of assets pledged by MGA as collateral
for the loans—documents which go to show MGA's net worth and documents which
28  MGA has thus far not produced to Mattel.  Exh. O, at 322:19-325:6; 326:17-327:6;
333:3-7; 334:12-15 [Tonnu Tr].

                                        MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

- To the extent not included in YOUR production responsive to Request Nos. 1-3, all documents relating to any loan agreement entered into by MGA, or sought or requested by MGA, during the time period January 1, 1999 and December 31, 2000, inclusive.  [Request No. 4].

- To the extent not included in YOUR production responsive to Request Nos. 1-4, all communications between YOU and MGA during the time period January 1, 1999 and December 31, 2000, inclusive.  [Request No. 5].

Mattel's Request No. 12 to Wachovia seeks "Documents sufficient to identify any other MGA lender or person who extended or was requested to extend a line of credit to MGA since January 1, 1998."[48]  Mattel is entitled to inquire about additional sources of funding for Bratz and Bratz related products.  These documents may contain information similar to Wachovia's loan documents, such as when MGA asserts that the Bratz design was first conceived, the stage of development of Bratz at the time of the loan application, projections by MGA regarding potential revenues attributable to Bratz and Bratz related products, and the net worth of MGA at the time of the loan or loan funding[49]  Recognizing the relevance of Wachovia information, Judge Larson ruled that Mattel could depose Wachovia.  Although requested and compelled, MGA has produced no Wachovia documents.[50]

---

[48]   Exh. 9 [Wachovia Subpoena] to the Park Dec.
[49]   MGA does not dispute the relevance of Mattel's Requests Nos. 8 and 9 to Wachovia.  See generally MGA's Separate Statement in support of Motion to Quash.  Further, MGA does not request that the Court quash Mattel's Request No. 11 to Wachovia, which seeks documents sufficient to show Wachovia's preservation, retention or destruction policies applicable to documents sought in Mattel's other requests to Wachovia.  MGA has, therefore, conceded that Mattel is entitled to these documents.
[50]   Exh. BB [January 7, 2008 Order].

-16-
07209/2339499.2

C.   **Documents Related to the Legal Dispute Between Isaac Larian and Farhad Larian are Relevant To the Development of Bratz and the Defendants' Financial Condition**

The third-party subpoenas also seek documents related to Isaac Larian's disputes with Farhad Larian.[51]  Farhard Larian was an executive with MGA who has been involved in various disputes related to MGA and his brother, Isaac Larian.  In fact, the Discovery Master has already ruled that legal disputes between Isaac Larian and his brother Farhad Larian are relevant because they involve, among other matters, the conception, creation and development of Bratz, and allegations that Isaac Larian concealed the conception, creation, and development of Bratz.  In particular, in a prior order the Discovery Master noted that this issue "appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian" and that in those proceedings "Farhad Larian alleged that Isaac Larian concealed from him that MGA was developing Bratz by early 2000."[52]  Such requests include:

- All documents relating to the FARHAD LARIAN DISPUTES, including without limitation any discovery requests received by YOU in connection therewith and any communications between YOU and counsel for Farhad Larian or counsel for Isaac Larian.  [Wachovia, Request No. 10].

- All documents relating to the FARHAD LARIAN DISPUTES, including without limitation any discovery requests received by YOU in connection therewith and any communications between YOU and counsel for Farhad Larian or counsel for Isaac Larian.  [Ernst & Young and Deloitte & Touche, Requests No. 6].

- All DOCUMENTS RELATING TO the FARHAD LARIAN DISPUTES, including without limitation any discovery requests received by YOU in connection therewith and any communications between YOU and counsel for FARHAD LARIAN or counsel for ISAAC LARIAN.  [Moss Adams, Request No. 11].

---

[51] Exhs. 7 [Ernst & Young Subpoena] and 8 [Deloitte & Touche] to the Park Dec.

[52] Exh. Q, at 10-11 [Discovery Master's Order dated May 15, 2007].

-17-

07209/2339499.2

• All DOCUMENTS, including without limitation all COMMUNICATIONS, REFERRING OR RELATING TO any lawsuit, arbitration, legal action or other dispute between ISAAC LARIAN and FARHAD LARIAN. [ConsumerQuest, Request No. 14].

• All DOCUMENTS RELATING TO the FARHAD LARIAN DISPUTES, including without limitation any discovery requests received by YOU in connection therewith and any communications between YOU and counsel for FARHAD LARIAN or counsel for ISAAC LARIAN. [Larian Trusts, Request No. 12].

**D.** **Documents Related To MGA's and Isaac Larian's Net Worth Are Undeniably Relevant**

**1.** **Mattel is Entitled to Documents Showing or Related to MGA's and Larian's Net Worth**

Documents relevant to MGA and Isaac Larian's net worth, including the value of MGA's good will and intellectual property, are necessary for Mattel's experts to determine the damages that accrued to Mattel as a result of MGA's infringement of Mattel's copyrights, and for punitive damages and to defend against MGA's as yet unspecified damages claims.[53]  Both the Discovery Master and Judge Larson have previously ruled that Mattel is entitled to evidence related to MGA's net worth:  "That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6).  Therefore, the Discovery Master's ruling on

---

[53]  Another reason that the financial and loan documents sought by the third-party subpoenas is relevant is because it bears on MGA and Larian's credibility. Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc., 175 F.R.D. 646, 650 (C.D. Cal. 1997) (information is relevant and discoverable if it relates to "the credibility of any witness").  For example, Mattel's Request Nos. 1-5 and 9-10 in its document subpoena to Wachovia seek information regarding the quality of the financial information provided by Isaac Larian to these financial institutions.  As a lending institution considering whether to lend substantial sums of money to MGA, Wachovia no doubt scrutinized the financial and related information provided by MGA.  To the extent Wachovia questioned or had concerns about the information provided, these documents may bear on MGA's credibility.  Similarly, MGA's auditors, Ernst & Young and Deloitte & Touche, had a duty to scrutinize the information provided to them by MGA or Mr. Larian.  If these financial institutions questioned the sufficiency or accuracy of any such information in the course of their assessment, then this would be relevant to MGA or Mr. Larian's credibility.

1   this issue is not contrary to law."[54]  See, e.g., Hilao v. Estate of Marcos, 103 F.3d

2   767, 781-82 & n. 7 (9th Cir. 1996) (approved a jury's discretion to consider financial

3   condition as one relevant factor in awarding punitive damages); Southern California

4   Housing Rights Center v. Krug, 2006 WL 4122148, *4 (C.D. Cal. 2006) ("When a

5   punitive damages claim has been asserted, a majority of federal courts permit

6   pretrial discovery of financial information about defendants without requiring the

7   plaintiff to establish a prima facie case on the issue of punitive damages.").  Here,

8   MGA has freed Mattel to go to third parties because MGA's designee on MGA's net

9   worth testified that MGA did not calculate it, or MGA's good will, or the value of its

10  intellectual property, including Bratz.[55]

### 2.   Financial Records Concerning MGA

12          Ernst & Young is and Deloitte & Touche was MGA's auditor.[56]

13  Request Nos. 2 and 3 seek "all documents indicating or calculating MGA's net

14  worth" and "all documents indicating or calculating the value of MGA's intellectual

15  property or goodwill."  Request No. 1 seeks information regarding MGA's annual

16  audits.[57]  Further, Request No. 8 seeks documents sufficient to identify MGA's other

17  auditors since 1999.[58]  Mattel is entitled to know what other companies served as

18  MGA's auditors so that Mattel may obtain additional financial documents related to

19  Bratz, Bratz related products, and MGA's finances to include the value of MGA's

20

21

22  [54]  Exh. AA at 5 [July 2, 2007 Order].
    [55]  Exh. O [Tonnu Tr. 322:19-325:6; 326:17-327:6; 333:3-7; 334:12-15].
23  [56]  Mattel's Request Nos. 1-3 to Ernst & Young and Deloitte & Touche seek
    MGA financial documents, such as tax returns, payroll records, financial projections
24  and pro formas, as well as documents that show the value of MGA's net worth,
    intellectual property and goodwill.  Exhs. 7 [Ernst & Young Subpoena] and 8
25  [Deloitte & Touche Subpoena] to the Park Dec.
    [57]  "All documents constituting or relating to MGA's annual audits, including
26  without limitation accounting records, audit programs, audit reports and drafts
    thereof, tax returns, work papers, worksheets, payroll records, financial projections,
27  pro formas and budgets, from the period beginning January 1, 1999 to the present."
    [Requests No. 1].
28  [58]  Exhs. 7 [Ernst & Young Subpoena] and 8 [Deloitte & Touche Subpoena] to
    the Park Dec.

