1  promising these Mattel employees salaries 25 percent or more higher than they earn

2  at Mattel and stating to them that they should not be concerned by legal action

3  taken by Mattel to protect its trade secrets and its rights because such claims are

4  hard to prove and easy to defeat.

5  ## VI.  MGA STEALS MATTEL TRADE SECRETS IN CANADA

6          70.   In an effort to increase its market share and sales in Canada and

7  elsewhere, MGA stole Mattel trade secrets regarding Mattel's customers, sales,

8  projects, advertising and strategy, not only for Canada, but the United States and

9  the rest of the world.

10         71.   Janine Brisbois was a Director of Sales for the Girls Division in

11  Canada.  Mattel hired her as a National Account Manager in August 1999.  When

12  she was hired as a Mattel employee, Brisbois agreed that she would preserve and

13  would not disclose Mattel's proprietary or confidential information.  For example,

14  Brisbois agreed:

15         You must keep Mattel's Proprietary Information confidential,

16         and you may only use or disclose such information as necessary

17         to perform your job responsibilities in accordance with Mattel

18         policies.  Your obligation to keep Mattel's Proprietary

19         Information confidential will continue even after any termination

20         of your employment with your employer.

21         . . .

22         Mattel takes steps to maintain the secrecy and confidential nature

23         of Mattel's Proprietary Information and, if a competitor

24         discovered Mattel's Proprietary Information, it could

25         significantly damage Mattel and your Employer.

26         72.   While with Mattel, Brisbois had responsibility for Mattel's

27  account with TRU and later had responsibility for Mattel's Wal-Mart account.  In

28  her capacity as Sales Director-Wal-Mart/CTC/Girls Team, Brisbois had access to

2154363.2

-49-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT B PAGE 97**

Mattel confidential and proprietary information regarding Mattel's future product lines, advertising and promotional campaigns and product profitability.

73.   On September 26, 2005, Brisbois resigned from Mattel to take a position as Vice President of Sales at MGA.  Mattel is informed and believes that in that position Brisbois has responsibility for MGA's accounts with both TRU and Wal-Mart.  During Brisbois' exit interview she was specifically asked whether she was "taking anything."  Brisbois responded, "No."  Both during and after her exit interview, Brisbois was advised by Mattel of her obligations to preserve Mattel's confidential and proprietary information.

74.   Mattel is informed and believes that Brisbois spoke with Isaac Larian, MGA's CEO, on September 22, 2005 at approximately 8:30 p.m., when he called Ms. Brisbois at her home.  Mattel subsequently learned that on the same day that she spoke with Mr. Larian and four days before she resigned, Brisbois copied approximately 45 Mattel documents on to a USB or "thumb" drive with the volume label "BACKPACK."  On information and belief, Brisbois removed the thumb drive from Mattel Canada's office by concealing it in her backpack or gym bag the last time that she left that office.  These documents contained Mattel trade secret and proprietary information, and included:

- a document containing the price, cost, sales plan and quantity of every Mattel product ordered by every Mattel customer in 2005 and 2006;
- the BARBIE television advertising strategy and information concerning sales increases generated by television advertisements;
- competitive analysis of Mattel vis-à-vis its competitors in Canada;
- an analysis of Mattel's girls business sales beginning in 2003 and forecasts through 2006;
- profit and loss reviews for Mattel's products being sold in Wal-Mart, including margins and profit in not only Canada, but in the United States and Mexico; and

-50-

**EXHIBIT B PAGE 98**

2154363.2

- a document containing the product launch dates and related advertising for all Mattel new products between Fall 2005 and Spring 2006.

75.   After Mattel discovered that Brisbois had copied these sensitive documents to a thumb drive, Mattel notified Canadian law enforcement authorities. Canadian law enforcement authorities recovered from Brisbois a thumb drive with the volume label "BACKPACK" containing the documents that Brisbois had copied from Mattel's computer system.  Mattel later learned that while she was working as a Vice President of Sales at MGA, Brisbois accessed and modified documents on that thumb drive.

76.   After joining MGA, Brisbois repeatedly traveled to MGA's offices in Van Nuys, California and met with Larian and Brawer.  In February, 2006, knowing that Mattel trade secrets had been seized from MGA's Mexico City offices and that at least three MGA employees were under criminal investigation, MGA nonetheless issued a press release trumpeting its 2005 performance, with Larian himself concluding, "Our international teams in Mexico and Canada have done a fantastic job."

## VII. MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL TO JOIN MGA TO MISAPPROPRIATE MATTEL TRADE SECRETS FOR THE BENEFIT OF MGA

77.   In the past few years, MGA has hired directly from Mattel's United States operations at least 25 employees, from Senior Vice-President level to lower level employees.  On information and belief, many of these employees were specifically targeted and recruited by MGA, including by Larian and Brawer, based on the Mattel confidential and proprietary information they could access.  Many of these employees had access to information that Mattel considers to be highly proprietary and confidential.  Mattel believes that some of those former Mattel employees may be observing their obligations not to misappropriate, disclose or use Mattel's confidential and proprietary information.  Mattel is informed and

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

**EXHIBIT B PAGE 99**

1  believes, however, that certain additional employees accessed, copied and took

2  from Mattel confidential and proprietary information, including Mattel's strategic

3  plans; business operations, methods and systems; marketing and advertising

4  strategies and plans; future product lines; product profit margins; and customer

5  requirements.  The misappropriated confidential and proprietary information

6  included information that these Mattel employees were not authorized to access.

7  On information and belief, the misappropriated confidential and proprietary

8  information taken from Mattel is being disclosed to and used by MGA for the

9  benefit of MGA and to the detriment of Mattel.

10  **VIII.  LARIAN MAKES MISREPRESENTATIONS TO RETAILERS**

11  **ABOUT MATTEL'S PRODUCTS**

12  78.   Counter-defendants have engaged in other illegal practices in

13  their efforts to compete unfairly with Mattel.  Larian has a practice of sending e-

14  mail messages to a "Bratz News" distribution list that Larian created or that was

15  created for him.  Mattel is informed and believes that the recipients of e-mail

16  messages sent to the "Bratz News" distribution list include members of the media

17  as well as representatives of many of Mattel's most significant customers.

18  79.   On May 12, 2006, Larian sent an e-mail message to the "Bratz

19  News" distribution list that included a reference to Mattel's updated MY SCENE

20  MY BLING BLING product with real gems.  Mattel had not publicly announced

21  this product at the time that Larian sent his May 12, 2006 e-mail.  In fact, Mattel

22  had guarded the identification of this particular product.

23  80.   Shortly thereafter, Larian engaged in a campaign of calling

24  Mattel's most significant customers, including but not limited to Target and TRU,

25  regarding the MY SCENE MY BLING BLING product with real gems.  In an

26  effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING

27  BLING product with real gems, Larian knowingly made false factual statements

28  about that product to each retailer.  As of the writing of this Second Amended

2154363.2

-52-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT B PAGE 100**

1    Answer and Counterclaims, Mattel is aware that Larian represented to each retailer

2    that each was the only retailer to purchase the product and that Mattel would not be

3    supporting the product with television advertising.  At the time that Larian made

4    these statements, he knew them to be false.  As a result of Larian's

5    misrepresentations, at least one retailer cancelled its order for 75,000 units of the

6    MY SCENE MY BLING BLING product with real gems.  Only after Mattel

7    learned of Larian's misrepresentations and was able to correct them was Mattel able

8    to assure the retailer that Larian's representations were false and to persuade the

9    retailer to reinstate the order.

10          81.   Such conduct is not an isolated incident.  MGA and Larian, in an

11   effort to gain an unfair competitive advantage, repeatedly issued false and

12   misleading press releases.  In these press releases, MGA and Larian have

13   misrepresented Bratz's sales, Bratz's market share, Bratz's position vis-à-vis

14   Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market

15   share of Mattel's BARBIE products.

**CLAIMS FOR RELIEF**

<u>**First Counterclaim**</u>

**Copyright Infringement**

**(Against MGA, MGA Entertainment (HK) Limited,**

**Larian, Bryant and Does 4 through 10)**

21          82.   Mattel repeats and realleges each and every allegation set forth in

22   paragraphs 1 through 81, above, as though fully set forth at length.

23          83.   Mattel is the owner of copyrights in works that are fixed in

24   tangible media of expression and that are the subject of valid, and subsisting,

25   copyright registrations owned by Mattel.  These include, without limitation, the

26   works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-

27   378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-

28

2154363.2

-53-

**EXHIBIT B PAGE 101**

1   378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-

2   378-660, VAu 715-270, VAu 715-271 and VAu 715-273.

3          84.   Counter-defendants have reproduced, created derivative works

4   from and otherwise infringed upon the exclusive rights of Mattel in its protected

5   works without Mattel's authorization. Counter-defendants' acts violate Mattel's

6   exclusive rights under the Copyright Act, including without limitation Mattel's

7   exclusive rights to reproduce its copyrighted works and to create derivative works

8   from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

9          85.   Counter-defendants' infringement (and substantial contributions

10  to the infringement) of Mattel's copyrighted works is and has been knowingly made

11  without Mattel's consent and for commercial purposes and the direct financial

12  benefit of Counter-defendants. Counter-defendants, moreover, have deliberately

13  failed to exercise their right and ability to supervise the infringing activities of

14  others within their control to refrain from infringing Mattel's copyrighted works

15  and have failed to do so in order to deliberately further their significant financial

16  interest in the infringement of Mattel's copyrighted works. Accordingly, Counter-

17  defendants have engaged in direct, contributory and vicarious infringement of

18  Mattel's copyrighted works.

19         86.   By virtue of defendants' infringing acts, Mattel is entitled to

20  recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of

21  suit and attorneys' fees, and all other relief permitted under the Copyright Act.

