### Statement of Local Rule 7-3 Compliance

The parties met and conferred pursuant to Local Rule 7-3 on October 3, 2007, and times thereafter, but were not able to resolve this motion.

DATED: November 19, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By_____
    Jon Corey
    Attorneys for Mattel, Inc.

07209/2299353.1

-iii-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 3

ARGUMENT ............................................................................................................... 6

I.     THE RULES CONTEMPLATE ADDITIONAL DISCOVERY ..................... 6

    A.     Each Category of Claims Warrants More Depositions .......................... 8

        1.     The Bratz Claims Require Additional Depositions ..................... 8

        2.     Mattel's Trade Secret and RICO Claims and MGA's Unfair Competition Claims Require Additional Depositions ............... 12

    B.     Mattel Needs Additional Depositions Because the Integrity of MGA's and Bryant's Preservation of Documents Is At Issue ............... 14

    C.     Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative Topics ........................................................................... 15

    D.     Mattel Meets The Requirements for Additional Discovery ................ 15

II.    THE COURT SHOULD GRANT LEAVE WITH RESPECT TO MATTEL'S INTERROGATORIES ................................................................ 16

III.   THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE BRYANT DEPOSITION ............................................................................... 20

CONCLUSION ........................................................................................................ 25

07209/2299353.1

EXHIBIT DD PAGE 456

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

Andamiro v. Konami Amusement of Am.,
  2001 WL 535667 (C.D. Cal. April 26, 2001).......................................... 8

Bahn v. NME Hosps., Inc.,
  929 F.2d 1404 (9th Cir. 1991) ........................................................ 22

Bromgard v. Montana,
  2007 WL 1101179 (D. Mont. April 11, 2007) ............................. 11, 18

Collaboration Prop. v. Polycom, Inc.,
  224 F.R.D. 473 (N.D. Cal. 2004) ..................................................... 8

Fresenius Med. Care Hldgs, Inc. v. Roxane Labs., Inc.,
  2007 WL 764302  Proctor Dec., Ex. 43 ......................................... 23

Rx USA Wholesale, Inc. v. McKesson Corp.,
  2007 WL 1827335 (E.D.N.Y. June 25, 2007) ......................... 7, 11, 19

Whittingham  v. Amherst Coll.,
  163 F.R.D. 170 (D. Mass. 1995).................................................... 7

## **Statutes**

Cal. Civ. Code § 3426.1................................................................. 20

Fed. R. Civ. P. 26(b)............................................................... 8, 20

Fed. R. Civ. P. 30(a)(2)(A)....................................................... 7, 20

Fed. R. Civ. P. 33 .................................................................. 7, 8, 20

Local Rule 7-3 ............................................................................. 3

Fed. R. Civ. P. 30(b)(6) ...................................................... 9, 14, 16, 17

Fed. R. Civ. P. 53(e)................................................................... 21

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Y9/2299353.1

**EXHIBIT DD PAGE 457**

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

In its Scheduling Order, the Court limited each side to 50 interrogatories and 24 fact depositions.  The Court recognized, however, that the case's complexity could require additional depositions or interrogatories and invited motions for additional discovery, if necessary:  "I don't want to say they are soft limits [on the number of depositions], but they are limits which the Court would certainly understand or would invite counsel to submit a motion to expand if there's reason to.  But I just want to have some parameters placed on this at the outset."  Likewise, with respect to the interrogatory limit, the Court stated:   "[L]et's try and work within the confines of the 50 interrogatories, and if you need more, again, the Court is going to be forthcoming, if there's a need for it."[1]  Mattel respectfully submits that time has come.

Under the Federal Rules, leave to take additional discovery "shall be granted" to the extent consistent with the principles set forth in Rule 26(b)(2).  Fed. R. Civ. P. 30(a)(2)(A) & 33(a).  The additional discovery Mattel seeks is appropriate under that framework.  It is not duplicative of prior discovery, Mattel has not had an adequate opportunity to take discovery on these matters, and the substantial benefits of discovery on these central issues outweigh any burden.  MGA has identified many dozens of witnesses with knowledge of the parties' claims or defenses. Mattel has sued MGA for inducing several Mattel employees to misappropriate many thousands of pages of documents containing Mattel trade secrets over an extended period of time.   For its part, MGA has accused over 400 Mattel products of infringing the trade dress of more than 200 MGA products.  As MGA has proclaimed, it will be seeking "billions" of dollars from Mattel on its claims alone.  Additional depositions are warranted given the breadth and complexity of the claims and defenses in this case and the stakes involved.

---

[1]   February 12, 2007 Scheduling Conference Tr. at 22:12-15 and 24:5-7, Exhibit 7 to the Declaration of B. Dylan Proctor, dated November 19, 2007 ("Proctor Dec.").

-1-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT DD PAGE 458

1    To date, Mattel has taken 18 depositions, which leaves Mattel with six

2    remaining.  Mattel has been able to take only one deposition on its counterclaims or

3    defenses to MGA's unfair competition claims, and as of yet, Mattel has been unable to

4    depose any of the individuals actively involved in the theft of Mattel's trade secrets.

5    The specific individuals who Mattel seeks to depose are identified below, along with

6    the justification for each.  In addition, Mattel cannot obtain without the Court's leave

7    the corporate testimony of MGA or MGAE de Mexico on the facts related to either

8    MGA's unfair competition claims or Mattel's counterclaims.  Mattel seeks leave to

9    serve the First Notice of Deposition of MGAE de Mexico, attached as Exhibit A, and

10   an additional Notice of Deposition of MGA, attached as Exhibit B, on those subjects.

11       Mattel also seeks leave to serve defendants with additional interrogatories.

12   Mattel has served interrogatories seeking MGA's contentions with respect to the

13   creation of Bratz and MGA's unfair competition claims.   Mattel's proposed

14   interrogatories, which are attached as Exhibit C, seek information related to Mattel's

15   counterclaims and to MGA's claims against Mattel for alleged unfair competition, as

16   well as certain of defendants' defenses.[2]

17       Finally, Mattel seeks additional time to depose Mr. Bryant.  Although Bryant was

18   deposed in 2004, since that time MGA and Bryant have produced millions of pages of

19   documents that they had long withheld until compelled by the Court, and the scope of

20   the claims in these consolidated cases has increased dramatically.  Only after Bryant's

21   deposition occurred, MGA asserted its broad unfair competition claims against Mattel.

22   Only after Bryant's deposition occurred, Mattel asserted its counterclaims, including its

23   copyright infringement and RICO counterclaims, against Bryant and other defendants.

24   And, despite the fact that Mattel sought documents relating to the origins of Bratz

25   

26   ───────────────

[2]   Because defendants refuse to answer Mattel's previously served interrogatories based
on spurious claims that they exceed the 50 limit, Mattel seeks leave as to them to avoid
defendants' further quarreling over the counting of interrogatories and thereby obtain
obvious information about defendants' own contentions and other critical subjects.

27

28

1  before Bryant's initial deposition, both MGA and Bryant were, unbeknownst to Mattel,

2  withholding such documents at the time of the deposition – this was discovered only

3  after multiple motions to compel brought by Mattel were granted.   Judge Infante

4  recognized that Bryant is the "most knowledge witness with respect to virtually all of

5  the factual issues" and claims in these matters.[3]  Judge Infante nevertheless gave Mattel

6  only seven additional hours for Bryant's deposition (on top of two hours previously

7  granted due to Bryant's and his counsel's improper conduct during the prior deposition).

8  That simply is not enough to depose Bryant on MGA's claims, Mattel's counterclaims

9  and all the newly produced evidence that post-dates the 2004 deposition.   Mattel

10  therefore requests that this Court grant additional time of another 12 hours for a total of

11  21 additional hours to question Bryant.

12                          **Statement of Facts**

13       Mattel's Original Complaint.  Mattel filed its initial Complaint on April 27, 2004,

14  alleging that Carter Bryant breached his duties to Mattel by working with and assisting

15  a Mattel competitor, MGA, while he was employed by Mattel.[4]   While at Mattel,

16  Bryant worked on the "Bratz" project.[5]  On December 7, 2004, MGA filed an answer in

17  intervention claiming that the action put at issue MGA's rights to Bratz.[6]

18       MGA's Complaint.  MGA filed a complaint against Mattel on April 13, 2005

19  alleging that Mattel engaged in "serial copycatting" of the Bratz dolls.[7]  Mattel's action

20  and MGA's action were later consolidated along with a declaratory relief action filed by

21  Bryant, which was later dismissed.[8]

22       Mattel's Counterclaims.   On November 19, 2006, Mattel moved for leave to

23  amend its complaint.  The Court granted Mattel's motion, allowing Mattel's new claims

24  _____

[3]  9/27/07 Hearing Tr. at 24:24-25:2, Proctor Dec., Ex 85.
[4]  Proctor Dec., Ex. 1.
[5]  Id. ¶¶ 12-13.
[6]  Proctor Dec., Ex. 2.
[7]  Proctor Dec., Ex. 3.
[8]  Minute Order Re Consolidation (June 19, 2006), Proctor Dec., Ex. 4.

to be alleged as counterclaims to MGA's complaint.[9]  Mattel filed its Second Amended Answer and Counterclaims on July 12, 2007.  Mattel's counterclaims against MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. include claims for copyright infringement, violation of RICO, conspiracy to violate RICO, misappropriation of trade secrets, intentional interference with contract, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty, conversion and unfair competition.[10]  MGA's current amended answer to Mattel's counterclaims asserts twenty-two affirmative defenses.[11]

    Scheduling Conference.  At the February 12, 2007, and as reflected in a Minute Order, the Court limited depositions to 24 per side and interrogatories to 50 per side.[12]  The Court recognized that the parties might need more depositions or interrogatories:

> I don't want to say they are soft limits [on the number of depositions], but they are limits which the Court would certainly understand or would invite counsel to submit a motion to expand if there's reason to.  But I just want to have some parameters placed on this at the outset.
>
> . . .
>
> [L]et's try and work within the confines of the 50 interrogatories, and if you need more, again, the Court is going to be forthcoming, if there's a need for it.[13]

    Mattel's Interrogatories.  To date, Mattel has propounded 50 interrogatories.[14]  In June 2007, Mattel propounded 19 interrogatories on MGA, MGA Hong Kong, Larian

---

[9] 1/11/07 Order Re Mattel's Motion for Leave to Amend, Proctor Dec., Ex. 5.
[10] See Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007 ("Mattel's Counterclaims"), Proctor Dec., Ex. 16.
[11] See MGA's Amended Answer and Affirmative Defenses ("MGA's Amended Answer"), Proctor Dec., Ex. 46.  MGA had filed its original answer on August 13, 2007.  Proctor Dec., Ex. 17.  After meeting and conferring, MGA acknowledged deficiencies in its defenses and served its amended answer on September 19, 2007.
[12] 2/12/07 Scheduling Order, at 1, Proctor Dec., Ex. 6.
[13] 2/12/07 Scheduling Conference Tr., at 22:12-15 and 24:5-7, Proctor Dec., Ex. 7.
[14] See Proctor Dec., Exs. 8-12, 15, 64-68.

7209/2299353.1

EXHIBIT DD PAGE 461

1 and Bryant, seeking information about Bratz development, their affirmative defenses to

2 Mattel's claims, defendants' contentions regarding unfair competition claims and

3 MGA's benefit from Bratz.[15]   Defendants claimed they exceeded the interrogatory limit,

4 and on September 5, 2007, Judge Infante ruled that identical interrogatories served on

5 multiple parties, as well as interrogatories asking defendants to "state all facts"

6 supporting a particular contention, "identify all persons with knowledge of such facts,"

7 and "identify all documents" relevant to such facts, would each count as only one

8 interrogatory.[16]   However, an interrogatory asking a party to state facts supporting

9 different affirmative defenses would count as a different interrogatory per defense.[17]  In

10 accordance with that ruling, on September 21, 2007, Mattel served revised sets of

11 fifteen interrogatories.[18]   Defendants nevertheless still refuse to substantively answer

12 these interrogatories, including because they allegedly exceed the number permitted.[19]

13         Mattel Depositions.  To date, Mattel has taken 18 depositions.  Mattel has had

14 good cause for each of those depositions.  They include:

15   • Carter Bryant – defendant

16   • Victoria O'Connor – former MGA executive with knowledge of MGA's and Larian's spoliation of evidence

17

18   • Jaqueline Prince – witness allegedly supporting Bryant's Bratz creation story

19   • Isaac Larian – defendant

20   • Steve Linker – third party with knowledge of work on Bratz before Bryant left Mattel

21

22   • Paula Garcia – Bratz project manager from the start who worked on Bratz with Bryant before he left Mattel

23   • Brooke Gilbert – Bryant's niece with knowledge of Bryant's computer on which Bryant installed and used "Evidence Eliminator"

24

25   [15] Proctor Dec., Ex. 13.

26   [16] 9/5/07 Order Re Mattel's Interrogatories, at 5-6, Proctor Dec., Ex. 14.
   [17] See id. at 7.

27   [18] Proctor Dec., Ex. 45.
   [19] See Proctor Dec., Exs. 73-74.

28

EXHIBIT DD PAGE 462

- Kerri Brode – MGA employee with knowledge of Bryant's work on Bratz while at Mattel

- Dave Malacrida – MGA public relations employee with knowledge regarding early Bratz design and marketing

- Janet Bryant – Bryant's mother and relied upon by Bryant to establish alleged date of Bratz creation

- Thomas Bryant – Bryant's father and relied upon by Bryant to establish alleged date of Bratz creation

- Sarah Chui – worked on Bratz in 2000 for MGA Hong Kong

- Richard Irmen – Bryant's partner and relied upon by Bryant to establish alleged date of Bratz creation

- Maureen Tkacik – *Wall Street Journal* reporter to whom Larian stated, in an interview, that he chose Mr. Bryant's idea for the Bratz over several others after holding "a sort of fashion-doll design contest in late 1999" -- a time during which Bryant was employed by Mattel and months before MGA and Bryant now say they first were introduced

- MGA Entertainment, Inc. – defendant

- MGA Entertainment (HK) Limited – defendant

- Schyler Bacon – MGA employee who recruited Mattel employees who stole trade secrets

- Denise O'Neal – *Chicago Sun Times* reporter to whom Larian made prior inconsistent statements, including that MGA's creative team decided to use the "Brats" name but to change the "s" to a "z"

## Argument

### I.   THE RULES CONTEMPLATE ADDITIONAL DISCOVERY

The Federal Rules require that a party obtain leave before serving interrogatories or taking depositions beyond the limits established by the Court.  See Fed. R. Civ. P. 33(a) (interrogatories); id. 30(a)(2)(A) (depositions).  The purpose of these limits is to allow the Court to "maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of [w]ide ranging discovery".  Rx USA Wholesale, Inc. v. McKesson Corp., 2007 WL 1827335, at *2-3 (E.D.N.Y. June 25, 2007) (quoting Whittingham v. Amherst Coll., 163 F.R.D. 170, 171-72 (D. Mass. 1995)).  The limits, however, are not intended to "prevent needed discovery," and courts have "broad[] discretion" to allow

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1  additional discovery "based on the complexity" of the case at hand.  Notes of the

2  Advisory Committee (1993) to Fed. R. Civ. P. 26(b) & 33.  Leave to take additional

3  discovery "shall be granted" to the extent consistent with the principles set forth in Rule

4  26(b)(2). Fed. R. Civ. P. 30(a)(2)(A), & 33(a).  Courts permit additional interrogatories

5  or depositions after considering whether:

> (1) the discovery sought is unreasonably cumulative or duplicative, or is
> obtainable from some other source that is more convenient, less
> burdensome, or less expensive; (2) the party seeking discovery has [had]
> ample opportunity obtain the information sought; or (3) the burden or
> expense of the proposed discovery outweighs its likely benefit, taking into
> account the needs of the case, the amount in controversy, the party's
> resources, and the importance of the proposed discovery in resolving the
> issues.

