ORIGINAL

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Plaintiff and Cross-
    Defendant
9   Mattel, Inc.

10

11                  UNITED STATES DISTRICT COURT

12                  CENTRAL DISTRICT OF CALIFORNIA

13                       EASTERN DIVISION

14   CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

15              Plaintiff,                   Consolidated with Case No. 04-9059
                                             and Case No. 05-2727
16         vs.
                                             DISCOVERY MATTER
17   MATTEL, INC., a Delaware
     corporation,                            MATTEL'S SEPARATE
18                                           STATEMENT SUBMITTED IN
                Defendant.                   RESPONSE TO MGA'S SEPARATE
19                                           STATEMENT IN SUPPORT OF ITS
     _____            MOTION TO QUASH SUBPOENAS
20   CONSOLIDATED WITH                       OR, IN THE ALTERNATIVE, FOR
                                             PROTECTIVE ORDER
21   MATTEL, INC. v. BRYANT, and
                                             [Mattel, Inc's Opposition to MGA's
22   MGA ENTERTAINMENT, INC. v.              Motion to Quash and Declarations of
     MATTEL, INC.,                           Jon D. Corey, Michael T. Zeller, and B.
23                                           Dylon Proctor filed concurrently
                Cross-Defendant.             herewith]
24
                                             Hearing Date:   February 8, 2008
25                                           Time:           9:30 a.m.
                                             Place:          Telephonic
26
                                             Phase 1:
27                                           Discovery Cut-off:    January 28, 2008
                                             Pre-trial Conference:  May 5, 2008
28                                           Trial Date:           May 27, 2008

07209/2339253.2

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

I. **THE DISCOVERY MASTER SHOULD QUASH OR ENTER A PROTECTIVE ORDER WITH RESPECT TO THE REQUESTS IN WHICH MATTEL SEEKS IRRELEVANT AND DUPLICATIVE FINANCIAL INFORMATION REGARDING MGA AND ISAAC LARIAN (REQUESTS 1-5 TO WELLS FARGO; REQUESTS 1-7 AND 12 TO WACHOVIA; REQUESTS 1-3 AND 8 TO ERNST & YOUNG; REQUESTS 1-3 AND 8 TO DELOITTE & TOUCHE; REQUESTS 1, 2, 6-8, 12-16, AND 18 TO MOSS ADAMS)**

A. **Mattel's Requests and MGA's Responses**

WELLS FARGO REQUEST NO. 1:

All DOCUMENTS REFERRING OR RELATING TO MGA from January 1, 1999 to the present, inclusive.

RESPONSE TO WELLS FARGO REQUEST NO. 1:

The MGA Entities incorporate by reference their General Objections as though fully set forth herein. The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney-client privilege, the work product doctrine. The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential, commercially sensitive and/or other proprietary or competitive information that is subject to the MGA Entities' or any other person's constitutional, statutory or common law right of privacy or protection. The MGA Entities further object that this request calls for the production of documents that are not relevant to the subject matter involved in the pending litigation or reasonably calculated to lead to the discovery of admissible evidence. The MGA Entities further object to this request on the grounds that it is overbroad as to subject matter and time. The MGA Entities object to the definition of "MGA," as vague, ambiguous and overbroad.

WELLS FARGO REQUEST NO. 2:

All DOCUMENTS REFERRING OR RELATING TO the ACCOUNT maintained by YOU numbered 9600112551, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly

07209/2339253.2

1  transaction history reports, deposit reports, deposit slips, canceled checks, signature

2  cards, and COMMUNICATIONS REFERRING OR RELATING TO such

3  ACCOUNT, created between January 1, 1999 and the present, inclusive.

4  RESPONSE TO WELLS FARGO REQUEST NO. 2:

5        The MGA Entities incorporate by reference their General Objections as

6  though fully set forth herein. The MGA Entities further object to the extent that this

7  request seeks information that is protected from disclosure under the attorney-client

8  privilege, the work product doctrine. The MGA Entities further object to this

9  request to the extent that it seeks documents that contain trade secrets, confidential,

10  commercially sensitive and/or other proprietary or competitive information that is

11  subject to the MGA Entities' or any other person's constitutional, statutory or

12  common law right of privacy or protection. The MGA Entities further object that

13  this request calls for the production of documents that are not relevant to the subject

14  matter involved in the pending litigation or reasonably calculated to lead to the

15  discovery of admissible evidence. The MGA Entities further object to this request

16  on the grounds that it is overbroad as to subject matter and time. The MGA Entities

17  further object on the grounds that this request is vague, ambiguous and overbroad,

18  particularly as to the meaning of "statements," "daily transaction history reports,"

19  "monthly transaction history reports," and "deposit reports."

20  WELLS FARGO REQUEST NO. 3:

21        All DOCUMENTS REFERRING OR RELATING TO any other

22  ACCOUNT maintained by YOU that is in the name of, for the benefit of or

23  concerns MGA, including but not limited to statements, monthly statements, annual

24  statements, daily transaction history reports, monthly transaction history reports,

25  deposit reports,. deposit slips, canceled checks, signature cards, and

26  COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNTS,

27  crated between January 1, 1999 and the present, inclusive.

28

07209/2339253.2

-2-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  RESPONSE TO WELLS FARGO REQUEST NO. 3:

2      The MGA Entities incorporate by reference their General Objections as

3  though fully set forth herein.  The MGA Entities further object to the extent that this

4  request seeks information that is protected from disclosure under the attorney-client

5  privilege, the work product doctrine.  The MGA Entities further object to this

6  request to the extent that it seeks documents that contain trade secrets, confidential,

7  commercially sensitive and/or other proprietary or competitive information that is

8  subject to the MGA Entities' or any other person's constitutional, statutory or

9  common law right of privacy or protection.  The MGA Entities further object that

10  this request calls for the production of documents that are not relevant to the subject

11  matter involved in the pending litigation or reasonably calculated to lead to the

12  discovery of admissible evidence.  The MGA Entities further object to this request

13  on the grounds that it is overbroad as to subject matter and time.  The MGA Entities

14  further object on the grounds that this request is vague, ambiguous and overbroad,

15  particularly as to the meaning of "MGA," "statements," "daily transaction history

16  reports," "monthly transaction history reports," and "deposit reports."

17  WELLS FARGO REQUEST NO. 4:

18      DOCUMENTS sufficient to show the account number of all

19  ACCOUNTS maintained by YOU in the name of, for the benefit of or concerning

20  MGA between January 1, 1999 and the present, inclusive.

21  RESPONSE TO WELLS FARGO REQUEST NO. 4:

22      The MGA Entities incorporate by reference their General Objections as

23  though fully set forth herein.  The MGA Entities further object to the extent that this

24  request seeks information that is protected from disclosure under the attorney-client

25  privilege, the work product doctrine.  The MGA Entities further object to this

26  request to the extent that it seeks documents that contain trade secrets, confidential,

27  commercially sensitive and/or other proprietary or competitive information that is

28  subject to the MGA Entities' or any other person's constitutional, statutory or

07209/2339253.2

-3-

1 common law right of privacy or protection.  The MGA Entities further object that

2 this request calls for the production of documents that are not relevant to the subject

3 matter involved in the pending litigation or reasonably calculated to lead to the

4 discovery of admissible evidence.  The MGA Entities further object to this request

5 on the grounds that it is overbroad as to subject matter and time.  The MGA Entities

6 further object on the grounds that this request is vague, ambiguous and overbroad,

7 particularly as to the meaning of "MGA," "benefit of" and "concerning."

8 WELLS FARGO REQUEST NO. 5:

9        All DOCUMENTS showing or relating to any account(s) held by MGA

10 or any account(s) on which MGA has signatory authority at any other financial

11 institution.

12 RESPONSE TO WELLS FARGO REQUEST NO. 5:

13        The MGA Entities incorporate by reference their General Objections as

14 though fully set forth herein.  The MGA Entities further object to the extent that this

15 request seeks information that is protected from disclosure under the attorney-client

16 privilege, the work product doctrine.  The MGA Entities further object to this

17 request to the extent that it seeks documents that contain trade secrets, confidential,

18 commercially sensitive and/or other proprietary or competitive information that is

19 subject to the MGA Entities' or any other person's constitutional, statutory or

20 common law right of privacy or protection.  The MGA Entities further object that

21 this request calls for the production of documents that are not relevant to the subject

22 matter involved in the pending litigation or reasonably calculated to lead to the

23 discovery of admissible evidence.  The MGA Entities further object to this request

24 on the grounds that it is overbroad as to subject matter and time.  The MGA Entities

25 object to the definition of "MGA," as vague, ambiguous and overbroad.

26 WACHOVIA REQUEST NO. 1:

27        All documents relating to any loan agreement, including without

28 limitation any line of credit or other financing arrangement, that YOU have entered

07209/2339253.2

-4-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  into with MGA since January 1, 1999, including without limitation drafts of any

2  agreements.

3  RESPONSE TO WACHOVIA REQUEST NO. 1:

4        The MGA Entities incorporate by reference their General Objections as

5  though fully set forth herein.  The MGA Entities further object to the extent that this

6  request seeks information that is protected from disclosure under the attorney-client

7  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

8  Entities further object to this request to the extent that it seeks documents that

9  contain trade secrets, confidential, commercially sensitive and/or other proprietary

10  or competitive information that is subject to the MGA Entities' or any other person's

11  constitutional, statutory or common law right of privacy or protection.  The MGA

12  Entities further object that this request calls for the production of documents that are

13  not relevant to the subject matter involved in the pending litigation or reasonably

14  calculated to lead to the discovery of admissible evidence.  The MGA Entities

15  further object to this request as being overly broad, burdensome and harassing to a

16  non-party to the extent that it seeks to force Wachovia to produce documents or

17  information available from parties to the litigation.  The MGA Entities further object

18  to this request on the grounds that it is overbroad as to subject matter and time; in

19  particular, the MGA Entities object to the definition of "MGA," on the grounds that

20  it is overbroad.  The MGA Entities further object on the grounds that this request is

21  vague, ambiguous and overbroad, particularly as to the meaning of "relating to," and

22  "financing arrangement."

23  WACHOVIA REQUEST NO. 2:

24        To the extent not included in YOUR production responsive to Request

25  No. 1, all documents that MGA or any other person provided to YOU for purposes

26  of entering into any loan agreement between YOU and MGA, including without

27  limitation any line of credit or other financing arrangement or agreement, at any

28  time since January 1, 1999, including without limitation accounting records, tax

1  returns, pro formas, expense records, financial projections, budgets or business

2  plans.

3  RESPONSE TO WACHOVIA REQUEST NO. 2:

4      The MGA Entities incorporate by reference their General Objections as

5  though fully set forth herein.  The MGA Entities further object to the extent that this

6  request seeks information that is protected from disclosure under the attorney-client

7  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

8  Entities further object to this request to the extent that it seeks documents that

9  contain trade secrets, confidential, commercially sensitive and/or other proprietary

10  or competitive information that is subject to the MGA Entities' or any other person's

11  constitutional, statutory or common law right of privacy or protection.  The MGA

12  Entities further object to this request to the extent it seeks documents protected by

13  the accountant-client privilege. MGA further objects to the request on the grounds

14  that it seeks documents protected from disclosure by applicable federal and state tax

15  return privileges.  See, *e.g., Premium Serv. Corp. v. Sperry & Hutchinson Co.*,

16  511 F.2d 225, 229 (9th Cir. 1975); *S. Cal. Hous Rights Ctr. v. Krug*, Case No. CV

17  06-1420 SJO (JCx), 2006 U.S. Dist. LEXIS 65330, at **940 (C.D. Cal. Sept. 5,

18  2006); *Aliotti v. Senora*, 217 F.R.D. 496, 498 (N.D. Cal. 2003); *S.F. Bay Area Rapid*

19  *Transit Dist. v. Spencer*, C 04-04632 SI, 2006 U.S. Dist. LEXIS 81681, at **3-4

20  (N.D. Cal. Oct. 23, 2006).  See *also Webb v. Standard Oil Co. of Cal.*, 49 Cal. 2d

21  509, 513-14 (1957); *Sav-On Drugs, Inc. v. Superior Court*, 15 Cal. 3d 1, 6-8 (1975);

22  *Sammut v. Sammut*, 103 Cal. App. 3d 557, 562 (1980).  The MGA Entities further

23  object that this request calls for the production of documents that are not relevant to

24  the subject matter involved in the pending litigation or reasonably calculated to lead

25  to the discovery of admissible evidence.  The MGA Entities further object to this

26  request as being overly broad, burdensome and harassing to a non-party to the extent

27  that it seeks to force Wachovia to produce documents or information available from

28  parties to the litigation.  The MGA Entities further object to this request on the

1 | grounds that it is overbroad as to subject matter and time; in particular, the MGA

2 | Entities object to the definition of "MGA," on the grounds that it is overbroad.  The

3 | MGA Entities further object on the grounds that this request is vague, ambiguous

4 | and overbroad, particularly as to the meaning of "financing arrangement," "pro

5 | formas," "expense records," "financial projections," "budgets" and "business plans."

6 | WACHOVIA REQUEST NO. 3:

7 | To the extent not included in YOUR production responsive to Request

8 | Nos. 1-2, all documents that were in the "three (3) boxes of loan documents" that

9 | YOU refer to in YOUR November 15, 2005 letter to Robert G. Wilson, Esq., letter

10 | which is included herein as Attachment "B."

11 | RESPONSE TO WACHOVIA REQUEST NO. 3:

12 | The MGA Entities incorporate by reference their General Objections as

13 | though fully set forth herein.  The MGA Entities further object to the extent that this

14 | request seeks information that is protected from disclosure under the attorney-client

15 | privilege, the work product doctrine and/or the joint interest privilege.  The MGA

16 | Entities further object to this request to the extent that it seeks documents that

17 | contain trade secrets, confidential, commercially sensitive and/or other proprietary

18 | or competitive information that is subject to the MGA Entities' or any other person's

19 | constitutional, statutory or common law right of privacy or protection.  The MGA

20 | Entities further object that this request calls for the production of documents that are

21 | not relevant to the subject matter involved in the pending litigation or reasonably

22 | calculated to lead to the discovery of admissible evidence.  The MGA Entities

23 | further object to this request as being overly broad, burdensome and harassing to a

24 | non-party to the extent that it seeks to force Wachovia to produce documents or

25 | information available from parties to the litigation.  The MGA Entities further object

26 | to this request on the grounds that it is overbroad; in particular, the MGA Entities

27 | object to the definition of "MGA," on the grounds that it is overbroad.

