II.   **MGA HAS NOT SHOWN THAT THE DOCUMENTS HAVE BEEN PRODUCED OR ARE OTHERWISE DUPLICATIVE**

   A.   **That Documents "May" Be Available From Another Source Is Not Sufficient**

MGA and Larian argue that the subpoenas should be quashed because Mattel requested similar documents from the parties, and MGA and Larian are in possession of some responsive documents.  These arguments are insufficient grounds to quash the subpoenas.

Even if the document requests served on the third parties were identical to the requests served on MGA and Larian, there has been no showing--nor is one conceivable--that the MGA and Larian have all of the same documents as are in the possession, custody, or control of the third parties.  (For example, there is no reason to believe that MGA would have all of the banking records maintained by Wells Fargo.  Banks are notoriously thorough in their record keeping, and would have a much more detailed paper trail concerning activity in MGA's account than would MGA.)  Without assurance that MGA and Larian have all of the same documents as Wells Fargo, this objection is meritless.  In State Farm Mutual Auto Ins. Co. v. Accurate Medical, P.C., the district court rejected a similar argument.  2007 WL 2993840 (E.D.N.Y. Oct. 10, 2007) (denying motion to quash).  There, the plaintiff sought documents regarding third-party financial relationships with the defendant.  In response to the defendant's argument that such documents were available from itself, the court found that it critical that "it is unlikely that the moving defendants would, in fact, possess all the documents sought by plaintiff in the subpoenas."  Id. at *1.

07209/2339253.2

-63-
MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    Because documents may be available from other sources not grounds to

2 refuse production.[43] "[A] person may not avoid a subpoena by saying that the

3 evidence sought from him is obtainable from another." <u>Covey Oil Co. v.</u>

4 <u>Continental Oil Co.</u>, 340 F.2d 993, 998 (10th Cir. 1965) (overruled on other

5 grounds); <u>State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.</u>, 2007 WL

6 2993840, at *1 (E.D.N.Y. 2007) (same); <u>In re Bergeson</u>, 112 F.R.D. 692, 695 (D.

7 Mont. 1986) (conclusory assertions that documents sought are available from others

8 more economically "does not constitute a showing of unreasonableness or

9 oppressiveness."); <u>see</u> <u>also</u> <u>Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,</u>

10 6 F. Supp. 2d 859, 861-862 (E.D. Mo. 1998) (third party subpoena proper where

11 information sought pertained to a central issue in the underlying claim, it was not

12 burdensome in light of plaintiff's diligent efforts to obtain the information from

13 defendant, and the nonparty had signed protective order prohibiting disclosed

14 information from being seen by plaintiffs counsel or nonparty's competitors).

15    As held by the <u>State Farm</u> court, "nothing in the Federal Rules of Civil

16 Procedure requires a litigant to rely solely on discovery obtained from an adversary

17 instead of utilizing subpoenas." <u>Id</u>. at *1.

18    Finally, as discussed below, even if MGA and Larian had these

19 documents, they have not produced them.

20    **B.    <u>Neither Larian Nor MGA Have Produced The Majority of the</u>**

21    **<u>Documents Sought</u>**

22    MGA argues that the subpoenas should be quashed because the

23 information sought is available from the parties.  However, MGA neglects to

24 mention that Larian had not produced any documents until just last week pursuant to

25

26

---

27    [43]    <u>See</u> Motion at 11:5-15.

28

1 another order to compel, and MGA has not produced most of the documents sought

2 by the subpoenas

3         Although MGA claims to have produced many responsive documents,

4 it stops short of claiming that it has produced all of the documents sought by the

5 subpoenas. Moreover, the list of documents MGA claims to have produced is

6 notable for its lack of specificity. Indeed, MGA's list confirms that MGA has not

7 produced most of the documents requested by the third-party subpoenas.

8 Conspicuously missing from the list--and MGA's production--are:[44]

9         • Documents related to a determination of Isaac Larian's net worth.

10         • Documents stating the value of MGA's intellectual property and good

11 will. (other than Little Tykes intellectual property).

12         • MGA and Larian's tax records.

13         • Wells Fargo banking records for MGA.

14         • Documents related to payments to third-parties by MGA, Larian, or

15 the Larian trusts (such as to Bryant and other Mattel employees and vendors)

16         • Consumer and marketing research regarding Bratz and several MGA

17 products underlying MGA's claims against Mattel.

18         • Documents from the Larian v. Larian litigation.

19         • Documents related to the Larian trusts, including any documents

20 showing Isaac Larian's interest in, payments received, or transfers to those trusts.

21         • Documents regarding the 1999-2000 and 2006 loans MGA received

22 from Wachovia, including what documents MGA and Larian gave to Wachovia to

23 justify the loans.

24         Furthermore, even as to those documents MGA claims to have

25 produced, many of the descriptions are vague, inaccurate, or misleading:

26

27

28 [44] Id., ¶ 14.

1    • It is unclear what MGA means by its claim to have produced "annual

2    reports."  MGA has produced audited financial statements which Ms. Tonnu

3    testified could not be used to calculate net worth.[45]

4    • The reference to "various MGA financial reports" is hopelessly vague

5    and tells the Court and Mattel nothing about what MGA claims was actually

6    produced.

7    • MGA's claim to have produced documents related to "royalty

8    payments" to Carter Bryant does not encompass all payments to Mr. Bryant, or any

9    to other Mattel employees and vendors.

10   • The "Documents showing MGA's sales, returns and costs of good

11   sold" "promotional, advertising and media expenditures" only relate to Bratz.[46]

12   They do not relate to MGA's or Larian's net worth directly, or to the value of its

13   good will or intellectual property.

14   • The "Documents showing MGA's amortization and depreciation" is

15   only for unspecified "certain capital assets and expenditures," and they are no more

16   duplicative of Mattel's requests than the Bratz specific cost information.

17   • The "monthly general ledger" documents do not appear to be general

18   ledger entries at all, but in fact are much more generic trial balances.  Moreover,

19   there information produced appears to relate only to some account numbers,

20   omitting many others.  Further, it appears that no information has been produced for

21   the years 2001 and 2004.[47]

22   In short, MGA and Larian cannot refuse to produce for months, then

23   object when Mattel seeks documents from others.  Now, with weeks left in Phase

24   One discovery, Mattel does not have the luxury of waiting for MGA and Larian to

25

26   _____

27   [45] Exh. O [Tonnu Tr. 322:19-325:6; 326:17-327:6; 333:3-7; 334:12-15].
     [46] Corey Dec., ¶ 15.

28   [47] Id., ¶ 16.

1   get around to producing.  Mattel needs documents to enforce its claims and to

2   defend against MGA's, and any further delay will prejudice Mattel's ability to

3   adequately prepare for trial.

4      **C.**    **MGA and Larian's Illusory Promises to Produce Do Not Render**

5              **the Subpoenas Duplicative**

6          Conceding that neither it nor Larian have in fact produced all

7   documents that are being sought from the third parties, MGA argues that the

8   subpoenas are unreasonably duplicative because they ***might*** produce additional

9   documents in the future.[48]  Notably absent from their hollow promise is any specific

10  date by when the documents will be produced, or even a list of the specific

11  documents to be produced or the specific categories of document requests to which

12  they respond.  This "wait and see" and "trust me" approach, unsurprisingly, finds no

13  support in the case law and is an inadequate basis to grant the Motion to Quash.  It

14  also is premised on a poor track record.  Neither MGA or Larian have lived up to

15  their representations about producing relevant documents in the past.  Indeed,

16  despite repeated promises to produce responsive documents, Larian produced his

17  first page just last week pursuant to another Court order.  Thus, it is not

18  unreasonable to have requested these highly relevant documents from the third-

19  parties.

20      **D.**    **Mattel is Entitled to the Requested Documents Because of**

21              **Legitimate Concerns of Spoliation and Document Tampering**

22         Mattel cannot rely on MGA and Larian to actually produce all of the

23  responsive documents in their possession, custody and control, or that they will

24  produce it in their original condition.  As discussed above, Veronica Marlow, a

25  third-party witness who long worked directly with Bryant and MGA, testified that

26

27

28

---

[48]   Motion at 5:1-7.

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

07209/2339253.2

1   she knew of at least three Mattel employees who *for years* worked on Bratz *while*
2   *they were employed by Mattel.*[49]  This was a shocking revelation.  Neither MGA nor
3   Bryant had disclosed this information, despite repeated Court Orders and despite the
4   fact that at least one of these individuals was a co-worker of Bryant's at Mattel.  To
5   the contrary, both Bryant and MGA gave flat denials under oath that there was any
6   other Mattel employees knowingly involved.[50]  Yet, by defendants' reasoning here,
7   the Court and Mattel should have been denied Ms. Marlow's plainly relevant
8   evidence because it purportedly duplicated discovery requested of defendants.  In
9   fact, defendants made that very argument to Judge Larson is resisting producing Ms.
10  Marlow for deposition in the first place, to no avail.

11          In the past, MGA has produced requested documents only *after* a third-
12  party's production exposed MGA's previous failures to produce.  What documents
13  MGA has produced has been the result of a protracted discovery process in which
14  MGA has demonstrated a pattern of failing to produce relevant, critical, and
15  incriminating, documents until faced with compulsion by the Court or after a third
16  party has already produced them.  For example, in September 2006, a third-party
17  witness, Steven Linker, produced Bratz design drawings and Bratz product
18  development documents.[51]  Linker's production included a multitude of Bratz
19  materials he had received from or exchanged with MGA and Bryant before Bryant
20  left Mattel.[52]  Neither MGA nor Bryant had produced many of them, however.
21  Notably, before Linker's testimony, MGA had produced an email relating to Bratz

22

23
24  [49]  Exh. S at 288:8-289:21, 306:8-25; 307:8-308:1; 363:15-21[Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007].
25  [50]  Exh. W at 286:25-287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")];
26  Exh. O at 301:2-17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.")]; Exh. X at 64-70 [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].
27  [51]  Corey Dec., ¶ 17; Exhs. F, G, and H.
    [52]  Corey Dec., ¶ 18; Exh. H.
28

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1   development that Linker's design partner, Liz Hogan, had sent to MGA on

2   October 23, 2000 -- a date which was conveniently *after* Bryant left Mattel. MGA,

3   however, had not produced the earlier emails—those pre-dating Bryant's last day of

4   employment at Mattel—that Hogan had exchanged with MGA on that very same

5   subject. Mattel obtained those only after Linker produced them pursuant to

6   subpoena in September 2006.[53] Thus, it has often been the case in this litigation that

7   MGA has produced relevant and responsive documents only after a third-party has

8   already done so.

9              Furthermore, Mattel must guard against the possibility of further

10  spoliation of evidence and/or document tampering. Unfortunately, these concerns

11  are not merely speculative or theoretical. It has already occurred. For example,

12  former Mattel and present MGA employee Mr. Bryant was ordered--after initial

13  delay and refusal--to produce a computer for inspection in this matter. Mattel

14  learned that a software program called "Evidence Eliminator" had been installed and

15  run on that hard drive.[54] In addition, there has been credible evidence adduced in

16  this action that MGA has tampered with documents by altering their creation dates,

17  as indicated by fax headers (which were deleted). The Court responded to the

18  concern of spoliation, and specifically the alteration of the creation date of the

19  documents described above, in an August 9, 2006 order.[55] Although it did not find

20  the evidence rose to the level of requiring the appointment of a Court appointed

21  expert witness at the time. It held, "There are serious questions concerning the

22  handling of these critical documents" that caused the Court "much concern about

23  whether the truth seeking functions of the adversarial system have been

24  fundamentally compromised in this case." Id. at 11:10-13. The Court also stressed

25  _____

26  [53]  Corey Dec., ¶ 18; Exhs. G and I.

27  [54]  Exh. U, at 285:15-287:6 [12/28/07 Deposition Transcript of Richard Irmen].
    [55]  Exh. N, at 9:4-18:14 [Court's August 9, 2006 Order].

28

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1   its "concern" over MGA's "handling of documents in its possession."[56]   Clearly,

2   therefore, Mattel is within its rights to obtain documents from third-parties even if

3   also in the possession of MGA and Larian.

4            Given the unavailability of this information from both MGA, Larian,

5   and other sources, MGA's efforts to thwart Mattel's discovery requests seeking this

6   information thus far, and the very real concern over spoliation and tampering, Mattel

7   should not be denied this discovery from third parties.[57]

8   **III.    MGA HAS NOT SHOWN UNDUE BURDEN**

9            MGA and Larian fail to show that the requests are so burdensome to

10  justify quashing the subpoenas.  A party claiming that production of requested

11  documents is unduly burdensome bears the burden of proving up their objection.

12  Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984)

13  (reversing district court's decision quashing subpoena).  The party cannot rest on

14  conclusory assertions.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966)

15  (reversing the quashing of a subpoena because of lack of specific evidence of

16  burden).  "The party must provide specific and compelling proof that the burden is

17  undue."  JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25

18  (Fed. Cl. Ct. 2007) (denying motion to quash).

19

20  _____

21  [56]   Id. at 17:23-26.

22  [57]   MGA has created a chart that purportedly shows overlap between Mattel's
    document requests to the financial institutions and Mattel's documents requests to

23  MGA.  See Exh. 28 to the Park Dec.  MGA cites to three examples of the overlap
    between Mattel's document requests and the subpoenas to the third-parties—the

24  value of MGA's net worth, goodwill and intellectual property.  See Motion at 17:6-

25  10.  As detailed above, the listing of documents that MGA sets forth in its Motion
    do not contain documents showing the value of MGA's net worth, goodwill or

26  intellectual property, and Lisa Tonnu testified as to the unavailability of these

27  documents from MGA.  Therefore, MGA's argument in this regard contradicts its
    own designee.

28

07209/2339253.2

-70-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    Here, MGA and Isaac Larian offer no evidence--such as a declaration

2    or testimony--regarding the time, cost, or burden involved in responding to Mattel's

3    subpoenas.  Nor could they.  "The burden of showing that a subpoena is

4    unreasonable and oppressive *is upon the party to whom it is directed*."  <u>Goodman v.</u>

5    <u>U.S.</u>, 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added).

6    In addition, in a further effort to reduce any inconvenience to the third-

7    parties, Mattel will reimburse the third parties for the costs incurred in copying the

8    responsive documents.  However, even if Mattel was unwilling to pay for the third

9    parties' copying costs (which is not an issue here since Mattel will reimburse them),

10   and even if the third parties did not already have separated case files, a claim that

11   compliance with Mattel's requests "would necessitate the examination of large

12   quantities of documents, requiring a great deal of time and expense . . . is not alone a

13   sufficient reason for refusing discovery which is otherwise appropriate. . . . "

14   <u>American Optical Co.</u>, 39 F.R.D. 580, 586-587 (N.D. Cal. 1966) (denying motion to

15   quash where documents sought covered a twelve year period).  And, in an effort to

16   further reduce burden upon the third-parties, Mattel has offered to have its own

17   paralegal and counsel inspect documents gathered thus far by the third-party

18   financial institutions with an agreement that the inspection will not result in

19   waiver.[58]

20   Moreover, during meetings with Mattel, Wachovia's concerns

21   regarding burden were amply addressed by Mattel agreeing to tailor the timeframe

22   and by Mattel providing examples to Wachovia of the types of documents that it

23

24

25

26

------

27   [58]   Exh. C to the Corey Dec. [Letter from Jon Corey to John Baran dated December 20, 2007].

28

07209/2339253.2

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  seeks.[59]  Given these concessions and the applicable case law, the raw assertions of

2  undue burden are meritless.

3

4  **IV.    THE SUBPOENAS ARE NOT OVERBROAD**

5              MGA and Larian's assertion that the Mattel's requests are abusively

6  drawn or unduly overbroad is also meritless given that five of Mattel's document

7  requests are directed to financial institutions.  Financial institutions generate and

8  retain precisely types of documents that are responsive to Mattel's requests.

9  Therefore, MGA's objections of overbreadth and harassment are baseless.

10            Defendants mistakenly rely on <u>Ocean Atlantic Woodland Corp. v. DRH</u>

11 <u>Cambridge Homes, Inc.</u>, 292 F. Supp. 2d 923 (N.D. Ill. 2003), to argue that broad

12 financial discovery on nonparties is necessarily unduly burdensome.  However, the

13 <u>Ocean Atlantic</u> Court did not hold that such discovery is always unwarranted; rather,

14 it must be tied to the claims and defenses at issue.  There, the plaintiff had acquired

15 a copyright in two real estate development plans for a parcel of land, but was unable

16 to develop the parcel because it failed to close on the sale of the land within the

17 required time.  The plaintiff sued the developer who later acquired the rights to

18 develop the land and who did it using the copyrighted plans.  The plaintiff served

19 document requests seeking "all aspects of [defendant's] financial activities,

20 including costs sales, and profits on all its developments and all of its home sales

21 throughout the country since 1997." <u>Id</u>. at 925.  The court found that these requests

22 were overbroad, because on the facts of that case, they were not relevant to the

23 claims and defenses at issue.  Specifically, the court found that  because the measure

24 of damages was limited to either (1) the amount plaintiff paid to acquire the

25 development plans at issue, or (2) the value of use or the saved acquisition costs to

26 ─────────────────

27   [59]   Exh. D to the Corey Dec. [Letter from Jon Corey to Neal Potischman dated
     (footnote continued)

28

07209/2339253.2

-72-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  defendant who used the plans, broad financial discovery was not warranted.  Id. at

2  928.  In contrast, here, unlike Ocean Atlantic, the measure of damages in not so

3  limited, and includes disgorgement and punitive damages.

4         Thus, broad discovery into MGA and Larian's finances, including net

5  worth and asset transfers, is within the bounds of discovery as the Discovery Master

6  and Judge Larson have held.  Indeed, in Southern California Housing Rights

7  Center v. Krug, 2006 WL 4122148 (C.D. Cal.), a case relied on by MGA, the court

8  ordered that broad financial discovery concerning defendant's net worth was

9  relevant to punitive damages, and ordered defendant to produce documents relating

10  to its net worth and current assets and/or liabilities, including identification and

11  value of all properties and other assets owned in whole or in part, profit and loss

12  statements from 2004 to the present, as well as "financial statements and balance

13  sheets that relate to assets, inventories, liabilities, gross and net income, and the

14  amount of any undistributed business profits."  Id. at *1-2.

15         **3.   MGA's Statement of Position Regarding Requests 1-3 and 8**

16                **to Ernst & Young & Deloitte & Touche[60]**

17         Mattel has subpoenaed five different entities that perform financial services

18  for MGA or Mr. Larian seeking virtually every scrap of paper and byte of data

19  pertaining to MGA and Mr. Larian's finances over the last nine years.  The instant

20  requests are examples of these overbroad requests.  There is no justification for

21  issuing such expansive subpoenas, with requests such as these which cover largely

22  irrelevant material, particularly since whatever small amount of relevant information

23  may be covered by the subpoenas has already been requested from the parties.

24

25  _____

26  December 24, 2007]
   [60]  This Statement deals with subpoenas to Ernst & Young and Deloitte &

27  Touche in the same section because Mattel's requests to each of these parties are
identical.

28

07209/2339253.2

1    When a party subpoenas an adverse party's financial information, courts are

2  especially vigilant in limiting the subpoena's scope such that irrelevant financial

3  information is not produced. See *S. Cal. Hous Rights Ctr. v. Krug*, Case No. CV 06-

4  1420 SJO (JCx), 2006 U.S. Dist. LEXIS 65330 (C.D. Cal. Sept. 5, 2006) (denying

5  request for production of tax return because plaintiff could not show a compelling

6  need for the return where less intrusive means could be used to establish defendant's

7  net worth); *In re Ashworth, Inc. Sec. Litig.*, Civil No. 99cv0121 L (JAH), 2002 U.S.

8  Dist. LEXIS 27991, at *20 (S.D. Cal. May 10, 2002).  In *Ashworth*, for example, the

9  district court quashed subpoenas issued to the defendant's financial analysts and

10  investment companies as "overwhelmingly broad in category and content" because

11  "[a]s they are phrased, the requests appear, in this Court's view, to seek all

12  documents in the third party financial analysts' possession that refer to or mention

13  Ashworth in any shape or form."  2002 U.S. Dist. LEXIS 27991, at *20.

14    Mattel's subpoenas to MGA's auditors are unrestrained in scope.  For example,

15  Mattel's subpoenas request all documents relating to the financial services that

16  MGA's auditors have provided MGA over the last nine years.  (Park Decl., Exs. 7-8

17  (Ernst & Young and Deloitte & Touche Subpoenas) at Request 1 ("All documents

18  constituting or relating to MGA's annual audits... from the period beginning

19  January 1, 1999 to the present."); *see also id.* at Requests 2-3 (seeking financial

20  information with no limitation on the time period of the information sought).)

21  Mattel has also requested that Ernst & Young and Deloitte & Touche produce

22  documents identifying other lenders, auditors or accountants of MGA or Mr. Larian,

23  presumably because Mattel wants to serve them with similar subpoenas.  (Park

24  Decl., Exs. 7-8 (Ernst & Young and Deloitte & Touche Subpoenas) at Request 8.)

25    Mattel argues that it needs this financial information because the information

26  is relevant to damages, Mattel's commercial bribery allegations, and to counter a

27  statement Mr. Larian made in a prior litigation that, as of 2007, he could not recall

28  whether he received a bonus in 2003 because MGA's owners invested the company's

-74-

1 profits back into the company.  Such inchoate assertions, of relevance are

2 insufficient to justify the type of unfettered access to MGA and Mr. Larian's

3 financial information that Mattel seeks.  See, *e.g.*, *Ocean Atl. Woodland Corp. v.*

4 *DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003).

5      In *Ocean Atl.*, the copyright owner of real estate development plans sued a

6 developer for infringement with respect to one of its development sites.  The

7 plaintiffs "interrogatories and production requests [sought] all of the defendants'

8 financial records relating to their entire business and professional activities, on all

9 construction projects throughout the country, beginning from 1997 through present

10 date." *Id.* at 926.  Posing the question "can anything remotely relevant to the claims

11 and defenses-or more pointedly to damages-arising from use of the Development

12 Plans at the Liberty Grove development site justify this massive body of discovery,"

13 the court answered, ***"We hardly think so."*** *Id.* (emphasis added). "This court

14 perceives an improper motive and purpose to this broad discovery.  We cannot

15 conceive of any relevance to the claims or defenses asserted in this copyright

16 infringement case, or of any legitimate purpose of this massive discovery demand.

17 The production of virtually the entirety of defendants' business books and records

18 relating to all of its projects could not lead to any admissible evidence." *Id.* at 927.

19      The Discovery Master should reach the same conclusion in this case.  Mattel's

20 alleged damages in this case are tied to the particular products at issue, not MGA or

21 Mr. Larian's entire financial history. Documents such as all of MGA and

22 Mr. Larian's tax returns, account statements and expense records, or the audit files

23 and loan documents for MGA, are neither relevant to damages in this case nor

24 reasonably calculated to lead to the discovery of admissible evidence.  See Fed. R.

25 Civ. P. 26(b)(1).  Indeed, the Discovery Master in this case already rejected an

26 attempt by Mattel to obtain Carter Bryant's tax returns.  (Park Decl., Ex. 27 (1/25/07

27 Order) at 14-15.)

28

-75-

1    Similarly, Mattel's assertion that the requested financial information is

2  relevant to its commercial bribery allegations is specious.  Mattel's bribery

3  allegations consist of nothing more than an assertion that MGA financed Bryant to

4  develop Bratz while he was still employed at Mattel.  Mattel's Second Am.

5  Answer & Counterclaim at 37 (¶ 33), 59 (¶ 93(d)), 74 (¶ 165).  Thus, the only

6  financial documents that could possibly be relevant to this allegation are documents

7  showing any payments by MGA to Bryant during the time he was a Mattel

8  employee.

9    Mattel's claim that it needs all of Mr. Larian's financial records to counter his

10  statement that he did not think he received a bonus in 2003 because MGA's owners

11  invested the company's profits back into MGA is nothing more than an absurd

12  fishing expedition.  See *Aliotti v. Senora*, 217 F.R.D. 496, 498 (N.D. Cal. 2003)

13  (rejecting request for party-opponent's tax returns for impeachment purposes

14  because request was "the kind of 'fishing expedition' that would undermine the

15  public policy against unnecessary public disclosure of tax returns") (quotation marks

16  and citations omitted).  Setting aside the issue of relevance, Mattel does not need to

17  comb through nine years' worth of Mr. Larian's financial records to determine

18  whether he received a bonus from MGA in 2003.  That information is obtainable

19  from MGA.

20    In addition to seeking irrelevant information, these requests seek information

21  that is already covered by one or more of the more than 2,300 document requests

22  that Mattel has served on the MGA Defendants.  (Park Decl., Ex. 28 at 38-49 (chart

23  comparing Mattel's requests to Non-Parties with Mattel's document requests to

24  MGA Defendants).)

25    In addition, numerous documents requested pursuant to these requests are

26  duplicative of documents that the MGA Defendants have already produced.  See

27  Fed. R. Civ. P. 26(b)(2)(C) (limiting discovery if it "is unreasonably cumulative or

28  duplicative, or can be obtained from some other source that is more convenient, less

07209/2339253.2

-76-
MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1   burdensome, or less expensive").  The financial documents produced by the MGA

2   Defendants to date include:

3   •   Audited and unaudited quarterly and annual profit and loss
4       statements;

5   •   Audited and unaudited quarterly and annual statements;

6   •   Annual reports;

7   •   Various MGA financial reports;

8   •   Various financial documents relating to Veronica Marlow;

9
10  •   Documents showing royalty payments to Carter Bryant;

11  •   Documents showing MGA's sales, returns and costs of good sold
12      for each month, by SKU, since 2001;

13  •   Documents showing MGA's promotional, advertising and media
        expenditures including MGA's internal allocation of those
14      expenditures by brand and/or product;

15  •   Documents showing MGA's amortization and depreciation of
16      certain capital assets and expenditures;

17  •   Documents showing MLA's monthly general ledger entries
        aggregated by account, including income and expense accounts,
18      reserves and liabilities; and

19
    •   Documents sufficient to explicate MGA's various accounts as
20      presently and historically maintained in MGA's books and
        records, as well as various nomenclature assigned to items,
21      products, brands, sub-brands, and profit centers.

22
23  (Park Decl., ¶ 3.)

24      In view of the many requests for financial information that Mattel has served

25  on the MGA Defendants, as well as the ample financial documents that the MGA

26  Defendants have produced or will be producing, there is no basis for Mattel to

27  obtain the broad financial information asked for in these requests.

28

1    Mattel has no legitimate need to discover the entirety of MGA and

2    Mr. Larian's financial records over the last nine years.  Nor is there any reason to

3    unduly burden non-parties with this expansive request for such records when those

4    materials either are irrelevant or are properly the subject of party discovery.

5    Accordingly, the Discovery Master should bar Mattel from seeking information

6    pursuant to these requests from Ernst & Young or Deloitte & Touche.

7        **Mattel's Response**:

8        As the party moving to quash Mattel's subpoenas, MGA bears the

9    initial burden of persuasion to demonstrate that Mattel's document requests are

10   improper.  See Green v. Baca, 226 F.R.D. 624, 653 (C.D. Cal. 2005).  The burden

11   on the party moving to quash a subpoena is a "heavy one."  Heat and Control, Inc. v.

12   Hester Industries, Inc., 785 F.2d 1017, 1024-25 (Fed. Cir. 1986) (noting that "the

13   factors required to be balanced by the trial court in determining the propriety of a

14   subpoena are the relevance of the discovery sought, the requesting party's need, and

15   the potential hardship to the party subject to the subpoena.").  Here, MGA and

16   Larian have failed to meet their burden.

17   **I.    THE DOCUMENTS SOUGHT ARE RELEVANT TO THE CLAIMS**

18        **AND DEFENSES AT ISSUE**

19        MGA argues that the documents sought from Ernst & Young and

20   Deloitte & Touche are not relevant to the claims and defenses at issue.  In so

21   arguing, MGA mischaracterizes Mattel's stated need for the documents, artificially

22   limiting it to two issues:  (1) Mattel's commercial bribery claim; and (2) to refute

23   Larian's statement he did not receive a bonus in 2003.  As shown in Mattel's

24   Opposition and below, the documents sought from these accounting firms are

25   relevant to many more issues in dispute, including Mattel's disgorgement and

26   punitive damages claims, as well as to ascertain MGA and Larian's net worth, and

27   the value of MGA's intellectual property and good will.

28

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

**A.**   **Mattel is Entitled to Documents Showing or Related to MGA's and Larian's Net Worth**

Documents relevant to MGA and Isaac Larian's net worth, including the value of MGA's good will and intellectual property, are necessary for Mattel's experts to determine the damages that accrued to Mattel as a result of MGA's infringement of Mattel's copyrights, and for punitive damages and to defend against MGA's as yet unspecified damages.[61]  Both the Discovery Master and Judge Larson have previously ruled that Mattel is entitled to evidence related to MGA's net worth: "That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6).  Therefore, the Discovery Master's ruling on this issue is not contrary to law."[62]  See, e.g., Hilao v. Estate of Marcos, 103 F.3d 767, 781-82 & n. 7 (9th Cir. 1996) (approved a jury's discretion to consider financial condition as one relevant factor in awarding punitive damages); Southern California Housing Rights Center v. Krug, 2006 WL 4122148, *4 (C.D. Cal. 2006) ("When a punitive damages

---

[61]   Another reason that the financial and loan documents sought by the third-party subpoenas is relevant is because it bears on MGA and Larian's credibility. Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc., 175 F.R.D. 646, 650 (C.D. Cal. 1997) (information is relevant and discoverable if it relates to "the credibility of any witness").  For example, Mattel's Request Nos. 1-5 and 9-10 in its document subpoena to Wachovia seek information regarding the quality of the financial information provided by Isaac Larian to these financial institutions.  As a lending institution considering whether to lend substantial sums of money to MGA, Wachovia no doubt scrutinized the financial and related information provided by MGA.  To the extent Wachovia questioned or had concerns about the information provided, these documents may bear on MGA's credibility.  Similarly, MGA's auditors, Ernst & Young and Deloitte & Touche, had a duty to scrutinize the information provided to them by MGA or Mr. Larian.  If these financial institutions questioned the sufficiency or accuracy of any such information in the course of their assessment, then this would be relevant to MGA or Mr. Larian's credibility.
[62]   Exh. AA at 5 [July 2, 2007 Order].

07209/2339253.2

-79-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  claim has been asserted, a majority of federal courts permit pretrial discovery of

2  financial information about defendants without requiring the plaintiff to establish a

3  prima facie case on the issue of punitive damages.").  Here, MGA has freed MGA to

4  go to third parties because MGA's designee on MGA's net worth testified that MGA

5  did not calculate it, or MGA's good will, or the value of its intellectual property,

6  including Bratz.[63]

7            Ernst & Young and Deloitte & Touche served as MGA's auditors

8  during the time period of MGA's wrongful conduct.[64]  Request Nos. 2 and 3 seek

9  "all documents indicating or calculating MGA's net worth" and "all documents

10  indicating or calculating the value of MGA's intellectual property or goodwill."

11  Request No. 1 seeks information regarding MGA's annual audits.[65]  Further, Request

12  No. 8 seeks documents sufficient to identify MGA's other auditors since 1999.[66]

13  Mattel is entitled to know what other companies served as MGA's auditors so that

14  Mattel may obtain additional financial documents related to Bratz, Bratz related

15  products, and MGA's finances to include the value of MGA's net worth, goodwill

16  and intellectual property.[67]

17

18  ———————————

19  [63]    Exh. O [Tonnu Tr. 322:19-325:6; 326:17-327:6; 333:3-7; 334:12-15].

    [64]    Mattel's Request Nos. 1-3 to Ernst & Young and Deloitte & Touche seek

20  MGA financial documents, such as tax returns, payroll records, financial projections

21  and pro formas, as well as documents that show the value of MGA's net worth,

    intellectual property and goodwill.  Exhs. 7 and 8 to the Park Dec.

22  [65]    "All documents constituting or relating to MGA's annual audits, including

23  without limitation accounting records, audit programs, audit reports and drafts

    thereof, tax returns, work papers, worksheets, payroll records, financial projections,

24  pro formas and budgets, from the period beginning January 1, 1999 to the present."

25  [Requests No. 1].

    [66]    Exhs. 7 and 8 to the Park Dec.

26  [67]    MGA does not request that the Court quash Mattel's Request No. 7 to Ernst &

27  Young and Deloitte & Touche, which seeks documents sufficient to show their

    preservation, retention or destruction policies applicable to documents sought in

28            (footnote continued)

-80-

**B.**     **The Documents Sought Are Also Relevant to Mattel's**
          **Disgorgement Claim**

One remedy Mattel seeks is disgorgement of all amounts wrongfully obtained.  Mattel may also be entitled to damages for lost profits pursuant to its disgorgement theory of damages.  The disgorgement remedy also provides for the imposition of constructive trusts to recover the ill-gotten gains of MGA and Isaac Larian that have been transferred to other parties.  For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA and Isaac Larian, regardless of the manner in which it was transferred.[68]  Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian for which there was no compensation during the period of the alleged wrongful conduct.

It is undisputed that disgorgement is remedy for Mattel's claims against MGA and Larian, including copyright infringement and trade secret misappropriation.  § 17 U.S.C. 504(b) and E. Bassett Co. v. Revlon, Inc., 435 F.2d 656 (2d Cir. 1970) (copyright infringement); 4 Callmann, Unfair Competition and Monopolies § 14.45 (4th ed.) and Clark v. Bunker, 453 F.2d 1006, 1011 (9th Cir. 1972) (trades secret misappropriation).  The scope of the disgorgement remedy is set forth in two recent California Supreme Court decisions.  See Kraus v. Trinity Management Servs., Inc., 23 Cal. 4th 116 (2000); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003).  The court indicated that:

> "disgorgement" is a broader remedy than restitution. . . . [A]n order for disgorgement "may compel a defendant to surrender *all* money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those

Mattel's other requests to these auditors.  MGA has, therefore, conceded that Mattel is entitled to these documents.

[68]     Exh. B to the Corey Dec [Second Amended Answer and Counterclaims] .

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    persons.  It has also been used to refer to surrender of *all*
2    profits earned as a result of an unfair business practice
     regardless of whether those profits represent money taken
     directly from persons who were victims of the unfair
3    practice."

4    Korea Supply, 29 Cal. 4th at 1145 (quoting Kraus, 23 Cal. 4th at 127) (emphasis

5    added).  Moreover, an important part of disgorgement is the imposition of a

6    constructive trust to recover ill-gotten gains that have been transferred to others by

7    the defendant.  A constructive trust is intended to prevent unjust enrichment, with

8    equity compelling the restoration to another of property to which the holder thereof

9    is not justly entitled.  Taylor v. Polackwich, 145 Cal. App. 3d 1014, 1022 (1983);

10   Cal. Civ. Code §§ 2223, 2224.  See also Weiss v. Marchus, 51 Cal. App. 3d 590,

11   600 (1975) (constructive trust may be imposed in case of fraud, mishandling, or

12   almost any case of wrongful acquisition or detention of property to which another is

13   entitled).  When personal property is in dispute, the legislature has allowed plaintiffs

14   to invoke the remedy of constructive trust.  Cal Civ. Code §§ 2223, 2224. To create

15   a constructive or involuntary trust only three conditions are necessary:  existence of

16   a res, i.e. property or some interest in property, plaintiff's right to that res and

17   defendant's gain of the res by fraud, accident, mistake, undue influence, violation of

18   the trust or other wrongful act.  Kraus v. Willow Park Public Golf Course, 140 Cal.

19   Rptr. 744, 73 Cal. App. 3d 354 (1977); see Cramer v. Biddison, 65 Cal. Rptr. 624,

20   257 Cal. App. 2d 720 (1968).  See Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1067

21   (1998) (constructive trust); Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445,

22   454-55 (1997) (equitable lien is proper if unjust enrichment and detrimental reliance

23   are implicated)

24        Mattel needs the documents discussed above to prove the amount the

25   defendants must disgorge.  Housing Rights Center v. Sterling, 2005 WL 3320739,

26   *3 (C.D. Cal. 2005) (finding financial information relevant to disgorgement of

27   profits claim).  Money that properly belonged to Mattel was transferred from MGA

28   or Isaac Larian to an entity controlled by them.  Mattel should be able to understand

how that money was used because MGA and Isaac Larian have no right to whatever additional gains realized with Mattel's money.  See id.  Rather, the right to those additional gains vests solely in Mattel.  Thus far, MGA and Isaac Larian have produced no documents from which Mattel may ascertain the amount of any transfer, much less any gain realized.  Nor have they agreed to produce any such documents.

### C.      Mattel Seeks Documents to Prepare Its Defenses to MGA's Counter Claims

Mattel also seeks documents relevant to MGA's claims (A point all but ignored in the Motion to Quash).  MGA accused Mattel of false designation of origin, unfair competition, dilution, and unjust enrichment, and MGA seeks "general and actual damages ... excepted to reach or exceed $10 million," "disgorgement of all profits derived by Mattel," and "punitive and exemplary damages."[69]  Mattel is entitled to the requested documents so that it can effectively cross-exam MGA's witnesses about the accuracy of MGA's damages claims against Mattel.  Mattel is entitled to have adequate information available to it to permit Mattel to defend against and disprove MGA's claims and damages theories.  For example, to the extent that MGA asserts that it measures damages by its lost profits, Mattel is entitled to know what those profits are and intervening factors could have limited MGA profits (e.g., mismanagement, insufficient capital, inaccurate or untimely forecasting and manufacturing, election to minimize advertising).[70]

---

[69]    Exh. A to the Corey Dec. [MGA Complaint, Prayer for Relief].
[70]    Mattel's Request Nos. 4-5 seek documents relating to Bratz and documents relating to this consolidated proceeding.  Exhs. 7 and 8 to the Park Dec.  MGA does not dispute the relevance of documents relating to Bratz or documents related to this action.  See generally Section IV of MGA's Separate Statement filed in support of MGA's Motion to Quash.

-83-

**D.** **The Evidence of Payments to Others is Relevant to Mattel's Commercial Bribery Claim and Evidence of Bias**

As MGA recognizes, the banking and accounting records sought by Mattel are also relevant because they bear directly on Mattel's commercial bribery claim.  Contrary to MGA's assertion, their relevance goes beyond simply payments to Carter Bryant.  The banking and accounting records sought by Mattel are also relevant because they bear directly on Mattel's commercial bribery claim.  They may also lead to evidence of bias and influence on potential witnesses.  Such concerns are not theoretical, as evidence demonstrates that MGA was paying Mr. Bryant while it knew he was a Mattel employee.  Mattel is entitled to seek documents that would uncover additional information about MGA and Larian's attempts to bribe Mr. Bryant *or other Mattel employees or vendors*.  As discussed above, contrary to MGA and Larian's argument that the bribery issue is limited to Mr. Bryant, Mattel is entitled to seek information related to their bribery or attempted bribery of other personnel.  Indeed, Veronica Marlow, a third-party witness who long worked directly with Bryant and MGA, recently testified that she knew of at least three other Mattel employees who *for years* worked on Bratz *while they were employed by Mattel*.[71]

Furthermore, payments by MGA or any other defendant to or on behalf of goes to bias.  Evidence of such bias is relevant and discoverable, especially when it relates to key witnesses.  See United States v. Abel, 469 U.S. 45, 50-51 (1984); see also Wright & Miller, Federal Practice & Procedure: Federal Rules of Evidence § 6095 (bias is a "particularly favored basis for attacking credibility," and

_____

[71]  Exh. S at 288:8-289:21, 306:8-25; 307:8-308:1; 363:15-21[Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007] to the Declaration of Jon Corey ("Corey Dec.").

07209/2339253.2

-84-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  "circumstantial evidence of bias" may include evidence of the "payment of bribes or

2  fees").

3  **II.     MGA HAS NOT SHOWN THAT THE DOCUMENTS HAVE BEEN**

4  **PRODUCED OR ARE OTHERWISE DUPLICATIVE**

5        **A.     That Documents "May" Be Available From Another Source Is Not**

6             **Sufficient**

7             MGA and Larian argue that the subpoenas should be quashed because

8  Mattel requested similar documents from the parties, and MGA and Larian are in

9  possession of some responsive documents.  These arguments are insufficient

10  grounds to quash the subpoenas.

11             Even if the document requests served on the third parties were identical

12  to the requests served on MGA and Larian, there has been no showing--nor is one

13  conceivable--that the MGA and Larian have all of the same documents as are in the

14  possession, custody, or control of the third parties.  (For example, there is no reason

15  to believe that MGA would have all of the banking records maintained by Wells

16  Fargo.  Banks are notoriously thorough in their record keeping, and would have a

17  much more detailed paper trail concerning activity in MGA's account than would

18  MGA.)  Without assurance that MGA and Larian have all of the same documents as

19  Wells Fargo, this objection is meritless.  In State Farm Mutual Auto Ins. Co. v.

20  Accurate Medical, P.C., the district court rejected a similar argument.  2007 WL

21  2993840 (E.D.N.Y. Oct. 10, 2007) (denying motion to quash).  There, the plaintiff

22  sought documents regarding third-party financial relationships with the defendant.

23  In response to the defendant's argument that such documents were available from

24  itself, the court found that it critical that "it is unlikely that the moving defendants

25  would, in fact, possess all the documents sought by plaintiff in the subpoenas."  Id.

26  at *1.

27

28

07209/2339253.2

-85-
MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    Because documents may be available from other sources not grounds to

2  refuse production.[72] "[A] person may not avoid a subpoena by saying that the

3  evidence sought from him is obtainable from another." <u>Covey Oil Co. v.</u>

4  <u>Continental Oil Co.</u>, 340 F.2d 993, 998 (10th Cir. 1965) (overruled on other

5  grounds); <u>State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.</u>, 2007 WL

6  2993840, at *1 (E.D.N.Y. 2007) (same); <u>In re Bergeson</u>, 112 F.R.D. 692, 695 (D.

7  Mont. 1986) (conclusory assertions that documents sought are available from others

8  more economically "does not constitute a showing of unreasonableness or

9  oppressiveness."); <u>see also</u> <u>Plant Genetic Systems, N.V. v. Northrup King Co., Inc.</u>,

10  6 F. Supp. 2d 859, 861-862 (E.D. Mo. 1998) (third party subpoena proper where

11  information sought pertained to a central issue in the underlying claim, it was not

12  burdensome in light of plaintiff's diligent efforts to obtain the information from

13  defendant, and the nonparty had signed protective order prohibiting disclosed

14  information from being seen by plaintiffs counsel or nonparty's competitors).

15    As held by the <u>State Farm</u> court, "nothing in the Federal Rules of Civil

16  Procedure requires a litigant to rely solely on discovery obtained from an adversary

17  instead of utilizing subpoenas." <u>Id</u>. at *1.

18    Finally, as discussed below, even if MGA and Larian had these

19  documents, they have not produced them.

20    **B.  <u>Neither Larian Nor MGA Have Produced The Majority of the</u>**

21    **<u>Documents Sought</u>**

22    MGA argues that the subpoenas should be quashed because the

23  information sought is available from the parties.  However, MGA neglects to

24  mention that Larian has failed to produce responsive documents--including

25  documents he had previously promised to produce--until just last week pursuant to

26

27  ────────────

28  [72]  <u>See</u> Motion at 11:5-15.

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

07209/2339253.2

1  another Court order,[73] and MGA has not produced most of the documents sought by
2  the subpoenas

3        Although MGA claims to have produced many responsive documents,
4  it stops short of claiming that it has produced all of the documents sought by the
5  subpoenas.  Moreover, the list of documents MGA claims to have produced is
6  notable for its lack of specificity.  Indeed, MGA's list confirms that MGA has not
7  produced most of the documents requested by the third-party subpoenas.
8  Conspicuously missing from the list--and MGA's production--are:[74]

9        • Documents related to a determination of Isaac Larian's net worth.
10        • Documents stating the value of MGA's intellectual property and good
11  will.  (other than Little Tykes intellectual property).
12        • MGA's tax records.
13        • Wells Fargo banking records for MGA.
14        • Documents related to payments to third-parties by MGA, Larian, or
15  the Larian trusts (such as to Bryant and other Mattel employees and vendors)
16        • Consumer and marketing research regarding Bratz and several MGA
17  products underlying MGA's claims against Mattel.
18        • Documents from the Larian v. Larian litigation.
19        • Documents related to the Larian trusts, including any documents
20  showing Isaac Larian's interest in, payments received, or transfers to those trusts.
21        • Documents regarding the 1999-2000 and 2006 loans MGA received
22  from Wachovia, including what documents MGA and Larian gave to Wachovia to
23  justify the loans.
24        Furthermore, even as to those documents MGA claims to have
25  produced, many of the descriptions are vague, inaccurate, or misleading:

[73]  Corey Dec., ¶ 12.
[74]  Id., at ¶ 14.

07209/2339253.2

1    • It is unclear what MGA means by its claim to have produced "annual

2  reports."  MGA has produced audited financial statements which Ms. Tonnu

3  testified could not be used to calculate net worth.

4    • The reference to "various MGA financial reports" is hopelessly vague

5  and tells the Court and Mattel nothing about what MGA claims was actually

6  produced.

7    • MGA's claim to have produced documents related to "royalty

8  payments" to Carter Bryant does not encompass all payments to Mr. Bryant, or any

9  to other Mattel employees and vendors.

10    • The "Documents showing MGA's sales, returns and costs of good

11  sold" "promotional, advertising and media expenditures" only relate to Bratz.[75]

12  They do not relate to MGA's or Larian's net worth directly, or to the value of its

13  good will or intellectual property.

14    • The "Documents showing MGA's amortization and depreciation" is

15  only for unspecified "certain capital assets and expenditures," and they are no more

16  duplicative of Mattel's requests than the Bratz specific cost information.

17    • The "monthly general ledger" documents do not appear to be general

18  ledger entries at all, but in fact are much more generic trial balances.  Moreover,

19  there information produced appears to relate only to some account numbers,

20  omitting many others.  Further, it appears that no information has been produced for

21  the years 2001 and 2004.[76]

22    In short, MGA and Larian cannot refuse to produce for months, then

23  object when Mattel seeks documents from others.  Now, with days left in Phase One

24  discovery, Mattel does not have the luxury of waiting for MGA and Larian to get

25  around to producing.  Mattel needs documents to enforce its claims and to defend

26  _____

27  [75] <u>Id.</u>, ¶ 15.

28  [76] <u>Id.</u>, ¶ 16.

07209/2339253.2

-88-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  against MGA's, and any further delay will prejudice Mattel's ability to adequately

2  prepare for trial.

3  **C.**   **MGA and Larian's Illusory Promises to Produce Do Not Render**

4  **the Subpoenas Duplicative**

5  Conceding that neither it nor Larian have in fact produced all

6  documents that are being sought from the third parties, MGA argues that the

7  subpoenas are unreasonably duplicative because they ***might*** produce additional

8  documents in the future.[77]  Notably absent from their hollow promise is any specific

9  date by when the documents will be produced, or even a list of the specific

10  documents to be produced or the specific categories of document requests to which

11  they respond.  This "wait and see" and "trust me" approach, unsurprisingly, finds no

12  support in the case law and is an inadequate basis to grant the Motion to Quash.  It

13  also is premised on a poor track record.  Neither MGA or Larian have lived up to

14  their representations about producing relevant documents in the past.  Thus, it is not

15  unreasonable to have requested these highly relevant documents from the third-

16  parties.

17  **D.**   **Mattel is Entitled to the Requested Documents Because of**

18  **Legitimate Concerns of Spoliation and Document Tampering**

19  Mattel cannot rely on MGA and Larian to actually produce all of the

20  responsive documents in their possession, custody and control, or that they will

21  produce it in their original condition.  At her deposition on December 28, 2007,

22  Veronica Marlow, a third-party witness who long worked directly with Bryant and

23  MGA, testified that she knew of at least three Mattel employees who *for years*

24  worked on Bratz *while they were employed by Mattel*.[78]  This was a shocking

25

26  _____

27  [77]  Motion at 5:1-7.
    [78]  Exh. S at 288:8-289:21, 306:8-25; 307:8-308:1; 363:15-21[Deposition

28  Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007].

1  revelation.  Neither MGA nor Bryant had disclosed this information, despite

2  repeated Court Orders and despite the fact that at least one of these individuals was

3  a co-worker of Bryant's at Mattel.  To the contrary, both Bryant and MGA gave flat

4  denials under oath that there was any other Mattel employees knowingly involved.[79]

5  Yet, by defendants' reasoning here, the Court and Mattel should have been denied

6  Ms. Marlow's plainly relevant evidence because it purportedly duplicated discovery

7  requested of defendants.  In fact, defendants made that very argument to Judge

8  Larson is resisting producing Ms. Marlow for deposition in the first place, to no

9  avail.

10            In the past, MGA has produced requested documents only *after* a third-

11  party's production exposed MGA's previous failures to produce.  What documents

12  MGA has produced has been the result of a protracted discovery process in which

13  MGA has demonstrated a pattern of failing to produce relevant, critical, and

14  incriminating, documents until faced with compulsion by the Court or after a third

15  party has already produced them.  For example, in September 2006, a third-party

16  witness, Steven Linker, produced Bratz design drawings and Bratz product

17  development documents.[80]  Linker's production included a multitude of Bratz

18  materials he had received from or exchanged with MGA and Bryant before Bryant

19  left Mattel.[81]  Neither MGA nor Bryant had produced many of them, however.

20  Notably, before Linker's testimony, MGA had produced an email relating to Bratz

21  development that Linker's design partner, Liz Hogan, had sent to MGA on

22  October 23, 2000 -- a date which was conveniently *after* Bryant left Mattel.  MGA,

23  however, had not produced the earlier emails—those pre-dating Bryant's last day of

---

25  [79]  Exh. W at 286:25-287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")];

26  Exh. O at 301:2-17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.")]; Exh. X at 64-70
   [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

27  [80]  Corey Dec., ¶ 17; Exhs. F, G, and H.

28  [81]  Corey Dec., ¶ 18; Exh. H.

-90-

1  employment at Mattel—that Hogan had exchanged with MGA on that very same

2  subject.  Mattel obtained those only after Linker produced them pursuant to

3  subpoena in September 2006.[82]  Thus, it has often been the case in this litigation that

4  MGA has produced relevant and responsive documents only after a third-party has

5  already done so.

6         Furthermore, Mattel must guard against the possibility of further

7  spoliation of evidence and/or document tampering.  Unfortunately, these concerns

8  are not merely speculative or theoretical.  It has already occurred.  For example,

9  former Mattel and present MGA employee Mr. Bryant was ordered--after initial

10  delay and refusal--to produce a computer for inspection in this matter.  Mattel

11  learned that a software program called "Evidence Eliminator" had been installed and

12  run on that hard drive.[83]  In addition, there has been credible evidence adduced in

13  this action that MGA has tampered with documents by altering their creation dates,

14  as indicated by fax headers (which were deleted).  The Court responded to the

15  concern of spoliation, and specifically the alteration of the creation date of the

16  documents described above, in an August 9, 2006 order.[84]  Although it did not find

17  the evidence rose to the level of requiring the appointment of a Court appointed

18  expert witness at the time.  It held, "There are serious questions concerning the

19  handling of these critical documents" that caused the Court "much concern about

20  whether the truth seeking functions of the adversarial system have been

21  fundamentally compromised in this case."  Id. at 11:10-13.  The Court also stressed

22  its "concern" over MGA's "handling of documents in its possession."[85]  Clearly,

23  therefore, Mattel is within its rights to obtain documents from third-parties even if

24  also in the possession of MGA and Larian.

25  _____

26  [82]  Corey Dec., ¶ 18; Exhs. G and I.
   [83]  Exh. U to theCorey Dec. [Irmen Tr. 285:15-287:6].
27  [84]  Exh. N to the Corey Dec. [Court's August 9, 2006 Order at 9:4-18:14 ].
   [85]  Id. at 17:23-26.
28

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

07209/2339253.2

1    Given the unavailability of this information from both MGA, Larian,

2 and other sources, MGA's efforts to thwart Mattel's discovery requests seeking this

3 information thus far, and the very real concern over spoliation and tampering, Mattel

4 should not be denied this discovery from third parties.[86]

5 **III.    MGA HAS NOT SHOWN UNDUE BURDEN**

6    MGA and Larian fail to show that the requests are so burdensome to

7 justify quashing the subpoenas.  A party claiming that production of requested

8 documents is unduly burdensome bears the burden of proving up their objection.

9 Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984)

10 (reversing district court's decision quashing subpoena).  The party cannot rest on

11 conclusory assertions.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966)

12 (reversing the quashing of a subpoena because of lack of specific evidence of

13 burden).  "The party must provide specific and compelling proof that the burden is

14 undue."  JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25

15 (Fed. Cl. Ct. 2007) (denying motion to quash).

16    Here, MGA and Isaac Larian offer no evidence--such as a declaration

17 or testimony--regarding the time, cost, or burden involved in responding to Mattel's

18 subpoenas.  Nor could they.  "The burden of showing that a subpoena is

19

20

21

22    [86]   MGA has created a chart that purportedly shows overlap between Mattel's
document requests to the financial institutions and Mattel's documents requests to

23 MGA.  See Exh. 28 to the Park Dec.  MGA cites to three examples of the overlap
between Mattel's document requests and the subpoenas to the third-parties—the

24 value of MGA's net worth, goodwill and intellectual property.  See Motion at

25 17:6-10.  As detailed above, the listing of documents that MGA sets forth in its
Motion do not contain documents showing the value of MGA's net worth, goodwill

26 or intellectual property, and Lisa Tonnu testified as to the unavailability of these

27 documents from MGA.  Therefore, MGA's argument in this regard contradicts its
own designee.

28

1   unreasonable and oppressive *is upon the party to whom it is directed*." <u>Goodman v.</u>

2   <u>U.S.</u>, 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added).

3          While MGA and Larian make conclusory claims, the subpoenaed

4   parties do not.  Indeed, some have already collected and stand ready to produce

5   documents.  For example, Ernst & Young has searched for and gathered 60,000

6   pages of documents in response to Mattel's subpoena.[87]  Notably, the only mention

7   of burden during Mattel's meet and confer discussions with Ernst & Young related

8   to the burden upon Mattel of incurring substantial copying costs—<u>not</u> burden upon

9   Ernst & Young.[88]

10          In addition, in a further effort to reduce any inconvenience to the third-

11  parties, Mattel will reimburse the third parties for the costs incurred in copying the

12  responsive documents.[89]  However, even if Mattel was unwilling to pay for the third

13  parties' copying costs (which is not an issue here since Mattel will reimburse them),

14  and even if the third parties did not already have separated case files, a claim that

15  compliance with Mattel's requests "would necessitate the examination of large

16  quantities of documents, requiring a great deal of time and expense . . . is not alone a

17  sufficient reason for refusing discovery which is otherwise appropriate. . . . "

18  <u>American Optical Co.</u>, 39 F.R.D. 580, 586-587 (N.D. Cal. 1966) (denying motion to

19  quash where documents sought covered a twelve year period).  And, in an effort to

20  further reduce burden upon the third-parties, Mattel has offered to have its own

21  paralegal and counsel inspect documents gathered thus far by the third-party

22  financial institutions with an agreement that the inspection will not result in

23

24

25

26

27  [87]  Exh. C [Letter from Jon Corey to John Baran dated December 20, 2007].
    [88]  <u>Id.</u>
28  [89]  <u>Id.</u>

1  waiver.[90]  Given these concessions and the applicable case law, the raw assertions of

2  undue burden are meritless.

3  **IV.    THE SUBPOENAS ARE NOT OVERBROAD**

4              MGA and Larian's assertion that the Mattel's requests are abusively

5  drawn or unduly overbroad is also meritless given that five of Mattel's document

6  requests are directed to financial institutions.  Financial institutions generate and

7  retain precisely types of documents that are responsive to Mattel's requests.

8  Therefore, MGA's objections of overbreadth and harassment are baseless.

9              Defendants mistakenly rely on Ocean Atlantic Woodland Corp. v. DRH

10  Cambridge Homes, Inc., 292 F. Supp. 2d 923 (N.D. Ill. 2003), to argue that broad

11  financial discovery on nonparties is necessarily unduly burdensome.  However, the

12  Ocean Atlantic Court did not hold that such discovery is always unwarranted; rather,

13  it must be tied to the claims and defenses at issue.  There, the plaintiff had acquired

14  a copyright in two real estate development plans for a parcel of land, but was unable

15  to develop the parcel because it failed to close on the sale of the land within the

16  required time.  The plaintiff sued the developer who later acquired the rights to

17  develop the land and who did it using the copyrighted plans.  The plaintiff served

18  document requests seeking "all aspects of [defendant's] financial activities,

19  including costs sales, and profits on all its developments and all of its home sales

20  throughout the country since 1997."  Id. at 925.  The court found that these requests

21  were overbroad, because on the facts of that case, they were not relevant to the

22  claims and defenses at issue.  Specifically, the court found that  because the measure

23  of damages was limited to either (1) the amount plaintiff paid to acquire the

24  development plans at issue, or (2) the value of use or the saved acquisition costs to

25  defendant who used the plans, broad financial discovery was not warranted.  Id. at

26  _____

27  [90]   See Letter from Jon Corey to John Baran dated December 20, 2007, attached

28  to the Corey Dec., Exh. C.

07209/2339253.2

-94-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    928.  In contrast, here, unlike <u>Ocean Atlantic</u>, the measure of damages in not so

2    limited, and includes disgorgement and punitive damages.

3              Thus, broad discovery into MGA and Larian's finances, including net

4    worth and asset transfers, is within the bounds of discovery as the Discovery Master

5    and Judge Larson have held.  Indeed, in <u>Southern California Housing Rights</u>

6    <u>Center v. Krug</u>, 2006 WL 4122148 (C.D. Cal.), a case relied on by MGA, the court

7    ordered that broad financial discovery concerning defendant's net worth was

8    relevant to punitive damages, and ordered defendant to produce documents relating

9    to its net worth and current assets and/or liabilities, including identification and

10   value of all properties and other assets owned in whole or in part, profit and loss

11   statements from 2004 to the present, as well as "financial statements and balance

12   sheets that relate to assets, inventories, liabilities, gross and net income, and the

13   amount of any undistributed business profits."  <u>Id.</u> at *1-2.

14

15              **4.    MGA's Statement of Position Regarding Requests 1, 2, 6-8,**

16                   **12-16, and 18 to Moss Adams**

17        Mattel has subpoenaed five different entities that perform financial services

18   for MGA or Mr. Larian seeking virtually every scrap of paper and byte of data

19   pertaining to MGA and Mr. Larian's finances over the last nine years.  The instant

20   requests are an example of these overbroad requests.  There is no justification for

21   issuing such expansive subpoenas, with requests such as these which cover largely

22   irrelevant material, particularly since whatever small amount of relevant information

23   may be covered by the subpoenas has already been requested from the parties.

24        When a party subpoenas an adverse party's financial information, courts are

25   especially vigilant in limiting the subpoena's scope such that irrelevant financial

26   information is not produced.  See *S. Cal. Hous Rights Ctr. v. Krug*, Case No. CV 06-

27   1420 SJO (JCx), 2006 U.S. Dist. LEXIS 65330 (C.D. Cal. Sept. 2006) (denying

28   request for production of tax return because plaintiff could not show a compelling

07209/2339253.2

-95-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  need for the return where less intrusive means could be used to establish defendant's

2  net worth); *In re Ashworth, Inc. Sec. Litig.*, Civil No. 99cv0121 L (JAH), 2002 U.S.

3  Dist. LEXIS 27991, at *20 (S.D. Cal. May 10, 2002). In *Ashworth*, for example, the

4  district court quashed subpoenas issued to the defendant's financial analysts and

5  investment companies as "overwhelmingly broad in category and content" because

6  "[a]s they are phrased, the requests appear, in this Court's view, to seek all

7  documents in the third party financial analysts' possession that refer to or mention

8  Ashworth in any shape or form." 2002 U.S. Dist. LEXIS 27991, at *20.

9       Mattel's subpoena to Moss Adams is unrestrained in scope. For example,

10  Mattel's subpoena requests all documents about either MGA or Isaac Larian that

11  Moss Adams has in its possession from the last nine years. (Park Decl., Ex. 12

12  (Moss Adams Subpoena) at Request 1 ("All documents relating to MGA...from the

13  period beginning January 1, 1999 to the present."); *see also id.* at Request 2 ("All

14  documents relating to Isaac Larian...from the period beginning January 1, 1999 to

15  the present.").) Mattel has also requested that Moss Adams produce documents

16  showing all of its valuation calculations performed for both MGA and Isaac Larian

17  as well as documents showing MGA's and Isaac Larian's disbursements-regardless

18  of when these calculations or disbursements took place. (Park Decl., Ex. 12 (Moss

19  Adams Subpoena) at Requests 6-8 and 12-16.) Finally, Mattel has requested that

20  Moss Adams produce documents identifying other lenders, auditors or accountants

21  of MGA or Mr. Larian, presumably because Mattel wants to serve them with similar

22  subpoenas. (Park Decl., Ex. 12 (Moss Adams Subpoena) at Request 18.)

23       Mattel argues that it needs this financial information because the information

24  is relevant to damages, Mattel's commercial bribery allegations, and to counter a

25  statement Mr. Larian made in a prior litigation that, as of 2007, he could not recall

26  whether he received a bonus in 2003 because MGA's owners invested the company's

27  profits back into the company. Such inchoate assertions of relevance are

28  insufficient to justify the type of unfettered access to MGA and Mr. Larian's

1  financial information that Mattel seeks.  See, e.g., Ocean Atl. Woodland Corp. v.

2  DRH Cambridge Homes, Inc., 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003).

3       In Ocean Atl., the copyright owner of real estate development plans sued a

4  developer for infringement with respect to one of its development sites.  The

5  plaintiffs "interrogatories and production requests [sought] all of the defendants'

6  financial records relating to their entire business and professional activities, on all

7  construction projects throughout the country, beginning from 1997 through present

8  date."  Id. at 926.  Posing the question "can anything remotely relevant to the claims

9  and defenses-or more pointedly to damages-arising from use of the Development

10 Plans at the Liberty Grove development site justify this massive body of discovery,"

11 the court answered, *"We hardly think so."*  Id. (emphasis added).  "This court

12 perceives an improper motive and purpose to this broad discovery.  We cannot

13 conceive of any relevance to the claims or defenses asserted in this copyright

14 infringement case, or of any legitimate purpose of this massive discovery demand.

15 The production of virtually the entirety of defendants' business books and records

16 relating to all of its projects could not lead to any admissible evidence."  Id. at 927.

17      The Discovery Master should reach the same conclusion in this case.  Mattel's

18 alleged damages in this case are tied to the particular products at issue, not MGA or

19 Mr. Larian's entire financial history.  Documents such as all of MGA and

20 Mr. Larian's tax returns, account statements and expense records, or the audit files

21 and loan documents for MGA, are neither relevant to damages in this case nor

22 reasonably calculated to lead to the discovery of admissible evidence.  See Fed. R.

23 Civ. P. 26(b)(1).  Indeed, the Discovery Master in this case already rejected an

24 attempt by Mattel to obtain Carter Bryant's tax returns.  (Park Decl., Ex. 27 (1/25/07

25 Order) at 14-15.)

26      Similarly, Mattel's assertion that the requested financial information is

27 relevant to its commercial bribery allegations is specious.  Mattel's bribery

28 allegations consist of nothing more than an assertion that MGA financed Bryant to

07209/2339253.2

-97-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  develop Bratz while he was still employed at Mattel.  Mattel's Second Am.

2  Answer & Counterclaim at 37 (¶ 33), 59 (¶ 93(d)), 74 01165).  Thus, the only

3  financial documents that could possibly be relevant to this allegation are documents

4  showing any payments by MGA to Bryant during the time he was a Mattel

5  employee.

6        Mattel's claim that it needs all of Mr. Larian's financial records to counter his

7  statement that he did not think he received a bonus in 2003 because MGA's owners

8  invested the company's profits back into MGA is nothing more than an absurd

9  fishing expedition.  See *Aliotti v. Senora*, 217 F.R.D. 496, 498 (N.D. Cal. 2003)

10  (rejecting request for party-opponent's tax returns for impeachment purposes

11  because request was "the kind of 'fishing expedition' that would undermine the

12  public policy against unnecessary public disclosure of tax returns") (quotation marks

13  and citations omitted).  Setting aside the issue of relevance, Mattel does not need to

14  comb through nine years' worth of Mr. Larian's financial records to determine

15  whether he received a bonus from MGA in 2003.  That information is obtainable

16  from MGA.

17        In addition to seeking irrelevant information, these requests seek information

18  that is already covered by one or more of the more than 2,300 document requests

19  that Mattel has served on the MGA Defendants.  (Park Decl., Ex. 28 at 50-67 (chart

20  comparing Mattel's requests to Non-Parties with Mattel's document requests to

21  MGA Defendants).)

22        In addition, numerous documents requested pursuant to these requests are

23  duplicative of documents that the MGA Defendants have already produced.  See

24  Fed. R. Civ. P. 26(b)(2)(C) (limiting discovery if it "is unreasonably cumulative or

25  duplicative, or can be obtained from some other source that is more convenient, less

26  burdensome, or less expensive").  The financial documents produced by the MGA

27  Defendants to date include:

28

07209/2339253.2

-98-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1         •    Audited and unaudited quarterly and annual profit and loss statements;

2

3         •    Audited and unaudited quarterly and annual statements;

4         •    Annual reports;

5         •    Various MGA financial reports;

6         •    Various financial documents relating to Veronica Marlow;

7         •    Documents showing royalty payments to Carter Bryant;

8

9         •    Documents showing MGA's sales, returns and costs of good sold for each month, by SKU, since 2001;

10

11         •    Documents showing MGA's promotional, advertising and media expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

12

13         •    Documents showing MGA's amortization and depreciation of certain capital assets and expenditures;

14

15         •    Documents showing MGA's monthly general ledger entries aggregated by account, including income and expense accounts, reserves and liabilities; and

16

17         •    Documents sufficient to explicate MGA's various accounts as presently and historically maintained in MGA's books and records, as well as various nomenclature assigned to items, products, brands, sub-brands, and profit centers.

18

19

20  (Park Decl., ¶ 3.)

21        In view of the many requests for financial information that Mattel has served

22  on the MGA Defendants, as well as the ample financial documents that the MGA

23  Defendants have produced or will be producing, there is no basis for Mattel to

24  obtain the broad financial information asked for in these requests.

25        Mattel has no legitimate need to discover the entirety of MGA and

26  Mr. Larian's financial records over the last nine years.  Nor is there any reason to

27  unduly burden non-parties with these expansive requests for such records when

28

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  those materials either are irrelevant or are properly the subject of party discovery.

2  Accordingly, the Discovery Master should bar Mattel from seeking information

3  pursuant to these requests from Moss Adams.

4  **Mattel's Response:**

5      As the party moving to quash Mattel's subpoenas, MGA bears the

6  initial burden of persuasion to demonstrate that Mattel's document requests are

7  improper.  See Green v. Baca, 226 F.R.D. 624, 653 (C.D. Cal. 2005).  The burden

8  on the party moving to quash a subpoena is a "heavy one."  Heat and Control, Inc. v.

9  Hester Industries, Inc., 785 F.2d 1017, 1024-25 (Fed. Cir. 1986) (noting that "the

10  factors required to be balanced by the trial court in determining the propriety of a

11  subpoena are the relevance of the discovery sought, the requesting party's need, and

12  the potential hardship to the party subject to the subpoena.").  Here, MGA and

13  Larian have failed to meet their burden.

14  **I.    THE DOCUMENTS SOUGHT ARE RELEVANT TO THE CLAIMS**

15      **AND DEFENSES AT ISSUE**

16      MGA argues that the documents sought from Moss Adams are not

17  relevant to the claims and defenses at issue.  In so arguing, MGA mischaracterizes

18  Mattel's stated need for the documents, artificially limiting it to two issues:

19  (1) Mattel's commercial bribery claim; and (2) to refute Larian's statement he did not

20  receive a bonus in 2003.  As shown in Mattel's Opposition and below, the

21  documents sought from Moss Adams are relevant to many more issues in dispute,

22  including Mattel's disgorgement and punitive damages claims, as well as to

23  ascertain MGA and Larian's net worth, and the value of MGA's intellectual property

24  and good will.

25      **A.    Documents Related To The Timing of The Creation of Bratz Are**

26      **Extremely Relevant**

27      Requests that do not explicitly refer to Bratz are nonetheless highly

28  relevant to it.  A central dispute in this litigation is the timing of the creation of

-100-

07209/2339253.2

1    Bratz, including when MGA and Mr. Bryant began developing Bratz.[91]  It is

2    undisputed that during certain time periods Mr. Bryant was an employee of Mattel,

3    and that any designs or development work he did while a Mattel employee are the

4    property of Mattel.  MGA and Larian contend that Bratz was developed at times

5    when Mr. Bryant was not employed by Mattel.

6            Many of the requests seek documents that are probative of when Bratz

7    was conceived and developed.  For example, Request Nos. 13-16 of the Moss

8    Adams subpoena seek documents related to payments to people working on Bratz,

9    including Mr. Bryant and other current and former Mattel employees.[92]  Mattel is

10   certainly not required to take MGA and Larian's word that Mr. Bryant was the only

11   Mattel employee they were bribing.  To ascertain the full scope of MGA's theft of

12   Mattel's intellectual property, Mattel is entitled to discovery as to all other Mattel

13   employees who received payments from MGA and/or Larian during their

14   employment with Mattel.  Moreover, payments to Mattel vendors will also be

15   probative of MGA's misappropriation of Mattel's intellectual property, and the

16   Mattel employees who may have been complicit in the wrongdoing.

17

18       **B.    Mattel is Entitled to Documents Showing or Related to MGA's and**

19              **Larian's Net Worth**

20            Documents relevant to MGA and Isaac Larian's net worth, including

21   the value of MGA's good will and intellectual property, are necessary for Mattel's

22   experts to determine the damages that accrued to Mattel as a result of MGA's

23   infringement of Mattel's copyrights, and for punitive damages and to defend against

24

25   —————————————

26   [91]   Exh. N, at 11:1-2 [Court's August 9, 2006 Order Denying Appointment of
     Expert Witnesses] ("At its heart, this case asks the question:  Who owns the rights to
27   the Bratz dolls?"); Exh. Q, at 8:8-21 [Discovery Master's May 15, 2007 Order
     Granting Mattel's Motion to Compel].
28   [92]   Exh. 12 to the Park Dec.

07209/2339253.2

-101-
MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1   MGA's as yet unspecified damages.[93]  Both the Discovery Master and Judge Larson

2   have previously ruled that Mattel is entitled to evidence related to MGA's net worth:

3   "That net worth is generally the subject of expert testimony at trial -- a proposition

4   disputed by neither Mattel nor the Court -- does not render it an improper subject for

5   a Rule 30(b)(6).  Therefore, the Discovery Master's ruling on this issue is not

6   contrary to law."[94]  See, e.g., Hilao v. Estate of Marcos, 103 F.3d 767, 781-82 & n. 7

7   (9th Cir. 1996) (approved a jury's discretion to consider financial condition as one

8   relevant factor in awarding punitive damages); Southern California Housing Rights

9   Center v. Krug, 2006 WL 4122148, *4 (C.D. Cal. 2006) ("When a punitive damages

10  claim has been asserted, a majority of federal courts permit pretrial discovery of

11  financial information about defendants without requiring the plaintiff to establish a

12  prima facie case on the issue of punitive damages.").  Here, MGA has freed Mattel

13  to go to third parties because MGA's designee on MGA's net worth testified that

14

15

16

---

17   [93]   Another reason that the financial and loan documents sought by the third-
18   party subpoenas is relevant is because it bears on MGA and Larian's credibility.
19   Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc., 175 F.R.D. 646,
     650 (C.D. Cal. 1997) (information is relevant and discoverable if it relates to "the
20   credibility of any witness").  For example, Mattel's Request Nos. 1-5 and 9-10 in its
21   document subpoena to Wachovia seek information regarding the quality of the
     financial information provided by Isaac Larian to these financial institutions.  As a
22   lending institution considering whether to lend substantial sums of money to MGA,
23   Wachovia no doubt scrutinized the financial and related information provided by
     MGA.  To the extent Wachovia questioned or had concerns about the information
24   provided, these documents may bear on MGA's credibility.  Similarly, MGA's
25   auditors, Ernst & Young and Deloitte & Touche, had a duty to scrutinize the
     information provided to them by MGA or Mr. Larian.  If these financial institutions
26   questioned the sufficiency or accuracy of any such information in the course of their
27   assessment, then this would be relevant to MGA or Mr. Larian's credibility.
     [94]   Exh. AA at 5 [July 2, 2007 Order].
28

07209/2339253.2

-102-
MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  MGA did not calculate it, or MGA's good will, or the value of its intellectual

2  property, including Bratz.[95]

3          Moss Adams is Isaac Larian's tax accountant.[96]  As such, it possesses

4  documents highly relevant to Larian's net worth.  For example, Request Nos. 1

5  through 3 seek MGA, Isaac Larian, and Farhad Larian's accounting records, tax

6  returns, and related documents.  For another example, Request No. 1 seeks, "All

7  DOCUMENTS RELATING TO MGA, including without limitation accounting

8  records, tax returns and schedules (including without limitation Form 1040, Form

9  1099, Form 1120, Schedule E or Schedule K-1) and drafts thereof, work papers,

10  worksheets, payroll records, financial statements (audited and unaudited), pro

11  formas and budgets from the period beginning January 1, 1999 to the present."

12  Notably, the Court has recognized the relevance of the information in Moss Adams'

13  possession, having granted leave to Mattel to take the deposition of Moss Adams.[97]

14          Larian argues that these documents should not be produced because

15  "how Larian spent or invested his money" is "irrelevant to the party's claims and

16  defenses."[98]  That is exactly wrong.  Isaac Larian's investments are what make up his

17  net worth, a subject both the Discovery Master and Judge Larson found to be within

18  the bounds of discovery.  Further, for purposes of calculating net worth for punitive

19  damages, Mattel is entitled to add back what Larian spent during the period of

20  wrongdoing.  In other words, neither Isaac Larian or any other person can deflate net

21  worth by spending or transferring away their assets.

22

23

24

25    [95]  Exh. O [Tonnu Tr. 322:19-325:6; 326:17-327:6; 333:3-7; 334:12-15].

26    [96]  Motion at 14:10-11.

27    [97]  Exh. BB [December 7, 2007 Order].

     [98]  Motion at 20:3-9.

28

-103-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

C.     **The Documents Sought Are Also Relevant to Mattel's Disgorgement Claim**

One remedy Mattel seeks is disgorgement of all amounts wrongfully obtained.  Mattel may also be entitled to damages for lost profits pursuant to its disgorgement theory of damages.  The disgorgement remedy also provides for the imposition of constructive trusts to recover the ill-gotten gains of MGA and Isaac Larian that have been transferred to other parties.  For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA and Isaac Larian, regardless of the manner in which it was transferred.[99]  Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian for which there was no compensation during the period of the alleged wrongful conduct.

It is undisputed that disgorgement is remedy for Mattel's claims against MGA and Larian, including copyright infringement and trade secret misappropriation.  § 17 U.S.C. 504(b) and E. Bassett Co. v. Revlon, Inc., 435 F.2d 656 (2d Cir. 1970) (copyright infringement); 4 Callmann, Unfair Competition and Monopolies § 14.45 (4th ed.) and Clark v. Bunker, 453 F.2d 1006, 1011 (9th Cir. 1972) (trades secret misappropriation).  The scope of the disgorgement remedy is set forth in two recent California Supreme Court decisions.  See Kraus v. Trinity Management Servs., Inc., 23 Cal. 4th 116 (2000); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003).  The court indicated that:

> "disgorgement" is a broader remedy than restitution. . . .
> [A]n order for disgorgement "may compel a defendant to surrender *all* money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those persons.  It has also been used to refer to surrender of *all* profits earned as a result of an unfair business practice regardless of whether those profits represent money taken

---

[99]   Exh. B to the Corey Dec. [Second Amended Answer and Counterclaims].

07209/2339253.2

directly from persons who were victims of the unfair
practice."

Korea Supply, 29 Cal. 4th at 1145 (quoting Kraus, 23 Cal. 4th at 127) (emphasis
added). Moreover, an important part of disgorgement is the imposition of a
constructive trust to recover ill-gotten gains that have been transferred to others by
the defendant. A constructive trust is intended to prevent unjust enrichment, with
equity compelling the restoration to another of property to which the holder thereof
is not justly entitled. Taylor v. Polackwich, 145 Cal. App. 3d 1014, 1022 (1983);
Cal. Civ. Code §§ 2223, 2224. See also Weiss v. Marchus, 51 Cal. App. 3d 590,
600 (1975) (constructive trust may be imposed in case of fraud, mishandling, or
almost any case of wrongful acquisition or detention of property to which another is
entitled). When personal property is in dispute, the legislature has allowed plaintiffs
to invoke the remedy of constructive trust. Cal Civ. Code §§ 2223, 2224. To create
a constructive or involuntary trust only three conditions are necessary: existence of a
res, i.e. property or some interest in property, plaintiff's right to that res and
defendant's gain of the res by fraud, accident, mistake, undue influence, violation of
the trust or other wrongful act. Kraus v. Willow Park Public Golf Course, 140 Cal.
Rptr. 744, 73 Cal. App. 3d 354 (1977); see Cramer v. Biddison, 65 Cal. Rptr. 624,
257 Cal. App. 2d 720 (1968). See Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1067
(1998) (constructive trust); Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445,
454-55 (1997) (equitable lien is proper if unjust enrichment and detrimental reliance
are implicated)

Mattel needs the documents discussed above to prove the amount the
defendants must disgorge. Housing Rights Center v. Sterling, 2005 WL 3320739,
*3 (C.D. Cal. 2005) (finding financial information relevant to disgorgement of
profits claim). Money that properly belonged to Mattel was transferred from MGA
or Isaac Larian to an entity controlled by them. Mattel should be able to understand
how that money was used because MGA and Isaac Larian have no right to whatever

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  additional gains realized with Mattel's money.  <u>See id</u>.  Rather, the right to those

2  additional gains vests solely in Mattel.  Thus far, MGA and Isaac Larian have

3  produced no documents from which Mattel may ascertain the amount of any

4  transfer, much less any gain realized.  Nor have they agreed to produce any such

5  documents.

6

7      **D.      Mattel Seeks Documents to Prepare Its Defenses to MGA's**

8              **Counter Claims**

9              Mattel also seeks documents relevant to MGA's claims (A point all but

10  ignored in the Motion to Quash).  MGA accused Mattel of false designation of

11  origin, unfair competition, dilution, and unjust enrichment, and MGA seeks "general

12  and actual damages ... excepted to reach or exceed $10 million," "disgorgement of

13  all profits derived by Mattel," and "punitive and exemplary damages."[100]  Mattel is

14  entitled to the requested documents so that it can effectively cross-exam MGA's

15  witnesses about the accuracy of MGA's damages claims against Mattel.  Mattel is

16  entitled to have adequate information available to it to permit Mattel to defend

17  against and disprove MGA's claims and damages theories.  For example, to the

18  extent that MGA asserts that it measures damages by its lost profits, Mattel is

19  entitled to know what those profits are and intervening factors could have limited

20  MGA profits (e.g., mismanagement, insufficient capital, inaccurate or untimely

21  forecasting and manufacturing, election to minimize advertising).[101]

22

23

24      [100]  Exh. A [MGA Complaint, Prayer for Relief].
        [101]  Mattel's Request Nos. 4-5 seek documents relating to Bratz and documents
25  relating to this consolidated proceeding.  Exhs. 7 and 8 to the Park Dec.  MGA does
26  not dispute the relevance of documents relating to Bratz or documents related to this
    action.  <u>See</u> <u>generally</u> Section IV of MGA's Separate Statement filed in support of
27  MGA's Motion to Quash.
28

1    **E.      The Evidence of Payments to Others is Relevant to Mattel's**
2             **Commercial Bribery Claim and Evidence of Bias**

3            As MGA recognizes, the banking and accounting records sought by

4    Mattel are also relevant because they bear directly on Mattel's commercial bribery

5    claim.  Contrary to MGA's assertion, their relevance goes beyond simply payments

6    to Bryant.  These documents may also lead to evidence of bias and influence on

7    potential witnesses.  Such concerns are not theoretical, as evidence demonstrates

8    that MGA was paying Mr. Bryant while it knew he was a Mattel employee.  Mattel

9    is entitled to seek documents that would uncover additional information about MGA

10   and Larian's attempts to bribe Mr. Bryant *or other Mattel employees or vendors*.  As

11   discussed above, contrary to MGA and Larian's argument that the bribery issue is

12   limited to Mr. Bryant, Mattel is entitled to seek information related to their bribery

13   or attempted bribery of other personnel.  Indeed, Veronica Marlow, a third-party

14   witness who long worked directly with Bryant and MGA, testified that she knew of

15   at least three other Mattel employees who *for years* worked on Bratz *while they*

16   *were employed by Mattel*.[102]

17           Furthermore, payments by or on behalf of MGA or Larian to Bryant or

18   any other Mattel employee or witness goes to bias.  Evidence of such bias is relevant

19   and discoverable, especially when it relates to key witnesses.  See United States v.

20   Abel, 469 U.S. 45, 50-51 (1984); see also Wright & Miller, Federal Practice &

21   Procedure: Federal Rules of Evidence § 6095 (bias is a "particularly favored basis

22   for attacking credibility," and "circumstantial evidence of bias" may include

23   evidence of the "payment of bribes or fees").

24           The banking and financial records Mattel requested from the third-

25   parties, especially the financial institutions, are relevant to tracking their payments

26

27

28

07209/2339253.2

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1   to third-parties and witnesses.  Request Nos. 13-16 of the Moss Adams subpoena

2   seek documents related to payments to people working on Bratz, including

3   Mr. Bryant and other former Mattel employees.[103]

4   **II.   MGA HAS NOT SHOWN THAT THE DOCUMENTS HAVE BEEN**

5        **PRODUCED OR ARE OTHERWISE DUPLICATIVE**

6        **A.   That Documents "May" Be Available From Another Source Is Not**

7            **Sufficient**

8           MGA and Larian argue that the subpoenas should be quashed because

9   Mattel requested similar documents from the parties, and MGA and Larian are in

10  possession of some responsive documents.  These arguments are insufficient

11  grounds to quash the subpoenas.

12          Even if the document requests served on the third parties were identical

13  to the requests served on MGA and Larian, there has been no showing--nor is one

14  conceivable--that the MGA and Larian have all of the same documents as are in the

15  possession, custody, or control of the third parties.  (For example, there is no reason

16  to believe that MGA would have all of the banking records maintained by Wells

17  Fargo.  Banks are notoriously thorough in their record keeping, and would have a

18  much more detailed paper trail concerning activity in MGA's account than would

19  MGA.)  Without assurance that MGA and Larian have all of the same documents as

20  Wells Fargo, this objection is meritless.  In State Farm Mutual Auto Ins. Co. v.

21  Accurate Medical, P.C., the district court rejected a similar argument.  2007 WL

22  2993840 (E.D.N.Y. Oct. 10, 2007) (denying motion to quash).  There, the plaintiff

23  sought documents regarding third-party financial relationships with the defendant.

24  In response to the defendant's argument that such documents were available from

25  _____

26  [102]   Exh. S at 288:8-289:21, 306:8-25; 307:8-308:1; 363:15-21[Deposition

27  Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007].

28  [103]   Exh. 12 to the Park Dec.

07209/2339253.2

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  itself, the court found that it critical that "it is unlikely that the moving defendants

2  would, in fact, possess all the documents sought by plaintiff in the subpoenas." Id.

3  at *1.

4          Because documents may be available from other sources not grounds to

5  refuse production.[104]  "[A] person may not avoid a subpoena by saying that the

6  evidence sought from him is obtainable from another." Covey Oil Co. v.

7  Continental Oil Co., 340 F.2d 993, 998 (10th Cir. 1965) (overruled on other

8  grounds); State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL

9  2993840, at *1 (E.D.N.Y. 2007) (same); In re Bergeson, 112 F.R.D. 692, 695 (D.

10  Mont. 1986) (conclusory assertions that documents sought are available from others

11  more economically "does not constitute a showing of unreasonableness or

12  oppressiveness."); see also Plant Genetic Systems, N.V. v. Northrup King Co., Inc.,

13  6 F. Supp. 2d 859, 861-862 (E.D. Mo. 1998) (third party subpoena proper where

14  information sought pertained to a central issue in the underlying claim, it was not

15  burdensome in light of plaintiff's diligent efforts to obtain the information from

16  defendant, and the nonparty had signed protective order prohibiting disclosed

17  information from being seen by plaintiffs counsel or nonparty's competitors).

18          As held by the State Farm court, "nothing in the Federal Rules of Civil

19  Procedure requires a litigant to rely solely on discovery obtained from an adversary

20  instead of utilizing subpoenas." Id. at *1.

21          Finally, as discussed below, even if MGA and Larian had these

22  documents, they have not produced them.

23

24

25

26

27  ───────────

[104]   See Motion at 11:5-15.

28

**B.**   **Neither Larian Nor MGA Have Produced The Majority of the Documents Sought**

MGA argues that the subpoenas should be quashed because the information sought is available from the parties.  However, MGA neglects to mention that Larian has failed to produce responsive documents--including documents he had previously promised to produce--until just last week pursuant to another Court order,[105] and MGA has not produced most of the documents sought by the subpoenas

Although MGA claims to have produced many responsive documents, it stops short of claiming that it has produced all of the documents sought by the subpoenas.  Moreover, the list of documents MGA claims to have produced is notable for its lack of specificity.  Indeed, MGA's list confirms that MGA has not produced most of the documents requested by the third-party subpoenas. Conspicuously missing from the list--and MGA's production--are:[106]

- Documents related to a determination of Isaac Larian's net worth.
- Documents stating the value of MGA's intellectual property and good will.  (other than Little Tykes intellectual property).
- MGA and Larian's tax records.
- Wells Fargo banking records for MGA.
- Documents related to payments to third-parties by MGA, Larian, or the Larian trusts (such as to Bryant and other Mattel employees and vendors)
- Consumer and marketing research regarding Bratz and several MGA products underlying MGA's claims against Mattel.
- Documents from the <u>Larian v. Larian</u> litigation.

---

[105]   Corey Dec., ¶ 12.
[106]   <u>Id</u>., at ¶ 14.

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1        • Documents related to the Larian trusts, including any documents

2 showing Isaac Larian's interest in, payments received, or transfers to those trusts.

3        • Documents regarding the 1999-2000 and 2006 loans MGA received

4 from Wachovia, including what documents MGA and Larian gave to Wachovia to

5 justify the loans.

6        Furthermore, even as to those documents MGA claims to have

7 produced, many of the descriptions are vague, inaccurate, or misleading:

8        • It is unclear what MGA means by its claim to have produced "annual

9 reports."

10        • The reference to "various MGA financial reports" is hopelessly vague

11 and tells the Court and Mattel nothing about what MGA claims was actually

12 produced.

13        • MGA's claim to have produced documents related to "royalty

14 payments" to Carter Bryant does not encompass all payments to Mr. Bryant, or any

15 to other Mattel employees and vendors.

16        • The "Documents showing MGA's sales, returns and costs of good

17 sold" "promotional, advertising and media expenditures" only relate to Bratz.[107]

18 They do not relate to MGA's or Larian's net worth directly, or to the value of its

19 good will or intellectual property.

20        • The "Documents showing MGA's amortization and depreciation" is

21 only for unspecified "certain capital assets and expenditures," and they are no more

22 duplicative of Mattel's requests than the Bratz specific cost information.

23        • The "monthly general ledger" documents do not appear to be general

24 ledger entries at all, but in fact are much more generic trial balances.  Moreover,

25 there information produced appears to relate only to some account numbers,

26

27 ————————————————

28   [107]  Id., ¶ 15.

-111-

1 omitting many others.  Further, it appears that no information has been produced for

2 the years 2001 and 2004.[108]

3          In short, MGA and Larian cannot refuse to produce for months, then

4 object when Mattel seeks documents from others.  Now, with weeks left in Phase

5 One discovery, Mattel does not have the luxury of waiting for MGA and Larian to

6 get around to producing.  Mattel needs documents to enforce its claims and to

7 defend against MGA's, and any further delay will prejudice Mattel's ability to

8 adequately prepare for trial.

9     **C.    MGA and Larian's Illusory Promises to Produce Do Not Render**

10            **the Subpoenas Duplicative**

11          Conceding that neither it nor Larian have in fact produced all

12 documents that are being sought from the third parties, MGA argues that the

13 subpoenas are unreasonably duplicative because they ***might*** produce additional

14 documents in the future.[109]  Notably absent from their hollow promise is any

15 specific date by when the documents will be produced, or even a list of the specific

16 documents to be produced or the specific categories of document requests to which

17 they respond.  This "wait and see" and "trust me" approach, unsurprisingly, finds no

18 support in the case law and is an inadequate basis to grant the Motion to Quash.  It

19 also is premised on a poor track record.  Neither MGA or Larian have lived up to

20 their representations about producing relevant documents in the past.  Thus, it is not

21 unreasonable to have requested these highly relevant documents from the third-

22 parties.

23

24

25

26

27   [108]  Id., ¶ 16.
28   [109]  Motion at 5:1-7.

-112-

**D.**     **Mattel is Entitled to the Requested Documents Because of Legitimate Concerns of Spoliation and Document Tampering**

Mattel cannot rely on MGA and Larian to actually produce all of the responsive documents in their possession, custody and control, or that they will produce it in their original condition.

In the past, MGA has produced requested documents only *after* a third-party's production exposed MGA's previous failures to produce. What documents MGA has produced has been the result of a protracted discovery process in which MGA has demonstrated a pattern of failing to produce relevant, critical, and incriminating, documents until faced with compulsion by the Court or after a third party has already produced them. For example, in September 2006, a third-party witness, Steven Linker, produced Bratz design drawings and Bratz product development documents.[110] Linker's production included a multitude of Bratz materials he had received from or exchanged with MGA and Bryant before Bryant left Mattel.[111] Neither MGA nor Bryant had produced many of them, however. Notably, before Linker's testimony, MGA had produced an email relating to Bratz development that Linker's design partner, Liz Hogan, had sent to MGA on October 23, 2000 -- a date which was conveniently *after* Bryant left Mattel. MGA, however, had not produced the earlier emails—those pre-dating Bryant's last day of employment at Mattel—that Hogan had exchanged with MGA on that very same subject. Mattel obtained those only after Linker produced them pursuant to subpoena in September 2006.[112] Thus, it has often been the case in this litigation that MGA has produced relevant and responsive documents only after a third-party has already done so.

---

[110] Corey Dec., ¶ 17; Exhs. F, G, and H.
[111] Id., at ¶ 18; Exh. H.
[112] Id., ¶ 18; Exhs. G and I.

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    Furthermore, Mattel must guard against the possibility of further

2  spoliation of evidence and/or document tampering.  Unfortunately, these concerns

3  are not merely speculative or theoretical.  It has already occurred.  For example,

4  former Mattel and present MGA employee Mr. Bryant was ordered--after initial

5  delay and refusal--to produce a computer for inspection in this matter.  Mattel

6  learned that a software program called "Evidence Eliminator" had been installed and

7  run on that hard drive.[113]  In addition, there has been credible evidence adduced in

8  this action that MGA has tampered with documents by altering their creation dates,

9  as indicated by fax headers (which were deleted).  The Court responded to the

10  concern of spoliation, and specifically the alteration of the creation date of the

11  documents described above, in an August 9, 2006 order.[114]  Although it did not find

12  the evidence rose to the level of requiring the appointment of a Court appointed

13  expert witness at the time.  It held, "There are serious questions concerning the

14  handling of these critical documents" that caused the Court "much concern about

15  whether the truth seeking functions of the adversarial system have been

16  fundamentally compromised in this case."  Id. at 11:10-13.  The Court also stressed

17  its "concern" over MGA's "handling of documents in its possession."[115]  Clearly,

18  therefore, Mattel is within its rights to obtain documents from third-parties even if

19  also in the possession of MGA and Larian.

20    Given the unavailability of this information from both MGA, Larian,

21  and other sources, MGA's efforts to thwart Mattel's discovery requests seeking this

22  information thus far, and the very real concern over spoliation and tampering, Mattel

23  should not be denied this discovery from third parties.[116]

24  ───────────────

25  [113]  Exh. U [Irmen Tr. 285:15-287:6].
    [114]  Exh. N [Court's August 9, 2006 Order at 9:4-18:14].
26  [115]  Id. at 17:23-26.
    [116]  MGA has created a chart that purportedly shows overlap between Mattel's
27  document requests to the financial institutions and Mattel's documents requests to
    MGA.  See Exh. 28 to the Park Dec.  MGA cites to three examples of the overlap
28  (footnote continued)

III.   **MGA HAS NOT SHOWN UNDUE BURDEN**

MGA and Larian fail to show that the requests are so burdensome to justify quashing the subpoenas.  A party claiming that production of requested documents is unduly burdensome bears the burden of proving up their objection. Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984) (reversing district court's decision quashing subpoena).  The party cannot rest on conclusory assertions.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966) (reversing the quashing of a subpoena because of lack of specific evidence of burden).  "The party must provide specific and compelling proof that the burden is undue."  JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25 (Fed. Cl. Ct. 2007) (denying motion to quash).

Here, MGA and Isaac Larian offer no evidence--such as a declaration or testimony--regarding the time, cost, or burden involved in responding to Mattel's subpoenas.  Nor could they.  "The burden of showing that a subpoena is unreasonable and oppressive *is upon the party to whom it is directed*."  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added).

In addition, in a further effort to reduce any inconvenience to the third-parties, Mattel will reimburse the third parties for the costs incurred in copying the responsive documents.  However, even if Mattel was unwilling to pay for the third parties' copying costs (which is not an issue here since Mattel will reimburse them), and even if the third parties did not already have separated case files, a claim that compliance with Mattel's requests "would necessitate the examination of large

---

between Mattel's document requests and the subpoenas to the third-parties—the value of MGA's net worth, goodwill and intellectual property.  See Motion at 17:6-10.  As detailed above, the listing of documents that MGA sets forth in its Motion do not contain documents showing the value of MGA's net worth, goodwill or intellectual property, and Lisa Tonnu testified as to the unavailability of these documents from MGA.  Therefore, MGA's argument in this regard contradicts its own designee.

07209/2339253.2

1  quantities of documents, requiring a great deal of time and expense . . . is not alone a

2  sufficient reason for refusing discovery which is otherwise appropriate. . . . "

3  American Optical Co., 39 F.R.D. 580, 586-587 (N.D. Cal. 1966) (denying motion to

4  quash where documents sought covered a twelve year period).  And, in an effort to

5  further reduce burden upon the third-parties, Mattel has offered to have its own

6  paralegal and counsel inspect documents gathered thus far by the third-party

7  financial institutions with an agreement that the inspection will not result in

8  waiver.[117]  Given these concessions and the applicable case law, the raw assertions

9  of undue burden are meritless.

10        It is very unlikely that Moss Adams has boxes and boxes of documents

11  that would be burdensome to collect and produce.  Notably, it has not provided any

12  declaration or other evidence that the burden on it would be heavy, much less undue

13  in light of the relevance of the documents requested.  Moss Adams simply sent a

14  two-page letter listing some objections "as directed" by MGA with a conclusory

15  assertion that the subpoena was "unduly broad and burdensome."  Despite the

16  objection, Moss Adams stated that it "is prepared to produce the records as agreed to

17  by the parties, or as ordered by the court."[118]

18  **IV.    THE SUBPOENAS ARE NOT OVERBROAD**

19        MGA's assertion that the Mattel's requests are abusively drawn or

20  unduly overbroad is also meritless given that five of Mattel's document requests are

21  directed to financial institutions.  Financial institutions generate and retain precisely

22  types of documents that are responsive to Mattel's requests.  Therefore, MGA's

23  objections of overbreadth and harassment are baseless.

24

25

26

27  [117]  See Letter from Jon Corey to John Baran dated December 20, 2007, attached to the Corey Dec., Exh. C.

28  [118]  Exh. 20 to the Park Dec.

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    Defendants mistakenly rely on Ocean Atlantic Woodland Corp. v.

2  DRH Cambridge Homes, Inc., 292 F. Supp. 2d 923 (N.D. Ill. 2003), to argue that

3  broad financial discovery on nonparties is necessarily unduly burdensome.

4  However, the Ocean Atlantic Court did not hold that such discovery is always

5  unwarranted; rather, it must be tied to the claims and defenses at issue.  There, the

6  plaintiff had acquired a copyright in two real estate development plans for a parcel

7  of land, but was unable to develop the parcel because it failed to close on the sale of

8  the land within the required time.  The plaintiff sued the developer who later

9  acquired the rights to develop the land and who did it using the copyrighted plans.

10  The plaintiff served document requests seeking "all aspects of [defendant's]

11  financial activities, including costs sales, and profits on all its developments and all

12  of its home sales throughout the country since 1997."  Id. at 925.  The court found

13  that these requests were overbroad, because on the facts of that case, they were not

14  relevant to the claims and defenses at issue.  Specifically, the court found that

15  because the measure of damages was limited to either (1) the amount plaintiff paid

16  to acquire the development plans at issue, or (2) the value of use or the saved

17  acquisition costs to defendant who used the plans, broad financial discovery was not

18  warranted.  Id. at 928.  In contrast, here, unlike Ocean Atlantic, the measure of

19  damages in not so limited, and includes disgorgement and punitive damages.

20    Thus, broad discovery into MGA and Larian's finances, including net

21  worth and asset transfers, is within the bounds of discovery as the Discovery Master

22  and Judge Larson have held.  Indeed, in Southern California Housing Rights

23  Center v. Krug, 2006 WL 4122148 (C.D. Cal.), a case relied on by MGA, the court

24  ordered that broad financial discovery concerning defendant's net worth was

25  relevant to punitive damages, and ordered defendant to produce documents relating

26  to its net worth and current assets and/or liabilities, including identification and

27  value of all properties and other assets owned in whole or in part, profit and loss

28  statements from 2004 to the present, as well as "financial statements and balance

1   sheets that relate to assets, inventories, liabilities, gross and net income, and the

2   amount of any undistributed business profits." Id. at *1-2.

3

4   **II.   THE DISCOVERY MASTER SHOULD QUASH OR ENTER A PROTECTIVE ORDER WITH RESPECT TO THE REQUESTS IN WHICH MATTEL SEEKS IRRELEVANT FINANCIAL INFORMATION REGARDING NON-PARTIES. (REQUESTS 1-5 TO WELLS FARGO; REQUESTS 1-7 AND 12 TO WACHOVIA; REQUESTS 1-3 AND 8 TO ERNST & YOUNG; REQUESTS 1-3 AND 8 TO DELOITTE & TOUCHE; REQUESTS 1-8, 12-16, 18, AND 19 TO MOSS ADAMS; REQUESTS 1-8, 14, AND 15 TO THE ISAAC AND ANGELA LARIAN TRUST; REQUESTS 1-8, 14, AND 15 TO THE ISAAC LARIAN ANNUITY TRUST)**

5

6

7

8

9

10              **A.   Mattel's Requests and MGA's Responses**

11  **WELLS FARGO REQUEST NO. 1**:

12              All DOCUMENTS REFERRING OR RELATING TO MGA from

13  January 1, 1999 to the present, inclusive.

14  **RESPONSE TO WELLS FARGO REQUEST NO. 1**:

15              The MGA Entities incorporate by reference their General Objections as

16  though fully set forth herein.  The MGA Entities further object to the extent that this

17  request seeks information that is protected from disclosure under the attorney-client

18  privilege, the work product doctrine.  The MGA Entities further object to this

19  request to the extent that it seeks documents that contain trade secrets, confidential,

20  commercially sensitive and/or other proprietary or competitive information that is

21  subject to the MGA Entities' or any other person's constitutional, statutory or

22  common law right of privacy or protection.  The MGA Entities further object that

23  this request calls for the production of documents that are not relevant to the subject

24  matter involved in the pending litigation or reasonably calculated to lead to the

25  discovery of admissible evidence.  The MGA Entities further object to this request

26  on the grounds that it is overbroad as to subject matter and time.  The MGA Entities

27  object to the definition of "MGA," as vague, ambiguous and overbroad.

28

1 **WELLS FARGO REQUEST NO. 2**:

2       All DOCUMENTS REFERRING OR RELATING TO the ACCOUNT

3 maintained by YOU numbered 9600112551, including but not limited to statements,

4 monthly statements, annual statements, daily transaction history reports, monthly

5 transaction history reports, deposit reports, deposit slips, canceled checks, signature

6 cards, and COMMUNICATIONS REFERRING OR RELATING TO such

7 ACCOUNT, created between January 1, 1999 and the present, inclusive.

8 **RESPONSE TO WELLS FARGO REQUEST NO. 2**:

9       The MGA Entities incorporate by reference their General Objections as

10 though fully set forth herein.  The MGA Entities further object to the extent that this

11 request seeks information that is protected from disclosure under the attorney-client

12 privilege, the work product doctrine.  The MGA Entities further object to this

13 request to the extent that it seeks documents that contain trade secrets, confidential,

14 commercially sensitive and/or other proprietary or competitive information that is

15 subject to the MGA Entities' or any other person's constitutional, statutory or

16 common law right of privacy or protection.  The MGA Entities further object that

17 this request calls for the production of documents that are not relevant to the subject

18 matter involved in the pending litigation or reasonably calculated to lead to the

19 discovery of admissible evidence.  The MGA Entities further object to this request

20 on the grounds that it is overbroad as to subject matter and time.  The MGA Entities

21 further object on the grounds that this request is vague, ambiguous and overbroad,

22 particularly as to the meaning of "statements," "daily transaction history reports,"

23 "monthly transaction history reports," and "deposit reports."

24 **WELLS FARGO REQUEST NO. 3**:

25       All DOCUMENTS REFERRING OR RELATING TO any other

26 ACCOUNT maintained by YOU that is in the name of, for the benefit of or

27 concerns MGA, including but not limited to statements, monthly statements, annual

28 statements, daily transaction history reports, monthly transaction history reports,

1  deposit reports, deposit slips, canceled checks, signature cards, and

2  COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNTS,

3  crated between January 1, 1999 and the present, inclusive.

4  **RESPONSE TO WELLS FARGO REQUEST NO. 3**:

5         The MGA Entities incorporate by reference their General Objections as

6  though fully set forth herein.  The MGA Entities further object to the extent that this

7  request seeks information that is protected from disclosure under the attorney-client

8  privilege, the work product doctrine.  The MGA Entities further object to this

9  request to the extent that it seeks documents that contain trade secrets, confidential,

10  commercially sensitive and/or other proprietary or competitive information that is

11  subject to the MGA Entities' or any other person's constitutional, statutory or

12  common law right of privacy or protection.  The MGA Entities further object that

13  this request calls for the production of documents that are not relevant to the subject

14  matter involved in the pending litigation or reasonably calculated to lead to the

15  discovery of admissible evidence.  The MGA Entities further object to this request

16  on the grounds that it is overbroad as to subject matter and time.  The MGA Entities

17  further object on the grounds that this request is vague, ambiguous and overbroad,

18  particularly as to the meaning of "MGA," "statements," "daily transaction history

19  reports," "monthly transaction history reports," and "deposit reports."

20  **WELLS FARGO REQUEST NO. 4**:

21         DOCUMENTS sufficient to show the account number of all

22  ACCOUNTS maintained by YOU in the name of, for the benefit of or concerning

23  MGA between January 1, 1999 and the present, inclusive.

24  **RESPONSE TO WELLS FARGO REQUEST NO. 4**:

25         The MGA Entities incorporate by reference their General Objections as

26  though fully set forth herein.  The MGA Entities further object to the extent that this

27  request seeks information that is protected from disclosure under the attorney-client

28  privilege, the work product doctrine.  The MGA Entities further object to this

07209/2339253.2

-120-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1 | request to the extent that it seeks documents that contain trade secrets, confidential,

2 | commercially sensitive and/or other proprietary or competitive information that is

3 | subject to the MGA Entities' or any other person's constitutional, statutory or

4 | common law right of privacy or protection.  The MGA Entities further object that

5 | this request calls for the production of documents that are not relevant to the subject

6 | matter involved in the pending litigation or reasonably calculated to lead to the

7 | discovery of admissible evidence.  The MGA Entities further object to this request

8 | on the grounds that it is overbroad as to subject matter and time.  The MGA Entities

9 | further object on the grounds that this request is vague, ambiguous and overbroad,

10 | particularly as to the meaning of "MGA," "benefit of' and "concerning."

11 | **WELLS FARGO REQUEST NO. 5**:

12 |         All DOCUMENTS showing or relating to any account(s) held by MGA

13 | or any account(s) on which MGA has signatory authority at any other financial

14 | institution.

15 | **RESPONSE TO WELLS FARGO REQUEST NO. 5**:

16 |         The MGA Entities incorporate by reference their General Objections as

17 | though fully set forth herein.  The MGA Entities further object to the extent that this

18 | request seeks information that is protected from disclosure under the attorney-client

19 | privilege, the work product doctrine.  The MGA Entities further object to this

20 | request to the extent that it seeks documents that contain trade secrets, confidential,

21 | commercially sensitive and/or other proprietary or competitive information that is

22 | subject to the MGA Entities' or any other person's constitutional, statutory or

23 | common law right of privacy or protection.  The MGA Entities further object that

24 | this request calls for the production of documents that are not relevant to the subject

25 | matter involved in the pending litigation or reasonably calculated to lead to the

26 | discovery of admissible evidence.  The MGA Entities further object to this request

27 | on the grounds that it is overbroad as to subject matter and time.  The MGA Entities

28 | object to the definition of "MGA," as vague, ambiguous and overbroad.

07209/2339253.2

-121-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    **WACHOVIA REQUEST NO. 1**:

2        All documents relating to any loan agreement, including without

3 limitation any line of credit or other financing arrangement, that YOU have entered

4 into with MGA since January 1, 1999, including without limitation drafts of any

5 agreements.

6    **RESPONSE TO WACHOVIA REQUEST NO. 1**:

7        The MGA Entities incorporate by reference their General Objections as

8 though fully set forth herein.  The MGA Entities further object to the extent that this

9 request seeks information that is protected from disclosure under the attorney-client

10 privilege, the work product doctrine and/or the joint interest privilege.  The MGA

11 Entities further object to this request to the extent that it seeks documents that

12 contain trade secrets, confidential, commercially sensitive and/or other proprietary

13 or competitive information that is subject to the MGA Entities' or any other person's

14 constitutional, statutory or common law right of privacy or protection.  The MGA

15 Entities further object that this request calls for the production of documents that are

16 not relevant to the subject matter involved in the pending litigation or reasonably

17 calculated to lead to the discovery of admissible evidence.  The MGA Entities

18 further object to this request as being overly broad, burdensome and harassing to a

19 non-party to the extent that it seeks to force Wachovia to produce documents or

20 information available from parties to the litigation.  The MGA Entities further object

21 to this request on the grounds that it is overbroad as to subject matter and time; in

22 particular, the MGA Entities object to the definition of "MGA," on the grounds that

23 it is overbroad.  The MGA Entities further object on the grounds that this request is

24 vague, ambiguous and overbroad, particularly as to the meaning of "relating to," and

25 "financing arrangement."

26    **WACHOVIA REQUEST NO. 2**:

27        To the extent not included in YOUR production responsive to Request

28 No. 1, all documents that MGA or any other person provided to YOU for purposes

-122-

1  of entering into any loan agreement between YOU and MGA, including without

2  limitation any line of credit or other financing arrangement or agreement, at any

3  time since January 1, 1999, including without limitation accounting records, tax

4  returns, pro formas, expense records, financial projections, budgets or business

5  plans.

6  **RESPONSE TO WACHOVIA REQUEST NO. 2**:

7            The MGA Entities incorporate by reference their General Objections as

8  though fully set forth herein.  The MGA Entities further object to the extent that this

9  request seeks information that is protected from disclosure under the attorney-client

10  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

11  Entities further object to this request to the extent that it seeks documents that

12  contain trade secrets, confidential, commercially sensitive and/or other proprietary

13  or competitive information that is subject to the MGA Entities' or any other person's

14  constitutional, statutory or common law right of privacy or protection.  The MGA

15  Entities further object to this request to the extent it seeks documents protected by

16  the accountant-client privilege. MGA further objects to the request on the grounds

17  that it seeks documents protected from disclosure by applicable federal and state tax

18  return privileges.  See, *e.g., Premium Serv. Corp. v. Sperry & Hutchinson Co.*,

19  511 F.2d 225, 229 (9th Cir. 1975); *S. Cal. Hous Rights Ctr. v. Krug*, 2006 U.S. Dist.

20  LEXIS 65330, at **9-10 (C.D. Cal. Sept. 5, 2006); *Aliotti v. Senora*, 217 F.R.D.

21  496, 498 (N.D. Cal. 2003); *S.F. Bay Area Rapid Transit Dist. v. Spencer*,

22  No. C 04-04632 SI, 2006 U.S. Dist. LEXIS 81681, at **3-4 (N.D. Cal. Oct. 23,

23  2006).  See *also Webb v. Standard Oil Co.*, 49 Cal. 2d 509, 513-14 (1957); *Sav-On*

24  *Drugs, Inc. v. Superior Court*, 15 Cal. 3d 1, 6-8 (1975); *Sammut v. Sammut*,

25  103 Cal. App. 3d 557, 562 (1980).  The MGA Entities further object that this

26  request calls for the production of documents that are not relevant to the subject

27  matter involved in the pending litigation or reasonably calculated to lead to the

28  discovery of admissible evidence.  The MGA Entities further object to this request

07209/2339253.2

-123-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  as being overly broad, burdensome and harassing to a non-party to the extent that it

2  seeks to force Wachovia to produce documents or information available from parties

3  to the litigation.  The MGA Entities further object to this request on the grounds that

4  it is overbroad as to subject matter and time; in particular, the MGA Entities object

5  to the definition of "MGA," on the grounds that it is overbroad.  The MGA Entities

6  further object on the grounds that this request is vague, ambiguous and overbroad,

7  particularly as to the meaning of "financing arrangement," "pro formas," "expense

8  records," "financial projections," "budgets" and "business plans."

9  **WACHOVIA REQUEST NO. 3**:

10          To the extent not included in YOUR production responsive to Request

11  Nos. 1-2, all documents that were in the "three (3) boxes of loan documents" that

12  YOU refer to in YOUR November 15, 2005 letter to Robert G. Wilson, Esq., letter

13  which is included herein as Attachment "B."

14  **RESPONSE TO WACHOVIA REQUEST NO. 3**:

15          The MGA Entities incorporate by reference their General Objections as

16  though fully set forth herein.  The MGA Entities further object to the extent that this

17  request seeks information that is protected from disclosure under the attorney-client

18  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

19  Entities further object to this request to the extent that it seeks documents that

20  contain trade secrets, confidential, commercially sensitive and/or other proprietary

21  or competitive information that is subject to the MGA Entities' or any other person's

22  constitutional, statutory or common law right of privacy or protection.  The MGA

23  Entities further object that this request calls for the production of documents that are

24  not relevant to the subject matter involved in the pending litigation or reasonably

25  calculated to lead to the discovery of admissible evidence.  The MGA Entities

26  further object to this request as being overly broad, burdensome and harassing to a

27  non-party to the extent that it seeks to force Wachovia to produce documents or

28  information available from parties to the litigation.  The MGA Entities further object

1  to this request on the grounds that it is overbroad; in particular, the MGA Entities

2  object to the definition of "MGA," on the grounds that it is overbroad.

3  **WACHOVIA REQUEST NO. 4**:

4          To the extent not included in YOUR production responsive to Request

5  Nos, 1-3, all documents relating to any loan agreement entered into by MGA, or

6  sought or requested by MGA, during the time period January 1, 1999 and

7  December 31, 2000, inclusive.

8  **RESPONSE TO WACHOVIA REQUEST NO. 4**:

9          The MGA Entities incorporate by reference their General Objections as

10  though, fully set forth herein.  The MGA Entities further object to the extent that

11  this request seeks information that is protected from disclosure under the attorney-

12  client privilege, the work product doctrine and/or the joint interest privilege.  The

13  MGA Entities further object to this request to the extent that it seeks documents that

14  contain trade secrets, confidential, commercially sensitive and/or other proprietary

15  or competitive information that is subject to the MGA Entities' or any other person's

16  constitutional, statutory or common law right of privacy or protection.  The MGA

17  Entities further object that this request calls for the production of documents that are

18  not relevant to the subject matter involved in the pending litigation or reasonably

19  calculated to lead to the discovery of admissible evidence.  The MGA Entities

20  further object to this request as being overly broad, burdensome and harassing to a

21  non-party to the extent that it seeks to force Wachovia to produce documents or

22  information available from parties to the litigation.  The MGA Entities further object

23  to this request on the grounds that it is overbroad; in particular, the MGA Entities

24  object to the definition of "MGA," on the grounds that it is overbroad.  The MGA

25  Entities further object on the grounds that this request is vague and ambiguous,

26  particularly as to the meaning of "relating to."

27

28

1 | **WACHOVIA REQUEST NO. 5**:

2 |         To the extent not included in YOUR production responsive to Request

3 | Nos. 1-4, all communications between YOU and MGA during the time period

4 | January 1, 1999 and December 31, 2000, inclusive.

5 | **RESPONSE TO WACHOVIA REQUEST NO. 5**:

6 |         The MGA Entities incorporate by reference their General Objections as

7 | though fully set forth herein.  The MGA Entities further object to the extent that this

8 | request seeks information that is protected from disclosure under the attorney-client

9 | privilege, the work product doctrine and/or the joint interest privilege.  The MGA

10 | Entities further object to this request to the extent that it seeks documents that

11 | contain trade secrets, confidential, commercially sensitive and/or other proprietary

12 | or competitive information that is subject to the MGA Entities' or any other person's

13 | constitutional, statutory or common law right of privacy or protection.  The MGA

14 | Entities further object that this request calls for the production of documents that are

15 | not relevant to the subject matter involved in the pending litigation or reasonably

16 | calculated to lead to the discovery of admissible evidence.  The MGA Entities

17 | further object to this request as being overly broad, burdensome and harassing to a

18 | non-party to the extent that it seeks to force Wachovia to produce documents or

19 | information available from parties to the litigation.  The MGA Entities further object

20 | to this request on the grounds that it is overbroad; in particular, the MGA Entities

21 | object to the definition of "MGA," on the grounds that it is overbroad.  The MGA

22 | Entities further object on the grounds that this request is overbroad, vague and

23 | ambiguous, particularly as to the meaning of "communications."

24 | **WACHOVIA REQUEST NO. 6**:

25 |         To the extent not included in YOUR production responsive to Request

26 | Nos. 1-5, all documents indicating or showing a calculation of MGA's net worth or

27 | value.

28 |

1   **RESPONSE TO WACHOVIA REQUEST NO. 6**:

2           The MGA Entities incorporate by reference their General Objections as

3   though fully set forth herein.  The MGA Entities further object to the extent that this

4   request seeks information that is protected from disclosure under the attorney-client

5   privilege, the work product doctrine and/or the joint interest privilege.  The MGA

6   Entities further object to this request to the extent that it seeks documents that

7   contain trade secrets, confidential, commercially sensitive and/or other proprietary

8   or competitive information that is subject to the MGA Entities' or any other person's

9   constitutional, statutory or common law right of privacy or protection.  The MGA

10  Entities further object that this request calls for the production of documents that are

11  not relevant to the subject matter involved in the pending litigation or reasonably

12  calculated to lead to the discovery of admissible evidence.  The MGA Entities

13  further object to this request as being overly broad, burdensome and harassing to a

14  non-party to the extent that it seeks to force Wachovia to produce documents or

15  information available from parties to the litigation.  The MGA Entities further object

16  to this request on the grounds that it is overbroad; in particular, the MGA Entities

17  object to the definition of "MGA," on the grounds that it is overbroad.  The MGA

18  Entities further object on the grounds that this request is vague, ambiguous and

19  overbroad, particularly as to the meaning of "indicating," and "value."

20  **WACHOVIA REQUEST NO. 7**:

21          To the extent not included in YOUR production responsive to Request

22  Nos. 1-6, all documents indicating or calculating the value of MGA's intellectual

23  property or goodwill.

24  **RESPONSE TO WACHOVIA REQUEST NO. 7**:

25          The MGA Entities incorporate by reference their General Objections as

26  though fully set forth herein.  The MGA Entities further object to the extent that this

27  request seeks information that is protected from disclosure under the attorney-client

28  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

-127-

1 Entities further object to this request to the extent that it seeks documents that

2 contain trade secrets, confidential, commercially sensitive and/or other proprietary

3 or competitive information that is subject to the MGA Entities' or any other person's

4 constitutional, statutory or common law right of privacy or protection.  The MGA

5 Entities further object that this request calls for the production of documents that are

6 not relevant to the subject matter involved in the pending litigation or reasonably

7 calculated to lead to the discovery of admissible evidence.  The MGA Entities

8 further object to this request as being overly broad, burdensome and harassing to a

9 non-party to the extent that it seeks to force Wachovia to produce documents or

10 information available from parties to the litigation.  The MGA Entities further object

11 to this request on the grounds that it is overbroad; in particular, the MGA Entities

12 object to the definition of "MGA," on the grounds that it is overbroad.  The MGA

13 Entities further object on the grounds that this request is vague, ambiguous and

14 overbroad, particularly as to the meaning of "indicating," "value," and "intellectual

15 property."

16 **WACHOVIA REQUEST NO. 12**:

17         Documents sufficient to identify any other MGA lender or person who

18 extended or was requested to extend a line of credit to MGA since January 1, 1998.

19 **RESPONSE TO WACHOVIA REQUEST NO. 12**:

20         The MGA Entities incorporate by reference their General Objections as

21 though fully set forth herein.  The MGA Entities further object to the extent that this

22 request seeks information that is protected from disclosure under the attorney-client

23 privilege, the work product doctrine and/or the joint interest privilege.  The MGA

24 Entities further object to this request to the extent that it seeks documents that

25 contain trade secrets, confidential, commercially sensitive and/or other proprietary

26 or competitive information that is subject to the MGA Entities' or any other person's

27 constitutional, statutory or common law right of privacy or protection.  The MGA

28 Entities further object to this request as being overly broad, burdensome and

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  harassing to a non-party to the extent that it seeks to force Wachovia to produce

2  documents or information available from parties to the litigation.  The MGA Entities

3  further object that this request calls for the production of documents that are not

4  relevant to the subject matter involved in the pending litigation or reasonably

5  calculated to lead to the discovery of admissible evidence.  The MGA Entities

6  further object to this request on the grounds that it is overbroad as to subject matter

7  and time, and overbroad, vague and ambiguous, particularly as to the meaning of

8  "sufficient to identify" and "MGA."

9  **ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST NO. 1**:

10             All documents constituting or relating to MGA's annual audits,

11  including without limitation accounting records, audit programs, audit reports and

12  drafts thereof, tax returns, work papers, worksheets, payroll records, financial

13  projections, pro formas and budgets, from the period beginning January 1, 1999 to

14  the present.

15  **RESPONSE TO ERNST & YOUNG AND DELOITTE & TOUCHE**

16  **REQUEST NO. 1**:

17             The MGA Entities incorporate by reference their General Objections as

18  though fully set forth herein.  The MGA Entities further object to the extent that this

19  request seeks information that is protected from disclosure under the attorney-client

20  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

21  Entities further object to this request to the extent it seeks documents protected by

22  the accountant-client privilege.  The MGA Entities further object to the request on

23  the grounds that it seeks documents protected from disclosure by applicable federal

24  and state tax return privileges.  The MGA Entities further object to this request to

25  the extent that it seeks documents that contain trade secrets, confidential,

26  commercially sensitive and/or other proprietary or competitive information that is

27  subject to the MGA Entities' or any other person's constitutional, statutory or

28  common law right of privacy or protection.  The MGA Entities further object that

07209/2339253.2

1   this request calls for the production of documents that are not relevant to the subject

2   matter involved in the pending litigation or reasonably calculated to lead to the

3   discovery of admissible evidence.  The MGA Entities further object to this request

4   as being overly broad, burdensome and harassing to a non-party to the extent that it

5   seeks to force D & T to produce documents or information available from parties to

6   the litigation.  The MGA Entities further object to this request on the grounds that it

7   is overbroad as to subject matter and time; in particular, the MGA Entities object to

8   the definition of "MGA," on the grounds that it is overbroad.  The MGA Entities

9   further object on the grounds that this request is vague, ambiguous and overbroad,

10  particularly as to the meaning of "relating to," "accounting records," "audit

11  programs," "audit reports," "work papers," "worksheets," "financial projections,"

12  "pro formas" and "budgets."

13  **ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST NO. 2**:

14          To the extent not included in your production responsive to Request

15  No. 1, all documents indicating or calculating MGA's net worth.

16  **RESPONSE TO ERNST & YOUNG AND DELOITTE & TOUCHE**

17  **REQUEST NO. 2**:

18          The MGA Entities incorporate by reference their General Objections as

19  though fully set forth herein.  The MGA Entities further object to the extent that this

20  request seeks information that is protected from disclosure under the attorney-client

21  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

22  Entities further object to this request to the extent it seeks documents protected by

23  the accountant-client privilege.  The MGA Entities further object to the request on

24  the grounds that it seeks documents protected from disclosure by applicable federal

25  and state tax return privileges.  The MGA Entities further object to this request to

26  the extent that it seeks documents that contain trade secrets, confidential,

27  commercially sensitive and/or other proprietary or competitive information that is

28  subject to the MGA Entities' or any other person's constitutional, statutory or

07209/2339253.2

-130-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  common law right of privacy or protection.  The MGA Entities further object that

2  this request calls for the production of documents that are not relevant to the subject

3  matter involved in the pending litigation or reasonably calculated to lead to the

4  discovery of admissible evidence.  The MGA Entities further object to this request

5  as being overly broad, burdensome and harassing to a non-party to the extent that it

6  seeks to force D & T to produce documents or information available from parties to

7  the litigation.  The MGA Entities further object to this request on the grounds that it

8  is overbroad as to subject matter and time; in particular, the MGA Entities object to

9  the definition of "MGA," on the grounds that it is overbroad.  The MGA Entities

10  further object on the grounds that this request is vague, ambiguous and overbroad,

11  particularly as to the meaning of "indicating."

12  **ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST NO. 3**:

13          To the extent not included in your production responsive to Request

14  Nos. 1-2, all documents indicating or calculating the value of MGA's intellectual

15  property or goodwill.

16  **RESPONSE TO ERNST & YOUNG AND DELOITTE & TOUCHE**

17  **REQUEST NO. 3**:

18          The MGA Entities incorporate by reference their General Objections as

19  though fully set forth herein.  The MGA Entities further object to the extent that this

20  request seeks information that is protected from disclosure under the attorney-client

21  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

22  Entities further object to this request to the extent it seeks documents protected by

23  the accountant-client privilege.  The MGA Entities further object to the request on

24  the grounds that it seeks documents protected from disclosure by applicable federal

25  and state tax return privileges.  The MGA Entities further object to this request to

26  the extent that it seeks documents that contain trade secrets, confidential,

27  commercially sensitive and/or other proprietary or competitive information that is

28  subject to the MGA Entities' or any other person's constitutional, statutory or

-131-

1  common law right of privacy or protection.  The MGA Entities further object that

2  this request calls for the production of documents that are not relevant to the subject

3  matter involved in the pending litigation or reasonably calculated to lead to the

4  discovery of admissible evidence.  The MGA Entities further object to this request

5  as being overly broad, burdensome and harassing to a non-party to the extent that it

6  seeks to force D & T to produce documents or information available from parties to

7  the litigation.  The MGA Entities further object to this request on the grounds that it

8  is overbroad as to subject matter and time; in particular, the MGA Entities object to

9  the definition of "MGA," on the grounds that it is overbroad.  The MGA Entities

10  further object on the grounds that this request is vague, ambiguous and overbroad,

11  particularly as to the meaning of "indicating," and "goodwill."

12  **ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST NO. 8:**

13  Documents sufficient to identify any other person or company who has

14  served as MGA's auditor(s) or accountant(s) since January 1, 1999.

15  **RESPONSE TO ERNST & YOUNG AND DELOITTE & TOUCHE**

16  **REQUEST NO. 8:**

17  The MGA Entities incorporate by reference their General Objections as

18  though fully set forth herein.  The MGA Entities further object to the extent that this

19  request seeks information that is protected from disclosure under the attorney-client

20  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

21  Entities further object to this request to the extent it seeks documents protected by

22  the accountant-client privilege.  The MGA Entities further object to the request on

23  the grounds that it seeks documents protected from disclosure by applicable federal

24  and state tax return privileges.  The MGA Entities further object to this request to

25  the extent that it seeks documents that contain trade secrets, confidential,

26  commercially sensitive and/or other proprietary or competitive information that is

27  subject to the MGA Entities' or any other person's constitutional, statutory or

28  common law right of privacy or protection.  The MGA Entities further object that

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1   this request calls for the production of documents that are not relevant to the subject

2   matter involved in the pending litigation or reasonably calculated to lead to the

3   discovery of admissible evidence.  The MGA Entities further object to this request

4   as being overly broad, burdensome and harassing to a non-party to the extent that it

5   seeks to force D & T to produce documents or information available from parties to

6   the litigation.  The MGA Entities further object to this request on the grounds that it

7   is overbroad as to subject matter and time.  The MGA Entities further object on the

8   grounds that this request is vague, ambiguous and overbroad, particularly as to the

9   meaning of "sufficient to identify."

10  **MOSS ADAMS REQUEST NO. 1**:

11          All DOCUMENTS RELATING TO MGA, including without

12  limitation accounting records, tax returns and schedules (including without

13  limitation Form 1040, Form 1099, Form 1120, Schedule E or Schedule K-1) and

14  drafts thereof, work papers, worksheets, payroll records, financial statements

15  (audited and unaudited), pro formas and budgets from the period beginning

16  January 1, 1999 to the present.

17  **RESPONSE TO MOSS ADAMS REQUEST NO. 1**:

18          The MGA Entities incorporate by reference their General Objections as

19  though fully set forth herein.  The MGA Entities further object to the extent that this

20  request seeks information that is protected from disclosure under the attorney-client

21  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

22  Entities further object to this request to the extent it seeks documents protected by

23  the accountant-client privilege.  The MGA Entities further object to the request on

24  the grounds that it seeks documents protected from disclosure by applicable federal

25  and state tax return privileges.  The MGA Entities further object to this request to

26  the extent that it seeks documents that contain trade secrets, confidential,

27  commercially sensitive and/or other proprietary or competitive information that is

28  subject to the MGA Entities' or any other person's constitutional, statutory or

1 common law right of privacy or protection.  The MGA Entities further object that
2 this request calls for the production of documents that are not relevant to a claim or
3 defense in the pending litigation or reasonably calculated to lead to the discovery of
4 admissible evidence.  The MGA Entities further object to this request as being
5 overly broad, burdensome and harassing to a non-party to the extent that it seeks to
6 force Moss Adams to produce documents or information available from parties to
7 the litigation.  The MGA Entities further object to this request on the grounds that it
8 is overbroad as to subject matter and time; in particular, the MGA Entities object to
9 the definitions of "RELATING TO" and "MGA," on the grounds that they are
10 overbroad, vague and ambiguous.  The MGA Entities further object on the grounds
11 that this request is vague, ambiguous and overbroad, particularly as to the meaning
12 of "accounting records," "schedules," "work papers," "worksheets," "financial
13 statements," "pro formas" and "budgets."

14 **MOSS ADAMS REQUEST NO. 2**:

15        All DOCUMENTS RELATING TO ISAAC LARIAN, including
16 without limitation accounting records, tax returns and schedules (including without
17 limitation Form 1040, Form 1099, Form 1120, Schedule E and Schedule K-1) and
18 drafts thereof, W-2s, work papers, worksheets, payroll records, financial statements
19 (audited and unaudited), pro formas, budgets, account information and account
20 statements, from the period beginning January 1, 1999 to the present.

21 **RESPONSE TO MOSS ADAMS REQUEST NO. 2**:

22        The MGA Entities incorporate by reference their General Objections as
23 though fully set forth herein.  The MGA Entities further object to the extent that this
24 request seeks information that is protected from disclosure under the attorney-client
25 privilege, the work product doctrine and/or the joint interest privilege.  The MGA
26 Entities further object to this request to the extent it seeks documents protected by
27 the accountant-client privilege.  The MGA Entities further object to the request on
28 the grounds that it seeks documents protected from disclosure by applicable federal

07209/2339253.2

-134-

1    and state tax return privileges.  The MGA Entities further object to this request to

2    the extent that it seeks documents that contain trade secrets, confidential,

3    commercially sensitive and/or other proprietary or competitive information that is

4    subject to the MGA Entities' or any other person's constitutional, statutory or

5    common law right of privacy or protection.  The MGA Entities further object that

6    this request calls for the production of documents that are not relevant to a claim or

7    defense in the pending litigation or reasonably calculated to lead to the discovery of

8    admissible evidence.  The MGA Entities further object to this request as being

9    overly broad, burdensome and harassing to a non-party to the extent that it seeks to

10   force Moss Adams to produce documents or information available from parties to

11   the litigation.  The MGA Entities further object to this request on the grounds that it

12   is overbroad as to subject matter and time; in particular, the MGA Entities object to

13   the definitions of "RELATING TO" and "ISAAC LARIAN," on the grounds that

14   they are overbroad, vague and ambiguous.  The MGA Entities further object on the

15   grounds that this request is vague, ambiguous and overbroad, particularly as to the

16   meaning of "accounting records," "schedules," "work papers," "worksheets,"

17   "financial statements," "pro formas," "account information," "account statements"

18   and "budgets."

19   **MOSS ADAMS REQUEST NO. 3**:

20           All DOCUMENTS RELATING TO FARHAD LARIAN, including

21   without limitation accounting records, tax returns and schedules (including without

22   limitation Form 1040, Form 1099, Form 1120, Schedule E and Schedule K-1) and

23   drafts thereof; W-2s, work papers, worksheets, payroll records, financial statements

24   (audited and unaudited), pro formas, budgets, account information and account

25   statements from the period beginning January 1, 1999 to the present.

26   **RESPONSE TO MOSS ADAMS REQUEST NO. 3**:

27           The MGA Entities incorporate by reference their General Objections as

28   though fully set forth herein.  The MGA Entities further object to the extent that this

07209/2339253.2

-135-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  request seeks information that is protected from disclosure under the attorney-client

2  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

3  Entities further object to this request to the extent it seeks documents protected by

4  the accountant-client privilege.  The MGA Entities further object to the request on

5  the grounds that it seeks documents protected from disclosure by applicable federal

6  and state tax return privileges.  The MGA Entities further object to this request to

7  the extent that it seeks documents that contain trade secrets, confidential,

8  commercially sensitive and/or other proprietary or competitive information that is

9  subject to the MGA Entities' or any other person's constitutional, statutory or

10  common law right of privacy or protection.  The MGA Entities further object that

11  this request calls for the production of documents that are not relevant to a claim or

12  defense in the pending litigation or reasonably calculated to lead to the discovery of

13  admissible evidence.  The MGA Entities further object to this request as being

14  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

15  force Moss Adams to produce documents or information available from parties to

16  the litigation.  The MGA Entities further object to this request on the grounds that it

17  is overbroad as to subject matter and time; in particular, the MGA Entities object to

18  the definitions of "RELATING TO" and "FARHAD LARIAN," on the grounds that

19  they are overbroad, vague and ambiguous.  The MGA Entities further object on the

20  grounds that this request is vague, ambiguous and overbroad, particularly as to the

21  meaning of "accounting records," "schedules," "work papers," "worksheets,"

22  "financial statements," "pro formas," "account information," "account statements"

23  and "budgets."

24  **MOSS ADAMS REQUEST NO. 4**:

25  　　　　　All DOCUMENTS RELATING TO the ISAAC AND ANGELA

26  LARIAN TRUST, including without limitation accounting records, tax returns and

27  schedules (including without limitation Form 1040, Form 1099, Form 1120,

28  Schedule E and Schedule K-1) and drafts thereof, W-2s, work papers, worksheets,

-136-

1    payroll records, financial statements (audited and unaudited), pro formas, budgets,

2    account information and account statements from the period beginning January 1,

3    1999 to the present.

4    **RESPONSE TO MOSS ADAMS REQUEST NO. 4**:

5            The MGA Entities incorporate by reference their General Objections as

6    though fully set forth herein.  The MGA Entities further object to the extent that this

7    request seeks information that is protected from disclosure under the attorney-client

8    privilege, the work product doctrine and/or the joint interest privilege.  The MGA

9    Entities further object to this request to the extent it seeks documents protected by

10    the accountant-client privilege.  The MGA Entities further object to the request on

11    the grounds that it seeks documents protected from disclosure by applicable federal

12    and state tax return privileges.  The MGA Entities further object to this request to

13    the extent that it seeks documents that contain trade secrets, confidential,

14    commercially sensitive and/or other proprietary or competitive information that is

15    subject to the MGA Entities' or any other person's constitutional, statutory or

16    common law right of privacy or protection.  The MGA Entities further object that

17    this request calls for the production of documents that are not relevant to a claim or

18    defense in the pending litigation or reasonably calculated to lead to the discovery of

19    admissible evidence.  The MGA Entities further object to this request as being

20    overly broad, burdensome and harassing to a non-party to the extent that it seeks to

21    force Moss Adams to produce documents or information available from parties to

22    the litigation.  The MGA Entities further object to this request on the grounds that it

23    is overbroad as to subject matter and time; in particular, the MGA Entities object to

24    the definitions of "RELATING TO" and "ISAAC AND ANGELA LARIAN

25    TRUST," on the grounds that they are overbroad, vague and ambiguous.  The MGA

26    Entities further object on the grounds that this request is vague, ambiguous and

27    overbroad, particularly as to the meaning of "accounting records," "schedules,"

28

1    "work papers," "worksheets," "financial statements," "pro formas," "account

2    information," "account statements" and "budgets."

3    **MOSS ADAMS REQUEST NO. 5**:

4              All DOCUMENTS RELATING TO the ISAAC LARIAN ANNUITY

5    TRUST, including without limitation accounting records, tax returns and schedules

6    (including without limitation Form 1040, Form 1099, Form 1120, Schedule E and

7    Schedule K-1) and drafts thereof, W-2s, work papers, worksheets, payroll records,

8    financial statements (audited and unaudited), pro formas, budgets, account

9    information and account statements from the period beginning January 1, 1999 to

10    the present.

11    **RESPONSE TO MOSS ADAMS REQUEST NO. 5**:

12              The MGA Entities incorporate by reference their General Objections as

13    though fully set forth herein. The MGA Entities further object to the extent that this

14    request seeks information that is protected from disclosure under the attorney-client

15    privilege, the work product doctrine and/or the joint interest privilege. The MGA

16    Entities further object to this request to the extent it seeks documents protected by

17    the accountant-client privilege. The MGA Entities further object to the request on

18    the grounds that it seeks documents protected from disclosure by applicable federal

19    and state tax return privileges. The MGA Entities further object to this request to

20    the extent that it seeks documents that contain trade secrets, confidential,

21    commercially sensitive and/or other proprietary or competitive information that is

22    subject to the MGA Entities' or any other person's constitutional, statutory or

23    common law right of privacy or protection. The MGA Entities further object that

24    this request calls for the production of documents that are not relevant to a claim or

25    defense in the pending litigation or reasonably calculated to lead to the discovery of

26    admissible evidence. The MGA Entities further object to this request as being

27    overly broad, burdensome and harassing to a non-party to the extent that it seeks to

28    force Moss Adams to produce documents or information available from parties to

-138-

1 the litigation.  The MGA Entities further object to this request on the grounds that it

2 is overbroad as to subject matter and time; in particular, the MGA Entities object to

3 the definitions of "RELATING TO" and "ISAAC LARIAN ANNUITY TRUST,"

4 on the grounds that they are overbroad, vague and ambiguous.  The MGA Entities

5 further object on the grounds that this request is vague, ambiguous and overbroad,

6 particularly as to the meaning of "accounting records," "schedules," "work papers,"

7 "worksheets," "financial statements," "pro formas," "account information," "account

8 statements" and "budgets."

9 **MOSS ADAMS REQUEST NO. 6**:

10          To the extent not included in your production responsive to Request

11 Nos. 1-5, all DOCUMENTS indicating ISAAC LARIAN's net worth.

12 **RESPONSE TO MOSS ADAMS REQUEST NO. 6**:

13          The MGA Entities incorporate by reference their General Objections as

14 though fully set forth herein.  The MGA Entities further object to the extent that this

15 request seeks information that is protected from disclosure under the attorney-client

16 privilege, the work product doctrine and/or the joint interest privilege.  The MGA

17 Entities further object to this request to the extent it seeks documents protected by

18 the accountant-client privilege.  The MGA Entities further object to the request on

19 the grounds that it seeks documents protected from disclosure by applicable federal

20 and state tax return privileges.  The MGA Entities further object to this request to

21 the extent that it seeks documents that contain trade secrets, confidential,

22 commercially sensitive and/or other proprietary or competitive information that is

23 subject to the MGA Entities' or any other person's constitutional, statutory or

24 common law right of privacy or protection.  The MGA Entities further object that

25 this request calls for the production of documents that are not relevant to a claim or

26 defense in the pending litigation or reasonably calculated to lead to the discovery of

27 admissible evidence.  The MGA Entities further object to this request as being

28 overly broad, burdensome and harassing to a non-party to the extent that it seeks to

1  force Moss Adams to produce documents or information available from parties to

2  the litigation.  The MGA Entities further object to this request on the grounds that it

3  is overbroad as to subject matter and time; in particular, the MGA Entities object to

4  the definition of "ISAAC LARIAN," on the grounds that it is overbroad, vague and

5  ambiguous.  The MGA Entities further object on the grounds that this request is

6  vague, ambiguous and overbroad, particularly as to the meaning of "indicating."

7  **MOSS ADAMS REQUEST NO. 7**:

8          To the extent not included in your production responsive to Request

9  Nos. 1-6, all DOCUMENTS indicating MGA' s net worth.

10 **RESPONSE TO MOSS ADAMS REQUEST NO. 7**:

11          The MGA Entities incorporate by reference their General Objections as

12 though fully set forth herein.  The MGA Entities further object to the extent that this

13 request seeks information that is protected from disclosure under the attorney-client

14 privilege, the work product doctrine and/or the joint interest privilege.  The MGA

15 Entities further object to this request to the extent it seeks documents protected by

16 the accountant-client privilege.  The MGA Entities further object to the request on

17 the grounds that it seeks documents protected from disclosure by applicable federal

18 and state tax return privileges.  The MGA Entities further object to this request to

19 the extent that it seeks documents that contain trade secrets, confidential,

20 commercially sensitive and/or other proprietary or competitive information that is

21 subject to the MGA Entities' or any other person's constitutional, statutory or

22 common law right of privacy or protection.  The MGA Entities further object that

23 this request calls for the production of documents that are not relevant to a claim or

24 defense in the pending litigation or reasonably calculated to lead to the discovery of

25 admissible evidence.  The MGA Entities further object to this request as being

26 overly broad, burdensome and harassing to a non-party to the extent that it seeks to

27 force Moss Adams to produce documents or information available from parties to

28 the litigation.  The MGA Entities further object to this request on the grounds that it

-140-

1    is overbroad as to subject matter and time; in particular, the MGA Entities object to

2    the definition of "MGA," on the grounds that it is overbroad, vague and ambiguous.

3    The MGA Entities further object on the grounds that this request is vague,

4    ambiguous and overbroad, particularly as to the meaning of "indicating."

5    **MOSS ADAMS REQUEST NO. 8:**

6              To the extent not included in your production responsive to Request

7    Nos. 1-7, all DOCUMENTS indicating or calculating the value of MGA's

8    intellectual property or goodwill.

9    **RESPONSE TO MOSS ADAMS REQUEST NO. 8:**

10             The MGA Entities incorporate by reference their General Objections as

11   though fully set forth herein.  The MGA Entities further object to the extent that this

12   request seeks information that is protected from disclosure under the attorney-client

13   privilege, the work product doctrine and/or the joint interest privilege.  The MGA

14   Entities further object to this request to the extent it seeks documents protected by

15   the accountant-client privilege.  The MGA Entities further object to the request on

16   the grounds that it seeks documents protected from disclosure by applicable federal

17   and state tax return privileges.  The MGA Entities further object to this request to

18   the extent that it seeks documents that contain trade secrets, confidential,

19   commercially sensitive and/or other proprietary or competitive information that is

20   subject to the MGA Entities' or any other person's constitutional, statutory or

21   common law right of privacy or protection.  The MGA Entities further object that

22   this request calls for the production of documents that are not relevant to a claim or

23   defense in the pending litigation or reasonably calculated to lead to the discovery of

24   admissible evidence.  The MGA Entities further object to this request as being

25   overly broad, burdensome and harassing to a non-party to the extent that it seeks to

26   force Moss Adams to produce documents or information available from parties to

27   the litigation.  The MGA Entities further object to this request on the grounds that it

28   is overbroad as to subject matter and time; in particular, the MGA Entities object to

-141-

1  the definition of "MGA," on the grounds that it is overbroad, vague and ambiguous.

2  The MGA Entities further object on the grounds that this request is vague,

3  ambiguous and overbroad, particularly as to the meaning of "intellectual property"

4  and "goodwill."

5  **MOSS ADAMS REQUEST NO. 12**:

6          All DOCUMENTS evidencing, showing or relating to payments to or

7  transfers of value from MGA to ISAAC LARIAN, ISAAC LARIAN ANNUITY

8  TRUST, or ISAAC AND ANGELA ANNUITY TRUST.

9  **RESPONSE TO MOSS ADAMS REQUEST NO. 12**:

10         The MGA Entities incorporate by reference their General Objections as

11  though fully set forth herein.  The MGA Entities further object to the extent that this

12  request seeks information that is protected from disclosure under the attorney-client

13  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

14  Entities further object to this request to the extent it seeks documents protected by

15  the accountant-client privilege.  The MGA Entities further object to the request on

16  the grounds that it seeks documents protected from disclosure by applicable federal

17  and state tax return privileges.  The MGA Entities further object to this request to

18  the extent that it seeks documents that contain trade secrets, confidential,

19  commercially sensitive and/or other proprietary or competitive information that is

20  subject to the MGA Entities' or any other person's constitutional, statutory or

21  common law right of privacy or protection.  The MGA Entities further object that

22  this request calls for the production of documents that are not relevant to a claim or

23  defense in the pending litigation or reasonably calculated to lead to the discovery of

24  admissible evidence.  The MGA Entities further object to this request as being

25  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

26  force Moss Adams to produce documents or information available from parties to

27  the litigation.  The MGA Entities further object to this request on the grounds that it

28  is overbroad as to subject matter and time; in particular, the MGA Entities object to

-142-

1 │ the definitions of "MGA," "ISAAC LARIAN," "ISAAC LARIAN ANNUITY

2 │ TRUST," and "ISAAC AND ANGELA ANNUITY TRUST," on the grounds that

3 │ they are overbroad, vague and ambiguous.  The MGA Entities further object on the

4 │ grounds that this request is vague, ambiguous and overbroad, particularly as to the

5 │ meaning of "relating to," "showing," "evidencing," "payments" and "transfers of

6 │ value."

7 │ **MOSS ADAMS REQUEST NO. 13**:

8 │ All DOCUMENTS evidencing, showing or relating to payments to or

9 │ transfers of value from MGA or ISAAC LARIAN to BRYANT.

10 │ **RESPONSE TO MOSS ADAMS REQUEST NO. 13**:

11 │ The MGA Entities incorporate by reference their General Objections as

12 │ though fully set forth herein.  The MGA Entities further object to the extent that this

13 │ request seeks information that is protected from disclosure under the attorney-client

14 │ privilege, the work product doctrine and/or the joint interest privilege.  The MGA

15 │ Entities further object to this request to the extent it seeks documents protected by

16 │ the accountant-client privilege.  The MGA Entities further object to the request on

17 │ the grounds that it seeks documents protected from disclosure by applicable federal

18 │ and state tax return privileges.  The MGA Entities further object to this request to

19 │ the extent that it seeks documents that contain trade secrets, confidential,

20 │ commercially sensitive and/or other proprietary or competitive information that is

21 │ subject to the MGA Entities' or any other person's constitutional, statutory or

22 │ common law right of privacy or protection.  The MGA Entities further object that

23 │ this request calls for the production of documents that are not relevant to a claim or

24 │ defense in the pending litigation or reasonably calculated to lead to the discovery of

25 │ admissible evidence.  The MGA Entities further object to this request as being

26 │ overly broad, burdensome and harassing to a non-party to the extent that it seeks to

27 │ force Moss Adams to produce documents or information available from parties to

28 │ the litigation.  The MGA Entities further object to this request on the grounds that it

07209/2339253.2

-143-

1 | is overbroad as to subject matter and time; in particular, the MGA Entities object to

2 | the definitions of "MGA," "ISAAC LARIAN," and "BRYANT," on the grounds that

3 | they are overbroad, vague and ambiguous.  The MGA Entities further object on the

4 | grounds that this request is vague, ambiguous and overbroad, particularly as to the

5 | meaning of "relating to," "showing," "evidencing," "payments" and "transfers of

6 | value."

7 | **MOSS ADAMS REQUEST NO. 14**:

8 |         All DOCUMENTS evidencing, showing or relating to payments to or

9 | transfers of value from MGA or ISAAC LARIAN to GARCIA.

10 | **RESPONSE TO MOSS ADAMS REQUEST NO. 14**:

11 |         The MGA Entities incorporate by reference their General Objections as

12 | though fully set forth herein.  The MGA Entities further object to the extent that this

13 | request seeks information that is protected from disclosure under the attorney-client

14 | privilege, the work product doctrine and/or the joint interest privilege.  The MGA

15 | Entities further object to this request to the extent it seeks documents protected by

16 | the accountant-client privilege.  The MGA Entities further object to the request on

17 | the grounds that it seeks documents protected from disclosure by applicable federal

18 | and state tax return privileges.  The MGA Entities further object to this request to

19 | the extent that it seeks documents that contain trade secrets, confidential,

20 | commercially sensitive and/or other proprietary or competitive information that is

21 | subject to the MGA Entities' or any other person's constitutional, statutory or

22 | common law right of privacy or protection.  The MGA Entities further object that

23 | this request calls for the production of documents that are not relevant to a claim or

24 | defense in the pending litigation or reasonably calculated to lead to the discovery of

25 | admissible evidence.  The MGA Entities further object to this request as being

26 | overly broad, burdensome and harassing to a non-party to the extent that it seeks to

27 | force Moss Adams to produce documents or information available from parties to

28 | the litigation.  The MGA Entities further object to this request on the grounds that it

-144-

1   is overbroad as to subject matter and time; in particular, the MGA Entities object to

2   the definitions of "MGA," "ISAAC LARIAN" and "GARCIA," on the grounds that

3   they are overbroad, vague and ambiguous.  The MGA Entities further object on the

4   grounds that this request is vague, ambiguous and overbroad, particularly as to the

5   meaning of "relating to," "showing," "evidencing," "payments" and "transfers of

6   value."

7   **MOSS ADAMS REQUEST NO. 15**:

8          All DOCUMENTS evidencing, showing or relating to payments to or

9   transfers of value from MGA or ISAAC LARIAN to MARLOW.

10  **RESPONSE TO MOSS ADAMS REQUEST NO. 15**:

11         The MGA Entities incorporate by reference their General Objections as

12  though fully set forth herein.  The MGA Entities further object to the extent that this

13  request seeks information that is protected from disclosure under the attorney-client

14  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

15  Entities further object to this request to the extent it seeks documents protected by

16  the accountant-client privilege.  The MGA Entities further object to the request on

17  the grounds that it seeks documents protected from disclosure by applicable federal

18  and state tax return privileges.  The MGA Entities further object to this request to

19  the extent that it seeks documents that contain trade secrets, confidential,

20  commercially sensitive and/or other proprietary or competitive information that is

21  subject to the MGA Entities' or any other person's constitutional, statutory or

22  common law right of privacy or protection.  The MGA Entities further object that

23  this request calls for the production of documents that are not relevant to a claim or

24  defense in the pending litigation or reasonably calculated to lead to the discovery of

25  admissible evidence.  The MGA Entities further object to this request as being

26  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

27  force Moss Adams to produce documents or information available from parties to

28  the litigation.  The MGA Entities further object to this request on the grounds that it

07209/2339253.2

-145-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1   is overbroad as to subject matter and time; in particular, the MGA Entities object to

2   the definitions of "MGA," "ISAAC LARIAN" and "MARLOW," on the grounds

3   that they are overbroad, vague and ambiguous.  The MGA Entities further object on

4   the grounds that this request is vague, ambiguous and overbroad, particularly as to

5   the meaning of "relating to," "showing," "evidencing," "payments" and "transfers of

6   value."

7   **MOSS ADAMS REQUEST NO. 16**:

8          All DOCUMENTS evidencing, showing or relating to non-payroll

9   payments to or transfers of value from MGA or ISAAC LARIAN to any FORMER

10  MATTEL EMPLOYEE.

11  **RESPONSE TO MOSS ADAMS REQUEST NO. 16**:

12         The MGA Entities incorporate by reference their General Objections as

13  though fully set forth herein.  The MGA Entities further object to the extent that this

14  request seeks information that is protected from disclosure under the attorney-client

15  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

16  Entities further object to this request to the extent it seeks documents protected by

17  the accountant-client privilege.  The MGA Entities further object to the request on

18  the grounds that it seeks documents protected from disclosure by applicable federal

19  and state tax return privileges.  The MGA Entities further object to this request to

20  the extent that it seeks documents that contain trade secrets, confidential,

21  commercially sensitive and/or other proprietary or competitive information that is

22  subject to the MGA Entities' or any other person's constitutional, statutory or

23  common law right of privacy or protection.  The MGA Entities further object that

24  this request calls for the production of documents that are not relevant to a claim or

25  defense in the pending litigation or reasonably calculated to lead to the discovery of

26  admissible evidence.  The MGA Entities further object to this request as being

27  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

28  force Moss Adams to produce documents or information available from parties to

07209/2339253.2

-146-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  the litigation.  The MGA Entities further object to this request on the grounds that it

2  is overbroad as to subject matter and time; in particular, the MGA Entities object to

3  the definitions of "MGA," "ISAAC LARIAN" and "FORMER MATTEL

4  EMPLOYEE," on the grounds that they are overbroad, vague and ambiguous.  The

5  MGA Entities further object on the grounds that this request is vague, ambiguous

6  and overbroad, particularly as to the meaning of "relating to," "showing,"

7  "evidencing," "non-payroll payments" and "transfers of value."

8  **MOSS ADAMS REQUEST NO. 18**:

9          DOCUMENTS sufficient to identify any other PERSON who has

10  served as MGA's, ISAAC LARIAN's, FARHAD LARIAN's, the ISAAC AND

11  ANGELA LARIAN FAMILY TRUST or the ISAAC LARIAN ANNUITY

12  TRUST'S auditor(s) or accountant(s) since January 1, 1999.

13  **RESPONSE TO MOSS ADAMS REQUEST NO. 18**:

14          The MGA Entities incorporate by reference their General Objections as

15  though fully set forth herein.  The MGA Entities further object to the extent that this

16  request seeks information that is protected from disclosure under the attorney-client

17  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

18  Entities further object to this request to the extent it seeks documents protected by

19  the accountant-client privilege.  The MGA Entities further object to the request to

20  the extent that it seeks documents protected from disclosure by applicable federal

21  and state tax return privileges.  The MGA Entities further object to this request to

22  the extent that it seeks documents that contain trade secrets, confidential,

23  commercially sensitive and/or other proprietary or competitive information that is

24  subject to the MGA Entities' or any other person's constitutional, statutory or

25  common law right of privacy or protection.  The MGA Entities further object that

26  this request calls for the production of documents that are not relevant to a claim or

27  defense in the pending litigation or reasonably calculated to lead to the discovery of

28  admissible evidence.  The MGA Entities further object to this request as being

07209/2339253.2

-147-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1 overly broad, burdensome and harassing to a non-party to the extent that it seeks to

2 force Moss Adams to produce documents or information available from parties to

3 the litigation.  The MGA Entities further object to this request on the grounds that it

4 is overbroad as to subject matter and time; in particular, the MGA Entities object to

5 the definitions of "MGA," "ISAAC LARIAN," "FARHAD LARIAN," "ISAAC

6 AND ANGELA LARIAN FAMILY TRUST," and "ISAAC LARIAN ANNUITY

7 TRUST," on the grounds that they are overbroad, vague and ambiguous.  The MGA

8 Entities further object on the grounds that this request is vague, ambiguous and

9 overbroad, particularly as to the meaning of "sufficient to identify."

10 **MOSS ADAMS REQUEST NO. 19**:

11 DOCUMENTS sufficient to identify all trusts or other entity in which

12 ISAAC LARIAN is an officer, director, member, shareholder or trustee; has or had a

13 direct or indirect ownership interest; had or has direct or indirect control or of which

14 he or any member of his family (by blood or marriage) is or was an owner,

15 shareholder, employee, officer, director, trustee, member or beneficiary.

16 **RESPONSE TO MOSS ADAMS REQUEST NO. 19**:

17 The MGA Entities incorporate by reference their General Objections as

18 though fully set forth herein.  The MGA Entities further object to the extent that this

19 request seeks information that is protected from disclosure under the attorney-client

20 privilege, the work product doctrine and/or the joint interest privilege.  The MGA

21 Entities further object to this request to the extent it seeks documents protected by

22 the accountant-client privilege.  The MGA Entities further object to the request to

23 the extent that it seeks documents protected from disclosure by applicable federal

24 and state tax return privileges.  The MGA Entities further object to this request to

25 the extent that it seeks documents that contain trade secrets, confidential,

26 commercially sensitive and/or other proprietary or competitive information that is

27 subject to the MGA Entities' or any other person's constitutional, statutory or

28 common law right of privacy or protection.  The MGA Entities further object that

1  this request calls for the production of documents that are not relevant to a claim or

2  defense in the pending litigation or reasonably calculated to lead to the discovery of

3  admissible evidence.  The MGA Entities further object to this request as being

4  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

5  force Moss Adams to produce documents or information available from parties to

6  the litigation.  The MGA Entities further object to this request on the grounds that it

7  is overbroad as to subject matter and time; in particular, the MGA Entities object to

8  the definition of "ISAAC LARIAN," on the grounds that it is overbroad, vague and

9  ambiguous.  The MGA Entities further object on the grounds that this request is

10  vague, ambiguous and overbroad, particularly as to the meaning of "indirect,"

11  "control" and "beneficiary."

12  **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**

13  **TRUST REQUEST NO. 1**:

14      All of YOUR formation DOCUMENTS, and drafts thereof.

15  **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**

16  **LARIAN ANNUITY TRUST REQUEST NO. 1**:

17      Objections to this Subpoena are not yet due.  The MGA Defendants'

18  objections to this request are reflected in the arguments set forth in this Separate

19  Statement and the accompanying Motion to Quash or, in the Alternative, for

20  Protective Order.

21  **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**

22  **TRUST REQUEST NO. 2**:

23      All of YOUR tax returns and schedules, including without limitation

24  Forms 1041 and 8453F, and Schedules C, C-EZ, D, E, F and K-1, and drafts thereof,

25  from the period beginning January 1, 1999 to the present.

26

27

28

07209/2339253.2

-149-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER