1  **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**

2  **LARIAN ANNUITY TRUST REQUEST NO. 2**:

3        Objections to this Subpoena are not yet due.  The MGA Defendants'

4  objections to this request are reflected in the arguments set forth in this Separate

5  Statement and the accompanying Motion to Quash or, in the Alternative, for

6  Protective Order.

7  **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**

8  **TRUST REQUEST NO. 3**:

9        To the extent not included in YOUR response to Request No. 2, all

10  DOCUMENTS relating to or reflecting YOUR tax liabilities from the period

11  beginning January 1, 1999 to the present.

12  **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**

13  **LARIAN ANNUITY TRUST REQUEST NO. 3**:

14        Objections to this Subpoena are not yet due.  The MGA Defendants'

15  objections to this request are reflected in the arguments set forth in this Separate

16  Statement and the accompanying Motion to Quash or, in the Alternative, for

17  Protective Order.

18  **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**

19  **TRUST REQUEST NO. 4**:

20        DOCUMENTS sufficient to identify each of YOUR trustees from the

21  period beginning January 1, 1999 to the present.

22  **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**

23  **LARIAN ANNUITY TRUST REQUEST NO. 4**:

24        Objections to this Subpoena are not yet due.  The MGA Defendants'

25  objections to this request are reflected in the arguments set forth in this Separate

26  Statement and the accompanying Motion to Quash or, in the Alternative, for

27  Protective Order.

28

07209/2339253.2

-150-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**
2  **TRUST REQUEST NO. 5:**
3          DOCUMENTS sufficient to identify each of YOUR beneficiaries from
4  the period beginning January 1, 1999 to the present.
5  **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**
6  **LARIAN ANNUITY TRUST REQUEST NO. 5:**
7          Objections to this Subpoena are not yet due.  The MGA Defendants'
8  objections to this request are reflected in the arguments set forth in this Separate
9  Statement and the accompanying Motion to Quash or, in the Alternative, for
10  Protective Order.
11  **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**
12  **TRUST REQUEST NO. 6:**
13          DOCUMENTS sufficient to identify all disbursements from YOU to
14  any of YOUR beneficiaries from the period beginning January 1, 1999 to the
15  present.
16  **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**
17  **LARIAN ANNUITY TRUST REQUEST NO. 6:**
18          Objections to this Subpoena are not yet due.  The MGA Defendants'
19  objections to this request are reflected in the arguments set forth in this Separate
20  Statement and the accompanying Motion to Quash or, in the Alternative, for
21  Protective Order.
22  **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**
23  **TRUST REQUEST NO. 7:**
24          DOCUMENTS sufficient to identify all assets YOU own or have
25  owned from the period beginning January 1, 1999 to the present.
26
27
28

1 **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**

2 **LARIAN ANNUITY TRUST REQUEST NO. 7**:

3         Objections to this Subpoena are not yet due.  The MGA Defendants'

4 objections to this request are reflected in the arguments set forth in this Separate

5 Statement and the accompanying Motion to Quash or, in the Alternative, for

6 Protective Order.

7 **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**

8 **TRUST REQUEST NO. 8**:

9         DOCUMENTS sufficient to identify all liabilities that YOU owe or

10 have owed for the period beginning January 1, 1999 to the present.

11 **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**

12 **LARIAN ANNUITY TRUST REQUEST NO. 8**:

13         Objections to this Subpoena are not yet due.  The MGA Defendants'

14 objections to this request are reflected in the arguments set forth in this Separate

15 Statement and the accompanying Motion to Quash or, in the Alternative, for

16 Protective Order.

17 **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**

18 **TRUST REQUEST NO. 14**:

19         DOCUMENTS sufficient to identify any person who has served as

20 YOUR auditor(s) or accountant(s) since January 1, 1999.

21 **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**

22 **LARIAN ANNUITY TRUST REQUEST NO. 14**:

23         Objections to this Subpoena are not yet due.  The MGA Defendants'

24 objections to this request are reflected in the arguments set forth in this Separate

25 Statement and the accompanying Motion to Quash or, in the Alternative, for

26 Protective Order.

27

28

07209/2339253.2

-152-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**
2  **TRUST REQUEST NO. 15**:

3  DOCUMENTS sufficient to identify all trusts or other entity in which
4  ISAAC LARIAN is an officer, director, member, shareholder or trustee; has or had a
5  direct or indirect ownership interest; has or had direct or indirect control of which he
6  or any member of his family (by blood or marriage) is or was an owner, shareholder,
7  employee, officer, director, trustee, member or beneficiary.

8  **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**
9  **LARIAN ANNUITY TRUST REQUEST NO. 15**:

10  Objections to this Subpoena are not yet due.  The MGA Defendants'
11  objections to this request are reflected in the arguments set forth in this Separate
12  Statement and the accompanying Motion to Quash or, in the Alternative, for
13  Protective Order.

14      **B.**    **MGA's Statements of Position**

15          **1.**    **MGA's Statement of Position Regarding Requests 1-5 to**
16                 **Wells Fargo; Requests 1-7 and 12 to Wachovia; Requests 1-3**
                  **and 8 to Ernst &Young; and Requests 1-3 and 8 to Deloitte &**
17                 **Touche**

18  In its subpoenas, Mattel has also demanded financial documents regarding
19  numerous non-parties, including everyone who has ever worked for or represented
20  MGA or Isaac Larian, and every conceivable relative of Mr. Larian.  (Park Decl.,
21  Ex. 11 (Wells Fargo Subpoena) at Requests 1-5; Ex. 9 (Wachovia Subpoena) at
22  Requests 1-7, 12; Exs. 7-8 (Ernst & Young and Deloitte & Touche Subpoenas) at
23  Requests 1-3, 8.) Such documents are plainly irrelevant and Mattel's efforts to
24  discover them constitute a clear abuse of the non-party discovery process.

25  Mattel has demanded that Wells Fargo, Ernst & Young, Deloitte & Touche
26  and Wachovia produce financial records for numerous non-parties by using an
27  overly broad definition of "MGA."  Specifically, Mattel has broadly defined "MGA"
28  to include "any of its current or former employees, officers, directors, agents,

07209/2339253.2

-153-
MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1 | representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

2 | interest and successors-in-interest, and any other PERSON acting on its behalf,

3 | pursuant to its authority or subject to its control." (Park Decl., Ex. 11 (Wells Fargo

4 | Subpoena) at 1.  See also Ex. 7 (Ernst & Young Subpoena) at 1-2; Ex. 8 (Deloitte &

5 | Touche Subpoena) at 1-2; Park Decl., Ex. 9 (Wachovia Subpoena) at 1-2.)

6 |      Mattel's sweeping definition has no legitimate purpose and were intended

7 | solely for harassment.  Mattel cannot credibly assert that the tax returns, financial

8 | statements, payroll records and other financial records for all of these non-parties

9 | are even remotely relevant to proving damages or establishing or refuting any of the

10 | parties' claims or defenses.  Even if Mattel could concoct some theory of relevance,

11 | any probative value would be far outweighed by the burden and expense associated

12 | with identifying all of these individuals and searching for and collecting responsive

13 | documents as to each of them, as well as by the substantial privacy interests of the

14 | many non-parties who would be affected by compliance with Mattel's subpoenas.

15 |      Mattel's attempt to seek financial records of non-parties such as everyone who

16 | has ever done any work for MGA or Mr. Larian mirrors the abusive non-party

17 | discovery tactics that Mattel and Quinn Emanuel employed in *Mattel, Inc. v.*

18 | *Walking Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003).  As was the case

19 | in *Walking Mountain*, none of the non-party information that Mattel is demanding in

20 | this case has anything to do with this litigation.  In addition, Mattel's requests are

21 | overly broad and have not been tailored in any way to focus on relevant documents

22 | that Mattel actually needs.  Indeed, Mattel appears to have deliberately drafted these

23 | requests to be as broad as possible.  Mattel's conduct is unconscionable and the

24 | Discovery Master should respond in the same manner that the district court and

25 | Ninth Circuit responded in *Walking Mountain*-quash these requests.

26 | **Mattel's Response:**

27 |      MGA's claim that these Requests seek financial information concerning non-

28 | parties is disingenuous, and demonstrates that lengths to which MGA will stoop to

-154-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  prevent Mattel from obtaining relevant documents necessary to its claims and

2  defenses in this action.

3       MGA claims that because the term "MGA" is defined to include MGA and its

4  employees, agents, representatives, etc., the third parties should not produce any

5  responsive documents at all, even those that are specific to MGA or Isaac Larian.

6  As a preliminary matter, it is customary for discovery requests to define persons and

7  corporate entities in this fashion.  Indeed, counsel for MGA has used similar

8  definitions in the past.  But, more importantly, it is evident from the Requests

9  themselves that they are seeking information about Larian and MGA's finances and

10  loans, and not that of all of their employees.  Obviously, if MGA were proceeding in

11  good faith, rather than in another obstructionist effort intended to preclude discovery

12  by Mattel, it would recognize that the proper resolution of this issue is for the third

13  parties to produce responsive documents concerning Larian and MGA's accounts,

14  loans, net worth, intellectual property and good will, not to attempt to halt

15  production altogether.  (Indeed, it is unlikely that the subpoenaed parties would have

16  responsive documents concerning all of Larian or MGA's employees in their

17  possession, custody or control, rendering MGA's concern moot.)

18       MGA also objects to the extent the subpoenas call for information concerning

19  Larian's children or other relatives.  As explained above and in Mattel's Opposition,

20  Mattel is entitled to information concerning Larian's net worth.  Payments that

21  Larian may have made to his children, relatives, employees or acquaintances during

22  the time period reflected in the subpoenas are relevant to his net worth, and efforts

23  he may have made to conceal his true net worth.  Moreover, transfers of value or

24  payments to others during the relevant time may also be relevant to Mattel's

25  remedies, including disgorgement, constructive trust, and punitive damages.  To the

26  extent the subpoenaed parties have information relating to Larian's net worth, as

27  well as that of MGA and the value of MGA's good will and its intellectual property,

28

1 | the discovery master has already deemed such information to be relevant, and it
2 | should therefore be produced.

3 |      See also, Mattel's response re Request Nos. 1-5 to Wells Fargo, Nos. 1-7 and
4 | 12 to Wachovia, and Nos. 1 - 3 and 8 to Ernst & Young and Deloitte & Touche,
5 | above, which Mattel incorporates by reference herein.

6 |

7 | **2.     MGA's Statement of Position Regarding Requests 1-8, 12-16,**
8 | **18, and 19 to Moss Adams**

9 |      In its subpoena to Moss Adams, Mattel has also demanded financial
10 | documents regarding numerous non-parties, including everyone who has ever
11 | worked for or represented MGA or Isaac Larian, and every conceivable relative of
12 | Mr. Larian. (Park Decl., Ex. 12 (Moss Adams Subpoena) at Requests 1-8, 12-16,
13 | 18, 19.) Such documents are plainly irrelevant and Mattel's efforts to discover them
14 | constitute a clear abuse of the non-party discovery process.

15 |      Mattel's subpoena to Moss Adams includes requests that expressly demand
16 | the production of a wide array of financial records relating to the Larian Trusts and
17 | Farhad Larian. (Park Decl., Ex. 12 (Moss Adams Subpoena) at Requests 3-5, 12.).
18 | The financial records of the Larian Trusts and Farhad Larian are not relevant to this
19 | case. None of them are parties to this litigation or alleged to have participated in
20 | any of the wrongful acts charged by Mattel.

21 |      Mattel asserts that financial information regarding Farhad Larian and the
22 | Larian Trusts is relevant to show what Mr. Larian did with his money. How Larian
23 | spent or invested his money, however, is irrelevant to the party's claims and
24 | defenses. Mattel's conversion counterclaim, for example, alleges that Mr. Larian
25 | wrongfully obtained property and monies belonging to Mattel. Mattel's Second Am.
26 | Answer and Counterclaim at 72-73. See *also id.* at 76 (requesting disgorgement of
27 | monies "obtained as a result of the conduct alleged herein"). How Larian spent or
28 | invested his money does not bear on the issue of where that money came from or

-156-

1  how Larian obtained it.  Nor is such information reasonably calculated to lead to

2  admissible evidence regarding that issue.

3      In addition to the Larian Trusts and Farhad Larian, Mattel has demanded that

4  Moss Adams produce financial records for numerous non-parties by using overly

5  broad definitions of "MGA" and "ISAAC LARIAN."  Specifically, Mattel has

6  broadly defined "MGA" to include "any of its current or former employees, officers,

7  directors, agents, representatives, attorneys, parents, subsidiaries, divisions,

8  affiliates, predecessors-in-interest and successors-in-interest, and any other

9  PERSON acting on its behalf, pursuant to its authority or subject to its control."

10  (Park Decl., Ex. 12 (Moss Adams Subpoena) at 3.)  Similarly, Mattel has defined

11  ""ISAAC LARIAN" to include "all of his current or former employees, agents,

12  representatives, attorneys, accountants, vendors, consultants, independent

13  contractors, predecessors-in-interest and successors-in-interest, relatives (whether by

14  blood or marriage), and any other PERSON acting on his behalf, pursuant to his

15  authority or subject to his control."  (Park Decl., Ex. 12 (Moss Adams Subpoena)

16  at 1.)

17      Mattel's sweeping definitions have no legitimate purpose and were intended

18  solely for harassment.  Indeed, Mattel's definition of Mr. Larian even extends to his

19  children.  Mattel cannot credibly assert that the tax returns, financial statements,

20  payroll records and other financial records for all of these non-parties are even

21  remotely relevant to proving damages or establishing or refuting any of the parties'

22  claims or defenses.  Even if Mattel could concoct some theory of relevance, any

23  probative value would be far outweighed by the burden and expense associated with

24  identifying all of these individuals and searching for and collecting responsive

25  documents as to each of them, as well as by the substantial privacy interests of the

26  many non-parties who would be affected by compliance with Mattel's subpoenas.

27      Mattel's attempt to seek financial records of non-parties such as the Larian

28  Trusts, all of Mr. Larian's relatives and everyone who has ever done any work for

07209/2339253.2

-157-

1  MGA or Mr. Larian mirrors the abusive non-party discovery tactics that Mattel and

2  Quinn Emanuel employed in *Walking Mountain*.  As was the case in *Walking*

3  *Mountain*, none of the non-party information that Mattel is demanding in this case

4  has anything to do with this litigation.  In addition, Mattel's requests are overly

5  broad and have not been tailored in any way to focus on relevant documents that

6  Mattel actually needs.  Indeed, Mattel appears to have deliberately drafted these

7  requests to be as broad as possible.  Mattel's conduct is unconscionable and the

8  Discovery Master should respond in the same manner that the district court and

9  Ninth Circuit responded in *Walking Mountain*-quash these requests.

10

11  **Mattel's Response:**

12      MGA's claim that these Requests seek financial information concerning non-

13  parties is disingenuous, and demonstrates that lengths to which MGA will stoop to

14  prevent Mattel from obtaining relevant documents necessary to its claims and

15  defenses in this action.

16      MGA claims that because the terms "Larian" and "MGA" are defined to

17  include agents, representatives and employees, etc. of Larian and MGA, the third

18  parties should not produce any responsive documents at all, even those that are

19  specific to Larian and MGA.  As a preliminary matter, it is customary for discovery

20  requests to define persons and corporate entities in this fashion.  Indeed, counsel for

21  MGA has used similar definitions in the past.  But, more importantly, it is evident

22  from the Requests themselves that they are seeking information about Larian and

23  MGA's finances and loans, and not that of all of its employees.  Obviously, if MGA

24  were proceeding in good faith, rather than in another obstructionist effort intended

25  to preclude discovery by Mattel, it would recognize that the proper resolution of this

26  issue is for the third parties to produce responsive documents concerning Larian's

27  finances and MGA's accounts, loans, net worth, intellectual property and good will,

28  not to attempt to halt production altogether.  (Indeed, it is unlikely that the

-158-

1 | subpoenaed parties would have responsive documents concerning all of Larian and

2 | MGA's employees in their possession, custody or control, rendering MGA's concern

3 | moot.)

4 |     MGA also objects to the extent the subpoenas call for information concerning

5 | Larian's children or other relatives.  As explained above and in Mattel's Opposition,

6 | Mattel is entitled to information concerning Larian's net worth.  Payments that

7 | Larian may have made to his children, relatives, employees or acquaintances during

8 | the relevant time are relevant to his net worth, and efforts he may have made to

9 | conceal his true net worth.  Moreover, transfers of value or payments to others

10 | during the relevant time may also be relevant to Mattel's remedies, including

11 | disgorgement, constructive trust, and punitive damages.

12 |     To the extent the subpoenaed parties have information relating to Larian's net

13 | worth, as well as that of MGA and the value of MGA's good will and its intellectual

14 | property, the discovery master has already deemed such information to be relevant,

15 | and it should therefore be produced.

16 |     MGA also objects to the Requests seeking information concerning disputes

17 | between Isaac Larian and his brother, Farhad Larian.  Farhard Larian was an

18 | executive with MGA who has been involved in various disputes related to MGA and

19 | his brother, Isaac Larian.  In fact, the Discovery Master has already ruled that legal

20 | disputes between Isaac Larian and his brother Farhad Larian are relevant because

21 | they involve, among other matters, the conception, creation and development of

22 | Bratz, and allegations that Isaac Larian concealed the conception, creation, and

23 | development of Bratz.  In particular, in a prior order the Discovery Master noted that

24 | this issue "appears to have been raised in the arbitration proceedings between

25 | MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian" and that

26 |

27 |

28 |

07209/2339253.2

-159-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    in those proceedings "Farhad Larian alleged that Isaac Larian concealed from him

2    that MGA was developing Bratz by early 2000."[119]

3           To the extent that any of the financial institutions or accounting firms have

4    documents concerning the <u>Larian v. Larian</u> disputes, it is likely to consist of

5    financial documents and records concerning the valuation of MGA, Bratz, and/or

6    the value of MGA's net worth, good will or intellectual property.  As explained

7    above, these documents are directly relevant to Mattel's remedies, claims and

8    defenses.

9           Moss Adams is Isaac Larian's tax accountant.  As such, it possesses

10   documents highly relevant to Larian's net worth.  Indeed, the Court has recognized

11   the relevance of the information in Moss Adams' possession, having granted leave to

12   Mattel to take the deposition of Moss Adams.[120]  For example, Request Nos. 1

13   through 3 seek MGA, Isaac Larian, and Farhad Larian's accounting records, tax

14   returns, and related documents.  For another example, Request No. 1 seeks, "All

15   DOCUMENTS RELATING TO MGA, including without limitation accounting

16   records, tax returns and schedules (including without limitation Form 1040, Form

17   1099, Form 1120, Schedule E or Schedule K-1) and drafts thereof, work papers,

18   worksheets, payroll records, financial statements (audited and unaudited), pro

19   formas and budgets from the period beginning January 1, 1999 to the present."

20          Mattel has learned that Larian holds substantial amount of MGA stock

21   through a trust or trusts.  Request Nos. 4 and 5 seek the same kinds of financial

22   documents about the Larian Trusts.  For example, Request No. 4 seeks, "All

23   DOCUMENTS RELATING TO the ISAAC AND ANGELA LARIAN TRUST,

24   including without limitation accounting records, tax returns and schedules

25   (including without limitation Form 1040, Form 1099, Form 1120, Schedule E and

26   _____

27   [119]  <u>See</u> Exh. Q [Discovery Master's Order dated May 15, 2007 at 10-11].

28   [120]  Exh. BB [December 7, 2007 Order].

1   Schedule K-1) and drafts thereof, W-2s, work papers, worksheets, payroll records,

2   financial statements (audited and unaudited), pro formas, budgets, account

3   information and account statements from the period beginning January 1, 1999 to

4   the present."

5          See also, Mattel's response re Request Nos. 1, 2, 6-8, 12-16 and 18 to Moss

6   Adams, above, which Mattel incorporates by reference herein.

7

8          **3.    MGA's Statement of Position Regarding Requests 1-8, 14,**

9                  **and 15 to the Isaac and Angela Larian Trust and the Isaac**

10                 **Larian Annuity Trust[121]**

11         In its subpoenas to the Larian Trusts, Mattel has demanded financial

12  documents regarding numerous non-parties, including everyone who has ever

13  worked for or represented MGA or Isaac Larian, and every conceivable relative of

14  Mr. Larian.  (Park Decl., Exs. 13-14 (Larian Trusts Subpoenas) at Requests 1-8, 14,

15  15.) Such documents are plainly irrelevant and Mattel's efforts to discover them

16  constitute a clear abuse of the non-party discovery process.

17         Mattel's subpoenas to the Larian Trusts, for example, include requests that

18  expressly demand the production of a wide array of financial records relating to the

19  Larian Trusts.  Among the documents sought from the Larian Trusts are [a]ll of

20  [their] formation DOCUMENTS," all tax returns and any other tax-related

21  documents from 1999 to the present, and documents relating to every material

22  aspect of the Larian Trusts' operation since 1999, including every trustee and

23  beneficiary of each trust, every disbursement made by each trust, every asset owned

24

25

26  _____

27  [121]   This Statement deals with subpoenas to Isaac and Angela Larian Trust and
    the Isaac Larian Annuity Trust in the same section because Mattel's requests to each

28  of these parties are identical.

-161-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1 | by each trust, and every liability owed by each trust. (Park Decl., Exs. 13-14
2 | (Larian Trusts Subpoenas) at Requests 1-8.)

3 |   The financial records of the Larian Trusts are not relevant to this case. They
4 | are not parties to this litigation or alleged to have participated in any of the wrongful
5 | acts charged by Mattel. Mattel asserts that financial information regarding the
6 | Larian Trusts is relevant to show what Mr. Larian did with his money. How Larian
7 | spent or invested his money, however, is irrelevant to the party's claims and
8 | defenses. Mattel's conversion counterclaim, for example, alleges that Mr. Larian
9 | wrongfully obtained property and monies belonging to Mattel. Mattel's Second Am.
10 | Answer and Counterclaim at 72-73. *See also id.* at 76 (requesting disgorgement of
11 | monies "obtained as a result of the conduct alleged herein"). How Larian spent or
12 | invested his money does not bear on the issue of where that money came from or
13 | how Larian obtained it. Nor is such information reasonably calculated to lead to
14 | admissible evidence regarding that issue.

15 |   Mattel's attempt to seek financial records of non-parties such as the Larian
16 | Trusts mirrors the abusive non-party discovery tactics that Mattel and Quinn
17 | Emanuel employed in *Walking Mountain*. As was the case in *Walking Mountain*,
18 | none of the non-party information that Mattel is demanding in this case has anything
19 | to do with this litigation. In addition, these requests are overly broad and have not
20 | been tailored in any way to focus on relevant documents that Mattel actually needs.
21 | Indeed, Mattel appears to have deliberately drafted these requests to be as broad as
22 | possible. Mattel's conduct is unconscionable and the Discovery Master should
23 | respond in the same manner that the district Discovery Master and Ninth Circuit
24 | responded in *Walking Mountain*-quash these requests.

25 | **Mattel's Response:**

26 |   MGA's claim that these Requests seek financial information concerning non-
27 | parties is disingenuous, and demonstrates that lengths to which MGA will stoop to

28 |

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  prevent Mattel from obtaining relevant documents necessary to its claims and

2  defenses in this action.

3       MGA claims that because the terms "Larian" and "MGA" are defined to

4  include agents, representatives and employees, etc. of Larian and MGA, the third

5  parties should not produce any responsive documents at all, even those that are

6  specific to Larian and MGA.  As a preliminary matter, it is customary for discovery

7  requests to define persons and corporate entities in this fashion.  Indeed, counsel for

8  MGA has used similar definitions in the past.  But, more importantly, it is evident

9  from the Requests themselves that they are seeking information about Larian and

10  MGA's finances and loans, and not that of all of its employees.  Obviously, if MGA

11  were proceeding in good faith, rather than in another obstructionist effort intended

12  to preclude discovery by Mattel, it would recognize that the proper resolution of this

13  issue is for the third parties to produce responsive documents concerning Larian's

14  finances and MGA's accounts, loans, net worth, intellectual property and good will,

15  not to attempt to halt production altogether.  (Indeed, it is unlikely that the

16  subpoenaed parties would have responsive documents concerning all of Larian and

17  MGA's employees in their possession, custody or control, rendering MGA's concern

18  moot.)

19       MGA also objects to the extent the subpoenas call for information concerning

20  Larian's children or other relatives.  As explained above and in Mattel's Opposition,

21  Mattel is entitled to information concerning Larian's net worth.  Payments that

22  Larian may have made to his children, relatives, employees or acquaintances during

23  the relevant time are relevant to his net worth, and efforts he may have made to

24  conceal his true net worth.  Moreover, transfers of value or payments to others

25  during the relevant time may also be relevant to Mattel's remedies, including

26  disgorgement, constructive trust, and punitive damages.

27       To the extent the subpoenaed parties have information relating to Larian's net

28  worth, as well as that of MGA and the value of MGA's good will and its intellectual

07209/2339253.2

-163-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  property, the discovery master has already deemed such information to be relevant,
2  and it should therefore be produced.

3       MGA also objects to the Requests seeking information concerning disputes
4  between Isaac Larian and his brother, Farhad Larian.  Farhard Larian was an
5  executive with MGA who has been involved in various disputes related to MGA and
6  his brother, Isaac Larian.  In fact, the Discovery Master has already ruled that legal
7  disputes between Isaac Larian and his brother Farhad Larian are relevant because
8  they involve, among other matters, the conception, creation and development of
9  Bratz, and allegations that Isaac Larian concealed the conception, creation, and
10 development of Bratz.  In particular, in a prior order the Discovery Master noted that
11 this issue "appears to have been raised in the arbitration proceedings between
12 MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian" and that
13 in those proceedings "Farhad Larian alleged that Isaac Larian concealed from him
14 that MGA was developing Bratz by early 2000."[122]

15       The subpoenas served on the Larian trusts also seek information relevant to
16 Isaac Larian's net worth.  Larian argues that these documents should not be
17 produced because "how Larian spent or invested his money" is "irrelevant to the
18 party's claims and defenses."[123]  That is exactly wrong.  Isaac Larian's investments
19 are what make up his net worth, a subject both the Discovery Master and Judge
20 Larson found to be within the bounds of discovery.  Further, for purposes of
21 calculating net worth for punitive damages, Mattel is entitled to add back what
22 Larian spent during the period of wrongdoing.   In other words, neither Isaac Larian
23 or any other person can deflate net worth by spending or transferring away their
24 assets.

25
26 _____
27 [122]  Exh. Q [Discovery Master's Order dated May 15, 2007 at 10-11].
[123]  Motion at 20:3-9.
28

07209/2339253.2
MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    Additionally, Mattel has learned that Larian holds substantial amount of

2  MGA stock through a trust or trusts, but he and his counsel have not cooperated in

3  identifying specifically which trusts hold that stock.[124]  Mattel understands that

4  MGA has transferred approximately $500 million in dividends to its shareholders,

5  which include Larian and/or some or all of the Larian trusts.[125]  That distribution

6  must be accounted for.  Request Nos. 1, 4, and 5, request documents regarding the

7  formation of the trust, as well the identities of its trustees and beneficiaries.[126]  This

8  would establish MGA and Larian's relationship with the trusts.  Request Nos. 2 and

9  3 seek information regarding tax returns, tax liability, and related documents.[127]

10  Request Nos. 6 and 7 seek documents reflecting the Larian trusts' disbursements and

11  assets.  Such documents would indicate the amounts of money Larian may have

12  received, as well as the Larian trusts' involvement in any work on Bratz or other

13  MGA products.

14

15

16

17  [124]  Exh. O to Corey Dec. [Tonnu Tr. 49:3-51:24; 54:17-55:8].
     [125]  Exh. P to Corey Dec. [Audited Financial Statements].
18   [126]      • All of YOUR formation DOCUMENTS, and drafts
            thereof. [Requests No. 1].

19        • DOCUMENTS sufficient to identify each of YOUR
            trustees from the period beginning January 1, 1999 to the
20          present. [Request No. 4].

21        • DOCUMENTS sufficient to identify each of YOUR
            beneficiaries from the period beginning January 1, 1999 to
22          the present. [Request No. 5].

23   [127]      • All of YOUR tax returns and schedules, including
            without limitation Forms 1041 and 8453F, and Schedules
24          C, C-EZ, D, E, F and K-1, and drafts thereof, from the
            period beginning January 1, 1999 to the present.  [Request
25          No. 2].

26        • To the extent not included in YOUR response to
            Request No. 2, all DOCUMENTS relating to or reflecting
27          YOUR tax liabilities from the period beginning January 1,
            1999 to the present.  [Request No. 3].

28

-165-

1    Request Nos. 4 and 5 seek the same kinds of documents about the Larian

2    Trusts.  For example, Request No. 4 seeks, "All DOCUMENTS RELATING TO the

3    ISAAC AND ANGELA LARIAN TRUST, including without limitation accounting

4    records, tax returns and schedules (including without limitation Form 1040, Form

5    1099, Form 1120, Schedule E and Schedule K-1) and drafts thereof, W-2s, work

6    papers, worksheets, payroll records, financial statements (audited and unaudited),

7    pro formas, budgets, account information and account statements from the period

8    beginning January 1, 1999 to the present."

9

10   **III.    THE DISCOVERY MASTER SHOULD QUASH OR ENTER A**
         **PROTECTIVE ORDER WITH RESPECT TO THE REQUESTS IN**
11       **WHICH MATTEL SEEKS IRRELEVANT AND DUPLICATIVE**
         **INFORMATION REGARDING LITIGATION BETWEEN ISAAC**
12       **AND FARHAD LARIAN. (REQUEST 10 TO WACHOVIA•**
         **REQUEST 6 TO ERNST & YOUNG; REQUEST 6 TO DELOITTE &**
13       **TOUCHE; REQUEST 11 TO MOSS ADAMS; REQUEST 14 TO**
         **CONSUMERQUEST• REQUEST 12 TO THE ISAAC AND ANGELA**
14       **LARIAN TRUST; REQUEST 12 TO THE ISAAC LARIAN ANNUITY**
         **TRUST)**
15
16
17       **A.    Mattel's Requests and MGA's Responses**

18   **WACHOVIA REQUEST NO. 10**:

19            All documents relating to the FARHAD LARIAN DISPUTES,

20   including without limitation any discovery requests received by YOU in connection

21   therewith and any communications between YOU and counsel for Farhad Larian or

22   counsel for Isaac Larian.

23   **RESPONSE TO WACHOVIA REQUEST NO. 10**:

24            The MGA Entities incorporate by reference their General Objections as

25   though fully set forth herein.  The MGA Entities further object to the extent that this

26   request seeks information that is protected from disclosure under the attorney-client

27   privilege, the work product doctrine and/or the joint interest privilege.  The MGA

28   Entities further object to this request to the extent that it seeks documents that

07209/2339253.2

-166-

1  contain trade secrets, confidential, commercially sensitive and/or other proprietary

2  or competitive information that is subject to the MGA Entities' or any other person's

3  constitutional, statutory or common law right of privacy or protection. The MGA

4  Entities further object that this request calls for the production of documents that are

5  not relevant to the subject matter involved in the pending litigation or reasonably

6  calculated to lead to the discovery of admissible evidence. The MGA Entities

7  further object to this request as being overly broad, burdensome and harassing to a

8  non-party to the extent that it seeks to force Wachovia to produce documents or

9  information available from parties to the litigation. The MGA Entities further object

10  to this request on the grounds that it is overbroad, vague and ambiguous, particularly

11  as to the meaning of "communications," "relating to" and " FARHAD LARIAN

12  DISPUTES."

13  **ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST NO. 6**:

14          All documents relating to the FARHAD LARIAN DISPUTES,

15  including without limitation any discovery requests received by YOU in connection

16  therewith and any communications between YOU and counsel for Farhad Larian or

17  counsel for Isaac Larian.

18  **RESPONSE TO ERNST & YOUNG AND DELOITTE & TOUCHE**

19  **REQUEST NO. 6**:

20          The MGA Entities incorporate by reference their General Objections as

21  though fully set forth herein. The MGA Entities further object to the extent that this

22  request seeks information that is protected from disclosure under the attorney-client

23  privilege, the work product doctrine and/or the joint interest privilege. The MGA

24  Entities further object to this request to the extent it seeks documents protected by

25  the accountant-client privilege. The MGA Entities further object to the request on

26  the grounds that it seeks documents protected from disclosure by applicable federal

27  and state tax return privileges. The MGA Entities further object to this request to

28  the extent that it seeks documents that contain trade secrets, confidential,

07209/2339253.2

-167-

1 commercially sensitive and/or other proprietary or competitive information that is
2 subject to the MGA Entities' or any other person's constitutional, statutory or
3 common law right of privacy or protection.  The MGA Entities further object that
4 this request calls for the production of documents that are not relevant to the subject
5 matter involved in the pending litigation or reasonably calculated to lead to the
6 discovery of admissible evidence.  The MGA Entities further object to this request
7 as being overly broad, burdensome and harassing to a non-party to the extent that it
8 seeks to force D & T to produce documents or information available from parties to
9 the litigation.  The MGA Entities further object to this request on the grounds that it
10 is overbroad as to subject matter and time; in particular, the MGA Entities object to
11 the definition of "FARHAD LARIAN DISPUTES," on the grounds that it is
12 overbroad and refers to, purports to encompass, and purports to call for, documents
13 that are not relevant to the subject matter of this action or reasonably calculated to
14 lead to the discovery of admissible evidence.  The MGA Entities further object on
15 the grounds that this request is vague, ambiguous and overbroad, particularly as to
16 the meaning of "relating to."

17 **MOSS ADAMS REQUEST NO. 11**:

18 All DOCUMENTS RELATING TO the FARHAD LARIAN
19 DISPUTES, including without limitation any discovery requests received by YOU
20 in connection therewith and any communications between YOU and counsel for
21 FARHAD LARIAN or counsel for ISAAC LARIAN.

22 **RESPONSE TO MOSS ADAMS REQUEST NO. 11**:

23 The MGA Entities incorporate by reference their General Objections as
24 though fully set forth herein.  The MGA Entities further object to the extent that this
25 request seeks information that is protected from disclosure under the attorney-client
26 privilege, the work product doctrine and/or the joint interest privilege.  The MGA
27 Entities further object to this request to the extent it seeks documents protected by
28 the accountant-client privilege.  The MGA Entities further object to the request on

1   the grounds that it seeks documents protected from disclosure by applicable federal

2   and state tax return privileges.  The MGA Entities further object to this request to

3   the extent that it seeks documents that contain trade secrets, confidential,

4   commercially sensitive and/or other proprietary or competitive information that is

5   subject to the MGA Entities' or any other person's constitutional, statutory or

6   common law right of privacy or protection.  The MGA Entities further object that

7   this request calls for the production of documents that are not relevant to a claim or

8   defense in the pending litigation or reasonably calculated to lead to the discovery of

9   admissible evidence.  The MGA Entities further object to this request as being

10  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

11  force Moss Adams to produce documents or information available from parties to

12  the litigation.  The MGA Entities further object to this request on the grounds that it

13  is overbroad as to subject matter and time; in particular, the MGA Entities object to

14  the definitions of "RELATING TO," "FARHAD LARIAN DISPUTES," "YOU,"

15  "FARHAD LARIAN," and ""ISAAC LARIAN," on the grounds that they are

16  overbroad, vague and ambiguous.

17  **CONSUMERQUEST REQUEST NO. 14:**

18          All DOCUMENTS, including without limitation all

19  COMMUNICATIONS, REFERRING OR RELATING TO any lawsuit, arbitration,

20  legal action or other dispute between ISAAC LARIAN and FARHAD LARIAN.

21  **RESPONSE TO CONSUMERQUEST REQUEST NO. 14:**

22          The MGA Entities incorporate by reference their General Objections as

23  though fully set forth herein.  The MGA Entities further object to the extent that this

24  request seeks information that is protected from disclosure under the attorney-client

25  privilege, the work product doctrine.  The MGA Entities further object to this

26  request to the extent that it seeks documents that contain trade secrets, confidential,

27  commercially sensitive and/or other proprietary or competitive information that is

28  subject to the MGA Entities' or any other person's constitutional, statutory or

-169-

1  common law right of privacy or protection.  The MGA Entities further object that

2  this request calls for the production of documents that are not relevant to the claims

3  or defenses in this action or reasonably calculated to lead to the discovery of

4  admissible evidence.  The MGA Entities further object to this request on the

5  grounds that it is overbroad as to subject matter and time; in particular, the MGA

6  Entities object to the definitions of "REFERRING OR RELATING TO," "ISAAC

7  LARIAN," FARHAD LARIAN "legal action" and "dispute" as vague, ambiguous

8  and/or overbroad.

9  **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**

10  **TRUST REQUEST NO. 12**:

11  All DOCUMENTS RELATING TO the FARHAD LARIAN

12  DISPUTES, including without limitation any discovery requests received by YOU

13  in connection therewith and any communications between YOU and counsel for

14  FARHAD LARIAN or counsel for ISAAC LARIAN.

15  **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**

16  **LARIAN ANNUITY TRUST REQUEST NO. 12**:

17  Objections to this Subpoena are not yet due.  The MGA Defendants'

18  objections to this request are reflected in the arguments set forth in this Separate

19  Statement and the accompanying Motion to Quash or, in the Alternative, for

20  Protective Order.

21  **B.  MGA's Statements of Position**

22  **1.  MGA's Statement of Position Regarding Request 10 to Wachovia; Request 6 to Ernst &Young• Request 6 to Deloitte & Touche; Request 11 to Moss Adams; Request 14 to ConsumerQuest; Request 12 to the Isaac and Angela Larian Trust; Request 12 to the Isaac Larian Annuity Trust**

26  Each of Mattel's subpoenas to the Non-Parties except Wells Fargo includes a

27  request for all documents relating to any litigation between Isaac Larian and his

28  brother Farhad.  (Park Decl., Ex. 9 (Wachovia Subpoena) at Request 10; Exs. 7-8

-170-

07209/2339253.2

1 (Ernst & Young and Deloitte & Touche Subpoenas) at Request 6; Ex. 12 (Moss

2 Adams Subpoena) at Request 11; Ex. 10 (ConsumerQuest Subpoena) at Request 14;

3 Exs. 13-14 (Larian Trusts Subpoenas) at Request 12.)  These requests are excessive

4 and unnecessary because Mattel has requested all such documents from the best

5 sources of those materials and, to the extent they are relevant and discoverable, has

6 obtained or will obtain the documents from those other sources.  See Fed. R. Civ. P.

7 26(b)(2)(C) (limiting discovery where it "is unreasonably cumulative or duplicative,

8 or can be obtained from some other source that is more convenient, less

9 burdensome, or less expensive"); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638

10 (C.D. Cal 2005) (finding subpoena unduly burdensome where subpoenaing party

11 "can more easily and inexpensively obtain the documents from [another party] ").

12     Mattel's requests to the Non-Parties for documents relating to any litigation

13 between Isaac and Farhad Larian are duplicative of requests that Mattel previously

14 served on Isaac Larian, MGA, Farhad Larian, Stern & Goldberg and Kaye Scholer.

15 (Park Decl., Ex. 28 (Comparison Chart) at 28-29, 44, 57, and 92.)  Mattel has

16 already received some documents in response to those previously served requests

17 and is currently engaged in motion practice with respect to the production of

18 additional documents by Isaac Larian, Farhad Larian and the law firms.  (Park Decl.,

19 ¶ 6.)  Notably, Mattel has not asserted that the Non-Parties possess any unique set of

20 relevant, non-privileged materials relating to litigation between Isaac and Farhad

21 Larian that neither Isaac Larian, Farhad Larian, nor the law firms possess.  Under

22 the circumstances, Mattel's duplicative requests to the Non-Parties are improper.

23     As to documents that Mattel has already received, Mattel's demand that the

24 Non-Parties search for and produce the same documents is unduly burdensome.  To

25 the extent production of additional documents is ordered in connection with the

26 pending discovery motions, Mattel's requests that the Non-Parties also produce

27 those documents would be improper since Mattel would already be obtaining such

28 materials from other sources.  Moreover, to the extent it is determined that Mattel is

-171-

1    not entitled to any further production by Isaac Larian, Farhad Larian or the two law

2    firms, Mattel should not be permitted to circumvent that ruling by seeking such

3    production from the Non-Parties.

4           Accordingly, these requests for documents relating to any litigation between

5    Isaac and Farhad Larian must be rejected.

6    **Mattel's Response:**

7           The burden on the party moving to quash a subpoena is a "heavy one."

8    Heat and Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1024-25 (Fed. Cir.

9    1986) (noting that "the factors required to be balanced by the trial court in

10   determining the propriety of a subpoena are the relevance of the discovery sought,

11   the requesting party's need, and the potential hardship to the party subject to the

12   subpoena."). Here, MGA has failed to meet its burden.

13          The Requests at issue seek documents related to litigation between Mr. Larian

14   and his brother, Farhad Larian.[128]  Though MGA purports to dispute the relevancy

15   of these documents, MGA fails to craft even an attenuated argument setting forth

16   MGA's reason for the irrelevancy of these materials.  Instead, MGA asserts that

17   "even if the documents were relevant," Mattel has already requested them from

18   other sources.[129]  That Mattel may have "requested" the documents from others is

19   not sufficient grounds to quash the subpoenas.

20          The third-party subpoenas seek documents related to Isaac Larian's

21   disputes with Farhad Larian.[130]  Farhard Larian was an executive with MGA who

22   has been involved in various disputes related to MGA and his brother, Isaac Larian.

23   In fact, the Discovery Master has already ruled that legal disputes between Isaac

24   Larian and his brother Farhad Larian are relevant because they involve, among other

25   _____

26   [128]  Exh. 9 to thePark Dec. [Mattel's Subpoena to Wachovia dated October 25,

27   2007].
     [129]  See Motion at 3:2-4; 21:20 to 22:3.
     [130]  Exhs. 7 and 8 to the Park Dec.

28

07209/2339253.2

1  matters, the conception, creation and development of Bratz, and allegations that

2  Isaac Larian concealed the conception, creation, and development of Bratz.  In

3  particular, in a prior order the Discovery Master noted that this issue "appears to

4  have been raised in the arbitration proceedings between MGA's chief executive

5  officer, Isaac Larian, and his brother Farhad Larian" and that in those proceedings

6  "Farhad Larian alleged that Isaac Larian concealed from him that MGA was

7  developing Bratz by early 2000."[131]

8          MGA argues that the subpoenas should be quashed because the

9  information sought is available from the parties.  However, MGA neglects to

10  mention that Larian has only produced documents just last week pursuant to another

11  order to compel, despite being ordered by the  Court to do so, and MGA has not

12  produced most of the documents sought by the subpoenas.

13          Although MGA claims to have produced "some" responsive

14  documents, it stops short of claiming that it has produced all of the documents

15  sought by the subpoenas.  Notably, MGA does not identify even a single document

16  that it produced that is responsive to this Request.

17          Even if the document requests served on the third parties were similar

18  to requests served on MGA and Larian, there has been no showing that MGA and

19  Larian have all of the same documents that are in the possession, custody, or control

20  of the third parties. For example, it is possible that documents pertaining to the

21  Larian disputes were provided to one or more of the third parties by Farhard Larian.

22  Isaac Larian may not have had or retained the same document and thus would not

23  produce it.  Without assurance that MGA and Larian have all of the same documents

24  as the subpoenaed parties, this objection is meritless.  In State Farm Mutual Auto

25  Ins. Co. v. Accurate Medical, P.C., the district court rejected a similar argument.

26  2007 WL 2993840 (E.D.N.Y. Oct. 10, 2007) (denying motion to quash).  There, the

27  ──────────────

28  [131]  See Exh. Q [May 15, 2007 at 10-11].

1   plaintiff sought documents regarding third-party financial relationships with the

2   defendant.  In response to the defendant's argument that such documents were

3   available from itself, the court found that it critical that "it is unlikely that the

4   moving defendants would, in fact, possess all the documents sought by plaintiff in

5   the subpoenas." Id. at *1.

6          Because documents may be available from other sources not grounds to

7   refuse production.[132]  "[A] person may not avoid a subpoena by saying that the

8   evidence sought from him is obtainable from another." Covey Oil Co. v.

9   Continental Oil Co., 340 F.2d 993, 998 (10th Cir. 1965) (overruled on other

10  grounds); State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL

11  2993840, at *1 (E.D.N.Y. 2007) (same); In re Bergeson, 112 F.R.D. 692, 695 (D.

12  Mont. 1986) (conclusory assertions that documents sought are available from others

13  more economically "does not constitute a showing of unreasonableness or

14  oppressiveness."); see also Plant Genetic Systems, N.V. v.  Northrup King Co., Inc.,

15  6 F. Supp. 2d 859, 861-862 (E.D. Mo. 1998) (third party subpoena proper where

16  information sought pertained to a central issue in the underlying claim, it was not

17  burdensome in light of plaintiff's diligent efforts to obtain the information from

18  defendant, and the nonparty had signed protective order prohibiting disclosed

19  information from being seen by plaintiffs counsel or nonparty's competitors).

20          As held by the State Farm court, "nothing in the Federal Rules of Civil

21  Procedure requires a litigant to rely solely on discovery obtained from an adversary

22  instead of utilizing subpoenas." Id. at *1.

23          Even if MGA and Larian had these documents, however, they have not

24  produced them.  MGA and Larian cannot refuse to produce for months, then object

25  when Mattel seeks documents from others.  Now, with weeks left in Phase One

26  discovery, Mattel does not have the luxury of waiting for MGA and Larian to get

27

28

-174-

1   around to producing.  Mattel needs documents to enforce its claims and to defend

2   against MGA's.  The availability of some documents from another source does not

3   justify quashing the subpoenas.

4              Apparently conceding that neither it nor Larian have in fact produced

5   all documents that are being sought from the third parties, MGA argues that the

6   subpoenas are unreasonably duplicative because they *__might__* produce additional

7   documents in the future.  Notably absent from their hollow promise is any specific

8   date by when the documents will be produced, or even a list of the specific

9   documents to be produced or the specific categories of document requests to which

10  they respond.  This "wait and see" and "trust me" approach, unsurprisingly, finds no

11  support in the case law and is an inadequate basis to grant the Motion to Quash.  It

12  also is premised on a poor track record.  Neither MGA or Larian have lived up to

13  their representations about producing relevant documents in the past.  Thus, it is not

14  unreasonable to have requested these highly relevant documents from the third-

15  parties.

16             Mattel cannot rely on MGA and Larian to actually produce all of the

17  responsive documents in their possession, custody and control, or that they will

18  produce it in their original condition.  As discussed above, Veronica Marlow, a

19  third-party witness who long worked directly with Bryant and MGA, testified that

20  she knew of at least three Mattel employees who *for years* worked on Bratz *while*

21  *they were employed by Mattel.*[133]  Neither MGA nor Bryant had disclosed this

22  information, despite repeated Court Orders and despite the fact that at least one of

23  these individuals was a co-worker of Bryant's at Mattel.  To the contrary, both

24  Bryant and MGA gave flat denials under oath that there was any other Mattel

---

[132]  See Motion at 11:5-15.
[133]  Exh. S at 288:8-289:21, 306:8-25; 307:8-308:1; 363:15-21[Deposition Transcript of Veronica Marlow ("Marlow Tr."), dated December 28, 2007].

07209/2339253.2

-175-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1   employees knowingly involved.[134]  Yet, by defendants' reasoning here, the Court

2   and Mattel should have been denied Ms. Marlow's plainly relevant evidence because

3   it purportedly duplicated discovery requested of defendants.  In fact, defendants

4   made that very argument to Judge Larson is resisting producing Ms. Marlow for

5   deposition in the first place, to no avail.

6              In the past, MGA has produced requested documents only *after* a third-

7   party's production exposed MGA's previous failures to produce.  What documents

8   MGA has produced has been the result of a protracted discovery process in which

9   MGA has demonstrated a pattern of failing to produce relevant, critical, and

10  incriminating, documents until faced with compulsion by the Court or after a third

11  party has already produced them.  For example, in September 2006, a third-party

12  witness, Steven Linker, produced Bratz design drawings and Bratz product

13  development documents.[135]  Linker's production included a multitude of Bratz

14  materials he had received from or exchanged with MGA and Bryant before Bryant

15  left Mattel.[136]  Neither MGA nor Bryant had produced many of them, however.

16  Notably, before Linker's testimony, MGA had produced an email relating to Bratz

17  development that Linker's design partner, Liz Hogan, had sent to MGA on

18  October 23, 2000 -- a date which was conveniently *after* Bryant left Mattel.  MGA,

19  however, had not produced the earlier emails—those pre-dating Bryant's last day of

20  employment at Mattel—that Hogan had exchanged with MGA on that very same

21  subject.  Mattel obtained those only after Linker produced them pursuant to

22  subpoena in September 2006.[137]  Thus, it has often been the case in this litigation

23

24  _____

25  [134]  Exh. W at 286:25-287:5 [Dep. Tr. of Carter Bryant, Vol. 2 ("Bryant Tr.")];
    Exh. O at 301:2-17 [Dep. Tr. of Lisa Tonnu, Vol. 2 ("Tonnu Tr.)]; Exh. X at 64-70

26  [MGA's Supp. Responses to Mattel's Revised Third Set of Interrogatories].

27  [135]  Corey Dec., ¶ 17; Exhs. F, G, and H.
    [136]  Id., at ¶ 18; Exh. H.
    [137]  Corey Dec., ¶ 18; Exhs. G and I.

28

1    that MGA has produced relevant and responsive documents only after a third-party

2    has already done so.

3                  Furthermore, Mattel must guard against the possibility of further

4    spoliation of evidence and/or document tampering.  Unfortunately, these concerns

5    are not merely speculative or theoretical.  It has already occurred.  For example,

6    former Mattel and present MGA employee Mr. Bryant was ordered--after initial

7    delay and refusal--to produce a computer for inspection in this matter.  Mattel

8    learned that a software program called "Evidence Eliminator" had been installed and

9    run on that hard drive.[138]  In addition, there has been credible evidence adduced in

10   this action that MGA has tampered with documents by altering their creation dates,

11   as indicated by fax headers (which were deleted).  The Court responded to the

12   concern of spoliation, and specifically the alteration of the creation date of the

13   documents described above, in an August 9, 2006 order.[139]  Although it did not find

14   the evidence rose to the level of requiring the appointment of a Court appointed

15   expert witness at the time.  It held, "There are serious questions concerning the

16   handling of these critical documents" that caused the Court "much concern about

17   whether the truth seeking functions of the adversarial system have been

18   fundamentally compromised in this case."  Id. at 11:10-13.  The Court also stressed

19   its "concern" over MGA's "handling of documents in its possession."[140]  Clearly,

20   therefore, Mattel is within its rights to obtain documents from third-parties even if

21   also in the possession of MGA and Larian.

22                  Given the unavailability of this information from both MGA, Larian,

23   and other sources, MGA's efforts to thwart Mattel's discovery requests seeking this

24

25

26   _____

     [138]   Exh. U to Corey Dec. [Irmen Tr. 285:15-287:6].
27   [139]   Id., at Exh. N [Court's August 9, 2006 Order at 9:4-18:14].
     [140]   Id., at 17:23-26.
28

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    information thus far, and the very real concern over spoliation and tampering, Mattel

2    should not be denied this discovery from third parties.[141]

3            MGA and Larian fail to show that the requests are so burdensome to

4    justify quashing the subpoenas.  A party claiming that production of requested

5    documents is unduly burdensome bears the burden of proving up their objection.

6    Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984)

7    (reversing district court's decision quashing subpoena).  The party cannot rest on

8    conclusory assertions.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966)

9    (reversing the quashing of a subpoena because of lack of specific evidence of

10   burden).  "The party must provide specific and compelling proof that the burden is

11   undue."  JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25

12   (Fed. Cl. Ct. 2007) (denying motion to quash).

13           Here, MGA and Isaac Larian offer no evidence--such as a declaration

14   or testimony--regarding the time, cost, or burden involved in responding to Mattel's

15   subpoenas.  Nor could they.  "The burden of showing that a subpoena is

16   unreasonable and oppressive *is upon the party to whom it is directed*."  Goodman v.

17   U.S., 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added).  Indeed, it is unlikely that

18   the financial institutions and other subpoenaed entities would have voluminous

19

20

_____

21   [141]   MGA has created a chart that purportedly shows overlap between Mattel's
22   document requests to the financial institutions and Mattel's documents requests to
     MGA.  See Exh. 28 to the Park Dec.  MGA cites to three examples of the overlap
23   between Mattel's document requests and the subpoenas to the third-parties—the
     value of MGA's net worth, goodwill and intellectual property.  See Motion at 17:6-
24   10.  As detailed above, the listing of documents that MGA sets forth in its Motion
     do not contain documents showing the value of MGA's net worth, goodwill or
25   intellectual property, and Lisa Tonnu testified as to the unavailability of these
26   documents from MGA.  Therefore, MGA's argument in this regard contradicts its
     own designee.
27

28

                                              -178-

1   records pertaining to the Larian v. Larian disputes, and Mattel is not aware of any

2   claim by the entities to the contrary. Thus, undue burden is not an issue.

3          MGA and Larian's assertion that the Mattel's requests are abusively

4   drawn or unduly overbroad is also meritless. The subpoenas at issue were served on

5   financial institutions, such as MGA's bank and lender. As a practical matter, any

6   documents that these institutions have pertaining to the <u>Larian v. Larian</u> disputes are

7   likely to involve the valuation of Bratz, or the net worth of MGA, or the value of its

8   good will or intellectual property. These documents go to the heart of the remedies

9   and damages sought by Mattel. <u>See</u> Opposition at p. 19

10

11

12   **IV.    THE DISCOVERY MASTER SHOULD QUASH OR ENTER A**
     **PROTECTIVE ORDER WITH RESPECT TO MATTEL'S**
13   **ABUSIVELY DRAWN REQUESTS IN WHICH IT SEEKS**
     **DOCUMENTS RELATED TO MGA'S PRODUCTS OR CARTER**
14   **BRYANT. (REQUESTS 8-9 TO WACHOVIA• REQUESTS 4-5 TO**
     **ERNST & YOUNG; REQUESTS 4-5 TO DELOITTE & TOUCHE•**
15   **REQUEST 9-10 TO MOSS ADAMS. REQUESTS 1-8 AND 10-13 TO**
     **CONSUMERQUEST; REQUEST 9-11 TO THE ISAAC AND ANGELA**
16   **LARIAN TRUST; REQUESTS 9-11 TO THE ISAAC LARIAN**
17   **ANNUITY TRUST)**

18
         **A.    Mattel's Requests and MGA's Responses**
19
     <u>**WACHOVIA REQUEST NO. 8**</u>:
20
21          All documents relating to BRATZ, including without limitation those

22   YOU obtained from MGA, since January 1, 1999.

23   <u>**RESPONSE TO WACHOVIA REQUEST NO. 8**</u>:

24          The MGA Entities incorporate by reference their General Objections as

25   though fully set forth herein. The MGA Entities further object to the extent that this

26   request seeks information that is protected from disclosure under the attorney-client

27   privilege, the work product doctrine and/or the joint interest privilege. The MGA

28   Entities further object to this request to the extent that it seeks documents that

07209/2339253.2

-179-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  contain trade secrets, confidential, commercially sensitive and/or other proprietary

2  or competitive information that is subject to the MGA Entities' or any other person's

3  constitutional, statutory or common law right of privacy or protection.  The MGA

4  Entities further object that this request calls for the production of documents that are

5  not relevant to the subject matter involved in the pending litigation or reasonably

6  calculated to lead to the discovery of admissible evidence.  The MGA Entities

7  further object to this request as being overly broad, burdensome and harassing to a

8  non-party to the extent that it seeks to force Wachovia to produce documents or

9  information available from parties to the litigation.  The MGA Entities further object

10  to this request on the grounds that it is overbroad; in particular, the MGA Entities

11  object to the definitions of "BRATZ" and "MGA" on the grounds that they are

12  overbroad.  The MGA Entities further object on the grounds that this request is

13  overbroad, vague and ambiguous, particularly as to the meaning of "relating to."

14  **WACHOVIA REQUEST NO. 9**:

15      All documents relating to the MATTEL ACTION.

16  **RESPONSE TO WACHOVIA REQUEST NO. 9**:

17      The MGA Entities incorporate by reference their General Objections as

18  though fully set forth herein.  The MGA Entities further object to the extent that this

19  request seeks information that is protected from disclosure under the attorney-client

20  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

21  Entities further object to this request to the extent that it seeks documents that

22  contain trade secrets, confidential, commercially sensitive and/or other proprietary

23  or competitive information that is subject to the MGA Entities' or any other person's

24  constitutional, statutory or common law right of privacy or protection.  The MGA

25  Entities further object that this request calls for the production of documents that are

26  not relevant to the subject matter involved in the pending litigation or reasonably

27  calculated to lead to the discovery of admissible evidence.  The MGA Entities

28  further object to this request as being overly broad, burdensome and harassing to a

-180-
MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1 non-party to the extent that it seeks to force Wachovia to produce documents or

2 information available from parties to the litigation.  The MGA Entities further object

3 to this request on the grounds that it is overbroad, vague and ambiguous, particularly

4 as to the meaning of "relating to" and "MATTEL ACTION."

5 **ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST NO. 4**:

6        All documents relating to BRATZ that YOU obtained from MGA or

7 otherwise since January 1, 1999.

8 **RESPONSE TO ERNST & YOUNG AND DELOITTE & TOUCHE**

9 **REQUEST NO. 4**:

10        The MGA Entities incorporate by reference their General Objections as

11 though fully set forth herein.  The MGA Entities further object to the extent that this

12 request seeks information that is protected from disclosure under the attorney-client

13 privilege, the work product doctrine and/or the joint interest privilege.  The MGA

14 Entities further object to this request to the extent it seeks documents protected by

15 the accountant-client privilege.  The MGA Entities further object to the request on

16 the grounds that it seeks documents protected from disclosure by applicable federal

17 and state tax return privileges.  The MGA Entities further object to this request to

18 the extent that it seeks documents that contain trade secrets, confidential,

19 commercially sensitive and/or other proprietary or competitive information that is

20 subject to the MGA Entities' or any other person's constitutional, statutory or

21 common law right of privacy or protection.  The MGA Entities further object that

22 this request calls for the production of documents that are not relevant to the subject

23 matter involved in the pending litigation or reasonably calculated to lead to the

24 discovery of admissible evidence.  The MGA Entities further object to this request

25 as being overly broad, burdensome and harassing to a non-party to the extent that it

26 seeks to force D & T to produce documents or information available from parties to

27 the litigation.  The MGA Entities further object to this request on the grounds that it

28 is overbroad as to subject matter and time; in particular, the MGA Entities object to

07209/2339253.2

-181-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1 the definitions of "MGA" and "BRATZ" as vague, ambiguous, overbroad and
2 designed to mislead and confuse the trier of fact.  The MGA Entities further object
3 on the grounds that this request is vague and ambiguous, particularly as to the
4 meaning of "relating to."
5 **ERNST & YOUNG AND DELOITTE & TOUCHE REQUEST NO. 5**:
6 　　　　　　Any documents relating to the MATTEL ACTION.
7 **RESPONSE TO ERNST & YOUNG AND DELOITTE & TOUCHE**
8 **REQUEST NO. 5**:
9 　　　　　　The MGA Entities incorporate by reference their General Objections as
10 though fully set forth herein.  The MGA Entities further object to the extent that this
11 request seeks information that is protected from disclosure under the attorney-client
12 privilege, the work product doctrine and/or the joint interest privilege.  The MGA
13 Entities further object to this request to the extent it seeks documents protected by
14 the accountant-client privilege.  The MGA Entities further object to the request on
15 the grounds that it seeks documents protected from disclosure by applicable federal
16 and state tax return privileges.  The MGA Entities further object to this request to
17 the extent that it seeks documents that contain trade secrets, confidential,
18 commercially sensitive and/or other proprietary or competitive information that is
19 subject to the MGA Entities' or any other person's constitutional, statutory or
20 common law right of privacy or protection.  The MGA Entities further object that
21 this request calls for the production of documents that are not relevant to the subject
22 matter involved in the pending litigation or reasonably calculated to lead to the
23 discovery of admissible evidence.  The MGA Entities further object to this request
24 as being overly broad, burdensome and harassing to a non-party to the extent that it
25 seeks to force D & T to produce documents or information available from parties to
26 the litigation.  The MGA Entities further object to this request on the grounds that it
27 is overbroad as to subject matter and time.  The MGA Entities further object on the
28

07209/2339253.2

-182-
MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  grounds that this request is vague, ambiguous and overbroad, particularly as to the

2  meaning of "relating to."

3  **MOSS ADAMS REQUEST NO. 9**:

4          All DOCUMENTS RELATING TO BRATZ that YOU obtained from

5  ISAAC LARIAN or otherwise since January 1, 1999.

6  **RESPONSE TO MOSS ADAMS REQUEST NO. 9**:

7          The MGA Entities incorporate by reference their General Objections as

8  though fully set forth herein.  The MGA Entities further object to the extent that this

9  request seeks information that is protected from disclosure under the attorney-client

10  privilege, the work product doctrine and/or the joint interest privilege.  The MGA

11  Entities further object to this request to the extent it seeks documents protected by

12  the accountant-client privilege.  The MGA Entities further object to the request on

13  the grounds that it seeks documents protected from disclosure by applicable federal

14  and state tax return privileges.  The MGA Entities further object to this request to

15  the extent that it seeks documents that contain trade secrets, confidential,

16  commercially sensitive and/or other proprietary or competitive information that is

17  subject to the MGA Entities' or any other person's constitutional, statutory or

18  common law right of privacy or protection.  The MGA Entities further object that

19  this request calls for the production of documents that are not relevant to a claim or

20  defense in the pending litigation or reasonably calculated to lead to the discovery of

21  admissible evidence.  The MGA Entities further object to this request as being

22  overly broad, burdensome and harassing to a non-party to the extent that it seeks to

23  force Moss Adams to produce documents or information available from parties to

24  the litigation.  The MGA Entities further object to this request on the grounds that it

25  is overbroad as to subject matter and time; in particular, the MGA Entities object to

26  the definitions of "RELATING TO," "BRATZ," "YOU," and "ISAAC LARIAN,"

27  on the grounds that they are overbroad, vague and ambiguous.

28

**MOSS ADAMS REQUEST NO. 10**:

        All DOCUMENTS RELATING to the MATTEL ACTION.

**RESPONSE TO MOSS ADAMS REQUEST NO. 10**:

        The MGA Entities incorporate by reference their General Objections as though fully set forth herein. The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney-client privilege, the work product doctrine and/or the joint interest privilege. The MGA Entities further object to this request to the extent it seeks documents protected by the accountant-client privilege. The MGA Entities further object to the request on the grounds that it seeks documents protected from disclosure by applicable federal and state tax return privileges. The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential, commercially sensitive and/or other proprietary or competitive information that is subject to the MGA Entities' or any other person's constitutional, statutory or common law right of privacy or protection. The MGA Entities further object that this request calls for the production of documents that are not relevant to a claim or defense in the pending litigation or reasonably calculated to lead to the discovery of admissible evidence. The MGA Entities further object to this request as being overly broad, burdensome and harassing to a non-party to the extent that it seeks to force Moss Adams to produce documents or information available from parties to the litigation. The MGA Entities further object to this request on the grounds that it is overbroad as to subject matter and time; in particular, the MGA Entities object to the definition of "RELATING TO," on the grounds that it is overbroad, vague and ambiguous.

**CONSUMERQUEST REQUEST NO. 1**:

        All DOCUMENTS REFERRING OR RELATING TO BRATZ.

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

**RESPONSE TO CONSUMERQUEST REQUEST NO. 1**:

The MGA Entities incorporate by reference their General Objections as though fully set forth herein. The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney-client privilege, the work product doctrine. The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential, commercially sensitive and/or other proprietary or competitive information that is subject to the MGA Entities' or any other person's constitutional, statutory or common law right of privacy or protection. The MGA Entities further object that this request calls for the production of documents that are not relevant to the claims or defenses in this action or reasonably calculated to lead to the discovery of admissible evidence. The MGA Entities further object to this request on the grounds that it is overbroad as to subject matter and time; in particular, the MGA Entities object to the definitions of "BRATZ" and "REFERRING OR RELATING TO" as vague, ambiguous and/or overbroad.

**CONSUMERQUEST REQUEST NO. 2**:

All DOCUMENTS REFERRING OR RELATING TO SCOOTER SAMANTHA.

**RESPONSE TO CONSUMERQUEST REQUEST NO. 2**:

The MGA Entities incorporate by reference their General Objections as though fully set forth herein. The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney-client privilege, the work product doctrine. The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential, commercially sensitive and/or other proprietary or competitive information that is subject to the MGA Entities' or any other person's constitutional, statutory or common law right of privacy or protection. The MGA Entities further object that this request calls for the production of documents that are not relevant to the claims

1  or defenses in this action or reasonably calculated to lead to the discovery of

2  admissible evidence.  The MGA Entities further object to this request on the

3  grounds that it is overbroad as to subject matter and time; in particular, the MGA

4  Entities object to the definitions of "SCOOTER SAMANTHA" "REFERRING OR

5  RELATING TO" as vague, ambiguous and/or overbroad.

6  **CONSUMERQUEST REQUEST NO. 3**:

7     All DOCUMENTS REFERRING OR RELATING TO any study,

8  survey, focus group, research group or other work or services for MGA relating to

9  BRATZ, including without limitation all tangible items relating thereto and all

10  photographs, videos or other images depicting any such tangible items and all

11  viability reports relating thereto.

12  **RESPONSE TO CONSUMERQUEST REQUEST NO. 3**:

13     The MGA Entities incorporate by reference their General Objections as

14  though fully set forth herein.  The MGA Entities further object to the extent that this

15  request seeks information that is protected from disclosure under the attorney-client

16  privilege, the work product doctrine.  The MGA Entities further object to this

17  request to the extent that it seeks documents that contain trade secrets, confidential,

18  commercially sensitive and/or other proprietary or competitive information that is

19  subject to the MGA Entities' or any other person's constitutional, statutory or

20  common law right of privacy or protection.  The MGA Entities further object that

21  this request calls for the production of documents that are not relevant to the claims

22  or defenses in this action or reasonably calculated to lead to the discovery of

23  admissible evidence.  The MGA Entities further object to this request on the

24  grounds that it is overbroad as to subject matter and time; in particular, the MGA

25  Entities object to the definitions of "BRATZ," "MGA," "REFERRING OR

26  RELATING TO," "tangible items" and "viability reports" as vague, ambiguous

27  and/or overbroad.

28

-186-

1  **CONSUMERQUEST REQUEST NO. 4**:

2          All DOCUMENTS REFERRING OR RELATING TO any study,

3  survey, focus group, research group or other work or services for MGA relating to

4  SCOOTER SAMANTHA, including without limitation all tangible items relating

5  thereto and all photographs, videos or other images depicting any such tangible

6  items and all viability reports relating thereto.

7  **RESPONSE TO CONSUMERQUEST REQUEST NO. 4**:

8          The MGA Entities incorporate by reference their General Objections as

9  though fully set forth herein.  The MGA Entities further object to the extent that this

10  request seeks information that is protected from disclosure under the attorney-client

11  privilege, the work product doctrine.  The MGA Entities further object to this

12  request to the extent that it seeks documents that contain trade secrets, confidential,

13  commercially sensitive and/or other proprietary or competitive information that is

14  subject to the MGA Entities' or any other person's constitutional, statutory or

15  common law right of privacy or protection.  The MGA Entities further object that

16  this request calls for the production of documents that are not relevant to the claims

17  or defenses in this action or reasonably calculated to lead to the discovery of

18  admissible evidence.  The MGA Entities further object to this request on the

19  grounds that it is overbroad as to subject matter and time; in particular, the MGA

20  Entities object to the definitions of "SCOOTER SAMANTHA," "MGA,"

21  "REFERRING OR RELATING TO," "tangible items" and "viability reports" as

22  vague, ambiguous and/or overbroad.

23  **CONSUMERQUEST REQUEST NO. 5**:

24          All DOCUMENTS, including without limitation

25  COMMUNICATIONS, and all tangible things REFERRING OR RELATING TO

26  BRATZ prior to December 31, 2002.

27

28

-187-

**RESPONSE TO CONSUMERQUEST REQUEST NO. 5**:

   The MGA Entities incorporate by reference their General Objections as though fully set forth herein.  The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney-client privilege, the work product doctrine.  The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential, commercially sensitive and/or other proprietary or competitive information that is subject to the MGA Entities' or any other person's constitutional, statutory or common law right of privacy or protection.  The MGA Entities further object that this request calls for the production of documents that are not relevant to the claims or defenses in this action or reasonably calculated to lead to the discovery of admissible evidence.  The MGA Entities further object to this request on the grounds that it is overbroad as to subject matter and time; in particular, the MGA Entities object to the definitions of "BRATZ," " REFERRING OR RELATING TO" and "tangible things" as vague, ambiguous and overbroad.

**CONSUMERQUEST REQUEST NO. 6**:

   To the extent not produced in response to any other Request for Production, all DOCUMENTS REFERRING OR RELATING TO any study, survey, focus group, research group or other work or services for MGA that YOU conducted, facilitated or were otherwise involved with prior to December 31, 2002, including without limitation all tangible items relating thereto and all photographs, videos or other images depicting any such tangible items.

**RESPONSE TO CONSUMERQUEST REQUEST NO. 6**:

   The MGA Entities incorporate by reference their General Objections as though fully set forth herein.  The MGA Entities further object to the extent that this request seeks information that is protected from disclosure under the attorney-client privilege, the work product doctrine.  The MGA Entities further object to this request to the extent that it seeks documents that contain trade secrets, confidential,

1  commercially sensitive and/or other proprietary or competitive information that is

2  subject to the MGA Entities' or any other person's constitutional, statutory or

3  common law right of privacy or protection.  The MGA Entities further object that

4  this request calls for the production of documents that are not relevant to the claims

5  or defenses in this action or reasonably calculated to lead to the discovery of

6  admissible evidence.  The MGA Entities further object to this request on the

7  grounds that it is overbroad as to subject matter and time; in particular, the MGA

8  Entities object to the definitions of "MGA", "REFERRING OR RELATING TO,"

9  "work," "services," "tangible item," "facilitated" and "involved with" as vague,

10  ambiguous and/or overbroad.

11  **CONSUMERQUEST REQUEST NO. 7:**

12        To the extent not produced in response to any other Request for

13  Production, DOCUMENTS sufficient to show each DOLL, product or other tangible

14  item that was the subject of any study, survey, focus group, research group or other

15  work or services for MGA that YOU conducted, facilitated or were otherwise

16  involved with since January 1, 1998 and the time period during which such study,

17  survey, focus group, research group or other work or services were performed.

18  **RESPONSE TO CONSUMERQUEST REQUEST NO. 7:**

19        The MGA Entities incorporate by reference their General Objections as

20  though fully set forth herein.  The MGA Entities further object to the extent that this

21  request seeks information that is protected from disclosure under the attorney-client

22  privilege, the work product doctrine.  The MGA Entities further object to this

23  request to the extent that it seeks documents that contain trade secrets, confidential,

24  commercially sensitive and/or other proprietary or competitive information that is

25  subject to the MGA Entities' or any other person's constitutional, statutory or

26  common law right of privacy or protection.  The MGA Entities further object that

27  this request calls for the production of documents that are not relevant to the claims

28  or defenses in this action or reasonably calculated to lead to the discovery of

07209/2339253.2

-189-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1 admissible evidence.  The MGA Entities further object to this request on the

2 grounds that it is overbroad as to subject matter and time; in particular, the MGA

3 Entities object to the definitions of "MGA", "DOLL," "work," "services," "tangible

4 item," "facilitated" and "involved with" as vague, ambiguous and/or overbroad.

5 **CONSUMERQUEST REQUEST NO. 8**:

6         All DOCUMENTS REFERRING OR RELATING TO any study,

7 survey, focus group, research group or other work or services for MGA relating to

8 "4-ever Best Friends," "Mommy's Little Patient" and/or "Mommy's Little" or

9 "Alienracers," including without limitation all viability reports relating thereto.

10 **RESPONSE TO CONSUMERQUEST REQUEST NO. 8**:

11         The MGA Entities incorporate by reference their General Objections as

12 though fully set forth herein.  The MGA Entities further object to the extent that this

13 request seeks information that is protected from disclosure under the attorney-client

14 privilege, the work product doctrine.  The MGA Entities further object to this

15 request to the extent that it seeks documents that contain trade secrets, confidential,

16 commercially sensitive and/or other proprietary or competitive information that is

17 subject to the MGA Entities' or any other person's constitutional, statutory or

18 common law right of privacy or protection.  The MGA Entities further object that

19 this request calls for the production of documents that are not relevant to the claims

20 or defenses in this action or reasonably calculated to lead to the discovery of

21 admissible evidence.  The MGA Entities further object to this request on the

22 grounds that it is overbroad as to subject matter and time; in particular, the MGA

23 Entities object to the definitions of "REFERRING OR RELATING TO," "work,"

24 "services" and "viability reports" as vague, ambiguous and/or overbroad.

25 **CONSUMERQUEST REQUEST NO. 10**:

26         RESPONSE All COMMUNICATIONS REFERRING OR RELATING

27 TO any request to perform work or services for or on behalf of MGA including,

28 without limitation, any decision by YOU not to perform such work.

-190-

1   **RESPONSE TO CONSUMERQUEST REQUEST NO. 10**:

2           The MGA Entities incorporate by reference their General Objections as

3   though fully set forth herein.  The MGA Entities further object to the extent that this

4   request seeks information that is protected from disclosure under the attorney-client

5   privilege, the work product doctrine.  The MGA Entities further object to this

6   request to the extent that it seeks documents that contain trade secrets, confidential,

7   commercially sensitive and/or other proprietary or competitive information that is

8   subject to the MGA Entities' or any other person's constitutional, statutory or

9   common law right of privacy or protection.  The MGA Entities further object that

10  this request calls for the production of documents that are not relevant to the claims

11  or defenses in this action or reasonably calculated to lead to the discovery of

12  admissible evidence.  The MGA Entities further object to this request on the

13  grounds that it is overbroad as to subject matter and time; in particular, the MGA

14  Entities object to the definitions of "MGA," "REFERRING OR RELATING TO,"

15  "work," "services" and "decision" as vague, ambiguous and/or overbroad.

16  **CONSUMERQUEST REQUEST NO. 11**:

17          All COMMUNICATIONS with MGA, ISAAC LARIAN, FARHAD

18  LARIAN or BRYANT REFERRING OR RELATING TO BRYANT.

19  **RESPONSE TO CONSUMERQUEST REQUEST NO. 11**:

20          The MGA Entities incorporate by reference their General Objections as

21  though fully set forth herein.  The MGA Entities further object to the extent that this

22  request seeks information that is protected from disclosure under the attorney-client

23  privilege, the work product doctrine.  The MGA Entities further object to this

24  request to the extent that it seeks documents that contain trade secrets, confidential,

25  commercially sensitive and/or other proprietary or competitive information that is

26  subject to the MGA Entities' or any other person's constitutional, statutory or

27  common law right of privacy or protection.  The MGA Entities further object that

28  this request calls for the production of documents that are not relevant to the claims

-191-

1 | or defenses in this action or reasonably calculated to lead to the discovery of
2 | admissible evidence.  The MGA Entities further object to this request on the
3 | grounds that it is overbroad as to subject matter and time; in particular, the MGA
4 | Entities object to the definitions of "MGA," "ISAAC LARIAN," "FARHAD
5 | LARIAN," "BRYANT" and "REFERRING OR RELATING TO" as vague,
6 | ambiguous and/or overbroad.

7 | **CONSUMERQUEST REQUEST NO. 12**:

8 | All contracts or agreements or proposed or requested contracts or
9 | agreements with MGA, ISAAC LARIAN, FARHAD LARIAN or BRYANT since
10 | January 1, 1998.

11 | **RESPONSE TO CONSUMERQUEST REQUEST NO. 12**:

12 | The MGA Entities incorporate by reference their General Objections as
13 | though fully set forth herein.  The MGA Entities further object to the extent that this
14 | request seeks information that is protected from disclosure under the attorney-client
15 | privilege, the work product doctrine.  The MGA Entities further object to this
16 | request to the extent that it seeks documents that contain trade secrets, confidential,
17 | commercially sensitive and/or other proprietary or competitive information that is
18 | subject to the MGA Entities' or any other person's constitutional, statutory or
19 | common law right of privacy or protection.  The MGA Entities further object that
20 | this request calls for the production of documents that are not relevant to the claims
21 | or defenses in this action or reasonably calculated to lead to the discovery of
22 | admissible evidence.  The MGA Entities further object to this request on the
23 | grounds that it is overbroad as to subject matter and time; in particular, the MGA
24 | Entities object to the definitions of "MGA," "ISAAC LARIAN," "FARHAD
25 | LARIAN," "BRYANT" and "agreements" as vague, ambiguous and/or overbroad.
26 |
27 |
28 |

1  **CONSUMERQUEST REQUEST NO. 13**:

2  　　　　All COMMUNICATIONS with MGA or ISAAC LARIAN

3  REFERRING OR RELATING TO "4-ever Best Friends," "Mommy's Little Patient"

4  and/or "Mommy's Little" or "Alienracers."

5  **RESPONSE TO CONSUMERQUEST REQUEST NO. 13**:

6  　　　　The MGA Entities incorporate by reference their General Objections as

7  though fully set forth herein.  The MGA Entities further object to the extent that this

8  request seeks information that is protected from disclosure under the attorney-client

9  privilege, the work product doctrine.  The MGA Entities further object to this

10  request to the extent that it seeks documents that contain trade secrets, confidential,

11  commercially sensitive and/or other proprietary or competitive information that is

12  subject to the MGA Entities' or any other person's constitutional, statutory or

13  common law right of privacy or protection.  The MGA Entities further object that

14  this request calls for the production of documents that are not relevant to the claims

15  or defenses in this action or reasonably calculated to lead to the discovery of

16  admissible evidence.  The MGA Entities further object to this request on the

17  grounds that it is overbroad as to subject matter and time; in particular, the MGA

18  Entities object to the definitions of "MGA," "ISAAC LARIAN," and "REFERRING

19  OR RELATING TO" as vague, ambiguous and/or overbroad.

20  **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**

21  **TRUST REQUEST NO. 9**:

22  　　　　All DOCUMENTS RELATING TO BRATZ that YOU obtained from

23  ISAAC LARIAN or otherwise since January 1, 1999.

24  **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**

25  **LARIAN ANNUITY TRUST REQUEST NO. 9**:

26  　　　　Objections to this Subpoena are not yet due.  The MGA Defendants'

27  objections to this request are reflected in the arguments set forth in this Separate

28

07209/2339253.2

1    Statement and the accompanying Motion to Quash or, in the Alternative, for

2    Protective Order.

3    **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**

4    **TRUST REQUEST NO. 10**:

5        All DOCUMENTS RELATING TO BRYANT that YOU obtained

6    from ISAAC LARIAN or otherwise since January 1, 1999.

7    **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**

8    **LARIAN ANNUITY TRUST REQUEST NO. 10**:

9        Objections to this Subpoena are not yet due.  The MGA Defendants'

10   objections to this request are reflected in the arguments set forth in this Separate

11   Statement and the accompanying Motion to Quash or, in the Alternative, for

12   Protective Order.

13   **ISAAC AND ANGELA LARIAN TRUST AND ISAAC LARIAN ANNUITY**

14   **TRUST REQUEST NO. 11**:

15       All DOCUMENTS RELATING to the MATTEL ACTION.

16   **RESPONSE TO ISAAC AND ANGELA LARIAN TRUST AND ISAAC**

17   **LARIAN ANNUITY TRUST REQUEST NO. 11**:

18       Objections to this Subpoena are not yet due.  The MGA Defendants'

19   objections to this request are reflected in the arguments set forth in this Separate

20   Statement and the accompanying Motion to Quash or, in the Alternative, for

21   Protective Order.

22       **B.    MGA's Statements of Position**

23           **1.    MGA's Statement of Position Regarding Requests 8-9 to**

24               **Wachovia**

25       Mattel's subpoena to Wachovia includes these requests for all documents

26   relating to Bratz and/or the instant suit. Although some of these documents

27   regarding MGA's products or Mr. Bryant may be relevant, Mattel's requests are

28   improper because they overly broad and not tailored to exclude irrelevant or

1  duplicative information.  *See* Fed. R. Civ. P. 26(b)(2)(C); *Walking Mountain*,

2  353 F.3d at 813 (9th Cir. 2003) (quashing subpoena issued by Mattel and Quinn

3  Emanuel because "no attempt had been made to try to tailor the information request

4  to the immediate needs of the case")

5  　　　　Over the past three years, Mattel has taken vast amounts of discovery

6  regarding Bratz, other MGA products at issue and Mr. Bryant-including discovery

7  on the topics at issue in these requests.  Mattel has served the MGA Defendants with

8  hundreds of document requests covering these subjects and has received in response

9  to its requests more than three million pages of responsive documents.  (Park Decl.,

10  ¶ 2.)  For example, Mattel has already requested and obtained from MGA mountains

11  of documents relating to Bratz.  (See, e.g., Park Decl., Ex. 29 (Mattel's 1st Set of

12  RFPs to MGA) at Request 32 ("ALL DOCUMENTS prepared, written, transmitted

13  or received (whether in whole or in part) prior to January 1, 2001 that REFER OR

14  RELATE TO BRATZ.") & Request 33 ("ALL DOCUMENTS that REFER OR

15  RELATE TO BRATZ that REFER OR RELATE TO any time prior to January 1,

16  2001 (regardless of when such document was prepared, written, transmitted or

17  received, whether in whole or in part).").)  Similarly, documents relating to market

18  research for MGA's "4 Best Friends," "Mommy's Little Patient," "Mommy's Little"

19  and "Alienracers" products are already the subject of several of Mattel's document

20  requests to MGA.  *(See, e.g.,* Park Decl., Ex. 30 (Mattel's 1st Set of RFPs Re Unfair

21  Competition) at Request 26 ("All DOCUMENTS RELATING TO the target market

22  or potential target market, and the demographics of any actual, potential or

23  prospective consumers, customers, purchasers or licensees of the CONTESTED

24  MGA PRODUCTS.") & Request 36 ("All DOCUMENTS RELATING TO any

25  consumer studies, reports, surveys, interviews or reports regarding the

26  CONTESTED MGA PRODUCTS...").)

27  　　　　Having had ample opportunity to take discovery regarding Bratz, the other

28  MGA products at issue, the instant suit, and Mr. Bryant, Mattel should not be

07209/2339253.2

-195-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  permitted to burden the Non-Parties with duplicative discovery requests.  Fed. R.

2  Civ. P. 26(b)(2)(C); *Lectrolarm Custom Sys., Inc. v. Pelco Sales, Inc.,* 212 F.R.D.

3  567, 573 (E.D. Cal 2002) (granting protective order against subpoenas that

4  requested information that was already the subject of party discovery).  Even if

5  some of the documents Mattel seeks are relevant, Mattel has a duty to "take

6  reasonable steps to avoid imposing undue burden or expense on [subpoenaed non-

7  parties]."  Fed. R. Civ. P. 45(c)(1).  Such steps include tailoring the requests by

8  specifying only the relevant, non-duplicative materials that Mattel needs.  See

9  *Walking Mountain,* 353 F.3d at 813 (quashing Mattel's subpoena where Mattel made

10  "no attempt ... to try to tailor the information request to the immediate needs of the

11  case"); *Lectrolarm,* 212 F.R.D. at 573 (holding that plaintiff could only obtain

12  documents from non-party "with a showing that there is specific, *relevant*

13  information in [non-party's] possession that [is not privileged]") (emphasis in

14  original).

15       Mattel has made no effort to tailor its requests, but has deliberately drafted its

16  requests to cast as wide a net as possible. Because Mattel has failed to take any

17  steps, let along reasonable steps, to avoid unduly burdening Wachovia, these

18  requests are improper and must be quashed or substantially narrowed.

19       **Mattel's Response**:

20       "The burden of showing that a subpoena is unreasonable and oppressive is

21  upon the party to whom it is directed."  Goodman v. U.S., 369 F.2d 166, 169 (9th

22  Cir. 1966); Flatow v. The Islamic Republic of Iran, 202 F.R.D. 35, 36 (D.D.C.

23  2001); Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir.

24  1984).  Here, MGA fails to carry its burden.

25

26

27

28

07209/2339253.2

-196-
MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    The Requests at issue seek documents directly related to Bratz or to this

2  action.  The relevancy of these requests is incontestable.[142]  Recognizing the

3  undeniable relevance of such documents, MGA argues that the third parties should

4  nevertheless be relieved of producing responsive documents because Mattel has

5  obtained documents relating to Bratz from MGA.  However, the documents sought

6  by the subpoenas are not limited to documents that Wachovia obtained from MGA

7  relating to Bratz or this action.  Rather, the subpoenas seek all documents in

8  Wachovia's possession relating to Bratz or this action.  Thus, documents that

9  Wachovia may have obtained from other sources concerning Bratz in the course of

10  Wachovia's due diligence before extending a loan to MGA for the development of

11  Bratz are responsive and would not necessarily have been produced by MGA.

12  Similarly, documents that Wachovia may have created pertaining to the value of

13  Bratz or otherwise relating to Bratz or this action would be relevant, and would not

14  necessarily be in the possession of MGA.  Wachovia's valuation of Bratz or any

15  assessment it made in that regard would also be relevant to the remedy of

16  disgorgement, as well as determining MGA's net worth, and/or the value of its

17  intellectual property and good will.

18    Moreover, as discussed above, the mere fact that some of the same

19  documents may be available from other sources is not sufficient grounds to quash

20  the subpoena.

21    MGA and Larian fail to show that the requests are so burdensome to

22  justify quashing the subpoenas.  A party claiming that production of requested

23  documents is unduly burdensome bears the burden of proving up their objection.

24  Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984)

25

26  [142]  Exh. N, at 11:1-2 [Court's August 9, 2006 Order Denying Appointment of
    Expert Witnesses] ("At its heart, this case asks the question:  Who owns the rights to
27  the Bratz dolls?"); Exh. Q, at 8:8-21 [Discovery Master's May 15, 2007 Order
    Granting Mattel's Motion to Compel].
28

-197-

1   (reversing district court's decision quashing subpoena).  The party cannot rest on

2   conclusory assertions.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966)

3   (reversing the quashing of a subpoena because of lack of specific evidence of

4   burden).  "The party must provide specific and compelling proof that the burden is

5   undue."  JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25

6   (Fed. Cl. Ct. 2007) (denying motion to quash).

7          Here, MGA and Isaac Larian offer no evidence--such as a declaration

8   or testimony--regarding the time, cost, or burden involved in responding to Mattel's

9   subpoenas.  Nor could they.  "The burden of showing that a subpoena is

10  unreasonable and oppressive *is upon the party to whom it is directed*."  Goodman v.

11  U.S., 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added).

12         In addition, in a further effort to reduce any inconvenience to the third-

13  parties, Mattel will reimburse the third parties for the costs incurred in copying the

14  responsive documents.  However, even if Mattel was unwilling to pay for the third

15  parties' copying costs (which is not an issue here since Mattel will reimburse them),

16  and even if the third parties did not already have separated case files, a claim that

17  compliance with Mattel's requests "would necessitate the examination of large

18  quantities of documents, requiring a great deal of time and expense . . . is not alone a

19  sufficient reason for refusing discovery which is otherwise appropriate. . . . "

20  American Optical Co., 39 F.R.D. 580, 586-587 (N.D. Cal. 1966) (denying motion to

21  quash where documents sought covered a twelve year period).  And, in an effort to

22  further reduce burden upon the third-parties, Mattel has offered to have its own

23  paralegal and counsel inspect documents gathered thus far by the third-party

24  financial institutions with an agreement that the inspection will not result in

25

26

27

28

-198-

1  waiver.[143]  Given these concessions and the applicable case law, the raw assertions
2  of undue burden are meritless.

### 2.    MGA's Statement of Position Regarding Requests 4-5 to Ernst & Young and Deloitte & Touche

5        Mattel's subpoenas to Ernst & Young and Deloitte & Touche include these
6  requests for all documents relating to Bratz and/or the instant suit.  Although some
7  of these documents regarding MGA's products or Mr. Bryant may be relevant,
8  Mattel's requests are improper because they are overly broad and not tailored to
9  exclude irrelevant or duplicative information.  See Fed. R. Civ. P. 26(b)(2)(C);
10 *Walking Mountain*, 353 F.3d at 813 (quashing subpoena issued by Mattel and Quinn
11 Emanuel because "no attempt had been made to try to tailor the information request
12 to the immediate needs of the case").

13       Over the past three years, Mattel has taken vast amounts of discovery
14 regarding Bratz, other MGA products at issue and Mr. Bryant-including discovery
15 on the topics at issue in these requests.  Mattel has served the MGA Defendants with
16 hundreds of document requests covering these subjects and has received in response
17 to its requests more than three million pages of responsive documents.  (Park Decl.,
18 ¶ 2.)  For example, Mattel has already requested and obtained from MGA mountains
19 of documents relating to Bratz.  (See, e.g., Park Decl., Ex. 29 (Mattel's 1st Set of
20 RFPs to MGA) at Request 32 ("ALL DOCUMENTS prepared, written, transmitted
21 or received (whether in whole or in part) prior to January 1, 2001 that REFER OR
22 RELATE TO BRATZ.") & Request 33 ("ALL DOCUMENTS that REFER OR
23 RELATE TO BRATZ that REFER OR RELATE TO any time prior to January 1,
24 2001 (regardless of when such document was prepared, written, transmitted or
25 received, whether in whole or in part).").)  Similarly, documents relating to market
26 research for MGA's "4 Best Friends," "Mommy's Little Patient," "Mommy's Little"

28  [143]   Exh. C [Letter from Jon Corey to John Baran dated December 20, 2007].

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1 and "Alienracers" products are already the subject of several of Mattel's document

2 requests to MGA. (See, e.g., Park Decl., Ex. 30 (Mattel's 1st Set of RFPs Re Unfair

3 Competition) at Request 26 ("All DOCUMENTS RELATING TO the target market

4 or potential target market, and the demographics of any actual, potential or

5 prospective consumers, customers, purchasers or licensees of the CONTESTED

6 MGA PRODUCTS.") & Request 36 ("All DOCUMENTS RELATING TO any

7 consumer studies, reports, surveys, interviews or reports regarding the

8 CONTESTED MGA PRODUCTS ... ").)

9       Having had ample opportunity to take discovery regarding Bratz, the other

10 MGA products at issue, the instant suit, and Mr. Bryant, Mattel should not be

11 permitted to burden the Non-Parties with duplicative discovery requests. Fed. R.

12 Civ. P. 26(b)(2)(C); *Lectrolarm*, 212 F.R.D. at 573 (granting protective order

13 against subpoenas that requested information that was already the subject of party

14 discovery). Even if some of the documents Mattel seeks are relevant, Mattel has a

15 duty to "take reasonable steps to avoid imposing undue burden or expense on

16 [subpoenaed non-parties]." Fed. R. Civ. P. 45(c)(1). Such steps include tailoring

17 the requests by specifying only the relevant, non-duplicative materials that Mattel

18 needs. See *Walking Mountain*, 353 F.3d at 813 (quashing Mattel's subpoena where

19 Mattel made "no attempt ... to try to tailor the information request to the immediate

20 needs of the case"); *Lectrolarm*, 212 F.R.D. at 573 (holding that plaintiff could only

21 obtain 1 documents from non-party "with a showing that there is specific, *relevant*

22 information in [non-party's] possession that [is not privileged]") (emphasis in

23 original).

24       Mattel has made no effort to tailor its requests, but has deliberately drafted its

25 requests to cast as wide a net as possible. Because Mattel has failed to take any

26 steps, let along reasonable steps, to avoid unduly burdening Ernst & Young and

27 Deloitte & Touche, these requests are improper and must be quashed or

28 substantially narrowed.

1     **Mattel's Response:**

2     "The burden of showing that a subpoena is unreasonable and oppressive is

3 upon the party to whom it is directed." <u>Goodman v. U.S.</u>, 369 F.2d 166, 169 (9th

4 Cir. 1966); <u>Flatow v. The Islamic Republic of Iran</u>, 202 F.R.D. 35, 36 (D.D.C.

5 2001); <u>Northrop Corp. v. McDonnell Douglas Corp.</u>, 751 F.2d 395, 403 (D.C. Cir.

6 1984).  Here, MGA fails to carry its burden.

7       The Requests at issue seek documents directly related to Bratz or to this

8 action.  The relevancy of these requests is incontestable.[144]  Recognizing the

9 undeniable relevance of such documents, MGA argues that the third parties should

10 nevertheless be relieved of producing responsive documents because Mattel has

11 obtained documents relating to Bratz from MGA.  However, the documents sought

12 by the subpoenas are not limited to documents that the responding parties obtained

13 from MGA relating to Bratz or this action.  Rather, the subpoenas seek all

14 documents in their possession, custody or control – from whatever source -- relating

15 to Bratz or this action.  Thus, documents that the accounting firms may have

16 obtained from other sources concerning Bratz in the course of its audit or accounting

17 work for MGA  are responsive and would not necessarily have been produced by

18 MGA.  Similarly, documents that the accounting firms may have created pertaining

19 to the value of Bratz or otherwise relating to Bratz or this action would be relevant,

20 and would not necessarily be in the possession of MGA.  Any valuation of Bratz or

21 any assessment made by the accounting firms in that regard would also be relevant

22 to the remedy of disgorgement, as well as determining MGA's net worth, and/or the

23 value of its intellectual property and good will.

24

25

26 [144]   Exh. N, at 11:1-2 [Court's August 9, 2006 Order Denying Appointment of Expert Witnesses] ("At its heart, this case asks the question:  Who owns the rights to the Bratz dolls?"); Exh. Q, at 8:8-21 [Discovery Master's May 15, 2007 Order Granting Mattel's Motion to Compel].

27

28

1    Moreover, the mere fact that some of the same documents may be

2    available from other sources is not sufficient grounds to quash the subpoena.

3    MGA and Larian fail to show that the requests are so burdensome to

4    justify quashing the subpoenas.  A party claiming that production of requested

5    documents is unduly burdensome bears the burden of proving up their objection.

6    Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984)

7    (reversing district court's decision quashing subpoena).  The party cannot rest on

8    conclusory assertions.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966)

9    (reversing the quashing of a subpoena because of lack of specific evidence of

10   burden).  "The party must provide specific and compelling proof that the burden is

11   undue." JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25

12   (Fed. Cl. Ct. 2007) (denying motion to quash).

13   Here, MGA and Isaac Larian offer no evidence--such as a declaration

14   or testimony--regarding the time, cost, or burden involved in responding to Mattel's

15   subpoenas.  Nor could they.  "The burden of showing that a subpoena is

16   unreasonable and oppressive *is upon the party to whom it is directed*." Goodman v.

17   U.S., 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added).

18   In addition, in a further effort to reduce any inconvenience to the third-

19   parties, Mattel will reimburse the third parties for the costs incurred in copying the

20   responsive documents.  However, even if Mattel was unwilling to pay for the third

21   parties' copying costs (which is not an issue here since Mattel will reimburse them),

22   and even if the third parties did not already have separated case files, a claim that

23   compliance with Mattel's requests "would necessitate the examination of large

24   quantities of documents, requiring a great deal of time and expense . . . is not alone a

25   sufficient reason for refusing discovery which is otherwise appropriate. . . . "

26   American Optical Co., 39 F.R.D. 580, 586-587 (N.D. Cal. 1966) (denying motion to

27   quash where documents sought covered a twelve year period).  And, in an effort to

28   further reduce burden upon the third-parties, Mattel has offered to have its own

1  paralegal and counsel inspect documents gathered thus far by the third-party

2  financial institutions with an agreement that the inspection will not result in

3  waiver.[145]  Given these concessions and the applicable case law, the raw assertions

4  of undue burden are meritless.

5

6        **3.    MGA's Statement of Position Regarding Requests 9-10 to**

7              **Moss Adams**

8        Mattel's subpoena to Moss Adams includes these requests for all documents

9  relating to Bratz and/or the instant suit.  Although some of these documents

10 regarding MGA's products or Mr. Bryant may be relevant, Mattel's requests are

11 improper because they are overly broad and not tailored to exclude irrelevant or

12 duplicative information.  See Fed. R. Civ. P. 26(b)(2)(C); *Walking Mountain*,

13 353 F.3d at 813 (quashing subpoena issued by Mattel and Quinn Emanuel because

14 "no attempt had been made to try to tailor the information request to the immediate

15 needs of the case").

16       Over the past three years, Mattel has taken vast amounts of discovery

17 regarding Bratz, other MGA products at issue and Mr. Bryant-including discovery

18 on the topics at issue in this request.  Mattel has served the MGA Defendants with

19 hundreds of document requests covering these subjects and has received in response

20 to its requests more than three million pages of responsive documents.  (Park Decl.,

21 ¶ 2.)  For example, Mattel has already requested and obtained from MGA mountains

22 of documents relating to Bratz.  (*See, e.g.,* Park Decl., Ex. 29 (Mattel's 1st Set of

23 RFPs to MGA) at Request 32 ("ALL DOCUMENTS prepared, written, transmitted

24 or received (whether in whole or in part) prior to January 1, 2001 that REFER OR

25 RELATE TO BRATZ.") & Request 33 ("ALL DOCUMENTS that REFER OR

26 RELATE TO BRATZ that REFER OR RELATE TO any time prior to January 1,

27 _____

28 [145]   Exh. C [Letter from Jon Corey to John Baran dated December 20, 2007]

-203-

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    2001 (regardless of when such document was prepared, written, transmitted or

2    received, whether in whole or in part).").)  Similarly, documents relating to market

3    research for MGA's "4 Best Friends," "Mommy's Little Patient," "Mommy's Little"

4    and "Alienracers" products are already the subject of several of Mattel's document

5    requests to MGA.  (See, e.g., Park Decl., Ex. 30 (Mattel's 1st Set of RFPs Re Unfair

6    Competition) at Request 26 ("All DOCUMENTS RELATING TO the target market

7    or potential target market, and the demographics of any actual, potential or

8    prospective consumers, customers, purchasers or licensees of the CONTESTED

9    MGA PRODUCTS.") & Request 36 ("All DOCUMENTS RELATING TO any

10   consumer studies, reports, surveys, interviews or reports regarding the

11   CONTESTED MGA PRODUCTS ...").)

12          Having had ample opportunity to take discovery regarding Bratz, the other

13   MGA products at issue, the instant suit, and Mr. Bryant, Mattel should not be

14   permitted to burden the Non-Parties with duplicative discovery requests. Fed. R.

15   Civ. P. 26(b)(2)(C); *Lectrolarm,* 212 F.R.D. at 573 (granting protective order

16   against subpoenas that requested information that was already the subject of party

17   discovery).  Even if some of the documents Mattel seeks are relevant, Mattel has a

18   duty to "take reasonable steps to avoid imposing undue burden or expense on

19   [subpoenaed non-parties]." Fed. R. Civ. P. 45(c)(1).  Such steps include tailoring

20   the requests by specifying only the relevant, non-duplicative materials that Mattel

21   needs.  See *Walking Mountain*, 353 F.3d at 813 (quashing Mattel's subpoena where

22   Mattel made no attempt ... to try to tailor the information request to the immediate

23   needs of the case"); *Lectrolarm*, 212 F.R.D. at 573 (holding that plaintiff could only

24   obtain documents from non-party "with a showing that there is specific, relevant

25   information in [non-party's] possession that [is not privileged]") (emphasis in

26   original).

27          Mattel has made no effort to tailor its requests, but has deliberately drafted its

28   requests to cast as wide a net as possible.  Because Mattel has failed to take any

1   steps, let along reasonable steps, to avoid unduly burdening Moss Adams, these

2   requests are improper and must be quashed or substantially narrowed.

3        **Mattel's Response:**

4        "The burden of showing that a subpoena is unreasonable and oppressive is

5   upon the party to whom it is directed." Goodman v. U.S., 369 F.2d 166, 169 (9th

6   Cir. 1966); Flatow v. The Islamic Republic of Iran, 202 F.R.D. 35, 36 (D.D.C.

7   2001); Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir.

8   1984).  Here, MGA fails to carry its burden.

9        The Requests at issue seek documents directly related to Bratz or to this

10  action.  The relevancy of these requests is incontestable.[146]  Recognizing the

11  undeniable relevance of such documents, MGA argues that the third parties should

12  nevertheless be relieved of producing responsive documents because Mattel has

13  obtained documents relating to Bratz from MGA.  However, the documents sought

14  by the subpoenas are not limited to documents that the responding parties obtained

15  from MGA relating to Bratz or this action.  Rather, the subpoenas seek all

16  documents in their possession, custody or control – from whatever source -- relating

17  to Bratz or this action.  Thus, documents that Moss Adams may have obtained from

18  other sources concerning Bratz in the course of its audit or accounting work for

19  Larian are responsive and would not necessarily have been produced by MGA or

20  Larian.  Similarly, documents that Moss Adams may have created pertaining to the

21  value of Bratz or otherwise relating to Bratz or this action would be relevant, and

22  would not necessarily be in the possession of MGA or Larian.  Any valuation of

23  Bratz or any assessment concerning value made by Moss Adams in that regard

24

25  _____

26  [146]   Exh. N, at 11:1-2 [Court's August 9, 2006 Order Denying Appointment of
    Expert Witnesses] ("At its heart, this case asks the question:  Who owns the rights to

27  the Bratz dolls?"); Exh. Q, at 8:8-21 [Discovery Master's May 15, 2007 Order
    Granting Mattel's Motion to Compel].

28

1 | would also be relevant to the remedy of disgorgement, as well as determining
2 | MGA's net worth, and/or the value of its intellectual property and good will.

3 | Moreover, as discussed above, the mere fact that some of the same
4 | documents may be available from other sources is not sufficient grounds to quash
5 | the subpoena.

6 | MGA and Larian fail to show that the requests are so burdensome to
7 | justify quashing the subpoenas. A party claiming that production of requested
8 | documents is unduly burdensome bears the burden of proving up their objection.
9 | Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984)
10 | (reversing district court's decision quashing subpoena). The party cannot rest on
11 | conclusory assertions. Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966)
12 | (reversing the quashing of a subpoena because of lack of specific evidence of
13 | burden). "The party must provide specific and compelling proof that the burden is
14 | undue." JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25
15 | (Fed. Cl. Ct. 2007) (denying motion to quash).

16 | Here, MGA and Isaac Larian offer no evidence--such as a declaration
17 | or testimony--regarding the time, cost, or burden involved in responding to Mattel's
18 | subpoenas. Nor could they. "The burden of showing that a subpoena is
19 | unreasonable and oppressive *is upon the party to whom it is directed*." Goodman v.
20 | U.S., 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added).

21 | In addition, in a further effort to reduce any inconvenience to the third-
22 | parties, Mattel will reimburse the third parties for the costs incurred in copying the
23 | responsive documents. However, even if Mattel was unwilling to pay for the third
24 | parties' copying costs (which is not an issue here since Mattel will reimburse them),
25 | and even if the third parties did not already have separated case files, a claim that
26 | compliance with Mattel's requests "would necessitate the examination of large
27 | quantities of documents, requiring a great deal of time and expense . . . is not alone a
28 | sufficient reason for refusing discovery which is otherwise appropriate. . . . "

1  American Optical Co., 39 F.R.D. 580, 586-587 (N.D. Cal. 1966) (denying motion to

2  quash where documents sought covered a twelve year period).  And, in an effort to

3  further reduce burden upon the third-parties, Mattel has offered to have its own

4  paralegal and counsel inspect documents gathered thus far by the third-party

5  financial institutions with an agreement that the inspection will not result in

6  waiver.[147]  Given these concessions and the applicable case law, the raw assertions

7  of undue burden are meritless.

8

9        **4.      MGA's Statement of Position Regarding Requests 1-8 and**

10                **10-13 to ConsumerQuest**

11        Mattel's subpoena to ConsumerQuest includes these requests for documents

12  relating to Carter Bryant, Bratz, other MGA products or work performed for MGA

13  by ConsumerQuest.. Although some of these documents regarding Bryant and

14  MGA's products may be relevant, Mattel's requests are improper because they are

15  overly broad and not tailored to exclude irrelevant or duplicative information.  See

16  Fed. R. Civ. P. 26(b)(2)(C); *Walking Mountain*, 353 F.3d at 813 (quashing subpoena

17  issued by Mattel and Quinn Emanuel because "no attempt had been made to try to

18  tailor the information request to the immediate needs of the case").

19        Over the past three years, Mattel has taken vast amounts of discovery

20  regarding Bratz, other MGA products at issue and Mr. Bryant-including discovery

21  on the topics at issue in these requests.  Mattel has served the MGA Defendants with

22  hundreds of document requests covering these subjects and has received in response

23  to its requests more than three million pages of responsive documents.  (Park Decl.,

24  ¶ 2.) For example, Mattel has already requested and obtained from MGA mountains

25  of documents relating to Bratz.  (See, e.g., Park Decl., Ex. 29 (Mattel's 1st Set of

26  RFPs to MGA) at Request 32 ("ALL DOCUMENTS prepared, written, transmitted

27  _____

28        [147]  Exh. C [Letter from Jon Corey to John Baran dated December 20, 2007]

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  or received (whether in whole or in part) prior to January 1, 2001 that REFER OR

2  RELATE TO BRATZ.") & Request 33 ("ALL DOCUMENTS that REFER OR

3  RELATE TO BRATZ that REFER OR RELATE TO any time prior to January 1,

4  2001 (regardless of when such document was prepared, written, transmitted or

5  received, whether in whole or in part).").)  Similarly, documents relating to market

6  research for MGA's "4 Best Friends," "Mommy's Little Patient," "Mommy's Little"

7  and "Alienracers" products are already the subject of several of Mattel's document

8  requests to MGA.  (*See, e.g.*, Park Decl., Ex. 30 (Mattel's 1st Set of RFPs Re Unfair

9  Competition) at Request 26 ("All DOCUMENTS RELATING TO the target market

10  or potential target market, and the demographics of any actual, potential or

11  prospective consumers, customers, purchasers or licensees of the CONTESTED

12  MGA PRODUCTS.") & Request 36 ("All DOCUMENTS RELATING TO any

13  consumer studies, reports, surveys, interviews or reports regarding the

14  CONTESTED MGA PRODUCTS...").)

15          Having had ample opportunity to take discovery regarding Bratz, the other

16  MGA products at issue, the instant suit, and Mr. Bryant, Mattel should not be

17  permitted to burden the Non-Parties with duplicative discovery requests.  Fed. R.

18  Civ. P. 26(b)(2)(C); *Lectrolarm,* 212 F.R.D. at 573 (granting protective order

19  against subpoenas that requested information that was already the subject of party

20  discovery).  Even if some of the documents Mattel seeks are relevant, Mattel has a

21  duty to "take reasonable steps to avoid imposing undue burden or expense on

22  [subpoenaed non-parties]."  Fed. R. Civ. P. 45(c)(1).  Such steps include tailoring

23  the requests by specifying only the relevant, non-duplicative materials that Mattel

24  needs.  See Walking Mountain, 353 F.3d at 813 (quashing Mattel's subpoena where

25  Mattel made "no attempt ... to try to tailor the information request to the immediate

26  needs of the case"); *Lectrolarm,* 212 F.R.D. at 573 (holding that plaintiff could only

27  obtain documents from non-party "with a showing that there is specific, *relevant*

28

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1 | information in [non-party's] possession that [is not privileged]") (emphasis in
2 | original).

3 |   Mattel has made no effort to tailor its requests, but has deliberately drafted its
4 | requests to cast as wide a net as possible.  Because Mattel has failed to take any
5 | steps, let along reasonable steps, to avoid unduly burdening ConsumerQuest, these
6 | requests are improper and must be quashed or substantially narrowed.

7 |

8 |   **Mattel's Response:**

9 |   "The burden of showing that a subpoena is unreasonable and oppressive is
10 | upon the party to whom it is directed."  Goodman v. U.S., 369 F.2d 166, 169 (9th
11 | Cir. 1966); Flatow v. The Islamic Republic of Iran, 202 F.R.D. 35, 36 (D.D.C.
12 | 2001); Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir.
13 | 1984).  Here, MGA fails to carry its burden.

14 |   The Requests at issue seek documents directly related to Bratz or to this
15 | action.  The relevancy of these requests is incontestable.[148]  Recognizing the
16 | undeniable relevance of such documents, MGA argues that the third parties should
17 | nevertheless be relieved of producing responsive documents because Mattel has
18 | obtained documents relating to Bratz from MGA.  However, the documents sought
19 | by the subpoenas are not limited to documents that the responding parties obtained
20 | from MGA.  Rather, the subpoenas seek all documents in their possession, custody
21 | or control – from whatever source – relating to Bratz or this action.

22 |   Furthermore, the ConsumerQuest subpoena seeks information about
23 | other MGA products relevant to MGA's claims for false designation of origin, unfair

---

[148]   Exh. N, at 11:1-2 [Court's August 9, 2006 Order Denying Appointment of Expert Witnesses] ("At its heart, this case asks the question:  Who owns the rights to the Bratz dolls?"); Exh. Q, at 8:8-21 [Discovery Master's May 15, 2007 Order Granting Mattel's Motion to Compel].

07209/2339253.2

competition, and dilution.  For example, in its claim for dilution, MGA alleges that

"the look and trade dress of MGA products referenced herein are distinctive and

famous, and have been since Mattel launched similar versions.  By its aforesaid acts,

Mattel has caused and continues to cause blurring and dilution of the distinctive

look of MGA's products and trade dress."[149]  Notably, Request Nos. 8 seek

information relating to MGA products specifically referenced in its Complaint as

underlying its claims against Mattel.[150]  Request Nos. 9 and 10 seek similar

information about communications with MGA and Larian and other consumer

research work by ConsumerQuest regarding other MGA products:

> • All COMMUNICATIONS with MGA or ISAAC
> LARIAN REFERRING OR RELATING TO MATTEL
> since January 1998.  [Request No. 9].
>
> • All COMMUNICATIONS REFERRING OR
> RELATING TO any request to perform work or services
> for or on behalf of MGA including, without limitation, any
> decision by YOU not to perform such work.  [Request
> No. 10].

Consumer research regarding these products is obviously relevant to

MGA's allegations in its complaint that the products were famous, distinctive, and

that Mattel's products have and are diluting them, as well as relevant to MGA's

theory of damages therefrom.

Additionally, documents in the possession of ConsumerQuest are

relevant to MGA's claim for unfair competition against Mattel.  For example, in its

interrogatory responses, MGA has claimed that Mattel interfered with MGA's

---

[149]   Exh. A [MGA Complaint at ¶ 120].
[150]   "All DOCUMENTS REFERRING OR RELATING TO any study, survey, focus group, research group or other work or services for MGA relating to "4-ever Best Friends," "Mommy's Little Patient" and/or "Mommy's Little" or "Alienracers," including without limitation all viability reports relating thereto."

07209/2339253.2

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  relationship with ConsumerQuest.[151]  Mattel is entitled to subpoena documents from

2  ConsumerQuest specifically to defend against MGA's accusation.  Additionally, it

3  does not appear that MGA has produced all Bratz documents related to

4  ConsumerQuest.[152]

5         Moreover, the mere fact that some of the same documents may be

6  available from other sources is not sufficient grounds to quash the subpoena.  MGA

7  and Larian fail to show that the requests are so burdensome to justify quashing the

8  subpoenas.  A party claiming that production of requested documents is unduly

9  burdensome bears the burden of proving up their objection.  <u>Northrop Corp. v.</u>

10 <u>McDonnell Douglas Corp.</u>, 751 F.2d 395, 403 (D.C. Cir. 1984) (reversing district

11 court's decision quashing subpoena).  The party cannot rest on conclusory

12 assertions.  <u>Goodman v. U.S.</u>, 369 F.2d 166, 169 (9th Cir. 1966) (reversing the

13 quashing of a subpoena because of lack of specific evidence of burden).  "The party

14 must provide specific and compelling proof that the burden is undue."

15 <u>JZ Buckingham Investments, LLC v. United States</u>, 78-Fed. Cl. 15, 25 (Fed. Cl. Ct.

16 2007) (denying motion to quash).

17        Here, MGA and Isaac Larian offer no evidence--such as a declaration

18 or testimony--regarding the time, cost, or burden involved in responding to Mattel's

19 subpoenas.  Nor could they.  "The burden of showing that a subpoena is

20 unreasonable and oppressive *is upon the party to whom it is directed*."  <u>Goodman v.</u>

21 <u>U.S.</u>, 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added).

22        In addition, in a further effort to reduce any inconvenience to the third-

23 parties, Mattel will reimburse the third parties for the costs incurred in copying the

24

25  ───────────────

26 [151]   Exh. 1, at 20:24-21:8; 30:20-22; 31:10-22 [MGA Entertainment, Inc.'s
   Second Supplemental Responses to Mattel, Inc.'s First Set of Interrogatories re:

27 Claims of Unfair Competition] to the Declaration of Michael Zeller (Zeller Dec.).
   [152]   Zeller Dec., ¶ 2.

28

1   responsive documents.  However, even if Mattel was unwilling to pay for the third

2   parties' copying costs (which is not an issue here since Mattel will reimburse them),

3   and even if the third parties did not already have separated case files, a claim that

4   compliance with Mattel's requests "would necessitate the examination of large

5   quantities of documents, requiring a great deal of time and expense . . . is not alone a

6   sufficient reason for refusing discovery which is otherwise appropriate. . . . "

7   American Optical Co., 39 F.R.D. 580, 586-587 (N.D. Cal. 1966) (denying motion to

8   quash where documents sought covered a twelve year period).  And, in an effort to

9   further reduce burden upon the third-parties, Mattel has offered to have its own

10  paralegal and counsel inspect documents gathered thus far by the third-party

11  financial institutions with an agreement that the inspection will not result in

12  waiver.[153]  Given these concessions and the applicable case law, the raw assertions

13  of undue burden are meritless.

14

15          **5.      MGA's Statement of Position Regarding Requests 9-11 to the**

16                  **Isaac and Angela Larian Trust and the Isaac Larian Annuity**

17                  **Trust**

18          Mattel's subpoena to the Isaac and Angela Larian Trust and the Isaac Larian

19  Annuity Trust includes these requests for all documents relating to Carter, Bryant,

20  Bratz and/or the instant suit. Although some of these documents regarding MGA's

21  products or Mr. Bryant may be relevant, Mattel's requests are improper because it is

22  overly broad and not tailored to exclude irrelevant or duplicative information.  See

23  Fed. R. Civ. P. 26(b)(2)(C); Walking Mountain, 353 F.3d at 813 (quashing subpoena

24  issued by Mattel and Quinn Emanuel because "no attempt had been made to try to

25  tailor the information request to the immediate needs of the case").

26

27  _____

28  [153]   Exh. C [Letter from Jon Corey to John Baran dated December 20, 2007]. __

07209/2339253.2

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1    Over the past three years, Mattel has taken vast amounts of discovery

2  regarding Bratz, other MGA products at issue and Mr. Bryant-including discovery

3  on the topics at issue in this request.  Mattel has served the MGA Defendants with

4  hundreds of document requests covering these subjects and has received in response

5  to its requests more than three million pages of responsive documents.  (Park Decl.,

6  ¶ 2.)  For example, Mattel has already requested and obtained from MGA mountains

7  of documents relating to Bratz.  (*See, e.g.*, Park Decl., Ex. 29 (Mattel's 1st Set of

8  RFPs to MGA) at Request 32 ("ALL DOCUMENTS prepared, written, transmitted

9  or received (whether in whole or in part) prior to January 1, 2001 that REFER OR

10  RELATE TO BRATZ.") & Request 33 ("ALL DOCUMENTS that REFER OR

11  RELATE TO BRATZ that REFER OR RELATE TO any time prior to January 1,

12  2001 (regardless of when such document was prepared, written, transmitted or

13  received, whether in whole or in part).").)  Similarly, documents relating to market

14  research for MGA's "4 Best Friends," "Mommy's Little Patient," "Mommy's Little"

15  and "Alienracers" products are already the subject of several of Mattel's document

16  requests to MGA.  (*See, e.g.,* Park Decl., Ex. 30 (Mattel's 1st Set of RFPs Re Unfair

17  Competition) at Request 26 ("All DOCUMENTS RELATING TO the target market

18  or potential target market, and the demographics of any actual, potential or

19  prospective consumers, customers, purchasers or licensees of the CONTESTED

20  MGA PRODUCTS.") & Request 36 ("All DOCUMENTS RELATING TO any

21  consumer studies, reports, surveys, interviews or reports regarding the

22  CONTESTED MGA PRODUCTS...").)

23    Having had ample opportunity to take discovery regarding Bratz, the other

24  MGA products at issue, the instant suit, and Mr. Bryant, Mattel should not be

25  permitted to burden the Non-Parties with duplicative discovery requests.  Fed. R.

26  Civ. P. 26(b)(2)(C); *Lectrolarm*, 212 F.R.D. at 573 (granting protective order

27  against subpoenas that requested information that was already the subject of party

28  discovery).  Even if some of the documents Mattel seeks are relevant, Mattel has a

1 | duty to "take reasonable steps to avoid imposing undue burden or expense on
2 | [subpoenaed non-parties]." Fed. R. Civ. P. 45(c)(1).  Such steps include tailoring
3 | the requests by specifying only the relevant, non-duplicative materials that Mattel
4 | needs.  See *Walking Mountain,* 353 F.3d at 813 (quashing Mattel's subpoena where
5 | Mattel made "no attempt ... to try to tailor the information request to the immediate
6 | needs of the case"); *Lectrolarm,* 212 F.R.D. at 573 (holding that plaintiff could only
7 | obtain documents from non-party "with a showing that there is specific, relevant
8 | information in [non-party's] possession that [is not privileged]") (emphasis in
9 | original).

10 | Mattel has made no effort to tailor its requests, but has deliberately drafted its
11 | requests to cast as wide a net as possible.  Because Mattel has failed to take any
12 | steps, let along reasonable steps, to avoid unduly burdening the Isaac and Angela
13 | Larian Trust and the Isaac Larian Annuity Trust, these requests are improper and
14 | must be quashed or substantially narrowed.

15 |

16 | **Mattel's Response:**

17 | "The burden of showing that a subpoena is unreasonable and oppressive is
18 | upon the party to whom it is directed." Goodman v. U.S., 369 F.2d 166, 169 (9th
19 | Cir. 1966); Flatow v. The Islamic Republic of Iran, 202 F.R.D. 35, 36 (D.D.C.
20 | 2001); Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir.
21 | 1984).  Here, MGA fails to carry its burden.

22 | The Requests at issue seek documents directly related to Bratz or to this
23 | action.  The relevancy of these requests is incontestable.[154]  Recognizing the

24 |

25 | _____

26 | [154]   Exh. N, at 11:1-2 [Court's August 9, 2006 Order Denying Appointment of
Expert Witnesses] ("At its heart, this case asks the question:  Who owns the rights to
27 | the Bratz dolls?"); Exh. Q, at 8:8-21 [Discovery Master's May 15, 2007 Order
Granting Mattel's Motion to Compel].

28 |

-214-

undeniable relevance of such documents, MGA argues that the third parties should nevertheless be relieved of producing responsive documents because Mattel has obtained documents relating to Bratz from MGA.  However, the documents sought by the subpoenas are not limited to documents that the responding parties obtained from MGA.  Rather, the subpoenas seek all documents in their possession, custody or control – from whatever source -- relating to Bratz or this action.

Furthermore, the ConsumerQuest subpoena seeks information about other MGA products relevant to MGA's claims for false designation of origin, unfair competition, and dilution.  For example, in its claim for dilution, MGA alleges that "the look and trade dress of MGA products referenced herein are distinctive and famous, and have been since Mattel launched similar versions.  By its aforesaid acts, Mattel has caused and continues to cause blurring and dilution of the distinctive look of MGA's products and trade dress."[155]  Notably, Request Nos. 8 seek information relating to MGA products specifically referenced in its Complaint as underlying its claims against Mattel.[156]  Request Nos. 9 and 10 seek similar information about communications with MGA and Larian and other consumer research work by ConsumerQuest regarding other MGA products:

> • All COMMUNICATIONS with MGA or ISAAC LARIAN REFERRING OR RELATING TO MATTEL since January 1998. [Request No. 9].

> • All COMMUNICATIONS REFERRING OR RELATING TO any request to perform work or services for or on behalf of MGA including, without limitation, any decision by YOU not to perform such work.  [Request No. 10].

---

[155]  Exh. A [MGA Complaint ¶ 120].
[156]  "All DOCUMENTS REFERRING OR RELATING TO any study, survey, focus group, research group or other work or services for MGA relating to "4-ever Best Friends," "Mommy's Little Patient" and/or "Mommy's Little" or "Alienracers," including without limitation all viability reports relating thereto."

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

07209/2339253.2

1       Consumer research regarding these products is obviously relevant to
2   MGA's allegations in its complaint that the products were famous, distinctive, and
3   that Mattel's products have and are diluting them, as well as relevant to MGA's
4   theory of damages therefrom.
5       Moreover, the mere fact that some of the same documents may be
6   available from other sources is not sufficient grounds to quash the subpoena.
7       MGA and Larian fail to show that the requests are so burdensome to
8   justify quashing the subpoenas.  A party claiming that production of requested
9   documents is unduly burdensome bears the burden of proving up their objection.
10  Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984)
11  (reversing district court's decision quashing subpoena).  The party cannot rest on
12  conclusory assertions.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966)
13  (reversing the quashing of a subpoena because of lack of specific evidence of
14  burden).  "The party must provide specific and compelling proof that the burden is
15  undue." JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25
16  (Fed. Cl. Ct. 2007) (denying motion to quash).
17      Here, MGA and Isaac Larian offer no evidence--such as a declaration
18  or testimony--regarding the time, cost, or burden involved in responding to Mattel's
19  subpoenas.  Nor could they.  "The burden of showing that a subpoena is
20  unreasonable and oppressive *is upon the party to whom it is directed*." Goodman v.
21  U.S., 369 F.2d 166, 169 (9th Cir. 1966) (emphasis added).
22      In addition, in a further effort to reduce any inconvenience to the third-
23  parties, Mattel will reimburse the third parties for the costs incurred in copying the
24  responsive documents.  However, even if Mattel was unwilling to pay for the third
25  parties' copying costs (which is not an issue here since Mattel will reimburse them),
26  and even if the third parties did not already have separated case files, a claim that
27  compliance with Mattel's requests "would necessitate the examination of large
28  quantities of documents, requiring a great deal of time and expense . . . is not alone a

07209/2339253.2

-216-
MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

1  sufficient reason for refusing discovery which is otherwise appropriate. . . . ”
2  American Optical Co., 39 F.R.D. 580, 586-587 (N.D. Cal. 1966) (denying motion to
3  quash where documents sought covered a twelve year period).  And, in an effort to
4  further reduce burden upon the third-parties, Mattel has offered to have its own
5  paralegal and counsel inspect documents gathered thus far by the third-party
6  financial institutions with an agreement that the inspection will not result in
7  waiver.[157]  Given these concessions and the applicable case law, the raw assertions
8  of undue burden are meritless.
9
10  DATED:  January 18, 2008          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
11
12                                   By
13                                      Jon D. Corey
                                        Attorneys for Plaintiff and Cross-Defendant
14                                      Mattel, Inc.

---

[157]   Exh. C to Corey Dec. [Letter from Jon Corey to John Baran dated December 20, 2007].

MATTEL'S CONSOLIDATED SEPARATE STATEMENT IN RESPONSE TO MGA'S STATEMENT IN SUPPORT
OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER