QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
JOHN B. QUINN (State Bar No. 090378)
MICHAEL T. ZELLER (State Bar No. 196417)
JON D. COREY (State Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000; Facsimile: (213) 443-3100

STROOCK & STROOCK & LAVAN LLP
BARRY B. LANGBERG (State Bar No. 048158)
MICHAEL J. NIBORSKI (State Bar No. 192111)
2029 Century Park East, Suite 1600
Los Angeles, California 90067-3086
(lacalendar@stroock.com)
Telephone: (310) 556-5800; Facsimile: (310) 556-5959

Attorneys for MATTEL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| vs. | DISCOVERY MATTER |
| MATTEL, INC., a Delaware corporation, | [To Be Heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of Dec. 6, 2006] |
| Defendant. | MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL THE DEPOSITION OF CHRISTOPHER PALMERI |
| AND CONSOLIDATED ACTIONS | Date:   February 8, 2008 Time:   9:30 a.m. Place:   TBA |

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.    PRELIMINARY STATEMENT ........................................................ 1

II.   STATEMENT OF FACTS ................................................................ 3

III.  ARGUMENT ................................................................................... 5

    A.   Mr. Palmeri's Prospective Testimony Is Not Privileged And He Must Therefore Submit To Deposition ................................ 5

        1.   Mr. Palmeri's prospective testimony concerns information that is non-confidential and has already been published. ........................................................................ 6

        2.   Even if Mr. Larian's identity as the source of the "He should know" statement is viewed as "unpublished," the journalist's privilege still does not apply. ........................ 8

    B.   Even If The Journalist's Privilege Applies, It Must Yield Here. ........... 10

        1.   The testimony Mattel seeks from Mr. Palmeri is available from no other source. ................................. 11

        2.   The information Mattel seeks is non-cumulative. ................. 12

        3.   The information Mattel seeks is critical to Mattel's claims regarding the ownership of Bratz. ................. 13

        4.   The information Mattel requests is not confidential. .................... 14

IV.   CONCLUSION .............................................................................. 15

- 1 -

# TABLE OF AUTHORITIES

## Cases

**Page**

Agster v. Maricopa County,
　　422 F.3d 836 (9th Cir. 2005) ................................................................ 10

Brinston v. Dunn,
　　919 F. Supp. 240 (S.D. Miss. 1996) ................................................. 7, 8

Crowe v. County of San Diego,
　　242 F. Supp. 2d 740 (S.D. Cal. 2003) .............................................. 10

De La Paz v. Henry's Diner,
　　946 F. Supp. 484 (N.D. Tex. 1996) ................................................ 6, 9

Dillon v. City and County of San Francisco,
　　748 F. Supp. 722 (N.D. Cal. 1990) ............................... 6, 9, 10, 11, 14

Don King Prod. v. Douglas,
　　131 F.R.D. 421 (S.D.N.Y. 1990) ................................................. 12, 13

Farr v. Pitchess,
　　522 F.2d 464 (9th Cir. 1975) ........................................................... 10

In re Maykuth,
　　2006 WL 724241 (E.D. Pa. 2006) ...................................................... 6

McKevitt v. Pallasch,
　　339 F.3d 530 (7th Cir. 2003) ................................................. 7, 8, 9, 14

Miami Herald Pub. Co. v. Morejon,
　　561 So. 2d 577 (Fla. 1990) ................................................................ 6

Prince George's County v. Hartley,
　　822 A.2d 537 (Md. App. 2003) ........................................................ 10

Shoen v. Shoen,
　　5 F.3d 1289 (9th Cir. 1993) ............................................... 5, 10, 14

Shoen v. Shoen,
　　48 F.3d 412 (9th Cir. 1995) ............................................................. 11

Solaia Technology, LLC v. Rockwell Automation, Inc.,
　　2003 WL 22597611 (N.D. Ill. 2003) .................................................. 9

State of Minnesota v. Knutson,
　　523 N.W.2d 909 (Minn. App. 1995) ................................................ 10

In re Vmark Software, Inc.,
　　1998 WL 42252 (E.D. Pa. 1998) ........................................... 6, 11, 12

In re Ziegler,
　　550 F. Supp. 530 (W.D.N.Y. 1982) ................................................. 10

- 2 -

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at a hearing before Discovery Master Hon. Edward Infante (Ret.), that will occur at 9:30 a.m. on February 8, 2008 or at such other time set by Judge Infante, Mattel, Inc. ("Mattel") will, and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure 37, to compel the deposition of Christopher Palmeri.

This Motion is made on the grounds that Mr. Palmeri has refused without justification to appear for deposition and provide testimony that is material – indeed, vital – to Mattel's claims.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Michael J. Niborski (and its exhibits) filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

Statement Of Rule 37-1 Compliance

The parties met and conferred regarding Mattel's prospective deposition of Christopher Palmeri. See Declaration of Michael J. Niborski ("Niborski Dec."), filed concurrently herewith, at ¶¶ 4, 6-8, 14-16.

Dated:  January 21, 2008          STROOCK & STROOCK & LAVAN LLP
                                  BARRY B. LANGBERG
                                  MICHAEL J. NIBORSKI


                       By:   _____
                                  Michael J. Niborski

                             Attorneys for MATTEL, INC.

- 1 -

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Mattel seeks nothing more from reporter Christopher Palmeri than confirmation under oath of information he has already provided to the general public. Rather than provide testimony on a matter that goes to the heart of this litigation, Mr. Palmeri has refused outright to comply with a subpoena and appear for deposition. Mr. Palmeri remains steadfast in his refusal to obey the subpoena despite Mattel's willingness to limit the scope and duration of the deposition and to hold the deposition at the location of Mr. Palmeri's choice.

In July 2003, an article authored by Mr. Palmeri entitled "To Really Be A Player, Mattel Needs Hotter Toys" was published in BusinessWeek (the "Article"). The Article contains several statements clearly attributable to Isaac Larian, one of which is as follows:

> Mattel won't live or die on every new toy it develops. But
> it can't just rely on Barbies, either. "Like they say in
> business school – no risk, no reward," says Isaac Larian,
> CEO of privately held MGA. He should know: He got the
> idea for Bratz after seeing his own kids run around in
> navel-baring tops and hip-huggers.[1]

Mattel seeks limited deposition testimony from Mr. Palmeri that will confirm that Mr. Larian made these statements. The Article conveys through clear language and context that Mr. Larian told Mr. Palmeri that the Bratz dolls were his idea and the source of that idea was Mr. Larian's observation of "his own kids run[ning]

---

[1] Declaration of Michael J. Niborski filed concurrently herewith ("Niborski Dec."), ¶ 2, Ex. 1 (Article).

1 | around in navel-baring tops and hip huggers." Mattel merely asks that Mr. Palmeri

2 | confirm Mr. Larian's published statements about the origins of Bratz.

3 | This information is material to Mattel's claims and is not available from any

4 | other source. The information sought also is not confidential; BusinessWeek's

5 | publication of Mr. Larian's statements about the origins of Bratz establishes that the

6 | information obtained by Mr. Palmeri was not provided under any promise of

7 | confidentiality. <u>Simply put, Mr. Palmeri is a witness to statements and conduct by</u>

8 | <u>Mr. Larian – the public cover-up of Carter Bryant's development of Bratz while he</u>

9 | <u>was a Mattel employee – that is central to this lawsuit.</u>

10 | Despite the limited scope of Mattel's intended inquiry, Mr. Palmeri has

11 | categorically refused to appear for deposition. Mr. Palmeri's counsel contends that

12 | Mattel seeks unpublished information and that the testimony requested by Mattel is

13 | shielded by the journalist's privilege. Mr. Palmeri has taken the untenable position –

14 | unsupported by law – that he can completely avoid testifying simply because he

15 | anticipates he will be asked a question that entitles him to assert the journalist's

16 | privilege.

17 | Clearly, Mattel is not seeking any unpublished information. It is hornbook law

18 | that information that has already been revealed to the public at large may not be the

19 | subject of a valid privilege. Moreover, even if the journalist's privilege were found

20 | to apply here, it is qualified and yields when the litigant's need for the information

21 | sought outweighs any public interest in non-disclosure. There is simply no public

22 | policy rationale for a reporter's refusal to confirm under oath statements published in

23 | a national news magazine. In contrast, Mr. Palmeri's prospective testimony is

24 | crucial to Mattel's ability to prove its claim that Bryant and Larian, among others at

25 | MGA, made inconsistent statements concerning the origins of Bratz and engaged in a

26 | scheme to conceal the product's true origins. These statements offer direct proof that

27 | Mr. Larian – who has since acknowledged under oath that Bryant brought him the

28 |

-2-

1  Bratz idea – falsely claimed that he (Larian) was the creator of Bratz.  That false
2  claim was part of a scheme to conceal the truth from the public and Mattel.

3       The scheme of concealment is central to this case in at least two respects.
4  First, it shows guilty knowledge by Larian and MGA that Bryant developed Bratz
5  while an employee of Mattel, in violation of his employment agreement with Mattel,
6  and an awareness by Larian and MGA that Bryant's inventions during his
7  employment at Mattel belong to Mattel.  Second, Larian's concealment, through
8  false statements to Mr. Palmeri in the summer of 2003, bears directly on MGA's
9  contention that Mattel had notice of Bryant's disloyalty prior to November 24, 2003,
10 when Mattel obtained a copy of Bryant's MGA agreement relating to Bratz.  Mr.
11 Larian obviously did his best to hide the existence of the claims against Bryant and
12 MGA by lying to the press.

13      Mattel has endeavored to depose Mr. Palmeri in the least burdensome manner
14 possible, offering not only to limit the time for questioning and conduct the
15 deposition at a time and place of Mr. Palmeri's choosing, but also to discuss the
16 prospective line of questioning in advance of the deposition with Mr. Palmeri's
17 counsel.  Simply put, Mattel has reasonably sought to procure testimony to which it
18 is entitled under the law.  In response, Mr. Palmeri has refused to appear.  Mattel
19 therefore seeks relief from the Court.

20

21 **II.   STATEMENT OF FACTS**

22      Mattel served Mr. Palmeri with a deposition subpoena on July 25, 2007.  The
23 parties do not dispute that service of the subpoena was proper.[2]  Mr. Palmeri served
24 objections to the deposition subpoena on August 8, 2007.[3]  While Mattel initially
25 requested documents in connection with the subpoena to ensure that Mr. Palmeri was

26 [2]  Niborski Dec., ¶¶ 2, 16; Ex. 3 (Subpoena to Christopher Palmeri, dated July 25,
27 2007); Ex. 13 (Letter from M. Niborski to A. Wickers dated January 14, 2008).

28 [3]  Niborski Dec., ¶ 5; Ex. 4 (Non-Party Reporter Christopher Palmeri's Objections To Plaintiff's Subpoena, dated August 8, 2007).

- 3 -

1  able to provide the most accurate testimony possible regarding Larian's published

2  statements, BusinessWeek has represented that no such documents exist. As a result,

3  only Mr. Palmeri's appearance for deposition remains at issue.[4]

4  Following service of the subpoena, counsel for Mattel and Palmeri engaged in

5  and extended meet-and-confer process. Mattel consistently represented that it seeks

6  testimony relating to published statements. In emails sent prior to serving

7  Mr. Palmeri with the subpoena, as well as in the discussions that followed, Mattel

8  has reiterated this fact.[5] Mattel also offered to conduct the deposition at a time and

9  place of Mr. Palmeri's choosing, and offered to agree to a limited period of time for

10  questioning. In addition, Mattel offered to discuss the exact scope of the prospective

11  questions with counsel for Mr. Palmeri in advance of the deposition.[6]

12  Contemporaneous with the service of the subpoena on Mr. Palmeri, Mattel

13  served deposition subpoenas on Maureen Tkacik, a reporter for the Wall Street

14  Journal, and Denise O'Neal, a reporter for the Chicago Sun-Times. Like Mr.

15  Palmeri, Ms. Tkacik and Ms. O'Neal wrote articles for their respective publications

16  that contained statements attributed to Larian regarding the origins of Bratz which

17  were inconsistent with Larian's, MGA's and Bryant's subsequent claims in this case.

18  Following meet and confer efforts with counsel for the Wall Street Journal and

19  Chicago Sun-Times, the two reporters were deposed on the same terms proposed by

20

21

22

---

23  [4] Niborski Dec., ¶¶ 4, 6-7; Ex. 3 (Email exchange between Alger and Farley), Ex. 6

24  (Email from Wickers to Alger dated August 16, 2007); Ex. 5 (Letter from Alger to Wickers, dated August 17, 2007).

25  [5] Niborski Dec., ¶¶ 6-8, 16; Ex. 6 (Email from Wickers to Alger dated August 16, 2007); Ex. 5 (Letter from Alger to Wickers, dated August 17, 2007); Ex. 7 (Letter

26  from Niborski to Wickers, dated September 5, 2007); Ex. 13 (Letter from Niborski to Wickers, dated January 14, 2008).

27  [6] Niborski Dec., ¶¶ 6-8, 14-16; Ex. 7 (Letter from Niborski to Wickers, dated

28  September 5, 2007); Ex. 13 (Letter from Niborski to Wickers, dated January 14, 2008).

- 4 -

1  Mattel here, with counsel for Mattel questioning the witnesses for less than 30
2  minutes each.[7]

3       On January 7, 2008, the Court granted Mattel's Motion for Leave to Take
4  Additional Discovery in this action.  In the Court's Order, Judge Larson found that
5  Mattel is entitled to conduct additional depositions.[8]  Importantly, Judge Larson was
6  informed of the reasons for and specifically granted Mattel permission to take the
7  deposition of Mr. Palmeri.  In its moving papers, Mattel identified Mr. Palmeri as
8  one of the prospective deponents, informed the Court that Mr. Palmeri is a reporter
9  for BusinessWeek, and provided the Court with a description of the relevance of Mr.
10  Palmeri's anticipated testimony during oral argument.[9]

11       Despite this, on January 14, 2008, Mr. Palmeri's counsel informed counsel for
12  Mattel that it would not agree to produce Mr. Palmeri for deposition in response to
13  the deposition subpoena.[10]

14

15  **III.  ARGUMENT**

16       **A.  Mr. Palmeri's Prospective Testimony Is Not Privileged And He**
17             **Must Therefore Submit To Deposition**

18       Because no privilege applies to Mr. Palmeri's prospective testimony, and that
19  testimony is indisputably relevant to this action, he should be ordered to provide the
20  requested testimony at deposition.  See Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir.
21  1993) (holding that in the absence of an applicable privilege, a non-party can be

22

23    [7] Niborski Dec., ¶¶ 9-10; Ex. 8 (Transcript of deposition of Maureen Tkacik, dated
24  September 28, 2007); Ex. 9 (Transcript of deposition of Denise O'Neal, dated
    October 3, 2007).

25    [8] Niborski Dec., ¶ 13, Ex. 12 (Order Granting In Part And Denying In Part Mattel's
    Motion For Leave To Take Additional Discovery, dated January 7, 2008; Order
26      Amending Court's Minute Order of January 7, 2008).

27    [9] Niborski Dec., ¶¶ 11-12; Ex. 10 (Motion of Mattel for Leave to Take Additional
    Discovery, at 8, 11); Ex. 11 (Transcript of January 7, 2008 hearing).

28    [10] Niborski Dec., ¶¶ 1-16; Ex. 13 (Letter from Niborski to Wickers dated January 14,
    2008).

1  compelled to produce evidence regarding any matter "reasonably calculated to lead
2  to the discovery of admissible evidence") (citing <u>Fed. R. Civ. P.</u> 26(b)(1)).  <u>See also</u>
3  <u>In re Maykuth</u>, 2006 WL 724241 at *3 (E.D. Pa. 2006) (granting defendant's motion
4  to compel the deposition of a reporter for the purposes of verifying whether or not
5  the plaintiffs actually made the comments attributed to them in the reporter's article);
6  <u>see also</u> <u>In re Vmark Software</u>, 1998 WL 42253 at *2 (E.D. Pa. 1998) (holding that
7  reporter's deposition was necessary to verify the statements of a party contained in a
8  published article).  Simply put, without the testimony that Mattel requests, the Article
9  is useless to Mattel because it does not constitute evidence admissible to prove a key
10 issue in the case – whether in fact Larian lied about the origins of Bratz.

11           **1.     Mr. Palmeri's prospective testimony concerns information**
12                    **that is non-confidential and has already been published.**

13         Mattel seeks nothing from Mr. Palmeri that is confidential or has not already
14 been published.  Mattel does not seek to reveal the identity of one of Mr. Palmeri's
15 sources, confidential or otherwise.  To the contrary, Mattel merely seeks to have
16 Mr. Palmeri testify to what anyone who read the Article would naturally conclude –
17 that the statements he attributes to Larian were actually made by Larian.  As a result,
18 the reporter's privilege is inapplicable to the information Mattel seeks from
19 Mr. Palmeri.  <u>See</u> <u>Dillon v. City and County of San Francisco</u>, 748 F. Supp 722, 726
20 (N.D. Cal. 1990) (holding that the privilege did not apply to the personal
21 observations of a reporter who "has not been asked to reveal any confidential sources
22 or information, nor has been requested to produce or discuss any resource
23 materials"); <u>Miami Herald Pub. Co. v. Morejon</u>, 561 So.2d 577, 581 (Fla. 1990)
24 (rejecting privilege for eyewitness observations (citing numerous cases)).

25         Federal courts – which apply federal common law privilege to non-diversity
26 cases[11] – have held that the journalist's privilege is inapplicable to all non-

27 _____

28 [11]  <u>Dillon</u>, 748 F. Supp. at 724-25.

- 6 -

1   confidential information, even if unpublished.  See De La Paz v. Henry's Diner, 946

2   F. Supp. 484, 485 (N.D. Tex. 1996) (holding that plaintiff's subpoena *duces tecum*,

3   seeking to compel a reporter's deposition, as well as tape-recorded interviews with

4   the defendant, did not implicate the journalist's privilege as it sought only non-

5   confidential material); see also McKevitt v. Pallasch, 339 F. 3d 530, 532 (7th Cir.

6   2003) (holding that journalist had "no conceivable interest" in preventing disclosure

7   of tape recordings of interviews with key prosecution witness for use by defendant in

8   a criminal trial because the source of the information was non-confidential).

9        This verification testimony is not only non-confidential, but also constitutes

10  "published" material to which the journalist's privilege does not apply.  Brinston v.

11  Dunn, 919 F. Supp. 240, 244 (S.D. Miss. 1996) (holding that where the defendant

12  failed to overcome the journalist's privilege to obtain "unpublished" information, it

13  was still proper to compel the deposition of the author on the limited issue of the

14  accuracy of the article's assertions, including whether statements attributed to the

15  plaintiff were in fact made by the plaintiff).  In Brinston, the Court drew a distinction

16  between "unpublished" materials, such as "sources" and "resource materials," which

17  may be the subject of privilege, and simply questioning the author of an article about

18  its accuracy, which does not "impermissibly infringe on the First Amendment right

19  to freedom of the press."  Id. at 243-44.

20       Mr. Palmeri is likely to contend that his testimony regarding statements in the

21  Article made by Larian involve unpublished information.[12]  This argument is based

22  solely on the fact that Mr. Palmeri did not include the exact words "Larian said" in

23  the following portion of the passage:  "He should know:  He got the idea for Bratz

24  after seeing his own kids run around in navel-baring tops and hip-huggers."  In other

25  words, Mr. Palmeri attempts to avoid a deposition based on editorial technique and a

26  news magazine's natural aversion to plodding prose that includes repetitious, express

27  _____

28  [12] Niborski Dec., ¶ 4; Ex. 3 (Email exchange between from Farley to Alger, dated June 26, 2007).

1    attribution.  The contents of the "He should know" passage, which immediately

2    follows express attribution of a direct quote to Larian, conveys to any reasonable

3    reader of BusinessWeek that Mr. Larian told Mr. Palmeri that he (Larian) had the

4    idea for Bratz, and it was inspired by watching his children.

5         The attribution distinction also is a hollow one, because questioning

6    Mr. Palmeri about statements implicitly attributed to a source would subject

7    Mr. Palmeri to no different imposition than questions about direct quotes.  There

8    would be no greater burden on Mr. Palmeri or interference with his work.  And the

9    policy considerations that limit the journalist's privilege to unpublished information

10   apply equally whether the non-confidential source is expressly identified with "he

11   said" or the non-confidential source is identified by the content and context of the

12   published statement.

13        Drawing a distinction would make certain determinations of discoverability

14   turn on the stylistic choice of a reporter or his or her editors, and Mattel is aware of

15   no case that stretches the journalist's privilege that far.  Mattel seeks nothing more

16   than the defendant in <u>Brinston</u> – testimony verifying what was relayed to readers in

17   the Article.

18              **2.      Even if Mr. Larian's identity as the source of the "He should**

19                       **know" statement is viewed as "unpublished," the journalist's**

20                       **privilege still does not apply.**

21        As discussed above, Mr. Palmeri unconvincingly contended during the meet-

22   and-confer process that Mattel seeks unpublished, and therefore privileged,

23   information.  However, assuming, *arguendo*, that Larian's identity as the source of

24   the "He should know" statement can be characterized as unpublished research

25   material, it is still not protected by the journalist's privilege.  <u>See</u> <u>McKevitt v.</u>

26   <u>Pallasch</u>, 339 F. 3d 530, 532 (7th Cir. 2003) (holding that journalist had "no

27   conceivable interest" in preventing disclosure of tape recordings of interviews with

28   key prosecution witness for use by defendant in a criminal trial because the source of

- 8 -

1    the information was non-confidential).  Here, Mr. Palmeri is being asked to verify

2    statements made to him by Larian, who is identified and quoted as a source in the

3    Article.  Id. at 533 ("[W]hen the information in the reporter's possession does not

4    come from a confidential source, it is difficult to see what possible bearing the First

5    Amendment could have on the question of compelled disclosure."); see also De La

6    Paz, 946 F. Supp. at 485 (holding that plaintiff was entitled to compel production of

7    tape-recorded interviews conducted with defendants if doing so did not require the

8    revelation of any confidential sources); Solaia Technology, LLC v. Rockwell

9    Automation, Inc., 2003 WL 22597611 at 2-3 (N.D. Ill. 2003) (holding that "there can

10   be no dispute" that tapes of communications between defendant and journalist, which

11   were used as background for a published article, are not confidential because "the

12   sources of any information would be known").

13          Here, Mattel seeks far less than the equivalent of a recording of the interview

14   between Mr. Palmeri and Mr. Larian.  Rather, Mattel requests that Mr. Palmeri verify

15   the accuracy of the portions of the interview that were disclosed to more than

16   900,000 readers of BusinessWeek.[13]  The result here must be the same as that

17   reached in Dillon.  There, Judge Patel held that a qualified privilege did not apply

18   because the journalist was being asked about things that he observed without any

19   promise of confidentiality.

20                 Mr. McEowen [a television news cameraman] has not been

21                 asked to reveal any confidential sources or information, nor

22                 has he been requested to produce or discuss any resource

23                 materials.  Instead, Mr. McEowen has been subpoenaed to

24                 testify regarding his personal observations as an eyewitness

25                 to the alleged beating of a citizen by two police officers.

26

27   [13]  See Imitating the Web, for the Busy Reader (New York Times, Oct. 12, 2007,

28   available at www.nytimes.com/2007/10/12/business/media/12adco.html) (circulation figures for BusinessWeek magazine).

- 9 -

1                  This court knows of know authority to support the

2                  proposition that such personal observations are privileged

3                  simply because the eyewitness is a journalist. . . .

4 Dillon, 748 F. Supp. at 726; accord State of Minnesota v. Knutson, 523 N.W.2d 909,

5 913 (Minn. App. 1995) ("[T]he 'Constitution does not immunize a reporter from

6 testifying merely because he makes the observation as a news reporter.'" (quoting In

7 re Ziegler, 550 F. Supp. 530, 532 (W.D.N.Y. 1982)); Prince George's County v.

8 Hartley, 822 A.2d 537, 548 (Md. App. 2003) (requiring reporters to confirm

9 offensive statements made by police officers in a disciplinary hearing; "[The

10 reporters] are not protecting the confidential source of any information . . . The

11 testimony sought goes to the heart of the matter:  whether [the officer] made the

12 statements in question.").

13       Mattel is simply asking that Mr. Palmeri confirm statements by Mr. Larian that

14 are not confidential and which have been published in a national news magazine.  No

15 privilege is implicated here.

16

17       **B.**     <u>**Even If The Journalist's Privilege Applies, It Must Yield Here**</u>

18       Assuming (contrary to law) that any journalist's privilege is available to Mr.

19 Palmeri, it is a qualified one, which Mattel may overcome.[14]  See Shoen v. Shoen, 5

20 F.3d at 1292-93 ("[T]he privilege is a qualified one, not absolute . . . the process of

21 deciding whether the privilege is overcome requires that the claimed First

22 Amendment privilege and the opposing need for disclosure be judicially weighed in

23 light of the surrounding facts, and a balance struck to determine where lies the

24 paramount interest."); see also Farr v. Pitchess, 522 F.2d 464, 467-68 (9th Cir. 1975)

25 ───────────

[14]  See Agster v. Maricopa County, 422 F.3d 836, 839 (9th Cir. 2005) ("Where there

26 are federal question claims and pendent state law claims present, the federal law of privilege law applies."); see also Crowe v. County of San Diego, 242 F. Supp. 2d

27 740, 749 (S.D. Cal. 2003) (holding that where a court has jurisdiction over a federal claim, as well as pendent state law claims, federal privilege law applies to both);

28 Dillon, 748 F. Supp. at 724-25 (rejecting application of the California shield law).

1   (the federal privilege is a "limited" one that protects only "the right of the newsmen
2   to keep secret a source of information"); In re Vmark Software, Inc., 1998 WL
3   42252, *1 (E.D. Pa. 1998) ("this privilege is not absolute and must be weighed
4   against the strong interest of litigants in the full and complete disclosure of relevant
5   evidence"); Dillon, 748 F. Supp. at 726 (rejecting application of the privilege, but
6   proceeding to a balancing test in which the court found the federal privilege would
7   yield because the information sought was not confidential and went to the heart of
8   plaintiff's claim).

9   　　　Because this privilege is qualified, a civil litigant may overcome a valid
10  assertion of the journalist's privilege by a non-party. See Shoen v. Shoen, 48 F.3d
11  412, 416 (9th Cir. 1995). Therefore, even if we assume that a privilege applies, to
12  overcome that privilege Mattel need only demonstrate that the requested evidence is:
13  "(1) unavailable despite the exhaustion of all reasonable alternative sources; (2) non-
14  cumulative; and (3) clearly relevant to an important issue in the case." Id. That test
15  is clearly met here.

16  　　　　　　　　　**1.　　The testimony Mattel seeks from Mr. Palmeri is available**
17  　　　　　　　　　　　　**from no other source.**

18  　　　There are only two conceivable sources that can verify first-hand what Larian
19  said to Mr. Palmeri during their interview – Messrs. Palmeri and Larian.  Where one
20  of the sources is a self-interested party to the litigation – as here – the lack of other
21  witnesses permits the court to conclude that Mr. Palmeri is the only available source.
22  See In re Vmark Software, Inc., 1998 WL 42252 at *2 (E.D. Pa. 1998) (where
23  plaintiff sought deposition testimony and documents from a reporter regarding a
24  published interview with the defendant, the reporter was "the only access to this
25  information").  In Vmark, like the case at hand, the plaintiff sought verification of
26  statements attributed to the defendant in a published interview.  The Vmark court
27  reasoned that the reporter was the "only other person, apart from [the defendant],
28  who can verify the statements attributed to [the defendant]," as only the reporter was

- 11 -

1 "qualified to testify as to his reportorial practices with respect to the statements of
2 others." Id. Of the two people who witnessed the conversation, it is only Mr.
3 Palmeri – a trained listener – who can provide the jury with unbiased testimony
4 about Mr. Larian's statements.

5     Moreover, Mr. Larian already has testified about the origins of Bratz, and told
6 an entirely different story from that which he told to Mr. Palmeri. He has effectively
7 denied the accuracy of the Article. Larian stated under oath that it was a Mattel
8 employee, Carter Bryant, who came up with Bratz, and who brought the concept to
9 him at his office in September 2000.[15] Mr. Larian cannot be considered an
10 alternative source of the information Mattel needs – testimony about the various
11 conflicting and  false statements Mr. Larian made about Bratz. See Don King
12 Prod. v. Douglas, 131 F.R.D. 421, 426 (S.D.N.Y. 1990) (finding that tape-recording
13 of statements by plaintiffs was the only "obtainable" source of the statements, as
14 plaintiffs were asked questions at deposition "which would have required
15 communicating, in sum and substance, the information set forth on the tape" to
16 which the plaintiffs provided answers different from that contained in the tape).

17           **2.**     **The information Mattel seeks is non-cumulative.**

18     As evidenced by the contradiction between his press interviews and his
19 testimony under oath in this case, Larian has changed his story about the origin of
20 Bratz. Evidently, Larian no longer agrees with the statement he made to Mr. Palmeri
21 in 2003, namely, that he came up with the idea for Bratz.[16] Therefore, deposing
22 Mr. Palmeri is Mattel's only method by which Mattel can establish with admissible
23 evidence that Larian made the statements attributed to him in the Article.

24     The fact that Mattel has obtained testimony from two other reporters (Ms.
25 Tkacik and Ms. O'Neal) which clearly establishes that Larian has contradicted his

26 
27 [15] Niborski Dec., ¶ 17, Ex. 14 (Transcript of deposition of Isaac Larian at 55:23-78:10, 96:22-102:23).
28 [16] Id.

- 12 -

1    sworn testimony on other occasions is of no moment.  Regardless of whether Mattel

2    has access to evidence of occasions on which Larian made other inconsistent claims,

3    only Mr. Palmeri can prove Larian made these particular statements.  Larian told

4    different stories about the origins of Bratz to Ms. Tkacik and Ms. O'Neal.[17]

5    Moreover, because of the nature of Mattel's claims – that, *inter alia*, MGA and

6    Bryant engaged in a scheme to conceal the origins of Bratz and a conspiracy to steal

7    Mattel's trade secrets[18] – proof of one instance of a false statement does nothing to

8    lessen the importance of evidence of a separate misrepresentation that furthers the

9    same conspiracy.  See Don King Prod., 131 F.R.D. at 426 (finding that tape-

10   recording of statements by plaintiff that evidenced a breach of duty of good faith and

11   fair dealing to defendant was non-cumulative of other, similar statements, made at a

12   different time, that also evidenced the same breach).  Since Mr. Palmeri's requested

13   testimony is the only admissible evidence of particular statements made by Mr.

14   Larian, it can hardly be considered cumulative.

### 3.    The information Mattel seeks is critical to Mattel's claims regarding the ownership of Bratz.

17         The limited testimony Mattel requests from Mr. Palmeri is not only directly

18   relevant to Mattel's claims, but goes to the very heart of this case – the origins of

19   Bratz.[19]  And, proving that Larian made a false statement regarding the origins of

20   Bratz is directly relevant to Mattel's claim that "Bryant and MGA deliberately and

21   intentionally concealed facts sufficient for Mattel to suspect or know that it was the

22   true owner of Bratz," by, among other things, "concealing Bryant's role in Bratz by

23   falsely claiming that Larian and others were the creators of Bratz."[20]

---

[17]   Niborski Dec., ¶¶ 9-10, Ex. 8 (Tkacik deposition transcript at 8:13-10:5), Ex. 9 (O'Neal deposition transcript at 8:13-11:22).

[18]   See Niborski Dec., ¶ 18; Ex. 15 (Mattel's Second Amended Answer and Counterclaims, ¶¶ 35-36, 90, 102).

[19]   See Niborski Dec., ¶ 18; Ex. 15 (Mattel's Second Amended Answer and Counterclaims, ¶ 35).

[20]   Id.

- 13 -

1       Moreover, MGA contends in this litigation that the statute of limitations bars

2   Mattel's claims.  Larian and MGA made public statements that Larian invented Bratz

3   – rather than Mattel employee Carter Bryant.  Mr. Palmeri's testimony therefore

4   bears directly on whether Mattel was on notice of Bryant's disloyalty prior to

5   November 2003, when it first obtained a copy of Bryant's contract with MGA

6   (which was executed while Bryant was employed by Mattel).

7       Mr. Palmeri is thus a witness with knowledge of facts that are relevant,

8   material, and are central to the determination of this litigation.

9           **4.**    **The information Mattel requests is not confidential.**

10       Finally, it is important that Mattel is not seeking to obtain any confidential

11   information from Mr. Palmeri.  Mattel's limited inquiry into non-confidential matters

12   "may be considered in the balance of competing interests as a factor that diminishes

13   the journalist's, and the public's, interest in non-disclosure."  See Shoen, 5 F. 3d at

14   1295; see also McKevitt, 339 F.3d at 533 ("When the information in the reporter's

15   possession does not come from a confidential source, it is difficult to see what

16   possible bearing the first amendment could have on the question of compelled

17   disclosure."); Dillon, 748 F. Supp. at 726 ("[T]he lack of a confidential source may

18   be an important element in balancing the [] need for the material sought against the

19   interest of the journalist in preventing production in a particular case.").

20       Mattel is not attempting to uncover confidential sources or obtain access to

21   Mr. Palmeri's unpublished research.  Instead, Mattel seeks to confirm -- for

22   legitimate use in court proceedings where they are highly material -- statements

23   made by Mr. Larian to Mr. Palmeri that were shared with the public in

24   BusinessWeek.  This further tips the balance in favor of a finding that Mr. Palmeri be

25   required to sit for deposition in this matter.

26       In sum, the testimony sought here involves non-confidential, published

27   statements.  The qualified federal journalist's privilege does not apply here, and,

28   even if it did, the privilege must yield in these particular circumstances.

- 14 -

IV.    **CONCLUSION**

Based on the foregoing, Mattel respectfully requests that the Court order Mr. Palmeri to appear for his deposition.


Dated:  January 21, 2008                STROOCK & STROOCK & LAVAN LLP
                                        BARRY B. LANGBERG
                                        MICHAEL J. NIBORSKI


                                        By:  _____
                                             Michael J. Niborski

                                             Attorneys for MATTEL, INC.

- 15 -

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

1

## **PROOF OF SERVICE**

2      I am employed in the County of Los Angeles, State of California.  I am over

3  the age of eighteen years and not a party to the within action; my business address is

4  NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles,

5  California 90026.

6      On January 22, 2008, I served true copies of the following documents

7  described as:

8     **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL
THE DEPOSITION OF CHRISTOPHER PALMERI**

9

10  on the parties in this action as follows:

| | |
|---|---|
| Davis Wright Tremaine LLP<br>  Alonzo Wickers IV, Esq.<br>865 South Figueroa Street, Suite 2400<br>Los Angeles, California 90017-2566<br>Telephone:  213.633.6800<br>Facsimile:  213.633.6899 | **Attorneys for Non-Party**<br>*Christopher Palmeri* |
| Skadden, Arps, Slate, Meagher &<br>Flom LLP<br>  Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA  90071<br>Telephone:  213.687.5000<br>Facsimile:  213.687.5600 | **Attorneys for *MGA Entertainment,<br>Inc., MGA Entertainment (HK) Ltd.,<br>Isaac Larian and MGAE de Mexico,<br>S.R.L. de C.V.*** |

18

19    **[√ ]   [PERSONAL]** by personally delivering the document listed above to

20    the person(s) at the address(es) set forth above.

21

22      I declare that I am employed in the office of a member of the bar of this court

23  at whose direction the service was made

24      Executed on January 22 2008, at Los Angeles, California.

25

26

27                    _____

                     David Quintana

28

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over

3  the age of eighteen years and not a party to the within action; my business address is

4  865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

5      On January 22, 2008, I served true copies of the following documents

6  described as:

7  **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL**
   **THE DEPOSITION OF CHRISTOPHER PALMERI**

8

9  on the parties in this action as follows:

| | |
|---|---|
| Keker & Van Nest, LLP<br>  John W. Keker, Esq.<br>  Michael H. Page, Esq.<br>  Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111<br>Telephone: 415.391.5400<br>Facsimile: 415.397.7188 | **Attorneys for *Carter Bryant*** |
| Overland Borenstein Scheper &<br>Kim, LLP<br>  Mark E. Overland, Esq.<br>  David C. Scheper, Esq.<br>  Alexander H. Cote, Esq.<br>300 South Grand Avenue, Suite 2750<br>Los Angeles, CA 90071<br>Telephone: 213.613.4655<br>Facsimile: 213.613.4656 | **Attorneys for *Carlos Gustavo Machado Gomez*** |

19

20      [√]      **[MAIL]** I enclosed the foregoing into sealed envelope(s) addressed as

21  shown above, and I deposited such envelope(s) in the mail at Los Angeles,

22  California.  The envelope was mailed with postage thereon fully prepaid.

23      I declare that I am employed in the office of a member of the bar of this

24  court at whose direction the service was made

25      Executed on January 22, 2008, at Los Angeles, California.

26

27

     Albert V. Villamil

28

-2-