QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>      vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br><br>**[PUBLIC REDACTED]**<br>NOTICE OF MOTION AND MOTION OF MATTEL, INC. TO COMPEL THE CONTINUED DEPOSITION OF ISAAC LARIAN AND TO OVERRULE INSTRUCTIONS NOT TO ANSWER; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Separate Statement and Declarations of Michael T. Zeller and B. Dylan Proctor submitted concurrently]<br><br>Date:   Feb. 8, 2008<br>Time:   9:30 a.m.<br>Place:  Telephonic<br><br>**Phase 1:**<br>Discovery Cut-Off:    January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:                May 27, 2008 |

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that at a telephonic conference before

3   Discovery Master Hon. Edward Infante (Ret.) on February 8, 2008, at 9:30 a.m.,

4   Mattel, Inc. will, and hereby does, move the Discovery Master, pursuant to <u>Federal</u>

5   <u>Rules of Civil Procedure</u> 26, 30 and 37, to compel the continued deposition of Isaac

6   Larian and to overrule improper instructions not to answer made during his prior

7   deposition.

8      This Motion is made on the grounds that: (1) MGA has failed to

9   provide any dates for Larian's continued deposition, despite recognizing that he

10   must appear, and has suggested that it may improperly attempt to limit the duration

11   of his testimony under the "apex" doctrine; and (2) Larian's counsel did not have a

12   proper basis for certain instructions not to answer made at Larian's prior deposition,

13   which should be overruled.

14      This Motion is based on this Notice of Motion and Motion, the

15   accompanying Memorandum of Points and Authorities, the Declarations of B.

16   Dylan Proctor and Michael T. Zeller filed concurrently herewith, the Separate

17   Statement filed concurrently herewith, the Notice of Lodging lodged concurrently

18   herewith, the [Proposed] Order lodged concurrently herewith, the records and files

19   of this Court, and all other matters of which the Court may take judicial notice.

20      **<u>Statement of Rule 37-1 Compliance</u>**

21      The parties met and conferred on May 11, 2007, and repeatedly

22   thereafter, regarding the issues set forth in this motion.

23

24   DATED: January 22, 2008  QUINN EMANUEL URQUHART OLIVER &
             HEDGES, LLP

25

26         By _Dylan Proctor OS_

27         B. Dylan Proctor
      Attorneys for Mattel, Inc.

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND .......................................................................................................... 2

      1.    Larian's Delay Tactics Prior to His July 2006 Deposition ........... 2

      2.    MGA Requests That The Larian Deposition Proceed Only As To The Mattel v. Bryant Case ...................................................... 4

      3.    MGA Refuses To Provide Dates For Larian's Continued Deposition And Suggests That Unwarranted Limits Should Be Imposed On It ........................................................... 4

      4.    Mattel's Efforts to Meet and Confer Re: Improper Instructions No to Answer at Larian's Deposition ....................... 7

ARGUMENT ............................................................................................................... 8

I.    LARIAN SHOULD BE ORDERED TO APPEAR FOR DEPOSITION ON OR BEFORE FEBRUARY 28, 2008 .................................................... 8

II.   THE "APEX" DOCTRINE DOES NOT IMMUNIZE LARIAN FROM QUESTIONING, NOR DOES IT LIMIT MATTEL'S TIME WITH THE WITNESS ...................................................................................... 10

    A.   MGA Knew of Larian's Alleged "Apex" Status at the Time It Agreed to Produce Him for Deposition ................................... 10

    B.   MGA Has Failed to Carry Its Heavy Burden to Show the Applicability of the "Apex" Exception ................................... 10

    C.   The "Apex" Exception Does Not Apply to Larian ............................. 11

III.  THE DISCOVERY MASTER SHOULD OVERRULE CERTAIN INSTRUCTIONS NOT TO ANSWER AT THE LARIAN DEPOSITION ................................................................................... 15

CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anderson v. Air West, Inc.,*
   542 F.2d 1090 (9th Cir. 1976)....................................................................... 11

*Clarke v. American Commerce Nat'l Bank,*
   974 F.2d 127 (9th Cir. 1992) ......................................................................... 14

*Grateful Dead Productions v. Sagan,*
   2007 WL. 2155693 (N.D. Cal. 2007)......................................................... 10, 14

*Mansourian v. Board of Regents of University of Cal. at Davis,*
   2007 WL. 4557104 (E.D. Cal. 2007) ............................................................. 10

*McKay v. C.I.R.,*
   886 F.2d 1237 (9th Cir. 1989)....................................................................... 14

*U.S. v. Munoz,*
   233 F.3d 1117 (9th Cir. 2000)....................................................................... 17

*WebSideStory, Inc. v. NetRatings, Inc.,*
   2007 WL. 1120567 (S.D. Cal. 2007) ............................................................. 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

MGA has already conceded, repeatedly, that Isaac Larian must appear to complete his deposition again in this case. Nevertheless, MGA has refused to offer a date for his continued deposition despite Mattel's repeated requests and has suggested it may not make him available for a full day because he is an "apex" deponent. Mr. Larian should be compelled to appear no later than February 28, 2008.

Before Larian's deposition was originally taken on July 18, 2006, the parties expressly agreed, on the record, that that session of the deposition would not cover any issues in the MGA v. Mattel case. Accordingly, the 2006 deposition only addressed the Mattel v. Bryant case. Moreover, at that time, Mattel had asserted no claims against Larian or MGA. Since then, Mattel has alleged a number of counterclaims against Larian and MGA in the MGA v. Mattel case. Thus, MGA has agreed that Mattel is entitled to depose Larian further. However, it refuses to offer any dates, despite repeated Mattel inquiries.

MGA has also recently claimed that Larian cannot be deposed unless Mattel first demonstrates that he has "unique and superior first-hand knowledge" of all topics Mattel intends to address at the deposition and has suggested that limits should be imposed on the deposition. MGA is wrong on both the law and the facts. On the law, MGA bears a "heavy burden" of showing why the deposition should be limited, and has not even attempted to do so. On the facts, Larian is a core witness, including on the unfair competition claims the parties agreed he would be brought back to testify on. Any contention that Larian need not be brought back for a full day of testimony should be rejected.

At Larian's prior deposition, counsel also interposed a number of improper instructions not to answer based on ostensible privilege grounds, as set forth in the concurrently filed Separate Statement. Larian was instructed not to

1  answer questions that did not call for the substance of attorney-client

2  communications, but merely called for disclosure of facts and information known to

3  him.  Many questions on which Larian was instructed not to answer did not require

4  anything more than a simple "yes" or "no" answer.  The Discovery Master has

5  already overruled comparable instructions made at other depositions.  It should do

6  the same here.

7  ### Background

8  ### 1.   Larian's Delay Tactics Prior to His July 2006 Deposition

9  Mattel served MGA with a Notice of Deposition for Larian on

10  December 15, 2004.[1]  MGA did not make Larian available for deposition

11  voluntarily, however, and Mattel had to move to compel.[2]  The Court granted

12  Mattel's motion to compel Larian's deposition on March 23, 2005, and ordered

13  MGA to produce Larian for deposition within 20 days of the date of the ruling.[3]  At

14  MGA's request, and to accommodate Larian, Mattel agreed to hold the deposition on

15  May 20, 2005 notwithstanding the Court's requirement that it take place within 20

16  days.[4]  After that, MGA requested that the deposition be moved to May 26, 2005.[5]

17  Mattel again agreed as an accommodation.[6]

18

19

20  [1]  See Notice of Deposition of Isaac Larian, dated December 15, 2004, attached

21  as Exhibit 15 to the concurrently filed declaration of B. Dylan Proctor ("Proctor Dec.").

22  [2]  See Declaration of Michael T. Zeller in support of Mattel, Inc.'s Reply in

23  support of Ex Parte Application to Reschedule the Hearing Date on Defendants' Motions to Dismiss and Objections to Discovery Master's March 7, 2007 Order,

24  dated May 9, 2007 ("05/09/07 Zeller Dec."), ¶ 4, attached as Exhibit 1 to the

25  concurrently lodged Notice of Lodging ("Notice of Lodging").
   [3]  05/09/07 Zeller Dec. ¶ 4, Ex. 1, Notice of Lodging, Exh. 1.

26  [4]  Id. ¶ 5, Notice of Lodging, Exh. 1.

27  [5]  Id. ¶ 5, Ex. 2, Notice of Lodging, Exh. 1.
   [6]  Id.

28

On May 20, 2005, before the deposition occurred, the Court stayed discovery pending a ruling by the Ninth Circuit.[7]  The Court lifted the stay on May 16, 2006.[8]  One week later, on May 24, 2006, Mattel contacted MGA's counsel to schedule Larian's deposition in June 2006.[9]  However, counsel for MGA represented that the first tentative date that Larian could be available was July 25 or 26, 2006.[10] In an effort to accommodate Larian, Mattel offered a number of additional deposition dates in June 2006.[11]  MGA rejected each of those proposals.[12]

Accordingly, Mattel was forced to move to compel for a second time. On June 16, 2006, the Court ruled that MGA's failure to respond with alternative proposed dates for Larian's deposition and insistence that Larian would not be available until July 25-26 (without even firmly committing to those dates) did not comply with the Court's March 23, 2005 Order, and imposed sanctions.[13]

---

[7] Id. ¶ 6, Notice of Lodging, Exh. 1.

[8] Id.

[9] Id.

[10] Id.

[11] Id.

[12] Id.

[13] Id. ¶ 7, Exh. 3, Notice of Lodging, Exh. 1.  As the Court is aware, Larian's conduct was but a small part of defendants' continuing pattern of obstructionist tactics, which has included promises to appear for deposition, only to be followed by delays and last-minute cancellations and then, ultimately, by outright refusals to testify until ordered.  While Mattel will not belabor the point here, this has occurred with respect to a large number of defense witnesses, including Carter Bryant, Paula Garcia and others.  See generally Declaration of Michael T. Zeller in Support of Mattel's Motion to Overrule Instructions Not to Answer During the Deposition of Carter Bryant, dated February 1, 2007, ¶¶ 5-13, Exhs. 5-11, Notice of Lodging Exh. 2; Declaration of Michael T. Zeller in Support of Mattel's Motion to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6) and for Sanctions, dated April 13, 2007, ¶ 36 & Exh. 16, Notice of Lodging, Exh. 3.

### 2. MGA Requests That The Larian Deposition Proceed Only As To The Mattel v. Bryant Case

After Larian's deposition was twice-ordered, MGA requested that the deposition proceed only as to issues in the Mattel v. Bryant suit, promising that he would appear for deposition again to answer questions regarding any issues in the MGA v. Mattel case at a later time.[14] Mattel agreed to this MGA proposal and confirmed in writing that the July 18, 2006 "deposition of Mr. Larian will relate to *Mattel v. Bryant* issues only and Mr. Larian will be made available on a separate, later day for deposition on issues in the *MGA v. Mattel* suit."[15] Since that time, Mattel has asserted a number of counterclaims in the MGA v. Mattel case against MGA and Larian.[16]

### 3. MGA Refuses To Provide Dates For Larian's Continued Deposition And Suggests That Unwarranted Limits Should Be Imposed On It

On September 14, 2007, Mattel asked MGA to provide dates for Larian's continued deposition, consistent with the parties' prior agreement.[17] On September 18, 2007, the parties met and conferred regarding continuing Larian's deposition, but MGA denied any knowledge of its prior promise to produce Larian in the MGA v. Mattel suit.[18] MGA also claimed, for the first time, that Larian was immunized from further deposition questioning by his alleged "apex" status.[19]

---

[14] See concurrently filed Declaration of Michael T. Zeller ("Zeller Dec."), ¶ 2.
[15] See Michael T. Zeller's letter to Diana Torres, dated July 7, 2006, attached as Exhibit 1 to the Zeller Dec.
[16] See Mattel's Second Amended Answer & Counterclaims ¶¶ 82-115, 122-128, 136-141, and 149-170.
[17] Proctor Dec. ¶ 5 & Exh. 4.
[18] Proctor Dec. ¶ 6 & Exh. 5.
[19] See id.

1        In response, Mattel informed MGA that it expects MGA to honor its

2    agreement and that, in any case, Mattel is entitled to explore Larian's knowledge and

3    information regarding the new claims that have been filed since he was deposed,

4    including the trade secret theft, RICO, and copyright infringement claims that are

5    pleaded against Larian personally.[20]  Mattel also informed MGA that the "apex"

6    exception does not protect Larian from further questioning because Mattel's

7    counterclaims and the documents attached thereto as Exhibit C more than amply

8    demonstrate Larian's unique and personal knowledge regarding this case.[21]

9    Moreover, MGA knew of Larian's alleged "apex" status at the time it previously

10   agreed to produce him again for deposition.

11        On September 27, 2007, MGA stated that it will not produce Larian for

12   deposition regarding Mattel v. Bryant, Phase I issues.[22]  MGA also refused to give a

13   "statement of position" regarding whether it would produce Larian in the MGA v.

14   Mattel case, demanding that Mattel first provide it with "written correspondence"

15   reflecting MGA's prior promise to do so, of which MGA continued to deny

16   knowledge.[23]  Mattel then provided MGA with the "evidence" it demanded.[24]  On

17   October 3, 2007, MGA finally confirmed that it would produce Larian for

18   deposition on the MGA v. Mattel case, but refused to even discuss setting a date

19   until all Phase One depositions have been scheduled.[25]  Mattel informed MGA that

20   its refusal to schedule a date for Larian's deposition until all Phase One depositions

21   have been scheduled was improper.[26]

22

23   _____

     [20]  See id.
24   [21]  See id.
     [22]  Proctor Dec. ¶ 7 & Exh. 6.
25   [23]  See id.
26   [24]  Proctor Dec. ¶ 8 & Exh. 7.
     [25]  Proctor Dec. ¶ 9 & Exh. 8.
27   [26]  Proctor Dec. ¶ 9 & Exh. 9.

28

1    Hoping to avoid motion practice, on December 5, 2007, Mattel asked

2    MGA's new counsel to provide deposition dates for Larian during the weeks of

3    January 21 and 28, 2008.[27]  MGA ignored Mattel's letter.  Thus, Mattel wrote again

4    on December 19, 2007.[28]  This time MGA responded, but did not provide any dates.

5    Instead, MGA demanded that Mattel detail the "precise areas in which [Mattel]

6    claims Mr. Larian has unique and superior first hand knowledge so [MGA] can

7    determine how much time Mattel actually needs with Mr. Larian."[29]

8    The parties met and conferred on January 2, 2008.[30]  In response to

9    MGA's demand that Mattel make a showing as to Larian's unique knowledge, Mattel

10   explained that Larian is a named defendant, personally involved in many dozens of

11   RICO predicate acts, and a key witness regarding MGA's unfair competition claims,

12   among other things.[31]  Mattel again reminded MGA that it had promised to produce

13   Larian and questioned whether MGA intends to affirmatively rely on Larian's

14   testimony to support its claims against Mattel, for which Larian has stated he will

15   obtain "billions of dollars."[32]  MGA confirmed it does.[33]

16   MGA also represented that Larian may not be available for deposition

17   until March 2008.[34]  On January 4, 2008, Mattel offered to depose Larian on any

18   date in January or February 2008, and asked MGA to provide dates by January 8,

19

20

21

22   [27]  Proctor Dec. ¶ 10 & Exh. 10.
23   [28]  Proctor Dec. ¶ 10 & Exh. 11.
     [29]  Proctor Dec. ¶ 11 & Exh. 12.
24   [30]  Proctor Dec. ¶ 12.
     [31]  Proctor Dec. ¶ 12 & Exh. 13.
25   [32]  See id.
26   [33]  See id.
     [34]  See id.
27

28

1  2008.[35]  On January 8, 2008, MGA again conceded that Larian must appear for

2  deposition, but still refused to provide any dates.[36]

3          **4.      Mattel's Efforts to Meet and Confer Re: Improper**

4                  **Instructions No to Answer at Larian's Deposition**

5          At Larian's July 18, 2006 deposition, counsel instructed him not to

6  answer a number of questions that did not call for the disclosure of the substance of

7  attorney-client communications.  These instructions are listed in the concurrently

8  filed Separate Statement.

9          Mattel attempted to resolve counsel's improper instructions not to

10  answer without motion practice, to no avail.  Mattel contacted MGA in May 2007,

11  thinking that this issue, perhaps unlike some others, truly could be avoided because

12  (1) there is no dispute that Larian must sit for deposition again in any case, and (2)

13  the Discovery Master has already effectively overruled, in prior Orders, instructions

14  identical to those presented by this Motion.[37]  On May 22, 2007, during the meet

15  and confer, MGA's counsel represented that he did not wish to force motion practice

16  on already decided issues and, to that end, would confer with his client regarding the

17  instructions and contact Mattel with MGA's position.[38]  However, MGA never

18  responded.[39]  Mattel contacted MGA again on July 26, 2007 to invite MGA again to

19  respond with its position.[40]  On August 6, 2007, MGA sent a 2-line e-mail saying

20  that it "will respond in writing."[41]  MGA never did.[42]

21

22  _____

23  [35]  See id.
    [36]  Proctor Dec. ¶ 13 & Exh. 14.

24  [37]  Proctor Dec. ¶ 2 & Exh. 1.
    [38]  Proctor Dec. ¶ 3.

25  [39]  See id.
    [40]  Proctor Dec. ¶ 4 & Exh. 2.

26  [41]  Proctor Dec. ¶ 4 & Exh. 3.

27  [42]  Proctor Dec. ¶ 4.

28

## Argument

### I.   LARIAN SHOULD BE ORDERED TO APPEAR FOR DEPOSITION ON OR BEFORE FEBRUARY 28, 2008

The continuance of Larian's deposition followed defendants' familiar obstructionist playbook, with MGA first delaying Larian's deposition with promises he would appear, and then reneging on that promise.  As the Discovery Master is aware, each of defendants' key witnesses — including Larian himself — has followed this pattern, with each ultimately refusing to sit for deposition until ordered to do so, sometimes multiple times.

Prior to Larian's 2006 deposition, MGA requested, and the parties agreed, that Larian's deposition would be limited to issues in the <u>Mattel v. Bryant</u> suit, and that he would appear for deposition again to answer questions regarding any issues in the <u>MGA v. Mattel</u> case.[43]  However, when Mattel sought to continue Larian's deposition, MGA claimed to have no knowledge of that agreement.[44]  Then, when confronted with written evidence of it, MGA went back on its word by demanding that Mattel make a showing as to Larian's "unique knowledge" under the "apex" doctrine before he will testify.[45]  Now, even though Mattel has done so, MGA still refuses to provide a date.[46]

In an effort to avoid motion practice, Mattel offered to accept <u>any</u> date in January or February 2008 for Larian's deposition.[47]  However, MGA has still not provided any dates for Larian's deposition, despite Mattel's repeated requests.[48]

---

[43]  Zeller Dec. ¶ 2 & Exh. 1.
[44]  Proctor Dec. ¶¶ 5-7 & Exhs. 5-6.
[45]  Proctor Dec. ¶¶ 8-11 & Exhs. 7, 12.
[46]  Proctor Dec. ¶ 12-13 & Exs. 13-14.
[47]  Proctor Dec. ¶ 12 & Exh. 13.
[48]  Proctor Dec. ¶ 13.

1    It is beyond dispute that Larian is a key witness, is an individual

2  defendant, and has unique personal knowledge regarding the underlying claims and

3  defenses in this suit.  MGA has acknowledged this by agreeing to produce him for

4  deposition and stating that they will rely on his testimony at trial of the MGA v.

5  Mattel claims, counterclaims and defenses.[49]  MGA, and even Larian, identified

6  Larian in disclosures and interrogatory responses as a witness who "may possess

7  information relevant to" the claims and defenses in MGA v. Mattel.[50]  For example,

8  MGA's Supplemental Disclosures and Larian's Initial Disclosures identified Larian

9  as a witness who:

> may possess information relevant to material allegations in the
> Consolidated Action, including . . . Mattel's serial copying of MGA's
> products . . .; Mattel's serial copying of MGA's distinctive trade dress,
> trademarks, product packaging, themes, ideas and advertising; Mattel's
> dilution of MGA's famous marks; Mattel's interference with MGA's
> advertising efforts; Mattel's threats to and intimidation of retailers,
> suppliers, licensees, distributors, manufacturers, and former employees
> and freelancers; Mattel's improper influence of standard-setting and
> industry organization; Mattel's manipulation of MGA's retail displays;
> damages suffered by MGA as a result of Mattel's conduct; and facts in
> support of MGA's defenses to Mattel's counterclaims.[51]

18    Mattel is entitled to obtain Larian's testimony with sufficient time to

19  propound and obtain follow-up discovery.  Nonetheless, MGA still refuses to

---

[49]  Proctor Dec. ¶ 9, 13 & Exhs. 8, 14.

[50]  MGA's Supplemental Disclosures and MGA HK, MGAE De Mexico, and Larian's Initial Disclosures Under Rule 26(a)(1), dated September 21, 2007, Proctor Dec. Exh. 17, at 9:6-21; MGA's Responses to Mattel's First Set of Interrogatories Re: Claims of Unfair Competition, dated January 19, 2007, at 7:8, 16:22, 20:28, 23:5,  26:8 and 28:23 (identifying Larian as a person with knowledge responsive to Interrogatory Nos. 1 and 5-9), Proctor Dec. Exh. 18.

[51]  MGA's Supplemental Disclosures and MGA HK, MGAE De Mexico, and Larian's Initial Disclosures Under Rule 26(a)(1), dated September 21, 2007, Proctor Dec. Exh. 17.

1   provide Mattel with any deposition dates for this key witness and named defendant.

2   The Discovery Master should put this familiar pattern of obstructionism to an end

3   and order Larian to appear for deposition no later than February 28, 2008.

## II.   THE "APEX" DOCTRINE DOES NOT IMMUNIZE LARIAN FROM QUESTIONING, NOR DOES IT LIMIT MATTEL'S TIME WITH THE WITNESS

### A.   MGA Knew of Larian's Alleged "Apex" Status at the Time It Agreed to Produce Him for Deposition

9        MGA knew of Larian's alleged "apex" status at the time it requested,

10   and agreed, that Larian be deposed in July 2006 on only the <u>Mattel v. Bryant</u> matter,

11   and that he would appear for deposition to answer questions regarding any issues in

12   the <u>MGA v. Mattel</u> case at a later time.[52]  MGA cannot now renege on that

13   agreement and invoke the "apex" exception more than a year after committing to

14   produce Larian.

### B.   MGA Has Failed to Carry Its Heavy Burden to Show the Applicability of the "Apex" Exception

17        Without citing any authority, MGA has claimed that Larian cannot be

18   deposed unless Mattel first demonstrates that he has "unique and superior first-hand

19   knowledge" of all topics Mattel intends on addressing at the deposition.[53]  That is

20   not the law.

21        As MGA has argued, it is the party resisting discovery and invoking the

22   "apex" exception which bears the "heavy burden" of showing, under <u>Rule</u> 26(c),

---

[52]  <u>See, e.g.,</u> MGA's Supplemental Memorandum of Points and Authorities in Opposition to Mattel's Motion to Compel the Deposition of Isaac Larian, dated March 22, 2005 (asserting Larian's purported "apex" status), Proctor Dec. Exh. 19.

[53]  Proctor Dec. ¶ 11 & Exh. 12.

1   "good cause" why a deposition should not go forward.[54]  See Grateful Dead

2   Productions v. Sagan, 2007 WL 2155693, at *1 (N.D. Cal. 2007) ("A strong

3   showing is required before a party will be denied" the right to take an apex

4   deposition") (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.

5   1975)); WebSideStory, Inc. v. NetRatings, Inc., 2007 WL 1120567, at *2 (S.D. Cal.

6   2007) ("A party seeking to prevent [an apex] deposition carries a heavy burden to

7   show why discovery should be denied"); Mansourian v. Board of Regents of

8   University of Cal. at Davis, 2007 WL 4557104, at *2-3 (E.D. Cal. 2007) (rejecting

9   defendant's attempt to "shift the burden from the party [opposing the apex

10  deposition] to the deposing party, and holding that "the court [will] rel[y] on the

11  overarching dictates of the Federal Rules of Civil Procedure in determining whether

12  or not a protective order should issue," which require the party opposing the

13  deposition to show "good cause" for why it should not go forward).

14          Thus, to carry its burden MGA "must make a clear showing of a

15  particular and specific need" that would justify preventing the complete deposition

16  of Larian.  WebSideStory, 2007 WL 1120567, at *2.  Here, MGA has failed (and,

17  indeed, never even attempted) to do so.  Instead, MGA has attempted to shift its

18  evidentiary burden to Mattel, which is contrary to the law.

19  **C.      The "Apex" Exception Does Not Apply to Larian**

20          The apex exception is available only if the high-level executive witness

21  does not have first-hand knowledge of the facts underlying the dispute and the

22  deposition would impose an undue burden.  See Grateful Dead, 2007 WL 2155693,

23  at *1; see also WebSideStory, 2007 WL 1120567, at *3 ("when a witness has

24  personal knowledge of facts relevant to the lawsuit, even a corporate president or

25

26  _____

    [54]  See MGA's and Carter Bryant's Reply in Further Support of Their Motion to

27  Compel the Deposition Testimony of Robert Eckert, dated December 21, 2007, at 1-
    4, Proctor Dec. Exh. 20.

28

1   CEO is subject to deposition."); <u>Anderson v. Air West, Inc.</u>, 542 F.2d 1090, 1092-93

2   (9th Cir. 1976) (approving denial of executive's motion for protective order because

3   he had "knowledge" regarding substance of the plaintiffs' claims).

4         Here, Larian is not just an ordinary "apex" witness, but a named

5   defendant.  Mattel's counterclaims and the documents attached as Exhibit C alone,

6   on their face, more than demonstrate Larian's personal involvement and unique

7   personal knowledge regarding numerous issues in this case he has not been deposed

8   on, including the claims alleged directly against him such as claims for violations of

9   RICO, Misappropriation of Trade Secrets, Intentional Interference with Contract re:

10  Brawer, Machado, Vargas, Brisbois and other former Mattel employees, and Unfair

11  Competition, among others.  For example, the Counterclaims allege that Larian:

- was "in frequent telephonic and e-mail contact" with Machado, Trueba and Vargas for over three months prior to their resignations from Mattel and that, "during this time, Machado, Trueba and Vargas supplied Larian with certain Mattel confidential and proprietary information. . ."[55]

- "directed Machado, Trueba and Vargas to steal virtually all Mattel confidential and proprietary information that they could access and bring with them to MGA."[56]

- called Brisbois at her home and "on the same day that she spoke with Mr. Larian and four days before she resigned, Brisbois copied approximately 45 Mattel documents. . . contain[ing] Mattel trade secret and proprietary information."[57]

---

[55]  Counterclaims ¶ 42
[56]  Counterclaims ¶ 43
[57]  Counterclaims ¶ 74

-12-

MATTEL'S MOTION RE: DEPOSITION OF ISAAC LARIAN

1    • "engaged in a campaign of calling Mattel's most significant customers

2    . . . [i]n an effort to dissuade these retailers from purchasing Mattel's

3    MY SCENE MY BLING BLING product with real gems" and

4    "knowingly made false factual statements about that product to each

5    retailer."[58]

6    Likewise, Exhibit C contains communications addressed to or from Larian that

7    clearly demonstrate his unique, personal knowledge with respect to the alleged

8    RICO predicate acts.  For example:

9

10   • On October 5, 2000, Bryant sent an e-mail to Larian stating that he

11   had an idea for a storyline for a Bratz commercial that he will "work

12   up a bit" to show MGA, and thanking Larian for the opportunity to

13   "make this happen."  Larian replied on the same day, telling Bryant to

14   "please arrange to meet" with an MGA employee (formerly with

15   Mattel) "ASAP" to work on Bratz "full time."[59]

16   • On March 22, 2004, approximately one month before they resigned

17   from Mattel, Machado, Trueba and Vargas wrote an e-mail message

18   from the "plot04@aol.com" e-mail account addressed to Larian,

19   seeking to prove their value to MGA and Larian by attaching their

20   "analysis [of Mattel proprietary information] for future discussion."[60]

21

22   • On March 30, 2004, Larian sent letters offering employment to

23   Machado, Trueba and Vargas.[61]

24

25   _____

[58]   Counterclaims ¶ 80.

26   [59]   Counterclaims, Exh. C.

[60]   Counterclaims ¶ 43 & Exh. C.

27   [61]   Counterclaims, Exh. C.

28

1    • On April 14, 2004, Larian sent an e-mail to Thomas Park and Daphne

2    Gronich, asking regarding the status of the resignations of Machado,

3    Trueba and Vargas from Mattel.[62]

4

5    Further, MGA has identified Larian as a person with knowledge of the

facts supporting MGA's claims against Mattel, including MGA's allegations that

6
Mattel has: (1) "intimidated, coerced and threatened retailers, licensees, suppliers,
7
and others in the industry. . . so as to limit, if not prevent, MGA from doing business
8
with these [entities];" (2) "serially imitated and copy-catted the look of MGA
9
products, trade dress, trademarks, themes, ideas, advertising and packaging;" (3)
10
"manipulated the retail market," and (4) engaged in unfair practices relating to NPD
11
Funworld (a supplier of sales statistics in the toy industry).[63]  MGA also identified
12
Larian as someone who: was involved in the "marketing, advertising, promotion,
13
licensing, offering for sale, conception, origin, creation, design, and development"
14
of the products MGA alleges were infringed by Mattel; and has knowledge
15
regarding MGA's allegations that "consumers, the press and retailers have confused
16
[MGA's] products, packaging and commercials with those of Mattel or vice versa."[64]
17
During the parties' meet and confers, MGA's counsel confirmed that MGA intends

18

19

20

21

22

---

23    [62]  Counterclaims, Exh. C.
      [63]  See MGA's Responses to Mattel's First Set of Interrogatories Re: Claims of
24    Unfair Competition, dated January 19, 2007, at 16:22, 20:28, 26:8 and 28:23
      (identifying Larian as a person with knowledge responsive to Interrogatory Nos. 5-6
25    and 8-9), Proctor Dec. Exh. 18.
      [64]  See id. at 7:8 and 23:5 (identifying Larian as a person with knowledge
26    responsive to Interrogatory Nos. 1 and 7).

27

28

-14-

1   to rely on Larian to support its claims at trial.[65]  Larian has stated on national

2   television that he intends to obtain "billions of dollars" from Mattel.[66]

3          Larian has personal, and indeed unique, knowledge regarding issues of

4   this case he has not yet been questioned about.  Further, even if Larian were to deny

5   any personal knowledge of the facts at issue in this case (which would be false),

6   "protection from "apex" depositions is not appropriate where [] there is a factual

7   dispute as to whether the deponent has first-hand knowledge of relevant facts."

8   Grateful Dead, 2007 WL 2155693, at *1.  His continued deposition should be

9   ordered, and should have no preset time limitations.

10  **III.   THE DISCOVERY MASTER SHOULD OVERRULE CERTAIN**

11  **INSTRUCTIONS NOT TO ANSWER AT THE LARIAN DEPOSITION**

12         The attorney-client privilege protects from discovery only the

13  substance of "confidential communications" between a client and his attorney.

14  Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992);

15  McKay v. C.I.R., 886 F.2d 1237, 1238 (9th Cir. 1989).  As set forth in the

16  accompanying Separate Statement, MGA's counsel repeatedly instructed Larian not

17  to answer questions that did not call for the substance of attorney-client

18  communications.  Instead, they merely called for disclosure of facts and information

19  known to Larian.  Many did not require anything more than a simple "yes" or "no"

20  answer.  The following excerpts are illustrative:

21

22

23

24

25

26

27

28

---

[65]   Proctor Dec. ¶ 12 & Exh. 13.
[66]   See Transcript of an ABC Nightline interview of Isaac Larian, dated
December 23, 2005, wherein Mr. Larian states, "When we are done with Mattel, we
will get them for billions of dollars," Proctor Dec. Exh. 21, at p. 5.

-15-

MATTEL'S MOTION RE: DEPOSITION OF ISAAC LARIAN

Larian Depo., at 173:14-23.[67]

Larian's Depo., at 174:8-12.[68]

The Discovery Master has already ruled that whether or not MGA entered into a fee agreement with Mr. Bryant is not privileged.[69]  The Court affirmed this ruling in June 2007, holding that "Mattel's question regarding who is paying Bryant's legal fees . . . is not objectionable."[70]  Also, the Discovery Master has repeatedly ordered that "documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action" must be produced, as they are not privileged.[71]

Larian's counsel also repeatedly instructed him not to answer questions that merely sought facts, and not the substance of attorney-client communications. The following excerpts are illustrative:

---

[67]  Proctor Dec., Exh. 16.
[68]  Proctor Dec., Exh. 16,
[69]  See Mattel's Motion to Overrule Instructions Not to Answer During the Deposition of Carter Bryant ("Bryant Motion") at 21:22-22:13; Separate Statement in support Bryant Motion, Instruction No. 42; March 7, 2007 Order Granting in Part and Denying in Part Mattel's Motion to Overrule Instructions Not to Answer During the Deposition of Carter Bryant ("March 7, 2007 Order") at 4:23-24, Proctor Dec., Exhs. 22-24.
[70]  Proctor Dec. Exh. 25, at 33:36-34:10.
[71]  See Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007, at 11:24-12:14; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, dated June 19, 2007, at 3:26-4:14, Proctor Dec., Exhs. 26-27.

1

2

3

4

5

6

7

8   Larian Depo., at 69:23-70:15.[72]

9

10

11

12

13   Larian Depo., at 93:13-18.[73]

14            The Discovery Master has already overruled comparable instructions

15   made at the Bryant deposition.[74]  Moreover, the Discovery Master has already ruled

16

17

18   [72]  Proctor Dec., Exh. 16.

19   [73]  Proctor Dec., Exh. 16.

     [74]  For example, the Discovery Master overruled the following instructions made

20   at the Bryant deposition:

21

22

23

24

25

26

27

28   (footnote continued)

-17-

1   that a witness' own understanding of events and information known to a witness are

2   discoverable.[75]  Questions about whether or not Larian reviewed any documents in

3   preparation for his deposition and when Larian saw a particular e-mail do not call

4   for the substance of any attorney-client communications and are not protected by the

5   work-product doctrine.  Such facts are not privileged.  Larian bears the burden of

6   supporting his privilege assertions.  U.S. v. Munoz, 233 F.3d 1117, 1128 (9th Cir.

7   2000).  Because he cannot do so, the improper instructions set forth in the

8   concurrently filed Separate Statement should be overruled.

9

10

11

12

13

14

15

16

17 _____

18

19

20

21

22

23   Mattel's Separate Statement in support of its Bryant Motion, Instruction Nos. 4-6,
     Proctor Dec. Exh. 23; March 7, 2007 Order, ¶ 1 & Attachment A, Proctor Dec. Exh.
24   24.

25      [75]  See, e.g., Order Granting Mattel's Motion for an Extension of Time to Depose
     Paula Garcia in Her Individual Capacity and as a 30(b)(6) Designee, dated August
26   14, 2007, Proctor Dec. Exh. 28, at 12:20-22 (holding that the attorney-client
     privilege protection "does not extend to the facts underlying privileged
27   communications.").

28

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Discovery Master (1) compel Mr. Larian to appear for deposition without preset limitations on or before February 28, 2008; and (2) overrule each of the instructions set forth in table format in the [Proposed] Order lodged concurrently herewith.


DATED:  January 22, 2008                    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By ___Dylan Proctor OS___

B. Dylan Proctor
Attorneys for Mattel, Inc.