QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>  Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>MATTEL, INC.'S *EX PARTE* APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>[Declaration of Christopher Tayback, Application to File Under Seal and [Proposed] Order filed concurrently herewith]<br><br>Hearing Date:    Not Applicable<br>Time:                 Not Applicable<br><br>**Phase 1:**<br>Discovery Cut-Off:    January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:                May 27, 2008 |

1  Mattel, Inc. ("Mattel") will, and hereby does, respectfully apply
2  *ex parte*, pursuant to Local Rule 7-19 and Fed. R. Civ. P. 45, for an order
3  (1) compelling the production of certain electronic media in the possession, custody
4  and control of key third-party witnesses Elise Cloonan, Margaret Hatch-Leahy and
5  Veronica Marlow for expert examination by January 30, 2008; or (2) in the
6  alternative, modifying the Court's Scheduling Order to extend Mattel's time to
7  produce expert reports until 30 days after production of such electronic media upon
8  resolution of this matter as a regularly noticed motion to compel.

9  Mattel makes this *ex parte* application on the grounds that these
10 witnesses -- who this Court previously has recognized as being key witnesses, who
11 are affiliated with MGA and who are represented by counsel retained by MGA --
12 have in their possession, custody and control electronic media that contains evidence
13 about the origins of Bratz and the timing of its creation and development, including
14 during the time periods when defendant Carter Bryant was working for Mattel.
15 These electronic media include a "Zip disk" labeled "Bratz" and the witnesses'
16 computer hard drives.  Recent discovery shows these electronic media contain
17 evidence which has not been produced and which counsel for these key witnesses
18 has refused to make available for Mattel's expert examination.  Efforts at reaching
19 an agreement with counsel to produce such electronic media have failed.

20 If the evidence is not produced sufficiently in advance of the date that
21 expert reports are due (February 11, 2008), Mattel will be prejudiced by its inability
22 to obtain such discovery in time to have it analyzed by a computer expert.
23 Accordingly, Mattel would be irreparably prejudiced if this application were heard
24 according to regularly noticed motion procedures because Mattel would not be able
25 to complete discovery to which it is indisputably entitled prior to the currently
26 scheduled discovery deadlines.

27 This application is based on this Application, the accompanying
28 Memorandum of Points and Authorities, the concurrently filed Declaration of

Christopher Tayback, the accompanying application to file certain exhibits to that declaration under seal, the [Proposed] Order and all pleadings and papers on file with the Court in this action.

Pursuant to Local Rule 7-19.1, counsel for Mattel gave notice of this application to counsel for all other parties and the witnesses on January 17 and 23, 2008.[1]

Counsel for Elise Cloonan, Margaret Hatch-Leahy and Veronica Marlow is Larry McFarland of Keats McFarland & Wilson LLP (telephone: 310-248-3830; address: 9720 Wilshire Blvd., Beverly Hills, CA 90212).  Mr. McFarland has stated that his clients will oppose this application.[2]  Counsel for Carter Bryant is Michael Page of Keker & Van Nest, LLP (telephone: 415-391-5400; address: 710 Sansome Street, San Francisco, CA 94111). Counsel for MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., MGAE de Mexico and Isaac Larian is Thomas J. Nolan of Skadden, Arps, Slate, Meagher & Flom LLP (telephone: 213-687-5000; address: 300 S. Grand Ave., Los Angeles, CA 90071).  Counsel for Gustavo Machado Gomez is Alexander Cote of Overland Borenstein Scheper & Kim, LLP (telephone: 213-613-4655; address: 300 South Grand Avenue, Suite 2750, Los Angeles, CA 90071).  Counsel for MGA, Bryant and Machado have not informed counsel for Mattel whether they intend to oppose this application.[3]

DATED:  January 23, 2008        QUINN EMANUEL URQUHART OLIVER &
                                HEDGES, LLP

                                By /s/ B. Dylan Proctor
                                   B. Dylan Proctor
                                   Attorneys for Mattel, Inc.

---

[1]   Declaration of Christopher Tayback, filed concurrently herewith ("Tayback Dec."), ¶¶ 2-3.
[2]   Tayback Dec. ¶ 2.
[3]   Tayback Dec. ¶ 3.

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ....................................................................................... 4

ARGUMENT ............................................................................................................ 8

I.   MATTEL IS ENTITLED TO WITNESS' HARD DRIVES AND THE ZIP DISK LABELED "BRATZ" ......................................................... 8

II.   NO PRIVACY INTEREST EXISTS TO PREVENT PRODUCTION OF RELEVANT DOCUMENTS ................................................................. 9

III.   MATTEL WILL BE SEVERELY PREJUDICED IF DEPRIVED OF THE OPPORTUNITY TO HAVE THESE ELECTRONIC MEDIA EXAMINED BY A FORENSIC COMPUTER EXPERT .......................... 11

CONCLUSION ...................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Gohler v. Wood,*
   162 F.R.D. 691 (D. Ut. 1995) .................................................................................11

*Humphreys v. Regents of Univ. of Cal.,*
   2006 WL. 335275 (N.D. Cal. 2006) ........................................................................9

*Keith H. v. Long Beach Unified School District,*
   228 F.R.D. 652 (C.D. Cal. 2005) ...........................................................................10

*Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.,*
   2003 WL. 21230605 (N.D. Ill. 2003) .....................................................................9

*Oakes v. Halvorsen Marine Ltd.,*
   179 F.R.D. 281 (C.D. Cal. 1998) ...........................................................................10

*Playboy Enterprises, Inc. v. Welles,*
   60 F. Supp. 2d 1050 (S.D. Cal. 1999) .....................................................................8

*Reyes v. Red Gold, Inc.,*
   2006 WL. 2729412 (S.D. Tex. 2006) ....................................................................10

*Simon Property Group L.P. v. mySimon, Inc.,*
   194 F.R.D. 639 (S.D. Ind. 2000) ........................................................................8, 9

*Superior Consultant Co. v. Bailey,*
   2000 WL. 1279161 (E.D. Mich. 2000) ...................................................................9

**Statutes**

Fed. R. Civ. P. 34 ...........................................................................................................8

Fed. R. Civ. P. 45 ...........................................................................................................8

Federal Rule of Evidence 501 .......................................................................................9

Local Rule 7-19 ........................................................................................................1, 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Veronica Marlow, Margaret Hatch-Leahy and Elise Cloonan first refused to appear for deposition; only after Mattel brought a motion to compel did they agree to appear. Now they refuse to turn over electronic evidence of the creation and development of Bratz, including a Zip disk clearly labeled "Bratz." Mattel again seeks an order to compel.

Ms. Marlow, Ms. Hatch-Leahy and Ms. Cloonan are each crucial witnesses who are affiliated with Bryant and MGA, who worked with Bryant to create and develop Bratz, and who are represented by counsel retained by MGA. As this Court has already recognized, each of them has unique knowledge that goes to the heart of this case, including the origins and design of Bratz:

- Veronica Marlow allegedly introduced Carter Bryant and MGA to one another and worked on Bratz fashions from the beginning through at least 2005. Bryant has paid her millions of dollars as an ostensible "finder's fee" to bring him and MGA together, and for its part MGA paid Marlow a substantial amount of money in connection with Bratz. At her deposition on December 28, 2007, Marlow testified that at least three more Mattel employees -- Maria Salazar, Ana Isabela Cabrera and Beatriz Morales -- worked on Bratz while they were employed by Mattel, and did so for years. Neither Bryant nor MGA had revealed this, despite prior Mattel discovery requests directed to that very issue. To the contrary, they both gave responses that were clearly misleading as to the three Mattel employees in question.

- Elise Cloonan was Bryant's roommate while both worked at Mattel in 1999 and 2000. Cloonan testified she searched for documents related to this case, located a Zip disk with the word "Bratz" written on it. She gave it to her lawyer -- who also represents MGA -- *in 2005*.

Cloonan did not create the Zip disk and does not know what is on it. Bryant testified that Cloonan's home computer was used to create the Bratz materials Bryant used to pitch Bratz to MGA in September 2000, while he was employed by Mattel. Cloonan testified that she had located the hard drive for that computer.

• Margaret Hatch-Leahy sculpted Bratz. She also was a Mattel employee until September 5, 2000. Leahy too has at least one computer hard drive that is likely to contain documents, including a digital Bratz sculpture file, that has not been produced in this case.

Counsel for these witnesses flatly refuses to produce plainly relevant electronic data. He refuses to: (1) produce for Mattel's inspection the plainly relevant "Bratz" Zip disk; (2) produce or even search for graphical files on the "Bratz" Zip disk or on any of the witnesses' hard drives; (3) allow any inspection of or conduct any search of Marlow's hard drives; or (4) allow any inspection of Cloonan's hard drive that would shed light on whether, as Bryant testified, it was used to create his alleged "Bratz" pitch.

To the extent that he has articulated any basis at all, counsel for these witnesses justifies his stonewalling because the computer data in the possession of Ms. Cloonan and Ms. Hatch-Leahy was given to a third-party expert who has run only certain "key word" searches on their contents. In September 2007 -- prior to the depositions of these witnesses -- to accommodate the stated concerns of these parties' lawyer, Mattel agreed that *initial* searches of those computer hard drives could be done by keyword searches and thereafter responsive documents produced. The protocol, however (which never applied to Ms. Marlow's computer hard drive), *specifically allowed* Mattel to seek the order it seeks here: to obtain original data and drives for analysis. The witnesses' testimony revealed that such key word searches fail to identify relevant responsive evidence. For example, key word searches do not capture "graphical" files, which are likely contained on each media.

1  Similarly, the key word search terms themselves do not take into account the new
2  names of Bryant's co-conspirators, only discovered by Mattel on December 28,
3  2007, including Pedro Salazar, Maria Salazar, Ana Isabela Cabrera, and Beatriz
4  Morales.  Further, the keyword searches do not capture the evidence that arises from
5  the *absence* of documents on the computer hard drives, specifically the absence of
6  documents that these same witnesses testified at deposition should have been
7  located on their respective hard drives but which were not, for some reason,
8  produced.  Only a forensic computer examination can determine whether these
9  witnesses were testifying truthfully or not, whether such documents were present
10 and were deleted, and if so, when.

11             Even more troubling, Mattel recently learned that, among the electronic
12 media being held by the independent expert, Ms. Cloonan had given her counsel *in*
13 *2005* a "Zip disk" labeled "Bratz."  Ms. Cloonan -- Bryant's roommate during the
14 relevant time period -- testified that the disk was not hers and she has no knowledge
15 of its contents.  In plain violation of his obligations, however, counsel for the
16 witnesses did not even produce a copy of the "Bratz" label or otherwise reveal that it
17 was so labeled.  Instead, over two years later, he turned it over to an independent
18 expert without any mention to Mattel or the expert of this highly salient fact.  As far
19 as Mattel can tell, counsel's sole basis for refusing to turn over graphical files or
20 allow Mattel's experts to image or inspect the disk is that it supposedly would
21 violate Ms. Cloonan's privacy rights.  That argument is frivolous.  Given that she
22 testified she did not create the disk and has no knowledge of it, Ms. Cloonan can
23 have no privacy interest in it whatsoever.  Furthermore, federal law is well settled
24 that privacy is not a legitimate ground for refusal to produce relevant discovery,
25 especially where, as here, there is a protective order in place ensuring its
26 confidentiality.

27             Mattel should not be prejudiced as a result of the actions of MGA and
28 its affiliated witnesses.  Mattel needs to receive relevant, responsive electronic data

from these key witnesses with adequate time to allow a forensic computer expert to examine them and prepare a report.  Absent prompt relief from the Court, Mattel will be denied its right to do so.  The Court should order these witnesses to produce images of their hard drives and the Zip disk labeled "Bratz" no later than January 30, 2008.  In the alternative, if this matter must proceed on regular notice, Mattel requests that the Court modify the Scheduling Order to extend Mattel's time to conduct expert examination of such items and produce a report from its expert regarding that analysis to 30 days after the receipt of such items.

## Statement of Facts

Marlow.  Veronica Marlow met Carter Bryant in or about 1996 while they both worked at Mattel.[4]  She later left Mattel to became a freelance designer and began performing freelance work for MGA in or about April of May of 2000.[5]  Both Ms. Marlow and Paula Garcia, MGA's Bratz project manager, have testified that it was Veronica Marlow who first brought Bryant to MGA's attention and that Ms. Marlow was present at Bryant's pitch meeting for Bratz with MGA,[6] which even by defendants' account occurred when he was employed by Mattel.  Testimony and documents have revealed that Bryant and MGA have paid Ms. Marlow millions of dollars as a supposed "finder's fee."[7]

---

[4] Deposition Tr. of Veronica Marlow, dated December 28, 2007 ("Marlow Depo."), at 18:1-10. [Tayback Dec. Exh 1]
[5] Id. at 37:14-18.
[6] Id. at 115:10-122:3; Deposition Tr. of Paula Garcia, Vol. 1 ("Garcia Depo."), dated May 24, 2007, at 186:19-187:16; 242:19-243:17; 264:21-266:20; 270:22-271:1. [Tayback Dec. Exh. 2]
[7] Deposition Tr. of Richard Irmen, dated September 28, 2007 ("Irmen Depo."), at 270:20-271:7 [Tayback Dec. Exh 3].

1    <u>Leahy</u>.  Margaret Hatch-Leahy was a Mattel employee until September 2000.[8]  Bryant solicited Ms. Hatch-Leahy to sculpt the Bratz dolls and introduced her to MGA while he was still employed by Mattel.[9]  Leahy created the first Bratz sculpt and, according to Ms. Garcia, was the sole person to work on the first Bratz sculptures in the key time-period of 2000.[10]  She also worked on the first Bratz samples exhibited at the Hong Kong Toy Fair in January 2001 and the New York Toy Fair in February 2001.[11]  In addition, Ms. Leahy admitted for the first time at her deposition last month that she worked for Mattel competitors while working for Mattel in knowing violation of her employment agreements.[12]

<u>Cloonan</u>.  Elise Cloonan was Bryant's roommate in 1999-2000 and worked with him at Mattel.[13]  She also worked on the Mattel "Toon Teens" project in 1999 that Bryant borrowed from to create Bratz.[14]  Bryant testified that Ms. Cloonan prepared portions of the written Bratz pitch materials that Bryant presented to MGA while both she and Bryant were Mattel employees.[15]

<u>Document Subpoenas to Each of the Witnesses.</u>  Mattel served subpoenas for deposition and documents on each of these witnesses in April 2005--nearly three years ago.  After literally years of delay--including motions to compel--

---

[8]   Tayback Dec. Exh. 5 [Leahy's Application for Employment]
[9]   Deposition Tr. of Carter Bryant, Vol. I, dated ("Bryant Depo."), dated November 4, 2004 at 70:24-71:13. [Tayback Dec. Exh. 6]
[10]  Garcia Depo., at 255:1-17; 629:5-18.
[11]  Id. at 481:20-482:1; 489:5-11.
[12]  Deposition Tr. of Margaret Hatch-Leahy ("Hatch-Leahy Depo."), dated December 12, 2007, at 180:1-181:18. [Tayback Dec. Exh. 7]
[13]  Deposition Tr. of Anna Rhee, dated February 3, 2005 ("Rhee Depo."), at 50:10-51:2, 78:24-79:12, 81:16-19 [Tayback Dec. Exh. 8]; Irmen Depo. at 9:17-12:8.
[14]  Bryant Depo. at 254:17-257:15.
[15]  Bryant Depo, Vol. II, 289:22-292:25.  [Tayback Dec. Exh. 6]

these witnesses produced electronic documents to Mattel in the late 2007, shortly before their depositions, which were finally taken in December 2007.[16]

**The Document "Protocol" For Searching and Producing Responsive Electronic Documents.** Part of the delay was Mattel's effort to address in good faith the objection of the witness' counsel to Mattel examining these computers in their entirety. In the Fall of 2007, the parties agreed on a protocol for an independent expert to run certain "key word" search terms on the computer data in the possession of Ms. Cloonan and Ms. Hatch-Leahy, produce identified documents to the witness' counsel, who would in turn review them for privilege and produce non-privileged, identified documents.[17] To the extent that counsel produced documents, they were largely produced shortly before the witnesses' depositions. No documents were withheld as privileged, yet no graphical computer files and no documents relating to the work done by the newly identified co-conspirators were produced. Notably, the protocol to which the parties agreed specifically stated that it did _not_ "foreclose Mattel from seeking production and inspection of any matter, including without limitation the original date, drives or documents."[18]

**The Witnesses' Depositions and Other Recent Discovery.** On December 28, 2007, in the deposition of Veronica Marlow, Mattel learned the

---

[16] Tayback Dec. Exhs.10-12 [subpoenas to Marlow, Hatch-Leahy and Cloonan]; Tayback Dec. Exh. 13 [correspondence reflecting production dated December 17, 2007].

[17] Tayback Dec. Exh. 14 [September 13-27, 2007 letter agreement between Susan Wines and Larry McFarland re computers belonging to Ms. Cloonan] and Exh. 15 [October 4, 2007 letter from Larry McFarland to Michael Zeller re extension of September protocol to computers belonging to Margaret Hatch-Leahy]. This protocol was never applied to Ms. Marlow's computer. Thus, Ms. Marlow's computer has never been "key word" searched and presently is, to Mattel's knowledge, in Ms. Marlow's physical possession rather than in the possession of an independent expert.

[18] Tayback Dec., Exh. 14.

identity of several additional co-conspirators of Bryant in his development of Bratz. These included Pedro Salazar, Maria Salazar, Ana Isabela Cabrera, and Beatriz Morales.[19] Although Mattel had propounded discovery to MGA and Bryant aimed at precisely this issue, they had not identified these people as assisting in the creation of Bratz.[20] Obviously, the identity of these participants--discovered well after the "key word" searches of the computer data at issue--were not searched for.

Ms. Cloonan testified at deposition on December 14, 2007, and admitted then that she could have used the computer she had when she lived with Carter Bryant to prepare graphics for Bryant.[21] She also testified that Bryant himself used her computer[22] -- the same computer that she ultimately gave to her lawyers and which is now with the independent expert, but which has never been searched for responsive graphical files.[23] Further, she identified a "Zip disk" in her possession which is labeled "Bratz," and which she claims to have no knowledge of what it contains.[24] Notably, although Ms. Cloonan testified that she gave this disk to her attorney in 2005, in response to Mattel's subpoena for documents, it was not until her deposition in December 2007--over two years later--that Mattel learned that the disk is itself labeled "Bratz."[25]

<u>Efforts To Reach Agreement on a Revised Protocol.</u>   Given the clear deficiencies of these witnesses' production of relevant documents from these electronic media, Mattel sought to meet and confer with their counsel about

---

[19]   Marlow Depo. at 286:1-290:13, 302:5-303:8, and 306:14-308:1.
[20]   Tayback Dec. Exh. 16 [Mattel's Interrogatory No. 5 to MGA and Responses and Supplemental Responses of MGA thereto] and Exh. 17 [Mattel's Interrogatory No. 4 to Bryant and Responses and Supplemental Responses of Bryant thereto].
[21]   Deposition Tr. of Elise Cloonan ("Cloonan Depo.") dated December 14, 2007 at 128:2-12.  [Tayback Dec. Exh. 9]
[22]   Id. at 129:11-12.
[23]   Id. at 128:16-129:3.
[24]   Id. at 246:24-249:9.

alternative ways to ensure that relevant evidence was made available to Mattel. Counsel for the witnesses' rejected all alternatives proposed by Mattel.[26]

### Argument

### I. MATTEL IS ENTITLED TO WITNESS' HARD DRIVES AND THE ZIP DISK LABELED "BRATZ"

Ms. Cloonan, Ms. Hatch-Leahy and Ms. Marlow are key witnesses. MGA identified each as "possess[ing] information relevant to the conception, creation, design and development of 'Bratz.'"[27] Each has computer data, or a Zip disk, that contains evidence relevant to the origin, creation and development of Bratz. Just as important, however, is what evidence is *no longer* on those drives.

The 2006 Committee Notes to Federal Rule of Civil Procedure 45, recognize that "electronically stored information, as defined in Rule 34(a), can also be sought by subpoena." Indeed, under Federal Rule of Civil Procedure 34(a), the term "documents" includes documents stored in electronic form. See Playboy Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999); Fed. R. Civ. P. 34, adv. comm. note. Mattel's subpoenas to Marlow, Hatch-Leahy and Cloonan also defined "documents" to include electronic data and documents.[28] Even if the relevant materials on their computers have been deleted, the hard drives must be produced because *deleted records* are discoverable. See Simon Property Group L.P. v. mySimon, Inc., 194 F.R.D. 639, 640-41 (S.D. Ind. 2000) (holding that plaintiff was entitled to attempt to recover deleted computer files from computers used by employees of the defendant to develop evidence supporting its claims); Playboy Enterprises, 60 F. Supp. 2d at 1054-55 (ordering a computer expert to make a mirror

---

[25] Cloonan Depo at 263:6-15.
[26] Tayback Dec. ¶ 21, Exh. 19 [email to Larry McFarland dated January 9, 2007].
[27] MGA's Rule 26(a) Disclosures ¶¶ 4-6. [Tayback Dec. Exh. 20]
[28] Tayback Dec. Exhs. 10, 11, 12.

image of defendant's hard drive to search for emails deleted by defendant); <u>Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.</u>, 2003 WL 21230605, at *4, fn. 5 (N.D. Ill. 2003) ("Emails and other electronic documents are discoverable, as are deleted documents still located in a computer's hard drive."). Mattel is entitled to inspect these hard drives to determine whether the computers contain additional responsive documents, as the evidence suggests they do. The fact that these computers are the witnesses' personal computers does not make them immune from production. Courts routinely permit inspection of home computers. <u>See Simon Property Group L.P.</u>, 194 F.R.D. at 640-41 (holding that plaintiff in trademark case was entitled to attempt to recover deleted computer files from computers used by employees of the defendant - whether such computers were at home or at work - to develop evidence supporting its claims); <u>Superior Consultant Co. v. Bailey</u>, 2000 WL 1279161, at *13 (E.D. Mich. 2000) (ordering defendants to "create and produce to defense counsel a backup file of defendant Bailey's laptop computer, and a backup file of any personal computer hard-drive to which defendant Bailey has had access at any time."). Such an inspection is particularly appropriate where, as here, the computers were used for business as well as personal purposes. Indeed, with respect the Zip disk labeled "Bratz", there is no argument whatsoever that it should not be produced to Mattel-- Cloonan testified at deposition that it is likely not even hers and she claimed to have no knowledge of what is even on it.

**II.   NO PRIVACY INTEREST EXISTS TO PREVENT PRODUCTION OF RELEVANT DOCUMENTS**

To the extent counsel for these witnesses claims that a review of their hard drives and Zip disk would invade their privacy rights, such an objection is misplaced. In general, federal law does not recognize a right to privacy that entitles a party to withhold documents. <u>See Humphreys v. Regents of Univ. of Cal.</u>, 2006 WL 335275, *1 (N.D. Cal. 2006) (under <u>Federal Rule of Evidence</u> 501, "federal law determines the evidentiary privileges that apply," and "there is no federal analog to

the California privacy rights that [defendant] seeks to invoke").  While courts can consider privacy concerns, "courts have frequently found that a party's need for information may outweigh whatever privacy rights, if any, another party may have."  Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 284 (C.D. Cal. 1998); see Reyes v. Red Gold, Inc. 2006 WL 2729412, at *3 (S.D. Tex. 2006) (identity of third parties is not "sufficiently private" to obstruct discovery).  At a minimum, "[r]esolution of a privacy objection . . . requires a balancing of the need for the information sought against the privacy right asserted."  Keith H. v. Long Beach Unified School District, 228 F.R.D. 652, 657 (C.D. Cal. 2005) (granting motion to compel even where "plaintiff's document requests indisputably implicate significant privacy rights of minors who are not parties to this litigation . . . [because] the information sought *could* help support plaintiff's claim . . . [and] '[p]laintiff's need for the requested [information] is great [since it] is unlikely to be available from any other source than [d]efendant's files'") (quotations omitted, emphasis added).

    Here, Mattel's need for the information is compelling.  Mattel simply cannot obtain the work that was performed regarding Bratz on Marlow's computer, or the materials contained on the Zip disk labeled "Bratz" in Cloonan's possession, for example.  Similarly, there is no substitute for an examination of what documents related to Bratz have been deleted from these hard drives.  And Ms. Cloonan has made clear that she has no interest in the contents of the Zip disk labeled "Bratz.  A vague assertion of "privacy" rights does not outweigh Mattel's need for the information.  Thus, the documents must be produced.  Keith, 228 F.R.D. at 656-57.

    Further, and as numerous courts have held, these witnesses can designate their documents confidential pursuant to the Protective Order which exists in this case (and which documents already produced--including allegedly "private"

documents--have been safely designated by these witnesses already).[29] Such a designation obviates any privacy concerns. See, e.g., Gohler v. Wood, 162 F.R.D. 691, 697 (D. Ut. 1995) ("Because the protective order limits disclosure of confidential material to those who are necessarily involved in the case, and these parties may use this information only for purposes of litigating this case, excluding any business purpose, the court concludes Deloitte's confidentiality concerns have been addressed adequately.").

### III. MATTEL WILL BE SEVERELY PREJUDICED IF DEPRIVED OF THE OPPORTUNITY TO HAVE THESE ELECTRONIC MEDIA EXAMINED BY A FORENSIC COMPUTER EXPERT

The current deadline for the disclosure of expert reports is February 11, 2008. To have any consultant meaningfully review and analyze the computer hard drives and the Zip disk and to produce a timely report, the witnesses' media must be provided to Mattel immediately. Just as important, however, is the sheer fact that Mattel is entitled to relevant, responsive evidence about the creation, origin and development of Bratz. These witnesses are clearly, and improperly, withholding such evidence.

Given this delay in producing these items to begin with -- nearly three years from the issuance of the subpoena -- an order compelling the production of the requested electronic data is warranted. In the alternative, the Court should modify the Scheduling Order to extend Mattel's time to conduct a forensic computer review of the requested items and prepare a proper expert report regarding such analysis--an amount of time likely to be 30 days from the date of Mattel's receipt of the items.

---

[29] Tayback Dec. Exh. 18 [October 26, 2007 letter from counsel for Ms. Cloonan stating that he was producing certain non-privileged, personal, non-responsive documents that had been identified by the "key word" search, but acknowledging that such documents were protected by the existing protective order].

## Conclusion

Mattel respectfully requests that the Court grant its *ex parte* application.

DATED: January 23, 2008

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP

By /s/ B. Dylan Proctor
B. Dylan Proctor
Attorneys for Mattel, Inc.