QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | NOTICE OF MOTION AND MOTION OF PLAINTIFF MATTEL, INC. FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; AND |
| | MEMORANDUM OF POINTS AND AUTHORITIES |
| | [Declaration of Bernard B. Smyth filed concurrently] |
| | Date:    February 8, 2008<br>Time:    9:30 a.m.<br>Place:   TBA |
| | **Phase 1**<br>Discovery Cut-Off:    January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:    May 27, 2008 |

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE that, at a conference before Discovery Master

3   Hon. Edward Infante (Ret.) that will occur on February 8, 2008 at 9:30 a.m., or at

4   another date and time to be set by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will,

5   and hereby does, move the Court pursuant to Federal Rules of Civil Procedure 26 and

6   37 to compel MGA Entertainment, Inc. ("MGA") and Isaac Larian to produce all

7   documents, communications and information related to advice they sought and/or

8   received prior to April 27, 2004, regarding the legal propriety of MGA's contracting

9   with Bryant regarding Bratz, MGA's subsequent copying, development, production

10  and sales of Bratz, and MGA's or Bryant's obligations to Mattel, including without

11  limitation (1) Entry Nos. 655-657 and 660 on MGA's August 14, 2007 Supplemental

12  Privilege Log, (2) Entry Nos. 12-19 and 21-27 on MGA's Supplemental Revised

13  Privilege and Redaction Log for MGA's 2005 Document Production, (3) Entry Nos.

14  89 and 90 on Isaac Larian's Privilege Log, and (4) testimony in response to questions

15  that MGA's counsel instructed Isaac Larian not to answer at his deposition (see

16  Larian Depo. Tr. at 47:22-48:1).

17  This Motion is made on the grounds that MGA and Isaac Larian have

18  waived any claimed privilege as to these materials because they have affirmatively

19  asserted good faith affirmative defenses, putting protected information relevant to

20  those defenses at issue, and because the application of the attorney-client privilege or

21  work product doctrine would deny Mattel information vital to responding to MGA

22  and Larian's affirmative defenses.

23  This Motion is based on this Notice of Motion and Motion, the

24  accompanying Memorandum of Points and Authorities, the Declaration of Bernard B.

25  Smyth filed concurrently herewith, the records and files of this Court, and all other

26  matters of which the Court may take judicial notice.

27

28

07209/2356870.1

-2-

MATTEL'S MOTION FOR ORDER FINDING IMPLIED WAIVER AND TO COMPEL DOCUMENTS

1

## **Statement of Rule 37-1 Compliance**

2      The parties met and conferred regarding MGA and Larian's implied

3   waiver of privilege on January 23, 2008.

4

5   DATED:  January 23, 2008          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
6

7                                     By _____
8                                        Bernard B. Smyth
                                         Attorneys for Plaintiff
9                                        Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ........................................................................... 2

ARGUMENT ............................................................................................. 8

I.    FAIRNESS DEMANDS THAT MGA AND LARIAN PRODUCE
      PROTECTED INFORMATION............................................................... 8

II.   MGA AND LARIAN HAVE IMPLIEDLY WAIVED PRIVILEGE.............. 11

CONCLUSION........................................................................................ 15

1

## __TABLE OF AUTHORITIES__

2

__Page__

3

### __Cases__

4

*Bittaker v. Woodford,*
   331 F.3d 715 (9th Cir. 2003) ................................................................. 10

*Chevron Corp. v. Pennzoil Corp.,*
   974 F.2d 1156 (9th Cir. 1992) .................................................................. 8

*Cox v. Administrator U.S. Steel & Carnegie,*
   17 F.3d 1386 (11th Cir. 1994), cert denied, 513 U.S. 1110 (1995) ............. 9, 12, 14

*Hearn v. Rhay,*
   68 F.R.D. 574 (E.D. Wash. 1975) ............................................. 11, 12, 13

*United States v. Amlani,*
   169 F.3d 1189 (9th Cir. 1999) ................................................... 11, 12

*United States v. Blizerian,*
   926 F.2d 1285 (2d Cir. 1991), cert denied, 502 U.S. 813 (1991) ............. 12, 13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The lynchpin of a number of MGA's and Isaac Larian's affirmative defenses is their allegation that they "acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA . . . was valid and permissible."  MGA claims it "did not believe that Mattel owned any of the materials Carter Bryant presented to it" and, in fact, "took steps to confirm the timing of Bryant's work prior to executing the agreement" with him.  Yet MGA and Larian have refused to produce any information showing what those steps were and what advice they sought and received regarding (i) the propriety of contracting with Bryant and (ii) the subsequent copying, development, production and sales of Bratz.  They have consistently shielded that information behind the attorney-client privilege.

Thus, MGA and Larian are withholding substantial evidence showing what they were told regarding the propriety of their actions, while at the same time baldly professing their good faith.  For example, as evidence of his good faith, Larian testified that he instructed an MGA executive to consult with MGA's attorneys concerning Bryant's contract obligations with Mattel before he contracted with Bryant and that she did so.  However, MGA's counsel instructed Larian not to go beyond that partial disclosure.  MGA is thus trying to rely on the consultation with counsel -- and the implication that it was advised that MGA could properly contract with Bryant -- as evidence of its good faith, but at the same time withhold the actual substance of the advice.  MGA and Larian are likewise withholding dozens of emails from the dates leading up to the execution of MGA's agreement with Bryant that show what MGA asked its lawyers and what its lawyers told it regarding the propriety of contracting with Bryant.

MGA is also withholding several emails to and from its attorneys after MGA first unveiled Bratz.  Those emails are described as seeking and receiving legal

advice regarding Bryant's contract and licensing.  They likely show what MGA was told about the propriety of further copying and sales of Bratz.  Further, MGA is withholding communications with its litigation counsel from June 2001 -- nearly three years before Mattel filed suit -- which are described as "requesting legal advice regarding Mattel litigation" and "seeking legal advice regarding Bratz."

Fairness demands that MGA and Larian produce those documents and any other information they are withholding regarding advice they sought and/or received regarding the legal propriety of MGA's contract with Bryant and subsequent copying and sales of Bratz.  The case law is clear that in asserting their good faith as affirmative defenses, MGA and Larian have put in issue otherwise privileged information showing their true state of mind regarding the legal propriety of their actions.  In order to fairly respond to MGA's asserted "good faith," Mattel needs access to the documents that would show what advice MGA and Larian were provided, and what steps they took (and asked their lawyers to take) to do "due diligence" about Bryant's representations and Bryant's relationship with Mattel.  The only actual evidence necessary to test MGA's "good faith" defenses in this case is privileged communications that MGA and Larian refuse to produce.  MGA and Larian cannot use the privilege as both a sword -- in baldly proclaiming their good faith -- and as a shield.

### Statement of Facts

Mattel's Counterclaims and MGA's "Good Faith" Affirmative Defenses.
Mattel filed its Second Amended Answer and Counterclaims on July 12, 2007.[1] Mattel alleges, among other things, that MGA and Larian (collectively, "MGA") encouraged, aided and paid Carter Bryant to develop Bratz designs while Bryant was

---

[1]   Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, attached as Exhibit 3 to the concurrently filed Declaration of Bernard B. Smyth ("Smyth Dec.").

a Mattel employee, knowing that such conduct was a breach of Bryant's contractual duties to Mattel;[2] that MGA and Bryant intentionally concealed these facts from Mattel;[3] that Mattel is the rightful owner of Bratz drawings; and that MGA's infringement of Mattel copyrights in those drawings harmed, and continues to harm, Mattel.[4]   Mattel claims that MGA and Larian are liable for, among other things, aiding and abetting Bryant's breaches of duty to Mattel, copyright infringement, and willful copyright infringement.[5]

MGA asserted 22 affirmative defenses in response to Mattel's counterclaims.  Central to a number of those defenses is MGA's claim that it "acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA . . . was valid and permissible."[6] MGA also separately asserts the defense of "good faith" to Mattel's counterclaims.[7] Thus, MGA has affirmatively put its state of mind at issue and done so repeatedly.

MGA's Discovery Responses Demonstrate Continued Reliance on Its Alleged "Good Faith."   Discovery in this case also has demonstrated that MGA clearly intends to rely on its alleged "good faith" in defending Mattel's counterclaims. In response to requests for admissions, MGA acknowledged that "it contends it believed at the time it entered into its agreement with Bryant and at all times thereafter" that:

---

[2] Id., ¶ 33.

[3] Id., ¶ 35.

[4] Id., ¶¶ 83-87.

[5] Id., ¶¶ 83-87, 136-141, 149-154.

[6] See, e.g., MGA's Fifth and Sixth Affirmative Defenses, Amended Answer and Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims, dated September 19, 2007, at p. 22, Smyth Dec., Exh. 4.

[7] MGA's Eighteenth Affirmative Defense, Id. at p. 25.

- "[I]t had the right to market products developed as a result of its agreement with Bryant;"[8]

- "[I]t would have the lawful right to fully exploit the drawings drawn and presented by Bryant prior to the execution of MGA's agreement with Bryant;"[9]

- "[I]t had the right to fully exploit products developed as a result of its agreement with Bryant;"[10] and

- "[I]t had the lawful right to fully exploit the drawings drawn and presented by Bryant prior to the execution of its agreement with Bryant."[11]

In addition, as recently as January 7, 2008, MGA served interrogatory responses in which it contended that "MGA acted in good faith when Bryant transferred and MGA acquired all rights to the Bratz concept,"[12] and that MGA "acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA [] was valid and permissible."[13]   MGA contends that, "despite [its] fair inquiry" it did not know that Carter Bryant entered into an inventions agreement with Mattel.[14]   According to MGA, these contentions support its affirmative defenses.[15]

<u>MGA Shields the Only Evidence that Could Rebut Its Alleged "Good Faith" Behind the Attorney-Client Privilege.</u>   Although MGA has repeatedly injected its alleged "good faith" as to the central events in this case, it refuses to produce the

---

[8]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at p. 4, Smyth Dec., Exh. 5.
[9]   <u>Id.</u> at p. 5.
[10]   <u>Id.</u> at p. 6.
[11]   <u>Id.</u> at p. 8.
[12]   MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at p. 35, Smyth Dec., Exh. 6.
[13]   <u>Id.</u> at p. 32.
[14]   MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, dated January 7, 2008, at pp. 79-80, Smyth Dec., Exh. 7.
[15]   <u>Id.</u>

communications with its attorneys that are the only evidence of (1) what it actually thought, and was advised about, the legal propriety of contracting with Bryant and the subsequent copying and sales of Bratz, and (2) what inquiry, if any, it asked its lawyers to conduct.  MGA has withheld those communications as privileged.

According to MGA, Isaac Larian and other MGA personnel, including Victoria O'Connor, first met with Bryant on September 1, 2000.  MGA admits that "Bryant told them . . . that he was employed by Mattel at that time."[16]  MGA claims that despite some undisclosed "fair inquiry," it did not know Bryant had signed an inventions agreement with Mattel.  However, MGA produced a fax from the same time period (September 14, 2000) from Bryant to David Rosenbaum, who both Larian and O'Connor testified was the attorney MGA hired to assist with the Bryant contract,[17] in which Bryant encloses his offer letter with Mattel.  That offer letter expressly calls attention to his Confidential Information and Inventions Agreement.[18] In the fax, Bryant advised MGA's lawyer that he was "unable to look into this too much . . . without risking suspicion" on Mattel's part.[19]

MGA claims that "Bryant and his counsel . . . represented and warranted to MGA that Bryant was the exclusive originator and owner of his Bratz ideas and drawing and that no third party had any interest or rights in the drawings or ideas reflected in the drawings."[20]  Despite Bryant's alleged representations, Larian testified that in entering into a contract with Bryant he "wanted to make sure . . . that this idea

---

[16]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at p. 21, Smyth Dec., Exh. 5.

[17]   Deposition Transcript of Victoria O'Connor, dated December 6, 2004 ("O'Connor Depo. Tr."), at 226:24-227:7, Smyth Dec., Exh. 10; Larian Depo. Tr. at 50:25-51:6, 140:18-140:21, Smyth Dec., Exh. 9.

[18]   See Smyth Dec., Exh. 8.

[19]   Id.

[20]   MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at p. 35, 76-77, Smyth Dec., Exh. 6.

that he was showing us was nothing that was at Mattel or Mattel had done."[21]  In fact, MGA has stated that "[b]ased on the information provided to it, MGA did not believe that Mattel owned any of the materials Carter Bryant presented to it, *but nonetheless took steps to confirm the timing of Mr. Bryant's work prior to executing the agreement*, as Mr. Larian testified to at his deposition."[22]  At his deposition, Larian testified that, as evidence of his good faith, he asked Victoria O'Connor to make sure to check with MGA's attorney regarding whether Bryant had a contract with Mattel.[23]

However, MGA has refused to disclose what its attorneys told it regarding the legal propriety of contracting with Bryant.  MGA's counsel instructed Larian not to answer, on attorney-client privilege grounds, questions regarding what MGA asked its attorneys about the propriety of contracting with Bryant and what its attorneys told MGA.[24]  MGA is also withholding more than a dozen emails between O'Connor and Rosenbaum that were sent between September 1, 2000, the date of the claimed meeting with Bryant, and October 4, 2000, the date Bryant's contract was executed.[25]  Those emails are all described as messages "rendering [or requesting] legal advice regarding Carter Bryant contract."[26]  Many emails between O'Connor and Rosenbaum from the same time period were withheld by Rosenbaum as well.[27]

---

[21]   Deposition Transcript of Isaac Larian, dated July 18, 2006 ("Larian Depo. Tr."), at 46:16-19, Smyth Dec., Exh. 9.

[22]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at p. 12 (emphasis added), Smyth Dec., Exh. 5.

[23]   Larian Depo. Tr. at 47:16-23, Smyth Dec., Exh. 9.

[24]   Id. at 47:22-48:1.

[25]   Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document Production, Entry Nos. 12-19, 21-27, Smyth Dec., Exh. 11.

[26]   Id.

[27]   David Rosenbaum's Privilege Log, Entry Nos. 9-17, 19-25, Smyth Dec., Exh. 12.

1   Those emails may include advice regarding the propriety of MGA contracting with
2   Bryant and MGA's or Bryant's obligations to Mattel.

3        MGA alleges that it first unveiled Bratz at the Hong Kong Toy Fair in
4   January 2001.[28]   The next month, on February 10, 2001, Isaac Larian emailed David
5   Rosenbaum, noting that "Bratz are very hot."[29]   MGA redacted the rest of that email
6   as privileged, describing it as "requesting legal advice regarding Carter Bryant
7   contract and licensing."[30]   That email apparently started a series of communications --
8   first between Larian and Rosenbaum and then between O'Connor and Rosenbaum --
9   all described as "requesting [or rendering] legal advice regarding Carter Bryant
10  contract and licensing."[31]   MGA is withholding all of those communications.

11       MGA is thus withholding dozens of emails between MGA and its
12  counsel that, based on their description, evidence legal advice MGA requested and
13  received regarding the legal propriety of contracting with Bryant, both before the
14  contract with him was executed and once it became apparent that MGA would begin
15  significant efforts copying, developing, producing and selling Bratz.

16       Isaac Larian is also personally withholding on privilege grounds
17  documents that appear to evidence what he knew regarding the legal propriety of
18  MGA's contract with Bryant and subsequent development of Bratz.  Larian's privilege
19  log, which the Discovery Master ordered Larian to provide and which was served last
20  week, includes a June 30, 2001 email from Larian to Patricia Glaser, Larian's
21  litigation counsel.   The email is described as a "message requesting legal advice

22
23

24   _____

25   [28]   MGA's Complaint in Case No. 05-2727, dated April 13, 2005, ¶ 23, Smyth
     Dec., Exh. 13.
26   [29]   See Smyth Dec., Exh. 14.
27   [30]   Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document
     Production, Entry No. 8, Smyth Dec., Exh. 11.
28   [31]   Id., Entry Nos. 3-6, 8-11.

regarding Mattel litigation,"[32] and was sent approximately when the Bratz dolls were first put on sale,[33] well before Mattel filed suit in April 2004. Additional emails from Larian to Glaser between June 29, 2001 and July 2, 2001, are listed on MGA's logs as well,[34] including one described as an email "seeking legal advice regarding Bratz."[35] These 2001 communications between Larian and Glaser are particularly suspicious in light of Victoria O'Connor's testimony. She testified that the executed agreement between Bryant and MGA was faxed to her by Bryant with a heading at the top stating "Barbie Collectibles."[36] She acknowledged that the heading caused her concern "because [Bryant] was still at Mattel at the time the contract was executed."[37] She expressed that concern to Isaac Larian.[38] Larian then asked her to whiteout "Barbie Collectibles" from the faxed agreement and send it to Patricia Glaser.[39]

### Argument

## I.   FAIRNESS DEMANDS THAT MGA AND LARIAN PRODUCE PROTECTED INFORMATION

In the Ninth Circuit as elsewhere, "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield. When a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." Chevron Corp. v. Pennzoil Corp., 974 F.2d 1156, 1162 (9th Cir. 1992) (citation omitted).

---

[32]   Larian Privilege Log, Entry No. 89, Smyth Dec., Exh. 15. Entry No. 90 on Larian's log is another communication from Larian to Glaser, dated June 29, 2001.

[33]   MGA's Complaint in Case No. 05-2727, dated April 13, 2005, ¶ 23 ("MGA introduced [Bratz] to consumers in June 2001."), Smyth Dec., Exh. 13.

[34]   MGA's August 14, 2007 Supplemental Privilege Log, Entry Nos. 655-657, 660, Smyth Dec., Exh. 16.

[35]   Id., Entry No. 660.

[36]   O'Connor Depo. Tr. at 18:13-18, Smyth Dec., Exh. 10.

[37]   Id. at 20:8-20.

[38]   Id. at 20:8-21:20.

[39]   Id. at 18:13-18.

1    It is unfair for MGA to argue that it should be absolved of liability

2    because it supposedly had a good faith belief that its actions were lawful, while at the

3    same time withholding from production communications with its attorneys bearing on

4    that very subject.   The withheld communications reflect the "steps [MGA took] to

5    confirm the timing of Mr. Bryant's work prior to executing the agreement" and the

6    "fair inquiry" MGA claims it conducted, and apparently form the basis of MGA's

7    claim that "at the time it entered into its agreement with Bryant . . . it had the lawful

8    right to fully exploit the drawings drawn and presented by Bryant."[40]   Such

9    communications may show that MGA was, in truth, aware that Mattel had or may

10   have legal rights to Bratz and are critical evidence regarding the merits of MGA's

11   "good faith" defenses and are the only way for Mattel to test its claim of good faith.

12   Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1418-20

13   (11th Cir. 1994), cert denied, 513 U.S. 1110 (1995), is instructive.   In that case, the

14   defendant claimed that at the time it revised the leave-of-absence policy at issue in

15   the case it "believed the policy to be lawful." Id. at 1418.   Thus, defendant's alleged

16   "good faith" was at issue.   Although the defendant did not claim that its belief was

17   based on communications with attorneys, the court upheld a finding of implied

18   waiver because defendant's claimed belief "necessarily implicates all of the

19   information at its disposal when it made the decision to change the leave of absence

20   policy." Id.   The court ordered the defendant to produce communications with its

21   lawyers about the lawfulness of its policy, holding that defendant's allegation of

22   "good faith" injected "into the case an issue that in fairness requires an examination

23   of otherwise protected communications." Id. at 1419.

24

25

---

26   [40]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set

27   of Requests for Admission, dated August 21, 2007, at p. 8, 12, Smyth Dec., Exh. 5;
     MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised

28   Third Set of Interrogatories, at pp. 79-80, dated January 7, 2008, Smyth Dec., Exh. 7.

1   Similarly here, MGA has injected into this litigation what advice it
2   received from its lawyers regarding the legality of its contract with Bryant and its
3   rights to copy and sell Bratz.  MGA cannot obtain the benefit of invoking the advice
4   of counsel as establishing good faith -- including the clear implication that Bryant
5   was legally free to contract with MGA -- but withhold the rest of the communication.
6   Fairness requires that Mattel be permitted to examine that information.   That is
7   especially true here because the *only* evidence of what MGA knew regarding the
8   lawfulness of its actions has been withheld as privileged.  By "assert[ing] claims the
9   opposing party cannot adequately dispute unless it has access to the privilege
10   materials," Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003), MGA has
11   waived the privilege.

12   It is clear that MGA sought and obtained legal advice regarding the
13   propriety of entering into a contract with Bryant, who it knew to be employed by
14   Mattel as a doll designer, to acquire Bratz, and subsequent copying of Bratz.  Larian
15   testified that in entering into a contract with Bryant he "wanted to make sure . . . that
16   this idea that he was showing us was nothing that was at Mattel or Mattel had
17   done."[41]  MGA has stated that it "took steps to confirm the timing of Mr. Bryant's
18   work prior to executing the agreement."[42]  MGA claims to have conducted a "fair
19   inquiry."[43]  This is a partial disclosure, for MGA's benefit, of its communications with
20   counsel.  And MGA concedes that it affirmatively has put its alleged good faith at
21   issue.[44]  Yet MGA has refused to provide testimony or produce documents that
22

---

23   [41]   Larian Depo. Tr. at 46:16-19, Smyth Dec., Exh. 9.
24   [42]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at p. 12, Smyth Dec., Exh. 5.
25   [43]   MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s
26   Revised Third Set of Interrogatories, at pp. 79-80, dated January 7, 2008, Smyth Dec., Exh. 7.
27   [44]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
28   of Requests for Admission, dated August 21, 2007, at pp. 4-8, Smyth Dec., Exh. 5.

07209/2356870.1

1  demonstrate what those steps were or what MGA learned in taking those steps.  The

2  closest MGA has come to providing that information is when Larian testified that he

3  asked Victoria O'Connor to make sure to check with MGA's attorney regarding

4  whether Bryant had a contract with Mattel, but he was then promptly interrupted by

5  his counsel and instructed not to divulge any attorney-client communications.[45]  Such

6  partial "lifting of the veil" to gain an advantage is clearly improper.

7          MGA and Larian are withholding dozens of documents that, based on

8  privilege log descriptions, appear to involve legal advice regarding the propriety of

9  MGA's actions.  Those include emails from Larian to Patricia Glaser seeking legal

10  advice regarding "Bratz" and "Mattel litigation" even as Bratz was first being released

11  and no litigation was pending.  Fairness demands that MGA produce those

12  documents and any other information that MGA is withholding as privileged

13  regarding advice it sought and/or obtained regarding the propriety of contracting with

14  Bryant, MGA's or Bryant's obligations to Mattel, and the propriety of MGA's

15  copying, development, production and/or sales of Bratz.

16  **II.**    **MGA AND LARIAN HAVE IMPLIEDLY WAIVED PRIVILEGE**

17          As MGA has recognized,[46] the Ninth Circuit applies the three-part test

18  set forth in Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975), to determine

19  whether a party has impliedly waived privilege: "(1) assertion of the privilege was a

20  result of some affirmative act, such as filing suit, by the asserting party; (2) through

21  this affirmative act, the asserting party put the protected information at issue by

22  making it relevant to the case; and (3) application of the privilege would have denied

23  the opposing party access to information vital to his defense." See also United States

24

25

26    [45]  Larian Depo. Tr. at 47:16-23, Smyth Dec., Exh. 9.

27    [46]  See MGA's Notice of Motion and Motion to Compel Regarding Mattel's Privilege Waiver by Claim Assertion, dated December 18, 2007, at pp. 15-16, Smyth

28  Dec., Exh. 17.

1   v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (applying the Hearn test for implied

2   waiver).

3        Under the Hearn test, which MGA heavily relies on in its recently filed

4   motion for implied waiver against Mattel, MGA and Larian have waived the privilege

5   by asserting their "good faith" affirmative defenses.   The facts here are closely

6   analogous to those in Hearn, where the court found implied waiver.   In Hearn,

7   defendants asserted as a defense "in their answer that they 'have acted in good faith.'"

8   Hearn, 68 F.R.D. at 578.   The court found that all the elements of its three-part test

9   were satisfied because:

> [D]efendants invoked the privilege in furtherance of an
> affirmative defense they asserted for their own benefit;
> through this affirmative act they placed the privileged
> information at issue, for the legal advice they received is
> germane to the qualified immunity defense they raised; and
> one result of asserting the privilege has been to deprive
> plaintiff of information necessary to 'defend' against
> defendants' affirmative defenses, for the protected information
> is also germane to plaintiff's burden of proving malice or
> unreasonable disregard of his clearly established
> constitutional rights.

18   Id. at 581.

19        The same is true here.   First, as in Hearn, MGA has asserted the privilege

20   by alleging the affirmative defense of "good faith."   The assertion of an affirmative

21   defense based on good faith is a particularly common grounds for finding implied

22   waiver.   See, e.g., Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1419

23   (11th Cir. 1994), cert denied, 513 U.S. 1110 (1995) ("Having gone beyond mere

24   denial, affirmatively to assert good faith, USX injected the issue of its knowledge of

25   the law into the case and thereby waived the attorney-client privilege."); United

26   States v. Blizerian, 926 F.2d 1285, 1293 (2d Cir. 1991), cert denied, 502 U.S. 813

27   (1991) (defendant's good faith assertion that his actions were lawful waived attorney-

28   client privilege).

1    Second, MGA's "good faith" defenses have affirmatively put privileged

2 information at issue.  In <u>Hearn</u>, the court found that privileged information was put at

3 issue because the legal advice defendants received was "germane" to the defense they

4 raised.  Here, MGA acknowledges that it "took steps to confirm the timing of Mr.

5 Bryant's work prior to executing the agreement."[47]  It also contends that it conducted

6 a "fair inquiry" into Bryant's representations about his creation and ownership of

7 Bratz.[48]  Larian testified that he told Victoria O'Connor to talk to MGA's lawyers.[49]

8 MGA's privilege log includes a number of emails between MGA and its lawyers

9 regarding Bryant's contract, Mattel litigation and the like.   Not only are such

10 communications "germane" to MGA's "good faith" defenses, they are the *only*

11 evidence of the steps MGA took to determine the propriety of its actions.  MGA has

12 shielded everything in this regard by asserting the privilege.

13    Third, as in <u>Hearn</u>, the result of MGA's privilege assertions has been to

14 deprive Mattel of information "necessary to 'defend' against [MGA's] affirmative

15 defenses."   The information MGA is withholding is critical to Mattel's ability to

16 respond to MGA's purported "good faith" defenses because, as discussed in Section I

17 above, it is the *only* evidence of what advice MGA solicited and received regarding

18 the propriety of its actions and the steps it claims it took to ensure that Bryant could

19 and did lawfully assign rights to Bratz and that no Mattel rights were infringed.

20    In short, MGA contends that its actions in contracting with Bryant and

21 subsequent acts of copying, developing, producing and selling Bratz were in good

22 faith because it believed they were lawful.  And MGA contends that it cannot be

---

[47]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at p. 12, Smyth Dec., Exh. 5.

[48]   MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, at pp. 79-80, dated January 7, 2008, Smyth Dec., Exh. 7.

[49]   Larian Depo. Tr. at 47:16-23, Smyth Dec., Exh. 9.

1   liable to Mattel because of its good faith.[50]   These contentions have placed at issue

2   numerous otherwise protected attorney-client communications, including relevant

3   documents listed on MGA's and Larian's privilege logs.   Those communications are

4   the only evidence of what MGA asked and was told about the legal propriety of its

5   actions.   Mattel needs the information withheld to fairly respond to MGA's "good

6   faith" defenses.

7         Those facts are in marked contrast to the facts MGA relies on to claim

8   that Mattel impliedly waived the privilege in MGA's currently pending motion.

9   MGA argues that Mattel waived the privilege because Mattel alleges that MGA and

10  Bryant concealed their wrongful acts.   But Mattel has produced substantial non-

11  privileged information regarding when Mattel learned of Bryant's wrongful conduct.

12  MGA thus already has sufficient information to litigate its statute of limitations and

13  laches defenses.   Here, MGA and Larian have produced *no* information regarding

14  what they asked or were told about the propriety of their actions -- information that is

15  necessary to assess their "good faith" defenses.   Moreover, Mattel has not raised its

16  alleged good intent as an affirmative defense or claim as MGA has.   Rather, Mattel

17  simply denies *MGA's* contentions that Mattel's claims are time barred.   <u>See, e.g.</u>, <u>Cox</u>

18  <u>v. Administrator U.S. Steel & Carnegie</u>, 17 F.3d 1386, 1419 (11th Cir. 1994), <u>cert</u>

19  <u>denied</u>, 513 U.S. 1110 (1995) ("*Having gone beyond mere denial, affirmatively to*

20  *assert good faith*, USX injected the issue of its knowledge of the law into the case

21  and thereby waived the attorney-client privilege." (emphasis added)).   MGA has

22  impliedly waived the privilege; Mattel has not.

23

24  _____

25  [50]   MGA's Fifth, Sixth and Eighteenth Affirmative Defenses, Amended Answer

26  and Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK)
    Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended

27  Answer and Counterclaims, dated September 19, 2007, at pp. 22, 25, Smyth Dec.,

28  Exh. 4.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court enter an Order (1) finding that MGA and Isaac Larian have impliedly waived the attorney-client and work product privileges as to all documents, communications, and information related to advice they sought and/or received prior to April 27, 2004, regarding the legal propriety of MGA's contracting with Bryant, MGA's or Bryant's obligations to Mattel, and their subsequent copying, development, production and sales of Bratz, and (2) compelling MGA to produce the documents specified herein and overruling the instructions not to answer specified herein.

DATED:  January 23, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _____
   B. Dylan Proctor
   Attorneys for Plaintiff
   Mattel, Inc.

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On January 23, 2008, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION OF PLAINTIFF MATTEL, INC. FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

John W. Keker, Esq.
Michael H. Page, Esq.
Christa M. Anderson, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

**BY FEDEX:** I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or provided for, addressed to the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 23, 2008, at Los Angeles, California.

_Rita Turner_
Rita Turner

07209/2140692.1

PROOFS OF SERVICE

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action,  My business address is Apex Attorney Services, 1055 West Seventh Street, Suite 250, Los Angeles, CA 90017.

On January 23, 2008, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION OF PLAINTIFF MATTEL, INC. FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

Thomas J. Nolan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 So. Grand Ave.
Suite 3400
Los Angeles CA  90071

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote, Esq.
Overland, Borenstein, Scheper & & Kim, LLP
300 S. Grand Avenue, Suite 2750
Los Angeles, CA  90071

**BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 23, 2008, at Los Angeles, California.

07209/2190147.1

PROOFS OF SERVICE