QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff and Counter-
Defendant Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated With Case No. 04-9059 and Case No. 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br><br>DECLARATION OF TIMOTHY L. ALGER IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO REQUESTS FOR PRODUCTION 526 AND 528<br><br>Date:   T.B.D.<br>Time:   T.B.D.<br>Place:  T.B.D.<br><br>**Phase 1:**<br>Discovery Cutoff:   January 28, 2008<br>Pre-Trial Conference:   May 5, 2008<br>Trial Date:   May 27, 2008 |

DECL. OF TIMOTHY L. ALGER ISO MATTEL'S OPP. TO MTC DOCS RESPONSIVE TO RFPs 526 & 528

## DECLARATION OF TIMOTHY L. ALGER

I, Timothy L. Alger, declare as follows:

1.    I am a member of the bar of the State of California and a member of Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.    Mattel's Counterclaims include allegations that MGA Entertainment, Inc. intentionally stole not just specific Mattel property, but also a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure.  Specifically, Mattel alleges that MGA stole its trade secrets in the United States, Mexico and Canada.  Attached as Exhibit 1 is a true and correct copy of the publicly-redacted version of Mattel Inc.'s Second Amended Answer in Case No. 05-2737 and Counterclaims, dated July 12, 2007.

3.    The allegations in Mattel's Counterclaims are based on the acts and omissions of MGA and its employees, not any communications with or documents provided to law enforcement authorities.

4.    Attached as Exhibit 2 is a true and correct copy of the Amended Answer and Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims, dated September 19, 2007 (the "Amended Answer").

5.    MGA raises no defense in its Amended Answer based on communications between Mattel and law enforcement authorities.

6.    Attached as Exhibit 3 is a true and correct copy of MGA's Fifth Set of Requests for the Production of Documents and Things in Case No. 05-2727, dated August 3, 2007, which includes Request for Production Nos. 526, 528 and 529.

7.     In Request for Production No. 526, MGA sought "[a]ll DOCUMENTS that constitute COMMUNICATIONS" between Mattel and "law enforcement authorities in Mexico, Canada or the United States . . . concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA."

8.     In Request for Production No. 528, MGA sought "[a]ll DOCUMENTS that YOU . . . provided to law enforcement authorities in Mexico, Canada and the United States . . . concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA."

9.     In Request for Production No. 529, MGA sought "All DOCUMENTS that support the information and belief alleged in paragraphs 42, 43, 47, 49, 51, 52, 68, 74 and 77 of YOUR COUNTERCLAIMS."

10.     Attached as Exhibit 4 is a true and correct copy of Mattel's Responses to MGA's Fifth Set of Requests for Production, dated September 4, 2007.

11.     In response to Request No. 529, Mattel agreed, subject to and without waiving its objections, to produce non-privileged documents responsive to the request.

12.     In response to Request Nos. 526 and 528, however, Mattel objected, *inter alia*, on the grounds that the documents sought are not relevant to this action or likely to lead to the discovery of admissible evidence and that they duplicated prior requests by MGA.

13.     (Attached as Exhibit 5 is a true and correct copy of Mattel's Corrected Responses to MGA's Fifth Set of Requests for Production, dated January 9, 2008, which included the same objections described above in Paragraph 12.)

1    14.    By letter dated September 25, 2007, David Hurwitz, Esq., counsel for

2    MGA, wrote to me to request that we meet-and-confer regarding Mattel's objections

3    to Request Nos. 526 and 528.  Mr. Hurwitz asserted in the letter, without any

4    support, that the requested documents were relevant to Mattel's RICO and Trade

5    Secret Counterclaims.  Attached as Exhibit 6 is a true and correct copy of Mr.

6    Hurwitz's letter, dated September 25, 2007.

7    15.    On October 2, 2007, I met and conferred by telephone with Mr.

8    Hurwitz, regarding Request Nos. 526 and 528.

9    16.    I informed Mr. Hurwitz during our conference that Mattel had

10   produced documents relating to Mattel's Counterclaims, including the judicial file in

11   criminal proceedings in Mexico, relating to the trade secret thefts in that country,

12   and that some of those materials reflected communications between Mattel and law

13   enforcement.

14   17.    During our conference, I asked Mr. Hurwitz to describe the relevancy

15   of communications with law enforcement authorities, given that no claim or defense

16   arose from those communications.  On behalf of MGA, Mr. Hurwitz did not

17   articulate how the communications had any relevance to this litigation.

18   18.    During our conference, I also informed Mr. Hurwitz that Mattel's

19   communications with law enforcement were privileged.  As a consequence, no

20   claim by MGA could arise from those communications.  For that additional reason,

21   Mattel would not produce additional documents responsive to these requests.  MGA

22   did not respond to this objection, either.

23   19.    To support the allegations in its Counterclaims, Mattel has produced to

24   MGA copies of the following materials:  (i) the judicial file in criminal proceedings

25   in Mexico, relating to the trade secret thefts in that country (approximately 19,400

26   pages); (ii) the materials that Mattel alleges that Carlos Gustavo Machado Gomez,

27   Mariana Trueba Almada and Pablo Vargas San Jose stole in Mexico (approximately

28

1  12,800 pages); and (iii) the materials that Mattel alleges that Janine Brisbois stole in

2  Canada (approximately 2,750 pages). Furthermore, Mattel also has produced to

3  MGA copies of the numerous materials that Mattel alleges that Ron Brawer stole in

4  the United States.

5      20.   By letter dated January 9, 2008, Robert Herrington, Esq., counsel for

6  MGA wrote to my partners Jon D. Corey and B. Dylan Proctor, "to confirm that

7  Mattel's position has not changed" regarding its objections to Request Nos. 526 and

8  528. Mr. Herrington's letter did not articulate how the requested documents were

9  relevant to this litigation. Attached as Exhibit 7 is a true and correct copy of Mr.

10  Herrington's letter, dated January 9, 2008.

11      21.   Attached as Exhibit 8 is a true and correct copy of the Discovery

12  Master's Order Granting in Part and Denying in Part Mattel's Motion for Protective

13  Order Regarding "Polly Pocket" Documents, dated April 19, 2007.

14      22.   Attached as Exhibit 9 is a true and correct copy of the Discovery

15  Master's Order Granting in Part and Denying in Part MGA's Motion to Compel

16  Documents Responsive to First Set of Requests for Production of Documents Dated

17  November 22, 2006, dated May 22, 2007.

18      23.   Attached as Exhibit 10 is a true and correct copy of MGA

19  Entertainment Inc.'s Response to Mattel Inc.'s First Set of Requests for Documents

20  and Things Re Claims of Unfair Competition, dated January 17, 2007.

21         I declare under penalty of perjury under the laws of the United States of

22  America that the foregoing is true and correct.

23         Executed on January 24, 2008, at Los Angeles, California.

24

25

26  Timothy L. Alger

27

28

**EXHIBIT 1**

CONFORMED COPY

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Duane R. Lyons (Bar No. 125091)
5     (duanelyons@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Mattel, Inc.

9                 UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12            Plaintiff,                 Consolidated With Case No. 04-9059 and
                                         Case No. 05-2727
13       v.
                                         MATTEL, INC.'S SECOND AMENDED
14                                       ANSWER IN CASE NO. 05-2727 AND
                                         COUNTERCLAIMS FOR:
15  MATTEL, INC., a Delaware
    corporation,                         1.   COPYRIGHT INFRINGEMENT;
16            Defendant.                 2.   VIOLATION OF THE
                                              RACKETEER INFLUENCED AND
17                                            CORRUPT ORGANIZATIONS
                                              ACT;
18  MGA ENTERTAINMENT, INC. a           3.   CONSPIRACY TO VIOLATE THE
    California corporation,                   RACKETEER INFLUENCED AND
19                                            CORRUPT ORGANIZATIONS
                                              ACT;
20            Plaintiff,                 4.   MISAPPROPRIATION OF TRADE
                                              SECRETS;
21       v.                              5.   BREACH OF CONTRACT;
                                         6.   INTENTIONAL INTERFERENCE
22  MATTEL, INC., a Delaware                  WITH CONTRACT;
    corporation, and DOES 1-10,         7.   BREACH OF FIDUCIARY DUTY;
23                                       8.   AIDING AND ABETTING
              Defendants.                     BREACH OF FIDUCIARY DUTY;
24                                       9.   BREACH OF DUTY OF
                                              LOYALTY;
25

26                                      **PUBLIC REDACTED VERSION**

27                                            **Volume I**

28

2154363.2

EXHIBIT ___1___  PAGE ___5___

SECOND AMENDED ANSWER AND COUNTERCLAIMS

| | | |
|---|---|---|
| 1 | MATTEL, INC., a Delaware corporation, | 10. AIDING AND ABETTING BREACH OF DUTY OF LOYALTY; |
| 2 | | |
| | Counter-claimant, | 11. CONVERSION; |
| 3 | | 12. UNFAIR COMPETITION; AND |
| | v. | 13. DECLARATORY RELIEF |
| 4 | | |
| 5 | MGA ENTERTAINMENT, INC., a California corporation; ISAAC | DEMAND FOR JURY TRIAL |
| 6 | LARIAN, an individual; CARTER BRYANT, an individual; MGA ENTERTAINMENT (HK) LIMITED, | |
| 7 | a Hong Kong Special Administrative Region business entity; MGAE DE | |
| 8 | MÉXICO, S.R.L. DE C.V., a Mexico business entity; CARLOS | |
| 9 | GUSTAVO MACHADO GOMEZ, an individual; and DOES 4 through 10, | |
| 10 | | |
| | Counter-defendants. | |
| 11 | | |
| 12 | AND CONSOLIDATED CASES | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | EXHIBIT __1__ PAGE __6__ |
| 28 | | |

2154363.2

## SECOND AMENDED ANSWER

Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007, Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment, Inc. ("Complaint") as follows:

### Preliminary Statement

The Complaint in this case contravenes Rule 8(a) of the Federal Rules of Civil Procedure in multiple respects. For example, in many places, the Complaint improperly mixes factual averments with argumentative rhetoric. The Complaint also includes a selective recitation of alleged historical facts and "rumor," much of which is both irrelevant and inflammatory in tone and content. In addition, many of the allegations of the Complaint are overly broad, vague or conclusory and include terms which are undefined and which are susceptible to different meanings. Accordingly, by way of a general response, all allegations are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations which are contained in the averment or in the Complaint as a whole. These comments and objections are incorporated, to the extent appropriate, into each numbered paragraph of this Second Amended Answer.

Mattel further submits that the use of the headings throughout the Complaint is improper, and therefore no response to them is required. In the event that a response is required, Mattel denies those allegations.

The Complaint also contains many purported photographs of various items, and it uses one or more headings purporting to describe, either individually or in groups, these various photographs. The images of these photographs contained in the Complaint are all relatively small and some are of less than optimal quality, making it difficult to evaluate the adequacy of the photographs or their fairness and accuracy in depicting what they purport to represent. The Complaint also does not describe the circumstances or time frame in which these photographs were taken,

1 and in many cases does not identify, or does not sufficiently or properly identify, the
2 item depicted in the photographs. All of these factors, as well as the use of these
3 photographs and headings out of context, or with an insufficient context, impair the
4 ability of Mattel to fully respond to these photographs and headings, or to any
5 purported allegations involving, or relying upon, the use of such photographs and
6 accompanying headings. By way of a general response, Mattel therefore does not
7 admit the authenticity of any photograph, or the accuracy or adequacy of any
8 heading, nor does it admit any allegation or inference that is based on, or purports to
9 be based on, any photograph or accompanying heading in the Complaint. Mattel
10 reserves the right to challenge the authenticity of any photograph and the accuracy
11 or adequacy of any heading (either as included in the Complaint or in the context of
12 additional material not included). Further, with reference to all photographs and
13 accompanying headings, or any averments based on the Complaint's use of such
14 photographs and headings, which might be offered into evidence, Mattel specifically
15 reserves its right to object to any use of such photographs, headings, and averments,
16 or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

17         To the extent that Mattel has endeavored to answer any particular
18 allegation containing any such photographs and headings, any admission concerning
19 the item purported to be depicted in such photograph, or described in such headings,
20 shall not constitute an admission that the photograph is authentic, adequate, or
21 admissible, nor that any heading is accurate, adequate, or admissible. All such items
22 purportedly depicted in such photographs, and described in such headings, "speak
23 for themselves". Accordingly, to the extent that any such referenced materials are
24 deemed allegations against Mattel, they are denied.

25                                    <u>Responses</u>

26         1.      Answering paragraph 1 of the Complaint, Mattel admits that
27 plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California
28 corporation with a principal place of business in Van Nuys, California.

2154363.2

EXHIBIT   1   PAGE   8            -4-
                                 SECOND AMENDED ANSWER AND COUNTERCLAIMS

1    2.  Answering paragraph 2 of the Complaint, Mattel admits that

2 Mattel is a Delaware corporation with a principal place of business in El Segundo,

3 California.

4    3.  Answering paragraph 3 of the Complaint, Mattel denies that

5 there has been wrongful conduct on its part and states that it is without knowledge

6 or information sufficient to form a belief as to the truth or falsity of the remaining

7 allegations set forth therein and, on that basis, denies them.

8    4.  Answering paragraph 4 of the Complaint, Mattel admits that

9 plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and

10 (c), California Business and Professions Code §§ 17200 *et seq.*, California Business

11 and Professions Code § 14330 and California common law, denies that plaintiff is

12 entitled to any relief thereunder and denies the truth of the remaining allegations set

13 forth in paragraph 4.

14    5.  Answering paragraph 5 of the Complaint, Mattel admits that it is

15 subject to personal jurisdiction in this District and denies the truth of the remaining

16 allegations set forth in paragraph 5.

17    6.  Answering paragraph 6 of the Complaint, Mattel admits that

18 venue is proper in this District and denies the truth of the remaining allegations set

19 forth in paragraph 6.

20    7.  Answering paragraph 7 of the Complaint, Mattel admits that

21 MGA has filed the instant lawsuit and denies the truth of the remaining allegations

22 set forth in paragraph 7.

23    8.  Answering paragraph 8 of the Complaint, Mattel states that it is

24 without knowledge or information sufficient to form a belief as to the truth or falsity

25 of the allegations regarding MGA's history set forth therein and, on that basis,

26 denies them, states that MGA has made conflicting representations, including in

27 sworn statements, that are at odds with the allegations of the Complaint and denies

28 the truth of the remaining allegations set forth in paragraph 8.

1      9.     Answering paragraph 9 of the Complaint, Mattel admits that

2   MGA filed this action, states that Mattel's web site and corporate governance

3   policies speak for themselves and denies the truth of the remaining allegations set

4   forth in paragraph 9.

5      10.    Answering paragraph 10 of the Complaint, Mattel admits that it

6   is the world's most successful toy company, states that the first doll in its BARBIE

7   line was publicly introduced in 1959 and that BARBIE-branded dolls have been the

8   world's best-selling toys, states that Mattel's sales and stock price speak for

9   themselves, and denies the truth of the remaining allegations set forth in paragraph

10   10.

11      11.    Answering paragraph 11 of the Complaint, Mattel admits that

12   Adrienne Fontanella is the former president for girls' toys at Mattel, states that it is

13   without knowledge or information sufficient to form a belief as to the truth or falsity

14   of the allegations regarding an alleged statement by Ms. Fontanella, and denies the

15   truth of the remaining allegations set forth in paragraph 11.

16      12.    Answering paragraph 12 of the Complaint, Mattel is without

17   knowledge or information sufficient to form a belief as to the truth or falsity of the

18   allegations regarding alleged statements by unidentified "analysts," states that

19   Mattel's sales and stock price speak for themselves, and denies the truth of the

20   remaining allegations set forth in paragraph 12.

21      13.    Answering paragraph 13 of the Complaint, Mattel admits that Jill

22   Barad became President and Chief Executive Officer of Mattel in January 1997, that

23   Mattel acquired Tyco Industries, Inc. ("Tyco") in March 1997, that Mattel acquired

24   Pleasant Company in 1998, Mattel acquired the Learning Company in May 1999,

25   that Mattel acquired Purple Moon in 1999, that the MATCHBOX brand was owned

26   by Tyco, that the AMERICAN GIRL line of dolls was made by Pleasant Company

27   at the time of that entity's acquisition, and denies the truth of the remaining

28   allegations set forth in paragraph 13.

EXHIBIT __1__ PAGE __10__

-6-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1          14.    Answering paragraph 14 of the Complaint, Mattel states that its

2  public announcements speak for themselves, and denies the truth of the remaining

3  allegations set forth therein.

4          15.    Answering paragraph 15 of the Complaint, Mattel states that its

5  stock price and its public announcements speak for themselves, and denies the truth

6  of the remaining allegations set forth therein.

7          16.    Answering paragraph 16 of the Complaint, Mattel states that its

8  stock price speaks for itself, states that it is without knowledge or information

9  sufficient to form a belief as to the truth or falsity of the allegations regarding the

10  alleged views of unnamed "analysts" and "[i]nvestors," and denies the truth of the

11  remaining allegations set forth therein.

12         17.    Answering paragraph 17 of the Complaint, Mattel admits that

13  Ms. Barad resigned in February 2000.

14         18.    Answering paragraph 18 of the Complaint, Mattel admits that

15  Robert Eckert became Chairman and Chief Executive Officer of Mattel in May 2000

16  and that Mr. Eckert previously was employed at Kraft Foods, Inc. for 23 years, is

17  without knowledge or information sufficient to form a belief as to the truth or falsity

18  of the allegations regarding the views of unnamed "[i]nvestors" and others, and

19  denies the truth of the remaining allegations set forth in paragraph 18.

20         19.    Answering paragraph 19 of the Complaint, Mattel admits that the

21  *Wall Street Journal* published an article on August 10, 2000 the content of which

22  speaks for itself, and denies the truth of the remaining allegations set forth therein.

23         20.    Answering paragraph 20 of the Complaint, Mattel admits that it

24  disposed of the Learning Company in October 2000, states that its sales and

25  revenues speak for themselves, states that the remainder of the allegations contained

26  therein are characterizations, not factual assertions, and therefore no response is

27  necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is

28  required, denies the truth of any remaining allegations set forth in paragraph 20.

2154363.2

EXHIBIT   \   PAGE   \ \ 

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1       21.   Answering paragraph 21 of the Complaint, Mattel admits that

2 products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and

3 other product lines and states that the remainder of the allegation contained

4 therein—consisting of a sentence fragment—is unintelligible and on that basis

5 denies the truth of any such remaining allegation set forth therein.

6       22.   Answering paragraph 22 of the Complaint, Mattel admits that

7 products in plaintiff's "Bratz" line compete with Mattel products, states that the

8 remainder of the allegations contained therein are characterizations, not factual

9 assertions, and that therefore no response is necessary under Fed. R. Civ. P. 8(b)

10 and, to the extent any further response is required, denies the truth of any remaining

11 allegations set forth therein.

12       23.   Answering paragraph 23 of the Complaint, Mattel states that

13 MGA has made conflicting statements, including in sworn statements, that are

14 inconsistent with the allegations set forth in paragraph 23 of the Complaint and

15 states that it is therefore without knowledge or information sufficient to form a

16 belief as to the truth or falsity of the allegations set forth therein and, on that basis,

17 denies them.

18       24.   Answering paragraph 24 of the Complaint, Mattel states that the

19 "look" of the referenced dolls speak for themselves and denies the truth of the

20 remaining allegations set forth therein.  By way of further answer, Mattel states that

21 the photographs and their accompanying caption on page 7 of the Complaint are

22 false and misleading to the extent they are intended to suggest that MGA has

23 produced or used a consistent packaging shape or look or that it has protectible

24 rights in the matters depicted in the photographs.

25       25.   Answering paragraph 25 of the Complaint, Mattel admits that

26 Bratz dolls are between approximately 9.5 to 10 inches in height, states that the

27 appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were

28 intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz"

1   dolls "looked like no other" and denies the truth of the remaining allegations set

2   forth in paragraph 25.

3         26.   Answering paragraph 26 of the Complaint, Mattel states that the

4   use of the term "classic" is unintelligible, since Mattel has designed and sold

5   different dolls using different heads and with different fashions and themes over the

6   years, and denies the truth of any remaining allegations.  By way of further answer,

7   Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the

8   Complaint is misleading in that it depicts one of the doll heads that have been used

9   as part of the BARBIE line for many years, and therefore ignores that Mattel has

10   long designed and sold an array of different BARBIE line dolls that use different

11   doll heads, including doll heads which depict different ethnicities, and that are

12   dressed in different clothing and fashion styles.

13         27.   Answering paragraph 27 of the Complaint, Mattel admits that

14   MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

15   denies that MGA originated or otherwise has rights to that phrase, admits that one

16   audience for products in the "Bratz" line has been "tweens" and denies the truth of

17   the remaining allegations set forth in paragraph 27.

18         28.   Answering paragraph 28 of the Complaint, Mattel admits that

19   certain "Bratz" dolls have won certain awards, the terms of which speak for

20   themselves, states that it is without knowledge or information sufficient to form a

21   belief as to the truth or falsity of the allegations regarding the "awards" MGA claims

22   and, on that basis, denies them, denies that plaintiff has protectible rights and denies

23   the truth of any remaining allegations set forth in paragraph 28.

24         29.   Answering paragraph 29 of the Complaint, Mattel admits that

25   dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that

26   Mattel has or has ever had a "stranglehold" on any market, states that the market

27   allegations contained in paragraph 29 are vague and ambiguous, including without

28   limitation in that the allegations fail to specify what products among the parties'

1   respective lines are being referred to and what time period is being referred to, and

2   denies the truth of any remaining allegations set forth in paragraph 29.

3           30.   Answering paragraph 30 of the Complaint, Mattel admits that

4   MGA has been a licensee of Mattel, states that the market allegations are vague and

5   ambiguous, including without limitation in that the allegations fail to specify what

6   products are being referred to and what time periods or points in time are being

7   referred to, and states that the remainder of the allegations contained therein are

8   characterizations, not factual assertions, and therefore no response is necessary

9   under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies

10  the truth of any remaining allegations set forth in paragraph 30.

11          31.   Answering paragraph 31 of the Complaint, Mattel states that the

12  allegations contained therein are characterizations, not factual assertions, and

13  therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any

14  further response is required, denies the truth of the allegations set forth in paragraph

15  31.

16          32.   Answering paragraph 32 of the Complaint, Mattel denies the

17  truth of the allegations set forth therein.

18          33.   Answering paragraph 33 of the Complaint, Mattel denies the

19  truth of the allegations set forth therein.

20          34.   Answering paragraph 34 of the Complaint, Mattel states that it

21  has released various MY SCENE dolls, including MY SCENE dolls named

22  "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY

23  SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE

24  dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff

25  has protectible rights, states that MGA has made conflicting representations that are

26  at odds with the allegations of the Complaint and that it is therefore without

27  knowledge or information sufficient to form a belief as to the truth or falsity of the

28  allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,

1   denies them, and denies the truth of the remaining allegations set forth therein.  By

2   way of further answer, Mattel states that the photographs and their accompanying

3   captions on page 10 of the Complaint are misleading and false to the extent they are

4   intended to suggest that a particular Mattel doll has been changed over time as

5   purportedly depicted.  Among other things, Mattel has long designed and sold an

6   array of different BARBIE line dolls using different doll heads, and the photographs

7   encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been

8   used, and continues to be used, as part of the BARBIE line.  In addition, the

9   photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll

10  character called BARBIE that continues to be sold and/or marketed with that head,

11  and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY

12  SCENE doll character separate and apart from the one depicted in the "circa 2002"

13  image (and is not a revised character as plaintiff apparently attempts to imply).

14       35.     Answering paragraph 35 of the Complaint, Mattel admits that

15  Mattel released a product line called FLAVAS, states that the appearance of the

16  FLAVAS dolls speaks for themselves, states that it is without knowledge or

17  information sufficient to form a belief as to the truth or falsity of the allegations

18  regarding the  "rumor" relied upon by plaintiff and the undefined "media"

19  purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel

20  has abandoned the FLAVAS line, and denies the truth of the remaining allegations

21  set forth in paragraph 35.

22       36.     Answering paragraph 36 of the Complaint, Mattel denies the

23  truth of the allegations set forth therein.

24       37.     Answering paragraph 37 of the Complaint, Mattel denies the

25  truth of the allegations set forth therein.  By way of further answer, Mattel states that

26  the unnumbered photographs and their accompanying captions on pages 11 through

27  16 of the Complaint -- which apparently were included to purportedly support the

28  allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel

2154363.2

EXHIBIT ___1___ PAGE __15__

-11-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  specifically denies -- are false and misleading.  Among other things, the heads

2  depicted are among an array of different doll heads that Mattel has used, and

3  continues to use, over the course of many years.  Moreover, the images purport to

4  compare different Mattel doll lines to show alleged changes in appearance even

5  though, in fact, each of the heads are currently sold and/or marketed to the public.

6  The "Blonde" series of photographs encaptioned "original" and "recent" MY

7  SCENE is further and specifically misleading in that it purports to compare two

8  differently named and outfitted dolls in the MY SCENE doll line, both of which

9  continue to be sold and/or marketed.

10         38.    Answering paragraph 38 of the Complaint, Mattel states that the

11  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

12  denies that MGA was the originator of or the first to use the eye shape or makeup

13  depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has

14  copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations

15  contained in paragraph 38.  By way of further answer, Mattel states that the

16  unnumbered photographs and accompanying caption on page 13 of the Complaint

17  are false and misleading.  Among other things, the purported "Original Mattel 'My

18  Scene' Eye" is one of the eye and makeup designs that Mattel has used over the

19  course of many years, and Mattel continues to sell and/or market dolls using the eye

20  and makeup design depicted therein.

21         39.    Answering paragraph 39 of the Complaint, Mattel states that the

22  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

23  denies that MGA was the originator of or the first to use the eye shape or makeup

24  purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has

25  copied "the 'BRATZ' eye," states that the relevant dolls speak for themselves and

26  denies the truth of the remaining allegations contained in paragraph 39.  By way of

27  further answer, Mattel states that the unnumbered photographs and accompanying

28  captions on page 14 of the Complaint are false and misleading.  Among other things,

21154363.2

1   the purported "New Mattel 'My Scene' Eye" is one of the eye and makeup designs
2   that Mattel has used over the course of many years, and Mattel continues to sell
3   and/or market dolls using the eye and makeup design depicted on page 14 of the
4   Complaint.

5         40.    Answering paragraph 40 of the Complaint, Mattel denies the
6   truth of the allegations therein.  By way of further answer, Mattel states that the
7   unnumbered photographs and their accompanying captions on pages 15 to 16 are
8   false and misleading.  Among other things, the heads depicted are among an array of
9   different doll heads that Mattel has used, and continues to use, over the course of
10  many years.  Moreover, the photographs purport to compare different Mattel doll
11  lines to show alleged changes in appearance even though, in fact, each of the heads
12  are currently sold and/or marketed to the public.  The "Blonde" series of
13  photographs encaptioned "original" and "recent" MY SCENE is further and
14  specifically misleading in that it purports to compare two differently named and
15  outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or
16  marketed.

17        41.    Answering paragraph 41 of the Complaint, Mattel denies the
18  truth of the allegations set forth therein.

19        42.    Answering paragraph 42 of the Complaint, Mattel admits that the
20  photographs purport to depict two packages that were, among others, part of the MY
21  SCENE line, state that the packages speak for themselves and denies the truth of any
22  remaining allegations set forth therein.

23        43.    Answering paragraph 43 of the Complaint, Mattel admits that the
24  photograph purports to depict one of the packages that were, among others, part of
25  the MY SCENE line, states that the parties' packages speak for themselves, states
26  that MGA has failed to establish that it originated, or has protectible rights in, an
27  "open and transparent style" for packaging and denies the truth of the remaining
28  allegations set forth therein.

1      44.    Answering paragraph 44 of the Complaint, Mattel admits that

2 one photograph purports to depict one of the packages that were, among others, part

3 of the MY SCENE line, admits that the other photograph purports to depict one of

4 the packages that were, among others, used as part of the Bratz line, states that the

5 parties' packages speak for themselves, denies that MGA originated, or has

6 protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in the

7 Complaint and denies the truth of any remaining allegations set forth therein.

8      45.    Answering paragraph 45 of the Complaint, Mattel admits that

9 one photograph purports to depict one of the packages that were, among others, part

10 of the MY SCENE line, admits that the other photograph purports to depict one of

11 the packages that were, among others, used as part of the Bratz line, states that the

12 parties' packages speak for themselves, denies that MGA originated, or has

13 protectible rights in, the packaging depicted in the Complaint and denies the truth of

14 any remaining allegations set forth therein.

15      46.    Answering paragraph 46 of the Complaint, Mattel states that it

16 has utilized a wide variety of packaging styles and shapes over the years, states that

17 the relevant packaging speaks for itself, states that MGA lacks protectible rights in

18 "non-rectangular shaped box" packaging or in the other elements MGA claims in

19 paragraph 46, and denies the truth of the remaining allegations set forth therein.

20      47.    Answering paragraph 47 of the Complaint, Mattel denies that

21 any alleged "theme" is "MGA's theme," denies that MGA originated or has rights to

22 any theme and denies the truth of the remaining allegations set forth therein.

23      48.    Answering paragraph 48 of the Complaint, Mattel admits that it

24 released a doll called "Chillin Out!", states that it has released such themed dolls

25 over the course of many years, admits MGA released a "Wintertime Wonderland"

26 themed doll, denies that MGA originated or has rights to such theme, states that the

27 relevant products speak for themselves and denies the truth of the remaining

28 allegations set forth therein.

1   49. Answering paragraph 49 of the Complaint, Mattel admits that it

2 released a doll called "Night on the Town", states that it has released such themed

3 dolls over the course of many years, admits MGA released a "Formal Funk" themed

4 doll, denies that MGA originated or has rights to such theme, states that the relevant

5 products speak for themselves and denies the truth of the remaining allegations set

6 forth therein.

7   50. Answering paragraph 50 of the Complaint, Mattel admits that it

8 released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch Tiki

9 Lounge", states that it has released such themed dolls and products over the course

10 of many years, admits that MGA released a "Sun-Kissed Summer" themed doll and

11 playset, denies that MGA originated or has rights to such theme, states that the

12 relevant products speak for themselves and denies the truth of the remaining

13 allegations set forth therein.

14   51. Answering paragraph 51 of the Complaint, Mattel admits that it

15 has aired television commercials for its MY SCENE line, states that such

16 commercials speak for themselves, denies the truth of the remaining allegations set

17 forth therein and specifically denies that MGA was the originator of or has rights to

18 commercials "combining live action with animated sequences" set to "pop music

19 and lyrics".

20   52. Answering paragraph 52 of the Complaint, Mattel denies the

21 truth of the allegations set forth therein.

22   53. Answering paragraph 53 of the Complaint, Mattel admits that it

23 released a MY SCENE "Sound Lounge", admits that MGA released a product called

24 "Runway Disco", states that the relevant products speak for themselves, denies that

25 it "imitated MGA's trapezoidal box," denies that MGA has rights thereto, and

26 denies the truth of the remaining allegations set forth therein.

27   54. Answering paragraph 54 of the Complaint, Mattel denies the

28 truth of the allegations set forth therein.

EXHIBIT ___1___ PAGE ___19___

1       55.    Answering paragraph 55 of the Complaint, Mattel admits that,

2  among the styling heads it has produced and sold over the course of many years, it

3  released a MY SCENE styling head, admits that MGA released a styling head called

4  "Funky Fashion Makeover Head", states that the relevant products speak for

5  themselves, denies that MGA has protectible rights and denies the truth of the

6  remaining allegations set forth in paragraph 55.

7       56.    Answering paragraph 56 of the Complaint, Mattel is without

8  knowledge or information sufficient to form a belief as to the truth or falsity of the

9  allegations set forth therein because plaintiff fails to identify the alleged instances of

10  confusion, including the source of the unidentified picture titled "Hairstyle practice",

11  and on that basis, denies them, and denies the truth of any remaining allegations set

12  forth in paragraph 56.

13       57.    Answering paragraph 57 of the Complaint, Mattel admits that it

14  has aired television commercials for its MY SCENE line, states that such

15  commercials speak for themselves and denies the truth of the remaining allegations

16  set forth therein.

17       58.    Answering paragraph 58 of the Complaint, Mattel admits that

18  MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

19  denies that MGA originated that phrase or otherwise has rights to it, states that

20  Mattel's web site speaks for itself and denies the truth of the remaining allegations

21  set forth therein.

22       59.    Answering paragraph 59 of the Complaint, Mattel admits that,

23  among the plush products that it has produced and sold over the course of many

24  years, it has released plush dogs as part of its MY SCENE "Miami Getaway"

25  themed product line, states that Mattel has for many years sold plush pets of the type

26  used with its MY SCENE dog, admits that MGA has released various Bratz pets,

27  states that MGA was not the originator of and has no rights to the features and other

28

215436 EXHIBIT ____ PAGE 2͏ᴼ

-16-

1  elements described therein, states that the relevant products speak for themselves

2  and denies the truth of the remaining allegations set forth therein.

3       60.    Answering paragraph 60 of the Complaint, Mattel admits that,

4  among the plush toys that it has released over the course of many years, its MY

5  SCENE dog has been sold in packaging depicted (in part) on page 22 of the

6  Complaint, states that Mattel has for many years sold plush pets and other plush

7  products in packaging of the type used with its MY SCENE dog, admits that MGA

8  has released a "Bratz" dog, states that MGA was not the originator of and has no

9  rights to the packaging described therein, states that the relevant packages speak for

10 themselves and denies the truth of the remaining allegations set forth therein.

11      61.    Answering paragraph 61 of the Complaint, Mattel denies that it

12 has intended to cause any consumer confusion and states that it is without

13 knowledge or information sufficient to form a belief as to the truth or falsity of the

14 allegations set forth therein concerning unnamed retailers, customers and others

15 because plaintiff fails to identify any source for the matters alleged and, on that

16 basis, denies them and denies the truth of any remaining allegations set forth therein.

17      62.    Answering paragraph 62 of the Complaint, Mattel denies that it

18 has intended to cause any confusion and states that it is without knowledge or

19 information sufficient to form a belief as to the truth or falsity of the allegations set

20 forth therein concerning alleged comments and conversations because plaintiff fails

21 to identify any source for the alleged comments and conversations and, on that

22 basis, denies them, and denies the truth of any remaining allegations set forth

23 therein.

24      63.    Answering paragraph 63 of the Complaint, Mattel denies that it

25 has intended to cause any confusion and states that it is without knowledge or

26 information sufficient to form a belief as to the truth or falsity of the allegations set

27 forth therein because plaintiff fails to identify any source for the alleged comments

28

2154363.2

EXHIBIT ____ PAGE 21 ____

-17-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  and conversations and, on that basis, denies them, and denies the truth of any

2  remaining allegations set forth therein.

3         64.    Answering paragraph 64 of the Complaint, Mattel denies that it

4  has intended to cause any confusion and states that it is without knowledge or

5  information sufficient to form a belief as to the truth or falsity of the allegations set

6  forth therein because plaintiff fails to identify any source for the alleged comments

7  and conversations and, on that basis, denies them, and denies the truth of any

8  remaining allegations set forth therein.

9         65.    Answering paragraph 65 of the Complaint, Mattel denies the

10  truth of the allegations set forth therein.

11        66.    Answering paragraph 66 of the Complaint, Mattel admits that it

12  sued a competitor in the German courts for unfair competition for copying various

13  Mattel BARBIE line products, states that such claims exclusively arose under and

14  were the subject of German law, states that since that time the Federal Supreme

15  Court has rejected the contention made by MGA in paragraph 66 that

16  "systematically copying and borrowing elements" from competing dolls supports a

17  claim for unfair competition, and denies the truth of the remaining allegations set

18  forth therein.

19        67.    Answering paragraph 67 of the Complaint, Mattel denies the

20  truth of the allegations set forth therein.

21        68.    Answering paragraph 68 of the Complaint, Mattel admits that it

22  has released dolls called "Wee 3 Friends," admits that MGA has released dolls

23  called "4-Ever Best Friends," states that the relevant products speak for themselves,

24  denies that MGA's packaging is distinctive, denies that MGA has protectible rights

25  thereto and denies the truth of the remaining allegations set forth in paragraph 68.

26        69.    Answering paragraph 69 of the Complaint, Mattel admits that its

27  Fisher Price division has released, among other dolls called "Little Mommy," the

28  "Little Mommy Potty Training Baby Doll," admits that MGA has released a

1   "Mommy's Little Patient" doll and denies the truth of the remaining allegations set

2   forth therein.

3          70.     Answering paragraph 70 of the Complaint, Mattel admits that it

4   has released die-cast cars and other products called "Acceleracers" as part of its

5   HOT WHEELS line, admits that MGA has released products called "AlienRacers,"

6   denies that MGA was the originator of or has rights to the elements and matters

7   described in paragraph 70, states that the relevant products speak for themselves and

8   denies the truth of the remaining allegations set forth therein.

9          71.     Answering paragraph 71 of the Complaint, Mattel admits that it

10  has aired commercials relating to "Acceleracers," states that such commercials

11  speak for themselves, denies the truth of the remaining allegations set forth therein

12  and specifically denies that MGA originated or has rights to commercials and other

13  matters described therein.

14         72.     Answering paragraph 72 of the Complaint, Mattel states that its

15  web site speaks for itself, denies the truth of the remaining allegations contained in

16  paragraph 72 and specifically denies that Mattel intended to create confusion in the

17  marketplace.

18         73.     Answering paragraph 73 of the Complaint, Mattel denies the

19  truth of the allegations set forth therein.

20         74.     Answering paragraph 74 of the Complaint, Mattel denies the

21  truth of the allegations set forth therein.

22         75.     Answering paragraph 75 of the Complaint, Mattel admits that it

23  has reminded certain former employees who became employed by MGA by letter of

24  their contractual and fiduciary obligation to maintain the secrecy of all Mattel

25  confidential and proprietary business information, states that such letters were

26  prepared and sent to their recipients in good faith contemplation of litigation, admits

27  that it filed a complaint for declaratory relief against Ronald Brawer in Los Angeles

28  Superior Court, entitled Mattel, Inc. v. Brawer, Case No. BC323381, on October 21,

1  2004, states that pursuant to the Court's Order of August 25, 2005 it need not

2  respond to the allegations in paragraph 75 relating to that action, and denies the truth

3  of the remaining allegations set forth in paragraph 75.

4          76.    Answering paragraph 76 of the Complaint, Mattel states that

5  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

6  including such acts that are lawful in foreign nations, and denies the truth of

7  allegations set forth therein.

8          77.    Answering paragraph 77 of the Complaint, Mattel states that

9  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

10  including such acts that are lawful in foreign nations, and denies the truth of the

11  allegations set forth therein.

12          78.    Answering paragraph 78 of the Complaint, Mattel states that it is

13  without knowledge or information sufficient to form a belief as to the truth or falsity

14  of the allegations regarding MGA's claimed "shortage of doll hair" and, on that

15  basis, denies them and denies the truth of the remaining allegations set forth therein.

16          79.    Answering paragraph 79 of the Complaint, Mattel states that

17  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

18  including such acts that are lawful in foreign nations, and denies the truth of

19  allegations set forth therein.

20          80.    Answering paragraph 80 of the Complaint, Mattel denies the

21  truth of the allegations set forth therein.

22          81.    Answering paragraph 81 of the Complaint, Mattel admits that

23  NPD Funworld ("NPD") supplies sales statistics in *inter alia* the toy, PC games and

24  video games industries, admits that to Mattel's knowledge NPD restricts the use of

25  its subscriber information, states that MGA was sued by NPD and states that it is

26  without knowledge or information sufficient to form a belief as to the truth or falsity

27  of the allegations regarding the need of unspecified "toy companies" for NPD

28

2154363.2

EXHIBIT ___1___ PAGE ___24___

-20-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  statistics and, on that basis, denies them and denies the truth of any remaining
2  allegations set forth therein.

3         82.    Answering paragraph 82 of the Complaint, Mattel denies the
4  truth of the allegations set forth therein.

5         83.    Answering paragraph 83 of the Complaint, Mattel states that it is
6  without knowledge or information sufficient to form a belief as to the truth or falsity
7  of the allegations set forth therein because MGA fails to quantify its annual
8  subscription fees and, on that basis, denies them.

9         84.    Answering paragraph 84 of the Complaint, Mattel states that it is
10  without knowledge or information sufficient to form a belief as to the truth or falsity
11  of the allegations set forth therein and, on that basis, denies them.

12         85.    Answering paragraph 85 of the Complaint, Mattel states that
13  MGA was sued by NPD, states that it is without knowledge or information sufficient
14  to form a belief as to such nature and grounds for such litigation (to which Mattel
15  was not a party) and, on that basis, denies the allegations relating thereto, and denies
16  the truth of the remaining allegations set forth therein.

17         86.    Answering paragraph 86 of the Complaint, Mattel denies the
18  truth of the allegations set forth therein.

19         87.    Answering paragraph 87 of the Complaint, Mattel admits that the
20  Children's Advertising Review Unit ("CARU") is the children's arm of the
21  advertising industry's self-regulation program, states that compliance with CARU's
22  Privacy Program can provide FTC-approved Safe Harbor under the Children's
23  Online Privacy Protection Act ("COPPA"), and denies the truth of the remaining
24  allegations set forth therein.

25         88.    Answering paragraph 88 of the Complaint, Mattel admits that it
26  is one of dozens of CARU Supporters and denies the truth of the remaining
27  allegations set forth therein.

28

2154363.2

EXHIBIT  1   PAGE  25

-21-

1    89.   Answering paragraph 89 of the Complaint, Mattel denies the
2  truth of the allegations set forth therein.

3    90.   Answering paragraph 90 of the Complaint, Mattel states that it is
4  without knowledge or information sufficient to form a belief as to the truth or falsity
5  of the allegations as to the consequences to MGA of MGA's violations of CARU
6  standards and, on that basis, denies them.

7    91.   Answering paragraph 91 of the Complaint, Mattel states that it is
8  without knowledge or information sufficient to form a belief as to the truth or falsity
9  of the allegations as to the consequences to MGA of MGA violation of CARU
10  standards and, on that basis, denies them.

11    92.   Answering paragraph 92 of the Complaint, Mattel admits that the
12  Toy Industry Association, Inc. ("TIA") is a toy industry trade association, admits
13  that at certain times TIA has given awards called the People's Choice Toy of The
14  Year or the Toy of The Year Award, denies that Mattel wrongfully influenced TIA
15  and states that it is without knowledge or information sufficient to form a belief as
16  to the truth or falsity of the remaining allegations set forth therein and, on that basis,
17  denies them.

18    93.   Answering paragraph 93 of the Complaint, Mattel states that the
19  allegations set forth therein are vague and ambiguous, including in that they fail to
20  properly identify the years in which the referenced awards were given and/or the
21  particular product which won such awards, and accordingly lacks knowledge or
22  information sufficient to form a belief as to the truth or falsity of the allegations set
23  forth therein and, on that basis, denies them.

24    94.   Answering paragraph 94 of the Complaint, Mattel admits that
25  Neil Freidman was the chairman of TIA from approximately May 2002 to May
26  2004, states that Fischer Price is a division of Mattel and denies the truth of the
27  remaining allegations set forth therein.

28

2154363.2

-22-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1       95.   Answering paragraph 95 of the Complaint, Mattel admits that

2 Hokey Pokey Elmo won the Toy of the Year Award and denies the truth of the

3 remaining allegations set forth therein.

4       96.   Answering paragraph 96 of the Complaint, Mattel states that it is

5 without knowledge or information sufficient to form a belief as to the truth or falsity

6 of the allegations set forth therein and, on that basis, denies them.

7       97.   Answering paragraph 97 of the Complaint, Mattel denies the

8 truth of the allegations set forth therein.

9       98.   Answering paragraph 98 of the Complaint, Mattel denies the

10 truth of the allegations set forth therein.

11       99.   Answering paragraph 99 of the Complaint, Mattel denies the

12 truth of the allegations set forth therein.

13       100.   Answering paragraph 100 of the Complaint, Mattel denies the

14 truth of the allegations set forth therein.

15       101.   Answering paragraph 101 of the Complaint, Mattel repeats its

16 responses contained in paragraphs 1 through 100 of this Second Amended Answer

17 and incorporates them by reference as though fully and completely set forth herein.

18       102.   Answering paragraph 102 of the Complaint, Mattel denies the

19 truth of the allegations set forth therein and specifically denies that MGA's alleged

20 trade dress is distinctive.

21       103.   Answering paragraph 103 of the Complaint, Mattel denies the

22 truth of the allegations set forth therein and specifically denies that MGA's alleged

23 trade dress is distinctive.

24       104.   Answering paragraph 104 of the Complaint, Mattel denies the

25 truth of the allegations set forth therein.

26       105.   Answering paragraph 105 of the Complaint, Mattel denies the

27 truth of the allegations set forth therein.

28

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 1 PAGE 27

1        106.   Answering paragraph 106 of the Complaint, Mattel denies the

2  truth of the allegations set forth therein.

3        107.   Answering paragraph 107 of the Complaint, Mattel denies the

4  truth of the allegations set forth therein.

5        108.   Answering paragraph 108 of the Complaint, Mattel denies the

6  truth of the allegations set forth therein and specifically denies that plaintiff is

7  entitled to injunctive relief.

8        109.   Answering paragraph 109 of the Complaint, Mattel repeats its

9  responses contained in paragraphs 1 through 108 of this Second Amended Answer

10  and incorporates them by reference as though fully and completely set forth herein.

11        110.   Answering paragraph 110 of the Complaint, Mattel denies the

12  truth of the allegations set forth therein.

13        111.   Answering paragraph 111 of the Complaint, Mattel denies the

14  truth of the allegations set forth therein.

15        112.   Answering paragraph 112 of the Complaint, Mattel denies the

16  truth of the allegations set forth therein.

17        113.   Answering paragraph 113 of the Complaint, Mattel denies the

18  truth of the allegations set forth therein.

19        114.   Answering paragraph 114 of the Complaint, Mattel denies the

20  truth of the allegations set forth therein.

21        115.   Answering paragraph 115 of the Complaint, Mattel denies the

22  truth of the allegations set forth therein.

23        116.   Answering paragraph 116 of the Complaint, Mattel denies the

24  truth of the allegations set forth therein.

25        117.   Answering paragraph 117 of the Complaint, Mattel denies the

26  truth of the allegations set forth therein and specifically denies that plaintiff is

27  entitled to injunctive relief.

28

EXHIBIT __1__ PAGE __28__

-24-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

118. Answering paragraph 118 of the Complaint, Mattel denies the truth of the allegations set forth therein.

119. Answering paragraph 119 of the Complaint, Mattel repeats its responses contained in paragraphs 1 through 118 of this Second Amended Answer and incorporates them by reference as though fully and completely set forth herein.

120. Answering paragraph 120 of the Complaint, Mattel denies the truth of the allegations set forth therein.

121. Answering paragraph 121 of the Complaint, Mattel denies the truth of the allegations set forth therein.

122. Answering paragraph 122 of the Complaint, Mattel denies the truth of the allegations set forth therein.

123. Answering paragraph 123 of the Complaint, Mattel denies the truth of the allegations set forth therein and specifically denies that plaintiff is entitled to injunctive relief.

124. Answering paragraph 124 of the Complaint, Mattel repeats its responses contained in paragraphs 1 through 123 of this Second Amended Answer and incorporates them by reference as though fully and completely set forth herein.

125. Answering paragraph 125 of the Complaint, Mattel denies the truth of the allegations set forth therein.

### General Denial

Unless specifically admitted herein, Mattel denies the truth of each and every allegation set forth in plaintiff's Complaint and specifically denies that plaintiff is entitled to any relief against Mattel.

## Affirmative Defenses

By alleging the Affirmative Defenses set forth below, Mattel does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

### First Affirmative Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff has no valid, enforceable or protectible rights or interest in the alleged trade dress or other matters asserted, including without limitation in that plaintiff has failed to establish that its alleged trade dress is distinctive as to plaintiff.

### Third Affirmative Defense

Plaintiff's claims, including without limitation plaintiff's claims based upon alleged extra-territorial acts, are barred in whole or in part by lack of subject matter jurisdiction.

### Fourth Affirmative Defense

Plaintiff's claims are barred in whole or in part by plaintiff's unclean hands.

### Fifth Affirmative Defense

Plaintiff's claims are barred in whole or in part by virtue of Mattel's prior-creation of the elements and other matters asserted in the Complaint.

## Sixth Affirmative Defense

Plaintiff's claims are barred in whole or in part by its lack of standing.

## Seventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the applicable statutes of limitation and the doctrine of laches.

## Eighth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrines of waiver, estoppel and acquiescence.

## Ninth Affirmative Defense

Plaintiff's claims are barred in whole or in part by Mattel's constitutional rights of free speech, petitioning and association, including without limitation by the litigation privilege as protected by and/or codified in *inter alia* Section 47(b) of the California Civil Code, the *Noerr-Pennington* doctrine, the common interest privilege and by other privileges.

## Tenth Affirmative Defense

Plaintiff's claims are barred in whole or in part by Mattel's federal and state constitutional rights of free speech, including without limitation under the First Amendment of the United States Constitution.

## Eleventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the competitor privilege.

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __ PAGE 3

2154363.2

## Twelfth Affirmative Defense

Plaintiff's claims are in whole or in part preempted by the Copyright Act and barred by the *Sears-Compco* doctrine.

## Thirteenth Affirmative Defense

Plaintiff's requested relief, including plaintiff's requests for punitive and/or enhanced damages, are barred in whole or in part because all of Mattel's actions were in good faith.

## Fourteenth Affirmative Defense

Plaintiff's damages, if any, were not caused by Mattel and are not attributable to the acts or omissions of Mattel.

## Fifteenth Affirmative Defense

Plaintiff has failed to mitigate its damages, if any.

## Additional Defenses

Mattel has insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. Mattel reserves the right to amend this Second Amended Answer to add, delete, or modify additional defenses based on legal theories which may or will be divulged through clarification of the Complaint, through discovery, through change or clarification of the governing law or through further legal analysis of plaintiff's positions in this litigation.

## Prayer for Relief

WHEREFORE, Mattel prays for relief as follows:

1          1.      That the Complaint be dismissed with prejudice;

2          2.      That plaintiff take nothing by reason of the Complaint against

3   Mattel and that judgment be entered in Mattel's favor;

4          3.      That Mattel recover its costs and attorneys' fees; and

5          4.      That this Court award such other and further relief as it deems

6   just and proper.

7

8                              **COUNTERCLAIMS**

9          Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007,

10  and incorporating its [Proposed] Amended Complaint dated November 19, 2006,

11  Mattel, Inc. alleges as follows:

12                          **Preliminary Statement**

13         1.      For years MGA Entertainment, Inc. has engaged in a pattern of

14  stealing and using Mattel, Inc.'s property and trade secrets.  MGA's use of the

15  stolen property and trade secrets caused and continues to cause significant harm to

16  Mattel.  MGA first stole "Bratz," a fashion doll, from Mattel, and then continued

17  stealing Mattel's confidential and proprietary information to fuel MGA's growth.

18         2.      Carter Bryant conceived, created and developed Bratz designs

19  while he was employed by Mattel as a doll designer.  He concealed his Bratz work

20  from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee.

21  As MGA knows, Mattel owns the Bratz designs that Bryant made.  As the rightful

22  owner of those Bratz designs, Mattel has registered copyrights for them and seeks

23  damages arising from MGA's repeated infringement of those copyrights.

24         3.      Emboldened by the success of its illegal conduct, MGA has

25  repeated—and even expanded—its pattern of theft on numerous occasions.  For

26  example, in or about 2004, MGA decided to expand into Mexico.  To do so, and

27  operating from its Southern California offices, MGA hired away three key Mattel

28  employees in Mexico, who, on their way out, stole virtually every category of

2154363.2

-29-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT ___1___ PAGE ___33___

1 Mattel's sensitive and trade secret business plans and information for the Mexican
2 market, as well as a significant quantity of sensitive and trade secret information
3 for Mattel's U.S. and worldwide businesses, and took them to MGA. Armed with
4 Mattel's confidential business plans and methods, MGA claimed to have increased
5 its market share in Mexico alone by 90% in a single year.

6        4.    In 2005, MGA needed help in Canada. So MGA, again
7 operating from its Southern California headquarters, hired Janine Brisbois from
8 Mattel. At that time, Ms. Brisbois was responsible for Mattel's account with Toys
9 'R Us ("TRU") and Wal-Mart. MGA gave her responsibility for those same
10 accounts, and she took from Mattel documents containing proprietary advertising,
11 project, sales, customer and strategy information for not only Canada, but for the
12 United States. Eliminating any doubt that MGA then proceeded to use those stolen
13 materials, Brisbois subsequently accessed and modified certain of those Mattel
14 documents while employed by MGA.

15        5.    These are not the only instances of such misconduct, which
16 MGA orchestrated and carried out from its headquarters in this District. Counter-
17 defendants have engaged in an ongoing, widespread pattern of illegal acts,
18 consisting of inducing Mattel employees to steal Mattel's confidential information
19 or other property and take it with them to MGA to further MGA's business interests
20 and to harm Mattel.

21 **Jurisdiction**

22        6.    This Court has federal question jurisdiction over this action
23 pursuant to 28 U.S.C. §§ 1331, 17 U.S.C. §§ 101 *et seq.*, and 18 U.S.C. § 1964(c).
24 This Court has supplemental jurisdiction over Mattel's state law claims pursuant to
25 28 U.S.C. § 1367.

26 **Venue**

27        7.    Venue is proper in this District pursuant to 28 U.S.C.
28 §§ 1391(b)-(d), 1391(f) and 1400(a) and 18 U.S.C. § 1965.

---

**Parties**

8.     Mattel is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in El Segundo, California.

9.     Counter-defendant MGA Entertainment, Inc. ("MGA") is a corporation organized and existing under the laws of the State of California, with its principal place of business in Van Nuys, California.  Mattel is informed and believes, and on that basis alleges, that ABC International Traders, Inc. is a predecessor corporation to MGA and that until September 16, 2002, MGA was incorporated and known as ABC International Traders, Inc.  Upon the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope of MGA Entertainment, Inc.'s involvement and complicity in the conduct alleged therein and having designated MGA Entertainment, Inc. in the Complaint as Doe 1 and having discovered its involvement and complicity, Mattel hereby amends its Complaint by substituting MGA Entertainment, Inc. for the fictitious Doe name Doe 1.

10.    Counter-defendant Carter Bryant ("Bryant") is an individual who formerly was employed by Mattel and has worked for and continues to work as a contactor for MGA.  Mr. Bryant currently resides in the State of Missouri.

11.    Counter-defendant MGA Entertainment (HK) Limited is a business entity organized and existing under the laws of the Hong Kong Special Administrative Region, with its principal place of business in Hong Kong.  Upon the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope of involvement and complicity of MGA Entertainment (HK) Limited in the conduct alleged therein and having designated MGA Entertainment (HK) Limited in the Complaint as Doe 2 and having discovered its involvement and complicity, Mattel hereby amends its Complaint by substituting MGA Entertainment (HK) Limited for the fictitious Doe name Doe 2.

1    12.   Counter-defendant MGAE de Mexico, S.R.L. de C.V. ("MGA

2    de Mexico") is a business entity organized and existing under the laws of Mexico,

3    with its principal place of business in Mexico City, Mexico.

4    13.   Mattel is informed and believes, and on that basis alleges, that

5    Counter-defendant Larian is the President and CEO of MGA and an individual

6    residing in the County of Los Angeles.   Upon the filing of the Complaint, Mattel,

7    being ignorant of the nature, extent and scope of involvement and complicity of

8    Larian in the conduct alleged therein and having designated Larian in the

9    Complaint as Doe 3 and having discovered his involvement and complicity, Mattel

10   hereby amends its Complaint by substituting Larian for the fictitious Doe name

11   Doe 3.

12   14.   Counter-defendant Carlos Gustavo Machado Gomez is an

13   individual who is employed by Counter-defendant MGA and who, on information

14   and belief, currently resides in the County of Los Angeles.

15   15.   The true names and capacities of Counter-defendants sued herein

16   as DOES 4 through 10, inclusive, are unknown to Mattel, which therefore sues said

17   Counter-defendants by such fictitious names.  Mattel will amend its pleadings to

18   allege their true names and capacities when the same are ascertained.

19                                **Factual Background**

20   **I.    MATTEL**

21   16.   Mattel manufactures and markets toys, games, dolls and other

22   consumer products.  Harold Mattson and Eliot and Ruth Handler founded Mattel in

23   1945.  The name of the company was created by incorporating the names of two of

24   its founders, "MATT-son" and "EL-liot."  Originating from the Handlers' garage in

25   Southern California, the company greatly expanded its operations following World

26   War II.  During the next several decades, Mattel became famous for producing

27   high-quality products at reasonable prices.

28

EXHIBIT ____ PAGE 3Y

17.   Critical to Mattel's success is its ability to design and develop new products.  Mattel invests millions of dollars in product design and development and introduces hundreds of new products each year.  Mattel maintains a 180,000 square-foot design center in El Segundo, California, that houses hundreds of designers, sculptors, painters and other artists, who work exclusively to create the products on which Mattel's business depends.

18.   Mattel also has invested substantial amounts over many years to develop its business methods and practices, including, without limitation, its marketing and advertising research, plans, methods and processes; its business research and forecasts; its costs, budgets, pricing, credit terms, deal terms and finances; its manufacturing, distribution, and sales methods and processes; and its inventory methods and processes.  These represent a material part of the intellectual infrastructure of Mattel and are highly valuable.

## II.   MGA ENTERTAINMENT

19.   MGA is also a toy manufacturer.  MGA began as a consumer electronics business, but expanded into the toy business with licenses to sell handheld electronic games.  By approximately late 1999 or early 2000, MGA developed a strategy to expand its business and compete directly with Mattel by launching a fashion doll line, so it stole a fashion doll that was owned by Mattel – "Bratz."

20.   MGA intentionally stole not just specific Mattel property, such as Bratz designs, prototypes and related materials, but also a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure.  MGA's rapid growth was not organic, but rather was based upon its theft of Bratz.  As a result, MGA lacked an appropriate intellectual infrastructure for a company of its size and it became increasingly difficult to manage.  To deal with these problems, as detailed below, time and time again MGA simply stole Mattel's proprietary business methods, practices and information.  This not only

1   allowed MGA to avoid expending time, money and effort necessary to build a

2   legitimate business, but also allowed MGA to unfairly compete against Mattel by

3   taking Mattel's playbook.

4   **III. MGA STEALS A NEW LINE OF FASHION DOLLS FROM MATTEL**

5     21. Carter Bryant is a former Mattel employee. Bryant joined Mattel

6   in September 1995, where he worked in Mattel's Design Center as a BARBIE

7   product designer. In or about April 1998, Bryant resigned his position with Mattel

8   and moved to Missouri to live with his parents. Late in 1998, Bryant applied to

9   Mattel to be rehired. On January 4, 1999, he began working at Mattel in Mattel's

10   Design Center, again as a product designer, for Mattel's BARBIE collectibles line.

11     22. Upon his return to Mattel in January 1999, Bryant executed an

12   Employee Confidential Information and Inventions Agreement (the "Employment

13   Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

14     23. Pursuant to his Employment Agreement and as a condition of

15   and in consideration for his employment, Bryant agreed, among other things, that

16   he held a position of trust with Mattel, that the designs and inventions he created

17   during his Mattel employment (with certain exceptions not relevant here) were

18   owned by Mattel, and that he would be loyal to the company by agreeing not to

19   assist or work for any competitor of Mattel while he was employed by Mattel.

20     24. On January 4, 1999, Bryant also executed Mattel's Conflict of

21   Interest Questionnaire (the "Conflict Questionnaire"). Among other things, Bryant

22   certified in the Conflict Questionnaire that, other than as disclosed, he had not

23   worked for any competitor of Mattel in the prior twelve months and had not

24   engaged in any business venture or transaction involving a Mattel competitor that

25   could be construed as a conflict of interest. Bryant understood what the Conflict

26   Questionnaire required because, among other things, he disclosed on it the

27   freelance work he had performed while in Missouri for Ashton-Drake, which is

28

2154363.2

EXHIBIT __1__ PAGE 38   -34-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   unrelated to the conduct alleged herein.  A true and correct copy of the Conflict

2   Questionnaire executed by Bryant is attached hereto as Exhibit B.

3            25.   Pursuant to the Conflict Questionnaire, Bryant also agreed that

4   he would immediately notify his supervisor of any change in his situation that

5   would cause him to change any of the foregoing certifications.  Despite this

6   obligation, at no time did Bryant disclose to Mattel that he was engaging in any

7   business venture or transaction with MGA or any other Mattel competitor.

8            26.   More specifically, while Bryant was employed by Mattel, Bryant

9   and other Counter-defendants misappropriated and misused Mattel property and

10  Mattel resources for the benefit of Bryant and MGA.  Such acts included, but are

11  not limited to, the following:

12            a.   using his exposure to Mattel development programs to

13  create the concept, design and name of Bratz;

14            b.   using Mattel resources, and while employed by Mattel,

15  Bryant worked by himself and with other Mattel employees and contractors to

16  design and develop Bratz, including without limitation by creating drawings and

17  three-dimensional models of Bratz dolls, and fashion designs for the dolls'

18  associated clothing and accessories; and

19            c.   using Mattel resources, and while employed by Mattel,

20  Bryant took steps to assist MGA to produce Bratz dolls.

21            27.   During the time that he was employed by Mattel and thereafter,

22  Bryant concealed these actions from Mattel, including by failing to notify his

23  supervisor of the conflict of interest he created when he began working on MGA's

24  behalf and when he began receiving payments from MGA.  Bryant additionally

25  enlisted other Mattel employees to perform work on Bratz during the time he was

26  employed by Mattel and, by all indications, in at least some cases led them to

27  believe that they were performing work on a project for Mattel.

28

2154363.2

EXHIBIT   1   PAGE 39

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1          28.   Bryant also made affirmative misrepresentations to Mattel

2   management and employees immediately before his departure from Mattel on

3   October 20, 2000.  For example, during his last few weeks at Mattel, Bryant told

4   his co-workers and supervisors that he was going to leave Mattel for "non-

5   competitive" pursuits.  Bryant's representations to his supervisors and his co-

6   workers were false.  Bryant knew at the time that those representations were false

7   and made those false statements to conceal from Mattel the fact that he was already

8   working with MGA and that he had contracted with MGA to assign Bratz works to

9   MGA and to provide design and development services to MGA, a Mattel

10  competitor.

11         29.   As a result of the efforts of Bryant and other Mattel employees

12  working on Bratz (which were done without Mattel's knowledge), the Bratz dolls

13  had been designed and were far along in development during the time that Bryant

14  was employed by Mattel and prior to the time that Bryant left Mattel on

15  October 20, 2000.  Not only did Bryant create and develop designs for the dolls as

16  well as other aspects of the products such as their fashion accessories during the

17  time he was employed by Mattel, but MGA showed Bratz prototypes and/or

18  product to both focus groups and retailers in November 2000, less than three weeks

19  after Bryant left Mattel.  Bryant, Larian and others at MGA arranged these

20  meetings while Bryant was still employed by Mattel.

21         30.   Bryant and MGA employees also repeatedly and continuously

22  communicated with employees of MGA Entertainment (HK) Limited on subjects

23  such as design and manufacturing of Bratz.  On information and belief, at all

24  material times, MGA Entertainment (HK) Limited has maintained regular and

25  continuous contacts with persons in the County of Los Angeles; it regularly has

26  shipped products that it manufactures, or that are manufactured for it, to the County

27  of Los Angeles; and such products have been distributed to retailers and sold to

28  consumers in the County of Los Angeles.

EXHIBIT 1
PAGE 40

-36-
SECOND-AMENDED ANSWER AND COUNTERCLAIMS

1      31.   Bratz also were shown to retailers at the Hong Kong Toy Fair in
2   January 2001. By early 2001, only a few months after Bryant resigned from
3   Mattel, MGA began having the Bratz fashion doll line and accessories
4   manufactured and then, shortly thereafter, began selling them at retail.

5      32.   Since 2001, MGA has distributed and sold Bratz and Bratz-
6   related products throughout the world. Mattel is informed and believes that MGA
7   also licenses Bratz to third parties. Mattel is also informed and believes that MGA
8   derives annual revenue from its sales and licenses of Bratz in excess of $500
9   million. Mattel is further informed and believes that MGA and Bryant claim
10  current ownership of Bratz, and all copyrights and copyright registrations attendant
11  thereto. MGA continues to market, sell and license Bratz and has expressed an
12  intention to continue to do so.

13     33.   Mattel is informed and believes that MGA and Larian
14  encouraged, aided and financed Bryant to develop Bratz, knowing full well that
15  Bryant was still employed by Mattel at the time and that by performing such work,
16  including design-related work, for his own benefit and/or the benefit of MGA,
17  Bryant would be, and was, in breach of his contractual, statutory and common law
18  duties to Mattel. Mattel is also informed and believes that MGA proceeded to aid
19  and encourage Bryant to develop Bratz with the goal of obtaining a valuable
20  fashion doll line that would be commercially successful in the competitive, multi-
21  billion dollar market for fashion dolls.

22     34.   Pursuant to Bryant's contract with Mattel, among other things,
23  Mattel is the true owner of Bratz designs and works, including those specifically
24  that were conceived, created or reduced to practice during Bryant's Mattel
25  employment as well as all designs and works that are or have been derived
26  therefrom. Counter-defendants' continued use, sale, distribution and licensing of
27  Bratz thus infringes upon Mattel's rights, injures Mattel and unlawfully enriches the
28  Counter-defendants.

2154363.2

EXHIBIT 1   PAGE 41

-37-

35.     Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel to suspect or to know that it was the true owner of Bratz. Their acts of concealment include, but are not limited to, concealing the fact that Bryant conceived, created, designed and developed Bratz while employed by Mattel, including by tampering with and defacing documents which showed that, in fact, Bryant was a Mattel employee while he was working for and with MGA; concealing the fact that Bryant worked with and assisted MGA during the time Bryant was employed by Mattel and was compensated for that assistance; concealing that Bryant was providing consulting services to MGA; concealing Bryant's role in Bratz by falsely claiming that Larian and others were the creators of Bratz; and concealing the fact that Mattel was the true owner of Bratz by, among other things, filing fraudulent registrations and/or amendments to registrations with the United States Copyright Office claiming MGA as the author of Bratz as a work for hire and altering relevant dates on such documents to further obscure the true facts of when the works were created.

36.     Because of Bryant's and MGA's acts of concealment and Bryant's misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had worked with MGA, or assisted MGA, while he still employed by Mattel until approximately November 24, 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's agreement with MGA which showed that the date of Bryant's agreement with MGA predated Bryant's departure from Mattel. It was then, as a result, that Mattel learned for the first time that Bryant had secretly aided, assisted and worked for and with MGA while employed at Mattel and in violation of his Mattel Employment Agreement. Specifically, Bryant's agreement with MGA obligated Bryant to provide product design services to MGA on a "top priority" basis. Bryant's agreement with MGA also provided that Bryant would receive royalties and other consideration for sales of products on which Bryant provided aid or assistance; that all works and services furnished by Bryant under

SECOND AMENDED ANSWER AND COUNTERCLAIMS

21543632

EXHIBIT   1   PAGE   42

1  the agreement, including those he purportedly provided while still a Mattel

2  employee, purportedly would be considered "works for hire" of MGA; and that all

3  intellectual property rights to preexisting works by Bryant, including Bratz designs,

4  purportedly were assigned to MGA.

5  **IV.  MGA STEALS MATTEL TRADE SECRETS IN MEXICO**

6       37.   On information and belief, in or about late 2003 or early 2004,

7  MGA decided to open business operations in Mexico.  Faced with the difficult task

8  of developing an overall strategy for expanding into a market in which it had only a

9  nominal presence and no operations, MGA elected to steal Mattel's plans, strategy

10 and business information for the Mexican market and materials related to Mattel's

11 worldwide business strategies.  As detailed below, MGA and Larian approached

12 three employees of Mattel's Mexican subsidiary ("Mattel Mexico"), enticed them to

13 steal Mattel's most sensitive business planning materials, and then hired them to

14 assist in establishing and running MGA's new Mexican subsidiary.

15 **A.    MGA Hires Three Senior Mattel Employees in Mexico**

16      38.   Carlos Gustavo Machado Gomez ("Machado") was the Senior

17 Marketing Manager, Boys Division, for Mattel Mexico, a position of trust and

18 confidence.  He was employed at Mattel Mexico from April 1, 1997 until April 19,

19 2004.  His duties included short, medium and long-term marketing planning,

20 generating product sales projections, and assisting in creation of the media plan.  In

21 his position, Machado had access to highly confidential and sensitive marketing

22 and product development information.  Machado had an employment agreement

23 with Mattel in which he agreed to maintain the confidentiality of Mattel's protected

24 information.  Mattel's policies also required Machado to protect Mattel's

25 proprietary information and not to disclose it to competitors.

26      39.   Mariana Trueba Almada ("Trueba") was the Senior Marketing

27 Manager, Girls Division, for Mattel Mexico, a position of trust and confidence.

28 She was employed at Mattel Mexico from November 3, 1997 until April 19, 2004.

3154363.2

-39-

EXHIBIT __1__   PAGE __43__

1    Like Machado, her duties included short, medium and long-term marketing

2    planning, generating product sales projections, and assisting in creation of the

3    media plan. In her position, Trueba had access to highly confidential and sensitive

4    marketing and product development information. Trueba had an employment

5    agreement with Mattel in which she agreed to maintain the confidentiality of

6    Mattel's protected information. Mattel's policies also required Trueba to protect

7    Mattel's proprietary information and not to disclose it to competitors.

8            40.    Pablo Vargas San Jose ("Vargas") was a Senior Trade Marketing

9    Manager with Mattel Mexico, a position of trust and confidence. He was employed

10   at Mattel Mexico from March 29, 2001 until April 19, 2004. Vargas was

11   responsible for ensuring that point-of-sale promotions were carried out, analyzing

12   the results of such promotions, negotiating promotion budgets, and generally

13   managing promotional activities. Vargas also had access to highly confidential and

14   sensitive marketing and product development information. Vargas had an

15   employment agreement with Mattel in which he agreed to maintain the

16   confidentiality of Mattel's protected information. Mattel's policies also required

17   Vargas to protect Mattel's proprietary information and not to disclose it to

18   competitors.

19           41.    Beginning in late 2003 or early 2004, Machado, Trueba and

20   Vargas began planning to leave Mattel Mexico to join MGA. In connection with

21   that plan, and with the encouragement of Larian and other MGA officers operating

22   in the United States, they began accessing, copying and collecting proprietary

23   Mattel documents to take with them. On April 19, 2004, Machado, Trueba and

24   Vargas each resigned their positions with Mattel, effective immediately. They

25   stated that they had been hired by a Mattel competitor, but refused to identify that

26   competitor. In fact, they had been offered and accepted employment by MGA to

27   establish and run MGA's new operation in Mexico.

28

**B.    Machado, Trueba and Vargas Stole Dozens of Confidential Trade Secret Marketing and Sales Documents for MGA's Benefit**

42.    Following these resignations, Mattel discovered that Machado, Trueba and Vargas had been in frequent telephonic and e-mail contact with MGA personnel, including Larian, for over three months prior to their resignations. The primary vehicle for these communications in furtherance of their "plot" was an America Online e-mail account with the address <plot04@aol.com>. On information and belief, during this time, Machado, Trueba and Vargas supplied Larian with certain Mattel confidential and proprietary information in order to prove their value to MGA and to improve their negotiating position vis-à-vis their respective employment contracts with MGA.

43.    In March 2004, Machado, Trueba and Vargas were making plans to travel from Mexico to Los Angeles to meet with MGA personnel in person prior to resigning their positions at Mattel. Also, by at least March 3, 2004, Machado, Trueba and Vargas were discussing with MGA personnel, including Larian, specific details regarding setting up MGA offices in Mexico City. On information and belief, prior to their resignations, Larian and others at MGA directed Machado, Trueba and Vargas to steal virtually all Mattel confidential and proprietary information that they could access and bring it with them to MGA. This was reflected in, among things, e-mail messages that Mattel had discovered after Machado, Trueba and Vargas had resigned. For example, on March 22, 2006, approximately one month before they resigned, Machado, Trueba and Vargas wrote an e-mail message from the <plot04@aol.com> e-mail account addressed to Larian, MGA's General Manager Susan Kuemmerle and another MGA officer Thomas Park. In that e-mail message, Machado, Trueba and Vargas sought to prove their value in this endeavor to MGA by writing: "Attached you will find our analysis for future discussion. We will be available during the nights of the week after 16:30 Los Angeles time . . . ." In another e-mail message, showing that the

EXHIBIT  **1**  PAGE  **45**

-41-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  participants intentionally sought to maximize the damage to Mattel from their

2  conduct, Kuemmerle wrote to Larian and Park: "Gustavo, Mariana and Pablo want

3  to resign (all at the same time, and you can believe my smile!) next Wednesday."

4      44.   Beginning on April 12, 2004, a week before his resignation and

5  after numerous communications and meetings with Larian and other MGA

6  personnel, Machado began transferring additional Mattel confidential and

7  proprietary information to a portable USB storage device (also know as a "thumb

8  drive") that he connected to his Mattel computer. On Friday, April 16, 2004, the

9  last business day before he gave notice, Machado copied at least 70 sensitive

10  documents to the portable USB storage device.

11      45.   Starting on April 12, 2004, Vargas also copied a host of

12  confidential and proprietary materials to a portable USB storage device, including

13  sales plans, sales projections and customer profiles.

14      46.   On April 16, 2004, Trueba also copied Mattel confidential and

15  proprietary information to a portable USB storage device connected to her Mattel

16  computer.

17      47.   With full knowledge that she was going to leave Mattel for a

18  competitor, Trueba also took steps to increase further her access to Mattel's

19  confidential information shortly before her resignation. For example, just four days

20  before leaving, Trueba went out of her way to seek to attend a meeting at which

21  Mattel personnel analyzed BARBIE programs for the United States, Canada and

22  South America. Two days before her resignation, she contacted both a Mattel

23  employee located in El Segundo, California and Mattel's advertising agency to

24  request updated confidential information about advertising plans for BARBIE. On

25  information and belief, Trueba acted at the direction of MGA and Larian and did so

26  in order to obtain further information that would allow MGA to obtain unfair

27  competitive advantage over Mattel.

28

2154363.2

EXHIBIT __1__ PAGE __46__

-42-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

48.   Machado, Trueba and Vargas stole virtually every type of document a competitor would need to enter the Mexican market and to unlawfully compete with Mattel in Mexico, in the United States, and elsewhere.  They stole global internal future line lists that detailed anticipated future products, production and shipping costs for Mattel products; daily sales data for Mattel products; customer data; sales estimates and projections; marketing projections; documents analyzing changes in sales performance from 2003 to 2004; budgets for advertising and promotional expenses; strategic research reflecting consumer responses to products in development; media plans; consumer comments regarding existing Mattel products customer discounts and terms of sale; customer inventory level data; assessments of promotional campaign success; market size historical data and projections; marketing plans and strategies; merchandising plans; retail pricing and marketing strategies; and other similar materials.

49.   The stolen data was not limited to the Mexican market.  The information stolen would, and did, give MGA an unfair competitive advantage in the United States and around the world.  Further, the stolen information was not located exclusively in Mexico, but included confidential and proprietary information that resided on Mattel computers in Phoenix, Arizona and El Segundo, California, and/or documents which were originally created by personnel in El Segundo.  Included among these stolen documents was one of Mattel's earliest internal global line lists, which included information for BARBIE products for the upcoming year and included, for each product, the expected profit margin, advertising expenditures, expected volume and marketing strategy.  On information and belief, Machado, Trueba or Vargas delivered that internal line list to Larian or another MGA officer during their negotiations with MGA.

50.   MGA has used the information taken from Mattel to obtain an unfair advantage over Mattel, including in both the United States and Mexico.  In fact, MGA later publicized its claim that, in 2005, it had increased its Mexican

-43-

EXHIBIT _____1_____ PAGE _____4 7____

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  market share by 90 percent over the prior year. This increase came at the expense

2  of Mattel, which lost market share during 2004 in Mexico and was forced to

3  increase its advertising and promotional spending to offset further losses.

4      51.   Machado, Trueba and Vargas attempted to conceal their

5  widespread theft of Mattel's proprietary information. For example, Machado ran a

6  software program on his Mattel personal computer in an attempt to erase

7  information, including information that would reveal the addresses to which he had

8  sent, or from which he had received, e-mail messages. On information and belief,

9  for the same purpose Machado also damaged the hard drive of the personal

10 computer that he used at Mattel.

11     52.   On information and belief, on April 19, 2004, immediately after

12 Machado, Trueba and Vargas simultaneously resigned, they traveled from Mexico

13 to Los Angeles to meet with MGA personnel, including Larian, in person.

14     53.   Mattel notified Mexican authorities about the theft of its trade

15 secret and confidential information. On October 27, 2005, the Mexican Attorney

16 General Office obtained a search warrant from the Mexican Federal Criminal

17 Courts for MGA's facilities in Mexico City. In that search, the Mexican authorities

18 found and seized from MGA's offices both electronic and paper copies of a large

19 number of documents containing Mattel trade secrets, including those that Mattel

20 discovered through its forensic investigations, plus many others that Mattel had not

21 known had been stolen.

22     54.   Based on Machado's "performance" in Mexico, Isaac Larian

23 subsequently promoted Machado and he was transferred to MGA's main office in

24 Van Nuys, California. On information and belief, Machado currently resides in the

25 County of Los Angeles, California.

26

27 EXHIBIT __1__ PAGE __46__

28

2154363.2

-44-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

**V.    MGA HIRES MATTEL'S SENIOR VICE PRESIDENT AND GENERAL MANAGER TO FACILITATE ITS THEFT AND USE OF MATTEL'S HIGHLY VALUABLE BUSINESS METHODS AND PRACTICES**

55.    On October 1, 2004, Mattel's Senior Vice President and General Manager, Ron Brawer, left Mattel and joined MGA. Tyco Toys, Inc. ("Tyco"), a predecessor to Mattel, had hired Brawer on April 22, 1996. The same day, Brawer entered into an Employee Invention & Trade Secret Agreement with Tyco. On April 9, 1997, Brawer became a Marketing Director for Mattel in Mount Laurel, New Jersey, and remained bound by his Employee Invention & Trade Secret Agreement.

56.    In January 2003, while Brawer held a position of trust and confidence at Mattel, Mattel's "Code of Conduct" was circulated to all Mattel employees worldwide. Included in the Code of Conduct were statements that:

> Employees and Directors have an obligation to protect the confidentiality of Mattel's proprietary information. Proprietary information is any information not generally known to the public that is useful to Mattel, that would be useful to its competitors or other third parties or that would be harmful to Mattel or its customers if disclosed. Proprietary information includes trade secrets, revenue and profit information and projections, new product information, marketing plans, design and development efforts, manufacturing processes and any information regarding potential acquisitions, divestitures and investments.
>
> We can protect the security of Mattel's proprietary information by limiting access to it. Confidential information should not be discussed with those who are not obligated to maintain the information in confidence and in public places where the

2154363.2

-45-

EXHIBIT __1__ PAGE __49__   SECOND AMENDED ANSWER AND COUNTERCLAIMS

1    information is not likely to be kept secret, such as planes,

2    restaurants and elevators. The obligation to preserve confidential

3    information continues even after employment ends.

4  The Code of Conduct applied to Brawer and required that he meet his obligations

5  under the Code of Conduct.

6       57.    By 2003, Brawer had advanced within Mattel to a Senior Vice

7  President position over customer marketing, a position of trust and confidence. In

8  his executive position, Brawer was provided access to information that was both

9  sensitive and confidential, including, but not limited to, detailed information related

10  to development, manufacture, marketing, pricing, shipping, and performance of

11  Mattel's then-current and anticipated future product lines, and other confidential

12  business plans between Mattel and its most significant retail customers.

13       58.    In December 2003, Alan Kaye, Mattel's Senior Vice President of

14  Human Resources, asked Brawer whether he was discussing potential employment

15  with MGA. Brawer denied that he had been in contact with MGA and represented

16  that he would not talk to MGA. Throughout 2004, Mattel reminded and stressed to

17  its employees, including Brawer, the importance of protecting Mattel's confidential

18  and proprietary materials and information.

19       59.    On March 18, 2004, in response to a survey from the President of

20  Mattel Brands, Matt Bousquette, confirming compliance with Mattel's Code of

21  Conduct, Brawer wrote back that he "applaud[ed] the company's vigorous

22  protection of it's [sic] intellectual property," reflecting Brawer's clear

23  understanding that Mattel required its proprietary information to be kept

24  confidential.

25       60.    In April 2004, Mattel promoted Brawer to Senior Vice

26  President/General Manager. The General Manager position also is an executive

27  position of trust and confidence. The role of a General Manager is to lead a cross-

28  functional "Customer Business Team." Each General Manager is accountable for a

2154363.2

-46-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __1__ PAGE __50__

1   strategic partnership with a key Mattel retailer, covering all aspects of the business,

2   including both traditional toy sales and retail development of licensed products.

3        61.  In or about late May 2004, Brawer began performing General

4   Manager duties, working with one of Mattel's major retail customer accounts.

5   Thereafter, Brawer began receiving information related not only to the Senior Vice

6   President, Customer Marketing position that he still formally held, but also began

7   receiving detailed information related to his role as General Manager.  Brawer

8   began requesting and analyzing detailed information related to Mattel and its four

9   key retail accounts.

10        62.  On September 15, 2004, Brawer left work at noon for observance

11   of Rosh Hashanah.  As Brawer left, he carried a large cardboard box with binders

12   and other materials.  Several hours after his departure, Brawer instructed his

13   assistant to print Mattel's 2004 Sales Plan for one of Mattel's significant customers

14   and to provide it to him, falsely claiming he needed it for a meeting

15        63.  On September 17, 2004, Brawer returned to Mattel and

16   immediately informed his supervisor that he was leaving Mattel, effective October

17   1, 2004, to work for competitor MGA.

18        64.  On September 20, 2004, Mattel hand-delivered a letter to Brawer

19   reminding him of his continuing obligation to preserve the confidentiality of

20   Mattel's proprietary information and trade secrets not only through October 1,

21   2004, but continuing beyond the termination of his employment.

22        65.  At his exit interview on September 29, 2004, Mattel reminded

23   Brawer that he had ongoing duties of confidentiality to Mattel, even after the

24   termination of his employment.  Brawer was given a copy of his Original

25   Confidentiality Agreement, which he had signed on April 22, 1996, and another

26   copy of the Code of Conduct.  During the exit interview, however, Brawer noted

27   that he had not signed the Code of Conduct, which he intended and Mattel

28   understood to mean that Brawer believed he was not bound by Mattel's policy

because he had not signed it. Brawer was unwilling to complete or sign the form that sought to confirm that Brawer understood his ongoing obligations under the Code of Conduct, which included the obligation to preserve the confidentiality of Mattel's proprietary and trade secret information.

66.   On October 1, 2004, Brawer's final day of employment with Mattel, Mattel hand-delivered to Brawer a letter that, among other things, reminded Brawer of his confidentiality obligations to Mattel under the Code of Conduct.

67.   Upon joining MGA, Brawer became its Executive Vice-President of Sales and Marketing. In that role he was responsible for MGA's sales worldwide. As part of those responsibilities, Brawer had and continues to have responsibility for MGA's accounts with the same retailers that he worked with while at Mattel.

68.   Brawer represented during his Mattel exit interview that he had returned all proprietary information to Mattel. That representation was false. On information and belief, Brawer removed proprietary and trade secret information from Mattel that he did not return. Mattel is informed and believes that Brawer did not return to Mattel, for example, the information contained in his contacts file. The contacts file included contact information for Mattel customers, most notably TRU, and extensive contact information for Mattel employees, including titles, e-mail addresses and telephone numbers.

69.   Mattel has recently learned that Brawer has been using that contact information on a regular basis, including within recent months. Since leaving Mattel, Brawer has had contacts with Mattel employees, both by telephone and by electronic mail. Based on his knowledge of Mattel's operations and the roles of certain Mattel employees, he has targeted certain Mattel employees who have broad access to Mattel proprietary information in an effort to induce and encourage them to join MGA and to steal or otherwise wrongfully misappropriate Mattel confidential information and trade secrets. Brawer has done so by

1 promising these Mattel employees salaries 25 percent or more higher than they earn

2 at Mattel and stating to them that they should not be concerned by legal action

3 taken by Mattel to protect its trade secrets and its rights because such claims are

4 hard to prove and easy to defeat.

5 **VI.  MGA STEALS MATTEL TRADE SECRETS IN CANADA**

6       70.   In an effort to increase its market share and sales in Canada and

7 elsewhere, MGA stole Mattel trade secrets regarding Mattel's customers, sales,

8 projects, advertising and strategy, not only for Canada, but the United States and

9 the rest of the world.

10       71.   Janine Brisbois was a Director of Sales for the Girls Division in

11 Canada.  Mattel hired her as a National Account Manager in August 1999.  When

12 she was hired as a Mattel employee, Brisbois agreed that she would preserve and

13 would not disclose Mattel's proprietary or confidential information.  For example,

14 Brisbois agreed:

15       You must keep Mattel's Proprietary Information confidential,

16       and you may only use or disclose such information as necessary

17       to perform your job responsibilities in accordance with Mattel

18       policies.  Your obligation to keep Mattel's Proprietary

19       Information confidential will continue even after any termination

20       of your employment with your employer.

21       . . .

22       Mattel takes steps to maintain the secrecy and confidential nature

23       of Mattel's Proprietary Information and, if a competitor

24       discovered Mattel's Proprietary Information, it could

25       significantly damage Mattel and your Employer.

26       72.   While with Mattel, Brisbois had responsibility for Mattel's

27 account with TRU and later had responsibility for Mattel's Wal-Mart account.  In

28 her capacity as Sales Director-Wal-Mart/CTC/Girls Team, Brisbois had access to

EXHIBIT ___1___ PAGE _53_

1   Mattel confidential and proprietary information regarding Mattel's future product

2   lines, advertising and promotional campaigns and product profitability.

3       73.   On September 26, 2005, Brisbois resigned from Mattel to take a

4   position as Vice President of Sales at MGA.  Mattel is informed and believes that

5   in that position Brisbois has responsibility for MGA's accounts with both TRU and

6   Wal-Mart.  During Brisbois' exit interview she was specifically asked whether she

7   was "taking anything."  Brisbois responded, "No."  Both during and after her exit

8   interview, Brisbois was advised by Mattel of her obligations to preserve Mattel's

9   confidential and proprietary information.

10      74.   Mattel is informed and believes that Brisbois spoke with Isaac

11  Larian, MGA's CEO, on September 22, 2005 at approximately 8:30 p.m., when he

12  called Ms. Brisbois at her home.  Mattel subsequently learned that on the same day

13  that she spoke with Mr. Larian and four days before she resigned, Brisbois copied

14  approximately 45 Mattel documents on to a USB or "thumb" drive with the volume

15  label "BACKPACK."  On information and belief, Brisbois removed the thumb

16  drive from Mattel Canada's office by concealing it in her backpack or gym bag the

17  last time that she left that office.  These documents contained Mattel trade secret

18  and proprietary information, and included:

19      • a document containing the price, cost, sales plan and quantity of every

20          Mattel product ordered by every Mattel customer in 2005 and 2006;

21      • the BARBIE television advertising strategy and information concerning

22          sales increases generated by television advertisements;

23      • competitive analysis of Mattel vis-à-vis its competitors in Canada;

24      • an analysis of Mattel's girls business sales beginning in 2003 and

25          forecasts through 2006;

26      • profit and loss reviews for Mattel's products being sold in Wal-Mart,

27          including margins and profit in not only Canada, but in the United

28          States and Mexico; and

2154363.2

-50-

EXHIBIT ___1___ PAGE ___54___   SECOND AMENDED ANSWER AND COUNTERCLAIMS

- a document containing the product launch dates and related advertising for all Mattel new products between Fall 2005 and Spring 2006.

75. After Mattel discovered that Brisbois had copied these sensitive documents to a thumb drive, Mattel notified Canadian law enforcement authorities. Canadian law enforcement authorities recovered from Brisbois a thumb drive with the volume label "BACKPACK" containing the documents that Brisbois had copied from Mattel's computer system. Mattel later learned that while she was working as a Vice President of Sales at MGA, Brisbois accessed and modified documents on that thumb drive.

76. After joining MGA, Brisbois repeatedly traveled to MGA's offices in Van Nuys, California and met with Larian and Brawer. In February, 2006, knowing that Mattel trade secrets had been seized from MGA's Mexico City offices and that at least three MGA employees were under criminal investigation, MGA nonetheless issued a press release trumpeting its 2005 performance, with Larian himself concluding, "Our international teams in Mexico and Canada have done a fantastic job."

## VII. MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL TO JOIN MGA TO MISAPPROPRIATE MATTEL TRADE SECRETS FOR THE BENEFIT OF MGA

77. In the past few years, MGA has hired directly from Mattel's United States operations at least 25 employees, from Senior Vice-President level to lower level employees. On information and belief, many of these employees were specifically targeted and recruited by MGA, including by Larian and Brawer, based on the Mattel confidential and proprietary information they could access. Many of these employees had access to information that Mattel considers to be highly proprietary and confidential. Mattel believes that some of those former Mattel employees may be observing their obligations not to misappropriate, disclose or use Mattel's confidential and proprietary information. Mattel is informed and



EXHIBIT ___I___   PAGE __55__

1   believes, however, that certain additional employees accessed, copied and took

2   from Mattel confidential and proprietary information, including Mattel's strategic

3   plans; business operations, methods and systems; marketing and advertising

4   strategies and plans; future product lines; product profit margins; and customer

5   requirements. The misappropriated confidential and proprietary information

6   included information that these Mattel employees were not authorized to access.

7   On information and belief, the misappropriated confidential and proprietary

8   information taken from Mattel is being disclosed to and used by MGA for the

9   benefit of MGA and to the detriment of Mattel.

10   **VIII. LARIAN MAKES MISREPRESENTATIONS TO RETAILERS**

11         **ABOUT MATTEL'S PRODUCTS**

12         78.   Counter-defendants have engaged in other illegal practices in

13   their efforts to compete unfairly with Mattel. Larian has a practice of sending e-

14   mail messages to a "Bratz News" distribution list that Larian created or that was

15   created for him. Mattel is informed and believes that the recipients of e-mail

16   messages sent to the "Bratz News" distribution list include members of the media

17   as well as representatives of many of Mattel's most significant customers.

18         79.   On May 12, 2006, Larian sent an e-mail message to the "Bratz

19   News" distribution list that included a reference to Mattel's updated MY SCENE

20   MY BLING BLING product with real gems. Mattel had not publicly announced

21   this product at the time that Larian sent his May 12, 2006 e-mail. In fact, Mattel

22   had guarded the identification of this particular product.

23         80.   Shortly thereafter, Larian engaged in a campaign of calling

24   Mattel's most significant customers, including but not limited to Target and TRU,

25   regarding the MY SCENE MY BLING BLING product with real gems. In an

26   effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING

27   BLING product with real gems, Larian knowingly made false factual statements

28   about that product to each retailer. As of the writing of this Second Amended

2154363.2

-52-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT ___1___ PAGE __54__

1  Answer and Counterclaims, Mattel is aware that Larian represented to each retailer

2  that each was the only retailer to purchase the product and that Mattel would not be

3  supporting the product with television advertising. At the time that Larian made

4  these statements, he knew them to be false. As a result of Larian's

5  misrepresentations, at least one retailer cancelled its order for 75,000 units of the

6  MY SCENE MY BLING BLING product with real gems. Only after Mattel

7  learned of Larian's misrepresentations and was able to correct them was Mattel able

8  to assure the retailer that Larian's representations were false and to persuade the

9  retailer to reinstate the order.

10      81.   Such conduct is not an isolated incident. MGA and Larian, in an

11  effort to gain an unfair competitive advantage, repeatedly issued false and

12  misleading press releases. In these press releases, MGA and Larian have

13  misrepresented Bratz's sales, Bratz's market share, Bratz's position vis-à-vis

14  Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market

15  share of Mattel's BARBIE products.

16                          **CLAIMS FOR RELIEF**

17                           **First Counterclaim**

18                          **Copyright Infringement**

19          **(Against MGA, MGA Entertainment (HK) Limited,**

20               **Larian, Bryant and Does 4 through 10)**

21      82.   Mattel repeats and realleges each and every allegation set forth in

22  paragraphs 1 through 81, above, as though fully set forth at length.

23      83.   Mattel is the owner of copyrights in works that are fixed in

24  tangible media of expression and that are the subject of valid, and subsisting,

25  copyright registrations owned by Mattel. These include, without limitation, the

26  works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-

27  378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-

28

2154363.2

EXHIBIT __1__ PAGE 57

-53-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1 | 378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-
2 | 378-660, VAu 715-270, VAu 715-271 and VAu 715-273.

3 | 84. Counter-defendants have reproduced, created derivative works
4 | from and otherwise infringed upon the exclusive rights of Mattel in its protected
5 | works without Mattel's authorization. Counter-defendants' acts violate Mattel's
6 | exclusive rights under the Copyright Act, including without limitation Mattel's
7 | exclusive rights to reproduce its copyrighted works and to create derivative works
8 | from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

9 | 85. Counter-defendants' infringement (and substantial contributions
10 | to the infringement) of Mattel's copyrighted works is and has been knowingly made
11 | without Mattel's consent and for commercial purposes and the direct financial
12 | benefit of Counter-defendants. Counter-defendants, moreover, have deliberately
13 | failed to exercise their right and ability to supervise the infringing activities of
14 | others within their control to refrain from infringing Mattel's copyrighted works
15 | and have failed to do so in order to deliberately further their significant financial
16 | interest in the infringement of Mattel's copyrighted works. Accordingly, Counter-
17 | defendants have engaged in direct, contributory and vicarious infringement of
18 | Mattel's copyrighted works.

19 | 86. By virtue of defendants' infringing acts, Mattel is entitled to
20 | recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of
21 | suit and attorneys' fees, and all other relief permitted under the Copyright Act.

22 | 87. Counter-defendants' actions described above have caused and
23 | will continue to cause irreparable damage to Mattel, for which Mattel has no
24 | remedy at law. Unless Counter-defendants are restrained by this Court from
25 | continuing their infringement of Mattel's copyrights, these injuries will continue to
26 | occur in the future. Mattel is accordingly entitled to injunctive relief restraining
27 | Counter-defendants from further infringement.

28 |

2154363.2

EXHIBIT ___1___ PAGE __58__

-54-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

**Second Counterclaim**

**Violation of the Racketeer Influenced and Corrupt Organizations Act**

**18 U.S.C. §§ 1962(c) and 1964(c)**

**(Against All Counter-defendants)**

88. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 87, above, as though fully set forth at length.

89. Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas and Brisbois were employed by and associated-in-fact with an enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "MGA Criminal Enterprise"). The MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois). In addition, beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, were employed by and associated-in-fact with a second enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "Bratz Criminal Enterprise").

90. MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and each of them, for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information, by

1    means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully

2    and knowingly conduct and participate, directly and indirectly, in the conduct of

3    the MGA Criminal Enterprise's affairs and, in the case of MGA, MGA

4    Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe Counter-

5    defendants, the Bratz Criminal Enterprise's affairs, through a pattern of

6    racketeering activity. Their actions include multiple, related acts in violation of:

7    18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512

8    (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and

9    foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. §

10   506(a)(1)(A) (criminal copyright infringement).

11          91.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

12   Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

13   Brisbois, and the Other Former Employees, and each of them, shared the common

14   purpose of enabling MGA to obtain confidential, proprietary and otherwise

15   valuable Mattel property through improper means in order to assist MGA in

16   illegally competing with Mattel domestically and throughout the world.

17          92.   The MGA Criminal Enterprise and Bratz Criminal Enterprise as

18   described herein are and have been at all relevant times continuing enterprises

19   because, among other reasons, each is designed to and did unlawfully acquire the

20   confidential business information and property of Mattel and incorporated this

21   information and property into MGA's ongoing business, marketing strategies and

22   business methods, practices and processes. The conduct of each enterprise

23   continues through the date of this Second Amended Answer and Counterclaims and

24   is ongoing by virtue of MGA's continuing use of Mattel's information and property,

25   all to the detriment of Mattel.

26          93.   The pattern of racketeering activity, as defined by 18 U.S.C.

27   §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

28   of continuing criminal activity. This activity consists of multiple acts of

H 54363.2

EXHIBIT  1  PAGE  60

-56-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

racketeering by each member of the MGA Criminal Enterprise and Bratz Criminal Enterprise, is interrelated, not isolated and is perpetrated for the same or similar purposes by the same persons. This activity extends over a substantial period of time, up to and beyond the date of this Second Amended Answer and Counterclaims. These activities occurred after the effective date of 18 U.S.C. §§ 1961 *et seq.*, and the last such act occurred within 10 years after the commission of a prior act of racketeering activity. These racketeering activities included repeated acts of:

(a)   Mail Fraud:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, having devised a scheme or artifice to defraud Mattel of its confidential trade secret information and property by conversion, false representations, concealment and breaches of fiduciary duty, did for the purpose of furthering and executing such a scheme or artifice to defraud, deposited or caused to be deposited matters or things to be sent or delivered by the Postal Service, or any private or commercial interstate carrier, or took or received matters or things therefrom, or knowingly caused matters or things to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other things, the true and correct copies of communications and other evidence included in Exhibit C;

(b) <u>Wire Fraud</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, having devised a scheme or artifice to defraud Mattel of its confidential and trade secret information and property by conversion, false representations, concealment and breaches of fiduciary duty, did for the purpose of furthering and executing such a scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other things, the true and correct copies of communications and other evidence included in Exhibit C;

(c) <u>Tampering With a Witness, Victim or Informant</u>:  Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by:

    i.   altering Bryant's contract with MGA relating to Bratz to conceal evidence that Bryant faxed the contract from the BARBIE COLLECTIBLES department of Mattel, using a fax

EXHIBIT ___1___ PAGE __62__

machine owned by Mattel and while Bryant was employed by Mattel;

ii.    altering numerous original Bratz drawings created by Bryant by adding false and misleading date notations of "8/1998" and "© 8/1998" to the drawings even though the drawings were not created in August 1998; and

iii.    destroying electronic and other evidence, including by destroying evidence previously contained on Carter Bryant's and Isaac Larian's computer hard drives.

Such actions are in violation of 18 U.S.C. § 1512 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

(d)    Interstate and Foreign Travel in Aid of Racketeering Enterprises: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, traveled in interstate and foreign commerce, or used the mail or any facility in interstate or foreign commerce, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of unlawful activity, i.e. bribery, in violation of the laws of the State of California, Cal. Penal Code § 641.3, all in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

(e)    Criminal Copyright Infringement: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by

2154363.2

-59-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _____1_____ PAGE __6__

1    each other and some or all of the remaining members of the MGA

2    Criminal Enterprise, willfully infringed Mattel's copyrights,

3    including with respect to documents containing Mattel trade

4    secret and confidential information, for purposes of commercial

5    advantage and private financial gain, all in violation of 18 U.S.C.

6    § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater

7    particularity in the foregoing paragraphs.

8    94.    The persons alleged herein to have violated 18 U.S.C. § 1962(c)

9    are separate from, though employed by or associated with, MGA, the MGA Group,

10   the Bryant Group, the Mexican Group and the Canadian Group.

11   95.    MGA had a role in the racketeering activity that was distinct

12   from the undertaking of those acting on its behalf.  MGA also attempted to benefit,

13   and did benefit, from the activity of its employees and agents alleged herein, and

14   thus was not a passive victim of racketeering activity, but an active perpetrator.

15   96.    Mattel has been injured in its business or property as a direct

16   and proximate result of the Counter-defendants' and the other enterprise members'

17   violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts

18   constituting the pattern of racketeering activity.

19   97.    As a result of the violations of 18 U.S.C. § 1962(c), by MGA,

20   MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado,

21   Does 4 through 10, Brawer, Trueba, Vargas, Brisbois and the Other Former

22   Employees, Mattel has suffered substantial damages, in an amount to be proved at

23   trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its

24   general and special compensatory damages, plus interest, costs and attorneys, fees,

25   incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

26

27

28

-60-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT ____ 1 ____ PAGE 64

**Third Counterclaim**

**Conspiracy To Violate the Racketeer**

**Influenced And Corrupt Organizations Act**

**(18 U.S.C. §§ 1962(d) and 1964(c))**

**(Against All Counter-defendants)**

98.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 97, above, as though fully set forth at length.

99.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

100.  These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

101.  The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), including acts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18

2154363.2

-61-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT  1  PAGE  65

1   U.S.C. § 2; acts of tampering with witnesses, victims or informants in violation of

2   18 U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of

3   racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; and

4   acts of criminal copyright infringement in violation of 18 U.S.C. § 2319(a) and 17

5   U.S.C. § 506(a)(1)(A).

6       102.   Counter-defendants and the other members of the MGA Criminal

7   Enterprise schemed to defraud Mattel and steal its property and trade secret

8   information by means of false representation, breaches of fiduciary duty,

9   conversation and concealment, as more fully set forth in the foregoing paragraphs.

10      103.   In furtherance of this unlawful conspiracy, and to effect its

11  objectives, Counter-defendants and various co-conspirators committed numerous

12  overt acts, including but not limited to those set forth in the foregoing paragraphs.

13      104.   Mattel has been injured in its business or property as a direct and

14  proximate result of the Counter-defendants' and the other enterprise members'

15  violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts

16  constituting the pattern of racketeering activity.

17      105.   As a result of the conspiracies between and among all Counter-

18  defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has

19  suffered substantial damages, in an amount to be proved at trial. Pursuant to 18

20  U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

21  compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

22  of Counter-defendants' violations of 18 U.S.C. § 1962(d).

23                          **Fourth Counterclaim**

24                    **Misappropriation of Trade Secrets**

25             **(Against Counter-defendants MGA, MGA de Mexico,**

26                  **Larian, Machado and Does 4 through 10)**

27      106.   Mattel repeats and realleges each and every allegation set forth in

28  paragraphs 1 through 105, above, as though fully set forth at length.

2154363.2

-62-

1    107. As used herein, "Trade Secret Material" shall mean the

2    documents, materials and information stolen by Machado, Trueba, Vargas,

3    Brisbois, the Other Former Employees, and other persons acting for, on behalf of or

4    at the direction of MGA and/or Larian. Prior to their theft by Counter-defendants,

5    the Trade Secret Materials gave Mattel a significant competitive advantage over its

6    existing and would-be competitors, including MGA. This advantage, as to MGA,

7    has now been compromised as a result of Counter-defendants' unlawful activities.

8    108. Mattel made reasonable efforts under the circumstances to

9    maintain the confidentiality of the Trade Secret Materials, including by having

10   employees and consultants who may have access the Trade Secret Materials sign

11   confidentiality agreements that oblige them not to disclose the Trade Secret

12   Materials or characteristics of the Trade Secret Materials; by limiting the

13   circulation of said materials within Mattel; by protecting and limiting access to

14   computers with log-in identifications and passwords; by limiting each employee's

15   access to electronic files to those that the particular employee needs to access; by

16   educating employees on the nature of Mattel's information that is confidential and

17   proprietary; and by reminding employees on a regular and periodic basis of their

18   obligation to protect and maintain Mattel's confidential and proprietary

19   information.

20   109. Mattel's Trade Secret Materials derive independent economic

21   value from not being generally known to the public or to other persons who can

22   obtain economic benefit from their disclosure.

23   110. Counter-defendants have illegally obtained the trade secret

24   materials, as set forth above, and through other means of which Mattel is presently

25   unaware.

26   111. Counter-defendants have used and disclosed Mattel's Trade

27   Secret Materials without Mattel's consent and without regard to Mattel's rights, and

28

4363.2

EXHIBIT 1   PAGE 67   -63-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   without compensation, permission, or licenses for the benefit of themselves and

2   others.

3          112. Counter-defendants' conduct was, is, and remains willful and

4   wanton, and was taken with blatant disregard for Mattel's valid and enforceable

5   rights.

6          113. Counter-defendants' wrongful conduct has caused and, unless

7   enjoined by this Court, will continue in the future to cause irreparable injury to

8   Mattel. Mattel has no adequate remedy at law for such wrongs and injuries. Mattel

9   is therefore entitled to a permanent injunction restraining and enjoining Counter-

10   defendants, and each of them, as well as their agents, servants, and employees, and

11   all persons acting thereunder, in concert with, or on their behalf, from further using

12   in any manner Mattel's trade secrets.

13          114. In addition, as a proximate result of Counter-defendants'

14   misconduct, Mattel has suffered actual damages, and Counter-defendants have been

15   unjustly enriched.

16          115. The aforementioned acts of the Counter-defendants were willful

17   and malicious, including in that Counter-defendants misappropriated Mattel's trade

18   secrets with the deliberate intent to injure Mattel's business and improve their own.

19   Mattel is therefore entitled to enhanced damages. Mattel is also entitled to

20   reasonable attorney's fees.

21                   **Fifth Counterclaim**

22                   **Breach of Contract**

23                   **(Against Bryant)**

24          116. Mattel repeats and realleges each and every allegation set forth in

25   paragraphs 1 through 115, above, as though fully set forth at length.

26          117. Pursuant to his Employment Agreement, Bryant agreed that he

27   would not, without Mattel's express written consent, engage in any employment or

28   business other than for Mattel or assist in any manner any business competitive

2154363.2

EXHIBIT ___ PAGE ___
-64-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   with the business or future business plans of Mattel during his employment with

2   Mattel. Pursuant to his Mattel Employment Agreement, Bryant further assigned to

3   Mattel all right, title and interest in "inventions," including without limitation

4   "designs" and other works that he conceived, created or reduced to practice during

5   his employment by Mattel. In addition, pursuant to the Conflict Questionnaire,

6   Bryant certified that, other than as disclosed, he had not worked for any competitor

7   of Mattel and had not engaged in any business venture or transaction involving a

8   Mattel competitor that could be construed as a conflict of interest. Bryant further

9   promised that he would notify his supervisor immediately of any change in his

10  situation that would cause him to change any of the foregoing certifications or

11  representations.

12          118. The Employment Agreement and the Conflict Questionnaire are

13  valid, enforceable contracts, and Mattel has performed each and every term and

14  condition of the Employment Agreement and Conflict Questionnaire required to be

15  performed by Mattel.

16          119. Bryant materially breached the foregoing contracts with Mattel,

17  in that, among other things, he secretly aided, assisted and worked for a Mattel

18  competitor during his employment with Mattel without the express written consent

19  of Mattel.

20          120. As a consequence of Bryant's breach, Mattel has suffered and

21  will, in the future, continue to suffer damages in an amount to be proven at trial.

22  Such damages include, without limitation, the amounts paid by the competitor to

23  Bryant during his Mattel employment; the amounts paid by MGA to Bryant during

24  his Mattel employment; the amount that Mattel paid Bryant during the time he

25  wrongfully worked with MGA; the value of information and intellectual property

26  owned by Mattel which Bryant provided to MGA; the value of the benefits that

27  MGA obtained from Bryant during the time he was employed by Mattel; and the

28

2154363.2

-65-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT ____1____ PAGE __69__

1  value of the benefits that MGA obtained from Bryant as a result of the work he

2  performed for or with MGA during his Mattel employment.

3      121. Bryant's conduct has caused, and unless enjoined will continue to

4  cause, irreparable injury to Mattel that cannot be adequately compensated by

5  money damages and for which Mattel has no adequate remedy at law.  Bryant

6  specifically acknowledged in his Employment Agreement that his breach of the

7  Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be

8  entitled to injunctive relief to enforce this Agreement, in addition to damages and

9  other available remedies."  Accordingly, Mattel is entitled to orders mandating

10  Bryant's specific performance of his contracts with Mattel and restraining Bryant

11  from further breach.

12  **Sixth Counterclaim**

13  **Intentional Interference with Contract**

14  **(Against MGA, Larian and Does 4 through 10)**

15      122. Mattel repeats and realleges each and every allegation set forth in

16  paragraphs 1 through 121, above, as though fully set forth at length.

17      123. Valid agreements existed between Mattel and Bryant, Brawer,

18  Machado, Trueba, Vargas, Brisbois and the Other Former Employees (collectively,

19  the "Mattel Employees")

20      124. At all times herein mentioned, MGA, Larian and Does 4 through

21  10 knew that the Mattel Employees had a duty under their agreements not to work

22  for or assist any competitor of Mattel, such as MGA.  In addition, at all times

23  mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had

24  assigned to Mattel, and was obligated to disclose to Mattel all inventions, including

25  designs and other works, created, conceived or reduced to practice during their

26  employment with Mattel.

27

28

2154363.2

EXHIBIT 1  PAGE 70

SECOND AMENDED ANSWER AND COUNTERCLAIMS

125. Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, induced and encouraged the Mattel Employees to breach their contracts with Mattel.

126. As a direct and proximate result of Counter-defendants' efforts and inducements, the Mattel Employees did breach their contracts with Mattel.

127. As a result of said breaches, Mattel has suffered damages and will imminently suffer further damages, including the loss of its competitive position and lost profits, in an amount to be proven at trial.

128. Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

### Seventh Counterclaim

### Breach of Fiduciary Duty

### (Against Bryant and Machado)

129. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 128, above, as though fully set forth at length.

130. Bryant and Machado held positions of trust and confidence with Mattel. In their positions, Bryant and Machado had access to and were entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of their job assignments and duties. In their positions, Bryant and Machado also represented Mattel in its dealings with third parties and, in actions in the course and scope of their employment with Mattel, were agents of Mattel. They confirmed their relationship of trust with Mattel in respective employee agreements. Bryant and Machado thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests

1   or that would deprive Mattel of any opportunities, profit or advantage which Bryant

2   or Machado might bring to Mattel.

3         131. Bryant breached his fiduciary duty to Mattel in that, while

4   employed by Mattel, he secretly aided and assisted a competitor of Mattel,

5   including without limitation by entering into an agreement with a Mattel

6   competitor. As alleged above, Bryant also breached the aforementioned duty by

7   using Mattel property and resources for the benefit of, and to aid and assist, himself

8   personally and MGA.

9         132. Machado breached his fiduciary duty to Mattel, in that while

10  employed by Mattel, he secretly aided and assisted a competitor of Mattel by,

11  among other things, misappropriating Mattel trade secret and proprietary

12  information and providing said information to officers of MGA. Machado also

13  breached the aforementioned duty by using Mattel property and resources for the

14  benefit of, and to aid and assist, himself personally and MGA.

15        133. As a direct and proximate result of Counter-defendants' wrongful

16  conduct, Mattel has incurred damages in an amount to be determined at trial.

17        134. Counter-defendants acted with malice, fraud and oppression, and

18  in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an

19  award of exemplary damages against Counter-defendants in an amount to be

20  determined at trial.

21        135. Furthermore, Counter-defendants' conduct has caused, and unless

22  enjoined will continue to cause, irreparable injury to Mattel that cannot be

23  adequately compensated by money damages and for which Mattel has no adequate

24  remedy at law. Accordingly, Mattel is entitled to an order restraining further

25  breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants

26  from continuing to benefit from such breach.

27

28

2154363.2

EXHIBIT ____ 1 ____   PAGE 72

-68-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

### Eighth Counterclaim

### Aiding and Abetting Breach of Fiduciary Duty

### (Against MGA, Larian and Does 4 through 10)

136. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 135, above, as though fully set forth at length.

137. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant held a position of trust and confidence at Mattel. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to secretly developing and designing Bratz while employed by Mattel and by secretly assisting Larian and MGA .

138. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) held positions of trust and confidence at Mattel. At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to taking confidential trade secret information from Mattel's premises and providing that information to a competitor.

139. Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, encouraged, aided and abetted and gave substantial assistance to the Mattel Employees to breach their fiduciary duties to Mattel, knowing that their conduct would constitute breaches of their fiduciary duties to Mattel.

140. As a direct and proximate result of Counter-defendants' efforts, the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has incurred damages in an amount to be proven at trial. Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

1        141.  In taking the aforesaid actions, MGA, Larian and Does 4 through

2   10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

3   rights.  Accordingly, Mattel is entitled to recover exemplary damages from

4   Counter-defendants in an amount to be determined at trial.

5                   **Ninth Counterclaim**

6                **Breach of Duty of Loyalty**

7           **(Against Bryant and Machado)**

8        142.  Mattel repeats and realleges each and every allegation set forth in

9   paragraphs 1 through 141, above, as though fully set forth at length.

10        143.  As employees of Mattel, Bryant and Machado owed a duty of

11   undivided loyalty to Mattel.  Pursuant to this duty, Bryant and Machado could not

12   compete with Mattel or assist a competitor of Mattel during their employment with

13   Mattel.  Pursuant to this duty, Bryant and Machado were required to always give

14   preference to Mattel's business over their own, similar interests during the course of

15   their employment with Mattel.

16        144.  Bryant and Machado breached their duty of loyalty to Mattel in

17   that, while employed by Mattel, they secretly aided, assisted and worked for a

18   competitor of Mattel, including without limitation by entering into agreements with

19   a Mattel competitor.  As alleged above, they also breached the aforementioned duty

20   by using Mattel property and resources for the benefit of, and to aid and assist,

21   themselves personally and the competitor of Mattel.

22        145.  As a direct and proximate result of Counter-defendants' wrongful

23   conduct, Mattel has incurred damages in an amount to be determined at trial.

24        146.  Counter-defendants acted with malice, fraud and oppression, and

25   in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an

26   award of punitive damages against Counter-defendants in an amount to be

27   determined at trial.

28

EXHIBIT ___1___   PAGE 74

147. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining further breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-defendants from continuing to benefit from such breach.

148. In breaching their duty of loyalty to Mattel, Bryant and Machado acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

**Tenth Counterclaim**

**Aiding and Abetting Breach of Duty of Loyalty**

**(Against MGA, Larian and Does 4 through 10)**

149. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 148, above, as though fully set forth at length.

150. MGA, Larian and Does 4 through 10 knew that Bryant, as an employee of Mattel, owed a duty of loyalty to his employer.  MGA, Larian and Does 4 through 10 knew that this duty included an obligation on the part of Bryant not to compete with Mattel or assist a competitor of Mattel during the term of his employment with Mattel.  MGA, Larian and Does 4 through 10 also knew that Bryant was required to give preference to Mattel's business over his own, similar interests or those of Mattel's competitors. or those of Mattel's competitors during the course of his employment with Mattel.

151. MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) were employed by Mattel, and, as employees of Mattel, that they owed duties of loyalty to Mattel.  MGA, Larian and Does 4 through 10 knew that these duties included an obligation on the part of the Mattel

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

EXHIBIT  I  PAGE  75

1 Employees (excluding Bryant) not to compete with Mattel or assist a competitor of

2 Mattel during their Mattel employment.

3        152. Despite such knowledge, Counter-defendants MGA, Larian and

4 Does 4 through 10 intentionally and without justification solicited, encouraged,

5 aided and abetted and gave substantial assistance to the Mattel Employees to

6 breach their duties of loyalty to Mattel, knowing that their conduct would constitute

7 breaches of their duties of loyalty to Mattel.

8        153. As a further consequence of Counter-defendants' efforts, Mattel

9 has suffered injury and is entitled to compensatory damages in an amount to be

10 proven at trial.

11        154. In taking the aforesaid actions, MGA, Larian and Does 4 through

12 10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

13 rights. Accordingly, Mattel is entitled to recover exemplary damages from

14 Counter-defendants in an amount to be determined at trial.

15 **Eleventh Counterclaim**

16 **Conversion**

17 **(Against All Counter-defendants)**

18        155. Mattel repeats and realleges each and every allegation set forth in

19 paragraphs 1 through 154, above, as though fully set forth at length.

20        156. Counter-defendants wrongfully converted Mattel property and

21 resources by appropriating and using them for their own benefit and gain and for

22 the benefit and gain of others, without the permission of Mattel.

23        157. Mattel was entitled to, among other things, the exclusive right

24 and enjoyment in property and tangible materials owned by Mattel, including

25 without limitation such proper and materials that were created by Bryant while he

26 was a Mattel product designer. Such property was taken by Bryant from Mattel to

27 further his own interests and, in at least some instances, provided by Bryant to

28 Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

EXHIBIT 1 PAGE 74

158. In addition, Counter-defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices. Counter-defendants did so without Mattel's permission and continue to possess them.

159. As a direct and proximate result of Counter-defendants' wrongful conversion of Mattel property, including those relating to Bratz and Mattel's Trade Secret Materials, Mattel has incurred damages. Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

160. As a result of Counter-defendants' acts of conversion, Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss suffered, which is not measured by the value of the property misappropriated, but includes the lost profits that Mattel suffered as a result of the conversion or, alternatively, the profits generated by the Counter-defendants that would not have been generated but for the conversion. Only such a measure of damages would fully and fairly compensate Mattel for the injury it suffered due to Counter-defendants' acts of conversion.

161. Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

162. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining Counter-defendants from further conversion of Mattel property and resources and/or restraining Counter-defendants from continuing to benefit from such conversion.

## Twelfth Counterclaim

### Unfair Competition

### (Common Law and *Cal. Bus. & Prof. Code* § 17200)

### (Against All Counter-defendants)

163. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 162, above, as though fully set forth at length.

164. Section 17200 of the California Business and Professions Code prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

165. By engaging in the foregoing conduct, Counter-defendants have, individually and in combination, engaged in unlawful, unfair and/or fraudulent acts of unfair competition in violation of both the common law of the state of California and *Cal. Bus. & Prof. Code* § 17200 *et seq.* Such conduct included, without limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code* § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a). Such conduct also included, without limitation, MGA's and Larian's disparagement of Mattel's products and misrepresentations as alleged above.

166. As a result of the aforementioned conduct, Mattel has suffered damages and will imminently suffer further damages, including but not limited to lost profits in an amount to be proven at trial. No adequate remedy at law exists for the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel is entitled to an injunction enjoining Counter-defendants' continued wrongful acts. Mattel is also entitled to recover compensatory and exemplary damages pursuant to the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

2154363.2

-74-

EXHIBIT 1   PAGE 78

1

### Thirteenth Counterclaim

2

### Declaratory Relief

3

### (Against All Counter-defendants)

4       167.  Mattel repeats and realleges each and every allegation set forth in

5   paragraphs 1 through 166, above, as though fully set forth at length.

6       168.  As shown in the foregoing paragraphs above, an actual

7   controversy exists between Mattel and Counter-defendants regarding Counter-

8   defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

9       169.  Accordingly, Mattel seeks a declaration of the Court that

10  Counter-defendants have no valid or protectable ownership rights or interests in

11  Bratz, and that Mattel is the true owner of the same, and further seeks an

12  accounting and imposition of a constructive trust over Bratz, including without

13  limitation registrations and applications for registrations relating thereto made or

14  filed by Counter-defendants and third parties, and over all revenues and other

15  monies or benefits derived or obtained from MGA's and Bryant's purported

16  ownership, use, sale, distribution and licensing of Bratz.

17      170.  Mattel seeks a declaration of the Court that any and all

18  agreements between Bryant, on the one hand, and MGA, on the other hand, in

19  which Bryant purports to assign to MGA any right, title or interests in any work

20  that he conceived, created or reduced to practice while a Mattel employee,

21  including but not limited to the Bratz designs, is void and of no effect, including

22  without limitation because Bryant had previously assigned said right, title or

23  interest to Mattel and because Mattel was otherwise the owner of said right, title or

24  interest.

25                      ### Prayer for Relief

26      WHEREFORE, Mattel respectfully requests judgment:

27      1.    For a declaration that Counter-defendants have no valid or

28  protectable ownership interests or rights in Bratz designs and works conceived,

2154363.2

EXHIBIT     1     PAGE     79

created or reduced to practice by Bryant during the term of his Mattel employment and/or by any others then-employed by Mattel, as well as in all derivatives prepared therefrom, and that Mattel is the true owner of the foregoing;

2.    For a declaration that any agreement between Bryant, on the one hand, and MGA or any person or entity, on the other hand, in which Bryant purported to assign any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect;

3.    For an Order enjoining and restraining Counter-defendants, their agents, servants and employees, and all persons in active concert or participation with them, from further wrongful conduct, including without limitation from imitating, copying, distributing, importing, displaying, preparing derivatives from and otherwise infringing Mattel's copyright-protected works;

4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other applicable law, impounding all of Counter-defendants' products and materials that infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles by which copies of the works embodied in Mattel's copyrights may be reproduced or otherwise infringed;

5.    For an Order mandating that Counter-defendants return to Mattel all tangible items, documents, designs, diagrams, sketches or any other memorialization of inventions created or reduced to practice during Bryant's employment with Mattel as well as all Mattel property converted by Counter-defendants;

6.    For an Order mandating specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

7.    That Mattel be awarded, and Counter-defendants be ordered to disgorge, all payments, revenues, profits, monies and royalties and any other benefits derived or obtained as a result of the conduct alleged herein, including

2154363.2

EXHIBIT  1  PAGE  80

1   without limitation of all revenues and profits attributable to Counter-defendants'

2   infringement of Mattel's copyrights under 17 U.S.C. § 504;

3       8.    For an accounting of all profits, monies and/or royalties from the

4   exercise of ownership, use, distribution, sales and licensing of Bratz;

5       9.    For the imposition of a constructive trust over Bratz, including

6   without limitation registrations and applications for registrations relating thereto

7   made or filed by Counter-defendants and third parties, and all profits, monies,

8   royalties and any other benefits derived or obtained from Counter-defendant's

9   exercise of ownership, use, sale, distribution and licensing of Bratz;

10      10.    That Mattel recover its actual damages and lost profits;

11      11.    That Counter-defendants be ordered to pay exemplary damages

12   in a sum sufficient to punish and to make an example of them, and deter them and

13   others from similar wrongdoing;

14      12.    That Counter-defendants be ordered to pay treble its general and

15   special damages, plus interest, costs and attorney's fees incurred by reason of

16   Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

17      13.    That Counter-defendants be ordered to pay double damages due

18   to their willful and malicious misappropriation of Mattel's trade secrets with

19   deliberate intent to injure Mattel's business and improve its own;

20      14.    That Counter-defendants pay to Mattel the full cost of this action

21   and Mattel's attorneys' and investigators' fees; and

22

23

24

25

26

27

28

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __1__ PAGE __81__

1    15.   That Mattel have such other and further relief as the Court may

2  deem just and proper.

3

4  DATED:  July 12, 2007          QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP

5

6                                  By _John Quinn (BAP)_____

7                                      John B. Quinn
                                       Attorneys for Defendant and Counter-
8                                      claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2154363.2

EXHIBIT ___1___ PAGE _82_

1

## DEMAND FOR JURY TRIAL

2

3     Mattel, Inc. respectfully requests a jury trial on all issues triable

4  thereby.

5

6  DATED:  July 12, 2007             QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
7

8                                    By _____

9                                       John B. Quinn
                                        Attorneys for Defendant and Counter-
10                                      claimant Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2154363.2

-79-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __1__ PAGE _83_

**EXHIBIT 2**

1    DALE M. CENDALI (admitted pro hac vice)
     DIANA M. TORRES (S.B. #162284)
2    MARC F. FEINSTEIN (S.B. #158901)
     O'MELVENY & MYERS LLP
3    400 South Hope Street
     Los Angeles, California 90071-2899
4    Telephone: (213) 430-6000
     Facsimile: (213) 430-6407
5    Email: dtorres@omm.com

6    PATRICIA GLASER (S.B. # 55668)
     CHRISTENSEN, GLASER, FINK,
7    JACOBS, WEIL & SHAPIRO LLP
     10250 Constellation Boulevard, 19th Floor
8    Los Angeles, California  90067
     Telephone:  (310) 553-3000
9    Facsimile:   (310) 556-2920
     Email: pglaser@chrisglase.com

10
     Attorneys for Counter-defendants MGA
11   Entertainment, Inc., Isaac Larian, MGA
     Entertainment (HK) Limited, and MGAE de
12   Mexico S.R.L. de C.V.

13

14

15                  UNITED STATES DISTRICT COURT

16                  CENTRAL DISTRICT OF CALIFORNIA

17                        EASTERN DIVISION

| | |
|---|---|
| 18   CARTER BRYANT, an individual, | Case No. CV 05-2727 SGL (RNBx) (Consolidated with CV 04-09049 and CV 04-9059) |
| 19              Plaintiff, | |
| 20         v. | **AMENDED ANSWER AND AFFIRMATIVE DEFENSES OF MGA ENTERTAINMENT INC., MGA ENTERTAINMENT (HK) LIMITED, AND MGAE DE MEXICO S.R.L. DE C.V. TO MATTEL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS** |
| 21   MATTEL, INC., a Delaware Corporation, | |
| 22              Defendant | |
| 23 | |
| 24 | |
| 25 | |
| 26   CONSOLIDATED WITH | Judge:      Hon. Stephen G. Larson Courtroom:  1 |
| 27   MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |
| 28 | |

EXHIBIT __2__ PAGE 84

1    Counter-defendants MGA Entertainment, Inc. ("MGA"), MGA

2   Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively

3   the "MGA Defendants") hereby answer, for themselves alone, the Second

4   Amended Answer and Counterclaim of Counter-claimant Mattel Inc., as follows:

5    As a preliminary matter, Mattel's use of headings throughout its

6   counterclaims is improper, and therefore no response to Mattel's headings is

7   required.  If any response is required, MGA Defendants deny all allegations

8   contained in Mattel's headings.

9    **RESPONSES**

10    1.    MGA Defendants deny the allegations set forth in paragraph 1.

11    2.    MGA Defendants deny the allegations set forth in paragraph 2.

12    3.    MGA Defendants admit that MGA decided to expand into

13   Mexico in or about 2004, and deny the remaining allegations set forth in paragraph

14   3.

15    4.    MGA Defendants deny the allegations set forth in paragraph 4.

16    5.    MGA Defendants deny the allegations set forth in paragraph 5.

17    6.    MGA Defendants admit that the Court has federal question

18   jurisdiction over this action pursuant to 28 U.S.C. § 1331, deny that 17 U.S.C. §§

19   101 and 18 U.S.C. § 1964(c) apply to the extraterritorial conduct alleged in the

20   Counterclaims, and deny that Mattel is entitled to any relief on its Counterclaims.

21    7.    MGA Defendants admit that venue is proper in this District for

22   Mattel's claims based on conduct alleged to have occurred within this District and

23   deny that venue is proper in this District for acts alleged to have occurred in

24   Mexico, Canada, Hong Kong, or other places outside of this District.

25    8.    MGA Defendants admit the allegations set forth in paragraph 8.

26    9.    MGA Defendants admit the allegations set forth in the first and

27   second sentences of paragraph 9, and deny the remaining allegations set forth in

28   paragraph 9.

LA2:841935.2

- 2 -

EXHIBIT _2_ PAGE _85_

1          10.    MGA Defendants admit the allegations set forth in paragraph

2  10.

3          11.    MGA Defendants admit the allegations set forth in the first

4  sentence of paragraph 11, and deny the remaining allegations set forth in paragraph

5  11.

6          12.    MGA Defendants admit the allegations set forth in paragraph

7  12.

8          13.    MGA Defendants admit the allegations set forth in the first

9  sentence of paragraph 13, and deny the remaining allegations set forth in paragraph

10  13.

11          14.    MGA Defendants admit the allegations set forth in paragraph

12  14.

13          15.    Paragraph 15 is a statement of Mattel's legal position, to which

14  no response is necessary.  To the extent a response is required, MGA Defendants

15  deny the allegations set forth in paragraph 15.

16          16.    MGA Defendants admit the allegations set forth in the first

17  sentence of paragraph 16.  MGA Defendants are without sufficient knowledge to

18  admit or deny the remaining allegations set forth in paragraph 16, and on that basis,

19  deny the remaining allegations set forth in paragraph 16.

20          17.    MGA Defendants are without sufficient knowledge to admit or

21  deny the allegations set forth in paragraph 17, and on that basis, deny the

22  allegations set forth in paragraph 17.

23          18.    MGA Defendants are without sufficient knowledge to admit or

24  deny the allegations set forth in paragraph 18, and on that basis, deny the

25  allegations set forth in paragraph 18.

26          19.    MGA Defendants admit that MGA is a toy manufacturer, that

27  MGA began as a consumer electronics business and expanded into the toy business

28  with licenses to sell handheld electronic games, and later expanded its business by

1  launching the Bratz fashion doll line, and deny the remaining allegations set forth in

2  paragraph 19.

3        20.   MGA Defendants deny the allegations set forth in paragraph 20.

4        21.   MGA Defendants admit that Carter Bryant is a former employee

5  of Mattel, and state that they are without sufficient knowledge to admit or deny the

6  remaining allegations set forth in paragraph 21, and on that basis, deny the

7  remaining allegations set forth in paragraph 21.

8        22.   MGA Defendants are without sufficient knowledge to admit or

9  deny the allegations set forth in paragraph 22, and on that basis, deny the

10  allegations set forth in paragraph 22.

11        23.   MGA Defendants are without sufficient knowledge to admit or

12  deny the allegations set forth in paragraph 23, and on that basis, deny the

13  allegations set forth in paragraph 23.

14        24.   MGA Defendants are without sufficient knowledge to admit or

15  deny the allegations set forth in paragraph 24, and on that basis, deny the

16  allegations set forth in paragraph 24.

17        25.   MGA Defendants are without sufficient knowledge to admit or

18  deny the allegations set forth in paragraph 25, and on that basis, deny the

19  allegations set forth in paragraph 25.

20        26.   MGA Defendants deny the allegations set forth in paragraph 26.

21        27.   MGA Defendants deny the allegations set forth in paragraph 27.

22        28.   MGA Defendants deny the allegations set forth in paragraph 28.

23        29.   MGA Defendants deny the allegations set forth in paragraph 29.

24        30.   MGA Defendants admit that after MGA made the decision to

25  proceed with the manufacture of the Bratz dolls, MGA employees communicated

26  with employees of MGA Entertainment (HK) Limited on subjects including the

27  manufacturing of Bratz, and deny the remaining allegations set forth in the first

28

EXHIBIT _2_ PAGE 67

1   sentence of paragraph 30.  MGA Defendants admit the second sentence of

2   paragraph 30.

3         31.  MGA Defendants admit that samples of the four original Bratz

4   dolls were shown at the Hong Kong Toy Fair in January 2001, and deny the

5   remaining allegations set forth in paragraph 31.

6         32.  MGA Defendants admit that MGA and its subsidiaries have

7   distributed and sold Bratz and Bratz-related products in many countries throughout

8   the world, that MGA and its subsidiaries have licensed Bratz to third parties, that

9   MGA has derived annual revenues from its sales and licenses of Bratz in excess of

10  $500 million, that MGA and its subsidiaries continue to market, sell and license

11  Bratz and intend to continue to do so, and deny the remaining allegations set forth

12  in paragraph 32.

13        33.  MGA Defendants deny the allegations set forth in paragraph 33.

14        34.  MGA Defendants deny the allegations set forth in paragraph 34.

15        35.  MGA Defendants deny the allegations set forth in paragraph 35.

16        36.  MGA Defendants admit that Bryant had an agreement with

17  MGA, state that the terms of the agreement speak for themselves, and deny the

18  remaining allegations set forth in paragraph 36.

19        37.  MGA Defendants admit that in or about late 2003 or early 2004,

20  MGA decided to form a new corporation, MGAE de Mexico, S.R.L. de C.V., to

21  conduct business in Mexico, admit that MGAE de Mexico hired three employees of

22  Mattel's Mexican subsidiary, and deny the remaining allegations set forth in

23  paragraph 37.

24        38.  MGA Defendants admit that Carlos Gustavo Machado Gomez

25  was a Marketing Manager, Boys Division, for Mattel Mexico, admit that Machado

26  was employed at Mattel Mexico from April 1997 until April 19, 2004, admit that

27  Machado had access to some nonpublic business information of Mattel Mexico, and

28  state that they are without sufficient knowledge to admit or deny the remaining

- 5 -

EXHIBIT 2   PAGE 88

1   allegations set forth in paragraph 38, and on that basis, deny the remaining

2   allegations set forth in paragraph 38.

3           39.   MGA Defendants admit that Mariana Trueba Almada was a

4   Marketing Manager, Girls Division, for Mattel Mexico, admit that Trueba had

5   access to some nonpublic business information of Mattel Mexico, and state that

6   they are without sufficient knowledge to admit or deny the remaining allegations

7   set forth in paragraph 39, and on that basis, deny the remaining allegations set forth

8   in paragraph 39.

9           40.   MGA Defendants admit that Pablo Vargas San Jose was a Trade

10  Marketing Manager for Mattel Mexico, admit that Vargas was employed at Mattel

11  Mexico from March 2001 until April 19, 2004, admit that Vargas had access to

12  some nonpublic business information of Mattel Mexico, and state that they are

13  without sufficient knowledge to admit or deny the remaining allegations set forth in

14  paragraph 40, and on that basis, deny the remaining allegations set forth in

15  paragraph 40.

16          41.   MGA Defendants admit that in or about early 2004, Machado,

17  Trueba and Vargas discussed leaving Mattel Mexico, admit that Machado, Trueba

18  and Vargas resigned from Mattel Mexico on April 19, 2004, admit that they did not

19  identify their new employer to Mattel Mexico, admit that Machado, Trueba and

20  Vargas were offered and accepted employment with MGAE de Mexico, and deny

21  the remaining allegations set forth in paragraph 41.

22          42.   MGA Defendants admit that MGA personnel communicated by

23  telephone with Machado and Vargas prior to their Mattel resignations, admit that

24  MGA personnel, including Isaac Larian, communicated by e-mail with Machado

25  and Vargas concerning terms of employment through an America Online e-mail

26  account with the address <plot04@aol.com>, and deny the remaining allegations

27  set forth in paragraph 42.

28

LA2:841935.2                              - 6 -

EXHIBIT  2  PAGE 89

1        43.    MGA Defendants admit that in or about March 2004, Machado,

2    Trueba, and Vargas made plans to travel from Mexico to Los Angeles in April

3    2004, admit that in or about March 2004, Machado, Trueba and Vargas discussed

4    with MGA personnel, including Larian, employment at MGAE de Mexico, state

5    that the quoted <plot04@aol.com> e-mails speak for themselves, and deny the

6    remaining allegations set forth in paragraph 43.

7        44.    MGA Defendants are without sufficient knowledge to admit or

8    deny the allegations set forth in paragraph 44, and on that basis, deny the

9    allegations set forth in paragraph 44.

10       45.    MGA Defendants are without sufficient knowledge to admit or

11   deny the allegations set forth in paragraph 45, and on that basis, deny the

12   allegations set forth in paragraph 45.

13       46.    MGA Defendants are without sufficient knowledge to admit or

14   deny the allegations set forth in paragraph 46, and on that basis, deny the

15   allegations set forth in paragraph 46.

16       47.    MGA Defendants are without sufficient knowledge to admit or

17   deny the allegation set forth in the third sentence of paragraph 47, and on that basis,

18   deny these allegations, and deny the remaining allegations set forth in paragraph 47.

19       48.    MGA Defendants deny the allegations set forth in paragraph 48.

20       49.    MGA Defendants deny the allegations set forth in paragraph 49.

21       50.    MGA Defendants are without sufficient knowledge to admit or

22   deny the allegation that MGA publicized a claim that, in 2005, it had increased its

23   Mexican market share by 90% over the prior year, and on that basis, deny this

24   allegation, and deny the remaining allegations set forth in paragraph 50.

25       51.    MGA Defendants deny the allegations set forth in paragraph 51.

26       52.    MGA Defendants deny the allegations set forth in paragraph 52.

27       53.    MGA Defendants admit that on October 27, 2005, Mexican

28   authorities searched MGAE de Mexico and seized certain documents, and state that

EXHIBIT  2   PAGE 9D

1    they are without sufficient knowledge to admit or deny the remaining allegations

2    set forth in paragraph 53, and on that basis, deny the remaining allegations set forth

3    in paragraph 53.

4         54.   MGA Defendants admit that Machado was transferred from

5    MGAE de Mexico to MGA's office in Van Nuys, California, admit that Machado

6    resides in the County of Los Angeles, and deny the remaining allegations set forth

7    in paragraph 54.

8         55.   MGA Defendants admit the allegations set forth in the first

9    sentence of paragraph 55. MGA Defendants admit that Tyco Toys hired Brawer on

10   April 22, 1996, and state that they are without sufficient knowledge to admit or

11   deny the remaining allegations set forth in the second sentence of paragraph 55, and

12   on that basis, deny the remaining allegations set forth in the second sentence of

13   paragraph 55. MGA Defendants admit the allegations set forth in third sentence of

14   paragraph 55. MGA Defendants admit that on April 9, 1997, Brawer became a

15   Marketing Director for Mattel in Mount Laurel, New Jersey, and state that the

16   remaining allegations in the fourth sentence of paragraph 55 are a statement of

17   Mattel's legal position, to which no response is necessary. To the extent a response

18   is required, MGA Defendants deny the remaining allegations set forth in paragraph

19   55.

20        56.   MGA Defendants are without sufficient knowledge to admit or

21   deny the allegations set forth in paragraph 56, and on that basis, deny the

22   allegations set forth in paragraph 56. The last sentence of paragraph 56 is a

23   statement of Mattel's legal position, to which no response is necessary. To the

24   extent a response is required, MGA Defendants deny the remaining allegations set

25   forth in paragraph 56.

26        57.   MGA Defendants admit that by 2003, Brawer had advanced

27   within Mattel to a Senior Vice President position over customer marketing, and

28   state that the remaining allegations in the first sentence of paragraph 57 are a

EXHIBIT  2   PAGE 91

1    statement of Mattel's legal position, to which no response is necessary.  To the

2    extent a response is required, MGA Defendants deny the remaining allegations set

3    forth in the first sentence of paragraph 57.  MGA Defendants admit that in his

4    executive position, Brawer was provided access to certain nonpublic Mattel

5    information.

6              58.    MGA Defendants admit the allegations set forth in the first

7    sentence of paragraph 58.  MGA Defendants deny the allegations set forth in the

8    second sentence of paragraph 58.  MGA Defendants are without sufficient

9    knowledge to admit or deny the remaining allegations set forth in paragraph 58, and

10   on that basis, deny the remaining allegations set forth in paragraph 58.

11             59.    MGA Defendants are without sufficient knowledge to admit or

12   deny the allegations set forth in paragraph 59, and on that basis, deny the

13   allegations set forth in paragraph 59.

14             60.    MGA Defendants admit that in April 2004, Mattel made Brawer

15   a Senior Vice President/General Manager, and state that they are without sufficient

16   knowledge to admit or deny the remaining allegations set forth in paragraph 60, and

17   on that basis, deny the remaining allegations set forth in paragraph 60.

18             61.    MGA Defendants admit that in May 2004, Brawer began

19   performing General Manager duties, working with one of Mattel's major retail

20   customer accounts, and state that they are without sufficient knowledge to admit or

21   deny the remaining allegations set forth in paragraph 61, and on that basis, deny the

22   remaining allegations set forth in paragraph 61.

23             62.    MGA Defendants admit the allegations set forth in the first

24   sentence of paragraph 62.  MGA Defendants admit that as Brawer left, he carried a

25   large cardboard box, and deny the remaining allegations set forth in the second

26   sentence of paragraph 62.  MGA Defendants state that they are without sufficient

27   knowledge to admit or deny the remaining allegations set forth in paragraph 62, and

28   on that basis, deny the remaining allegations set forth in paragraph 62.

EXHIBIT 2  PAGE 92

1         63.    MGA Defendants admit the allegations set forth in paragraph

2  63.

3         64.    MGA Defendants admit that on September 20, 2004, Mattel

4  hand-delivered a letter to Brawer, state that the contents of the letter speak for

5  themselves, and deny the remaining allegations set forth in paragraph 64.

6         65.    MGA Defendants admit that at his exit interview on September

7  29, 2004, Brawer was given a copy of an agreement with Tyco that he had signed

8  on April 22, 1996, and a copy of Mattel's Code of Conduct, admit that Brawer

9  stated that he had not signed the Code of Conduct, and deny the remaining

10  allegations set forth in paragraph 65.

11        66.    MGA Defendants admit that on October 1, 2004, Brawer's last

12  day of employment with Mattel, Mattel delivered a letter to Brawer, state that the

13  contents of the letter speak for themselves, and deny the remaining allegations set

14  forth in paragraph 66.

15        67.    MGA Defendants admit that Brawer became MGA's Executive

16  Vice President of Sales and Marketing, admit that he was responsible for sales

17  worldwide, admit that he had and continues to have responsibility for MGA's

18  accounts with some of the same retailers that he worked with while at Mattel, and

19  deny the remaining allegations set forth in paragraph 67.

20        68.    MGA Defendants admit that Brawer stated during his exit

21  interview that he had returned all confidential proprietary information to Mattel,

22  state that he did not provide copies of information from his personal contacts file,

23  and deny the remaining allegations set forth in paragraph 68.

24        69.    MGA Defendants admit that since leaving Mattel, Brawer has

25  had contacts with certain Mattel employees, both by telephone and electronic mail,

26  and deny the remaining allegations set forth in paragraph 69.

27        70.    MGA Defendants deny the allegations set forth in paragraph 70.

28

EXHIBIT _2_ PAGE _93_

1      71.    MGA Defendants are without sufficient knowledge to admit or
2  deny the allegations set forth in paragraph 71, and on that basis, deny the
3  allegations set forth in paragraph 71.

4      72.    MGA Defendants are without sufficient knowledge to admit or
5  deny the allegations set forth in paragraph 72, and on that basis, deny the
6  allegations set forth in paragraph 72.

7      73.    MGA Defendants admit that on September 26, 2005, Brisbois
8  resigned from Mattel Canada, state that she took a position as Vice President of
9  National Accounts at MGAE Canada, and deny the remaining allegations set forth
10  in the first sentence of paragraph 73. MGA Defendants are without sufficient
11  knowledge to admit or deny the remaining allegations set forth in paragraph 73, and
12  on that basis, deny the remaining allegations set forth in paragraph 73.

13      74.    MGA Defendants admit that Brisbois spoke with Isaac Larian
14  by telephone on or about the evening of September 22, 2005, deny that Brisbois
15  copied approximately 45 Mattel documents onto a USB or thumb drive on that
16  same date, deny that Brisbois concealed the thumb drive the last time she left
17  Mattel Canada's office, and state that they are without sufficient knowledge to
18  admit or deny the remaining allegations set forth in paragraph 74, and on that basis,
19  deny the remaining allegations set forth in paragraph 74.

20      75.    MGA Defendants are without sufficient knowledge to admit or
21  deny the allegations set forth in paragraph 75, and on that basis, deny the
22  allegations set forth in paragraph 75.

23      76.    MGA Defendants admit that Brisbois traveled several times to
24  MGA's offices in Van Nuys, California and met with Larian and Brawer, that
25  MGA issued a press release, state that the press release speaks for itself, and state
26  that they are without sufficient knowledge to admit or deny the remaining
27  allegations set forth in paragraph 76 and, on that basis, deny the remaining
28  allegations set forth in paragraph 76.

LA2:841935.2

- 11 -

EXHIBIT 2 PAGE 194

1    77.    MGA Defendants admit that MGA has hired at least 25

2    employees directly from Mattel's United States operations in the past few years,

3    and deny the remaining allegations set forth in paragraph 77.

4    78.    MGA Defendants deny the allegations set forth in the first

5    sentence of paragraph 78.  MGA Defendants admit that Larian has sent email

6    messages to a "Bratz News" distribution list, admit that the recipients of e-mail

7    messages sent to the "Bratz News" distribution list includes members of the media

8    as well as representatives of customers of both MGA and Mattel, and deny the

9    remaining allegations set forth in paragraph 78.

10    79.    MGA Defendants admit that on May 12, 2006, Larian sent an

11    email message to the "Bratz News" distribution list that included a reference to the

12    new My Scene product with real gems, and state that they are without sufficient

13    knowledge to admit or deny the remaining allegations set forth in paragraph 79, and

14    on that basis, deny the remaining allegations set forth in paragraph 79.

15    80.    MGA Defendants admit that Larian told one retailer that such

16    retailer was the only retailer with plans to purchase MY SCENE BLING BLING

17    with real gems, at a time when Larian had a good faith belief that such retailer was

18    the only retailer with plans to purchase MY SCENE BLING BLING with real

19    gems, and deny the remaining allegations set forth in paragraph 80.

20    81.    MGA Defendants deny the allegation set forth in paragraph 81.

21    82.    MGA Defendants repeat their responses contained in paragraphs

22    1 through 81 of this Answer and incorporate them by reference as though fully and

23    completely set forth herein.

24    83.    MGA Defendants deny the allegations set forth in paragraph 83.

25    84.    MGA Defendants deny the allegations set forth in paragraph 84.

26    85.    MGA Defendants deny the allegations set forth in paragraph 85.

27    86.    MGA Defendants deny the allegations set forth in paragraph 86.

28    87.    MGA Defendants deny the allegations set forth in paragraph 87.

EXHIBIT 2 PAGE 95

1        88.   MGA Defendants repeat their responses contained in paragraphs

2    1 through 87 of this Answer and incorporate them by reference as though fully and

3    completely set forth herein.

4        89.   MGA Defendants deny the allegations set forth in paragraph 89.

5        90.   MGA Defendants deny the allegations set forth in paragraph 90.

6        91.   MGA Defendants deny the allegations set forth in paragraph 91.

7        92.   MGA Defendants deny the allegations set forth in paragraph 92.

8        93.   MGA Defendants deny the allegations set forth in paragraph 93.

9        94.   MGA Defendants deny the allegations set forth in paragraph 94.

10       95.   MGA Defendants deny the allegations set forth in paragraph 95.

11       96.   MGA Defendants deny the allegations set forth in paragraph 96.

12       97.   MGA Defendants deny the allegations set forth in paragraph 97.

13       98.   MGA Defendants repeat their responses contained in paragraphs

14   1 through 97 of this Answer and incorporate them by reference as though fully and

15   completely set forth herein.

16       99.   MGA Defendants deny the allegations set forth in paragraph 99.

17       100.   MGA Defendants deny the allegations set forth in paragraph

18   100.

19       101.   MGA Defendants deny the allegations set forth in paragraph

20   101.

21       102.   MGA Defendants deny the allegations set forth in paragraph

22   102.

23       103.   MGA Defendants deny the allegations set forth in paragraph

24   103.

25       104.   MGA Defendants deny the allegations set forth in paragraph

26   104.

27       105.   MGA Defendants deny the allegations set forth in paragraph

28   105.

- 13 -

EXHIBIT 2 PAGE 96

1          106. MGA Defendants repeat their responses contained in paragraphs

2  1 through 105 of this Answer and incorporate them by reference as though fully and

3  completely set forth herein.

4          107. MGA Defendants deny the allegations set forth in paragraph

5  107.

6          108. MGA Defendants deny the allegations set forth in paragraph

7  108.

8          109. MGA Defendants deny the allegations set forth in paragraph

9  109.

10         110. MGA Defendants deny the allegations set forth in paragraph

11  110.

12         111. MGA Defendants deny the allegations set forth in paragraph

13  111.

14         112. MGA Defendants deny the allegations set forth in paragraph

15  112.

16         113. MGA Defendants deny the allegations set forth in paragraph

17  113.

18         114. MGA Defendants deny the allegations set forth in paragraph

19  114.

20         115. MGA Defendants deny the allegations set forth in paragraph

21  115.

22         116. MGA Defendants repeat their responses contained in paragraphs

23  1 through 115 of this Answer and incorporate them by reference as though fully and

24  completely set forth herein.

25         117. MGA Defendants deny the remaining allegations set forth in

26  paragraph 117.

27         118. MGA Defendants deny the allegations set forth in paragraph

28  118.

EXHIBIT 2 PAGE 97

1      119.   MGA Defendants deny the allegations set forth in paragraph

2   119.

3      120.   MGA Defendants deny the allegations set forth in paragraph

4   120.

5      121.   MGA Defendants deny the allegations set forth in paragraph

6   121.

7      122.   MGA Defendants repeat their responses contained in paragraphs

8   1 through 121 of this Answer and incorporate them by reference as though fully and

9   completely set forth herein.

10      123.   MGA Defendants deny the allegations set forth in paragraph

11   123.

12      124.   MGA Defendants deny the allegations set forth in paragraph

13   124.

14      125.   MGA Defendants deny the allegations set forth in paragraph

15   125.

16      126.   MGA Defendants deny the allegations set forth in paragraph

17   126.

18      127.   MGA Defendants deny the allegations set forth in paragraph

19   127.

20      128.   MGA Defendants deny the allegations set forth in paragraph

21   128.

22      129.   MGA Defendants repeat their responses contained in paragraphs

23   1 through 128 of this Answer and incorporate them by reference as though fully and

24   completely set forth herein.

25      130.   The first and fifth sentences of paragraph 130 are statements of

26   Mattel's legal position, to which no response is necessary.  To the extent a response

27   is required, MGA Defendants deny the allegations set forth in the first and fifth

28   sentences of paragraph 130.  MGA Defendants are without sufficient knowledge to

EXHIBIT  2  PAGE  98

1  admit or deny the remaining allegations set forth in paragraph 130, and on that
2  basis, deny the remaining allegations set forth in paragraph 130.
3       131.   MGA Defendants deny the allegations set forth in paragraph
4  131.
5       132.   MGA Defendants deny the allegations set forth in paragraph
6  132.
7       133.   MGA Defendants deny the allegations set forth in paragraph
8  133.
9       134.   MGA Defendants deny the allegations set forth in paragraph
10  134.
11       135.   MGA Defendants deny the allegations set forth in paragraph
12  135.
13       136.   MGA Defendants repeat their responses contained in paragraphs
14  1 through 135 of this Answer and incorporate them by reference as though fully and
15  completely set forth herein.
16       137.   MGA Defendants deny the allegations set forth in paragraph
17  137.
18       138.   MGA Defendants deny the allegations set forth in paragraph
19  138.
20       139.   MGA Defendants deny the allegations set forth in paragraph
21  139.
22       140.   MGA Defendants deny the allegations set forth in paragraph
23  140.
24       141.   MGA Defendants deny the allegations set forth in paragraph
25  141.
26       142.   MGA Defendants repeat their responses contained in paragraphs
27  1 through 141 of this Answer and incorporate them by reference as though fully and
28  completely set forth herein.

EXHIBIT 2 PAGE 99

1        143.   Paragraph 143 is a statement of Mattel's legal position, to which
2   no response is necessary.  To the extent a response is required, MGA Defendants
3   deny the allegations set forth in the paragraph 143.

4        144.   MGA Defendants deny the allegations set forth in paragraph
5   144.

6        145.   MGA Defendants deny the allegations set forth in paragraph
7   145.

8        146.   MGA Defendants deny the allegations set forth in paragraph
9   146.

10        147.   MGA Defendants deny the allegations set forth in paragraph
11   147.

12        148.   MGA Defendants deny the allegations set forth in paragraph
13   148.

14        149.   MGA Defendants repeat their responses contained in paragraphs
15   1 through 148 of this Answer and incorporate them by reference as though fully and
16   completely set forth herein.

17        150.   MGA Defendants deny the allegations set forth in paragraph
18   150.

19        151.   MGA Defendants deny the allegations set forth in paragraph
20   151.

21        152.   MGA Defendants deny the allegations set forth in paragraph
22   152.

23        153.   MGA Defendants deny the allegations set forth in paragraph
24   153.

25        154.   MGA Defendants deny the allegations set forth in paragraph
26   154.

27

28

EXHIBIT   2   PAGE   100

1    155.   MGA Defendants repeat their responses contained in paragraphs
2    1 through 154 of this Answer and incorporate them by reference as though fully and
3    completely set forth herein.

4    156.   MGA Defendants deny the allegations set forth in paragraph
5    156.

6    157.   MGA Defendants deny the allegations set forth in paragraph
7    157.

8    158.   MGA Defendants deny the allegations set forth in paragraph
9    158.

10    159.   MGA Defendants deny the allegations set forth in paragraph
11    159.

12    160.   MGA Defendants deny the allegations set forth in paragraph
13    160.

14    161.   MGA Defendants deny the allegations set forth in paragraph
15    161.

16    162.   MGA Defendants deny the allegations set forth in paragraph
17    162.

18    163.   MGA Defendants repeat their responses contained in paragraphs
19    1 through 162 of this Answer and incorporate them by reference as though fully and
20    completely set forth herein.

21    164.   MGA Defendants deny the allegations set forth in paragraph
22    164.

23    165.   MGA Defendants deny the allegations set forth in paragraph
24    165.

25    166.   MGA Defendants deny the allegations set forth in paragraph
26    166.

27

28

LA2:841935.2

- 18 -

EXHIBIT 2   PAGE 101

1        167.   MGA Defendants repeat their responses contained in paragraphs

2   1 through 166 f this Answer and incorporate them by reference as though fully and

3   completely set forth herein.

4        168.   MGA Defendants deny the allegations set forth in paragraph

5   168.

6        169.   Paragraph 169 is a statement of Mattel's legal position, to which

7   no response is necessary.  To the extent a response is required, MGA Defendants

8   deny the allegations set forth in the paragraph 169.

9        170.   Paragraph 170 is a statement of Mattel's legal position, to which

10   no response is necessary.  To the extent a response is required, MGA Defendants

11   deny the allegations set forth in the paragraph 170.

12                 **AFFIRMATIVE DEFENSES**

13        Without admitting any wrongful conduct on the part of MGA Defendants or

14   any Counter-Defendant, and without admitting that Mattel suffered any loss,

15   damage, or injury, MGA Defendants allege the following affirmative defenses to

16   the Counterclaims.  By designating the following as affirmative defenses, MGA

17   Defendants do not in any way waive or limit any defenses which are or may be

18   raised by their denials, allegations, and averments set forth herein.  MGA

19   Defendants also do not, by alleging any affirmative defense, admit that Mattel does

20   not have the burden of proof for any or all facts underlying any of those defenses.

21   These defenses are pled in the alternative, and are raised to preserve the rights of

22   MGA Defendants to assert such defenses, and are without prejudice to their ability

23   to raise other and further defenses.

24                 **FIRST AFFIRMATIVE DEFENSE**

25                 (Failure to State a Claim)

26        Mattel's counterclaims fail to state a claim against MGA Defendants upon

27   which relief can be granted.

28

EXHIBIT 2 PAGE 102

## SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands/*in Pari Delicto*)

Mattel's counterclaims are barred in whole or in part by Mattel's unclean hands and wrongful acts. This affirmative defense is based, in part, on Mattel's efforts to undermine MGA's business and to "kill" Bratz at any cost which include, but are not limited to, Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including for Mattel products My Scene, Diva Starz, Wee 3 Friends, Acceleracers, Polly Pocket, and Little Mommy products, to name a few), and engage in other acts of unfair competition against MGA as alleged in MGA's complaint against Mattel; Mattel's efforts to create negative publicity or press about MGA, MGA products, Bryant, Larian, or MGA employees; Mattel's efforts to fund or commission market research or studies that portray Bratz or MGA products negatively; Mattel's efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG; Mattel's efforts to include negative references to MGA or Bratz on Mattel's "We Believe in Girls" website; Mattel's efforts or intent to interfere with business dealings or contractual relations between MGA and Smoby Group; Mattel's influencing Nickelodeon to reject MGA advertisements or to limit time slots for advertisements; assisting parties in lawsuits against MGA; Mattel's monitoring, "spying on" or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development; gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses; Mattel's wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers; Mattel's inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; Mattel's covertly investigating MGA, its officers and employees, and their family members; Mattel's contacting persons under false

EXHIBIT 2  PAGE 103

1    pretense in order to interrogate them about Bratz and this litigation; Mattel's

2    coercing its employees to accept restrictive covenants (right before a massive

3    layoff) and non-compete clauses and other efforts to prevent prospective MGA

4    employees from accepting offers of employment; Mattel's delay in suing Carter

5    Bryant because, *inter alia*, Mattel wanted Bryant to testify in an unrelated Mattel

6    case; Mattel's falsely inflating its Barbie sales figures in an effort to mislead the

7    public and retailers; and Mattel's taking all measures to conceal its bad acts,

8    including the willful non-retention and destruction of documents. Additionally,

9    Mattel believed from the time that Carter Bryant left Mattel's employ that he was

10   going to perform work for a Mattel competitor. Mattel began investigating Bryant

11   and MGA Defendants, including Bryant's role in the creation and development of

12   Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring

13   suit, all the while allowing MGA Defendants to spend years developing their

14   business and invest tens of millions of dollars developing the Bratz products and

15   building the Bratz brand. These averments are made on information and belief

16   except where MGA Defendants have knowledge thereof.

### THIRD AFFIRMATIVE DEFENSE

#### (Laches)

19        Mattel's counterclaims are barred by the equitable doctrine of laches

20   because, among other things, Mattel believed from the time that Carter Bryant left

21   Mattel's employ that he was going to perform work for a Mattel competitor. Mattel

22   began investigating Bryant and MGA Defendants, including Bryant's role in the

23   creation and development of Bratz, at least as early as March 2002 and thereafter

24   continued its investigation into Bryant's role in the creation and development of

25   Bratz, as well as his work with MGA, in August 2002 after Mattel's CEO, Robert

26   Eckert, received an "anonymous letter" that claimed that Bryant stole the idea for

27   Bratz from Mattel and sold it to MGA Defendants. Nonetheless, Mattel waited

28   years to bring suit, all the while allowing MGA Defendants to spend years

LA2:841935.2

- 21 -

EXHIBIT 2 PAGE 104

1    developing their business and invest tens of millions of dollars developing the Bratz

2    products and building the Bratz brand.

3    ## FOURTH AFFIRMATIVE DEFENSE

4    ### (Statute of Limitations)

5        Mattel's counterclaims are barred by the applicable statutes of limitations,

6    including but not limited to, 18 U.S.C. § 1961 *et seq.*, 17 U.S.C. § 507(b), and Code

7    of Civil Procedure §§ 337, 339, 343 and 338(c).

8    ## FIFTH AFFIRMATIVE DEFENSE

9    ### (*Bona Fide* Purchaser for Value)

10       Mattel cannot maintain its counterclaims against MGA Defendants because

11   MGA Defendants paid valuable consideration for Bryant's assignment of his rights

12   in the original Bratz drawings to MGA Defendants, and MGA Defendants acted

13   with a good faith belief that Bryant owned the rights to his original Bratz drawings

14   and that his assignment of such rights to MGA Defendants was valid and

15   permissible.

16   ## SIXTH AFFIRMATIVE DEFENSE

17   ### (17 U.S.C. § 205(d))

18       Mattel cannot maintain its counterclaims against MGA Defendants because,

19   among other things, MGA Defendants acted with a good faith belief that Bryant

20   owned the rights to his original Bratz drawings and that his assignment of such

21   rights to MGA Defendants was valid and permissible.

22   ## SEVENTH AFFIRMATIVE DEFENSE

23   ### (Information Readily Ascertainable)

24       MGA Defendants cannot be liable, either on their own account or by

25   association with other defendants, for misappropriation of information that was

26   readily ascertainable by proper means at the time of the alleged acquisition or use.

27   Such information includes, but is not limited to, the identity of suppliers,

28

EXHIBIT 2 PAGE 105

1  manufacturers, distributors and retailers; contact information for the same; and

2  sales, marketing and media data.

### EIGHTH AFFIRMATIVE DEFENSE

#### (Acts or Omissions of Others)

5  Mattel's damages, if any, were not caused by MGA Defendants and are not

6  attributable to any acts or omissions of MGA Defendants.

### NINTH AFFIRMATIVE DEFENSE

#### (Estoppel)

9  Mattel's counterclaims are barred in whole or in part by the equitable

10  doctrine of estoppel because, among other things, Mattel believed from the time

11  that Carter Bryant left Mattel's employ that he was going to perform work for a

12  Mattel competitor. Mattel began investigating Bryant and MGA Defendants,

13  including Bryant's role in the creation and development of Bratz, at least as early as

14  March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing

15  MGA Defendants to spend years developing their business and invest tens of

16  millions of dollars developing the Bratz products and building the Bratz brand.

### TENTH AFFIRMATIVE DEFENSE

#### (Acquiescence)

19  Mattel's counterclaims are barred in whole or in part by acquiescence

20  because, among other things, Mattel believed from the time that Carter Bryant left

21  Mattel's employ that he was going to perform work for a Mattel competitor. Mattel

22  began investigating Bryant and MGA Defendants, including Bryant's role in the

23  creation and development of Bratz, at least as early as March 2002. Nonetheless,

24  Mattel waited years to bring suit, all the while allowing MGA Defendants to spend

25  years developing their business and invest tens of millions of dollars developing the

26  Bratz products and building the Bratz brand. Additionally, Mattel tolerated and

27  condoned conduct by other employees similar to the alleged conduct by Bryant and

28  others on which Mattel bases its claims.

EXHIBIT 2  PAGE 106

1

## ELEVENTH AFFIRMATIVE DEFENSE

2

### (Failure to Mitigate)

3      MGA Defendants deny that Mattel suffered any damages, but even if it did,

4  Mattel failed to take reasonable steps to mitigate those purported damages.

5

## TWELFTH AFFIRMATIVE DEFENSE

6

### (No Statutory Damages or Attorneys' Fees)

7      Mattel is barred from recovering statutory damages and/or attorneys' fees

8  because it failed to register the copyrights that are purportedly at issue within the

9  time required by 17 U.S.C. § 412.

10

## THIRTEENTH AFFIRMATIVE DEFENSE

11

### (Waiver)

12      Mattel's counterclaims are barred in whole or in part by waiver because,

13  among other things, Mattel believed from the time that Carter Bryant left Mattel's

14  employ that he was going to perform work for a Mattel competitor. Mattel began

15  investigating Bryant and MGA Defendants, including Bryant's role in the creation

16  and development of Bratz, at least as early as March 2002. Nonetheless, Mattel

17  waited years to bring suit, all the while allowing MGA Defendants to spend years

18  developing their business and invest tens of millions of dollars developing the Bratz

19  products and building the Bratz brand.

20

## FOURTEENTH AFFIRMATIVE DEFENSE

21

### (Abandonment)

22      Mattel has abandoned any interest it may have had in the alleged copyrighted

23  works.

24

## FIFTEENTH AFFIRMATIVE DEFENSE

25

### (De Minimus Use)

26      MGA Defendants deny that Mattel owns any copyright interest in the alleged

27  works, but even if Mattel could craft a claim that the Bratz dolls incorporate an

28

EXHIBIT 2  PAGE 107

1  aspect of a Mattel copyrighted work, such use would be *de minimus* and non-
2  infringing.

### SIXTEENTH AFFIRMATIVE DEFENSE

#### (Joint Authorship)

5  MGA Defendants deny that Mattel owns any copyright interest in the alleged
6  works, but even if it did, any liability would be eliminated or greatly diminished by
7  the doctrine of joint authorship.

### SEVENTEENTH AFFIRMATIVE DEFENSE

#### (Competition Privilege/Justification)

10  Mattel's counterclaims are barred in whole or in part on the grounds that the
11  acts of the MGA Defendants were lawful competition or justified.

### EIGHTEENTH AFFIRMATIVE DEFENSE

#### (Good Faith)

14  Mattel's counterclaims are barred in whole or in part because the MGA
15  Defendants acted in good faith.

### NINETEENTH AFFIRMATIVE DEFENSE

#### (Lack of Authority)

18  Mattel's counterclaims are barred in whole or in part on the grounds that to
19  the extent any person committed an unlawful or tortious act, the person lacked
20  authority to commit such act on behalf of the MGA Defendants.

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Lack of Standing)

23  Mattel's counterclaims are barred in whole or in part by its lack of standing.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Joinder in Defenses of Co-Defendants)

26  MGA Defendants hereby adopt and incorporate by reference any and all
27  other affirmative defenses that have been or will be asserted by any other defendant
28  (including Bryant) in this litigation to the extent that defendants may share in such

EXHIBIT 2 PAGE 108

1   affirmative defenses.

2   ## TWENTY-SECOND AFFIRMATIVE DEFENSE

3   ### (Undiscovered Defenses)

4       MGA Defendants have insufficient knowledge or information upon which to

5   form a belief as to whether additional defenses are available.  MGA Defendants

6   reserve the right to assert any further or additional defenses upon receiving more

7   complete information regarding the matters alleged in the Counterclaims, through

8   discovery or otherwise.

9

10       WHEREFORE, MGA Entertainment, Inc., MGA Entertainment (HK)

11   Limited, and MGAE de Mexico S.R.L. de C.V., pray for relief as follows:

12       a.    that the Counterclaims be dismissed with prejudice;

13       b.    that judgment be entered in favor of counter-defendants and against

14   counterclaimant;

15       c.    that counter-defendants recover their costs and attorneys' fees; and

16       d.    that the Court award such other and further relief as is just and proper.

17

18   Dated:  September 19, 2007        O'MELVENY & MYERS LLP

19

20

21                             Marc F. Feinstein

                    Attorneys for Counter-defendants

22                       MGA Entertainment, Inc., Isaac Larian,

                    MGA Entertainment (HK) Limited, and

23                       MGAE de Mexico S.R.L. de C.V.

24

25

26

27

28

LA2:841935.2

EXHIBIT 2   PAGE 100

**PROOF OF SERVICE**

I, Karen A. Nakatsu, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On September 19, 2007, I served the within document(s):

**AMENDED ANSWER AND AFFIRMATIVE DEFENSES OF MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LIMITED, AND MGAE DE MEXICO S.R.L. DE C.V. TO MATTEL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS**

[x] by causing to be personally served the document(s) listed above to the person(s) listed below.

John B. Quinn, Esq.
Michael T. Zeller, Esq.
B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street,
10th Floor
Los Angeles, CA 90017

[x] by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Patricia Glaser, Esq.
Christensen, Glaser, Fink, Jacobs,
Weil & Shapiro, LLP
10250 Constellation Blvd.,
19th Floor
Los Angeles, CA 90067

Michael H. Page, Esq.
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

James W. Spertus, Esq.
Law Offices of James W. Spertus
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

LA2:817525.2

EXHIBIT 2   PAGE 110

1    I declare under penalty of perjury under the laws of the United States that the
2 above is true and correct.

3    Executed on September 19, 2007, at Los Angeles, California.

4

5                                    _Karen A. Nakatsu_
                                     Karen A. Nakatsu
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:817525.2

EXHIBIT 2 PAGE III