QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>MATTEL, INC.'S *EX PARTE* APPLICATION TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS; AND FOR MODIFICATION OF SCHEDULING ORDER<br><br>Hearing Date: TBA<br>Time: TBA<br>Place: TBA<br><br>Phase 1:<br>Discovery Cut-Off: January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008<br><br>**[Declaration of Diane C. Hutnyan; Notice of Lodging; and Proposed Order filed concurrently herewith]** |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Pursuant to Local Rule 7-19, Mattel, Inc. ("Mattel") respectfully seeks *ex parte* relief for an order (1) enforcing the May 15, 2007 Order Granting Mattel's Motion To Compel Production of Documents And Interrogatory Responses By MGA ("May 2007 Order"), the August 13, 2007 Order Granting In Part And Denying In Part Mattel's Motion To Compel Production Of Documents by MGA ("August 2007 Order"), and the June 20, 2006 on-the-record stipulation before the Honorable Robert N. Block, Magistrate Judge, in which MGA agreed to provide responsive tangible items for inspection within fifteen days of a request; (2) compelling Defendant MGA to make available for immediate inspection, imaging and 3D scanning all tangible items responsive to Request Nos. 7-13, 26-27, 32-36, 46, 51, 53, 55, 96-100 of Mattel, Inc.'s First Set of Requests For Production Of Documents And Tangible Things To MGA Entertainment, Inc. ("First Set") and to Request Nos. 5, 6, 9-10, 13, 16-17, 49, 52, and 166 of Mattel, Inc.'s First Set of Requests For Documents And Things Re Claims Of Unfair Competition To MGA Entertainment, Inc. ("First UC Set")[1]; and (3) granting cost-shifting for the inspections in Hong Kong and Shenzhen, China which have become necessary due to MGA's failure to produce the items earlier in the U.S.; and (4) modifying the scheduling order extending time to allow Mattel to inspect, image and 3D scan these tangible items, to take depositions and other discovery related to the tangible items that were not produced (or even revealed until recently), and to permit its experts to incorporate this new information into their initial expert reports.

Mattel makes this application on the grounds that, as MGA has just recently disclosed, it deliberately interpreted the scope of the compelled requests to

---

[1] Request Nos. 7-13, 26-27, 32-36, 46, 51, 53, 55, 96-100 of the First Set and Request Nos. 5, 6, 9-10, 13, 16-17, 49, 52, and 166 of the First UC Set are collectively referred to herein as "the Compelled Requests."

exclude and withhold from Mattel highly relevant tangible items -- notably, those items pertinent to the design, development and manufacture of Bratz and Prayer Angel, such as sculpts, rubber and metal molds for various stages of production and for doll accessories, face paint masks, "master" heads, and documentation dating these items -- from production. Since this revelation, MGA has begrudgingly identified a few doll heads and bodies in the last couple of weeks and allowed inspection, imaging and scanning of some of them in Los Angeles. However, the majority of the items relevant to Bratz's origins and development that MGA is now willing to produce -- 16 metal Bratz molds, 4 decor-master Bratz heads, 12 Bratz polyurethane samples, and 3 metal molds relating to the production of Prayer Angel (another MGA product whose production is relevant to the Bryant-Bratz chronology) -- are only being made available for inspection in Shenzhen, China or in Hong Kong. MGA also refuses to either produce the rest of the tangible items or to state that it has produced the rest of the tangible items responsive to the requests, instead taking the position that tangible items are not responsive to the requests and stating that it has made a substantial production of all "responsive" items. Further, MGA's delay in producing these items has prejudiced Mattel by preventing it from taking related discovery before the January 28, 2008 fact discovery cut-off, and by preventing Mattel's experts from being able to finish their analyses and prepare their initial reports by February 11, 2008.

Pursuant to Local Rule 7-19, on January 22, 2008, counsel for MGA Entertainment, Inc. ("MGA"), Amy Park of Skadden, Arps, Slate, Meagher & Flom LLP (telephone: 650-470-4511; address: 525 University Avenue, Palo Alto, CA 94301) was given notice of this *ex parte* application. MGA has informed Mattel that it opposes this *ex parte* application.[2]

---

[2] Previous efforts to resolve the issue (including two meet-and-confer telephone conversations and detailed correspondence) were unsuccessful. Declaration of (footnote continued)

This application is based on this Application, the accompanying Memorandum of Points and Authorities, the Declaration of Diane C. Hutnyan dated January 24, 2008, the pleadings and orders lodged concurrently herewith, the pleadings and other papers on file in this action, such matters of which the Court may take judicial notice, and such further argument and evidence which may be presented at or before the hearing.

DATED: January 24, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _____
Diane C. Hutnyan
Attorneys for Mattel, Inc.

---

Diane C. Hutnyan In Support Of Mattel, Inc.'s Ex Parte Application To Enforce Court Orders Compelling Production Of Tangible Materials; And For Modification of Scheduling Order ("Hutnyan Dec."), dated January 24, 2008 and filed concurrently herewith, ¶ 1 and Exh. 1 (Email exchange between D. Hutnyan and A. Park, dated January 22, 2008).

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Three orders compelled MGA to produce to Mattel the molds, control and engineering drawings, sculpts, casts, prototypes and other things that Bryant and MGA used to create, design, develop and manufacture Bratz and Prayer Angels. Mattel learned in just the last couple of weeks that MGA has such items in China and had concealed them from Mattel in violation of these Orders. Now, a week from the Phase One discovery cut-off, Mattel must seek another order compelling a complete production and relief from the discovery cut-off for these tangible items.

MGA's secret limitations on Mattel's requests were revealed as the result of a December 21, 2007 request to produce certain tangible items for inspection, photographing and digital scanning within 15 days pursuant to the June 20, 2006 on-the-record stipulation before Judge Block. To make sure there was no confusion about what was requested, Mattel asked for "any and all (1) tangible three-dimensional objects that are responsive to any request for production or interrogatory previously served on MGA, its Hong Kong affiliate, or any of its agents, *including without limitation, all molds, sculpts, doll heads, prototypes, models, and three-dimensional objects that are in the custody and control of MGA, its Hong Kong affiliate, or any of its agents; and (2) all molds, sculpts, doll heads, prototypes, models, and three-dimensional objects used in the manufacture, design or creation, or production of, or that are otherwise related to, Bratz or Prayer Angel dolls and are in the custody and control of MGA, its Hong Kong affiliate, or any of its agents.*"[3]

On a telephonic meet-and-confer that took place on January 3, 2008, counsel for MGA stated that he believed Mattel's letter request was broader than the

---

[3] *Id.*, Exh. 2 (Letter from D. Hutnyan to T. Miller, dated December 21, 2007) (emphasis added).

scope of Mattel's requests for production, and specifically requested that Mattel agree to narrow its letter request to what was allegedly responsive to its document requests by removing the language after the first occurrence of "agents" -- the italicized language above.[4] Mattel's counsel pointed out that all the items listed in the questioned portion of the request were responsive to its requests and requested clarification as to which items MGA contended were not within the scope of the requests.[5] MGA's counsel responded that **"*among other things*, Mattel's requests do not call for molds used in conjunction with the manufacture of dolls or other tangible items."**[6]

When in subsequent discussions and correspondence, Mattel's counsel pointed out at least nine specific requests for production that called for molds (and as to which production had previously been compelled by Judge Infante),[7] MGA would not agree that molds were responsive,[8] but identified 12 molds and related items that had never before been produced and purportedly were "recently located" by MGA.[9] As to these items, MGA said it would take "several weeks" to get them

---

[4] *Id.*, at ¶ 3.
[5] *Id.*, at ¶ 4 and Exh. 3 (Letter from A. Temkin to D. Hutnyan dated January 7, 2008), at 1 ("you asked us to specify where your letter was incorrect. . .").
[6] *Id.*, Exh. 3, at 1 (emphasis added).
[7] *Id.*, Exh. 4 (Letter from D. Hutnyan to A. Temkin and A. S. Park dated January 9, 2008), at 2-3 (listing nine requests).
[8] *Id.*, Exh. 5 (Letter from A. S. Park to D. Hutnyan dated January 10, 2008), at 2 ("whether molds are called for by your requests is debatable").
[9] *Id.*, Exh. 5, at 2 ("MGA has recently located approximately 12 Bratz molds in Shenzhen, China"); Exh. 6 (Email from A. S. Park to D. Hutnyan dated January 11, 2008, attaching photographs of the molds); Exh. 8 (Letter from A. S. Park to D. Hutnyan dated January 15, 2008, with new photographs of the Bratz molds and additional molds of Prayer Angel which "MGA also has located").

to the United States and so Mattel would have to send people to the People's Republic of China just to inspect them.[10]

When Mattel requested other specific tangible items related to the origin and development of Bratz, MGA also declined to state whether it had searched for those tangible items and merely stated that it had "substantially completed its production of tangible items in response to the requests that you characterized as calling for tangible items 'relating to the origin, creation, design or development of Bratz.'"[11] It refused to elaborate as to what it believed was "responsive" and again argued that tangibles were not called for by Mattel's requests.[12] And MGA to date has refused to identify what "other things" in Mattel's December 21 letter it has unilaterally concluded Mattel's requests do not call for.[13] It seems clear now that MGA has been interpreting the requests in such a way as to exclude clay sculpts, rubber and metal molds for various stages of production and for doll accessories, face paint masks, "master" heads, documentation dating these items, and many other items related to design, development and manufacture.

Mattel now knows from a belatedly produced MGA document that Bratz head molds and other mock-up development items existed as early as 2000.[14] Indeed, Rebecca Harris, MGA's Rule 30(b)(6) designee on the early manufacture of Bratz, confirmed that as of December 8, 2000, MGA vendor Wah Shing had completed or at least was in the process of preparing a roto skin-master -- which is a

---

[10] *Id.*, Exh. 5, at 2-3 ("shipping the molds to the United States would require submission of an application to customs in both China and the United States, which I understand could potentially take several weeks. Accordingly, I told you that MGA will make the molds available for your inspection in Shenzhen . . .").

[11] *Id.*, Exh. 5, at 3.

[12] *Id.*, Exh. 5, at 3 ("Your assertion that a request specifically calling for "documents" calls for other tangible items is inconsistent with the Federal Rules and Mattel's own practice").

[13] *Id.*, ¶ 4.

[14] *Id.*, Exh. 20.

metal head mold -- for Bratz.[15] Ms. Harris further testified that Early Light had prepared mold control drawings with respect to final production molds it had developed.[16] Yet MGA has produced no Bratz head molds and no mold control drawings.[17] This is plainly improper.

MGA's failure to produce all items responsive to Mattel's requests relating to the origin, design, development and manufacture of Bratz throughout this litigation has deprived Mattel of opportunities to obtain pertinent testimony and has prevented its experts from incorporating this information into their initial expert reports. The parties' June 2006 stipulation and the May 2007 and August 2007 Court Orders should be enforced and MGA should be compelled to make available for immediate inspection, photographing and scanning all tangibles related to the origin, creation, design, development and manufacture of Bratz and Angel, and any other items responsive to Mattel's compelled requests that have not already been produced.

### Factual Background

Mattel's Requests. Each of the Compelled Requests seeks tangible items relating to the origin, creation, design, development and/or manufacture of Bratz or other relevant products in this case. Some of the requests focus directly on tangible items. These include Request No. 96 of the First Set, seeking "[a]ll doll heads, sculpts, prototypes, models, samples and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that REFER OR RELATE TO BRATZ", and Request No. 99 of the First Set, seeking "[a]ll doll heads, sculpts, prototypes, models, samples and tangible items that REFER OR

---

[15] *Id.*, Exh. 26 (Rough Transcript of the Deposition of Rebecca Harris, dated January 22, 2008), at 107:17-22.
[16] *Id.*, at 132:21-134:19.
[17] Ms. Harris could not confirm that the final production molds she had seen were those being made available in China. *Id.*, at 103:25-104:25.

RELATE TO DESIGNS for dolls, doll accessories or toys that BRYANT produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, prior to January 1, 2001."[18]

Some of the requests even call specifically for Bratz molds and tooling. Request No. 53 of the First Set seeks "[a]ll DOCUMENTS[19] that REFER OR RELATE TO the procurement, fabrication, preparation and production of each and every mold for BRATZ (including without limitation for any model, prototype, or sample thereof) prior [to] June 1, 2001 . . . ." Request No. 51 of the First Set seeks "[a]ll DOCUMENTS that REFER OR RELATE TO each and every sculpt of BRATZ (including without limitation any model, prototype or sample thereof) prior to June 1, 2001." Request No. 17 of the First UC Set seeks "[a]ll DOCUMENTS RELATING TO the tooling for any of the CONTESTED BRATZ DOLLS PRODUCTS . . . including but not limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging therefor."[20]

---

[18] *Id.*, Exh. 9 (First Set) at 25, 26.

[19] In both sets of requests, "DOCUMENT" was defined to include that term's meaning under Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001 of all writings and recordings, which "consist of letters, words, or numbers, or their equivalent, . . . or other form of data compilation." *Id.*, Exh. 9, at 2; and Exh. 10 (First UC Set), at 2. The stated definition of "DOCUMENTS" in the First Set also specifically included "every other device or medium by which or through which information of any type is transmitted, recorded or preserved." *Id.*, Exh. 9, at 2. The stated definition of "DOCUMENTS" in the First UC Set also specifically included "every other means of recording upon any tangible thing, any form of communication or representation, and any record thereby created, regardless of the manner in which the record has been stored." *Id.*, Exh. 10, at 2.

[20] *Id.*, Exh. 9, at 17; and Exh. 10, at 17. Mattel also propounded several other broader requests that encompass molds, tooling and other tangible items related to the creation, design and development of Bratz, including Request No. 5 of the First
    (footnote continued)

    Judge Infante compelled MGA to produce all items responsive to these and the other Compelled Requests. He ordered production as to the Compelled Requests from the First Set by May 31, 2007.[21] He ordered production as to the Compelled Requests from the First UC Set by August 30, 2007.[22] On December 21, 2007, Mattel again requested, pursuant to the parties' June 20, 2006 on-the-record stipulation before Judge Block, to inspect and image all tangibles within fifteen days.[23]

    <u>MGA's Production</u>. MGA has produced very few tangible items relating to the origin, creation, design, development or manufacture of Bratz. Up until Mattel's December 21, 2007 request, it had produced a few doll bodies and doll heads, but no molds, face paint masks, or other tooling at all.[24]

    *Items in Hong Kong.* MGA has claimed that more than half of MGA's production of tangible items relating to the origin, design, development or manufacture of Bratz is available for inspection and 3D scanning only in Hong Kong.[25] What appears to be twelve polyurethane samples of the head, body and

---

UC Set ("[a]ll DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS"); Request No. 32 of the First Set ("[a]ll DOCUMENTS prepared, written, transmitted or received (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE TO BRATZ"); Request No. 33 of the First Set ("[a]ll DOCUMENTS that REFER OR RELATE TO BRATZ that REFER OR RELATE TO any time prior to January 1, 2001 . . . ."); and Request No. 36 of the First Set ("[a]ll DOCUMENTS that REFER OR RELATE TO the origin(s), conception or creation of BRATZ . . . ."). *Id.*, Exh. 9 (First Set) at 7, 13, 14.

[21] May 2007 Order, lodged concurrently herewith, at 14.
[22] August 2007 Order, lodged concurrently herewith, at 14.
[23] Hutnyan Dec., Exh. 2.
[24] *Id.*, ¶ 10.
[25] *Id.*, Exh. 11 (Letter from A. S. Park to S. Kidman dated December 26, 2007), at 1 ("various items . . . 'are subject to an undertaking given to the Hong Kong court
 (footnote continued)

shoes of Bratz and four hand painted decor-masters on 4 rubber head sculpts of Bratz were purportedly subject to an undertaking prohibiting their shipment out of the country.[26] Pictures of these items provided by MGA show a striking resemblance to items which, according to MGA in sworn statements made in Hong Kong proceedings, were made "between the Years 2000 and 2001" in California.[27]

Meanwhile, MGA has refused to produce the undertaking, to identify the Court or dispute from which it issued, to identify when the undertaking was put into effect, or to share any information about its supposed efforts to gain the temporary release of these items so they can be inspected and scanned in the United States.[28] MGA has further failed to provide any authority suggesting that the

---

that prevents the items from being sent to the United States absent relief from the court'").

[26] *Id.*, Exh. 11, at 1; Exh. 6 (enclosing photographs of items located in Hong Kong); Exh. 12 (Letter from A. S. Park to D. Hutnyan dated January 2, 2008), at 1 (stating that the undertaking prevents shipment of the subject items to the U.S.); Exh. 8 (stating that MGA's purported request to vary the undertaking was denied by the Hong Kong court).

[27] *Compare* photographs of bates-numbered Hong Kong items MGA-TI-000785-800 in Hutnyan Dec., Exh. 6 and Hutnyan Dec., Exh. 13 (Affidavit of Daphne Gronich in Hunglam Toys case, MGA 0883230-40), at 0883232 and 0883236 ("the PU Samples between the Years 2000 and 2001 in the State of California"); Exh. 14 (Exhibit to Affidavit of Daphne Gronich, MGA 0883260-61 and photograph of the original) (depicting "the PU Samples"); Exh. 15 (Affidavit of Daphne Grohnich in CityWorld case, MGA 0883304-12), at 0883306, 0883310 and 0883311 ("the Decor-Masters [were] between the Years 2000 and 2001 in the state of California"); Exh. 16 (Exhibit to Affidavit of Daphne Gronich, MGA 0883346-47 and photograph of the original) (depicting "the Decor-Masters").

[28] *Id.*, Exh. 11, at 2 ("I have no obligation to provide you any details regarding the litigation in Hong Kong"); Exh. 12 ("MGA . . . will not provide that information to you"); Exh. 5 ("MGA will not provide . . . a copy of the undertaking so that you could determine for yourself whether it truly prevents the items from being shipped here"); *see also* Exh. 17 (Letter from S. Kidman to A. S. Park dated December 23, 2007) and Exh. 19 (Letter from D. Hutnyan to A. S. Park dated January 2, 2008)
   (footnote continued)

unidentified Hong Kong undertaking provides a privilege or immunity from the orders of a U.S. federal court to produce discoverable items.[29] If such a prohibition existed, then MGA was obligated to (a) raise an objection to the requests; (b) seek reconsideration of the Orders; or (c) make a timely appeal of the Orders to this Court. MGA did none of these. Instead, it did nothing to comply with the Court's orders, forcing upon Mattel the onus of challenging MGA's apparently knowing disregard of the Discovery Master's Orders.

*Items in Shenzhen.* On January 10, 2008, the very day after Mattel's counsel pointed out nine separate requests that called for molds and tooling, MGA's counsel announced for the first time that "following a diligent search, MGA has recently located approximately 12 Bratz molds in Shenzhen, China" that were "created in February 2001, and are molds of various Bratz body parts, including the

---

(both memorializing MGA's refusal to provide any information about the undertaking).

Meanwhile, MGA contends -- having cited no facts or law that would support its position -- that it has the right to submit the undertaking *in camera* in opposition to this motion. *Id.*, Exh. 12 ("MGA is prepared to provide copies of the Hong Kong applications and information regarding the litigation to Judge Infante *in camera*"); Exh. 5 ("MGA will provide the undertaking to Judge Infante *in camera*"). Mattel respectfully submits that MGA cannot have it both ways; since Mattel has been deprived of basic information about the undertaking that would allow it to assess or test its applicability, then MGA cannot use the undertaking to excuse its failure to produce the items in the United States. Mattel asks the Court to disregard any *in camera* submission concerning the undertaking unless the purpose of such a review is explained and Mattel has been given an opportunity to respond. *See United States v. Hall,* 854 F.2d 1036, 1042 (7th Cir.1988) (describing "adversarial safeguards" necessary for the "properly limited use of *in camera* review" as giving appropriate notice of the purpose for the *in camera* review to the opposing party, giving it an opportunity to respond before *in camera* review is granted).

[29] *Id.*, ¶ 18.

torso, arms and legs."[30] MGA refuses to bring these items to the United States also, suggesting that it could take a long time to clear customs in both countries,[31] but has provided no explanation as to why it did not start this process when the requests were first served, in March of 2005 or December of 2006; or to comply with the Discovery Master's Order in May 2007; or to comply with the Discovery Master's Order in August 2007. To Mattel's knowledge, MGA has made no move to bring itself into compliance with these Orders even today.[32]

On January 15, 2008, MGA's counsel announced that it had located molds relating to Prayer Angel as well, and they also would be available for inspection only in the People's Republic of China.[33]

*The Remaining Tangibles.* Finally aware of MGA's selective interpretation of "tangible items" and "documents," and of the existence of the Shenzhen molds, Mattel's counsel inquired as to specific other items encompassed within its requests but seemingly missing from MGA's production:

- clay sculpts for each doll developed;
- mold(s) taken of the clay, perhaps of rubber, perhaps in multiple versions;
- closures and documentation and tooling related to the design of the closures;
- resin or fastcast sculpts from the mold of the clay;
- metal molds relating to all the body parts, including the head;

---

[30] *Id.*, Exh. 5, at 2; and Exh. 6 (photographs of the 12 molds in China); Exh. 8 (new photographs of the Bratz and Prayer Angel molds in China).
[31] *Id.*, Exh. 5, at 3 ("*could potentially* take several weeks") (emphasis added).
[32] According to MGA, shipping the steel molds is "neither practical nor reasonable" (*Id.*, Exh. 8, at 2) because they are expensive to ship, and because shipping might cause unspecified damage to the items. *Id.*, Exh. 5, at 2. But MGA does not explain why it could not properly pack the molds up and send them in a cost-effective manner when it was first ordered to produce them.
[33] *Id.*, Exh. 8, at 2.

- vinyl super master of the head;
- multiple masters of the head;
- paint master;
- face paint masks;
- molds for all plastic accessories coming with the dolls;
- printing plates for packaging;
- documentation including schematics, control and engineering drawings and communications with the manufacturer about machining, tolerances, dimensions, or assembly of the dolls;
- anything purportedly dating from before or after February 2001; and
- anything relating to the mock-up development tooling and documentation that was transferred from MGA vendor Wah Shing to MGA vendor Early Light at MGA's direction on or around December 8, 2000, such as the "roto head skin-master" -- which is a Bratz head mold -- that was referenced in an email produced by MGA bates-numbered MGA 0065414-15 and confirmed by MGA's 30(b)(6) designee.[34]

MGA's counsel has refused to disclose whether it has searched for any of these items, and continues to assert its position that molds and other tangible items relating to the origin and development of Bratz are not in within the scope of Mattel's requests.[35] MGA will only state that it has "substantially completed its production of tangible items in response to the requests that you characterized as calling for tangible items 'relating to the origin, creation, design or development of

---

[34] Id., Exh. 19 (Letter from D. Hutnyan to A. Park dated January 14, 2008), at 2-3; see also Exh. 20 (MGA 0065414-15 email regarding transfer of tooling from Wah Shing to Early Light); Exh. 26 (Rough Transcript of the Deposition of Rebecca Harris, dated January 22, 2008), at 107:17-22..

[35] Id., Exh. 3, at 1 ("your letter mischaracterizes MGA's obligation to produce tangible items"); Exh. 5, at 3 (rejecting assertion that MGA is withholding tangibles); Exh. 8, at 2 ("our position has not changed").

Bratz',"[36] that it "continues to conduct a reasonable, good faith search for documents and tangible items,"[37] and that "some of the material you are seeking is several years old and much of it may have ceased to exist before this action was filed."[38] This belated and ambiguous suggestion that MGA destroyed Bratz-related documents, molds, castings, dolls, prototypes, models, printing plates and other tangible items contradicts MGA's repeated representation that it preserves everything.[39]

## Argument

### I. MGA Should Be Compelled To Provide All Tangibles Related To The Origin, Creation, Design, Development And Manufacture of Bratz and Prayer Angel For Immediate Inspection, Imaging and 3D Scanning

MGA has concealed from Mattel molds, tooling and other tangible objects relevant to Bratz design and development. While providing access to hundreds of packaged Bratz dolls (falsely suggesting that it was being forthcoming with production of tangible items related to Bratz) and repeating that MGA believed its production was "substantially complete,"[40] MGA was, now admittedly, omitting almost all tangibles relating to the development and first manufacture of Bratz -- producing no metal molds, no clays, no rubber molds, no closures, no face paint masks, no supermasters or paintmasters, etc.[41]

---

[36] *Id.*, Exh. 5, at 3; *see also* Exh. 8, at 2.
[37] *Id.*, Exh. 8, at 3.
[38] *Id.*, Exh. 8, at 2.
[39] *E.g., id.,* Exh. 21 (Tonnu Tr., dated September 25, 2007), at 656:9-22 (Q. "Do you know whether all of the Bratz design documents from 2000 and 2001 have been preserved? ... So as far as you are aware, they've all been preserved?" A. "Yes"); *see also* Exh. 21, 645:15-646:6; 686:3-24; 710:4-13; 715:20-716:7.
[40] *Id.*, Exh. 11, at 3; Exh. 12, at 2-3; Exh. 5, at 3; and Exh. 8, at 2 (representing on December 26, 2007, and January 2, 10, and 15, 2008 that MGA believes production to be "substantially complete").
[41] *Id.*, ¶ 10.

It was only when Mattel discovered that MGA had secretly interpreted its requests to exclude all molds, and started asking pointed questions, did any of these kinds of tangibles appear at all (but even then only a few items related to molds and tooling):

- January 4, 2008: MGA discovers "3-dimensional" displays and "additional items on which [MGA] may rely"[42]
- January 10, 2008: MGA discovers Bratz molds in China[43]
- January 15, 2008: MGA discovers Prayer Angel molds[44]
- January 17, 2008: MGA discovers a "binder of material relating to the development of Bratz"[45]
- January 21, 2008: MGA discovers "additional tangible items" for inspection in Los Angeles.[46]

MGA has no basis for reading out of the Discovery Master's Orders an obligation to find and produce molds and tangible items. The requests sought and orders compelled their production.

MGA may try to justify its withholding of molds and other tangible items associated with the creation, design, development and manufacture of Bratz on the basis that Mattel sought and the Discovery Master compelled production of only "documents."[47] But the definition of "DOCUMENT" in Mattel's Compelled Requests specifically included "tangible items." Also, it is untenable to suggest, as MGA has, that requests that directly seek DOCUMENTS (including tangible things) that "REFERS OR RELATES TO" molds do not call for the production or

---

[42] *Id.*, Exh. 22 (Letter from A. S. Park to D. Hutnyan dated January 4, 2008), at 1; *see also* Exh. 23 (January 10, 2008 email with photographs of displays).
[43] *Id.*, Exh. 5, at 2.
[44] *Id.*, Exh. 8, at 2.
[45] *Id.*, Exh. 24 (Letter from A. S. Park to D. Hutnyan dated January 17, 2008).
[46] *Id.*, Exh. 25 (Letter from A. S. Park to D. Hutnyan dated January 21, 2008).
[47] *Id.*, Exh. 9 and 10.

inspection of the molds themselves. To the contrary, Mattel's requests, including those MGA was compelled on, defined "REFERS OR RELATES" to as encompassing matters that embody or evidence a given matter.[48] (And even if MGA were right, that does not excuse its failure to produce the control and engineering drawings used to create the molds or for Bratz dolls themselves.

Third, the requests also defined "DOCUMENTS" to include all "writings" and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence.[49] Rule 1001 provides that "'writings' and 'recordings' consist of letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation." Thus, in Federal Court, "documents" clearly includes "tangible items." See *LG Phillips LCD Co., Ltd. v. Tatung Co.*, 2007 WL 2908183 (D. Del. 2007) (defining "document" as being used "in its customarily broad sense pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Evidence 1001" and expressly including "things," which it defined as "any tangible item"); *In re Genetically Modified Rice Litigation*, 2007 WL 1655757 (E.D. Mo. 2007) (defining "document" as being "synonymous and equal in scope to usage of this term in Fed. R. Civ. P. 34(a) and to the terms . . . in Fed. R. Evid. 1001" and including within it "writings of every kind and description that are fixed in any medium upon which intelligence or information can be recorded or retrieved"); *see also Black's Law Dictionary* (8th Ed. 2004) (defining "document" as "something tangible on which words, symbols or marks are recorded"). Even MGA has

---

[48] *Id.*, Exh. 9 and 10.
[49] *Id.*, Exh. 9 and 10.

admitted that "documents" includes "word or *images that have been recorded in or reduced to hard copy form.*"[50]

Molds constitute "records" of the design, development and/or manufacture of the dolls; indeed, that is one of the reasons they are highly relevant. As is clear from the photographs provided by MGA, the Bratz and Prayer Angel molds in China each feature images of the doll that have been recorded in the steel;[51] and they all have identifying numbers or letters or other characters on them, showing their correspondence to certain products. They are "documents" -- even under MGA's own narrow definition. The same is true of the paintmasters and other items, which all have identifying characters on them, which feature images that have been recorded in their media, and which in and of themselves are records of the design, development and manufacture of Bratz.

For all these reasons, MGA's refusal to recognize these items as responsive and continuing failure to produce them (or its failure to preserve them, if it is true that these items no longer exist) can only be considered willful.

The tangible items and the information they reflect are without question highly relevant to the timing and chronology of Bratz and Prayer Angels. MGA should be compelled to make a production of all of the items listed above, and all of the other tangible items relating to the creation, design, development and/or manufacture of Bratz or Prayer Angel without further delay or equivocation.

As for the items in Hong Kong and Shenzhen (or in other locations where inspection and scanning in the U.S. is no longer feasible under the case schedule because of MGA's defiance of Court Orders), MGA should bear the costs resulting from its failure to timely produce the items. One might infer from MGA's

---

[50] *Id.*, Exh. 5, at 3 (emphasis added).
[51] *Id.*, Exh. 6 and Exh. 8 (showing photographs of the molds and tooling in China).

unexplained refusal to share the supposed undertaking upon which it is relying with Mattel that the items in Hong Kong could have been shipped to the U.S. before it took effect; and MGA offers no reason the items in Shenzhen could not have been shipped over at any time in the last two years.[52] But MGA concealed these items, preventing Mattel and its experts from getting this crucial evidence at a time when follow-up discovery could have been taken within the fact discovery period. Now that the fact discovery cut-off is upon us, and the only practical solution is to conduct the inspections in Hong Kong and Shenzhen, MGA should be compelled to provide access for inspection and scanning in both locations at times selected by Mattel, and to pay the costs which must be incurred due to the necessity of conducting the inspection and scanning in Asia.

## II. The Scheduling Order Should Be Modified To Accommodate MGA's Late Production and Mattel's Need For Further Discovery And Analysis Related To The New Items Produced

There is no question that the Bratz and Prayer Angels molds, tooling, control and engineering drawings, casts, sculpts, etc. are clearly relevant and should have been produced a long time ago, as the Discovery Master ordered by May 2007, and then again by August 2007. MGA's failure to comply has deprived Mattel of the opportunity to take depositions on these items, and to have its experts develop analyses and opinions relating to these items and the record of design and development they constitute.

---

[52] Very belated promises of "home office inspection," such as these MGA has offered in Asia, especially when production could have been made at the propounding party's location months or years before, are properly viewed as a "defense strategy" rather than a legitimate attempt to comply with discovery obligations. *Compagnie Des Bauxites De Guinea v. Insurance Company of North America*, 651 F.2d 877, 883-84 (3d. Cir. 1981).

Such a scheme cannot be condoned by the Court. The inspection, imaging and 3D scanning of all the responsive items should take place without further delay and the scheduling order should be modified to allow Mattel two weeks after the inspection, imaging and scanning is complete for completion of fact discovery relating to or relying upon these items; and four weeks after the inspection, imaging and scanning is complete for preparation of its experts' initial reports relating to or relying upon these items.

## Conclusion

For all of the foregoing reasons, Mattel respectfully requests that the Court grant an order (1) enforcing the May 2007 and August 2007 Orders, and the June 2006 stipulation, specifically with regard to the Compelled Requests, (2) compelling MGA (a) to make all of the requested items available for inspection, imaging and 3D scanning at times chosen by Mattel, by February 7, 2008 in Los Angeles, or elsewhere if inspection cannot be done in Los Angeles in that timeframe, and (b) to reimburse Mattel for the costs of inspection and scanning of any items that cannot be produced in Los Angeles; and (3) modifying the scheduling order to accommodate the fact discovery and expert analysis relating to these items.

DATED: January 24, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Diane Hutnyan
Diane C. Hutnyan
Attorneys for Plaintiff and Cross-Defendant
Mattel, Inc.