**EXHIBIT 10**

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS RE CLAIMS OF UNFAIR COMPETITION TO MGA ENTERTAINMENT, INC. |
| Defendant. | |
| AND CONSOLIDATED CASES. | |

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Mattel, Inc. hereby requests that MGA Entertainment, Inc. ("MGA") respond to these document requests ("Requests") and make available for inspection and copying originals of the following documents within 30 days of service at the offices of Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th floor, Los Angeles, CA 90017. MGA shall be obligated to supplement responses to these requests at such times and to the extent required by Rule 26(e) of the Federal Rules of Civil Procedure.

## I.   **DEFINITIONS**

For purposes of these Requests, the following definitions apply:

A.   The terms "YOU," "YOUR" and "MGA" mean MGA Entertainment, Inc. and any individual or entity acting directly or indirectly by, through, under or on behalf of MGA Entertainment, Inc., including but not limited to current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of MGA Entertainment, Inc. and any corporation, partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and any other PERSON acting on its behalf.

B.   The term "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

C.   "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 1001 of the Federal Rules of Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all writings, including but not limited to handwriting, typewriting, printing, image, photograph, photocopy, digital file of any kind, transmittal by (or as an attachment to) electronic mail (including instant messages and text messages) or facsimile, video and audio recordings, and every other means of recording upon any tangible thing, any form of communication or representation, and any record thereby created, regardless of the manner in which the record has been stored, and all non-identical copies of such DOCUMENTS, in the possession, custody, or control of YOU, YOUR counsel, or any other PERSON acting on YOUR behalf.

D.   The term "COMMUNICATION," in the plural as well as the singular, means any transmittal and/or receipt of information, whether such was oral or written, and whether such was by chance, prearranged, formal or informal, and

07975/1928319.2

EXHIBIT __10__   PAGE __101__

1 specifically includes, but is not limited to, conversations in person, telephone
2 conversations, electronic mail (including instant messages and text messages),
3 voicemail, letters, memoranda, statements, media releases, magazine and newspaper
4 articles, and video and audio transmissions.

5         E.      "EMBODIMENT" means any representation of the identified
6 product or its retail packaging, whether two-dimensional or three-dimensional, and
7 whether in tangible, digital, electronic or other form, including but not limited to all
8 works, designs, artwork, sketches, drawings, illustrations, representations,
9 depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models,
10 samples, reductions to practice, developments, inventions and/or improvements, as
11 well as all other items, things and DOCUMENTS in which any of the foregoing are
12 or have been expressed, embodied, contained, fixed or reflected in any manner,
13 whether in whole or in part.

14         F.      "CONTESTED MGA PRODUCTS" means the CONTESTED
15 BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the
16 CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the
17 CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED
18 MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS
19 PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has
20 ever been known as, or sold, offered for sale, licensed, offered for license or
21 marketed under the name or terms "Bratz," "4-ever Best Friends," "Mommy's
22 Little," "Alienracers," or any derivative thereof, that provides a basis for any claim
23 by YOU against MATTEL, including but not limited to "Bratz Dolls," "Bratz
24 Dogz," "Winter Wonderland," "Bratz Sportz," "Formal Funk," "Sun-Kissed
25 Summer," "Funky Fashion Makeover Head," "Runway Disco," "4-ever Best
26 Friends," "Mommy's Little Patient," and "Alienracers."

27         G.      "CONTESTED BRATZ DOLLS PRODUCTS" means any of
28 the following that provides a basis for any claim by YOU against MATTEL: (i) any

-3-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT _10_ PAGE _102_

1    EMBODIMENT or project ever known by the name "Bratz" or any derivative

2    thereof (whether in whole or in part and regardless of what such EMBODIMENT or

3    project is or has been also, previously or subsequently called) and any doll or any

4    portion thereof that is now or has ever been known as, or sold, offered for sale,

5    licensed, offered for license or marketed under, the name or term "Bratz" or any

6    derivative thereof (whether in whole or in part and regardless of what such doll is or

7    has been also, previously or subsequently called), and all prototypes, models,

8    samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

9    playset and accessory that YOU distribute under the name "Bratz" or any derivative

10    thereof; and/or (iii) any and all other goods, product packaging, advertisements,

11    promotional materials or other thing or item or material manufactured, produced,

12    printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

13    imported, exported, licensed, offered for license, sold or offered for sale by YOU or

14    on YOUR behalf under the name "Bratz" or any derivative thereof.

15          H.    "CONTESTED BRATZ PETZ PRODUCTS" means any of the

16    following that provides a basis for any claim by YOU against MATTEL: (i) any

17    EMBODIMENT or project ever known by the name "Bratz Petz" or any derivative

18    thereof (whether in whole or in part and regardless of what such EMBODIMENT or

19    project is or has been also, previously or subsequently called) and any toy pet or any

20    portion thereof that is now or has ever been known as, or sold, offered for sale,

21    licensed, offered for license or marketed under, the name or term "Bratz" or any

22    derivative thereof (whether in whole or in part and regardless of what such toy pet is

23    or has been also, previously or subsequently called), and all prototypes, models,

24    samples and versions of such EMBODIMENT, toy pet or any portion thereof; (ii)

25    any playset and accessory that YOU distribute under the name "Bratz Petz" or any

26    derivative thereof; and/or (iii) any and all other goods, product packaging,

27    advertisements, promotional materials or other thing or item or material

28    manufactured, produced, printed, ordered, marketed, advertised, promoted,

1  displayed, distributed, shipped, imported, exported, licensed, offered for license,

2  sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Petz" or

3  any derivative thereof.

4       I.    "CONTESTED BRATZ FUNKY FASHION MAKEOVER

5  HEAD" means any of the following that provides a basis for any claim by YOU

6  against MATTEL: (i) any EMBODIMENT or project ever known by the name

7  "Bratz Funky Fashion Makeover Head" or any derivative thereof (whether in whole

8  or in part and regardless of what such EMBODIMENT or project is or has been

9  also, previously or subsequently called) and any styling head or any portion thereof

10  that is now or has ever been known as, or sold, offered for sale, licensed, offered for

11  license or marketed under, the name or term "Bratz" or any derivative thereof

12  (whether in whole or in part and regardless of what such styling head is or has been

13  also, previously or subsequently called), and all prototypes, models, samples and

14  versions of such EMBODIMENT, styling head or any portion thereof; (ii) any

15  accessory that YOU distribute under the name "Bratz Funky Fashion Makeover

16  Head" or any derivative thereof; and/or (iii) any and all other goods, product

17  packaging, advertisements, promotional materials or other thing or item or material

18  manufactured, produced, printed, ordered, marketed, advertised, promoted,

19  displayed, distributed, shipped, imported, exported, licensed, offered for license,

20  sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Funky

21  Fashion Makeover Head" or any derivative thereof.

22       J.    "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means

23  any of the following that provides a basis for any claim by YOU against MATTEL:

24  (i) any EMBODIMENT or project ever known by the name "4-ever Best Friends" or

25  any derivative thereof (whether in whole or in part and regardless of what such

26  EMBODIMENT or project is or has been also, previously or subsequently called)

27  and any doll or any portion thereof that is now or has ever been known as, or sold,

28  offered for sale, licensed, offered for license or marketed under, the name or term

1   "4-ever Best Friends" or any derivative thereof (whether in whole or in part and

2   regardless of what such doll is or has been also, previously or subsequently called),

3   and all prototypes, models, samples and versions of such EMBODIMENT, doll or

4   any portion thereof; (ii) any playset and accessory that YOU distribute under the

5   name "4-ever Best Friends" or any derivative thereof; and/or (iii) any and all other

6   goods, product packaging, advertisements, promotional materials or other thing or

7   item or material manufactured, produced, printed, ordered, marketed, advertised,

8   promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

9   license, sold or offered for sale by YOU or on YOUR behalf under the name "4-ever

10  Best Friends" or any derivative thereof.

11          K.    "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS"

12  means any of the following that provides a basis for any claim by YOU against

13  MATTEL:  (i) any EMBODIMENT or project ever known by the name "Mommy's

14  Little Patient" or similar name or any derivative thereof (whether in whole or in part

15  and regardless of what such EMBODIMENT or project is or has been also,

16  previously or subsequently called) and any doll or any portion thereof that is now or

17  has ever been known as, or sold, offered for sale, licensed, offered for license or

18  marketed under, the name or term "Mommy's Little Patient" or similar name or any

19  derivative thereof (whether in whole or in part and regardless of what such doll is or

20  has been also, previously or subsequently called), and all prototypes, models,

21  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any

22  playset and accessory that YOU distribute under the name "Mommy's Little Patient"

23  or similar name or any derivative thereof; and/or (iii) any and all other goods,

24  product packaging, advertisements, promotional materials or other thing or item or

25  material manufactured, produced, printed, ordered, marketed, advertised, promoted,

26  displayed, distributed, shipped, imported, exported, licensed, offered for license,

27  sold or offered for sale by YOU or on YOUR behalf under the name "Mommy's

28  Little Patient" or similar name or any derivative thereof.

1    L.    "CONTESTED ALIENRACERS PRODUCTS" means any of

2    the following that provides a basis for any claim by YOU against MATTEL: (i) any

3    EMBODIMENT or project ever known by the name "Alienracers" or any derivative

4    thereof (whether in whole or in part and regardless of what such EMBODIMENT or

5    project is or has been also, previously or subsequently called) and any toy vehicle,

6    character, or any portion thereof that is now or has ever been known as, or sold,

7    offered for sale, licensed, offered for license or marketed under, the name or term

8    "Alienracers" or any derivative thereof (whether in whole or in part and regardless

9    of what such toy is or has been also, previously or subsequently called), and all

10    prototypes, models, samples and versions of such EMBODIMENT, toy vehicle,

11    character, or any portion thereof; (ii) any playset and accessory that YOU distribute

12    under the name "Alienracers" or any derivative thereof; and/or (iii) any and all other

13    goods, product packaging, advertisements, promotional materials or other thing or

14    item or material manufactured, produced, printed, ordered, marketed, advertised,

15    promoted, displayed, distributed, shipped, imported, exported, licensed, offered for

16    license, sold or offered for sale by YOU or on YOUR behalf under the name

17    "Alienracers" or any derivative thereof.

18    M.    "CONTESTED MATTEL PRODUCTS" means the

19    CONTESTED MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED

20    MATTEL MY SCENE PETS PRODUCTS, the CONTESTED MATTEL MY

21    SCENE STYLING HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the

22    CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS, and the

23    CONTESTED MATTEL ACCELERACERS PRODUCTS, and any doll, toy,

24    portion thereof, or version thereof that is now or has ever been known as, or sold,

25    offered for sale, licensed, offered for license or marketed under the name or terms

26    "My Scene," "Wee-3," "Little Mommy," "AcceleRacerS," or any derivative thereof,

27    that provides a basis for any claim by YOU against MATTEL, including but not

28    limited to "My Scene Dolls," "My Scene Pets," "My Scene Chillin' Out," "My Scene

EXHIBIT _10__ PAGE _106_

1 | Miami Getaway," "My Scene Night on the Town," "My Scene Jammin' in Jamaica,"

2 | "My Scene Guava Gulch Tiki Lounge," "My Scene Sound Lounge," "My Scene

3 | Stylin' Head," "Mattel Wee-3," "Mattel Little Mommy Potty Training Baby Doll,"

4 | and "Mattel Acceleracers."

5 |       N.    "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS"

6 | means any of the following that provides a basis for any claim by YOU against

7 | MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene"

8 | or any derivative thereof (whether in whole or in part and regardless of what such

9 | EMBODIMENT or project is or has been also, previously or subsequently called)

10 | and any doll or any portion thereof that is now or has ever been known as, or sold,

11 | offered for sale, licensed, offered for license or marketed under, the name or term

12 | "My Scene" or any derivative thereof (whether in whole or in part and regardless of

13 | what such doll is or has been also, previously or subsequently called), and all

14 | prototypes, models, samples and versions of such EMBODIMENT, doll or any

15 | portion thereof; (ii) any playset and accessory that MATTEL distributes under the

16 | name "My Scene" or any derivative thereof; and/or (iii) any and all other goods,

17 | product packaging, advertisements, promotional materials or other thing or item or

18 | material manufactured, produced, printed, ordered, marketed, advertised, promoted,

19 | displayed, distributed, shipped, imported, exported, licensed, offered for license,

20 | sold or offered for sale by MATTEL under the name "My Scene" or any derivative

21 | thereof.

22 |       O.    "CONTESTED MATTEL MY SCENE PETS PRODUCTS"

23 | means any of the following that provides a basis for any claim by YOU against

24 | MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene

25 | Pets" or any derivative thereof (whether in whole or in part and regardless of what

26 | such EMBODIMENT or project is or has been also, previously or subsequently

27 | called) and any toy pet or any portion thereof that is now or has ever been known as,

28 | or sold, offered for sale, licensed, offered for license or marketed under, the name or

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT __10__ PAGE __107__

1  term "My Scene" or any derivative thereof (whether in whole or in part and

2  regardless of what such toy pet is or has been also, previously or subsequently

3  called), and all prototypes, models, samples and versions of such EMBODIMENT,

4  toy pet or any portion thereof; (ii) any playset and accessory that MATTEL

5  distributes under the name "My Scene Pets" or any derivative thereof; and/or (iii)

6  any and all other goods, product packaging, advertisements, promotional materials

7  or other thing or item or material manufactured, produced, printed, ordered,

8  marketed, advertised, promoted, displayed, distributed, shipped, imported, exported,

9  licensed, offered for license, sold or offered for sale by MATTEL under the name

10  "My Scene Pets" or any derivative thereof.

11        P.    "CONTESTED MATTEL MY SCENE STYLING HEAD"

12  means any of the following that provides a basis for any claim by YOU against

13  MATTEL:  (i) any EMBODIMENT or project ever known by the name "My Scene

14  Styling Head" or any derivative thereof (whether in whole or in part and regardless

15  of what such EMBODIMENT or project is or has been also, previously or

16  subsequently called) and any styling head or any portion thereof that is now or has

17  ever been known as, or sold, offered for sale, licensed, offered for license or

18  marketed under, the name or term "My Scene" or any derivative thereof (whether in

19  whole or in part and regardless of what such styling head is or has been also,

20  previously or subsequently called), and all prototypes, models, samples and versions

21  of such EMBODIMENT, styling head or any portion thereof; (ii) any accessory that

22  MATTEL distributes under the name "My Scene Styling Head" or any derivative

23  thereof; and/or (iii) any and all other goods, product packaging, advertisements,

24  promotional materials or other thing or item or material manufactured, produced,

25  printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped,

26  imported, exported, licensed, offered for license, sold or offered for sale by

27  MATTEL under the name "My Scene Styling Head" or any derivative thereof.

28

EXHIBIT _10_ PAGE _108_

1       Q.    "CONTESTED MATTEL WEE-3 PRODUCTS" means any of
2  the following that provides a basis for any claim by YOU against MATTEL:  (i) any
3  EMBODIMENT or project ever known by the name "Wee-3" or any derivative
4  thereof (whether in whole or in part and regardless of what such EMBODIMENT or
5  project is or has been also, previously or subsequently called) and any doll or any
6  portion thereof that is now or has ever been known as, or sold, offered for sale,
7  licensed, offered for license or marketed under, the name or term "Wee-3" or any
8  derivative thereof (whether in whole or in part and regardless of what such doll is or
9  has been also, previously or subsequently called), and all prototypes, models,
10  samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any
11  playset and accessory that MATTEL distributes under the name "Wee-3" or any
12  derivative thereof; and/or (iii) any and all other goods, product packaging,
13  advertisements, promotional materials or other thing or item or material
14  manufactured, produced, printed, ordered, marketed, advertised, promoted,
15  displayed, distributed, shipped, imported, exported, licensed, offered for license,
16  sold or offered for sale by MATTEL under the name "Wee-3" or any derivative
17  thereof.
18       R.    "CONTESTED MATTEL LITTLE MOMMY DOLL
19  PRODUCTS" means any of the following that provides a basis for any claim by
20  YOU against MATTEL:  (i) any EMBODIMENT or project ever known by the
21  name "Little Mommy" or any derivative thereof (whether in whole or in part and
22  regardless of what such EMBODIMENT or project is or has been also, previously or
23  subsequently called) and any doll or any portion thereof that is now or has ever been
24  known as, or sold, offered for sale, licensed, offered for license or marketed under,
25  the name or term "Little Mommy" or any derivative thereof (whether in whole or in
26  part and regardless of what such doll is or has been also, previously or subsequently
27  called), and all prototypes, models, samples and versions of such EMBODIMENT,
28  doll or any portion thereof; (ii) any playset and accessory that MATTEL distributes

-10-

EXHIBIT  *10*  PAGE *109*

1  under the name "Little Mommy" or any derivative thereof; and/or (iii) any and all

2  other goods, product packaging, advertisements, promotional materials or other

3  thing or item or material manufactured, produced, printed, ordered, marketed,

4  advertised, promoted, displayed, distributed, shipped, imported, exported, licensed,

5  offered for license, sold or offered for sale by MATTEL under the name "Little

6  Mommy" or any derivative thereof.

7       S.    "CONTESTED MATTEL ACCELERACERS PRODUCTS"

8  means any of the following that provides a basis for any claim by YOU against

9  MATTEL: (i) any EMBODIMENT or project ever known by the name

10  "AcceleRacers" or any derivative thereof (whether in whole or in part and regardless

11  of what such EMBODIMENT or project is or has been also, previously or

12  subsequently called) and any toy vehicle, character, or any portion thereof that is

13  now or has ever been known as, or sold, offered for sale, licensed, offered for

14  license or marketed under, the name or term "AcceleRacers" or any derivative

15  thereof (whether in whole or in part and regardless of what such toy is or has been

16  also, previously or subsequently called), and all prototypes, models, samples and

17  versions of such EMBODIMENT, toy vehicle, character, or any portion thereof; (ii)

18  any playset and accessory that MATTEL distributes under the name "AcceleRacers"

19  or any derivative thereof; and/or (iii) any and all other goods, product packaging,

20  advertisements, promotional materials or other thing or item or material

21  manufactured, produced, printed, ordered, marketed, advertised, promoted,

22  displayed, distributed, shipped, imported, exported, licensed, offered for license,

23  sold or offered for sale by MATTEL under the name "AcceleRacers" or any

24  derivative thereof.

25       T.    The term "PERSON," in the plural as well as the singular, means

26  any natural person, association, partnership, corporation, joint venture, government

27  entity, organization, trust, institution, proprietorship, or any other entity recognized

28  as having an existence under the laws in United States or any other nation.

1    U.    The term "RELATING TO" means any and all of the following

2  terms and their synonyms:  refer to, discuss, constitute, evidence, pertain to,

3  mention, support, contradict, negate, bear on, touch on, contain, embody, reflect,

4  identify, state, deal with, concern, comment on, respond to, relevant to, or describe.

5    V.    "COMPLAINT" means the Complaint for False Designation of

6  Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair

7  Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 *et seq.* and

8  California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code

9  § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or

10  about April 13, 2005.

11

12  **II.    INSTRUCTIONS**

13    A.    YOU are to produce all requested DOCUMENTS in YOUR

14  possession, custody or control.

15    B.    If YOU contend that YOU are not required to produce certain

16  DOCUMENTS called for by these Requests on the grounds of a privilege or

17  protection that YOU are not prepared to waive, identify each such DOCUMENT

18  and provide the following information:

19    1.    the date and type of the DOCUMENT, the author(s) and

20        all recipients;

21    2.    the privilege or protection that YOU claim permits YOU

22        to withhold the DOCUMENT;

23    3.    the title and subject matter of the DOCUMENT;

24    4.    any additional facts on which YOU base YOUR claim of

25        privilege or protection; and

26    5.    the identity of the current custodian of the original of the

27        DOCUMENT.

28

1       C.    DOCUMENTS shall be produced in their original file folders, or

2   in lieu thereof, any writing on the file folder from which each such DOCUMENT is

3   taken shall be copied and appended to such DOCUMENT and the PERSON for

4   whom or department, division or office for which the DOCUMENT or the file

5   folder is maintained shall be identified.

6       D.    The DOCUMENTS should be produced in their complete and

7   unaltered form.  Attachments to DOCUMENTS should not be removed.  The

8   DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for

9   any reason, including alleged nonrelevance.  If emails are produced that had

10  attachments, the attachments shall be attached when produced.

11      E.    DOCUMENTS in electronic form shall be produced in that form.

12      F.    In the event that any DOCUMENT called for by these requests

13  has been destroyed or discarded, that DOCUMENT is to be identified by stating:

14        1.    the date and type of the DOCUMENT, the author(s) and

15             all recipients;

16        2.    the DOCUMENT's date, subject matter, number of pages,

17             and attachments or appendices;

18        3.    the date of destruction or discard, manner of destruction

19             or discard, and reason for destruction or discard;

20        4.    the PERSONS who were authorized to carry out such

21             destruction or discard;

22        5.    the PERSONS who have knowledge of the content,

23             origins, distribution and destruction of the DOCUMENT;

24             and

25        6.    whether any copies of the document exist and, if so, the

26             name of the custodian of each copy.

27

28

-13-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT __10__ PAGE __12__

## III.   REQUESTS FOR DOCUMENTS AND THINGS

REQUEST FOR PRODUCTION NO. 1:

A sample of each of the CONTESTED MGA PRODUCTS, together with each such product's packaging and all instructions, promotional literature, coupons, bounce-back cards and any other materials inserted in or associated with such packaging.

REQUEST FOR PRODUCTION NO. 2:

A sample of each display, including but not limited to each point-of-purchase or in-store display, prepared, produced, printed, manufactured or used in connection with the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 3:

A complete copy of each advertisement or promotional statement prepared, produced, printed, broadcast, made available to anyone in any manner via the Internet, or otherwise used or disseminated in any way in connection with the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 4:

A complete copy of each COMMUNICATION, advertisement, promotional statement that provides a basis for any claim by YOU against MATTEL.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS.

EXHIBIT _10_ PAGE _113_

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, and ownership of any product packaging that provides a basis for any claim by YOU against MATTEL.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, and ownership of all product packaging that provides a basis for any claim by YOU against MATTEL.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of products and packaging that YOU contend provide a basis for any claim against MATTEL, whether or not such claim is made in the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of all products and packaging that YOU contend MATTEL copied or infringed.

07975/1928359.2

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT __10__ PAGE __114__

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of the CONTESTED MATTEL PRODUCTS and their associated packaging.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of all products and packaging that YOU contend MATTEL copied or infringed.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS RELATING TO any revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA PRODUCTS.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS RELATING TO the first date of availability for retail sale of each of the CONTESTED MGA PRODUCTS.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS RELATING TO the first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form.

EXHIBIT _10_ PAGE _115_

1  REQUEST FOR PRODUCTION NO. 16:

2          All head sculptures, including all preliminary head sculptures and all

3  versions of such sculptures, made, produced or prepared in connection with the

4  CONTESTED BRATZ DOLLS PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 17:

7          All DOCUMENTS RELATING TO the tooling for any of the

8  CONTESTED BRATZ DOLLS PRODUCTS, including but not limited to all

9  invoices, contracts, sales orders, purchase orders and payment relating thereto and

10  including but not limited to all DOCUMENTS relating to the engineering,

11  preparation, fabrication and creation of the molds and face paint masks used in

12  connection therewith and to the film and/or digital files used in connection with the

13  packaging therefor.

14

15  REQUEST FOR PRODUCTION NO. 18:

16          All DOCUMENTS RELATING TO the marketing, advertising,

17  promotion, licensing, offering for sale or sale of the CONTESTED MGA

18  PRODUCTS, including but not limited to all marketing studies, marketing plans,

19  sales plans, sales forecasts, strategies, surveys and analyses and including but not

20  limited to all catalogs, advertisements, brochures, displays and Internet publications.

21

22  REQUEST FOR PRODUCTION NO. 19:

23          All DOCUMENTS RELATING TO the ownership of any right, title or

24  interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

25

26  REQUEST FOR PRODUCTION NO. 20:

27          All DOCUMENTS RELATING TO any copyright, patent, design right

28  or any other registration or application for registration of the CONTESTED MGA

1  PRODUCTS, including but not limited to the complete file history relating thereto,

2  all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits,

3  correspondence, notes and other DOCUMENTS relating thereto.

4

5  REQUEST FOR PRODUCTION NO. 21:

6        Documents sufficient to identify each of the CONTESTED MGA

7  PRODUCTS by internal job or product number, SKU, and bar code number.

8

9  REQUEST FOR PRODUCTION NO. 22:

10        Documents sufficient to identify the individuals who worked on or

11  were involved in any manner with the invention, creation, origin, conception,

12  authorship, or design of the CONTESTED MGA PRODUCTS.

13

14  REQUEST FOR PRODUCTION NO. 23:

15        All DOCUMENTS RELATING TO the display, exhibition,

16  distribution, publication, circulation, or other dissemination of the CONTESTED

17  MGA PRODUCTS to distributors, the media, or the public, including but not

18  limited to toy and trade shows and conventions.

19

20  REQUEST FOR PRODUCTION NO. 24:

21        All DOCUMENTS RELATING TO any contracts or licenses entered

22  into, negotiated, proposed, or requested RELATING TO any of the CONTESTED

23  MGA PRODUCTS.

24

25  REQUEST FOR PRODUCTION NO. 25:

26        All DOCUMENTS RELATING TO any actual, proposed, offered, or

27  requested licensing, sale, or purchase of the CONTESTED MGA PRODUCTS,

28

EXHIBIT __10__ PAGE _117_

1   including but not limited to all contracts and proposed or offered contracts relating

2   thereto.

3

4   REQUEST FOR PRODUCTION NO. 26:

5          All DOCUMENTS RELATING TO the target market or potential

6   target market, and the demographics of any actual, potential or prospective

7   consumers, customers, purchasers or licensees of the CONTESTED MGA

8   PRODUCTS.

9

10   REQUEST FOR PRODUCTION NO. 27:

11          All DOCUMENTS RELATING TO the number of units of the

12   CONTESTED MGA PRODUCTS manufactured, produced, ordered, stored in

13   inventory, imported, exported, shipped, sold, or offered for sale by any PERSON,

14   including but not limited to YOU.

15

16   REQUEST FOR PRODUCTION NO. 28:

17          All DOCUMENTS RELATING TO revenues received by YOU in

18   connection with each of the CONTESTED MGA PRODUCTS.

19

20   REQUEST FOR PRODUCTION NO. 29:

21          All DOCUMENTS RELATING TO YOUR costs, including but not

22   limited to YOUR per-unit cost, for each of the CONTESTED MGA PRODUCTS.

23

24   REQUEST FOR PRODUCTION NO. 30:

25          All DOCUMENTS RELATING TO YOUR profits, including but not

26   limited to gross, incremental and net profits, for each of the CONTESTED MGA

27   PRODUCTS.

28

EXHIBIT __10__ PAGE _118_

1 REQUEST FOR PRODUCTION NO. 31:

2       All DOCUMENTS RELATING TO any complaints or dissatisfaction

3 concerning the CONTESTED MGA PRODUCTS, including but not limited to

4 DOCUMENTS recording the returns of, or the number of or rate of defects for, such

5 products.

6

7 REQUEST FOR PRODUCTION NO. 32:

8       All DOCUMENTS RELATING TO the belief of any PERSON

9 (whether or not such belief is accurate) as to the origin, affiliation, sponsorship or

10 association of the CONTESTED MGA PRODUCTS, including but not limited to all

11 studies, surveys, interviews, reports, and COMMUNICATIONS regarding any such

12 belief.

13

14 REQUEST FOR PRODUCTION NO. 33:

15       All DOCUMENTS RELATING TO the belief of any PERSON

16 (whether or not such belief is accurate) as to the origin, affiliation, sponsorship or

17 association of the CONTESTED MATTEL PRODUCTS, including but not limited

18 to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any

19 such belief.

20

21 REQUEST FOR PRODUCTION NO. 34:

22       All DOCUMENTS RELATING TO any potential or actual confusion,

23 any potential or actual mistake or any potential or actual deception of any PERSON

24 as to the origin, affiliation, sponsorship or association of the CONTESTED MGA

25 PRODUCTS, including but not limited to all studies, surveys, interviews, reports

26 and COMMUNICATIONS regarding any such confusion, mistake or deception.

27

28

EXHIBIT __10__ PAGE __119__

1  REQUEST FOR PRODUCTION NO. 35:

2          All DOCUMENTS RELATING TO any potential or actual confusion,

3  any potential or actual mistake or any potential or actual deception of any PERSON

4  as to the origin, affiliation, sponsorship or association of the CONTESTED

5  MATTEL PRODUCTS, including but not limited to all studies, surveys, interviews,

6  reports and COMMUNICATIONS regarding any such confusion, mistake or

7  deception.

8

9  REQUEST FOR PRODUCTION NO. 36:

10         All DOCUMENTS RELATING TO any consumer studies, reports,

11 surveys, interviews or reports regarding the CONTESTED MGA PRODUCTS or

12 the CONTESTED MATTEL PRODUCTS.

13

14 REQUEST FOR PRODUCTION NO. 37:

15         All DOCUMENTS RELATING TO the marketing, advertising,

16 promotion, licensing, offering for sale or sale of the CONTESTED MATTEL

17 PRODUCTS, including but not limited to all marketing studies, marketing plans,

18 sales plans, sales forecasts, strategies, surveys and analyses and including but not

19 limited to all catalogs, advertisements, brochures, displays and Internet publications.

20

21 REQUEST FOR PRODUCTION NO. 38:

22         All DOCUMENTS RELATING TO the ownership of any right, title or

23 interest, whether in whole or in part, in or to the CONTESTED MATTEL

24 PRODUCTS.

25

26

27

28

-21-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT __10__ PAGE _/20_

REQUEST FOR PRODUCTION NO. 39:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, and ownership of the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 40:

All DOCUMENTS RELATING TO the display, exhibition, distribution, publication, circulation, or other dissemination of the CONTESTED MATTEL PRODUCTS to distributors, the media, or the public, including but not limited to toy and trade shows and conventions.

REQUEST FOR PRODUCTION NO. 41:

All COMMUNICATIONS between YOU and any stock analyst, investment analyst, investment bank, institutional lender, or venture capital fund since January 1, 1999.

REQUEST FOR PRODUCTION NO. 42:

All COMMUNICATIONS between YOU and any individual while the individual was employed by MATTEL.

REQUEST FOR PRODUCTION NO. 43:

All COMMUNICATIONS between YOU and MATTEL RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

EXHIBIT _10_ PAGE _121_

**REQUEST FOR PRODUCTION NO. 44:**

All COMMUNICATIONS between YOU and any PERSON RELATING TO the claims made in YOUR COMPLAINT or the facts that YOU contend support such claims.

**REQUEST FOR PRODUCTION NO. 45:**

All DOCUMENTS RELATING TO YOUR knowledge of MATTEL's alleged infringement of YOUR claimed EMBODIMENTS.

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS RELATING TO any unjust enrichment, damage, loss, or injury that YOU claim has been sustained by reason of any act or omission by MATTEL, including but not limited to all DOCUMENTS RELATING TO any alleged lost profits, lost sales, lost opportunity, lost license, price erosion, consequential or incidental damage, information or intellectual property provided to any competitor, or benefit obtained by any competitor, including but not limited to all DOCUMENTS RELATING TO the causation for any such alleged unjust enrichment, damage, loss, or injury.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS supporting YOUR contention that MATTEL created, designed, derived, or developed products, packaging, and advertising using concepts, products, or intellectual property owned by YOU.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS RELATING TO the copying, reproduction or use of any MATTEL work, product, or EMBODIMENT by YOU or on YOUR behalf.

1  REQUEST FOR PRODUCTION NO. 49:

2      All DOCUMENTS RELATING TO any similarity or dissimilarity

3  between, on the one hand, any of the CONTESTED MGA PRODUCTS and any

4  other work or product developed, manufactured, or distributed by any other person

5  or entity, including but not limited to MATTEL.

6

7  REQUEST FOR PRODUCTION NO. 50:

8      All DOCUMENTS RELATING TO the reasons why consumers

9  purchase any of the CONTESTED MGA PRODUCTS, including but not limited to

10  all consumer surveys, studies and comments pertaining thereto.

11

12  REQUEST FOR PRODUCTION NO. 51:

13      All DOCUMENTS RELATING TO the channels of trade or potential

14  or prospective channels of trade for the CONTESTED MGA PRODUCTS.

15

16  REQUEST FOR PRODUCTION NO. 52:

17      All DOCUMENTS RELATING TO any similarity or dissimilarity

18  between any of the CONTESTED MGA PRODUCTS and any EMBODIMENTS

19  authored, created, distributed, made, sold or offered for sale by any PERSON other

20  than YOU.

21

22  REQUEST FOR PRODUCTION NO. 53:

23      All DOCUMENTS RELATING TO any similarity or dissimilarity

24  between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED

25  MATTEL PRODUCTS.

26

27

28

1  REQUEST FOR PRODUCTION NO. 54:

2          All DOCUMENTS RELATING TO any COMMUNICATION by

3  YOU with any news organization regarding the CONTESTED MGA PRODUCTS

4  or the CONTESTED MATTEL PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 55:

7          All periodicals, whether they be magazines, newspapers, newsletters, or

8  any other type of periodical, that mention the CONTESTED MGA PRODUCTS that

9  have been published since January 1, 1999.

10

11  REQUEST FOR PRODUCTION NO. 56:

12          All television or radio broadcasts or cablecasts that mention the

13  CONTESTED MGA PRODUCTS that have been disseminated since January 1,

14  1999.

15

16  REQUEST FOR PRODUCTION NO. 57:

17          All Internet postings or COMMUNICATIONS that mention the

18  CONTESTED MGA PRODUCTS that have been disseminated since January 1,

19  1999.

20

21  REQUEST FOR PRODUCTION NO. 58:

22          All DOCUMENTS RELATING TO publicity by YOU or about the

23  CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited

24  to advertising, media releases, and public relations material.

25

26  REQUEST FOR PRODUCTION NO. 59:

27          All DOCUMENTS RELATING TO any effort by YOU to recruit

28  employees or contractors since January 1, 1999, including but not limited to

07975/1928319.2

-25-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT __10__ PAGE _124_

1 advertising, media releases, brochures, articles, catalogs, handbooks, and public
2 relations material.

3

4 REQUEST FOR PRODUCTION NO. 60:

5         All DOCUMENTS RELATING TO the hiring, engagement, or
6 retention by YOU of any current or former MATTEL employee or contractor since
7 January 1, 1999, including but not limited to all employment agreements and
8 agreements RELATING TO confidentiality or the invention, authorship, or
9 ownership of any concept or product.

10

11 REQUEST FOR PRODUCTION NO. 61:

12         All DOCUMENTS RELATING TO any of the CONTESTED
13 MATTEL PRODUCTS that were obtained by YOU before the date that such
14 product was first offered for sale to the general public.

15

16 REQUEST FOR PRODUCTION NO. 62:

17         All DOCUMENTS, since January 1, 1999, RELATING TO YOUR
18 receipt, reproduction, copying, storage, transmission, transfer, retention, destruction,
19 deletion or use of any DOCUMENTS, data and/or information, including but not
20 limited to any compilation of information, that was prepared, made, created,
21 generated, assembled or compiled by or for MATTEL and that was not publicly
22 available at the time of YOUR receipt of such DOCUMENT, data and/or
23 information.

24

25 REQUEST FOR PRODUCTION NO. 63:

26         All DOCUMENTS, since January 1, 1999, RELATING TO YOUR
27 knowledge of any MATTEL product prior to the time that such product had been

28

-26-

EXHIBIT __10__ PAGE _125_

1  announced or disclosed by MATTEL to retailers or the public, including but not

2  limited to the CONTESTED MATTEL PRODUCTS.

3

4  REQUEST FOR PRODUCTION NO. 64:

5        All DOCUMENTS, since January 1, 1999, RELATING TO YOUR

6  receipt, reproduction, copying, storage, transmission, transfer, retention, destruction,

7  deletion or use of any MATTEL line list or other DOCUMENT prepared by

8  MATTEL identifying MATTEL products in the planning, design or development

9  phase.

10

11 REQUEST FOR PRODUCTION NO. 65:

12       Copies of all DOCUMENTS that were seized by Mexican authorities

13 from MGA's office in Mexico City, Mexico.

14

15 REQUEST FOR PRODUCTION NO. 66:

16       All DOCUMENTS RELATING TO the DOCUMENTS, data and/or

17 information that were seized by Mexican authorities from MGA's office in Mexico

18 City, Mexico.

19

20 REQUEST FOR PRODUCTION NO. 67:

21       All DOCUMENTS, including all COMMUNICATIONS, RELATING

22 to the search of MGA's office in Mexico City, Mexico that was conducted by

23 Mexican authorities.

24

25 REQUEST FOR PRODUCTION NO. 68:

26       All DOCUMENTS RELATING TO the email account

27 <plot04@aol.com>, including but not limited to all emails and attachments sent

28

1  from, sent to, received by, transmitted by way of or through and/or stored in such

2  account in any manner.

3

4  REQUEST FOR PRODUCTION NO. 69:

5          All DOCUMENTS RELATING TO when the email account

6  <plot04@aol.com> was first registered, set up or established.

7

8  REQUEST FOR PRODUCTION NO. 70:

9          All DOCUMENTS identifying each PERSON who registered, set up,

10  established or used the email account <plot04@aol.com>.

11

12  REQUEST FOR PRODUCTION NO. 71:

13          All COMMUNICATIONS between YOU and Carlos Gustavo

14  Machado Gomez ("Machado") prior to April 20, 2004.

15

16  REQUEST FOR PRODUCTION NO. 72:

17          All DOCUMENTS RELATING TO COMMUNICATIONS between

18  YOU and Machado prior to April 20, 2004, including but not limited to all calendar

19  entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21  REQUEST FOR PRODUCTION NO. 73:

22          All DOCUMENTS, including but not limited to all

23  COMMUNICATIONS with any PERSON, RELATING TO Machado prior to April

24  20, 2004.

25

26

27

28

-28-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT _10_ PAGE _127_

**REQUEST FOR PRODUCTION NO. 74:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Machado's resignation from Mattel.

**REQUEST FOR PRODUCTION NO. 75:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Machado, whether directly or indirectly, by YOU.

**REQUEST FOR PRODUCTION NO. 76:**

All DOCUMENTS received by YOU, directly or indirectly, from Machado RELATING TO any MATTEL product or plan.

**REQUEST FOR PRODUCTION NO. 77:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Machado.

**REQUEST FOR PRODUCTION NO. 78:**

A copy of each personnel file maintained or created by YOU RELATING TO Machado.

EXHIBIT _10_ PAGE _128_

1  REQUEST FOR PRODUCTION NO. 79:

2          All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

4  in part, by Machado RELATING TO any of the CONTESTED MGA PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 80:

7          All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

9  in part, by Machado RELATING TO any of the CONTESTED MATTEL

10  PRODUCTS.

11

12  REQUEST FOR PRODUCTION NO. 81:

13          All COMMUNICATIONS between YOU and Mariana Trueba Almada

14  ("Trueba") prior to April 20, 2004.

15

16  REQUEST FOR PRODUCTION NO. 82:

17          All DOCUMENTS RELATING TO COMMUNICATIONS between

18  YOU and Trueba prior to April 20, 2004, including but not limited to all calendar

19  entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21  REQUEST FOR PRODUCTION NO. 83:

22          All DOCUMENTS, including but not limited to all

23  COMMUNICATIONS with any PERSON, RELATING TO Trueba prior to April

24  20, 2004.

25

26

27

28

-30-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT __10__ PAGE __129__

**REQUEST FOR PRODUCTION NO. 84:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Trueba's resignation from Mattel.

**REQUEST FOR PRODUCTION NO. 85:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Trueba, whether directly or indirectly, by YOU.

**REQUEST FOR PRODUCTION NO. 86:**

All DOCUMENTS received by YOU, directly or indirectly, from Trueba RELATING TO any MATTEL product or plan.

**REQUEST FOR PRODUCTION NO. 87:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Trueba.

**REQUEST FOR PRODUCTION NO. 88:**

A copy of each personnel file maintained or created by YOU RELATING TO Trueba.

-31-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT _10_ PAGE _130_

REQUEST FOR PRODUCTION NO. 89:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Trueba RELATING TO any of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 90:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Trueba RELATING TO any of the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 91:

All COMMUNICATIONS between YOU and Pablo Vargas San Jose ("Vargas") prior to April 20, 2004.

REQUEST FOR PRODUCTION NO. 92:

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Vargas prior to April 20, 2004, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 93:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Vargas prior to April 20, 2004.

**REQUEST FOR PRODUCTION NO. 94:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Vargas' resignation from Mattel.

**REQUEST FOR PRODUCTION NO. 95:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Vargas, whether directly or indirectly, by YOU.

**REQUEST FOR PRODUCTION NO. 96:**

All DOCUMENTS received by YOU, directly or indirectly, from Vargas RELATING TO any MATTEL product or plan.

**REQUEST FOR PRODUCTION NO. 97:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Vargas.

**REQUEST FOR PRODUCTION NO. 98:**

A copy of each personnel file maintained or created by YOU RELATING TO Vargas.

-33-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT _10_ PAGE _132_

REQUEST FOR PRODUCTION NO. 99:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Vargas RELATING TO any of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 100:

All DOCUMENTS, including but not limited to all COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or in part, by Vargas RELATING TO any of the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 101:

All COMMUNICATIONS between YOU and Janine Brisbois ("Brisbois") prior to September 27, 2005.

REQUEST FOR PRODUCTION NO. 102:

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Brisbois prior to September 27, 2005, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 103:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois prior to September 27, 2005.

07975/1928319.2

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT _10_ PAGE _133_

REQUEST FOR PRODUCTION NO. 104:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation from Mattel.

REQUEST FOR PRODUCTION NO. 105:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brisbois, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 106:

All DOCUMENTS received by YOU, directly or indirectly, from Brisbois RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 107:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Brisbois.

REQUEST FOR PRODUCTION NO. 108:

A copy of each personnel file maintained or created by YOU RELATING TO Brisbois.

-35-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT __10__ PAGE __134__

1  REQUEST FOR PRODUCTION NO. 109:

2          All DOCUMENTS, including but not limited to all

3  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

4  in part, by Brisbois RELATING TO any of the CONTESTED MGA PRODUCTS.

5

6  REQUEST FOR PRODUCTION NO. 110:

7          All DOCUMENTS, including but not limited to all

8  COMMUNICATIONS, prepared, created, sent or transmitted, whether in whole or

9  in part, by Brisbois RELATING TO any of the CONTESTED MATTEL

10  PRODUCTS.

11

12  REQUEST FOR PRODUCTION NO. 111:

13          All COMMUNICATIONS between YOU and Ron Brawer ("Brawer")

14  prior to October 2, 2004.

15

16  REQUEST FOR PRODUCTION NO. 112:

17          All DOCUMENTS RELATING TO COMMUNICATIONS between

18  YOU and Brawer prior to October 2, 2004, including but not limited to all calendar

19  entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

20

21  REQUEST FOR PRODUCTION NO. 113:

22          All DOCUMENTS, including but not limited to all

23  COMMUNICATIONS with any PERSON, RELATING TO Brawer prior to

24  October 2, 2004.

25

26

27

28

-36-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT _10_ PAGE _135_

REQUEST FOR PRODUCTION NO. 114:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brawer's resignation from Mattel.

REQUEST FOR PRODUCTION NO. 115:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brawer, whether directly or indirectly, by YOU.

REQUEST FOR PRODUCTION NO. 116:

All DOCUMENTS received by YOU, directly or indirectly, from Brawer RELATING TO any MATTEL product or plan.

REQUEST FOR PRODUCTION NO. 117:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that YOU received, directly or indirectly, from Brawer.

REQUEST FOR PRODUCTION NO. 118:

All DOCUMENTS RELATING TO the existence or extent of competition or substitution between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

EXHIBIT _10_ PAGE _136_

1  REQUEST FOR PRODUCTION NO. 119:

2          All DOCUMENTS RELATING TO the facts that YOU contend

3  support the claims for relief in YOUR COMPLAINT.

4

5  REQUEST FOR PRODUCTION NO. 120:

6          All DOCUMENTS RELATING TO any claim by YOU that any of the

7  CONTESTED MGA PRODUCTS have acquired secondary meaning or are famous.

8

9  REQUEST FOR PRODUCTION NO. 121:

10          All DOCUMENTS RELATING TO any claim by YOU that

11  MATTEL's actions have caused actual dilution.

12

13  REQUEST FOR PRODUCTION NO. 122:

14          All DOCUMENTS RELATING TO the allegation in Paragraph 9 of

15  YOUR COMPLAINT that "Mattel has intimidated, coerced and threatened retailers,

16  licensees, suppliers and others in the industry."

17

18  REQUEST FOR PRODUCTION NO. 123:

19          All DOCUMENTS RELATING TO the allegation in Paragraph 9 of

20  YOUR COMPLAINT that "Mattel has . . . serially imitated and copy-catted [*sic*] the

21  look of MGA products, trade dress, trademarks, themes, ideas, advertising and

22  packaging."

23

24  REQUEST FOR PRODUCTION NO. 124:

25          All DOCUMENTS RELATING TO the allegation in Paragraphs 34

26  and 36 of YOUR COMPLAINT that the Bratz dolls launched in 2001 were "unique

27  and distinctive."

28

1   REQUEST FOR PRODUCTION NO. 125:

2          All DOCUMENTS RELATING TO any allegation by YOU that YOU

3   have any legally protected interest in any of the following "themes" or any other

4   Bratz "theme" that you contend was copied by MATTEL:  "Winter Wonderland,"

5   "Bratz Sportz," "Formal Funk," "Sun-Kissed Summer."

6

7   REQUEST FOR PRODUCTION NO. 126:

8          All DOCUMENTS RELATING TO any allegation by YOU that YOU

9   have any legally protected interest in any "color scheme" that you contend was

10  copied by MATTEL.

11

12  REQUEST FOR PRODUCTION NO. 127:

13         All DOCUMENTS RELATING TO the allegation in Paragraph 56 of

14  YOUR COMPLAINT that the press has confused YOUR products with those of

15  MATTEL, or vice versa.

16

17  REQUEST FOR PRODUCTION NO. 128:

18         All DOCUMENTS RELATING TO any allegation by YOU that

19  anyone has confused any commercial for YOUR Funky Fashion Makeover Head

20  with any commercial for MATTEL's My Scene Styling Head.

21

22  REQUEST FOR PRODUCTION NO. 129:

23         All DOCUMENTS RELATING TO any allegation by YOU that

24  MATTEL has used any "tag line" allegedly belonging to YOU, including but not

25  limited to "Passion for Fashion" or any derivative thereof.

26

27

28

**REQUEST FOR PRODUCTION NO. 130:**

All DOCUMENTS RELATING TO the allegation in Paragraph 61 of YOUR COMPLAINT that retailers have been confused by Bratz Petz and MATTEL's My Scene Pets, including but not limited to YOUR allegation that "even sophisticated retailers . . . have mistakenly merchandised 'My Scene' dogs in the middle of the 'BRATZ' section of a retail display, next to and as if they were part of MGA's 'BRATZ Petz' line."

**REQUEST FOR PRODUCTION NO. 131:**

All DOCUMENTS RELATING TO the allegation in Paragraph 62 of YOUR COMPLAINT that advertising executives have "expressed concern" about "Bratz" and Mattel's "My Scene," including but not limited to the alleged remarks set forth in Paragraph 62.

**REQUEST FOR PRODUCTION NO. 132:**

All DOCUMENTS RELATING TO the allegations in Paragraph 63 of YOUR COMPLAINT that the press "has taken notice" of alleged confusion between "Bratz" and Mattel's "My Scene," including but not limited to the alleged remarks set forth in Paragraph 63.

**REQUEST FOR PRODUCTION NO. 133:**

All DOCUMENTS RELATING TO the allegation in Paragraph 64 of YOUR COMPLAINT that customers have contacted YOU to purchase Mattel's "My Scene" dolls.

EXHIBIT _10_ PAGE _139_

1  REQUEST FOR PRODUCTION NO. 134:

2          All DOCUMENTS RELATING TO any allegation by YOU that YOU

3  have a legally protected interest in what YOU describe in Paragraph 71 of YOUR

4  COMPLAINT as "MGA's 'other-worldly' theme."

5

6  REQUEST FOR PRODUCTION NO. 135:

7          All DOCUMENTS RELATING TO the allegation in Paragraph 71 of

8  YOUR COMPLAINT that MATTEL's commercials and product "mimic[] MGA's

9  alien theme and commercials in which MGA's 'AlienRacers' are engaged in a 'race

10  to save the universe.'"

11

12  REQUEST FOR PRODUCTION NO. 136:

13          All DOCUMENTS RELATING TO the allegation in Paragraph 74 of

14  YOUR COMPLAINT that MATTEL has engaged in "strong-arm tactics, and other

15  illegitimate, unfair and anti-competitive means."

16

17  REQUEST FOR PRODUCTION NO. 137:

18          All DOCUMENTS RELATING TO the allegations in Paragraph 75 of

19  YOUR COMPLAINT regarding MATTEL's dealings and COMMUNICATIONS

20  with former employees, including but not limited to all COMMUNICATIONS

21  between YOU and any present or former employees or contractors of MATTEL.

22

23  REQUEST FOR PRODUCTION NO. 138:

24          All COMMUNICATIONS between YOU and any PERSON

25  RELATING TO the departure from MATTEL of any current or former MATTEL

26  employee or contractor.

27

28

EXHIBIT _10_ PAGE _140_

1  REQUEST FOR PRODUCTION NO. 139:

2          All COMMUNICATIONS between YOU and any PERSON

3  RELATING TO the obligations to MATTEL, including the duty of confidentiality,

4  of any current or former MATTEL employee or contractor.

5

6  REQUEST FOR PRODUCTION NO. 140:

7          All COMMUNICATIONS between YOU and any current or former

8  MATTEL employee or contractor RELATING TO the ownership of any idea,

9  concept, design, or product.

10

11  REQUEST FOR PRODUCTION NO. 141:

12          All COMMUNICATIONS between YOU and any PERSON

13  RELATING TO the retention, destruction, transfer, or use of any information or

14  DOCUMENTS known to or possessed by any current or former MATTEL

15  employee or contractor.

16

17  REQUEST FOR PRODUCTION NO. 142:

18          All DOCUMENTS RELATING TO the "warnings" or "threats" alleged

19  in Paragraph 76 of YOUR COMPLAINT, including but not limited to all

20  COMMUNICATIONS with any present or former licensees of MATTEL.

21

22  REQUEST FOR PRODUCTION NO. 143:

23          All DOCUMENTS RELATING TO the "intimidation" alleged in

24  Paragraph 77 of YOUR COMPLAINT, including but not limited to all

25  COMMUNICATIONS with any present or former distributors and retailers of MGA

26  and MATTEL products.

27

28

-42-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT ___10___ PAGE _141_

1  REQUEST FOR PRODUCTION NO. 144:

2          All COMMUNICATIONS between YOU and any retailer, wholesaler

3  or distributor RELATING TO the CONTESTED MATTEL PRODUCTS.

4

5  REQUEST FOR PRODUCTION NO. 145:

6          All DOCUMENTS RELATING TO the allegation in Paragraph 78 of

7  YOUR COMPLAINT that MATTEL was responsible for what YOU refer to as a

8  "shortage of doll hair in October 2002."

9

10  REQUEST FOR PRODUCTION NO. 146:

11          All DOCUMENTS RELATING TO the allegation in Paragraph 79 of

12  YOUR COMPLAINT that MATTEL has "manipulated the retail market," including

13  but not limited to all COMMUNICATIONS with any persons RELATING TO

14  YOUR allegation that "Mattel merchandisers have been caught tampering with

15  MGA's retail displays."

16

17  REQUEST FOR PRODUCTION NO. 147:

18          All DOCUMENTS RELATING TO any allegation by YOU that

19  MATTEL has made false statements about YOU or YOUR business practices,

20  including but not limited to the allegations in Paragraph 79 of YOUR

21  COMPLAINT.

22

23  REQUEST FOR PRODUCTION NO. 148:

24          All DOCUMENTS RELATING TO any allegation by YOU that

25  MATTEL has violated any rules or restrictions relating to data provided to

26  subscribers by NPD or engaged in any other wrongful conduct relating to NPD.

27

28

-43-
MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT _10_   PAGE _142_

1  REQUEST FOR PRODUCTION NO. 149:

2         All DOCUMENTS RELATING TO any COMMUNICATIONS

3  between YOU and NPD, other than periodic reports, between January 1, 2000 and

4  the present.

5

6  REQUEST FOR PRODUCTION NO. 150:

7         DOCUMENTS sufficient to show the status of YOUR NPD

8  subscription between January 1, 2000 and the present.

9

10  REQUEST FOR PRODUCTION NO. 151:

11         All DOCUMENTS RELATING TO the allegation in Paragraph 89 of

12  YOUR COMPLAINT that MATTEL "used its influence . . . to induce CARU to

13  place onerous restrictions on MGA advertisements, and require MGA to amend

14  aspects of commercials that have gone unchallenged in other parties' commercials."

15

16  REQUEST FOR PRODUCTION NO. 152:

17         All DOCUMENTS RELATING TO any COMMUNICATIONS

18  between YOU and CARU between January 1, 2000 and the present.

19

20  REQUEST FOR PRODUCTION NO. 153:

21         All DOCUMENTS RELATING TO any allegation by YOU that

22  MATTEL has exercised improper influence with or within TIA, including but not

23  limited to the procedures for and manner in which the Toy of the Year was selected

24  for 2003.

25

26  REQUEST FOR PRODUCTION NO. 154:

27         All DOCUMENTS RELATING TO any COMMUNICATIONS with

28  TIA RELATING TO Toy of the Year since January 1, 2000.

-44-

EXHIBIT __10__ PAGE __143__

1  REQUEST FOR PRODUCTION NO. 155:

2         All DOCUMENTS RELATING TO the allegation in Paragraph 113 of

3  YOUR COMPLAINT that MATTEL has "willfully and maliciously used its power,

4  influence and intimidation to threaten certain retailers, suppliers, licensees,

5  distributors and manufacturers so as to limit, if not prevent, MGA from doing

6  business with these retailers, suppliers, licensees, distributors and manufacturers,

7  using its power and influence to intimidate and manipulate industry bodies."

8

9  REQUEST FOR PRODUCTION NO. 156:

10        All DOCUMENTS RELATING TO the allegation in Paragraph 113 of

11 YOUR COMPLAINT that MATTEL has "used its power and influence to attempt

12 to, if not actually, intimidate and threaten MGA's current and potential employees so

13 as to cause MGA competitive injury."

14

15 REQUEST FOR PRODUCTION NO. 157:

16        YOUR quarterly and annual profit and loss statements (both audited

17 and unaudited) for the years 2000 through the present, inclusive.

18

19 REQUEST FOR PRODUCTION NO. 158:

20        YOUR quarterly and annual financial statements (both audited and

21 unaudited) for the years 2000 through the present, inclusive.

22

23 REQUEST FOR PRODUCTION NO. 159:

24        YOUR annual reports for each of the years 2000 through the present,

25 inclusive.

26

27

28

07975/1928319.2

-45-

**REQUEST FOR PRODUCTION NO. 160:**

All DOCUMENTS received from MATTEL (whether directly or indirectly) by YOU at any time since January 1, 1999.

**REQUEST FOR PRODUCTION NO. 161:**

All DOCUMENTS that YOU have reason to believe were created by or originated from MATTEL, other than MATTEL products that YOU purchased at retail.

**REQUEST FOR PRODUCTION NO. 162:**

All DOCUMENTS RELATING TO the destruction or retention of any DOCUMENT RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

**REQUEST FOR PRODUCTION NO. 163:**

All internal MGA COMMUNICATIONS and schedules RELATING TO document retention or destruction between January 1, 1999 and the present.

**REQUEST FOR PRODUCTION NO. 164:**

All DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by, any government entity RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

**REQUEST FOR PRODUCTION NO. 165:**

All DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by, any toy industry organization, safety compliance, or consumer organization RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

EXHIBIT _10_ PAGE _145_

1    <u>REQUEST FOR PRODUCTION NO. 166</u>:

2         To the extent not produced in response to any other Request for

3    Production, all DOCUMENTS and tangible things upon which YOU intend to rely

4    upon in this action.

5

6    DATED:  December 18, 2006        QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
7

8
                                      By
9                                         Timothy L. Alger
10                                        Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-47-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS (UNFAIR COMPETITION)

EXHIBIT __10__  PAGE _146_

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over

3 the age of eighteen years and not a party to the within action; my business address is

4 NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles,

5 California 90026.

6      On December 18, 2006, I true copies of the following document(s) described

7 as:

8 ## MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS

9 ## AND THINGS RE CLAIMS OF UNFAIR COMPETITION

10 ## TO MGA ENTERTAINMENT, INC.

11 on the parties in this action as follows:

| 12 | Diana M. Torres, Esq. | Keith A. Jacoby, Esq. |
| 13 | O'Melveny & Myers<br>400 So. Hope Street | Littler Mendelson<br>2049 Century Park East, 5th Floor |
| 14 | Los Angeles, CA  90071<br>Telephone: (213) 430-6000<br>Facsimile: (213) 430-6407 | Los Angeles, CA  90067-3107<br>Telephone: (310) 553-0308<br>Facsimile: (310) 553-5583 |

15

16

17      [√]    [PERSONAL] by personally delivering the document listed above to

18      the person(s) at the address(es) set forth above.

19

20      I declare that I am employed in the office of a member of the bar of this court

21 at whose direction the service was made

22

23      Executed on December 18, 2006 at Los Angeles, California.

24

25

26      David Quintana

27

28

Case No. SACV 05-00953 JVS (ANx)
PROOF OF SERVICE

EXHIBIT __10__ PAGE __147__

**EXHIBIT 11**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301
————
TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
650.470.4511
DIRECT FAX
866.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

December 26, 2007

<u>**By Email and U.S. Mail**</u>

Scott Kidman, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:     *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
        Case No. CV 04-9049 SGL (RNBx) (consolidated with
        <u>Cases Nos. CV 04-09059 and CV 05-02727)</u>

Dear Scott:

    I am writing in response to your letter emailed to me at 10:03 p.m. on December 23, 2007, in which you demand that I confirm by the close of business on December 26 that MGA will make available for inspection by January 3, 2008, all items responsive to: (i) Request Nos. 96 through 100 of Mattel's First Set of Requests For Production to MGA, and (ii) Request Nos. 2, 16 and 166 of Mattel's First Set of Requests For Production Re: Claims for Unfair Competition.

    Your letter is replete with misstatements. First, you assert that I have been unable to provide you with any details regarding the "purported order that allegedly prevents" certain items located in the offices of MGA's counsel in Hong Kong from being shipped to the United States and that I have been unable to provide you with any details regarding the litigation in which that order was entered. Apparently attempting to suggest that no such legal restrictions exist on shipping the items to the United States, you remark that prior counsel never mentioned the order to you. I was not a part of any communications between you and prior counsel and therefore cannot comment on what prior counsel did or did not tell you. As for what I told you, let me set the record straight. In a December 6 email (as well as at least one other telephone conversation we had around that time), I explained to you that various items located at the offices of MGA's Hong Kong counsel "are subject to an undertaking given to the Hong Kong court that prevents the items from being sent to the United States absent relief from the court." I further explained to you in my email (and on the phone) that

EXHIBIT __11__ PAGE __148__

Scott Kidman, Esq.
December 26, 2007
Page 2

"MGA is in the process of attempting to obtain that relief." Indeed, we have applied to the Hong Kong court for permission to bring the items to the United States and are awaiting the court's ruling. You never asked me to provide and I have no obligation to provide you any details regarding the litigation in Hong Kong.

Second, you contend that I have "simply not responded" to your "repeated requests" that Mattel be permitted to inspect the items in Hong Kong while MGA works to get them released to the United States. That statement is also false. You asked me twice if Mattel may inspect the items in Hong Kong – first on December 4 and then on December 6, and I responded both times. On December 4, I told you that I would have to ask my client whether such inspection was permissible under the undertaking, and we agreed to speak again on December 6 about that and other issues. On December 6, I told you that MGA had reached out to its Hong Kong counsel but had not yet received a response. We have since received confirmation from Hong Kong counsel that the undertaking does not prevent Mattel from inspecting the items in Hong Kong while we await the court's response to MGA's application to release the items to the United States. Accordingly, we will coordinate with you and Hong Kong counsel to facilitate inspection in Hong Kong as promptly as possible.

Third, you suggest that in his August 13, 2007 Order, the Discovery Master ordered MGA to produce items in response to Request No. 2 to Mattel's First Set of Requests For Production Re: Claims for Unfair Competition (which calls for "A sample of each display, including but not limited to each point-of-purchase or in-store display, prepared, produced, printed, manufactured or used in connection with the CONTESTED MGA PRODUCTS."). That too is false. The August 13 Order specifically requires MGA to produce items in response only to "Request Nos. 1, 3-10, 12, 13, 16-20, 26, 27, 29, 30, 32-40,43, 45, 48-52, 60, 65-117, 118, 119, 137-40, 157-161, 164 and 166." (Discovery Master's August 13, 2007, Order at 14.) In any event, MGA believes that there are few items responsive to Request No. 2, which have been difficult to locate. MGA continues to search for items responsive to this request and to assess the completeness of its production.

Likewise, regarding Request No. 16 of Mattel's First Set of Requests For Production Re: Claims for Unfair Competition (which calls for "All head sculptures, including all preliminary head sculptures and all versions of such sculptures, made, produced or prepared in connection with the CONTESTED BRATZ DOLLS PRODUCTS"), we are reviewing MGA's production to date to determine the status of completion. Of course, we cannot complete our assessment without consulting with our client. As I'm sure you can appreciate, the client is traveling for the holidays. Accordingly, we will respond to the portions of your letter concerning Request Nos. 2 and 16 on or before January 4. In the meantime, we do not think it would be an efficient use of anyone's time to bother Judge Infante with this issue.

EXHIBIT  11  PAGE 149

Scott Kidman, Esq.
December 26, 2007
Page 3

With respect to Request Nos. 96, 97, 98 and 99 of Mattel's First Set of Requests For Production to MGA, as you know, since October 2007, MGA has made available for inspection nearly 800 tangible items in response to Mattel's numerous requests for production. Having conducted a reasonably diligent search of locations where MGA believes that responsive items are likely to be located, MGA believes that the items made available to date, coupled with the items available for inspection in Hong Kong, will substantially complete MGA's production in response to Request Nos. 96, 97, 98 and 99 of Mattel's First Set of Requests For Production to MGA. Of course, consistent with its obligations under the Federal Rules of Civil Procedure, should MGA identify additional items responsive to the foregoing requests, MGA will promptly make them available for your inspection.

With respect to Request No. 100 of Mattel's First Set of Requests For Production to MGA (items that support, refute or otherwise refer or relate to any facts underlying MGA's affirmative defenses) and Request No. 166 of Mattel's First Set of Requests For Production Re: Claims for Unfair Competition (items that MGA intends to rely upon in this action), to the extent that MGA has identified to date responsive items, MGA believes that it has substantially completed its production. Of course, as you know, discovery in this matter is ongoing and MGA still has several depositions to complete. Should MGA identify in the course of discovery additional items responsive to the foregoing requests, it will promptly make them available for your inspection. In addition, with respect to all tangible items that our experts plan to rely on, to the extent that those items have not yet been identified and made available, we will do so prior to February 11, 2008, the date set by Judge Larson for expert reports to be exchanged, in accordance with our obligations under the Federal Rules. To the extent you disagree with this position, please consider this letter a request to meet and confer on the topic pursuant to paragraph 5 of the Discovery Master Stipulation. In addition, please also advise us by the close of business on December 28, 2007, whether Mattel will likewise agree to produce, by the close of discovery, all items on which it intends to rely in this action.

I trust that this letter obviates the need for motion practice at this time regarding the foregoing requests for production. I look forward to speaking with you regarding the scheduling of Mattel's inspection of the items located in Hong Kong.

Sincerely,

Amy S. Park

EXHIBIT __11__ PAGE _150_

**EXHIBIT 12**

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301
—
TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

January 2, 2008

**By Email and U.S. Mail**

Diane Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:   *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
Case No. CV 04-9049 SGL (RNBx) (consolidated with
Cases Nos. CV 04-09059 and CV 05-02727)

Dear Diane:

This responds to your letter to me of this morning regarding Mattel's demands to inspect certain tangible items in response to: (i) Request Nos. 96 through 100 of Mattel's First Set of Requests For Production to MGA, and (ii) Request Nos. 2, 16 and 166 of Mattel's First Set of Requests For Production Re: Claims for Unfair Competition.

Your office's use of exaggeration, outright falsehoods and bad faith threats is becoming tiresome, to say the least. Your letter is no exception. To begin with, your insinuation that MGA has not made efforts to have the items located in Hong Kong released to the United States is simply false, and your threat to compel their release and for sanctions is in bad faith. Hong Kong counsel filed applications with the Hong Kong court seeking permission to vary the terms of the undertaking to allow the subject items to be shipped to the United States. As you certainly must know, MGA does not control the Hong Kong court or the speed with which it rules. Nor will MGA violate an undertaking simply because Mattel does not like the speed with which the Hong Kong court moves. MGA is prepared to provide copies of the Hong Kong applications and information regarding the litigation to Judge Infante *in camera* should you persist in your baseless motion to compel release of the items to the United States. However, MGA has no obligation to and will not provide that information to you.

Your assertions about MGA's "sudden willingness to allow the inspection in Hong Kong," "weeks of silence," "multiple requests" and "gamesmanship"

EXHIBIT __12__  PAGE __151__

Diane Hutnyan
January 2, 2008
Page 2

are also false.  Repeating those falsehoods – no matter how many times you do it – will
not make them true.  I set out the actual series of events in my December 26 letter to
Scott Kidman.  I refer you to that letter for an accurate statement of the record.

As for your request that MGA bear the costs of Mattel's inspection in
Hong Kong, the answer is no.  Mr. Kidman requested that Mattel be permitted to
inspect the items in Hong Kong while we await the Hong Kong court's ruling on the
applications to release the items to the United States.  If Mattel wants to travel to Hong
Kong to inspect those items now, Mattel should bear the costs of that trip.  The items
will be available for Mattel's inspection in Hong Kong on the mornings of January 5, 8
and 9, 2008, or the afternoon of January 10.  If you still wish to inspect the items in
Hong Kong, please let me know which date you plan to be there so that we may make
appropriate arrangements with Hong Kong counsel.

Regarding Request No. 2 to Mattel's First Set of Requests For
Production Re: Claims for Unfair Competition, thank you for conceding, as you must,
that this was not the subject of the August 13 Order, as Mr. Kidman falsely suggested in
his December 23 letter.  Having been forced to concede that point, you now assert for
the first time that MGA is somehow in violation of the June 20, 2006 stipulation and
"MGA's October 5, 2007 independent promise," apparently for not providing you with a
statement as to the completeness of its production in response to Request Nos. 2 and 16.
I am not aware of any request previously made by Mattel pursuant to the June 20, 2006
stipulation to conduct an inspection, on 15 days' notice, of the items responsive to
Request Nos. 2 or 16.  If you contend that you have made such a request, please provide
me with a copy of it.  Similarly, please provide me with a copy of what you claim to be
"MGA's October 5, 2007 independent promise."  In the meantime, as I wrote to Mr.
Kidman on December 26, we are working with our client to ascertain the completeness
of our production in response to Request Nos. 2 and 16, and if we have not already
completed our production, the date by which we will do so.  As I told Mr. Kidman, we
will provide you a response on or before January 4.  Any motion by you in the interim
would be a waste of time and in bad faith.

MGA's position with respect to Request Nos. 96, 97, 98 and 99 of
Mattel's First Set of Requests For Production to MGA is set out in my December 26
letter and has not changed.  As I wrote then, and is still the case now, MGA conducted a
reasonably diligent search of locations where MGA believes that responsive items are
likely to be located and has made available for inspection nearly 800 tangible items in
response to Mattel's numerous requests for production.  Based on information known to
date, MGA believes that the items made available thus far, coupled with the items
available for inspection in Hong Kong, will substantially complete MGA's production in
response to Request Nos. 96, 97, 98 and 99.  You have taken issue with the phrase
"substantially complete;" however, you well know, that discovery is ongoing and that
the parties are obligated to make available any additional responsive items that may be
identified as discovery continues.  Certainly you are not suggesting that although MGA

EXHIBIT _12_ PAGE _152_

Diane Hutnyan
January 2, 2008
Page 3

believes, based on its diligent search and that, with the inspection in Hong Kong, it will have completed its production, MGA will be precluded from making available additional responsive items, if any, that may be located before discovery closes. To the extent you are suggesting that, you are wrong.

The same is true with respect to Request No. 100 of Mattel's First Set of Requests For Production to MGA (items that support, refute or otherwise refer or relate to any facts underlying MGA's affirmative defenses) and Request No. 166 of Mattel's First Set of Requests For Production Re: Claims for Unfair Competition (items that MGA intends to rely upon in this action). To the extent that MGA has identified to date responsive items, MGA believes that it has substantially completed its production and is in compliance with its obligation to produce. But once again, as you know, discovery is ongoing and MGA still has several depositions to complete. Should MGA identify additional items responsive to the foregoing requests during the course of ongoing discovery, it will promptly make them available for your inspection.

With respect to the issue concerning the inspection of tangible items that our experts plan to rely on, I am not available to meet and confer this afternoon. I will be in meetings and on conference calls all afternoon. I am available to meet and confer on Friday, January 4, any time from 11 a.m. to 4 p.m. Please let me know what time is convenient for you.

Lastly, in response to the question in the final paragraph of your letter, MGA is not conditioning its compliance with its discovery obligations on Mattel's compliance with its obligations. MGA has been and continues to comply with its obligations independent of Mattel's obligations and failures.

Sincerely,

Amy S. Park

EXHIBIT _12_ PAGE _153_

**Diane Hutnyan**

| | |
|---|---|
| **From:** | Fry, Brenda [Brenda.Fry@skadden.com] on behalf of Park, Amy S [Amy.Park@skadden.com] |
| **Sent:** | Wednesday, January 02, 2008 1:40 PM |
| **To:** | Diane Hutnyan |
| **Subject:** | Carter Bryant v. Mattel, Inc. (and consolidated cases) |
| **Attachments:** | Letter from Amy Park.pdf |

Dear Ms. Hutnyan:

Please see the attached letter from Ms. Park.

Thank you,
Brenda Fry

**Brenda Fry**
**Assistant to Amy Park, Steven Lybrand and Patrick Hammon**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**525 University Avenue | Palo Alto | California | 94301-1908**
**T: 650.470.4567 | F: 650.470.4570**
**brenda.fry@skadden.com**

-----------------------------------------------------------------------
************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. **************************************************
************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. **************************************************
=================================================================

EXHIBIT _12_ PAGE _154_

**EXHIBIT 13**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

**EXHIBIT 14**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

1

**EXHIBIT 15**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

**EXHIBIT 16**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

**EXHIBIT 17**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

December 23, 2007

**VIA E-MAIL**

Amy S. Park, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301

Re:    Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Amy:

I am writing once again about MGA's failure to make available for inspection tangible items responsive to Mattel's discovery requests in this action including, without limitation, the "early Bratz doll head sculpts and body samples" MGA has admitted are in the offices of its counsel in Hong Kong.

MGA has already been ordered to produce months ago numerous categories of tangible items including, without limitation:

(1) all doll heads, sculpts, prototypes, models, samples and tangible items that were created, prepared or made, whether in whole or in part, prior to January 1, 2001 that refer or relate to Bratz or Angel. (See Request Nos. 96 and 97 of Mattel's First Set of Requests for Production to MGA and Court's Order dated May 15, 2007 with respect thereto).

(2) all doll heads, sculpts, prototypes, models, samples and tangible items that Anna Rhee painted, whether in whole or in part, prior to January 1, 2001 (See Request No. 98 of Mattel's First Set of Requests for Production to MGA and Court's Order dated May 15, 2007 with respect thereto).

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2335190.1

EXHIBIT _17_   PAGE _183_

(3)  all doll heads, sculpts, prototypes, models, samples and tangible items that refer or relate to designs for dolls, doll accessories or toys Bryant produced, created, authored, conceived of or reduced to practice, whether alone or jointly, prior to January 1, 2001.  (See Request No. 99 of Mattel's First Set of Requests for Production to MGA and Court's Order dated May 15, 2007 with respect thereto).

(4)  all doll heads, sculpts, prototypes, models, samples and tangible items that support, refute or otherwise refer or relate to any facts underlying MGA's affirmative defenses.  (See Request No. 100 of Mattel's First Set of Requests for Production to MGA and Court's Order dated May 15, 2007 with respect thereto).

(5)  all head sculptures, including all preliminary head sculptures and all versions of such sculptures made, produced, or prepared in connection with the CONTESTED BRATZ DOLL PRODUCTS.  (See Request No. 16 of Mattel's First Set of Requests for Production Re Claims for Unfair Competition and Court's Order dated August 13, 2007 with respect thereto).

(6)  a sample of each display, including each point-of-purchase or in-store display, prepared, produced, printed manufactured or used in connection with the CONTESTED MGA PRODUCTS.  (See Request No. 2 of Mattel's First Set of Requests for Production Re Claims for Unfair Competition and Court's Order dated August 13, 2007 with respect thereto.)

In addition, to the extent not produced in response to any other request, MGA has been ordered to produce all tangible items MGA intends to rely upon in this action.  (See Request No. 166 of Mattel's First Set of Requests for Production Re Claims for Unfair Competition and Court's Order dated August 13, 2007 with respect thereto.)

This issue was addressed in Mike Zeller's October 29, 2007 letter to Tom Nolan.  Since then, I have had numerous communications with you specifically regarding the tangible items MGA admits are in the offices of its Hong Kong counsel.  You have represented that MGA is in the process of seeking relief from a court order that allegedly prevents the items from being sent to the United States, though you have been unable to provide me with any details regarding this purported order, including the action in which it was entered.  (Notably, MGA's prior counsel never mentioned any such order in our discussions regarding the items located in Hong Kong.)  You have also simply not responded to my repeated requests that Mattel be permitted to inspect the items in Hong Kong in the meantime.

MGA's failure to make these items available for inspection has already prejudiced Mattel.  Accordingly, unless MGA confirms by the close of business on December 26, 2007 that it will make available for inspection the tangible items located in the offices of its Hong Kong counsel and any other tangible items it has agreed to produce or been ordered to produce, including all

EXHIBIT _17_ PAGE _184_

items responsive to the requests listed above, by no later than January 3, 2008, Mattel will file a motion to enforce, to compel and for sanctions.


Very truly yours,

Scott B. Kidman

EXHIBIT __17__ PAGE __185__

**EXHIBIT 18**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor. Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S INTERNET ADDRESS
dianebutnyan@quinnemanuel.com

January 2, 2008

**VIA FACSIMILE AND EMAIL**

Amy S. Park, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Palo Alto, CA 94301

Re:     Mattel v. Carter Bryant

Dear Amy,

I write in response to your letter of December 26, 2007 to my partner, Scott Kidman, regarding MGA's failure to produce for inspection the items referenced in his letter of December 23, 2007.

Federal law does not recognize objections or exceptions to discovery based on unidentified undertakings from unidentified courts in unidentified cases. This is particularly true where the discoverable information is subject to court orders compelling its production here in the States and where a party has stipulated before a Federal judge that it would make original items available for inspection and imaging on 15 days' notice. Your refusal to provide any factual support whatsoever for the undertaking, much less any information about MGA's supposed efforts to gain access from the unidentified Court in order to meet its U.S. discovery obligations speaks volumes, and unless MGA provides this information immediately, Mattel will move to compel the inspection in the U.S. and request sanctions.

MGA's sudden willingness to allow the inspection in Hong Kong, revealed after weeks of silence after our multiple requests, reflects gamesmanship, not cooperation. Without any proof that the materials could not have been furnished to us in the United States, Mattel should not have to be burdened with the cost and inconvenience and loss of time that production in Hong Kong would

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue. 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street. 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive. Suite 560. Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2338445.1

EXHIBIT _18_   PAGE _186_

Amy S. Park, Esq.
January 2, 2008

entail. Please let me know if MGA plans to pick up the additional costs of such an inspection and imaging in Hong Kong that would begin this week.

With respect to Request No. 2 to Mattel's First Set of Requests for Production Re: Claims for Unfair Competition, while it is true that that particular request was not contemplated in the August 13 Order, MGA's discovery obligations are not limited to those requests as to which compliance has already been compelled. Further, MGA's failure to produce all items responsive to Request Nos. 2 and 16 violates the June 20, 2006 on-the-record stipulation before Judge Block, as well as MGA's October 5, 2007 independent promise to produce all such materials "by the end of October." Mattel has waited months for the inspection and with only a few weeks before the fact discovery cut-off, cannot wait any longer. Besides, if MGA really was concerned about the inefficiency of motion practice, it would have provided a full response as to these two requests long ago. Please let me know today whether and when MGA will allow us to finalize our inspection and photographing of materials responsive to these materials, or if the production is complete.

With respect to Request Nos. 96-100 of Mattel's First Set of Requests and Request No. 166 of the First Set of Requests Re: Unfair Competition, the boilerplate non-responses that "MGA believes that the items made available to date . . . will substantially complete MGA's production" in response to these requests are insufficient. Court Orders required full production of all responsive materials months ago, so we can only conclude that full production as ordered has not taken place.

I am available this afternoon to discuss your position that discoverable documents and items do not need to be turned over until the deadline for initial expert reports. In advance of the call, please let me know any authority you believe supports this novel position. Also, please be ready to identify for me what types of materials you anticipate falling within this category.

Finally, we do not understand what you are referring to in the last sentence of your penultimate paragraph. I hope you are not suggesting that MGA is conditioning its discovery on discovery from Mattel, as that is improper. If you have a legitimate request of Mattel, please identify what it is, in writing, so that we can review and promptly address it.

Sincerely,

Diane C. Hutnyan

07209/2338445.1

07209/2338445.1                                                          2

EXHIBIT __18__ PAGE 187

**EXHIBIT 19**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3666

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

January 14, 2008

VIA E-MAIL AND FACSIMILE

Amy S. Park and Andrew Temkin
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Palo Alto, C 94301

Re:    Carter Bryant v. Mattel, Inc. (and consolidated cases)

Dear Amy and Andrew:

I write in response to your January 10, 2008 letter and the emails you sent with further information about MGA's tangible items.

First, you told us on Thursday that there was to be a hearing on Friday on the subject of whether the items might be shipped to the United States. What was its outcome? Please send us a copy of any pertinent written order or ruling. Please also let us know what steps you are taking to expedite arrival of the items in the U.S. and when we can expect to view the items.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT _19_  PAGE _188_

Amy S. Park and Andrew Temkin
January 14, 2008

Second, you stated in your letter that there were "*approximately* 16 items" located in Hong Kong, and sent us pictures showing 16 items. We would appreciate your informing us whether there are more items and, if so, what they are.[1]

Third, how many other items are subject to the purported undertaking besides the sixteen you have identified? How many of those items are related to Bratz, as broadly defined by us and the Discovery Master? In light of the dispute over the scope of our requests, please advise us as to how many other items subject to the undertaking relate to Bratz and which items you will not be producing to us.

Thank you for sending photographs of the items you indicated are in Shenzhen, China. However, it is difficult to make out the contours of these items; only one side is shown; and there is an item at the top of each picture which seems to be further obscuring a portion of these items, or information that would help identify them. Please send photographs that do not obscure the molds in any way, and that show each of their surfaces.

One thing clear from the pictures is that molds have identifying numbers or letters on them that record information, ensuring that these items fall squarely within Mattel's requests for "documents," as well as for other relevant tangible items. The Court has already compelled the production of these articles, and did so months ago. Please let us know whether MGA will produce these and other responsive items immediately in the U.S.

As for the broader issue of MGA's failure to produce tangible items on the basis that they are not called for by our requests, we are discouraged by MGA's position that the responsiveness of such basic items as molds is "debatable," or "questionable," and that the answer to our questions about what MGA looked for in searching for "responsive" items is completely circular: that MGA has "substantially completed its production of tangible items in response to the requests that [we] characterized as calling for tangible items 'relating to the origin, creation, design or development of Bratz.'" Your inability to describe any other specific categories of items that you had searched for does not bode well either.

---

[1]   Thank you for providing photographs of some of the items available in Hong Kong and some times and dates upon which these items may be viewed. Please continue to hold January 17, the afternoon of January 18, and the morning of January 19 pending the resolution of these outstanding issues.

2

EXHIBIT 19  PAGE 189

Amy S. Park and Andrew Temkin
January 14, 2008

Generally speaking, for each doll developed, MGA should have a clay sculpt; a mold taken of the clay (might be of rubber; might be multiple iterations of these); closures and documentation and tooling related to their design; a resin or fastcast sculpt from the mold of the clay; the metal molds relating to all the body parts, including the head (notably, there was no mold for a head included in the pictures you sent); a vinyl super master of the head; multiple masters of the head; a paint master; and face paint masks. Also, for every plastic piece that comes with a doll, there should be a mold or molds for those items; and there should be equipment, such as printing plates, for the packaging. There should be a great deal of documentation related to all of this, including schematics, engineering drawings, and communications within the manufacturer about how the parts should fit together.

MGA has produced nothing from before or after February of 2001 (if one accepts the representation that the metal molds in the photographs are from that month). Notably, MGA has not produced either any of the mock-up development tooling and documentation that was transferred from Wah Sing to Early Light on or around December 8, 2000. As evidenced in MGA 0065414-15, there was at least a "roto head skin-master" in existence at that time. MGA has produced none of the other items that would be needed to produce the roto head skin-master, or that would be needed to produce the metal molds in the photographs you sent.

We have been asking for these items for months and have obtained Court orders compelling their production. We then learned, only recently, that MGA has been withholding such basic items as molds from production. Further, we have asked you what other categories of such items in my December 21 letter MGA believes are not within the scope of the requests and have received no response.

Please let me know today whether MGA will produce for our inspection each of the items identified above and all other items related to the origin, creation, development and/or manufacture of Bratz (as we have defined it in our requests that were compelled by the Court) that are responsive to our requests and whether it is willing to produce them immediately here in the United States. Absent immediate and full compliance, we will bring the motion referred to on page 4 of my January 9, 2008 letter. I look forward to hearing from you.

Very truly yours,

Diane C. Hutnyan

3

EXHIBIT __19__ PAGE __190__

# EXHIBIT 20

EXHIBIT _19_ PAGE _191_

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

**EXHIBIT 21**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

**EXHIBIT 22**

Skadden, Arps, Slate, Meagher & Flom LLP

525 UNIVERSITY AVENUE
PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 4, 2008

**By Email and U.S. Mail**

Diane Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:   *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
Case No. CV 04-9049 SGL (RNBx) (consolidated with
Cases Nos. CV 04-09059 and CV 05-02727)

Dear Diane:

I am writing to follow up on my January 2 letter regarding Mattel's demands to inspect certain tangible items in response to various requests for production of documents.

In my January 2 letter, I wrote that I would provide you with further information by today regarding the status of MGA's production in response to Request Nos. 2 and 16 to Mattel's First Set of Requests For Production Re: Claims for Unfair Competition. That information is as follows: MGA has reviewed the nearly 800 items made available thus far for Mattel's inspection and believes that it has substantially completed its production in response to Request No. 16 and has therefore complied with the Discovery Master's August 13, 2007 order. Of course, consistent with its obligations, should MGA identify additional items in the course of ongoing discovery that are responsive to Request No. 16, MGA will promptly make them available for your inspection.

With respect to Request No. 2, MGA has located additional three-dimensional and two-dimensional responsive items. The three-dimensional items are quite large and extremely difficult to transport and deliver for set up in a downtown Los Angeles office building. Accordingly, we will make those items available for your inspection at MGA's facility in Rialto, California, at a mutually convenient date and time at the end of next week or the following week. We will need to provide the facility at least 48 hours advance notice before you inspect. With respect to the two-

EXHIBIT 22 PAGE 202

Diane Hutnyan
January 4, 2008
Page 2

dimensional items, we will make those available for your inspection at Skadden's Los Angeles office at a mutually convenient date and time at the end of next week or the following week.

I have not heard back from you regarding the items available for Mattel's inspection in Hong Kong. Accordingly, I understand that you will not be inspecting on January 5, as we offered. As I'm sure you can imagine, MGA's Hong Kong counsel have busy schedules that are filling quickly. Thus, if we do not hear from you soon, we cannot guarantee that counsel's schedule will permit an inspection on January 8, 9 or 10. If you still wish to inspect the items in Hong Kong, please let me know so that we may make appropriate arrangements with Hong Kong counsel.

Lastly, MGA has identified additional items on which it may rely in this action, which may therefore be responsive to Request 166 to Mattel's First Set of Requests For Production to MGA. MGA will make those items available for your inspection and photographing at Skadden's Los Angeles office at a mutually convenient date and time next week. Regarding your inspection of items that our experts intend to rely on, I did not hear back from you regarding my January 2 offer to meet and confer today between 11 a.m. and 4 p.m. I therefore understand that you no longer disagree with MGA's position that such items will be produced before February 11 and that a meet and confer is thus unnecessary. To the extent that my understanding is incorrect, please let me know your availability to meet and confer about the matter next week. As of now, I am available on Tuesday afternoon, January 8, from 3:30 to 5 p.m. I am also generally available on Wednesday, January 9, between 10 a.m. and 5 p.m.

Sincerely,

Amy S. Park

EXHIBIT 22 PAGE 203

**EXHIBIT 23**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**

**EXHIBIT 24**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301
—

TEL: (650) 470-4500

FAX: (650) 470-4570

www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 17, 2008

**By Email and U.S. Mail**

Diane Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:   *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
Case No. CV 04-9049 SGL (RNBx) (consolidated with
Cases Nos. CV 04-09059 and CV 05-02727)

Dear Diane:

Further to my letter of January 15, we have identified a binder of material relating to the development of Bratz. You are welcome to come tomorrow and any day next week to inspect it. Please let me know how you'd like to proceed.

Sincerely,

Amy S. Park

Amy S. Park

EXHIBIT 24 PAGE 216

**EXHIBIT 25**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE
PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 21, 2008

**By Email and U.S. Mail**

Diane Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:   *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
      Case No. CV 04-9049 SGL (RNBx) (consolidated with
      Cases Nos. CV 04-09059 and CV 05-02727)

Dear Diane:

This responds to your email of this afternoon. I understand that the additional items referred to in my letter of earlier today that are available for your inspection in Skadden's Los Angeles office include a cut-out of the original Bratz girls, various mounted Bratz sketches/prints, accessory packs and packaging options. Also available are the binders that were made available last week (and for which we produced copies in TIFF format) as well as the various items made available the week prior, but which it does not appear that your team concluded inspecting.

As I previously noted, MGA continues to conduct a reasonable, good faith search for documents and tangible items, and will continue to produce responsive, non-privileged documents and tangible items as they are located.

Sincerely,

Amy S. Park

EXHIBIT _25_ PAGE _217_

**EXHIBIT 26**

**[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]**