# EXHIBIT 1

RECEIVED

DEC 2 1 2004

1   ROBERT F. MILLMAN, Bar No. CA 062152
    DOUGLAS A. WICKHAM, Bar No. CA 127268
2   KEITH A. JACOBY, Bar No. 150233
    LITTLER MENDELSON
3   A Professional Corporation
    2049 Century Park East, 5th Floor
4   Los Angeles, CA  90067.3107
    Telephone:   310.553.0308
5   Facsimile:   310.553.5583

6   Attorneys for Defendant and Counter-Claimant
    CARTER BRYANT

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware           Case No. CV 04-9059 NM (RNBx)
    Corporation,
12                                     HON. NORA M. MANELLA
                    Plaintiff,
13                                     NOTICE OF DEPOSITION OF
         v.                            PLAINTIFF AND COUNTER-
14                                     DEFENDANT MATTEL, INC.
    CARTER BRYANT, an individual;
15  and DOES 1 through 10, inclusive,  [F.R.C.P. 30(b)(6)]

16                  Defendant.         Date:       January 11, 2005
                                       Time:       9:30 a.m.
17                                     Place:      Littler Mendelson, PC
                                                   2049 Century Park East
18                                                 Suite 500, Los Angeles
                                                   California 90067
19  CARTER BRYANT, on behalf of
    himself, all present and former
20  employees of Mattel, Inc., and the
    general public,
21
                    Counter-Claimant,
22
         v.
23
    MATTEL, INC., a Delaware
24  Corporation,

25                  Counter-Defendant.

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

Exhibit 1 , Page 4

1    **TO PLAINTIFF MATTEL INC. AND ITS ATTORNEYS OF RECORD:**

2         PLEASE TAKE NOTICE that Defendant and Counter-Claimant Carter Bryant

3    ("Bryant") in the above-captioned matter shall take the deposition of the Person(s)

4    Most Knowledgeable from Plaintiff and Counter-Defendant Mattel, Inc. ("Plaintiff" or

5    "Mattel") at the offices of Littler Mendelson, 2049 Century Park East, Fifth Floor, Los

6    Angeles, California 90067, beginning at 9:30 a.m. on  January 11, 2005.  The

7    deposition shall continue from day to day excluding Saturdays, Sundays and holidays,

8    until completed.  The deposition will be taken before an officer or other person duly

9    authorized to administer oaths and shall be recorded by stenographic, sound and visual

10   (videotape), and real-time transcription means.

11        Pursuant to Rule 30(b)(6), the deponent is directed to designate one or more

12   officers, directors, managing agents or other individuals able to fully and completely

13   testify on its behalf concerning the matters listed in Exhibit "A" attached hereto.

14

15

16   Dated: December 21, 2004          Respectfully submitted,

17                                     ROBERT F. MILLMAN
                                       DOUGLAS A. WICKHAM
18                                     KEITH A. JACOBY

19

20                                     DOUGLAS A. WICKHAM
21                                     LITTLER MENDELSON
                                       A Professional Corporation
22                                     Attorneys for Defendant
                                       and Counter-Claimant
23                                     CARTER BRYANT

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1.

Exhibit 1 , Page 5

**EXHIBIT A**

Exhibit _1_, Page _6_

## EXHIBIT A

### Definitions

1.      "You," "Your" and "Mattel" refer to Plaintiff Mattel, Inc. and its officers, directors, agents, employees and all individuals acting under its direction or control or on its behalf.

2.      "Complaint" means the complaint filed by Mattel against Bryant in the Superior Court of the State of California for the County of Los Angeles dated April 27, 2004.

3.      "Communication" means any oral or written transmittal or receipt of words or information, by whatever manner or means, and regardless of how or by whom the communication was initiated and shall include any contact between two or more persons, including but not limited to written contact by such means as letter, memorandum, telegram, telex, email, facsimile or any Document, and oral contact by such means as face-to-face meeting or telephone.

4.      "Concerning" means relating to, referring to, describing, discussing, mentioning, evidencing, or constituting.

5.      "Contract" and/or "Agreement" mean the contract or agreement itself, and any drafts thereof, together with all schedules, exhibits, attachments or addenda thereto and any amendments of the foregoing.

6.      "Document(s)" means all "WRITINGS" and "RECORDINGS," including, but not limited to, writings and records of every type and description including, but not limited to, notes (including notes made contemporaneously with meetings or conversations or thereafter), books, records, letters, telegrams, memoranda, electronic mail messages (including electronic mail messages stored on network or individual servers, hard drives, back up tapes or other storage media, collectively referred to as "e-mail"), reports, studies, speeches, calendars or diary entries, tabulations, data compilations, drawings, designs, sketches, paintings, artwork, graphs, charts, photographs, computer disks, backup tapes and diskettes and

2.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

other data compilations from which information can be obtained or tabulated through detection devices into reasonably usable forms. "Document" also includes reproductions or film impressions of any of the aforementioned documents, tape recordings and copies of documents, which are not identical duplicates of the originals and copies of all documents of which the originals are not in the possession, custody or control of Mattel.

7.   "Relate To" and "Relating To" mean in any way directly or indirectly, concerning, referring to, pertaining to, mentioning, discussing, describing, disclosing, confirming, supporting, evidencing, representing, or being connected with a stated subject matter or any aspect thereof.

8.   "And" and "Or" mean either the conjunctive or the disjunctive as context may require so that the meaning of the term is inclusive rather than exclusive.

9.   "Person" or "Persons" means any or all entities including, without limitation, any or all individuals, single proprietorships, associations, companies, firms, partnerships, joint ventures, corporations, employees or former employees, or any other business, governmental or labor entity, and any division, departments or other units thereof.

10.   "MGA" means and refers to MGA Entertainment, Inc., formerly known as ABC International Traders, Inc. dba MGA Entertainment and Micro Games of America, Inc., and each of its officers, directors, agents, and employees or any other person acting on its behalf.

11.   "Bryant" means and refers to Defendant Carter Bryant and each of his agents, employees or any other person acting on his behalf.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

3.

Exhibit  1 , Page  8

## DESIGNATED SUBJECTS OF TESTIMONY AT PERSONS MOST KNOWLEDGEABLE DEPOSITION

1.     All Contracts, and the terms thereof, that You contend You had with Bryant.

2.     All contractual and non-contractual duties and obligations Bryant owed or performed for Mattel during his employment with Mattel, and thereafter.

3.     All of Bryant's acts or omissions which breached any contractual or non-contractual duty or obligation Bryant owed to Mattel.

4.     All of Bryant's acts or omissions which breached any duties or obligations imposed by the Conflict of Interest Questionnaire and/or the Employee Confidential Information and Inventions Agreement.

5.     All Mattel proprietary or confidential information Bryant had access to during his employment with Mattel.

6.     All of Bryant's acts or omissions pursuant to which he aided, assisted and worked for a competitor of Mattel while employed by Mattel from 1995 to the present.

7.     The services and property belonging to Mattel that Bryant provided to any third party, including MGA, from 1995 to the present.

8.     All acts, omissions, circumstances and/or evidence showing, or tending to show, that any and all products of MGA, including but not limited to, any and all products sold under the trade name "Bratz," originated from, were derived from, are based upon, are copied or incorporated from, or are substantially or confusingly similar to, any design, research and developmental work, work in progress, or product owned at any time by Mattel or created by any Mattel employee, including but not limited to Bryant, or by any independent contractor during the time that such Person was working for Mattel.

9.     All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "Toon Teens."

4.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Exhibit _1_, Page _9_

1      10.    All facts and circumstances showing the conception, origination,

2  creation, development and/or reduction to practice of "My Scene Barbie" and each of

3  the other "My Scene" characters or dolls.

4      11.    All facts and circumstances showing the conception, origination,

5  creation, development and/or reduction to practice of "Diva Starz."

6      12.    All facts and circumstances showing the conception, origination,

7  creation, development and/or reduction to practice of "Mini Diva Starz."

8      13.    All acts, omissions, circumstances and/or evidence showing, or tending

9  to show, that any product sold at any time by MGA under the trade name "Bratz"

10  originated from, is derived from, is based on, copies, incorporates, or is substantially

11  or confusingly similar to any design or work product owned at any time by Mattel or

12  created by Bryant during the time Bryant was working for Mattel.

13      14.    All acts, omissions, circumstances and/or evidence showing, or tending

14  to show, that Mattel has been damaged or suffered any financial or other loss by any

15  act or omission of Bryant.

16      15.    All acts, omissions, circumstances and/or evidence showing, or tending

17  to show, when Mattel first became aware of any alleged wrongful conduct of Bryant.

18      16.    All acts, omissions, circumstances and/or evidence showing, or tending

19  to show, the manner and mode by which Mattel first became aware of any alleged

20  wrongful conduct of Bryant.

21      17.    All acts, omissions, circumstances and/or evidence showing, or tending

22  to show, when You first became aware that Bryant was involved in the conception,

23  creation, design and/or reduction to practice of Bratz.

24      18.    All facts, omissions, circumstances and/or evidence showing, or tending

25  to show, how You first became aware that Bryant was involved in the conception,

26  creation, design and/or reduction to practice of Bratz.

27      19.    All acts, omissions, circumstances and/or evidence showing, or tending

28  to show, all actions taken by You, including but not limited to all circumstances

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

5.

Exhibit _1_, Page _10_

1  surrounding any investigations you have undertaken, relating to Bratz after You

2  learned that Bryant was involved in the conception, creation, design and/or reduction

3  to practice of Bratz.

4       20.   All acts, omissions, circumstances and/or evidence showing, or tending

5  to show, all actions taken by You, including but not limited to all circumstances

6  surrounding any investigations You have undertaken, relating to Bryant and any act or

7  omission of Bryant that breached any contractual or non-contractual duty or obligation

8  Bryant owed to Mattel.

9       21.   All Communications regarding Bryant's involvement in the conception,

10  creation, design and/or reduction to practice of Bratz from 1998 until the date of the

11  filing of the Complaint.

12       22.   All acts, omissions, circumstances and/or evidence showing, or tending

13  to show, that Bryant misappropriated Mattel property, including without limitation

14  intellectual property, at any time.

15       23.   All acts, omissions, circumstances and/or evidence showing, or tending

16  to show, that Bryant owed fiduciary duties to, or occupied a fiduciary relationship

17  with, Mattel.

18       24.   All acts, omissions, circumstances and/or evidence showing, or tending

19  to show, that prior to October 21, 2000, Mattel had any toy concept or project which

20  had not yet been offered for sale to the public, including without limitation, any toy

21  concept or project in the pre-production or development phase, that Bryant improperly

22  copied, replicated, borrowed or otherwise used in whole, or in any part, during or after

23  Bryant's employment with Mattel.

24       25.   All measures taken by Mattel including, without limitation, any legal

25  action brought or threatened to be brought (including in demand letters or other

26  notices), from 1998 to the present to achieve, or attempt to achieve, compliance with

27  or adherence to any or all of the terms and conditions of Mattel's "Employee

28  Confidential Information and Inventions Agreement" (including all forms or versions

6.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

Exhibit ___, Page ___

1   of that agreement) from 1998 to the present, and/or Mattel's "Conflict of Interest

2   Questionnaire" (including all forms or versions of that agreement) from 1998 to the

3   present.

4       26.    Communications, discussion, meetings, analyses and the decision-

5   making process regarding measures taken or contemplated by Mattel including,

6   without limitation, any legal action brought or threatened to be brought (including

7   demand letters or other notices) against Bryant including, without limitation, the filing

8   of the Complaint.

9       27.    Mattel's electronic mail system's ability to retrieve electronic mail

10   messages from any Mattel server, Mattel electronic mail archive tape, or hard drive

11   networked to the Mattel computer network, as that network existed from January 1998

12   to the present.

13       28.    Mattel's policies or procedures or practice in effect or use, from January

14   1998 to the present, regarding Document retention or destruction (including with

15   respect to e-mails), including without limitation, e-mail backup procedures and

16   policies; location of saved or backed-up e-mails, procedures for accessing saved or

17   backed-up e-mails; policies regarding deletion of e-mails; and Mattel's document

18   retention or destruction policies (including with respect to emails) when Mattel had

19   notice of a potential claim or lawsuit in each of the years 1998, 1999, 2000, 2001,

20   2002, 2003 and 2004.

21       29.    Mattel's policies, procedures and practices in effect or use, at any time

22   from January 1, 1998 to the present, regarding Document retention, deletion and

23   destruction (including with respect to electronic documents and e-mail), including

24   without limitation, e-mail backup policies, procedures and practices in effect or use;

25   location of saved or backed-up e-mails, procedures for accessing saved or backed-up

26   e-mails; policies, procedures and practices in effect or use regarding deletion of e-

27   mails; and policies, procedures and practices in effect or use regarding retention of e-

28   mails.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Exhibit _1_, Page _12_

1      30.    All hardware and software used by Mattel at any time from January 1,

2   1998 to the present for Mattel's e-mail systems including, without limitation, all on-

3   site and off-site back-up computer systems and files, exchange servers and computer

4   storage space.

5      31.    The ability of Mattel to retrieve e-mail messages from any server, disk,

6   drive, archive disk, tape, server or drive, storage disk, tape server or drive, individual

7   computer hard drive, or any hard drive or server networked to any Mattel computer

8   network, at any time from January 1, 1998 to the present.

9      32.    Mattel's policies, procedures and practices in effect or use, at any time

10   from January 1, 1998 to the present, regarding Document retention, deletion or

11   destruction (including with respect to e-mails and other electronic documents) when

12   Mattel is aware of a potential claim or lawsuit in which it may be involved.

13      33.    Mattel's policies, procedures and practices in effect or use, at any time

14   from January 1, 1998 to the present, regarding Document retention, deletion or

15   destruction (including with respect to e-mails and other electronic documents) after

16   Mattel began considering or analyzing any potential claim or lawsuit against MGA or

17   Bryant regarding "Bratz" or other claim of any nature.

18      34.    Mattel's policies, procedures and practices in effect or use, at any time

19   from January 1, 1998 to the present, regarding Document retention, deletion or

20   destruction (including with respect to e-mails and other electronic documents) after

21   Mattel began investigating facts pertaining to Bryant's involvement with MGA or

22   "Bratz" or any claim of any nature, actual or potential, against Bryant.

23      35.    Mattel's policies, procedures and practices in effect or use, at any time

24   from January 1, 1998 to the present, regarding Document retention, deletion or

25   destruction  including with respect to e-mails and other electronic documents) after

26   Mattel began investigating facts pertaining to the relationship, if any, between

27   Bryant's involvement with MGA or "Bratz" and work or projects that Bryant may

28   have seen during his employment with Mattel.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

8.

Exhibit ___1___, Page _13_

36.   Files (including human resources and legal files and files kept or maintained at business locations and personal residences), locations, offices, computers (including business, lap top and residence computers), warehouses, records centers, file rooms, archives, servers, storage facilities, back up or storage tapes, and any and other method and/or location for maintaining or storing Documents that were searched or reviewed by Mattel when searching for Documents responsive to Bryant's Request for Identification and Production of Documents and Tangible Things (Set One) including, without limitation, all efforts made and steps undertaken when searching for and producing Documents in a tangible, electronic, magnetic or any other form.

37.   The facts and circumstances surrounding the filing of the copyright registration for "Toon Teens, produced by Mattel as Document Control Nos. M0012564-65.

38.   The development of "Toon Teens," including Your decision to not offer "Toon Teens" for sale to the public.

39.   What actions, if any, You took with respect to the "Toon Teens" project after You decided not to offer this project for sale to the public.

40.   The current status of the "Toon Teens" project.

41.   All statements of Mattel or ex-Mattel employees in the July 2003 Wall Street Journal article (produced by Mattel to Bryant in the present case), including, without limitation, "Inside Mattel, some are convinced the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998"; "But the Bratz' oversized heads – with their pursed lips and cartoonist eyes -- are 'virtually identical' to the heads of the dolls her team created"; "Anyone who passed by [Lily Martinez's] cubicle would see the picture up on the wall"; and "The big heads, the big eyes, the big feet -- they were all the same [as the Bratz]."

42.   Documents produced by Mattel as Document Control Nos. M0012567-71.

9.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Exhibit _1_, Page _14_

1     43.    Documents produced by Mattel as Document Control Nos. M0012572-

2  78.

3     44.    Documents produced by Mattel as Document Control Nos. M0012579-

4  86.

5     45.    Documents produced by Mattel as Document Control Nos. M0012587.

6     46.    Documents produced by Mattel as Document Control Nos. M0012594-

7  617 and Nos. M0001558-81.

8     47.    Mattel's phone log system, and the maintenance, storage and ability to

9  retrieve phone logs from an individual extension, such as the log produced by Mattel

10  as Document Control Nos. M0001808-24, including Bryant's phone logs for

11  extension 6099 for October 2000.

12     48.    All board of director's meeting minutes that evidence, relate or refer to

13  Bryant from January 1998 to the present.

14     49.    All versions of the "Employee Confidential Information and Inventions

15  Agreement" used by Mattel since January 1, 1995 including, without limitation, the

16  "Employee Confidential Information and Inventions Agreement" produced by Mattel

17  as Document Control Nos. M0001638-39 and the "Employee Confidential

18  Information and Inventions Agreement" attached to the Complaint as Exhibit "A."

19     50.    All versions of the "Conflict of Interest Agreement" used by Mattel since

20  January 1, 1995 including, without limitation, the "Conflict of Interest Agreement"

21  produced by Mattel as Document Control Nos. M0001636-37 and the "Conflict of

22  Interest Agreement" attached to the Complaint as Exhibit "B."

23     51.    The "Proprietary Information Checkout" form produced by Mattel as

24  Document Control No. M0001597.

25     52.    All forms or other documents which Mattel has requested prospective

26  and actual employees to sign since January 1, 1995.

27     53.    All recording and tracking of the time spent by Bryant while working on

28  various Mattel projects.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

10.

Exhibit ___1___, Page 15

1    54.    Bryant's "Job Summary" report, produced by Mattel as Document

2  Control Nos. M001667-68.

3    55.    All acts, omissions, circumstances and/or evidence showing, or tending

4  to show, that Bryant made affirmative misrepresentations to any and all Mattel

5  employees upon his departure from Mattel.

6    56.    Bryant's "Exit Interview Report" dated October 19, 2000, produced by

7  Mattel as Document Control No. M0001654.

8

9

10

11

12

13    Los_Angeles:388196.2 028307.1010

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

11.

Exhibit _1_, Page _16_

1

## PROOF OF SERVICE BY MESSENGER

2          I am employed in Los Angeles County, California. I am over the age of

3  eighteen years and not a party to the within-entitled action. My business address is

4  Allstar Messenger Service, 345 South Figueroa Street, Suite 305, Los Angeles,

5  California 90071. On December 21, 2004, I personally served:

6         **NOTICE OF DEPOSITION OF PLAINTIFF AND**

7         **COUNTER DEFENDANT MATTEL, INC.**

         by delivering copies thereof to:

8

9  Michael T. Zeller, Esq.               Diana M. Torres, Esq.

    Quinn Emanuel Urquhart Oliver &      O'Melveny & Myers LLP

10  Hedges LLP                      400 S. Hope Street, 10th Floor

    865 S. Figueroa Street, 10th Floor     Los Angeles, CA 90071

11  Los Angeles, CA 90017

12         I declare under penalty of perjury under the laws of the State of

13  California that the above is true and correct.

14         Executed on December 21, 2004, at Los Angeles, California.

15

16

17

18  Los_Angeles:388357.1 028307.1010

                   MARCUS ROBINSON

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553.0308

PROOF OF SERVICE

Exhibit __1__, Page __17__

# EXHIBIT 2

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., A DELAWARE ) 
CORPORATION, ) 
 ) 
        PLAINTIFF, ) 
 ) 
    VS. ) NO. CV-04 9059 (NM) 
 ) 
CARTER BRYANT, AN INDIVIDUAL; AND ) 
DOES 1 THROUGH 10, INCLUSIVE, ) 
 ) 
        DEFENDANTS. ) 
————————————————————————————— ) 
 ) 
CARTER BRYANT, ON BEHALF OF ) 
HIMSELF, ALL PRESENT AND FORMER, ) 
EMPLOYEES OF MATTEL, INC., AND THE ) 
GENERAL PUBLIC, ) 
 ) 
        COUNTER-COMPLAINANT, ) 
 ) 
    VS. ) 
 ) 
MATTEL, INC., A DELAWARE ) 
CORPORATION, ) 
 ) 
        COUNTER-DEFENDANT. ) 
————————————————————————————— ) 

VOLUME II

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TUESDAY, MARCH 15, 2005

LOS ANGELES, CALIFORNIA

REPORTED BY:

JOHN M. TAXTER
C.S.R. NO. 3579, R.P.R.

JOB NUMBER:
41191LMF

**LUDWIG KLEIN**
REPORTERS & VIDEO, INC.
10868 KLING STREET
TOLUCA LAKE, CALIFORNIA 91602
800.540.0681      FAX 818.508.6326
e-mail: lois@ludwigklein.com

Exhibit   2 , Page  18

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3

4    MATTEL, INC., A DELAWARE          )
     CORPORATION,                      )
5                                      )
                PLAINTIFF,             )
6                                      )
          VS.                          )  NO. CV-04 9059 (NM)
7                                      )
     CARTER BRYANT, AN INDIVIDUAL; AND )
8    DOES 1 THROUGH 10, INCLUSIVE,     )
                                       )
9               DEFENDANTS.            )
     ──────────────────────────────── )
10                                     )
     CARTER BRYANT, ON BEHALF OF       )
11   HIMSELF, ALL PRESENT AND FORMER,  )
     EMPLOYEES OF MATTEL, INC., AND THE)
12   GENERAL PUBLIC,                   )
                                       )
13              COUNTER-COMPLAINANT,   )
                                       )
14        VS.                          )
                                       )
15   MATTEL, INC., A DELAWARE          )
     CORPORATION,                      )
16                                     )
                COUNTER-DEFENDANT.     )
17   ──────────────────────────────── )

18

19          REPORTER'S TRANSCRIPT OF PROCEEDINGS, VOLUME

20     II, TAKEN AT 9:36 A.M., ON TUESDAY, MARCH 15, 2005,

21     AT 2049 CENTURY PARK EAST, FIFTH FLOOR, LOS

22     ANGELES, CALIFORNIA, BEFORE JOHN M. TAXTER,

23     C.S.R. NO. 3579, R.P.R., A CERTIFIED SHORTHAND

24     REPORTER IN AND FOR THE STATE OF CALIFORNIA.

25

                                                        139

                         VOLUME II

Exhibit _2_, Page _19_

APPEARANCES:

FOR PLAINTIFF AND COUNTER-DEFENDANT MATTEL, INC.:

QUINN EMANUEL URQUHART OLIVER & HEDGES,
L.L.P.
BY: MICHAEL ZELLER
ATTORNEY AT LAW
865 SOUTH FIGUEROA STREET
TENTH FLOOR
LOS ANGELES, CALIFORNIA 90017
213.443.3180

FOR DEFENDANT CARTER BRYANT:

LITTLER MENDELSON
BY: DOUGLAS WICKHAM
ATTORNEY AT LAW
-AND-
KEITH JACOBY
ATTORNEY AT LAW
2049 CENTURY PARK EAST
FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-2709
310.553.0308

FOR INTERVENOR M.G.A. ENTERTAINMENT, INC.:

O'MELVENY & MYERS, L.L.P.
BY: ALICIA CARRASQUILLO MEYER
ATTORNEY AT LAW
-AND-
PAULA AMBROSINI
ATTORNEY AT LAW
400 SOUTH HOPE STREET
LOS ANGELES, CALIFORNIA 90071-2899
213.430.6000

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   OF THE LAWSUIT.  BUT, I MEAN, I CAN'T THINK OF A

2   CATEGORY THAT'S MORE FOURSQUARE ABOUT WHAT THIS LAWSUIT

3   IS ABOUT THAN THIS ONE.

4          AND SO, GIVEN THE FACT THAT YOU -- MATTEL HAS

5   NOT SPELLED OUT TO DATE PRECISELY THE DUTIES, EITHER

6   CONTRACTUAL, RELATED TO THE AGREEMENT, OR NONCONTRACTUAL

7   VIOLATIONS OF A HANDBOOK THAT HAVE BEEN VIOLATED, THE

8   ONLY WAY THAT WE CAN FLESH THAT OUT IS TO PROPOUND

9   A REQUEST SUCH AS THIS.  AND, AGAIN, WE DON'T -- WE

10  DON'T TAKE ISSUE WITH THE POSITION THAT MATTEL ISN'T

11  OBLIGATED TO SPELL OUT EXACTLY WHAT DUTIES THEY BELIEVE

12  WERE VIOLATED UNTIL SOME LATER DATE.  I SUPPOSE THAT

13  DATE WOULD BE THE PRETRIAL CONFERENCE ORDER.

14          MR. WICKHAM:  IT ALSO GOES TO LAYING THE

15  FACTUAL FOUNDATION FOR THE CLAIM OF A PARTICULAR DUTY.

16  I MEAN MATTEL HAS CLAIMED THAT BRYANT BREACHED FIDUCIARY

17  DUTIES.  WE BELIEVE THAT HE WAS NOT A FIDUCIARY; THAT HE

18  DOES NOT OWE FIDUCIARY DUTIES; THAT THE -- OH,

19  GOODNESS -- THE BANCROFT-WHITNEY CASE OUT OF THE

20  CALIFORNIA SUPREME COURT DEFINES THE NATURE AND EXTENT

21  OF FIDUCIARY DUTIES IN A CORPORATE CONTEXT, AND, FOR A

22  LINE EMPLOYEE OF MR. BRYANT'S LEVEL, THAT HE SIMPLY

23  DOESN'T RISE TO THE LEVEL OF BEING A FIDUCIARY;

24  THEREFORE, HE CAN'T BE SUED FOR BREACH OF FIDUCIARY

25  DUTY.

VOLUME II

Exhibit _2_ , Page _21_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          BUT, TO THE EXTENT THAT YOU HAVE A WITNESS WHO

2   WILL TESTIFY AS TO THE FACTUAL BASIS FOR YOUR CONTENTION

3   THAT HE OWES FIDUCIARY DUTIES -- I.E., DOES HE OCCUPY

4   A POSITION OF TRUST? DOES HE HOLD SOME HIGH CORPORATE

5   POSITION AS A MANAGING DIRECTOR, OFFICER, OR SOME OTHER

6   CAPACITY ESTABLISHING CORPORATE FIDUCIARY DUTIES? -- WE

7   NEED TO BE ABLE TO ASK THAT WITNESS THOSE QUESTIONS IN

8   ORDER TO EITHER CHALLENGE MATTEL'S ASSERTION THAT HE

9   OWED FIDUCIARY DUTIES OR TO SIMPLY ACCEPT IT BECAUSE

10   YOU'VE LAID A FOUNDATION FOR IT.

11          MR. ZELLER:  OKAY.  WELL, THERE ARE A COUPLE

12   THINGS, SOME OF WHICH HAVE POTENTIALLY THE SEEDS OF A

13   RESOLUTION ON THIS.

14          ONE CONCERN WITH RESPECT TO TOPIC 2 -- AND THE

15   WAY THAT YOU WERE TALKING ABOUT IT, KEITH, IS THAT IT

16   SOUNDS LIKE YOU WANT SOMEONE TO COME IN AND TESTIFY

17   ABOUT, YOU KNOW, LEGAL OBLIGATIONS, CONTENTIONS; THAT

18   SORT OF THING.  OBVIOUSLY, WE DON'T THINK THAT'S THE

19   APPROPRIATE VEHICLE FOR FINDING OUT THAT KIND OF

20   INFORMATION.  CERTAINLY, THE FACTUAL BASIS IS CERTAINLY

21   FAIR GAME.  THAT I DON'T HAVE AN ISSUE WITH.  SO TO THE

22   EXTENT -- I MEAN ONE THING IS, OF COURSE, THIS IS --

23   THIS IS FRAMED IN TERMS OF, YOU KNOW, WHAT WILL HAVE

24   BEEN THE ULTIMATE LEGAL CONCLUSION.  WITH RESPECT TO

25   PROVIDING A WITNESS TO TALK ABOUT THE FACTUAL

156

VOLUME II

Exhibit 2 , Page 22

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   UNDERPINNINGS FOR THOSE DUTIES, THAT'S NOT AN ISSUE.

2   THAT WE CAN DO.  BUT PART OF THE ISSUE, YOU KNOW,

3   PERTAINS TO, YOU KNOW, HOW THIS THING IS FRAMED AND SET

4   OUT.

5          WITH RESPECT TO, YOU KNOW, THE NOTION OF

6   FIDUCIARY DUTIES, YOU KNOW, I DON'T WANT TO GO TOO FAR

7   AFIELD HERE, BUT, YOU KNOW, THE BANCROFT CASE ALSO

8   STATED VERY CLEARLY, AS WELL AS OTHER CASES DEALING WITH

9   THIS SITUATION, THAT FIDUCIARY DUTY CAN ARISE NOT ONLY

10  BECAUSE OF THE NATURE OF THE PERSON'S OBLIGATIONS OR THE

11  POSITION THAT THAT PERSON HAD BUT BECAUSE THEY'RE

12  CONTRACTUALLY ACQUIRED.  AND THERE IS A PROVISION IN

13  MR. BRYANT'S CONTRACT THAT SO STATES.

14          SO, YOU KNOW, IT'S NOT -- SO THESE DO OVERLAP

15  TO SOME DEGREE.  I MEAN, OBVIOUSLY, HAVING A WITNESS

16  COME IN AND TESTIFY AND SAY, "WELL, YOU KNOW, MATTEL'S

17  POSITION IS THAT HE IS A FIDUCIARY BECAUSE IT'S SET

18  FORTH HERE IN THE CONTRACT," I MEAN, I PRESUME THAT'S

19  NOT WHAT YOU'RE LOOKING FOR.

20          MR. JACOBY:  NO.  I MEAN TO IMPOSE AN

21  OBLIGATION ON SOMEONE, EITHER CONTRACTUAL OR

22  NONCONTRACTUAL, THAT OBLIGATION HAS TO BE ARTICULATED.

23  I MEAN IT GOES -- THERE IS -- I AGREE THAT IT WOULD BE

24  IMPROPER TO SAY TO THIS P.M.K., "UNDER CALIFORNIA LAW

25  DOES THIS CONTRACT MEAN THIS?"

157

VOLUME II

Exhibit 2, Page 23

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          AND, IF YOU'RE INTERPRETING THIS CATEGORY TO

2    CALL FOR THOSE TYPE OF QUESTIONS, WELL, THEN AGAIN YOU

3    COULD OBJECT AND SAY THAT CALLS FOR A LEGAL CONCLUSION.

4          BUT, IF I SAY, "DOES MATTEL EXPECT THAT

5    EMPLOYEES OWE A DUTY NOT TO HAND OVER, YOU KNOW, SECRET

6    PROJECTS TO COMPETITORS?" I PRESUME THE ANSWER WOULD BE,

7    "YES."

8          AND THEN I'D SAY, "WELL, WHAT IS THE SOURCE OF

9    YOUR BELIEF THAT THAT IS -- THAT MATTEL EMPLOYEES OWE

10   SUCH A DUTY?" AND THEN THEY CAN TALK ABOUT WHAT WHATEVER

11   THEY'RE GOING TO TALK ABOUT.

12          "IT'S IN THE HANDBOOK.  IT'S IN THE CONTRACT.

13   WE HAVE MEETINGS ABOUT THAT.  IT'S POSTED ON THE WALL."

14   I MEAN THAT'S HOW -- TO IMPOSE AN OBLIGATION ON AN

15   EMPLOYEE, YOU HAVE TO EXPLAIN IT TO THEM.  YOU CAN'T

16   KEEP IT -- AND, CERTAINLY, IF YOU'RE GOING TO SUE ON IT,

17   YOU HAVE TO PROVE IT AS AN ELEMENT OF YOUR CASE.

18          SO WHAT I'M TRYING TO FIND OUT BEFORE THE

19   PRETRIAL CONFERENCE ORDER IS, WHAT ARE THE DUTIES THAT

20   YOU BELIEVE -- MATTEL BELIEVES HAVE BEEN BROKEN, HAVE

21   NOT BEEN MET BY CARTER?

22          AND SO THE FIRST STEP IN MY FINDING OUT THAT

23   PROCESS AFTER READING THE CONTRACTS AND READING THE

24   HANDBOOKS IS TO GET LIVE TESTIMONY ON WHAT PEOPLE

25   BELIEVE THOSE DUTIES ARE, WHAT MATTEL ASSERTS THOSE

158

Exhibit  2 , Page  24

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    DUTIES ARE.  AND I THINK THAT, WHILE TECHNICALLY THERE

2    IS A LEGAL ASPECT TO IT, THE DEPOSITION ISN'T DIRECTED

3    TOWARD THE LEGAL ASPECT TO IT.  SOME DAY A JUDGE WILL

4    DECIDE WHETHER MATTEL HAS COMMUNICATED THOSE DUTIES,

5    WHETHER THOSE DUTIES EXIST, WHETHER THOSE DUTIES ARE

6    UNCONSISTENT OR CONSISTENT WITH CALIFORNIA OR FEDERAL

7    LAW.

8         BUT IN DISCOVERY MATTEL IS OBLIGATED, WHEN

9    THEY SUE ON BREACH OF CONTRACT OR OR BREACH OF FIDUCIARY

10   DUTY, TO SAY WHAT THE DUTIES ARE, AND THAT'S THE

11   TESTIMONY WE'RE TRYING TO GET.

12        SO I'M WILLING TO STIPULATE THAT YOU CAN

13   RESERVE THE RIGHT ON THIS CATEGORY AND EVERY CATEGORY TO

14   ASSERT THAT A PARTICULAR QUESTION CALLS FOR A LEGAL

15   CONCLUSION, BUT, CLEARLY, THERE ARE QUESTIONS RELATED TO

16   THIS CATEGORY THAT WOULD NOT.

17        MR. ZELLER:  IF WHAT YOU'RE SAYING IS THAT

18   YOU'RE LOOKING FOR FACTUAL -- YOU KNOW, FACTUAL

19   INFORMATION PERTAINING TO THESE CATEGORIES, THEN THAT

20   WOULD BE POTENTIALLY --

21        MR. JACOBY:  EVERY SINGLE ONE OF THEM.

22        MR. ZELLER:  OKAY.

23        MR. JACOBY:  EVERY SINGLE ONE OF THEM.

24        MR. WICKHAM:  IT SO HAPPENS THAT PEOPLE IN THE

25   HUMAN RESOURCES DEPARTMENT WHO HAVE FACILITY WITH

159

VOLUME II

Exhibit _2_, Page _25_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    CONTRACTS AND ARE RESPONSIBLE FOR EMPLOYEE ORIENTATION

2    AND THINGS OF THAT NATURE WILL HAVE A LAY UNDERSTANDING

3    OF CERTAIN LEGAL TERMS.  AND SO BECAUSE -- JUST BECAUSE

4    THERE MAY BE A LEGAL ASPECT OF A PARTICULAR QUESTION, IF

5    IT'S PART AND PARCEL OF THE H.R. PERSON'S DUTIES AND

6    RESPONSIBILITIES TO UNDERSTAND THESE THINGS AND TO

7    EXPLAIN THEM TO EMPLOYEES, THEN WE ALSO WOULD BE

8    ENTITLED TO BE EXPLORING THOSE ISSUES, YOU KNOW, WITH

9    THE H.R. PEOPLE AND EXPLORING THE DEGREE TO WHICH THEY

10   COMMUNICATE THESE THINGS TO THE EMPLOYEES AND

11   SPECIFICALLY THE DEGREE TO WHICH THEY COMMUNICATED THE

12   DUTIES TO MR. BRYANT.

13          SO, I MEAN, WHILE YOU ABSOLUTELY HAVE A RIGHT

14   TO MAKE WHATEVER OBJECTIONS AS TO FORM AND ANYTHING ELSE

15   AT DEPOSITIONS THAT, YOU KNOW, ARE APPROPRIATE UNDER THE

16   RULES, THAT A PARTICULAR QUESTION IN A PARTICULAR

17   CONTEXT, YOU KNOW, MAY TECHNICALLY CALL FOR A LEGAL

18   CONCLUSION WOULDN'T BE A BASIS EITHER FOR REFUSING TO

19   PRODUCE SOMEONE IN RESPONSE TO A TOPIC OR FOR, YOU KNOW,

20   WITHHOLDING THAT, IF IT'S PART OF THAT PERSON'S

21   THEMSELVES DUTIES AND RESPONSIBILITIES AS IN THE

22   H.R. FUNCTION.

23          MR. JACOBY:  LET ME GIVE YOU AN EXAMPLE OF HOW

24   I THINK THE DISTINCTION BETWEEN THESE TWO ISSUES WOULD

25   PLAY OUT IN A LINE OF QUESTIONING.

160

VOLUME II

Exhibit 2, Page 26

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1        MR. JACOBY:  OKAY.  WELL, I TAKE IT YOU -- IN

2   MY KIND OF MODEL I NEVER -- I DIDN'T SUGGEST TO YOU THAT

3   WE WOULD ASK THE QUESTION, "WHAT IS THE SOURCE OF ALL OF

4   HIS OBLIGATIONS?"

5        I'VE ACTUALLY GIVEN YOU MY DEPOSITION OUTLINE.

6        MY DEPOSITION OUTLINE IS, "WHAT OBLIGATIONS DO

7   YOU BELIEVE MR. BRYANT HAD THAT WEREN'T MET?  WHAT WAS

8   THE SOURCE OF THOSE OBLIGATIONS?  WHAT UNDERSTANDING, IF

9   ANY, DO YOU HAVE ABOUT HOW THOSE OBLIGATIONS WEREN'T

10  MET?"

11       THAT'S IT.  THAT'S WHAT THIS IS CALLING FOR.

12       MR. WICKHAM:  AND IT DEPENDS UPON WHO THE

13  DESIGNEE IS.  IF THE DESIGNEE IS SOMEBODY WITHIN THE

14  HUMAN RESOURCES DEPARTMENT, NOT AN ATTORNEY, THEN THERE

15  ISN'T ISSUES OF PRIVILEGE OR ANYTHING OF THAT NATURE;

16  AND THAT THEIR FACILITY WITH THESE DUTIES AND

17  OBLIGATIONS, ONES THAT THEY ARTICULATE BACK TO

18  EMPLOYEES, WOULDN'T BE SOMETHING THAT WOULD BE OFF --

19  YOU KNOW, OUT OF BOUNDS FOR THE QUESTIONS.

20       IF THEIR SOLE SOURCE AS TO THE KNOWLEDGE OF

21  THESE THINGS CAME FROM ADVICE OF COUNSEL, THEN, YOU

22  KNOW, AT WHATEVER APPROPRIATE TIME YOU WOULD BE

23  ASSERTING OBJECTIONS.  BUT I'M JUST WONDERING, MAYBE

24  WHAT WE CAN DO IS TO START OUT WITH THE PROPOSITION THAT

25  OUR SECURING THE FACTUAL BASIS FOR THE MATTERS THAT ARE

163

Exhibit _2_ , Page _27_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    THE SUBJECT OF ITEM 2 -- AND I THINK, YOU KNOW, MAYBE

2    THIS WILL BE -- WE'LL BE ABLE TO GET SOME HEADWAY ON

3    THIS AND -- YOU KNOW, BECAUSE YOU CAN AGREE -- I DON'T

4    WANT TO PUT WORDS IN YOUR MOUTH, BUT IT SEEMS LIKE WE

5    CAN AGREE THAT OUR SECURING THE FACTUAL BASIS FOR

6    MATTEL'S CONTENTION REGARDING THE EXISTENCE OF THESE

7    DUTIES IS FAIR GAME.  AND, AS FOR EVERYTHING ELSE,

8    WHETHER SOMETHING TURNS THE CORNER INTO LEGAL ADVICE,

9    WHETHER THINGS GO INTO PRIVILEGE, WHETHER THINGS ARE

10   MATTERS WHICH YOU WOULD OBJECT AND INSTRUCT ON THE

11   GROUNDS THAT IT CALLS FOR A LEGAL CONCLUSION, OR WHETHER

12   SOMETHING IS SOMETHING YOU WOULD OBJECT ON THE GROUNDS

13   IT CALLS FOR A LEGAL CONCLUSION BUT YOU WOULD LET THEM

14   ANSWER, ANYWAY, ARE ISSUES THAT CAN BE PLAYED OUT AT THE

15   DEPOSITION.  IN ADVANCE OF SEEING THE WITNESS, ASKING

16   THE WITNESS QUESTIONS, WE DON'T KNOW WHAT THE ANSWERS

17   ARE GOING TO BE, SO WE CAN'T FORESEE EVERY CONCEIVABLE

18   TURN AND QUESTION AND RESPONSE.

19            BUT, IF WE CAN AGREE THAT, AS TO THE FACTUAL

20   BASIS ON ITEM 2, THAT IS FAIR GAME FOR A 30(B)(6)

21   DEPOSITION, MAYBE WE CAN START THERE.  YOU CAN RESERVE

22   ALL OF YOUR OBJECTIONS, OBVIOUSLY, AND SEE HOW IT PLAYS

23   OUT AT THE DEPOSITION.

24            MR. ZELLER:  WELL, IT'S NOT JUST SIMPLY A

25   MATTER OF RESERVING OBJECTIONS BECAUSE, I MEAN,

164

VOLUME II

Exhibit 2, Page 28

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   OBVIOUSLY SOME THINGS CAN BE DEALT WITH THROUGH

2   OBJECTIONS AND THE LIKE AT A DEPOSITION.

3           PART OF MY CONCERN -- AND IT GOES TO A NUMBER

4   OF TOPICS, SO IT'S PROBABLY WORTH SPENDING SOME TIME

5   JUST TO TRY AND GET PERHAPS SOME COMMON GROUND ON THIS.

6   FOR EXAMPLE, YOU KNOW, NO. 2 IS FRAMED AS, YOU KNOW,

7   BASICALLY, "TELL US WHAT MATTEL'S CONTENTIONS ARE IN

8   THIS CASE."  AND ONE EXAMPLE THAT WAS GIVEN IN TERMS OF

9   QUESTIONING OF A P.M.K. NOTICE WOULD BE, "WELL, YOU

10  KNOW, REPEAT OR" -- EXCUSE ME -- OF A 30(B)(6) WITNESS

11  WOULD BE, "TELL US WHAT MATTEL'S CONTENTION IS REGARDING

12  THE EXISTENCE OF DUTIES THAT MR. BRYANT OWED."  THAT'S

13  PART OF -- THAT'S PART OF WHERE THIS HANG-UP IS.

14          THERE'S NO PARTICULAR ISSUE, AS FAR AS I'M

15  CONCERNED, REGARDING WHETHER OR NOT YOU WOULD BE

16  ENTITLED TO ASK ABOUT FACTS, AND WE WOULD EDUCATE

17  SOMEBODY TO COME IN AND TESTIFY ABOUT FACTS; HOW WAS

18  SOMETHING, IF IT WAS, COMMUNICATED TO THE EMPLOYEE; WHAT

19  WAS THE HANDBOOK THAT WAS, YOU KNOW, IN EFFECT DURING

20  THAT TIME; IS THIS, IN FACT, THE HANDBOOK; THAT SORT OF

21  THING, YOU KNOW.  THAT KIND OF FACTUAL ISSUE IS -- OR

22  THAT KIND OF FACTUAL QUESTIONING IS FINE, AS FAR AS

23  WE'RE CONCERNED, BUT I'M CONCERNED THAT, IF WHAT YOU'RE

24  EXPECTING THROUGH A 30(B)(6) WITNESS IS SOMEONE TO COME

25  IN AND SAY, "OKAY.  IT'S OUR CONTENTION THAT MR. BRYANT

165

VOLUME II

Exhibit _2_, Page _29_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    OWED DUTIES 'A,' 'B,' 'C,' 'D,' AND 'E' TO MATTEL." I

2    MEAN SOME OF THOSE ARE CLEARLY JUST PURELY LEGAL

3    MATTERS.  SOME OF THEM ARE ALSO -- I MEAN IT'S IN THE

4    NATURE OF ASKING FOR -- YOU KNOW, FOR -- IT'S IN EFFECT,

5    REALLY, A CONTENTION INTERROGATORY IN ASKING THEM, "GEE,

6    YOU KNOW, HERE'S -- TELL US EVERYTHING THAT MATTEL IS

7    CONTENDING IN THIS LAWSUIT."  I DON'T THINK THAT'S -- I

8    DON'T THINK A 30(B)(6) IS THE APPROPRIATE VEHICLE FOR

9    THAT.

10           NOW, AGAIN, IF WHAT WE CAN REACH RESOLUTION ON

11   IS AN ISSUE LIKE, FOR EXAMPLE, "WELL, TELL US HOW

12   CERTAIN THINGS WERE COMMUNICATED TO MR. BRYANT, IF THEY

13   WERE COMMUNICATED TO HIM," THAT'S FINE.  BUT, I MEAN, I

14   THINK THE PLACE WHERE WE APPEAR TO NEED TO HAVE SOME

15   SORT OF DISCUSSION AND TRY AND REACH RESOLUTION REALLY

16   DEALS WITH THAT ISSUE IN TERMS OF YOUR EXPECTATION THAT

17   A 30(B)(6) WITNESS IS GOING TO COME IN AND SAY, "OUR

18   CONTENTIONS IN THIS CASE ARE 'A,' 'B,' 'C,' AND 'D.'"

19           MR. JACOBY:  WELL, AND I THINK WE CAN PUSH

20   PAST THAT IN THE SCOPE OF THE DEPO, AGAIN, AT SOME

21   LEVEL.

22           BECAUSE YOUR COMPLAINT AND THE DISCOVERY

23   YOU'VE PRODUCED SO FAR DOESN'T IDENTIFY WITH

24   PARTICULARITY WHAT DUTIES MATTEL BELIEVES IS BREACHED,

25   IT'S HARD FOR US TO NOT ASK, "WHAT DUTIES DO YOU THINK

166

VOLUME II

Exhibit 2, Page 30

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    HAVE BEEN BREACHED?"

2          NOW, IF YOU'RE SAYING THE ONLY WAY WE CAN GET

3    AT THIS IS TO KIND OF GUESS AS TO WHAT YOUR FACTUAL

4    CONTENTIONS ARE AND LET THE WITNESS SAY "YES" OR "NO,"

5    YOU KNOW, AT THIS POINT I WOULD BE WILLING TO START

6    THERE BECAUSE I CAN THINK OF 10,000 POTENTIAL BREACHES

7    OF FIDUCIARY DUTY.

8          "DO YOU ALLEGE THAT MR. BRYANT EVER HANDED

9    OVER BOARD OF DIRECTOR MINUTES TO ANYBODY OUTSIDE THE

10   COMPANY?"

11         "YES."  "NO."

12         "DO YOU ALLEGE THAT MR. BRYANT -- DOES MATTEL

13   CONTEND THAT MR. BRYANT EVER SHARED TRADE SECRETS WITH

14   ANYONE OUTSIDE OF MATTEL?"

15         "YES."  "NO."

16         "DO YOU ALLEGE THAT MR. BRYANT EVER GAVE ANY

17   DRAWINGS THAT WERE OWNED BY MATTEL TO ANYONE OUTSIDE OF

18   MATTEL?"

19         "YES."  "NO."  AND I CAN JUST GO ON AND ON AND

20   ON IMAGINING UP POTENTIAL BREACHES OF FIDUCIARY DUTY OR

21   BREACHES OF CONTRACT, AND YOUR WITNESSES CAN ANSWER

22   "YES" OR "NO."

23         BUT I DO THINK AT THIS STAGE OF THE GAME, IF

24   YOU ALLEGED IN YOUR COMPLAINT MR. BRYANT BREACHED HIS

25   CONTRACT, I'M ALLOWED TO ASK A 30(B)(6) WITNESS, "WHAT

                                                    167

Exhibit _2_, Page _31_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    PROVISIONS OF THE CONTRACT DOES MATTEL BELIEVE WERE

2    BREACHED, AND WHAT'S YOUR BASIS -- WHAT IS THE FACTUAL

3    BASIS FOR THAT BELIEF?"

4           "WELL, WE ALLEGE THAT HE BREACHED SUBSECTION 4

5    OF THE INVENTIONS AND ASSIGNMENT AGREEMENT."

6           "WHY DO YOU BELIEVE THAT?"

7           "WELL, BECAUSE HE WAS USING OUR FAX MACHINE

8    AND HE SHOULDN'T HAVE BEEN USING IT TO WORK WITH M.G.A."

9    I MEAN THAT'S HOW YOU DO THIS.   I CAN'T GET INSIDE

10   MATTEL'S HEAD AND GUESS WHAT THEY THINK BRYANT DID

11   WRONG.   SOMEBODY HAS TO TELL ME, "THIS IS WHAT WE THINK

12   BRYANT DID WRONG."

13          MR. WICKHAM:   AND WHAT WE DID DO IS TO SERVE

14   CONTENTION INTERROGATORIES.   WE DID ASK IN INTERROGATORY

15   NO. 3 FOR MATTEL TO STATE ALL FACTS EVIDENCING ITS

16   CONTENTION THAT BRYANT IS IN A FIDUCIARY RELATIONSHIP

17   WITH MATTEL.   MATTEL RESPONDED WITH ITS VERIFIED

18   INTERROGATORY RESPONSES, AND WE SEEK TO DEPOSE A

19   30(B)(6) WITNESS WITH REGARD TO THE FACTS THAT ARE LAID

20   OUT IN MATTEL'S INTERROGATORY RESPONSES WHICH GO TO WHAT

21   DUTIES THAT MATTEL BELIEVES THAT BRYANT OWED TO THEM.

22          SO I THINK THAT, AGAIN, THERE IS SOME CHANCE

23   THAT WE CAN RESOLVE THIS, IF WE CAN AGREE THAT, AS TO

24   THE FACTUAL BASIS FOR THE PARTICULAR TOPICS THAT WE'RE

25   TALKING ABOUT, THAT SHOULD BE FAIR GAME.   AND, AS TO ANY

VOLUME II

Exhibit _2_, Page _32_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    OTHER MATTERS, I MEAN, I DON'T WANT TO -- YOU WANT TO

2    RESERVE YOUR OBJECTIONS, BUT I DON'T WANT TO

3    CHARACTERIZE THAT.  BUT THIS IS A DISCOVERABLE TOPIC.

4         MR. JACOBY:  I MEAN I AGREE THAT I ANTICIPATE

5    FULLY THAT THERE WILL BE DISAGREEMENTS ABOUT ANY GIVEN

6    QUESTION ABOUT WHETHER IT CALLS FOR A PURE LEGAL

7    CONCLUSION OR WHETHER IT CALLS FOR THE ACTUAL

8    UNDERPINNING OF A LEGAL CONTENTION.  THERE'S NO WAY I

9    COULD GUARANTEE, NOR COULD YOU, THAT I WON'T COME UP

10   WITH SOME QUESTION THAT YOU WOULD OBJECT TO ON THAT

11   BASIS, NOR COULD I GUARANTEE OR ALICIA GUARANTEE THAT

12   MATTEL WON'T COME UP WITH SOME OBJECTION OR THAT THEY

13   WON'T COME UP WITH SOME OBJECTION WHEN MATTEL ASKS THE

14   SAME KIND OF QUESTIONS TO BRYANT OR M.G.A.  BUT I THINK

15   THAT THERE'S AGREEMENT HERE THAT, IN TERMS OF FACTUAL

16   UNDERPINNINGS, THAT IS FAIR GAME FOR DISCOVERY.

17        WHAT I WOULD PROPOSE IS THAT WE AGREE, WITH

18   RESPECT TO NO. 2, THAT YOU WILL PRODUCE A WITNESS ON THE

19   FACTUAL UNDERPINNINGS OF THE DUTIES THAT BRYANT OWED TO

20   MATTEL DURING HIS EMPLOYMENT AND THAT WE WILL MEET AND

21   CONFER AFTER THAT SECTION OF THE DEPOSITION CONCLUDES ON

22   ANY AREAS WHERE YOU BELIEVE WE WERE ASKING FOR SOMETHING

23   MORE THAN THAT BECAUSE I AGREE WITH YOU IN PRINCIPLE

24   THAT WE'RE ENTITLED TO FACTS, NOT LEGAL CONCLUSIONS.

25        MR. ZELLER:  RIGHT.  AND JUST SO IT'S CLEAR,

169

VOLUME II

Exhibit 2, Page 33

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   THOUGH, WE APPEAR TO HAVE A FAIR AMOUNT OF COMMON GROUND

2   HERE, BUT THE ONE THING I JUST WANT TO MAKE VERY CLEAR

3   IS THAT WHEN -- IF YOU'RE GOING TO BE ASKING WITNESSES

4   LIKE, "DOES MATTEL ALLEGE," "DOES MATTEL CONTEND," THOSE

5   SORT OF QUESTIONS I DON'T THINK ARE APPROPRIATELY

6   DIRECTED TO A 30(B)(6) WITNESS.  I THINK THAT THERE IS

7   PRETTY DECENT AUTHORITY FOR THE PROPOSITION THAT ASKING

8   OR -- ASKING FOR THE DESIGNATION OF A CORPORATE

9   REPRESENTATIVE TO SAY, "WELL, OUR ALLEGATIONS IN THE

10  CASE OR OUR CONTENTIONS IN THE CASE ARE 'X,' 'Y,' AND

11  'Z,'" ISN'T A PROPER STARTING POINT FOR WITNESS

12  TESTIMONY.  AND THAT'S WHERE I THINK WE HAVE, YOU KNOW,

13  AT LEAST ONE -- PROBABLY THE ONLY THING IT APPEARS THAT

14  WE REALLY NEED TO SORT OUT ON THAT, OR, "DOES MATTEL

15  ALLEGE"; THOSE KIND OF QUESTIONS THAT YOU WERE GIVING

16  EXAMPLES OF.

17         MR. WICKHAM:  WELL, I THINK THAT THOSE ARE

18  THINGS THAT ARE THE SUBJECT OF THE INTERROGATORIES THAT

19  WE HAD SERVED AND THAT WE'VE GOT SOME ISSUES WITH THAT.

20  IN PRINCIPLE, I AGREE WITH YOU.

21         ON THE OTHER HAND, A CORPORATION, LIKE AN

22  INDIVIDUAL, HAS TO HAVE A GOOD-FAITH BASIS GROUNDED IN

23  FACTS AND LAW FOR ASSERTING ITS COMPLAINT.  A

24  CORPORATION IS SUBJECT TO NUMEROUS OBLIGATIONS.

25         MR. ZELLER:  ALL I'M ACTUALLY SAYING IS THAT

170

VOLUME II

Exhibit 2, Page 34

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    30(B)(6) ISN'T THE APPROPRIATE VEHICLE FOR THAT.  MAYBE

2    ONE WAY BECAUSE, LIKE I SAY, I THINK THIS IS TO A NUMBER

3    OF TOPICS, AND SO IT'S PROBABLY WORTH TRYING TO HASH

4    THIS OUT.  MAYBE -- YOU LOOK PUZZLED, KEITH.

5              MR. JACOBY:  GO AHEAD.

6              MR. ZELLER:  OKAY.  WELL, IT'S JUST BECAUSE OF

7    THE WAY THAT A LOT OF THESE THINGS ARE FRAMED.  AND

8    WHAT, YOU KNOW, IT APPEARS THAT YOU'RE LOOKING FOR IS A

9    30(B)(6), AND THERE -- I THINK THERE IS AN ISSUE THERE.

10   I MEAN ONE WAY THAT WE CAN TRY AND DEAL WITH IT IS THAT,

11   IF WHAT YOU'RE LOOKING FOR ARE THE SCOPE OF THINGS LIKE

12   MATTEL'S CONTENTIONS, I MEAN, WE CAN DEAL WITH THOSE IN

13   ADVANCE NOT THROUGH THE 30(B)(6) WITNESS, BUT, YOU KNOW,

14   WE CAN COME UP WITH A MECHANISM FOR LAYING THOSE THINGS

15   OUT.  MAYBE IT'S THAT WE AMEND OUR INTERROGATORY ANSWERS

16   AND GIVE YOU MORE, YOU KNOW.  MAYBE IT'S SOME OTHER

17   VEHICLE.

18             BUT I'M JUST CONCERNED THAT WE NOT HAVE THE

19   SITUATION WHERE THESE 30(B)(6) DEPOSITIONS ARE GOING TO

20   IMMEDIATELY BREAK DOWN BECAUSE YOU'RE EXPECTING THAT THE

21   WITNESS IS GOING TO WALK IN AND SAY, "OKAY.  MATTEL

22   CONTENDS THAT, YOU KNOW, BRYANT VIOLATED HIS DUTIES

23   BECAUSE OF 'A,' 'B,' 'C,' OR 'D,'" OR, "HERE ARE WHAT

24   MATTEL'S OBLIGATIONS ARE."

25             MR. JACOBY:  THAT'S NOT WHAT I ANTICIPATE, BUT

                                                    171

VOLUME II

Exhibit 2, Page 35

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    I AGREE AT SOME POINT IN SOME MANNER MATTEL DOES HAVE TO

2    SPELL OUT ITS CONTENTIONS.   I AGREE THAT, IF WHAT YOU

3    WOULD LIKE TO DO TO AVOID THAT PROBLEM AND PUSH THROUGH

4    THAT ISSUE IS REVISIT YOUR INTERROGATORY RESPONSES, NOW

5    THAT YOU HAVE HAD BRYANT'S DEPOSITION AND ABOUT FOUR

6    OTHER DEPOSITIONS AND YOU'VE GOTTEN DOCUMENTS FROM

7    M.G.A. AND YOU'RE MORE INFORMED THAN YOU MAY HAVE BEEN

8    WHEN YOU WERE FIRST ANSWERED THEM -- MAYBE YOU'VE DONE

9    MORE INTERNAL INVESTIGATION -- THEN I THINK THAT'S FINE;

10   THAT WE CAN AGREE ON A DATE THAT YOU AMEND YOUR

11   INTERROGATORY RESPONSES, AND THEN THAT WILL BE PART OF

12   THE FRAMEWORK FOR THESE 30(B)(6) DEPOSITIONS.

13          MR. WICKHAM:   RIGHT.   BUT ONE THING, JUST

14   BY -- FOR CLARITY, IS THAT JUST BECAUSE A PARTICULAR

15   ALLEGATION IS A CONTENTION IN THIS COMPLAINT DOESN'T

16   MEAN THAT IT MAY NOT BE A PROPER 30(B)(6) TOPIC.

17          I MEAN MATTEL DOES CONTEND THAT BRYANT

18   CONVERTED ITS PROPERTY.   WE WANT TO ASK THE 30(B)(6)

19   WITNESS, "TELL US ALL PROPERTY -- ALL MATTEL PROPERTY

20   THAT YOU -- THAT MATTEL BELIEVES BRYANT STOLE,

21   CONVERTED, USED."   I MEAN WE'LL TRY TO AVOID USING

22   LEGALLY CHARGED TERMINOLOGY IN ASKING THE QUESTION, BUT,

23   BASICALLY, WE WANT TO GET TO THE BOTTOM OF WHAT IT IS

24   THAT MATTEL THINKS THAT BRYANT DID.   THAT IS A FACTUAL

25   QUESTION DIRECTED TO THE WITNESS.   IT SO HAPPENS TO BE

VOLUME II

Exhibit _2_, Page _36_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   ONE OF MATTEL'S CONTENTIONS, BUT IT DOESN'T MEAN THAT

2   IT'S NOT OTHERWISE FAIR GAME, YOU KNOW, FOR A 30(B)(6)

3   DEPOSITION.

4          MR. JACOBY:  I MEAN IT'S -- I THINK YOU CAN

5   PROBABLY FRAME THAT TYPE OF A QUESTION IN AN IMPROPER

6   WAY AND IN A PROPER WAY.  I THINK, IF BRYANT WERE TO

7   POSE, "PLEASE STATE THE BASIS FOR MATTEL'S CONTENTION

8   THAT BRYANT CONVERTED ANYTHING," IT WOULD PROBABLY NOT

9   BE A PROPER QUESTION.

10          BUT, IF I ASKED, "ARE YOU AWARE THAT BRYANT

11   GAVE ANYTHING THAT MATTEL OWNED TO SOMEBODY ELSE OUTSIDE

12   MATTEL?" I THINK THAT IS A PROPER QUESTION AND CALLS FOR

13   A FACT.  IT CALLS FOR WHAT THIS MATTEL WITNESS KNOWS

14   ABOUT WHAT BRYANT TOOK FROM MATTEL AND HANDED TO

15   SOMEBODY ELSE.  AND WHETHER THAT CONSTITUTES CONVERSION

16   IS A MATTER OF LAW; IS SOMETHING A JUDGE WILL DECIDE OR

17   A JURY WILL DECIDE LATER.

18          MR. WICKHAM:  I MEAN WE'LL GET REALLY SIMPLE.

19          DOES MATTEL BELIEVE THAT MR. BRYANT STOLE

20   SOMETHING FROM MATTEL?  YOU KNOW, DOES MATTEL BELIEVE

21   THAT, YOU KNOW, MR. BRYANT, YOU KNOW, GAVE SOMETHING OF

22   MATTEL'S TO SOMEONE THAT HE WASN'T ALLOWED TO GIVE IT

23   TO?

24          I MEAN WE CAN HAVE IT AS SIMPLE AND

25   STRAIGHTFORWARD.  BUT, AGAIN, ALTHOUGH THOSE MAY BE

173

Exhibit 2, Page 37

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   CONTENTIONS IN MATTEL'S COMPLAINT, IT DOESN'T MEAN THAT

2   THEY'RE NOT PROPER FACTUAL INQUIRIES OF A 30(B)(6)

3   DEPOSITION WITNESS.

4           MR. ZELLER:  WELL, I MEAN, WITHOUT COMMENTING

5   ON THE PARTICULAR EXAMPLES THAT YOU'RE GIVING OF THE

6   TYPES OF QUESTIONS, MY PARTICULAR CONCERN JUST GOES TO,

7   YOU KNOW, AT THIS JUNCTURE, IN TRYING TO COME UP WITH A

8   FRAMEWORK FOR DEALING WITH THESE VARIOUS ISSUES -- IS

9   THAT, YOU KNOW, WE REACH RESOLUTION -- AND I BELIEVE

10  THAT WE HAVE -- THAT IT'S NOT YOUR EXPECTATION THAT

11  WITNESSES ARE GOING TO BE PRODUCED THAT ARE GOING TO SAY

12  IN RESPONSE TO QUESTIONS, "DOES MATTEL ALLEGE 'X'?  DOES

13  MATTEL ALLEGE 'Y'?" AND THAT THESE WITNESSES --

14          MR. JACOBY:  THAT'S NOT MY ENVISIONING OF HOW

15  WE'RE DOING TO DO THIS.  I THINK THE WAY I ENVISION THAT

16  WE'RE GOING TO DO THIS IS THAT WE'RE GOING TO ASK IN

17  INTERROGATORIES, "WHAT DO YOU CONTEND BRYANT CONVERTED?"

18          AND SO LET'S SAY THE ANSWER TO THE QUESTION

19  WAS, "THE MASTER BRATZ DRAWINGS."

20          AND THEN WE GO TO THE 30(B)(6) DEPOSITION AND

21  SAY, "WHY DO YOU BELIEVE MR. BRYANT CONVERTED THE MASTER

22  BRATZ DRAWINGS?"

23          "WELL, MATTEL BELIEVES THAT BECAUSE MATTEL

24  BELIEVES THAT THEY WERE DRAWN WHILE HE WORKED AT

25  MATTEL."

Exhibit 2, Page 38

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1        "WHY DO YOU BELIEVE THAT?"

2        "WELL, BECAUSE WE SAW SOMEONE DRAWING THEM

3    WHILE HE WAS AT MATTEL."  I MEAN THAT'S PROPER QUESTIONS

4    AND ANSWERS IN A 30(B)(6) DEPOSITION.  IT'S NOT TRUE,

5    BUT THAT WOULD BE PROPER.  THE CONTENTION, APPLYING

6    FACTS TO LAW, MATTEL IS OBLIGATED TO DO IN INTERROGATORY

7    RESPONSES WITH THE ASSISTANCE OF COUNSEL.  ASCERTAINING

8    THE FACTUAL BASIS THAT UNDERPINS THAT CONTENTION, WHAT

9    HE CONVERTED, IN MY VIEW, THAT'S THE PROPER BASIS OF A

10   30(B)(6) DEPOSITION.

11        NOW, THEORETICALLY YOU COULD GIVE THOSE SAME

12   FACTS IN AN INTERROGATORY RESPONSE.  "WE BELIEVE BRYANT

13   CONVERTED THE MASTER BRATZ DRAWINGS BECAUSE WE SAW HIM

14   DOING THEM ON SEPTEMBER 20TH, 2000."  THAT COULD BE PART

15   OF AN INTERROGATORY RESPONSE.  BUT THE PURPOSE OF A

16   30(B)(6) DEPOSITION IS TO EXPLORE THOSE FACTS.

17        WHO SAW HIM DRAWING IT?  WHERE DID YOU SEE IT?

18   WHEN DID THAT HAPPEN?  WHO DID YOU TELL?

19        I MEAN THAT'S -- THOSE ARE ALL FACTS.  THEY

20   DON'T CALL FOR LEGAL CONCLUSIONS, AND I THINK THAT'S

21   WITHIN THE SCOPE OF AT LEAST, YOU KNOW, FIVE OR TEN OF

22   THESE CATEGORIES.

23        SO CAN WE AGREE, THEN, THAT THE FRAMEWORK FOR

24   THESE RESPONSES TO -- AND WE CAN SEE IF WE CAN APPLY

25   THIS TO OTHERS -- IS THAT MATTEL WILL REVISIT ITS

175

Exhibit 2, Page 39

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   INTERROGATORY RESPONSES AND LAY OUT ANY FURTHER

2   FACTUAL -- ANY FURTHER CONTENTIONS THAT IT BELIEVES IT

3   NEEDS TO DO TO PROPERLY FRAME IN ITS MIND THE SCOPE OF

4   THESE 30(B)(6) CATEGORIES, AND THEN AT THE DEPOSITION

5   YOU WILL HAVE THE RIGHT TO OBJECT AND INSTRUCT ON THE

6   GROUNDS THAT WE CROSSED THE LINE INTO A LEGAL

7   CONCLUSION, BUT WE WOULD HAVE THE RIGHT TO EXPLORE THE

8   FACTUAL UNDERPINNINGS OF THE CONTENTIONS THAT ARE

9   IDENTIFIED EITHER IN THE COMPLAINT OR IN THE

10  INTERROGATORY RESPONSES OR ARE SUGGESTED BY DOCUMENTS OR

11  OTHER INFORMATION THAT'S BEEN PRODUCED OR THAT WE'VE

12  LEARNED THROUGH OTHER SOURCES?

13          MR. ZELLER:  YEAH.  I THINK THAT THAT'S SORT

14  OF THE FRAMEWORK I WAS PROPOSING, AND I THINK THAT

15  THAT'S --

16          MR. JACOBY:  OKAY.

17          MR. ZELLER:  I THINK THAT GETS US A FAIR

18  DISTANCE.

19          MR. JACOBY:  OKAY.

20          MR. ZELLER:  ONE THING, JUST SO IT'S CLEAR,

21  YOU'RE RAISING, TOO, IN TERMS OF, YOU KNOW, SOME OF

22  THESE, SOME OF THESE, YOU KNOW, WILL HAVE TO BE ANOTHER

23  SET OF ISSUES WE'RE GOING TO HAVE TO ADDRESS KIND OF

24  GENERALLY SPEAKING WITH RESPECT TO PRODUCING A 30(B)(6)

25  WITNESS TO, YOU KNOW, TALK ABOUT CERTAIN THINGS THAT

176

VOLUME II           Exhibit 2, Page 40

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    CARTER BRYANT DID THAT WEREN'T NECESSARILY AT MATTEL'S

2    DESIGN CENTER OR, YOU KNOW, THE LIKE.

3            I MEAN THAT'S SORT OF A SEPARATE ISSUE

4    BECAUSE, OBVIOUSLY, THERE'S INFORMATION THROUGH

5    DISCOVERY AND THAT SORT OF THING IN THE LAWSUIT.  YOU

6    KNOW, WE CAN TALK ABOUT WHAT THE PARAMETERS OF THOSE

7    SORT OF THINGS WOULD BE WITH RESPECT TO OUR HAVING TO

8    EDUCATE A WITNESS TO DISCUSS THOSE SORT OF THINGS.  BUT,

9    I MEAN, I THINK GENERALLY SPEAKING WE'RE SORT OF -- I

10   THINK WE HAVE AN AGREEABLE FRAMEWORK FOR TRYING TO DEAL

11   WITH THESE THINGS.

12           MR. WICKHAM:  AND IT'S PERFECTLY APPROPRIATE

13   FOR A WITNESS TO SAY, "I DON'T KNOW WHAT HE DID AT

14   M.G.A., BUT IT SURE LOOKS BAD TO US," OR SOMETHING LIKE

15   THAT.  SO, I MEAN --

16           MR. ZELLER:  ALSO, I MEAN, PART OF THE PROBLEM

17   IS, TOO, IN TERMS OF WHAT DO WE -- WHAT ARE THE

18   PARTIES' EX -- YOU KNOW, WHAT ARE YOUR EXPECTATIONS, AND

19   WHAT CAN WE DO IN TRYING TO RESOLVE SOME OF THESE

20   ISSUES?

21           AND PARTICULARLY THE SCOPE OF SOME OF THE

22   TOPICS THAT ARE SET FORTH IN THE 30(B)(6) NOTICE IS THAT

23   OBVIOUSLY THERE ARE RESTRICTIONS ON WHAT IT IS THAT WE

24   CAN SHARE WITH, YOU KNOW, THE CORPORATE REPRESENTATIVES,

25   YOU KNOW, THE INFORMATION THAT'S IN THE CASE.  SO --

177

Exhibit _2_, Page _41_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1         MR. JACOBY:  I UNDERSTAND THAT.

2         MR. ZELLER:  -- THAT'S SOMETHING WE'RE GOING

3    TO HAVE TO DEAL WITH IN TERMS OF THE PARAMETERS OF SOME

4    OF THESE TOPICS.

5         MR. JACOBY:  I UNDERSTAND.  THAT'S PROBABLY

6    TRUE OF EVERY TOPIC.  BUT, AGAIN, WE'RE JUST TRYING TO

7    FIND OUT WHAT YOU'RE GOING TO TELL THE JURY ONE DAY.  AT

8    LEAST ON THE FACE OF IT, YOU KNOW, I'D BE INTERESTED IN

9    KNOWING WHAT YOU AND MICHAEL MOORE BELIEVE ON THIS

10   STUFF.  I DON'T HAVE ANY EXPECTATION THAT THAT'S WHAT

11   WE'RE GOING TO GET HERE.

12        SO I THINK WHY DON'T WE TRY TO SEE HOW MANY OF

13   THESE OTHER CATEGORIES IN GROUP 3 WE COULD APPLY THE

14   CAVEAT I BELIEVE WE'VE JUST AGREED TO THAT, 1, MATTEL

15   WILL GO BACK AND REVISIT ITS RESPONSES TO THE CONTENTION

16   INTERROGATORIES THAT HAVE BEEN PROPOUNDED AND AMEND THEM

17   BEFORE THE 30(B)(6) DEPOSITION;

18        2, THAT YOU WILL TRY AND WE'LL TRY TO IDENTIFY

19   A WITNESS TO TESTIFY TO THE FACTUAL UNDERPINNINGS OF

20   THOSE CONTENTIONS;

21        3, THAT MATTEL WILL RESERVE THE RIGHT TO

22   PRODUCE ONE OR MORE WITNESSES ON A SINGLE CATEGORY, IF

23   THE SCOPE OF THE REQUEST IS BROAD ENOUGH THAT IT WOULD

24   REQUIRE IT;

25        4, THAT MATTEL RESERVES ITS RIGHT TO OBJECT ON

                                                      178

VOLUME II

Exhibit _2_, Page 42

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    THE GROUNDS THAT THE QUESTIONS -- THE QUESTION IS AN

2    IMPROPER CONTENTION INTERROGATORY -- IS AN IMPROPER

3    SUBJECT OF A 30(B)(6) DEPOSITION BECAUSE IT'S MORE

4    APPROPRIATE AS A CONTENTION INTERROGATORY OR IT'S

5    OUTSIDE THE SCOPE OF THE LAWSUIT, OBJECTIONS WHICH I

6    BELIEVE EVERY PARTY HAS MADE BEFORE AND CERTAINLY WE CAN

7    RESERVE HERE AND WOULD BE THE SUBJECT OF A LATER MEET

8    AND CONFER.

9              MR. WICKHAM:  WITH ALL THOSE THINGS IN MIND,

10   COULD YOU LOOK AT 2 THROUGH 8 AND SEE WHETHER OR NOT WE

11   COULD APPLY WHAT WE JUST DISCUSSED TO THESE PARTICULAR

12   CATEGORIES?

13             MR. JACOBY:  SKIP 5 BECAUSE I THINK 5 IS IN MY

14   LETTER.

15             MR. ZELLER:  YEAH.  WE'LL HAVE TO DEAL WITH 5

16   SEPARATELY.

17             MR. WICKHAM:  WE CAN NARROW THAT.

18             MR. JACOBY:  WHY DON'T WE SEE -- LET'S GO

19   THROUGH THE THIRD CATEGORIES OF STUFF AND SEE HOW MANY

20   OF THOSE WE CAN PUT UNDER OUR BELTS.  THE NEXT ONE I

21   HAVE IS 3.

22             MR. ZELLER:  RIGHT.

23             MR. WICKHAM:  DO WE HAVE AN AGREEMENT IN

24   PRINCIPLE ON 2?

25             MR. ZELLER:  WELL, I THINK, YEAH, WE HAVE AN

                                              179

Exhibit 2, Page 43

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    AGREEMENT IN TERMS OF THE FRAMEWORK THAT WE'LL SET UP TO

2    DEAL WITH THESE THINGS, YOU KNOW, SO THAT THERE'S AN

3    UNDERSTANDING AS TO, YOU KNOW, WHAT THESE PEOPLE ARE

4    GOING TO BE DEPOSED ABOUT.  I MEAN THAT'S -- YOU KNOW,

5    THAT'S PART OF MY CONCERN, TOO, IN TERMS OF, YOU KNOW,

6    THE SCOPE OF THE TOPICS.

7                I MEAN LIKE, FOR EXAMPLE, THIS -- YOU KNOW,

8    BECAUSE I THINK THAT FRAMEWORK WILL ACTUALLY RESOLVE A

9    HUGE NUMBER OF THESE, BY THE WAY, BOTH THOSE THAT WERE,

10   YOU KNOW, AGREED UPON OR AT LEAST IN PRINCIPLE APPEAR TO

11   BE HEADED TOWARDS RESOLUTION.

12               MR. JACOBY:  I'M HAPPY TO HEAR THAT.

13               MR. ZELLER:  AS, YOU KNOW -- SO -- AS WELL AS

14   POTENTIALLY SOME OTHER ONES.  I MEAN THIS GETS US A LONG

15   WAYS ALONG THE WAY.  BUT ONE CONCERN, WHEN WE'RE LOOKING

16   AT SOME OF THE INDIVIDUAL FURTHER TOPICS, IT GOES BACK

17   TO THE POINT I WAS JUST MAKING A MOMENT AGO WHICH IS,

18   FOR EXAMPLE, WHERE IT SAYS ALL OF BRYANT'S ACTS OR

19   OMISSIONS WHICH BREACHED ANY CONTRACTUAL OR

20   NONCONTRACTUAL DUTY OR OBLIGATION BRYANT OWED TO MATTEL,

21   I MEAN, THAT OBVIOUSLY HEADS US RIGHT INTO THE TERRITORY

22   OF, YOU KNOW, MATTERS THAT ARE BASED UPON -- YOU KNOW,

23   IN MATERIAL PART ON DISCOVERY, FOR EXAMPLE, THAT'S BEEN

24   OBTAINED IN THE CASE AND THAT, OBVIOUSLY, WE'RE -- YOU

25   KNOW, AS THINGS PRESENTLY STAND, WE'RE NOT EVEN AT

180

Exhibit 2, Page 44

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          MR. JACOBY:  I MEAN, AM I RIGHT, DOUG?

2          MR. ZELLER:  -- IS THAT CERTAINLY, YOU KNOW,

3    THINGS THAT ARE THE RESULT OF MATTEL'S INVESTIGATION --

4    I AM SETTING ASIDE PRIVILEGE ISSUES FOR THE MOMENT, BUT

5    THE FACTUAL UNDERPINNINGS DEALING WITH WHAT IT IS THAT

6    MATTEL HAS LEARNED THROUGH INVESTIGATION --

7          MR. JACOBY:  RIGHT.

8          MR. ZELLER:  -- OBVIOUSLY, APART FROM THE

9    DISCOVERY THAT'S ALREADY IN THE CASE IN THE SENSE OF

10   WHAT WAS PRODUCED BY BRYANT, BY M.G.A., AND BY THIRD

11   PARTIES, THAT I THINK HELPS, YOU KNOW, SET SOME

12   PARAMETERS ON A LOT OF THESE TOPICS THAT ALSO WILL

13   RESOLVE THIS, IF WE HAVE A COMMON GROUND ON THAT.

14         MR. JACOBY:  WELL, I THINK WE HAVE A COMMON

15   GROUND.  I MEAN AT THE END OF THE DAY WE'RE GOING TO

16   HAVE TO -- I MEAN, TO WHITTLE DOWN, I'M KIND OF LOOKING

17   AT THE TRIAL OF THE CASE.  IN OTHER WORDS, TO KNOW HOW

18   MANY OF THE E-MAILS ARE RELEVANT TO YOUR CLAIMS OR

19   DEFENSES, AT SOME POINT YOU'RE GOING TO HAVE TO

20   COMMUNICATE TO US, "THESE ARE THE ONES THAT WE THINK

21   ESTABLISH THE BREACHES AND DEFENSES."

22         MR. ZELLER:  RIGHT.  BUT SOME OF THOSE ARE THE

23   ONES THAT WERE, YOU KNOW, PRODUCED AND PRESUMABLY WILL

24   BE PRODUCED IN THE FUTURE BY, YOU KNOW, PARTIES, YOU

25   KNOW, BY DEFENDANTS IN THE CASE, OR BY THIRD PARTIES,

190

VOLUME II

Exhibit 2, Page 45

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    NOT BY MATTEL.

2              MR. JACOBY:   RIGHT.

3              MR. ZELLER:   THAT'S WHERE I GUESS I'M DRAWING

4    THE LINE.

5              MR. JACOBY:   WELL, I AGREE THAT AT LEAST

6    INITIALLY THE PURPOSE OF THESE DEPOSITIONS IS TO FIND

7    OUT WHAT MATTEL KNOWS, AND SO I'M REALLY EAGER TO FIND

8    THAT OUT.   I'M EQUALLY INTERESTED TO KNOW WHAT MATTEL

9    BELIEVES FROM WHAT IT'S HEARD AND WHAT IT HAS PRODUCED

10   SUPPORTS ITS CLAIMS, BUT PERHAPS THAT'S NOT -- I DON'T

11   THINK IT'S THE SCOPE OF A 30(B)(6) DEPOSITION FOR MATTEL

12   TO TEACH A WITNESS EVERYTHING THAT IT'S DISCOVERED AND

13   THEN KIND OF RUN THAT THROUGH THE SAUSAGE MACHINE AND

14   SAY, "HERE IS THE BREACH OF DUTY."

15             MR. ZELLER:   RIGHT.

16             MR. WICKHAM:   AND IT'S SIMPLE.   I MEAN WE'RE

17   SEEKING TO CONDUCT DEPOSITIONS TO DETERMINE THE FACTUAL

18   UNDERPINNINGS BASED ON MATTEL'S PERSONAL KNOWLEDGE OF

19   THE VARIOUS THINGS THAT ARE THE SUBJECT OF THE

20   P.M.K. NOTICES.   SO THAT'S THE PRINCIPAL OBJECTIVE HERE.

21             MR. ZELLER:   RIGHT.

22             MR. WICKHAM:   IN ADDITION, HOWEVER, TO THE

23   EXTENT THAT A PARTICULAR CORPORATE DESIGNEE IS GOING TO

24   BE TESTIFYING AT TRIAL, WE ALSO WANT TO BE TAKING A

25   FULL-AND-COMPLETE DEPOSITION CONCERNING THE SCOPE OF

191

VOLUME II

Exhibit 2, Page 46

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    THAT DESIGNER'S INFORMATION, AND, AS A CONSEQUENCE,

2    MATTEL'S INFORMATION ON THE PARTICULAR TOPIC SO THAT WE

3    WON'T BE SURPRISED AT TRIAL.  SO --

4            MR. ZELLER:  YOU SEE, THAT'S -- THE LATTER

5    PART CAUSES SOME ME SOME CONCERN BECAUSE, I MEAN, FIRST

6    OF ALL, IT'S HARD FOR ME TO ENVISION EXACTLY WHAT THAT

7    SCENARIO WOULD BE, AS TO WHY WE WOULD BE HAVING A MATTEL

8    CORPORATE REPRESENTATIVE.  I MEAN PRESUMABLY THOSE SORT

9    OF THINGS, IF THEY'RE GOING TO BE TESTIFIED TO THROUGH A

10   WITNESS, IT IS EITHER GOING TO BE A FACT WITNESS WHO IS,

11   YOU KNOW, EITHER A THIRD PARTY OR SOME STATEMENT THAT

12   WAS MADE IN BRYANT'S DEPOSITION OR SOME OTHER

13   DEPOSITION.

14           MR. JACOBY:  HERE'S AN EXAMPLE OF THAT:

15   SUPPOSE THERE WAS AN E-MAIL FROM BRYANT TO SOMEONE

16   OUTSIDE OF MATTEL WHILE HE WAS WORKING AT MATTEL SAYING,

17   "MATTEL IS WORKING ON THIS GREAT NEW GIZMO.  I THINK YOU

18   GUYS SHOULD MAKE THAT GREAT NEW GIZMO" -- OKAY? -- AND

19   YOU HAD NO IDEA THAT HE DID THAT UNTIL M.G.A. PRODUCED

20   THE E-MAIL --

21           MR. ZELLER:  UNTIL YOU JUST TOLD ME NOW.

22           MR. JACOBY:  -- THERE IS NO SUCH E-MAIL THAT

23   I'M AWARE OF --

24           MR. ZELLER:  I'M JESTING.

25           MR. JACOBY:  -- AND YOU INTEND AT TRIAL TO

192

VOLUME II

Exhibit __2__, Page _47_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    CAN'T ASK.  BUT I DON'T SEE THAT IT'S APPROPRIATE TO BE

2    SAYING, "I WANT THE ATTORNEY TO COME IN AND TELL ME WHAT

3    IT IS THAT HE OR SHE HAD IN MIND AND WHAT THE MENTAL

4    IMPRESSIONS WERE OF THAT ATTORNEY THAT LED TO THE

5    DECISION AS TO THE CONTENT OF THIS."  I'M NO MORE

6    ENTITLED -- YOU'RE NO MORE ENTITLED TO ASK THAT THAN I

7    AM TO HAVE YOU COME IN AND TELL ME ALL THE THINGS THAT

8    WENT INTO YOUR THINKING IN WRITING THE COUNTERCLAIM.

9          MR. WICKHAM:  COULD YOU SHARE WITH ME THE BOAT

10   LOAD OF AUTHORITIES OR JUST A COUPLE?

11         MR. ZELLER:  SURE.  I'LL GET YOU PLENTY OF

12   THEM.

13         MR. WICKHAM:  OKAY.  WHY DON'T WE GO AHEAD AND

14   TABLE THAT.

15         MR. ZELLER:  OKAY, BECAUSE, I MEAN, THE

16   SALIENT POINT ISN'T WHETHER OR NOT IT WAS PUBLICLY FILED

17   BECAUSE THERE ARE LOTS OF THINGS THAT ARE PUBLICLY

18   FILED.  THAT DOESN'T BREACH, YOU KNOW, THE PRIVILEGE AND

19   DOESN'T ALLOW PEOPLE TO GET TO THE UNDERLYING MENTAL

20   IMPRESSIONS OF PEOPLE, YOU KNOW, WITH RESPECT TO THE

21   PUBLIC FILING.  AGAIN, I MEAN, THERE ARE PLENTY OF

22   THINGS THAT I'M WILLING TO, YOU KNOW, SHARE WITH YOU

23   CONCERNING TUNE TEENS.

24         MR. WICKHAM:  WE'VE GOT MORE AGREEMENTS THAN

25   WE HAVE DISAGREEMENTS.  BUT, IF YOU COULD, SEND ME THE

352

VOLUME II

Exhibit 2 , Page 48

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    AUTHORITIES CONCERNING THE PRIVILEGED NATURE OF --

2         MR. ZELLER:  SURE.

3         MR. WICKHAM:  -- WHAT WE'VE JUST BEEN

4    DISCUSSING.

5         MR. ZELLER:  RIGHT.  IT IS GOING TO APPLY NOT

6    ONLY TO THIS BUT, I MEAN, REALLY ANYTHING THAT'S BEEN

7    PUBLICLY FILED, AND, IF YOU HAVE UNDERLYING ATTORNEY

8    MENTAL IMPRESSIONS, IT'S JUST NOT APPROPRIATE.

9         MR. WICKHAM:  OKAY.  41.

10        MR. ZELLER:  AGAIN, I DON'T KNOW WHAT THE

11   RELEVANCE OF THIS IS.  I MEAN YOU GUYS ARE OBVIOUSLY

12   VERY INTERESTED IN THE ARTICLE.  I MEAN I ONLY SAY THAT

13   AS A PREFACE BECAUSE, I MEAN, I GUESS IN PRINCIPLE I'M

14   WILLING TO HAVE SOMEBODY COME AND TESTIFY ABOUT THIS.

15   BUT, AS YOU MUST KNOW, THE ANSWER IS GOING TO BE WE HAVE

16   NO IDEA.  I MEAN THIS IS NOT SOMETHING THAT'S WITHIN

17   MATTEL'S KNOWLEDGE.  I MEAN I'LL HAVE SOMEONE COME IN

18   AND DO IT, BUT WE DON'T HAVE ANY DUTY TO INVESTIGATE WHO

19   THESE PEOPLE ARE, AND MATTEL -- IT'S NOT SOMETHING

20   THAT'S REASONABLY WITHIN MATTEL'S CONTROL, AND IT'S NOT

21   ANYTHING THAT PEOPLE KNOW.  I MEAN I KNOW YOU GUYS THINK

22   OTHERWISE, AND I'LL PRODUCE A WITNESS TO COME IN AND

23   TELL IT.

24        MR. WICKHAM:  ACTUALLY, THERE'S TWO DISTINCT

25   THINGS HERE.

353

VOLUME II

Exhibit 2, Page 49

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          ONE IS THE FACTUAL ASSERTION ABOUT INSIDE

2     MATTEL SOME ARE CONVINCED THAT BRATZ BORROWED LIBERALLY

3     FROM A MATTEL PROJECT THAT WAS SCRAPPED.

4          OKAY?  THE SECOND FACTUAL ASSERTION IS AT THE

5     TESTING STAGE IN 1998.  NOW, IF THIS INDEED IS A

6     REFERENCE TO THE PROJECT THAT LILLY MARTINEZ WAS WORKING

7     ON AND IF THAT PROJECT WASN'T IN EXISTENCE IN 1998 BUT

8     IT WAS IN EXISTENCE IN 1999, THEN EITHER SOMEBODY IN

9     MATTEL GAVE THE WALL STREET JOURNAL REPORTER BUM

10    INFORMATION ABOUT THE DATES OF THINGS OR THE WALL STREET

11    JOURNAL REPORTER, IN FACT, GOT THE DATES WRONG.

12          SO I WANT TO -- CERTAINLY, WITH REGARD TO

13    THE -- WE WILL GET INTO TEEN TUNES TO BE ABLE TO EXPLORE

14    THE CIRCUMSTANCES ABOUT THAT, AND WE'LL GET CLARITY

15    ABOUT WHETHER IT WAS IN '98 OR '99.  BUT, I MEAN, FOR MY

16    PART, I GUESS I'M -- THERE'S A LOT OF DIFFERENT

17    ASSERTIONS IN HERE.  ANY PERSON WHO PASSED BY LILLY

18    MARTINEZ'S CUBICLE WOULD SEE THE PICTURE UP ON THE WALL.

19          MR. ZELLER:  THIS TOPIC ISN'T ASKING ABOUT

20    WHETHER OR NOT IT'S TRUE.  THE QUESTION HERE IS THAT YOU

21    WANT TO KNOW ABOUT THE STATEMENTS THAT WERE MADE.  THE

22    STATEMENTS THAT WERE MADE WERE MADE TO A REPORTER.  YOU

23    KNOW, THESE THINGS THAT YOU'RE QUOTING HERE ARE MADE BY

24    SOME FORMER EMPLOYER WHO APPARENTLY HAD LEFT AT LEAST

25    TWO YEARS BEFORE THE ARTICLE CAME OUT.  WE DON'T KNOW

354

Exhibit _2_, Page _50_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    WHO IT IS.  I'M HAPPY TO PROVIDE A WITNESS TO SAY WE

2    DON'T KNOW WHO IT IS.

3              MR. WICKHAM:  DID THEY EVER INVESTIGATE WHO

4    THE EMPLOYEE WAS?

5              MR. ZELLER:  WHY WOULD YOU?  WHY WOULD MATTEL

6    DO SUCH A THING?

7              MR. WICKHAM:  WHY WOULD MATTEL FIND OUT THAT

8    AN EMPLOYEE MAY BE DISCLOSING CONFIDENTIALITY

9    INFORMATION TO A WALL STREET JOURNAL REPORTER?

10             MR. ZELLER:  YOU THINK THIS IS CONFIDENTIAL

11   INFORMATION.

12             MR. WICKHAM:  I DON'T KNOW.

13             MR. ZELLER:  WELL --

14             MR. WICKHAM:  IF IT WAS --

15             MR. ZELLER:  EVEN IF IT WERE, WHAT POSSIBLE

16   RELEVANCE DOES THAT HAVE TO THIS CASE, I MEAN,

17   SERIOUSLY?

18             YOU SEEM TO BE UNDER THE IMPRESSION THAT

19   MATTEL HAD, "A," AN OBLIGATION TO INVESTIGATE THINGS

20   THAT WERE SAID BY SOME FORMER EMPLOYER TO A WALL STREET

21   JOURNAL ARTICLE OR WALL STREET JOURNAL REPORTER, YOU

22   KNOW.  I MEAN I THINK THIS IS TOTALLY MISDIRECTED.  I'LL

23   PRODUCE SOMEBODY TO TALK ABOUT IT, OBVIOUSLY, YOU KNOW,

24   LIMITING IT TO THE STATEMENTS THAT ARE HERE.  I MEAN

25   THEY'RE NOT GOING TO COME IN AND TALK ABOUT, YOU KNOW,

355

VOLUME II

Exhibit 2, Page 51

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   STATEMENTS ABOUT FLAVAS.  I MEAN THAT JUST DOESN'T HAVE

2   ANYTHING TO DO WITH THE CASE.

3           MR. WICKHAM:  IS FLAVAS IN THERE?

4           MR. ZELLER:  IT SAYS:

5               ALL STATEMENTS OF MATTEL OR

6               EX-MATTEL EMPLOYEES IN THE JULY, 2003,

7               WALL STREET JOURNAL ARTICLE.

8               LITERALLY, THAT WOULD ENCOMPASS THINGS LIKE --

9           MR. WICKHAM:  OKAY.

10          MR. ZELLER:  -- YOU KNOW, QUOTES ABOUT FLAVAS,

11   AND, AS YOU KNOW, THAT'S NOT SOMETHING WE THINK IS

12   RELEVANT.  I MEAN I'M HAPPY TO COME IN AND -- HAVE

13   SOMEBODY COME IN AND SAY, YOU KNOW, "WE DON'T -- THIS IS

14   WHAT'S IN THE ARTICLE, AND YOU KNOW WHAT WE KNOW WHICH

15   IS WHAT'S THERE."

16          MR. WICKHAM:  SO YOU'RE GOING TO ENDEAVOR TO

17   PUT SOMEONE UP ON 41?

18          MR. ZELLER:  I MEAN I'LL -- AS I SAY, I MEAN,

19   I'M TELLING YOU WHAT IT'S GOING TO SAY WHICH IS, YOU

20   KNOW, "WE DON'T KNOW WHO THIS PERSON IS."

21          MR. WICKHAM:  OKAY.

22          MR. ZELLER:  I MEAN OBVIOUSLY I'M NOT GOING TO

23   HAVE SOME PERSON COME IN AND COMMENT ON, YOU KNOW, THE

24   VERACITY OF THE INFORMATION.  YOU CAN ASK OTHER PEOPLE

25   ABOUT THOSE THINGS, AND THOSE ARE BASICALLY ENCOMPASSED

356

VOLUME II

Exhibit 2, Page 52

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    IN YOUR OTHER TOPICS.   IF YOU WANT TO PUT THE WALL

2    STREET JOURNAL ARTICLE IN FRONT OF THEM AND ASK THEM,

3    "GEE, IS IT TRUE THAT YOU KNOW 'X,' 'Y,' AND 'Z'

4    HAPPENED?" SURELY, I'LL OBJECT.   BUT, IF YOU WANT TO

5    FIND OUT THAT INFORMATION, YOU CAN DO THAT FROM THE

6    PEOPLE WHO ARE ALREADY BEING PROVIDED.   BUT, I MEAN, I'M

7    NOT GOING TO HAVE SOMEBODY COME IN AND SAY, YOU KNOW,

8    "GEE, THIS LINE OF THE WALL STREET JOURNAL ARTICLE IS

9    WRONG, AND THIS ONE IS RIGHT," AND THAT SORT OF THING.

10   IF YOU WANT SOMEBODY TO COME IN AND TESTIFY AND SAY, "WE

11   DON'T KNOW WHO IT IS THAT SAID THESE THINGS" --

12          MR. WICKHAM:   WELL, I MEAN, IF MATTEL DOESN'T

13   HAVE A PERSON OR PEOPLE WHO HAVE EXAMINED THE WALL

14   STREET JOURNAL ARTICLE, INVESTIGATED IT, IDENTIFIED

15   CORRECT STATEMENTS, AND DIDN'T IDENTIFY -- OR IDENTIFIED

16   INCORRECT STATEMENTS -- IF MATTEL DOESN'T HAVE SOMEBODY

17   WHO HAS MAINTAINED CONTACT WITH THIS REPORTER AND HAS

18   CONTINUED TO GIVE THIS REPORTER ACCESS INSIDE OF MATTEL

19   ON THESE VARIOUS ISSUES -- IF THERE'S NO ONE AT MATTEL

20   WHO FALLS WITHIN THAT DESCRIPTION, THEN IT MAY BE THAT

21   YOU CAN SAY, "WE DON'T HAVE ANYBODY WHO IS KNOWLEDGEABLE

22   ON THE STATEMENTS TO THE REPORTER, BUT WE WILL PUT

23   SOMEBODY UP WHO WILL SAY, YOU KNOW, WE DON'T KNOW

24   ANYTHING ABOUT THAT."

25          ON THE OTHER HAND, IF MATTEL DOES HAVE SOMEONE

357

VOLUME II

Exhibit _2_, Page _53_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   KNOWLEDGEABLE CONCERNING THE STATEMENTS MADE TO THE

2   REPORTER BECAUSE MATTEL HAS MAINTAINED CONTACT WITH THE

3   REPORTER, THEN, IN FACT, THERE IS A P.M.K. ON THE

4   SUBJECT THAT WE WOULD BE ENTITLED TO DEPOSE.  SO --

5           MR. ZELLER:  WELL, THAT JUST GOES TO THE

6   SUBSTANCE OF WHAT THE PERSON WILL SAY.  BUT I'M JUST

7   TELLING YOU WHEN IT SAYS THAT, YOU KNOW -- IF WE'RE

8   AGREEABLE TO SOMEONE COMING IN AND SAYING, "DO WE KNOW

9   WHO THIS PERSON IS WHERE IT SAYS, YOU KNOW, 'X,' 'Y,'

10  AND 'Z'?"  YOU KNOW, THEY CAN TELL YOU THAT THEY DON'T

11  KNOW.  I MEAN MAYBE YOU WILL FIND OUT THAT SOMEBODY DOES

12  IN THE COURSE OF INVESTIGATING THIS, BUT I STRONGLY

13  DOUBT IT.  I MEAN THESE THINGS -- YOU KNOW, THERE'S

14  A JOURNALISTIC PRIVILEGE.  I MEAN JOURNALISTS DON'T JUST

15  GO AROUND TALKING ABOUT THESE THINGS, AND THERE ARE

16  ANONYMOUS SOURCES THAT ARE ALLERGIC TO DOING IT.

17          MR. WICKHAM:  BUT THE SOURCES AREN'T ENTITLED

18  TO THE JOURNALISTIC PRIVILEGE; ONLY THE JOURNALIST IS.

19          MR. ZELLER:  I UNDERSTAND.  BUT THE ONLY WAY

20  WE'RE GOING TO KNOW WHO THAT PERSON IS, YOU KNOW, WHO

21  THE FORMER EMPLOYEE IS, IS IF THAT PERSON COMES FORWARD

22  AND IDENTIFIES HIMSELF OR HERSELF.

23          MR. WICKHAM:  WELL, NO.  IF MATTEL HAS A

24  PUBLIC RELATIONS ARM OR A PERSON WITHIN THE COMPANY WHO

25  IS RESPONSIBLE FOR THAT OR IF THERE IS A PARTICULAR

358

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1                    REPORTER'S CERTIFICATE

2

3

4            I, JOHN M. TAXTER, C.S.R. NO. 3579,

5    R.P.R., A CERTIFIED SHORTHAND REPORTER IN AND FOR

6    THE STATE OF CALIFORNIA, DO HEREBY CERTIFY:

7            THAT, PRIOR TO BEING EXAMINED, THE WITNESS

8    NAMED IN THE FOREGOING PROCEEDINGS WAS BY ME DULY

9    SWORN TO TESTIFY THE TRUTH, THE WHOLE TRUTH, AND

10   NOTHING BUT THE TRUTH;

11           THAT SAID PROCEEDINGS WERE TAKEN BY ME IN

12   SHORTHAND AT THE TIME AND PLACE HEREIN NAMED AND

13   WERE THEREAFTER TRANSCRIBED INTO TYPEWRITING UNDER

14   MY DIRECTION, SAID TRANSCRIPT BEING A TRUE AND

15   CORRECT TRANSCRIPTION OF MY SHORTHAND NOTES.

16           I FURTHER CERTIFY THAT I HAVE NO INTEREST

17   IN THE OUTCOME OF THIS ACTION.

18

19                         **APRIL 21, 2005**

20

21                         _John M. Taxter_
                           JOHN M. TAXTER
22                         C.S.R. NO. 3579, R.P.R.

23

24

25

413

Exhibit 2, Page 55

# EXHIBIT 3



1  DIANA M. TORRES (S.B. #162284)
   PAULA E. AMBROSINI (S.B. #193126)
2  ALICIA C. MEYER (S.B. #230189)
   O'MELVENY & MYERS LLP
3  400 South Hope Street
   Los Angeles, CA 90071-2899
4  Telephone:  (213) 430-6000
   Facsimile:   (213) 430-6407
5  email:      dtorres@omm.com

6  DALE M. CENDALI (admitted pro hac vice)
   O'MELVENY & MYERS, LLP
7  Times Square Tower
   7 Times Square
8  New York, New York 10036
   Telephone:  (212) 326-2000
9  Facsimile:   (212) 326-2061

10 Attorneys for Defendant-in-Intervention
   MGA Entertainment, Inc.

11

12

13            UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15

16

17 MATTEL, INC.,                    Case No.  CV 04-09059 NM (RNBx)

18            Plaintiff,            **DISCOVERY MATTER**

19      v.                          **STIPULATION AND [PROPOSED]**
                                    **ORDER RE CERTAIN DISCOVERY**
20 CARTER BRYANT and MGA            **ISSUES**
   ENTERTAINMENT, INC.,
21                                  Magistrate Judge:  Hon. Robert N. Block
            Defendant and
22          Defendant-in-           No Hearing Required
            Intervention.
23                                  Discovery Cut Off:    TBD
                                    Pretrial Conference:  TBD
24                                  Trial:                TBD

25                                  Judge:       Hon. Nora M. Manella

26

27 AND RELATED CROSS-CLAIMS

28                                  STIPULATION AND [PROPOSED] ORDER
                                    RE DISCOVERY ISSUES
                                    CV 04-09059 NM (RNBX)

RECEIVED
MAY 6 2005

FILED
CLERK, U.S. DISTRICT COURT
MAY - 4 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Priority      ✓
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

DOCKETED ON CM
MAY - 4 2005
BY         110

198

5:4

Exhibit 3 , Page 56

**CALENDARED**

Exhibit 3, Page 57

WHEREAS certain discovery disputes between Plaintiff Mattel Inc.
("Mattel") and Defendant-in-Intervention MGA Entertainment, Inc. ("MGA") have
arisen; and

WHEREAS Mattel and MGA have reached certain agreements resolving
such disputes;

THEREFORE, Mattel and MGA by and through their attorneys of record
hereby stipulate as follows:

1.   Mattel and MGA shall mutually and simultaneously exchange the
discovery listed below on May 16, 2005 commencing at 10:00 a.m.:

Mattel shall:

a. designate and identify the witness(es) who will testify pursuant to
Federal Rule of Civil Procedure 30(b)(6), as agreed at the March 15, 2005
meeting of counsel, concerning the subjects listed in the 30(b)(6) deposition
notice served by Carter Bryant on or about January 11, 2005 as agreed to by
Bryant and Mattel in the March 15, 2005 meeting of counsel and as reflected
in the transcript of that meeting;

b.   supplement its responses to Carter Bryant's First Set of
Interrogatories and provide the file listing, as discussed and agreed at the
meeting of counsel on March 15, 2005 (*see, e.g.,* Transcript of March 15th
Rule 37-1 conference at 405:6-25 – 406:1-16), provided that the service of
the file listing shall not be deemed a waiver of any privilege or protection;

c.   supplement or correct its June 28, 2004 initial Rule 26
disclosure to (1) identify additional witnesses to the extent required under the
Rule; (2) identify the subjects of the information known by each witness
identified in Mattel's disclosure; and (3) make available for inspection and

1    copying, in good faith, all other documents identified pursuant to Rule 26 to

2    the extent such documents have not yet been produced to MGA and/or

3    Bryant and are not being withheld on grounds of privilege;

4         d.    make available for inspection and copying, in good faith, all

5    documents that Mattel has identified, to date, as being responsive to the

6    document requests served, to date, by Carter Bryant and the document

7    requests served (but excluding MGA's Second Set of Requests for

8    Production of Documents), to date, by MGA, to the extent such documents

9    have not yet been produced to MGA and/or Bryant and are not being

10   withheld from production pursuant to good faith objections, including,

11   without limitation, the originals of the "Toon Teens" documents that Mattel

12   produced as M12564-12618, and all other documents in Mattel's possession

13   related to the "Toon Teens" project and/or Ms. Martinez' role in the project,

14   which were requested, for instance, in MGA's document requests numbers

15   82-111; and

16        e.    supplement its privilege log, in good faith, corresponding to the

17   responsive documents redacted or withheld from production on the grounds

18   of privilege;

19   MGA shall:

20        a.    identify the witness(es) who will testify pursuant to the Federal

21   Rule of Civil Procedure 30(b)(6) deposition notice served by Mattel on

22   February 16, 2005, and propose dates for the deposition of the witness(es) as

23   agreed by counsel and as will be documented no later than Thursday, May 5,

24   2005;

25

26

27

28

Exhibit  3 , Page 59

b.    supplement or correct its January 6, 2005 initial Rule 26 disclosure to (1) identify additional witnesses to the extent required under the Rule; (2) identify the subjects of the information known by each witness identified in MGA's disclosure; (3) make available for inspection and copying, in good faith, all other documents identified pursuant to Rule 26, to the extent such documents have not yet been produced to Mattel by MGA and/or Bryant and are not being withheld on grounds of privilege, including, without limitation, documents relating to the negotiation of MGA's contract with Carter Bryant dated as of September 18, 2000 and documents relating to the design and development of the first generation of "Bratz";

c.    make available for inspection and copying, in good faith, all documents that MGA has identified, to date, as being responsive to the documents requests served by Mattel on March 14, 2005, to the extent such documents have not yet been produced and are not being withheld from production pursuant to good faith objections; and

d.    provide its privilege log, in good faith, corresponding to the responsive documents redacted or withheld from production on the grounds of privilege.

2.    Mattel shall produce Lily Martinez for deposition on May 18, 19 or 20 2005 (which date shall be mutually agreed upon by counsel by Thursday, May 5,

3

STIPULATION AND [PROPOSED] ORDER
RE DISCOVERY ISSUES
CV 04-09059 NM (RNBX)

Exhibit _3_, Page _66_

1   2005) commencing at 9:30 a.m. at the offices of O'Melveny and Myers, LLP, 1999

2   Avenue of the Stars, 7th Floor, Los Angeles, California  90067.

3

4   **SO STIPULATED:**

5       Dated:        May __, 2005        DIANA M. TORRES
                                          PAULA E. AMBROSINI
6                                         ALICIA C. MEYER
                                          O'MELVENY & MYERS LLP
7

8                                         By: _____
                                              Paula E. Ambrosini
9                                         Attorneys for Defendant-in-Intervention
                                          MGA Entertainment, Inc.

10      Dated:        May __, 2005        MICHAEL T. ZELLER
                                          JON D. COREY
11                                        QUINN, EMANUEL, URQUHART,
                                          OLIVER & HEDGES LLP
12

13                                        By: _____
14                                            Jon D. Corey
                                          Attorneys for Plaintiff Mattel, Inc.

15      Dated:        May 3, 2005         DOUGLAS A. WICKHAM
                                          KEITH A. JACOBY
16                                        LITTLER, MENDELSON, P.C.

17

18                                        By: _____
                                              Douglas A. Wickham
19                                        Attorneys for Defendant Carter Bryant

20  **SO ORDERED:**
        Dated:        May __, 2005
21

22                                        _____
                                          Hon. Robert N. Block
23                                        Magistrate Judge for the United States
                                          District Court of the Central District of
24                                        California

25

26

27

28

                                   4      STIPULATION AND [PROPOSED] ORDER
                                          RE DISCOVERY ISSUES
                                          CV 04-09059 NM (RNBX)

1 | 2005) commencing at 9:30 a.m. at the offices of O'Melveny and Myers, LLP, 1999

2 | Avenue of the Stars, 7th Floor, Los Angeles, California  90067.

3 |

4 | **SO STIPULATED:**

5 | Dated:     May 3, 2005        DIANA M. TORRES
                                   PAULA E. AMBROSINI
6 |                              ALICIA C. MEYER
                                   O'MELVENY & MYERS LLP
7 |

8 |                              By: _Paula E. Ca_____
                                       Paula E. Ambrosini
9 |                              Attorneys for Defendant-in-Intervention
                                   MGA Entertainment, Inc.

10 | Dated:     May 2, 2005        MICHAEL T. ZELLER
                                    JON D. COREY
11 |                             QUINN, EMANUEL, URQUHART,
                                    OLIVER & HEDGES LLP
12 |

13 |                             By: _Jon D Corey_____
14 |                                    Jon D. Corey
                                    Attorneys for Plaintiff Mattel, Inc.

15 | Dated:     May __, 2005       DOUGLAS A. WICKHAM
                                    KEITH A. JACOBY
16 |                             LITTLER, MENDELSON, P.C.

17 |

18 |                             By: _____
                                       Douglas A. Wickham
19 |                             Attorneys for Defendant Carter Bryant

20 | **SO ORDERED:**
21 | Dated:     May 4, 2005

22 |                             Hon. Robert N. Block
                                   Magistrate Judge for the United States
23 |                             District Court of the Central District of
                                   California

24 |

25 |

26 |

27 |

28 |

4

STIPULATION AND [PROPOSED] ORDER
RE DISCOVERY ISSUES
CV 04-09059 NM (RNBX)

# EXHIBIT 4

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

FILED
CLERK, U.S. DISTRICT COURT

JAN - 4 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware Corporation, | CASE NO. CV 04-9059 NM (RNBx) |
| Plaintiff, | STIPULATED PROTECTIVE ORDER; AND |
| v. | [PROPOSED] ORDER |
| CARTER BRYANT, an individual; and DOES 1 through 10, inclusive, | [Discovery Matter] |
| Defendants. | |
| CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public, | |
| Counter-Claimant, | |
| v. | |
| MATTEL, INC., a Delaware Corporation, | |
| Counter-Defendant. | |

Exhibit 4 , Page 64

07272/625581.2

## GOOD CAUSE STATEMENT

Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment, Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

In this Action, Mattel has alleged, and defendants dispute, that Bryant worked for and otherwise aided and assisted MGA while defendant was employed by Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

All parties believe that they will or may be required to produce or disclose in this Action, and that nonparties may produce or disclose, information that is trade secret, proprietary, confidential and/or is of a private or personal nature and that, if disclosed in this Action without restriction on its use or further disclosure, may cause disadvantage, harm, damage and loss to the disclosing Party or to the disclosing nonparty.

In addition, the Parties are currently in a competitive relationship in the toy industry, with Mattel and MGA operating as a manufacturers and marketers of dolls, toys and other products and Bryant working at this time as a contractor for a Mattel competitor, MGA, and further anticipate that nonparty competitor information may be produced or disclosed in this Action.

In particular, without prejudice to any Party's right to object to or resist disclosure of such categories of information on relevance or any other grounds, the Parties currently anticipate that categories of such trade secret, proprietary, confidential and/or private documents and other information that may be disclosed in discovery by the Parties and by nonparties will or may include:

(1)     Personnel files and other private or confidential employment, contractor or vendor information;

Exhibit **4** , Page **65**

-2-

PROTECTIVE ORDER

(2)     The specific terms of agreements with, and information received from, third parties that a Party is required to disclose only under conditions of confidentiality;

(3)     Personal or private financial information, and confidential financial data that is not known generally to the trade or to competitors, including financial data relating to specific sales, cost and profit information for specific products and product lines; and

(4)     Business plans and product information that are not known generally to the trade or to competitors, including non-public information relating to product development and design.

WHEREFORE, believing that good cause exists, the Parties HEREBY STIPULATE that, subject to the Court's approval, the following procedures shall be followed in this Action to facilitate the orderly and efficient discovery of relevant information while minimizing the potential for unauthorized disclosure or use of confidential or proprietary information:

## SCOPE OF THIS ORDER

1.     This Protective Order shall apply to trade secret, confidential and proprietary information, documents and things that are produced or disclosed in any form during the course of the Action by any Party or any nonparty:

(a)     through discovery;

(b)     in any pleading, document or other writing; or

(c)     in testimony given at a deposition.

(The foregoing information, documents and things shall be referred to hereinafter collectively as "Litigation Materials.")

Exhibit 4, Page 66

07272/625581.2

-3-

PROTECTIVE ORDER

**CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION**

2.    Any Party or nonparty producing or disclosing Litigation Materials in this Action may designate such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner set forth in paragraph 3 below.   The designation of Litigation Materials as "CONFIDENTIAL" shall be limited to information which the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature.   The designation of information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure.   Information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

**MANNER OF DESIGNATION OF MATERIALS**

3.    A Party or nonparty may designate Litigation Materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the following manner:

(a)    Documents or Things.   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

Exhibit 4 , Page 67

PROTECTIVE ORDER

obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" on the particular document or thing.

(b)     Interrogatory Answers and Responses to Requests for Admissions.  In answering any interrogatory or request for admission, or any part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" answers shall be made on separate pages from any other answers or portions thereof that are not designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

(c)     Deposition Testimony.  Any Party or nonparty giving deposition testimony in this Action may obtain "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by designating, during the course of that testimony, for which "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired, the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," or alternatively by designating the entire testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," subject to a good faith obligation to identify any non-confidential portions of the testimony (and/or any lesser "CONFIDENTIAL" portions in the event that the entire testimony is designated "CONFIDENTIAL -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after receipt of the transcript of the testimony.  The reporter shall separately transcribe and bind the testimony so designated as "CONFIDENTIAL" and "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face of the separate bound transcript containing such testimony with the term "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

Exhibit 4 , Page 68

PROTECTIVE ORDER

A Party or nonparty also may make the above-referenced designation of confidentiality in writing and within fourteen (14) calendar days of the receipt by said Party or nonparty of the transcript of said testimony. In that event, said portion of the transcript will be treated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of this Protective Order, except that it will not be separately bound. If, during the course of deposition testimony, any Party or nonparty reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given.    Unless previously designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," all transcripts of deposition testimony and any related exhibits, and all information adduced in deposition, shall, in their entirety, be treated as "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of the transcript by counsel for the designating Party or nonparty. The Party or nonparty designating the testimony or information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen (14) calendar day period described above, specifically designate information contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously designated as such, by notifying all Parties in writing of the portions of the transcript or exhibit which contains such information. Each Party shall attach a copy of such written statement to the face page of the transcript or exhibit and to each copy in its or his possession, custody or control. Thereafter, these portions of the transcript or exhibits designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

Exhibit _4_ , Page _69_

accordance with the terms of this Protective Order. In addition, the provisions of Paragraph 3(e) for later designating transcripts or exhibits shall apply after the expiration of the fourteen (14) calendar day period described in this Paragraph 3(c).

(d) Typing or stamping the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a collection of Litigation Materials which are bound together shall have the effect of designating such collection in its entirety as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." In the case of disks, tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling, stamping or marking the outside of such disk, tape, CD-ROM, DVD or other medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire contents of such disk, tape, CD-ROM, DVD or other medium or device, and all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," as the case may be.

(e) Except as otherwise provided in Paragraph 3(c) of this Protective Order, the receiving Party shall not reveal any information produced for a period of seven (7) calendar days following receipt. Failure to designate a document, thing or other information as CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this Protective Order shall not preclude any Party or nonparty desiring to so designate the document, thing or information from so designating thereafter; provided that the Party or nonparty proceeds promptly after discovery of any omission of marking, in good faith marks the document, thing or other information and requests, in writing, that each receiving Party so mark and treat the document, thing or other information in accordance with this Protective Order. Thereafter, the document, thing or other information shall

Exhibit 4 , Page 70

PROTECTIVE ORDER

be fully subject to this Protective Order. No Party shall incur liability for any disclosures made prior to notice of such designation, except to the extent that any such disclosures occurred prior to the seven (7) day period described above or prior to such other time periods as are provided by this Protective Order, including without limitation such time periods as are provided in Paragraph 3(c) above.

## RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS

4.     Any Litigation Materials produced or disclosed in this Action, whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such information for purposes of litigation and not for any other purpose, including without limitation for any business or trade purpose. As used herein, the term "litigation" shall mean preparation for, participation in and prosecution and defense of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in connection with any mediation or other alternative dispute resolution procedure that this or any other court may order or that the Parties may agree to.

5.     Subject to Paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be disclosed to any person other than:

(a)     the attorneys for the Parties and their partners, shareholders, associates, document clerks and paralegals who are necessary to assist such attorneys;

(b)     secretaries, stenographers and other office or clerical personnel employed by said attorneys and who are necessary to assist such attorneys;

Exhibit _4_ , Page _71_

07272/625581.2

-8-

PROTECTIVE ORDER

(c)    a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)    the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)    such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)    outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)    professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)    independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)    non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

Exhibit _4_, Page _72_

PROTECTIVE ORDER

6.      Subject to paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be disclosed to any person other than:

(a)      the attorneys for the Parties (but not including in-house counsel for the Parties or any attorney who is an officer, director, shareholder or employee of any Party or its corporate affiliates) and their partners, shareholders, associates, document clerks and paralegals who are assigned to and necessary to assist such attorneys. For the purposes of this subparagraph, "affiliate" shall mean any corporate parent or subsidiary of any Party, or any other entity that is under common control with any Party or corporate parent or subsidiary of any Party, or any of their successors or predecessors in interest;

(b)      secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to litigation;

(c)      the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(d)      such other persons as may be consented to by the Party designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(e)      outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(f)      independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for the purposes of litigation; and

Exhibit _4_, Page _73_

PROTECTIVE ORDER

1          (g)   professional court reporters engaged to transcribe

2    deposition testimony, professional videographers engaged to videotape

3    deposition testimony and translators.

4          7.    None of the following is bound by or obligated under this Order

5 in any respect and specifically are not bound or obligated to treat information

6 designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

7 ONLY" in any particular manner: The Court hearing this Action (including the Court

8 having jurisdiction of any appeal), Court personnel, court reporters working for the

9 Court, translators working for the Court, or any jury impaneled in this Action.

10         8.    Other than those identified in Paragraph 7 above, each person to

11 whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL --

12 ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this

13 Protective Order and agree to be bound by it before disclosure to such persons of any

14 such information. The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall

15 not have access to either "CONFIDENTIAL" or   "CONFIDENTIAL --

16 ATTORNEYS' EYES ONLY" information, as the case may be, until they have

17 certified that they have read this Protective Order and have manifested their assent

18 to be bound thereby by signing a copy of the Assurance of Compliance attached

19 hereto as Exhibit A. Once a person has executed such an Assurance of Compliance,

20 it shall not be necessary for that person to sign a separate Assurance of Compliance

21 each time that person is subsequently given access to confidential material. Any

22 person who signed an Assurance of Compliance in connection with the Stipulation

23 for Protection of Confidential Information and Protective Order filed September 16,

24 2004 in <u>Mattel Inc. v. Bryant</u>, Case No. BC 314398, pending in Los Angeles County

25 Superior Court, need not re-sign the Assurance of Compliance attached hereto but

26 shall, by virtue of his or her prior signature, be deemed to have signed the attached

27 Assurance of Compliance.

28

Exhibit 4, Page 74

07272/625581.2

-11-

9.     The failure of any Party to object to the designation of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be deemed an admission that such information qualifies for such designation.

10.    If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the <u>Local Rules</u>. Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11.    Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12.    The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.

Exhibit _4_ , Page _75_

PROTECTIVE ORDER

13.     If a Party or nonparty through inadvertence produces or provides discovery that it, he or she believes is subject to a claim of attorney-client privilege or work product immunity, the producing Party or nonparty may give written notice to the receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the producing Party or nonparty.  The receiving Party shall promptly return to the producing Party or nonparty the inadvertedly disclosed document and all copies of such document.  Return of the document by the receiving Party shall not constitute an admission or concession, or permit any inference, that the returned document is, in fact, properly subject to a claim of attorney-client privilege or work product immunity, nor shall it foreclose any Party from moving the Court for an Order that such document has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

14.     Nothing contained in this Protective Order shall affect the right of any Party or nonparty to make any objection, claim any privilege, or otherwise contest any request for production of documents, interrogatory, request for admission, or question at a deposition or to seek further relief or protective orders from the Court in accordance with the <u>Federal Rules of Civil Procedure</u> and the <u>Local Rules</u>. Nothing in this Protective Order shall constitute an admission or waiver of any claim or defense by any Party.

## <u>FILING AND USE IN COURT OF DESIGNATED MATERIALS</u>

15.     Except when the filing under seal is otherwise authorized by statute or federal rule, the Parties shall seek the Court's prior approval for the filing under seal of pleadings and other documents containing properly designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information in accordance with the procedures set forth in <u>Local Rule</u> 79-5.1, as such

Exhibit _4_, Page _76_

07272/625581.2                              -13-

PROTECTIVE ORDER

1    Rule may be amended from time to time.  Prior to the time that a Party receiving the

2    "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"

3    information from any other Party files with the Court an application and the other

4    materials required by Local Rule 79-5.1, as such Rule may be amended from time to

5    time, to seal the producing Party's confidential information, the receiving Party shall

6    consult with the producing Party's attorney to determine whether the producing Party

7    will re-designate the previously designated confidential information so as to avoid the

8    need for the request to file such information under the seal.  Upon the default of a

9    Party to seek the Court's approval to file a document containing "CONFIDENTIAL"

10   or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any

11   Party may subsequently seek the approval of the Court to file that document under

12   seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule

13   may be amended from time to time.

14

15                THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS

16

17          16.    If any Party or nonparty receives a subpoena or document request

18   from a third party which purports to require the production of materials in that Party's

19   possession which have previously been designated as "CONFIDENTIAL" or

20   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,

21   the Party or nonparty receiving such subpoena or document request (a) shall object

22   and refuse to produce documents absent a Court Order or the consent of the Party or

23   nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL

24   -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who

25   designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --

26   ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,

27   and (c) shall not oppose any effort by the Party or nonparty which designated the

28   material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

Exhibit _4_, Page _77_

PROTECTIVE ORDER

1 | ONLY" to quash the subpoena or obtain a protective order limiting discovery of such
2 | material.
3
4 | <div align="center">DISCOVERY FROM NONPARTIES</div>
5
6 |     17.    Discovery of nonparties may involve receipt of information,
7 | documents, things or testimony which include or contain "CONFIDENTIAL" or
8 | "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information.  A
9 | nonparty producing such material in this case may designate as "CONFIDENTIAL"
10 | or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it
11 | produces in the same manner provided for in this Protective Order with respect to
12 | material furnished by or on behalf of the Parties.  Any Party may also designate as
13 | "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any
14 | materials or information produced by a nonparty that constitute "CONFIDENTIAL"
15 | or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating
16 | Party under Paragraph 2 of this Protective Order, regardless of whether the producing
17 | nonparty has also so designated.  In addition, a nonparty may also designate as
18 | "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any
19 | materials or information produced by a Party that constitute "CONFIDENTIAL" or
20 | "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such
21 | nonparty under Paragraph 2 of this Protective Order, regardless of whether the
22 | producing Party has also so designated.  In either such an event, the designation
23 | providing for the greater level of protection for the material information shall control,
24 | subject to Paragraph 10 of this Protective Order.  Nonparty materials designated
25 | "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a
26 | nonparty or Party shall be governed by the terms of this Protective Order.
27
28

Exhibit 4 , Page 78

07272/625581.2

-15-

PROTECTIVE ORDER

## CONCLUSION OF LITIGATION

18.     Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession. In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties. Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order. This Protective Order shall continue to be binding after the conclusion of this Action.

## AMENDMENT OF THIS AGREEMENT

19.     The provisions of this Stipulation and Protective Order may be  modified at any time by stipulation of the Parties as approved by Order of the Court. In addition, a Party may at any time apply to the Court for modification of this

**Exhibit 4, Page 79**

07272/625581.2

-16-

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the
2  rules of the Court.

3

4      **IT IS SO STIPULATED.**

5

6  DATED: December 22, 2004        QUINN EMANUEL URQUHART
                                    OLIVER & HEDGES, LLP
7

8                                  By _Jon Corey_
9                                     Jon Corey
                                      Attorneys for Plaintiff
10                                    Mattel, Inc.

11
   DATED: December __, 2004         LITTLER MENDELSON
12

13                                  By_____
                                       Douglas A. Wickham
14                                     Attorneys for Defendant
                                       Carter Bryant
15

16  DATED: December __, 2004        O'MELVENY & MEYERS, LLP

17
                                    By_____
18                                     Diana M. Torres
                                       Attorneys for Interventor-Defendant
19                                     MGA Entertainment, Inc.

20

21      **IT IS SO ORDERED.**

22

23  DATED: ___1/4/05___             ROBERT N. BLOCK
24                                  THE HONORABLE ROBERT N. BLOCK
                                    United States Magistrate Judge
25

26

27

28
                                    Exhibit _4_, Page _80_

07272/625581.2                      -17-
                                              PROTECTIVE ORDER

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the
2  rules of the Court.

3

4       **IT IS SO STIPULATED.**

5

6  DATED: December __, 2004          QUINN EMANUEL URQUHART
7                                    OLIVER & HEDGES, LLP

8                                    By_____
9                                       Jon Corey
                                        Attorneys for Plaintiff
10                                      Mattel, Inc.

11 DATED: December 21, 2004          LITTLER MENDELSON
12
13                                   By_____
14                                      Douglas A. Wickham
                                        Attorneys for Defendant
15                                      Carter Bryant

16 DATED: December __, 2004          O'MELVENY & MEYERS, LLP
17
18                                   By_____
                                        Diana M. Torres
19                                      Attorneys for Intervenor-Defendant
                                        MGA Entertainment, Inc.
20

21       **IT IS SO ORDERED.**
22

23 DATED:_____
24                                   _____
                                     THE HONORABLE ROBERT N. BLOCK
25                                      United States Magistrate Judge
26

27

28

07272/625581.2                          -17-

                                                        **PROTECTIVE ORDER**

Exhibit 4 , Page 81

1    Stipulation and Protective Order pursuant to a motion brought in accordance with the
2    rules of the Court.

3

4    **IT IS SO STIPULATED.**

5

6    DATED: December ___, 2004          QUINN EMANUEL URQUHART
7                                       OLIVER & HEDGES, LLP

8
9                                       By _____
                                          Jon Corey
10                                        Attorneys for Plaintiff
                                          Mattel, Inc.

11
12   DATED: December ___, 2004          LITTLER MENDELSON

13                                      By _____
14                                        Douglas A. Wickham
                                          Attorneys for Defendant
15                                        Carter Bryant

16   DATED: December ___, 2004          O'MELVENY & MEYERS, LLP

17                                      By _____
18                                        Diana M. Torres
                                          Attorneys for Intervenor-Defendant
19                                        MGA Entertainment, Inc.

20

21                                      **IT IS SO ORDERED.**

22

23   DATED: _____

24                                      THE HONORABLE ROBERT N. BLOCK
                                        United States Magistrate Judge
25

26

27

28

07272/625581.2                         -17-

                                                              PROTECTIVE ORDER

Exhibit ___4___, Page _82_

# EXHIBIT A

## ASSURANCE OF COMPLIANCE

      I, _____, under penalty of perjury under the laws of the United States of America, declare and state as follows:

      I reside at _____, in the City/County of _____ and State/Country of _____;

      I have read the annexed Stipulated Protective Order, ("Protective Order") dated _____ in the action entitled *Mattel, Inc. v. Carter Bryant*, Case No. CV 04-9059 NM (RNBx), which currently is pending in the United States District Court for the Central District of California; that I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order;

      I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use any Litigation Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" except solely as permitted by the Protective Order; and

      I consent to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing said Protective Order, enjoining any violation or threatened violation of the Protective Order or seeking damages for the breach of said Protective Order.

_____
(Signature)

Exhibit __4__, Page __83__

PROTECTIVE ORDER

**PROOF OF SERVICE**
1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA**          )
**COUNTY OF LOS ANGELES**        )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 22, 2004, I served the foregoing document described as

**STIPULATED PROTECTIVE ORDER; AND [PROPOSED] ORDER**

on all interested parties in this action:

**SEE ATTACHED SERVICE LIST**

[ ]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on December 22, 2004, at Los Angeles, California.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Ivana Maiorano
Print Name                              Signature

Exhibit __4__, Page __84__

1 | Robert F. Millman, Esq.
Douglas A. Wickham, Esq.
2 | Keith A. Jacoby, Esq.
Littler Mendelson
3 | A Professional Corporation
2049 Century Park East, 5th Floor
4 | Los Angeles, California 90067-3107
Phone: 310-553-0308
5 | Fax: 310-553-5583

6 | Diana M. Torres, Esq.
O'Melveney & Meyers
7 | 400 S. Hope Street
Los Angeles, CA 90071
8 | Phone: 213-430-6000
Fax: 213-430-6407

9 |

10 | Daniel J. Warren, Esq.
Sutherland, Asbill & Brennan
11 | 999 Peachtree Street NE
Atlanta, GA  30309-3996
12 | Phone: 404-853-8698
Fax: 404-853-8806

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

Exhibit _4_ , Page _85_