# EXHIBIT 5

**quinn emanuel** trial lawyers | los angeles

May 16, 2005

**VIA HAND DELIVERY**

Diana Torres, Esq.                          Douglas A. Wickham, Esq.
Paula Ambrosini, Esq.                       Keith A. Jacoby, Esq.
O'Melveny & Myers, LLP                      Littler Mendelson, P.C.
400 South Hope Street                       2049 Century Park East, 5th Floor
Los Angeles, California 90071               Los Angeles, California 90067

Mattel, Inc. v. Bryant

Dear Counsel:

Pursuant to the parties' Stipulation re Certain Discovery Issues that was filed on May 4, 2005, and the parties' agreements with respect to defendant Carter Bryant's Rule 30(b)(6) Notice of Deposition of Mattel, I write to inform you of Mattel's designees who we anticipate will be testifying regarding the topics narrowed by agreement. The dates set forth after each witness' name indicates his or her general availability to be deposed.

**Electronic Information Topics (Topics 27-36, 47, 53)**

Lynn Hartman (available in Phoenix, Arizona)
Fred Kawashima
Julie Marine
Arnold Artavia

These individuals are generally available between June 13, 2005 and July 1, 2005. Mr. Hartman will be made available in Phoenix, Arizona. If Bryant wishes to depose Mr. Hartman at a location other than Arizona, then the parties will have to agree to a date for his deposition which may not be in the range referenced.

**quinn emanuel urquhart oliver & hedges, llp**

Exhibit 5, Page 86

**Bryant's Agreements with Mattel (Topics 1, 49-50)**

> Ramie Quick (July 11, 2005 - August 5, 2005)
> Kim Giordanella (July 11, 2005 - August 5, 2005)
> Lissa Inzer (July 11, 2005 - August 5, 2005)

**The Factual Basis for Bryant's Contractual and Non-Contractual Obligations to Mattel and Bryant's Breach Thereof  (Topics 2-6, 7, 22-23)**

> Sandy Yamamoto (July 11, 2005 - August 5, 2005)
> Ivy Ross (at the same time that she is deposed as a percipient witness) (available in New York, New York)
> Lily Martinez (May 20, 2005)

**Toon Teens (Topics 9, 38-40, 42-45)**

> Lily Martinez (May 20, 2005)

To the extent that Ms. Martinez's testimony may not suffice for the referenced topics, Mattel will consider whether another designee may be appropriate after Ms. Martinez's deposition.

**Mattel's Knowledge of Interviews for the 2003 Wall Street Journal Article (Topic 41)**

> Jules Andres (July 11-27, 2005)

**Bryant's Exit Interview (Topics 54-56)**

> Sandy Yamamoto (July 11, 2005 - August 5, 2005)

Mattel reserves the right to supplement this list and designate additional witnesses to address any of the topics set forth above.  Mattel will address under separate cover Bryant's overstatement in recent correspondence of the parties' agreement regarding the scope of the agreement regarding the withdrawal of and the narrowing of the topics as reflected in the transcript of the March 15, 2005 meeting of counsel.

Exhibit 5, Page 7

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon D. Corey

07209/655388.1

3

# EXHIBIT 6

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

April 11, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Keith Jacoby, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, California 90067

James Jenal, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071-2899

Re:  <u>Mattel, Inc. v. Bryant</u>

Dear Counsel:

Pursuant to the parties' meet and confer before the Discovery Master last week, enclosed please find the Proposed Stipulation re: <u>Rule</u> 30(b)(6) Designations, incorporating Mattel's edits. Please note that Mattel removed Topic 10 from the list of topics on which Kislap Ongchangco, Joni Pratt, Rene Pasko and Rob Hudnut are designated. In reviewing the Notice, I realized that Topic 10 does not relate to their areas of knowledge. I apologize for any inconvenience. There are additional topics, however, on which Mattel is designating witnesses in the Stipulation. Please find the additional topic designations below.

**Additional Topic Designations:**
Lissa Inser Freed:  Topic No. 51
Rob Hudnut:  Topic Nos. 8, 13 and 24.
Kislap Ongchangeo:  Topic Nos. 8, 12, 13 and 24.
Rene Pasko:  Topic Nos. 8, 12, 13 and 24.
Joni Pratt:  Topic Nos. 8, 13 and 24.

In addition, please note that Mattel can confirm Rod Palmer for May 25, so that date is no longer tentative. However, Jill Nordquist is not available during the week of June 18 because there is a

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Exhibit 6, Page 89

large toy industry event that week.  Ms. Nordquist is available on either June 25 or 26.  Please let me know which of those two dates work for counsel for Bryant and MGA.

Finally, there are a number of topics to which Mattel may designate past deposition testimony. MGA and Mattel previously agreed to permit designation of past deposition testimony with respect to Mattel's Rule 30(b)(6) Notice of MGA.  Mattel proposes—and included in the Stipulation—that all parties designate past testimony by May 15, 2007.

I look forward to hearing from you regarding the Stipulation and your availability for Ms. Nordquist's deposition.  If you have any questions, please contact me.

Best regards,

Jon D Corey

Jon D. Corey

2

# EXHIBIT 7

**From:**    Jon Corey
**Sent:**    Thursday, January 24, 2008 3:53 PM
**To:**      Rachel Fiset
**Subject:** FW: Mattel/MGA

---

**From:** Christa Anderson [mailto:CAnderson@KVN.com]
**Sent:** Monday, December 10, 2007 11:03 AM
**To:** Jon Corey
**Cc:** Raoul Kennedy; MMUMFORD@skadden.com
**Subject:** RE: Mattel/MGA

Hi Jon -
Thank you for your email.

Here is the language for the Stipulation and Proposed Order regarding the bandying motion. Please let us know if the language is acceptable to you and then we can finalize it into a pleading.

Regards,
Christa

WHEREAS, on December 21, 2004, Carter Bryant issued a Notice of Deposition of Plaintiff and Counter-Defendant Mattel, Inc. (hereafter "Notice") seeking testimony from Mattel on certain subjects pursuant to Fed. R. Civ. P. 30(b)(6);

WHEREAS, on September 6, 2007, MGA Entertainment, Inc. and Carter Bryant filed a Motion to Compel Re: Mattel's Bandying of 30(b)(6) Witnesses seeking an order preventing Mattel from bandying and compelling Mattel to produce witnesses in connection with Topics 2-8, 11-13, 24, 41 and Zeus of said Notice (hereafter the "Topics");

WHEREAS, the parties have negotiated a stipulation resolving the issues raised by that motion on the following terms:

1. To the extent that the totality of the personal knowledge of the witnesses who have already testified on behalf of Mattel on the Topics did not equate to the knowledge of Mattel on the Topics (with the personal knowledge of each said witness being measured at the time when his or her deposition was taken), Mattel shall have seven calendar days within which to identify the additional witness or witnesses (hereafter the "Additional Witnesses") it intends to produce on any of the Topics to testify on whatever remaining information Mattel knows or reasonably has available to it on those subject matters, and those witnesses shall be made available for deposition at mutually agreeable dates no later than January 10, 2007;

2. Notwithstanding the above, Mattel shall not be obligated to produce Additional Witnesses to testify about information that Mattel knows solely as a result of discovery taken from third parties in this case;

**Exhibit** 7 **, Page** 91

3. Mattel also shall not be obligated to produce Additional Witnesses to testify about information that is responsive to the Topics but which is not relevant to any claim or defense asserted by the parties in this litigation (so, by way of a non-limiting example, Mattel is not obligated to produce a witness to testify about Mattel confidential information to which Carter Bryant had access while employed by Mattel but with respect to which there is no allegation in this case that Carter Bryant improperly used such information);

4. Mattel shall be precluded at trial from introducing evidence that goes beyond the information collectively contained within (1) the personal knowledge of those witnesses that have already testified on the Topics, which knowledge is measured at the time of their respective depositions that preceded this stipulation, and (2) the information made available by Mattel pursuant to this stipulation through deposition of the Additional Witnesses;

5. This stipulation is without prejudice to MGA's and Carter Bryant's right to file motions challenging any other specific objections that have been raised or may be raised in the future by Mattel to these Topics.

SIGNATURE BLOCKS

It is so ordered.

SIGNATURE FOR J. INFANTE

---

**From:** Jon Corey [mailto:joncorey@quinnemanuel.com]
**Sent:** Monday, December 10, 2007 9:28 AM
**To:** Christa Anderson
**Cc:** Raoul Kennedy; MMUMFORD@skadden.com
**Subject:** Re: Mattel/MGA

Christa,

I have not received your comments on Mattel's proposal regarding the joint bandying motion. We represented to Judge Infante that we would meet and confer on these motions and need to finish the process. Please let me know when can I expect a response.

Best regards,

Jon Corey
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017

Direct:  (213) 443-3130
Main Phone:  (213) 443-3000
Main Fax:  (213) 443-3100

E-mail:  joncorey@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and

Exhibit 7 , Page 92

1/24/2008

confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended
recipient, you are hereby notified that you have received this document in error and that any review, dissemination,
distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify
us immediately by e-mail, and delete the original message.


----- Original Message -----
From: Christa Anderson <CAnderson@KVN.com>
To: Jon Corey
Cc: Raoul Kennedy <rkennedy@skadden.com>; Mumford, Marcus <MMUMFORD@skadden.com>
Sent: Tue Dec 04 12:12:17 2007
Subject: RE: Mattel/MGA

Hi Jon - thanks for your email. I am hoping to get a draft proposal out to you no later than the end of this week. thanks,
Christa


From: Jon Corey [mailto:joncorey@quinnemanuel.com]
Sent: Tuesday, December 04, 2007 11:57 AM
To: Christa Anderson
Cc: Raoul Kennedy; Mumford, Marcus
Subject: Mattel/MGA


Christa,

I understood from our exchange last week that Bryant had either a separate proposal or concerns regarding Mattel's
understanding of the resolution of joint bandying motion, at least between MGA and Mattel. I further understood from Mr.
Mumford that you would be sending a letter addressing that motion. Please let me know when I can expect Bryant's position
on this so that we can either reach an agreement or, alternatively, advise Judge Infante that he needs to prepare to hear the
motion.

Best regards,


Jon Corey
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: joncorey@quinnemanuel.com <blocked::mailto:username@quinnemanuel.com>
Web: www.quinnemanuel.com <blocked::http://www.quinnemanuel.com/>

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s)
named above. This message may be an attorney-client communication and/or work product and as such is privileged and
confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended
recipient, you are hereby notified that you have received this document in error and that any review, dissemination,
distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify
us immediately by e-mail, and delete the original message.

Exhibit _7_, Page 93

1/24/2008

# EXHIBIT 8

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

December 20, 2007

<u>VIA FACSIMILE</u>

Timothy A. Miller, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111

Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Daniel J. Warren, Esq.
Sutherland Asbill & Brennan, LLP
999 Peachtree St., N.E.
Atlanta, GA 30309-3996

Re:   <u>Mattel, Inc. v. Bryant</u>

Dear Counsel:

I write pursuant to section 5 of the Discovery Master Stipulation to request a meeting of counsel regarding MGA, MGA Entertainment (HK) Limited ("MGA Hong Kong"), Carter Bryant, Margaret Hatch Leahy, Veronica Marlow, Sarah Halpern and Jacqueline Ramona Prince's over-designation of documents as "Confidential--Attorney's Eyes Only."

Judge Larson has made clear that he anticipates that the parties will de-designate a significant number of documents and deposition transcripts prior to trial. Mattel anticipates supplementing the attached list at a later time, but the list is Mattel's initial effort to identify documents to be de-designated.

The documents in the list do not constitute trade secrets because either the information within each is sufficiently old to require less protection or the content should not have been designated as trade secret in the first instance. In addition, they are key documents which we need to be

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Exhibit _8_, Page _94_

able to share with our client, Mattel, in order to prepare our case.  Thus, we request that the above parties and third party witnesses de-designate the documents.  In the alternative, we request that the parties and third party witnesses at a minimum re-designate the documents from "Confidential—Attorneys' Eyes Only" to simply "Confidential" so they can be shown to Mattel.

Please inform me whether your clients will agree to de-designate these documents, and please let me know when you are available to meet and confer regarding Mattel's anticipated motion to de-designate these documents.

Very truly yours,

B. Dylan Proctor

Encl: 7 pp.

Exhibit __8__, Page __95__

**Pages to be De-designated from**
**"Confidential—Attorneys' Eyes Only" and/or "Confidential"**

<u>Deposition Transcripts:</u>

Carter Bryant, dated November 4, 5 and 8, 2004;
Steven Linker, dated September 13, 2006;
Paula Garcia, dated May 24, 2007, May 25, 2007, October 9, 2007 and October 10, 2007;
Isaac Larian, dated July 18, 2006;
Bryan Armstrong, dated July 18, 2007 and August 1, 2007;
Victoria O'Connor, dated December 6, 2004;
Sam Khare, dated August 20, 2007;
Jacqueline Prince, dated December 21, 2004;
Rebecca Harris, dated July 20, 2007;
Kerri Brode, dated August 15, 2007 and January 19, 2007;
Charnayne Brooks, dated March 2, 2007;
Janet Bryant, Vol. 2, dated September 25, 2007;
Tom Bryant, dated September 26, 2007;
Kenneth Lockhart, dated June 14, 2007 and June 15, 2007;
Dave Malacrida, dated August 30, 2007;
Mei Wah (Sarah) Chui, dated September 28, 2007;
Edmond Lee, dated October 4, 2007 and October 5, 2007;
Lisa Tonnu, dated July 19, 2007, September 24, 2007 and September 25, 2007;
Schuyler Bacon, dated September 27, 2007;
Spencer Woodman, dated October 9, 2007;
Schuyler Bacon, dated September 27, 2007;
Margaret Hatch Leahy, dated December 12, 2007; and
Anaelise Cloonan, dated December 14, 2007.

<u>Documents Produced by Bryant:</u>

| | | |
|---|---|---|
| BRYANT 00010-15 | BRYANT 01198-204 | BRYANT 02941 |
| BRYANT 00017-26 | BRYANT 01211-2 | BRYANT 03001 |
| BRYANT 00138-303 | BRYANT 01232-5 | BRYANT 04427-8 |
| BRYANT 00310-51 | BRYANT 01247 | BRYANT 04434 |
| BRYANT 00358-61 | BRYANT 01276-8 | BRYANT 04436 |
| BRYANT 00751 | BRYANT 01286-93 | BRYANT 04439-40 |
| BRYANT 00787-89 | BRYANT 01589-665 | BRYANT 04458 |
| BRYANT 00794-9 | BRYANT 01668-70 | BRYANT 04883 |
| BRYANT 00869 | BRYANT 02089-92 | BRYANT 04888-976 |
| BRYANT 00960-70 | BRYANT 02440-1 | BRYANT 07015-9 |
| BRYANT 01003 | BRYANT 2456-9 | BRYANT 10431-3 |
| BRYANT 01014 | BRYANT 02462-7 | BRYANT 10451-67 |
| BRYANT 01094 | BRYANT 02761 | BRYANT 19372-4 |
| BRYANT 01110-8 | BRYANT 02774-7 | |

Exhibit _8_, Page _96_

Documents Produced by MGA:

| | | |
|---|---|---|
| MGA9354B-7B | MGA002636-7 | MGA0004721B-2B |
| MGA9407B-12B | MGA003485-6 | MGA0004814-40 |
| | MGA003572-3 | MGA0005018 |
| MGA000001-11 | MGA003704-13 | MGA0005316B |
| MGA000014 | MGA003914-50 | MGA0005320B-4B |
| MGA000018 | MGA004587 | MGA0005369-75 |
| MGA000077-81 | MGA004717 | MGA0005438B |
| MGA000083 | MGA005090 | (MGA0005484B) |
| MGA000089-104 | MGA006396-7 | MGA0005491B-3B |
| MGA000113-25 | MGA006427-9 | MGA0005496-7 |
| MGA000127-8 | MGA006453-67 | MGA0005529B-30B |
| MGA000150-60 | MGA006599B-611B | MGA0005543B-4B |
| MGA000166-7 | MGA008878RB-81RB | MGA0005555B-9B |
| MGA000422 | | MGA0005592A |
| MGA000425-34 | MGA0000161B-5B | MGA0005633B |
| MGA000455-81 | MGA0000532 | MGA0005645-57 |
| MGA000533-6 | MGA0000734 | MGA0006272 |
| MGA000678-89 | MGA0001065 B | MGA0006278 |
| MGA000691-3 | MGA0001298 | MGA0006447-67 |
| MGA000699-703 | MGA0001422-23 | MGA0006480-504 |
| MGA000705-8 | MGA0001461-6 | MGA0006579-86 |
| MGA000710-28 | MGA0001628-32 | MGA0006631-3 |
| MGA000730 | MGA0002338A-9A | MGA0006849-917 |
| MGA000734 | MGA0002621 | MGA0006945-75 |
| MGA001144 | MGA0002624-5 | MGA0006978 |
| MGA001291 | MGA0002630-5 | MGA0007109 |
| MGA001294-307 | MGA0002639-64 | MGA 007339-40 |
| MGA001318-37 | MGA0003569B-71B | MGA0007363-72 |
| MGA001340-2 | MGA0003598-602 | MGA0007376 |
| MGA001356-9 | MGA0003866B-8B | MGA0007380-4 |
| MGA001415-6 | MGA0004282 | MGA0007430 |
| MGA001418-9 | MGA0004295-301 | MGA0007479-83 |
| MGA001430 | MGA0004558 | MGA0007487-92 |
| MGA001467-73 | MGA0004562B-3B | MGA0007495-503 |
| MGA001477 | MGA0004578B | MGA0007511-9 |
| MGA002325-7 | MGA0004611-6B | MGA0007538-45 |
| MGA002616-7 | MGA0004628 | MGA0007547-9 |
| MGA002619-21 | MGA0004635B | MGA0007553-6 |
| MGA002623-4 | MGA0004637B-8B | MGA0007562-3 |
| MGA002627 | MGA0004639-40 | MGA0007567-8 |
| MGA002630-1 | MGA0004717 | MGA0007574-5 |
| MGA002633-4 | MGA0004718B | MGA0007578 |

Exhibit $\mathcal{8}$, Page 91

| | | |
|---|---|---|
| MGA0007581-2 | MGA0009136 | MGA0049230-6 |
| MGA0007608-9 | MGA0009145-9B | MGA0049268-71 |
| MGA0007612-3 | MGA0009185-9 | MGA0049327-31 |
| MGA0007621-2 | MGA0009190-3 | MGA0049529-32 |
| MGA0007633-5 | MGA0009198 | MGA0049552-3 |
| MGA0007843-52 | MGA0009237-9 | MGA0049616 |
| MGA0007891 | MGA0009240-1 | MGA0049639-41 |
| MGA0007943 | MGA0009403-4 | MGA0049705-8 |
| MGA0008030-4 | MGA0010130 | MGA0049758 |
| MGA0008035A-8A | MGA0010149-51 | MGA0049793-8 |
| MGA0008039-50 | MGA0010208 | MGA0049814 |
| MGA0008043A-6A | MGA0015264 | MGA0050154 |
| MGA0008070 | MGA0015842-3 | MGA0050461-3 |
| MGA0008078, | MGA0015928-9 | MGA0050554-5 |
| MGA0008625 | MGA0018537-9 | MGA0050570-1 |
| MGA0008549 | MGA0022099 | MGA0050598 |
| MGA0008551 | MGA0024962-3 | MGA0050696-9 |
| MGA0008557 | MGA0027281-3 | MGA0050702-12 |
| MGA0008560, | MGA0045943-66 | MGA0050717 |
| MGA0008564 | MGA0046418-27 | MGA0050725-9 |
| MGA0008570B | MGA0046457 | MGA0050733-6 |
| MGA0008578B-9B | MGA0046486-90 | MGA0050752-4 |
| MGA0008587 | MGA0046493-4 | MGA0051453-5 |
| MGA0008595A | MGA0046498-501 | MGA0051546 |
| MGA0008615A-8A | MGA0046567-9 | MGA0051562-3 |
| MGA0008619-40 | MGA0046668 | MGA0051566-8 |
| MGA0008648B-54B | MGA0046672 | MGA0051574-6 |
| MGA0008745-7 | MGA0046680-2 | MGA0051649-52 |
| MGA0008770-3 | MGA0046691-3 | MGA0051808-10 |
| MGA0008851-5 | MGA0046704-5 | MGA0051890 |
| MGA0008856A | MGA0046743 | MGA0052031-6 |
| MGA0008858-65 | MGA0046750-72 | MGA0052277-91 |
| MGA0008886A-97A | MGA0046774 | MGA0052379 |
| MGA0008888RB | MGA0046776-8 | MGA0052435 |
| MGA0008900RB | MGA0046868-70 | MGA0052662-8 |
| MGA0008968 | MGA0046879-82 | MGA0053050-2 |
| MGA0009008-17 | MGA0046936-42 | MGA0053079-83 |
| MGA0009041-2 | MGA0046944-70 | MGA0053154-6 |
| MGA0009062-5 | MGA0047048-9 | MGA0053317-21 |
| MGA0009083B | MGA0047198-200 | MGA0053331-4 |
| MGA0009093-9 | MGA0047267-334 | MGA0053442-6 |
| MGA0009117 | MGA0047738-61 | MGA0053555-9 |
| MGA0009122A-4A | MGA0048434-5 | MGA0053569-73 |
| MGA0009125-6 | MGA0048484-5 | MGA0053574-7 |
| MGA0009128A-32A | MGA0048518-23 | MGA0061969-72 |
| MGA0009134 | MGA0048673-5 | MGA0064572 |

Exhibit _8_, Page _98_

| | | |
|---|---|---|
| MGA0064575 | MGA0140783-6 | MGA0822933-42 |
| MGA0064577 | MGA0146604 | MGA0825262-6 |
| MGA0065327-31 | MGA0146905-6 | MGA0825342-9 |
| MGA0065444 | MGA0147303 | MGA0825431-2 |
| MGA0065464-6 | MGA0147327 | MGA0825438-45 |
| MGA0066084-8 | MGA0147524-6 | MGA0825447-61 |
| MGA0066270-6 | MGA0147888-9 | MGA0825466-71 |
| MGA0066294-6 | MGA0149307-26 | MGA0825485-95 |
| MGA0066304 | MGA0153714 | MGA0825627-45 |
| MGA0066403-7 | MGA0154586 | MGA0828136-7 |
| MGA0066423-5 | MGA0154602-3 | MGA0829273-89 |
| MGA0066432-9 | MGA0154605-6 | MGA0834205-6 |
| MGA0066487 | MGA0156244 | MGA0835259-60 |
| MGA0066608 | MGA0183934-9 | MGA0835737 |
| MGA0067500-4 | MGA0184197-8 | MGA0836315 |
| MGA0067816-23 | MGA0186063-7 | MGA0836578-89 |
| MGA0067834-5 | MGA0190944-7 | MGA0836593 |
| MGA0067842-7 | MGA0199003 | MGA0836601 |
| MGA0068078-95 | MGA0203816-7 | MGA0836640 |
| MGA0068289-96 | MGA0427516 | MGA0836650 |
| MGA0068434-42 | MGA0800006-8 | MGA0836721-2 |
| MGA0068493-561 | MGA0800022-6 | MGA0836789 |
| MGA0068725-7 | MGA0800037 | MGA0836832-3 |
| MGA0068915 | MGA0800051-80 | MGA0836862-5 |
| MGA0068962-75 | MGA0800084-5 | MGA0837088-9 |
| MGA0069001 | MGA0800097-102 | MGA0837363-72 |
| MGA0069426-7 | MGA0800114 | MGA0837468-70 |
| MGA0070833-48 | MGA0800117-24 | MGA0837512-3 |
| MGA0070857-8 | MGA0800863-5 | MGA0842078-81 |
| MGA0072000 | MGA0800982-5 | MGA0842107-9 |
| MGA0072003-9 | MGA0801921-3 | MGA0842182 |
| MGA0072019-35 | MGA0801966-9 | MGA0842184-7 |
| MGA0072039-46 | MGA0802727-9 | MGA0842189 |
| MGA0072098-100 | MGA0802758-67 | MGA0842199-219 |
| MGA0072105-7 | MGA0803353-4 | MGA0842238-45 |
| MGA0072112-44 | MGA0803381-3 | MGA0860577-9 |
| MGA0072149-67 | MGA0803651-3 | MGA0861632 |
| MGA0072176-9 | MGA0803668-9 | MGA0863860-901 |
| MGA0072188-9 | MGA0803753-5 | MGA0868039-93 |
| MGA0072199-219 | MGA0803777-8 | MGA0868100A-3A |
| MGA0072326-8 | MGA0803951-3 | MGA0868129-30 |
| MGA0072358-74 | MGA0804028-47 | MGA0868139-44 |
| MGA0072499 | MGA0804559-61 | MGA0868159-362 |
| MGA0088670-5 | MGA0804579-80 | MGA0868630-91 |
| MGA0101018-21 | MGA0808032 | MGA0868693-865 |
| MGA0140757-60 | MGA0815789 | MGA0873720-4 |

Exhibit _8_, Page _99_

| | | |
|---|---|---|
| MGA0873736 | MGA0883995-4010 | MGA1476883-4 |
| MGA0876578-85 | MGA0886356-96 | MGA1476891 |
| MGA0877238-50 | MGA0886402-6658 | MGA1753095 |
| MGA0877284-8 | MGA0886665-700 | MGA1753126 |
| MGA00878994-9007 | MGA0886705-9 | MGA1753193 |
| MGA0883230-66 | MGA0886716-851 | MGA1753235 |
| MGA0883290-5 | MGA0886862-968 | MGA1753241-2 |
| MGA0883298-303 | MGA0886969-74 | MGA1753312-21 |
| MGA0883339-47 | MGA0886975-97 | MGA1753324-31 |
| MGA0883920-37 | MGA0887005-425 | MGA1753364-75 |
| MGA0883968-93 | MGA1165499-500 | MGA1753380-3 |

## Documents Produced by MGA Hong Kong:

| | | |
|---|---|---|
| MGA HK 0000078-155 | MGA HK 0002332-4 | MGA HK 0004079-80 |
| MGA HK 0000158-261 | MGA HK 0002336 | MGA HK 0004087-9 |
| MGA HK 0000267-8 | MGA HK 0002341-48 | MGA HK 0004092-103 |
| MGA HK 0000647-756 | MGA HK 0002353-4 | MGA HK 0004104-5 |
| MGA HK 0001176 | MGA HK 0002359-62 | MGA HK 0004115-7 |
| MGA HK 0001187 | MGA HK 0002367-88 | MGA HK 0004123-32 |
| MGA HK 0001200 | MGA HK 0002391-2 | MGA HK 0004244-46 |
| MGA HK 0001209 | MGA HK 0002396-7 | MGA HK 0004250-1 |
| MGA HK 0001242-4 | MGA HK 0002398-404 | MGA HK 0004293-94 |
| MGA HK 0001515-43 | MGA HK 0002406-11 | MGA HK 0004381-2 |
| MGA HK 0001553-4 | MGA HK 0002487-637 | MGK HK 0004413-27 |
| MGA HK 0001588 | MGA HK 0002435-54 | MGA HK 0004434-7 |
| MGA HK 0001593-621 | MGA HK 0002462-78 | MGA HK 0007118-487 |
| MGA HK 0001848-56 | MGA HK 0002689-765 | MGA HK 0007747-49 |
| MGA HK 0001870-78 | MGA HK 0002645-61 | MGA HK 0008036-7 |
| MGA HK 0001837-42 | MGA HK 0002665-6 | MGA HK 0008068-90 |
| MGA HK 0001858-60 | MGA HK 0002783-880 | MGA HK 0008205-70 |
| MGA HK 0001928 | MGA HK 0002884-7 | MGA HK 0008468-86 |
| MGA HK 0001933-7 | MGA HK 0002904-17 | MGA HK 0008508-9 |
| MGA HK 0002066 | MGA HK 0002921-25 | MGA HK 0008518-9 |
| MGA HK 0002093-4 | MGA HK 0002938-58 | MGA HK 0008553-4 |
| MGA HK 0002099-100 | MGA HK 0002982-4 | MGA HK 0008592-95 |
| MGA HK 0002131-37 | MGA HK 0002997 | MGA HK 0008679-706 |
| MGA HK 0002146-59 | MGA HK 0003000-5 | MGA HK 0008708-25 |
| MGA HK 0002260 | MGA HK 0003020-119 | MGA HK 0008814-6 |
| MGA HK 0002266 | MGA HK 0003138-40 | MGA HK 0008846-57 |
| MGA HK 0002270-1 | MGA HK 0003150-4 | MGA HK 0008864 |
| MGA HK 0002292-5 | MGA HK 0003168-72 | MGA HK 0008919-72 |
| MGA HK 0002310-2 | MGA HK 0004040-4 | MGA HK 0008974-90 |
| MGA HK 0002328 | MGA HK 0004048-61 | |
| MGA HK 0002331 | MGA HK 0004069-72 | |

Exhibit 8 , Page 100

MGA HK 0008993-9017
MGA HK 0009036-49
MGA HK 0009066-125
MGA HK 0009169-89
MGA HK 0009340-1
MGA HK 0009669-79
MGA HK 0009712-58
MGA HK 0009767
MGA HK 0009771
MGA HK 0009776-7

MGA HK 0009805-25
MGA HK 0009850-2
MGA HK 0009901-46
MGA HK 0009974-97
MGA HK 0010109-18
MGA HK 0010121-42
MGA HK 0010152-85
MGA HK 0010186-98
MGA HK 0011152-56

Documents Produced by Third Parties:

AR 0001-58
KMW-M 01646-52
KMW-M 01932
KMW-M 01950
LAF 002
LAF 043
LAF 0083
LAF 0085
SABW-L 00001-12.
SABW-M 00037-8
SABW-M 00065-78
SABW-M 00145-8

SABW-M 00179-88
SABW-M 00247-58
SABW-M 00271-82
SABW-M 00283-96
SABW-M 00319-46
SABW-M 00427
SABW-M 00429
SABW-M 00431
SABW-M 00436-7
SABW-M 00587-8
SABW-M 00595-8
SABW-M 00601-2

SBM 0005-11
SH 0001-131
SL 00001-66
TARM 0031-47
UB 0001
UB 0003-8
UB 0013-16
UB 0127B-31B
UB 0107-11
UB 0199-200

Deposition Exhibits:

Ex. 200 No Bates (3 pages)
Ex. 203 No Bates (1 page)
Ex. 204 No Bates (1 page)
Ex. 300 No Bates (3 pages)
Ex. 334 No Bates (36 pages)
Ex. 366 No Bates (7 pages)
Ex. 390-92 No Bates (15 pages)
Ex. 395 No Bates (18 pages)
Ex. 405 No Bates (4 pages)
Ex. 452 No Bates (15 pages)

Ex. 481 No Bates (164 pages)
Ex. 504 No Bates (1 page)
Ex. 515-518 No Bates (1 page)
Ex. 521-22 No Bates (1 page)
Ex. 549 No Bates (1 page)
Ex. 592 No Bates (1 page)
Ex. 646 No Bates (39 pages)
Ex. 669 No Bates (12 pages)
Ex. 711 No Bates (1 page)
Ex. 717 No Bates (1 page)

Ex. 719 No Bates (1 page)
Ex. 725 No Bates (1 page)
Ex. 727 No Bates (1 page)
Ex. 728 No Bates (1 page)
Ex. 730-731 No Bates (1 page)
Ex. 734 No Bates (1 page)
Ex. 736 No Bates (1 page)
Ex. 738 No Bates (1 page)
Ex. 740 No Bates (1 page)
Ex. 742 No Bates (1 page)
Ex. 744 No Bates (1 page)
Ex. 746 No Bates (1 page)
Ex. 748 No Bates (1 page)
Ex. 750 (1 page)

Exhibit 8 , Page 101

Ex. 752 No Bates (1 page)
Ex. 754 No Bates (1 page)
Ex. 759-760 No Bates (1 page)
Ex. 763-765 No Bates (1 page)
Ex. 768 No Bates (1 page)
Ex. 770 No Bates (1 page)
Ex. 775 No Bates (1 page)
Ex. 777 No Bates (1 page)
Ex. 780 No Bates (1 page)
Ex. 782-786 No Bates (1 page)

Ex. 790 No Bates (1 page)
Ex. 824 No Bates (1 page)
Ex. 831 No Bates (5 pages)
Ex. 929 No Bates (4 pages);
Ex. 930 No Bates (17 pages);
Ex. 931 No Bates (13 pages);
Ex. 932 No Bates (16 pages);
Ex. 943-944 No Bates (22 pages)

Ex. 1006 No Bates (1 page)
Ex. 1111 No Bates (2 pages)
Ex. 1118 No Bates (3 pages)
Ex. 1146
Ex. 1152
Ex. 1153
Ex. 1154
Ex. 1155

Exhibit 8, Page 102

# EXHIBIT 9

COPY

FILED

2007 SEP 28 PM 3:16
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanul.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

        Plaintiff,                       Consolidated with
14                                       Case No. CV 04-09059
                                         Case No. CV 05-02727
15      vs.
                                         **DISCOVERY MATTER**
16  MATTEL, INC., a Delaware
    corporation,                         **[To Be Heard By Discovery Master
17                                       Hon. Edward Infante (Ret.)]**
        Defendant.
18                                       MATTEL, INC.'S OPPOSITION TO
                                         MGA AND CARTER BRYANT'S
19  ───────────────────────────────     JOINT MOTION TO COMPEL RE:
                                         MATTEL'S ALLEGED BANDYING
20  AND CONSOLIDATED ACTIONS             OF 30(B)(6) WITNESSES

21                                       [Declarations of Dylan B. Proctor, Jon
                                         D. Corey and Michael T. Zeller filed
22                                       concurrently herewith]

23                                       Hearing Date: TBA
                                         Time: TBA
24                                       Place: Telephonic

25                                       Discovery Cut-off: January 14, 2008
                                         Pre-trial Conference: April 7, 2007
26                                       Trial Date: April 29, 2007

27

28                                       Exhibit ___9___, Page_103_

7209/2217061.2

─────────────────────────────────────────────────────────────────
     MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 3

ARGUMENT ..................................................................................................... 21

I.    THE MOTION SHOULD BE DENIED SUMMARILY BECAUSE MGA AND BRYANT AGAIN FAILED TO MEET AND CONFER BEFORE FILING IT ............................................................................... 21

II.   MATTEL'S WITNESS PREPARATION AND DESIGNATION WAS ENTIRELY APPROPRIATE .................................................................. 25

      A.    Rule 30(b)(6) Does Not Require A Designee to Personally Interview Witnesses or Review Documents; Preparation by Counsel Is Sufficient ....................................................................... 25

      B.    Designating Multiple Witnesses for a Topic Under Rule 30(b)(6) Is Entirely Acceptable ............................................................ 26

III.  MATTEL'S 30(B)(6) DESIGNEES WERE PREPARED TO AND DID TESTIFY ON THEIR DESIGNATED TOPICS--MGA AND BRYANT SIMPLY DO NOT LIKE WHAT THEY HAD TO SAY ............. 27

IV.   PRECLUSION AND MONETARY SANCTIONS SHOULD BE SUMMARILY DENIED ................................................................................. 37

CONCLUSION ........................................................................................................ 38

Exhibit **9**, Page **104**

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

### **Cases**

Alexander v. FBI,
    186 F.R.D. 137 (D.D.C. 1998) ................................................................. 27

Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,
    190 F.R.D. 644 (N.D. Cal. 2000) ............................................................ 39

Banks v. Office of the Senate Sergeant-at-Arms,
    241 F.R.D. 370 (D.D.C. 2007) ................................................................ 27

Qualcomm Inc. v. Broadcom Corp.,
    2007 WL 935617, *2 (S.D. Cal.) ............................................................ 38

Reichhold, Inc. v. U.S. Metal Refining Co.,
    No. CIV 03-453, 2007 WL 1428559, at *8 (D.N.J. May 10, 2007) ..................... 26

U.S. ex rel Fago v. M & T Mortgage Corp.,
    235 F.R.D. 11 (D.D.C. 2006) .................................................................. 27

Ward v. Circus Casinos, Inc.,
    473 F.3d 994 (9th Cir. 2007) .................................................................. 25

Waters v. Weyerhaeuser Mortgage Co.,
    582 F.2d 503 (9th Cir. 1978) .................................................................. 25

### **Statutes**

California Labor Code § 2870 ...................................................... 10, 30, 31

Federal Rule 37 ................................................................................... 39

Local Rule 37-1 .......................................................................... 2, 23, 25

Rule 30(b)(6) ......................... 1, 2, 3, 7, 12, 13, 16, 17, 22, 23, 24, 25, 26, 27, 28, 39

Exhibit _9_, Page _105_

07209/2217061.2

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

**Preliminary Statement**

Defendants have ignored Judge Larson's observation that their "overzealous conviction" is "no substitute for proof." In their efforts to portray Mattel's witnesses as unknowledgeable, defendants omit important facts about the parties' prior agreements regarding their Rule 30(b)(6) topics. These topics were overbroad and improperly called for witnesses to testify as to legal conclusions, among other deficiencies, and Mattel therefore objected to them. The parties participated in lengthy meet and confers and agreed to narrow the topics significantly. Mattel also made clear, and defendants agreed, that Mattel's 30(b)(6) witnesses would testify about their knowledge of facts going to the topics as narrowed, not to all facts going to any particular topic on which a witness would be designated. Defendants also understood that Mattel could designate multiple witnesses per topic, if the topic so required, as is Mattel's right.

To read defendants' motion, it is as if none of this ever happened. Indeed, not only do defendants fail to inform the Court about these agreements, but they fail to mention that these limitations were stipulated to. Defendants' motion takes aim at Mattel's 30(b)(6) witnesses for giving the very information that the parties agreed they would give.

Ignoring (and not disclosing) the parties' prior agreements defendants highlight any "I don't know" answers they could find in the transcripts. There is nothing wrong with "I don't know" answers where, as here, the questions asked were either outside the designated subject matter, completely irrelevant, or called for a legal conclusion. Moreover, defendants have not identified any relevant, substantive information they were denied.

Nor is there anything wrong with how Mattel's witnesses were prepared. Defendants criticize Mattel for not having required the witnesses to have gone out to interview people or review the parties' document production. But, as defendants acknowledge, each witness met with counsel and prepared with counsel

1   for his or her deposition, and the <u>Federal Rules</u> require no more than that.  Further, a

2   personal investigation by Mattel's designees would be an unnecessary undertaking

3   anyhow because Mattel designated witnesses who were involved in, and thus had

4   knowledge of, the relevant facts, and the parties agreed that Mattel's witnesses

5   would testify to facts within their own personal knowledge.

6          In any event, the Court should not even consider this motion on the

7   merits.  Defendants flagrantly misrepresent that they met and conferred with Mattel

8   before filing this motion.  They did not.  Defendants claim the parties met and

9   conferred on July 10, 2007, but their own letter dated July 11, 2007 shows

10  otherwise.  In that letter, defendants complain that the parties were **unable** to meet

11  and confer on July 10 regarding Mattel's supposed "bandying" of witnesses.  And, in

12  a letter, dated July 12, 2007 -- which defendants conceal from the Court --

13  defendants themselves acknowledge that "MGA and Bryant **will send** a second

14  letter further detailing the discovery abuses for which MGA and Bryant intend to

15  seek a protective order absent resolution of these issues."  Mattel responded by

16  committing to meet and confer when it received that letter, but the letter defendants

17  promised to send listing the issues subject to dispute never came.  Instead, two

18  months later, this motion came out of the blue.[1]

19         Mattel's 30(b)(6) witnesses were properly prepared and testified on the

20  subject matter consistent with Mattel's objections and as the parties agreed.  Because

21  it lacks merit and because defendants did not comply with the requirements of the

22  <u>Local Rules</u> and the Discovery Master Stipulation, this motion should be denied.

23

24

25  [1]   Mattel offered to provide one of the witnesses who is the subject of this
    motion, Rene Pasko, for additional deposition time and even provided four possible
26  dates.  Rather than pick one of those dates, defendants opted instead to file this
    motion.  Similarly, with Julia Jensen, Mattel offered to meet and confer over
27  whatever issues (which had not been identified) defendants wanted to raise about
    her deposition, but instead of meeting and conferring, defendants filed this motion.
28

Exhibit  9 , Page 107

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Statement of Facts

### MGA and Bryant Fail to Inform the Court Of The Parties' Prior Agreements Limiting the Scope of Bryant's 30(b)(6) Topics.

MGA and Bryant fail to tell the Court anything about a March 15, 2005 transcribed meet and confer on the scope of defendant's 30(b)(6) deposition topics. Had they done so, they would have had to come clean about the fact that the parties agreed to significant limitations on many of the 30(b)(6) topics defendants now complain about—limitations which show that Mattel's witnesses testified about what they were supposed to.

For example, topics 2-7 were grossly overbroad and were framed as legal contentions.[2] Therefore, Mattel agreed to designate witnesses to testify only about "the *factual* basis" underlying the topics, and Bryant's counsel acknowledged that Mattel would designate one or more witnesses for each topic who would give their personal knowledge as to "factual information pertaining to these categories."[3]

---

[2] Those topics are as follows:

Topic 2: All contractual and non-contractual duties and obligations Bryant owed or performed for Mattel during his employment with Mattel, and thereafter.

Topic 3: All of Bryant's acts or omissions which breached any contractual or non-contractual duty or obligation Bryant owed to Mattel.

Topic 4: All of Bryant's acts or omissions which breached any duties or obligations imposed by the Conflict of Interest Questionnaire and/or the Employee Confidential information and Inventions Agreement.

Topic 5: All Mattel proprietary or confidential information Bryant had access to during his employment with Mattel.

Topic 6: All of Bryant's acts or omissions pursuant to which he aided, assisted and worked for a competitor of Mattel while employed by Mattel from 1995 to the present.

Topic 7: The services and property belonging to Mattel that Bryant provided to any third party, including MGA, from 1995 to the present.

(footnote continued)

1  Had defendants not made these concessions, Mattel would have stood on its

2  objections and would not have produced witnesses in the first place because the

3  topics are overly broad and call for improper legal opinion.[4]

4

5

---

[3]  Letter from Jon D. Corey to Douglas A. Wickham dated May 13, 2005 ("5/13/05 letter"), Declaration of Jon D. Corey, dated September 26, 2007 and filed concurrently herewith ("Corey Dec."), Exh. 1; Deposition Transcript of Sandy Yonemoto ("Yonemoto Depo Tr."), dated May 30, 2007, Declaration of B. Dylan Proctor, dated September 26, 2007 and filed concurrently herewith ("Proctor Dec."), Exh. 22, at 37:7-9; Deposition Transcript of Kislap Ongchangco ("Ongchangco Depo Tr."), dated April 24, 2007, Proctor Dec., Exh. 23, at 159:2-160:14; Deposition Transcript of Robert Hudnut, Vol. I ("Hudnut Depo Tr., Vol. I"), dated July 13, 2007, Proctor Dec., Exh. 24, at 92:7-94:24; Deposition Transcript of Joni Pratte ("Pratte Depo Tr."), dated June 1, 2007, Proctor Dec., Exh. 26, at 8:16-9:6; Deposition Transcript of Rene Pasko ("Pasko Depo Tr."), dated June 13, 2007, Proctor Dec., Exh. 27, at 10:23-11:12; Meet and Confer Transcript dated March 15, 2005 ("3/15/05 Tr."), Declaration of Michael T. Zeller, filed concurrently herewith ("Zeller Dec."), Exh. 1, at 156:11-159:23, 169:4-24, 173:4-176:19, 178:5-179:8, 191:10-21.

[4]  Mattel's Objections to Carter Bryant's 30(b)(6) Deposition Notice, dated December 29, 2004, Proctor Dec., Exh. 12; 3/15/05 Tr., Zeller Dec., Exh. 1, at 156:11-157:19, 164:24-166:18; Zeller Dec, ¶ 2.

18

19

20

21

22

23

24

25

26

27

28

1    For topics 8, 11, 12, 13 and 24,[5] Mattel agreed to designate a witness to

2  testify about "the factual basis" regarding aspects of two internal Mattel projects

3  during 1999 and 2000 that ended up in Bratz in some form, which tends to refute

4  Bryant's claim that he created Bratz in 1998 when he was not employed by Mattel:

5  (1) aspects of Mattel's "Toon Teens" project; (2) certain names that Mattel

6  considered using in connection with the DIVA STARZ project, such as "Brats" and

7  "Boyz"; and (3) internal Mattel designs done by Steve Linker, a Mattel contractor

8  who Paula Garcia later approached during the Summer of 2000 - before the DIVA

9

10  [5] Those topics are:

11  Topic 8:  All acts, omissions, circumstances and/or evidence showing, or
       tending to show, that any and all products of MGA, including but not
12       limited to, any and all products sold under the trade name "Bratz,"
       originated from, were derived from, are based upon, are copied or
13       incorporated from, or are substantially or confusingly similar to, any
       design, research and developmental work, work in progress, or product
14       owned at any time by Mattel or created by any Mattel employee,
       including but not limited to Bryant, or by any independent contractor
15       during the time that such Person was working for Mattel.

16  Topic 11:  All facts and circumstances showing the conception, origination,
       creation, development and/or reduction to practice of "DIVA STARZ."

17  Topic 12 reads:  All facts and circumstances showing the conception,
18       origination, creation, development and/or reduction to practice of "Mini
       DIVA STARZ."

19  Topic 13:  All acts, omissions, circumstances and/or evidence showing, or
       tending to show, that any and all products of MGA, including but not
20       limited to, any and all products sold under the trade name "Bratz,"
       originated from, were derived from, are based upon, copies,
21       incorporates, or is substantially or confusingly similar to any design or
       work product owned at any time by Mattel or created by Bryant during
22       the time Bryant was working for Mattel.

23  Topic 24:  All acts, omissions, circumstances and/or evidence showing, or
       tending to show, that prior to October 21, 2000, Mattel had any toy
24       concept or project which had not yet been offered for sale to the public,
       including without limitation, any toy concept or project in the pre-
25       production or development phase, that Bryant improperly copied,
       replicated, borrowed or otherwise used in whole, or in any part, during
26       or after Bryant's employment with Mattel.
       The parties did not come to agreement concerning the narrowing of topics 8,
27  11 or 12 during the March 15, 2005 meet and confer, but rather, during
       subsequent discussions concerning the breadth of the topics. See infra, pp. 16-
28  22.

-5-

1   STARZ dolls were on the shelf - to work for MGA because she "was fond of [his]

2   work" on DIVA STARZ.[6]

3          On topic 41,[7] Mattel agreed to designate a witness to testify about

4   "Mattel's lack of knowledge of who made the statements (other than those made by

5   Matt Bousquette) quoted in the 2003 Wall Street Journal article."[8]

6          On topics 22, 54-56,[9] Mattel agreed to designate a witness to testify on

7   the "factual basis" regarding these topics.[10]  On topics 54-56, in particular, Mattel

8   agreed to designate a witness about "Bryant's exit interview and misrepresentations

9

10

---

11   [6]   Zeller Dec., ¶ 3; Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 159:2-
12   160:14; Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 92:7-94:24; Pratte Depo
      Tr., Proctor Dec., Exh. 26, at 8:16-9:6; Pasko Depo Tr., Proctor Dec., Exh. 27, at
13   10:23-11:12; Deposition Transcript of Steven Linker ("Linker Depo Tr."), dated
      September 13, 2006, at 44:3-44:22, Proctor Dec., Exh. 21.
14
      [7]   Topic 41 reads:  All statements of Mattel or ex-Mattel employees in the
15          July 2003 Wall Street Journal article (produced by Mattel to Bryant in the
            present case), including, without limitation, "Inside Mattel, some are
16          convinced the Bratz borrow liberally from a Mattel project that was
            scrapped at the testing stage in 1998"; "But the Bratz' oversized heads--
17          with their pursed lips and cartoonist eyes--are 'virtually identical' to the
            heads of the dolls her team created"' "Anyone who passed by [Lily
18          Martinez's] cubicle would see the picture up on the wall'" and "The big
            heads, the big eyes, the big feet--they were all the same [as the Bratz]."
19
      [8]   5/13/05 letter, Corey Dec., Exh. 1, at 2.
20    [9]   Those topics are:
21    Topic 22:  All acts, omissions, circumstances and/or evidence showing, or
22          tending to show, that Bryant misappropriated Mattel property,
            including without limitation intellectual property, at any time.
23    Topic 54:  Bryant's "Job Summary" report, produced by Mattel as Document
24          Control Nos. M001-667-68.
      Topic 55:  All acts, omissions, circumstances and/or evidence showing, or
25          tending to show, that Bryant made affirmative misrepresentations to
            any and all Mattel employees upon his departure from Mattel.
26
      Topic 56:  Bryant's "Exit Interview Report" dated October 19, 2000, produced
27          by Mattel as Document Control No. M0001654.
28    [10]  Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 14:9-15:17.

-6-

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

Exhibit _9_, Page _111_

1 | that he made in that interview, including documents bates-labeled M0011667-68

2 | and M001654."[11]

3 |       For each topic, Bryant's counsel expressly acknowledged that Mattel

4 | could designate several witnesses for a single topic, stating: "Mattel will reserve the

5 | right to produce one or more witnesses on a single category, if the scope of the

6 | request is broad enough that it would require it."[12] Mattel confirmed this fact in

7 | subsequent letters and during deposition, and neither MGA nor Bryant ever

8 | objected.[13]

9 |       MGA and Bryant also fail to tell the Court that these on-the-record

10 | limitations were formally made applicable to all depositions on these topics by way

11 | of a Stipulation and Order entered by Judge Block on May 4, 2005. That Stipulation

12 | and Order, signed by all parties and the Court, expressly stated that Mattel would

13 | designate witnesses pursuant to Bryant's 30(b)(6) notice "as agreed to by Bryant and

14 | Mattel in the March 15, 2005 meeting of counsel and as reflected in the transcript of

15 | that meeting."[14]

16 | <u>Mattel's 30(b)(6) Witnesses Were Properly Prepared To And Did Give</u>

17 | <u>Testimony On Their Designated Topics</u>. Defendants fail to give any cogent

18 | presentation of what Mattel's 30(b)(6) witnesses said during their depositions

19 | because doing so would show that the witnesses were as advertised. Each witness

20 |

21 | [11] 5/13/05 letter, Corey Dec., Exh. 1, at 2; Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 37:7-9.

22 | [12] 3/15/05 Tr., Zeller Dec., Exh. 1, at 178:5-179:8.

23 | [13] Letter from Jon Corey to Diana Torres and Douglas Wickham, dated May 16, 2005 ("5/16/05 letter"), Corey Dec., Exh. 2, at 2; Letter from Jon Corey to Keith

24 | Jacoby and James Jenal, dated April 11, 2007 ("4/11/07 letter"), Corey Dec., Exh. 3, at 1; Hearing: Scheduling of 30(b)(6) Depositions Transcript, dated April 4, 2007

25 | ("30(b)(6) Scheduling Hearing Tr."), Proctor Dec., Exh. 33, at 11:4-11; Deposition

26 | Transcript of Jill Nordquist ("Nordquist Depo Tr."), dated July 31, 2007, Proctor Dec., Exh. 28, at 14:24-15:10.

27 | [14] Stipulation and [Proposed Order] Re Certain Discovery Issues, dated May 4,

28 | 2005, Proctor Dec., Exh. 5, at 1.

-7-

Exhibit _9_, Page _112_

1 | testified to facts related to his or her designated topics, even though defendants'

2 | counsel strayed beyond--and often far beyond--any reasonable interpretation of

3 | relevance and/or demanded legal opinions. The testimony of each witness is briefly

4 | summarized below.

5 |     <u>Sandy Yonemoto</u>:  Ms. Yonemoto is a Senior Manager of Human

6 | Resources Operations at Mattel and conducted Carter Bryant's exit interview in

7 | 2000.[15]  Mattel made clear to MGA and Bryant during the meet and confer process

8 | that Ms. Yonemoto was designated to testify as to topics 2-7, 22, and 54-56,[16] but

9 | only to the extent those topics were relevant to Carter Bryant's exit interview.[17]

10 |     The core facts surrounding that exit interview are not in dispute and

11 | Ms. Yonemoto testified as to information reasonably available to her.  She had no

12 | specific recollection of Mr. Bryant's exit interview; indeed, she conducted over 50

13 | exit interviews during the roughly five years she conducted exit interviews at

14 | Mattel.[18]  There is no one at Mattel she could ask about the interview since she and

15 | Bryant were the only ones there.[19]  Ms. Yonemoto instead properly relied on her

16 | knowledge of Mattel's practices in conducting exit interviews, and the notes she

17 | made on Bryant's Exit Interview Report to testify on this topic.[20]  During that

18 | interview, as memorialized by Mr. Bryant's Exit Interview Report, Bryant failed to

19 | mention he was going to work for a competitor (MGA) and instead stated that he

20 | was doing unrelated "illustration and product design."[21]

21 |

22 | [15]  Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 26:10-18, 146:17-21.
   | [16]  30(b)(6) Scheduling Hearing Tr., Proctor Dec., Exh. 33, at 28:24-29:9.

23 | [17]  5/16/05 letter, Corey Dec., Exh. 2, at 2; Yonemoto Depo Tr., Proctor Dec.,

24 | Exh. 22., at 37:7-9 (". . . we have said that Sandy [Yonemoto] is here to talk about

25 | the exit interview.  I mean, that's what she participated in with respect to
   | Mr. Bryant.").

26 | [18]  Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 44:17-46:13, 57:15-18.
   | [19]  <u>Id.</u> at 60:10-17.

27 | [20]  <u>Id.</u> at 47:7-51:12, 59:8-12, 59:20-69:20, 77:22-78:13.

28 | [21]  <u>Id.</u> at 180:23-181:2.

-8-

Exhibit 9 , Page 113

1          MGA and Bryant spent hours questioning Ms. Yonemoto about

2  Bryant's exit interview and the exit interview process; her testimony on these topics

3  spans nearly 30 pages.[22]  She described her experience conducting exit interviews;[23]

4  the training she received in conducting exit interviews;[24] guidelines she uses when

5  conducting exit interviews;[25] the documents she explains to employees when

6  conducting exit interviews;[26] the purpose of a Proprietary Information Checkout

7  form given to exiting employees;[27] her statements to exiting employees of their

8  obligation to return any proprietary information back to Mattel and to protect Mattel

9  trade secrets;[28] the fact that if Mattel had known Bryant would be going to a

10  competitor, he would have been immediately escorted out of the building rather than

11  having been allowed to work for another two weeks;[29] and her understanding of the

12  obligations of Mattel employees to disclose work they perform outside of Mattel.[30]

13          MGA's and Bryant's frustrations with Ms. Yonemoto's deposition are

14  more appropriately directed at the inept questioning of their own counsel.  Bryant's

15  lawyer took the lead and spent her time asking about topics that were outside the

16  witness's designation, including, for example:  the circumstances under which

17  Bryant came to work at Mattel and the orientation of employees at that time;[31]

18  Mattel's "PeopleSoft" technical system used to house employee personnel

19  information;[32] whether Mattel maintains contact information for former

20

---

21  [22]  Id. at 43:11-70:19.
   [23]  Id. at 44:17-46:17, 47:7-51:12, 59:2-7, 59:20-69:20, 88:3-93:25.
22  [24]  Id. at 47:7-48:7.
   [25]  Id. at 48:8-50:17, 62:24-64:6.
23  [26]  Id. at 48:8-18, 49:14-50:6, 50:18-51:9, 97:5-16.
24  [27]  Id. at 50:18-51:9, 65:7-24, 107:1-16.
25  [28]  Id. at 50:18-51:9; 65:7-24, 106:6-108:24.
26  [29]  Id. at 66:16-67:19, 123:13-23, 125:2-126:16.
   [30]  Id. at 114:1-126:16.
27  [31]  Id. at 18:8-15.
28  [32]  Id. at 80:10-84:20, 139:18-146:2.

-9-

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

Exhibit 9 , Page 114

1  employees;[33] Mattel's "practices with respect to having employees sign agreements

2  in the form that is reflected in Exhibit 25" [an "onboarding" form signed by all

3  Mattel employees upon hiring];[34] Mattel's prior reduction in force;[35] and

4  investigations by Mattel's Security Department.[36]  Bryant's lawyer also repeatedly

5  asked questions that required Ms. Yonemoto to testify about the "provisions of

6  Section 2870 of the California Labor Code."[37]

7          Julia Jensen.  Ms. Jensen is the Vice President of Public Relations for

8  the Girls' Division at Mattel and was designated to testify as to Topic 41, which has

9  to do with a July 2003 Wall Street Journal article.[38]  Ms. Jensen was very

10  knowledgeable about the article subject of topic 41, as shown by the fact that MGA

11  and Bryant's counsel questioned her on this single topic from approximately

12  10:15 a.m. until 3:30 p.m.[39]  Ms. Jensen testified that she was the person at Mattel

13  who, in June 2003, first contacted the reporter who wrote the article to initiate the

14

15  [33]  Id. at 152:22-154:15.

16  [34]  Id. at 34:20-35:25.

17  [35]  Id. at 129:17-133:6.
    [36]  Id. at 148:4-151:25.

18  [37]  Id. at 96:10-103:2.  Indeed, the questioning--all of which relied on improper

19  legal opinion--spans several pages of deposition transcript and conveys counsel's
    condescending tone: "Let me help you out, Ms. Yonemoto.  Can you identify

20  anyplace on the Proprietary Information checkout form which is Exhibit 27 that

21  talks about the rights of employees under Section 2870 of the California Labor
    Code?" Id. at 99:10-14.

22  [38]  Deposition Transcript of Julia Jensen ("Jensen Depo Tr."), dated June 8,

23  2007, Proctor Dec., Exh. 29, at 17:14-23, 21:6-23:12.
    [39]  Jensen Depo Tr., Proctor Dec., Exh. 29, at 3:1-7, 187:18-19.  MGA and

24  Bryant's counsel make much of the fact that Ms. Jensen was substituted for another

25  witness who Mattel originally designated to testify on this topic and complain that
    Ms. Jensen did not know the answers to all of the questions they asked.  One could

26  only get the impression that Ms. Jensen did not have much to say on the subject if,

27  as MGA and Bryant did in their moving papers, one simply ignores the vast amount
    of information she gave on the topic.  Her detailed testimony regarding her personal

28  involvement in the Wall Street Journal article speaks for itself.

1    process;[40] she testified in detail about the number and subject matter of internal

2    discussions she had with Matt Bousquette, president of Mattel brands, and Lisa

3    Tauber, Director of Marketing, including the documents she reviewed during those

4    meetings;[41] that Mattel was interested in giving the Wall Street Journal an exclusive

5    for the launch of the Flavas brand;[42] Mattel's prior experience with the Wall Street

6    Journal reporter;[43] the substance and timing of at least six telephone conversations

7    with the Wall Street Journal reporter before the article was published;[44] her

8    arranging for the reporter to preview the Flavas dolls along with Mattel's doll line;[45]

9    the identities of individuals who spoke with the reporter at Toy Fair 2003 and the

10    substance of those discussions;[46] what she learned from the reporter regarding the

11    reporter's interviews of other individuals for the story, such as retailers, Isaac Larian,

12    and Lily Martinez, a Mattel designer;[47] Ms. Jensen's internal discussions at Mattel

13    and subsequent conversations with the reporter;[48] and a sentence-by-sentence review

14    of the article and what she knew about each sentence in terms of its source, her

15    discussions with anyone at Mattel or the reporter herself about the topic of the

16    sentence.[49]

17

18

---

19    [40]   Jensen Depo Tr., Proctor Dec., Exh. 29, at 25:21-26:9.

     [41]   Jensen Depo Tr., Proctor Dec., Exh. 29, at 26:11-36:7.

20    [42]   Jensen Depo Tr., Proctor Dec., Exh. 29, at 29:2-30:16, 33:8-16.

     [43]   Jensen Depo Tr., Proctor Dec., Exh. 29, at 31:12-32:17.

21    [44]   Jensen Depo Tr., Proctor Dec., Exh. 29, at 39:3-40:15, 50:3-52:4, 52:18-

22    56:10, 57:17-65:11, 65:12-67:5, 67:6-72:14.

     [45]   Jensen Depo Tr., Proctor Dec., Exh. 29, at 41:21-42:7, 45:7-47:23.

23    [46]   Jensen Depo Tr., Proctor Dec., Exh. 29, at 78:15-79:22, 92:12-93:18, 97:21-

24    99:15, 136:19-137:12, 138:17-140:22, 144:21-145:23.

     [47]   Jensen Depo Tr., Proctor Dec., Exh. 29, at 60:2-64:13, 67:14-72:14, 135:3-

25    16.

26    [48]   Jensen Depo Tr., Proctor Dec., Exh. 29, at 72:22-73:18, 75:6-22, 94:14-95:4.

     [49]   Jensen Depo Tr., Proctor Dec., Exh. 29, at 79:23-81:5, 81:19-25, 83:2-88:16,

27    90:3-18, 92:7-11, 96:2-101:10, 104:12-107:25, 112:4-117:8, 118:18-124:4, 125:12-

28    133:6, 136:9-141:25, 143:6-145:23, 156:7-165:5, 185:5-186:15.

1    That article also purports to quote Mattel employees or ex-Mattel

2   employees as unnamed sources for the article. Mattel told MGA and Bryant on

3   numerous occasions that Mattel did not know the identities of those unnamed

4   sources and so a 30(b)(6) witness would only be testifying to that lack of

5   knowledge.[50] Bryant's counsel acknowledged that fact and agreed to the production

6   of a witness by Mattel with those limitations.[51]

7    However, after Ms. Jensen's deposition, MGA's counsel sent an e-mail

8   to Mattel's counsel complaining that Ms. Jensen did not know the identities of the

9   unnamed sources and had not herself engaged in an investigation to find out the

10   information.[52] This is patently false as Ms. Jensen testified that she asked Maureen

11   Tkacik, the Wall Street Journal reporter, who her sources were.[53] Ms. Jensen also

12   had discussions with counsel preparing for her deposition, and counsel had

13   previously and repeatedly told defendants that Mattel simply did not know who the

14   sources were.[54] In response to the email, Mattel's counsel wrote back and asked for

15   MGA to identify any specific information that was "asked for and not provided by

16   Ms. Jensen," and, while not agreeing with MGA's complaint, offered to meet and

17   confer over those questions that Ms. Jensen allegedly failed to answer sufficiently.[55]

18   Mattel's counsel also offered to meet and confer regarding those questions and

19   answers pursuant to the Discovery Stipulation.[56] Rather than respond, defendants

20   simply filed this motion. Furthermore, Ms. Tkacik herself has been noticed for

21   _____

22   [50] 5/13/05 letter, Corey Dec., Exh. 1, at 2; 3/15/05 Tr., Zeller Dec., Exh. 1, at 353:9-23; 354:19-355:21.

23   [51] 3/15/05 Tr., Zeller Dec., Exh. 1, at 356:12-15, 357:17-24; Jensen Depo Tr., Proctor Dec., Exh. 29, at 22:23-23:11.

24   [52] Email from James Jenal to Timothy Alger, dated August 11, 2007 ("8/11/07 email"), Proctor Dec., Exh. 6.

25   [53] Jensen Depo Tr., Proctor Dec., Exh. 29, at 122:20-123:12.

26   [54] 3/15/05 Tr., Zeller Dec., Exh. 1, at 354:19-355:2, 356:16-20.

27   [55] Letter from Timothy L. Alger to James Jenal, dated August 21, 2007 ("8/21/07 letter"), Proctor Dec., Exh. 7.

28

1   deposition in this case (scheduled for September 28) and defendants may ask her

2   any of the questions about the article they like.[57]

3         <u>Julia Marine</u>: MGA and Bryant do not have any substantive

4   complaints about Ms. Marine's testimony at all, but rather, simply repeat their now

5   tired refrain that her testimony was "flatly contradicted" by the testimony of Michael

6   Moore, Mattel's in-house counsel.[58] MGA and Bryant argued all of this at length in

7   their motion for terminating sanctions, and Judge Larson already found that there is

8   no conflict in testimony.[59] On September 21, 2006 and November 8, 2006,

9   Ms. Marine testified as a 30(b)(6) witness on the Zeus system between 1998 and

10   2000.[60] She was simply **never asked** what Zeus backup tapes were available during

11   these depositions.[61] Months later, on June 26, 2007, Ms. Marine was deposed on an

12   entirely different <u>Rule</u> 30(b)(6) topic - namely, the document management system

13   used by designers at Mattel's Design Center.[62] It was not until then, seven and a half

14   months later, on a different topic, and at the very end of her deposition, that

15   Ms. Marine was asked about the Zeus backup tapes Mattel did or did not possess.[63]

16   As Judge Larson already found, Ms. Marine did not testify that Zeus backup tapes

17

18     [56] <u>Id.</u>

19     [57] Notice of Deposition of Maureen Tkacik, Denise O'Neil, Christopher Palmeri and Jeff Weiss, dated August 6, 2007, Proctor Dec., Exh. 35.

20     [58] MGA Entertainment, Inc.'s and Carter Bryant's Joint Motion to Compel Re:

21   Mattel's Bandying of 30(b)(6) Witnesses ("Motion"), dated September 6, 2007 at 17:2-12.

22     [59] Hearing: MGA's Motion for Terminating Sanctions Transcript ("Terminating Sanctions Tr."), dated August 27, 2007, Proctor Dec., Exh. 34, at 66:8-22, 93:21-24.

23     [60] Deposition Transcript of Julia Marine, Volume I ("Marine Depo Tr.", Vol. I"),

24   dated September 21, 2006, Proctor Dec., Exh. 30, at 11:24-12:12; Deposition Transcript of Julia Marine, Volume II ("Marine Depo Tr.", Vol. II"), dated

25   November 8, 2006, Proctor Dec., Exh. 31, at 81:18-21.

26     [61] Terminating Sanctions Tr., Proctor Dec., Exh. 34, at 79:22-80:22.

27     [62] Deposition Transcript of Julia Marine, Volume III ("Marine Depo Tr.", Vol. III"), dated June 26, 2007, Proctor Dec., Exh. 32, at 161:16-19.

28     [63] Marine Depo Tr., Vol. III, Proctor Dec., Exh. 32, at 243:5-244:19.

-13-

Exhibit __9__, Page __118__

1    did not exist as MGA and Bryant claim, she simply said that she did not know.[64] No

2    matter how often or loudly MGA and Bryant assert otherwise, it does not make it so.

3    <u>Jill Nordquist:</u>  Ms. Nordquist is Director of Mattel Brands Consumer

4    Products and was formerly the Marketing Manager for Barbie Collectibles, the

5    group within Mattel for which Carter Bryant worked.[65] Ms. Nordquist was

6    designated to testify as to portions of topics 2-7 and 55, specifically, her knowledge

7    concerning misstatements Carter Bryant made about his departure from Mattel.[66]

8    She testified extensively (her deposition ran from approximately 9:45 a.m. until

9    7:00 p.m.)[67] on facts relevant to those topics, including, for example:  her work and

10   interaction with Carter Bryant while he and Ms. Nordquist worked in the Design

11   Center;[68] Bryant's design work at Mattel;[69] meetings she had with Bryant;[70] the

12   layout of the Design Center;[71] what Bryant said and failed to say about his leaving

13   Mattel;[72] her discussions with others (both before and after he left Mattel) about

14   Bryant's failure to disclose that he was going to a competitor;[73] and her

15   understanding of Mattel employees' responsibilities to disclose to Mattel any work

16   done outside of Mattel.[74]

17

18   [64] Marine Depo Tr., Vol. III, Proctor Dec., Exh. 32, at 239:9-240:5; Terminating
     Sanctions Tr., Proctor Dec., Exh. 34, at 66:8-22; 93:21-24.  Mattel also offered to
19   produce Zeus backup tapes for 1998 to 2001, but defendants never responded to
20   Mattel's letter.  Corey Dec., ¶ 4.
     [65] Nordquist Depo Tr., Proctor Dec., Exh. 28, at 29:10-20; 57:2-6.
21   [66] 30(b)(6) Scheduling Hearing Tr., Proctor Dec., Exh. 33, at 20:14-18, 27:23-
22   24, 29:15-16, 30:14-15; Nordquist Depo Tr., Proctor Dec., Exh. 28, at 14:8-23,
     144:11-145:9, 124:18-24, 180:18-181:1.
23   [67] Nordquist Depo Tr., Proctor Dec., Exh. 28, at 5:4-6, 298:1-3.
24   [68] <u>See e.g., id.</u> at 56:5-58:5, 59:5-71:9.
     [69] <u>Id.</u> at 67:6-21, 110:10-111:20.
25   [70] <u>Id.</u> at 63:15-67:5.
26   [71] <u>Id.</u> at 145:11-148:18, 160:13-167:6.
     [72] <u>Id.</u> at 122:25-130:1, 141:20-145:9, 179:18-181:11.
27   [73] <u>Id.</u> at 132:20-138:15, 186:16-191:20.
28   [74] <u>Id.</u> at 149:4-160:11.

1    Although Ms. Nordquist had much detail to give about the relevant

2   topics, Bryant's counsel chose to spent inordinate amounts of time on plainly

3   irrelevant matters such as whether members of the Design Team at Mattel were

4   considered to be "cute" or "not cute,"[75] and about an incident during which Carter

5   Bryant cried because a doll idea of his was not well received, focusing on issues

6   such as:  whether Bryant was "audibly sobbing;"[76] what kinds of sounds Bryant

7   made (whether he was sobbing, wailing, or making some other noise);[77] whether he

8   was "running" out of the room or "just moving quickly;"[78] how many feet long the

9   room was;[79] whether there was a big table in the room;[80] whether there was one

10   table in the room;[81] and whether the exit was "on one of the longer sides of the

11   rectangle or on one of the shorter sides."[82]

12    MGA's counsel also questioned Ms. Nordquist at length about matters

13   that had nothing to do with Ms. Nordquist's designated topics, including, for

14   example: preservation of emails and documents for this litigation;[83] matters relating

15   to Mattel's trade secrets claims;[84] and her familiarity with MY SCENE (including its

16   origins, target consumer, media brief, and marketing practices).[85]

17    <u>DIVA STARZ Witnesses and the Relevance of the DIVA STARZ</u>

18   <u>Project</u>.  Four witnesses identified in the motion, Joni Pratte, Kislap Ongchangco,

19   Rene Pasko and Robert Hudnut, were designated to testify as to two narrow aspects

20   of DIVA STARZ.  DIVA STARZ is a line of fashion dolls Mattel first released in

---

[75]  <u>Id.</u> at 115:8-116:3.

[76]  <u>Id.</u> at 83:22-25.

[77]  <u>Id.</u> at 84:3-19.

[78]  <u>Id.</u> at 85:12-14.

[79]  <u>Id.</u> at 85:16-86:13, 90:2-9.

[80]  <u>Id.</u> at 88:19.

[81]  <u>Id.</u> at 88:21, 90:14-15.

[82]  <u>Id.</u> at 90:25-91:13.

[83]  <u>Id.</u> at 197:23-210:11, 220:24-228:4.

[84]  <u>Id.</u> at 210:12-220:23.

07209/2217061.2

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

Exhibit __9__, Page __120__

1  2000, that included four different dolls with distinct personalities.[86]  Although DIVA

2  STARZ was a vast project, only two narrow aspects of it are relevant to this case:

3  certain DIVA STARZ drawings and certain names that were considered for the

4  project.  These included certain names such as "Chat Brats," "Brats," "Girlz,"

5  "Boyz," "Diva Girlz," "Little Brats," and "Bratty Little Sister"[87] and documents and

6  designs for the DIVA STARZ project which pre-date the release of Bratz and were

7  never publicly released, but which nonetheless share common elements with the

8  Bratz dolls.[88]

9          Mattel has never argued that MGA or Mr. Bryant had direct access to

10  electronic files relating to DIVA STARZ, but rather, that Paula Garcia (a former

11  Mattel employee who left to become MGA's Bratz project manager), Carter Bryant

12  and other former Mattel employees associated with MGA had access to DIVA

13  STARZ sketches, prototypes, and names based on the physical location of their

14  workspaces in the Design Center and on the personal involvement of Ms. Garcia and

15  other former Mattel employees in the DIVA STARZ project and their relationship

16  with others who worked on DIVA STARZ.  DIVA STARZ was in development in

17  the Mattel Design Center—the same physical location where Bryant worked in 1999

18  through October 2000.[89]  Anyone who had access to the Design Center (like

19  Mr. Bryant and Ms. Garcia) also had access to other projects being worked on in

20

21

22

23  [85]  Id. at 228:5-239:16.

    [86]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 89:3-23; Pasko Depo Tr., Proctor
24  Dec., Exh. 27, at 180:2-12, 188:17-189:9.

25  [87]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 106:24-107:7, 111:1-15;
    Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 33:14-22, 201:17-202:5.

26  [88]  See, e.g., documents Bates numbered M 0016585-M 0016586.001, M
    0016817, M 0016504, TP 0008, TP 0009 and TP 0011, Proctor Dec., Exh. 8.

27  [89]  See Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 15:2-18:2; see also

28  Pasko Depo Tr., Proctor Dec., Exh. 27, at 89:13-92:11.

1    that space, including DIVA STARZ.[90]  Ms. Garcia worked directly on the DIVA

2    STARZ project while she was at Mattel, and describes Maureen Mullen, the original

3    designer on DIVA STARZ, as one of her friends at Mattel.[91]  In fact, Ms. Garcia

4    hired Ms. Mullen as a contractor for MGA in 2000.[92]

5            Mattel told defendants that its 30(b)(6) witnesses would be testifying to

6    facts within their personal knowledge concerning DIVA STARZ, and defendants

7    never objected.[93]  Mattel's witnesses on DIVA STARZ testified as follows:

8            <u>Joni Pratte</u>:  Ms. Pratte is a Product Design Manager for Mattel and has

9    previously worked as a packaging designer on DIVA STARZ, Mini DIVA STARZ,

---

10   [90]    See e.g., Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 194:15-195:7; see

11   also Deposition Transcript of Ann Driskill, Volume I, dated December 15, 2004,

12   Proctor Dec., Exh. 14, at 205:3-16; Pratte Depo Tr., Proctor Dec., Exh. 26, at
     140:17-19; Nordquist Depo Tr., Proctor Dec., Exh. 28, at 179:8-17.

13   [91]    See Pasko Depo Tr., Proctor Dec., Exh. 27, at 42:13-42:20, 95:15-24; see also

14   Deposition Transcript of Paula Garcia, Volume I ("Garcia Depo Tr., Vol. I"), dated
     May 24, 2007, Proctor Dec., Exh. 15, at 193:1-16.

15   [92]    Garcia Depo Tr., Vol. I, Proctor Dec., Exh. 15, at 191:20-192:15.

16   [93]    Pasko Depo Tr., Proctor Dec., Exh. 27, at 10:23-11:12, 26:20-27:12; Pratte

17   Depo Tr., Proctor Dec., Exh. 26, at 8:16-9:6; Ongchangco Depo Tr., Proctor Dec.,
     Exh. 23, at 159:2-160:6; Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 92:7-

18   94:24.  MGA also did not contest the limited scope of Mattel's production of

19   documents related to the DIVA STARZ project.  See Mattel, Inc.'s Responses to
     MGA's First Set of Requests for the Production of Documents and Things, dated

20   March 7, 2005, at Responses to Request Nos. 131, 135, 137-139, Proctor Dec.,
     Exh. 9; see also Mattel's Supplemental Responses to MGA's First Set of Requests

21   for Production of Documents and Things, dated January 5, 2007, at Responses to

22   Request Nos. 132, 134 and 136, Proctor Dec., Exh. 10.  Although MGA has filed a
     motion to compel on this set of requests, MGA did not include any requests relating

23   to DIVA STARZ.  See Proctor Dec., ¶ 12.  To the contrary, MGA has admitted that

24   it does not want all of the documents and details concerning the DIVA STARZ
     project, telling the Discovery Master that it only seeks "documents relating to the

25   original artwork or work product that Mattel claims Bryant copied."  Reply of MGA

26   Entertainment, Inc. in Support of its Motion to Compel Mattel, Inc. to Supplement
     its Responses and Produce Documents Responsive to MGA's First Set of Requests

27   for the Production of Documents and Things, dated July 26, 2006, Proctor Dec.,

28   Exh. 11, at 18:1-3.

07209/2217061.2

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

Exhibit __9__, Page __22__

1   and other Mattel products.[94]  Ms. Pratte was designated to testify on topics 2-7, 8,

2   13, and 24,[95] and Mattel repeatedly told MGA and Bryant that Ms. Pratte would be

3   testifying as to her personal knowledge about DIVA STARZ.  MGA's and Bryant's

4   counsel readily accepted this fact.[96]  She testified from 10:00 a.m. until 5:00 p.m.

5   about (among other things):  the logo design and development of the DIVA STARZ

6   product;[97] the design of DIVA STARZ packaging dating back to at least

7   September/October 1999;[98] the design of Mini DIVA STARZ packaging;[99] and the

8   different names considered for the DIVA STARZ and Mini DIVA STARZ,

9   including "Girlz," "Diva Girlz," "Chat Girls" and "Chat Brats.[100]

10          She also testified about other issues that go to the designated topics

11   including, for example:  similarities she saw between the packaging for Bratz dolls

12   and the earlier-introduced DIVA STARZ packaging;[101] and her understanding of her

13   responsibility to inform her supervisor of any work she did outside Mattel and her

14   not having used Mattel resources to do work for something outside Mattel.[102]

15          Kislap Ongchangco:  Mr. Ongchangco designs toys for Mattel and

16   worked on the DIVA STARZ project.[103]  He was also designated to testify on topics

17   2-7, 8, 12, 13, 24, with the same limitations as Ms. Pratte.[104]  Like Ms. Pratte,

18   ───────────────

19   [94]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 9:14-24, 11:20-23, 15:18-16:2, 16:12-21, 57:5-8.

20   [95]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 7:20-9:6; 30(b)(6) Scheduling Hearing Tr., Proctor Dec., Exh. 33, at 9:17-20.

21   [96]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 8:16-25, 9:1-6.

22   [97]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 78:21-81:4.

23   [98]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 18:8-14, 21:7-22:13, 26:15-35:13.
     [99]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 205:22-206:19.

24   [100]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 36:10-21, 68:1-8, 106:24-107:7, 111:1-15.

25   [101]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 71:6-72:25, 81:5-84:4, 105:3-14.

26   [102]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 122:22-132:8, 133:1-137:15.

27   [103]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 11:3-14; 14:14-19.
     [104]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 159:2-160:3; 200:23-201:5;

28   30(b)(6) Scheduling Hearing Tr., Proctor Dec., Exh. 33, at 12:9-16.

-18-

1   Mr. Ongchangco testified from about 9:45 a.m. until 5:30 p.m.[105] about his

2   knowledge concerning the Linker drawings, namely, the circumstances under which

3   he had previously seen them at Mattel, when that occurred, and the similarities

4   between the drawings and the Bratz dolls.[106]  He also testified as to DIVA STARZ

5   having been referred to internally as "Chat Girls," and Mini DIVA STARZ having

6   been referred to as "Little Brats," and how those names were considered for the final

7   product.[107]  He testified about how the names "Brats" and "Chat Brats" were

8   considered for DIVA STARZ and Mini DIVA STARZ.[108]  He testified about his

9   work on Mini DIVA STARZ;[109] the involvement of Maureen Mullen (as

10  preliminary designer), and Rene Pasko (as the accessories designer) on DIVA

11  STARZ;[110] the development of Mini DIVA STARZ for public sale;[111] and the

12  differences between different "generations" of Mini DIVA STARZ.[112]

13          Rene Pasko:  Ms. Pasko was a Senior Designer when she began

14  working on DIVA STARZ, and was designated on topics 2-8, 11-13 and 24.[113]

15  Ms. Pasko gave many details about DIVA STARZ project, including, for example:

16  the nature and scope of her work on DIVA STARZ; the use of other names for the

17  DIVA STARZ project including "Chat Girls" and "Cool Talk'n Teens"; the approval

18  process and product development milestones; drawings and illustrations related to

19

20  [105]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 5:5-7; 277:15-17.
    [106]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 177:12-191:9.
21  [107]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 33:14-22; 55:4-14; 201:6-
22  16.
    [108]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 201:17-202:5.
23  [109]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 35:10-37:2.
    [110]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 15:2-22; 21:10-17; 26:5-20;
24  58:6-59:22.
25  [111]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 24:24-25:16.
    [112]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 65:18-67:8.
26  [113]  Pasko Depo Tr., Proctor Dec., Exh. 27, at 29:13-17, 10:23-11:12; 4/11/07
27  letter, Corey Dec., Exh. 3, at 1; 30(b)(6) Scheduling Hearing Tr., Proctor Dec.,
28  Exh. 33, at 13:10.

1  DIVA STARZ; comparisons between physical DIVA STARZ dolls and illustrations

2  and Bratz dolls; and her display of DIVA STARZ illustrations on her cubicle walls

3  in Mattel's Design Center.[114]

4      MGA's counsel took so long with Ms. Pasko that Bryant's counsel did

5  not even get an opportunity to question her, despite her deposition lasting from

6  about 10:00 a.m. until after 7:00 p.m.[115]  Accordingly, Mattel's counsel offered to

7  make her available again during the deposition and offered four different and

8  definite dates for her continued deposition in writing just two days later.[116]  Instead

9  of accepting one of those offered dates or responding to the letter of Mattel's

10  counsel, MGA and Bryant instead filed this motion.[117]

11      Robert Hudnut:  Mr. Hudnut is Mattel's Vice President, Executive

12  Producer Mattel Entertainment, and was designated to testify as to limited aspects of

13  topics 2-7, 8, 11, 13, 24, namely, his work on the scripts and pitch for a potential

14  DIVA STARZ television show.[118]  Mr. Hudnut testified that he first became

15  involved in the DIVA STARZ Entertainment project in late 1999 or early 2000;[119]

16  gave details about a  brainstorming meeting he attended regarding the creation of

17  DIVA STARZ story content;[120] the creation of the DIVA STARZ "Character

18  Bible";[121] the preparation and results of a pitch to network television executives;

19

20  [114]  Pasko Depo Tr., Proctor Dec., Exh. 27, at 183:3-186:21.
   [115]  Pasko Depo Tr., Proctor Dec., Exh. 27, at 5:5-16, 212:25-213:18.

21  [116]  Letter from Michael Zeller to Diana Torres and John Trinidad, dated

22  June 15, 2007 ("6/15/07 letter"), Zeller Dec., Exh. 2.
   [117]  Zeller Dec., ¶ 4.

23  [118]  4/11/07 letter, Corey Dec., Exh. 3, at 1; Hudnut Depo Tr., Vol. I, Proctor

24  Dec., Exh. 24, at 92:17-25, 93:15-16, 93:13-94:2, 97:13-21.  Indeed, counsel for
   Mattel noted at the deposition that, "It's only the portions of those topics that deal

25  with his knowledge as to the scripts that might be pertinent to those topics.  So it's

26  not those entire topics." Id. at 93:24-94:2.
   [119]  Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 129:3-6.

27  [120]  Id. at 129:18-141:20.
   [121]  Id. at 141:21-144:14.

28

Exhibit 9, Page 125

1    discussions with Maureen Mullen concerning the television show;[122] and the multi-

2    ethnic nature of the DIVA STARZ dolls, their different characters, their oversized

3    heads, feet and big eyes.[123]

4         MGA and Bryant chastise Mr. Hudnut for having "childcare issues" as

5    if he had somehow left his deposition early.[124] But Mr. Hudnut's deposition ran

6    from 9:30 a.m. until 4:30 p.m. on the first day and then he appeared for a second day

7    of deposition, stating that he did not need to leave at any particular time.[125] After 45

8    minutes of questioning Mr. Hudnut on the second day, none of which had to do with

9    the topic on which Mr. Hudnut was designated, counsel stated he had no further

10    questions.[126]

11                  **Argument**

12   **I.**     **THE MOTION SHOULD BE DENIED SUMMARILY BECAUSE MGA**

13         **AND BRYANT AGAIN FAILED TO MEET AND CONFER BEFORE**

14         **FILING IT**

15         Defendants claim that the parties met and conferred on July 10, 2007,

16    but that is false.  On July 2, 2007, MGA and Bryant requested that Mattel meet and

17    confer regarding Mattel's Third Set of Interrogatories and its supposedly "abusive"

18

19     [122]   Id. at 151:4-152:3, 160:14-161:2.

20     [123]   Id. at 173:24-174:6.  Mr. Hudnut also testified about his having negotiated a

21   side agreement to his Confidential Information and Inventions Agreement which clarified what he had created prior to starting again with Mattel to ensure there were

22   no conflicts of interest.  Id. at 209:2-220:3.

    [124]   Motion at 5 n.11.

23     [125]   Deposition of Robert Hudnut, Volume II, dated August 20, 2007 ("Hudnut

24   Depo Tr., Vol. II"), Proctor Dec., Exh. 25, at 244:15-17:

25         MR. PAGE:       Just to check, do you need to leave at any

26                       particular time to pick up children or anything?

27         MR. HUDNUT:    Today, no.

28     [126]   Id. at 243:4-6, 269:23-24.

-21-

Exhibit __9__, Page _126_

1  discovery practices.[127]  As to Mattel's purportedly "abusive" discovery practices,

2  defendants only stated that "Mattel has engaged in a multitude of discovery abuses,

3  including improper use of the Rule 30(b)(6) deposition notice procedure to avoid

4  noticing witnesses in their individual capacity, bandying, and exceeding the page

5  limits on motions filed before the Discovery Master, among others."[128]  Defendants

6  provided <u>no</u> further detail regarding their claims of Mattel's alleged "bandying" and

7  other purported discovery abuses.[129]

8          During a conference on July 10, 2007, the parties discussed defendants'

9  separate motion regarding Mattel's interrogatories, but Mattel explained that it could

10  not meet and confer on defendants' allegations regarding Mattel's "bandying"

11  because defendants failed to explain their concerns, or identify topics or witnesses at

12  issue.[130]  In response, defendants identified Kislap Ongchangco, as an allegedly

13  unprepared witness.[131]  Counsel for Mattel explained to defendants that because he

14  was not involved in Mr. Ongchangco's deposition and had no prior notice that

15  Mr. Ongchangco's deposition (or any other deposition) was at issue, he could not

16  discuss the matter at that time.[132]  Counsel for Mattel requested that defendants

17  provide a letter that complied with <u>Local Rule</u> 37-1 and the Discovery Master

18  Stipulation and that specified which 30(b)(6) witnesses defendants believed were

19  not sufficiently knowledgeable, what aspects of their testimony defendants found to

20  be troublesome, and how Mattel engaged in supposed bandying.[133]

21          The next day, July 11, 2007, MGA wrote to Mattel and explained that

22  "MGA is concerned about the testimony of Mattel's 30(b)(6) witnesses in general,

23

24  [127]  Letter from James Jenal to Dylan Proctor, dated July 2, 2007, Proctor Dec., Exh. 1.

25  [128]  <u>Id.</u>

    [129]  <u>Id.</u>

26  [130]  Proctor Dec., ¶ 3.

27  [131]  <u>Id.</u>

    [132]  <u>Id.</u>

28

including, but not limited to the testimony of Julia Jensen, Kislap Ongchangco, Rene Pasko, Joni Pratte, and Sandy Yonemoto with respect to topics 2-8 and 41 of Carter Bryant's Notice of Rule 30(b)(6) depositions. . . MGA is seeking for Mattel to produce a properly educated 30(b)(6) witness who can testify competently as to Mattel's knowledge on these topics."[134]  Topics 11-13, 22, 24, and 54-56 were not mentioned.  Nor were witnesses Robert Hudnut, Jill Nordquist or Julia Marine.

On July 12, 2007, the next day,  MGA wrote another letter to Mattel, promising to send a "second letter further detailing the discovery abuses for which MGA and Bryant intend to seek a protective order absent resolution of these issues."[135]  Mattel responded to both letters on July 15, 2007 and explained that defendants had yet to provide sufficient notice of what aspects of the topics they believed needed to be further addressed or what further testimony should be offered by Mattel.[136]  Mattel pointed out that in its most recent letter, MGA promised to send a proper meet and confer letter which would enable Mattel to prepare for the meet and confer, and Mattel committed to meet and confer on these matters once defendants provided the promised second meet and confer letter.[137]  MGA never sent the letter it promised to send and never responded to Mattel's July 15 letter.[138] Instead, nearly two months later, it filed this motion.

MGA and Bryant also failed to meet and confer regarding Julia Jensen's deposition on topic No. 41.  On August 11, 2007, MGA demanded that Mattel designate Jules Andres as a Rule 30(b)(6) witness regarding Topic No. 41 of

---

[133]  Id.
[134]  Letter from William Charron to Dylan Proctor, dated July 11, 2007, Proctor Dec., Exh. 2.
[135]  Letter from Jennifer Glad to Dylan Proctor, dated July 12, 2007, Proctor Dec., Exh. 3.
[136]  Letter from Dylan Proctor to Jennifer Glad and William Charron, dated July 15, 2007, Proctor Dec., Exh. 4.
[137]  Id.
[138]  Proctor Dec., ¶ 6.

1 | Carter Bryant's Rule 30(b)(6) Notice of Deposition.[139]  Counsel for Mattel replied on

2 | August 21, reminding MGA that Mattel had offered Julia Jenson as its topic 41

3 | witness instead of Ms. Andres, and that MGA and Bryant had accepted that offer.[140]

4 | Mattel offered to meet and confer with defendants on Topic No. 41 once defendants

5 | identified the specific information to which MGA and Bryant claimed they are

6 | entitled that was asked for and not provided by Ms. Jensen.[141]  Rather than respond

7 | to this Mattel letter,[142] defendants filed this motion.

8 |      Likewise, defendants failed to meet and confer regarding Rene Pasko's

9 | deposition.  Defendants spent so much time questioning Ms. Pasko that they did not

10 | finish her deposition the first day even though she testified from 10:00 a.m. until

11 | 7:00 p.m.  On June 15, 2007, two days later, Mattel offered four additional dates for

12 | Ms. Pasko's continued deposition.[143]  Again, rather than respond, defendants filed

13 | this motion.

14 |      Local Rule 37-1 and the Discovery Stipulation plainly require

15 | defendants to meet and confer with Mattel before filing a motion to compel.  This

16 | motion raises issues, topics, and witnesses that were never identified during any

17 | meet and confer, and seeks  substantial sanctions, both monetary and evidentiary,

18 | that were never mentioned either.   The Court should reject defendants' motion for

19 | their false certification to the Court that they met and conferred with Mattel before

20 | filing and for their failure to comply with the requirements of the Local Rules and

21 | the Discovery Master Stipulation.  Ward v. Circus Casinos, Inc., 473 F.3d 994, 1000

22 | (9th Cir. 2007); Waters v. Weyerhaeuser Mortgage Co., 582 F.2d 503, 507 (9th Cir.

23 | 1978) (upholding trial court's denial of motion to amend for violation of local rule).

24 |

25 |

26 | [139]  8/11/07 email, Proctor Dec., Exh. 6.

26 | [140]  8/21/07 letter, Proctor Dec., Exh. 7.

27 | [141]  Id.

28 | [142]  Proctor Dec., ¶ 9.

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

Exhibit __9__, Page 129

II. **MATTEL'S WITNESS PREPARATION AND DESIGNATION WAS ENTIRELY APPROPRIATE**

    A.  **Rule 30(b)(6) Does Not Require A Designee to Personally Interview Witnesses or Review Documents; Preparation by Counsel Is Sufficient.**

MGA and Bryant claim that Ms. Yonemoto, Mr. Hudnut, Ms. Pratte, Ms. Jensen, Ms. Pasko and Mr. Ongchangco were not properly prepared because they did not personally interview witnesses and did not review enough documents.[144] But as defendants know, each of these witnesses met with counsel, sometimes on numerous occasions, to prepare for their depositions, and that is enough under the Rules. Rule 30(b)(6) simply does not require witness to speak with anyone other than counsel, and it imposes no obligation upon a designee to personally interview witnesses or review documents. See Reichhold, Inc. v. U.S. Metal Refining Co., No. CIV 03-453, 2007 WL 1428559, at *8 (D.N.J. May 10, 2007) (rejecting argument that witness was not properly prepared because he did not personally conduct interviews (other than meeting with counsel), and instead finding that "Because Rule 30(b)(6) does not require that the corporate designee personally conduct interviews, and requires only that he 'testify as to matters known or reasonably available to the organization,' Defendant has not failed to comply with the Rule.") (quotation and internal citation omitted). That these four witnesses did not engage in a personal fact-finding mission simply has no bearing on their competence as 30(b)(6) witnesses.

Furthermore, Mattel repeatedly told MGA and Bryant that its 30(b)(6) witnesses would be testifying as to their personal knowledge relevant to the

---

[143]  6/15/07 letter, Zeller Dec., Exh. 2.
[144]  Motion at 6-8, 10, 12. MGA and Bryant make no such claim as to Ms. Nordquist or Ms. Marine.

1  designated topics, and nothing more.[145]  MGA and Bryant acknowledged and agreed

2  to the designations on that basis and cannot now be heard to complain that the

3  witnesses testified as agreed.[146]

4      **B.**    **Designating Multiple Witnesses for a Topic Under Rule 30(b)(6) Is**

5             **Entirely Acceptable.**

6

7        MGA and Bryant also accuse Mattel of acting improperly for having

8  designated more than one witness on many of the 30(b)(6) topics at issue here.[147]

9  But MGA and Bryant expressly agreed (on multiple occasions) that Mattel had the

10  option to do so, stating: "Mattel will reserve the right to produce one or more

11  witnesses on a single category, if the scope of the request is broad enough that it

12  would require it.[148]

13        MGA and Bryant's agreement aside, the <u>Federal Rules</u> specifically

14  contemplate that parties may designate multiple witnesses per topic.  The cases cited

15  in MGA's and Bryant's own motion make this very point.  See <u>Alexander v. FBI</u>,

16  186 F.R.D. 137, 141 (D.D.C. 1998) ("the designating party is under the duty to

17  designate more than one deponent if it would be necessary to do so in order to

18  respond to the relevant areas of inquiry that are specified with reasonable

19  particularity by the [deposing party]") (cited by MGA and Bryant, Motion at 19, fns.

20  73, 79, 88, 90); <u>Banks v. Office of the Senate Sergeant-at-Arms</u>, 241 F.R.D. 370,

21  373 (D.D.C. 2007) ("[a] responding party must designate multiple deponents if more

22    [145]  Zeller Dec., ¶ 2; <u>See e.g.</u>, Pratte Depo Tr., Proctor Dec., Exh. 26, at 8:16-

23  9:6; Pasko Depo Tr., Proctor Dec., Exh. 27, at 10:23-11:12, 26:20-27:12; Yonemoto
Depo Tr., Proctor Dec., Exh. 22, at 37:7-15; Ongchangco Depo Tr., Proctor Dec.,

24  Exh. 23, at 159:2-160:6; Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 92:7-

25  94:24.
  [146]  <u>See e.g.</u>, Pratte Depo Tr., Proctor Dec., Exh. 26, at 8:16-9:6; Pasko Depo Tr.,

26  Proctor Dec., Exh. 27, at 10:23-11:12; Ongchangco Depo Tr., Proctor Dec., Exh. 23,

27  at 159:2-160:6; Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 92:7-94:24.
  [147]  Motion at 4:23-5:12, 17:16-18, 22:11-24:4, 24:18-20.

28    [148]  3/15/05 Tr., Zeller Dec., Exh. 1, at 178:21-24.

07209/2217061.2

1 │ than one is necessary to respond to all designated topics") (cited by MGA and

2 │ Bryant, Motion at 21, fn. 80).  See also U.S. ex rel Fago v. M & T Mortgage Corp.,

3 │ 235 F.R.D. 11, 22-23 (D.D.C. 2006) ("the responding entity must designate more

4 │ than one deponent if multiple deponents are necessary to respond to all of the

5 │ relevant areas of inquiry").  Mattel acted entirely appropriately in designating

6 │ multiple witnesses to cover the relevant portions of the deposition topics.

7 │

8 │ **III.   MATTEL'S 30(B)(6) DESIGNEES WERE PREPARED TO AND DID**

9 │ **TESTIFY ON THEIR DESIGNATED TOPICS--MGA AND BRYANT**

10 │ **SIMPLY DO NOT LIKE WHAT THEY HAD TO SAY.**

11 │           Rather than identify any relevant areas of testimony that they have been

12 │ denied, defendants instead simply isolate any "I don't know" answers they could

13 │ find in the depositions of Mattel's 30(b)(6) witnesses.  But those answers responded

14 │ to questions that were irrelevant, called for a legal opinion, were outside the witness'

15 │ designation, or were previously covered by another Mattel witness.  Mattel has done

16 │ its best to identify what defendants believe they have been denied (which was not an

17 │ easy task because defendants did not set out those issues in any organized way in

18 │ their motion).  Each of those issues, as best as Mattel could identify them, is

19 │ discussed below:

20 │           •      "Bryant's involvement in the creation of the Bratz dolls"

21 │ (Ongchangco):[149]  Defendants complain that Mr. Ongchangco could not testify about

22 │ this topic aside from "'allegations' he heard from unnamed and unknown Mattel

23 │ employees that Bryant had either copied DIVA STARZ or submitted drawings to

24 │ MGA that were allegedly created while he was still at Mattel."[150]  But this is not

25 │ anything about which Mr. Ongchangco was supposed to testify.  Bryant's

26 │ involvement is at the center of this lawsuit, and it is hard to see why Defendants

27 │

─────────────────────────────

[149]   Motion at 7:13-14.

28 │

1 | think Mr. Ongchangco would have facts about the very activities that Bryant and

2 | MGA were trying so hard to conceal from Mattel. Nor is that a topic Mattel had

3 | ever agreed to produce a witness on, given that the facts related to that matter are

4 | known to Mattel from the discovery it has received in this case.

5 | In any event, numerous other witnesses have already testified about

6 | Bryant's involvement, including, for example: Carter Bryant,[151] Isaac Larian,[152]

7 | Paula Garcia,[153] Steven Linker[154] and Anna Rhee.[155]

8 | • "Personal knowledge about Carter Bryant" (Ongchangco,

9 | Hudnut, Pratte):[156] Defendants do not specify what about Carter Bryant they believe

10 | these witnesses should have known, but these witnesses were not designated to

11 | testify about Carter Bryant anyhow. They were designated to testify on one or both

12 | of the two narrow topics relating to DIVA STARZ, i.e., the Steve Linker drawings

13 | and the DIVA STARZ project names, and that is precisely what they did.[157]

14

15

---

16 | [150] Motion at 7:14-17.

17 | [151] See e.g., Deposition of Carter Bryant, Volume I, dated November 4, 2004, Proctor Dec., Exh. 16, at 8:15-9:6, 21:25-22:3, 105:19-107:1.

18 | [152] See e.g., Deposition of Isaac Larian, Proctor Dec., Exh. 17, dated July 18, 2006, at 107:23-108:8, 111:3-112:21, 114:18-119:2, 125:4-126:3.

19 | [153] See e.g., Garcia Depo Tr., Vol. 1, Proctor Dec., Exh. 15, at 232:23-233:24, 239:10-240:25, 241:25-244:10, 257:10-20, 265:7-268:25.

20

21 | [154] See e.g., Linker Depo Tr., Proctor Dec., Exh. 21, at 56:21-63:15, 76:21-83:21.

22 | [155] See e.g., Deposition of Anna Rhee, dated February 3, 2005, Proctor Dec., Exh. 18, at 107:16-108:12, 109:18-110:9, 112:5-114:15, 126:25-128:12, 141:11-142:15, 143:12-144:1.

23

24 | [156] Motion at 7:20-9:1.

25 | [157] See e.g., Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 160:15-161:25, 164:3-166:8, 169:8-14, 178:10-179:23, 185:6-20, 198:3-199:22 (testimony

26 | regarding Steve Linker drawings), 201:17-210:24, 215:10-25 (testimony regarding DIVA STARZ project names); Pratte Depo Tr., Proctor Dec., Exh. 26, at 100:2-103:5 (testimony regarding Linker drawings), 35:10-39:2, 43:15-18, 45:2-16, 50:15-

27

28 | 51:23, 67:10-68:16, 69:4-70:10 (testimony regarding DIVA STARZ project names).

1       •    <u>Whether Bryant was ever exposed to the name "Bratz" (as a</u>

2 <u>name used for the DIVA STARZ project) while a Mattel employee (Pratte)</u>:[158]

3 Mattel has never argued that Mr. Bryant had direct exposure to the name "Bratz"

4 while a Mattel employee. Rather, Mattel contends that Bryant, Paula Garcia and

5 others had access to DIVA STARZ by virtue of their access to the Mattel Design

6 Center, by Ms. Garcia's and other former employees' direct work on the project, and

7 by Ms. Garcia's and other former employees' close relationships with other persons

8 who worked on the DIVA STARZ project. The fact that Ms. Pratte did not talk

9 about Bryant's "exposure" to the name Bratz while a Mattel employee is a non-

10 starter. In any event, Ms. Pratte testified about the name "Brats" having been

11 considered by Mattel.[159]

12       •    <u>Facts about Bryant's breach of duty under Mattel's Employee</u>

13 <u>Confidential Information and Inventions Agreement (Yonemoto)</u>:[160] Defendants

14 complain that Ms. Yonemoto did not testify about "basic facts" on this subject

15 matter, but they simply ignore Ms. Yonemoto's designation. She was produced to

16 talk about Bryant's exit interview--a topic that clearly pertains to his breach of duty

17 under the Inventions Agreement.[161] Ms. Yonemoto was not supposed to testify to

18 "Bryant's breach" of the Inventions Agreement more broadly, so defendants have no

19 basis to complain.

20       The questions defendants complain that Ms. Yonemoto could not

21 answer were covered by other witnesses or were improper in any event. For

22 example, defendants asked Ms. Yonemoto: 1) when Mattel stopped using a

23 particular form of Confidential Information and Inventions Agreement;[162] 2)

24

---

25 [158] Motion at 23:2-11.

    [159] Pratte Depo Tr., Proctor Dec., Exh. 26, at 36:10-46:19, 48:20-58:10, 67:23-

26 70:10, 199:2-12.

    [160] Motion at 8:7-8.

27 [161] Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 37:7-9.

28 [162] Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 39:1-12.

07209/2217061.2

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

Exhibit  9 , Page 134

1  whether current employees were ever asked to sign a "new and different" form of

2  Confidential Information and Inventions Agreement;[163] 3) if she ever advised

3  employees regarding the provisions of Section 2870 of the California Labor Code as

4  described in the Employee Confidential Information and Inventions Agreement;[164]

5  and 4) whether Ms. Yonemoto ever told exiting employees that there were

6  "exceptions to the kinds of things that were covered under the Employee

7  Confidential Information and Inventions Agreement as pertained to what things the

8  employee had to assign to Mattel."[165]  To the extent these questions are not

9  grounded in a legal conclusion or simply unintelligible, defendants have already

10  gotten information on them.  For example, Lissa Freed, another of Mattel's 30(b)(6)

11  designees, testified about which Confidential Information and Inventions

12  Agreements were used by Mattel from 1995 to the present, including Exhibit 25,

13  which was the particular Confidential Information and Inventions Agreement

14  defendants complain Yonemoto was not able to testify about.[166]  Freed also testified

15  about the Confidential Information and Inventions Agreement that current

16  employees were asked to sign.[167]  Similarly, Alan Kaye testified as to whether

17  Mattel advised employees as to Section 2870 of the California Labor Code.[168]

18  Mattel could have pointed all of this out to defendants had they met and conferred

19  on these questions and answers, but they did not do so.

20

21

22

---

[163]   Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 39:20-24.
[164]   Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 96:10-103:2.
[165]   Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 101:8-103:2.
[166]   Deposition Transcript of Lissa Freed ("Freed Depo Tr."), dated May 3, 2007, Proctor Dec., Exh. 19, at 31:10-33:2, 49:5-53:15, 55:2-8, 56:13-24, 57:19-59:9, 60:13-22.
[167]   Freed Depo Tr., Proctor Dec., Exh. 19, at 27:25-29:1, 55:21-56:8.
[168]   Deposition Transcript of Alan Kaye, dated December 10, 2004, Proctor Dec., Exh. 20, at 205:4-206:16, 207:13-208:20.

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

Exhibit __9__, Page_135_

1    • Knowledge about the Conflict of Interest Questionnaire
2    (Yonemoto):[169] The only questions defendants asked Ms. Yonemoto regarding this
3    form dealt with "Mattel's practices with respect to following up on information
4    provided in a Conflict of Interest Questionnaire,"[170] nothing more. Just because
5    Ms. Yonemoto does not know what Mattel's "practices" were regarding "following
6    up" on this particular form is meaningless. Bryant's counsel also did not ask
7    Ms. Yonemoto more generally about her knowledge or use of the form in her duties
8    at Mattel, so counsel would have no idea what Ms. Yonemoto knew or did not know
9    about the form. Ms. Yonemoto tried to describe how she uses the form in her job to
10   describe to starting employees their obligations relating to the form, but counsel cut
11   her off.[171] In any event, defendants cannot complain of being deprived of
12   information concerning the Conflict of Interest Questionnaire because Lissa Freed,
13   another Mattel witness, has already testified about it at length.[172]

14    • Information regarding Bryant's exit interview "other than what
15   appeared on the face of Mattel's personnel records" (Yonemoto):[173] Ms. Yonemoto
16   testified as to facts reasonably available to her since she could not remember
17   Bryant's exit interview amongst the 50 she has conducted at Mattel.[174] There is no
18   one else at Mattel who has any knowledge about it because she and Bryant were the
19   only ones there.[175] Ms. Yonemoto's reliance on her handwritten notes on Bryant's
20   exit interview form and her knowledge of exit interview practices was proper. That
21   is precisely what those records are for in the first place.

22

23   _____
[169] Motion at 23:12-18.
24   [170] Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 109:1-113:4.
25   [171] Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 118:22-119:21.
     [172] Freed Depo Tr., Proctor Dec., Exh. 19, at 24:24-27:23, 33:5-35:25, 73:13-
26   75:9.
     [173] Motion at 14:13-15.
27   [174] Yonemoto Depo. Tr., Proctor Dec., Exh. 22, at 44:17-45:11, 56:21-59:18.
28   [175] Yonemoto Depo. Tr., Proctor Dec., Exh. 22, at 60:10-17.

Exhibit 9, Page 136

1  • When the DIVA STARZ project was first released

2  (Ongchangco);[176] when the DIVA STARZ project began or who conceived of it

3  (Pasko, Ongchangco);[177] and the origins and inspiration for DIVA STARZ

4  (Hudnut).[178]  As explained above, DIVA STARZ (and Mini DIVA STARZ) are

5  relevant only because certain DIVA STARZ drawings and names that were

6  considered for the project share common elements with Bratz.  Defendants complain

7  that the witnesses indicated they could not testify about the particular facts listed

8  above, but Mattel never agreed to provide a witness on those particular issues, and

9  those issues are irrelevant to the narrow DIVA STARZ issues in this case.[179]

10  Besides, Mr. Ongchangco in fact testified about the time frames within which the

11  name "Brats" was considered;[180] identified many of the key people involved with the

12  project;[181] and testified about the conception and development of the project.[182]

13  Other witnesses testified about this also, and the timing of Mattel's consideration of

14  the relevant names and the creation of the relevant designs are specifically reflected

15

16

17

_____

18  [176]  Motion at 9:14-15.
   [177]  Motion at 10:9-11.
19  [178]  Motion at 11:1-2.
   [179]  Moreover, Ms. Pasko stated that she began working on DIVA STARZ in late
20  1998 to early 1999 time frame, a time that far pre-dates the launch of Bratz, so how
21  much earlier Mattel was working on DIVA STARZ is meaningless.  Pasko Depo
22  Tr., Proctor Dec., Exh. 27, at 28:21-29:4.
   [180]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 54:17-56:4, 201:17-210:24,
23  215:10-25.
   [181]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 18:21-19:16, 21:13-17,
24  26:2-22, 50:24-51:24, 54:1-16.  The fact that Mr. Ongchangco did not recall having
25  a conversation with Bryant (Motion at 8:3-5) is, of course, completely irrelevant
26  since Mr. Ongchangco did not purport to work with Bryant and was not designated
27  to testify about Bryant's work at Mattel.
   [182]  E.g., Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 58:6-62:24, 65:18-
28  68:4, 139:10-20.

1  in documents that defendants do not contest.[183]  Indeed, virtually all of the

2  depositions of Hudnut and Pratte related to the DIVA STARZ, as did large sections

3  of the deposition of Linker

4       •  The "conception" of Mini DIVA STARZ and when the Mini

5  DIVA STARZ project ended (Ongchangco):[184]  Again, the conception and end date

6  for the Mini DIVA STARZ dolls is not relevant to this case, and Mattel did not

7  agree to provide a witness to testify about those issues.  Mr. Ongchango was

8  designated to and did testify about names Mattel considered for the project,

9  including "Brats," during the 1999 time frame.[185]  He also testified about the

10  development of Mini DIVA STARZ for public sale;[186] and the differences between

11  different "generations" of Mini DIVA STARZ.[187]

12       •  Whether DIVA STARZ was a "fashion doll concept

13  (Hudnut):"[188]  That Mr. Hudnut would not say whether DIVA STARZ was a

14  "fashion doll concept" is completely irrelevant.  He was designated to testify about

15  names that Mattel used - such as "Boyz" - in the DIVA STARZ Entertainment

16  scripts and he did just that.  Besides, when Mr. Hudnut tried to explain how DIVA

17  STARZ has fashion doll aspects, counsel cut him off and then changed the

18  subject.[189]

19

20  [183]  See, e.g., Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 167:24-171:6;

21  Pratte Depo Tr., Proctor Dec., Exh. 26, at 75:20-81:4; Linker Depo Tr., Proctor
Dec., Exh. 21, at 14:5-16:23; Pasko Depo Tr., Proctor Dec., Exh. 27, at 89:8-99:21.

22  [184]  Motion at 14:4-10.

23  [185]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 33:10-22, 54:17-56:4,
201:17-210:24, 215:10-25.

24  [186]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 24:24-25:16.

25  [187]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 65:18-67:8.
[188]  Motion at 10:21-22.

26  [189]  Mr. Hudnut testified that the DIVA STARZ "had lots of fashionable

27  elements to it and when I say them having plastic clothes that you can put on and
off, that's certainly a fashion doll play pattern, long beautiful hair to comb and play

28  with, so. . . . " Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 177:7-13.  Mr.
(footnote continued)

1    • How the Name DIVA STARZ was chosen (Hudnut); how many

2    names were considered for DIVA STARZ (Ongchangco):[190]  Mr. Hudnut was not

3    designated to testify about the selection of the name for DIVA STARZ dolls, and

4    Mr. Ongchangco was not designated to testify about the particular number of names

5    considered.[191]  Defendants received voluminous testimony about the relevant names

6    that Mattel considered for DIVA STARZ dolls from Mr. Ongchangco, Ms. Pratte,

7    and Ms. Pasko.[192]

8    • The "definitive" list of individuals present at meetings at which

9    the name for the DIVA STARZ project was discussed (Ongchangco):[193]

10    Mr. Ongchangco testified thoroughly on the subject of the relevant DIVA STARZ

11    names, and described who he thought was present at meetings to the extent he could

12    recall, including, for example, Joni Pratte from Packaging, Maureen Mullen from

13    Preliminary Design, Sue Davis from Packaging and possibly Galit Reisman and

14    Noriko Sata from Marketing.[194]  Ms. Pratte also testified about the individuals

15    present at those meetings, including, Steve Linker, Liz Hogan, Maureen Mullen and

16    Richard Oesterheld from Copywriting.[195]  Defendants have certainly received

17

18    _____

19    Hudnut was unable to finish his answer because counsel interrupted him before he finished his answer, and moved on. Id. at 177:13-18.

20    [190]  Motion at 11:15-16.

21    [191]  4/11/07 letter, Corey Dec., Exh. 3, at 1; Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 92:17-25; 93:15-16; 93:24-94:2, 97:13-21.

22    [192]  See e.g., Ongchangco Depo Tr., Proctor Dec., Exh, 23, at 32:12-33:1, 33:14-

23    22, 54:17-56:4, 201:17-210:24, 215:7-25 (testimony regarding DIVA STARZ project names); Pratte Depo Tr., Proctor Dec., Exh. 26, at 36:10-39:2, 43:15-18,

24    45:2-16, 50:15-51:23, 67:10-68:16, 69:4-70:10 (testimony regarding DIVA STARZ project names); Pasko Depo Tr., Proctor Dec., Exh. 27, at 91:14-92:20, 96:14-97:12,

25    (testimony regarding DIVA STARZ project names).

26    [193]  Motion at 11:18-20.

27    [194]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 211:20-214:2, 215:22-217:16, 232:6-234:24.

28    [195]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 38:16-39:22, 42:2-43:2, 61:8-62:4.

Exhibit _9_, Page _139_

1 testimony from Mattel on this issue, and whether the list of individuals is

2 "definitive" or not is irrelevant.

3     •   The unidentified sources of statements attributed to Mattel or ex-

4 Mattel employees in a Wall Street Journal article (Jensen):[196]  Mattel specifically

5 told defendants that it (Mattel) does not know the identities of these unidentified

6 sources and that its witness (who turned out to be Ms. Jensen) would so testify.[197]

7 Defendants acknowledged all of this on the record.[198]

8     •   Jill Nordquist:  MGA and Bryant do not specify any complaint at

9 all about Ms. Nordquist's testimony.  Her name is mentioned at page 5 of the

10 Motion, but defendants do not criticize her preparation, her testimony, and do not

11 identify any information they believe she should have testified about.  The only hint

12 of what defendants may have intended to (but did not) argue regarding

13 Ms. Nordquist is from the portions of her deposition quoted in their so-called

14 Separate Statement.[199]  But those questions and answers go to the sort of mind-

15 numbing detail that Bryant's attorney pursued during the entire deposition.  Ms.

16 Nordquist's lack of knowledge about work Bryant did before joining Mattel,[200] about

17

18   [196]  Motion at 12:16-13:2.

19   [197]  5/13/05 letter, Corey Dec., Exh. 1, at 2; 3/15/05 Tr., Zeller Dec., Exh. 1, at 353:9-23; 354:19-355:21.

20   [198]  3/15/05 Tr., Zeller Dec., Exh. 1, at 356:12-15; 357:17-24; Jensen Depo Tr., Proctor Dec., Exh. 29, at 22:23-23:12.  Ms. Jensen was very knowledgeable about

21 the article, as she was the one who initiated contact with the Wall Street Journal and had many conversations with the reporter about the article. Jensen Depo Tr., Proctor

22 Dec., Exh. 29, at 25:21-26:9, 39:3-40:15, 50:3-52:4, 52:18-56:10, 57:17-65:11,

23 65:12-67:5, 67:6-72:14.

24   [199]  MGA and Bryant purport to have filed a "Separate Statement," but the document is nothing more than a regurgitation of the deposition testimony cited in

25 the moving papers. It does not lay out MGA and Bryant's arguments or the

26 particular legal issues to be decided by the Court. Mattel files herewith its Objections to the Defendants' Separate Statement and has dealt with defendants'

27 failure to specify their arguments as best it could.

28   [200]  Separate Statement at 11:23-26; 14:9-15:7.

-35-

Exhibit __9__, Page 140

1  who chose Carter Bryant to have his name associated with the Grand Entrance

2  Doll,[201] and about Mattel's general "practice" where an employee leaves but will not

3  say he or she is going to a competitor,[202] is irrelevant.

4          •       Julia Marine.  Mattel gave the best information it had available

5  about the Zeus system during the time periods at issue given that the employees who

6  handled the system during the relevant time period have since left the company.[203]

7  Given the detail that Mattel has provided concerning the data available on Zeus and

8  the backup tapes that are available, it is hard to see what information MGA and

9  Bryant claim they are missing.[204]  Indeed, MGA and Bryant fail to identify any

10 information regarding Zeus that they want but do not have; they simply repeat their

11 "overzealous conviction" that Ms. Marine said no backup tapes exist.[205]  MGA and

12 Bryant full well know which tapes exist for which time periods.  Defendants would

13 simply rather complain than actually do the work to analyze the tapes.  On

14 September 4, 2007, Mattel wrote to MGA and offered to produce Zeus backup tapes

15 for 1998 to 2001.[206]  Defendants did not respond to Mattel's letter.

16

17  ─────────────────────

18  [201]  Separate Statement at 12:7-15.
    [202]  Separate Statement at 12:17-14:7.

19  [203]  Terminating Sanctions Tr., Proctor Dec., Exh. 34, at 82:4-21.
    [204]  For example, during the hearing on the motion for terminating sanctions,

20  Mattel told the Court and MGA and Bryant that Zeus backup tapes exist for April,

21  May, August, September and December 1998; January and February 1999;
    February, March, April, May, June, July, August and December 2000; and January

22  and July 2001, and a complete backup of the Zeus system in 2002 and 2004.

23  Terminating Sanctions Tr., Proctor Dec., Exh. 34, at 40:7-15; 100:5-107:18.  Mattel
    has also preserved backup tapes for 2003, 2005 and 2006.  Affidavit of Michael

24  Moore in Support of Mattel, Inc.'s Opposition to MGA Entertainment, Inc.'s Motion

25  for Terminating Sanctions Due to Spoliation of Evidence, dated September 10,
    2007, at 6:10-11, Notice of Lodging Declarations, Exh. 2; Letter from John Quinn to

26  Patricia Glaser, dated September 4, 2007, Corey Dec., Exh. 4.
    [205]  Order on Termination Sanctions, dated August 29, 2007, Proctor Dec.,

27  Exh. 13, at 4.

28

Exhibit __9__, Page 141

1    **IV.    PRECLUSION AND MONETARY SANCTIONS SHOULD BE**
2    **SUMMARILY DENIED.**

3    Defendants' request for monetary sanctions in the amount of $32,000 is
4    outrageous.  First, the motion lacks merit for all the reasons discussed above.
5    Moreover, defendants did not meet and confer over the issues raised in their motion
6    before filing.  They never identified any answers they believed were inadequate or
7    any area of relevant testimony of which they claimed they were deprived.  They did
8    not even identify the witnesses or topics at issue.  The breadth of the issues involved
9    in this motion were simply not sufficiently identified by defendants' oblique
10   reference to abusive "bandying" in their purported July 2, 2007 meet and confer
11   letter, and MGA never agreed to discuss the matter and never sent the letter it
12   promised to send after that.  The transcripts at issue in this motion alone span nearly
13   2,000 pages.[207] Mattel offered to do the leg work and review the deposition
14   transcripts if defendants just identified what they believed the issues were.
15   Defendants filed this motion instead.  If anyone should be sanctioned, it is not
16   Mattel.

17   Nor should the Court grant any sort of preclusion sanctions.  A
18   preclusion sanction is one of the most severe sanctions a court may impose.
19   Qualcomm Inc. v. Broadcom Corp., 2007 WL 935617, *2 (S.D. Cal.) ("Of those
20   sanctions a court may select when applying Federal Rule 37, preclusion of evidence
21   is among the most severe.").  Exclusion sanctions are improper absent a showing of
22   undue prejudice.  Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp., 190
23

24   [206]  Corey Dec., ¶ 4.
     [207]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 282; Nordquist Depo Tr.,
25   Proctor Dec., Exh. 28, at 303; Hudnut Depo Tr., Vol. II, Proctor Dec., Exh. 25, at
26   275; Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 188; Pratte Depo Tr., Proctor
     Dec., Exh. 26, at 230; Pasko Depo Tr., Proctor Dec., Exh. 27, at 222; Jensen Depo
27   Tr., Proctor Dec., Exh. 29, at 191; Marine Depo Tr., Vol. III, Proctor Dec., Exh. 32,
28   at 259; 3/15/05 Tr., Zeller Dec., Exh. 1, at 413.

1   F.R.D. 644, 648 (N.D. Cal. 2000) ("Exclusion sanctions based on alleged discovery

2   violations are generally improper *absent undue prejudice* to the opposing side.").

3          Such a severe sanction cannot be justified here, especially since MGA

4   and Bryant never met and conferred over this motion and have made no effort to

5   show they have been prejudiced.  Mattel believes it has provided 30(b)(6) witnesses

6   on the subject matters to which the parties agreed.  If the Court finds that Mattel

7   should offer further testimony on some relevant topic, Mattel will endeavor to find a

8   witness to testify about it.  Mattel would have told defendants just that had they

9   bothered to ask.  Because they failed to do so and because Mattel has produced and

10  prepared its witnesses in good faith, defendants' request for sanctions should be

11  denied.

12                            **Conclusion**

13         For the foregoing reasons, the Discovery Master should deny this

14  motion in its entirety.

15

16  DATED:  September 26, 2007        QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
17

18                                    By Dylan Proctor &.S.
                                         _____
19                                       B. Dylan Proctor
                                         Attorneys for Plaintiff Mattel, Inc.
20

21

22

23

24

25

26

27

28

# EXHIBIT 10

1   DALE M. CENDALI (admitted *pro hac vice*)
    MARC F. FEINSTEIN (S.B. #158901)
2   JAMES P. JENAL (S.B. #180190)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA  90071-2899
4   Telephone:  (213) 430-6000
    Facsimile:   (213) 430-6407
5   jjenal@omm.com

6   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, CA 90067
    Telephone:  (310) 553-3000
9   Facsimile:   (310) 557-9815

10  Attorneys for MGA Entertainment, Inc.

11  JOHN E. TRINIDAD (S.B. # 250468)
    KEKER & VAN NEST LLP
12  710 Sansome Street
    San Francisco, CA  94111
13  Telephone:  (415) 391-5400
    Facsimile:   (415) 397-7188
14
    Attorneys for Carter Bryant
15
                 UNITED STATES DISTRICT COURT
16
                CENTRAL DISTRICT OF CALIFORNIA
17
                       EASTERN DIVISION
18

19  CARTER BRYANT, an individual,       Case No.  CV 04-09049 SGL (RNBx)
                                        (consolidated with CV 04-9059 & 05-
20                   Plaintiff,         2727)

21        v.                            [DISCOVERY MATTER]

22  MATTEL, INC., a Delaware            REPLY IN SUPPORT OF MGA
    Corporation,                        ENTERTAINMENT, INC.'S AND
23                                      CARTER BRYANT'S JOINT
                     Defendant.         MOTION TO COMPEL RE:
24                                      MATTEL'S BANDYING OF 30(B)(6)
                                        WITNESSES
25
                                        Hearing Date:  T.B.D.
26  AND CONSOLIDATED ACTIONS            Time:  T.B.D.
27
28               CONFIDENTIAL - FILED UNDER SEAL

                                        REPLY ISO MTN TO COMPEL RE 30(B)(6)
LA2:844485.2                            WITNESSES CV 04-09049 SGL (RNBX)

                    10-12

1    Carter Bryant ("Bryant") and MGA Entertainment, Inc. ("MGA", collectively

2    "Defendants") submit this Reply in support of their Joint Motion to Compel re:

3    Mattel's Bandying of 30(b)(6) Witnesses in the case originally captioned *Mattel,*

4    *Inc. v. Bryant*, Case No. CV 04-9059 SGL (RNBx).

5    **I.    INTRODUCTION**

6            Mattel offers no valid reason why its designated witnesses were

7    unprepared to testify. The thrust of Mattel's overly long opposition is that Mattel

8    was excused from complying with Rule 30(b)(6)'s requirement to set forth

9    witnesses able to testify to *Mattel's* knowledge because the parties allegedly agreed

10   that it need only proffer its witnesses' *personal knowledge*. But Bryant's counsel

11   made perfectly clear, and Mattel's counsel agreed, that it was *Mattel's* knowledge

12   that was required:

13           Mr. Wickham: I mean we're seeking to conduct depositions
14           to determine the factual underpinnings based on *Mattel's*
15           personal knowledge of the various things that are the subject
16           of the P.M.K. notices. That's the principal objective here.

17           Mr. Zeller: **Right**.[1]

18           Mattel contends that "[h]ad defendants not made these concessions,

19   Mattel would have stood on its objections and would not have produced witnesses

20   in the first place because the topics are overly broad and call for improper legal

21   opinion."[2] Mattel omits that it did not produce *any* witnesses on these topics until

22   ordered to do so.

23           Mattel's argument that Defendants "simply do not like what [Mattel's

24   witnesses] had to say" is a distortion.[3] It is not what Mattel's witnesses *said* that

---

25   [1] March 15, 2005 Meet and Confer transcript ("M&C") at 191: 16-21 (emphasis added), attached
     as Ex. 3 to the Declaration of B. Jennifer Glad ("Glad Decl.") filed concurrently. As shown in the
26   transcript, Defendants had to spend hours to get Mattel to agree grudgingly to provide the
     testimony it has failed to deliver.
27   [2] Opp'n at 4.
28   [3] Opp'n at 27.

REPLY ISO MTN TO COMPEL RE 30(B)(6)
WITNESSES CV 04-09049 SGL (RNBX)

LA2:844485.2

1   led to this Motion, but their gross lack of preparation to speak on Mattel's behalf.

2         Mattel's failure to comply with Rule 30(b)(6) deprives MGA of the

3   facts Mattel believes support its claims.  Those are the facts that these topics were

4   intended to discover, that the parties agreed more than two years ago were properly

5   within the ambit of Rule 30(b)(6), and whose discovery was ruled permissible by

6   the Discovery Master's prior Order.  Mattel must either produce properly educated

7   witnesses, or be forever precluded from offering new evidence related to these

8   topics in subsequent motions or at trial.

9

10  **II.   ARGUMENT**

11      **A.   Mattel Failed to Produce Informed Witnesses on Topics 2-7.**

12        During the March 15, 2005 meet and confer, the parties discussed

13  topics 2-7 at length before agreeing to a "framework" on how to prepare corporate

14  witnesses:  1) Mattel would provide supplemental answers to Bryant's contention

15  interrogatories in advance of the Rule 30(b)(6) depositions; 2) Mattel would

16  identify a witness to testify regarding the factual underpinnings of these topics; and

17  3) Mattel reserved its right to designate more than one witness on a single topic if

18  the scope of the topic was broad enough to justify doing so.[4]

19        The parties also agreed to only a small number of specific limitations,

20  which slightly narrowed the topics:

21        &bull;  Topic 3:  Mattel's witness would provide Mattel's knowledge

22            regarding Bryant's acts or omissions that may have constituted a

23            breach of contractual or non-contractual duties owed to Mattel,

24            but that information specifically obtained by Mattel's counsel

25

26  [4] M&C at 178:12-179:17.  Mattel suggests that Defendants are complaining that designating more
     than one witness is improper, *see* Opp'n at 26, but that is not so.  More than one witness can be

27  designated on a topic, *provided* the witnesses are adequately prepared to testify on the topic and
     collectively the witnesses designated produce the sum total of Mattel's knowledge on the topic.

28  Mattel's chosen witnesses have failed on both counts.

1    would be provided via Mattel's response to Bryant's contention

2    interrogatories.[5]

3    • Topic 5:  Bryant agreed to narrow this to only that information

4      that Mattel was contending Bryant improperly disclosed.[6]

5    • Topic 7:  Bryant again agreed to limit this to property or

6      services provided by Bryant to third parties that Mattel

7      contended was improper.[7]

8    The remaining topics from this section - 2, 4 and 6 - were not narrowed by

9    agreement other than to be explored pursuant to the parties' "framework." Mattel

10   acknowledged that it was obliged to properly educate whichever witnesses it

11   designated:

12       Mr. Zeller:  There's no particular issue, as far as I'm
13       concerned, regarding whether or not you would be entitled
14       to ask about facts, and *we would educate somebody to come
         in and testify about facts*; how was something, if it was,
15       communicated to the employee; what was the handbook that
16       was, you know, in effect during this time; is this, in fact, the
17       handbook; that sort of thing, you know.[8]

18       But when Mattel produced its witnesses, Mattel had done nothing to

19   educate them, and their scant personal knowledge came nowhere near to covering

20   these topics.  If Mattel *itself* has no such knowledge, then Mattel has no factual

21   basis to maintain this lawsuit.  None of Mattel's witnesses testified that *Mattel* had

22   no further knowledge on these topics, only that the individual witness *personally*

23   *had no first-hand knowledge.*  That is not proper testimony of the corporation.[9]

24   _____
     [5] M&C at 188:8-190:13.
25   [6] M&C at 217:7-16.
     [7] M&C at 218-223.
26   [8] *Id.* 165:14-21.
27   [9] *See Wilson v. Lakner*, 228 F.R.D. 524, 528-30 (D. Md. 2005)(Defendants are "not obligated to
     depose a string of... employees, none of whom is able to speak for the [company].... Rule
28   30(b)(6) means what it says.  Corporations must act responsively.... They must produce live

     LA2:844485.2                      - 3 -          REPLY ISO MTN TO COMPEL RE 30(B)(6)
                                                      WITNESSES CV 04-09049 SGL (RNBX)

Exhibit *10*, Page *147*

**B.**   **Mattel Failed to Produce Informed Witnesses on Topics 8, 11-13 and 24.**

Mattel's Opposition tries to interpose a host of topic limitations that were neither agreed to during the March 15, 2005 meet and confer nor imposed by the Discovery Master's Order. Rather, these are all limitations that Mattel has unilaterally asserted without any legitimate basis. In the meet and confer regarding topics 8 & 13, Bryant agreed that Mattel was not obligated to educate its witness as to areas Mattel was not contesting in the litigation.[10] No limitations were agreed to on topics 11, 12 and 24 apart from being handled within the parties general "framework."[11]

Nevertheless, Mattel proclaims that Mattel agreed to provide witnesses on only three elements of these topics that *Mattel* deems relevant: 1) aspects of "Toon Teens"; 2) certain names associated with the Diva Starz project; and 3) internal Mattel designs created by Steve Linker.[12] It is not Mattel's prerogative to decree what is relevant. Even if these limitations had been accepted – and they were not – Mattel's proffer of Rob Hudnut as a witness on these topics was inadequate. As he admitted, the only thing he knew on these subjects were the scripts and concepts related to the failed Diva Starz television project.[13]

Mattel claims that it "told defendants that its 30(b)(6) witnesses would be testifying to facts within their personal knowledge concerning DIVA STARZ, and defendants never objected."[14] But Defendants' objections to Mattel's practices are repeated throughout these depositions -- for example, during a deposition when

---

witnesses who know or who can reasonably find out what happened in given circumstances.")
[10] M&C at 245:25-247:23, 254:17-22.
[11] M&C at 266:20-267:1.
[12] Opp'n at 5. Mattel admits that no such agreements were made during the parties' meet and confer. *See* Opp'n at fn. 5.
[13] *See* Defendants' Separate Statement at 7:23-26 ("I'm a screenwriter and a song writer and a producer. Those are the things that I'm prepared to talk about.")
[14] Opp'n at 17.

REPLY ISO MTN TO COMPEL RE 30(B)(6)
WITNESSES CV 04-09049 SGL (RNBX)

LA2:844485.2

Exhibit _10_ Page _148_

1   Bryant's counsel, Keith Jacoby, made the following objection:

2           MR. JACOBY:  I guess I just have a problem with this and I
3           want to state it for the record and Diana can keep asking
4           questions and that's fine but I don't think it's our job to guess
            what he is speaking of on behalf of Mattel.
5
6           MR. ZELLER:  It certainly wasn't my --

7           MR. JACOBY:  Let me finish my statement.

8           He's not here as a percipient witness. Nobody named
9           him in a deposition notice.  He is here to talk for Mattel on
10          these designated subjects. That's the scope of the order on
            the Motion to Compel and I just think it's wrong to say he's
11          going to tell you everything he knows and then you can
12          figure out how it relates to the designations.  I'm not going to
13          tell Diana how to take the depo but I think you have an
            affirmative obligation to say exactly what he is testifying on
14          on behalf of Mattel with respect to these designations and to
15          the extent that they form legal contentions it's your job as his
16          lawyer to explain that to him but it's not my job to guess.

17          MR. ZELLER:  That's preposterous.[15]

18

19  Thus, there can be no doubt that Defendants objected to Mattel's conduct in

20  proffering uninformed corporate witnesses.

21      C.   **Mattel Failed to Provide an Informed Witness on Topic 41.**

22          Mattel incorrectly claims that it met its agreement to put up a witness

23  on Mattel's knowledge on topic 41, which relates to a significant Wall Street

24  Journal article.  The record shows that Ms. Jensen testified about her personal

25  knowledge, not Mattel's.  That is not sufficient.

26          Mattel maintains that it had no duty to have its witnesses speak with

27

28  [15] *See* Defendants' Separate Statement at 97-98.

LA2:844485.2

- 5 -

Exhibit 10 , Page 149

1    anyone other than counsel, or interview potential sources or review documents,

2    ignoring the contrary cases cited by Defendants.  Mattel relies upon a single,

3    unpublished opinion from New Jersey.[16]  Yet even that ruling was premised upon

4    the court's determination that the company had taken adequate steps to impart the

5    *company's* knowledge to its Rule 30(b)(6) designee, noting that one of the people

6    who helped prepare the designee *had* "interviewed former Amax and USMR

7    employees at the company's request to help prepare [the designee] for his

8    deposition."[17]  Mattel did nothing comparable.

9         Mattel's position is disingenuous given its insistence that MGA do that

10   which Mattel claims it need not.  Mattel sent MGA a letter insisting that MGA's

11   30(b)(6) designee was not adequately prepared because she only interviewed the

12   three former Mattel employees identified as relevant in Mattel's Counterclaims;

13   instead suggesting that she should have interviewed the "more than 30 former

14   Mattel employees [who] work at MGA."[18]  Mattel's demand is but more evidence

15   of its cynical manipulation of discovery in general and the Rule 30(b)(6) process in

16   particular.

17      **D.**    **Mattel Failed to Educate Julia Marine and Stood Silently While**

18            **She Gave False and Misleading Testimony.**

19         In their moving papers, Defendants set forth their complaint regarding

20   Ms. Marine's testimony.  In its Opposition, Mattel does not even attempt to suggest

21   that Ms. Marine's testimony as Mattel's designee was not contradicted by the

22   subsequent declaration of its in-house counsel, Michael Moore. But that evidence

23   was only brought forward when it suited Mattel in its effort to fend off Defendants'

24   motion for terminating sanctions.  Instead, Mattel claims that Defendants' earlier

25

26   [16] Opp'n at 25.

27   [17] *Reichhold, Inc. v. U.S. Metals Refining Co.*, 2007 WL 1428559 at *8.

28   [18] *See* Letter from Jon Corey to Jim Jenal, dated July 23, 2007, attached as Ex. 9 to the Declaration of Yvonne Garcia ("Garcia Decl.") filed concurrently herewith.

Exhibit *10*, Page *150*

questioning of Ms. Marine was inadequate,[19] and since Defendants *now* know the truth, this Court should rule "no harm, no foul." But contrary to Mattel's suggestion that the Court was amenable to Mattel's conduct, Judge Larson agreed with Defendants that Ms. Marine's testimony was inadequate:

> Ms. Glaser: I understand that. And my only point is, your Honor, we were misled. I think the record is clear that we were misled. And I don't think we have an obligation, after somebody is designated as a 30(b)(6) witness, to say, 'Oh, she's not sure.' Which isn't what she said. She said that she doesn't think 'we go back that far.'
>
> So they have offered her. I didn't offer her; I didn't designate her. They designated her. And this gentleman [Mr. Moore] has more information on the date she's testifying than she does. That's a head fake. That is hiding evidence. That is not fair.
>
> The Court: You were certainly entitled, at the time that it was asked, to a yes or no answer to whether or not these backup tapes existed, and it appears that you did not get that from Ms. Marine.[20]

Accordingly, absent an Order from this Court, Mattel will not comport with the procedural rules. Failing such compliance, Mattel must be precluded from offering new evidence in any motion or at trial.

---

[19] Contrary to Mattel's claim, Ms. Marine was asked repeatedly in her earlier deposition about the disposition of backup tapes that would have elicited the relevant testimony – had she been properly prepared. *See* Glad Decl. at ¶¶ 2-3.

[20] Transcript from Hearing on Defendants Motion for Terminating Sanctions, dated August 27, 2007 at 96:17-97:6, attached as Ex. 11 to Garcia Decl.

REPLY ISO MTN TO COMPEL RE 30(B)(6) WITNESSES CV 04-09049 SGL (RNBX)

LA2:844485.2

**Exhibit *10*, Page*151***

**E.** **Mattel's Procedural Objections Are Unavailing.**

**1.** **Defendants Adequately Met and Conferred Prior to Filing This Motion.**

Defendants properly met and conferred leading to this Motion.[21] Mattel's Opposition shows that any additional attempts to meet and confer would have been futile. According to Mattel, Defendants have received all of the discovery to which they were entitled under Bryant's Rule 30(b)(6) Notice. Thus, in the face of such stubbornness, there can be no doubt that a subsequent meet and confer would have been ineffective.

**2.** **Mattel's Complaints About the Local Rules Are Misplaced and Inconsistent with Mattel's Own Conduct.**

Mattel objects that Defendants failed to satisfy other procedural requirements, such as submitting transcript excerpts from the electronic versions (*i.e.*, LiveNote) of those transcripts instead of submitting certified copies.[22] Defendants have routinely provided testimonial evidence in that manner without objection from either Mattel or the Discovery Master.[23] Moreover, if Mattel were sincere about imposing the Local Rules on discovery motions, it would be equally scrupulous about restricting its briefs to the page limits – but instead, Mattel routinely flagrantly violates those restrictions.[24] The Discovery Master should decline Mattel's invitation to "summarily deny" this Motion and instead, decide it

---

[21] The July 12, 2007 letter upon which Mattel relies to claim that a more detailed letter was to be sent before Mattel would have been adequately apprised of Defendants' concerns, *was sent by MGA and received by Mattel the day before* and Mattel acknowledges its receipt and that it provided the names of the witnesses that Defendants were then contending would be subject to this motion. *See* Glad Decl. ¶ 5; Proctor Decl., Ex. 4.

[22] *See* Mattel's Evidentiary Objections re Bandying Motion at 3.

[23] Nevertheless, Defendants have gone through the expense of resubmitting its deposition excerpts from the certified copies. As all of the relevant passages are excerpted in Defendants' Separate Statement, they are not individually highlighted in the transcripts. *See* Garcia Decl., Exs. 1-7.

[24] *See* Judge Larson's Standing Order at 4:12-14 (limiting Opposition briefs to 25 pages), attached as Ex. 10 to the Garcia Decl. Mattel's Opposition brief was 38 pages.

LA2:844485.2

REPLY ISO MTN TO COMPEL RE 30(B)(6) WITNESSES CV 04-09049 SGL (RNBX)

1  on its merits.

2

3  **III.   CONCLUSION**

4           For all the foregoing reasons, Bryant and MGA respectfully request

5  that the Discovery Master grant this Motion and order Mattel to produce properly

6  educated witnesses who will testify as to Mattel's knowledge on these topics,

7  subject to an order of preclusion as to any new evidence supporting Mattel's claims

8  should Mattel fail to comply.

9           Defendants further request that the Discovery Master (a) require that

10  Mattel produce all of its designated witnesses on the topics in question over a

11  period of three weeks following the grant of the Motion, and (b) award sanctions

12  sufficient to deter such conduct going forward.

13

14      Dated:      October 12, 2007

15                                          DALE M. CENDALI
16                                          MARC F. FEINSTEIN
                                            JAMES P. JENAL
17                                          O'MELVENY & MYERS LLP

18

19                                          By: _____
20                                               James P. Jenal
                                            Attorneys for MGA Entertainment, Inc.

21

22      Dated:      October 12, 2007

23                                          MICHAEL H. PAGE
                                            CHRISTA M. ANDERSON
24                                          JOHN E. TRINIDAD
                                            KEKER & VAN NEST LLP

25

26                                          By: _____
27                                               John E. Trinidad
                                            Attorneys for Carter Bryant

28

LA2:844485.2                            - 9 -        REPLY ISO MTN TO COMPEL RE 30(B)(6)
                                                     WITNESSES CV 04-09049 SGL (RNBX)

Exhibit *10*, Page *153*