THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
E-mail: tnolan@skadden.com

KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
E-mail: kplevan@skadden.com

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC.,
ISAAC LARIAN, MGA
ENTERTAINMENT (HK) LIMITED,
and MGAE de MEXICO S.R.L. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation<br><br>Defendant.<br><br>Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**MGA DEFENDANTS' OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION TO ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS; AND FOR MODIFICATION OF SCHEDULING ORDER**<br><br>Honorable Stephen G. Larson<br><br>Date: TBA<br>Time: TBA<br>Place: TBA |

Counter-defendants MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, the "MGA Defendants") hereby submit this opposition to Mattel, Inc.'s *Ex Parte* Application to Enforce Court Orders Compelling Production of Tangible Items and for Modification of Scheduling Order.

## I. PRELIMINARY STATEMENT.

In any litigation—no matter how big or complex—there comes a time when discovery must end and the parties and the court must devote their attention to preparing for a trial on the merits. In this case, that time is January 28, 2008. Yet, despite the Court's steadfast commitment to this date, Mattel has repeatedly and unsuccessfully tried to prolong discovery beyond the cut-off date.

Mattel's *ex parte* application regarding tangible items—Mattel's third *ex parte* application this week and its fifth in the past two months—is yet another desperate attempt to extend its scorched earth discovery practices and prevent the MGA Defendants from being able to focus their attention on trial preparation. Notwithstanding Mattel's lengthy and largely inaccurate description of the parties' dispute, Mattel raises three issues to be decided by the Court:

1. Has MGA acted improperly in continuing to search for and promptly produce for inspection tangible items in response to Mattel's requests?

2. Should MGA bear the cost of Mattel's requested inspection of tangible items in Hong Kong and Shenzhen, China, where MGA has already made substantial efforts to accommodate Mattel and Mattel has shown no interest in actually inspecting the items?

3. Should Mattel be allowed to argue for six more weeks of discovery based on the timing of MGA's production of some tangible items when Mattel waited until the last four weeks of discovery to produce more than 70 percent of its total document production in this case?

The answer to all of these questions is: "No."

*First*, MGA has done nothing wrong by continuing to search for tangible items that may be responsive to Mattel's requests and produce those items for inspection

promptly after they have been found. Such conduct is required as part of the parties' continuing obligation to supplement discovery responses, including their productions of documents and things. *See* Fed.R.Civ.P. 26(e). To date, MGA has produced approximately 800 items for Mattel's inspection, with the overwhelming majority of items being produced for inspection months ago. (Declaration of Amy Park ("Park Decl."), ¶ 1.) That MGA has found and produced a small portion of the items in recent weeks does not render MGA in violation of its discovery obligations or any discovery order in this case. MGA has acted diligently in searching for items and, contrary to Mattel's assertions, has not deliberately excluded any particular type of tangible items from its searches. (Declaration of Samir Khare ("Khare Decl."), ¶ 3.)

*Second*, there is no basis to shift the cost of Mattel's requested inspection of items in Hong Kong and Shenzhen from Mattel to MGA. MGA promptly notified Mattel of these items and made every effort to facilitate Mattel's inspection of the items in Hong Kong and Shenzhen. Indeed, it has been Mattel's dilatory conduct that has prevented Mattel from inspecting the items in Hong Kong and Shenzhen in a timely manner. Although MGA offered and held open numerous dates throughout January for the inspections, Mattel made no attempt to inspect the items and instead chose to sit by for weeks, letting each date pass until it could file its *ex parte* application on the eve of discovery cut-off.

*Third*, Mattel's argument that it should get six more weeks of discovery because MGA recently produced some additional tangible items is without merit. If a party could extend discovery merely by arguing that a small amount of additional information or documents was provided towards the end of discovery, no case would ever move past discovery. Moreover, Mattel is in no position to be arguing for additional discovery based on the timing of production since Mattel did not begin producing the vast majority of its documents—more than 70 percent—until the beginning of this month—four weeks before the discovery cut-off.

Mattel has had ample time to take discovery and has obtained mountains of information in the process. It is time for the parties to focus on preparing for trial. Accordingly, Mattel's *ex parte* application should be denied.

## II. STATEMENT OF FACTS.

### A. The Parties' Productions.

To date, MGA has produced approximately 3.8 million pages of documents and approximately 800 tangible items in response to Mattel's thousands of requests for production. (Park Decl., ¶ 1.) MGA completed most of its document production more than two months ago and produced for inspection most of its tangible items by October 2007. (*Id.*) In mid-December 2007, MGA produced more than 100 additional tangible items for inspection. (*Id.*)

Contrary to Mattel's assertion, the tangible items that MGA produced for inspection prior to December 21, 2007, included numerous items relating to the origin, creation, design, development or manufacture of Bratz. (*Id.*) As of October 2007, Mattel had inspected more than a dozen doll heads, several doll bodies, a doll head sculpture, a doll body sculpture, as well as hundreds of Bratz dolls, dolls designs, doll accessories, and other MGA products. (*Id.*)

In the last several weeks, MGA has also found and promptly produced for inspection some additional tangible items, consisting of displays, a Bratz girls cut-out, mounted Bratz sketches/prints, accessories and packaging options. (Hutnyan Decl., Exs. 22 & 25.) Additionally, as is discussed below, in early January 2008, MGA found 12 Bratz molds created in February 2001 in MGA's facility in Shenzhen, China and immediately made the molds available for inspection by Mattel. (Hutnyan Decl., Ex. 5 at 2.)

In connection with its production of tangible items in this case, MGA has continually and diligently searched for items that may be responsive to Mattel's requests for production. (Khare Decl., ¶ 2 & 3.) As part of its search process, MGA has not deliberately excluded or directed anyone to exclude molds or other specific

types of tangible items. (*Id.*) In addition, Mattel is wrong in its suggestion that MGA hid or directed anyone to hide items relating to the creation or early development of Bratz so as to avoid the production of those items in this litigation. MGA took no such action. (*Id.*) Rather, MGA has promptly made available for inspection by Mattel those items that MGA has found that are responsive to Mattel's requests. (*Id.*; Park Decl., ¶ 2.)

In contrast to MGA's substantial production months before close of fact discovery, Mattel chose to wait until the final four weeks of discovery to produce the vast majority of its documents. (Park Decl., ¶ 3.) As of December 2007, Mattel had produced only about 257,000 pages of documents—less than 10 percent of MGA's production by that time. (*Id.*) Suddenly, in January 2008, Mattel began producing hundreds of thousands of pages of documents on MGA. (*Id.*) Between January 2, 2008 and January 24, 2008, Mattel produced more than 635,000 pages of documents, which accounts for more than 70 percent of Mattel's total production. (*Id.*) Notably, although Mattel chides MGA for stating that it is still conducting a reasonable, good faith search for documents and tangible items, Mattel has been making the same representation with respect to its production: "Mattel continues to conduct a reasonable, good faith search for documents, and intends to produce relevant, non-privileged documents as they are located." (Park Decl., Ex. 1.)

**B.   Tangible Items in Hong Kong and Shenzhen.**

In early December 2007, counsel for Mattel and MGA began discussing the issue of Mattel's inspection of 16 tangible items in Hong Kong. (Park Decl., Ex. 2.) As MGA's counsel informed Mattel's counsel, these items, which consisted of Bratz doll heads, body parts, shoes and deco heads, were the subject of an undertaking given to the court in Hong Kong that prevented their shipment to the United States. (*Id.*) MGA was in the process of seeking approval from the Hong Kong court to modify the undertaking to permit shipment of the items to the United States and is still awaiting the court's final ruling on that application. (Park Decl., Exs. 2 & 3.) In

1 | the meantime, Mattel's counsel inquired as to whether Mattel could inspect those
2 | items in Hong Kong. (Park Decl., Ex. 2.) MGA's counsel subsequently informed
3 | Mattel's counsel that Mattel could inspect the items in Hong Kong and offered
4 | Mattel four different days to inspect them—January 5, 8, 9 and 10. (Hutnyan Decl.,
5 | Exs. 11 & 12.)

6 | On January 7, 2008, Mattel's counsel notified MGA's counsel that it could not
7 | inspect the items on the offered dates, but could do the inspection "any day next
8 | week (January 14-18)." (Park Decl., Ex. 4 at 6.) On January 9, Mattel's counsel
9 | confirmed their availability to inspect the items in Hong Kong any day between
10 | January 14 and January 18. (Hutnyan Decl., Ex. 4.) On January 10, MGA's counsel
11 | offered the items for inspection on January 17, 18 and 19. (Hutnyan Decl., Ex. 5.)

12 | That same day, MGA's counsel also informed Mattel's counsel that MGA had
13 | recently found 12 Bratz molds in its facility in Shenzhen, China, which is
14 | approximately 20 miles north of Hong Kong. (*Id.*) MGA's counsel notified Mattel's
15 | counsel that shipment of the molds to the United States would take considerable time
16 | due to customs issues, but that MGA would make the molds available in Shenzhen
17 | on or around the same dates as the Hong Kong inspections. (*Id.*) MGA's counsel
18 | provided the following dates for inspection of the molds: January 15, 16, 17, 21, 23
19 | and 24. (Park Decl., Ex. 5 at 3.)

20 | Mattel's counsel requested that MGA hold open January 17, 18 and 19 for
21 | inspection (Hutnyan Decl., Ex. 19), but made no attempt to inspect any of the items
22 | in Hong Kong or Shenzhen on any of those dates. (Park Decl., ¶ 11.) On January 15,
23 | 2008, MGA's counsel offered January 23, 24 and 25 for inspection of the items in
24 | Hong Kong in addition to the previously offered dates. (Park Decl., Ex. 3.) Mattel's
25 | counsel did not accept any of the dates provided, but sent an email to MGA's
26 | counsel on January 22, 2008, demanding all available dates between January 25 and
27 | February 15 for inspection. (Park Decl., Ex. 6.) Although most of these dates were
28 | after the close of discovery, MGA's counsel nevertheless offered January 29, and

February 1, 2, 4, 5 and 6 for the Hong Kong inspection, and January 31, February 1 and February 4 for the Shenzhen inspection. (Park Decl., Ex. 7.) Despite their demands, Mattel has not accepted any of the dates offered. (Park Decl., ¶ 11.)

### III. MATTEL'S *EX PARTE* APPLICATION IS WITHOUT MERIT AND SHOULD BE DENIED.

#### A. MGA Has Not Violated any Discovery Obligation or Order.

Contrary to Mattel's assertions, MGA has complied with the Discovery Master's May 2007 or August 2007 orders, and the parties' June 2006 stipulation. MGA has produced for inspection approximately 800 tangible items, most of which were inspected by Matter in October 2007. (Park Decl., ¶ 1.) These items include all of the items that MGA has found thus far that are responsive to the requests that were the subject of the Discovery Master's orders. (Hutnyan Decl., Exs. 5, 11, 12 & 22.) In addition, when Mattel has requested to inspect, photograph and scan these tangible items, MGA has promptly responded and cooperated. (Park Decl., Ex. 4.)

Mattel's assertion that MGA is somehow violating its discovery obligations by continuing to search for and produce additional tangible items is untenable and contrary to the Federal Rules of Civil Procedure. Rule 26(e) expressly requires that "[a] party who has … responded to … [a] request for production … must supplement or correct its disclosure or response: … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed.R.Civ.P. 26(e)(1). Thus, each litigant has a continuing obligation to supplement its production of documents and things. Indeed, Mattel has relied on that obligation to justify its last-minute productions of hundreds of thousands of pages of documents that should have been produced many months ago. (Park Decl., Ex. 1.)

Consistent with its ongoing obligation, MGA has continued to search its facilities for and promptly produce for inspection any additional items responsive to Mattel's requests. (Khare Decl., ¶ 3.) Mattel speculates that because MGA did not previously produce such items that MGA must have been hiding them. The Court

should not waste its time on such blatant conjecture. Indeed, applying the same reasoning, MGA could argue that Mattel was improperly concealed more than 635,000 pages of documents because Mattel waited until the last four weeks of discovery to produce them. Mattel's arguments are not productive and do nothing to help move the parties and the Court beyond the discovery phase and toward a trial on the merits.

Mattel's reliance on a dispute between the parties' counsel as to whether molds are encompassed in document requests that do not expressly call for the production of molds is a red herring. MGA's counsel has never stated that molds, closures, face paint masks or the other items recited in Mattel's application were deliberately withheld from production or that MGA destroyed them during the course of this litigation. Moreover, in conducting its searches for tangible items, MGA has not deliberately excluded molds or other types of tangible items. (Khare Decl., ¶ 3.)

Nor has MGA excluded tangible items relating to the origin, creation, design, development or manufacture of Bratz. In fact, in October 2007, MGA produced for Mattel's inspection more than a dozen Bratz heads, several Bratz bodies, a Bratz head sculpture and a Bratz body sculpture. (Park Decl., ¶ 1.) As discussed above, MGA has also made available doll heads, deco heads, body parts and molds in Hong Kong and Shenzhen on numerous dates throughout January and now into February. That Mattel chose not to inspect those items on any of those dates despite representing that it was available and ready to do so does not evidence any impropriety on MGA's part. Indeed, it plainly demonstrates MGA's diligence in meeting its discovery obligations. In addition, Mattel has obtained ample items and documents, as well as testimony from numerous witnesses, regarding the creation and early development of Bratz. These include thousands of pages of documents chronicling the development and manufacturing process, including correspondence and photographic images of the dolls in various stages of development sent between

the MGA employees in the United States and Hong Kong; correspondence, invoices and purchase orders with third-party vendors that worked on the development of the Bratz doll, including Margaret Leahy (sculpted the Bratz doll), Jesse Ramirez of South Bay Molds (cast molds for the dolls), and Veronica Marlow (fashion design); and more than a hundred tangible items produced by Ms. Leahy and Ms. Marlow that relate to the development of the Bratz dolls. (Park Decl., ¶ 12.)

Mattel has failed to show that MGA violated its discovery obligations relating to the production of tangible items. Accordingly, its application must be denied.

### B. The Cost for Inspecting Items that Mattel Requested Should Remain with Mattel.

Mattel's assertion that MGA should pay the costs for Mattel's inspection of items in Hong Kong and Shenzhen is based on the false premise that MGA concealed these items from Mattel until the end of discovery. The items in Hong Kong and Shenzhen were promptly identified to Mattel after MGA discovered them during its search for items that may be responsive to Mattel's requests. (Park Decl., Ex. 2; Hutnyan Decl., Ex. 5.) No concealment was involved.

Moreover, MGA has made every reasonable effort to facilitate Mattel's inspection of these items in Hong Kong and Shenzhen. At Mattel's request, MGA made the items in Hong Kong available on eleven days throughout January and also offered five days in February. In addition, MGA made the items in Shenzhen available for inspection on seven days throughout January and two days in February. MGA offered both the Hong Kong and Shenzhen inspections on dates that Mattel's counsel specifically identified as dates on which Mattel was available and ready to conduct the inspections. (Park Decl., Ex. 4 at 6; Hutnyan Decl., Ex. 4.) In a further effort to accommodate Mattel, MGA has tried to effect the shipment of the Hong Kong items to the United States by petitioning a Hong Kong court to modify the undertaking that is preventing their shipment to the United States. (Park Decl., Ex. 3.)

If anyone is to blame for Mattel's failure to inspect the items in Hong Kong and Shenzhen in a timely manner, it is Mattel. Despite representing to MGA that it was available and ready to inspect the items, Mattel made no effort to travel to Hong Kong and Shenzhen. Instead, Mattel chose to sit by for weeks, allowing each date offered by MGA to pass without conducting any inspection or even committing to any inspection date. If Mattel was truly interested in inspecting the items, rather than merely using the issue as an argument for extending discovery, Mattel would have conducted the inspection by now.

In view of MGA's efforts to accommodate Mattel and Mattel's own dilatory behavior, Mattel should not be allowed to shift the costs for inspection.

### C. The Court Should Not Alter the Scheduling Order or Give Mattel Additional Time to Conduct Discovery.

Mattel contends that it is entitled to six more weeks of discovery because MGA should have produced the recently found tangible items earlier. That is not a sufficient basis to extend discovery in a case that has been in discovery for more than three years. Indeed, if any party has grounds to argue for an extension of discovery, it is MGA.

The tangible items at issue represent a small fraction of the approximately 800 tangible items that MGA has produced for inspection in this case. In contrast, Mattel's production of documents in the final month of discovery accounts for more than 70 percent of Mattel's total production. (Park Decl., ¶ 3.) Of the approximately 895,000 pages of documents that Mattel has produced in this case, more than 635,000 pages were produced between January 2, 2008 and January 24, 2008. (*Id.*) There is no legitimate reason why Mattel waited until four weeks before the close of discovery to begin producing the vast majority of its documents in this case. In view of the foregoing, Mattel cannot be heard to complain about the timing of MGA's production of some tangible items.

1     Mattel's demand for additional discovery time is also belied by the fact that
2 Mattel made no attempt to inspect the items in Hong Kong or Shenzhen on any of
3 the numerous dates throughout January that MGA offered. If Mattel wanted to
4 inspect MGA's additional tangible items "without further delay" as it contends,
5 Mattel would have inspected the items in Hong Kong and Shenzhen weeks ago.
6 That Mattel sat for weeks without moving forward with the inspections and then
7 filed an *ex parte* application seeking six more weeks of discovery plainly shows that
8 Mattel is not interested in completing discovery as quickly as possible; rather,
9 Mattel is merely trying to concoct a reason to prolong discovery and avoid reaching
10 the merits of this case.
11     Because Mattel cannot present any legitimate basis for extending discovery,
12 the Court should deny Mattel's request.

## IV. CONCLUSION

14     For the foregoing reasons, the MGA Defendants respectfully request that the
15 Court deny Mattel's *ex parte* application regarding the production of tangible items
16 and modification of the Court's Scheduling Order.

17 DATED: January 25, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: /s/ Thomas J. Nolan
     Thomas J. Nolan

Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.