Larry McFarland (Bar No. 129668)
Christian Dowell (Bar No. 241973)
KEATS, McFARLAND & WILSON LLP
9720 Wilshire Blvd.
Penthouse Suite
Beverly Hills, CA 90212
Telephone:   (310) 248-3830
Facsimile:    (310) 860-0363
Email:   lmcfarland@kmwlaw.com
              cdowell@kmwlaw.com

Attorneys for Ana Elise Cloonan,
Margaret Hatch-Leahy, and Veronica Marlow

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br> v. <br><br> MATTEL, INC., a Delaware corporation; <br><br> Defendant. <br><br> AND RELATED ACTIONS. | Case No.: CV 04 – 09049 SGL (RNBx) <br> Consolidated with Case Nos. <br> CV 04-9059 and CV 05-2727 <br> <u>Hon. Stephen G. Larson</u> <br><br> ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S <u>EX</u> <u>PARTE</u> APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER <br><br> Hearing Date:    N/A <br> Time:              N/A <br> Place:             N/A |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................1

II.    SUMMARY OF FACTS ........................................................................4

II.    ARGUMENT.........................................................................................12

    **A.**   Mattel's <u>Ex</u> <u>Parte</u> Application Should Be Denied Because Mattel Has Not Satisfied The Standards For <u>Ex</u> <u>Parte</u> Relief. ...........................12

        1.   Mattel Will Not Be Prejudiced if the Court Does Not Compel the Non-Party Witnesses to Produce Additional Discovery..........13

        2.   Mattel's Own Actions Contributed to this Alleged Crisis.............14

    **B.**   Mattel's <u>Ex</u> <u>Parte</u> Application Should Be Denied Because Ms. Marlow Has Fully Complied With Her Discovery Obligations. .......15

    **C.**   Mattel Has No Basis For Seeking A New Computer Protocol................20

III.   CONCLUSION .................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

Ameriwood Indus., Inc. v. Liberman, 2006 WL 3825291, at *4
  (E.D. Mo. Dec. 27, 2006) ........................................................ 18

Balfour Beatty Rail, Inc. v. Vaccarello, 2007 WL 169628, at *2-3
  (M.D. Fla. Jan. 18, 2007)................................................... 18, 19

Bethea v. Comcast, 218 F.R.D. 328 (D.D.C. 2003) ........................ 17

Caylon v. Mizuho Sec. USA Inc., 2007 WL 1468889, at *3
  (S.D.N.Y. May, 28, 2007) ......................................................... 16

Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc., 649 F.2d 649
  (9th Cir. 1980).......................................................................... 22

Doe v. Attorney General, 941 F.2d 780 (9th Cir.1991)..................... 24

Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc., 2007 WL 1726558,
  at *9 (D. Nev. 2007) .................................................................. 17

Floeter v. City of Orlando, 2006 WL 1000306, at *3 (M.D. Fla. Apr. 16, 2006)......... 17

In re Crawford, 194 F.3d 954 (9th Cir. 1999) ................................. 24

In re Ford Motor Co., 345 F. 3d 1315 (11th Cir. 2003) ................. 16, 17, 19

In re Intermagnetics America, Inc., 101 B.R. 191 (C.D. Cal. 1989)...................... 12, 14

Kelly v. City of San Jose, 114 F.R.D. 653 (N.D. Cal. 1987) ....................... 23

Kucala Enterprises, Ltd. v. Auto Wax Co., Inc., 2003 WL 2123065, at *4,
  fn. 5 (N.D. Ill. 2003) ............................................................. 5, 7

McCurdy Group, LLC v. Am. Biomedical Group, Inc., 9 Fed. Appx. 822
  (10th Cir. 2001)......................................................................... 18

McPeek v. Ashcroft, 202 F.R.D. 31 (D.D.C. 2001) ......................... 17

Mission Power Engineering Co. v. Continental Cas. Co., 883 F. Supp. 488
  (C.D. Cal. 1995)................................................................. 12, 13, 14

Moon v. SCP Pool Corp., 232 F.R.D. 633 (C.D. Cal. 2005)....................... 22

OPPOSITION TO
EX PARTE APPLICATION

Peskoff v. Faber, 240 F.R.D. 26 (D.D.C. 2007) ................................................. 17

Playboy Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050 (S.D. Cal. 1999) ........... 5, 6, 7

Powers v. Thomas M. Cooley Law School, 2006 WL 2711512, *5

   (W.D. Mich. 2006) ......................................................................................... 17

Simon Property Group L.P. v. mySimon, Inc., 194 F.R.D. 639

   (S.D. Ind. 2000) ...................................................................................... 5, 6, 7, 19

Soto v. City of Concord, 162 F.R.D. 603 (N.D. Cal. 1995) ................................... 23

Superior Consultant Co. v. Bailey, 2000 WL 1279161, at *13

   (E.D. Mich. August 22, 2000) ......................................................................... 5, 7

Valley Bank of Nevada v. Superior Court, 15 Cal.3d 652 (1975) ............................ 23

Williams v. Mass. Mut. Life Ins. Co., 226 F.R.D. 144 (D. Mass. 2005) ............... 19, 20

**Other Authorities**

Cal. Const., Art. I, §1 ...................................................................................... 23

Moore's Federal Practice § 37A.44[3][b] (3d ed. 2007) ....................................... 17

**Rules**

Fed. R. Civ. P. 34(a)(1) ................................................................................ 15, 16

Rule 26(b)(2), Fed.R.Civ.P. ................................................................................ 22

Non-parties Margaret Hatch-Leahy, Elise Cloonan and Veronica Marlow (collectively, the "Non-Party Witnesses") hereby respectfully submit this Opposition ("Opposition") to Mattel's <u>Ex</u> <u>Parte</u> Application to (1) Compel Production of Electronic Media from Third-Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow or (2) in the Alternative, Modify the Scheduling Order ("Ex Parte Application").

## I.    INTRODUCTION

You have to hand it to Mattel.  When they want something, they do not let anything stand in their way – not even an order from the Court and certainly not the truth.  Not three weeks ago, this Court granted Mattel's Motion for Order Confirming that the Discovery Master Hears and Resolves All Discovery Disputes, Including Those With Third Parties, and entered an order stating that "[a]lthough the parties stipulated to the Discovery Master, that stipulation was entered as the Court's order, and as such, all parties are subject to that order unless relieved from it upon proper motion."[1] Notwithstanding this unambiguous order from the Court, Mattel has chosen to file its Ex Parte Application with the Court rather than with Judge Infante.  For this reason alone, the Court should deny this Ex Parte Application.  In addition, Mattel's purported pretext for filing this application in this Court – its request that the Court move the expert report deadline – is a ruse.  In a recent Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents By Isaac Larian; Denying Request for Sanctions (the "December 31 Order"), Judge Infante denied Mattel's motion to compel Mr. Larian to produce his computer hard drives and stated that "Rule 34 was not intended to authorize the routine production of a party's electronic devices."[2]  In light of Mattel's failure to convince Judge Infante to order a party to

---

[1]  Declaration of Larry McFarland in support of Opposition ("McFarland Decl."), Exhibit ("Exh.") 1 at 4.
[2]  McFarland Decl., Exh. 2 at 17.

1  produce his hard drives, Mattel was obviously concerned about its chances with respect

2  to non-parties, so it decided to go forum shopping.[3]  The Non-Party Witnesses

3  respectfully request that this Court deny Mattel's Ex Parte Application on this further

4  ground.

5         Unfortunately, Mattel's bad acts do not stop there.  At times, it seems as though

6  Mattel is simply disconnected from the truth.  For example, Mattel states in the first

7  sentence of its Ex Parte Application that "Veronica Marlow, Margaret-Hatch Leahy

8  and Elise Cloonan first refused to appear for deposition; only after Mattel brought a

9  motion to compel did they agree to appear."[4]  Mattel knows that this statement is not

10 true.[5]  Mattel further states in its Ex Parte Application that "[n]ow they refuse to turn

11 over electronic evidence of the creation and development of Bratz, including a zip disk

12

13 [3]  In addition, there are numerous discovery motions pending before Judge Infante that
14 if granted could result in depositions on the production of documents after the
   discovery cut-off date.  Mattel makes no effort to explain why this issue with respect to
15 Non-Party Witnesses requires the intervention of this Court or why this issue uniquely
16 impacts the expert witness disclosure date.
   [4]  Ex Parte Application at 1.
17 [5]  It is a matter of public record that all three of the Non-Party Witnesses not only
18 agreed to appear for their depositions before the filing of Mattel's Ex Parte Application
   to (1) Compel Depositions of Elise Cloonan, Margaret Hatch-Leahy, and Veronica
19 Marlow or (2) in the Alternative, Modify the Scheduling Order ("Ex Parte Application
20 re Deposition Dates") but in fact provided Mattel with the following deposition dates:
   December 12, 2007 for Ms. Leahy, December 14, 2007 for Ms. Cloonan and January 9,
21 2008 for Ms. Marlow.  McFarland Decl., Exh. 3.  Not satisfied with these dates, Mattel
22 filed its Ex Parte Application re Deposition Dates, requesting the depositions of the
   Non-Party Witnesses be taken on or before December 7, 2007.  McFarland Decl., Exh.
23 4.  At the hearing, Mattel's counsel essentially backed away from its request that the
24 deposition dates be moved up for Ms. Leahy and Ms. Marlow.  The Court requested
   that counsel for Ms. Marlow determine if she was available for deposition on December
25 28, 2007, which after conferring with his client, counsel confirmed.  The Court
26 accepted counsel's representation that the witnesses would appear on the agreed to
   dates, and as counsel informed the Court at the hearing held on January 7, 2008, all
27 three Non-Party Witnesses did in fact appear for their depositions on the agreed to
28 dates.  McFarland Decl., Exh. 5.

clearly labeled 'Bratz.'  Mattel again seeks an order to compel."[6]  This statement is also false.  As Mattel knows, and as set forth in detail below, counsel for Mattel and counsel for the Non-Party Witnesses reached agreement on a protocol for the review of the computer materials from Ms. Leahy and Ms. Cloonan.  Ms. Cloonan's computer and zip disk as well as Ms. Leahy's external hard disk drives were reviewed by an expert selected by Mattel pursuant to the agreed to protocol and all recovered documents were produced to Mattel prior to the depositions of these witnesses.[7]  What is happening now is that Mattel has decided that it wants to change the protocol and to review the computer, zip disk and external hard disk drives again.  Their only stated justification for this new protocol is that they speculate that there could be graphical files on the computer, zip disk or external hard disk drives that were not recovered pursuant to the expert's review based on the protocol.[8]  This type of rank speculation is the same type of fishing expedition that Judge Infante found to be improper with respect to Mattel's motion to inspect Mr. Larian's hard drives.[9]  In addition, the possibility that there might be graphical files on these computer materials has been known to Mattel since at least 2004 when Mr. Bryant testified that Ms. Cloonan's computer was used with respect to a Bratz logo.[10]  Regarding Ms. Marlow, she has fully complied with Mattel's subpoena and produced all responsive documents.[11]  Mattel's Ex Parte Application should be denied because counsel for the Non-Party Witnesses and Mattel agreed to a computer review Protocol; the computer, zip disk and external hard drives were reviewed pursuant to the Protocol; all documents located by the expert were produced, and the depositions of the Non-Party Witnesses were taken.

---

[6]  Ex Parte Application at 1.
[7]  McFarland Decl., Exh. 6.
[8]  See Ex Parte Application.
[9]  See McFarland Decl., Exh. 2.
[10]  McFarland Decl., Exh. 7 at v.1 245:17-23, v.2 29:12-14, 30.
[11]  McFarland Decl., Exh. 8 at 94:22-25, 95-96, 97:1-21, 104:1-25, 105:1-16.

In addition to violating this Court's order by not filing its Ex Parte Application with Judge Infante and misrepresenting the facts, Mattel has also violated this Court's Standing Order, in which the Court reminds counsel "that ex parte applications are solely for extraordinary relief."[12]  In order to bring a motion ex parte, Mattel is required to establish that it is without fault in creating the alleged crisis.  Mattel has utterly failed to carry this burden.  The protocol for the review of the computers, zip disk and external hard disk drives was agreed to on September 27, 2007, and all of the documents recovered by the expert recommended by Mattel were delivered to Mattel by December 4, 2007.[13]  If Mattel was not satisfied with the documents recovered and produced pursuant to the protocol, it could have filed a regularly noticed motion back in early December 2007.  It chose not to do so, but instead filed this Ex Parte Application two court days before discovery cut-off.  This application fails to satisfy the standards for ex parte relief and should be denied on this ground as well.

Mattel's Ex Parte Application is entirely without merit and a waste of the Court's valuable time and resources.  Accordingly, the Non-Party Witnesses respectfully request that the Court deny Mattel's Ex Parte Application.

## SUMMARY OF FACTS [14]

On June 21, 2007, Mattel's counsel, Susan Wines, sent a letter to counsel for the

---

[12]  Court's Standing Order at 5.

[13]  See Tayback Declaration in support of Ex Parte Application, Exh. 18; McFarland Decl., Exh. 9.

[14]  Mattel's Ex Parte Application is replete with factual misstatements, many of which notably do not contain any citation to the record.  For example, Mattel states that Ms. Marlow, Ms. Leahy and Ms. Cloonan are represented by "counsel retained by MGA."  Ex Parte Application at 1.  There is no citation to support this statement because there is no evidence in the record to support it.  Consistent with the page limits for this Opposition, the Non-Party Witnesses have addressed Mattel's misstatements that are relevant to the Ex Parte Application, but the Non-Party Witnesses do not want their silence as to other statements to be taken as agreement to the truth of those statements.

Non-Party Witnesses, stating that "Mattel is entitled to inspect and image

Ms. Halpern's[15] and Ms. Cloonan's hard drives," and demanding that Mattel be

provided with "a mirror image of their hard drives" to review for relevant

information.[16]  However, Ms. Wines did not provide any justification for the

inspection.  Instead, Ms. Wines focused her attention on attempting to argue that

Federal Rule of Civil Procedure 34 allows discovery of electronic storage media in

some instances.  In support, Ms. Wines cited the Advisory Committee Notes to Rules

34 and 45, and four federal cases: <u>Playboy Enterprises, Inc. v. Welles</u>, 60 F. Supp. 2d

1050, 1053 (S.D. Cal. 1999); <u>Simon Property Group L.P. v. mySimon, Inc.</u>, 194 F.R.D.

639, 640-41 (S.D. Ind. 2000); <u>Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.</u>, 2003

WL 2123065, at *4, fn. 5 (N.D. Ill. 2003); and <u>Superior Consultant Co. v. Bailey</u>, 2000

WL 1279161, at *13 (E.D. Mich. August 22, 2000).[17]

    On June 28, 2007, Mr. McFarland responded in a letter to Ms. Wines rejecting

Mattel's request that Ms. Halpern and Ms. Cloonan make their hard drives available to

---

[15]  The original negotiations with Mattel also involved an old computer owned by
Ms. Halpern which is not the subject of Mattel's Ex Parte Application.

[16]  <u>See</u> McFarland Decl., Exh. 6.  In addition, Mattel tries to make an issue of the fact
that Ms. Cloonan gave the zip disk to counsel in approximately April 2005.  <u>See</u> Ex
Parte Application at 1, 3 and 7.  Mattel knows full well that the inference that
Ms. Cloonan's counsel did anything improper is completely groundless.  In a letter
dated June 1, 2007, Susan Wines, a partner at Quinn Emanuel, states "Mattel previously
served a subpoena on your client, Elise Cloonan, on May 13, 2005.  Mattel's subpoena
called for the production of documents on May 27, 2006.  As you know, before the
return date, the District Court stayed all proceedings in this action."  McFarland Decl.,
Exh. 10.  Moreover, as part of the meet-and-confer, Mr. McFarland confirmed these
facts to Mattel's counsel in a letter dated January 2, 2008.  McFarland Decl., Exh. 11.
The truth is that after the stay was lifted, and as set forth in detail in this Opposition,
counsel for Mattel and the Non-Party Witnesses met-and-conferred and agreed on a
Protocol for the review of the computer materials, and all such computer materials were
reviewed pursuant to the Protocol.  <u>See</u> McFarland Decl., Exh. 6.

[17]  <u>See</u> McFarland Decl., Exh. 6.  Mattel cites the exact same authorities in its Ex Parte
Application.

OPPOSITION TO
EX PARTE APPLICATION

1  Mattel.[18]  Mr. McFarland distinguished the cases cited by Ms. Wines as follows:

2      With respect to the authorities set forth in your June 21, 2007, letter

3      alleging that Mattel is "entitled to inspect and image" the personal

4      computers belonging to Elise Cloonan and Sarah Halpern, the cases that

5      you cite fail to support your position.

6      For instance, while we, of course, agree that the term "documents"

7      includes documents stored in electronic form, the significance of <u>Playboy</u>

8      <u>Enterprises, Inc. v. Welles</u>, 60 F.Supp.2d 1050 (S.D. Cal. 1999) is that

9      this case establishes a strict protocol to be followed when discoverable

10     information is sought from an opposing party's computer hard drives.

11     The <u>Playboy</u> court set forth a protocol which would allow the party

12     requesting discovery to recover discoverable information while at the

13     same time protecting the privacy and privilege concerns of the responding

14     party.  The protocol called for an independent third-party expert, agreed

15     upon by both parties or appointed by the court, to conduct the inspection

16     and create a "mirror image" copy of the defendant's computer hard drive.

17     Following the inspection, the "mirror image" copy would be given to the

18     defendant's counsel, who would then print and review any recovered

19     documents and produce to the plaintiff those communications that are

20     responsive and relevant.  Finally, the court noted that the defendant's

21     counsel would be the sole custodian of the "mirror image" copies

22     throughout the litigation.

23     Your letter also cites <u>Simon Property Group L.P. v. mySimon, Inc.</u>,

24     194 F.R.D. 639 (S.D. Ind. 2000) as support for the proposition that

25     deleted records are discoverable and that courts routinely permit

26     inspection of home computers.  As in <u>Playboy</u>, <u>Simon Property</u> also

27

28  [18]  McFarland Decl., Exh. 12.

- 6 -

1   involved a plaintiff seeking access to defendant's computers for the
2   purpose of attempting to recover discoverable information, including
3   deleted files.  The court ordered a protocol requiring the inspection and
4   "mirror image" copying to be conducted by a third-party expert.  In doing
5   so, the court referred to Playboy's protocol as offering the best approach,
6   and fashioned a protocol which was nearly identical to the one in Playboy.
7   The court stated that plaintiff and defendant should attempt to agree on an
8   expert to inspect and create a "mirror image" of the hard drives, and if
9   they failed to do so, the court would appoint one.  The expert would then
10  make the "mirror image" copy, and provide the copy to defendant's
11  counsel.  However, the copying would be limited to "the types of files
12  reasonably likely to contain material potentially relevant" to the case.
13  Thereafter, defendant's counsel would review the records for privilege
14  and responsiveness to plaintiff's discovery requests, and supplement
15  defendant's responses to discovery requests, as appropriate.  Finally, the
16  court ordered that the expert would sign the protective order and retain
17  until the end of the litigation the "mirror image" copies of the hard drives,
18  without "disclos[ing] the contents of any files or documents to plaintiff or
19  its counsel or other persons."

20      The third case that you cite, Superior Consultant Co. v. Bailey,
21  2000 WL 1279161 (E.D. Mich. 2000), further supports the protocol
22  applied in Playboy and Simon Property.  Finally, Kucala Enterprises, Ltd.
23  v. Auto Wax Co., Inc., 2003 WL21230605 (N.D. Ill. 2003) is not
24  applicable to our case.  That case concerned the plaintiff's acts of
25  spoliation and destruction of evidence, which is not present with
26  Ms. Cloonan or Ms. Halpern.

27      Of further significance is the fact that each of the four cases cited in
28  your letter concerns discovery as between *parties* to an action.  However,

both of our clients are non-party *witnesses* in this case.  Since courts already protect the privacy and privilege interests of parties in these inspection cases, there will likely be a much greater level of protection for non-parties.  Thus, in order to inspect our clients' computer hard drives, the Court may force Mattel to meet a much higher burden than when dealing with a party.[19]

Notwithstanding the fact that Mattel had failed to meet its burden of establishing that it had the right to inspect Ms. Cloonan's and Ms. Halpern's hard drives, counsel for Ms. Cloonan and Ms. Halpern met-and-conferred with counsel for Mattel in an effort to move discovery forward.  As part of this effort, counsel for Ms. Cloonan and Ms. Halpern agreed that with respect to these particular witnesses, he would allow their old computers to be reviewed on the condition that the computer review protocol provided adequate protections to prevent unnecessary intrusion into their private affairs. Mr. McFarland also emphasized numerous times that all of the documents needed to be produced and the computers reviewed prior to the depositions of the Non-Party Witnesses because he did not want Mattel to use the fact that not all of the documents had been produced as an excuse to depose these witnesses a second time.[20]

After a series of discussions spanning almost three months, Ms. Wines backed down from her demand that the hard drives be produced to Mattel and finally agreed to a more reasonable approach for identifying and producing responsive, non-privileged documents from Ms. Cloonan's and Ms. Halpern's computer materials.  On September 13, 2007, Ms. Wines sent a letter to Mr. McFarland proposing a protocol (the "Protocol") to manage the electronic discovery of Ms. Cloonan's and Ms. Halpern's computer materials.[21]  The Protocol allowed Mattel to receive the relevant information

---

[19] See McFarland Decl., Exh. 12 (footnotes omitted).
[20] McFarland Decl., Exh. 13.
[21] See McFarland Decl., Exh. 6.

located on the hard drives while necessarily protecting the privacy and confidentiality interests of Ms. Cloonan and Ms. Halpern.  The Protocol called for an independent expert recommended by Mattel, Rick Albee of DataChasers, Inc. ("DataChasers"), to review the hard drives for responsive documents based upon search terms provided by Ms. Wines.  Counsel for Ms. Cloonan and Ms. Halpern agreed to all of the search terms requested by Ms. Wines, which included Bratz, MGA, Carter Bryant, Isaac Larian, Prayer Angels and many others.  Mr. Albee would then deliver the recovered documents to Mr. McFarland, who would have ten court days to review the documents for privileged information.  Mr. Albee would then provide Mattel's counsel with all of the non-privileged documents.[22]

The Protocol was signed by both counsel and became effective on September 27, 2007.  Later that day, Mr. McFarland and Ms. Wines agreed to add Ms. Leahy's external hard disk drives to the Protocol.[23]

Mr. Albee picked up the computer materials from Mr. McFarland's office to conduct the review pursuant to the Protocol and on October 26, 2007, counsel for the Non-Party Witnesses authorized DataChasers to produce to Mattel all of the documents recovered pursuant to the Protocol.[24]  No documents were withheld by counsel for the Non-Party Witnesses.[25]  On November 21, 2007, counsel for Ms. Cloonan notified Mattel's counsel that DataChasers had not picked up Ms. Cloonan's zip disk and offered to deliver the zip disk to DataChasers.[26]  To speed up the process, counsel for Ms. Cloonan further offered to review anything found by DataChasers on the disk within five court days rather than the ten court days allowed under the Protocol.[27]  On

---

[22] Id.
[23] McFarland Decl., Exh. 14.
[24] McFarland Decl., Exh. 15.
[25] McFarland Decl., Exh. 30.
[26] McFarland Decl., Exh. 16.
[27] Id.

OPPOSITION TO
EX PARTE APPLICATION

November 28, 2007, Mattel's counsel, Dylan Proctor, approved DataChasers' review of the zip disk, agreeing "to follow the protocol outlined in [its] September 13, 2007 letter" with respect to that zip disk.[28]  On November 30, 2007, DataChasers provided counsel for Ms. Cloonan with a copy of the only document that was recovered from Ms. Cloonan's zip disk.[29]  Two court days later, on December 4, 2007, a copy of the document was hand-delivered to Mattel's counsel.[30]  Accordingly, by December 4, 2007, Mattel's counsel had received all documents from the Non-Party Witnesses' computer materials that were identified and recovered pursuant to the Protocol.  Mattel took the depositions of Ms. Leahy on December 12, 2007,[31] and of Ms. Cloonan on December 14, 2007.[32]

On December 17, 2007, after the depositions of Ms. Leahy and Ms. Cloonan, Mr. McFarland called Mr. Albee and during that conversation, Mr. Albee told Mr. McFarland that Mattel's counsel had called and told him that Mattel wanted to change the Protocol.  Prior to that time, Mattel's counsel had not informed Mr. McFarland of its attempt to change the Protocol with Mr. Albee.  Shortly thereafter, Mr. McFarland sent a letter to Mr. Albee confirming the telephone conversation and placing Mr. Albee "on written notice that you are not authorized to conduct any further examination of my clients' Property or to access, analyze or review my clients' Property in any manner."[33]  The next day, Mr. McFarland sent a second letter to Mr. Albee repeating the instructions of the December 17 letter.[34]  Both of these

---

[28]  McFarland Decl., Exh. 17.
[29]  McFarland Decl., Exh. 18.
[30]  See McFarland Decl., Exh. 9.
[31]  McFarland Decl., Exh. 19.
[32]  McFarland Decl., Exh. 20.
[33]  McFarland Decl., Exh. 21.
[34]  McFarland Decl., Exh. 22.

OPPOSITION TO
EX PARTE APPLICATION

letters were copied to Mattel's counsel.

On December 28, 2007, Mattel took the deposition of Ms. Marlow.[35]

On January 2, 2008, Mattel's counsel sent a letter to Mr. McFarland alleging that it had only recently learned of Ms. Marlow's computers and demanding that the computers "be immediately provided to Mattel for imaging and analysis."[36]  Prior to this time, Mattel had not requested to review or obtain copies of Ms. Marlow's hard drives.[37]  Counsel for Ms. Marlow responded that "Ms. Marlow has fully complied with her discovery obligations by searching her hard drives and producing all relevant documents in response to Mattel's requests."[38]  Counsel for Ms. Marlow also disputed Mattel's claim that it has just learned that Ms. Marlow used computers: "You have known for quite some time that Ms. Marlow sent and received e-mails because we produced such relevant e-mails well prior to her deposition and I believe that MGA has also produced e-mails which were sent to Ms. Marlow."[39]  In an e-mail dated January 9, 2008, Mattel's counsel demanded additional review of each of the Non-Party Witnesses' hard drives and additional deposition time for each of the Non-Party Witness.[40]  Counsel for the Non-Party Witnesses responded that the "computers have already been reviewed pursuant to the protocol that your partner, Susan Wines, and I agreed to several months ago.  Moreover, all of the documents located by the expert's search pursuant to the agreed to protocol have already been produced and both Ms. Leahy and Ms. Cloonan have been deposed.  We are, therefore, not willing at this late date to agree to a new protocol."[41]

---

[35] See McFarland Decl., Exh. 8.
[36] McFarland Decl., Exh. 23.
[37] Id.
[38] McFarland Decl., Exh. 24.
[39] Id.
[40] McFarland Decl., Exh. 25.
[41] See McFarland Decl., Exh. 24.

On January 17, 2008, Mattel's counsel stated in an e-mail to Mr. McFarland that it "will be filing an ex parte application next week to compel the production of the imaged hard drives mentioned above and the zip disk, as we previously discussed, or in the alternative to modify the scheduling order to allow sufficient time for expert examination of such items and disclosure of an expert report in the event the Court requires us to proceed by noticed motion."[42]  The next day, on January 18, 2008, Mr. McFarland responded in a letter objecting to the ex parte nature of the application and opposing the merits of Mattel's claims.[43]

Mattel filed its Ex Parte Application at approximately 9:25 p.m. on January 23, 2008, but did not serve the un-redacted Tayback Declaration on counsel for the Non-Party Witnesses until approximately 9:30 a.m. on Friday, January 25, 2008.[44]

## II.   ARGUMENT

### A.   Mattel's **Ex Parte** Application Should Be Denied Because Mattel Has Not Satisfied The Standards For **Ex Parte** Relief.

As this Court has observed, "[e]x parte applications have reached epidemic proportions in the Central District." In re Intermagnetics America, Inc., 101 B.R. 191, 192 (C.D. Cal. 1989).  Since that statement was made, "the abusive use of ex parte motions has worsened."  Mission Power Engineering Co. v. Continental Cas. Co., 883 F. Supp. 488, 489 (C.D. Cal. 1995).  "This abuse is detrimental to the administration of justice and, unless moderated, will increasingly erode the quality of litigation and present ever-increasing problems…."  Id.  Consequently, "[e]x parte motions are rarely justified," id. at 490, and "are nearly always improper."  In re Intermagnetics, 101 B.R. at 192.  Indeed, as the Court's Standing Order makes clear, "ex parte applications are solely for extraordinary relief."[45]

---

[42]  McFarland Decl., Exh. 26.
[43]  McFarland Decl., Exh. 27.
[44]  McFarland Decl., Exh. 28.
[45]  Court's Standing Order at 5, citing Mission Power, 883 F. Supp. 488.

Because of the urgency that attends ex parte applications, courts hold such requests and those who file them to greater scrutiny than in the case of regularly filed motions.  See Mission Power, 883 F. Supp. at 492 ("Lawyers must understand that filing an ex parte motion … is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!'  There had better be a fire.").  Therefore, ex parte relief is only warranted where the movant establishes that (1) the movant will suffer irreparable prejudice absent the requested relief, and (2) "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect."  Id.

> To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer.  …  For example, merely showing that trial is fast approaching and that the opposing party still has not answered crucial interrogatories is insufficient to justify ex parte relief.  The moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period.

Id. at 493.

As is shown below, Mattel has not satisfied either prong of the two-part test set forth in Mission Power.

### 1.    Mattel Will Not Be Prejudiced if the Court Does Not Compel the Non-Party Witnesses to Produce Additional Discovery.

Contrary to its assertions, Mattel will not suffer prejudice if the Court denies its Ex Parte Application.  Mattel will simply not receive the strategic advantage that it

1  sought by filing its application ex parte.[46]

2       Mattel argues that it will be prejudiced because "[t]he current deadline for the

3  disclosure of expert reports is February 11, 2008.  To have any consultant meaningfully

4  review and analyze the computer hard drives and the Zip disk and to produce a timely

5  report, the witnesses' media must be provided to Mattel immediately."[47]  Mattel has

6  failed to meet its burden because "merely showing that trial is fast approaching and that

7  the opposing party still has not answered crucial interrogatories is insufficient to justify

8  ex parte relief."  Mission Power, 883 F. Supp. at 493.  All of the documents recovered

9  pursuant to the Protocol were delivered to Mattel by December 4, 2007.  "Ex parte

10  applications are not intended to save the day for parties who have failed to present

11  requests when they should have," as is clearly the case here.  In re Intermagnetics, 101

12  B.R. at 193.

13         **2.    Mattel's Own Actions Contributed to this Alleged Crisis.**

14       Mattel also fails to satisfy the second prong of Mission Power—that is, Mattel

15  has not shown that it is "without fault in creating the crisis that requires ex parte relief,

16  or that the crisis occurred as a result of excusable neglect."  Mission Power, 883 F.

17  Supp. at 492.  "The moving party must also show that it used the entire discovery

18  period efficiently and could not have, with due diligence, sought to obtain the

19  discovery earlier in the discovery period."  Id. at 493.  Mattel proposed the Protocol

20

21  ───────────────
   [46]  See, e.g., Mission Power, 883 F. Supp. at 490-91 (recognizing that in filing ex parte

22  applications, "[t]he goal often appears to be to surprise opposing counsel or at least

23  force him or her to drop all other work to respond on short notice….  All of this detracts

24  from a fundamental purpose of the adversary system, namely, to give the court the best
   possible presentation of the merits and demerits of the case on each side.  The opposing

25  party can rarely make its best presentation on such short notice."); In re Intermagnetics

26  America, Inc., 101 B.R. 191, 193 (C.D. Cal 1989) ("Ex parte applications throw the
   system out of whack.  They impose an unnecessary administrative burden on the court

27  and an unnecessary adversarial burden on opposing counsel who are required to make a
   hurried response under pressure, usually for no good reason.").

28  [47]  Ex Parte Application at 11.

1   that the Non-Party Witnesses agreed to in September 2007, and all documents that the

2   expert recovered pursuant to that Protocol were produced to Mattel by December 4,

3   2007.  With respect to Ms. Marlow, Mattel did not even request to inspect and copy her

4   hard drives until January 2, 2008.  In light of these facts, Mattel decided to wait until

5   January 23, 2008, to file this Ex Parte Application.  Mattel not only contributed to, but

6   in fact caused, this alleged crisis.

7   **B.**    **Mattel's Ex Parte Application Should Be Denied Because**

8   **Ms. Marlow Has Fully Complied With Her Discovery**

9   **Obligations.**

10      In response to Mattel's subpoena, Ms. Marlow produced over eight thousand

11   pages of documents.[48]  Ms. Marlow further testified in her deposition that all of her files

12   were thoroughly reviewed and that she produced all responsive documents prior to her

13   deposition.[49]  Ms. Marlow further testified that she has never thrown away, shredded or

14   destroyed any documents related to Bratz and that the documents that she turned over to

15   her counsel represented every single document that she ever had relating to Bratz.[50]

16   Mattel has submitted no evidence to the contrary and, in fact, makes no effort to

17   establish why it should be allowed to obtain Ms. Marlow's hard drives.[51]

18      Instead, Mattel focuses its energies attempting to argue that Rule 34 allows

19   discovery of electronic storage media in some instances.  Rule 34, however, focuses

20   on "documents or electronically stored *information*," Fed. R. Civ. P. 34(a)(1)

21   (emphasis added), and not electronic storage *devices*.  The language of the Committee

22   Note Mattel cited merely confirms that the amendment to Rule 34(a)(1) "may be

23

24   ---

[48]   McFarland Decl., Exh. 29.

25   [49]   See McFarland Decl., Exh. 8 at 94:22-25, 95-96, 97:1-21, 104:17-25, 105:1-16.

26   [50]   Id. at 104:17-25, 105:1-16.

27   [51]   In addition, Ms. Marlow testified that she does not "know about computers" and that
       she never used computers for her work on Bratz other than for some e-mails.  Id. at 15,

28   16 and 323.

1   important for … electronically stored ***information***…."  Fed. R. Civ. P. 34(a)(1), 2006

2   Adv. Comm. Notes (emphasis added).  The interesting part of the Committee Note,

3   however, is the portion that Mattel omitted, which notes the amendment of Rule 34

4   relating to "electronically stored ***information is not meant to create a routine right of***

5   ***direct access to a party's electronic information system***."  Id.  The Committee also

6   noted that, "although such access might be justified in some circumstances," "***Courts***

7   ***should guard against undue intrusiveness resulting from inspection or testing such***

8   ***systems***."  Id. (emphasis added).

9         As such, "[c]ourts should guard against undue intrusiveness resulting from

10  inspecting or testing such systems."  Id.  Thus, Rule 34(a) does not entitle a party to "a

11  routine right of direct access to a party's electronic information system…."  Id.  "Even

12  in cases where courts have found computer imaging and inspection to be warranted, the

13  courts have nonetheless adopted procedures to protect privilege and privacy

14  concerns."[52]  Caylon v. Mizuho Sec. USA Inc., No. 07CIV02241RODF, 2007 WL

15  1468889, at *3 (S.D.N.Y. May, 28, 2007); see In re Ford Motor Co., 345 F. 3d 1315,

16  1317 (11th Cir. 2003) (observing that "the district court must 'protect respondent with

17  respect to preservation of his records, confidentiality of nondiscoverable matters, and

18  costs.'"), quoting Fed. R. Civ. P. 34, 1970 Adv. Comm. Notes.

19        When a party is obligated to produce electronically-stored documents in

20  response to discovery requests, it is the responding party's obligation to conduct the

21  search and review of its own documents.  In re Ford Motor Co., 345 F. 3d at 1317

22  ("Like the other discovery rules, Rule 34(a) allows the responding party to search his

23  records to produce the required, relevant data.  Rule 34(a) does not give the requesting

24  party the right to conduct the actual search."); Fifty-Six Hope Road Music, Ltd. v.

25

26  _____

27  [52]  Ms. Marlow objected to Mattel's subpoena "to the extent that it violates her United
    States and California constitutional, statutory and common law rights of privacy in her

28  financial and confidential information."  McFarland Decl., Exh. 33.

1  <u>Mayah Collections, Inc.</u>, 2007 WL 1726558, at *9 (D. Nev. 2007) ("It is [the

2  responding party's] obligation to review its records and produce relevant, non-

3  privileged documents and information."); <u>Peskoff v. Faber</u>, 240 F.R.D. 26, 31 (D.D.C.

4  2007) ("[T]he producing party has the obligation to search available electronic systems

5  for the information demanded."), <u>quoting</u> <u>McPeek v. Ashcroft</u>, 202 F.R.D. 31, 32

6  (D.D.C. 2001)); <u>Powers v. Thomas M. Cooley Law School</u>, 2006 WL 2711512, *5

7  (W.D. Mich. 2006) ("The discovery process is designed to be extrajudicial, and relies

8  upon the responding party to search his records to produce the requested data.  In the

9  absence of a strong showing that the responding party has somehow defaulted in this

10 obligation, the court should not resort to extreme, expensive, or extraordinary means to

11 guarantee compliance."); <u>Floeter v. City of Orlando</u>, No. 6:05-cv-400-Orl-22KRS,

12 2006 WL 1000306, at *3 (M.D. Fla. Apr. 16, 2006), <u>quoting</u> <u>In re Ford Motor Co.</u>, 345

13 F.3d at 1317.

14      Courts generally require that a requesting party prove improper conduct before

15 compelling the production of a computer hard drive because hard drives "often contain

16 information that is not relevant to the claims and defenses pleaded in a complaint, or

17 that is subject to a claim of privilege, such as attorney-client, work product, trademark

18 or copyright privileges."  Moore's Federal Practice § 37A.44[3][b] (3d ed. 2007).

19 Rather than putting forth evidence, Mattel merely speculates that "there is no substitute

20 for an examination of what documents related to Bratz have been deleted from these

21 hard drives."[53]

22      However, courts will not compel the inspection of a responding party's computer

23 hard drive for a purely speculative inquiry, or in the absence of a showing by the

24 requesting party that the documents it seeks actually exist or that the responding party

25 has unlawfully failed to produce them.  <u>Bethea v. Comcast</u>, 218 F.R.D. 328, 330

26 (D.D.C. 2003); <u>Floeter</u>, 2006 WL 1000306, at *3 (plaintiff "has not made any showing

27 
_____

28 [53]  Ex Parte Application at 10.

1    that he has requested information contained on these computer hard drives that the

2    [defendant] has failed to produce"); <u>Balfour Beatty Rail, Inc. v. Vaccarello</u>, No. 3:06-

3    cv-551-J-20MCR, 2007 WL 169628, at *2-3 (M.D. Fla. Jan. 18, 2007) (court denied

4    motion to compel because "Plaintiff's requests simply seek computer hard drives.

5    Plaintiff does not provide any information regarding what it seeks to discover from the

6    hard drives nor does it make any contention that Defendants have failed to provide

7    requested information contained on these hard drives.").  In addition, as courts have

8    held, the mere fact that a requesting party is skeptical that a responding party has

9    produced copies of all relevant and non-privileged documents does not warrant

10   compelling production of the responding party's hard drives.  See <u>McCurdy Group,</u>

11   <u>LLC v. Am. Biomedical Group, Inc.</u>, 9 Fed. Appx. 822, 831 (10th Cir. 2001) (court

12   denied motion to compel because plaintiff "has never explained, either in the district

13   court or on appeal, why it should be allowed to conduct a physical inspection of

14   [defendant]'s computer hard drive(s)."); <u>Ameriwood Indus., Inc. v. Liberman</u>, No. 4-

15   06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006) ("[A] party may not

16   inspect the physical hard drives of a computer merely because the party wants to search

17   for additional documents responsive to the party's document requests.").

18        In his December 31 Order, Judge Infante stated that Mattel "contends that Rule

19   34 permits a party to obtain and test computer hard drives and other storage devices."[54]

20   Judge Infante denied Mattel's request stating that "Larian correctly notes that Rule 34

21   was not intended to authorize the routine production of a party's electronic drives."[55]

22   Mattel fails to demonstrate that Ms. Marlow's document production was inadequate.

23   Moreover, Mattel has not shown that the information it seeks even exists.  Instead,

24   Mattel simply claims that because the Protocol was never applied to Ms. Marlow, her

25   "computer has never been 'key word' searched and presently is, to Mattel's

26

27   [54] <u>See</u> McFarland Decl., Exh. 2 at 16.

28   [55] <u>Id</u>. at 17.

knowledge, in Ms. Marlow's physical possession rather than in the possession of an independent expert."[56]  However, the fact that Ms. Marlow's hard drives were not "key word" searched or that they are still in her possession in no way suggests that her document production was insufficient.  Courts are clear that in order to compel production of the hard drives, especially after responsive documents have been produced, Mattel must either show that Ms. Marlow's discovery obligations have not been fully complied with or that there are serious concerns over discrepancies or inconsistencies in the discovery responses.  See In re Ford Motor Co., 345 F.3d at 1317 (acknowledging that "improper conduct on the part of the responding party," such as "a factual finding of some non-compliance with discovery rules," may allow the requesting party itself to check the computer hard drives); Balfour Beatty Rail, Inc., 2007 WL 169628 at 3 ("[A]llowing a party direct access to another party's databases may be warranted in certain situations, such as a showing of non-compliance with discovery rules."); Williams v. Mass. Mut. Life Ins. Co., 226 F.R.D. 144, 146 (D. Mass. 2005) (plaintiff's request for forensic review of defendants' hard drives denied where plaintiff "provided no reliable or competent information to show that Defendants' representations … are misleading or substantively inaccurate."); Simon Prop. Group L.P. v. mySimon, Inc., 194 F.R.D. 639, 641 (S.D. Ind. 2000) (allowing plaintiff to mirror image defendant's computers where there were "troubling discrepancies with respect to defendant's document production").  Mattel's argument with respect to the third-party witnesses Pedro Salazar, Maria Salazar, Ana Isabela Cabrera and Beatriz Morales also fails to satisfy Mattel's burden to establish that there was any improper conduct on the part of Ms. Marlow with respect to her discovery obligations.  In fact, the opposite is true.  While Mattel claims that it did not "discover" these alleged "co-conspirators" until Ms. Marlow's deposition on December 28, 2007, the record shows otherwise.  It is undisputed that Ms. Marlow

---

[56]  Ex Parte Application at 6 n.17.

1   produced numerous documents no later than November 21, 2007, which identified all

2   of these individuals.[57]

3          Mattel has failed to establish that Ms. Marlow's discovery obligations have not

4   been fully satisfied and has failed to establish that the documents it seeks actually exist.

5   Instead, Mattel relies on highly speculative conjecture, which Judge Infante as well as

6   numerous courts have held is insufficient to warrant Mattel's requested relief.[58]

7          **C.     Mattel Has No Basis For Seeking A New Computer Protocol.**

8          Mattel now refers to the Protocol that counsel for Ms. Cloonan and Ms. Leahy

9   and counsel for Mattel spent months negotiating as merely "*initial* searches of those

10  computer hard drives…."[59]  Nothing could be further from the truth.  As the

11  correspondence establishes, counsel for Ms. Cloonan and Ms. Leahy repeatedly

12  stressed the importance of insuring that all documents were produced before the

13  depositions so that these third-party witnesses would not be burdened with a second

14  deposition beyond the seven-hour limit set forth in the federal rules.[60]  As part of this

15  effort, counsel for Ms. Cloonan and Ms. Leahy negotiated the Protocol with

16  Ms. Wines, and the September 13, 2007, letter from Ms. Wines unambiguously states

17  as follows: "I follow up on our telephone conversation today regarding the protocol for

18  the inspection of computer hard drives and laptop computers."[61]  This was not an

19  "initial" review; this was the agreed-to Protocol.

20         Faced with this fact, Mattel tries to argue that there is some new evidence that

21  establishes that there is an "issue or question regarding the authenticity, correctness,

22

23  _____

24  [57]  <u>See</u> McFarland Decl., Exh. 30.

25  [58]  <u>See</u> e.g., <u>Williams</u>, 226 F.R.D. at 146 (absent any credible evidence that responding
    party failed to produce requested e-mail, court declined to order inspection of computer

26  hard drive).

27  [59]  Ex Parte Application at 2.
    [60]  <u>See</u> McFarland Decl., Exh. 13.

28  [61]  <u>See</u> McFarland Decl., Exh. 6.

integrity or completeness...." of the computer review.[62]  However, rather than putting forward evidence,[63] Mattel merely speculates that there might be some graphical files on the computers, zip disk or storage devices.[64]  For example, Mattel states in its Ex Parte Application that "the keyword searches do not capture the evidence that arises from the *absence* of documents on the computer hard drives, specifically the absence of documents that these witnesses testified at the deposition should have been located on their respective hard drives but which were not, for some reason, produced."[65]  Conspicuously absent from this statement is any citation to the record; the reason being that neither Ms. Cloonan nor Ms. Leahy ever made any such statement.

---

[62]  Id.

[63]  Mattel's attempt to justify a new protocol based on the identification of Pedro Salazar, Maria Salazar, Ana Isabela Cabrera and Beatriz Morales is without merit.  As an initial matter, these four people assisted Ms. Marlow with the sewing of the Bratz fashions and nothing more.  See McFarland Decl. at Exh. 8 at 282:22-25, 283-314, 315:1-13.  The evidence is undisputed that Ms. Cloonan did no work on and had no involvement with the fashions for Bratz.  See McFarland Decl., Exh. 21 at 117-131, 132:1-13, 147:6-23, 289:4-6.  Similarly, Ms. Leahy did not work on the fashions for Bratz.  McFarland Decl., Exh. 20 at 101:14-23, 130:6-25, 131:1, 149:6-18, 206:2-14.  Further, the Protocol already included the terms Veronica Marlow, Bratz, MGA and others, which covers the type of work that these four individuals did.  See McFarland Decl., Exh. 6.  Finally, these four witnesses were disclosed in documents produced by Ms. Marlow no later than November 21, 2007.  McFarland Decl., Exh. 30.  If Mattel wanted to add these names to the Protocol they could have done so prior to the depositions, which were not taken until December 12 and 14, 2007.

[64]  Ex Parte Application at 2, 3.  In fact, this involves two levels of speculation.  The first is that such graphical files exist and the second is that, if they exist, they would not have been located by key word searches that included words such as Bratz, MGA and Carter Bryant.  In addition, it is undisputed that Mattel has known since 2004 that there could possibly be graphical files on Ms. Cloonan's computer because Mr. Bryant testified that he used her computer to work on his Bratz presentations.  See McFarland Decl., Exh. 7 at v.1 245:17-23, v.2 29:12-14, 30.  This knowledge predates by almost three years the date that Ms. Wines proposed the Protocol.

[65]  Ex Parte Application at 3.

As an initial matter, Judge Infante has already found in similar circumstances that such speculation regarding allegedly missing or deleted files does not support obtaining copies of hard drives:

> However, Mattel fails to explain how these alleged instances of evidence destruction justify Request 222, other than to assert that it has a right to inspect Larian's storage devices to ensure that relevant information has not been deleted or permanently destroyed.  Mattel's stated purpose suggests that instead Mattel is launching a fishing expedition in pursuit of new claims, which is not permitted under the Federal Rules of Civil Procedure.  See e.g. Rivera v. NIBCO, Inc., supra.[66]

Moreover, it is important to note that Mr. Larian is a party where Ms. Cloonan and Ms. Leahy are not.  Judge Infante recently emphasized the importance of this distinction as follows:

> Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.  These restrictions are particularly important to consider where the discovery requests are directed at a non-party.  See Moon v. SCP Pool Corp., 232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc., 649 F.2d 649 (9th Cir. 1980) (discovery should be "more

---

[66] See McFarland Decl., Exh. 2 at 17.

1    limited to protect third parties from harassment, inconvenience, or disclosure

2    of confidential information.").[67]

3    Given the complete lack of evidence to establish any basis for a new Protocol,

4    and the fact that Ms. Leahy and Ms. Cloonan are non-parties, the rulings by Judge

5    Infante should be dispositive.

6    Mattel also asserts that "[i]n general, federal law does not recognize a right to

7    privacy that entitles a party to withhold documents."[68]   In the January 25 Order, Judge

8    Infante rejects this argument, stating that:

9      Personal financial information is afforded protection by the California

10     Constitution that is also recognized by federal courts.  Cal. Const., Art. I, §1;

11     Valley Bank of Nevada v. Superior Court, 15 Cal.3d 652, 656 (1975); Kelly

12     v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

13     should give "some weight" to privacy rights that are protected by state

14     constitutions); Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal.

15     1995) (right to privacy in financial information has been recognized by

16     federal courts).  When a privacy right is asserted as an objection to discovery,

17     the court must balance the need for the information versus the privacy right

18     asserted.  Soto, 162 F.R.D. at 616.[69]

19   Apparently realizing that it is wrong with respect to its argument that federal law

20   does not recognize privacy rights, Mattel distorts the record in a failed attempt to show

21   that Ms. Cloonan does not have a privacy interest in the zip disk.  Mattel claims that

22   Ms. Cloonan testified that "it is not likely even hers," and, "Ms. Cloonan testified that

23   the disk was not hers...."[70]   In fact, Ms. Cloonan testified that she had the zip disk in

24

25   [67]   McFarland Decl., Exh. 31 (Order Re Mattel's Motions to Compel Farhad Larian,
26   Kaye Scholer and Stern & Goldbert to Produce Documents ("January 25 Order")) at 11.
     [68]   Ex Parte Application at 9.
27   [69]   See McFarland Decl., Exh. 31 at 12.
28   [70]   Ex Parte Application at 3, 9.

her home, and that she "dug through files – *my* old files, old paperwork, old disks… and everything I found I gave to Larry."[71]  In addition, in order to make sure that the record is clear on this point, Ms. Cloonan has declared that "[t]he zip disk that had the word "Bratz" hand written on the label, which I produced in this litigation, is my property and was used with my personal computer in my home."[72]  Furthermore, Ms. Cloonan has declared that "[i]t is my practice generally to re-use and recycle zip disks.  Therefore, zip disks may contain various types of files and documents, including files and documents that are likely to contain personal matters."[73]  Any possession, including the zip disk, which Ms. Cloonan keeps at her home, clearly falls within her "zone of privacy" which is meant to protect personal matters.  See In re Crawford, 194 F.3d 954, 958 (9th Cir. 1999) (recognizing the United States Supreme Court's acknowledgement of the existence of an individual's "zone of privacy"), citing Doe v. Attorney General, 941 F.2d 780, 795 (9th Cir.1991) (recognizing the constitutionally-protected privacy interest in avoiding disclosure of personal matters).[74]

The undisputed evidence establishes that Ms. Cloonan has protectable privacy rights in the zip disk as well as her in personal computer, and that Ms. Leahy similarly

---

[71] See McFarland Decl., Exh. 20 at 247:24-25, 248:1-2.

[72] McFarland Decl., Exh. 32.

[73] Id.  Ms. Cloonan testified at her deposition with respect to zip disks in general that they were "recyclable and people would take them – they were like pens."  See McFarland Decl., Exh. 20 at 297:19-20.

[74] With regard to the zip disk, Mattel also alleges that "[i]n plain violation of his obligations, … counsel for the witnesses did not even produce a copy of the 'Bratz' label or otherwise reveal that it was so labeled."  Ex Parte Application at 3.  Once again, this is untrue.  Counsel for Ms. Cloonan provided the original zip disk to the expert selected by Mattel and, as set forth above, Ms. Cloonan's counsel instructed Mattel's expert on December 18, to "make a color photocopy of the front and the back of the zip disk and email the photocopies to me, with a copy to Mr. Tayback, so that I can put Bates numbers on the two pages."  See McFarland Decl., Exh 22.  It is therefore inconceivable that Mattel contends that a copy of the zip disk label was not produced or otherwise revealed.

has protectable privacy rights in her external hard disk drives.[75]  The Protocol was designed to protect these legitimate interests while at the same time allowing Mattel the opportunity to review these old computer materials.  Mattel's current request to be provided with the hard drives and the zip disk is a blatant violation of Ms. Cloonan's and Ms. Leahy's privacy interests and conflicts with the recent rulings of Judge Infante. The Protocol was agreed to; the computer, zip disk and external hard disk drives were reviewed pursuant to the Protocol; all documents located by the expert were produced, and the depositions were taken.  That should be the end of it.

## III.    CONCLUSION

For the foregoing reasons, the Non-Party Witnesses respectfully request that the Court deny Mattel's Ex Parte Application.

Dated:  January 27, 2008                     KEATS MCFARLAND & WILSON LLP


                                             /s/_____
                                             Christian C. Dowell, Esq.
                                             Attorneys for Non-Parties Ana Elise Cloonan,
                                             Margaret Hatch-Leahy, and Veronica Marlow

---

[75]  See McFarland Decl., Exh. 33.

OPPOSITION TO
EX PARTE APPLICATION