**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 1**

**EXHIBIT TO**:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 2 of 99   Page ID
#:22053
Case 2:04-cv-09049-SGL-RNB    Document 1504    Filed 01/07/2008    Page 1 of 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date: January 7, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
=========================================================================
=

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                        Theresa Lanza
          Courtroom Deputy Clerk            Court Reporter

ATTORNEYS PRESENT FOR CARTER        ATTORNEYS PRESENT FOR MATTEL:
BRYANT:  **Christa Martine Anderson**   **John B. Quinn and Michael T. Zeller**

ATTORNEYS PRESENT FOR MGA:           ATTORNEY PRESENT FOR CARLOS
**Thomas J.  Nolan**                     GUSTAVO MACHADO GOMEZ:
**Carl A. Roth**                         **Mark E. Overland**
**Anna Park**
                                     ATTORNEY PRESENT FOR NON-PARTY
ATTORNEY PRESENT FOR NON-            STERN & GOLDBERG: **Kien C. Tiet**
PARTIES ANA ELISE CLOONAN,
MARGARET HATCH-LEHY, AND             ATTORNEY PRESENT FOR NON-PARTY
VERONICA MARLOW: **Larry W.**            KAYE SCHOLER, LLP: **Bryant S. Delgadillo**
**McFarland**

PROCEEDINGS:   **ORDER GRANTING IN PART AND DENYING IN PART**
               **MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL**
               **DISCOVERY (DOCKET #1134)**

               **ORDER GRANTING MOTION TO ENFORCE THE COURT'S**
               **ORDER OF AUGUST 27, 2007, AND DENYING REQUEST FOR**
               **SANCTIONS  (DOCKET #1143)**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                    1                  Time: 1/30

Exhibit 1
Page ___6___

**ORDER GRANTING MATTEL'S MOTION CLARIFYING
COURT'S ORDER APPOINTING DISCOVERY MASTER
(DOCKET #1244)**

**ORDER GRANTING CARTER BRYANT AND MGA
DEFENDANTS' EX PARTE APPLICATION TO COMPEL
DEPOSITIONS (DOCKET #1462)**

These matters were heard on January 7, 2008.  The Court rules as set forth below.

To the extent that this Order decides issues more properly decided by the Discovery Master and/or preempts issues currently pending before the Discovery Master, it does so only to resolve those issues in the most expeditious manner possible.  As the Court's order appointing the Discovery Master requires, any and all discovery disputes must be presented to the Discovery Master for his resolution.

**MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY
(DOCKET #1134)**

This motion is **GRANTED IN PART**.  Leave to take additional depositions and propound additional interrogatories are granted to the extent they are consistent with Fed. R. Civ. P. 26(b)(2).  See Fed. R. Civ. P. 30(a)(2)(A) (depositions), 33(a) (interrogatories).  Rule 26(b)(2) requires a Court to limit discovery where it is unreasonably cumulative or duplicative; where it can be obtained from a more convenient, less burdensome, or less expensive source; where a party has already had ample opportunity to obtain information from discovery; where the burden or the expense of the requested discovery outweighs its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues.  Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Considering this standard, the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper

MINUTES FORM 90
CIVIL -- GEN                                    2

Initials of Deputy Clerk: jh
Time: 1/30

Exhibit 1
Page _____ 7

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 4 of 99   Page ID
#:22055
Case 2:04-cv-09049-SGL-RNB   Document 1504   Filed 01/07/2008   Page 3 of 5

discovery caused by numerous discovery disputes and a Court-imposed stay requested by MGA upon substitution of counsel.  Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO claims (set forth in the moving papers at 13).  Mattel may serve the notices of deposition and propound the interrogatories attached to the moving papers as Exs. A - C. Additionally, the parties must answer Mattel's previously propounded interrogatories to which the sole objection raised was that those interrogatories exceeded the allowable number of interrogatories.

The Court has heretofore refrained from bifurcating discovery relating to Phase 1 and Phase 2, believing that such an action is fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes.  Nevertheless, in light of the additional discovery permitted by this Order, and to the extent that counsel for the parties who are asserting or defending against claims to be tried in Phase 2 of the trial are in agreement, the Court will consider a stipulation of those parties that designates certain depositions as "Phase 2" depositions that may be conducted during the month of February, if counsel can assure the Court that such depositions can be so conducted without altering the Court's pretrial schedule regarding Phase 1.

Conversely, in light of the standard of review employed regarding the Discovery Master's orders, the Court **DENIES** that portion of Mattel's motion that seeks additional time in which to depose Carter Bryant.  The Court cannot say that the Discovery Master's order allowing an additional nine hours to depose Carter Bryant is contrary to law based on the Discovery Master's unchallenged factual findings.

## MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF AUGUST 27, 2007 AND REQUEST FOR SANCTIONS (DOCKET #1143)

This motion is **GRANTED**.  The Court's order clearly applied to "all parties." No party sought relief therefrom or clarification of the Court's order.

As prepared in purported compliance with the Court's order, the affidavit of Carlos Gustavo Machado Gomez is inadequate as it lacks facts and relies instead on conclusory language.  Machado must file an affidavit that complies with the

Exhibit 1
Page _____ 8 _____

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 5 of 99   Page ID
#:22056
Case 2:04-cv-09049-SGL-RNB   Document 1504   Filed 01/07/2008   Page 4 of 5

Court's order as set forth below.

Carter Bryant has refused to comply with the Court's order and has not filed the required affidavit.

Both these parties must file, on or before January 15, 2008, an affidavit setting forth a factual description of their preservation efforts, policies, customs, and/or practices with respect to potentially discoverable documents related to the present litigation. The failure of these parties to comply with this Order will result in the imposition of contempt sanctions to coerce their compliance.

The Court **DENIES** Mattel's request for costs and sanctions.

## MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

This motion is **DENIED**. The Court's order referred to the Discovery Master any and all discovery disputes, including those involving third parties.

Although the parties stipulated to the Discovery Master, that stipulation was entered as the Court's order, and as such, all parties are subject to that order unless relieved from it upon proper motion.

The order was entered as a valid Rule 53(a)(1)(C) order, not requiring the consent of any party or nonparty. Machado has not convinced the Court that, as a subsequently added party, he was required to be given the opportunity to object to the order before it could be applied to him. See Fed. R. Civ. P. 53(b)(1) (requiring notice and opportunity to be heard prior to the appointment of a special master). Importantly, Machado could have, but did not, seek relief from this order within a reasonable amount of time after he became a party to this case. Furthermore, the Court does not find any basis to exclude Machado from the reach of the Court's order appointing the Discovery Master pursuant to his present objections.

## DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

Carter Bryant and the MGA defendants may depose the ten individuals set

MINUTES FORM 90
CIVIL -- GEN                                    4

Initials of Deputy Clerk: jh
Time: 1/30

Exhibit 1
Page ___9___

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 6 of 99   Page ID
#:22057
Case 2:04-cv-09049-SGL-RNB   Document 1504   Filed 01/07/2008   Page 5 of 5

forth in their moving papers.  The testimony of all Rule 30(b)(6) witnesses "count" as only one deposition for purposes of determining the total number of depositions conducted by each side.

Carter Bryant and the MGA defendants are not relieved of the requirement that they serve subpoenas on all these deponents other than the current officers of Mattel (represented to the Court to be Tim Kilpin, Kevin Farr, and Evelyn Viohl).  To the extent that Mattel has made prior written agreements to produce deponents who are under its control, it is expected to do so.

As to all the depositions permitted by this Order, all counsel are expected to coordinate their schedules with those of the deponents such that the depositions are held prior to the discovery cutoff date of January 28, 2008.  However, as set forth above in connection with Mattel's motion to take additional discovery, Phase 2 depositions may be taken in February pursuant to a Court-approved stipulation.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN                                        5

Initials of Deputy Clerk: jh
Time: 1/30

Exhibit 1
Page ___ 10 ___

Case 2:04-cv-09049-DOC-RNB  Document 1656-3  Filed 01/27/08  Page 7 of 99  Page ID
#:22058
Case 2:04-cv-09049-SGL-RNB    Document 1508    Filed 01/10/2008    Page 1 of 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                  Date: January 9, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                          N/A
            Courtroom Deputy Clerk              Court Reporter

PROCEEDINGS:   **ORDER AMENDING COURT'S MINUTE ORDER OF JANUARY 7, 2008**
               **(In Chambers)**

        The Court's Minute Order dated January 7, 2008, incorrectly noted on page 4 that Mattel's
motion seeking clarification regarding the Court's Order appointing the Discovery Master (docket
#1244) was **DENIED.**  That motion, as correctly noted in the caption of the January 7, 2008, Order,
was **GRANTED.**  Accordingly, the Court **AMENDS** the Court's January 7, 2008, Order as follows:

        Page four:  The sentence "This motion is **DENIED**." is stricken, and the following sentence is
substituted in its place:  "This motion is **GRANTED.**"

        IT IS SO ORDERED.

MINUTES FORM 90                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                         1

Exhibit 1
Page ___\ \___

**Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.

CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# EXHIBIT 2

**EXHIBIT TO**:    DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S <u>EX</u> <u>PARTE</u> APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California  94111
    Telephone:     (415) 774-2611
4   Facsimile:     (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13              Plaintiff,

14         v.                              Consolidated with
                                           Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16              Defendant.                 **ORDER GRANTING IN PART AND**
                                           **DENYING IN PART MATTEL'S**
17                                         **MOTION TO COMPEL PRODUCTION**
                                           **OF DOCUMENTS BY ISAAC LARIAN;**
18                                         **DENYING REQUEST FOR**
                                           **SANCTIONS**
19

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23

24                        I. INTRODUCTION

25        On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

26  of Documents by Isaac Larian and for Award of Monetary Sanctions."  Specifically, Mattel seeks

27  an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

28  Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

Exhibit 2
Page ____

1    15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199,

2    207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents

3    withheld based on any claimed privilege.  Mattel also seeks an award of sanctions against Larian

4    in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing

5    this motion.  Larian submitted an opposition on December 5, 2007.[1]  Mattel submitted a reply on

6    December 10, 2007.  The matter was heard on December 14, 2007.  Having considered the

7    motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in

8    part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of

Documents and Things to Larian, the CEO and majority owner of MGA.  On August 6, 2007,

Larian filed his initial responses and objections.  The parties met and conferred, and on September

25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the

276 Requests.  The parties met and conferred further, and Larian ultimately agreed to provide

further responses to 55 of the disputed 87 Requests.  Specifically, Larian agreed to supplement his

responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-

76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that

have not previously been produced."  MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories:  (1) personal

financial data; (2) communications with Mattel employees; (3) statements to the media; (4)

telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market

research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's

arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position.  The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

Exhibit 2
Page ____14____

1 he will do so.  Second, Larian's agreement to produce responsive documents is apparently limited

2 to documents from his so-called "personal files."  See Opposition at 2:2-3.

3   Mattel's counsel "never agreed that Larian could limit his response to the above requests

4 to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5 response to documents in Larian's 'personal files.'"  Supp. Decl. of Scott B. Kidman.

6 Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7 Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8 parties' "possession, custody or control."  The limitation is also unworkable because, as Mattel

9 points out, it "would create a situation by which responsive and highly relevant documents might

10 never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11 Larian, on the other hand, deems [a] document not to be part of his 'personal files.'"  Reply at p.6.

12 Market Research for Products Not at Issue:  Request Nos. 79-81

13   In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14 Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In

15 his supplemental response, Larian agrees to produce the following documents, subject to his

16 general objections:

17    Larian will produce all documents within his possession, custody, or control that
18    relate to focus groups for "MGA contested products" and "Mattel contested
     products," as those terms are defined in Mattel's First Requests for Production
19    regarding Claims of Unfair Competition, if any, and that have not already been
     produced, that he discovers in the course of his reasonable search and diligent
20    inquiry, and to which no privilege or other protection applies, including without
     limitation, the attorney-client privilege or attorney's work product doctrine.

21

22 Mattel's Consolidated Separate Statement at pp. 20-21.

23   In Request No. 80, Mattel seeks all documents relating to any services or work performed

24 by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25 videotapes, summaries, notes and reports associated therewith.  In his supplemental response,

26 Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27 the request and to which no privilege or other protection applies.

28

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 13 of 99   Page ID
#:22064
Case 2:04-cv-09049-SGL-RNB    Document 1439    Filed 01/03/2008    Page 5 of 21

1    In Request No. 81, Mattel seeks all documents relating to Alaska Momma.  In his

2  supplemental response, Larian agrees to produce all documents relating or referring to Bratz,

3  Angel or Bryant that are responsive to the request and to which no privilege or other protection

4  applies.

5    Mattel contends that the requests are as narrowly tailored as possible to capture relevant

6  information.  More specifically, Mattel contends that Request No. 79 seeks documents that bear

7  directly on the timing of the development of Bratz, as well as MGA's unfair competition claims

8  and Mattel's defense thereto.  Mattel contends that the requested documents may demonstrate that

9  MGA is guilty of copying Mattel's Barbie and My Scene products.

10    Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome.  As an

11  example, Larian points to Request No. 80, which requests all documents relating to any services

12  or work performed by L.A. Focus, regardless of whether that work has any relation to the claims

13  and defenses in the action or any of the products at issue.  Larian similarly contends that Request

14  Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or

    defense in this case.

15    Mattel's motion to compel Larian to produce all documents responsive to Request No. 79

16  is granted.  The request is reasonably limited in subject matter to Bratz and Angel.  The requested

17  documents are relevant to several issues in the case, including the origin, conception and creation

18  of Bratz.  The requested documents are also relevant to the unfair competition claims.  Larian's

19  supplemental response to Request No. 79 is unduly restrictive.  Among other things, the

20  definitions of "contested MGA products" encompass only those products that provide a basis for

21  any claim by MGA against Mattel, and not claims by Mattel against MGA.

22    Mattel's motion to compel Larian to produce all documents responsive to Request Nos.

23  80-81 is denied.  These requests, as drafted, are clearly overbroad because they have no

24  reasonable limitations on subject matter or time.  In particular, the requests are directed to L.A.

25  Focus and Alaska Momma without regard to whether the services or work the companies

26  provided has any relation to any product at issue.

27    Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

Exhibit 2
Page ___16___

1   documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's

2   supplemental response is too narrow and "may result in the exclusion of highly relevant

3   documents because the project, concept or design that is the subject of the focus group is deemed

4   not to relate to something then known as Bratz or Angel." However, Larian acknowledges that

5   these types of hypothetical documents would still fall within the narrower scope of production

6   proposed in his supplemental response.

7        Mattel also contends that it is entitled to all of the requested documents called for by

8   Request No. 80 because they are relevant to credibility and bias, particularly if the documents

9   show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.

10  Focus used. It is, however, not apparent how deviations from standard procedures would impact

11  credibility or bias.

12       As to Request No. 81, Mattel contends that the documents showing the relationship

13  between Larian or MGA and Alaska Momma are relevant, even if they do not themselves

14  specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian

15  or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant

16  claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's

17  and Bryant's stories about how and when they came to be introduced. Mattel also contends that

18  documents showing other dealings between Larian or MGA and Alaska Momma are relevant to

19  the issues of bias and credibility. Mattel's supposition about the types of documents that might

20  exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also

21  not limited by either subject matter or time.

22       Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in

23  accordance with his supplemental responses.

24

25  Bryant's Attorney and Niece: Request Nos. 113-115

26       In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne

27  Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No.

28  114, Mattel seeks all documents, including without limitation all communications, between

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

Exhibit 2
Page ____ 17

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 15 of 99   Page ID
#:22066
Case 2:04-cv-09049-SGL-RNB      Document 1439      Filed 01/03/2008      Page 7 of 21

1    Larian or MGA and Anne Wang. In Request No. 115, Mattel seeks documents relating to Brooke

2    Gilbert, Bryant's niece. In his supplemental responses, Larian agrees to produce documents

3    relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4    other protection applies. Thus, the only issue is whether Larian should be required to produce

5    responsive documents that do not relate to Bratz, Angel or Bryant.

6           Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7    and conception of Bratz and the timing thereof. Mattel also contends that the documents may

8    disclose relevant information regarding Mattel's claims for breach of contract and inducing

9    breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10   contractual obligations with Mattel. Mattel also contends that Larian has failed to carry his

     burden of demonstrating that the requests are overly burdensome.

11          Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

12   are inadequate because the limitations on scope may eliminate otherwise relevant documents that

13   do not specifically refer to Bratz, Angel or Bryant. For example, Mattel contends that

14   communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

15   Bryant may be relevant to the issues of credibility and bias.

16          Mattel contends that Request No. 115 seeks documents that are relevant to determine

17   whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

18   that had been installed and run on the hard drive. Bryant claims to have given his computer to his

19   niece. Mattel also contends that the requested documents are relevant to the issues of credibility

20   and bias. Further, Mattel contends that Larian's supplemental response to Request No. 115 is

21   inadequate, because evidence of any communication between Larian and his niece, regardless of

22   subject matter, is significant.

23          Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

24   because they lack any subject matter or time constraints. Further, Larian contends that the

25   requests constitute an improper fishing expedition and necessarily sweep in documents that are

26   not relevant to any claim or defense.

27   //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

Exhibit 2
Page _____ 18

1      Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2  requests are overbroad because they are not focused on relevant subject matter and are untethered

3  to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4  Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5  is too remote to justify the breadth of Mattel's requests.

6      Larian's supplemental responses are sufficient to provide Mattel with relevant and

7  responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in

8  accordance with his supplemental responses.

9

10  <u>The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125</u>

11      In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

12  suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all

13  documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

14  Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

15  and/or audio recordings and sworn testimony given by any person in such suit or arbitration

16  proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,

17  resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

18  Larian. In his supplemental responses, Larian agrees to produce all documents referring or

19  relating to Bratz that are responsive to the requests and to which no privilege or other protection

20  applies.

21      Mattel contends that the court has already ruled that the arbitration proceedings between

22  Larian and his brother are relevant because they involve, among other matters, the conception and

23  creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit

24  the requests to the exclusion of potentially relevant documents. For example, Mattel contends

25  that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

26  to the timing of the development of Bratz, whether or not they specifically refer to Bratz.

27  Mattel also contends that the requested documents are relevant to the value of the Bratz brand and

   the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

Exhibit 2
Page _____ 19

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 17 of 99   Page ID
#:22068
Case 2:04-cv-09049-SGL-RNB      Document 1439      Filed 01/03/2008      Page 9 of 21

1   example, profits from the sale and licensing of Bratz and other information that would impeach

2   Larian's testimony that he has not made any profits from Bratz.  Further, Mattel contends that the

3   requested documents may lead to evidence of the assessments or valuations of the net worth or

4   value of MGA or Larian, regardless of any reference to Bratz specifically.  Mattel also contends

5   that settlement documents may contain information that bears on the merit of Farhad Larian's

6   claims and the value of Bratz.  Mattel also claims that the requested documents are relevant to

7   motive, intent, bias and credibility.

8       Larian contends the instant requests are overbroad and unduly burdensome.  Further,

9   Larian contends that the relationship of the requested documents to any of the claims or defenses

10  in the present action is questionable, and the existence of such documents is conjectural.

11  Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12  already the subject of other requests.  Larian also contends that Request Nos. 123-125 impose an

13  undue burden because of the protective orders in place that strictly limit the use of any documents

14  from an arbitration and suit between Larian and his brother.  Larian represents that he is currently

15  working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

16  that are agreeable to all parties.

17      Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

18  denied.  The requests are clearly overbroad in calling for all documents from the arbitrations and

19  suits between Larian and his brother, without any subject matter limitations.  Furthermore, these

20  requests are unduly burdensome to the extent they require production of documents that do not

21  refer or relate to Bratz.  Such documents have marginal relevance, at best, to the claims and

22  defenses in the case.

23      Larian's supplemental responses to Request Nos. 123 -125 are sufficient.  Larian's

24  agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

25  enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

26  of the categories of documents of interest to Mattel.  For example, under Larian's proposed

27  limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

28  refer or relate to Bratz must be produced.  Documents relating to the value of the Bratz brand are

1   also within the scope of Larian's proposed limitation and would have to be produced.  Documents

2   relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3   produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery

4   regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to

5   MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6   projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian

7   shall produce documents responsive to Request Nos. 123-125 in accordance with his

8   supplemental responses.

9

Telephone Records:  Request Nos. 178-181

10          In Request No. 178, Mattel seeks all documents relating to, including without limitation

11  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

12  from January 1, 1998 through January 1, 2001.  Larian objects to this request.

13          In Request No. 179, Mattel seeks all documents relating to, including without limitation

14  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

15  from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental

16  responses, Larian agrees to produce documents responsive to Request No. 179.  In response to

17  this motion, however, Larian contends that he should be permitted to produce documents

18  responsive to Request No. 179 in redacted form as discussed more fully below.

19          In Request No. 180, Mattel seeks all documents relating to, including without limitation

20  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

21  from April 1, 2004 through June 1, 2004.  Larian objects to this request.

22          In Request No. 181, Mattel seeks all documents relating to, including without limitation

23  phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

24  at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to

25  communications made prior to January 1, 2001 that are responsive to the request and to which no

26  privilege or other protection applies.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

Exhibit 2
Page _____ 21

10

1    Mattel contends that Request No. 178 seeks documents relevant to show Larian's

2    communications with Bryant and other Mattel employees while such employees may still have

3    been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel

4    contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and

5    Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them

6    to steal Mattel trade secrets.

7        Further, Mattel contends that the requested documents regarding telephone records are

8    relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show

9    communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent

10   they show communications with current and former Mattel employees, including Machado,

11   Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements

12   Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to

13   burden, Mattel contends that it would be more burdensome to attempt to produce the requested

14   records in redacted form, and further, that the protective order in place is sufficient to protect

     Larian's privacy concerns.

15       Larian contends that the requests regarding telephone records are overbroad, completely

16   unbounded as to subject matter, and necessarily sweep in private information that is completely

17   irrelevant to any of the claims or defenses in the case. Larian also points out that the court

18   previously considered similar requests served on Bryant and allowed production of redacted

19   copies of telephone records as long as Bryant provided a signed verification that none of his

20   redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically,

21   Bryant was permitted to produce redacted phone records as long as he provided a "signed

22   verification that none of the telephone records that were redacted relate or refer in any way to

23   MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."

24   Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production

25   of Documents by Bryant). Larian contends that he should be permitted to redact responsive

26   documents consistent with the court's prior order. During the meet and confer, Larian offered to

27   provide redacted records and a signed verification that none of the redacted information was

28

1   relevant to the case, but Mattel did not respond to the offer.

2       Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3   relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied.  The

4   request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5   private information that is completely irrelevant to the case.  Larian should not be subjected to

6   such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7   the request to the communications, claims, and defenses identified above.

8       In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9   for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10   (Bratz and/or Angel).  Accordingly, Larian shall abide by his agreement to comply with Request

11   No. 179, as stated in his supplemental response.  Larian's proposal to produce responsive

12   documents in redacted form is appropriate to address his privacy concerns.  More specifically,

13   Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14   provides a signed verification that none of the redacted material refers or relates in any way to

15   MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

16   or that are otherwise relevant to the case.

17       Mattel's motion to compel documents responsive to Request No. 180 (documents relating

18   to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted.  Request No. 180

19   is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

20   employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets.  See

21   Mattel's Second Amended Answer and Counterclaims, ¶¶37-54.  Larian may produce documents

22   responsive to Request No. 180 in redacted form as specified above with respect to Request No.

23   179.

24       Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

25   is overbroad as written because it has no time limits.  In his supplemental response, Larian agrees

26   to produce communications prior to January 1, 2001 that are responsive to the request.  Larian's

27   proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

28   without imposing an undue burden.  Accordingly, Larian shall produce documents responsive to

1   Request No. 181 consistent with his supplemental response, and may produce such documents in

2   redacted form as specified above with respect to Request No. 179.

3

4   <u>Statements to the Media:  Request Nos. 190-192, 194-197 and 199</u>

5          In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6   and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7   Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8   to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9   Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10  regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

    products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

11  Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

12  also contain admissions regarding the origin and conception of Bratz and statements relevant to

13  damages.

14         Larian contends that the requests are overbroad and unduly burdensome, particularly

15  because several of the requests seek publicly available information.  Further, Larian points out

16  that the court has already considered and rejected as overbroad a nearly identical request served

17  on MGA that called for all documents relating to any communications by MGA with any news

18  organization regarding the contested MGA products or the contested Mattel products.  Larian

19  contends that the same reasoning applies to the instant requests.

20         Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

21  199 is denied.  Although several of the requests encompass potentially relevant documents, the

22  requests are overbroad and encompass documents that have little to no relevance to the claims and

23  defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

24  sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

25  Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

26  or damages.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

Exhibit 2
Page _____ 24

1    Furthermore, many of these overbroad requests seek publicly available information that is

2 readily accessible to Mattel for which Larian should not be burdened.  To the extent the requested

3 documents and information are not publicly available, such documents and information are

4 marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.

5 In either case, the burden and expense of searching for and producing responsive documents are

6 unjustified.

7

8 Communications With Mattel Employees:  Request No. 198

9    In Request No. 198, Mattel seeks all communications between Larian and any individual

10 while the individual was employed by Mattel.  Mattel contends that this request is directly

11 relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported

12 burden of production.

13    Larian contends that the request is overbroad and unduly burdensome because it is

14 unrestricted as to time and subject matter.  Larian also points out that the court has previously

15 found a similar request overbroad.  Larian further contends that employees in the toy industry are

16 likely to maintain contacts with other toy manufacturers, and that a large corporation such as

17 Mattel is likely to have a high number of employees communicating with MGA or its officers,

 which makes the request more unduly burdensome and unreasonable than it appears on its face.

18    Unlike other requests regarding communications, Request No. 198 is reasonably tailored

19 to the specific and numerous allegations in the case regarding alleged trade secret theft.  Although

20 the request is not limited by subject matter, it is limited in other respects to seek relevant

21 documents without imposing an undue burden.  The request is limited to communications

22 between Larian (and not MGA or persons acting on his behalf) and individuals employed at

23 Mattel.  The request is also limited to only those communications that took place while the

24 individuals were employed at Mattel.

25    Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's

26 allegations of trade secret theft.  The alleged trade secret theft began with Bryant's conduct in

27 1999 and continued to 2005.  Accordingly, Larian shall produce documents responsive to Request

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

Exhibit 2
Page ___25___

1   No. 198 that are limited to the time frame 1999 to 2005.

3   Personal Financial Data:  Request Nos. 207-209 and 269

4       In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks
5   or financial institutions and other banking relationships since January 1, 1999.  In Request No.
6   208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such
7   income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal
8   and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks
9   documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from
    1999 to the present.

10      Mattel contends that Request No. 207 seeks information reasonably calculated to lead to
11  information showing the timing of payments to Bryant and others, which in turn is relevant to the
12  timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos.
13  208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial
14  condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to
15  information regarding the sources of Larian's income to determine whether they are attributable
16  to the alleged misconduct and thus subject to disgorgement.

17      Larian contends that the requested personal financial information is not relevant to the
18  claims or defenses at issue.  More specifically, Larian contends that neither the names of his
19  banks nor his gross income have any bearing upon either compensatory or punitive damages or
20  Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for
21  Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

22      Larian also contends that all three of the requests overlap substantially with requests
23  Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or
24  burden posed by these requests to him.  Further, Larian contends that the court has previously
25  found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered
26  no reason why the same result should not apply here.

27      Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

Exhibit 2
Page ___26___

1   requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2   several issues in the case.  For example, the requested information is likely to lead to information

3   regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4   the creation of Bratz.  The requested information is also likely to show Larian's income and net

5   worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are

6   unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial

7   information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8           Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9   Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein

10   and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

11   returns.

12   Storage Devices:  Request Nos. 222 and 224

13           In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14   to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15   delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a

16   request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17   electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer

18   hard drives and other storage devices.

19           Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20   ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard

21   drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22   states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23   create a routine right of direct access to a party's electronic information system."  See

24   Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for

25   an inspection of his electronic devices because there is no allegation that he improperly deleted

26   documents.

27           Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

Exhibit 2
Page _____ 27

1    With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to

2    authorize the routine production of a party's electronic devices.  Mattel attempts to justify

3    Request No. 222 by pointing to various instances of alleged destruction of evidence.  See Mattel's

4    Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer

5    laptops; "wiping" information from the hard drives of Larian's computer laptops every six

6    months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and

7    destructive testing of Bryant's original Bratz drawings).  However, Mattel fails to explain how

8    these alleged instances of evidence destruction justify Request No. 222, other than to assert that it

9    has a right to inspect Larian's storage devices to ensure that relevant information has not been

10   deleted or permanently destroyed.  Mattel's stated purpose suggests instead that Mattel is

11   launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal

12   Rules of Civil Procedure.  See e.g. Rivera v. NIBCO, Inc., supra.  Furthermore, Mattel's stated

13   purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.

14   Among other things, Request No. 222 encompasses every storage device that Larian has used to

15   copy digital information relating to Bratz.  Mattel does not need every CD and DVD containing

16   copies of Bratz-related video and audio content, but that is what the request seeks.

17        Request No. 222 is also duplicative because it requests information that is sought in

18   numerous other requests served on Larian as well as MGA.  Mattel has served hundreds of

19   requests for documents and communications relating to Bratz, Angel, and Bryant.  To comply

20   with the requests, Larian was required to search for documents in both hard-copy and electronic

21   form.  Under the circumstances, it is unnecessary for Larian to also produce the requested storage

22   devices.

23        Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims

24   and defenses in the case, and therefore do not justify the burden of production on Larian.

25   Bryant's Storage Devices:  Request Nos. 225, 227 and 228

26        In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents

27   relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

28

1    receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2         Larian contends that the requests are improperly directed to him because he does not have

3    personal possession of Bryant's hard drive or storage devices, or other information about those

4    devices.  Mattel's Consolidated Separate Statement at p. 206.  Larian also contends that the

5    requests are overbroad and unduly burdensome for the reasons discussed above in connection

6    with Request Nos. 222 and 224.

7         Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8    denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9

10   MGA Hong Kong and MGA Mexico:  Request Nos. 272 and 273

11        In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

12   Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

13   Mexico"), both of which are named defendants.  In his supplemental responses, Larian agrees to

     produce documents sufficient to show the ownership of these entities.

14        Mattel contends that the requests seek information relevant to refute MGA Mexico's

15   personal jurisdiction defense, and which bear on whether the acts of Larian and others are

16   attributable to the entities.  Mattel also contends that Larian's (or MGA's ) ownership interest in

17   these companies is relevant to net worth.  Mattel contends that Larian's supplemental response is

18   inadequate because it would allow Larian to withhold contradictory information and conceal the

19   true ownership of the business entities.  Furthermore, Mattel contends that it is entitled to know

20   the ownership of these entities at times when different allegedly wrongful acts took place and to

21   determine if the ownership structure changed as a means of concealing assets or concealing the

22   payments of commercial bribes.

23        Larian contends that these requests should not be made to him, but to the entities

24   themselves or to MGA.  Further, Larian contends that the requests are duplicative of a request

25   Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26   served on MGA.  Moreover, Larian contends that the requests are overbroad and unduly

27   burdensome, and that at most, he should only have to produce a list of owners.

28

1      Mattel contends that Larian cannot avoid his duty to respond to these requests simply by

2   saying that the information is obtainable from another source.  Further, Mattel contends that

3   Larian has failed to establish that the requests are unduly burdensome.

4      Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied

5   pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable

6   from another source that is more convenient, less burdensome, or less expensive, namely MGA

7   Mexico and MGA Hong Kong.  The requests are also overbroad and unduly burdensome.

## IV. CONCLUSION

8      For the reasons set forth above, it is hereby ordered as follows:

9      1.      At meet and confer sessions held after the filing of this motion, Larian agreed to

10  produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-

11  146, 213, 221 and 223.  Accordingly, Larian shall produce, without limitation, all non-privileged

12  documents that are responsive to these Requests.

13     2.      With respect to the remaining requests that are at issue in this motion, Larian shall:

14          A.      produce, without limitation, all non-privileged documents that are

15  responsive to Request Nos.  79, 180, 198 (for the time period 1999-2005), 207, 208 and

16  269; and

17          B.      produce, in accordance with his supplemental responses, non-privileged

18  documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and

19  209.

20          C.      Larian may produce documents responsive to Request Nos. 179, 180 and

21  181 in redacted form as provided herein.

22          D.      Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,

23  209, 222, 224, 225, 227, 228, 272 and 273.

24     3.      Larian shall produce all non-privileged documents that are required by this Order

25  that are in his possession, custody or control and that have not already been produced no later

26  than January 11, 2008.

27     4.      Larian shall produce a privilege log no later than January 15, 2008.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

Exhibit 2

Page _____ 30

1        5.      Mattel's request for sanctions is denied.

2        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3  Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5  Dated: December 31, 2007

                                        HON. EDWARD A. INFANTE (Ret.)
6                                             Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                                                                    20

Exhibit 2
Page _____31_____

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

Sandra Chan

Exhibit 2
Page ___3 2___

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 3**

**EXHIBIT TO**:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

November 12, 2007

VIA FACSIMILE, E-MAIL and U.S. MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

   Re:  Mattel v. Bryant

Dear Dylan:

   I am writing in response to your letter dated November 2, 2007, with respect to dates for the depositions of Ms. Leahy, Ms. Cloonan and Ms. Marlow. I have spoken to our clients and they and I are available on the following dates:

| | | |
|---|---|---|
| Margaret Leahy: | Wednesday, December 12, 2007 | 09:00 a.m. |
| Elise Cloonan: | Friday, December 14, 2007 | 10:00 a.m. |
| Veronica Marlow: | Wednesday, January 9, 2008 | 10:00 a.m. |

   I am aware that these dates are later than what you were looking for, but rescheduling these depositions during the holiday season was difficult. As you know, these depositions were previously set and the dates had to be vacated due to no fault of these witnesses.

   Please note that I have not confirmed availability of counsel for MGA or Mr. Bryant for these dates.

      Very truly yours,

      Larry W. McFarland
      Keats McFarland & Wilson LLP

LWM/jlt

cc:  Thomas J. Nolan
   Michael Page

Exhibit 3
Page _____ 33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 4**

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
13  | Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
14  | vs. | Hon. Stephen G. Larson |
15  | MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S *EX PARTE* APPLICATION TO (1) COMPEL DEPOSITIONS OF ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER; AND |
16  | Defendant. | |
17  | | |
18  | AND CONSOLIDATED ACTIONS | |
19  | | |
20  | | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
21  | | |
22  | | [Declaration of B. Dylan Proctor filed concurrently herewith] |
23  | | |
24  | | Hearing Date: November 16, 2007<br>Time:        10:00 a.m.<br>Place:       Courtroom 1 |
25  | | |
26  | | Discovery Cut-Off:  January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:        May 27, 2008 |
27
28

07209/2296082.1

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 34 of 99   Page ID
#:22085
Case 2:04-cv-09049-SGL-RNB   Document 1117   Filed 11/15/2007   Page 2 of 15

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that Mattel, Inc. ("Mattel") will, and hereby does,

3   respectfully apply *ex parte*, pursuant to <u>Local Rule</u> 7-19 and <u>Fed. R. Civ. P.</u> 30, for

4   an order (1) compelling Elise Cloonan, Margaret Hatch-Leahy and Veronica

5   Marlow to appear for deposition on or before December 7, 2007, or (2) in the

6   alternative, modifying the Court's Scheduling Order to extend Mattel's time to take

7   follow-up discovery based on the witnesses' testimony until two months after their

8   depositions are completed.

9        This *ex parte* application is made on the grounds that these key witnesses --

10  who are affiliated with MGA and represented by MGA's counsel -- have crucial

11  knowledge about the origins of Bratz and the timing of its creation and

12  development, including during the time periods when defendant Carter Bryant was

13  working for Mattel.   These witnesses cancelled their scheduled depositions as a

14  result of the recent stay obtained by MGA.   Now they are refusing to appear for

15  deposition within a reasonable period of time, despite repeated requests from Mattel.

16  If these witnesses are not compelled to appear for deposition no later than

17  December 7, 2007 and the Court does not modify the Scheduling Order to permit

18  follow-up discovery when these witnesses finally appear, Mattel will be prejudiced

19  by not having sufficient time to complete its discovery prior to the January 28, 2008

20  discovery cut-off date.   Mattel would be irreparably prejudiced if this motion were

21  heard according to regularly noticed motion procedures because it would not be able

22  to complete discovery it is indisputably entitled to prior to the currently scheduled

23  discovery deadlines.

24       This application is based on this Application, the accompanying

25  Memorandum of Points and Authorities, the concurrently filed declaration of B.

26  Dylan Proctor, and all pleadings and papers on file with the Court in this action.

27

28

07209/2296082.1

-1-

MATTEL'S *EX PARTE* APPLICATION

Exhibit 4
Page _____ 35

1      Pursuant to <u>Local Rule</u> 7-19.1, counsel for Mattel gave notice of this

2  application to counsel for all other parties and the witnesses *via* telephone and letter

3  on November 14-15, 2007.[1]

4      Counsel for Elise Cloonan, Margaret Hatch-Leahy and Veronica Marlow is

5  Larry McFarland of Keats McFarland & Wilson LLP (telephone: 310-248-3830;

6  address: 9720 Wilshire Blvd., Beverly Hills, CA 90212). Mr. McFarland has stated

7  that his clients will oppose this application.[2]

8      Counsel for Carter Bryant is Michael Page of Keker & Van Nest, LLP

9  (telephone: 415-391-5400; address: 710 Sansome Street, San Francisco, CA 94111).

10  Counsel for MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., MGAE de

11  Mexico and Isaac Larian is Thomas J. Nolan of Skadden, Arps, Slate, Meagher &

12  Flom LLP (telephone: 213-687-5000; address: 300 S. Grand Ave., Los Angeles, CA

13  90071). Counsel for Gustavo Machado Gomez is Alexander Cote of Overland

14  Borenstein Scheper & Kim, LLP (telephone: 213-613-4655; address: 300 South

15  Grand Avenue, Suite 2750, Los Angeles, CA 90071). Each of the foregoing was

16  notified of this application. Mr. Nolan has stated that his clients will oppose this

17  application. Mattel does not have knowledge of the positions of Mr. Bryant and Mr.

18  Machado with respect to it.[3]

19

20  DATED: November 15, 2007     QUINN EMANUEL URQUHART OLIVER &
                                 HEDGES, LLP

21

22                              By <u>/s/ Dylan Proctor</u>

23                                 B. Dylan Proctor
                                 Attorneys for Plaintiff

24                                 Mattel, Inc.

25    [1]  Declaration of B. Dylan Proctor, filed concurrently herewith ("Proctor Dec."),

26  ¶¶ 2-3.
    [2]  Proctor Dec. ¶ 2.

27    [3]  Proctor Dec. ¶ 3.

28

-2-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT ....................................................................................................... 7

I.    THE COURT SHOULD COMPEL THE DEPOSITIONS ............................... 7

      A.    These Are All Crucial Witnesses ........................................................... 7

      B.    Mattel Will Be Severely Prejudiced If The Depositions Of These
            Witnesses Do Not Promptly Go Forward ............................................... 8

CONCLUSION ................................................................................................... 11

Exhibit 4

Page _____ 37

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

While seeking a stay of this case because of MGA's substitution of counsel, MGA assured the Court that "MGA certainly did not entertain the substitution of counsel for any purpose of delay or to cause prejudice to anybody."[4]  Intended or not, that is becoming its effect.  Mattel respectfully requests the Court's assistance to avoid serious, and irreparable, prejudice from the stay obtained by MGA.

Veronica Marlow, Margaret Hatch-Leahy and Elise Cloonan are each crucial witnesses who are affiliated with Bryant and MGA and are represented by MGA's counsel.  Each of them has unique knowledge about matters that go to the heart of this case, including the origins of Bratz and its timing.  By defendants' account, Veronica Marlow introduced Bryant to MGA.  Mattel has now learned -- from discovery which MGA and Bryant had long withheld until compelled to produce it, despite its obvious relevance -- that defendants have paid Ms. Marlow millions of dollars as a supposed finder's fee for her role in the Bratz project.  Ms. Hatch-Leahy worked on the Bratz doll sculpt, including when Carter Bryant was still employed by Mattel, billing her services to MGA.   Ms. Cloonan, also a former Mattel employee, assisted Bryant in his Bratz pitch to MGA while both Bryant and Ms. Cloonan were employed by Mattel.

Regrettably, these defendant-affiliated witnesses are following defendants' now-familiar playbook to obstruct discovery, including by first delaying their depositions with promises to appear (while claiming unavailability for lengthy periods) and then canceling as the promised dates approach.  Indeed, defendants have followed this pattern with every one of their key witnesses and ultimately

---

[4]  Transcript of the October 15, 2007 Status Conference, at 12:3-5, attached as Exhibit 2 to the concurrently filed Proctor Declaration ("Proctor Dec.").

-1-

MATTEL'S *EX PARTE* APPLICATION TO COMPEL DEPOSITIONS

Exhibit 4
Page _____ 38

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 38 of 99   Page ID
#:22089
Case 2:04-cv-09049-SGL-RNB   Document 1117   Filed 11/15/2007   Page 6 of 15

1   refused to produce them for deposition until ordered to do so, sometimes multiple

2   times.[5]

3        Mattel has been actively seeking to schedule the depositions of Ms. Marlow,

4   Ms. Hatch-Leahy and Ms. Cloonan since early June — for almost six months. Mattel

5   offered to take the depositions at any time in July, but their counsel — who also has

6   been MGA's counsel for years and is himself a witness in this case — claimed they

7   were unavailable until September.  When the agreed time-range approached,  they

8   failed to appear.  After still more delays, and shortly before MGA applied for a stay,

9   these witnesses proposed, and Mattel confirmed, dates in late October for Ms. Leahy

10  and early November for Ms. Marlow and Ms. Cloonan.  Once MGA obtained a stay,

11  however, the witnesses then cancelled the scheduled depositions.   When Mattel

12  asked for replacement dates, Ms. Leahy and Ms. Cloonan refused to appear until

13  mid-December -- another month from now -- and, despite her central importance,

14  Ms. Marlow refused to appear until mid-January of next year -- another two months

15  from now and only two weeks prior to the discovery cut-off.  Equally troubling,

16  each of these witnesses has refused to stipulate or bind themselves in any

17  meaningful way to actually appear even on those belated dates, despite Mattel's

18  requests.

19       Mattel should not be prejudiced as a result of the actions of MGA and its

20  affiliated witnesses.  Mattel needs to depose these key witnesses with adequate time

21  left before the fact discovery cutoff so that it can take whatever follow-up discovery

22

23       [5]   This has included named defendants Carter Bryant, Isaac Larian and MGA as
well as Paula Garcia, MGA's Bratz project manager from the start.  Bryant and
24  Larian would not appear until they were *twice* ordered by the Court and, in the case
of Larian, until sanctions were imposed.  And, confirming that defendants continue
25  to engage in this tactic of refusing to provide even the most obvious discovery
26  unless ordered to do so, another MGA executive who is a named defendant, Gustavo
Machado, is currently refusing to sit for deposition despite his earlier promises, so
27  Mattel will have to file a motion to obtain his testimony as well.

28

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 39 of 99   Page ID
#:22090
Case 2:04-cv-09049-SGL-RNB   Document 1117   Filed 11/15/2007   Page 7 of 15

1    is needed.  Absent relief from the Court, Mattel will be denied its right to do so.

2    The Court should order these witnesses to appear for deposition no later than

3    December 7, 2007.  In the alternative, Mattel requests that the Court modify the

4    Scheduling Order to extend Mattel's time to take any follow-up discovery based on

5    the testimony of these witnesses to two months after the last of their depositions.

6                                    **Statement of Facts**

7            <u>The Witnesses Delay for Months.</u>  Mattel first requested a deposition date for

8    Ms. Cloonan on June 1, 2007, seeking to schedule her deposition during the first

9    half of July 2007.[6]  Mattel received no response and again requested dates for her

10   deposition on June 7, 2007.[7]  That same day, Mattel also requested July deposition

11   dates for Ms. Hatch-Leahy and Ms. Marlow.[8]  The parties met and conferred on

12   June 15 and 21, 2007, and the witnesses' counsel represented that Ms. Cloonan was

13   unavailable until early September because of pregnancy and that he would provide

14   specific dates for her and the others.[9]  In a June 28, 2007 letter, counsel again

15   promised to ask his clients regarding possible deposition dates.[10]  Despite follow-up

16   by Mattel seeking to schedule the depositions, including through several messages

17   left with the witnesses' counsel,[11] counsel did not respond.  Mattel then sent a

18   follow-up letter on September 4, 2007, again asking for dates and offering to depose

19   the witnesses on <u>any</u> day in September.[12]

20

21

22

23        [6]   Proctor Dec. Exh. 3.
24        [7]   Proctor Dec. Exh. 4.
          [8]   Proctor Dec. Exh. 4.
25        [9]   Proctor Dec. Exh. 5.
26        [10]  Proctor Dec. Exh. 6.
          [11]  Proctor Dec. Exh. 7.
27        [12]  Proctor Dec. Exh. 7.
28

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 40 of 99   Page ID
#:22091
Case 2:04-cv-09049-SGL-RNB   Document 1117   Filed 11/15/2007   Page 8 of 15

1    The witnesses' counsel responded on September 7, again representing that he

2  would contact his clients regarding possible deposition dates.[13]   Mattel also offered

3  to schedule the depositions for any date prior to October 26, 2007.[14]   Counsel agreed

4  to provide Mattel with dates for all three witnesses on September 17,[15] but then

5  failed to do so.[16]   Mattel followed up on September 18 and 19[17] and reiterated that it

6  would be willing to depose each of these witnesses on any date prior to

7  October 26.[18]   The witnesses' counsel then stated on September 20 that he was still

8  trying to get available dates.[19]

9    Finally, on September 21, the witnesses' counsel offered an October 24, 2007

10  deposition date for Ms. Marlow and a November 14, 2007 deposition date for

11  Ms. Cloonan — more than two months later than the original early-September

12  deposition date promised.[20]   Counsel also represented that he "was continuing to

13  work with Ms. Leahy with respect to an available deposition date."[21]   Mattel

14  responded on September 21, 2007, accepting Ms. Marlow's deposition date but

15  rejecting Ms. Cloonan's proposed November 14 date as too late.[22]   Mattel also

16  informed counsel that his continued failure to provide Mattel with any dates for

17  Ms. Leahy was unacceptable, and that if he failed to provide deposition dates for

---

[13]   Proctor Dec. Exh. 8.
[14]   Proctor Dec. Exh. 9.
[15]   Proctor Dec. Exh. 9.
[16]   Proctor Dec. Exh. 10.
[17]   Proctor Dec. Exh. 10.
[18]   Proctor Dec. Exh. 10.
[19]   Proctor Dec. Exh. 11.
[20]   Proctor Dec. Exh. 12.
[21]   Proctor Dec. Exh. 12.
[22]   Proctor Dec. Exh. 13.

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 41 of 99   Page ID
#:22092
Case 2:04-cv-09049-SGL-RNB      Document 1117      Filed 11/15/2007      Page 9 of 15

1  Leahy and Cloonan within the previously discussed time-range (*i.e.*, prior to

2  October 26, 2007), Mattel would have no choice but to move to compel.[23]

3       The witnesses' counsel responded on September 28, 2007 — less than two

4  weeks before MGA sought a stay from the Court — and offered October 30 and

5  November 14 deposition dates for Ms. Leahy and Ms. Cloonan, respectively.[24]  He

6  also asked to move Ms. Marlow's deposition date to November 6, 2007.[25]  Though

7  all of the offered dates were months later than those initially sought and promised,

8  Mattel offered to accept these dates on the condition that deponents enter into a

9  confirming stipulation to prevent any last-minute cancellations.[26]  Counsel refused

10  to enter into this stipulation.[27]

11       <u>Counsel Cancels the Depositions Based on the Stay Orders.</u>  Shortly

12  thereafter, MGA revealed to the Court and Mattel that it was substituting counsel

13  and, on October 15, 2007, the Court approved the substitution and entered the first

14  stay until October 31, 2007 at MGA's request.[28]  On October 31, 2007, the Court

15  extended the stay until November 14, 2007.[29]  During the October 15 conference,

16  MGA's counsel assured the Court that "MGA certainly did not entertain the

17  substitution of counsel for any purpose of delay or to cause prejudice to anybody."[30]

18       The day after the October 15 Stay Order, the witnesses' counsel informed

19  Mattel that the deposition of Ms. Leahy, scheduled for October 30, 2007, would not

20

21  [23]  Proctor Dec. Exh. 13.
22  [24]  Proctor Dec. Exh. 14.
23  [25]  <u>Id.</u>
    [26]  Proctor Dec. Exh. 15.
24  [27]  Proctor Dec. Exh. 16.
    [28]  Proctor Dec. Exh. 17.  Specifically, the Court stayed all proceedings and
25  discovery during that time, but allowed the parties to "continue to produce paper
26  discovery" and "to serve discovery requests." <u>Id.</u>
    [29]  Proctor Dec. Exh. 18.
27  [30]  Proctor Dec. Exh. 2.
28

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 42 of 99   Page ID
#:22093
Case 2:04-cv-09049-SGL-RNB   Document 1117   Filed 11/15/2007   Page 10 of 15

1   go forward based on that Order.[31]   That same day, Mattel asked counsel to provide

2   new deposition dates for Ms. Leahy.[32]   In response, counsel promised to "coordinate

3   with [] Ms. Leahy in order to schedule new deposition dates, and inform [Mattel]

4   thereafter."[33]   After receiving no further response, Mattel followed up and again

5   asked for deposition dates for Ms. Leahy.[34]   Counsel then informed Mattel that, in

6   light of the October 15 Stay Order, "it makes sense to wait to set [Leahy's]

7   deposition date[] until after we know whether the Court continues the stay, and if so,

8   for how long."[35]   The day after the October 31 Stay Order, the witnesses' counsel

9   wrote to say that the depositions of Veronica Marlow and Elise Cloonan, scheduled

10  for November, also would not go forward.[36]

11          Mattel informed counsel that because the discovery cut-off was less than three

12  months away, the rescheduling of these witnesses' depositions needed to be done

13  promptly.[37]   Counsel responded five days later that he would check on his clients'

14  availability.[38]   On November 9, 2007, counsel represented that he would need

15  further time to determine their availability.[39]   Finally, on November 12, 2007,

16  counsel offered December 12, 2007, December 14, 2007 and January 9, 2008 as

17  deposition dates for Ms. Leahy, Ms. Cloonan and Ms. Marlow, respectively.[40]

18          The next day, Mattel responded that these dates — the earliest of which is

19  more than a month away — are unacceptably late and would prejudice Mattel's

20

21  [31]   Proctor Dec. Exh. 19.
22  [32]   Proctor Dec. Exh. 20.
23  [33]   Proctor Dec. Exh. 21.
    [34]   Proctor Dec. Exh. 22.
24  [35]   Proctor Dec. Exh. 23.
25  [36]   Proctor Dec. Exh. 24.
    [37]   Proctor Dec. Exh. 25.
26  [38]   Proctor Dec. Exh. 26.
27  [39]   Proctor Dec. Exh. 27.
    [40]   Proctor Dec. Exh. 28.
28

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 43 of 99   Page ID
#:22094
Case 2:04-cv-09049-SGL-RNB   Document 1117   Filed 11/15/2007   Page 11 of 15

1   ability to take follow-up discovery, particularly given counsel's refusal to stipulate
2   even to these late dates.[41]   The parties discussed the matter the day after that, on
3   November 14, 2007.  The witnesses' counsel confirmed that he would not offer any
4   earlier deposition dates, although he offered no reason why the witnesses could not
5   appear sooner.[42]   He also reiterated that he would not stipulate that the witnesses
6   would actually appear on even the offered dates.[43]

7                                   **Argument**
8   **I.      THE COURT SHOULD COMPEL THE DEPOSITIONS**
9             **A.      These Are All Crucial Witnesses**
10          It is beyond dispute that Ms. Cloonan, Ms. Leahy and Ms. Marlow possess
11   discoverable information.  Indeed, each is a key witness and has been identified by
12   MGA as "possess[ing] information relevant to the conception, creation, design and
13   development of 'Bratz.'"[44]

14          More specifically, Ms. Marlow was originally employed at Mattel, where she
15   got to know Bryant, and then began to work for MGA around April 2000.[45]  Paula
16   Garcia, MGA's Bratz project manager, has testified that it was Veronica Marlow
17   who first brought Bryant to MGA's attention and that she was present at Bryant's
18   pitch meeting for Bratz with MGA,[46] which occurred when he was employed by
19   Mattel even by defendants' account.  Testimony and documents have revealed that
20
21
22   _____
23   [41]   Proctor Dec. Exh. 29.
     [42]   Proctor Dec. Exhs. 1, 30.
24   [43]   Id.
     [44]   MGA's Rule 26(a) Disclosures ¶¶ 4-6, Proctor Dec. Exh. 31.
25   [45]   Deposition Transcript of Paula Garcia, dated May 24, 2007 ("Garcia Depo."),
26   at 237:8-13, Proctor Dec. Exh. 32.
     [46]   Garcia Depo, at 186:19-187:16; 242:19-243:17; 264:21-266:20; 270:22-271:1,
27   Proctor Dec. Exh. 32.
28

Case 2:04-cv-09049-DOC-RNB    Document 1656-3    Filed 01/27/08    Page 44 of 99    Page ID
#:22095
Case 2:04-cv-09049-SGL-RNB    Document 1117    Filed 11/15/2007    Page 12 of 15

1   Bryant and MGA have paid Ms. Marlow millions of dollars as a supposed "finder's

2   fee."[47]

3       Ms. Leahy was a Mattel employee until September 2000.[48]  Bryant solicited

4   Ms. Hatch-Leahy to sculpt the Bratz dolls and introduced her to MGA while he was

5   still employed by Mattel.[49]  Leahy created the first Bratz sculpt and, according to

6   Ms. Garcia, was the sole person to work on the Bratz sculptures in the key time-

7   period of 2000.[50]  She also worked on Bratz samples exhibited at the Hong Kong

8   Toy Fair in January 2001 and the New York Toy Fair in February 2001.[51]

9       Elise Cloonan was Bryant's roommate in 1999-2000 and worked with him at

10   Mattel.[52]  She also worked on the Mattel "Toon Teens" project in 1999 that Bryant

11   borrowed from to create Bratz which, among other evidence, refutes his claim to

12   have created Bratz earlier, in 1998, during a brief hiatus from Mattel.[53]  While both

13   she and Bryant were Mattel employees, Ms. Cloonan also prepared portions of the

14   written Bratz pitch materials that Bryant presented to MGA.[54]

15   **B.**    **Mattel Will Be Severely Prejudiced If The Depositions Of These**

16            **Witnesses Do Not Promptly Go Forward**

17       Mattel is entitled to obtain these crucial witnesses' testimony, which Mattel

18   anticipates will have material bearing on the Phase One trial, with sufficient time to

19   propound and obtain follow-up discovery.  The Phase One discovery cut-off is now

20

21     [47]   Proctor Dec. Exh. 33, Deposition Tr. of Richard Irmen, dated September 28, 2007 ("Irmen Depo."), at 270:20-271:7; Proctor Dec. Exh. 36.

22     [48]   Proctor Dec. Exh. 44.

23     [49]   Proctor Dex. Exh. 34, Deposition Tr. of Carter Bryant, Vol. I, dated ("Bryant Depo."), dated November 4, 2004 at 70:24-71:12.

24     [50]   Garcia Depo., at 255:1-17, 629:5-18, Proctor Dec. Exh. 32.

25     [51]   Garcia Depo., at 481:20-482:1; 489:5-11, Proctor Dec. Exh. 32

     [52]   Proctor Dec. Exh. 35, Deposition Tr. of Anna Rhee, dated February 3, 2005

26   ("Rhee Depo."), at 50:10-51:2, 78:24-79:12, 81:16-19; Irmen Depo. at 9:17-12:8.

27     [53]   Proctor Dec. Exh. 34 , Bryant Depo. at 254:17-257:15.

     [54]   Proctor Dec. Exh. 34, Bryant Depo Tr., Vol. II, 289:22-292:25.

28

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 45 of 99   Page ID
#:22096
Case 2:04-cv-09049-SGL-RNB   Document 1117   Filed 11/15/2007   Page 13 of 15

1   less than two-and-a-half months away. Nevertheless, the witnesses' counsel still

2   refuses to provide Mattel with reasonable deposition dates for them -- a tactic that

3   will prejudice Mattel as a result of the stay obtained by MGA. Mattel simply cannot

4   afford to wait until the dates offered by counsel for these depositions, particularly

5   the January 2008 date offered for Ms. Marlow. Their refusals to provide key

6   testimony in this case threaten not only to prejudice Mattel's rights, but to

7   undermine the truth-finding function of this Court.

8         Moreover, neither the Court nor Mattel has any assurance that the witnesses

9   will even appear on the belated dates that have been offered. To the contrary,

10   despite Mattel's requests, the witnesses' counsel has refused to stipulate that they

11   will appear. This has the earmarks of MGA's and Bryant's all-too-familiar pattern of

12   obstructionism that has included promises to appear for deposition, only to be

13   followed by delays and last-minute cancellations and then, ultimately, by flat

14   refusals to testify until ordered. For example:

15     •   After Bryant's counsel convinced Mattel not to file a motion to compel

16         based on their "word as attorneys" that Bryant would appear on a

17         specific date, Bryant's counsel reneged two business days before the

18         scheduled deposition and Bryant refused to appear.[55] Then, it took two

19         Court Orders to force Bryant to attend deposition.[56]

20     •   Likewise, it took two Court Orders compelling Larian to sit for

21         deposition (the second being necessary because Larian refused to obey

22

23

24

---

25   [55]  See Declaration of Michael T. Zeller in Support of Mattel's Motion to

26   Overrule Instructions Not to Answer During the Deposition of Carter Bryant, dated

27   February 1, 2007, ¶¶ 5-8, Exhs. 5, 6.

    [56]  See id., ¶¶ 9-13, Exhs. 7-11.

28

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 46 of 99   Page ID
#:22097
Case 2:04-cv-09049-SGL-RNB   Document 1117   Filed 11/15/2007   Page 14 of 15

1      the first Order), as well as the imposition of sanctions, before Larian

2      finally appeared.[57]

3   •   After numerous promises to produce Paula Garcia for deposition, MGA

4      unilaterally cancelled her deposition as its scheduled March 2007 date

5      approached.[58]  MGA subsequently offered a new date for her

6      deposition, but cancelled her deposition again just a few days prior to

7      that date and then refused to produce her at all.[59]  It then took two

8      Court Orders to obtain her complete testimony with respect to the

9      Bryant case.[60]  MGA also followed the same pattern of last-minute

10      cancellations with its other designated Rule 30(b)(6) witnesses and

11      ultimately had to be ordered to provide them as well.

12  Nor can defendants blame their prior counsel for all of this, given that they continue

13  to play out this same tactic even now.  Gustavo Machado is an MGA executive and

14  a named defendant in this case.  Despite his initial promises to appear, Mr. Machado

15  now refuses to sit for deposition.[61]  Thus, Mattel will have to file yet another motion

16  to obtain discovery that it is obviously entitled to.

17

18

19  [57]  See Declaration of Michael T. Zeller in Support of Mattel's Reply in Support
of *Ex Parte* Application to Reschedule the Hearing Date on Defendants' Motion to
20  Dismiss Mattel's Amended Answer and Counterclaims and Defendants' Objections
to Discovery Master's March 7, 2007 Order, dated May 9, 2007, ¶¶ 4-8, Exhs. 1-3.
21  [58]  See Declaration of Michael T. Zeller in Support of Mattel's Motion to
22  Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6) and
for Sanctions, dated April 13, 2007, Exh. 16.
23  [59]  Id. ¶ 36.
[60]  See Order Granting Mattel's Motion to Compel MGA to Produce Witnesses
24  for Deposition Pursuant to Rule 30(b)(6), dated May 16, 2007, Order Granting
25  Mattel's Motion for an Extension of Time to Depose Paula Garcia in Her Individual
Capacity and as a 30(b)(6) Designee, dated August 14, 2007, Proctor Dec. Exhs. 42-
26  43.
[61]  Proctor Dec. Exhs. 37-38.
27

28

Exhibit 4
Page ____ 47

Case 2:04-cv-09049-DOC-RNB    Document 1656-3    Filed 01/27/08    Page 47 of 99    Page ID
#:22098
Case 2:04-cv-09049-SGL-RNB    Document 1117    Filed 11/15/2007    Page 15 of 15

1      Given these delay tactics, an order compelling the witnesses' depositions is

2   required to avoid yet more delay.  Mattel is already being prejudiced by the stay

3   sought and obtained by MGA.  To avoid further prejudice, the Court should order

4   these witnesses to appear for deposition no later than December 7, 2007.  In the

5   alternative, the Court should modify the Scheduling Order so as to extend Mattel's

6   time to take discovery based on the testimony of these witnesses to two months after

7   their depositions are completed.

8                            **Conclusion**

9      Mattel respectfully requests that the Court grant its *ex parte* application.

10

11  DATED:  November 15, 2007        QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
12

13

14                                   By /s/ Dylan Proctor
                                        B. Dylan Proctor
15                                      Attorneys for Plaintiff
                                        Mattel, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 4
Page _____ 48

**Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.

CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# **EXHIBIT 5**

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

Case 2:04-cv-09049-DOC-RNB   Document 1656-3   Filed 01/27/08   Page 49 of 99   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 1062   Filed 11/20/2007   Page 1 of 3
#:21052

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.     CV 04-09049 SGL(RNBx)                          Date: November 20, 2007
Title:        CARTER BRYANT -v- MATTEL, INC.
              AND CONSOLIDATED ACTIONS
========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

              Jim Holmes                               Theresa Lanza
              Courtroom Deputy Clerk                   Court Reporter

ATTORNEYS PRESENT FOR CARTER           ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                          John B. Quinn
                                       Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:             ATTORNEY PRESENT FOR CARLOS
                                       GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan                        David C. Scheper
Carl A. Roth

COUNSEL FOR WITNESSES

Larry W. McFarland

PROCEEDINGS:    **ORDER RE EX PARTE APPLICATION; ORDER RE DESIGNATION OF
                LEAD COUNSEL**

        The Court heard argument on Mattel's ex parte application regarding the scheduling of three
witness depositions.  The Court accepts the representations of Mr. McFarland that these
depositions will go forward on December 12 (Margaret Hatch-Leahy), 14 (Ana Elise Cloonan), and
28 (Veronica Marlow), 2007.   Accordingly, the Court finds that the ex parte application is **MOOT**.

        The Court also addressed designation of lead trial counsel.  Lead trial counsel, as

MINUTES FORM 90                                  Initials of Deputy Clerk: jh (TIME:00/45)
CIVIL -- GEN                          1

Exhibit 5
Page ___ 4G

designated below, shall participate in the preparation of the final pretrial order(s) and appear for the pretrial conference(s).  He shall also act as lead counsel during the trial(s) in these consolidated cases.  Whether and to what extent lead trial counsel shall be involved in the mediation of this matter is left to the discretion of the settlement officer.  The Court expects counsel to follow the settlement officer's directives concerning settlement procedures.

The Clerk shall identify lead trial counsel on the docket report as follows:

| | |
|---|---|
| For Mattel: | John B. Quinn |
| For the MGA Entities and Isaac Larian: | Thomas J. Nolan |
| For Carter Bryant: | John W. Keker |
| For Carlos Gustavo Machado Gomez: | David C. Scheper |

IT IS SO ORDERED.

c:   Ambassador Prosper

MINUTES FORM 90                                          Initials of Deputy Clerk __jh_____
CIVIL -- GEN                        2

Exhibit 5
Page ____50____

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 6**

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

September 13, 2007

VIA FACSIMILE AND U.S. MAIL

Larry McFarland, Esq.
Keats McFarland & Wilson LLP
9720 Wilshire Boulevard, Penthouse Suite
Beverly Hills, California  90212

Re:    Mattel, Inc. v. Bryant et al.

Dear Mr. McFarland:

I follow-up on our telephone conversation today regarding the protocol for the inspection of computer hard drives and laptop computers.  We propose the following:

- The expert will be from the following firm:  DataChasers, Inc., Richard L. Albee, CEO, P.O. Box 2861, Riverside, California 92516, phone (877) 328-2392. DataChasers has not, to our knowledge, done any work for Mattel.

- Mattel will bear the costs of the expert.

- The computers shall be made available to the expert for imaging at your offices, but neither your lawyers nor your clients may be present for the imaging.  No verbal directions may be given to the expert while he or she is working at your offices.

- The search terms to be used by the expert are attached on Attachment A.  The expert will perform the search for responsive documents, including the computer's unallocated and file-slack space.  The expert shall provide file- and system-level metadata for all such documents.  The expert shall sign the protective order and

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

2134433100          PAGE.02

Exhibit 6
Page   51

agree to be bound by its confidentiality requirements. Access by the expert to information protected by the attorney-client privilege or work product doctrine shall not constitute a waiver of the privilege.

- Once the expert has made the mirror image of the hard drive, he or she will print out all documents and data collected in response to the search terms and Bates stamp the documents. Those documents will be provided to your office to pull for privilege. You will provide us with a privilege log sufficient to show the basis for withholding any documents. Within eleven (11) court days of the time that your office receives the documents and data that he or she has printed out, the expert will provide us with all such documents and data, including native files, except for any such documents or data for which privilege is asserted. You will serve upon us and the expert the privilege log identifying the documents or data, if any, to be withheld on privilege grounds within ten (10) court days of your receipt of the documents and data from the expert.

- The expert also will follow the same procedures as set forth above with respect to any documents or data relating to any alteration of the hard drives or data on the hard drives by, for example, providing a listing of all application programs and when they were installed, detailing whether there is any evidence of the presence or use of a data destruction program on the computer, evidence regarding the transfer of relevant documents to or from the computer via media or e-mail, and/or user account information present on the system.

- If there is any issue or question regarding the authenticity, correctness, integrity or completeness of any matter, including without limitation any document or data from the computers, this protocol does not foreclose Mattel from seeking production and inspection of any matter, including without limitation the original data, drives or documents.

Please sign below on behalf of your clients, Elise Cloonan and Sarah Halpern, if this is agreeable.

Very truly yours.

Susan Wines

SLW:wp
07209/2194393.1

Larry W. McFarland
Dated: September 27, 2007

07209/2194393.1

2

Exhibit 6
Page ___52___

## ATTACHMENT A - PROPOSED SEARCH TERMS

MGA Entertainment, Inc.
ABC International Traders, Inc.
MGA Entertainment (HK) Limited
Bandai
Hasbro
Tomy

Carter Bryant and/or family members
Richard Irmen and/or family members
Isaac Larian and/or family members
Farhad Larian and/or family members
Morad Zarabi and/or family members

Ana Elise Cloonan
Paula (Treantafalles) Garcia
Sarah Halpern
Rachel Harris
Rebecca (Becky) Harris
Margaret Hatch-Leahy
Daniel Leahy
Kerri Legg Brode
Barbara Malcolm
Veronica Marlowe
Victoria O'Connor
Maureen Mullen Chianese
Amy Myers
Anna Rhee
Mercedeh Ward

Bratz
Prayer Angels or Angel

SEP 13 2007 15:42

2134433100        PAGE.04

Exhibit 6
Page ___53

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# FILED UNDER SEAL

## EXHIBIT 7

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# FILED UNDER SEAL

## EXHIBIT 8

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.

CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# FILED UNDER SEAL

# EXHIBIT 9

EXHIBIT TO:    DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

# Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 10**

EXHIBIT TO:    DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

June 1, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:    <u>Mattel, Inc. v. Bryant</u>

Dear Mr. McFarland:

I write to address certain outstanding issues regarding Margaret Hatch-Leahy's responses to
Mattel's Subpoena, served on March 14, 2005, Veronica Marlow's responses to Mattel's
Subpoena, served on March 25, 2005, Elise Cloonan's responses to Mattel's Subpoena, served on
May 13, 2005, and Sarah Halpern's responses to Mattel's Subpoena, served on March 14, 2005.

## A.    <u>Margaret Hatch-Leahy and Veronica Marlow</u>

I write pursuant to <u>Local Rule</u> 37-1 to request a meet and confer regarding Margaret Hatch-
Leahy's responses to Mattel's Subpoena, served on March 14, 2005 and Veronica Marlow's
responses to Mattel's Subpoena, served on March 25, 2005.  Mattel anticipates discussing the
following issues at that conference.

## I.    <u>Unjustified Redaction of Documents</u>

Of the limited documents that Ms. Hatch-Leahy has produced to Mattel, many are so heavily
redacted that they are not useful and indeed are often unintelligible.  Much of the redacted

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2085672.2

Exhibit 10
Page ___ 87



information seems to be highly relevant information relating to Carter Bryant and Bratz. For
example, information pertaining to Carter Bryant and Bratz dolls has been heavily redacted from
Ms. Hatch-Leahy's planner. Such information is clearly discoverable. We perceive no
reasonable basis for the redaction of this pertinent information. That is especially so because
there is a protective order in effect in this case, and every document produced by Ms. Hatch-
Leahy has been stamped "Attorneys' Eyes Only."

Ms. Marlow's document production is also improperly redacted. For example, documents
SABW-M 00429, 431, 436 and 437 appear to have certain information redacted from the fax
headers. There is no conceivable basis for how such information would be privileged and, no
privilege log has been produced to us. Even more troubling however, is that there is no
indication that information has been redacted in the first place -- just blank spaces where
information should normally appear. Please provide these documents in unredacted form and
confirm either that there are no other redactions in Ms. Marlow's production or that any other
redactions have been properly logged (and provide a copy of the log to us).

## II.    Unjustified Objections to Production

In Ms. Marlow's and Ms. Hatch-Leahy's amended objections and responses dated May 12, 2005,
each insists that she "will not withhold any non-privileged documents on the basis of [her
general] objections." It remains unclear, however, whether documents have been withheld on
the basis of claims of privilege or privacy. The responses to Request No. 8 indicates that
documents apparently have been withheld on such a basis.

If no documents have been withheld, we request confirmation of this fact. However if any
documents have been withheld based on privilege or privacy claims, Ms. Hatch-Leahy's and
Ms. Marlow's boilerplate objections are insufficient in that they provide no description of the
documents, communications or things not disclosed that would enable Mattel to assess such
claims. *See Burlington N. & Santa Fe Ry. Corp. v. U.S. Dist. Court for Dist. of Montana,* 408
F.3d 1142, 1148 (9th Cir. 2005). Accordingly, please provide a privilege log detailing any and
all responsive documents which have been withheld.

## III.   Missing Documents

Although Ms. Marlow produced an IRS Form 1099 from MGA for the year 2000 showing
approximately $38,000 in income, we only received copies of three check stubs totaling about
$2,800 for that year. Please confirm that Ms. Marlow does not possess any other evidence of
payment for the year 2000 from MGA and has no other income in any other year from MGA.

I appreciate your consideration and am hopeful we will be able to resolve these issues without
having to burden the Court with a motion.

07209/2085672.2                           2

Exhibit 10
Page _____ 88

## B.   Elise Cloonan

Mattel previously served a subpoena on your client, Elise Cloonan, on May 13, 2005. Mattel's subpoena called for the production of documents on May 27, 2006. As you know, before the return date, the District Court stayed all proceedings in this action. Now that the stay of discovery has been lifted, we again request that Ms. Cloonan search for and produce all documents that are responsive to Mattel's subpoena. A duplicate copy of the subpoena is enclosed. We hope to obtain the documents as soon as possible, and in any event by no later than June 18, 2007, but we are of course happy to work with you to find a convenient date for the production and to assist in any way we can.

In addition, we want to schedule a time for Ms. Cloonan's deposition. Please let me know of her available dates in the first two weeks of July 2007.

## C.   Sarah Halpern

As you may recall, you met and conferred with Shane McKenzie, from my office, regarding the production of Ms. Halpern's hard drive from the relevant time period and the forensic examination thereof, among other issues. On May 13, 2005, Ms. McKenzie sent you a letter confirming your conversations and proposing specific terms for the forensic examination. I write to re-convey our proposal regarding the forensic examination of Ms. Halpern's hard drive and to once again request the production of that drive.

I have attached copies of the May 13, 2005 letter sent by my office to you, as well as the March 14, 2005 subpoena served on Ms. Halpern. That letter sets forth our forensic examination proposal.

Aside from the hard drive examination issue, we wish to address several other issues as well. First, our May 13, 2005 letter requested confirmation that (1) Ms. Halpern's 2001 federal tax return is the only tax return filed by Ms. Halpern that reflects a payment by MGA relating to Bratz, and (2) Ms. Halpern conducted another search for responsive documents pursuant to your agreement with Ms. McKenzie. Please confirm whether these statements are correct or not.

Second, Ms. Halpern's responses to Request Nos. 1, 5, 6, 7, and 11 indicate that Ms. Halpern was willing to produce responsive documents. However, Ms. Halpern also made a number of objections to those Requests. Please confirm that, notwithstanding her objections, Ms. Halpern has produced all responsive documents where she has indicated that she "is willing to produce responsive documents pursuant to the Protective Order." If responsive documents have been withheld based on a claim of privilege or for some other reason, please describe the withheld documents with sufficient particularity to enable Mattel to assess the basis for withholding the documents.

Third, Ms. Halpern's response to Request No. 2 appears to indicate that she is aware of, but does not possess, responsive documents. Compare Response to Request No. 2 ("no responsive

Exhibit 10
Page _____ 89

documents are in the possession, custody or control of Halpern") <u>with</u> Response to Request No. 3 (Ms. Halpern "is not aware of any documents responsive to this request").  Assuming we correctly interpret the response to Request No. 2, please indicate what documents Ms. Halpern believes are responsive to that Request and where she believes those documents may be located.

Please let me know at your earliest convenience, and in any event no later than June 8, 2007, whether our forensic examination proposal and the other terms set forth in this letter regarding Ms. Halpern's production are acceptable.  Out of an abundance of caution, please also consider this letter a request for an in person conference of counsel regarding Sarah Halpern's responses to Mattel's Subpoena, served on March 14, 2005 pursuant to <u>Local Rule</u> 37-1.

I appreciate your consideration and look forward to hearing from you at your earliest convenience.

Very truly yours,

*Susan L. Wines*

Susan L. Wines

Attachments

Exhibit 10
Page _____ 90

1
2
3
4
5

## Carter Bryant v. Mattel Inc.
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

6
7

# EXHIBIT 11

8
9
10
11
12
13

EXHIBIT TO:  DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

January 2, 2008

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

<u>VIA FACSIMILE, U.S. MAIL and E-MAIL</u>

Christopher Tayback, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      Re:   <u>Mattel v. Bryant</u>

Dear Mr. Tayback:

      I am writing in response to your letter dated December 20, 2007.

      As an initial matter, your statement that "when you received that disk in April 2005, you had an obligation to produce documents responsive to Mattel's subpoena" is not correct. Mattel served a subpoena on Ms. Cloonan on or about May 12, 2005, with a response date of May 27, 2005. Prior to the response date, this case was stayed. After the stay was lifted, I met and conferred with your former partner, Ms. Wines, regarding a protocol to review all of the third party computer related materials. We reached an agreement on that protocol and the computers and hard drives were provided to Data Chasers, an expert that your firm selected. In a letter dated November 21, 2007, I notified Mr. Proctor that we had noticed that your computer expert had not picked up the computer zip disk and I suggested that we give this disk to Data Chasers pursuant to the protocol set forth in the letter from Ms Wines dated September 13, 2007. In order to speed up the process, I further agreed to review anything found by Data Chasers within five court days of receipt from Data Chasers rather than the ten court days set forth in the agreement with Ms. Wines. In a letter date November 28, 2007, Mr. Proctor agreed to my proposal as follows: "Third, regarding Ms. Cloonan's computer disk or drive, we would ask that you please provide the drive to Data Chasers as you suggest. <u>We will agree to follow the protocol outlined in our September 13, 2007, letter,</u> with the understanding set forth in your letter that you will review anything found by Data Chasers within five court days of receipt and provide the same to us. We expect you will proceed with appropriate expedition to ensure that Ms. Cloonan's documents are produced to Mattel sufficiently in advance of her deposition to enable Mattel to examine her on them as needed." (emphasis added) On the same day that I notified Data Chasers that they should pick up the zip disk and on Friday, November 30, 3007, we received from Data Chaser the document that they had located. Two court days later, on Tuesday, December 4, 2007, we hand delivered to Mr. Proctor the document located by Data Chasers to

Exhibit 11
Page _____ 91 _____

B. Dylan Procter, Esq.
January 2, 2008
Page 2

which we had applied a bates number. Therefore, your firm had the document located by Data Chasers well prior to Ms. Cloonan's deposition which was taken on December 14, 2007.

With respect to Ms. Cloonan's testimony regarding the zip disk, I disagree with your characterizations of what she said. It is undisputed that the zip disk, as well as the computer, were in her home and in her possession. I also disagree with your statement that "Ms. Cloonan's testimony directly contradicts Mr. Bryant's testimony regarding work he alleged Ms. Cloonan performed on Bratz." The remainder of the statements in the third to the last paragraph of your letter are essentially to the effect that there might be relevant evidence on Ms. Cloonan's computer or zip disk, which is, of course, the reason that Ms. Wines and I negotiated a protocol that would allow Mattel to review the computer materials. What appears to be happening now is that you want to change the protocol. As I told you during our conversation, Mr. Albee told me that someone from your firm had called him and told him that your firm wanted to change the protocol, which is why I sent the letter to Mr. Albee dated December 17, 2007, which I copied you on. If you have a proposal for a revised protocol, please provide it to me. However, I must remind you that we are not starting with a blank slate. Ms. Wines and I not only spent a considerable amount of time reaching an agreement on the protocol, but the computer and the disk have already been reviewed pursuant to the protocol, and Ms. Cloonan has already been deposed.

Regarding Mr. Albee at Data Chasers, I have instructed him to retain possession of Ms. Cloonan's computer and zip disk. I further confirm that neither your firm, Mattel, nor I will make any effort to get Ms. Cloonan's computer or zip disk back from Data Chasers absent a written agreement from both your firm and me. This further confirms that your firm has agreed to address the protocol and review issues with me and that you will not be contacting Data Chasers or Mr. Albee.

Finally, as you know, Mr. Albee has provided you with color photocopies of the front and the back of Ms. Cloonan's zip disk; therefore, that issue is resolved.

I look forward to hearing from you.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

cc:  Thomas J. Nolan
     Michael Page

Exhibit 11
Page _____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.

CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# **EXHIBIT 12**

EXHIBIT TO:     DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3730
WRITER'S EMAIL

lmcfarland@kmwlaw.com

June 28, 2007

<u>VIA FACSIMILE</u>

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      Re:   <u>Mattel v. Bryant</u>

Dear Ms. Wines:

     I am writing in response to your letter dated June 25, 2007, and to follow up on our meet and confer which we held yesterday morning at 10:00 a.m. I will address the points in the order set forth in your June 25 letter.

A.   <u>Margaret Hatch-Leahy and Veronica Marlow</u>

I.   <u>Unjustified Redaction of Documents</u>

     With respect to the review of Ms. Leahy's day planner and Ms. Marlow's faxes, I have requested these documents. I will let you know as soon as I have them.

II.   <u>Ms. Marlow's Wells Fargo Account</u>

     I will confirm the information with Ms. Marlow when I meet with her. As you know, she has been in Brazil.

B.   <u>Elise Cloonan</u>

     As set forth in my letter dated June 26, 2007, we do not agree that there has been any waiver of Ms. Cloonan's objections, and with that letter we provided you with Ms. Cloonan's written responses. I have also asked Ms. Cloonan to provide us with a doctor's note.

C.   <u>Sarah Halpern</u>

     There are no differences intended by the language in the responses to Request No. 2 and Request No. 3. For clarity, we hereby modify the response to Request No. 3 to read as follows: "no responsive documents are in the possession, custody or control of Halpern."

Exhibit 12
Page _____ 93

Susan Wines, Esq.
June 28, 2007
Page 2

### D.   Computers

I will ask all four of our clients about computers, including laptops, that they may have used during the relevant time frame.

With respect to the authorities set forth in your June 21, 2007, letter alleging that Mattel is "entitled to inspect and image" the personal computers belonging to Elise Cloonan and Sarah Halpern, the cases that you cite fail to support your position.

For instance, while we, of course, agree that the term "documents" includes documents stored in electronic form, the significance of Playboy Enterprises, Inc. v. Welles, 60 F.Supp.2d 1050 (S.D. Cal. 1999) is that this case establishes a strict protocol to be followed when discoverable information is sought from an opposing party's computer hard drives. The Playboy court set forth a protocol which would allow the party requesting discovery to recover discoverable information while at the same time protecting the privacy and privilege concerns of the responding party. The protocol called for an independent third-party expert, agreed upon by both parties or appointed by the court, to conduct the inspection and create a "mirror image" copy of the defendant's computer hard drive. Following the inspection, the "mirror image" copy would be given to the defendant's counsel, who would then print and review any recovered documents and produce to the plaintiff those communications that are responsive and relevant. Finally, the court noted that the defendant's counsel would be the sole custodian of the "mirror image" copies throughout the litigation.

Your letter also cites Simon Property Group L.P. v. mySimon, Inc., 194 F.R.D. 639 (S.D. Ind. 2000) as support for the proposition that deleted records are discoverable and that courts routinely permit inspection of home computers. As in Playboy, Simon Property also involved a plaintiff seeking access to defendant's computers for the purpose of attempting to recover discoverable information, including deleted files. The court ordered a protocol requiring the inspection and "mirror image" copying to be conducted by a third-party expert. In doing so, the court referred to Playboy's protocol as offering the best approach, and fashioned a protocol which was nearly identical to the one in Playboy. The court stated that plaintiff and defendant should attempt to agree on an expert to inspect and create a "mirror image" of the hard drives, and if they failed to do so, the court would appoint one. The expert would then make the "mirror image" copy, and provide the copy to defendant's counsel. However, the copying would be limited to "the types of files reasonably likely to contain material potentially relevant" to the case.[1] Thereafter, defendant's counsel would review the records for privilege and responsiveness to plaintiff's discovery requests, and supplement defendant's responses to discovery requests, as appropriate.[2] Finally, the court ordered that the expert would sign the protective order and retain

---

[1]   Id. at 641; citing Adobe Systems, Inc. v. South Sun Products, Inc., 187 F.R.D. 636, 642-43 (S.D. Cal. 1999) (noting that Microsoft Office 97 occupies more than 200 megabytes on hard drive of a personal computer).

[2]   Id. at 641-42.

Exhibit 12
Page ___ 94

Susan Wines, Esq.
June 28, 2007
Page 3

until the end of the litigation the "mirror image" copies of the hard drives, without "disclos[ing] the contents of any files or documents to plaintiff or its counsel or other persons."[3]

The third case that you cite, Superior Consultant Co. v. Bailey, 2000 WL 1279161 (E.D. Mich. 2000), further supports the protocol applied in Playboy and Simon Property. Finally, Kucala Enterprises, Ltd. v. Auto Wax Co., Inc., 2003 WL21230605 (N.D. Ill. 2003) is not applicable to our case. That case concerned the plaintiff's acts of spoliation and destruction of evidence, which is not present with Ms. Cloonan or Ms. Halpern.

Of further significance is the fact that each of the four cases cited in your letter concerns discovery as between *parties* to an action. However, both of our clients are non-party *witnesses* in this case. Since courts already protect the privacy and privilege interests of parties in these inspection cases, there will likely be a much greater level of protection for non-parties. Thus, in order to inspect our clients' computer hard drives, the Court may force Mattel to meet a much higher burden than when dealing with a party.

Once again, the central dispute at issue is not, as your letter maintains, whether Mattel has a right to discover information contained in our clients' computer hard drives. In fact, we agree that such information is discoverable and, if relevant and non-privileged, should be produced. However, our clients' computers contain substantial non-relevant and confidential information that would infringe their rights of privacy if produced. Therefore, based on the foregoing authorities, we propose to use the protocol set forth in Playboy as follows:

- Your firm and ours mutually agree on an independent third-party, who is an expert in the field of computer forensics, to conduct the necessary inspection and "mirror image" copying of our clients' computer hard drives. The inspection shall include searches for relevant deleted documents and metadata. If no expert can be jointly agreed upon, the Court shall select an expert. Regardless of the method of selection, the chosen expert shall sign the protective order to maintain confidentiality of the documents copied. To the extent that the computer expert has direct or indirect access to information protected by the attorney-client privilege, such "disclosure" shall not result in a waiver of the attorney-client privilege. Mattel shall pay all costs for this computer expert;

- Once the expert has been chosen, the expert shall make the "mirror image" copies of Ms. Cloonan's and Ms. Halpern's computer hard drives and shall search for relevant deleted documents and metadata. Only us and Ms. Cloonan and/or Ms. Halpern may be present when the computer is inspected and the mirror images made. Thereafter, the expert shall deliver the "mirror

---

[3] Id. at 642.

Exhibit 12
Page _____ 95

Susan Wines, Esq.
June 28, 2007
Page 4

image" copies to us, as counsel for Ms. Cloonan and Ms. Halpern, for our review;

- We will print and review any recovered documents and produce to you all non-privileged documents that are responsive to the subpoenas served on Ms. Cloonan and/or Ms. Halpern, as the case may be. We will set forth all documents that are withheld on a claim of privilege in a privilege log. Depending on the volume of data recovered from the computers, the parties may need to meet and confer regarding relevant search terms so as to make the task of searching the hard drives manageable; and

- We shall be the sole custodian of the "mirror image" copies throughout the litigation.

This protocol will allow Mattel to recover the relevant documents, if any, while maintaining our clients' rights of privacy and confidentiality.

E.     Fee Agreements

I will review the order from Judge Infante and relevant case law regarding third party retainer agreements and get back to you.

F.     Deposition Dates

I will ask our four clients about possible deposition dates.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

Exhibit 12
Page ___96___

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Carter Bryant v. Mattel Inc.
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# EXHIBIT 13

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3730
WRITER'S EMAIL

lmcfarland@kmwlaw.com

July 17, 2007

<u>VIA FACSIMILE and U.S. MAIL</u>

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   <u>Mattel v. Bryant</u>

Dear Ms. Wines:

I am writing in response to your letter dated July 13, 2007.

With respect to Ms. Cloonan, as you know, she very recently had a caesarian section, and I have asked that she get me a doctor's note. I will let you know as soon as I have it. With respect to possible deposition dates for Ms. Marlow, Ms. Leahy and Ms. Halpern, as we have previously discussed, it makes sense that we have the document production finalized before you take their depositions. Because these individuals are third party witnesses, it is particularly important that they not be burdened with more than one day of deposition which might occur if they were to be deposed before you and I have resolved the document production issues. On that note, I have not heard from you with respect to the proposal for the inspection of the hard drives for Ms. Halpern and Ms. Cloonan set forth in my letter dated June 28, 2007. Also, on July 12, 2007, I received from Ms. Lewis a copy of the Order Granting Mattel's Motion to Compel Production of Documents. Based on our discussions, it appears to be your position that all four of our witnesses need to produce documents relating to Bratz through the present time. We need to discuss this issue, but if we were to agree with you, in the case of Ms. Leahy and Ms. Marlow, this will necessitate the production of additional documents.

Therefore, as it stands now, there are outstanding document production issues with Ms. Halpern, Ms. Marlow and Ms. Leahy that need to be resolved before their depositions can be taken.

I look forward to discussing these issues further with you at your convenience.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

Exhibit 13
Page _____ 97

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

September 7, 2007

<u>VIA FACSIMILE</u>

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   <u>Mattel v. Bryant</u>

Dear Ms. Wines:

I am writing in response to your letter dated September 4, 2007.

With respect to Ms. Marlow, as I stated in my letter to you dated July 23, 2007, at that time we had not received any documents from Wells Fargo in response to your subpoena. To date, we have still not received these documents. I again suggest that you contact Wells Fargo and pursuant to our agreement, have the responsive documents produced to me for our review. In addition, we have located additional e-mails that we are currently reviewing. We will produce the responsive e-mails to you no later than next Friday, September 14, 2007. In the meantime, I will again check with Ms. Marlow regarding her schedule so that we can set the deposition soon after the document production from Wells Fargo and Ms. Marlow is completed.

With respect to Ms. Leahy, as you know we produced additional responsive documents on August 14, 2007. In addition, because you have requested all documents relating to Bratz, regardless of the time period, Ms. Leahy is having to review documents that have been stored away. I have spoken with her and she should be done with this review shortly. I will also speak with her regarding her availability for deposition.

With respect to the review of the computers of Ms. Cloonan and Ms. Halpern, the changes to the fourth and fifth bullet points as set forth in your letter dated August 27, 2007, are fine. My issue lies with respect to the addition of the language at the end of your letter as follows: "Please sign below on behalf of your clients, Elise Cloonan, Margaret Hatch-Leahy, Sarah Halpern and Veronica Marlow if this is agreeable." The problem I have with this language is that you and I have never discussed inspecting any computers of Ms. Leahy or Ms. Marlow. We have only discussed

Exhibit 13
Page _____ 98

Susan Wines, Esq.
September 7, 2007
Page 2


the procedures with respect to inspecting the computers of Ms. Cloonan and Ms. Halpern.  If Ms. Leahy and Ms. Marlow are deleted, I am fine with this letter.

With respect to the inspection of Ms. Cloonan's and Ms. Halpern's computers, to speed things up I would suggest that you send me the search terms that you propose the expert will use in his or her search.  Once we get through the inspection of these computers, we can schedule the depositions of Ms. Cloonan and Ms. Leahy.

I look forward to hearing from you at your convenience.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP


Exhibit 13
Page _____ 99

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

September 21, 2007

VIA FACSIMILE

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   Mattel v. Bryant

Dear Susan:

I am writing with respect to my continuing efforts regarding the depositions for the four witnesses that I represent. I have been working diligently on this since we spoke last week. Here is the update.

Veronica Marlow

As I mentioned, we have located additional documents responsive to your subpoena. We are producing some of these documents by Monday, and are continuing to review additional documents for production. In addition, Ms. Marlow is continuing to review her documents to insure that all responsive documents have been produced. I anticipate that all documents should be reviewed and produced to you by October 16, 2006. In addition, as set forth in my letter dated September 7, we have not received any documents from Wells Fargo in response to your subpoena. As I have repeatedly stated, I want all of the documents produced prior to the depositions of my witnesses so that Mattel does not have any basis to try to take a second day of deposition. Based on the understanding that theses documents will be produced prior to Ms. Marlow's deposition, I can confirm that Ms. Marlow and I are available for her deposition on Wednesday, October 24, 2007 at 10:00 a.m.

Elise Cloonan

I have spoken with Ms. Cloonan and she is still recovering from her caesarean, and is adjusting to being a new mother. Ms. Cloonan believes that she will be able to sit for her deposition in mid-November. Based on that, I am willing to set her deposition for Wednesday, November 14, 2007 at 10:00 a.m.

Exhibit 13
Page ____ 100

Susan Wines, Esq.
September 21, 2007
Page 2


<u>Sarah Halpern</u>

I have left messages, but I have thus far been unable to reach Ms. Halpern. I will let you know as soon as I am able to reach her to obtain deposition dates.

<u>Margaret Leahy</u>

As I mentioned, Ms. Leahy is re-reviewing her documents based upon your position that all versions of Bratz are at issue. I anticipate that Ms. Leahy will be finished with this review in the next two to three weeks. I am continuing to work with Ms. Leahy with respect to an available deposition date.

Also, as set forth in my September 7, 2007 letter, please provide me with the search terms that you propose that the computer expert use to search the computers of Ms. Cloonan and Ms. Halpern. It is imperative that we have the review completed and all responsive, non-privileged documents produced prior to the depositions of Ms. Cloonan and Ms. Halpern.

Finally, I note that many documents that Mattel has produced in this litigation are designated as Attorney Eyes Only ("AEO"). In order to properly prepare my witnesses, I need two things. First, I need to know well prior to the depositions if Mattel plans to show any AEO documents to my witnesses during the depositions. If so, I need for Mattel to identify those documents to me and to provide me with permission to show such documents to my witnesses prior to their depositions so that they can be adequately prepared.

I appreciate your continued cooperation in moving these depositions forward.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP


LWM/jlt

Exhibit 13
Page _____ 101

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

September 27, 2007

VIA FACSIMILE

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

     Re:    Mattel v. Bryant

Dear Susan:

    I am writing to follow up on our discussion regarding the depositions of Sarah Halpern and Margaret Leahy. I have had difficulty finding a date that both Ms. Halpern and I are available, particularly given the time commitments that Ms. Halpern has with respect to teaching and her oncology appointments. However, I can confirm that both Ms. Halpern and I are available on Monday October 29, at 10:00 a.m.

    With respect to Ms. Leahy, because you have taken the position that all versions of Bratz are at issue, Ms. Leahy has had to devote a considerable amount of time to reviewing her documents. That review is not yet completed. However, I can confirm that Ms. Leahy has located documents that I have for your review. In addition, Ms. Leahy has located an external hard drive. We need to discuss how we want to handle this hard drive. Please give me a call with respect to this matter. As I have repeatedly stated, we need to get all of the document issues resolved prior to the depositions of these witnesses. I am not willing for these independent witnesses to be deposed for a second day in violation of the federal rules.

    In addition, I have not received a response to the request in my letter dated September 21, 2007 that you provide me with all AEO documents that you plan to show any of my witnesses well prior to their depositions. Please let me know your position.

    I look forward to speaking with you.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

Exhibit 13
Page _____ 108

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750
WRITER'S EMAIL
lmcfarland@kmwlaw.com

October 2, 2007

**VIA FACSIMILE**

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   <u>Mattel v. Bryant</u>

Dear Susan:

I am writing to follow up with my letter dated September 21, 2007 and my subsequent letter dated September 27, 2007, regarding any Attorneys' Eyes Only ("AEO") designated documents which you plan to utilize during the depositions of my clients. Given that I have now provided you with dates for each of my witnesses, I am requesting that you provide me any AEO documents that you plan to use at least fourteen (14) days before the date of said depositions. I also need permission to show such documents to my witnesses prior to their depositions so that they can be adequately prepared. Based upon the impending deposition dates, please advise me as soon as possible regarding this matter.

In addition, with regard to the forensic review of the computers belonging to Elise Cloonan, Sarah Halpern, and Margaret Leahy, we are awaiting a date from you when DataChasers, Inc. will be available at our offices for the hard drive imaging. We are available as early as Wednesday, Thursday, or Friday of this week. It is imperative that the entire review process per our agreement be completed prior to the deposition dates, in order to allow for any related questioning. As I have repeatedly stated, I am not willing to have these independent witnesses deposed for more than seven hours.

I look forward to hearing from you as soon as possible and appreciate your continued cooperation in accomplishing these tasks.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

Exhibit 13
Page _____ 103

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS. CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

October 4, 2007

**VIA FACSIMILE**

Michael Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      Re:    Mattel v. Bryant

Dear Michael:

      I am writing in response to your letter dated October 1, 2007, regarding your proposed stipulation and order.

      Unfortunately, your proposed stipulation does not accurately set forth the history of my efforts to move the deposition process forward.  For example, you state:

          WHEREAS, Mattel has been actively seeking deposition dates for each of the foregoing since at least as early as June 2007;

          WHEREAS, not having received proposed deposition dates, Mattel sent counsel for Veronica Marlow, Elise Cloonan, Sarah Halpern and Margaret Hatch-Leahy a meet and confer letter on September 19, 2007, and the parties subsequently met and conferred on September 27, 2007 in connection with a contemplated motion to compel by Mattel;

      This recitation makes it sound as though I have been uncooperative or obstructionist, when nothing could be further from the truth.  As you and Ms. Wines know, I have in fact been working diligently to get all of the documents produced from these third party witnesses and to schedule their depositions.  In addition, I have consistently taken the position that we need to resolve the document review and production issues with respect to my four witnesses prior to the depositions.  My reason for this is simple.  I do not want you to be able to use the fact that you do not have all of the witnesses' documents prior to their depositions as a basis to depose them a second time.  These are all third party witnesses and I am only willing to agree for them to be deposed for one day up to seven hours as set forth in the federal rules.

Exhibit 13
Page _____ 104

Michael Zeller, Esq.
October 4, 2007
Page 2

        With respect to your statement in the stipulation that there have been "delays" in the production of these witnesses, to the extent that there have been any such delays, they are due to the actions of and positions taken by your firm. Without limitation, these include your firm's unreasonable proposal regarding the procedures for the review of Ms. Halpern's and Ms. Cloonan's computers and the expansive view that your firm takes with respect to what is at issue in this case.

<u>Computer Review</u>

        One of the document review issues that took several months to resolve was the review of the computers from Ms. Cloonan and Ms. Halpern. In a letter dated June 1, 2007, Ms. Wines made the following proposal:

> We will pay for the forensic examination. The examiners will take possession of Ms. Halpern's hard drive, subject to the confidentiality provisions in the protective order. The examiners will make a forensic "image" of the hard drive, to determine whether the hard drive has been "wiped clean." If the computer has not been "wiped clean," then the parties can discuss the terms of the key word search, which will be used to generate a report of the files remaining on the hard drive.

        I met and conferred with Ms. Wines regarding my position that your firm's position that "Mattel is clearly entitled to these computer hard drives" was unreasonable and invaded our clients' privacy rights. In a letter dated June 21, 2007, Ms. Wines set forth Mattel's justification for Mattel's position that it should be allowed to obtain possession of my clients' hard drives. In a letter dated June 28, 2007, I set forth my position as to why Mattel's proposal was unreasonable, and suggested a protocol for the computer review as follows:

- Your firm and ours mutually agree on an independent third-party, who is an expert in the field of computer forensics, to conduct the necessary inspection and "mirror image" copying of our clients' computer hard drives. The inspection shall include searches for relevant deleted documents and metadata. If no expert can be jointly agreed upon, the Court shall select an expert. Regardless of the method of selection, the chosen expert shall sign the protective order to maintain confidentiality of the documents copied. To the extent that the computer expert has direct or indirect access to information protected by the attorney-client privilege, such "disclosure" shall not result in a waiver of the attorney-client privilege. Mattel shall pay all costs for this computer expert;

- Once the expert has been chosen, the expert shall make the "mirror image" copies of Ms. Cloonan's and Ms. Halpern's computer hard drives and shall search for relevant deleted documents and metadata. Only us and Ms. Cloonan and/or Ms. Halpern may be present when the computer is inspected and the mirror images made. Thereafter, the expert shall

*Exhibit 13*
*Page* \05

Michael Zeller, Esq.
October 4, 2007
Page 3

deliver the "mirror image" copies to us, as counsel for Ms. Cloonan and Ms. Halpern, for our review;

- We will print and review any recovered documents and produce to you all non-privileged documents that are responsive to the subpoenas served on Ms. Cloonan and/or Ms. Halpern, as the case may be. We will set forth all documents that are withheld on a claim of privilege in a privilege log. Depending on the volume of data recovered from the computers, the parties may need to meet and confer regarding relevant search terms so as to make the task of searching the hard drives manageable; and

- We shall be the sole custodian of the "mirror image" copies throughout the litigation.

In a letter dated August 27, 2007, Ms. Wines backed down from your firm's position that copies of the hard drive be provided to you, but incorrectly included two witnesses in the protocol, Ms. Leahy and Ms. Marlow, that we had not discussed. In a letter dated September 7, 2007, I objected to the addition of these two witnesses and also stated that the protocol needed to include the search terms. These issues were resolved and I signed the computer review protocol on September 27, 2007. In addition, I subsequently learned that Ms. Leahy had external hard drives for review, and I agreed to add the review of her hard drives to the protocol. Yesterday, I sent an email to Rick Albee at Data Chasers authorizing him to pick up the computers and hard drives and today he has picked up the two computers and the two hard drives. As I again stated to Alex Stolyar yesterday, all of the activities set forth in the agreed protocol must be completed prior to the depositions of Ms. Halpern, Ms. Leahy and Ms. Cloonan because I am not willing to have these third party witnesses deposed twice. Given that Mr. Albee has picked up the equipment, and assuming that Mr. Albee conducts the review promptly, this should be able to be accomplished.

<u>Production of Additional Documents</u>

As you know, your firm served Rule 45 subpoenas on Mattel Federal Credit Union ("MFCU") for all banking records for Ms. Leahy and Ms. Cloonan and a similar subpoena on Wells Fargo for the records of Ms. Marlow. We had to meet and confer with Ms. Wines to get your firm to back down from its position that you were entitled to all of our client's bank records regardless of whether they related to this case. We were able to reach a resolution of this issue on the basis that the checks would be produced to our firm and we would review the checks and produce those relating to agreed upon persons and entities. Based on this agreement, on July 23, 2007, I produced bank records for Ms. Cloonan that related to the agreed upon person and/or entities and confirmed that no such documents existed with respect to the MFCU bank records for Ms. Leahy.

In addition, our clients have continued to search for responsive documents and we have continued to produce additional documents. This additional document production has been driven in large part by Mattel's position as set forth in Ms. Lewis' July 20, 2007, letter that Mattel is:

Exhibit 13
Page _____ 106

Michael Zeller, Esq.
October 4, 2007
Page 4

> ...entitled to any documents Ms. Marlow, Ms. Leahy, Ms. Halpern or Ms. Cloonan have relating to Bratz or Bratz derivative works through the present time. As I mentioned in my email earlier today, we also are entitled, per the court's order of January 25, 2007, to documents relating to Angel, Angel Baby, Prayer Angel or any other product on which any of your clients worked with Carter Bryant.

Based on this much more expansive view of what is at issue in this case, our clients have been re-reviewing their documents. As you know, on August 14, 2007, we produced additional documents from Ms. Leahy. On September 24, 2007, we produced additional documents from Ms. Marlow. In addition, as I have stated, we are reviewing additional documents that Ms. Leahy and Ms. Marlow have located. These documents should be available for your review by the end of next week.

In addition to the above issues, I have been trying to get an answer regarding the documents that Mattel has designated as Attorneys Eyes Only ("AEO"). As set forth in my letter dated September 21, 2007:

> Finally, I note that many documents that Mattel has produced in this litigation are designated as Attorney Eyes Only ("AEO"). In order to properly prepare my witnesses, I need two things. First, I need to know well prior to the depositions if Mattel plans to show any AEO documents to my witnesses during the depositions. If so, I need for Mattel to identify those documents to me and to provide me with permission to show such documents to my witnesses prior to their depositions so that they can be adequately prepared.

In my letter dated September 27, I reiterated this request and in my letter dated October 2, I stated as follows:

> I am writing to follow up with my letter dated September 21, 2007 and my subsequent letter dated September 27, 2007, regarding any Attorneys' Eyes Only ("AEO") designated documents which you plan to utilize during the depositions of my clients. Given that I have now provided you with dates for each of my witnesses, I am requesting that you provide me any AEO documents that you plan to use at least fourteen (14) days before the date of said depositions. I also need permission to show such documents to my witnesses prior to their depositions so that they can be adequately prepared. Based upon the impending deposition dates, please advise me as soon as possible regarding this matter.

I still have not received a response to this request, and I look forward to receiving one.

Exhibit 13
Page    107

Michael Zeller, Esq.
October 4, 2007
Page 5


     In conclusion, I am not able to sign the stipulation that you have proposed because it does not accurately set forth all of the extraordinary efforts that I have undertaken to move this process forward, but instead insinuates that I am the one that has been dilatory. In addition, I find it improper and uncalled for that you would ask me to stipulate to an order. I have worked hard to try and obtain all of the responsive documents and to have that project completed prior to the depositions. I have also provided you with dates that I and my witnesses are available. That is all that should be required.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

Exhibit 13
Page _____ 108

**Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.
CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# **EXHIBIT 14**

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

September 27, 2007

<u>VIA FACSIMILE</u>

Susan Wines, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

> Re:   <u>Mattel v. Bryant</u>

Dear Susan:

This letter serves to confirm that the review of the external hard drive from Margaret Leahy will be pursuant to the same procedures set forth in your letter dated September 13, 2007, which I signed and faxed to you today.

Please call me should you have any questions.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

Exhibit 14
Page _____ 109

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.

CV 04-9059 and CV 05-2727

<u>Hon. Stephen G. Larson</u>

# <u>**EXHIBIT 15**</u>

EXHIBIT TO:     DECLARATION OF LARRY MCFARLAND IN SUPPORT OF
ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S,
AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S
<u>EX</u> <u>PARTE</u> APPLICATION TO (1) COMPEL PRODUCTION OF
ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE
CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA
MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE
SCHEDULING ORDER

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

October 26, 2007

<u>VIA FACSIMILE, E-MAIL, AND U.S. MAIL</u>

Michael Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      Re:    <u>Mattel v. Bryant</u>

Dear Michael,

      Pursuant to our agreed upon protocol for inspection of the computer hard drives of Margaret Leahy, Elise Cloonan, and Sarah Halpern, we have reviewed the Bates stamped documents received from Data Chasers, Inc. for privilege.

      Our review did not reveal any documents which should be withheld for privilege. However, due to the manner in which the search terms were applied to each hard drive, many non-responsive documents were pulled by Data Chasers, Inc. For example, it appears as though each hard drive was searched using the particular owner's name, which inadvertently pulled many non-responsive documents containing personal emails that are not relevant to this case. For example, Ms. Cloonan's computer was searched for documents that contained her name. The result is that none of the documents located by the expert on Ms. Cloonan's computer relate in any way to the case.

      Pursuant to the protocol, Data Chasers, Inc. will be providing you with all the documents and data, including the native files. I believe that after your review, you will agree that many of the documents are non-responsive and should be removed from the production accordingly. Please contact me to discuss this matter as soon as you have had a chance to review the documents. Please note though that all of these documents should be classified as **CONFIDENTIAL – ATTORNEYS' EYES ONLY**.

            Very truly yours,

            Larry W. McFarland
            KEATS McFARLAND & WILSON LLP

LWM/ccd
cc: Rick Albee

Exhibit 15
Page _____ 110

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 16**

EXHIBIT TO:     DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

November 21, 2007

<u>VIA FACSIMILE, VIA HAND DELIVERY</u>

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    <u>Mattel v. Bryant</u>

Dear Dylan:

I am writing in response to your letter dated November 15, 2007.

With respect to the document control numbers listed on the first two pages of your letter, I can confirm that this is a complete list of all the documents produced to date by Ms. Leahy, Ms. Marlow, Ms. Cloonan and Ms. Halpern that were assigned document control numbers.[1] [2] The reason that I am making this distinction is that, as you know, Ms. Leahy and Ms. Marlow have produced sculpts and other three-dimensional objects that your firm has photographed and/or videotaped. In order to avoid any confusion, I propose that we make photocopies of each of these produced sculpts and three-dimensional objects and assign each photocopy a bates number. Please let me know if you agree with this proposal. Also, with respect to the photographs taken and the videotapes made by your firm of these sculpts and three-dimensional objects, I previously asked Ms. Wines for copies of these photographs and videotapes. She refused to provide me with copies and told me that it was your firm's position that the photographs and videotapes are work product and that your firm does not intend to use them at any of the depositions or at trial. Please confirm that Ms. Wines' statement is correct and that you will not be using any of these photographs or videotapes at the depositions of any of my clients or at trial.

With respect to your question involving whether the production of documents is complete, I can confirm that Ms. Halpern has produced all responsive documents in her possession, custody and control. With respect to Ms. Marlow, we are delivering to you with this

---

[1] For documents KMW-M 00667 through KMW-M 03040, your notation of the production date as August 29, 2007 does not reflect that an attorney from your office inspected the documents on August 24, 2007.
[2] For documents ACFR000364 through ACFR000390 and SHFR000225 through SHFR000364, your notation of the receipt date as October 29, 2007 does not reflect my letter dated October 26, 2007 to Mr. Zeller and Data Chasers, releasing the documents.

Exhibit 16
Page ___ 111 ___

B. Dylan Procter, Esq.
November 21, 2007
Page 2

letter document control numbers KMW-M 006695 through KMW-M 007643. In addition, we received some three-dimensional objects from Ms. Marlow for your review. Please let me know when someone from your office is available to inspect them. Regarding Ms. Leahy, she has located some additional three-dimensional objects which are available for your review. Please let me know when someone from your office is available to review these items. With respect to Ms. Cloonan, we noticed that your computer expert did not pick up a computer disk with Ms. Cloonan's computer. I suggest that we provide this disk to Data Chasers pursuant to the terms of our agreement as set forth in the letter from Ms. Wines dated September 13, 2007. In addition, in order to speed things up, we will agree to review anything found by Data Chasers within five court days of receipt from Data Chasers rather than the ten court days set forth in Ms. Wine's letter. Please let me know if this is acceptable. With the production of these last remaining items, I believe that the production from Ms. Marlow, Ms. Leahy, Ms. Halpern and Ms. Cloonan is complete.

Regarding the withholding of documents based on privilege grounds, it is our position that the fee agreements between our clients and their attorneys, as well as all correspondence between our clients and their attorneys, are privileged.

Regarding your statements with respect to redactions, your assertion that our clients have improperly redacted documents is incorrect. In addition, you continue to cite the previously redacted pages from Ms. Leahy's day planner, even though, as you know, additional pages from that day planner were produced pursuant to our agreement with Ms. Wines. (See my letter to you dated November 14, 2007.) I am not aware of any order from Judge Infante that precludes third parties from redacting irrelevant information. If there are any such orders, please provide copies to me. In addition, as I have previously stated, it is our position that any discovery disputes with our third party clients will be heard by Magistrate Judge Block. However, in an effort to try to avoid unnecessary motion practice, we are re-reviewing all of the documents that were redacted, and if there are any errors, we will provide corrected documents to you.

With respect to your request regarding whether Ms. Leahy, Ms. Marlow, Ms. Halpern or Ms. Cloonan have fee agreements with MGA, written or otherwise, without admitting that any such documents exist, it is our position that the request seeks the production of privileged information. Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure. California statutory authority provides that "[a] written fee contract shall be deemed to be a confidential communication within the meaning of [Cal. Bus. & Prof. Code § 6068(e)] and of [Cal. Evid. Code § 952]." Section 6068(e)(1) affirms that "[i]t is the duty of an attorney to ... maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Therefore, the requested fee agreements are confidential communications protected under the attorney-client privilege. If you have any authority to the contrary, please let me know. Finally, in response to your assertions in the November 15, 2007 letter, I am not aware of Judge Infante ruling on this issue with respect to any third party. If I am mistaken, please inform me of any such ruling.

Exhibit 16
Page _____

B. Dylan Procter, Esq.
November 21, 2007
Page 3


Regarding bank accounts used by Ms. Marlow in connection with her work with MGA, as I stated in my letters to Ms. Wines dated July 23, 2007 and September 21, 2007, we have not received any documents from Wells Fargo in response to your subpoena. In addition, we have not yet received any documents from Bank of America. As soon as we receive these documents, we will comply with the review procedure as set forth in the letter from Ms. Wines dated September 13, 2007, and the letter from you dated November 2, 2007. Finally, with respect to your question whether Ms. Marlow has used any additional bank accounts in connection with her work for MGA, I will provide you this information on the condition that you agree to comply with the protocol set forth in the letter from Ms. Wines dated September 13, 2007, and the letter from you dated November 2, 2007. Please let me know if you agree to this protocol.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP


LWM/jlt

cc:  Thomas J. Nolan
     Michael Page

Enclosures (KMW-M 006695 through KMW-M 007643)

Exhibit 16
Page ___ 113

**Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.

CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# **EXHIBIT 17**

EXHIBIT TO:      DECLARATION OF LARRY MCFARLAND IN SUPPORT OF
ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S,
AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S
EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF
ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE
CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA
MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE
SCHEDULING ORDER

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017   TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

November 28, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:   <u>Mattel, Inc. v. Bryant</u>

Dear Larry:

I write in response to your letter of November 21, 2007.

First, your proposal to make photocopies of the three dimensional objects your clients have made available for inspection and to produce those photocopies with Bates numbers is acceptable. Please provide these photocopies once they have been made. You are correct in your assertion that the photographs and videotapes we have taken of these objects are protected work product in our view. However, you are incorrect in asserting that Mattel has agreed not to use these photographs or videotapes at trial. Mattel did not agree to use that in the past, and is not willing to so agree now. We are not presently in a position, or required, to disclose our trial exhibits. Nor do we understand why your clients, all third parties, would have any legitimate interest in delimiting Mattel's trial exhibit list.

Second, regarding the three-dimensional objects you received from Ms. Marlow and Ms. Leahy, we will send someone from our office to review them this Friday, November 30 at 9:30 a.m. Please let us know if this date and time does not work for you for any reason, and we will re-schedule.

**quinn emanuel urquhart oliver & hedges, llp**

07209/2302513.1

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Exhibit 17
Page _____ 114

Third, regarding Ms. Cloonan's computer disk or drive, we would ask that you please provide the drive to Data Chasers as you suggest. We will agree to follow the protocol outlined in our September 13, 2007 letter, with the understanding set forth in your letter that you will review anything found by Data Chasers within 5 court days of receipt and provide the same to us. We expect you will proceed with appropriate expedition to ensure that Ms. Cloonan's documents are produced to Mattel sufficiently in advance of her deposition to enable Mattel to examine her on them as needed.

Fourth, as we stated in our letters of June 25, 2007 and November 15, 2007, Judge Infante has already found fee agreements to be relevant to bias and credibility, and non-privileged. See Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4. Copies of these orders are attached for your reference. As the Court has held, the Business and Professions Code's privilege provisions do not apply in this federal question case, which is governed by federal privilege law. Nevertheless, we understand from your letter that your clients have withheld fee agreements without listing them on any privilege log. We hereby ask once again that they be produced. Please let us know if you are willing to do so. If not, we will plan to address the issue to the Court.

Fifth, and again as we stated in our letter of November 15, 2007, we believe we are entitled to unredacted copies of all documents that have been produced by your clients. You do not assert that the redactions to your clients' documents were made on the basis of privilege, and redactions on any other basis are improper. In fact, in Orders dated January 25, 2007 and May 15, 2007, Judge Infante expressly held that redactions on grounds other than privilege are improper given the protective order in place in this case, which fully addresses any perceived confidentiality or privacy concerns. See Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 14; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 11, n. 4. Copies of these orders are attached for your reference. We hereby request again that you produce your clients' documents in unredacted form. Please let us know if you are willing to do so. If not, we will plan to address the issue to the Court. Please understand, however, that if Mattel is not able to examine your clients on redacted or other withheld information because you have withheld it at the time of their depositions, Mattel reserves its right to question your clients on such information in the future at a renewed deposition, once Mattel obtains access to the withheld information.

Last, please provide the information regarding additional bank accounts used by Ms. Marlow in connection with her work at MGA. We will agree to abide by the protocol outlined in the September 13, 2007 and November 2, 2007 letters regarding documents that are obtained from additional accounts.

Exhibit 17

Page ___115___

In our letter of November 15, 2007, we requested a meet and confer on a contemplated motion to compel and for sanctions. If you wish to discuss these matters, please let me know when you are available to meet and confer this week. I look forward to hearing from you.

Very truly yours,

B. Dylan Proctor

Enclosures

Exhibit 17
Page ___116___

# Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 18**

EXHIBIT TO:    DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

## Larry W. McFarland

| | |
|---|---|
| **From:** | Matt Albee [matt@datachasers.com] |
| **Sent:** | Friday, November 30, 2007 11:15 AM |
| **To:** | Larry W. McFarland |
| **Cc:** | 'Rick Albee' |
| **Subject:** | Mattel v. Bryant - Item 5 Search Hit |

**Attachments:** Item 5 search hit.pdf

Per our phone conversation, I have attached the text associated with the one search hit from the media described as "Item 5 – Zip Disk."

If you should have any questions, please don't hesitate to contact me on my cell phone – 951-534-6294.

Thanks,
Matt

---

Matthew Albee, CFCE EnCE SCERS          |     DataChasers, Inc.
Senior Examiner/Project Manager          |     www.DataChasers.com
matt@datachasers.com     Office: 951.780.7892          Toll Free: 877.DataExam

NOTE: This communication is privileged & confidential to the intended recipient.
DataChasers (R) is a registered trademark of DataChasers, Inc. CDCA Lic. PI-20551

---

Exhibit 18
Page ___ 117

# Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# FILED UNDER SEAL

# EXHIBIT 19

EXHIBIT TO:     DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

**Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.

CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# FILED UNDER SEAL

## EXHIBIT 20

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER