1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Carter Bryant v. Mattel Inc.
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 21**

EXHIBIT TO:    DECLARATION OF LARRY MCFARLAND IN SUPPORT OF
ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S,
AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S
EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF
ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE
CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA
MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE
SCHEDULING ORDER

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750
WRITER'S EMAIL
lmcfarland@kmwlaw.com

December 17, 2007

<u>VIA FACSIMILE</u>
<u>AND U.S. MAIL</u>

Rick Albee
DataChasers, Inc.
PO Box 2861
Riverside, CA 92516-2861

FAX (951) 780-9199

Re:   <u>Mattel v. Bryant</u>

Dear Rick,

I am writing to confirm that the forensic review of the computer belonging to Ms. Halpern, the computer and zip disk belonging to Ms. Cloonan, and the two hard disk drives belonging to Ms. Leahy (my client's "Property") is complete pursuant to the agreed upon protocol as set forth and agreed to in the letter from Ms. Wines dated September 13, 2007, a copy of which was previously provided to you.

This letter also confirms our telephone conversation this evening and serves to put you on written notice that you are not authorized to conduct any further examination of my clients' Property or to access, analyze or review my clients' Property in any manner.

Please contact me immediately to confirm your receipt of this letter.

Very truly yours,

Larry W. McFarland
KEATS McFARLAND & WILSON LLP

LWM/ccd
cc:  Dylan Proctor
     Chris Tayback

Exhibit 21
Page ___ 135

**Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.

CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# **EXHIBIT 22**

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF
ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S,
AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S
<u>EX</u> <u>PARTE</u> APPLICATION TO (1) COMPEL PRODUCTION OF
ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE
CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA
MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE
SCHEDULING ORDER

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750
WRITER'S EMAIL

lmcfarland@kmwlaw.com

December 18, 2007

<u>VIA FACSIMILE</u>
<u>AND U.S. MAIL</u>

Rick Albee
DataChasers, Inc.
PO Box 2861
Riverside, CA 92516-2861

FAX (951) 780-9199

    Re:   <u>Mattel v. Bryant</u>

Dear Rick,

    I am following up with my letter yesterday regarding the zip disk belonging to Ms. Cloonan. I have conferred with Mr. Tayback and request that you make a color photocopy of the front and the back of the zip disk and email the photocopies to me, with a copy to Mr. Tayback, so that I can put Bates numbers on the two pages.

    Beyond this request, my instructions in my letter of December 17, 2007 remain the same. You are not authorized to conduct any further examination of the computer belonging to Ms. Halpern, the computer and zip disk belonging to Ms. Cloonan, and the two hard disk drives belonging to Ms. Leahy (my client's "Property"), or to access, analyze or review my clients' Property in any manner, other than to take the color photocopies as instructed in this letter.

    Please contact me immediately to confirm your receipt of this letter.

          Very truly yours,

          Larry W. McFarland
          KEATS McFARLAND & WILSON LLP

LWM/ccd
cc: Dylan Proctor
    Chris Tayback

Exhibit 22
Page ____136

# Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 23**

EXHIBIT TO:    DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
**dylanproctor@quinnemanuel.com**

January 2, 2008

**VIA FACSIMILE AND U.S. MAIL**

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:    Mattel v. Bryant

Dear Larry:

I write regarding Veronica Marlow's obligation to make her computer hard drives available for inspection by Mattel.

You previously represented to Mattel that Ms. Marlow does not have any hard drives which she used for work relating to Bratz. However, at her deposition Ms. Marlow testified that she has at least four computers at home, and that she used at least two of these computers for work-related e-mails and at least one of these computers to generate Bratz-related invoices for the year 2000.

Ms. Marlow had an obligation to make these computers available for inspection pursuant to the subpoena that Mattel served on her nearly three years ago. Nonetheless, Mattel did not learn of these computers until last Friday -- just one month before the close of discovery in this case. Ms. Marlow's hard drives should be immediately provided to Mattel for imaging and analysis.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Exhibit 23
Page ___137___

Please let me know if you agree to the above.  In the event you do not, please consider this letter to be a request to meet and confer.  If we are unable to reach agreement with you on this matter, we anticipate seeking an order from the Court allowing Mattel to take forensic images of Ms. Marlow's drives.  Mattel also may seek sanctions, including based upon your prior representation that Ms. Marlow does not have any relevant hard drives.

Very truly yours,

B. Dylan Proctor

2

Exhibit 23
Page ___138___

1

**Carter Bryant v. Mattel Inc.**

2
Case No.: CV 04 – 09049 SGL (RNBx)

3
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727

4
Hon. Stephen G. Larson

5

6

7
# EXHIBIT 24

8

9
EXHIBIT TO:    DECLARATION OF LARRY MCFARLAND IN SUPPORT OF
ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S,

10
AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S
EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF

11
ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE
CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA

12
MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE

13
SCHEDULING ORDER

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

January 16, 2008

VIA FACSIMILE and E-MAIL

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:     Mattel v. Bryant

Dear Dylan:

I am writing with regard to several outstanding issues discussed during our meetings of counsel held on January 9 and January 11, 2008, and with respect to the correspondence noted below.

**Lucy Arant**

Responding to your letter dated January 10, 2008, in which you asked me to confirm that Ms. Arant is not withholding any non-logged documents, as we discussed during our meeting of counsel on January 9, 2007, I provided you with amended responses and objections to Mattel's document request that day. I also provided you with an amended privilege log.

With regard to documents responsive to Request No. 28 of Mattel's subpoena for the production of documents, I can confirm that our position is set out in the response to the same in Arant's amended objections and responses dated January 8, 2008. I reiterate that the filed intent-to-use trademark applications and any related statements of use fully satisfy Mattel's request that Arant produce:

DOCUMENTS sufficient to show each instance in which YOU have filed or caused to be filed an intent-to-use application for a name, mark, designation or source identifier, or any contemplated, proposed, considered, putative or formative name, mark, designation or

Exhibit 24
Page ____139

B. Dylan Procter, Esq.
January 16, 2008
Page 2

source identifier, that had been used or was in use prior to the time such application was
filed or caused to be filed.

In addition, these documents are as readily available to Mattel as they are to Arant, including
without limitation by accessing the public records hosted on the Trademark Office web site at
www.uspto.gov. Moreover, as you know, Ms. Arant filed a revised declaration which did not
contain the statement regarding filing intent-to-use applications which you refer to in your
Request No. 28.

Additionally, we do not believe that any privileged documents have been withheld, other
than as set forth on the privilege log. However, we are reviewing the documents again to confirm
that everything is included in the privilege log. If we locate any additional relevant documents
that are being withheld for privilege, we will provide you with an amended privilege log by
Friday, January 18, 2008.

**<u>Photographs and Videos Used During Depositions</u>**

I write in response to your last letter of January 11, 2008. As I set forth fully in my letter
of December 18, 2008, you have waived the work product protection with respect to the
photographs and videotapes of the three-dimensional objects which we produced for inspection,
by using some of these photographs at Ms. Leahy's deposition. In furtherance of my follow-up
letters of January 2, 2008, and January 11, 2008, I again request that these documents be
produced in their entirety. It is clear under the relevant authority that your use of the photographs
during a deposition has resulted in a waiver of the work product protection which you have
claimed in those items. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 512-13 (S.D. Cal.
2003). In my letter of January 11, 2008, I presented further legal authority in support of my
position. You have failed to provide any relevant legal authority contrary to this position.
Indeed, the citations in your January 11, 2008, letter do not support your conclusion that the
photographs constitute opinion work product rather than factual work product, but instead simply
reiterate the general rule that opinion work product is treated differently than fact work product
with respect to waiver. This may be true, but it is not relevant here because the photos and video
do not constitute opinion work product. *See Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4
(8th Cir. 1998) ("Ordinary work product includes such items as photographs and raw
information.").

However, I see that you have agreed in your letter dated January 11, 2008, to provide us
copies of all of the photographs and videos taken of the three-dimensional items if I agree to do
the same. I would point your attention to my letter of December 18, 2007, in which I clearly
stated that we had provided you with copies of all of our photos on December 11, 2007. I also
reminded you of this during our telephonic meeting of counsel on January 9, 2008.

Exhibit 24
Page _____ 140

B. Dylan Procter, Esq.
January 16, 2008
Page 3

Unfortunately, you have made MGA's agreement a condition of Mattel's agreement to produce these photographs and videotapes. That is an issue that you need to raise with MGA's attorneys. I request that you reconsider your position and agree to provide us with all of the photographs and videos that you have taken of the three-dimensional objects produced by my clients and remind you again that my clients have already done the same.

### Computers

With regard to your request that I agree to a new protocol as set forth in Mr. Tayback's email dated January 9, 2008, for the review of the computers, hard disk drives, and zip disk (the "Computers") belonging to Ms. Leahy and Ms. Cloonan, as you know, these Computers have already been reviewed pursuant to the protocol that your partner, Susan Wines, and I agreed to several months ago. Moreover, all of the documents located by the expert's search pursuant to the agreed to protocol have already been produced and both Ms. Leahy and Ms. Cloonan have already been deposed. We are, therefore, not willing at this late date to agree to a new protocol.

As you know, Ms. Wines and I spent a considerable amount of time meeting and conferring with respect to a protocol for the review of the Computers. The result of these discussions was the protocol set forth in Ms. Wines' letter dated September 13, 2007. Both Mattel and I agreed to be bound by this protocol. In addition, as I have repeatedly stated, one of the most important issues for me was that this protocol be agreed to and all documents located pursuant to the protocol be produced prior to the depositions of my witnesses. As you know, this was accomplished. Now that the depositions of Ms. Leahy and Ms. Cloonan have been taken, you are attempting to re-review the Computers pursuant to a new protocol. This is not acceptable and you have presented no basis to justify your attempt to change the protocol. In the email dated January 9, 2008, from Mr. Tayback, he stated that "the testimony of the witnesses makes clear that there are graphical (and perhaps other) files on the Cloonan and Leahy hard drives that are relevant, responsive, non-privileged documents but which were either not produced by you or not identified by the prior search protocol." However, the fact that there could be graphical files on the Computers is not new information. As you know, Mr. Bryant testified during his deposition that he and/or Ms. Cloonan may have utilized the computer belonging to Ms. Cloonan to create graphics for Bratz. Unfortunately, it appears as though this effort to alter the protocol previously agreed upon is simply part of a larger strategy to never commit to an agreement and/or conclude a deposition.

With regard to the computers belonging to Ms. Marlow, as I stated during our conference on January 9, 2008, in response to the subpoena, we produced all relevant and responsive documents in Ms. Marlow's possession, custody or control, which included emails residing on her computers. Accordingly, Ms. Marlow has fully complied with her discovery obligations. It is both unreasonable and beyond the scope of Mattel's discovery rights to require Ms. Marlow to

Exhibit 24
Page ___ 141

B. Dylan Procter, Esq.
January 16, 2008
Page 4

produce her actual computer hard drives to Mattel. Ms. Marlow has fully complied with her
discovery obligations by searching her hard drives and producing all relevant documents in
response to Mattel's requests. As you know, when a party is obligated to produce electronically-
stored documents in response to discovery requests, it is the responding party's obligation to
conduct the search and review its own documents. *See Peskoff v. Faber*, 240 F.R.D. 26, 31
(D.D.C. 2007) ("[T]he producing party has the obligation to search available electronic systems
for the information demanded."), *quoting McPeek v. Ashcroft*, 202 F.R.D. 31, 32 (D.D.C. 2001)).
The mere fact that a requesting party is skeptical that a responding party has produced copies of
all relevant and non-privileged documents does not warrant compelling production of the
responding party's computer hard drives. *McCurdy Group, LLC v. Am. Biomedical Group, Inc.*, 9
Fed. Appx. 822, 831 (10th Cir. 2001). *See also Ameriwood Indus., Inc. v. Liberman*, No. 4-
06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006) ("[A] party may not inspect
the physical hard drives of a computer merely because the party wants to search for additional
documents responsive to the party's document requests."). Ms. Marlow is not required to go
above and beyond the requirements placed on a party and produce her computer hard drives to
Mattel.

        Finally, your claim that you just now learned during her deposition that Ms. Marlow
occasionally used computers is inaccurate. You have known for quite some time that Ms.
Marlow sent and received email because we produced such relevant emails well prior to her
deposition and I believe that MGA has also produced emails which were sent to Ms. Marlow.
With respect to your allegation that I had "previously represented to Mattel that Ms. Marlow does
not have any hard drives which she used for work relating to Bratz," I am unaware of making any
such representation. Because you insist that I have, please advise as to when and where I made
the alleged representation.

        **Bank Records**

        I write further in response to your latest letter on this subject dated January 11, 2008.
With regard to the Wells Fargo documents belonging to Ms. Marlow that were produced directly
to you in violation of our agreed upon protocol, you stated in your letter dated January 10, 2008,
that you would consider my request that you purge yourself of those documents and return them
to me so that they may be reviewed pursuant to the protocol. In your letter of January 11, 2008,
you proposed supplementing the review protocol for all bank records produced and to be
produced by adding documents referring to the following:

        (1)     Isabel Ana Cabrera

        (2)     Beatriz Morales

        (3)     Maria Elena Salazar

        (4)     Payments made to, or work or services performed by, any other Mattel employee

Exhibit 24
Page _____ 148

B. Dylan Procter, Esq.
January 16, 2008
Page 5

(5)     Payments made by, or any services performed for, any competitors of Mattel,
        including any company involved in the sale of dolls or toys, while your clients
        were employed at Mattel

(6)     The dates on which any entities with which your clients are affiliated were
        established, including but not limited to payments to the Franchise Tax Board or
        other tax entities.

With regard to items (1), (2), (3), and (6), I agree to amend the protocol for review of the
bank records. However, item (4) is too vague and should be qualified to read "while such person
was an employee of Mattel." Item (5) is also too vague and should be amended to read that
competitors of Mattel are defined as any company involved in the sale of dolls or toys, not
simply "including any company involved in the sale of dolls or toys," as you have drafted it. If
you are amenable to these changes, please advise us accordingly.

**Retainer Letters**

With regard to your request that I produce any retainer letters signed by my clients, you
have taken the position that various orders entered by Judge Infante with respect to Mr. Bryant
are controlling as to my non-party clients. As you know, I was not involved with the motions
ruled on by Judge Infante, but your firm obviously was. As I pointed out in my letter dated
December 18, 2007:

> Regarding the fee agreements, I am at a loss to understand how you can contend that
> "Mattel's objections to other subpoenas and Mattel's responses to other parties' requests
> for production are irrelevant here." The point is simple. Mattel is taking the position
> with respect to my clients that Judge Infante's orders require the production of retainer
> letters, while at the same time, Mattel has continued to object to the production of retainer
> letters after the entry of Judge Infante's order. Your silence with respect to my request in
> my December 3, 2007 letter, that "[i]f you have produced the retainer letter for Mr. Liden
> or any third party, please provide me with a copy of that document," says everything. You
> have not provided me with any such retainer letters and, therefore, I can only assume that
> you have continued to refuse to produce them.

As I told you during our meet and confer on Friday, January 11, 2008, if Mattel agrees that the
orders entered by Judge Infante require Mattel to produce all retainer letters relating to non-
parties and if in fact Mattel produces such retainer letters, I will also agree to produce the retainer
letters for my third party clients. With respect to your statement during our call on January 11,
2008, that the two situations were like "apples and oranges," I request that you reconsider your

Exhibit 24
Page _____ 143

B. Dylan Procter, Esq.
January 16, 2008
Page 6

position. The issue is simple – what is Mattel's interpretation of Judge Infante's order with respect to retainer letters for non-parties.

As far as whether I will be providing a privilege log as you propose in your letter of January 10, 2008, I reiterate my previous statement that the purpose of a privilege log is to make the receiving party aware of any documents that the producing party is withholding based upon privilege. Rule 26 lays out the purpose of providing a privilege log as being to "expressly make the claim" of privilege and to "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." F.R.C.P. 26(b)(5). In this case, the purpose of the privilege log has been fully satisfied – I have told you that I am not producing the retainer letters between my clients and their attorneys. (Nor am I producing the correspondence between my clients and their attorneys.) You are aware of the claim of privilege and what is not being produced. I can also confirm that these retainer letters were not copied or addressed to other parties or third parties.

### Additional Deposition Dates

With respect to your request that my clients be made available for additional deposition dates, as I have repeatedly stated, this request is unreasonable. I have made my clients available for the full seven hours (and beyond in some instances) as required by the federal rules and believe that demanding additional time of these non-party witnesses is not warranted. In particular, I write in response to the issues raised in the letter from Mr. Zeller dated January 4, 2008, and his mischaracterization of why he believes he did not have enough time to question Ms. Marlow. As a preliminary matter, with regard to Mr. Zeller's belief that he did not have time to question Ms. Marlow regarding other Mattel employees she has worked with, documents identifying the other Mattel employees Ms. Marlow worked with were produced well prior to the deposition and Mr. Zeller had plenty of time to review these documents prior to the deposition and did in fact question her extensively about these individuals during the deposition.

In addition, the assertions by Mr. Zeller in the third and fourth paragraphs of his letter that Mattel lacked sufficient time to depose Ms. Marlow regarding Mr. Bryant's drawings and the Prayer Angels project are simply untrue. All of these topics were covered in great detail during the deposition.  With regard to the several pages of additional documents produced on the day before the deposition, I have difficulty understanding how those might have adversely affected Mr. Zeller's ability to question Ms. Marlow regarding them. Mr. Zeller stated at the deposition that all these documents except one had been previously produced by MGA or Bryant. With respect to the one new document, Mr. Zeller had seven hours to question Ms. Marlow regarding this document, but he chose not to do so.

Exhibit 24
Page _____ 144

B. Dylan Procter, Esq.
January 16, 2008
Page 7

Finally, with regard to the specific instructions Mr. Zeller has taken issue with, he claims that at Marlow Depo. Tr 174:4 – 177:3, my objections were "suggestive" and "obstructionist." I reject this assertion, and believe that my objections and those of counsel for Bryant and MGA were well within the federal rules. Furthermore, I will point out again that his line of questioning was an attempt to put words in Ms. Marlow's mouth to support your purported legal conclusion that the drawings at issue were "substantially similar" to the final Bratz product, when in fact Ms. Marlow repeatedly disagreed with your conclusion, stating that:

> Q:     Are they – are they more different or are they more similar?
>
> A:     They're more different.

Not satisfied with Ms. Marlow's answer, Mr. Zeller repeatedly asked the same question over and over in different formats in a failed attempt to get Ms. Marlow to answer the question to his pleasing. If Mr. Zeller had instead asked direct questions and not wasted time forcing Ms. Marlow to repeat herself multiple times, he would have had more than enough time available to him to ask all of the questions that he believes he needed to.

Mr. Zeller also complains about Ms. Marlow's testimony at 87:8 – 13, as follows:

> Q:     Did you have some legal questions in your mind at that time prior to the time that you talked to Mr. Contopolous?

This question was part of an improper line of questioning regarding Ms. Marlow's communications with her attorney, Mr. Contopolous. Prior to this question, Ms. Marlow had testified that she was seeking legal representation from Mr. Contopolous regarding this litigation. See *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir.1996) ("A client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs.").

In addition, Ms. Marlow fully answered Mr. Zeller's questions with respect to what questions were in her mind prior to the time that she spoke to Mr. Contopolous as follows:

> Mr. McFarland:     Why don't we read it back.
>
> (The record was read by the court reporter as follows:
>
> "Q:     Did you have some questions in your mind at that time prior to the time that you talked to Mr. Contopolous?")

Exhibit 24
Page ____ 145

B. Dylan Procter, Esq.
January 16, 2008
Page 8

Mr. McFarland:          Objection, she's asked and answered your questions or mine regarding this litigation.  She talked to Mr. Contopolous.

By Mr. Zeller:

Q:      You can go ahead and answer.

A:      I don't have anything to say about that.

Q:      You're refusing to answer the question?

Mr. McFarland:          No, she's already answered your question.

By Mr. Zeller:

Q:      What was it specifically about – tell me everything it was about the litigation between Carter Bryant and Mattel that you had on your mind prior to the time that you spoke with Mr. Contopolous?

Mr. McFarland:          She's asked and answered the question.

Did you have anything else in your mind other than what you've said?

The Witness:            No.

By Mr. Zeller:

Q:      So it was just that there was litigation and nothing else?

A:      Yes.

Q:      There was nothing in particular?

Mr. McFarland:          She's --

The Witness:  No.

Mr. McFarland:          -- answered the question.  You have answered the question.

The Witness:  I answered the question.

By Mr. Zeller:

Q:      There was nothing in particular; right?

A:      Right.


## Marital Privilege Instructions

With respect to the marital privilege issue, I am both surprised and confused by your continued attempts to limit the marital privilege to criminal cases.  As explained in my January 2, 2008, letter to you:

Federal common law recognizes two distinct forms of marital privilege.  The first is the privilege against adverse spousal testimony, which invests in the testifying witness the

Exhibit 24
Page _____ 146

B. Dylan Procter, Esq.
January 16, 2008
Page 9

privilege of not being compelled to testify against one's spouse. <u>Trammel v. United States</u>, 445 U.S. 40 (1980). The second is the confidential marital communications privilege, which provides that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged," and which may be asserted by either spouse to bar the testimony of the other regarding marital communications made in confidence. <u>Wolfe v. United States</u>, 291 U.S. 7, 14 (1934)....

As I further provided, courts have held that the confidential marital communications privilege "may be asserted by either spouse in both civil and criminal proceedings, while the testimonial privilege ... is recognized only in criminal proceedings." <u>281 Syosset Woodbury</u>, 862 F. Supp. 847, 852 (E.D.N.Y. 1994); <u>see also</u> <u>Englemann v. Nat'l Broad. Co., Inc.</u>, No. 94 Civ, 5616(MBM)(AJP), 1995 WL 214500, at *2 *(S.D.N.Y. Apr. 10, 1995) ("The second of the two federal marital privileges, the spousal confidential communications privilege ... applies in both criminal and civil cases.").

Nevertheless, you continue to allege that I "have not offered any authority supporting the proposition that the marital privilege applies in civil cases." To the contrary, I believe that is exactly what I did and that it is you that have failed to offer any authority supporting the proposition that confidential marital communications, the one form of the privilege that is relevant here, applies only in criminal cases. Instead, you merely re-assert your claim that marital privilege does not apply here and cite cases which address only the first form of marital privilege, the privilege against adverse spousal testimony. Specifically, your most recent reference to <u>Ryan v. Commissioner of Internal Revenue</u>, 568 F.2d 531, 542 (7th Cir. 1977) demonstrates my point exactly. In your January 11, 2008, letter, you cite <u>Ryan</u> to argue that marital privilege is "only applicable in criminal cases." However, like <u>281 Syosset Woodbury</u>, <u>Ryan</u> actually supports my position that only the privilege against adverse spousal testimony is limited to criminal cases. In <u>Ryan</u>, the Seventh Circuit affirmed the Tax Court's rejection of "the Ryans' claim of marital privilege because the privilege against *adverse spousal testimony* is only applicable in criminal proceedings." <u>Id</u>. at 537(emphasis added), 542 ("The Tax Court held that the privilege against *adverse spousal testimony* was only available in criminal cases and therefore was not applicable in civil tax proceedings.") (emphasis added).

Moreover, your claim that the three Supreme Court and Ninth Circuit cases cited in my January 2, 2008, letter "each addressed marital privilege within the context of criminal matters, not civil litigation," is misleading. Indeed, while these cases involved criminal proceedings, two of the three addressed the privilege against adverse spousal testimony. Although the third, <u>Wolfe v. United States</u>, 291 U.S. 7, 14 (1934), addressed the confidential marital communications privilege, the Court actually acknowledged that the two forms of marital privilege are in fact distinct. <u>Id</u>. ("Hence it is that the privilege with respect to communications extends to the testimony of husband or wife even though the different privilege, excluding the testimony of one against the other, is not involved."). Thus, you have once again failed to show that the confidential marital communications privilege is limited to criminal cases.

Exhibit 24
Page ___ 147

B. Dylan Procter, Esq.
January 16, 2008
Page 10


        My responses to the testimony set forth in your letter of January 11, 2008, are set forth
below:

Ms. Cloonan's testimony at 38:6-17:

        Q:      Other than Mr. McFarland here, have you discussed the lawsuit with anybody?
        A.:     Not much more than to tell people that I was involved in it; my father, my
                stepmother, my family, my husband.


This question was answered by Ms. Cloonan, regardless of any instruction.


Ms. Cloonan's testimony at 06:23 – 108:9; see 108:2:


        Q:      What did you and he discuss on that subject?
        A:      I don't recall.


This question was also answered by Ms. Cloonan, regardless of any instruction.

Ms. Cloonan's testimony at 108:11 – 14:


        Q:      Have you discussed this lawsuit with your husband?
        A:      I'm not going to answer that.
        Q:      You can't tell me one way or the other?
        A:      Do I have to?  If I have to, I will.

        Mr. McFarland: Well, first of all, it's asked and answered.  She's already told you she
                mentioned to her husband and other people.


As I stated on the record, I reiterate that this question was answered previously in the deposition
as set forth above, regardless of any instruction.


Ms. Cloonan's testimony at 109: 1 – 8; see 109:15 – 18:


        Q:      Prior to Christmas of last year, did you discuss this lawsuit with your husband, Mr.
                Sandham, your current husband?


Exhibit 24
Page ___148___

B. Dylan Procter, Esq.
January 16, 2008
Page 11

      A:    I don't know.

Even assuming that the confidential marriage communications privilege does not apply to domestic partners who subsequently marry, you have failed to meet your burden to establish that this conversation occurred prior to marriage and that it, therefore, may not be protected by the marriage privilege. "When encountering a privilege objection at deposition, examining counsel should insist on making a record that will permit meaningful judicial evaluation of the privilege claim." 7 *Moore's Federal Practice* § 30.43[2] (Matthew Bender 3d ed.). Ms. Cloonan answered that she did not know whether this conversation occurred before or after she was married to her husband. It was Mr. Zeller's responsibility to make the showing that the instruction was improper, and he failed to do so.

**Attorney-Client Privilege Instructions**

In your letter dated January 11, 2008, you also claim that Ms. Cloonan was improperly instructed regarding facts disclosed during her conversations with counsel. I am unaware of any ruling by Judge Infante so limiting the attorney client communication privilege. Please provide me with the order you are referring to.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/ccd

cc:  Thomas J. Nolan
      Michael Page

Exhibit 24
Page   149

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 25**

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

## Larry W. McFarland

**From:** Christopher Tayback [christayback@quinnemanuel.com]
**Sent:** Wednesday, January 09, 2008 6:13 PM
**To:** Larry W. McFarland
**Cc:** Dylan Proctor
**Subject:** Mattel v. MGA, et al.

Dear Larry--

This confirms our telephonic meet and confer a few moments ago on several outstanding issues. I also provide below the additional names which we believe should be included in a further "key word" search of directories, sub-directories, file names and text files for any computer hard drives searched by that method, including those which belonged to Cloonan, Leahy and Marlowe.

First, we requested that the zip disk labelled "Bratz" in Ms. Cloonan's possession be provided to us to inspect. We believe her testimony establishes that she has no privacy interest in the contents of that disk and, given the label, it clearly contains relevant evidence that we have not been provided.

Second, the testimony of the witnesses makes clear that there are graphical (and perhaps other) files on the Cloonan and Leahy hard drives that are relevant, responsive, non-privileged documents but which were either not produced by you or not identified by the prior search protocol. Accordingly, we request that you provide us with print outs listing the directories, sub-directories and file names for our review. Further, we request that you search all graphical files on those hard drives and produce to us any responsive, non-privileged documents that you find through that search. Finally, we ask that you run a further text search on those hard drives based on combinations, permutations and abbreviations of the following additional names identified in recent discovery, including Pedro Salazar, Maria Salazar, Ana Isabela Cabrera, and Beatriz Morales.

Third, for the reasons set forth in Mr. Proctor's letter to you dated January 2, we request that you produce to us for inspection Ms. Marlowe's hard drive or an image thereof for inspection as we now understand that such hard drive has never been inspected by an independent expert.

I understood that you would review these matters with your client and respond promptly so that we may agree upon a briefing schedule if we cannot reach agreement on these matters.

Regards,

Christopher Tayback

Exhibit 25
Page ___ 150

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 26**

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF
ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S,
AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S
EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF
ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE
CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA
MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE
SCHEDULING ORDER

## Larry W. McFarland

**From:** Christopher Tayback [christayback@quinnemanuel.com]
**Sent:** Thursday, January 17, 2008 10:11 PM
**To:** Larry W. McFarland
**Cc:** Dylan Proctor
**Subject:** Cloonan, Leahy and Marlow computer hard drive images and the "zip disk"

Larry--

Dylan informed me that you rejected all of my requests at our meet and confer. This is to advise you that we will be filing an ex parte application next week to compel the production of the imaged hard drives mentioned above and the zip disk, as we previously discussed, or in the alternative to modify the scheduling order to allow sufficient time for expert examination of such items and disclosure of an expert report in the event the Court requires us to proceed by noticed motion. Please advise if you intend to oppose such an application.

Regards,

Chris Tayback

Exhibit 26
Page ___151___

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson


# **EXHIBIT 27**


EXHIBIT TO:    DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

# KEATS McFARLAND & WILSON LLP

### ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

WRITER'S DIRECT DIAL
(310) 777-3750

WRITER'S EMAIL
lmcfarland@kmwlaw.com

www.kmwlaw.com

January 18, 2008

VIA FACSIMILE, U.S. MAIL and E-MAIL

Christopher Tayback, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

      Re:    Mattel v. Bryant

Dear Chris,

      This responds to your e-mail dated January 17, 2008, in which you state your intent to file an *ex parte* application seeking an order to compel the production of the imaged hard drives taken from my clients' computers and the "zip disk" on which the data is stored, or in the alternative, modification of the scheduling order to allow sufficient time for expert examination. We oppose this motion on the merits, and in addition, on the grounds that it is improper to bring this motion on an *ex parte* basis.

      With respect to the merits, I reiterate my position, most recently set forth in my January 16, 2008, letter to Dylan Proctor, that the computers and zip disk have already been reviewed pursuant to the protocol that your partner, Susan Wines, and I agreed to in September of last year. As you know, all relevant documents obtained via the search protocol were produced to Mattel by December 4, 2007, which was well in advance of the depositions of my clients Ms. Leahy and Ms. Cloonan. Also, your contention that "the testimony of the witnesses makes clear that there are graphical (and perhaps other) files on the Cloonan and Leahy hard drives that are relevant, responsive, non-privileged documents but which were either not produced by you or not identified by the prior search protocol," does not justify the additional review of the computers and zip disk pursuant to a new protocol. As you know, the fact that there could be graphical files on my clients' computers is not new information. Without limitation, Mr. Bryant testified during his deposition that he and/or Ms. Cloonan may have utilized the computer belonging to Ms. Cloonan to create graphics for Bratz. Therefore, Mattel has known of the possible existence of these files and documents since 2004. That Mattel has waited until now to raise these issues is no one's fault but its own.

      In addition, as you are well aware by now, it is improper for you to bring this motion on an *ex parte* basis. As you know, "[e]x parte motions are rarely justified," *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995), and, as the Court's Standing

Exhibit 27
Page _____ 152

Christopher Tayback, Esq.
January 18, 2008
Page 2

Order makes clear, "are solely for extraordinary relief." Standing Order at 5, *citing Mission Power*, 883 F. Supp. at 488. Moreover, because of the urgency that attends *ex parte* applications, courts hold such requests and those who file them to a greater scrutiny than in the case of regularly filed motions. *See Mission Power*, 883 F. Supp. at 492 ("Lawyers must understand that filing an ex parte motion ... is the forensic equivalent of standing in a crowded theatre and shouting, 'Fire!' There had better be a fire."). This Court has held that *ex parte* relief is warranted where the movant establishes that (1) the movant will suffer irreparable prejudice absent the requested relief, and (2) "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* "To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer. ... For example merely showing that trial is fast approaching and that the opposing party still has not answered interrogatories is insufficient to justify ex parte relief. The moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period." *Id.* at 493. Without limitation, given that we agreed to the protocol in September of last year and all of the documents located pursuant to the protocol were produced by December 4, 2007, you cannot satisfy the standards set forth in *Mission Power*.

Unfortunately, I can only conclude that your decision to file an *ex parte* application is an attempt to obtain a strategic advantage. As you know, one of the main reasons that *ex parte* motions are so disfavored is that it puts the non-moving party at a severe disadvantage. Mattel, as the moving party, has had considerable time to prepare its application, whereas we will have only 24 hours after you file to oppose. As set forth herein, it is our position that to bring this matter as an *ex parte* application is a violation of the federal and local rules, and I strongly urge you to reconsider and to instead file a regularly noticed motion.

Finally, I expect that you will be filing this motion (or application) with Judge Infante because, as you have repeatedly argued and Judge Larson has confirmed in a written order, all discovery matters, including with respect to third parties, shall be heard by Judge Infante. Please let me know if I am wrong in this regard.

I look forward to hearing from you.

Very truly yours,

Larry W. McFarland
Keats McFarland & Wilson LLP

LWM/jlt

cc:  Thomas J. Nolan
     Michael Page

Exhibit 27
Page ___153___

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.

CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# __EXHIBIT 28__

EXHIBIT TO:    DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys Mattel, Inc.

8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| vs. | **PROOF OF SERVICE** |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

Exhibit 28
Page ___154

07209/2365820.1

-1-

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On January 25, 2008, I served true copies of the following documents described as:

### SEE DOCUMENT LIST

on the parties in this action as follows:

| | |
|---|---|
| Larry W. Farland<br>**Keats McFarland & Wilson**<br>9720 Wilshire Blvd.<br>Penthouse Suite<br>Beverly Hills, CA 90212 | |
| | |

[√ ]   **[PERSONAL]** by personally delivering the document listed above to the person(s)

at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on January 25, 2008, at Los Angeles, California.

Zsazsa Singleton

Exhibit 28
Page ___155___

-2-

Case No. CV 04-9049 SGL (RNBx)
PROOF OF SERVICE

## DOCUMENT LIST

1. DECLARATION OF CHRISTOPHER TAYBACK IN SUPPORT OF MATTEL, INC.'S *EX PARTE* APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

2. MATTEL, INC.'S APPLICATION TO FILE UNDER SEAL EXHIBITS 1, 2, 3, 5, 6, 7, 8, 9, 16 AND 17 TO THE DECLARATION OF CHRISTOPHER TAYBACK IN SUPPORT OF MATTEL, INC.'S *EX PARTE* APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

3. [PROPOSED] ORDER RE MATTEL, INC.'S APPLICATION TO FILE UNDER SEAL EXHIBITS 1, 2, 3, 5, 6, 7, 8, 9, 16 AND 17 TO THE DECLARATION OF CHRISTOPHER TAYBACK IN SUPPORT OF MATTEL, INC.'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

4. PROOF OF SERVICE

5. PROOF OF SERVICE RE KEATS McFARLAND & WILSON

Exhibit 28
Page ____156____

07209/2365820.1

-3-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Carter Bryant v. Mattel Inc.

Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 29**

EXHIBIT TO:     DECLARATION OF LARRY MCFARLAND IN SUPPORT OF
ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S,
AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S
EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF
ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE
CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA
MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE
SCHEDULING ORDER

# KEATS McFARLAND & WILSON LLP

## ATTORNEYS AT LAW

TEL (310) 248-3830
FAX (310) 860-0363

9720 WILSHIRE BOULEVARD
PENTHOUSE SUITE
BEVERLY HILLS, CALIFORNIA 90212

www.kmwlaw.com

WRITER'S DIRECT DIAL

(310) 777-3750

WRITER'S EMAIL

lmcfarland@kmwlaw.com

December 11, 2007

VIA MESSENGER

B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

    Re:    <u>Mattel v. Bryant</u>

Dear Dylan:

    I am enclosing documents having Bates numbers KMW-L 000429 through KMW-L 000603 and KMW-M 007873 through KMW-M 008025, which include photos of the three-dimensional objects that have been produced to you.

                Very truly yours,

                Larry W. McFarland
                Keats McFarland & Wilson LLP

LWM/ccd

cc: Thomas J. Nolan
     Michael Page

Enclosures

Exhibit 29
Page   157

**Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.

CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# **FILED UNDER SEAL**

# **EXHIBIT 30**

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S, AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE SCHEDULING ORDER

**Carter Bryant v. Mattel Inc.**

Case No.: CV 04 – 09049 SGL (RNBx)

Consolidated with Case Nos.
CV 04-9059 and CV 05-2727

Hon. Stephen G. Larson

# **EXHIBIT 31**

EXHIBIT TO:   DECLARATION OF LARRY MCFARLAND IN SUPPORT OF
ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S,
AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S
EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF
ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE
CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA
MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE
SCHEDULING ORDER

1  | Hon. Edward A. Infante (Ret.)
JAMS
2  | Two Embarcadero Center
Suite 1500
3  | San Francisco, California 94111
Telephone:     (415) 774-2611
4  | Facsimile:      (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12 | CARTER BRYANT, an individual,            CASE NO. CV 04-09049 SGL (RNBx)
                                             JAMS Reference No. 1100049530
13 |
              Plaintiff,
14 |                                         Consolidated with
         v.                                  Case No. CV 04-09059
15 |                                         Case No. CV 05-2727
   | MATTEL, INC., a Delaware corporation,
16 |                                         **ORDER RE MATTEL'S MOTIONS TO**
              Defendant.                     **COMPEL FARHAD LARIAN, KAYE**
17 |                                         **SCHOLER AND STERN &**
                                             **GOLDBERG TO PRODUCE**
18 |                                         **DOCUMENTS**

19 | CONSOLIDATED WITH
   | MATTEL, INC. v. BRYANT and
20 | MGA ENTERTAINMENT, INC. v. MATTEL,
   | INC.
21 |

22

23

24                        I. INTRODUCTION

25        The following motions are pending for decision, each of which seeks discovery from non-

26  parties:  Mattel, Inc.'s ("Mattel") (1) Motion to Compel Farhad Larian to Produce Documents; (2)

27  Motion to Compel Kaye Scholer to Produce Documents; and (3) Motion to Compel Stern &

28

1   Goldberg to Produce Documents.  Each of the non–parties submitted oppositions.[1]  In addition,

2   MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

3   Mexico S.R.L. de C.V. (collectively "MGA") submitted oppositions to the motions.  Mattel

4   submitted a consolidated reply on January 3, 2008.  The motions were heard on January 16, 2008,

5   at which time Mattel agreed to hold in abeyance its Motion to Compel Stern & Goldberg to

6   Produce Documents.  This Order, therefore, addresses only Mattel's motions to compel Farhad

7   Larian and Kaye Scholer to produce documents.

8           On January 22, 2008, the parties submitted a Stipulation Regarding Protective Orders to

9   facilitate production of documents responsive to the subpoenas at issue.

10                             II. BACKGROUND

11           Since the inception of MGA in 1979 until December of 2000, Isaac Larian, a defendant

12   herein and MGA's CEO, and his brother Farhad Larian, a non-party, shared ownership and

13   management of MGA.  A dispute developed between the two brothers and in March of 2000,

14   Isaac Larian proposed that Farhad Larian sell his interest in MGA to him.

15           On September 28, 2000, the Larian brothers agreed to have their uncle, Morad Zarabi,

16   arbitrate their dispute and decide a fair value for MGA and also decide which brother should sell

17   his ownership interest to the other.  The brothers' agreement to arbitrate was entered into ten days

18   after the alleged effective date of Carter Bryant's contract purportedly assigning rights to Bratz to

19   MGA.  Isaac Larian did not tell his brother about the contract with Bryant.

20           Mr. Zarabi retained an appraiser, Ernest Dutcher, to value MGA based on "the period

21   ending December 31, 1999."  By December 4, 2000, Mr. Zarabi determined that Farhad Larian

22   should sell his 45% ownership interest in MGA to Isaac Larian and the two entered into an

23   Agreement for Sale of Stock by which Farhad Larian sold his interest for $8.775 million.

24

25

26

27       [1] Mattel contends that Kaye Scholer's opposition was not timely filed and therefore should not be considered.  Although the opposition was ten days late, Kaye Scholer's brief will nevertheless be considered in the interest of resolving these disputes on the merits.

28   Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

1    In the summer of 2002, Farhad Larian complained to Mr. Zarabi that Isaac Larian had

2    allegedly fraudulently concealed Bratz during the negotiations that led to Farhad Larian's sale of

3    MGA stock.  Mr. Zarabi oversaw another appraisal of MGA based upon information he gathered

4    in 2002.  Mr. Dutcher produced an appraisal on February 13, 2003 that valued MGA as of

5    December 31, 2000 and projected a 2001 revenue growth rate of twenty-five percent (25%) based

6    upon "hot projects that came along."  Mattel's Motion at p.4, Ex. 8 to Decl. of Juan Pablo Albán.

7    Other information relied upon by Mr. Dutcher suggests that MGA had expansionary plans in 2000

8    compared to the prior four years.

9          Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued Isaac Larian,

10   alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA became

11   aware of a new product line called Bratz; (b) starting in early 2000 and throughout 2000, Isaac

12   Larian and MGA devised plans to develop and distribute Bratz; and (c) Isaac Larian concealed the

13   plans for Bratz from Farhad Larian and Mr. Zarabi in order to keep the valuation of MGA

14   artificially low.  Notably, MGA and Bryant claim in the instant lawsuit that they did not even

15   meet until September 2000.

16         Isaac Larian successfully moved to compel arbitration of Farhad Larian's claims.  In early

17   February 2005, Mr. Zarabi declined to serve as arbitrator and the court appointed another

18   arbitrator.  A few weeks later, Farhad Larian filed suit against Mr. Zarabi alleging that he

19   conspired with Isaac Larian to conceal facts.

20         The arbitration of Farhad Larian's claims started on November 16, 2005.  Two days into

21   the proceedings, however, Farhad Larian dismissed his claims.  Isaac Larian sought to recover his

22   attorneys' fees and won an award in excess of $1 million against his brother.

23   Mattel Subpoenas Farhad Larian to Produce Documents

24         On August 31, 2007, Mattel subpoenaed Farhad Larian to appear for deposition and to

25   produce (1) documents relating to the Larian v. Larian disputes; (2) documents related to non-

26   Bratz allegations by Mattel and MGA, primarily related to allegations of trade secret theft; (3)

27   documents relating to Farhad Larian's relationship to MGA, including his position there,

28

1   ownership interests, and payments from MGA or Isaac Larian to Farhad Larian; (4) Farhad

2   Larian's knowledge and possession of documents specifically from the instant lawsuit, including

3   his communications with Mattel; and (5) information about the location of responsive documents.

4   The majority of Mattel's requests seek documents in the first category described above.

5           On September 21, 2007, Farhad Larian served responses and objections in which he

6   agreed to produce documents responsive to eleven of Mattel's forty-one document requests.

7   After a brief stay of discovery, counsel for Farhad Larian and Mattel met and conferred beginning

8   on November 20, 2007.  During the meet and confer process, Farhad Larian agreed to produce

9   documents responsive to some, but not all of Mattel's forty-one requests.  On November 21,

10  2007, Farhad Larian produced approximately one red well of documents.

11          The parties held a second meet and confer conference call on November 27, 2007, and

12  were able to resolve their disputes regarding many more, but not all requests.  In particular, the

13  parties were ultimately able to resolve their disputes regarding the requests for documents related

14  to non-Bratz allegations.  At the conclusion of the second meet and confer session, it was agreed

15  that Farhad Larian would make a supplemental production of documents on December 6, 2007,

16  and provide a written supplemental response.  The parties attempted to schedule another meet and

17  confer session, but could not agree upon a date.  On the evening of December 6, 2007, Mattel

18  filed the instant motion.  Mattel seeks an order compelling Farhad Larian to produce documents

19  responsive to every request in its subpoena; overruling each of Farhad Larian's objections; and

20  ordering him to produce a document-by-document privilege log.

21  Mattel Subpoenas Isaac Larian's Attorney –Kaye Scholer

22          On or about September 6, 2007, Mattel also subpoenaed Kaye Scholer, the firm that

23  represented Isaac Larian in the Larian v. Larian proceedings.  The subpoena consisted of thirty-

24  five (35) requests seeking the same five categories of documents it subpoenaed from Farhad

25  Larian.  Kaye Scholer's representation of Isaac Larian included defending him in two related

26  Superior Court actions, two arbitration proceedings and an appeal to the California Court of

27  Appeals, all of which covered a period of several years.  As a result of this representation Kaye

28

1  Scholer has accumulated approximately fifty-six (56) boxes of its client's files, including, among

2  other things, correspondence files, pleading files, discovery files, witness preparation files,

3  research files, exhibits, attorney work files, and billing files.

4      On or about September 18, 2007, Kaye Scholer served its objections, asserting, among

5  other things, that the requests are duplicative, unreasonably cumulative, harassing and oppressive.

6  The parties met and conferred on October 11 and 29, 2007. Kaye Scholer agreed to review the

7  following files for responsive documents: (1) pleading files; (2) discovery files; and (3)

8  arbitration exhibits. Kaye Scholer's rationale for limiting its search for responsive documents to

9  these three files was to avoid undue burden because most of the documents in other files would be

10  protected by the work product doctrine and/or the attorney-client privilege. Kaye Scholer also

11  agreed to produce documents responsive to the majority of Mattel's requests. However, Kaye

12  Scholer repeatedly informed Mattel that it objected to producing a document-by-document

13  privilege log because it would be unduly burdensome, expensive and inconvenient.

14      In the instant motion, Mattel seeks an order compelling Kaye Scholer to produce

15  documents responsive to every request in its subpoena and overruling Kaye Scholer's objections,

16  including privilege, or alternatively, compelling Kaye Scholer to produce a document-by-

17  document privilege log.

18  <u>Mattel's Other Discovery Efforts</u>

19      Mattel has attempted to obtain documents related to the <u>Larian v. Larian</u> proceedings from

20  MGA and Isaac Larian. As far as Mattel can ascertain, however, MGA has produced only four

21  documents relating to the <u>Larian v. Larian</u> proceedings and Isaac Larian has produced none.

22      Mattel also searched public filings in the <u>Larian v. Larian</u> and <u>Larian v. Zarabi et al.</u> civil

23  lawsuits. Mattel found Mr. Dutcher's declaration that included the appraisals described above,

24  however, Mattel was not able to locate any of the raw data on which Mr. Dutcher relied. Mattel

25  also served subpoenas on third parties involved in the <u>Larian v. Larian</u> proceedings, and met with

26  limited success.

27  //

28

### III. STANDARDS

Rule 45 of the Federal Rules of Civil Procedure requires third parties to produce documents (and reasonably accessible electronically stored information) that are responsive to a subpoena that a party serves on them. Fed.R.Civ.P. 45(b), (d).  If the subpoenaed documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing. The factors to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.  A person withholding subpoenaed information under a claim of attorney-client privilege or protected by the work product doctrine must expressly make the claim and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed.R.Civ.P. 45(d)(2).

Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Furthermore, "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees-- on a party or attorney who fails to comply." Id.

### IV. DISCUSSION

A. Documents Subpoenaed from Farhad Larian

Mattel contends that each of the categories of documents it seeks from Farhad Larian is relevant and that there is good cause for production.  First, Mattel contends that the Larian v. Larian proceedings are relevant because Farhad Larian's allegations about the timing of the origins and early development of Bratz and MGA's concealment thereof parallel and provide support for the crux of Mattel's claims in the instant litigation.  Second, Mattel contends that documents about Farhad Larian's relationship with MGA are relevant to his credibility.  In particular, Mattel contends that payments from Isaac Larian and/or MGA to Farhad Larian are

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

Exhibit 31
Page 175

1   relevant to credibility and possible bias.  Third, Mattel contends that documents relating to this

2   action are clearly relevant, especially in light of MGA and Isaac Larian's threat to disqualify

3   Mattel's counsel based upon purported communications between Mattel's counsel and Farhad

4   Larian.  Fourth, Mattel contends that it seeks information about the location of responsive

5   documents to determine whether Farhad Larian destroyed documents or for another reason no

6   longer has them.

7          Mattel next contends that Farhad Larian has failed to carry his burden of demonstrating

8   that the requests at issue are unreasonable, oppressive, annoying or embarrassing.  Further, Mattel

9   contends that the protective order in place in this lawsuit is sufficient to address Farhad Larian's

10  confidentiality or privacy concerns.  Lastly, Mattel contends that Farhad Larian's privilege log is

11  inadequate because it fails to justify his claims of privilege and work product protection on a

12  document-by-document basis.

13         Farhad Larian contends that Mattel's motion should be denied because Mattel violated its

14  meet and confer obligations by filing the motion before he made his scheduled supplemental

15  production and before the parties' meet and confer discussions had concluded.  According to

16  Farhad Larian, on November 27, 2007, it was agreed that he would make a supplemental

17  production of documents on December 6, 2007, and that he would provide a written supplemental

18  response.  Farhad Larian complied with this agreement and, on December 6, 2007, provided a

19  written supplemental response and, as Mattel acknowledges, approximately six boxes containing

20  approximately 12,000 pages of documents.  Nevertheless, Mattel filed the instant motion on

21  December 6, 2007, without reviewing the supplemental document production and written

22  supplemental response.  Farhad Larian also represents that as of December 6, 2007, the day

23  Mattel filed the instant motion, the parties acknowledged the need for a further meet and confer

24  session, as reflected in the numerous e-mails and correspondence exchanged between counsel.

25  Furthermore, Farhad Larian represents that after Mattel filed the instant motion, he requested that

26  Mattel take the motion off-calendar because his supplemental responses resolved the parties'

27  disputes as to all but three requests and because there was potential for resolving the remaining

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

Exhibit 31
Page 176

1 | requests as well, but that Mattel refused.

2 |   Farhad Larian contends that in light of his supplemental production, he is now in full

3 | compliance with Mattel's subpoena, except for three requests.  He represents that he has produced

4 | over 12,000 documents, including all non-privileged documents from the <u>Larian v. Larian</u> matters

5 | that relate to Bratz (including its origin), Carter Bryant, Mattel, a fee agreement between Farhad

6 | and MGA, and all documents related to appraisals of MGA that are not privileged or otherwise

7 | covered by a protective order.  He also contends that the privilege log he has produced to Mattel,

8 | which describes the withheld documents by category instead of document-by-document, is

9 | sufficient to substantiate his claims of privilege and work product protection.  As for the three

10 | remaining requests, Nos. 23, 24 and 41, Farhad Larian contends that they are overbroad, harassing

11 | and cumulative and invade his and his family's privacy.

12 | Farhad Larian Has Substantially Complied with the Subpoena

13 |   Farhad Larian made a substantial supplemental production and provided a supplemental

14 | written response on December 6, 2007.  Indeed, Mattel acknowledges that it received

15 | approximately six boxes of documents from Farhad Larian, which contain approximately 12,000

16 | pages of documents.  Nevertheless, Mattel contends in its reply brief that there are a few

17 | deficiencies in Farhad Larian's production.  For example, Mattel contends that Farhad Larian has

18 | not produced (1) documents bates stamped "MZ" and "ED"; (2) raw data provided to the

19 | appraisers in the <u>Larian v. Larian</u> litigations and the 2000 financial models that Farhad Larian

20 | claimed Isaac Larian prepared; (3) three boxes of documents that Farhad Larian's counsel showed

21 | Mattel's counsel and upon which MGA's disqualification threats against Mattel's counsel are

22 | based; (4) the Dutcher Declaration; and (5) documents responsive to Request Nos. 17-19.  Mattel

23 | also contends that Farhad Larian has improperly limited its production to only those documents

24 | that directly reference Bratz and Carter Bryant.

25 |   At the hearing, counsel for Farhad Larian confirmed that all responsive documents,

26 | including the documents identified in Mattel's reply brief, had been or would be produced after

27 | the parties executed the Stipulation Regarding Protective Orders, which has now been

28 |

1  accomplished.  Significantly, counsel represented that Farhad Larian did not limit his production

2  to only those documents that directly reference Bratz and Carter Bryant, and that his supplemental

3  responses make this point clear.  Counsel for Farhad Larian also represented that all privileged

4  documents have been identified on a privilege log.

5          In light of the December 6, 2007 supplementation, and based upon the representations

6  made by counsel for Farhad Larian at the hearing, Farhad Larian has substantially discharged his

7  obligation to comply with Mattel's subpoena.  Therefore, there is no need for an order compelling

8  any further production of documents.

9                  Farhad Larian's Objections to the Three Remaining Requests are Justified

10         The only three requests to which Farhad Larian objects are Nos. 23, 24 and 41, which are

11  set forth in full below:

12         Request No. 23:  All DOCUMENTS RELATING TO any and all payments of
           money or transfers of anything of value that ISAAC LARIAN, his FAMILY
13         MEMBERS and/or MGA have made, have offered or have proposed, promised or
           agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at
14         any time from January 1, 1999 through the present.

15         Request No. 24:  All DOCUMENTS RELATING TO any and all payments of
           money or transfers of anything of value that any PERSON has made, has offered
16         or has proposed, promised or agreed to make, to or for the benefit of YOU or
           YOUR FAMILY MEMBERS and that was related in any way to BRATZ,
17         BRYANT, MGA or this ACTION at any time from January 1, 1999 through the
           present.
18
           Request No. 41:  DOCUMENTS sufficient to IDENTIFY since January 1, 1999
19         through the present (a) each account with any bank or financial institution that
           YOU have or have had, or that YOU have or have had any legal beneficial
20         interest in; (b) each telephone subscription service account that YOU have or have
           had, or that YOU use or have used; and (c) each email account that YOU have or
21         have had, or that YOU use or have used.

22
    Farhad Larian contends that Mattel's stated justification for the requests – bias and credibility – is
23
    questionable because he is not an adverse witness to Mattel.  Farhad Larian represents that MGA
24
    has never asked him to testify on the company's behalf.  Rather, only Mattel intends to call him as
25
    a witness.  Farhad Larian asserts that there is no reason for Mattel to impeach its own witness.
26
           Furthermore, Farhad Larian contends that even if it is advantageous for Mattel to attack
27

28

1    his credibility, the scope of Mattel's requests go far beyond what Mattel is reasonably entitled to

2    receive through discovery.  He contends that pursuant to Rule 26, Fed.R.Civ.P., he should not be

3    subjected to discovery that is burdensome, cumulative, unnecessarily costly, or insufficiently

4    probative to the issues in the litigation to warrant the expense of production.  Furthermore, he

5    contends that the usual restrictions on discovery set forth in Rule 26 should be rigorously applied

6    to protect non-parties such as himself.

7        Farhad Larian contends that the three requests at issue are overbroad and harassing in

8    several respects.  First, he points out that the requests seek documents from 1999, which is five

9    years before this action was filed and six years before MGA was involved in this action.  Farhad

10    Larian contends that payments made to him and his family before this action was filed and before

11    MGA was a party to the case have no relevance to his credibility as a witness in this case.

12    Second, Farhad Larian contends that the requests, as phrased, would include any card that

13    accompanied a gift to anyone in the Larian family, regardless of the dollar value of the gift.

14    Farhad Larian contends that family gifts for birthdays, Chanukah, or general gifts of money

15    between family members, have nothing to do with bias and violate his and his family's privacy

16    rights.  Third, Farhad Larian contends that the requests are overbroad because they would require

17    him to disclose all documents reflecting payments he received as an employee of MGA and its

18    predecessor, a company he was employed by for decades.

19        Furthermore, Farhad Larian contends that he has already produced all non-privileged

20    documents which could potentially show bias, including the amount of money he was paid for his

21    shares of MGA, his consulting agreement with MGA after he sold his shares, and his fee

22    agreement with MGA.  He contends that requiring him to search for and produce additional

23    payment documents would only result in him producing cumulative information, which is not

24    only irrelevant but violates his and his family's right to privacy under the California Constitution.

25    Farhad Larian also contends that it would be far less intrusive for Mattel to question him at a

26    deposition about payments he received from Isaac Larian and MGA than for him to respond to the

27    three requests at issue.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

Exhibit 31
Page ___179___

1          Mattel's motion is denied with respect to Request Nos. 23, 24 and 41. The requests seek

2    information that is only minimally relevant to the claims and defenses in the case. Mattel's only

3    stated justification for the discovery is that it is relevant to establish Farhad Larian's credibility

4    and bias. Although impeachment information is discoverable, Mattel is not entitled to the type of

5    unfettered discovery it is now seeking. Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to

6    restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

7    obtainable from some other source that is more convenient, less burdensome, or less expensive;

8    (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

9    information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

10   benefit, taking into account the needs of the case, the amount in controversy, the parties'

11   resources, the importance of the issues at stake in the litigation, and the importance of the

12   proposed discovery in resolving the issues. These restrictions are particularly important to

13   consider where the discovery requests are directed at a non-party. See Moon v. SCP Pool Corp.,

14   232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,

15   649 F.2d 649 (9th Cir. 1980) (discovery should be "more limited to protect third parties from

16   harassment, inconvenience, or disclosure of confidential information.").

17         Aside from asserting that the requested information is relevant to bias and credibility,

18   Mattel has made no attempt to justify the significant breadth and burden of its requests. The

19   requests are so broad as to include every payment or gift, regardless of amount, made between

20   Farhad and Isaac Larian, their family members and MGA since 1999. The number of years for

21   which Mattel seeks financial information is overbroad. Mattel is seeking documents since 1999,

22   five years before this action was filed and six years before MGA became a party to this action.

23   Mattel fails to explain how any payments MGA or Isaac Larian made to Farhad or his family

24   members before this action was filed or MGA was a party to the action have any bearing on his

25   credibility as a witness in this action. The requests are also overbroad in that they encompass

26   customary gifts between family members and Farhad Larian's routine salary payments, which

27   have only minimal relevance to Farhad Larian's credibility and bias as a witness in this case.

28

1        The requests are also cumulative of discovery Farhad Larian has already provided.  In

2   particular, Farhad Larian represents that he has already disclosed to Mattel the amount of money

3   he was paid for his shares of MGA, his consulting agreement with MGA after he sold his shares,

4   and his fee agreement with MGA.  In light of this production , it is unreasonable to require Farhad

5   Larian to search for and produce gift receipts, cards, and the breadth of other financial documents

6   responsive to Request Nos. 23, 24 and 41.  Furthermore, there are other less intrusive and

7   burdensome means of obtaining discovery regarding Farhad Larian's credibility and bias.  For

8   example, Mattel may question Farhad Larian about payments he received from his brother and

9   MGA during his deposition.

10       Nor has Mattel justified the intrusive and harassing nature of the requests.  Personal

11  financial information is afforded protection by the California Constitution that is also recognized

12  by federal courts.  Cal. Const., Art. I, §1; Valley Bank of Nevada v. Superior Court, 15 Cal.3d

13  652, 656 (1975); Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

14  should give "some weight" to privacy rights that are protected by state constitutions); Soto v. City

15  of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (right to privacy in financial information has

16  been recognized by federal courts).  When a privacy right is asserted as an objection to discovery,

17  the court must balance the need for the information versus the privacy right asserted.  Soto, 162

18  F.R.D. at 616.

19       As discussed previously, there is little to no need for the breadth of financial information

20  sought by Mattel.  Many of the documents covered by Request Nos. 23, 24, and 41 have little to

21  no relevance to Farhad Larian's credibility and bias as a witness in this case.  Furthermore,

22  Farhad Larian has already produced numerous documents showing payments he received from

23  both his brother and MGA.  There are also other less intrusive means for obtaining discovery

24  relating to Farhad Larian's credibility and bias.  Furthermore, the scope of these three requests

25  unduly intrude into Farhad Larian's private affairs.  The requests are so broad as to include gifts

26  exchanged between family members and Farhad Larian's paycheck stubs, and would require

27  Farhad Larian to disclose every account number he has at a bank or financial institution since

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

Exhibit 31
Page ___181___

1    1999. Thus, the balance tips sharply in favor of protecting Farhad Larian's personal financial

2    information.

3                        Farhad Larian's Privilege Log is Inadequate

4          Mattel challenges the sufficiency of Farhad Larian's privilege log. At issue is whether

5    Farhad Larian must describe and assert claims of privilege on a document-by-document basis, or

6    whether he may do so categorically. Farhad Larian is withholding approximately one bankers'

7    box of documents based upon claims of privilege and work product protection. Farhad Larian's

8    Opposition at p.20, n. 9.

9          Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide

10   sufficient information to enable the party seeking discovery to assess the claims of privilege and

11   work product protection. The "universally accepted" means of claiming that requested documents

12   are privilege is by producing a document-by-document privilege log. Gail v. New England Gas

13   Co., Inc., 234 F.R.D. 28, 33 (D. R.I. 2007). The advisory comments to the 1993 amendment to

14   Rule 26(b), however, state that a description of documents by category is appropriate where it

15   would be "unduly burdensome" to provide a document-by-document privilege log. Specifically,

16   the advisory comment states, "Details concerning time, persons, general subject matter, etc., may

17   be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous

18   documents are claimed to be privileged or protected, particularly if the items can be described by

19   categories."

20         Farhad Larian relies upon the advisory comments and cases citing the advisory comments

21   to support his contention that as a non-party, it would be unduly burdensome to require a

22   document-by-document privilege log in this case. The cases cited by Farhad Larian, however, are

23   distinguishable from the present case. In SEC v. Thrasher, 1996 WL 125661 (S.D. N.Y. 1996),

24   the Commission sought production of all communications between defense counsel concerning

25   the lawsuit. The court observed that this demand, on it face, sought wholesale production of

26   documents that are ordinarily protected from disclosure. Further, the defendant represented that

27   the requested documents were extremely voluminous and that a document-by-document privilege

28

1   log would be a long and fairly expensive project to undertake.  In <u>Fifty-Six Hope Road Music,</u>

2   <u>Ltd. v. Mayah Collections, Inc.</u>, 2007 WL 1726558 (Nev. 2007), the withheld documents

3   consisted of e-mail communications between plaintiffs and their counsel or between plaintiffs'

4   counsel.  Plaintiffs represented that there were hundreds and perhaps thousands of such email

5   communications which were protected by the attorney-client privilege and work product doctrine.

6         In contrast to the volume of documents at issue in <u>Thrasher</u> and <u>Fifty-Six Hope Road</u>

7   <u>Music</u>, Farhad Larian represents that he has about one bankers' box of privileged documents.

8   Farhad has not established that to produce a privilege log on a document-by-document basis for

9   this volume of documents is unduly burdensome.  Furthermore, even if it were appropriate for

10   Farhad Larian to produce a privilege log that described documents categorically, which it is not,

11   the information provided in Farhad Larian's privilege log is insufficient to enable Mattel to assess

12   the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P.  For

13   example, in some instances, Farhad Larian fails to identify the author and recipient of the

14   documents being withheld.  In other instances, Farhad Larian fails to provide the date or date

15   ranges for the documents being withheld.  Therefore, Farhad Larian is ordered to provide a

16   supplemental privilege log that complies with Rule 45.

17   <u>B. Documents Subpoenaed from Kaye Scholer</u>

18         Mattel contends that the documents it seeks from Kaye Scholer are relevant for all the

19   same reasons previously articulated in the context of Mattel's motion to compel Farhad Larian to

20   produce documents.  Mattel contends that its requests are not unreasonable, oppressive, annoying

21   or embarrassing.  Mattel points out that Kaye Scholer has separate case files containing all or the

22   vast majority of responsive documents, which undermines Kaye Scholer's boilerplate burden

23   objections.  Mattel also points out that it offered to alleviate some of the burden to Kaye Scholer

24   by paying for Kay Scholer's copying costs and by providing a paralegal to inspect documents

25   from Kaye Scholer's files with an agreement that the inspection would not result in a waiver of

26   any privileges.  Further, Mattel contends that the protective order in place in this action is

27   sufficient to address any confidentiality concerns Kaye Scholer may have.

28

1      Mattel next contends that the documents it seeks from Kaye Scholer are not available from

2   other sources, as evidenced by Mattel's repeated and unsuccessful attempts to seek the same

3   documents from MGA.  Indeed, Mattel contends that the documents in Kaye Scholer's possession

4   are in fact documents within MGA's possession, custody and control that should have, but have

5   not yet been, produced pursuant to prior discovery orders obligating MGA and Isaac Larian to

6   produce documents from the Larian v. Larian proceedings.  Mattel also points out that it has

7   searched public files and served additional subpoenas on other third parties involved in the Larian

8   v. Larian proceedings.  Moreover, Mattel argues that federal law requires Kaye Scholer to comply

9   with the subpoena, even if the evidence sought is obtainable from another source.  See e.g. State

10  Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840 at *1 (E.D. N.Y. 2007).

11     Mattel contends that Kaye Scholer's proposal to search only certain files for responsive

12  documents is unacceptable because it would inevitably exclude relevant documents.  In particular,

13  Mattel contends that Kaye Scholer's proposal would exclude relevant documents likely to be

14  found in its correspondence file, such as an August 29, 2003 letter from Isaac Larian to Mr.

15  Zarabi relating to an appraisal of MGA, and a letter from Farhad Larian's attorney to Kaye

16  Scholer detailing the evidence of Isaac Larian's alleged concealment of Bratz.  Mattel contends

17  that the relevance of these documents and others that are likely to exist justifies the burden of

18  production on Kaye Scholer.

19     Further, Mattel contends that Kaye Scholer has failed to produce a privilege log in

20  violation of Rule 45(d)(2), Fed.R.Civ.P., and therefore Kaye Scholer has waived any claims of

21  privilege.  In the alternative, Mattel requests an order compelling Kaye Scholer to produce a

22  document-by-document privilege log.

23     Kaye Scholer contends that the instant motion is premature, unnecessary and a waste of

24  judicial resources.  Kaye Scholer represents that after meeting and conferring in good faith, it

25  agreed to produce documents responsive to thirty of the thirty-five requests, and that the

26  remainder of the requests are grossly overbroad.  Further, Kaye Scholer represents that it has

27  completed its review pursuant to the agreement, and is prepared to produce responsive

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

Exhibit 31
Page _____ 184

1   documents. However, Kaye Scholer continues to object to producing a document-by-document

2   privilege log on the grounds that it would be unduly burdensome and expensive. Kaye Scholer

3   emphasizes that Mattel is seeking documents from a law firm, and therefore the vast majority of

4   responsive documents are protected by multiple privileges, including but not limited to the

5   attorney-client privilege and the work product doctrine. Kaye Scholer estimates that it would take

6   in excess of seventy (70) hours to create a document-by-document privilege log for this case, and

7   that the Federal Rules of Civil Procedure do not require Kaye Scholer to undertake such an

8   unreasonable burden. Furthermore, Kaye Scholer contends that the failure to produce a

9   document-by-document privilege log does not result in a per-se waiver of any privilege.

10       MGA also opposes Mattel's motion for several reasons. First, MGA contends that

11   Mattel's requests are overbroad, encompassing documents that are only marginally related, if at

12   all, to the claims and defenses in the case. Second, MGA contends that Mattel's requests are

13   completely duplicative of requests it has served on the parties in the case. In particular, MGA

14   contends that Mattel has sought the <u>Larian v. Larian</u> documents from both MGA Entertainment,

15   Inc. and Isaac Larian. <u>See</u> Mattel's Request No. 41 in Mattel's First Set of Request for

16   Production of Documents and Tangible Things to MGA, and Request Nos. 123-125 in Mattel's

17   First Set of Requests for Documents and Things to Isaac Larian. MGA and Isaac Larian are both

18   under court order to comply with the requests, although Isaac Larian is only required to produce

19   documents that refer or relate to Bratz in response to Request Nos. 123-125. Third, MGA

20   contends that Mattel's requests to Kaye Scholer are much broader than requests Mattel previously

21   served on the parties to this case. Fourth, MGA contends that there is no reason Mattel cannot

22   obtain a complete set of all relevant documents from the <u>Larian v. Larian</u> proceedings without this

23   third-party subpoena. Fifth, MGA contends that the vast majority of documents Mattel seeks

24   from Kaye Scholer are protected by the attorney-client privilege, the work product doctrine, or

25   other privileges, and that it is improper for Mattel to attempt to subpoena these documents and

26   then insist that Kaye Scholer produce a document-by-document privilege log. In summary, MGA

27   contends that Mattel has misused the subpoena process by serving deliberately overbroad and

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

16

Exhibit 31
Page _____ 185

1   burdensome requests in an attempt to harass and intimidate MGA and non-parties.  Accordingly,

2   MGA contends that Mattel's motion should be denied or Mattel's subpoena should be

3   substantially limited in scope.

4                    Mattel's Subpoena is Overbroad, Unduly Burdensome and Cumulative

5           Mattel's subpoena to Kaye Scholer is overbroad and is not reasonably tailored to seek

6   documents relevant to the claims and defenses in this case.  Of the thirty-five requests Mattel

7   served on Kaye Scholer, all but one begin with the phrase "all documents" or a similarly broad

8   phrase.  For example, Request Nos. 1-3, which are set forth below, seek virtually all documents

9   relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian:

10          Request No. 1:  All DOCUMENTS, including all COMMUNICATIONS,
            RELATING TO any and all arbitration proceedings between FARHAD LARIAN
11          and ISAAC LARIAN, including without limitation all video and/or sound
            recordings, transcripts, exhibits, memoranda, witness statements, declarations,
12          affidavits and sworn testimony given by any PERSON in connection with such
            arbitration proceedings.
13
            Request No. 2:  All DOCUMENTS including all COMMUNICATIONS,
14          RELATING TO Los Angeles Superior Court Case No. BC301371 filed by
            FARHAD LARIAN against ISAAC LARIAN and/or any related proceedings,
15          including any appeal thereof, and including without limitation all video and/or
            sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
16          statements, declarations, affidavits and sworn proceedings and/or any appeal
            related to such lawsuit.
17
            Request No. 3:  All DOCUMENTS RELATING TO Los Angeles Superior Court
18          Case No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN,
            MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any
19          appeal of such lawsuit, including without limitation all video and/or sound
            recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
20          statements, declarations, affidavits and sworn testimony given by any PERSON in
            connection with such suit and/or related proceedings and/or any appeal related to
21          such lawsuit.

22
    Mattel has not limited the subject matter of these requests (and others) in any way to exclude
23
    irrelevant information.  To the contrary, Request Nos. 1-3 are drafted in the broadest possible
24
    language, encompassing documents that are only marginally related, if at all, to this case.  As
25
    such, Mattel's requests are also unduly burdensome.
26
            Furthermore, Mattel's requests are clearly duplicative of other requests propounded to the
27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                                    17

                                        Exhibit 31
                                        Page _____ 186

1   parties in this action.  In particular, the requests relating to the <u>Larian v. Larian</u> proceedings are

2   duplicative of Mattel's Request No. 41 to MGA and Request Nos. 123-125 to Isaac Larian.

3   During the hearing, counsel for MGA acknowledged that Isaac Larian is required to comply with

4   Request Nos. 123-125, and is prepared to review Kaye Scholer's files for responsive documents

5   to fulfill his responsibility.  Also during the hearing, Kaye Scholer agreed to make its

6   correspondence file available to MGA's counsel for review.

7          In light of Mattel's failure to take reasonable steps to avoid unduly burdening Kaye

8   Scholer and in light of MGA's and Kaye Scholer's representations during the hearing as outlined

9   above, Mattel's motion to compel Kaye Scholer to comply with the full scope of the subpoena is

10  denied.

11          <u>Kaye Scholer's Compromise is Reasonable Under the Circumstances</u>

12         As an alternative to complying with the full scope of the subpoena, Kaye Scholer agreed

13  to review the following files for documents responsive to every one of Mattel's requests except

14  Nos. 1-3, 6 and 10:  (1) pleading files; (2) discovery files; and (3) arbitration exhibits.  Kaye

15  Scholer's Opposition at p.5.  Kaye Scholer's compromise is reasonable under the circumstances.

16  Narrowing the scope of Kaye Scholer's search in this manner will significantly minimize the

17  burden, expense, and inconvenience imposed by the subpoena because, unlike Kaye Scholer's

18  other files, most of the documents in the three files it agreed to search are not likely to be covered

19  by the attorney-client privilege or work product doctrine.  Further, narrowing Kaye Scholer's

20  search in this manner will not significantly deprive Mattel of relevant discovery to which it is

21  entitled because, as stated previously, MGA's counsel represented during the hearing that Isaac

22  Larian is prepared to review Kaye Scholer's documents, including the correspondence file, to

23  comply with Request Nos. 123-125.

24         Accordingly, to the extent it has not already done so, Kaye Scholer shall conduct the

25  agreed upon search of its three files and produce documents responsive to all of Mattel's requests,

26  except Nos. 1-3, 6 and 10.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

Exhibit 31
Page _____ 187

<u>Kaye Scholer Must Produce a Privilege Log in Compliance with Rule 45</u>

Mattel contends that Kaye Scholer has waived its claims of privilege by failing to produce any privilege log.  The law is clear, however, that the failure to produce a document-by-document privilege log does not result in a per-se waiver of any privilege.  <u>See</u> <u>Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.</u>, 408 F.3d 1142, 1147 (9th Cir. 2005).  In this case, Kaye Scholer raised a legitimate objection to producing a document-by-document privilege log on the grounds that it would impose an undue burden.  Under these circumstances, a finding of waiver is unjustified.

Nevertheless, Kaye Scholer's claim of undue burden is unpersuasive.  Kaye Scholer has acknowledged that most of the documents in the three files it has agreed to search are not likely to be covered by the attorney-client privilege or work product doctrine.  Kaye Scholer Opposition at pp. 5 and 9.  Indeed Kaye Scholer agreed to search these files precisely because they were not likely to contain privileged documents.  Therefore, requiring Kaye Scholer to produce a document-by-document privilege log for documents withheld from these three files should not impose an undue burden.  Accordingly, Kaye Scholer is ordered to produce a document-by-document privilege log for documents withheld from the three files it agreed to search.

## V. CONCLUSION

For the reasons set forth above, it is ordered as follows:

1. Farhad Larian is in substantial compliance with Mattel's subpoena with respect to all of the requests, except Nos. 23, 24 and 41.  Request Nos. 23, 24 and 41 are overbroad, unduly burdensome, cumulative, harassing and invade the right of privacy of Farhad Larian and his family.  Therefore, Mattel's motion to compel Farhad Larian to produce documents in response to the subpoena is denied.

2. Farhad Larian shall produce a document-by-document privilege log to Mattel no later than January 30, 2008.

3. Farhad Larian's request for sanctions against Mattel is denied.

4. Mattel's subpoena to Kaye Scholer is overbroad, unduly burdensome and cumulative.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

Exhibit 31
Page _____ 188

1    Therefore, Mattel's motion to compel Kaye Scholer to produce documents responsive to the

2    subpoena is denied.  Instead, Kaye Scholer is ordered to abide by its agreement to review its

3    pleading files, discovery files, and arbitration exhibits for documents responsive to all of Mattel's

4    requests, except Request Nos. 1-3, 6 and 10.  Kaye Scholer shall produce responsive documents

5    no later than January 30, 2008.

6         5. Kaye Scholer shall also produce a document-by-document privilege log identifying all

7    documents withheld from its pleading files, discovery files, and arbitration exhibits, no later than

8    January 30, 2008.

9         6. Mattel shall abide by its agreement to reimburse Farhad Larian and Kaye Scholer for

10   their copying costs.

11        7. Isaac Larian is granted an extension of time to comply with Request Nos. 123-125.

12   Isaac Larian shall deliver documents responsive to these requests to Mattel no later than 12:00

13   p.m. on January 25, 2008.

14        8. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

15   Master, Mattel shall file this Order with the Clerk of Court forthwith.

16

17   Dated: January 25, 2008                    /s/Edward A. Infante

18                                          HON. EDWARD A. INFANTE (Ret.)
                                                Discovery Master

19

20

21

22

23

24

25

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

Exhibit 31
Page ___189___                    20

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2008, I served

the attached ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SHOLER

AND STERN & GOLDBERG TO PRODUCE DOCUMENTS in the within action by email addressed

as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Patricia Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgentaler@chrisglase.com |
| Alan N. Goldberg, Esq. | Stern & Goldberg | agoldberg@sgattys.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| Bryant S. Delgadillo, Esq. | Kaye Scholer | bdelgadi@kayscholer.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above

is true and correct.

Executed on January 25, 2008, at San Francisco, California.

_Sandra Chan_
Sandra Chan

Exhibit 31
Page ___190___

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 32**

EXHIBIT TO:      DECLARATION OF LARRY MCFARLAND IN SUPPORT OF
ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S,
AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S
EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF
ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE
CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA
MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE
SCHEDULING ORDER

## DECLARATION OF ANAELISE CLOONAN

I, Anaelise Cloonan, hereby declare as follows:

1. I submit this declaration in support of non-parties Margaret Hatch-Leahy's, Elise Cloonan's and Veronica Marlow's opposition to Mattel's Ex Parte Application to (1) Compel Production of Electronic Media from Third-Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow or (2) in the Alternative, Modify the Scheduling Order.

2. The Zip disk that had the word "Bratz" hand written on the label, which I produced in this litigation, is my property and was used with my personal computer in my home.

3. It is my practice generally to re-use and recycle Zip disks.   Therefore, Zip disks that are used with my personal computer may contain various types of files and documents, including files and documents that are likely to contain personal matters.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct and that this declaration was executed in San Pedro, California.

Dated: January 25, 2008

Anaelise Cloonan

Exhibit 32
Page _____ 191

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Carter Bryant v. Mattel Inc.**
Case No.: CV 04 – 09049 SGL (RNBx)
Consolidated with Case Nos.
CV 04-9059 and CV 05-2727
Hon. Stephen G. Larson

# **EXHIBIT 33**

EXHIBIT TO:    DECLARATION OF LARRY MCFARLAND IN SUPPORT OF
ANA ELISE CLOONAN'S, MARGARET HATCH-LEAHY'S,
AND VERONICA MARLOW'S OPPOSITION TO MATTEL'S
EX PARTE APPLICATION TO (1) COMPEL PRODUCTION OF
ELECTRONIC MEDIA FROM THIRD-PARTIES ELISE
CLOONAN, MARGARET HATCH-LEAHY, AND VERONICA
MARLOW OR (2) IN THE ALTERNATIVE, MODIFY THE
SCHEDULING ORDER

1 | Stephen G. Contopulos (SBN 050317)
Gregory S. Taylor (SBN 229437)
2 | SIDLEY AUSTIN BROWN & WOOD LLP
555 West Fifth Street, Suite 4000
3 | Los Angeles, California 90013-1010
Telephone: (213) 896-6000
4 | Facsimile:  (213) 896-6600

5 | **Attorneys For Veronica Marlow**

6

7

8 |                **UNITED STATES DISTRICT COURT**

9 |               **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | MATTEL, INC.,                          ) Case No. CV 04-9059 NM (RNBx)
                                          )
12 |              Plaintiff.               )
                                          ) Assigned to:
13 |      v.                               )
                                          ) **VERONICA MARLOW'S**
14 |                                       ) **AMENDED OBJECTIONS AND**
     CARTER BRYANT, an individual;        ) **RESPONSES TO SUBPOENA**
15 | and DOES 1 through 10, inclusive,     )
                                          )
16 |              Defendants.              )
                                          )
17 |

18

19

20

21

22

23

24

25

26

27

28

LAI 669187v.2

---

**VERONICA MARLOW'S AMENDED OBJECTIONS
AND RESPONSES TO SUBPOENA**

Exhibit 33
Page _____ 192

1    Veronica Marlow ("Marlow") hereby objects and responds to Plaintiff

2  Mattel Inc.'s Subpoena as follows. These amended objections and responses

3  supersede the objections and responses served by Marlow on April 15, 2005.

4           **PRELIMINARY STATEMENT AND RESERVATION OF RIGHTS**

5          Marlow is not a party to the above-entitled action. Marlow is not

6  permitted to conduct discovery in this action and has not completed an investigation

7  of the facts related to this action. Consequently, the following responses are given

8  without prejudice to Marlow's right to amend or supplement her objections and

9  responses herein, if necessary, at a later date. Except for those facts expressly

10  admitted herein, no admissions of any nature whatsoever are implied or should be

11  inferred. Furthermore, Marlow's responses are not to be construed as admissions that

12  any of the requested documents exist or that any contentions or assumptions in the

13  Requests, whether implicit or explicit, are correct.

14          1.    The general objections set forth below apply to each and every

15  matter on which documents and examination are requested as set forth in Exhibit A to

16  the Subpoena; Marlow's specific responses to the requests are therefore subject to

17  these general objections regardless of whether the general objections are specifically

18  identified or not.

19          2.    The following General Objections apply to each of the Requests

20  and are incorporated by reference in each of the specified responses set forth below, as

21  though fully set forth therein. The failure to mention one of the following objections

22  in any of the specific responses to the Requests set forth below shall not be deemed a

23  waiver or limitation of any such objection.

24          3.    Marlow objects to each Request to the extent that it violates her

25  United States and California constitutional, statutory and common law rights of

26  privacy in her financial and confidential information.

27

28  LA1 669187v.2                         2

Exhibit 33
Page ____ 193

1      4.    Marlow objects to Mattel's "Definitions" and "Instructions" to the

2    extent that they seek to impose obligations on Marlow beyond those required by the

3    Federal Rules of Civil Procedure or the Local Rules of this Court.

4      5.    Marlow objects to each Request to the extent that it seeks the

5    production of documents beyond those required to be produced by the Federal Rules

6    of Civil Procedure or the Local Rules of this Court.

7      6.    Marlow objects to each Request to the extent that it seeks

8    documents protected by the attorney-client privilege, attorney work product doctrine,

9    joint defense privilege, common interest privilege or any other applicable privilege or

10   doctrine.  To the extent that any document falling within the scope of any applicable

11   privilege or doctrine is inadvertently disclosed in responding to any Request, such

12   disclosure does not constitute a waiver or limitation of the applicable privilege. Any

13   discovery resulting in such disclosure should be returned to Marlow upon demand and

14   without any waiver of any kind.

15     7.    Marlow objects to each Request to the extent that it seeks the

16   production of documents containing information of a confidential, competitively

17   sensitive, proprietary, or trade secret nature pertaining to Marlow or to any third

18   parties to whom she may have a confidentiality obligation (collectively, "Confidential

19   Information").

20     8.    Marlow objects to each and every document request that utilizes

21   the defined terms YOU or YOUR as being vague, ambiguous, overly broad and

22   unduly burdensome, particularly given Marlow's status as a non-party. The breadth of

23   Mattel's Requests is underscored by Mattel's attempt to include in the definition of

24   the terms YOU and YOUR "any other PERSON acting on YOUR behalf, pursuant to

25   YOUR authority or subject to YOUR control."  Marlow will respond as though YOU

26   and YOUR refer to Marlow and to Marlow only.

27

28   LA1 669187v.2

3

**VERONICA MARLOW'S AMENDED OBJECTIONS
AND RESPONSES TO SUBPOENA**

Exhibit 33
Page ___194___

1    9.    Marlow objects to each and every document request that utilizes

2  the defined term BRYANT as encompassing "any other PERSON acting on his

3  behalf, pursuant to his authority or subject to his control." Given that this phrase is

4  vague, ambiguous, overly broad and unduly burdensome, Marlow will respond as

5  though BRYANT refers to Bryant and to Bryant only.

6    10.    Marlow objects to each and every Request that utilizes the defined

7  term REFER OR RELATE TO on the grounds that such phrase is vague, ambiguous,

8  overly broad, unduly burdensome and may be read to encompass information not

9  relevant to any claim or defense in this action nor reasonably calculated to lead to the

10  discovery of admissible evidence.

11    11.    Marlow objects to each and every Request that utilizes the defined

12  term DESIGNS as being vague, ambiguous, overly broad, unduly burdensome, not

13  relevant to any claim or defense in this action nor reasonably calculated to lead to the

14  discovery of admissible evidence, and requiring the production of Confidential

15  Information.

16    12.    Marlow objects to each and every document request that utilizes

17  the defined terms DOCUMENT, WRITINGS or RECORDINGS as being vague,

18  ambiguous and overly burdensome, including, without limitation, Mattel's attempt to

19  require production of "drafts." Marlow also objects to any Request that utilizes these

20  terms to the extent such Request seeks documents protected by the attorney client

21  privilege, the joint defense privilege, the common interest privilege, the attorney work

22  product doctrine or any other similar privilege or protection. Marlow further objects

23  to each and every document request that utilizes the defined terms DOCUMENT,

24  WRITINGS or RECORDINGS to the extent that it seeks documents beyond those

25  required to be produced by the Federal Rules of Civil Procedure or the Local Rules of

26  this Court.

27

28

LA1 669187v.2

4

**VERONICA MARLOW'S AMENDED OBJECTIONS**
**AND RESPONSES TO SUBPOENA**

Exhibit 33
Page ____ 195

13.     Marlow objects to each and every document request that utilizes the defined terms COMMUNICATION or COMMUNICATIONS to the extent that it refers to "any disclosure, transfer or exchange of information between two or more PERSONS" as vague and indefinite.  Marlow also objects to any Request that utilizes these terms to the extent such Request seeks documents protected by the attorney client privilege, the joint defense privilege, the common interest privilege, the attorney work product doctrine or any other similar privilege or protection.

14.     Marlow objects to each and every document request that utilizes the defined terms PERSON or PERSONS as being vague, ambiguous, overly broad and unduly burdensome, particularly as to the phrase "any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control." Marlow will respond as though PERSON and PERSONS refer to the specified individual(s) only.

15.     Marlow objects to each and every Request that seeks documents from Marlow that also may be in the possession of a party to this litigation.

## PRODUCTION UNDER PROTECTIVE ORDER

Notwithstanding the general objections asserted above and incorporated by reference in each specific response below for their preservation for the record, Marlow will not withhold any nonprivileged documents on the basis of those objections.  All items or documents produced pursuant to this subpoena are produced under the Stipulated Protective Order entered into by the parties and signed by Magistrate Robert N. Block on January 4, 2005.  This production will be done without prejudice to the confidential nature of any document produced or waiver any of the objections asserted.

5

**VERONICA MARLOW'S AMENDED OBJECTIONS
AND RESPONSES TO SUBPOENA**

Exhibit 33
Page _____ 196

## RESPONSES TO DOCUMENT REQUESTS

**REQUEST NO. 1**

All DOCUMENTS REFERRING OR RELATING TO BRATZ any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted), including without limitation any work or services performed by YOU or any other PERSON on BRATZ prior to January 1, 2001.

**RESPONSE TO REQUEST NO. 1**

Marlow refers to and incorporates herein the General Objections set forth above. Marlow will make available for inspection at a mutually convenient time any responsive documents in her custody or control.

**REQUEST NO. 2**

All DOCUMENTS REFERRING OR RELATING TO ANGEL, including without limitation any work or services performed by YOU or any other PERSON on ANGEL.

**RESPONSE TO REQUEST NO. 2**

Marlow refers to and incorporates herein the General Objections set forth above. Marlow will make available for inspection at a mutually convenient time any responsive documents in her custody or control.

**REQUEST NO. 3**

All DOCUMENTS REFERRING OR RELATING TO PRAYER ANGELS, including without limitation any work or services performed by YOU or any other PERSON on PRAYER ANGELS.

**RESPONSE TO REQUEST NO. 3**

Marlow refers to and incorporates herein the General Objections set forth above. Marlow will make available for inspection at a mutually convenient time any responsive documents in her custody or control.

LA1 669187v.2

6

Exhibit 33
Page _____ 197

**REQUEST NO. 4**

All DOCUMENTS REFERRING OR RELATING TO any agreements or contracts REFERRING OR RELATING TO BRATZ, ANGEL and/or PRAYER ANGELS between YOU and any PERSON.

**RESPONSE TO REQUEST NO. 4**

Marlow refers to and incorporates herein the General Objections set forth above. Marlow will make available for inspection at a mutually convenient time any responsive documents in her custody or control.

**REQUEST NO. 5**

All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted).

**RESPONSE TO REQUEST NO. 5**

Marlow refers to and incorporates herein the General Objections set forth above. Marlow will make available for inspection at a mutually convenient time any responsive documents in her custody or control.

**REQUEST NO. 6**

All DOCUMENTS REFERRING OR RELATING TO Anna Rhee any time prior to January 1, 2001 (regardless of when such DOCUMENT was created, written, received or transmitted).

**RESPONSE TO REQUEST NO. 6**

Marlow refers to and incorporates herein the General Objections set forth above. Marlow will make available for inspection at a mutually convenient time any responsive documents in her custody or control.

LA1 669187v.2

7

Exhibit 33
Page ___198___

1   **REQUEST NO. 7**

2           All DOCUMENTS, including without limitation phone records,

3   REFERRING OR RELATING TO COMMUNICATIONS between Anna Rhee, on

4   the one hand, and YOU, MGA and/or CARTER BRYANT prior to January 1, 2001.

5   **RESPONSE TO REQUEST NO. 7**

6           Marlow refers to and incorporates herein the General Objections set forth

7   above.  Marlow will make available for inspection at a mutually convenient time any

8   responsive documents in her custody or control.

9   **REQUEST NO. 8**

10          All DOCUMENTS REFERRING OR RELATING TO this litigation.

11  **RESPONSE TO REQUEST NO. 8**

12          Marlow refers to and incorporates herein the General Objections set forth

13  above.  Marlow has conducted a diligent search and a reasonable inquiry in an effort

14  to comply with this request and no responsive, nonprivileged documents are in the

15  possession, custody or control of Marlow.

16  **REQUEST NO. 9**

17          All DOCUMENTS REFERRING OR RELATING TO any work or

18  services that YOU performed for on behalf of any competitor of MATTEL, including

19  without limitation MGA, during the term of YOUR MATTEL employment.

20  **RESPONSE TO REQUEST NO. 9**

21          Marlow refers to and incorporates herein the General Objections set forth

22  above.  Marlow has no documents responsive to this request.

23  **REQUEST NO. 10**

24          All DOCUMENTS REFERRING OR RELATING TO any

25  COMMUNICATIONS between YOU and MGA during the term of YOUR MATTEL

26  employment.

27

28  LA1 669187v.2

**VERONICA MARLOW'S AMENDED OBJECTIONS
AND RESPONSES TO SUBPOENA**

Exhibit 33
Page _____ 199

1  **RESPONSE TO REQUEST NO. 10**

2        Marlow refers to and incorporates herein the General Objections set forth

3  above.  Marlow has no documents responsive to this request.

4  **REQUEST NO. 11**

5        All doll heads, sculpts, prototypes, models, samples, molds and tangible

6  items that were created, prepared or made, whether in whole or in part, prior to

7  January 1, 2001 that REFER OR RELATE TO BRATZ.

8  **RESPONSE TO REQUEST NO. 11**

9        Marlow refers to and incorporates herein the General Objections set forth

10  above.  Marlow will make available for inspection at a mutually convenient time any

11  responsive documents in her custody or control.

12  **REQUEST NO. 12**

13        All doll heads, sculpts, prototypes, models, samples, molds and tangible

14  items that REFER OR RELATE TO ANGEL and/or PRAYER ANGELS.

15  **RESPONSE TO REQUEST NO. 12**

16        Marlow refers to and incorporates herein the General Objections set forth

17  above.  Marlow will make available for inspection at a mutually convenient time any

18  responsive documents in her custody or control.

19  Dated: May 12, 2005          Respectfully submitted,

20                    SIDLEY AUSTIN BROWN & WOOD LLP

21                    Stephen G. Contopulos
                  Gregory S. Taylor

22

23           By:

24               Gregory S. Taylor

25           Attorneys for Veronica Marlow

26

27

28  LA1 669187v.2

                9

Exhibit 33

Page _____ 200

1                                    **PROOF OF SERVICE**

2    STATE OF CALIFORNIA           )
                                   )  ss
3    COUNTY OF LOS ANGELES         )

4              I am employed in the County of Los Angeles, State of California. I am over the age

5    of 18 years and not a party to the within action. My business address is 555 West Fifth Street, Suite

6    4000, Los Angeles, California 90013-1010.

7              On May 12, 2005, I served the foregoing document(s) described as **VERONICA**

8    **MARLOW'S AMENDED OBJECTIONS AND RESPONSES TO SUBPOENA** on all interested

9    parties in this action as follows (or as on the attached service list):

10   ☒    (VIA U.S. MAIL) I served the foregoing document(s) by U.S. Mail, as follows: I placed true
     copies of the document(s) in a sealed envelope addressed to each interested party as shown above. I
11   placed each such envelope with postage thereon fully prepaid, for collection and mailing at Sidley
     Austin Brown & Wood LLP, Los Angeles, California. I am readily familiar with Sidley Austin
12   Brown & Wood LLP's practice for collection and processing of correspondence for mailing with the
     United States Postal Service. Under that practice, the correspondence would be deposited in the
13   United States Postal Service on that same day in the ordinary course of business.

14   ☐    (VIA EXPRESS MAIL) I served the foregoing document(s) by Express Mail, as follows: I
     placed true copies of the document(s) in a sealed envelope addressed to each interested party as
15   shown above. I placed each such envelope, with Express Mail postage thereon fully prepaid, for
     collection and mailing at Sidley Austin Brown & Wood LLP, Los Angeles, California. I am readily
16   familiar with Sidley Austin Brown & Wood LLP's practice for collection and processing of Express
     Mail for mailing with the United States Postal Service. Under that practice, the Express Mail would
17   be delivered to an authorized courier or dealer authorized by Express Mail to receive document(s) in
     the United States Postal Service on that same day in the ordinary course of business.
18

19             I declare under penalty of perjury under the laws of the State of California that the

20   foregoing is true and correct.

21

22             Executed on May 12, 2005, at Los Angeles, California.

23

24                                                        Patricia T. Ratliff

25

26

27

28

LA1 664239v.1

Exhibit 33
Page _____ 201

1

2

## **SERVICE LIST**

3

Douglas A. Wickham
Keith Jacoby Littler Mendelson

4

A Professional Corporation
2049 Century Park East, 5th Floor

5

Los Angeles, CA  90067-3107
Tel:  (310) 553-0308

6

Fax: (310) 553-5583

Michael T. Zeller
Quinn Emanuel Urquhart
    Oliver & Hedges, LLP
865 South Figueroa St., 10th Floor
Los Angeles, CA  90017-2543
Tel:  (213) 443-3000
Fax: (213) 443-3100

7

Diana M. Torres
Paula E. Ambrosini

8

O'Melveny & Myers LLP
400 South Hope Street

9

Los Angeles, CA  90071
Tel:  (213) 430-6000

10

Fax: (213) 430-6407

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

LA1 664239v.1

Exhibit 33
Page ____ ∂O𝛾

1  Stephen G. Contopulos (SBN 050317)
   Gregory S. Taylor (SBN 229437)
2  SIDLEY AUSTIN BROWN & WOOD LLP
   555 West Fifth Street, Suite 4000
3  Los Angeles, California 90013-1010
   Telephone: (213) 896-6000
4  Facsimile:  (213) 896-6600

5  Attorneys For Margaret Hatch-Leahy

6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC.,                        )  Case No. CV 04-9059 NM (RNBx)
                                         )
12          Plaintiff.                   )
                                         )  Assigned to:
13      v.                               )
                                         )  MARGARET HATCH-LEAHY'S
14                                       )  AMENDED OBJECTIONS AND
    CARTER BRYANT, an individual;        )  RESPONSES TO SUBPOENA
15  and DOES 1 through 10, inclusive,    )
                                         )
16          Defendants.                  )
                                         )
17  ─────────────────────────────────

18

19

20

21

22

23

24

25

26

27

28
─────────────────────────────────────────────
        MARGARET HATCH-LEAHY'S AMENDED OBJECTIONS
              AND RESPONSES TO SUBPOENA

Exhibit 33
Page ___ 203

1     Margaret Hatch-Leahy ("Leahy") hereby objects and responds to Plaintiff

2  Mattel Inc.'s Subpoena as follows.  These amended objections and responses

3  supersede the objections and responses served by Leahy on April 15, 2005.

4           **PRELIMINARY STATEMENT AND RESERVATION OF RIGHTS**

5           Leahy is not a party to the above-entitled action.  Leahy is not permitted

6  to conduct discovery in this action and has not completed an investigation of the facts

7  related to this action.  Consequently, the following responses are given without

8  prejudice to Leahy's right to amend or supplement her objections and responses

9  herein, if necessary, at a later date.  Except for those facts expressly admitted herein,

10 no admissions of any nature whatsoever are implied or should be inferred.

11 Furthermore, Leahy's responses are not to be construed as admissions that any of the

12 requested documents exist or that any contentions or assumptions in the Requests,

13 whether implicit or explicit, are correct.

14                        **GENERAL OBJECTIONS**

15     1.    The general objections set forth below apply to each and every

16 matter on which documents and examination are requested as set forth in Exhibit A to

17 the Subpoena; Leahy's specific responses to the requests are therefore subject to these

18 general objections regardless of whether the general objections are specifically

19 identified or not.

20     2.    The following General Objections apply to each of the Requests

21 and are incorporated by reference in each of the specified responses set forth below, as

22 though fully set forth therein.  The failure to mention one of the following objections

23 in any of the specific responses to the Requests set forth below shall not be deemed a

24 waiver or limitation of any such objection.

25     3.    Leahy objects to each Request to the extent that it violates her

26 United States and California constitutional, statutory and common law rights of

27 privacy in her financial and confidential information.

28

2

**MARGARET HATCH-LEAHY'S AMENDED OBJECTIONS**
**AND RESPONSES TO SUBPOENA**

Exhibit 33
Page  204

1         4.     Leahy objects to Mattel's "Definitions" and "Instructions" to the

2    extent that they seek to impose obligations on Leahy beyond those required by the

3    Federal Rules of Civil Procedure or the Local Rules of this Court.

4         5.     Leahy objects to each Request to the extent that it seeks the

5    production of documents beyond those required to be produced by the Federal Rules

6    of Civil Procedure or the Local Rules of this Court.

7         6.     Leahy objects to each Request to the extent that it seeks documents

8    protected by the attorney-client privilege, attorney work product doctrine, joint

9    defense privilege, common interest privilege or any other applicable privilege or

10   doctrine.  To the extent that any document falling within the scope of any applicable

11   privilege or doctrine is inadvertently disclosed in responding to any Request, such

12   disclosure does not constitute a waiver or limitation of the applicable privilege.  Any

13   discovery resulting in such disclosure should be returned to Leahy upon demand and

14   without any waiver of any kind.

15        7.     Leahy objects to each Request to the extent that it seeks the

16   production of documents containing information of a confidential, competitively

17   sensitive, proprietary, or trade secret nature pertaining to Leahy or to any third parties

18   to whom she may have a confidentiality obligation (collectively, "Confidential

19   Information").

20        8.     Leahy objects to each and every document request that utilizes the

21   defined terms YOU or YOUR as being vague, ambiguous, overly broad and unduly

22   burdensome, particularly given Leahy's status as a non-party.  The breadth of Mattel's

23   Requests is underscored by Mattel's attempt to include in the definition of the terms

24   YOU and YOUR "any other PERSON acting on YOUR behalf, pursuant to YOUR

25   authority or subject to YOUR control."  Leahy will respond as though YOU and

26   YOUR refer to Leahy and to Leahy only.

27

28

3

**MARGARET HATCH-LEAHY'S AMENDED OBJECTIONS
AND RESPONSES TO SUBPOENA**

Exhibit 33
Page ___205___

1         9.    Leahy objects to each and every document request that utilizes the

2  defined term BRYANT as encompassing "any other PERSON acting on his behalf,

3  pursuant to his authority or subject to his control." Given that this phrase is vague,

4  ambiguous, overly broad and unduly burdensome, Leahy will respond as though

5  BRYANT refers to Bryant and to Bryant only.

6         10.    Leahy objects to each and every Request that utilizes the defined

7  term REFER OR RELATE TO on the grounds that such phrase is vague, ambiguous,

8  overly broad, unduly burdensome and may be read to encompass information not

9  relevant to any claim or defense in this action nor reasonably calculated to lead to the

10  discovery of admissible evidence.

11         11.    Leahy objects to each and every Request that utilizes the defined

12  term DESIGNS as being vague, ambiguous, overly broad, unduly burdensome, not

13  relevant to any claim or defense in this action nor reasonably calculated to lead to the

14  discovery of admissible evidence, and requiring the production of Confidential

15  Information.

16         12.    Leahy objects to each and every document request that utilizes the

17  defined terms DOCUMENT, WRITINGS or RECORDINGS as being vague,

18  ambiguous and overly burdensome, including, without limitation, Mattel's attempt to

19  require production of "drafts." Leahy also objects to any Request that utilizes these

20  terms to the extent such Request seeks documents protected by the attorney client

21  privilege, the joint defense privilege, the common interest privilege, the attorney work

22  product doctrine or any other similar privilege or protection. Leahy further objects to

23  each and every document request that utilizes the defined terms DOCUMENT,

24  WRITINGS or RECORDINGS to the extent that it seeks documents beyond those

25  required to be produced by the Federal Rules of Civil Procedure or the Local Rules of

26  this Court.

27

28

4

1    13.    Leahy objects to each and every document request that utilizes the
2  defined terms COMMUNICATION or COMMUNICATIONS to the extent that it
3  refers to "any disclosure, transfer or exchange of information between two or more
4  PERSONS" as vague and indefinite.  Leahy also objects to any Request that utilizes
5  these terms to the extent such Request seeks documents protected by the attorney
6  client privilege, the joint defense privilege, the common interest privilege, the attorney
7  work product doctrine or any other similar privilege or protection.

8    14.    Leahy objects to each and every document request that utilizes the
9  defined terms PERSON or PERSONS as being vague, ambiguous, overly broad and
10 unduly burdensome, particularly as to the phrase "any one else acting on its, his or her
11 behalf, pursuant to its, his or her authority or subject to its, his or her control."  Leahy
12 will respond as though PERSON and PERSONS refer to the specified individual(s)
13 only.

14    15.    Leahy objects to each and every Request that seeks documents
15 from Leahy that also may be in the possession of a party to this litigation.

16              **PRODUCTION UNDER PROTECTIVE ORDER**

17         Notwithstanding the general objections asserted above and incorporated
18 by reference in each specific response below for their preservation for the record,
19 Leahy will not withhold any nonprivileged documents on the basis of those
20 objections.  All items or documents produced pursuant to this subpoena are produced
21 under the Stipulated Protective Order entered into by the parties and signed by
22 Magistrate Robert N. Block on January 4, 2005.  This production will be done without
23 prejudice to the confidential nature of any document produced or waiver any of the
24 objections asserted.

25
26
27
28

                                     5
              MARGARET HATCH-LEAHY'S AMENDED OBJECTIONS
                    AND RESPONSES TO SUBPOENA

Exhibit 33
Page _____  207

1    **RESPONSES TO DOCUMENT REQUESTS**

2    **REQUEST NO. 1**

3            All DOCUMENTS REFERRING OR RELATING TO BRATZ any time

4    prior to January 1, 2001 (regardless of when such DOCUMENT was created, written,

5    received or transmitted), including without limitation any work or services performed

6    by YOU or any other PERSON on BRATZ prior to January 1, 2001.

7    **RESPONSE TO REQUEST NO. 1**

8            Leahy refers to and incorporates herein the General Objections set forth

9    above.  Leahy will make available for inspection at a mutually convenient time any

10   responsive documents in her custody or control.

11   **REQUEST NO. 2**

12           All DOCUMENTS REFERRING OR RELATING TO ANGEL,

13   including without limitation any work or services performed by YOU or any other

14   PERSON on ANGEL, notwithstanding an agreement with Mattel's counsel that this

15   request would be limited to work or services performed prior to January 1, 2001,

16   which Mattel's counsel later retracted.

17   **RESPONSE TO REQUEST NO. 2**

18           Leahy refers to and incorporates herein the General Objections set forth

19   above.  Leahy will make available for inspection at a mutually convenient time any

20   responsive documents in her custody or control.

21   **REQUEST NO. 3**

22           All DOCUMENTS REFERRING OR RELATING TO PRAYER

23   ANGELS, including without limitation any work or services performed by YOU or

24   any other PERSON on PRAYER ANGELS.

25   **RESPONSE TO REQUEST NO. 3**

26           Leahy refers to and incorporates herein the General Objections set forth

27   above.  Leahy will make available for inspection at a mutually convenient time any

28

6

MARGARET HATCH-LEAHY'S AMENDED OBJECTIONS
AND RESPONSES TO SUBPOENA



Exhibit 33
Page ___ 208

1  responsive documents in her custody or control, notwithstanding an agreement with

2  Mattel's counsel that this request would be limited to work or services performed

3  prior to January 1, 2001, which Mattel's counsel later retracted.

4  **REQUEST NO. 4**

5         All DOCUMENTS REFERRING OR RELATING TO any agreements

6  or contracts REFERRING OR RELATING TO BRATZ, ANGEL and/or PRAYER

7  ANGELS between YOU and any PERSON.

8  **RESPONSE TO REQUEST NO. 4**

9         Leahy refers to and incorporates herein the General Objections set forth

10  above. Leahy will make available for inspection at a mutually convenient time any

11  responsive documents in her custody or control.

12  **REQUEST NO. 5**

13         All DOCUMENTS REFERRING OR RELATING TO CARTER

14  BRYANT any time prior to January 1, 2001 (regardless of when such DOCUMENT

15  was created, written, received or transmitted).

16  **RESPONSE TO REQUEST NO. 5**

17         Leahy refers to and incorporates herein the General Objections set forth

18  above. Leahy will make available for inspection at a mutually convenient time any

19  responsive documents in her custody or control.

20  **REQUEST NO. 6**

21         All DOCUMENTS REFERRING OR RELATING TO Anna Rhee any

22  time prior to January 1, 2001 (regardless of when such DOCUMENT was created,

23  written, received or transmitted).

24  **RESPONSE TO REQUEST NO. 6**

25         Leahy refers to and incorporates herein the General Objections set forth

26  above. Leahy will make available for inspection at a mutually convenient time any

27  responsive documents in her custody or control.

28

**MARGARET HATCH-LEAHY'S AMENDED OBJECTIONS
AND RESPONSES TO SUBPOENA**

Exhibit 33
Page ___ 209

1  **REQUEST NO. 7**

2          All DOCUMENTS, including without limitation phone records,

3  REFERRING OR RELATING TO COMMUNICATIONS between Anna Rhee, on

4  the one hand, and YOU, MGA and/or CARTER BRYANT prior to January 1, 2001.

5  **RESPONSE TO REQUEST NO. 7**

6          Leahy refers to and incorporates herein the General Objections set forth

7  above.  Leahy has conducted a diligent search and a reasonable inquiry in an effort to

8  comply with this request and no responsive documents are in the possession, custody

9  or control of Leahy.

10  **REQUEST NO. 8**

11          All DOCUMENTS REFERRING OR RELATING TO this litigation.

12  **RESPONSE TO REQUEST NO. 8**

13          Leahy refers to and incorporates herein the General Objections set forth

14  above.  Leahy has conducted a diligent search and a reasonable inquiry in an effort to

15  comply with this request and no responsive, nonprivileged documents are in the

16  possession, custody or control of Leahy.

17  **REQUEST NO. 9**

18          All DOCUMENTS REFERRING OR RELATING TO any work or

19  services that YOU performed for or on behalf of any competitor of MATTEL,

20  including without limitation MGA, during the term of YOUR MATTEL employment.

21  **RESPONSE TO REQUEST NO. 9**

22          Leahy refers to and incorporates herein the General Objections set forth

23  above.  Leahy has no documents responsive to this request.

24  **REQUEST NO. 10**

25          All DOCUMENTS REFERRING OR RELATING TO any

26  COMMUNICATIONS between YOU and MGA during the term of YOUR MATTEL

27  employment.

28

8

MARGARET HATCH-LEAHY'S AMENDED OBJECTIONS<br>AND RESPONSES TO SUBPOENA

Exhibit 33

Page ___ 2\O

1  **RESPONSE TO REQUEST NO. 10**

2          Leahy refers to and incorporates herein the General Objections set forth

3  above.  Leahy has no documents responsive to this request.

4  **REQUEST NO. 11**

5          All doll heads, sculpts, prototypes, models, samples, molds and tangible

6  items that were created, prepared or made, whether in whole or in part, prior to

7  January 1, 2001 that REFER OR RELATE TO BRATZ.

8  **RESPONSE TO REQUEST NO. 11**

9          Leahy refers to and incorporates herein the General Objections set forth

10  above.  Leahy will make available for inspection at a mutually convenient time any

11  responsive items in her custody or control.

12  **REQUEST NO. 12**

13          All doll heads, sculpts, prototypes, models, samples, molds and tangible

14  items that REFER OR RELATE TO ANGEL and/or PRAYER ANGELS.

15  **RESPONSE TO REQUEST NO. 12**

16          Leahy refers to and incorporates herein the General Objections set forth

17  above.  Leahy will make available for inspection at a mutually convenient time any

18  responsive items in her custody or control.

19  Dated:  May 12, 2005                    Respectfully submitted,

20                                          SIDLEY AUSTIN BROWN & WOOD LLP
                                            Stephen G. Contopulos
21                                          Gregory S. Taylor

22

23                                          By:
24                                              Gregory S. Taylor

25                                          Attorneys for Margaret Hatch-Leahy

26

27

28                                          9

LA1 669196v.3

Exhibit 33
Page _____ 211

1

**PROOF OF SERVICE**

2    STATE OF CALIFORNIA        )
                                  )  ss
3    COUNTY OF LOS ANGELES      )

4              I am employed in the County of Los Angeles, State of California.  I am over the age

5    of 18 years and not a party to the within action.  My business address is 555 West Fifth Street, Suite

6    4000, Los Angeles, California 90013-1010.

7              On May 12, 2005, I served the foregoing document(s) described as **MARGARET**

8    **HATCH-LEAHY'S AMENDED OBJECTIONS AND RESPONSES TO SUBPOENA** on all

9    interested parties in this action as follows (or as on the attached service list):

10   ☒    (VIA U.S. MAIL) I served the foregoing document(s) by U.S. Mail, as follows:  I placed true
     copies of the document(s) in a sealed envelope addressed to each interested party as shown above.  I
11   placed each such envelope with postage thereon fully prepaid, for collection and mailing at Sidley
     Austin Brown & Wood LLP, Los Angeles, California.  I am readily familiar with Sidley Austin
12   Brown & Wood LLP's practice for collection and processing of correspondence for mailing with the
     United States Postal Service.  Under that practice, the correspondence would be deposited in the
13   United States Postal Service on that same day in the ordinary course of business.

14   ☐    (VIA EXPRESS MAIL) I served the foregoing document(s) by Express Mail, as follows:  I
     placed true copies of the document(s) in a sealed envelope addressed to each interested party as
15   shown above.  I placed each such envelope, with Express Mail postage thereon fully prepaid, for
     collection and mailing at Sidley Austin Brown & Wood LLP, Los Angeles, California.  I am readily
16   familiar with Sidley Austin Brown & Wood LLP's practice for collection and processing of Express
     Mail for mailing with the United States Postal Service.  Under that practice, the Express Mail would
17   be delivered to an authorized courier or dealer authorized by Express Mail to receive document(s) in
     the United States Postal Service on that same day in the ordinary course of business.
18

19             I declare under penalty of perjury under the laws of the State of California that the

20   foregoing is true and correct.

21

22             Executed on May 12, 2005, at Los Angeles, California.

23

24                                              Patricia T. Ratliff

25

26

27

28

LA1 664239v.1

Exhibit 33
Page ___

1

## **SERVICE LIST**

2

3    Douglas A. Wickham                          Michael T. Zeller
     Keith Jacoby Littler Mendelson              Quinn Emanuel Urquhart
4    A Professional Corporation                       Oliver & Hedges, LLP
     2049 Century Park East, 5th Floor           865 South Figueroa St., 10th Floor
5    Los Angeles, CA  90067-3107                 Los Angeles, CA  90017-2543
     Tel: (310) 553-0308                         Tel: (213) 443-3000
6    Fax: (310) 553-5583                         Fax: (213) 443-3100

7    Diana M. Torres
     Paula E. Ambrosini
8    O'Melveny & Myers LLP
     400 South Hope Street
9    Los Angeles, CA  90071
     Tel: (213) 430-6000
10   Fax: (213) 430-6407

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                               2

LA1 664239v.1

Exhibit 33
Page ___213___

1  Larry McFarland (Bar No. 129668)
   Ellie Schwimmer (Bar No. 221522)
2  KEATS, McFARLAND & WILSON LLP
   9720 Wilshire Blvd.
3  Penthouse Suite
   Beverly Hills, CA 90212
4  Telephone:  (310) 248-3830
   Facsimile:   (310) 860-0363
5  Emails:  lmcfarland@kmwlaw.com
           eschwimmer@kmwlaw.com
6
7  Attorneys for
   Ana Elise Cloonan and
8  Margaret Hatch-Leahy
9
10              UNITED STATES DISTRICT COURT
11             CENTRAL DISTRICT OF CALIFORNIA
12                    EASTERN DIVISION
13  CARTER BRYANT, an individual,         Case No.: CV 04 – 09049 SGL (RNBx)
14                                         
                 Plaintiff,                Consolidated with Case Nos.
15        v.                               CV 04-9059 and CV 05-2727
16
    MATTEL, INC., a Delaware corporation;  ANA ELISE CLOONAN'S
17                                          RESPONSES AND OBJECTIONS TO
                 Defendant.                 MATTEL'S SUBPOENA FOR
18                                          PRODUCTION OF DOCUMENTS
19
20  AND RELATED ACTIONS.
21
22
23
24
25
26
27
28

Exhibit 33
Page ___214

1    Ana Elise Cloonan ("Cloonan") hereby objects to the Requests for Production

2  ("Requests") made by Mattel, Inc. ("Mattel") in its third-party subpoena on Cloonan (the

3  "Cloonan Subpoena").

4    **PRELIMINARY STATEMENT AND RESERVATION OF RIGHTS**

5    Cloonan is not a party to the above-entitled action.  Cloonan is not permitted to

6  conduct discovery in this action and has not completed an investigation of the facts

7  related to this action. Consequently, the following responses are given without

8  prejudice to Cloonan's right to amend or supplement her objections and responses

9  herein, if necessary, at a later date.  Except for those facts expressly admitted herein,

10  no admissions of any nature whatsoever are implied or should be inferred.

11  Furthermore, Cloonan's responses are not to be construed as admissions that any of

12  the requested documents exist or that any contentions or assumptions in the Requests,

13  whether implicit or explicit, are correct.

14    Cloonan makes these responses and objections with waiving, or intending to

15  waive, her motion to quash the subpoena to which these responses are addressed.

16    **GENERAL OBJECTIONS**

17    1.    The following General Objections apply to each of the Requests and are

18  incorporated by reference in each of the specified responses set forth below, as though

19  fully set forth therein. The failure to mention one of the following objections in any of

20  the specific responses to the Requests set forth below shall not be deemed a waiver or

21  limitation of any such objection.

22    2.    Cloonan objects to each Request on the grounds that Mattel has not given

23  Cloonan a reasonable time for compliance with the Requests.

24    3.    Cloonan objects to each Request to the extent that it violates her United

25  States and California constitutional, statutory and common law rights of privacy in her

26  financial and confidential information.

27    4.    Cloonan objects to Mattel's "Definitions" and "Instructions" to the extent

28  that they seek to impose obligations on Cloonan beyond those required by the Federal

1 | Rules of Civil Procedure or the Local Rules of this Court.

2 |     5.    Cloonan objects to each Request to the extent that it seeks the production

3 | of documents beyond those required to be produced by the Federal Rules of Civil

4 | Procedure or the Local Rules of this Court.

5 |     6.    Cloonan objects to each Request to the extent that it seeks documents

6 | protected by the attorney-client privilege, attorney work product doctrine, joint

7 | defense privilege, common interest privilege or any other applicable privilege or

8 | doctrine. To the extent that any document falling within the scope of any applicable

9 | privilege or doctrine is inadvertently disclosed in responding to any Request, such

10 | disclosure does not constitute a waiver or limitation of the applicable privilege. Any

11 | discovery resulting in such disclosure should be returned to Cloonan upon demand

12 | and without any waiver of any kind.

13 |     7.    Cloonan objects to each Request to the extent that it seeks the production

14 | of documents containing information of a confidential, competitively sensitive,

15 | proprietary, or trade secret nature pertaining to Cloonan or to any third parties to

16 | whom she may have a confidentiality obligation (collectively, "Confidential

17 | Information"). Cloonan particularly objects to such each Request in the absence of a

18 | protective order adequately protecting against the improper disclosure or use of such

19 | Confidential Information.

20 |     8.    Cloonan objects to each and every document request that utilizes the

21 | defined terms YOU or YOUR as being vague, ambiguous, overly broad and unduly

22 | burdensome, particularly given Cloonan's status as a non-party. The breadth of

23 | Mattel's Requests is underscored by Mattel's attempt to include in the definition of

24 | the terms YOU and YOUR "any other PERSON acting on YOUR behalf, pursuant to

25 | YOUR authority or subject to YOUR control." Cloonan will respond as though YOU

26 | and YOUR refer to Cloonan and to Cloonan only.

27 |     9.    Cloonan objects to each and every document request that utilizes the

28 | defined term BRYANT as encompassing "any other PERSON acting on his behalf,

- 2 -

ANA ELISE CLOONAN'S RESPONSES
AND OBJECTIONS TO MATTEL'S SUBPOENA
FOR PRODUCTION OF DOCUMENTS

Exhibit 33
Page ____ 216

1    pursuant to his authority or subject to his control." Given that this phrase is vague,

2    ambiguous, overly broad and unduly burdensome, Cloonan will respond as though

3    BRYANT refers to Bryant and to Bryant only.

4        10.    Cloonan objects to each and every Request that utilizes the defined term

5    REFER OR RELATE TO on the grounds that such phrase is vague, ambiguous,

6    overly broad, unduly burdensome and may be read to encompass information not

7    relevant to any claim or defense in this action nor reasonably calculated to lead to the

8    discovery of admissible evidence.

9        11.    Cloonan objects to each and every Request that utilizes the defined term

10    DESIGNS as being vague, ambiguous, overly broad, unduly burdensome, not relevant

11    to any claim or defense in this action nor reasonably calculated to lead to the

12    discovery of admissible evidence, and requiring the production of Confidential

13    Information.

14        12.    Cloonan objects to each and every document request that utilizes the

15    defined terms DOCUMENT, WRITINGS or RECORDINGS as being vague,

16    ambiguous and overly burdensome, including, without limitation, Mattel's attempt to

17    require production of "drafts." Cloonan also objects to any Request that utilizes these

18    terms to the extent such Request seeks documents protected by the attorney client

19    privilege, the joint defense privilege, the common interest privilege, the attorney work

20    product doctrine or any other similar privilege or protection. Cloonan further objects

21    to each and every document request that utilizes the defined terms DOCUMENT,

22    WRITINGS or RECORDINGS to the extent that it seeks documents beyond those

23    required to be produced by the Federal Rules of Civil Procedure or the Local Rules of

24    this Court.

25        13.    Cloonan objects to each and every document request that utilizes the

26    defined terms COMMUNICATION or COMMUNICATIONS to the extent that it

27    refers to "any disclosure, transfer or exchange of information between two or more

28    PERSONS" as vague and indefinite. Cloonan also objects to any Request that utilizes

- 3 -

Exhibit 33
Page ___217___

1    these terms to the extent such Request seeks documents protected by the attorney

2    client privilege, the joint defense privilege, the common interest privilege, the attorney

3    work product doctrine or any other similar privilege or protection.

4         14.    Cloonan objects to each and every document request that utilizes the

5    defined terms PERSON or PERSONS as being vague, ambiguous, overly broad and

6    unduly burdensome, particularly as to the phrase "any one else acting on its, his or her

7    behalf, pursuant to its, his or her authority or subject to its, his or her control."

8    Cloonan will respond as though PERSON and PERSONS refer to the specified

9    individual(s) only.

10        15.    Cloonan objects to each and every Request that seeks documents from

11   Cloonan that also may be in the possession of a party to this litigation.

12        16.    Cloonan objects to each and every document request to the extent that

13   Mattel interprets such request to require Cloonan to turn over her personal Apple

14   computer or a copy of its hard drive to Mattel so as to allow Mattel to review all of its

15   contents.  Further, Cloonan's responses do not include any representation with respect

16   to what may or may not be found on the hard drive of her personal Apple computer.

17        17.    Cloonan's responses do not include any representations with respect to

18   records that Mattel has subpoenaed from Mattel Federal Credit Union which are the

19   subject to an agreement between Cloonan and counsel for Mattel.

20                     **SPECIFIC OBJECTIONS AND RESPONSES**

21   REQUEST FOR PRODUCTION NO. 1:

22        All DOCUMENTS REFERRING OR RELATING TO BRATZ any time prior

23   to December 31, 2001 (regardless of when such DOCUMENT was created, written,

24   received or transmitted), including without limitation any work or services performed

25   by YOU or any other PERSON on BRATZ prior to December 31, 2001.

26   RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

27        Cloonan refers to and incorporates herein all of the General Objections set forth

28   above.  Cloonan objects to this request to the extent that it calls for the production of

- 4 -

1  documents that are protected by the attorney-client privilege, attorney work product

2  doctrine, joint defense privilege, common interest privilege or any other similar privilege

3  or protection.  Cloonan also objects to the extent that this request calls for documents

4  containing Confidential Information, particularly in the absence of a protective order.

5  Cloonan further objects to this request as unduly burdensome.  Cloonan objects on the

6  grounds that Mattel has not demonstrated a need for production at this time that outweighs

7  the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

8  have exhausted its other possible sources of such documents.  Cloonan objects to this

9  request on the grounds that it seeks documents that are not relevant to any claim or

10  defense in this litigation, nor likely to lead to the discovery of admissible evidence.

11  Cloonan further responds that, subject to and without waiving any objections, Cloonan has

12  conducted a diligent search and reasonable inquiry in an effort to comply with this request

13  and no responsive documents are in the possession, custody or control of Cloonan.

14  REQUEST FOR PRODUCTION NO. 2:

15      All DOCUMENTS REFERRING OR RELATING TO ANGEL, including

16  without limitation any work or services performed by YOU or any other PERSON on

17  ANGEL.

18  RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

19      Cloonan refers to and incorporates herein all of the General Objections set forth

20  above.  Cloonan objects to this request to the extent that it calls for the production of

21  documents that are protected by the attorney-client privilege, attorney work product

22  doctrine, joint defense privilege, common interest privilege or any other similar privilege

23  or protection.  Cloonan also objects to the extent that this request calls for documents

24  containing Confidential Information, particularly in the absence of a protective order.

25  Cloonan further objects to this request as unduly burdensome.  Cloonan objects on the

26  grounds that Mattel has not demonstrated a need for production at this time that outweighs

27  the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

28  have exhausted its other possible sources of such documents.  Cloonan objects to this

ANA ELISE CLOONAN'S RESPONSES
AND OBJECTIONS TO MATTEL'S SUBPOENA
FOR PRODUCTION OF DOCUMENTS

Exhibit 33

Page ___219___

1  request on the grounds that it seeks documents that are not relevant to any claim or

2  defense in this litigation, nor likely to lead to the discovery of admissible evidence.

3  Cloonan further responds that, subject to and without waiving any objections, Cloonan has

4  conducted a diligent search and reasonable inquiry in an effort to comply with this request

5  and no responsive documents are in the possession, custody or control of Cloonan.

6  REQUEST FOR PRODUCTION NO. 3:

7       All DOCUMENTS REFERRING OR RELATING TO PRAYER ANGELS,

8  including without limitation any work or services performed by YOU or any other

9  PERSON on PRAYER ANGELS.

10  RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

11       Cloonan refers to and incorporates herein all of the General Objections set forth

12  above. Cloonan objects to this request to the extent that it calls for the production of

13  documents that are protected by the attorney-client privilege, attorney work product

14  doctrine, joint defense privilege, common interest privilege or any other similar privilege

15  or protection. Cloonan also objects to the extent that this request calls for documents

16  containing Confidential Information, particularly in the absence of a protective order.

17  Cloonan further objects to this request as unduly burdensome. Cloonan objects on the

18  grounds that Mattel has not demonstrated a need for production at this time that outweighs

19  the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

20  have exhausted its other possible sources of such documents. Cloonan objects to this

21  request on the grounds that it seeks documents that are not relevant to any claim or

22  defense in this litigation, nor likely to lead to the discovery of admissible evidence.

23  Cloonan further responds that, subject to and without waiving any objections, Cloonan has

24  conducted a diligent search and reasonable inquiry in an effort to comply with this request

25  and no responsive documents are in the possession, custody or control of Cloonan.

26  REQUEST FOR PRODUCTION NO. 4:

27       All DOCUMENTS REFERRING OR RELATING TO any agreements or

28  contracts between YOU and MGA, including without limitation all

ANA ELISE CLOONAN'S RESPONSES
AND OBJECTIONS TO MATTEL'S SUBPOENA
FOR PRODUCTION OF DOCUMENTS

Exhibit 33
Page _____ 220

1  COMMUNICATIONS relating thereto.

2  <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 4:</u>

3      Cloonan refers to and incorporates herein all of the General Objections set forth

4  above.  Cloonan objects to this request to the extent that it calls for the production of

5  documents that are protected by the attorney-client privilege, attorney work product

6  doctrine, joint defense privilege, common interest privilege or any other similar privilege

7  or protection.  Cloonan also objects to the extent that this request calls for documents

8  containing Confidential Information, particularly in the absence of a protective order.

9  Cloonan further objects to this request as unduly burdensome.  Cloonan objects on the

10  grounds that Mattel has not demonstrated a need for production at this time that outweighs

11  the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

12  have exhausted its other possible sources of such documents.  Cloonan objects to this

13  request on the grounds that it seeks documents that are not relevant to any claim or

14  defense in this litigation, nor likely to lead to the discovery of admissible evidence.

15  Cloonan further responds that, subject to and without waiving any objections, Cloonan has

16  conducted a diligent search and reasonable inquiry in an effort to comply with this request

17  and no responsive documents are in the possession, custody or control of Cloonan.

18  <u>REQUEST FOR PRODUCTION NO. 5:</u>

19      All DOCUMENTS REFERRING OR RELATING TO any agreements or

20  contracts REFERRING OR RELATING TO BRATZ, ANGEL and/or PRAYER

21  ANGELS between YOU and any PERSON, including without limitation all

22  COMMUNICATIONS relating thereto.

23  <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 5:</u>

24      Cloonan refers to and incorporates herein all of the General Objections set forth

25  above.  Cloonan objects to this request to the extent that it calls for the production of

26  documents that are protected by the attorney-client privilege, attorney work product

27  doctrine, joint defense privilege, common interest privilege or any other similar privilege

28  or protection.  Cloonan also objects to the extent that this request calls for documents

- 7 -

Exhibit 33
Page _____ ∂∂)

1    containing Confidential Information, particularly in the absence of a protective order.

2    Cloonan further objects to this request as unduly burdensome. Cloonan objects on the

3    grounds that Mattel has not demonstrated a need for production at this time that outweighs

4    the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

5    have exhausted its other possible sources of such documents. Cloonan objects to this

6    request on the grounds that it seeks documents that are not relevant to any claim or

7    defense in this litigation, nor likely to lead to the discovery of admissible evidence.

8    Cloonan further responds that, subject to and without waiving any objections, Cloonan has

9    conducted a diligent search and reasonable inquiry in an effort to comply with this request

10   and no responsive documents are in the possession, custody or control of Cloonan.

11   REQUEST FOR PRODUCTION NO. 6:

12        All DOCUMENTS REFERRING OR RELATING TO CARTER BRYANT.

13   RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

14        Cloonan refers to and incorporates herein all of the General Objections set forth

15   above. Cloonan objects to this request to the extent that it calls for the production of

16   documents that are protected by the attorney-client privilege, attorney work product

17   doctrine, joint defense privilege, common interest privilege or any other similar privilege

18   or protection. Cloonan also objects to the extent that this request calls for documents

19   containing Confidential Information, particularly in the absence of a protective order.

20   Cloonan further objects to this request as unduly burdensome. Cloonan objects on the

21   grounds that Mattel has not demonstrated a need for production at this time that outweighs

22   the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

23   have exhausted its other possible sources of such documents. Cloonan objects to this

24   request on the grounds that it seeks documents that are not relevant to any claim or

25   defense in this litigation, nor likely to lead to the discovery of admissible evidence.

26   Cloonan further responds that, subject to and without waiving any objections, Cloonan has

27   conducted a diligent search and reasonable inquiry in an effort to comply with this request

28   and no responsive documents are in the possession, custody or control of Cloonan.

- 8 -

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS, including without limitation phone records, REFERRING OR RELATING TO COMMUNICATIONS between CARTER BRYANT, on the one hand, and YOU, and/or MGA on the other hand.

RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

Cloonan refers to and incorporates herein all of the General Objections set forth above. Cloonan objects to this request to the extent that it calls for the production of documents that are protected by the attorney-client privilege, attorney work product doctrine, joint defense privilege, common interest privilege or any other similar privilege or protection. Cloonan also objects to the extent that this request calls for documents containing Confidential Information, particularly in the absence of a protective order. Cloonan further objects to this request as unduly burdensome. Cloonan objects on the grounds that Mattel has not demonstrated a need for production at this time that outweighs the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not have exhausted its other possible sources of such documents. Cloonan objects to this request on the grounds that it seeks documents that are not relevant to any claim or defense in this litigation, nor likely to lead to the discovery of admissible evidence. Cloonan further responds that, subject to and without waiving any objections, Cloonan has conducted a diligent search and reasonable inquiry in an effort to comply with this request and no responsive documents are in the possession, custody or control of Cloonan.

REQUEST FOR PRODUCTION NO. 8:

All DOCUMENTS REFERRING OR RELATING TO Anna Rhee.

RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

Cloonan refers to and incorporates herein all of the General Objections set forth above. Cloonan objects to this request to the extent that it calls for the production of documents that are protected by the attorney-client privilege, attorney work product doctrine, joint defense privilege, common interest privilege or any other similar privilege or protection. Cloonan also objects to the extent that this request calls for documents

- 9 -

Exhibit 33
Page ___ 223

1   containing Confidential Information, particularly in the absence of a protective order.

2   Cloonan further objects to this request as unduly burdensome.  Cloonan objects on the

3   grounds that Mattel has not demonstrated a need for production at this time that outweighs

4   the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

5   have exhausted its other possible sources of such documents.  Cloonan objects to this

6   request on the grounds that it seeks documents that are not relevant to any claim or

7   defense in this litigation, nor likely to lead to the discovery of admissible evidence.

8   Cloonan further responds that, subject to and without waiving any objections, Cloonan has

9   conducted a diligent search and reasonable inquiry in an effort to comply with this request

10  and no responsive documents are in the possession, custody or control of Cloonan.

11  <u>REQUEST FOR PRODUCTION NO. 9:</u>

12      All DOCUMENTS, including without limitation phone records, REFERRING OR

13  RELATING TO COMMUNICATIONS between Anna Rhee, on the one hand, and YOU,

14  MGA and/or CARTER BRYANT, on the other hand.

15  <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 9:</u>

16      Cloonan refers to and incorporates herein all of the General Objections set forth

17  above.  Cloonan objects to this request to the extent that it calls for the production of

18  documents that are protected by the attorney-client privilege, attorney work product

19  doctrine, joint defense privilege, common interest privilege or any other similar privilege

20  or protection.  Cloonan also objects to the extent that this request calls for documents

21  containing Confidential Information, particularly in the absence of a protective order.

22  Cloonan further objects to this request as unduly burdensome.  Cloonan objects on the

23  grounds that Mattel has not demonstrated a need for production at this time that outweighs

24  the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

25  have exhausted its other possible sources of such documents.  Cloonan objects to this

26  request on the grounds that it seeks documents that are not relevant to any claim or

27  defense in this litigation, nor likely to lead to the discovery of admissible evidence.

28  Cloonan further responds that, subject to and without waiving any objections, Cloonan has

- 10 -

Exhibit 33
Page _____ 224

1   conducted a diligent search and reasonable inquiry in an effort to comply with this request

2   and no responsive documents are in the possession, custody or control of Cloonan.

3   REQUEST FOR PRODUCTION NO. 10:

4        All DOCUMENTS REFERRING OR RELATING TO this litigation.

5   RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

6        Cloonan refers to and incorporates herein all of the General Objections set forth

7   above. Cloonan objects to this request to the extent that it calls for the production of

8   documents that are protected by the attorney-client privilege, attorney work product

9   doctrine, joint defense privilege, common interest privilege or any other similar privilege

10   or protection. Cloonan also objects to the extent that this request calls for documents

11   containing Confidential Information, particularly in the absence of a protective order.

12   Cloonan further objects to this request as unduly burdensome. Cloonan objects on the

13   grounds that Mattel has not demonstrated a need for production at this time that outweighs

14   the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

15   have exhausted its other possible sources of such documents. Cloonan objects to this

16   request on the grounds that it seeks documents that are not relevant to any claim or

17   defense in this litigation, nor likely to lead to the discovery of admissible evidence.

18   Cloonan further responds that, subject to and without waiving any objections, Cloonan has

19   conducted a diligent search and reasonable inquiry in an effort to comply with this request

20   and no responsive documents are in the possession, custody or control of Cloonan.

21   REQUEST FOR PRODUCTION NO. 11:

22        All DOCUMENTS REFERRING OR RELATING TO any work or services

23   that YOU performed with, for or on behalf of any competitor of MATTEL, including

24   without limitation MGA, during the term of YOUR MATTEL employment.

25   RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

26        Cloonan refers to and incorporates herein all of the General Objections set forth

27   above. Cloonan objects to this request to the extent that it calls for the production of

28   documents that are protected by the attorney-client privilege, attorney work product

ANA ELISE CLOONAN'S RESPONSES
AND OBJECTIONS TO MATTEL'S SUBPOENA
FOR PRODUCTION OF DOCUMENTS

Exhibit 33

Page 225

1  doctrine, joint defense privilege, common interest privilege or any other similar privilege
2  or protection.  Cloonan also objects to the extent that this request calls for documents
3  containing Confidential Information, particularly in the absence of a protective order.
4  Cloonan further objects to this request as unduly burdensome.  Cloonan objects on the
5  grounds that Mattel has not demonstrated a need for production at this time that outweighs
6  the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not
7  have exhausted its other possible sources of such documents.  Cloonan objects to this
8  request on the grounds that it seeks documents that are not relevant to any claim or
9  defense in this litigation, nor likely to lead to the discovery of admissible evidence.
10  Cloonan further responds that, subject to and without waiving any objections, Cloonan has
11  conducted a diligent search and reasonable inquiry in an effort to comply with this request
12  and no responsive documents are in the possession, custody or control of Cloonan.
13  REQUEST FOR PRODUCTION NO. 12:
14      All DOCUMENTS REFERRING OR RELATING TO MGA, including
15  without limitation all DOCUMENTS REFERRING OR RELATING TO any money
16  or payment made by MGA to YOU.
17  RESPONSE TO REQUEST FOR PRODUCTION NO. 12:
18      Cloonan refers to and incorporates herein all of the General Objections set forth
19  above.  Cloonan objects to this request to the extent that it calls for the production of
20  documents that are protected by the attorney-client privilege, attorney work product
21  doctrine, joint defense privilege, common interest privilege or any other similar privilege
22  or protection.  Cloonan also objects to the extent that this request calls for documents
23  containing Confidential Information, particularly in the absence of a protective order.
24  Cloonan further objects to this request as unduly burdensome.  Cloonan objects on the
25  grounds that Mattel has not demonstrated a need for production at this time that outweighs
26  the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not
27  have exhausted its other possible sources of such documents.  Cloonan objects to this
28  request on the grounds that it seeks documents that are not relevant to any claim or

ANA ELISE CLOONAN'S RESPONSES
AND OBJECTIONS TO MATTEL'S SUBPOENA
FOR PRODUCTION OF DOCUMENTS

Exhibit 33
Page  226

1 defense in this litigation, nor likely to lead to the discovery of admissible evidence.
2 Cloonan further responds that, subject to and without waiving any objections, Cloonan has
3 conducted a diligent search and reasonable inquiry in an effort to comply with this request
4 and no responsive documents are in the possession, custody or control of Cloonan.
5 REQUEST FOR PRODUCTION NO. 13:
6    All DOCUMENTS REFERRING OR RELATING TO any
7 COMMUNICATIONS between YOU and MGA prior to June 11, 2002.
8 RESPONSE TO REQUEST FOR PRODUCTION NO. 13:
9    Cloonan refers to and incorporates herein all of the General Objections set forth
10 above.  Cloonan objects to this request to the extent that it calls for the production of
11 documents that are protected by the attorney-client privilege, attorney work product
12 doctrine, joint defense privilege, common interest privilege or any other similar privilege
13 or protection.  Cloonan also objects to the extent that this request calls for documents
14 containing Confidential Information, particularly in the absence of a protective order.
15 Cloonan further objects to this request as unduly burdensome.  Cloonan objects on the
16 grounds that Mattel has not demonstrated a need for production at this time that outweighs
17 the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not
18 have exhausted its other possible sources of such documents.  Cloonan objects to this
19 request on the grounds that it seeks documents that are not relevant to any claim or
20 defense in this litigation, nor likely to lead to the discovery of admissible evidence.
21 Cloonan further responds that, subject to and without waiving any objections, Cloonan has
22 conducted a diligent search and reasonable inquiry in an effort to comply with this request
23 and no responsive documents are in the possession, custody or control of Cloonan.
24 REQUEST FOR PRODUCTION NO. 14:
25    All DOCUMENTS, including without limitation phone records, REFERRING
26 OR RELATING TO any COMMUNICATIONS between YOU and MGA after April
27 27, 2004.
28

ANA ELISE CLOONAN'S RESPONSES<br>AND OBJECTIONS TO MATTEL'S SUBPOENA<br>FOR PRODUCTION OF DOCUMENTS

- 13 -

Exhibit 33
Page 227

1   RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

2        Cloonan refers to and incorporates herein all of the General Objections set forth

3   above.  Cloonan objects to this request to the extent that it calls for the production of

4   documents that are protected by the attorney-client privilege, attorney work product

5   doctrine, joint defense privilege, common interest privilege or any other similar privilege

6   or protection.  Cloonan also objects to the extent that this request calls for documents

7   containing Confidential Information, particularly in the absence of a protective order.

8   Cloonan further objects to this request as unduly burdensome.  Cloonan objects on the

9   grounds that Mattel has not demonstrated a need for production at this time that outweighs

10  the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

11  have exhausted its other possible sources of such documents.  Cloonan objects to this

12  request on the grounds that it seeks documents that are not relevant to any claim or

13  defense in this litigation, nor likely to lead to the discovery of admissible evidence.

14  Cloonan further responds that, subject to and without waiving any objections, Cloonan has

15  conducted a diligent search and reasonable inquiry in an effort to comply with this request

16  and no responsive documents are in the possession, custody or control of Cloonan.

17  REQUEST FOR PRODUCTION NO. 15:

18        All DOCUMENTS REFERRING OR RELATING TO TOON TEENS.

19  RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

20        Cloonan refers to and incorporates herein all of the General Objections set forth

21  above.  Cloonan objects to this request to the extent that it calls for the production of

22  documents that are protected by the attorney-client privilege, attorney work product

23  doctrine, joint defense privilege, common interest privilege or any other similar privilege

24  or protection.  Cloonan also objects to the extent that this request calls for documents

25  containing Confidential Information, particularly in the absence of a protective order.

26  Cloonan further objects to this request as unduly burdensome.  Cloonan objects on the

27  grounds that Mattel has not demonstrated a need for production at this time that outweighs

28  the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

- 14 -

1   have exhausted its other possible sources of such documents.  Cloonan objects to this

2   request on the grounds that it seeks documents that are not relevant to any claim or

3   defense in this litigation, nor likely to lead to the discovery of admissible evidence.

4   Cloonan further responds that, subject to and without waiving any objections, Cloonan has

5   conducted a diligent search and reasonable inquiry in an effort to comply with this request

6   and no responsive documents are in the possession, custody or control of Cloonan.

7   REQUEST FOR PRODUCTION NO. 16:

8        All doll heads, sculpts, prototypes, models, samples, molds and tangible items

9   that were created, prepared or made, whether in whole or in part, prior to December

10  31, 2001 REFERRING OR RELATING TO BRATZ.

11  RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

12       Cloonan refers to and incorporates herein all of the General Objections set forth

13  above.  Cloonan objects to this request to the extent that it calls for the production of

14  documents that are protected by the attorney-client privilege, attorney work product

15  doctrine, joint defense privilege, common interest privilege or any other similar privilege

16  or protection.  Cloonan also objects to the extent that this request calls for documents

17  containing Confidential Information, particularly in the absence of a protective order.

18  Cloonan further objects to this request as unduly burdensome.  Cloonan objects on the

19  grounds that Mattel has not demonstrated a need for production at this time that outweighs

20  the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

21  have exhausted its other possible sources of such documents.  Cloonan objects to this

22  request on the grounds that it seeks documents that are not relevant to any claim or

23  defense in this litigation, nor likely to lead to the discovery of admissible evidence.

24  Cloonan further responds that, subject to and without waiving any objections, Cloonan has

25  conducted a diligent search and reasonable inquiry in an effort to comply with this request

26  and no responsive documents are in the possession, custody or control of Cloonan.

27  REQUEST FOR PRODUCTION NO. 17:

28

- 15 -

Exhibit 33
Page _____ 229

1   All doll heads, sculpts, prototypes, models, samples, molds and tangible items

2   REFERRING OR RELATING TO ANGEL and/or PRAYER ANGELS.

3   RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

4   Cloonan refers to and incorporates herein all of the General Objections set forth

5   above. Cloonan objects to this request to the extent that it calls for the production of

6   documents that are protected by the attorney-client privilege, attorney work product

7   doctrine, joint defense privilege, common interest privilege or any other similar privilege

8   or protection. Cloonan also objects to the extent that this request calls for documents

9   containing Confidential Information, particularly in the absence of a protective order.

10  Cloonan further objects to this request as unduly burdensome. Cloonan objects on the

11  grounds that Mattel has not demonstrated a need for production at this time that outweighs

12  the burden imposed on Cloonan, a nonparty, particularly to the extent that Mattel may not

13  have exhausted its other possible sources of such documents. Cloonan objects to this

14  request on the grounds that it seeks documents that are not relevant to any claim or

15  defense in this litigation, nor likely to lead to the discovery of admissible evidence.

16  Cloonan further responds that, subject to and without waiving any objections, Cloonan has

17  conducted a diligent search and reasonable inquiry in an effort to comply with this request

18  and no responsive documents are in the possession, custody or control of Cloonan.

19

20  Dated: June 26, 2007            KEATS MCFARLAND & WILSON LLP

21

22

23                                 Larry W. McFarland, Esq.
                                   Attorneys for Non-Party Ana Elise Cloonan
24

25

26

27

28

ANA ELISE CLOONAN'S RESPONSES
AND OBJECTIONS TO MATTEL'S SUBPOENA
FOR PRODUCTION OF DOCUMENTS

Exhibit 33
Page   230

## DECLARATION OF SERVICE BY MAIL

### *Carter Bryant v. Mattel Inc.*
**Case No. CV 04-09049 SGL (RNBx)**
**Consolidated with Case Nos. CV 04-9059 and CV 05-2727**

I, the undersigned say:

I am and was at all times herein mentioned a resident of the County of Los Angeles, over the age of eighteen (18) years and not a party to the within action or proceeding. My business address is 9720 Wilshire Boulevard, Penthouse Suite, Beverly Hills, California 90212 and I am employed in the offices of Keats, McFarland & Wilson LLP by a member of the Bar of this Court at whose direction the service mentioned herein below was made.

I am readily familiar with the normal business practice of my employer for the collection and processing of correspondence and other materials for mailing with the United States Postal Service. In the ordinary course of business, any materials designated for mailing with the United States Postal Service and placed by me for collection in the office of my employer is deposited the same day with the United States Postal Service, postage prepaid.

On June 26, 2007, I served the following document(s):

### ANA ELISE CLOONAN'S RESPONSES AND OBJECTIONS TO MATTEL'S SUBPOENA FOR PRODUCTION OF DOCUMENTS

upon counsel and interested parties named below by placing a true and correct copy thereof in an envelope addressed as follows:

### See Attached Service List

BY MAIL: I sealed said envelope(s) and, following the ordinary business practices of my employer, placed said sealed envelope(s) in the office of my employer at 9720 Wilshire Boulevard, Penthouse Suite, Beverly Hills, California, for collection and mailing with the United States Postal Service on the same date.

Executed on June 26, 2007, at Beverly Hills, California.

_____
Janice L. Trayes

Exhibit 33
Page __23|__

### *Carter Bryant v. Mattel Inc.*
and related actions

### Case No. CV 04-09049 SGL (RNBx)
### Consolidated with Case Nos. CV 04-9059 and CV 05-2727

## SERVICE LIST

| Counsel | Tele/Fax/E-mail | Party |
|---|---|---|
| John B. Quinn, Esq.<br>Jennifer Lewis, Esq.<br>Michael T. Zeller, Esq.<br>Jon D. Corey, Esq.<br>Susan Wines, Esq.<br>**QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP**<br>865 South Figueroa Street, 10th Fl.<br>Los Angeles, CA 90017 | Tel:   (213) 443-3000<br>Fax:  (213) 443-3100<br><br>Email:<br>  johnquinn@quinnemanuel.com<br>  jenniferlewis@quinnemanuel.com<br>  michaelzeller@quinnemanuel.com<br>  joncorey@quinnemanuel.com<br>  susanwines@quinnemanuel.com | MATTEL, INC. |
| Diana M. Torres, Esq.<br>Alicia Meyer, Esq.<br>**O'MELVENY & MYERS**<br>400 South Hope Street<br>Los Angeles, CA 90071-2899 | Tel:   (213) 430-6556<br>Tel:   (213) 430-8307<br>Fax:  (213) 430-6407<br><br>Email:<br>  dtorres@omm.com<br>  ameyer@omm.com | MGA |
| Patricia Glaser, Esq.<br>**CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP**<br>10250 Constellation Boulevard -19th Floor<br>Los Angeles, CA 90067 | Tel:   (310) 282-6217<br>Fax:  (310) 556-2920<br><br>Email:<br>  pglaser@chrisglase.com | MGA |
| John W. Keker, Esq.<br>Michael H. Page, Esq.<br>Christa M. Anderson, Esq.<br>**KEKER & VAN NEST, LLP**<br>710 Sansome Street<br>San Francisco, CA 94111 | Tel:   (415) 391-5400<br>Fax:  (415) 397-7188<br>Email:<br>  jkeker@kvn.com<br>  mpage@kvn.com<br>  canderson@kvn.com | CARTER BRYANT |

Exhibit 33
Page _232_