1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| | JAMS Reference No. 1100049530 |
| Plaintiff, | |
| v. | Consolidated with |
| | Case No. CV 04-09059 |
| MATTEL, INC., a Delaware corporation, | Case No. CV 05-2727 |
| Defendant. | **ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SCHOLER AND STERN & GOLDBERG TO PRODUCE DOCUMENTS** |
| CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

The following motions are pending for decision, each of which seeks discovery from non-

parties: Mattel, Inc.'s ("Mattel") (1) Motion to Compel Farhad Larian to Produce Documents; (2)

Motion to Compel Kaye Scholer to Produce Documents; and (3) Motion to Compel Stern &

1   Goldberg to Produce Documents. Each of the non–parties submitted oppositions.[1]  In addition,

2   MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

3   Mexico S.R.L. de C.V. (collectively "MGA") submitted oppositions to the motions.  Mattel

4   submitted a consolidated reply on January 3, 2008.  The motions were heard on January 16, 2008,

5   at which time Mattel agreed to hold in abeyance its Motion to Compel Stern & Goldberg to

6   Produce Documents.  This Order, therefore, addresses only Mattel's motions to compel Farhad

7   Larian and Kaye Scholer to produce documents.

8        On January 22, 2008, the parties submitted a Stipulation Regarding Protective Orders to

9   facilitate production of documents responsive to the subpoenas at issue.

10                              II. BACKGROUND

11       Since the inception of MGA in 1979 until December of 2000, Isaac Larian, a defendant

12   herein and MGA's CEO, and his brother Farhad Larian, a non-party, shared ownership and

13   management of MGA.  A dispute developed between the two brothers and in March of 2000,

14   Isaac Larian proposed that Farhad Larian sell his interest in MGA to him.

15       On September 28, 2000, the Larian brothers agreed to have their uncle, Morad Zarabi,

16   arbitrate their dispute and decide a fair value for MGA and also decide which brother should sell

17   his ownership interest to the other.  The brothers' agreement to arbitrate was entered into ten days

18   after the alleged effective date of Carter Bryant's contract purportedly assigning rights to Bratz to

19   MGA.  Isaac Larian did not tell his brother about the contract with Bryant.

20       Mr. Zarabi retained an appraiser, Ernest Dutcher, to value MGA based on "the period

21   ending December 31, 1999."  By December 4, 2000, Mr. Zarabi determined that Farhad Larian

22   should sell his 45% ownership interest in MGA to Isaac Larian and the two entered into an

23   Agreement for Sale of Stock by which Farhad Larian sold his interest for $8.775 million.

24

25

26       [1] Mattel contends that Kaye Scholer's opposition was not timely filed and therefore should not be
27   considered. Although the opposition was ten days late, Kaye Scholer's brief will nevertheless be considered in the
     interest of resolving these disputes on the merits.

28

In the summer of 2002, Farhad Larian complained to Mr. Zarabi that Isaac Larian had allegedly fraudulently concealed Bratz during the negotiations that led to Farhad Larian's sale of MGA stock. Mr. Zarabi oversaw another appraisal of MGA based upon information he gathered in 2002. Mr. Dutcher produced an appraisal on February 13, 2003 that valued MGA as of December 31, 2000 and projected a 2001 revenue growth rate of twenty-five percent (25%) based upon "hot projects that came along." Mattel's Motion at p.4, Ex. 8 to Decl. of Juan Pablo Albán. Other information relied upon by Mr. Dutcher suggests that MGA had expansionary plans in 2000 compared to the prior four years.

Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued Isaac Larian, alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA became aware of a new product line called Bratz; (b) starting in early 2000 and throughout 2000, Isaac Larian and MGA devised plans to develop and distribute Bratz; and (c) Isaac Larian concealed the plans for Bratz from Farhad Larian and Mr. Zarabi in order to keep the valuation of MGA artificially low. Notably, MGA and Bryant claim in the instant lawsuit that they did not even meet until September 2000.

Isaac Larian successfully moved to compel arbitration of Farhad Larian's claims. In early February 2005, Mr. Zarabi declined to serve as arbitrator and the court appointed another arbitrator. A few weeks later, Farhad Larian filed suit against Mr. Zarabi alleging that he conspired with Isaac Larian to conceal facts.

The arbitration of Farhad Larian's claims started on November 16, 2005. Two days into the proceedings, however, Farhad Larian dismissed his claims. Isaac Larian sought to recover his attorneys' fees and won an award in excess of $1 million against his brother.

Mattel Subpoenas Farhad Larian to Produce Documents

On August 31, 2007, Mattel subpoenaed Farhad Larian to appear for deposition and to produce (1) documents relating to the Larian v. Larian disputes; (2) documents related to non-Bratz allegations by Mattel and MGA, primarily related to allegations of trade secret theft; (3) documents relating to Farhad Larian's relationship to MGA, including his position there,

1  ownership interests, and payments from MGA or Isaac Larian to Farhad Larian; (4) Farhad

2  Larian's knowledge and possession of documents specifically from the instant lawsuit, including

3  his communications with Mattel; and (5) information about the location of responsive documents.

4  The majority of Mattel's requests seek documents in the first category described above.

5       On September 21, 2007, Farhad Larian served responses and objections in which he

6  agreed to produce documents responsive to eleven of Mattel's forty-one document requests.

7  After a brief stay of discovery, counsel for Farhad Larian and Mattel met and conferred beginning

8  on November 20, 2007.  During the meet and confer process, Farhad Larian agreed to produce

9  documents responsive to some, but not all of Mattel's forty-one requests.  On November 21,

10  2007, Farhad Larian produced approximately one red well of documents.

11       The parties held a second meet and confer conference call on November 27, 2007, and

12  were able to resolve their disputes regarding many more, but not all requests.  In particular, the

13  parties were ultimately able to resolve their disputes regarding the requests for documents related

14  to non-Bratz allegations.  At the conclusion of the second meet and confer session, it was agreed

15  that Farhad Larian would make a supplemental production of documents on December 6, 2007,

16  and provide a written supplemental response.  The parties attempted to schedule another meet and

17  confer session, but could not agree upon a date.  On the evening of December 6, 2007, Mattel

18  filed the instant motion.  Mattel seeks an order compelling Farhad Larian to produce documents

19  responsive to every request in its subpoena; overruling each of Farhad Larian's objections; and

20  ordering him to produce a document-by-document privilege log.

21  Mattel Subpoenas Isaac Larian's Attorney –Kaye Scholer

22       On or about September 6, 2007, Mattel also subpoenaed Kaye Scholer, the firm that

23  represented Isaac Larian in the Larian v. Larian proceedings.  The subpoena consisted of thirty-

24  five (35) requests seeking the same five categories of documents it subpoenaed from Farhad

25  Larian.  Kaye Scholer's representation of Isaac Larian included defending him in two related

26  Superior Court actions, two arbitration proceedings and an appeal to the California Court of

27  Appeals, all of which covered a period of several years.  As a result of this representation Kaye

28

4

1   Scholer has accumulated approximately fifty-six (56) boxes of its client's files, including, among
2   other things, correspondence files, pleading files, discovery files, witness preparation files,
3   research files, exhibits, attorney work files, and billing files.

4       On or about September 18, 2007, Kaye Scholer served its objections, asserting, among
5   other things, that the requests are duplicative, unreasonably cumulative, harassing and oppressive.
6   The parties met and conferred on October 11 and 29, 2007. Kaye Scholer agreed to review the
7   following files for responsive documents: (1) pleading files; (2) discovery files; and (3)
8   arbitration exhibits. Kaye Scholer's rationale for limiting its search for responsive documents to
9   these three files was to avoid undue burden because most of the documents in other files would be
10  protected by the work product doctrine and/or the attorney-client privilege. Kaye Scholer also
11  agreed to produce documents responsive to the majority of Mattel's requests. However, Kaye
12  Scholer repeatedly informed Mattel that it objected to producing a document-by-document
13  privilege log because it would be unduly burdensome, expensive and inconvenient.

14      In the instant motion, Mattel seeks an order compelling Kaye Scholer to produce
15  documents responsive to every request in its subpoena and overruling Kaye Scholer's objections,
16  including privilege, or alternatively, compelling Kaye Scholer to produce a document-by-
17  document privilege log.

18  Mattel's Other Discovery Efforts

19      Mattel has attempted to obtain documents related to the Larian v. Larian proceedings from
20  MGA and Isaac Larian. As far as Mattel can ascertain, however, MGA has produced only four
21  documents relating to the Larian v. Larian proceedings and Isaac Larian has produced none.

22      Mattel also searched public filings in the Larian v. Larian and Larian v. Zarabi et al. civil
23  lawsuits. Mattel found Mr. Dutcher's declaration that included the appraisals described above,
24  however, Mattel was not able to locate any of the raw data on which Mr. Dutcher relied. Mattel
25  also served subpoenas on third parties involved in the Larian v. Larian proceedings, and met with
26  limited success.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

## III. STANDARDS

2       Rule 45 of the Federal Rules of Civil Procedure requires third parties to produce

3 documents (and reasonably accessible electronically stored information) that are responsive to a

4 subpoena that a party serves on them. Fed.R.Civ.P. 45(b), (d). If the subpoenaed documents are

5 relevant and there is good cause for their production, the subpoena is enforced unless the

6 documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing.

7 The factors to be balanced by the trial court in determining the propriety of a subpoena are the

8 relevance of the discovery sought, the requesting party's need, and the potential hardship to the

9 party subject to the subpoena. A person withholding subpoenaed information under a claim of

10 attorney-client privilege or protected by the work product doctrine must expressly make the claim

11 and "describe the nature of the withheld documents, communications, or tangible things in a

12 manner that, without revealing information itself privileged or protected, will enable the parties to

13 assess the claim." Fed.R.Civ.P. 45(d)(2).

14       Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing

15 and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on

16 a person subject to the subpoena." Furthermore, "[t]he issuing court must enforce this duty and

17 impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--

18 on a party or attorney who fails to comply." Id.

19

## IV. DISCUSSION

20 A. Documents Subpoenaed from Farhad Larian

21       Mattel contends that each of the categories of documents it seeks from Farhad Larian is

22 relevant and that there is good cause for production. First, Mattel contends that the Larian v.

23 Larian proceedings are relevant because Farhad Larian's allegations about the timing of the

24 origins and early development of Bratz and MGA's concealment thereof parallel and provide

25 support for the crux of Mattel's claims in the instant litigation. Second, Mattel contends that

26 documents about Farhad Larian's relationship with MGA are relevant to his credibility. In

27 particular, Mattel contends that payments from Isaac Larian and/or MGA to Farhad Larian are

28

1  relevant to credibility and possible bias. Third, Mattel contends that documents relating to this
2  action are clearly relevant, especially in light of MGA and Isaac Larian's threat to disqualify
3  Mattel's counsel based upon purported communications between Mattel's counsel and Farhad
4  Larian. Fourth, Mattel contends that it seeks information about the location of responsive
5  documents to determine whether Farhad Larian destroyed documents or for another reason no
6  longer has them.

7       Mattel next contends that Farhad Larian has failed to carry his burden of demonstrating
8  that the requests at issue are unreasonable, oppressive, annoying or embarrassing. Further, Mattel
9  contends that the protective order in place in this lawsuit is sufficient to address Farhad Larian's
10  confidentiality or privacy concerns. Lastly, Mattel contends that Farhad Larian's privilege log is
11  inadequate because it fails to justify his claims of privilege and work product protection on a
12  document-by-document basis.

13       Farhad Larian contends that Mattel's motion should be denied because Mattel violated its
14  meet and confer obligations by filing the motion before he made his scheduled supplemental
15  production and before the parties' meet and confer discussions had concluded. According to
16  Farhad Larian, on November 27, 2007, it was agreed that he would make a supplemental
17  production of documents on December 6, 2007, and that he would provide a written supplemental
18  response. Farhad Larian complied with this agreement and, on December 6, 2007, provided a
19  written supplemental response and, as Mattel acknowledges, approximately six boxes containing
20  approximately 12,000 pages of documents. Nevertheless, Mattel filed the instant motion on
21  December 6, 2007, without reviewing the supplemental document production and written
22  supplemental response. Farhad Larian also represents that as of December 6, 2007, the day
23  Mattel filed the instant motion, the parties acknowledged the need for a further meet and confer
24  session, as reflected in the numerous e-mails and correspondence exchanged between counsel.
25  Furthermore, Farhad Larian represents that after Mattel filed the instant motion, he requested that
26  Mattel take the motion off-calendar because his supplemental responses resolved the parties'
27  disputes as to all but three requests and because there was potential for resolving the remaining

28

1   requests as well, but that Mattel refused.

2        Farhad Larian contends that in light of his supplemental production, he is now in full
3   compliance with Mattel's subpoena, except for three requests. He represents that he has produced
4   over 12,000 documents, including all non-privileged documents from the Larian v. Larian matters
5   that relate to Bratz (including its origin), Carter Bryant, Mattel, a fee agreement between Farhad
6   and MGA, and all documents related to appraisals of MGA that are not privileged or otherwise
7   covered by a protective order. He also contends that the privilege log he has produced to Mattel,
8   which describes the withheld documents by category instead of document-by-document, is
9   sufficient to substantiate his claims of privilege and work product protection. As for the three
10  remaining requests, Nos. 23, 24 and 41, Farhad Larian contends that they are overbroad, harassing
11  and cumulative and invade his and his family's privacy.

12                          Farhad Larian Has Substantially Complied with the Subpoena

13       Farhad Larian made a substantial supplemental production and provided a supplemental
14  written response on December 6, 2007. Indeed, Mattel acknowledges that it received
15  approximately six boxes of documents from Farhad Larian, which contain approximately 12,000
16  pages of documents. Nevertheless, Mattel contends in its reply brief that there are a few
17  deficiencies in Farhad Larian's production. For example, Mattel contends that Farhad Larian has
18  not produced (1) documents bates stamped "MZ" and "ED"; (2) raw data provided to the
19  appraisers in the Larian v. Larian litigations and the 2000 financial models that Farhad Larian
20  claimed Isaac Larian prepared; (3) three boxes of documents that Farhad Larian's counsel showed
21  Mattel's counsel and upon which MGA's disqualification threats against Mattel's counsel are
22  based; (4) the Dutcher Declaration; and (5) documents responsive to Request Nos. 17-19. Mattel
23  also contends that Farhad Larian has improperly limited its production to only those documents
24  that directly reference Bratz and Carter Bryant.

25       At the hearing, counsel for Farhad Larian confirmed that all responsive documents,
26  including the documents identified in Mattel's reply brief, had been or would be produced after
27  the parties executed the Stipulation Regarding Protective Orders, which has now been

28

1  accomplished. Significantly, counsel represented that Farhad Larian did not limit his production

2  to only those documents that directly reference Bratz and Carter Bryant, and that his supplemental

3  responses make this point clear. Counsel for Farhad Larian also represented that all privileged

4  documents have been identified on a privilege log.

5      In light of the December 6, 2007 supplementation, and based upon the representations

6  made by counsel for Farhad Larian at the hearing, Farhad Larian has substantially discharged his

7  obligation to comply with Mattel's subpoena. Therefore, there is no need for an order compelling

8  any further production of documents.

9                    Farhad Larian's Objections to the Three Remaining Requests are Justified

10     The only three requests to which Farhad Larian objects are Nos. 23, 24 and 41, which are

11  set forth in full below:

12     Request No. 23: All DOCUMENTS RELATING TO any and all payments of
       money or transfers of anything of value that ISAAC LARIAN, his FAMILY
13     MEMBERS and/or MGA have made, have offered or have proposed, promised or
       agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at
14     any time from January 1, 1999 through the present.

15     Request No. 24: All DOCUMENTS RELATING TO any and all payments of
       money or transfers of anything of value that any PERSON has made, has offered
16     or has proposed, promised or agreed to make, to or for the benefit of YOU or
       YOUR FAMILY MEMBERS and that was related in any way to BRATZ,
17     BRYANT, MGA or this ACTION at any time from January 1, 1999 through the
       present.

18
       Request No. 41: DOCUMENTS sufficient to IDENTIFY since January 1, 1999
19     through the present (a) each account with any bank or financial institution that
       YOU have or have had, or that YOU have or have had any legal beneficial
20     interest in; (b) each telephone subscription service account that YOU have or have
       had, or that YOU use or have used; and (c) each email account that YOU have or
21     have had, or that YOU use or have used.

22
    Farhad Larian contends that Mattel's stated justification for the requests – bias and credibility – is
23
    questionable because he is not an adverse witness to Mattel. Farhad Larian represents that MGA
24
    has never asked him to testify on the company's behalf. Rather, only Mattel intends to call him as
25
    a witness. Farhad Larian asserts that there is no reason for Mattel to impeach its own witness.
26
        Furthermore, Farhad Larian contends that even if it is advantageous for Mattel to attack
27

28                                                                                                    9

1  his credibility, the scope of Mattel's requests go far beyond what Mattel is reasonably entitled to

2  receive through discovery. He contends that pursuant to Rule 26, Fed.R.Civ.P., he should not be

3  subjected to discovery that is burdensome, cumulative, unnecessarily costly, or insufficiently

4  probative to the issues in the litigation to warrant the expense of production. Furthermore, he

5  contends that the usual restrictions on discovery set forth in Rule 26 should be rigorously applied

6  to protect non-parties such as himself.

7       Farhad Larian contends that the three requests at issue are overbroad and harassing in

8  several respects. First, he points out that the requests seek documents from 1999, which is five

9  years before this action was filed and six years before MGA was involved in this action. Farhad

10 Larian contends that payments made to him and his family before this action was filed and before

11 MGA was a party to the case have no relevance to his credibility as a witness in this case.

12 Second, Farhad Larian contends that the requests, as phrased, would include any card that

13 accompanied a gift to anyone in the Larian family, regardless of the dollar value of the gift.

14 Farhad Larian contends that family gifts for birthdays, Chanukah, or general gifts of money

15 between family members, have nothing to do with bias and violate his and his family's privacy

16 rights. Third, Farhad Larian contends that the requests are overbroad because they would require

17 him to disclose all documents reflecting payments he received as an employee of MGA and its

18 predecessor, a company he was employed by for decades.

19      Furthermore, Farhad Larian contends that he has already produced all non-privileged

20 documents which could potentially show bias, including the amount of money he was paid for his

21 shares of MGA, his consulting agreement with MGA after he sold his shares, and his fee

22 agreement with MGA. He contends that requiring him to search for and produce additional

23 payment documents would only result in him producing cumulative information, which is not

24 only irrelevant but violates his and his family's right to privacy under the California Constitution.

25 Farhad Larian also contends that it would be far less intrusive for Mattel to question him at a

26 deposition about payments he received from Isaac Larian and MGA than for him to respond to the

27 three requests at issue.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

1    Mattel's motion is denied with respect to Request Nos. 23, 24 and 41. The requests seek
2    information that is only minimally relevant to the claims and defenses in the case. Mattel's only
3    stated justification for the discovery is that it is relevant to establish Farhad Larian's credibility
4    and bias. Although impeachment information is discoverable, Mattel is not entitled to the type of
5    unfettered discovery it is now seeking. Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to
6    restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is
7    obtainable from some other source that is more convenient, less burdensome, or less expensive;
8    (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the
9    information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely
10   benefit, taking into account the needs of the case, the amount in controversy, the parties'
11   resources, the importance of the issues at stake in the litigation, and the importance of the
12   proposed discovery in resolving the issues. These restrictions are particularly important to
13   consider where the discovery requests are directed at a non-party. See Moon v. SCP Pool Corp.,
14   232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,
15   649 F.2d 649 (9th Cir. 1980) (discovery should be "more limited to protect third parties from
16   harassment, inconvenience, or disclosure of confidential information.").

17   Aside from asserting that the requested information is relevant to bias and credibility,
18   Mattel has made no attempt to justify the significant breadth and burden of its requests. The
19   requests are so broad as to include every payment or gift, regardless of amount, made between
20   Farhad and Isaac Larian, their family members and MGA since 1999. The number of years for
21   which Mattel seeks financial information is overbroad. Mattel is seeking documents since 1999,
22   five years before this action was filed and six years before MGA became a party to this action.
23   Mattel fails to explain how any payments MGA or Isaac Larian made to Farhad or his family
24   members before this action was filed or MGA was a party to the action have any bearing on his
25   credibility as a witness in this action. The requests are also overbroad in that they encompass
26   customary gifts between family members and Farhad Larian's routine salary payments, which
27   have only minimal relevance to Farhad Larian's credibility and bias as a witness in this case.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

1    The requests are also cumulative of discovery Farhad Larian has already provided. In

2    particular, Farhad Larian represents that he has already disclosed to Mattel the amount of money

3    he was paid for his shares of MGA, his consulting agreement with MGA after he sold his shares,

4    and his fee agreement with MGA. In light of this production , it is unreasonable to require Farhad

5    Larian to search for and produce gift receipts, cards, and the breadth of other financial documents

6    responsive to Request Nos. 23, 24 and 41. Furthermore, there are other less intrusive and

7    burdensome means of obtaining discovery regarding Farhad Larian's credibility and bias. For

8    example, Mattel may question Farhad Larian about payments he received from his brother and

9    MGA during his deposition.

10    Nor has Mattel justified the intrusive and harassing nature of the requests. Personal

11    financial information is afforded protection by the California Constitution that is also recognized

12    by federal courts. Cal. Const., Art. I, §1; Valley Bank of Nevada v. Superior Court, 15 Cal.3d

13    652, 656 (1975); Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

14    should give "some weight" to privacy rights that are protected by state constitutions); Soto v. City

15    of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (right to privacy in financial information has

16    been recognized by federal courts). When a privacy right is asserted as an objection to discovery,

17    the court must balance the need for the information versus the privacy right asserted. Soto, 162

18    F.R.D. at 616.

19    As discussed previously, there is little to no need for the breadth of financial information

20    sought by Mattel. Many of the documents covered by Request Nos. 23, 24, and 41 have little to

21    no relevance to Farhad Larian's credibility and bias as a witness in this case. Furthermore,

22    Farhad Larian has already produced numerous documents showing payments he received from

23    both his brother and MGA. There are also other less intrusive means for obtaining discovery

24    relating to Farhad Larian's credibility and bias. Furthermore, the scope of these three requests

25    unduly intrude into Farhad Larian's private affairs. The requests are so broad as to include gifts

26    exchanged between family members and Farhad Larian's paycheck stubs, and would require

27    Farhad Larian to disclose every account number he has at a bank or financial institution since

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

1   1999. Thus, the balance tips sharply in favor of protecting Farhad Larian's personal financial

2   information.

3                          Farhad Larian's Privilege Log is Inadequate

4          Mattel challenges the sufficiency of Farhad Larian's privilege log. At issue is whether

5   Farhad Larian must describe and assert claims of privilege on a document-by-document basis, or

6   whether he may do so categorically. Farhad Larian is withholding approximately one bankers'

7   box of documents based upon claims of privilege and work product protection. Farhad Larian's

8   Opposition at p.20, n. 9.

9          Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide

10  sufficient information to enable the party seeking discovery to assess the claims of privilege and

11  work product protection. The "universally accepted" means of claiming that requested documents

12  are privilege is by producing a document-by-document privilege log. Gail v. New England Gas

13  Co., Inc., 234 F.R.D. 28, 33 (D. R.I. 2007). The advisory comments to the 1993 amendment to

14  Rule 26(b), however, state that a description of documents by category is appropriate where it

15  would be "unduly burdensome" to provide a document-by-document privilege log. Specifically,

16  the advisory comment states, "Details concerning time, persons, general subject matter, etc., may

17  be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous

18  documents are claimed to be privileged or protected, particularly if the items can be described by

19  categories."

20         Farhad Larian relies upon the advisory comments and cases citing the advisory comments

21  to support his contention that as a non-party, it would be unduly burdensome to require a

22  document-by-document privilege log in this case. The cases cited by Farhad Larian, however, are

23  distinguishable from the present case. In SEC v. Thrasher, 1996 WL 125661 (S.D. N.Y. 1996),

24  the Commission sought production of all communications between defense counsel concerning

25  the lawsuit. The court observed that this demand, on it face, sought wholesale production of

26  documents that are ordinarily protected from disclosure. Further, the defendant represented that

27  the requested documents were extremely voluminous and that a document-by-document privilege

28

1    log would be a long and fairly expensive project to undertake.  In <u>Fifty-Six Hope Road Music,</u>

2    <u>Ltd. v. Mayah Collections, Inc.</u>, 2007 WL 1726558 (Nev. 2007), the withheld documents

3    consisted of e-mail communications between plaintiffs and their counsel or between plaintiffs'

4    counsel.  Plaintiffs represented that there were hundreds and perhaps thousands of such email

5    communications which were protected by the attorney-client privilege and work product doctrine.

6         In contrast to the volume of documents at issue in <u>Thrasher</u> and <u>Fifty-Six Hope Road</u>

7    <u>Music,</u> Farhad Larian represents that he has about one bankers' box of privileged documents.

8    Farhad has not established that to produce a privilege log on a document-by-document basis for

9    this volume of documents is unduly burdensome.  Furthermore, even if it were appropriate for

10   Farhad Larian to produce a privilege log that described documents categorically, which it is not,

11   the information provided in Farhad Larian's privilege log is insufficient to enable Mattel to assess

12   the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P.  For

13   example, in some instances, Farhad Larian fails to identify the author and recipient of the

14   documents being withheld.  In other instances, Farhad Larian fails to provide the date or date

15   ranges for the documents being withheld.  Therefore, Farhad Larian is ordered to provide a

16   supplemental privilege log that complies with Rule 45.

17   B. Documents Subpoenaed from Kaye Scholer

18        Mattel contends that the documents it seeks from Kaye Scholer are relevant for all the

19   same reasons previously articulated in the context of Mattel's motion to compel Farhad Larian to

20   produce documents.  Mattel contends that its requests are not unreasonable, oppressive, annoying

21   or embarrassing.  Mattel points out that Kaye Scholer has separate case files containing all or the

22   vast majority of responsive documents, which undermines Kaye Scholer's boilerplate burden

23   objections.  Mattel also points out that it offered to alleviate some of the burden to Kaye Scholer

24   by paying for Kay Scholer's copying costs and by providing a paralegal to inspect documents

25   from Kaye Scholer's files with an agreement that the inspection would not result in a waiver of

26   any privileges.  Further, Mattel contends that the protective order in place in this action is

27   sufficient to address any confidentiality concerns Kaye Scholer may have.

28

1    Mattel next contends that the documents it seeks from Kaye Scholer are not available from
2    other sources, as evidenced by Mattel's repeated and unsuccessful attempts to seek the same
3    documents from MGA. Indeed, Mattel contends that the documents in Kaye Scholer's possession
4    are in fact documents within MGA's possession, custody and control that should have, but have
5    not yet been, produced pursuant to prior discovery orders obligating MGA and Isaac Larian to
6    produce documents from the Larian v. Larian proceedings. Mattel also points out that it has
7    searched public files and served additional subpoenas on other third parties involved in the Larian
8    v. Larian proceedings. Moreover, Mattel argues that federal law requires Kaye Scholer to comply
9    with the subpoena, even if the evidence sought is obtainable from another source. See e.g. State
10   Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840 at *1 (E.D. N.Y. 2007).

11   Mattel contends that Kaye Scholer's proposal to search only certain files for responsive
12   documents is unacceptable because it would inevitably exclude relevant documents. In particular,
13   Mattel contends that Kaye Scholer's proposal would exclude relevant documents likely to be
14   found in its correspondence file, such as an August 29, 2003 letter from Isaac Larian to Mr.
15   Zarabi relating to an appraisal of MGA, and a letter from Farhad Larian's attorney to Kaye
16   Scholer detailing the evidence of Isaac Larian's alleged concealment of Bratz. Mattel contends
17   that the relevance of these documents and others that are likely to exist justifies the burden of
18   production on Kaye Scholer.

19   Further, Mattel contends that Kaye Scholer has failed to produce a privilege log in
20   violation of Rule 45(d)(2), Fed.R.Civ.P., and therefore Kaye Scholer has waived any claims of
21   privilege. In the alternative, Mattel requests an order compelling Kaye Scholer to produce a
22   document-by-document privilege log.

23   Kaye Scholer contends that the instant motion is premature, unnecessary and a waste of
24   judicial resources. Kaye Scholer represents that after meeting and conferring in good faith, it
25   agreed to produce documents responsive to thirty of the thirty-five requests, and that the
26   remainder of the requests are grossly overbroad. Further, Kaye Scholer represents that it has
27   completed its review pursuant to the agreement, and is prepared to produce responsive
28

1   documents. However, Kaye Scholer continues to object to producing a document-by-document

2   privilege log on the grounds that it would be unduly burdensome and expensive. Kaye Scholer

3   emphasizes that Mattel is seeking documents from a law firm, and therefore the vast majority of

4   responsive documents are protected by multiple privileges, including but not limited to the

5   attorney-client privilege and the work product doctrine. Kaye Scholer estimates that it would take

6   in excess of seventy (70) hours to create a document-by-document privilege log for this case, and

7   that the Federal Rules of Civil Procedure do not require Kaye Scholer to undertake such an

8   unreasonable burden. Furthermore, Kaye Scholer contends that the failure to produce a

9   document-by-document privilege log does not result in a per-se waiver of any privilege.

10        MGA also opposes Mattel's motion for several reasons. First, MGA contends that

11   Mattel's requests are overbroad, encompassing documents that are only marginally related, if at

12   all, to the claims and defenses in the case. Second, MGA contends that Mattel's requests are

13   completely duplicative of requests it has served on the parties in the case. In particular, MGA

14   contends that Mattel has sought the Larian v. Larian documents from both MGA Entertainment,

15   Inc. and Isaac Larian. See Mattel's Request No. 41 in Mattel's First Set of Request for

16   Production of Documents and Tangible Things to MGA, and Request Nos. 123-125 in Mattel's

17   First Set of Requests for Documents and Things to Isaac Larian. MGA and Isaac Larian are both

18   under court order to comply with the requests, although Isaac Larian is only required to produce

19   documents that refer or relate to Bratz in response to Request Nos. 123-125. Third, MGA

20   contends that Mattel's requests to Kaye Scholer are much broader than requests Mattel previously

21   served on the parties to this case. Fourth, MGA contends that there is no reason Mattel cannot

22   obtain a complete set of all relevant documents from the Larian v. Larian proceedings without this

23   third-party subpoena. Fifth, MGA contends that the vast majority of documents Mattel seeks

24   from Kaye Scholer are protected by the attorney-client privilege, the work product doctrine, or

25   other privileges, and that it is improper for Mattel to attempt to subpoena these documents and

26   then insist that Kaye Scholer produce a document-by-document privilege log. In summary, MGA

27   contends that Mattel has misused the subpoena process by serving deliberately overbroad and

28

1   burdensome requests in an attempt to harass and intimidate MGA and non-parties.  Accordingly,

2   MGA contends that Mattel's motion should be denied or Mattel's subpoena should be

3   substantially limited in scope.

4         <u>Mattel's Subpoena is Overbroad, Unduly Burdensome and Cumulative</u>

5         Mattel's subpoena to Kaye Scholer is overbroad and is not reasonably tailored to seek

6   documents relevant to the claims and defenses in this case.  Of the thirty-five requests Mattel

7   served on Kaye Scholer, all but one begin with the phrase "all documents" or a similarly broad

8   phrase.  For example, Request Nos. 1-3, which are set forth below, seek virtually all documents

9   relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian:

10       <u>Request No. 1</u>:  All DOCUMENTS, including all COMMUNICATIONS,
11       RELATING TO any and all arbitration proceedings between FARHAD LARIAN
       and ISAAC LARIAN, including without limitation all video and/or sound
12       recordings, transcripts, exhibits, memoranda, witness statements, declarations,
       affidavits and sworn testimony given by any PERSON in connection with such
13       arbitration proceedings.

14       <u>Request No. 2</u>:  All DOCUMENTS including all COMMUNICATIONS,
       RELATING TO Los Angeles Superior Court Case No. BC301371 filed by
15       FARHAD LARIAN against ISAAC LARIAN and/or any related proceedings,
       including any appeal thereof, and including without limitation all video and/or
16       sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
       statements, declarations, affidavits and sworn proceedings and/or any appeal
17       related to such lawsuit.

18       <u>Request No. 3</u>:  All DOCUMENTS RELATING TO Los Angeles Superior Court
       Case No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN,
19       MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any
       appeal of such lawsuit, including without limitation all video and/or sound
20       recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness
       statements, declarations, affidavits and sworn testimony given by any PERSON in
21       connection with such suit and/or related proceedings and/or any appeal related to
       such lawsuit.

22   Mattel has not limited the subject matter of these requests (and others) in any way to exclude

23   irrelevant information.  To the contrary, Request Nos. 1-3 are drafted in the broadest possible

24   language, encompassing documents that are only marginally related, if at all, to this case.  As

25   such, Mattel's requests are also unduly burdensome.

26         Furthermore, Mattel's requests are clearly duplicative of other requests propounded to the

27

28       
                 

1   parties in this action. In particular, the requests relating to the <u>Larian v. Larian</u> proceedings are
2   duplicative of Mattel's Request No. 41 to MGA and Request Nos. 123-125 to Isaac Larian.
3   During the hearing, counsel for MGA acknowledged that Isaac Larian is required to comply with
4   Request Nos. 123-125, and is prepared to review Kaye Scholer's files for responsive documents
5   to fulfill his responsibility. Also during the hearing, Kaye Scholer agreed to make its
6   correspondence file available to MGA's counsel for review.

7       In light of Mattel's failure to take reasonable steps to avoid unduly burdening Kaye
8   Scholer and in light of MGA's and Kaye Scholer's representations during the hearing as outlined
9   above, Mattel's motion to compel Kaye Scholer to comply with the full scope of the subpoena is
10  denied.

11              Kaye Scholer's Compromise is Reasonable Under the Circumstances

12      As an alternative to complying with the full scope of the subpoena, Kaye Scholer agreed
13  to review the following files for documents responsive to every one of Mattel's requests except
14  Nos. 1-3, 6 and 10: (1) pleading files; (2) discovery files; and (3) arbitration exhibits. Kaye
15  Scholer's Opposition at p.5. Kaye Scholer's compromise is reasonable under the circumstances.
16  Narrowing the scope of Kaye Scholer's search in this manner will significantly minimize the
17  burden, expense, and inconvenience imposed by the subpoena because, unlike Kaye Scholer's
18  other files, most of the documents in the three files it agreed to search are not likely to be covered
19  by the attorney-client privilege or work product doctrine. Further, narrowing Kaye Scholer's
20  search in this manner will not significantly deprive Mattel of relevant discovery to which it is
21  entitled because, as stated previously, MGA's counsel represented during the hearing that Isaac
22  Larian is prepared to review Kaye Scholer's documents, including the correspondence file, to
23  comply with Request Nos. 123-125.

24      Accordingly, to the extent it has not already done so, Kaye Scholer shall conduct the
25  agreed upon search of its three files and produce documents responsive to all of Mattel's requests,
26  except Nos. 1-3, 6 and 10.

27  //

28                                                                                              18
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

1           Kaye Scholer Must Produce a Privilege Log in Compliance with Rule 45

2           Mattel contends that Kaye Scholer has waived its claims of privilege by failing to produce

3   any privilege log. The law is clear, however, that the failure to produce a document-by-document

4   privilege log does not result in a per-se waiver of any privilege. See Burlington Northern & Santa

5   Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont., 408 F.3d 1142, 1147 (9th Cir. 2005). In this

6   case, Kaye Scholer raised a legitimate objection to producing a document-by-document privilege

7   log on the grounds that it would impose an undue burden. Under these circumstances, a finding

8   of waiver is unjustified.

9           Nevertheless, Kaye Scholer's claim of undue burden is unpersuasive. Kaye Scholer has

10  acknowledged that most of the documents in the three files it has agreed to search are not likely to

11  be covered by the attorney-client privilege or work product doctrine. Kaye Scholer Opposition at

12  pp. 5 and 9. Indeed Kaye Scholer agreed to search these files precisely because they were not

13  likely to contain privileged documents. Therefore, requiring Kaye Scholer to produce a

14  document-by-document privilege log for documents withheld from these three files should not

15  impose an undue burden. Accordingly, Kaye Scholer is ordered to produce a document-by-

16  document privilege log for documents withheld from the three files it agreed to search.

17                                  V. CONCLUSION

18          For the reasons set forth above, it is ordered as follows:

19          1. Farhad Larian is in substantial compliance with Mattel's subpoena with respect to all of

20  the requests, except Nos. 23, 24 and 41. Request Nos. 23, 24 and 41 are overbroad, unduly

21  burdensome, cumulative, harassing and invade the right of privacy of Farhad Larian and his

22  family. Therefore, Mattel's motion to compel Farhad Larian to produce documents in response to

23  the subpoena is denied.

24          2. Farhad Larian shall produce a document-by-document privilege log to Mattel no later

25  than January 30, 2008.

26          3. Farhad Larian's request for sanctions against Mattel is denied.

27          4. Mattel's subpoena to Kaye Scholer is overbroad, unduly burdensome and cumulative.

28

1   Therefore, Mattel's motion to compel Kaye Scholer to produce documents responsive to the

2   subpoena is denied.  Instead, Kaye Scholer is ordered to abide by its agreement to review its

3   pleading files, discovery files, and arbitration exhibits for documents responsive to all of Mattel's

4   requests, except Request Nos. 1-3, 6 and 10.  Kaye Scholer shall produce responsive documents

5   no later than January 30, 2008.

6          5. Kaye Scholer shall also produce a document-by-document privilege log identifying all

7   documents withheld from its pleading files, discovery files, and arbitration exhibits, no later than

8   January 30, 2008.

9          6. Mattel shall abide by its agreement to reimburse Farhad Larian and Kaye Scholer for

10  their copying costs.

11         7. Isaac Larian is granted an extension of time to comply with Request Nos. 123-125.

12  Isaac Larian shall deliver documents responsive to these requests to Mattel no later than 12:00

13  p.m. on January 25, 2008.

14         8. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

15  Master, Mattel shall file this Order with the Clerk of Court forthwith.

16

17  Dated: January 25, 2008                    /s/Edward A. Infante

18                                        HON. EDWARD A. INFANTE (Ret.)
                                              Discovery Master

19

20

21

22

23

24

25

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                    20

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2008, I served the attached ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SHOLER AND STERN & GOLDBERG TO PRODUCE DOCUMENTS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Patricia Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgentaler@chrisglase.com |
| Alan N. Goldberg, Esq. | Stern & Goldberg | agoldberg@sgattys.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| Bryant S. Delgadillo, Esq. | Kaye Scholer | bdelgadi@kayescholer.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 25, 2008, at San Francisco, California.

_____
Sandra Chan