1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443 3000
6  Facsimile: (213) 443 3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10                 EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTERS OF REQUEST**<br><br>[Declaration of Jon D. Corey; Declaration of Michael L. Fazio; Notice of Lodging of Foreign Authorities; Application to File Under Seal; and [Proposed] Order Filed Concurrently]<br><br>Hearing Date: March 3, 2008<br>Time: 10:00 a.m.<br>Courtroom: 1<br><br>**Phase 1**<br>Discovery Cut-off: January 28, 2008<br>Pre-trial Conference: May 5, 2008<br>Trial Date May 27, 2008 |

07209/2312418.2

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT .............................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT ........................................................................................................... 4

I.   THE DISTRICT COURT HAS AUTHORITY TO ISSUE THE
     LETTER OF REQUEST ................................................................................ 4

II.  MATTEL'S REQUEST FOR INFORMATION IS CONSISTENT
     WITH CANADIAN LAW .............................................................................. 8

     A.   The Topics Of Testimony And Categories Of Documents Sought
          From Ms. Brisbois and MGA Canada Are Both Relevant And
          Necessary To Mattel's Prosecution Of Its Counterclaims At Trial ........ 9

     B.   Mattel's Has Unsuccessfully Attempted To Obtain The Verbal
          And Documentary Evidence It Needs To Prosecute Its
          Counterclaims ......................................................................................... 11

     C.   The District Court's Order Granting Mattel's Letter Of Request Is
          Not Contrary To Canadian Public Policy Or Sovereignty ................... 12

     D.   The Documents Sought Are Specified With Reasonable
          Particularity And No Undue Burden Will Result From Either
          Ms. Brisbois' Deposition, MGA's Canada's Person Most
          Knowledgeable Deposition Or Their Production Of Documents ......... 13

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## Cases

Advance/Newhouse Partnership and Bright House Networks, LLC v. Brighthoulse, Inc.,
[2005] 38 C.P.R. (4th) 559 ............................................................................. 14

Campbell Estate, B.C.J. No. 2304 ................................................................... 12

Friction Division Products Inc. v. E.I. Du Pont de Nemours & Co. (No. 2),
[1986] 56 O.R. 722 (H.C.J.) ........................................................................... 9

Ontario Public Service Employees Union Pension Trust Fund v. Clark,
2005 CanLII 51027 (on S.C.) ................................................................. 12, 14

Presbyterian Church of Sudan v. Rybiak,
[2005] 256 D.L.R. (4th) 750 .......................................................................... 14

Zingre v. The Queen et al.,
1981 CanLII 32 at 401 (S.C.C.) .................................................................... 12

## Statutes

Federal Rule of Civil Procedure 28 .................................................................. 1

Federal Rule of Civil Procedure 28(b)(1) ....................................................... 4

Federal Rule of Civil Procedure 28(b)(2) ....................................................... 4

Local Rule 7-3 .................................................................................................. 2

## Other Authorities

Canada Evidence Act, R.S.C., ch. C-5, § 46 (1999) (Can.) ........................... 8

Ontario Evidence Act, Section 60(1) ............................................................... 8

R.S.O. 1990, c. E.23, s. 60 (1); 2000, c. 26, Sched. A, s. 7 (2). ................... 9

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |     PLEASE TAKE NOTICE that on March 3, 2008, at 10:00 a.m., or as soon
3 | thereafter as the matter may be heard, in the courtroom of Honorable Stephen G.
4 | Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc.
5 | will, and hereby does, move the Court, pursuant to <u>Federal Rule of Civil Procedure</u>
6 | 28, for the issuance of a Letter of Request for International Judicial Assistance:
7 | (1) to compel the oral deposition and production of documents by Janine Brisbois in
8 | her personal capacity in Ontario, Canada; and (2) to compel the oral deposition of
9 | MGA Entertainment Canada Company's ("MGA Canada") person most
10 | knowledgeable and the production of documents by MGA Canada in Ontario,
11 | Canada. A form of the Letter of Request for International Judicial Assistance for
12 | Janine Brisbois and MGA Canada are attached hereto as Exhibit 1. The documents
13 | requested by Mattel are set forth in Schedules B and D to the attached Letters of
14 | Request. The topics of oral testimony sought from Janine Brisbois and MGA
15 | Canada's designee or designees are set forth in Schedules C and E, respectively.

16 |     Mattel makes this motion pursuant to <u>Federal Rule of Civil Procedure</u> 28 on
17 | the grounds that Ms. Brisbois and MGA Canada have evidence in the form of
18 | relevant testimony and documents critical to the subject matter of these consolidated
19 | cases and specifically to Mattel's Counterclaims. MGA Canada and Ms. Brisbois,
20 | through counsel for MGA Entertainment, Inc., the parent of MGA Canada, have
21 | refused to provide to Mattel the requested evidence. Accordingly, it is necessary
22 | that this Court issue the accompanying Letter of Request for International Judicial
23 | Assistance to obtain the requested evidence.

24 |     This Motion is based on this Notice of Motion, the accompanying
25 | Memorandum of Points and Authorities, the accompanying Declaration of Jon D.
26 | Corey, the Notice of Lodging, all other pleadings and papers on file in this action,
27 | any matters of which this Court may take judicial notice, and such further evidence
28 | and argument as may be presented at or before the hearing on this matter.

1    The parties met and conferred on the matters in this Motion on September 18

2  and 21, 2007 pursuant to Local Rule 7-3 and thereafter.

3

4  DATED:  January 28, 2008          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
5

6                                     By
7                                         Jon D. Corey
                                          Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2312418.2

2

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

3      Mattel, Inc. ("Mattel") requests that this Court issue the accompanying Letters
4    of Request for International Judicial Assistance for the purpose of taking the
5    deposition under oath of Janine Brisbois and MGA Canada in Ontario, Canada.
6    Mattel further requests the Letter of Request provide for the production of
7    documents by Ms. Brisbois and MGA Canada.

8      There is more than adequate justification for the Court to issue the Letter of
9    Request. Janine Brisbois, Mattel's former Director of Sales for the Girls Division in
10   Canada, is featured in Mattel's counterclaims. Mattel alleges that Ms. Brisbois,
11   while employed by Mattel, was responsible for Mattel's accounts at Toys 'R Us and
12   Wal-Mart. Ms. Brisbois had access to and subsequently stole Mattel's trade secrets,
13   or otherwise confidential and propriety information, and furnished this information
14   to MGA. Ms. Brisbois also stole and provided to MGA approximately 45 Mattel
15   documents ranging from Mattel's Barbie television advertising strategy to product
16   launch dates for new Mattel products. Ms. Brisbois and MGA subsequently used
17   this information to MGA's benefit, including MGA's management of its Toys 'R Us
18   and Wal-Mart accounts. Given Ms. Brisbois' misconduct, the requested discovery is
19   both highly relevant and essential to Mattel's counterclaims.

20     Further, as to MGA Canada, Mattel seeks discovery in the form of deposition
21   testimony and documents regarding how MGA Canada used Mattel's trade secrets,
22   confidential and proprietary information to the benefit of MGA Entertainment in the
23   United States. This discoverable information requires that Mattel understand the
24   manner in which MGA Canada accesses, stores, reproduces, disseminates, and/or
25   reviews the documents and information stolen by Ms. Brisbois from Mattel.
26   Accordingly, Mattel seeks documents regarding MGA Canada's use of Mattel's
27   proprietary and confidential information and the deposition of MGA Canada on
28   these topics.

1      The requested discovery is narrowly tailored. Mattel seeks to depose

2 Ms. Brisbois on only six topics and Mattel has requested only 10 categories of

3 documents be produced by her. Similarly, Mattel seeks to depose MGA Canada's

4 person most knowledgeable on only two topics and Mattel has requested only 10

5 categories of documents be produced. Though this discovery, which is otherwise

6 unavailable to Mattel, will not impose an undue burden upon Ms. Brisbois or MGA

7 Canada, it is essential for Mattel to prosecute its counterclaims against MGA. The

8 requested discovery is not contrary to Canadian public policy and it will not infringe

9 upon Canadian sovereignty. For these reasons, and for the reasons set forth below,

10 the Court should issue the proposed Letter of Request for Foreign Judicial

11 Assistance.

12                     **Statement of Facts**

13      Absent the issuance of the Letter of Request, Mattel will be unable to obtain

14 the relevant and necessary evidence in the possession of MGA Canada and

15 Ms. Brisbois. Mattel has previously attempted to depose Ms. Brisbois. Mattel

16 noticed Ms. Brisbois' deposition on two occasions—once for November 8, 2007 and

17 again for November 14, 2007.[1] Mattel also informally requested that MGA

18 voluntarily produce Ms. Brisbois for deposition.[2] MGA refused, asserting that

19 Ms. Brisbois works for a non-party in Canada and, therefore, Mattel improperly

20 noticed her deposition.[3] MGA Canada is a direct, fully-owned subsidiary of

21 defendant MGA Entertainment, Inc.[4]

22

23    [1] See Notice of Deposition of Janine Brisbois dated September 14, 2007; Corrected Notice of Deposition of Janine Brisbois dated September 14, 2007

24 (attached to the Declaration of Jon D. Corey dated January 28, 2008 ("Corey Dec.")

25 as Exhibits A and B, respectively).
   [2] See Letter from Jon Corey to MGA's counsel dated September 14, 2007

26 (attached to the Corey Dec. as Exhibit C);

27    [3] See Letter from Scott E. Gizer to the Honorable Edward Infante dated September 16, 2007 (attached to the Corey Dec. as Exhibit D); see also MGA

28 (footnote continued)

1   Similarly, Mattel has attempted to obtain documents from both Ms. Brisbois

2   and MGA Canada regarding Ms. Brisbois' involvement in the allegations underlying

3   Mattel's counterclaims and MGA Canada's access to and use of Mattel's trade

4   secrets, confidential and proprietary information.[5]  MGA, however, has made clear

5   that it will not produce documents that are within the possession, custody or control

6   of its foreign subsidiary.[6]

7   On January 7, 2008, the Court granted leave for Mattel to take the deposition

8   of Ms. Brisbois.[7]  On January 22, 2008, and pursuant to the Court's Order, Mattel

9

10

11

12

---

13   Entertainment, Inc's Objection to Mattel Inc.'s Submission Regarding Deposition
Scheduling dated September 16, 2007 at 9 (attached to the Corey Dec. as Exhibit E).

14   [4]  See Exhibit 515 to the July 19, 2007 deposition transcript of Lisa Tonnu
(attached as Exhibit A to the Declaration of Michael L. Fazio dated January 28,

15   2008); 7/19/2007 Tonnu Tr. at 47:14 to 48:11(attached to the Corey Dec. as Exhibit

16   H); *see also* letter from Jon Corey to Amman Khan dated September 25, 2007 ("You
also stated that Jeanine Brisbois does not work for MGA, but an MGA

17   subsidiary. . . . ") (attached to the Corey Dec. as Exhibit I).

18   [5]  See generally Mattel, Inc.'s First Set of Requests for Documents and Things

19   dated December 18, 2006 (attached to the Corey Dec. as Exhibit F); letter from Jon
Corey to Amman Khan dated September 25, 2007 at 3 (attached to the Corey Dec.

20   as Exhibit I); letter from Jon Corey to Amman Khan dated October 2, 2007 at 1

21   (attached to the Corey Dec. as Exhibit J).

[6]  See MGA Entertainment, Inc.'s Responses to Mattel, Inc.'s First Set of

22   Requests for Production of Documents and Tangible Things dated April 13, 2005 at

23   3 ("MGA objects to each request to the extent it seeks information relating to
activities in a foreign country.  In each instance in which MGA has agreed to

24   produce documents, *such production is hereby expressly limited to documents*

25   *relating to domestic activities or conduct only.*") (emphasis added) (attached to the
Corey Dec. as Exhibit G).

26   [7]  See Mattel's Motion for Leave to Take Additional Discovery dated

27   November 17, 2007 at 13 (attached to the Corey Dec. as Exhibit N); Order dated
January 7, 2008 at 3 (attached to the Corey Dec. as Exhibit O).

28

1 | inquired as to whether MGA would produce Ms. Brisbois for deposition.[8]  MGA has
2 | not responded to Mattel's inquiry.

3 | **Argument**

4 | **I.    THE DISTRICT COURT HAS AUTHORITY TO ISSUE THE LETTER**
5 | **OF REQUEST**

6 | Because information and witnesses are located in Canada that are necessary to
7 | Mattel's prosecution of its counterclaims against MGA, the Court should issue the
8 | Proposed Letter of Request for International Judicial Assistance to the Ontario
9 | Superior Court of Justice.  The Proposed Letter of Request, filed concurrently
10 | herewith, would ask the Ontario Superior Court of Justice to compel: (1) Janine
11 | Brisbois to produce the documents set forth in Schedule B; (2) Janine Brisbois to be
12 | examined under oath on the topics set forth in Schedule C; (3) MGA Entertainment
13 | Canada to produce the documents set forth in Schedule D; and (4) MGA
14 | Entertainment Canada to produce a knowledgeable designee to testify on the topics
15 | set forth in Schedule E who will be examined under oath.

16 | Under Federal Rule of Civil Procedure 28(b)(1), "[a] deposition may be taken
17 | in a foreign country . . . under a letter of request, whether or not captioned a 'letter
18 | rogatory.'"  Further, Rule 28(b)(2) provides for the issuance of a Letter of Request
19 | "on appropriate terms after an application and notice of it. . . . "  Here, the Letter of
20 | Request to the Ontario Superior Court of Justice is necessary to allow Mattel to
21 | collect evidence necessary to prosecute its counterclaims against MGA.

22 | Janine Brisbois is featured prominently throughout Mattel's Counterclaims as
23 | one of the former Mattel employees who misappropriated Mattel's trade secrets and

24 |

25 | _____
26 | [8]    See letter from Jon Corey to Paul Eckles dated January 22, 2008 (attached to the Corey Dec. as Exhibit K); see also emails from Jon Corey to Paul Eckles dated
27 | January 22, 2008 and January 23, 2008 (attached to the Corey Dec. as Exhibits L and M, respectively).

28 |

1 | other Mattel confidential and proprietary information.  See Mattel Counterclaims,
2 | ¶¶ 4, 71-76, 89-90, 97, 99, 107, 123.  Mattel alleges:

3 | In 2005, MGA needed help in Canada.  So MGA, again
4 | operating from its Southern California headquarters,
5 | hired Janine Brisbois from Mattel.  At that time,
6 | Ms. Brisbois was responsible for Mattel's account with
7 | Toys 'R Us ("TRU") and Wal-Mart.  MGA gave her
8 | responsibility for those same accounts, and she took from
9 | Mattel documents containing proprietary advertising,
10 | project, sales, customer and strategy information for not
11 | only Canada, but for the United States.  Eliminating any
12 | doubt that MGA then proceeded to use those stolen
13 | materials, Brisbois subsequently accessed and modified
14 | certain of those Mattel documents while employed by
15 | MGA.[9]

16 | * * *

17 | Mattel subsequently learned that on the same day that she
18 | spoke with Mr. Larian and four days before she resigned,
19 | Brisbois copied approximately 45 Mattel documents on
20 | to a USB or "thumb" drive with the volume label
21 | "BACKPACK."  On information and belief, Brisbois
22 | removed the thumb drive from Mattel Canada's office by
23 | concealing it in her backpack or gym bag the last time
24 | that she left that office.  These documents contained

25 |
26 |
27 | [9] The allegations set forth in this section are from Mattel's Second Amended Counterclaims dated July 12, 2007 ("Mattel's Counterclaims"), ¶ 4.
28 |

Mattel trade secret and proprietary information, and included:

•     a document containing the price, cost, sales plan and quantity of every Mattel product ordered by every Mattel customer in 2005 and 2006;

•     the BARBIE television advertising strategy and information concerning sales increases generated by television advertisements;

•     competitive analysis of Mattel vis-à-vis its competitors in Canada;

•     an analysis of Mattel's girls business sales beginning in 2003 and forecasts through 2006;

•     profit and loss reviews for Mattel's products being sold in Wal-Mart, including margins and profit in not only Canada, but in the United States and Mexico; and a document containing the product launch dates and related advertising for all Mattel new products between Fall 2005 and Spring 2006.[10]

\*      \*      \*

After Mattel discovered that Brisbois had copied these sensitive documents to a thumb drive, Mattel notified Canadian law enforcement authorities.  Canadian law enforcement authorities recovered from Brisbois a thumb drive with the volume label "BACKPACK" containing the documents that Brisbois had copied from Mattel's computer system.  Mattel later learned that while she was

1        working as a Vice President of Sales at MGA, Brisbois

2        accessed and modified documents on that thumb drive.[11]

3 Ms. Brisbois has unique and personal knowledge of the claims and defenses in these

4 consolidated actions. It will further the interests of justice if she is deposed, under

5 oath, as to her knowledge of the facts which are relevant to the issues of these cases.

6      Mattel also seeks discovery in the form of deposition testimony and

7 documents regarding how MGA Canada used Mattel's trade secrets, confidential and

8 proprietary information to the benefit of MGA Entertainment in the United States.

9 This discoverable information requires that Mattel understand the manner in which

10 MGA Entertainment Canada accesses, stores, reproduces, disseminates, and/or

11 reviews the documents and information stolen by Ms. Brisbois from Mattel.

12      Ms. Brisbois, MGA Canada's person most knowledgeable and the documents

13 requested by Mattel in its accompanying Letter of Request are located in Ontario,

14 Canada. Mattel requested by both deposition notice and letter addressed to MGA's

15 counsel that they produce Ms. Brisbois voluntarily for deposition.[12] Mattel's request

16 was rejected by MGA's counsel.[13] On January 7, 2008, the Discovery Master

17 granted leave for Mattel to take the deposition of Ms. Brisbois.[14] On January 22,

18 2008, and in accordance with the Court's Order, Mattel inquired as to whether MGA

19

20   [10] Mattel's Counterclaims, ¶ 74.

21   [11] Mattel's Counterclaims, ¶ 75.

    [12] See Notice of Deposition of Janine Brisbois dated September 14, 2007;
22 Corrected Notice of Deposition of Janine Brisbois dated September 14, 2007; Letter
23 from Jon Corey to MGA's counsel dated September 14, 2007 (attached to the Corey
   Dec. as Exhibits A, B and C, respectively).

24   [13] See fn.3, *supra*; see also letter from Jon Corey to Amman Khan dated
25 September 25, 2007 (attached to the Corey Dec. as Exhibit I); letter from Jon Corey
   to Amman Khan dated October 2, 2007 (attached to the Corey Dec. as Exhibit J).

26   [14] See Mattel's Motion for Leave to Take Additional Discovery dated
27 November 17, 2007 (attached to the Corey Dec. as Exhibit N); Order dated
   January 7, 2008 (attached to the Corey Dec. as Exhibit O).

28

1 | would produce Ms. Brisbois for deposition.  MGA has not responded to Mattel's
2 | inquiry.  Accordingly, Mattel must rely on this Court's authority to request judicial
3 | assistance from the Ontario Superior Court of Justice to permit Mattel to obtain the
4 | necessary evidence.

5 | **II.   MATTEL'S REQUEST FOR INFORMATION IS CONSISTENT WITH**
6 | **CANADIAN LAW**

7 | Both Canadian federal law and Ontario provincial law provide for the
8 | examination of parties or witnesses with information relevant to foreign lawsuits, as
9 | well as the production of documents relevant to such lawsuits.[15]  The Ontario

10 |

[15]   Section 46 of the Canada Evidence Act provides:

> If, on an application for that purpose, it is made to appear to any court or judge that any court or tribunal outside Canada, before which any civil, commercial or criminal matter is pending, is desirous of obtaining the testimony in relation to that matter of a party or witness within the jurisdiction of the first mentioned court, of the court to which the judge belongs or of the judge, the court or judge may, in its or their discretion, order the examination on oath on interrogatories, or otherwise, before any person or persons named in the order, of that party or witness accordingly, and by the same or any subsequent order may command the attendance of that party or witness for the purpose of being examined, and for the production of any writings or other documents mentioned in the order and of any other writings or documents relating to the matter in question that are in the possession or power of that party or witness.

Canada Evidence Act, R.S.C., ch. C-5, § 46 (1999) (Can.).

Similarly, Section 60(1) of the Ontario Evidence Act provides:

> Where it is made to appear to the Superior Court of Justice or a judge thereof, that a court or tribunal of competent jurisdiction in a foreign country has duly authorized, by commission, order or other process, for a purpose for which a letter of request could be issued under the rules of court, the obtaining of the testimony in or in relation to an action, suit or proceeding pending in or before such foreign court or tribunal, of a witness out of the jurisdiction thereof and within the jurisdiction of the court or judge so applied to, such court or judge may order the examination of such witness before the person appointed, and in the manner and form directed by the commission, order or other process, and may, by the same or by a subsequent order, command the attendance of a person named therein for the purpose of being examined, or the production of a writing or other document or thing mentioned in the order, and may give all such directions as to the time

(footnote continued)

1 | Superior Court, in <u>Friction Division Products Inc. v. E.I. Du Pont de Nemours & Co.</u>
2 | <u>(No. 2)</u>, [1986] 56 O.R. 722 (H.C.J.) at 732, set out the factors to be considered by
3 | the Canadian court when exercising its discretion to grant the District Court's Letter
4 | of Request. Those factors are:

5 |     (1)    The evidence is relevant;

6 |     (2)    The evidence sought is necessary for trial and will be adduced at trial,
7 | if admissible;

8 |     (3)    The evidence is not otherwise obtainable;

9 |     (4)    The order sought is not contrary to public policy;

10 |     (5)    The documents sought are identified with reasonable specificity; and

11 |     (6)    The order sought is not unduly burdensome.

12 | Here, Mattel has shouldered and met its burden with respect to each of these factors.

13 | **A.**    **<u>The Topics Of Testimony And Categories Of Documents Sought</u>**
14 |         **<u>From Ms. Brisbois And MGA Canada Are Both Relevant And</u>**
15 |         **<u>Necessary To Mattel's Prosecution Of Its Counterclaims At Trial</u>**

16 |     As detailed in Section I, *supra*, Ms. Brisbois is an actor featured prominently
17 | throughout Mattel's Second Amended Counterclaims. Mattel alleges that MGA and
18 | other defendants have engaged in the systematic theft of Mattel's trade secrets, much
19 | of which helped MGA unfairly compete against Mattel.[16] Specifically, in the past
20 | few years, MGA has hired directly from Mattel at least 25 employees, ranging from
21 | the Senior Vice-President level to lower level employees.[17] Many of these
22 | employees were specifically targeted and recruited by MGA based on the Mattel

23 |

24 |     and place of the examination, and all other matters connected therewith
    as seem proper, and the order may be enforced, and any disobedience
25 |     thereto punished, in like manner as in the case of an order made by the
    court or judge in an action pending in the court or before a judge of the
    court.
26 |     R.S.O. 1990, c. E.23, s. 60 (1); 2000, c. 26, Sched. A, s. 7 (2).
    [16] Mattel's Counterclaims, ¶ 37.
27 |     [17] Mattel's Counterclaims, ¶ 77.
28 |

1 confidential and proprietary information the Mattel employees could access.[18]

2 Janine Brisbois was one of these employees.

3     MGA recruited ex-Mattel employee Janine Brisbois in 2005. Mattel has

4 alleged that Ms. Brisbois, while employed by Mattel, was responsible for Mattel's

5 accounts at Toys 'R Us and Wal-Mart.[19] Ms. Brisbois had access to and

6 subsequently stole Mattel's trade secrets, or otherwise confidential and propriety

7 information, and furnished this information to MGA.[20] Ms. Brisbois also stole and

8 provided to MGA approximately 45 Mattel documents ranging from Mattel's Barbie

9 television advertising strategy to product launch dates for new Mattel products.[21]

10 Ms. Brisbois and MGA subsequently used this information to MGA's benefit,

11 including MGA's management of its Toys 'R Us and Wal-Mart accounts.[22]

12 Ms. Brisbois' testimony regarding her participation in this scheme with MGA and

13 anyone acting on MGA's behalf is, therefore, both relevant and necessary to Mattel's

14 prosecution of its Counterclaims for RICO, conspiracy to violate the RICO Act,

15 theft and misappropriation of trade secrets, and unfair competition, among others.

16 See Mattel's Counterclaims, ¶¶ 88-97; 98-105, 106-115, 163-170.

17     Further, MGA Canada's person most knowledgeable on the topics set forth in

18 Schedule E to the concurrently filed Letter of Request has unique and personal

19 knowledge regarding the manner in which MGA Canada accessed, used,

20 reproduced, disseminated and/or transferred Mattel's trade secrets, confidential and

21 proprietary information stolen by Ms. Brisbois. Therefore, it will further the

22 interests of justice if MGA Canada's person most knowledgeable on these topics is

23

24

---

25   [18] Id.
  [19] Mattel's Counterclaims, ¶ 72.

26   [20] Mattel's Counterclaims, ¶¶ 72, 74.

27   [21] Mattel's Counterclaims, ¶ 74.
  [22] Mattel's Counterclaims, ¶ 97.

28

1 | deposed, under oath, as to his or her knowledge of the facts which are relevant to the
2 | issues of these cases.

3 |     Similarly, in its request for the production of documents, Mattel seeks highly
4 | relevant information.  Mattel requests documents containing communications
5 | between Ms. Brisbois and MGA prior to her resignation from Mattel.  Such
6 | documents will prove that Ms. Brisbois, acting in concert with MGA, planned and
7 | subsequently stole Mattel's trade secret or otherwise confidential and propriety
8 | information, including information relating to Bratz dolls.  These documents will
9 | prove Mattel's Counterclaims for RICO, conspiracy, and misappropriation of trade
10 | secrets, among others.  See Mattel's Counterclaims, ¶¶ 88-97; 98-105, 106-115.
11 | Similarly, documents regarding Mattel's propriety information received and utilized
12 | by MGA or MGA Canada from Ms. Brisbois (either directly or indirectly) will
13 | establish the same and such documents are necessary in order for Mattel to
14 | adequately prosecute its Counterclaims.

15 |     **B.    Mattel's Has Unsuccessfully Attempted To Obtain The Verbal And**
16 |          **Documentary Evidence It Needs To Prosecute Its Counterclaims**

17 |     Mattel has previously sought to depose Ms. Brisbois.  Mattel noticed her
18 | deposition and requested through MGA's counsel that she voluntarily appear for
19 | deposition and produce the requested documents.[23]  MGA's counsel, on behalf of
20 | Ms. Brisbois, refused.[24]  Where, as here, Mattel has requested that Ms. Brisbois
21 | voluntarily appear for deposition, and she has refused to do so, and Mattel has no

22 |

23 | [23]    See Notice of Deposition of Janine Brisbois dated September 14, 2007;
   | Corrected Notice of Deposition of Janine Brisbois dated September 14, 2007; Letter
24 | from Jon Corey to MGA's counsel dated September 14, 2007 (attached to the Corey
25 | Dec. as Exhibits A, B and C, respectively).
   | [24]    See Letter from Scott E. Gizer to the Honorable Edward Infante dated
26 | September 16, 2007; see also MGA Entertainment, Inc's Objection to Mattel Inc.'s
27 | Submission Regarding Deposition Scheduling dated September 16, 2007 at 9
   | (attached to the Corey Dec. as Exhibits D and E, respectively).
28 |

1   other means of obtaining the requested discovery, then it is appropriate for this

2   Court to make the requested order.  See Ontario Public Service Employees Union

3   Pension Trust Fund v. Clark, 2005 CanLII 51027; see also Campbell Estate, B.C.J.

4   No. 2304, at ¶ 15 ("Where, as here, the respondents initially declined co-operation

5   and the foreign court, with that knowledge, requested co-operation by issuing the

6   Letters Rogatory, this court may make the order sought.").

7          Furthermore, MGA has stated that its agreement to produce documents "is

8   hereby expressly limited to documents relating to domestic activities or conduct

9   only."[25]  Mattel is, therefore, similarly unable to obtain the requested documents

10   from the defendant without the Court's issuance of the Letter of Request.

11         **C.     The District Court's Order Granting Mattel's Letter Of Request Is**

12              **Not Contrary To Canadian Public Policy Or Sovereignty**

13         One would be hard pressed to hypothesize any set of facts upon which

14   Canadian public policy or sovereignty would be implicated by Ms. Brisbois'

15   deposition, the deposition of MGA Canada's person most knowledgeable, or the

16   requested production of documents.  The Supreme Court of Canada has recognized

17   that international comity requires that Letters of Request issued by foreign courts be

18   "given full force and effect unless it be contrary to public policy of the jurisdiction

19   to which the request is directed . . . or otherwise prejudicial to the sovereignty of the

20   citizens of the latter jurisdiction."  Zingre v. The Queen et al., 1981 CanLII 32 at

21   401 (S.C.C.).  The Canadian Supreme Court in Zingre also stated that "the court of

22   one jurisdiction will give effect to the laws and judicial decisions of another

23   jurisdiction, not as a matter of obligation, but out of mutual deference and respect."

24   Id.

25

26   [25]   See MGA Entertainment, Inc.'s Responses to Mattel, Inc.'s First Set of
27   Requests for Production of Documents and Tangible Things dated April 13, 2005 at
     3 (attached to the Corey Dec. as Exhibit G).
28

1    This policy objective of international comity and ensuring that Mattel may
2  properly prepare its case for trial overrides the non-existent public policy concerns
3  that may be asserted by MGA in this case. There has been no intimation by MGA
4  that this Court's issuance of the Proposed Letter of Request, nor the Ontario
5  Superior Court of Justice's granting Mattel's Letter of Request, would infringe upon
6  Canadian sovereignty. Similarly, there has been no indication that the requested
7  discovery would frustrate any Canadian public policy or that the Canadian
8  government would find the requested discovery objectionable. This Court should
9  therefore find that the Letter of Request is not in any way contrary to public policy.

10    **D.    The Documents Sought Are Specified With Reasonable**
11           **Particularity And No Undue Burden Will Result From Either**
12           **Ms. Brisbois' Deposition, MGA's Canada's Person Most**
13           **Knowledgeable Deposition Or Their Production Of Documents**

14    In Mattel's proposed Letter of Request, Mattel requests the testimony of
15  Ms. Brisbois regarding the following highly material issues:

16    (A)    Knowledge of the theft of Mattel documents containing proprietary
17  advertising, project, sales, customer and strategy information by anyone, including
18  Ms. Brisbois (including the 45 documents taken by Ms. Brisbois from Mattel
19  Canada); and

20    (B)    Knowledge of Ms. Brisbois' communications with MGA, or anyone
21  acting on MGA's behalf, on or before September 27, 2005, including but not limited
22  to communications regarding Ms. Brisbois' resignation from Mattel, compensation,
23  money or anything of value paid by MGA to Ms. Brisbois. Mattel also seeks to
24  depose MGA Canada on its methods and procedures regarding its access and use of
25  Mattel's trade secrets (or otherwise confidential and proprietary information). Not
26  only are these topics precise and narrow with respect to the testimony that Mattel
27  seeks to elicit from Ms. Brisbois and MGA Canada, but the information regarding
28  these topics is appropriate given Mattel's allegations.

1    In addition, as to Ms. Brisbois, Mattel requests the production of documents
2 regarding: (1) Ms. Brisbois' communications with MGA prior to her resignation
3 from Mattel; and (2) all documents received by MGA, whether directly or indirectly
4 from Ms. Brisbois, that relate to any Mattel product or plan. These limited
5 document requests are narrowly focused to obtain the evidence sought by Mattel
6 without imposing an undue burden upon Ms. Brisbois.

7    Mattel seeks similar documents from MGA Canada, limiting those requests
8 generally to (1) MGA Canada's efforts, and communications relating thereto, to
9 recruit Ms. Brisbois from Mattel; (2) documents received directly or indirectly from
10 Ms. Brisbois that contain Mattel trade secrets, proprietary or confidential
11 information; (3) MGA Canada's access and use of Mattel's trade secrets, proprietary
12 or confidential information; and (4) Ms. Brisbois responsibility for MGA Canada's
13 Toys 'R Us and Wal-Mart accounts.

14    Further, to the extent that any such burden exists, Mattel will pay the costs
15 associated with the requested document productions, Ms. Brisbois' deposition, and
16 the deposition of MGA Canada's person most knowledgeable. Similar requests have
17 been enforced by Canadian courts. See, e.g., Advance/Newhouse Partnership and
18 Bright House Networks, LLC v. Brighthoulse, Inc., [2005] 38 C.P.R. (4th) 559
19 (allowing depositions of third-party witness pursuant to letters rogatory issued by
20 district court); See Ontario Public Service Employees Union Pension Trust Fund v.
21 Clark, 2005 CanLII 51027 (on S.C.), (allowing deposition with production of
22 documents pursuant to district court's letters rogatory); Presbyterian Church of
23 Sudan v. Rybiak, [2005] 256 D.L.R. (4th) 750 (same). Given the precise nature of
24 Mattel's discovery requests and its commitment to pay the costs associated
25 therewith, MGA cannot be heard to complain of undue burden.

26
27
28

1

## Conclusion

2      The verbal and documentary evidence that Mattel seeks through depositions
3 of Janine Brisbois and MGA Canada and the accompanying production of
4 documents are relevant, narrowly tailored, necessary to afford Mattel an adequate
5 opportunity to present its case, not contrary to Canadian public policy or
6 sovereignty, and Mattel has no other method of securing this evidence.  For the
7 foregoing reasons, Mattel respectfully requests that the Court issue the concurrently
8 filed Letter of Request for Foreign Judicial Assistance.

9

10 DATED:  January 28, 2008      QUINN EMANUEL URQUHART OLIVER &
                              HEDGES, LLP

11

12                              By

13                                Jon D. Corey
                                Attorneys for Mattel, Inc.

# EXHIBIT 1

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10                              EASTERN DIVISION

11

| | |
|---|---|
| 12 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13       Plaintiff, | Consolidated with Case No. CV 04-09059 |
| 14    vs. | Case No. CV 05-02727 |
| 15 MATTEL, INC., a Delaware corporation,, | **[PROPOSED] REQUEST FOR JUDICIAL ASSISTANCE (LETTER OF REQUEST) BY THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA** |
| 16 | |
| 17       Defendant. | |
| 18 AND CONSOLIDATED ACTIONS | |

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   NATURE OF PROCEEDINGS ........................................................................ 2

    A.   Names and Addresses of the Parties and Their Representatives ............ 2

    B.   Nature and Purpose of the Proceedings and Summary of the Alleged Facts ........................................................................................ 2

       1.   Procedural Background ................................................................ 2

       2.   Knowledge of Person to be Examined ........................................ 4

           (a)   Janine Brisbois ................................................................ 4

           (b)   MGA Entertainment Canada ............................................ 6

II.  CANADIAN EVIDENCE SOUGHT ............................................................. 6

    A.   Janine Brisbois ..................................................................................... 7

    B.   MGA Entertainment Canada's Person Most Knowledgeable ................ 9

       1.   Subject Matter About Which The Deponents Are To Be Examined ................................................................................... 10

       2.   Special Methods or Procedures to be Followed ......................... 10

       3.   Fees and Costs ........................................................................... 10

       4.   Conclusion ................................................................................. 10

III. REQUEST FOR JUDICIAL ASSISTANCE .................................................. 11

IV.  RECIPROCITY ............................................................................................ 14

V.   CONCLUSION ............................................................................................ 14

SCHEDULE A ...................................................................................................... 15

SCHEDULE B ...................................................................................................... 16

SCHEDULE C ...................................................................................................... 20

SCHEDULE D ...................................................................................................... 21

SCHEDULE E ...................................................................................................... 25

1 | **TO THE ONTARIO SUPERIOR COURT OF JUSTICE:**

2 | The United States District Court for the Central District of California presents
3 | its compliments to the Ontario Superior Court of Justice, and requests international
4 | judicial assistance to obtain the following: (1) the production of documents and oral
5 | examination, under oath, from Janine Brisbois, as set forth in Schedule B and C,
6 | respectively; (2) the production of documents from MGA Entertainment Canada, as
7 | set forth in Schedule D; and (3) the oral examination, under oath, from MGA
8 | Entertainment Canada on the topics set forth in Schedule E.

9 | This request is made pursuant to 28 U.S.C. § 1781 and the Canada Evidence
10 | Act, Revised Statutes of Canada, 1970, c. E-10. This Court, the United States
11 | District Court for the Central District of California, Eastern Division, is a
12 | competent court of law and equity which properly has jurisdiction over this
13 | proceeding, and has the power to compel the attendance of witnesses and production
14 | of documents both within and outside its jurisdiction. On information and belief,
15 | Ms. Brisbois resides in Canada. The testimony of Ms. Brisbois and the production
16 | of documents by her is intended for use at trial. Further, on information and belief,
17 | the person most knowledgeable on the topics set forth in Schedule E is employed by
18 | MGA Entertainment Canada and resides in Ontario, Canada. The testimony of this
19 | witness and the production of documents by MGA Canada is intended for use at
20 | trial.

21 | This request is made with the understanding that it will in no way require the
22 | person described below to commit any offense, nor will it require the person
23 | described below to undergo a broader form of inquiry than they would if the
24 | litigation were conducted in Canada. In the proper exercise of its authority, this
25 | Court has determined that the testimony of Janine Brisbois on the topics set forth in
26 | Schedule C and the documents described in Schedule B can not be secured except
27 | by the intervention of the Ontario Superior Court of Justice. This Court has further
28 | determined that the testimony of the person most knowledgeable on the topics set

07209/2313474.2

1

1   forth in Schedule E and the documents described in Schedule D can not be secured
2   except by intervention of the Ontario Superior Court of Justice.

3   **I.    NATURE OF PROCEEDINGS**

4       **A.    Names and Addresses of the Parties and Their Representatives**

5           The evidence requested relates to the action entitled <u>Bryant v. Mattel, Inc.</u>,
6   Case No. CV 04-9049 SGL (RNBx), which consists of three actions that have been
7   consolidated before the requesting judicial authority:  <u>Mattel, Inc. v. Bryant</u>, Case
8   No. CV 04-9049 SGL (RNBx) (the "Bryant Case"); <u>Bryant v. Mattel, Inc.</u>, Case
9   No. CV 04-9049 SGL (RNBx) (the "Declaratory Relief Case"), and <u>MGA v.</u>
10  <u>Mattel, Inc.</u>, Case No. CV05-2727 SGL (RNBx) (the "Unfair Competition Case").
11  The parties and their representatives are listed in Schedule A attached hereto.  The
12  applicant for this letter of request is defendant and cross-plaintiff Mattel, Inc.
13  ("Mattel").

14      **B.    Nature and Purpose of the Proceedings and Summary of the**
15               **Alleged Facts**

16            **1.    Procedural Background**

17          <u>Mattel's Original Complaint</u>.  Mattel learned in November 2003 that Carter
18  Bryant, a former Mattel doll designer, had contracted to provide and provided
19  services to MGA Entertainment, Inc. while he was a Mattel employee.  Mattel
20  originally filed suit against Bryant for breach of contract, breach of fiduciary duty,
21  breach of the duty of loyalty, unjust enrichment and conversion in April 2004.  In its
22  Complaint, Mattel alleged its claim to ownership of all inventions and works created
23  by Bryant during his Mattel employment and seeks to recover all benefits obtained
24  as a result of his breach of duties.  As of January 2005, Bryant claimed he had
25  earned more than $10 million from his relationship with MGA.  MGA intervened in
26  Mattel's case against Bryant in December 2004 to defend the rights it claims in the
27  Bratz properties, which Bryant created while, Mattel alleges, he was a Mattel doll
28  designer.

1      <u>Bryant's Counterclaims</u>.  Bryant initially challenged the assignment

2  provisions in the Inventions Agreement between he and Mattel in four

3  Counterclaims, alleging unconscionability, mistake, duress, fraud, Labor Code

4  violations, Business and Professions Code violations, unfair competition and other

5  claims.  Bryant sought rescission of the Inventions Agreement and a declaration that

6  the Inventions Agreement is unenforceable.  The Court dismissed all of Bryant's

7  Counterclaims in an 18-page Order.  The Court rejected Bryant's arguments that the

8  Inventions Agreement is not enforceable, holding that, even construing Bryant's

9  allegations in the light most favorable to him, "Bryant cannot prove any set of facts

10 in support of the claims that would entitle him to relief."

11     In addition to his Counterclaims, Bryant sued Mattel in November 2004 for a

12 declaratory judgment that he had not infringed the copyrights in a Mattel project

13 known as "Toon Teens."  Like his Counterclaims, the Court dismissed Bryant's

14 declaratory judgment complaint on the pleadings.

15     <u>Consolidation</u>.  After the Court lifted a discovery stay imposed while the

16 Ninth Circuit Court of Appeal resolved an appeal regarding subject matter

17 jurisdiction issues, the Court consolidated Mattel's case against Bryant, Bryant's

18 declaratory relief case and a case that MGA had filed against Mattel alleging trade

19 dress infringement, delusion and unfair competition, among others, for all purposes.

20     <u>Mattel's Second Amended Counterclaims</u>.  Mattel filed its Second Amended

21 Answer and Counterclaims on July 12, 2007, asserting thirteen counterclaims

22 against six named defendants, MGA Entertainment, Inc., Isaac Larian, MGA

23 Entertainment (HK) Ltd., MGAE de Mexico S.R.L. de C.V., Carlos Gustavo

24 Machado Gomez, and Carter Bryant.  Mattel's counterclaims included claims for

25 copyright infringement, misappropriation of trade secrets, violation of and

26 conspiracy to violate the Racketeer Influenced and Corrupt Organizations ("RICO")

27 Act, breach of contract, intentional interference with contract, breach of fiduciary

28 duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty, aiding

1 and abetting breach of duty of loyalty, conversion, unfair competition, and
2 declaratory relief.

3       In its Second Amended Counterclaims, Mattel alleges that MGA and other
4 defendants have engaged in the systematic theft of Mattel's trade secrets, which
5 MGA used to unfairly compete against Mattel.[1]  It is alleged that MGA hired
6 directly from Mattel at least 25 employees, ranging from the Senior Vice-President
7 level to lower level employees.[2]  Mattel further alleged that MGA specifically
8 targeted and recruited many of these employees based on the Mattel confidential and
9 proprietary information the Mattel employees could access and bring to MGA.[3]
10 Janine Brisbois was one of these Mattel employees.

11                    **2.    Knowledge of Person to be Examined**

12                         **(a)    Janine Brisbois**

13       Mattel has alleged that Janine Brisbois was one of the principal actors in
14 MGA's scheme to steal and profit from Mattel's trade secrets and confidential and
15 proprietary information.  MGA recruited Janine Brisbois in 2005.  In 2005,
16 Ms. Brisbois was a Director of Sales for Mattel's Girls Division in Canada and
17 responsible for Mattel's accounts with Toys 'R Us and Wal-Mart.[4]  When
18 Ms. Brisbois joined MGA Entertainment Canada, MGA gave her responsibility for
19 those same accounts.[5]

20       Mattel alleges that Ms. Brisbois spoke with Isaac Larian, the President and
21 CEO of MGA, prior to her departure from Mattel, and four days before she
22 resigned, copied approximately 45 Mattel documents containing Mattel proprietary

23

---

24   [1]   The allegations set forth in this section are from Mattel's Second Amended
25 Counterclaims dated July 12, 2007.  Id. at ¶ 37.
     [2]   Id. at ¶ 77.
26   [3]   Id.
     [4]   Id. at ¶ 71.
27   [5]   Id. at ¶ 73.

28

advertising, project, sales, customer and strategy information (for both Canada and the United States) onto a USB drive.[6] While Ms. Brisbois was working as a Vice President of Sales at MGA Entertainment Canada, Brisbois accessed and used a number of these Mattel documents.[7] Mattel further alleges that Ms. Brisbois and MGA subsequently used these stolen trade secrets to improperly benefit MGA Entertainment, Inc., including its management of MGA's Toys 'R Us and Wal-Mart accounts.[8] Ms. Brisbois' testimony regarding her participation in this alleged scheme with MGA and anyone acting on MGA's behalf is, therefore, both relevant to and essential for Mattel's prosecution of its Counterclaims.[9]

Mattel's document requests also seek highly relevant documents. Mattel requests documents containing communications between Ms. Brisbois and MGA prior to her resignation from Mattel. Such documents will prove that Ms. Brisbois, acting in concert with MGA, planned and subsequently stole Mattel's trade secret, or otherwise confidential and propriety information. These documents are also relevant and necessary to support Mattel's Counterclaims for misappropriation of trade secrets, among others.[10] Similarly, documents regarding Mattel's proprietary information received by MGA from Ms. Brisbois (either directly or indirectly) will show the same and such documents are necessary in order for Mattel to adequately prosecute its Counterclaims.

Mattel has previously sought to depose Ms. Brisbois. Mattel noticed her deposition and requested, through MGA's counsel, that she voluntarily appear for

---

[6]  Id. at ¶ 74.
[7]  Id. at ¶¶ 70-76.
[8]  Id. at ¶ 97.
[9]  Id. at ¶¶ 88-97; 98-105, 106-115.
[10] Id. at ¶¶ 88-97; 98-105, 106-115.

5

1  deposition and produce the requested documents.  MGA's counsel, on behalf of

2  Ms. Brisbois, refused.[11]

3              **(b)**    **MGA Entertainment Canada**

4        Through this Letter of Request, Mattel seeks discovery in the form of

5  deposition testimony and documents regarding how MGA Entertainment Canada

6  used Mattel's trade secrets, confidential and proprietary information to the benefit of

7  MGA Entertainment in the United States.  This discoverable information requires

8  that Mattel understand the manner in which MGA Entertainment Canada accesses,

9  stores, reproduces, disseminates, and/or reviews the documents and information

10 stolen by Ms. Brisbois from Mattel.  Accordingly, Mattel seeks the deposition of

11 MGA Entertainment Canada's person most knowledgeable on the topics set forth in

12 Schedule E.

13 **II.**    **CANADIAN EVIDENCE SOUGHT**

14       The evidence to be obtained consists of testimony for use in the trials of the

15 actions that have been consolidated as part of Bryant v. Mattel, Inc., Case No. 04-

16 9049 SGL (RNBx) (Consolidated with Case No. 04-9059 and Case No. 05-2727).  It

17 is requested that a Canadian judicial authority compel Janine Brisbois to appear and

18 to be deposed, under oath, as to her knowledge of the topics set forth in Schedule C.

19 Additionally, Mattel requests the production of documents, as set forth in Schedule

20 B.  It is further requested that a Canadian judicial authority compel MGA

21 Entertainment Canada to identify a designee and to appear and to be deposed, under

22 oath, as to his or her knowledge of the topics set forth in Schedule E, and compel

23 MGA Entertainment Canada to produce the documents described in Schedule D.

24

25

26

27   [11]  See generally Declaration of Jon D. Corey dated January 28, 2008 and
Exhibits A-O attached thereto.

28

6

1

**A.    Janine Brisbois**

2    Ms. Brisbois resides in your jurisdiction at 3130 Cole Road, RR # 2,

3    Queensville, Ontario, Canada L0GR0.  As detailed in section I.B.2, *supra*, it is

4    alleged that Ms. Brisbois was one of the principal actors engaged in MGA's scheme

5    of wrongdoing underlying Mattel's Counterclaims in that she stole and subsequently

6    assisted MGA in profiting from Mattel's trade secrets, or otherwise confidential or

7    proprietary information.  Mattel has alleged:

8                    In 2005, MGA needed help in Canada.  So MGA, again

9            operating from its Southern California headquarters,

10            hired Janine Brisbois from Mattel.  At that time,

11            Ms. Brisbois was responsible for Mattel's account with

12            Toys 'R Us ("TRU") and Wal-Mart.  MGA gave her

13            responsibility for those same accounts, and she took from

14            Mattel documents containing proprietary advertising,

15            project, sales, customer and strategy information for not

16            only Canada, but for the United States.  Eliminating any

17            doubt that MGA then proceeded to use those stolen

18            materials, Brisbois subsequently accessed and modified

19            certain of those Mattel documents while employed by

20            MGA.[12]

21                            *        *        *

22            Mattel subsequently learned that on the same day that she

23            spoke with Mr. Larian and four days before she resigned,

24            Brisbois copied approximately 45 Mattel documents on

25            to a USB or "thumb" drive with the volume label

26            "BACKPACK."  On information and belief, Brisbois

27

28

removed the thumb drive from Mattel Canada's office by concealing it in her backpack or gym bag the last time that she left that office.  These documents contained Mattel trade secret and proprietary information, and included:

• a document containing the price, cost, sales plan and quantity of every Mattel product ordered by every Mattel customer in 2005 and 2006;

• the BARBIE television advertising strategy and information concerning sales increases generated by television advertisements;

• competitive analysis of Mattel vis-à-vis its competitors in Canada;

• an analysis of Mattel's girls business sales beginning in 2003 and forecasts through 2006;

• profit and loss reviews for Mattel's products being sold in Wal-Mart, including margins and profit in not only Canada, but in the United States and Mexico; and a document containing the product launch dates and related advertising for all Mattel new products between Fall 2005 and Spring 2006.[13]

*       *       *

After Mattel discovered that Brisbois had copied these sensitive documents to a thumb drive, Mattel notified Canadian law enforcement authorities.  Canadian law

---

[12] Id. at ¶ 4.
[13] Id. at ¶ 74.

1 enforcement authorities recovered from Brisbois a thumb
2 drive with the volume label "BACKPACK" containing
3 the documents that Brisbois had copied from Mattel's
4 computer system.  Mattel later learned that while she was
5 working as a Vice President of Sales at MGA, Brisbois
6 accessed and modified documents on that thumb drive.[14]

7 These allegations, and others, underlie Mattel's claims for misappropriation of
8 trade secrets and RICO violations.[15]  These allegations are also relevant to Mattel's
9 claims in that they will bear on and Mattel believes will evidence MGA's theft and
10 use of Mattel's trade secrets.  Moreover, they are relevant to MGA's unfair
11 competition claims because such information will prove that it was MGA that had
12 prior access to Mattel's business plans and strategies and that MGA was the one
13 copying Mattel—not the other way around as MGA alleges.

14 Because Ms. Brisbois has unique and personal knowledge of the matters at
15 issue in the consolidated litigation proceedings, it will further the interests of justice
16 if she is deposed, under oath, as to her knowledge of the facts which are relevant to
17 the issues of these cases and produce the documents set forth in Schedule B.

18 **B.    MGA Entertainment Canada's Person Most Knowledgeable**

19 MGA Entertainment Canada resides in your jurisdiction at 7100 Woodbine
20 Avenue, Suite #202, Markham, Ontario, Canada, L3R 5J2.  MGA Entertainment
21 Canada's designee on the topics set forth in Schedule E has unique and personal
22 knowledge regarding the manner in which MGA Entertainment Canada accessed,
23 used, reproduced, disseminated and/or transferred Mattel's trade secrets, confidential
24 and proprietary information stolen by Ms. Brisbois.  Therefore, it will further the
25 interests of justice if MGA Entertainment Canada designee is deposed, under oath,

26
27 [14] Id. at ¶ 75.
28 [15] Id. at ¶¶ 88-115.

1  as to his or her knowledge of the facts which are relevant to the issues of these cases
2  and produce the documents set forth in Schedule D.

3        **1.    Subject Matter About Which The Deponents Are To Be**
4                **Examined**

5        The subject matter about which Ms Brisbois is to be examined is set forth in
6  Schedule C.  The subject matter about which MGA Entertainment Canada designee
7  is to be examined is set forth in Schedule E.

8        **2.    Special Methods or Procedures to be Followed**

9        The examinations shall be taken under the Federal Rules of Civil Procedure
10  of the United States of America, except to the extent such procedure is incompatible
11  with the internal laws of Canada.

12        The examination shall be taken before a commercial stenographer and a
13  verbatim transcript shall be produced.  The deposition shall also be videotaped.

14        **3.    Fees and Costs**

15        Any fees and costs incurred by Ms. Brisbois or MGA Entertainment Canada
16  in conjunction with their respective depositions and production of documents will be
17  paid by Defendant Mattel, Inc, through its counsel of record:  Jon D. Corey, Quinn
18  Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th Floor,
19  Los Angeles, CA  90017.  Mattel's payment of any such fees and costs is without
20  prejudice to its making a subsequent request to be reimbursed for these costs by
21  other parties in this consolidated proceeding.

22        **4.    Conclusion**

23        Based on the foregoing and the Court's review of the pleadings, the
24  Declaration of Jon D. Corey and the Declaration of Michael L. Fazio filed
25  concurrently with the Letter of Request, this Court has concluded that Janine
26  Brisbois has information, including both personal knowledge and documents, about
27  the transactions that are the subject of the civil action against MGA and Carter
28  Bryant, including but not limited to her knowledge of the alleged theft of Mattel's

07209/2313474.2

10

1  propriety advertising, project, sales, customer and strategy information and her

2  knowledge of communications with MGA, or anyone acting on MGA's behalf, on or

3  before September 27, 2005, regarding her resignation from Mattel; compensation,

4  money or anything of value paid by MGA to Ms. Brisbois.

5       Further, this Court has concluded that MGA Entertainment Canada has

6  information, including both personal information and documents, about the

7  transactions which are the subject of the civil action against MGA and Carter

8  Bryant, including but not limited to the manner in which MGA Entertainment

9  Canada accessed, used, reproduced, disseminated and/or transferred Mattel's trade

10  secrets, confidential and proprietary information stolen by Ms. Brisbois.

11       Accordingly, in the interests of justice and to assure a complete record, it is

12  necessary for: (1) Janine Brisbois to produce the documents set forth in Schedule B;

13  (2) Janine Brisbois to be examined under oath on the topics set forth in Schedule C;

14  (3) MGA Entertainment Canada to produce the documents set forth in Schedule D;

15  and (4) MGA Entertainment Canada to produce a designee knowledgeable about the

16  topics set forth in Schedule E to be examined under oath.

17  **III.    REQUEST FOR JUDICIAL ASSISTANCE**

18       The evidence sought cannot be obtained other than from Janine Brisbois or

19  MGA Entertainment Canada, through deposition and document production, and

20  such evidence will be useful to this Court in determining the validity of the claims

21  and defenses in this case.  The evidence sought is necessary for trial in this matter

22  and will be adduced at trial, if admissible and appropriate.

23       Therefore, after having thoroughly reviewed the pleadings in this matter and

24  the exhibits attached to the concurrently filed Declaration of Jon D. Corey and

25  Declaration of Michael L. Fazio, this Court requests the following as to Janine

26  Brisbois:

27  (1)    You cause, by your proper and usual process, Janine Brisbois to be

28  summoned to appear before you or some competent office authorized by you, on a

07209/2313474.2

11

1   date mutually agreed upon by the deponent and the parties or at a time and/or place
2   to be determined by you, to give testimony under oath by questions and answers
3   upon oral deposition, such deposition to continue day to day until completion and
4   conducted in accordance with the Federal Rules of Civil Procedure or as permitted
5   by you. In the event that the Law of Canada does not permit the swearing of an oath
6   by a particular witness, the duly appointed officer shall make inquiry of such
7   witness to ensure that he/she understands the gravity of the procedure and affirms
8   that his/her statement will be true and correct in all respects.

9       (2)    You permit Janine Brisbois to be examined under oath by counsel for
10  all parties in this matter, allowing full examination and cross-examination on the
11  subject matter of this case, including the topics delineated in Schedule C to this
12  Letter of Request.

13      (3)    You order Janine Brisbois to produce documents at the offices of
14  Heenan Blaikie LLP, Attn: George Karayannides, Suite 2600, 200 Bay Street, Royal
15  Bank Plaza, South Tower, Toronto, Ontario M5J 2J4 in accordance with Schedule B
16  to this Letter of Request and not later than 5 court days prior to the date of
17  Ms. Brisbois' deposition.

18      (4)    You order Janine Brisbois to produce, at or immediately after the oral
19  examination, specific documents relevant to the subject matter of this case, the
20  existence of which becomes known during the course of the examination and which
21  are requested by counsel.

22      (5)    You cause a verbatim transcript of the testimony of the witness to be
23  taken and reduced to writing. The deposition shall also be videotaped.

24      (6)    You order, pursuant to Ontario Rule of Civil Procedure 30.1, that the
25  oral and documentary evidence produced pursuant to your enforcement of this
26  Letter of Request shall not be used by anyone in any manner or proceeding other
27  than in this matter, Bryant v. Mattel, Inc., Case No. 04-9049 SGL (RNBx)
28  (Consolidated with Case No. 04-9059 and Case No. 05-2727), pending in the United

07209/2313474.2

12

1 | States District Court for the Central District of California.  A Protective Order was
2 | entered in this action on January 4, 2005 (Attachment 1 hereto).

3 |      This Court further requests the following as to MGA Entertainment Canada:

4 |      (1)    You cause, by your proper and usual process, MGA Entertainment
5 | Canada to produce a designee with knowledge of the topics set forth in Schedule E
6 | to be summoned to appear before you or some competent office authorized by you,
7 | on a date mutually agreed upon by the deponent and the parties or at a time and/or
8 | place to be determined by you, to give testimony under oath by questions and
9 | answers upon oral deposition, such deposition to continue day to day until
10 | completion and conducted in accordance with the Federal Rules of Civil Procedure
11 | or as permitted by you.  In the event that the Law of Canada does not permit the
12 | swearing of an oath by a particular witness, the duly appointed officer shall make
13 | inquiry of such witness to ensure that he/she understands the gravity of the
14 | procedure and affirms that his/her statement will be true and correct in all respects.

15 |      (2)    You permit MGA Entertainment Canada's knowledgeable designee to
16 | be examined under oath by counsel for all parties in this matter, allowing full
17 | examination and cross-examination on the subject matter of this case, including the
18 | topics delineated in Schedule E to this Letter of Request.

19 |      (3)    You order MGA Entertainment Canada to produce documents at the
20 | offices of Heenan Blaikie LLP, Attn: George Karayannides, Suite 2600, 200 Bay
21 | Street, Royal Bank Plaza, South Tower, Toronto, Ontario M5J 2J4 in accordance
22 | with Schedule D to this Letter of Request and not later than 5 court days prior to the
23 | date of MGA Entertainment Canada's person most knowledgeable deposition.

24 |      (4)    You order MGA Entertainment Canada to produce, at or immediately
25 | after the oral examination, specific documents relevant to the subject matter of this
26 | case, the existence of which becomes known during the course of the examination
27 | and which are requested by counsel.

28 |

07209/2313474.2

13

1    (5)    You cause a verbatim transcript of the testimony of the witness to be
2    taken and reduced to writing.  The deposition shall also be videotaped.

3    (6)    You order, pursuant to <u>Ontario Rule of Civil Procedure</u> 30.1, that the
4    oral and documentary evidence produced pursuant to your enforcement of this
5    Letter of Request shall not be used by anyone in any manner or proceeding other
6    than in this matter, <u>Bryant v. Mattel, Inc.</u>, Case No. 04-9049 SGL (RNBx)
7    (Consolidated with Case No. 04-9059 and Case No. 05-2727), pending in the United
8    States District Court for the Central District of California.  A Protective Order was
9    entered in this action on January 4, 2005 (Attachment 1 hereto).

10   **IV.    RECIPROCITY**

11   This Court expresses its sincere willingness to provide similar assistance to
12   the Ontario Superior Court of Justice if future circumstances should require.

13   **V.    CONCLUSION**

14   In the spirit of comity and reciprocity, this Court hereby requests international
15   judicial assistance in the form of this Letter of Request to compel: (1) Janine
16   Brisbois to produce the documents set forth in Schedule B; (2) Janine Brisbois to be
17   examined under oath on the topics set forth in Schedule C; (3) MGA Entertainment
18   Canada to produce the documents set forth in Schedule D; and (4) MGA
19   Entertainment Canada to produce a knowledgeable designee on the topics set forth
20   in Schedule E to be examined under oath.

21   DATED: _____, 2008

22

23   By_____
THE HONORABLE STEPHEN G. LARSON
24   United States District Judge

25   SHERRI R. CARTER, Clerk of the Court

26

27   By_____
Deputy Clerk_____

28

14

# SCHEDULE  A

1

## SCHEDULE A

2

### NAMES AND ADDRESSES OF THE PARTIES

3

### AND THEIR REPRESENTATIVES

4   John B. Quinn, Esq.
    Michael T. Zeller, Esq.
5   Jon D. Corey, Esq.
    **QUINN EMANUEL**
6   **URQUHART**
    **OLIVER & HEDGES, LLP**
7   865 South Figueroa Street, 10th
    Floor
8   Los Angeles, CA 90017

9   **Attorneys for Mattel, Inc.**

10  Thomas Nolan, Esq.
    **SKADDEN ARPS SLATE**
11  **MEAGHER FLOM, LLP**
    300 South Grand Avenue
12  Suite 3400
    Los Angeles, California 90071
13
    *Attorneys for MGA*
14  *Entertainment, Inc.; MGAE de*
    *Mexico, S.A. de C.R.L; MGA*
15  *Entertainment (HK) Limited; and*
    *Isaac Larian*

Michael H. Page, Esq.
**KEKER & VAN NEST, LLP**
710 Sansome Street
San Francisco, CA 94111

*Attorneys for Carter Bryant*

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote, Esq.
**OVERLAND, BORENSTEIN,**
**SCHEPER & KIM, LLP**
300 S. Grand Avenue, Suite 2750
Los Angeles, CA 90071

*Attorneys for Carlos Gustavo*
 *Machado Gomez*

16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2313474.2

15

REQUEST FOR JUDICIAL ASSISTANCE

# SCHEDULE  B

1

## SCHEDULE B

2      For purpose of construing the below-listed Requested Documents, the

3 following definitions and instructions apply:

4 **I.**      **DEFINITIONS**

5      For purposes of these Requests, the following definitions apply:

6      A.      The terms "YOU" and "YOUR" shall mean Janine Brisbois, her

7 attorneys, accountants, agents, and all persons acting under her, or by her direction

8 or control, or on her behalf.

9      B.      "MGA" means MGA Entertainment, Inc. and any individual or entity

10 acting directly or indirectly by, through, under or on behalf of MGA

11 Entertainment, Inc., including but not limited to current or former directors, officers,

12 employees, agents, contractors, attorneys, accountants, or representatives of MGA

13 Entertainment, Inc. and any corporation, partnership, association, trust, parent,

14 subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and

15 any other PERSON acting on its behalf.

16      C.      The term "MATTEL" means Mattel, Inc. and all current or former

17 directors, officers, employees, agents, contractors, attorneys, accountants,

18 representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and

19 successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

20 authority or subject to its control.

21      D.      "DOCUMENT" or "DOCUMENTS" means all "writings" and

22 "recordings" as those terms are defined in Rule 1001 of the Federal Rules of

23 Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all

24 writings, including but not limited to handwriting, typewriting, printing, image,

25 photograph, photocopy, digital file of any kind, transmittal by (or as an attachment

26 to) electronic mail (including instant messages and text messages) or facsimile,

27 video and audio recordings, and every other means of recording upon any tangible

28 thing, any form of communication or representation, and any record thereby created,

1 regardless of the manner in which the record has been stored, and all non-identical

2 copies of such DOCUMENTS, in the possession, custody, or control of YOU,

3 YOUR counsel, or any other PERSON acting on YOUR behalf.

4      E.    The term "COMMUNICATION," in the plural as well as the singular,

5 means any transmittal and/or receipt of information, whether such was oral or

6 written, and whether such was by chance, prearranged, formal or informal, and

7 specifically includes, but is not limited to, conversations in person, telephone

8 conversations, electronic mail (including instant messages and text messages),

9 voicemail, letters, memoranda, statements, media releases, magazine and newspaper

10 articles, and video and audio transmissions.

11      F.    "BRATZ PRODUCT" means any product, whether two-dimensional or

12 three-dimensional, and whether in tangible, digital, electronic or other form: (i) that

13 is or has ever been distributed, marketed or sold under the name "Bratz" or as part of

14 the "Bratz" line; (ii) that depicts, incorporates, embodies, consists of or REFERS

15 OR RELATES TO BRATZ; and/or (iii) that is or has ever been distributed,

16 marketed or sold in any packaging that includes the name "Bratz" or depicts,

17 incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ.

18      G.    The term "PERSON," in the plural as well as the singular, means any

19 natural person, association, partnership, corporation, joint venture, government

20 entity, organization, trust, institution, proprietorship, or any other entity recognized

21 as having an existence under the laws in United States or any other nation.

22      H.    The terms "RELATE TO" and "RELATING TO" means any and all of

23 the following terms and their synonyms:  refer to, discuss, constitute, evidence,

24 pertain to, mention, support, contradict, negate, bear on, touch on, contain, embody,

25 reflect, identify, state, deal with, concern, comment on, respond to, relevant to, or

26 describe.

27

28

## II.  REQUESTS FOR DOCUMENTS AND THINGS

**REQUEST FOR PRODUCTION NO. 1:**

All COMMUNICATIONS between MGA, Isaac Larian and Ron Brawer, on the one hand, and Janine Brisbois, on the other, ("Brisbois") prior to September 27, 2005.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS RELATING TO COMMUNICATIONS between MGA, Isaac Larian and Ron Brawer, on the one hand, and Brisbois, on the other, prior to September 27, 2005, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation from Mattel.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brisbois, whether directly or indirectly, by MGA between January 2005 and the present.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS received by MGA, directly or indirectly, from Brisbois RELATING TO any MATTEL product or plan.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATING TO MGA's receipt, access, use, reproduction, copying, storage, transmission, transfer, disclosure, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, that were prepared, made, created, generated, assembled or compiled by or for MATTEL and that MGA received, directly or indirectly from Brisbois.

**REQUEST FOR PRODUCTION NO. 7:**

A copy of each personnel file maintained or created by MGA RELATING TO Brisbois.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS taken by Brisbois from Mattel Canada, Inc., including but not limited to the 45 Mattel documents contained on a USB or "thumb" drive with the volume label "BACKPACK" from Mattel's Canada, Inc.'s office.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS RELATING TO COMMUNICATIONS between Brisbois, on the one hand, and Toys 'R Us or Wal-Mart on the other, or anyone acting on behalf of Toys 'R Us or Wal-Mart, between September 27, 2005, and January 1, 2007, including but not limited to her COMMUNICATIONS with Toys 'R Us or Wal-Mart about promotions of MGA products.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, created by Brisbois while employed by MGA RELATED TO MGA's marketing of products that compete with Mattel's products, recruiting or attempting to recruit Mattel's employees, or the theft of Mattel trade secrets, confidential or proprietary information.

# SCHEDULE  C

# SCHEDULE C

## SUBJECT MATTER ABOUT WHICH MS. BRISBOIS IS TO BE EXAMINED

1. Theft of Mattel documents containing proprietary advertising, project, sales, customer and strategy information by anyone, including Ms. Brisbois.

2. Theft by Ms. Brisbois of approximately 45 Mattel documents contained on a USB or "thumb" drive with the volume label "BACKPACK" from Mattel's Canada office.

3. Ms. Brisbois' communications with MGA, or anyone acting on MGA's behalf, on or before September 27, 2005, including but not limited to communications regarding Ms. Brisbois' resignation from Mattel; compensation, money or anything of value paid by MGA to Ms. Brisbois.

4. Ms. Brisbois' receipt, access, use, reproduction, copying, storage, transmission, transfer, disclosure, retention, destruction, deletion or use of any documents, data and/or information, that were prepared, made, created, generated, assembled or compiled by or for MATTEL and that MGA received, directly or indirectly from Brisbois.

5. Ms. Brisbois' access, use, dissemination or disclosure of Mattel's trade secrets, or otherwise confidential or proprietary information, while employed by MGA, including but not limited to Mattel's information regarding advertising strategy and in-store promotions at retailers.

6. Ms. Brisbois' communications with MGA, including but not limited to Isaac Larian or Ron Brawer, relating to her decision to join MGA and other matters at issue in this Action.

# SCHEDULE  D

1

## **SCHEDULE D**

2   For purpose of construing the below-listed Requested Documents, the
3   following definitions and instructions apply:

4   **I.     DEFINITIONS**

5   For purposes of these Requests, the following definitions apply:

6   I.     The terms "YOU" and "YOUR" shall mean MGA Entertainment
7   Canada, its attorneys, accountants, agents, and all persons acting under its direction
8   or control, or on its behalf.

9   J.     "MGA" means MGA Entertainment, Inc. and any individual or entity
10  acting directly or indirectly by, through, under or on behalf of MGA
11  Entertainment, Inc., including but not limited to current or former directors, officers,
12  employees, agents, contractors, attorneys, accountants, or representatives of MGA
13  Entertainment, Inc. and any corporation, partnership, association, trust, parent,
14  subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and
15  any other PERSON acting on its behalf.

16  K.     The term "MATTEL" means Mattel, Inc. and all current or former
17  directors, officers, employees, agents, contractors, attorneys, accountants,
18  representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and
19  successors-in-interest, and any other PERSON acting on its behalf, pursuant to its
20  authority or subject to its control.

21  L.     "DOCUMENT" or "DOCUMENTS" means all "writings" and
22  "recordings" as those terms are defined in Rule 1001 of the Federal Rules of
23  Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all
24  writings, including but not limited to handwriting, typewriting, printing, image,
25  photograph, photocopy, digital file of any kind, transmittal by (or as an attachment
26  to) electronic mail (including instant messages and text messages) or facsimile,
27  video and audio recordings, and every other means of recording upon any tangible
28  thing, any form of communication or representation, and any record thereby created,

1 regardless of the manner in which the record has been stored, and all non-identical
2 copies of such DOCUMENTS, in the possession, custody, or control of YOU,
3 YOUR counsel, or any other PERSON acting on YOUR behalf.

4       M.    The term "COMMUNICATION," in the plural as well as the singular,
5 means any transmittal and/or receipt of information, whether such was oral or
6 written, and whether such was by chance, prearranged, formal or informal, and
7 specifically includes, but is not limited to, conversations in person, telephone
8 conversations, electronic mail (including instant messages and text messages),
9 voicemail, letters, memoranda, statements, media releases, magazine and newspaper
10 articles, and video and audio transmissions.

11       N.    "BRATZ PRODUCT" means any product, whether two-dimensional or
12 three-dimensional, and whether in tangible, digital, electronic or other form: (i) that
13 is or has ever been distributed, marketed or sold under the name "Bratz" or as part of
14 the "Bratz" line; (ii) that depicts, incorporates, embodies, consists of or REFERS
15 OR RELATES TO BRATZ; and/or (iii) that is or has ever been distributed,
16 marketed or sold in any packaging that includes the name "Bratz" or depicts,
17 incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ.

18       O.    The term "PERSON," in the plural as well as the singular, means any
19 natural person, association, partnership, corporation, joint venture, government
20 entity, organization, trust, institution, proprietorship, or any other entity recognized
21 as having an existence under the laws in United States or any other nation.

22       P.    The terms "RELATE TO" and "RELATING TO" means any and all of
23 the following terms and their synonyms:  refer to, discuss, constitute, evidence,
24 pertain to, mention, support, contradict, negate, bear on, touch on, contain, embody,
25 reflect, identify, state, deal with, concern, comment on, respond to, relevant to, or
26 describe.

27

28

1    **II.    REQUESTS FOR DOCUMENTS AND THINGS**

2    **REQUEST FOR PRODUCTION NO. 1:**

3              All COMMUNICATIONS between YOU and Janine Brisbois

4    ("Brisbois") prior to September 27, 2005.

5    **REQUEST FOR PRODUCTION NO. 2:**

6              All DOCUMENTS RELATING TO COMMUNICATIONS between

7    YOU and Brisbois prior to September 27, 2005, including but not limited to all

8    calendar entries, phone logs, phone records and notes reflecting such

9    COMMUNICATIONS.

10   **REQUEST FOR PRODUCTION NO. 3:**

11             All DOCUMENTS, including but not limited to all

12   COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation

13   from Mattel.

14   **REQUEST FOR PRODUCTION NO. 4:**

15             All DOCUMENTS, including but not limited to all

16   COMMUNICATIONS with any PERSON, RELATING TO compensation, money

17   or any other item of value paid to Brisbois, whether directly or indirectly, by MGA

18   between January 2005 and the present.

19   **REQUEST FOR PRODUCTION NO. 5:**

20             All DOCUMENTS received by YOU, directly or indirectly, from

21   Brisbois RELATING TO any MATTEL product or plan.

22   **REQUEST FOR PRODUCTION NO. 6:**

23             All DOCUMENTS RELATING TO YOUR receipt, access, use,

24   reproduction, copying, storage, transmission, transfer, disclosure, retention,

25   destruction, deletion or use of any DOCUMENTS, data and/or information, that

26   were prepared, made, created, generated, assembled or compiled by or for MATTEL

27   and that MGA received, directly or indirectly from Brisbois.

28

**REQUEST FOR PRODUCTION NO. 7:**

A copy of each personnel file maintained or created by YOU RELATING TO Brisbois.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS taken by Brisbois from Mattel Canada, Inc., including but not limited to the 45 Mattel documents contained on a USB or "thumb" drive with the volume label "BACKPACK" from Mattel's Canada, Inc.'s office.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU, on the one hand, and Toys 'R Us or Wal-Mart on the other, or anyone acting on behalf of Toys 'R Us or Wal-Mart, between September 27, 2005 and January 1, 2007, regarding Ms. Brisbois or Ms. Brisbois' responsibility for the Toys 'R Us and Wal-Mart accounts with MGA, and COMMUNICATIONS with Toys 'R Us or Wal-Mart about promotions or advertising for MGA products.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, created by Brisbois while employed by MGA RELATED TO MGA's marketing of products that compete with Mattel's products, recruitment or attempted recruitment of Mattel's employees, or the theft of Mattel trade secrets or confidential or proprietary information.

# SCHEDULE  E

1

## SCHEDULE E

2

SUBJECT MATTER ABOUT WHICH PERSON MOST
KNOWLEDGEABLE IS TO BE EXAMINED

3

4    1.    Knowledge of MGA Entertainment Canada's methods and procedures

5          regarding the access, use, reproduction, copying, storage, transmission,

6          transfer, disclosure, retention, destruction, deletion or use of any documents,

7          data and/or information, that were prepared, made, created, generated,

8          assembled or compiled by or for MATTEL and that MGA received, directly

9          or indirectly from Janine Brisbois.

10   2.    Knowledge of MGA Entertainment Canada's methods and procedures

11         regarding the access, use, reproduction, copying, storage, transmission,

12         transfer, disclosure, retention, destruction, deletion or use of any documents,

13         data and/or information regarding MGA Entertainment Canada's advertising,

14         project, sales, customer and strategy information related to any Bratz Product,

15         regardless of whether such information was received directly or indirectly

16         from Janine Brisbois.

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT 1

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2   Michael T. Zeller (Bar No. 196417)
    Jon D. Corey (Bar No. 185066)
3  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
4  Telephone: (213) 443-3000
   Facsimile: (213) 443-3100
5
   Attorneys for Plaintiff and Counter-Defendant
6  Mattel, Inc.
7

FILED
CLERK, U.S. DISTRICT COURT
JAN – 4 2008
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware          )   CASE NO. CV 04-9059 NM (RNBx)
    Corporation,                      )
12                                    )   STIPULATED PROTECTIVE
              Plaintiff,              )   ORDER; AND
13                                    )
         v.                           )   [PROPOSED] ORDER
14                                    )
    CARTER BRYANT, an individual; and )   [Discovery Matter]
15  DOES 1 through 10, inclusive,     )
                                      )
16            Defendants.             )
                                      )
17  _____ )
                                      )
18  CARTER BRYANT, on behalf of       )
    himself, all present and former   )
19  employees of Mattel, Inc., and the)
    general public,                   )
20                                    )
              Counter-Claimant,       )
21                                    )
         v.                           )
22                                    )
    MATTEL, INC., a Delaware          )
23  Corporation,                      )
                                      )
24            Counter-Defendant.      )
    _____ )
25
26
27
28

07272/625581.2

PROTECTIVE ORDER

## GOOD CAUSE STATEMENT

1
2
3       Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-
4 defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned
5 litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment,
6 Inc. are each referred to herein as a "Party" and collectively are the "Parties.")
7       In this Action, Mattel has alleged, and defendants dispute, that Bryant
8 worked for and otherwise aided and assisted MGA while defendant was employed by
9 Mattel as a designer, in violation of his contractual and other legal duties to Mattel.
10       All parties believe that they will or may be required to produce or
11 disclose in this Action, and that nonparties may produce or disclose, information that
12 is trade secret, proprietary, confidential and/or is of a private or personal nature and
13 that, if disclosed in this Action without restriction on its use or further disclosure,
14 may cause disadvantage, harm, damage and loss to the disclosing Party or to the
15 disclosing nonparty.
16       In addition, the Parties are currently in a competitive relationship in the
17 toy industry, with Mattel and MGA operating as a manufacturers and marketers of
18 dolls, toys and other products and Bryant working at this time as a contractor for a
19 Mattel competitor, MGA, and further anticipate that nonparty competitor information
20 may be produced or disclosed in this Action.
21       In particular, without prejudice to any Party's right to object to or resist
22 disclosure of such categories of information on relevance or any other grounds, the
23 Parties currently anticipate that categories of such trade secret, proprietary,
24 confidential and/or private documents and other information that may be disclosed
25 in discovery by the Parties and by nonparties will or may include:
26       (1)  Personnel files and other private or confidential employment,
27 contractor or vendor information;
28

07272/625581.2       -2-

PROTECTIVE ORDER

1          (2)    The specific terms of agreements with, and information received

2 from, third parties that a Party is required to disclose only under conditions of

3 confidentiality;

4          (3)    Personal or private financial information, and confidential

5 financial data that is not known generally to the trade or to competitors, including

6 financial data relating to specific sales, cost and profit information for specific

7 products and product lines; and

8          (4)    Business plans and product information that are not known

9 generally to the trade or to competitors, including non-public information relating to

10 product development and design.

11

12          WHEREFORE, believing that good cause exists, the Parties HEREBY

13 STIPULATE that, subject to the Court's approval, the following procedures shall be

14 followed in this Action to facilitate the orderly and efficient discovery of relevant

15 information while minimizing the potential for unauthorized disclosure or use of

16 confidential or proprietary information:

17

18                        SCOPE OF THIS ORDER

19

20        1.    This Protective Order shall apply to trade secret, confidential and

21 proprietary information, documents and things that are produced or disclosed in any

22 form during the course of the Action by any Party or any nonparty:

23          (a)    through discovery;

24          (b)    in any pleading, document or other writing; or

25          (c)    in testimony given at a deposition.

26 (The foregoing information, documents and things shall be referred to hereinafter

27 collectively as "Litigation Materials.")

28

-3-

PROTECTIVE ORDER

<u>CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION</u>

2.    Any Party or nonparty producing or disclosing Litigation Materials in this Action may designate such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner set forth in paragraph 3 below.   The designation of Litigation Materials as "CONFIDENTIAL" shall be limited to information which the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature.   The designation of information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure.   Information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

<u>MANNER OF DESIGNATION OF MATERIALS</u>

3.    A Party or nonparty may designate Litigation Materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the following manner:

(a)    <u>Documents or Things</u>.    "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

-4-

1   obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL --
2   ATTORNEYS' EYES ONLY" on the particular document or thing.

3          (b)    Interrogatory Answers and Responses to Requests for
4   Admissions. In answering any interrogatory or request for admission, or any
5   part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or
6   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the
7   legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES
8   ONLY." Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'
9   EYES ONLY" answers shall be made on separate pages from any other
10  answers or portions thereof that are not designated as "CONFIDENTIAL" or
11  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

12         (c)    Deposition Testimony.  Any Party or nonparty giving
13  deposition testimony in this Action may obtain "CONFIDENTIAL" or
14  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by
15  designating, during the course of that testimony, for which "CONFIDENTIAL"
16  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired,
17  the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL
18  -- ATTORNEYS' EYES ONLY," or alternatively by designating the entire
19  testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'
20  EYES ONLY," subject to a good faith obligation to identify any non-
21  confidential portions of the testimony (and/or any lesser "CONFIDENTIAL"
22  portions in the event that the entire testimony is designated "CONFIDENTIAL
23  -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after
24  receipt of the transcript of the testimony. The reporter shall separately
25  transcribe and bind the testimony so designated as "CONFIDENTIAL" and
26  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face
27  of the separate bound transcript containing such testimony with the term
28  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

A Party or nonparty also may make the above-referenced designation of
confidentiality in writing and within fourteen (14) calendar days of the receipt
by said Party or nonparty of the transcript of said testimony. In that event, said
portion of the transcript will be treated as "CONFIDENTIAL" or
"CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of
this Protective Order, except that it will not be separately bound. If, during the
course of deposition testimony, any Party or nonparty reasonably believes that
the answer to a question will result in the disclosure of "CONFIDENTIAL" or
"CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons
other than those persons entitled to receive such information pursuant to
paragraphs 5 and 6 hereof shall be excluded from the room in which the
deposition testimony is given.    Unless previously designated as
"CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY,"
all transcripts of deposition testimony and any related exhibits, and all
information adduced in deposition, shall, in their entirety, be treated as
"CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of
the transcript by counsel for the designating Party or nonparty. The Party or
nonparty designating the testimony or information as "CONFIDENTIAL" or
"CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen
(14) calendar day period described above, specifically designate information
contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or
"CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously
designated as such, by notifying all Parties in writing of the portions of the
transcript or exhibit which contains such information. Each Party shall attach
a copy of such written statement to the face page of the transcript or exhibit
and to each copy in its or his possession, custody or control. Thereafter, these
portions of the transcript or exhibits designated as "CONFIDENTIAL" or
"CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

1    accordance with the terms of this Protective Order. In addition, the provisions

2    of Paragraph 3(e) for later designating transcripts or exhibits shall apply after

3    the expiration of the fourteen (14) calendar day period described in this

4    Paragraph 3(c).

5              (d)    Typing or stamping the legend "CONFIDENTIAL" or

6    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a

7    collection of Litigation Materials which are bound together shall have the

8    effect of designating such collection in its entirety as "CONFIDENTIAL" or

9    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." In the case of disks,

10   tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling,

11   stamping or marking the outside of such disk, tape, CD-ROM, DVD or other

12   medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL

13   -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire

14   contents of such disk, tape, CD-ROM, DVD or other medium or device, and

15   all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL --

16   ATTORNEYS' EYES ONLY," as the case may be.

17             (e)    Except as otherwise provided in Paragraph 3(c) of this

18   Protective Order, the receiving Party shall not reveal any information produced

19   for a period of seven (7) calendar days following receipt. Failure to designate

20   a    document, thing    or   other   information   as   CONFIDENTIAL"   or

21   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this

22   Protective Order shall not preclude any Party or nonparty desiring to so

23   designate the document, thing or information from so designating thereafter;

24   provided that the Party or nonparty proceeds promptly after discovery of any

25   omission of marking, in good faith marks the document, thing or other

26   information and requests, in writing, that each receiving Party so mark and

27   treat the document, thing or other information in accordance with this

28   Protective Order. Thereafter, the document, thing or other information shall

1    be fully subject to this Protective Order. No Party shall incur liability for any

2    disclosures made prior to notice of such designation, except to the extent that

3    any such disclosures occurred prior to the seven (7) day period described above

4    or prior to such other time periods as are provided by this Protective Order,

5    including without limitation such time periods as are provided in Paragraph

6    3(c) above.

7

8    ## RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS

9

10   4.    Any Litigation Materials produced or disclosed in this Action,

11   whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL --

12   ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such

13   information for purposes of litigation and not for any other purpose, including

14   without limitation for any business or trade purpose. As used herein, the term

15   "litigation" shall mean preparation for, participation in and prosecution and defense

16   of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in

17   connection with any mediation or other alternative dispute resolution procedure that

18   this or any other court may order or that the Parties may agree to.

19   5.    Subject to Paragraph 7 herein, and unless as otherwise ordered by

20   the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be

21   disclosed to any person other than:

22   (a)    the attorneys for the Parties and their partners, shareholders,

23   associates, document clerks and paralegals who are necessary to assist such

24   attorneys;

25   (b)    secretaries, stenographers and other office or clerical

26   personnel employed by said attorneys and who are necessary to assist such

27   attorneys;

28

07272/625581.2

-8-

(c)    a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)    the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)    such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)    outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)    professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)    independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)    non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

1    6.    Subject to paragraph 7 herein, and unless as otherwise ordered by
2  the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS'
3  EYES ONLY" shall not be disclosed to any person other than:

4           (a)    the attorneys for the Parties (but not including in-house
5  counsel for the Parties or any attorney who is an officer, director, shareholder
6  or employee of any Party or its corporate affiliates) and their partners,
7  shareholders, associates, document clerks and paralegals who are assigned to
8  and necessary to assist such attorneys. For the purposes of this subparagraph,
9  "affiliate" shall mean any corporate parent or subsidiary of any Party, or any
10  other entity that is under common control with any Party or corporate parent
11  or subsidiary of any Party, or any of their successors or predecessors in
12  interest;

13          (b)    secretaries, stenographers and other office or clerical
14  personnel employed by said attorneys and who assist them with respect to
15  litigation;

16          (c)    the authors, senders, addressees and designated copy
17  recipients of any document or thing which has been designated as
18  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

19          (d)    such other persons as may be consented to by the Party
20  designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES
21  ONLY" information;

22          (e)    outside litigation support vendors, including commercial
23  photocopying vendors, scanning services vendors, coders and keyboard
24  operators;

25          (f)    independent outside consultants or experts retained by the
26  attorneys to the extent deemed necessary by said attorneys for the purposes of
27  litigation; and

28

PROTECTIVE ORDER

1               (g)    professional court reporters engaged to transcribe
2  deposition testimony, professional videographers engaged to videotape
3  deposition testimony and translators.

4          7.    None of the following is bound by or obligated under this Order
5  in any respect and specifically are not bound or obligated to treat information
6  designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES
7  ONLY" in any particular manner: The Court hearing this Action (including the Court
8  having jurisdiction of any appeal), Court personnel, court reporters working for the
9  Court, translators working for the Court, or any jury impaneled in this Action.

10          8.    Other than those identified in Paragraph 7 above, each person to
11  whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL --
12  ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this
13  Protective Order and agree to be bound by it before disclosure to such persons of any
14  such information. The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall
15  not have access to either "CONFIDENTIAL" or "CONFIDENTIAL --
16  ATTORNEYS' EYES ONLY" information, as the case may be, until they have
17  certified that they have read this Protective Order and have manifested their assent
18  to be bound thereby by signing a copy of the Assurance of Compliance attached
19  hereto as Exhibit A. Once a person has executed such an Assurance of Compliance,
20  it shall not be necessary for that person to sign a separate Assurance of Compliance
21  each time that person is subsequently given access to confidential material. Any
22  person who signed an Assurance of Compliance in connection with the Stipulation
23  for Protection of Confidential Information and Protective Order filed September 16,
24  2004 in <u>Mattel Inc. v. Bryant</u>, Case No. BC 314398, pending in Los Angeles County
25  Superior Court, need not re-sign the Assurance of Compliance attached hereto but
26  shall, by virtue of his or her prior signature, be deemed to have signed the attached
27  Assurance of Compliance.

28

PROTECTIVE ORDER

9.    The failure of any Party to object to the designation   of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be deemed an admission that such information qualifies for such designation.

10.    If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the Local Rules. Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11.    Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12.    The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.

                                                                    PROTECTIVE ORDER

1          13.    If a Party or nonparty through inadvertence produces or provides

2  discovery that it, he or she believes is subject to a claim of attorney-client privilege

3  or work product immunity, the producing Party or nonparty may give written notice

4  to the receiving Party that the document is subject to a claim of attorney-client

5  privilege or work product immunity and request that the document be returned to the

6  producing Party or nonparty.  The receiving Party shall promptly return to the

7  producing Party or nonparty the inadvertedly disclosed document and all copies of

8  such document.  Return of the document by the receiving Party shall not constitute

9  an admission or concession, or permit any inference, that the returned document is,

10  in fact, properly subject to a claim of attorney-client privilege or work product

11  immunity, nor shall it foreclose any Party from moving the Court for an Order that

12  such document has been improperly designated or should be producible for reasons

13  other than a waiver caused by the inadvertent production.

14          14.    Nothing contained in this Protective Order shall affect the right

15  of any Party or nonparty to make any objection, claim any privilege, or otherwise

16  contest any request for production of documents, interrogatory, request for admission,

17  or question at a deposition or to seek further relief or protective orders from the Court

18  in accordance with the <u>Federal Rules of Civil Procedure</u> and the <u>Local Rules</u>.

19  Nothing in this Protective Order shall constitute an admission or waiver of any claim

20  or defense by any Party.

21

22              <u>FILING AND USE IN COURT OF DESIGNATED MATERIALS</u>

23

24          15.    Except when the filing under seal is otherwise authorized by

25  statute or federal rule, the Parties shall seek the Court's prior approval for the filing

26  under seal of pleadings and other documents containing properly designated

27  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"

28  information in accordance with the procedures set forth in <u>Local Rule</u> 79-5.1, as such

1  Rule may be amended from time to time. Prior to the time that a Party receiving the
2  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"
3  information from any other Party files with the Court an application and the other
4  materials required by Local Rule 79-5.1, as such Rule may be amended from time to
5  time, to seal the producing Party's confidential information, the receiving Party shall
6  consult with the producing Party's attorney to determine whether the producing Party
7  will re-designate the previously designated confidential information so as to avoid the
8  need for the request to file such information under the seal. Upon the default of a
9  Party to seek the Court's approval to file a document containing "CONFIDENTIAL"
10 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any
11 Party may subsequently seek the approval of the Court to file that document under
12 seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule
13 may be amended from time to time.

14

15              THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS

16

17              16.    If any Party or nonparty receives a subpoena or document request
18 from a third party which purports to require the production of materials in that Party's
19 possession which have previously been designated as "CONFIDENTIAL" or
20 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,
21 the Party or nonparty receiving such subpoena or document request (a) shall object
22 and refuse to produce documents absent a Court Order or the consent of the Party or
23 nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL
24 -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who
25 designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --
26 ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,
27 and (c) shall not oppose any effort by the Party or nonparty which designated the
28 material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

                                                            PROTECTIVE ORDER

1  ONLY" to quash the subpoena or obtain a protective order limiting discovery of such
2  material.

### DISCOVERY FROM NONPARTIES

6          17.    Discovery of nonparties may involve receipt of information,
7  documents, things or testimony which include or contain "CONFIDENTIAL" or
8  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information.  A
9  nonparty producing such material in this case may designate as "CONFIDENTIAL"
10  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it
11  produces in the same manner provided for in this Protective Order with respect to
12  material furnished by or on behalf of the Parties.  Any Party may also designate as
13  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any
14  materials or information produced by a nonparty that constitute "CONFIDENTIAL"
15  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating
16  Party under Paragraph 2 of this Protective Order, regardless of whether the producing
17  nonparty has also so designated.  In addition, a nonparty may also designate as
18  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any
19  materials or information produced by a Party that constitute "CONFIDENTIAL" or
20  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such
21  nonparty under Paragraph 2 of this Protective Order, regardless of whether the
22  producing Party has also so designated.  In either such an event, the designation
23  providing for the greater level of protection for the material information shall control,
24  subject to Paragraph 10 of this Protective Order.  Nonparty materials designated
25  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a
26  nonparty or Party shall be governed by the terms of this Protective Order.

PROTECTIVE ORDER

## CONCLUSION OF LITIGATION

18.   Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession. In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties. Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order. This Protective Order shall continue to be binding after the conclusion of this Action.

## AMENDMENT OF THIS AGREEMENT

19.   The provisions of this Stipulation and Protective Order may be  modified at any time by stipulation of the Parties as approved by Order of the Court. In addition, a Party may at any time apply to the Court for modification of this

PROTECTIVE ORDER

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

3

4  **IT IS SO STIPULATED.**

5

6  DATED: December 22, 2004          QUINN EMANUEL URQUHART
                                      OLIVER & HEDGES, LLP
7

8                                     By _____
9                                       Jon Corey
                                        Attorneys for Plaintiff
10                                      Mattel, Inc.

11
    DATED: December __, 2004         LITTLER MENDELSON
12

13                                    By_____
                                        Douglas A. Wickham
14                                      Attorneys for Defendant
                                        Carter Bryant
15

16  DATED: December __, 2004         O'MELVENY & MEYERS, LLP

17
                                      By_____
18                                      Diana M. Torres
                                        Attorneys for Intervenor-Defendant
19                                      MGA Entertainment, Inc.

20

21  **IT IS SO ORDERED.**

22

23  DATED: ___1/4/05___               ROBERT N. BLOCK
                                      _____
24                                    THE HONORABLE ROBERT N. BLOCK
                                      United States Magistrate Judge
25

26

27

28

PROTECTIVE ORDER

1    Stipulation and Protective Order pursuant to a motion brought in accordance with the

2    rules of the Court.

3

4     **IT IS SO STIPULATED.**

5

6    DATED: December __, 2004     QUINN EMANUEL URQUHART

7                               OLIVER & HEDGES, LLP

8                               By

9                                  Jon Corey

10                              Attorneys for Plaintiff
                                 Mattel, Inc.

11

12    DATED: December 21, 2004     LITTLER MENDELSON

13                               By

14                                  Douglas A. Wickham
                                 Attorneys for Defendant

15                              Carter Bryant

16    DATED: December __, 2004     O'MELVENY & MEYERS, LLP

17

18                               By
                                 Diana M. Torres

19                                  Attorneys for Intervenor-Defendant
                                 MGA Entertainment, Inc.

20

21      **IT IS SO ORDERED.**

22

23    DATED: _____

24                                 THE HONORABLE ROBERT N. BLOCK
                                 United States Magistrate Judge

25

26

27

28

1 | Stipulation and Protective Order pursuant to a motion brought in accordance with the
2 | rules of the Court.
3 |
4 | **IT IS SO STIPULATED.**
5 |
6 | DATED: December __, 2004          QUINN EMANUEL URQUHART
7 |                                   OLIVER & HEDGES, LLP
8 |
9 |                                   By _____
   |                                   Jon Corey
10 |                                   Attorneys for Plaintiff
   |                                   Mattel, Inc.
11 |
12 | DATED: December __, 2004          LITTLER MENDELSON
13 |                                   By _____
14 |                                   Douglas A. Wickham
   |                                   Attorneys for Defendant
15 |                                   Carter Bryant
16 | DATED: December __, 2004          O'MELVENY & MEYERS, LLP
17 |
18 |                                   By _____
   |                                   Diana M. Torres
19 |                                   Attorneys for Intervenor-Defendant
   |                                   MGA Entertainment, Inc.
20 |
21 |          **IT IS SO ORDERED.**
22 |
23 | DATED: _____
24 |                                   THE HONORABLE ROBERT N. BLOCK
   |                                   United States Magistrate Judge
25 |
26 |
27 |
28 |

# EXHIBIT A

## ASSURANCE OF COMPLIANCE

I, _____, under penalty of perjury under the laws of the United States of America, declare and state as follows:

I reside at _____, in the City/County of _____ and State/Country of _____;

I have read the annexed Stipulated Protective Order, ("Protective Order") dated _____ in the action entitled *Mattel, Inc. v. Carter Bryant,* Case No. CV 04-9059 NM (RNBx), which currently is pending in the United States District Court for the Central District of California; that I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order;

I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use any Litigation Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" except solely as permitted by the Protective Order; and

I consent to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing said Protective Order, enjoining any violation or threatened violation of the Protective Order or seeking damages for the breach of said Protective Order.

_____
(Signature)

07272/625581.2

PROTECTIVE ORDER

1  **PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

2  **STATE OF CALIFORNIA**        )
   **COUNTY OF LOS ANGELES**      )

3      I am employed in the county of Los Angeles  State of California.  I am over the age of 18
4  and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor,
   Los Angeles, CA 90012.

5      On December 22, 2004, I served the foregoing document described as

6      **STIPULATED PROTECTIVE ORDER; AND [PROPOSED] ORDER**

7  on  all interested parties in this action:

8      **SEE ATTACHED SERVICE LIST**

9  [ ]   By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed
10       as follows:

11 [ ]   **BY MAIL**

12 [ ]   I deposited such envelope in the mail at Los Angeles, California.  The envelope was
        mailed with postage thereon fully prepaid.

13 [ ]   As follows: I am "readily familiar" with the firm's practice of collection and processing
14       correspondence for mailing.  Under that practice it would be deposited with U.S. postal
        service on that same day with postage thereon fully prepaid at Los Angeles, California in
15       the ordinary course of business.  I am aware that on motion of the party served, service is
        presumed invalid if postal cancellation date or postage meter date is more than one day
16       after date of deposit for mailing in affidavit.

17 [X ]  **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s)
        set forth above on this date.

18 Executed on December 22, 2004, at Los Angeles, California.

19 [X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at
        whose direction the service was made.

21 Ivana Maiorano
   Print Name                          Signature

1 | **Robert F. Millman, Esq.**
**Douglas A. Wickham, Esq.**
2 | **Keith A. Jacoby, Esq.**
**Littler Mendelson**
3 | **A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
4 | Phone: 310-553-0308
**Fax: 310-553-5583**
5 |

6 | **Diana M. Torres, Esq.**
**O'Melveney & Meyers**
7 | 400 S. Hope Street
Los Angeles, CA 90071
8 | Phone: 213-430-6000
**Fax: 213-430-6407**
9 |

10 | **Daniel J. Warren, Esq.**
**Sutherland, Asbill & Brennan**
11 | 999 Peachtree Street NE
Atlanta, GA  30309-3996
12 | Phone: 404-853-8698
**Fax: 404-853-8806**

-2-