1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11 | CARTER BRYANT, an individual,        | CASE NO. CV 04-9049 SGL (RNBx)

12 |              Plaintiff,               | Consolidated with
                                          | Case No. CV 04-09059
13 |        vs.                           | Case No. CV 05-02727

14 | MATTEL, INC., a Delaware             | Hon. Stephen G. Larson
   | corporation,
15 |                                      | NOTICE OF MOTION AND
   |              Defendant.              | MOTION OF MATTEL, INC. FOR
16 |                                      | LEAVE TO TAKE ADDITIONAL
                                          | DISCOVERY ON THE MGA
17 | AND CONSOLIDATED ACTIONS             | DEFENDANTS' UNCLEAN HANDS
                                          | AFFIRMATIVE DEFENSE;

18                                        | MEMORANDUM OF POINTS AND
                                          | AUTHORITIES IN SUPPORT
19
                                           [Declaration of Jon Corey filed
20                                         concurrently herewith]

21                                         Hearing Date: March 3, 2008
                                           Time:         10:00 a.m.
22                                         Courtroom:    1

23                                         Phase 1:
                                           Discovery Cut-off:     January 28, 2008
24                                         Pre-trial Conference:  May 5, 2008
                                           Trial Date:           May 27, 2008
25

26

27

28

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on March 3, 2008, at 10:00 a.m., or as soon

3  thereafter as the matter may be heard, in the courtroom of Honorable Stephen G.

4  Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. will,

5  and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure 26(b)

6  and the Court's February 12, 2007 Scheduling Order, for an order granting Mattel leave

7  to take the Rule 30(b)(6) deposition of defendant MGA Entertainment, Inc. and up to

8  four (4) related percipient witness depositions, beyond the current limit set by the

9  Court.

10       Mattel makes this Motion on the grounds that on December 3, 2007, MGA first

11  represented to the Court that it intended to present an "unclean hands" defense in Phase

12  1 of the trial currently scheduled in this matter, as opposed to Phase 2.  While Mattel

13  has been conducting discovery for Phase 2, Mattel has not completed discovery of

14  MGA's unclean hands defense because MGA did not assert it as a defense to Phase 1

15  claims.  As alleged, MGA's unclean hands defense is a litany of purported misconduct

16  that has nothing  to do with the claims to be tried in Phase 1, but which nevertheless

17  will require substantial discovery to be addressed at trial.

18       This Motion is based on this Notice of Motion and Motion, the accompanying

19  Memorandum of Points and Authorities, the Declaration of Jon Corey filed

20  concurrently herewith, the records and files of this Court, and all other matters of which

21  the Court may take judicial notice.

22

23

24

25

26

27

28

## **Statement of Local Rule 7-3 Compliance**

As set forth in the Declaration of Jon Corey, on December 7, 2007, counsel for Mattel invited counsel for all parties to meet and confer as to Mattel's request for additional discovery. MGA refused to stipulate to additional discovery and refused to meet and confer about the topic. Bryant and Machado never responded to Mattel's invitation.


DATED: January 28, 2008                    QUINN EMANUEL URQUHART OLIVER &
                                            HEDGES, LLP


                                            By /s/ Jon Corey
                                               Jon Corey
                                               Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS .................................................................... 1

ARGUMENT ................................................................................. 7

I.  MATTEL IS ENTITLED TO ADDITIONAL DISCOVERY ........................ 7

II. MATTEL SHOULD BE GRANTED LEAVE TO DEPOSE MGA
    CONCERNING ITS UNCLEAN HANDS DEFENSE ................................... 9

CONCLUSION ............................................................................. 11

# TABLE OF AUTHORITIES

**Page**

## Cases

Andamiro v. Konami Amusement of Am.,
  2001 WL. 535667 (C.D. Cal. April 26, 2001) ................................ 8

Arthur v. Davis,
  126 Cal. App. 3d 684, 178 Cal. Rptr. 920 (1981)) (emphasis added .................... 9

Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.,
  890 F.2d 165 (9th Cir. 1989)................................................ 8

Kendall-Jackson Winery, Ltd. v. Superior Court,
  76 Cal. App. 4th 970, 90 Cal. Rptr. 2d 743 (1999) ......................... 8, 9

Rx USA Wholesale, Inc. v. McKesson Corp.,
  2007 WL. 1827335 (E.D.N.Y. June 25, 2007) ......................... 7, 9

Whittingham v. Amherst Coll.,
  163 F.R.D. 170 (D. Mass. 1995) .......................................... 7

## Statutes

Federal Rule of Civil Procedure
  26(b)...................................................................... 8
  26(b)(2)............................................................... 7, 8
  30(a)(2).................................................................. 7
  30(a)(2)(A).............................................................. 7
  30(b)(6)................................................................ 10
  30(d)(1)................................................................. 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA informed the Court and Mattel, for the first time, in late November, 2007, that MGA would try its unclean hands defense in Phase 1 of this litigation. Mattel had moved to strike the deficient defense, which the Court denied. At the hearing, MGA was unable to articulate to the Court any specific facts demonstrating the nexus between the claims of Phase 1 and the alleged misconduct supporting the defense. MGA has provided some additional detail on its defense in an interrogatory response. While the defense remains legally deficient, Mattel is entitled to, and by this Motion seeks, additional discovery concerning MGA's unclean hands defense. Only MGA knows these facts that it believes support its defense, yet it has refused to allow Mattel discovery on the defense. For example, MGA accuses Mattel of interfering with Zapf and Smoby acquisitions. Mattel is entitled to depose Zapf, Smoby and MGA to collect evidence showing that the alleged conduct, even if occurred, caused no harm to MGA. Mattel seeks leave to take an additional deposition of MGA and 4 other witnesses so Mattel may have a fair opportunity to collect evidence to refute the MGA Defendants' unclean hands defense.

### Statement of Facts

<u>Mattel's Counterclaims.</u>  On November 19, 2006, Mattel moved for leave to amend its complaint. The Court granted Mattel's motion, allowing Mattel's new claims to be alleged as counterclaims to MGA's complaint.[1] Mattel filed its Second Amended Answer and Counterclaims on July 12, 2007. Mattel's counterclaims against MGA

---

[1]  1/11/07 Order Re Mattel's Motion for Leave to Amend, 22:13-15, Corey Dec., Exh. 1. On February 12, 2007, the Court conducted a scheduling conference. At that conference, and as reflected in a Minute Order, the Court limited depositions to 24 per side. 2/12/07 Scheduling Order, at 1, Corey Dec., Exh. 2. The Court recognized that the parties might need more depositions: "Again, if you get to the point where you need 21 expert witnesses for some reason, or you need 25 fact witnesses, you can make application to this court and the court will consider that after you, of course, have met and conferred and tried to work that out on your own. But we have to have some parameters on this." 2/12/07 Scheduling Conference Tr., at 23:1-6, Corey Dec., Exh. 5.

1  Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L.

2  de C.V. include claims for copyright infringement, violation of RICO, conspiracy to

3  violate RICO, misappropriation of trade secrets, intentional interference with contract,

4  aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of

5  loyalty, conversion and unfair competition.[2]

6      <u>MGA's Unclean Hands Defense</u>.  MGA's answer to Mattel's counterclaims

7  asserts twenty-two affirmative defenses, including unclean hands.[3]  The unclean hands

8  defense is extraordinarily broad.  MGA alleges that its defense:

9          is based, in part, on Mattel's efforts to undermine MGA's
        business and to 'kill' Bratz at any cost which include, but

10          are not limited to Mattel's:

11          efforts to infringe and dilute MGA's trade dress, copy
        MGA's products, packaging, themes, and advertising

12          (including for Mattel products My Scene, Diva Starz, Wee
        3 Friends, Acceleracers, and Polly Pocket, to name a few)

13          and engage in other acts of unfair competition against
        MGA as alleged in MGA's complaint against Mattel;

14          efforts to create negative publicity or press about MGA,
        MGA products, Bryant, Larian, or MGA employees;

15          efforts to fund or commission market research or studies
        that portray Bratz or MGA products negatively; efforts to

16          interfere with MGA's acquisition of or investment in Zapf
        Creation AG; efforts to include negative references to

17          MGA or Bratz on Mattel's "We Believe in Girls" website;
        efforts or intent to interfere with business dealings or

18          contractual relations between MGA and Smoby Group;
        influencing Nickelodeon to reject MGA advertisements or

19          to limit time slots for advertisements; assisting parties in
        lawsuits against MGA; monitoring, "spying on" or gaining

20          knowledge of MGA's trade secrets, non-public
        information, non-public activities, unreleased products,

21          and product development; gaining access, or attempts to
        gain access to MGA showrooms, Plan-o-Grams,

22          merchandising displays, Toy Fair displays on false
        pretenses; wrongfully obtaining MGA's costs and sales

23          information through Mattel-employed category managers
        at retailers; inducing non-party customers to breach

24          confidentiality agreements with MGA and divulge non-
        public information about MGA's unreleased products;

25          covertly investigating MGA, its officers and employees,
        and their family members; contacting persons under false

26

27     [2]  <u>See</u> Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007 ("Mattel's Counterclaims"), Corey Dec., Exh. 3.

28     [3]  <u>See</u> MGA's Answer and Affirmative Defenses ("MGA's Amended Answer"), dated August 13, 2007, Corey Dec., Exh. 4.

1  pretenses in order to interrogate them about Bratz and this
2  litigation; coercing Mattel employees to accept restrictive
   covenants (right before massive layoff) and non-compete
3  clauses and other efforts to prevent prospective MGA
   employees from accepting offers of employment; delay in
4  suing Carter Bryant because *inter alia*, Mattel wanted
   Bryant to testify in an unrelated Mattel case; falsely
5  inflating its Barbie sales in an effort to mislead the public
   and retailers; and taking all measures to conceal its bad
6  acts, including the willful non-retention and destruction of
   documents. These averments are made on information and
7  belief except where MGA Defendants have knowledge
   thereof.[4]

8  The Court bifurcated these consolidated cases into Phase 1 and Phase 2. Phase 1

9  focuses on the ownership rights to Bratz and Phase 2 focuses on MGA's unfair

10 competition claims. Until very recently, the Court, as well as the parties, understood

11 that MGA's unclean hands defense related to Phase 2.[5]

12     <u>MGA Attempts to Insert Its Unclean Hands Defense in Phase 1, Yet is Unable</u>

13 <u>to Articulate to the Court Any Connection Between Its Defense and Phase 1.</u>

14 MGA's unclean hands defense is legally deficient, so Mattel moved to strike it, or

15 alternatively for summary judgment. In late November, 2007, MGA informed

16 Mattel that it would try the entirety of its unclean hands defense in Phase 1.[6] At the

17 December 3, 2007 hearing on Mattel's Motion to Strike, MGA, in response to the

18 Court's question, could not specifically explain the extent to which the unclean

19 hands defense is going to be raised in Phase 1:[7]

20     THE COURT:  Clarify this first issue. Maybe I'm
       confused now. Describe how you plan on using the
21     unclean hands defense, counsel.

22     MR. ROTH:  Your honor, I wasn't a party to
       communications that may have happened with --
23
       THE COURT:  If you're going to speak on behalf of your
24     client, though, you're responsible for it.

25

26  [4]  MGA Amended Answer, at 20-21, Corey Dec. Exh. 4.
    [5]  <u>See</u> 12/3/2007 Hearing Transcript, 5:9-11, attached to the Corey Dec., Exh. 6;
27  <u>see also</u> 7/2/2007 Minute Order, attached to the Corey Dec., Exh. 10.
    [6]  12/3/2007 Hearing Transcript, 5:22-6:5, attached to the Corey Dec., Exh. 6.
28  [7]  <u>See</u> 12/3/2007 Hearing Transcript 12:21-19:5, attached to the Corey Dec.,
    Exh. 6.

1    MR. ROTH:  I can tell you that from our perspective, most
     of the unclean hands allegations are likely going to result
2    in evidence that is relevant to phase two of the case, where
     both sides have unfair trade practice claims.  It may be that
3    a substantial portion of it is relevant to 1-A.  As Your
     Honor has indicated in the past --

4    THE COURT:  This is the kind of vagaries that I can
5    understand confuse and complicate matters for the
     plaintiff.  Can anyone speak to this conversation that
6    supposedly took place?

7    MR. NOLAN:  Your honor, I cannot, but if I could just
     inquire with counsel who made the statement from my
8    team.

9    THE COURT:  That's reasonable.

10   (SOTTO VOCE DISCUSSION BETWEEN COUNSEL.)

11   MR. ROTH:  Your Honor, as I indicated, our view is that
     for the most part, the unclean hands defense relates to
12   phase two of the case.

13   THE COURT:  So are you willing to say that you are not
     going to be bringing an unclean hands defense in phase
14   one?

15   MR. ROTH:  No, we're not willing to --

16   THE COURT:  Okay.  Then you're going to need to
     explain the extent to which the unclean hands defense is
17   going to be raised in phase one.

18   MR. ROTH:  Okay.  The unclean hands defense relates to
     the Bratz intellectual property.
19
     THE COURT:  Okay.  That's pretty broad.  In what way,
20   counsel?

21   MR. ROTH:  In the sense that we allege, in connection
     with the copyright claims, infringement and unfair practice
22   as it relates to Mr. Carter [sic] and the Bratz intellectual
     property.  That is the subject matter phase.
23
     THE COURT:  What specifically happened here that was
24   unclean by Mattel?

25   MR. ROTH:  Our allegations are that Mattel made
     disparaging remarks regarding Mr. Bryant, MGA, and the
26   Bratz products following the commercial exploitation of
     that intellectual property by MGA.  Now, that, we think, is
27   relevant to phase one of the case.  It's primarily relevant,
     we acknowledge, to phase two of the case.  In addition,
28   with respect to phase 1-A and the infringement issues that
     arise in connection with phase 1-A, this court may be
     asked, if liability is determined at some point, to issue an

1   injunction in this case.  In the context of a proceeding
2   before this court regarding whether or not an injunction
    should be issued, all of the allegations regarding
3   inequitable conduct will be relevant to this court.

4   THE COURT:  Go back to these negative comments.  Are
    these -- and I don't mean to make too fine a point on this --
5   are these negative statements about Bratz, or are these
    absolutely false disparaging comments?  What is your
6   allegation?

7   MR. ROTH:  They are false disparaging comments
    regarding Bratz and MGA.

8   THE COURT:  Directed to Carter Bryant, or directed to
9   MGA?

10  MR. ROTH:  Directed to MGA.

11  THE COURT:  Such as?

12  MR. ROTH:  Comments regarding the characteristics of
    the products and so forth.

13  THE COURT:  But give me an example of a comment that
14  was made.

15  MR. ROTH:  Your honor, I can't go --

16  THE COURT:  You can't give me one example?

17  MR. ROTH:  No, I can't.[8]

18  MGA could not provide the Court with the specific facts in support of its unclean

    hands defense, much less their relation to Phase 1:

19
20  THE COURT:  That's not going to be my question.  My
    question goes back to -- you refer to a series of statements,
21  and I'm asking for one example of one statement.  I sense,
    and I'm getting an appreciation for, the frustration that the
22  plaintiff has in addressing this affirmative defense without,
    at this late date, having specifics.  For the court to be able
23  to determine whether or not this is legally a sufficient
    basis to bring the unclean hands defense, specifically in
24  this first phase where it's more limited and the nexus needs
    to be much more tighter in the context of this copyright
25  claim for it to be a colorable defense, it would be
    extraordinary helpful to know exactly what statements
26  we're talking about.

27  MR. NOLAN:  I can appreciate that, your honor, and I
    apologize for not being able to give you the date and the

28
_____
[8]   12/3/2007 Hearing Transcript, 14:11-16:8, attached to the Corey Dec., Exh. 6.

1   specific comments. I can only talk about generalities.
    But, frankly, the position that we understood --

2

3   THE COURT: When are we going to move on from the
    point where we can only speak about generalities?

4   MR. NOLAN: Your Honor, I think part of it is going to
    be trying to resolve the issue of the interrogatory response

5   and our coming forward and giving examples as to what
    evidence we will be relying on, Your Honor.

6

7   THE COURT: But I trust you had the evidence that you're
    going to rely on before you made the defense. You don't

8   make the defense and then come up with the evidence
    you're going to rely on.

9   MR. NOLAN: Of course, your honor, and I apologize.
    We are in the case, we've done an awful lot of work. The

10  fact that I can't go from 'A' to 'Z' on specific --

11  THE COURT: I'm just asking for 'A,' counsel; not 'A'
    through 'Z.'[9]

12

13      MGA represented to the Court, however, that it would "lay all" the specific

14  facts that the Court requested in support of the unclean hands defense, and that "it

    will be in the form of discovery."[10] As the Court stated:

15

16      I think both sides should be able to have the factual
        allegations upon which these -- if you're going to move

17      forward on an affirmative defense and you want the court
        to consider that and you want to present that to the jury

18      trial, you better make clear the factual allegations that it's
        based on. I'm certainly not saying anything revolutionary

19      here.[11]

20  MGA Fails to Provide Complete Discovery On Its Unclean Hands Defense.

    Subsequent to the December 3, 2007, hearing, Mattel served its additional

21  interrogatory on MGA seeking the specific factual and documentary support for

22  MGA's unclean hand defense, among other affirmative defenses. MGA responded

23  by providing certain information, but it failed to provide specific responsive

24  information, such as specific supporting documents or identifying specific

25

26  _____
    [9]  12/3/2007 Hearing Transcript, 16:24-18:5, attached to the Corey Dec., Exh. 6.

27  [10]  12/3/2007 Hearing Transcript, 17:22-18:19, attached to the Corey Dec., Exh.
    6.
    [11]  12/3/2007 Hearing Transcript, 30:23-31:4, attached to the Corey Dec.,

28  Exh. 6.

1  witnesses.  Importantly, MGA did not explain how MGA's allegations are relevant
2  to Phase 1 -- it did not provide an answer to the Court's question for even "A" of its
3  evidence.[12]  So, Mattel sought an agreement that it could take additional discovery
4  on the affirmative defenses.

5       Mattel's Meet and Confer Efforts.  On December 7, 2007, Mattel requested a
6  meeting of counsel regarding Mattel's anticipated motion for leave to take the
7  deposition of MGA Entertainment, Inc., on additional matters.  Mattel explained
8  that was requesting these additional depositions (over the 24 agreed between the
9  parties) to discover what facts, if any, support MGA's and Larian's recently-pleaded
10 affirmative defense of "unclean hands."[13]  Despite Mattel's meet and confer efforts,
11 MGA would not agree to a deposition concerning its unclean hands defense.  This
12 motion followed.

13                              **Argument**
14 **I.   MATTEL IS ENTITLED TO ADDITIONAL DISCOVERY**

15      The Federal Rules require that a party obtain leave of the court before taking
16 depositions beyond the limits established by the Court.[14]  See Fed. R. Civ. P.
17 30(a)(2)(A).[15]  The purpose of these limits is to enable the Court to "maintain a 'tighter
18 rein' on the extent of discovery and to minimize the potential cost of [w]ide ranging
19 discovery." Rx USA Wholesale, Inc. v. McKesson Corp., 2007 WL 1827335, at *2-3
20

21
22      [12]   MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory
        Regarding Defendants' Affirmative Defenses, dated January 7, 2008, attached to the
        Corey Dec., Exh. 11.
23      [13]   Letter from B. Dylan Proctor to Thomas Nolan, Mark Overland and John
        Keker, dated December 7, 2007, attached to the Corey Dec., Exh. 12.
24      [14]   The Discovery Master stated that a party who has been deposed cannot again
        be deposed absent leave of Court. 9/25/07 Order Re Mattel's Motion to Compel
25      MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under 30(b)(6),
        6:1-4, Corey Dec., Ex. 8.
26      [15]   Rule 30(d)(1) also provides: "Unless otherwise stipulated or ordered by the
        court, a deposition is limited to 1 day of 7 hours. The court must allow additional
27      time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the
        deponent, another person, or any other circumstance impedes or delays the
28      examination." Fed. R. Civ. P. 30(d)(1) (emphasis added).

1 (E.D.N.Y. June 25, 2007) (quoting <u>Whittingham v. Amherst Coll.</u>, 163 F.R.D. 170,

2 171-72 (D. Mass. 1995)).

3      Leave to take additional depositions should be granted, however, when consistent

4 with the principles of Rule 26(b)(2). <u>Fed. R. Civ. P.</u> 30(a)(2); Notes of the Advisory

5 Committee (1993). <u>Rule</u> 26(b)(2) provides, in part:

6      (A) When Permitted. By order, the court may alter the
limits in these rules on the number of depositions and

7      interrogatories or on the length of depositions under
Rule 30. By order or local rule, the court may also limit

8      the number of requests under Rule 36.

9      . . .

10      (C) When Required. On motion or on its own, the court
must limit the frequency or extent of discovery otherwise

11      allowed by these rules or by local rule if it determines that:

12      (i) the discovery sought is unreasonably cumulative or
duplicative, or can be obtained from some other source

13      that is more convenient, less burdensome, or less
expensive;

14

15      (ii) the party seeking discovery has had ample opportunity
to obtain the information by discovery in the action; or

16      (iii) the burden or expense of the proposed discovery
outweighs its likely benefit, considering the needs of the

17      case, the amount in controversy, the parties' resources, the
importance of the issues at stake in the action, and the

18      importance of the discovery in resolving the issues.[16]

19      "In an appropriate case the court could restrict the number of depositions,

20 interrogatories, or the scope of a production request. But the court must be careful not

21 to deprive a party of discovery that is reasonably necessary to afford a fair opportunity

22 to develop and prepare the case." Notes of the Advisory Committee (1983) to <u>Fed. R.</u>

23 <u>Civ. P.</u> 26(b). As discussed herein, the additional deposition of MGA concerning its

24 unclean hands defense is reasonably necessary to afford Mattel a fair attempt to prepare

25 its case.

26

27

28     [16]  <u>Fed.R.Civ.P.</u> 26(b)(2); <u>accord</u> <u>Andamiro v. Konami Amusement of Am.</u>,
2001 WL 535667, at *2 (C.D. Cal. April 26, 2001) (re depositions).

## II.   MATTEL SHOULD BE GRANTED LEAVE TO DEPOSE MGA CONCERNING ITS UNCLEAN HANDS DEFENSE

Mattel seeks leave of the Court to depose MGA (for the first time) on MGA's unclean hands defense, for reasons which are appropriate under the requirements of Rules 26 and 30.  Specifically, the discovery sought by the Notice is not unreasonably cumulative.  Mattel has not had an adequate opportunity to take discovery on these matters, and the substantial benefits of discovery on these central issues outweigh any burden.

The doctrine of unclean hands "demands that a plaintiff act fairly in the matter for which he seeks a remedy." Kendall-Jackson Winery, Ltd. v. Superior Court, 76 Cal. App. 4th 970, 978, 90 Cal. Rptr. 2d 743, 748-49 (1999) (emphasis added).  "It is fundamental to the operation of the doctrine that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made." Dollar Systems, Inc. v. Avcar Leasing Systems, Inc., 890 F.2d 165, 173 (9th Cir. 1989) (quoting Arthur v. Davis, 126 Cal. App. 3d 684, 693-94, 178 Cal. Rptr. 920, 925 (1981)) (emphasis added).  "The determination of the unclean hands defense cannot be distorted into a proceeding to try the general morals of the parties." Kendall-Jackson, 76 Cal. App. 4th at 978.  If, as it now appears, MGA is going to contend in Phase 1 that Mattel acted inequitably in a manner which could affect its right to ownership of Bratz, then Mattel is entitled to know exactly how, sufficiently in advance of the trial to investigate and present an adequate response.  Mattel ignores, for the moment, that MGA has yet to articulate a single connection between its unclean hands defense—which includes the unfair competition claims that the Court relegated to Phase 2—and the claims to be tried in Phase 1, which relate to the ownership of Bratz, Bryant's disloyalty and MGA's complicity.

Without additional depositions, Mattel cannot discover the full extent of any claimed wrongdoing by Mattel that MGA is going to assert specifically at Phase 1 of the trial of this matter.  In light of the magnitude of this case, the marginal burden or

1   additional expense of these depositions pales in comparison to the Mattel's—and the
2   parties' need—to fully prepare to try this case.  As set forth above, the depositions that
3   Mattel seeks by this motion are not collateral, but go to the heart of its claims and
4   defenses.  <u>See, e.g.</u>, <u>Rx USA</u>, 2007 WL 1827335, at *2-3 (additional depositions
5   warranted in a dispute between large corporations, given the complexity of the issues
6   and the resources of the parties).

7        To date, none of the depositions have expressly addressed that claim against
8   Mattel, and Mattel therefore needs to understand the factual basis for any such claims.
9   MGA has identified over one hundred witnesses with knowledge of the parties' claims
10  or defenses.   Mattel has sued MGA for inducing several Mattel employees to
11  misappropriate many thousands of pages of documents containing Mattel trade secrets
12  over an extended period of time.  For its part, MGA has accused over 400 Mattel
13  products of infringing the trade dress of more than 200 MGA products.  As MGA has
14  proclaimed, it will be seeking "billions" of dollars from Mattel on its claims alone.
15  Additional depositions are warranted and have already been granted in order for the
16  parties to adequately address the breadth and complexity of the claims and defenses in
17  this case.  The instant request should be granted for the same reasons.

18        /
19        /
20        /
21        /
22        /
23        /
24        /
25        /
26        /
27
28

## __Conclusion__

Mattel seeks leave to serve its Fifth Notice of Deposition of MGA Entertainment, Inc. Pursuant to <u>Federal Rule of Civil Procedure</u> 30(b)(6), attached as Exhibit A (the "Notice"), with up to four (4) additional notices of deposition and/or deposition subpoenas of any other persons who have knowledge specific to the facts underlying MGA's "unclean hands" defense. Mattel has yet to identify those persons because MGA has not identified individuals with knowledge of the allegations or produced documents sufficient to allow Mattel reasonably identify witnesses. For the foregoing reasons, Mattel respectfully requests that the Court grant Mattel leave to take the deposition of MGA (proposed Notice attached) and to depose up to four (4) additional witnesses.

DATED: January 28, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                 By<u>/s/ Jon Corey</u>
                                   Jon Corey
                                   Attorneys for Mattel, Inc.

# EXHIBIT A

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> MATTEL, INC., a Delaware corporation, <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx) <br><br> FIFTH NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |

07209/2369561.1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on _____, 2008 beginning at 9:00 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit 1 hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(3), the deposition will be videotaped and Mattel reserves the right to record the deposition testimony by audio or stenographic means.

DATED:        , 2008           QUINN EMANUEL URQUHART OLIVER &
                               HEDGES, LLP


                               By_____
                                  Jon D. Corey
                                  Attorneys for Mattel, Inc.

# EXHIBIT 1

## I.    DEFINITIONS

1.    "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.    "MATTEL" means Mattel, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

3.    "SMOBY" means Smoby Group and any PERSON acting directly or indirectly by, through, under or on behalf of Smoby Group, including but not limited to, current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of Smoby Group, and any current or former corporation, partnership, association, trust, parent, subsidiary, division, AFFILIATE, predecessor-in-interest and successor-in-interest of Smoby Group, and any other PERSON acting on its behalf.

4.    "NICKELODEON" means Nickelodeon, Inc., the cable television network carried on cable and satellite television systems, and any PERSON acting directly or indirectly by, through, under or on behalf of Nickelodeon, Inc., including but not limited to, current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of Nickelodeon, Inc., and any current or former corporation, partnership, association, trust, parent, subsidiary, division, AFFILIATE, predecessor-in-interest and successor-in-interest of Nickelodeon, Inc., and any other PERSON acting on its behalf.

5.     "AFFILIATE" or "AFFILIATES" means any and all corporations, proprietorships, d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or indirectly, in whole or in part, own or control, are under common ownership or control with, or are owned or controlled by a PERSON, party or entity, including without limitation, each parent, subsidiary and joint venture of such PERSON, party or entity.

6.     "PERSON," in the plural as well as the singular, means any natural person, association, partnership, corporation, joint venture, government entity, organization, trust, institution, proprietorship, or any other entity recognized as having an existence under the laws in the United States or any other nation

7.     "IDENTIFY" or "IDENTITY" means the following:

(a)     With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)     With reference to an entity or entities, such entity's full name, state (or country) of incorporation or organization, present or last known address, and present or last known telephone number.

(c) With reference to any other DOCUMENT or DOCUMENTS, means the date, identity of the author, addressee(s), signatories, parties, or other PERSONS identified therein, its present location or custodian and a description of its contents.

(d)     With reference to an account with a bank or financial institution, means the name and address of the bank or financial institution, the account number(s) for or otherwise associated with such account and the name of each holder, including without limitation, each beneficial holder, of each such account.

8.     "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 1001 of the Federal Rules of Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all writings, including but not limited to, handwriting, typewriting, printing, image, photograph,

photocopy, digital file of any kind, transmittal by (or as an attachment to) electronic mail (including instant messages and text messages) or facsimile, video and audio recordings, and every other means of recording upon any tangible thing, any form of communication or representation, and any record thereby created, regardless of the manner in which the record has been stored, and all non-identical copies of such DOCUMENTS, in the possession, custody, or control of YOU, YOUR counsel, or any other PERSON acting on YOUR behalf.

9.      The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and vice versa, whenever such construction results in a broader disclosure of documents or information.

## II.   TOPICS OF EXAMINATION

1.      All MATTEL conduct that had the effect of "undermin[ing] MGA's business," and "'kill[ing]' Bratz at any cost."

2.      Each instance of "negative publicity or press" that MATTEL created about MGA.

3.      Each instance of "negative publicity or press" that MATTEL created about "MGA products, Bryant, Larian, or MGA employees."

4.      Each "market research" or "stud[y]" that was "fund[ed] or commission[ed]" by MATTEL, that "portray Bratz or MGA products" "negatively."

5.      MATTEL's alleged interference with "MGA's acquisition of or investment in Zapf Creation AG."

-5-

6.      All "negative references to MGA or Bratz" on MATTEL's "We Believe in Girls" web site that YOU claim were from MATTEL.

7.      MGA and SMOBY's business dealings or contractual relations.

8.      Any alleged interference by MATTEL "with business dealings or contractual relations between MGA and Smoby Group."

9.      NICKELODEON's rejection of "MGA advertisements or [limitation of] time slots for advertisements" and any reasons therefor.

10.      MATTEL's alleged assistance of "parties in lawsuits against MGA," the IDENTITY of such "parties" and "lawsuits," and the outcome of such "lawsuits."

11.      Each instance of MATTEL's alleged "monitoring, 'spying-on' or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development."

12.      Each instance when MATTEL, allegedly under "false pretenses," "gain[ed] access or attempt[ed] to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, [and] Toy Fair displays;" the IDENTITY of the PERSON who gained such access; IDENTIFY the "false pretenses;" the IDENTITY of the specific, allegedly confidential information that was accessed; and the IDENTITY of any evidence that MATTEL used or disclosed such confidential information.

13.      Each instance of MATTEL allegedly "wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers;" the IDENTITY of the "retailer;" the IDENTITY of the "category manager;" and the IDENTITY of the allegedly disclosed "costs and sales information."

14.      Each instance of MATTEL "inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products."

15.      Each instance of MATTEL "covertly investigating MGA, its officers and employees, and their family members;" the IDENTITY of the PERSON

1   allegedly investigated; the IDENTITY of the PERSON conducting the alleged

2   investigation; and whether the alleged investigation was contrary to the applicable law.

3          16.     Each instance of MATTEL "contacting persons under false pretense

4   in order to interrogate them about Bratz and this litigation;" the IDENTITY of the

5   "person" contacted; identify the allegedly "false pretenses; and identify the nature of the

6   alleged "interrogation."

7          17.     Each instance of MATTEL's "coercing Mattel employees to accept

8   restrictive covenants (right before massive layoff) and non-compete clauses and other

9   efforts to prevent prospective MGA employees from accepting offers of employment;"

10  the IDENTITY of the "Mattel employees;" the nature of the "massive layoff;" the

11  alleged "coercion" used; the source of MGA's knowledge of such alleged "coercion;"

12  the nature of the "non-compete clauses;" the nature of the alleged "other efforts;" the

13  IDENTITY of the "prospective MGA employees;" the nature of the "offers of

14  employment;" the IDENTITY of the PERSONS who accepted, or who did not accept,

15  the "offers of employment;" and the IDENTITY of the "prospective MGA employees"

16  ultimately employed by MGA.

17         18.     MATTEL's alleged "delay in suing Carter Bryant because *inter alia*,

18  Mattel wanted Bryant to testify in an unrelated Mattel case."

19         19.     Each instance of MATTEL "falsely inflating its Barbie sales figures

20  in an effort to mislead the public and retailers;" where this allegedly "false" information

21  was disclosed; the source of MGA's alleged knowledge that the "Barbie sales figures"

22  were "falsely inflat[ed];" and the effect, if any, of the disclosure of the allegedly "false"

23  information on MGA.

24         20.     Any other MATTEL's "bad acts" that MGA will rely on at trial.

25         21.     Each instance of MATTEL's "taking all measures to conceal its bad

26  acts, including the willful non-retention and destruction of documents;" the IDENTITY

27  of the alleged "documents" that allegedly were not retained or were destroyed; and the

28  source of MGA's alleged knowledge of MATTEL's "conceal[ment]" of its "bad acts."

-7-