1 net worth, goodwill and intellectual property.[59]  Request Nos. 6-7 to Wachovia

2 likewise seek documents directly related to the value of MGA's net worth,

3 intellectual property and goodwill.[60] These Requests seek:

> • To the extent not included in YOUR production responsive to Request Nos. 1-5, all documents indicating or showing a calculation of MGA's net worth or value. [Request No. 6].

> • To the extent not included in YOUR production responsive to Request Nos. 1-6, all documents indicating or calculating the value of MGA's intellectual property or goodwill.  [Request No. 7].

9 Mattel's Request No. 12 to Wachovia seeks "Documents sufficient to

10 identify any other MGA lender or person who extended or was requested to extend a

11 line of credit to MGA since January 1, 1998."  Such additional lenders that Mattel is

12 not yet aware of may provide information that MGA has not and will not produce to

13 Mattel, such as MGA's net worth, including the value of its goodwill and intellectual

14 property (which are discussed below in more detail).  These documents are,

15 therefore, highly relevant.

16 ### 3.    **Financial Records Concerning Isaac Larian**

17 Moss Adams is Isaac Larian's tax accountant.  As such, it possesses

18 documents highly relevant to Larian's net worth.  For example, Request Nos. 1

19 through 3 seek MGA, Isaac Larian, and Farhad Larian's accounting records, tax

20 returns, and related documents.  For another example, Request No. 1 seeks, "All

21 DOCUMENTS RELATING TO MGA, including without limitation accounting

22 records, tax returns and schedules (including without limitation Form 1040, Form

23 1099, Form 1120, Schedule E or Schedule K-1) and drafts thereof, work papers,

24

25

---

26 [59]   MGA does not request that the Court quash Mattel's Request No. 7 to Ernst & Young and Deloitte & Touche, which seeks documents sufficient to show their

27 preservation, retention or destruction policies applicable to documents sought in Mattel's other requests to these auditors.  MGA has, therefore, conceded that Mattel

28 is entitled to these documents.
[60]   Exh. 9 [Wachovia Subpoena] to the Park Dec.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1    worksheets, payroll records, financial statements (audited and unaudited), pro

2    formas and budgets from the period beginning January 1, 1999 to the present."

3                Request Nos. 4 and 5 seek the same kinds of documents about the

4    Larian Trusts.  For example, Request No. 4 seeks, "All DOCUMENTS RELATING

5    TO the ISAAC AND ANGELA LARIAN TRUST, including without limitation

6    accounting records, tax returns and schedules (including without limitation Form

7    1040, Form 1099, Form 1120, Schedule E and Schedule K-1) and drafts thereof, W-

8    2s, work papers, worksheets, payroll records, financial statements (audited and

9    unaudited), pro formas, budgets, account information and account statements from

10   the period beginning January 1, 1999 to the present."  Notably, the Court has

11   recognized the relevance of the information in Moss Adams' possession, having

12   granted leave to Mattel to take the deposition of Moss Adams.[61]

13               The subpoenas served on the Larian trusts also seek information

14   relevant to Isaac Larian's net worth.  Larian argues that these documents should not

15   be produced because "how Larian spent or invested his money" is "irrelevant to the

16   party's claims and defenses."[62]  That is exactly wrong.  Isaac Larian's investments

17   are what make up his net worth, a subject both the Discovery Master and Judge

18   Larson found to be within the bounds of discovery.  Further, for purposes of

19   calculating net worth for punitive damages, Mattel is entitled to add back what

20   Larian transferred away during the period of wrongdoing.  In other words, neither

21   Isaac Larian or any other person can deflate net worth by transferring away their

22   assets.  The Isaac and Angela Larian Trust, the Isaac Larian Annuity Trust, Isaac

23   and Angela Larian Family Trust, Isaac Larian and Angela Larian Trust, and Isaac E.

24   Larian Qualified Annuity Trust 2004 (the "Larian trusts"), as either sources of

25   income or shelter for Larian assets, are obviously relevant to establish Larian's net

26   worth.

27

28   [61]  Exh. BB [January 7, 2007 Order].
     [62]  Mt. at 20:3-9.

-21-

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1         Additionally, Mattel has learned that Larian holds substantial amount

2 of MGA stock through a trust or trusts, but he and his counsel have not cooperated

3 in identifying specifically which trusts hold that stock.[63]  Mattel understands that

4 MGA has transferred approximately $500 million in dividends to its shareholders,

5 which include Larian and/or some or all of the Larian trusts.[64]  That distribution

6 must be accounted for.  Request Nos. 1, 4, and 5, request documents regarding the

7 formation of the trust, as well the identities of its trustees and beneficiaries.[65]  This

8 would establish MGA and Larian's relationship with the trusts.  Request Nos. 2 and

9 3 seek information regarding tax returns, tax liability, and related documents.[66]

10 Request Nos. 6 and 7 seek documents reflecting the Larian trusts' disbursements and

11 assets.  Such documents would indicate the amounts of money Larian may have

12 received, as well as the Larian trusts' involvement in any work on Bratz or other

13 MGA products.

---

[63] Exh. O, at 49:3-51:24; 54:17-55:8 [Tonnu Tr.]; Corey Dec., ¶ 4.

[64] Exh. P [Audited Financial Statements].

[65]    • All of YOUR formation DOCUMENTS, and drafts thereof.  [Requests No. 1].

   • DOCUMENTS sufficient to identify each of YOUR trustees from the period beginning January 1, 1999 to the present.  [Request No. 4].

   • DOCUMENTS sufficient to identify each of YOUR beneficiaries from the period beginning January 1, 1999 to the present.  [Request No. 5].

[66]    • All of YOUR tax returns and schedules, including without limitation Forms 1041 and 8453F, and Schedules C, C-EZ, D, E, F and K-1, and drafts thereof, from the period beginning January 1, 1999 to the present.  [Request No. 2].

   • To the extent not included in YOUR response to Request No. 2, all DOCUMENTS relating to or reflecting YOUR tax liabilities from the period beginning January 1, 1999 to the present.  [Request No. 3].

E.   **The Documents Sought Are Also Relevant to Mattel's Disgorgement Claim**

One remedy Mattel seeks is disgorgement of all amounts wrongfully obtained.  Mattel may also be entitled to damages for lost profits pursuant to its disgorgement theory of damages.  The disgorgement remedy also provides for the imposition of constructive trusts to recover the ill-gotten gains of MGA and Isaac Larian that have been transferred to other parties.  For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA and Isaac Larian, regardless of the manner in which it was transferred.[67]  Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian for which there was no compensation during the period of the alleged wrongful conduct.

It is undisputed that disgorgement is remedy for Mattel's claims against MGA and Larian, including copyright infringement and trade secret misappropriation.  § 17 U.S.C. 504(b) and E. Bassett Co. v. Revlon, Inc., 435 F.2d 656 (2d Cir. 1970) (copyright infringement); 4 Callmann, Unfair Competition and Monopolies § 14.45 (4th ed.) and Clark v. Bunker, 453 F.2d 1006, 1011 (9th Cir. 1972) (trades secret misappropriation).  The scope of the disgorgement remedy is set forth in two recent California Supreme Court decisions.  See Kraus v. Trinity Management Servs., Inc., 23 Cal. 4th 116 (2000); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003).  The court indicated that:

> "disgorgement" is a broader remedy than restitution. . . .  [A]n order for disgorgement "may compel a defendant to surrender *all* money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those persons.  It has also been used to refer to surrender of *all* profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair

---

[67]   Exh. B [Second Amended Complaint and Cross-Complaint] to the Corey Dec.

-23-

practice."

Korea Supply, 29 Cal. 4th at 1145 (quoting Kraus, 23 Cal. 4th at 127) (emphasis added).  Moreover, an important part of disgorgement is the imposition of a constructive trust to recover ill-gotten gains that have been transferred to others by the defendant.  A constructive trust is intended to prevent unjust enrichment, with equity compelling the restoration to another of property to which the holder thereof is not justly entitled.  Taylor v. Polackwich, 145 Cal. App. 3d 1014, 1022 (1983); Cal. Civ. Code §§ 2223, 2224.  See also Weiss v. Marchus, 51 Cal. App. 3d 590, 600 (1975) (constructive trust may be imposed in case of fraud, mishandling, or almost any case of wrongful acquisition or detention of property to which another is entitled).  When personal property is in dispute, the legislature has allowed plaintiffs to invoke the remedy of constructive trust.  Cal Civ. Code §§ 2223, 2224.  To create a constructive or involuntary trust only three conditions are necessary: existence of a res, i.e. property or some interest in property, plaintiff's right to that res and defendant's gain of the res by fraud, accident, mistake, undue influence, violation of the trust or other wrongful act.  Kraus v. Willow Park Public Golf Course, 140 Cal. Rptr. 744, 73 Cal. App. 3d 354 (1977); see Cramer v. Biddison, 65 Cal. Rptr. 624, 257 Cal. App. 2d 720 (1968).  See Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1067 (1998) (constructive trust); Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 454-55 (1997) (equitable lien is proper if unjust enrichment and detrimental reliance are implicated)

By these subpoenas, Mattel seeks evidence to prove the amount the defendants must disgorge.  Housing Rights Center v. Sterling, 2005 WL 3320739, *3 (C.D. Cal. 2005) (finding financial information relevant to disgorgement of profits claim).  Money that properly belonged to Mattel was transferred from MGA or Isaac Larian to an entity controlled by them.  Mattel should be able to understand how that money was used because MGA and Isaac Larian have no right to whatever additional gains realized with Mattel's money.  See id.  Rather, the right to those

-24-

1 additional gains vests solely in Mattel.  Thus far, MGA and Isaac Larian have

2 produced no documents from which Mattel may ascertain the amount of any

3 transfer, much less any gain realized.  Nor have they agreed to produce any such

4 documents.

5        The Requests relevant to this inquiry include, as discussed above, the

6 banking and financial records sought from Wells Fargo, Ernst & Young, Deloitte &

7 Touche, Moss Adams, and Wachovia, and the documents sought from the Trusts

8 relating to assets and disbursements.

9     **F.**    **<u>Mattel Seeks Documents to Prepare Its Defenses to MGA's</u>**

10           **<u>Counter Claims</u>**

11        Mattel also seeks documents relevant to MGA's claims (a point all but

12 ignored in the Motion to Quash).  MGA accused Mattel of false designation of

13 origin, unfair competition, dilution, and unjust enrichment, and MGA seeks "general

14 and actual damages ... excepted to reach or exceed $10 million," "disgorgement of

15 all profits derived by Mattel," and "punitive and exemplary damages."[68]  Mattel is

16 entitled to the requested documents so that it can effectively cross-exam MGA's

17 witnesses about the accuracy of MGA's damages claims, to have adequate

18 information available to it to permit Mattel to defend against, and to and disprove

19 MGA's claims and damages theories.  For example, to the extent that MGA asserts

20 that it measures damages by its lost profits, Mattel is entitled to know what those

21 profits are and what intervening factors could have limited MGA profits (e.g.,

22 mismanagement, insufficient capital, inaccurate or untimely forecasting and

23 manufacturing, election to minimize advertising).[69]

24

25

---

26   [68]  Exh. A [MGA Complaint], Prayer for Relief.
    [69]  Mattel's Request Nos. 4-5 seek documents relating to Bratz and documents

27 relating to this consolidated proceeding.  Exhs. 7 and 8 to Park Dec.  MGA does not dispute the relevance of documents relating to Bratz or documents related to this

28 action.  <u>See generally</u> Section IV of MGA's Separate Statement filed in support of MGA's Motion to Quash.

1    Furthermore, the ConsumerQuest subpoena seeks information about

2  MGA products that MGA accuses Mattel of copying in its claims for false

3  designation of origin, unfair competition, and dilution.  For example, in its claim for

4  dilution, MGA alleges that "the look and trade dress of MGA products referenced

5  herein are distinctive and famous, and have been since Mattel launched similar

6  versions.  By its aforesaid acts, Mattel has caused and continues to cause blurring

7  and dilution of the distinctive look of MGA's products and trade dress."[70]  A

8  significant question here is whether Mattel's products or MGA's products were first

9  created.  The ConsumerQuest documents will contain evidence of the creation of

10  those products.  Notably, Request Nos. 8 seek information relating to MGA

11  products specifically referenced in its Complaint as underlying its claims against

12  Mattel.[71]  Request Nos. 9 and 10 seek similar information about communications

13  with MGA and Larian and other consumer research work by ConsumerQuest

14  regarding other MGA products:

15       • All COMMUNICATIONS with MGA or ISAAC
         LARIAN REFERRING OR RELATING TO MATTEL
16       since January 1998. [Request No. 9].

17       • All COMMUNICATIONS REFERRING OR
         RELATING TO any request to perform work or services
18       for or on behalf of MGA including, without limitation, any
         decision by YOU not to perform such work.  [Request No.
19       10].

20    Consumer research regarding these products is obviously relevant to

21  MGA's allegations in its complaint that the products were famous, distinctive, and

22  that Mattel's products have and are diluting them, as well as relevant to MGA's

23  theory of damages therefrom.  Furthermore, MGA listed ConsumerQuest as one of

24  the businesses that Mattel allegedly discouraged from doing business with MGA.  is

25

26  [70]  Exh. A [MGA Complaint], ¶ 120.
    [71]  "All DOCUMENTS REFERRING OR RELATING TO any study, survey,
27  focus group, research group or other work or services for MGA relating to "4-ever
    Best Friends," "Mommy's Little Patient" and/or "Mommy's Little" or "Alienracers,
28  including without limitation all viability reports relating thereto."

1  entitled to documents relevant to any communications between ConsumerQuest and

2  MGA that may concern Mattel.  Finally, it appears that MGA has failed to produce

3  Bratz documents in the possession of ConsumerQuest.[72]

4      **G.**    **The Evidence of Payments to Others is Relevant to Mattel's**

5              **Commercial Bribery Claim and Evidence of Bias**

6          The banking and accounting records sought by Mattel are also relevant

7  because they bear directly on Mattel's commercial bribery claim.  They may also

8  lead to evidence of bias and influence on potential witnesses.  Such concerns are not

9  theoretical, as evidence demonstrates that MGA was paying Mr. Bryant while it

10  knew he was a Mattel employee.  Mattel is entitled to seek documents that would

11  uncover additional information about MGA and Larian's attempts to bribe Mr.

12  Bryant *or other Mattel employees or vendors*.  As discussed above, contrary to

13  MGA and Larian's argument that the bribery issue is limited to Mr. Bryant, Mattel is

14  entitled to seek information related to their bribery or attempted bribery of other

15  personnel.  Indeed, as discussed above, on December 28, 2007, Mattel learned that

16  despite MGA's representations to the contrary, other Mattel employees were actively

17  working on Bratz fashions years after Bryant left Mattel.[73]

18          Furthermore, payments by or on behalf of MGA or any other defendant

19  to current or former Mattel employees or any other witness in this action goes to

20  bias.  As MGA has previously conceded, evidence of such bias is relevant and

21  discoverable, especially when it relates to key witnesses.[74]  See United States v.

22  Abel, 469 U.S. 45, 50-51 (1984); see also Wright & Miller, Federal Practice &

23  Procedure: Federal Rules of Evidence § 6095 (bias is a "particularly favored basis

24  for attacking credibility," and "circumstantial evidence of bias" may include

25  evidence of the "payment of bribes or fees").

26

---

27  [72]  Zeller Dec., ¶ 2.
   [73]  Exh. S, at 306:8-308:1; 363:4-366:10 [12/28/07 Deposition Transcript of

28  Veronica Marlow].
   [74]  Exh. FF [Mattel's Third Notice of Deposition of MGA Entertainment, Inc.].

-27-

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1           The banking and financial records Mattel requested from the third-

2 parties, especially the financial institutions, are relevant to tracking their payments

3 to third-parties and witnesses. Wells Fargo was and is MGA's bank. As such, it is

4 an invaluable source of information regarding payments made by MGA. Request

5 Nos. 1-5 seeks all documents relating to MGA since 1999, including annual

6 statements, monthly statements, transaction histories, cancelled checks, signature

7 cards, and documents showing which accounts MGA maintains with Wells Fargo.[75]

8 The relevant requests are:

9                 • All DOCUMENTS REFERRING OR RELATING TO MGA from January 1, 1999 to the present, inclusive.
10                 [Request No. 1].

11                 • All DOCUMENTS REFERRING OR RELATING TO the ACCOUNT maintained by YOU numbered
12                 9600112551, including but not limited to statements, monthly statements, annual statements, daily transaction
13                 history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature
14                 cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNT, created between
15                 January 1, 1999 and the present, inclusive. [Request No. 2].

16                 • All DOCUMENTS REFERRING OR RELATING TO
17                 any other ACCOUNT maintained by YOU that is in the name of, for the benefit of or concerns MGA, including
18                 but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly
19                 transaction history reports, deposit reports,. deposit slips, canceled checks, signature cards, and
20                 COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNTS, crated between January 1, 1999 and
21                 the present, inclusive. [Request No. 3].

22                 • DOCUMENTS sufficient to show the account number of all ACCOUNTS maintained by YOU in the name of,
23                 for the benefit of or concerning MGA between January 1, 1999 and the present, inclusive. [Request No. 4].

24                 • All DOCUMENTS showing or relating to any
25                 account(s) held by MGA or any account(s) on which MGA has signatory authority at any other financial
26                 institution. [Request No. 5].

27

28     [75]   Exh. 11 [Wells Fargo Subpoena] to the Park Dec.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1    Furthermore, as previously discussed, Request No. 5 of the Deloitte &

2  Touche and Ernst & Young subpoenas seeks MGA's accounting and payroll records.

3  Request Nos. 13-16 of the Moss Adams subpoena, as previously discussed, seek

4  documents related to payments to people working on Bratz, including Mr. Bryant

5  and other former Mattel employees.[76]  Other requests seek information which may

6  lead to documents relevant to bribery and bias.

7  **III.    THE SUBPOENAS ARE NOT OVERBROAD**

8    MGA and Larian's assertion that the Mattel's requests are abusively

9  drawn or unduly overbroad is also meritless given that five of Mattel's document

10  requests are directed to financial institutions.  Financial institutions generate and

11  retain precisely types of documents that are responsive to Mattel's requests.  For

12  example, MGA's lender, Wachovia should have loan documents, has loan

13  documentation and documents related to Wachovia's assessment of that information.

14  Indeed, Wachovia has already assembled the three boxes of loan documents

15  referenced in the November 15, 2005 letter from Wachovia, further evidencing the

16  finite and readily obtainable nature of these documents.[77]

17    Similarly, as MGA's auditors, Mattel anticipates that Ernst & Young

18  and Deloitte & Touche possess certain types of financial documents, such as MGA's

19  tax returns, pro forma statements, budget forecasts and related communications.  So

20  too with Larian's accounting firm, Moss Adams.  The universe of documents in this

21  regard is limited and manageable.  Therefore, MGA's objections of overbreadth and

22  harassment are baseless.[78]

23

24    [76]  Exh. 12 [Moss Adams Subpoena] to the Park Dec.
    [77]  Corey Dec., ¶ 9.
25    [78]  MGA claims that because the term "MGA" is defined to include MGA and its
    employees, agents, representatives, etc., the third parties should not produce any
26  responsive documents at all, even those that are specific to MGA or Isaac Larian.
    As a preliminary matter, it is customary for discovery requests to define persons and
27  corporate entities in this fashion.  Indeed, counsel for MGA has used similar
    definitions in the past.  But, more importantly, it is evident from the Requests
28  themselves that they are seeking information about Larian and MGA's finances and
    loans, and not that of all of their employees.  Obviously, if MGA were proceeding in
    (footnote continued)

1    Defendants mistakenly rely on <u>Ocean Atlantic Woodland Corp. v. DRH</u>

2  <u>Cambridge Homes, Inc.</u>, 292 F. Supp.2d 923 (N.D. Ill. 2003), to argue that broad

3  financial discovery on nonparties is necessarily unduly burdensome. However, the

4  <u>Ocean Atlantic</u> Court did not hold that such discovery is always unwarranted; rather,

5  it must be tied to the claims and defenses at issue. There, the plaintiff had acquired

6  a copyright in two real estate development plans for a parcel of land, but was unable

7  to develop the parcel because it failed to close on the sale of the land within the

8  required time. The plaintiff sued the developer who later acquired the rights to

9  develop the land and who did it using the copyrighted plans. The plaintiff served

10  document requests seeking "all aspects of [defendant's] financial activities,

11  including costs sales, and profits on all its developments and all of its home sales

12  throughout the country since 1997." <u>Id</u>. at 925. The court found that these requests

13  were overbroad, because on the facts of that case, they were not relevant to the

14  claims and defenses at issue. Specifically, the court found that because the measure

15  of damages was limited to either (1) the amount plaintiff paid to acquire the

16  development plans at issue, or (2) the value of use or the saved acquisition costs to

17  defendant who used the plans, broad financial discovery was not warranted. <u>Id</u>. at

18  928. In contrast, here, unlike <u>Ocean Atlantic</u>, the measure of damages in not so

19  limited, and includes disgorgement and punitive damages.

20

21  _____

good faith, rather than in another obstructionist effort intended to preclude discovery

22  by Mattel, it would recognize that the proper resolution of this issue is for the third
parties to produce responsive documents concerning Larian and MGA's accounts,

23  loans, net worth, intellectual property and good will, not to attempt to halt
production altogether. (Indeed, it is unlikely that the subpoenaed parties would have

24  responsive documents concerning all of Larian or MGA's employees in their
possession, custody or control, rendering MGA's concern moot.)

25    MGA also objects to the extent the subpoenas call for information concerning
Larian's children or other relatives. As explained above, Mattel is entitled to

26  information concerning Larian's net worth. Payments that Larian may have made to
his children, relatives, employees or acquaintances during the time period reflected

27  in the subpoenas are relevant to his net worth, and efforts he may have made to
conceal his true net worth. Moreover, transfers of value or payments to others

28  during the relevant time may also be relevant to Mattel's remedies, including
disgorgement, constructive trust, and punitive damages.

1      Thus, MGA and Larian's finances, including net worth and asset

2   transfers, are within the bounds of discovery as the Discovery Master, and Judge

3   Larson have held.  Indeed, in <u>Southern California Housing Rights Center v. Krug</u>,

4   2006 WL 4122148 (C.D. Cal.), a case relied on by MGA, the court ordered that

5   broad financial discovery concerning defendant's net worth was relevant to punitive

6   damages, and ordered defendants to produce documents relating to their net worth

7   and current assets and/or liabilities, including identification and value of all

8   properties and other assets owned in whole or in part, profit and loss statements

9   from 2004 to the present, as well as "financial statements and balance sheets that

10  relate to assets, inventories, liabilities, gross and net income, and the amount of any

11  undistributed business profits."  <u>Id</u>. at *1-2.

12  **IV.    THE SUBPOENAS ARE NOT UNREASONABLY DUPLICATIVE**

13      MGA argues that Mattel has obtained or can obtain the information

14  sought from parties so the requests to the third-parties are duplicative.  This is

15  unpersuasive for three primary reasons.  First, the parties possess unique and

16  relevant documents.  Second, MGA has not produced the overwhelming majority of

17  documents sought in the subpoenas, and Larian has only recently produced any

18  documents at all.  Finally, even if Mattel could obtain this information from a party,

19  that in and of itself is not a valid objection to a subpoena.

20      **A.    The Parties Have Unique and Relevant Documents**

21      As discussed above, the documents sought from the subpoenaed parties

22  are highly relevant to establishing the timing and development of Bratz, the net

23  worth of MGA and Larian (which is relevant to punitive damages), evidence

24  regarding bribery of Mattel employees, and evidence regarding Mattel's

25  disgorgement remedy.  Rather than focus on the relevance of these documents,

26  MGA and Larian attempt to convince the Court that all of the documents requested

27  from the third parties are in their possession and therefore there is no need for these

28  subpoenas.

1    But even if the document requests served on the third parties were

2  identical to the requests served on MGA and Larian, there has been no

3  demonstration--nor is one conceivable--that the MGA and Larian actually possesses

4  all of the same documents as are in the possession, custody, or control of the third

5  parties.  Indeed, MGA and Larian have not even attempted to make this showing.

6    For example, Mattel seeks documents from MGA's auditors, Deloitte &

7  Touche and Ernst & Young.[79]  Even if MGA had retained all of the documents it

8  had provided to or received from its accountants and candidly produced them all--

9  both being doubtful propositions--there is no reason to believe that MGA would

10  have draft documents, internal discussions, or preliminary evaluations prepared by

11  Deloitte & Touche and Ernst & Young.  Yet, as discussed below, it is just such

12  candid evaluations of MGA that are relevant to MGA's net worth, among other

13  issues.

14    Another example is Mattel's subpoena served on Wachovia.  Mattel

15  seeks documents related to two loans provided to MGA by Wachovia.  There is no

16  reason to believe that MGA would have all the same documents as Wachovia, such

17  as Wachovia's internal evaluations of the documents provided by MGA or drafts of

18  documents that were ultimately provided to MGA.  The same is true for the other

19  subpoenaed parties, who performed consumer research for MGA, and Moss Adams,

20  Isaac Larian's tax account.

21    Without assurances that Mattel has all of the documents also possessed

22  by the subpoenaed parties, this objection is meritless.  In State Farm Mutual Auto

23  Ins. Co. v. Accurate Medical, P.C., the district court rejected a similar argument for

24  this reason.  2007 W.L. 2993840 (E.D.N.Y. Oct. 10, 2007) (denying motion to

25  quash).  There, the plaintiff sought documents regarding third-party financial

26  relationships with the defendant.  In response to the defendant's argument that such

27

28  ───────────
[79]  Exhs. 7 [Ernst & Young Subpoena] and 8 [Deloitte & Touche Subpoena] to the Park Dec.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1  documents were available from itself, the court ordered the documents produced

2  because it found that "it is unlikely that the moving defendants would, in fact,

3  possess all the documents sought by plaintiff in the subpoenas." Id. at *1. So too

4  here. Because MGA and Larian have failed to show, and indeed made no effort to

5  show, that they have already produced all of the documents identical to those

6  possessed by the subpoenaed parties, the subpoenas are not unreasonably

7  duplicative.

      **B.**    **<u>MGA Failed to Produce Documents Responsive to Most of Mattel's</u>**

9                **<u>Requests, and What It Did Produce is Largely Non-Responsive to</u>**

10               **<u>the Third-Party Subpoenas.</u>**

11       Mattel does not dispute that MGA has produced many documents in

12 this case. Of the three million produced,[80] however, only about 38,000 relate to

13 Bratz revenues, costs, and profits. These are the documents responsive to Mattel's

14 Second Set of Requests for Production that the Discovery Master ordered produced

15 on December 28, 2007.[81] So what? Mattel's subpoenas do not seek that type of

16 product specific information.

17       By these subpoenas, Mattel seeks documents related to MGA's net

18 worth, including the value of its good will and intellectual property, documents from

19 the <u>Larian v. Larian</u> disputes, documents related to the Larian trusts, the Wachovia

20 loan documents, and documents related to Mattel's bribery claim and the timing of

21 the creation of Bratz (such as payments to Mr. Bryant and other Mattel employees).

22 With inconsequential exceptions, MGA either does not have or has not produced

23 documents related to these categories. This is not contested by MGA. Its designee

24 on the topic of its net worth testified that the documents produced by MGA to date

25

26     [80]   Notwithstanding MGA's claim that it has produced over 3 million pages to

27 date, the overwhelming majority of those documents are chaff, duplicates, and non-responsive to Mattel's requests.
    [81]   Exh. V [December 28, 2007 Discovery Master Order] and Exh. T [a

28 December 7, 2007 letter from Timothy A. Miller letter to Scott Kidman].

07209/2339499.2

-33-

1   are insufficient to establish its net worth and MGA did not value its good will or

2   intellectual property.[82] So, Mattel must go to other sources for that information.

3          Further, as part of its punitive damages remedy, Mattel is entitled to

4   documents reflecting the net worth of Larian and MGA, as well as the transfer of

5   assets or money during the period of wrongdoing. Thus, documents reflecting the

6   defendants' net worth and the transfer of assets or money by MGA and Larian are

7   highly relevant to this action, and are discoverable.

8          Although MGA claims to have produced many responsive documents,

9   it stops short of claiming that it has produced all of the documents sought by the

10   subpoenas. Moreover, the list of documents MGA claims to have produced is

11   notable for its lack of specificity. Indeed, MGA's list confirms that MGA has not

12   produced most of the documents requested by the third-party subpoenas.

13   Conspicuously missing from the list--and MGA's production--are:[83]

14          • Documents related to a determination of Isaac Larian's net worth.

15          • Documents stating the value of MGA's intellectual property and good

16   will (other than Little Tykes intellectual property).

17          • MGA's tax records.

18          • Wells Fargo banking records for MGA.

19          • Documents related to payments to third-parties by MGA, Larian, or

20   the Larian trusts (such as to Bryant and other Mattel employees and vendors)

21          • Consumer and marketing research regarding Bratz and several MGA

22   products underlying MGA's claims against Mattel.

23          • Documents from the Larian v. Larian litigation.

24          • Documents related to the Larian trusts, including any documents

25   showing Isaac Larian's interest in, payments received, or transfers to those trusts.

26

27

28   [82]  Exh. O [Tonnu Tr. 322:19-325:6; 326:17-327:6; 333:3-7; 334:12-15].
    [83]  Corey Dec., ¶¶ 14-16.

-34-

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1       • Documents regarding the 1999-2000 and 2006 loans MGA received

2    from Wachovia, including what documents MGA and Larian gave to Wachovia to

3    justify the loans.

4           Furthermore, even as to those documents MGA claims to have

5    produced, many of the descriptions are vague, inaccurate, or misleading:

6           • It is unclear what MGA means by its claim to have produced "annual

7    reports."  MGA has produced audited financial statements which Ms. Tonnu

8    testified could not be used to calculate net worth.

9           • The reference to "various MGA financial reports" is hopelessly vague

10   and tells the Court and Mattel nothing about what MGA claims was actually

11   produced.  Further, many of the financial documents produced by MGA were

12   redacted, with some being redacted so heavily that they were rendered useless.[84]

13          • MGA's claim to have produced documents related to "royalty

14   payments" to Carter Bryant does not encompass all payments to Mr. Bryant, or any

15   to other Mattel employees and vendors.

16          • The "Documents showing MGA's sales, returns and costs of good

17   sold" "promotional, advertising and media expenditures" only relate to Bratz.[85]

18   They do not relate to MGA's or Larian's net worth directly, or to the value of its

19   good will or intellectual property.

20          • The "Documents showing MGA's amortization and depreciation" is

21   only for unspecified "certain capital assets and expenditures," and they are no more

22   duplicative of Mattel's requests than the Bratz specific cost information.

23          • The "monthly general ledger" documents do not appear to be general

24   ledger entries at all, but in fact are much more generic trial balances.  Moreover,

25   there information produced appears to relate only to some account numbers,

26

27

28
     [84] Id.
     [85] Id.

1   omitting many others.  Further, it appears that no information has been produced for

2   the years 2001 and 2004.[86]

3       C.    **Mattel Should Not Be Forced To Assume MGA and Larian's**

4             **Good-Faith Production of Documents**

5           1.    **MGA's and Larian's Illusory Promises to Produce Do Not**

6                   **Render the Subpoenas Duplicative**

7           Conceding that they have not in fact produced all documents that are

8   being sought from the third parties, MGA and Larian claim that the subpoenas are

9   unreasonably duplicative because they ***might*** produce additional documents in the

10  future.[87]  Notably absent from their hollow promise is any specific date by when the

11  documents will be produced, or even a list of the specific documents to be produced

12  or the specific categories of document requests to which they respond.   This "wait

13  and see" and "trust me" approach, unsurprisingly, finds no support in the case law

14  and is an inadequate basis to grant the Motion to Quash.

15          2.    **Larian Cannot be Trusted to Timely Produce Responsive**

16                  **Documents**

17          Even if Larian had documents that were requested by the subpoenas,

18  his track record of obstruction of discovery, even to the point of violating his own

19  promises to produce, mean that Mattel should not be forced to rely exclusively on

20  his production.  At the time the subpoenas were served, Isaac Larian had not

21  produced a single page in this action.  His refusal and failure to produce were the

22  subject of a motion to compel on which the Discovery Master only recently ruled.

23  In his order, the Discovery Master ordered Larian to produce documents in response

24  to 71 document requests; 52 of which Larian had already promised to respond.[88]  In

25  fact, even though the Discovery Master compelled Larian to produce Larian v.

26  Larian documents earlier this week, Larian revealed that he had mad no effort to

---

86   Id.
87   Mt. at 17:12-25; 18:20-26.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1  look through the 56 boxes of <u>Larian v. Larian</u> documents that Kaye Scholer, his

2  counsel in that matter, posses and that Larian owns and controls.[89]

3          Furthermore, despite some overlap, the subpoenas at issue here seek

4  information not sought by the requests at issue in the Motion to Compel, which

5  sought among other things, documents relating to statements to the media,

6  communications with various people such as Mr. Bryant's lawyer, and storage

7  devices.  Notably, those requests did not seek information regarding the Larian

8  trusts.  Nor did they seek information related to ConsumerQuest or Larian's

9  accountant, Moss Adams.

10          **3.    <u>Mattel is Entitled to the Requested Documents Because of</u>**

11              **<u>Legitimate Concerns of MGA's Obstruction, Spoliation and</u>**

12              **<u>Document Tampering</u>**

13          Even if MGA and Larian requested and possessed all of the same

14  documents as the subpoenaed parties, Mattel should not be forced to trust that (1)

15  MGA will actually or timely produce all of the them, and (2) that MGA will produce

16  them in their original, unaltered condition.

17          In the past, MGA has produced requested documents only *after* a third-

18  party's production exposed MGA's previous failures to produce.  What documents

19  MGA has produced has been the result of a protracted discovery process in which

20  MGA has demonstrated a pattern of failing to produce relevant, critical, and

21  incriminating, documents until faced with compulsion by the Court or after a third

22  party has already produced them.  For example, in September 2006, a third-party

23  witness, Steven Linker, produced Bratz design drawings and Bratz product

24  development documents.[90]  Linker's production included a multitude of Bratz

25  materials he had received from or exchanged with MGA and Bryant before Bryant

26

27  ───────────────

[88]  Exh. E [December 31, 2007 Discovery Master Order].

28  [89]  Exh. EE, at 40:24-41:10 [1/16/09 Hearing Transcript].

[90]  Corey Dec., ¶ 17; Exhs. F, G, and H.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1  left Mattel.[91]  Neither MGA nor Bryant had produced many of them, however.

2  Notably, before Linker's testimony, MGA had produced an email relating to Bratz

3  development that Linker's design partner, Liz Hogan, had sent to MGA on October

4  23, 2000 -- a date which was conveniently *after* Bryant left Mattel.  MGA, however,

5  had not produced the earlier emails—those pre-dating Bryant's last day of

6  employment at Mattel—that Hogan had exchanged with MGA on that very same

7  subject.  Mattel obtained those only after Linker produced them pursuant to

8  subpoena in September 2006.[92]  Thus, it has often been the case in this litigation that

9  MGA has produced relevant and responsive documents only after a third-party has

10  already done so.

11           Furthermore, Mattel must guard against the possibility of further

12  spoliation of evidence and/or document tampering.  Unfortunately, these concerns

13  are not merely speculative or theoretical.  It has already occurred.  For example,

14  former Mattel and present MGA employee Mr. Bryant was ordered--after initial

15  delay and refusal--to produce a computer for inspection in this matter.  Mattel

16  learned that a software program called "Evidence Eliminator" had been installed and

17  run on that hard drive.[93]  In addition, there has been credible evidence adduced in

18  this action that MGA has tampered with documents by altering their creation dates,

19  as indicated by fax headers (which were deleted).  The Court responded to the

20  concern of spoliation, and specifically the alteration of the creation date of the

21  documents described above, in an August 9, 2006 order.[94]  Although it did not find

22  the evidence rose to the level of requiring the appointment of a Court appointed

23  expert witness at the time, it held, "There are serious questions concerning the

24  handling of these critical documents" that caused the Court "much concern about

25  whether the truth seeking functions of the adversarial system have been

26

27  [91] Corey Dec., ¶ 17; Exh. H.
    [92] Corey Dec., ¶ 17; Exhs. G and I.
28  [93] Exh. U, at 285:15-287:6 [12/28/07 Deposition Transcript of Richard Irmen].
    [94] Exh. N, at 9:4-18:14 [Court's August 9, 2006 Order].

-38-

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1  fundamentally compromised in this case." Id. at 11:10-13.  The Court also stressed

2  its "concern" over MGA's "handling of documents in its possession."[95]  Clearly,

3  therefore, Mattel is within its rights to obtain documents from third-parties even if

4  also in the possession of MGA and Larian.

5          Given the unavailability of this information from both MGA, Larian,

6  and other sources, MGA's efforts to thwart Mattel's discovery requests seeking this

7  information thus far, and the very real concern over spoliation and tampering, Mattel

8  should not be denied this discovery from third parties.[96]

9     **D.     That Documents "May" Be Available From Another Source Is Not**

10           **Sufficient Grounds to Quash The Subpoenas**

11          Despite their own refusal to produce all responsive documents, MGA

12  and Larian argue that the subpoenas should be quashed because they have some of

13  the documents Mattel seeks.  This is too little too late.  As a preliminary matter, as

14  explained above, it is unlikely that defendants have the same responsive documents

15  that the third parties do.  Moreover, MGA and Larian cannot refuse to produce for

16  months, then object when Mattel seeks documents from others.  Now, with days left

17  in Phase One discovery, Mattel does not have the luxury of waiting for MGA and

18  Larian to get around to producing.  Mattel needs documents to enforce its claims

19  and to defend against MGA's.  The purported availability of some of the documents

20  from another source does not justify quashing the subpoenas.

21          Rule 26, relied on by MGA and Larian, limits only *unreasonably*

22  duplicative discovery Rule 26(B)(2)(c)(i).  That there may be some overlap in the

23

24  [95] Id., at 17:23-26.
    [96] MGA has created a chart that purportedly shows overlap between Mattel's
25  document requests to the financial institutions and Mattel's documents requests to
    MGA.  See Exh. 28 to Park Dec.  MGA cites to three examples of the overlap
26  between Mattel's document requests and the subpoenas to the third-parties—the
    value of MGA's net worth, goodwill and intellectual property.  See Mt. at 17:6-10.
27  As detailed above, the listing of documents that MGA sets forth in its Motion do not
    contain documents showing the value of MGA's net worth, goodwill or intellectual
28  property, and Lisa Tonnu testified as to the unavailability of these documents from
    MGA.  Therefore, MGA's argument in this regard contradicts its own designee.

1 | documents requested from parties and non parties does not render the subpoenas

2 | invalid or unenforceable.

3 | Because documents may be available from other sources is not grounds

4 | to refuse production.[97] "[A] person may not avoid a subpoena by saying that the

5 | evidence sought from him is obtainable from another." Covey Oil Co. v.

6 | Continental Oil Co., 340 F.2d 993, 998 (10th Cir. 1965) (overruled on other

7 | grounds); State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL

8 | 2993840, at *1 (E.D.N.Y. 2007) (same); In re Bergeson, 112 F.R.D. 692, 695 (D.

9 | Mont. 1986) (conclusory assertions that documents sought are available from others

10 | more economically "does not constitute a showing of unreasonableness or

11 | oppressiveness."); see also Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,

12 | 6 F. Supp. 2d 859, 861-862 (E.D. Mo. 1998) (third party subpoena proper where

13 | information sought pertained to a central issue in the underlying claim, it was not

14 | burdensome in light of plaintiff's diligent efforts to obtain the information from

15 | defendant, and the nonparty had signed protective order prohibiting disclosed

16 | information from being seen by plaintiffs counsel or nonparty's competitors).

17 | As held by the State Farm court, "nothing in the Federal Rules of Civil

18 | Procedure requires a litigant to rely solely on discovery obtained from an adversary

19 | instead of utilizing subpoenas." Id. at *1.

20 | **V.   THE REMAINING OBJECTIONS ARE BOILERPLATE AND**

21 | **SHOULD BE OVERRULED**

22 | **A.   The Boilerplate Objections Are Improper**

23 | MGA and Larian assert a host of boilerplate general objections, which

24 | they repeat in their specific objections, in an effort to provide a framework for its

25 | obstructionist efforts.  Through these objections, they generally assert that Mattel's

26 | document requests (including Mattel's definitions) are irrelevant, overbroad,

27 |

28 | [97]   Mt. at 11:5-15.

1  ambiguous, harassing, cumulative, and unduly burdensome.[98]  MGA and Larian's

2  objections in this regard are the hallmark of boilerplate objections that are improper

3  under the Federal Rules of Civil Procedure.  A. Farber and Partners, Inc. v. Garber,

4  234 F.R.D. 186, 188 (C.D. Cal. 2006) (overruling defendant's boilerplate objections

5  as improper and ordering production of documents).  See Panola Land Buyers

6  Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985) (holding that court did not

7  have discretion to limit discovery on basis of boilerplate objections).

8       **B.     The Objection Based Upon the Accountant-Client Privilege Is**

9             **Unfounded**

10         MGA and Larian's objection that the documents are protected from

11  disclosure by the accountant-client privilege is without basis.  The United States

12  Supreme Court has recognized that there is "no confidential accountant-client

13  privilege [that] exists under federal law, and no state created privilege has been

14  recognized in federal cases."  Couch v. United States, 409 U.S. 322, 335 (1972)

15  (collecting cases).  Therefore, MGA's assertion of a privilege that is not recognized

16  is frivolous.

17       **C.     The Objection Based Upon The Tax Return Privilege Is Improper**

18         MGA's objection that the subpoenaed documents are protected from

19  disclosure by the federal and state tax return privilege is equally improper.  Tax

20  returns are not privileged under federal law.  "Although tax returns, like these

21  census reports, are made confidential within the government bureau, copies in the

22  hands of the taxpayer are held subject to discovery."  St. Regis Paper Co. v. United

23  States, 368 U.S. 208, 218-219 (1961) (citations omitted).

24         The cases cited by MGA make it clear that tax returns are discoverable

25  "if they are relevant and when there is a compelling need for them because the

26  information sought is not otherwise available."  See Aliotti v. Senora, 217 F.R.D.

27

28  [98]  Exhs. 21-26, General Objection Nos. 5, 7-11, to the Park Dec. [MGA's Objections and Responses to Mattel's Subpoenas].

1  496, 498 (N.D. Cal. 2003); see also Premium Service Corp. v. Sperry & Hutchinson

2  Co., 511 F.2d 225, 229 (9th Cir. 1975).

3  As to Isaac Larian, his tax returns provide a concise statement of his

4  representations of his annual income and the income of trusts in which he has a

5  beneficial interest.  The only alternative to Mattel obtaining this information would

6  be a massive search of Larian's assets in order to attempt to estimate this

7  information.  Further, because a tax return is a representation to the government

8  made under penalty of perjury, it carries with it a greater indicia of reliability.

9  MGA's tax returns are equally relevant.  MGA previously produced

10  Lisa Tonnu as its person most knowledgeable on the topic of MGA annual revenues.

11  During her deposition, Mattel elicited testimony from Ms. Tonnu regarding Exhibit

12  660, which purported to show Bratz revenues.[99]  Upon further examination of this

13  document, however, Mattel learned that it did not provide an accurate representation

14  of the revenues attributable to Bratz.[100]  Mattel is, therefore, entitled to documents

15  that accurately represent MGA's annual revenues.  Moreover, Tonnu did not know

16  how conversions of foreign sales were done for purposes of either recognizing

17  foreign revenue or for transferring products from subsidiaries.  These are directly

18  relevant to MGA's costs and revenues related to Bratz, will appear in MGA's tax

19  records and returns, which should be produced.

20  Mattel is unaware of any other source from which it may obtain the

21  requested tax returns and MGA has cited none in its Motion.  Nor can MGA

22  rationally contend that the requested tax returns are not relevant to Mattel's

23  counterclaims and defenses.  Where, as here, the requested tax returns are relevant

24  and a protective order mitigates any purported privacy concerns, then the privilege

25  is overruled and the production of tax returns is proper.  See A. Farber and

26  Partners, Inc., 234 F.R.D. at 188.

27

28  [99]  Exh. O, at 457:18 to 460:1 [Tonnu Tr.]
    [100]  Id.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

**D.    Concerns Over Confidentiality Are Alleviated by the Protective Order**

MGA and Larian's objection that Mattel's document demands seek documents that are protected as containing trade secrets, confidential information or otherwise protected by a right of privacy is also meritless.[101]  The Court has entered a Protective Order in this action.  Given this salient fact, there is no justification for MGA to assert the disclosure of the requested documents would infringe upon the third-parties' privacy interests or other concerns arising from the disclosure of confidential information.  Where, as here, the terms of the Protective Order ensure that documents remain confidential and limit their use to litigation purposes, then the producing party's confidentiality concerns are vitiated and the requested documents should be produced.  See, e.g., In re Heritage Bond Litigation, 2004 WL 1970058 at *5, n.12 (C.D. Cal. 2004) ("Any privacy concerns . . . defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter"); A. Farber and Partners, Inc., 234 F.R.D. at 191-92 ("plaintiff's need for defendant Garber's financial documents outweighs defendant Garber's claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by a 'carefully drafted' protective order"); Yund v. Covington Foods, Inc., 193 F.R.D. 582, 584 (S.D. Ind. 2000); Gohler v. Wood, 162 F.R.D. 691, 697 (D. Utah 1995) ("Because the protective order limits disclosure of confidential material to those who are necessarily involved in the case, and these parties may use this information only for purposes of litigating this case, excluding any business purpose, the court concludes Deloitte's confidentiality concerns have been addressed adequately.").

---

[101]    Exhs. 21-26, General Objections No. 4, to the Park Dec. [MGA's Objections to Mattel's Document Subpoenas].

1    Plant Genetic Systems is particularly instructive with respect to

2  MGA's objections based on confidential or private information of some unidentified

3  third party or parties.  6 F. Supp. 2d at 862.  As was the case in Plant Genetic

4  Systems, and consistent with the Discovery Master's prior rulings in this case, the

5  third parties can use the Protective Order in this action to protect information it

6  properly designates as "Confidential" or "Confidential – Attorneys Eyes Only."

7    Further, as the Discovery Master previously ruled with respect to the

8  personnel file of Isaac Larian, the Protective Order in place in this case is sufficient

9  to alleviate any privacy concerns.[102]  Therefore, MGA's objection based upon

10  confidentiality concerns is also without basis.

11  **VI.    MGA'S CLAIM THAT MATTEL FAILED TO MEET AND CONFER**

12  **IS FALSE**

13    Mattel contends that Mattel failed to meet and confer to resolve this

14  discovery dispute in good-faith.  In fact, Mattel made attempts to meet and confer

15  with MGA, but those attempts were unsuccessful, so Mattel filed this motion.

16    After receiving MGA's objections to the subpoenas, counsel for Mattel

17  entered into good-faith meet and confer efforts.  By letter dated December 7, 2007,

18  Mattel set forth the deficiencies in MGA and Larian's specific and general

19  objections to the financial institutions' subpoenas, and requested that they meet and

20  confer, as required by paragraph 5 of the Discovery Master's Stipulation.[103]  On

21  December 11, 2007, MGA and Larian responded by proposing that the parties to

22  meet and confer on December 11th, 17th, or 18th.[104]  On the evening of December

23  11th, Mattel's counsel responded, stating that Mattel was unavailable to meet and

24  confer on Friday, December 14th (one of the proposed times).  Mattel's counsel

25

26    _____

    [102]   Exh. Q, at 11, n.4 [Order Dated May 15, 2007].

27      [103]   Corey Dec., ¶ 19.  Exh. J [letter from Jon Corey to Timothy Miller and Marcus Mumford dated December 7, 2007].

28      [104]   Corey Dec., ¶ 20.  Exh. K [letter from Amy Park to Jon Corey dated December 11, 2007].

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1  added that he would contact MGA's counsel regarding meeting and conferring on

2  either December 17th or 18th (the other two proposed dates).[105]

3          On December 18th, Mattel's counsel sent an e-mail message to MGA's

4  counsel proposing that the parties meet and confer at three times throughout that

5  day.[106]  MGA's counsel did not respond.  Rather, at approximately 11:30 a.m., an

6  assistant to MGA's counsel contacted Mattel's counsel to state that MGA's counsel

7  was "very busy" in meetings.[107]  At no time did this assistant, or any other of MGA's

8  counsel, inform Mattel's counsel that the times proposed by Mattel were unworkable

9  or that MGA would be unable to timely fulfill its meet and confer obligations.[108]  At

10  5:55 p.m. on December 18, 2007, and notwithstanding the prior representation that

11  MGA's counsel was very busy and, therefore, unable to meet and confer with

12  Mattel, MGA's counsel responded with a three-page single-spaced letter attempting

13  to explain the untimeliness in meeting and conferring and objections to Mattel's

14  document subpoenas.[109]  The parties subsequently agreed to conduct their meet and

15  confer on December 21, 2007 at 2:00 p.m., which they did.  MGA and Larian served

16  their Motion shortly before 3:00 p.m. that same day, moments after the parties' meet

17  and confer concluded.[110]

18

19  DATED:  January 18, 2008        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

20                                 By _____

21                                  Jon D. Corey

22                                  Attorney for Mattel, Inc.

23

24

25  [105]  Corey Dec., ¶ 20.
    [106]  Corey Dec., ¶ 21.  Exh. L [email from Michael Fazio to Amy Park dated

26  December 18, 2007].
    [107]  Corey Dec., ¶ 23.

27  [108]  Id.
    [109]  Corey Dec., ¶ 24.  Exh. M [letter from Amy Park to Michael Fazio dated

28  December 18, 2007].
    [110]  Corey Dec., ¶ 25.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

**Counter Motion to Compel**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

      PLEASE TAKE NOTICE that at a telephonic conference before Discovery Master Hon. Edward Infante (Ret.) that will occur on February 8, 2008, at 9:30 a.m., plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court to compel Moss Adams, ConsumerQuest, Wells Fargo, Deloitte & Touche, Ernst & Young, and Wachovia, and the Larian trusts to produce all documents responsive to their respective subpoenas and a privilege log.

      This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 45(c)(2) on the grounds that the third-party subpoenas seek discoverable information and that their responses and objections, as well as those of MGA and Larian, are inadequate and lack merit.

      This Counter-Motion is based on this Notice of Counter-Motion and Counter-Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jon D. Corey filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

DATED:  January 18, 2008       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

                                    By _____
                                         Jon D. Corey
                                       Attorney for Mattel, Inc.

I.   **THE COURT SHOULD ISSUE AN ORDER COMPELLING COMPLIANCE WITH THE SUBPOENAS**

A.   **The Documents Sought By The Third-Party Subpoenas Are Relevant And Good Cause Exists For Their Production**

As discussed in Section II, the documents sought relate to Bratz, the development of Bratz, Mattel's damages claim, Mattel's commercial bribery claim, the credibility and bias of MGA and Larian as well as potential witnesses, and Mattel's defense to MGA's damages claims.  In short, the relevance of the requested documents is beyond dispute.

B.   **The Subpoenas Are Not Overbroad or Unduly Burdensome**

Some of the third-parties have objected that the subpoenas are overbroad and unduly burdensome.  As explained in Section III, these objections are without merit.  Moreover, there has been no declarations or other evidence submitted to support the claim of burden, or even to explain the amount of time or effort necessary to comply with the subpoenas.  A simple claim of burden, without more, is insufficient.  See A. Farber and Partners, Inc., 234 F.R.D. at 188; Momah v. Albert Einstein Medical Center, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (*citing* Fed. R. Civ. P. 33(b)(4).

C.   **Concerns Over Confidentiality Are Addressed by the Existing Protective Order**

Some of the third-parties have expressed concern that their respective subpoenas seek confidential and privileged information.[111]  As explained above, the Court has entered a Protective Order in this action.[112]  The Protective Order applies "to trade secret, confidential and proprietary information, documents and things that are produced or disclosed in any form during the court of the Action by any Party or

---

[111] Exhs. 17 [Wachovia objections] 18 [ConsumerQuest Objections] 19 Wells Fargo Objections], and 20 [Moss Adams Objections], to Park Dec.
[112] Exh. R [Stipulated Protective Order filed January 4, 2005].

1  any nonparty[.]"[113]  The Protective Order specifically allows third-parties to avail

2  themselves of and rely upon the Protective Order by designating any documents

3  produced as "Confidential" or "Confidential--Attorney's Eyes Only".[114]  One would

4  be hard pressed to hypothesize a set of facts that would infringe a third-party's

5  interests in protecting any purported proprietary or confidential information, or other

6  concerns arising from the disclosure of such information.  Further, as the Discovery

7  Master previously ruled with respect to the personnel file of Isaac Larian, the

8  Protective Order in place in this case is sufficient to alleviate any privacy

9  concerns.[115]

10        **D.    The Remaining Objections Do Not Preclude Production**

11        The third-parties have asserted various other objections, which likewise

12  do not preclude production.  Some have objected that the subpoenas seek documents

13  not within their possession, custody or control or that are subject to the attorney-

14  client privilege.  However, Mattel seeks only non-privileged documents within the

15  possession, custody, or control, of the subpoenaed parties.

16        Moss Adams has objected to the production of tax returns, but the tax

17  returns requested are from persons and parties interested in this action.  As discussed

18  in above, there is a compelling need for the documents and production of them is

19  proper.

20        Accordingly, this Court should issue an order compelling the third

21  parties to produce all non-privileged documents responsive to the subpoenas that are

22  within the third-parties' possession, custody or control.

23

24

25

26  _____

[113]  Id., ¶ 1 at 3.

27  [114]  Id., ¶ 17 at 15 ("Nonparty materials designated 'CONFIDENTIAL' or 'CONFIDENTIAL -- ATTORNEYS' EYES ONLY' by a nonparty or Party shall be governed by the terms of this Protective Order."; see also ¶¶ 2-3 at 4.

28  [115]  Exh. Q, at 11, n.4 [Order dated May 15, 2007].

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

1   **II.   EACH OF THE SUBPOENAED PARTIES MUST PRODUCE**

2        **ADEQUATE PRIVILEGE LOGS**

3          To the extent the subpoenaed parties are withholding documents on the

4   basis of privilege, they must provide a privilege log.  None, however, has provided

5   Mattel with a privilege log; much less one that comports with the requirements of

6   <u>Rule</u> 45(d)(2) which requires a claim of privilege to "be made expressly and . . .

7   supported by description of the nature of the documents, communications, or things

8   not produced that is sufficient to enable the demanding party to contest the claim."

9   Failure to provide a privilege log is grounds for waiver.  <u>See</u> <u>Burlington N. & Santa</u>

10  <u>Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.</u>, 408 F.3d 1142, 1148-50 (9th Cir.

11  2005) (affirming district court's holding that party waived privilege objections by

12  failing to provide privilege log within thirty days of serving its responses); <u>In re</u>

13  <u>Imperial Corp. of Am.</u>, 174 F.R.D. 475, 477 (S.D. Cal. 1997) (waiver rule for failure

14  to provide privilege log applies to subpoenas to third parties, such as law firms that

15  represent party).  Accordingly, the Court should order the subpoenaed parties to

16  produce privilege logs in accords with Rule 45(d)(2).

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH

## Conclusion

For the reasons set forth above, and for those set forth in the Mattel's Response to MGA's Separate Statement, Mattel respectfully requests that MGA's Motion to Quash or, in the alternative, for a Protective Order, be denied in its entirety, and that an Order be entered directing Wachovia, Ernst & Young, Deloitte & Touche, Moss Adams, Wells Fargo, ConsumerQuest and the Larian trusts to produce all documents set forth in Mattel's subpoenas to these entities as well as a privilege log for any documents withheld on the basis of privilege.

DATED:  January 18, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By

Jon D. Corey
Attorney for Mattel, Inc.

MATTEL INC.'S OPPOSITION TO MGA'S MOTION TO QUASH