22         87.   Counter-defendants' actions described above have caused and

23  will continue to cause irreparable damage to Mattel, for which Mattel has no

24  remedy at law. Unless Counter-defendants are restrained by this Court from

25  continuing their infringement of Mattel's copyrights, these injuries will continue to

26  occur in the future. Mattel is accordingly entitled to injunctive relief restraining

27  Counter-defendants from further infringement.

28

### Second Counterclaim

**Violation of the Racketeer Influenced and Corrupt Organizations Act**

**18 U.S.C. §§ 1962(c) and 1964(c)**

**(Against All Counter-defendants)**

88.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 87, above, as though fully set forth at length.

89.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas and Brisbois were employed by and associated-in-fact with an enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "MGA Criminal Enterprise").  The MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois).  In addition, beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, were employed by and associated-in-fact with a second enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "Bratz Criminal Enterprise").

90.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and each of them, for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information, by

1   means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully

2   and knowingly conduct and participate, directly and indirectly, in the conduct of

3   the MGA Criminal Enterprise's affairs and, in the case of MGA, MGA

4   Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe Counter-

5   defendants, the Bratz Criminal Enterprise's affairs, through a pattern of

6   racketeering activity.  Their actions include multiple, related acts in violation of:

7   18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512

8   (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and

9   foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. §

10   506(a)(1)(A) (criminal copyright infringement).

11        91.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

12   Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

13   Brisbois, and the Other Former Employees, and each of them, shared the common

14   purpose of enabling MGA to obtain confidential, proprietary and otherwise

15   valuable Mattel property through improper means in order to assist MGA in

16   illegally competing with Mattel domestically and throughout the world.

17        92.   The MGA Criminal Enterprise and Bratz Criminal Enterprise as

18   described herein are and have been at all relevant times continuing enterprises

19   because, among other reasons, each is designed to and did unlawfully acquire the

20   confidential business information and property of Mattel and incorporated this

21   information and property into MGA's ongoing business, marketing strategies and

22   business methods, practices and processes.  The conduct of each enterprise

23   continues through the date of this Second Amended Answer and Counterclaims and

24   is ongoing by virtue of MGA's continuing use of Mattel's information and property,

25   all to the detriment of Mattel.

26        93.   The pattern of racketeering activity, as defined by 18 U.S.C.

27   §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

28   of continuing criminal activity.  This activity consists of multiple acts of

1  racketeering by each member of the MGA Criminal Enterprise and Bratz Criminal

2  Enterprise, is interrelated, not isolated and is perpetrated for the same or similar

3  purposes by the same persons.  This activity extends over a substantial period of

4  time, up to and beyond the date of this Second Amended Answer and

5  Counterclaims.  These activities occurred after the effective date of 18 U.S.C.

6  §§ 1961 *et seq.,* and the last such act occurred within 10 years after the commission

7  of a prior act of racketeering activity.  These racketeering activities included

8  repeated acts of:

9      (a)  <u>Mail Fraud</u>:  Counter-defendants MGA, MGA Entertainment

10      (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and

11      Does 4 through 10, aided and abetted by each other and some or

12      all of the remaining members of the MGA Criminal Enterprise,

13      having devised a scheme or artifice to defraud Mattel of its

14      confidential trade secret information and property by conversion,

15      false representations, concealment and breaches of fiduciary duty,

16      did for the purpose of furthering and executing such a scheme or

17      artifice to defraud, deposited or caused to be deposited matters or

18      things to be sent or delivered by the Postal Service, or any private

19      or commercial interstate carrier, or took or received matters or

20      things therefrom, or knowingly caused matters or things to be

21      delivered by mail or such carrier according to the direction

22      thereon, or at the place at which it is directed to be delivered by

23      the person to whom it is addressed, in violation of 18 U.S.C.

24      § 1341 and 18 U.S.C. § 2, as alleged with greater particularity in

25      the foregoing paragraphs and as evidenced by, among other

26      things, the true and correct copies of communications and other

27      evidence included in Exhibit C;

28

154363.2

-57-

**EXHIBIT B PAGE 105**

(b)   <u>Wire Fraud</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, having devised a scheme or artifice to defraud Mattel of its confidential and trade secret information and property by conversion, false representations, concealment and breaches of fiduciary duty, did for the purpose of furthering and executing such a scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other things, the true and correct copies of communications and other evidence included in Exhibit C;

(c)   <u>Tampering With a Witness, Victim or Informant</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by:

    i.    altering Bryant's contract with MGA relating to Bratz to conceal evidence that Bryant faxed the contract from the BARBIE COLLECTIBLES department of Mattel, using a fax

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

**EXHIBIT B PAGE 106**

1     machine owned by Mattel and while Bryant was employed by

2     Mattel;

3           ii.      altering numerous original Bratz drawings created

4     by Bryant by adding false and misleading date notations of

5     "8/1998" and "© 8/1998" to the drawings even though the

6     drawings were not created in August 1998; and

7           iii.     destroying electronic and other evidence, including

8     by destroying evidence previously contained on Carter Bryant's

9     and Isaac Larian's computer hard drives.

10          Such actions are in violation of 18 U.S.C. § 1512 and 18

11    U.S.C. § 2, as alleged with greater particularity in the foregoing

12    paragraphs;

13    (d)   Interstate and Foreign Travel in Aid of Racketeering Enterprises:

14    Counter-defendants MGA, MGA Entertainment (HK) Limited,

15    MGA de Mexico, Larian, Bryant, Machado and Does 4 through

16    10, aided and abetted by each other and some or all of the

17    remaining members of the MGA Criminal Enterprise, traveled in

18    interstate and foreign commerce, or used the mail or any facility

19    in interstate or foreign commerce, with the intent to promote,

20    manage, establish, carry on and facilitate the promotion,

21    management, establishment and carrying on of unlawful activity,

22    i.e. bribery, in violation of the laws of the State of California,

23    Cal. Penal Code § 641.3, all in violation of 18 U.S.C. § 1952 and

24    18 U.S.C. § 2, as alleged with greater particularity in the

25    foregoing paragraphs;

26    (e)   Criminal Copyright Infringement: Counter-defendants MGA,

27    MGA Entertainment (HK) Limited, MGA de Mexico, Larian,

28    Bryant, Machado and Does 4 through 10, aided and abetted by

-59-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

each other and some or all of the remaining members of the MGA Criminal Enterprise, willfully infringed Mattel's copyrights, including with respect to documents containing Mattel trade secret and confidential information, for purposes of commercial advantage and private financial gain, all in violation of 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater particularity in the foregoing paragraphs.

94.    The persons alleged herein to have violated 18 U.S.C. § 1962(c) are separate from, though employed by or associated with, MGA, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group.

95.    MGA had a role in the racketeering activity that was distinct from the undertaking of those acting on its behalf.  MGA also attempted to benefit, and did benefit, from the activity of its employees and agents alleged herein, and thus was not a passive victim of racketeering activity, but an active perpetrator.

96.    Mattel has been injured in its business or property as a direct and proximate result of the Counter-defendants' and the other enterprise members' violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts constituting the pattern of racketeering activity.

97.    As a result of the violations of 18 U.S.C. § 1962(c), by MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, Brawer, Trueba, Vargas, Brisbois and the Other Former Employees, Mattel has suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special compensatory damages, plus interest, costs and attorneys, fees, incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT B PAGE 108**

**Third Counterclaim**

**Conspiracy To Violate the Racketeer**

**Influenced And Corrupt Organizations Act**

**(18 U.S.C. §§ 1962(d) and 1964(c))**

**(Against All Counter-defendants)**

98.    Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 97, above, as though fully set forth at length.

99.    Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

100.   These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

101.   The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), including acts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18

1  U.S.C. § 2; acts of tampering with witnesses, victims or informants in violation of

2  18 U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of

3  racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; and

4  acts of criminal copyright infringement in violation of 18 U.S.C. § 2319(a) and 17

5  U.S.C. § 506(a)(1)(A).

6       102.  Counter-defendants and the other members of the MGA Criminal

7  Enterprise schemed to defraud Mattel and steal its property and trade secret

8  information by means of false representation, breaches of fiduciary duty,

9  conversation and concealment, as more fully set forth in the foregoing paragraphs.

10       103.  In furtherance of this unlawful conspiracy, and to effect its

11  objectives, Counter-defendants and various co-conspirators committed numerous

12  overt acts, including but not limited to those set forth in the foregoing paragraphs.

13       104.  Mattel has been injured in its business or property as a direct and

14  proximate result of the Counter-defendants' and the other enterprise members'

15  violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts

16  constituting the pattern of racketeering activity.

17       105.  As a result of the conspiracies between and among all Counter-

18  defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has

19  suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18

20  U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

21  compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

22  of Counter-defendants' violations of 18 U.S.C. § 1962(d).

### Fourth Counterclaim

### Misappropriation of Trade Secrets

### (Against Counter-defendants MGA, MGA de Mexico,

### Larian, Machado and Does 4 through 10)

27       106.  Mattel repeats and realleges each and every allegation set forth in

28  paragraphs 1 through 105, above, as though fully set forth at length.

107. As used herein, "Trade Secret Material" shall mean the documents, materials and information stolen by Machado, Trueba, Vargas, Brisbois, the Other Former Employees, and other persons acting for, on behalf of or at the direction of MGA and/or Larian. Prior to their theft by Counter-defendants, the Trade Secret Materials gave Mattel a significant competitive advantage over its existing and would-be competitors, including MGA. This advantage, as to MGA, has now been compromised as a result of Counter-defendants' unlawful activities.

108. Mattel made reasonable efforts under the circumstances to maintain the confidentiality of the Trade Secret Materials, including by having employees and consultants who may have access the Trade Secret Materials sign confidentiality agreements that oblige them not to disclose the Trade Secret Materials or characteristics of the Trade Secret Materials; by limiting the circulation of said materials within Mattel; by protecting and limiting access to computers with log-in identifications and passwords; by limiting each employee's access to electronic files to those that the particular employee needs to access; by educating employees on the nature of Mattel's information that is confidential and proprietary; and by reminding employees on a regular and periodic basis of their obligation to protect and maintain Mattel's confidential and proprietary information.

109. Mattel's Trade Secret Materials derive independent economic value from not being generally known to the public or to other persons who can obtain economic benefit from their disclosure.

110. Counter-defendants have illegally obtained the trade secret materials, as set forth above, and through other means of which Mattel is presently unaware.

111. Counter-defendants have used and disclosed Mattel's Trade Secret Materials without Mattel's consent and without regard to Mattel's rights, and

2154363.2

**EXHIBIT B PAGE 111**

1   without compensation, permission, or licenses for the benefit of themselves and

2   others.

3      112.  Counter-defendants' conduct was, is, and remains willful and

4   wanton, and was taken with blatant disregard for Mattel's valid and enforceable

5   rights.

6      113.  Counter-defendants' wrongful conduct has caused and, unless

7   enjoined by this Court, will continue in the future to cause irreparable injury to

8   Mattel.  Mattel has no adequate remedy at law for such wrongs and injuries.  Mattel

9   is therefore entitled to a permanent injunction restraining and enjoining Counter-

10  defendants, and each of them, as well as their agents, servants, and employees, and

11  all persons acting thereunder, in concert with, or on their behalf, from further using

12  in any manner Mattel's trade secrets.

13     114.  In addition, as a proximate result of Counter-defendants'

14  misconduct, Mattel has suffered actual damages, and Counter-defendants have been

15  unjustly enriched.

16     115.  The aforementioned acts of the Counter-defendants were willful

17  and malicious, including in that Counter-defendants misappropriated Mattel's trade

18  secrets with the deliberate intent to injure Mattel's business and improve their own.

19  Mattel is therefore entitled to enhanced damages.  Mattel is also entitled to

20  reasonable attorney's fees.

**Fifth Counterclaim**

**Breach of Contract**

**(Against Bryant)**

24     116.  Mattel repeats and realleges each and every allegation set forth in

25  paragraphs 1 through 115, above, as though fully set forth at length.

26     117.  Pursuant to his Employment Agreement, Bryant agreed that he

27  would not, without Mattel's express written consent, engage in any employment or

28  business other than for Mattel or assist in any manner any business competitive

-64-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT B PAGE 112**

1    with the business or future business plans of Mattel during his employment with

2    Mattel.  Pursuant to his Mattel Employment Agreement, Bryant further assigned to

3    Mattel all right, title and interest in "inventions," including without limitation

4    "designs" and other works that he conceived, created or reduced to practice during

5    his employment by Mattel.  In addition, pursuant to the Conflict Questionnaire,

6    Bryant certified that, other than as disclosed, he had not worked for any competitor

7    of Mattel and had not engaged in any business venture or transaction involving a

8    Mattel competitor that could be construed as a conflict of interest.  Bryant further

9    promised that he would notify his supervisor immediately of any change in his

10   situation that would cause him to change any of the foregoing certifications or

11   representations.

12          118.  The Employment Agreement and the Conflict Questionnaire are

13   valid, enforceable contracts, and Mattel has performed each and every term and

14   condition of the Employment Agreement and Conflict Questionnaire required to be

15   performed by Mattel.

16          119.  Bryant materially breached the foregoing contracts with Mattel,

17   in that, among other things, he secretly aided, assisted and worked for a Mattel

18   competitor during his employment with Mattel without the express written consent

19   of Mattel.

20          120.  As a consequence of Bryant's breach, Mattel has suffered and

21   will, in the future, continue to suffer damages in an amount to be proven at trial.

22   Such damages include, without limitation, the amounts paid by the competitor to

23   Bryant during his Mattel employment; the amounts paid by MGA to Bryant during

24   his Mattel employment; the amount that Mattel paid Bryant during the time he

25   wrongfully worked with MGA; the value of information and intellectual property

26   owned by Mattel which Bryant provided to MGA; the value of the benefits that

27   MGA obtained from Bryant during the time he was employed by Mattel; and the

28

1  value of the benefits that MGA obtained from Bryant as a result of the work he

2  performed for or with MGA during his Mattel employment.

3       121.  Bryant's conduct has caused, and unless enjoined will continue to

4  cause, irreparable injury to Mattel that cannot be adequately compensated by

5  money damages and for which Mattel has no adequate remedy at law.  Bryant

6  specifically acknowledged in his Employment Agreement that his breach of the

7  Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be

8  entitled to injunctive relief to enforce this Agreement, in addition to damages and

9  other available remedies."  Accordingly, Mattel is entitled to orders mandating

10  Bryant's specific performance of his contracts with Mattel and restraining Bryant

11  from further breach.

12  ### Sixth Counterclaim

13  ### Intentional Interference with Contract

14  ### (Against MGA, Larian and Does 4 through 10)

15       122.  Mattel repeats and realleges each and every allegation set forth in

16  paragraphs 1 through 121, above, as though fully set forth at length.

17       123.  Valid agreements existed between Mattel and Bryant, Brawer,

18  Machado, Trueba, Vargas, Brisbois and the Other Former Employees (collectively,

19  the "Mattel Employees")

20       124.  At all times herein mentioned, MGA, Larian and Does 4 through

21  10 knew that the Mattel Employees had a duty under their agreements not to work

22  for or assist any competitor of Mattel, such as MGA.  In addition, at all times

23  mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had

24  assigned to Mattel, and was obligated to disclose to Mattel all inventions, including

25  designs and other works, created, conceived or reduced to practice during their

26  employment with Mattel.

27

28

-66-

21 54363.2

125.  Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, induced and encouraged the Mattel Employees to breach their contracts with Mattel.

126.  As a direct and proximate result of Counter-defendants' efforts and inducements, the Mattel Employees did breach their contracts with Mattel.

127.  As a result of said breaches, Mattel has suffered damages and will imminently suffer further damages, including the loss of its competitive position and lost profits, in an amount to be proven at trial.

128.  Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Seventh Counterclaim

### Breach of Fiduciary Duty

### (Against Bryant and Machado)

129.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 128, above, as though fully set forth at length.

130.  Bryant and Machado held positions of trust and confidence with Mattel.  In their positions, Bryant and Machado had access to and were entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of their job assignments and duties.  In their positions, Bryant and Machado also represented Mattel in its dealings with third parties and, in actions in the course and scope of their employment with Mattel, were agents of Mattel.  They confirmed their relationship of trust with Mattel in respective employee agreements.  Bryant and Machado thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests

2154363.2

1   or that would deprive Mattel of any opportunities, profit or advantage which Bryant

2   or Machado might bring to Mattel.

3           131. Bryant breached his fiduciary duty to Mattel in that, while

4   employed by Mattel, he secretly aided and assisted a competitor of Mattel,

5   including without limitation by entering into an agreement with a Mattel

6   competitor. As alleged above, Bryant also breached the aforementioned duty by

7   using Mattel property and resources for the benefit of, and to aid and assist, himself

8   personally and MGA.

9           132. Machado breached his fiduciary duty to Mattel, in that while

10   employed by Mattel, he secretly aided and assisted a competitor of Mattel by,

11   among other things, misappropriating Mattel trade secret and proprietary

12   information and providing said information to officers of MGA. Machado also

13   breached the aforementioned duty by using Mattel property and resources for the

14   benefit of, and to aid and assist, himself personally and MGA.

15           133. As a direct and proximate result of Counter-defendants' wrongful

16   conduct, Mattel has incurred damages in an amount to be determined at trial.

17           134. Counter-defendants acted with malice, fraud and oppression, and

18   in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an

19   award of exemplary damages against Counter-defendants in an amount to be

20   determined at trial.

21           135. Furthermore, Counter-defendants' conduct has caused, and unless

22   enjoined will continue to cause, irreparable injury to Mattel that cannot be

23   adequately compensated by money damages and for which Mattel has no adequate

24   remedy at law. Accordingly, Mattel is entitled to an order restraining further

25   breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants

26   from continuing to benefit from such breach.

27

28

### Eighth Counterclaim

**Aiding and Abetting Breach of Fiduciary Duty**

**(Against MGA, Larian and Does 4 through 10)**

136.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 135, above, as though fully set forth at length.

137.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant held a position of trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to secretly developing and designing Bratz while employed by Mattel and by secretly assisting Larian and MGA .

138.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) held positions of trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to taking confidential trade secret information from Mattel's premises and providing that information to a competitor.

139.   Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, encouraged, aided and abetted and gave substantial assistance to the Mattel Employees to breach their fiduciary duties to Mattel, knowing that their conduct would constitute breaches of their fiduciary duties to Mattel.

140.  As a direct and proximate result of Counter-defendants' efforts, the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has incurred damages in an amount to be proven at trial.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

**EXHIBIT B PAGE 117**

141.  In taking the aforesaid actions, MGA, Larian and Does 4 through 10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

## Ninth Counterclaim

### Breach of Duty of Loyalty

### (Against Bryant and Machado)

142.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 141, above, as though fully set forth at length.

143.  As employees of Mattel, Bryant and Machado owed a duty of undivided loyalty to Mattel.  Pursuant to this duty, Bryant and Machado could not compete with Mattel or assist a competitor of Mattel during their employment with Mattel.  Pursuant to this duty, Bryant and Machado were required to always give preference to Mattel's business over their own, similar interests during the course of their employment with Mattel.

144.  Bryant and Machado breached their duty of loyalty to Mattel in that, while employed by Mattel, they secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into agreements with a Mattel competitor.  As alleged above, they also breached the aforementioned duty by using Mattel property and resources for the benefit of, and to aid and assist, themselves personally and the competitor of Mattel.

145.  As a direct and proximate result of Counter-defendants' wrongful conduct, Mattel has incurred damages in an amount to be determined at trial.

146.  Counter-defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against Counter-defendants in an amount to be determined at trial.

2154363.2

-70-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT B PAGE 118**

147. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining further breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-defendants from continuing to benefit from such breach.

148. In breaching their duty of loyalty to Mattel, Bryant and Machado acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Tenth Counterclaim

### Aiding and Abetting Breach of Duty of Loyalty

### (Against MGA, Larian and Does 4 through 10)

149. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 148, above, as though fully set forth at length.

150. MGA, Larian and Does 4 through 10 knew that Bryant, as an employee of Mattel, owed a duty of loyalty to his employer.  MGA, Larian and Does 4 through 10 knew that this duty included an obligation on the part of Bryant not to compete with Mattel or assist a competitor of Mattel during the term of his employment with Mattel.  MGA, Larian and Does 4 through 10 also knew that Bryant was required to give preference to Mattel's business over his own, similar interests or those of Mattel's competitors. or those of Mattel's competitors during the course of his employment with Mattel.

151. MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) were employed by Mattel, and, as employees of Mattel, that they owed duties of loyalty to Mattel.  MGA, Larian and Does 4 through 10 knew that these duties included an obligation on the part of the Mattel

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT B PAGE 119**

2154363.2

1   Employees (excluding Bryant) not to compete with Mattel or assist a competitor of

2   Mattel during their Mattel employment.

3   152. Despite such knowledge, Counter-defendants MGA, Larian and

4   Does 4 through 10 intentionally and without justification solicited, encouraged,

5   aided and abetted and gave substantial assistance to the Mattel Employees to

6   breach their duties of loyalty to Mattel, knowing that their conduct would constitute

7   breaches of their duties of loyalty to Mattel.

8   153. As a further consequence of Counter-defendants' efforts, Mattel

9   has suffered injury and is entitled to compensatory damages in an amount to be

10   proven at trial.

11   154. In taking the aforesaid actions, MGA, Larian and Does 4 through

12   10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

13   rights. Accordingly, Mattel is entitled to recover exemplary damages from

14   Counter-defendants in an amount to be determined at trial.

15   <u>**Eleventh Counterclaim**</u>

16   **Conversion**

17   **(Against All Counter-defendants)**

18   155. Mattel repeats and realleges each and every allegation set forth in

19   paragraphs 1 through 154, above, as though fully set forth at length.

20   156. Counter-defendants wrongfully converted Mattel property and

21   resources by appropriating and using them for their own benefit and gain and for

22   the benefit and gain of others, without the permission of Mattel.

23   157. Mattel was entitled to, among other things, the exclusive right

24   and enjoyment in property and tangible materials owned by Mattel, including

25   without limitation such proper and materials that were created by Bryant while he

26   was a Mattel product designer. Such property was taken by Bryant from Mattel to

27   further his own interests and, in at least some instances, provided by Bryant to

28   Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

2154363.2

-72-

**EXHIBIT B PAGE 120**

158. In addition, Counter-defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices. Counter-defendants did so without Mattel's permission and continue to possess them.

159. As a direct and proximate result of Counter-defendants' wrongful conversion of Mattel property, including those relating to Bratz and Mattel's Trade Secret Materials, Mattel has incurred damages. Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

160. As a result of Counter-defendants' acts of conversion, Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss suffered, which is not measured by the value of the property misappropriated, but includes the lost profits that Mattel suffered as a result of the conversion or, alternatively, the profits generated by the Counter-defendants that would not have been generated but for the conversion. Only such a measure of damages would fully and fairly compensate Mattel for the injury it suffered due to Counter-defendants' acts of conversion.

161. Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

162. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining Counter-defendants from further conversion of Mattel property and resources and/or restraining Counter-defendants from continuing to benefit from such conversion.

-73-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT B PAGE 121**

### Twelfth Counterclaim

**Unfair Competition**

**(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

**(Against All Counter-defendants)**

163. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 162, above, as though fully set forth at length.

164. Section 17200 of the California Business and Professions Code prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

165. By engaging in the foregoing conduct, Counter-defendants have, individually and in combination, engaged in unlawful, unfair and/or fraudulent acts of unfair competition in violation of both the common law of the state of California and *Cal. Bus. & Prof. Code* § 17200 *et seq.* Such conduct included, without limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code* § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a). Such conduct also included, without limitation, MGA's and Larian's disparagement of Mattel's products and misrepresentations as alleged above.

166. As a result of the aforementioned conduct, Mattel has suffered damages and will imminently suffer further damages, including but not limited to lost profits in an amount to be proven at trial. No adequate remedy at law exists for the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel is entitled to an injunction enjoining Counter-defendants' continued wrongful acts. Mattel is also entitled to recover compensatory and exemplary damages pursuant to the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

2154363.2

-74-

**EXHIBIT B PAGE 122**

### Thirteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

167. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168. As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169. Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170. Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

### Prayer for Relief

WHEREFORE, Mattel respectfully requests judgment:

1. For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

created or reduced to practice by Bryant during the term of his Mattel employment and/or by any others then-employed by Mattel, as well as in all derivatives prepared therefrom, and that Mattel is the true owner of the foregoing;

2. For a declaration that any agreement between Bryant, on the one hand, and MGA or any person or entity, on the other hand, in which Bryant purported to assign any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect;

3. For an Order enjoining and restraining Counter-defendants, their agents, servants and employees, and all persons in active concert or participation with them, from further wrongful conduct, including without limitation from imitating, copying, distributing, importing, displaying, preparing derivatives from and otherwise infringing Mattel's copyright-protected works;

4. For an Order, pursuant to 17 U.S.C. § 503(a) and other applicable law, impounding all of Counter-defendants' products and materials that infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles by which copies of the works embodied in Mattel's copyrights may be reproduced or otherwise infringed;

5. For an Order mandating that Counter-defendants return to Mattel all tangible items, documents, designs, diagrams, sketches or any other memorialization of inventions created or reduced to practice during Bryant's employment with Mattel as well as all Mattel property converted by Counter-defendants;

6. For an Order mandating specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

7. That Mattel be awarded, and Counter-defendants be ordered to disgorge, all payments, revenues, profits, monies and royalties and any other benefits derived or obtained as a result of the conduct alleged herein, including

without limitation of all revenues and profits attributable to Counter-defendants' infringement of Mattel's copyrights under 17 U.S.C. § 504;

       8.   For an accounting of all profits, monies and/or royalties from the exercise of ownership, use, distribution, sales and licensing of Bratz;

       9.   For the imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and all profits, monies, royalties and any other benefits derived or obtained from Counter-defendant's exercise of ownership, use, sale, distribution and licensing of Bratz;

      10.   That Mattel recover its actual damages and lost profits;

      11.   That Counter-defendants be ordered to pay exemplary damages in a sum sufficient to punish and to make an example of them, and deter them and others from similar wrongdoing;

      12.   That Counter-defendants be ordered to pay treble its general and special damages, plus interest, costs and attorney's fees incurred by reason of Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

      13.   That Counter-defendants be ordered to pay double damages due to their willful and malicious misappropriation of Mattel's trade secrets with deliberate intent to injure Mattel's business and improve its own;

      14.   That Counter-defendants pay to Mattel the full cost of this action and Mattel's attorneys' and investigators' fees; and

**EXHIBIT B PAGE 125**

1        15.   That Mattel have such other and further relief as the Court may

2  deem just and proper.

3

4  DATED:  July 12, 2007        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                     By_____

7                     John B. Quinn

8                     Attorneys for Defendant and Counter-claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

154363.2

-78-

**EXHIBIT B PAGE 126**

1

## DEMAND FOR JURY TRIAL

2

3          Mattel, Inc. respectfully requests a jury trial on all issues triable

4   thereby.

5

6   DATED:  July 12, 2007              QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
7

8                                      By _____
                                              John B. Quinn
9                                             Attorneys for Defendant and Counter-
                                              claimant Mattel, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2154363.2

-79-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT B PAGE 127**

**Exhibit A**

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

**1. Provisions Related to Trade Secrets**

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including Information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in the Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

**2. Ownership of Inventions**

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

**3. Conflicts with Other Activities**

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

**4. Miscellaneous**

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. The Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

_Employee Signature_

CARTER H. BRYANT
Employee Name (print)

01/04/99
Date

MATTEL, INC.

By: _Teresa Newcomb_
Signature

TERESA NEWCOMB
Name of Witness (print)

**Exhibit B**

## CONFLICT OF INTEREST QUESTIONNAIRE

BRYANT, CARTER H.          PROJECT DESIGNER

Name (Last, first, M.I.) _____ Job Title _____ Department _____

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. **You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.**

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

○ YES  ● NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

○ YES  ● NO   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

○ YES  ● NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES  ○ NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES  ○ NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

○ YES  ● NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

○ YES  ● NO   7. Have you engaged in any activity including the acquisition or ownership of any interest for personal profit not expressly within the scope of the foregoing with respect to any supplier or competitor?

○ YES  ● NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

○ YES  ● NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

_4, 5, freelance design & artwork in 1998, from apprx. 5/98 - 11/98 for the Ashton Drake galleries_

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitues grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

Signature _Carter H. Bryant_                    Date _01/04/98_

EXHIBIT _B_ PAGE _81_          M 0001621

**EXHIBIT B PAGE 131**

Exhibit C

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

December 20, 2007

**VIA FACSIMILE AND FEDEX**

John M. Baran
Ernst & Young LLP
725 South Figueroa St., Suite 300
Los Angeles, CA 90017

Re:    Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Mr. Baran:

I write to follow-up on our conversation on December 20, 2007 regarding Ernst & Young's production of documents responsive to Mattel's subpoena for documents. We understand that Ernst & Young has gathered (but not copied) approximately 60,000 pages of responsive documents. Ernst & Young is currently awaiting resolution of MGA's objections to Mattel's document subpoena. Mattel is scheduled to confer with MGA on December 21, 2007 at 2:00 p.m. regarding MGA's objections to Mattel's document subpoena to Ernst & Young. We will apprise you of the outcome of that meet and confer. We also offered to send a paralegal to Ernst & Young to review these documents to determine which are responsive and to possibly reduce copy costs. We anticipate further discussions in this regard after our meet and confer with MGA.

If you have any questions, then please do not hesitate to contact me.

Very truly yours,

Jon D. Corey

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

**EXHIBIT C PAGE 132**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**    December 20, 2007                    **NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| John M. Baran<br>Ernst & Young LLP | 213/977-3200 | 213/977-3729 |

**FROM:**    Michael L. Fazio

**RE:**    Mattel v. Bryant - Case No. CV 04-9049 SGL (RNBx)

**MESSAGE:**

Please see attached



| CLIENT # | 07209 | ROUTE/<br>RETURN TO: | Rebecca Moran | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?   ☐ NO  ☐ YES: _____ | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

**EXHIBIT C PAGE 133**

# Confirmation Report — Memory Send

Page       : 001
Date & Time: 12-20-2007   15:55
Line 1     : 2134433100
Line 2     :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 943 |
| Date | : | 12-20  15:54 |
| To | : | ☎76706#7209#12139773729 |
| Number of pages | : | 002 |
| Start time | : | 12-20  15:54 |
| End time | : | 12-20  15:55 |
| Pages sent | : | 002 |
| Status | : | OK |

Job number   : 943          *** SEND SUCCESSFUL ***

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:      December 20, 2007                NUMBER OF PAGES, INCLUDING COVER:

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| John M. Baran<br>Ernst & Young LLP | 213/977-3200 | 213/977-3729 |

FROM:      Michael L. Fazio

RE:        Mattel v. Bryant - Case No. CV 04-9049 SGL (RNBx)

MESSAGE:

Please see attached

| | | |
|---|---|---|
| CLIENT #    07209 | ROUTE/<br>RETURN TO: Rebecca Morah | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
| OPERATOR: | CONFIRMED?   ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

**EXHIBIT C PAGE 134**

Exhibit D

00029/2340430.1

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

December 24, 2007

**VIA FACSIMILE AND FEDEX**

Neal A. Potischman
Davis Polk & Wardwell
1600 El Camino Real
Menlo Park, California 94025

Re:   Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Mr. Potischman:

I write to follow-up on our December 20, 2007 telephonic meeting of counsel regarding Wachovia's objections to Mattel's subpoena for documents.

As we stated during the meet and confer, Mattel does not seeks documents that reflect Wachovia's policies, procedures or methods relating to its underwriting or syndication of loans. Mattel does, however, seek documents that reflect particular areas of interest related to Wachovia's loans to MGA in 1999-2000 and 2006.  Based upon our conversation, we understand that these loans are the only two loans that Wachovia made to MGA, but ask that you confirm this is the case.

During our call, you requested that we provide examples of the types of documents sought by Mattel and how those documents relate to the issues in this case.  In response, Mattel stated that it seeks documents that relate to any representations made by MGA or Isaac Larian to Wachovia regarding the value of MGA's good will and intellectual property in conjunction with these two loans.  As we stated during the call, these documents relate to Mattel's assessment of MGA's net worth and, thus far, MGA has taken the position that it has no such information.

As another example, Mattel seeks any documents that refer or relate to misrepresentations made by either MGA or Isaac Larian to Wachovia, or inaccurate information provided by them to Wachovia, relating to MGA's loan applications, supporting paperwork and/or Wachovia' funding

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

of those two loans.  To the extent that Isaac Larian is an individual defendant in the underlying action, Mattel also seeks financial information provided by Mr. Larian to Wachovia and Wachovia's assessment of the quality of that financial information.  As we stated during our call, this information is essential so that Mattel may assess Mr. Larian's credibility—an inquiry that is paramount to the underlying action.

Another example of the documents sought by Mattel are MGA's internal financial data, excluding MGA's audited financial statements, for 2006.  Mattel also requests that Wachovia produce the 2006 MGA loan agreement.  Mattel is willing to wait until its pending motion to compel is decided before insisting that Wachovia produce the 2006 MGA loan agreement.

Finally, Mattel seeks the three boxes of loan documents referenced in the 2005 letter appended to Mattel's subpoena for documents.  We understand that Wachovia has gathered those documents.

Based upon our conversation today, I understand that you will address these requests with your client, and we will resume discussions on Thursday, December 27, 2007 at 9:00 a.m.

If you have any questions, then please do not hesitate to contact me.

Very truly yours,

Jon D. Corey

2

# Confirmation Report — Memory Send

```
Page       : 001
Date & Time: 12-24-2007   10:52
Line 1     : 2134433100
Line 2     :
Machine ID : QUINN EMANUEL
```

| | | |
|---|---|---|
| Job number | : | 966 |
| Date | : | 12-24  10:50 |
| To | : | ☎00071#07209#16507523621 |
| Number of pages | : | 003 |
| Start time | : | 12-24  10:50 |
| End time | : | 12-24  10:52 |
| Pages sent | : | 003 |
| Status | : | OK |

FAXED
DEC 2 4 2007

Job number    : 966              *** SEND SUCCESSFUL ***

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:     December 24, 2007                NUMBER OF PAGES, INCLUDING COVER: 3

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Neal A. Potischman<br>Davis Polk & Wardwell | 650-752-2021 | 650-752-3621 |

FROM:     Jon Corey

RE:       Mattel, Inc. v. Carter Bryant, et al.

MESSAGE:

Please see attached.

| 07209/2310481.1 | | | | |
|---|---|---|---|---|
| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Johanna Lopez | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
| OPERATOR: | | CONFIRMED? | ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

**EXHIBIT D PAGE 137**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

<u>NEW YORK</u>
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

<u>LOS ANGELES</u>
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

<u>SAN FRANCISCO</u>
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

<u>SILICON VALLEY</u>
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**    December 24, 2007

**NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Neal A. Potischman<br>Davis Polk & Wardwell | 650-752-2021 | 650-752-3621 |

**FROM:**    Jon Corey

**RE:**    Mattel, Inc. v. Carter Bryant, et al.

**MESSAGE:**

Please see attached.

07209/2310481.1

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Johanna Lopez | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?  ☐ NO  ☐ YES: _____ | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

## EXHIBIT D PAGE 138

Exhibit E

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:     (415) 774-2611
4  Facsimile:     (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13              Plaintiff,

14       v.                                Consolidated with
                                           Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16              Defendant.                 **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
17                                         MOTION TO COMPEL PRODUCTION
                                           OF DOCUMENTS BY ISAAC LARIAN;
18                                         DENYING REQUEST FOR
                                           SANCTIONS**
19

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23

24                        I. INTRODUCTION

25       On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

26  of Documents by Isaac Larian and for Award of Monetary Sanctions."  Specifically, Mattel seeks

27  an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

28  Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

    Bryant v. Mattel, Inc.,                                                    1
    CV-04-09049 SGL (RNBx)

                            **EXHIBIT E PAGE 139**

15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199, 207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents withheld based on any claimed privilege.  Mattel also seeks an award of sanctions against Larian in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing this motion.  Larian submitted an opposition on December 5, 2007.[1]  Mattel submitted a reply on December 10, 2007.  The matter was heard on December 14, 2007.  Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of Documents and Things to Larian, the CEO and majority owner of MGA.  On August 6, 2007, Larian filed his initial responses and objections.  The parties met and conferred, and on September 25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the 276 Requests.  The parties met and conferred further, and Larian ultimately agreed to provide further responses to 55 of the disputed 87 Requests.  Specifically, Larian agreed to supplement his responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that have not previously been produced."  MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories:  (1) personal financial data; (2) communications with Mattel employees; (3) statements to the media; (4) telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position.  The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

**EXHIBIT E PAGE 141**

1    he will do so.  Second, Larian's agreement to produce responsive documents is apparently limited

2    to documents from his so-called "personal files."  See Opposition at 2:2-3.

3          Mattel's counsel "never agreed that Larian could limit his response to the above requests

4    to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5    response to documents in Larian's 'personal files.'"  Supp. Decl. of Scott B. Kidman.

6    Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7    Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8    parties' "possession, custody or control."  The limitation is also unworkable because, as Mattel

9    points out, it "would create a situation by which responsive and highly relevant documents might

10   never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11   Larian, on the other hand, deems [a] document not to be part of his 'personal files.'"  Reply at p.6.

12   Market Research for Products Not at Issue:  Request Nos. 79-81

13          In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14   Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In

15   his supplemental response, Larian agrees to produce the following documents, subject to his

16   general objections:

17          Larian will produce all documents within his possession, custody, or control that
             relate to focus groups for "MGA contested products" and "Mattel contested
18           products," as those terms are defined in Mattel's First Requests for Production
             regarding Claims of Unfair Competition, if any, and that have not already been
19           produced, that he discovers in the course of his reasonable search and diligent
             inquiry, and to which no privilege or other protection applies, including without
20           limitation, the attorney-client privilege or attorney's work product doctrine.

21   Mattel's Consolidated Separate Statement at pp. 20-21.

22          In Request No. 80, Mattel seeks all documents relating to any services or work performed

23   by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

24   videotapes, summaries, notes and reports associated therewith.  In his supplemental response,

25   Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

26   the request and to which no privilege or other protection applies.

27

28
4

1    In Request No. 81, Mattel seeks all documents relating to Alaska Momma.  In his

2  supplemental response, Larian agrees to produce all documents relating or referring to Bratz,

3  Angel or Bryant that are responsive to the request and to which no privilege or other protection

4  applies.

5    Mattel contends that the requests are as narrowly tailored as possible to capture relevant

6  information.  More specifically, Mattel contends that Request No. 79 seeks documents that bear

7  directly on the timing of the development of Bratz, as well as MGA's unfair competition claims

8  and Mattel's defense thereto.  Mattel contends that the requested documents may demonstrate that

9  MGA is guilty of copying Mattel's Barbie and My Scene products.

10    Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome.  As an

11  example, Larian points to Request No. 80, which requests all documents relating to any services

12  or work performed by L.A. Focus, regardless of whether that work has any relation to the claims

13  and defenses in the action or any of the products at issue.  Larian similarly contends that Request

14  Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or

15  defense in this case.

16    Mattel's motion to compel Larian to produce all documents responsive to Request No. 79

17  is granted.  The request is reasonably limited in subject matter to Bratz and Angel.  The requested

18  documents are relevant to several issues in the case, including the origin, conception and creation

19  of Bratz.  The requested documents are also relevant to the unfair competition claims.  Larian's

20  supplemental response to Request No. 79 is unduly restrictive.  Among other things, the

21  definitions of "contested MGA products" encompass only those products that provide a basis for

22  any claim by MGA against Mattel, and not claims by Mattel against MGA.

23    Mattel's motion to compel Larian to produce all documents responsive to Request Nos.

24  80-81 is denied.  These requests, as drafted, are clearly overbroad because they have no

25  reasonable limitations on subject matter or time.  In particular, the requests are directed to L.A.

26  Focus and Alaska Momma without regard to whether the services or work the companies

27  provided has any relation to any product at issue.

28    Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

**EXHIBIT E PAGE 143**

documents related to the products at issue:  Bratz and Angel.  In Mattel's view, Larian's supplemental response is too narrow and "may result in the exclusion of highly relevant documents because the project, concept or design that is the subject of the focus group is deemed not to relate to something then known as Bratz or Angel."  However, Larian acknowledges that these types of hypothetical documents would still fall within the narrower scope of production proposed in his supplemental response.

Mattel also contends that it is entitled to all of the requested documents called for by Request No. 80 because they are relevant to credibility and bias, particularly if the documents show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A. Focus used.  It is, however, not apparent how deviations from standard procedures would impact credibility or bias.

As to Request No. 81, Mattel contends that the documents showing the relationship between Larian or MGA and Alaska Momma are relevant, even if they do not themselves specifically relate to Bratz, Angel or Bryant.  Mattel contends that communications from Larian or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's and Bryant's stories about how and when they came to be introduced.  Mattel also contends that documents showing other dealings between Larian or MGA and Alaska Momma are relevant to the issues of bias and credibility.  Mattel's supposition about the types of documents that might exist does not justify the type of far-reaching request it has propounded.  Request No. 81 is also not limited by either subject matter or time.

Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in accordance with his supplemental responses.

Bryant's Attorney and Niece:  Request Nos. 113-115

In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne Wang, a lawyer who represented Bryant in his contract negotiations with MGA.  In Request No. 114, Mattel seeks all documents, including without limitation all communications, between

Larian or MGA and Anne Wang. In Request No. 115, Mattel seeks documents relating to Brooke Gilbert, Bryant's niece. In his supplemental responses, Larian agrees to produce documents relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or other protection applies. Thus, the only issue is whether Larian should be required to produce responsive documents that do not relate to Bratz, Angel or Bryant.

Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin and conception of Bratz and the timing thereof. Mattel also contends that the documents may disclose relevant information regarding Mattel's claims for breach of contract and inducing breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's contractual obligations with Mattel. Mattel also contends that Larian has failed to carry his burden of demonstrating that the requests are overly burdensome.

Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114 are inadequate because the limitations on scope may eliminate otherwise relevant documents that do not specifically refer to Bratz, Angel or Bryant. For example, Mattel contends that communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or Bryant may be relevant to the issues of credibility and bias.

Mattel contends that Request No. 115 seeks documents that are relevant to determine whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software that had been installed and run on the hard drive. Bryant claims to have given his computer to his niece. Mattel also contends that the requested documents are relevant to the issues of credibility and bias. Further, Mattel contends that Larian's supplemental response to Request No. 115 is inadequate, because evidence of any communication between Larian and his niece, regardless of subject matter, is significant.

Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome because they lack any subject matter or time constraints. Further, Larian contends that the requests constitute an improper fishing expedition and necessarily sweep in documents that are not relevant to any claim or defense.

//

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2  requests are overbroad because they are not focused on relevant subject matter and are untethered

3  to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4  Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5  is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and

7  responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in

8  accordance with his supplemental responses.

9

   The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125

10   In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

11  suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all

12  documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

13  Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

14  and/or audio recordings and sworn testimony given by any person in such suit or arbitration

15  proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,

16  resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

17  Larian. In his supplemental responses, Larian agrees to produce all documents referring or

18  relating to Bratz that are responsive to the requests and to which no privilege or other protection

19  applies.

20   Mattel contends that the court has already ruled that the arbitration proceedings between

21  Larian and his brother are relevant because they involve, among other matters, the conception and

22  creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit

23  the requests to the exclusion of potentially relevant documents. For example, Mattel contends

24  that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

25  to the timing of the development of Bratz, whether or not they specifically refer to Bratz.

26  Mattel also contends that the requested documents are relevant to the value of the Bratz brand and

27  the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28

example, profits from the sale and licensing of Bratz and other information that would impeach Larian's testimony that he has not made any profits from Bratz.  Further, Mattel contends that the requested documents may lead to evidence of the assessments or valuations of the net worth or value of MGA or Larian, regardless of any reference to Bratz specifically.  Mattel also contends that settlement documents may contain information that bears on the merit of Farhad Larian's claims and the value of Bratz.  Mattel also claims that the requested documents are relevant to motive, intent, bias and credibility.

Larian contends the instant requests are overbroad and unduly burdensome.  Further, Larian contends that the relationship of the requested documents to any of the claims or defenses in the present action is questionable, and the existence of such documents is conjectural.  Moreover, Larian contends that many of the categories of documents of interest to Mattel are already the subject of other requests.  Larian also contends that Request Nos. 123-125 impose an undue burden because of the protective orders in place that strictly limit the use of any documents from an arbitration and suit between Larian and his brother.  Larian represents that he is currently working with Mattel and his brother in an attempt to achieve suitable modifications to the orders that are agreeable to all parties.

Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is denied.  The requests are clearly overbroad in calling for all documents from the arbitrations and suits between Larian and his brother, without any subject matter limitations.  Furthermore, these requests are unduly burdensome to the extent they require production of documents that do not refer or relate to Bratz.  Such documents have marginal relevance, at best, to the claims and defenses in the case.

Larian's supplemental responses to Request Nos. 123 -125 are sufficient.  Larian's agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will enable Mattel to obtain documents relevant to the claims and defenses in the case, including many of the categories of documents of interest to Mattel.  For example, under Larian's proposed limitation, documents that relate to the business, activities and plans of MGA in 2000 that also refer or relate to Bratz must be produced.  Documents relating to the value of the Bratz brand are

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

1    also within the scope of Larian's proposed limitation and would have to be produced.  Documents

2    relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3    produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery

4    regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to

5    MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6    projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian

7    shall produce documents responsive to Request Nos. 123-125 in accordance with his

8    supplemental responses.

9    
     Telephone Records:  Request Nos. 178-181

10        In Request No. 178, Mattel seeks all documents relating to, including without limitation

11   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

12   from January 1, 1998 through January 1, 2001.  Larian objects to this request.

13        In Request No. 179, Mattel seeks all documents relating to, including without limitation

14   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

15   from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental

16   responses, Larian agrees to produce documents responsive to Request No. 179.  In response to

17   this motion, however, Larian contends that he should be permitted to produce documents

18   responsive to Request No. 179 in redacted form as discussed more fully below.

19        In Request No. 180, Mattel seeks all documents relating to, including without limitation

20   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

21   from April 1, 2004 through June 1, 2004.  Larian objects to this request.

22        In Request No. 181, Mattel seeks all documents relating to, including without limitation

23   phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

24   at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to

25   communications made prior to January 1, 2001 that are responsive to the request and to which no

26   privilege or other protection applies.

27   //

28   
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                    10

Mattel contends that Request No. 178 seeks documents relevant to show Larian's communications with Bryant and other Mattel employees while such employees may still have been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them to steal Mattel trade secrets.

Further, Mattel contends that the requested documents regarding telephone records are relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent they show communications with current and former Mattel employees, including Machado, Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to burden, Mattel contends that it would be more burdensome to attempt to produce the requested records in redacted form, and further, that the protective order in place is sufficient to protect Larian's privacy concerns.

Larian contends that the requests regarding telephone records are overbroad, completely unbounded as to subject matter, and necessarily sweep in private information that is completely irrelevant to any of the claims or defenses in the case. Larian also points out that the court previously considered similar requests served on Bryant and allowed production of redacted copies of telephone records as long as Bryant provided a signed verification that none of his redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically, Bryant was permitted to produce redacted phone records as long as he provided a "signed verification that none of the telephone records that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA." Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production of Documents by Bryant). Larian contends that he should be permitted to redact responsive documents consistent with the court's prior order. During the meet and confer, Larian offered to provide redacted records and a signed verification that none of the redacted information was

1    relevant to the case, but Mattel did not respond to the offer.

2         Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3    relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The

4    request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5    private information that is completely irrelevant to the case. Larian should not be subjected to

6    such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7    the request to the communications, claims, and defenses identified above.

8         In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9    for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10   (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request

11   No. 179, as stated in his supplemental response. Larian's proposal to produce responsive

12   documents in redacted form is appropriate to address his privacy concerns. More specifically,

13   Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14   provides a signed verification that none of the redacted material refers or relates in any way to

15   MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

     or that are otherwise relevant to the case.

16        Mattel's motion to compel documents responsive to Request No. 180 (documents relating

17   to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180

18   is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

19   employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. See

20   Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents

21   responsive to Request No. 180 in redacted form as specified above with respect to Request No.

22   179.

23        Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

24   is overbroad as written because it has no time limits. In his supplemental response, Larian agrees

25   to produce communications prior to January 1, 2001 that are responsive to the request. Larian's

26   proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

27   without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                          12

**EXHIBIT E PAGE 150**

1   Request No. 181 consistent with his supplemental response, and may produce such documents in

2   redacted form as specified above with respect to Request No. 179.

3

4   Statements to the Media:  Request Nos. 190-192, 194-197 and 199

5          In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6   and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7   Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8   to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9   Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10  regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11  products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12  Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13  also contain admissions regarding the origin and conception of Bratz and statements relevant to

14  damages.

15         Larian contends that the requests are overbroad and unduly burdensome, particularly

16  because several of the requests seek publicly available information.  Further, Larian points out

17  that the court has already considered and rejected as overbroad a nearly identical request served

18  on MGA that called for all documents relating to any communications by MGA with any news

19  organization regarding the contested MGA products or the contested Mattel products.  Larian

20  contends that the same reasoning applies to the instant requests.

21         Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

22  199 is denied.  Although several of the requests encompass potentially relevant documents, the

23  requests are overbroad and encompass documents that have little to no relevance to the claims and

24  defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

25  sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

26  Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

27  or damages.

28  //

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

**EXHIBIT E PAGE 151**

Furthermore, many of these overbroad requests seek publicly available information that is readily accessible to Mattel for which Larian should not be burdened. To the extent the requested documents and information are not publicly available, such documents and information are marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm. In either case, the burden and expense of searching for and producing responsive documents are unjustified.

Communications With Mattel Employees:  Request No. 198

In Request No. 198, Mattel seeks all communications between Larian and any individual while the individual was employed by Mattel. Mattel contends that this request is directly relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported burden of production.

Larian contends that the request is overbroad and unduly burdensome because it is unrestricted as to time and subject matter. Larian also points out that the court has previously found a similar request overbroad. Larian further contends that employees in the toy industry are likely to maintain contacts with other toy manufacturers, and that a large corporation such as Mattel is likely to have a high number of employees communicating with MGA or its officers, which makes the request more unduly burdensome and unreasonable than it appears on its face.

Unlike other requests regarding communications, Request No. 198 is reasonably tailored to the specific and numerous allegations in the case regarding alleged trade secret theft. Although the request is not limited by subject matter, it is limited in other respects to seek relevant documents without imposing an undue burden. The request is limited to communications between Larian (and not MGA or persons acting on his behalf) and individuals employed at Mattel. The request is also limited to only those communications that took place while the individuals were employed at Mattel.

Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's allegations of trade secret theft. The alleged trade secret theft began with Bryant's conduct in 1999 and continued to 2005. Accordingly, Larian shall produce documents responsive to Request

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

**EXHIBIT E PAGE 152**

No. 198 that are limited to the time frame 1999 to 2005.

Personal Financial Data:  Request Nos. 207-209 and 269

In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks or financial institutions and other banking relationships since January 1, 1999.  In Request No. 208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from 1999 to the present.

Mattel contends that Request No. 207 seeks information reasonably calculated to lead to information showing the timing of payments to Bryant and others, which in turn is relevant to the timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos. 208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to information regarding the sources of Larian's income to determine whether they are attributable to the alleged misconduct and thus subject to disgorgement.

Larian contends that the requested personal financial information is not relevant to the claims or defenses at issue.  More specifically, Larian contends that neither the names of his banks nor his gross income have any bearing upon either compensatory or punitive damages or Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

Larian also contends that all three of the requests overlap substantially with requests Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or burden posed by these requests to him.  Further, Larian contends that the court has previously found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered no reason why the same result should not apply here.

Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

1   requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2   several issues in the case.  For example, the requested information is likely to lead to information

3   regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4   the creation of Bratz.  The requested information is also likely to show Larian's income and net

5   worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are

6   unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial

7   information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8       Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9   Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein

10  and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

11  returns.

12  <u>Storage Devices:  Request Nos. 222 and 224</u>

13      In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14  to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15  delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a

16  request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17  electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer

18  hard drives and other storage devices.

19      Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20  ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard

21  drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22  states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23  create a routine right of direct access to a party's electronic information system."  <u>See</u>

24  Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for

25  an inspection of his electronic devices because there is no allegation that he improperly deleted

26  documents.

27      Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

**EXHIBIT E PAGE 154**

1   With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to

2   authorize the routine production of a party's electronic devices.  Mattel attempts to justify

3   Request No. 222 by pointing to various instances of alleged destruction of evidence.  See Mattel's

4   Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer

5   laptops; "wiping" information from the hard drives of Larian's computer laptops every six

6   months; redacting  "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and

7   destructive testing of Bryant's original Bratz drawings).  However, Mattel fails to explain how

8   these alleged instances of evidence destruction justify Request No. 222, other than to assert that it

9   has a right to inspect Larian's storage devices to ensure that relevant information has not been

10  deleted or permanently destroyed.  Mattel's stated purpose suggests instead that Mattel is

11  launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal

12  Rules of Civil Procedure.  See e.g. Rivera v. NIBCO, Inc., supra.  Furthermore, Mattel's stated

13  purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.

14  Among other things, Request No. 222 encompasses every storage device that Larian has used to

15  copy digital information relating to Bratz.  Mattel does not need every CD and DVD containing

16  copies of Bratz-related video and audio content, but that is what the request seeks.

17          Request No. 222 is also duplicative because it requests information that is sought in

18  numerous other requests served on Larian as well as MGA.  Mattel has served hundreds of

19  requests for documents and communications relating to Bratz, Angel, and Bryant.  To comply

20  with the requests, Larian was required to search for documents in both hard-copy and electronic

21  form.  Under the circumstances, it is unnecessary for Larian to also produce the requested storage

22  devices.

23          Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims

24  and defenses in the case, and therefore do not justify the burden of production on Larian.

25  Bryant's Storage Devices:  Request Nos. 225, 227 and 228

26          In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents

27  relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                    17

1   receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2        Larian contends that the requests are improperly directed to him because he does not have

3   personal possession of Bryant's hard drive or storage devices, or other information about those

4   devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5   requests are overbroad and unduly burdensome for the reasons discussed above in connection

6   with Request Nos. 222 and 224.

7        Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8   denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9   MGA Hong Kong and MGA Mexico: Request Nos. 272 and 273

10       In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

11  Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

12  Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

13  produce documents sufficient to show the ownership of these entities.

14       Mattel contends that the requests seek information relevant to refute MGA Mexico's

15  personal jurisdiction defense, and which bear on whether the acts of Larian and others are

16  attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in

17  these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

18  inadequate because it would allow Larian to withhold contradictory information and conceal the

19  true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

20  the ownership of these entities at times when different allegedly wrongful acts took place and to

21  determine if the ownership structure changed as a means of concealing assets or concealing the

22  payments of commercial bribes.

23       Larian contends that these requests should not be made to him, but to the entities

24  themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

25  Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26  served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

27  burdensome, and that at most, he should only have to produce a list of owners.

28

Mattel contends that Larian cannot avoid his duty to respond to these requests simply by saying that the information is obtainable from another source. Further, Mattel contends that Larian has failed to establish that the requests are unduly burdensome.

Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable from another source that is more convenient, less burdensome, or less expensive, namely MGA Mexico and MGA Hong Kong. The requests are also overbroad and unduly burdensome.

IV. CONCLUSION

For the reasons set forth above, it is hereby ordered as follows:

1.      At meet and confer sessions held after the filing of this motion, Larian agreed to produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223. Accordingly, Larian shall produce, without limitation, all non-privileged documents that are responsive to these Requests.

2.      With respect to the remaining requests that are at issue in this motion, Larian shall:

A.      produce, without limitation, all non-privileged documents that are responsive to Request Nos. 79, 180, 198 (for the time period 1999-2005), 207, 208 and 269; and

B.      produce, in accordance with his supplemental responses, non-privileged documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and 209.

C.      Larian may produce documents responsive to Request Nos. 179, 180 and 181 in redacted form as provided herein.

D.      Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199, 209, 222, 224, 225, 227, 228, 272 and 273.

3.      Larian shall produce all non-privileged documents that are required by this Order that are in his possession, custody or control and that have not already been produced no later than January 11, 2008.

4.      Larian shall produce a privilege log no later than January 15, 2008.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

**EXHIBIT E PAGE 157**

1      5.      Mattel's request for sanctions is denied.

2          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3  Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5  Dated: December 31, 2007

                                    HON. EDWARD A. INFANTE (Ret.)
6                                       Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                         20

**EXHIBIT E PAGE 158**

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

_Sandra Chan_
Sandra Chan

Exhibit F

00029/2340430.1

EXHIBIT F REMOVED

PURSUANT TO PROTECTIVE ORDER

Exhibit G

EXHIBIT G REMOVED

PURSUANT TO PROTECTIVE ORDER

Exhibit H

00029/2340430.1

EXHIBIT H REMOVED

PURSUANT TO PROTECTIVE ORDER

# Exhibit I

EXHIBIT I REMOVED

PURSUANT TO PROTECTIVE ORDER

Exhibit J

00029/2340430.1

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

December 7, 2007

**VIA FACSIMILE AND U.S. MAIL**

Timothy A. Miller
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111

Marcus Mumford
Skadden Arps Slate Meagher & Flom, LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Re:    Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Counsel:

I write pursuant to paragraph 5 of the Discovery Master Stipulation to request a meeting of counsel regarding the deficiencies in MGA's Objections to Mattel, Inc.'s Subpoenas to Ernst & Young, Deloitte & Touche and Wachovia Corporation.  The specific deficiencies are outlined below.

I.    **Improper General Objections**

**General Objection No. 2:**

MGA's objection that the documents are protected from disclosure by the accountant-client privilege is without merit.  The United States Supreme Court has recognized that there is "no confidential accountant-client privilege [that] exists under federal law, and no state created privilege has been recognized in federal cases."  Couch v. United States, 409 U.S. 322, 335

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

**EXHIBIT J PAGE 192**

(1972) (collecting cases).  Therefore, MGA's assertion of a non-existent privilege is without basis.

**General Objection No. 3:**

MGA's objection that the subpoenaed documents are protected from disclosure by the federal and state tax return privilege is equally improper.  Under the very cases cited and relied upon by MGA, tax returns "do not enjoy an absolute privilege from discovery."  See Premium Service Corp. v. Sperry & Hutchinson Co., 511 F.2d 225, 229 (9th Cir. 1975).  Rather, the Court may order that tax returns be produced "if they are relevant and when there is a compelling need for them because the information sought is not otherwise available."  Aliotti v. Senora, 217 F.R.D. 496, 498 (N.D. Cal. 2003).  Mattel is unaware of any other source from which it may obtain the requested tax returns.  If some alternative source is available, then please direct us to it.  Nor can MGA rationally contend that the requested tax returns are not relevant to Mattel's counterclaims and defenses.  If that is MGA's assertion, however, then please be prepared to discuss it at the meet and confer.  Where, as here, the requested tax returns are relevant and a protective order mitigates any purported privacy concerns, then the privilege is overruled and the production of tax returns is proper. See A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006).

**General Objection No 4:**

MGA's objection that Mattel's document demands seek documents that are protected as containing trade secrets, confidential information or otherwise protected by a right of privacy is also meritless.  The Court has entered a Protective Order in this action.  Given this salient fact, one would be hard pressed to hypothesize a set of facts that would infringe upon Ernst & Young's, Deloitte & Touche's or Wachovia's privacy interests or other concerns arising from the disclosure of confidential information.  Further, as the Discovery Master previously ruled with respect to the personnel file of Isaac Larian, the Protective Order in place in this case is sufficient to alleviate any privacy concerns.  See Order Dated May 15, 2007 at 11, n.4.

**General Objection No. 6:**

MGA further objects on the ground that the subpoenaed documents are "publicly available" or "are already in plaintiff's possession, custody or control."  Please be prepared to identify at the meet and confer the public source from which the subpoenaed documents are available, or to identify the subpoenaed documents that MGA asserts are already in Mattel's possession.

**General Objection Nos. 5, 7-11:**

Through these objections, MGA generally asserts that Mattel's document demands (including Mattel's definitions) are irrelevant, overbroad, ambiguous, harassing, cumulative, and unduly burdensome.  MGA further asserts that Mattel's document demands are obtainable from other

2

entities and that the requested documents have already been produced.  MGA's objections in this regard are the hallmark of boilerplate objections that are improper under the Federal Rules of Civil Procedure.  See A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (overruling defendant's boilerplate objections as improper and ordering production of documents); Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985) (holding that court did not have discretion to limit discovery on basis of boilerplate objections).

## II.     Improper Specific Objections

MGA's "specific objections" are anything but specific and, in most instances, are just a rehash of MGA general objections.[1]  For example, MGA again objects to each of Mattel's document requests on the ground that the subpoenaed documents may contain trade secrets, confidential information or are otherwise protected by the right of privacy.  This objection is meritless for the reasons discussed in Section I, supra.  Similarly, MGA specifically objects on the ground of accountant-client privilege—a privilege that is not recognized as detailed in Section I, supra.  See generally MGA's Objections to Mattel's Subpoenas to Ernst & Young and Deloitte & Touche.  MGA also specifically objects on the ground of federal and state tax return privilege, which is similarly meritless for the reasons set forth above.  MGA further objects on the ground that the accounting records sought by Mattel contain attorney-client communications or are subject to the work product doctrine.  Mattel does not understand how documents between MGA and their accountants may be protected from disclosure by either of theses privileges.  Further, MGA needs to identify the documents as to which MGA asserts a privilege objection by logging them.

In fact, the only objection that details any minimal degree of specificity is MGA's objection to certain terms that it contends are vague, ambiguous or overbroad.  If MGA, however, purports to not understand what the terms "budget", "audit report", "MGA", "Bratz", "relating to", or "indicating" mean in the context of Mattel's document requests, then Mattel will clarify the meaning of these terms (and the other terms that MGA asserts it does not understand) during the meet and confer.

Please let me know when MGA's counsel is available to meet and confer on these issues within the time required.  I look forward to hearing from you.

Very truly yours,

Jon D Corey

Jon D. Corey

---

[1]     Mattel notes that MGA asserts almost identical "cut and pasted" objections to Mattel's eight different document requests propounded to Ernst & Young and Deloitte & Touche.

3

**EXHIBIT J PAGE 194**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

*FAX*

DEC 0 7 2007

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**    December 7, 2007

**NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Timothy A. Miller, Esq. **Skadden, Arps, Slate, Meagher & Flom LLP - San Francisco** | (415) 984-6400 | (415) 984-2698 |
| Marcus Mumford, Esq. **Skadden, Arps, Slate, Meagher & Flom LLP - Los Angeles** | (213) 687-5000 | (213) 687-5600 |

**FROM:**    Jon D. Corey, Esq.

**RE:**    *Bryant v. Mattel, Inc.*

**MESSAGE: SEE ATTACHED.**

07209/2319839.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Suzanne Johnson - 10 | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

Job number    : 711          *** SEND SUCCESSFUL *

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   December 7, 2007            **NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Timothy A. Miller, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>- San Francisco | (415) 984-6400 | (415) 984-2698 |
| Marcus Mumford, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>- Los Angeles | (213) 687-5000 | (213) 687-5600 |

**FROM:**    Jon D. Corey, Esq.

**RE:**     *Bryant v. Mattel, Inc.*

**MESSAGE: SEE ATTACHED.**

07209/2312439.1

| | | ROUTE/ | | ☐ CONFIRM FAX |
|---|---|---|---|---|
| CLIENT #: | 7209 | RETURN TO: | Suzanne Johnson - 10 | ☒ INCLUDE CONF. REPORT |
| OPERATOR: | | CONFIRMED? | ☐ NO   ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

**EXHIBIT J PAGE 196**

# Group Send Report

Page        : 001
Date & Time: 12-07-2007    17:47
Line 1      : 2134433100
Line 2      :
Machine ID : QUINN EMANUEL

Job number              :   711

Date                    :   12-07  17:45

Number of pages         :   004

Start time              :   12-07  17:45

End time                :   12-07  17:47

Successful nbrs.

    Fax numbers

            ☎9414#07209#14159842699
            ☎9414#07209#12136875600


Unsuccessful nbrs.                                                    Pages sent

**EXHIBIT J PAGE 197**

Exhibit K

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

## 525 UNIVERSITY AVENUE
## PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

December 11, 2007

**By Email and U.S. Mail**

Jon D. Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:   *Carter Bryant v. Mattel, Inc.* Case No. CV 04-9049 SGL (RNBx)
      (consolidated with Cases Nos. CV 04-09059 and CV 05-02727) –
      Request to Meet and Confer re: Various Third Party Subpoenas

Dear Jon:

This responds to your December 7, 2007, letter to Tim Miller and Marcus Mumford requesting that MGA meet and confer regarding its objections to Mattel's subpoenas to Ernst & Young, Deloitte & Touche and Wachovia Corporation. Without conceding the applicability of the Discovery Master Stipulation to disputes concerning those subpoenas (or any other third party subpoenas), I am available to meet and confer regarding the foregoing subpoenas and MGA's objections thereto on the afternoon of December 14, from 2 p.m. on. I am also available on the mornings of December 17 and December 18, any time after 10 a.m.

Mattel's subpoenas to: (i) Wells Fargo and ConsumerQuest, to which the MGA Entities and Isaac Larian have asserted many of the same objections that your December 7 letter challenges; (ii) Moss Adams, with respect to which objections will be served on December 12; and (iii) the Isaac Larian Annuity Trust and the Isaac and Angela Larian Trust, for which Skadden has agreed to accept service, give rise to the same issues that will be discussed in the meet-and-confer with respect to the subpoenas to Ernst & Young, Deloitte & Touche and Wachovia Corporation. Accordingly, we hereby request that our scheduled meet-and-confer include a discussion of those subpoenas as well.

**EXHIBIT K PAGE 198**

Jon D. Corey, Esq.
December 11, 2007
Page 2

Please let me know your availability.

Sincerely,

Amy S. Park

Exhibit L

----- Original Message -----
From: Michael Fazio
To: apark@skadden.com <apark@skadden.com>
Cc: Dylan Proctor; Juan Pablo Alban; Jon Corey
Sent: Tue Dec 18 08:32:24 2007
Subject: Meet and Confer

Dear Ms. Park:

Pursuant to your letter dated December 11, 2007, please let us know when you are available to meet and confer today regarding MGA's objections to Mattel's subpoenas for documents to Ernst & Young, Deloitte & Touche, and Wachovia.  We are available to meet and confer today at 11:30 a.m., 2:30p.m. or 5:00 p.m.
Please let us know which time is agreeable.

Best regards,

Michael L. Fazio
Quinn Emanuel Urquhart Oliver & Hedges, LLP Attorneys for Mattel, Inc.

1

**EXHIBIT L PAGE 200**