12  Andamiro v. Konami Amusement of Am., 2001 WL 535667, at *2 (C.D. Cal. April

13  26, 2001) (depositions); see also Collaboration Prop. v. Polycom, Inc., 224 F.R.D.

14  473, 475 (N.D. Cal. 2004) (interrogatories).

15  **II.   MATTEL SHOULD BE GRANTED ADDITIONAL DEPOSITIONS**

16      Mattel should be permitted to take more than 24 depositions in these

17  consolidated cases. This action contains three broad categories of significant claims,

18  each of which necessitates additional depositions:  Mattel's Bratz-related claims,

19  MGA's unfair competition claims, and Mattel's trade secret theft and RICO claims.

20  MGA's supplemental initial disclosures identified 86 witnesses with knowledge of

21  MGA's claims and defenses, 62 of whom are not Mattel employees.[20]  Mattel's

22  supplemental disclosures contain nearly double the number of witnesses with

23  knowledge, only 43 of whom are Mattel employees.[21]  Based on the million-and-a-half

24  pages that MGA has recently produced, Mattel is preparing third supplemental

---

[20]   See MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Larian's Initial Disclosures Under Rule 26(a)(1), dated September 21, 2007, at 1-16, Proctor Dec., Ex. 18.

[21]   See Proctor Dec., Ex. 19, at 3-19.

1  disclosures which will name additional witnesses. Mattel can rely on <u>Rule</u> 30(b)(6) to

2  obtain some information, but Mattel cannot effectively prosecute or defend these cases

3  with only 24 depositions.

4      A.  **Each Category of Claims Warrants More Depositions**

5        1.  **The Bratz Claims Require Additional Depositions**

6      The number of witnesses involved with the creation of Bratz or with knowledge

7  of Bryant's purported story about when he created – and the inconsistent stories that

8  MGA spun in the media – justify additional depositions. For example, Bryant claims

9  that he created Bratz when he was not a Mattel employee.[22] He initially identified three

10  people who he claimed could corroborate this story: Tom and Janet Bryant (his

11  parents) and Richard Irmen (his partner). Bryant's mother for the first time in this case

12  recently identified a fourth: her friend, Jeanne Galvano. Bryant will introduce their

13  testimony to vouch for his story, so Mattel obviously needs and is entitled to depose

14  them. Similarly, Isaac Larian has repeatedly made conflicting, inconsistent statements

15  about Bratz's creation to the press, among others.[23] Mattel thus far has deposed two of

16  the journalists who wrote those stories – depositions where Mattel's questioning lasted

17  far less than an hour. Bryant's "alibi" witnesses and the reporters alone use up one-third

18  of Mattel's originally allotted 24 depositions.

19      In addition, at the time of the Scheduling Order, Bryant and MGA had said only

20  a handful of people worked directly on Bratz prior to 2002: Bryant, Anna Rhee,

21  Mercedeh Ward, Margaret Leahy, Paula Garcia and unidentified people in Hong

22  Kong.[24] In a recent supplemental interrogatory response, MGA identified 11 more

23  people who worked on the first Bratz dolls, including Sarah Halpern, Veronica Marlow,

24

25    [22]  Bryant Dep. Tr. at 140:9-141:8, Proctor Dec., Ex. 20.

  [23]  Proctor Dec., Ex. 21.

26    [24]  <u>See</u> Bryant's Objections and Responses to Second Set of Interrogatories

27  Propounded by Mattel, Inc., at 4, Proctor Dec., Ex. 22; MGA's Response to Mattel's

Second Set of Interrogatories, at 4:17-20, Proctor Dec., Ex. 23.

28

1  Cecilia Kwok, David Dees, Stephen Tarmichael, Edmond Lee, Franki Tsang, Samuel
2  Wong, Stephen Lee, William Ragsdale and Wendy Ragsdale (and Mattel now knows
3  that even this list is incomplete).[25] This list does not include anyone involved in early
4  sales, marketing, product testing or advertising of Bratz.

5      When a deponent possesses unique information, courts generally grant leave for
6  additional depositions because they do not undermine the key purpose of the limits –
7  preventing duplicative discovery. See, e.g., Bromgard v. Montana, 2007 WL 1101179,
8  at *2 (D. Mont. April 11, 2007). Courts deny additional depositions when deponents
9  are likely to have common, interchangeable information. And, even in such instances,
10  courts may allow a limited number or sequential depositions to proceed. See, e.g., Rx
11  USA, 2007 WL 1827335, at *3 (allowing additional deposition testimony on one but
12  not both individuals with generalized information).

13      Here, Mattel seeks depositions of witnesses who each have specific, unique
14  personal knowledge of the Bratz claims as well as about other claims in the case. All of
15  them are third parties:

16  • Sarah Halpern – worked on the patterns for the first Bratz dolls

17  • Margaret Leahy – sculpted the first Bratz dolls and 4-Ever Best Friends

18  • Veronica Marlow – worked on the first Bratz doll fashions as well on
19    products at issue in MGA's claims

20  • Elise Cloonan – worked with Bryant on his Bratz pitch to MGA while both
      were employed by Mattel

21  • Jesse Ramirez – worked on molds for Bratz

22  • Jeanne Galvano – alleged witness Bryant's mother recently claimed can
23    verify facts relating to Bratz's creation

24  • Stephen Lee – Managing Director of MGA Hong Kong during development
      of Bratz and other products at issue

25
26  [25] MGA's Third Supplemental Responses to Mattel's Second Set of Interrogatories, at
    4:1-6:3, Proctor Dec., Ex. 24; see Linker Dep. Tr. at 59:22-64:9, Proctor Dec., Ex. 25
27  (testifying that Paula (Treantafelles) Garcia and Bryant approached him and his partner,
    Liz Hogan, before Bryant left Mattel to work on Bratz).
28

- Cecilia Kwok – MGA Hong Kong employee principally involved with first Bratz dolls

- Farhad Larian – brother of Isaac Larian, who sued Isaac Larian and alleged, inter alia, that MGA was working on Bratz by early 2000 (months before MGA and Bryant claim to have met) when he was a part owner of MGA[26]

- Certain as yet unidentified attorneys who represented parties to disputes between Isaac Larian and Farhad Larian in which the creation of and value of Bratz was at issue

- Sandra Bilotto – sculptor who worked on Prayer Angel dolls at issue[27]

- Anne Wang – represented Bryant in negotiations with MGA while he was a Mattel employee that led to the agreement dated "as of September 18, 2000"[28]

- David Rosenbaum – represented MGA in negotiations with Bryant's first agreement with MGA[29]

- Christensen Glaser LLP – firm to which Victoria O'Connor faxed the MGA/Bryant agreement that Isaac Larian had ordered her to alter[30]

- Lucy Arant – lawyer with knowledge of MGA's first use of Bratz

- Mitchell Kamarck – former MGA counsel who responsible for patent applications, including those in which Isaac Larian had claimed to be the inventor of Bratz features that Bryant has since testified he created[31]

- Carol Witschell – lawyer who worked on MGA trademark applications and other trademark matters at issue

- Nana Ashong – former MGA employee who stated Bratz was created during Bryant's employment by Mattel[32]

- Larry McFarland – wrote MGA copyright registrations that stated the Bratz dolls were created during 2000 and that, after this suit was filed, MGA claimed were incorrect

- Eric Yip – MGA Hong Kong Sales Administrator in 2000 and 2001, when Bratz were created and first shipped to Bandai in Spain[33]

---

[26] See Larian Dep. Tr. at 159:17-160:14, Proctor Dec. Ex. 54.
[27] Brode Dep. Tr. at 303:9-316:16, Proctor Dec. Ex. 55; Dep. Exhs. 607, 608, 609, Proctor Dec., Ex. 56.
[28] See Bryant Tr. at 39:6-42:18, Proctor Dec. Ex. 60.
[29] See O'Connor Dep. Tr. at 94:1-95:21, Proctor Dec., Ex. 61.
[30] See O'Connor Tr. 17:3-19:19, Proctor Dec., Ex. 75.
[31] See Armstrong Dep. Tr. at 10:7-12, 26:16-23, 244:18-21, Proctor Dec. Ex. 62.
[32] See Brode Tr. at 87:13-88:11, Proctor Dec., Ex. 55.
[33] See Harris Dep. Tr. at 121:16-122:17, Proctor Dec. Ex. 63.

EXHIBIT DD PAGE 467

- Gentle Giant Studios – created relevant moldings and casts while Bryant was still employed at Mattel[34]

- Christopher Palmeri – *Business Week* reporter who wrote that Larian purportedly "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers"[35]

- Jeff Weiss – *San Fernando Valley Business Journal* reporter who quoted another inconsistent Larian statement concerning the origin of Bratz[36]

- Kickapoo High School – where Bryant allegedly found inspiration for Bratz and author of documents refuting that claim

- LA Focus – conducted Bratz focus groups, including focus groups that MGA denies occured

- Joyce Ng – independent contractor who moderated Bratz focus groups

- Rachel Harris – former MGA employee who worked on initial Bratz packaging as well as on other packaging which MGA's claims rest on

- Peter Marlow – spouse of Veronica Marlow who negotiated millions of dollars in payments for Bratz from Bryant on her behalf

- Andreas Koch – former MGA manager who has knowledge of Bryant's initial contacts with MGA

- Kami Gillmour – former Mattel and MGA employee who has knowledge regarding Paula Garcia's employment with MGA, confidential information taken from Mattel and MGA's projects at issue

- Mercedeh Ward – engineer on initial Bratz dolls and author of emails reflecting the use of Mattel property in its creation

- Moss Adams – accounting firm with knowledge of MGA's profits and distributions thereof to Larian (who owns 90% of MGA's shares)

- Wachovia Bank – bank identified as being involved in early Bratz financing and knowledgeable about MGA's net worth or value

- Amy Myers – formerly with MGA and has knowledge of Prayer Angels project that MGA has raised as a defense

- Two or three parties MGA sued for infringement of Bratz and whose identities are not yet known to Mattel – they will have knowledge of the dolls and other properties MGA has sued on in the past, which is relevant to refuting MGA's current claims that earlier iterations of Bratz products look nothing like subsequent iteration of Bratz products

---

[34] See Proctor Dec., Ex 72.
[35] Proctor Dec. Ex. 52.
[36] Proctor Dec. Ex. 53.

EXHIBIT DD PAGE 468

1       Further, many of these same witnesses are also knowledgeable as to MGA's

2  claims of unfair competition and Mattel's trade secret and RICO claims, as they

3  continued to work with MGA in later years.  For example, MGA has already identified

4  Halpern, Kwok, Leahy, Marlow, Lee, Ward and Yip as individuals involved with the

5  products at issue.[37]  Likewise, Ramirez continued working on molds for subsequent

6  Bratz dolls through at least 2005,[38] while   Kamarck,[39] Witschell,[40] Arant, and

7  McFarland[41] were involved in subsequent Bratz-related intellectual property matters.

8  As such, testimony from these witnesses is essential for both phases of trial.

9         **2.**    **Mattel's Trade Secret and RICO Claims and MGA's Unfair**

10           **Competition Claims Require Additional Depositions**

11      Mattel has sued MGA for misappropriating Mattel trade secrets and RICO

12  violations by, among other things, stealing thousands of pages of Mattel confidential

13  information in the United States, Canada and Mexico.[42]  Mattel identified Ron Brawer,

14  Janine Brisbois, Gustavo Machado, Mariana Trueba Almada and Pablo Vargas as

15  individuals who misappropriated Mattel trade secrets.  The only person Mattel has been

16  able to depose on its counterclaims is Ms. Bacon, who coordinated MGA's recruiting of

17

18

19

20

21     [37]  See MGA's Fourth Supp. Response to Interrogatory No. 1 of Mattel's First Set of Interrogatories Re Claims of Unfair Competition, at 10-12, 18, 19, Proctor Dec., Ex. 27.

22     [38]  See, e.g., Proctor Dec., Ex. 69 (showing various Bratz-related work in 2005).

23     [39]  See, e.g., Armstrong Tr. 26:5-23, Proctor Dec., Ex. 62 (discussing involvement in Bratz-related patent applications through 2004).

24     [40]  See, e.g., Proctor Dec., Ex. 70 (discussing involvement with Bratz registrations).

      [41]  See, e.g., Proctor Dec., Ex. 71 (discussing involvement with Bratz licensing).

25     [42]  Mattel's Counterclaims ¶¶ 37-54, 70-76, Proctor Dec., Ex 16.

26

27

28

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1 | Mattel employees.[43]  Accordingly, Mattel seeks leave to take the depositions of the

2 | following witnesses on such claims:[44]

3 | • Ron Brawer – has knowledge of stolen Mattel trade secrets in the U.S.

4 | • Janine Brisbois – former Mattel employee who stole Mattel trade secrets

5 | • Gustavo Machado – former Mattel employee who stole Mattel trade secrets

6 | • Mariana Trueba – former Mattel employee who stole Mattel trade secrets

7 | • Pablo Vargas – former Mattel employee who stole Mattel trade secrets

8 | • Ricardo Abundis – has knowledge of stolen Mattel trade secrets in Mexico

9 | • Jorge Castilla – believed to have stolen Mattel trade secrets in the U.S.

10 | • Nic Contreras – believed to have knowledge of stolen Mattel trade secrets

11 | • Dan Cooney – believed to have knowledge of stolen Mattel trade secrets

12 | • Susan Kuemmerle – believed to have knowledge regarding stolen Mattel

13 | trade secrets in Mexico

14 | • Shirin Salemnia – believed to have knowledge of stolen Mattel trade secrets

15 | • MGAE de Mexico – defendant to trade secret theft and RICO claims

16 | • MGA Entertainment, Inc. – defendant

17 | Further, MGA has accused Mattel of trade dress infringement and dilution and

18 | unfair competition in connection with more than 440 products.[45]  MGA has identified

19 |

20 | [43]  Bacon Dep. Tr. at 12:12-13, 51:22-52:17, 86:8-12, and 114:19-116:9, Proctor Dec.,
Ex. 28.  And even with respect to Ms. Bacon's deposition, MGA attempted to prevent her

21 | from testifying on the grounds that Mattel had not noticed her deposition individually, but

22 | only as a Rule 30(b)(6) designee. See Proctor Dec., Ex. 29.
[44]  These are those who Mattel has identified to date.  Mattel anticipates that there may

23 | be more who will need to be deposed in connection with MGA's unfair competition claims
and Mattel's counterclaims because (a) it continues to review the over one-and-a-half

24 | million pages of documents that MGA produced in the past month and (b) MGA, to date,
has failed to identify how it anticipates defending Mattel's counterclaims or which

25 | documents or witnesses it will rely upon to do so, including by its ongoing failures to

26 | answer Mattel contention interrogatories related to its defenses to Mattel's counterclaims.
[45]  MGA's Supp. Response to Interrogatory No. 2 Of Mattel, Inc.'s First Set of

27 | Interrogatories Re Claims of Unfair Competition, at 5-19, Proctor Dec., Ex. 26.

28 |

EXHIBIT DD PAGE 470

117 witnesses with knowledge of the creation or promotion of those products,[46] including many of the persons listed above. Mattel has taken the depositions of only six of those 117 named individuals, and has not yet been able to depose two of them, Bryant or Larian, regarding the unfair competition allegations.

**B.** **Mattel Needs Additional Depositions Because the Integrity of MGA's and Bryant's Preservation of Documents Is At Issue**

Mattel also is entitled to inquire about MGA's and Bryant's preservation and production of evidence. For example, as MGA's designee on document preservation testified, MGA had only obtained off-site documents as of the summer of 2007 and had searched none of these documents for responsive documents, even though the Court had ordered MGA to produce them and MGA had previously represented that its production was complete.[47] Further, MGA's designee on MGA's electronic document preservation and collection testified that MGA's only search of such information was a single search of Isaac Larian's e-mails in 2005, nothing more.[48] MGA's designee repeatedly testified that Joe Tiongco, who Mattel seeks to depose, has more knowledge.[49] In the same vein, Mattel seeks to depose Daphne Gronich, who provided the preservation declaration on MGA's behalf.[50] In addition, there are serious issues about Bryant's hard drives, including because of Bryant's prior counsel's conflicting representations about their collection and preservation – and indeed even their existence. Mattel therefore seeks testimony on these subjects.[51] Bryant's belated revelation that he installed and used the "Evidence Eliminator" program on these drives

[46] MGA's Fourth Supp. Resp. Unfair Comp. No. 1, at 5-16, Proctor Dec., Ex. 27.
[47] 9/24/07 Stip. and Order, Proctor Dec., Ex. 30; Tonnu Dep. Tr. at 612:13-612:15, 620:14-621:21, Proctor Dec., Ex. 31; 8/13/07 Order, at 14:18-22, Proctor Dec., Ex. 32.
[48] See Lockhart Deposition Tr. at 265:1-11, Proctor Dec., Ex. 33.
[49] Id. at 116:2-14, 150:25-151:5, 158:10-15. 258:17-259:9, 265:1-11, 266:12-267:5.
[50] See Dec. of Daphne Gronich in Response to Court's Request for Information Regarding Document Preservation, dated September 10, 2007, Proctor Dec., Ex. 34.
[51] Notice of Deposition of Littler Mendelson Pursuant to Federal Rule of Procedure 30(b)(6), dated September 6, 2007, Proctor Dec., Ex. 35.

07209/2299353.1

-14-

1  underscores all the more the legitimacy of full and fair discovery into the integrity of

2  his drives.

3  **C.   Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative**

4  **Topics**

5  MGA objected, and the Discovery Master has ruled, that a corporate party who

6  has been deposed pursuant to a Rule 30(b)(6) notice cannot be deposed pursuant to a

7  subsequent notice absent Court leave.[52]   Mattel has not propounded a Rule 30(b)(6)

8  Notice of Deposition on MGA or MGAE de Mexico related to either MGA's unfair

9  competition claims or Mattel's counterclaims.   Mattel's Notices of Deposition—

10  attached as Exhibits A and B—contain topics of testimony which relate to those

11  claims.[53]   Mattel has not previously served any Rule 30(b)(6) Notice on MGAE de

12  Mexico at all, and the topics in the additional Notice to MGA are not duplicative of

13  those in Mattel's prior Notices to MGA.[54]   Mattel respectfully submits that it should be

14  granted leave to proceed with those depositions.

15  **D.   Mattel Meets The Requirements for Additional Discovery**

16  When a deponent possess unique information, courts will generally allow leave

17  for additional depositions because they do not undermine the key purpose of the

18

19  [52]   9/25/07 Order Re Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under 30(b)(6), Proctor Dec., Ex. 36.

20  [53]   See Exhibits A & B. Mattel's Fourth Notice of Deposition is far less than

21  burdensome compared to MGA's recently served Notice of Deposition, which contains more than 80 topics, each of which has many sub-parts.  See MGA Entertainment, Inc.'s

22  Notice of Deposition of Mattel, dated September 5, 2007, Proctor Dec., Ex. 40.

23  [54]   Mattel's First Notice of Deposition was narrowly tailored to obtain information related to MGA's contentions that Bryant and Anna Rhee had worked on Prayer Angels,

24  not Bratz, while Bryant employed by Mattel.  Proctor Dec., Ex. 37.  Mattel's Second Notice sought information related to Bratz, including Bratz revenues, costs and profits, and

25  evidence preservation and collection.  Proctor Dec., Ex. 38.  Mattel's Third Notice sought follow-up information on matters that had arisen in discovery, including with respect to

26  specific electronic evidence, specific individuals who worked on the first Bratz dolls, payments made to witnesses or parties, and statements to reporters related to Bratz's

27  creation and inspiration.  Proctor Dec., Ex. 39.

28

07209/2299353.1

1  limits—preventing duplicative discovery. See, e.g., Bromgard, 2007 WL 1101179, at

2  *2 (D. Mont. April 11, 2007).  As explained above, Mattel seeks depositions of

3  individuals who each have specific, unique knowledge of the underlying events.

4      Without additional depositions, Mattel cannot discover the full extent of MGA's

5  wrongdoing or adequately prepare to defend against MGA's claims.  Mattel seeks a

6  declaration of ownership of Bratz works that Bryant created during his Mattel

7  employment and their derivatives – property that MGA and Bryant have claimed are

8  worth hundreds of millions of dollars and perhaps more.  Mattel has accused MGA of

9  stealing thousands of pages of Mattel's most valuable trade secrets, including product

10  lines, and strategic plans.  MGA has accused Mattel of infringing hundreds of MGA

11  products, alleging "billions" of dollars in damages.  In light of the magnitude of this

12  case, the burden or additional expense of these depositions pales in comparison to

13  Mattel's need to fully prepare to try this case.  As set forth above, the depositions that

14  Mattel seeks by this motion are not collateral, but go to the heart of its claims and

15  defenses.  See, e.g., Rx USA, 2007 WL 1827335, at *2-3 (additional depositions

16  warranted in a dispute between large corporations, given the complexity of the issues

17  and the parties' resources).

18  **III.  THE COURT SHOULD GRANT LEAVE WITH RESPECT TO**

19      **MATTEL'S INTERROGATORIES**

20      Two categories of interrogatories are involved here:  first, Mattel's proposed

21  additional interrogatories that it seeks leave to serve; and, second, interrogatories which

22  Mattel has already served on defendants.

23      A.    **Mattel Should Be Allowed To Propound Additional Interrogatories**

24      Mattel seeks leave to propound additional interrogatories related to MGA's unfair

25  competition claims and Mattel's counterclaims, and MGA's evidence collection and

26  preservation.  To properly prepare for trial, Mattel seeks leave to serve interrogatories

27  requiring defendants to identify the facts, documents and witnesses it will use to prove

28  its claims, defenses and damages.  Mattel's proposed interrogatories thus seek to

1    identify which specific Mattel designs or products defendants allege infringe on

2    defendants' designs[55] and trade dress[56] and the facts supporting those legal claims.[57]

3    Additionally, Mattel seeks to determine defendants' position regarding their

4    misappropriation of Mattel documents, including whether defendants contend that no

5    such documents were obtained improperly,[58] that the information contained therein has

6    no value as a trade secret,[59] that the information had been publicly disclosed,[60] that

7    defendants did not use or disclose such information,[61] that any such disclosure neither

8    benefited defendants nor harmed Mattel,[62] and that defendants have a right to possess,

9    use or disclose any such documents in their possession.[63] These are essential elements

10   of the trade secret theft claim.  See Cal. Civ. Code § 3426.1.  Finally, Mattel seeks

11   information related to MGA's efforts to collect and preserve evidence relevant or

12   potentially relevant to this action.[64]

13          The proposed interrogatories are consistent with the factors set out in Rule 26(b)

14   and should be permitted.  They seek disclosure of specific relevant facts regarding

15   topics which have not been the subject of prior interrogatories.  The majority of Mattel's

16   prior interrogatories focused on issues related to creation and ownership of Bratz.[65]

17   Only Mattel's set of interrogatories relating to MGA's unfair competition claims could

18

19

---

20   [55]  See Mattel's Proposed Interrogatory No. 51.

21   [56]  See Mattel's Proposed Interrogatory No. 52.
     [57]  See Mattel's Proposed Interrogatories Nos. 53, 54, 55.

22   [58]  See Mattel's Proposed Interrogatory No. 56.
     [59]  See Mattel's Proposed Interrogatory No. 57.

23   [60]  See Mattel's Proposed Interrogatory No. 58.
     [61]  See Mattel's Proposed Interrogatory No. 59.

24   [62]  See Mattel's Proposed Interrogatory No. 60.

25   [63]  See Mattel's Proposed Interrogatory No. 61.
     [64]  See Mattel's Proposed Interrogatories Nos. 63-64.

26   [65]  See First Set to Bryant, Proctor Dec., Ex 8; First Set to MGA, Proctor Dec., Ex. 9;

27   Second Set to Bryant, Proctor Dec., Ex. 11; Second Set to MGA, Proctor Dec., Ex. 10;
     Third Set Revised, Proctor Dec., Ex. 45.

28

07209/2299353.1

EXHIBIT DD PAGE 474

conceivably overlap with the proposed interrogatories.[66]  However, the interrogatories already propounded focused on issues distinct from the proposed interrogatories— specifically, facts relating to MGA employees involved with certain MGA products,[67] MGA's alleged injuries,[68] MGA's allegations regarding Mattel's conduct with certain third-parties in the industry[69] and MGA's allegations of product confusion.[70]  These are not duplicated in the interrogatories which Mattel is proposing.

Finally, the benefits of the proposed interrogatories outweigh any added burden, as these type of facts are properly revealed through interrogatories, and the information sought by the interrogatories will advance this litigation and avoid surprise at trial.

**B.**     **The Court Should Grant Leave With Respect To Mattel's**
           **Outstanding Interrogatories That Defendants Will Not Answer**

To date, Mattel has served 50 interrogatories on the defendants.  Yet, by objecting to some of those previously served interrogatories served as being compound, defendants refuse to answer on the purported ground that they exceed the Court's limit.[71]  Although defendants are wrong, the Court should eliminate further delay and quarreling by defendants by simply granting Mattel leave to serve them regardless of how they are counted.

Mattel has been seeking answers to these basic interrogatories for over five months now.  To justify their wholesale refusal to answer them, defendants claimed they exceeded the Court's limit on the number of interrogatories.  Mattel moved to compel, defendants moved for a protective order, and in a September 5, 2007 Order Judge Infante provided guidance on the counting of the interrogatories.  Mattel then

---

[66] See First Set Re Unfair Comp., Proctor Dec., Ex. 12.
[67] See id. No. 1.
[68] See id. No. 4.
[69] See id. Nos. 5, 8, 9, and 10.
[70] See id. No. 7.
[71] See Bryant's Objections to Revised Third Set, Proctor Dec., Ex. 73; Bryant's Objections to Amended Fourth Set, Proctor Dec., Ex. 74.

07209/2299353.1

-18-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1   propounded revised interrogatories that were consistent with the Discovery Master's

2   Order.

3       Defendants nevertheless claim, once again, that Mattel exceeds its 50 allotted

4   interrogatories. Not only is this without merit,[72] but it is clear that defendants rehash

5   this objection for no other reason than to obstruct. Bryant refuses to answer any

6   interrogatory past No. 27 because "Mattel has propounded more than 50

7   interrogatories."[73] And, even the minimal answers he gave to others amply confirms

8   that he continues to stonewall on even basic discovery in this case. MGA makes

9   essentially the same objection.[74] Accordingly, through nothing more than creatively

10

11  [72] The essence of the defendants' objection is that Mattel's revised interrogatories are
compound interrogatories because they improperly require them to respond to individual

12  interrogatories with "different and distinct facts." See Bryant's Objections to Revised
Third Set, at 18; Bryant's Objections to Amended Fourth Set, at 4. For example,

13  defendants frivolously object to having to identify both the name of a product and its
corresponding product number. But Judge Infante ruled on this matter, explaining that

14  interrogatories "'containing subparts directed at eliciting details concerning [a] common

15  theme should be considered a single question,'" while interrogatories on "discrete issues"
should be treated as multiple interrogatories. Order re Mattel's Interrogs., at 5 (quoting 8A

16  Wright & Miller, Federal Practice & Procedure § 2168.1 (2d ed. 1994)); see also id. at 7.

17  The scope of Mattel's revised interrogatories is no different than those which Judge Infante
ruled were permissible, as in both instances the "subparts are related and directed to the

18  underlying details of a specifically identified" subject. See id. Judge Infante specifically
observed that under the Advisory Committee notes, interrogatories which required distinct

19  factual answers relating to the same subject—e.g., the time, place, persons present, and

20  contents of a particular communication—should be treated as a single interrogatory. See
id. Mattel's revised interrogatories are not compound, and defendants' arguments to the

21  contrary are groundless: the fact that an interrogatory answer requires different facts does

22  not convert it into a compound interrogatory on different issues.
    [73] Bryant's Objections to Revised Third Set, at 7. Bryant then makes the same

23  objection to the remaining 23 interrogatories.
    [74] See MGA's Objections to Revised Third Set, at 8, Proctor Dec., Ex. 76; MGA (HK)

24  Ltd.'s Objections to Revised Third Set, at 17, Proctor Dec., Ex. 77; MGAE de Mexico's

25  Objections to Revised Third Set, at 8, Proctor Dec., Ex. 78; Larian's Objections to Revised
Third, at 8, Proctor Dec., Ex. 79; MGA's Objections Amended Fourth Set, at 7, Proctor

26  Dec., Ex. 80; MGA (HK) Ltd.'S Objections to Amended Fourth Set, at 7-8, Proctor Dec.,

27  Ex. 81; MGAE de Mexico's Objections to Amended Fourth Set, at 8, Proctor Dec., Ex. 82;
Larian's Objections to Amended Fourth Set, at 7, Proctor Dec., Ex. 83.

28

07209/2299353.1

1 | counting a few interrogatories as a multitude, defendants manufacture grounds to delay

2 | yet more and refuse obviously appropriate discovery. To the extent that defendants

3 | have substantive objections to specific interrogatories, these issues may be properly

4 | heard before the Discovery Master. But defendants should not be permitted to serially

5 | raise the same objection to a few specific interrogatories in order to delay for yet more

6 | months in responding to the bulk of Mattel's interrogatories. Mattel requests that this

7 | Court cut through this issue by granting Mattel leave, to the extent needed, to serve

8 | each of the interrogatories that have been served to date regardless of how they are

9 | counted.

10 | **IV.  THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE**

11 | **BRYANT DEPOSITION**

12 | On September 28, 2007, the Discovery Master issued an Order Granting in Part

13 | Mattel's Motion for Additional Time to Depose Carter Bryant for All Purposes,

14 | granting Mattel seven additional hours to depose Bryant (in addition to 2 hours

15 | previously granted based on counsel's dozens of improper instructions not to answer at

16 | the Bryant deposition), but denying Mattel the 21 hours that it sought.[75]  Mattel

17 | respectfully submits that the facts, as determined by the Discovery Master, justify far

18 | more than seven additional hours, and the Court should grant additional time.

19 | Mattel does not contest the Discovery Master's factual findings in any way. To

20 | the contrary, the underlying factual findings were plainly correct. As Judge Infante

21 | noted, Mattel's deposition of Bryant in 2004 took place before MGA even brought its

22 | unfair competition claims and before Mattel filed its counterclaims, and Mattel had no

23 | opportunity to depose Bryant on either.[76] Thus, as Judge Infante justifiably found:

24 | • The new claims and defenses that were added to the case after Bryant's deposition justify additional deposition time. . . . Without question,

25 |

---

[75]  Order Granting in Part Mattel's Motion for Additional Time to Depose Carter Bryant for All Purposes (Sept. 28, 2007) ("Order re Additional Time"), at 8:7-13, Proctor Dec., Ex. 43.

[76]  Id. at 5:2-10.

> Bryant is a critical witness regarding MGA's unfair competition claims and Mattel has not had an opportunity to depose him on such claims.[77]

- In addition, Mattel filed a counterclaim against Bryant, MGA, and other defendants in 2007, asserting thirteen different claims . . . . Bryant filed an answer asserting over twenty affirmative defenses. Mattel has not had an opportunity to depose Bryant on any of these claims or defenses.[78]

- Bryant is the central figure in this litigation and arguably the most important witness *for virtually every claim in the case.* No other witness in the case has his depth and breadth of relevant information.[79]

Bryant and MGA cannot dispute any of this. In interrogatory responses, MGA lists Bryant as a person directly involved with and knowledgeable about the allegedly infringed MGA products that MGA has put at issue.[80] MGA's responses to Mattel's interrogatories also state that the entire Bratz line is the subject of MGA's claims, and an MGA witness has declared that there are more than 200 Bratz products.[81] Moreover, Paula Garcia, MGA's Vice President of Product Design and Development, has declared that she and Bryant are "the *only* people who know what the concept is and who see the early product drawings" with respect to many Bratz products.[82] That is particularly important because many of both Mattel's *and* MGA's claims will turn on the source and timing of these products at issue. As the Court knows, Mattel's defenses to MGA's infringement claims rest, in part, on the fact that it was MGA which stole and copied Mattel products through its trade secret thefts. Testimony on the origins of those MGA products and when they were created is indispensable.

---

[77] Id. at 5:4-5.
[78] Id. at 5:6-10.
[79] Id. at 5:15-17 (emphasis added).
[80] MGA's Responses to Mattel's First Set of Interrogatories Re Claims of Unfair Competition, dated January 19, 2007, Response No. 1, at 6:9, Proctor Dec., Ex. 57.
[81] See Declaration of Patricia Perrier in Support of MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One, dated May 25, 2007, at ¶ 2, Proctor Dec., Ex. 58; MGA Sup. Resp. Unfair Comp. No. 2, Proctor Dec., Ex. 26.
[82] Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 9, 2007, ¶ 6 (emphasis in original), Proctor Dec., Ex. 59.

EXHIBIT DD PAGE 478

1    Bryant is also obviously a crucial witness on Mattel's copyright infringement,

2  RICO and other counterclaims, which raise a host of new issues Bryant has not been

3  deposed on. According to MGA, Mattel's copyright infringement claim against Bryant

4  alone relates to "*hundreds* of products."[83]  Bryant was also personally involved, either

5  as sender or recipient, in approximately 100 of the predicate acts of mail and wire fraud

6  alleged by Mattel. [84]  Mattel is entitled to question Bryant about these and all the other

7  issues presented for the first time by Mattel's counterclaims and Bryant's answer.

8    Moreover, as Judge Infante found, "new evidence justifies additional time to

9  depose Bryant."[85]  Judge Infante noted that Bryant's deposition took place before "98

10  percent of Bryant's and MGA's collective document production took place"[86] – and that

11  did not even reflect the more than a million-and-a-half pages, that MGA has produced

12  in recent weeks.[87]  In truth, *99.9%* of defendants' production in this case has occurred

13  only after Bryant's 2004 deposition.  Thus, Mattel has had no opportunity to examine

14  Bryant on the vast bulk of the evidence, whether relevant to new claims or the original

15  ones.  This includes, for example:

16  •    Bryant's fee agreements with MGA, which reflect that MGA is paying
         Bryant's legal fees at its discretion, and which were withheld by Bryant
17        even in the face of prior court orders;

18  •    Bratz design drawings produced by Bryant for the first time this year,
         only after being ordered, which bear handwritten dates of September
19        19, 1999, at time when Bryant was employed by Mattel;

20  •    Bryant's desktop hard drive, which reveals his use of "Evidence
         Eliminator" software, which was not produced until compelled this
21        year.

22  _____

       [83]  See MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz
23  Ownership in Phase One at 3:12-19.
       [84]  See Mattel's Second Amended Answer & Counterclaims, Exhibit C.
24     [85]  Order re Additional Time at 5:20 (font altered), Proctor Dec., Ex. 43.
       [86]  Id. at 5:24-27, Proctor Dec., Ex. 43.  Notably, Judge Infante calculated the 98
25  percent number based on MGA's production of 157,000 pages of documents as of the close
26  of briefing in late August.  Since that time MGA has produced over a million-and-a-half
     pages of documents.  See Proctor Dec. ¶ 45.
27     [87]  See Proctor Dec. ¶ 45.

28

- Original Bratz drawings, which Bryant did not make available for inspection until this summer, after being ordered to do so, notwithstanding his promise that he would produce such documents at the 2004 deposition.

- A fax from Bryant to David Rosenbaum, outside counsel for MGA, dated September 14, 2000, wherein Bryant stated that he could not ask Mattel's Human Resources any more questions about his contract with Mattel "without risking suspicion."

- October 10, 2000 e-mails between Isaac Larian, Victoria O'Connor and Paula Garcia (formerly Treantafelles), reflecting that Bryant worked on Bratz with MGA "on average about 4 hours a day," starting at least six weeks before he left Mattel.

- Invoices showing that Veronica Marlow, a key third party, billed MGA for 169 hours of development services on Bratz that were performed before Bryant left Mattel.

The list of new evidence that was requested by Mattel before Bryant's deposition but first produced by defendants only later literally goes on and on.  As Judge Infante ruled, "a witness may be re-deposed with respect to . . . new developments" in a case, including new documents such as these, as well as new claims.[88]

Despite his factual findings, Judge Infante ruled that Mattel is only entitled to an additional seven hours of deposition.  Previously Judge Infante had gave Mattel two additional hours as a result of the improper instructions and objections by counsel at Bryant's deposition.[89]  So, under Judge Infante's ruling, Mattel has been limited to only seven hours to depose Bryant – the "most important witness for virtually every claim in the case"[90] – on MGA's claims, Mattel's counterclaims, the hundreds of MGA and Mattel products now at issue about which Bryant has unique knowledge, and the vast amounts of recently produced new evidence.  This is unfair.  The ruling that Mattel be

[88]   Order re Additional Time at 4:20-24 (quoting Fresenius Med. Care Hldgs. Inc. v. Roxane Labs. Inc., 2007 WL 764302 (S.D. Ohio 2007)), Proctor Dec., Ex. 43.
[89]   Order re Additional Time at 7:24-25, Proctor Dec., Ex. 43; see Order Granting In Part And Denying In Part Mattel's Motion To Overrule Instructions Not To Answer During The Deposition Of Carter Bryant (March 7, 2007), Proctor Dec., Ex. 44.
[90]   Id. at 5:15-17.

1   granted only seven additional hours is clearly erroneous given Bryant's singular

2   importance, the magnitude of this case and the tectonic shift of claims.

3        Also, based on <u>Rule</u> 30's "presumptive one day, seven-hour limitation on

4   depositions," Judge Infante awarded Mattel a total of 7 hours to depose Bryant on all of

5   MGA's claims and all of Mattel's counterclaims.[91]   It is simply impossible to conduct a

6   deposition on those claims – which had not even been filed when Bryant was first

7   deposed – in that amount of time.   Judge Infante apparently awarded Mattel no

8   additional time based on new evidence, even though 99.9% of defendants' production

9   has taken place since the 2004 deposition.   That effectively punishes Mattel for

10  defendants' discovery misconduct.  Mattel requested defendants' documents before the

11  deposition took place; defendants withheld them at their own peril, not at Mattel's.[92]

12  Mattel is entitled to a fair amount of time to depose the key witness in the case on the

13  new claims and evidence he has not been deposed on.   The Court should afford that,

14  and grant Mattel a total of 21 hours for the deposition.[93]

15

16

---

17  [91]   <u>Id.</u> at 8:10-13.

18  [92]   <u>See, e.g.</u>, <u>Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.</u>, 2007 WL 764302, at *2 (S.D. Ohio 2007) (originally cited by Bryant to Judge Infante) (allowing

19  second deposition because defendant failed to produce requested documents prior to first deposition); <u>Robins v. Scholastic Book Fairs</u>, 928 F. Supp. 1027, 1036 (D. Or. 1996) ("the

20  second set of depositions of these individuals was necessary because they had to be questioned about additional documents that Defendant produced after the first set of

21  depositions"); <u>Ritchie v. U.S.</u>, 2004 WL 1161171, at *3 (N.D. Cal. 2004) ("when further evidence linking [witness to the project in dispute] subsequently came to light this court

22  permitted plaintiff to depose [the witness] a second time").

23  [93]   In the alternative, the Court should excercise its discretion to enlarge Mattel's time to depose Bryant.  The Court previously extended MGA's deadlines to produce documents

24  that it was compelled to produce even though Judge Infante had specifically *rejected*

25  MGA's request for additional time to comply and despite MGA's failure to show there was any error in that ruling.  Here, there can be no dispute that the Court has the right to ensure

26  that the parties receive fair discovery, proportionate to the magnitude and complexity of

27  the case, and that trial in this matter is conducted without undue surprises which will cause prejudice and waste the time of the Court and the jury.

28

-24-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

1

## Conclusion

2     For the foregoing reasons, Mattel respectfully requests that the Court grant

3 Mattel's motion for leave.

4 DATED:  November 19, 2007          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
5

6                                    By Jon Corey /s/
7                                         Jon Corey
                                          Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-25-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT DD PAGE 482

Exhibit EE

1

1  ***************************************************
2       THE FOLLOWING IS AN UNEDITED ROUGH DRAFT AND IS NOT
3  IN FINAL FORM.  VARIOUS CORRECTIONS AND/OR CHANGES MAY
4  BE MADE BEFORE THE FINAL VERSION IS COMPLETED.  THIS
5  ASCII IS BEING PROVIDED AS A SPECIAL SERVICE TO BE USED
6  FOR LIMITED PURPOSES; HOWEVER, THE REPORTER AND A&E
7  COURT REPORTERS WILL NOT BE RESPONSIBLE FOR THE CONTENT
8  OF SUCH ROUGH DRAFT AND/OR ANY VARIANCE THEREOF FROM TH
9  FINAL DRAFT.
10 ***************************************************
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

3

1  APPEARANCES OF COUNSEL:
2  FOR THE DEFENDANT MATTEL, INC.:
3    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      BY:  JON COREY, ESQ.
4        JUAN PABLO ALBAN, ESQ.
     865 SOUTH FIGUEROA STREET
5    TENTH FLOOR
     LOS ANGELES, CALIFORNIA 90017-2543
6    (213) 443-3000
7
8  FOR THE ((:
9    CHRISTENSEN, GLASER, FINK, JACOBS, WEILL &
     SHAPIRO, LLP
10   BY:  ALISA MORGENTHALER LEVER, ESQ.
     10250 CONSTELLATION BOULEVARD
11   19TH FLOOR
     LOS ANGELES, CALIFORNIA 90067
12   (310) 553-3000
13 FOR THE NON PARTIES:
14   KAYE SCHOLER, LLP
     BY:  BRYANT S. DELGADILLO, ESQ.
15   1999 AVENUE OF THE STARS
     SUITE 1700
16   LOS ANGELES, CALIFORNIA 90067
     (310) 788-1000
17
18 FOR THE ((:
19   SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
     BY:  JOSE ALLEN, ESQ.
20     RAOUL KENNEDY, ESQ.
     FOUR EMBARCADERO CENTER
21   SUITE 3800
     SAN FRANCISCO, CALIFORNIA 94111
22   (415) 984-6400
23
24
25

2

1         UNITED STATES DISTRICT COURT
2   CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION
3
4  CARTER BRYANT, AN INDIVIDUAL, )
                              )
5     PLAINTIFF,              )
                              )
6  VS.            )CASE NO. CV 04-9049
                              )
7  MATTEL, INC., A DELAWARE    )
   CORPORATION,              )
8                              )
     DEFENDANTS.             )
9                              )
                              )
10 AND CONSOLIDATED ACTIONS    )
11
12
13      HEARING IN RE MATTEL, INC.'S NOTICE OF MOTION AND
14 MOTION TO COMPEL KAYE SCHOLER TO PRODUCE DOCUMENTS; AN
15 MEMORNANDUM OF POINTS AND AUTHORITIES, TAKEN AT 865 SOUTH
16 FIGUEROA STREET, 10TH FLOOR, LOS ANGELES, CALIFORNIA,
17 COMMENCING AT 9:04 A.M., WEDNESDAY, JANUARY 16, 2008,
18 BEFORE APRIL CRUZ CACULITAN, CERTIFIED SHORTHAND REPORTE
19 NO. 12437.
20
21
22
23
24
25

4

1
2    STERN & GOLDBERG
3    BY:  ALAN N. GOLDBERG, ESQ.
     6345 BALBOA BOULEVARD
4    SUITE 200
     ENCINO, CALIFORNIA 91316
5    (818) 758-3940
6  ALSO PRESENT:
7    ALEXANDER CODY
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

EXHIBIT EE PAGE 483

Hearing: Mattel MTC Kaye Scholer Documents [Infante] ROUGH  1/16/2008  6:08:00 PM

5

1      LOS ANGELES, CALIFORNIA;
2      WEDNESDAY, JANUARY 16, 2008, 9:04 A.M.
3
4         THE COURT:  OKAY.  THIS IS JUDGE INFANTE.
5   I'D LIKE TO TAKE A ROLE AS TO WHO'S PRESENT ON THE
6   CALL.  FOR THE NON PARTY PARTIES THAT HAVE BEEN
7   SUBPOENAED IF YOU WOULD PLEASE IDENTIFY YOURSELF.
8         MR. GOLDBERG:  GOOD MORNING JUDGE INFANTE.
9   ALLEN GOLDBERG APPEARING ON BEHALF OF NONPARTY STERN
10  AND GOLDGERG.
11        THE COURT:  OKAY.
12        MR. DELGADILLO:  GOOD MORNING, YOUR HONOR.
13  BRIAN DELGADILLO APPEARING ON BEHALF OF KAYE SCHOLER A
14  NON PARTY.
15   ·    MS. MORGENTHALER:  GOOD MORNING YOUR HONOR
16  ALISA MORGENTHALER LEVER AND SCOTT GEYSER APPEARING ON
17  BEHALF OF THIRD PARTY FARHAD LARIAN.
18        THE COURT:  ALISA WHAT WAS YOUR LAST NAME.
19        MS. MORGENTHALER:  MORGENTHALER LEVER.
20        THE COURT:  OKAY A ON THE CALL?
21        MR. ALLEN:  YES, YOUR HONOR.  IT'S JOSE ALLEN
22  AND RAOUL KENNEDY.
23        THE COURT:  OKAY.  I GUESS THAT COMPLETES IT.
24  IS THE COURT REPORTER READY?
25        MR. COREY:  YES, YOUR HONOR.

6

1         MR. CODY:  YOUR HONOR, THIS IS ALEXANDER CODY
2   ON BEHALF OF GUSTAVO MACHADO.
3         THE COURT:  OKAY.  ALL RIGHT.  MATTEL I'D
4   LIKE YOU TO ARGUE YOUR MOTION YOU MAY WANT TO START
5   WITH THE SUBPOENA ON FAHAD LARIAN.
6         MR. COREY:  YOUR HONOR IF I MAY WOULD IT BE
7   APPROPRIATE TO ARGUE ESSENTIALLY MATTEL'S POSITION WITH
8   RESPECT TO THE THREE MOTIONS TO COMPEL THE THIRD
9   PARTIES BECAUSE I DO THINK THERE IS A SIGNIFICANT
10  AMOUNT OF OVERLAP WITH RESPECT TO SOME OF THE ISSUES
11  THAT THEY RAISED IN THEIR MOVING PAPERS AND I'D LIKE TO
12  DO THAT IF THAT'S APPROPRIATE OR IF THAT'S SOMETHING --
13        THE COURT:  GO AHEAD.
14        MR. COREY:  THANK YOU.  KIND OF THE BOTTOM
15  LINE HERE WITH RESPECT TO THESE MOTIONS IS THAT
16  SOMEBODY HAD TO HAVE DOCUMENTS RELATED TO THE LARIAN
17  AGAINST LARIAN DISPUTES SPECIFICALLY TO MR. FARHAD
18  LARIAN'S ALLEGATION THAT ISAAC LARIAN AND M G A KNEW
19  ABOUT BRATZ AND WERE WORKING ON IT IN 2000.  AND
20  DISCOVERY MASTER HAS ALREADY DETERMINED THAT THOSE FALL
21  WITHIN THE SCOPE OF DISCOVERY THAT'S RELEVANT IN THIS
22  CASE.  AND IN SOME INSTANCES THOSE DOCUMENT VERSUS ARE
23  COMPELLED IN THIS INSTANCE WE'RE SEEKING THAT THEY CAN
24  BECOME SPELLED FROM THIRD PARTIES THE FRUSTRATION THAT
25  MATTEL HAS WITH RESPECT TO THESE PARTICULAR CATEGORY OF

7

1   DOCUMENTS IS ALL WE'RE GETTING IS FINGER-POINTING
2   ASTERN AND GOLDBERG SAYING YOU SHOULD GO GET IT FROM
3   FARHAD LARIAN BECAUSE WE GAVE EVERYTHING WE HAD FROM
4   HIM.  YOU'VE GOT M G A SAYING DON'T GET IT FROM A 30
5   PARODY BECAUSE YOU CAN GET IT FROM THE PARTIES WE HAVE
6   YET TO GET ANYTHING FROM THE PARTIES.  MR. FARHAD'S
7   DEPOSITION IS GOING TO GO FORWARD ON JANUARY 29TH.  AND SO
8   WE'RE ABSOLUTELY ENTITLED TO GET DISCOVERY FROM THIRD
9   PARTIES AND TO THE EXTENT THE THOSE THIRD PARTIES
10  HAVE DOCUMENTS THAT ARE WITHIN THE SCOPE OF WHAT WHAT
11  THE DISCOVERY MASTER HAS PREVIOUSLY RULED AS RELEVANT
12  THOSE DOCUMENTS SHOULD BECOME SPELLED FROM THOSE THIRD
13  PARTIES.  ONE OF THE RESPONSES OR ONE OF THE ARGUMENTS
14  THAT WE RECEIVED IN OP STATION TO THESE MOTIONS IS THAT
15  IT'S NOT PROPER TO SEEK DISCOVERY FROM THE THIRD
16  PARTIES I THINK PARTICULARLY IN THIS CASE IT'S PROP
17  EVERY AND APPROPRIATE AND ACTUALLY NECESSARY TO GET
18  THIS KIND OF DISCOVERY FROM THIRD PARTIES FROM A COUPLE
19  OF DIFFERENT REASONS.  FIRST AN THE DISCOVERY MASTER IS
20  VERY FAMILIAR WITH THIS.  THERE'S BEEN A PATTERN IN
21  THIS CASE OF GETTING REPRESENTATIONS FROM THE PARTIES
22  THAT PRODUCTIONS ARE COMPLETE MATTEL WILL GET
23  INFORMATION FROM THIRD PARTIES DEMONSTRATING THAT THERE
24  ARE THINGS MISSING THERE ARE THINGS IN SOME INSTANCES
25  THINGS THAT HAVE BEEN COMPELLED.  THAT HAVEN'T BEEN

8

1   PRODUCED AND SO WE HAVE TO GO BACK TO THE WELL AND SAY
2   THAT WE HAVE EVIDENCE THAT THERE'S INFORMATION THAT
3   YOU'RE WITHHOLDING AN WE'RE ENTITLED TO IT THE ONLY
4   REASON WE KNOW ABOUT IT IS BECAUSE WE DID GET THE FROM
5   THIRD PARTIES I THINK TO BUT A VERY FINE POINT ON THAT
6   WE LEARN LESS THAN A LIT PHYSICAL MORE THAN TWO WEEKS
7   AGO THAT THERE WERE THREE MATTEL EMPLOYS THAT WE DID
8   NOD KNOW ABOUT THAT HAS NOT BEEN DISCLOSED WHO WERE WH-
9   HAD BEEN WORKING ON BRATZ FASHIONS AND THAT'S SOMETHING
10  THAT WE'RE DEALING WITH AND I THINK THAT'S THE SUBJECT
11  OF MOTION THAT'S IN FRONT OF THE DISCOVERY MASSER AND
12  THE OTHER POINT ON THAT IS THE THIRD PARTIES ALL HAVE
13  UNIQUE DOCUMENTS.  I CAN TALK VERY SPECIFICALLY ABOUT
14  THE FACT THAT AS FAR AS WE'RE AWARE STERN AND GOLDBERG
15  IS THE ONLY PARTY THAT HAS A TRANSCRIPT OR TOLD OF THE
16  JANUARY 23RD 2000 MEETING THEY'RE THE ONLY ONES WHO
17  HAVE INFORMATION THAT'S SPECIFIC TO MR. ZARABI AND WHAT
18  HE UNDERSTOOD WHAT HE WAS LOOKING AT WHAT HE CREATED
19  WHAT WAS DONE IN CONNECTION WITH EVALUATION OF FARHAD
20  EARLY ON WHICH WAS KIND OF THE GENESIS OF MR. FARHAD
21  LARIAN'S CLAIMS.  AND ONE OF THE THINGS THAT I THINK IS
22  A LITTLE BIT FRUSTRATING FROM OUR PERSPECTIVE IS THAT
23  WE REALLY DON'T HAVE ANYTHING YET FROM EITHER THE
24  PARTIES OR OR ANY NONE PARTY KIND OF THE RAW MATERIAL
25  THE PROJECTIONS AND THE INFORMATION THAT MR. DUE CHINO

**EXHIBIT EE PAGE 484**

Hearing: Mattel MTC Kaye Scholer Documents [Infante] ROUGH  1/16/2008  6:08:00 PM

33

1 AND GOLDBERG OR ANY OTHER SUBPOENAED PARTY SHOULD DO
2 ANYTHING THAT'S VIOLATIVE OF AND EXISISTIVE PROTECTIVE
3 ORDER AND THAT'S WHY WE TAKE THE STEPS THAT WE HAVE TO
4 TRY AND ALLEVIATE THOSE CONCERNS.  NOW SPECIFICALLY
5 WITH RESPECT TO WHAT MR. DELGADILLO SAID MATTEL'S
6 FRUSTRATION IN THIS REGARD LET ME PUT A VERY FINE POINT
7 ON IT.  THE DOCUMENTS OR THE FILES THAT MR. DEGADILLO
8 AGREED TO REVIEW FOR RESPONSIVE DOCUMENTS CONSISTED OF
9 PLEADING FILES WHICH ARE THE PUBLIC AND WHICH MATTEL
10 HAS THOSE THAT IT CAN OBTAIN.  EXHIBITS USED IN
11 DISPUTED PROCEEDINGS EITHER IN ARBITRATION OR IN OR IN
12 LITIGATION OR DOCUMENTS THAT THEY PRODUCE THAT ISAAC
13 LARIAN PRODUCED OR THAT ISAAC LARIAN RECEIVED FROM
14 OTHER PARTIES.  THAT LEAVEA A SIGNIFICANT UNIVERSE OF
15 DOCUMENTS THAT KAYE SCHOLER HAS NOT AGREED TO REVIEW
16 FOR RESPONSIVE DOCUMENTS.  THE MOST SIGNIFICANT OF
17 THOSE BEING DOCUMENTS THAT KAYE SCHOLER MAY HAVE
18 COLLECTED FROM OTHER PARTIES INCLUDING IT'S CLIENT THAT
19 MAY RELATE TO THIS DISPUTE WHETHER THEY MAY HAVE
20 COLLECTED FROM THIRD PARTIES THAT RELATE TO THIS
21 DISPUTE MY UNDERSTANDING OF THE SCOPE OF WHAT MR. OF
22 WHAT KAYE SCHOLER HAS AGREED TO DO DOES NOT INCLUDE
23 THAT CATEGORY OF DOCUMENTS.  MAYBE MR. DELGADILLO CAN
24 TELL US HE DOESN'T HAVE THAT KIND OF DOCUMENT.
25      MR. DELGADILLO:  I CAN TELL YOU THAT NOW WE

34

1 DON'T HAVE DOCUMENTS RELATED TO THIS DISPUTE WE ARE NOT
2 HIS LAWYER AND WE.
3      MR. COREY:  PERHAPS I WAS OBLIGE DOCUMENTS
4 RELATED TO THE SUBJECT MATTER OF THIS DISPUTE I'M NOT
5 REFERRING TO THE MATTER THAT PENDING FROM FRONT OF
6 JUDGE LARSON I'M REFERRING TO THE SUBJECT MATTER THE
7 SUBJECTS THAT GIVE RISE TO THIS DISPUTE.  AND SO THE
8 LIMITATIONS THAT MR. DELGADILLO PROPOSES LOOKING IN
9 THOSE VERY RELATIVELY NARROW AND CONFINED FILES FOR
10 RESPONSIVE DOCUMENTS REALLY GIVES MATTEL SOME PAUSE AN
11 RESERVATION AS TO WHAT IS THERE AND WHAT POTENTIAL
12 RESPONSIVE DOCUMENTS THEY WOULD HAVE EVEN IF THE
13 REQUESTS RELATED TO THE LARIAN AGAINST LARIAN DISPUTES
14 ARE LIMITED AS THE DISCOVERY MASSER HAS PROPOSED OR HAS
15 RULED.  THE OTHER THING IS THAT MR. DELGADILLO HAS --
16 HE'S OFFERED AND INDEX OF DOCUMENTS THAT WE HAVE WE
17 HAVEN'T SEEN THAT.  I'VE ASKED HER DELGADILLO TO
18 PROVIDE THAT I THINK THE MORE SIGNIFICANT POINT WITH
19 RESPECT TO THE KAYE SCHOLER DOCUMENTS IS THE ONE THAT I
20 REFERRED TO EARLIER THE DOCUMENTS IN THE POSSESSION OF
21 KAYE SCHOLER ARE ALSO ISAAC LARIAN'S DOCUMENTS AN
22 WITHIN HIS POSSESSION, CUSTODY AND CONTROL.  AND HE HAS
23 BEEN COMPELLED TO PRODUCE DOCUMENTS RESPONSIVE TO
24 REQUEST 123, 124, AND 2025 AS THEY'VE BEEN RULED ON BY
25 THE DISCOVERY MASTER I WOULD HOPE AN RESPECT THAT ISAAC

35

1 LARIAN AND KAYE SCHOLER HAS BEEN THROUGH THOSE
2 DOCUMENTS TO LOOK FOR THE DOCUMENTS RESPONSIVE TO THOS
3 REQUESTS AND WITHIN THE TIME ORDERED BY THE DISCOVERY
4 MASTER.  AND WITH THAT I'LL SUBMIT UNLESS THE DISCOVERY
5 MASTER HAS ANY QUESTIONS.
6      THE COURT:  THANK YOU VERY MUCH.  DOES ANYONE
7 ELSE WHICH WISH TO MAKE ANY COMMENTS.
8      MR. COREY:  YOUR HONOR THIS IS JOHN COREY
9 AGAIN.  I NEGLECTED IN MY INITIAL DISCUSSION TO RAISE
10 THE ISSUE OF PRIVILEGED LOGS.  WE'VE BRIEFED THIS AT
11 LENGTH IN OUR PAPERS AND I DO THINK MATTEL BELIEVES
12 THAT THE PRIVILEGED LOGS THAT HAVE BEEN PROVIDED BY
13 BOTH KAYE SCHOLER AND FARHAD LARIAN ARE NOT SUFFICIENT
14 TO ALLOW US TO DETERMINE WHETHER THE APPLICATION OF THE
15 PRIVILEGE TO SPECIFIC DOCUMENTS OR DOCUMENTS BEING
16 WITHHELD UNDER CLAIMS OF LEGITIMATE PRIVILEGE AS YOU
17 KNOW REASONS ONE CAN DISAGREE TO ASSERTION OF THE
18 PRIVILEGE WE JUST DON'T HAVE ENOUGH INFORMATION TO DO
19 THAT TO MAKE THAT ASSESSMENT I UNDERSTAND THAT THE
20 BURDEN MAYBE MORE ACUTE WITH RESPECT TO KAYE SCHOLER
21 AND I THINK TO MINIMIZE THAT MATTEL WOULD BE AGREEABLE
22 THAT THEY DO NOT HAVE TO LOG COMMUNICATIONS STRICTLY
23 BETWEEN KAYE SCHOLER AND IT'S CLIENT ISAAC LAIR YEAH I
24 THINK WITH RESPECT TO ANY OTHER CLAIM OR PRIVILEGE
25 THOSE DOCUMENTS SHOULD BE LOGGED.

36

1      THE COURT:  I'M NOT QUITE SURE I UNDERSTAND
2 YOUR POSITION.  YOU SEEM TO BE SAYING THEY DON'T HAVE
3 TO LOG CERTAIN THINGS, BUT YOU DO WANT TO LOG THAT LIST
4 OF DOCUMENTS.
5      MR. COREY:  I DO WANT A LOG THAT LISTS
6 DOCUMENTS BEING WITHHELD UNDER CLAIM OF PRIVILEGE AND I
7 THINK WHAT I'M OFFERING IS IN ORDER TO REDUCE THE PURR
8 DEN ON KAYE SCHOLER IF IT'S JUST A COMMUNICATION
9 BETWEEN JUST ISAAC LARIAN AND JUST AN ATTORNEY AT KAYE
10 SCHOLER I THINK THAT WE CAN EXCLUDE THAT DISCREET
11 CATEGORY OF DOCUMENTS FROM THE LOGGING OBLIGATION.
12      THE COURT:  IN OTHER WORDS THOSE DOCUMENTS
13 THAT ARE DIRECT COMMUNICATIONS BETWEEN THE CLIENT AND
14 THE LAWYER.
15      MR. COREY:  CORRECT I DON'T KNOW.
16      THE COURT:  CAN BE CATEGORICALLY LISTED.
17      MR. COREY:  CORRECT.
18      MR. DELGADILLO:  YOUR HONOR IF I MAY RESPOND
19 TO THAT POINT.  I THINK THAT TO THE EXTENT THAT THERE'S
20 GOING TO BE ANY REQUIREMENT TO DO A DOCUMENT BY
21 DOCUMENT PRIVILEGE LOG IT BASICALLY EVISCERATES ANY
22 AGREEMENT WE HAVE TO REDUCE THE BURDEN.  IF MATTEL'S
23 COUNSEL IS INSISTING HAVING YET TO MAKE A SHOWING OF
24 WHY THEY NEED A PARTICULAR CORRESPONDENCE WHY THEY
25 HAVEN'T RECEIVED IT FROM OTHER PARTIES THAT WE GO

Hearing: Mattel MTC Kaye Scholer Documents [Infante] ROUGH  1/16/2008  6:08:00 PM

37

1  THROUGH A CORRESPONDENCE FILE DOCUMENT BY DOCUMENT TH

2  FACT THAT WE ALREADY WE WILL HAVE TO DO THAT BUT TO

3  CREATE A LOG AND TO LOOK FOR ONE RESPONSIVE DOCUMENT

4  AND TWO TO WE'D OUT THE MAJORITY WHICH WILL BE

5  PRIVILEGED DOCUMENTS BECAUSE THEY'RE IN OUR

6  CORRESPONDENCE FILE WILL BE COMMUNICATIONS TO FINE THE

7  NEEDLE IN THE HEY STACK THAT AREN'T PRIVILEGED IT

8  BASICALLY EVISCERATES ANY AGREEMENT TO DO THAT.  IF

9  WE'RE GOING TO HAVE TO GO THROUGH A CORRESPONDENCE FILE

10 WITH A FINE TOOTHED COMB FOR SOME DOCUMENT THEY IMAGINE

11 IS OUT THERE WHICH THEY HAVEN'T IDENTIFIED YET.  WE'RE

12 ALREADY DOING IT.  THE FACT THAT WE DON'T HAVE TO LOG

13 THAT ON A PRIVILEGE DOESN'T REDUCE THE BURDEN ANY.  I

14 STILL NEED TO GET A LAWYER TO GO THROUGH THOSE NUMEROUS

15 CORRESPONDENCE FILES WE'VE COLLECTED THROUGH THE YEARS

16 AN GO DOCUMENT BY DOCUMENT TO SEE WHAT DOCUMENTS THEY

17 WANT IF THEY ARE RESPONSIVE THAT DOCUMENTS WITHIN THERE

18 AND TWO WHETHER THERE'S PRIVILEGE ASSOCIATED IF THERE'S

19 COMMUNICATION DIRECTLY FROM CLIENT FROM MR. LARIAN TO

20 OUR FIRM THAT DOESN'T SAVE US ANY EFFORT OF NOT HAVING

21 TO PUT THAT ON A PRIVILEGE LOG IT'S REALLY AN EMPTY

22 OFFER.

23      THE COURT:  I DON'T THINK IT WAS TOTALLY

24 EMPTY HE SAID YOU CAN LIST ANY COMMUNICATION FROM YOUR

25 CLIENT TO YOUR LAW FIRM OR FROM YOUR LAW FIRM TO YOUR

38

1  CLIENT CATEGORICALLY WITHOUT LISTING EACH AND EVERY

2  DOCUMENT YOUR ALE HAVE TO GO THROUGHOUT 56 BOXES TO

3  COMB OUT ALL OF THOSE DOCK 789S AND FINE OTHER

4  DOCUMENTS THAT ARE PRIVILEGED AND COMMUNICATIONS WITH

5  OTHER.  I HAVE A DUMB QUESTION AND MY DUMB QUESTION IS

6  THIS:  THE DOCUMENTS THAT YOU HAVE, BELONG TO YOUR

7  CLIENT ISAAC LARIAN.

8      MR. DELGADILLO:  YES YOUR HONOR.

9      THE COURT:  SO THIS IS MY DUMB QUESTION

10 THEY'RE WITHIN THE POSSESSION CUSTODY AND CONTROL AND

11 THE KEY WORD IS CONTROL UNDER RULE 34 AS FAR AS ANY

12 REQUESTS SERVED ON ISAAC LARIAN.  SO MY QUESTION IS WHY

13 DON'T YOU SIMPLY MAKE THE DOCUMENTS AVAILABLE TO YOUR

14 FORMER CLIENT AND ANY BURDENS ASSOCIATED WITH PREPARING

15 A PRIVILEGED LOG WOULD BE WHERE THEY BELONG.

16      MR. DELGADILLO:  I DON'T KNOW MR. LARIAN OR M

17 G A'S COUNSEL WANT TO ADDRESS THAT.  THE ISSUE WE HAD

18 IN RESPONSE TO OUR DOCUMENT REQUEST WAS THE PROPOSAL W

19 HAD WOULD HAVE AVOIDED THAT BECAUSE WE HAVE A BIG

20 UNIVERSE OF DOCUMENTS READY TO PRODUCE TO MATTEL'S

21 COUNSEL THAT HAT AGAIN ONLY NEEDS TO BE RESOLVED BY THE

22 PROTECTIVE ORDER.  THEY ONLY NEED THE PROTECTIVE ORDER

23 TO BE MODIFIED IN ORDER TO FOR US TO PRODUCE THOSE

24 DOCUMENTS.

25      THE COURT:  I'M NOT SUGGESTING THAT THOSE

39

1  DOCUMENTS NOT BE PRODUCED BY YOU.  I'M SUGGESTING THAT

2  THE THE BATES-NUMBERED DOCUMENTS E D AND M Z ONCE THE

3  PROTECTIVE ORDER IS RESOLVED SHOULD BE PRODUCED FROM

4  YOU.

5      MR. DELGADILLO:  I AGREE WITH THAT STATEMENT.

6  I THINK WHAT MY POINT WAS, YOUR HONOR, WAS THOSE

7  DOCUMENTS ARE GOING TO BE THE RESPONSIVE DOCUMENTS

8  WHETHER THEY WERE TO KAYE SCHOLER OR WHETHER THEY WER

9  TO ISAAC LARIAN.  AND WE WOULD PRODUCE WE WOULD HAVE

10 FROM DEUCED WE WILL BE PRODUCING THOSE DOCUMENTS IF

11 MR. LARIAN'S CURRENT COUNSEL OR M G A WANTS TO COME IN

12 AND LOOK THROUGH IT'S THE COURT'S ATTENTION TO REQUIRE

13 EVERYONE TO GO THROUGH THE CORRESPONDENCE FILE AND

14 BEYOND WHAT WE AGREED AND MR. LARIAN WANTS TO UNDERTAKI

15 THAT YOU KNOW OUR FIRM HAS NO OBJECTION TO DOING THAT.

16      THE COURT:  THANK YOU VERY MUCH.

17      MR. ALLEN:  YOUR HONOR THIS IS MR. ALLEN AN

18 BEHALF OF M G A AND ISAAC LARIAN LEAD LIKE TO MAKE TWO

19 QUICK COMMENTS FIRST OF ALL PARTICULARLY FOCUSING ON

20 THE SUBPOENA TO KAYE SCHOLER, WHOS AS MR. DELGADILLO

21 INDICATED WAS MR. LARIAN'S COUNSEL IN THE UNDERLYING

22 ARBITRATION AND LITIGATION.  I BELIEVE IT A SUBPOENA OF

23 THAT TYPE YOUR HONOR RAISES THE SAME ISSUES IN THE

24 SHELL DONE VERSUS AMERICAN MOTORS CASE THAT YOU FOCUSEI

25 ON IN THE LAST HEARING ON JANUARY 30TH WITH RESPECT TO

40

1  THE SUBS THAT WERE DIRECTED AGAINST MR. BRYANT'S FORMER

2  COUNSEL SO.  WE'VE GOT THAT NUKE LEE USE OF ISSUES HERE

3  AS WELL WITH RESPECT TO TO THE SUBPOENA TO KAYE

4  SCHOLER.  SECONDLY YOUR HONOR YOU HAVE ORDERED

5  MR. ISAAC LARIAN TO PRODUCE DOCUMENTS RESPONSIVE TO

6  REQUEST NUMBER 1 23, 125 AS NARROWED BY YOUR

7  DECEMBER 31ST ORDER.  WE ARE COMPLYING WITH THAT OUR

8  DEADLINE FOR COMPLETING THAT PRODUCTION IS DECEMBER --

9  IS JANUARY 18TH AS THE PARTIES HAVE AGREED PER

10 STIPULATION APPROVED BY YOUR HONOR.

11      THE COURT:  MR. ALLEN I BELIEVE IN ORDER FOR

12 YOU TO COMPLY WITH THAT ORDER YOU'RE GOING TO TO HAVE

13 TO REVIEW DOCUMENTS THAT ARE IN POSSESSION OF THE KAYE

14 SCHOLER LAW FIRM.

15      MR. ALLEN:  YOUR HONOR WE UNDERSTAND OUR

16 OBLIGATION IN THAT REGARD.  THE FINAL POINT YOUR HONOR

17 IS THAT YOUR ORDER ALSO DIRECTED US TO APREPARE AND

18 PRODUCE ANY PRIVILEGE LOG WITH RESPECT TO DOCUMENTS

19 THAT MR. LARIAN IS WITHHOLDING FROM PRODUCTION.

20      THE COURT:  CORRECT.  OKAY.  ANYTHING

21 FURTHER.

22      MR. COREY:  THIS IS JOHN COREY.  NO, YOUR

23 HONOR.  THANK YOU.

24      MR. KENNEDY:  YOUR HONOR THIS IS RAOUL

25 KENNEDY I DON'T MEAN TO TURN THIS INTO A TAG TEAM.  WE

Hearing: Mattel MTC Kaye Scholer Documents [Infante] ROUGH  1/16/2008  6:08:00 PM

41

1   HAVE A 18TH. DEADLINE THIS TODAY IS THE FIRST I'VE
2   HEARD THAT KAYE SCHOLER WAS WILLING TO GIVE US ACCESS
3   COMPLETE ACCESS TO THEIR WORK FILES INCLUDING ALL OF
4   THEIR WORK PRODUCT THIS IS MR. LARIAN'S. TO THE
5   EXTENT THEY'RE AGREEABLE TO WAIVING THAT WE CAN
6   UNDERTAKE A REVIEW OF THE FILES BUT CAN'T WELL DO THE
7   56 BOXES AND A PRIVILEGE LOG BY FRIDAY TO THE EXTENT
8   THE COURT WOULD WE ORDERING US TO DO THAT WE WOULD
9   REQUEST SOME ADDITIONAL TIME. AT LEAST TO THE BEST OF
10  MY KNOWLEDGE FIRST ANNOUNCED WAVER OF WORK PRODUCT.
11     MR. DELGADILLO: LET ME ADDRESS THAT I DON'T
12  KNOW WHO MR. KENNEDY REPRESENTS.
13     THE COURT: HE REPRESENTS M G A.
14     MR. DELGADILLO: THAT'S ONE ISSUE THAT AGAIN
15  HIGHLIGHTS THE PROBLEM WITH THIS CASE THERE ARE SO MANY
16  LAWYERS IN THIS CASE A A NONE PARTY I HAVE NO IDEA I'M
17  DEALING WITH HALF THE TIME.
18     THE COURT: HE'S MR. ALLEN'S PARTNER.
19     MR. DELGADILLO: THE OTHER ISSUE IS WE
20  ALREADY REVIEWED ALL OF THE FILES EXCEPT CERTAIN AMOUNT
21  -- CERTAIN FILES IF THEY WANT TO COME REVIEW OUR
22  CORRESPONDENCE FILES THEY CAN I NEVER AGREED THEY
23  COULDN'T REVIEW OUR ATTORNEY WORK PRODUCT FILES. WE
24  HAVE FILES IN THERE THAT WERE ATTORNEY PRODUCT FILES
25  FOR WORK PRODUCT FILES FOR EXAMPLE WITNESS PREP FILES

42

1   THAT WERE USED IN THE ARBITRATION ATTORNEY NOTES THAT
2   WERE USED THAT WERE TAKEN DURING EITHER DEPOSITIONS OR
3   DURING THE ARBITRATION. WE'VE NEVER AGREED THEY COULD DO
4   THAT. AND WE WOULDN'T I DON'T KNOW WHY THEY WOULD NEED
5   TO LOOK IN THOSE DOCUMENTS. I'M TALKING SPECIFICALLY
6   ABOUT THE ONE CATEGORY OF DOCUMENTS THAT WE NEVER
7   AGREED TO DO BECAUSE WE THINK IT'S BURDENSOME WHICH IS
8   THE CORRESPONDENCE FILE WHICH AGAIN I SUBMIT MATTEL HAS
9   NEVER MADE A SHOWING THAT THERE IS ANY PARTICULAR
10  DOCUMENTS THAT THEY'RE LOOKING FOR WITHIN THOSE
11  CORRESPONDENCE FILES. IF MR. LARIAN'S COUNSEL WANTS TO
12  COME LOOK THROUGH OUR CORRESPONDENCE FILE AND REVIEW
13  THOSE COMES THEY'RE FREE TO DO THAT. WE'RE NOT WAIVING
14  ANY ATTORNEY WORK PRODUCT AND THOSE FILES WILL NOT BE
15  MADE AVAILABLE. THOSE ARE LIMITED FILES OF ATTORNEY'S
16  FILES THAT WERE PREPARED TO CROSS EXAMINE WITNESSES TO
17  TAKE DIRECT EXAMINATION OF WITNESSES AN THEY'RE SUB
18  FILES WITHIN OUR THE 56 BOXES THAT WE HAVE.
19     THE COURT: WAIT A MINUTE LET ME BREAKDOWN
20  YOUR SITUATION INTO FOUR CATEGORIES.
21     MR. DELGADILLO: YES.
22     THE COURT: ONE, YOU'RE GOING TO PRODUCE ALL
23  OF THE BATES-NUMBERED DOCUMENTS THAT WE INDICATED THAT
24  YOU WOULD PRODUCE IF THE PROTECTIVE OR SIR RESOLVED
25  CORRECT.

43

1      MR. DELGADILLO: THAT'S CORRECT YOUR HONOR.
2      THE COURT: TWO, WITH RESPECT TO YOUR
3   CORRESPONDENCE FILES WHICH TRULY BELONG TO YOUR FORMEF
4   CLIENT UNDER YOUR CUSTODY YOU OF COURSE HAVE TO MAKE
5   THOSE AVAILABLE TO YOUR FORMER CLIENT'S CURRENT COUNSEL
6   FOR EXAMINATION IN COMPLIANCE WITH ANY ORDER THAT THEY
7   HAVE TO PRODUCE DOCUMENTS UNDER THEIR CONTROL CORRECT
8      MR. DELGADILLO: WE HAVE NO PROBLEM WITH THAT
9   YOUR HONOR.
10     THE COURT: ALL RIGHT. THIRD CATEGORY IS
11  WORK PRODUCT WHERE YOU HAVE MENTAL IMPRESSIONS AND
12  OPINIONS OF ATTORNEYS AND OF COURSE YOU ARE THE HOLDER
13  OF THAT IMMUNITY I'M CALLING IT IMMUNITY UNDER FEDERAL
14  LAW EVEN THOUGH IT'S A PRIVILEGE UNDER CALIFORNIA LAW.
15  YOU ARE THE HOLDER OF THE WORK PRODUCT PRIVILEGE OR
16  IMMUNITY AND YOU'RE NOT WAIVING THAT AND I UNDERSTAND
17  THAT WITH RESPECT TO MENTAL IMPRESSIONS. THE FOURTH
18  CATEGORY IS POTENTIAL WORK PRODUCT PROTECHED MATERIALS
19  THAT DO NOT CONTAIN MENTAL IMPRESSION BUT MORE OR LESS
20  REFER TO FACT WORK PRODUCT WHICH MAY VERY WELL BE IN
21  THOSE CORRESPONDENCE FILES. IN MY VIEW YOU'RE GOING
22  LET THEM REVIEW THAT AREN'T YOU.
23     MR. DELGADILLO: YES. YOUR HONOR IT'S EASIER
24  THAN THAT IT'S SIMPLE WE HAVE FILES.
25     THE COURT: I DON'T THINK YOU HAVE TO GIVE

44

1   MEN EXAMPLE. THIS HEARING HAS GONE ON LONG ENOUGH.
2   I'M TRYING TO CUT THROUGH AND MAKE IT SIMPLE FOR YOU
3   OKAY.
4      MR. DELGADILLO: OKAY. I WOULD ADD FOR THE
5   RECORD THAT WE'VE REVIEWED AND HAVE PUT ASIDE MORE
6   DOCUMENTS THAN THE E DM Z DOCUMENTS AS WELL.
7      THE COURT: PRODUCE THEM.
8      MR. DELGADILLO: THOSE ARE ALSO SUBJECT TO A
9   PROTECTIVE OFFER WHEN THE PARTIES AGREE THAT WILL NOT
10  BE VIOLATING PRODETECTIVE ORDER WE WILL PRODUCE THOSE
11  YOUR HONOR.
12     THE COURT: THIS QUESTION THAT PROVOKED AND
13  RAISED BY INDICATING THAT THE DOCUMENTS REALLY BELONGED
14  TO ISAAC LARIAN DOES NOT LIMIT ANY PRODUCTION YOU
15  INTENDING TO MAKE CORRECT.
16     MR. DELGADILLO: EXACTLY CORRECT.
17     THE COURT: NOW MR. KENTY YOU CAN HAVE AN
18  EXTENSION OF TIME BEYOND JANUARY 18TH ONLY FOR THIS
19  PORTION OF YOUR OBLIGED PRODUCTION.
20     MR. KENNEDY: UNDERSTOOD YOUR HONOR THAT'S
21  ALL WE WERE SEEKING IT FOR.
22     THE COURT: I WOULD IMAGINE WE WOULD MAKE
23  THAT GIVE YOU AT LEAST A WEEK.
24     MR. KENNEDY: OKAY. THANK YOU YOUR HONOR.
25     THE COURT: SO THAT WOULD BE THE 25TH. OKAY.

**EXHIBIT EE PAGE 487**

45

1      MR. COREY:  YOUR HONOR, IF I MAY CAN WE ASK

2   THAT ANY RESPONSIVE DOCUMENTS FROM THAT BE PRODUCED BY

3   NOON ON THE 25TH BECAUSE MR. FARHAD'S LARIAN'S

4   DEPOSITION IS GOING FORWARD ON THE 29TH SO WE HAVE AN

5   OPPORTUNITY TO LOOK HAT THOSE KINDS OF DOCUMENTS.

6      THE COURT:  YES NOON ON THE 25TH.

7      MR. COREY:  THANK YOU VERY MUCH YOUR HONOR.

8      THE COURT:  ALL RIGHT.  NOW WITH RESPECT TO

9   ALL OF THESE MOTIONS I SIMPLY TAKE THEM UNDER

10  SUBMISSION AT THIS POINT.  THE GOLDBERG I'M GOING TO

11  HOLD IN ABEYANCE THE OTHERS I'LL GIVE YOU A RULING ON I

12  WANT TO WAIT FOR A REPORT THAT I RECEIVE NO LATER TO

13  NEXT MONODIDAY WITH RESOLUTION OF PROTECTIVE ORDER

14  ISSUE.

15     MR. KENNEDY:  THANK YOU WE WILL DO THAT YOUR

16  HONOR.

17     THE COURT:  THANK YOU.  BYE.

18

19

20

21

22

23

24

25

46

1   STATE OF CALIFORNIA    )

                          ) SS.

2   COUNTY OF LOS ANGELES  )

3

4

5      I, APRIL CRUZ CACULITAN, CSR 12437, IN AND FOR THE

6   STATE OF CALIFORNIA, DO HEREBY CERTIFY:

7      THAT SAID PROCEEDING WAS TAKEN DOWN BY ME IN SHORTHAN

8   AT THE TIME AND PLACE THEREIN NAMED, AND THEREAFTER REDUC

9   TO TYPEWRITING UNDER MY DIRECTION, AND THE SAME IS A TRUE,

10  CORRECT AND COMPLETE TRANSCRIPT OF SAID PROCEEDINGS.

11     I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE

12  EVENT OF THE ACTION.

13     WITNESS MY HAND THIS _____ DAY OF

14  _____, 2008.

15

16     _____

17        APRIL CRUZ CACULITAN

18        CERTIFIED SHORTHAND

19        REPORTER FOR THE

20        STATE OF CALIFORNIA

21

22

23

24

25

Exhibit FF

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:   (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8                     UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

            Plaintiff,                     Consolidated with
13                                         Case No. CV 04-09059
                                           Case No. CV 05-02727
14        vs.
                                           THIRD NOTICE OF DEPOSITION OF
15  MATTEL, INC., a Delaware               MGA ENTERTAINMENT, INC.
   corporation,                            PURSUANT TO FEDERAL RULE OF
16                                         CIVIL PROCEDURE 30(B)(6)
            Defendant.
17                                         Discovery Cut-Off: October 22, 2007
                                           Pre-Trial Conference: January 14, 2008
18  ─────────────────────────             Trial Date: February 12, 2008

19  AND CONSOLIDATED ACTIONS

20

21

22

23

24

25

26

27

28

**EXHIBIT FF PAGE 489**

Exhibit 1350

06|05|c7

THIRD NOTICE OF DEPOSITION OF MGA

07209/2048031.1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 26, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped. Mattel also reserves the right to use Livenote or other technology for real-time transcription of the testimony.

DATED: June 5, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____
Michael T. Zeller
Attorneys for Mattel, Inc.

EXHIBIT FF PAGE 490

-1-

THIRD NOTICE OF DEPOSITION OF MGA

## **EXHIBIT A**

1.       "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.       "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.       "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

EXHIBIT FF PAGE 491

07209/2048031.

4.    "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.    "ANGEL" refers to those projects, products, dolls or DESIGNS, sometimes called "Angel Faces" and/or "Prayer Angels," that MGA has claimed are the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734. Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "ANGEL" does not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

6.    "IDENTIFY" or "IDENTITY" means the following:

(a)    With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)    With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)    With reference to an account with a bank or financial institution, means the name and address of the bank or financial institution, the account

07209/2048031.

number(s) for or otherwise associated with such account and the name of each holder, including without limitation each beneficial holder, of each such account.

(d)   With reference to a STORAGE DEVICE, means the manufacturer name, brand, model name and number, serial number and all other manufacturer identifiers, and the technical specifications and capacities of such STORAGE DEVICE.

7.   "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

8.   "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically or optically.

9.   "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether permanently, temporarily or otherwise, to create, generate, transmit, copy, retain, store or maintain DIGITAL INFORMATION.

10.   "EMPLOYEE AGREEMENT" or "EMPLOYEE AGREEMENTS" means any agreement or contract between YOU and any of YOUR employees that purports to assign to, convey to or vest in YOU in any manner, whether in whole or in part, and whether expressly or by implication or in effect, any right, title or interest in any such employee's inventions, works, work product, ideas, concepts, discoveries, improvements, processes, developments, DESIGNS, know-how, data and/or formulae.

11.   "FAMILY MEMBER" means any PERSON who at any time is, was or has been a parent, spouse, or child of another PERSON.

12.   "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing,

EXHIBIT FF PAGE 493

07209/2048031.

-4-

mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

13.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

14.   "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

15.   The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning

17209/2048031.

all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

### Topics of Examination

1.    The IDENTITY, current or last known location, and disposition of each STORAGE DEVICE that each of the following PERSONS has used to create, generate, prepare, draft, send and/or receive any DOCUMENT or DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL at any time since January 1, 1999, including without limitation the date of acquisition and the date of disposition of each such STORAGE DEVICE:

Isaac Larian

Farhad Larian

Paula Garcia

BRYANT

Kami Gillmour

Veronica Marlow

Mercedeh Ward

Margaret Hatch-Leahy

Jennifer Maurus

Judy Rich

Ninette Pembleton

Kerri Brode

Victoria O'Connor

Aileen Storer

Charles O'Connor

Helene Bartels

Colleen O'Higgins

**EXHIBIT FF PAGE 495**          -6-

1    Vivian Matt

2    Maureen Mullen

3    Rachel Harris

4    Barbara Malcolm

5    David Dees

6    Ben Ton

7    Dave Malacrida

8        2.    The IDENTITY, current or last known location, and disposition of

9 each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this

10 Notice, including without limitation the date of creation and the date of disposition of

11 each such backup or copy.

12        3.    YOUR search for and production of DOCUMENTS and DIGITAL

13 INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

14        4.    Each of YOUR EMPLOYEE AGREEMENTS since January 1,

15 1995, including without limitation the meaning, validity and enforcement of such

16 EMPLOYEE AGREEMENTS.

17        5.    Any requirement or practice by YOU, at any time since January 1,

18 1995, that YOUR employees sign or execute EMPLOYEE AGREEMENTS.

19        6.    YOUR statements to Christopher Palmeri in connection with the

20 *Business Week* article entitled "To Really Be A Player, Mattel Needs Hotter Toys,"

21 published on or about July 28, 2003, including without limitation in connection with the

22 statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around

23 in navel-bearing tops and hip-huggers."

24        7.    YOUR statements to Denise I. O'Neal in connection with the

25 *Chicago Sun-Times* article entitled "Bratz Packers Are What's Cool in Doll World,"

26 published on or about March 5, 2004, including without limitation in connection with

27 the statements that MGA's "creative team decided the name should be catchy and not

28

07209/2048031.

THIRD NOTICE OF DEPOSITION OF MGA

1  have more than six letters. Keeping with today's trend of making names more 'cool' by

2  changing the spelling, MGA executives decided to replace the 's' with a 'z.'"

3        8.     YOUR statements to Jeff Weiss in connection with the *San*

4  *Fernando Valley Business Journal* article entitled "Immigrant's Creative Company

5  Shakes Up Toy Industry," published on or about March 29, 2004, including without

6  limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

7        9.     The IDENTITY of each PERSON who YOU had perform, or who

8  YOU requested, asked or solicited to perform, any "test project" in advance of or in

9  consideration of employment by YOU since January 1, 1995, including without

10 limitation the IDENTITY of each such PERSON who was a MATTEL employee at the

11 time.

12       10.    YOUR relationship with Stephen Lee since April 1, 2004, including

13 without limitation any agreements or contracts between YOU and Stephen Lee.

14       11.    Payments of money or any other item of value that YOU have made

15 to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac Larian since

16 January 1, 1999, including without limitation (a) the amounts of such payment and the

17 equivalent dollar value of each of item of value, (b) the dates of such payment, (c) the

18 IDENTITY of each recipient of such payment, (d) the IDENTITY of each bank or

19 financial institution account to which such payment was made and (e) the reasons for

20 each such payment.

21       12.    Payments of money or any other item of value that YOU have made

22 to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad Larian since

23 January 1, 1999, including without limitation (a) the amounts of each such payment and

24 the equivalent dollar value of each of item of value, (b) the timing of each such

25 payment, (c) the IDENTITY of each recipient of each such payment, (d) the

26 IDENTITY of each bank or financial institution account to which such payment was

27 made and (e) the reasons for each such payment.

28

1        13.    Payments of money or any other item of value that YOU have made

2    to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad Zarabi since

3    January 1, 1999, including without limitation (a) the amounts of each such payment and

4    the equivalent dollar value of each of item of value, (b) the timing of each such

5    payment, (c) the IDENTITY of each recipient of each such payment, (d) the

6    IDENTITY of each bank or financial institution account to which such payment was

7    made and (e) the reasons for each such payment.

8        14.    The nature, extent and timing of work and services that Veronica

9    Marlow, Amy Myers, Sarah Halpern, Maureen Mullen and David Dees provided to, or

10   were requested, solicited or proposed by, YOU at any time from January 1, 1999

11   through December 31, 2001, inclusive.

12       15.    Payments of money or any other item of value that YOU have made

13   to Veronica Marlow, Amy Myers, Sarah Halpern, Maureen Mullen and David Dees

14   since January 1, 1999, including without limitation (a) the amounts of each such

15   payment and the equivalent dollar value of each of item of value, (b) the timing of each

16   such payment, (c) the IDENTITY of each recipient of each such payment, (d) the

17   IDENTITY of each bank or financial institution account to which such payment was

18   made and (e) the reasons for each such payment.

19       16.    The IDENTITY of each PERSON who is not, as of June 5, 2007, an

20   MGA employee and for whom or on behalf of whom YOU are paying, have paid or

21   have offered, promised or agreed to pay fees or costs in connection with this ACTION,

22   any contracts, agreements or other DOCUMENTS between YOU and such PERSON

23   pertaining thereto, the amounts YOU have so paid or agreed to pay to such PERSON

24   and the dates on which such payments were made.

25

26

27

28

EXHIBIT FF PAGE 498

17209/2048031.

THIRD NOTICE OF DEPOSITION OF MGA

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 26, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.  Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped.  Mattel also reserves the right to use Livenote or other technology for real-time transcription of the testimony.

DATED:  June 5, 2007                          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                             By _____
                                                Michael T. Zeller
                                                Attorneys for Mattel, Inc.

7209/2048031.

-1-

THIRD NOTICE OF DEPOSITION OF MGA

Exhibit GG

00029/2340430.1

**1**

1  UNCERTIFIED ROUGH DRAFT - NOT FOR OFFICIAL USE
2      THE VIDEO TECHNICIAN:  GOOD MORNING.  WE
3  ARE ON THE RECORD AT 9:24 A.M.  TODAY'S DATE IS
4  JANUARY 17TH, 2008.  MY NAME IS STEVEN TOGAMI.  I'M
5  THE VIDEO TECHNICIAN EMPLOYED BY J.T.V. LITIGATION
6  SERVICES INC. LOCATED IN LOS ANGELES, CALIFORNIA.
7  WE ARE TAPING THESE PROCEEDINGS AT 865 SOUTH
8  FIGUEROA STREET, LOS ANGELES, CALIFORNIA 90017.
9      THIS IS TAPE NO. 1 FOR VOLUME IV OF THE
10  DEPOSITION -- VIDEOTAPED DEPOSITION OF LISA TONNU IN
11  THE ACTION ENTITLED CARTER BRYANT VERSUS MATTEL
12  INC..  THIS DEPOSITION IS BEING TAKEN ON BEHALF OF
13  THE DEFENDANT.  THE CASE NUMBER IS CV 04-9049 SGL.
14      MAY WE PLEASE HAVE INTRODUCTIONS FOR THE
15  RECORD BEGINNING WITH THE WITNESS.
16      THE WITNESS:  LISA TONNU.
17      SPQONE:  CARL ROTH FROM SKADDEN, ARPS ON
18  BEHALF OF THE WITNESS AND THE M.G.A. DEFENDANTS.
19      SPQSIX:  AUDREY WALTON HADLOCK
20  KEKER VAN NEST.
21      SPQFOUR:  RON WEINSTEIN FROM SKADDEN, ARPS
22  ON BEHALF OF THE WITNESS AND THE M.G.A. DEFENDANTS.
23      SPQTWO:  JON COREY ON BEHALF OF MATTEL.
24      THE VIDEO TECHNICIAN:  THANK YOU.
25      THE WITNESS:  I DO.

**2**

1  UNCERTIFIED ROUGH DRAFT - NOT FOR OFFICIAL USE
2  BY SPQTWO:
3    Q  GOOD MORNING MS. TONNU.
4    A  GOOD MORNING.
5    Q  WE HAVE BEEN THROUGH THIS EXERCISE BEFORE.
6  SINCE THE LAST TIME YOU TESTIFIED HAS YOUR -- HAS
7  YOUR JOB POSITION CHANGED AT ALL?
8    A  NO.
9    Q  HAS YOUR COMPENSATION CHANGED AT ALL?
10    A  NO.
11    Q  HAVE YOU BEEN REPRIMANDED OR DISCIPLINED IN
12  ANY WAY?
13    A  NO.
14    Q  LET ME PUT IN FRONT OF YOU EXHIBIT -- WHAT
15  HAS BEEN PREVIOUSLY MARKED AS EXHIBIT 452, WHICH YOU
16  HAVE SEEN BEFORE.
17      EXHIBIT 452 IS THE SECOND NOTICE OF
18  DEPOSITION OF M.G.A. ENTERTAINMENT INC. PURSUANT TO
19  RULE OF CIVIL PROCEDURE 30(B)(6) AND WHAT I WOULD
20  LIKE TO DIRECT YOU TO IS TOPICS NUMBERS 25 AND 41
21  WHICH ARE APPEAR ON PAGES 9 AND 11.
22      TAKE A MINUTE TO READ THOSE AND MY QUESTION
23  IS GOING TO BE, DO YOU UNDERSTAND THAT YOU ARE
24  DESIGNATED TO TESTIFY ON BEHALF OF M.G.A.
25  ENTERTAINMENT WITH RESPECT TO THOSE TOPICS?

**3**

1  UNCERTIFIED ROUGH DRAFT - NOT FOR OFFICIAL USE
2    A  YES.
3    Q  AND 25 IS YOUR REVENUES AND PROFITS FROM
4  BRATZ INCLUDING WITHOUT LIMITATION YOUR GROSS AND
5  NET PROFITS AND YOUR COSTS ASSOCIATED THEREWITH.
6    Q  AND TOPIC NO. 41 IS THE TESTING OF OR
7  SAMPLING FROM DOCUMENTS THAT REFER OR RELATE TO
8  BRATZ OR BRYANT INCLUDING WITHOUT LIMITATION SUCH
9  TESTING OR SAMPLING IN CONNECTION WITH ANY INK,
10  PAPER, CHEMICAL ANALYSIS PERFORMED OR ATTEMPTED TO
11  BE PERFORMED TO DATE, ANY DOCUMENTS THAT REFER OR
12  RELATE THERETO AND ALL RESULTS AND REPORTS RELATING
13  THERETO.
14    A  YES.
15      SPQONE:  JON, I NOTICE THAT YOU HAD JUST
16  THE ONE COPY OF THAT EXHIBIT.  HAS THE PRACTICE BEEN
17  IN THIS CASE WITH RESPECT TO PREVIOUSLY MARKED
18  EXHIBITS THAT YOU DON'T HAVE ADDITIONAL COPIES OR IS
19  THAT --
20      SPQTWO:  I THINK YOU HAVE -- I GAVE YOU
21  MY -- MY OTHER COPY.
22      SPQONE:  OKAY SO.
23      SPQTWO:  BUT -- BUT I WILL TELL YOU THAT WE
24  HAVEN'T HAD GUESTS BEFORE AT MS. TONNU'S DEPOSITION
25  SO I HAVE ONE COPY ONE COUNSEL FOR THE WITNESS.

**4**

1  UNCERTIFIED ROUGH DRAFT - NOT FOR OFFICIAL USE
2      SPQONE:  OKAY.
3      SPQTWO:  AND THEN MY REFERENCE COPY.
4      SPQONE:  ALL RIGHT.
5    Q  SET THAT ASIDE.  LET ME GET THIS MARKED AS
6  EXHIBIT 1350.
7      (EXHIBIT # MARKED.)
8  BY SPQTWO:
9    Q  PLEASE TAKE A MINUTE MS. TONNU AND LOOK AT
10  EXHIBIT 1350 WHICH IS THE THIRD NOTICE OF DEPOSITION
11  OF M.G.A. ENTERTAINMENT INC. PURSUANT TO FEDERAL
12  RULE OF CIVIL PROCEDURE 30(B)(6).  HAVE YOU SEEN
13  THIS BEFORE?  AND LET ME SPECIFICALLY DIRECT YOU TO
14  TOPIC NUMBERS 11, 12, AND 15.
15    A  YES.
16    Q  TOPIC NO. 11 IS PAYMENTS OF MONEY AND ANY
17  OTHER ITEM OF VALUE THAT I HAVE MADE TO, FOR, OR
18  BAND BEHALF OF ISAAC LARIAN OR ANY FAMILY MEMBER OF
19  ISAAC LARIAN SINCE JANUARY 1ST, 1999 INCLUDING
20  WITHOUT LIMITATION A THE AMOUNTS OF SUCH PAYMENT AND
21  THE EQUIVALENT DOLLAR VALUE OF EACH -- OF ITEM OF
22  VALUE B THE DATES OF SUCH PAYMENTS C THE IDENTITY OF
23  EACH RECIPIENT OF SUCH PAYMENT D THE IDENTITY OF
24  EACH BANKER FINANCIAL INSTITUTION ACCOUNT TO WHICH
25  SUCH PAYMENT WAS MADE AND EITHER REASONS FOR EACH

Tonnu, Lisa - Vol 4 [ROUGH]  1/17/2008  12:49:00 PM

77

```
1    UNCERTIFIED ROUGH DRAFT - NOT FOR OFFICIAL USE
2    Q    AND SHIRIN MAKABI ON LINE 56 IS MR. --
3   MR. LARIAN'S SISTER, MR. MAKABI'S SPOUSE?
4    A    YES.
5    Q    WHO IS ELI MAKABI?
6    A   ELI MAKABI IS THE SAME PERSON AS JAHANGIR
7   MAKABI.
8    Q    IF THIS IS COMING OUT OF A DISTRIBUTION
9   ACCOUNT, LOOKING AT LINE 6 IT SAYS ISAAC'S LOANS TO
10  A-G-H-D-A-S AND THAT REFERS TO AGHDAS.  IS THAT HOW
11  YOU SAY THE NAME?
12   A    I DON'T KNOW.
13   Q    AND IF YOU LOOK ON G THAT'S $365,762.  DO
14  YOU KNOW WHY THOSE COMING OUT OF A -- A DISTRIBUTION
15  ACCOUNT?
16   A   SOME OF THE TRANSACTIONS IN HERE ARE ON
17  BEHALF OF AND SO IT WOULD -- WE TREAT IT AS A
18  DISTRIBUTION TO THE SHAREHOLDER.
19   Q    SO -- SO -- IT -- SO THE MONEY IS -- IS
20  GOING TO ISAAC LARIAN'S FATHER BUT THE SOURCE OF THE
21  MONEY IS EITHER AN ADVANCE -- OR IT'S AN ADVANCE ON
22  A DISTRIBUTION OR SOMETHING LIKE THAT; IS THAT
23  RIGHT?
24   A   IT'S NOT AN ADVANCE IT'S TREATED AS A
25  DISTRIBUTION.
```

78

```
1    UNCERTIFIED ROUGH DRAFT - NOT FOR OFFICIAL USE
2    Q    IT'S A DISTRIBUTION?
3    A   (WITNESS NODS HEAD UP AND DOWN.)
4    Q    IF YOU LOOK AT -- IF YOU LOOK AT ISAAC
5   LARIAN'S ENTRY STARTING ON 22 IT HAS 1999 INCOME
6   TAXES AND 2001 TAXES BUT THERE'S NO ENTRY FOR 2000
7   TAXES.
8        DO YOU KNOW WHY THAT IS?
9    A   NO.
10   Q    AND DO YOU KNOW WHETHER THESE ARE
11  DISTRIBUTIONS TO -- WELL HELP ME -- HELP ME HOW --
12  HOW THIS -- WELL LET'S DO IT THIS WAY.  AND WE HAD
13  STARTED DOWN THIS ROAD BEFORE, BUT YOU WERE
14  INSTRUCTED NOT TO ANSWER.  CAN YOU IDENTIFY FOR ME
15  THE SHAREHOLDERS IN M.G.A. ENTERTAINMENT INC.?
16   A   CURRENTLY?
17   Q    YES.
18   A   LARIAN FAMILY TRUST, ISAAC LARIAN GRANTOR
19  ANNUITY TRUST, ANGELA LARIAN GRANTOR ANNUITY TRUSTS,
20  MAKABI FAMILY TRUST, JAHANGIR MAKABI, GRANTOR
21  ANNUITY TRUSTS, SHIRIN MAKABI, GRANTOR ANNUITY
22  TRUSTS.
23   Q    DO YOU KNOW WHAT THE CURRENT PROPORTIONS OF
24  OWNERSHIP ARE?
25   A   NOT SPECIFIC TO EACH TRUST, NO.
```

79

```
1    UNCERTIFIED ROUGH DRAFT - NOT FOR OFFICIAL USE
2    Q    DO YOU KNOW BETWEEN MR. MAKABI'S FAMILY AND
3   MR. -- THE MAKABI TRUSTS AND THE LARIAN TRUSTS?
4    A   CAN YOU BE MORE SPECIFIC.
5    Q    SURE.  DO YOU KNOW -- DO YOU KNOW THE
6   PROPORTION OF OWNERSHIP IF YOU DIVIDE IT BETWEEN THE
7   MAKABI TRUSTS AND THE LARIAN TRUSTS?
8    A   WHICH TRUSTS.
9    Q    YOU SAID YOU DIDN'T -- TAKE A STEP BACK.
10       DO YOU KNOW WHAT PERCENTAGE OF M.G.A.
11  ENTERTAINMENT'S STOCK THE LARIAN FAMILY TRUST OWNS?
12   A    NO, I DON'T KNOW SPECIFICALLY THE AMOUNT.
13  I CAN'T RECALL.
14   Q    WHAT'S -- WHAT'S -- YOU CAN'T RECALL
15  CURRENTLY?
16   A    RIGHT.
17   Q    WHAT'S YOUR BEST ESTIMATE?
18       SPQONE:  OBJECTION; CALLS FOR SPECULATION.
19       THE WITNESS:  I DON'T -- I DON'T KNOW THE
20  EXACT PERCENTAGE.
21  BY SPQTWO:
22   Q    DO YOU KNOW THE PERCENTAGE BETWEEN -- THAT
23  THE LARIAN FAMILY TRUST, THE ISAAC LARIAN GRANTOR
24  ANNUITY TRUST, AND THE ANGELA LARIAN GRANTOR ANNUITY
25  TRUSTS TOGETHER OWN?
```

80

```
1    UNCERTIFIED ROUGH DRAFT - NOT FOR OFFICIAL USE
2    A   YES.
3    Q    WHAT IS THAT?
4    A   81.82 PERCENT.
5    Q    81 POINT?
6    A   82.
7    Q    AND THE BALANCE IS OWNED IN SOME PROPORTION
8   BY THE MAKABI FAMILY TRUST, THE -- MR. MAKABI
9   GRANTOR ANNUITY TRUST AND THE SHIRIN MAKABI GRANTOR
10  ANNUITY TRUST; CORRECT?
11   A   YES.
12   Q    AND HOW LONG HAS THAT BEEN THE PROPORTION
13  OF OWNERSHIP?
14   A   SINCE I'VE BEEN WITH THE COMPANY.
15   Q    SO THE ENTRIES RELATING TO MR. LARIAN ON
16  LINES 22 THROUGH 32, AND IF YOU LOOK AT THE AMOUNT
17  IN COLUMN G, THAT'S NOT THE TOTAL AMOUNT OF
18  DISTRIBUTIONS MADE TO MR. LARIAN OR ON HIS BEHALF;
19  CORRECT?
20       SPQONE:  OBJECTION; VAGUE AND AMBIGUOUS.
21       THE WITNESS:  WHAT DO YOU MEAN?
22  BY SPQTWO:
23   Q    WELL, I'M GOING -- I DON'T UNDERSTAND
24  THE -- I DON'T UNDERSTAND FUNDAMENTALLY HOW THE --
25  HOW THIS SPREADSHEET HAS BEEN -- HAS BEEN SET UP,
```