28 |

07209/2339253.2

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  WACHOVIA REQUEST NO. 4:

2          To the extent not included in YOUR production responsive to Request

3  Nos, 1-3, all documents relating to any loan agreement entered into by MGA, or

4  sought or requested by MGA, during the time period January 1, 1999 and

5  December 31, 2000, inclusive.

6  RESPONSE TO WACHOVIA REQUEST NO. 4:

7          The MGA Entities incorporate by reference their General Objections as

8  though fully set forth herein.  The MGA Entities further object to the extent that this

9  request seeks information that is protected from disclosure under the attorney-client

10  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

11  Entities further object to this request to the extent that it seeks documents that

12  contain trade secrets, confidential, commercially sensitive and/or other proprietary

13  or competitive information that is subject to the MGA Entities' or any other person's

14  constitutional, statutory or common law right of privacy or protection.  The MGA

15  Entities further object that this request calls for the production of documents that are

16  not relevant to the subject matter involved in the pending litigation or reasonably

17  calculated to lead to the discovery of admissible evidence.  The MGA Entities

18  further object to this request as being overly broad, burdensome and harassing to a

19  non-party to the extent that it seeks to force Wachovia to produce documents or

20  information available from parties to the litigation.  The MGA Entities further object

21  to this request on the grounds that it is overbroad; in particular, the MGA Entities

22  object to the definition of "MGA," on the grounds that it is overbroad.  The MGA

23  Entities further object on the grounds that this request is vague and ambiguous,

24  particularly as to the meaning of "relating to."

25  WACHOVIA REQUEST NO. 5:

26          To the extent not included in YOUR production responsive to Request

27  Nos. 1-4, all communications between YOU and MGA during the time period

28  January 1, 1999 and December 31, 2000, inclusive.

-8-

1  RESPONSE TO WACHOVIA REQUEST NO. 5:

2          The MGA Entities incorporate by reference their General Objections as

3  though fully set forth herein.  The MGA Entities further object to the extent that this

4  request seeks information that is protected from disclosure under the attorney-client

5  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

6  Entities further object to this request to the extent that it seeks documents that

7  contain trade secrets, confidential, commercially sensitive and/or other proprietary

8  or competitive information that is subject to the MGA Entities' or any other person's

9  constitutional, statutory or common law right of privacy or protection.  The MGA

10 Entities further object that this request calls for the production of documents that are

11 not relevant to the subject matter involved in the pending litigation or reasonably

12 calculated to lead to the discovery of admissible evidence.  The MGA Entities

13 further object to this request as being overly broad, burdensome and harassing to a

14 non-party to the extent that it seeks to force Wachovia to produce documents or

15 information available from parties to the litigation.  The MGA Entities further object

16 to this request on the grounds that it is overbroad; in particular, the MGA Entities

17 object to the definition of "MGA," on the grounds that it is overbroad.  The MGA

18 Entities further object on the grounds that this request is overbroad, vague and

19 ambiguous, particularly as to the meaning of "communications."

20 WACHOVIA REQUEST NO. 6:

21         To the extent not included in YOUR production responsive to Request

22 Nos. 1-5, all documents indicating or showing a calculation of MGA's net worth or

23 value.

24 RESPONSE TO WACHOVIA REQUEST NO. 6:

25         The MGA Entities incorporate by reference their General Objections as

26 though fully set forth herein.  The MGA Entities further object to the extent that this

27 request seeks information that is protected from disclosure under the attorney-client

28 privilege, the work product doctrine and/or the joint interest privilege.  The MGA

07209/2339253.2

-9-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  Entities further object to this request to the extent that it seeks documents that

2  contain trade secrets, confidential, commercially sensitive and/or other proprietary

3  or competitive information that is subject to the MGA Entities' or any other person's

4  constitutional, statutory or common law right of privacy or protection.  The MGA

5  Entities further object that this request calls for the production of documents that are

6  not relevant to the subject matter involved in the pending litigation or reasonably

7  calculated to lead to the discovery of admissible evidence.  The MGA Entities

8  further object to this request as being overly broad, burdensome and harassing to a

9  non-party to the extent that it seeks to force Wachovia to produce documents or

10  information available from parties to the litigation.  The MGA Entities further object

11  to this request on the grounds that it is overbroad; in particular, the MGA Entities

12  object to the definition of "MGA," on the grounds that it is overbroad.  The MGA

13  Entities further object on the grounds that this request is vague, ambiguous and

14  overbroad, particularly as to the meaning of "indicating," and "value."

15  <u>WACHOVIA REQUEST NO. 7</u>:

16        To the extent not included in YOUR production responsive to Request

17  Nos. 1-6, all documents indicating or calculating the value of MGA's intellectual

18  property or goodwill.

19  <u>RESPONSE TO WACHOVIA REQUEST NO. 7</u>:

20        The MGA Entities incorporate by reference their General Objections as

21  though fully set forth herein.  The MGA Entities further object to the extent that this

22  request seeks information that is protected from disclosure under the attorney-client

23  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

24  Entities further object to this request to the extent that it seeks documents that

25  contain trade secrets, confidential, commercially sensitive and/or other proprietary

26  or competitive information that is subject to the MGA Entities' or any other person's

27  constitutional, statutory or common law right of privacy or protection.  The MGA

28  Entities further object that this request calls for the production of documents that are

-10-

1    not relevant to the subject matter involved in the pending litigation or reasonably

2    calculated to lead to the discovery of admissible evidence.  The MGA Entities

3    further object to this request as being overly broad, burdensome and harassing to a

4    non-party to the extent that it seeks to force Wachovia to produce documents or

5    information available from parties to the litigation.  The MGA Entities further object

6    to this request on the grounds that it is overbroad; in particular, the MGA Entities

7    object to the definition of "MGA," on the grounds that it is overbroad.  The MGA

8    Entities further object on the grounds that this request is vague, ambiguous and

9    overbroad, particularly as to the meaning of "indicating," "value," and "intellectual

10   property."

11   <u>WACHOVIA REQUEST NO. 12</u>:

12           Documents sufficient to identify any other MGA lender or person who

13   extended or was requested to extend a line of credit to MGA since January 1, 1998.

14   <u>RESPONSE TO WACHOVIA REQUEST NO. 12</u>:

15           The MGA Entities incorporate by reference their General Objections as

16   though fully set forth herein.  The MGA Entities further object to the extent that this

17   request seeks information that is protected from disclosure under the attorney-client

18   privilege, the work product doctrine and/or the joint interest privilege.  The MGA

19   Entities further object to this request to the extent that it seeks documents that

20   contain trade secrets, confidential, commercially sensitive and/or other proprietary

21   or competitive information that is subject to the MGA Entities' or any other person's

22   constitutional, statutory or common law right of privacy or protection.  The MGA

23   Entities further object to this request as being overly broad, burdensome and

24   harassing to a non-party to the extent that it seeks to force Wachovia to produce

25   documents or information available from parties to the litigation.  The MGA Entities

26   further object that this request calls for the production of documents that are not

27   relevant to the subject matter involved in the pending litigation or reasonably

28   calculated to lead to the discovery of admissible evidence.  The MGA Entities

1    further object to this request on the grounds that it is overbroad as to subject matter

2    and time, and overbroad, vague and ambiguous, particularly as to the meaning of

3    "sufficient to identify" and "MGA."

4    <u>ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST NO. 1</u>:

5          All documents constituting or relating to MGA's annual audits,

6    including without limitation accounting records, audit programs, audit reports and

7    drafts thereof, tax returns, work papers, worksheets, payroll records, financial

8    projections, pro formas and budgets, from the period beginning January 1, 1999 to

9    the present.

10    <u>RESPONSE TO ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST</u>

11    <u>NO. 1</u>:

12          The MGA Entities incorporate by reference their General Objections as

13    though fully set forth herein.  The MGA Entities further object to the extent that this

14    request seeks information that is protected from disclosure under the attorney-client

15    privilege, the work product doctrine and/or the joint interest privilege.  The MGA

16    Entities further object to this request to the extent it seeks documents protected by

17    the accountant-client privilege.  The MGA Entities further object to the request on

18    the grounds that it seeks documents protected from disclosure by applicable federal

19    and state tax return privileges.  The MGA Entities further object to this request to

20    the extent that it seeks documents that contain trade secrets, confidential,

21    commercially sensitive and/or other proprietary or competitive information that is

22    subject to the MGA Entities' or any other person's constitutional, statutory or

23    common law right of privacy or protection.  The MGA Entities further object that

24    this request calls for the production of documents that are not relevant to the subject

25    matter involved in the pending litigation or reasonably calculated to lead to the

26    discovery of admissible evidence.  The MGA Entities further object to this request

27    as being overly broad, burdensome and harassing to a non-party to the extent that it

28    seeks to force D & T to produce documents or information available from parties to

07209/2339253.2

-12-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  the litigation.  The MGA Entities further object to this request on the grounds that it

2  is overbroad as to subject matter and time; in particular, the MGA Entities object to

3  the definition of "MGA," on the grounds that it is overbroad.  The MGA Entities

4  further object on the grounds that this request is vague, ambiguous and overbroad,

5  particularly as to the meaning of "relating to," "accounting records," "audit

6  programs," "audit reports," "work papers," "worksheets," "financial projections,"

7  "pro formas" and "budgets."

8  ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST NO. 2:

9  　　　　　　To the extent not included in your production responsive to Request

10  No. 1, all documents indicating or calculating MGA's net worth.

11  RESPONSE TO ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST

12  NO. 2:

13  　　　　　　The MGA Entities incorporate by reference their General Objections as

14  though fully set forth herein.  The MGA Entities further object to the extent that this

15  request seeks information that is protected from disclosure under the attorney-client

16  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

17  Entities further object to this request to the extent it seeks documents protected by

18  the accountant-client privilege.  The MGA Entities further object to the request on

19  the grounds that it seeks documents protected from disclosure by applicable federal

20  and state tax return privileges.  The MGA Entities further object to this request to

21  the extent that it seeks documents that contain trade secrets, confidential,

22  commercially sensitive and/or other proprietary or competitive information that is

23  subject to the MGA Entities' or any other person's constitutional, statutory or

24  common law right of privacy or protection.  The MGA Entities further object that

25  this request calls for the production of documents that are not relevant to the subject

26  matter involved in the pending litigation or reasonably calculated to lead to the

27  discovery of admissible evidence.  The MGA Entities further object to this request

28  as being overly broad, burdensome and harassing to a non-party to the extent that it

-13-

1   seeks to force D & T to produce documents or information available from parties to

2   the litigation.  The MGA Entities further object to this request on the grounds that it

3   is overbroad as to subject matter and time; in particular, the MGA Entities object to

4   the definition of "MGA," on the grounds that it is overbroad.  The MGA Entities

5   further object on the grounds that this request is vague, ambiguous and overbroad,

6   particularly as to the meaning of "indicating."

7   ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST NO. 3:

8           To the extent not included in your production responsive to Request

9   Nos. 1-2, all documents indicating or calculating the value of MGA's intellectual

10   property or goodwill.

11   RESPONSE TO ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST

12   NO. 3:

13           The MGA Entities incorporate by reference their General Objections as

14   though fully set forth herein.  The MGA Entities further object to the extent that this

15   request seeks information that is protected from disclosure under the attorney-client

16   privilege, the work product doctrine and/or the joint interest privilege.  The MGA

17   Entities further object to this request to the extent it seeks documents protected by

18   the accountant-client privilege.  The MGA Entities further object to the request on

19   the grounds that it seeks documents protected from disclosure by applicable federal

20   and state tax return privileges.  The MGA Entities further object to this request to

21   the extent that it seeks documents that contain trade secrets, confidential,

22   commercially sensitive and/or other proprietary or competitive information that is

23   subject to the MGA Entities' or any other person's constitutional, statutory or

24   common law right of privacy or protection.  The MGA Entities further object that

25   this request calls for the production of documents that are not relevant to the subject

26   matter involved in the pending litigation or reasonably calculated to lead to the

27   discovery of admissible evidence.  The MGA Entities further object to this request

28   as being overly broad, burdensome and harassing to a non-party to the extent that it

1  seeks to force D & T to produce documents or information available from parties to

2  the litigation.  The MGA Entities further object to this request on the grounds that it

3  is overbroad as to subject matter and time; in particular, the MGA Entities object to

4  the definition of "MGA," on the grounds that it is overbroad.  The MGA Entities

5  further object on the grounds that this request is vague, ambiguous and overbroad,

6  particularly as to the meaning of "indicating," and "goodwill."

7  ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST NO. 8:

8          Documents sufficient to identify any other person or company who has

9  served as MGA's auditor(s) or accountant(s) since January 1, 1999.

10  RESPONSE TO ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST

11  NO. 8:

12          The MGA Entities incorporate by reference their General Objections as

13  though fully set forth herein.  The MGA Entities further object to the extent that this

14  request seeks information that is protected from disclosure under the attorney-client

15  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

16  Entities further object to this request to the extent it seeks documents protected by

17  the accountant-client privilege.  The MGA Entities further object to the request on

18  the grounds that it seeks documents protected from disclosure by applicable federal

19  and state tax return privileges.  The MGA Entities further object to this request to

20  the extent that it seeks documents that contain trade secrets, confidential,

21  commercially sensitive and/or other proprietary or competitive information that is

22  subject to the MGA Entities' or any other person's constitutional, statutory or

23  common law right of privacy or protection.  The MGA Entities further object that

24  this request calls for the production of documents that are not relevant to the subject

25  matter involved in the pending litigation or reasonably calculated to lead to the

26  discovery of admissible evidence.  The MGA Entities further object to this request

27  as being overly broad, burdensome and harassing to a non-party to the extent that it

28  seeks to force D & T to produce documents or information available from parties to

07209/2339253.2

-15-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  the litigation.  The MGA Entities further object to this request on the grounds that it

2  is overbroad as to subject matter and time.  The MGA Entities further object on the

3  grounds that this request is vague, ambiguous and overbroad, particularly as to the

4  meaning of "sufficient to identify."

5  MOSS ADAMS REQUEST NO. 1:

6          All DOCUMENTS RELATING TO MGA, including without

7  limitation accounting records, tax returns and schedules (including without

8  limitation Form 1040, Form 1099, Form 1120, Schedule E or Schedule K-1) and

9  drafts thereof, work papers, worksheets, payroll records, financial statements

10  (audited and unaudited), pro formas and budgets from the period beginning

11  January 1, 1999 to the present.

12  RESPONSE TO MOSS ADAMS REQUEST NO. 1:

13          The MGA Entities incorporate by reference their General Objections as

14  though fully set forth herein.  The MGA Entities further object to the extent that this

15  request seeks information that is protected from disclosure under the attorney-client

16  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

17  Entities further object to this request to the extent it seeks documents protected by

18  the accountant-client privilege.  The MGA Entities further object to the request on

19  the grounds that it seeks documents protected from disclosure by applicable federal

20  and state tax return privileges.  The MGA Entities further object to this request to

21  the extent that it seeks documents that contain trade secrets, confidential,

22  commercially sensitive and/or other proprietary or competitive information that is

23  subject to the MGA Entities' or any other person's constitutional, statutory or

24  common law right of privacy or protection.  The MGA Entities further object that

25  this request calls for the production of documents that are not relevant to a claim or

26  defense in the pending litigation or reasonably calculated to lead to the discovery of

27  admissible evidence.  The MGA Entities further object to this request as being

28  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

07209/2339253.2

-16-

1  force Moss Adams to produce documents or information available from parties to

2  the litigation.  The MGA Entities further object to this request on the grounds that it

3  is overbroad as to subject matter and time; in particular, the MGA Entities object to

4  the definitions of "RELATING TO" and "MGA," on the grounds that they are

5  overbroad, vague and ambiguous.  The MGA Entities further object on the grounds

6  that this request is vague, ambiguous and overbroad, particularly as to the meaning

7  of "accounting records," "schedules," "work papers," "worksheets," "financial

8  statements," "pro formas" and "budgets."

9  MOSS ADAMS REQUEST NO. 2:

10          All DOCUMENTS RELATING TO ISAAC LARIAN, including

11  without limitation accounting records, tax returns and schedules (including without

12  limitation Form 1040, Form 1099, Form 1120, Schedule E and Schedule K-1) and

13  drafts thereof, W-2s, work papers, worksheets, payroll records, financial statements

14  (audited and unaudited), pro formas, budgets, account information and account

15  statements, from the period beginning January 1, 1999 to the present.

16  RESPONSE TO MOSS ADAMS REQUEST NO. 2:

17          The MGA Entities incorporate by reference their General Objections as

18  though fully set forth herein.  The MGA Entities further object to the extent that this

19  request seeks information that is protected from disclosure under the attorney-client

20  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

21  Entities further object to this request to the extent it seeks documents protected by

22  the accountant-client privilege.  The MGA Entities further object to the request on

23  the grounds that it seeks documents protected from disclosure by applicable federal

24  and state tax return privileges.  The MGA Entities further object to this request to

25  the extent that it seeks documents that contain trade secrets, confidential,

26  commercially sensitive and/or other proprietary or competitive information that is

27  subject to the MGA Entities' or any other person's constitutional, statutory or

28  common law right of privacy or protection.  The MGA Entities further object that

1  this request calls for the production of documents that are not relevant to a claim or

2  defense in the pending litigation or reasonably calculated to lead to the discovery of

3  admissible evidence.  The MGA Entities further object to this request as being

4  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

5  force Moss Adams to produce documents or information available from parties to

6  the litigation.  The MGA Entities further object to this request on the grounds that it

7  is overbroad as to subject matter and time; in particular, the MGA Entities object to

8  the definitions of "RELATING TO" and "ISAAC LARIAN," on the grounds that

9  they are overbroad, vague and ambiguous.  The MGA Entities further object on the

10  grounds that this request is vague, ambiguous and overbroad, particularly as to the

11  meaning of "accounting records," "schedules," "work papers," "worksheets,"

12  "financial statements," "pro formas," "account information," "account statements"

13  and "budgets."

14  MOSS ADAMS REQUEST NO. 6:

15       To the extent not included in your production responsive to Request

16  Nos. 1-5, all DOCUMENTS indicating ISAAC LARIAN's net worth.

17  RESPONSE TO MOSS ADAMS REQUEST NO. 6:

18       The MGA Entities incorporate by reference their General Objections as

19  though fully set forth herein.  The MGA Entities further object to the extent that this

20  request seeks information that is protected from disclosure under the attorney-client

21  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

22  Entities further object to this request to the extent it seeks documents protected by

23  the accountant-client privilege.  The MGA Entities further object to the request on

24  the grounds that it seeks documents protected from disclosure by applicable federal

25  and state tax return privileges.  The MGA Entities further object to this request to

26  the extent that it seeks documents that contain trade secrets, confidential,

27  commercially sensitive and/or other proprietary or competitive information that is

28  subject to the MGA Entities' or any other person's constitutional, statutory or

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  common law right of privacy or protection.  The MGA Entities further object that
2  this request calls for the production of documents that are not relevant to a claim or
3  defense in the pending litigation or reasonably calculated to lead to the discovery of
4  admissible evidence.  The MGA Entities further object to this request as being
5  overly broad, burdensome and harassing to a non-party to the extent that it seeks to
6  force Moss Adams to produce documents or information available from parties to
7  the litigation.  The MGA Entities further object to this request on the grounds that it
8  is overbroad as to subject matter and time; in particular, the MGA Entities object to
9  the definition of "ISAAC LARIAN," on the grounds that it is overbroad, vague and
10  ambiguous.  The MGA Entities further object on the grounds that this request is
11  vague, ambiguous and overbroad, particularly as to the meaning of "indicating."
12  MOSS ADAMS REQUEST NO. 7:
13          To the extent not included in your production responsive to Request
14  Nos. 1-6, all DOCUMENTS indicating MGA's net worth.
15  RESPONSE TO MOSS ADAMS REQUEST NO. 7:
16          The MGA Entities incorporate by reference their General Objections as
17  though fully set forth herein.  The MGA Entities further object to the extent that this
18  request seeks information that is protected from disclosure under the attorney-client
19  privilege, the work product doctrine and/or the joint interest privilege.  The MGA
20  Entities further object to this request to the extent it seeks documents protected by
21  the accountant-client privilege.  The MGA Entities further object to the request on
22  the grounds that it seeks documents protected from disclosure by applicable federal
23  and state tax return privileges.  The MGA Entities further object to this request to
24  the extent that it seeks documents that contain trade secrets, confidential,
25  commercially sensitive and/or other proprietary or competitive information that is
26  subject to the MGA Entities' or any other person's constitutional, statutory or
27  common law right of privacy or protection.  The MGA Entities further object that
28  this request calls for the production of documents that are not relevant to a claim or

07209/2339253.2

-19-

1  defense in the pending litigation or reasonably calculated to lead to the discovery of

2  admissible evidence.  The MGA Entities further object to this request as being

3  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

4  force Moss Adams to produce documents or information available from parties to

5  the litigation.  The MGA Entities further object to this request on the grounds that it

6  is overbroad as to subject matter and time; in particular, the MGA Entities object to

7  the definition of "MGA," on the grounds that it is overbroad, vague and ambiguous.

8  The MGA Entities further object on the grounds that this request is vague,

9  ambiguous and overbroad, particularly as to the meaning of "indicating."

10  MOSS ADAMS REQUEST NO. 8:

11          To the extent not included in your production responsive to Request

12  Nos. 1-7, all DOCUMENTS indicating or calculating the value of MGA's

13  intellectual property or goodwill.

14  RESPONSE TO MOSS ADAMS REQUEST NO. 8:

15          The MGA Entities incorporate by reference their General Objections as

16  though fully set forth herein.  The MGA Entities further object to the extent that this

17  request seeks information that is protected from disclosure under the attorney-client

18  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

19  Entities further object to this request to the extent it seeks documents protected by

20  the accountant-client privilege.  The MGA Entities further object to the request on

21  the grounds that it seeks documents protected from disclosure by applicable federal

22  and state tax return privileges.  The MGA Entities further object to this request to

23  the extent that it seeks documents that contain trade secrets, confidential,

24  commercially sensitive and/or other proprietary or competitive information that is

25  subject to the MGA Entities' or any other person's constitutional, statutory or

26  common law right of privacy or protection.  The MGA Entities further object that

27  this request calls for the production of documents that are not relevant to a claim or

28  defense in the pending litigation or reasonably calculated to lead to the discovery of

-20-

1  admissible evidence.  The MGA Entities further object to this request as being

2  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

3  force Moss Adams to produce documents or information available from parties to

4  the litigation.  The MGA Entities further object to this request on the grounds that it

5  is overbroad as to subject matter and time; in particular, the MGA Entities object to

6  the definition of "MGA," on the grounds that it is overbroad, vague and ambiguous.

7  The MGA Entities further object on the grounds that this request is vague,

8  ambiguous and overbroad, particularly as to the meaning of "intellectual property"

9  and "goodwill."

10  MOSS ADAMS REQUEST NO. 12:

11          All DOCUMENTS evidencing, showing or relating to payments to or

12  transfers of value from MGA to ISAAC LARIAN, ISAAC LARIAN ANNUITY

13  TRUST, or ISAAC AND ANGELA ANNUITY TRUST.

14  RESPONSE TO MOSS ADAMS REQUEST NO. 12:

15          The MGA Entities incorporate by reference their General Objections as

16  though fully set forth herein.  The MGA Entities further object to the extent that this

17  request seeks information that is protected from disclosure under the attorney-client

18  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

19  Entities further object to this request to the extent it seeks documents protected by

20  the accountant-client privilege.  The MGA Entities further object to the request on

21  the grounds that it seeks documents protected from disclosure by applicable federal

22  and state tax return privileges.  The MGA Entities further object to this request to

23  the extent that it seeks documents that contain trade secrets, confidential,

24  commercially sensitive and/or other proprietary or competitive information that is

25  subject to the MGA Entities' or any other person's constitutional, statutory or

26  common law right of privacy or protection.  The MGA Entities further object that

27  this request calls for the production of documents that are not relevant to a claim or

28  defense in the pending litigation or reasonably calculated to lead to the discovery of

07209/2339253.2

-21-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1 | admissible evidence.  The MGA Entities further object to this request as being

2 | overly broad, burdensome and harassing to a non-party to the extent that it seeks to

3 | force Moss Adams to produce documents or information available from parties to

4 | the litigation.  The MGA Entities further object to this request on the grounds that it

5 | is overbroad as to subject matter and time; in particular, the MGA Entities object to

6 | the definitions of "MGA," "ISAAC LARIAN," "ISAAC LARIAN ANNUITY

7 | TRUST," and "ISAAC AND ANGELA ANNUITY TRUST," on the grounds that

8 | they are overbroad, vague and ambiguous.  The MGA Entities further object on the

9 | grounds that this request is vague, ambiguous and overbroad, particularly as to the

10 | meaning of "relating to," "showing," "evidencing," "payments" and "transfers of

11 | value."

12 | MOSS ADAMS REQUEST NO. 13:

13 | All DOCUMENTS evidencing, showing or relating to payments to or

14 | transfers of value from MGA or ISAAC LARIAN to BRYANT.

15 | RESPONSE TO MOSS ADAMS REQUEST NO. 13:

16 | The MGA Entities incorporate by reference their General Objections as

17 | though fully set forth herein.  The MGA Entities further object to the extent that this

18 | request seeks information that is protected from disclosure under the attorney-client

19 | privilege, the work product doctrine and/or the joint interest privilege.  The MGA

20 | Entities further object to this request to the extent it seeks documents protected by

21 | the accountant-client privilege.  The MGA Entities further object to the request on

22 | the grounds that it seeks documents protected from disclosure by applicable federal

23 | and state tax return privileges.  The MGA Entities further object to this request to

24 | the extent that it seeks documents that contain trade secrets, confidential,

25 | commercially sensitive and/or other proprietary or competitive information that is

26 | subject to the MGA' Entities' or any other person's constitutional, statutory or

27 | common law right of privacy or protection.  The MGA Entities further object that

28 | this request calls for the production of documents that are not relevant to a claim or

-22-

1  defense in the pending litigation or reasonably calculated to lead to the discovery of

2  admissible evidence.  The MGA Entities further object to this request as being

3  overly broad; burdensome and harassing to a non-party to the extent that it seeks to

4  force Moss Adams to produce documents or information available from parties to

5  the litigation.  The MGA Entities further object to this request on the grounds that it

6  is overbroad as to subject matter and time; in particular, the MGA Entities object to

7  the definitions of "MGA," "ISAAC LARIAN," and "BRYANT," on the grounds that

8  they are overbroad, vague and ambiguous.  The MGA Entities further object on the

9  grounds that this request is vague, ambiguous and overbroad, particularly as to the

10  meaning of "relating to," "showing," "evidencing," "payments" and "transfers of

11  value."

12  <u>MOSS ADAMS REQUEST NO. 14:</u>

13         All DOCUMENTS evidencing, showing or relating to payments to or

14  transfers of value from MGA or ISAAC LARIAN to GARCIA.

15  <u>RESPONSE TO MOSS` ADAMS REQUEST NO. 14:</u>

16         The MGA Entities incorporate by reference their General Objections as

17  though fully set forth herein.  The MGA Entities further object to the extent that this

18  request seeks information that is protected from disclosure under the attorney-client

19  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

20  Entities further object to this request to the extent it seeks documents protected by

21  the accountant-client privilege.  The MGA Entities further object to the request on

22  the grounds that it seeks documents protected from disclosure by applicable federal

23  and state tax return privileges.  The MGA Entities further object to this request to

24  the extent that it seeks documents that contain trade secrets, confidential,

25  commercially sensitive and/or other proprietary or competitive information that is

26  subject to the MGA Entities' or any other person's constitutional, statutory or

27  common law right of privacy or protection.  The MGA Entities further object that

28  this request calls for the production of documents that are not relevant to a claim or

1  defense in the pending litigation or reasonably calculated to lead to the discovery of

2  admissible evidence.  The MGA Entities further object to this request as being

3  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

4  force Moss Adams to produce documents or information available from parties to

5  the litigation.  The MGA Entities further object to this request on the grounds that it

6  is overbroad as to subject matter and time; in particular, the MGA Entities object to

7  the definitions of "MGA," "ISAAC LARIAN" and "GARCIA," on the grounds that

8  they are overbroad, vague and ambiguous.  The MGA Entities further object on the

9  grounds that this request is vague, ambiguous and overbroad, particularly as to the

10  meaning of "relating to," "showing," "evidencing," "payments" and "transfers of

11  value."

12  MOSS ADAMS REQUEST NO. 15:

13          All DOCUMENTS evidencing, showing or relating to payments to or

14  transfers of value from MGA or ISAAC LARIAN to MARLOW.

15  RESPONSE TO MOSS ADAMS REQUEST NO. 15:

16          The MGA Entities incorporate by reference their General Objections as

17  though fully set forth herein.  The MGA Entities further object to the extent that this

18  request seeks information that is protected from disclosure under the attorney-client

19  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

20  Entities further object to this request to the extent it seeks documents protected by

21  the accountant-client privilege.  The MGA Entities further object to the request on

22  the grounds that it seeks documents protected from disclosure by applicable federal

23  and state tax return privileges.  The MGA Entities further object to this request to

24  the extent that it seeks documents that contain trade secrets, confidential,

25  commercially sensitive and/or other proprietary or competitive information that is

26  subject to the MGA Entities' or any other person's constitutional, statutory or

27  common law right of privacy or protection.  The MGA Entities further object that

28  this request calls for the production of documents that are not relevant to a claim or

07209/2339253.2

-24-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  defense in the pending litigation or reasonably calculated to lead to the discovery of

2  admissible evidence.  The MGA Entities further object to this request as being

3  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

4  force Moss Adams to produce documents or information available from parties to

5  the litigation.  The MGA Entities further object to this request on the grounds that it

6  is overbroad as to subject matter and time; in particular, the MGA Entities object to

7  the definitions of "MGA," "ISAAC LARIAN" and "MARLOW," on the grounds

8  that they are overbroad, vague and ambiguous.  The MGA Entities further object on

9  the grounds that this request is vague, ambiguous and overbroad, particularly as to

10  the meaning of "relating to," "showing," "evidencing," "payments" and "transfers of

11  value."

12  MOSS ADAMS REQUEST NO. 16:

13       All DOCUMENTS evidencing, showing or relating to non-payroll

14  payments to or transfers of value from MGA or ISAAC LARIAN to any FORMER

15  MATTEL EMPLOYEE.

16  RESPONSE TO MOSS ADAMS REQUEST NO. 16:

17       The MGA Entities incorporate by reference their General Objections as

18  though fully set forth herein.  The MGA Entities further object to the extent that this

19  request seeks information that is protected from disclosure under the attorney-client

20  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

21  Entities further object to this request to the extent it seeks documents protected by

22  the accountant-client privilege.  The MGA Entities further object to the request on

23  the grounds that it seeks documents protected from disclosure by applicable federal

24  and state tax return privileges.  The MGA Entities further object to this request to

25  the extent that it seeks documents that contain trade secrets, confidential,

26  commercially sensitive and/or other proprietary or competitive information that is

27  subject to the MGA Entities' or any other person's constitutional, statutory or

28  common law right of privacy or protection.  The MGA Entities further object that

1  this request calls for the production of documents that are not relevant to a claim or

2  defense in the pending litigation or reasonably calculated to lead to the discovery of

3  admissible evidence.  The MGA Entities further object to this request as being

4  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

5  force Moss Adams to produce documents or information available from parties to

6  the litigation.  The MGA Entities further object to this request on the grounds that it

7  is overbroad as to subject matter and time; in particular, the MGA Entities object to

8  the definitions of "MGA," "ISAAC LARIAN" and "FORMER MATTEL

9  EMPLOYEE," on the grounds that they are overbroad, vague and ambiguous.  The

10  MGA Entities further object on the grounds that this request is vague, ambiguous

11  and overbroad, particularly as to the meaning of "relating to," "showing,"

12  "evidencing," "non-payroll payments" and "transfers of value."

13  MOSS ADAMS REQUEST NO. 18:

14        DOCUMENTS sufficient to identify any other PERSON who has

15  served as MGA's, ISAAC LARIAN's, FARHAD LARIAN's, the ISAAC AND

16  ANGELA LARIAN FAMILY TRUST or the ISAAC LARIAN ANNUITY

17  TRUST'S auditor(s; or accountant(s) since January 1, 1999.

18  RESPONSE TO MOSS ADAMS REQUEST NO. 18:

19        The MGA Entities incorporate by reference their General Objections as

20  though fully set forth herein.  The MGA Entities further object to the extent that this

21  request seeks information that is protected from disclosure under the attorney-client

22  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

23  Entities further object to this request to the extent it seeks documents protected by

24  the accountant-client privilege.  The MGA Entities further object to the request to

25  the extent that it seeks documents protected from disclosure by applicable federal

26  and state tax return privileges.  The MGA Entities further object to this request to

27  the extent that it seeks documents that contain trade secrets, confidential,

28  commercially sensitive and/or other proprietary or competitive information that is

07209/2339253.2

-26-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1   subject to the MGA Entities' or any other person's constitutional, statutory or

2   common law right of privacy or protection.  The MGA Entities further object that

3   this request calls for the production of documents that are not relevant to a claim or

4   defense in the pending litigation or reasonably calculated to lead to the discovery of

5   admissible evidence.  The MGA Entities further object to this request as being

6   overly broad, burdensome and harassing to a non-party to the extent that it seeks to

7   force Moss Adams to produce documents or information available from parties to

8   the litigation.  The MGA Entities further object to this request on the grounds that it

9   is overbroad as to subject matter and time; in particular, the MGA Entities object to

10   the definitions of "MGA," "ISAAC LARIAN," "FARHAD LARIAN," "ISAAC

11   AND ANGELA LARIAN FAMILY TRUST," and "ISAAC LARIAN ANNUITY

12   TRUST," on the grounds that they are overbroad, vague and ambiguous.  The MGA

13   Entities further object on the grounds that this request is vague, ambiguous and

14   overbroad, particularly as to the meaning of "sufficient to identify."

15          **B.**    **MGA's Statements of Position**

16                   **1.**    **MGA's Statement of Position Regarding Requests 1-5 to**

17                             **Wells Fargo**

18        Mattel has subpoenaed five different entities that perform financial services

19   for MGA or Mr. Larian seeking virtually every scrap of paper and byte of data

20   pertaining to MGA and Mr. Larian's finances over the last nine years.  The instant

21   requests are examples of these overbroad requests.  There is no justification for

22   issuing such expansive subpoenas, with requests such as these which cover largely

23   irrelevant material, particularly since whatever small amount of relevant information

24   may be covered by the subpoenas has already been requested from the parties.

25        When a party subpoenas an adverse party's financial information, courts are

26   especially vigilant in limiting a subpoena's scope such that irrelevant financial

27   information is not produced.  See *S. Cal. Hous Rights Ctr. v. Krug*, Case No. CV 06-

28   1420 SJO (JCx), 2006 U.S. Dist. LEXIS 65330 (C.D. Cal. Sept. 5, 2006) (denying

07209/2339253.2

-27-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

request for production of tax return because plaintiff could not show a compelling need for the return where less intrusive means could be used to establish defendant's net worth); *In re Ashworth, Inc. Sec. Litig.*, Civil No. 99cv0121 L (JAH), 2002 U.S. Dist. LEXIS 27991, at *20 (S.D. Cal. May 10, 2002).  In *Ashworth*, for example, the district court quashed subpoenas issued to the defendant's financial analysts and investment companies as "overwhelmingly broad in category and content" because "[a]s they are phrased, the requests appear, in this Court's view, to seek all documents in the third party financial analysts' possession that refer to or mention Ashworth in any shape or form." 2002 U.S. Dist. LEXIS 27991, at *20.

Here, Mattel's subpoena to Wells Fargo does not merely appear to ask for everything relating to MGA or Mr. Larian, it *literally* demand everything.  Request 1 demands "[a]ll DOCUMENTS REFERRING OR RELATING TO MGA from January 1, 1999 to the present, inclusive."  (Park Decl., Ex. 11 at Request 1).  While requests 2-5 request all documents related to any MGA account at Wells Fargo or any other financial institution.  (Park Decl., Ex. 11 at Requests 2-5).  Moreover, in case it was not clear enough from these requests that Mattel truly wanted everything, Mattel gave the term "RELATING TO" an unnecessarily broad construction.  (Id. at 4 (defined as "reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.").)

Mattel argues that it needs this financial information because it is relevant to damages, Mattel's commercial bribery allegations, and to counter a statement Mr. Larian made in a prior litigation that, as of 2007, he could not recall whether he received a bonus in 2003 because MGA's owners invested the company's profits back into the company.  Such inchoate assertions of relevance are insufficient to justify the type of unfettered access to MGA and Mr. Larian's financial information that Mattel seeks.  See, *e.g., Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003).

07209/2339253.2

-28-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    In *Ocean Atl.*, the copyright owner of real estate development plans sued a

2  developer for infringement with respect to one of its development sites.  The

3  plaintiffs "interrogatories and production requests [sought] all of the defendants'

4  financial records relating to their entire business and professional activities, on all

5  construction projects throughout the country, beginning from 1997 through present

6  date." *Id.* at 926.  Posing the question "can anything remotely relevant to the claims

7  and defenses-or more pointedly to damages-arising from use of the Development

8  Plans at the Liberty Grove development site justify this massive body of discovery,"

9  the court answered, ***"We hardly think so."*** Id. (emphasis added).  "This court

10  perceives an improper motive and purpose to this broad discovery.  We cannot

11  conceive of any relevance to the claims or defenses asserted in this copyright

12  infringement case, or of any legitimate purpose of this massive discovery demand.

13  The production of virtually the entirety of defendants' business books and records

14  relating to all of its projects could not lead to any admissible evidence." *Id.* at 927.

15    The Discovery Master should reach the same conclusion in this case.  Mattel's

16  alleged damages in this case are tied to the particular products at issue, not MGA or

17  Mr. Larian's entire financial history.  Documents such as all of MGA and

18  Mr. Larian's tax returns, account statements and expense records, or the audit files

19  and loan documents for MGA, are neither relevant to damages in this case nor

20  reasonably calculated to lead to the discovery of admissible evidence.  See Fed. R.

21  Civ. P. 26(b)(1).  Indeed, the Discovery Master in this case already rejected an

22  attempt by Mattel to obtain Carter Bryant's tax returns.  (Park Decl., Ex. 27 (1/25/07

23  Order) at 14-15.)

24    Similarly, Mattel's assertion that the requested financial information is

25  relevant to its commercial bribery allegations is specious.  Mattel's bribery

26  allegations consist of nothing more than an assertion that MGA financed Bryant to

27  develop Bratz while he was still employed at Mattel.  Mattel's Second Am.

28  Answer & Counterclaim at 37 (¶ 33), 59 (¶ 93(d)), 74 (¶ 165).  Thus, the only

1 | financial documents that could possibly be relevant to this allegation are documents
2 | showing any payments by MGA to Bryant during the time he was a Mattel
3 | employee.

4 |     Mattel's claim that it needs all of Mr. Larian's financial records to counter his
5 | statement that he did not think he received a bonus in 2003 because MGA's owners
6 | invested the company's profits back into MGA is nothing more than an absurd
7 | fishing expedition.  See *Aliotti v. Senora*, 217 F.R.D. 496, 498 (N.D. Cal. 2003)
8 | (rejecting request for party-opponent's tax returns for impeachment purposes
9 | because request was "the kind of 'fishing expedition' that would undermine the
10 | public policy against unnecessary public disclosure of tax returns") (quotation marks
11 | and citations omitted).  Setting aside the issue of relevance, Mattel does not need to
12 | comb through nine years' worth of Mr. Larian's financial records to determine
13 | whether he received a bonus from MGA in 2003.  That information is obtainable
14 | from MGA.

15 |     In addition to seeking irrelevant information, these requests seek information
16 | that is already covered by one or more of the more than 2,300 document requests
17 | that Mattel has served on the MGA Defendants.  (Park Decl., Ex. 28 at 1-12 (chart
18 | comparing Mattel's requests to Non-Parties with Mattel's document requests to
19 | MGA Defendants))

20 |     In addition, numerous documents requested pursuant to these requests are
21 | duplicative of documents that the MGA Defendants have already produced.  See
22 | Fed. R. Civ. P. 26(b)(2)(C) (limiting discovery if it "is unreasonably cumulative or
23 | duplicative, or can be obtained from some other source that is more convenient, less
24 | burdensome, or less expensive").  The financial documents produced by the MGA
25 | Defendants to date include:

26 |       •    Audited and unaudited quarterly and annual profit and loss
27 |             statements;

28 |       •    Audited and unaudited quarterly and annual statements;

- •    Annual reports;

- •    Various MGA financial reports;

- •    Various financial documents relating to Veronica Marlow;

- •    Documents showing royalty payments to Carter Bryant;

- •    Documents showing MGA's sales, returns and costs of good sold for each month, by SKU, since 2001;

- •    Documents showing MGA's promotional, advertising and media expenditures including MGA's internal allocation of those expenditures by brand and/or product;

- •    Documents showing MGA's amortization and depreciation of certain capital assets and expenditures;

- •    Documents showing MGA's monthly general ledger entries aggregated by account, including income and expense accounts, reserves and liabilities; and

- •    Documents sufficient to explicate MGA's various accounts as presently and historically maintained in MGA's books and records, as well as various nomenclature assigned to items, products, brands, sub-brands, and profit centers.

(Park Decl., ¶ 3.)

In view of the many requests for financial information that Mattel has served on the MGA Defendants, as well as the ample financial documents that the MGA Defendants have produced or will be producing, there is no basis for Mattel to obtain the broad financial information asked for in this request.

Mattel has no legitimate need to discover the entirety of MGA and Mr. Larian's financial records over the last nine years. Nor is there any reason to unduly burden non-parties with these expansive requests for such records when those materials either are irrelevant or are properly the subject of party discovery. Accordingly, the Discovery Master should bar Mattel from seeking information pursuant to these requests from Wells Fargo.

**Mattel's Response:**

As the party moving to quash Mattel's subpoenas, MGA bears the initial burden of persuasion to demonstrate that Mattel's document requests are improper.  See <u>Green v. Baca</u>, 226 F.R.D. 624, 653 (C.D. Cal. 2005).  The burden on the party moving to quash a subpoena is a "heavy one."  <u>Heat and Control, Inc. v. Hester Industries, Inc.</u>, 785 F.2d 1017, 1024-25 (Fed. Cir. 1986) (noting that "the factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.").  Here, MGA has failed to meet its burden.

## I.   THE DOCUMENTS SOUGHT ARE RELEVANT TO THE CLAIMS AND DEFENSES AT ISSUE

MGA argues that the documents sought from Wells Fargo are not relevant to the claims and defenses at issue.  In so arguing, MGA mischaracterizes Mattel's stated need for the documents, artificially limiting it to two issues: (1) Mattel's commercial bribery claim; and (2) to refute Larian's statement he did not receive a bonus in 2003.  As shown in Mattel's Opposition and below, the documents sought from Wells Fargo are relevant to many more issues in dispute, including Mattel's disgorgement and punitive damages claims, as well as to ascertain MGA and Larian's net worth, and the value of MGA's intellectual property and good will.

### A.   The Documents Are Relevant to Disgorgement and Constructive Trust Remedies, as Well as Punitive Damages

One remedy Mattel seeks is disgorgement of all amounts wrongfully obtained.  Mattel may also be entitled to damages for lost profits pursuant to its disgorgement theory of damages.  The disgorgement remedy also provides for the

07209/2339253.2

-32-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    imposition of constructive trusts to recover the ill-gotten gains of MGA and Isaac

2    Larian that have been transferred to other parties.[1]  For purposes of establishing

3    disgorgement, Mattel must take into account money transferred from MGA and

4    Isaac Larian, regardless of the manner in which it was transferred.  Mattel is entitled

5    to discovery that shows all assets siphoned from MGA or Isaac Larian for which

6    there was no compensation during the period of the alleged wrongful conduct.

7            It is undisputed that disgorgement is a remedy for Mattel's claims

8    against MGA and Larian, including copyright infringement and trade secret

9    misappropriation.  § 17 U.S.C. 504(b) and E. Bassett Co. v. Revlon, Inc., 435 F.2d

10   656 (2d Cir. 1970) (copyright infringement); 4 Callmann, Unfair Competition and

11   Monopolies § 14.45 (4th ed.) and Clark v. Bunker, 453 F.2d 1006, 1011 (9th Cir.

12   1972) (trades secret misappropriation).  The scope of the disgorgement remedy is set

13   forth in two recent California Supreme Court decisions.  See Kraus v. Trinity

14   Management Servs., Inc., 23 Cal. 4th 116 (2000); Korea Supply Co. v. Lockheed

15   Martin Corp., 29 Cal. 4th 1134 (2003).  The court indicated that:

16           "disgorgement" is a broader remedy than restitution. . . .
             [A]n order for disgorgement "may compel a defendant to
17           surrender *all* money obtained through an unfair business
             practice even though not all is to be restored to the persons
18           from whom it was obtained or those claiming under those
             persons.  It has also been used to refer to surrender of *all*
19           profits earned as a result of an unfair business practice
             regardless of whether those profits represent money taken
20           directly from persons who were victims of the unfair
             practice."

21
22   Korea Supply, 29 Cal. 4th at 1145 (quoting Kraus, 23 Cal. 4th at 127) (emphasis

23   added).  Moreover, an important part of disgorgement is the imposition of a

24   constructive trust to recover ill-gotten gains that have been transferred to others by

25   the defendant.  A constructive trust is intended to prevent unjust enrichment, with

26   _____

27   [1]   Exh. B [Second Amended Answer and Counterclaims] to the Declaration of
     Jon D. Corey ("Corey Dec.").  All exhibits are attached to the Corey Dec. unless

28           (footnote continued)

07209/2339253.2

1    equity compelling the restoration to another of property to which the holder thereof
2    is not justly entitled.  <u>Taylor v. Polackwich</u>, 145 Cal. App. 3d 1014, 1022 (1983);
3    <u>Cal. Civ. Code</u> §§ 2223, 2224.  <u>See also</u> <u>Weiss v. Marchus</u>, 51 Cal. App. 3d 590,
4    600 (1975) (constructive trust may be imposed in case of fraud, mishandling, or
5    almost any case of wrongful acquisition or detention of property to which another is
6    entitled).  When personal property is in dispute, the legislature has allowed plaintiffs
7    to invoke the remedy of constructive trust.  <u>Cal Civ. Code</u> §§ 2223, 2224.  To create
8    a constructive or involuntary trust only three conditions are necessary: existence of a
9    res, <u>i.e.</u> property or some interest in property, plaintiff's right to that res and
10   defendant's gain of the res by fraud, accident, mistake, undue influence, violation of
11   the trust or other wrongful act. <u>Kraus v. Willow Park Public Golf Course</u>, 140 Cal.
12   Rptr. 744, 73 Cal. App. 3d 354 (1977); <u>see</u> <u>Cramer v. Biddison</u>, 65 Cal. Rptr. 624,
13   257 Cal. App. 2d 720 (1968).  <u>See</u> <u>Burlesci v. Petersen</u>, 68 Cal. App. 4th 1062, 1067
14   (1998) (constructive trust); <u>Farmers Ins. Exchange v. Zerin</u>, 53 Cal. App. 4th 445,
15   454-55 (1997) (equitable lien is proper if unjust enrichment and detrimental reliance
16   are implicated).

17            Mattel needs the documents discussed above to prove the amount the
18   defendants must disgorge.  <u>Housing Rights Center v. Sterling</u>, 2005 WL 3320739,
19   *3 (C.D. Cal. 2005) (finding financial information relevant to disgorgement of
20   profits claim).  Money that properly belonged to Mattel was transferred from MGA
21   or Isaac Larian to an entity controlled by them.  Mattel should be able to understand
22   how that money was used because MGA and Isaac Larian have no right to whatever
23   additional gains realized with Mattel's money.  <u>See</u> <u>id</u>.  Rather, the right to those
24   additional gains vests solely in Mattel.  Thus far, MGA and Isaac Larian have
25   produced no documents from which Mattel may ascertain the amount of any
26
27   _____
28   otherwise stated.

1  transfer, much less any gain realized.  Nor have they agreed to produce any such

2  documents.  Thus, MGA's banking records from Wells Fargo are directly relevant.

3        Furthermore, as part of its punitive damages remedy, Mattel is entitled

4  to documents reflecting MGA and Larian's net worth.  <u>Southern California Housing</u>

5  <u>Rights Center v. Krug</u>, 2006 WL 4122148, *4 (C.D. Cal. 2006) ("When a punitive

6  damages claim has been asserted, a majority of federal courts permit pretrial

7  discovery of financial information about defendants without requiring the plaintiff to

8  establish a prima facie case on the issue of punitive damages.").  In addition,

9  whether or not assets or money were transferred during the period of wrongdoing is

10  relevant to punitive damages, and Mattel is therefore entitled to documents

11  reflecting any such transfer.

12      **B.**    **<u>Mattel is Entitled to Documents Showing or Related to MGA's and</u>**

13          **<u>Larian's Net Worth</u>**

14        Documents relevant to MGA and Isaac Larian's net worth, including

15  the value of MGA's good will and intellectual property, are necessary for Mattel's

16  experts to determine the damages that accrued to Mattel as a result of MGA's

17  infringement of Mattel's copyrights, and for punitive damages and to defend against

18  MGA's as yet unspecified damages.[2]  Both the Discovery Master and Judge Larson

19  _____

20      [2]  Another reason that the financial and loan documents sought by the third-party

21  subpoenas is relevant is because it bears on MGA and Larian's credibility.  <u>Cable &</u>

22  <u>Computer Technology, Inc. v. Lockheed Sanders, Inc.</u>, 175 F.R.D. 646, 650 (C.D.

Cal. 1997) (information is relevant and discoverable if it relates to "the credibility of

23  any witness").  For example, Mattel's Request Nos. 1-5 and 9-10 in its document

subpoena to Wachovia seek information regarding the quality of the financial

24  information provided by Isaac Larian to these financial institutions.  As a lending

25  institution considering whether to lend substantial sums of money to MGA,

Wachovia no doubt scrutinized the financial and related information provided by

26  MGA.  To the extent Wachovia questioned or had concerns about the information

27  provided, these documents may bear on MGA's credibility.  Similarly, MGA's

auditors, Ernst & Young and Deloitte & Touche, had a duty to scrutinize the

28      (footnote continued)

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  have previously ruled that Mattel is entitled to evidence related to MGA's net worth:

2  "That net worth is generally the subject of expert testimony at trial -- a proposition

3  disputed by neither Mattel nor the Court -- does not render it an improper subject for

4  a Rule 30(b)(6).  Therefore, the Discovery Master's ruling on this issue is not

5  contrary to law."[3]  See, e.g., Hilao v. Estate of Marcos, 103 F.3d 767, 781-82 & n. 7

6  (9th Cir. 1996) (approved a jury's discretion to consider financial condition as one

7  relevant factor in awarding punitive damages); Southern California Housing Rights

8  Center v. Krug, 2006 WL 4122148, *4 (C.D. Cal. 2006) ("When a punitive damages

9  claim has been asserted, a majority of federal courts permit pretrial discovery of

10  financial information about defendants without requiring the plaintiff to establish a

11  prima facie case on the issue of punitive damages").  Here, MGA has freed MGA to

12  go to third parties because MGA's designee on MGA's net worth testified that MGA

13  did not calculate it, or MGA's good will, or the value of its intellectual property,

14  including Bratz.[4]

15      **C.**    **The Documents Sought Are Relevant to Mattel's Defenses To**

16              **MGA's Counter Claims**

17          Mattel also seeks documents relevant to MGA's claims (a point all but

18  ignored in the Motion to Quash).  MGA accused Mattel of false designation of

19  origin, unfair competition, dilution, and unjust enrichment, and MGA seeks "general

20  and actual damages ... excepted to reach or exceed $10 million," "disgorgement of

21  all profits derived by Mattel," and "punitive and exemplary damages."[5]  Mattel is

22  entitled to the requested documents so that it can effectively cross-exam MGA's

23  _____

24  information provided to them by MGA or Mr. Larian.  If these financial institutions

25  questioned the sufficiency or accuracy of any such information in the course of their

26  assessment, then this would be relevant to MGA or Mr. Larian's credibility.

    [3]   Exh. AA at 5 [July 2, 2007 Order].

27      [4]   Exh. O [Tonnu Tr. 322:19-325:6; 326:17-327:6; 333:3-7; 334:12-15].

28      [5]   Exh. A [MGA Complaint, Prayer for Relief].

07209/2339253.2

-36-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  witnesses about the accuracy of MGA's damages claims against Mattel.  Mattel is

2  entitled to have adequate information available to it to permit Mattel to defend

3  against and disprove MGA's claims and damages theories.  For example, to the

4  extent that MGA asserts that it measures damages by its lost profits, Mattel is

5  entitled to know what those profits are and what intervening factors could have

6  limited MGA profits (e.g., mismanagement, insufficient capital, inaccurate or

7  untimely forecasting and manufacturing, election to minimize advertising).

8      **D.**    **The Documents Sought Are Relevant to Mattel's Commercial**

9              **Bribery Claims and Evidence of Bias**

10         As MGA recognizes, the banking and accounting records sought by

11  Mattel are also relevant because they bear directly on Mattel's commercial bribery

12  claim.  Contrary to MGA's assertion, their relevance goes beyond simply payments

13  to Carter Bryant.  These documents may also lead to evidence of bias and influence

14  on potential witnesses.  Such concerns are not theoretical, as evidence demonstrates

15  that MGA was paying Mr. Bryant while it knew he was a Mattel employee.  Mattel

16  is entitled to seek documents that would uncover additional information about MGA

17  and Larian's attempts to bribe Mr. Bryant *or other Mattel employees or vendors*.  As

18  discussed above, contrary to MGA and Larian's argument that the bribery issue is

19  limited to Mr. Bryant, Mattel is entitled to seek information related to their bribery

20  or attempted bribery of other personnel.  At her deposition on December 28, 2007,

21  Veronica Marlow, a third-party witness who long worked directly with Bryant and

22  MGA, testified that she knew of at least three Mattel employees who *for years*

23  worked on Bratz *while they were employed by Mattel*.[6]  This was a shocking

24  revelation.  Neither MGA nor Bryant had disclosed this information, despite

25  repeated Court Orders and despite the fact that at least one of these individuals was

26

27

28

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  a co-worker of Bryant's at Mattel.  To the contrary, both Bryant and MGA gave flat

2  denials under oath that there was any other Mattel employees knowingly involved.[7]

3        Furthermore, payments by or on behalf of MGA or any other defendant

4  to any Mattel employee or witness goes to bias.  Evidence of such bias is relevant

5  and discoverable, especially when it relates to key witnesses.  See United States v.

6  Abel, 469 U.S. 45, 50-51 (1984); see also Wright & Miller, Federal Practice &

7  Procedure: Federal Rules of Evidence § 6095 (bias is a "particularly favored basis

8  for attacking credibility," and "circumstantial evidence of bias" may include

9  evidence of the "payment of bribes or fees").

10        The banking and financial records Mattel requested from the third-

11  parties, especially the financial institutions, are relevant to tracking their payments

12  to third-parties and witnesses.  Wells Fargo was and is MGA's bank.  As such, it is

13  an invaluable source of information regarding payments made by MGA, and the

14  documents sought in Request Nos. 1-5 -- documents relating to MGA since 1999,

15  including annual statements, monthly statements, transaction histories, cancelled

16  checks, signature cards, and documents showing which accounts MGA maintains

17  with Wells Fargo -- are highly relevant.

18  **II.**    **MGA HAS NOT SHOWN THAT THE DOCUMENTS HAVE BEEN**

19       **PRODUCED OR ARE OTHERWISE DUPLICATIVE**

20      **A.**    **That Documents "May" Be Available From Another Source Is Not**

21         **Sufficient**

22        MGA and Larian argue that the subpoenas should be quashed because

23  Mattel requested similar documents from the parties, and MGA and Larian are in

25    [6]  Exh. S at 288:8-289:21; 306:8-25; 307:8-308:1; 363:15-21[Deposition

26  Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007].

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1 | possession of some responsive documents.  These arguments are insufficient

2 | grounds to quash the subpoenas.

3 |        Even if the document requests served on the third parties were identical

4 | to the requests served on MGA and Larian, there has been no showing--nor is one

5 | conceivable--that the MGA and Larian have all of the same documents as are in the

6 | possession, custody, or control of the third parties.  (For example, there is no reason

7 | to believe that MGA would have all of the banking records maintained by Wells

8 | Fargo.  Banks are notoriously thorough in their record keeping, and would have a

9 | much more detailed paper trail concerning activity in MGA's account than would

10 | MGA.)  Without assurance that MGA and Larian have all of the same documents as

11 | Wells Fargo, this objection is meritless.  In State Farm Mutual Auto Ins. Co. v.

12 | Accurate Medical, P.C., the district court rejected a similar argument.  2007 WL

13 | 2993840 (E.D.N.Y. Oct. 10, 2007) (denying motion to quash).  There, the plaintiff

14 | sought documents regarding third-party financial relationships with the defendant.

15 | In response to the defendant's argument that such documents were available from

16 | itself, the court found that it critical that "it is unlikely that the moving defendants

17 | would, in fact, possess all the documents sought by plaintiff in the subpoenas."  Id.

18 | at *1.

19 |       Because documents may be available from other sources is not grounds

20 | to refuse production.[8]  "[A] person may not avoid a subpoena by saying that the

21 | evidence sought from him is obtainable from another."  Covey Oil Co. v.

22 | Continental Oil Co., 340 F.2d 993, 998 (10th Cir. 1965) (overruled on other

23 | grounds); State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL

24 |

25 | _____

26 |    [7]  Exh. W at 286:25-287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")];

27 | Exh. O at 301:2-17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.)]; Exh. X at 64-70 [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

   [8]  See Motion at 11:5-15.

28 |

07209/2339253.2

-39-

1   2993840, at *1 (E.D.N.Y. 2007) (same); In re Bergeson, 112 F.R.D. 692, 695 (D.

2   Mont. 1986) (conclusory assertions that documents sought are available from others

3   more economically "does not constitute a showing of unreasonableness or

4   oppressiveness."); see also Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,

5   6 F. Supp. 2d 859, 861-862 (E.D. Mo. 1998) (third party subpoena proper where

6   information sought pertained to a central issue in the underlying claim, it was not

7   burdensome in light of plaintiff's diligent efforts to obtain the information from

8   defendant, and the nonparty had signed protective order prohibiting disclosed

9   information from being seen by plaintiffs counsel or nonparty's competitors).

10          As held by the State Farm court, "nothing in the Federal Rules of Civil

11   Procedure requires a litigant to rely solely on discovery obtained from an adversary

12   instead of utilizing subpoenas." Id. at *1.

13          Finally, as discussed below, even if MGA and Larian had these

14   documents, they have not produced them.

15   **B.    Neither Larian Nor MGA Have Produced The Majority of the**

16          **Documents Sought**

17          MGA argues that the subpoenas should be quashed because the

18   information sought is available from the parties.  However, MGA neglects to

19   mention that Larian has failed to produce responsive documents--including

20   documents he had previously promised to produce--until just last week pursuant to

21   another Court order,[9] and MGA has not produced most of the documents sought by

22   the subpoenas

23          Although MGA claims to have produced many responsive documents,

24   it stops short of claiming that it has produced all of the documents sought by the

25   subpoenas.  Moreover, the list of documents MGA claims to have produced is

---

[9]   Corey Dec., ¶ 12.

1   notable for its lack of specificity.  Indeed, MGA's list confirms that MGA has not

2   produced most of the documents requested by the third-party subpoenas.

3   Conspicuously missing from the list--and MGA's production--are:[10]

4             • Documents related to a determination of Isaac Larian's net worth.

5             • Documents stating the value of MGA's intellectual property and good

6   will.  (other than Little Tykes intellectual property).

7             • MGA and Larian's tax records.

8             • Wells Fargo banking records for MGA.

9             • Documents related to payments to third-parties by MGA, Larian, or

10  the Larian trusts (such as to Bryant and other Mattel employees and vendors)

11            • Consumer and marketing research regarding Bratz and several MGA

12  products underlying MGA's claims against Mattel.

13            • Documents from the Larian v. Larian litigation.

14            • Documents related to the Larian trusts, including any documents

15  showing Isaac Larian's interest in, payments received, or transfers to those trusts.

16            • Documents regarding the 1999-2000 and 2006 loans MGA received

17  from Wachovia, including what documents MGA and Larian gave to Wachovia to

18  justify the loans.

19            Furthermore, even as to those documents MGA claims to have

20  produced, many of the descriptions are vague, inaccurate, or misleading:

21            • It is unclear what MGA means by its claim to have produced "annual

22  reports."  MGA has produced audited financial statements which Ms. Tonnu

23  testified could not be used to calculate net worth.

24            • The reference to "various MGA financial reports" is hopelessly vague

25  and tells the Court and Mattel nothing about what MGA claims was actually

26  produced.

27  _____

28  [10]  Id., ¶ 14.

1    • MGA's claim to have produced documents related to "royalty
2 payments" to Carter Bryant does not encompass all payments to Mr. Bryant, or any
3 to other Mattel employees and vendors.

4    • The "Documents showing MGA's sales, returns and costs of good
5 sold" "promotional, advertising and media expenditures" only relate to Bratz.[11]
6 They do not relate to MGA's or Larian's net worth directly, or to the value of its
7 good will or intellectual property.

8    • The "Documents showing MGA's amortization and depreciation" is
9 only for unspecified "certain capital assets and expenditures," and they are no more
10 duplicative of Mattel's requests than the Bratz specific cost information.

11    • The "monthly general ledger" documents do not appear to be general
12 ledger entries at all, but in fact are much more generic trial balances.  Moreover,
13 there information produced appears to relate only to some account numbers,
14 omitting many others.  Further, it appears that no information has been produced for
15 the years 2001 and 2004.[12]

16    In short, MGA and Larian cannot refuse to produce for months, then
17 object when Mattel seeks documents from others.  Now, with weeks left in Phase
18 One discovery, Mattel does not have the luxury of waiting for MGA and Larian to
19 get around to producing.  Mattel needs documents to enforce its claims and to
20 defend against MGA's, and any further delay will prejudice Mattel's ability to
21 adequately prepare for trial.

22 C.    **MGA and Larian's Illusory Promises to Produce Do Not Render**
23       **the Subpoenas Duplicative**

24    Conceding that neither it nor Larian have in fact produced all
25 documents that are being sought from the third parties, MGA argues that the

26 ———————————————

27 [11] Id., ¶ 15.

28

07209/2339253.2

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  subpoenas are unreasonably duplicative because they ***might*** produce additional

2  documents in the future.[13]  Notably absent from their hollow promise is any specific

3  date by when the documents will be produced, or even a list of the specific

4  documents to be produced or the specific categories of document requests to which

5  they respond.  This "wait and see" and "trust me" approach, unsurprisingly, finds no

6  support in the case law and is an inadequate basis to grant the Motion to Quash.  It

7  also is premised on a poor track record.  Neither MGA or Larian have lived up to

8  their representations about producing relevant documents in the past.  Indeed,

9  despite repeated promises to produce responsive documents, Larian produced his

10  first page just last week pursuant to another Court order.  Thus, it is not

11  unreasonable to have requested these highly relevant documents from the third-

12  parties.

13  **D.**  **Mattel is Entitled to the Requested Documents Because of**

14  **Legitimate Concerns of Spoliation and Document Tampering**

15  Mattel cannot rely on MGA and Larian to actually produce all of the

16  responsive documents in their possession, custody and control, or that they will

17  produce it in their original condition.  As discussed above, Veronica Marlow, a

18  third-party witness who long worked directly with Bryant and MGA, testified that

19  she knew of at least three Mattel employees who *for years* worked on Bratz *while*

20  *they were employed by Mattel*.[14]  Neither MGA nor Bryant had disclosed this

21  information, despite repeated Court Orders and despite the fact that at least one of

22  these individuals was a co-worker of Bryant's at Mattel.  To the contrary, both

23  Bryant and MGA gave flat denials under oath that there was any other Mattel

24

25  _____

26  [12]  Id., ¶ 16.

    [13]  Motion at 5:1-7.

27  [14]  Exh. S at 288:8-289:21; 306:8-25; 307:8-308:1; 363:15-21[Deposition

28  Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007].

-43-

1   employees knowingly involved.[15]  Yet, by defendants' reasoning here, the Court and

2   Mattel should have been denied Ms. Marlow's plainly relevant evidence because it

3   purportedly duplicated discovery requested of defendants.  In fact, defendants made

4   that very argument to Judge Larson is resisting producing Ms. Marlow for

5   deposition in the first place, to no avail.

6        In the past, MGA has produced requested documents only *after* a third-

7   party's production exposed MGA's previous failures to produce.  What documents

8   MGA has produced has been the result of a protracted discovery process in which

9   MGA has demonstrated a pattern of failing to produce relevant, critical, and

10  incriminating, documents until faced with compulsion by the Court or after a third

11  party has already produced them.  For example, in September 2006, a third-party

12  witness, Steven Linker, produced Bratz design drawings and Bratz product

13  development documents.[16]  Linker's production included a multitude of Bratz

14  materials he had received from or exchanged with MGA and Bryant before Bryant

15  left Mattel.[17]  Neither MGA nor Bryant had produced many of them, however.

16  Notably, before Linker's testimony, MGA had produced an email relating to Bratz

17  development that Linker's design partner, Liz Hogan, had sent to MGA on

18  October 23, 2000 -- a date which was conveniently *after* Bryant left Mattel.  MGA,

19  however, had not produced the earlier emails—those pre-dating Bryant's last day of

20  employment at Mattel—that Hogan had exchanged with MGA on that very same

21  subject.  Mattel obtained those only after Linker produced them pursuant to

22  subpoena in September 2006.[18]  Thus, it has often been the case in this litigation that

23  

24      [15]  Exh. W at 286:25-287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")];

25  Exh. O at 301:2-17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.)]; Exh. X at 64-70

26  [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

      [16]  Corey Dec., ¶ 20; Exhs. F, G, and H.

27      [17]  Corey Dec., ¶ 21; Exh. H.

      [18]  Corey Dec., ¶ 21; Exhs. G and I.

28  

-44-

1   MGA has produced relevant and responsive documents only after a third-party has

2   already done so.

3              Furthermore, Mattel must guard against the possibility of further

4   spoliation of evidence and/or document tampering.  Unfortunately, these concerns

5   are not merely speculative or theoretical.  It has already occurred.  For example,

6   former Mattel and present MGA employee Mr. Bryant was ordered--after initial

7   delay and refusal--to produce a computer for inspection in this matter.  Mattel

8   learned that a software program called "Evidence Eliminator" had been installed and

9   run on that hard drive.[19]  In addition, there has been credible evidence adduced in

10  this action that MGA has tampered with documents by altering their creation dates,

11  as indicated by fax headers (which were deleted).  The Court responded to the

12  concern of spoliation, and specifically the alteration of the creation date of the

13  documents described above, in an August 9, 2006 order.[20]  Although it did not find

14  the evidence rose to the level of requiring the appointment of a Court appointed

15  expert witness at the time.  It held, "There are serious questions concerning the

16  handling of these critical documents" that caused the Court "much concern about

17  whether the truth seeking functions of the adversarial system have been

18  fundamentally compromised in this case."  Id. at 11:10-13.  The Court also stressed

19  its "concern" over MGA's "handling of documents in its possession."[21]  Clearly,

20  therefore, Mattel is within its rights to obtain documents from third-parties even if

21  also in the possession of MGA and Larian.

22             Given the unavailability of this information from both MGA, Larian,

23  and other sources, MGA's efforts to thwart Mattel's discovery requests seeking this

24

25  _____

26  [19]   Exh. U, at 285:15-287:6 [12/28/07 Deposition Transcript of Richard Irmen].

27  [20]   Exh. N, at 9:4-18:14 [Court's August 9, 2006 Order].

    [21]   Id. at 17:23-26.
28

1  information thus far, and the very real concern over spoliation and tampering, Mattel

2  should not be denied this discovery from third parties.[22]

3  **III.    MGA HAS NOT SHOWN UNDUE BURDEN**

4          MGA and Larian fail to show that the requests are so burdensome to

5  justify quashing the subpoenas.  A party claiming that production of requested

6  documents is unduly burdensome bears the burden of proving up their objection.

7  Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984)

8  (reversing district court's decision quashing subpoena).  The party cannot rest on

9  conclusory assertions.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966)

10  (reversing the quashing of a subpoena because of lack of specific evidence of

11  burden).  "The party must provide specific and compelling proof that the burden is

12  undue."  JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25

13  (Fed. Cl. Ct. 2007) (denying motion to quash).

14          Here, MGA and Isaac Larian offer no evidence--such as a declaration

15  or testimony--regarding the time, cost, or burden involved in responding to Mattel's

16  subpoenas.  Nor could they.  "The burden of showing that a subpoena is

17  unreasonable and oppressive *is upon the party to whom it is directed*."  Goodman v.

18  U.S., 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added).

19

20

21

[22]    MGA has created a chart that purportedly shows overlap between Mattel's
22  document requests to the financial institutions and Mattel's documents requests to
23  MGA.  See Exh. 28 to the Park Dec.  MGA cites to three examples of the overlap
between Mattel's document requests and the subpoenas to the third-parties—the
24  value of MGA's net worth, goodwill and intellectual property.  See Motion at 17:6-
25  10.  As detailed above, the listing of documents that MGA sets forth in its Motion
do not contain documents showing the value of MGA's net worth, goodwill or
26  intellectual property, and Lisa Tonnu testified as to the unavailability of these
27  documents from MGA.  Therefore, MGA's argument in this regard contradicts its
own designee.
28

-46-

1   Wells Fargo also has not provided any declaration establishing that the

2   burden placed on it by the subpoena is unduly burdensome.  Moreover, in its letter

3   stating, among other objections, its conclusory assertion that the subpoena imposes

4   an "unfair financial burden" it also stated that it was "willing to meet and confer

5   with [Mattel] about narrowing of the scope and breadth of the subpoena and the

6   timing of production."[23]  Since then, Mattel has discussed the subpoena with Albert

7   Boro, counsel for Wells Fargo, who stated that Wells Fargo was ready to start

8   pulling the records at any time, but have not done so because MGA filed the Motion

9   to Quash.[24]

10   In addition, in a further effort to reduce any inconvenience to the third-

11   parties, Mattel will reimburse the third parties for the costs incurred in copying the

12   responsive documents.  However, even if Mattel was unwilling to pay for the third

13   parties' copying costs (which is not an issue here since Mattel will reimburse them),

14   and even if the third parties did not already have separated case files, a claim that

15   compliance with Mattel's requests "would necessitate the examination of large

16   quantities of documents, requiring a great deal of time and expense . . . is not alone a

17   sufficient reason for refusing discovery which is otherwise appropriate. . . . "

18   American Optical Co., 39 F.R.D. 580, 586-587 (N.D. Cal. 1966) (denying motion to

19   quash where documents sought covered a twelve year period).  And, in an effort to

20   further reduce burden upon the third-parties, Mattel has offered to have its own

21   paralegal and counsel inspect documents gathered thus far by the third-party

22   financial institutions with an agreement that the inspection will not result in

---

23   Exh. 19 to the Park Dec.
24   Declaration of B. Dylan Proctor, ¶ 2.

-47-

1    waiver.[25]  Given these concessions and the applicable case law, the raw assertions of

2    undue burden are meritless.

3    **IV.    THE SUBPOENAS ARE NOT OVERBROAD**

4                    MGA and Larian's assertion that the Mattel's requests are abusively

5    drawn or unduly overbroad is also meritless given that five of Mattel's document

6    requests are directed to financial institutions.  Financial institutions generate and

7    retain precisely types of documents that are responsive to Mattel's requests.

8    Therefore, MGA's objections of overbreadth and harassment are baseless.

9                    Defendants mistakenly rely on Ocean Atlantic Woodland Corp. v. DRH

10   Cambridge Homes, Inc., 292 F. Supp. 2d 923 (N.D. Ill. 2003), to argue that broad

11   financial discovery on nonparties is necessarily unduly burdensome.  However, the

12   Ocean Atlantic Court did not hold that such discovery is always unwarranted; rather,

13   it must be tied to the claims and defenses at issue.  There, the plaintiff had acquired

14   a copyright in two real estate development plans for a parcel of land, but was unable

15   to develop the parcel because it failed to close on the sale of the land within the

16   required time.  The plaintiff sued the developer who later acquired the rights to

17   develop the land and who did it using the copyrighted plans.  The plaintiff served

18   document requests seeking "all aspects of [defendant's] financial activities,

19   including costs sales, and profits on all its developments and all of its home sales

20   throughout the country since 1997." Id. at 925.  The court found that these requests

21   were overbroad, because on the facts of that case, they were not relevant to the

22   claims and defenses at issue.  Specifically, the court found that because the measure

23   of damages was limited to either (1) the amount plaintiff paid to acquire the

24   development plans at issue, or (2) the value of use or the saved acquisition costs to

25   defendant who used the plans, broad financial discovery was not warranted.  Id. at

26   ————————————

27   [25]   Corey Dec., ¶ 7; Exh. C [Letter from Jon Corey to John Baran dated

28   (footnote continued)

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1   928.  In contrast, here, unlike <u>Ocean Atlantic</u>, the measure of damages in not so

2   limited, and includes disgorgement and punitive damages.

3   Thus, broad discovery into MGA and Larian's finances, including net

4   worth and asset transfers, is within the bounds of discovery as the Discovery Master

5   and Judge Larson have held.  Indeed, in <u>Southern California Housing Rights</u>

6   <u>Center v. Krug</u>, 2006 WL 4122148 (C.D. Cal.), a case relied on by MGA, the court

7   ordered that broad financial discovery concerning defendant's net worth was

8   relevant to punitive damages, and ordered defendant to produce documents relating

9   to its net worth and current assets and/or liabilities, including identification and

10  value of all properties and other assets owned in whole or in part, profit and loss

11  statements from 2004 to the present, as well as "financial statements and balance

12  sheets that relate to assets, inventories, liabilities, gross and net income, and the

13  amount of any undistributed business profits."  <u>Id</u>. at *1-2.

14

15  **2.     MGA's Statement of Position Regarding Requests 1-7 and 12**

16  **to Wachovia**

17  Mattel has subpoenaed five different entities that perform financial services

18  for MGA or Mr. Larian seeking virtually every scrap of paper and byte of data

19  pertaining to MGA and Mr. Larian's finances over the last nine years.  The instant

20  requests are examples of these overbroad requests.  There is no justification for

21  issuing such expansive subpoenas, with requests such as these which cover largely

22  irrelevant material, particularly since whatever small amount of relevant information

23  may be covered by the subpoenas has already been requested from the parties.

24  When a party subpoenas an adverse party's financial information, courts are

25  especially vigilant in limiting the subpoena's scope such that irrelevant financial

26

27

28  December 20, 2007].

07209/2339253.2

-49-

1   information is not produced.  See *S. Cal. Hous Rights Ctr. v. Krug*, Case No. CV 06-

2   1420 SJO (JCx), 2006 U.S. Dist. LEXIS 65330 (C.D. Cal. Sept. 5, 2006) (denying

3   request for production of tax return because plaintiff could not show a compelling

4   need for the return where less intrusive means could be used to establish defendant's

5   net worth); *In re Ashworth, Inc. Sec. Litig.*, Civil No. 99cv0121 L (JAH), 2002 U.S.

6   Dist. LEXIS 27991, at *20 (S.D. Cal. May 10, 2002).  In *Ashworth*, for example, the

7   district court quashed subpoenas issued to the defendant's financial analysts and

8   investment companies as "overwhelmingly broad in category and content" because

9   "[a]s they are phrased, the requests appear, in this Court's view, to seek all

10  documents in the third party financial analysts' possession that refer to or mention

11  Ashworth in any shape or form."  2002 U.S. Dist. LEXIS 27991, at *20.

12          Mattel's subpoena to Wachovia is unrestrained in scope.  For example,

13  Mattel's subpoena requests all documents relating to the financial services that

14  Wachovia has provided MGA over the last nine years.  (Park Decl., Ex. 9

15  (Wachovia Subpoena) at Request 1 ("All documents relating to any loan

16  agreement ... that YOU have entered into with MGA since January 1, 1999..."); *see*

17  *also id.* at Requests 2-7 (seeking a broad array of information that is not properly

18  limited in time, scope, or both).)  Mattel has also requested that the Wachovia

19  produce documents identifying other lenders, auditors or accountants of MGA or

20  Mr. Larian, presumably because Mattel wants to serve them with similar subpoenas.

21  (Park Decl., Ex. 9 (Wachovia Subpoena) at Request 12.).)

22          Mattel argues that it needs this financial information because the information

23  is relevant to damages, Mattel's commercial bribery allegations, and to counter a

24  statement Mr. Larian made in a prior litigation that, as of 2007, he could not recall

25  whether he received a bonus in 2003 because MGA's owners invested the company's

26  profits back into the company.  Such inchoate assertions of relevance are

27  insufficient to justify the type of unfettered access to MGA and Mr. Larian's

28

07209/2339253.2

-50-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  financial information that Mattel seeks.  See, e.g., Ocean Atl. Woodland Corp. v.

2  DRH Cambridge Homes, Inc., 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003).

3  In Ocean Atl., the copyright owner of real estate development plans sued a

4  developer for infringement with respect to one of its development sites.  The

5  plaintiffs "interrogatories and production requests [sought] all of the defendants'

6  financial records relating to their entire business and professional activities, on all

7  construction projects throughout the country, beginning from 1997 through present

8  date."  Id. at 926.  Posing the question "can anything remotely relevant to the claims

9  and defenses-or more pointedly to damages-arising from use of the Development

10  Plans at the Liberty Grove development site justify this massive body of discovery,"

11  the court answered, *"We hardly think so."*  Id. (emphasis added).  "This court

12  perceives an improper motive and purpose to this broad discovery.  We cannot

13  conceive of any relevance to the claims or defenses asserted in this copyright

14  infringement case, or of any legitimate purpose of this massive discovery demand.

15  The production of virtually the entirety of defendants' business books and records

16  relating to all of its projects could not lead to any admissible evidence."  Id. at 927.

17  The Discovery Master should reach the same conclusion in this case.  Mattel's

18  alleged damages in this case are tied to the particular products at issue, not MGA or

19  Mr. Larian's entire financial history.  Documents such as all of MGA and

20  Mr. Larian's tax returns, account statements and expense records, or the audit files

21  and loan documents for MGA, are neither relevant to damages in this case nor

22  reasonably calculated to lead to the discovery of admissible evidence.  See Fed. R.

23  Civ. P. 26(b)(1).  Indeed, the Discovery Master in this case already rejected an

24  attempt by Mattel to obtain Carter Bryant's tax returns.  (Park Decl., Ex. 27 (1/25/07

25  Order) at 14-15.)

26  Similarly, Mattel's assertion that the requested financial information is

27  relevant to its commercial bribery allegations is specious.  Mattel's bribery

28  allegations consist of nothing more than an assertion that MGA financed Bryant to

07209/2339253.2

-51-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1   develop Bratz while he was still employed at Mattel.  Mattel's Second Am.

2   Answer & Counterclaim at 37 (¶ 33), 59 (¶ 93(d)), 74 (¶ 165).  Thus, the only

3   financial documents that could possibly be relevant to this allegation are documents

4   showing any payments by MGA to Bryant during the time he was a Mattel

5   employee.

6        Mattel's claim that it needs all of Mr. Larian's financial records to counter his

7   statement that he did not think he received a bonus in 2003 because MGA's owners

8   invested the company's profits back into MGA is nothing more than an absurd

9   fishing expedition.  See Aliotti v. Senora, 217 F.R.D. 496, 498 (N.D. Cal. 2003)

10  (rejecting request for party-opponent's tax returns for impeachment purposes

11  because request was "the kind of 'fishing expedition' that would undermine the

12  public policy against unnecessary public disclosure of tax returns") (quotation marks

13  and citations omitted).  Setting aside the issue of relevance, Mattel does not need to

14  comb through nine years' worth of Mr. Larian's financial records to determine

15  whether he received a bonus from MGA in 2003.  That information is obtainable

16  from MGA.

17       In addition to seeking irrelevant information, these requests seek information

18  that is already covered by one or more of the more than 2,300 document requests

19  that Mattel has served on the MGA Defendants.  (Park Decl., Ex. 28 at 13-37 (chart

20  comparing Mattel's requests to Non-Parties with Mattel's document requests to

21  MGA Defendants))

22       In addition, numerous documents requested pursuant to these request are

23  duplicative of documents that the MGA Defendants have already produced.  See

24  Fed. R. Civ. P. 26(b)(2)(C) (limiting discovery if it "is unreasonably cumulative or

25  duplicative, or can be obtained from some other source that is more convenient, less

26  burdensome, or less expensive").  The financial documents produced by the MGA

27  Defendants to date include:

28

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

- Audited and unaudited quarterly and annual profit and loss statements;

- Audited and unaudited quarterly and annual statements;

- Annual reports;

- Various MGA financial reports;

- Various financial documents relating to Veronica Marlow;

- Documents showing royalty payments to Carter Bryant;

- Documents showing MGA's sales, returns and costs of good sold for each month, by SKU, since 2001;

- Documents showing MGA's promotional, advertising and media expenditures including MGA's internal allocation of those expenditures by brand and/or product;

- Documents showing MGA's amortization and depreciation of certain capital assets and expenditures;

- Documents showing MGA's monthly general ledger entries aggregated by account, including income and expense accounts, reserves and liabilities; and

- Documents sufficient to explicate MGA's various accounts as presently and historically maintained in MGA's books and records, as well as various nomenclature assigned to items, products, brands, sub-brands, and profit centers.

(Park Decl., ¶ 3.)

In view of the many requests for financial information that Mattel has served on the MGA Defendants, as well as the ample financial documents that the MGA Defendants have produced or will be producing, there is no basis for Mattel to obtain the broad financial information asked for in these requests.

Mattel has no legitimate need to discover the entirety of MGA and Mr. Larian's financial records over the last nine years. Nor is there any reason to unduly burden non-parties with this expansive request for such records when those

07209/2339253.2

-53-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  materials either are irrelevant or are properly the subject of party discovery.

2  Accordingly, the Discovery Master should bar Mattel from seeking information

3  pursuant to these requests from Wachovia.

4  **Mattel's Response:**

5          As the party moving to quash Mattel's subpoenas, MGA bears the

6  initial burden of persuasion to demonstrate that Mattel's document requests are

7  improper.  See Green v. Baca, 226 F.R.D. 624, 653 (C.D. Cal. 2005).  The burden

8  on the party moving to quash a subpoena is a "heavy one."  Heat and Control, Inc. v.

9  Hester Industries, Inc., 785 F.2d 1017, 1024-25 (Fed. Cir. 1986) (noting that "the

10  factors required to be balanced by the trial court in determining the propriety of a

11  subpoena are the relevance of the discovery sought, the requesting party's need, and

12  the potential hardship to the party subject to the subpoena.").  Here, MGA and

13  Larian have failed to meet their burden.

14  **I.      THE DOCUMENTS SOUGHT ARE RELEVANT TO THE CLAIMS**

15  **        AND DEFENSES AT ISSUE**

16          MGA argues that the documents sought from Wachovia are not

17  relevant to the claims and defenses at issue.  In so arguing, MGA mischaracterizes

18  Mattel's stated need for the documents, artificially limiting it to two issues:

19  (1) Mattel's commercial bribery claim; and (2) to refute Larian's statement he did not

20  receive a bonus in 2003.  As shown in Mattel's Opposition and below, the

21  documents sought from Wachovia are relevant to many more issues in dispute,

22  including Mattel's disgorgement and punitive damages claims, as well as to

23  ascertain MGA and Larian's net worth, and the value of MGA's intellectual property

24  and good will.  Notably, the Court has recognized the relevance of the information,

25  having granted leave to Mattel to take the deposition of Wachovia.[26]

26

27  _____

28  [26]   Exh. BB [December 7, 2008 Order].

07209/2339253.2

-54-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

A.   **Documents Related To The Timing of The Creation of Bratz Are Extremely Relevant**

Requests that do not explicitly refer to Bratz are nonetheless highly relevant to it.  A central dispute in this litigation is the timing of the creation of Bratz, including when MGA and Mr. Bryant began developing Bratz.[27]  It is undisputed that during certain time periods Mr. Bryant was an employee of Mattel, and that any designs or development work he did while a Mattel employee are the property of Mattel.  MGA and Larian contend that Bratz was developed at times when Mr. Bryant was not employed by Mattel.  Many of the requests seek documents that are probative of when Bratz was conceived and developed.  For example:

Request Nos. 1-5 of Mattel's subpoena to Wachovia seek documents related to Wachovia's loans to MGA.[28]  The first loan, which MGA applied for and Wachovia funded in 1999 or 2000,[29] was used by MGA for the development and implementation of Bratz.  In a deposition in another case, Isaac Larian testified that MGA used a line of credit with Congress Financial to fund the development of Bratz.[30]  Congress Financial then merged with Wachovia Capital Finance.[31]  The

---

[27]   Exh. N. at 11:1-2 [Court's August 9, 2006 Order Denying Appointment of Expert Witnesses ] ("At its heart, this case asks the question:  Who owns the rights to the Bratz dolls?"); Exh. Q, at 8:8-21 [Discovery Master's May 15, 2007 Order Granting Mattel's Motion to Compel].

[28]   See Exh 9, to the Park Dec. [Mattel's Subpoena to Wachovia dated October 25, 2007].

[29]   See Exh. D to the Corey Dec. [Letter from Jon Corey to Neal Potischman dated December 24, 2007].  Mattel is currently aware of two loans made by Wachovia to MGA.  Wachovia's counsel, however, is still in the process of confirming that these are the only two loans.  To the extent that additional loans made by Wachovia to MGA exist, Mattel reserves its right to seek documents related to those additional loans.

[30]   Exh. Y [December 15, 2005 Isaac Larian Deposition Transcript from Art Attacks Ink, LLC v. MGA Entertainment, Inc., C.D. Cal. Case No. 04-1035-J].

07209/2339253.2

1   Wachovia subpoena defines "YOU" as Wachovia Corporation and all its affiliates
2   and predecessors-in-interest and specifically includes "lines of credit."[32]

3          Both loan documents and supporting loan documentation are relevant
4   because they are likely to contain information regarding when MGA asserts that the
5   Bratz design was first conceived, the stage of development of Bratz at the time of
6   the loan application or funding, and projections by MGA regarding potential
7   revenues attributable to Bratz and related products.[33]

8          Mattel's Request No. 12 to Wachovia seeks "Documents sufficient to
9   identify any other MGA lender or person who extended or was requested to extend a
10   line of credit to MGA since January 1, 1998."[34]  Mattel is entitled to inquire about
11   additional sources of funding for Bratz and Bratz related products.  These
12   documents may contain information similar to Wachovia's loan documents, such as
13   when MGA asserts that the Bratz design was first conceived, the stage of
14   development of Bratz at the time of the loan application, projections by MGA
15   regarding potential revenues attributable to Bratz and Bratz related products, and the
16   net worth of MGA at the time of the loan or loan funding[35]

---

[31]   Exh. Z [Wachovia/Congress Financial Press Release].
[32]   Exh. 9 [Wachovia Subpoena] to the Park Dec.
[33]   MGA applied for and received its second loan from Wachovia in 2006 in
order to fund MGA's acquisition of Little Tykes.  The loans documents from both
loans are relevant to demonstrate the value of assets pledged by MGA as collateral
for the loans—documents which go to show MGA's net worth and documents which
MGA has thus far not produced to Mattel.  Exh. O to the Corey Dec. [Tonnu Tr.
322:19 to 325:6; 326:17 to 327:6; 333:3-7; 334:12-15].
[34]   Exh. 9 [Wachovia Subpoena] to the Park Dec.
[35]   MGA does not dispute the relevance of Mattel's Requests Nos. 8 and 9 to
Wachovia.  See generally MGA's Separate Statement in support of Motion to
Quash.  Further, MGA does not request that the Court quash Mattel's Request
No. 11 to Wachovia, which seeks documents sufficient to show Wachovia's
preservation, retention or destruction policies applicable to documents sought in
     (footnote continued)

**B.** **Mattel is Entitled to Documents Showing or Related to MGA's and Larian's Net Worth**

Request Nos. 6-7 to Wachovia seek documents directly related to the value of MGA's net worth, intellectual property and goodwill. Documents relevant to MGA and Isaac Larian's net worth, including the value of MGA's good will and intellectual property, are necessary for Mattel's experts to determine the damages that accrued to Mattel as a result of MGA's infringement of Mattel's copyrights, and for punitive damages and to defend against MGA's as yet unspecified damages.[36] Both the Discovery Master and Judge Larson have previously ruled that Mattel is entitled to evidence related to MGA's net worth: "That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law."[37] See, e.g., Hilao v. Estate of Marcos, 103 F.3d 767, 781-82 & n. 7 (9th Cir. 1996) (approved a jury's

_____

Mattel's other requests to Wachovia. MGA has, therefore, conceded that Mattel is entitled to these documents.

[36] Another reason that the financial and loan documents sought by the third-party subpoenas is relevant is because it bears on MGA and Larian's credibility. Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc., 175 F.R.D. 646, 650 (C.D. Cal. 1997) (information is relevant and discoverable if it relates to "the credibility of any witness"). For example, Mattel's Request Nos. 1-5 and 9-10 in its document subpoena to Wachovia seek information regarding the quality of the financial information provided by Isaac Larian to these financial institutions. As a lending institution considering whether to lend substantial sums of money to MGA, Wachovia no doubt scrutinized the financial and related information provided by MGA. To the extent Wachovia questioned or had concerns about the information provided, these documents may bear on MGA's credibility. Similarly, MGA's auditors, Ernst & Young and Deloitte & Touche, had a duty to scrutinize the information provided to them by MGA or Mr. Larian. If these financial institutions questioned the sufficiency or accuracy of any such information in the course of their assessment, then this would be relevant to MGA or Mr. Larian's credibility.

[37] Exh. AA at 5 [July 2, 2007 Order].

07209/2339253.2

-57-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  discretion to consider financial condition as one relevant factor in awarding punitive

2  damages); Southern California Housing Rights Center v. Krug, 2006 WL 4122148,

3  *4 (C.D. Cal. 2006) ("When a punitive damages claim has been asserted, a majority

4  of federal courts permit pretrial discovery of financial information about defendants

5  without requiring the plaintiff to establish a prima facie case on the issue of punitive

6  damages.").  Here, MGA has freed MGA to go to third parties because MGA's

7  designee on MGA's net worth testified that MGA did not calculate it, or MGA's

8  good will, or the value of its intellectual property, including Bratz.[38]

9          Mattel's Request No. 12 to Wachovia seeks "Documents sufficient to

10  identify any other MGA lender or person who extended or was requested to extend a

11  line of credit to MGA since January 1, 1998."  Such additional lenders that Mattel is

12  not yet aware of may provide information that MGA has not and will not produce to

13  Mattel, such as MGA's net worth, including the value of its goodwill and intellectual

14  property (which are discussed below in more detail).  These documents are,

15  therefore, highly relevant.

16      **C.      The Documents Sought Are Also Relevant to Mattel's**

17              **Disgorgement and Constructive Trust Remedies**

18          One remedy Mattel seeks is disgorgement of all amounts wrongfully

19  obtained.  Mattel may also be entitled to damages for lost profits pursuant to its

20  disgorgement theory of damages.  The disgorgement remedy also provides for the

21  imposition of constructive trusts to recover the ill-gotten gains of MGA and Isaac

22  Larian that have been transferred to other parties.  For purposes of establishing

23  disgorgement, Mattel must take into account money transferred from MGA and

24  Isaac Larian, regardless of the manner in which it was transferred.[39]  Mattel is

25  entitled to discovery that shows all assets siphoned from MGA or Isaac Larian for

---

[38]    Exh. O [Tonnu Tr. 322:19-325:6; 326:17-327:6; 333:3-7; 334:12-15].

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  which there was no compensation during the period of the alleged wrongful

2  conduct.

3    It is undisputed that disgorgement is remedy for Mattel's claims against

4  MGA and Larian, including copyright infringement and trade secret

5  misappropriation. § 17 U.S.C. 504(b) and E. Bassett Co. v. Revlon, Inc., 435 F.2d

6  656 (2d Cir. 1970) (copyright infringement); 4 Callmann, Unfair Competition and

7  Monopolies § 14.45 (4th ed.) and Clark v. Bunker, 453 F.2d 1006, 1011 (9th Cir.

8  1972) (trades secret misappropriation). The scope of the disgorgement remedy is set

9  forth in two recent California Supreme Court decisions. See Kraus v. Trinity

10  Management Servs., Inc., 23 Cal. 4th 116 (2000); Korea Supply Co. v. Lockheed

11  Martin Corp., 29 Cal. 4th 1134 (2003). The court indicated that:

13    "disgorgement" is a broader remedy than restitution. . . .
      [A]n order for disgorgement "may compel a defendant to
14    surrender *all* money obtained through an unfair business
      practice even though not all is to be restored to the persons
15    from whom it was obtained or those claiming under those
      persons. It has also been used to refer to surrender of *all*
16    profits earned as a result of an unfair business practice
      regardless of whether those profits represent money taken
17    directly from persons who were victims of the unfair
      practice."

18  Korea Supply, 29 Cal. 4th at 1145 (quoting Kraus, 23 Cal. 4th at 127) (emphasis

19  added). Moreover, an important part of disgorgement is the imposition of a

20  constructive trust to recover ill-gotten gains that have been transferred to others by

21  the defendant. A constructive trust is intended to prevent unjust enrichment, with

22  equity compelling the restoration to another of property to which the holder thereof

23  is not justly entitled. Taylor v. Polackwich, 145 Cal. App. 3d 1014, 1022 (1983);

24  Cal. Civ. Code §§ 2223, 2224. See also Weiss v. Marchus, 51 Cal. App. 3d 590,

25  600 (1975) (constructive trust may be imposed in case of fraud, mishandling, or

26

27  _____

    [39] Exh. B [Second Amended Answer and Counterclaims].
28

1   almost any case of wrongful acquisition or detention of property to which another is

2   entitled).  When personal property is in dispute, the legislature has allowed plaintiffs

3   to invoke the remedy of constructive trust.  Cal Civ. Code §§ 2223, 2224.  To create

4   a constructive or involuntary trust only three conditions are necessary:  existence of

5   a res, i.e. property or some interest in property, plaintiff's right to that res and

6   defendant's gain of the res by fraud, accident, mistake, undue influence, violation of

7   the trust or other wrongful act.  Kraus v. Willow Park Public Golf Course, 140 Cal.

8   Rptr. 744, 73 Cal. App. 3d 354 (1977); see Cramer v. Biddison, 65 Cal. Rptr. 624,

9   257 Cal. App. 2d 720 (1968).  See Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1067

10  (1998) (constructive trust); Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445,

11  454-55 (1997) (equitable lien is proper if unjust enrichment and detrimental reliance

12  are implicated)

13          Mattel needs the documents discussed above to prove the amount the

14  defendants must disgorge.  Housing Rights Center v. Sterling, 2005 WL 3320739,

15  *3 (C.D. Cal. 2005) (finding financial information relevant to disgorgement of

16  profits claim).  Money that properly belonged to Mattel was transferred from MGA

17  or Isaac Larian to an entity controlled by them.  Mattel should be able to understand

18  how that money was used because MGA and Isaac Larian have no right to whatever

19  additional gains realized with Mattel's money.  See id.  Rather, the right to those

20  additional gains vests solely in Mattel.  Thus far, MGA and Isaac Larian have

21  produced no documents from which Mattel may ascertain the amount of any

22  transfer, much less any gain realized.  Nor have they agreed to produce any such

23  documents.

24          Documents provided to Wachovia by MGA in connection with its two

25  loan applications will contain important information about MGA's financial picture,

26  including MGA's forcasts, budgets, profit and loss statements, etc.  These will assist

27  Mattel in determining the appropriate amount of disgorgement and constructive

28  trust.

1

**D.  Mattel Seeks Documents to Prepare Its Defenses to MGA's**

2

**Counter Claims**

3  Mattel also seeks documents relevant to MGA's claims (a point all but

4  ignored in the Motion to Quash).  MGA accused Mattel of false designation of

5  origin, unfair competition, dilution, and unjust enrichment, and MGA seeks "general

6  and actual damages ... excepted to reach or exceed $10 million," "disgorgement of

7  all profits derived by Mattel," and "punitive and exemplary damages."[40]  Mattel is

8  entitled to the requested documents so that it can effectively cross-exam MGA's

9  witnesses about the accuracy of MGA's damages claims against Mattel.  Mattel is

10  entitled to have adequate information available to it to permit Mattel to defend

11  against and disprove MGA's claims and damages theories.  For example, to the

12  extent that MGA asserts that it measures damages by its lost profits, Mattel is

13  entitled to know what those profits are and intervening factors could have limited

14  MGA profits (e.g., mismanagement, insufficient capital, inaccurate or untimely

15  forecasting and manufacturing, election to minimize advertising).[41]  Documents

16  provided to Wachovia by MGA in connection with its two loan applications will

17  contain important information about MGA's financial picture, including MGA's

18  forecasts, budgets, profit and loss statements, etc.  These will assist Mattel in

19  preparing its defense against MGA's claims and the remedies sought by MGA.

20

21

22

23

---

24  [40]  Exh. A to the Corey Dec. [MGA Complaint, Prayer for Relief].

25  [41]  Mattel's Request Nos. 4-5 seek documents relating to Bratz and documents
relating to this consolidated proceeding.  Exhs. 7 and 8 to the Park Dec.  MGA does

26  not dispute the relevance of documents relating to Bratz or documents related to this

27  action.  See generally Section IV of MGA's Separate Statement filed in support of
MGA's Motion to Quash.

28

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

**E.     The Evidence of Payments to Others is Relevant to Mattel's Commercial Bribery Claim and Evidence of Bias**

As MGA recognizes, the banking and accounting records sought by Mattel are also relevant because they bear directly on Mattel's commercial bribery claim.  Contrary to MGA's assertion, their relevance goes beyond simply payments to Carter Bryant.  They may also lead to evidence of bias and influence on potential witnesses.  Such concerns are not theoretical, as evidence demonstrates that MGA was paying Mr. Bryant while it knew he was a Mattel employee.  Mattel is entitled to seek documents that would uncover additional information about MGA and Larian's attempts to bribe Mr. Bryant *or other Mattel employees or vendors*.  As discussed above, contrary to MGA and Larian's argument that the bribery issue is limited to Mr. Bryant, Mattel is entitled to seek information related to their bribery or attempted bribery of other personnel.  Indeed, only recently Veronica Marlow, a third-party witness who long worked directly with Bryant and MGA, testified that she knew of at least three other Mattel employees who *for years* worked on Bratz *while they were employed by Mattel*.[42]

Furthermore, payments by MGA or any other defendant to or on behalf of goes to bias.  Evidence of such bias is relevant and discoverable, especially when it relates to key witnesses.  See <u>United States v. Abel</u>, 469 U.S. 45, 50-51 (1984); <u>see also</u> Wright & Miller, <u>Federal Practice & Procedure: Federal Rules of Evidence</u> § 6095 (bias is a "particularly favored basis for attacking credibility," and "circumstantial evidence of bias" may include evidence of the "payment of bribes or fees").

---

[42]   Exh. S at 288:8-289:21, 306:8-25; 307:8-308:1; 363:15-21[Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007].

07209/2339253.2

-62-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER